32.     Because EFCH's only significant asset is its membership in TCEH, it was rendered insolvent concurrently with TCEH.  As described more fully below, it too remains insolvent to this day.

## II.     THE BOARD OF EFCH HAS FAILED TO ACT, IN BREACH OF THEIR FIDUCIARY DUTIES

33.     Beginning no later than March 2011, all of the Defendants were aware that the Upstream Loans were being made, and that TCEH was not receiving reasonably equivalent value for those loans.  All were also aware that both TCEH and EFCH were insolvent, and that they therefore owed fiduciary duties to creditors that were being harmed by the Upstream Loans.  And yet the Defendants did nothing, in plain breach of those duties.

34.     EFH's 10-K for fiscal year 2010 disclosed the Upstream Loans, noting that "[a]s of December 31, 2010 and 2009, EFH Corp. demand notes payable to TCEH totaled $1.921 billion and $1.406 billion, respectively."  See Exhibit D at 164.  As alleged in Paragraph 30, the same 10-K also acknowledged that TCEH was insolvent.  See Exhibit D at 23.  EFCH's 10-K for fiscal year 2010, attached as Exhibit E, showed that EFCH was insolvent, as well.  See Exhibit E at 95 (reporting EFCH's book equity as negative $6.24 billion).

35.     In the wake of those disclosures, a number of creditors wrote to the Boards of TCEH and EFCH in late 2011 and early 2012 with concerns that the Upstream Loans were fraudulent transfers that were unfair to TCEH, EFCH, and their creditors.  See Exhibits F-K. The creditors also noted that the Board of EFCH had a fiduciary duty to direct TCEH to recall those loans and collect all interest due, including the Unpaid Interest.

36.     All of the Defendants personally and publicly acknowledged their receipt of these letters.  EFH's 10-K for fiscal year 2011, which is attached as Exhibit L, notes that:

> Lenders or holders of our debt have in the past alleged, and might allege in the future, . . .
> that our or our subsidiaries' boards of directors or similar bodies or officers are not

> properly discharging their fiduciary duties. . . . These claims have included as recently as
> the first quarter of 2012, and may include in the future, among other things, claims that
> certain loans from TCEH to EFH Corp. were fraudulent transfers and should be repaid to
> TCEH [and that] authorization of these loans violates the fiduciary duties of EFCH's and
> TCEH's boards of directors . . . .

Exhibit L at 31. All of the Defendants signed this public filing. See Exhibit L at 253-254.

37.     EFH's 10-K for fiscal year 2011 disclosed that the Upstream Loans "totaled

$1.592 billion . . . as of December 31, 2011." See Exhibit L at 180. It also acknowledged that

TCEH remained insolvent: "[T]hird party analyses of TCEH's business . . . have indicated that

the principal amount of TCEH's outstanding debt exceeds its enterprise value . . . ." See Exhibit

L at 30. EFCH had also remained insolvent throughout 2011. See EFCH 10-K for fiscal year

2011 (attached as Exhibit M) at 161 (reporting EFCH's book equity as negative $7.82 billion).

38.     Notwithstanding *both* their knowledge of the allegations that the Upstream Loans

were unfair fraudulent transfers *and* their acknowledgement that TCEH and EFCH were

insolvent, the Defendants continued to let TCEH extend the existing Upstream Loans and make

new ones for less than reasonably equivalent value. As of December 31, 2012, "[t]he TCEH

Demand Notes totaled $698 million." See EFH 10-K for fiscal year 2012 (attached as Exhibit N)

at 169.

39.     As detailed below, the Defendants' motivation for doing so is clear: The

Upstream Loans enriched EFH—a company for whom every Defendant is (or was) an officer or

director, and one in which they all have (or had) a personal financial interest.

40.     TCEH and EFCH remained insolvent throughout 2012. See Exhibit N at 22

("TCEH's outstanding debt exceeds its enterprise value"); EFCH 10-K for fiscal year 2012

(attached as Exhibit O) at 156 (reporting EFCH's book equity as negative $10.51 billion). The

Board continued to acknowledge that it had been put on notice that the Upstream Loans were

fraudulent transfers. See Exhibit N at 24. And yet the Defendants stood idly by as EFH continued to siphon value from TCEH and EFCH, to the detriment of their creditors.

41. The Upstream Loans were finally repaid with all interest purportedly due—but *without* the Unpaid Interest—in January 2013.[1]

## III. DEMAND HERE WOULD HAVE BEEN FUTILE

42. Plaintiffs bring this action for the benefit of EFCH to redress injuries suffered, and continuing to be suffered, by EFCH and its creditors as a result of the Defendants' actions. EFCH is named as a nominal party in this action.

43. Plaintiffs have been creditors of TCEH and EFCH since at least January 2011, which is prior to the full accrual of the Unpaid Interest complained of and before the Upstream Loans at issue were either made or re-extended. Plaintiffs will adequately and fairly represent the interests of EFCH in enforcing and prosecuting its rights. This is not a collusive action to confer jurisdiction on this Court that it would not otherwise have.

44. By virtue of EFCH's insolvency, the Defendants' fiduciary duties run to EFCH's creditors, including Plaintiffs. As alleged in Paragraph 30, EFCH admits that it has been insolvent since at least the fourth quarter of 2010—and, therefore, that the Defendants owed fiduciary duties to EFCH's creditors since *at least* that time. On information and belief, EFCH became insolvent much earlier than the fourth quarter of 2010.

---

[1] On information and belief, EFCH is currently "planning an internal transaction, the ultimate result of which is to convert EFCH from a Texas corporation into a Delaware limited liability corporation." See Exhibit P at 2. Should this transaction be completed, it would constitute a mere restructuring of the company, one that would not in any way affect creditors' interests. "There will be no change of control of . . . EFCH . . . as a result of this internal restructuring." Exhibit P at 2. Moreover, "[f]ollowing the conversion, EFCH will remain a wholly owned subsidiary of EFH, and EFH will retain the same assets, liabilities, owners, board of directors, and management." Exhibit P at 2. Plaintiff will thus remain creditors of EFCH to exactly the same extent and for exactly the same reasons that they are currently.

45.     Defendants' breaches of their fiduciary duties have substantially damaged EFCH. As a consequence, EFCH'S creditors, including Plaintiffs, have standing to assert on a derivative basis causes of action against the Defendants for those breaches.

46.     Plaintiffs have not made demand on the board of EFCH. Making such a demand would have been futile because every current Board member had an interest in the Upstream Loans that are the subject of this suit. Five of the six current director-Defendants—Ms. Acosta and Messrs. Lebovitz, MacDougall, Smidt, and Young—sit on the board of the company that *made* the Upstream Loans (TCEH), the company that *guaranteed* those loans (Nominal Defendant EFCH), *and* the company that *received* the loans (EFH). The sixth current director-Defendant, Mr. Keglevic, sits on the Board of TCEH and EFCH and is the Chief Financial Officer of EFH. As a matter of law, demand is excused where a majority of directors stand on both sides of the challenged transaction, as is the case here.

47.     Moreover, the Defendants personally profited from the Upstream Loans in a manner not shared by EFCH's creditors because all of them had personal, pecuniary interests in the financial health of EFH that are not shared by EFCH's creditors.

48.     Indeed, *virtually all* of EFH (98.79%) is beneficially owned by its officers and directors, among them the Defendants here. See Exhibit N at 214. As a result, they personally benefited from the Upstream Loans and from EFH's failure to repay the Unpaid Interest to TCEH—benefits not shared by EFCH's creditors.

49.     Defendant Acosta is the beneficial owner of 323,529 shares of EFH. See Exhibit N at 214.

50.     Defendant Keglevic is an officer of EFH.  In that capacity he regularly receives awards of stock in EFH as part of his compensation.  In 2011, he received a stock award valued at $1,782,500.  In 2012, he received a stock award valued at $175,000.  See Exhibit N at 198.

51.     Defendant Lebovitz is a Managing Director of Goldman Sachs, which, through its affiliate GS Capital Partners, owns a controlling percentage of the Texas Holdings Partnership, which, in turn, is the beneficial owner of 1,657,600,000 shares of EFH.  See Exhibit N at 214-215.  Goldman Sachs also receives management fees from EFH, fees that can be paid, in part, by the Unpaid Interest that rightfully belongs to TCEH and EFCH.  See Exhibit N at 168.

52.     Defendant MacDougall is a partner of TPG, which owns a controlling percentage of the Texas Holdings Partnership, which, in turn, is the beneficial owner of 1,657,600,000 shares of EFH.  See Exhibit N at 214-215.  TPG also receives management fees from EFH, fees that can be paid, in part, by the Unpaid Interest that rightfully belongs to TCEH and EFCH.  See Exhibit N at 168.

53.     Defendant Smidt is a member of KKR, which owns a controlling percentage of the Texas Holdings Partnership, which, in turn, is the beneficial owner of 1,657,600,000 shares of EFH.  See Exhibit N at 214-215.  KKR also receives management fees from EFH, fees that can be paid, in part, by the Unpaid Interest that rightfully belongs to TCEH and EFCH.  See Exhibit N at 168.

54.     Defendant Young is the beneficial owner of 1,012,222 shares of EFH.  See Exhibit N at 214.

55.     While he was a director of EFCH, Defendant Goltz was a Managing Director of KKR, which owns a controlling percentage of the Texas Holdings Partnership, which, in turn, is the beneficial owner of 1,657,600,000 shares of EFH.  While he was a director, KKR also

received management fees from EFH, fees that could be paid, in part, by the Unpaid Interest that rightfully belongs to TCEH and EFCH. See Exhibit L at 180.

56. The Defendants' direct or indirect ownership of shares in EFH makes their interests diametrically opposed to those of EFCH's creditors: Whereas EFH is stronger for having not paid TCEH the Unpaid Interest, that failure has left TCEH (and EFCH) with fewer funds to pay their creditors, including the Plaintiffs here. Under these circumstances, demand would have been futile.

## COUNT ONE
### (Breach of Fiduciary Duty)

57. Plaintiffs incorporate by reference the preceding paragraphs as if set forth herein.

58. Because EFCH was insolvent at all relevant times—as early as 2008 and no later than 2010—the Defendants were bound to act in the best interests of EFCH and its creditors.

59. The Defendants owed fiduciary duties of loyalty to EFCH and its creditors. Those duties included, among other things, a duty to act honestly and in the best interest of EFCH and its creditors, a duty to avoid conflicts between their personal interests and the interests of EFCH and its creditors, and a duty to exercise their power for a proper purpose. The Defendants breached those duties when they permitted TCEH to make and re-extend daily the Upstream Loans without collecting fair and reasonably equivalent value, including the Unpaid Interest, in return.

60. The Defendants also failed to act in good faith as was required by the fiduciary duty of loyalty. Through the actions described herein, the Defendants showed a demonstrated indifference to their duty to protect the interests of EFCH and its creditors, and acted in a manner unrelated to the best interests of EFCH and its creditors. Their primary loyalty was given to the interests of other affiliated companies, among them EFH. Moreover, the Upstream Loans

14

described herein were authorized and permitted for some purpose other than a genuine attempt to advance corporate welfare. Such transactions were authorized with the intent to harm EFCH and its creditors. The Defendants' breach of their fiduciary duty of loyalty caused loss and damage to EFCH of over $725 million.

61.     Because of EFCH's insolvency, breaches of Defendants' fiduciary duties may be enforced as derivative claims by its creditors, including Plaintiffs.

**WHEREFORE**, Plaintiffs pray for judgment against the Defendants as follows:

(a)     All actual and consequential damages, including the full amount of the Unpaid Interest;

(b)     Pre-judgment and post-judgment interest;

(c)     Attorneys' fees and costs; and

(d)     Such other relief as this Court deems just and proper.

Dated: March 19, 2013          Respectively submitted,

/s/ Jeff P. Prostok
Jeff P. Prostok
State Bar No. 16352500
J. Robert Forshey
State Bar No. 07264200
Suzanne K. Rosen
State Bar No. 00798518
FORSHEY & PROSTOK, LLP
777 Main Street, Suite 1290
Fort Worth, Texas 76102
Telephone: (817) 877-8855
Facsimile: (817) 87704151

and

Lawrence S. Robbins
Kathryn S. Zecca
Ariel N. Lavinbuk
ROBBINS, RUSSELL, ENGLERT, ORSECK,
UNTEREINER & SAUBER LLP
1801 K Street, N.W.

Washington, D.C. 20006
Tel: (202) 775-4500
Fax: (202) 775-4510
lrobbins@robbinsrussell.com

*Attorneys for Plaintiffs*

Case 14-10979-CSS   Doc 79   Filed 04/29/14   Page 99 of 54   PageID 17

## VERIFICATION

I, Mark D. Brodsky, hereby verify that I am familiar with the allegations in the Complaint, and that I have authorized the filing of the Complaint, and that the foregoing is true and correct to the best of my knowledge, information and belief.

DATED: March 11, 2013

        **Aurelius Capital Master, Ltd.**
        By: Aurelius Capital Management, LP, solely as
        investment manager and not in its individual capacity

        By: _____
        Name: Mark D. Brodsky
        Title: Chairman

        **ACP Master, Ltd.**
        By: Aurelius Capital Management, LP, solely as
        investment manager and not in its individual capacity.

        By: _____
        Name: Mark D. Brodsky
        Title: Chairman

## **Appendix Y**

Energy Future Intermediate Holding Co. LLC Form 10-Q filed Nov. 1, 2013

Morningstar® Document Research℠

# FORM 10-Q

## Energy Future Intermediate Holding CO LLC - N/A

**Filed: November 01, 2013 (period: September 30, 2013)**

Quarterly report with a continuing view of a company's financial position

*The information contained herein may not be copied, adapted or distributed and is not warranted to be accurate, complete or timely. The user assumes all risks for any damages or losses arising from any use of this information, except to the extent such damages or losses cannot be limited or excluded by applicable law. Past financial performance is no guarantee of future results.*

Table of Contents

# UNITED STATES
## SECURITIES AND EXCHANGE COMMISSION
#### Washington, D.C. 20549

# FORM 10-Q

☒   QUARTERLY REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934

### FOR THE QUARTERLY PERIOD ENDED SEPTEMBER 30, 2013

— OR —

☐ TRANSITION REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934

Commission File Number 1-34544

# Energy Future Intermediate Holding Company LLC
#### (Exact Name of Registrant as Specified in its Charter)

| | |
|---|---|
| Delaware | 26-1191638 |
| (State of Organization) | (I.R.S. Employer Identification No.) |
| 1601 Bryan Street, Dallas, TX 75201 | (214) 812-4600 |
| (Address of Principal Executive Offices) (Zip Code) | (Registrant's Telephone Number) |

Indicate by check mark whether the registrant (1) has filed all reports required to be filed by Section 13 or 15(d) of the Securities Exchange Act of 1934 during the preceding 12 months (or for such shorter period that the registrant was required to file such reports), and (2) has been subject to such filing requirements for the past 90 days.   Yes   ☒   No ☐

Indicate by check mark whether the registrant has submitted electronically and posted on its corporate Web site, if any, every Interactive Data File required to be submitted and posted pursuant to Rule 405 of Regulation S-T (§232.405 of this chapter) during the preceding 12 months (or for such shorter period that the registrant was required to submit and post such files).   Yes ☒ No ☐

Indicate by check mark whether the registrant is a large accelerated filer, an accelerated filer, a non-accelerated filer, or a smaller reporting company. See definitions of "large accelerated filer," "accelerated filer" and "smaller reporting company" in Rule 12b-2 of the Exchange Act.

Large accelerated filer ☐ Accelerated filer ☐   Non-Accelerated filer ☒ (Do not check if a smaller reporting company)

Smaller reporting company ☐

Indicate by check mark if the registrant is a shell company (as defined in Rule 12b-2 of the Exchange Act).   Yes ☐ No ☒

At October 31, 2013, the outstanding membership interest in Energy Future Intermediate Holding Company LLC was directly held by Energy Future Holdings Corp.

Energy Future Intermediate Holding Company LLC meets the conditions set forth in General Instructions (H)(1)(a) and (b) of Form 10-Q and is therefore filing this report with the reduced disclosure format.

Source: Energy Future Intermediate Holding CO LLC, 10-Q, November 01, 2013

Powered by Morningstar® Document Research℠

The information contained herein may not be copied, adapted or distributed and is not warranted to be accurate, complete or timely. The user assumes all risks for any damages or losses arising from any use of this information, except to the extent such damages or losses cannot be limited or excluded by applicable law. Past financial performance is no guarantee of future results.

## TABLE OF CONTENTS

|  |  | PAGE |
|---|---|---|
| **GLOSSARY** |  | ii |
| PART I. | **FINANCIAL INFORMATION** |  |
| **Item 1.** | **Financial Statements (Unaudited)** |  |
|  | Condensed Statements of Consolidated Income —<br>Three and Nine Months Ended September 30, 2013 and 2012 | 1 |
|  | Condensed Statements of Consolidated Comprehensive Income —<br>Three and Nine Months Ended September 30, 2013 and 2012 | 1 |
|  | Condensed Statements of Consolidated Cash Flows —<br>Nine Months Ended September 30, 2013 and 2012 | 2 |
|  | Condensed Consolidated Balance Sheets —<br>September 30, 2013 and December 31, 2012 | 3 |
|  | Notes to Condensed Consolidated Financial Statements | 4 |
| **Item 2.** | **Management's Discussion and Analysis of Financial Condition and Results of Operations** | 19 |
| **Item 3.** | **Quantitative and Qualitative Disclosures About Market Risk** | 27 |
| **Item 4.** | **Controls and Procedures** | 29 |
| **PART II.** | **OTHER INFORMATION** |  |
| **Item 1.** | **Legal Proceedings** | 29 |
| **Item 1A.** | **Risk Factors** | 29 |
| **Item 4.** | **Mine Safety Disclosures** | 29 |
| **Item 6.** | **Exhibits** | 30 |
| **SIGNATURE** |  | 31 |

Energy Future Intermediate Holding Company LLC's (EFIH) annual reports on Form 10-K, quarterly reports on Form 10-Q, current reports on Form 8-K and any amendments to those reports are made available to the public, free of charge, on the Energy Future Holdings Corp. (EFH Corp.) website at *http://www.energyfutureholdings.com* as soon as reasonably practicable after they have been filed with or furnished to the Securities and Exchange Commission. The information on EFH Corp.'s website shall not be deemed a part of, or incorporated by reference into, this quarterly report on Form 10-Q. The representations and warranties contained in any agreement that we have filed as an exhibit to this quarterly report on Form 10-Q or that we have or may publicly file in the future may contain representations and warranties made by and to the parties thereto at specific dates.   Such representations and warranties may be subject to exceptions and qualifications contained in separate disclosure schedules, may represent the parties' risk allocation in the particular transaction, or may be qualified by materiality standards that differ from what may be viewed as material for securities law purposes.

