# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

|   |   |
|---|---|
| In re: | ) Chapter 11 |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) Case No. 14-_____ (\_\_\_) |
| Debtors. | ) (Joint Administration Requested) |

## APPLICATION OF ENERGY FUTURE HOLDINGS CORP., *ET AL.*, FOR ENTRY OF AN ORDER APPROVING THE RETENTION AND APPOINTMENT OF EPIQ BANKRUPTCY SOLUTIONS, LLC AS THE CLAIMS AND NOTICING AGENT FOR THE DEBTORS

The above-captioned debtors and debtors in possession (collectively, the "Debtors") file this application (this "Application") for the entry of an order (the "Order"), substantially in the form attached hereto as **Exhibit A**, authorizing the Debtors to employ and retain Epiq Bankruptcy Solutions, LLC ("Epiq") as their claims and noticing agent ("Claims and Noticing Agent"). In support of this Application, the Debtors submit the *Declaration of James Katchadurian, Executive Vice President, at Epiq Bankruptcy Solutions, LLC* (the "Katchadurian Declaration"), attached hereto as **Exhibit B**. In further support of this Application, the Debtors respectfully state as follows.[2]

---

[1] The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, for which the debtors have requested joint administration, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' proposed claims and noticing agent at http://www.efhcaseinfo.com.

[2] The facts and circumstances with respect to these chapter 11 cases and in support of this Application are set forth in the *Declaration of Paul M. Keglevic, Executive Vice President, Chief Financial Officer, and Co-Chief Restructuring Officer of Energy Future Holdings Corp.*, et al., *In Support of First Day Motions* (the "First Day Declaration"), filed contemporaneously herewith.

**Jurisdiction and Venue**

1. The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Debtors consent pursuant to rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Bankruptcy Rules") to the entry of a final order by the Court in connection with this Application to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The bases for the relief requested in this Application are section 156(c) of title 28 of the United States Code (the "Judicial Code"), sections 105(a) and 363 of title 11 of the United States Code (the "Bankruptcy Code"), Local Bankruptcy Rule 2002-1(f), and the Court's *Protocol for the Employment of Claims and Noticing Agents under 28 U.S.C. § 156(c)*, instituted by the Clerk on February 1, 2012 (the "Claims Agent Protocol").

**Relief Requested**

4. By this Application, the Debtors seek entry of an Order authorizing the employment and retention of Epiq as the Debtors' Claims and Noticing Agent, in lieu of the Clerk of the Court (the "Clerk"), in accordance with the terms and conditions set forth in that certain engagement letter dated as of March 20, 2013, as amended by that certain amendment dated as of January 7, 2014, between Energy Future Holdings Corp. ("EFH Corp."), Energy Future Intermediate Holding Company LLC ("EFIH"), Energy Future Competitive Holdings

Company ("EFCH"), Texas Competitive Electric Holdings Company LLC ("TCEH LLC" and collectively with EFH Corp., EFCH, and EFIH, the "Company Parties"), attached hereto as **Exhibit C** and incorporated herein by reference (the "Engagement Letter").

### Services to Be Provided

5. This Application pertains only to the work to be performed by Epiq under the Clerk's delegation of duties permitted by section 156(c) of the Judicial Code, Local Bankruptcy Rule 2002-1(f), and the Claims Agent Protocol, and any work to be performed by Epiq outside of this scope is not covered by this Application or by any order granting approval thereof.[3] Specifically, Epiq will perform, to the extent the Debtors request, the following services in its role as Claims and Noticing Agent (the "Claims and Noticing Services"), as well as all quality control relating thereto:

