## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) | Case No. 14-_____ (___) |
|  | ) |  |
| Debtors. | ) | (Joint Administration Requested) |
|  | ) |  |

**MOTION OF ENERGY FUTURE
HOLDINGS CORP., *ET AL.*, FOR ENTRY OF
INTERIM AND FINAL ORDERS AUTHORIZING THE
DEBTORS TO (A) GRANT ADMINISTRATIVE EXPENSE PRIORITY
TO ALL UNDISPUTED OBLIGATIONS FOR GOODS AND SERVICES
ORDERED PREPETITION AND DELIVERED POSTPETITION AND SATISFY
SUCH OBLIGATIONS IN THE ORDINARY COURSE OF BUSINESS, AND (B) PAY
PREPETITION CLAIMS OF SHIPPERS, WAREHOUSEMEN, AND MATERIALMEN**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") file this motion (this "Motion") for entry of interim and final orders, substantially in the forms attached hereto as **Exhibit A** and **Exhibit B** (respectively, the "Interim Order" and "Final Order"), authorizing the Debtors to: (a) grant administrative expense priority to all undisputed obligations for goods and services ordered prepetition and delivered to the Debtors' at the final destination postpetition (the "Outstanding Orders") and satisfy such obligations in the ordinary course of business; and (b) pay prepetition claims of Shippers, Warehousemen, and Materialmen (each as defined in this Motion, and collectively, the "Claimants") in the ordinary course of business. In support of this Motion, the Debtors respectfully state as follows.

---

[1] The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, for which the debtors have requested joint administration, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' proposed claims and noticing agent at http://www.efhcaseinfo.com.

## Jurisdiction and Venue

1.      The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012.   This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Debtors confirm their consent pursuant to rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Bankruptcy Rules") to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The bases for the relief requested in this Motion are sections 105(a) and 363 of title 11 of the United States Code (the "Bankruptcy Code"), rule 6003 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Local Bankruptcy Rule 9013-1(m).

## Relief Requested

4.      By this Motion, the Debtors seek entry of Interim and Final Orders authorizing, but not directing, the Debtors to:  (a) grant administrative expense priority to the Outstanding Orders and satisfy such obligations in the ordinary course of business; and (b) pay prepetition claims of the Claimants in the ordinary course of business in an aggregate amount not to exceed $35.3 million during the period between the Petition Date (as defined herein) and entry of the

Final Order (the "Interim Period")[2] and, pursuant to the Final Order, in an aggregate amount not to exceed $39.5 million.[3]

5.        The Debtors also request that the Court:  (a) schedule a final hearing as soon as practicable after the 21st day following the Petition Date (defined herein) to consider approval of this Motion on a final basis (the "Final Hearing"); and (b) authorize all applicable banks and financial institutions to receive, process, honor, and pay all checks presented for payment and all electronic payment requests related to the Claimants, whether such checks were presented or electronic-payment requests were submitted before or after the date hereof.

**Background**

6.        On the date hereof (the "Petition Date"), each of the Debtors filed a voluntary petition with the Court under chapter 11 of the Bankruptcy Code.  The Debtors are operating their businesses and managing their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.   The Debtors have requested joint administration of these chapter 11 cases.  The Court has not appointed a trustee, and the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") has not formed any official committees in these chapter 11 cases.[4]

7.        Debtor Energy Future Holdings Corp. ("EFH Corp."), a Texas corporation, is the ultimate parent company for each of the Debtors in these chapter 11 cases and certain of EFH Corp.'s non-Debtor affiliates (collectively, "EFH").   EFH's businesses include the largest

---

[2]    Unless stated otherwise, estimated amounts that the Debtors expect will come due during the Interim Period are based on the 30-day period after the Petition Date.

[3]    This Motion does not request any relief with respect to or affect the rights, duties, or obligations of EFIH (defined herein) and EFIH Finance, Inc.

[4]    The facts and circumstances supporting this Motion, along with a detailed discussion of EFH's business operations and capital structure, are set forth in the *Declaration of Paul Keglevic, Executive Vice President, Chief Financial Officer, and Co-Chief Restructuring Officer of Energy Future Holdings Corp., et al., in Support of First Day Motions* (the "First Day Declaration"), filed contemporaneously herewith.

generator, distributor, and certified retail provider of electricity in Texas. EFH conducts substantially all of its business operations in the electricity market overseen by the Electric Reliability Council of Texas ("ERCOT"), which covers the majority of Texas. The Texas electricity market, in turn, is subject to oversight and regulation by the Public Utility Commission of Texas (the "PUC"). EFH has approximately 9,100 employees, approximately 5,700 of whom are employed by the Debtors,[5] in three distinct business units:

- EFH's *competitive electricity generation, mining, wholesale electricity sales, and commodity risk management and trading activities*, conducted by TCEH LLC's Debtor subsidiaries composing "Luminant";

- EFH's *competitive retail electricity sales operations and related operations*, mainly conducted by TCEH LLC's Debtor subsidiaries composing "TXU Energy";[6] and

- EFH's *rate-regulated electricity transmission and distribution operations*, conducted by the non-Debtor Oncor.

