**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) Case No. 14-10979 (CSS) |
| | ) |
| Debtors. | ) (Joint Administration Requested) |
| | ) |

**RESPONSE OF THE PUBLIC UTILITY COMMISSION OF TEXAS**
**IN SUPPORT OF CERTAIN FIRST DAY PLEADINGS**

Comes now the Public Utility Commission of Texas, by and through the Texas Attorney

General's Office, and respectfully responds to the Debtors' first-day pleadings as follows:

**A.    Background/Role of the Public Utility Commission of Texas**

1.    The Public Utility Commission of Texas ("PUCT") regulates the electric and

telecommunication utilities in the State of Texas. *See generally* para. 2-9 *infra* and

http://www.puc.texas.gov/agency/about/mission.aspx.  The PUCT oversees competitive electric

markets in the Electric Reliability Council of Texas ("ERCOT")[2] and also continues traditional

cost of service rate regulation in other regions of the state.

2.    The competitive market is divided into three general segments within ERCOT:   1)

transmission and distribution companies; 2) retail electric providers; and 3) power generation

companies.   Transmission and distribution companies are subject to traditional cost of service rate

---

[1]   *See* Motion of Energy Future Holdings Corp., *et al.* for Entry of an Order Directing Joint Administration of the Debtor's Chapter 11 Cases (Dkt. 17).

[2]   ERCOT is an independent system operator that manages the flow of electric power to 23 million Texas customers representing approximately 85% of the state's electric consumption.

regulation by the PUCT.   Retail electric providers and power generation companies, while not fully rate regulated, are subject to oversight by the PUCT.

3.      Certain of the Debtors operate as Retail Electric Providers ("REPs") and Power Generation Companies ("PGCs").   The PUCT's oversight over these companies is described more fully below.   In addition, the PUCT fully regulates the Debtors' non-Debtor affiliate, Oncor Electric Delivery Company, LLC ("Oncor"), the state's largest electric transmission and distribution utility.

4.      Within ERCOT, retail electric service is provided by REPs.   While the PUCT does not regulate the rates of the REPs, REPs must be certified by the PUCT in order to do business in ERCOT and they must follow customer protection rules adopted by the PUCT as well as various market protocols established by ERCOT in order to ensure a functioning wholesale and retail market and positive customer experience.   REPs must provide continuous and reliable service by meeting all applicable PUCT rules including financial, technical and managerial requirements. REPs must promptly report any material changes in their qualifications to the PUCT.    The PUCT may suspend or revoke a REP certificate for significant violations of the Public Utility Regulatory Act ("PURA"),[3] PUCT rules or ERCOT rules.   The PUCT may also impose administrative penalties on REPs for these violations.

5.      Three of the Debtors are REPs that do business in ERCOT:   TXU Energy Retail Company, LLC ("TXU Energy"); 4Change Energy Company (f/k/a, TXU SESCO) ("4Change Energy"); and Luminant ET Services Company ("Luminant ET Services").[4]   Each of these REPs

---

[3] TEX. UTIL. CODE ANN. §§ 11.001-66.017 (Vernon 2007 & Supp. 2013) ("PURA").

[4] TXU Energy and 4Change Energy are authorized to serve residential, commercial, and industrial customers while Luminant ET Services is authorized to serve specific customers that contract for one megawatt or more of

is certified by the PUCT and is subject to PUCT oversight as described above.

6.      The following Debtors are registered with the PUCT as PGCs and are subject to PUCT oversight:   Luminant Generation Company, LLC; Big Brown Power Company, LLC; Oak Grove Management Company, LLC; Sandow Power Company, LLC; Tradinghouse Power Company, LLC; and Valley NG Power Company, LLC (collectively, the "Luminant PGCs"). Texas is unique among the 48 contiguous states in that there is a power grid located wholly within the state.   In most states, electric utilities are interconnected with utilities in other states, and are subject to the jurisdiction of the Federal Energy Regulatory Commission ("FERC") because of the interstate character of the wholesale transactions.   In Texas, however, the PUCT is responsible for overseeing the electric wholesale market in ERCOT.

