## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | : | Chapter 11 |
|  | : |  |
| Energy Future Holdings, Inc., *et al.*, | : | Case No. 14-10979 (CSS) |
|  | : |  |
| Debtors. | : | (Joint Administration Requested) |
|  | : |  |
|  | : | **Related to Docket No. 74** |

## PRELIMINARY OBJECTION OF EFIH 2ND LIEN NOTES INDENTURE TRUSTEE AND CERTAIN NOTEHOLDERS TO MOTION FOR INTERIM ORDER SCHEDULING FINAL HEARING ON POST-PETITION FINANCING

Computershare Trust Company, N.A. and Computershare Trust Company of Canada, as indenture trustee (the "**Indenture Trustee**") for $2,156,000,000 aggregate principal amount of 2nd lien notes issued by Energy Future Intermediate Holding Company LLC (the "**EFIH 2nd Lien Notes**"), and certain holders of EFIH 2nd Lien Notes (collectively, the "**EFIH 2nd Lien Objectors**"), by and through their undersigned counsel, hereby file this Response to the above captioned motion (the "**Interim Motion**").

### RELIEF SOUGHT BY THE DEBTORS

1.  The Interim Motion seeks to schedule a final hearing on a proposed order which would (a) approve a $5.4 billion 1st Lien DIP and (b) find that EFIH's existing first lien notes are paid in full without the need to make any prepayment premium.

2.  The Debtors have stated that they also intend to seek, at such final hearing, entry of an order approving a $1.9 billion EFIH 2nd lien DIP financing, which will be funded by certain EFIH unsecured creditors and used to repay principal and interest on EFIH 2nd Lien

Notes – but nothing on account of any fees or expenses due under the 2nd Lien Indenture, including a prepayment premium of more than $700 million.[1] In the Declaration of Paul Keglevic [Dkt. No. 98], the Debtors state that they will commence a tender offer to settle the EFIH 2nd Lien Notes' prepayment premium at 50% (the "**50% Settlement**") and seek to disallow any non-settling holder's prepayment premium in a future litigation.[2] The Debtors promise to pay any other allowed claims of the EFIH 2nd Lien Notes (including, presumably, expenses and fees) at confirmation of a plan.

3. Both of the EFIH DIP facilities are "priming" DIPs – that is, the Debtors seek orders under Section 364(d)(1) granting each DIP a lien prior to all other liens, including the lien that secures all of the EFIH 2nd Lien Notes' claims, including claims for prepayment premium, expenses and fees. The effect of the priming DIPs is to increase the total amount of secured debt at EFIH from $6.2 billion to $7.3 billion.[3]

4. The EFIH unsecured creditors who will fund the 2nd Lien DIP want the Debtors to obtain court approval of this priming DIP in 45 days, or at most 75 days.[4] The Debtors argue that the DIPs will facilitate a "global restructuring" under a Restructuring Support Agreement which "lays the groundwork for a prearranged plan" to be approved on the same timeline as the priming DIPs.[5]

---

[1] *See* Dkt. No. 74 (hereinafter the "**EFIH DIP Motion**") at 6 n.8: Debtors will file motion seeking to schedule final approval of 2nd Lien DIP contemporaneously with the 1st Lien DIP.
[2] Dkt. No. 98 (hereinafter the "**Keglevic Decl.**") at ¶¶ 175-76 (page 82 of 464).
[3] The EFIH DIP Motion actually contemplates up to $3 billion of 2nd Lien DIP, not just $1.9 billion, which would increase total debt to $8.4 billion. EFIH DIP Motion at 11.
[4] Keglevic Decl. Exhibit D at 17-18 (pages 246-47 of 464).
[5] Keglevic Decl. at ¶ 156 (page 70 of 464).

**OBJECTION**

5. The Debtors cannot prime the EFIH 2nd Lien Notes' claims, including over $700 million in prepayment premium, without showing that these claims are adequately protected. 11 U.S.C. § 364(d)(1)(B).

6. The prepayment premium is not before the Court today; indeed, the Debtors expect to litigate it months from now. Suffice to say here that the 2nd Lien Indenture explicitly provides for a prepayment premium. This claim requires adequate protection.

7. The Debtors have the burden to prove adequate protection. That will require substantial valuation testimony and discovery. It is not reasonable to expect that such litigation can be completed in 45 or even 75 days.

8. Nor is it necessary. If the Debtors (and their DIP funders) want speed, they should not try to prime the EFIH 2nd Lien Notes; they should leave the liens in place with respect to all unpaid obligations, including fees, expenses, and prepayment premiums. If the Debtors succeed in disallowing the EFIH 2nd Lien Notes' prepayment premium, there will be only *de minimis* expense claims ahead of the DIPs. If the Debtors fail, then the prepayment premium (and the expense claims) must remain secured.

