**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re | ) | Chapter 11 |
| | ) | |
| ENERGY FUTURE HOLDINGS CORP., | ) | Case No. 14-10979 (CSS) |
| | ) | |
| Debtor. | ) | **Related to Docket Nos.: 71 & 73** |
| | ) | |
| In re | ) | Chapter 11 |
| | ) | |
| ENERGY FUTURE COMPETITIVE HOLDINGS COMPANY LLC, | ) | Case No. 14-11005 (CSS) |
| | ) | |
| Debtor. | ) | |
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| TEXAS COMPETITIVE ELECTRIC HOLDINGS COMPANY LLC, | ) | Case No. 14-10978 (CSS) |
| | ) | |
| Debtor. | ) | |
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| TCEH FINANCE, INC., | ) | Case No. 14-11028 (CSS) |
| | ) | |
| Debtor. | ) | |
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| 4CHANGE ENERGY COMPANY, | ) | Case No. 14-10980 (CSS) |
| | ) | |
| Debtor. | ) | |
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| 4CHANGE ENERGY HOLDINGS LLC, | ) | Case No. 14-10981 (CSS) |
| | ) | |
| Debtor. | ) | |

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| BIG BROWN 3 POWER COMPANY LLC, | ) | Case No. 14-10983 (CSS) |
| | ) | |
| Debtor. | ) | |
| | ) | |

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| BIG BROWN LIGNITE COMPANY LLC, | ) | Case No. 14-10986 (CSS) |
| | ) | |
| Debtor. | ) | |
| | ) | |

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| BIG BROWN POWER COMPANY LLC, | ) | Case No. 14-10988 (CSS) |
| | ) | |
| Debtor. | ) | |
| | ) | |

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| COLLIN POWER COMPANY LLC, | ) | Case No. 14-10998 (CSS) |
| | ) | |
| Debtor. | ) | |
| | ) | |

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| DECORDOVA II POWER COMPANY LLC, | ) | Case No. 14-11003 (CSS) |
| | ) | |
| Debtor. | ) | |
| | ) | |

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| DECORDOVA POWER COMPANY LLC, | ) | Case No. 14-10982 (CSS) |
| | ) | |
| Debtor. | ) | |
| | ) | |

MIAMI 991214

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| EAGLE MOUNTAIN POWER COMPANY LLC, | ) | Case No. 14-10984 (CSS) |
| | ) | |
| Debtor. | ) | |
| | ) | |

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| GENERATION MT COMPANY LLC, | ) | Case No. 14-11021 (CSS) |
| | ) | |
| Debtor. | ) | |
| | ) | |

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| GENERATION SVC COMPANY, | ) | Case No. 14-11025 (CSS) |
| | ) | |
| Debtor. | ) | |
| | ) | |

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| LAKE CREEK 3 POWER COMPANY LLC, | ) | Case No. 14-11029 (CSS) |
| | ) | |
| Debtor. | ) | |
| | ) | |

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| LUMINANT BIG BROWN MINING COMPANY LLC, | ) | Case No. 14-11018 (CSS) |
| | ) | |
| Debtor. | ) | |
| | ) | |

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| LUMINANT ENERGY COMPANY LLC, | ) | Case No. 14-11023 (CSS) |
| | ) | |
| Debtor. | ) | |
| | ) | |

3

| | |
|---|---|
| In re: | Chapter 11 |
| LUMINANT ENERGY TRADING CALIFORNIA COMPANY, | Case No. 14-11026 (CSS) |
| Debtor. | |

| | |
|---|---|
| In re: | Chapter 11 |
| LUMINANT ET SERVICES COMPANY, | Case No. 14-11030 (CSS) |
| Debtor. | |

| | |
|---|---|
| In re: | Chapter 11 |
| LUMINANT GENERATION COMPANY LLC, | Case No. 14-11032 (CSS) |
| Debtor. | |

| | |
|---|---|
| In re: | Chapter 11 |
| LUMINANT HOLDING COMPANY LLC, | Case No. 14-11037 (CSS) |
| Debtor. | |

| | |
|---|---|
| In re: | Chapter 11 |
| LUMINANT MINERAL DEVELOPMENT COMPANY LLC, | Case No. 14-11040 (CSS) |
| Debtor. | |

| | |
|---|---|
| In re: | Chapter 11 |
| LUMINANT MINING COMPANY LLC, | Case No. 14-11042 (CSS) |
| Debtor. | |

4

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| LUMINANT RENEWABLES COMPANY LLC, | ) | Case No. 14-11044 (CSS) |
| | ) | |
| Debtor. | ) | |
| | ) | |

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| MARTIN LAKE 4 POWER COMPANY LLC, | ) | Case No. 14-11010 (CSS) |
| | ) | |
| Debtor. | ) | |
| | ) | |

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| MONTICELLO 4 POWER COMPANY LLC, | ) | Case No. 14-11011 (CSS) |
| | ) | |
| Debtor. | ) | |
| | ) | |

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| MORGAN CREEK 7 POWER COMPANY LLC, | ) | Case No. 14-11014 (CSS) |
| | ) | |
| Debtor. | ) | |
| | ) | |

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| NCA RESOURCES DEVELOPMENT COMPANY LLC, | ) | Case No. 14-11016 (CSS) |
| | ) | |
| Debtor. | ) | |
| | ) | |

5

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| OAK GROVE MANAGEMENT COMPANY LLC, | ) | Case No. 14-11022 (CSS) |
| | ) | |
| Debtor. | ) | |
| | ) | |

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| OAK GROVE MINING COMPANY LLC, | ) | Case No. 14-11024 (CSS) |
| Debtor. | ) | |
| | ) | |

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| OAK GROVE POWER COMPANY LLC, | ) | Case No. 14-11027 (CSS) |
| Debtor. | ) | |
| | ) | |

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| SANDOW POWER COMPANY LLC, | ) | Case No. 14-11033 (CSS) |
| Debtor. | ) | |
| | ) | |

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| TRADINGHOUSE 3 & 4 POWER COMPANY LLC, | ) | Case No. 14-11046 (CSS) |
| | ) | |
| Debtor. | ) | |
| | ) | |

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| TRADINGHOUSE POWER COMPANY LLC, | ) | Case No. 14-10985 (CSS) |
| | ) | |
| Debtor. | ) | |
| | ) | |

6

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| TXU ENERGY RECEIVABLES COMPANY LLC, | ) | Case No. 14-10993 (CSS) |
| | ) | |
| Debtor. | ) | |
| | ) | |

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| TXU ENERGY RETAIL COMPANY LLC, | ) | Case No. 14-10997 (CSS) |
| | ) | |
| Debtor. | ) | |
| | ) | |

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| TXU ENERGY SOLUTIONS COMPANY LLC, | ) | Case No. 14-11002 (CSS) |
| | ) | |
| Debtor. | ) | |
| | ) | |

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| TXU RETAIL SERVICES COMPANY, | ) | Case No. 14-11009 (CSS) |
| | ) | |
| Debtor. | ) | |
| | ) | |

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| TXU SEM COMPANY, | ) | Case No. 14-11013 (CSS) |
| | ) | |
| Debtor. | ) | |
| | ) | |

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| VALLEY NG POWER COMPANY LLC, | ) | Case No. 14-11015 (CSS) |
| | ) | |
| Debtor. | ) | |
| | ) | |

