## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) | Case No. 14-10979 (CSS) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | **Re: D.I. 5, 225** |
| | ) | |

## DEBTORS' OBJECTION TO THE MOTION OF WILMINGTON SAVINGS FUND SOCIETY, FSB PURSUANT TO 28 U.S.C. §§ 1408 & 1412 AND RULE 1014 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE TO TRANSFER CASES TO THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS

The above-captioned debtors and debtors in possession (collectively, the "Debtors") file this objection (the "Objection") to the *Motion of Wilmington Savings Fund Society, FSB ("WSFS") Pursuant to 28 U.S.C. §§ 1408 and 1412 and Rule 1014 of the Federal Rules of Bankruptcy Procedure to Transfer Cases to the United States District Court for the Northern District of Texas* [D.I. 5] (the "Mot. to Transfer"). In support of their Opposition, the Debtors respectfully state as follows.

---

[1] The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, which are being jointly administered on an interim basis, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

### Introduction

1.      These bankruptcy cases were properly filed in the Bankruptcy Court for the District of Delaware.  More than twenty of the Debtors—including Energy Future Intermediate Holding Company LLC ("EFIH") and Texas Competitive Electric Holdings Company LLC ("TCEH")—are Delaware limited liability companies, and venue is accordingly appropriate in this Court.  *See* 28 U.S.C. § 1408.  WSFS does not dispute this fact.  Instead, it asks this Court to upset the Debtors' decision to file their chapter 11 cases in this district, and transfer the cases to the Northern District of Texas, based on "the interests of justice" and "the convenience of the parties."  WSFS, of course, does not make any claim that venue in Wilmington causes it any inconvenience—its office is less than two miles from this Courthouse—and it is represented by lawyers from the Northeast.

2.      The law is well-settled that a debtor's choice of venue should be accorded great deference.  *See, e.g., In re Del. & Hudson Ry.*, 96 B.R. 467, 467 (Bankr. D. Del. 1988), *aff'd*, 884 F.2d 1383 (3d Cir. 1989) ("When venue is proper, the debtor's choice of forum is entitled to 'great weight.'"); *In re PWS Holding Corp.*, 1998 Bankr. LEXIS 549, at *4-5 (Bankr. D. Del. Apr. 28, 1998) (holding that debtor's choice of venue is "to be accorded substantial weight and deference").  WSFS has plainly failed to carry its burden of showing that the "great weight" and deference accorded to the Debtor's choice of venue should be set aside here.

3.      While WSFS correctly recognizes that the Debtors' business is conducted in Texas, this point misses the forest for the trees.  The Debtors are not trying to avoid unprofitable agreements with customers or employees, nor are they proposing to change the way in which EFH's core businesses are operated.  To the contrary, the Debtors are in chapter 11 to restructure their balance sheets.  The issues that will come to the forefront in these chapter 11 cases will accordingly involve creditors and professionals—who are principally located in New York, not

RLF1 10293787v.1

Texas.   Indeed, WSFS has indicated that it will dispute the valuation of the entities seeking protection under chapter 11, which this Court is as competent as any other to resolve.   The environmental and regulatory concerns that WSFS says favor litigation in Texas courts are simply not relevant.   The Debtors intend to comply with all applicable regulatory requirements during the chapter 11 cases and will seek all necessary regulatory approvals, if any, in connection with the Debtors' business operations and any proposed plan of reorganization.   *In re Energy Future Holdings Corp., et al.*, No. 14-10979 (CSS) [D.I. 98], at ¶ 61 (Bankr. D. Del. Apr. 29, 2014).   WSFS's contention that a Texas court would have a "shorter learning curve" given the "numerous Texas state law issues that will arise" is misplaced: most of the substantive law applied will be federal bankruptcy law—a subject in which bankruptcy judges in every jurisdiction have comparable expertise—and Delaware corporate law governs the fiduciary duties of many of these Debtors.   *See In re Alcorn Corp.*, No. 12-13742, 2012 WL 2974889 at *3-4 (Bankr. E.D. Pa. July 20, 2012).

4.      As a result, whether the Debtors' officers "reside and work in Texas," Mot. to Transfer ¶44, is of little consequence.   But even if the home addresses of the Debtors' officers were relevant, it was those Debtors and their officers—in the best position to analyze the convenience of their chosen venue—who chose Delaware, and who knowingly agreed to submit to depositions, meetings, and other proceedings on the East Coast.   This was also not just their decision:  the Debtors come to this Court with a partially pre-negotiated plan.   The parties to the Restructuring Support Agreement, who together hold tens of billions of dollars of debt across the capital structures of EFH, EFIH, and TCEH, understood that the Debtors intended to file in Delaware when they signed on to that agreement.

RLF1 10293787v.1

5.      As explained in further detail below, the Debtors respectfully request that the Court deny WSFS's motion to transfer these cases to Texas.

**Background**

6.      EFH is a privately-held energy company with a portfolio of competitive and regulated energy utilities primarily serving the Texas market.  It is one of the largest electricity companies in the United States.  EFH was known as TXU Corporation until October 2007, when it was subject to the largest private acquisition of a public company in history.  At that time, EFH's current equity owners contributed approximately $8.3 billion of equity capital into EFH. Like many private acquisitions, EFH issued significant new debt as part of the acquisition. Today, the Debtors' total funded indebtedness is nearly $42 billion.

7.      EFH is the ultimate parent company of the entities in this restructuring, including, among others, EFIH and TCEH.  Twenty-one of the Debtors who have filed for chapter 11 protection are incorporated in Delaware, including TCEH, EFCH, and EFIH.

8.      The great majority of the individuals who will be most intimately involved in the daily activities related to the Debtors' chapter 11 proceedings—counsel, financial advisors, and other professionals—reside in New York.  The few Debtor employees who might eventually appear as witnesses, moreover, will make themselves available on the East Coast for appropriate depositions and in Delaware for any hearing.  The Debtors' debt holders are also located primarily in the Northeast, with a negligible percent in Texas.  The indenture trustees for the Debtors' notes are located throughout the country, but over one-half of the trustees are in New York, Delaware, or nearby in the Northeast.  The fifty largest unsecured creditors are likewise dispersed across North America in twenty different locations.  The indenture trustees representing the two largest unsecured creditors are in New York, not Texas.

