**Exhibit B**

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------- x
In re:                                  :  Chapter 11
                                        :
Energy Future Holdings, Inc., *et al.*, :  Case No. 14-10978 (CSS)
                                        :
                    Debtors.            :  (Jointly Administered)
                                        :
---------------------------------------------------------- x

## DECLARATION OF TODD R. SNYDER

Pursuant to 28 U.S.C. § 1746, I, Todd R. Snyder, hereby declare as follows under penalty of perjury:

1.  I am Executive Vice Chairman of North American Global Financial Advisory and the Co-Chair of the North American Debt Advisory and Restructuring Group at the financial advisory and investment banking firm of Rothschild Inc. ("**Rothschild**"), which has its principal office at 1251 Avenue of the Americas, 51st Floor, New York, New York 10020. I respectfully submit this Declaration in support of the Emergency Motion of EFIH 2nd Lien Notes Indenture Trustee to Compel Debtors to Obtain Prior Approval of Procedures Governing Their 2nd Lien Tender Offer (the "**Motion**").

2.  Rothschild is one of the country's leading investment banks with expertise in mergers and acquisitions, restructurings and other financial advisory services. Rothschild has extensive experience representing the interests of debtors, creditors and institutional investors in business restructurings and workouts both in and out of chapter 11, and in representing clients in a wide range of industries.

KL2 2846219.2

\

3. I have advised companies regarding restructurings and reorganizations for approximately 26 years. I have worked with companies in a wide range of industries providing advice regarding restructurings, reorganizations, workouts, and a variety of other transactions, including exchange offers, financing transactions, mergers, divestitures and management-led buyouts.

4. Among my positions prior to joining Rothschild, I was a Managing Director at the investment banking firm of Peter J. Solomon Company and a Managing Director at KPMG in the Corporate Recovery Group. I also previously practiced law in the Business Reorganization department of Weil, Gotshal & Manges LLP. I received a J.D. from the University of Pennsylvania Law School and an undergraduate degree from Wesleyan University. A copy of my professional biography is attached hereto as **Exhibit 1**.

5. On September 4, 2013, a group of holders (the "**Ad Hoc Group**") of 2nd lien notes (the "**EFIH 2nd Lien Notes**") issued by Energy Future Intermediate Holding Company LLC and EFIH Finance Inc. (jointly, the "**Company**") retained Rothschild as its financial advisor and investment banker and Kramer Levin Naftalis & Frankel LLP ("**Kramer Levin**") as its counsel in connection with the potential financial restructuring of the Company.

6. On April 25, 2014, at the request of holders of a majority of the EFIH 2nd Lien Notes, including members of the Ad Hoc Group, Computershare Trust Company, N.A. and Computershare Trust Company of Canada as successor trustee for the EFIH 2nd Lien Notes (the "**Indenture Trustee**"), retained Kramer Levin as its special counsel and Rothschild as its financial advisor and investment banker in connection with this case, effective April 18, 2014

I. **NEGOTIATIONS WITH THE COMPANY**

7. As part of our prepetition work for the Ad Hoc Group, Kramer Levin and Rothschild attempted to engage with the Company on a number of occasions to discuss a

\

consensual restructuring of the Company's debt, including the EFIH 2nd Lien Notes. These efforts included proposals to consensually resolve disputes regarding the treatment of the make-whole premium provided for in the EFIH 2nd Lien Notes indenture. They also included an offer to provide postpetition financing for the Company.

8.  Although Rothschild and Kramer Levin had a number of conversations with advisors for the Company, the Company never entered into serious negotiations with the Ad Hoc Group. The Company did not ask any substantive questions about our DIP proposal, and we never had substantive discussions with the Company on a proposed make-whole settlement.

9.  Following the Petition Date, we have continued to try to engage the Debtors in discussions on restructuring proposals, including settling the make-whole to no avail.

10. For the past few weeks, I have been working with members of the Ad Hoc Group to propose an alternative DIP financing to the EFIH 2nd Lien DIP financing that is currently contemplated under the RSA. The proposed terms of this alternative DIP are attached as **Exhibit 2** to this declaration.

## II.    THE TENDER OFFER

11. As set forth in the Motion, the Debtors' Tender Offer forces creditors to reach a critically important economic decision on an extremely compressed time-frame. While the Debtors claim to give creditors ten business days to tender their notes in order to receive the Total Consideration (as defined in the Tender Offer materials), as a practical matter the time allowed is even shorter. I understand that the institutions holding bonds generally require at least two to three business days advanced notice to ensure that bond tenders are received by the stated deadline. In particular, a holder may hold its EFIH 2nd Lien Notes at a broker who lends them out. If the holder wishes to tender its notes, the broker has to "buy them back" – which, under normal procedures for settling securities transactions, generally takes three business days.

