# EXHIBIT A



ROPES & GRAY LLP
1211 AVENUE OF THE AMERICAS
NEW YORK, NY 10036-8704
WWW.ROPESGRAY.COM

May 13, 2014

**BY ELECTRONIC MAIL AND COURIER:**

Stephen E. Hessler, Esq.
Kirkland & Ellis LLP
601 Lexington Avenue
New York, NY 10022

Re:   Tender Offer Commenced on May 7, 2014

Dear Stephen:

We represent CSC Trust Company of Delaware, in its capacity as indenture trustee (the "Trustee") under the first lien indenture, dated as of August 17, 2010 (the "10% Indenture") and August 14, 2012 (the "6.875% Indenture" and, together with the 10% Indenture, the "Indentures") pursuant to which Energy Future Intermediate Holding Company LLC ("EFIH") and EFIH Finance Inc. issued the 10.000% Senior Secured Notes Due 2020 (the "10% Notes") and the 6.875% Senior Secured Notes Due 2017 (the "6.875% Notes" and, together with the 10% Notes, the "EFIH First Lien Notes" or the "Notes," and the holders of such Notes, the "First Lien Holders"), respectively.

We write in reference to (i) the tender offer commenced by the Debtors on May 7, 2014 for the EFIH First Lien Notes (the "Tender Offer") and (ii) the materials issued by the Debtors in connection with the Tender Offer, including, without limitation, the Information Memorandum filed with the bankruptcy court as Docket No. 363 (the "Information Memorandum") and the Letter of Transmittal attached to the Information Memorandum (the "Letter of Transmittal" and, together with the Information Memorandum, the "Tender Offer Documents").

The Trustee has been directed in writing by the majority of the holders of the 10% Notes, on May 9, 2014, (i) to enforce the payment of the make-whole redemption premium through litigation in the bankruptcy court and (ii) to object to both the alleged "first lien settlement" and alleged "second lien settlement", including the Tender Offer designed to effectuate such settlements, and to contest the motions in bankruptcy court pursuing the foregoing. We write pursuant to this direction solely in the Trustee's capacity as Trustee for the 10% Notes.

ROPES & GRAY LLP

Stephen E. Hessler, Esq.                      - 2 -                         May 13, 2014

## I. The Substance and Structure of This Tender Offer Is Not Permitted By The Bankruptcy Code.

This Tender Offer, as structured, is not permitted under the Bankruptcy Code.

Despite the bankruptcy of EFIH, and the Bankruptcy Code's goal of like treatment for similarly situated creditors, the Tender Offer provides for several different levels of payment on legally identical claims. Thus, the Tender Offer is in violation of both the Bankruptcy Code and longstanding bankruptcy principles. See Begier v. IRS, 496 US 53, 58 (1990) ("Equality of distribution among creditors is a central policy of the Bankruptcy Code."); Sampsell v. Imperial Paper & Color Corp., 313 US 215, 219 (1941) ("[T]he theme of the Bankruptcy Act is equality of distribution."); In re Combustion Engineering, Inc., 391 F.3d 190, 241-42 (3d Cir. 2004) (reversing confirmation of plan where pre-petition settling creditors received greater payment than other similarly situated creditors).

There are at least four types of unequal payouts of similarly situated creditors contained in the Tender Offer:

- First, the early tender period gives holders which tender early higher payouts than those who do not. The Tender Offer expires on June 6, 2014. Holders who tender on or prior to May 19, 2014 receive interests in a new DIP Financing equal to 105% of their principal amount of EFIH First Lien Notes, while those who tender after this date receive only 103.25%. The amount over 100% is purportedly in settlement of these Holders' make-whole claims, so the amount of the purported settlement drops 35%, from 5% to 3.25%.

- Second, the settlement percentage payment on make-whole claims arising out of the 10% Indenture is dramatically lower than the settlement percentage payment on the same claims arising under the 6.875% indenture. The make-whole on the 10% Notes is nearly 20% of their principal amount, while the make-whole on the 6.875% Notes is approximately 8% of their principal amount, so the 5% purported settlement represents roughly 25% and 62%, respectively, of the amount of these claims. Moreover, the settlement percentage payment on the 10% Notes make-whole is also significantly less than what is being offered to holders of EFIH Second Lien Notes – 50% – pursuant to a recently-filed cash tender offer for those EFIH Second Lien Notes.

- Third, the settlement consideration paid to the holders that have already agreed to the EFIH First Lien Settlement (as defined in the Tender Offer Documents; such holders, the "RSA Holders") is higher than that being paid to the other tendering holders because (i) the RSA Holders (identified at the first-day hearing as Fidelity and PIMCO) hold an undisclosed portion of EFIH First Lien Notes issued under the 6.875% Indenture, (ii) the RSA Holders are receiving additional "financing" fees (including fees to exchange debt they already own) under the Debtors' Restructuring Support Agreement (the "RSA") which constitute additional settlement consideration and (iii) Fidelity receives consideration under the RSA

ROPES & GRAY LLP

Stephen E. Hessler, Esq.                   - 3 -                      May 13, 2014

for other securities in the Debtors' capital structure, some of which appears to be attributable to the surrender of its claim for the first lien make-whole.

