## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | Chapter 11 |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | Case No. 14-10979 (CSS) |
| Debtors. | (Jointly Administered) |
|  | **Objection Deadline: May 29, 2014 at 4:00 p.m.** |
|  | **Hearing Date: June 5, 2014 at 9:30 a.m.** |

## MOTION OF ENERGY FUTURE HOLDINGS CORP., *ET AL.*, FOR ENTRY OF AN ORDER ESTABLISHING PROCEDURES TO SELL, TRANSFER, OR ABANDON CERTAIN *DE MINIMIS* ASSETS

The above-captioned debtors and debtors in possession (collectively, the "Debtors") file

this motion (this "Motion") for entry of an order, substantially in the form attached hereto as

**Exhibit A** (the "Order"), establishing procedures enabling Texas Competitive Electric Holdings

Company LLC and its direct and indirect Debtor subsidiaries (collectively, the

"TCEH Debtors")[2] to sell, transfer, or abandon certain obsolete, excess, burdensome, or non-core

---

[1]    The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, for which joint administration has been granted on an interim basis, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

[2]    The TCEH Debtors are composed of: Texas Competitive Electric Holdings Company LLC, 4Change Energy Company, 4Change Energy Holdings LLC, Big Brown 3 Power Company LLC, Big Brown Lignite Company LLC, Big Brown Power Company LLC, Collin Power Company LLC, Decordova Power Company LLC, Decordova II Power Company LLC, Eagle Mountain Power Company LLC, Generation MT Company LLC, Generation SVC Company, Lake Creek 3 Power Company LLC, Luminant Big Brown Mining Company LLC, Luminant Energy Company LLC, Luminant Energy Trading California Company, Luminant ET Services Company, Luminant Generation Company LLC, Luminant Holding Company LLC, Luminant Mineral Development Company LLC, Luminant Mining Company LLC, Luminant Renewables Company LLC, Martin Lake 4 Power Company LLC, Monticello 4 Power Company LLC, Morgan Creek 7 Power Company, NCA Resources Development Company LLC, Oak Grove Management Company LLC, Oak Grove Mining Company LLC, Oak Grove Power Company LLC, Sandow Power Company LLC, TCEH Finance, Inc., Tradinghouse 3 & 4 Power Company LLC, Tradinghouse Power Company LLC, TXU Energy Retail Company LLC, TXU Energy Solutions Company LLC, TXU Retail Services Company, TXU SEM Company, Valley NG Power Company LLC, and Valley Power Company LLC.

assets with a *de minimis* value, without the need for further Court approval.[3]  In support of this Motion, the Debtors respectfully submit as follows.

## Jurisdiction and Venue

1.      The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Debtors consent pursuant to rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Bankruptcy Rules") to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The bases for the relief requested in this Motion are sections 105(a), 363, 365, and 554 of title 11 of the United States Code (the "Bankruptcy Code") and rules 2002 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## Relief Requested

4.      By this Motion, the Debtors seek entry of an Order, establishing procedures enabling the TCEH Debtors to: (a) implement expedited procedures (the "Asset Sale Procedures") to sell certain obsolete, excess, burdensome, or non-core assets owned by the

---

[3]    For the avoidance of doubt, this Motion does not request any relief with respect to, or affect the rights, duties, or obligations of, any Debtors other than the TCEH Debtors.

TCEH Debtors with a sale price of up to $15 million (the "De Minimis Assets"),[4] free and clear of all liens, claims, interests, and encumbrances (collectively, the "Liens"), without the need for further court approval; (b) implement expedited procedures (the "Asset Abandonment Procedures") to abandon certain De Minimis Assets to the extent that a sale or transfer thereof cannot be consummated; and (c) pay necessary fees and expenses incurred in connection with the sale or abandonment of De Minimis Assets.

### Background

5.      On April 29, 2014 (the "Petition Date"), each of the Debtors filed a voluntary petition with the Court under chapter 11 of the Bankruptcy Code.  The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  The Court has entered an interim order for joint administration of these chapter 11 cases.  The Court has not appointed a trustee.  The Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") formed an official committee of unsecured creditors in these chapter 11 cases on May 13, 2014 [D.I. 420].  Further information regarding the Debtors' business operations and capital structure is set forth in the First Day Declaration.

