## EXHIBIT D

**Second Lien DMA**

**EXECUTION COPY**

Energy Future Intermediate Holding Company LLC
EFIH Finance Inc.

Dealer Manager Agreement

May 9, 2014

Citigroup Global Markets Inc.
Deutsche Bank Securities Inc.
Merrill Lynch, Pierce, Fenner & Smith
        Incorporated
Morgan Stanley & Co. LLC
Barclays Capital Inc.
RBC Capital Markets, LLC
Mitsubishi UFJ Securities (USA), Inc.
Evercore Group L.L.C.


c/o    Citigroup Global Markets Inc.
388 Greenwich Street
New York, New York 10013


Ladies and Gentlemen:

Energy Future Intermediate Holding Company LLC, a Delaware limited liability company ("EFIH"), and EFIH Finance Inc. a Delaware corporation ("EFIH Finance"), plan, on the terms and subject to the conditions described in the Offer Material (as defined below), to offer (such offer, as it may be amended from time to time, the "Offer") to purchase any and all of the existing notes shown on Schedule A hereto (the "Existing Notes"), for consideration consisting of, with respect to each $1,000 principal amount of Existing Notes validly tendered in the Offer, the amount of cash consideration shown on the cover page of the Offer to Purchase (as defined herein) (the "Tender Consideration").  The Tender Consideration and the costs and expenses of the Offer are expected to be paid from the net proceeds of the new debt financing that the Company intends to obtain through the issuance of 8% Convertible Second Lien Subordinated Secured DIP Financing Tranche A-1 Notes due 2016, in an aggregate amount, together with cash on hand, that is sufficient to pay the Tender Consideration to each holder of Existing Notes accepted for purchase, on terms and conditions satisfactory to the Offerors in their sole discretion (the "EFIH Second Lien DIP Notes").  Certain of the Dealer Managers and their Affiliates have entered into a commitment letter dated April 28, 2014 related to the EFIH First Lien DIP Facility (the "EFIH DIP Commitment Letter").

On April 29, 2014, Energy Future Holdings Corp. ("EFH") and the substantial majority of its direct and indirect subsidiaries, excluding Oncor Electric Delivery Holdings Company LLC and its subsidiaries, but including EFIH (collectively, the "Reorganizing Entities"), filed voluntary petitions for relief under Chapter 11 of Title 11 ("Chapter 11") of the United States Code, 11

U.S.C. §§101 et. seq. (the "<u>Bankruptcy Code</u>" and the cases involving such petitions, the "Bankruptcy Cases") and are operating their businesses and managing their property as debtors-in-possession pursuant to the Bankruptcy Code.

Pursuant to that certain Restructuring Support and Lock-Up Agreement, dated as of April 29, 2014 (the "<u>Restructuring Support Agreement</u>"), the Offerors are required to obtain the final approval by the U.S. Bankruptcy Court for the District of Delaware (the "<u>Bankruptcy Court</u>") of certain matters described in the Offer to Purchase and to consummate the Offer on or before the 75th day after the Reorganizing Entities filed their voluntary petitions for relief under Chapter 11 of the Bankruptcy Code, or July 13, 2014.

The Offer shall be conducted on the terms and subject to the conditions set forth in (a) the offer to purchase, dated the Commencement Date, including any and all exhibits thereto and any information incorporated by reference therein (as it may be supplemented and amended from time to time, the "<u>Offer to Purchase</u>"), (b) the related letter of transmittal, dated the Commencement Date, to be used by holders of Existing Notes tendering in the Offer (as it may be supplemented and amended from time to time, the "<u>Letter of Transmittal</u>"), (c) any press releases or advertisements, to the extent applicable, expressly related to the Offer and (d) any other written material furnished by or with the written consent of EFIH or EFIH Finance to the holders of the Existing Notes in connection with the Offer (the items in clauses (a) through (d), collectively, the "<u>Offer Material</u>"). The Offer Material sets forth certain information concerning EFIH and EFIH Finance, the Existing Notes and the Offer.  The date on which the Offerors purchase the Existing Notes for the Tender Consideration shall be hereinafter referred to as the "<u>Settlement Date</u>."  This agreement among EFIH and EFIH Finance and each of the Dealer Managers shall be hereinafter referred to as the "<u>Agreement</u>."  This Agreement and the Restructuring Support Agreement are hereinafter referred to collectively as the "<u>Transaction Documents</u>".

The Offer Material has been prepared and approved by EFIH and EFIH Finance and you are authorized to use the Offer to Purchase and the Letter of Transmittal in connection with the Offer delivered on or prior to the date hereof in the manner contemplated by the applicable Offer Material along with such other offering materials and information that EFIH and EFIH Finance may approve for use subsequent to the date hereof in connection with the Offer (together with any and all information and documents incorporated by reference therein, collectively, the "<u>Additional Material</u>").

EFIH and EFIH Finance shall cause to be distributed electronically to each holder of the Existing Notes, as soon as practicable after the Commencement Date, copies of the Offer to Purchase, the Letter of Transmittal and any other applicable Offer Material (other than any press releases or newspaper advertisements relating to the Offer) and any Additional Material (other than any press releases or newspaper advertisements relating to the Offer).  Thereafter, to the extent practicable until the expiration of the Offer, each of EFIH and EFIH Finance shall use its reasonable best efforts to cause copies of such material to be made available upon request to each person who is a beneficial holder of any Existing Notes.

Each of the Dealer Managers hereby agrees that, without the prior written consent of EFIH and EFIH Finance (which consent EFIH and EFIH Finance agree will not be unreasonably withheld),

such Dealer Manager will not hereafter publicly disseminate any written materials to holders of Existing Notes for or in connection with the solicitation of tenders of Existing Notes pursuant to the Offer, other than the Offer Material, any Additional Material, and one or more term sheets relating to the Offer containing customary information, or make any representations to holders of Existing Notes in connection with the solicitation of tenders of Existing Notes pursuant to the Offer, other than as contained in the Offer Material and any Additional Material.

Any references herein to the terms "amend," "amendment" or "supplement" with respect to any of the Offer Material shall be deemed to refer to and include any information contained in an amendment or supplement to such Offer Material, including any press release that refers to the Offer to Purchase, prepared subsequent to the Commencement Date by EFIH and EFIH Finance, and to which the Dealer Managers have been provided an opportunity to review in accordance with the provisions of Section 4(b) hereunder.

    1.   Appointment as Dealer Managers.

    (a)    EFIH and EFIH Finance agree that you will act as the exclusive dealer managers for the Offer in the United States (the "Dealer Managers") in accordance with your customary practices, this Agreement and the terms of the Offer Material and any Additional Material, including without limitation by soliciting tenders in the United States pursuant to the Offer and assisting in the distribution of the Offer Material in the United States. The obligations of each Dealer Manager hereunder are several and not joint.

    (b)    Each Dealer Manager agrees that all actions taken by it as a Dealer Manager have complied and will comply in all material respects with all applicable laws, regulations and rules in the United States, including, without limitation, the applicable rules and regulations of the registered national securities exchanges of which you are a member and of FINRA.

