**EXHIBIT C**

**Sawyer Declaration**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) | Case No. 14-10979 (CSS) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**DECLARATION OF HUGH E. SAWYER, DISINTERESTED BOARD
MEMBER OF TEXAS COMPETITIVE ELECTRIC HOLDINGS
COMPANY LLC AND ENERGY FUTURE COMPETITIVE HOLDINGS COMPANY
LLC, IN SUPPORT OF THE MOTION OF ENERGY FUTURE
HOLDINGS CORP., *ET AL.*, FOR ENTRY OF AN ORDER AUTHORIZING
THE RSA DEBTORS TO ASSUME THE RESTRUCTURING SUPPORT AGREEMENT**

I, Hugh E. Sawyer, declare as follows:

1.    I am a Managing Director of Huron Consulting Group Inc. ("Huron"), a multi-disciplined, publicly-traded consulting firm with practices in several areas, including business advisory services, bankruptcy and financial restructuring services for public and private companies, lenders, creditors, equity holders, and impartial constituents (such as trustees and examiners) in diverse industries.

2.    Since October 2013, I have served as a disinterested board member of Texas Competitive Electric Holdings Company LLC ("TCEH") and of Energy Future Competitive Holdings Company LLC ("EFCH").  I submit this declaration (this "Declaration") in support of

---

[1]    The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810.  The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201.  Due to the large number of debtors in these chapter 11 cases, for which joint administration has been granted on an interim basis, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the debtors' proposed claims and noticing agent at http://www.efhcaseinfo.com.

the *Motion of Energy Future Holdings Corp.,* et al., *for Entry of an Order Authorizing the RSA Debtors to Assume the Restructuring Support Agreement* (the "Motion").[2]

3.     The statements in this Declaration are based on my personal knowledge, my review of relevant documents, or my opinion based upon my experience and knowledge of the corporate governance procedures of TCEH.  If I were called upon to testify, I could and would testify competently to the facts set forth herein.

### Qualifications

4.     I have more than 35 years of experience leading turnarounds, bankruptcies, operational improvement, and mergers and acquisitions. In that time, I have served as the President or CEO of eight companies as well as in various board member roles both in and out of bankruptcy. Such companies include, to name a few, Hines Horticulture, Inc. (Disinterested Director); JHT Holdings, Inc. (President and CEO and Disinterested Director); Aegis Communications Group, Inc. (President and CEO); Allied Holdings, Inc. (President and CEO); Edison Mission Energy (Disinterested Director); Neff Equipment Rental Corporation (Disinterested Director); and National Linen Service, Inc. (President and CEO).  I have also served as the Chief Restructuring Officer to several distressed companies, including, most recently, Fisker Automotive, Inc., prior to its bankruptcy filing.

5.     In October 2013, I was appointed as a disinterested director to the TCEH Board of Managers ("TCEH Board").  It is my understanding that I was selected for this position based on my expertise with financially distressed companies and particularly due to my extensive personal experience as a CEO of troubled companies and as a disinterested director of complex companies contemplating or undergoing significant restructuring transactions, both in and out of court.

---

[2]     Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

Since my appointment to the TCEH Board, the RSA Debtors' management and advisors have actively sought my input and approval on material decisions.

6.      As a disinterested director, I do not serve on any other boards at EFH Corp. or any of its subsidiaries or affiliates, other than TCEH and EFCH.  Nor do I have any other formal relationship or understanding with any other of these entities.  I am aware that other members of the TCEH Board do sit on boards at EFH Corp. and/or other EFH Corp. subsidiaries or affiliates, and are thus involved in decisionmaking as to those entities by virtue of their roles on those boards.

**Participation in the TCEH Board**
**Process Regarding the Restructuring Support Agreement**

7.      Between March 21, 2014 and April 28, 2014, I attended two meetings of the Boards of TCEH and TCEH Finance and four meetings of the joint Boards of TCEH, TCEH Finance, EFIH, EFIH Finance, and EFH Corp.  During these meetings, the RSA Debtors' management and advisors presented comprehensive summaries of negotiations as the Restructuring Support Agreement evolved.   These presentations included regular updates regarding the status of negotiations with each constituency, including a description of the material open issues and an analysis of the risks and benefits associated with the material provisions contained in the Restructuring Support Agreement.  In addition, the RSA Debtors' management and advisors provided the members of Debtors' Boards with a comprehensive understanding of the advantages and downsides to entering into the Restructuring Support Agreement.

8.      In addition to formal Board meetings, I would typically follow scheduled meetings with break-out sessions during which I alone and without other Board members present would engage in discussion and dialogue with the Debtors' management and/or professionals. I

3

also met individually on several occasions with the CEOs of TXU and Luminant, as well as with

EFH's General Counsel and other members of the Debtors' management teams, as well as with

representatives from the Debtors' advisors and professionals.  I also engaged in numerous

telephonic conversations with various members of the Debtors' management team and the

Debtors' advisors regarding the merits of the Restructuring Support Agreement.  Through those

individual meetings, I was able to ask any questions I had about the negotiations, status, or

details of Restructuring Support Agreement, and received all the information and advice I felt

was necessary in order to reach my own determination about the propriety of entering into the

Restructuring Support Agreement.

