IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------x

In re:

ENERGY FUTURE HOLDINGS CORP., *et al.*,[1]

Debtors.

------------------------------------------------------------x

Chapter 11

Case No. 14-10979 (CSS)

(Jointly Administered)

**Re: D.I. 5, 225 and 391**

**THE AD HOC COMMITTEE OF EFIH UNSECURED NOTEHOLDERS' JOINDER TO THE DEBTORS' OBJECTION TO THE MOTION OF WILMINGTON SAVINGS FUND SOCIETY, FSB PURSUANT TO 28 U.S.C. §§ 1408 & 1412 AND RULE 1014 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE TO TRANSFER CASES TO THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS**

The ad hoc committee of holders of 11.25%/12.25% unsecured senior toggle notes due December 1, 2018 (the "EFIH Unsecured Notes") issued pursuant to that certain Indenture, dated December 5, 2012, by and among Energy Future Intermediate Holding Company LLC ("EFIH") and EFIH Finance Inc., as issuers, and UMB Bank, N.A., as successor trustee (the "Ad Hoc Committee of EFIH Unsecured Noteholders"), hereby joins in and adopts the arguments in the above-captioned Debtors' Objection [Docket No. 391] (the "Objection" or "Debtors' Objection") to the Motion (the "Motion") of Wilmington Savings Fund Society, FSB ("Wilmington") Pursuant to 28 U.S.C. §§ 1408 & 1412 and Rule 1014 of the Federal Rules of Bankruptcy Procedure to Transfer Cases to the United States District Court for the Northern District of Texas. In further support of this joinder, the Ad Hoc Committee of EFIH Unsecured Noteholders respectfully represents as follows:

---

[1] The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, for which the debtors have requested joint administration, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' proposed claims and noticing agent at http://www.efhcaseinfo.com.

**Preliminary Statement**

1. By the Motion, Wilmington seeks entry of an order uprooting these highly contentious chapter 11 cases—to which this Court has already devoted substantial resources—over the objection of, among others, the Ad Hoc Committee of EFIH Unsecured Noteholders and the Debtors. For the reasons set forth in the Debtors' Objection and this Joinder, the Debtors' determination to file these cases in Delaware was a valid and appropriate exercise of the Debtors' business judgment and should be respected.

2. Because certain of the Debtors, including both EFIH and Texas Competitive Energy Holdings Company LLC ("TCEH"), were incorporated in Delaware, it is undisputed that venue for these chapter 11 cases in Delaware is proper. The Debtors decided to exercise their right to file for bankruptcy protection in their place of incorporation, and that choice is entitled to great weight and deference.

3. Accordingly, to succeed on its Motion, Wilmington must show that the balance of interests *strongly favors* transfer. Wilmington has not met this heavy burden. Neither the facts of this case, nor the authorities Wilmington relies on, support transferring these cases to Texas.

4. Rather than reiterate arguments cogently made in the Debtors' Objection, this Joinder will focus on Wilmington's flawed arguments and its incomplete, inapposite, and/or distinguishable citations in support of those arguments.

**Background[2]**

5. Collectively, the various Debtors have more than $42 billion of funded indebtedness outstanding. The creditors holding this debt consist largely of financial institutions

---

[2] The Ad Hoc Committee of EFIH Unsecured Noteholders adopts the facts set forth in the Debtors' Objection and the Betty R. Fleshman Declaration in Support of Debtors' Objection [ECF No. 393] and the Steven R. Kotarba Declaration in Support of Debtors' Objection [ECF No. 392] ("Kotarba Declaration") submitted in connection with the Objection. Rather than repeat all pertinent facts here, the Ad Hoc Committee of EFIH Unsecured Noteholders only highlights certain relevant facts.

located in New York and in the Northeast. *See* Debtors' Objection at ¶ 24; Kotarba Declaration at ¶ 4. Only a nominal subset of these creditors—in number and amounts owed—are located in Texas. *Id.*

6. The Ad Hoc Committee of EFIH Unsecured Noteholders consists of financial institutions, primarily located in New York and the Northeast, and has retained professionals located in New York, Washington, D.C., and Wilmington, Delaware. As of April 29, 2014, the Ad Hoc Committee of EFIH Unsecured Noteholders held approximately 76% of the EFIH Unsecured Notes. Additionally, as explained in the Debtors' Objection, the indenture trustees and ad hoc committees representing each level of the Debtors' funded indebtedness have retained financial and legal professionals primarily located in New York and on the East Coast. *See* Debtors' Objection at ¶ 20; Kotarba Declaration at ¶ 4.

