IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re<br><br>ENERGY FUTURE<br>HOLDINGS CORP., *et al.*,<br><br>*Debtors.* | Chapter 11<br><br>Case No. 14-10979 (CSS)<br><br>(Jointly Administered) |

**STATEMENT OF CSC TRUST COMPANY OF DELAWARE,
AS INDENTURE TRUSTEE, REGARDING
STATUS CONFERENCE ON MAY 22, 2014**

CSC Trust Company of Delaware, as trustee (the "Indenture Trustee") for the 10% Senior Secured Notes Due 2020 (the "10% First Lien Notes") issued by certain of the Debtors under the Indenture dated as of August 17, 2010 (together with all supplements, amendments, and exhibits, the "10% Indenture") between Energy Future Intermediate Holdings LLC ("EFIH"), EFIH Finance Inc. ("EFIH Finance" and, together with EFIH, the "EFIH Debtors") and the Indenture Trustee (as successor to The Bank of New York Mellon Trust Company, N.A.), enters this statement (the "Statement") regarding the status conference scheduled for May 22, 2014. The Indenture Trustee respectfully represents and sets forth as follows:

**INDENTURE TRUSTEE'S POSITION**

1. While the Indenture Trustee's positions have in some cases been preliminary, given the complexity of the issues to be decided, the timing of the Debtors' motions, the lack of detail in certain of the motions, and the early stage of discovery, it is clear that there is no means to adjudicate the requested relief two weeks' hence.

## BACKGROUND

2.   This Court has scheduled a status conference for May 22, 2014 (the "Status Conference"). The purpose of the Status Conference is to discuss the proposed scope of the hearing currently scheduled for June 5, 2014 (the "June 5 Hearing") and whether it is necessary or appropriate to push back hearings on any of the relief set for the June 5 Hearing. As the Court noted at the First Day Hearing:

> "I am going to set the final hearing with this for June 5… as part of that status conference, we'll update further … whether moving this [a]long the path is an appropriate thing to do … I'll at that time consider whether pushing it further back is more appropriate. At that time we'll have the committee in place and we'll actually have all the final documents filed."

*See* Hrg. Tr. May 1, 2014 at p. 153:13-22. To date, the Indenture Trustee has not reached agreement with the Debtors with respect to a modification of the proposed June 5 Hearing date.

3.   As of now, if the Debtors are permitted to go forward on their proposed agenda for the June 5 Hearing, this Court would hear the Debtors' motions for:

- approval of the First Lien DIP Facility (the "First Lien DIP Motion"), including determination of the First- and Second Lien Noteholders' entitlement to the redemption premiums (the "Redemption Premium" and the determination of such entitlement, the "Redemption Premium Determination");
- approval of the Second Lien DIP Facility (the "Second Lien DIP Motion");
- approval of the EFIH First Lien Settlement, EFIH Second Lien Settlement, and EFH-EFIH Intercompany Settlement relating to the Oncor TSA Amendment (the "Settlements Motion"); and
- authorization of the RSA Debtors to assume the Restructuring Support Agreement (the "RSA Assumption Motion").

4.   Notwithstanding the breadth of relief the Debtors seek at the June 5 Hearing, the Debtors filed certain pleadings required under the Restructuring Support Agreement at the last

possible moment.[1] Late in the evening on May 15, 2014 (just prior to midnight), the Debtors filed (i) their Settlements Motion and (ii) their Second Lien DIP Motion.[2] On Friday, May 16, 2014, the Debtors filed their RSA Assumption Motion.[3]

5. The Indenture Trustee has set forth its position with respect to the First Lien DIP Motion, the Redemption Premium Determination, and the tender offer commenced in connection with the EFIH Settlements (the "Tender Offer") in several pleadings filed with this Court, including:

- the Preliminary Objection of CSC Trust Company of Delaware, as Indenture Trustee, to Debtors' Motion to Approve First-Lien Post-Petition Financing, Redeem First Lien and Second Lien Notes, and Determine Secured Claim [Dkt. 421] (the "Preliminary Objection");
- the Complaint for Declaratory Relief [Adv. Dkt. 1] (the "Complaint");
- the Emergency Motion of CSC Trust Company of Delaware, as Indenture Trustee, to Compel the Debtors to Obtain Approval of Procedures Governing the EFIH First Lien Tender Offer [Dkt. 461] (the "Tender Offer Motion"); and
- the Joint Motion of CSC Trust Company of Delaware, as Indenture Trustee, and Certain EFIH 10% First Lien Noteholders, for Confirmation that the Automatic Stay Does Not Apply or, Alternatively, for Limited Relief from the Automatic Stay, Solely Regarding Rescission of Acceleration [Dkt. 473] (the "Stay Applicability Motion").

It is clear from the issues that have been joined that there is no means to adjudicate the requested relief two weeks' hence.

