IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

FILED

2014 MAY 20  PM 4:39

CLERK
U.S. BANKRUPTCY COURT
DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) | Case No. 14-10979 (CSS) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | |

**DECLARATION OF ANTHONY R. HORTON IN SUPPORT
OF THE DEBTORS' OBJECTION TO (A) EMERGENCY MOTION OF CSC
TRUST COMPANY OF DELAWARE, AS INDENTURE TRUSTEE, TO COMPEL
THE DEBTORS TO OBTAIN APPROVAL OF PROCEDURES GOVERNING THE
EFIH FIRST LIEN TENDER OFFER AND (B) EMERGENCY MOTION OF EFIH 2ND
LIEN NOTES INDENTURE TRUSTEE TO COMPEL DEBTORS TO OBTAIN PRIOR
APPROVAL OF PROCEDURES GOVERNING THEIR EFIH 2ND LIEN TENDER OFFER**

I, Anthony R. Horton, being duly sworn, state the following under penalty of perjury:

1.      I am the Senior Vice President, Treasurer and Assistant Secretary of EFH Corp.,

the Senior Vice President and Treasurer of EFIH and the Treasurer of TCEH, each located at

1601 Bryan Street, Dallas, TX 75201.  I received a B.B.A. with a concentration in management

and economics and a master's degree in accounting and finance from the University of Texas at

Arlington.  I am a Certified Public Accountant, Certified Management Accountant, Certified

Financial Manager and a Chartered Financial Analyst.  I am a member in good standing with the

Institute of Management Accountants as well as the Association of Investment Management and

Research. I have been employed by the Debtors and their predecessors for 28 years.  I have

---

[1] The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810.  The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201.  Due to the large number of debtors in these chapter 11 cases, which are being jointly administered on an interim basis, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

served as the Senior Vice President, Treasurer and Assistant Secretary of EFH Corp. since 2004. In such capacities, I have worked on numerous financing transactions on behalf of the Debtors, including capital markets transactions similar to the Settlement Opt-Ins, and I am generally familiar with the Debtors' businesses, day-to-day operations, financial matters, results of operations, cash flows, and underlying books and records.

2.     I submit this declaration in support of the *Debtors' Objection to (A) Emergency Motion of CSC Trust Company of Delaware, as Indenture Trustee, to Compel the Debtors to Obtain Approval of Procedures Governing the EFIH First Lien Tender Offer and (B) Emergency Motion of EFIH 2nd Lien Notes Indenture Trustee to Compel Debtors to Obtain Prior Approval of Procedures Governing Their EFIH 2nd Lien Tender Offer* (the "Objection").[2]  Except as otherwise noted, I have personal knowledge of the matters set forth herein.

3.     The Debtors contend that they owe no makewhole premium under the EFIH First Lien Notes and EFIH Second Lien Notes and are prepared to litigate accordingly.  Nonetheless, to avoid litigation risk and to attempt to facilitate (if reasonably possible) a consensual restructuring, the Debtors reached prepetition settlements with certain of the parties to the Restructuring Support Agreement regarding their makewhole claims.  Rather than stop there and force all other holders to litigate their makewhole claims, the Debtors thought it would be both fair and in the best interests of the estates to offer similar settlements to the remaining EFIH First and EFIH Second Lien Holders.  This will give these holders an alternative to litigating, which the Debtors will do regardless of how many of these holders settle their makewhole claims.

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Objection.

4.      The Debtors have been in various stages of negotiation with counsel to both the First Lien Trustee and the Second Lien Trustee and their ad-hoc groups for approximately nine months.  Specifically, the Debtors organized the EFIH Second Lien Holders in August 2013 and began paying their counsel fees that same month—and the Debtors organized the EFIH First Lien Holders in September 2013 and began paying their professionals' fess that same month. Since that time, the Debtors have engaged in numerous discussions with counsel and financial advisors for the Trustees, including regarding potential settlements of their Holders' alleged makewhole claims.  But, with one very brief exception, these discussions never advanced to the point where the EFIH First and Second Lien Holders were willing to get restricted from trading their securities in accordance with applicable securities laws and engage in a direct negotiation with the Debtors.  To the contrary, counsel to the EFIH First and Second Lien Trustees consistently stated prepetition (and reiterated postpetition) that they oppose the proposed settlements.  Accordingly, the Debtors determined it was a prudent and constructive step to initiate the Opt-In Periods to reach out to the First and Second Lien Holders directly, to invite their participation in the proposed settlement.

