IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) Case No. 14-10979 (CSS) |
| Debtors. | ) (Jointly Administered) |
| | ) Re: Docket Nos. 441 & 461 |
| | ) Hearing Date and Time: May 22, 2014 at 9:30 a.m. |

**LIMITED RESPONSE OF THE AD HOC GROUP OF TCEH UNSECURED
NOTEHOLDERS TO (I) THE EMERGENCY MOTION OF EFIH 2ND LIEN NOTES
INDENTURE TRUSTEE TO COMPEL DEBTORS TO OBTAIN PRIOR APPROVAL
OF PROCEDURES GOVERNING THEIR EFIH 2ND LIEN TENDER OFFER AND
(II) THE EMERGENCY MOTION OF CSC TRUST COMPANY OF DELAWARE, AS
INDENTURE TRUSTEE, TO COMPEL THE DEBTORS TO OBTAIN APPROVAL
OF PROCEDURES GOVERNING THE EFIH FIRST LIEN TENDER OFFER**

The ad hoc group of certain holders (the "Ad Hoc Group of TCEH Unsecured Noteholders") of approximately $2.7 billion of 10.25% Fixed Senior Notes due 2015 (including Series B) and 10.50%/11.25% Senior Toggle Notes due 2016 issued by Texas Competitive Electric Holdings Company LLC ("TCEH") and TCEH Finance, Inc., by and through its undersigned counsel, hereby files its limited response (the "Response") to (i) the Emergency Motion of EFIH 2nd Lien Notes Indenture Trustee to Compel Debtors to Obtain Prior Approval of Procedures Governing Their EFIH 2nd Lien Tender Offer [Docket No. 441] (the "Second Lien Motion to Compel") and (ii) the Emergency Motion of CSC Trust Company of Delaware, as Indenture Trustee, to Compel the Debtors to Obtain Approval of Procedures Governing the EFIH First Lien Tender Offer [Docket No. 461] (the "First Lien Motion to Compel" and, together with the Second Lien Motion to Compel, the "Motions to Compel"). In support of the

---

[1] The last four digits of Energy Future Holdings Corp.'s federal tax identification number are 8810. The location of the Debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of Debtors in these chapter 11 cases, for which the Debtors have requested joint administration, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at http://www.efhcaseinfo.com.

NEWYORK 9212979

Response, the Ad Hoc Group of TCEH Unsecured Noteholders respectfully represents as follows:

## PRELIMINARY STATEMENT

1. By this Response, the Ad Hoc Group of TCEH Unsecured Noteholders notes yet another instance in which the actions of overlapping management, counsel and advisors for each of the seventy-one Debtors in these chapter 11 cases, purportedly taken on behalf of "the Debtors" acting "in the estate's best interests," threatens to prejudice the estates of the individual TCEH Debtors (as defined below), against which the members of the Ad Hoc Group hold claims.

2. To explain, the indenture trustees (the "Indenture Trustees") for the EFIH First Lien Notes and the EFIH Second Lien Notes (each as defined below) have filed motions to compel "the Debtors" to obtain approval from the Court of procedures governing "the Debtors'" out-of-court Tender Offers (as defined below) for existing EFIH First Lien Notes and EFIH Second Lien Notes, respectively. See First Lien Motion to Compel ¶ 2; Second Lien Motion to Compel p. 3. The Indenture Trustees allege, among other things, that the Tender Offers represent actions taken by "the Debtors" outside their ordinary course of business that must be subjected to Court scrutiny pursuant to 11 U.S.C. § 363(b). See First Lien Motion to Compel ¶ 6; Second Lien Motion to Compel ¶¶ 20-21. Critically, the Indenture Trustees further allege that the disclosures made in connection with the Tender Offers are incomplete and misleading and thus give rise to potential post-petition claims for violations of applicable federal securities law against "the Debtors." See First Lien Motion to Compel ¶ 9; Second Lien Motion to Compel p. 4.

