IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------ x
In re:                                        :   Chapter 11
                                              :
Energy Future Holdings, Inc., *et al.*,       :   Case No. 14-10978 (CSS)
                                              :
                    Debtors.                  :   (Joint Administration Requested)
                                              :
------------------------------------------------------------ x

**STATEMENT OF EFIH 2ND LIEN NOTES INDENTURE TRUSTEE
CONCERNING SCHEDULING OF HEARING ON DEBTORS'
SETTLEMENT MOTION, 2ND LIEN DIP MOTION AND RSA ASSUMPTION MOTION**

Computershare Trust Company, N.A. and Computershare Trust Company of Canada, as indenture trustee (the "**Indenture Trustee**") for $2,156,000,000 aggregate principal amount of 2nd lien notes (the "**EFIH 2nd Lien Notes**") issued by Energy Future Intermediate Holding Company LLC ("**EFIH**"), by and through its undersigned counsel, hereby files this statement concerning the scheduling of the motions of the above-captioned debtors (the "**Debtors**") for approval of (i) certain EFIH settlements and the Oncor TSA Amendment [Dkt. No. 472] (the "**Settlement Motion**"), (ii) postpetition second lien financing [Dkt. No. 477] (the "**2nd Lien DIP Motion**"), and (iii) the Restructuring Support and Lock-Up Agreement [Dkt. No. 505] (the "**RSA Assumption Motion**"; together with the Settlement Motion and the 2nd Lien DIP Motion, the "**Motions**").

**STATEMENT**

1. At the First-Day Hearings on May 1 and 2, 2014, the Court permitted the Debtors to schedule the Motions to be heard at the Second-Day Hearing on June 5 and 6, but indicated that this schedule would be subject to reconsideration at the May 22 status conference,

after the Debtors had actually filed the Motions. *See* Transcript of May 1, 2014 Hearing at 153; Transcript of May 2, 2014 Hearing at 117, copies of which are attached hereto.

2. The Debtors filed the Settlement Motion and the 2nd Lien DIP Motion on May 15 and the RSA Assumption Motion on May 16.

3. The Indenture Trustee submits that June 30 (the date of the next omnibus hearing in this case) is more appropriate than June 5 or 6 as the hearing date for the Motions. As explained below, this is so for multiple reasons:

- Additional time is needed for the completion of fact and expert discovery on the significant factual issues raised by the Settlement Motion.

- Additional time will also be needed for discovery in connection with the 2nd Lien DIP Motion if the Debtors reject the economically favorable DIP proposed by certain 2nd Lien Noteholders.

- The extraordinarily compressed timeframe proposed by the Debtors for the Motions serves no good purpose, and no prejudice will result from a reasonable adjournment.

A. **Additional Time Is Needed for Discovery on the Settlement Motion**

4. As discussed in its recently-filed emergency motion, the Indenture Trustee believes that the EFIH 2nd Lien Settlement unfairly discriminates between similarly situated creditors by giving premium recoveries to Fidelity and certain holders of PIK Notes that other EFIH 2nd Lien Noteholders will not receive. *See* Emergency Motion of EFIH 2nd Lien Notes Indenture Trustee to Compel Debtors to Obtain Prior Approval of Procedures Governing Their EFIH 2nd Lien Tender Offer [Dkt. 441] (the "**Emergency Motion**").[1] It appears from the Debtors' filings that the side payments to Fidelity, on top of the "50%" settlement of its Make-Whole Claim, may exceed $135 million.

---

[1] Although much of this premium treatment is being delivered through *pre-plan* agreements, rather than through a plan of reorganization, this does not eliminate the application of the Code's non-discrimination principles. *See* Emergency Motion at 27.

2

5. The Debtors have disputed the amount of additional value that Fidelity will be receiving, as well as whether any of this value is being paid on account of Fidelity's Make-Whole Claim. Significant fact and expert discovery, followed by an evidentiary hearing, will be needed to resolve these issues. On May 5, 2014, counsel to the Indenture Trustee served narrowly-targeted informal discovery requests on a limited number of advisors of the Debtors and certain RSA Commitment Parties, seeking information about the negotiation of the RSA and the other plan restructuring documents, as well as drafts of the RSA and any plan restructuring documents.

6. The Debtors made an initial production of over 11,000 pages of documents on May 16 and a second production of 36,000 on May 20, and have said they will continue to produce documents on a rolling basis. Other parties began producing responsive documents on May 15. None of the parties has said when they expect to complete their production. In addition, with the Motions not having been filed until last Thursday and Friday, the Indenture Trustee may need to serve supplemental document requests in the near future.

