**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| Energy Future Holdings Corporation, et al., | Case No. 14-10979 (CSS) |
| Debtors. | Jointly Administered<br>On An Interim Basis |
| | **Re: D.I. 5, 225, 391, 519, 522, 524, 525, & 531** |

**WILMINGTON SAVINGS FUND SOCIETY, FSB'S REPLY TO DEBTORS' OBJECTION, AND JOINDERS THERETO, TO THE MOTION OF WILMINGTON SAVINGS FUND SOCIETY, FSB PURSUANT TO 28 U.S.C. §§ 1408 &1412 AND RULE 1014 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE TO TRANSFER CASES TO THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS**

Wilmington Savings Fund Society, FSB ("WSFS"), by and through its undersigned counsel, respectfully submits this reply (the "Reply") to the Debtors' Objection and Supporting Declarations (the "Objection") [Docket No. 391] and joinders related thereto (the "Joinders") [Docket Nos. 519, 522, 524, 525, & 531] to WSFS' *Motion Pursuant to 28 U.S.C. §§ 1408 & 1412 and Rule 1014 of the Federal Rules of Bankruptcy Procedure to Transfer Cases to the United States District Court for the Northern District of Texas* (the "Venue Motion") and, in support thereof, respectfully states as follows:

## PRELIMINARY STATEMENT

1. This Court has recognized that there are a number of tests for determining whether venue is proper, but that these tests simply focus the Court on the "ultimate issue" that it is tasked with deciding – whether a chapter 11 case should be transferred in the interests of

justice *or* for the convenience of the *parties*. See Transcript of Hearing at 55:23-56:9, In re Allied Sys. Holdings, Inc., Case No. 12-11564 (CSS) (Bankr. D. Del. May 31, 2012) ("There are 12 factor tests, there are six factor tests, I think those types of tests are helpful to focus the court on the types of issues that really should be considered. We don't play scorecard with them, it's not – you know, you don't get a transfer venue if it's seven to five or four to two, that's not helpful. I find that every time you add a factor to a test you complicate it by an order of magnitude and to go from a two factor test to a 12 factor test is really, frankly, not helpful, because it just continues to throw in items that cloud the ultimate decision that should be in front of the court."). Having now had the opportunity to review the Joinders[1] filed just yesterday, WSFS files this Reply to the Objection and Joinders for the limited purpose of clarifying the proper standard for deciding whether a particular venue is convenient to the *parties*.

2. In their Objection, the Debtors rely heavily on the location of "interested parties" – primarily the Debtors' professionals and their largest creditors and creditors' professionals – to conclude that these chapter 11 cases should remain in Delaware. See, e.g., *Steven R. Kotarba Declaration in Support of Debtors' Objection to the Motion of Wilmington Savings Fund Society, FSB Pursuant to 28 U.S.C. §§ 1408 & 1412 and Rule 1014 of the Federal Rules of Bankruptcy Procedure to Transfer Cases to the United States District Court for the Northern District of Texas* [Docket No. 392] (concluding that "the majority of the professionals who will be involved in the day-to-day activities related to the chapter 11 proceedings," as well as the creditors holding the largest claims, are located throughout the Northeast). But the Debtors mischaracterize the standard that this Court and others routinely apply when determining

---

1 Prior to the deadline for responding to the Venue Motion, a handful of parties filed Joinders to the Objection, the overwhelming majority of which, predictably, were filed by the Debtors' largest creditors, many of whom are parties to the Restructuring Support Agreement and with whom the Debtors have already negotiated and resolved their claims. Those Joinders echo the arguments set forth in the Objection and are therefore addressed, in relevant part, by this Reply.

whether a particular forum is convenient. With respect to the Debtors' and their creditors' professionals, a number of reported decisions instruct that courts should disregard whether a particular forum is convenient for the professionals. Courts are also instructed not to give greater weight to the convenience of creditors holding the most sizeable claims. On the contrary, it is "inappropriate . . . to give more importance to the location and desires of the creditors holding the largest claims." Commw. of Puerto Rico v. Commw. Oil Refining Co. (In re Commw. Oil Ref. Co.), 596 F.2d 1239, 1248 (5th Cir. 1979) ("CORCO").

3. Accordingly, in the event the Court determines that the interests of justice do not independently warrant transfer of these chapter 11 cases, which WSFS respectfully maintains they do, the Court should nevertheless grant the Venue Motion because, on balance, the Northern District of Texas is a more convenient forum for those parties that matter in an analysis of convenience.

## REPLY

### I. The Convenience of the Debtors' Professionals and Their Creditors' Professionals is Not a Factor that this Court Should Consider.

