**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re: | ) |
|  | ) Chapter 11 |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) |
|  | ) Case No. 14-10979 (CSS) |
| Debtors. | ) |
|  | ) (Jointly Administered) |
|  | ) |
|  | ) **Re: Docket Nos. 568, 569** |

**DEBTORS' OMNIBUS OBJECTION TO WILMINGTON SAVINGS FUND SOCIETY,**
**FSB'S MOTIONS (A) TO STRIKE THE DEBTORS' OBJECTION AND SUPPORTING**
**DECLARATIONS TO THE MOTION TO TRANSFER THESE CASES TO THE**
**NORTHERN DISTRICT OF TEXAS AND (B) TO SHORTEN THE NOTICE PERIOD**
**FOR THE MOTION TO STRIKE**

The above-captioned Debtors submit this omnibus objection to the motions of

Wilmington Savings Fund Society, FSB ("WSFS") (a) to strike the Debtors' objection and

supporting declarations to the motion to transfer these cases to the Northern District of Texas

(the "Motion to Strike"); and (b) to shorten the notice period for the Motion to Strike. Both

should be denied.

**I.    The Court Should Deny WSFS' Motion To Strike Because The Debtors Never Put**
**"At Issue" The Legal Reasons That They Opted To File In Delaware, And That**
**Privileged Information Is Not Relevant To The Court's Analysis.**

In their objection to the motion to transfer, the Debtors made clear that these cases should

not be transferred to Texas because WSFS failed to carry its burden of demonstrating that the

"balance [of factors] 'strongly favors transfer … or that the evidence establishes a clear and

---

[1]    The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the
debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these
chapter 11 cases, for which joint administration has been granted on an interim basis, a complete list of the
debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list
of such information may be obtained on the website of the debtors' claims and noticing agent at
http://www.efhcaseinfo.com.

proper justification" for transferring venue *to Texas*.  (Debtors' Objection to the Motion of

Wilmington Savings Fund Society, FSB ("WSFS") Pursuant to 28 U.S.C. §§ 1408 and 1412 and

Rule 1014 of the Federal Rules of Bankruptcy Procedure to Transfer Cases to the United States

District Court for the Northern District of Texas, at ¶ 14 (May 8, 2014) ("Venue Objection").)

That objection said nothing about the privileged, legal reasons that might have informed the

Debtors' choice of venue *in Delaware*.  It focused instead on the legal standard:  namely, neither

the "interests of justice" nor the "convenience of the parties" justifies moving this case to Texas.

(Venue Objection at ¶ 1.)  WSFS now all-but-admits that it has failed to carry its burden of

proving that these factors favor transfer.  But it blames that failure on the Debtors' objection to

"mak[ing] the necessary disclosures by asserting the attorney-client privilege," and claims that

the Debtors' put that legal advice "at issue" by focusing on "WSFS' lack of evidentiary

showing."  (Motion to Strike at ¶ 3.)

        Nothing could be further from the truth.  Only WSFS has put attorney-client information

"at issue" by arguing that the Debtors' internal, privileged analysis underlying their choice of

venue is somehow relevant to whether venue should be transferred to Texas.  WSFS does not

cite a single line from the Debtors' objection suggesting that this Court should deny WSFS'

motion because of internal debtor legal analysis comparing Third or Fifth Circuit law, or

similarly privileged information.  Nor could it.  The Debtors instead argued that WSFS failed to

satisfy the legal standards for transfer in the Third Circuit, which have nothing to do with the

Debtors' own privileged analysis about where—for legal reasons—it might prefer to file for

bankruptcy protection.

        To quote WSFS' own papers, "courts have analyzed a number of factors to decide

whether or not to grant a motion to transfer venue, including: (1) plaintiffs original choice of

forum; (2) defendant's forum preference; (3) whether the claim arose elsewhere; (4) location of books and records and/or the possibility of viewing the premises, if applicable; (5) convenience of the parties as indicated by their relative physical and financial condition; (6) convenience of the witnesses; (7) enforceability of the judgment; (8) practical considerations that would make the trial easy, expeditious, or inexpensive, (9) the relative administrative difficulty in the two fora resulting from congestion of the courts' dockets; (10) the public policies of the fora; (11) the familiarity of the judge with the applicable state law; and (12) the local interest in deciding local controversies at home. *See Zazzali v. 1031 Exch. Grp.* (*In re DBSI, Inc.*), 478 B.R. 192, 194-95 (Bankr. D. Del. 2012)." (Motion Strike at ¶ 30.)  Several of these factors are self-evident and undisputed.  None of these factors requires any examination of the Debtors' privileged legal analysis, and WSFS's desire to examine that analysis does not put it "at issue" or make it discoverable.

