# **Exhibit 1**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | ) | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) | Case No. 14-10979 (CSS) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | **Re:  Docket No. 73** |

**FINAL ORDER (A) APPROVING
POSTPETITION FINANCING FOR TEXAS
COMPETITIVE ELECTRIC HOLDINGS COMPANY LLC
AND CERTAIN OF ITS DEBTOR AFFILIATES, (B) GRANTING
LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE
EXPENSE CLAIMS, AND (C) MODIFYING THE AUTOMATIC STAY**

Upon the motion (the "DIP Motion") of Texas Competitive Electric Holdings Company LLC (the "Borrower" or "TCEH"), Energy Future Competitive Holdings Company LLC (the "Parent Guarantor"), and each of the Subsidiary Guarantors (as defined in the DIP Credit Agreement (as defined herein)) (the Subsidiary Guarantors, together with the Parent Guarantor, the "Guarantors"), each as a debtor and debtor-in-possession (collectively, the "TCEH Debtors") in the above-captioned chapter 11 cases of the TCEH Debtors (collectively, the "Cases"), pursuant to sections 105, 361, 362, 363, 364(c)(1), 364(c)(2), 364(c)(3), 364(d), and 507 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "Bankruptcy Code"), rules 2002, 4001, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rule 4001-2 of the Local Rules of Bankruptcy Practice and Procedure of the United

---

[1]    The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810.  The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201.  Due to the large number of debtors in these chapter 11 cases, which are being jointly administered on an interim basis, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

States Bankruptcy Court for the District of Delaware (the "Local Bankruptcy Rules"), seeking entry of a final order (this "Final Order"), inter alia:

(i)    authorizing the Borrower and the Parent Guarantor to enter into that certain Senior Secured Superpriority Debtor-in-Possession Credit Agreement, dated as of May 5, 2014 (as amended, restated, supplemented, or otherwise modified from time to time, the "DIP Credit Agreement"), between the Borrower, the Parent Guarantor, the financial institutions from time to time party thereto as lenders (the "DIP Lenders"), the financial institutions from time to time party thereto as letter of credit issuers (the "DIP L/C Issuers"), Citibank, N.A., as administrative agent and collateral agent (in such capacities, the "DIP Agent"),[2] and the other agents and entities from time to time party thereto, substantially in the form of Exhibit A annexed to the DIP Motion, to obtain secured postpetition financing (the "Financing") on a superpriority basis, consisting of (a) a revolving credit facility (the "Revolving Credit Facility") in an aggregate principal amount of up to $1,950,000,000; (b) a term credit facility (the "Term Loan Facility") in an aggregate principal amount of up to $1,425,000,000, of which up to $800,000,000 may be applied by TCEH to fund the General L/C Collateral Account to support General Letters of Credit (each, as defined in the DIP Credit Agreement); (c) a delayed-draw term credit facility (the "Delayed-Draw Term Facility") in an aggregate principal amount of up to $1,100,000,000, the proceeds of which, if funded, will be applied by TCEH to fund the RCT L/C Collateral Account to support RCT Letters of Credit (each, as defined in the DIP Credit Agreement); (d) obligations owed to the General Letter of Credit Issuer (as defined in the DIP Credit

---

[2]    As used herein, the term "DIP Agent" refers to Citibank, N.A., as administrative agent under the DIP Credit Agreement, Citibank, N.A., as collateral agent under the DIP Credit Agreement, or both, as the context requires. All references in this Final Order to the DIP Agent with respect to the Secured Hedge Banks or the Secured Cash Management Banks (each, as defined herein) shall mean Citibank, N.A., in its capacity as collateral agent. Citibank, N.A., in its capacity as administrative agent, has no duties or obligations to the Secured Hedge Banks or the Secured Cash Management Banks.

Agreement) (without duplication of any other obligations described in clauses (a), (b), or (c) above) pursuant to a cash collateralized letter of credit facility (the "General Letter of Credit Facility") in an aggregate stated amount of up to $800,000,000, as such amount may be increased as agreed in writing between TCEH and the General Letter of Credit Issuers providing such increased amount; and (e) obligations owed to the RCT Letter of Credit Issuer (as defined in the DIP Credit Agreement) (without duplication of any other obligations described in clauses (a), (b), (c), or (d) above) pursuant to a cash collateralized letter of credit facility (the "RCT Letter of Credit Facility" and, collectively with the Revolving Credit Facility, the Term Loan Facility, the Delayed-Draw Term Facility, and the General Letter of Credit Facility, the "DIP Facility") in an aggregate stated amount of up to $1,100,000,000;

(ii)    authorizing the Parent Guarantor and each of the Subsidiary Guarantors to enter into that certain Guarantee, dated as of May 5, 2014  (as amended, restated, supplemented, or otherwise modified from time to time, the "DIP Guarantee");

(iii)    authorizing each of the TCEH Debtors to execute and deliver the DIP Credit Agreement, the DIP Guarantee, the Fee Letter (as defined in the DIP Credit Agreement), and the other related Credit Documents (as defined in the DIP Credit Agreement) (collectively, the "DIP Documents") and to perform such other acts as may be necessary or desirable in connection with the DIP Documents;

(iv)    granting the DIP Facility and all obligations owing thereunder and under the DIP Documents, the Secured Commodity Hedging Agreements, the Secured Hedging Agreements, and the Secured Cash Management Agreements (each, as defined in the DIP Credit Agreement) to the DIP Agent, the DIP Lenders, the DIP L/C Issuers, the Secured Hedge Banks, and the Secured Cash Management Banks (collectively, and including all "Obligations" as described in

the DIP Credit Agreement, including, without limitation, (A) obligations (the "Secured Hedge Obligations") owing under or in connection with the Secured Commodity Hedging Agreements or the Secured Hedging Agreements with the TCEH Debtors and (B) obligations (the "Secured Cash Management Obligations") owing under or in connection with the Secured Cash Management Agreements with the TCEH Debtors, the "DIP Obligations") allowed superpriority administrative expense claims in each of the Cases and any Successor Cases (as defined herein);

(v)    granting to the DIP Agent, for the benefit of itself, its sub-agents, the DIP Lenders, the DIP L/C Issuers, Hedge Banks (as defined in the DIP Credit Agreement) that are parties to Secured Commodity Hedging Agreements or Secured Hedging Agreements (the "Secured Hedge Banks") with the TCEH Debtors,[3] and Cash Management Banks (as defined in the DIP Credit Agreement) that are parties to Secured Cash Management Agreements (the "Secured Cash Management Banks") with the TCEH Debtors, automatically perfected security interests in and liens upon all of the DIP Collateral (as defined herein), including, without limitation, all property constituting "Cash Collateral," as defined in section 363(a) of the Bankruptcy Code, which security interests and liens shall be subject to the priorities set forth herein;

(vi)    authorizing and directing the TCEH Debtors to pay the principal, interest, fees, expenses, and other amounts payable and/or reimbursable under the DIP Documents, including the Fee Letter, as such amounts become due, including, without limitation, letter of credit fees

---

[3]    For the avoidance of doubt, the TCEH Debtors are only authorized to pledge collateral for the benefit of Secured Hedge Banks pursuant to the terms of the *Interim Order Authorizing the Debtors To (A) Continue Performing Under Prepetition Hedging and Trading Arrangements, (B) Pledge Collateral and Honor Obligations Thereunder, and (C) Enter Into and Perform Under Trading Continuation Agreements and New Postpetition Hedging and Trading Arrangements* [Docket No. 315] or the *Final Order Authorizing the Debtors To (A) Continue Performing Under Prepetition Hedging and Trading Arrangements, (B) Pledge Collateral and Honor Obligations Thereunder, and (C) Enter Into and Perform Under Trading Continuation Agreements and New Postpetition Hedging and Trading Arrangements*, as applicable.

(including issuance and other related charges), commitment fees, closing fees, arrangement fees, incentive fees, and administrative agent's fees, all to the extent provided in, and in accordance with the terms of, the DIP Documents; and

(vii)    vacating and modifying the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of the DIP Documents, as limited pursuant hereto, and this Final Order.

The Court having considered the DIP Motion, the *Declaration of Paul Keglevic, Executive Vice President, Chief Financial Officer, and Co-Chief Restructuring Officer of Energy Future Holdings Corp., et al., in Support of First Day Motions*, sworn to on April 29, 2014 [D.I. 98] (the "Keglevic Declaration"), the exhibits attached thereto, the *Declaration of Stephen Goldstein in Support of (I) the Motion of Texas Competitive Electric Holdings Company LLC and Certain of Its Debtor Affiliates for Entry of Interim and Final Orders (A) Approving Postpetition Financing, (B) Granting Liens and Providing Superpriority Administrative Expense Claims, (C) Modifying the Automatic Stay, and (D) Scheduling a Final Hearing and (II) the Motion of Texas Competitive Electric Holdings Company LLC and Certain of Its Debtor Affiliates for Entry of Interim and Final Orders (A) Authorizing Use of Cash Collateral, (B) Granting Adequate Protection, (C) Modifying the Automatic Stay, and (D) Scheduling a Final Hearing*, sworn to on April 29, 2014 [D.I. 73] (the "Goldstein Declaration"), the *Supplemental Declaration of Stephen Goldstein in Support of (I) the Motion of Texas Competitive Electric Holdings Company LLC and Certain of Its Debtor Affiliates for Entry of Interim and Final Orders (A) Approving Postpetition Financing, (B) Granting Liens and Providing Superpriority Administrative Expense Claims, (C) Modifying the Automatic Stay, and (D) Scheduling a Final Hearing and (II) the Motion Authorizing Texas Competitive Electric*

*Holdings Company LLC and Certain of Its Debtor Affiliates To File Under Seal the Certain Fee Letter Related to Proposed Debtor-in-Possession Financing*, sworn to on April 30, 2014 [D.I. 211] (the "Supplemental Goldstein Declaration" and, together with the Goldstein Declaration, the "Goldstein Declarations"), the DIP Documents, and the evidence submitted or adduced and the arguments of counsel made at the interim hearing held on May 1, 2014 (the "Interim Hearing") and at the final hearing held on June 5, 2014 (the "Final Hearing"); and notice of the Interim Hearing having been provided in accordance with rules 4001(b), (c), and (d), and 9014 of the Bankruptcy Rules; and this Court having entered on May 2, 2014 an order authorizing funding on an interim basis; and adequate notice of the Final Hearing having been provided in accordance with Bankruptcy Rules 4001(b), (c), and (d) and 9014; and the Final Hearing to consider the relief requested in the DIP Motion having been held and concluded; and all objections, if any, to the entry of this Final Order having been withdrawn, resolved, or overruled by the Court; and it appearing to the Court that granting the relief requested is fair and reasonable and in the best interests of the TCEH Debtors and their estates, creditors, and other parties in interest, and is essential for the continued operation of the TCEH Debtors' businesses; and after due deliberation and consideration and for good and sufficient cause appearing therefor;

BASED UPON THE RECORD ESTABLISHED AT THE INTERIM AND FINAL HEARINGS BY THE TCEH DEBTORS, THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:[4]

    A.    Petition Date.  On April 29, 2014 (the "Petition Date"), each of the TCEH Debtors filed a separate voluntary petition under chapter 11 of the Bankruptcy Code in the

---

[4]     Findings of fact shall be construed as conclusions of law, and conclusions of law shall be construed as findings of fact, pursuant to Bankruptcy Rule 7052.

