UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| ENERGY FUTURE HOLDINGS CORP., *et al.*, | Case No.: 14-10979 (CSS) |
| Debtors. | (Jointly Administered) |
| | Hearing Date: June 5, 2014 at 9:30 a.m. |
| | **Re: D.I. 71** |

**AURELIUS CAPITAL MANAGEMENT, LP'S LIMITED OBJECTION TO THE MOTION OF TEXAS COMPETITIVE ELECTRIC HOLDINGS COMPANY LLC AND CERTAIN OF ITS DEBTOR AFFILIATES FOR ENTRY OF INTERIM AND FINAL ORDERS (A) AUTHORIZING USE OF CASH COLLATERAL, (B) GRANTING ADEQUATE PROTECTION, (C) MODIFYING THE AUTOMATIC STAY, AND (D) SCHEDULING A FINAL HEARING**

Aurelius Capital Management, LP ("Aurelius"), on behalf of itself and certain of its managed funds, respectfully submits this Limited Objection (the "Limited Objection") to the *Motion of Texas Competitive Electric Holdings Company LLC And Certain Of Its Debtor Affiliates For Entry Of Interim And Final Orders (A) Authorizing Use Of Cash Collateral, (B) Granting Adequate Protection, (C) Modifying The Automatic Stay, And (D) Scheduling A Final Hearing* [D.I. No. 71] (the "Cash Collateral Motion"), and states as follows:

**Preliminary Statement**

1.      Aurelius is both a holder of First Lien Notes and a First Lien Lender.[1]  In both capacities, Aurelius is a "Prepetition First Lien Creditor" as that term is used in the Cash Collateral Motion and a "Secured Party" as that term is used in the First Lien Intercreditor Agreement.[2]

---

[1] Capitalized terms not otherwise defined herein shall have the meaning ascribed to such terms in the Cash Collateral Motion.

[2] A copy of the First Lien Intercreditor Agreement is attached hereto as Exhibit A.  A copy of the Accession Agreement, dated as of April 19, 2011, pursuant to which Texas Competitive Electric Holdings Company LLC designated the First

2.      Aurelius does not object to the Debtors' use of Cash Collateral or to the type or amount of adequate protection being provided to the Prepetition First Lien Creditors, as each are described in the Cash Collateral Motion, the Interim Order issued pursuant thereto [D.I. No. 324] (the "Interim Order"), and the recently filed proposed Final Order pursuant thereto [D.I. No. 597] (the "Proposed Final Order").

3.      However, Aurelius does object to the way the Proposed Final Order would allocate the First Lien Adequate Protection Payments among the Prepetition First Lien Creditors.  Paragraph 5(d) of the Proposed Final Order would allocate adequate protection payments as among the Prepetition First Lien Creditors in proportion to their respective "Prepetition First Lien Obligations owing as of the Petition Date under each of the Prepetition First Lien Documents" (emphasis added).[3]  This allocation is inappropriate for two independent reasons:

a.      It would violate the agreement among the Prepetition First Lien Creditors as to the basis on which proceeds of collateral (the "Collateral") should be shared, as set forth in Section 4.1 of the First Lien Intercreditor Agreement.  Section 4.1 of the First Lien Intercreditor Agreement – which applies "[r]egardless of any Insolvency or Liquidation Proceeding" – would (after taking care of the agents' claims) allocate based on the respective "Secured Obligations" (including post-petition interest *whether or not allowed*) at the time of each adequate protection payment.  In aid of the Proposed Final Order's circumvention of Section 4.1, the Proposed Final Order would have adequate protection payments bypass the First Lien Collateral Agent, the

---

[3] In contrast, the Interim Order stated that "*[e]ach month*" the adequate protection payments would be allocated in proportion to "the Prepetition First Lien Obligations *outstanding* under each of the Prepetition First Lien Documents . . . ." Interim Order at § 5(d) (emphasis added).

