IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re:<br><br>ENERGY FUTURE HOLDINGS CORP., *et al.*,<br><br>Debtors. | Chapter 11<br><br>Case No. 14-10979 (CSS)<br><br>(Jointly Administered) |

**RESPONSE OF ALCOA INC. TO MOTION OF TEXAS COMPETITIVE ELECTRIC HOLDINGS COMPANY LLC AND CERTAIN OF ITS DEBTOR AFFILIATES FOR ENTRY OF A FINAL ORDER AUTHORIZING USE OF CASH COLLATERAL AND GRANTING RELATED RELIEF**

Alcoa Inc. ("Alcoa"), by and through its undersigned counsel, hereby files this response (the "Response") to the motion of certain of the above-captioned debtors and debtors-in-possession (collectively, the "Debtors") for entry of a final order (the "Final Cash Collateral Order") authorizing the use of cash collateral and granting related relief [ECF No. 71] (the "Cash Collateral Motion").[1] In support of its Response, Alcoa respectfully represents as follows:

PRELIMINARY STATEMENT

1.  Alcoa does not object to the entry of the Final Cash Collateral Order in principle. Rather, Alcoa files this Response to seek clarification that its setoff rights *vis-à-vis* Debtor Luminant Generation, LLC ("Luminant Generation"), and Luminant Mining, LLC ("Luminant Mining"), are preserved and are neither subordinated to nor otherwise affected by the proposed adequate protection liens (the "AP Liens").[2]

---

[1] Capitalized terms not otherwise defined herein have the meanings ascribed to them in the Cash Collateral Motion.

[2] The proposed Final Cash Collateral Order adopts the definition of "DIP Collateral," as defined in the Debtors' proposed order approving post-petition debtor-in-possession financing (the "Final DIP Order") under a debtor-in-possession credit agreement (the "DIP Credit Agreement"). (*See* Final Cash Collateral Order ¶ 5(a); Final DIP Order ¶¶ 7(a)-(c).

{1017.001-W0031526.}

2. Because it is unclear whether the entry of the Final Cash Collateral Order would interfere with or effectively subordinate and/or otherwise affect Alcoa's setoff rights, Alcoa requests that the Final Cash Collateral Order expressly carve out Alcoa's setoff rights from the AP Liens (and any other encumbrances) the Debtors seek to be approved through the Cash Collateral Motion, substantially in the form as follows: *"Nothing herein shall interfere with, affect, or subordinate any of Alcoa Inc.'s setoff, recoupment, and/or similar rights against any applicable Debtor entity."* Alcoa remains willing to discuss an appropriate clarification with all parties-in-interest.

## BACKGROUND

A. <u>Alcoa's Setoff Rights under Certain Pre-Petition Agreements</u>

3. Alcoa's relationship with Luminant Mining, Luminant Generation, and their predecessors dates back more than fifty years. Alcoa entered into a series of pre-petition agreements with Luminant Mining and Luminant Generation. Generally, pursuant to these agreements, Luminant Mining was contracted by Alcoa to mine lignite coal, which Alcoa would then sell to Luminant Generation. Luminant Generation would then use the lignite coal it purchased from Alcoa to generate electricity at a power plant located on an Alcoa smelting facility in Rockdale, Texas. Under these and other pre-petition agreements, Alcoa also was entitled to receive lease-related payments and royalty payments from Luminant Mining and/or Luminant Generation.

4. Prior to the petition date and at the end of any given month, Luminant Mining and Luminant Generation would invoice Alcoa under these agreements and vice versa. In the ordinary course of business, the parties customarily netted amounts owed to each other, with net payables/receivables being generated and paid according to a schedule agreed upon among the parties.

B.  The Final Cash Collateral Order

5.  It is not clear whether entry of the proposed Final Cash Collateral Order would interfere with or affect Alcoa's setoff rights. As an initial matter, the proposed Final Cash Collateral order would grant certain pre-petition secured parties the AP Liens in the DIP Collateral, which appears to cover all of the Debtors' assets. While DIP Credit Agreement § 10.2(c) allows for certain setoff rights under the definition of "Permitted Liens,"[3] no such concept (even in the unsatisfactory, limited form it appears under the DIP Credit Agreement) appears to exist with respect to the AP Liens under the proposed Final Cash Collateral Order. Alcoa understands from conversations with the Debtors that the Debtors do not believe the AP Liens are meant to subordinate and/or otherwise affect Alcoa's setoff rights. But to date Alcoa has not been able to reach a satisfactory carve out for such rights.

6.  Alcoa therefore files this Response to seek clarification and to ensure that its setoff rights are unaffected by the entry of the Final Cash Collateral Order.

## RESPONSE

A.  Alcoa's Setoff Rights Cannot Be Primed

7.  Alcoa's rights to setoff cannot be subordinated or otherwise affected by the Final Cash Collateral Order as a matter of law without providing Alcoa adequate protection. Any effort to do so is in violation of the Bankruptcy Code and should not be permitted.

