## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------- x

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| Energy Future Holdings, Inc., *et al.*, | : | Case No. 14-10978 (CSS) |
| | : | |
| Debtors. | : | (Jointly Administered) |
| | : | |
| | : | **Related Docket No. 477** |

---------------------------------------------------------- x

## OBJECTION OF EFIH SECOND LIEN NOTES INDENTURE TRUSTEE TO DEBTORS' REQUEST FOR APPROVAL OF ALTERNATIVE TRANSACTION FEE

Computershare Trust Company, N.A. and Computershare Trust Company of Canada, as indenture trustee (the "**Indenture Trustee**") for $2,156,000,000 aggregate principal amount of second lien notes (the "**Second Lien Notes**") issued by Energy Future Intermediate Holding Company LLC ("**EFIH**") and EFIH Finance Inc., by and through its undersigned counsel, hereby files this objection (the "**Objection**") to the Debtors' request for approval of an alternative transaction fee (the "**Alternative Transaction Fee**" or "**ATF**") and certain fees, expenses and indemnification obligations (the "**Other Obligations**")[1] to be payable to certain parties who have agreed to backstop the Second Lien DIP (the "**Initial Commitment Parties**").

## PRELIMINARY STATEMENT

Although the Debtors have adjourned the hearing on the Second Lien DIP Motion from June 5 to June 30, they nevertheless persist in asking the Court to hear certain aspects of

---

[1] The Debtors' Omnibus Re-Notice of Certain Second-Day Motions [Dkt. No. 626] states the Debtors are going forward with the request for relief related to "the payment of certain fees, expenses and indemnification obligations (each as defined in the Second Lien DIP Motion)."   There are a myriad of fees described in the Second Lien DIP Motion and in the Commitment Letter, and it is unclear exactly which other fees the Debtors are going forward with now or the justification for doing so.  At the hearing on May 22, 2014, the Debtors only stated they would be going forward with the ATF and expense reimbursement.  Hr'g Tr. (May 22, 2014) at 219:4-18 (attached hereto as **Exhibit B**).

that motion on June 5 – namely, approval of the $57 million Alternative Transaction Fee and the Other Obligations.  However, it would be contrary to the interests of the Debtors and their creditors for the Court to approve these fees before determining whether or not to approve the Second Lien DIP.  The RSA does not require approval of any aspect of the Second Lien DIP, including the ATF and the Other Obligations, until July 13 (75 days after the Petition Date).  The Initial Commitment Parties did not negotiate for, and are not entitled to, any earlier deadline for approval of the ATF and Other Obligations.  Deferring consideration of these matters to June 30 would not allow the Initial Commitment Parties to withdraw their commitment.  Deferral of these issues to June 30 is therefore clearly in the Debtors' best interests, as it would avoid the waste of in excess of $57 million of estate assets that would occur if the Court were to approve the ATF and Other Obligations on June 5 and then decline to approve the Second Lien DIP on June 30.

Approval of the Second Lien DIP is by no means a foregone conclusion.  The Debtors agreed at the May 22 hearing to negotiate in good faith with certain holders of Second Lien Notes on their competing Second Lien DIP.  The current forms of the Commitment Letter and Term Sheet are attached hereto as **Exhibit A**, and the Indenture Trustee anticipates that the backstop commitments will be fully syndicated by the June 5  hearing.

There is no reason why the Debtors should seek immediate approval of more than $57 million in payment obligations when the commitment to fund the proposed Second Lien DIP will remain in place in any event.  Locking in an obligation to pay these fees would simply – and unjustifiably – erect a significant additional barrier to approval of a more favorable DIP.  By proposing to grant the Initial Commitment Parties these unearned, un-contracted for, and unnecessary millions in fees, the Debtors undermine their commitment to negotiate with the

Second Lien Noteholders in good faith, impose an unwarranted obstacle to approval of a cheaper, alternative DIP, and increase the perception they are beholden to certain favored creditors.

Because approving the ATF and Other Obligations now would serve no purpose and would be contrary to the interests of the estates, the Indenture Trustee asks that the hearing on the ATF and Other Obligations be adjourned until June 30, so that it can properly be considered as part of the Second Lien DIP – as the applicable documents always contemplated that it would.  Alternatively, to the extent the Court allows the Debtors to push forward on approval of these obligations, the Indenture Trustee asks that the Court deny the ATF and the Other Obligations in their entirety.  As explained below, approval of the ATF prior to the granting of the Second Lien DIP does not meet the Third Circuit standard for approval of a break-up fee.

