**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Energy Future Holdings Corp., *et al.,*[1] | ) | Case No. 14-10979 (CSS) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | **Re: Docket Nos. 73, 325, and 598** |

**OBJECTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO THE MOTION OF TEXAS COMPETITIVE ELECTRIC HOLDINGS COMPANY LLC AND CERTAIN OF ITS DEBTOR AFFILIATES FOR ENTRY OF INTERIM AND FINAL ORDERS (A) APPROVING POSTPETITION FINANCING, (B) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS, (C) MODIFYING THE AUTOMATIC STAY, AND (D) SCHEDULING <u>A FINAL HEARING</u>**

---

[1]    The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810.  The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201.  Due to the large number of debtors in these chapter 11 cases, which are being jointly administered on an interim basis, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://efhcaseinfo.com.

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................................................... 1

BACKGROUND ........................................................................................................................... 4

ARGUMENT ................................................................................................................................. 5

    I.    THE PRINCIPAL AMOUNT OF THE DIP FACILITY IS EXCESSIVE, UNNECESSARY AND IMPROPERLY CONVERTS A PREPETITION OBLIGATION INTO POSTPETITION DEBT ..................................................... 5

    II.    THE DIP LENDERS SHOULD NOT RECEIVE DIP LIENS AND CLAIMS ON UNENCUMBERED ASSETS ......................................................... 7

    III.    OTHER PROVISIONS OF THE FINAL ORDER AND DIP CREDIT AGREEMENT ARE UNREASONABLE ........................................................ 10

CONCLUSION ............................................................................................................................. 12

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Buncher Co. v. Official Committee of Unsecured Creditors of GenFarm Ltd. Partnership IV*,
   229 F.3d 245 (3d Cir. 2000)................................................................................9

*In re Adams*,
   275 B.R. 274 (Bankr. N.D. Ill. 2002) ...............................................................8, 9

*In re Caccamise*,
   No. 09-17165-SSM, 2009 Bankr. LEXIS 4174 (Bankr. E.D. Va. Dec. 22, 2009)...................6

*In re Equalnet Communications Corp.*,
   258 B.R. 368 (Bankr. S.D. Tex. 2001) ...............................................................6

*In re Future Holdings Corp.*,
   No. 14-10979(CSS) (Bankr. D. Del. May 22, 2014) ...........................................2

*In re Innkeepers USA Trust*,
   Case No. 10-13800 (SC) (Bankr. S.D.N.Y. Sept. 2, 2010).....................................9

*Majestic Star Casino, LLC v. Barden Development, Inc. (In re The Majestic Star Casino, LLC)*,
   716 F.3d 736 (3d Cir. 2013)................................................................................9

*McCarthy v. Navistar Financial Corp. (In re Vogel Van & Storage, Inc.)*,
   210 B.R. 27 (N.D.N.Y. 1997), *aff'd*, 142 F.3d 571 (2d Cir. 1998) ...........................8

*Mellon Bank v. Glick (In re Integrated Testing Products Corp.)*,
   69 B.R. 901 (D.N.J. 1987) ..................................................................................9

*Official Committee Of Unsecured Creditors of Cybergenics Corp. v. Chinery*,
   226 F.3d 237 (3d Cir. 2000)................................................................................9

*Saybrook Manufacturing Co.*,
   963 F.2d 1490 (11th Cir. 1992) .........................................................................6

STATUTES

Chapter 5 of the Bankruptcy Code.................................................................................4

Chapter 11 of the Bankruptcy Code.................................................................. passim

Section 1102(a)(1) of the Bankruptcy Code .................................................................5

*The Official Committee of Unsecured Creditors (the "Committee") of Energy Future Holdings Corp., et al. (collectively, the "Debtors"), by and through its undersigned counsel, hereby files this objection ("Objection") to the Motion of Texas Competitive Electric Holdings Company LLC and Certain of its Debtor Affiliates for Entry of Interim and Final Orders (A) Approving Postpetition Financing, (B) Granting Liens and Providing Superpriority Administrative Expense Claims, (C) Modifying the Automatic Stay, and (D) Scheduling a Final Hearing [Docket No. 73] (the "Motion").  In support of the Objection, the Committee respectfully represents as follows:[2]*

