**<u>Exhibit B</u>**

```
                                                         Page 1
 1
 2  UNITED STATES BANKRUPTCY COURT
 3  SOUTHERN DISTRICT OF NEW YORK
 4  Case No. 10-13800 (SCC)
 5  - - - - - - - - - - - - - - - - - - - - - -x
 6  In the Matter of:
 7
 8  INNKEEPERS USA TRUST, ET AL,
 9
10             Debtor.
11
12  - - - - - - - - - - - - - - - - - - - - - -x
13
14                United States Bankruptcy Court
15                One Bowling Green
16                New York, New York
17
18                September 2, 2010
19                4:04 PM
20
21  B E F O R E:
22  HON. SHELLEY C. CHAPMAN
23  U.S. BANKRUPTCY JUDGE
24
25
```

Page 14

1  delta of some three million dollars between their two bottom
2  lines.  Here I refer directly to Exhibit A to the Cook 2
3  declaration.  To the extent that the nonfloating rate objectors
4  are concerned that the CAPEX number is too low, I must defer to
5  the debtors' business judgment that the expenditure of the 1.5
6  percent will be adequate to maintain the properties and, more
7  importantly, that even if more must be spent if, for example,
8  an unanticipated emergency occurs at one of the properties,
9  they will do so to protect the value of the properties.  In
10 other words, the tail must not wag the dog.  The need to avoid
11 intertranche borrowings must not result in impairment of the
12 physical collateral.
13         With respect to professional fees, while it is
14 certainly the case that holdbacks are generally paid and
15 released with some regularity, it is certainly not written in
16 stone whether and when the full twenty percent holdback gets
17 released.  We have some control over that and given that such
18 fees are the largest item in the Greenspan vs. Cook
19 controversy, I believe we can manage around that issue to
20 ensure that professional fees in and of themselves do not
21 precipitate intertranche borrowing if at all possible.
22         Regarding the committee's objection to the granting of
23 superpriority claims with respect to avoidance actions or the
24 proceeds thereof, I agree with the committee's position and
25 decline to grant the superpriority claims.  Even though their

1  quest for liens on the avoidance actions was withdrawn, I
2  believe the committee's objection should be sustained as the
3  withdrawal of the request for liens gives relatively empty
4  protection if the superpriority claims still remain.
5           In sum, I believe the multiple layers and types of
6  reporting that the debtors have built into the system
7  constitute sufficient adequate protection under the
8  circumstances and I decline to modify the proposed protocol and
9  impose additional burdens and costs on the debtors at this
10 point in their Chapter 11 cases.  I find that the debtors have
11 sustained their burden to demonstrate that the consolidated
12 cash management system and proposed adequate protection scheme
13 are an appropriate exercise of their business judgment and that
14 the lenders whose cash collateral is being used are adequately
15 protected as contemplated by the Bankruptcy Code.
16          Should Midland, LNR or any of the other objectors
17 encounter a specific problem with reporting or any other aspect
18 of the proposed adequate protection that cannot be resolved
19 between the parties, such party has the right to come to this
20 court and seek immediate relief -- someone's shuffling papers,
21 so I hope you all heard that.
22          All right.  Mr. Carmel?
23          MR. CARMEL:  Yes, Your Honor?
24          THE COURT:  All right.  That's all I have.  I have
25 reviewed the order and other than the point with respect to the