**Exhibit A**

```
                                                              Page 1
 1   UNITED STATES BANKRUPTCY COURT
 2   DISTRICT OF DELAWARE
 3
 4
 5   In re:                       :
                                  :    Chapter 11
 6   ENERGY FUTURE HOLDINGS       :
     CORP., et al.,               :    Case No. 14-10979(CSS)
 7                                :
              Debtors.            :    (Jointly Administration
 8   _____ :    Requested)
 9
10                                     United States Bankruptcy Court
11                                     824 North Market Street
12                                     Wilmington, Delaware
13                                     May 22, 2014
14                                     9:35 AM
15
16
17   B E F O R E :
18   HON CHRISTOPHER S. SONTCHI
19   U.S. BANKRUPTCY JUDGE
20
21
22
23
24   ECR OPERATOR:  LESLIE MURIN
25
```

1    are in Texas, none of which are in Delaware, the refrain is,

2    well, this is a balance sheet restructuring, not an

3    operational restructuring, so we needn't be concerned with

4    parties in Texas because they'll be unaffected.

5            But the debtors' obligation, Your Honor, is to

6    maximize value, and as a consequence many of the foregoing

7    parties, that is employees, customers, trade creditors,

8    counterparties, regulators, many of those parties are going

9    to have to appear and be heard somewhere.

10           For example, Your Honor, contract counterparties

11   will need to address either a cure amount if there's an

12   assumption or rejection damages claims.  Employees will need

13   to deal with the debtors' treatment of collective bargaining

14   agreements.

15           Your Honor, the debtors' list of 50 largest

16   creditors -- and you'll hear this from Ms. Dore, not from

17   me, you can take it from the witness -- the debtors' list of

18   50 largest unsecured creditors, 40 percent of whom are in

19   Texas, indicates every single creditors claim is

20   unliquidated.  Why should those creditors be put -- the

21   Texas creditors that is -- be put to the time and the

22   expense of coming to Delaware to get their claim

23   straightened out?

24           Contract that, Your Honor, against the debtors'

25   private equity owners and first lien and other hedge fund

1  was in New York and I believe I got back on Saturday but I
2  took a day or two off but had been previously there the week
3  before.
4  Q    For you and the work that you do at the debtors it
5  would be easier for you if the debtors' bankruptcy cases
6  were lodged in Dallas, Texas, correct?
7  A    Personally if I consider my own situation and my own
8  job, because primarily of the lack of travel I guess I would
9  say yes.
10 Q    David Ying and his team and Evercore act as the
11 debtors' financial advisors, correct?
12 A    Correct.
13 Q    Has Evercore undertaken a valuation of the debtors'
14 business?
15 A    You'd have to ask Mr. Ying, but I've not seen any
16 valuation report from Mr. Ying or his firm.
17 Q    Do you know whether Evercore has done a valuation?
18 A    I don't believe they have.
19 Q    Okay.  Did you or anyone else at the debtors consider
20 whether it would be appropriate to have Mr. Ying do a
21 valuation before entering into the RSA?
22           MR. MCGAAN:  Object, Your Honor, as to relevance.
23           MR. JONAS:  Relevance, counsel?  Your Honor, I'm
24 going to get to Evercore and the valuation work they did,
25 which I think a lot of it was done in -- not the valuation

Page 147

1  Q    Ms. Dore testified earlier today that this was in her
2  view a balance sheet restructuring.  Did you hear that
3  testimony?
4  A    I sure did.
5  Q    Does that have meaning to you?
6  A    Yes.
7  Q    Do you agree with her observation, number one?
8  A    Yes, I think what we're dealing with here is the
9  inability to service too large a debtor, too high a price,
10 and as a result have negative cash flow which brought the
11 company to a position where it could no longer operate
12 because we were running out of cash and we need to reduce
13 the amount of the debt, reduce the rate of the debt, and if
14 operations remain exactly as they are today we will have a
15 profitable healthy company going forward.
16 Q    As a result of that, Mr. Keglevic, are the debtors
17 seeking to rehabilitate, reorganize, alter in any material
18 way its operations on the ground in Texas in these cases?
19 A    No, and in fact it's been as -- as I said, a big
20 priority of managements and something that the regulators
21 through the attorney general and the PUC and ERCOT wanted to
22 make absolutely sure that those disruptions did not occur,
23 and I can similarly add the NRC and the EPA and any of the
24 other regulatory bodies that we talked about or that you
25 heard about in Ms. Dore's testimony.