IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re | ) ) | Chapter 11 |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) ) ) | Case No. 14-10979 (CSS) |
| Debtors. | ) ) | (Jointly Administered) |
|  | ) ) ) ) | Re: Docket No. 468<br>Objection Deadline: May 29, 2014 at 4:00 p.m.<br>Hearing Date and Time: June 5, 2014 at 9:30 a.m. |

**LIMITED OBJECTION OF THE AD HOC GROUP
OF TCEH UNSECURED NOTEHOLDERS TO THE MOTION OF ENERGY
FUTURE HOLDINGS CORP., *ET AL.*, FOR ENTRY OF AN ORDER
AUTHORIZING THE DEBTORS TO (A) PAY CERTAIN PREPETITION
AMOUNTS ON ACCOUNT OF NON-INSIDER COMPENSATION PROGRAMS
AND (B) CONTINUE THE NON-INSIDER COMPENSATION PROGRAMS IN
THE ORDINARY COURSE OF BUSINESS ON A POSTPETITION BASIS**

The ad hoc group of certain holders (the "Ad Hoc Group of TCEH Unsecured Noteholders") of approximately $2.7 billion aggregate principal amount of 10.25% Fixed Senior Notes due 2015 (including Series B) and 10.50%/11.25% Senior Toggle Notes due 2016 issued by Texas Competitive Electric Holdings Company LLC ("TCEH") and TCEH Finance, Inc., by and through its undersigned counsel, hereby files its limited objection (the "Objection") to the Motion of Energy Future Holdings Corp., *et al.*, for Entry of an Order Authorizing the Debtors to (A) Pay Certain Prepetition Amounts on Account of Non-Insider Compensation Programs and (B) Continue the Non-Insider Compensation Programs in the Ordinary Course of Business on a Postpetition Basis [Docket No. 468] (the "Motion") filed by the above-captioned debtors (the

---

[1]    The last four digits of Energy Future Holdings Corp.'s federal tax identification number are 8810.  The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201.  Due to the large number of debtors in these chapter 11 cases, for which the debtors have requested joint administration, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

"Debtors"). In support of the Objection, the Ad Hoc Group of TCEH Unsecured Noteholders respectfully represents as follows:

## LIMITED OBJECTION

1. By the Motion, "the Debtors" seek authorization to (i) pay prepetition amounts owed on account of certain Non-Insider Compensation Programs[2] and (ii) continue such Non-Insider Compensation Programs in the ordinary course of business on a postpetition basis.[3] Motion ¶ 4. Although the Motion states that compensation programs for "insiders" will be the subject of a separate motion, see id. at n.2, and repeatedly asserts that none of the Non-Insider Compensation Programs provide for payment to individuals who qualify as "insiders" of the Debtors, see, e.g., id. at ¶¶ 1, 11, it appears that certain of the compensation programs are either retention programs that may cover insiders or are potentially disguised retention plans that cover insiders. By this Objection, the Ad Hoc Group of TCEH Unsecured Noteholders objects to the Motion to the extent the Debtors are seeking approval of compensation programs that are insider retention plans as the Debtors have failed to satisfy the requirements of section 503(c) of the Bankruptcy Code.

**I.      The EAIP**

2. The Debtors seek authority to continue their Executive Annual Incentive Plan (the "EAIP") in the ordinary course of business on a postpetition basis, which the Debtors estimate will have an annual cost of approximately $6.7 million for the year 2014. Id. at ¶ 17, Ex. B. According to the Motion, the EAIP is a compensation plan for employees "at or above

---

[2]      Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

[3]      Because (i) the Motion makes no distinction as to which of the "the Debtors'" employees participate in each Non-Insider Compensation Program (other than the Luminant Developer Initiative Plan and the Luminant Commercial Incentive Plan), and (ii) the amounts sought to be paid with respect to those Non-Insider Compensation Programs may be paid either directly or by operation of allocations of overhead to TCEH or its operating subsidiaries that are Debtors, this Objection addresses the relief sought as to all of "the Debtors."

the level of Vice President." See id. at ¶ 16.  The Debtors further represent that approximately fifty-three of the Debtors' employees participate in the EIAP as either Vice Presidents or Senior Vice Presidents.  Id.  Although the Debtors repeatedly maintain that such employees are non-insiders, the plain language of the Bankruptcy Code and previous rulings of this Court indicate these individuals are presumptively insiders of the Debtors.

3. Section 101(31) of the Bankruptcy Code provides that the term "insider" includes, among other things, a "director," "officer" or "person in control" of the debtor.  11 U.S.C. § 101(31).  Although the term "officer" is not defined in the Bankruptcy Code, the case law in this District has found that an employee is an officer if he or she takes part in the management of the debtor.  See In re Foothills Texas, Inc., 408 B.R. 573, 575-76 (Bankr. D. Del. 2009).  More specifically, this Court has ruled that "a vice president is an officer" and that "[a] person holding an officer's title is presumptively an officer and, thus, an insider."  Id. at 574; see also Tr. of Proceedings at 108-09, In re Am. Home Mortg. Holdings, Case No. 07-11047 (CSS) (Bankr. D. Del. Aug. 7, 2007) (finding employees with titles of "vice president, senior vice president, assistance vice president, et cetera" to be "insiders" under the Bankruptcy Code by virtue of their titles).  This Court has further established that "[a] party seeking to rebut that presumption must present evidence sufficient to establish that the person holds the title of an officer in name only and, in fact, does not meet the substantive definition of the same, i.e., he or she is not taking part in the management of the debtor."  In re Foothills, 408 B.R. at 574-75.

