**UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>ENERGY FUTURE HOLDINGS CORP., *et al.*,<br><br>Debtors. | Chapter 11<br><br>Case No. 14-10979 (CSS)<br><br>(Joint Administration Requested)[1]<br><br>**Re: D.I. 71, 73, 324 and 325**<br><br>Hearing Date: June 5, 2014 at 9:30 a.m.<br>Objection Deadline: May 29, 2014 at 4:00 p.m. |

**OBJECTION OF LAW DEBENTURE TRUST COMPANY OF NEW YORK, AS INDENTURE TRUSTEE, TO (1) MOTION OF TEXAS COMPETITIVE ELECTRIC HOLDINGS COMPANY LLC AND CERTAIN OF ITS DEBTOR AFFILIATES FOR ENTRY OF A FINAL ORDER (A) AUTHORIZING USE OF CASH COLLATERAL, (B) GRANTING ADEQUATE PROTECTION AND (C) MODIFYING THE AUTOMATIC STAY AND (2) MOTION OF TEXAS COMPETITIVE ELECTRIC HOLDINGS COMPANY LLC AND CERTAIN OF ITS DEBTOR AFFILIATES, FOR ENTRY OF A FINAL ORDER (A) APPROVING POSTPETITION FINANCING, (B) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS AND (C) MODIFYING THE AUTOMATIC STAY**

Law Debenture Trust Company of New York ("Law Debenture"), as successor indenture trustee under that certain Indenture, dated as of October 31, 2007, among Texas Competitive Electric Holdings Company LLC and TCEH Finance, Inc. (together, the "Issuers"), certain guarantors that are affiliates of the Issuers (the "Guarantors")[2], and The Bank Of New York Mellon Trust Company, N.A., (as amended and supplemented from time to time, the "Indenture"), pursuant to which (i) $2,045,956,000 aggregate principal amount of the Issuers' 10.25% Senior Notes due 2015, (ii) $1,441,957,000 aggregate principal amount of the Issuers' 10.25% Senior Notes due 2015, Series B and (iii) $1,749,645,671 aggregate principal amount of

---

[1] By Order dated May 1, 2014, this Court approved on an interim basis only the Debtors' request for joint administration of their cases. The Debtors' request for a final order remains pending.

[2] The Issuers and the Guarantors, including such affiliates of the Debtors that became guarantors under the Indenture after the issuance of the TCEH Notes, are referred to below collectively as the "TCEH Debtors."

7108965

the Issuers' 10.50%/11.25% Senior Toggle Notes due 2016 (collectively, the "TCEH Notes") were issued and are outstanding as of the date hereof, by and through its attorneys, Patterson Belknap Webb & Tyler LLP and Morris James LLP, hereby files this objection ("Objection") to: (1) the *Motion of Texas Competitive Electric Holdings Company LLC and Certain of its Debtor Affiliates for Entry of Interim and Final Orders (A) Authorizing Use of Cash Collateral, (B) Granting Adequate Protection, (C) Modifying the Automatic Stay, and (D) Scheduling a Final Hearing*, dated April 29, 2014 (D.I. 71) (the "TCEH Cash Collateral Motion") and (2) the *Motion of Texas Competitive Electric Holdings Company LLC and Certain of its Debtor Affiliates, for Entry of Interim and Final Orders (A) Approving Postpetition Financing, (B) Granting Liens and Providing Superpriority Administrative Expense Claims, (C) Modifying the Automatic Stay, and (D) Scheduling a Final Hearing*, dated April 29, 2014 (D.I. 73) (the "TCEH DIP Motion," and, together with the TCEH Cash Collateral Motion, the "TCEH Financing Motions").[3,4]

## PRELIMINARY STATEMENT

1. The Proposed Final TCEH Financing Orders would expose the TCEH Debtors' unencumbered assets to the claims of the DIP Lenders and the Prepetition Secured Creditors. Yet, by the TCEH Debtors' own admission, "the DIP Financing is significantly over-collateralized." TCEH DIP Motion, ¶ 5. Accordingly, it is unnecessary – and prejudicial to the

---

[3] This Court granted the TCEH Financing Motions on an interim basis only by Orders dated May 2, 2014 (D.I. 324 and 325). On May 22, 2014, the Debtors filed proposed forms of final Orders approving the TCEH Cash Collateral Motion (D.I. 597) (the "Proposed Final TCEH Cash Collateral Order") and the TCEH DIP Motion (D.I. 598) (the "Proposed Final TCEH DIP Order," and, with the Proposed Final TCEH Cash Collateral Order, the "Proposed Final TCEH Financing Orders"). Capitalized terms used herein but not defined have the meanings given to them in the respective Proposed Final TCEH Financing Orders.

