**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) Case No. 14-10979 (CSS) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) Hearing Date: June 30, 2014 at 9:30 a.m. |
| | Objection Deadline: June 12, 2014 at 4:00 p.m. |

**APPLICATION OF ENERGY FUTURE HOLDINGS**
**CORP., *ET AL.*, FOR ENTRY OF AN ORDER AUTHORIZING THE**
**DEBTORS TO RETAIN AND EMPLOY FILSINGER ENERGY PARTNERS AS**
**ENERGY CONSULTANT EFFECTIVE *NUNC PRO TUNC* TO THE PETITION DATE**

The above-captioned debtors and debtors in possession (the "Debtors") file this application (this "Application") for the entry of an order (the "Order"), substantially in the form attached hereto as **Exhibit A**, authorizing the Debtors to employ and retain Filsinger Energy Partners ("FEP") as energy consultant effective *nunc pro tunc* to the Petition Date (as defined herein). In support of this Application, the Debtors submit the *Declaration of Todd Filsinger in Support of the Application of Energy Future Holdings Corp,* et al., *for Entry of an Order Authorizing the Debtors to Retain and Employ Filsinger Energy Partners as Energy Consultant Effective* Nunc Pro Tunc *to the Petition Date* (the "Filsinger Declaration"), attached hereto as **Exhibit B**. In further support of this Application, the Debtors respectfully state as follows.

---

[1] The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, for which joint administration has been granted on an interim basis, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

## Jurisdiction and Venue

1.      The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Debtors consent pursuant to rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Bankruptcy Rules") to the entry of a final order by the Court in connection with this Application to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The statutory bases for the relief requested in this Motion are sections 327(a), 328, and 330 of title 11 of the United States Code (the "Bankruptcy Code"), rules 2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Local Bankruptcy Rules 2014-1 and 2016-2.

## Relief Requested

4.      By this Application, the Debtors seek entry of the Order authorizing the employment and retention of FEP pursuant to sections 327(a), 328, and 330 of the Bankruptcy Code, Bankruptcy Rules 2014(a) and 2016, and Local Bankruptcy Rules 2014-1 and 2016-2 as the Debtors' energy consultant in accordance with the terms and conditions set forth in that certain engagement letter, dated as of December 4, 2012, as amended by that certain amendment effective as of January 8, 2014, between Energy Future Holdings Corp. ("EFH Corp."), Energy

Future Intermediate Holding Company LLC ("EFIH"), Energy Future Competitive Holdings Company LLC ("EFCH"), and Texas Competitive Electric Holdings Company LLC ("TCEH LLC," and together with EFH Corp., EFIH, and EFCH, the "Company Parties"), and FEP, copies of which are attached hereto as **Exhibit C** and incorporated herein by reference (the "Engagement Letter").[2]

### Background

5.      On April 29, 2014 (the "Petition Date"), each of the Debtors filed a voluntary petition with the Court under chapter 11 of the Bankruptcy Code.  The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  The Court has entered an interim order for joint administration of these chapter 11 cases.  The Court has not appointed a trustee.  The Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") formed an official committee of unsecured creditors in these chapter 11 cases on May 13, 2014 [D.I. 420].  Further information regarding the Debtors' business operations and capital structure is set forth in the *Declaration of Paul Keglevic, Executive Vice President, Chief Financial Officer, and Co-Chief Restructuring Officer of Energy Future Holdings Corp.*, et al., *in Support of First Day Motions* [D.I. 98].

### FEP's Qualifications

6.      FEP has a distinguished reputation within the global energy industry as an expert in independent market analysis and management consulting.  FEP offers expertise in valuation, restructuring, interim management, and turn-around strategy for the energy industry.  In addition,

---

[2]    For the avoidance of doubt, pursuant to the Engagement Letter, FEP will perform the Services for EFH Corp. and its direct and indirect subsidiaries, other than Oncor Holdings LLC and its subsidiaries.

FEP is a leader in providing analysis of market structure, generation, transmission, environmental, contractual, and risk management and trading issues in the context of financially distressed companies.

