## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) | Case No. 14-10979 (CSS) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | Hearing Date: June 30, 2014 at 9:30 a.m. |
| | ) | Objection Deadline: June 12, 2014 at 4:00 p.m. |

### APPLICATION OF ENERGY FUTURE HOLDINGS CORP., *ET AL.*, FOR ENTRY OF AN ORDER AUTHORIZING THE DEBTORS TO RETAIN AND EMPLOY EVERCORE GROUP L.L.C. AS INVESTMENT BANKER AND FINANCIAL ADVISOR EFFECTIVE *NUNC PRO TUNC* TO THE PETITION DATE

The above-captioned debtors and debtors in possession (the "Debtors") file this application (this "Application") for the entry of an order (the "Order"), substantially in the form attached hereto as **Exhibit A**, authorizing the Debtors to employ and retain Evercore Group L.L.C. ("Evercore") as investment banker and financial advisor effective *nunc pro tunc* to the Petition Date (as defined herein). In support of this Application, the Debtors submit the *Declaration of David Ying in Support of the Application of Energy Future Holdings Corp.,* et al.*, for Entry of an Order Authorizing the Debtors to Retain and Employ Evercore L.L.C. as Investment Banker and Financial Advisor Effective* Nunc Pro Tunc *to the Petition Date* (the "Ying Declaration"), attached hereto as **Exhibit B**. In further support of this Application, the Debtors respectfully state as follows.

---

[1] The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, for which joint administration has been granted on an interim basis, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

**Jurisdiction and Venue**

1.      The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Debtors confirm their consent pursuant to rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Bankruptcy Rules") to the entry of a final order by the Court in connection with this Application to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The statutory bases for the relief requested in this Application are sections 327(a) and 328 of title 11 of the United States Code (the "Bankruptcy Code"), rules 2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Local Bankruptcy Rules 2014-1 and 2016-2.

**Relief Requested**

4.      By this Application, the Debtors seek entry of the Order authorizing the employment and retention of Evercore pursuant to sections 327(a) and 328 of the Bankruptcy Code, Bankruptcy Rules 2014(a) and 2016, and Local Bankruptcy Rules 2014-1 and 2016-2 as the Debtors' investment banker and financial advisor in accordance with the terms and conditions set forth in that certain engagement letter (the "Engagement Letter"), effective as of April 28, 2014, between the Debtors and Evercore, a copy of which is attached hereto as **Exhibit 1** to the Order and incorporated herein by reference.

## Background

5.      On April 29, 2014 (the "Petition Date"), each of the Debtors filed a voluntary petition with the Court under chapter 11 of the Bankruptcy Code.  The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  The Court has entered an interim order for joint administration of these chapter 11 cases.  The Court has not appointed a trustee.  The Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") formed an official committee of unsecured creditors in these chapter 11 cases on May 13, 2014 [D.I. 420].  Further information regarding the Debtors' business operations and capital structure is set forth in the *Declaration of Paul Keglevic, Executive Vice President, Chief Financial Officer, and Co-Chief Restructuring Officer of Energy Future Holdings Corp.*, et al., *in Support of First Day Motions* [D.I. 98].

## Evercore's Qualifications

6.      The Debtors seek to retain Evercore as their investment banker and financial advisor because, among other things, Evercore has extensive experience in, and an excellent reputation for, providing high-quality investment banking and financial advisory services to debtors in bankruptcy reorganizations and other restructurings.  The terms of this Application, as well as the terms of the Order, shall apply to any and all affiliates of the Debtors that have not yet filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code as of the Petition Date, but which subsequently file such a petition during the pendency of these chapter 11 cases.

7.      Established in 1996, Evercore is a leading independent investment banking advisory and investment management firm.  Evercore's investment banking business includes its advisory business, which counsels multinational corporations on mergers and acquisitions, divestitures, special committee assignments, recapitalizations, restructurings and other strategic

transactions.  In addition, through its investment banking business, Evercore provides capital markets advice, underwrites securities, raises funds for financial sponsors, and offers equity research and agency-only equity securities trading for institutional investors.  Evercore's investment management business includes private equity investing, institutional asset management and wealth management.  Evercore and its affiliates serve a diverse set of clients around the world from its offices in New York, Boston, Chicago, Los Angeles, Washington D.C., San Francisco, Houston, Minneapolis, Hong Kong, Singapore, London, Aberdeen, Mexico City, Monterrey, São Paulo and Rio De Janeiro.  Since the beginning of 2000, Evercore's corporate advisory and restructuring advisory groups have advised on over $1.7 trillion of announced transactions.  Its restructuring professionals provide investment banking services in financially distressed situations, including advising debtors, creditors and other constituents in chapter 11 proceedings and out-of-court restructurings.  Evercore is a member of the Financial Industry Regulatory Authority and the Securities Investor Protection Corporation.

