**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | ) | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) | Case No. 14-10979 (CSS) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | Hearing Date:  June 30, 2014 at 9:30 a.m. |
| | | Objection Deadline:  June 12, 2014 at 4:00 p.m. |

**APPLICATION OF ENERGY FUTURE HOLDINGS CORP.,** ***ET AL.*****,
FOR ENTRY OF AN ORDER AUTHORIZING THE DEBTORS TO
RETAIN AND EMPLOY KPMG LLP AS BANKRUPTCY ACCOUNTING AND
TAX ADVISORS EFFECTIVE** ***NUNC PRO TUNC*** **TO THE PETITION DATE**

The above-captioned debtors and debtors in possession (the "Debtors") file this application (this "Application") for the entry of an order (the "Order"), substantially in the form attached hereto as **Exhibit A**, authorizing the Debtors to employ and retain KPMG LLP ("KPMG") as bankruptcy accounting and tax advisors effective *nunc pro tunc* to the Petition Date (as defined herein).  In support of this Application, the Debtors submit the *Declaration of Thomas D. Bibby in Support of the Application of Energy Future Holdings Corp.,* et al.*, for Entry of an Order Authorizing the Debtors to Retain and Employ KPMG LLP as Bankruptcy Accounting and Tax Advisors Effective* Nunc Pro Tunc *to the Petition Date* (the "Bibby Declaration"), attached hereto as **Exhibit B**.  In further support of this Application, the Debtors respectfully state as follows.

---

[1]  The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810.  The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201.  Due to the large number of debtors in these chapter 11 cases, for which joint administration has been granted on an interim basis, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

**Jurisdiction and Venue**

1. The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Debtors consent pursuant to rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Bankruptcy Rules") to the entry of a final order by the Court in connection with this Application to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory bases for the relief requested herein are sections 327(a), 328, and 330 of title 11 of the United States Code (the "Bankruptcy Code"), rules 2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Local Bankruptcy Rules 2014-1 and 2016-2.

**Relief Requested**

4. By this Application, the Debtors seek entry of an Order authorizing the employment and retention of KPMG pursuant to sections 327(a), 328, and 330 of the Bankruptcy Code, Bankruptcy Rules 2014(a) and 2016, and Local Bankruptcy Rules 2014-1 and 2016-2 as the Debtors' bankruptcy accounting and tax advisors in accordance with the terms and conditions set forth in that certain engagement letter, effective as of April 9, 2013, as amended by that certain amendment effective as of February 20, 2014, between Energy Future Holdings Corp. ("EFH Corp."), Energy Future Intermediate Holding Company LLC ("EFIH"), Energy Future

Competitive Holdings Company LLC ("EFCH"), and Texas Competitive Electric Holdings Company LLC ("TCEH LLC," and together with EFH Corp., EFIH, and EFCH, the "Company Parties") and KPMG, a copy of which is attached hereto as **Exhibit C** and incorporated herein by reference (the "Engagement Letter").[2]

## Background

5. On April 29, 2014 (the "Petition Date"), each of the Debtors filed a voluntary petition with the Court under chapter 11 of the Bankruptcy Code. The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. The Court has entered an interim order for joint administration of these chapter 11 cases. The Court has not appointed a trustee. The Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") formed an official committee of unsecured creditors in these chapter 11 cases on May 13, 2014 [D.I. 420]. Further information regarding the Debtors' business operations and capital structure is set forth in the *Declaration of Paul Keglevic, Executive Vice President, Chief Financial Officer, and Co-Chief Restructuring Officer of Energy Future Holdings Corp.*, et al., *in Support of First Day Motions* [D.I. 98].

## KPMG's Qualifications

6. KPMG is a firm of independent public accountants providing audit, tax, and accounting advisory services. KPMG operates 87 offices with more than 23,000 employees and partners in the United States alone. KPMG has significant qualifications, experience, and

---

[2] Additionally, further detail on the specific services to be provided by KPMG are outlined in various statements of work agreed upon by the Company Parties and KPMG and executed from time to time consistent with that certain Master Services Agreement dated as of November 1, 2009 by and between EFH Corporate Services Company and KPMG (the "MSA"). The MSA and current statements of work are attached hereto as **Exhibit D**.

extensive knowledge in the fields of accounting and taxation for large, sophisticated companies both in and out of chapter 11 bankruptcy.

