**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) ) | Chapter 11 |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) ) ) | Case No. 14-10979 (CSS) |
| Debtors. | ) ) ) | (Jointly Administered) |
| | | Hearing Date: June 30, 2014 at 9:30 a.m. |
| | | Objection Deadline: June 12, 2014 at 4:00 p.m. |

**APPLICATION OF ENERGY FUTURE
HOLDINGS CORP., *ET AL*., FOR AN ORDER AUTHORIZING
ENERGY FUTURE HOLDINGS CORP. TO RETAIN AND EMPLOY THOMPSON &
KNIGHT LLP AS SPECIAL COUNSEL FOR CERTAIN TAX-RELATED
MATTERS, EFFECTIVE *NUNC PRO TUNC* TO THE PETITION DATE**

The above captioned debtors and debtors in possession (collectively, the "Debtors") file this application (this "Application") for the entry of an order (the "Order"), substantially in the form attached hereto as **Exhibit A**, authorizing the Energy Future Holdings Corp. ("EFH Corp.") to employ and retain Thompson & Knight LLP ("T&K") as special counsel to the Debtors for certain tax-related matters effective *nunc pro tunc* to the Petition Date (as defined herein). In support of this Application, the Debtors submit the *Declaration of Mary McNulty in Support of of the Application of Energy Future Holdings Corp.,* et al., *for an Order Authorizing Energy Future Holdings Corp. to Retain and Employ Thompson & Knight LLP as Special Counsel for Certain Tax-Related Matters, Effective* Nunc Pro Tunc *to the Petition Date* (the "McNulty

---

[1] The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, for which joint administration has been granted on an interim basis, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

Declaration"), attached hereto as **Exhibit B**, and the *Declaration of Paul Keglevic in Support of of the Application of Energy Future Holdings Corp., et al., for an Order Authorizing Energy Future Holdings Corp. to Retain and Employ Thompson & Knight LLP as Special Counsel for Certain Tax-Related Matters, Effective* Nunc Pro Tunc *to the Petition Date* (the "Keglevic Declaration"), attached hereto as **Exhibit C**. In further support of this Application, the Debtors respectfully state as follows.

### Jurisdiction and Venue

1.  The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Debtors consent pursuant to rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Bankruptcy Rules") to the entry of a final order by the Court in connection with this Application to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.  The statutory bases for the relief requested in this Application are sections 327(e), 328, and 330 of title 11 of the United States Code (the "Bankruptcy Code"), rules 2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Local Bankruptcy Rules 2014-1 and 2016-2.

**Relief Requested**

4.      By this Application, the Debtors seek entry of an Order authorizing the employment and retention of T&K, effective as of the Petition Date, as special counsel to EFH Corp. for certain tax-related matters in accordance with the terms and conditions set forth in those certain engagement letters between EFH Corp. and T&K dated: (a) June 12, 2006, for Corporate Tax, (b) May 13, 2009, for the 1997-2002 Tax Years, (c) May 13, 2009, for the 2003-2006 Tax Years, (d) August 12, 2009, for Texas Sales Tax (later renamed Texas Tax Issues), (e) March 28, 2011, for the Tax Sharing Agreement, (f) December 20, 2013, for Debt Restructuring, all as supplemented by letters dated March 8, 2013, and January 6, 2014, and (g) April 7, 2014, for the record retention program engagement (collectively, the "Engagement Letters"), copies of which are attached as **Exhibit 1** to **Exhibit A** and incorporated herein by reference.

**Background**

5.      On April 29, 2014 (the "Petition Date"), each of the Debtors filed a voluntary petition with the Court under chapter 11 of the Bankruptcy Code. The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. The Court has entered an interim order for joint administration of these chapter 11 cases. The Court has not appointed a trustee. The Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") formed an official committee of unsecured creditors in these chapter 11 cases on May 13, 2014 [D.I. 420]. Further information regarding the Debtors' business operations and capital structure is set forth in the *Declaration of Paul Keglevic, Executive Vice President, Chief Financial Officer, and Co-Chief Restructuring Officer of Energy Future Holdings Corp.*, et al., *in Support of First Day Motions* [D.I. 98].

