**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | ) | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) | Case No. 14-10979 (CSS) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | Hearing Date: June 30, 2014 at 9:30 a.m. |
| | | Objection Deadline: June 12, 2014 at 4:00 p.m. |

**APPLICATION OF ENERGY FUTURE HOLDINGS
CORP., *ET AL.*, FOR ENTRY OF AN ORDER AUTHORIZING
THE DEBTORS TO RETAIN AND EMPLOY PRICEWATERHOUSECOOPERS
LLP AS INTERNAL AUDIT, INFORMATION SECURITY, AND
TAX CONSULTANTS EFFECTIVE *NUNC PRO TUNC* TO THE PETITION DATE**

The above-captioned debtors and debtors in possession (the "Debtors") file this application (this "Application") for the entry of an order (the "Order"), substantially in the form attached hereto as **Exhibit A**, authorizing the Debtors to employ and retain PricewaterhouseCoopers LLP ("PwC") as internal audit, information security, and tax consultants effective *nunc pro tunc* to the Petition Date (as defined herein). In support of this Application, the Debtors submit the *Declaration of James R. Hanlon in Support of the Application of Energy Future Holdings Corp.,* et al.*, for Entry of an Order Authorizing the Debtors to Retain and Employ PricewaterhouseCoopers LLP* as *Internal Auditors and Information Security Consultants and Tax Consultants Effective* Nunc Pro Tunc *to the Petition*

---

[1] The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, for which joint administration has been granted on an interim basis, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

*Date* (the "Hanlon Declaration"), attached hereto as **Exhibit B**.  In further support of this Application, the Debtors respectfully state as follows.

## Jurisdiction and Venue

1.      The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Debtors consent pursuant to rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Bankruptcy Rules") to the entry of a final order by the Court in connection with this Application to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The statutory bases for the relief requested herein are sections 327(a), 328, and 330 of title 11 of the United States Code (the "Bankruptcy Code"), rules 2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Local Bankruptcy Rules 2014-1 and 2016-2.

## Relief Requested

4.      By this Application, the Debtors seek entry of the Order authorizing the employment and retention of PwC to provide certain internal auditing, information security and tax consulting services in accordance with the terms and conditions set forth in that certain master services agreement (the "MSA"), dated as of December 14, 2009, between EFH Corporate Services Company ("EFH Corporate Services") and PwC, as amended, supplemented,

2

or modified from time to time, including without limitation pursuant to Amendment No. 10, dated December 3, 2012 and Attachment 6.a, dated March 5, 2014, each with respect to certain internal audit services (the "as more fully described herein, Internal Audit Services"); and that certain engagement letter, dated December 11, 2013 and Schedule A-18, dated January 9, 2014, each with respect to certain information technology and security services (as more fully described herein, the "Cyber Defense Program Services" and the "SOD Services," and together, the "Information Security Services"); that certain Schedule A, dated February 3, 2011 with respect to certain tax-related services (the "Tax Services"). A copy of the MSA, including the relevant attachments, is attached hereto as **Exhibit C** and incorporated herein by reference.

## Background

5.     On April 29, 2014 (the "Petition Date"), each of the Debtors filed a voluntary petition with the Court under chapter 11 of the Bankruptcy Code. The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. The Court has entered an interim order for joint administration of these chapter 11 cases. The Court has not appointed a trustee. The Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") formed an official committee of unsecured creditors in these chapter 11 cases on May 13, 2014 [D.I. 420]. Further information regarding the Debtors' business operations and capital structure is set forth in the *Declaration of Paul Keglevic, Executive Vice President, Chief Financial Officer, and Co-Chief Restructuring Officer of Energy Future Holdings Corp.*, et al., *in Support of First Day Motions* [D.I. 98].

## PwC's Qualifications

6.     PwC is a leading full-service accounting, consulting, and financial services firm with over 75 offices and more than 30,000 employees in the United States. PwC is a United

States-based firm of a global network of separate and independent member firms that operate locally in countries around the world. PwC specializes in accounting consulting services and independent auditing services. PwC's debtor advisory services have included a wide range of activities targeted at stabilizing and improving a company's financial position, including assistance in developing, analyzing and evaluating, negotiating and confirming plans, as well as providing technical accounting impacted by bankruptcy matters and cyber security services.

