**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) Case No. 14-10979 (CSS) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) Hearing Date: June 30, 2014 at 9:30 a.m. |
| | Objection Deadline: June 12, 2014 at 4:00 p.m. |

**APPLICATION OF ENERGY FUTURE HOLDINGS**
**CORP., *ET AL.*, FOR ENTRY OF AN ORDER AUTHORIZING**
**THE DEBTORS TO RETAIN AND EMPLOY ERNST & YOUNG LLP**
**AS PROVIDERS OF TAX ADVISORY AND INFORMATION TECHNOLOGY**
**SERVICES EFFECTIVE *NUNC PRO TUNC* TO THE PETITION DATE**

The above-captioned debtors and debtors in possession (the "Debtors") file this application (this "Application") for the entry of an order (the "Order"), substantially in the form attached hereto as **Exhibit A**, authorizing the Debtors to employ and retain Ernst & Young LLP ("EY") as providers of tax advisory and information technology services effective *nunc pro tunc* to the Petition Date (as defined herein). In support of this Application, the Debtors submit the *Declaration of Stephen A. Thiel in Support of the Application of Energy Future Holdings Corp,* et al., *for Entry of an Order Authorizing the Debtors to Retain and Employ Ernst & Young LLP as Providers of Tax Advisory and Information Technology Services Effective* Nunc Pro Tunc *to the Petition Date* (the "Thiel Declaration"), attached hereto as **Exhibit B**. In further support of this Application, the Debtors respectfully state as follows.

---

[1] The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, for which joint administration has been granted on an interim basis, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

**Jurisdiction and Venue**

1.      The United States Bankruptcy Court for the District of Delaware (the "Court")
has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended
Standing Order of Reference from the United States District Court for the District of Delaware*,
dated February 29, 2012.  This matter is a core proceeding within the meaning of 28 U.S.C.
§ 157(b)(2), and the Debtors consent pursuant to rule 9013-1(f) of the Local Rules of Bankruptcy
Practice and Procedure of the United States Bankruptcy Court for the District of Delaware
(the "Local Bankruptcy Rules") to the entry of a final order by the Court in connection with this
Application to the extent that it is later determined that the Court, absent consent of the parties,
cannot enter final orders or judgments in connection herewith consistent with Article III of the
United States Constitution.

2.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The statutory bases for the relief requested in this Application are sections 327(a),
328, and 330 of title 11 of the United States Code (the "Bankruptcy Code"), rules 2014(a) and
2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Local
Bankruptcy Rules 2014-1 and 2016-2.

**Relief Requested**

4.      By this Application, the Debtors seek entry of an Order authorizing the
employment and retention of EY pursuant to sections 327(a), 328, and 330 of the Bankruptcy
Code, Bankruptcy Rules 2014(a) and 2016, and Local Bankruptcy Rules 2014-1 and 2016-2 as
providers of tax advisory and information technology services in accordance with the terms and
conditions set forth in that certain master services agreement, by and between EY and EFH
Corporate Services Company, dated June 10, 2010, as amended, attached as **Exhibit C** to the
Application (the "MSA"), the related statement of work, by and between EY and EFH Corporate

Services Company, attached as **Exhibit D** to the Application (the "Tax Advisory SOW"), the related statement of work, by and between EY and TXU Energy Retail Company LLC ("TXUE"), dated February 26, 2014, attached as **Exhibit E** to the Application (the "Blueprint SOW"), the related statement of work, by and between EY and EFH Corporate Services Company, dated March 3, 2014, attached as **Exhibit F** to the Application (the "Texas SOW"), and the related statement of work, by and between EY and TXUE, dated May 1, 2014, attached as **Exhibit G** to the Application (the "Postpetition SOW").  The MSA, the Tax Advisory SOW, the Blueprint SOW, the Texas SOW, and the Postpetition SOW are collectively referred to herein as the "Engagement Letter."

