# **EXHIBIT D**

**Tax Advisory SOW**

Contract No. C0628215C

## SCHEDULE A

Following the Parties' execution of this Schedule A, CONTRACTOR (Ernst & Young LLP) is authorized to perform the Work as identified below on behalf of COMPANY (EFH Corporate Services Company) pursuant to the terms and conditions contained in the Agreement between COMPANY and CONTRACTOR dated June 10, 2010 and, any amendments thereto ("the Agreement")..

## SCOPE OF WORK AND DELIVERABLES

The Work will be performed in accordance with the specifications and instructions, if any, attached hereto and identified in the List of Attachments. The Work will be scheduled at the direction of COMPANY'S Contract Coordinator as identified herein.

CONTRACTOR will provide tax advisory services related to assessment and implementation regarding the temporary and, upon release, the final tangible property Treasury Regulations and Revenue Procedures (collectively, "the new regulations"). The new regulations cover a broad range of issues and will generally be organized into the following major sections:
- Materials and Supplies
- Acquisitions, including the book de minimis rule
- Improvements
- Dispositions and Depreciation

As part of the Work, CONTRACTOR will provide tax advisory services to COMPANY related to the following areas in the new regulations (upon release, the analysis will consider impact of final tangible property regulations and related transitional guidance):

- Treas. Reg. §1.168(i)-8T (Dispositions, including general asset election(s)) and/or re-proposed/final regulations;
- Treas. Reg. §1.162-3T (Materials and Supplies) and/or final regulations;
- Treas. Reg. §1.263(a)-2T (Acquisitions, including de minimis rule) and/or final regulations;
- Treas. Reg. §1.263(a)-3T (Unit of Property Definitions, Improvements and Routine Maintenance) and/or final regulations;
- Rev. Proc. 2013-24 (Guidance for Electric Power Generation Assets);
- Rev. Proc. 2012-19 (Changes in accounting method for improvements (repairs and maintenance) and/or published guidance related to the final regulations; and
- Rev. Proc. 2012-20 (Changes in accounting method for dispositions) and/or published guidance related to the final regulations.

The project will consist of two phases. See Attachment A for each Phase specifications.

CONTRACTOR will consult with subject matter professionals regarding the new tangible property regulations on issues and items that may affect the implementation of the new regulations.

Other specific tasks that may be involved in connection with the Work includes participation in meetings and telephone calls with the COMPANY, participating in meetings and telephone calls with third parties, and review of transactional and technical documentation beyond those documents noted above.

This engagement does not include:

(1) an analysis of any shift in ownership of COMPANY stock,

(2) the preparation of statements required by Internal Revenue Code §§382 and 383, or (3) a determination of whether such code sections limit the amount of taxable income or tax that can be offset by net operating loss carryforwards, certain recognized built-in losses, certain excess credits, or net capital loss carryovers. The limitations under these provisions may have a material adverse impact on COMPANY'S tax liability. CONTRACTOR will not prepare a return on which taxable income (or tax) is offset by such attributes unless an analysis is performed. If COMPANY would like CONTRACTOR to perform such an analysis, those services would be covered under a separate engagement letter.

This engagement does not include any advice or determinations regarding what expenses may be qualified research expenses under Internal Revenue Code §41.

This engagement does not include tax services associated with the Oncor Electric Delivery Co LLC.

## DELIVERABLES

Deliverables provided by CONTRACTOR to the COMPANY may include written documents such as memorandums, workplans, presentations and/or tax return forms related to various items/issues identified in the tangible property regulation assessment and implementation process.

## WORK SITE

The Work Site will be the following location(s):

**CONTRACTOR Offices:**
2323 Victory Avenue
Suite 2000
Dallas, TX 75219

**COMPANY Offices:**
1601 Bryan Street
Dallas, Texas 75201

## SCHEDULE

Phase I of the Work will start August 26, 2013, and be complete by December 31, 2013. Phase II Implementation will start at the coordination of the COMPANY'S Contract Coordinator. The scheduling of Work will be coordinated with COMPANY's Contract Coordinator.

Contract Coordinator: Mr. Kevin Ashby
Phone Number: 214-812-2117

## COMPENSATION, INVOICES AND PAYMENT

As full compensation for the satisfactory performance by CONTRACTOR of the Work authorized pursuant to this Schedule A, COMPANY will compensate CONTRACTOR as follows.

COMPANY shall pay fees for the Services based on the time that CONTRACTOR's professionals spend performing them, billed at the standard hourly rates for each such individual listed below, as adjusted annually while the Services under this Schedule A are being performed. COMPANY shall also pay any potential value-added taxes (VAT), sales taxes, and other indirect taxes incurred in connection with the delivery of the Services, including any such taxes and related administrative costs that result from billing arrangements specifically requested by COMPANY. CONTRACTOR will bill COMPANY for CONTRACTOR'S fees, expenses, and applicable taxes or other charges, if any, on a monthly basis. Payment is due 60 days after receipt of CONTRACTOR'S invoice.