This quarterly report on Form 10-Q and other Securities and Exchange Commission filings of EFIH and its subsidiaries occasionally make references to EFIH (or "we," "our," "us" or "the company"), EFH Corp., Oncor Holdings or Oncor when describing actions, rights or obligations of their respective subsidiaries. These references reflect the fact that the subsidiaries are consolidated with, or otherwise reflected in, their respective parent company's financial statements for financial reporting purposes. However, these references should not be interpreted to imply that the relevant parent company is actually undertaking the action or has the rights or obligations of the relevant subsidiary company or vice versa.

Source: Energy Future Intermediate Holding CO LLC, 10-Q, November 01, 2013

Powered by Morningstar® Document Research℠

The information contained herein may not be copied, adapted or distributed and is not warranted to be accurate, complete or timely. The user assumes all risks for any damages or losses arising from any use of this information, except to the extent such damages or losses cannot be limited or excluded by applicable law. Past financial performance is no guarantee of future results.

# GLOSSARY

When the following terms and abbreviations appear in the text of this report, they have the meanings indicated below.

| | |
|---|---|
| **2012 Form 10-K** | EFIH's Annual Report on Form 10-K for the year ended December 31, 2012 |
| **Adjusted EBITDA** | Adjusted EBITDA means EBITDA adjusted to exclude noncash items, unusual items and other adjustments allowable under the EFIH Notes and certain debt arrangements of EFH Corp. (as applicable). See the definition of EBITDA below. Adjusted EBITDA and EBITDA are not recognized terms under US GAAP and, thus, are non-GAAP financial measures. We are providing our and EFH Corp.'s Adjusted EBITDA in this Form 10-Q (see reconciliations in Exhibits 99(b) and 99(c)) solely because of the important role that Adjusted EBITDA plays in respect of certain covenants contained in the indentures for the EFIH Notes and EFH Corp. debt pushed down to EFIH as discussed in Note 3 to Financial Statements. We do not intend for Adjusted EBITDA (or EBITDA) to be an alternative to net income as a measure of operating performance or an alternative to cash flows from operating activities as a measure of liquidity or an alternative to any other measure of financial performance presented in accordance with US GAAP. Additionally, we do not intend for Adjusted EBITDA (or EBITDA) to be used as a measure of free cash flow available for management's discretionary use, as the measure excludes certain cash requirements such as interest payments, tax payments and other debt service requirements. Because not all companies use identical calculations, our presentation of Adjusted EBITDA (and EBITDA) may not be comparable to similarly titled measures of other companies. |
| **CREZ** | Competitive Renewable Energy Zone |
| **EBITDA** | earnings (net income) before interest expense, income taxes, depreciation and amortization |
| **EFCH** | Energy Future Competitive Holdings Company LLC, a direct, wholly owned subsidiary of EFH Corp. and the direct parent of TCEH, and/or its subsidiaries, depending on context |
| **EFH Corp.** | Energy Future Holdings Corp., a holding company, and/or its subsidiaries, depending on context, whose major subsidiaries include TCEH and Oncor |
| **EFH Corp. 10.875% Notes** | EFH Corp.'s 10.875% Senior Notes due November 1, 2017, which are guaranteed on a senior unsecured basis by EFIH and EFCH as discussed in Note 3 to Financial Statements |
| **EFH Corp. Toggle Notes** | EFH Corp.'s 11.25%/12.00% Senior Toggle Notes due November 1, 2017, which are guaranteed on a senior unsecured basis by EFIH and EFCH as discussed in Note 3 to Financial Statements |
| **EFIH** | Energy Future Intermediate Holding Company LLC, a direct, wholly owned subsidiary of EFH Corp. and the direct parent of Oncor Holdings, and/or its subsidiaries depending on context. |
| **EFIH Finance** | EFIH Finance Inc., a direct, wholly owned subsidiary of EFIH, formed for the sole purpose of serving as co-issuer with EFIH of certain debt securities |
| **EFIH Notes** | Refers, collectively, to EFIH's and EFIH Finance's 6.875% Senior Secured Notes due August 15, 2017 (EFIH 6.875% Notes), 9.75% Senior Notes due October 15, 2019 (EFIH 9.75% Notes), 10.000% Senior Secured Notes due December 1, 2020 (EFIH 10% Notes), 11% Senior Secured Second Lien Notes due October 1, 2021 (EFIH 11% Notes), 11.75% Senior Secured Second Lien Notes due March 1, 2022 (EFIH 11.75% Notes) and 11.25/12.25% Senior Toggle Notes due December 1, 2018 (EFIH Toggle Notes). |
| **ERCOT** | Electric Reliability Council of Texas, Inc., the independent system operator and the regional coordinator of various electricity systems within Texas |
| **ERISA** | Employee Retirement Income Security Act of 1974, as amended |
| **GAAP** | generally accepted accounting principles |
| **Luminant** | subsidiaries of TCEH engaged in competitive market activities consisting of electricity generation and wholesale energy sales and purchases as well as commodity risk management and trading activities, all largely in Texas |
| **Merger** | The transaction referred to in the Agreement and Plan of Merger, dated February 25, 2007, under which Texas Holdings agreed to acquire EFH Corp., which was completed on October 10, 2007. |

Source: Energy Future Intermediate Holding CO LLC, 10-Q, November 01, 2013

Powered by Morningstar® Document Research℠

The information contained herein may not be copied, adapted or distributed and is not warranted to be accurate, complete or timely. The user assumes all risks for any damages or losses arising from any use of this information, except to the extent such damages or losses cannot be limited or excluded by applicable law. Past financial performance is no guarantee of future results.

| | |
|---|---|
| **Oncor** | Oncor Electric Delivery Company LLC, a direct, majority owned subsidiary of Oncor Holdings, and/or its wholly owned consolidated bankruptcy-remote financing subsidiary, Oncor Electric Delivery Transition Bond Company LLC, depending on context, that is engaged in regulated electricity transmission and distribution activities |
| **Oncor Holdings** | Oncor Electric Delivery Holdings Company LLC, a direct, wholly owned subsidiary of EFIH and the direct majority owner of Oncor, and/or its subsidiaries, depending on context |
| **Oncor Ring-Fenced Entities** | Oncor Holdings and its direct and indirect subsidiaries, including Oncor |
| **PUCT** | Public Utility Commission of Texas |
| **REP** | retail electric provider |
| **SEC** | US Securities and Exchange Commission |
| **Securities Act** | Securities Act of 1933, as amended |
| **Sponsor Group** | Refers, collectively, to certain investment funds affiliated with Kohlberg Kravis Roberts & Co. L.P., TPG Global, LLC (together with its affiliates, TPG) and GS Capital Partners, an affiliate of Goldman, Sachs & Co., that have an ownership interest in Texas Holdings. |
| **TCEH** | Texas Competitive Electric Holdings Company LLC, a direct, wholly owned subsidiary of EFCH and an indirect subsidiary of EFH Corp., and/or its subsidiaries, depending on context, that are engaged in electricity generation and wholesale and retail energy markets activities, and whose major subsidiaries include Luminant and TXU Energy |
| **TCEH Demand Notes** | Refers to certain loans from TCEH to EFH Corp. in the form of demand notes to finance EFH Corp. debt principal and interest payments and, until April 2011, other general corporate purposes of EFH Corp., that were guaranteed on a senior unsecured basis by EFCH and EFIH and were settled by EFH Corp. in January 2013. |
| **Texas Holdings** | Texas Energy Future Holdings Limited Partnership, a limited partnership controlled by the Sponsor Group, that owns substantially all of the common stock of EFH Corp. |
| **Texas Holdings Group** | Texas Holdings and its direct and indirect subsidiaries other than the Oncor Ring-Fenced Entities |
| **TXU Energy** | TXU Energy Retail Company LLC, a direct, wholly owned subsidiary of TCEH that is a REP in competitive areas of ERCOT and is engaged in the retail sale of electricity to residential and business customers |
| **US** | United States of America |
| **VIE** | variable interest entity |

Source: Energy Future Intermediate Holding CO LLC, 10-Q, November 01, 2013

Powered by Morningstar® Document Research℠

The information contained herein may not be copied, adapted or distributed and is not warranted to be accurate, complete or timely. The user assumes all risks for any damages or losses arising from any use of this information, except to the extent such damages or losses cannot be limited or excluded by applicable law. Past financial performance is no guarantee of future results.

**PART I. FINANCIAL INFORMATION**

Item 1.    FINANCIAL STATEMENTS

### ENERGY FUTURE INTERMEDIATE HOLDING COMPANY LLC
### CONDENSED STATEMENTS OF CONSOLIDATED INCOME
#### (Unaudited)

|  | Three Months Ended September 30, | | Nine Months Ended September 30, | |
|  | 2013 | 2012 | 2013 | 2012 |
|---|---|---|---|---|
|  | (millions of dollars) | | | |
| Selling, general and administrative expenses | $ (5) | $ — | $ (5) | $ — |
| Interest income — affiliates (Note 5) | — | 152 | 284 | 462 |
| Interest expense and related charges (Note 7) | (191) | (137) | (566) | (368) |
| Income (loss) before income taxes and equity in earnings of unconsolidated subsidiary | (196) | 15 | (287) | 94 |
| Income tax benefit (expense) | 68 | (6) | 100 | (35) |
| Equity in earnings of unconsolidated subsidiary (net of tax) (Note 2) | 114 | 109 | 255 | 249 |
| Net income (loss) | $ (14) | $ 118 | $ 68 | $ 308 |

See Notes to Financial Statements.

### CONDENSED STATEMENTS OF CONSOLIDATED COMPREHENSIVE INCOME
#### (Unaudited)

|  | Three Months Ended September 30, | | Nine Months Ended September 30, | |
|  | 2013 | 2012 | 2013 | 2012 |
|---|---|---|---|---|
|  | (millions of dollars) | | | |
| Net income (loss) | $ (14) | $ 118 | $ 68 | $ 308 |
| Other comprehensive income (loss) — net of tax effects: | | | | |
| Mark-to-market valuations of holdings of long-term debt of affiliates reclassified to interest income (net of tax benefit of $—, $—, $99 and $—) (Note 5) | — | — | (185) | — |
| Mark-to-market valuations of holdings of long-term debt of affiliates held as available for sale (net of tax expense of $—, $30, $—, and $31) (Note 5) | — | 191 | — | 272 |
| Net effects related to Oncor — reported in equity in earnings of unconsolidated subsidiaries (net of tax benefit of $—, $—, $— and $1) | 1 | 1 | 1 | 2 |
| Total other comprehensive income (loss) | 1 | 192 | (184) | 274 |
| Comprehensive income (loss) | $ (13) | $ 310 | $ (116) | $ 582 |

See Notes to Financial Statements.

1

Source: Energy Future Intermediate Holding CO LLC, 10-Q, November 01, 2013

Powered by Morningstar® Document Research℠

The information contained herein may not be copied, adapted or distributed and is not warranted to be accurate, complete or timely. The user assumes all risks for any damages or losses arising from any use of this information, except to the extent such damages or losses cannot be limited or excluded by applicable law. Past financial performance is no guarantee of future results.

**ENERGY FUTURE INTERMEDIATE HOLDING COMPANY LLC**
**CONDENSED STATEMENTS OF CONSOLIDATED CASH FLOWS**
**(Unaudited)**

| | Nine Months Ended September 30, | |
|---|---|---|
| | **2013** | **2012** |
| | (millions of dollars) | |
| Cash flows — operating activities: | | |
| Net income | $    68 | $    308 |
| Adjustments to reconcile net income to cash used in operating activities: | | |
| Equity in earnings of unconsolidated subsidiary | (255) | (249) |
| Distributions of earnings from unconsolidated subsidiary | 148 | 100 |
| Deferred income taxes, net | (96) | (8) |
| PIK interest income on EFH Corp. Toggle Notes held as investment (Note 5) | — | (259) |
| Interest expense related to pushed-down debt of parent (Notes 3 and 7) | 5 | 57 |
| Interest expense on toggle notes payable in additional principal (Notes 3 and 7) | 130 | — |
| Noncash impairment of investment in long-term debt of affiliates | — | 6 |
| Accretion of purchase discount on investment in long-term debt of affiliates | — | (71) |
| Amortization of debt exchange and issuance costs | (39) | 6 |
| Mark-to-market gain reclassified from accumulated other comprehensive income (Note 5) | (284) | — |
| Changes in operating assets and liabilities: | | |
| Income taxes receivable from/payable to EFH Corp. (Note 6) | (6) | (118) |
| Other changes in operating assets and liabilities | 32 | 32 |
| Cash used in operating activities | (297) | (196) |
| Cash flows — financing activities: | | |
| Issuances of long-term debt (Note 3) | — | 2,000 |
| Interest received on holdings of long-term debt of affiliates (Note 5) | 208 | — |
| Distributions to EFH Corp. (Note 5) | (680) | (950) |
| Debt exchange and issuance costs, premiums and discounts | (6) | (42) |
| Cash provided by (used in) financing activities | (478) | 1,008 |
| Cash flows — investing activities: | | |
| Restricted cash related to debt issuance (Notes 3 and 5) | 680 | (680) |
| Purchase of make-whole agreements between affiliate and unconsolidated subsidiary (Note 6) | — | (159) |
| Sale of make-whole agreements between affiliate and unconsolidated subsidiary (Note 6) | — | 159 |
| Cash provided by (used in) investing activities | 680 | (680) |
| Net change in cash and cash equivalents | (95) | 132 |
| Cash and cash equivalents — beginning balance | 424 | 46 |
| Cash and cash equivalents — ending balance | $    329 | $    178 |

See Notes to Financial Statements.

2

Source: Energy Future Intermediate Holding CO LLC, 10-Q, November 01, 2013

Powered by Morningstar® Document Research℠

The information contained herein may not be copied, adapted or distributed and is not warranted to be accurate, complete or timely. The user assumes all risks for any damages or losses arising from any use of this information, except to the extent such damages or losses cannot be limited or excluded by applicable law. Past financial performance is no guarantee of future results.

**ENERGY FUTURE INTERMEDIATE HOLDING COMPANY LLC**
**CONDENSED CONSOLIDATED BALANCE SHEETS**
**(Unaudited)**

| | | September 30, 2013 | | December 31, 2012 |
|---|---|---|---|---|
| **ASSETS** | | **(millions of dollars)** | | |
| Current assets: | | | | |
| Cash and cash equivalents | $ | 329 | $ | 424 |
| Restricted cash (Note 5) | | — | | 680 |
| Income taxes receivable from EFH Corp. | | 7 | | 1 |
| Other current assets | | 1 | | — |
| Total current assets | | 337 | | 1,105 |
| Investment in Oncor Holdings (Note 2) | | 5,950 | | 5,842 |
| Accumulated deferred income taxes | | 6 | | — |
| Other noncurrent assets, principally unamortized debt premium/discount | | 60 | | 76 |
| Total assets | $ | 6,353 | $ | 7,023 |
| **LIABILITIES AND MEMBERSHIP INTERESTS** | | | | |
| Current liabilities: | | | | |
| Trade accounts and other payables to affiliates | $ | 1 | $ | 2 |
| Accrued interest | | 217 | | 137 |
| Total current liabilities | | 218 | | 139 |
| Accumulated deferred income taxes | | — | | 109 |
| Long-term debt (Note 3) | | 7,803 | | 6,954 |
| Total liabilities | | 8,021 | | 7,202 |
| Commitments and Contingencies (Note 4) | | | | |
| Membership interests (Note 5): | | | | |
| Capital account | | (964) | | 5,049 |
| Long-term debt of affiliates held by EFIH | | (680) | | (5,388) |
| Accumulated other comprehensive income (loss) | | (24) | | 160 |
| Total membership interests | | (1,668) | | (179) |
| Total liabilities and membership interests | $ | 6,353 | $ | 7,023 |

See Notes to Financial Statements.

3

Source: Energy Future Intermediate Holding CO LLC, 10-Q, November 01, 2013

Powered by Morningstar® Document Research℠

The information contained herein may not be copied, adapted or distributed and is not warranted to be accurate, complete or timely. The user assumes all risks for any damages or losses arising from any use of this information, except to the extent such damages or losses cannot be limited or excluded by applicable law. Past financial performance is no guarantee of future results.

**ENERGY FUTURE INTERMEDIATE HOLDING COMPANY LLC**
**NOTES TO CONDENSED CONSOLIDATED FINANCIAL STATEMENTS**
**(Unaudited)**

## 1.    BUSINESS AND SIGNIFICANT ACCOUNTING POLICIES

### Description of Business

References in this report to "we," "our," "us" and "the company" are to EFIH and/or its direct and indirect subsidiaries as apparent in the context.  See "Glossary" for defined terms.

EFIH, a direct, wholly owned subsidiary of EFH Corp., is a Dallas, Texas-based holding company with no operations or operating assets whose wholly owned subsidiary, Oncor Holdings, holds a majority interest (approximately 80%) in Oncor. Oncor is a regulated electricity transmission and distribution company principally engaged in providing delivery services to REPs, including subsidiaries of TCEH, that sell electricity to residential, business and other consumers in the north-central, eastern and western parts of Texas.  EFIH has no reportable business segments.  Oncor Holdings and its subsidiaries (the Oncor Ring-Fenced Entities) are not consolidated in EFIH's financial statements in accordance with consolidation accounting standards related to variable interest entities (VIEs) (see Note 2).

Various "ring-fencing" measures have been taken to enhance the credit quality of Oncor Holdings and Oncor.  These measures serve to mitigate Oncor's and Oncor Holdings' credit exposure to the Texas Holdings Group, which includes EFIH, and to reduce the risk that the assets and liabilities of the Oncor Ring-Fenced Entities would be substantively consolidated with the assets and liabilities of the Texas Holdings Group in the event of a bankruptcy of one or more of Texas Holding Group's subsidiaries. Such measures include, among other things: Oncor's sale of a 19.75% equity interest to Texas Transmission Investment LLC (a limited liability company that owns a 19.75% equity interest in Oncor and is not affiliated with EFH Corp., any of EFH Corp.'s subsidiaries or any member of the Sponsor Group) in November 2008; maintenance of separate books and records for the Oncor Ring-Fenced Entities; the board of directors of Oncor Holdings and Oncor being comprised of a majority of independent directors, and prohibitions on the Oncor Ring-Fenced Entities providing credit support to, or receiving credit support from, any member of the Texas Holdings Group.  The assets and liabilities of the Oncor Ring-Fenced Entities are separate and distinct from those of the Texas Holdings Group, including TXU Energy and Luminant, and none of the assets of the Oncor Ring-Fenced Entities are available to satisfy the debt or contractual obligations of any member of the Texas Holdings Group.  Oncor and Oncor Holdings do not bear any liability for debt or contractual obligations of the Texas Holdings Group (including, but not limited to, our debt obligations), and vice versa.  Accordingly, Oncor Holdings' operations are conducted, and its cash flows managed, independently from the Texas Holdings Group.