> (a) preparing and serving required notices and documents in the cases in accordance with the Bankruptcy Code and the Bankruptcy Rules in the form and manner directed by the Debtors and/or the Court, including, if applicable (i) notice of the commencement of the cases and the initial meeting of creditors under Bankruptcy Code § 341(a); (ii) notices of any claims bar date; (iii) notices of transfers of claims; (iv) notices of objections to claims and objections to transfers of claims; (v) notices of any hearings on a disclosure statement and confirmation of a plan of reorganization, including under Bankruptcy Rule 3017(d); (vi) notice of the effective date of any plan; and (vii) all other notices, orders, pleadings, publications, and other documents as the Debtors and/or the Court may deem necessary or appropriate for an orderly administration of the chapter 11 cases;
>
> (b) maintaining an official copy of the Debtors' schedules of assets and liabilities and statement of financial affairs (collectively, the "Schedules"), listing the Debtors' known creditors and the amounts owed thereto;
>
> (c) maintaining (i) a list of all potential creditors, equity holders and other parties-in-interest; and (ii) a "core" mailing list consisting of all parties described in

---

[3] Contemporaneously with the filing of this Application, the Debtors have filed the *Application of Energy Future Holdings Corp., et al., for Entry of an Order Approving the Employment and Retention of Epiq Bankruptcy Solutions, LLC as the Administrative Advisor for the Debtors, Effective* Nunc Pro Tunc *to the Petition Date*, whereby they seek to employ Epiq to provide certain bankruptcy administrative services to the Debtors during these chapter 11 cases.

3

sections 2002(i), (j) and (k) and those parties that have filed a notice of appearance pursuant to Bankruptcy Rule 9010; update said lists and make said lists available upon request by a party-in-interest or the Clerk;

(d) furnishing a notice to all potential creditors of the last date for the filing of proofs of claim and a form for the filing of a proof of claim, after such notice and form are approved by the Court, and notify said potential creditors of the existence, amount, and classification of their respective claims as set forth in the Schedules, which may be affected by inclusion of such information (or lack thereof, in cases where the Schedules indicate no debt due to the subject party) on a customized proof of claim form provided to potential creditors;

(e) maintaining a post office box or address for the purpose of receiving claims and returned mail, and processing all mail received;

(f) for *all* notices, motions, orders or other pleadings or documents served, preparing and filing or causing to be filed with the Clerk an affidavit or certificate of service within seven (7) business days of service which includes (i) either a copy of the notice served or the docket numbers(s) and title(s) of the pleading(s) served, (ii) a list of persons to whom it was mailed (in alphabetical order) with their addresses, (iii) the manner of service, and (iv) the date served;

(g) processing all proofs of claim received, including those received by the Clerk's office, and checking said processing for accuracy, and maintaining the original proofs of claim in a secure area;

(h) maintaining the official claims register for each Debtor (the "Claims Registers") on behalf of the Clerk and upon the Clerk's request, providing the Clerk with certified, duplicate unofficial Claims Registers; and specifying in the Claims Registers the following information for each claim docketed: (i) the claim number assigned; (ii) the date received; (iii) the name and address of the claimant and agent, if applicable, who filed the claim, (iv) the amount asserted; (v) the asserted classification(s) of the claim (*e.g.*, secured, unsecured, priority, etc.); (vi) the applicable Debtor; and (vii) any disposition of the claim;

(i) implementing necessary security measures to ensure the completeness and integrity of the Claims Registers and the safekeeping of the original claims;

(j) recording all transfers of claims and providing any notices of such transfers as required by Bankruptcy Rule 3001(e);

(k) relocating, by messenger or overnight delivery, all of the court-filed proofs of claim to the offices of Epiq, not less than weekly;

(l) upon completion of the docketing process for all claims received to date for each case, turning over to the Clerk copies of the Claims Registers for the Clerk's review (upon the Clerk's request);

(m) monitoring the Court's docket for all notices of appearance, address changes, and claims-related pleadings and orders filed, and making necessary notations on and/or changes to the Claims Registers;

(n) assisting in the dissemination of information to the public and responding to requests for administrative information regarding the cases, as directed by the Debtors and/or the Court, including through the use of a case website and/or call center;

(o) if the case is converted to chapter 7, contact the Clerk's Office within three days' notice to Epiq of entry of the order converting the case;

(p) thirty days prior to the close of these cases, to the extent practicable, requesting that the Debtors submit to the Court a proposed order dismissing Epiq and terminating Epiq's services upon completion of its duties and responsibilities and upon the closing of these cases;

(q) within seven days' notice to Epiq of entry of an order closing the chapter 11 cases, providing to the Court the final version of the Claims Registers as of the date immediately before the close of the cases; and

(r) at the close of these cases, boxing and transporting all original documents, in proper format, as provided by the Clerk's office, to (i) the Federal Archives Record Administration, located at Central Plains Region, 200 Space Center Drive, Lee's Summit, Missouri 64064; or (ii) any other location requested by the Clerk's Office.