8.    In the aggregate, the Debtors have approximately $42 billion of funded indebtedness, including (a) approximately $32.1 billion of claims against TCEH LLC and TCEH LLC's direct and indirect Debtor subsidiaries; (b) approximately $71 million of claims against EFCH; (c) approximately $1.9 billion of claims against EFH Corp.; and (d) approximately $7.7 billion of claims against EFIH.[7]

---

[5]    The Debtors in these chapter 11 cases consist of: (a) the vast majority of the entities that compose Luminant and TXU Energy, as well as those entities' intermediate corporate parent entity, Texas Competitive Electric Holdings Company LLC ("TCEH LLC"), a Delaware limited liability company, and TCEH LLC's corporate parent, Energy Future Competitive Holdings Company LLC ("EFCH"), a Delaware limited liability company; (b) Energy Future Intermediate Holding Company LLC ("EFIH"), a Delaware limited liability company that indirectly owns approximately 80% of Oncor Electric Delivery Holdings Company LLC ("Oncor"), and EFIH's wholly-owned subsidiary, EFIH Finance Inc.; (c) EFH Corp.; and (d) other direct and indirect subsidiaries of EFH Corp., including EFH Corporate Services Company.

[6]    The Debtors also conduct a relatively small amount of retail electricity operations through their 4Change brand and another entity, Luminant ET Services Company, that provides retail electricity service to some end use customers and to some of Luminant's mining operations, and a small amount of retail gas operations through Luminant Energy Company LLC.

[7]    Amounts include intercompany debt holdings and short-term borrowings, and exclude guarantees, unamortized discounts or premiums, accrued but unpaid interest, and certain other figures typically reported in the Debtors'

4

9.      Although the Debtors' balance sheet is overleveraged, the Debtors' operations are strong.  Luminant's generation units are high-performing, its mining and electricity generation operations have impressive safety records, and its commodity trading and risk management activities have delivered significant value to the Debtors.  TXU Energy is an industry leader in customer care performance and product innovation and has maintained strong performance notwithstanding intense competition.  And non-Debtor Oncor produces a strong and consistent stream of revenue.  Thus, these chapter 11 cases will provide the Debtors with the opportunity to restructure their balance sheets and retain their position as leaders in the Texas electricity market.

10.     As of December 31, 2013, EFH Corp. reported total assets of approximately $36.4 billion in book value, approximately $28.8 billion of which is attributable to EFCH, TCEH LLC, and TCEH LLC's direct and indirect subsidiaries (collectively with TCEH LLC and EFCH, "TCEH"),[8] and total liabilities of approximately $49.7 billion in book value, approximately $41.1 billion of which is attributable to TCEH.[9] EFH Corp.'s assets and liabilities that are not attributable to TCEH are mostly attributable to EFIH's indirect ownership of approximately 80% of Oncor.  EFH Corp.'s consolidated revenues for the quarter ending December 31, 2013 were approximately $1.3 billion, all of which were attributable to TCEH. EFH Corp.'s consolidated annual revenues for the year ending December 31, 2013 were approximately $5.9 billion.

---

filings with the Securities and Exchange Commission (the "SEC"), such as capital lease obligations, certain promissory notes, and certain other obligations.

[8]  Oncor's revenues are not included in EFH Corp.'s consolidated revenues because EFH Corp. accounts for its ownership of Oncor under the equity method of accounting.

[9]  Figures for TCEH are derived from EFCH's public filings with the SEC, and are almost entirely attributable to TCEH LLC and its Debtor and non-Debtor subsidiaries.

I.      **Outstanding Orders.**

11.     The Debtors' suppliers may be concerned that they will be rendered general unsecured creditors, rather than administrative claimants, with respect to goods and services ordered before the Petition Date for delivery or provision after the Petition Date.  As a result, suppliers may refuse to ship or transport such goods (or recall such shipments) or provide services with respect to Outstanding Orders unless the Debtors issue substitute purchase orders postpetition or obtain an order of the Court permitting the Debtors to meet their obligations under the Outstanding Orders even though the Outstanding Orders are entitled to administrative expense priority under section 503(b) of the Bankruptcy Code.  Thus, the Debtors seek to affirm that the Outstanding Orders are entitled to administrative priority and to pay such Outstanding Orders in the ordinary course of business to avoid any unnecessary disruption to business operations and administrative costs associated with reissuing purchase orders or seeking additional relief.

II.     **Claims of Shippers, Warehousemen, and Materialmen.**

A.      **Shippers.**

12.     The Debtors' ability to produce and deliver energy in a timely manner depends on their timely receipt of raw materials, parts, equipment, supplies, fuel, and components that are important to the Debtors' business operations.  To that end, the Debtors rely upon certain professional domestic and international common carriers, shippers, truckers, logistics management companies, pipelines, rail carriers, and certain other third-party service providers to ship, transport, and deliver goods (the "Shippers").  Under certain state and federal laws, the Shippers could potentially assert possessory liens over goods currently in their possession for amounts the Debtors owe to the Shippers.  *See* 49 U.S.C. § 80109 (providing for uniform shipper liens with respect to interstate shipments using common carriers); Tx. Bus. & Com. § 7.307

(providing that carriers have a lien on shipped goods). The value of the goods being shipped do not necessarily exceed the amounts owed to the Shippers, but an inability to acquire these materials or parts from the Shippers could result in serious disruption to the Debtors' operations. Timely delivery of these items is therefore vital to the operation of the Debtors' businesses.

13.     The Debtors estimate that, as of the Petition Date, they owe approximately $19.4 million on account of shipping and logistics charges for goods ordered prepetition, all of which will become due and owing during the Interim Period.