7.      Under Section 39.151 of PURA, ERCOT is required to establish and enforce procedures relating to non-discriminatory access to the transmission and distribution network, the reliability of the regional electric network and to account for the production and delivery of electricity among generators and all other market participants.   These procedures, which also provide for short-term energy markets, are known as the "ERCOT Protocols."   ERCOT is subject to PUCT oversight and review and, in particular, is subject to PUCT oversight with respect to the Protocols.   The Protocols have the force and effect of PUCT rules and are binding and enforceable on market participants.   The PUCT may impose administrative penalties on entities which the PUCT determines have violated the Protocols.

8.      Additionally, PURA § 39.157 mandates that the PUCT monitor market power associated with the generation, transmission, distribution and sale of electricity in Texas.   Section

---

capacity.   *See* TEX. UTIL. CODE ANN. § 39.352 (Vernon 2007 & Supp. 2013) .

39.157 prohibits activities that result in market power abuse and gives the PUCT the authority to remedy market power abuse by imposing administrative penalties and requiring mitigation of market power.

9.      Finally, the PUCT is also charged with determining the share of installed capacity[5] for PGCs and for registration of PGCs and power marketers.   Collectively, the Luminant PGCs constitute the largest electric generator within ERCOT, are a key participant in the ERCOT wholesale market and are subject to PUCT oversight as described above.

## B.   Response in Support of Certain First-Day Pleadings

10.     The Debtors have kept the PUCT informed about these cases and the PUCT has reviewed the Debtors' first-day motions.   The PUCT supports the Debtors' general position that these cases are designed to restructure the Debtors' balance sheets, should not affect day-to-day operations, and should have no effect on the Debtors' existing wholesale or retail customers.   The PUCT would like to see as little disruption as possible in the ERCOT market as a result of these bankruptcies.

11.     The PUCT supports the request by TXU Energy, 4Change Energy, Luminant ET Services and Luminant Energy Company LLC to continue all customer programs and to assume all existing electricity contracts.[6] The PUCT supports the request by these Debtors to continue serving their respective customers without interruption and their plans to continue competing

---

[5] PURA § 39.154.

[6] *See* Motion of Energy Future Holdings Corp., *et al*. for Entry of (A) an Order Authorizing the Debtors to (I) Maintain and Administer Customer Programs, (II) Honor Prepetition Obligations related thereto, (III) Pay Certain Expenses on behalf of Certain Organizations, (IV) Fix the Deadline to File Proofs of Claim for Certain Customer Claims, and (V) Establish Procedures for Notifying Customers of Commencement of the Debtors' Chapter 11 Cases, Assumption of Customer Agreements, and the Bar Date for Customer Claims and (B) An Order Authorizing Certain of the Debtors to Assume Customer Agreements (Dkt. 31).

aggressively in the retail electricity market.

12.    All customer deposits for existing residential electricity contracts with TXU Energy and 4Change Energy are collateralized by letters of credit posted with the PUCT.[7]   The deposit amounts and the value of the letters of credit for each company were provided to the PUCT under protective order.   As of December 31, 2013, the value of the letter of credit for each company exceeded the amount of customer deposits for the applicable company.

13.    The PUCT appreciates the Debtors' acknowledgment that they may need certain regulatory approvals as part of a restructuring process.[8]   The PUCT will endeavor to conduct any regulatory approvals[9] as quickly as possible in this case, consistent with applicable due process requirements, and will promptly inform this Court of its rulings in any regulatory matters.

14.    Oncor's ultimate parent company, the Debtor Energy Future Holdings Corporation, was formed following the 2007 leveraged buyout of the former TXU Corporation.   Because the regulated portion of the business is subject to PUCT jurisdiction, the companies involved in the merger[10] sought and obtained a determination from the PUCT that the merger was in the public interest pursuant to PURA §14.101.   As part of the § 14.101 proceeding before the PUCT, the buyers agreed to a number of commitments which were intended to keep the regulated transmission company (Oncor) totally separate from the company's power generation and retail

---

[7] Luminant ET Services serves specific customers that contract for one megawatt or more of capacity and is not required to maintain customer deposits or letters of credit.

[8] *See* Declaration of Paul Keglevic, Executive Vice President, Chief Financial Officer, and Co-Chief Restructuring Officer of Energy Future Holdings Corp., *et al.*, in Support of First Day Motions at para. 61 (Dkt. 98).