9. The Global Restructuring Agreement provides no support for the DIPs. It is supported by only a few creditors holding a distinct minority of EFIH's indebtedness.

10. The only material supporter of the 50% Settlement is Fidelity Investments, holder of only 30% of the EFIH 2nd Lien Notes.[6] Fidelity is conflicted; in addition to receiving above-pro-rata recoveries on its claims against EFIH's parent, EFH, Fidelity is also going to

---

[6] The 50% Settlement is also supported by certain large ***unsecured*** EFIH creditors who hold only 5% of the EFIH 2nd Lien Notes but an overwhelming percentage of EFIH's unsecured claims – and thus derive greater benefit from disallowing the prepayment premium than they would from collecting it.

3

receive significant fees which increase its own recoveries above the 50% Settlement it negotiated for other creditors.[7]

11.   The propriety of the Restructuring Support Agreement is not before the Court today, but it will be at the final hearing – all the more reason why that hearing should not be scheduled too soon to allow legitimate scrutiny of the Debtors' proposed transactions.

12.   The Debtors have not shown a financial exigency demanding urgent approval of the EFIH priming DIPs.  EFIH is not an operating entity – the DIPs are not necessary to keep the lights on.

13.   The Debtors argue that the DIPs reduce their interest burden, but this is by no means clear.  At least with respect to the EFIH 2nd Lien DIP, the supposed savings espoused by the Debtors (i.e., the difference between the 2nd Lien DIP's 8% coupon and the approximately 12% accruing on the EFIH 2nd Lien Notes) vanishes after giving effect to the 7% in 6 different upfront fees demanded by the 2nd Lien DIP lenders.[8]

14.   Finally, the Debtors cannot show that the 2nd Lien DIP lenders will vanish if their priming DIP takes 120 days to approve – all these lenders are large EFIH unsecured creditors whose only way out of the case is through reorganization.

WHEREFORE, for the reasons set forth above, the Indenture Trustee and the EFIH 2nd Lien Objectors respectfully request that the Court schedule the final hearing on any "priming" EFIH DIP no earlier than 120 days from the date hereof without prejudice to the Debtors' right to shorten time in the event they eliminate the "priming" nature of their DIPs, or

---

[7] The amount of these side payments remains to be determined through discovery and testimony.  The Debtors admit to explicit fees of almost $20 million (EFIH DIP Motion at 6-7 & n.9; Keglevic Decl. at 269of 464.).  The EFIH 2nd Lien Objectors believe that Fidelity Investments is receiving *indirect* side payments many times that amount through EFIH's payments to, and release of claims against, EFH.  These allow Fidelity to receive a greater-than-pro-rata recovery on Fidelity's claims against EFH.
[8] See Commitment Letter, attached as Exhibit C to Exhibit D of Keglevic Decl. (page 447 of 646).

the right of the Indenture Trustee and the EFIH 2nd Lien Objectors to seek more time should the Debtors try to litigate matters other than the approval of the EFIH DIPs.

[REMAINDER OF PAGE LEFT BLANK]

| | |
|---|---|
| Dated: April 30, 2014 | PACHULSKI STANG ZIEHL & JONES LLP |
| | |
| | */s/ Laura Davis Jones* |
| | Laura Davis Jones (Bar No. 2436) |
| | Robert J. Feinstein (NY Bar No. RF-2836) |
| | 919 N. Market Street, 17th Floor |
| | P.O. Box 8705 |
| | Wilmington, DE  19899-8705 (Courier 19801) |
| | Telephone:  (302) 652-4100 |
| | Facsimile:   (302) 652-4400 |
| | Email: ljones@ pszjlaw.com |
| | rfeinstein@ pszjlaw.com |

*Counsel to the Indenture Trustee and the EFIH 2nd Lien Objectors*

KRAMER LEVIN NAFTALIS & FRANKEL LLP
Thomas Moers Mayer,
Joshua K. Brody, Esquire
Kramer Levin Naftalis & Frankel LLP
1177 Avenue of the Americas
New York, New York 10036
Telephone:  (212) 715-9100
Facsimile:   (212) 715-8000
Email: tmayer@kramerlevin.com
          jbrody@kramerlevin.com

*Counsel to the Indenture Trustee and the EFIH 2nd Lien Objectors*

BRYAN CAVE LLP
Stephanie Wickouski, Esq.
1290 Avenue of the Americas
New York, New York 10104-3300
Tel: 212-541-1114
Fax: 212-904-0514
Email: stephanie.wickouski@bryancave.com

*Counsel to the Indenture Trustee*