MIAMI 991214

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| VALLEY POWER COMPANY LLC, | ) | Case No. 14-11020 (CSS) |
|  | ) |  |
| Debtor. | ) |  |
|  | ) |  |

**OMNIBUS PRELIMINARY OBJECTION OF THE AD HOC GROUP OF TCEH UNSECURED NOTEHOLDERS TO (I) THE MOTION OF TEXAS COMPETITIVE ELECTRIC HOLDINGS COMPANY LLC AND CERTAIN OF ITS DEBTOR AFFILIATES FOR ENTRY OF INTERIM AND FINAL ORDERS (A) APPROVING POSTPETITION FINANCING, (B) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS, (C) MODIFYING THE AUTOMATIC STAY, AND (D) SCHEDULING A FINAL HEARING, AND (II) THE MOTION OF TEXAS COMPETITIVE ELECTRIC HOLDINGS COMPANY LLC AND CERTAIN OF ITS DEBTOR AFFILIATES FOR ENTRY OF INTERIM AND FINAL ORDERS (A) AUTHORIZING USE OF CASH COLLATERAL, (B) GRANTING ADEQUATE PROTECTION, (C) MODIFYING THE AUTOMATIC STAY, AND (D) SCHEDULING A FINAL HEARING**

The ad hoc group of certain holders (the "Ad Hoc Group of TCEH Unsecured Noteholders") of approximately $2.74 billion aggregate principal amount of 10.25% Fixed Senior Notes due 2015 (including Series B) (the "Fixed Unsecured Notes") and 10.50%/11.25% Senior Toggle Notes due 2016 (the "Toggle Unsecured Notes" and, together with the Fixed Unsecured Notes, the "Unsecured Notes") issued by Texas Competitive Electric Holdings Company LLC ("TCEH") and TCEH Finance, Inc. ("TCEH Finance"),[1] by and through its undersigned counsel, hereby files its preliminary objection (the "Objection") to (i) the Motion of Texas Competitive Electric Holdings Company LLC and Certain of Its Debtor Affiliates for Entry of Interim and Final Orders (A) Approving Postpetition Financing, (B) Granting Liens and Providing Superpriority Administrative Expense Claims, (C) Modifying the Automatic Stay, and (D) Scheduling a Final Hearing (the "DIP Financing Motion"), and (ii) the Motion of Texas

---

[1]     The Ad Hoc TCEH Unsecured Group and its counsel recognize the obligation to file a verified statement pursuant to Federal Rule of Bankruptcy Procedure 2019.  Due to the fluidity of the group members' holdings with respect to the various disclosable economic interests held in relation to the Debtors at the outset of these chapter 11 cases, counsel has not yet filed such statement, but intends to do so with reasonable promptness.

MIAMI 991214

Competitive Electric Holdings Company LLC and Certain of Its Debtor Affiliates for Entry of

Interim and Final Orders (A) Authorizing Use of Cash Collateral, (B) Granting Adequate

Protection, (C) Modifying the Automatic Stay, and (D) Scheduling a Final Hearing (the "Cash

Collateral Motion").[2]  In support of the Objection, the Ad Hoc Group of TCEH Unsecured

Noteholders respectfully represents as follows:

## PRELIMINARY STATEMENT

1.    The postpetition financing (the "Proposed DIP Financing") proposed to be

obtained by TCEH and guaranteed by Energy Future Competitive Holdings Company LLC

("EFCH") and each of TCEH's subsidiaries that is a Debtor (together with TCEH, the "TCEH

Debtors") is a massive and largely unnecessary burden on the estates of the TCEH Debtors and

does not satisfy the requirements of section 364 of the United States Bankruptcy Code, 11 U.S.C.

§ 101, et seq. (the "Bankruptcy Code").  The Proposed DIP Financing is a giant step in the

direction of handing the TCEH Debtors over to the Prepetition First Lien Creditors at or near a

trough in the Texas energy market and at a time when regulatory changes may substantially

increase over time the value of the TCEH Debtors and potentially allow for recoveries to junior

stakeholders.  Moreover, the proposed terms for the TCEH Debtors' use of the Prepetition First

Lien Creditors' cash collateral appears to be tailored to complement the Proposed DIP Financing

as a further step in the same direction.  The imposition of the Proposed DIP Financing and the

proposed terms of use of cash collateral would, on the first day, encumber assets which are

otherwise unencumbered and severely restrict the TCEH Debtors' ability to maximize value for

any stakeholders other than the Prepetition First Lien Creditors.  Accordingly, the Proposed DIP

---

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in
the DIP Financing Motion.

Financing and proposed terms of the use of cash collateral should be denied, unless modified to address the objections raised herein.

2.    First, the interim relief sought in connection with the Proposed DIP Financing—access to $2.7 billion of Interim Financing—is excessive when compared to the legitimate emergency cash needs of the TCEH Debtors during the first days of these chapter 11 cases. Although, as discussed in the Ad Hoc Group of TCEH Unsecured Noteholders' objection to joint administration of the TCEH Debtors' chapter 11 cases with those of the other Debtors, the TCEH Debtors' chapter 11 cases are large and complex, that alone is not sufficient justification for permitting the TCEH Debtors to borrow more than is "necessary to avoid immediate and irreparable harm to the [TCEH Debtors'] estate[s] pending a final hearing." Fed. R. Bankr. P. 4001(c)(2).

3.    The Debtors' Budget attached as Exhibit C to the DIP Financing Motion contemplates the payment of approximately $400 million of interest to the Prepetition First Lien Creditors as adequate protection and as much as $100 million of fees to the DIP Lenders during the first month of these chapter 11 cases. Without such payments, even allowing for the incurrence of the Delayed-Draw Term Facility, the proceeds of which, if funded, will be applied to fund the RCT L/C Collateral Account, the TCEH Debtors would need to borrow significantly less than $2.7 billion of Interim Financing in order to bridge the TCEH Debtors to a later hearing at which time all parties will have had a reasonable opportunity to consider the terms of the Proposed DIP Financing.[3]

---

[3]    The Budget attached as Exhibit C to the DIP Financing Motion is very high-level, evidences inflows and outflows of cash on a monthly, as opposed to weekly, basis, and is very difficult to read. Accordingly, it is impossible to speak precisely with respect to the TCEH Debtors' actual cash needs during the period prior to the Final Hearing. Despite requests by the Ad Hoc Group of TCEH Unsecured Noteholders' financial advisor to the Debtors' financial advisor for more granular detail, including a thirteen-week cash flow forecast of the type

4.      <u>Second</u>, the Proposed DIP Financing appears to be merely a mechanism to transfer value to the Prepetition First Lien Creditors without regard to the interests of the TCEH Debtors' estates' other stakeholders.  Notwithstanding that (i) the TCEH Debtors assert that the Prepetition First Lien Creditors are undersecured, (ii) there appear to be substantial unencumbered assets and (iii) the Debtors' restructuring support agreement contemplates that, at the conclusion of the TCEH Debtors' restructuring, the Prepetition First Lien Creditors will own all of the equity of the TCEH Debtors, the Debtors have elected to pay (on a current basis) the Prepetition First Lien Creditors adequate protection in the form of postpetition interest and fees. Such undersecured creditors are not entitled to accrue (let alone be paid) interest during these cases as a matter of law and the payments will therefore simply reduce the principal amount of the claims which are expected to be exchanged for all of the equity in the reorganized TCEH Debtors at the end of these cases.  This is especially inequitable where, as here, there is significant value in unencumbered assets that could be distributed to unsecured creditors in the absence of the Proposed DIP Financing.