## **Legal Standard**

9.      Venue in a chapter 11 case is proper in any district in which the debtor is domiciled, 28 U.S.C. § 1408(1), or in any district in which an affiliated entity has filed for chapter 11, *id.* § 1408(2) ("[A] case under title 11 may be commenced in the district court for the district … in which there is pending a case under title 11 concerning such person's affiliate, general partner, or partnership."). Corporations are domiciled in the State in which they are incorporated. *First Bank Stock Corp. v. Minn.,* 301 U.S. 234, 237 (1937) ("Appellant is to be regarded as legally domiciled in Delaware, the place of its organization…."). A corporation is consequently entitled to file for protection under chapter 11 in its own State of incorporation or in an affiliate's. *See In re PWS Holding Corp.,* 1998 Bankr. LEXIS 549, at *14. Here, 21 of the 71 debtor entities are incorporated in Delaware, so Delaware is plainly an appropriate venue. *See Betty R. Fleshman Declaration In Support of the Debtors' Opposition To The Motion Of Wilmington Savings Fund Society, FSB Pursuant To 28 U.S.C. §§ 1408 & 1412 And Rule 1014 Of The Federal Rules Of Bankruptcy Procedure To Transfer Cases To The United States District Court For The Northern District Of Texas* at ¶ 2.

10.     Because venue is proper under Section 1408, the Debtors' "choice of forum is to be accorded ***substantial weight and deference.***" *In re PWS Holding Corp.,* 1998 Bankr. LEXIS 549, at *4-5 (emphasis added). This deference reflects the "fundamental legal tenet" that a business is "entitled to take advantage of the state and federal judicial process available in [the] state" in which it is incorporated. *Id.; see also In re Del. & Hudson Ry.,* 96 B.R. at 467 ("When venue is proper, the debtor's choice of forum is entitled to great weight.").

RLF1 10293787v.1

11.     The court may transfer a case to another district only where "doing so would be 'in the interest of justice' or necessary 'for the convenience of the parties.'" 28 U.S.C. § 1412.[2] In determining whether a transfer is warranted, Delaware courts generally consider four primary factors above all others: (1) the proximity of the court to interested parties; (2) the location of the debtor's assets; (3) the efficient and economic administration of the estate; and (4) the relative economic harm to the debtor and other interested parties. *See In re PWS Holding Corp.*, 1998 Bankr. LEXIS 549 at *5; *In re Del. & Hudson Ry.*, 96 B.R. at 468.    Courts also consider the location of witnesses, the availability of subpoena power, and expense related to obtaining unwilling witnesses; the ease of access of necessary proof; the enforceability of any judgment rendered and the ability to receive a fair trial; and a state's interest in having local controversies decided within its borders. *See In re Hechinger Inv. Co. of Del., Inc.*, 296 B.R. 323, 325-26 (Bankr. D. Del. 2003).[3]

12.     The party seeking transfer has the burden of proving that it is necessary.    WSFS must accordingly produce evidence overcoming the presumption in favor of the Debtors' choice of venue. *See In re Enron Corp.*, 274 B.R. 327, 342 (Bankr. S.D.N.Y. 2002) ("A debtor's choice

---

[2] While WSFS emphasizes the disjunctive nature of section 1412, the court in *In re LaGuardia*, cited by WSFS for that proposition, also recognizes that courts often combine the "interest of justice" and "convenience of parties" analyses "since the facts and circumstances which inform one evaluation will almost always bear on the other as well." *See In re LaGuardia Assocs., L.P.*, 316 B.R. 832, 839 (Bankr. E.D. Pa. 2004).  In holding that the movants failed to meet their burden and denying motion, the court noted that analyzing them separately would result in "considerable repetition." *Id.*

[3] Courts have phrased the factors relevant to the transfer inquiry differently and often enumerate separate, additional factors. *Compare In re PWS Holding Corp.*, 1998 Bankr. LEXIS 549 at *6 (applying four factors listed above), *with In re Cont'l Airlines, Inc.*, 133 B.R. 585, 587-88 (Bankr. D. Del. 1991) ("In determining an appropriate choice of venue, bankruptcy courts look to various factors which include: (1) the location of the plaintiff and defendant; (2) the ease of access to necessary proof; (3) the availability of subpoena power for the unwilling witnesses; (4) the expense related to obtaining witnesses; (5) the enforceability of any judgment rendered; (6) the ability to receive a fair trial; (7) the state's interest in having local controversies decided within its borders, by those familiar with its law; and (8) the economics of estate administration."), *with In re Hechinger Inv. Co.*, 296 B.R. at 325-26 (applying 12-factor test).  However, the additional factors in large part intersect with the four most critical factors mentioned above.

of forum is entitled to great weight if venue is proper."); *In re PWS Holding Corp.*, 1998 Bankr. LEXIS 549, at *4-5 ("[A] debtor's [] choice of forum is to be accorded substantial weight and deference.  It is the movants' burden, therefore, to demonstrate, by a preponderance of the evidence, that a transfer of venue is necessary….").

**Argument**

**I.    The Movants Have Failed To Meet Their Burden Of Proving That Transfer Is Required Under Section 1412.**

13.    WSFS does not—and cannot—dispute that venue is proper in this Court. Twenty-one of the 71 Debtors, including both EFIH and TCEH, are incorporated and thus "domiciled" in Delaware. *See First Bank Stock Corp.*, 301 U.S. at 237.  Venue is consequently proper for those entities under section 1408(1) of the Bankruptcy Code. *See* 28 U.S.C. § 1408(1) ("[A] case under title 11 may be commenced in the district court for the district … in which the domicile … of the person or entity that is the subject of such case ha[s] been located for the one hundred and eighty days…."). The remaining Debtors are affiliates of the Delaware entities, *see* 11 U.S.C. § 101(2)(A) (defining an affiliate as an "entity that directly or indirectly owns, controls, or holds with power to vote, 20 percent or more of the outstanding voting securities of the debtor"), and venue in this district is thus proper for them as well under Section 1408(2). *See In re Enron Corp.*, 274 B.R. at 341; *see also* 28 U.S.C. § 1408(2) ("[A] case under title 11 may be commenced in the district court for the district … in which there is pending a case under title 11 concerning such person's affiliate….").