3

12. Based on my analysis of the Debtors' agreement with Fidelity, it is my belief that a significant portion of Fidelity's recovery under the RSA – including its commitment fee under the EFIH 1st Lien DIP, the payment it will receive upon the closing of the EFIH 2nd Lien DIP, and the enhanced recovery it will receive on its Legacy Notes – actually relates to the 2nd Lien Settlement of the make-whole. Absent sufficient discovery, it is not possible to state exactly how much Fidelity is in fact receiving on account of its 2nd Lien make-whole claim, other than to say that it is significantly more than is being offered to other holders. In my opinion, this fact – and the exact economic terms of Fidelity's deal – would be material to a reasonable investor considering whether to accept the settlement proposal embodied in the Tender Offer.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing statements are true correct.

Executed on May 14, 2014       By: *Todd Snyder*
                                   Todd R. Snyder
                                   Senior Managing Director
                                   Rothschild Inc.

**Exhibit 1**

**TODD R. SNYDER**

  Todd R. Snyder is an Executive Vice Chairman of North American GFA and Co-Chair of the North American Debt Advisory and Restructuring Group of Rothschild Inc., a leading international investment banking and financial advisory firm.  He is also a Commissioner for The New York Gaming Commission and a member of New York State's Financial Restructuring Board for Local Governments.  Todd has been an advisor to companies in restructurings and reorganizations for twenty-six years.  He has been instrumental in a diverse selection of complex transactions including reorganizations, restructurings, financings, spinoffs, workouts, exchange offers, mergers, divestitures and management led buyouts.

  Todd has advised companies in a range of industries.  Representative assignments include, advising United Airlines, YRC Worldwide, Solutia, Tronox, Syncora Holdings Ltd., OCA, Comdisco, Security Capital Assurance, Ltd., Tekni-plex, Federal Mogul, AK Steel, The FINOVA Group, Zenith Electronics, Dow Corning, Special Metals Corporation, Visteon Corporation, Emerald Casino, Wheeling Pittsburgh Steel, GAF Corp., Recycling Industries, Great American Recreation, Merrill Corporation, Globe Manufacturing, Global Aviation, Arcapita Bank and Nebraska Book.

  In addition, Todd has advised creditors in significant matters including a monoline insurer in the bankruptcy of the City of Detroit, the official committee of trust preferred security holders in First Place Financial Corp., secured creditors of TXU, UBS in the context of Finish Line – Genesco, the bondholders in ORBCOMM Global, the subordinated convertible debtholders in Adelphia Communications, RMBS, municipal and infrastructure holders of financial guaranty claims in FGIC and the official committees of unsecured creditors in Sea Launch and Metromedia International Group as well as the PBGC in Northwest Airlines, Entergy Corporation's proposed nuclear energy spinoff, Tower Automotive and across the auto and healthcare industries.  Todd has also advised two administrations with respect to the reorganization of the automobile industry (including General Motors, Chrysler and Adam Opel) and has been a Global Co-Head of Rothschild's Automotive Industry Sector.  Todd was named co-lead negotiator by Governor Cuomo to lead New York State's renegotiation of its public sector union contracts.  He was named "2009 Rainmaker of the Year" by Institutional Investor and "2010 Restructuring Investment Banker of the Year" by Global M&A Network and was recognized by the Turnaround Management Association (TMA) for Restructuring Deal of the Year 2012.

  Before joining Rothschild, Todd was a Managing Director in the Restructuring and Reorganization group at Peter J. Solomon Company.  Prior to joining Peter J. Solomon Company, Todd was a Managing Director at KPMG Peat Marwick in the Corporate Recovery group where he was also National Director of the Corporate Recovery Practice for Government Enterprises (regulated and privatizing industries).  Todd has also run his own advisory and investment firm, Hesperus Advisors, specializing in recapitalizations and workouts.  Prior to his move to investment banking, Todd practiced law in the Business Reorganization department of Weil, Gotshal & Manges.