- Fourth, since the offer is only available to "eligible" holders (basically, "qualified institutional buyers" under Rule 144A under the Securities Act of 1933, as amended), there is automatic disparate treatment between those holders who are "eligible" and those who are not. Importantly, the majority of the EFIH First Lien Notes have been the subject of public offerings, and this means that certain "public" holders are excluded from participating in the purported settlement of the make-whole claims.[1]

**II. The Disclosures In the Information Memorandum Are Incomplete, Misleading, and Inadequate.**

Even if the Tender Offer in its current form were permitted by the Bankruptcy Court, the disclosure in the Tender Offer Documents is legally deficient, which both does injury to holders of the EFIH First Lien Notes and creates potential administrative claims against the Debtors' estates. This disclosure violates section 1125 of the Bankruptcy Code and, we believe, does not meet the requirements of Rule 10b-5 promulgated under the Securities Act of 1934 based on the material misstatements and/or omissions in the Tender Offer Documents and the lack of "adequate information" therein. The Trustee has no duty to correct the Debtors' disclosures, and assumes no such duty hereby, but nonetheless calls to your attention the following non-exclusive list of deficiencies (and incorporates herein any additional description of these deficiencies, or others, referenced in court pleadings filed or to be filed by the Trustee solely in its capacity under the 10% Indenture):

1.      The Tender Offer repeatedly refers to the "settlement" of the claims of First Lien Holders for the make-whole redemption premium specified in the Indentures. But the Tender Offer Documents make no mention of the size of such premium, which First Lien Holders are required to waive in the exchange, as of the expected closing date of the Tender Offer. The Trustee calculates that the premium due under the 10% Notes is nearly 20% of the outstanding principal amount of the 10% Notes. The Tender Offer Documents do not describe the Debtors' alleged grounds for contesting the validity of the premium or even admit the possibility of responses or counterarguments of the Trustee. The Debtors merely state that they "expect to initiate litigation" seeking to disallow the premium, without any discussion of the merits. Thus the Tender Offer Documents do not give the holders of the EFIH First Lien Notes sufficient information to judge the reasonableness of the "settlement" and whether or not they should accept it.

2.      The Tender Offer Documents do not disclose the much higher percentage payment being made to settle the make-whole claims of the 6.875% Notes, when compared with the percentage payment made to settle such claims arising from the 10% Notes. By the Trustee's initial calculation (assuming the amounts available under the Tender Offer Documents are only in respect of the

---

[1] The 10% Notes issued as CUSIP 29269QAK3 are not registered.

ROPES & GRAY LLP

Stephen E. Hessler, Esq.            - 4 -            May 13, 2014

redemption premium and not in respect of additional interest or other claims arising under the Indentures and other secured debt documents governing the EFIH First Lien Notes), the make-whole claims under the 6.875% Indenture are being paid at roughly 62% of the contractual entitlement, while the make-whole claims under the 10% Indenture are being paid at only 25% of their contractual entitlement.

3.      The Information Memorandum does not disclose the amounts of notes issued under the 6.875% Indenture held by the RSA Holders.

4.      The Information Memorandum does not disclose the amounts of fees to be paid to the RSA Holders under the transactions contemplated by the RSA, or show how high the percentage settlement is for those RSA Holders, if some or all of such other RSA consideration were acknowledged as being in respect of the make-whole premium in respect of the First Lien Notes.

5.      The Information Memorandum does not disclose the significant rights available in respect of the EFIH First Lien Notes under the Collateral Trust Agreement, dated as of November 16, 2009, by and among EFIH, the Trustee, as Successor Trustee, and the other Secured Debt Representatives party thereto. Nor does the Information Memorandum reveal that the settlement consideration offered to holders of second lien notes of EFIH may be the subject of litigation seeking escrow and turnover of cash that the Debtors seek to pay to holders of second lien notes, since the make-whole premium in respect of the First Lien Notes will not have been paid in full in cash.

6.      The Information Memorandum does not adequately describe the "EFIH First Lien Settlement" to which the Letter of Transmittal binds tendering holders.

7.      The Tender Offer Documents refer to the Debtors seeking to purchase each Holder's "claim" in certain instances, rather than such Holder's First Lien Notes. However, the Holders only own the First Lien Notes, while the claims are asserted by the Trustee under the terms of the Indentures. The requested release of claims by Holders conflicts with section 6.12 of the Indentures, which provides that proofs of claim with respect to the Indentures and the First Lien Notes are to be filed by the Trustee.

Further, given the course of negotiations concerning the contemplated transactions, it appears that these deficiencies may be knowing and intended by the Debtors. The Tender Offer Documents appear to have been structured by the Debtors so as to mislead investors to participate in the Tender Offer, at a price that is both too low in absolute terms, and gives participating Holders lesser treatment than that given to those who cut special deals for themselves in prepetition negotiations.

The Trustee respectfully requests that the Debtors withdraw the Tender Offer until (i) the Tender Offer Documents are amended to include necessary disclosures, including, without limitation, the disclosure discussed above and (ii) the bankruptcy court approves the Tender Offer and associated Tender Offer Documents.

ROPES & GRAY LLP

Stephen E. Hessler, Esq.        - 5 -        May 13, 2014

The Trustee reserves all of its rights with respect to the Tender Offer, under the Indentures and associated documents, and otherwise.

Regards,

Keith H. Wofford


cc: CSC Trust Company of Delaware
2711 Centerville Road
Wilmington, DE 19808
Attn: Sandra E. Horwitz