**I.      The De Minimis Assets.**

6.      As part of their ongoing operations, the TCEH Debtors routinely sell De Minimis Assets, which include scrap materials, equipment, real property, and other miscellaneous assets that are obsolete, burdensome, or of little or no usable value to the TCEH Debtors' estates.  All of the De Minimis Assets are owned by the TCEH Debtors, and substantially all of these assets

---

[4]    Unless otherwise noted, references to sales prices in this Motion are stated net of estimated removal costs and fees, appraisal fees, broker fees, and other related expenses.

are collateral for the Debtors' prepetition and postpetition secured creditors.[5]    Accordingly, substantially all of the De Minimis Assets are encumbered by Liens, including DIP Liens, Prepetition First Priority Liens, and Prepetition Second Priority Liens (each as defined in the TCEH DIP Motion).

> ### A.    Mining and Generation Scrap.

7.    The TCEH Debtors' mining activities produce scrap materials, as do the TCEH Debtors' disassembly of obsolete power generating units.    The TCEH Debtors frequently schedule scrap sales and pickups to ensure that debris and excess materials are cleared from the TCEH Debtors' operating sites.    With respect to scrap metal derived from obsolete power generating facilities, such as gas thermal plants, boilers, and turbines, it is typically necessary to disassemble the obsolete equipment and sell the scrap before construction on the replacement facilities can begin.    The TCEH Debtors use the proceeds of scrap sales to defray the costs of removing such scrap, with any excess proceeds being used to fund the TCEH Debtors' ongoing operations.

8.    In addition to the opportunity costs associated with lost coal and electricity production that cannot commence until scrap is removed, delays in selling and hauling away the mining and generating scrap can pose health and safety risks to the TCEH Debtors' employees and surrounding communities.    The TCEH Debtors estimate that over the next twelve months,

---

[5]    As discussed in the *Motion of Texas Competitive Electric Holdings Company LLC and Certain of its Debtor Affiliates, For Entry of Interim and Final Orders (A) Approving Postpetition Financing, (B) Granting Liens and Providing Superpriority Administrative Expense Claims, (C) Modifying the Automatic Stay, and (D) Scheduling a Final Hearing* [D.I. 73] (the "TCEH DIP Motion"), substantially all of the TCEH Debtors' assets constitute (a) the Prepetition Collateral for the Prepetition First Lien Creditors and Prepetition Second Lien Creditors (each as defined in the TCEH DIP Motion) and (b) the DIP Collateral for the DIP Agent, on behalf of itself, the DIP Lenders, the DIP L/C Issuers, the Secured Hedge Banks, and the Secured Cash Management Banks (each as defined in the TCEH DIP Motion).

they will pay approximately $3 million to dispose of mining and generation scrap, net of approximately $10 million of proceeds from the sale of such scrap.

**B.    Property, Plant, Equipment and Other Miscellaneous Assets.**

9.    The TCEH Debtors are currently in possession of machinery, equipment, tools, supplies, fixtures, office furniture, and other miscellaneous assets that are outdated, nonfunctioning, unused, or more costly to repair or refurbish than to sell or abandon.  These De Minimis Assets may have some residual value in the hands of third parties, but if retained by the TCEH Debtors would create unnecessary maintenance or carrying costs.  The TCEH Debtors also own real property that is no longer suitable or necessary for their operations, including reclaimed mining land and land related to electricity generation plants that are no longer in service.  The TCEH Debtors estimate that they will sell approximately $5 million of real property over the next twelve months, of which approximately $800,000 relates to the sale of used land at a discontinued generation plant site to non-Debtor affiliate Oncor Electric Holdings Company LLC ("Oncor").  Additionally, the TCEH Debtors grant certain mineral rights, water rights, easements, and other property rights to third parties to the extent such rights are no longer necessary for the TCEH Debtors' operations.