    (c)    Each Dealer Manager, in its sole discretion, may continue to own or dispose of, in any manner it may elect, any Existing Notes it may beneficially own at the date hereof or hereafter acquire, in any such case, subject to applicable law. The Dealer Managers have no obligation to EFIH and EFIH Finance, pursuant to this Agreement or otherwise, to tender or refrain from tendering Existing Notes beneficially owned by it in the Offer. Each Dealer Manager acknowledges and agrees that if the Offer is not consummated for any reason, EFIH and EFIH Finance shall have no obligation, pursuant to this Agreement or otherwise, to acquire any Existing Notes from such Dealer Manager or otherwise to hold such Dealer Manager harmless with respect to any losses it may incur in connection with the resale to any third parties of any Existing Notes.

    (d)    Each of EFIH and EFIH Finance agrees that it will not (i) file, use or publish any material in connection with the Offer, without the prior written consent of the Dealer Managers (such consent not to be unreasonably withheld), and (ii) other than as used in the Offer Material, use the name of any Dealer Manager or refer to any Dealer Manager or their relationship with EFIH or EFIH Finance without the prior written consent of such Dealer Manager (such consent not to be unreasonably withheld), as the

case may be, to the form of such use or reference.  There shall be no fee for any such permitted use or reference other than as set forth herein.

2.  <u>Compensation</u>. The Offerors shall not be required to pay any fee to you in respect of your services as Dealer Managers. The Offerors shall reimburse you, to the extent not covered by the indemnification and expenses provision contained in the EFIH DIP Commitment Letter, but without duplication,  for your reasonable, documented out-of-pocket expenses, including the reasonable fees, costs and out-of-pocket expenses of your counsel for their representation of you in connection therewith, incurred by you in connection with preparing for and performing your services as Dealer Managers pursuant to this Agreement, whether or not the Offer is consummated or otherwise completed as contemplated.  All payments to be made by the Offerors to you pursuant to this Section 2 shall be made promptly after the completion or termination of the Offer.

3.  <u>Representations and Warranties</u>. EFIH and EFIH Finance, jointly and severally, represent and warrant to you as set forth below in this Section 3:

(a)  At the Commencement Date, the Early Tender Date,  and the Settlement Date, the Offer to Purchase and the Offer Material as amended or supplemented at such date (i) complied and will comply in all material respects with all applicable requirements of the laws of those jurisdictions in which the Offer will be made pursuant to this Agreement and (ii) did not and will not contain any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements therein, in the light of the circumstances under which they were made, not misleading; <u>provided</u>, <u>however</u>, that this representation and warranty shall not apply to any statements or omissions made in reliance upon and in conformity with information furnished in writing to EFIH or EFIH Finance by the Dealer Managers expressly for use therein.

(b)  None of EFIH or EFIH Finance is, and after giving effect to the offering, the issuance of the EFIH First Lien DIP Loans and the EFIH Second Lien DIP Financing, and, if applicable, the cancellation of the Existing Notes as described in the Offer to Purchase, none of them will be, an "investment company" as such term is defined in the United States Investment Company Act of 1940, as amended.

(c)  EFIH is subject to and, except with respect to the timing of the filing of its Annual Report on Form 10-K for the year ended December 31, 2013, in compliance in all material respects with the reporting requirements of Section 13 or Section 15(d) of the Exchange Act.

(d)  EFIH and EFIH Finance have not paid or agreed to pay to any person any compensation for (i) soliciting another to purchase any of its securities or (ii) soliciting tenders by holders of Existing Notes pursuant to the Offer (except as contemplated in this Agreement or as described in the Offer to Purchase).

(e)  Prior to the date hereof, none of EFIH or EFIH Finance nor any of their respective Affiliates that are controlled by EFIH or EFIH Finance have taken any action, directly or indirectly, which is designed to or which has constituted or which might have

4

been expected to cause or result, under the Exchange Act or otherwise, in stabilization or manipulation of the price of any security of EFIH or EFIH Finance in connection with the Offer.

(f)     There are no stamp or other issuance or transfer taxes or duties or other similar fees or charges required to be paid in connection with the execution and delivery of this Agreement and the other Transaction Documents, or the solicitation or acceptance of tenders with respect to the Existing Notes.

(g)     Each of EFIH and EFIH Finance has been duly incorporated or formed and is validly existing as a corporation or limited liability company, as applicable, in good standing under the laws of the State of Delaware, as applicable, with power and authority (corporate or limited liability company, as applicable) to own, lease and/or operate its properties and conduct its business as described in the Offer to Purchase, and has been duly registered or qualified as a foreign corporation or limited liability company, as the case may be, for the transaction of business and is in good standing under the laws of each other jurisdiction in which it owns or leases properties or conducts any business so as to require such qualification, except where the failure to so qualify or to be in good standing could not reasonably be expected to result in a material adverse effect upon the business, properties, financial condition, or earnings of EFIH and EFIH Finance and their respective subsidiaries, taken as a whole (a "Material Adverse Effect"); and each subsidiary of EFIH and EFIH Finance, respectively, has been duly incorporated or formed and is validly existing as a corporation, limited partnership or limited liability company, as applicable, in good standing under the laws of its jurisdiction of incorporation, formation or organization.

(h)     As of December 31, 2013, EFIH had an authorized capitalization as set forth in the Offer to Purchase, and all of the issued membership interests of EFIH have been duly and validly authorized and issued and are fully paid and non-assessable; and all of the issued shares of capital stock, membership interests or partnership interests, as the case may be, of each subsidiary of EFIH have been duly and validly authorized and issued, are fully paid and non-assessable, and (except for Oncor Electric Delivery Company LLC and Oncor Management Investment LLC) are owned directly or indirectly by EFIH, free and clear of any security interest, mortgage, pledge, lien, encumbrance or claim ("Liens") and preemptive or similar rights, except for Liens granted to secure the EFIH First Lien DIP Loans and the EFIH Second Lien DIP Financing as described in the Offer to Purchase and for Liens granted under the Pledge Agreement (the "Pledge Agreement") dated as of November 16, 2009 documenting a security interest in the membership interests and other investments that EFIH owns in Oncor Electric Delivery Holdings Company LLC as described in the Offer to Purchase (the "Collateral") and a Collateral Trust Agreement dated November 16, 2009 (the "Collateral Trust Agreement"), among EFIH and CSC Trust Company of Delaware, as trustee, and CSC Trust Company of Delaware, as collateral trustee (the "Collateral Trustee"), and other documents or instruments evidencing or creating or purporting to create a security interest in favor of the Collateral Trustee, (collectively, the "Security Documents") in respect of the 6.875% Senior Secured Notes due 2017 of EFIH and EFIH Finance, the 9.75% Senior Secured Notes due 2019 of EFIH and EFIH Finance,

the 10.000% Senior Secured Notes due 2020 of EFIH and EFIH Finance, the 11% Senior Secured Second Lien Notes due 2021 of EFIH and EFIH Finance and the 11.750% Senior Secured Second Lien Notes due 2022 of EFIH and EFIH Finance (collectively, the "Old Notes").

(i)    The statements set forth in the Offer to Purchase under the heading "Certain United States Federal Income Tax Considerations," insofar as such statements constitute a summary of the legal matters referred to therein, fairly present and summarize, in all material respects, the matters referred to therein; and the statements under the heading "Summary of the Restructuring Support Agreement," insofar as they purport to constitute summaries of the terms of agreements described therein, are accurate in all material respects.