9.      On March 21, 2014, I attended a joint meeting of the Boards.  At this meeting, the

RSA Debtors' advisors and management explained that certain holders of TCEH first lien debt

had, for the first time, expressed willingness to consider support for a tax-free deconsolidation

restructuring strategy.  Based on this indication of potential support, the RSA Debtors'

management and their advisors explained that they had begun the process of drafting the

Restructuring Support Agreement.

10.     I understood that on April 1, 2014, TCEH and TCEH Finance were scheduled to

make interest payments in an aggregate amount of approximately $119 million.  Accordingly, on

March 27, 2014, I attended a meeting of the TCEH Board during which we considered the risks

and benefits of utilizing the 30-day grace period available to make the interest payments under

the applicable debt instruments.  After careful consideration of the information presented, I,

along with the other members of the TCEH Board, determined that use of the grace period would

be in the best interests of TCEH and its stakeholders, including its secured and unsecured

creditors.  Ultimately, my decision to utilize the grace period rested largely on the likelihood

that, in my business judgment, the RSA Debtors could reach a consensus with all or some part of the Restructuring Support Parties on the proposed Restructuring Support Agreement during that time, enabling TCEH to gain the significant benefits associated with the proposed Restructuring Support Agreement.

11.     The Boards continued to meet regularly in order to evaluate the proposed terms and key outstanding issues as restructuring negotiations advanced.  I attended all such meetings of the TCEH Board and the joint Boards.

12.     On April 24, 2014, I attended the joint meeting of the boards.  The following day, I attended a separate special meeting of the Boards of TCEH and EFCH which was held exclusively for me in my capacity as a disinterested director of the TCEH and EFCH Boards.  At both of these meetings, certain of the RSA Debtors' advisors and management provided detailed presentations regarding the risks and benefits associated with the Restructuring Support Agreement, including the settlements contained therein.  These presentations were important to me in evaluating the Restructuring Support Agreement.

13.     On April 28, 2014, I attended a joint meeting of the Boards to determine whether to enter into the Restructuring Support Agreement.  This meeting included a detailed evaluation of the final terms of the Restructuring Support Agreement and the Board approvals required to consummate that agreement and commence chapter 11 proceedings.

### The TCEH Board's Decision to Enter Into the Restructuring Support Agreement

14.     Upon significant deliberation and considered analysis of the material terms of the Restructuring Support Agreement, I determined, along with the other members of the TCEH Board, that entry into the Restructuring Support Agreement was in the best interest of TCEH.  I made this decision based on my over 35 years of experience with financially distressed companies, my understanding of the Debtors' financial position, careful consideration of the

information and advice provided by the Debtors' management and advisors, the history of negotiations and efforts to develop a solution that is mutually agreeable to the various constituencies, and of the the regular and in-depth explanation of the terms of the Restructuring Support Agreement as they evolved.  During the April 28, 2014 meeting, I, in my role as a disinterested director, recommended to the full TCEH board that it should approve the Restructuring Support Agreement.

15.    Based on my experience and deliberation on the Restructuring Support Agreement, I identified the following advantages to TCEH which would result from the Restructuring Support Agreement.  The Restructuring Support Agreement presents a clear path forward for finalizing a plan and then having that plan confirmed and consummated.  The Restructuring Support Agreement also represents a solution that received broad-based support after more than a year of negotiations exploring other alternatives that did not yield such support.  As such, as a strong and viable option for resolving the issues among many of the parties to these negotiations, I believe that the Restructuring Support Agreement also likely maximizes value for the TCEH estate by eliminating the need for the long and protracted legal battle that would have resulted in the absence of such a plan.

16.    Because the plan contemplated by the Restructuring Support Agreement enables TCEH to emerge from chapter 11 protection as a substantially deleveraged stand-alone entity without triggering the approximately $6 billion of deconsolidated tax liabilities that would have resulted from certain other deconsolidation alternatives, I believe the Restructuring Support Agreement yields significant value to TCEH stakeholders.  Moreover, the Restructuring Support Agreement also allows TCEH to avoid the possibility that on account of the additional tax liability referenced above, EFH would, in turn, have a potential unsecured claim against TCEH

6

in excess of $3 billion under a tax sharing agreement, therefore reducing the recovery of EFH's and TCEH's unsecured creditors.

17.    For all of these reasons, it was my business judgment that the Restructuring Support Agreement represented the best available restructuring alternative to TCEH.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Dated:  May 16, 2014

/s/ Hugh E. Sawyer
Hugh E. Sawyer
Disinterested Board Member
Texas Competitive Electric Holdings Company LLC
Energy Future Competitive Holdings Company LLC