7. Wilmington is the successor indenture trustee for the Second Lien Notes due 2021 issued by TCEH and TCEH Finance, Inc. under that certain indenture, dated as of October 6, 2010 (the "TCEH Second Lien Notes"). Wilmington is located a short walk from this Courthouse, at 500 Delaware Avenue, Wilmington, Delaware 19801. Its advisors are located in New York and Boston. On information and belief, a substantial portion of the holders of the TCEH Second Lien Notes reside in the Northeast.

## Argument

8. In their Objection, the Debtors explain why venue is proper in this Court, and why all relevant factors militate against transfer. Because venue is proper, Wilmington faces significant hurdles to overcome the presumption in favor of keeping these cases in Delaware. Unable to overcome these hurdles, Wilmington cites to inapposite or otherwise distinguishable case law, attempting to muddy what would otherwise be a clear decision for this Court.

### A. The Debtors' Choice of Venue is Entitled to Substantial Weight

9. There is no dispute that venue is proper in this Court. When a debtor's choice of venue is proper under Section 1408 of the Bankruptcy Code, that choice is accorded "substantial weight and deference." *In re PWS Holdings Corp.*, 1998 Bankr. LEXIS 549, at *4-5 (Bankr. D. Del. Apr. 28, 1998). A party seeking transfer must demonstrate that transfer is necessary for "the interests of justice" and "the convenience of the parties," 28 U.S.C. § 1412, and that "the balance of interests strongly favors transfer," *PWS Holding*, 1998 Bankr. LEXIS at *5. Moreover, as this Court noted in *In re Allied Systems Holdings, Inc.*, if the balance of interests is close and "you can't figure out what to do or it's a tie, the movant loses." *In re Allied Systems Holdings, Inc.*, No. 11564 (CSS) at 58:5-12 (Bankr. D. Del. May 31, 2012).

10. Wilmington cannot meet this heavy burden under applicable law and the facts of this case. Instead, ignoring the great weight of authority, Wilmington argues that the Debtors' chosen forum should be afforded "little weight." Mot. at ¶ 39. In support of this proposition, Wilmington quotes *The Paul H. Shield, MD, Inc. Profit Sharing Plan v. Northfield Labs. Inc. (In re Northfield Labs. Inc.)*, 467 B.R. 582 (Bankr. D. Del. 2010) as follows: "Accordingly, the 'Court [should] accord [ ] little weight to [the Debtors'] chosen forum . . . .'" Mot. at ¶ 39 (quoting *Northfield Labs.*, 467 B.R. at 591).[3] This selective quotation omits important language and context that make clear that *Northfield Laboratories* is inapplicable here.

---

[3] Wilmington cites to three additional cases following its quotation from *Northfield Laboratories*, however, none of these cases support Wilmington's position that the Debtors' choice of venue should be afforded "little weight," and each case involved a venue transfer based on facts not applicable here. *See Clark v. Chrysler Grp.*, No. 10-3030, 2010 WL 4486927 (Bankr. E.D. Pa. Nov. 5, 2010) (state court lawsuit against a debtor that had been removed to federal court was then subsequently transferred from plaintiff's chosen venue to the debtor's bankruptcy venue); *Doehler-Jarvis Ltd. P'ship v. U.S. Die Casting & Dev. Co.*, No. 92-2206, 1993 WL 96528 (N.D. Ill. Mar. 31, 1993) (adversary proceeding filed by non-debtor was transferred to venue where five related lawsuits were already pending); *In re Ocean Props. of Del., Inc.*, 95 B.R. 304, 305 (Bankr. D. Del. 1988) (stating that debtor's choice of venue is entitled to "great weight," but transferring venue nonetheless because, unlike here, transferee venue would better promote the economic and efficient administration of the estate).