---

[1] At the First Day Hearing, the Debtors represented that they would have pleadings relating to the First Lien DIP Financing filed by May 15 and would "make every effort" to file them "as quickly as possible if not before then." See Hrg. Tr. May 1, 2014 at p. 152:9-16. Unfortunately, the Debtors have not yet filed their memorandum of law regarding the Redemption Premium or their proposed form of order approving the First Lien DIP Motion or the Second Lien DIP Motion, citing their entitlement to wait until 14 days prior to the hearing on the First Lien DIP Facility.

[2] The Second Lien DIP Facility is a nearly $2 billion facility subject to mandatory conversion to equity in reorganized EFH (the main asset of which will be Oncor equity).

### I. The Indenture Trustee's Initial View of What Must Be Resolved at the Debtors' Requested Hearings

6. The Indenture Trustee's primary concern with respect to the relief sought at the June 5 Hearing is the Redemption Premium Determination. The Indenture Trustee's Complaint has sought a timely determination that the Redemption Premium is a valid allowed first lien claim, and the Indenture Trustee seeks that the Redemption Premium claim be allowed, notwithstanding the Debtors' efforts to disallow such claims through the First Lien DIP Motion (which request for disallowance is procedurally defective).

7. There are three potential and somewhat overlapping routes through which the Indenture Trustee is entitled to obtain satisfaction of the Redemption Premium, and each is distinct and must be preserved through any bankruptcy court litigation and appeals: first, the Indenture Trustee's first lien position against the Debtors; and, second, the Indenture Trustee's rights to withhold distribution to the Second Lien Noteholders pursuant to the provisions (including, without limitation, the waterfall provisions) of the Collateral Trust Agreement, dated as of November 16, 2009 (the "Collateral Trust Agreement").[4] Third, and as discussed below, a possible allowed unsecured claim.

8. To date, the Debtors have not agreed to stipulate that the Indenture Trustee has a disputed fully secured claim for the Redemption Premium and that such status will be preserved through any and all appeals.[5] Nor have the Debtors agreed to escrow cash from the amounts

---

[4] The Collateral Trust Agreement requires withholding from junior creditors even where the Indenture Trustee's claim to an obligation is disallowed by the bankruptcy court with respect to the debtor. But to be clear, the Indenture Trustee does not submit, and has not submitted, the determination of its rights under the Collateral Trust Agreement to this Court or consented to such adjudication on the Debtors' proposed timeline for these transactions.

[5] The Debtors, in the recently filed Second Lien DIP Motion, have stated that the Second Lien DIP Facility lenders have agreed to make their new debt junior to any Redemption Premium claim of the First Lien Noteholders. However, the Debtors have not clarified whether that protection will persist in the event that an appeal must be pursued. Further, as stated above, the Debtors have not yet filed the proposed order in respect of the Second Lien DIP Motion, and the priority scheme must be confirmed in such order when it is filed.

payable under the Second Lien Settlement, so that the Indenture Trustee has its agreed opportunity under the Collateral Trust Agreement to enforce its intercreditor rights. Thus, the Indenture Trustee is potentially confronted with partial unsecured claim status, and must be mindful to preserve the value of a potentially substantial unsecured claim, depending upon legal outcomes and future events which the Indenture Trustee cannot predict.

9.    While the law and the 10% Indenture are clear that the Redemption Premium is a secured claim, the Indenture Trustee cannot ignore the fact that, in some cases, courts have awarded unsecured claims in the context of make-whole claims and no-call protections, which leaves open the possibility of unsecured status under Section 502 of the Bankruptcy Code, in addition to the claim for secured status under Section 506.

10.    For example, there are several cases in which courts have concluded that make-whole premiums were not payable as liquidated damages claims under the terms of the documents, but nevertheless allowed enforcement by granting unsecured damages claims when the debtors were solvent. *See, e.g., Gencarelli v. UPS Capital Bus. Credit*, 501 F.3d 1 (1st Cir. 2007); *In re Premier Entm't Biloxi LLC*, 445 B.R. 582 (Bankr. S.D. Miss. 2010) (each granting unsecured claims under section 502 against solvent debtors for prepayment premiums).

## II.    Issues Requiring Determination if the June 5 Hearing Goes Forward as Planned

11.    Due to the number of motions the Debtors and RSA Parties apparently plan to advance at the June 5 Hearing, and the responses thereto, the Court would have to adjudicate two types of issues: first, issues solely relating to approval of the First Lien DIP Facility and the Redemption Premium Determination, assuming full protection of secured status and escrow of disputed intercreditor cash (including interest to allow accrual during litigation and appeals); second, issues relevant if the Indenture Trustee is ultimately granted unsecured claim status for

all or part of the Redemption Premium or the Debtors decline to escrow disputed intercreditor cash. Each of these issues requires targeted, yet fulsome discovery and resolution of factual disputes before they can be subject to final determination by this Court.