5.      The Debtors used a tender offer process—a process the Debtors and their noteholders have used frequently in the past—because of the large number of noteholders being invited to settle.  Unlike the Debtors' past offers, in this case, the Debtors, as debtors in possession under the Bankruptcy Code, have conditioned consummation of the offers on Court approval as required by applicable bankruptcy law.  Thus, that the offers are subject to Court approval is highlighted throughout the Debtors' offer documents numerous times and in their public statements.

6. The Debtors do not dispute that Fidelity's global settlement is on different terms to the makewhole settlements of other holders of EFIH First Lien Notes and Second Lien Notes. But, Fidelity has numerous positions across the Debtors' capital structure. And each of the other parties to the Restructuring Support Agreement provided unique value—beyond their First and Second Lien claims—that made the Agreement possible.

7. The Settlement Opt-Ins do not solicit votes for a plan of reorganization and clearly state that fact. The EFIH First and Second Lien Opt-Ins are simply claim settlement offers. The holders have a simple voluntary choice, as they would with any settlement offer from any chapter 11 debtor: they can either (1) accept the Debtors' offer to settle their claims; or (2) retain their rights to litigate with respect to such claims.

8. The Settlement Opt-In Period includes a period during which EFIH Second Lien Holders may receive a premium for early participation in the tender offers, a concept commonly referred to as a "step down."

9. The Debtors have included early participation premiums in past offers to noteholders—including some of the existing EFIH First and Second Lien Holders—and have never *once* received a complaint or indication that such actions were impermissible under the securities laws or that they cause an insurmountable administrative burden for noteholders. Specifically, since 2009, the Debtors have undertaken four exchange offers with a 20 or 21 business day tender period and an early participation premium made available in the first 10 business days. Indeed, the SEC has previously reviewed and approved exchange offers by the Debtors that included 10-business-day step downs. The following chart lists examples of step-down tender offers conducted by the Debtors:

| Closing Date | Issuer | Amount | Early Participation Premium per $1,000 of Principal |
|---|---|---|---|
| January 2013 | EFIH | $1,317,000,000 | $50 |
| | | $124,400,000 | $50 |
| August 2010 | EFIH | $4,490,000,000 | $50 |
| November 2009 | EFH Corp./EFIH | $12,150,000,000 | $30 |

10.    Further, I am aware of other exchange offers that have included step-downs, and I believe that such step-downs are ubiquitous in the marketplace.

11.    It is not useful to parse Fidelity's settlement position-by-position. Fidelity is a significant creditor with numerous positions in the Debtors' capital structure.  As with any settlement, both sides made various concessions that together constitute a fair compromise.

12.    EFIH's release of its claims against EFH Corp.—which will occur *under the proposed plan or reorganization*—is not in direct exchange for Fidelity's participation in the EFIH Second Lien Settlement.  For one, the EFIH release is actually conditioned on approval of the Oncor TSA Amendment.  Put simply, in exchange for the rerouting of cash flows from EFH Corp. to EFIH as part of Oncor TSA Amendment, EFIH would agree, under the plan, to release its claims against EFH as well as pay EFH $55 million. The parties backstopping the EFIH Second Lien DIP Facility have the right to purchase Fidelity's EFH Corp. unsecured claims at 37.15% of par plus accrued interest.  This "call right" is not a benefit to Fidelity and again has nothing to do with whether other EFIH Second Lien Holders should choose to settle their makewhole claims.

13.    The Debtors provided the mathematical calculations underpinning their offer with respect to the EFIH Second Lien Holders, who expressed no objection.  I believe it is perfectly

appropriate for the Debtors to state their assumptions in performing a complex makewhole

calculation when they state the total consideration to holders.

14.    The Debtors have not undertaken the substantial efforts necessary to give all

qualified holders of EFIH First Lien Notes and Second Lien Notes the opportunity to participate

in the settlements only to rescind the Settlement Opt-Ins for a frivolous reason.  To the contrary,

the Debtors hope to achieve the maximum possible level of participation in the settlements and

will make every effort close the Settlement Opt-Ins as scheduled subject to Court approval.

*[Remainder of page intentionally left blank.]*

I declare under penalty of perjury that the foregoing is true and correct.

Dated: May 20, 2014
       New York, New York

_____

Anthony R. Horton
Senior Vice President, Treasurer and Assistant
Secretary of EFH Corp. and EFIH
Treasurer of TCEH