3.  By all accounts, however, none of the TCEH Debtors (as defined herein) have had or will have any involvement whatsoever with the Tender Offers or the related securities disclosures being made by the Issuers (as defined below) to their creditors. It is also a near certainty that none of the seventy-one Debtors' overlapping management, counsel and advisors gave any consideration whatsoever as to how they might insulate the TCEH Debtors from actions being taken in connection with the Tender Offers. Because nothing about the Tender Offers was pre-approved by the Court, it thus remains at best uncertain whether and to what extent, as the Indenture Trustees allege, the TCEH Debtors can be impacted by any "control person" or "aiding and abetting" theories of liability on account of the alleged violations of applicable securities law, or whether any TCEH Debtor might have any indemnification obligation to any such control persons for such violations. As set forth herein, the Ad Hoc Group respectfully requests that, at the very least, the Court clarify at this time that any actions taken to date by the Issuers to initiate the Tender Offers, and/or any authorization of the Issuers to continue to conduct the Tender Offers, shall not give rise to any administrative claim against any TCEH Debtor.

4.  Further, and equally troubling, the Tender Offers being conducted on the "E-side" of the capital structure are the first but integrated step in the headlong process now being undertaken by the control group of the seventy-one Debtors in these Cases to pursue a series of transactions outlined in that certain Restructuring Support and Lock-Up Agreement, dated as of April 29, 2014 (the "RSA"). Putatively taking actions on behalf of all of "the Debtors" on both sides of the capital structure, these overlapping board members, senior managers, proposed legal counsel and proposed financial advisors, are barreling forward to

implement a "global restructuring" without any apparent concern that the Court might not approve their plan.

5.   The Tender Offers are a case in point. As detailed in the Preliminary Objection of the Ad Hoc Group of TCEH Unsecured Noteholders to the Motion of the TCEH Debtors for Entry of an Order Directing Joint Administration of Their Chapter 11 Cases With Those of the Oncor Debtors [Docket No. 222] (which is incorporated by reference herein), the Ad Hoc Group believes the TCEH Debtors are significant, and potentially the largest, unsecured creditors of the Issuers' estates. No Debtor has yet gone on the record with respect to these allegations, nor has any disclosed whether the TCEH Debtors have made any efforts to analyze the claims at issue. Instead, by seeking an extension of the deadline for filing their schedules and statements of financial affairs through at least the end of June, "the Debtors" have sought to defer any disclosures at all as to inter-debtor claims until after the hearings on, among other things, the Motion of Energy Future Holdings Corp., *et al.*, for Entry of an Order Authorizing the RSA Debtors to Assume the Restructuring Support Agreement and Modifying the Automatic Stay [Docket No. 505] (the "RSA Motion") and the motions for final approval of DIP financing.[2] Creditors, and more importantly the Court, are simply being asked to trust conflicted management and advisors that no such claims exist, and are provided with no solution if the management and advisors turn out to be wrong.

---

[2] Motion of Texas Competitive Electric Holdings Company LLC and Certain of its Debtor Affiliates, for Entry of Interim and Final Orders (A) Approving Postpetition Financing, (B) Granting Liens and Providing Superpriority Administrative Expense Claims, (C) Modifying the Automatic Stay, and (D) Scheduling a Final Hearing [Docket No. 73]; Motion of Energy Future Intermediate Holding Company LLC and EFIH Finance, Inc. for Entry of an Order (A) Approving Postpetition Second Lien Financing, (B) Granting Liens and Providing Superpriority Administrative Expense Claims, (C) Authorizing the Use of Cash Collateral, (D) Authorizing the EFIH Second Lien Repayment, (E) Authorizing Entry Into and Payment of Fees Under the Commitment Letter, and (F) Modifying the Automatic Stay [Docket No. 477]

4

6. In the meantime, "the Debtors" appear content to continue to take actions that assume away any TCEH Debtor claims and to pursue a plan structure in which those Debtors' claims and causes of action will all be released for no consideration to any TCEH Debtor. The Court should not permit that result. The Tender Offers, along with the RSA and the proposed second lien debtor-in-possession financing, combine to fix the size and recovery of the EFIH general unsecured claims pool, without giving any consideration to the existence of claims of the TCEH Debtors, or their ability to recover on those claims. In other words, "the Debtors" are effectively dictating the proposed plan treatment of any and all claims of the "T-side" against the "E-side."