7. Gaping holes exist in the parties' initial document productions, on crucial issues such as the parties' communications with Fidelity as to the premium consideration it will be receiving. These holes appear to be due, in significant part, to the assertion by the Debtors and other producing parties of a common interest privilege, by which they seek to shield communications in connection with the purportedly arms-length negotiations among the Debtors, the equity sponsors and the PIKs.[2] Courts in this Circuit carefully scrutinize the assertion of

---

[2] The Debtors have asserted a common interest privilege as to all of their communications – including communications long before the execution of the RSA – with (i) the equity sponsors and (ii) with regard to the 1st and 2nd Lien Holders' make-whole claims, the ad hoc committee of PIK holders. Similarly, the equity sponsors and an ad hoc committee of PIK holders have each asserted a common interest privilege as to all of their communications with the Debtors.

3

common interest privilege in connection with the negotiation of plans of reorganization. *See, e.g., In re Tribune Co.,* No. 08-13141, 2011 Bankr. LEXIS 299 (Bankr. D. Del. Feb. 3, 2011). Adjudication of these issues will take some time, even on an expedited basis, and may need to be followed by supplemental productions of documents previously withheld by the Debtors and other parties.

8.  After document production is complete, fact depositions will be needed. Expert reports and expert depositions will then be necessary, addressing such topics as the value of the consideration promised to Fidelity. (One aspect of this complex topic will be the supposed value of EFH's assignment to EFIH of payments under the Oncor TSA, compared to the value of EFIH's waiver of its EFH Legacy Notes.). Completion of this fact and expert discovery in advance of a June 5 hearing is not feasible.

B. **Additional Time May Be Needed For Discovery on the 2nd Lien DIP Motion**

9.  As noted in the Emergency Motion, a group of 2nd Lien Noteholders have proposed an alternative DIP (the "**Competing 2nd Lien DIP**") that could save the estate a considerable amount of money through a lower interest rate and significantly lower commitment fees. *See* Emergency Motion at 18; Declaration of Todd R. Snyder, attached as Exhibit B to Emergency Motion. Discovery will demonstrate that the Debtors made no effort to seek 2nd Lien DIP financing on superior terms, and pointedly failed to respond to the pre-petition DIP proposal received from a group of 2nd Lien Noteholders in March 2014.

10. In the 2nd Lien DIP Motion (at 28), the Debtors expressed the view that the Competing 2nd Lien DIP was too "preliminary" to be considered a viable transaction. As can be seen in the Competing 2nd Lien DIP Term Sheet (attached as Exhibit 2 to the Declaration of Todd R. Snyder), the 2nd Lien Noteholder group proposed terms that were in every respect either

identical to or far more favorable than the terms of the 2nd Lien DIP as disclosed at the time. To the extent the 2nd Lien Noteholder group's proposal was "incomplete," this was only because the Debtors had not – and <u>still</u> have not – finalized and disclosed documentation of their current proposed DIP. (The Debtors' 2nd Lien DIP documentation is expected to be disclosed in the next few days.) The 2nd Lien Noteholder group has made clear their intention to either match or improve upon all material terms of the proposed DIP.

11. Once documentation for the Debtors' 2nd Lien DIP and the Competing 2nd Lien DIP are ready, the Debtors will need to decide which DIP to pursue. If they accept the Competing 2nd Lien DIP, this will moot their current 2nd Lien DIP Motion. If they do not, the Indenture Trustee will need to take discovery, including depositions, to determine why the Debtors have chosen a path that is clearly economically inferior and whether their decision to do so complies with the Bankruptcy Code's standards, and the results of this discovery will need to be presented to the Court in the context of a full evidentiary hearing. This will take time.

C. **An Adjournment of the Hearing to June 30 Will Cause No Prejudice to the Debtors**

12. There is no need to hear any of the Motions prior to June 30. First, the Debtors identify no financial exigency requiring immediate approval of the postpetition financing. EFIH is not an operating entity, and the proposed DIP financing therefore is not needed to keep its lights on. Moreover, the 2nd Lien DIP lenders are large EFIH unsecured creditors, whose only way out of the case is through reorganization. They will not vanish if their DIP takes a few additional weeks to approve.

13. To be sure, the RSA sets out various deadlines that must be met to avoid triggering negative consequences, but the Debtors are seeking to move a good deal faster than the RSA requires. Section 8.02 of the RSA grants certain parties termination rights in the event

that the Court has not entered an order approving the 2nd Lien DIP and the Settlement Motion (among other motions) within 75 days after the Petition Date – i.e., by July 13.[3] The RSA also provides that holders of the 2nd Lien DIP notes will receive 4% of additional interest if the Oncor Amendment is not approved within 90 days of the Petition Date – i.e., by July 28. A June 30 hearing on the Motions provides ample time to comply with these milestones.