4. The Debtors go to great lengths to show that the convenience of their professionals, as well as the professionals of their largest creditors, will be served by keeping these chapter 11 cases in Delaware. True as that may be, courts have routinely found that the location and convenience of a party's counsel and professionals is not a factor that should be given any weight whatsoever in a test for convenience, because, among other reasons, such counsel and professionals are not the "parties" whose convenience should be considered. See In re Trico Steel Co., L.L.C., 261 B.R. 915, 917 (Bankr. N.D. Ohio 2001) ("The parties are considered to be the debtor, its creditors and witnesses. The convenience of counsel or of other professionals does not appear to be a consideration intended by adoption of [Bankruptcy] Rule

1014, as professionals employed pursuant to 11 U.S.C. § 327 *et seq.* are not parties as that term is generally used. In another context, where 'convenience of parties' venue transfers are considered under 28 U.S.C. § 1404(a), the convenience of parties' counsel is given no weight in determining whether to transfer venue.") (internal citations omitted); In re Wells, 17 B.R. 531, 533 (Bankr. W.D. Mo. 1982) ("The fact that the petitioner's counsel is in Kansas City cannot constitute such a reason [to support venue in Kansas City] for it is rudimentary that it is the convenience of the parties which is to be considered, rather than that of their counsel.").

5. Courts within the Third Circuit, including this Court, have also recognized that "the convenience of counsel is generally not relevant to the determination of whether to transfer venue of a proceeding pursuant to § 1412[.]" Son v. Coal Equity, Inc. (In re Centennial Coal, Inc.), 282 B.R. 140, 146 (Bankr. D. Del. 2002); see Kisano Trade & Inv. Ltd. v. Lemster, 737 F.3d 869, 876 (3d Cir. 2013) ("[T]he convenience of counsel in a matter is not a relevant factor."); Solomon v. Cont'l Am. Life Ins. Co., 472 F.2d 1043, 1047 (3d Cir. 1973) ("The convenience of counsel is not a factor to be considered."); Burstein v. Applied Extrusion Techs., Inc., 829 F. Supp. 106, 112 (D. Del. 1992) ("[T]o the extent that the Plaintiff may argue that trial in Delaware would be more convenient for counsel, the Court only notes that this is not a factor courts generally consider in determining a motion to transfer."); Barbosa v. McGorman, No. 12-6772 (MLC), 2013 WL 5614015, at *2 (D.N.J. Mar. 13, 2013) ("Also, the convenience of counsel is not a consideration as to the issue of proper venue."); Transcript of Hearing at 56:16-18, In re Allied Sys. Holdings, Inc., Case No. 12-11564 (CSS) (Bankr. D. Del. May 31, 2012) ("Professionals are going to fly in from all over the country, that happens in every case, that's a neutral factor.").

6. In any event, even if this Court were to consider the location and convenience of the various parties' counsel and professionals, which binding precedent instructs against, the Debtors here have offered no evidence to establish that transferring these chapter 11 cases to the Northern District of Texas would substantially "strain the Debtors' financial condition." In re Seton Chase Assocs., Inc., 141 B.R. 2, 6 (Bankr. E.D.N.Y. 1991) (granting motion to transfer venue after finding, among other things, "unpersuasive the Debtor's argument that the location of its attorneys in this District is a factor for determination" and that, despite the Debtor maintaining that forcing Debtor's counsel to travel to Texas "could 'strain the Debtor's financial condition,' 'reduce the distribution of funds to the Debtor's creditors,' and 'hamper the Debtor's efforts to reorganize' . . . . no evidence has been offered to support such an assertion, nor does this Court deem it a significant reason for maintaining venue here") (citing In re Standard Tank Cleaning Corp., 133 B.R. 562, 567 (Bankr. E.D.N.Y. 1991) ("This Court finds unpersuasive the Debtor's argument that the location of its attorneys in New York City is a significant factor for determination of venue.")).

7. In In re SGP Acquisition, LLC, No. 04-13382 (Bankr. D. Del. Jan. 25, 2005) (one of the only unpublished opinion cited by Debtors that was publicly available for WSFS to review), the Court noted that it sees "professionals all the time," from which Debtors infer that the location and convenience of professionals is a principal consideration in a test for convenience of the *parties*. This inference, however, cannot overcome the clear mandate from courts both within and without the Third Circuit that such a consideration is to be given no weight when determining whether a particular forum is convenient for the parties. Moreover, in SGP Acquisition, the Court found that the "principal players," including the Debtors' managers, were located in the same venue as its professionals, which is not the case here. See Transcript of

Hearing, at 48, In re SGP Acquisition, LLC, No. 04-13382 (Bankr. D. Del. Jan. 25, 2005). The creditors' committee in SGP Acquisition also opposed the transfer of venue, a position to which Judge Walsh gave "great deference." Id. at 48-49. Here, the Official Committee of Unsecured Creditors has not opposed the Venue Motion.