Moreover, the mere relevance of privileged communications to a claim or defense does not create an "at issue" waiver. As the Third Circuit has explained, "[a]dvice is not in issue merely because it is relevant, and does not necessarily become in issue merely because the attorney's advice might affect the client's state of mind in a relevant manner. ***The advice of counsel is placed in issue where the client asserts a claim or defense, and attempts to prove the claim or defense by disclosing or describing an attorney client communication***." *Rhone-Poulenc Rorer, Inc. v. Home Indem. Co.*, 32 F.3d 851, 863 (3d Cir. 1994) (emphasis added). And the tangential relevance of privileged advice to the Debtors' state of mind—*e.g.*, why the Debtors selected a specific venue—does not require the Debtors either to waive privilege or be foreclosed from offering even non-privileged evidence in support of their position. *See id*. at 864

("A party does not lose the privilege to protect attorney client communications from disclosure in discovery when his or her state of mind is put in issue in the action.").

WSFS' citation of cases in which a party waived privilege when they raised the "advice of counsel" as an "affirmative defense" similarly does not lend credence to their arguments. *Glenmede Trust Co. v. Thompson*, 56 F.3d 476, 486  (3d Cir. 1995) (trustee raised advice of counsel as an affirmative defense); *Harding v. Transport*, 914 F.Supp. 1084, 1088, 1103 (D.N.J. 1996) (defendant waived privilege by asserting defense based on investigation conducted by attorney); *In re G-I Holdings Inc.,* 218 F.R.D. 428, 432-33 (D.N.J. 2003) (taxpayer waived privilege by essentially raising a reliance on counsel defense in response to government interrogatories); *Gov't Guar. Fund of Republic of Finland v. Hyatt Corp.*, 177 F.R.D. 336, 342 (D.V.I. 1997) (party waived privilege by submitting sworn declaration of attorney when opposing a motion for summary judgment); *Grunstein v. Silva*, No. 3932, 2012 5868896, at *1 (Del. Ch. Nov. 20, 2012) (defendant cannot rely on information at trial that defendant withheld during discovery on the basis of privilege).  The Debtors have never suggested that their internal legal analysis should be considered by the Court at all in the venue analysis—let alone as an affirmative defense to transfer.  *See Rhone-Poulenc Rorer, Inc.*, 32 F.3d at 863 (holding that a party must "attempt to prove" its claims or defenses "by disclosing or describing an attorney client communication" to put privileged information "at issue").

As for the actual factors relevant to venue, the Debtors provided abundant discovery that allowed WSFS to build its record as it saw fit.  The Debtors produced lists that included the identity and location of known and potential creditors; multiple spreadsheets tracking all of the Debtors' litigations and their locations (which happen to be predominately in Illinois); non-privileged portions of board presentations, minutes, and agendas that addressed the venue

deliberations; bills concerning the travel and accommodations for the Debtors' personnel in preparing for the "first day" hearings, and more. The Debtors offered to stipulate to the location of the Debtors' assets, books and records, and employees, and provided a corporate designee on those topics. And the Debtors' witnesses provided additional testimony about a slew of relevant, non-privileged issues, including—by way of example—the location of the Debtors' assets, customers, and trade creditors (S. Doré Tr. at 225:21-226:6 (May 15, 2014)); employees (*id.* at 150:18-151:9); books and records (*id.* at 226:7-19; 227:17-228-6); headquarters (*id.* at 16:19-21); creditors (*id.* at 44:2-16); professionals (*id.* at 117:19-118:4); regulators (*id.* at 147:23-149:4), and litigations (*id.* at 292:1-293:17); as well as the Debtors' consideration of cost and economic efficiency (*id.* at 43:7-25).[2] In short, the Debtors' witnesses testified to facts concerning the factors that WSFS itself argues this Court must consider in connection with venue.[3]

Yet, Debtors went even further. As WSFS itself admits, Mrs. Doré, the Debtors' 30(b)(6) witness, directly answered questions about the business reasons that the Debtors filed in Delaware—the exact issue about which WSFS is now complaining:

> Q.    Are there business reasons underlying your, your decision to have the debtors file bankruptcy in Delaware?
>
> A.   Yes.
>
> Q.   Okay. Can you tell me what those business decisions were?