United States Bankruptcy Court for the District of Delaware (the "Court") commencing these Cases.  On May 1, 2014, the Court entered an order approving the joint administration of these Cases.

B.      Debtors-in-Possession.  The TCEH Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in these Cases.

C.      Jurisdiction and Venue.  The Court has jurisdiction over this matter, these proceedings, and the persons and property affected hereby pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference from the United States District Court for the District of Delaware, dated February 29, 2012.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the TCEH Debtors confirm their consent pursuant to rule 9013-1(f) of the Local Bankruptcy Rules to the entry of a final order by the Court in connection with the DIP Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution. Venue for the Cases and proceedings on the DIP Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

D.      Committee Formation.  On May 13, 2014, the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an official committee of unsecured creditors in these Cases pursuant to section 1102 of the Bankruptcy Code [D.I. 420] (the "Creditors' Committee").

E.      Interim Order.  Based upon the DIP Motion, the Keglevic Declaration, the Goldstein Declarations, the DIP Documents, and the evidence submitted by the Debtors at the Interim Hearing, the Court entered, on May 2, 2014, that certain *Interim Order (A) Approving*

*Postpetition Financing for Texas Competitive Electric Holdings Company LLC and Certain of Its Debtor Affiliates, (B) Granting Liens and Providing Superpriority Administrative Expense Claims, (C) Modifying the Automatic Stay, and (D) Scheduling a Final Hearing* [Docket No. 325] (the "Interim Order"). Pursuant to the Interim Order and Bankruptcy Rule 4001, the TCEH Debtors were authorized, among other things, to incur secured borrowings from the DIP Lenders pursuant to the terms of the DIP Documents and the Interim Order pending the Final Hearing on the DIP Motion. The Interim Order, including, without limitation, the findings made therein, is incorporated herein by reference. Pursuant to the Interim Order, the Final Hearing was scheduled for June 5, 2014.

      F.     Findings Regarding Postpetition Financing.

      (i)     Request for Postpetition Financing. The TCEH Debtors seek authority on a final basis to obtain the DIP Facility on the terms described herein and in the DIP Documents to administer their Cases and fund their operations pursuant to this Final Order.

      (ii)     Priming of Liens of Prepetition Secured Creditors. The priming of the Prepetition First Priority Liens[5] and the Prepetition Second Priority Liens of the Prepetition Secured Creditors in the Prepetition Collateral (each, as defined in the Final Cash Collateral Order) under section 364(d) of the Bankruptcy Code, as contemplated by the DIP Facility and as further described below, will enable the TCEH Debtors to obtain the DIP Facility and to continue to operate their businesses for the benefit of the estates and their creditors.

      (iii)     Need for Postpetition Financing. The TCEH Debtors' need to obtain credit pursuant to the DIP Facility has been immediate and critical to enable the TCEH Debtors

---

[5]    Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the *Final Order (A) Authorizing Use of Cash Collateral for Texas Competitive Electric Holdings Company LLC and Certain of Its Debtor Affiliates, (B) Granting Adequate Protection, and (C) Modifying the Automatic Stay* (the "Final Cash Collateral Order").

to continue operations and to administer and preserve the value of their estates.  The ability of

the TCEH Debtors to finance their operations, maintain business relationships with their vendors,

suppliers, and customers, pay their employees, and otherwise finance their operations has

required the availability of working capital from the DIP Facility, the absence of which would

immediately and irreparably harm the TCEH Debtors, their estates, and their creditors, and the

possibility for a successful reorganization.  The TCEH Debtors have not had sufficient available

sources of working capital and financing to operate their businesses or maintain their properties

in the ordinary course of business without the DIP Facility.

(iv)    No Credit Available on More Favorable Terms.  Given their current

financial condition, financing arrangements, and capital structure, the TCEH Debtors have been

unable to obtain financing from sources other than the DIP Lenders and the DIP L/C Issuers on

terms more favorable than the DIP Facility.  The TCEH Debtors have been unable to obtain

unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative

expense.  The TCEH Debtors have also been unable to obtain credit (a) having priority over that

of administrative expenses of the kind specified in sections 503(b), 507(a), and 507(b) of the

Bankruptcy Code, (b) secured by a lien on property of the TCEH Debtors and their estates that is

not otherwise subject to a lien, or (c) secured solely by a junior lien on property of the TCEH

Debtors and their estates that is subject to a lien.  Financing on a postpetition basis is not

otherwise available without granting the DIP Agent, for the benefit of itself, its sub-agents, the

DIP Lenders, the DIP L/C Issuers, the Secured Hedge Banks, and the Secured Cash Management

Banks, (x) perfected security interests in and liens on (each, as provided herein) all of the TCEH

Debtors' existing and after-acquired assets with the priorities set forth in paragraph 8 of this

Final Order, (y) superpriority claims and liens, and (z) the other protections set forth in this Final Order.

      G.    <u>Use of Proceeds of the DIP Facility</u>.  As a condition to entry into the DIP Credit Agreement and the extension of credit under the DIP Facility, the DIP Agent, the DIP Lenders, and the DIP L/C Issuers required, and the TCEH Debtors agreed, that proceeds of the Term Loans and the Revolving Credit Loans (each, as defined in the DIP Credit Agreement) shall be used, in each case in a manner consistent with the terms and conditions of the DIP Documents, to (a) finance any and all working capital needs and for any other general corporate purposes, including, without limitation, to (i) provide collateral support in respect of financial or physical trading transactions, including commodities transactions (in each case, subject to the terms of all applicable interim and final orders entered by the Court in the Cases) and (ii) comply with any legal and/or regulatory requirements of governmental and quasi-governmental entities (including for posting bonds and remediation or reclamation obligations of any nature (such as with the Railroad Commission of Texas (the "<u>RCT</u>")), complying with any statutory or regulatory requirements, and for self-bonding in respect of permits and licenses) applicable to the TCEH Debtors (and, to the limited extent set forth in the DIP Documents, of the Specified Affiliates (as defined in the DIP Credit Agreement)), (b) provide for Letters of Credit (as defined in the DIP Credit Agreement), and (c) pay related transaction costs, fees, liabilities, and expenses, and other administration costs incurred in connection with the Cases and the commitment, negotiation, syndication, documentation (including any commitment letters), execution, and closing of the DIP Facility, as provided for in the DIP Credit Agreement and the DIP Documents.  If funded, the proceeds of the Delayed-Draw Term Loans (as defined in the DIP Credit Agreement) will be used to fund the RCT L/C Collateral Account.  The General Letters of Credit may be used (x) for

general corporate purposes, including, without limitation, providing collateral support in respect of financial or physical trading transactions, including commodities transactions related to the TCEH Debtors' businesses and activities (in each case, subject to the terms of all applicable interim and final orders entered by the Court in the Cases) (and, to the limited extent set forth in the DIP Documents, of the Specified Affiliates) and (y) to comply with any legal and/or regulatory requirements of governmental and quasi-governmental entities (including for posting bonds and remediation or reclamation obligations of any nature (such as with the RCT), complying with any statutory or regulatory requirements, and for self-bonding in respect of permits and licenses) applicable to the TCEH Debtors.  If issued, the RCT Letters of Credit will be used for the purpose of satisfying bonding requirements of the RCT.

H.    Interim Borrowing.  After the Interim Hearing, and pursuant to the Interim Order, the Court authorized, among other things, extensions of credit under the DIP Documents in the form of (a) borrowings in an aggregate principal amount of up to $533,000,000 under the Revolving Credit Facility, (b) borrowings in an aggregate principal amount of up to $1,100,000,000 under the Delayed-Draw Term Facility, the proceeds of which, if funded, will be applied by TCEH to fund the RCT L/C Collateral Account, and (c) borrowings in an aggregate principal amount of up to $700,000,000 under the Term Loan Facility, of which up to $700,000,000 may be applied by TCEH to fund the General L/C Collateral Account.  Pursuant to the Interim Order, the Court authorized and empowered the TCEH Debtors to execute and deliver the DIP Documents and authorized and empowered the TCEH Debtors to incur and to perform all of the DIP Obligations in accordance with, and subject to, the terms of the Interim Order and the DIP Documents, including, without limitation, the payment of the principal, interest, fees, expenses, reimbursement obligations with respect to Letters of Credit, and other

amounts payable or reimbursable by the TCEH Debtors described in the DIP Documents and all other documents comprising the DIP Facility as such became due, including, without limitation, letter of credit fees (including issuance and other related charges), commitment fees, closing fees, arrangement fees, incentive fees, and administrative agent's fees, all to the extent provided in, and in accordance with, the DIP Credit Agreement, the DIP Documents, and the Interim Order.  On May 5, 2014, the DIP Documents were executed, and the Borrower was authorized to borrow on the terms and conditions set forth in those documents and in the Interim Order.

I.      Section 506(c).  In light of the DIP Agent's, the DIP Lenders', and the DIP L/C Issuers' agreement to subordinate their liens and superpriority claims to the Carve Out and the RCT Reclamation Support Carve Out (each, as defined herein), the DIP Agent, the DIP Lenders, and the DIP L/C Issuers are each entitled to a waiver of the provisions of section 506(c) of the Bankruptcy Code.

J.      Good Faith of the DIP Agent, the DIP Lenders, the DIP L/C Issuers, and the Joint Lead Arrangers.

(i)      Willingness To Provide Financing.  The DIP Lenders have indicated a willingness to provide financing to the TCEH Debtors subject to (a) the entry of the Interim Order and this Final Order, (b) approval of the terms and conditions of the DIP Facility and the DIP Documents, and (c) entry of findings by the Court that such financing is essential to the TCEH Debtors' estates, that the DIP Agent, the DIP Lenders, and the DIP L/C Issuers are extending credit to the TCEH Debtors pursuant to the DIP Documents in good faith, and that the DIP Agent's, the DIP Lenders', and the DIP L/C Issuers' claims, superpriority claims, security interests and liens, and other protections granted pursuant to the Interim Order, this Final Order, and the DIP Documents will have the protections provided in section 364(e) of the Bankruptcy

Code and will not be affected by any subsequent reversal, modification, vacatur, amendment, reargument, or reconsideration of the Interim Order, this Final Order, or any other order.

(ii)    <u>Business Judgment and Good Faith Pursuant to Section 364(e)</u>.  The terms and conditions of the DIP Facility and the DIP Documents, and the fees paid and to be paid thereunder, are fair, reasonable, and the best available to the TCEH Debtors under the circumstances, reflect the TCEH Debtors' exercise of prudent business judgment consistent with their fiduciary duties, and are supported by reasonably equivalent value and consideration.  The DIP Facility was negotiated in good faith and at arm's length among the TCEH Debtors, the DIP Agent, the DIP Lenders, the DIP L/C Issuers, and the Joint Lead Arrangers (as defined in the DIP Credit Agreement).  Credit to be extended under the DIP Facility shall be deemed to have been so allowed, advanced, made, used, or extended in good faith, and for valid business purposes and uses, within the meaning of section 364(e) of the Bankruptcy Code, and the DIP Agent, the DIP Lenders, the DIP L/C Issuers, and the Joint Lead Arrangers are therefore entitled to the protection and benefits of section 364(e) of the Bankruptcy Code and this Final Order.