ACTIVE/73289194.1

entity that holds the liens securing the Prepetition First Lien Creditors.[4]

    b.   It would allocate adequate protection payments out of proportion with what the Prepetition First Lien Creditors have agreed <u>inter se</u> are their respective shares of the Collateral for purposes of recovery.  As a result, the First Lien <u>Lenders'</u>[5] interests in the shared Collateral are "adequately protected" better than are the First Lien <u>Noteholders'</u> interests – unsurprising given that only three (3) of the eleven (11) members of the Ad Hoc Committee of TCEH First Lien Creditors are First Lien <u>Lenders</u> that own First Lien <u>Notes</u>,[6] and that the same institution is both the Collateral Agent under the Intercreditor Agreement and the Agent for the First Lien Lenders.

4.      The solution is straightforward:  all adequate protection payments should be remitted to the First Lien Collateral Agent, to be shared with all Prepetition First Lien Creditors in accordance with Section 4.1 of the First Lien Intercreditor Agreement.

5.      Aurelius has undertaken much effort to resolve this issue consensually with the Debtors, the Ad Hoc Committee of TCEH First Lien Creditors, and the First Lien Collateral Agent. Unfortunately, those parties have been unyielding, thereby necessitating this limited objection.

---

[4] Although the Interim Order also bypassed the First Lien Collateral Agent, the Cash Collateral Motion (at ¶ 44(c)) stated that First Lien Adequate Protection Payments would be paid to the First Lien Collateral Agent.  In addition, the Proposed Final Order provides that "[t]he First Lien Collateral Agent, for the benefit of itself and the Prepetition First Lien Creditors . . . is entitled to receive adequate protection . . . ."  Proposed Final Order at ¶ G.

[5] Notably, the debt held by the First Lien Lenders has a significantly lower interest rate than the debt held by holders of the First Lien Notes.  The debt held by the First Lien Lenders bore interest at either LIBOR + 350 basis points or LIBOR + 450 basis points depending on the tranche prior to the commencement of bankruptcy.  Post-bankruptcy, the debt held by the First Lien Lenders would bear interest at Prime Rate + 250 basis points or Prime Rate + 350 basis points depending on the tranche, plus 2.00% of default interest.  The First Lien Notes have a stated coupon of 11.5%.

[6] *See* Amended Verified Statement Of The Ad Hoc Committee Of TCEH First Lien Creditors Pursuant To Bankruptcy Rule 2019 [D.I. No. 607].

<u>Argument</u>

I.   **The Debtors' Proposed Allocation of the First Lien Adequate Protection Payments Violates the Agreement Among the Prepetition First Lien Creditors**

   A.   <u>Section 4.1 of the First Lien Intercreditor Agreement Applies to the Allocation of First Lien Adequate Protection Payments</u>

   6.   Section 4.1 of the First Lien Intercreditor Agreement requires payments to be allocated ratably among Prepetition First Lien Creditors based upon the "Secured Obligations" (including post-petition interest whether or not allowed) outstanding at the time of each payment. The Proposed Final Order would (in contrast to the corresponding portion of the Interim Order) allocate the First Lien Adequate Protection Payments among the Prepetition First Lien Creditors in proportion to their respective "Prepetition First Lien Obligations <u>owing as of the Petition Date</u> under each of the Prepetition First Lien Documents . . . ." Proposed Final Order at § 5(d) (emphasis added). That allocation would violate the agreement among the Prepetition First Lien Creditors set forth in Section 4.1 of the First Lien Intercreditor Agreement, which provides:

   > 4.1 Application of Proceeds. ***Regardless of any Insolvency or Liquidation Proceeding*** which has been commenced by or against the Borrower or any other Loan Party, Collateral or any proceeds thereof received in connection with the sale or other disposition of, or collection on, such Collateral upon the exercise of remedies under the Security Documents by the Collateral Agent shall be applied in the following order...
   >
   > third, on a pro rata basis, to the payment of, without duplication, (a) all principal and other amounts then due and payable in respect of the **Secured Obligations**...

   First Lien Intercreditor Agreement at § 4.1 (emphasis added). The First Lien Intercreditor Agreement further provides that the "Secured Parties shall share in the Collateral and all Proceeds thereof in accordance with the terms of this [First Lien] Intercreditor Agreement." *Id.* at § 2.1. To like effect, after "the commencement of any Insolvency or Liquidation Proceeding in respect of any Loan Party [i.e., the Debtors] . . . no payment of cash (or the equivalent of cash) shall be made from the proceeds of Collateral by any Loan Party to the Collateral Agent for the benefit of any Secured

ACTIVE/73289194.1

Party except as provided for in Section 4.1." *Id.* at § 4.2.