---

[3] Nevertheless, even with respect to the DIP Liens, setoff rights appear to be permitted solely to the extent such setoff rights have been expressly granted under "Permitted Contracts," a definition Alcoa believes to be inadvertently too restrictive, as it does not include common law setoff rights preserved by Bankruptcy Code § 553 or recoupment. Accordingly, Alcoa has also filed a response to the entry of the Proposed Final DIP Order also seeking a clarification that nothing therein would subordinate and/or prime Alcoa's setoff rights.

8. Bankruptcy Code § 553(a) governs setoffs of pre-petition debts in bankruptcy. In relevant part, Section 553 provides:

> Except as otherwise provided in this section and in sections 362 and 363 of this title, this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case . . .

Under Bankruptcy Code § 506(a)(1), the effect of a valid right to setoff under § 553 is to "elevate an unsecured claim to secured status." *In re Garden Ridge Corp.*, 338 B.R. 627, 633 (citing, *inter alia*, *Lee v. Schweiker*, 739 F.2d 870, 875 (3d Cir. 1984)). Thus, Alcoa's setoff rights are secured and its setoff claims are preferred over other creditors, including the pre-petition secured lenders proposed to receive the AP Liens.

9. While the Debtors seek approval of the AP Liens under Bankruptcy Code § 363, any amounts subject to Alcoa's setoff rights cannot be used as cash collateral thereunder unless the Debtors provide Alcoa with adequate protection. *E.g., In re Kirkpatrick*, 214 B.R. 314, 316 (Bankr. S.D. Ohio 1997) (setoff rights require adequate protection for the use of what is essentially the setoff party's cash collateral). The Debtors cannot provide Alcoa with adequate protection, nor have they made any attempt to do so. Accordingly, there is no legal basis to permit the AP Liens to subordinate or otherwise affect Alcoa's setoff rights.

B. <u>Alcoa's Post-Petition Rights to Setoff Cannot Be Primed for the Same Reasons</u>

10. Any attempt to subordinate or otherwise affect Alcoa's rights to set off post-petition claims against post-petition debts fails for the reasons articulated above. Indeed, courts have found that "it is appropriate to consider the same elements for setoff of postpetition debts that are utilized regarding prepetition debts." *In re Seal*, 192 B.R. 442, 457 (Bankr. W.D. Mich. 1996). Subject to the restrictions imposed by Bankruptcy Code § 362, a post-petition claim may be offset against a post-petition debt so long as the claim and debt constitute valid, mutual

obligations. *MBNA Am. Bank, N.A. v. Trans World Airlines, Inc. (In re Trans World Airlines, Inc.)*, 275 B.R. 712, 720 (Bankr. D. Del. 2002) ("[N]either section 553 nor any other provision of the Code eliminates the right to setoff mutual post-petition claims."); s*ee also Se. Bank, N.A. v. Grant (In re Apex Int'l Mgmt. Servs., Inc.)*, 155 B.R. 591, 594-95 (Bankr. M.D. Fla. 1993); *In re Shoppers Paradise*, 8 B.R. 271, 277 (Bankr. S.D.N.Y. 1980).

11. Accordingly, Alcoa's post-petition setoff rights cannot be subordinated to and/or otherwise affected by the AP Liens.

## **RESERVATION OF RIGHTS**

12. Alcoa is still investigating the pre-petition and post-petition transactions between it and its affiliates and the Debtors and the Debtors' affiliates, including Luminant Generation and Luminant Mining. Alcoa specifically reserves its right to move to lift the automatic stay to permit it to effect its setoff rights.

**WHEREFORE**, Alcoa respectfully requests that the Court (i) modify the Final Cash Collateral Order to include language clarifying that nothing in the Final Cash Collateral Order affects, subordinates, interferes with, or otherwise affects any of Alcoa Inc.'s setoff, recoupment, and/or similar rights against any applicable Debtor entity and (ii) grant Alcoa such other and further relief as this Court may deem just and proper under the circumstances.

*(Remainder of Page Intentionally Left Blank)*

Dated: May 29, 2014
      Wilmington, Delaware

**LANDIS RATH & COBB LLP**

_/s/_

Adam G. Landis (No. 3407)
Matthew B. McGuire (No. 4366)
919 Market Street, Suite 1800
Wilmington, Delaware 19899
Telephone: (302) 467-4400
Facsimile: (302) 467-4450

-and-

**MCKOOL SMITH, P.C.**

Peter S. Goodman (_Admitted Pro Hac Vice_)
Michael R. Carney (_Admitted Pro Hac Vice_)
One Bryant Park, 47th Floor
New York, New York 10036
Telephone: (212) 402-9400
Facsimile: (212) 402-9444
E-mail: pgoodman@mckoolsmith.com
E-mail: mcarney@mckoolsmith.com

Paul Moak (_Admitted Pro Hac Vice_)
600 Travis Street, Suite 7000
Houston, Texas 77002
Telephone: (713) 485-7300
Facsimile: (713) 485-7344
E-mail: pmoak@mckoolsmith.com

_Counsel for Alcoa Inc._