## BACKGROUND

1.      Pursuant to the Settlement Motion, the Debtors propose to settle all obligations under the Second Lien Notes by entering into the Second Lien DIP and using the proceeds thereof to refinance the Second Lien Notes through a tender offer, in which certain holders of Second Lien Notes who are parties to the RSA have committed to participate.[2]

2.      The Second Lien DIP will provide the Debtors with $1.9 billion of new financing at an interest rate of 8%.  This money will primarily be provided by certain holders of PIK Notes – that is, by current creditors of EFIH who are already invested in the Debtors' capital structure and therefore need to see the Debtors successfully reorganize.  More specifically, the

---

[2] The Indenture Trustee reserves all rights to object to the Settlement Motion, including on the grounds that it violates the Bankruptcy Code's requirements of equal treatment for similarly situated creditors.

DOCS_DE:193493.2 23731/001

transactions contemplated by the RSA, including the Second Lien DIP, are structured to avoid triggering a deconsolidation tax that would "likely eliminate any recovery for EFIH's unsecured creditors," such as holders of the PIK notes, and thus the Second Lien DIP is in such holders' own best interests.  See Ying Declaration [Dkt. No. 478] at ¶ 10.

3.    There are significant fees attendant to the financing,[3] including the Alternative Transaction Fee, which the Debtors describe as:

> an alternative transaction fee equal to 3.0% of $1.9 billion ($57,000,000), to be paid solely in the event that, up to the funding of the EFIH Second Lien DIP Facility, EFIH enters into definitive documentation for an alternative transaction (*i.e.*, a transaction in lieu of the Global Settlement) on equal or better terms than the Restructuring Support Agreement, within five days of Court approval of such alternative transaction . . . .

Second Lien DIP Motion at ¶ 9(g); *see also* Commitment Letter (attached as Exhibit E to Second Lien DIP Motion) at 5 (defining "alternative transaction").[4]

4.    If the Second Lien DIP is not approved within 75 days after the petition date (i.e., July 13), certain parties – including the Initial Commitment Parties that are entitled to receive the ATF – have the right to terminate their commitment to the RSA.  *See* RSA § 8.02(b).

5.    On May 12, 2014, a group of Second Lien Noteholders proposed an alternative DIP (the "**Competing Second Lien DIP**") that could save the estate a considerable amount of money through a lower interest rate and lower commitment fees.  The Indenture

---

[3] The Debtors have touted the Second Lien DIP as saving $8 million a month.  *See* Second Lien DIP Motion at ¶ 5. This figure ignores the total upfront cash fees of approximately $60 million (not including the ATF).  *See id.* at ¶ 9.

[4] The Indenture Trustee notes that, notwithstanding the Debtors' assertion that the ATF is payable only "up to the funding" of the DIP, the Commitment Letter itself does not appear to impose this limitation.  The Commitment Letter states that, "subject to entry of the Approval Order [which is defined in the RSA as the order approving the First Lien Settlement, the Second Lien Settlement and the Debtors' obligations under the Commitment Letter], if EFIH enters into definitive documentation with respect to a reorganization, restructuring, merger, consolidation, share exchange, rights offering, equity investment, business combination, capitalization or similar transaction . . . involving EFIH on equal or better terms and conditions for EFIH than those template in the Restructuring Support Agreement and the Term Sheet", the Debtors shall pay the ATF, which "shall become due and be paid in full within 5 days [of] Bankruptcy Court approval of such Alternative Transaction."  Commitment Letter at 5.

DOCS_DE:193493.2 23731/001

Trustee anticipates that the backstop commitments for the Competing Second Lien DIP will be fully syndicated by June 5.

6.     During the May 22 hearing, the Debtors agreed to adjourn the hearing on the Second Lien DIP, certain portions of the Settlement Motion (specifically the Second Lien Settlement and the Oncor TSA Amendment but not the First Lien Settlement), and the RSA Assumption Motion to June 30 but announced that they still intended to ask the Court to approve the ATF and expense reimbursement on June 5.  Hr'g Tr. (May 22, 2014) at 219:4-18.