## INTRODUCTION

1.      The Committee was formed on May 13, 2014 as a representative of the TCEH unsecured creditors.[3]  Since the date of its formation, the Committee's professionals[4] have been working closely with the Debtors' advisors and other parties in the case to understand the significant issues in these extraordinarily complex Chapter 11 cases.  Importantly, the Committee and its professionals intend to examine and test the assumptions that have yielded the inequitable and one-sided restructuring thesis embodied in the Restructuring Support Agreement (the "RSA")—a thesis that is manifestly detrimental to the interests of the TCEH unsecured creditors, apparently without factual support.  The RSA is premised on flawed assumptions as to value that are purely hypothetical, as evidenced at the venue hearing on May 22, 2014, which revealed that the Debtors have proposed their restructuring without having conducted any accepted valuation

---

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the proposed Final Order.

[3] The *Notice of Appointment of Committee of Unsecured Creditors* [Docket No. 420] reflects that the Committee represents the interests of the unsecured creditors only of Energy Future Competitive Holdings Company LLC ("EFCH"), TCEH, the direct and indirect subsidiaries of EFCH and TCEH, and EFH Corporate Services Company, and of no other debtors.

[4] The Committee has retained the following advisors: Morrison & Foerster LLP, as its lead counsel; Polsinelli PC, as its Delaware counsel; Lazard Freres & Co. LLC, as its investment banker; and FTI Consulting, Inc., as its financial advisors.

of the TCEH assets.[5]  Thus, the valuation premise that purports to relegate the TCEH unsecured creditors to inferior and prejudicial  treatment under the RSA is not just suspect, it is entirely unsupported.

2.      In light of the TCEH Debtors' unsupported value position and the fact that the RSA leaves the TCEH unsecured creditors with practically nothing, the Committee objects to the Motion to the extent it seeks authority for the TCEH Debtors[6] to incur billions of dollars in debt, collateralized by assets that currently are unencumbered, simply to transfer excessive sums to the Prepetition First Lien Creditors as purported "adequate protection" payments to the potential detriment of TCEH unsecured creditors.   Unless the proposed *Final Order (A) Approving Postpetition Financing for Texas Competitive Electric Holdings Company LLC and Certain of Its Debtor Affiliates, (B) Granting Liens and Providing Superpriority Administrative Expense Claims, and (C) Modifying the Automatic Stay* [Docket No. 598] (the "Final Order") is modified in the manner described in this Objection, the Motion should not be granted.

3.      First, the TCEH Debtors propose to enter into the DIP Facility (as defined below) in the aggregate amount of $4.475 billion—an amount that appears to be vastly oversized in light of the TCEH Debtors' ordinary course operating and chapter 11 expenses.  As reflected in the DIP Budget,[7] aside from replacing existing letters of creditors or other bonding requirements, the primary use of the DIP Facility is for the TCEH Debtors to make monthly adequate protection

---

[5] *See* Transcript of Hearing at 129:13-18, *In re Future Holdings Corp.*, No. 14-10979(CSS) (Bankr. D. Del. May 22, 2014) (the "May 22, 2014 Trans."), the relevant portions of which are annexed hereto as Exhibit A.

[6] The "TCEH Debtors" include Texas Competitive Electric Holdings Company LLC and Energy Future Competitive Holdings Company LLC and each of the Subsidiary Guarantors (as defined in the Motion).

[7] See DIP Budget, a copy of which is annexed as Exhibit C to the *Motion of Texas Competitive Electric Holdings Company LLC and Certain of its Debtor Affiliates, for Entry of Interim and Final Orders (A) Approving Postpetition Financing, (B) Granting Liens and Providing Superpriority Administrative Expense Claims, (C) Modifying the Automatic Stay, and (D) Scheduling a Final Hearing* [Docket No. 73].

payments to the Prepetition First Lien Creditors[8] consisting of interest plus professionals' fees and expenses, which would result in payments of approximately $105-137 million per month for the entirety of these chapter 11 cases.  Assuming the case continues through the entire 25-month period covered by the DIP Budget, this would result in aggregate adequate protection payments of nearly $3 billion.  If the TCEH Debtors do not make these adequate protection payments, they will not need a DIP Facility of the magnitude proposed.  For the reasons described below and in the Committee's *Objection to the Motion of Texas Competitive Electric Holdings Company LLC and Certain of its Debtor Affiliates for Entry of Interim and Final Orders (A) Authorizing Use of Cash Collateral, (B) Granting Adequate Protection, (C) Modifying the Automatic Stay, and (D) Scheduling a Final Hearing* (the "Cash Collateral Objection," the related motion, the "Cash Collateral Motion," and the proposed final order, the "Cash Collateral Final Order"), the TCEH Debtors should not be authorized to provide the Prepetition First Lien Creditors with these adequate protection payments and the size of the DIP Facility should be correspondingly reduced.