4. The Debtors have not presented evidence to rebut the presumption that the Vice Presidents and Senior Vice Presidents, who are presumptively considered officers of the Debtors, are not in fact "officers" and, thus, "insiders" for Bankruptcy Code purposes.  In the Declaration of Paul Keglevic, Executive Vice President, Chief Financial Officer, and Co-Chief

Restructuring Officer of Energy Future Holdings Corp., *et al.*, for Entry of an Order Authorizing the Debtors to (A) Pay Certain Prepetition Amounts on Account of Non-Insider Compensation Programs and (B) Continue the Non-Insider Compensation Programs in the Ordinary Course of Business on a Postpetition Basis [Docket No. 471] (the "Keglevic Declaration"), Mr. Keglevic claims that the Vice Presidents and Senior Vice Presidents under the EAIP are not insiders because they do not (i) manage daily operations of the Debtors' business lines; (ii) report directly to the board of directors or CEO of EFH Corp.; (iii) dictate overall company policy or strategy; (iv) have discretionary control over substantial budgetary amounts; or (v) have decision-making authority akin to an executive or company-wide decision making authority. See Keglevic Declaration ¶ 34. However, this Court has previously found that vice presidents may nevertheless be considered "officers" (and thus, insiders) even when they are not members of senior management and do not play a role in the management of the company as a whole. See In re Foothills, 408 B.R. at 584; see also Tr. of Proceedings at 84, In re Am. Home Mortg. Holdings (finding employees with varying titles of vice president to be insiders despite the debtors' contention that such employees did not have ability to bind the corporation and lacked certain decision-making authority). As this Court has found, vice presidents may qualify as officers and, thus, insiders when they are "in charge of important aspects of the Debtors' business . . . ." Id.

        5.     Further, although the Debtors classify the EAIP as an incentive plan, they have failed to provide sufficient information regarding the performance metrics of the plan to demonstrate that it is in fact incentivizing and not a retention plan subject to the strict requirements set forth in section 503(c)(1) of the Bankruptcy Code.[4] Merely labeling a compensation plan as an incentive plan is not determinative. See, e.g., In re Dana Corp., 351

---

[4] Section 503(c)(1) of the Bankruptcy Code prohibits payments to an insider of the debtor "for the purpose of inducing such person to remain with the debtor's business" unless the three requirements set forth in subsections (A), (B) and (C) of the section are satisfied. See 11 U.S.C. § 503(c)(1).

B.R. 96, 102 (Bankr. S.D.N.Y. 2006) (finding that the variable bonus of the alleged incentive plan was based on a performance threshold that was artificially low and virtually guaranteed payment, thus making the bonus more akin to a retention bonus).  Whether a compensation plan is retentive depends on whether the primary purpose of payment is to induce the insider to remain with the business.  In re Nellson Nutraceutical, Inc., 369 B.R. 787, 802 (Bankr. D. Del. 2007).

      6.      To avoid the restrictions under section 503(c)(1) of the Bankruptcy Code, a debtor must establish by a preponderance of the evidence that the plan is primarily incentivizing and not primarily retentive.  In re Residential Capital, 478 B.R. 154, 170 (Bankr. S.D.N.Y. 2012).  Such a task involves a demonstration by the Debtors that the incentive targets set forth in the EAIP require the participants to "stretch" to meet performance goals.  In re Velo Holdings, Inc., 472 B.R. 201, 207 (Bankr. S.D.N.Y. 2012); see also In re Hawker Beechcraft, Inc., 479 B.R. 308, 313-14 (Bankr. S.D.N.Y. 2012) (finding that the plan was primarily retentive and thus subject to scrutiny under section 503(c)(1) because the performance targets were too easily in reach and not "much of a challenge").

      7.      In the Motion, the Debtors simply allege that each employee in the EAIP is eligible to receive a bonus only if the "Debtors meet difficult-to-satisfy incentive metrics, which vary by business unit based on the employee's role."  Motion ¶ 16.  However, the Motion fails to provide any details regarding such metrics and fails to demonstrate whether they require plan participants to extend beyond their ordinary course responsibilities.  Accordingly, the Debtors have not satisfied their burden of proving that the EAIP is not a retention plan.

      8.      Prior to receiving authorization to continue the EAIP, the Debtors should thus be required to demonstrate to the Court that both (i) the Vice Presidents and Senior Vice

Presidents under the EAIP are not insiders of the Debtors and (ii) the EAIP is not a retention plan. If the Debtors are unable to do so, then this Court should deny the Debtors' request for authority to continue the EAIP. See In re Foothills, 408 B.R. at 585 ("A retention payment may only be made to an insider if the standard under section 503(c)(1) has been satisfied. As there is no evidence that section 503(c)(1) has been met, the retention payment cannot be made.").