[4] Law Debenture is a member and Co-Chair of the Official Committee of Unsecured Creditors in these cases (the "Creditors' Committee"), but files this Objection solely in its capacity as trustee for the TCEH Notes.

7108965

TCEH Debtors' unsecured creditors – to include the TCEH Debtors' unencumbered assets among the DIP Collateral securing the DIP Liens and the Adequate Protection Liens.

2. In addition, the proposed DIP Financing is over-sized. If approved, the Proposed Final TCEH Financing Orders would work in tandem to permit the TCEH Debtors to borrow more than they need to operate in chapter 11, then transfer the surplus to pay more than a billion dollars in interest, in the form of the proposed Adequate Protection Payments, on secured indebtedness that is not fully secured.[5] The financing approved should be limited to those costs that are <u>truly</u> critical to the TCEH Debtors' ability to operate in chapter 11 and administer these cases. The proposed Adequate Protection Payments are excessive and should be eliminated, reduced, or modified.

3. The Proposed Final TCEH Financing Orders include other provisions that are not reasonably related to the TCEH Debtors' capital needs and should be stricken. For instance, the Proposed Final TCEH Cash Collateral Order affords the Creditors' Committee just 60 days and $175,000 to investigate the "validity, enforceability, priority, or extent" of certain pre-petition liens. Proposed Final TCEH Cash Collateral Order, ¶ 14. More time and a larger budget are warranted to permit Creditors' Committee and/or any other appropriate party to conduct a thorough investigation of both the TCEH Debtors' alleged secured claims and the TCEH Debtors' prepetition dealings with their secured lenders.

## OBJECTION

**A.  The TCEH Debtors' Unencumbered Assets Should Not Be Included in the "DIP Collateral."**

4. The TCEH Debtors' proposal to grant liens upon their unencumbered assets would, if approved, jeopardize a critical potential source of unsecured creditor recovery

---

[5] *See Notice of Filing of Budget in Connection with the TCEH Debtors' Postpetition Financing*, dated May 22, 2014 (D.I. 599) ("Budget").

7108965

3

for no reason and with no concomitant benefit to these Debtors' estates. "Under Delaware law, once a corporation becomes insolvent, its officers and directors owe unsecured creditors a fiduciary duty. That fiduciary duty requires that the controlling shareholder(s) and director(s) of the debtor maximize the value of the assets for payment of unsecured creditors."[6] The TCEH Debtors should not be permitted to grant liens upon unencumbered property that could otherwise be preserved for the benefit of unsecured creditors, especially if the TCEH Debtors' already-encumbered property is sufficient to collateralize the DIP Facility.

5.      Additionally, the proposed collateral package to secure the DIP Liens and the Adequate Protection Liens includes proceeds of Avoidance Actions. Avoidance actions belong to *creditors*, not the bankruptcy estate. "Rather than improving the debtor's own bottom line, empowering the trustee or debtor in possession to avoid a transaction by pursuing an individual creditor's cause of action is a method of forcing that creditor to share its valuable right with other unsecured creditors."[7] The TCEH Debtors should not be allowed to impose liens on the estates' causes of action at the possible expense of unsecured creditors' recoveries, particularly given the Debtors' own projections of dismal recoveries by the TCEH unsecured creditors.[8]

---

[6] *In re High Strength Steel, Inc.*, 269 B.R. 560, 569 (Bankr. D. Del. 2001). *See also Official Comm. of Unsecured Creditors of Cybergenics Corp. ex rel. Cybergenics Corp. v. Chinery*, 330 F.3d 548, 573 (3d Cir. 2003) ("In Chapter 11 cases where no trustee is appointed, § 1107(a) [of the Bankruptcy Code] provides that the debtor-in-possession, *i.e.*, the debtor's management, enjoys the powers that would otherwise vest in the bankruptcy trustee. Along with those powers, of course, comes the trustee's fiduciary duty to maximize the value of the bankruptcy estate.").