7.      Over the last several years, FEP personnel have provided energy consulting services in numerous large cases, including most recently acting as interim management for Hawkeye Growth LLC during its sale to Flint Hills Resources; as interim chief operating officer for Calpine Corporation, overseeing all aspects of its power, commercial, environmental health and safety, engineering and project development operations; as advisor to the debtor during the chapter 11 proceedings of Calpine Corporation; and as advisor to the committee of unsecured creditors during the chapter 11 proceedings of Mirant Corporation.  In addition, FEP personnel have provided energy consulting services in connection with the restructuring of PGE National Energy Group, NRG Energy, Dynegy, Allegheny Energy, Edison Mission Energy, and Exelon Boston Generating.

8.      In addition, since December 4, 2012, FEP has provided many of the Services (as defined below), to the Debtors in connection with their restructuring efforts.  In providing such prepetition professional services to the Debtors, FEP has become familiar with the Debtors and their business, including the Debtors' financial affairs, debt structure, operations, and related matters.  Having worked with the Debtors' management and their other advisors, FEP has developed relevant experience and expertise regarding the Debtors that will assist it in providing effective and efficient services in these chapter 11 cases.  Accordingly FEP is both well-qualified and uniquely able to represent the Debtors in these chapter 11 cases in an efficient and timely manner.

### Services to be Provided

9.     The Company Parties and FEP have entered into the Engagement Letter, which

governs the relationship between FEP and the Debtors.   The terms and conditions of the

Engagement Letter were negotiated by the Company Parties and FEP, and reflect the parties'

mutual agreement as to the substantial efforts that will be required in this engagement.   Pursuant

to the Engagement Letter, FEP could, among other things (collectively, the "Services"):[3]

> (a) provide market analyses and strategic advice with respect to energy industry specific issues in these chapter 11 cases;
>
> (b) analyze the Debtors' energy business strengths, weaknesses, and risks from the creditors' viewpoint;
>
> (c) provide EBITDA and cash flow forecasts of the Debtors' businesses;
>
> (d) analyze technical aspects of the Debtors' business plans and models, with a particular emphasis on the Debtors' energy business plans;
>
> (e) provide forecasts of commodity prices including fuel prices, electric supply and demand conditions, transmission constraints, hydro generation conditions, emissions allowance costs, and new construction costs;
>
> (f) review and analyzing compensation metrics;
>
> (g) review the Debtors' inventory of assets and providing asset valuations;
>
> (h) examine the Debtors' long-term contracts, trading positions, and risk management activities;
>
> (i) provide power marketing advice and analysis with respect to the Debtors' management, credit policy, hedging contracts, and credit support;
>
> (j) provide advice on restructuring issues and options;
>
> (k) provide litigation and expert witness support; and

---

[3]     The summary of the Engagement Letter in this Application is qualified in its entirety by reference to the provisions of the Engagement Letter.  To the extent there is any discrepancy between the summary contained in this Application and the terms set forth in the Engagement Letter, the terms of the Engagement Letter shall control.  Capitalized terms used and not otherwise defined herein shall have the meanings ascribed to them in the Engagement Letter.

(l)  provide other services as requested by the Debtors from time to time.

10.    The Services are necessary to enable the Debtors to maximize the value of their estates.  FEP understands that the Debtors have chosen Evercore Group L.L.C. ("Evercore") to act as its investment banker and financial advisor and Alvarez & Marsal North America, LLC ("A&M") to act as its restructuring advisor.  FEP has and will continue to work closely with Evercore and A&M to prevent any duplication of efforts in the course of advising the Debtors.

11.    FEP has stated its desire and willingness to act in these chapter 11 cases and to render the necessary professional services as energy industry consultants for the Debtors.

**Professional Compensation**

12.    Subject to Court approval, the Debtors will compensate FEP in accordance with the terms and conditions of the Engagement Letter, which provides, in relevant part, for the following compensation structure (the "Fee Structure"):[4]

| | |
|---|---|
| Managing Director | $720 - $750 |
| Director | $525 - $645 |
| Managing Consultant | $405 - $495 |
| Consultant | $330 - $405 |
| Analyst | $225 - $285 |
| Assistant Analyst | $180 - $185 |

13.    In addition to compensation for services rendered, the Debtors have agreed to pay, subject to Court approval, for all of FEP's reasonable and documented out-of-pocket expenses, including, but not limited to, costs of reproduction and reasonable travel expenses for its professionals.