8.    Evercore and its professionals have extensive experience working with financially troubled companies from a variety of industries in complex financial restructuring, both out of court and in chapter 11 cases.  Evercore professionals have actively been retained as investment bankers and financial advisors in numerous bankruptcy cases, including, among others: *In re FAH Liquidating Corp. (Fisker Automotive)*, No. 13-13087 (Bankr. D. Del. March 31, 2014); *In re Synagro Technologies, Inc.*, No. 13-11041 (Bankr. D. Del. May 23, 2013); *In re Ormet Corp.*, No. 13-10334 (Bankr. D. Del. Apr. 18, 2013); *In re Otelco Inc.*, No. 13-10593 (Bankr. D. Del. Apr. 18, 2013); *In re RDA Holding Co (Reader's Digest)*, No. 13-22233 (Bankr. S.D.N.Y.  Mar. 25, 2013); *In re Inspiration Biopharmaceuticals, Inc.*, No. 12-18687 (Bankr. D. Mass. Dec. 19, 2012); *In re Broadview Networks Holdings, Inc.*, No. 12-13581 (Bankr. S.D.N.Y. Sept. 14,

2012); *In re Circus and Eldorado Joint Venture*, No. 12-51156 (Bankr. D. Nev. July 6, 2012); *In re Delta Petroleum Corp.*, No. 11-14006 (Bankr. D. Del. Dec. 16, 2011); *In re Trico Marine Services, Inc.*, No. 10 12653 (Bankr. D. Del. Aug. 5, 2010); *In re CIT Group Inc.*, No. 09-16565 (Bankr. S.D.N.Y. Nov. 1, 2009); *In re General Motors Corp.*, No. 09-50026 (Bankr. S.D.N.Y. June 1, 2009); *In re Lyondell Chem. Co.*, No. 09-10023 (Bankr. S.D.N.Y. Jan. 6, 2009); *In re PRC, LLC*, No. 08-10239 (Bankr. S.D.N.Y. Jan. 23, 2008); *In re Delphi Corp.*, No. 05-44481 (Bankr. S.D.N.Y. Oct. 8, 2005); *In re Northwest Airlines Corp.*, No. 05-17930 (Bankr. S.D.N.Y. Sept. 14, 2005).[2]

9.     In light of the size and complexity of these chapter 11 cases, the resources, capabilities, and experience of Evercore in advising the Debtors are crucial to the Debtors' successful restructuring.  An experienced investment bank and financial advisor like Evercore fulfills a critical need that complements the services offered by the Debtors' other restructuring professionals.  Broadly speaking, Evercore will assist in the evaluation of strategic alternatives and render investment banking services to the Debtors in connection with their ongoing restructuring efforts.  For these reasons, the Debtors require the services of a capable and experienced investment bank and financial advisor like Evercore.

10.     In addition, since July 13, 2012, Evercore has provided extensive pre-petition services to the Debtors.  Evercore has worked closely with the Debtors and their other professionals to, among other things:  (a) evaluate a range of strategic and restructuring alternatives, (b) engage in multiple rounds of detailed negotiations with various Parties-In-Interest, with each round often lasting several months, and (c) undertake extensive services that ultimately led to the structuring and execution of the Term Sheet and Restructuring Support and

---

[2]     Because of the voluminous nature of the orders cited herein, they are not attached to the Application.  Copies of these orders are available on request of the Debtors' counsel.

Lock-up Agreement (as defined below) among the Debtors and several key parties-in-interest of EFH, EFIH, and TCEH.  Evercore also advised the Debtors on debtor-in-possession financing alternatives, including commitments for the TCEH First Lien DIP Financing, EFIH First Lien DIP Financing, and EFIH Second Lien DIP Financing, which were negotiated, structured and executed prepetition.  In addition, for example, Evercore has engaged in preparation for the Debtors' restructuring efforts, including assisting management in developing analyses and materials relating to the long-range business plan and other relevant restructuring matters, conducting extensive dialogue with various Parties-In-Interest (as defined herein), facilitating extensive diligence for various Parties-In-Interest, and providing additional financial advice and investment banking services in preparation for the filing of these chapter 11 cases.

11.    As a result, Evercore has become familiar with the Debtors and their business, including the Debtors' financial affairs, debt structure, operations, and related matters.  Having worked with the Debtors' management and their other advisors, Evercore has developed relevant experience and expertise regarding the Debtors that will assist it in providing effective and efficient services in these chapter 11 cases.  Accordingly Evercore is both well-qualified and uniquely able to represent the Debtors in these chapter 11 cases in an efficient and timely manner.