7. KPMG has provided accounting and tax advisory services in numerous large cases, including most recently: *In re LCI Holding Co.*, No. 12-13319 (KG) (Bankr. D. Del. Jan. 10, 2013) (authorizing the employing of KPMG as service provider for audit, tax compliance, and tax consulting services); *In re Delta Petroleum Corp.*, No. 11-14006 (KJC) (Bankr. D. Del. Feb. 14, 2012) (same); *In re Muzak Holdings LLC*, No. 09-10422 (KJC) (Bankr. D. Del. Sept. 18, 2009) (authorizing the employment and retention of KPMG as accounting and tax advisors); *In re Masonite Corp.*, No. 09-10844 (PJW) (Bankr. D. Del. June 25, 2009) (authorizing the employment and retention of KPMG as tax advisors).[3]

8. In addition, since April 9, 2013, KPMG has provided many of the Services (as defined below) to the Debtors in connection with their restructuring efforts. In providing such prepetition professional services to the Debtors, KPMG has become familiar with the Debtors and their businesses, including the Debtors' financial affairs, debt structure, operations, and related matters. Having worked with the Debtors' management and their other advisors, KPMG has developed relevant experience and expertise regarding the Debtors that will assist it in providing effective and efficient services in these chapter 11 cases. Accordingly KPMG is both well-qualified and uniquely able to represent the Debtors in these chapter 11 cases in an efficient and timely manner.

---

[3] Because of the voluminous nature of the orders cited herein, they are not attached to the Application. Copies of these orders are available on request of the Debtors' counsel.

## Services to be Provided

9.  Subject to further order of the Court and consistent with the Engagement Letter, KPMG will provide accounting, financial reporting, and tax advisory services as KPMG and the Debtors shall deem appropriate and feasible in order to advise the Debtors during the course of these chapter 11 cases, including, but not limited to the following (collectively, the "Services"):

Bankruptcy Accounting:

    (a) provide advice, recommendations, and insight into leading practices to assist in the Debtors' implementation of operational protocols for bankruptcy reporting, which may include assisting with the preparation of Monthly Operating Reports by the Debtors;

    (b) assist with debtor-in-possession reporting, and assist Debtors' management with identifying liabilities subject to compromise in the balance sheet, reorganization items in the profit and loss statement, and timing and classification of claim amounts;;

    (c) provide accounting considerations for specific transactions in each case which will relate to the applications of ASC 852 Reorganizations, or "Fresh Start" Accounting;

    (d) assist with general accounting considerations, including those associated with entering bankruptcy and potential deconsolidation of any Debtor entities;

    (e) assist the Debtors with developing a planning summary for accounting that considers various alternative approaches to timing, effective date, valuation approach, extent of top side versus push down recognition of the new values and the benefits and implications of each consideration of the desired approach on each major asset category;

    (f) assist the Debtors with documenting approach to identified assets and liabilities, such as certain working capital accounts, certain deferred or accrued expenses or other accounts that do not lend themselves to a valuation opinion but will require an alternate approach to justifying the basis of measurement in fresh start reporting;

    (g) assist the Debtors' management with documentation of whitepapers for accounting issues, position papers, and accounting policies;

    (h) participate in discussions with auditors and other advisors to discuss accounting matters and conclusions;

5

(i) assist the Debtors' management with its analysis and documentation of financial reporting and disclosure requirements for Predecessor/Successor financial statements;

(j) consider the accounting and reporting considerations under ASC 810 and related literature associated with entering bankruptcy;

(k) consider the alternatives in approach, timing, order and adoption dates for fresh start reporting, the alternatives for on-going efficient processing of detailed accounting records, the potential approaches for updating detailed records to reflect changes in values and the new accounting requirements following emergence;