**T&K's Qualifications**

6.      Since June 2006, T&K has represented the EFH Corp. in connection with various tax matters, including corporate tax issues, tax sharing agreements, Texas tax issues, and Internal Revenue Service ("IRS") controversies relating to the Debtors' 1997-2006 tax years.  In December 2013, the Debtors retained T&K to provide tax advice relating to the Debtors' ongoing restructuring efforts.  The Debtors have chosen to retain T&K to provide tax advice in connection with their ongoing restructuring, IRS tax controversies, and other tax matters because of T&K's experience in providing tax advice to energy companies such as the Debtors and in representing large corporate taxpayers before the IRS.  In addition, T&K has extensive knowledge and an established reputation in energy reorganizations, IRS practice and procedure, and debt restructurings under chapter 11 of the Bankruptcy Code.  The Debtors believe that T&K will be able to provide efficient and effective legal counsel to the Debtors over the course of the Debtors' chapter 11 cases, which will not be duplicative of legal counsel provided by other firms.

7.      In providing extensive prepetition professional tax services to the Debtors, T&K has become familiar with the Debtors and their business, including the Debtors' financial affairs, corporate tax issues, debt and corporate structure, operations, tax controversies and related matters.  Having worked with the Debtors' management and their other advisors, T&K has developed relevant experience and expertise regarding the Debtors that will assist it in providing effective and efficient services in these chapter 11 cases.  Accordingly, T&K is both well-qualified and uniquely able to represent the Debtors in these chapter 11 cases in an efficient and timely manner.

**Services to be Provided**

8.      The Debtors contemplate that T&K will provide legal services (the "Services") in connection with various tax issues relating (a) to the Debtors' debt restructuring, (b) IRS tax controversies, (c) Texas tax issues, and (d) other tax matters as needed throughout the Debtors' chapter 11 cases (collectively, the "Tax Issues").  T&K understands that the Debtors have engaged other professionals to provide tax-related services, and T&K will work with the Debtors and other professionals to ensure that services are not duplicated.

**Professional Compensation**

9.      T&K intends to apply for allowance of compensation for professional services and reimbursement of expenses incurred in connection with these chapter 11 cases, subject to the Court's approval and in compliance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, and any other applicable procedures and orders of the Court.  The hourly rates and corresponding rate structure T&K will use in these chapter 11 cases are the same as the hourly rates and corresponding rate structure that T&K uses in other restructuring matters, as well as in similar tax-related matters, whether in court or otherwise, regardless of whether a fee application is required.

10.     The Debtors have agreed, subject to the fee application process and this Court's approval, to pay T&K based on time spent rendering legal services on an hourly basis in accordance with its ordinary and customary hourly rates for cases of this nature as are in effect on the date services are rendered.  T&K's current hourly rates for the Services are expected to be within the following ranges:

|  |  |
|---|---|
| Partners | $515 to $930 |
| Associates | $280 to $515 |
| Paraprofessionals | $160 to $280 |

11. The following professionals are expected to have primary responsibility for providing the Services to the Debtors: Emily Parker ($930 per hour), David Wheat ($805 per hour), and Mary McNulty ($725 per hour). As necessary, other T&K professionals and paraprofessionals will provide the Services to the Debtors.

12. Each professional's rate will be clearly reflected in the invoices and fee applications. T&K will maintain detailed records of costs and expenses incurred in connection with its legal services and these will be set forth in detail in monthly invoices and fee applications. T&K's hourly rates are set at a level designed to compensate T&K fairly for the work of its attorneys and paraprofessionals and to cover fixed and routine expenses. Hourly rates vary with the experience and seniority of the individuals assigned. These hourly rates are subject to periodic adjustments to reflect economic and other conditions.[2]

13. T&K represented the Debtors during the 12-month period before the Petition Date, using hourly rates higher than those listed above. Moreover, these hourly rates are consistent with the rates that T&K charges other comparable clients for similar services, whether in or outside of chapter 11, regardless of the location of the client or the chapter 11 case. T&K, to the extent possible, attempts to observe the prevailing rates for legal services rendered by