7. PwC has considerable experience providing accounting, tax, auditing, financial advisory, technology, and other consulting services in numerous large cases, including most recently: *In re Metro Affiliates, Inc.*, No. 13591 (Bankr. S.D.N.Y. Jan. 9, 2014); *In re Sbarro, LLC,* No. 14-0557 (Bankr. S.D.N.Y. Apr. 25, 2014); *In re Sound Shore Medical Center of Westchester*, No. 13-22940 (Bankr. S.D.N.Y. Aug. 19, 2013); *In re RDA Holding Co.*, No. 13-22233 (Bankr S.D.N.Y. May 20, 2013); *In re LodgeNet Interactive Corporation*, No. 13-10238 (Bankr. S.D.N.Y. Feb. 27, 2013); *In re Hawker Beechcraft, Inc.*, No. 12-11873 (Bankr. S.D.N.Y. July 27, 2012); *In re Eastman Kodak Company*, No. 12-10202 (Bankr. S.D.N.Y. Mar. 22, 2012); *In re Ambac Financial Group, Inc.*, No. 10-15973 (Bankr. S.D.N.Y. Oct. 27, 2011); *In re the Great Atlantic & Pacific Tea Company, Inc.*, No. 10-24549 (Bankr. S.D.N.Y. Mar. 10, 2011); *In re Petra Fund REIT Corp.*, No. 10-15500 (Bankr. S.D.N.Y. Dec. 21, 2010); *In re Lehman Brothers Holdings Inc.*, No. 08-13555 (Bankr. S.D.N.Y. July 16, 2009).[2]

8. In addition, since December 2009, PwC has provided many of the Services (as defined below) to the Debtors and since approximately December 2013, PwC has provided many of the Services to the Debtors in connection with their restructuring efforts. In providing such

---

[2] Because of the voluminous nature of the orders cited herein, they are not attached to the Application. Copies of these orders are available on request of the Debtors' counsel.

prepetition professional services to the Debtors, PwC has become familiar with the Debtors and their businesses, including the Debtors' financial affairs, debt structure, operations, and related matters. Having worked with the Debtors' management and their other advisors, PwC has developed relevant experience and expertise regarding the Debtors that will assist it in providing effective and efficient services in these chapter 11 cases. Accordingly PwC is both well-qualified and uniquely able to represent the Debtors in these chapter 11 cases in an efficient and timely manner.

**Services to be Provided**

9.  Subject to further order of the Court and consistent with the MSA, PwC will continue to provide the Internal Audit Services, Information Security Services, and Tax Services as PwC and the Debtors shall deem appropriate and feasible in order to advise the Debtors during the course of these chapter 11 cases, including, but not limited to the following (collectively, the "Services"):

Internal Audit Services:  Under the direction of the Debtors' Vice President of Internal Audit, PwC will support the Debtors' Internal Audit team in the areas of internal audit assurance services, internal audit consulting services and Sarbanes-Oxley services, including as follows

    (a) advise the Debtors with respect to their internal controls, including by providing ongoing review and evaluation of market trends, emerging issues and leading practice recommendations;

    (b) function as the Debtors' IT Audit Director;

    (c) perform internal audit procedures and report thereon;

    (d) conduct IT audit work and draft IT audit reports for EFH Business Services and interface with IT management;

    (e) prepare a formal documented IT risk assessment to support development of the Debtors' annual IT audit plan;

  (f) recommend internal audit risk assessment and internal audit plan approaches; and

  (g) document Sarbanes-Oxley testing results templates (the "<u>Sarbanes-Oxley Services</u>").

<u>Cyber Defense Program Services</u>:  Provide Information Security Services related to the Debtors' Cyber Defense Program, including as follows:

  (a) develop evaluation criteria used to measure and report on information security maturity at EFH and its subsidiaries;

  (b) assess information security process design and deliverables (as work stream process designs and deliverables become available) to ensure they support the continued capability growth of the program;

  (c) evaluate the effectiveness of implemented processes through evaluation of evidence and review of Client prepared data (e.g., vulnerability scan results);

  (d) participate in key status and decision making meetings; and

  (e) perform periodic progress/benefit assessments

<u>SOD Services</u>:  Provide Information Security Services related to the remediation and mitigation of segregation of duties and sensitive access violations in the Debtors SAP systems (together with the Cyber Defense Program Services, the "<u>Information Security Services</u>"), including as follows:

  (a) conduct a detailed analysis of existing SOD conflicts by business and options for remediation;

  (b) provide options for approaching the remediation of violations;

  (c) conduct workshops to determine updates to roles and users;

  (d) give feedback on mitigating controls design and mapping to risks; and

  (e) provide guidance to the Debtors' security team on role and user technical changes.