## Background

5.      On April 29, 2014 (the "Petition Date"), each of the Debtors filed a voluntary petition with the Court under chapter 11 of the Bankruptcy Code.  The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  The Court has entered an interim order for joint administration of these chapter 11 cases.  The Court has not appointed a trustee.  The Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") formed an official committee of unsecured creditors in these chapter 11 cases on May 13, 2014 [D.I. 420].  Further information regarding the Debtors' business operations and capital structure is set forth in the *Declaration of Paul Keglevic, Executive Vice President, Chief Financial Officer, and Co-Chief Restructuring Officer of Energy Future Holdings Corp.*, et al., *in Support of First Day Motions* [D.I. 98].

## EY's Qualifications

6.      EY has significant experience providing a variety of tax advisory and information technology consulting services to numerous debtors in chapter 11 cases.  EY is well-qualified

and able to represent the Debtors in a cost-effective, efficient, and timely manner.  The services EY will provide the Debtors are necessary to enable the Debtors to satisfy their reporting requirements, improve the Debtors' customer service, and maximize value of the Debtors' estates.  For the technology services scope of work (Blueprint SOW and Postpetition SOW) specifically, EY has unique and distinct experience that positioned them as the best choice to be selected prime systems integrator for the SAP ISU System Upgrade.  The EY team has unique and distinct knowledge of TXUE's technology environment with members of the dedicated EY team having designed and configured the SAP solution at TXUE when it was originally deployed in 2009.  EY competed against four other companies for this scope of work in January of 2014 and were selected because EY provided the best proposal based on cost, schedule and quality.

7.     EY has provided services in numerous large cases, including most recently:[2] *In re Longview Power, LLC*, Case No. 13-12211 (Bankr. D. Del. Sept. 24, 2013); *In re Oncure Holdings, Inc.*, Case No. 13-11540 (Bankr. D. Del. July 23, 2013); *In re ATLS Acquisition, LLC*, Case No. 13-10262 (Bankr. D. Del. March 14, 2013); *In re Broadview Networks Holdings, Inc.*, Case No 12-13581 (Bankr D. Del. Sept. 14, 2012); *In re Excel Maritime Carriers Ltd.*, Case No. 13-23060 (Bankr. S.D.N.Y. October 10, 2013); *In re Eastman Kodak Company*, Case NO. 12-10202 (ALG) (Bankr. S.D.N.Y. Mar. 22, 2012); *In re AMR Corporation*, Case No. 11-15463 (SHL) (Bankr. S.D.N.Y. Jan. 27, 2012); *In re Blockbuster Inc.*, Case No. 10-14997 (Bankr. S.D.N.Y. April 4, 2011); *In re LightSquared Inc.*, Case No. 12-12080 (Bankr. S.D.N.Y. June 18, 2009); *In re Fairpoint Communications, Inc.*, Case No. 09-16335 (Bank. S.D.N.Y. Dec. 11, 2009); *In re Charter Communications, Inc.*, Case No. 09-11435 (Bankr. S.D.N.Y. June 3, 2009).

---

[2]    Because of the voluminous nature of the orders cited herein, they are not attached to the Application.  Copies of these orders are available on request of the Debtors' counsel.

8.      In addition, since June 2010, EY has provided many services to the Debtors and since May 9, 2013, EY has provided many services to the Debtors in connection with their restructuring efforts.  In providing such prepetition professional services to the Debtors, EY has become familiar with the Debtors and their business, including the Debtors' financial affairs, debt structure, operations, and related matters.  Having worked with the Debtors' management and their other advisors, EY has developed relevant experience and expertise regarding the Debtors that will assist it in providing effective and efficient services in these chapter 11 cases.  Accordingly EY is both well-qualified and uniquely able to represent the Debtors in these chapter 11 cases in an efficient and timely manner.