The fees for Phase I of this project are expected to range from $50,000 to $75,000 but are not authorized to exceed $75,000, plus expenses. Any extension or increase in spend will require amendment to this Schedule A. This estimate assumes there will be travel to the participant's site. Phase II fees will be determine at the end of Phase I based on agreement of implementation plan with the COMPANY's Contract Coordinator and an amendment to Schedule A with Phase II fees will be required.

**Professional and Support Staff Fees Schedule**

| Christopher J. Grasher | Partner, Tax Services | $582/hr |
|---|---|---|
| J. Andrew Miller | Partner, Tax Services | $582/hr |
| David Coley | Partner, Tax Services | $543/hr |
| Shannon Lind McNamara | Partner, Tax Services | $543/hr |
| Brandon Carlton | Partner, Tax Services | $543/hr |
| Jim Ramsey | Executive Director, Tax Services | $480/hr |
| Kristi Poteet | Senior Manager, Tax Services | $470/hr |
| Sean Nelson | Senior Manager, Tax Services | $470/hr |
| Allison Plaisance | Senior Manager, Tax Services | $470/hr |
| Cory Johnson | Manager, Tax Services | $360/hr |

| Senior | To Be Determined | $234/hr |
|---|---|---|
| Staff | To Be Determined | $183/hr |

PRIVILEGES CLAIMED BY COMPANY, WITH RESPECT TO DELIVERABLES OR OTHER DOCUMENTS HEREAFTER DESIGNATED BY COMPANY

_____ ATTORNEY-CLIENT COMMUNICATION

_____ ATTORNEY WORK PRODUCT

\_\_X\_\_ TAX ADVISOR

_____ OTHER: _____

The rates specified in the Schedule A will remain in effect, with respect to and until completion of the Work authorized pursuant to this Schedule A.

All invoices shall be sent to:

Energy Future Holdings
1601 Bryan Street
Dallas, Texas 75201
Attention: Mr. Kevin Ashby

### KEY PERSONNEL

CONTRACTOR agrees that the individuals listed as Professional and Support Staff above will be assigned to perform the Work authorized by this Schedule A. CONTRACTOR will employ all reasonable efforts to ensure that such individuals remain so assigned until such Work is accepted by COMPANY; provided, however, that in the event that any such individuals are reassigned by CONTRACTOR or otherwise become unavailable to perform such Work, CONTRACTOR will provide, by way of replacement, individuals with reasonably equivalent experience and expertise.

CONTRACTOR PERSONNEL AUTHORIZED TO ATTEND MEETINGS WITH COMPANY PERSONNEL PERTAINING TO THE WORK

| Christopher J. Grasher | Partner, Tax Services |
|---|---|
| J. Andrew Miller | Partner, Tax Services |
| David Coley | Partner, Tax Services |
| Shannon Lind McNamara | Partner, Tax Services |
| Brandon Carlton | Partner, Tax Services |

| Jim Ramsey | Executive Director, Tax Services |
| --- | --- |
| Kristi Poteet | Senior Manager, Tax Services |
| Sean Nelson | Senior Manager, Tax Services |
| Allison Plaisance | Senior Manager, Tax Services |
| Cory Johnson | Manager, Tax Services |
| Staff/Senior | To Be Determined |

## LIST OF ATTACHMENTS

COMPANY and CONTRACTOR agree that the following described attachments, if any, are incorporated herein in their entirety as fully as completely rewritten herein.

1. Attachment A – Phase Specifications

Work not specified above may be authorized only through a separate Schedule A, or through an amendment or supplement to this Schedule A.

## OTHER TERMS AND CONDITIONS

COMPANY will not, and COMPANY will not permit others to, quote or refer to any Reports, any portion, summary or abstract thereof, or to CONTRACTOR or any other CONTRACTOR Firm, in any document filed or distributed in connection with (i) a purchase or sale of securities to which the United States or state securities laws ("Securities Laws") are applicable, or (ii) periodic reporting obligations under Securities Laws. COMPANY will not contend that any provisions of Securities Laws could invalidate any provision of this Schedule A.

The Services are advisory in nature. CONTRACTOR will not render an assurance report or assurance opinion under the Agreement, nor will the Services constitute an audit, review, examination, or other form of attestation as those terms are defined by the American Institute of Certified Public Accountants. CONTRACTOR will not conduct a review to detect fraud or illegal acts.

CONTRACTOR should be aware that the Internal Revenue Code imposes a penalty on an underpayment of tax attributable to any disallowance of claimed tax benefits because a transaction entered into after March 30, 2010, lacks "economic substance." The penalty rate is 20 percent if the transaction is adequately disclosed to the IRS, with the penalty rate increased to 40 percent if the transaction is not adequately disclosed in the relevant tax return or attachment to that return. As the penalty is one of strict liability, a taxpayer cannot show reasonable cause for the avoidance of the economic substance penalty by establishing reliance on the tax advice of a qualified advisor. Accordingly, CONTRACTOR's Tax Advice cannot provide any assurance that the claimed tax benefits of a transaction entered into after March 30, 2010, would not be subject to disallowance by reason of a determination by the IRS or the courts that a transaction lacks economic substance or fails to meet the requirements of any similar rule of law, nor can Tax Advice that CONTRACTOR provides be relied

upon to protect against applicable penalties that may be asserted if it is determined that the transaction lacked economic substance where otherwise required.