### Liquidity Considerations

Our substantial debt, resulting in part from debt issued in exchange for outstanding EFH Corp. debt, requires significant cash flows to be dedicated to interest payments. Our liquidity depends on, among other things, receiving dividends from Oncor Holdings and receiving interest payments on EFH Corp. and TCEH debt we hold. The interest we receive from EFH Corp. has decreased from 2012 following the January 2013 distribution to EFH Corp. of debt previously held by us (see Notes 3 and 5). EFIH has sufficient liquidity to meet its obligations for approximately the next twelve months.  See discussion immediately below regarding EFH Corp.'s discussions with creditors that included proposals to restructure EFIH's debt.

### EFH Corp. Discussions with Creditors

EFH Corp. and its subsidiaries (other than the Oncor Ring-Fenced Entities) continue to consider and evaluate possible transactions and initiatives to address their highly leveraged balance sheets and significant cash interest requirements and have entered into discussions with their lenders and bondholders with respect to such transactions and initiatives.  These transactions and initiatives may include, among others, debt for debt exchanges, recapitalizations, amendments to and extensions of debt obligations and exchanges or conversions of debt for preferred or common equity or warrants, including exchanges or conversions of debt of EFH Corp., EFIH, EFCH and TCEH into preferred or common equity or warrants of EFH Corp., EFIH, EFCH, TCEH and/or any of their subsidiaries. These actions could result in holders of EFH Corp., EFIH, EFCH and TCEH debt instruments not recovering the full principal amount of those obligations.

4

Source: Energy Future Intermediate Holding CO LLC, 10-Q, November 01, 2013

Powered by Morningstar® Document Research℠

The information contained herein may not be copied, adapted or distributed and is not warranted to be accurate, complete or timely. The user assumes all risks for any damages or losses arising from any use of this information, except to the extent such damages or losses cannot be limited or excluded by applicable law. Past financial performance is no guarantee of future results.

In March and April 2013, EFH Corp. engaged in discussions with certain unaffiliated holders of first lien senior secured claims against EFCH, TCEH and certain of TCEH's subsidiaries (the TCEH Creditors) with respect to proposed changes to its capital structure. No agreement was reached as part of those discussions, and in September and October 2013, EFH Corp. engaged in further discussions with the TCEH Creditors, certain unaffiliated holders of unsecured claims against EFIH and a significant creditor with claims against TCEH, EFCH, EFIH and EFH Corp. (collectively, the Creditors) with respect to its capital structure, including the possibility of a consensual, prepackaged restructuring transaction. EFH Corp.'s objectives in these discussions were to promote a sustainable capital structure and maximize enterprise value of EFH Corp. and its subsidiaries by, among other things, encouraging agreement on a restructuring plan that would minimize time spent in a restructuring through a proactive and organized solution; minimizing any potential adverse tax impacts of a restructuring; maintaining EFH Corp. in one consolidated group; maintaining focus on operating its businesses, and maintaining EFH Corp.'s high-performing work force.

EFH Corp. and the Creditors discussed a number of proposed changes to EFH Corp.'s capital structure. Certain proposals contemplated that some combination of EFH Corp. and certain of its subsidiaries (including EFIH, EFCH and TCEH but excluding the Oncor Ring-Fenced Entities) would implement a plan of reorganization by commencing one or more voluntary cases under Chapter 11 of the United States Bankruptcy Code (the Code). Such proposals would have resulted in a prenegotiated restructuring of EFCH's approximately $ 32.2 billion principal amount of debt, EFH Corp.'s approximately $ 650 million principal amount of debt and EFIH's approximately $ 7.6 billion principal amount of debt (each as of September 30, 2013 and excluding debt held by affiliates) and contemplated that after the restructuring EFH Corp. would continue to hold all of the equity interests in EFCH and EFIH; EFCH would continue to hold all of the equity interests in TCEH; and EFIH would continue to hold all of the equity interests in Oncor Holdings. Another proposal contemplated that EFIH (excluding Oncor Holdings and its subsidiaries) would implement a plan of reorganization by commencing a stand-alone voluntary case under the Code. Such proposal contemplated that after the restructuring certain creditors of EFIH would own a substantial majority of, and certain creditors of EFH Corp. and the equity holders of EFH Corp. would collectively own a minority of, the equity interests in EFIH. The confirmation of any plans of reorganization in such cases would be subject to applicable regulatory approvals. EFH Corp. and the Creditors have not reached agreement on the terms of any change in our capital structure.

EFH Corp. is not currently engaged in ongoing negotiations with the principals of any of the Creditors. Although the Creditors are not currently engaged in ongoing negotiations with EFH Corp., certain of the Creditors have directed their advisors to continue to work with EFH Corp. and its advisors to explore further whether the parties can reach an agreement on the terms of a consensual restructuring. EFH Corp. will continue to consider and evaluate a range of future changes to its capital structure, in addition to the proposed changes described above, which may include filing a voluntary case under Chapter 11 of the Code for some or all of EFH Corp. and its subsidiaries (excluding the Oncor Ring-Fenced Entities).

### Basis of Presentation

The condensed consolidated financial statements have been prepared in accordance with US GAAP and on the same basis as the audited financial statements included in our 2012 Form 10-K. Our investment in Oncor Holdings does not meet accounting standards criteria for consolidation and is accounted for under the equity method (see Note 2). Adjustments (consisting of normal recurring accruals) necessary for a fair presentation of the results of operations and financial position have been included therein. All intercompany items and transactions have been eliminated in consolidation. Certain information and footnote disclosures normally included in annual consolidated financial statements prepared in accordance with US GAAP have been omitted pursuant to the rules and regulations of the SEC. Because the condensed consolidated interim financial statements do not include all of the information and footnotes required by US GAAP, they should be read in conjunction with the audited financial statements and related notes included in our 2012 Form 10-K. The results of operations for an interim period may not give a true indication of results for a full year. All dollar amounts in the financial statements and tables in the notes are stated in millions of US dollars unless otherwise indicated.

### Use of Estimates

Preparation of financial statements requires estimates and assumptions about future events that affect the reporting of assets and liabilities at the balance sheet dates and the reported amounts of income and expense, including fair value measurements. In the event estimates and/or assumptions prove to be different from actual amounts, adjustments are made in subsequent periods to reflect more current information.

5

Powered by Morningstar® Document Research℠

The information contained herein may not be copied, adapted or distributed and is not warranted to be accurate, complete or timely. The user assumes all risks for any damages or losses arising from any use of this information, except to the extent such damages or losses cannot be limited or excluded by applicable law. Past financial performance is no guarantee of future results.

## 2.    INVESTMENT IN ONCOR HOLDINGS

We have an equity investment in Oncor Holdings, which holds an approximate 80% interest in Oncor. Oncor Holdings is considered a variable interest entity (VIE). A VIE is an entity with which we have a relationship or arrangement that indicates some level of control over the entity or results in economic risks to us. Accounting standards require consolidation of a VIE if we have (a) the power to direct the significant activities of the VIE and (b) the right or obligation to absorb profit and loss from the VIE (primary beneficiary). In determining the appropriateness of consolidation of a VIE, we evaluate its purpose, governance structure, decision making processes and risks that are passed on to its interest holders. We also examine the nature of any related party relationships among the interest holders of the VIE and the nature of any special rights granted to the interest holders of the VIE.

We do not consolidate Oncor Holdings and instead account for it as an equity method investment because the structural and operational "ring-fencing" measures discussed in Note 1 prevent us from having power to direct the significant activities of Oncor Holdings or Oncor. In accordance with accounting standards, we account for our investment in Oncor Holdings under the equity method, as opposed to the cost method, based on our level of influence over its activities.

The carrying value of our variable interest in Oncor Holdings totaled $5.950 billion and $5.842 billion at September 30, 2013 and December 31, 2012, respectively, and is reported as investment in Oncor Holdings in our balance sheet. Our maximum exposure to loss from this investment does not exceed our carrying value.

See Note 6 for discussion of Oncor Holdings' and Oncor's transactions with EFH Corp. and its other subsidiaries.

***Distributions from Oncor Holdings*** — Oncor Holdings' distributions of earnings to us totaled $148 million and $100 million for the nine months ended September 30, 2013 and 2012, respectively. Distributions may not be paid except to the extent Oncor maintains a required regulatory capital structure as discussed below. At September 30, 2013, $187 million was eligible to be distributed to Oncor's members after taking into account the regulatory capital structure limit, of which approximately 80% relates to our ownership interest in Oncor. The boards of directors of each of Oncor and Oncor Holdings can withhold distributions to the extent the applicable board determines in good faith that it is necessary to retain such amounts to meet expected future requirements of Oncor and/or Oncor Holdings.

Oncor's distributions are limited by its regulatory capital structure, which is required to be at or below the assumed debt-to-equity ratio established periodically by the PUCT for ratemaking purposes, which is currently set at 60% debt to 40% equity. At September 30, 2013, Oncor's regulatory capitalization ratio was 58.7% debt and 41.3% equity. The PUCT has the authority to determine what types of debt and equity are included in a utility's debt-to-equity ratio. For purposes of this ratio, debt is calculated as long-term debt plus unamortized gains on reacquired debt less unamortized issuance expenses, premiums and losses on reacquired debt. The debt calculation excludes bonds issued by Oncor Electric Delivery Transition Bond Company LLC, which were issued in 2003 and 2004 to recover specific generation-related regulatory assets and other qualified costs. Equity is calculated as membership interests determined in accordance with US GAAP, excluding the effects of accounting for the Merger (which included recording the initial goodwill and fair value adjustments and the subsequent related impairments and amortization).

Source: Energy Future Intermediate Holding CO LLC, 10-Q, November 01, 2013

The information contained herein may not be copied, adapted or distributed and is not warranted to be accurate, complete or timely. The user assumes all risks for any damages or losses arising from any use of this information, except to the extent such damages or losses cannot be limited or excluded by applicable law. Past financial performance is no guarantee of future results.

Powered by Morningstar® Document Research℠

***Oncor Holdings Financial Statements*** — Condensed statements of consolidated income of Oncor Holdings and its subsidiaries for the three and nine months ended September 30, 2013 and 2012 are presented below:

| | Three Months Ended September 30, | | Nine Months Ended September 30, | |
| --- | --- | --- | --- | --- |
| | 2013 | 2012 | 2013 | 2012 |
| Operating revenues | $ 966 | $ 925 | $ 2,640 | $ 2,536 |
| Operation and maintenance expenses | (315) | (292) | (919) | (873) |
| Depreciation and amortization | (207) | (201) | (608) | (577) |
| Taxes other than income taxes | (112) | (113) | (315) | (313) |
| Other income | 4 | 6 | 14 | 20 |
| Other deductions | (2) | (1) | (11) | (4) |
| Interest income | — | 3 | 2 | 24 |
| Interest expense and related charges | (94) | (96) | (283) | (279) |
| Income before income taxes | 240 | 231 | 520 | 534 |
| Income tax expense | (97) | (95) | (199) | (221) |
| Net income | 143 | 136 | 321 | 313 |
| Net income attributable to noncontrolling interests | (29) | (27) | (66) | (64) |
| Net income attributable to Oncor Holdings | $ 114 | $ 109 | $ 255 | $ 249 |

7

Powered by Morningstar® Document Research℠

The information contained herein may not be copied, adapted or distributed and is not warranted to be accurate, complete or timely. The user assumes all risks for any damages or losses arising from any use of this information, except to the extent such damages or losses cannot be limited or excluded by applicable law. Past financial performance is no guarantee of future results.

Assets and liabilities of Oncor Holdings at September 30, 2013 and December 31, 2012 are presented below:

| | September 30, 2013 | December 31, 2012 |
|---|---|---|
| **ASSETS** | | |
| Current assets: | | |
| Cash and cash equivalents | $ 17 | $ 45 |
| Restricted cash | 61 | 55 |
| Trade accounts receivable — net | 404 | 338 |
| Trade accounts and other receivables from affiliates | 158 | 53 |
| Inventories | 67 | 73 |
| Accumulated deferred income taxes | 35 | 26 |
| Prepayments and other current assets | 82 | 82 |
| Total current assets | 824 | 672 |
| Restricted cash | 16 | 16 |
| Other investments | 85 | 83 |
| Property, plant and equipment — net | 11,794 | 11,318 |
| Goodwill | 4,064 | 4,064 |
| Regulatory assets — net | 1,512 | 1,788 |
| Other noncurrent assets | 70 | 78 |
| Total assets | $ 18,365 | $ 18,019 |
| **LIABILITIES** | | |
| Current liabilities: | | |
| Short-term borrowings | $ 860 | $ 735 |
| Long-term debt due currently | 129 | 125 |
| Trade accounts payable — nonaffiliates | 100 | 121 |
| Income taxes payable to EFH Corp. | 35 | 34 |
| Accrued taxes other than income | 134 | 153 |
| Accrued interest | 65 | 95 |
| Other current liabilities | 111 | 110 |
| Total current liabilities | 1,434 | 1,373 |
| Accumulated deferred income taxes | 1,881 | 1,736 |
| Investment tax credits | 22 | 24 |
| Long-term debt, less amounts due currently | 5,422 | 5,400 |
| Other noncurrent liabilities and deferred credits | 1,931 | 1,999 |
| Total liabilities | $ 10,690 | $ 10,532 |

8

Source: Energy Future Intermediate Holding CO LLC, 10-Q, November 01, 2013

Powered by Morningstar® Document Research℠

The information contained herein may not be copied, adapted or distributed and is not warranted to be accurate, complete or timely. The user assumes all risks for any damages or losses arising from any use of this information, except to the extent such damages or losses cannot be limited or excluded by applicable law. Past financial performance is no guarantee of future results.

## 3.    LONG-TERM DEBT

At September 30, 2013 and December 31, 2012, long-term debt consisted of the following:

| | September 30, 2013 | December 31, 2012 |
|---|---|---|
| Debt issued by EFIH: | | |
| 6.875% Fixed Senior Secured First Lien Notes due August 15, 2017 | $        503 | $        503 |
| 10% Fixed Senior Secured First Lien Notes due December 1, 2020 | 3,482 | 2,180 |
| 11% Fixed Senior Secured Second Lien Notes due October 1, 2021 | 406 | 406 |
| 11.75% Fixed Senior Secured Second Lien Notes due March 1, 2022 | 1,750 | 1,750 |
| 11.25/12.25% Senior Toggle Notes due December 1, 2018 | 1,476 | 1,304 |
| 9.75% Fixed Senior Notes due October 15, 2019 | 2 | 141 |
| Unamortized premium | 303 | 351 |
| Unamortized discount | (149) | (131) |
| Total debt issued by EFIH | 7,773 | 6,504 |
| Pushed down debt (a): | | |
| 10% EFH Corp. Fixed Senior Notes due January 15, 2020 | — | 331 |
| 9.75% EFH Corp. Fixed Senior Notes due October 15, 2019 | — | 57 |
| 10.875% EFH Corp. Fixed Senior Notes due November 1, 2017 | 17 | 32 |
| 11.25/12.00% EFH Corp. Senior Toggle Notes due November 1, 2017 | 13 | 30 |
| Total pushed down debt | 30 | 450 |
| Total long-term debt (b) | $      7,803 | $      6,954 |

(a) Represents 50% of the amount of these EFH Corp. securities guaranteed by EFIH and pushed down per the discussion below under "Guarantees and Push Down of EFH Corp. Debt."

(b) EFIH had no long-term debt due currently at September 30, 2013 and December 31, 2012.

### *Debt Related Activity in 2013*

*EFIH Debt Exchanges and Distributions Involving EFH Corp. Debt* — In exchanges in January 2013, EFIH and EFIH Finance issued $1.302 billion principal amount of EFIH 10% Senior Secured Notes due 2020 (New EFIH 10% Notes) in exchange for $1.310 billion total principal amount of EFH Corp. and EFIH senior secured notes consisting of: (i) $113 million principal amount of EFH Corp. 9.75% Senior Secured Notes due 2019 (EFH Corp. 9.75% Notes), (ii) $1.058 billion principal amount of EFH Corp. 10% Senior Secured Notes due 2020 (EFH Corp. 10% Notes), and (iii) $139 million principal amount of EFIH 9.75% Senior Secured Notes due 2019 (EFIH 9.75% Notes). The New EFIH 10% Notes have terms and conditions substantially the same as the existing EFIH 10% Notes discussed below. EFIH cancelled the EFIH notes it received in the exchanges.

In connection with these debt exchange transactions, EFH Corp. received the requisite consents from holders of the EFH Corp. 9.75% Notes and EFH Corp. 10% Notes and EFIH received the requisite consents from holders of the EFIH 9.75% Notes to certain amendments to the respective indentures governing such notes. These amendments, among other things, (i) eliminated EFIH's pledge of its 100% ownership of the membership interests it owns in Oncor Holdings as collateral for the EFIH 9.75% Notes, (ii) made EFCH and EFIH unrestricted subsidiaries under the EFH Corp. 9.75% Notes and EFH Corp. 10% Notes, thereby eliminating EFCH's unsecured and EFIH's secured guarantees of the notes, (iii) eliminated substantially all of the restrictive covenants in the indentures and (iv) eliminated certain events of default, modified covenants regarding mergers and consolidations and modified or eliminated certain other provisions in these indentures.

In additional exchanges in January 2013, EFIH and EFIH Finance issued $89 million principal amount of additional 11.25/12.25% Toggle Notes due 2018 (EFIH Toggle Notes) in exchange for $95 million total principal amount of EFH Corp. senior notes consisting of: (i) $31 million principal amount of EFH Corp. 10.875% Senior Notes due 2017 (EFH Corp. 10.875% Notes), (ii) $33 million principal amount of EFH Corp. 11.25%/12.00% Senior Toggle Notes due 2017 (EFH Corp. Toggle Notes), (iii) $2 million principal amount of EFH Corp. 5.55% Series P Notes due 2014 (EFH Corp. 5.55% Notes) and (iv) $29 million principal amount of EFH Corp. 6.50% Series Q Notes due 2024 (EFH Corp. 6.50% Notes). The additional EFIH Toggle Notes have the same terms and conditions as the existing EFIH Toggle Notes discussed below.

The aggregate principal amount of EFH Corp. debt received in the January 2013 exchanges totaled $1.266 billion.