6. The Claims Registers shall be open to the public for examination without charge during regular business hours and on a case-specific website maintained by Epiq. For the avoidance of doubt, pursuant to the Engagement Letter, Epiq will perform the Claims and Noticing Services for Energy Future Holdings Corp. and its direct and indirect subsidiaries, other than Oncor Holdings LLC and its subsidiaries.

### Epiq's Qualifications

7. Epiq is one of the country's leading chapter 11 administrators, with significant experience in noticing, claims administration, solicitation, balloting, and facilitating other

5

administrative aspects of chapter 11 cases. Epiq has substantial experience providing services, including claims and noticing services, in matters comparable in size and complexity to this matter.

8. Since its inception in 1988, Epiq has provided claims and noticing services in numerous large cases in this district, including most recently: *In re F & H Acquisition Corp.*, No. 13-13220 (Bankr. D. Del. Dec. 17, 2013); *In re EWGS Intermediary, LLC,* No. 13-12876 (Bankr. D. Del. Nov. 5, 2013); *In re Furniture Brands Int'l, Inc.*, No. 13-12329 (Bankr. D. Del. Sept. 9, 2013); *In re The SCOOTER Store Holdings, Inc.*, No. 13-10904 (PJW) (Bankr. D. Del. Apr. 15, 2013); *In re Rotech Healthcare Inc.*, Case No. 13-10741 (PJW) (Bankr. D. Del. Apr. 8, 2013); *In re Dex One Corp.*, No. 13-10533 (Bankr. D. Del. Mar. 19, 2013); *In re SuperMedia Inc.*, No. 13-10545 (Bankr. D. Del. Apr. 10, 2013); *In re Prince Sports, Inc.*, No. 12-11439 (Bankr. D. Del. May 2, 2012); *In re Bicent Holdings LLC*, Case No. 12-11304 (KG) (Bankr. D. Del. Apr. 24, 2012); *In re LAD, LLC*, No. 11-12010 (KG) (Bankr. D. Del. June 27, 2011); *In re Allen Family Foods, Inc.*, No. 11-11764 (KJC) (Bankr. D. Del. June 9, 2011); *In re Signature Styles, LLC*, No. 11-11733 (KG) (Bankr. D. Del. June 6, 2011); *In re Indianapolis Downs, LLC*, No. 11-11046 (BLS) (Bankr. D. Del. Apr. 7, 2011); *In re Anchor Blue Holding Corp.*, No. 11-10110 (PJW) (Bankr. D. Del. Jan. 11, 2011); *In re Consol. Horticulture Grp. LLC*, No. 10-13308 (JCB) (Bankr. D. Del. Oct. 12, 2010); *In re Trico Marine Servs., Inc.,* No. 10-12653 (BLS) (Bankr. D. Del. Aug. 25, 2010).[4]

9. By appointing Epiq as the Claims and Noticing Agent in these cases, the distribution of notices and the processing of claims will be expedited, and the Clerk's office will be relieved of the administrative burden of processing such claims.

---

[4] Because of the voluminous nature of the orders cited herein, such orders are not attached to this Application. Copies of these orders are available upon request of the Debtors' counsel.

**Compensation and Representation of Disinterestedness**

10. The Debtors respectfully request that the undisputed fees and expenses incurred by Epiq in the performance of the above services be treated as administrative expenses of the Debtors' estates pursuant to section 503(b)(1)(A) of the Bankruptcy Code and be paid in the ordinary course of business without further application to or order of the Court. Epiq agrees to maintain records of all services showing dates, categories of services, fees charged, and expenses incurred, and to serve monthly invoices on the Debtors, the Office of the United States Trustee, counsel for the Debtors, counsel for any official committee, if any, monitoring the expenses of the Debtors, and any party in interest who specifically requests service of the monthly invoices. If any dispute arises relating to the Engagement Letter or monthly invoices, the parties shall meet and confer in an attempt to resolve the dispute. If resolution is not achieved, the parties may seek resolution of the matter from the Court.