**B.    Warehousemen.**

14.     To store certain of the same materials and parts transported by the Shippers, the Debtors use offsite storage space with certain warehouse facilities (collectively, the "Warehousemen"). For example, the Debtors have entered into several contracts to store natural gas utilized to fuel certain power generation assets and in other activities. Under certain state laws, the Warehousemen may be able to assert possessory liens against the warehoused property for amounts owed to the Warehousemen. *See* Tx. Bus. & Com. § 7.209 (providing for warehousemen liens even where a storage agreement, rather than a warehouse receipt, governs the transaction). The availability of these warehoused goods and materials are similarly important to the continued operation of the Debtors' businesses, and the amount due to the Warehousemen is significantly less than the value of the goods being stored.

15.     The Debtors estimate that, as of the Petition Date, they owe approximately $3.2 million on account of Warehousemen claims, all of which will become due and owing during the Interim Period.

**C.    Materialmen.**

16.     The Debtors' energy production and mining activities depend upon third-party contractors, mechanics, machinists, and repairmen that repair, fabricate, or perform other

services on certain parts, equipment, and other materials used in the Debtors' facilities (the "Materialmen").

17.    Under certain state laws, including the Texas Constitution, the Materialmen could potentially assert possessory liens against the Debtors and their property for amounts that the Debtors owe and may refuse to return the Debtors' property until they are paid for their services. *See* Tex. Cont. Art. XVI § 37 (self-effectuating constitutional lien in favor of "[m]echanics, artisans and material men, of every class . . . upon the buildings and articles made or repaired by them"); Tx. Prop. § 70.001 (providing for certain possessory materialmen liens). The value of the property is greater than the amount of the Materialmens' claim for services rendered.

18.    The Debtors estimate that, as of the Petition Date, they owe approximately $16.9 million on account of outstanding prepetition invoices of the Materialmen, of which approximately $12.7 million will become due and owing during the Interim Period.

### III.    Proposed Treatment of Claimants.

19.    Under the state and federal laws described above, the Claimants may have perfected liens against certain of the Debtors' goods, equipment, and facilities, or may be able to perfect such liens postpetition. Even in the absence of such liens, the Claimants may possess goods that are vital to the Debtors' ongoing business operations. Accordingly, by this Motion, the Debtors seek to prevent the breakdown of their supply and maintenance network and the disruption of their customer base by requesting authority to pay Claimants as, in their business judgment, the Debtors determine are necessary and appropriate to (a) obtain release of important or valuable goods, tooling, or equipment that may be subject to possessory liens and (b) maintain a reliable, efficient, continuous, and timely receipt of goods and services. The Debtors propose to pay such claims, when, in the Debtors' sole discretion, a Claimant could unduly disrupt the

Debtors' businesses, notwithstanding the Debtors' belief that such action would violate the automatic stay, and regardless of whether a Claimant has a perfected lien.  Importantly, amounts owed to the Claimants represent only approximately 8% of the Debtors' outstanding trade debt, and less than 0.1% of the Debtors' total funded indebtedness, as of the Petition Date.

20.    Further, the Debtors seek the authority, but not the direction, to condition payment to Claimants upon their agreement to continue supplying goods and services to the Debtors postpetition on normal and customary trade terms, practices, and programs (including, without limitation, credit limits, pricing, cash discounts, timing of payments, allowances, rebates, coupon reconciliation, availability, and other applicable terms and programs), that were most favorable to the Debtors and that were in effect within three months before the Petition Date, or such other trade terms that are acceptable to the Debtors (the "Customary Trade Terms").  The Debtors request that they reserve the right[10] to adjust normal trade terms with any such Claimant according to the facts and circumstances of such relationship.[11]

### Basis for Relief

I.    **The Court Should Confirm That Outstanding Orders Are Administrative Expense Priority Claims and That Payment is Authorized.**

21.    Pursuant to section 503(b) of the Bankruptcy Code, most obligations that arise in connection with the postpetition delivery of goods and services, including goods and services ordered prepetition, are in fact administrative expense priority claims because they benefit the

---

[10]    In the event any payments greater than $5 million are to be paid when a Claimant has not agreed to Customary Trade Terms, the Debtors have agreed to consult with counsel to certain holders of first lien claims against TCEH (the "Ad Hoc Committee of TCEH First Lien Creditors") before adjusting trade terms.

[11]    Additionally, the Debtors request that if a supplier or vendor accepts payment pursuant to the Interim Order and/or the Final Order and thereafter does not continue to provide goods or services on Customary Trade Terms that (a) any such payment shall be deemed, in the Debtors' sole discretion with consultation with the Ad Hoc Committee of TCEH First Lien Creditors, to be an improper postpetition transfer, and, therefore, recoverable by the Debtors in cash upon written request; and (b) upon recovery of the payment by the Debtor, the amount owed to such Claimant shall be reinstated as if the payment had not been made.

estate postpetition. Thus, the granting of the relief sought in this Motion with respect to the Outstanding Orders will not provide the suppliers with any greater priority than they otherwise would have if the relief requested in this Motion were not granted, and will not prejudice any other party in interest.