[9] *E.g.*, PURA §§39.262 and/or 39.915.

[10] The companies involved in the 2007 proceeding before the PUC were Oncor Electric Delivery Company and Texas Energy Future Holdings Limited Partnership.

units.  *See* Order on Rehearing, PUCT Docket No. 34077, dated April 24, 2008, attached as Exhibit A at paragraphs 43-47, 53-58, 60-65, 68-72, 74-76, 78-82 and 85. This segregation is built into the "ring fence" provisions of the PUCT's order, which were designed to protect Oncor from financial problems in other aspects of the business.  *See id*.

15.     The PUCT believes that the "ring fence" provisions included in the PUCT's Order on Rehearing issued in PUCT Docket No. 34077 protect the non-Debtor, Oncor, and its rate payers from any impact in these bankruptcy cases.   Specifically, the PUCT believes that the "ring fence" shields Oncor's assets from the claims of any creditors in these bankruptcy cases.

16.     The PUCT supports the Debtors' plan to continue collection for and funding of the Luminant Decommissioning Trust.[11]

17.     The PUCT supports Debtors' requests to continue their energy trading business and role in the ERCOT market.[12]

18.     The PUCT supports the Debtors' request to assume all Transmission and/or Distribution Service Provider[13] contracts.[14]

---

[11] *See* Motion of Energy Future Holdings Corp., *et al.*, for Entry of Interim and Final Orders Authorizing the Debtors to Pay Certain Prepetition Taxes and Fees (Dkt. 23).

[12] *See* Motion of Energy Future Holdings Corp., *et al.*, for Entry of an Order Authorizing Certain of the Debtors to Assume Standard Form Market Participant Agreements with ERCOT (Dkt. 40) and Motion of Energy Future Holdings Corp., *et al.*, for Entry of Interim and Final Orders Authorizing the Debtors to (A) Continue Performing Under Prepetition Hedging and Trading Arrangements, (B) Pledge Collateral and Honor Obligations Thereunder, and (C) Enter into and Perform under Trading Continuation Agreements and New Postpetition Hedging and Trading Arrangements (Dkt. 41).

[13] Transmission and/or Distribution Service Provider ("TDSP").   The delivery of electric power and energy from TDSPs to REPs is governed by a mutual agreement signed by the REP and each TDSP within whose service territory the REP operates.   The terms and conditions of these agreements are set forth in each TDSP's tariff which is approved by the PUCT.

[14] *See* Motion of Energy Future Holidngs Corp., *et al.*, for Entry of (A) an Order Authorizing Certain of the Debtors to Pay Certain Prepetition Transition Charges and Delivery Charges and (B) an Order Authorizing Certain of the Debtors to Assume Transmission and Distribution Service Agreements (Dkt. 38).

WHEREFORE, the PUCT respectfully submits this Response in Support of Certain First-Day Pleadings as set forth above.   The PUCT will be pleased to respond to any inquiry from this Honorable Court and the PUCT looks forward to working cooperatively with the Debtors, as in the past, and with the other parties-in-interest during this restructuring process.

Respectfully submitted,

GREG ABBOTT
Attorney General of Texas

DANIEL T. HODGE
First Assistant Attorney General

DAVID MATTAX
Deputy Attorney General for Defense Litigation

*/s/ Hal F. Morris*
HAL F. MORRIS
Texas State Bar No. 14485410
ASHLEY FLYNN BARTRAM
Texas State Bar No. 24045883
NICOLE D. MIGNONE
Texas State Bar No. 24055970
Assistant Attorneys General
Bankruptcy Regulatory Section
Bankruptcy & Collections Division
P. O. Box 12548
Austin, Texas 78711-2548
P: (512) 463-2173/F: (512) 482-8341
E-mail: *hal.morris@texasattorneygeneral.gov*
    *ashley.bartram@texasattorneygeneral.gov*
    *nicole.mignone@texasattorneygeneral.gov*

ATTORNEYS FOR PUBLIC UTILITY COMMISSION
OF TEXAS

<u>Certificate of Service</u>

I certify that a true and correct copy of the foregoing Response was served on all parties who receive notice via the Court's Electronic Filing System on April 30, 2014.

*/s/ Hal F. Morris*
Assistant Attorney General