5.      <u>Third</u>, the Proposed DIP Financing cannot be approved, even on an interim basis, because it does not satisfy section 364 of the Bankruptcy Code.  The TCEH Debtors have not met their statutory burden under sections 364(c) and (d) of the Bankruptcy Code of showing that no economically superior financing alternatives are available.  Specifically, where, as here, the TCEH Debtors have failed to establish they were "unable to obtain unsecured credit" under section 364(c) of the Bankruptcy Code, the DIP Financing Motion fails as a matter of law.  The TCEH Debtors have not discharged, and cannot discharge, their burden because they appear to have not made the effort to secure better financing as required under section

---

customarily attached to financing and cash collateral motions, the Debtors provided no additional information regarding the TCEH Debtors' projected cash flow.

364(c) of the Bankruptcy Code.  Similarly, section 364(d)(1) of the Bankruptcy Code only allows the incurrence of credit secured by priming liens if the TCEH Debtors are "unable to obtain such credit otherwise."

6.    Indeed, an economically superior financing option was and is available to the TCEH Debtors.  Specifically, the TCEH Debtors have the right under their prepetition credit documents to cause an unrestricted subsidiary to borrow against existing assets and distribute the proceeds of that new financing to the TCEH Debtors to fund ongoing operations, without incurring any of the onerous terms of the Proposed DIP Financing, such as priming liens on property of the TCEH Debtors' estates.  Through what has come to be referred to as "drop-down" financing (i.e., dropping assets into an unrestricted subsidiary, triggering a release of the liens on and security interests in those assets, and borrowing against such assets, with the proceeds being distributed to TCEH), the TCEH Debtors can obtain substantial liquidity without having to grant the DIP Lenders significant concessions, including priming liens, through the Proposed DIP Financing.  The TCEH Debtors are well aware of this option but have inexplicably sought to obtain the Proposed DIP Financing on substantially worse terms.   Because the TCEH Debtors would be able to obtain superior financing pursuant to the readily available drop-down financing described in more detail below, the DIP Financing Motion should be denied as a matter of law.

7.    Fourth, the TCEH Debtors cannot demonstrate that the Proposed DIP Financing provides any benefit to their estates or stakeholders other than the DIP Lenders and Prepetition First Lien Creditors.  The TCEH Debtors have a fiduciary duty to maximize the value of the unencumbered assets of their estates.  Here, the TCEH Debtors have substantial assets that are currently unencumbered and expressly excluded from the Prepetition First Lien Creditors'

collateral package.  Unencumbered assets include at least $150 million of cash in deposit

accounts (the "Current Unencumbered Assets") as well as substantial assets that could become

unencumbered through the "drop-down" described in greater detail below (the "Drop-Down

Unencumbered Assets").  Under the Proposed DIP Financing, however, the DIP Lenders would

receive priming liens over all of the TCEH Debtors' assets, including the Current Unencumbered

Assets and Drop-Down Unencumbered Assets, that may otherwise be available to pay in part the

claims of the TCEH Debtors' unsecured creditors.  The TCEH Debtors should not be permitted

to encumber their estates' unencumbered assets where, as here, those resulting encumbrances are

wholly unnecessary.

8.      The Proposed DIP Financing and the Cash Collateral Order include

numerous other offensive terms that would improperly strip value from the TCEH Debtors'

estates:

- Subject to entry of the Final Order, the DIP Liens and adequate
protection liens of the Prepetition First Lien Creditors shall encumber any
proceeds of property recovered, unencumbered, or otherwise the subject of
successful Avoidance Actions.  Avoidance Actions certainly exist here
and should not be given away when they could be a source of recovery for
unsecured creditors.

- Causes of action arising under section 549 of the Bankruptcy Code
and any related action under section 550 of the Bankruptcy Code will be
encumbered by the DIP Liens and adequate protection liens of the
Prepetition First Lien Creditors immediately upon entry of the Interim
Order and the Cash Collateral Order.  This should not be permitted for the
same reason.

- Subject to entry of the Final Order and a final order granting the
Cash Collateral Motion, the DIP Agent, the DIP Lenders, and the DIP L/C
Issuers and the Prepetition First Lien Creditors shall not be subject to any
surcharge under section 506(c) of the Bankruptcy Code.  Given the
transfer of value to the Prepetition First Lien Creditors and the
expectations that they will become the new equity owners of the TCEH
Debtors, it is inappropriate to further insulate them from liability to the

TCEH Debtors' estates for the costs and expenses associated with preserving their collateral.

- The DIP Liens and adequate protection liens of the Prepetition First Lien Creditors will encumber all Unencumbered Property of the TCEH Debtors, including the Segregated Cash (as defined in the Cash Collateral Order).  This will have the effect of destroying sources of recovery for unsecured creditors.

- Subject to entry of the Final Order, the DIP Agent, DIP Lenders, and the DIP L/C Issuer, and upon entry of the Cash Collateral Order, the Prepetition First Lien Creditors, shall not be subject to the equitable doctrine of marshaling or any similar doctrine with respect to any of the DIP Collateral.  Such a provision will allow the DIP Lenders to recover first from unencumbered assets, again destroying value otherwise distributable to unsecured creditors.

- The Cash Collateral Order and the Interim Order provide for a woefully inadequate challenge period and fail to grant standing to any committee appointed in the TCEH Debtors' chapter 11 cases at the outset. The challenge period should be extended and standing immediately granted to any committee which is appointed in the TCEH Debtors' chapter 11 cases.

- The limitations prescribed by the Cash Collateral Order and the Interim Order on the uses of cash collateral and proceeds of the DIP Financing are overly broad in that they proscribe the payment of fees and expenses of professionals in connection with investigation of claims against the Prepetition First Lien Creditors or Released Parties (as defined in the Interim Order).  This is simply not market and would essentially eliminate the ability of a committee to expend funds necessary to carry out its statutory responsibilities.

9.    For the reasons set forth above, and as more fully explained below, the DIP Financing Motion and the Cash Collateral Motion each should be denied, unless modified to address the objections raised herein.

## OBJECTION

### A.    The Interim Relief Sought Is Not Warranted

10.    Rule 4001(c)(2) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") limits the ability of a debtor to obtain postpetition credit under section 364

14

of the Bankruptcy Code prior to a final hearing.  Specifically, Bankruptcy Rule 4001(c)(2) permits a court to authorize the obtaining of credit on less than 14 days' notice "only to the extent necessary to avoid immediate and irreparable harm to the estate pending a final hearing." Fed. R. Bankr. P. 4001(c)(2); see also Del. Bankr. L.R. 4001-2(b) (With respect to financing motions, "interim relief shall be only what is necessary to avoid immediate and irreparable harm to the estate pending a final hearing.").