14.    Rather than contesting the validity of the Debtors' choice of forum, WSFS argues that "the interests of justice" and "convenience" require a transfer under section 1412.  WSFS nowhere addresses, much less satisfies, the "strong presumption of maintaining venue where the bankruptcy case is pending." *In re Cont'l Airlines, Inc.*, 133 B.R. at 587.  Significantly,

"'[w]here a transfer would merely shift the inconvenience from one party to the other, or where after balancing all the factors, the equities leaned but slightly in favor of the movant, the [debtor's] choice of forum should not be disturbed.'" *In re Enron Corp.*, 274 B.R. at 342-43 (quoting *In re Garden Manor Assocs., L.P.*, 99 B.R. 551, 555 (Bankr. S.D.N.Y. 1988)).

15.    WSFS fails to demonstrate that the balance "strongly" favors transfer, *In re Uslar*, 131 B.R. 22, 23 (Bankr. E.D. Pa. 1991), or that the evidence establishes a clear and proper justification, *In re Holiday Towers, Inc.*, 18 B.R. 183, 187 (Bankr. S.D. Ohio. 1982). Indeed, courts in Delaware and elsewhere have repeatedly noted that transfers should not be undertaken lightly because of their "disruption of the Chapter 11 process." *In re Suzanne de Lyon, Inc.*, 125 B.R. 863, 868 (Bankr. S.D.N.Y. 1991); *see also In re LaGuardia*, 316 B.R. at 837; *In re Fairfield Puerto Rico, Inc.*, 333 F. Supp. 1187, 1189 (D. Del. 1971).

### A.    The Debtors' Texas Businesses Should Not Determine Venue Because EFH Seeks a Balance-Sheet Restructuring.

16.    WSFS has failed to carry its heavy burden of proving that an alternate venue is required in the interests of justice or for the convenience of the parties. The Debtors have filed for chapter 11 to restructure their balance sheet, not because the business is operationally unsustainable. To that end, the Debtors sought authority in their first day motions to pay certain general unsecured claims and assume a slew of contracts that, once granted, undermine WSFS's claim that the weight of this case is in Texas:

- **TXU Energy Customers.** The Debtors sought authority to maintain TXU Energy's customer programs, pay related prepetition obligations, and assume over 1.7 million contracts with its customers. *In re Energy Future Holdings Corp., et al.*, Case No. 14-10979 (CSS) [D.I. 31] (Bankr. D. Del. Apr. 29, 2014).

- **Employee and Retiree Wages and Benefits.** The Debtors sought authority to pay prepetition employee compensation and employee and retiree benefits and continue those programs going forward. *Id.* [D.I. 25].

RLF1 10293787v.1

- **Unions.** The Debtors sought authority to continue deducting and remitting union dues, continue honoring collective bargaining agreements, and remit unremitted union dues collected pre-petition. *Id.*

- **ERCOT Agreements.** The Debtors sought authority to assume standard form market participant agreements with the independent system operator in Texas, the Electric Reliability Council of Texas, Inc. *Id.* [D.I. 40]. These contracts ensure that the Debtors can continue to operate their power generation assets, participate in the retail electricity market, and schedule, buy, and sell electricity and ancillary services. *Id.*

- **Transmission Agreements.** The Debtors sought authority to assume electricity transmission and distribution service provider agreements that govern the provision of electric distribution service throughout Texas to the Debtors, which is necessary for the Debtors to sell electricity to customers. *Id.* [D.I. 38].

17.     Once these motions are granted (and, in fact, several already have been on an interim basis), the issues that WSFS says might tie these cases to Texas will be behind the parties and the Court.  This weighs in favor of maintaining venue in Delaware, as the focus of these cases is on rehabilitation of the Debtors' balance sheet, not a liquidation where employees would be out of a job.  *See In re Allied Systems Holdings, Inc.*, Case No. 12-11564 (CSS) at 57:17-21 (Bankr. D. Del. May 31, 2012) (refusing to transfer bankruptcy case that was a "rehabilitation," "not a liquidation of specific assets" or a "shutdown of specific factories.").

18.     Moreover, the Debtors intend to comply with all applicable regulatory requirements during these chapter 11 cases and will seek all necessary regulatory approvals, if any, from state and federal regulatory authorities, in connection with the Debtors' business operations and any proposed plan of reorganization.  *In re Energy Future Holdings Corp., et al.*, No. 14-10979 (CSS) [D.I. 98], at ¶ 61 (Bankr. D. Del. Apr. 29, 2014).  In fact, the Public Utility Commission of Texas (the "PUC") "supports the Debtors' general position that these cases are designed to restructure the Debtors' balance sheets, should not affect day-to-day operations, and should have no effect on the Debtors' existing wholesale or retail customers." *See Response of Public Utility Commission of Texas In Support of Certain First Day Pleadings*, *In re Energy*

9

*Future Holdings Corp., et al.*, No. 14-10979 (CSS) [D.I. 123], at ¶ 10 (Bankr. D. Del. Apr. 30, 2014).

**B.    Interested Parties Are Close To Delaware.**

19.    The location of interested parties, and in particular the Debtors' creditors and professionals, weighs in favor of retaining jurisdiction in this district. They are located primarily in New York, making Delaware far more convenient than Texas. In fact, during the first two days of hearings in these cases, there were three courtrooms packed with professionals and interested parties. If the cases were transferred to Texas, some of these individuals might not attend future hearings. And, perhaps more importantly, the cost of flying dozens of professionals down to Texas at least once a month is not an efficient use of resources—especially since many of their fees are being paid by the Debtors.

**i.    Professionals and Debtors' Executives.**

20.    As shown in **Figure 1**, the majority of the professionals who will be heavily involved in the day-to-day activities related to the chapter 11 proceedings—counsel, financial advisors, and other professionals—reside in New York, which is only a short trip to Delaware as compared to Texas. Notably, almost all professionals representing key constituencies are located in New York or on the East Coast including those representing: (a) the TCEH First Liens, (b) the TCEH Second Liens, (c) the TCEH Unsecureds, (d) the EFIH First Liens, (e) the EFIH Second Liens, and (f) the EFIH Unsecureds, and (g) the equity owners—excluding only two TCEH Unsecured professionals. *See Steven R. Kotarba Declaration In Support Of Debtors' Objection To The Motion Of Wilmington Savings Fund Society, FSB Pursuant To 28 U.S.C. §§ 1408 & 1412 And Rule 1014 Of The Federal Rules Of Bankruptcy Procedure To Transfer Cases To The United States District Court For The Northern District Of Texas* ("Kotarba Decl.") at ¶ 4(i);

Exhibit A, Location of Professionals; *see also In re Energy Future Holdings Corp., et al.*, Case

No. 14-10979 (CSS) [D.I. 98], at ¶ 156 (Bankr. D. Del. Apr. 30, 2014).