  Todd graduated with honors from Wesleyan University where he serves on the President's Council.  He received a Juris Doctor from the University of Pennsylvania Law School where he was a senior editor of the Journal of International Business Law and a Co-Chairman of the Committee on Academic Responsibility.  He was Co-Chairman of the ABI New York Bankruptcy Conference.  Todd has been an adjunct professor at New York University Law School and New York University Leonard N. Stern School of Business and speaks frequently on reorganization related topics.  He co-authored *The Patronus Technique:  A Practical Proposal for Asbestos Driven Bankruptcies (*Journal of Bankruptcy Law and Practice – Volume 11); *Asbestos Prepackaged Bankruptcies: Apply the Brakes Carefully and Retain Flexibility for Debtors* (ABI Law Review – Volume 13.801) as well as *The busted spinoff:  lessons for directors* (published in Navigating in Today's Environment: The Directors' and Officers' Guide to Restructuring) and has been visiting lecturer at the London Business School in the Masters in Finance Program and the University of Chicago Graduate School of Business.  Todd was a member of the Study Panel on Science, Security and Prosperity in a Changing World at the National Academies of Science.  Todd currently serves as a trustee for non-profit organizations BRC (f/k/a Bowery Residents Committee) and Shining Hope for Communities. He also is a member of the steering committee of NYC Bankruptcy Assistance Project (NYC BAP).  Todd formerly served as a director of GenCorp Inc. (NYSE: GY) and AMC Financial, Inc. (NASDAQ)

**Todd R. Snyder Speaking Engagements:**


**Benjamin N. Cardozo School of Law – March 21, 2011**
The Heyman Center on Corporate Governance
*Topic:  Perspective Is Bankruptcy a Viable Solution to the States' Fiscal Crisis?*

**J.P. Morgan High Yield & Leverage Finance Conference – March 1, 2011**
*Topic:  Municipal & Sovereign Restructuring – Implications for the Broader Market*

**17th Annual Distressed Investing Conference – November 29, 2010**
Renaissance American Management Inc. & Beard Group
*Topic:  Investment Bankers' Roundtable:  The Wall of Debt: or "Amend, Pretend & Extend"*

**J.P. Morgan Auto Conference – August 10, 2010**
*Topic:  Distressed/Restructuring Panel*

**Chicago CFO Roundtable – March 4, 2010**
Cushman & Wakefield
*Topic:  Diamonds in the Rough: Opportunities & Traps in Acquiring Distressed Companies*

**Mergers & Acquisitions:  What You Need to Know Now 2009 – San Francisco – October 9, 2009**
Practicing Law Institute (PLI)
*Topic: Acquisitions of Distressed Businesses*

**Mergers & Acquisitions:  What You Need to Know Now 2009 – Chicago - September 25, 2009**
Practicing Law Institute (PLI)
*Topic: Acquisitions of Distressed Businesses*

**11th Annual New York City Bankruptcy Conference – May 4, 2009**
American Bankruptcy Institute
*Topic:  DIP and exit financing alternatives after the credit freeze*

**2009 DBR Restructuring and Turnaround Summit – February 12, 2009**
News Corp. and Dow Jones
*Topic:  "The Call for Rescue Financing:  Will It Be Answered In 09?"*

**Fifteenth Annual Conference on Distressed Investing - November 18, 2008**
Renaissance American Management Inc. & Beard Group
*Topic:  Overcoming the Challenges of Reorganizing a Company with Environmental Liabilities*

**82nd Annual National Conference of Bankruptcy Judges – September 26, 2008**
*Topic:  "Feasibility:  Delphi, Dura and Solutia: The Impact of DIP Loans, Exit Financing and Emerging from Chapter 11"*

**Turnaround Management Association Webinar Series – September 24, 2008**
*Topic:  "Emerging Trends from the Current Credit Market Crisis"*

**2008 Dow Jones Private Equity Analyst Conference – September 16, 2008**
*Topic:  To the Rescue?  How are Lenders Looking At And Dealing With Troubled Companies?*

**Todd R. Snyder Speaking Engagements:**

**Master Class on P.E. Investing in Distressed Companies - How to Pick Out the Slightly Bruised Apples From the Truly Rotten Ones – April 24, 2008**
The Capital Roundtable
*Introductory Keynote Speaker:  "Debt Be Not Proud….or....Life After Debt?*

**Third Annual Perspectives in Corporate Restructuring Conference – April 9, 2008**
The Samuel & Ronnie Heyman Center for Corporate Governance
*Topic:  Utilizing Chapter 11 to Maximize Value and Emerge as a Successful Enterprise: The Solutia Case Study*