10.    Continuing to sell, transfer, or abandon De Minimis Assets during these chapter 11 cases will eliminate the cost of maintaining nonessential property and will generate additional cash to fund ongoing operations, including the purchase or construction of replacement assets.  Given the small value of the De Minimis Assets in relation to the magnitude of the TCEH Debtors' overall operations and the carrying costs associated with many De Minimis Assets, it would be an inefficient use of resources to seek Court approval for individual De Minimis Asset sales or abandonments.  Moreover, the cost and delay associated with seeking Court approval of each sale or abandonment of De Minimis Assets could substantially diminish the economic

5

benefits of the transactions or cause the TCEH Debtors to miss a window of opportunity to dispose of such assets. The TCEH Debtors will only abandon De Minimis Assets to the extent they determine, in their business judgment, that a sale or transfer thereof cannot be consummated at a value greater than the liquidation expense of such assets or where abandonment would be in the TCEH Debtors' best interests. Accordingly, the TCEH Debtors seek authority pursuant to sections 363(b) and 554(a) of the Bankruptcy Code to sell or abandon these assets when appropriate pursuant to the Asset Sale Procedures and the Asset Abandonment Procedures described below.

## II. The Asset Sale Procedures.

11.     The TCEH Debtors propose to implement the following Asset Sale Procedures for the sale or transfer of De Minimis Assets:

(a)     With regard to the sale or transfer of De Minimis Assets in any individual transaction or series of related transactions to a single buyer or group of related buyers with a sale price less than or equal to $1 million:[6]

(i)     the TCEH Debtors are authorized to consummate such transactions if the TCEH Debtors determine in the reasonable exercise of their business judgment that such sales are in the best interests of their estates, without further order of the Court or notice to any party;

(ii)     any such transactions shall be deemed final and fully authorized by the Court and free and clear of Liens with such Liens attaching only to the sale proceeds with the same validity, extent, and priority as immediately prior to the transaction; and

(iii)     good faith purchasers of such assets shall be entitled to the protections of section 363(m) of the Bankruptcy Code

---

[6]     For purposes of these Asset Sale Procedures, sale price shall refer to the proceeds to be received by the TCEH Debtors or their estimate of such proceeds, as applicable, on account of any sale transaction net of removal costs, appraisal fees, broker fees, and other related expenses.

(b)     With regard to the sale or transfer of De Minimis Assets in any individual transaction or series of related transactions to a single buyer or group of related buyers with a sale price greater than $1 million and less than or equal to $15 million:

    (i)     the TCEH Debtors are authorized to consummate or authorize such transactions, as applicable, if the TCEH Debtors determine in the reasonable exercise of their business judgment that such sales are in the best interests of their estates, without further order of the Court, subject to the procedures set forth herein;

    (ii)     the TCEH Debtors shall, at least ten (10) calendar days prior to closing, effectuating, or authorizing such sale or transfer, give written notice of such sale or transfer substantially in the form attached as **Exhibit 1** to **Exhibit A** attached hereto (each notice, a "Sale Notice") to (a) the U.S. Trustee and (b) any of the following parties that are affected by such sale or transfer: (i) counsel to any official committee of unsecured creditors appointed in these chapter 11 cases; (ii) counsel to any creditor asserting a Lien on the relevant assets; (iii) those parties requesting notice pursuant to Bankruptcy Rule 2002; (iv) counsel to the agent for the TCEH debtor-in-possession financing facility; and (v) counsel to the ad hoc committee of TCEH first lien creditors (collectively, the "Sale Notice Parties");

    (iii)     the content of the notice sent to the Sale Notice Parties shall consist of: (a) identification of the assets being sold or transferred; (b) identification of the TCEH Debtor(s) that directly own such assets; (c) identification of the purchaser of the assets; (d) the purchase price and terms of payment, including the cash and other consideration to be paid by the purchaser; (e) the marketing or sales process, including any commissions to be paid to third parties used to sell or auction the assets; (f) the significant terms of the sale or transfer; (g) a statement as to whether the assets are encumbered or unencumbered; and (h) the identities of any known parties holding or asserting Liens in the relevant assets;

    (iv)     if no written objection by any of the Sale Notice Parties is received by Debtors' counsel or filed with this Court within ten (10) calendar days of the date of such notice (the "Sale Objection Deadline"), the TCEH Debtors are authorized to immediately consummate such sale or transfer;