(j)    Other than the Bankruptcy Cases (including any objections filed in connection therewith) or as set forth in the Offer to Purchase, there are no legal or governmental proceedings pending to which EFIH and EFIH Finance or any of their respective subsidiaries are a party or of which any property of EFIH and EFIH Finance or any of their respective subsidiaries is the subject that, if determined adversely to EFIH and EFIH Finance or any of their respective subsidiaries, (i) would individually or in the aggregate reasonably be expected to result in a Material Adverse Effect or (ii) would reasonably be expected to result in a material adverse effect on the performance by EFIH and EFIH Finance of the Transaction Documents, the issuance of the EFIH Second Lien DIP Notes or the consummation of any of the transactions contemplated hereby, thereby or described in the Offer to Purchase, and to the knowledge of each of EFIH and EFIH Finance, no such proceedings are threatened.

(k)    EFIH and EFIH Finance have duly authorized, executed and delivered this Agreement and, assuming due authorization, execution and delivery of this Agreement by the Dealer Managers, this Agreement will constitute a valid and legally binding instrument of EFIH and EFIH Finance, enforceable against EFIH and EFIH Finance in accordance with its terms, subject, as to enforcement, to bankruptcy, insolvency, reorganization and other laws of general applicability relating to or affecting creditors' rights and to general equity principles (whether considered in a proceeding in equity or at law).

(l)    The EFIH Second Lien DIP Financing will have been duly authorized by EFIH and EFIH Finance and, when executed and delivered by EFIH and EFIH Finance (and assuming due authorization, execution and delivery by the lenders named therein), will constitute a valid and legally binding instrument of EFIH and EFIH Finance enforceable against EFIH and EFIH Finance in accordance with its terms subject, as to enforcement, to bankruptcy, insolvency, reorganization and other laws of general applicability relating to or affecting creditors' rights and to general equity principles (whether considered in a proceeding in equity or at law).

(m)    Except for agreements or instruments relating to indebtedness incurred prior to the commencement of the Bankruptcy Cases or as set forth or contemplated in the Offer to Purchase, the issuance of the EFIH Second Lien DIP Notes, the payment of

6

the Tender Consideration and the compliance by each of EFIH and EFIH Finance with all of the provisions of the Transaction Documents to which it is a party and the consummation of the transactions herein and therein contemplated, assuming approval thereof by the Bankruptcy Court, will not conflict with or result in a breach or violation of any of the terms or provisions of, or constitute a default under, any indenture, mortgage, deed of trust, loan agreement or other agreement or instrument to which any of EFIH or EFIH Finance, or any subsidiary of EFIH or EFIH Finance is a party or by which any of EFIH or EFIH Finance or any subsidiary of EFIH or EFIH Finance is bound or to which any of the property or assets of EFIH or EFIH Finance or any subsidiary of EFIH or EFIH Finance is subject, except for such conflicts, breaches, violations or defaults that have been previously waived or could not reasonably be expected to, individually or in the aggregate, result in a Material Adverse Effect; nor will such action result in any violation of (i) the provisions of the Certificate of Incorporation or By-laws or other organizational documents of EFIH or EFIH Finance or any subsidiary of EFIH or EFIH Finance; or (ii) any statute or any order, rule or regulation of any court or governmental agency or body having jurisdiction over any of EFIH or EFIH Finance or any subsidiary of any of EFIH or EFIH Finance or any of their respective properties, except in the case of (ii)  where such violations could not reasonably be expected to, individually or in the aggregate, result in a Material Adverse Effect; and no consent, approval, authorization, order, registration or qualification of or with any such court or governmental agency or body (each, a "Governmental Consent") is required in connection with the conduct and consummation of the Offer or the consummation by EFIH and EFIH Finance of the transactions contemplated in this Agreement and the other Transaction Documents (to which they are a party), except for the Final Order (as defined herein), the DMA Order (as defined herein) and for Governmental Consents, the failure to obtain which would not reasonably be expected to, individually or in the aggregate, result in a Material Adverse Effect.

(n)     The audited consolidated financial statements incorporated by reference in the Offer to Purchase, together with the related notes, present fairly, in all material respects, the consolidated financial position of EFIH and Oncor Electric Delivery Holdings Company LLC ("Oncor Holdings") and their respective subsidiaries as of the dates indicated and the consolidated results of operations and cash flows of EFIH and its subsidiaries and Oncor Holdings and its subsidiaries for the periods specified and have been prepared in all material respects in conformity with United States generally accepted accounting principles applied on a consistent basis during the periods presented (except as otherwise noted therein).

(o)     Deloitte & Touche LLP, which has audited certain financial statements of each of (i) EFIH and its subsidiaries and (ii) Oncor Holdings and its subsidiaries, is an independent registered public accounting firm as required by the Securities Act and the rules and regulations of the Commission thereunder and the Public Company Accounting Oversight Board.

(p)     EFIH and EFIH Finance and their respective subsidiaries have good and marketable title in fee simple to all real property and good and marketable title to all personal property described in the Offer to Purchase as owned by them, in each case free

and clear of all liens, encumbrances and defects except (i) such as are described in the Offer to Purchase, (ii) Liens granted on, or in connection with the sale of, Transition Bonds or Transition Property (each as defined in the Public Utility Regulatory Act ("PURA") contained in the Texas Utilities Code) or in connection with the issuance of, or to secure the payment of, Transition Bonds issued pursuant to PURA or pursuant to a financing order issued by the Public Utility Commission of Texas ("PUCT"), (iii) Liens granted in connection with Oncor's first lien bonds and credit facility, (iv) Liens in favor of CSC Trust Company of Delaware, as collateral trustee for the benefit of the holders of the Old Notes, (v) Liens securing the EFIH First Lien DIP Facility and the EFIH Second Lien DIP Financing or (vi) such as do not materially affect the value of such property and do not materially interfere with the use made and proposed to be made of such property by EFIH and EFIH Finance and their respective subsidiaries; except as described in the Offer to Purchase, any real property, buildings and improvements held under lease by EFIH and EFIH Finance and their respective subsidiaries are held by them under valid, subsisting and enforceable leases, assuming due authorization, execution and delivery by the other parties to such leases, subject, as to enforcement, to bankruptcy, insolvency, reorganization and other laws of general applicability relating to or affecting creditors' rights and to general equity principles (whether considered in a proceeding at equity or at law), with such exceptions as are not material and do not materially interfere with the use made and proposed to be made of such property, buildings and improvements by EFIH and EFIH Finance and their respective subsidiaries.  No assets owned by Oncor Electric Delivery Company LLC have been pledged to support any debt of EFIH and EFIH Finance in violation of the final order in PUCT Docket No. 34077.