11. In *Northfield Laboratories*, several years before a bankruptcy, plaintiffs filed multiple securities class action lawsuits against the debtor and multiple other defendants in the U.S. District Court for the Northern District of Illinois. *Northfield Labs.*, 467 B.R. at 585. Three years later, the debtor filed for bankruptcy in the Bankruptcy Court for the District of Delaware. *Id.* On the effective date of the debtor's plan of reorganization, plaintiffs filed a motion in the District Court to transfer the securities lawsuits to the Bankruptcy Court. *Id.* at 586. Having administered the litigation for three years, the District Court denied the motion and admonished plaintiffs for "judge-shopping." *Id.* Undeterred, the same plaintiffs then commenced an adversary proceeding in the Bankruptcy Court, mirroring the claims they were already pursuing in the District Court. *Id.* at 586, 590. The debtor and other defendants moved to transfer the adversary proceeding to the District Court where the identical securities lawsuits had been pending, and the Bankruptcy Court granted the motion. *Id.* at 590-91. In doing so, the Bankruptcy Court stated that "Plaintiffs' original choice of forum for the claims was the Illinois District Court," and "[t]he Court accords little weight to Plaintiffs' chosen forum ***for their second-round of securities litigation***." *Id.* (emphasis added).

12. Clearly, the unique facts of *Northfield Laboratories* have nothing in common with the situation here. Wilmington's incomplete citation of that opinion to suit its own needs cannot overcome the well-settled principle that the Debtors' choice of venue is entitled to substantial weight and deference.

**B.      Transfer Would Not Promote Efficient Administration of the Estate**

13. Wilmington argues that transferring these cases to Texas would promote the efficient and economic administration of the estates. However, the case law it cites does not support transfer. First, Wilmington cites to *Puerto Rico v. Commonwealth Oil Refinery Co. (In re Commonwealth Oil Refinery Co.)*, 596 F.2d 1239 (5th Cir. 1979) ("CORCO") to argue for

"the importance of centralizing restructuring efforts around a management team during the restructuring process." Mot. at ¶ 27. In *CORCO*, the movant—like Wilmington here—sought to transfer the bankruptcy case away from the debtor's chosen venue and to the venue where the debtor's production facilities, assets, and customers were all located. *CORCO*, 596 F.2d at 1241-43. However, the Court **denied the motion to transfer**, holding that because the "heart" of a restructuring "is working up a financial plan of arrangement acceptable to all relevant parties," venue was more efficient and economical in the location of the people "charged with that responsibility." *Id.* at 1243, 1247. Here, the Debtors' management, their professionals, and their significant creditors will be responsible for fixing the Debtors' capital structure and resolving the Debtors' financial situation. As in *CORCO*, their choice of venue should not be disturbed.

14. Next, Wilmington cites to *In re Lakota Canyon Ranch Dev., LLC*, No. 11-03739-8, 2011 WL 5909630, at *3 (Bankr. E.D.N.C. June 21, 2011) in support of its argument that "most material witnesses will be located in Texas . . . [and that this] weighs heavily in favor of transferring these cases to the Northern District of Texas." Mot. at ¶ 27. In *Lakota*, however, the Court did not transfer venue away from the debtor's *proper* choice of venue. There, the Court held that the debtor's chosen venue, North Carolina, was improper in the first instance because it was not the debtor's place of incorporation and the debtor did not conduct business there. *Lakota*, 2011 WL 5909630, at *2. Having determined that venue in North Carolina was not proper, the Court, unsurprisingly, transferred the bankruptcy proceedings to Colorado—the debtor's place of incorporation and place of business. *Id.* at *2-3.

15. Lastly, Wilmington cites to *In re Qualteq, Inc.*, No. 11-12572, 2012 WL 527669, at *6 (Bankr. D. Del. Feb. 16, 2012) to argue that transferring the cases to the venue "where the material parties to the restructuring are located, would promote the economic and efficient administration of the estate." Mot. at ¶ 30. *Qualteq*, however, supports retaining jurisdiction in

6

Delaware. In *Qualteq*, the Court transferred a bankruptcy case from the District of Delaware to the Northern District of Illinois. *Qualteq*, 2012 WL 527669, at *1. In doing so, the Court noted that only one of the debtor entities was incorporated in Delaware, a majority of the unsecured creditors were located in Illinois, and the debtor's lead counsel was located in Chicago.[4] *Id.* at *1-3, 6. Here, more than 20 of the Debtor entities are incorporated in Delaware, a majority of the creditors are located much closer to Delaware than to Texas, and the Debtors' and major constituencies' professionals are located in the Northeast, not Texas.