### A. Issues Related to the DIP Approval and Redemption Premium Determination, Assuming Fully Secured Claim Status

12. To rule on the First Lien DIP Motion, this Court will need to undertake substantial consideration of various issues raised by the Indenture Trustee in its Complaint, Preliminary Objection, Tender Offer Motion, Stay Applicability Motion, and a further objection to be filed by the current May 29, 2014 deadline. Specifically, among these issues, this Court will have to resolve:

- the meaning of the word "redemption";
- the interaction of the redemption and acceleration provisions (if any) in the 10% Indenture;
- whether the Debtors intentionally defaulted under the 10% Indenture and the effect of any intentional default on the First Lien Noteholders' entitlement to the Redemption Premium;
- whether certain of the lenders under the First Lien DIP Facility are entitled to the good faith finding under section 364(e);
- applicability of the stay to rescission rights, and claims arising from any denial of such rights;
- the appropriateness of the EFIH Settlements in light of the unequal treatment such settlements afford to First Lien Noteholders;
- solvency of EFIH, which is not a condition of allowance but may affect the allowance of the Redemption Premium claim;
- *sub rosa* plan and section 1123 issues; and
- issues relating to deficiencies in the Tender Offer.[6]

---

[6] The Debtors' Settlements Motion contained a number of disclosures with respect to the payments being made to Settling First Lien Noteholders that had been omitted from the Debtors' Tender Offer materials. While there are still important gaps in the presentation, we leave it to the Debtors to explain why this information was not sufficiently material to have been included in the Tender Offer package. The Debtors are seeking this Court's approval of the "First Lien Opt-in Materials" and the related "Opt-In Procedures." *See* Proposed Order Approving EFIH Settlements page 2 ¶ 2. This appears to be a de facto request for a bankruptcy court determination that the Tender Offer complies with the federal securities laws, including Rule 10b-5.

Discovery is required with respect to several of these items, and will require substantial time to complete (and the speed of such completion will mainly be a product of the degree of cooperation received from the RSA Parties).[7]

### B. Issues Relevant if the Trustee Has Unsecured Status for All or Part of the Redemption Premium

13. If the Court ultimately grants the Indenture Trustee an unsecured claim for all or part of the Redemption Premium, or the Debtors do not agree to a full cash escrow in the amount of the disputed Redemption Premium plus interest to allow accrual during any litigation or appeals from any proposed second lien distribution, this will present an additional set of issues that the Indenture Trustee respectfully submits this Court must rule on to grant the relief set for the June 5 Hearing. These issues include:

- resolution of the Second Lien DIP and Restructuring Support Agreement case control features, including large fees that prevent alternative transactions that might otherwise enhance and better distribute value among all potential unsecured creditors;
- valuation issues arising from the conversion ratio of claims of certain Second Lien DIP lenders to equity;
- the Debtors' failure to consider alternative DIP proposals, as well as testing the proposition that "tax reasons" mandated a deal with the PIKs and no other EFIH creditor constituency;
- the size of fees payable to the PIKs (particularly the $380 million "break fee," given the lack of a market test);
- the power granted to the PIKs to determine recipients of all third party new equity participation;
- the fairness of the EFIH Settlements to the EFIH unsecured creditors; and
- the Debtors' exploitation of the true potential equity value and whether the PIK Noteholders are entitled to all of the equity value or must share it with other creditor constituencies.

---

[7] The procedures concerning the overlapping relief sought in the Indenture Trustee's complaint and motions, and Debtors' motions, remain to be discussed, and potentially coordinated, for the benefit of the Court and the parties.

52881/0001-10631387v1

### C. The "Omnibus" Nature of the Relief Sought on June 5 Creates Greater Need for Delay in Adjudication, Not Less

14. The Debtors have linked the Second Lien Settlement Motion to the First Lien Settlement Motion and the EFH-EFIH Intercompany Settlement in a single Settlements Motion. The linkage between each of the motions set for the June 5 Hearing further limits the relief this Court can grant at the hearing. For example:

- The Debtors alternatively refer to the First Lien Settlement as a separate settlement and also as part of a larger "Settlements Motion." This raises a timing problem for the Debtors (since the Debtors' First Lien Settlement is weighed down by the baggage of the Second Lien Settlement, Second Lien DIP, and Oncor TSA deals), but also aids the Debtors and torments the Indenture Trustee by purporting to shield the First Lien Settlement from stand-alone scrutiny.[8]
- The Second Lien Settlement is linked to the Second Lien DIP Financing, since that DIP funds the Second Lien Settlement. However, forcing through the Second Lien DIP Financing and Second Lien Settlement potentially cuts off the Indenture Trustee's intercreditor rights under the Collateral Trust Agreement; these rights are subject to non-exclusive jurisdiction in New York courts and the Indenture Trustee reserves its rights with respect to the appropriate forum and jurisdiction for such issues to go forward, at least with respect to non-debtors. *See* Collateral Trust Agreement § 7.16.