7. That result is not appropriate. In light of the lack of any disclosures at all with respect to the claims of the TCEH Debtors against the Issuers and Energy Future Holdings Corp. ("EFH"), the Ad Hoc Group of TCEH Unsecured Noteholders respectfully requests that any order which might permit the Tender Offers to proceed, or sanction actions taken to date, specify explicitly that no actions taken in connection with the Tender Offers shall prejudice in any way any pre- or post-petition claims that any TCEH Debtor might have against the Issuers and EFH. It is simply far too early in these Cases for the control group of "the Debtors" to be dictating allowance of and recoveries on inter-Debtor claims, or to create claims against the TCEH Debtors.

**LIMITED RESPONSE**

8. By the Second Lien Motion to Compel, Computershare Trust Company, N.A., and Computershare Trust Company of Canada, as indenture trustee for certain second lien notes (the "EFIH Second Lien Notes") issued by Energy Future Intermediate Holding Company LLC ("EFIH") and EFIH Financing Inc. (together with EFIH, "the Issuers"), has protested

certain allegedly <u>ultra</u> <u>vires</u> acts of the Issuers and has raised the specter of claims being asserted for violations of Section 14(e) of the Securities Exchange Act of 1934 (the "Act")[3] in connection with the Issuers' $2.5 billion tender offer for the EFIH Second Lien Notes (the "Second Lien Tender Offer").

9. Similarly, by the First Lien Motion to Compel, CSC Trust Company of Delaware, as indenture trustee for certain first lien notes (the "EFIH First Lien Notes") issued by the Issuers, has protested the Issuers' actions and has raised the specter of a claim being asserted for violations of Rule 10b-5 promulgated under the Act ("Rule 10b-5")[4] in connection with the Issuers' $3.7 billion tender offer for the EFIH First Lien Notes (the "First Lien Tender Offer" and, together with the Second Lien Tender Offer, the "Tender Offers").

10. This Response does not address the issue of whether the Issuers should have sought relief pursuant to 11 U.S.C. § 363(b) in advance of initiating the Tender Offers, and

---

[3]     Section 14(e) of the Act provides, in relevant part, that:

> It shall be unlawful for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in light of the circumstances under which they are made, not misleading, or to engage in any fraudulent, deceptive, or manipulative acts or practices, in connection with any tender offer or request or invitation for tenders, or any solicitation of security holders in opposition to or in favor of any such offer, request, or invitation.

15 U.S.C. § 78n(e).

[4]     Rule 10b-5 provides, in relevant part, that:

> It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentalities of interstate commerce, or of the mails, or of any facility of any national securities exchange,
>
>     (a) To employ any device, scheme, or artifice to defraud,
>
>     (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, or
>
>     (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person,
>
> in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b-5.

NEWYORK 9212979

we suspect the Court will have its own views on the matter.[5] Instead, this Response focuses on the consequences of the failure of the TCEH Debtors[6] to take any steps to insulate themselves from the effects of the Issuers' actions.

11. If violations of applicable securities law by the Issuers were found to have occurred, Section 20(a) of the Act may impose joint and several "control person" liability on:

> [e]very person who, directly or indirectly, controls any person liable under any provision of this title or of any rule or regulation thereunder . . . to the same extent as such controlled person to any person to whom such controlled person is liable . . . unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action.

15 U.S.C. § 78t(a). In addition, Section 20(e) of the Act may impose "aiding and abetting" liability on:

> any person that knowingly or recklessly provides assistance to another person in violation of a provision of this title, or of any rule or regulation issued under this title, [who] shall be deemed to be in violation of such provision to the same extent as the person to whom such assistance is provided.