14. The RSA does require that an order approving assumption of the RSA be entered within 45 days after the Petition Date – i.e., by June 13 (*see* RSA § 8.01(c)) – but missing this deadline by a few weeks should not harm the Debtors. *First*, the Debtors have already obtained the necessary consents for several RSA amendments. *See* First Amendment to the RSA (attached as Exhibit 2 to the Proposed Order on the RSA Assumption Motion) (extending the deadline for the Debtors to file multiple motions, including the Motions, to May 15); Second Amendment to the RSA (attached as Exhibit 3 to the Proposed Order on the RSA Assumption Motion) (extending the deadline for the Debtors to file the RSA Assumption Motion to May 16). They should be able to do so again. *Second*, as the Debtors have pointed out several times, the 1st and 2nd Lien DIPs and the 1st and 2nd Lien Settlements are integral parts of the global settlement embodied in the RSA. *See* 2nd Lien DIP Motion at 3 (describing 2nd Lien DIP Motion as "a key component of the Restructuring Support Agreement"); Settlement Motion at 2-3 (describing Settlement Motion as "a critical early step" in the transactions contemplated under the RSA); RSA Assumption Motion at 3-4 (discussing role that 2nd Lien DIP plays in RSA), 13-14 (discussing role that 2nd Lien DIP plays in facilitating 2nd Lien Settlement). It would make no sense to approve the RSA on June 6 only to reject one or more of the 1st and 2nd Lien DIPs or 1st and 2nd Lien Settlements (thereby giving multiple parties the right to terminate their participation

---

[3] The RSA also requires the Debtors to use "commercially reasonable best efforts" to obtain entry of the 1st and 2nd Lien DIP orders within 45 days after the Petition Date. The Debtors have satisfied this requirement by seeking to have the Motions heard on June 5 and 6.

6

in the RSA) several weeks thereafter. The Motions are inextricably intertwined and should be heard on the same date.

15. Finally, the Debtors may contend that the requested adjournment of the hearing on the 2nd Lien DIP Motion would delay realization of the $8 million per month in savings that they hope to realize from that DIP. *See* 2nd Lien DIP Motion at 4. However, even if the Debtors' calculations were correct, the amount of savings foregone by virtue of a 25-day adjournment would be negligible – not nearly substantial enough to warrant an unduly compressed time frame for resolution of some of the most significant issues in this case. In any event, the Debtors' calculations are *not* correct: Once one considers the approximately $52 million in fees that the Debtors will be paying in connection with this DIP facility, the supposed savings vanish, at least in the short term. With interest savings of $8 million a month, it will take six months for the Debtors to realize any overall savings under the 2nd Lien DIP.

WHEREFORE, for the reasons set forth above, the Indenture Trustee respectfully requests that the Court schedule the hearing on the 2nd Lien DIP Motion, the Settlement Motion, and the RSA Assumption Motion for no earlier than June 30, 2014.

[REMAINDER OF PAGE LEFT BLANK]

Dated: May 20, 2014  PACHULSKI STANG ZIEHL & JONES LLP

    */s/ Laura Davis Jones*
Laura Davis Jones
(Bar No. 2436)
Robert J. Feinstein
(NY Bar No. RF-2836)
919 N. Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE  19899-8705 (Courier 19801)
Telephone:  (302) 652-4100
Facsimile:   (302) 652-4400
Email: ljones@ pszjlaw.com
       rfeinstein@ pszjlaw.com

- *and* -


KRAMER LEVIN NAFTALIS & FRANKEL LLP
Thomas Moers Mayer
Philip Bentley
Joshua K. Brody
Kramer Levin Naftalis & Frankel LLP
1177 Avenue of the Americas
New York, New York 10036
Telephone:  (212) 715-9100
Facsimile:   (212) 715-8000
Email: tmayer@kramerlevin.com
       pbentley@kramerlevin.com
       jbrody@kramerlevin.com

- *and*-

BRYAN CAVE LLP
Stephanie Wickouski, Esq.
1290 Avenue of the Americas
New York, New York 10104-3300
Tel: 212-541-1114
Fax: 212-904-0514
Email: stephanie.wickouski@bryancave.com

*Counsel to the Indenture Trustee*

Page 1

1  UNITED STATES BANKRUPTCY COURT
2  DISTRICT OF DELAWARE
3
4
5  In re:                          :
                                   :          Chapter 11
6  ENERGY FUTURE HOLDINGS          :
   CORP., et al.,                  :          Case No. 14-10979(CSS)
7                                  :
           Debtors.                :          (Jointly Administration
8  _____   :          Requested)
9
10                                            United States Bankruptcy Court
11                                            824 North Market Street
12                                            Wilmington, Delaware
13                                            May 2, 2014
14                                            9:39 AM
15
16
17  B E F O R E :
18  HON CHRISTOPHER S. SONTCHI
19  U.S. BANKRUPTCY JUDGE
20
21
22
23
24  ECR OPERATOR:   LESLIE MURIN
25