8. The Court should therefore decline to consider the convenience of the Debtors' and their creditors' professionals. Instead, recognizing that professionals are "not parties as that term is generally used," the Court should consider the relative convenience of only the actual *parties* – the Debtors, their creditors, and witnesses. See Trico Steel, 261 B.R. at 917.

## II. The Convenience of the Debtors' Largest Creditors is Not Afforded Additional Weight.

9. The Debtors ask this Court to elevate the convenience of their largest creditors, many of whom have already settled their claims, above consideration of their numerous creditors holding smaller claims and with whom the Debtors have yet to even negotiate. See Objection, at ¶ 24 (maintaining that, because their "debt holders are located primarily in the Northeast," and since the Debtors' 50 largest creditors are spread throughout the United States, there is "no support for moving these cases to Texas"). Once again, the Debtors have mischaracterized the standard by which courts judge the convenience of *all* parties. Among other considerations, courts are to consider "proximity of creditors ***of every kind*** to the court" and not just those holding the largest claims. In re Innovative Commc'n Co., LLC, 358 B.R. 120, 126 (Bankr. D. Del. 2006) (emphasis added). In any event, even if the size of a creditor's claim was the deciding factor, the Debtors' list of 50 largest unsecured creditors provides that 40% of the largest unsecured creditors are in Texas.

10. In fact, the Fifth Circuit Court of Appeals deemed it "inappropriate . . .to give more importance to the location and desires of the creditors holding the largest claims."

CORCO, 596 F.2d at1248. Similarly, Delaware Bankruptcy Courts have rejected the view that creditors holding more sizeable claims should be given priority in determining the proper venue. See Transcript of Oral Argument at 91:5-15, In re Goldking Holdings, LLC, No. 13-12820 (Bankr. D. Del. Nov. 20, 2013) (transferring cases to the Bankruptcy Court for the Southern District of Texas, notwithstanding objection of 94% equity owner, after noting, among other things, "that [the equity owner] shouldn't be heard to complain about having to deal with this in Texas because frankly they made an investment in Texas that's governed by Texas law"); Transcript of Oral Argument at 76:22-77:2, In re DesignLine Corp., No. 13-12089 (Bankr. D. Del. Sept. 4, 2013) (rejecting argument that convenience for secured lenders is of utmost importance, since those creditors are "in the best position to pay to go" to the venue where unsecured creditors are located, and noting that "it is important to make sure the unsecureds participate in the case to assure that everything [is] just not railroaded through based on an assumption that the secured creditors are the only ones with an interest"); Transcript of Oral Argument at 127, In re Transtexas Gas Co., No. 99-889 (Bankr. D. Del. May 20, 1999) ("The large-dollar creditors here rather than the mom-and-pop creditors do have access to technology and electronics and are more capable of representing their interests by those means. But with respect to the interests of the smaller creditors, I think their access to the Court, actual as well as perceived, is very important in considering justice here."). This Court's evolving focus on the underfunded, typically smaller creditors is derived, at least in part, from the seminal Third Circuit venue case Jumara v. State Farm Insurance Company, wherein the Third Circuit noted that "the convenience of the parties [is] indicated by their relative physical and financial condition." 55 F.3d 873, 879 (3d Cir. 1995).

11. The Debtors even recognize that these well-funded creditors, including many of those who filed a Joinder to the Debtors' Objection, have the financial wherewithal to pay for any added expenses that they may incur by traveling to Dallas, rather than Wilmington. See, e.g., Deposition Transcript of Paul Keglevic, at 145:9-146:19. The same cannot be said of the local, and often underfunded, creditors that this Court has previously found deserve protection. See Transcript of Oral Argument at 76:22-77:2, In re DesignLine Corp., No. 13-12089 (Bankr. D. Del. Sept. 4, 2013) (finding company's debt holders are "in the best position to pay to go" to the venue where unsecured creditors are located).

12. To be sure, the Debtors justify their decision to keep venue in Delaware because, they say, those Texas-based creditors will not play a role in these chapter 11 proceedings. Instead, they argue, their "balance sheet restructuring" renders the location of the Debtors' trade creditors, customers, employees, and unsecured creditors – nearly all of whom are located in Texas – immaterial. See Objection, at ¶¶ 3, 27. The Debtors fail to explain, however, on what basis they concluded that these large number of Texas-based creditors and parties-in-interest will not be affected by the Debtors' decisions to, among other things, reject or assume a host of executory contracts, leases, retiree benefits, CBAs, and transportation contracts, to name a few. Nor do they explain how Delaware is convenient to the multitude of Texas-based tax and regulatory authorities, some of whose consents the Debtors require to exit bankruptcy, and all of whom may be forced to litigate any dispute in Delaware, far from Texas.