---

[2]    WSFS's motion to strike misleadingly asserts that Mrs. Doré "refused to testify as to the specific parties who [sic] the Debtors intend to pay pursuant to" the Debtors' first-day motions. That is simply not true. Counsel for WSFS never asked Mrs. Doré to identify those specific parties. Instead, he asked repeatedly *why* the Debtors' had not attached lists of those creditors to their first-day motions. The reason that the Debtors' decided to file their first-day motions in a particular form was based on advice of counsel, and so Mrs. Doré did not answer that question. But she testified repeatedly as to the general location of the Debtors' trade creditors. *See, e.g.,* Doré Dep. at 163-79.

[3]    Notably, regarding the factor of convenience of the *parties* to this case—the one factor on which WSFS seems to rely most heavily—not a single *party* has supported WSFS's venue transfer motion except for the ad hoc committee of TCEH unsecured creditors and a non-profit organization that does not appear to be a creditor of the Debtors.

A.   Business reasons?

Q.   Business reasons, yes.

A.    Well, in general, as I think we've said in our response to your motion, this restructuring is not about the companies' operations, it is about the companies' debt load.  And so in general, one of the business reasons underlying the decision would have been the nature of the restructuring and where we thought would be most efficient for the restructuring to take place vis-a-vis the nature of the restructuring.

Q.    Okay.  But for you, for you as the general counsel of the company, it -- wouldn't it be the case that it would be more efficient for you to have the debtors file in Dallas?

A.   No.

(S. Doré Tr. at 43:7-44:16.)  Many of the examiner's follow-on questions potentially called for

privileged information, and the witness was instructed not to answer only "to the extent that the

question calls for privileged information:"

Q.    Okay.  You've testified a little bit about your decision to file bankruptcy in Delaware.  And I'd like you to tell me, without revealing confidences, what analysis you did to make that decision, if any?

      MR. McGAAN:  I'm going to object *to the extent it calls for privileged testimony*.  If you can answer without revealing privileged information you're free to answer.  If you need to consult with me we can talk about that.

A.    I don't think I can answer that question without revealing privileged information.

(S. Doré Tr. at 65:25-66:16 (emphasis added).)  Even the examiner recognized the potential

problem:  "Okay.  Let me, let me try it a little bit differently…" (*id.* at 66:17-18.)  Either way,

the mere fact that some questions about the rationale for filing in one court over another calls for

privileged information does not change the fact that, when directly asked about the *non-*

*privileged* reasons for the Debtors' filing in Delaware, Mrs. Doré answered.

6

Seen in this light, it is apparent that WSFS is attempting to manufacture a dispute in the hopes of saving their transfer motion. WSFS does not seem to quarrel with the fact that the questions asked of deponents sought privileged information. There should be no question, for example, that requests for *why* the Debtors did not attach a specific list of the shippers, warehousemen, and materialmen "who the debtors would like to pay" or the Debtors' analysis of their collective bargaining agreements call for privileged information. (Motion to Strike at ¶¶ 27, 29.) Just because WSFS chose to notice the Debtors' General Counsel for deposition and chose to ask her questions that called for privileged information does not put that information "at issue" such that it is discoverable. Otherwise, any party that contests venue would have free reign to invade privilege if the Debtor happened to consult an attorney for legal advice about where to file or on other privileged issues, which common sense dictates most Debtors would do. That is not the law. *See United States v. Sensient Colors, Inc.*, 2009 WL 2905474, at \*7 (D.N.J. Sept. 9, 2009) ("'It cannot be possible for [a defendant] to justify breaching [a plaintiff's] privilege by reason of its own pleading of an affirmative defense. That would give an adversary who is a skilled pleader the ability to render the privilege a nullity.'") (citation omitted); *Rhone-Poulenc*, 32 F.3d at 864 ("A party does not lose the privilege to protect attorney client communications from disclosure in discovery when his or her state of mind is put in issue in the action."); *Lorenz v. Valley Forge Ins. Co.,* 815 F.2d 1095, 1098 (7th Cir. 1987) ("To waive the attorney-client privilege by voluntarily injecting an issue in the case, a defendant must do more than merely deny a plaintiff's allegations. The holder must inject a new factual or legal issue into the case."). For this reason—and the others articulated above—the Motion to Strike should be denied.