K.    <u>Good Cause</u>.  The relief requested in the DIP Motion is necessary, essential, and appropriate, and is in the best interests of, and will benefit, the TCEH Debtors and their estates, creditors, and other parties in interest, as its implementation will, <u>inter alia</u>, provide the TCEH Debtors with the necessary liquidity to (a) minimize the disruption to the TCEH Debtors' business and ongoing operations, (b) preserve and maximize the value of the TCEH Debtors' estates for the benefit of all of the TCEH Debtors' creditors and other parties in interest, and (c) avoid immediate and irreparable harm to the TCEH Debtors and their estates, creditors, other parties in interest, businesses, employees, and assets.

L.    <u>Notice</u>.    In accordance with rules 2002, 4001(c) and (d), and 9014 of the Bankruptcy Rules, and the Local Bankruptcy Rules, notice of the Final Hearing and the emergency relief requested in the DIP Motion has been provided by the TCEH Debtors, via first class mail to: (a) the Office of the U.S. Trustee for the District of Delaware; (b) the entities listed on the Consolidated List of Creditors Holding the 50 Largest Unsecured Claims filed pursuant to Bankruptcy Rule 1007(d) and proposed counsel thereto; (c) Wilmington Trust, N.A., as successor First Lien Credit Agent, and counsel thereto; (d) Bank of New York Mellon Trust Company, N.A., in its capacity as indenture trustee under:  (i) the TCEH unsecured pollution control revenue bonds; and (ii) the EFCH 2037 Notes due 2037, and counsel thereto; (e) American Stock Transfer & Trust Company, LLC, in its capacity as indenture trustee under: (i) the 9.75% EFH senior unsecured notes due 2019;  (ii) the 10.0% EFH senior unsecured notes due 2020; (iii) the 10.875% EFH LBO senior unsecured notes due 2017; (iv) the 11.25%/12.0% EFH LBO toggle notes due 2017; (v) the 5.55% EFH legacy notes (series P) due 2014; (vi) the 6.50% EFH legacy notes (series Q) due 2024; and (vii) the 6.55% EFH legacy notes (series R) due 2034, and counsel thereto; (f) Computershare Trust Company, N.A. and Computershare Trust Company of Canada, in their capacities as indenture trustee under:  (i) the 11.0% EFIH senior secured second lien notes due 2021; and (ii) the 11.75% EFIH senior secured second lien notes due 2022, and counsel thereto; (g) UMB Bank, N.A. in its capacity as indenture trustee under:  (i) the 9.75% EFIH senior unsecured notes due 2019; and (ii) the 11.25%/12.25% EFIH senior toggle notes due 2018, and counsel thereto; (h) BOKF, NA, dba Bank of Arizona, in its capacity as indenture trustee under 11.50% TCEH senior secured notes due 2020, and counsel thereto; (i) CSC Trust Company of Delaware in its capacity as indenture trustee under:  (i) the 6.875% EFIH senior secured notes due 2017; and (ii) the 10.0% EFIH senior secured notes due

2020, and counsel thereto; (j) Law Debenture Trust Company of New York in its capacity as indenture trustee under:  (i) the 10.25% TCEH senior unsecured notes due 2015; and (ii) the 10.50%/11.25% TCEH senior toggle notes due 2016, and counsel thereto; (k) Wilmington Savings Fund Society, FSB in its capacity as indenture trustee under the 15.0% TCEH senior secured second lien notes due 2021, and counsel thereto; (l) counsel to certain holders of claims against the Debtors regarding each of the foregoing described in clauses (c) through (k); (m) the agent for the TCEH debtor-in-possession financing facility and counsel thereto; (n) the agent for the EFIH debtor-in-possession financing facility and counsel thereto; (o) counsel to certain holders of equity in Texas Energy Future Holdings Limited Partnership; (p) counsel to Oncor; (q) the Securities and Exchange Commission; (r) the Internal Revenue Service; (s) the Office of the United States Attorney for the District of Delaware; (t) the Office of the Texas Attorney General on behalf of the Public Utility Commission of Texas; (u) counsel to the Electric Reliability Council of Texas; (v) the RCT; (w) the counterparties to the First Lien Commodity Hedges and First Lien Interest Rate Swaps; and (x) counsel to the unofficial committee of certain TCEH first lien debt holders.  The parties have made reasonable efforts to afford the best notice possible under the circumstances to permit the relief set forth in this Final Order, and no other or further notice is or shall be required.

Based upon the foregoing findings and conclusions, the DIP Motion, and the record before the Court with respect to the DIP Motion, and good and sufficient cause appearing therefor,

IT IS HEREBY ORDERED that:

1.    <u>DIP Motion Approved</u>.  The DIP Motion is granted, subject to the terms and conditions set forth in this Final Order.

2.      <u>Objections Overruled</u>.    All objections to the DIP Motion, to the extent not withdrawn or resolved, are hereby overruled.  This Final Order shall be immediately effective and enforceable upon its entry.

**DIP Facility Authorization**

3.      <u>Ratification of Interim Order and Authorization of the DIP Financing and DIP Documents</u>.  The terms of the Interim Order are hereby ratified and confirmed, except to the extent amended or modified by this Final Order, and all borrowings and payments made thereunder shall be deemed made in accordance with and pursuant to this Final Order.  The DIP Documents are hereby approved on a final basis.  The TCEH Debtors are expressly and immediately authorized and empowered to execute and deliver (to the extent not previously executed or delivered) the DIP Documents and to incur and to perform the DIP Obligations in accordance with, and subject to, the terms of this Final Order and the DIP Documents, and to deliver all instruments and documents which may be required or necessary for the performance by the TCEH Debtors under the DIP Facility and the creation and perfection of the DIP Liens described in, and provided for by, this Final Order and the DIP Documents.  The TCEH Debtors are hereby authorized and directed to pay, in accordance with this Final Order, the principal, interest, fees, expenses, reimbursement obligations with respect to Letters of Credit, and other amounts payable or reimbursable by the TCEH Debtors described in the DIP Documents and all other documents comprising the DIP Facility as such become due and without need to obtain further Court approval, including, without limitation, letter of credit fees (including issuance and other related charges), commitment fees, closing fees, arrangement fees, incentive fees, and administrative agent's fees, whether or not the transactions contemplated hereby are consummated, as provided for in the DIP Credit Agreement and the DIP Documents.  All collections and proceeds, whether ordinary course or otherwise, will be deposited and applied as

required by this Final Order and the DIP Documents.  Upon execution and delivery (to the extent not previously executed or delivered), the DIP Documents shall represent valid and binding obligations of the TCEH Debtors, enforceable against each of the TCEH Debtors and their estates in accordance with their terms.  No obligation, payment, transfer, or grant of security under the DIP Documents, the Interim Order, or this Final Order shall be stayed, restrained, voidable, or recoverable under the Bankruptcy Code or under any applicable law (including, without limitation, under section 502(d) of the Bankruptcy Code), or subject to any defense, reduction, setoff, recoupment, or counterclaim.

4.     <u>Authorization to Borrow</u>.  Immediately upon the Closing Date (as defined in the DIP Credit Agreement), the TCEH Debtors were authorized (and such authorization is hereby ratified, confirmed, and approved on a final basis) to draw upon the DIP Facility. Notwithstanding anything to the contrary in this Final Order or in the DIP Credit Agreement, if the TCEH Debtors at any time request any Incremental Facilities (as such term is defined in the DIP Credit Agreement) from the DIP Agent and otherwise satisfy the relevant requirements under the DIP Documents, the TCEH Debtors shall be required to seek Court approval of such Incremental Facilities.

5.     <u>Use of DIP Facility Proceeds</u>.  Immediately upon entry of this Final Order, the TCEH Debtors are authorized to draw upon the DIP Facility and use advances of credit under the DIP Facility only for the purposes specifically set forth in, and subject to the terms and conditions of, this Final Order and the DIP Documents.

6.     <u>DIP Obligations</u>.  The DIP Documents and this Final Order shall constitute and evidence the validity and binding effect of the TCEH Debtors' DIP Obligations, which DIP Obligations shall be enforceable against the TCEH Debtors, their estates, and any successors

thereto, including, without limitation, any trustee appointed in the Cases, any case under chapter 7 of the Bankruptcy Code upon the conversion of any of the Cases, or in any other proceedings superseding or related to any of the foregoing (collectively, the "Successor Cases"). On the DIP Termination Date, (a) the DIP Obligations shall be due and payable, without notice or demand, to the extent provided for in the DIP Credit Agreement, and (b) unless all the DIP Obligations (excluding the Secured Hedge Obligations, the Secured Cash Management Obligations, and Contingent Obligations (as defined in the DIP Credit Agreement)) have been indefeasibly paid in full, in cash, all Commitments (as defined in the DIP Credit Agreement) have been terminated, and all Letters of Credit have been cancelled (or all such Letters of Credit have been fully cash collateralized or otherwise back-stopped, in each case to the satisfaction of the applicable DIP L/C Issuers), the use of the DIP Collateral, including Cash Collateral, shall automatically cease.

7.    DIP Liens.  To secure the DIP Obligations, effective immediately upon entry of the Interim Order, pursuant to sections 361, 362, 364(c)(2), 364(c)(3), and 364(d) of the Bankruptcy Code, the DIP Agent, for the benefit of itself, its sub-agents, the DIP Lenders, the DIP L/C Issuers, the Secured Hedge Banks, and the Secured Cash Management Banks, was granted (and such grant is hereby ratified, confirmed, and approved on a final basis) the following continuing, valid, binding, enforceable, non-avoidable, and automatically and properly perfected postpetition security interests and liens (all property identified in clauses (a), (b), and (c) below being collectively referred to as the "DIP Collateral"), subject to the payment of the Carve Out and the RCT Reclamation Support Carve Out (all such liens and security interests granted to the DIP Agent, for the benefit of itself, its sub-agents, the DIP Lenders, the DIP L/C

Issuers, the Secured Hedge Banks, and the Secured Cash Management Banks, pursuant to the Interim Order, this Final Order, and the DIP Documents, the "DIP Liens"):

(a)     First Lien on Cash Balances and Unencumbered Property.  Pursuant to section 364(c)(2) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected first priority senior security interest in and lien upon all prepetition and postpetition property of the TCEH Debtors, whether existing on the Petition Date or thereafter acquired, that, on or as of the Petition Date, is not subject to valid, perfected, and non-avoidable liens, including, without limitation, all real and personal property, inventory, plant, fixtures, machinery, equipment, the RCT L/C Collateral Account and the General L/C Collateral Account (each, as defined in the DIP Credit Agreement), cash, any investment of such cash, accounts receivable, other rights to payment whether arising before or after the Petition Date (including, without limitation, postpetition intercompany claims of the TCEH Debtors), deposit accounts, investment property, supporting obligations, minerals, oil, gas, and as-extracted collateral, causes of action (including those arising under section 549 of the Bankruptcy Code and any related action under section 550 of the Bankruptcy Code), royalty interests, chattel paper, contracts, general intangibles, documents, instruments, interests in leaseholds, letter of credit rights, patents, copyrights, trademarks, trade names, other intellectual property, capital stock and stock equivalents of subsidiaries, books and records pertaining to the foregoing, and to the extent not otherwise included, all proceeds, products, offspring, and profits of any and all of the foregoing (the "Unencumbered Property").  Notwithstanding the prior sentence, Unencumbered Property shall in any event exclude the TCEH Debtors' claims and causes of action under chapter 5 of the Bankruptcy Code (other than causes of action arising under section 549 of the Bankruptcy Code and any related action under section 550 of the Bankruptcy Code), or any other avoidance

actions under the Bankruptcy Code (collectively, "Avoidance Actions"), but, upon entry of this Final Order, shall include any proceeds or property recovered, unencumbered, or otherwise the subject of successful Avoidance Actions, whether by judgment, settlement, or otherwise.