      7.      Section 4.1 of the First Lien Intercreditor Agreement clearly applies to the allocation of the First Lien Adequate Protection Payments, because they are payments received in connection with the disposition of, or collection on, Collateral.  Those payments either (i) will be made directly from Cash Collateral or cash generated from Collateral, or (ii) will be funded from proceeds of debtor-in-possession financing that has been secured by a lien (a form of disposition) that primes the liens securing the Prepetition First Lien Obligations.  In either case, the payments are either Collateral or proceeds of Collateral.  Indeed, the Debtors have acknowledged that the Prepetition First Lien Lenders are secured by substantially all of the assets of the Debtors, save for approximately $150 million of unencumbered cash (and, in any event, would not even cover two months of adequate protection payments). *See* Proposed Final Order at ¶ F(i)(e) (defining Prepetition Collateral as including "substantially all of the TCEH Debtors' assets" and defining Cash Collateral as "all of the TCEH Debtors' cash, other than cash held in Account #XXXX0559 at Union Bank, N.A. (such cash, the "Segregated Cash")"); *see also* First Day Declaration at Exh. A, n. 12.  Moreover, the allocation surely should be the same regardless whether the funding comes from "(i)" or "(ii)."

      8.      This conclusion is reinforced by the purpose of the First Lien Adequate Protection Payments which is to compensate the Prepetition First Lien Creditors for "any diminution in value of [the Prepetition First Lien Creditors'] . . . interests in the Prepetition Collateral from and after the Petition Date resulting from the imposition of such priming liens and the use of Cash Collateral, the use, sale, lease, consumption, or disposition of the Prepetition Collateral . . . , or the imposition of the automatic stay . . . ." Proposed Final Order at ¶ G.

      9.      Nor should the Debtors be permitted to circumvent the application of Section 4.1 of

the First Lien Intercreditor Agreement simply by bypassing the First Lien Collateral Agent and delivering the First Lien Adequate Protection Payments directly to the respective agents and/or trustees for the different tranches of First Lien Debt. The First Lien Collateral Agent holds the liens securing the Prepetition First Lien Obligations. That is why Section 4.1 contemplates that the First Lien Collateral Agent will be distributing Collateral proceeds. And Section 4.2 of the First Lien Intercreditor Agreement requires that payments made by any "Loan Party" (the Debtors) must be made as provided for in Section 4.1. First Lien Intercreditor Agreement at § 4.2; *see also id.* at § 2.2.[7]

10.    Even the Proposed Final Order acknowledges that adequate protection should be afforded to all Prepetition First Lien Lenders through the First Lien Collateral Agent, as the holder of the liens: "The First Lien Collateral Agent, for the benefit of itself and the Prepetition First Lien Creditors, to protect such parties' interests in the Prepetition Collateral, and in exchange for consenting to the priming liens contained in the DIP Facility approved pursuant to the DIP Order, is entitled to receive adequate protection for any diminution in value of their respective interests in the Prepetition Collateral . . . ." Proposed Final Order at ¶ G.

11.    Thus, the First Lien Adequate Protection Payments should be remitted to the First Lien Collateral Agent to be shared with all Prepetition First Lien Creditors in accordance with Section 4.1 of the First Lien Intercreditor Agreement, and the Proposed Final Order should be revised accordingly.[8]

---

[7] Indeed, paragraph 17 of the Proposed Final Order prohibits circumvention of the First Lien Intercreditor Agreement and provides that, "[n]otwithstanding any provision in this Final Order to the contrary, this Final Order is . . . without prejudice to, and does not constitute a waiver, expressly or implicitly, of: (a) the Prepetition First Lien Creditors' rights under any of the Prepetition First Lien Documents[,]" which include the First Lien Intercreditor Agreement. The Interim Order contains an identical provision.

[8] In the alternative, the Debtors should be ordered to allocate and distribute the First Lien Adequate Protection Payments to the agents and/or trustees for each tranche of First Lien Debt in the same manner as if such payments were being paid to the First Lien Collateral Agent for allocation and distribution under the requirements of Section 4.1 of the First Lien Intercreditor Agreement.