7.     In connection with the adjournment of the Second Lien DIP and Second Lien Settlement, the Debtors committed to "engage in good faith negotiations with the EFIH second lien indenture trustee and certain holders of the EFIH second lien debt over the alternative second lien DIP proposal made by members of that group and other issues that they have raised in their various challenges to date."  Hr'g Tr. (May 22, 2014) at 222:15-19 (attached hereto as **Exhibit C**).[5]

## ARGUMENT

8.     There is no need for the Court to approve the ATF and Other Obligations before the Court hears and approves the Second Lien DIP.  Nothing in the RSA, Second Lien DIP Motion, Commitment Letter, or any other document requires approval of the ATF on June 5. Consequently, its approval now would waste estate assets and provide an un-bargained for windfall to the Initial Commitment Parties.  Approving the ATF and the Other Obligations at this

---

[5] Notwithstanding the Debtors' statements on the record and in the Second Notice of Extension of Primary Opt-In Period for Proposed EFIH Second Lien Settlement [Dkt. No. 612] that their obligation to engage in good faith negotiations regarding the Competing Second Lien DIP runs through the "Primary Opt-In  Period" (which expires on June 11), the Indenture Trustee withdrew its emergency motion to compel the Debtors to obtain prior approval of procedures governing their EFIH 2nd Lien Tender Offer on the understanding that there was no expiration on the duty to negotiate in good faith prior to approval of a DIP.  Consistent with their fiduciary duties, the Debtors should not limit their good faith negotiations to this truncated and arbitrary time frame.

early date and in the face of a competing DIP offer would also chill negotiations over the best

DIP terms and potentially limit the Debtors' ability to obtain the most favorable deal.  If the

Court were nonetheless to consider approval of the ATF at this time, it should be denied as being

unnecessary to preserve the value of the Debtors' estates.[6]

9.      *First*, there is no need for the Court to hear the Alternative Transaction

Fee and Other Obligations now.  The Initial Commitment Parties did not insist on pre-approval

of the ATF and Other Obligations, as they could have.  While the RSA requires that the Second

Lien DIP be approved within 75 days of the petition date, it does not contain any specific

milestones for the Alternative Transaction Fee and Other Obligations.  Had the protections of the

Alternative Transaction Fee and Other Obligations during the period prior to approval of their

DIP been critical to the Initial Commitment Parties, they could have required a separate deadline

for approval of these in advance of the hearing on the Second Lien DIP, or a separate termination

right under the RSA for failure to approve these fees and indemnification obligations.  Instead,

the Alternative Transaction Fee and Other Obligations are not mentioned at all in the RSA,[7] and

the Commitment Letter does not provide a separate termination event for failure to approve the

ATF and Other Obligations.[8]  In the absence of a specific need to determine whether to approve

---

[6] The Debtors have failed to file critical documents relating to approval of the ATF.  First, the Debtors never filed the proposed order seeking approval of the Second Lien DIP and have yet to file a proposed order relating to approval of just the ATF.  The Indenture Trustee does not know what finding the Debtors are requesting with regard to approval of the ATF.  A proposed order is critically important here where the duration of the Debtors' obligation to pay the ATF is unclear.  Although the Debtors state that the ATF is payable only in the event the Debtors, *up to the funding of the Second Lien DIP*, enter into definitive documents for an alternative restructuring transaction (*see* Second Lien DIP Motion at ¶¶ 9(g), 45), there is no such limitation in the definition and trigger of the ATF in the Commitment Letter.  *See supra* note 4.  Second, the Debtors have not filed any declarations or statements explaining why the ATF needs to be approved now, in advance of the hearing on the Second Lien DIP.  Indeed, the Debtors have submitted essentially *no* evidence regarding the "necessity" of approving the ATF at this time.

[7] Termination of the Commitment Letter does give rise to termination rights.  *See* RSA § 8.02(d).

[8] To the contrary, the Commitment Letter expressly contemplates that the Initial Commitment Parties would be left unprotected up until the approval of the Second Lien Settlement and the Commitment Letter.  In discussing the

the ATF and Other Obligations now, the Court should hear the request as the parties originally negotiated it – as part of the Second Lien DIP.

10.    *Second*, the Alternative Transaction Fee and Other Obligations could chill negotiations on the Competing Second Lien DIP, thus depriving the estates of the potential savings that DIP offers.  Granting a $57 million break-up fee plus the undefined amount from the Other Obligations creates new administrative claims that must be satisfied before the estates can realize any savings from the Competing Second Lien DIP.  This could make negotiations with the proponents of the Competing Second Lien DIP prohibitively expensive and discourage the Debtors from continuing those negotiations.  At the May 22 hearing, the Debtors committed to negotiating in good faith regarding the Competing Second Lien DIP.  In seeking premature approval of the ATF (and saddling the estate with a $57 million administrative claim) and Other Obligations, in the absence of any contractual duty or legitimate basis for doing so, the Debtors appear to be abandoning that promise.  The Debtors cannot commit to negotiating over the Competing Second Lien DIP in good faith and simultaneously seek to approve the ATF and Other Obligations that will serve to chill those very negotiations.