4.     As set forth in the Cash Collateral Objection, there is no evidence that the Prepetition Collateral is declining in value.  As a result, the adequate protection payments serve no purpose other than to satisfy a prepetition claim of the Prepetition First Lien Creditors (either principal or interest claims, depending on whether the Prepetition First Lien Creditors are ultimately oversecured).  But by borrowing postpetition funds to satisfy prepetition claims, the TCEH Debtors would significantly hamper their restructuring alternatives.  Because there is no reason to do so here, the size of the DIP Facility should be reduced to reflect the TCEH Debtors' actual cash needs.

---

[8] The Prepetition First Lien Creditors include Prepetition First Lien Creditors and the Prepetition Second Lien Creditors, each as defined in the Final Order.

5.      <u>Second</u>, as part of the DIP Facility, the TCEH Debtors propose to grant liens and superpriority claims (the "<u>DIP Liens and Claims</u>") to the DIP Agent, for the benefit of itself, its sub-agents, the DIP Lenders, the DIP L/C Issuers, the Secured Hedge Banks, and the Secured Cash Management Banks (each as defined in the Final Order, and collectively referred to herein as the "<u>DIP Lenders</u>") on substantially all of their assets—including the TCEH Debtors' limited pool of unencumbered assets, which includes the proceeds of avoidance actions brought under chapter 5 of the Bankruptcy Code (the "<u>Avoidance Actions</u>", and together with the TCEH Debtors' other unencumbered assets, the "<u>Unencumbered Assets</u>").  The TCEH Debtors' grant of the DIP Liens and Claims on Unencumbered Assets is particularly egregious here in light of the fact that substantially all of the TCEH Debtors' other assets are already encumbered, and these limited Unencumbered Assets are proposed to be the only assets available to unsecured creditors under the Restructuring Support Agreement (the "<u>RSA</u>").[9]

6.      Finally, certain other provisions of the proposed Final Order and DIP Credit Agreement are unreasonable and should be modified as described in Section III. below.

## BACKGROUND

7.      On April 29, 2014 (the "<u>Petition Date</u>"), the Debtors filed voluntary petitions for reorganization under Chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court, District of Delaware.  On May 1, 2014, the Court entered an interim order directing joint administration of the Debtors' cases under Case Number 14-10979 [Docket No. 287] and

---

[9] The RSA reflects that holders of General Unsecured Claims against the TCEH Debtors are expected to receive under a plan of reorganization their pro rata share of the "TCEH Unsecured Claim Fund."  Pursuant to the Pre-Submission Memo, a copy of which was annexed as part of Exhibit D to the *Declaration of Paul Keglevic, Executive Vice President, Chief Financial Officer, and Co-Chief Restructuring Officer of Energy Future Holdings Corp., et al., in Support of First Day Motions* [Docket No. 98] (the "<u>First Day Declaration</u>"), the General Unsecured Claims against the TCEH Debtors have a face amount of approximately $7.7 billion, and it is expected that such creditors will receive a recovery of less than $350 million in cash, which amount has apparently been reduced to approximately $175 million as a result of the Debtors' prepetition use of unencumbered cash.

4

scheduled a further hearing on the matter for June 5, 2014 at 9:30 a.m. (Eastern).  No trustee or examiner has been appointed in these cases.

8.     On May 13, 2014, the United States Trustee for the District of Delaware appointed a seven (7) member Committee pursuant to section 1102(a)(1) of the Bankruptcy Code [Docket No. 420].[10]

9.     On the Petition Date, the Debtors filed the Motion, seeking authority to, among other things, execute a debtor-in-possession credit agreement (the "DIP Credit Agreement") providing for postpetition financing in the aggregate principal amount of $4.475 billion (the "DIP Facility").