## II.     The Owner/Operator Plan and the Key Leader Program

9. By the Motion, the Debtors seek authority to continue several employee payment programs that they characterize as "historical" and "longstanding." See, e.g., Motion ¶¶ 12, 16, 18, 24, 28, 31. Among those programs, however, is one – the so-called Key Leader Program – created months before the Debtors filed for bankruptcy in January 2014. This program appears to be an offshoot of a historical compensation program named the Owner/Operator Plan. See id. at ¶ 22. The Debtors represent that, as of the Petition Date, they owe allegedly non-insider employees approximately $8.9 million on account of their previous participation in the Owner/Operator Plan and request authority to honor such obligations on a postpetition basis. Id. at ¶ 20-21. The Debtors further seek authority to continue the Key Leader Program in the ordinary course of business on a postpetition basis, which the Debtors estimate will have an annual cost of approximately $5.4 million for the year 2014. Id. at ¶ 22.

10. The creation of the Key Leader Program on the eve of bankruptcy is not the subject of this Motion, and the Ad Hoc Group of TCEH Unsecured Noteholders understands that any relief granted in connection with this Motion will be without prejudice to the rights of all parties to explore and potentially challenge that transaction in the future. The going-forward relief sought by the Motion, however, raises questions in its own right that must be addressed by the Debtors. Although the Debtors maintain that the Owner/Operator Plan is an incentive plan,

they openly acknowledge that the Key Leader Program is a "primarily retention-based" program meant to retain key employees during a time of significant and ongoing distractions. Id. at ¶ 41. Interestingly, however, the Debtors state that each eligible employee's award under the Key Leader Program is "similar to the annual target previously used in the Owner/Operator Plan . . . ." Id. at ¶ 22. Because the performance metrics are similar under both plans, it is unclear why the Debtors have labeled the Key Leader Program a retention-based program while maintaining that the Owner/Operator Plan is an incentive-based program. Prior to being authorized to make any payments on account of the Owner/Operator Plan, the Debtors should be required to demonstrate that such plan is not a retention plan.

11.     Further, the Debtors should be required to demonstrate that all employees whom they propose to pay under the Owner/Operator Plan and the Key Leadership Program are actually "non-insiders" of the Debtors. The Debtors have failed, through the Motion and supporting declarations, to provide sufficient information regarding the roles of these plan participants to demonstrate that the "senior employees" are not insiders of the Debtors. Failing that, the Debtors must establish that Owner/Operator Plan and Key Leader Program satisfy the criteria of section 503(c)(1) of the Bankruptcy Code. If the Debtors are unable to make such a showing at the hearing on the Motion, then this Court should not permit the Debtors to make the payments under the Owner/Operator Plan or to continue the Key Leader Program on a postpetition basis.

## RESERVATION OF RIGHTS

12.     The Ad Hoc Group of TCEH Unsecured Noteholders expressly reserves the right to supplement and amend this Objection, seek discovery with respect to the same and introduce evidence at any hearing relating to the Motion and this Objection. Further, the Ad Hoc

Group of TCEH Unsecured Noteholders reserves the right to respond, further object, join in or amend any objection herein with respect to any argument or objection made by any person relating to the Motion.

## CONCLUSION

13. Based on the foregoing, the Ad Hoc Group of TCEH Unsecured Noteholders respectfully requests that the Court deny the Motion with respect to the EAIP, Owner/Operator Plan and Key Leader Program unless the Debtors satisfy their burden to establish that such compensation plans are not insider retention plans, or otherwise satisfy the requirements of section 503(c) of the Bankruptcy Code.

Dated: May 29, 2014
      Wilmington, Delaware

                        FOX ROTHSCHILD LLP

                    By: */s/ Jeffrey M. Schlerf*
                        Jeffrey M. Schlerf (No. 3047)
                        John H. Strock (No. 4965)
                        L. John Bird (No. 5310)
                        919 North Market St., Suite 300
                        Wilmington, DE 19801
                        Telephone: (302) 654-7444
                        Facsimile: (302) 463-4971
                        jschlerf@foxrothsc hild.com
                        jstrock@foxrothschild.com
                        lbird@foxrothschild.com

                        and

                        WHITE & CASE LLP
                        Thomas E Lauria (admitted *pro hac vice*)
                        Matthew C. Brown (admitted *pro hac vice*)
                        Southeast Financial Center, Suite 4900
                        200 South Biscayne Blvd.
                        Miami, FL 33131
                        Telephone: (305) 371-2700
                        Facsimile: (305) 358-5744
                        tlauria@whitecase.com
                        mbrown@whitecase.com

J. Christopher Shore (admitted *pro hac vice*)
Gregory M. Starner (admitted *pro hac vice*)
1155 Avenue of the Americas
New York, NY 10036
Telephone: (212) 819-8200
Facsimile: (212) 354-8113
cshore@whitecase.com
gstarner@whitecase.com

*Counsel to the Ad Hoc Group of*
*TCEH Unsecured Noteholders*