[7] *In re Cybergenics Corp.*, 226 F.3d 237, 244 (3d Cir. 2000).

[8] If the Court determines that the proposed liens on the TCEH Debtors' unencumbered property and Avoidance Actions are appropriate, Law Debenture submits that it would be needlessly harmful to unsecured creditors for this Court to approve the anti-marshaling provisions in the Proposed Final TCEH Financing Orders. *See* Proposed Final TCEH DIP Order, ¶ 32; Proposed Final TCEH Cash Collateral Order, ¶ 19.

### B. The Proposed Adequate Protection Payments Are Excessive and Should be Eliminated, Reduced, or Modified.

6. The Proposed Final TCEH Cash Collateral Order provides that:

> [T]he aggregate amount of First Lien Adequate Protection Payments shall be determined by applying a per annum rate equal to the LIBOR Rate (as defined in the DIP Credit Agreement) + 450 basis points to the aggregate outstanding amount of Prepetition First Lien Obligations as of the Petition Date in respect of such relevant periods ending after the Petition Date.

Proposed Final TCEH Cash Collateral Order, ¶ 5(d). Such payments run afoul of *United Sav. Ass'n of Tex. V. Timbers of Inwood Forest Ass'n, Ltd.*, 484 U.S. 365 (1988), where the Supreme Court explained that section 506 of the Bankruptcy Code only allows post-petition interest to be paid to <u>oversecured</u> lenders from their "security cushion." *Id.* at 372. Section 506 "has the substantive effect of denying undersecured creditors postpetition interest on their claims" since they have no such cushion. *Id.*[9]

7. The Proposed Final TCEH Cash Collateral Order would side-step *Timbers* by approving otherwise impermissible post-petition interest payments to undersecured creditors as adequate protection payments.[10] Under *Timbers* and its progeny, adequate protection of a secured creditor's interest in collateral is not automatic; a secured creditor is only entitled to adequate protection if the value of its collateral is declining.[11] To demonstrate an entitlement to

---

[9] Law Debenture takes no position at this time as to the value of the TCEH Debtors. Nevertheless, the Debtors' view is clear: the restructuring contemplated by the *Motion of Energy Future Holdings Corp., et al., for Entry of an Order Authorizing the RSA Debtors to Assume the Restructuring Support Agreement and Modifying the Automatic Stay*, dated May 16, 2014 (D.I. 505), assumes that the Prepetition First Lien Creditors are currently undersecured.

[10] The Proposed Final TCEH Cash Collateral Order provides that, "[a]ny Adequate Protection Payment shall be without prejudice, and with a full reservation of rights, as to whether such payment should be recharacterized or reallocated pursuant to section 506(b) of the Bankruptcy Code as payments under the First Lien Facilities or Tex-La Documents, as applicable (whether as to principal, interest, or otherwise)." Law Debenture reserves all rights with respect to the subsequent characterization of the Adequate Protection Payments.

[11] *See, e.g.*, *Timbers*, 484 U.S. at 370 (A secured creditor's "interest is not adequately protected if the security is depreciating during the term of the stay.").

7108965

adequate protection, a secured creditor "must [. . . ] prove this decline in value – or the threat of a decline."[12]  Here, the TCEH Debtors and Prepetition First Lien Creditors have made no such showing.  To the contrary, the Declaration of Stephen Goldstein ("Goldstein Dec.") (D.I. 71) filed in support of the TCEH Cash Collateral Motion suggests the <u>opposite</u>:

> To use cash collateral or impose secured superpriority priming liens, the debtor must adequately protect the secured creditor's interest in the property against any diminution in value of such interest resulting from the debtor's use of the property.  I understand that what constitutes adequate protection is decided on a case by case basis.  In my opinion, the proposed adequate protection summarized in the TCEH Cash Collateral Motion and TCEH DIP Motion is fair and reasonable.  ***Most importantly, the TCEH Debtors otherwise anticipate to be cash-flow positive through the duration of the chapter 11 cases, so the use of Cash Collateral and the imposition of priming liens to obtain postpetition financing should increase the value of the Collateral.***  The TCEH Debtors have agreed to pay the Prepetition First Lien Creditors full prepetition interest as adequate protection payments.  The proposed adequate protection also includes superpriority claims, replacement and junior liens, and payment of fees and expenses.