14.    The Debtors and FEP believe that the foregoing compensation arrangements are reasonable and market-based.  Furthermore, the fees and expenses described above are consistent

---

[4]    Rates are as of March 31, 2014, pursuant to the Engagement Letter.

with FEP's normal and customary billing practices for cases of this size and complexity which require the level and scope of services outlined in the Engagement Letter.

15.    FEP intends to apply for compensation for professional services rendered and reimbursement of expenses incurred in connection with these chapter 11 cases, subject to the Court's approval and in compliance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, the guidelines (the "Trustee Guidelines") established by the U.S. Trustee and any other applicable procedures and orders of the Court, on an hourly basis.  To that end, contemporaneously herewith, the Debtors have filed the *Motion of Energy Future Holdings Corp., et al., for Entry of an Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals*, pursuant to which FEP intends to submit requests for compensation.

16.    Furthermore, FEP will maintain time records in summary format which shall set forth a description of services rendered by each restructuring professional and the amount of time spent on each date, in one-tenth (.10) hour increments.  Information regarding reimbursement of actual and necessary expenses incurred by FEP will also be maintained.

17.    FEP received an initial advance retainer of $200,000 on December 18, 2012, from the Debtors (the "Retainer").  Pursuant to the Engagement Letter, invoiced amounts have been recouped against the Retainer, and payments on the invoices have been used to replenish the Retainer.  During the 496 days prior to commencement of these chapter 11 cases, the Debtors paid FEP a total of $10,449,738, incurred in providing services to the Debtors in contemplation of, and in connection with, prepetition restructuring activities.

18.    Due to the ordinary course and unavoidable reconciliation of fees and submissions of expenses immediately prior to, and subsequent to, the Petition Date, FEP may

have incurred but has not billed fees and reimbursable expenses that relate to the prepetition period. FEP hereby seeks the Court's approval to apply the Retainer to these amounts and any further prepetition fees and expenses FEP becomes aware of during its ordinary course billing review and reconciliation. Upon the proposed applications of the Retainer, the Debtors will not owe FEP any sums for prepetition services.

## **Indemnification Provision**

19.     Subject to the approval of the Court and as more fully described in the Engagement Letter, the Debtors have agreed to indemnify FEP against any third party claim brought against FEP in respect of any injury, damage, or loss occasioned by the Debtors or a third party's use or operation of the results of the Services without FEP's approval. The Debtors believe that the indemnity provision is a reasonable term and condition of FEP's engagement.

20.     The Engagement Letter also contains standard indemnification language with respect to FEP's services that requires the Debtors to indemnify FEP against "any and all third party claims regarding the Work,[5] which indemnification includes attorney's fees and costs."

21.     The Debtors and FEP believe that the indemnification provisions contained in the Engagement Letter are customary and reasonable for FEP and comparable firms providing restructuring advisory services. In addition, pursuant to the Order, the Debtors seek to qualify and limit the indemnification provisions as follows:

> (a) prohibiting FEP from receiving indemnification, contribution or reimbursement pursuant to the Engagement Letter for services other than those described in the Engagement Letter, unless such services and indemnification are approved by the Court;

---

[5]     The Engagement Letter defines "Work" as "all work, professional services and/or materials provided by FEP to the [Debtors]."

(b) eliminating the Debtors' obligation to indemnify FEP, or provide contribution or reimbursement to FEP for any claim or expense that is either:  (i) judicially determined (the determination having become final) to have arisen from FEP's gross negligence or willful misconduct; (ii) for a contractual dispute in which the Debtors allege the breach of FEP's contractual obligations unless the Court determines that indemnification, contribution or reimbursement would be permissible pursuant to *In re United Artists Theatre Co.*, 315 F.3d 217 (3d Cir. 2003); or (iii) settled prior to a judicial determination as to the exclusions set forth in clauses (i) and (ii) above, but determined by the Court, after notice and a hearing to be a claim or expense for which FEP should not receive indemnity, contribution or reimbursement under the terms of the Engagement Letter (as modified by the Order); and

(c) requiring FEP to file an application with the Court if it believes it is entitled to the payment of any amounts by the Debtors on account of the Debtors' indemnification, contribution, and/or reimbursement obligations under the Engagement Letter, including, without limitation, the advancement of defense costs, (as modified by the Order) before the earlier of (i) the entry of an order confirming a chapter 11 plan in these cases (that order having become a final order no longer subject to appeal), and (ii) the entry of an order closing these chapter 11 cases and prohibiting the Debtors from paying any such amounts to FEP before the entry of an order by the Court approving such payment.