### Services To Be Provided

12.    The parties have entered into the Engagement Letter, which governs the relationship between Evercore and the Debtors.  The terms and the conditions of the Engagement Letter were the result of significant discussions and negotiations between Evercore and the Debtors, and they reflect the parties' mutual agreement as to the substantial efforts that will be required in this engagement.  This mutual agreement was reached in conjunction with the

process that resulted in the structuring and execution of that certain term sheet and restructuring support and lock-up agreement (the "<u>Term Sheet</u>" and "<u>Restructuring Support and Lock-Up Agreement</u>," respectively). Subject to further order of the Court and consistent with the Engagement Letter, in consideration of the compensation contemplated thereby, Evercore has provided and has agreed to provide a broad range of necessary investment banking and financial advisory services as Evercore and the Debtors shall deem appropriate and feasible in order to advise the Debtors in the course of these chapter 11 cases, including the following (collectively, the "<u>Services</u>"):[3]

(a) reviewing and analyzing the Debtors' business, operations, and financial projections;

(b) advising and assisting the Debtors in a Restructuring, Financing, and/or Sale, if the Debtors determine to undertake such a Transaction;

(c) providing financial advice in developing and implementing a Restructuring, which would include:

    i. assisting the Debtors in developing a restructuring plan or plan of reorganization, including a plan of reorganization pursuant to the Bankruptcy Code (any such plans are referred to generically as the "<u>Plan</u>");

    ii. advising the Debtors on tactics and strategies for negotiating with various stakeholders regarding the Plan;

    iii. providing testimony, as necessary, with respect to matters on which Evercore has been engaged to advise the Debtors in any proceedings before the Bankruptcy Court; and

    iv. providing the Debtors with other financial restructuring advice as Evercore and the Debtors may deem appropriate;

(d) if the Debtors pursue a Financing, assisting the Debtors in:

---

[3] The summaries of the Engagement Letter contained in this Application are provided for purposes of convenience only. In the event of any inconsistency, the terms of the Engagement Letter shall control. Capitalized terms used herein but not otherwise defined have the meanings ascribed to such terms in the Engagement Letter.

      i.      structuring and effecting a Financing;

      ii.      identifying potential Investors and, at the Debtors' request, contacting such Investors; and

      iii.      working with the Debtors in negotiating with potential Investors.

(e) if the Debtors pursue a Sale, assisting the Debtors in:

      i.      structuring and effecting a Sale;

      ii.      identifying interested parties and/or potential acquirors and, at the Debtors' request, contacting such interested parties and/or potential acquirors; and

      iii.      advising the Debtors in connection with negotiations with potential interested parties and/or acquirors and aiding in the consummation of a Sale.

13.      The Services are necessary to enable the Debtors to maximize the value of their estates.  Evercore understands that the Debtors have chosen Alvarez & Marsal North America, LLC ("A&M") to act as its restructuring advisor and Filsinger Energy Partners ("FEP") to act as its energy consultant.  Evercore has and will continue to work closely with A&M and FEP to prevent any duplication of efforts in the course of advising the Debtors.

**Professional Compensation**

14.      Evercore intends to apply for compensation for professional services rendered and reimbursement of expenses incurred in connection with these chapter 11 cases, subject to the Court's approval and in compliance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, the guidelines (the "Trustee Guidelines") established by the U.S. Trustee and any other applicable procedures and orders of the Court.  To that end, contemporaneously herewith, the Debtors have filed the *Motion of Energy Future Holdings Corp.,* et al*., for Entry of an Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals*, pursuant to which Evercore intends to submit requests for compensation (an "Interim Compensation Order").  As more fully described below,

Evercore's proposed compensation was the result of substantial discussions and arms-length negotiation with the Debtors, and was agreed in conjunction with the process that resulted in the structuring and execution of the Term Sheet and Restructuring Support and Lock-Up Agreement.

15.    In consideration of the Services, and as fully described in the Engagement Letter, the Debtors have agreed, subject to the Court's approval, to pay Evercore the proposed compensation set forth in the Engagement Letter (the "Fee and Expense Structure"). The Fee and Expense Structure is summarized as follows:[4]

(a) **Monthly Fee:**  $650,000 per month until a Restructuring or termination of Evercore's engagement.