(l) evaluate whether the conditions in ASC 852 are met to justify adoption of a new, fresh start basis;

(m) research and document to support Debtors' accounting and reporting conclusions reached in accordance with ASC 852;

(n) monitor the bankruptcy proceedings to compare the claims filed, allowed, and existing debtor balances to (i) adjust the existing recorded liabilities to the allowed claims, and (ii) reflect the Debtor's estimates of claims to be settled upon emergence for financial reporting;

(o) identify and segregate expenses, restructuring costs and losses for classification as "reorganization items" to properly portray amounts from activities to restructure the operations prior to emergence;

(p) assess the degree to which aggregate adjustments and disclosures are utilized to report on a fresh start basis from the date of emergence until such amounts are recorded to the Debtors' detailed accounting records;

(q) develop an approach to repopulate the detailed records with new Fair Values ("FV") and asset lives and assisting with updating fixed asset and other detailed accounting records with the concluded FV including assistance with creating and testing journal entry upload and Property Plant and Equipment allocation;

(r) identify differences between book and tax balances that arise from the plan of emergence and fresh start accounting;

(s) consider the deferred tax impact on the outside basis of investments in insolvent subsidiaries;

(t) assess the impact of available federal and state tax elections;

(u) assist Debtors' personnel in supporting key activities to review invoices processed through accounts payable to determine the proper service period applicable to the invoice.

(v) assist Debtors' personnel in supporting key activities related to the remediation of IT deficiencies identified through Debtors' Sarbanes-Oxley "SOX" compliance efforts;

(w) meet with key project leadership and review available project and audit documentation to gain an understanding of the environment; and

(x) define an approach, timing, and resource plan for developing remediation recommendations in the next project phase.

Tax Consulting Services:

(a) advise regarding sales and use taxes with respect to various state and local tax matters that may arise;

(b) represent the Debtors in their Texas Sales and Use Tax and Miscellaneous Gross Receipts Tax examinations (the "Examination") for the various taxing period and legal entities outlined in Schedule A-14 signed on January 13, 2014;

(c) develop strategy with the Debtors for best handling the Examination;

(d) identify liabilities and overpayments of Sales and Use Tax and Miscellaneous Gross Receipts Tax;

(e) assist the Debtors in their dealings with the Texas Comptroller's Office examination team, meeting with the team as appropriate;

(f) assist the Debtors in preparing submissions in response to Texas Comptroller's Office Appeals process, or participate in an alternative dispute resolution program;

(g) assist with the processing and tracking of certain assessment notices, appeal notices, hearing notices for the Debtors' property tax accounts as requested by the Debtors;

(h) provide tax consulting services regarding the bankruptcy accounting advisory work performed including any necessary assistance with tax accounting analysis/calculations in connection with new valuations resulting from fresh start accounting and/or tax attribute changes;

(i) assist with review of the business personal property assets related to the mining segment of the business and assist with determining whether the cost

> for the business personal property accounts are reasonable compared to the value of such assets; and
>
> (j) provide other property tax consulting and support as requested.

10. In addition to the foregoing, KPMG will provide other accounting and tax advisory services as may be requested from time to time. To the extent those requested services are outside the Engagement Letter, KPMG and the Debtors may amend the Engagement Letter to reflect any substantive changes. For the avoidance of doubt, pursuant to the Engagement Letter, KPMG will perform the Services for Energy Future Holdings Corp. and its direct and indirect subsidiaries, other than Oncor Holdings LLC and its subsidiaries.

### Efforts to Avoid Duplication of Services

11. The Debtors have chosen Ernst & Young LLP ("EY") to provide tax advisory and information technology services, PricewaterhouseCoopers LLP ("PwC") to provide internal auditing, information security, and tax consulting services, and Deloitte & Touche LLP ("Deloitte & Touche") to provide independent auditing services (and together with EY and PwC, the "Accounting Firms"). KPMG has been retained to provide bankruptcy accounting and tax consulting services, which are distinct from the services to be provided by the other Accounting Firms. Moreover, KPMG has and will continue to work closely with the Debtors to prevent any duplication of efforts in the course of its engagement with respect to the services being performed by the Accounting Firms.