---

[2] For example, like many of its peer law firms, T&K increases the hourly billing rate of attorneys and paraprofessionals yearly in the form of: (a) step increases historically awarded in the ordinary course on the basis of advancing seniority and promotion and (b) periodic increases within each attorney's and paraprofessional's current level of seniority. The step increases do not constitute "rate increases" (as the term is used in the *Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases*, effective November 1, 2013. As set forth in the Order, T&K will provide ten business days' notice to the Debtors, the U.S. Trustee, and any official committee before implementing any periodic increases, and shall file such notice with the Court.

attorneys of comparable expertise in similar cases in the relevant jurisdiction. Accordingly, an individual's rate in other cases may be lower or higher than those charged in this engagement, depending upon prevailing rates in the various jurisdictions.

14. The rate structure provided by T&K is appropriate and not significantly different from (a) the rates that T&K charges for other similar types of representations or (b) the rates that other comparable counsel would charge to do work substantially similar to the work T&K will perform in these chapter 11 cases.

15. T&K's policy is to charge its clients in all areas of practice for identifiable, non-overhead expenses incurred in connection with the client's case that would not have been incurred except for representation of that particular client. It is also T&K's policy to charge its clients only the amount actually incurred by T&K in connection with such items. Examples of such expenses include postage, overnight mail, courier delivery, transportation, overtime expenses, computer-assisted legal research, photocopying, airfare, meals, and lodging.

16. To ensure compliance with all applicable deadlines in these chapter 11 cases, from time to time T&K utilizes the services of overtime secretaries. T&K will bill the Debtors for overtime secretarial charges that arise out of business necessity. In addition, T&K professionals also may charge their overtime meals and overtime transportation to the Debtors consistent with prepetition practices.

17. T&K currently charges the Debtors $0.10 per page for standard duplication in its offices in the United States. Notwithstanding the foregoing and consistent with the Local Bankruptcy Rules, T&K will charge no more than $0.10 per page for standard duplication services in these chapter 11 cases. T&K does not charge its clients for incoming facsimile transmissions.

**Compensation Received by T&K from the Debtors**

18.     As set forth in the McNulty Declaration, in the year prior to the Petition Date, the Debtors paid $936,040.00 to T&K for services rendered in contemplation of or in connection with these chapter 11 cases. As of the Petition Date, the Debtors did not owe T&K any amounts for legal services rendered before the Petition Date. Prior to the Petition Date, TK received an advance payment to render services between April 1, 2014 and May 15, 2014. T&K incurred $54 in costs and earned $359,008 in fees for services rendered as of April 28, 2014. As a result, on April 28, 2014 the advance payment exceeded the amount earned by $99,703.

**Basis for Relief**

19.     Section 327(e) of the Bankruptcy Code provides that a debtor subject to court approval:

> [M]ay employ, for a specified special purpose, other than to represent the trustee in conducting the case, an attorney that has represented the debtor, if in the best interest of the estate, and if such attorney does not represent or hold any interest adverse to the debtor or to the estate with respect to the matter on which such attorney is to be employed.

11 U.S.C § 327(e).

20.     Moreover, section 1107(b) of the Bankruptcy Code provides that a person is not disqualified for employment under section 327 of the Bankruptcy Code by a debtor-in-possession solely because of such person's employment by or representation of the debtor before the commencement of the case. 11 U.S.C. § 1107(b).

21.     Retention of an attorney under section 327(e) does not require the same searching inquiry required for a debtor to retain general bankruptcy counsel under section 327(a). *See Meespierson Inc. v. Strategic Telecom Inc.*, 202 B.R. 845, 847 (D. Del. 1996) ("[S]pecial counsel

employed under [section] 327(e) need only avoid possessing a conflict of interest concerning the matter at hand.").

22. Nevertheless, the phrase "does not represent or hold any interest adverse to the debtor or to the estate" requires a factual determination of "all relevant facts surrounding the debtors' case, including, but not limited to, the nature of the debtor's business, all foreseeable employment of special counsel, [and] the expense of replacement counsel. . ." *In re Woodworkers Warehouse, Inc.*, 323 B.R. 403, 406 (D. Del. 2005). In general, however, subject to the requirements of sections 327 and 1107, a debtor-in-possession is entitled to the counsel of their choosing. *In re Vouzianas*, 259 F.3d 103, 108 (2d Cir. 2001) (observing that "[o]nly in the rarest cases should the trustee be deprived of the privilege of selecting his own counsel").