<u>Tax Services</u>:  Provide federal individual income tax review, preparation and planning and financial planning services to certain members of the Debtors' senior management.

10. In addition to the foregoing, PwC will provide other internal audit and information security and tax services as may be requested from time to time. To the extent those requested services are outside the MSA, PwC and the Debtors may amend the MSA to reflect any substantive changes, and shall seek such further authorization from this Court as may be necessary in connection therewith

### Efforts to Avoid Duplication of Services

11. PwC understands the Debtors have chosen Ernst & Young LLP ("EY") to provide tax advisory and information technology services, KPMG LLP ("KPMG") to provide bankruptcy accounting and tax advisory services, and Deloitte & Touche LLP ("Deloitte & Touche" and together with EY and KPMG, the "Accounting Firms") to provide independent (external) auditing services. The Internal Auditing Services and Information Security Services are being provided by PwC personnel who are working "on the ground" on a day-to-day basis directly with the Debtors' personnel at the Debtors' headquarters. The Tax Services are not being offered by the other Accounting Firms. The Services, therefore, are not duplicative of any other services being provided by, or proposed to be provided by, other professionals in these chapter 11 cases. PwC has and will continue to work closely with the other Accounting Firms to prevent any duplication of efforts in the course of advising the Debtors.

### Professional Compensation

12. The Debtors understand that PwC intends to apply for compensation for professional services rendered and reimbursement of expenses incurred in connection with these chapter 11 cases, subject to the Court's approval and in compliance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, the guidelines (the "Trustee Guidelines") established by the U.S. Trustee and any other applicable procedures and orders of the Court, subject to the modifications described herein and in the Hanlon

Declaration.  To that end, contemporaneously herewith, the Debtors have filed the *Motion of Energy Future Holdings Corp.,* et al.*, for Entry of an Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals*, pursuant to which PwC intends to submit requests for compensation.

13. Pursuant to the terms and conditions of the MSA, and subject to this Court's approval, the Debtors propose to:

(a) compensate PwC for the Internal Auditing Services other than the Sarbanes-Oxley Services in accordance with the "fixed fee" of $1,300,000 per year for 2014 and 2015 (payable on a 1/12 per month basis),[1] as further described in the MSA;

(a) compensate PwC for the Sarbanes-Oxley Services in accordance with an estimated "fixed fee" not to exceed $400,000 for the period April 2014 through January 2015 (payable on a 1/10 per month basis), as further described in the MSA;[2]

(b) compensate PwC for the Information Security Services in accordance with an estimated "fixed fee" not to exceed $700,000 for the term of the underlying Statement of Work, as further described in the MSA;

(c) compensate PwC for the SOD Services in accordance with an estimated "fixed fee" not to exceed $700,000 for the term of the underlying Statement of Work (payable in varied increments upon the completion of certain tasks), as further described in the MSA;[3]

---

[1] The MSA also provides that the Debtors shall pay PwC $325,000 (including all fees and expenses) for January 2016 through March 2016.

[2] The rate per hour for PwC personnel providing the Sarbanes-Oxley Services, by level of experience, will be as follows: Director: $330; Manager: $217; Senior Associate: $165; Experienced Associate: $144 and Associate: $132.

[3] The rate per hour for PwC personnel providing the SOD Services, by level of experience, will be as follows: Partner: $515; Director: $335; Manager: $250; and Senior Associate: $190.

3

(d) compensate PwC for the Tax Services on a fixed fee per participant basis, depending on the services selected by each individual, as further described in the MSA.[4]

14. The foregoing amounts other than with respect to the Tax Services and the SOD Services, are inclusive of all costs and expenses incurred by PwC in connection with the Services, and the Debtors shall not reimburse PwC for any travel, lodging or other costs and expenses incurred in connection with the provision of the Services other than the Tax Services and the SOD Services, provided that the reimbursement of expenses with respect to the SOD Services is subject to a maximum estimated "fixed fee" of $700,000, as described above.