## **Scope of Services**

9.      Subject to further order of the Court and as set forth in further detail in the Engagement Letter, EY will provide certain tax advisory and information technology consulting services, as described in greater detail below, in connection with these chapter 11 cases (the "Services").[3]

10.      As set forth in detail in the Tax Advisory SOW, EY will provide tax advisory services on behalf of EFH Corporate Services Company.  Such services may include:

    (a)    tax advisory services related to assessment and implementation regarding the temporary and, upon release, the final tangible property Treasury Regulations and Revenue Procedures (collectively, the "New Regulations"). The New Regulations cover a broad range of issues and will generally be organized into the following major sections: (i) Materials

---

[3]    The summary of the MSA, the Tax Advisory SOW, the Blueprint SOW, and the Postpetition SOW in this Application is qualified in its entirety by reference to the provisions of the MSA, the Tax Advisory SOW, the Blueprint SOW, and the Postpetition SOW.  To the extent there is any discrepancy between the summary contained in this Application and the terms set forth in the MSA, the Tax Advisory SOW, the Blueprint SOW, and the Postpetition SOW, the terms of the MSA, the Tax Advisory SOW, the Blueprint SOW, and the Postpetition SOW shall control.  Capitalized terms used and not otherwise defined herein shall have the meanings ascribed to them in the MSA, the Tax Advisory SOW, the Blueprint SOW, and the Postpetition SOW, as applicable.

5

and Supplies, (ii) Acquisitions, including the book de minimis rule, (iii) Improvements, and (iv) Dispositions and Depreciation; and

(b)    tax advisory services related to the following areas in the New Regulations (upon release, the analysis will consider impact of final tangible property regulations and related transitional guidance): (i) Treas. Reg. §l.l68(i)-8T (Dispositions, including general asset election(s)) and/or re-proposed/final regulations; (ii) Treas. Reg. § 1.162-3T (Materials and Supplies) and/or final regulations; (iii) Treas. Reg. § l.263(a)-2T (Acquisitions, including de minimis rule) and/or final regulations; (iv) Treas. Reg. § 1.263(a)-3T (Unit of Property Definitions, Improvements and Routine Maintenance) and/or final regulations; (v) Rev. Proc. 2013-24 (Guidance for Electric Power Generation Assets); (vi) Rev. Proc. 2012-19 (Changes in accounting method for improvements (repairs and maintenance) and/or published guidance related to the final regulations; and (vii) Rev. Proc. 2012-20 (Changes in accounting method for dispositions) and/or published guidance related to the final regulations.

11.    As set forth in detail in the Texas SOW, EY will also provide certain additional tax advisory services to EFH Corporate Services Company.  Such services may include:

(a)    providing assistance and oversight for any Texas sales and use tax audits for which EFH Corporate Services Company requests assistance.  EFH Corporate Services Company will notify EY in writing or through email of each audit for which they will required assistance;

(b)    assisting EFH Corporate Services Company with the Texas sales and use tax audits, including reviewing schedules, invoices, and correspondence as requested by EFH Corporate Services Company;

(c)    assisting with compiling supporting documentation and replies for the auditor as requested by EFH Corporate Services Company;

(d)    advising EFH Corporate Services Company regarding their penalty exposure with respect to EY's advice rendered and the disclosures that may avoid such penalties as determined by The Internal Revenue Code, related IRS guidance and professional standards; and

(e)    assisting EFH Corporate Services Company with one off taxability questions that arise.

12.    As set forth in the Postpetition SOW, EY will also provide information technology services to TXUE related to upgrading their SAP technical environment.  Such services may include:

(a)     completing all Work (as defined in the MSA) remaining to be completed under the Blueprint SOW;

(b)     application of Enhancement Pack 7 and Support Pack 3 inclusive of all necessary patches, notes and additional developments identified either in the RTM or as a prerequisite for the installation to all TXUE environments which will include Quality, Preproduction, Production, and two Training environments.  Application will adhere to TXUE defined change control process and TXUE defined documentation standards.  The application of the change to Production shall be completed on the weekend of September 19 – 21, 2014 (or such earlier date as mutually agreed between TXUE and EY) and the application of the change to one Training environment shall be completed immediately after the completion of Production;

(c)     continuing ownership and maintenance of Requirements Traceability Matrix ("RTM") which will include, without limitation, the following: (i) identified impacted objects, (ii) where those objects are used, (iii) determination if the objects will need to be changed, (iv) objects that will need to be tested, (v) associated change documents, and (vi) associated documentation of test results;