If CONTRACTOR receives a request from a third party for any information relating to CONTRACTOR's Tax Advice, CONTRACTOR will notify COMPANY and will not release any such information unless COMPANY has executed an appropriate written consent authorizing such disclosure and the third party has executed a nonreliance and release letter acceptable to us in form and substance.

**ACCEPTANCE CRITERIA AND ADDITIONAL TERMS AND CONDITIONS APPLICABLE TO THE WORK**

ERNST & YOUNG LLP

By: _____
    Signature

Name: _____

Title: PARTNER

Date: 9/9/2013

EFH CORPORATE SERVICES COMPANY

By: _____
    Signature

Name: Kevin M. Ashby

Title: Director, Tax

Date: 8/30/13

## Attachment A
## Work Specifications

### Phase 1 – Information Gathering and Preliminary Assessment

*Information Gathering*
CONTRACTOR will gather information to understand the COMPANY's current financial reporting and tax methodologies, policies, and processes and to perform a preliminary analysis of the impact of the new regulations to the COMPANY.

Therefore, CONTRACTOR may request the following documentation by tax regarded legal entity:

- Written policies and procedures for financial reporting and tax with respect to fixed asset capitalization, repairs, and dispositions;
- Financial reporting and tax fixed asset reports (in detailed electronic form if possible);
- Current general ledger chart of accounts with descriptions, including any accounts specific to materials &supplies and repairs & maintenance including a description of the items within these accounts;
- Detailed trial balance amounts (at 2012 year-end and most recent 2013 close);
- Organizational chart;
- Example of standard or major lease agreements for real and personal property each, if applicable;
- Copies of Forms 4562 relating to depreciation and any general asset account elections that have been filed for the most recent three tax years (supplemental information may be needed later), as well as a statement as to whether a general asset account election has been made for any MACRS property;
- A description of any depreciation elections currently in place, including but not limited to alternative depreciation system elections;
- A statement regarding any known section 263A non-compliance issues for inventory, self-constructed assets or capitalized interest;
- Tax and financial depreciation and amortization and gross receipts for each regarded taxpayer in the consolidated group for the COMPANY;
- Listing of all plants, including type of plant and location;
- Overview or schematic of plant process and the equipment in the plant;
- Overview or schematic for major pieces of equipment and their components; and
- Routine maintenance and/or overhaul schedules for major pieces of equipment and their components.

*Preliminary Assessment and Workplan Development*
CONTRACTOR will facilitate discussions with the COMPANY's tax, financial accounting, and operations personnel to discuss the information gathered as well as to understand the COMPANY's operations and systems. These discussions will:

- Develop an understanding of the COMPANY's existing methodologies and processes for capitalization thresholds, repair and maintenance expenditures, retirements of assets, materials and supplies, unit of property definitions and routine maintenance;
- Compare current methodologies with the new regulations;
- Estimate the impact of the COMPANY's current tax position for improvements (including evaluating capitalized assets and items currently expensed as repairs & maintenance) compared to new regulations;
- Assess tax posture, processes and recommendations for adopting Rev. Proc. 2013-24;
- Develop a work plan to prioritize the impact and planning opportunities of the new regulations to the COMPANY; and
- Identify other tax areas that could be impacted by the new regulations including, but not limited to sections 199 and 263A, if applicable. Note that to file an automatic method change, under the current Revenue Procedures, for many of the issues presented in the new tangible property regulations, the COMPANY generally must properly conform to Section 263A.

Upon conclusion of the preliminary assessment, CONTRACTOR will provide a estimate of the impact of the new regulations for improvements, recommendations for adopting Rev. Proc. 2013-24, preliminary assessment workplan and report documenting the current methodologies and implementation considerations including the accounting method changes that may need to be filed pursuant to Rev. Proc. 2012-19 and Rev. Proc. 2012-20 (or forthcoming transition guidance for the final regulations) to comply with the new regulations.

**Phase 2 – Implementation, Filing, and Documentation**

The specific focus and timing for Phase 2 will depend on the findings of Phase 1. As such, Phase 2 will be co-developed with the COMPANY and will address responsibilities of CONTRACTOR and the COMPANY and will generally consist of the following steps:

- Perform a detailed analysis of the major issues identified during Phase 1 to comply with the new regulations, estimate tax effects, and quantify section 481(a) adjustments for accounting method changes;
- Assist the COMPANY with optional elections and positions related to the new regulations on the 2013 and/or 2014 tax return;
- Prepare written analysis and documentation of how the COMPANY complies with the new regulations, including technical memoranda and/or tax opinions (as necessary); and
- Prepare and file IRS Form(s) 3115, Application for Change in Accounting Method.