Source: Energy Future Intermediate Holding CO LLC, 10-Q, November 01, 2013

Powered by Morningstar® Document Research℠

The information contained herein may not be copied, adapted or distributed and is not warranted to be accurate, complete or timely. The user assumes all risks for any damages or losses arising from any use of this information, except to the extent such damages or losses cannot be limited or excluded by applicable law. Past financial performance is no guarantee of future results.

*Accounting and Income Tax Effects of the January 2013 Debt Exchanges* — In consideration of the circumstances and terms of the exchanges, accounting rules require that the net loss on the exchanges, which totaled $21 million, be deferred and amortized to interest expense over the life of the debt issued. The deferred loss is reported as debt discount associated with the EFIH 10% Notes and EFIH Toggle Notes. The deferred loss and the related deferred tax liability were pushed down to EFIH as a membership interests transaction.

### Guarantee and Push Down of EFH Corp. Debt

Merger-related debt of EFH Corp. and its subsidiaries consists of debt issued or existing at the time of the Merger. Debt issued in exchange for Merger-related debt is considered Merger-related. Debt issuances for cash are considered Merger-related debt to the extent the proceeds are used to repurchase Merger-related debt. EFCH and EFIH (excluding their subsidiaries) fully and unconditionally guarantee on a joint and several basis the Merger-related debt of EFH Corp. (parent). Such debt is subject to push down in accordance with SEC Staff Accounting Bulletin Topic 5-J, and as a result, a portion of such debt and related interest expense is reflected in our financial statements. Merger-related debt of EFH Corp. held by its subsidiaries is not subject to push down.

As a result of transactions in the first quarter 2013 discussed above and in Note 5, debt guaranteed and subject to push down at September 30, 2013 totals $60 million and consists of $33 million principal amount of EFH Corp. 10.875% Senior Notes and $27 million principal amount of EFH Corp. 11.25/12.00% Senior Toggle Notes. The amount reflected in our balance sheet as pushed down debt ($30 million and $450 million at September 30, 2013 and December 31, 2012, respectively, as shown in the long-term debt table above) represents 50% of the principal amount of the EFH Corp. Merger-related debt guaranteed. This percentage reflects the fact that at the time of the Merger, the equity investments of EFCH and EFIH in their respective operating subsidiaries were essentially equal amounts. Because payment of principal and interest on the debt is the responsibility of EFH Corp., we record the settlement of such amounts as noncash capital contributions from EFH Corp.

The following table presents an analysis of the total outstanding principal amount of EFH Corp. debt guaranteed by EFCH and EFIH at December 31, 2012 and September 30, 2013, respectively.

| Securities Guaranteed (principal amounts) | December 31, 2012 | | | | Debt Cancelled in 2013 (c) | Total Guaranteed September 30, 2013 (d) |
|---|---|---|---|---|---|---|
| | Held by EFIH | Subject to Push Down | Not Merger-Related | Total Guaranteed | | |
| EFH Corp. 9.75% Senior Notes (a) | $    — | $    115 | $    — | $    115 | $    113 | $    — |
| EFH Corp. 10% Senior Notes (a) | — | 661 | 400 | 1,061 | 1,058 | — |
| EFH Corp. 10.875% Senior Notes | 1,685 | 64 | — | 1,749 | 1,715 | 33 |
| EFH Corp. 11.25/12.00% Senior Toggle Notes | 3,441 | 60 | — | 3,501 | 3,474 | 27 |
| Subtotal | $  5,126 | $    900 | $    400 | 6,426 | $  6,360 | 60 |
| TCEH Demand Notes (b) | | | | 698 | | — |
| Total | | | | $  7,124 | | $    60 |

(a) As a result of transactions completed in the first quarter 2013, as discussed above, the guarantees of the EFH Corp. 9.75% Notes and EFH Corp. 10% Notes were eliminated.
(b) The TCEH Demand Notes were settled in January 2013. See Note 6.
(c) See Note 5.
(d) These amounts are subject to push down.

Source: Energy Future Intermediate Holding CO LLC, 10-Q, November 01, 2013

Powered by Morningstar® Document Research℠

The information contained herein may not be copied, adapted or distributed and is not warranted to be accurate, complete or timely. The user assumes all risks for any damages or losses arising from any use of this information, except to the extent such damages or losses cannot be limited or excluded by applicable law. Past financial performance is no guarantee of future results.

*Information Regarding Other Significant Outstanding Debt*

*EFIH 6.875% Senior Secured Notes* — At September 30, 2013, the principal amount of the EFIH 6.875% Notes totaled $503 million. These notes mature in August 2017, with interest payable in cash semiannually in arrears on February 15 and August 15 at a fixed rate of 6.875% per annum.  The EFIH 6.875% Notes are secured on a first-priority basis by EFIH's pledge of its  100% ownership of the membership interests in Oncor Holdings (the EFIH Collateral) on an equal and ratable basis with the EFIH 10% Notes.

The EFIH 6.875% Notes are senior obligations of EFIH and rank equally in right of payment with all senior indebtedness of EFIH and are senior in right of payment to any future subordinated indebtedness of EFIH.  The EFIH 6.875% Notes are effectively senior to all second lien and unsecured indebtedness of EFIH, to the extent of the value of the EFIH Collateral, and are effectively subordinated to any indebtedness of EFIH secured by assets of EFIH other than the EFIH Collateral, to the extent of the value of such assets.  Furthermore, the EFIH 6.875% Notes are structurally subordinated to all indebtedness and other liabilities of EFIH's subsidiaries (other than EFIH Finance), including Oncor Holdings and its subsidiaries.  The holders of the EFIH 6.875% Notes vote as a separate class from the holders of the EFIH 10% Notes.

The EFIH 6.875% Notes were issued in private placements and are not registered under the Securities Act.  EFIH has agreed to use its commercially reasonable efforts to register with the SEC notes having substantially identical terms as the EFIH 6.875% Notes (except for provisions relating to transfer restrictions and payment of additional interest) as part of an offer to exchange freely tradable notes for the EFIH 6.875% Notes.  Because the exchange offer has not yet been completed, the annual interest rate on the EFIH 6.875% Notes increased by  25 basis points (to 7.125%) on August 15, 2013 and will increase by an additional 25 basis points (to 7.375%) on November 15, 2013.  The interest rate on the EFIH 6.875% Notes will remain at that level until completion of the exchange offer, at which time the interest rate on the notes will revert to 6.875%.

*EFIH 10% Senior Secured Notes* — At September 30, 2013, the principal amount of the EFIH 10% Notes totaled $3.482 billion. The notes mature in December 2020, with interest payable in cash semiannually in arrears on June 1 and December 1 at a fixed rate of  10% per annum. The notes are secured by the EFIH Collateral on an equal and ratable basis with the EFIH 6.875% Notes.

The EFIH 10% Notes are senior obligations of EFIH and rank equally in right of payment with all existing and future senior indebtedness of EFIH, including the EFIH 6.875% Notes. The EFIH 10% Notes have substantially the same terms, covenants and events of default as the EFIH 6.875% Notes.  The holders of the EFIH 10% Notes vote as a separate class from the holders of the EFIH 6.875% Notes.

*EFIH 11% Senior Secured Second Lien Notes* — At September 30, 2013, the principal amount of the EFIH 11% Notes totaled $406 million. The notes mature in October 2021, with interest payable in cash semiannually in arrears on May 15 and November 15 at a fixed rate of  11% per annum. The EFIH 11% Notes are secured on a second-priority basis by the EFIH Collateral on an equal and ratable basis with the EFIH 11.75% Notes.

The EFIH 11% Notes are senior obligations of EFIH and EFIH Finance and rank equally in right of payment with all senior indebtedness of EFIH and are effectively senior in right of payment to all existing or future unsecured debt of EFIH to the extent of the value of the EFIH Collateral.  The notes have substantially the same terms, covenants and events of default as the EFIH 11.75% Notes discussed below, and the holders of the EFIH 11% Notes will generally vote as a single class with the holders of the EFIH 11.75% Notes.

*EFIH 11.75% Senior Secured Second Lien Notes* — At September 30, 2013, the principal amount of the EFIH 11.75% Notes totaled $1.750 billion. These notes mature in March 2022, with interest payable in cash semiannually in arrears on March 1 and September 1 at a fixed rate of  11.75% per annum. The EFIH 11.75% Notes are secured on a second-priority basis by the EFIH Collateral on an equal and ratable basis with the EFIH 11% Notes.  The EFIH 11.75% Notes have substantially the same covenants as the EFIH 11% Notes, and the holders of the EFIH 11.75% Notes will generally vote as a single class with the holders of the EFIH 11% Notes.

The EFIH 11.75% Notes were issued in private placements and are not registered under the Securities Act.  EFIH has agreed to use its commercially reasonable efforts to register with the SEC notes having substantially identical terms as the EFIH 11.75% Notes (except for provisions relating to transfer restrictions and payment of additional interest) as part of an offer to exchange freely tradable notes for the EFIH 11.75% Notes.  Because the exchange offer has not yet been completed, the annual interest rate on the EFIH 11.75% Notes increased by  25 basis points (to 12.00%) on February 5, 2013 and by an additional 25 basis points (to 12.25%) on May 6, 2013. The interest rate on the EFIH 11.75% Notes will remain at that level until completion of the exchange offer, at which time the interest rate on the notes will revert to  11.75%.

Source: Energy Future Intermediate Holding CO LLC, 10-Q, November 01, 2013

Powered by Morningstar® Document Research℠

The information contained herein may not be copied, adapted or distributed and is not warranted to be accurate, complete or timely. The user assumes all risks for any damages or losses arising from any use of this information, except to the extent such damages or losses cannot be limited or excluded by applicable law. Past financial performance is no guarantee of future results.

***EFIH 11.25/12.25% Senior Toggle Notes*** — At September 30, 2013, the principal amount of the EFIH Toggle Notes totaled $1.476 billion.  These notes mature in December 2018, with interest payable semiannually in arrears on June 1 and December 1 at a fixed rate of  11.25% per annum for cash interest and 12.25% per annum for PIK Interest.  For any interest period until June 1, 2016, EFIH may elect to pay interest on the Toggle Notes (i) entirely in cash; (ii) by increasing the principal amount of the notes or by issuing new EFIH Toggle Notes (PIK Interest); or (iii)  50% in cash and 50% in PIK Interest. Once EFIH makes a PIK election, which it did effective with the June 1, 2013 interest payment, the election is valid for each succeeding interest payment period until EFIH revokes the election.

The EFIH Toggle Notes were issued in private placements and are not registered under the Securities Act.  EFIH has agreed to use its commercially reasonable efforts to register with the SEC notes having substantially identical terms as the EFIH Toggle Notes (except for provisions relating to transfer restrictions and payment of additional interest) as part of an offer to exchange freely tradable notes for the EFIH Toggle Notes.  If an exchange offer for the notes is not completed within 365 days after the date (December 5, 2012) the initial EFIH Toggle notes were issued (a Registration Default), the annual interest rate on the notes will increase by 25 basis points for the first 90-day period during which a Registration Default continues, and thereafter, the annual interest rate on the notes will increase by 50 basis points for the remaining period during which the Registration Default continues.  If the Registration Default is cured, the interest rate on the notes will revert to the original level.

### Fair Value of Long-Term Debt

At September 30, 2013 and December 31, 2012 , the estimated fair value of our long-term debt (including pushed down debt) totaled  $7.545 billion and $7.258 billion, respectively, and the carrying amount totaled $7.803 billion and $6.954 billion, respectively. We determine fair value in accordance with accounting standards and at September 30, 2013 our debt fair value represents Level 2 valuations.  We obtain security pricing from a vendor who uses broker quotes and third-party pricing services to determine fair values.  Where relevant, these prices are validated through subscription services such as Bloomberg.

### 4.    COMMITMENTS AND CONTINGENCIES

#### Guarantees

See Notes 3 and 6 for discussion of our guarantees of certain EFH Corp. debt.

#### Legal Proceedings

From time to time, we may be involved in various legal and administrative proceedings in the normal course of business the ultimate resolutions of which, in the opinion of management, should not have a material effect upon our financial condition, results of operations or liquidity.

### 5.    MEMBERSHIP INTERESTS

#### Cash Distributions

In January 2013, EFIH's board of directors declared, and EFIH paid, a cash distribution to EFH Corp. of  $680 million (which as of December 31, 2012 was recorded as restricted cash), which was used by EFH Corp. to settle the TCEH Demand Notes (see Note  6 ).

In February 2012, EFIH's board of directors declared, and EFIH paid, a cash distribution to EFH Corp. of  $950 million, which was used by EFH Corp. to partially settle the TCEH Demand Notes.

12

Powered by Morningstar® Document Research℠

The information contained herein may not be copied, adapted or distributed and is not warranted to be accurate, complete or timely. The user assumes all risks for any damages or losses arising from any use of this information, except to the extent such damages or losses cannot be limited or excluded by applicable law. Past financial performance is no guarantee of future results.

The indentures governing the EFIH Notes include covenants that, among other things and subject to certain exceptions, restrict our ability to pay dividends or make other distributions with respect to our membership interests. Accordingly, our net income is restricted from being used to make distributions with respect to our membership interests unless such distributions are expressly permitted under the indentures. The indentures further restrict us from making any distribution to EFH Corp. for the ultimate purpose of making a dividend on EFH Corp.'s common stock unless at the time, and after giving effect to such distribution, our consolidated leverage ratio is equal to or less than 6.0 to 1.0. Under the indentures governing the EFIH Notes, the term "consolidated leverage ratio" is defined as the ratio of EFIH's consolidated total debt (as defined in the indentures) to EFIH's Adjusted EBITDA on a consolidated basis, including Oncor Holdings and its subsidiaries. EFIH's consolidated leverage ratio was 7.7 to 1.0 at September 30, 2013.

In addition, under applicable law, we are prohibited from paying any distribution to the extent that immediately following payment of such distribution, we would be insolvent.

### Long-Term Debt Of Affiliates Held by EFIH

As a result of debt exchanges in 2009 through 2013, we held debt securities of EFH Corp. and TCEH as presented in the table below. In December 2012, management determined that some or all of these securities may be returned as dividends to EFH Corp.; accordingly, the balances were reclassified at that time from investment in long-term debt of affiliates and reported as a reduction of membership interests. The securities are no longer marked-to-market. Interest received reduces the carrying value of the securities and thus increases membership interests.

Prior to December 2012, when the debt securities were reported as investment in long-term debt of affiliates, the securities were classified as available for sale, interest was recorded in the income statement as interest income and unrealized gains or losses were recorded in other comprehensive income unless such losses were other than temporary, in which case they were recorded as impairments in net income.

In the first quarter 2013, EFIH distributed $6.360 billion principal amount of EFH Corp. debt that it previously received in debt exchanges as a dividend to EFH Corp., which cancelled the notes, leaving $1.361 billion principal amount of affiliate debt still held by EFIH. The $6.360 billion principal amount consisted of $5.125 billion of debt held at December 31, 2012 and $1.235 billion (of the $1.266 billion) received in debt exchanges in January 2013 (see Note 3). The dividend included $1.715 billion principal amount of EFH Corp. 10.875% Notes, $3.474 billion principal amount of EFH Corp. Toggle Notes, $1.058 billion principal amount of EFH Corp. 10% Notes and $113 million principal amount of EFH Corp. 9.75% Notes.

The principal amounts, coupon rates, maturities and carrying value of holdings of long-term debt of affiliates are as follows:

| | September 30, 2013 | | December 31, 2012 | |
|---|---|---|---|---|
| | Principal Amount | Carrying Value (a) | Principal Amount | Carrying Value |
| EFH Corp. 10.875% Fixed Senior Notes due November 1, 2017 | $ — | $ — | $ 1,685 | $ 1,502 |
| EFH Corp. 11.25/12.00% Senior Toggle Notes due November 1, 2017 | — | — | 3,441 | 3,108 |
| EFH Corp. 5.55% Fixed Senior Notes Series P due November 15, 2014 | 281 | 193 | 279 | 197 |
| EFH Corp. 6.50% Fixed Senior Notes Series Q due November 15, 2024 | 545 | 267 | 516 | 260 |
| EFH Corp. 6.55% Fixed Senior Notes Series R due November 15, 2034 | 456 | 209 | 456 | 221 |
| TCEH 10.25% Fixed Senior Notes due November 1, 2015 (both periods include $48 million principal amount of Series B Notes) | 79 | 11 | 79 | 13 |
| Total | $ 1,361 | 680 | $ 6,456 | 5,301 |
| Accrued interest receivable | | — | | 87 |
| Balance reported as reduction in membership interests | | $ 680 | | $ 5,388 |

(a) Changes from December 31, 2012 reflect the exchange transactions discussed in Note 3, the dividend discussed immediately below and cash interest received on the securities.

As a result of the distribution of all the EFH Corp. 10.875% Notes and EFH Corp. Toggle Notes EFIH held, we recorded a gain of $284 million (pretax) representing the reclassification to interest income of mark-to-market gains reported in accumulated other comprehensive income (AOCI). Prior to our issuance of the dividend, we received payment from EFH Corp. of the $163 million of accrued interest on the notes, which was recorded in membership interests.

Source: Energy Future Intermediate Holding CO LLC, 10-Q, November 01, 2013

Powered by Morningstar® Document Research℠

The information contained herein may not be copied, adapted or distributed and is not warranted to be accurate, complete or timely. The user assumes all risks for any damages or losses arising from any use of this information, except to the extent such damages or losses cannot be limited or excluded by applicable law. Past financial performance is no guarantee of future results.

The indentures governing the EFIH Notes do not limit our ability to dividend the EFH Corp. debt securities that we hold to EFH Corp. so long as we received such securities in exchange for the issuance of EFIH debt, which applies to all the EFH Corp. debt we currently hold.