11. Prior to the Petition Date, the Debtors provided Epiq a retainer in the amount of $100,000. Epiq seeks to hold the retainer under the Engagement Letter during these chapter 11 cases as security for the payment of fees and expenses incurred under the Engagement Letter.

12. In connection with its retention as the Claims and Noticing Agent, Epiq represents in the Katchadurian Declaration, among other things, that:

    (a) Epiq will not consider itself employed by the United States government and shall not seek any compensation from the United States government in its capacity as the Claims and Noticing Agent in the cases;

    (b) by accepting employment in the cases, Epiq waives any rights to receive compensation from the United States government in connection with the Debtors' cases;

    (c) in its capacity as the Claims and Noticing Agent in the cases, Epiq will not be an agent of the United States and will not act on behalf of the United States; and

(d) it is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code with respect to the matters upon which it is to be engaged.

13. To the extent that there is any inconsistency between this Application, the Order, and the Engagement Letter, the Debtors respectfully submit that the Order shall govern.

## Compliance with the Claims Agent Protocol

14. The Debtors represent that this Application complies with the Claims Agent Protocol and conforms to the standard section 156(c) application used in this district.

## Basis for Relief

15. This Application is made pursuant to section 156(c) of the Judicial Code, section 105(a) of the Bankruptcy Code, Local Bankruptcy Rule 2002-1(f), and the Claims Agent Protocol for an Order appointing Epiq as the Claims and Noticing Agent in order to assume full responsibility for the distribution of notices and the maintenance, processing, and docketing of proofs of claim filed in the Debtors' cases.

16. Section 156 of the Judicial Code, in relevant part, provides:

> Any court may utilize facilities or services, either on or off the court's premises, which pertain to the provision of notices, dockets, calendars, and other administrative information to parties in cases filed under the provisions of title 11, United States Code, where the costs of such facilities or services are paid for out of the assets of the estate and are not charged to the United States. The utilization of such facilities or services shall be subject to such conditions and limitations as the pertinent circuit council may prescribe.

28 U.S.C. § 156(c).

17. Section 105 of the Bankruptcy Code, in relevant part, provides:

> The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary

> or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

11 U.S.C. § 105(a).

18. Local Bankruptcy Rule 2002-1(f) provides:

> Upon motion of the debtor or trustee, at any time without notice or hearing, the Court may authorize the retention of a notice and/or claims clerk under 28 U.S.C. § 156(c). In all cases with more than 200 creditors or parties in interest listed on the creditor matrix, unless the Court orders otherwise, the debtor shall file such motion on the first day of the case or within seven (7) days thereafter. The notice and/or claims clerk shall comply with the Protocol for the Employment of Claims and Noticing Agents under 28 U.S.C. § 156(c) (which can be found on the Court's website) and shall perform the [Claims and Noticing Services].

Del. Bankr. L.R. 2002-1(f).

19. In accordance with the Claims Agent Protocol, before the selection of Epiq, the Debtors reviewed and compared engagement proposals from three court-approved claims and noticing agents, including Epiq, to ensure selection through a competitive process. The Debtors submit, based on the engagement proposals obtained and reviewed, that Epiq's rates are competitive and reasonable given Epiq's quality of services and expertise. The terms of Epiq's retention are set forth in the Engagement Letter; provided, however, that Epiq is seeking by this Application approval solely of the terms and provisions as set forth in this Application and the Order as set forth in **Exhibit A**.

20. The Debtors anticipate that there will be more than 200 entities to be noticed. In light of the number of anticipated claimants and the complexity of the Debtors' businesses, the Debtors submit that the appointment of Epiq as the Claims and Noticing Agent is both necessary and in the best interests of the Debtors' estates and their creditors because the Debtors will be relieved of the burdens associated with the Claims and Noticing Services. Accordingly, the

Debtors will be able to devote their full attention and resources to the restructuring efforts described above.