22.    Absent such relief, however, the Debtors may be required to expend substantial time and effort reissuing the Outstanding Orders to provide the suppliers with assurance of such administrative priority. The attendant disruption to the continuous and timely flow of goods and services to the Debtors could result in substantial delays in the Debtors' operations. Accordingly, the Debtors submit that the Court should confirm the administrative expense priority status of the Outstanding Orders and authorize the Debtors to pay the Outstanding Orders in the ordinary course of business.

23.    Courts in this jurisdiction have approved relief similar to the relief requested in this Motion for debtors seeking the authority and the discretion to pay claims arising from prepetition orders that are delivered to the debtors postpetition. *See, e.g., In re Longview Power, LLC*, No. 13-12211 (BLS) (Bankr D. Del. Sept. 4, 2013) (granting administrative priority for goods and services ordered prepetition and delivered or performed postpetition); *In re Rural/Metro Corp.*, No. 13-11952 (KJC) (Bankr. D. Del. Aug. 6 & 26, 2013) (same); *In re OnCure Holdings, Inc.*, No. 13-11540 (KG) (Bankr. D. Del. July 24, 2013) (same); *In re Overseas Shipholding Grp., Inc.*, No. 12-20000 (PJW) (Bankr. D. Del. Nov. 15, 2012) (same); *In re CP Liquidating, Inc.*, No. 13-10102 (KG) (Bankr. D. Del. Jan. 23, 2013) (same).[12]

---

[12]  Because of the voluminous nature of the orders cited herein, such orders are not attached to this Motion. Copies of these orders are available upon request of the Debtors' counsel.

II.    **Payment of the Claimants Is Warranted.**

24.    Courts in the Third Circuit and elsewhere generally recognize that debtors may pay prepetition claims that are essential to the continued operation of the debtor's business. *See, e.g., In re Meridian Auto. Sys.-Composite Operations, Inc.*, 372 B.R. 710, 714 (Bankr. D. Del. 2007) (granting the debtor authority to pay prepetition obligations owed to certain critical vendors); *In re Primary Health Sys., Inc.*, 275 B.R. 709, 710 (Bankr. D. Del. 2002) (allowing payment of prepetition wages upon a finding that such relief was "essential to the continued operation of the Debtors' businesses"); *In re Just for Feet, Inc.*, 242 B.R. 821, 824-45 (Bankr. D. Del. 1999) (noting that debtors may pay prepetition claims that are essential to the continued operation of the debtor's business). Courts have relied on several legal bases in approving such relief.

25.    Courts generally recognize that debtors may pay prepetition claims under section 363(b) of the Bankruptcy Code where there is a sound business purpose for the payment of prepetition obligations, and where the debtor is able to "articulate some business justification, other than the mere appeasement of major creditors." *See, e.g., In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) (granting debtor authority to pay prepetition wages); *Armstrong World Indus. Inc. v. James A. Phillips, Inc., (In re James A. Phillips, Inc.)*, 29 B.R. 391, 398 (Bankr. S.D.N.Y. 1983) (granting the debtor the authority to pay prepetition claims of suppliers who were potential lien claimants).

26.    Courts also recognize that payments to prepetition creditors are appropriate pursuant to section 105(a) of the Bankruptcy Code under the "doctrine of necessity" or the "necessity of payment" rule where such payments are necessary to the continued operation of the debtor's business. *See, e.g., In re Lehigh & New England Ry. Co.*, 657 F.2d 570, 581 (3d Cir. 1981) (holding that a court could authorize the payment of prepetition claims if such payment

was essential to the continued operation of the debtor); *In re Penn Cent. Transp. Co.*, 467 F.2d 100, 102 n.1 (3d Cir. 1972) (holding that the necessity of payment doctrine permits "immediate payment of claims of creditors where those creditors will not supply services or material essential to the conduct of the business until their pre-reorganization claims have been paid"); *In re Friedman's, Inc.*, 2011 WL 5975283, at *3 (Bankr. D. Del. Nov. 30, 2011) ("[M]ost courts will allow payments [of prepetition claims] under the 'doctrine of necessity,' if the debtor establishes that in its business judgment making such payments is critical to the survival of the debtor's business"); *In re Columbia Gas Sys., Inc.*, 171 B.R. 189, 191–92 (Bankr D. Del. 1994) (noting that debtors may pay prepetition claims that are essential to the continued operation of the debtor's business). The rationale for the necessity of payment rule—the rehabilitation of a debtor in reorganization cases—is "the paramount policy and goal of Chapter 11." *Ionosphere Clubs*, 98 B.R. at 176; *Just for Feet*, 242 B.R. at 826 (finding that payment of prepetition claims to certain trade vendors was "essential to the survival of the debtor during the chapter 11 reorganization.").

27.    Payment of the Claimants is within the Debtors' sound business judgment, essential to the Debtors' business operations, and will preserve and maximize the value of the Debtors' estates. Although the Court has the authority to order the Claimants to turn over any goods in the Claimants' possession, those Claimants that have valid liens may be entitled to adequate protection of their liens pursuant to section 363(e) of the Bankruptcy Code. Moreover, the Claimants may have liens on goods that are more valuable than the claims being asserted by the Claimants. Such Claimants will therefore be entitled to payment in full on account of their claims and paying such claims in the ordinary course of business changes only the timing, rather than the amount, of payments that such Claimants will receive. Finally, the Claimants may be

unwilling to release the goods in their possession, or may attempt to exercise "self-help" remedies, to secure payment of their claims. Although the Debtors believe such actions would violate the automatic stay, the delay caused by such actions would unnecessarily disrupt the Debtors' business operations to the detriment of the Debtors, their estates, and their creditors. Thus, the Debtors should be permitted, in their discretion, to pay the Claimants.