11.     The TCEH Debtors seek to borrow up to $2.7 billion of Interim Financing, inclusive of the Delayed-Draw Term Facility, the proceeds of which, if funded, will be applied to fund the RCT L/C Collateral Account, prior to the Final Hearing.  In tandem with this Interim Financing, the TCEH Debtors seek to use $278 million of cash that the TCEH Debtors contend is cash collateral of the Prepetition First Lien Creditors.  Absent the unwarranted adequate protection payments to the Prepetition First Lien Creditors, who the Debtors contend are undersecured, the TCEH Debtors' own Budget indicates that the TCEH Debtors would require no more than $2.3 billion of Interim Financing (inclusive of the Delayed-Draw Term Loan Facility) prior to the Final Hearing.  See DIP Financing Motion, Ex. C (showing approximately $1.6 billion of "DIP Facility Financing" and approximately $400 million of "Adequate Protection Interest" during May 2014).

12.     Given the TCEH Debtors' cash position and projected cash flow, any interim authorization to obtain credit greater than $2.3 billion prior to the Final Hearing is inappropriate and should be denied.  See In re The Colad Grp., Inc., 324 B.R. 208, 218-19 (Bankr. W.D.N.Y. 2005) (explaining that the court had refused to approve an order where the proposed "order failed to reflect any effort to limit the conditions of credit only to those which would be *absolutely* necessary to avoid immediate and irreparable harm.") (emphasis added).  In

15

fact, with greater detail regarding the TCEH Debtors' cash needs during that period, which is likely to be less than a calendar month, it may become clear that significantly less than $2.3 billion of Interim Financing is required.  In the absence of such information having been provided, Bankruptcy Rule 4001(c)(2) counsels in favor of the TCEH Debtors being granted access to only so much Interim Financing as is necessary to avoid immediate and irreparable harm to their estates pending a further interim hearing on the DIP Financing Motion.

**B.      The Proposed Uses Of The DIP Financing, And Grants Of Adequate
Protection To The Prepetition First Lien Creditors, Are Not Necessary Or Proper**

13.     The planned uses for the Proposed DIP Financing, and the grants of adequate protection to the Prepetition First Lien Creditors, are also not necessary and reflect the true purpose of the financing to benefit the Prepetition First Lien Creditors.  As evidenced by the Budget, the TCEH Debtors propose to use approximately $1.5 billion of the Proposed DIP Financing to provide the Prepetition First Lien Creditors with adequate protection in the form of postpetition interest during the first twelve months in which the DIP Financing is outstanding.[4] However, if one accepts the Debtors' view as to the current enterprise value of the TCEH Debtors and that the Prepetition First Lien Creditors are currently undersecured, the Prepetition First Lien Creditors are not entitled to accrue or be paid postpetition interest, and any payments made to the Prepetition First Lien Creditors will therefore ultimately have to be applied to reduce the principal amount of their claims at the conclusion of any restructuring of the TCEH Debtors. See United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd., 484 U.S. 365, 372-73 (1988) ("Since [§ 506(b)] permits postpetition interest to be paid only out of the 'security cushion,' the undersecured creditor, who has no such cushion, falls within the general rule disallowing postpetition interest"); In re Global Indus. Techs., Inc., 344 B.R. 382, 386 (Bankr.

---

[4]     According to the Budget, that amount will increase to approximately $3.0 billion if the DIP Financing remains outstanding for twenty-four months.

MIAMI 991214

W.D. Pa. 2006) ("In <u>Timbers of Inwood</u> the Supreme Court found that only oversecured

creditors, not undersecured creditors, were entitled to postpetition interest on their claims . . . .").

        14.     It is well established that adequate protection is not a right to be granted

without a showing of the requisite cause.  The "focus [of adequate protection] is protection of the

secured creditor from diminution in the value of its collateral during the reorganization process."

<u>In re First S. Sav. Ass'n</u>, 820 F.2d 700, 710 (5th Cir. 1987) (quoting <u>In re Becker Indus.</u>, 58 B.R.

725, 736 (Bankr. S.D.N.Y. 1986) (citations omitted)).  Said differently, "[t]he purpose of

adequate protection is to assure that the [creditor's] economic position is not worsened because

of the bankruptcy case."  <u>In re DeSardi</u>, 340 B.R. 740, 804 (Bankr. S.D. Tex. 2006).  "The

secured creditor 'must, therefore, prove this decline in value-or the threat of a decline-in order to

establish a prima facie case.'"  <u>In re Gunnison Ctr. Apartments, L.P.</u>, 320 B.R. 391, 396 (Bankr.

D. Colo. 2005) (quoting <u>In re Elmira Litho, Inc.</u>, 174 B.R. 892, 902 (Bankr. S.D.N.Y. 1994))

(emphasis in original).  Here, the TCEH Debtors and Prepetition First Lien Creditors have made

no such showing, and thus, adequate protection is not warranted or required.

        15.     The TCEH Debtors' attempt to use their estates' unencumbered assets,

including, but not limited to, proceeds of Avoidance Actions and the Segregated Cash, for the

benefit of the undersecured Prepetition First Lien Creditors is also improper.  As courts have

observed, certain provisions of the Bankruptcy Code, including those concerning adequate

protection, "are premised on the equitable principle that the unencumbered assets of a debtor's

estate will not be used to benefit one class of creditors at the expense of another class."  <u>In re</u>

<u>Timbers of Inwood Forest Assocs., Ltd.</u>, 793 F.2d at 1387; <u>see also</u> <u>In re W.R. Grace & Co.</u>, No.

01-1139-JKF, 2009 WL 1469831, at *5 (Bankr. D. Del. May 19, 2009) (noting, in connection

with denial of postpetition interest to unsecured bank lenders, the "Congressional policy that one

creditor group should not benefit at the expense of another."); In re Mid-State Raceway, Inc., 323 B.R. 40, 59 (Bankr. N.D.N.Y. 2005) ("[B]ankruptcy courts do not allow terms in financing arrangements that convert the bankruptcy process from one designed to benefit all creditors to one designed for the unwarranted benefit of the postpetition lender.") (citing In re Defender Drug Stores, Inc., 145 B.R. 312, 317 (B.A.P. 9th Cir. 1992)); In re Ames Dep't Stores, Inc., 115 B.R. 34, 40 (Bankr. S.D.N.Y. 1990) (noting that "this Court's discretion under section 364 is to be utilized on grounds that permit reasonable business judgment to be exercised so long as the financing agreement does not contain terms that leverage the bankruptcy process and power or its purpose is not so much to benefit the estate as it is to benefit a party-in-interest"). Yet, that is exactly what the TCEH Debtors have proposed to do here by using their unencumbered assets for the benefit of the Prepetition First Lien Creditors at the expense of the TCEH Debtors' estates.   This is especially inequitable when, in the absence of the Proposed DIP Financing being incurred as a part of the prosecution of these chapter 11 cases for the benefit of the Prepetition First Lien Creditors, the unsecured creditors of the TCEH would receive a recovery from the distribution of the TCEH Debtors' unencumbered assets (e.g., the Segregated Cash).