**Figure 1: Location of Professionals**

| Professionals | |
|---|---|
| **Firm** | **Location** |
| *Ad Hoc Committee of TCEH First Liens* | |
| Paul, Weiss, Rifkind, Wharton & Garrison | NY |
| Millstein & Co. | |
| *Trustee for the TCEH Second Liens* | |
| Brown Rudnick | NY<br>CT<br>MA |
| *TCEH Unsecureds* | |
| White & Case | FL (Miami)<br>NY |
| Houlihan Lokey | TX<br>MN |
| *EFIH First Liens* | |
| Ropes & Gray | NY<br>MA |
| Bingham McCutchen LLP | |
| Capstone Advisory Group | |
| *EFIH Second Liens* | |
| Kramer Levin Naftalis & Frankel | NY |
| Rothschild Group | |
| *EFIH Unsecureds* | |
| Akin Gump Strauss Hauer & Feld | NY<br>Washington, D.C. |
| Centerview Partners | NY |
| *Equity Owners* | |
| Blackstone Group | NY |
| Wachtell, Lipton, Rosen & Katz | |
| *Debtors* | |
| Kirkland & Ellis | NY<br>CO |
| Alvaraz & Marsal | |
| Filsinger Energy Partners | |

11

21.     While many of the Debtors' employees and executives are located in Texas, the Debtors' professionals in New York and the Northeast will appear in court proceedings much more frequently than employees and executives: "While substantially all of the Debtors' officers are located in [Texas], most will not be required to attend hearings before this Court. Rather, the certain participants in the proceedings before this Court will be the professionals retained in these cases." *In re Enron Corp.*, 274 B.R. at 347; *see also Pic 'N Pay Stores*, Case No. 96-182 [D.I. 193], at 16:7-13 (Bankr. D. Del. Mar. 8, 1996) ("NationsBank makes much of the fact that the Debtor has 250 employees in Charlotte.... I do not attach much significance to this fact simply because my experience suggests that rank and file employees do not participate in a bankruptcy proceeding."). As this Court explained in *In re SGP Acquisitions, LLC*:

> [I]n terms of court appearances and participation in the proceedings in court, we see the professionals all the time and debtor employees, including officers, only infrequently.... [I]t is rare, indeed, for rank and file employees to have to participate in a case and even rare for them to come in and be heard as witnesses or otherwise in a case.

Case No. 04-13382 (CSS) at 48:6-18 (Bankr. D. Del. Jan. 25, 2005); *see also In re Safety-Kleen Corp.*, Case No. 00-2303 (PJW), Bench Decision at 47-48 (Bankr. D. Del. July 11, 2000) ("The issue of convenience of the parties is not where the headquarters may be or what operations come out of those headquarters ... rarely, rarely do we have extended hearings in this court which would require any significant dislocation from one's operating services in a headquarters. ... [T]he vast majority of activities in this court involve lawyering and only a very, very limited number of principals have to appear on very, very limited occasions for a very limited period of time in this forum....").

22.     To the extent that the Debtors' employees do need to appear, the Debtors will make management and any other necessary employees available on the East Coast for

12

depositions, meetings, and other proceedings as appropriate. The Debtors' directors have also convened board meetings in New York. While WSFS emphasizes that proceeding in Delaware will require management to spend time traveling to and from Delaware, *see e.g.*, Mot. to Transfer, ¶ 27, "the loss of time for management to come back and forth to cases in Delaware" is not sufficient to justify transfer. *In re Allied Systems Holdings, Inc.*, Case No. 12-11564 (CSS) at 57:25-58:5 (Bankr. D. Del. May 31, 2012) (denying motion to transfer venue from Delaware to Georgia).

ii.    **Creditors.**

23.    In addition to the location of the key professionals in this case, "the number of creditors as well as the amount of claims held by such creditors" also favors litigating this case in Delaware rather than Texas. *In re Enron Corp.*, 274 B.R. at 345; *see also In re Commonwealth Oil Ref. Co.*, 596 F.2d 1239, 1248 (5th Cir. 1979) ("Both number and size are of equal significance in gaining acceptance of a plan and should be of equal significance in considering the convenience of the creditors.").

24.    The debt holders are located primarily in the Northeast. Indeed, as of late 2013, a negligible percentage of the EFIH, TCEH, and EFH debt holders were in Texas, and a significant percentage reside on the East Coast—with a large portion in the tri-state area. *See* Kotarba Decl. at ¶ 4(ii). The Debtors' 50 largest potential unsecured creditors are scattered throughout the country; their locations provide no support for moving these cases to Texas. They are in Colorado, California, Georgia, Illinois, Missouri, New Jersey, New York, Pennsylvania, South Carolina, Texas, Utah, New Mexico, Tennessee, Ohio, Alabama, Washington D.C., Kansas, Florida, Indiana, and Guatemala. *See* Kotarba Decl. at ¶ 4(iii). The two largest potential unsecured claims are held by indenture trustees—together representing over $8 billion—that are both located in New York. *Id.*

25.     The majority of the arrangers providing post-petition financing to EFIH and TCEH are also located in New York. *See* Kotarba Decl. at ¶ 4(vi). Five of seven TCEH First Lien debtor-in-possession (DIP) arrangers are located in New York with the remaining two in North Carolina and California. *Id.* Counsel for the TCEH First Lien DIP agent, Milbank, Tweed, Hadley & McCloy, is also in New York. *Id.* Five of seven EFIH First Lien DIP arrangers are similarly located in New York with the remaining two in North Carolina and California. *Id.* Shearman & Sterling LLP, counsel for the EFIH First Lien DIP agent, is also in New York. *Id.*

26.     Indenture trustees for the Debtors' notes are located throughout the country, including Delaware, New York, Massachusetts, New Jersey, Missouri, Texas, and Arizona. *See* Kotarba Decl. at ¶ 4(iv). However, over half of them are found in New York, Delaware, or the Northeast. *Id.* WSFS, itself, is located in Wilmington, Delaware. *See* Kotarba Decl. at ¶ 3(iv)(d). The administrative and collateral agents for the $24.5 billion pre-petition TCEH Credit Agreement and the TCEH Senior Secured Super-priority Debtor-In-Possession Credit Agreement likewise are not located in Texas: one is in New York and one is in Minnesota. *See* Kotarba Decl. at ¶ 4(v). In other words, the location of the trustees and agents for the Debtors' many loan documents supports keeping these chapter 11 cases in Delaware.