**Ninth Annual New York Bankruptcy Conference - May 7, 2007**
American Bankruptcy Institute
*Topic:  Holding Co./Operating Company Ethical Issues in Large Chapter 11's*

**Third Annual Nuts N' Bolts Conference – October 27, 2006**
University of Chicago School of Business
*Topic:  Restructuring & Advisory from Creditor/Debtor Perspectives*

**Eighth Annual New York Bankruptcy Conference - May 8, 2006**
American Bankruptcy Institute
*Topic:  Ethics: Conflicts and Conflicts Counsel; Debtor's Counsel and Management Duties in Multiple-Company Cases*

**Harvard Turnaround Symposium – February 23, 2006**
*Topic:  Anatomy of a Deal:  United Airlines*

**Wall Street Forum: Asbestos – February 9, 2006**
LexisNexis
*Topic:  Due Diligence:  Doing Your Homework When Evaluating Companies at Risk*

**Twelfth Annual Conference on Distressed Investing - November 28, 2005**
Renaissance American Management Inc. & Beard Group
*Topic:  Late Breaking News*

**Benjamin N. Cardozo School of Law - November 14, 2005**
Kirkland & Ellis LLP Restructuring Symposium
*Topic:  Perspective on the Role & Impact of Hedge Funds in Corporate Restructuring*

**Turnaround Management Association 2005 Annual Convention - October 21, 2005**
*Topic:  Airline Industry Restructuring:  An Industry Update*

**VALCON: Legal and Financial Perspectives on Business Valuations and Restructuring – March 4, 2005**
University of Texas School of Law and AIRA
*Topic:  Current Developments and Future Prospects:  Assessing the Airline Industry's Wager on its Future*

**Mealey's Asbestos Bankruptcy Conference – December 6, 2004**
*Topic:  Wall Street Perspective on Asbestos Bankruptcies*

**Eleventh Annual Conference on Distressed Investing – November 29, 2004**
Renaissance American Management Inc. & Beard Group
*Topic:  Valuation Workshop:  Distressed Airlines*

**Todd R. Snyder Speaking Engagements:**


**International Corporate, Project and Debt Restructuring: Cutting Edge Issues and Problems - June 21, 2004**
Northwind Professional Institute
*Topic:  Getting good advice on the financial options: the role of investment bankers in international restructurings*

**Visiting Lecturer at the London Business School in the Masters in Finance Program –
June 2, 2004**
*Topic:  Summary of Chapter 11 process*

**Sixth Annual New York Bankruptcy Conference - May 17, 2004**
American Bankruptcy Institute
*Topic:  Buying and Selling Assets in Bankruptcy*

**Sixth Annual Conference on Corporate Reorganization - June 20, 2003**
Renaissance American Management Inc.
*Topic:  Asbestos Redux*

**Advanced Bankruptcy Seminar- June 13, 2003**
Chicago Bar Association
*Topic:  Valuation Issues in Bankruptcy*

**International Law & Practice Spring Meeting - May 9, 2003**
American Bar Association
*Topic:  Restructuring of International Projects and Companies:  The role of Lawyers and Bankers*

**Fifth Annual New York Bankruptcy Conference -May 5, 2003**
American Bankruptcy Institute
*Topic:  Challenges to structuring and obtaining airline DIP financing*

**22nd Annual Ray Garrett Jr. Corporate and Securities Law Institute- April 12, 2002**
Northwestern University School of Law
*Topic:  Purchasing a company of uncertain solvency or from a bankruptcy estate*

**Distressed Debt Summit 2001 – September 10, 2001**
Institute for International Research
*Topic:  A multi-perspective look at ad hoc bondholder committees*