    (v)     if the terms of a proposed sale or transfer are materially amended after transmittal of the Sale Notice but prior to the Sale Objection Deadline, the TCEH Debtors will send a revised Sale Notice to the Sale Notice Parties.  The Sale Objection Deadline will be extended

7

such that the Sale Notice Parties will have an additional five calendar days to object in accordance with the Asset Sale Procedures;

(vi)     if a written objection by a Sale Notice Party is received by Debtors' counsel by the Sale Objection Deadline and such objection cannot be resolved by the Sale Objection Deadline, the Sale Notice Party shall file the objection with this Court and such assets shall only be sold upon withdrawal of such written objection or further order of the Court;

(vii)    any such transactions shall be free and clear of all Liens with such Liens, if any, attaching only to the sale proceeds with the same validity, extent, and priority as had attached to such assets immediately prior to the transaction;

(viii)   the TCEH Debtors shall not commingle the proceeds from the sale of unencumbered assets with encumbered cash;

(ix)     good faith purchasers of assets shall be entitled to the protections of section 363(m) of the Bankruptcy Code; and

(x)      commencing on July 1, 2014, and every month thereafter, the Debtors shall file a report with the Court listing all assets sold or transferred pursuant to the Asset Sale Procedures for the preceding month, including the names of the purchasing parties and the sale price for each such transaction. The Debtors' obligations to file such reports pursuant to this Order shall terminate thirty (30) days after confirmation of a plan of reorganization.

## III.    Asset Abandonment Procedures.

12.    To the extent the TCEH Debtors are unable to sell De Minimis Assets, the TCEH Debtors seek authority to abandon De Minimis Assets with a book value as recorded in the Debtors' books and records of $15 million or less in accordance with the following procedures (the "Asset Abandonment Procedures"):

(a)     the TCEH Debtors shall, at least ten (10) calendar days prior to abandonment of De Minimis Assets, give written notice of such abandonment substantially in the form attached as **Exhibit 2** to **Exhibit A** attached hereto (each notice, an "<u>Abandonment Notice</u>") to (a) the U.S. Trustee and (b) any of the following parties that are affected by such abandonment: (i) counsel to any official committee of unsecured creditors appointed in these chapter 11 cases; (ii) counsel to any creditor asserting a Lien on the relevant assets; (iii) those parties requesting notice pursuant to Bankruptcy Rule 2002; (iv) counsel to the agent for the TCEH debtor-in-possession financing facility; and (v) counsel to the ad hoc committee of TCEH first lien creditors (collectively, the "<u>Abandonment Notice Parties</u>");

(b)     the Abandonment Notice shall: (i) contain a description in reasonable detail of the assets to be abandoned; (ii) identify the TCEH Debtor(s) that directly own such assets; (iii) set forth the TCEH Debtors' reasons for such abandonment; (iv) identify the entity to which the assets are being abandoned (if any); and (v) identify any known parties holding or asserting Liens or other interests in the relevant assets.

(c)     if no written objection by any Abandonment Notice Party is received by Debtors' counsel or filed with this Court within ten (10) calendar days of service of such Abandonment Notice (the "<u>Abandonment Objection Deadline</u>"), the TCEH Debtors may immediately proceed with the abandonment;

(d)     if the terms of a proposed abandonment are materially amended after transmittal of the Abandonment Notice but prior to the Abandonment Objection Deadline, the TCEH Debtors will send a revised Abandonment Notice to the Abandonment Notice Parties.  The Abandonment Objection Deadline will be extended such that the Abandonment Notice Parties will have an additional five calendar days to object in accordance with the Asset Abandonment Procedures; and

(e)     if a written objection by an Abandonment Notice Party is received by Debtors' counsel by the Abandonment Objection Deadline and such objection cannot be resolved prior to the Abandonment Objection Deadline, the Abandonment Notice Party shall file the objection with this Court and the relevant assets shall only be abandoned upon withdrawal of such written objection or further order of the Court.