(q)     EFH and its subsidiaries, including EFIH, on a consolidated basis (but not including Oncor Holdings and its subsidiaries), maintain a system of internal control over financial reporting (as such term is defined in Rule 13a-15(f) of the Exchange Act) that complies with the requirements of the Exchange Act and has been designed by EFH's principal executive officer and principal financial officer, or under their supervision, to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with United States generally accepted accounting principles. The internal control over financial reporting of EFH is effective, and EFH is not aware of any material weaknesses in its internal control over financial reporting; to the knowledge of EFH and EFIH, Oncor Holdings maintains a system of internal control over financial reporting (as such term is defined in Rule 13a-15(f) of the Exchange Act) that complies with the requirements of the Exchange Act and has been designed by its principal executive officer and principal financial officer, or under their supervision, to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with United States generally accepted accounting principles.  To the knowledge of EFH and EFIH, the internal control over financial reporting of Oncor Holdings is effective, and EFH and EFIH are not aware of any material weaknesses in Oncor Holdings' internal control over financial reporting.

(r)     Since the date of the latest audited financial statements incorporated by reference in the Offer to Purchase, there has been no change in the internal control over

financial reporting of EFH and its subsidiaries, including EFIH, that has materially affected, or is reasonably likely to materially affect, the internal control over financial reporting of EFH and its subsidiaries, including EFIH.

(s)    EFH and its subsidiaries, including EFIH, on a consolidated basis (but not including Oncor Holdings and its subsidiaries), maintain disclosure controls and procedures (as such term is defined in Rule 13a-15(e) of the Exchange Act) that comply with the requirements of the Exchange Act; such disclosure controls and procedures have been designed to ensure that material information relating to EFH and its subsidiaries, including EFIH (but not including Oncor Holdings and its subsidiaries), is made known to EFIH's principal executive officer and principal financial officer, by others within those entities; and such disclosure controls and procedures are effective; to the knowledge of EFH and EFIH, Oncor Holdings maintains disclosure controls and procedures (as such term is defined in Rule 13a-15(e) of the Exchange Act) that comply with the requirements of the Exchange Act; such disclosure controls and procedures have been designed to ensure that material information relating to Oncor Holdings and its subsidiaries, is made known to EFIH's principal executive officer and principal financial officer by others within those entities; and to the knowledge of EFH and EFIH, such disclosure controls and procedures are effective.

(t)    None of EFIH and EFIH Finance or any of their respective subsidiaries are (i) in violation of their Certificate of Incorporation or By-laws or other organizational documents or (ii) in default in the performance or observance of any material obligation, covenant or condition contained in any indenture, mortgage, deed of trust, loan agreement, lease or other agreement or instrument to which it is a party or by which it or any of its properties may be bound, except in connection with clause (ii) as disclosed in the Information Memorandum or in Current Reports on Form 8-K filed by EFIH with the Securities and Exchange Commission or as could not reasonably be expected to result in a Material Adverse Effect.

(u)    EFIH and EFIH Finance and each of their respective subsidiaries maintain insurance covering its respective properties, operations, personnel and businesses as EFIH and EFIH Finance or their respective subsidiaries deem adequate and customary for companies engaged in similar businesses and all such policies are in full force and effect in all material respects, except where a failure to maintain such insurance policies would not, individually or in the aggregate, reasonably be expected to result in a Material Adverse Effect.

(v)    EFIH and EFIH Finance and each of their respective subsidiaries own, possess or can acquire on reasonable terms, adequate rights to use all trademarks, trade names and other rights to inventions, know-how, patents, copyrights, confidential information and other intellectual property (collectively, "intellectual property rights") necessary for the conduct of their respective businesses as currently conducted or proposed to be conducted as described in the Offer to Purchase (except where a failure to own or possess such intellectual property rights could not reasonably be expected to, individually or in the aggregate, result in a Material Adverse Effect), and have not received any notice of infringement of or conflict with asserted rights of others with

9

respect to any intellectual property rights, the result of which, individually or in the aggregate, if the subject of an unfavorable decision, ruling or finding, would reasonably result in a Material Adverse Effect.

(w)     (i) Except as disclosed in the Offer to Purchase  and except for such matters that could not reasonably be expected to, individually or in the aggregate, result in a Material Adverse Effect, none of EFIH and EFIH Finance nor any of their respective subsidiaries (A) is in violation of any statute, any rule, regulation, decision or order of any governmental agency or body or any court, domestic or foreign, relating to the use, disposal or release into the environment of regulated, hazardous or toxic substances or relating to the protection or restoration of the environment or human exposure to hazardous or toxic substances (collectively, the "environmental laws"), (B) owns or operates any real property contaminated with any regulated, hazardous or toxic substance that is subject to any remedial obligation or other liabilities pursuant to any environmental laws, (C) is liable for any off-site disposal or contamination pursuant to any environmental laws, or (D) is subject to any claim arising pursuant to any environmental laws; and (ii) except as disclosed in the Offer to Purchase, none of EFIH and EFIH Finance are aware of any pending investigation pursuant to any environmental laws which would reasonably be expected to, individually or in the aggregate, result in a Material Adverse Effect.

(x)     None of EFIH and EFIH Finance nor any of their respective subsidiaries has sustained since the date of the latest audited financial statements incorporated by reference in the Offer to Purchase any material loss or interference with their business from fire, explosion, flood or other calamity, whether or not covered by insurance, or from any labor dispute or court or governmental action, order or decree, otherwise than as set forth or contemplated in Offer to Purchase; and, since the respective dates as of which information is given in the Offer to Purchase, there has not been (1) any change in the capital stock or long-term debt (other than (i) in connection with the Bankruptcy Cases, (ii) payment of debt on scheduled maturities, (iii) payment of in-kind interest pursuant to the terms of debt agreements and (iv) any other issuance or acquisition of indebtedness disclosed in the Offer to Purchase), in each case of any of EFIH and EFIH Finance nor any of their respective subsidiaries (other than Oncor Electric Delivery Holdings Company LLC and its subsidiaries), or (2) any material adverse change, or any development involving a prospective material adverse change, in or affecting the general affairs, management, financial position, stockholders' equity or results of operations of any of EFIH and EFIH Finance nor any of their respective subsidiaries, in the case of each of clauses (1) and (2) otherwise than as set forth or contemplated in the Offer to Purchase.

(y)     None of EFIH and EFIH Finance nor any of their respective subsidiaries or any of their respective directors or officers is subject to any economic embargoes or similar sanctions administered or enforced by the U.S. Department of State or the U.S. Department of Treasury (including the Office of Foreign Assets Control) or any other applicable sanctions authority (collectively, "Sanctions", and the associated laws, rules, regulations and orders, collectively, "Sanctions Laws").  Each of EFIH and EFIH Finance, their respective subsidiaries and their respective directors and officers is in

compliance, in all material respects, with (i) all Sanctions Laws, (ii) the United States Foreign Corrupt Practices Act of 1977, as amended, and any other applicable anti-bribery or anti-corruption laws, rules, regulations and orders (collectively, "Anti-Corruption Laws") and (iii) the Patriot Act and any other applicable terrorism and money laundering laws, rules, regulations and orders.  No part of the proceeds of the EFIH First Lien DIP Facility will be used, directly or indirectly, (A) for the purpose of financing any activities or business of or with any Person or in any country or territory that at such time is the subject of any Sanctions or (B) for any payments to any governmental official or employee, political party, official of a political party, candidate for political office, or anyone else acting in an official capacity, in order to obtain, retain or direct business or obtain any improper advantage, in violation  of any Anti-Corruption Law.