### C.   Docket Congestion Does Not Weigh in Favor of Transfer

16.   As the Debtors point out in their Objection, Wilmington's argument that this Court's docket is more congested than the docket of the Bankruptcy Court for the Northern District of Texas is incorrect, and, in fact, the opposite is true. Debtors' Objection at ¶ 36.

17.   Similarly, the case law Wilmington cites does not support its argument. Mot. at ¶ 31 (citing *In re Apple, Inc.*, 602 F.3d 909, 915 (8th Cir. 2010) and *Gro Master, Inc. v. Farmweld, Inc.*, 920 F. Supp. 2d 974, 993 (N.D. Iowa 2013)). Neither of these cases are bankruptcy cases, and neither relied on docket congestion as the reason for granting a motion to transfer venue. In *Apple*, the Court granted a motion to transfer venue to a court with an allegedly *more crowded* docket, holding that "relative docket congestion cannot override" the other factors. 602 F.3d at 915. In *Gro Master*, the Court listed docket congestion as one of several relevant factors, but did not consider docket congestion in making its decision, instead granting the venue transfer because both plaintiff and defendant were "strangers to the forum" and plaintiff was merely trying to forum shop. 920 F. Supp. 2d at 993-94.

---

[4]   Moreover, in *Qualteq*, unlike here, the debtors did not rely on the proximity of Delaware to its creditors or the professionals in its decision to file in Delaware. *Id.* at *7 (noting that the debtors' representative expressly testified that the debtors chose Delaware "for three reasons: (1) predictability of process, (2) familiarity of the Court with business issues, and (3) the desire to create distance between the Debtors' operations and the ongoing lawsuits in Chicago").

### D. Litigation Pending In Texas Does Not Weigh in Favor of Transfer

18. Wilmington argues that the Debtors' involvement in pending litigation in Texas, which may (in unidentified ways) "affect the *res* of the estate," supports transfer to Texas.[5] Mot. at ¶ 34. The case law cited by Wilmington does not support this argument.

19. In two of the cases cited by Wilmington—*Brown v. Wells Fargo, N.A.*, 463 B.R. 332 (M.D.N.C. 2011) and *Doss v. Chrysler Grp., LLC*, No. 09-02130, 2009 WL 4730932, at *5 (D. Az. Dec. 7, 2009)—the Court transferred pending litigations to the venue of the bankruptcy cases, not vice versa. *See Brown*, 463 B.R. at 339-40; *Doss*, 2009 WL 4730932, at *5.

20. Additionally, Wilmington argues that "[t]he need to transfer the bankruptcy to the forum where pending actions exist may be particularly acute where the debtor is subject to environmental liability in its home forum," Mot. at ¶ 34, but the cases it cites to do not support that argument and are distinguishable from the facts here. In *In re Standard Tank Cleaning Corp.*, the Court transferred venue from New York to New Jersey, however, venue was not proper in New York in the first place. 122 B.R. 174, 176 (Bankr. E.D.N.Y. 1990). In *Doehler-Jarvis Ltd. P'ship v. U.S. Die Casting & Dev. Co.*, the Court transferred an environmental pollution adversary proceeding, rather than an entire bankruptcy case, to a forum where five other related actions were already pending, holding that "[t]he existence of related litigation in the transferee Court strongly supports a motion to transfer." No. 92-2206, 1993 WL 96528, at *1 (N.D. Ill. Mar. 31, 1993).

### E. The Debtors' Incorporation In Delaware Is Not A Nominal Connection

21. Wilmington argues that the fact "[t]hat certain of the Debtors are incorporated in Delaware should bear little weight in determining the convenience of the parties." Mot. at ¶ 46.

---

[5] Wilmington overstates the quantity of litigation pending against the Debtors in Texas. The vast majority of the litigations included on Exhibit B to the Motion are cases pending against Oncor Electric Delivery Company LLC, a non-debtor entity. *See* Mot. at Exhibit B.

8

However, the cases it cites in support—*In re Innovative Commc'n Co., LLC*, 358 B.R. 120, 127-28 (Bankr. D. Del. 2006) and *In re Ofia Realty Corp.*, 74 B.R. 574, 577 (Bankr. S.D.N.Y. 1987)—are inapposite.