15. The Debtors concede that the Restructuring Support Agreement does not require approval of the Settlements until day 75 following the Petition Date (*see* Restructuring Support Agreement § 8.02(b) and paragraph 4 of the Settlements Motion); even that deadline, the Indenture Trustee contends, is artificial. The third party First Lien DIP Commitment Letter does not expire until 110 days after the Petition Date. Further, the deadlines under the Restructuring Support Agreement may not merit adherence at all, given the admitted lack of pursuit of

---

[8] Page 7, n. 5 of the Settlements Motion creates further confusion on this point:

> The summaries of the First Lien Settlement, Second Lien Settlement, and Oncor TSA Amendment set forth in this section are qualified in their entirety by the provisions of the Restructuring Support Agreement. To the extent there exists any inconsistency between this summary and the Restructuring Support Agreement, the Restructuring Support Agreement shall govern.

-8-

alternatives to the EFIH equity transaction in the Restructuring Support Agreement. The Court must require the Debtors to put on proof regarding the necessity of the Second Lien DIP Financing before the deadlines set forth in the Restructuring Support Agreement are slavishly heeded by all parties in interest and this Court. For example, the Debtors admit that the massive fees payable by virtue of approval of the Second Lien DIP Motion are unprecedented and intended to foreclose any other transaction alternative in this case. The Debtors justify them primarily with untested allegations of "tax reasons", namely, that no party other than existing EFIH creditors can facilitate the alleged desirable tax treatment for an EFIH restructuring. However, in the same documents that tell us that third parties cannot be involved because of such "tax reasons", the PIK holders have reserved the right to direct hundreds of millions of dollars of the Second Lien DIP Facility and its associated equity commitment to unidentified third parties.

## CONCLUSION

16. The expansive scope of relief sought by the Debtors at the June 5 Hearing requires resolution of numerous issues – as presented, the filed motions irrevocably determine the outcome of the EFIH bankruptcy case. As set forth in this Statement, many of these issues necessitate fulsome discovery and resolution of difficult and contested factual and legal questions. The Debtors themselves stated that they hoped to come to a "consensual schedule" concerning this relief, and that there would be a "full opportunity" for this Court's assistance in coming up with a schedule that works for the parties and the court." *See* Hrg. Tr. May 1, 2014 at p. 141:11-18. Given the purpose of the Status Conference, namely, to discuss the proposed scope of the June 5 Hearing, the Indenture Trustee submits this Statement in support of its position that the Court push back the date for ruling on these issues.

52881/0001-10631387v1

## **NOTICE**

17.  Notice of this Statement has been provided to: (i) the Office of the United States Trustee for the District of Delaware; (ii) counsel to the Debtors; (iii) counsel to the Official Committee of Unsecured Creditors; (iv) all other parties required to receive service under Rule 2002-1(b) of the Local Rules.

*[Remainder of Page Left Intentionally Blank]*

52881/0001-10631387v1

Dated: May 20, 2014

        COLE, SCHOTZ, MEISEL, FORMAN
        & LEONARD, P.A.

/s/ Norman L. Pernick
Norman L. Pernick (No. 2290)
J. Kate Stickles (No. 2917)
Nicholas J. Brannick (No. 5721)
500 Delaware Avenue, Suite 1410
Wilmington, DE 19801
Telephone: 302-652-3131
Facsimile: 302-652-3117
npernick@coleschotz.com
kstickles@coleschotz.com
nbrannick@coleschotz.com

Warren A. Usatine
25 Main Street,
P.O. Box 800
Hackensack, NJ 07602
Telephone: 201-489-3000
Facsimile: 201-489-1536
wusatine@coleschotz.com

ROPES & GRAY LLP
Mark R. Somerstein
Keith H. Wofford
1211 Avenue of the Americas
New York, NY 10036-8704
Telephone: 212-596-9000
Facsimile: 212-596-9090
Mark.Somerstein@ropesgray.com
Keith.Wofford@ropesgray.com

D. Ross Martin
Andrew G. Devore
Prudential Tower
800 Boylston Street
Boston, MA 02199-3600
Telephone: 617-951-7000
Facsimile: 617-951-7050
Ross.Martin@ropesgray.com
Andrew.Devore@ropesgray.com

*Counsel for CSC Trust Company of Delaware, as successor indenture trustee and collateral trustee*

DRINKER BIDDLE & REATH LLP
James H. Millar
1177 Avenue of the Americas
41st Floor
New York, NY 10036-2714
Telephone: 212-248-3264
Facsimile: 212-248-3141
James.Millar@dbr.com

*Counsel for CSC Trust Company of Delaware, as successor indenture trustee*