15 U.S.C. § 78t(e).

12. The persons or entities subject to this "control person" or "aiding and abetting" liability could include EFH, as well as the common directors, limited liability company managers and officers of the Issuers and EFH (that are, in many instances, also limited liability company managers and officers of EFCH and TCEH). Those individuals—all of whom

---

[5] The Ad Hoc Group of TCEH Unsecured Noteholders does, however, find it remarkable that "the Debtors" would proceed with the Tender Offers before seeking authorization pursuant to section 363 of the Bankruptcy Code, particularly in light of the fact that the Debtors deemed it necessary to seek authorization pursuant to that same section before abandoning scrap materials worth a few million dollars, an activity that is infinitely more "ordinary course" than conducting two hostile tender offers related to prepetition debt instruments. See Motion of Energy Future Holdings Corp., et al., for Entry of an Order Establishing Procedures to Sell, Transfer, or Abandon Certain De Minimis Assets [Docket No. 467] pp. 4-5.

[6] Energy Future Competitive Holdings Company LLC ("EFCH"), TCEH and their direct and indirect subsidiaries that are Debtors (together with EFCH and TCEH, the "TCEH Debtors")

presumably considered and approved the initiation of the Tender Offers—include: (i) John F. Young (manager and Chief Executive Officer of EFIH, EFCH and TCEH and director and Chief Executive Officer of EFH); (ii) Paul M. Keglevic (manager and Chief Financial Officer and Co-Chief Restructuring Officer of EFIH, EFCH and TCEH and Chief Financial Officer and Co-Chief Restructuring Officer of EFH); and (iii) Stacey H. Dore (General Counsel and Co-Chief Restructuring Officer of EFIH, EFCH, TCEH and EFH). Moreover, the "control persons" could include the proposed legal advisors (Kirkland & Ellis LLP and Richards, Layton & Finger, P.A.) and financial advisor (Evercore) for the Issuers, all of whom are also being proposed to represent the TCEH Debtors.

13. A fundamental problem here is that, to the extent that the Issuers or any of the foregoing control persons committed a post-petition violation of applicable securities law, any allowed claims against a Debtor arising therefrom would be treated as an administrative claim that would have to be paid under any chapter 11 plan of such Debtor ahead of the claims of general unsecured creditors (including, but not limited to, the TCEH Debtors' claims against EFIH).

14. Obviously, the Ad Hoc Group of TCEH Unsecured Noteholders believes any administrative claim filed by a holder of the EFIH First Lien Notes or EFIH Second Lien Notes adversely affected by the Tender Offers could never be properly asserted against the TCEH Debtors or their estates. That said, the Debtors' common management and professionals—by making no attempt to differentiate among "the Debtors"—are exacerbating the risk that such a claim will be interposed. See, e.g., Tr. of May 1, 2014 Hr'g at 36:11-13, 23-25 (MR. SASSOWER: "The debtors will launch a tender offer that will allow the remaining 70 percent of the first lien holders to opt into that settlement. . . . Again, the debtors will launch a

8

tender offer to allow the remaining 65 percent of the EFIH second lien holders to opt into that same settlement.") (emphasis added). Any imprecision on the part of counsel at the first-day hearings in these chapter 11 cases (that one might argue was inadvertent) has now been reaffirmed in writing in papers filed by "the Debtors" in response to the Motions to Compel. See Debtors' Response to EFIH First and Second Lien Trustees' Motions to Shorten pp. 2-6 ("And, as <u>the Debtors</u> have always made clear, <u>the Debtors</u> intend to seek the Court's approval of the settlements with those holders who voluntarily agree to the settlement offers. . . . As explained in the First Day Declaration and previewed at the first-day hearings . . . , <u>the Debtors</u> have initiated two entirely voluntary opt-in periods . . . . On Wednesday, May 7, <u>the Debtors</u> filed with the Court a First Lien Opt-In Notice . . . . Similarly, on Friday, May 9, <u>the Debtors</u> filed with the Court the Second Lien Opt-In Notice . . . . <u>The Debtors</u> offered to extend the Second Lien Opt-In Period step-down by another five days . . . . [T]he Debtors have independent business reasons why <u>they</u> are unable to extend the "step-down" deadline for the First Lien Opt-In Period.") (emphasis added) (footnotes omitted).