Page 116

1  on the venue, it will be focused and fairly limited
2  discovery.  Similar on depositions, it's probably one, maybe
3  two 30(b)(6) depositions, that's it.  So I don't think that
4  will be a problem and we'll be back on the 22nd to discuss
5  the 2004, that's fine.  Thank you.
6           THE COURT:  Thank you.
7           There was another motion, though.  Yesterday I
8  signed an order and for the life of me -- I apologize -- I
9  can't remember.
10          MR. HESSLER:  Your Honor, Stephen Hessler,
11 Kirkland & Ellis, on behalf of the Debtors.
12          In the context of the EFIH first and second lien
13 DIPs, they were talking about -- counsel for both, the
14 trustee for the first and second lien trustee, had indicated
15 that they have issues with the timing that we're proposed to
16 go forward on those DIPs.  I think you may be referring to,
17 in the context of putting both of those DIPs up for hearing
18 at the June 5th and 6th hearings, that we would potential be
19 coming back to you to talk about whether or not we have been
20 able to come to an agreement amongst ourselves, as to the
21 timing.
22          And, again, it's not just the -- we think the DIP
23 motions, it's the ability to draw on the DIP, as well as
24 refinance the principals and drifts, as well as the make
25 holes, so there's three components of that, and I think you

```
                                                              Page 1
 1  UNITED STATES BANKRUPTCY COURT
 2  DISTRICT OF DELAWARE
 3
 4
 5  In re:                    :    Chapter 11
                              :
 6  ENERGY FUTURE HOLDINGS    :    Case No. 14-10979(CSS)
    CORP., et al.,            :
 7                            :    (Jointly Administration
            Debtors.          :
 8  _____:    Requested)
 9
10                                 United States Bankruptcy Court
11                                 824 North Market Street
12                                 Wilmington, Delaware
13                                 May 1, 2014
14                                 9:53 AM
15
16
17  B E F O R E :
18  HON CHRISTOPHER S. SONTCHI
19  U.S. BANKRUPTCY JUDGE
20
21
22
23
24
25  ECR OPERATOR:   LESLIE MURIN
```

1         MR. MCKANE:  My quick response to that Your Honor
2    is I don't think we're attempting to proceed here with
3    anything dissimilar to standard bankruptcy practice.  We
4    schedule hearings, we put items on the agenda, to the extent
5    parties oppose that relief they can oppose the relief, if
6    they oppose the timing they can oppose the timing.  But I
7    don't know how we would have to file all of the paperwork
8    before we could actually schedule it for a hearing.
9         THE COURT:  Okay.  What I'm going to do is, I am
                                                         th
10   going to set the final hearing with this for June 5   at
11   9:30, context between now and then when I hear, and this
12   will probably be in the context of both venue being where
13   the issue is any status conference soon after the committee
14   is formed, and we can refer onto it and I know it can't
15   actually seem like it's openly filed, as part of that status
16   conference, we'll update further -- we'll take up whether
17   moving this long the path is an appropriate thing to do.
                                                         th
18        So instead of the final hearing for June 5 , and
19   in the context of a settlement -- not settlement, excuse me,
20   a status conference at least that we're going to have after
21   the committee is formed, I'll at that time consider whether
22   pushing it further back is more appropriate.  At that time
23   we'll have the committee in place and we'll actually have
24   all the final documents filed.
25        But as we sit here today I'm going to set June 5

```
                                                        Page 154
 1   as the hearing date.
 2             MR. MCKANE:  On behalf of the debtors thank you,
 3   Your Honor.
 4             THE COURT:  Okay.  And I'm looking at the order and
 5   its -- I'm a little confused.  If you look at -- the pages
 6   aren't number actually.  Look at the fourth page, it looks
 7   like you've got two objection deadlines filled in there.
 8   I'm a little confused.  I think it's just a typo, but.
 9             MR. MCKANE:  I'm sorry in which paragraph, Your
10   Honor.
11             THE COURT:  Paragraph 3 at the bottom of Page 4.
12             MR. MCKANE:  It's just a repeat, Your Honor.  It
13   is.  We'll -- if you want us to tender another order with
14   the second reference stricken of if you want to cross it
15   out, whichever is easier for the court.
16             THE COURT:  I'll cross it out.
17             MR. MCKANE:  Thank you.
                                                          th
18             THE COURT:  We'll set that as May 29 .
19             UNIDENTIFIED:  May 21.
20             MR. MCKANE:  Your Honor, just for others in the
21   court I believe you said May 21st is the going to be the
22   objection deadline.
23             THE COURT:  No, I said May 29th.
24             MR. MCKANE:  29th, sorry about that.
25             THE COURT:  Sorry.  So I've signed the order with
```