13. Even if these chapter 11 proceedings could be classified strictly as a "balance sheet restructuring" (which is not the case), the Debtors will have to make key decisions that will affect numerous creditors and parties-in-interest other than the Debtors' relatively few debt holders, many of whom have already made their deal by way of pre-petition settlements with the

Debtors and should play a less active role in these cases. See CORCO, 596 F.2d at 1248 ("Both ***number and size*** are of equal significance in gaining acceptance of a plan and should be of ***equal significance in considering the convenience of the creditors***.") (emphasis added). And, to the extent a dispute arises while these cases remain in Delaware, those Texas-based creditors will be forced to litigate their dispute with these Texas-based Debtors far from their home forum.

### III. The Convenience of the Parties Favors Transfer of these Chapter 11 Cases to the Northern District of Texas.

14. Realizing that the factors courts consider (regardless of whether it is the 6- or 12-factor test) weigh strongly in favor of transferring these chapter 11 cases to the Northern District of Texas, the Debtors take every chance to remind this Court that "[w]hen venue is proper, the debtor's choice of forum is entitled to 'great weight.'" Objection, at ¶ 2 (quoting In re Del. & Hudson Ry. Co., 96 B.R. 467, 467 (Bankr. D. Del. 1998)). However, immediately after the Delaware & Hudson Railway Court noted that a debtor's choice of forum should be given deference, it qualified that statement: "On the other hand, a transfer motion under 28 U.S.C. § 1412 requires balancing this factor with several others." Chief among those factors is a consideration for the convenience of parties.

15. With respect to the convenience of the parties, and as noted in greater detail in the Venue Motion, Courts within this Circuit will consider the following factors, among others: "(i) the location of the plaintiff and defendant; (ii) the ease of access to necessary evidence; (iii) the convenience of witnesses; (iii) the availability of subpoena power; and (iv) the expense of obtaining unwilling witnesses." The Paul H. Shield, MD, Inc. Profit Sharing Plan v. Northfield Labs. Inc. (In re Northfield Labs. Inc.), 467 B.R. 582, 591 (Bankr. D. Del. 2010). WSFS respectfully directs this Court's attention to the Venue Motion for a more fulsome discussion of these factors. However, the third factor in this test is especially salient, as WSFS has been

unable to compel the attendance of the Debtors' General Counsel and Co-Chief Restructuring Officer, Ms. Stacey Doré, at the hearing on the Venue Motion, since Ms. Doré – as well as all of the Debtors' other senior management – escape this Court's subpoena power because they live and work in Dallas. The Debtors have refused to produce Ms. Doré at trial, notwithstanding their promise to "make management and any other necessary employees available on the East Coast for depositions, meetings, and other proceedings as appropriate." Objection, at ¶ 22.

16. Forcing a legion of Texas-based creditors to travel to Delaware to litigate disputes with Texas-based Debtors, whose management those creditors are unable to compel on account of the Debtors' location in Texas, in fundamentally unfair. See Jumara, 55 F.3d at 883 (a case should be transferred where "convenience and fairness considerations" so dictate); In re Patriot Coal Corp., 482 B.R. 718, 738 (Bankr. S.D.N.Y. 2012) ("[I]t is fairness, rather than geography, that has been and should continue to be the key factor in determining the appropriateness of venue.").

**WHEREFORE**, WSFS respectfully requests that the Court (i) overrule the Objection; (ii) grant the Venue Motion transferring these chapter 11 cases to the Northern District of Texas; and (iii) grant such other and further relief as it deems just and proper.

Dated: May 21, 2014
Wilmington, Delaware

**ASHBY & GEDDES, P.A.**

By: ________________________
William P. Bowden (I.D. No. 2553)
Gregory A. Taylor (I.D. No. 4008)
500 Delaware Avenue
P.O. Box 1150
Wilmington, Delaware 19899
Telephone: (302) 654-1888
Facsimile: (302) 654-2067

- and –

BROWN RUDNICK LLP
Edward S. Weisfelner (admitted pro hac vice)
Aaron B. Lauchheimer (admitted pro hac vice)
Seven Times Square
New York, New York 10036
Telephone: (212) 209-4800
Facsimile: (212) 209-4801

- and –

Jeffrey L. Jonas (admitted pro hac vice)
Jeremy B. Coffey (admitted pro hac vice)
One Financial Center
Boston, Massachusetts 02111
Telephone: (617) 856-8200
Facsimile: (617) 856-8201

*Counsel to Wilmington Savings Fund Society, FSB, solely in its capacity as successor Indenture Trustee for the Second Liens*

61663132 v3-WorksiteUS-030953/0001