**II.    The Court Should Deny WSFS' Motion To Shorten The Time Period For The Motion Strike, As This Last Minute Filing Appears Calculated To Sandbag The Debtors And Other Parties In Interest.**

Moreover, the Court should deny WSFS' motion to shorten the time period to hear the motion to strike tomorrow.  In the early hours of these cases, WSFS filed a motion for an expedited schedule for the Court to hear their venue motion.  That was their choice.  The Debtors agreed to that schedule, and, despite that the Court was going to offer up an objection deadline of May 19, the Debtors also agreed to file their objection early, on May 8, 2014, so that the parties would have time to review and respond to that pleading.  Since that time, the Debtors have been working extremely hard to meet the schedule imposed by WSFS.  After only five days with WSFS' discovery requests, the Debtors produced documents related to venue on Tuesday, May 13, and then produced a 30(b)(6) witness to testify a mere two days later, on Thursday, May 15.

WSFS, meanwhile, sat on its hands.  At the May 2, 2014 hearing, the Court made clear that "if there are any issues that arise in connection with not getting the discovery related to the venue motion that people think they are entitled to or should be getting, please don't hesitate to pick up the telephone and call and we'll figure it out."  (H'rg Tr. at 115:14-18.)  But WSFS did not express concerns about the scope of the Debtors' production or redactions to Debtors when it received the Debtors' production.  It did not suggest a potential meet and confer about its apparent problems with the Debtors' discovery efforts.  It did not pick up the phone during either of the noticed depositions to challenge any instruction not to answer on privilege grounds.  And it certainly did not reach out to the Court—by letter, motion, or even phone—in an attempt to resolve the supposed dispute before the hearing.[4]

---

[4]    WSFS makes much of Mrs. Doré's unavailability to attend the hearing on May 22 but neglects to inform the Court that Debtors' counsel told WSFS of Mrs. Doré's unavailability well in advance of her deposition, allowed a simple venue deposition to go on for nearly 6 hours, and offered to make Mrs. Doré available for live testimony either on May 23 or, at the Court's direction, on May 22.  WSFS declined the Debtors' invitation to

Instead, WSFS waited over a week after the Debtors made their document production and six days after the Debtors made their corporate designee available to file this motion. This timing is not accidental: it is an attempt to sandbag the Debtors so that they have little opportunity to respond while preparing in parallel for the venue proceeding. The Court should deny the motion to shorten as untimely as a consequence.

## CONCLUSION

The Debtors respectfully request that the Court deny WSFS' motions to strike and to shorten the time period for that motion.

[*Remainder of this page intentionally left blank.*]

---

take this issue to the Court and instead decided simply to complain about it mere hours before the venue hearing on May 22.

Wilmington, Delaware
Dated:  May 21, 2014

*/s/ Tyler D. Semmelman*

**RICHARDS, LAYTON & FINGER, P.A.**
Mark D. Collins (No. 2981)
Daniel J. DeFranceschi (No. 2732)
Jason M. Madron (No. 4431)
Tyler D. Semmelman (No. 5386)
920 North King Street
Wilmington, Delaware 19801
Telephone:      (302) 651-7700
Facsimile:      (302) 651-7701
Email:          collins@rlf.com
                defranceschi@rlf.com
                madron@rlf.com
                semmelman@rlf.com

-and-

**KIRKLAND & ELLIS LLP**
Richard M. Cieri (admitted *pro hac vice*)
Edward O. Sassower, P.C. (admitted *pro hac vice*)
Stephen E. Hessler (admitted *pro hac vice*)
Brian E. Schartz (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022-4611
Telephone:      (212) 446-4800
Facsimile:      (212) 446-4900
Email:          richard.cieri@kirkland.com
                edward.sassower@kirkland.com
                stephen.hessler@kirkland.com
                brian.schartz@kirkland.com

-and-

James H.M. Sprayregen, P.C. (admitted *pro hac vice*)
Chad J. Husnick (admitted *pro hac vice*)
Steven N. Serajeddini (admitted *pro hac vice*)
300 North LaSalle
Chicago, Illinois 60654
Telephone:      (312) 862-2000
Facsimile:      (312) 862-2200
Email:          james.sprayregen@kirkland.com
                chad.husnick@kirkland.com
                steven.serajeddini@kirkland.com

Proposed Co-Counsel to the Debtors and Debtors in Possession

10