(b)        Priming of Liens of Prepetition Secured Creditors.  Pursuant to section 364(d)(1) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected first priority senior priming security interest in and lien upon all prepetition and postpetition property of the TCEH Debtors, whether existing on the Petition Date or thereafter acquired, that is subject to valid, perfected, and non-avoidable liens presently held by any of the Prepetition Secured Creditors (as defined in the Final Cash Collateral Order), excluding the Deposit L/C Loan Collateral Account to the extent of the Deposit L/C Obligations (each, as defined in the First Lien Credit Agreement (as defined in the Final Cash Collateral Order)).  Such security interests and liens shall be senior in all respects to the interests in such property of any of the Prepetition Secured Creditors arising from current and future liens of any of the Prepetition Secured Creditors (including, without limitation, Adequate Protection Liens (as defined in the Final Cash Collateral Order)), but shall not be senior to any valid, perfected, and non-avoidable interests of other parties arising out of liens, if any, on such property existing immediately prior to the Petition Date, including the liens securing the Tex-La Indebtedness (as defined in the DIP Credit Agreement) (the "Permitted Prior Liens"), or to any valid, perfected, and non-avoidable interests in such property arising out of liens to which the liens of any of the Prepetition Secured Creditors become subject subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code.  Notwithstanding anything to the contrary in this Final Order or any rights granted or action taken pursuant hereto or pursuant to the agreements and transactions approved hereby, any and all rights and priorities of the First Lien Lenders (as defined in the Final Cash Collateral

Order) holding Deposit L/C Loans (as defined in the First Lien Credit Agreement) (the "Deposit L/C Lenders") in or to the Deposit L/C Loan Collateral Account (as defined in the First Lien Credit Agreement) or any cash therein or proceeds thereof (including amounts corresponding to undrawn Deposit Letters of Credit, and to drawn Deposit Letters of Credit if and to the extent any such amounts are returned to the TCEH Debtors), whether held by the TCEH Debtors or in which the TCEH Debtors otherwise have an interest as of the Petition Date or thereafter (the "Deposit L/C Loan Collateral"), shall be preserved, including, without limitation, any and all priorities among the First Lien Lenders or as between the Deposit L/C Lenders and the other First Lien Lenders, and any and all rights, claims, and liens granted or provided by or through this Final Order to the First Lien Lenders, to the extent applicable to any Deposit L/C Loan Collateral, shall have the same priorities, if any, among the First Lien Lenders, and as between the Deposit L/C Lenders and the other First Lien Lenders, as existed in the Deposit L/C Loan Collateral as of the Petition Date.  For the avoidance of doubt, the preceding sentence delineates the rights and priorities among the First Lien Lenders and as between the Deposit L/C Lenders and the other First Lien Lenders only, and in no way affects the DIP Agent, the DIP Lenders, or the DIP L/C Issuers or their rights and priorities with respect to the First Lien Lenders, the Deposit L/C Lenders, or the Deposit L/C Loan Collateral.

(c)    Liens Junior to Certain Other Liens.  Pursuant to section 364(c)(3) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected security interest in and lien upon all prepetition and postpetition property of the TCEH Debtors (other than the property described in clause (a) or (b) of this paragraph 7, as to which the liens and security interests in favor of the DIP Agent will be as described in such clauses), whether existing on the Petition Date or thereafter acquired, that is subject to valid, perfected, and non-avoidable liens in

existence immediately prior to the Petition Date, or to any valid and non-avoidable liens in existence immediately prior to the Petition Date that are perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code (in each case, other than the Adequate Protection Liens), which security interests and liens in favor of the DIP Agent are junior to such valid, perfected, and non-avoidable liens.

(d)    Liens Senior to Certain Other Liens.  The DIP Liens shall not be subject or subordinate to (i) any lien or security interest that is avoided and preserved for the benefit of the TCEH Debtors and their estates under section 551 of the Bankruptcy Code or (ii) any liens arising after the Petition Date, including, without limitation, any liens or security interests granted in favor of any federal, state, municipal, or other domestic or foreign governmental unit (including any regulatory body), commission, board, or court for any liability of the TCEH Debtors.

Notwithstanding anything to the contrary in the DIP Documents or this Final Order, for the purposes of this Final Order, in no event shall the Unencumbered Property include, or the DIP Liens granted under this Final Order attach to, Excluded Stock and Stock Equivalents, Excluded Subsidiaries, and any Excluded Property (each, as defined in the DIP Credit Agreement).

8.    DIP Lien Priority.  The DIP Liens are valid, binding, continuing, automatically perfected, non-avoidable, senior in priority, and superior to any security, mortgage, collateral interest, lien, or claim to any of the DIP Collateral, except that the DIP Liens shall be junior only to Permitted Prior Liens, the Carve Out, and the RCT Reclamation Support Carve Out.  Pursuant to section 364(d) of the Bankruptcy Code, the DIP Liens shall be senior to the Prepetition First Priority Liens the Prepetition Second Priority Liens of the Prepetition Secured Creditors in

the Prepetition Collateral and the Adequate Protection Liens.  For purposes of this Final Order, it shall be an Event of Default if, other than as set forth herein, the DIP Liens shall be made subject to, or pari passu with, any lien or security interest heretofore or hereinafter granted in the Cases or any Successor Cases, upon the conversion of any of the Cases to a case under chapter 7 of the Bankruptcy Code (or in any other Successor Case), and/or upon the dismissal of any of the Cases or Successor Cases.   No lien or interest avoided and preserved for the benefit of the estate pursuant to section 551 of the Bankruptcy Code shall be pari passu with or senior to the DIP Liens.

9.      DIP Superpriority Claims.

(a)      Upon entry of the Interim Order, the DIP Agent, the DIP Lenders, and the DIP L/C Issuers were granted (and such grant is hereby ratified, confirmed, and approved on a final basis), pursuant to section 364(c)(1) of the Bankruptcy Code, allowed superpriority administrative expense claims in each of the Cases and any Successor Cases (collectively, the "DIP Superpriority Claims") for all DIP Obligations:  (i) except as set forth herein, with priority over any and all administrative expense claims, diminution claims, unsecured claims, and all other claims against the TCEH Debtors or their estates in any of the Cases and any Successor Cases, existing on the Petition Date or thereafter arising, of any kind or nature whatsoever, including, without limitation, administrative expenses of the kinds specified in, or ordered pursuant to, sections 105, 326, 328, 330, 331, 365, 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 546(d), 726, 1113, and 1114 of the Bankruptcy Code, and any other provision of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy, or attachment, which allowed claims shall be payable from, and have recourse to, all prepetition and postpetition property of the TCEH Debtors and all proceeds

thereof; and (ii) which shall at all times be senior to the rights of the TCEH Debtors and their estates, and any successor trustee or other estate representative to the extent permitted by law. Notwithstanding the foregoing, the DIP Superpriority Claims shall be subject only to the payment of the Carve Out and the RCT Reclamation Support Carve Out, to the extent specifically provided for herein.

10.    <u>No Obligation to Extend Credit</u>.  The DIP Agent, the DIP Lenders, and the DIP L/C Issuers shall have no obligation to make any loan or advance, or to issue any Letter of Credit, under the DIP Documents, unless all of the conditions precedent to the making of such extension of credit or the issuance of such Letter of Credit under the DIP Documents and this Final Order have been satisfied in full or waived in accordance with the terms of the DIP Documents.

**<u>Provisions Common to DIP Financing</u>**

11.    <u>Amendments to the DIP Documents</u>.  The TCEH Debtors are hereby authorized to implement, in accordance with the terms of the DIP Documents, (a) any nonmaterial modifications (including, without limitation, any change to the number or composition of the DIP Lenders or the DIP L/C Issuers) of the DIP Documents without further order of the Court, and (b) any other modifications to the DIP Documents, <u>provided</u>, <u>however</u>, that notice of any material modification or amendment to the DIP Documents shall be provided to counsel for the Creditors' Committee and the U.S. Trustee, each of whom shall have five (5) days from the date of such notice within which to object, in writing, to such modification or amendment.  If the Creditors' Committee or the U.S. Trustee timely objects to any material modification or amendment to the DIP Documents, such modification or amendment shall only be permitted pursuant to an order of the Court.  The foregoing shall be without prejudice to the TCEH Debtors' right to seek approval from the Court of a material modification on an expedited basis.

12.    <u>Budget and Annual Forecast Reporting</u>.  The Borrower will provide the DIP Agent with a statement of cash sources and uses of all free cash flow for the next full three (3)-calendar months of the TCEH Debtors (on a consolidated basis) following the date of entry of the Interim Order, broken down by month (the "<u>Budget</u>"), in the form of the Initial Budget (as defined in the DIP Credit Agreement) attached to the DIP Credit Agreement as <u>Exhibit M</u>, including the anticipated uses of the DIP Facility for such period, and after such three (3)-calendar month period, at the end of each fiscal quarter (or, at the election of the Borrower, at the end of each calendar month or such other earlier period as may be agreed), an updated Budget for the subsequent three (3)-calendar month period.  The Borrower will also provide, on a monthly basis, a variance report for each calendar month (delivered no later than the end of the subsequent calendar month), (a) showing a statement of actual cash sources and uses of all free cash flow for the immediately preceding calendar month, noting therein all material variances from values set forth for such historical periods in the most recently delivered Budget, including explanations for all material variances and (b) certified as to its reasonableness when made by an Authorized Officer (as defined in the DIP Credit Agreement) of the Borrower.  Beginning on the date 60 days after the entry of the Interim Order (and again no later than December 1, 2014 for the business plan and operating budget covering 2015, and no later than December 1, 2015 for the business plan and operating budget covering 2016), the Borrower will provide the DIP Agent with TCEH's approved annual business plan and projected operating budget through the DIP Facility's stated maturity date (the "<u>Annual Operating Forecast</u>"), (x) which shall be broken down by month, including, without limitation, income statements, balance sheets, cash flow statements, projected capital expenditures, asset sales, and a line item for total available liquidity for the period of such Annual Operating Forecast and (y) which shall set forth the anticipated

uses of the DIP Facility for such period, certified as to its reasonableness when made by an Authorized Officer of the Borrower.  Both the Budget and the Annual Operating Forecast shall provide, among other things, for the payment of the fees and expenses relating to the DIP Facility, ordinary course administrative expenses, bankruptcy-related expenses and working capital, expected issuances and renewals of Letters of Credit, and other general corporate needs; provided, however, that the Allowed Professional Fees (as defined herein) will be due and payable, and will be paid by the TCEH Debtors, whether or not consistent with the items or amounts set forth in the Initial Budget, the Budget, or the Annual Operating Forecast; and provided, further, that under no circumstance will the Initial Budget, the Budget, or the Annual Operating Forecast be construed as a cap or limitation on the amount of the Allowed Professional Fees due and payable by the TCEH Debtors.