6

B.    The First Lien Adequate Protection Payments Must be Shared Among the Prepetition First Lien Creditors Pro Rata Based on the Amount of "Secured Obligations," Including Post-Petition Interest (Whether or Not Allowed), Determined at the Time of Each Adequate Protection Payment

12.    Once Section 4.1 of the First Lien Intercreditor Agreement is triggered, any monies paid to the Prepetition First Lien Creditors must be distributed in accordance with the pre-negotiated language of that section.  Section 4.1 requires that, "[r]egardless of any Insolvency or Liquidation Proceeding[,]" such monies be applied "on a pro rata basis, to the payment of, without duplication, (a) all principal and other amounts then due and payable in respect of the Secured Obligations . . . ."  First Lien Intercreditor Agreement at § 4.1 (emphasis added).  The definition of "Secured Obligations" in the First Lien Intercreditor Agreement is expansive and includes, among other things, post-petition interest, whether or not allowed or allowable:

> (a) all advances to, and debts, liabilities, obligations, covenants and duties to, any Loan Party arising under any Loan Documents . . . whether direct or indirect, **due or to become due, now existing and including interest and fees that accrue after the commencement** by or against any Loan Party **of any proceeding under any bankruptcy or insolvency law** naming such Person as the debtor in such proceeding, **regardless of whether such interest and fees are allowed claims in such proceeding.**  Without limiting the generality of the foregoing, the Secured Obligations of the Loan Parties under the Loan Documents include the obligation (including guarantee obligations) to pay principal, interest, charges, expenses, fees, attorney costs, indemnities and other amounts payable under any Loan Documents and (b) **all obligations of every nature outstanding under any Additional Obligations, whether fixed or contingent, matured or unmatured, in each case whether or not allowable in an Insolvency or Liquidation Proceeding.  "Secured Obligations**" shall include, without limitation, **interest accruing at the then applicable rate provided for in the applicable Financing Document after the maturity of the relevant Secured Obligations and any Post-Petition Interest.**

*Id.* at § 1.1 (definition of "Secured Obligations") (emphasis added).[9]

13.    As set forth in the First Lien Intercreditor Agreement, the pro rata division of monies embodies two essential agreements among the Prepetition First Lien Creditors:  first, that, as among the creditors, in order to keep pace with their increasing ratable interest in the shared Collateral,

---

[9] The term "Secured Obligations" includes the First Lien Notes.

ACTIVE/73289194.1

holders of tranches of First Lien Debt with higher relative interest rates will receive a relatively

greater proportionate share of any payments made in respect of the Collateral to reflect such accrual

of interest; and second, that, as among the creditors, notwithstanding what occurs following the

commencement of any "Insolvency or Liquidation Proceeding," post-petition interest will continue

to accrue for purposes of the determination of pro rata share, regardless of whether such interest is

allowed or allowable in the chapter 11 case.  Hence, the expansive definition of "Secured

Obligations" quoted above.

14.     The point to be emphasized is that "pro rata" as used in the First Lien Intercreditor

Agreement is a dynamic concept that keeps pace with the ratable interest of each tranche of First

Lien Debt in the shared Collateral.  To accomplish this, pro rata shares are not fixed for the duration

of the agreement.  Rather, each payment or distribution is to be allocated ratably based upon the

amount of the Secured Obligations to be determined as of the time the particular payment or

distribution is being made.[10]  The pro rata calculation is made for purposes of splitting up payments

among the creditors—regardless of how those payments are applied against the obligations owed by

the Debtors.  The Ad Hoc Committee of TCEH First Lien Creditors seems to argue that given post-

petition interest is not currently "due and payable", it should not be included in the pro rata

calculation required by Section 4.1.  Specifically, the Ad Hoc Committee refers to the following

language in Section 4.1:

> third, on a pro rata basis, to the payment of, without duplication, (a) all principal and other
> amounts **then due and payable** in respect of the Secured Obligations…

Id. at § 4.1 (emphasis added).  The Ad Hoc Committee is incorrect for two reasons:  First, it fails to

---

[10] The prefatory language in Section 4.1 of the First Lien Intercreditor Agreement directs that, in determining the pro rata split, you look to the amount of the Secured Obligations as determined in accordance with Section 4.3. Id. at § 4.1. Under Section 4.3 of the First Lien Intercreditor Agreement, you look at the "Secured Obligations … then outstanding and owed by the Borrower or any other Loan Party to the Secured Parties . . . ." Id. at § 4.3 (emphasis added).  This further supports the conclusion that the concept of Secured Obligations under the First Lien Intercreditor Agreement is intended to be dynamic, and calculated as of the time any particular payment or distribution is made.