11.    *Third*, even if the Court were inclined to hear the ATF now, there is no legal basis for granting it at this time.  Approval of a break-up fee is appropriate in the Third Circuit only if it meets the standard for allowance of administrative expenses under Section 503(b) of the Bankruptcy Code.  *See, e.g.*, *In re Reliant Energy Channelview LP*, 594 F.3d 200, 206 (3d Cir. 2010).  Determination of whether a break-up fee should be allowed under Section 503(b) rests on "the requesting party's ability to show that the fees were *actually necessary* to preserve the value of the estate."  *Id.* (citation omitted; emphasis added).  A fee may be

---

ATF, the Commitment Letter makes clear that its payment is "[s]ubject to entry of the Approval Order" – a term that is defined in section 3 of the RSA as the order approving the First Lien Settlement, the Second Lien Settlement, and the Commitment Letter.

necessary, for instance, if it induces a bid that otherwise would not have been made or where it is necessary to induce a bidder to adhere to its bid. *Id.* Fees that chill bidding are disfavored. *See id.* at 208; *Calpine Corp. v. O'Brien Envtl. Energy, Inc. (In re O'Brien Envtl. Energy, Inc.)*, 181 F.3d 527, 535 (3d Cir. 1991) (advantaging a favored purchaser by increasing cost of acquisition to other bidders is an "impermissible purpose" for a break-fee).

12.     Absent approval of the Second Lien DIP, the ATF and Other Obligations provides no value to the estate.  In fact, it detracts from its value.  As discussed above, granting the ATF and Other Obligations now does not incentivize the Initial Commitment Parties to remain committed to the DIP or RSA because they do not have the right to terminate until after the Court has determined whether or not to approve the Second Lien DIP.  Moreover, the Debtors have adduced no evidence that the ATF and Other Obligations were necessary to induce the Second Lien DIP.  And even if they were – which is highly unlikely in light of the Initial Commitment Parties' financial interests in this case[9] – it is certainly not the case that approval of the ATF and Other Obligations *on June 5* was necessary to induce the DIP, as there are no consequences under the governing agreements if it is not approved by that date.  Finally, approval of the ATF and Other Obligations would unnecessarily deter competition.  The Debtors are currently in negotiations over a Competing Second Lien DIP, and granting the ATF and Other Obligations now could chill those negotiations, eliminating the value that competition between DIP lenders provides to the estates by driving down costs.

---

[9] The Initial Commitment Parties are large EFIH unsecured creditors whose only way out of the case is through reorganization and who stand to gain an enormous amount in fees and a large portion of reorganized EFH's equity under the proposed Second Lien DIP.  It defies common sense to believe they would not have proposed such a self-serving DIP absent approval of an alternative transaction fee.

13.     For all these reasons, the Court should defer consideration of the ATF and

Other Obligations until June 30.  Alternatively, if the Court determines to hear the ATF on June

5, its approval should be denied.


Dated: May 29, 2014                        PACHULSKI STANG ZIEHL & JONES LLP

                                           _____/s/ Laura Davis Jones_____
                                           Laura Davis Jones
                                           (Bar No. 2436)
                                           Robert J. Feinstein
                                           (NY Bar No. RF-2836)
                                           919 N. Market Street, 17th Floor
                                           P.O. Box 8705
                                           Wilmington, DE  19899-8705 (Courier 19801)
                                           Telephone:  (302) 652-4100
                                           Facsimile:   (302) 652-4400
                                           Email: ljones@ pszjlaw.com
                                                   rfeinstein@ pszjlaw.com

                                                   - and -

                                           KRAMER  LEVIN  NAFTALIS  &  FRANKEL  LLP
                                           Thomas Moers Mayer
                                           Philip Bentley
                                           Joshua K. Brody
                                           Kramer Levin Naftalis & Frankel LLP
                                           1177 Avenue of the Americas
                                           New York, New York 10036
                                           Telephone:  (212) 715-9100
                                           Facsimile:   (212) 715-8000
                                           Email: tmayer@kramerlevin.com
                                                   pbentley@kramerlevin.com
                                                   jbrody@kramerlevin.com

DOCS_DE:193493.2 23731/001

*- and –*

BRYAN CAVE LLP
Stephanie Wickouski
1290 Avenue of the Americas
New York, New York 10104-3300
Tel: 212-541-1114
Fax: 212-904-0514
Email: stephanie.wickouski@bryancave.com

*Counsel to the Indenture Trustee*