10.     On May 2, 2013, the Bankruptcy Court filed the *Interim Order (A) Approving Postpetition Financing for Texas Competitive Electric Holdings Company LLC and Certain of Its Debtor Affiliates, (B) Granting Liens and Providing Superpriority Administrative Expense Claims, (C) Modifying the Automatic Stay, and (D) Scheduling a Final Hearing* [Docket No. 325] (the "Interim Order").  A final hearing with respect to the Motion is scheduled for June 5, 2014 at 9:30 a.m. (Eastern Time).

## ARGUMENT

### I.     THE PRINCIPAL AMOUNT OF THE DIP FACILITY IS EXCESSIVE, UNNECESSARY AND IMPROPERLY CONVERTS A PREPETITION OBLIGATION INTO POSTPETITION DEBT

11.     By the Motion, the TCEH Debtors seek to borrow an aggregate principal amount of $4.475 billion under the DIP Facility.  Aside from providing liquidity for replacement letter of credit facilities, the primary use of the DIP Facility is to make the proposed adequate protection

---

[10] The Committee members include: (i) Pension Benefit Guaranty Corporation; (ii) HCL America, Inc.; (iii) The Bank of New York Mellon; (iv) Law Debenture Trust Company of New York; (v) Holt Texas LTD, d/b/a Holt Cat; (vi) ADA Carbon Solutions (Red River); and (vii) Wilmington Savings Fund Society.

ny-1144304

payments to the Prepetition First Lien Creditors, which are the subject of the Cash Collateral Motion currently pending before the Court.

12.    As noted above, the proposed adequate protection payments consist of interest plus professionals' fees and expenses in the amount of approximately $105-137 million per month.  However, as discussed in detail in the Cash Collateral Objection, the TCEH Debtors are not required to provide the Prepetition First Lien Creditors with adequate protection payments because (i) there is no evidence whatsoever that the Prepetition Collateral is declining in value, (ii) the TCEH Debtors' post-petition use of cash collateral to fund working capital needs and for other corporate purposes will almost certainly enhance the value of the Prepetition Collateral, and (iii) most significantly, the proposed Adequate Protection Payments do not actually provide the Prepetition First Lien Lenders with any additional adequate protection because borrowing a dollar of senior debt, simply to pay these funds over to the prepetition (now junior) lenders leaves the prepetition lenders in precisely the same situation with respect to their collateral coverage.

13.    In addition, the TCEH Debtors' proposed "adequate protection" payments of DIP Facility proceeds to the Prepetition First Lien Creditors effectively functions as a roll of up the prepetition debt—the DIP Facility is being used to satisfy the prepetition claims of the Prepetition First Lien Creditors.  Roll ups that grant liens on additional collateral or provide for current payment of undersecured prepetition debt are generally disfavored.  *See In re Caccamise*, No. 09-17165-SSM, 2009 Bankr. LEXIS 4174 (Bankr. E.D. Va. Dec. 22, 2009) (acknowledging that roll up provisions generally are not favored); *In re Equalnet Commc'ns Corp.*, 258 B.R. 368, 369 (Bankr. S.D. Tex. 2001) ("based on the Eleventh Circuit's ruling in the case of *Saybrook Mfg. Co.*, 963 F.2d 1490 (11th Cir. 1992), a secured creditor's prepetition debt balance may not be paid off and/or 'rolled into' a postpetition line of debtor-in-possession financing, with

6

resultant enhancement of collateral position and administrative priority."). Thus, where, as here, the RSA is premised on the notion that the Prepetition First Lien Creditors are undersecured,[11] the TCEH Debtors should not be permitted to borrow funds under the DIP Facility to make postpetition payments to the Prepetition First Lien Creditors on account of their prepetition claims.