Goldstein Dec., ¶ 31 (emphasis added).  No doubt, Mr. Goldstein's conclusion that "the adequate protection package fully protects the Prepetition Secured Agents and the Prepetition Secured Creditors from diminution in value of the Collateral, including Cash Collateral," *id.*, is accurate.  But the Bankruptcy Code does not require (or even permit) the TCEH Debtors to provide such adequate protection unless the value of the Prepetition Collateral is demonstrably in decline or at risk of decline.  If the bare assertion of some theoretical risk of a decline were sufficient evidence of the need for adequate protection, then secured creditors would *always* be entitled to it, rendering *Timbers* and its progeny meaningless.

        8.    Even if this Court were to approve the Adequate Protection Payments, they should be calculated with reference to the value of the collateral securing the Prepetition

---

[12] *In re Elmira Litho, Inc.*, 174 B.R. 892, 902 (Bankr. S.D.N.Y. 1994).

First Lien Creditors' claims, not the full value of the claims.[13]  In addition, the Proposed Final TCEH Cash Collateral Order provides that "the Prepetition First Lien Creditors reserve the right to assert claims for the payment of additional interest calculated at any other applicable rate of interest (including, without limitation, default rates)."  Proposed Final TCEH Cash Collateral Order, ¶5(d).  If the Prepetition First Lien Creditors receive uninterrupted payments of interest during the pendency of these cases, then it would be inequitable to permit them to demand *even more* in the form of default-rate interest.  Therefore, Law Debenture respectfully requests that any Adequate Protection Payments be conditioned on the Prepetition First Lien Creditors' waiver of the right to seek default-rate interest for any period during which they receive the proposed interest payments.

      **C.      The Proposed Final TCEH Financing Orders Contain Other Objectionable Provisions That Should be Stricken or Modified.**

           **1.      The Creditors' Committee and Other Third Parties Should Be Afforded a Reasonable Amount of Time to Investigate the Validity of the Asserted Pre-Petition Liens and Related Causes of Action.**

         9.      The Proposed Final TCEH Cash Collateral Order places unreasonable restrictions on the amount of time and money the Creditors' Committee can spend investigating the validity, enforceability, priority, and extent of the Prepetition First Priority Liens.  It provides:

> The stipulations and admissions contained in this Final Order, including, without limitation, the TCEH Debtors' Stipulations, shall be binding upon all other parties in interest, including, without limitation, the Committee and any other person acting on behalf of the TCEH Debtors' estates, unless a party in interest with standing granted by order of the Court (or other court of competent jurisdiction) has filed an adversary proceeding or contested matter (i) within (a) with respect to

---

[13] *See*, *e.g.*, *In re Markos Gurnee P'ship.*, 252 B.R. 712, 717 (Bankr. N.D. Ill. 1997)("Where the value of the collateral is not sufficient to secure the entire claim of a creditor, then, under § 506(a) of the Code, the creditor has a secured claim, subject to adequate protection, limited to the value of the collateral securing the claim as of the time of the bankruptcy filing.").

7108965


any party in interest granted standing other than the Committee, 75 calendar days after entry of the Interim Order, or July 16, 2014, or (b) for the Committee, if granted standing, 60 calendar days after formation, or July 12, 2014.

Proposed Final TCEH Cash Collateral Order, ¶ 13. Sixty days is not a reasonable amount of time in cases of this size and complexity to (1) conduct a thorough and reliable investigation of potential claims to assert, (2) prepare, file, and obtain approval of a motion for standing to bring an action, and (3) prepare and file a complaint. The same holds true for the slightly longer (four days) challenge period afforded other parties-in-interest. Accordingly, Law Debenture respectfully requests that the Court set a more reasonable deadline.