22.    These indemnification provisions, as qualified and limited by the Order, are customary in this district and others.  *See*, *e.g.*, *In re Appleseed's Intermediate Holdings LLC*, No. 11-10160 (KG) (Bankr. D. Del. Feb. 18, 2011) (approving similar modified indemnification provisions for the retention and employment of Alvarez & Marsal North America, LLC); *In re Local Insight Media Holdings, Inc.*, No. 10-13677 (KG) (Bankr. D. Del. Dec. 17, 2010) (same); *In re Atrium Corp.*, No. 10-10150 (BLS) (Bankr. D. Del. Feb. 24, 2010) (approving similar modified indemnification provisions for the retention and employment of Deloitte Financial Advisory Services LLP); *In re Majestic Star Casino, LLC*, No. 09-14136 (KG) (Bankr. D. Del. Dec. 17, 2009) (approving similar modified indemnification provisions for the retention and employment of Moelis & Company LLC); *In re Muzak Holdings LLC*, No. 09-10422 (KJC) (Bankr. D. Del. April 6, 2009) (approving similar modified indemnification provisions for the retention and employment of Moelis & Company LLC).

23.     Moreover, the terms and conditions of the indemnification provisions were negotiated by the Company Parties and FEP at arm's length and in good faith.  The provisions contained in the Engagement Letter, viewed in conjunction with the other terms of FEP proposed retention, are reasonable and in the best interest of the Debtors, their estates, and creditors in light of the fact that the Debtors require FEP's services to successfully reorganize.  Accordingly, as part of this Application, the Debtors request that the Court approve the indemnification provisions as set forth in the Engagement Letter and as modified pursuant to the Order.

### FEP's Disinterestedness

24.     In connection with the proposed retention by the Debtors in these chapter 11 cases, FEP received a list of parties-in-interest from the Debtors (the "Parties-In-Interest") attached hereto as **Schedule 1**.

25.     To the best of the Debtors' knowledge, except as set forth in the Filsinger Declaration, FEP has no material connection with, or any interest adverse to, the Debtors, their creditors, or any other Party-In-Interest, or their respective attorneys and accountants, the U.S. Trustee, or any person employed by the office of the U.S. Trustee in the above-captioned chapter 11 cases.

26.     To the best of the Debtors' knowledge, based exclusively on the Filsinger Declaration, FEP (a) does not hold or represent any interest adverse to the Debtors or their estates, and (b) is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code, as required by section 327(a) of the Bankruptcy Code.  The Debtors have been informed that FEP will conduct an ongoing review of its files to ensure that no disqualifying circumstances arise and if new relevant facts or relationships are discovered, FEP will supplement its disclosure to the Court.

27.     Other than as addressed by paragraph 18 herein, the Debtors do not owe FEP any amount for services performed or expenses incurred prior to the Petition Date and, thus, FEP is not a prepetition creditor of the Debtors.

## Basis for Relief

28.     Section 327(a) of the Bankruptcy Code provides that a debtor subject to court approval:

> [M]ay employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the [debtor] in carrying out the [debtor]'s duties under this title.

11 U.S.C § 327(a).

29.     Moreover, Bankruptcy Rule 2014 requires that an application for retention include:

> [S]pecific facts showing the necessity for the employment, the name of the [firm] to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the [firm's] connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States Trustee, or any person employed in the office of the United States Trustee.

Fed. R. Bankr. P. 2014.

30.     The terms and conditions of the Engagement Letter, including the indemnification provisions contained therein, were negotiated by the Company Parties and FEP at arm's length and in good faith.  The Debtors and FEP respectfully submit that the terms of FEP's retention are customary and reasonable for energy consulting engagements, both out-of-court and in comparable chapter 11 cases, and in the best interests of the Debtors' estates, creditors, and all Parties-in-Interest.