(b) **Restructuring Fee:**    $35 million for simultaneous Restructuring(s) of TCEH/EFCH and EFIH.  But if a first Restructuring concerns only one of TCEH/EFCH and EFIH, then a portion of the $35 million Restructuring Fee will then be due based on time allocation and the remainder of $35 million due if and when a second Restructuring occurs.  In either case, the aggregate Restructuring Fee is payable only once.  There is no Restructuring Fee for certain modifications of existing obligations under the Debtors' existing liability management program or similar programs, certain immaterial modifications and modifications agreed by the Debtors.

(c) **Sale Fee:** $9 million, payable once, for a Sale of all or substantially all of either or both of TCEH/EFCH and EFIH.  Sales that give rise to a Sale Fee also give rise to a Restructuring Fee.

(d) **DIP Financing Fee:** $11 million, payable once, for a first lien DIP Financing. Half of the DIP Financing Fee is due upon DIP Financing commitment, with the balance due upon approval of the DIP Financing by the Court.

(e) **Credits:**

i.    *Monthly Fee Credit*:  The first eight Monthly Fees, and the amount by which each subsequent Monthly Fee exceeds $400,000 (which will be $250,000 for a Monthly Fee of $650,000), are creditable against the Restructuring Fee.

---

[4]    This summary is presented for convenience purposes only and is not an exhaustive reflection of the fee and expense terms set forth in the Engagement Letter, which are controlling in all respects.  Capitalized terms used but not otherwise defined herein have the meanings ascribed to such terms in the Engagement Letter.

     ii.    *DIP Financing Fee Credit*:  $3 million of the DIP Financing Fee is creditable against the Restructuring Fee.

These credits are conditioned on full payment and final approval of the related fees and are subject to allocation.

(f)  **Allocation:**  Evercore's fees have been allocated in order to align them with the Debtors' economic structure and the interests of the Debtors' economic stakeholders.

     i.    *Timekeeping*:  To facilitate allocation, Evercore's professionals will record whether hours expended providing services are attributable to TCEH/EFCH, EFIH, or EFH specifically, or are instead attributable to more than one of these.

     ii.    *Monthly Fee*:  Monthly Fees will be allocated to TCEH/EFCH, EFIH, and EFH in proportion to time spent by Evercore on each during the month.

     iii.    *Restructuring Fee*:  The Restructuring Fee will be allocated amongst as many of TCEH/EFCH, EFIH, and EFH as are related to the Restructuring, in proportion to all allocated time spent by Evercore on each.

     iv.    *Sale Fee*:  The Sale Fee will be allocated amongst as many of TCEH/EFCH, EFIH, and EFH as are related to the Sale(s), in proportion to all allocated time spent by Evercore on each.

     v.    *DIP Financing Fee*:  The DIP Financing Fee will be allocated in proportion to the third-party DIP financing commitments provided by bank lenders, if any, relating to each of TCEH/EFCH, EFIH, and EFH.

     vi.    *Credits:*  The Monthly Fee credit and the DIP Financing Fee credit will each be allocated to TCEH/EFCH, EFIH, and EFH in proportion to their allocable share of the underlying Monthly Fees or DIP Financing Fee.

     vii.    *Alternate Allocation*:  Subject to Bankruptcy Court approval, the Debtors and Evercore may later agree to alter the allocations described in furtherance of the alignment goals described above.

(g) **Expenses:** The Debtors will pay reasonable and documented out-of-pocket expenses, including reasonable and documented cost of counsel.

16.    Evercore's strategic and financial expertise as well as its capital markets knowledge, financing skills, restructuring capabilities, and mergers and acquisitions expertise,

some or all of which may be required by the Debtors during the term of Evercore's engagement hereunder, were important factors in determining the Fee and Expense Structure, and the ultimate benefit to the Debtors of Evercore's Services hereunder cannot be measured by reference to the number of hours to be expended by Evercore's professionals in the performance of such Services.

17.     The Debtors submit that Evercore has obtained valuable institutional knowledge of the Debtors' businesses and financial affairs as a result of providing Services to the Debtors before the Petition Date and that Evercore is both well-qualified and uniquely able to perform these Services and assist the Debtors in these chapter 11 cases.  Moreover, the Debtors believe that Evercore's Services will assist the Debtors in a successful outcome of these chapter 11 cases.

18.     The Debtors believe that the Fee and Expense Structure is comparable to those generally charged by financial advisors and investment bankers of similar stature to Evercore for comparable engagements, both in and out of bankruptcy proceedings, and reflects a balance between a fixed, monthly fee and a contingency amount, which are tied to the consummation and closing of the Services contemplated by the Debtors and Evercore in the Engagement Letter.