### Professional Compensation

12. Pursuant to section 328(a) of the Bankruptcy Code, the Debtors request that the Court approve the retention of KPMG at the hourly rates actually expended by each assigned staff member at each staff member's hourly billing rate. In the normal course of KPMG's business, hourly rates are subject to periodic increase. To the extent such hourly rates are

increased, KPMG requests that, with respect to the work to be performed after such increase, the rates listed below be amended to reflect the increase. The Debtors have agreed to compensate KPMG for professional services rendered at its normal and customary hourly rate, subject to the reductions discussed below.[4]

13.     The fees charged for bankruptcy accounting and fresh-start reporting services are based on the actual time incurred to complete the work. In the normal course of KPMG's business, hourly rates are subject to periodic increase. The majority of fees to be charged reflect a reduction of 26-47% from KPMG's normal and customary rates, depending on the types of services to be rendered. The hourly rates for bankruptcy accounting services rendered by KPMG are as follows:

| Bankruptcy Accounting Services | Discounted Hourly Rate |
| --- | --- |
| Partners & Managing Directors | $610 |
| Directors | $500 |
| Managers | $375 |
| Senior Associates | $275 |
| Associates | $190 |

14.     Prior to the Petition Date, two separate retainers, both in the amount of $350,000, were paid to KPMG for bankruptcy accounting services. Of the total amount received, approximately $280,292 remains available as of the Petition Date to be credited against future bankruptcy accounting services and expenses.

15.     The fees for reviewing invoices process through Debtors' Accounts Payable ("AP Services") will be based on the actual time incurred to complete the work, not to exceed

---

[4] If in connection with any subsequent agreements, KPMG is retained to perform additional services at different rates, such rates will be disclosed in connection with the relevant agreements. As stated above, KPMG and the Debtors do not intend to seek separate retention orders with regard to any such agreements

$480,000. The majority of fees to be charged reflect a reduction of 65-67% from KPMG's normal and customary rates. The hourly rates for AP Services rendered by KPMG are as follows:

| AP Services | Discounted Hourly Rate |
|---|---|
| Managers | $250 |
| Associates | $125 |

16.    The fees charged for SOX IT Control Remediation ("SOX Remediation Services") are based on the actual time incurred to complete the work, not to exceed $35,000. The majority of the fees to be charged reflect a reduction of approximately 62 - 67% from KPMG's normal and customary rates. The hourly rates for SOX Remediation Services rendered by KPMG are as follows:

| SOX Remediation Services | Discounted Hourly Rate |
|---|---|
| Partners/Managing Directors | $325 |
| Managers | $250 |
| Associates | $125 |

17.    The fees charged for tax consulting services are based on the actual time incurred to complete the work. The majority of fees to be charged reflect a reduction of 30-50% from KPMG's normal and customary rates, depending on the types of services to be rendered. The hourly rates for tax consulting services rendered by KPMG are as follows:

| Tax Consulting Services | Discounted Hourly Rate |
|---|---|
| Partners & Principals | $485-$682 |
| Directors | $485 |
| Senior Managers | $425-$500 |
| Managers | $310-$437 |
| Senior Associates | $250-$350 |

| | |
|---|---|
| Associates | $175-$250 |
| Paraprofessionals | $140-$175 |

18.     Prior to the Petition Date, a retainer in the amount of $100,000 was paid by the Debtors to KPMG for state tax services and applied fully to invoices for services incurred prior to the Petition Date.

19.     KPMG also will seek reimbursement for reasonable, documented, and necessary expenses incurred, including, but not limited to meals, lodging, travel, photocopying, delivery service, postage, vendor charges, and other out-of-pocket expenses incurred in providing professional services.