**I.    Retaining T&K as Special Counsel is in the Best Interests of the Debtors' Estates.**

23. Due to T&K's vast experience handling tax-related matters and large corporate IRS tax controversies, including in energy-related restructurings, and its institutional knowledge of the Debtors' business and particular tax and legal matters in which it represents the Debtors, it is in the best interests of their estates to retain T&K as special counsel. Indeed, if the Debtors are required to retain different counsel to replace T&K in current matters, the Debtors will need to find, educate and integrate new counsel in these matters, and will expend significant resources in doing so, rather than devoting their time and focus to their reorganization efforts. In this respect, retaining T&K will avoid unnecessary administrative expenses and delays, result in cost efficiencies, and provide valuable assistance to the Debtors' efforts to reorganize.

24. The Debtors submit that T&K's compensation structure is market-based and reasonable considering T&K's considerable knowledge and experience. In this regard, it appropriately reflects the nature of the Services to be provided by T&K and is, upon information

and belief, comparable to the fee structures utilized by leading law firms for comparable engagements.

## II. T&K Neither Holds nor Represents any Interest Adverse to the Debtors.

25. Except as set forth below and in the McNulty Declaration, T&K, to the best of the Debtors' knowledge, information, and belief, does not represent, and does not hold, any interest adverse to the Debtors or their estates, their creditors, or equity security holders, their respective attorneys and accountants, the U.S. Trustee, any person employed by the Office of the U.S. Trustee, or any other party in interest in these chapter 11 cases (a) in the matters for which T&K is to be retained or (b) in matters directly related to the Services to be performed by T&K for the Debtors.

26. Moreover, the lawyers and staff expected to provide the Services to the Debtors on behalf of T&K are not related to the U.S. Trustee assigned to these cases, any person employed in the Office of the U.S. Trustee, or the Bankruptcy Judge presiding over these cases.

27. As described in the McNulty Declaration, T&K submitted and checked against its database the names of entities that were listed on a schedule (attached to the McNulty Declaration as **Schedule 1** and incorporated by reference) provided to T&K by the Debtors (the "Potential Parties in Interest "). This inquiry revealed that (a) certain Potential Parties in Interest are current or former/inactive clients of T&K;[3] (b) certain Potential Parties in Interest are affiliates of T&K's clients; (c) certain Debtors or Debtor-related entities are involved in matters with other T&K clients; and (d) certain Potential Parties in Interest are or were adverse to

---

[3] As referenced in **Schedule 2**, the term "current" client means a client to whom time was posted in the 12 months preceding the Petition Date. As referenced in **Schedule 2**, the term "former/inactive" client means a client that was invoiced between 12 and 36 months preceding the Petition Date.

T&K clients in matters in which T&K is acting or was acting as counsel for such clients. T&K currently represents or has represented certain Potential Parties in Interest (and in some cases their affiliates) in other, unrelated matters.

28.  T&K has agreed with the Debtors not to represent any such Potential Parties in Interest in any matters adverse to the Debtors related to both these chapter 11 cases and the Tax Issues. T&K will periodically review its files during the pendency of these chapter 11 cases to ensure that no conflicts or other disqualifying circumstances exist or arise. If any new relevant facts or relationships are discovered or arise, T&K will use its reasonable efforts to identify any such further developments and, as required by Bankruptcy Rule 2014(a), will promptly supplement the McNulty Declaration.