15. The PwC professionals providing services to the Debtors will consult with internal PwC bankruptcy retention and billing advisors to ensure compliance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, guidelines established by the United States Trustee and any other applicable procedures and orders of the Court, as well as to decrease the overall fees associated with the administrative aspects of PwC's engagement. The services provided by these bankruptcy retention and billing advisors shall include, but are not limited to: (a) assistance with preparation of the bankruptcy retention documents; (b) assistance with the disinterestedness disclosures; and (c) preparation of monthly fee statements and interim and final fee applications. Due to the specialized nature of these services, specific billing rates exist for these PwC bankruptcy retention and billing

---

[4] The Tax Services will be billed on a per participant basis as follows: Tier 1 services: $3,000; Tier 2 services: $6,000; Tier 3 services: $9,000; Tier 4 services: $14,000. Additional services are available to Tiers 1 through 3 at an additional per year cost of $3,000. A portion of the fixed fee for Tier 3 ($3,000) and Tier 4 ($6,000) is a planning allowance that will be allocated based on hourly rates, as follows: Partner: $495; Director/Senior Manager: $375; Manager: $285; Senior Associate: $190; Associate: $130.

advisors.⁵ PwC shall seek reimbursement for any reasonable out-of-pocket expenses incurred by its bankruptcy retention and billing advisors in connection with PwC's retention in these chapter 11 cases as well as costs and expenses incurred in connection with the Tax Services and the SOD Services.

16. The Debtors are advised that it is not the practice of PwC's professionals to keep detailed time records in one-tenth-of-an-hour increments (i.e., six minute increments) as customarily kept by attorneys who are compensated subject to approval of the Bankruptcy Court. Rather, the PwC professionals' customary practice is to keep reasonably detailed time records in half-hour increments. The Debtors understand that PwC intends to submit the following with its interim and final fee applications:

> (a) <u>"Fixed Fee" and Estimated "Fixed Fee"</u> – With respect to services rendered in connection with the MSA on a "fixed fee" or estimated "fixed fee" basis, PwC shall provide (i) a narrative describing the services rendered, and (ii) as an exhibit to each monthly, interim and final fee application that PwC files in these chapter 11 bankruptcy cases, a summary of hours incurred by each professional providing services, as well as the portion of the "fixed fee" (with respect to the Internal Audit Services) and the estimated "fixed fee" (with respect to the other Services) requested as compensation for such services.
>
> (b) <u>Hourly Services</u> – With respect to any other services PwC provides to the Debtors (included services provided by PwC's bankruptcy retention and billing advisors), PwC shall provide (i) a narrative summarizing each project category and the services rendered under each project category, (ii) as an exhibit to each monthly, interim and final fee application that PwC files in these chapter 11 bankruptcy cases, a summary, by project category, of services rendered to the Debtors, which identifies each professional

---

⁵ The rate per hour for these PwC bankruptcy retention and billing advisors by level of experience will be as follows: Partner: $790; Director: $550; Manager: $400; Senior Associate: $290; Associate: $225 and Paraprofessional: $150. These rates are subject to periodic adjustments from time to time in accordance with PwC's established billing practices and procedures. PwC will advise the Debtors of new rates once they are established if a rate change occurs during the course of PwC's engagement in these chapter 11 cases.

rendering services, the number of hours expended by each professional, and the amount of compensation requested with respect to the services rendered by each professional, and (iii) reasonably detailed records of time in half-hour (0.5) increments, describing the services rendered by each professional and the amount of time spent on each date.

17. The Debtors submit that given the nature of the services to be provided by PwC, such billing format and associated time details will be sufficient for the Debtors and other parties-in-interest to make informed judgments regarding the nature and appropriateness of PwC's services and fees. Accordingly, to the extent necessary based on the foregoing, the Debtors respectfully request that the information requirements set forth in Local Rule 2016-2(d) be modified and waived.

18. The Debtors believe that the professionals at PwC are well-qualified to act on their behalf given their extensive knowledge and expertise serving as internal audit and information security consultants.