(d)     providing comprehensive testing services for the unit, integration, parallel, security (user role), and regression testing phases, which will include the following: (i) scenario identification (ii) data preparation, (iii) scenario execution, (iv) results documentation, and (v) remediation of identified defects.  Each phase shall adhere to the criteria for entrance and exit as defined in the Testing Strategy Document delivered pursuant to the Blueprint SOW;

(e)     providing User Acceptance Testing (UAT) Support Testing services and support which will include, without limitation, the following: (i) data preparation, (ii) scenario execution where requested, (iii) remediation of identified defects.  TXUE will dictate scenarios and provide resources to validate results and perform testing (iv) adherence to the entrance and exit criteria defined in the Testing Strategy Document delivered pursuant to the Blueprint SOW;

(f)     creating and executing a detailed cutover plan approved by TXUE that includes, without limitation: (i) user access requirements, (ii) system requirements, (iii) prerequisites, (iv) individual task break down with responsible parties and durations, (v) overall start and end times for a cutover occurring over a weekend (which weekend shall be identified to TXUE not less than 2 weeks prior to such weekend), and (vi) a back out plan.  Perform at least two mock upgrades, cutovers and have results and improvements documented and approved by TXUE.  "Production Downtime" shall mean, during the cutover of the production environment, the time commencing at 10:00 PM (central) on the applicable Friday and

continuing until cutover is complete and all production instances are available for users not directly associated with the cutover. In the event that the Production Downtime exceeds 48 hours, a credit will be due to TXUE, in the amount set forth opposite the applicable aggregate Production Downtime in the table below, toward amounts owing by TXUE to EY under the Postpetition SOW, the unapplied portion of which credit shall be refunded promptly to TXUE if and when TXUE shall notify EY of TXUE's reasonable determination that no further amounts are expected to be owing by TXUE to EY under the Postpetition SOW. In the event that the aggregate Production Downtime is less than 30 hours, a "bonus" will be paid by TXUE to EY in the amount set forth opposite the applicable aggregate Production Downtime in the table below; provided that bonus amounts shall only be paid if the applicable cutover weekend was identified to TXUE by EY at least 2 weeks in advance of the designated cutover weekend allowing TXUE to adjust staffing models to take advantage of the reduction:

| Production Downtime | Compensation Credit/Bonus[4] |
| --- | --- |
| Greater than 48 hours and less than 52 hours (Sunday 10:00 pm – Monday 2:00 am) | $25,000 credit |
| Greater than 52 hours ( > Monday 2:00 am) | $100,000 credit |
| Greater than or equal to 24 hours and less than 30 hours (Saturday 10:00 pm – Sunday 4:00 am) | $37,500 bonus |
| Less than 24 hours (< Saturday 10:00 pm) | $75,000 bonus |

(g)     providing post support services. Any issues found during the duration of 30 calendar days from the date that users first access the upgraded production environment (the "Go-Live Date"). Onsite support services from the entire EY upgrade team will be provided for 1 week after the Go-Live Date, and remote support shall be provided for 30 days after such 1-week period. In addition, one EY resource will remain onsite to assist in

---

[4]     Compensation credit or bonus amounts defined in the table will not be cumulative.

facilitating the triage and resolution of defects for 30 days after such one-week onsite support ends.  During the 30 days after the one-week onsite support, EY will be responsible for resolving identified issues.  These services will include, without limitation, (i) triage and resolution for defects logged related to the upgrade release, (ii) 24 x 7 availability to respond to any Severity 1 issue, and (iii) knowledge transfer to TXUE resources.  Definitions of Defect Severity shall be included and agreed in the Test Strategy document

(h)     automating test scenarios using the TXUE provided Worksoft Certify suite according to the test automation strategy document developed and agreed on by both TXUE and EY;

(i)     assisting TXUE to track and measure the upgrade implementation's impact on the TXUE's scorecards for the purpose of measuring success of the project.   The expectation from TXUE is that this upgrade implementation will not negatively impact its scorecard metrics; and

(j)     adhering to TXUE defined standards of quality as it relates to defect leakage to production.  EY will attempt to perform services identified in section b for production with no unresolved defects.  EY may make a recommendation to TXUE to proceed with known defects.  TXUE will review and provide written approval.