Interest income recorded on these securities for the nine months ended September 30, 2013 and 2012 were as follows:

| | Three Months Ended September 30, | | Nine Months Ended September 30, | |
| --- | --- | --- | --- | --- |
| | 2013 | 2012 | 2013 | 2012 |
| Interest received/accrued | $ — | $ 46 | $ — | $ 138 |
| Accretion of purchase discount | — | 23 | — | 71 |
| PIK interest received/accrued related to EFH Corp. Toggle Notes | — | 89 | — | 259 |
| Mark-to-market gain reclassified from AOCI | — | — | 284 | — |
| Impairments related to issuer credit | — | (6) | — | (6) |
| Total interest | $ — | $ 152 | $ 284 | $ 462 |

## Membership Interests

The following table presents the changes (all after tax) to membership interests for the nine months ended September 30, 2013:

| | Capital Accounts | Long-Term Debt of Affiliate Held by EFIH | Accumulated Other Comprehensive Income (Loss) | Total Membership Interests |
| --- | --- | --- | --- | --- |
| Balance at December 31, 2012 | $ 5,049 | $ (5,388) | $ 160 | $ (179) |
| Net income | 68 | — | — | 68 |
| Cash distributions to EFH Corp. | (680) | — | — | (680) |
| Effect of debt push-down from EFH Corp. (a) | 437 | — | — | 437 |
| Dividend to EFH Corp. of long-term debt of affiliate ($6.360 billion principal amount) | (5,778) | — | — | (5,778) |
| Deferred net loss on debt exchanges, net of tax (Note 3) | 13 | — | — | 13 |
| EFH Corp. long-term debt distributed to EFH Corp. ($5.125 billion principal amount) | — | 4,524 | — | 4,524 |
| Net long-term debt of affiliate received in debt exchanges ($31 million principal amount) | — | (23) | — | (23) |
| Interest received on holdings of affiliate long-term debt (b) | — | 208 | — | 208 |
| Income tax on interest received on holdings of affiliate long-term debt | (73) | — | — | (73) |
| Recognition in interest income of mark-to-market valuations of investments in long-term debt of affiliate upon distribution to EFH Corp. | — | — | (185) | (185) |
| Net effects related to Oncor | — | — | 1 | 1 |
| Other | — | (1) | — | (1) |
| Balance at September 30, 2013 | $ (964) | $ (680) | $ (24) | $ (1,668) |

_____

(a) Represents the effect of a reduction of $420 million of debt pushed down from EFH Corp. (see Note 3) and related interest and income tax effects.

(b) Includes $204 million related to EFH Corp. long-term debt held and $4 million related to TCEH long-term debt held.

14

Source: Energy Future Intermediate Holding CO LLC, 10-Q, November 01, 2013

Powered by Morningstar® Document Research℠

The information contained herein may not be copied, adapted or distributed and is not warranted to be accurate, complete or timely. The user assumes all risks for any damages or losses arising from any use of this information, except to the extent such damages or losses cannot be limited or excluded by applicable law. Past financial performance is no guarantee of future results.

The following table presents the changes to membership interests for the  nine months ended September 30, 2012:

| | Capital Accounts | | Accumulated Other Comprehensive Income | | Total Membership Interests |
|---|---|---|---|---|---|
| Balance at December 31, 2011 | $ | 5,790 | $ | 15 | $ | 5,805 |
| Net income | | 308 | | — | | 308 |
| Cash distributions to EFH Corp. | | (950) | | — | | (950) |
| Effect of debt push-down from EFH Corp. | | 30 | | — | | 30 |
| Net effects of investment in long-term debt of affiliates | | — | | 272 | | 272 |
| Net effects related to Oncor (a) | | — | | 2 | | 2 |
| Other | | (2) | | — | | (2) |
| Balance at September 30, 2012 | $ | 5,176 | $ | 289 | $ | 5,465 |

(a)   Represents recognition in equity in earnings of unconsolidated subsidiary of previous losses on interest rate hedge transactions entered into by Oncor.

### *Accumulated Other Comprehensive Income (Loss)*

The following table presents the changes to accumulated other comprehensive income (loss) for the  nine months ended September 30, 2013.  There was no other comprehensive income (loss) before reclassification for the period.

| | Dedesignated Cash Flow Hedges - Oncor | | Changes in Fair Values of Investment in Debt Securities of Affiliates | | Pension and Other Postretirement Employee Benefit Liabilities Adjustments - Oncor | | Total Accumulated Other Comprehensive Income (Loss) |
|---|---|---|---|---|---|---|---|
| Balance at December 31, 2012 | $ | (23) | $ | 185 | $ | (2) | $ | 160 |
| Amounts reclassified from accumulated other comprehensive income (loss) and reported in: | | | | | | | | |
| Interest income | | — | | (284) | | — | | (284) |
| Equity in earnings of unconsolidated subsidiaries | | 2 | | — | | (1) | | 1 |
| Income tax benefit | | — | | 99 | | — | | 99 |
| Total amount reclassified from accumulated other comprehensive income (loss) during the period | | 2 | | (185) | | (1) | | (184) |
| Balance at September 30, 2013 | $ | (21) | $ | — | $ | (3) | $ | (24) |

15

Source: Energy Future Intermediate Holding CO LLC, 10-Q, November 01, 2013

Powered by Morningstar® Document Research℠

The information contained herein may not be copied, adapted or distributed and is not warranted to be accurate, complete or timely. The user assumes all risks for any damages or losses arising from any use of this information, except to the extent such damages or losses cannot be limited or excluded by applicable law. Past financial performance is no guarantee of future results.

## 6.    RELATED–PARTY TRANSACTIONS

The following represent our significant related-party transactions in addition to the EFH Corp. and TCEH debt securities held by EFIH as discussed in Note 5:

- EFH Corp. files consolidated federal income tax and Texas state margin tax returns, and under a tax sharing agreement, allocates income tax liabilities to us substantially as if we were filing our own corporate income tax returns.  Our income tax receivable from EFH Corp. totaled $7 million and $1 million at September 30, 2013 and December 31, 2012, respectively. Our income tax payments to EFH Corp. totaled $3 million and $172 million for the nine months ended September 30, 2013 and 2012, respectively, which represented federal income taxes and Texas state margin taxes. See discussion below in this note regarding allocation of income tax liabilities to Oncor Holdings and Oncor.

- At December 31, 2012, EFH Corp. had demand notes payable (TCEH Demand Notes) to TCEH totaling  $698 million arising from borrowings used to fund EFH Corp. debt principal and interest payments (P&I Note) and net borrowings for general corporate purposes (SG&A Note).   EFIH was a guarantor of these demand notes.  EFH Corp. settled the balance of the TCEH Demand Notes in January 2013 using the cash distribution from EFIH discussed in Note 5.

- In January 2013, fees paid to Goldman, Sachs & Co. (Goldman), an affiliate of GS Capital Partners, for services related to debt exchanges totaled $2 million, described as follows: (i) Goldman acted as a dealer manager for the offers by EFIH and EFIH Finance to exchange new EFIH 10% Notes for EFH Corp. 9.75% Notes, EFH Corp. 10% Notes and EFIH 9.75% Notes (collectively, the Old Notes) and as a solicitation agent in the solicitation of consents by EFH Corp. and EFIH and EFIH Finance to amendments to the Old Notes and indentures governing the Old Notes   and (ii) Goldman acted as a dealer manager for the offers by EFIH and EFIH Finance to exchange EFIH Toggle Notes for EFH Corp.  10.875% Notes and EFH Corp. Toggle Notes. See Note 3 for further discussion of these exchange offers.

  In the nine months ended September 30, 2012, fees paid to Goldman related to debt issuances totaled  $10 million, described as follows: (i) Goldman acted as a joint book-running manager and initial purchaser in the February 2012 issuance of  $1.15 billion principal amount of EFIH 11.750% Notes; (ii) Goldman acted as joint book-running manager and initial purchaser in the August 2012 issuance of  $600 million principal amount of 11.750% Notes and $250 million principal amount of EFIH 6.875% Notes. A broker-dealer affiliate of KKR served as a co-manager and initial purchaser and an affiliate of TPG served as an advisor in both of these transactions, for which they each received a total of  $3 million.

- Affiliates of the Sponsor Group have sold or acquired, and in the future may sell or acquire, debt or debt securities issued by us in open market transactions or through loan syndications.

  See Note 3 regarding guarantees and push-down of certain EFH Corp. debt and Note 5 regarding distributions to, and contributions from, EFH Corp.

Significant related-party transactions between Oncor Holdings (including its consolidated subsidiary Oncor) and EFH Corp., other affiliates of EFH Corp. and the Sponsor Group are as follows:

- Oncor receives payments from TCEH for services it provides, principally the delivery of electricity.  Revenues recorded by Oncor for these services totaled $273 million and $281 million for the three months ended September 30, 2013 and 2012, respectively, and $728 million and $746 million for the nine months ended September 30, 2013 and 2012, respectively. The fees are based on rates regulated by the PUCT that apply to all REPs. These revenues from TCEH represented 28% and 29% of Oncor Holdings' operating revenues for the  nine months ended September 30, 2013 and 2012, respectively. Oncor Holdings' balance sheets at  September 30, 2013 and December 31, 2012 reflect receivables from affiliates totaling $158 million and $53 million, respectively, consisting almost entirely of trade receivables from TCEH related to these electricity delivery fees.

- In August 2012, TCEH and Oncor agreed to settle at a discount two agreements related to securitization (transition) bonds issued by Oncor's bankruptcy-remote financing subsidiary in 2003 and 2004 to recover generation-related regulatory assets.   Under the agreements, TCEH had been reimbursing Oncor as described immediately below. Under the settlement, TCEH paid, and Oncor received,  $159 million in cash.

16

Source: Energy Future Intermediate Holding CO LLC, 10-Q, November 01, 2013

Powered by Morningstar® Document Research℠

The information contained herein may not be copied, adapted or distributed and is not warranted to be accurate, complete or timely. The user assumes all risks for any damages or losses arising from any use of this information, except to the extent such damages or losses cannot be limited or excluded by applicable law. Past financial performance is no guarantee of future results.

Oncor collects transition surcharges from its customers to recover the transition bond payment obligations.  Oncor's incremental income taxes related to the transition surcharges it collects had been reimbursed by TCEH quarterly under a noninterest bearing note payable to Oncor that was to mature in 2016.  TCEH's payments on the note prior to the August 2012 settlement totaled zero and  $20 million for the three and nine months ended September 30, 2012, respectively.

Under an interest reimbursement agreement, TCEH had reimbursed Oncor on a monthly basis for interest expense on the transition bonds.  Only the monthly accrual of interest under this agreement was reported as a receivable by Oncor.  This interest income prior to the August 2012 settlement totaled $2 million and $16 million for the three and nine months ended September 30, 2012, respectively.

- Oncor pays EFH Corp. subsidiaries for certain administrative services and shared facilities at cost.  These costs, which are primarily reported in operation and maintenance expenses, totaled $8 million and $10 million for the three months ended September 30, 2013 and 2012, respectively, and $24 million and $27 million for the nine months ended September 30, 2013 and 2012, respectively.

- Under Texas regulatory provisions, the trust fund for decommissioning the Comanche Peak nuclear generation facility (reported on TCEH's balance sheet) is funded by a delivery fee surcharge collected from REPs by Oncor, as collection agent, and remitted monthly to TCEH.  The delivery fee surcharges remitted to TCEH totaled $5 million for both the three months ended September 30, 2013 and 2012  and $12 million for both the nine months ended September 30, 2013 and 2012, respectively.

- EFH Corp. files a consolidated federal income tax return that includes Oncor Holdings' results.  Oncor is not a member of EFH Corp.'s consolidated tax group, but EFH Corp.'s consolidated federal income tax return includes EFH Corp.'s portion of Oncor's results as a result of EFH Corp.'s equity ownership in Oncor. EFH Corp. also files a consolidated Texas state margin tax return that includes all of Oncor Holdings' and Oncor's results. However, under a tax sharing agreement, Oncor Holdings and Oncor record their federal income and Texas state margin taxes substantially as if Oncor Holdings and Oncor were filing their own corporate income tax returns.

At September 30, 2013, Oncor Holdings had a current payable to EFH Corp. related to federal and state income taxes totaling  $35 million, which includes $28 million from Oncor. At December 31, 2012, Oncor Holdings had a current payable totaling $34 million, which included $22 million from Oncor.

For the nine months ended September 30, 2013, Oncor Holdings and Oncor made net federal and state income tax payments to EFH Corp. totaling $24 million, and $60 million, respectively. The 2013 net payment included $33 million from Oncor related to the 1997 through 2002 IRS appeals settlement and a $10 million refund paid to Oncor related to the filing of amended Texas franchise tax returns for 1997 through 2001.  For the nine months ended September 30, 2012, Oncor Holdings and Oncor made income tax payments to EFH Corp. totaling  $24 million  and  $3 million, respectively, net of $21 million in federal income tax refunds paid to Oncor Holdings.

- Oncor has requirements in place to assure adequate creditworthiness of any REP to support the REP's obligation to collect securitization bond-related (transition) charges on behalf of Oncor Electric Delivery Transition Bond Company LLC.  Under these requirements, as a result of TCEH's credit rating being below investment grade, TCEH is required to post collateral support in an amount equal to estimated transition charges over specified time periods. Accordingly, at September 30, 2013 and December 31, 2012 , TCEH had posted letters of credit in the amount of  $10 million and  $11 million, respectively, for Oncor's benefit.

- Oncor and Texas Holdings agreed to the terms of a stipulation with major interested parties to resolve all outstanding issues in the PUCT review related to the Merger. As part of this stipulation, TCEH would be required to post a letter of credit in an amount equal to  $170 million to secure its payment obligations to Oncor in the event, which has not occurred,  two or more rating agencies downgrade Oncor's credit rating below investment grade.

- Affiliates of the Sponsor Group have, and from time-to-time in the future, may (1) sell, acquire or participate in the offerings of Oncor's debt or debt securities in open market transactions or through loan syndications, and (2) perform various financial advisory, dealer, commercial banking and investment banking services for Oncor and certain of its affiliates for which they have received or will receive customary fees and expenses.

17

Source: Energy Future Intermediate Holding CO LLC, 10-Q, November 01, 2013

Powered by Morningstar® Document Research℠

The information contained herein may not be copied, adapted or distributed and is not warranted to be accurate, complete or timely. The user assumes all risks for any damages or losses arising from any use of this information, except to the extent such damages or losses cannot be limited or excluded by applicable law. Past financial performance is no guarantee of future results.

- Oncor has participated in plans sponsored by EFH Corp. that provide pension, health care and other retiree benefits.  Accordingly, Oncor Holdings' consolidated financial statements have reflected allocations to Oncor of amounts related to these retiree benefit plans.  Certain regulatory provisions allow for the recovery by Oncor of retiree benefit costs for all applicable former employees of EFH Corp.'s regulated predecessor integrated electric utility, which in addition to Oncor's active and retired employees consists largely of active and retired personnel engaged in TCEH's activities, related to service of those additional personnel prior to the deregulation and disaggregation of EFH Corp.'s businesses effective January 1, 2002.  Accordingly, Oncor and TCEH entered into an agreement whereby Oncor assumed responsibility for applicable retiree benefit costs related to those personnel.

In the fourth quarter 2012, EFH Corp. implemented certain amendments to its pension plan.  These amendments resulted, in part, in the splitting off of the assets and liabilities under the plan associated with employees of Oncor and all retirees and terminated vested employees of EFH Corp. and its subsidiaries (including discontinued businesses) to a new plan that is sponsored and administered by Oncor (the Oncor Plan).  In connection with this change, EFH Corp. fully funded the obligations being assumed by the Oncor Plan that relate to participants' benefits not recoverable by Oncor.  The change is not expected to materially affect Oncor's reported results of operations, financial condition or cash flows.

Under ERISA, EFH Corp. and Oncor are jointly and severally liable for the funding of the EFH Corp. and Oncor pension plans.  EFH Corp. views the risk of this retained liability under ERISA related to the Oncor Plan to not be significant.  Oncor's retained liability under ERISA relates to the nonrecoverable portion of the unfunded obligation for EFH Corp.'s active employees under collective bargaining, which totaled approximately  $20 million at December 31, 2012.

## 7.   SUPPLEMENTARY FINANCIAL INFORMATION

### Interest Expense and Related Charges

| | Three Months Ended September 30, | | | | Nine Months Ended September 30, | | | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | 2013 | | 2012 | | 2013 | | 2012 | |
| Interest paid/accrued | $ | 160 | $ | 116 | $ | 470 | $ | 305 |
| Interest expense related to pushed down debt | | 1 | | 19 | | 5 | | 57 |
| Interest payable with additional toggle notes (Note 3) | | 45 | | — | | 130 | | — |
| Amortization of debt exchange premiums | | (20) | | — | | (62) | | — |
| Amortization of debt exchange discounts and issuance costs | | 5 | | 2 | | 23 | | 6 |
| Total interest expense and related charges | $ | 191 | $ | 137 | $ | 566 | $ | 368 |

### Supplemental Cash Flow Information

| | Nine Months Ended September 30, | | | |
| --- | --- | --- | --- | --- |
| | 2013 | | 2012 | |
| Cash payments (receipts) related to: | | | | |
| Interest on EFIH debt | $ | 423 | $ | 217 |
| Interest on long-term debt of affiliates | | — | | (92) |
| Income taxes | | 3 | | 172 |
| Noncash investing and financing activities: | | | | |
| Receipt of additional EFH Corp. Toggle Notes in lieu of cash interest | | — | | (167) |
| Principal amount of toggle notes issued in lieu of cash interest (Note 3) | | 83 | | — |
| Parent's payment of interest on pushed-down debt accounted for as a contribution of capital (net of tax) (Note 3) | | 21 | | 30 |
| Effect of push down of debt from EFH Corp. | | (420) | | — |
| Debt exchange transactions (Note 5) | | 14 | | — |
| Effect of retirement of EFH Corp. debt acquired in debt exchange (Note 5) | | (5,778) | | — |
| Income tax on interest received on holdings of affiliate long-term debt (Note 5) | | (73) | | — |

Source: Energy Future Intermediate Holding CO LLC, 10-Q, November 01, 2013

Powered by Morningstar® Document Research℠

The information contained herein may not be copied, adapted or distributed and is not warranted to be accurate, complete or timely. The user assumes all risks for any damages or losses arising from any use of this information, except to the extent such damages or losses cannot be limited or excluded by applicable law. Past financial performance is no guarantee of future results.

**Item 2.    MANAGEMENT'S DISCUSSION AND ANALYSIS OF FINANCIAL CONDITION AND RESULTS OF OPERATIONS**

The following discussion and analysis of our financial condition and results of operations for the three and nine months ended September 30, 2013 and 2012 should be read in conjunction with our condensed consolidated financial statements and the notes to those statements.

All dollar amounts in the tables in the following discussion and analysis are stated in millions of US dollars unless otherwise indicated.

*Business*

EFIH, a direct, wholly owned subsidiary of EFH Corp., is a Dallas, Texas-based holding company whose wholly owned subsidiary, Oncor Holdings, holds a majority interest (approximately 80%) in Oncor. Oncor is a regulated electricity transmission and distribution company principally engaged in providing delivery services to REPs, including subsidiaries of TCEH, that sell electricity to residential, business and other consumers in the north-central, eastern and western parts of Texas. Revenues from services provided to TCEH represented 28% and 29% of Oncor's total reported consolidated revenues for the nine months ended September 30, 2013 and 2012, respectively. EFIH has no reportable business segments. See Notes 1 and 2 to Financial Statements for a discussion of the reporting of our investment in Oncor Holdings as an equity method investment and a description of the "ring-fencing" measures implemented with respect to Oncor Holdings and Oncor. These measures were put in place to further enhance Oncor's credit quality and mitigate Oncor's and Oncor Holdings' exposure to the Texas Holdings Group with the intent to minimize the risk that a court would order any of the assets and liabilities of the Oncor Ring-Fenced Entities to be substantively consolidated with those of any member of the Texas Holdings Group in the event any such member were to become a debtor in a bankruptcy case. We believe, as several major credit rating agencies have acknowledged, that the likelihood of such substantive consolidation of the Oncor Ring-Fenced Entities' assets and liabilities is remote in consideration of the ring-fencing measures and applicable law.