**Notice**

21. The Debtors shall provide notice of this Motion on the date hereof via facsimile, overnight delivery, and/or hand delivery to: (a) the Office of the U.S. Trustee for the District of Delaware; (b) the entities listed on the Consolidated List of Creditors Holding the 50 Largest Unsecured Claims filed pursuant to Bankruptcy Rule 1007(d); (c) Citibank, N.A., in its capacity as administrative agent under the TCEH first lien credit agreement and collateral agent under the TCEH intercreditor agreements and counsel thereto; (d) Bank of New York Mellon Trust Company, N.A., in its capacity as indenture trustee under: (i) the TCEH unsecured pollution control revenue bonds; and (ii) the EFCH 2037 Notes due 2037, and counsel thereto; (e) American Stock Transfer & Trust Company, LLC, in its capacity as indenture trustee under: (i) the 9.75% EFH senior unsecured notes due 2019; (ii) the 10.0% EFH senior unsecured notes due 2020; (iii) the 10.875% EFH LBO senior unsecured notes due 2017; (iv) the 11.25%/12.0% EFH LBO toggle notes due 2017; (v) the 5.55% EFH legacy notes (series P) due 2014; (vi) the 6.50% EFH legacy notes (series Q) due 2024; and (vii) the 6.55% EFH legacy notes (series R) due 2034, and counsel thereto; (f) Computershare Trust Company, N.A. and Computershare Trust Company of Canada, in their capacities as indenture trustee under: (i) the 11.0% EFIH senior secured second lien notes due 2021; and (ii) the 11.75% EFIH senior secured second lien notes due 2022, and counsel thereto; (g) UMB Bank, N.A. in its capacity as indenture trustee under: (i) the 9.75% EFIH senior unsecured notes due 2019; and (ii) the 11.25%/12.25% EFIH senior toggle notes due 2018, and counsel thereto; (h) BOKF, NA, dba Bank of Arizona, in its capacity as indenture trustee under 11.50% TCEH senior secured notes due 2020, and counsel

thereto; (i) CSC Trust Company of Delaware in its capacity as indenture trustee under: (i) the 6.875% EFIH senior secured notes due 2017; and (ii) the 10.0% EFIH senior secured notes due 2020, and counsel thereto; (j) Law Debenture Trust Company of New York in its capacity as indenture trustee under: (i) the 10.25% TCEH senior unsecured notes due 2015; and (ii) the 10.50%/11.25% TCEH senior toggle notes due 2016, and counsel thereto; (k) Wilmington Savings Fund Society, FSB in its capacity as indenture trustee under the 15.0% TCEH senior secured second lien notes due 2021, and counsel thereto; (l) counsel to certain holders of claims against the Debtors regarding each of the foregoing described in clauses (c) through (k); (m) the agent for the TCEH debtor-in-possession financing facility and counsel thereto; (n) the agent for the EFIH debtor-in-possession financing facility and counsel thereto; (o) counsel to certain holders of equity in Texas Energy Future Holdings Limited Partnership; (p) counsel to Oncor; (q) the SEC; (r) the Internal Revenue Service; (s) the Office of the United States Attorney for the District of Delaware; (t) the Office of the Texas Attorney General on behalf of the PUC; and (u) counsel to ERCOT. As this Motion is seeking "first day" relief, within forty eight hours of the entry of the Interim Order, the Debtors will serve copies of this Motion and the order respecting this Motion as required by Local Bankruptcy Rule 9013-1(m). The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

## **No Prior Request**

22. No prior request for the relief sought in this Application has been made to this or any other court.

[*Remainder of page intentionally left blank.*]

WHEREFORE, for the reasons set forth herein and in the Katchadurian Declaration, the Debtors respectfully request that the Court enter the Order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested herein and granting such other and further relief as is appropriate under the circumstances.

Wilmington, Delaware
Dated: April 29, 2014

/s/ Paul M. Keglevic
Paul M. Keglevic
Executive Vice President, Chief Financial
Officer and Co-Chief Restructuring Officer,
Energy Future Holdings Corp.