28.     Courts in this jurisdiction have approved relief similar to the relief requested in this Motion for debtors seeking the authority and the discretion to pay prepetition claims of creditors of shippers, warehousemen, materialmen, or other comparable vendors. *See, e.g., In re Coldwater Creek Inc.,* No. 14-10867 (BLS) (Bankr. D. Del. Apr. 14, 2014); *In re Brookstone Holdings Corp.,* No. 14-10752 (BLS) (Bankr. D. Del. Apr. 4, 2014); *In re Constar Int'l Holdings LLC,* No. 13-13281 (CSS) (Bankr. D. Del. Dec. 20, 2013); *In re School Specialty, Inc.,* No. 13-10125 (KJC) (Bankr D. Del. Feb. 25, 2013); *In re THQ, Inc.,* No. 12-13398 (MFW) (Bankr. D. Del. Dec. 20, 2012); *In re B456 Sys., Inc. (f/k/a A123 Sys., Inc.),* No. 12-12859 (KJC) (Bankr D. Del. Nov. 8, 2012); *In re Neb. Book Co.,* No. 11-12005 (PJW) (Bankr. D. Del. June 28, 2011); *In re Local Insight Media Holdings, Inc.,* No. 10-13677 (KG) (Bankr. D. Del. Nov. 19, 2010).[13]

## III.    Cause Exists To Authorize the Debtors' Financial Institutions To Honor Checks and Electronic Fund Transfers.

29.     The Debtors have sufficient funds to pay the amounts described in this Motion in the ordinary course of business by virtue of expected cash flows from ongoing business operations and anticipated access to cash collateral. Also, under the Debtors' existing cash management system, the Debtors can readily identify checks or wire transfer requests as relating

---

[13]    Because of the voluminous nature of the orders cited herein, such orders are not attached to this Motion. Copies of these orders are available upon request of the Debtors' counsel.

to an authorized payment of Outstanding Orders or payments to the Claimants.  Accordingly, the Debtors believe that checks or wire transfer requests, other than those relating to authorized payments, will not be honored inadvertently.  Therefore, the Debtors respectfully request that the Court authorize and direct all applicable financial institutions, when requested by the Debtors, to receive, process, honor, and pay any and all checks or wire transfer requests in respect of the relief requested in this Motion.

### The Requirements of Bankruptcy Rule 6003 are Satisfied

30.    Pursuant to Bankruptcy Rule 6003, the Court may grant relief regarding a motion to pay all or part of a prepetition claim within 21 days after the Petition Date if the relief is necessary to avoid immediate and irreparable harm.  Immediate and irreparable harm exists where the absence of relief would impair a debtor's ability to reorganize or threaten the debtor's future as a going concern.  *See In re Ames Dep't Stores, Inc.*, 115 B.R. 34, 36 n.2 (Bankr. S.D.N.Y. 1990) (discussing the elements of "immediate and irreparable harm" in relation to Bankruptcy Rule 4001).

31.    As described above, prompt payment of Outstanding Orders and payments to Claimants is necessary to avoid the immediate and irreparable harm that would result from delayed provision of the raw materials and services and for return of the Debtors' property needed to operate the Debtors' businesses.  Accordingly, the Debtors submit that they have satisfied the requirements of Bankruptcy Rule 6003 to support the relief set forth in the Interim Order on the terms described herein.

### Waiver of Bankruptcy Rules 6004(a) and 6004(h)

32.    To implement the foregoing successfully, the Debtors seek a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the 14-day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h).

## Reservation of Rights

33.      Nothing contained in this Motion or any actions taken by the Debtors pursuant to relief granted in the Interim Order and Final Order is intended or should be construed as:  (a) an admission as to the validity of any particular claim against a Debtor entity; (b) a waiver of the Debtors' rights to dispute any particular claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Motion; (e) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) a waiver or limitation of the Debtors' rights under the Bankruptcy Code or any other applicable law; or (g) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to this Motion are valid, and the Debtors expressly reserved their rights to contest the extent, validity, or perfection or seek avoidance of all such liens.  If the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity of any particular claim or a waiver of the Debtors' rights to subsequently dispute such claim.

## Notice

34.      The Debtors shall provide notice of this Motion on the date hereof via facsimile, overnight delivery, and/or hand delivery to:  (a) the Office of the U.S. Trustee for the District of Delaware; (b) the entities listed on the Consolidated List of Creditors Holding the 50 Largest Unsecured Claims filed pursuant to Bankruptcy Rule 1007(d); (c) Citibank, N.A., in its capacity as administrative agent under the TCEH first lien credit agreement and collateral agent under the TCEH intercreditor agreements and counsel thereto; (d) Bank of New York Mellon Trust Company, N.A., in its capacity as indenture trustee under:  (i) the TCEH unsecured pollution control revenue bonds; and (ii) the EFCH 2037 Notes due 2037, and counsel thereto;