16.     In any case, the scope of the proposed adequate protection far exceeds the Prepetition First Lien Creditors' interest in the TCEH Debtors' assets that comprise the Prepetition First Lien Creditors' collateral.  Where the requisite showing for adequate protection has been made, a secured creditor is entitled only to adequate protection up to the value of the collateral securing its claim; not for the full value of its claim.  See In re Weinstein, 227 B.R. 284, 296 n.14 (B.A.P. 9th Cir. 1998) (A secured creditor is "entitled to adequate protection only to the extent of the value of the collateral, and not to the extent of the creditor's total claim."). By granting the Prepetition First Lien Creditors adequate protection liens on the unencumbered

18

assets of the TCEH Debtors, the DIP Financing Motion in essence seeks to secure more of the

Prepetition First Lien Creditors' claim than is currently secured, and extends beyond the position

bargained for by the Prepetition First Lien Creditors prior to bankruptcy.  See In re Yellowstone

Mountain Club, LLC, No. 08-61570-11, 08-61571-11, 08-61572-11, 08-61573-11, 2008 WL

5875547, at *8 (Bankr. D. Mont. Dec. 17, 2008) ("The whole purpose in providing adequate

protection for a creditor is to insure that the creditor receives the value for which the creditor

bargained prebankruptcy.").

17.    Accordingly, the Prepetition First Lien Creditors are simply not entitled to

the overly broad adequate protection package proposed by the TCEH Debtors.  At the very least,

such adequate protection should not be considered at the earliest possible stage of this massively

complex chapter 11 proceeding, without the opportunity of parties in interest to fully explore the

propriety of such arrangements.

**C.    The TCEH Debtors Cannot Satisfy Their Burden Under
Section 364 of Proving That Better Financing Options Are Unavailable**

18.    The DIP Financing Motion should be denied because the TCEH Debtors

cannot satisfy the requirements of section 364 of the Bankruptcy Code.  To obtain postpetition

secured financing under section 364(c) of the Bankruptcy Code, the TCEH Debtors must

"sustain the burden of establishing the following" requirements:

> (1) They are unable to obtain unsecured credit per 11 U.S.C.
> § 364(b), i.e., by allowing a lender only an administrative claim
> per 11 U.S.C. § 503(b)(1)(A); (2) The credit transaction is
> necessary to preserve the assets of the estate; and (3) The terms of
> the transaction are fair, reasonable, and adequate, given the
> circumstances of the debtor-borrower and the proposed lender.

In re St. Mary Hosp., 86 B.R. 393, 401 (Bankr. E.D. Pa. 1988) (citing In re Crouse Grp., Inc., 71

B.R. 544, 549 (Bankr. E.D. Pa. 1987), aff'd, 75 B.R. 553 (E.D. Pa. 1987)).  In addition, because

the Proposed DIP Financing would be secured by priming liens pursuant to section 364(d) of the

Bankruptcy Code, the TCEH Debtors must also demonstrate that they are "unable to obtain such

credit otherwise."  11 U.S.C. § 364(d)(1).  Section 364(d) is "to be invoked only in the most

compelling and extraordinary circumstances.   It is available only to the trustee or debtor in

possession and only when credit is unavailable elsewhere."  In re Dunckle Assocs., 19 B.R. 481,

484 (Bankr. E.D. Pa. 1982).

        19.     Accordingly, under sections 364(c) or (d) of the Bankruptcy Code, the

Court cannot approve a priming DIP financing unless the TCEH Debtors demonstrate that they

have attempted, but failed, to obtain unsecured financing and that they are unable to obtain credit

without providing priming liens.  See, e.g., In re Ames Dep't Stores, Inc., 115 B.R. at 37

(holding that a court may not approve financing under section 364(c) unless the debtor has

demonstrated that it has attempted and failed to obtain unsecured credit); see also In re Los

Angeles Dodgers LLC, 457 B.R. 308, 312-13 (Bankr. D. Del. 2011) (denying postpetition

financing under section 364(c) where the debtor failed to prove it was unable to obtain unsecured

financing, because another lender was ready and able to provide such unsecured financing); In re

St. Mary Hosp., 86 B.R. at 402 (refusing to approve the debtor's proposed DIP financing under

section 364(c), in part because the debtor did not seek alternative financing from *potential*

*sources* that may have offered "a very reasonable alternative . . . or outright grants of financial

assistance."); In re Aqua Assocs., 123 B.R. 192, 195-96 (Bankr. E.D. Pa. 1991) (stating that "it is

important for a bankruptcy court to make a qualitative assessment of the credit transaction in

light of readily-available alternatives before granting any § 364 motion . . . , it should not be

neglected in deciding whether to grant a § 364(d) motion.").  Here, it appears that the TCEH

Debtors failed in attempting to obtain alternative DIP financing on better terms.  As such, the

MIAMI 991214

TCEH Debtors have failed to discharge their burden of establishing that they sought and were unable to obtain better DIP financing.

20.     Furthermore, a superior financing alternative is readily available. Specifically, pursuant to Sections 10.5(i) and (v) of the First Lien Credit Agreement, TCEH may, and may cause its Restricted Subsidiaries (as defined in the First Lien Credit Agreement) to, contribute to an unrestricted subsidiary (the "Drop-Down Subsidiary") assets worth $1.5 billion.[5] Similarly, pursuant to Section 4.07 of each of the Indentures (as defined below),[6] TCEH may, and may cause certain of its subsidiaries to, contribute to the Drop-Down Subsidiary assets worth approximately $2.3 billion.  See, e.g., First Lien Notes Indenture § 4.07(a)(IV) (prohibiting only "Restricted Investments").[7]  In the absence of the filing of the TCEH Debtors' bankruptcy petitions and the resulting event of default, that amount would have been approximately $3.3 billion.  See id. at § 4.07(b)(7) (permitting investments in unrestricted subsidiaries having a fair market value not to exceed 1.0% of "Total Assets" but only if no event of default has occurred);

---

[5]     See First Lien Credit Agreement § 10.5(i) (permitting investments, including capitalization of subsidiaries in exchange for stock thereof, of assets having a fair market value of $1 billion, plus, among other things, an amount equal to any repayments, interest, returns, profits, *distributions*, income and *similar amounts actually received in cash in respect of such investment*) (emphasis added); § 10.5(v) (permitting "other Investments" of assets having a value of $500,000, plus, among other things, an amount equal to any repayments, interest, returns, profits, *distributions*, income and *similar amounts actually received in cash in respect of such investment*) (emphasis added).

[6]     Section 4.07 of that certain Indenture, dated as of April 19, 2011, among TCEH and TCEH Finance, together as issuer, certain guarantors and The Bank of New York Mellon Trust Company, as trustee (as amended or supplemented from time to time, the "First Lien Notes Indenture"), Section 4.07 of that certain Indenture, dated as of October 6, 2010, among TCEH and TCEH Finance, together as issuer, certain guarantors and The Bank of New York Mellon Trust Company, as trustee (as amended or supplemented from time to time, the "Second Lien Notes Indenture"), and Section 4.07 of the indenture governing the Unsecured Notes (the "Unsecured Notes Indenture," and together with the First Lien Notes Indenture and the Second Lien Notes Indenture, the "Indentures"), provide for identical investment capacity.