27.     Thus, the location of the large majority of the creditors militates against transfer, particularly here, where the central issue before this Court is restructuring the debt held by these creditors and ***not*** restructuring the Debtors' operations, which are largely remaining the same. *See In re Del. & Hudson Ry.*, 96 B.R. at 468 (denying motion to transfer where the "major and majority of creditors, in terms of money and corporate structure, [we]re widely scattered throughout the northeast United States"); *In re Indus. Pollution Control, Inc.*, 137 B.R. 176, 181-

82 (Bankr. W.D. Pa. 1992) (denying motion to transfer when transfer to one state would be more convenient to some creditors, but less convenient to others).  Holding proceedings in Delaware would be far more convenient than Texas for the many entities and professionals in New York and the Northeast.  And, although some creditors are located in Texas, their representatives are primarily on the East Coast so their location does not support transfer either.  *See Am. Film Techs.*, No. 93-1207, slip op. at 71 (Bankr. D. Del. Nov. 23, 1993) (denying motion to transfer and reasoning in part that professionals are more likely to attend court hearings than unsecured creditors).

28.     In fact, courts in this Circuit have repeatedly denied motions to transfer chapter 11 proceedings even where a substantial group of creditors were located in the movant's proposed forum. *See In re LaGuardia*, 316 B.R. at 841 (denying transfer motion even though majority of debtors' unsecured creditors were located in proposed transferee forum because remaining creditors were scattered throughout the nation and creditors who weighed in on motion opposed transfer); *In re Boston St. Assocs. Ltd. P'ship*, No. 89-14573S, 1990 WL 792 at *1 (Bankr. E.D. Pa. Jan. 5 1990) (denying motion even though debtors' principal secured creditor and "about two-thirds" of unsecured creditors were located in proposed transferee forum because movants failed to provide requisite preponderance of the evidence); *In re Fairfield*, 333 F. Supp. at 1190 (denying transfer motion despite "overwhelming number of all creditors" located in proposed transferee forum because plan of arrangement depended primarily on efforts and activities near chosen forum).

29.     Some of the best judges of "justice" and "convenience" for creditors—the parties to the Restructuring Support Agreement representing tens of billions of dollars of debt across the capital structure of EFH, EFIH, and TCEH—executed a contract explicitly providing that the

Debtors would file for chapter 11 protection in Delaware. *See* Restructuring Support Agreement at 3 ("WHEREAS, the Debtors intend to commence voluntary reorganization cases... under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532, in the United States Bankruptcy Court for the District of Delaware"). This strongly suggests that transfer would be improper. *See In re Boston Street Assocs. Ltd.*, 1990 WL 792, at *2 (denying transfer based in part on the "very significant issue" of major unsecured creditors' opposition to the transfer motion); *see In re Indus. Pollution Control, Inc.*, 137 B.R. at 181 (holding transfer was not appropriate and noting Committee of Unsecured Creditors opposed motion to transfer); *In re Suzanne de Lyon, Inc.*, 125 B.R. at 868 ("Of particular significance is the desire of the two secured banks to keep the case in New York. As the creditors with the most to lose from this bankruptcy, they are the true interested parties in this case and their opinion as to what would be most convenient for them carries great weight....").

### C.    The Location of the Debtors' Assets Does Not Favor Transfer.

30.    Contrary to WSFS's assertion, the location of the Debtors' assets and operations does not weigh in favor of a transfer of venue. WSFS never explains why the location of the Debtors' assets will affect the administration of this case. It will not. Because the restructuring will not involve liquidation of the Debtors' assets and the disputes will center on debt restructuring, the location of the Debtors' assets has little importance. *See In re Enron Corp.*, 274 B.R. at 347 ("The location of the assets is not as important where the ultimate goal is rehabilitation rather than liquidation."); *In re Land Stewards, L.C.*, 293 B.R. 364, 371 (Bankr. E.D. Va. 2002) (location of debtors' assets was "not an important factor" given the goal of rehabilitation rather than liquidation) (internal quotation marks omitted); *see also In re Allied Systems Holdings, Inc.*, No. 12-11564 (CSS), Bench Decision at 55-58 (Bankr. D. Del. May 31, 2012) (denying motion to transfer venue where, among other things, the case was in the form of

rehabilitation through a sale process and not a liquidation). Indeed, courts have routinely denied motions to transfer notwithstanding that much of debtor's assets were in the proposed transferee forum. *See In re Alcorn Corp.*, 2012 WL 2974889 at *3-4 (denying motion to transfer even though the debtor's "primary assets" were located in the transferee forum); *In re Del. & Hudson Ry.*, 96 B.R. at 468 (denying motion to transfer despite acknowledging that the debtor railway company's "seven freight yards and three major equipment repair facilities" as well as "80 percent of [its] main lines and branch lines" were located in the proposed transferee forum); *In re Fairfield Puerto Rico, Inc.*, 333 F. Supp. at 1190 (denying motion to transfer while noting that "[m]ost, if not all, of the physical assets of the debtor-in-possession" were located in the transferee forum); *In re PWS Holding Corp.*, 1998 Bankr. LEXIS 549, at *4-5 (denying motion to transfer to District of Alabama despite corporate headquarters' location in Birmingham, Alabama and operations centered in the Southeast).