**Exhibit 2**

# EFIH Second Lien DIP

|  | **RSA Second Lien DIP term sheet (4/29/2014)** | **EFIH Second Lien Committee DIP term sheet [DRAFT]** |
|---|---|---|
| **Issuer** | ■ EFIH and EFIH Finance | ■ Same |
| **Guarantors** | ■ Each direct and indirect wholly owned domestic restricted subsidiary of the Company formed or acquired after the Closing Date. There will be no guarantors on the closing date of the EFIH Second Lien DIP Notes Financing | ■ Same |
| **Arranger** |  | ■ JP Morgan |
| **Securities Offered** | ■ $1.9 billion aggregate principal amount in three tranches of <u>8%</u> Convertible Second Lien Subordinated Secured DIP Financing Tranche A Notes due 2016 | ■ $1.9 billion aggregate principal amount of <u>[7]%</u> Convertible Second Lien Subordinated Secured DIP Financing Notes due 2016<br>■ Ability to upsize DIP amount in a manner consistent with the currently proposed Second Lien DIP<br>■ All Second Lien Holders will have the right to participate in the Second Lien DIP financing (including Fidelity) pro rata based on ownership of Second Lien Notes |
| **Automatic Conversion** | ■ The EFIH Second Lien DIP Notes, subject to certain conditions, will automatically convert on the Effective Date into shares of Reorganized EFH Corp. common stock constituting approximately <u>64%</u> of the shares of common stock of Reorganized EFH Corp | ■ The EFIH Second Lien DIP Notes, subject to certain conditions, will automatically convert on the Effective Date into shares of Reorganized EFH Corp. common stock constituting approximately <u>[62]%</u> of the shares of common stock of Reorganized EFH Corp<br>■ Warrants to be issued to EFIH Unsecured Creditors – [TBD] |
| **Interest Rate** | ■ <u>8%</u> per annum, plus:<br>– Additional 4% if the Bankruptcy Court does not approve the Oncor TSA Amendment within 90 days after the commencement of the Chapter 11 cases, or July 28, 2014<br>– Additional 10% PIK fee if the Bankruptcy Court does not approve the Oncor TSA Amendment by April 29, 2015 | ■ <u>[7]%</u> per annum |



# EFIH Second Lien DIP

| | RSA Second Lien DIP term sheet (4/29/2014) | EFIH Second Lien Committee DIP term sheet [DRAFT] |
|---|---|---|
| **Interest Payment Dates** | ■ Interest will be payable on the final business day of each fiscal quarter, beginning on the final business day of the fiscal quarter following the closing date of the EFIH Second Lien DIP Notes Financing | ■ Same |
| **Default Interest** | ■ During the continuance of an event of default (as defined in the note purchase agreement), overdue amounts on the EFIH Second Lien DIP Notes will bear interest at an additional 2% per annum | ■ Same |
| **Maturity Date** | ■ The date that is the earliest to occur of (i) the 24-month anniversary of the Closing Date, (ii) the effective date of the Chapter 11 Plan, (iii) the consummation of a sale of substantially all of the Borrowers' assets or stock under section 363 of the Bankruptcy Code or (iv) the acceleration of the Second Lien DIP Notes and termination of any then outstanding commitments in accordance with the terms of the EFIH Second Lien DIP Financing | ■ Same |
| **Optional Prepayment** | ■ The Issuer may prepay the EFIH Second Lien DIP Notes subject to customary notice periods and a prepayment fee of <u>$380 million</u> (which payment may be waived upon the written consent of holders of at least 50.1% of the outstanding commitments and/or exposure under the EFIH Second Lien DIP Notes Financing (the "Required Note Purchasers") in their sole discretion; provided, however, that the Required Note Purchasers may not waive such prepayment fee with respect to the EFIH Second Lien DIP Tranche A-3 Notes) | ■ <u>$[75] million</u> to the Backstop Parties in the event holdings of the Backstop Parties fully prepaid<br>■ No prepayment fee to Non-Backstop Parties |
| **Security and Priority** | ■ The EFIH Second Lien DIP Notes are secured on a second-priority <u>priming</u> basis by EFIH's grant of a lien on the Collateral securing the EFIH First Lien DIP Facility, including all of the membership interests and other investments it owns or holds in Oncor Holdings | ■ The EFIH Second Lien DIP Notes are secured on a second-priority <u>non-priming</u> basis by EFIH's grant of a lien on the Collateral securing the EFIH First Lien DIP Facility, including all of the membership interests and other investments it owns or holds in Oncor Holdings |
| **Representations and Warranties** | ■ Customary representations and warranties (subject to usual exceptions and materiality qualifiers) | ■ Same |