RLF1 10317540v.1

**Basis for Relief**

I.    **The Asset Sale Procedures and Asset Abandonment Procedures are Appropriate and in the Best Interests of the TCEH Debtors' Estates.**

13.     Section 363(b)(1) of the Bankruptcy Code provides, in relevant part, that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."  11 U.S.C. § 363(b)(1).  Bankruptcy courts regularly authorize sales of a debtor's assets if such sale is based upon the sound business judgment of the debtor. *See, e.g.*, *In re Trans World Airlines, Inc.*, No. 01-00056, 2001 Bankr. LEXIS 980 at *29 (Bankr. D. Del. Apr. 2, 2001); *Meyers v. Martin (In re Martin)*, 91 F.3d 389 (3d Cir. 1996); *In re Delaware & Hudson Ry. Co.*, 124 B.R. 169, 176 (D. Del. 1991).

14.     The TCEH Debtors anticipate that they currently possess (or may come into possession of) certain De Minimis Assets that they may desire to sell, transfer, or abandon during the course of these chapter 11 cases.  The Asset Sale Procedures and the Asset Abandonment Procedures will enable the TCEH Debtors to defray or avoid any operational, carrying, storage, or other expenses associated with the De Minimis Assets, protect the TCEH Debtors against the possible declining value of certain De Minimis Assets, and minimize the opportunity costs, as well as any potential health and safety risks, associated with delays in the sale or abandonment of De Minimis Assets.  Moreover, the Asset Sale Procedures will enable the TCEH Debtors to take advantage of sale opportunities that are available only for a limited time, and will monetize otherwise unusable assets and provide additional funds for the TCEH Debtors' operations.

15.     Section 554(a) of the Bankruptcy Code provides that "[a]fter notice and a hearing, the trustee may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value [and benefit] to the estate."  11 U.S.C. § 554(a).  The TCEH Debtors expect to take all reasonable steps to sell De Minimis Assets that are no longer beneficial to their

operations.  The costs associated with sales of certain De Minimis Assets, however, may exceed the anticipated proceeds of such De Minimis Asset sales.  The inability to consummate a commercially reasonable sale of De Minimis Assets would indicate that these assets have no meaningful monetary value to the TCEH Debtors' estates.  Further, the costs of storing and maintaining such De Minimis Assets may burden the TCEH Debtors' estates.  In such circumstances, the abandonment of De Minimis Assets pursuant to the Abandonment Procedures is in the best interests of the TCEH Debtors' estates.

16.    Accordingly, the Asset Sale Procedures and Asset Abandonment Procedures are in the best interests of the TCEH Debtors' estates, their creditors, and other parties in interest and should be approved.  In light of the demonstrable benefits of streamlined procedures to sell or abandon *de minimis* assets, courts in this district have approved similar procedures in large chapter 11 cases.  *See, e.g., In re Visteon Corp.*, No. 09-11786 (Bankr. D. Del. July 16, 2009) (authorizing sales up to $10 million); *In re Flying J, Inc.*, No. 08-13384 (Bankr. D. Del. Feb. 19, 2009) (authorizing asset sales up to $5 million); *In re Semcrude, L.P.*, No. 08-11525 (Bankr. D. Del. Dec. 28, 2008) (authorizing asset sales up to $100,000); *In re Leiner Health Prods., Inc.*, No 08-10446 (Bankr. D. Del. Apr. 4, 2008) (authorizing sales up to $500,000 and abandonment procedures); *In re Dura Auto. Sys., Inc.*, No. 06-11202 (Bankr. D. Del. Apr. 25, 2007) (approving sales up to $2.5 million and authorizing abandonment procedures); *In re Meridian Auto. Sys.–Composites Operations, Inc.*, No. 05-11168 (Bankr. D. Del. Aug. 11, 2005) (approving sales up to $1 million); *In re Fleming Cos.*, No. 04-10945 (Bankr. D. Del. May 21, 2003) (approving sales up to $6.5 million and authorizing abandonment procedures); *In re Exide*

11

*Tech.*, No. 02-11125 (Bankr. D. Del. May 10, 2002) (authorizing sale procures up to $5 million and authorizing abandonment procedures).[7]