(z)    Any certificate signed by any officer of EFIH or EFIH Finance and delivered to the Dealer Managers or counsel for the Dealer Managers in connection with the Offer shall be deemed a representation and warranty by EFIH or EFIH Finance, as applicable, as to matters covered thereby to the Dealer Managers.

4.    Agreements. EFIH and EFIH Finance, jointly and severally, agree with each of the Dealer Managers that:

(a)    EFIH and EFIH Finance will furnish to the Dealer Managers and to counsel for the Dealer Managers, without charge, during the period beginning on the Commencement Date and continuing to and including the Settlement Date, copies of the Offer Material and any amendments and supplements thereto in such quantities as the Dealer Managers may reasonably request.

(b)    EFIH and EFIH Finance will not amend or supplement the Offer Material or file any Offer Material with the Commission, without the prior written consent of the Dealer Managers (which consent shall not be unreasonably withheld), unless required by applicable law; and prior to such supplementation EFIH will furnish to the Dealer Managers a copy of the proposed supplement for review and provide the Dealer Managers with a reasonable opportunity to review such materials and provide comments thereto.  Prior to the earlier of the Settlement Date or the date of termination of the Offer, EFIH will not file any document under the Exchange Act unless, within a reasonable time prior to such proposed filing, EFIH has furnished to the Dealer Managers a copy of such document for review and has provided the Dealer Managers with a reasonable opportunity to review such materials and provide comments to EFIH.

(c)    EFIH and EFIH Finance will comply with the Securities Act and the Exchange Act, as applicable, in conducting the Offer.

(d)    EFIH and EFIH Finance will advise the Dealer Managers promptly of any administrative action or legal claims relating to the Offer.

(e)    If, at any time prior to the Settlement Date, any event occurs as a result of which the Offer Material or any Additional Material would include any untrue statement

of a material fact or omit to state any material fact necessary to make the statements therein, in the light of the circumstances under which they were made, not misleading, or if, in the opinion of EFIH or EFIH Finance, after consultation with the Dealer Managers, it should be necessary to amend or supplement the Offer Material or any Additional Material to comply with applicable law, EFIH and EFIH Finance will promptly: (i) notify the Dealer Managers of any such event or non-compliance at which time the Dealer Managers shall be entitled to cease soliciting tenders until such time as EFIH and EFIH Finance have complied with clause (iii) of this sentence; (ii) subject to the requirements of the first sentence of the above paragraph (b), prepare an amendment or supplement that will correct such statement or omission or effect such compliance; and (iii) supply any such amendment or supplement to the Dealer Managers and counsel for the Dealer Managers without charge in such quantities as the Dealer Managers may reasonably request.

(f)     None of EFIH, EFIH Finance or any of their respective Affiliates that are controlled by such entities will take any action that is designed to cause or result under the Exchange Act or otherwise, in stabilization or manipulation of the price of any security of EFIH or EFIH Finance to facilitate the tender of Existing Notes in the Offer.

(g)     EFIH agrees to pay the costs and expenses in connection with the Offer, including without limitation the following: (i) the preparation of the Transaction Documents, the issuance of the EFIH Second Lien DIP Notes, and the fees of the Information Agent and any exchange agent or depository agent; (ii) the preparation, printing or reproduction of the Offer Material and any Additional Material and each amendment or supplement thereto; (iii) the printing (or reproduction) and customary mailing and handling (including postage, air freight charges and charges for counting and packaging) of such copies of the Offer Material and any Additional Material (and all amendments or supplements thereto) as may, in each case, be reasonably requested for use in connection with the Offer; (iv) the printing (or reproduction) and delivery of this Agreement, and all other agreements or documents printed (or reproduced) and delivered in connection with the Offer; (v) any filings required to be made with the Financial Industry Regulatory Authority ("FINRA") (including filing fees and the reasonable fees and expenses of counsel for the Dealer Managers relating to such filings); (vi) the fees and expenses of accountants for EFIH and EFIH Finance and the fees and expenses of counsel (including local and special counsel) for EFIH and EFIH Finance; and (vii) all other costs and expenses incident to the performance by EFIH and EFIH Finance of their respective obligations hereunder and in connection with the Offer which are not specifically provided for in this Section 4(g).

5.   Conditions to the Obligations of the Dealer Managers.  The several obligations of each Dealer Manager under this Agreement shall be subject to the accuracy of the representations and warranties on the part of EFIH and EFIH Finance contained herein at the Commencement Date and the Early Tender Date and the Settlement Date (unless such representation or warranty speaks only as of a certain date, in which case such representation and warranty need only be true as of such date), to the accuracy, as of the date of such certificate, of the statements of EFIH and EFIH Finance made in any certificates pursuant to the provisions

12

hereof, to the performance by EFIH and EFIH Finance of their obligations hereunder and to the following additional conditions:

(a)     At the Commencement Date and the Settlement Date, EFIH and EFIH Finance shall have requested and caused the following opinions to have been furnished to the Dealer Managers, in each case addressed to the Dealer Managers, and in form and substance reasonably satisfactory to the Dealer Managers:

(i)  Kirkland & Ellis LLP, counsel for EFIH and EFIH Finance, substantially to the effect as set forth in Exhibit A-1, subject to customary qualifications, assumptions and exceptions; and

(ii)     Andrew M. Wright, Vice President and Deputy General Counsel of EFH Corporate Services Company, a wholly-owned subsidiary of EFH, substantially in the form of Exhibit A-2, subject to customary qualifications, assumptions and exceptions.

(b)     At the Settlement Date, EFIH and EFIH Finance shall have furnished to the Dealer Managers, a certificate of EFIH and EFIH Finance, respectively, signed by the principal financial or accounting officer of each of EFIH and EFIH Finance, respectively, dated as of the Settlement Date, to the effect that the signers of such certificate have examined the Offer Material and this Agreement and that:

(i)     the representations and warranties of EFIH and EFIH Finance, as the case may be, in this Agreement are true and correct in all material respects as if made on the Settlement Date (unless such representation or warranty speaks only as of a certain date, in which case such representation and warranty need only be true as of such date), and EFIH and EFIH Finance, as the case may be, have in all material respects performed all covenants and agreements and satisfied all conditions on its part to be performed or satisfied at or prior to the Settlement Date (after giving effect to the Offer and the other transactions contemplated by the Offer Material); and

(ii)     subsequent to the respective dates as of which information is given in the Offer to Purchase, there has not been any event or development with respect to such entity and such entity's consolidated subsidiaries, considered as one entity, that would reasonably be expected to result in a Material Adverse Effect, otherwise than as set forth or contemplated in the Offer to Purchase.

(c)     Subsequent to the Commencement Date or, if earlier, the dates as of which information is given in the Offer to Purchase (exclusive of any amendment or supplement thereto), there shall not have been any change, or any development involving a prospective change, in or affecting the condition (financial or otherwise), prospects, earnings, business or properties of EFIH and EFIH Finance and their subsidiaries, taken as a whole, whether or not arising from transactions in the ordinary course of business, except as set forth in or contemplated in the Offer to Purchase (exclusive of any amendment or supplement thereto), the effect of which is, in the sole judgment of the

13

Dealer Managers, so material and adverse as to make it impractical or inadvisable to solicit tenders of Existing Notes as contemplated by the Offer to Purchase (exclusive of any amendment or supplement thereto).