22. In *Innovative Commc'n*, Delaware debtors filed chapter 11 cases in the U.S. Virgin Islands. *Innovative Commc'n*, 358 B.R. at 121-22, 127-28. Involuntary bankruptcy petitions were already pending against two of the debtors in Delaware, and, on the debtors' motion, the Delaware Bankruptcy Court transferred the Delaware cases to the U.S. Virgin Islands. *Id.* at 127-29. Thus, when the Court held that "the place of incorporation is not a controlling factor" (the language cited by Wilmington), it did so in the context of *approving a debtors' motion* to transfer involuntary bankruptcy petitions *to the debtors' preferred venue*. *Id.*

23. In *Ofia Realty*, the Court described the debtor as a "phantom corporation" in New York whose only connection to the state was that "its sole shareholder and president resides in Harrison, New York." *Ofia Realty*, 74 B.R. at 576. Creditors holding "99% of the non-insider obligations" of the debtor moved to transfer venue to Texas, where all of the debtor's non-insider creditors and its assets (consisting of real property that would require appraisal) were located. *Id.* at 575. On these facts, the Court granted the motion to transfer venue. *Id.* at 577. Here, significant creditors oppose the Motion.

F.   **The Proximity of Interested Parties Does Not Weigh in Favor of Transfer**

24. Wilmington also argues that because "the Northern District of Texas is the local court for the Debtors, their businesses, their customers, and the majority of their trade creditors," these cases "would benefit from being in a venue where the judge presiding would more likely have active familiarity with the community and the milieu in which the Debtors' operate." Mot. at ¶ 41. This bankruptcy, however, is a balance sheet—as opposed to operational—restructuring,

*see* Debtors' Objection at ¶ 16, so any community familiarity with the Debtors' business operations in the Northern District of Texas will not be relevant.

25. Although Wilmington cites *In re B.L. of Miami, Inc.*, 294 B.R. 325 (Bankr. D. Nev. 2003) in support of its argument, that case is easily distinguished. In *B.L. of Miami*, the Court transferred a bankruptcy case from Nevada to the Southern District of Florida because the debtor's lone asset was a nightclub in Miami and a "significant majority" of the creditors were located in Florida. *B.L. of Miami*, 294 B.R. at 327. Here, the holders of the Debtors' funded indebtedness are primarily located in the Northeast, with only a small percentage in Texas.

## Conclusion

For the reasons stated herein and in the Debtors' Objection, the Ad Hoc Committee of EFIH Unsecured Noteholders respectfully requests that this Court deny Wilmington's motion to transfer venue of these chapter 11 cases to the Northern District of Texas.

*Remainder of page intentionally left blank.*

Dated: May 19, 2014
      Wilmington, Delaware

**COUSINS CHIPMAN & BROWN, LLP**

/s/ Scott D. Cousins
Scott D. Cousins (No. 3079)
Mark D. Olivere (No. 4291)
Ann M. Kashishian (No. 5622)
1007 North Orange Street, Suite 1110
Wilmington, Delaware 19801
Telephone:   (302) 295-0191
Facsimile:    (302) 295-0199
Email:        cousins@ccbllp.com
              olivere@ccbllp.com
              kashishian@ccbllp.com

- and -

**AKIN GUMP STRAUSS HAUER & FELD LLP**
Ira S. Dizengoff (admitted *pro hac vice*)
Stephen M. Baldini (admitted *pro hac vice*)
Abid Qureshi (admitted *pro hac vice*)
Robert J. Boller
One Bryant Park
New York, New York 10036
Telephone:   (212) 872-1000
Facsimile:    (212) 872-1002
Email:        idizengoff@akingump.com
              sbaldini@akingump.com
              aqureshi@akingump.com
              rboller@akingump.com

**AKIN GUMP STRAUSS HAUER & FELD LLP**
Scott L. Alberino (admitted *pro hac vice*)
1333 New Hampshire Avenue
Washington, DC 20036-1564
Telephone:   (202) 887-4000
Facsimile:    (202) 887-4288
Email:        salberino@akingump.com

*Co-Counsel for the Ad Hoc Committee of EFIH Unsecured Noteholders*