15.   The abrogation of any precision as to which Debtor is doing what has now carried over to the Motions to Compel, in which the Indenture Trustees allege that "the Debtors" would be liable for any violations of applicable securities law. See, e.g., Second Lien Motion to Compel p. 23 ("[T]he Debtors do not provide full and fair disclosure . . . . This is precisely the type of 'fraudulent, deceptive or manipulative practice' against which Section 14(e) was intended to protect.") (emphasis added); First Lien Motion to Compel, Ex. A, at 3 ("Even if the Tender Offer in its current form were permitted by the Bankruptcy Court, the disclosure in the Tender Offer Documents is legally deficient, which both does injury to the holders of the EFIH

9

First Lien Notes and creates potential administrative claims against <u>the Debtors'</u> estates.") (emphasis added).

16.  Here, had the Issuers and their control group sought relief from the Court before initiating the Tender Offers, creditors and parties in interest of the other Debtors, including the TCEH Debtors, would have had the opportunity to address—including, but not limited to, in the manner attempted by the Indenture Trustees—the alleged deficiencies in the Tender Offer disclosures. In addition, creditors and parties in interest of the TCEH Debtors would have had the opportunity to obtain up-front protection from the Court specifying that only the Issuers and their directors, limited liability company managers and officers, solely in their capacity as directors, limited liability company managers and officers of the Issuers, could be held legally responsible for the disclosures alleged by the Indenture Trustees to be misleading within the meaning of Section 14(e) of the Act and/or untrue within the meaning of Rule 10b-5.

17.  Having been deprived of that opportunity by the decision of "the Debtors" to initiate the Tender Offers without first obtaining any authorization from the Court, the Ad Hoc Group of TCEH Unsecured Noteholders is now left in the position of having to request that the Court determine—after the proverbial horse has left the barn—that the actions of the common directors, limited liability company managers and officers of, and proposed counsel and financial advisor to, the Issuers in connection with the Tender Offer shall not give rise to any claims, administrative or otherwise, against the TCEH Debtors or their estates for any violations of applicable securities law, "control person" liability, liability for "aiding and abetting" a violation of applicable securities law or under any pre-existing indemnification obligations.[7]

---

[7]   For example, Section 12.01 of the Fourth Amended and Restated Limited Liability Company Agreement of Texas Competitive Electric Holdings Company LLC, dated as of August 29, 2011 (the "TCEH LLC Agreement") provides for indemnification of TCEH's members, affiliates, limited liability company managers, officers, employees and agents:

10

18.    Similarly, the TCEH Debtors' inter-Debtor claims against EFIH and EFH, whatever they might be, should not be prejudiced by the Tender Offers.  The Second Lien Tender Offer presages a refinancing of existing second lien debt of EFIH with new second lien debt mandatorily convertible into approximately 64% of the reorganized equity of EFH.  See RSA Motion at 12.  Under the RSA, almost the entire remaining balance of the reorganized equity of EFH is to be distributed to holders of EFIH and certain EFH unsecured funded debt (on account of guaranty claims against EFIH).  Id.  This "split" of the reorganized equity of EFH (resulting from the conversion of the new second lien debt of EFIH into reorganized equity of EFH and the dilution of the reorganized equity of EFH received by such holders of EFIH and EFH unsecured funded debt) is premised upon a negotiated plan value and, presumably, an assumption as to the total amount of general unsecured claims against EFIH and EFH.  While a recovery is contemplated for holders of EFIH and certain EFH unsecured funded debt, no recovery is contemplated for holders of inter-Debtor claims against EFIH and EFH, notwithstanding that such claims would rank pari passu with those unsecured funded debt (and guaranty) claims.  Id., Ex. A (Order), Ex.1 (RSA), Ex. A (Term Sheet), at 14-15 (describing treatment of general unsecured claims against EFIH and EFH).  In fact, the RSA contemplates that any inter-Debtor claims held by the TCEH Debtors will be released for no consideration.  Id.