13.    Modification of the Automatic Stay.  The automatic stay imposed under section 362(a) of the Bankruptcy Code is hereby modified as necessary to effectuate all of the terms and provisions of this Final Order, including, without limitation, to (a) permit the TCEH Debtors to grant the DIP Liens and the DIP Superpriority Claims, (b) permit the TCEH Debtors to perform such acts as the DIP Agent, the DIP Lenders, and the DIP L/C Issuers each may request in its sole discretion to assure the perfection and priority of the liens granted herein, (c) permit the TCEH Debtors to incur all liabilities and obligations to the DIP Agent, the DIP Lenders, and the DIP L/C Issuers under the DIP Documents, the DIP Facility, and this Final Order, and (d) authorize the TCEH Debtors to make payments, and the DIP Agent, the DIP Lenders, and the DIP L/C Issuers to retain and apply payments made, in accordance with the terms of this Final Order.

14.     <u>Perfection of DIP Liens</u>.  This Final Order shall be sufficient and conclusive evidence of the granting, attachment, validity, perfection, and priority of all liens granted herein, including the DIP Liens, without the necessity of filing or recording any financing statement, patent filing, trademark filing, copyright filing, fixture filing, mortgage, notice of lien, or other instrument or document, which may otherwise be required under the law or regulation of any jurisdiction, or the taking possession of, or control over, assets, or the taking of any other action (including, for the avoidance of doubt, entering into any deposit account control agreement, securities account control agreement, or other similar agreement) to grant, attach, validate, or perfect (in accordance with applicable non-bankruptcy law) the DIP Liens, or to entitle the DIP Agent, the DIP Lenders, the DIP L/C Issuers, the Secured Hedge Banks, the Secured Cash Management Banks, and/or secured parties pursuant to the DIP Documents to the priorities granted herein.  Notwithstanding the foregoing, the DIP Agent is authorized, but not required, to file, as it in its sole discretion deems necessary, such financing statements, patent filings, trademark filings, copyright filings, mortgages, notices of liens, and other similar documents to perfect in accordance with applicable non-bankruptcy law or to otherwise evidence the DIP Liens, and all such financing statements, patent filings, trademark filings, copyright filings, mortgages, notices of lien, and other documents shall be deemed to have been filed or recorded as of the Petition Date; <u>provided</u>, <u>however</u>, that no such filing or recordation shall be necessary or required in order to create or perfect the DIP Liens.  The TCEH Debtors are authorized and directed to execute and deliver promptly upon demand to the DIP Agent all such financing statements, mortgages, notices, and other documents and information as the DIP Agent may reasonably request.  The DIP Agent, in its discretion, may file a photocopy of this Final Order as a financing statement with any filing or recording office or with any registry of deeds or similar

office, in addition to, or in lieu of, such financing statements, notices of lien, or similar instrument.  In furtherance of the foregoing and without further approval of the Court, each Debtor is (a) authorized to do and perform all acts to make, execute, and deliver all instruments and documents and provide all information and (b) authorized and directed to pay all fees that may be reasonably required or necessary for the TCEH Debtors' performance hereunder.

15.    <u>Proceeds of Subsequent Financing</u>.  If the TCEH Debtors, any trustee, any examiner with enlarged powers, or any responsible officer subsequently appointed in the Cases or any Successor Cases, shall obtain credit or incur debt pursuant to section 364(b), 364(c), or 364(d) of the Bankruptcy Code or in violation of the DIP Documents at any time prior to such time as the DIP Obligations (excluding the Secured Hedge Obligations, the Secured Cash Management Obligations, and Contingent Obligations) have been indefeasibly paid in full, in cash, all Commitments have been terminated, and all Letters of Credit have been cancelled (or all such Letters of Credit have been fully cash collateralized or otherwise back-stopped, in each case to the satisfaction of the applicable DIP L/C Issuers), including subsequent to the confirmation of any plan with respect to any or all of the TCEH Debtors and the TCEH Debtors' estates, and such facilities are secured by any DIP Collateral, then cash proceeds derived from such credit or debt shall be used to indefeasibly repay in full, in cash, the DIP Obligations.

16.    <u>Maintenance of DIP Collateral</u>.  Until such time as all DIP Obligations (excluding the Secured Hedge Obligations, the Secured Cash Management Obligations, and Contingent Obligations) have been indefeasibly paid in full, in cash, all Commitments have been terminated, and all Letters of Credit have been cancelled (or all such Letters of Credit shall have been fully cash collateralized or otherwise back-stopped, in each case to the satisfaction of the applicable DIP L/C Issuers), the TCEH Debtors shall (a) maintain and insure the DIP Collateral in amounts,

for the risks, and by the entities as required under the DIP Documents and (b) maintain the cash management system in effect as of the Petition Date consistent with the Cash Management Order (as defined in the DIP Credit Agreement), as modified by any order that may be entered by the Court, or as otherwise required by the DIP Documents.

17.    <u>Disposition of DIP Collateral; Rights of DIP Agent, DIP Lenders, and DIP L/C Issuers</u>.  The TCEH Debtors shall not sell, transfer, lease, encumber, or otherwise dispose of any portion of the DIP Collateral other than as permitted in the DIP Documents (and no consent shall be implied from any action, inaction, or acquiescence by the DIP Agent, the DIP Lenders, or the DIP L/C Issuers, or an order of the Court); provided that the TCEH Debtors may release liens on the DIP Collateral solely to the extent permitted by the DIP Documents.

18.    <u>DIP Termination Date</u>.  On the DIP Termination Date, (a) the DIP Obligations shall be immediately due and payable, to the extent provided for in the DIP Credit Agreement, and all Commitments shall terminate and (b) unless the DIP Obligations (excluding the Secured Hedge Obligations, the Secured Cash Management Obligations, and Contingent Obligations) have been indefeasibly paid in full, in cash, all Commitments have been terminated, and all Letters of Credit have been cancelled (or all such Letters of Credit have been fully cash collateralized or otherwise back-stopped, in each case to the satisfaction of the applicable DIP L/C Issuers), all authority to use the DIP Collateral, including Cash Collateral, shall cease.  For purposes of this Final Order, the "<u>DIP Termination Date</u>" shall mean the Maturity Date as defined in the DIP Credit Agreement.

19.    <u>Events of Default</u>.  An "Event of Default" under the DIP Documents shall constitute an Event of Default under this Final Order, unless waived in writing in accordance with Section 13.1 of the DIP Credit Agreement.  Notwithstanding anything to the contrary

contained herein or in the DIP Documents, any Event of Default under this Final Order or the DIP Documents, other than any Event of Default which cannot be waived without the written consent of each DIP Lender directly and adversely affected thereby, shall be deemed not to be "continuing" if the events, act, or condition that gave rise to such Event of Default have been remedied or cured (including by payment, notice, taking of any action, or omitting to take any action) or have ceased to exist and the Borrower is in compliance with the DIP Documents.

20.    <u>Rights and Remedies Upon Event of Default</u>.  Upon the occurrence and during the continuance of an Event of Default and following the giving of five calendar days' notice to the TCEH Debtors (the "<u>Remedies Notice Period</u>"), the DIP Agent, on behalf of the DIP Lenders and the DIP L/C Issuers, may exercise all rights and remedies provided for in the DIP Documents and may declare (a) the termination, reduction, or restriction of any further Commitment to the extent any such Commitment remains, (b) all DIP Obligations under the DIP Documents to be immediately due and payable, without presentment, demand, protest, or other notice of any kind, all of which are expressly waived by the TCEH Debtors, and (c) the termination of the DIP Documents as to any future liability or obligation of the DIP Agent, the DIP Lenders, and the DIP L/C Issuers, but without affecting any of the DIP Liens or the DIP Obligations.  During the Remedies Notice Period, the TCEH Debtors may continue to use the DIP Collateral, including Cash Collateral, in the ordinary course of business, consistent with past practices and the most recently delivered Budget, but may not enter into any transactions or arrangements (including, without limitation, the incurrence of indebtedness or liens, investments, restricted payments, asset sales, or transactions with non-Debtor affiliates) that are not in the ordinary course of business; <u>provided</u> that nothing in this paragraph 20 or in paragraph 27 shall limit the ability of the TCEH Debtors to use DIP Collateral, including Cash Collateral, to seek

use of Cash Collateral on a non-consensual basis and/or to challenge whether an Event of Default has occurred and/or is continuing.  Unless the Court orders otherwise during the Remedies Notice Period, at the end of the Remedies Notice Period, the TCEH Debtors shall no longer have the right to use or seek to use the DIP Collateral, including Cash Collateral, the automatic stay pursuant to section 362 of the Bankruptcy Code, as to all of the DIP Agent, the DIP Lenders, and the DIP L/C Issuers, shall be automatically terminated without further notice to, or order of, the Court, and the DIP Agent, on behalf of itself, the DIP Lenders, and the DIP L/C Issuers, shall be permitted to exercise all rights against the DIP Collateral in accordance with the DIP Documents and this Final Order, and shall be permitted to satisfy the DIP Obligations, without further order or application or motion to the Court and without restriction or restraint by any stay under section 362 or 105 of the Bankruptcy Code.  Notwithstanding anything herein to the contrary, the automatic stay pursuant to section 362 of the Bankruptcy Code shall be automatically terminated for the purposes of giving any notice contemplated hereunder.  During the Remedies Notice Period, any party in interest shall be entitled to seek an emergency hearing with the Court solely for the purpose of contesting whether an Event of Default has occurred and/or is continuing, and the TCEH Debtors waive their right to, and shall not be entitled to seek relief, including, without limitation, under section 105 of the Bankruptcy Code, to the extent that such relief would in any way impair or restrict the rights and remedies of the DIP Agent, on behalf of the DIP Lenders and the DIP L/C Issuers, set forth in this Final Order or the DIP Documents.

21.    Good Faith Under Section 364(e) of the Bankruptcy Code; No Modification or Stay of this Final Order.  Based on the findings set forth in this Final Order and the record made during the Interim Hearing and the Final Hearing, and in accordance with section 364(e) of the

Bankruptcy Code, in the event any or all of the provisions of this Final Order are hereafter modified, amended, or vacated by a subsequent order of the Court or any other court, each of the DIP Agent, the DIP Lenders, the DIP L/C Issuers, and the Joint Lead Arrangers are entitled to the protections provided in section 364(e) of the Bankruptcy Code.  To the fullest extent permitted under section 364(e) of the Bankruptcy Code, any liens or claims granted to the DIP Agent, the DIP Lenders, the DIP L/C Issuers, and the Joint Lead Arrangers hereunder arising prior to the effective date of any such modification, amendment, or vacatur of this Final Order shall be governed in all respects by the original provisions of this Final Order, including entitlement to all rights, remedies, privileges, and benefits granted herein.