ACTIVE/73289194.1

consider the first words that begin the first sentence of Section 4.1.  The sentence read in its entirety

states:

> "**Regardless of any Insolvency or Liquidation Proceeding** which has been commenced by
> or against the Borrower or any Loan Party…
>
> <u>third</u>, on a pro rata basis, to the payment of, without duplication, (a) all principal and other
> amounts **then due and payable** in respect of the Secured Obligations…"

*Id.* at § 4.1 (emphasis added).  It is clear that what is "then due and payable" is qualified by

"regardless of any Insolvency or Liquidation Proceeding" for purposes of Section 4.1.  Furthermore,

given that the definition of Secured Obligation explicitly contemplates the inclusion of post-petition

interest, if the intent of the parties was to override the inclusion of post-petition interest in the pro

rata sharing formula, the language would have been explicit and direct in that regard.  It is

not.  Therefore, the only logical reading of Section 4.1 is that, for purposes of determining the

respective interests of the Prepetition First Lien Creditors in the shared Collateral, post-petition

interest continues to accrue for the purposes of the pro rata sharing formula and will be added to the

calculation of "Secured Obligations."  Indeed, if there is no adjustment for the accrual of post-

petition interest, the ratable sharing formula would soon be skewed against the holders of high

coupon debt because that debt is increasing at a faster rate relative to the lower coupon debt.  This,

in turn, would alter the ratable interests of the several tranches of First Lien Debt in the shared

Collateral.

     15.   <u>Second</u>, interest that accrues after the commencement of bankruptcy is in fact "then

due and payable" by operation of contract.  The First Lien Notes Indenture contains an automatic

acceleration provision.  *See* First Lien Notes Indenture at § 6.02.  Regardless of whether the value

of the Collateral will support the "allowance" of the claim for post-petition interest, the claim for

post-petition interest is accruing and is currently due and payable based upon the automatic

ACTIVE/73289194.1

acceleration of the First Lien Notes.  Aurelius does not dispute that the automatic stay would

preclude the holders of the First Lien Notes from enforcing their rights under their agreements, but

that does not mean that the Debtors' obligations to the holders of the First Lien Notes are not "due

and payable."  Thus, any reliance by the Ad Hoc Committee of TCEH First Lien Creditors upon the

"due and payable" language of Section 4.1 of the First Lien Intercreditor Agreement to unravel the

arguments made in this Limited Objection is to no avail.

## II.    The Debtors' Proposed Final Order Provides For Differential Treatment Amongst Prepetition First Lien Creditors

16.    Even assuming, *arguendo*, that Section 4.1 of the First Lien Intercreditor Agreement

does not apply to the First Lien Adequate Protection Payments (a position that Aurelius strongly

disagrees with), the Debtors' proposed allocation should still be denied because it provides

differential protection against the diminution in value to the same class of creditors.  Because the

First Lien Adequate Protection Payments are intended to adequately protect the Prepetition First

Lien Creditors from a diminution in the value of their Collateral, such payments should mirror the

creditors' respective shares of, and pro rata interests in, the shared Collateral.  The Debtors'

proposed method of allocating the First Lien Adequate Protection Payments – sharing among the

various tranches of First Lien Debt without taking into account the accrued and accruing interest on

such debt and the corresponding increase in the creditors' respective interests in the shared

Collateral – is inconsistent with the Prepetition First Lien Creditors' relative interests in the

Collateral and is out of proportion with what the Prepetition First Lien Creditors have agreed inter

se are their respective shares of the Collateral for purposes of recovery.