## II.    THE DIP LENDERS SHOULD NOT RECEIVE DIP LIENS AND CLAIMS ON UNENCUMBERED ASSETS

14.    The Final Order should not grant the DIP Liens and Claims on the Unencumbered Assets (which include the proceeds of Avoidance Actions) because the DIP Facility is already vastly oversecured by the DIP Claims and Liens on Prepetition Collateral. *See* Goldstein Declaration, ¶ 18 ("relative to the value of the TCEH Debtors' businesses, the DIP Financing is significantly overcollateralized") [Docket No. 71, Exhibit B]. Specifically, the $4.475 billion DIP Facility is secured by a priming lien on the same assets that secure the approximately $24 billion in First Lien Debt. While no valuation has been completed here yet, other parties in the case have suggested that the First Lien Debt is oversecured.[12] Regardless of the ultimate valuation on the Prepetition Collateral, there appears to be little question that the priming lien

---

[11] The RSA reflects that, under the proposed plan of reorganization, the holders of "TCEH First Lien Secured Claims" will receive their "Pro Rata share of: (i) 100% of the Reorganized TCEH Common Stock, subject to dilution only from the Reorganized TCEH Management Incentive Plan; and (ii) 100% of the net cash proceeds from the issuance of the New Reorganized TCEH Debt." [Docket No. 98, Ex. D]. Further, each class junior to the TCEH First Lien Secured Claims will receive recoveries from the "TCEH Unsecured Claim Fund," or reinstated debt that may be canceled by agreement of the parties. At this point in time, the Committee has not yet had the opportunity to independently value the Prepetition Collateral, and the Committee reserves all right to do so. *See* Trans. May 22, 2014 at 129:13-18.

[12] *See Motion of Wilmington Savings Fund Society, FSB for Leave to Conduct Discovery Pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure of Energy Future Holdings Corporation, its Affiliates, and Certain Third Parties* [Docket No. 6], at ¶ 5 (referring to the "artificially depressed valuation" in the RSA and noting that certain adjustments implied by management's own projections would reflect "an enterprise value range that may exceed the claims of the Senior Lenders and extend meaningfully into the Second Liens [and a]ccounting for other value enhancers (e.g., right-sizing the Debtors' overhead cost structure and recovery of lost retail market share) would only increase the Second Liens' value entitlement.")

7

provides more than enough collateral coverage to satisfy any legitimate concerns of the DIP Lenders and there is no reason for the DIP Facility to encumber the Unencumbered Assets.

15.     While the Committee has not yet had the opportunity to investigate potential Avoidance Actions and the Debtors have not yet filed their schedules of assets and liabilities or statements of financial affairs, it appears, based on the Debtors' pleadings to date, that, other than the approximately $150 million in Segregated Cash (as defined in the Motion), some miscellaneous real estate and motor vehicles, substantially all of the TCEH Debtors' assets are encumbered, and Avoidance Actions may be one of the few assets available to unsecured creditors.    The TCEH Debtors' proposal to grant the DIP Liens and Claims on the Unencumbered Assets puts even the de minimis recoveries offered to unsecured creditors under the RSA precariously at risk.    Thus, to the extent any viable Avoidance Actions or other commercial tort claims (which are likewise unencumbered) exist, if the Motion is granted, the value of such assets (along with the Unencumbered Assets) could inequitably shift from the Debtors' general unsecured creditors to the DIP Lenders, which are already substantially oversecured.

16.     Absent exigent circumstances or consent, avoidance actions should not be burdened by liens or super-priority lender claims.

> Courts have refused to allow assignment or sale of avoidance claims by the Trustee because such transfers would run contrary to two primary policies underlying the Bankruptcy Code.  First, the Code allows only the trustee or debtor-in-possession to sue on a preference because only that trustee or debtor-in-possession represents the interests of all creditors in maximizing the value of the debtor's estate. . . . Second, permitting trustees alone to sue on a preference 'facilitate[s] the prime bankruptcy policy of equality...

*McCarthy v. Navistar Fin. Corp.* (*In re Vogel Van & Storage, Inc.*), 210 B.R. 27, 33 (N.D.N.Y. 1997), *aff'd*, 142 F.3d 571 (2d Cir. 1998) (citations omitted); *In re Adams*, 275 B.R. 274, 283