        10.      The Proposed Final TCEH Cash Collateral Order would further imperil the Creditors' Committee's investigation by limiting the funding available to conduct it. The Order provides:

> [T]he Carve Out and such collateral proceeds and loans under the DIP Documents may be used for allowed fees and expenses, in an amount not to exceed $175,000 in the aggregate (the "Investigation Fund"), incurred solely by the Committee, if appointed, in investigating the validity, enforceability, perfection, priority, or extent of the Prepetition First Priority Liens or Prepetition Second Priority Liens during the Challenge Period; provided further, however, that the Committee may not use the Investigation Fund to initiate, assert, join, commence, support, or prosecute any actions or discovery with respect thereto. Any and all claims for fees or expenses incurred by the Committee, if appointed, or by any party in interest in violation of any clause of this paragraph 14 (including amounts incurred in excess of the Investigation Fund) shall not be allowed, treated, or payable as an administrative expense claim for purposes of section 1129(a)(9)(A) of the Bankruptcy Code, and the non-payment of such fees and expenses shall not constitute grounds to deny confirmation of any plan of reorganization for any of the TCEH Debtors.

Proposed Final TCEH Cash Collateral Order, ¶ 14. The proposed $175,000 cap is unreasonable and out of line with the complex nature of these cases. Moreover, the proposed Investigation Fund would provide no funding for the investigation of potential claims that the TCEH Debtors might have against the Prepetition Secured Creditors. The Proposed Final TCEH Cash Collateral Order should not unreasonably limit the Creditors' Committee's investigations regarding such

7108965

actions, and the Creditors' Committee should be given adequate funding to pursue such potential actions.

### 2. The TCEH Debtors Have Not Justified the Proposed Section 506(c) Waiver.

11. The Proposed Final TCEH Financing Orders both contain waivers of the TCEH Debtors' right to surcharge collateral under section 506(c) of the Bankruptcy Code. <u>See</u> Proposed Final TCEH DIP Order, ¶ 31; Proposed Final TCEH Cash Collateral Order, ¶ 16. Law Debenture objects to this waiver because the TCEH Debtors have not demonstrated why a waiver of this potentially valuable right is appropriate here – where the Debtors' entire restructuring strategy seeks to preserve the value of collateral for the benefit of certain pre-petition secured creditors.

### 3. It is Premature and Inappropriate for the Court to Make any Determinations About Credit Bidding.

12. The Proposed Final TCEH Cash Collateral Order permits the Prepetition First Lien Creditors to credit bid, under section 363(k) of the Bankruptcy Code, "all or any portion of their respective claims in connection with a sale of the TCEH Debtors' assets under section 363 of the Bankruptcy Code or under a chapter 11 plan of reorganization for any or all of the TCEH Debtors." Proposed Final TCEH Cash Collateral Order, ¶ 8. But that section of the Bankruptcy Code contemplates that the Court may order otherwise "for cause." 11 U.S.C. § 363(k). There is no basis at this time, and it is entirely inappropriate, for the Proposed Final TCEH Cash Collateral Order to curtail this Court's ability to make a subsequent decision about the right of secured parties to credit bid.

### JOINDER AND RESERVATION OF RIGHTS

13. Law Debenture also joins the Creditors' Committee's objections to the Proposed Final TCEH Financing Orders (D.I. 637 and 641). Law Debenture also reserves the

7108965

right to file a supplement to this Objection joining any objection(s) to the Proposed Final TCEH Financing Orders filed by the *ad hoc* group of certain holders of the TCEH Notes (the "TCEH Noteholder Group") as well as the right to join any other pleading filed by the TCEH Noteholder Group. Law Debenture further reserves the right to supplement or amend this Objection and to appear and be heard on any issue at the hearing to consider the TCEH Financing Motions.

## CONCLUSION

WHEREFORE, Law Debenture respectfully requests this Court to either deny the Proposed Final TCEH Financing Motions or grant them only on terms consistent with this Objection.

Dated:   May 29, 2014                                           MORRIS JAMES LLP

*[signature]*

Stephen M. Miller (DE Bar No. 2610)
500 Delaware Avenue, Suite 1500
P.O. Box 2306
Wilmington, Delaware 19899-2306
Telephone: (302) 888-6800
Facsimile:  (302) 571-1750
Email: smiller@morrisjames.com

- and -

Daniel A. Lowenthal
Brian P. Guiney (*pro hac vice* admission pending)
Craig W. Dent (*pro hac vice* admission pending)
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, NY 10036-6710
Telephone: (212) 336-2000
Facsimile:  (212) 336-2222
Email:  dalowenthal@pbwt.com

*Attorneys for Law Debenture Trust Company of New York, as Indenture Trustee*