## Notice

31.     The Debtors shall provide notice of this Application on the date hereof via U.S. first class mail to:  (a) the Office of the U.S. Trustee for the District of Delaware; (b) (i) the entities listed on the Consolidated List of Creditors Holding the 50 Largest Unsecured Claims filed pursuant to Bankruptcy Rule 1007(d); and (ii) proposed counsel to the Creditors' Committee; (c) Wilmington Trust, N.A., in its capacity as administrative agent under the TCEH first lien credit agreement and collateral agent under the TCEH intercreditor agreements and counsel thereto; (d) Bank of New York Mellon Trust Company, N.A., in its capacity as indenture trustee under:  (i) the TCEH unsecured pollution control revenue bonds; and (ii) the EFCH 2037 Notes due 2037, and counsel thereto; (e) American Stock Transfer & Trust Company, LLC, in its capacity as indenture trustee under:  (i) the 9.75% EFH senior unsecured notes due 2019; (ii) the 10.0% EFH senior unsecured notes due 2020; (iii) the 10.875% EFH LBO senior unsecured notes due 2017; (iv) the 11.25%/12.0% EFH LBO toggle notes due 2017; (v) the 5.55% EFH legacy notes (series P) due 2014; (vi) the 6.50% EFH legacy notes (series Q) due 2024; and (vii) the 6.55% EFH legacy notes (series R) due 2034, and counsel thereto; (f) Computershare Trust Company, N.A. and Computershare Trust Company of Canada, in their capacities as indenture trustee under:  (i) the 11.0% EFIH senior secured second lien notes due 2021; and (ii) the 11.75% EFIH senior secured second lien notes due 2022, and counsel thereto; (g) UMB Bank, N.A. in its capacity as indenture trustee under:  (i) the 9.75% EFIH senior unsecured notes due 2019; and (ii) the 11.25%/12.25% EFIH senior toggle notes due 2018, and counsel thereto; (h) BOKF, NA, dba Bank of Arizona, in its capacity as indenture trustee under 11.50% TCEH senior secured notes due 2020, and counsel thereto; (i) CSC Trust Company of Delaware in its capacity as indenture trustee under:  (i) the 6.875% EFIH senior secured notes due 2017; and (ii) the 10.0% EFIH senior secured notes due 2020, and counsel thereto; (j) Law Debenture Trust

Company of New York in its capacity as indenture trustee under: (i) the 10.25% TCEH senior unsecured notes due 2015; and (ii) the 10.50%/11.25% TCEH senior toggle notes due 2016, and counsel thereto; (k) Wilmington Savings Fund Society, FSB in its capacity as indenture trustee under the 15.0% TCEH senior secured second lien notes due 2021, and counsel thereto; (l) counsel to certain holders of claims against the Debtors regarding each of the foregoing described in clauses (c) through (k); (m) the agent for the TCEH debtor-in-possession financing facility and counsel thereto; (n) the agent for the EFIH debtor-in-possession financing facility and counsel thereto; (o) counsel to certain holders of equity in Texas Energy Future Holdings Limited Partnership; (p) counsel to the Ad Hoc Committee of TCEH Unsecured Noteholders; (q) counsel to the Ad Hoc Committee of TCEH Second Lien Noteholders; (r) Oncor Electric Delivery Holdings Company LLC and counsel thereto; (s) Oncor Electric Delivery Company LLC and counsel thereto; (t) the Securities and Exchange Commission; (u) the Internal Revenue Service; (v) the Office of the United States Attorney for the District of Delaware; (w) the Office of the Texas Attorney General on behalf of the Public Utility Commission of Texas; (x) counsel to the Electric Reliability Council of Texas; (y) those parties that have requested notice pursuant to Bankruptcy Rule 2002; and (z) FEP. The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

**<u>No Prior Request</u>**

32.     No prior request for the relief sought in this Application has been made to this or any other court.

*[Remainder of page intentionally left blank.]*

WHEREFORE, the Debtors respectfully request that the Court enter the Order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested herein and granting such other and further relief as is appropriate under the circumstances.

Wilmington, Delaware
Dated:  May 29, 2014

/s/ Paul M. Keglevic
Paul M. Keglevic
Executive Vice President, Chief Financial
Officer, and Co-Chief Restructuring Officer
of EFH Corp., EFIH, and TCEH LLC