19.     The Fee and Expense Structure is consistent with Evercore's normal and customary billing practices for comparably sized and complex cases and transactions, both in and out of court, involving services comparable to those to be provided in connection with these chapter 11 cases.  Moreover, the Fee and Expense Structure is consistent with and typical of arrangements entered into by Evercore and other financial advisors and investment banks in connection with the rendering of comparable services to clients such as the Debtors.  Evercore

and the Debtors accordingly believe that the Fee and Expense Structure is both reasonable and market-based.

20.     In addition, the Fee and Expense Structure has been agreed upon by the parties on an arms-length basis in anticipation that (a) a substantial commitment of professional time and effort will be required of Evercore and its professionals hereunder; (b) such commitment may foreclose other opportunities for Evercore; and (c) the actual time and commitment required of Evercore and its professionals to perform the Services hereunder may vary substantially from week to week and month to month, creating "peak load" issues for Evercore.

21.     To induce Evercore to do business with the Debtors in bankruptcy, the Fee and Expense Structure described above was established to reflect the difficulty of the extensive assignments Evercore expects to undertake and the potential for failure.  Furthermore, Evercore's Fee and Expense Structure was agreed to in conjunction with the process that resulted in the structuring and execution of the Term Sheet and Restructuring Support and Lock-up Agreement.

22.     The Debtors and Evercore negotiated the Fee and Expense Structure to function as and be an interrelated, integrated unit, to correspond with Evercore's Services, which Evercore renders not in parts, but as a whole.  It would be contrary to the intention of Evercore and the Debtors for any isolated component of the entire Fee and Expense Structure to be treated as sufficient consideration for any isolated portion of Evercore's Services.  Instead, the Debtors and Evercore intend that Evercore's Services be considered as a whole that is to be compensated by the Fee and Expense Structure in its entirety.

23.     In light of the foregoing and given (a) the numerous issues that Evercore may be required to address in the performance of the Services hereunder; (b) Evercore's commitment to the variable level of time and effort necessary to address all such issues as they arise; and (c) the

market prices for Evercore's Services for engagements of this nature both out-of-court and in a chapter 11 context, the Debtors believe that the Fee and Expense Structure is fair and reasonable and market-based under the standards set forth in section 328(a) of the Bankruptcy Code.

24.     Accordingly, as more fully described below, the Debtors believe that the Court should approve Evercore's retention subject to the standard of review set forth in section 328(a) of the Bankruptcy Code and that Evercore's compensation should not be subject to any additional standard of review under section 330 of the Bankruptcy Code, except as provided for in the Order.  As set forth in the Ying Declaration, Evercore has not shared or agreed to share any of its compensation from the Debtors with any other person, other than as permitted by section 504 of the Bankruptcy Code.

## Record Keeping and Applications for Compensation

25.     It is not the general practice of financial advisory and investment banking firms, including Evercore, to keep detailed time records similar to those customarily kept by attorneys and required by Local Rule 2016-2(d).   Because Evercore does not ordinarily maintain contemporaneous time records in tenth-hour (.10) increments or provide or conform to a schedule of hourly rates for its professionals, pursuant to Local Rule 2016-2(h), Evercore should be excused from compliance with such information requirements set forth in Local Rule 2016-2(d) and from compliance with an Interim Compensation Order with respect to Evercore's professional fees only.  Evercore should be required to maintain time records in half-hour (0.50) increments, not decimal hours, setting forth, in a summary format, a description of the services rendered by each professional and the amount of time spent on each date by each such individual in rendering services on behalf of the Debtors.

26.     Evercore will also maintain detailed records of any actual and necessary costs and expenses incurred in connection with the Services.  Evercore's applications for compensation and expenses will be paid by the Debtors pursuant to the terms of the Engagement Letter, in accordance with Local Rule 2016-2(e) and any procedures established by the Court, pursuant to an Interim Compensation Order or otherwise.

## Payments to Evercore Prior to the Petition Date

27.     During the 90 days immediately preceding the Petition Date, Evercore received the following payments in connection with both Evercore's prior engagement letter and current engagement under the Engagement Letter:  Evercore received fee payments totaling $15,450,000 and expense reimbursement payments totaling $101,600, which includes approximately $45,000 paid on account of anticipated expenses.  Other than as set forth herein, Evercore did not receive any payments from the Debtors during the 90 days immediately preceding the Petition Date.

28.     Within one year prior to the Petition Date, the Debtors paid Evercore $19,050,000 in fees and $286,893 in expense reimbursements for services rendered in connection with both Evercore's prior engagement letter and current engagement under the Engagement Letter.

29.     As of the Petition Date, the Debtors did not owe Evercore for any fees or expenses incurred prior to the Petition Date.