20.     KPMG intends to apply for compensation for professional services rendered and reimbursement of expenses incurred in connection with these chapter 11 cases, subject to the Court's approval and in compliance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, the guidelines (the "<u>Trustee Guidelines</u>") established by the U.S. Trustee and any other applicable procedures and orders of the Court, on an hourly basis.  To that end, contemporaneously herewith, the Debtors have filed the *Motion of Energy Future Holdings Corp., et al., for Entry of an Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals*, pursuant to which KMPG intends to submit requests for compensation.

## **Indemnification Provisions**

21.     The Engagement Letter also contains the following standard indemnification language with respect to KPMG's services:

>  (a) agreement to indemnify, hold harmless, and defend KPMG from and against any and all liabilities for physical injury to, or illness or death of, any person regardless of status, and damage or destruction of any tangible property,

which KPMG may sustain or incur, to the extent that such Liabilities result from the negligence or willful misconduct of the Debtors;

(b) agreement to indemnify, defend and hold harmless KPMG from and against any and all liabilities incurred or suffered by or asserted against KPMG in connection with a third party claim to the extent resulting from such reliance upon KPMG's advice, recommendations, information, or work product without adhering to the notice requirements of paragraph 4(c) of Appendix 1 to the Engagement Letter. The foregoing indemnification obligation applies regardless of whether the third party claim alleges a breach of contract, violation of statute or tort (including without limitation negligence) by KPMG; and

(c) in the event KPMG is requested to testify or produce its documents relating to the services under the Engagement Letter pursuant to subpoena or other legal process in judicial or administrative proceedings to which it is not a party, or in connection with an informal inquiry or investigation with the consent of the Debtors, the Debtors shall reimburse KPMG for its time and expenses, including reasonable attorney's fees, incurred in responding to such requests.

22. The Debtors and KPMG believe that the indemnification provisions contained in the Engagement Letter are customary and reasonable for KPMG and comparable firms providing restructuring advisory services. In addition, pursuant to the Order, the Debtors seek to qualify and limit the indemnification provisions as follows:

(a) prohibiting KPMG from receiving indemnification, contribution or reimbursement for services other than those described in the Agreements and the Application, unless such services and indemnification therefor are approved by the Court; <u>provided</u>, that to the extent additional agreement(s) are filed with the Court and no parties object to such agreement(s) in accordance with the procedures described in the immediately preceding Ordered paragraph, such agreement(s) shall be deemed approved by the Court;

(b) eliminating the Debtors' obligation to indemnify KPMG, or provide contribution or reimbursement to KPMG, for any claim or expense that is either: (i) judicially determined (the determination having become final) to have arisen from KPMG's bad faith, self-dealing, breach of fiduciary duty (if any such duty exists), gross negligence or willful misconduct; or (ii) judicially determined (the determination having become final), based on a breach of KPMG's contractual obligations to the Debtor; or (iii) settled prior to a judicial determination as to the exclusions set forth in clauses (i) and (ii) immediately above, but determined by the Court, after notice and a hearing to be a claim or expense for which KPMG should not receive indemnity, contribution or reimbursement under the terms of KPMG's retention by the

>
> Debtors pursuant to the terms of the Agreements and Application, as modified by this Order; and
>
> (c) requiring KPMG to file an application with the Court if it believes it is entitled to the payment of any amounts by the Debtors on account of the Debtors' indemnification, contribution, and/or reimbursement obligations under the Engagement Letter, including, without limitation, the advancement of defense costs, (as modified by the Order) before the earlier of (i) the entry of an order confirming a chapter 11 plan in these cases (that order having become a final order no longer subject to appeal), and (ii) the entry of an order closing these chapter 11 cases and prohibiting the Debtors from paying any such amounts to KPMG before the entry of an order by the Court approving such payment.