29.  The Debtors understand that T&K currently represents or has represented certain Potential Parties in Interest in other, unrelated matters, as set forth in **Schedule 2** attached to the McNulty Declaration and incorporated by reference.[4]

### Notice

30.  The Debtors shall provide notice of this Application on the date hereof via U.S. first class mail to: (a) the Office of the U.S. Trustee for the District of Delaware; (b) (i) the entities listed on the Consolidated List of Creditors Holding the 50 Largest Unsecured Claims filed pursuant to Bankruptcy Rule 1007(d); and (ii) proposed counsel to the Creditors' Committee; (c) Wilmington Trust, N.A., in its capacity as administrative agent under the TCEH first lien credit agreement and collateral agent under the TCEH intercreditor agreements and

---

[4] As referenced in **Schedule 2**, the term "current" client means a client to whom time was posted in the 12 months preceding the Petition Date. As referenced in **Schedule 2**, the term "former/inactive" client means a client that was invoiced between 12 and 36 months preceding the Petition Date.

counsel thereto; (d) Bank of New York Mellon Trust Company, N.A., in its capacity as indenture trustee under: (i) the TCEH unsecured pollution control revenue bonds; and (ii) the EFCH 2037 Notes due 2037, and counsel thereto; (e) American Stock Transfer & Trust Company, LLC, in its capacity as indenture trustee under: (i) the 9.75% EFH senior unsecured notes due 2019; (ii) the 10.0% EFH senior unsecured notes due 2020; (iii) the 10.875% EFH LBO senior unsecured notes due 2017; (iv) the 11.25%/12.0% EFH LBO toggle notes due 2017; (v) the 5.55% EFH legacy notes (series P) due 2014; (vi) the 6.50% EFH legacy notes (series Q) due 2024; and (vii) the 6.55% EFH legacy notes (series R) due 2034, and counsel thereto; (f) Computershare Trust Company, N.A. and Computershare Trust Company of Canada, in their capacities as indenture trustee under: (i) the 11.0% EFIH senior secured second lien notes due 2021; and (ii) the 11.75% EFIH senior secured second lien notes due 2022, and counsel thereto; (g) UMB Bank, N.A. in its capacity as indenture trustee under: (i) the 9.75% EFIH senior unsecured notes due 2019; and (ii) the 11.25%/12.25% EFIH senior toggle notes due 2018, and counsel thereto; (h) BOKF, NA, dba Bank of Arizona, in its capacity as indenture trustee under 11.50% TCEH senior secured notes due 2020, and counsel thereto; (i) CSC Trust Company of Delaware in its capacity as indenture trustee under: (i) the 6.875% EFIH senior secured notes due 2017; and (ii) the 10.0% EFIH senior secured notes due 2020, and counsel thereto; (j) Law Debenture Trust Company of New York in its capacity as indenture trustee under: (i) the 10.25% TCEH senior unsecured notes due 2015; and (ii) the 10.50%/11.25% TCEH senior toggle notes due 2016, and counsel thereto; (k) Wilmington Savings Fund Society, FSB in its capacity as indenture trustee under the 15.0% TCEH senior secured second lien notes due 2021, and counsel thereto; (l) counsel to certain holders of claims against the Debtors regarding each of the foregoing described in clauses (c) through (k); (m) the agent for the TCEH debtor-in-possession financing

12

facility and counsel thereto; (n) the agent for the EFIH debtor-in-possession financing facility and counsel thereto; (o) counsel to certain holders of equity in Texas Energy Future Holdings Limited Partnership; (p) counsel to the Ad Hoc Committee of TCEH Unsecured Noteholders; (q) counsel to the Ad Hoc Committee of TCEH Second Lien Noteholders; (r) Oncor Electric Delivery Holdings Company LLC and counsel thereto; (s) Oncor Electric Delivery Company LLC and counsel thereto; (t) the Securities and Exchange Commission; (u) the Internal Revenue Service; (v) the Office of the United States Attorney for the District of Delaware; (w) the Office of the Texas Attorney General on behalf of the Public Utility Commission of Texas; (x) counsel to the Electric Reliability Council of Texas; (y) those parties that have requested notice pursuant to Bankruptcy Rule 2002; and (z) T&K.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

## No Prior Request

31. No prior request for the relief sought in this Application has been made to this or any other court.

[*Remainder of page intentionally left blank.*]

WHEREFORE, the Debtors respectfully request that the Court enter the Order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested herein and granting such other and further relief as is appropriate under the circumstances.

Wilmington, Delaware
Dated:  May 29, 2014

*/s/ Paul M. Keglevic*
Paul M. Keglevic
Executive Vice President, Chief Financial Officer, and Co-Chief Restructuring Officer of EFH Corp., EFIH, and TCEH LLC