**Indemnification Provisions**

19. The MSA also provides that each of PwC, on the one hand, and EFH Corporate Services Company, on the other, will defend, protect, indemnity and hold harmless the other from certain claims for "death or bodily injury or the damage to or loss or destruction of any real or tangible personal property, arising out of, or incident to or related in any way to" performance of the MSA, arising from a breach of the MSA or the negligence or intentional acts or omissions of the other party. Subject to certain limitations for gross negligence, fraud, willful misconduct and certain breaches relating to confidential or proprietary information, each party's indemnification obligation is limited to the amount of fees paid or owing to PwC for the performance of work under the applicable particular statement of work under the MSA.

20. The Debtors believe that the indemnification provisions contained in the MSA are customary and reasonable for PwC and comparable firms providing comparable services. In

addition, pursuant to the Order, the Debtors seek to qualify and limit the indemnification provisions as follows

 (a) prohibiting PwC from receiving indemnification, contribution or reimbursement pursuant to the MSA for services other than those described in the MSA, unless such services and indemnification are approved by the Court;

 (b) eliminating the Debtors' obligation to indemnify PwC, or provide contribution or reimbursement to PwC for any claim or expense that is either: (i) judicially determined (the determination having become final) to have arisen from PwC's gross negligence or willful misconduct; (ii) for a contractual dispute in which the Debtors allege the breach of PwC's contractual obligations unless the Court determines that indemnification, contribution or reimbursement would be permissible pursuant to *In re United Artists Theatre Co.*, 315 F.3d 217 (3d Cir. 2003); or (iii) settled prior to a judicial determination as to the exclusions set forth in clauses (i) and (ii) above, but determined by the Court, after notice and a hearing to be a claim or expense for which PwC should not receive indemnity, contribution or reimbursement under the terms of the MSA (as modified by the Order); and

 (c) requiring PwC to file an application with the Court if it believes it is entitled to the payment of any amounts by the Debtors on account of the Debtors' indemnification, contribution, and/or reimbursement obligations under the MSA, including, without limitation, the advancement of defense costs, (as modified by the Order) before the earlier of (i) the entry of an order confirming a chapter 11 plan in these cases (that order having become a final order no longer subject to appeal), and (ii) the entry of an order closing these chapter 11 cases and prohibiting the Debtors from paying any such amounts to PwC before the entry of an order by the Court approving such payment.

21. These indemnification provisions, as qualified and limited by the Order, are customary in this district and others. *See*, *e.g.*, *In re LCI Holding Company, Inc.*, No. 12-13319 (KG) (Bankr. D. Del. Jan. 10, 2013) (approving similar modified indemnification provisions); *In re Appleseed's Intermediate Holdings LLC*, No. 11-10160 (KG) (Bankr. D. Del. Feb. 18, 2011) (approving similar modified indemnification provisions for the retention and employment of Alvarez & Marsal North America, LLC); *In re Local Insight Media Holdings, Inc.*, No 10-13677 (KG) (Bankr. D. Del. Dec. 17, 2010) (same); *In re Atrium Corp.*, No. 10-10150 (BLS) (Bankr. D. Del. Feb. 24, 2010) (approving similar modified indemnification provisions for the retention

and employment of Deloitte Financial Advisory Services LLP); *In re Majestic Star Casino, LLC*, No. 09-14136 (KG) (Bankr. D. Del. Dec. 17, 2009) (approving similar modified indemnification provisions for the retention and employment of Moelis & Company LLC); *In re Muzak Holdings LLC*, No. 09-10422 (KJC) (Bankr. D. Del. Sept. 18, 2009) (approving similar modified indemnification provisions).

22. Moreover, the terms and conditions of the indemnification provisions were negotiated by EFH Corporate Services and PwC at arm's-length and in good faith. The provisions contained in the MSA, viewed in conjunction with the other terms of PwC's proposed retention, are reasonable and in the best interest of the Debtors, their estates, and creditors in light of the fact that the Debtors require PwC's services to successfully reorganize. Accordingly, as part of this Application, the Debtors request that the Court approve the indemnification provisions as set forth in the MSA and as modified pursuant to the Order.

### PwC's Disinterestedness

23. In connection with the proposed retention by the Debtors in these chapter 11 cases, PwC received a list of parties-in-interest from the Debtors (the "Parties-In-Interest") attached hereto as **Schedule 1**.