**Efforts to Avoid Duplication of Services**

13.     The Debtors have chosen PricewaterhouseCoopers LLP ("PwC") to provide internal audit, information security, and tax consulting services, KPMG LLP ("KPMG") to provide bankruptcy accounting and tax advisory services, and Deloitte & Touche LLP ("Deloitte & Touche," and together with PwC and KPMG, the "Accounting Firms") to provide independent auditing services.  EY has been chosen to provide tax advisory and information technology services, which, upon information and belief, are distinct from the services to be provided by the Accounting Firms.  EY agrees to keep the Debtors informed as to the services it is providing so that the Debtors may prevent any duplication of efforts.

**Professional Compensation**

14.     Pursuant to section 328(a) of the Bankruptcy Code, the Debtors request that the Court approve the retention of EY on an hourly basis at the blended billing rate provided below.

Pursuant to the terms of the MSA, the Debtors request the performance of EY's services through the execution of individual statements of work, including the Blueprint SOW and the Postpetition SOW, consistent with the MSA. The Debtors and EY have agreed that EY shall be paid at the hourly rate provided below for services rendered, and shall be reimbursed according to its customary reimbursement policies, all as set forth in the Thiel Declaration.

15.    Pursuant and subject to the detailed descriptions contained in the Tax Advisory SOW, EY intends to charge EFH Corporate Services Company for the services rendered in connection with the Tax Advisory SOW based on the time that EY's professionals spend performing them, billed at the standard hourly rates listed below, as adjusted annually. EFH Corporate Services Company will also pay any potential value-added taxes (VAT), sales taxes, and other indirect taxes incurred in connection with the delivery of the services rendered in connection with the Tax Advisory SOW, including any such taxes and related administrative costs that result from billing arrangements specifically requested by EFH Corporate Services Company.

| Title | Rate Per Hour |
|---|---|
| Partner | $543-582 |
| Executive Director | $480 |
| Senior Manager | $470 |
| Manager | $360 |
| Senior | $234 |
| Staff | $183 |

16.    Pursuant and subject to the detailed descriptions contained in the Texas SOW, EY intends to charge EFH Corporate Services Company for the services rendered in connection with the Texas SOW based on the time that EY's professionals spend performing them, billed according to the current rate card with EFH Corporate Services Company for tax services. The

current billing rates for EFH Corporate Services Company are provided below. EFH Corporate Services Company will also pay any potential value-added taxes (VAT), sales taxes, and other indirect taxes incurred in connection with the delivery of the services rendered in connection with the Texas SOW, including any such taxes and related administrative costs that result from billing arrangements specifically requested by EFH Corporate Services Company.

| Title | Rate Per Hour |
|---|---|
| Partner (more than 10 years) | $582 |
| Partner (6th through 10th year) | $543 |
| Partner (1st through 5th year) | $516 |
| Executive Director | $480 |
| Senior Manager | $470 |
| Manager | $360 |
| Senior 3 | $285 |
| Senior 1/2 | $234 |
| Staff 2 | $183 |
| Staff 1 | $105 |
| CSA | $105 |

17.     Pursuant and subject to the detailed descriptions contained in the Blueprint SOW, EY intends to charge TXUE for the services rendered in connection with the Postpetition SOW on an hourly basis, at a rate of $213/hour; provided that in no event shall the fees payable by TXUE (excluding any bonus provided above), together with the $569,658 payable by TXUE under the Blueprint SOW, exceed, in the aggregate, $1,400,000 without TXUE's prior written consent. EY will notify TXUE as soon as reasonably practical prior to exceeding the fee estimate and will work with TXUE to reach a mutual agreement, in writing, to changes to the Postpetition SOW.