*Significant Activities and Events and Items Influencing Future Performance*

See Note 1 to Financial Statements for discussion of EFIH liquidity and description of EFH Corp.'s discussions with creditors.

*Liability Management Activity* — In October 2009, EFH Corp. and its subsidiaries (excluding Oncor Holdings and its subsidiaries) implemented a liability management program designed to reduce debt, capture debt discount and extend debt maturities through debt exchanges, repurchases and extensions. As a result of this program, a substantial majority of EFH Corp. (parent entity) debt has been exchanged for debt issued by EFIH.

In January 2013, EFIH issued $1.391 billion principal amount of debt in exchange for $1.266 billion principal amount of EFH Corp. debt and $139 million principal amount of EFIH debt. In the first quarter 2013, EFIH distributed $6.360 billion principal amount of EFH Corp. debt that it previously received in debt exchanges as a dividend to EFH Corp., including $1.235 billion received in January 2013, which cancelled the notes, leaving $1.361 billion principal amount of affiliate debt still held by EFIH. See Note 3 to Financial Statements for details of debt related activity in 2013 and Note 1 to Financial Statements regarding "Liquidity Considerations" and "EFH Corp. Discussions with Creditors."

EFH Corp. and its subsidiaries (other than the Oncor Ring-Fenced Entities) continue to consider and evaluate possible transactions and initiatives to address their highly leveraged balance sheets and significant cash interest requirements and have entered into discussions with their lenders and bondholders with respect to such transactions and initiatives. These transactions and initiatives may include, among others, debt for debt exchanges, recapitalizations, amendments to and extensions of debt obligations and exchanges or conversions of debt for preferred or common equity or warrants, including exchanges or conversions of debt of EFH Corp., EFIH, EFCH and TCEH into preferred or common equity or warrants of EFH Corp., EFIH, EFCH, TCEH and/or any of their subsidiaries.

In evaluating whether to undertake any liability management transaction, EFH Corp. will take into account, among other things, liquidity requirements, prospects for future access to capital, contractual restrictions, tax consequences, the market price and maturity dates of its outstanding debt and potential transaction costs. Any liability management transaction, including any refinancing or extension, may occur on a stand-alone basis or in connection with, or immediately following, other liability management transactions.

Source: Energy Future Intermediate Holding CO LLC, 10-Q, November 01, 2013

Powered by Morningstar® Document Research℠

The information contained herein may not be copied, adapted or distributed and is not warranted to be accurate, complete or timely. The user assumes all risks for any damages or losses arising from any use of this information, except to the extent such damages or losses cannot be limited or excluded by applicable law. Past financial performance is no guarantee of future results.

***Sunset Review/2013 Texas Legislative Session*** — Sunset review is the regular assessment of the continuing need for a state agency to exist, and is grounded in the premise that an agency will be abolished unless legislation is passed to continue its functions. On a specified time schedule, the Texas Sunset Advisory Commission (Sunset Commission) closely reviews each agency and recommends action on each agency to the Texas Legislature, which action may include modifying or even abolishing the agency.

During the 2013 legislative session that ended in May 2013, the Texas Legislature passed the PUCT Sunset bill and extended the life of the PUCT for 10 years through 2023. The bill did not fundamentally change the management or operation of the PUCT related to electricity issues. The bill included various electric service regulation changes, including clarification on PUCT oversight of ERCOT, protections regarding customer privacy related to advanced meter data and new PUCT authority to issue cease and desist orders.

No legislation passed during the 2013 Texas legislative session, including the Sunset Review actions described above, is expected to have a material impact on our results of operations, liquidity or financial condition. The Texas Legislature is scheduled to convene its next legislative session in January 2015.

***Oncor Matters with the PUCT*** — *Competitive Renewable Energy Zones (CREZs)* — In 2009, the PUCT awarded Oncor CREZ construction projects (PUCT Docket Nos. 35665 and 37902) requiring 14 related Certificate of Convenience and Necessity (CCN) amendment proceedings before the PUCT for 17 projects. All 17 projects and 14 CCN amendments have been approved by the PUCT. The projects involve the construction of transmission lines and stations to support the transmission of electricity from renewable energy sources, principally wind generation facilities, in the western part of Texas to population centers in the eastern part of Texas. In addition to these projects, ERCOT completed a study in December 2010 that will result in Oncor and other transmission service providers building additional facilities to provide further voltage support to the transmission grid as a result of CREZ. Oncor currently estimates, based on these additional voltage support facilities and the approved routes and stations for its awarded CREZ projects, that CREZ construction costs will total approximately $2.0 billion. CREZ-related costs could change based on finalization of costs for the additional voltage support facilities and final detailed designs of subsequent project routes. At September 30, 2013, Oncor's cumulative CREZ-related capital expenditures totaled $1.842 billion, including $382 million in 2013. Oncor expects that all necessary permitting actions and other requirements and all line and station construction activities for Oncor's CREZ construction projects will be completed by the end of 2013. Additional voltage support projects are expected to be completed by early 2014, with the exception of one series capacitor project that is scheduled to be completed in December 2015.

*Transmission Cost Recovery and Rates (PUCT Docket Nos. 41543, 41002 and 40451)* — In order to reflect increases or decreases in its wholesale transmission costs, including fees paid to other transmission service providers, Oncor is required to file an update to the transmission cost recovery factor (TCRF) component of its retail delivery rates charged to REPs twice a year. In June 2013, Oncor filed an application to update the TCRF, which became effective September 1, 2013. This application was designed to increase Oncor's billings for the period from September 2013 through February 2014 by $88 million. In November 2012, Oncor filed an application to update the TCRF, which became effective March 1, 2013. This application was designed to reduce Oncor's billings for the period from March 2013 through August 2013 by $47 million. In June 2012, Oncor filed an application to update the TCRF, which became effective in September 2012. This application was designed to increase Oncor's billings for the period from September 2012 through February 2013 by $129 million.

*Transmission Interim Rate Update Applications (PUCT Docket Nos. 41706 and 41166)* — In order to reflect changes in its invested transmission capital, PUCT rules allow Oncor to update its transmission cost of service (TCOS) rates by filing up to two interim TCOS rate adjustments in a calendar year. The TCOS rate is charged directly to third-party wholesale transmission providers benefiting from Oncor's transmission system and, through the TCRF component of Oncor's delivery rates, to REPs with retail customers in Oncor's service territory. In July 2013, Oncor filed an application for an interim update of its TCOS rate. The new rate was approved by the PUCT and became effective in September 2013. Oncor's annualized revenues will increase by an estimated $71 million with approximately $45 million of this increase recoverable through transmission costs charged to wholesale customers and $26 million recoverable from REPs through the TCRF component of Oncor's delivery rates. In January 2013, Oncor filed an application for an interim update of its TCOS rate. The new rate was approved by the PUCT and became effective in March 2013. Oncor's annualized revenues increased by an estimated $27 million with approximately $17 million of this increase recoverable through transmission costs charged to wholesale customers and $10 million recoverable from REPs through the TCRF component of Oncor's delivery rates.

20

Source: Energy Future Intermediate Holding CO LLC, 10-Q, November 01, 2013

Powered by Morningstar® Document Research℠

The information contained herein may not be copied, adapted or distributed and is not warranted to be accurate, complete or timely. The user assumes all risks for any damages or losses arising from any use of this information, except to the extent such damages or losses cannot be limited or excluded by applicable law. Past financial performance is no guarantee of future results.

*Application for 2014 Energy Efficiency Cost Recovery Factor  (PUCT Docket No. 41544)* — In May 2013, Oncor filed an application with the PUCT to request approval of the energy efficiency cost recovery factor (EECRF) for 2014.  PUCT rules require Oncor to make an annual EECRF filing by the first business day in June in each year for implementation on March 1 of the next calendar year.  The requested 2014 EECRF was $73 million, which is the same amount established for 2013, and would result in a monthly charge for residential customers of $1.01 as compared to the 2013 residential charge of $1.23 per month.  The requested 2014 EECRF is designed to recover $62 million of Oncor's costs for the 2014 program year, a $12 million performance bonus based on Oncor's 2012 results and a $1 million decrease for over-recovery of 2012 costs.  A settlement has been reached, and PUCT approval is expected in the fourth quarter 2013.

*Application for Reconciliation of Advanced Meter Surcharge (PUCT Docket No. 41814)*  — In September 2013, Oncor filed an application with the PUCT for reconciliation of all costs incurred and investments made from January 1, 2011 through December 31, 2012, in the deployment of Oncor's advanced metering system (AMS) pursuant to the AMS Deployment Plan approved in Docket No. 35718.  During the 2011 to 2012 period, Oncor incurred approximately $300 million of capital expenditures and $34 million of operating and maintenance expense, and billed customers approximately $174 million through the AMS surcharge. In addition to the reconciliation, Oncor is seeking a finding from the PUCT that approximately $28 million of additional estimated capital expenditures and approximately $4 million of additional estimated annual operation and maintenance expense related to cyber security and disaster recovery protections are reasonable and necessary costs associated with the deployment of an advanced metering system are recoverable through the AMS surcharge. Oncor is not seeking a change in the AMS surcharge in this proceeding, and anticipates that the proceeding will be concluded in the second quarter of 2014.

*Summary* — We cannot predict future regulatory or legislative actions or any changes in economic and securities market conditions.  Such actions or changes could significantly affect our results of operations, liquidity or financial condition.

Source: Energy Future Intermediate Holding CO LLC, 10-Q, November 01, 2013

Powered by Morningstar® Document Research℠

The information contained herein may not be copied, adapted or distributed and is not warranted to be accurate, complete or timely. The user assumes all risks for any damages or losses arising from any use of this information, except to the extent such damages or losses cannot be limited or excluded by applicable law. Past financial performance is no guarantee of future results.

**RESULTS OF OPERATIONS**

*Financial Results — Three Months Ended September 30, 2013 Compared to Three Months Ended September 30, 2012*

Selling, general, and administrative expenses totaled $5 million in 2013 representing legal and consulting costs associated with EFH Corp.'s liability management program.

Interest income − affiliates decreased $152 million to none in 2013. See Note 5 to Financial Statements for discussion of reclassification of long-term debt of affiliates we hold that resulted in interest received on such debt being recorded as an increase in membership interests instead of interest income.

Interest expense and related charges increased $54 million to $191 million in 2013. The increase was driven by the issuance of EFIH Notes in 2012 and 2013 (see Note 3 to Financial Statements).

Income tax benefit totaled $68 million in 2013 compared to income tax expense of $6 million in 2012. The effective tax rate on pretax loss was 34.7% in 2013 compared to 40.0% on pretax income in 2012. The change in the effective tax rate was driven by a decrease in Texas margin tax expense due primarily to lower interest income, and higher nondeductible interest on pushed down debt.

Equity in earnings of our Oncor Holdings unconsolidated subsidiary (net of tax) increased $5 million to $114 million in 2013. The increase in Oncor's earnings reflected higher revenues driven by higher transmission rates and growth in points of delivery, partially offset by higher depreciation and lower interest income. See Note 2 to Financial Statements.

Net loss increased $132 million to $14 million in 2013 driven by a decrease in interest income and an increase in interest expense.

*Financial Results — Nine Months Ended September 30, 2013 Compared to Nine Months Ended September 30, 2012*

Selling, general, and administrative expenses totaled $5 million in 2013 representing legal and consulting costs associated with EFH Corp.'s liability management program.

Interest income − affiliates decreased $178 million to $284 million in 2013. The 2013 amount represents previous mark-to-market gains on certain holdings of long-term debt of affiliates reclassified from accumulated other comprehensive income. As a result of EFIH's distribution of these securities to EFH Corp. in the first quarter, these gains were recognized as interest income in accordance with GAAP. See Note 5 to Financial Statements for discussion of reclassification of long-term debt of affiliates we hold that resulted in interest received on such debt being recorded as an increase in membership interests instead of interest income.

Interest expense and related charges increased $198 million to $566 million in 2013. The increase was driven by the issuance of EFIH Notes in 2012 and 2013 (see Note 3 to Financial Statements).

Income tax benefit totaled $100 million in 2013 compared to income tax expense of $35 million in 2012. The effective tax rate on pretax loss was 34.8% in 2013 compared to 37.2% on pretax income in 2012. The change in the effective tax rate was driven by a decrease in Texas margin tax expense due primarily to lower interest income, and higher nondeductible interest on pushed down debt.

Equity in earnings of our Oncor Holdings unconsolidated subsidiary (net of tax) increased $6 million to $255 million in 2013. Equity in earnings in 2013 included an $11 million favorable tax effect due to resolution of certain income tax positions at Oncor. The change in Oncor's earnings also reflected higher depreciation, lower interest income and higher operation and maintenance expenses, partially offset by higher revenues reflecting higher transmission rates and growth in points of delivery. See Note 2 to Financial Statements.

Net income decreased $240 million to $68 million in 2013 driven by a decrease in interest income and an increase in interest expense.

Source: Energy Future Intermediate Holding CO LLC, 10-Q, November 01, 2013

Powered by Morningstar® Document Research℠

The information contained herein may not be copied, adapted or distributed and is not warranted to be accurate, complete or timely. The user assumes all risks for any damages or losses arising from any use of this information, except to the extent such damages or losses cannot be limited or excluded by applicable law. Past financial performance is no guarantee of future results.

## FINANCIAL CONDITION

***Cash Flows*** — *Nine Months Ended September 30, 2013 Compared to Nine Months Ended September 30, 2012* — Cash used in operating activities totaled $297 million in 2013 compared to $196 million in 2012. The $101 million increase reflected $206 million in higher interest payments and a decrease of $92 million in interest received on affiliate debt, partially offset by a decrease of $169 million in income taxes paid to EFH Corp. (2012 payments included amounts related to prior years) and $48 million in higher cash distributions from Oncor Holdings.  See Note 5 to Financial Statements for discussion of the distribution of EFH Corp. debt as a dividend to EFH Corp., which has resulted in lower cash interest received in 2013 as compared to 2012.

Amortization of debt issuance costs reported in the statement of consolidated cash flows relates to both the debt pushed down from EFH Corp. and the debt we have issued (see Note 3 to Financial Statements) and is reported in interest expense and related charges in the statement of consolidated income.

Cash used in financing activities totaled $478 million in 2013 compared to cash provided totaling $1.0 billion in 2012. Activity in 2013 reflects a $680 million cash distribution to EFH Corp. (see Note 5 to Financial Statements), partially offset by interest received on holdings of affiliate long-term debt totaling $208 million. Activity in 2012 reflected the issuances of $2.0 billion of EFIH Notes and distributions of $950 million of the proceeds to EFH Corp.

Cash provided by investing activities totaled $680 million in 2013 compared to cash used totaling $680 in 2012.  Amounts represent a portion of the net proceeds from the issuance of EFIH Notes in August 2012 that EFIH removed from escrow (reported as restricted cash at December 31, 2012) to pay a dividend in this amount to EFH Corp. in January 2013 (see Note 5 to Financial Statements).

***Liquidity Needs*** — Our substantial debt, resulting in part from debt issued in exchange for outstanding EFH Corp. debt, requires significant cash flows to be dedicated to interest payments. Our liquidity depends on, among other things, receiving dividends from Oncor Holdings and receiving interest payments on EFH Corp. and TCEH debt we hold.  The interest we receive from EFH Corp. has decreased from 2012 following the January 2013 distribution to EFH Corp. of debt previously held by us (see Notes 3 and 5 to Financial Statements). EFIH has sufficient liquidity to meet its obligations for approximately the next twelve months. See Note 1 to Financial Statements regarding EFH Corp.'s discussions with creditors that included proposals to restructure EFIH's debt.

***Long-Term Debt Activity*** — In January 2013, EFIH issued $1.391 billion principal amount of debt in exchange for $1.266 billion principal amount of EFH Corp. debt and $139 million principal amount of EFIH debt.  See Note 3 to Financial Statements for details of debt related activity in 2013, including EFH Corp. debt returned by EFIH as dividends to EFH Corp., which cancelled it.

***Debt Capacity*** — We believe that we (excluding the Oncor Ring-Fenced Entities) and EFH Corp. collectively are permitted under our applicable debt agreements to issue (subject to certain exceptions and conditions set forth in our applicable debt documents) up to approximately $250 million of additional aggregate principal amount of debt secured by EFIH's equity interest in Oncor Holdings on a second-priority basis.

In addition, EFIH is permitted under its debt agreements to issue up to approximately $375 million of additional principal amount of senior unsecured debt (subject to certain exceptions and conditions set forth in its debt agreements).  Such unsecured debt may be incurred for, among other things, exchanges for EFH Corp. unsecured debt.

***Investment Capacity*** — We believe that we (excluding the Oncor Ring-Fenced Entities) are permitted under applicable debt agreements to make "investments" that could result in, among other things, additional liquidity through financings secured by existing assets (subject to certain exceptions and conditions set forth in the applicable debt documents) of up to approximately $435 million of which approximately $210 million is for investment in similar businesses and approximately $225 million is a general investment basket.

23

Powered by Morningstar® Document Research℠

The information contained herein may not be copied, adapted or distributed and is not warranted to be accurate, complete or timely. The user assumes all risks for any damages or losses arising from any use of this information, except to the extent such damages or losses cannot be limited or excluded by applicable law. Past financial performance is no guarantee of future results.

These debt capacity and investment capacity amounts are estimates based on our current interpretation of the covenants set forth in our debt agreements and do not take into account exceptions in the debt agreements that may allow for the incurrence of (i) additional secured or unsecured debt, including, but not limited to, acquisition debt, refinancing debt, capital leases and hedging obligations and (ii) additional investments, including but not limited to, permitted investments. Moreover, such amounts could change from time to time as a result of, among other things, the termination of any debt agreement (or specific terms therein) or amendments to the debt agreements that result from negotiations with new or existing lenders.   In addition, covenants included in agreements governing additional future debt may impose greater restrictions on our incurrence of secured or unsecured debt.   Consequently, the actual amount of senior secured or unsecured debt that we are permitted to incur and the investments we are permitted to make under our debt agreements could be materially different than the amounts provided above.