(e) American Stock Transfer & Trust Company, LLC, in its capacity as indenture trustee under: (i) the 9.75% EFH senior unsecured notes due 2019; (ii) the 10.0% EFH senior unsecured notes due 2020; (iii) the 10.875% EFH LBO senior unsecured notes due 2017; (iv) the 11.25%/12.0% EFH LBO toggle notes due 2017; (v) the 5.55% EFH legacy notes (series P) due 2014; (vi) the 6.50% EFH legacy notes (series Q) due 2024; and (vii) the 6.55% EFH legacy notes (series R) due 2034, and counsel thereto; (f) Computershare Trust Company, N.A. and Computershare Trust Company of Canada, in their capacities as indenture trustee under: (i) the 11.0% EFIH senior secured second lien notes due 2021; and (ii) the 11.75% EFIH senior secured second lien notes due 2022, and counsel thereto; (g) UMB Bank, N.A. in its capacity as indenture trustee under: (i) the 9.75% EFIH senior unsecured notes due 2019; and (ii) the 11.25%/12.25% EFIH senior toggle notes due 2018, and counsel thereto; (h) BOKF, NA, dba Bank of Arizona, in its capacity as indenture trustee under 11.50% TCEH senior secured notes due 2020, and counsel thereto; (i) CSC Trust Company of Delaware in its capacity as indenture trustee under: (i) the 6.875% EFIH senior secured notes due 2017; and (ii) the 10.0% EFIH senior secured notes due 2020, and counsel thereto; (j) Law Debenture Trust Company of New York in its capacity as indenture trustee under: (i) the 10.25% TCEH senior unsecured notes due 2015; and (ii) the 10.50%/11.25% TCEH senior toggle notes due 2016, and counsel thereto; (k) Wilmington Savings Fund Society, FSB in its capacity as indenture trustee under the 15.0% TCEH senior secured second lien notes due 2021, and counsel thereto; (l) counsel to certain holders of claims against the Debtors regarding each of the foregoing described in clauses (c) through (k); (m) the agent for the TCEH debtor-in-possession financing facility and counsel thereto; (n) the agent for the EFIH debtor-in-possession financing facility and counsel thereto; (o) counsel to certain holders of equity in Texas Energy Future Holdings Limited Partnership; (p) counsel to Oncor;

(q) the SEC; (r) the Internal Revenue Service; (s) the Office of the United States Attorney for the District of Delaware; (t) the Office of the Texas Attorney General on behalf of the PUC; and (u) counsel to ERCOT.  As this Motion is seeking "first day" relief, within forty eight hours of the entry of the Interim Order, the Debtors will serve copies of this Motion and the order respecting this Motion as required by Local Bankruptcy Rule 9013-1(m).  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

<u>**No Prior Request**</u>

35.     No prior request for the relief sought in this Motion has been made to this or any other court.

*[Remainder of page intentionally left blank.]*

WHEREFORE, the Debtors respectfully request that the Court enter the Interim Order and Final Order, substantially in the forms attached hereto as **Exhibit A** and **Exhibit B**, respectively, granting the relief requested in this Motion and granting such other and further relief as is appropriate under the circumstances.

Wilmington, Delaware
Dated:  April 29, 2014

**RICHARDS, LAYTON & FINGER, P.A.**
Mark D. Collins (No. 2981)
Daniel J. DeFranceschi (No. 2732)
Jason M. Madron (No. 4431)
920 North King Street
Wilmington, Delaware 19801
Telephone:      (302) 651-7700
Facsimile:      (302) 651-7701
Email:            collins@rlf.com
                     defranceschi@rlf.com
                     madron@rlf.com

-and-

**KIRKLAND & ELLIS LLP**
Richard M. Cieri (*pro hac vice* pending)
Edward O. Sassower, P.C. (*pro hac vice* pending)
Stephen E. Hessler (*pro hac vice* pending)
Brian E. Schartz (*pro hac vice* pending)
601 Lexington Avenue
New York, New York 10022-4611
Telephone:      (212) 446-4800
Facsimile:      (212) 446-4900
Email:            richard.cieri@kirkland.com
                     edward.sassower@kirkland.com
                     stephen.hessler@kirkland.com
                     brian.schartz@kirkland.com

-and-

James H.M. Sprayregen, P.C. (*pro hac vice* pending)
Chad J. Husnick (*pro hac vice* pending)
Steven N. Serajeddini (*pro hac vice* pending)
300 North LaSalle
Chicago, Illinois 60654
Telephone:      (312) 862-2000
Facsimile:      (312) 862-2200
Email:            james.sprayregen@kirkland.com
                     chad.husnick@kirkland.com
                     steven.serajeddini@kirkland.com

Proposed Co-Counsel to the Debtors and Debtors in Possession

## EXHIBIT A

**Proposed Interim Order**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) | Case No. 14-_____ (___) |
| | ) | |
| Debtors. | ) | (Joint Administration Requested) |
| | ) | |

### INTERIM ORDER AUTHORIZING THE DEBTORS TO
### (A) GRANT ADMINISTRATIVE EXPENSE PRIORITY TO ALL
### UNDISPUTED OBLIGATIONS FOR GOODS AND SERVICES ORDERED
### PREPETITION AND DELIVERED POSTPETITION AND SATISFY SUCH
### OBLIGATIONS IN THE ORDINARY COURSE OF BUSINESS AND (B) PAY
### PREPETITION CLAIMS OF SHIPPERS, WAREHOUSEMEN, AND MATERIALMEN

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors"), for entry of an interim order (this "Order"), authorizing, but not directing, the Debtors to (a) grant administrative expense priority to all Outstanding Orders and satisfy such obligations in the ordinary course of business and (b) pay the Claimants in the ordinary course of business, all as more fully set forth in the Motion; and upon the First Day Declaration; and the Court having found that it has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and the Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and the Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors,

---

[1]    The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810.  The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201.  Due to the large number of debtors in these chapter 11 cases, for which the debtors have requested joint administration, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the debtors' proposed claims and noticing agent at http://www.efhcaseinfo.com.