[7]     Section 1.01 of each of the Indentures defines "Permitted Investments" to include, among other things, "(8) any Investment in a Similar Business having an aggregate fair market value . . . not to exceed 3.5% of Total Assets . . . [and] (13) additional Investments having an aggregate fair market value . . . not to exceed 3.5% of Total Assets . . . .").  "Total Assets" is defined in the Indentures as "the total assets of TCEH and its Restricted Subsidiaries on a consolidated basis, as shown on the most recent consolidated balance sheet of TCEH or such other Person as may be expressly stated."  First Lien Notes Indenture § 1.01; Second Lien Notes Indenture § 1.01; Unsecured Notes Indenture § 1.01. According to the Form 10-Q for the quarterly period ending September 30, 2013 filed by EFCH, TCEH had total assets of $33.197 billion.  See Form 10-Q of Energy Future Competitive Holdings Company LLC for the fiscal quarter ended September 30, 2013, at 48.

21

§ 4.07(b)(11) (permitting restricted payments not to exceed 2.0% of "Total Assets" but only if no event of default has occurred).

21.     Once assets are invested in the Drop-Down Subsidiary, those assets are no longer collateral of the Prepetition First Lien Creditors and any liens thereon or security interests therein are released.  See First Lien Credit Agreement § 13.1 (providing for release of liens on and security interests in assets subject to dispositions permitted by the First Lien Credit Agreement); First Lien Notes Indenture § 11.07 (providing for release of liens on and security interests in assets released pursuant to the First Lien Credit Agreement); Second Lien Notes Indenture § 11.06 (same).  An Unrestricted Subsidiary (as defined in the First Lien Credit Agreement) is not required to pledge its assets as collateral for the First Lien Debt.  See First Lien Credit Agreement § 9.14 (limiting parties required to execute security documents to "Credit Parties").  Nor is the stock of an Unrestricted Subsidiary required to be pledged as collateral. See Security Agreement dated October 10, 2007, as amended and restated as of August 7, 2009, among TCEH and certain guarantors party thereto, as guarantors, and Citibank, N.A., as collateral agent (the "Security Agreement") § 2 (excluding "Excluded Stock and Stock Equivalents" from "Collateral"); First Lien Credit Agreement § 1.01 (defining "Excluded Stock and Stock Equivalents" as, among other things, "(vii) the Stock or Stock Equivalents of any Unrestricted Subsidiary").

22.     As a result, the assets of the Drop-Down Subsidiary may be borrowed against, including on a first-lien basis, to provide additional liquidity to fund operations.  In the event the proceeds of any such financing are distributed to TCEH as returns, profits, distributions, income or similar amounts, the investment baskets contained in Sections 10.5(i) and (v) of the First Lien Credit Agreement are "replenished" in an amount equal to the amounts

22

distributed to or received by TCEH.  See First Lien Credit Agreement §§ 10.5(i), (v).  This "replenishing" of investment baskets may be used iteratively as assets are "dropped-down", financing is obtained, and the proceeds thereof are distributed to TCEH, thereby permitting an amount equal to the maximum amount of the investments permitted under the Indentures (10.0% of "Total Assets" or approximately $3.3 billion prior to the filing; 7.0% of "Total Assets" or approximately $2.3 billion after the filing) to be invested under the First Lien Credit Agreement.

23.    Through this iterative "drop-down" process, the TCEH Debtors could have obtained, and still can obtain, liquidity on better terms than the Proposed DIP Financing to support their operations into the foreseeable future.  It may also provide the TCEH Debtors with enough time to allow certain potentially favorable regulatory changes or other trends in the market/industry to develop and result in more value to the estates and additional recoveries to stakeholders.

24.    The drop-down financing obviously is preferable to the Proposed DIP Financing to the TCEH Debtors' stakeholders generally.  Financing obtained pursuant to the Drop-Down Unencumbered Assets would not require any special protections for the DIP Lenders and the Prepetition First Lien Creditors, including the granting of priming liens, liens on unencumbered assets, the payment of postpetition interest or the onerous features of the Proposed DIP Financing.

25.    Finally, the TCEH Debtors cannot credibly argue that the Proposed DIP Financing is superior to the drop-down financing, and certainly cannot do so on the basis that the Proposed DIP Financing can be implemented more quickly.  Notably, the TCEH Debtors have been aware of the drop-down financing option for twenty-one months.  See EFH chats up non-extended lenders, floats idea of swap into new asset co, DEBTWIRE, July 30, 2012 (noting that a

variety of financing structures and options had been discussed with the Debtors' management at lender meetings, including drop-down financing).  Moreover, advisers to the Ad Hoc Group of TCEH Unsecured Noteholders presented the Debtors' advisers with a restructuring proposal premised in part on drop-down financing at a meeting held on May 6, 2013.  The TCEH Debtors' failure to implement the drop-down financing in a timely fashion cannot now be used to justify implementing the Proposed DIP Financing to the detriment of the Ad Hoc Group of TCEH Unsecured Noteholders and the TCEH Debtors' other unsecured creditors.

**D.     The Proposed DIP Financing Does Not Benefit The TCEH Debtors' Estates Or Protect Those Estates' Unencumbered Assets**

26.     In the absence of a commensurate benefit to the estates, the TCEH Debtors cannot burden their estates with the Proposed DIP Financing and adequate protection liens and claims that may eliminate any chance of recovery by stakeholders other than the DIP Lenders and Prepetition First Lien Creditors.  Nor can the Proposed DIP Financing "be approved where it is apparent that the purpose of the financing is to benefit a creditor rather than the estate."  In re Ames Dept. Stores, Inc., 115 B.R. at 39-40.  Here, the Proposed DIP Financing and the proposed adequate protection package, which includes new liens on unencumbered assets and postpetition interest payments, would not provide proportionate value to the estates and would benefit only the DIP Lenders and the Prepetition First Lien Creditors.

27.     The TCEH Debtors have a fiduciary duty to maximize the value of the unencumbered assets of their estates.  See Official Comm. of Unsecured Creditors of Cybergenics Corp. ex rel. Cybergenics Corp. v. Chinery, 330 F.3d 548, 571-72 (3d Cir. 2003) (holding that granting creditors derivative standing is appropriate where debtors fail to exercise their fiduciary duties to bring avoidance actions); In re Centaur, LLC, No. 10-10799 (KJC), 2010 WL 4624910, at *4, *7 (Bankr. D. Del. Nov. 5, 2010) (granting creditors' committee derivative

MIAMI 991214

standing to seek to avoid liens and unencumber assets to confer value to the estate); In re

Newcorn Enters. Ltd., 287 B.R. 744, 746, 750 (Bankr. D. Mo. 2002) (granting creditors'

committee derivative standing to bring marshalling action against secured lender, and thereby

increase pay-out to unsecured creditors, where debtor refused to do so); see also In re Quality

Stores, Inc., 289 B.R. 324, 340 (Bankr. W.D. Mich. 2003) ("[I]f a trustee, or a party holding

derivative rights from the trustee, recovered a surcharge [pursuant to section 506(c)], the

recovery would be for all creditors . . . .") (citing Dock's Corner Assocs. v. Boyd (In re Great N.

Forest Prods., Inc.), 135 B.R. 46, 66-69 (Bankr.W.D.Mich.1991)).  Here, there are substantial

unencumbered assets available to the TCEH Debtors' estates, including the Segregated Cash, the

Current Unencumbered Assets[8] and the Drop-Down Unencumbered Assets.