31.    The last twenty years of reorganization practice demonstrate that successful chapter 11 reorganizations often occur in courts far away from debtors' corporate headquarters. By way of example, AMR Corporation reorganized in New York even though its headquarters are in Texas; Enron Corp. reorganized in New York despite its headquarters' location in Texas; Lyondell Chemical Company (LyondellBasell) reorganized in New York while its headquarters were in Texas; Calpine Corporation reorganized in New York while its headquarters were in California and, later, Texas; Washington Mutual, Inc. reorganized in Delaware despite headquarters in Seattle, Washington; and Delta Air Lines, Inc. reorganized in New York while its headquarters were in Georgia.[4]

---

[4] *See In re AMR Corp.*, No. 11-15463 (SHL) (Bankr. S.D.N.Y. filed Nov. 29, 2011); *In re Enron Corp.*, No. 01-16034 (AJG) (Bankr. S.D.N.Y. filed on Dec. 2. 2001); *In re Lyondell Chemical Corp.*, No. 09-10023 (REG) (Bankr. S.D.N.Y. filed Jan. 6, 2009); *In re Calpine Corp.*, No. 05-60200 (BRL) (Bankr.

32.     Likewise, that the Debtors' books and records are located in Texas is irrelevant. As recognized by WSFS: "advances in technology create a 'relative measure of seamlessness' between professionals, regardless of their proximity to the proceeding." Mot. to Transfer, ¶ 28. The Debtors will make their financial records available electronically so that they can be reviewed for these proceedings by creditors anywhere in the world. As one court in this district explained,

> [T]echnological advances have substantially reduced the burden of having to litigate in a distant forum…. These technologies have shortened the time it takes to transfer information, reduced the bulk or size of documents or things on which information is recorded and can be transferred and have lowered the cost of moving that information from one place to another.

*Tse v. Ventana Med. Sys., Inc.*, 97-37-SLR, 1997 WL 811566, at *7 (D. Del. Nov. 25, 1997); *see also In re Suzanne de Lyon, Inc.*, 125 B.R. at 868 ("Although the books and records of the company are kept in Houston, these records could easily be transported to New York when needed. Consequently, this factor does not weigh in favor of transfer."); *In re Commonwealth Oil Ref. Co.*, 596 F.2d at 1248 ("Although most of CORCO's original books and records are in Puerto Rico, instant access through CORCO's computer system is available in San Antonio. The fact that the original set is maintained in Puerto Rico, therefore, is of little significance in weighing the relative convenience of the two forums.").

33.     Because all documents are electronic or will be made available in electronic form, and the Debtors' management, employees, and directors will submit to this Court's jurisdiction in connection with the restructuring, the location of witnesses and ease of access to the evidence both support this Court keeping these cases. *See In re Hechinger*, 296 B.R. at 325-26.

---

S.D.N.Y. filed Dec. 20, 2005); *In re Washington Mutual, Inc.*, No. 08-12229 (MFW) (Bankr. D. Del. filed Sept. 26, 2008); *In re Delta Air Lines, Inc.*, No. 05-17923 (ASH) (Bankr. S.D.N.Y. filed Sept. 14, 2005).

**D.    Retention Of Jurisdiction Will Promote Efficient And Economic Administration Of The Estate.**

34.    Retaining jurisdiction in Delaware will also promote the economic and efficient administration of the Debtors' estate. *See In re Commonwealth Oil Ref. Co.*, 596 F.2d at 1247 ("[T]he most important consideration is whether the requested transfer would promote the economic and efficient administration of the estate."). Delaware courts have frequently handled filings by companies in the energy industries, and are accordingly uniquely situated to handle this matter (each of which involved debtors headquartered in other states). *See, e.g., In re Gridway Energy Holdings, Inc.*, No. 14-10833 (CSS) (Bankr. D. Del. Apr. 10, 2014) (located in Massachusetts); *In re Longview Power, LLC*, No. 13-12211 (BLS) (Bankr. D. Del. Aug. 30, 2013) (located in West Virginia); *In re Tri-Valley Corp.*, No. 12-12291 (MFW) (Bankr. D. Del. Aug. 7, 2012) (located in California); *In re AES Eastern Energy, L.P.*, No. 11–14138 (KJC) (Dec. 30, 2011) (located in New York); *In re North Am. Petroleum Corp.*, No. 10-11707 (CSS) (Bankr. D. Del. May 25, 2010) (located in Colorado); *In re Teton Energy Corp.*, No. 09-13946 (PJW) (Bankr. D. Del. Nov. 8, 2009) (located in Colorado); *In re Trident Res. Corp.*, No. 09-13150 (MFW) (Bankr. D. Del. Sept. 8, 2009) (located in Canada); *In re Aventine Renewable Energy Holdings., Inc.*, No. 09-11214 (KG) (Bankr. D. Del. Apr. 7, 2009) (located in Illinois); *In re SemCrude, L.P.*, No. 08-11525 (BLS) (Bankr. D. Del. July 22, 2008) (located in Oklahoma); *In re Distributed Energy Sys. Corp.*, No. 08-11101 (KG) (Bankr. D. Del. June 4, 2008) (located in Connecticut); *In re VeraSun Energy Corp.*, 467 B.R. 757, 760 (Bankr. D. Del. 2012) (located in South Dakota); *In re Reliant Energy Channelview LP*, No. 07-11160 (MFW) (Aug. 20, 2007) (located in Texas); *In re Global Power Equip. Group*, No. 06-11045 (BLS) (Bankr. D. Del. Sept. 28, 2006) (located in Oklahoma). Moreover, because most of the professionals, creditors, and lenders that are necessary for the Debtors to emerge from bankruptcy are located on the East

19

Coast, Delaware is the jurisdiction most likely to promote the efficient administration of these cases.

35.     Nor does WSFS find support in two recent cases that it repeatedly cites: *In re Goldking Holdings, LLC* and *In re DesignLine Corp.*  Unlike the Debtors here, who seek to reorganize and restructure debt, the debtor in *Goldking* hoped to complete a sale process.  *See* Case No. 13-12820 (BLS) at 109:14-19 (D. Del. Nov. 20, 2013).  The location of assets in *Goldking* was thus an important factor in the analysis.  Even so, the court in *Goldking* recognized that "[o]ther than a number of people flying back and forth for hearings from [Texas] I think that experience teaches that a case involving a debtor headquartered somewhere away from Delaware can none the less be administered efficiently given communication advances and information technology . . . ."  Case No. 13-12820 (BLS) at 109:6-13 (D. Del. Nov. 20, 2013).  The *DesignLine* decision is similarly distinguishable; in that case, the choice of venue was "not dictated by the Debtors' business perspective, but was dictated by the secured lenders" so the court granted no deference to the venue choice.  *See* Case No. 13-12089 (MFW) at 75:25-76:7 (D. Del. Sept. 4, 2013).  Here, by contrast, the Debtors not only chose to file in Delaware, but they did so with a partially pre-negotiated deal with the holders of tens of billions of dollars of their debt.