# EFIH Second Lien DIP

| | RSA Second Lien DIP term sheet (4/29/2014) | EFIH Second Lien Committee DIP term sheet [DRAFT] |
|---|---|---|
| **Covenants** | ■ Customary affirmative and negative covenants (subject to baskets and materiality exceptions), consistent with those found in the EFIH First Lien DIP Facility including the following covenants:<br>– Covenants restricting intercompany loans or investments by or to the Company or its guarantor subsidiaries to or by other subsidiaries;<br>– Covenants restricting liens, investments, sale leasebacks, restricted payments, asset sales, transactions with affiliates, events and actions in the bankruptcy proceeding and indebtedness, subject to certain baskets;<br>– A financial covenant requiring the Borrowers to have unrestricted cash in excess of $127.5 million at all times | ■ Same |
| **Events of Default** | ■ The note purchase agreement will contain Events of Default (other than cross default to material postpetition indebtedness, but will include a cross acceleration to material post-petition indebtedness), subject to materiality exceptions and qualifications and grace periods, consistent with those found in the EFIH First Lien DIP Facility, subject to a 15% cushion | ■ Same |
| **Oncor TSA Amendment** | ■ Interest Rate subject to incremental step-up based on:<br>– Additional <u>4%</u> if the Bankruptcy Court does not approve the Oncor TSA Amendment within 90 days after the commencement of the Chapter 11 cases, or July 28, 2014<br>– Additional <u>10%</u> PIK fee if the Bankruptcy Court does not approve the Oncor TSA Amendment by April 29, 2015 | ■ Debtor shall have the flexibility, based on exercise of its business judgment and fiduciary duties, to seek approval of the Oncor TSA Amendment or maintain the Oncor TSA as currently in place |
| **Transfer Restrictions** | ■ The Issuer will not register the EFIH Second Lien DIP Notes under the Securities Act or any state or other securities laws. The EFIH Second Lien DIP Notes will be subject to restrictions on transfer and may only be offered or sold in accordance with the terms of the note purchase agreement and in transactions exempt from, or not subject to, the registration requirements of the Securities Act or pursuant to an effective registration statement | ■ Same |

**Sources** Summary of EFIH Second Lien DIP Notes (Docket No. 363, Exhibit A); Restructuring Support Agreement (Docket No. 98, Exhibit D)



# EFIH Second Lien DIP

| | RSA Second Lien DIP term sheet (4/29/2014) | EFIH Second Lien Committee DIP term sheet [DRAFT] |
|---|---|---|
| **Conditions to Consummation** | ■ Various | ■ Same with appropriate adjustments relating to change in financing parties |
| **Alternative Transaction Fee** | ■ Subject to entry of the Approval Order, if EFIH enters into definitive documentation with respect to a reorganization, restructuring, merger, consolidation, share exchange, rights offering, equity investment, business combination, recapitalization or similar transaction (including the sale of all or substantially all of the assets of EFH, EFIH, or any other Debtor) involving EFIH on equal or better terms and conditions for EFIH than those contemplated in the Restructuring Support Agreement and the Term Sheet, the Debtors shall pay an amount in cash equal to <u>3%</u> of $1.9 billion to the Initial Commitment Parties | ■ Same except Debtors shall pay an amount in cash equal to <u>[1.5]%</u> of $1.9 billion to the Backstop Parties |
| **Enhancements to Creditor Settlements** | | ■ First Lien Settlement enhancement [TBD]<br>■ Second Lien Settlement enhancement [TBD] |
| **Modification to Second Lien Tender Offer** | | ■ Eliminate the step-down in consideration for tenders made after the first 10 business days of the tender period<br>■ Hold tender offer open until July 8, 2014<br>■ Eliminate certain additional fees being paid to certain parties that are not being made available to all Second Lien Holders |
| **Additional Financing Fees** | ■ Funding PIK Fee to Commitment Parties: 5.0%<br>■ Execution Fee to Commitment Parties: 0.46%<br>■ Approval Fee to Commitment Parties: 0.54%<br>■ Funding Cash Fee to Commitment Parties: 1.0%<br>■ Participation Rights Fee to Fidelity: $11.25 million (0.59%)<br>■ Arranger fees to GSO and Avenue: $2.0 million (0.11%)<br>■ Settlement Premium to GSO, York and Avenue: $1.57 million (0.08%)<br>■ Arrangement Payment to Centerview Partners: $5.0 million (0.26%)<br>■ Advance Payment to Centerview Partners and Akin Gump: $3.675 million (0.19%) | ■ Funding PIK Fee to Backstop Parties: [4.0]%<br>■ Funding Cash Fee to Backstop Parties: [1.0]%<br>■ Payment of all Second Lien Indenture Trustee professional fees<br>■ Payment of fees to JP Morgan as Agent and Arranger |

**Sources** Summary of EFIH Second Lien DIP Notes (Docket No. 363, Exhibit A); Restructuring Support Agreement (Docket No. 98, Exhibit D)