17.     Courts in other districts have also approved procedures similar to the Asset Sale Procedures and Abandonment Procedures in the chapter 11 cases of large energy companies. *See*, *e.g.*, *In re Edison Mission Energy*. No. 12-49219 (Bankr. N.D. Ill Jan. 17, 2013) (authorizing sales up to $5 million and abandonment procedures); *In re Calpine Corp.*, No. 05-60200 (Bankr. S.D.N.Y. Mar. 1, 2006) (authorizing sales up to $15 million); *In re Nat'l Energy & Gas Trans., Inc.*, No. 03-30459 (Bankr. D. Md. Dec. 09, 2003) (authorizing sales of *de minimis* assets up to $200,000); *In re Mirant Corp.*, No. 03-46590 (Bankr. N.D. Tex. Oct. 1, 2003) (authorizing sales not to exceed $150,000 and abandonment of certain assets not to exceed $50,000); *In re NRG Energy, Inc.* No. 03-13024 (Bankr. S.D.N.Y. May 19, 2003) (authorizing sales up to $2 million and abandonment procedures).

## II.    The Court Should Approve the De Minimis Asset Sales Free and Clear of Liens Under Section 363(f) of the Bankruptcy Code.

18.     Section 363(f) of the Bankruptcy Code permits a debtor to sell property free and clear of another party's interest in such property if:  (a) applicable nonbankruptcy law permits such a free and clear sale; (b) the holder of the interest consents; (c) the interest is a lien and the sales price of the property exceeds the value of all liens on the property; (d) the interest is in bona fide dispute; or (e) the holder of the interest could be compelled in a legal or equitable proceeding to accept a monetary satisfaction of its interest.  11 U.S.C. § 363(f).

19.     The TCEH Debtors propose to sell or transfer the De Minimis Assets in a commercially reasonable manner, and expect that the value of the proceeds from such sales or

---

[7]    Because of the voluminous nature of the orders cited herein, such orders have not been attached to the Motion. Copies of these orders are available upon request to the Debtors' proposed counsel.

transfer will fairly reflect the value of the property sold.  Pursuant to the Asset Sale Procedures, any party with a Lien on De Minimis Assets sold or transferred shall have a corresponding security interest in the proceeds of such sale or transfer with the same validity, extent, and priority as immediately prior to the transaction.  Moreover, the TCEH Debtors propose that if a party in interest fails to timely object to a De Minimis Asset sale consistent with the Asset Sale Procedures, such party shall be deemed to "consent" to such De Minimis Asset sale within the meaning of section 363(f)(2) of the Bankruptcy Code.  As such, the requirements of section 363(f) of the Bankruptcy Code would be satisfied for any proposed sales or transfers free and clear of liens, claims, encumbrances and other interests.

**III.    De Minimis Asset Sales Should Be Entitled to the Protections of Bankruptcy Code Section 363(m).**

20.    Section 363(m) of the Bankruptcy Code provides in relevant part that the reversal or modification on appeal of an authorization under section 363(b) of a sale or lease of property does not affect the validity of a sale or lease under such authorization to a purchaser who bought or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.  11 U.S.C. § 363(m).  The Third Circuit has held that:  "The requirement that a purchaser act in good faith . . . speaks to the integrity of [purchaser's] conduct in the course of the sale proceedings.  *In re Abbotts Dairies of Pa., Inc.*, 788 F.2d 143, 147 (3d Cir. 1986) (internal citations omitted).

21.    The TCEH Debtors submit that any agreement that results in the sale of De Minimis Assets will be an arm's-length transaction entitled to the protections of section 363(m), and the TCEH Debtors request that section 363(m) be deemed to apply to each sale of De Minimis Assets in accordance with the Asset Sale Procedures.