(d)    Prior to the Settlement Date, the Offerors shall have obtained all consents, approvals, authorizations and orders of, and shall have duly made all registrations, qualifications and filing with, any court or regulatory authority or other governmental agency or instrumentality (other than the Bankruptcy Court) required in connection with the making and consummation of the Offer and the execution, delivery and performance of this Agreement other than such consents approvals, authorizations, orders, registrations, qualifications and filings that, if not obtained or made, would not be reasonably likely to have, individually or in the aggregate, a Material Adverse Effect.

(e)    On or prior to the Settlement Date, the Bankruptcy Court shall have issued one or more orders approving (i) the EFIH Second Lien DIP Financing and the performance by EFIH and EFIH Finance of their obligations thereunder and (ii) this Agreement, the related settlements and the performance by EFIH and EFIH Finance of their obligations hereunder, in the case of the foregoing clause (ii) in form and substance reasonably satisfactory to the Dealer Managers (the "Final Order"), and such order(s) shall remain in full force and effect and shall not have been reversed, modified, amended, stayed or vacated, in the case of any modification or amendment, in a manner that is adverse to the Dealer Managers, without the consent of the Dealer Managers; provided that the satisfaction of this condition shall be a non-waivable condition to the consummation of the Offer.

(f)    Prior to the Settlement Date, the Offerors shall have delivered to the Dealer Managers and their counsel such further information, certificates and documents related to the transactions contemplated by this Agreement as they may reasonably request.

If (i) any of the conditions specified in this Section 5 shall not have been fulfilled when and as provided in this Agreement, or (ii) any of the opinions and certificates mentioned above or elsewhere in this Agreement shall not be reasonably satisfactory in form and substance to any of the Dealer Managers and their counsel, this Agreement and all obligations of any Dealer Manager hereunder may be cancelled by such Dealer Manager as to itself at, or at any time prior to, the Settlement Date.  Notice of such cancellation shall be given to EFIH and EFIH Finance in writing or by telephone or facsimile confirmed in writing.

6.    Indemnification and Contribution.

(a)    EFIH and EFIH Finance, agree, jointly and severally, to the extent not covered by the indemnification and expenses provision contained in the EFIH DIP Commitment Letter, but without duplication, to indemnify and hold harmless each Dealer Manager and its affiliates, each of their respective directors, officers, employees and agents and each person who controls any Dealer Manager or its affiliates within the meaning of either the Securities Act or the Exchange Act (each such person, an "indemnified party") against any and all losses, claims, damages or liabilities, joint or

several, to which they or any of them may become subject under the Securities Act, the Exchange Act or other U.S. federal, state or foreign statutory law or regulation, at common law or otherwise, insofar as such losses, claims, damages or liabilities or actions in respect thereof arise out of, or are based upon (1) any untrue statement of a material fact or alleged untrue statement of a material fact contained in the Offer to Purchase, Offer Material or any Additional Material or any other information provided by EFIH or EFIH Finance to any holder of Existing Notes in connection with the Offer or in any amendment thereof or supplement thereto, or arise out of or are based upon the omission or alleged omission to state therein a material fact necessary to make the statements therein, in the light of the circumstances under which they were made, not misleading, (2) the failure of EFIH or EFIH Finance to make or consummate the Offer or the withdrawal, rescission, termination, amendment or extension of the Offer or any failure on the part of EFIH or EFIH Finance to comply with the terms and conditions contained in the Offer Material, (3) any action or failure to act by EFIH or EFIH Finance or their respective directors, officers, agents or employees or by any indemnified party at the request or with the consent of EFIH or EFIH Finance for matters arising out of or related to the Offer, or (4) otherwise related to or arising out of such Dealer Manager's appointment hereunder or any transaction or conduct in connection therewith, or the Offer, except that this clause (4) shall not apply to the extent any losses are finally judicially determined to have resulted from the bad faith, gross negligence or willful misconduct of such indemnified party (customary communications with holders of Existing Notes in response to inquiries by holders of Existing Notes shall not be deemed to be bad faith, gross negligence or willful misconduct of such indemnified party), and in the case of clause (1), (2), (3) or (4) of this sentence, EFIH and EFIH Finance agree to reimburse each such indemnified party, as incurred, for any legal or other expenses reasonably incurred by it in connection with investigating or defending any such loss, claim, damage, liability or action; provided, however, that EFIH and EFIH Finance will not be liable in any such case to the extent that any such loss, claim, damage or liability arises out of or is based upon any such untrue statement or alleged untrue statement or omission or alleged omission made in the Offer to Purchase, Offer Material or any Additional Material, or in any amendment thereof or supplement thereto, in reliance upon and in conformity with written information furnished to EFIH and EFIH Finance by or on behalf of such Dealer Manager specifically for inclusion therein (which for purposes of this provision shall consist of the name and addresses of such Dealer Manager on the front cover and the back cover of the Offer to Purchase and the Letter of Transmittal); and provided further, however, that the indemnified party shall repay to EFIH and EFIH Finance all such legal and other expenses if it shall ultimately be determined that the indemnified party is not entitled to indemnification pursuant to this Section 6.  This indemnity agreement will be in addition to any liability that EFIH or EFIH Finance may otherwise have. EFIH and EFIH Finance also acknowledge and agree that no indemnified party shall have any liability (whether direct or indirect, in contract, tort or otherwise) to them (except as set forth in paragraph (b) below) or any other person for any losses, claims, damages or liabilities arising from or in connection with any act or omission in performing their obligations hereunder or otherwise in connection with the Offer, or any other action contemplated in the Offer Material or any Additional Material, except to the extent that any such losses, claims, damages or

liabilities are finally judicially determined by a court of competent jurisdiction to have resulted from the bad faith, gross negligence or willful misconduct of such indemnified party.

(b)     Each of the Dealer Managers, severally and not jointly, agrees to indemnify and hold harmless EFIH and EFIH Finance, each of their directors and officers, and each person who controls EFIH or EFIH Finance within the meaning of either the Securities Act or the Exchange Act, to the same extent as the foregoing indemnity to each of the Dealer Managers in clause (1) of the preceding paragraph, but only with respect to written information relating to such Dealer Manager furnished to EFIH or EFIH Finance by or on behalf of such Dealer Manager for inclusion in the Offer to Purchase, Offer Material or any Additional Material, or in any amendment or supplement thereto (which for purposes of this provision shall consist of the name and address of such Dealer Manager on the front cover and the back cover of the Offer to Purchase and the Letter of Transmittal).  This indemnity agreement will be in addition to any liability that such Dealer Manager may otherwise have.