---

made a party or . . . threatened to be made a party to or . . . involved in any threatened, pending or completed action or other proceeding, whether civil, criminal, administrative, arbitrative or investigative . . . (hereafter a "**Proceeding**"), by reason of any actions or omissions or alleged acts or omissions of such [person] relating to [TCEH] . . . against judgments, penalties, . . . fines, settlements and reasonably expenses (including, without limitation, attorneys' fees) (all collectively the "**Indemnification Amounts**") . . . actually incurred by such [person] at the time any such Indemnification Amounts are incurred in connection with such Proceeding.

TCEH LLC Agreement § 12.01.  TCEH's members, affiliates, limited liability company managers, officers, employees and agents are not, however, entitled to indemnification where it is established that such person's acts or omissions constituted fraud.  Id. at § 12.02.

11

at 15-16 (describing releases of inter-Debtor claims against EFIH and EFH). At this early stage of these cases, it is premature to judge such claims to be valueless, and thus, ineligible to recover pari passu with the claims of the holders of EFIH and certain EFH unsecured funded debt. Because the Tender Offers portend to be a first step toward that outcome, however, the Court should make clear that any relief afforded "the Debtors" in connection with the Tender Offers (as a result of the Motions to Compel or otherwise) shall not be deemed to prejudice the TCEH Debtors' right to recover on account of inter-Debtor claims pari passu with holders of unsecured funded debt claims against EFIH and EFH, as applicable.

## RESERVATION OF RIGHTS

19. The Ad Hoc Group of TCEH Unsecured Noteholders expressly reserves the right to supplement and amend this Response, seek discovery with respect to the same and introduce evidence at any hearing relating to the Motions to Compel. Further, the Ad Hoc Group of TCEH Unsecured Noteholders reserves the right to respond, join in, or amend this Response with respect to any argument or objection made by any person relating to the Motions to Compel.

## CONCLUSION

20. Based on the foregoing, the Ad Hoc Group of TCEH Unsecured Noteholders respectfully requests that the Court (i) include the following provision in any order disposing of the Motions to Compel:

> "Effect of the Tender Offers on the TCEH Debtors. Nothing in this Order should be construed as an authorization by this Court, under section 363 of the Bankruptcy Code or otherwise, for any TCEH Debtor to participate in, or incur any claim arising out of or related to, the Tender Offers. No act or omission by the Issuers or any of their control persons in connection with the Tender Offers shall give rise to any claim against the TCEH Debtors, whether under the federal or state securities laws or otherwise. No claim by any TCEH Debtor against any of the Issuers shall be prejudiced in any respect by the Tender Offers, and all

NEWYORK 9212979

>rights and remedies of the TCEH Debtors with respect thereto are expressly reserved."

and (ii) grant such other and further relief as the Court deems just.

*[Remainder of page intentionally left blank]*

Dated: May 20, 2014
       Wilmington, Delaware

                FOX ROTHSCHILD LLP

By:  */s/ Jeffrey M. Schlerf*
     Jeffrey M. Schlerf (No. 3047)
     John H. Strock (No. 4965)
     L. John Bird (No. 5310)
     919 North Market St., Suite 300
     Wilmington, DE 19801
     Telephone: (302) 654-7444
     Facsimile: (302) 463-4971
     jschlerf@foxrothschild.com
     jstrock@foxrothschild.com
     lbird@foxrothschild.com

and

WHITE & CASE LLP
Thomas E Lauria (admitted *pro hac vice*)
Matthew C. Brown (admitted *pro hac vice*)
Southeast Financial Center, Suite 4900
200 South Biscayne Blvd.
Miami, FL 33131
Telephone: (305) 371-2700
Facsimile: (305) 358-5744
tlauria@whitecase.com
mbrown@whitecase.com

J. Christopher Shore (admitted *pro hac vice*)
Gregory M. Starner (admitted *pro hac vice*)
1155 Avenue of the Americas
New York, NY 10036
Telephone: (212) 819-8200
Facsimile: (212) 354-8113
cshore@whitecase.com
gstarner@whitecase.com

*Counsel to the Ad Hoc Group of TCEH Unsecured Noteholders*

NEWYORK 9212979