22.    <u>DIP and Other Expenses</u>.  All fees paid and payable, and costs and/or expenses reimbursed or reimbursable, as set forth in the DIP Documents, by the TCEH Debtors to the DIP Agent, the DIP Lenders, the DIP L/C Issuers, and the Joint Lead Arrangers are hereby approved. The TCEH Debtors are hereby authorized and directed to pay all such fees, costs, and expenses in accordance with the terms of the DIP Documents, without the necessity of any further application with the Court for approval or payment of such fees, costs, or expenses.  The TCEH Debtors are authorized and directed to reimburse within ten (10) calendar days of written demand (together with reasonably detailed supporting documentation) the DIP Agent, the DIP Lenders, the DIP L/C Issuers, and the Joint Lead Arrangers for their reasonable and documented out-of-pocket expenses incurred in connection with the negotiation, documentation, syndication, and administration of the DIP Facility, any amendments or waivers with respect thereto, any Event of Default in respect of the DIP Facility, and any exercise of remedies in respect thereof (including reasonable documented out-of-pocket prepetition and postpetition fees, charges, and disbursements of legal counsel, financial advisors, and third-party appraisers and consultants

advising the DIP Agent incurred in connection with the DIP Agent's participation in the Cases, limited in the case of legal counsel to one primary counsel (and (a) local counsel in applicable foreign and local jurisdictions, but limited to one local counsel in each such jurisdiction, (b) regulatory counsel, and (c) solely in the case of a conflict of interest, one additional counsel in each relevant jurisdiction to the affected indemnified persons similarly situated)).  Payment of all such fees and expenses shall not be subject to allowance by the Court; provided, however, that the TCEH Debtors shall promptly provide copies of invoices received on account of fees and expenses of the professionals retained as provided for in the DIP Credit Agreement and the DIP Documents to counsel to the Creditors' Committee and the U.S. Trustee, and the Court shall have exclusive jurisdiction over any objections raised to the invoiced amount of the fees and expenses proposed to be paid, which objections may only be raised within ten (10) calendar days after receipt thereof.  In the event that within ten (10) calendar days from receipt of such invoices the TCEH Debtors, the U.S. Trustee, or counsel to the Creditors' Committee raises an objection to a particular invoice, and the parties are unable to resolve any dispute regarding the fees and expenses included in such invoice, the Court shall hear and determine such dispute; provided, that payment of invoices shall not be delayed based on any such objections and the relevant professional shall only be required to disgorge amounts objected to upon being "so ordered" pursuant to a final order of the Court.  Notwithstanding anything to the contrary herein, the fees, costs, and expenses of the DIP Agent, the DIP Lenders, the DIP L/C Issuers, and the Joint Lead Arrangers under the DIP Documents, whether incurred prior to or after the Petition Date, shall be deemed fully earned, indefeasibly paid, irrevocable, and non-avoidable pursuant to, and in accordance with, the terms of the DIP Documents and, irrespective of any subsequent order approving or denying the Financing or any other financing pursuant to section 364 of the

Bankruptcy Code, fully entitled to all protections of section 364(e) of the Bankruptcy Code.  All unpaid fees, costs, and expenses payable under the DIP Documents to the DIP Agent, the DIP Lenders, the DIP L/C Issuers, and the Joint Lead Arrangers shall be included and constitute part of the DIP Obligations and be secured by the DIP Liens.

23.    <u>Proofs of Claim</u>.  The DIP Agent, the DIP Lenders, and the DIP L/C Issuers will not be required to file proofs of claim in any of the Cases or Successor Cases for any claim allowed herein.  Any order entered by the Court in relation to the establishment of a bar date in any of the Cases or Successor Cases shall not apply to the DIP Agent, the DIP Lenders, or the DIP L/C Issuers.

24.    <u>Rights of Access and Information</u>.  Without limiting the rights of access and information afforded the DIP Agent, the DIP Lenders, and the DIP L/C Issuers under the DIP Documents, the TCEH Debtors shall be, and hereby are, required to afford representatives, agents, and/or employees of the DIP Agent, the DIP Lenders, and the DIP L/C Issuers reasonable access to the TCEH Debtors' premises and its books and records in accordance with the DIP Documents and shall reasonably cooperate, consult with, and provide to such persons all such information as may be reasonably requested.  In addition, the TCEH Debtors shall authorize their independent certified public accountants, financial advisors, investment bankers, and consultants to cooperate, consult with, and provide to the DIP Agent all such information as may be reasonably requested from the TCEH Debtors with respect to the business, results of operations, and financial condition of the TCEH Debtors.

25.    <u>Carve Out</u>.

(a)    <u>Carve Out</u>.  As used in this Final Order, the "<u>Carve Out</u>" means the sum of (i) all fees required to be paid to the Clerk of the Court and to the Office of the United States

Trustee under section 1930(a) of title 28 of the United States Code plus interest at the statutory rate (without regard to the notice set forth in (iii) below); (ii) all reasonable fees and expenses up to $50,000 incurred by a trustee under section 726(b) of the Bankruptcy Code (without regard to the notice set forth in (iii) below); (iii) to the extent allowed at any time, whether by interim order, procedural order, or otherwise, all unpaid fees and expenses (the "Allowed Professional Fees") incurred by persons or firms retained by the TCEH Debtors pursuant to section 327, 328, or 363 of the Bankruptcy Code (the "Debtor Professionals") and any Creditors' Committee appointed in the Cases pursuant to section 1103 of the Bankruptcy Code (the "Committee Professionals" and, together with the Debtor Professionals, the "Professional Persons") at any time before or on the first business day following delivery by the DIP Agent of a Carve Out Trigger Notice (as defined below), whether allowed by the Court prior to or after delivery of a Carve Out Trigger Notice; and (iv) Allowed Professional Fees of Professional Persons in an aggregate amount not to exceed $50,000,000 incurred after the first business day following delivery by the DIP Agent of the Carve Out Trigger Notice, to the extent allowed at any time, whether by interim order, procedural order, or otherwise (the amounts set forth in this clause (iv) being the "Post-Carve Out Trigger Notice Cap").  For purposes of the foregoing, "Carve Out Trigger Notice" shall mean a written notice delivered by email (or other electronic means) by the DIP Agent to the TCEH Debtors, their lead restructuring counsel, the U.S. Trustee, and lead counsel to the Creditors' Committee, which notice may be delivered following the occurrence and during the continuation of an Event of Default and acceleration of the DIP Obligations under the DIP Facility, stating that the Post-Carve Out Trigger Notice Cap has been invoked.

(b)    Carve Out Reserves.  On the day on which a Carve Out Trigger Notice is given by the DIP Agent to the TCEH Debtors (the "Termination Declaration Date"), the Carve

Out Trigger Notice shall (i) be deemed a draw request and notice of borrowing by the TCEH Debtors for Revolving Credit Loans under the Revolving Credit Commitment (each, as defined in the DIP Credit Agreement) (on a pro rata basis based on the then outstanding Revolving Credit Commitments), in an amount equal to the then unpaid amounts of the Allowed Professional Fees (any such amounts actually advanced shall constitute Revolving Credit Loans) and (ii) also constitute a demand to the TCEH Debtors to utilize all cash on hand as of such date and any available cash thereafter held by any Debtor to fund a reserve in an amount equal to the then unpaid amounts of the Allowed Professional Fees.  The TCEH Debtors shall deposit and hold such amounts in a segregated account at the DIP Agent in trust to pay such then unpaid Allowed Professional Fees (the "Pre-Carve Out Trigger Notice Reserve") prior to any and all other claims.  On the Termination Declaration Date, the Carve Out Trigger Notice shall also be deemed a request by the TCEH Debtors for Revolving Credit Loans under the Revolving Credit Commitment (on a pro rata basis based on the then outstanding Revolving Credit Commitments), in an amount equal to the Post-Carve Out Trigger Notice Cap (any such amounts actually advanced shall constitute Revolving Credit Loans).  The TCEH Debtors shall deposit and hold such amounts in a segregated account at the DIP Agent in trust to pay such Allowed Professional Fees benefiting from the Post-Carve Out Trigger Notice Cap (the "Post-Carve Out Trigger Notice Reserve" and, together with the Pre-Carve Out Trigger Notice Reserve, the "Carve Out Reserves") prior to any and all other claims.  On the first business day after the DIP Agent gives such notice to such Revolver Credit Lenders (as defined in the DIP Credit Agreement), notwithstanding the existence of a Default (as defined in the DIP Credit Agreement) or Event of Default, the failure of the TCEH Debtors to satisfy any or all of the conditions precedent for Revolving Credit Loans under the Revolving Credit Facility or the occurrence of the Maturity

Date, each Revolver Credit Lender with an outstanding Commitment (on a pro rata basis based on the then outstanding Commitments) shall make available to the DIP Agent such Revolver Credit Lender's pro rata share with respect to such borrowing in accordance with the Revolving Credit Facility.  All funds in the Pre-Carve Out Trigger Notice Reserve shall be used first to pay the obligations set forth in clauses (ii) through (iii) of the definition of Carve Out set forth above, but not, for the avoidance of doubt, the Post-Carve Out Trigger Notice Cap, until paid in full, and then, to the extent the Pre-Carve Out Trigger Notice Reserve has not been reduced to zero, to pay the DIP Agent for the benefit of the DIP Lenders and the DIP L/C Issuers, unless the DIP Obligations (excluding the Secured Hedge Obligations, the Secured Cash Management Obligations, and Contingent Obligations) have been indefeasibly paid in full, in cash, all Commitments have been terminated, and all Letters of Credit have been cancelled (or all such Letters of Credit have been fully cash collateralized or otherwise back-stopped, in each case to the satisfaction of the applicable DIP L/C Issuers), in which case any such excess shall be paid to the Prepetition First Lien Creditors in accordance with their rights and priorities as of the Petition Date.  All funds in the Post-Carve Out Trigger Notice Reserve shall be used first to pay the obligations set forth in clause (iv) of the definition of Carve Out set forth above, and then, to the extent the Post-Carve Out Trigger Notice Reserve has not been reduced to zero, to pay the DIP Agent for the benefit of the DIP Lenders and the DIP L/C Issuers, unless the DIP Obligations (excluding the Secured Hedge Obligations, the Secured Cash Management Obligations, and Contingent Obligations)  have been indefeasibly paid in full, in cash, all Commitments have been terminated, and all Letters of Credit have been cancelled (or all such Letters of Credit have been fully cash collateralized or otherwise back-stopped, in each case to the satisfaction of the applicable DIP L/C Issuers), in which case any such excess shall be paid to the Prepetition First

Lien Creditors in accordance with their rights and priorities as of the Petition Date. Notwithstanding anything to the contrary in the DIP Documents, the Interim Order, or this Final Order, following delivery of a Carve Out Trigger Notice, the DIP Agent and the Prepetition First Lien Agents shall not sweep or foreclose on cash (including cash received as a result of the sale or other disposition of any assets) of the TCEH Debtors until the Carve Out Reserves have been fully funded, but shall have a security interest in any residual interest in the Carve Out Reserves, with any excess paid to the DIP Agent for application in accordance with the DIP Documents. Further, notwithstanding anything to the contrary in this Final Order, (i) disbursements by the TCEH Debtors from the Carve Out Reserves shall not constitute Loans (as defined in the DIP Credit Agreement) or increase or reduce the DIP Obligations, (ii) the failure of the Carve Out Reserves to satisfy in full the Allowed Professional Fees shall not affect the priority of the Carve Out, and (iii) in no way shall the Initial Budget, Budget, Annual Operating Forecast, Carve Out, Post-Carve Out Trigger Notice Cap, Carve Out Reserves, or any of the foregoing be construed as a cap or limitation on the amount of the Allowed Professional Fees due and payable by the TCEH Debtors. For the avoidance of doubt and notwithstanding anything to the contrary herein or in the Final Cash Collateral Order, the DIP Facility, or in any Prepetition Secured Facilities (as defined in the Final Cash Collateral Order), the Carve Out shall be senior to all liens and claims securing the DIP Facility, the Adequate Protection Liens, and the 507(b) Claim (as defined in the Final Cash Collateral Order), and any and all other forms of adequate protection, liens, or claims securing the DIP Obligations or the Prepetition Secured Obligations.