17.    Indeed, unless the First Lien Adequate Protection Payments are shared pro rata in the

same manner as the payments or distributions of Collateral are shared under the First Lien

Intercreditor Agreement, the interest of the holders of the First Lien Notes in the shared Collateral

ACTIVE/73289194.1

will be diminishing at a faster rate than the interests of the other tranches in the same

Collateral.  The result is that the holders of debt with the higher coupon rate (i.e., the holders of the

First Lien Notes) will receive less adequate protection per dollar of payment relative to the interest

of such holders in the shared Collateral than the holders of debt with lower coupon rates (i.e., the

First Lien Lenders).  The Proposed Final Order fails to provide equal protection to all Prepetition

First Lien Creditors because, under the order as currently written, every tranche of First Lien Debt

will receive its share of the adequate protection payments as if all debt in all tranches is either

increasing at a uniform rate or not increasing at all.  Neither is the case.

18.    Suppose at the end of these chapter 11 cases, the value of the Collateral was so great

that it would cover all of the claims of all of the Prepetition First Lien Creditors, including all post-

petition interest.  Certainly, at that point, the Prepetition First Lien Creditors should receive a

recovery that includes a full repayment of their claims including post-petition interest, because their

interests in the Collateral had in fact been growing during the pendency of the chapter 11 cases.

Now suppose all Prepetition First Lien Creditors were paid exactly the same amount of First Lien

Adequate Protection Payments regardless of their respective interests in the Collateral (which is

what the Debtors are proposing), and there is a dramatic decline in value of the Collateral such that

there is nothing left at the end of these chapter 11 cases.  The First Lien Lenders would have

received a higher recovery as a percentage of their interest in the Collateral than the holders of First

Lien Notes.  In another words, the First Lien Lenders would have been better protected against the

diminution in value of the Collateral than the holders of First Lien Notes and the principle of

equality of treatment of similarly situated creditors would be violated.  See 11 U.S.C. § 1123(a)(4)

(requiring that a plan "provide the same treatment for each claim or interest of a particular class");

In re W.R. Grace & Co., 729 F.3d 311, 327 (3d Cir. 2013) ("equality of distribution among

ACTIVE/73289194.1

creditors is a central policy of the Bankruptcy Code . . . .") (quotation omitted).  Therefore, the

allocation of the First Lien Adequate Protection Payments must take into account the creditors'

relative interests in the Collateral, which may change over time due to the different coupon rates for

the different tranches of First Lien Debt.

<div style="margin-left:2em">

A.    <u>The Debtors' Recent Change to the Allocation Language Set Forth in the Interim Cash Collateral Order Makes it Clear that the Debtors Are Knowingly Attempting to Circumvent the First Lien Intercreditor Agreement and Prejudice the Rights of the Holders of First Lien Notes</u>

</div>

19.    The language in the Interim Order, as approved by this Court, provided for the First

Lien Adequate Protection Payments to be allocated in accordance with the terms of the First Lien

Intercreditor Agreement – taking into account the total Prepetition First Lien Obligations (including

post-petition interest)[11] owing to the various tranches of First Lien Debt at each time a First Lien

Adequate Protection Payment was made.  *See* Interim Order at ¶ 5(d).  The Debtors' change to that

language in their proposed Proposed Final Order – which allocates each First Lien Adequate

Protection Payment based upon the Prepetition First Lien Obligations outstanding to the various

tranches of First Lien Debt <u>as of the Petition Date,</u> *see* Proposed Final Order at ¶ 5(d), is a clear

attempt to circumvent the First Lien Intercreditor Agreement and provide the First Lien Lenders

with an advantage to which they are simply not contractually or equitably entitled.  Aurelius

---

[11] The term "Prepetition First Lien Obligations" as defined in both the Interim Order and the Proposed Final Order includes "Obligations" as defined in the First Lien Notes Indenture.  *See* Interim Order and Proposed Final Order at ¶ F(i)(d) (defining "Prepetition First Lien Obligations").  "Obligations" include "interest accruing subsequent to the filing of a petition in bankruptcy, reorganization or similar proceeding at the rate provided for in the documentation with respect thereto, whether or not such interest is an allowed claim under applicable state, federal or foreign law . . . ." First Lien Notes Indenture at § 1.01 (definition of "Obligations").  Specifically, the Interim Order and the Proposed Final Order define Prepetition First Lien Obligations as:

<div style="margin-left:2em">

all of the obligations under the Prepetition First Lien Documents, together with any amounts paid, incurred, or accrued prior to the Petition Date in accordance with the Prepetition First Lien Documents, principal, accrued and unpaid interest, any fees, expenses, and disbursements . . . and <u>other payments, charges, or liabilities of whatever nature, whether or not contingent, whenever arising, due, or owing in respect thereof to the extent and as provided for in the Prepetition First Lien Documents, including all "Obligations" as defined in</u> each of the First Lien Credit Agreement and <u>First Lien Notes Indenture.</u>

</div>

Interim Order and Proposed Final Order at ¶ F(i)(d) (emphasis added).