(Bankr. N.D. Ill. 2002) ("[T]he grant of a superpriority claim to a pre-petition secured creditor violates the Code's policy of equality of distribution, particularly where there is no showing that such a grant will benefit the debtors' bankruptcy estate."). *See also* Transcript of Hearing at 14:22-15:4, *In re Innkeepers USA Trust*, Case No. 10-13800 (SC) (Bankr. S.D.N.Y. Sept. 2, 2010) (the relevant portions of which are annexed hereto as Exhibit B) ("Regarding the committee's objection to the granting of superpriority claims with respect to avoidance actions or the proceeds thereof, I agree with the committee's position and decline to grant the superpriority claims. Even though their [re]quest for liens on the avoidance actions was withdrawn, I believe the committee's objection should be sustained as the withdrawal of the request for liens gives relatively empty protection if the superpriority claims still remain."); *Mellon Bank v. Glick (In re Integrated Testing Prods. Corp.)*, 69 B.R. 901 (D.N.J. 1987) ("It is well settled that generally it is the trustee alone, acting on behalf of all the creditors, that has a right to recover payments made as preferences. And this right cannot be assigned.") (citations omitted); *Buncher Co. v. Official Comm. of Unsecured Creditors of GenFarm Ltd. Partnership IV*, 229 F.3d 245, 250 (3d Cir. 2000) ("The purpose of fraudulent conveyance law is to make available to creditors those assets of the debtor that are rightfully part of the bankruptcy estate, even if they have been transferred away.") (citations omitted); *Majestic Star Casino, LLC v. Barden Dev., Inc. (In re The Majestic Star Casino, LLC)*, 716 F.3d 736, 761 n.26 (3d Cir. 2013) ("A debtor is not entitled to benefit from any avoidance, … and 'courts have limited a debtor's exercise of avoidance powers to circumstances in which such actions would in fact benefit the creditors, not the debtors themselves,'") (citing *Official Comm. Of Unsecured Creditors of Cybergenics Corp. v. Chinery*, 226 F.3d 237, 244 (3d Cir. 2000)).

17.     It appears evident from the proposed restructuring set forth in the RSA that the TCEH Debtors are running these chapter 11 cases primarily for the benefit of the secured

9

creditors.  Unsecured creditors holding a face amount of approximately $7.7 billion in debt are expected to receive a recovery of less than $350 million in cash (which amount the Committee believes may have been reduced to approximately $175 million following the TCEH Debtors' use of certain unencumbered cash prepetition), and the Unencumbered Assets, including the proceeds of Avoidance Actions, may be the only source of recovery for unsecured creditors.  As a result, the TCEH Debtors should not be permitted to dissipate these critical assets by granting the DIP Liens and Claims on Unencumbered Assets, particularly where the DIP Lenders will be significantly oversecured without such liens and claims.[13]

### III.    OTHER PROVISIONS OF THE FINAL ORDER AND DIP CREDIT AGREEMENT ARE UNREASONABLE

18.    In addition to the objectionable provisions of the Final Order noted above, the Committee believes that certain other provisions must be modified in the Final Order and DIP Credit Agreement to clarify the parties' rights.  A copy of the Final Order reflecting the Committee's proposed revisions is annexed hereto as Exhibit C, and a copy of the changed pages to the TCEH DIP Credit Agreement reflecting the Committee's proposed revisions are annexed as Exhibit D.  Some of these proposed changes are highlighted below for the Court:

- Removal of Limitations on Use of Cash Collateral.  Any limitations on the TCEH Debtors' use of cash collateral should be only in the Cash Collateral Final Order, if at all, and the Committee's objections to those limitations are addressed in the Cash Collateral Objection.

- Budget and Annual Forecast Reporting.  Paragraphs 12 and 24 should be revised to provide that the Committee is an additional recipient of the budgets, reports, and forecasts, and is also permitted reasonable access to the TCEH Debtors' books and records.

- Rights and Remedies upon Event of Default.  In light of the magnitude of these

---

[13] To the extent the Court overrules the Committee's objection and determines that the DIP Lenders should receive a lien on the Unencumbered Assets and/or Avoidance Actions, the Committee submits that paragraph 31, which provides that the DIP Lenders are not subject to the equitable doctrine of "marshaling", should be deleted, and additional language should be included to protect the unsecured creditors' interests in these assets.

ny-1144304

cases and the importance of the TCEH Debtors' operations to the people of Texas, paragraph 20 of the Final Order, which addresses the DIP Lenders' rights and remedies upon an Event of Default, should be revised to (i) extend the Remedies Notice Period to ten (10) business days, (ii) require the DIP Lenders to provide notice of any such default to counsel to the Committee, and (iii) allow the TCEH Debtors to file a motion with the Court seeking approval of replacement financing following the conclusion of the Remedies Notice Period.