## Indemnification Provisions

30.     The Engagement Letter contains standard indemnification language with respect to Evercore's services.  The Debtors and Evercore believe that the indemnification provisions contained in the Engagement Letter are customary and reasonable for Evercore and comparable firms providing restructuring advisory services.  In addition, the Debtors seek to qualify and limit the indemnification provisions as provided in the Order:

31.     These indemnification provisions, as qualified and limited by the Order, are customary in this district and others.  *See*, *e.g.*, *In re Broadview Networks Holdings, Inc.*, No. 12-13581 (Bankr. S.D.N.Y. Sept. 14, 2012); *In re Circus and Eldorado Joint Venture*, No. 12 51156 (Bankr. D. Nev. July 6, 2012); *In re Delta Petroleum Corp.*, No. 11 14006 (Bankr. D. Del. Dec. 16, 2011); *In re Appleseed's Intermediate Holdings LLC*, No. 11-10160 (KG) (Bankr. D. Del. Feb. 18, 2011) (approving similar modified indemnification provisions for the retention and employment of Alvarez & Marsal North America, LLC); *In re Local Insight Media Holdings, Inc.*, No. 10-13677 (KG) (Bankr. D. Del. Dec. 17, 2010) (same); *In re Trico Marine Services, Inc.*, No. 10 12653 (Bankr. D. Del. Aug. 5, 2010); *In re Atrium Corp.*, No. 10-10150 (BLS) (Bankr. D. Del. Feb. 24, 2010) (approving similar modified indemnification provisions for the retention and employment of Deloitte Financial Advisory Services LLP); *In re Majestic Star Casino, LLC*, No. 09-14136 (KG) (Bankr. D. Del. Dec. 17, 2009) (approving similar modified indemnification provisions for the retention and employment of Moelis & Company LLC); *In re CIT Group Inc.*, No. 09 16565 (Bankr. S.D.N.Y. Nov. 1, 2009); *In re General Motors Corp.*, No. 09 50026 (Bankr. S.D.N.Y. June 1, 2009); *In re Muzak Holdings LLC*, No. 09-10422 (KJC) (Bankr. D. Del. Apr. 6, 2009) (approving similar modified indemnification provisions for the retention and employment of Moelis & Company LLC); *In re Lyondell Chem. Co.*, No. 09-10023 (Bankr. S.D.N.Y. Jan. 6, 2009).

32.     Moreover, the terms and conditions of the indemnification provisions were negotiated by the Debtors and Evercore at arm's length and in good faith.  The provisions contained in the Engagement Letter, viewed in conjunction with the other terms of Evercore's proposed retention, are reasonable and in the best interest of the Debtors, their estates, and creditors in light of the fact that the Debtors require Evercore's services to successfully

reorganize.  Accordingly, as part of this Application, the Debtors request that the Court approve the indemnification provisions as set forth in the Engagement Letter and as modified pursuant to the Order.

## Evercore's Disinterestedness

33.    In connection with the proposed retention by the Debtors in these chapter 11 cases, Evercore has received a list of parties-in-interest from the Debtors (the "Parties-In-Interest") attached to the Ying Declaration as **Exhibit 1**.

34.    To the best of Evercore's knowledge and except to the extent disclosed herein and in the Ying Declaration:  (a) Evercore is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code, as required by section 327(a) of the Bankruptcy Code and does not hold or represent an interest materially adverse to the Debtors' estates; and (b) Evercore has no connection to the Debtors, their creditors or other Parties-In-Interest in these chapter 11 cases.

35.    As set forth in further detail in the Ying Declaration, Evercore has certain connections with creditors, equity security holders and other Parties-In-Interest in these chapter 11 cases.  All of these matters, however, are unrelated to these chapter 11 cases.  Evercore does not believe that any of these matters represent an interest materially adverse to the Debtors' estates or otherwise create a conflict of interest regarding the Debtors or these chapter 11 cases.

36.    To the extent that any new relevant facts or relationships bearing on the matters described herein during the period of Evercore's retention are discovered or arise, Evercore will use reasonable efforts to promptly file a supplemental declaration, as required by Bankruptcy Rule 2014(a).

**Basis for Relief**

37.     The Debtors seek authority to employ and retain Evercore as their financial advisor and investment banker under section 327 of the Bankruptcy Code, which provides that a debtor is authorized to employ professional persons "that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the [Debtors] in carrying out their duties under this title."  11 U.S.C. § 327(a).  Section 1107(b) of the Bankruptcy Code elaborates upon sections 101(14) and 327(a) of the Bankruptcy Code in cases under chapter 11 of the Bankruptcy Code and provides that "a person is not disqualified for employment under section 327 of [the Bankruptcy Code] by a debtor in possession solely because of such person's employment by or representation of the debtor before the commencement of the case."  11 U.S.C. § 1107(b).