23.   These indemnification provisions, as qualified and limited by the Order, are customary in this district and others. *See*, *e.g.*, *In re Penson Worldwide, Inc.*, No. 13-10061 (PJW) (Bankr. D. Del. Feb. 7, 2013) (approving similar modified indemnification provisions for the the retention and employment of KPMG); *In re LCI Holding Co.*, No. 12-13319 (KG) (Bankr. D. Del. Jan. 10, 2013) (same); *In re Delta Petroleum Corp.*, No. 11-14006 (KJC) (Bankr. D. Del. Feb. 14, 2012) (same); *In re Muzak Holdings LLC*, No. 09-10422 (KJC) (Bankr. D. Del. Sept. 18, 2009) (same); *In re Atrium Corp.*, No. 10-10150 (BLS) (Bankr. D. Del. Feb. 24, 2010) (approving similar modified indemnification provisions for the retention and employment of Deloitte Financial Advisory Services LLP); *In re Majestic Star Casino, LLC*, No. 09-14136 (KG) (Bankr. D. Del. Dec. 17, 2009) (approving similar modified indemnification provisions for the retention and employment of Moelis & Company LLC).

24.   Moreover, the terms and conditions of the indemnification provisions were negotiated by EFCH and KPMG at arm's length and in good faith. The provisions contained in the Engagement Letter, viewed in conjunction with the other terms of KPMG's proposed retention, are reasonable and in the best interest of the Debtors, their estates, and creditors in light of the fact that the Debtors require KPMG's services to successfully reorganize. Accordingly, as part of this Application, the Debtors request that the Court approve the

indemnification provisions as set forth in the Engagement Letter and as modified pursuant to the Order.

### KPMG's Disinterestedness

25. In connection with the proposed retention by the Debtors in these chapter 11 cases, KPMG received and reviewed a list of parties-in-interest from the Debtors (the "Parties-In-Interest") attached hereto as **Schedule 1**.

26. KPMG has reviewed its internal electronic databases and, to the best of the Debtors' knowledge and except to the extent disclosed herein and in the Bibby Declaration, KPMG: (a) is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code; (b) does not hold or represent an interest adverse to the Debtors' estates; and (c) has no connection to the Debtors, their creditors, or their related parties. To the extent that KPMG discovers any new relevant facts or relationships bearing on the matters described herein during the period of KPMG's retention, KPMG will use reasonable efforts to file promptly a supplemental declaration, as required by Bankruptcy Rule 2014(a).

27. On May 17, 2013, KPMG received a retainer in the amount of $350,000. An additional retainer of $350,000 was received by KPMG from the Debtors on September 30, 2013, and another on February 10, 2014 for $100,000, which will be applied to outstanding services incurred prior to the Petition Date. In the event that the amount of the retainer exceeds the amount of any fees and expenses incurred prior to the Petition Date, KPMG will credit the difference to the Debtors in its first fee application. According to KPMG's books and records, during the 90-day period prior to the Petition Date, KPMG received approximately $702,473 from the Debtors for professional services performed and expenses incurred. As of the Petition Date, no prepetition amounts are owed to KPMG.

**Basis for Relief**

28.Section 327(a) of the Bankruptcy Code provides that a debtor subject to court approval:

> [M]ay employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the [debtor] in carrying out the [debtor]'s duties under this title.

11 U.S.C § 327(a).

29.Moreover, Bankruptcy Rule 2014 requires that an application for retention include:

> [S]pecific facts showing the necessity for the employment, the name of the [firm] to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the [firm's] connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States Trustee, or any person employed in the office of the United States Trustee.

Fed. R. Bankr. P. 2014.

30.The terms and conditions of the Engagement Letter were negotiated by the Company Parties and KPMG at arm's length and in good faith. The Debtors and KPMG respectfully submit that the terms of KPMG's retention are customary and reasonable for accounting and tax advisory engagements, both out of court and in comparable chapter 11 cases, and in the best interests of the Debtors' estates, creditors, and all Parties-In Interest.