24. PwC has reviewed its internal electronic databases and, to the best of the Debtors' knowledge and except to the extent disclosed herein and in the Hanlon Declaration: (a) PwC is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code, as required by section 327(a) of the Bankruptcy Code and does not hold or represent an interest adverse to the Debtors' estates; and (b) PwC has no connection to the Debtors, their creditors, or their related parties. To the extent that PwC discovers any new relevant facts or relationships bearing on the matters described herein during the period of PwC's retention, PwC will use reasonable efforts to review its files and file promptly a supplemental declaration.

25. Prior to the Petition Date, pursuant to an engagement letter dated March 8, 2013 (the "Lender Engagement Letter") PwC was retained by Paul, Weiss, Rifkind, Wharton & Garrison LLP ("Paul Weiss") to provide tax and restructuring advisory services (the "Lender Representation") in connection with Paul Weiss's representation of certain first-lien lenders under that certain Credit Agreement, dated as of October 10, 2007, by and among TCEH, as borrower, EFCH and certain of its subsidiaries, as guarantors, and Citibank, N.A., as administrative agent. PwC has continued to provide such services since the Petition Date.

26. The Debtors have been aware of the Lender Representation since its inception and previously consented thereto and waived any potential conflict in connection therewith.[6] The Debtors understand that the Lenders are also aware of PwC's retention pursuant to the MSA, and, subject to PwC maintaining the limitations on sharing information regarding the Lender Representation as set forth in the Lender Engagement Letter, have waived any potential conflict that would preclude PwC from performing the Services.

27. The Debtors believe that the Lender Representation is unrelated to the Internal Audit Services and the Information Security Services being provided by PwC to the Debtors. Furthermore, the Debtors understand that the PwC personnel providing the Services are not the same personnel engaged on the Lender Representation and that PwC has and will continue to maintain a strict confidentiality policy with respect to the Services and the Debtors' Confidential Information (as defined in the MSA), that PwC has implemented a wall between those professionals who are providing the Services and those who are engaged on the Lender

---

[6] In connection with the Lender Representation, the Debtors agreed to (and have continued to) pay PwC's fees in connection therewith.

9

Representation, and that there has been no disclosure of the Debtors' confidential information. Specifically, the Debtors have been advised that:

    (a)    the engagement teams for the Debtors and the Lenders were advised of the requirement that any information (whether defined as "Confidential Information" in the applicable governing agreement or otherwise) relating to the applicable engagement was to remain confidential and only to be shared among members of the applicable engagement team or PwC Risk Management;

    (b)    the engagement teams are not to discuss their respective services with anyone within or without PwC; and

    (c)    the separate engagement teams reside in separate offices.

28. According to PwC's books and records, during the 90-day period prior to the Petition Date, PwC received $1,980,030.12 from the Debtors for professional services performed and expenses incurred under the MSA. To the extent the Application is granted, PwC has agreed to waive any amounts that may owed for professional services rendered prior to the Petition Date under the MSA.

## Basis for Relief

29. Section 327(a) of the Bankruptcy Code provides that a debtor subject to court approval:

> [M]ay employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the [debtor] in carrying out the [debtor]'s duties under this title.

11 U.S.C § 327(a).

30. Section 328(a), in turn, provides that employment of a professional person under section 327 of the Bankruptcy Code may be "on any reasonable terms and conditions of employment, including on retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis" subject to later re-evaluation by the court. 11 U.S.C. § 328(a)

31. Moreover, Bankruptcy Rule 2014 requires that an application for retention include:

> [S]pecific facts showing the necessity for the employment, the name of the [firm] to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the [firm's] connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States Trustee, or any person employed in the office of the United States Trustee.

Fed. R. Bankr. P. 2014.

32. The terms and conditions of the MSA, including the indemnification provisions contained therein, were negotiated by EFH Corporate Services Company and PwC at arm's-length and in good faith. The Debtors and PwC respectfully submit that the terms of PwC's retention are customary and reasonable for internal auditing and information security consulting engagements, both out of court and in comparable chapter 11 cases, and in the best interests of the Debtors' estates, creditors, and all Parties-In Interest.