18.    EY intends to apply for compensation for professional services rendered and reimbursement of expenses incurred in connection with these chapter 11 cases, subject to the Court's approval and in compliance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, the guidelines (the "Trustee Guidelines") established by the U.S. Trustee and any other applicable procedures and orders of the Court, on an hourly basis.  To that end, contemporaneously herewith, the Debtors have filed the *Motion of Energy Future Holdings Corp.,* et al.*, for Entry of an Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals*, pursuant to which EY intends to submit requests for compensation.

19.    As of the Petition Date, the Debtors do not owe EY any fees for services performed or expenses incurred under the MSA.  Prior to the Petition Date, the Debtors paid EY retainers in the aggregate amount of $569,658 in connection with this matter.  On the Petition Date, there was an unused retainer balance of approximately $13,598.63.  According to EY's books and records, during the 90-day period prior to the Petition Date, EY received $784,613 from the Debtors for professional services performed and expenses incurred.

**Indemnification Provisions**

20.    The MSA also contains the following standard indemnification language with respect to EY's services:[5]

> (a) agreement to indemnify and hold harmless EY from and against any and all claims brought or suffered by the Debtors for death or bodily injury or the damage or loss or destruction of any real tangible personal property, arising out of, or incident to or related in any way to, directly or indirectly, performance of the MSA, but only in proportion to, and to the extent such

---

[5]    The information provided herein is a summary of the indemnification language of the MSA.  *See* MSA at Art. 27.  To the extent the summary is inconsistent with the indemnification language in the MSA, the language in the MSA shall control except as limited by the Order.

claims are caused by or result from a breach of the MSA or the negligence or intentional acts or omissions of the other party; and

(b) agreement to protect, indemnify, and hold harmless EY from and against all third party claims and damages arising from or relating to third party's use of or reliance on, any report (including tax advice) disclosed to such third party by, or at the request of the Debtors, except to the extent finally determined to have resulted from EY's gross negligence or intentional misconduct relating to such reporting.

21.     The Debtors and EY believe that the indemnification provisions contained in the Engagement Letter are customary and reasonable for EY and comparable firms providing restructuring advisory services.   In addition, pursuant to the Order, the Debtors seek to qualify and limit the indemnification provisions as follows:

(a) EY shall not be entitled to indemnification or reimbursement of expenses pursuant to the Modified MSA, unless such indemnification or reimbursement of expenses are approved by the Court;

(b) the Debtors shall have no obligation to indemnify EY, or provide contribution or reimbursement to EY, for any claim or expense that is either:  (i) judicially determined (the determination having become final) to have arisen from EY's gross negligence or willful misconduct; (ii) for a contractual dispute in which the Debtors allege the breach of EY's contractual obligations unless the Court determines that indemnification, contribution or reimbursement would be permissible pursuant to *In re United Artists Theatre Co.*, 315 F.3d 217 (3d Cir. 2003); or (iii) settled prior to a judicial determination as to the exclusions set forth in clauses (i) and (ii) above, but determined by the Court, after notice and a hearing to be a claim or expense for which EY should not receive indemnity, contribution or reimbursement under the terms of the Modified MSA; and

(c) if before the earlier of (i) the entry of an order confirming a chapter 11 plan in these cases (that order having become a final order no longer subject to appeal), and (ii) the entry of an order closing these chapter 11 cases, EY believes that it is entitled to the payment of any amounts by EFH Corporate Services Company or any of the Debtors on account of the Debtors' indemnification, contribution and/or reimbursement obligations under the Modified MSA, including without limitation the advancement of defense costs, EY must file an application therefor in this Court, and the Debtors may not pay any such amounts to EY before the entry of an order by this Court approving the payment.  This subparagraph (e) is intended only to specify the period of time under which the Court shall have jurisdiction over any request for fees and expenses by EY for   indemnification, contribution or

reimbursement, and not a provision limiting the duration of the Debtors' obligation to indemnify EY.  All Parties-In-Interest shall retain the right to object to any demand by EY for indemnification, contribution or reimbursement.