***EFIH Toggle Notes Interest Election*** — We have the option every six months at our discretion, ending with the interest payment due June 2016, to use the payment-in-kind (PIK) feature of our toggle notes ($1.393 billion aggregate principal amount issued in December 2012 and January 2013) in lieu of making cash interest payments. Once we make a PIK election, the election is valid for each succeeding interest payment period until we revoke the applicable election. Use of the PIK feature will be evaluated at each election period, taking into account market conditions and other relevant factors at such time.

We made our June 2013 interest payment and expect to make our December 2013 interest payment on the EFIH Toggle Notes by using the PIK feature of those notes. During the applicable PIK interest periods, the interest rate on these notes is increased from 11.25% to 12.25%.  As a result of the PIK election, we increased the aggregate principal amount of the notes by $83 million in June 2013 and expect to issue an additional $90 million in December 2013.   See Note 3 to Financial Statements for further discussion of the EFIH Toggle Notes.

***Distributions of Earnings from Oncor Holdings*** — Oncor Holdings' distributions of earnings to us totaled $148 million and $100 million for the nine months ended September 30, 2013 and 2012, respectively. Oncor Holdings' board of directors also declared a distribution to us totaling $65 million payable on October 31, 2013. See Note 2 to Financial Statements for discussion of limitations on amounts Oncor can distribute to its members.

Oncor has credit risk exposure to trade accounts receivable from TXU Energy, which relate to delivery services provided by Oncor to TXU Energy. This exposure totals $154 million at September 30, 2013 and represents $162 million in accounts receivable, including $53 million in unbilled accounts, net of $8 million secured by letters of credit posted by TCEH. Because Oncor had committed to the PUCT, in connection with the Merger, that it would not seek regulatory rate recovery for credit losses associated with affiliated REPs, Oncor's earnings would be reduced by the amount (after-tax) of any default by TXU Energy.

***Financial Covenants, Credit Rating Provisions and Cross Default Provisions*** — *Covenants and Restrictions Related to EFIH Notes and Pushed Down Debt* — The indentures governing the EFIH Notes, EFH Corp. 10.875% Notes and EFH Corp. Toggle Notes contain covenants that could have a material impact on our liquidity and operations.  See Note 3 to Financial Statements for discussion of our long-term debt, including EFH Corp. debt pushed down to us as a result of our guarantee of the debt.

Adjusted EBITDA (as used in the restricted payments covenants contained in the indentures governing the EFIH Notes and the EFH Corp. Notes) for the twelve months ended September 30, 2013 totaled $1.797 billion and $4.622 billion, respectively. See Exhibits 99(b) and 99(c) for a reconciliation of net income (loss) to Adjusted EBITDA for EFIH and EFH Corp., respectively, for the nine and twelve months ended September 30, 2013 and 2012.

24

Source: Energy Future Intermediate Holding CO LLC, 10-Q, November 01, 2013

Powered by Morningstar® Document Research℠

The information contained herein may not be copied, adapted or distributed and is not warranted to be accurate, complete or timely. The user assumes all risks for any damages or losses arising from any use of this information, except to the extent such damages or losses cannot be limited or excluded by applicable law. Past financial performance is no guarantee of future results.

The table below summarizes various financial ratios of EFIH and EFH Corp. that are applicable under the indentures governing the EFIH Notes, EFH Corp. 10.875% Notes and EFH Corp. Toggle Notes at September 30, 2013 and December 31, 2012 and the corresponding covenant threshold levels at September 30, 2013. The debt incurrence and restricted payments/limitations on investments covenants thresholds presented below represent levels that must be met in order for EFH Corp. and EFIH to incur certain debt or make certain restricted payments and/or investments. Our debt agreements do not contain maintenance covenants. In January 2013, in accordance with amendments to the terms of the EFH Corp. 9.75% Senior Notes due 2019 and EFH Corp. 10% Notes due 2020 and their governing indentures, restrictive covenants under those notes were removed (see Note 3 to Financial Statements).

| | June 30, 2013 | December 31, 2012 | Threshold Level at June 30, 2013 |
|---|---|---|---|
| Debt Incurrence Thresholds: | | | |
| EFIH Notes: | | | |
| EFIH fixed charge coverage ratio (a) | 0.3 to 1.0 | 0.3 to 1.0 | At least 2.0 to 1.0 |
| Restricted Payments/Limitations on Investments Thresholds: | | | |
| EFH Corp. 10.875% Notes and Toggle Notes: | | | |
| General restrictions (Sponsor Group payments): | | | |
| EFH Corp. leverage ratio | 12.3 to 1.0 | 10.1 to 1.0 | Equal to or less than 7.0 to 1.0 |
| EFIH Notes: | | | |
| General restrictions (non-EFH Corp. payments): | | | |
| EFIH fixed charge coverage ratio (a)(b) | 1.8 to 1.0 | 2.1 to 1.0 | At least 2.0 to 1.0 |
| General restrictions (EFH Corp. payments): | | | |
| EFIH fixed charge coverage ratio (a)(b) | 0.3 to 1.0 | 0.3 to 1.0 | At least 2.0 to 1.0 |
| EFIH leverage ratio | 7.7 to 1.0 | 7.0 to 1.0 | Equal to or less than 6.0 to 1.0 |

_____

(a)   Calculation excludes interest income on the EFH Corp. 10.875% Notes and Toggle Notes that EFIH distributed as a dividend to EFH Corp. in January 2013 (see Note 5 to Financial Statements).

(b)   The EFIH fixed charge coverage ratio for paying dividends or repurchasing or making distributions in respect of capital stock (EFH Corp. payments) excludes the results of Oncor Holdings and its subsidiaries. The EFIH fixed charge coverage ratio for making investments (non-EFH Corp. payments) includes the results of Oncor Holdings and its subsidiaries.

*Material Cross Default/Acceleration Provisions* — Certain of our financing arrangements contain provisions that could result in an event of default if there were a failure under other financing arrangements to meet payment terms or to observe other covenants that could or does result in an acceleration of payments due. Such provisions are referred to as "cross default" or "cross acceleration" provisions.

The indentures governing the EFIH Notes contain a cross acceleration provision whereby a payment default at maturity or on acceleration of principal indebtedness under any instrument or instruments of EFIH or any of its restricted subsidiaries or of any debt that EFIH guarantees in an aggregate amount equal to or greater than $250 million may cause the acceleration of the EFIH Notes.

**Long-Term Contractual Obligations and Commitments** — The following table summarizes our contractual cash obligations at September 30, 2013 (see Note 3 to Financial Statements for additional disclosures regarding these long-term debt obligations):

| Contractual Cash Obligations (a) | Less Than One Year | One to Three Years | Three to Five Years | More Than Five Years | Total |
|---|---|---|---|---|---|
| Long-term debt – principal | $      — | $      — | $      533 | $      7,116 | $      7,649 |
| Long-term debt – interest | 637 | 1,626 | 1,612 | 2,201 | 6,076 |
| Total contractual cash obligations | $      637 | $      1,626 | $      2,145 | $      9,317 | $      13,725 |

_____

(a)   Includes $30 million principal amount and related interest of EFH Corp. notes pushed down to EFIH (see Note 3 to Financial Statements.) Excludes $90 million of additional principal amount of notes expected to be issued in December 2013 and due in 2018, reflecting the PIK feature on toggle notes discussed above under "EFIH Toggle Notes Interest Election."

**Guarantees** — See Note 4 to Financial Statements for discussion of guarantees.

Source: Energy Future Intermediate Holding CO LLC, 10-Q, November 01, 2013

Powered by Morningstar® Document Research℠

The information contained herein may not be copied, adapted or distributed and is not warranted to be accurate, complete or timely. The user assumes all risks for any damages or losses arising from any use of this information, except to the extent such damages or losses cannot be limited or excluded by applicable law. Past financial performance is no guarantee of future results.

**OFF-BALANCE SHEET ARRANGEMENTS**

See Notes 2 and 4 to Financial Statements regarding VIEs and guarantees, respectively.

**COMMITMENTS AND CONTINGENCIES**

See Note 4 to Financial Statements for discussion of commitments and contingencies.

**CHANGES IN ACCOUNTING STANDARDS**

There have been no recently issued accounting standards effective after  September 30, 2013  that are expected to materially impact our financial statements.

26

Powered by Morningstar® Document Research℠

The information contained herein may not be copied, adapted or distributed and is not warranted to be accurate, complete or timely. The user assumes all risks for any damages or losses arising from any use of this information, except to the extent such damages or losses cannot be limited or excluded by applicable law. Past financial performance is no guarantee of future results.

**Item 3.    QUANTITATIVE AND QUALITATIVE DISCLOSURES ABOUT MARKET RISK**

Market risk is the risk that we may experience a loss in value as a result of changes in market conditions such as interest rates that may be experienced in the ordinary course of business. We may transact in financial instruments to hedge interest rate risk related to our debt, but there are currently no such hedges in place. All of our long-term debt at September 30, 2013 and December 31, 2012 carried fixed interest rates.

Except as discussed below, the information required hereunder is not significantly different from the information set forth in Item 7A, "Quantitative and Qualitative Disclosures About Market Risk" included in our 2012 Form 10-K and is therefore not presented herein. See Note 3 to Financial Statements for discussion of debt issued and retired in 2013.

### *Credit Risk*

***Oncor's Credit Risk*** — Credit risk relates to the risk of loss associated with nonperformance by counterparties. Oncor's customers consist primarily of REPs. As a prerequisite for obtaining and maintaining certification, a REP must meet the financial resource standards established by the PUCT. Meeting these standards does not guarantee that a REP will be able to perform its obligations. REP certificates granted by the PUCT are subject to suspension and revocation for significant violation of Texas Public Utility Regulatory Act and PUCT rules. Significant violations include failure to timely remit payments for invoiced charges to a transmission and distribution utility pursuant to the terms of tariffs approved by the PUCT. PUCT rules allow for the recovery of uncollectible amounts from nonaffiliated REPs, reducing the credit risk of such receivables.

At September 30, 2013, Oncor's exposure to credit risk associated with accounts receivable from nonaffiliate customers totaled $407 million. The nonaffiliated customer receivable amount is before the allowance for uncollectible accounts, which totaled $3 million, and includes trade accounts receivable from REPs totaling $310 million, which are almost entirely noninvestment grade. At September 30, 2013, REP subsidiaries of one nonaffiliated entity collectively represented approximately 14% of the nonaffiliated trade receivable amount. No other nonaffiliated parties represented 10% or more of the total exposure. Oncor views its exposure to this customer to be within an acceptable level of risk tolerance considering PUCT rules and regulations; however, this concentration increases the risk that a default would have a material effect on cash flows.

See "Financial Condition — Distributions of Earnings from Oncor Holdings" above for discussion of Oncor's credit risk to accounts receivable from affiliates.

See Note 6 to Financial Statements for discussion of transactions between Oncor and TCEH and EFH Corp.

Source: Energy Future Intermediate Holding CO LLC, 10-Q, November 01, 2013

Powered by Morningstar® Document Research℠

The information contained herein may not be copied, adapted or distributed and is not warranted to be accurate, complete or timely. The user assumes all risks for any damages or losses arising from any use of this information, except to the extent such damages or losses cannot be limited or excluded by applicable law. Past financial performance is no guarantee of future results.

## FORWARD-LOOKING STATEMENTS

This report and other presentations made by us contain "forward-looking statements."  All statements, other than statements of historical facts, that are included in this report, or made in presentations, in response to questions or otherwise, that address activities, events or developments that may occur in the future, including such matters as activities under our liability management program, projections, capital allocation, future capital expenditures, business strategy, competitive strengths, goals, future acquisitions or dispositions, development or operation of facilities, market and industry developments and the growth of our business and operations (often, but not always, through the use of words or phrases such as "intends," "plans," "will likely," "unlikely," "expected," "anticipated," "estimated," "should," "projection," "target," "goal," "objective" and "outlook"), are forward-looking statements.  Although we believe that in making any such forward-looking statement our expectations are based on reasonable assumptions, any such forward-looking statement involves uncertainties and is qualified in its entirety by reference to the discussion of risk factors under Item 1A, "Risk Factors" in our  2012 Form 10-K and the discussion under Item 2, "Management's Discussion and Analysis of Financial Condition and Results of Operations" in this report and the following important factors, among others, that could cause our actual results to differ materially from those projected in such forward-looking statements:

- prevailing governmental policies and regulatory actions, including those of the Texas Legislature, the Governor of Texas, the US Congress, the US Federal Energy Regulatory Commission, the North American Electric Reliability Corporation, the Texas Reliability Entity, Inc., the PUCT, the Environmental Protection Agency, and the Texas Commission on Environmental Quality, with respect to, among other things:
    - allowed rate of return;
    - permitted capital structure;
    - industry, market and rate structure;
    - recovery of investments;
    - acquisition and disposal of assets and facilities;
    - operation and construction of facilities;
    - changes in tax laws and policies, and
    - changes in and compliance with environmental and safety laws and policies;
- legal and administrative proceedings and settlements;
- general industry trends;
- economic conditions, including the impact of an economic downturn;
- weather conditions, including drought and limitations on access to water, and other natural phenomena, and acts of sabotage, wars or terrorist or cybersecurity threats or activities;
- population growth or decline, or changes in market supply or demand and demographic patterns, particularly in ERCOT;
- changes in business strategy, development plans or vendor relationships;
- changes in interest rates or rates of inflation;
- changes in operating expenses, liquidity needs and capital expenditures;
- commercial bank and financial market conditions, access to capital, the cost of such capital, and the results of financing and refinancing efforts by EFIH and/or its subsidiaries and affiliates, including availability of funds in the capital markets and the potential impact of disruptions in US credit markets;
- willingness of EFH Corp.'s and TCEH's lenders to extend the maturities of their debt instruments and the terms and conditions of any such extensions;
- activity in the credit default swap market related to our debt securities or debt securities of EFH Corp. that we guarantee;
- restrictions placed on us by the agreements governing our debt instruments;
- our ability to generate sufficient cash flow to make interest payments on, or refinance, our debt instruments;
- our ability to successfully execute our liability management program, reach agreement with our creditors on the terms of any change in our capital structure, or otherwise address our significant interest payments and debt maturities, including through the potential exchange of debt securities for debt or equity securities or potential waiver of any covenants contained in our debt agreements;
- inability of various counterparties to meet their financial obligations to EFIH and/or its subsidiaries, including failure of counterparties to perform under agreements;
- changes in technology used by and services offered by EFIH and/or its subsidiaries;
- significant changes in the relationship of EFIH and/or its subsidiaries with their employees, including the availability of qualified personnel, and the potential adverse effects if labor disputes or grievances were to occur;
- changes in assumptions used to estimate costs of providing employee benefits, including medical and dental benefits, pension and other postretirement employee benefits, and future funding requirements related thereto;
- significant changes in critical accounting policies material to EFIH and/or its subsidiaries;
- circumstances that may contribute to impairment of goodwill, intangible or other long-lived assets of EFIH and/or its subsidiaries;
- restrictions imposed by the agreements governing EFIH's, Oncor's and certain of EFH Corp.'s debt instruments;

28

Source: Energy Future Intermediate Holding CO LLC, 10-Q, November 01, 2013

Powered by Morningstar® Document Research℠

The information contained herein may not be copied, adapted or distributed and is not warranted to be accurate, complete or timely. The user assumes all risks for any damages or losses arising from any use of this information, except to the extent such damages or losses cannot be limited or excluded by applicable law. Past financial performance is no guarantee of future results.

- our ability to generate sufficient cash flow to make interest payments on our debt instruments;
- defaults under our debt agreements that could trigger cross default or cross acceleration provisions under other debt agreements;
- EFH Corp.'s or its subsidiaries', including, in particular, TCEH's, ability to make principal and interest payments on their debt we hold as an investment or to provide sufficient capital contributions or loans to us to make interest payments on our debt instruments;
- hazards customary to the industry and the possibility that EFIH and/or its subsidiaries may not have adequate insurance to cover losses resulting from such hazards;
- actions by credit rating agencies;
- adverse claims by our creditors or holders of our debt securities, and
- the ability of EFIH and/or its subsidiaries to effectively execute their operational strategy.

Any forward-looking statement speaks only at the date on which it is made, and except as may be required by law, we undertake no obligation to update any forward-looking statement to reflect events or circumstances after the date on which it is made or to reflect the occurrence of unanticipated events.  New factors emerge from time to time, and it is not possible for us to predict all of them; nor can we assess the impact of each such factor or the extent to which any factor, or combination of factors, may cause results to differ materially from those contained in any forward-looking statement.  As such, you should not unduly rely on such forward-looking statements.

**Item 4.    CONTROLS AND PROCEDURES**

An evaluation was performed under the supervision and with the participation of EFIH's management, including the principal executive officer and principal financial officer, of the effectiveness of the design and operation of the disclosure controls and procedures in effect at the end of the current period included in this quarterly report.  Based on the evaluation performed, EFIH's management, including the principal executive officer and principal financial officer, concluded that the disclosure controls and procedures were effective.  During the most recent fiscal quarter covered by this quarterly report, there has been no change in EFIH's internal control over financial reporting that has materially affected, or is reasonably likely to materially affect, EFIH's internal control over financial reporting.

## PART II. OTHER INFORMATION

**Item 1.    LEGAL PROCEEDINGS**

Reference is made to the discussion in Note  4 to Financial Statements regarding legal proceedings.

**Item 1A.   RISK FACTORS**

In addition to the other information set forth in this report, you should carefully consider the risk factors discussed under Item 1A, "Risk Factors" in our 2012 Form 10-K.  The risks described in such report are not the only risks facing our Company.

**Item 4. MINE SAFETY DISCLOSURES**

Not applicable.

29

Powered by Morningstar® Document Research℠

The information contained herein may not be copied, adapted or distributed and is not warranted to be accurate, complete or timely. The user assumes all risks for any damages or losses arising from any use of this information, except to the extent such damages or losses cannot be limited or excluded by applicable law. Past financial performance is no guarantee of future results.