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

and other parties in interest; and the Court having found that the Debtors provided appropriate notice of the Motion and the opportunity for a hearing on the Motion under the circumstances; and the Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing, if any, before the Court (the "Hearing"); and the Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before the Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.      The Motion is granted on an interim basis as set forth herein.

2.      All undisputed obligations relating to the Outstanding Orders are granted administrative expense priority status in accordance with section 503(b) of the Bankruptcy Code.

3.      In accordance with this Order, the Debtors are authorized, but not directed, to honor, pay, or otherwise satisfy prepetition amounts on account of Outstanding Orders in the ordinary course of business and consistent with the parties' customary practices in effect before the Petition Date.

4.      In accordance with this Order, the Debtors are authorized, but not directed, to honor, pay, or otherwise satisfy prepetition amounts owed to the Claimants in the ordinary course of business consistent with the parties' customary practices in effect before the Petition Date; *provided, however,* that such payments shall not exceed $35.3 million during the Interim Period unless otherwise ordered by the Court.

5.      The Debtors are authorized, but not directed, to condition payment to Claimants upon a Claimant's agreement to continue supplying goods and services to the Debtors postpetition on Customary Trade Terms; *provided, however*, that the Debtors reserve the right to

adjust normal trade terms with any such Claimant according to the facts and circumstances, *provided further, however*, that the Debtors shall consult with counsel to the Ad Hoc Committee of TCEH First Lien Creditors before adjusting trade terms with such Claimant if such Claimant is receiving a payment in excess of $5 million under this Order.

6.      The Final Hearing shall be _____, 2014, at __:__ a.m./p.m., prevailing Eastern Time.   Any objections or responses to the Motion must be filed on or before _____, 2014, at 4:00 p.m., prevailing Eastern Time.   If no objections are filed to the Motion, the Court may enter the Final Order without further notice or hearing.

7.      In accordance with this Order and any other order of this Court, each of the financial institutions at which the Debtors maintain their accounts relating to the payment of the obligations described in this Order is authorized to honor checks and electronic payment requests presented for payment of obligations described in this Order and all fund transfer requests made by the Debtors related thereto to the extent that sufficient funds are on deposit in such amounts.

8.      If, after receiving a payment pursuant to this Order, a Claimant does not continue to provide Customary Trade Terms, then (a) any such payment received by such Claimant shall be deemed, in the Debtors' discretion in consultation with counsel to the Ad Hoc Committee of TCEH First Lien Creditors, an improper postpetition transfer and, therefore, recoverable by the Debtors in cash immediately upon written request by the Debtors, and (b) upon recovery by the Debtors, any prepetition claim of such Claimant shall be reinstated as if the payment had not been made; *provided, however*, that (x) prior to exercising any remedies set forth in paragraph 8, the Debtors shall provide the applicable party with written notice of their intent to exercise such remedies, and the applicable party shall have fourteen (14) days from service of such written notice to file an objection and serve it on the Debtors and (y) if such party files and serves such

3

written notice, the Debtors shall not exercise any remedies set forth in paragraph 8 pending further order of the Court or agreement of the parties.

9.     If there exists an outstanding postpetition balance due from the Debtors to a Claimant that does not continue to provide Customary Trade Terms, the Debtors may elect to recharacterize and apply any payments made pursuant to this Order to such outstanding postpetition balance, and the Claimant shall repay immediately in cash to the Debtors such paid amounts that exceed the postpetition obligations then outstanding and without any claim, right of setoff, or recoupment against the Debtors resulting thereby.

10.     This Order does not grant any relief with respect to or affect the rights, duties, or obligations of EFIH and EFIH Finance, Inc.

11.     Notwithstanding the relief granted in this Order and any actions taken pursuant to such relief, nothing in this Order shall be deemed:  (a) an admission as to the validity of any claim against a Debtor entity; (b) a waiver of the Debtors' rights to dispute any claim on any grounds; (c) a promise or requirement to pay any claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Order or the Motion; (e) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) a waiver or limitation of the Debtors' rights under the Bankruptcy Code or any other applicable law; or (g) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to this Order are valid, and the Debtors expressly reserved their rights to contest the extent, validity, or perfection or seek avoidance of all such liens.  Payments made pursuant to this Order shall not be construed as an admission as to the validity of any claim or a waiver of the Debtors' rights to subsequently dispute such claim.

4

12.    The requirements set forth in Bankruptcy Rule 6003(b) are satisfied by the contents of the Motion.

13.    Notice of the Motion as provided therein shall be deemed good and sufficient and the requirements of the Local Bankruptcy Rules are satisfied by such notice.