---

[8]    Pursuant to Section 2 of the Security Agreement, certain assets of the TCEH Debtors are expressly excluded from the Prepetition First Lien Creditors' collateral package including:

> (A) Excluded Stock and Stock Equivalents or any other Stock or Stock Equivalents of any Person pledged (or specifically excluded from the pledge) pursuant to the Pledge Agreement, (B) Excluded Property, (C) motor vehicles and other assets subject to certificates of title, (D) Letter-of-Credit Rights, (E) Commercial Tort Claims, (F) Excluded Lease Rights, (G) *assets specifically requiring perfection through control agreements* (other than the Deposit L/C Loan Collateral Account), (H) property or assets subject to capital leases and purchase money obligations to the extent subject to a Lien, in each case permitted by the Credit Agreement and by each Additional First Lien Agreement, and the terms of the Indebtedness secured by such Lien prohibit assignment of, or granting of a security interest in, such Grantor's rights and interests therein (other than to the extent that any such prohibition would be rendered ineffective pursuant to Sections 9-406, 9-407, 9-408 or 9-409 of the UCC (or any successor provision or provisions) of any relevant jurisdiction or any other applicable law), provided, that immediately upon the repayment of all Indebtedness secured by such Lien, such Grantor shall be deemed to have granted a Security Interest in all the rights and interests with respect to such property or assets, and (I) any assets as to which the Collateral Agent and the Company have determined that the costs or other consequences (including adverse tax consequences) of providing a security interest in is excessive in view of the benefits to be gained thereby by the Lenders and (y) none of the items included in clauses (i) through (xiv) above shall constitute Collateral to the extent (and only to the extent) that the grant of the Security Interest therein would violate any Requirement of Law applicable to such Collateral.

Security Agreement § 2 (emphasis added).

MIAMI 991214

28.     Any suggestion that the Drop-Down Unencumbered Assets are not properly considered unencumbered assets of the TCEH Debtors' estates is similarly flawed. While TCEH may not yet have exercised its contractual rights to transfer the Drop-Down Unencumbered Assets into an unrestricted subsidiary as discussed above, it is undisputed that TCEH has that right.  It is also clear that the TCEH Debtors are required to preserve such right pursuant to their fiduciary duty to maximize the unencumbered assets of their estates.  See Cybergenics, 330 F.3d at 571-72; Centaur, 2010 WL 4624910, at *7; Newcorn Enters., 287 B.R. at 746, 750.

29.     If the DIP Financing Motion is approved and the Cash Collateral Motion is granted, however, these unencumbered assets would be subject to new DIP Liens and adequate protection liens of the DIP Lenders and Prepetition First Lien Creditors.  Thus, these valuable assets would be swallowed up on the first day of these chapter 11 cases by those lenders to the detriment of the TCEH Debtors' unsecured creditors.

**E.     The Provision of Liens on Avoidance Action Proceeds is Improper and Robs Unsecured Creditors of One of Their Few Recovery Options**

30.     The Proposed DIP Financing contemplates that the DIP Liens will extend to, among other things, Avoidance Actions and all proceeds therefrom, and the Debtors also propose to provide to the Prepetition First Lien Creditors adequate protection liens on proceeds from Avoidance Actions.  Avoidance actions are statutorily created powers that allow the debtor to recover property for the benefit of creditors; they are not property of the debtor's estate that can be offered as security.  See Cybergenics, 226 F.3d at 243-44 (avoidance actions are not property of the estate and are not transferred to the debtor-in-possession, but are rights held by the estate for the benefit of all creditors); see also 5 COLLIER ON BANKRUPTCY ¶ 541.14 at n.1 (Alan N. Resnick & Henry J. Sommer, 16th ed.) ("The avoiding powers of a debtor in possession

26

granted in chapter 5 of the [Bankruptcy] Code are not property of the estate but statutorily

created powers to recover property."). Indeed, the Bankruptcy Code creates such avoidance

powers so that debtors may recover property for the benefit of creditors as part of their fiduciary

duties. Cybergenics, 226 F.3d at 243. Avoidance actions are simply a means by which a debtor

can carry out its trustee-related duties to maximize value for the benefit of the debtor's estate and

creditors. Id.

        31.     Because avoidance actions are not the TCEH Debtors' property, but rather

rights that may be exercised for the benefit of the TCEH Debtors' creditors, the DIP Liens and

adequate protection liens on the Avoidance Actions and the proceeds therefrom are inconsistent

with the intent behind avoidance actions and the scope of a debtor-in-possession's avoidance

powers. See id. at 243-44 (avoidance actions are not property of the debtor but rather are created

by operation of bankruptcy law and belong to the debtors' creditors); In re Sapolin Paints, Inc.,

11 B.R. 930, 937 (Bankr. E.D.N.Y. 1981) (recognizing "the well-settled principle that neither a

trustee . . . nor a debtor-in-possession, can assign, sell, or otherwise transfer the right to maintain

a suit to avoid preference"). To confine the recovery of any Avoidance Actions to the DIP

Lenders distorts the very purpose of providing the debtor in possession with the avoidance

powers in the first place and promotes an unbalanced playing field in these chapter 11 cases. See

Buncher Co. v. Official Comm. of Unsecured Creditors of GenFarm Ltd. P'ship IV, 229 F.3d

245, 250 (3d Cir. 2000) ("The purpose of fraudulent conveyance law is to make available to

creditors those assets of the debtor that are rightfully a part of the bankruptcy estate, even if they

have been transferred away."). Moreover, if the Prepetition First Lien Creditors are granted

adequate protection liens on the Avoidance Actions, unsecured creditors – the intended

beneficiaries of the Avoidance Actions – may be left with nothing. This is particularly troubling

when initial indications are that there may be significant value in such Avoidance Actions that would be available for unsecured creditors.

32.     As such, the TCEH Debtors should not be permitted to pledge the Avoidance Actions as security for the Proposed DIP Financing.  See In re Goold Elecs. Corp., Case No. 93 C 4196, 1993 WL 408366, at *4 (N.D. Ill. Sept. 22, 1993) (finding bankruptcy court order approving postpetition financing invalid "to the extent that the order assigns to the bank a security interest in the debtor's preference actions."); see also In re Integrated Testing Prods. Corp., 69 B.R. 901, 905 (D.N.J. 1987) (holding that prepetition secured creditor was not entitled to proceeds of sale of collateral recovered as preference because to allow the secured creditor to "claim these preferences would frustrate the policy of equal treatment of creditors under the Code . . . .").

33.     Further, the grant of adequate protection liens on Avoidance Actions or proceeds thereof is unjustified and unwarranted at this early stage in these chapter 11 cases.  No motion or other pleading has been filed that purports to justify why such liens should be granted, which is expressly required under Rule 4001-2(a)(i)(D) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court District of Delaware (the "Local Rules").[9]  Further, as proposed, the Cash Collateral Order would provide liens on causes of action arising under section 549 of the Bankruptcy Code and any related action under section 550 of the Bankruptcy Code upon such order being entered.  See Cash Collateral Order  ¶ 5(a). The Avoidance Actions should be explicitly excluded from any form of adequate protection liens provided by the Interim Order or the Cash Collateral Order, and any superpriority section 507(b) claims of the Prepetition First Lien Creditors should be *pari passu* with unsecured creditors with

---

[9]     The TCEH Debtors are also required to disclose that such liens are being granted and also state where the lien provision is located in the proposed order.  See Local Rule 4001-2(a)(i)(D).