36.     While WSFS argues that Texas courts are relatively less congested than Delaware courts, it relies on a case that also states this factor "is not 'by itself, [] dispositive'"—and it is not even a chapter 11 case.  *In re Apple, Inc.*, 602 F.3d 909, 915 (8th Cir. 2010) (per curium) (citation omitted); *see also Textron Innovations, Inc. v. The Taro Co.,* No. 05-486, 2005 WL 2620196, at *3 (D. Del. Oct. 14, 2005) ("[T]he court is not persuaded that any disparity in court congestion, to the extent there is any, will be so great as to weigh strongly in favor of a

transfer."). In any event, WSFS's docket congestion data are misleading. While several hundred more chapter 11 cases were filed in this Court in 2013 than in the Northern District of Texas, WSFS's source also states that several *thousand* more chapter 7, 12, and 13 cases were filed in the Northern District of Texas during the same time period—14,352 in the Northern District of Texas as compared to only 2,617 in this Court. *See* Mot. to Transfer, Appx. H. Thus, each of "the six judges sitting in the Northern District of Texas" would have been responsible for not only "38.8 chapter 11 cases," Mot. to Transfer, ¶ 31, but also 2,392 other bankruptcy matters. WSFS has not shown that "the requested transfer would promote judicial efficiency." *Id.*

37.    At bottom, this case is analogous to *In re Enron*—another large, complex energy company reorganization. The New York bankruptcy court denied a similar motion to transfer to Texas, explaining that although the Debtors' management and operations were in Texas, keeping the case in New York (where Enron had filed) would best promote efficient administration of the estate:

> Most of the entities and individuals expected to be responsible for the financial restructuring and development of a plan of reorganization in this case are located in New York or have ready access to New York, including most of the Debtors' legal and financial advisors as well as the legal and financial advisors to the Committee and the lenders. Those members of the financial community that provide access to capital necessary to the Debtors' financial restructuring are located in New York. Furthermore, while the Debtors' management and operations are predominantly in Houston, New York is a more convenient location for those responsible for negotiating and formulating a plan of reorganization. The Court finds that New York is the more economic and convenient forum for those whose participation will be required to administer these cases. Accordingly, New York is the location which would best serve the Debtors' reorganization efforts-the creation and preservation of value.

*In re Enron Corp.*, 274 B.R. at 349; *see also In re Garden Manor Assocs., L.P.*, 99 B.R. at 554-55 (denying motion to transfer chapter 11 proceedings where case would turn on Debtor's ability to raise capital to fund a plan of reorganization, to renegotiate loan terms, to locate a purchaser, or to cram down the lender).

E.    **Harm To The Debtors And Other Interested Parties Outweighs Any Alleged Inconvenience To Creditors.**

38.    In light of the locations of the major parties with an interest in the Debtors, and the convenience and proximity of this District for those parties, neither the interest of justice nor the convenience of the parties would be served by transferring this case to Texas. The interests of the estate will be best served by this Court retaining jurisdiction.

39.    Moreover, transferring these cases to Texas would likely delay these cases and thus harm the Debtors. This Court has already invested time and resources learning the facts of and deciding a number of motions in this case, including:

- DIP financing and cash collateral motions at both TCEH and EFIH, *In re Energy Future Holdings Corp., et al.*, Case No. 14-10979 (CSS) [D.I. 71, 74] (Bankr. D. Del. Apr. 29, 2014);

- The Debtors' motion requesting authorization to continue operating their current cash management system, *id.* [D.I. 37];

- The Debtors' motion requesting authorization to pay critical trade vendors that are essential to the debtors' ongoing business operations, *id.* [D.I. 29];

- The Debtors' motion requesting authorization to (i) maintain TXU Energy's Customer Programs and honor prepetition commitments relating to those programs; (ii) pay certain expenses on behalf of the PUC and ERCOT during the chapter 11 cases; (iii) fix the Bar Dates for filing proofs of claims for customer claims; and (iv) establish customer noticing procedures relating to the commencement of the chapter 11 cases, assumption of Customer Agreements, and the bar dates, *id.* [D.I. 31];

- The Debtors' motion requesting authorization to satisfy and continue paying shippers, warehousemen, and materialmen in the ordinary course of business, *id.* [D.I. 27];

- The Debtors' motion requesting authorization, to continue paying all taxes and fees accrued in the ordinary course of business on a post-petition basis and to pay all outstanding prepetition tax obligations accrued in the ordinary course of business up to a certain amount, *id.* [D.I. 23];

- The Debtors' motion requesting authorization to continue performing under various Hedging and Trading Arrangements and to enter into and pledge

collateral regarding new post-petition Hedging and Trading Arrangements, *id.* [D.I. 41];

- The Debtors' motion requesting authorization, to (i) pay certain prepetition wages, salaries, and reimbursable employee expenses; (ii) pay and honor employee and retiree medical and similar benefits; and (iii) continue employee compensation and employee and retiree benefit programs in the ordinary course of business on a post-petition basis and in accordance with prepetition practices, *id.* [D.I. 25];

- The Debtors' motion requesting authorization to pay transition and delivery charges to various transmission and distribution service providers (TDSPs), *id.* [D.I. 38];

- The Debtors' motion to (i) provide adequate protection to various Utility Providers; and (ii) prohibit the utility providers from alerting, refusing, or discontinuing services on account of prepetition invoices, *id.* [D.I. 26]; and

- The Debtors' motion requesting authorization to assume various agreements with the Electric Reliability Council of Texas, Inc., *id.* [D.I. 40].

40.    This Court's learning curve would be lost if the case were transferred. The new judge would need to expend time and effort becoming familiar with the cases, the relief granted to date, and related pending matters. *In re Enron Corp.*, 274 B.R. at 349 (noting that judicial "learning curve" is relevant to requests to transfer venue). This delay has the potential to have a real cost to the estate, as it will lengthen the Debtors' stay in bankruptcy.