RLF1 10317540v.1

**IV.   Approval of Proposed De Minimis Asset Sales and Abandonments on Shortened and Limited Notice Is Appropriate.**

22.    The notice and hearing requirements contained in sections 363(b)(1) and 554(a) are satisfied if appropriate notice and an opportunity for a hearing are provided in light of the particular circumstances. *See* 11 U.S.C. § 102(1)(A) (defining "after notice and a hearing" to mean such notice and an opportunity for a hearing "as [are] appropriate in the particular circumstances"). Moreover, "a requirement of 'notice and a hearing' really means notice and *the opportunity for* a hearing . . . the Bankruptcy Code is explicit in defining 'after notice and a hearing' as 'authorizing an act without an actual hearing if such notice is given properly' *and* no interested party requests a hearing." *Morlan*, 298 F.3d 609 at 618 (7th Cir. 2002) (citing 11 U.S.C. § 102(1)(B)) (emphasis in original).

23.    Generally, Bankruptcy Rules 2002(a)(2) and 2002(i) require debtors in possession to provide a minimum of 21 days' notice by mail of proposed sales of property outside the ordinary course of business to "the debtor, the trustee, all creditors and indenture trustee" as well as any committee appointed under section 1102 of the Bankruptcy Code. *See* Bankruptcy Rule 2002(a)(2), 2002(a)(i). Courts are authorized to shorten the 21-day notice period generally applicable to asset sales, or to direct another method of giving notice, upon a showing of "cause." *See* Bankruptcy Rule 2002(a)(2). Moreover, courts are authorized to limit notice of asset sales outside of the ordinary course of a debtor's business, even without a prior showing of cause, to any official committee appointed under section 1102 of the Bankruptcy Code and any creditor or equity holder requesting notice. *See* Bankruptcy Rule 2002(i). [8]

---

[8]    Bankruptcy courts are guided by fundamental notions of procedural due process when determining whether notice is appropriate under the circumstances. *See, e.g., In re Boomgarden*, 780 F.2d 657, 661 (7th Cir. 1985). Due process requires that any notice is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Gates v. City* (Continued…)

24.     The proposed Asset Sale Procedures and Asset Abandonment Procedures provide all interested parties with sufficient notice and an opportunity to object.   Moreover, the procedures provide that if an interested party objects to a proposed sale or abandonment, the TCEH Debtors may not proceed with such De Minimis Asset disposition without seeking Court approval and providing the objecting party an opportunity for a hearing.   Because the Asset Sale Procedures and Asset Abandonment Procedures are reasonably calculated to provide interested parties notice, an opportunity to object and, if necessary, a hearing, the proposed procedures satisfy applicable due process standards.   Therefore, the TCEH Debtors propose to streamline the process and shorten the applicable notice periods as described in the Asset Sale Procedures and Asset Abandonment Procedures.

### Waiver of Bankruptcy Rules 6004(a) and 6004(h)

25.     To implement the foregoing successfully, the Debtors seek a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the 14-day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h).

### Notice

26.     The Debtors shall provide notice of this Motion on the date hereof via first class mail to:  (a) the Office of the U.S. Trustee for the District of Delaware; (b) the entities listed on the Consolidated List of Creditors Holding the 50 Largest Unsecured Claims filed pursuant to Bankruptcy Rule 1007(d) and proposed counsel thereto; (c) Wilmington Trust, N.A., in its capacity as administrative agent under the TCEH first lien credit agreement and collateral agent under the TCEH intercreditor agreements and counsel thereto; (d) Bank of New York Mellon

---

*of Chicago*, 623 F.3d 389, 401 (7th Cir. 2010) (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)); *see also Drexel Burnham Lambert Grp., Inc. v. Claimants Identified on Schedule I (In re Drexel Burnham Lambert Grp., Inc.)*, 995 F.2d 1138, 1144 (2d Cir. 1993).