(c)     Promptly after receipt by an indemnified party under this Section 6 of notice of the commencement of any action or proceeding, such indemnified party will, if a claim in respect thereof is to be made against the indemnifying party under this Section 6, notify the indemnifying party in writing of the commencement thereof; but the failure so to notify the indemnifying party (i) will not relieve it from liability under paragraph (a) or (b) above unless and to the extent it did not otherwise learn of such action and such failure results in the forfeiture by the indemnifying party of substantial rights and defenses and (ii) will not, in any event, relieve the indemnifying party from any obligations to any indemnified party other than the indemnification obligation provided in paragraph (a) or (b) above.  The indemnifying party shall be entitled to appoint counsel (including local counsel) of the indemnifying party's choice at the indemnifying party's expense to represent the indemnified party in any action for which indemnification is sought (in which case the indemnifying party shall not thereafter be responsible for the fees and expenses of the indemnified party, including fees and expenses of any separate counsel retained by the indemnified party or parties, other than reasonable costs incurred in cooperating with the indemnifying party in connection with such action (including the reasonable costs of investigation), except as set forth below); provided, however, that such counsel shall be reasonably satisfactory to the indemnified party.  Notwithstanding the indemnifying party's election to appoint counsel (including local counsel) to represent the indemnified party in an action, the indemnified party shall have the right to employ separate counsel (including local counsel), and the indemnifying party shall bear the reasonable fees, costs and expenses of such separate counsel if (i) the use of counsel chosen by the indemnifying party to represent the indemnified party would present such counsel with a conflict of interest; (ii) the actual or potential defendants in, or targets of, any such action include both the indemnified party and the indemnifying party and the indemnified party shall have reasonably concluded that there may be legal defenses available to it and/or other indemnified parties that are different from or additional to those available to the indemnifying party; (iii) the indemnifying party shall not have employed counsel reasonably satisfactory to the indemnified party to represent the indemnified party within a reasonable time after

16

notice of the institution of such action; or (iv) the indemnifying party shall authorize the indemnified party to employ separate counsel at the expense of the indemnifying party. An indemnifying party will not, without the prior written consent of the indemnified parties (which consent shall not be unreasonably withheld or delayed), settle or compromise or consent to the entry of any judgment with respect to any pending or threatened claim, action, suit or proceeding in respect of which indemnification or contribution may be sought hereunder (with respect to which the indemnified parties (i) are actual parties, or (ii) would reasonably be expected to become parties, to such claim, action, suit or proceeding) unless such settlement, compromise or consent includes an unconditional release of each indemnified party from all liability arising out of such claim, action, suit or proceeding and does not include any statement as to or any admission of fault, culpability or failure to act, by or on behalf of any indemnified party.

        (d)      In the event that the indemnity provided in paragraph (a) or (b) of this Section 6 is unavailable to or insufficient to hold harmless an indemnified party for any reason,  EFIH and EFIH Finance on the one hand and each of the Dealer Managers on the other hand agree to contribute to the aggregate losses, claims, damages and liabilities (including legal or other expenses reasonably incurred in connection with investigating or defending any loss, claim, damage, liability or action) (collectively, the "Losses") to which EFIH and EFIH Finance and each Dealer Manager may be subject in such proportion as is appropriate to reflect the relative benefits received by EFIH and EFIH Finance on the one hand and by such Dealer Manager on the other hand from the Offer; provided, however, that in no case shall any Dealer Manager be responsible for any amount in excess of the actual amount of fees received by such Dealer Manager under this Agreement.  If the allocation provided by the immediately preceding sentence is unavailable for any reason,  EFIH, EFIH Finance and each of the Dealer Managers shall contribute in such proportion as is appropriate to reflect not only such relative benefits but also the relative fault of EFIH and EFIH Finance on the one hand and each of the Dealer Managers on the other hand in connection with the statements, omissions, actions or failure to act that resulted in such Losses, as well as any other relevant equitable considerations.  Benefits received (or anticipated to be received) by EFIH and EFIH Finance shall be deemed to be equal to the principal amount of the securities in respect of which: (a) if the Offer are consummated, valid tenders of Existing Notes are received, or (b) if the Offer are not consummated, valid tenders are or were sought pursuant to the Offer, and benefits received (or anticipated to be received) by each of the Dealer Managers shall be several and deemed to be equal to the fee paid by, EFIH and EFIH Finance to each of the Dealer Managers under this Agreement (exclusive of amounts paid for reimbursement of expenses or paid under this Agreement).  Relative fault shall be determined by reference to, among other things, whether any untrue or any alleged untrue statement of a material fact or the omission or alleged omission to state a material fact or any other alleged conduct relates to information provided by EFIH or EFIH Finance or other conduct by the EFIH and EFIH Finance on the one hand or any Dealer Manager on the other, the intent of the parties with respect to such alleged untrue statement or omission and their relative knowledge, access to information and opportunity to correct or prevent such untrue statement or omission. EFIH, EFIH Finance and each of the Dealer Managers agree that it would not be just and equitable if contribution were determined by pro rata allocation or any other method of allocation

that does not take account of the equitable considerations referred to above. Notwithstanding the provisions of this paragraph (d), no person guilty of fraudulent misrepresentation (within the meaning of Section 11(f) of the Securities Act) shall be entitled to contribution from any person who was not guilty of such fraudulent misrepresentation.  For purposes of this Section 6, each person who controls any Dealer Manager within the meaning of either the Securities Act or the Exchange Act and each director, officer, employee and agent of any Dealer Manager shall have the same rights to contribution as such Dealer Manager, and each person who controls EFIH or EFIH Finance within the meaning of either the Securities Act or the Exchange Act and each officer and director of EFIH and EFIH Finance shall have the same rights to contribution as EFIH and EFIH Finance, subject in each case to the applicable terms and conditions of this paragraph (d).

7.    Non-Disclosure. EFIH and EFIH Finance shall not disclose the provisions of this Agreement to any other person without the prior written consent of the Dealer Managers, unless EFIH or EFIH Finance reasonably determines that the failure to make such disclosure would violate applicable law or regulation.

8.    Certain Acknowledgments. Each of EFIH and EFIH Finance acknowledge and agree that: (i) the services to be provided by the Dealer Managers pursuant to this Agreement are an arm's-length commercial transaction between EFIH and EFIH Finance, on the one hand, and the Dealer Managers, on the other; (ii) in connection with each transaction contemplated hereby and the process leading to such transaction the Dealer Managers are and have been acting solely as a principal and is not the agent or fiduciary of EFIH or EFIH Finance, or their respective affiliates, stockholders, creditors or employees or any other party; (iii) the Dealer Managers have not assumed or will not assume any fiduciary responsibility in favor of EFIH or EFIH Finance with respect to any of the transactions contemplated hereby or the process leading thereto (irrespective of whether the Dealer Managers have advised or is currently advising EFIH or EFIH Finance on other matters) or any other obligation to EFIH or EFIH Finance except the obligations expressly set forth in this Agreement; (iv) the Dealer Managers and their affiliates may be engaged in a broad range of transactions that involve interests that differ from those of EFIH or EFIH Finance (including, without limitation, as agent or lender under the EFIH First Lien DIP Facility or holders of notes listed on Schedule A hereto) and that the Dealer Managers have no obligation to disclose any of such interest by virtue of any fiduciary or advisory relationship; (v) the Dealer Managers have not provided and will not be providing any legal, accounting, regulatory, tax or other professional advice with respect to the transactions contemplated hereby and EFIH and EFIH Finance have consulted their own legal, accounting, regulatory and tax advisors and other professionals to the extent they deemed appropriate; and (vi) the Dealer Managers, solely in such capacity (and not in any other capacity that such Dealer Manager may have in the Chapter 11 proceeding of EFIH and EFIH Finance and their affiliates), have not and will not control, manage, administer, invest, purchase or sell assets that are significant to EFIH and EFIH Finance's reorganization or otherwise be involved in any aspects of the administration of the Chapter 11 cases of EFIH and EFIH Finance and their affiliated debtors and debtors-in-possession or the negotiation of any plan of reorganization. For the avoidance of doubt, the parties agree that the Dealer Managers and/or their affiliates may separately be involved in the Chapter 11 proceeding and the Bankruptcy Cases and that such

roles may include, among other things, participation in the negotiation of a plan of reorganization of EFIH and EFIH Finance.