(c)    No Direct Obligation To Pay Allowed Professional Fees. The DIP Agent, DIP Lenders, and the DIP L/C Issuers shall not be responsible for the payment or reimbursement of any fees or disbursements of any Professional Person incurred in connection with the Cases or

any Successor Cases under any chapter of the Bankruptcy Code.  Nothing in this Final Order or otherwise shall be construed to obligate the DIP Agent, the DIP Lenders, or the DIP L/C Issuers, in any way, to pay compensation to, or to reimburse expenses of, any Professional Person or to guarantee that the TCEH Debtors have sufficient funds to pay such compensation or reimbursement.

(d)    _Payment of Allowed Professional Fees Prior to the Termination Declaration Date_.    Any payment or reimbursement made prior to the occurrence of the Termination Declaration Date in respect of any Allowed Professional Fees shall not reduce the Carve Out.

(e)    _Payment of Carve Out On or After the Termination Declaration Date_. Any payment or reimbursement made on or after the occurrence of the Termination Declaration Date in respect of any Allowed Professional Fees shall permanently reduce the Carve Out on a dollar-for-dollar basis.  Any funding of the Carve Out shall be added to, and made a part of, the DIP Obligations secured by the DIP Collateral and shall be otherwise entitled to the protections granted under this Final Order, the DIP Documents, the Bankruptcy Code, and applicable law.

26.    _RCT Reclamation Support Carve Out_.    All amounts up to $1,100,000,000 required to be paid by the TCEH Debtors to the RCT pursuant to amounts due and owing in respect of reclamation obligations incurred by the RCT and for which any of the TCEH Debtors may be liable under Applicable Law (as defined in the DIP Credit Agreement) will constitute the "RCT Reclamation Support Carve Out," and such RCT Reclamation Support Carve Out will be senior to the DIP Obligations and to any other obligations or liabilities of the TCEH Debtors (other than, and subject in any event to, the Carve Out), unless the Borrower issues and delivers to the DIP Agent the RCT Carve Out Support Rejection Notice (as defined in the DIP Credit

Agreement). Notwithstanding any provision of the DIP Documents or this Final Order to the contrary, for the sake of clarity, with respect to the RCT Reclamation Support Carve Out in favor of the RCT for financial assurance for Debtor Luminant Mining Company LLC's reclamation obligations, the RCT shall be entitled to up to the first $1,100,000,000 in proceeds of DIP Collateral to satisfy valid claims against the RCT Reclamation Support Carve Out, in the event such DIP Collateral is liquidated, before payment of claims of all other secured or unsecured creditors or other parties in interest, other than the amounts subject to the professional fee carve out (which amounts are defined as the "Carve Out" in paragraph 25 of this Final Order).

27. <u>Limitations on the DIP Facility, the DIP Collateral, and the Carve Out</u>. Notwithstanding anything herein to the contrary, except paragraph 20 with respect to the ability of the TCEH Debtors to use DIP Collateral, including Cash Collateral, and solely during the Remedies Notice Period, to seek use of Cash Collateral on a non-consensual basis and/or to challenge whether an Event of Default has occurred and/or is continuing, the TCEH Debtors shall not assert or prosecute, and no portion of the proceeds of the DIP Facility, the DIP Collateral, including Cash Collateral, or the Carve Out, and no disbursements set forth in the Budget, may be used for the payment of professional fees, disbursements, costs, or expenses incurred by any person in connection with (a) incurring Indebtedness (as defined in the DIP Credit Agreement) except to the extent permitted under the DIP Credit Agreement; (b) preventing, hindering, or delaying any of the DIP Agent's, the DIP Lenders', the DIP L/C Issuers', the Prepetition First Lien Agents', or the Prepetition First Lien Creditors' (in the case of each of the foregoing, in their respective capacities as such) enforcement or realization upon, or exercise of rights in respect of, any of the DIP Collateral once an Event of Default has occurred and after the Remedies Notice Period; (c) objecting, challenging, or contesting in any manner, or

raising any defenses to, the validity, extent, amount, perfection, priority, or enforceability of any of the DIP Obligations, the DIP Liens, the Prepetition First Lien Obligations, the Prepetition First Priority Liens, or the Prepetition Collateral (including Cash Collateral), or any other rights or interest of any of the DIP Agent, the DIP Lenders, the DIP L/C Issuers, the Secured Hedge Banks, the Secured Cash Management Banks, the Prepetition First Lien Agents, or the Prepetition First Lien Creditors (in the case of each of the foregoing, in their respective capacities as such); (d) asserting, commencing, or prosecuting any claims or causes of action, including, without limitation, any actions under chapter 5 of the Bankruptcy Code, against any of the DIP Agent, the DIP Lenders, the DIP L/C Issuers, the Secured Hedge Banks, the Secured Cash Management Banks, the Prepetition First Lien Agents, the Prepetition First Lien Creditors, or any of their respective affiliates, agents, attorneys, advisors, professionals, officers, directors, or employees (in the case of each of the foregoing, in their respective capacities as such); or (e) asserting, joining, commencing, supporting, investigating, or prosecuting any action for any claim, counter-claim, action, cause of action, proceeding, application, motion, objection, defense, or other contested matter seeking any order, judgment, determination, or similar relief against, or adverse to the material interests of the Released Parties (as defined herein) or the Prepetition First Lien Creditors, arising out of, in connection with, or relating to the DIP Facility, the DIP Documents, the Prepetition First Lien Documents, or the transactions contemplated hereunder or thereunder, including, without limitation, (i) any action arising under the Bankruptcy Code; (ii) any so-called "lender liability" claims and causes of action; (iii) any action with respect to the validity and extent of the DIP Obligations, the DIP Superpriority Claims, or the Prepetition First Lien Obligations or the validity, extent, perfection, and priority of the DIP Liens or the Prepetition First Priority Liens; (iv) any action seeking to invalidate, set aside, avoid, reduce, set off, offset,

recharacterize, subordinate (whether equitable, contractual, or otherwise), recoup against, disallow, impair, raise any defenses, cross-claims, or counterclaims, or raise any other challenges under the Bankruptcy Code or any other applicable domestic or foreign law or regulation against, or with respect to, the DIP Liens, the DIP Superpriority Claims, or the Prepetition First Priority Liens in whole or in part; (v) appeal or otherwise challenge the Interim Order, this Final Order, the DIP Documents, or any of the transactions contemplated herein or therein; and/or (vi) any action that has the effect of preventing, hindering, or delaying (whether directly or indirectly) the DIP Agent, the DIP Lenders, and the DIP L/C Issuers in respect of their liens and security interests in the DIP Collateral or any of their rights, powers, or benefits hereunder or in the DIP Documents anywhere in the world; provided, however, that the Carve Out and such collateral proceeds and loans under the DIP Documents may be used for allowed fees and expenses, in an amount not to exceed $175,000 in the aggregate (the "Investigation Fund"), incurred solely by the Creditors' Committee in investigating the validity, enforceability, perfection, priority, or extent of the Prepetition First Priority Liens and Prepetition Second Priority Liens during the Challenge Period (as defined in the Final Cash Collateral Order); provided further, however, that the Creditors' Committee may not use the Investigation Fund to initiate, assert, join, commence, support, or prosecute any actions or discovery with respect thereto.  Any and all claims for fees or expenses incurred by the Creditors' Committee or by any party in interest in violation of any clause of this paragraph 27 (including amounts incurred in excess of the Investigation Fund) shall not be allowed, treated, or payable as an administrative expense claim for purposes of section 1129(a)(9)(A) of the Bankruptcy Code, and the non-payment of such fees and expenses shall not constitute grounds to deny confirmation of any plan of reorganization for any of the TCEH Debtors.  Any party granted standing by the Court other than the Creditors' Committee

must commence any claims against the Prepetition First Lien Agents no later than seventy-five (75) calendar days following entry of the Interim Order, and, with respect to the Creditors' Committee and granted standing by the Court, no later than sixty (60) calendar days after its formation.

28.    <u>Payment of Compensation</u>.  Nothing herein shall be construed as a consent to the allowance of any professional fees or expenses of any Professional Person or shall affect the right of the DIP Agent, the DIP Lenders, or the DIP L/C Issuers to object to the allowance and payment of such fees and expenses.

29.    <u>Release</u>.  The TCEH Debtors, on behalf of themselves and their estates (including any successor trustee or other estate representative in the Cases or Successor Cases) and any party acting by, through, or under the TCEH Debtors or their estates, forever and irrevocably (a) release, discharge, waive, and acquit the current or future DIP Agent, the DIP Lenders, the DIP L/C Issuers, the Joint Lead Arrangers, each of their respective participants and each of their respective affiliates, and each of their respective former, current, or future officers, employees, directors, agents, representatives, owners, members, partners, financial advisors, legal advisors, shareholders, managers, consultants, accountants, attorneys, affiliates, and predecessors in interest (collectively, and in each case in their capacities as such, the "<u>Released Parties</u>"), of and from any and all claims, demands, liabilities, responsibilities, disputes, remedies, causes of action, indebtedness, and obligations, rights, assertions, allegations, actions, suits, controversies, proceedings, losses, damages, injuries, attorneys' fees, costs, expenses, or judgments of every type, whether known, unknown, asserted, unasserted, suspected, unsuspected, accrued, unaccrued, fixed, contingent, pending, or threatened, including, without limitation, all legal and equitable theories of recovery, arising under common law, statute or regulation or by contract, of

every nature and description, arising out of, in connection with, or relating to the DIP Facility, the DIP Documents, or the transactions contemplated hereunder or thereunder, including, without limitation, (i) any so-called "lender liability" or equitable subordination claims or defenses, with respect to or relating to the DIP Obligations, DIP Liens, or DIP Facility, as applicable, (ii) any and all claims and causes of action arising under the Bankruptcy Code, and (iii) any and all claims and causes of action regarding the validity, priority, perfection, or avoidability of the liens or secured claims of the DIP Agent, the DIP Lenders, and the DIP L/C Issuers and (b) waive any and all defenses (including, without limitation, offsets and counterclaims of any nature or kind) as to the validity, perfection, priority, enforceability, and nonavoidability of the DIP Obligations and the DIP Liens.

30.    No Third Party Rights.  Except as explicitly provided for herein, this Final Order does not create any rights for the benefit of any third party, creditor, equity holder, or any direct, indirect, or incidental beneficiary.