ACTIVE/73289194.1

requests that the Court disapprove this change and order that any final cash collateral order entered in these cases reflect the agreement among the Prepetition First Lien Creditors to share any payments received in respect of their Collateral, including the First Lien Adequate Protection Payments, in such a way as to take into account the accrual of post-petition interest.

> B.    The Proposed Alteration of the Waterfall in the First Lien Intercreditor Agreement is Being Advocated By a Non-Representative Unofficial Ad Hoc Committee Of Self-Interested Credit Agreement Lenders

20.    Finally, it is no surprise that the Ad Hoc Committee of TCEH First Lien Creditors, represented in these cases by Paul Weiss, opposes Aurelius's request for the First Lien Adequate Protection Payments to be made in accordance with Section 4.1's waterfall.  Pursuant to the *Amended Verified Statement of the Ad Hoc Committee of TCEH First Lien Creditors Pursuant to Bankruptcy Rule 2019*, filed with the Bankruptcy Court [Docket No. 607], the Ad Hoc Committee disclosed that a vast majority of its constituents (eight (8) out of eleven (11) members) are First Lien Lenders that do not hold any of the First Lien Notes.  Because the First Lien Credit Agreement has a substantially lower interest rate than the First Lien Notes, not to mention, some tranches of First Lien Credit Agreement debt bear interest at a rate below LIBOR + 450 basis points prior to the commencement of bankruptcy, and the distributive provisions set forth in Section 4.1 of the First Lien Intercreditor Agreement provide for a higher relative payout to holders of debt with a higher interest rate, the First Lien Lenders are in a position to receive a windfall if Section 4.1 is not followed.

21.    In sum, if the Debtors distribute the First Lien Adequate Protection Payments as they have advised they intend to do, the First Lien Lenders will receive a proportionally larger share of the payments than they are entitled to (i) under the plain language of the First Lien Intercreditor Agreement, and (ii) after taking into account their relative interests in the underlying Collateral. Therefore, any argument by the Ad Hoc Committee that Section 4.1 of the First Lien Intercreditor

13

Agreement should not be adhered to should be recognized for what it is: a blatant attempt by the First Lien Lenders to obtain a better position relative to other Prepetition First Lien Creditors (specifically, to the holders of First Lien Notes), in complete disregard for the plain language of the First Lien Intercreditor Agreement to which they are a party and in subversion of the contractual rights of the holders of the First Lien Notes.

## CONCLUSION

Based upon the foregoing, Aurelius respectfully requests that the Proposed Final Order, if approved by this Court, direct that the First Lien Adequate Protection Payments be remitted to the First Lien Collateral Agent to be shared with all Prepetition First Lien Creditors in accordance with the ratable sharing provision of Section 4.1 of the First Lien Intercreditor Agreement (which includes recognition of the ongoing accrual of post-petition interest), and that any prior distributions of First Lien Adequate Protection Payments that were inconsistent with Section 4.1 be remedied immediately.

**(PAGE LEFT INTENTIONALLY BLANK)**

ACTIVE/73289194.1

Dated: May 29, 2014

GELLERT SCALI BUSENKELL &
BROWN, LLC

Michael Busenkell (DE 3933)
913 N. Market Street, 10th Floor
Wilmington, DE 19801
Telephone: (302) 425-5800
Facsimile:  (302) 425-5814
mbusenkell@gsbblaw.com

-and-

GOODWIN PROCTER LLP
William P. Weintraub
Kizzy L. Jarashow
The New York Times Building
620 Eighth Avenue
New York, NY 10018
Telephone: (212) 813-8800
wweintraub@goodwinprocter.com
kjarashow@goodwinprocter.com

*Attorneys for Aurelius Capital Management, LP*

15