- <u>Releases</u>.  Paragraph 28 of the Final Order should be revised to clarify that the release of the DIP Agent, the DIP Lenders, the DIP L/C Issuers, the Joint Lead Arrangers, and various other parties (i) relates solely to claims arising in connection with the DIP Facility and related financing transactions, and (ii) has no impact on the claims or causes of action the Committee may bring (a) pursuant to the challenge rights granted under the Cash Collateral Final Order or (b) for the prepetition conduct of any party not related to the DIP Facility.

- <u>Amendments to the DIP Documents</u>.  Paragraph 11 should be revised to provide the Committee with (i) notice of any modification or amendment to the DIP Documents, and (ii) an objection deadline of five (5) business days following a notice of any non-material modification or amendment and an objection deadline of ten (10) business days following a notice of any material modification or amendment.

- <u>Acceptable Reorganization Plan</u>.  The definition of "Acceptable Reorganization Plan" in the DIP Credit Agreement appears to be unduly restrictive, and should be revised to remove the requirement that the plan be in form and substance consistent in all material respects with the terms of the RSA and reasonably satisfactory in its entirety to the Administrative Agent.  Rather, any plan that pays the DIP Lenders in full should be an Acceptable Reorganization Plan.

- <u>Disclosure Statement</u>.  The definition of "Disclosure Statement" in the DIP Credit Agreement should be revised to remove the requirement that the disclosure statement be in form and substance consistent in all material respects with the terms of the RSA and reasonably satisfactory in its entirety to the Administrative Agent.

- <u>Assignments</u>.  Section 13.6 of the DIP Credit Agreement should be revised to provide that the DIP Lenders may not assign its rights and obligations under the DIP Facility to the Borrower or any Subsidiary or Affiliate of the Borrower.

- <u>Bankruptcy Matters</u>.  Section 9.15(e) of the DIP Credit Agreement, which provides that TCEH shall contest, if requested by the Administrative Agent, any motion seeking entry of an order that is materially adverse to the interests of the Administrative Agent or the DIP Lenders or their respective material rights and remedies under the DIP Documents, should be deleted or modified because it is unreasonably broad and potentially inconsistent with the Debtors' fiduciary duties.

- <u>Events of Default</u>.  Certain of the Events of Default identified in Section 11 of the DIP Credit Agreement should be revised to (i) have certain defaults apply only to restricted subsidiaries, (ii) provide for the allowance of cure periods, and (iii) allow the Administrative Agent, in its sole discretion, to waive the event of default relating to termination of the use of cash collateral.

## CONCLUSION

19.     The Committee has been in discussions with the Debtors and the DIP Lenders and is hopeful that they can agree to modifications that address some or all of the concerns identified above.   However, in the event that the Debtors and the DIP Lenders are unwilling to make acceptable modifications, the Committee respectfully requests that the Court condition approval of the Motion on changes being made to the proposed Final Order as set forth herein.

WHEREFORE, the Committee respectfully requests that the Court: (a) deny the Motion; (b) modify the proposed Final Order as set forth herein, or (c) grant such other and further relief as the Court may deem just and proper.

*(Remainder of Page Intentionally Left Blank)*

ny-1144304

Dated: Wilmington, Delaware
May 29, 2014

**MORRISON & FOERSTER LLP**
James M. Peck
Brett H. Miller
Lorenzo Marinuzzi
Todd M. Goren
Samantha Martin
250 West 55th Street
New York, New York 10019-9601
Telephone:  (212) 468-8000
Facsimile:  (212) 468-7900
E-mail:  jpeck@mofo.com
        brettmiller@mofo.com
        lmarinuzzi@mofo.com
        tgoren@mofo.com
        smartin@mofo.com

        -and-

*/s/ Christopher A. Ward*
Christopher A. Ward (Del. Bar No. 3877)
Justin K. Edelson (Del. Bar No. 5002)
Shanti M. Katona (Del. Bar No. 5352)
**POLSINELLI PC**
222 Delaware Avenue, Suite 1101
Wilmington, Delaware 19801
Telephone: (302) 252-0920
Facsimile:  (302) 252-0921
E-mail:  cward@polsinelli.com
        jedelson@polsinelli.com
        skatona@polsinelli.com

*Proposed Counsel for The Official
Committee of Unsecured Creditors of
Energy Future Holdings Corp., et al.*

13