38.     In addition, the Debtors seek approval of the Engagement Letter (including, without limitation, the Fee and Expense Structure and the indemnification provisions in Schedule I) pursuant to section 328(a) of the Bankruptcy Code, which provides, in relevant part, that the Debtors "with the court's approval, may employ or authorize the employment of a professional person under section 327. . . on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis…"  11 U.S.C. § 328(a).  Section 328 of the Bankruptcy Code permits the compensation of professionals, including financial advisors and investment bankers, on more flexible terms that reflect the nature of their services and market conditions.  As the United States Court of Appeals for the Fifth Circuit recognized in *Donaldson Lufkin & Jenrett Sec. Corp. v. Nat'l Gypsum Co. (In re Nat'l Gypsum Co.)*, 123 F.3d 861 (5th Cir. 1997):

> Prior 1978 the most able professionals were often unwilling to work for bankruptcy estates where their compensation would be

> subject to the uncertainties of what a judge thought the work was
> worth after it had been done.  That uncertainty continues under the
> present § 330 of the Bankruptcy Code, which provides that the
> court award to professional consultants "reasonable compensation"
> based on relevant factors of time and comparable costs, etc.  Under
> present § 328 the professional may avoid that uncertainty by
> obtaining court approval of compensation agreed to with the
> trustee (or debtor or committee).

*Id.* at 862 (citations omitted), *cited in Riker, Danzig, Scherer, Hyland & Perretti LLP v. Official Comm. of Unsecured Creditors (In re Smart World Techs. LLC)*, 383 B.R. 869, 874 (S.D.N.Y. 2008).  Owing to this inherent uncertainty, courts have approved similar arrangements that contain reasonable terms and conditions under section 328 of the Bankruptcy Code.  *See, e.g.*, *In re U.S. Airways, Inc.*, No. 02-83984 (SJM) (Bankr. E.D. Va. Aug. 12, 2002); *see also In re J.L. French Auto. Castings, Inc.*, No. 06-10119 (MFW) (Bankr. D. Del. March 24, 2006).

39.    Furthermore, the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 amended section 328(a) of the Bankruptcy Code, which now provides as follows:

> The trustee, or a committee appointed under section 1102 of this
> title, with the court's approval, may employ or authorize the
> employment of a professional person under section 327 or 1103 of
> this title, as the case may be, on any reasonable terms and
> conditions of employment, including on a retainer, on an hourly
> basis, *on a fixed or percentage fee basis*, or on a contingent fee
> basis.

11 U.S.C. § 328(a) (amendment emphasized).  This change makes clear that the Debtors are able to retain a professional on a fixed or percentage fee basis, such as the Fee and Expense Structure, with bankruptcy court approval.

40.     The Engagement Letter appropriately reflects (a) the nature and scope of services to be provided by Evercore, (b) Evercore's substantial experience with respect to financial advisory and investment banking services and (c) the fee structures typically utilized by Evercore

and other leading financial advisors and investment bankers that do not bill their clients on an hourly basis.

41.    Similar fixed and contingency fee arrangements have been approved and implemented by courts in other large chapter 11 cases. *See, e.g.*, *In re Broadview Networks Holdings, Inc.*, No. 12-13581 (Bankr. S.D.N.Y. Sept. 14, 2012); *In re Circus and Eldorado Joint Venture*, No. 12-51156 (Bankr. D. Nev. July 6, 2012); *In re Delta Petroleum Corp.*, No. 11-14006 (Bankr. D. Del. Dec. 16, 2011); *In re Trico Marine Services, Inc.*, No. 10-12653 (Bankr. D. Del. Aug. 5, 2010); *In re CIT Group Inc.*, No. 09-16565 (Bankr. S.D.N.Y. Nov. 1, 2009); *In re General Motors Corp.*, No. 09-50026 (Bankr. S.D.N.Y. June 1, 2009); *In re Lyondell Chem. Co.*, No. 09-10023 (Bankr. S.D.N.Y. Jan. 6, 2009).

42.    Moreover, Bankruptcy Rule 2014 requires that an application for retention include:

> [S]pecific facts showing the necessity for the employment, the name of the [firm] to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the [firm's] connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States Trustee, or any person employed in the office of the United States Trustee.

Fed. R. Bankr. P. 2014.