**Notice**

31.The Debtors shall provide notice of this Application on the date hereof via U.S. first class mail to: (a) the Office of the U.S. Trustee for the District of Delaware; (b) (i) the entities listed on the Consolidated List of Creditors Holding the 50 Largest Unsecured Claims

filed pursuant to Bankruptcy Rule 1007(d); and (ii) proposed counsel to the Creditors' Committee; (c) Wilmington Trust, N.A., in its capacity as administrative agent under the TCEH first lien credit agreement and collateral agent under the TCEH intercreditor agreements and counsel thereto; (d) Bank of New York Mellon Trust Company, N.A., in its capacity as indenture trustee under: (i) the TCEH unsecured pollution control revenue bonds; and (ii) the EFCH 2037 Notes due 2037, and counsel thereto; (e) American Stock Transfer & Trust Company, LLC, in its capacity as indenture trustee under: (i) the 9.75% EFH senior unsecured notes due 2019; (ii) the 10.0% EFH senior unsecured notes due 2020; (iii) the 10.875% EFH LBO senior unsecured notes due 2017; (iv) the 11.25%/12.0% EFH LBO toggle notes due 2017; (v) the 5.55% EFH legacy notes (series P) due 2014; (vi) the 6.50% EFH legacy notes (series Q) due 2024; and (vii) the 6.55% EFH legacy notes (series R) due 2034, and counsel thereto; (f) Computershare Trust Company, N.A. and Computershare Trust Company of Canada, in their capacities as indenture trustee under: (i) the 11.0% EFIH senior secured second lien notes due 2021; and (ii) the 11.75% EFIH senior secured second lien notes due 2022, and counsel thereto; (g) UMB Bank, N.A. in its capacity as indenture trustee under: (i) the 9.75% EFIH senior unsecured notes due 2019; and (ii) the 11.25%/12.25% EFIH senior toggle notes due 2018, and counsel thereto; (h) BOKF, NA, dba Bank of Arizona, in its capacity as indenture trustee under 11.50% TCEH senior secured notes due 2020, and counsel thereto; (i) CSC Trust Company of Delaware in its capacity as indenture trustee under: (i) the 6.875% EFIH senior secured notes due 2017; and (ii) the 10.0% EFIH senior secured notes due 2020, and counsel thereto; (j) Law Debenture Trust Company of New York in its capacity as indenture trustee under: (i) the 10.25% TCEH senior unsecured notes due 2015; and (ii) the 10.50%/11.25% TCEH senior toggle notes due 2016, and counsel thereto; (k) Wilmington Savings Fund Society, FSB in its capacity as indenture trustee

under the 15.0% TCEH senior secured second lien notes due 2021, and counsel thereto; (l) counsel to certain holders of claims against the Debtors regarding each of the foregoing described in clauses (c) through (k); (m) the agent for the TCEH debtor-in-possession financing facility and counsel thereto; (n) the agent for the EFIH debtor-in-possession financing facility and counsel thereto; (o) counsel to certain holders of equity in Texas Energy Future Holdings Limited Partnership; (p) counsel to the Ad Hoc Committee of TCEH Unsecured Noteholders; (q) counsel to the Ad Hoc Committee of TCEH Second Lien Noteholders; (r) Oncor Electric Delivery Holdings Company LLC and counsel thereto; (s) Oncor Electric Delivery Company LLC and counsel thereto; (t) the Securities and Exchange Commission; (u) the Internal Revenue Service; (v) the Office of the United States Attorney for the District of Delaware; (w) the Office of the Texas Attorney General on behalf of the Public Utility Commission of Texas; (x) counsel to the Electric Reliability Council of Texas; (y) those parties that have requested notice pursuant to Bankruptcy Rule 2002; and (z) KPMG.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

## **No Prior Request**

32.    No prior request for the relief sought in this Application has been made to this or any other court.

[*Remainder of page intentionally left blank.*]

WHEREFORE, the Debtors respectfully request that the Court enter the Order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested herein and granting such other and further relief as is appropriate under the circumstances.

Wilmington, Delaware
Dated:  May 29, 2014

        */s/ Paul M. Keglevic*
        Paul M. Keglevic
        Executive Vice President, Chief Financial
        Officer, and Co-Chief Restructuring Officer
        of EFH Corp., EFIH, and TCEH LLC