## Notice

33. The Debtors shall provide notice of this Application on the date hereof via U.S. first class mail to: (a) the Office of the U.S. Trustee for the District of Delaware; (b) (i) the entities listed on the Consolidated List of Creditors Holding the 50 Largest Unsecured Claims filed pursuant to Bankruptcy Rule 1007(d); and (ii) proposed counsel to the Creditors' Committee; (c) Wilmington Trust, N.A., in its capacity as administrative agent under the TCEH first lien credit agreement and collateral agent under the TCEH intercreditor agreements and counsel thereto; (d) Bank of New York Mellon Trust Company, N.A., in its capacity as indenture trustee under: (i) the TCEH unsecured pollution control revenue bonds; and (ii) the EFCH 2037 Notes due 2037, and counsel thereto; (e) American Stock Transfer & Trust Company, LLC, in its

capacity as indenture trustee under: (i) the 9.75% EFH senior unsecured notes due 2019; (ii) the 10.0% EFH senior unsecured notes due 2020; (iii) the 10.875% EFH LBO senior unsecured notes due 2017; (iv) the 11.25%/12.0% EFH LBO toggle notes due 2017; (v) the 5.55% EFH legacy notes (series P) due 2014; (vi) the 6.50% EFH legacy notes (series Q) due 2024; and (vii) the 6.55% EFH legacy notes (series R) due 2034, and counsel thereto; (f) Computershare Trust Company, N.A. and Computershare Trust Company of Canada, in their capacities as indenture trustee under: (i) the 11.0% EFIH senior secured second lien notes due 2021; and (ii) the 11.75% EFIH senior secured second lien notes due 2022, and counsel thereto; (g) UMB Bank, N.A. in its capacity as indenture trustee under: (i) the 9.75% EFIH senior unsecured notes due 2019; and (ii) the 11.25%/12.25% EFIH senior toggle notes due 2018, and counsel thereto; (h) BOKF, NA, dba Bank of Arizona, in its capacity as indenture trustee under 11.50% TCEH senior secured notes due 2020, and counsel thereto; (i) CSC Trust Company of Delaware in its capacity as indenture trustee under: (i) the 6.875% EFIH senior secured notes due 2017; and (ii) the 10.0% EFIH senior secured notes due 2020, and counsel thereto; (j) Law Debenture Trust Company of New York in its capacity as indenture trustee under: (i) the 10.25% TCEH senior unsecured notes due 2015; and (ii) the 10.50%/11.25% TCEH senior toggle notes due 2016, and counsel thereto; (k) Wilmington Savings Fund Society, FSB in its capacity as indenture trustee under the 15.0% TCEH senior secured second lien notes due 2021, and counsel thereto; (l) counsel to certain holders of claims against the Debtors regarding each of the foregoing described in clauses (c) through (k); (m) the agent for the TCEH debtor-in-possession financing facility and counsel thereto; (n) the agent for the EFIH debtor-in-possession financing facility and counsel thereto; (o) counsel to certain holders of equity in Texas Energy Future Holdings Limited Partnership; (p) counsel to the Ad Hoc Committee of TCEH Unsecured Noteholders;

(q) counsel to the Ad Hoc Committee of TCEH Second Lien Noteholders; (r) Oncor Electric Delivery Holdings Company LLC and counsel thereto; (s) Oncor Electric Delivery Company LLC and counsel thereto; (t) the Securities and Exchange Commission; (u) the Internal Revenue Service; (v) the Office of the United States Attorney for the District of Delaware; (w) the Office of the Texas Attorney General on behalf of the Public Utility Commission of Texas; (x) counsel to the Electric Reliability Council of Texas; (y) those parties that have requested notice pursuant to Bankruptcy Rule 2002; and (z) PwC.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

## **No Prior Request**

34. No prior request for the relief sought in this Application has been made to this or any other court.

[*Remainder of page intentionally left blank.*]

WHEREFORE, the Debtors respectfully request that the Court enter the Order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested herein and granting such other and further relief as is appropriate under the circumstances.

Wilmington, Delaware
Dated:  May 29, 2014

      */s/ Paul M. Keglevic*
Paul M. Keglevic
Executive Vice President, Chief Financial Officer, and Co-Chief Restructuring Officer of EFH Corp., EFIH, and TCEH LLC