22.    These indemnification provisions, as qualified and limited by the Order, are customary in this district and others.  *See*, *e.g.*, *In re Appleseed's Intermediate Holdings LLC*, No. 11-10160 (KG) (Bankr. D. Del. Feb. 18, 2011) (approving similar modified indemnification provisions for the retention and employment of Alvarez & Marsal North America, LLC); *In re Local Insight Media Holdings, Inc.*, No. 10-13677 (KG) (Bankr. D. Del. Dec. 17, 2010) (same); *In re Atrium Corp.*, No. 10-10150 (BLS) (Bankr. D. Del. Feb. 24, 2010) (approving similar modified indemnification provisions for the retention and employment of Deloitte Financial Advisory Services LLP); *In re Majestic Star Casino, LLC*, No. 09-14136 (KG) (Bankr. D. Del. Dec. 17, 2009) (approving similar modified indemnification provisions for the retention and employment of Moelis & Company LLC); *In re Muzak Holdings LLC*, No. 09-10422 (KJC) (Bankr. D. Del. April 6, 2009) (approving similar modified indemnification provisions for the retention and employment of Moelis & Company LLC).

23.    Moreover, the terms and conditions of the indemnification provisions were negotiated by EFH Corporate Services and EY at arm's-length and in good faith.  The provisions contained in the Engagement Letter, viewed in conjunction with the other terms of EY proposed retention, are reasonable and in the best interest of the Debtors, their estates, and creditors in light of the fact that the Debtors require EY's services to successfully reorganize.  Accordingly, as part of this Application, the Debtors request that the Court approve the indemnification provisions as set forth in the Engagement Letter and as modified pursuant to the Order.

**EY's Disinterestedness**

24.     In connection with the proposed retention by the Debtors in these chapter 11 cases, EY received a list of parties-in-interest from the Debtors (the "Parties-In-Interest").  EY searched or caused to be searched certain databases to determine whether it has provided in the recent past or is currently providing services to a subset, which includes more than 4,000 persons or entities, of those Parties-In-Interest identified by the Debtors.  To the extent that EY's research of relationships with the persons or entities listed on **Exhibit 1** to the Thiel Declaration indicated that EY has had in the recent past, or currently has, a client relationship with such persons or entities in matters unrelated to these chapter 11 cases, EY has so indicated in **Exhibit 1** to the Thiel Declaration.

25.     To the best of the Debtors' knowledge and except to the extent disclosed herein and in the Thiel Declaration:   (a) EY is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code, as required by section 327(a) of the Bankruptcy Code and does not hold or represent an interest adverse to the Debtors' estates; and (b) EY has no connection to the Debtors, their creditors, or their related parties.

26.     EY will continue to monitor potential conflicts or disqualifying circumstances going forward.  To the extent that EY discovers any new relevant facts or relationships bearing on the matters described herein during the period of EY's retention, EY will use reasonable efforts to review its files and file promptly a supplemental declaration.

27.     The Debtors do not owe EY any amount for services performed or expenses incurred prior to the Petition Date and, thus, EY is not a prepetition creditor of the Debtors.

**Basis for Relief**

28.     Section 327(a) of the Bankruptcy Code provides that a debtor subject to court approval:

> [M]ay employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the [debtor] in carrying out the [debtor]'s duties under this title.

11 U.S.C § 327(a).

29.    Moreover, Bankruptcy Rule 2014 requires that an application for retention include:

> [S]pecific facts showing the necessity for the employment, the name of the [firm] to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the [firm's] connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States Trustee, or any person employed in the office of the United States Trustee.

Fed. R. Bankr. P. 2014.

30.    The terms and conditions of the Engagement Letter, including the indemnification provisions contained therein, were negotiated by EFH Corporate Services and EY at arm's-length and in good faith.  The Debtors and EY respectfully submit that the terms of EY's retention are customary and reasonable for tax and information technology consulting engagements, both out-of-court and in comparable chapter 11 cases, and in the best interests of the Debtors' estates, creditors, and all Parties-In-Interest.