**Item 6.    EXHIBITS**

**(a)    Exhibits filed or furnished as part of Part II are:**

| Exhibits | Previously Filed With File Number* | As Exhibit | | |
|---|---|---|---|---|
| **(3(i))** | **Articles of Incorporation** | | | |
| 3(a) | 333-153529 Form S-4 (filed September 17, 2008) | 3(c) | — | Certificate of Formation of Energy Future Intermediate Holding Company LLC, as amended |
| **(3(ii))** | **By-laws** | | | |
| 3(b) | 1-34544 Form 10-K (filed February 21, 2012) | 3(b) | — | Second Amended and Restated Limited Liability Company Agreement of Energy Future Intermediate Holding Company LLC |
| **(31)** | **Rule 13a - 14(a)/15d - 14(a) Certifications.** | | | |
| 31(a) | | | — | Certification of John F. Young, chair, president and chief executive of Energy Future Intermediate Holding Company LLC, pursuant to Section 302 of the Sarbanes-Oxley Act of 2002. |
| 31(b) | | | — | Certification of Paul M. Keglevic, executive vice president and chief financial officer of Energy Future Intermediate Holding Company LLC, pursuant to Section 302 of the Sarbanes-Oxley Act of 2002. |
| **(32)** | **Section 1350 Certifications.** | | | |
| 32(a) | | | — | Certification of John F. Young, chair, president and chief executive of Energy Future Intermediate Holding Company LLC, pursuant to Section 906 of the Sarbanes-Oxley Act of 2002. |
| 32(b) | | | — | Certification of Paul M. Keglevic, executive vice president and chief financial officer of Energy Future Intermediate Holding Company LLC, pursuant to Section 906 of the Sarbanes-Oxley Act of 2002. |
| **(99)** | **Additional Exhibits** | | | |
| 99(a) | | | — | Condensed Statement of Consolidated Income - Twelve Months Ended September 30, 2013. |
| 99(b) | | | — | Energy Future Intermediate Holding Company LLC Consolidated Adjusted EBITDA reconciliation for the six and twelve months ended September 30, 2013 and 2012. |
| 99(c) | | | — | Energy Future Holdings Corp. Consolidated Adjusted EBITDA reconciliation for the six and twelve months ended September 30, 2013 and 2012. |
| | **XBRL Data Files** | | | |
| 101.INS | | | — | XBRL Instance Document |
| 101.SCH | | | — | XBRL Taxonomy Extension Schema Document |
| 101.CAL | | | — | XBRL Taxonomy Extension Calculation Document |
| 101.DEF | | | — | XBRL Taxonomy Extension Definition Document |
| 101.LAB | | | — | XBRL Taxonomy Extension Labels Document |
| 101.PRE | | | — | XBRL Taxonomy Extension Presentation Document |

_____

\*    Incorporated herein by reference

Source: Energy Future Intermediate Holding CO LLC, 10-Q, November 01, 2013

Powered by Morningstar® Document Research℠

The information contained herein may not be copied, adapted or distributed and is not warranted to be accurate, complete or timely. The user assumes all risks for any damages or losses arising from any use of this information, except to the extent such damages or losses cannot be limited or excluded by applicable law. Past financial performance is no guarantee of future results.

**SIGNATURE**

Pursuant to the requirements of the Securities Exchange Act of 1934, the Registrant has duly caused this report to be signed on its behalf by the undersigned hereunto duly authorized.

**ENERGY FUTURE INTERMEDIATE HOLDING COMPANY LLC**

By:      /s/ STAN SZLAUDERBACH

Stan Szlauderbach

Senior Vice President and Controller

(Principal Accounting Officer)

Date: October 31, 2013

31

Powered by Morningstar® Document Research℠

The information contained herein may not be copied, adapted or distributed and is not warranted to be accurate, complete or timely. The user assumes all risks for any damages or losses arising from any use of this information, except to the extent such damages or losses cannot be limited or excluded by applicable law. Past financial performance is no guarantee of future results.

**Exhibit 31(a)**

## ENERGY FUTURE INTERMEDIATE HOLDING COMPANY LLC
### Certificate Pursuant to Section 302
### of Sarbanes - Oxley Act of 2002

I, John F. Young certify that:

1.    I have reviewed this quarterly report on Form 10-Q of Energy Future Intermediate Holding Company LLC;

2.    Based on my knowledge, this report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report;

3.    Based on my knowledge, the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this report;

4.    The registrant's other certifying officer and I are responsible for establishing and maintaining disclosure controls and procedures (as defined in Exchange Act Rules 13a-15(e) and 15d-15(e)) and internal control over financial reporting (as defined in Exchange Act Rules 13a-15(f) and 15d-15(f))  for the registrant and have:

    a.    Designed such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under our supervision, to ensure that material information relating to the registrant, including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this report is being prepared;

    b.    Designed such internal control over financial reporting, or caused such internal control over financial reporting to be designed under our supervision, to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with generally accepted accounting principles;

    c.    Evaluated the effectiveness of the registrant's disclosure controls and procedures and presented in this report our conclusions about the effectiveness of the disclosure controls and procedures, as of the end of the period covered by this report based on such evaluation; and

    d.    Disclosed in this report any change in the registrant's internal control over financial reporting that occurred during the registrant's most recent fiscal quarter (the registrant's fourth fiscal quarter in the case of an annual report) that has materially affected, or is reasonably likely to materially affect, the registrant's internal control over financial reporting; and

5.    The registrant's other certifying officer and I have disclosed, based on our most recent evaluation of internal control over financial reporting, to the registrant's auditors and the audit committee of the registrant's board of directors (or persons performing the equivalent functions):

    a.    All significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting which are reasonably likely to adversely affect the registrant's ability to record, process, summarize and report financial information; and

    b.    Any fraud, whether or not material, that involves management or other employees who have a significant role in the registrant's internal control over financial reporting.

Date: October 31, 2013

|  |  |
|---|---|
|  | /s/ JOHN F. YOUNG |
| Name: | John F. Young |
| Title: | Chair, President and Chief Executive |

Source: Energy Future Intermediate Holding CO LLC, 10-Q, November 01, 2013

Powered by Morningstar® Document Research℠

The information contained herein may not be copied, adapted or distributed and is not warranted to be accurate, complete or timely. The user assumes all risks for any damages or losses arising from any use of this information, except to the extent such damages or losses cannot be limited or excluded by applicable law. Past financial performance is no guarantee of future results.

Exhibit 31(b)

# ENERGY FUTURE INTERMEDIATE HOLDING COMPANY LLC
## Certificate Pursuant to Section 302
## of Sarbanes - Oxley Act of 2002

I, Paul M. Keglevic, certify that:

1.  I have reviewed this quarterly report on Form 10-Q of Energy Future Intermediate Holding Company LLC;

2.  Based on my knowledge, this report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report;

3.  Based on my knowledge, the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this report;

4.  The registrant's other certifying officer and I are responsible for establishing and maintaining disclosure controls and procedures (as defined in Exchange Act Rules 13a-15(e) and 15d-15(e)) and internal control over financial reporting (as defined in Exchange Act Rules 13a-15(f) and 15d-15(f))  for the registrant and have:

    a.  Designed such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under our supervision, to ensure that material information relating to the registrant, including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this report is being prepared;

    b.  Designed such internal control over financial reporting, or caused such internal control over financial reporting to be designed under our supervision, to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with generally accepted accounting principles;

    c.  Evaluated the effectiveness of the registrant's disclosure controls and procedures and presented in this report our conclusions about the effectiveness of the disclosure controls and procedures, as of the end of the period covered by this report based on such evaluation; and

    d.  Disclosed in this report any change in the registrant's internal control over financial reporting that occurred during the registrant's most recent fiscal quarter (the registrant's fourth fiscal quarter in the case of an annual report) that has materially affected, or is reasonably likely to materially affect, the registrant's internal control over financial reporting; and

5.  The registrant's other certifying officer and I have disclosed, based on our most recent evaluation of internal control over financial reporting, to the registrant's auditors and the audit committee of the registrant's board of directors (or persons performing the equivalent functions):

    a.  All significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting which are reasonably likely to adversely affect the registrant's ability to record, process, summarize and report financial information; and

    b.  Any fraud, whether or not material, that involves management or other employees who have a significant role in the registrant's internal control over financial reporting.

Date: October 31, 2013

/s/ PAUL M. KEGLEVIC

Name:    Paul M. Keglevic

Title:    Executive Vice President and Chief Financial Officer

Powered by Morningstar® Document Research℠

The information contained herein may not be copied, adapted or distributed and is not warranted to be accurate, complete or timely. The user assumes all risks for any damages or losses arising from any use of this information, except to the extent such damages or losses cannot be limited or excluded by applicable law. Past financial performance is no guarantee of future results.

**Exhibit 32 (a)**

## ENERGY FUTURE INTERMEDIATE HOLDING COMPANY LLC
### Certificate Pursuant to Section 906
### of Sarbanes - Oxley Act of 2002
### CERTIFICATION OF CEO

The undersigned, John F. Young, Chair, President and Chief Executive of Energy Future Intermediate Holding Company LLC (the "Company"), DOES HEREBY CERTIFY that, to his knowledge:

1. The Company's Quarterly Report on Form 10-Q for the period ended September 30, 2013 (the "Report") fully complies with the requirements of section 13(a) or 15(d) of the Securities Exchange Act of 1934, as amended; and

2. Information contained in the Report fairly presents, in all material respects, the financial condition and results of operations of the Company.

IN WITNESS WHEREOF, the undersigned has caused this instrument to be executed this 31st day of October, 2013.

/s/ JOHN F. YOUNG

Name:    John F. Young
Title:    Chair, President and Chief Executive

A signed original of this written statement required by Section 906 has been provided to Energy Future Intermediate Holding Company LLC and will be retained by Energy Future Intermediate Holding Company LLC and furnished to the Securities and Exchange Commission or its staff upon request.

Source: Energy Future Intermediate Holding CO LLC, 10-Q, November 01, 2013                Powered by Morningstar® Document Research℠

The information contained herein may not be copied, adapted or distributed and is not warranted to be accurate, complete or timely. The user assumes all risks for any damages or losses arising from any use of this information, except to the extent such damages or losses cannot be limited or excluded by applicable law. Past financial performance is no guarantee of future results.

Exhibit 32(b)

## ENERGY FUTURE INTERMEDIATE HOLDING COMPANY LLC
### Certificate Pursuant to Section 906
### of Sarbanes - Oxley Act of 2002
### CERTIFICATION OF CFO

The undersigned, Paul M. Keglevic, Executive Vice President and Chief Financial Officer of Energy Future Intermediate Holding Company LLC (the "Company"), DOES HEREBY CERTIFY that, to his knowledge:

1.  The Company's Quarterly Report on Form 10-Q for the period ended September 30, 2013 (the "Report") fully complies with the requirements of section 13(a) or 15(d) of the Securities Exchange Act of 1934, as amended; and

2.  Information contained in the Report fairly presents, in all material respects, the financial condition and results of operations of the Company.

IN WITNESS WHEREOF, the undersigned has caused this instrument to be executed this 31st day of October, 2013.

|  |  |
|---|---|
|  | /s/ PAUL M. KEGLEVIC |
| Name: | Paul M. Keglevic |
| Title: | Executive Vice President and Chief Financial Officer |

A signed original of this written statement required by Section 906 has been provided to Energy Future Intermediate Holding Company LLC and will be retained by Energy Future Intermediate Holding Company LLC and furnished to the Securities and Exchange Commission or its staff upon request.

Source: Energy Future Intermediate Holding CO LLC, 10-Q, November 01, 2013

Powered by Morningstar® Document Research℠

The information contained herein may not be copied, adapted or distributed and is not warranted to be accurate, complete or timely. The user assumes all risks for any damages or losses arising from any use of this information, except to the extent such damages or losses cannot be limited or excluded by applicable law. Past financial performance is no guarantee of future results.

Exhibit 99(a)

**ENERGY FUTURE INTERMEDIATE HOLDING COMPANY LLC**
**CONDENSED STATEMENT OF CONSOLIDATED INCOME**
**(Unaudited)**

| | Twelve Months Ended September 30, 2013 |
|---|---:|
| | **(millions of dollars)** |
| Selling, general and administrative expenses | $ (5) |
| Interest income - affiliates | 420 |
| Interest expense and related charges | (724) |
| Loss before income taxes and equity in earnings of unconsolidated subsidiary | (309) |
| Income tax benefit | 108 |
| Equity in earnings of unconsolidated subsidiaries (net of tax) | 276 |
| Net income | $ 75 |

The information contained herein may not be copied, adapted or distributed and is not warranted to be accurate, complete or timely. The user assumes all risks for any damages or losses arising from any use of this information, except to the extent such damages or losses cannot be limited or excluded by applicable law. Past financial performance is no guarantee of future results.

Exhibit 99(b)

**Energy Future Intermediate Holding Company LLC Consolidated**
**Adjusted EBITDA Reconciliation**
**(millions of dollars)**

| | Nine Months Ended September 30, 2013 | | Nine Months Ended September 30, 2012 | | Twelve Months Ended September 30, 2013 | | Twelve Months Ended September 30, 2012 | |
|---|---|---|---|---|---|---|---|---|
| Net income | $ | 68 | $ | 308 | $ | 75 | $ | 358 |
| Income tax expense | | (100) | | 35 | | (108) | | 36 |
| Interest expense and related charges | | 566 | | 368 | | 724 | | 457 |
| **EBITDA** | $ | 534 | $ | 711 | $ | 691 | $ | 851 |
| Oncor Holdings distributions of earnings | | 148 | | 100 | | 195 | | 152 |
| Interest income | | (284) | | (462) | | (420) | | (551) |
| Equity in earnings of unconsolidated subsidiary (net of tax) | | (255) | | (249) | | (276) | | (300) |
| Restructuring and other (a) | | 5 | | — | | 5 | | — |
| **Adjusted EBITDA per Incurrence Covenant** | $ | 148 | $ | 100 | $ | 195 | $ | 152 |
| **Add Oncor Adjusted EBITDA (reduced by Oncor Holdings distributions)** | | 1,256 | | 1,254 | | 1,602 | | 1,571 |
| **Adjusted EBITDA per Restricted Payments Covenant** | $ | 1,404 | $ | 1,354 | $ | 1,797 | $ | 1,723 |

(a)   Restructuring and other in the nine and twelve months ended 2013 includes costs associated with EFH Corp.'s liability management program.

Source: Energy Future Intermediate Holding CO LLC, 10-Q, November 01, 2013

Powered by Morningstar® Document Research℠

The information contained herein may not be copied, adapted or distributed and is not warranted to be accurate, complete or timely. The user assumes all risks for any damages or losses arising from any use of this information, except to the extent such damages or losses cannot be limited or excluded by applicable law. Past financial performance is no guarantee of future results.

**Exhibit 99(c)**

**Energy Future Holdings Corp. Consolidated**
**Adjusted EBITDA Reconciliation**
**(millions of dollars)**

| | Nine Months Ended September 30, 2013 | Nine Months Ended September 30, 2012 | Twelve Months Ended September 30, 2013 | Twelve Months Ended September 30, 2012 |
|---|---|---|---|---|
| **Net loss** | $ (635) | $ (1,408) | $ (2,587) | $ (1,545) |
| **Income tax benefit** | (925) | (879) | (1,278) | (971) |
| **Interest expense and related charges** | 1,915 | 2,746 | 2,677 | 3,573 |
| **Depreciation and amortization** | 1,030 | 1,015 | 1,388 | 1,395 |
| **EBITDA** | $ 1,385 | $ 1,474 | $ 200 | $ 2,452 |
| Oncor Holdings distributions of earnings | 148 | 100 | 195 | 152 |
| Interest income | (1) | (2) | (1) | (2) |
| Amortization of nuclear fuel | 114 | 124 | 146 | 162 |
| Purchase accounting adjustments (a) | 20 | 74 | 20 | 96 |
| Impairment of goodwill | — | — | 1,200 | — |
| Impairment and write-down of other assets | 30 | 9 | 69 | 13 |
| Debt extinguishment gains | — | — | — | (26) |
| Equity in earnings of unconsolidated subsidiary (net of tax) | (255) | (249) | (276) | (300) |
| Unrealized net loss resulting from commodity hedging and trading transactions | 693 | 1,290 | 929 | 985 |
| EBITDA amount attributable to consolidated unrestricted subsidiaries | — | — | 4 | — |
| Noncash compensation expense (b) | 5 | 11 | 5 | 16 |
| Transition and business optimization costs (c) | 17 | 31 | 21 | 40 |
| Transaction and merger expenses (d) | 29 | 29 | 39 | 39 |
| Restructuring and other (e) | 77 | 8 | 84 | (40) |
| Charges related to pension plan actions (f) | — | — | 285 | — |
| Expenses incurred to upgrade or expand a generation station (g) | 100 | 69 | 100 | 100 |
| **Subtotal** | $ 2,362 | $ 2,968 | $ 3,020 | $ 3,687 |
| **Add Oncor Adjusted EBITDA (reduced by Oncor Holdings distributions)** | 1,256 | 1,254 | 1,602 | 1,571 |
| **Adjusted EBITDA per Restricted Payments Covenant** | $ 3,618 | $ 4,222 | $ 4,622 | $ 5,258 |

_____

(a)  Purchase accounting adjustments include amortization of the intangible net asset value of retail and wholesale power sales agreements, environmental credits, coal purchase contracts, nuclear fuel contracts and power purchase agreements and the stepped up value of nuclear fuel.  Also include certain credits and gains on asset sales not recognized in net income due to purchase accounting.  Twelve months ended 2012 also reflects the write-down of mineral interests in third quarter 2012.

(b)  Noncash compensation expenses represent amounts recorded under stock-based compensation accounting standards and exclude capitalized amounts.

(c)  Transition and business optimization costs include certain incentive compensation expenses, as well as professional fees and other costs related to supply chain and information technology efficiency initiatives.  2012 also includes costs related to generation plant reliability.

(d)  Transaction and merger expenses primarily represent Sponsor Group management fees.

(e)  Restructuring and other in the nine and twelve months ended 2013 includes costs associated with EFH Corp.'s liability management program.  The amount in the twelve months ended September 30, 2012 reflects reversal of a severance accrual.

(f)  Charges related to pension plan actions resulted from the termination and payout of pension obligations for active nonunion employees of EFH Corp.'s competitive businesses and the assumption by Oncor under a new Oncor pension plan of all of EFH Corp.'s pension obligations to retirees and terminated vested participants.  The charges represent actuarial losses previously recorded as other comprehensive income.

(g)  Expenses incurred to upgrade or expand a generation station represent noncapital outage costs.

Source: Energy Future Intermediate Holding CO LLC, 10-Q, November 01, 2013

Powered by Morningstar® Document Research℠

The information contained herein may not be copied, adapted or distributed and is not warranted to be accurate, complete or timely. The user assumes all risks for any damages or losses arising from any use of this information, except to the extent such damages or losses cannot be limited or excluded by applicable law. Past financial performance is no guarantee of future results.

Source: Energy Future Intermediate Holding CO LLC, 10-Q, November 01, 2013

Powered by Morningstar® Document Research℠

The information contained herein may not be copied, adapted or distributed and is not warranted to be accurate, complete or timely. The user assumes all risks for any damages or losses arising from any use of this information, except to the extent such damages or losses cannot be limited or excluded by applicable law. Past financial performance is no guarantee of future results.