14.    Notwithstanding the possible applicability of Bankruptcy Rules 6004(h), 7062, 9014 or otherwise, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

15.    All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

16.    The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Motion.

17.    The Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation of this Order.

Wilmington, Delaware
Dated: _____, 2014

_____
UNITED STATES BANKRUPTCY JUDGE

## EXHIBIT B

**Proposed Final Order**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) | Case No. 14-_____ (___) |
|  | ) |  |
| Debtors. | ) | (Joint Administration Requested) |
|  | ) |  |

## FINAL ORDER AUTHORIZING THE DEBTORS TO
## (A) GRANT ADMINISTRATIVE EXPENSE PRIORITY TO ALL
## UNDISPUTED OBLIGATIONS FOR GOODS AND SERVICES ORDERED
## PREPETITION AND DELIVERED POSTPETITION AND SATISFY SUCH
## OBLIGATIONS IN THE ORDINARY COURSE OF BUSINESS AND (B) PAY
## PREPETITION CLAIMS OF SHIPPERS, WAREHOUSEMEN, AND MATERIALMEN

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors"), for entry of a final order (this "Order"), authorizing, but not directing, Debtors to (a) grant administrative expense priority to all Outstanding Orders and satisfy such obligations in the ordinary course of business; (b) pay Claimants in the ordinary course of business, all as more fully set forth in the Motion; and upon the First Day Declaration; and the Court having found that it has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and the Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and the Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and

---

[1]    The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, for which the debtors have requested joint administration, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' proposed claims and noticing agent at http://www.efhcaseinfo.com.

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

other parties in interest; and the Court having found that the Debtors provided appropriate notice

of the Motion and the opportunity for a hearing on the Motion under the circumstances; and the

Court having reviewed the Motion and having heard the statements in support of the relief

requested therein at a hearing, if any, before the Court (the "Hearing"); and the Court having

determined that the legal and factual bases set forth in the Motion and at the Hearing establish

just cause for the relief granted herein; and upon all of the proceedings had before the Court; and

after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.     The Motion is granted as set forth herein.

2.     All undisputed obligations relating to the Outstanding Orders are granted

administrative expense priority status in accordance with section 503(b) of the Bankruptcy Code.

3.     In accordance with this Order, the Debtors are authorized, but not directed, to

honor, pay, or otherwise satisfy prepetition amounts on account of Outstanding Orders in the

ordinary course of business and consistent with the parties' customary practices in effect before

the Petition Date.

4.     In accordance with this Order, the Debtors are authorized, but not directed, to

honor, pay, or otherwise satisfy prepetition amounts owed to Claimants; *provided, however*, that

such payments shall not exceed $39.5 million unless otherwise ordered by the Court.

5.     The Debtors are authorized, but not directed, to condition payment of the

Claimants upon a Claimant's agreement to continue supplying goods and services to the Debtors

postpetition on Customary Trade Terms; *provided, however*, that the Debtors reserve the right to

adjust normal trade terms with any such Claimant according to the facts and circumstances,

*provided further, however,* that the Debtors shall consult with counsel to the Ad Hoc Committee

of TCEH First Lien Creditors before adjusting trade terms with such Claimant if such Claimant is receiving a payment in excess of $5 million under this Order.

6.      In accordance with this Order and any other order of this Court, each of the financial institutions at which the Debtors maintain their accounts relating to the payment of the obligations described in this Order is authorized to honor checks and electronic payment requests presented for payment of obligations described in this Order and all fund transfer requests made by the Debtors related thereto to the extent that sufficient funds are on deposit in such amounts.

7.      If, after receiving a payment pursuant to this Order, a Claimant does not continue to provide Customary Trade Terms, then (a) any such payment received by such Claimant shall be deemed, in the Debtors' discretion in consultation with counsel to the Ad Hoc Committee of TCEH First Lien Creditors, an improper postpetition transfer and, therefore, recoverable by the Debtors in cash immediately upon written request by the Debtors, and (b) upon recovery by the Debtors, any prepetition claim of such Claimant shall be reinstated as if the payment had not been made; *provided, however*, that (x) prior to exercising any remedies set forth in paragraph 7, the Debtors shall provide the applicable party with written notice of their intent to exercise such remedies, and the applicable party shall have fourteen (14) days from service of such written notice to file an objection and serve it on the Debtors and (y) if such party files and serves such written notice, the Debtors shall not exercise any remedies set forth in paragraph 7 pending further order of the Court or agreement of the parties.

8.      This Order does not grant any relief with respect to or affect the rights, duties, or obligations of EFIH and EFIH Finance, Inc.

9.      Notwithstanding the relief granted in this Order and any actions taken pursuant to such relief, nothing in this Order shall be deemed:  (a) an admission as to the validity of any

claim against a Debtor entity; (b) a waiver of the Debtors' rights to dispute any claim on any grounds; (c) a promise or requirement to pay any claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Order or the Motion; (e) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) a waiver or limitation of the Debtors' rights under the Bankruptcy Code or any other applicable law; or (g) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to this Order are valid, and the Debtors expressly reserved their rights to contest the extent, validity, or perfection or seek avoidance of all such liens.  Payments made pursuant to this Order shall not be construed as an admission as to the validity of any claim or a waiver of the Debtors' rights to subsequently dispute such claim.

10.    Notice of the Motion as provided therein shall be deemed good and sufficient and the requirements of the Local Bankruptcy Rules are satisfied by such notice.

11.    Notwithstanding the possible applicability of Bankruptcy Rules 6004(h), 7062, 9014 or otherwise, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

12.    All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

13.    The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Motion.

14.    The Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation of this Order.

Wilmington, Delaware
Dated: _____, 2014

_____
UNITED STATES BANKRUPTCY JUDGE