MIAMI 991214

respect to proceeds from Avoidance Actions.  At a minimum, any request for inclusion of

Avoidance Actions or proceeds therefrom as DIP Collateral or to support adequate protection

should be made on sufficient notice to parties in interest and not approved as part of any "first

day" relief.

F.      **The Challenge Period and Carve Out Are Woefully Inadequate**

34.      As an initial matter, it is abundantly clear from the Debtors' Restructuring

Support Agreement and related documents that the TCEH Debtors have little incentive to

investigate their Prepetition First Lien Creditors (i.e., their proposed future equity holders).

Requiring an official committee of creditors appointed in the TCEH Debtors' chapter 11 cases to

seek standing does not serve the best interests of the TCEH Debtors' estates and creates

unnecessary hurdles to any potential challenge that might result from an investigation conducted

by a fiduciary that is truly disinterested.  Furthermore, the limitations prescribed by the Cash

Collateral Order and the Interim Order on the uses of cash collateral and proceeds of the DIP

Financing are overly broad and proscribe the payment of fees and expenses of professionals in

connection with investigation of claims against the Prepetition First Lien Creditors or Released

Parties.  Thus, any order approving the Proposed DIP Financing or use of cash collateral should

grant any official committee appointed in the TCEH Debtors' chapter 11 cases standing to, if

appropriate, commence a challenge to the validity, perfection, and/or enforceability of any of the

Prepetition Liens held by or relating to the Prepetition First Lien Creditors.

35.      Once standing is granted, any such committee should be allocated a

reasonable amount of cash collateral to investigate whether there is a basis for any causes of

action against the Prepetition First Lien Creditors or any defenses to the prepetition obligations.

Providing only $175,000 in the aggregate for any such committee's professionals to investigate

and challenge the prepetition obligations and fewer than 60 days (taking into account the

requirement to provide three days prior notice of any Challenge) from its formation within which

to commence an action improperly constrains any such committee's ability to determine whether

the liens securing the TCEH Debtors' prepetition obligation to the Prepetition First Lien

Creditors are properly perfected and if there are potential estate claims against such parties.[10]

### G.      The Section 506(c) Waiver Is Inappropriate and Should Be Denied

36.      Subject to entry of the Final Order and a final order granting the Cash

Collateral Motion, the DIP Agent, the DIP Lenders, and the DIP L/C Issuers and the Prepetition

First Lien Creditors shall not be subject to any surcharge under section 506(c) of the Bankruptcy

Code.    Local Rule 4001-2(a)(i)(C) requires that the TCEH Debtors justify a provision in which

they waive the right to surcharge under section 506(c) of the Bankruptcy Code.  That

justification has not been presented.  The TCEH Debtors must retain their right to charge the

Prepetition First Lien Creditors for the TCEH Debtors' efforts, and a waiver of these rights at

this stage of the bankruptcy could ultimately lead to an unfair enrichment of the Prepetition First

Lien Creditors at the expense of unsecured creditors.  Indeed, given the transfer of value to the

Prepetition First Lien Creditors and the plan that they will become the new equity owners of the

TCEH Debtors, it is inappropriate to further insulate them from liability to the TCEH Debtors'

estates for the costs and expenses associated with preserving their collateral.

37.      As already explained above, and as evidenced by the Debtors' filings, the

benefits of the TCEH Debtors' chapter 11 cases will likely run almost exclusively to the

---

[10]      Local Rule 4001-2(a)(i)(B) requires the TCEH Debtors to justify provisions that purport to bind their estates and other parties with respect to the validity, perfection or amount of a secured creditor's lien or waiver of claims against the secured creditor.  Here, no such justification has been presented and there are serious questions about whether the estates have claims against the Prepetition First Lien Creditors.  These questions must be investigated and an appropriate budget must be provided to enable the investigation.

Prepetition First Lien Creditors.  As a result, it is imperative that the TCEH Debtors retain the ability to force the Prepetition First Lien Creditors to shoulder the costs associated with preservation of their collateral in the chapter 11 cases.  See In re AFCO Enters., Inc., 35 B.R. 512, 515 (Bankr. D. Utah 1983) (stating that "[w]hen the secured creditor is the only entity which is benefited by the trustee's work, it should be the one to bear the expense [and that it] would be unfair to require the estate to pay such costs where there is no corresponding benefit to unsecured creditors."); see also In re McKeesport Steel Castings Co., 799 F.2d 91, 94 (3d Cir. 1986) ("We choose to follow the broad interpretation of benefit used in *Afco Enterprises*."); Precision Steel Shearing, Inc. v. Fremont Fin. Corp. (In re Visual Indus., Inc.), 57 F.3d 321, 325 (3d Cir. 1995) ("[Section] 506(c) is designed to prevent a windfall to the secured creditor . . . [and] understandably shifts to the secured party . . . the costs of preserving or disposing of the secured party's collateral, which costs might otherwise be paid from the unencumbered assets of the bankruptcy estate . . . .") (internal citation omitted).

## RESERVATION OF RIGHTS

38.     The Ad Hoc Group of TCEH Unsecured Noteholders expressly reserves the right to supplement and amend this preliminary Objection, seek discovery with respect to the same, and introduce evidence at any hearing relating to the DIP Financing Motion, the Cash Collateral Motion and this preliminary Objection.  Further, the Ad Hoc Group of TCEH Unsecured Noteholders reserves the right to respond, further object, join in, or amend any objection herein with respect to any argument or objection made by any person relating to the DIP Financing Motion or the Cash Collateral Motion.  The Ad Hoc Group of TCEH Unsecured Noteholders also reserves the right to further object to any alternative financings if and when proposed by the TCEH Debtors.

31

## **CONCLUSION**

39.     Based on the foregoing, the Ad Hoc Group of TCEH Unsecured

Noteholders respectfully requests that the Court deny the DIP Financing Motion and the Cash

Collateral Motion, unless the relief requested therein is modified to address the objections raised

herein.

*[Remainder of page intentionally left blank]*

32

Dated: May 1, 2014
       Wilmington, Delaware

                         FOX ROTHSCHILD LLP

By:   */s/ L. John Bird*
        Jeffrey M. Schlerf (No. 3047)
        John H. Strock (No. 4965)
        L. John Bird (No. 5310)
        919 North Market St., Suite 300
        Wilmington, DE 19801
        Telephone:  (302) 654-7444
        Facsimile:  (302) 463-4971
        jschlerf@foxrothschild.com
        jstrock@foxrothschild.com
        lbird@foxrothschild.com

        and

        WHITE & CASE LLP
        Thomas E Lauria (admission *pro hac vice* pending)
        Matthew C. Brown (admission *pro hac vice* pending)
        Southeast Financial Center, Suite 4900
        200 South Biscayne Blvd.
        Miami, FL 33131
        Telephone:  (305) 371-2700
        Facsimile:  (305) 358-5744
        tlauria@whitecase.com
        mbrown@whitecase.com

        J. Christopher Shore (admission *pro hac vice* pending)
        Gregory M. Starner (admission *pro hac vice* pending)
        1155 Avenue of the Americas
        New York, NY 10036
        Telephone:  (212) 819-8200
        Facsimile:  (212) 354-8113
        cshore@whitecase.com
        gstarner@whitecase.com

        *Counsel to the Ad Hoc Group of Certain*
        *Holders of TCEH Unsecured Notes*

MIAMI 991214