41.    While WSFS contends that "the numerous Texas state law issues that will arise in these cases" suggest that Texas courts would have "a shorter learning curve," Mot. to Transfer, ¶ 40, "[i]t is likely that most of the substantive law applied in this case will be federal bankruptcy law, a subject on which bankruptcy judges in every jurisdiction have comparable expertise." *In re Alcorn Corp.*, 2012 WL 2974889, at *4 (noting that "bankruptcy judges regularly apply the law of jurisdictions other than the jurisdiction in which the bankruptcy court is located" and that this "is a by-product of a flexible bankruptcy venue statute...."). Delaware general corporate law also will govern the duties and obligations of many the Debtors' directors, regardless of whether

they located in Texas or on the East Coast, as WSFS well knows.  Any breach of fiduciary claims that WSFS might attempt to bring as a creditor of either EFCH and TCEH—as it has suggested it might do—would be governed by Delaware law.

42.    In arguing that the pendency of lawsuits in Texas involving some of the Debtors favors transfer to Texas, *see* Mot. to Transfer, ¶¶ 33-35, WSFS also cites no legal authority to support that position.  Two of the cases cited involved the mere transfer of litigation to the forum of the bankruptcy proceedings, *see Doss v. Chrysler Grp., LLC*, No. 09-02130, 2009 WL 4730932 (D. Ariz. Dec. 7, 2009); *Brown v. Wells Fargo*, N.A., 463 B.R. 332 (M.D.N.C. 2011), and a third involved transferring an adversary proceeding to a forum where other pending litigation existed, *see Doehler-Jarvis Ltd. P'ship v. U.S. Die Casting & Dev. Co.*, No.92-2206, 1993 WL 96528 (N.D. Ill. Mar. 31, 1993).   The remaining case, *Standard Tank*, is distinguishable; that case was transferred because venue was not proper in the original forum, and the debtors' filing was "[l]argely... a result of its problems with the state of New Jersey"— the transferee forum. *In re Standard Tank Cleaning Corp.*, 122 B.R. 174, 175 (Bankr. E.D.N.Y. 1990).  There are no such allegations here, nor could there be.  Any pending lawsuits against the Debtors represent nothing more than additional potential unsecured claims.

43.    While WSFS suggests the need to transfer is "acute" where a debtor is subject to environmental liability in its home forum, Luminant Generation is involved in only three litigations in Texas involving environmental issues—one of which resulted in a verdict in Luminant Generation's favor after a bench trial where the judge denied all relief requested. *See Sierra Club v. Energy Future Holdings Corp. and Luminant Generation Co., LLC*, Civil Action No. 12-00108 (WSS) [D.I. 273] (W.D. Tex. Feb. 26, 2014).   And Luminant is involved in several other environmental cases pending in the District of Columbia. *See Luminant*

24

*Generation Co., LLC, et al. v. EPA, et al.*, No. 13-1178 (D.D.C. filed May 10, 2013); *Luminant*

*Generation Co., LLC, et al. v. EPA, et al.*, No. 12-1167 (D.D.C. filed Apr. 10, 2012); *Sierra*

*Club, et al. v. EPA, et al.*, No. 13-1014 (D.D.C. filed Jan. 18, 2013). Moreover, Luminant is not

seeking to discharge environmental compliance obligations in this case. Because of the nature of

the restructuring that the Debtors seek, the location of the Debtors' assets, employees, and

businesses in Texas should not impact this Court's decision to retain jurisdiction of these chapter

11 proceedings.

      **F.**     **Delaware's Strong Interest in Cases Involving Its Own Corporations Weighs In Favor of Retaining Jurisdiction.**

     44.    Finally, Delaware has a strong interest in resolving disputes involving Delaware

corporations. Delaware's interest in having local controversies involving Delaware-incorporated

entities decided within its borders, by those familiar with its law, weighs in favor of keeping

these chapter 11 cases in this Court. *In re Hechinger Inv. Co. of Del., Inc.*, 288 B.R. 398, 403

(Bankr. D. Del. 2003). To the extent Texas has an interest, it will be best maintained by the

Debtors' efficient and successful reorganization, which, is more likely to occur in Delaware. *See*

*In re Commonwealth Oil Ref. Co.*, 596 F.2d at 1248 ("Without belittling in the least the extent of

Puerto Rico's interest in CORCO, that interest is served by maintaining CORCO as a functioning

refinery. This can best be accomplished in San Antonio. The troubles of CORCO are financial.

The people who can solve those problems for CORCO are in San Antonio.").

*[Remainder of page intentionally left blank.]*

### Conclusion

The Debtors respectfully request that this Court deny WSFS's motion to transfer venue of these chapter 11 cases to the Northern District of Texas.

Dated: May 8, 2014
       Wilmington, Delaware          **RICHARDS, LAYTON & FINGER, P.A.**
                                     Mark D. Collins (No. 2981)
                                     Daniel J. DeFranceschi (No. 2732)
                                     Jason M. Madron (No. 4431)
                                     920 North King Street
                                     Wilmington, Delaware 19801
                                     Telephone:    (302) 651-7700
                                     Facsimile:    (302) 651-7701
                                     Email:        collins@rlf.com
                                                   defranceschi@rlf.com
                                                   madron@rlf.com

                                     -and-

                                     **KIRKLAND & ELLIS LLP**
                                     Richard M. Cieri (admitted *pro hac vice*)
                                     Edward O. Sassower, P.C. (admitted *pro hac vice*)
                                     Stephen E. Hessler (admitted *pro hac vice*)
                                     Brian E. Schartz (admitted *pro hac vice*)
                                     601 Lexington Avenue
                                     New York, New York 10022-4611
                                     Telephone:    (212) 446-4800
                                     Facsimile:    (212) 446-4900
                                     Email:        richard.cieri@kirkland.com
                                                   edward.sassower@kirkland.com
                                                   stephen.hessler@kirkland.com
                                                   brian.schartz@kirkland.com

                                     -and-

                                     James H.M. Sprayregen, P.C. (admitted *pro hac vice*)
                                     Chad J. Husnick (admitted *pro hac vice*)
                                     Steven N. Serajeddini  (admitted *pro hac vice*)
                                     300 North LaSalle
                                     Chicago, Illinois 60654
                                     Telephone:    (312) 862-2000
                                     Facsimile:    (312) 862-2200
                                     Email:        james.sprayregen@kirkland.com
                                                   chad.husnick@kirkland.com
                                                   steven.serajeddini@kirkland.com

                                     Proposed Co-Counsel to the Debtors and Debtors in Possession

RLF1 10293787v.1