15

Trust Company, N.A., in its capacity as indenture trustee under: (i) the TCEH unsecured pollution control revenue bonds; and (ii) the EFCH 2037 Notes due 2037, and counsel thereto; (e) American Stock Transfer & Trust Company, LLC, in its capacity as indenture trustee under: (i) the 9.75% EFH senior unsecured notes due 2019; (ii) the 10.0% EFH senior unsecured notes due 2020; (iii) the 10.875% EFH LBO senior unsecured notes due 2017; (iv) the 11.25%/12.0% EFH LBO toggle notes due 2017; (v) the 5.55% EFH legacy notes (series P) due 2014; (vi) the 6.50% EFH legacy notes (series Q) due 2024; and (vii) the 6.55% EFH legacy notes (series R) due 2034, and counsel thereto; (f) Computershare Trust Company, N.A. and Computershare Trust Company of Canada, in their capacities as indenture trustee under: (i) the 11.0% EFIH senior secured second lien notes due 2021; and (ii) the 11.75% EFIH senior secured second lien notes due 2022, and counsel thereto; (g) UMB Bank, N.A. in its capacity as indenture trustee under: (i) the 9.75% EFIH senior unsecured notes due 2019; and (ii) the 11.25%/12.25% EFIH senior toggle notes due 2018, and counsel thereto; (h) BOKF, NA, dba Bank of Arizona, in its capacity as indenture trustee under 11.50% TCEH senior secured notes due 2020, and counsel thereto; (i) CSC Trust Company of Delaware in its capacity as indenture trustee under: (i) the 6.875% EFIH senior secured notes due 2017; and (ii) the 10.0% EFIH senior secured notes due 2020, and counsel thereto; (j) Law Debenture Trust Company of New York in its capacity as indenture trustee under: (i) the 10.25% TCEH senior unsecured notes due 2015; and (ii) the 10.50%/11.25% TCEH senior toggle notes due 2016, and counsel thereto; (k) Wilmington Savings Fund Society, FSB in its capacity as indenture trustee under the 15.0% TCEH senior secured second lien notes due 2021, and counsel thereto; (l) counsel to certain holders of claims against the Debtors regarding each of the foregoing described in clauses (c) through (k); (m) the agent for the TCEH debtor-in-possession financing facility and counsel thereto; (n) the agent for

16

the EFIH debtor-in-possession financing facility and counsel thereto; (o) counsel to certain holders of equity in Texas Energy Future Holdings Limited Partnership; (p) counsel to the Ad Hoc Committee of TCEH Unsecured Noteholders; (q) counsel to the Ad Hoc Committee of TCEH Second Lien Noteholders; (r) counsel to Oncor; (s) the Securities and Exchange Commission; (t) the Internal Revenue Service; (u) the Office of the United States Attorney for the District of Delaware; (v) the Office of the Texas Attorney General on behalf of the Public Utility Commission of Texas; (w) counsel to the Electric Reliability Council of Texas; and (x) the applicable Sale Notice Parties.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

### No Prior Request

27.    No prior request for the relief sought in this Motion has been made to this or any other court.

*[Remainder of page intentionally left blank.]*

WHEREFORE, the Debtors respectfully request that the Court enter the Order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested in this Motion and granting such other and further relief as is appropriate under the circumstances.

Wilmington, Delaware
Dated:  May 15, 2014

*/s/ Tyler D. Semmelman*                    
**RICHARDS, LAYTON & FINGER, P.A.**
Mark D. Collins (No. 2981)
Daniel J. DeFranceschi (No. 2732)
Jason M. Madron (No. 4431)
Tyler D. Semmelman (No. 5386)
920 North King Street
Wilmington, Delaware 19801
Telephone:    (302) 651-7700
Facsimile:    (302) 651-7701
Email:         collins@rlf.com
                    defranceschi@rlf.com
                    madron@rlf.com
                    semmelman@rlf.com

-and-

**KIRKLAND & ELLIS LLP**
Richard M. Cieri (admitted *pro hac vice*)
Edward O. Sassower, P.C. (admitted *pro hac vice*)
Stephen E. Hessler (admitted *pro hac vice*)
Brian E. Schartz (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022-4611
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900
Email:         richard.cieri@kirkland.com
                    edward.sassower@kirkland.com
                    stephen.hessler@kirkland.com
                    brian.schartz@kirkland.com

-and-

James H.M. Sprayregen, P.C. (admitted *pro hac vice*)
Chad J. Husnick (admitted *pro hac vice*)
Steven N. Serajeddini (admitted *pro hac vice*)
300 North LaSalle
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200
Email:         james.sprayregen@kirkland.com
                    chad.husnick@kirkland.com
                    steven.serajeddini@kirkland.com

Proposed Co-Counsel to the Debtors and Debtors in Possession

18