9.    <u>Representations, Acknowledgments and Indemnities to Survive</u>.  The representations, warranties and indemnifications contained in this Agreement shall continue in effect after completion of the Offer and shall be effective even if the Offer are withdrawn, abandoned or terminated.

10.    <u>Notices</u>.  All communications hereunder will be in writing and effective only on receipt, and, if sent to the Dealer Managers, shall be delivered or sent by mail, telecopy or facsimile transmission to Citigroup Global Markets Inc., 388 Greenwich Street, New York, New York 10013, Attention: General Counsel, facsimile number (212) 816-7912; or, if sent to EFIH or EFIH Finance shall be delivered or sent by mail or facsimile transmission to the address of EFIH and EFIH Finance set forth in the Offer to Purchase, Attention: General Counsel.

11.    <u>Successors</u>.  This Agreement will inure to the benefit of and be binding upon the parties hereto and their respective successors and the officers and directors and controlling persons referred to in Section 6 hereof, and, no other person will have any right or obligation hereunder.

12.    <u>Applicable Law</u>.  This Agreement will be governed by and construed in accordance with the laws of the State of New York applicable to contracts made and to be performed within the State of New York.  Any right to trial by jury with respect to any claim or proceeding related to or arising out of this Agreement or any transaction or conduct in connection herewith, is waived.

13.    <u>Counterparts</u>.  This Agreement may be signed in one or more counterparts, each of which shall constitute an original and all of which together shall constitute one and the same instrument.

14.    <u>Effectiveness</u>. The parties acknowledge that this Agreement is subject to the entry of the Final Order. Upon the entry of the Final Order, this Agreement, including all of the representations, warranties, covenants, and indemnities herein shall be effective as of the date hereof notwithstanding the date of entry of the Final Order.

15.    <u>Headings</u>.  The section headings used herein are for convenience only and shall not affect the construction hereof.

16.    <u>Additional Dealer Managers</u>.  By execution of a Joinder Agreement among EFIH, EFIH Finance, each of the Dealer Managers and such other exclusive dealer managers for the Offer as the parties hereto shall agree, such other exclusive dealer managers shall, without further action by such persons, become parties to this Agreement.

17.    <u>Definitions</u>.  The following terms, when used in this Agreement, shall have the meanings indicated.

"Affiliate" shall have the meaning specified in Rule 501(b) of Regulation D.

19

"Commencement Date" shall mean the date on which the Offer to Purchase is first distributed to holders of Existing Notes.

"Early Tender Date" shall have the meaning ascribed to such term in the Offer to Purchase.

"EFIH Second Lien DIP Financing" shall mean the $1,900,000,000 post-petition second lien secured debtor-in-possession financing facility of EFIH and EFIH Finance contemplated by the Restructuring Support Agreement.

"Exchange Act" shall mean the U.S. Securities Exchange Act of 1934, as amended, and the rules and regulations of the Commission promulgated thereunder.

"Expiration Date" shall have the meaning ascribed to such term in the Offer to Purchase.

"FINRA" shall mean the Financial Industry Regulatory Authority, Inc.

"Information Agent" shall mean Epiq Bankruptcy Solutions, LLC.

"Joinder Agreement" shall mean any Joinder Agreement to this Agreement, pursuant to Section 16 of this Agreement, executed by EFIH and EFIH Finance, the Dealer Manager and such other exclusive dealer managers for the Offer.

"Offerors" shall mean EFIH and EFIH Finance.

"U.S." or the "United States" shall mean the United States of America.

"You" or "Your" shall mean Citigroup Global Markets Inc., Deutsche Bank Securities Inc., Merrill Lynch, Pierce, Fenner & Smith Incorporated, Morgan Stanley & Co. LLC, Barclays Capital Inc., RBC Capital Markets, LLC, Mitsubishi UFJ Securities (USA), Inc., Evercore L.L.C.  and such other exclusive dealer managers for the Offer which execute Joinder Agreements in accordance with Section 16 of this Agreement.

If the foregoing is in accordance with your understanding of our agreement, please sign and return to us the enclosed duplicate hereof, whereupon this Agreement and your acceptance shall represent a binding agreement between EFIH and EFIH Finance and the Dealer Managers.

Very truly yours,

ENERGY FUTURE INTERMEDIATE HOLDING COMPANY LLC

By

Name:   Anthony R. Horton
Title:    Senior Vice President and Treasurer

EFIH FINANCE INC.

By

Name:   Anthony R. Horton
Title:    Senior Vice President and Treasurer

*[Signature Page to Dealer Manager Agreement]*

The foregoing Agreement is hereby
confirmed and accepted as of the
date first above written.

CITIGROUP GLOBAL MARKETS INC.

By: _____

Name: _____
Title: *Stephen Cheeseman*
*Managing Director.*

DEUTSCHE BANK SECURITIES INC.

By: _____

Name: Craig Molson
Title: Director

By: _____

Name:
Title:      Scott Sartorius
            Managing Director

MERRILL LYNCH, PIERCE, FENNER & SMITH
INCORPORATED.

By:

Name:  John McCusker
Title:  Managing Director

[*Signature Page to Dealer Manager Agreement*]

MORGAN STANLEY & CO. LLC

By: _____

Name: Adnan Riaz

Title: Vice President

*[Signature Page to Dealer Manager Agreement]*

BARCLAYS CAPITAL INC.

By: _____

Name: Pamela Au

Title: Managing Director

RBC CAPITAL MARKETS, LLC

By: _____

Name: Amery B. Dunn

Title: MD

MITSUBISHI UFJ SECURITIES (USA), INC.

By:

Name: Brian Cogliandro
Title:   Managing Director

[*Signature Page to Dealer Manager Agreement*]

EVERCORE GROUP L.L.C.

By:

Name: Stephen Goldstein
Title: Senior Managing Director

**Schedule A**

Existing Notes

| Securities | CUSIP Number(s) | Aggregate Principal Amount Outstanding | Tender Consideration(1)(2) | Early Participation Consideration(1) | Total Consideration(1)(2) |
|---|---|---|---|---|---|
| EFIH 11% Second Lien Notes | 29269QAB3 | $406,392,000 | $1,073.22 | $50.00 | $1,123.22 |
| EFIH 11.750% Second Lien Notes | 29269QAD9 U29197AB3 | $1,750,000,000 | $1,116.70 | $50.00 | $1,166.70 |

(1) Does not include accrued and unpaid interest up to, but not including, the Settlement Date, which will be paid on all of the Existing Notes accepted for purchase in the Offer.

(2) The Total Consideration and Tender Consideration will each be decreased by $0.14 for each day after June 11, 2014 that the Settlement Date occurs.