31.    Section 506(c) Claims.  No costs or expenses of administration of the Cases or any future proceeding that may result therefrom, which have been or may be incurred in the Cases at any time, shall be charged against the DIP Agent, the DIP Lenders, or the DIP L/C Issuers, or any of their respective claims or the DIP Collateral, pursuant to section 105 or 506(c) of the Bankruptcy Code, or otherwise, without the prior written consent of the DIP Agent, the DIP Lenders, or the DIP L/C Issuers, as applicable, and no such consent shall be implied from any other action, inaction, or acquiescence by the DIP Agent, any DIP Lender, and any DIP L/C Issuer.

32.    No Marshaling/Application of Proceeds.  The DIP Agent, the DIP Lenders, and the DIP L/C Issuers shall not be subject to the equitable doctrine of "marshaling" or any other

similar doctrine with respect to any of the DIP Collateral, and proceeds shall be received and applied pursuant to the terms of the DIP Documents notwithstanding any other agreement or provision to the contrary; provided, however, that nothing herein shall impair the rights of the DIP Agent, DIP Lenders, and the DIP L/C Issuers with respect to the DIP Collateral.

33.    Joint and Several Liability.  Nothing in this Final Order shall be construed to constitute a substantive consolidation of any of the TCEH Debtors' estates, it being understood, however, that the TCEH Debtors shall be jointly and severally liable for the obligations hereunder and in accordance with the terms of the DIP Facility and the DIP Documents.

34.    Discharge Waiver.  The DIP Obligations shall not be discharged by the entry of an order confirming any plan of reorganization, notwithstanding the provisions of section 1141(d) of the Bankruptcy Code, unless the DIP Obligations have been indefeasibly paid in full, in cash, all Commitments have been terminated, and all Letters of Credit have been cancelled (or all such Letters of Credit shall have been fully cash collateralized or otherwise back-stopped, in each case to the satisfaction of the applicable DIP L/C Issuers) on or before the effective date of a confirmed plan of reorganization or liquidation.  It shall be an Event of Default if any of the TCEH Debtors propose or support any plan of reorganization or liquidation, sale of all or substantially all of the TCEH Debtors' assets, or entry of any confirmation order or sale order unless any such plan of reorganization or liquidation, sale, or confirmation order provides that the DIP Obligations (excluding the Secured Hedge Obligations, the Secured Cash Management Obligations, and Contingent Obligations) shall be indefeasibly paid in full, in cash, all Commitments shall be terminated, and all Letters of Credit shall be cancelled (or all such Letters of Credit shall be fully cash collateralized or otherwise back-stopped, in each case to the

satisfaction of the applicable DIP L/C Issuers) on or prior to the earlier to occur of the effective date of any such plan of reorganization or liquidation or sale and the DIP Termination Date.

35.    <u>Rights Preserved</u>.  Notwithstanding anything herein to the contrary, the entry of this Final Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly:  (a) the DIP Agent's, the DIP Lenders', or the DIP L/C Issuers' right to seek any other or supplemental relief in respect of the TCEH Debtors; (b) any of the rights of the DIP Agent, any of the DIP Lenders, or any of the DIP L/C Issuers under the Bankruptcy Code or under non-bankruptcy law, including, without limitation, the right to (i) request modification of the automatic stay of section 362 of the Bankruptcy Code, (ii) request dismissal of any of the Cases or Successor Cases, conversion of any of the Cases to cases under chapter 7, or appointment of a chapter 11 trustee or examiner with expanded powers, or (iii) propose, subject to the provisions of section 1121 of the Bankruptcy Code, a chapter 11 plan or plans; or (c) any other rights, claims, or privileges (whether legal, equitable, or otherwise) of any of the DIP Agent, the DIP Lenders, or the DIP L/C Issuers.

36.    <u>No Waiver by Failure To Seek Relief</u>.  The delay or failure of the DIP Agent, the DIP Lenders, or the DIP L/C Issuers to seek relief or otherwise exercise their rights and remedies under this Final Order, the DIP Documents, or applicable law, as the case may be, shall not constitute a waiver of any of the rights hereunder, thereunder, or otherwise of the DIP Agent, the DIP Lenders, the DIP L/C Issuers, the Creditors' Committee, or any party in interest, unless any such waiver is pursuant to a written instrument executed in accordance with the terms of the applicable DIP Documents.

37.    <u>Binding Effect; Successors and Assigns</u>.  The DIP Documents and the provisions of this Final Order, including all findings herein, shall be binding upon all parties in interest in

the Cases, including, without limitation, the DIP Agent, the DIP Lenders, the DIP L/C Issuers, the Secured Hedge Banks, the Secured Cash Management Banks, any statutory or nonstatutory committees appointed or formed in the Cases (including the Creditors' Committee), and the TCEH Debtors and their respective successors and assigns (including any chapter 7 or chapter 11 trustee hereinafter appointed for the estate of any of the TCEH Debtors) and shall inure to the benefit of the DIP Agent, the DIP Lenders, the DIP L/C Issuers, and the TCEH Debtors and their respective successors and assigns; provided, however, that the DIP Agent, the DIP Lenders, and the DIP L/C Issuers shall have no obligation to extend any financing to any chapter 7 trustee or similar responsible person appointed for the estates of the TCEH Debtors.  In determining to make any loan under the DIP Credit Agreement or in exercising any rights or remedies as and when permitted pursuant to this Final Order or the DIP Documents, the DIP Agent, the DIP Lenders, and the DIP L/C Issuers (a) shall not be deemed to be in control of the operations of any of the TCEH Debtors or to be acting as a "controlling person," "responsible person," or "owner or operator" with respect to the operation or management of any of the TCEH Debtors (as such term, or any similar terms, are used in the Internal Revenue Code, the United States Comprehensive Environmental Response, Compensation and Liability Act (as amended), or any similar Federal or state statute) and (b) shall not owe any fiduciary duty to any of the TCEH Debtors, their creditors, or their estates, and shall not constitute or be deemed to constitute a joint venture or partnership with any of the TCEH Debtors.

38.    No Modification of Final Order.  Unless and until the DIP Obligations (excluding the Secured Hedge Obligations, the Secured Cash Management Obligations, and Contingent Obligations) have been indefeasibly paid in full, in cash, all Commitments have been terminated, and all Letters of Credit have been cancelled (or all such Letters of Credit have been fully cash

collateralized or otherwise back-stopped, in each case to the satisfaction of the applicable DIP L/C Issuers) (such payment being without prejudice to any terms or provisions contained in the DIP Facility which survive such discharge by their terms), an Event of Default shall occur if the TCEH Debtors seek or consent to, directly or indirectly, or if there is entered:  (a) without the prior written consent of the DIP Agent, (i) any modification, stay, vacatur, or amendment to this Final Order, (ii) a priority claim for any administrative expense or unsecured claim against the TCEH Debtors (now existing or hereafter arising of any kind or nature whatsoever, including, without limitation, any administrative expense of the kind specified in section 503(b), 506(c), 507(a), or 507(b) of the Bankruptcy Code) in any of the Cases or Successor Cases, equal or superior to the DIP Superpriority Claims other than the Carve Out and the RCT Reclamation Support Carve Out, or (iii) any lien on any of the DIP Collateral with priority equal or superior to the DIP Liens, except as specifically provided herein or in the DIP Documents; (b) without the prior written consent of the DIP Agent, an order allowing use of the DIP Collateral, including Cash Collateral; (c) an order converting or dismissing any of the Cases; (d) an order appointing a chapter 11 trustee in any of the Cases; or (e) an order appointing an examiner with enlarged powers (having powers beyond those set forth in Bankruptcy Code sections 1106(a)(3) and (4)) in any of the Cases; provided, however, that notwithstanding anything to the contrary herein, the TCEH Debtors may seek to use Cash Collateral on a non-consensual basis pursuant to an order in form and substance acceptable to the Left Lead Arrangers (as defined in the DIP Credit Agreement).  No such consent shall be implied by any other action, inaction, or acquiescence of the DIP Agent.

39.    Survival.  The provisions of this Final Order and any actions taken pursuant hereto shall survive entry of any order which may be entered:  (a) confirming any plan of

reorganization or liquidation in any of the Cases; (b) converting any of the Cases to a case under chapter 7 of the Bankruptcy Code; (c) dismissing any of the Cases or any Successor Cases; or (d) pursuant to which the Court abstains from hearing any of the Cases or Successor Cases.  The terms and provisions of this Final Order, including the claims, liens, security interests, and other protections granted to the DIP Agent, the DIP Lenders, the DIP L/C Issuers, the Secured Hedge Banks, and the Secured Cash Management Banks pursuant to this Final Order and/or the DIP Documents, notwithstanding the entry of any such order, shall continue in the Cases, in any Successor Cases, or following dismissal of the Cases or any Successor Cases, and shall maintain their priority as provided by this Final Order until, in respect of the DIP Facility, all the DIP Obligations (excluding the Secured Hedge Obligations, the Secured Cash Management Obligations, and Contingent Obligations), pursuant to the DIP Documents and this Final Order, have been indefeasibly paid in full, in cash, all Commitments have been terminated, and all Letters of Credit have been cancelled (or all such Letters of Credit have been fully cash collateralized or otherwise back-stopped, in each case to the satisfaction of the applicable DIP L/C Issuers) (such payment being without prejudice to any terms or provisions contained in the DIP Facility which survive such discharge by their terms).

40.    Railcar Lease Representation.  Nothing herein primes or otherwise affects the rights and interests of TXU 2007-1 Railcar Leasing LLC (as the assignee of its affiliate High Ridge Leasing, LLC) under that certain Lease dated as of September 7, 2007, by and among TXU 2007-1 Railcar Leasing LLC (as assignee of its affiliate High Ridge Leasing, LLC) and Debtor Texas Competitive Electric Holdings Company LLC, relating to 996 Aluminum Rapid Discharge IV Coal Cars (the "Railcar Lease").  All rights of parties in interest with respect to the Railcar Lease are preserved.

41.     <u>No Impact on Certain Contracts/Transactions</u>.   No rights of any entity under section 555, 556, 559, 560, or 561 of the Bankruptcy Code shall be affected by the entry of this Final Order as to any contract or transaction of the kind listed in such sections of the Bankruptcy Code.

42.     <u>Final Order Governs</u>.   In the event of any inconsistency between the provisions of this Final Order and any provision contained in the Interim Order, the DIP Documents, the Interim Cash Collateral Order (as defined in the DIP Credit Agreement), or the Final Cash Collateral Order, the provisions of this Final Order shall govern; <u>provided</u>, <u>however</u>, that solely to the extent of any inconsistency between the provisions of this Final Order and the Final Cash Collateral Order with respect to the rights and priorities of the Prepetition First Lien Agents and Prepetition First Lien Creditors in and amongst themselves, the Final Cash Collateral Order shall govern.

43.     *<u>Nunc Pro Tunc</u> Effect of this Final Order*.   This Final Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and shall take effect and be enforceable *nunc pro tunc* to the Petition Date immediately upon the entry hereof.

44.     <u>Retention of Jurisdiction</u>.   The Court has and will retain jurisdiction to enforce this Final Order according to its terms.


Wilmington, Delaware
Dated: _____, 2014


_____
THE HONORABLE CHRISTOPHER S. SONTCHI
UNITED STATES BANKRUPTCY JUDGE