43.    The terms and conditions of the Engagement Letter, including the indemnification provisions contained therein, were negotiated by the Debtors and Evercore at arm's-length and in good faith. The Debtors and Evercore respectfully submit that the terms of Evercore's retention are customary and reasonable for investment banking and financial advisory engagements, both out-of-court and in comparable chapter 11 cases, and in the best interests of the Debtors' estates,

creditors, and all Parties-In-Interest.  Accordingly, the Debtors believe that Evercore's retention on the terms and conditions proposed herein is appropriate.

<u>**Notice**</u>

44.     The Debtors shall provide notice of this Application on the date hereof via U.S. first class mail to:  (a) the Office of the U.S. Trustee for the District of Delaware; (b) (i) the entities listed on the Consolidated List of Creditors Holding the 50 Largest Unsecured Claims filed pursuant to Bankruptcy Rule 1007(d); and (ii) proposed counsel to the Creditors' Committee; (c) Wilmington Trust, N.A., in its capacity as administrative agent under the TCEH first lien credit agreement and collateral agent under the TCEH intercreditor agreements and counsel thereto; (d) Bank of New York Mellon Trust Company, N.A., in its capacity as indenture trustee under:  (i) the TCEH unsecured pollution control revenue bonds; and (ii) the EFCH 2037 Notes due 2037, and counsel thereto; (e) American Stock Transfer & Trust Company, LLC, in its capacity as indenture trustee under:  (i) the 9.75% EFH senior unsecured notes due 2019; (ii) the 10.0% EFH senior unsecured notes due 2020; (iii) the 10.875% EFH LBO senior unsecured notes due 2017; (iv) the 11.25%/12.0% EFH LBO toggle notes due 2017; (v) the 5.55% EFH legacy notes (series P) due 2014; (vi) the 6.50% EFH legacy notes (series Q) due 2024; and (vii) the 6.55% EFH legacy notes (series R) due 2034, and counsel thereto; (f) Computershare Trust Company, N.A. and Computershare Trust Company of Canada, in their capacities as indenture trustee under:  (i) the 11.0% EFIH senior secured second lien notes due 2021; and (ii) the 11.75% EFIH senior secured second lien notes due 2022, and counsel thereto; (g) UMB Bank, N.A. in its capacity as indenture trustee under:  (i) the 9.75% EFIH senior unsecured notes due 2019; and (ii) the 11.25%/12.25% EFIH senior toggle notes due 2018, and counsel thereto; (h) BOKF, NA, dba Bank of Arizona, in its capacity as indenture trustee under 11.50% TCEH senior secured notes due 2020, and counsel thereto; (i) CSC Trust Company of Delaware in its capacity

as indenture trustee under:  (i) the 6.875% EFIH senior secured notes due 2017; and (ii) the 10.0% EFIH senior secured notes due 2020, and counsel thereto; (j) Law Debenture Trust Company of New York in its capacity as indenture trustee under:  (i) the 10.25% TCEH senior unsecured notes due 2015; and (ii) the 10.50%/11.25% TCEH senior toggle notes due 2016, and counsel thereto; (k) Wilmington Savings Fund Society, FSB in its capacity as indenture trustee under the 15.0% TCEH senior secured second lien notes due 2021, and counsel thereto; (l) counsel to certain holders of claims against the Debtors regarding each of the foregoing described in clauses (c) through (k); (m) the agent for the TCEH debtor-in-possession financing facility and counsel thereto; (n) the agent for the EFIH debtor-in-possession financing facility and counsel thereto; (o) counsel to certain holders of equity in Texas Energy Future Holdings Limited Partnership; (p) counsel to the Ad Hoc Committee of TCEH Unsecured Noteholders; (q) counsel to the Ad Hoc Committee of TCEH Second Lien Noteholders; (r) Oncor Electric Delivery Holdings Company LLC and counsel thereto; (s) Oncor Electric Delivery Company LLC and counsel thereto; (t) the Securities and Exchange Commission; (u) the Internal Revenue Service; (v) the Office of the United States Attorney for the District of Delaware; (w) the Office of the Texas Attorney General on behalf of the Public Utility Commission of Texas; (x) counsel to the Electric Reliability Council of Texas; (y) those parties that have requested notice pursuant to Bankruptcy Rule 2002; and (z) Evercore.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

### **No Prior Request**

45.    No prior request for the relief sought in this Application has been made to this or any other court.

[*Remainder of page intentionally left blank.*]

21

WHEREFORE, the Debtors respectfully request that the Court enter the Order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested herein and granting such other and further relief as is appropriate under the circumstances.

Wilmington, Delaware
Dated: May 29, 2014

*/s/ Paul M. Keglevic*

Paul M. Keglevic
Executive Vice President, Chief Financial
Officer, and Co-Chief Restructuring Officer
of EFH Corp., EFIH, and TCEH LLC