## Notice

31.    The Debtors shall provide notice of this Application on the date hereof via U.S. first class mail to:  (a) the Office of the U.S. Trustee for the District of Delaware; (b) (i) the entities listed on the Consolidated List of Creditors Holding the 50 Largest Unsecured Claims filed pursuant to Bankruptcy Rule 1007(d); and (ii) proposed counsel to the Creditors' Committee; (c) Wilmington Trust, N.A., in its capacity as administrative agent under the TCEH

first lien credit agreement and collateral agent under the TCEH intercreditor agreements and counsel thereto; (d) Bank of New York Mellon Trust Company, N.A., in its capacity as indenture trustee under: (i) the TCEH unsecured pollution control revenue bonds; and (ii) the EFCH 2037 Notes due 2037, and counsel thereto; (e) American Stock Transfer & Trust Company, LLC, in its capacity as indenture trustee under: (i) the 9.75% EFH senior unsecured notes due 2019; (ii) the 10.0% EFH senior unsecured notes due 2020; (iii) the 10.875% EFH LBO senior unsecured notes due 2017; (iv) the 11.25%/12.0% EFH LBO toggle notes due 2017; (v) the 5.55% EFH legacy notes (series P) due 2014; (vi) the 6.50% EFH legacy notes (series Q) due 2024; and (vii) the 6.55% EFH legacy notes (series R) due 2034, and counsel thereto; (f) Computershare Trust Company, N.A. and Computershare Trust Company of Canada, in their capacities as indenture trustee under: (i) the 11.0% EFIH senior secured second lien notes due 2021; and (ii) the 11.75% EFIH senior secured second lien notes due 2022, and counsel thereto; (g) UMB Bank, N.A. in its capacity as indenture trustee under: (i) the 9.75% EFIH senior unsecured notes due 2019; and (ii) the 11.25%/12.25% EFIH senior toggle notes due 2018, and counsel thereto; (h) BOKF, NA, dba Bank of Arizona, in its capacity as indenture trustee under 11.50% TCEH senior secured notes due 2020, and counsel thereto; (i) CSC Trust Company of Delaware in its capacity as indenture trustee under: (i) the 6.875% EFIH senior secured notes due 2017; and (ii) the 10.0% EFIH senior secured notes due 2020, and counsel thereto; (j) Law Debenture Trust Company of New York in its capacity as indenture trustee under: (i) the 10.25% TCEH senior unsecured notes due 2015; and (ii) the 10.50%/11.25% TCEH senior toggle notes due 2016, and counsel thereto; (k) Wilmington Savings Fund Society, FSB in its capacity as indenture trustee under the 15.0% TCEH senior secured second lien notes due 2021, and counsel thereto; (l) counsel to certain holders of claims against the Debtors regarding each of the foregoing

described in clauses (c) through (k); (m) the agent for the TCEH debtor-in-possession financing facility and counsel thereto; (n) the agent for the EFIH debtor-in-possession financing facility and counsel thereto; (o) counsel to certain holders of equity in Texas Energy Future Holdings Limited Partnership; (p) counsel to the Ad Hoc Committee of TCEH Unsecured Noteholders; (q) counsel to the Ad Hoc Committee of TCEH Second Lien Noteholders; (r) Oncor Electric Delivery Holdings Company LLC and counsel thereto; (s) Oncor Electric Delivery Company LLC and counsel thereto; (t) the Securities and Exchange Commission; (u) the Internal Revenue Service; (v) the Office of the United States Attorney for the District of Delaware; (w) the Office of the Texas Attorney General on behalf of the Public Utility Commission of Texas; (x) counsel to the Electric Reliability Council of Texas; (y) those parties that have requested notice pursuant to Bankruptcy Rule 2002; and (z) EY.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

## No Prior Request

32.    No prior request for the relief sought in this Application has been made to this or any other court.

*[Remainder of page intentionally left blank.]*

WHEREFORE, the Debtors respectfully request that the Court enter the Order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested herein and granting such other and further relief as is appropriate under the circumstances.

Wilmington, Delaware
Dated:  May 29, 2014

      */s/ Paul M. Keglevic*
Paul M. Keglevic
Executive Vice President, Chief Financial
Officer, and Co-Chief Restructuring Officer
of EFH Corp., EFIH, and TCEH LLC