## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| ENERGY FUTURE HOLDINGS CORP., *et al.*, | ) | Case No. 14-10979 (CSS) |
| | ) | |
| Debtors.[1] | ) | (Jointly Administered) |
| | ) | |
| | ) | |
| | ) | **Hearing Date: June 30, 2014 at 9:30 a.m.** |
| | ) | **Objection Deadline: June 13, 2014 at 4:00 p.m.** |
| | ) | |
| | ) | |

### APPLICATION OF ENERGY FUTURE HOLDINGS CORP., *ET AL.*, FOR ENTRY OF AN ORDER AUTHORIZING THE DEBTORS TO RETAIN AND EMPLOY RICHARDS, LAYTON & FINGER, P.A. AS CO-COUNSEL EFFECTIVE *NUNC PRO TUNC* TO THE PETITION DATE

The above-captioned debtors and debtors in possession (collectively, the "**Debtors**") file this application (this "**Application**") for the entry of an order (the "**Order**"), substantially in the form attached hereto as **Exhibit A**, authorizing the Debtors to employ and retain Richards, Layton & Finger, P.A. ("**RLF**") as their co-counsel effective *nunc pro tunc* to the Petition Date (as defined herein). In support of this Application, the Debtors submit the affidavit of Daniel J. DeFranceschi, a Director at RLF (the "**DeFranceschi Affidavit**"), attached hereto as **Exhibit B** and the affidavit of Stacey H. Doré (the "**Doré Declaration**"). In further support of this Application, the Debtors respectfully state as follows.

---

[1] The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, which are being jointly administered on an interim basis, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

## JURISDICTION AND VENUE

1.      The United States Bankruptcy Court for the District of Delaware (the "**Court**") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Debtors confirm their consent pursuant to rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Bankruptcy Rules**") to the entry of a final order by the Court in connection with this Application to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The statutory bases for the relief requested herein are sections 327(a), 328, and 330 of title 11 of the United States Code (the "**Bankruptcy Code**"), rules 2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Local Bankruptcy Rules 2014-1, 2016-2, 9010-1(c), and 9010-1(d).

## RELIEF REQUESTED

4.      By this Application, the Debtors seek entry of an Order authorizing the employment and retention of RLF pursuant to sections 327(a), 328, and 330 of the Bankruptcy Code, Bankruptcy Rules 2014(a) and 2016, and Local Bankruptcy Rules 2014-1, 2016-2, 9010-1(c), and 9010-1(d) as their co-counsel in accordance with the terms and conditions set forth in that certain engagement letter (the "**Engagement Letter**"), dated as of March 20, 2013, between Debtor Energy Future Holdings Corp. ("**EFH Corp.**") and RLF, a copy of which is attached hereto as **Exhibit C** and incorporated herein by reference.

2

## BACKGROUND

5.     On April 29, 2014 (the "**Petition Date**"), each of the Debtors filed a voluntary

petition (the "**Chapter 11 Cases**") with the Court under chapter 11 of the Bankruptcy Code.  The

Debtors are operating their businesses and managing their property as debtors in possession

pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  The Chapter 11 Cases are jointly

administered.  The Court has not appointed a trustee.  On May 12, 2014, the Office of the United

States Trustee for the District of Delaware (the "**U.S. Trustee**") appointed a statutory committee

of unsecured creditors (the "**Creditors' Committee**") pursuant to section 1102(a)(1) of the

Bankruptcy Code.[2]

6.     Debtor EFH Corp., a Texas corporation, is the ultimate parent company for each

of the Debtors in these Chapter 11 Cases and certain of EFH Corp.'s non-Debtor affiliates

(collectively, "**EFH**").     EFH's businesses include the largest generator, distributor, and

certificated retail provider of electricity in Texas.  EFH conducts substantially all of its business

operations in the electricity market overseen by the Electric Reliability Council of Texas

("**ERCOT**"), which covers the majority of Texas.  The Texas electricity market, in turn, is

subject to oversight and regulation by the Public Utility Commission of Texas (the "**PUC**").

EFH has approximately 9,100 employees, approximately 5,700 of whom are employed by the

Debtors,[3] in three distinct business units:

---

[2] A detailed discussion of EFH's business operations and capital structure are set forth in the *Declaration of Paul Keglevic, Executive Vice President, Chief Financial Officer, and Co-Chief Restructuring Officer of Energy Future Holdings Corp., et al., in Support of First Day Motions* [D.I. 98] (the "**First Day Declaration**"), filed on the Petition Date.

[3] The Debtors in these chapter 11 cases consist of:  (a) the vast majority of the entities that compose Luminant and TXU Energy, as well as those entities' intermediate corporate parent entity, Texas Competitive Electric Holdings Company LLC ("**TCEH LLC**"), a Delaware limited liability company, and TCEH LLC's corporate parent, Energy Future Competitive Holdings Company LLC ("**EFCH**"), a Delaware limited liability company; (b) Energy Future Intermediate Holding Company LLC ("**EFIH**"), a Delaware limited liability company that indirectly owns approximately 80% of Oncor Electric Delivery

- EFH's *competitive electricity generation, mining, wholesale electricity sales, and commodity risk management and trading activities*, conducted by TCEH LLC's Debtor subsidiaries composing "**Luminant**";

- EFH's *competitive retail electricity sales operations and related operations*, mainly conducted by TCEH LLC's Debtor subsidiaries composing "**TXU Energy**";[4] and

- EFH's *rate-regulated electricity transmission and distribution operations*, conducted by the non-Debtor Oncor.

7.    In the aggregate, the Debtors have approximately $42 billion of funded indebtedness, including: (a) approximately $32.1 billion of claims against TCEH LLC and TCEH LLC's direct and indirect Debtor subsidiaries; (b) approximately $71 million of claims against EFCH; (c) approximately $1.9 billion of claims against EFH Corp.; and (d) approximately $7.7 billion of claims against EFIH.[5]

8.    Although the Debtors' balance sheet is overleveraged, the Debtors' operations are strong. Luminant's generation units are high performing, its mining and electricity generation operations have impressive safety records, and its commodity trading and risk management activities have delivered significant value to the Debtors. TXU Energy is an industry leader in customer care performance and product innovation and has maintained strong performance notwithstanding intense competition. And non-Debtor Oncor produces a strong and consistent stream of revenue. Thus, these Chapter 11 Cases will provide the Debtors with the opportunity

---

Holdings Company LLC ("**Oncor**"), and EFIH's wholly-owned subsidiary, EFIH Finance Inc.; (c) EFH Corp.; and (d) other direct and indirect subsidiaries of EFH Corp., including EFH Corporate Services Company.

[4] The Debtors also conduct a relatively small amount of retail electricity operations through their 4Change brand and another entity, Luminant ET Services Company, that provides retail electricity service to some end use customers and to some of Luminant's mining operations, and a small amount of retail gas operations through Luminant Energy Company LLC.

[5] Amounts include intercompany debt holdings and short-term borrowings, and exclude guarantees, unamortized discounts or premiums, accrued but unpaid interest, and certain other figures typically reported in the Debtors' filings with the Securities and Exchange Commission (the "**SEC**"), such as capital lease obligations, certain promissory notes, and certain other obligations.

4

to restructure their balance sheets and retain their position as leaders in the Texas electricity market.

9.    As of December 31, 2013, EFH Corp. reported total assets of approximately $36.4 billion in book value, approximately $28.8 billion of which is attributable to EFCH, TCEH LLC, and TCEH LLC's direct and indirect subsidiaries (collectively with TCEH LLC and EFCH, "**TCEH**"),[6] and total liabilities of approximately $49.7 billion in book value, approximately $41.1 billion of which is attributable to TCEH.[7] EFH Corp.'s assets and liabilities that are not attributable to TCEH are mostly attributable to EFIH's indirect ownership of approximately 80% of Oncor.  EFH Corp.'s consolidated revenues for the quarter ending December 31, 2013 were approximately $1.3 billion, all of which were attributable to TCEH. EFH Corp.'s consolidated annual revenues for the year ending December 31, 2013 were approximately $5.9 billion.

## RLF'S QUALIFICATIONS

10.    The Debtors have selected RLF on the basis of its recognized experience in the field of debtors' and creditors' rights and business reorganizations and liquidations under chapter 11 of the Bankruptcy Code; its expertise, experience, and knowledge practicing before this Court; its proximity to the Court; and its ability to respond quickly to emergency hearings and other emergency matters before this Court.

11.    RLF has been actively involved in numerous major chapter 11 cases, and this Court has entered orders approving RLF's retention to represent debtors in many cases, including most recently: *In re USEC Inc.*, Case No. 14-10475 (CSS) (Bankr. D. Del. Apr. 21, 2014); *In re*

---

[6] Oncor's revenues are not included in EFH Corp.'s consolidated revenues because EFH Corp. accounts for its ownership of Oncor under the equity method of accounting.

[7] Figures for TCEH are derived from EFCH's public filings with the SEC, and are almost entirely attributable to TCEH LLC and its Debtor and non-Debtor subsidiaries.

*MACH Gen, LLC*, Case No. 14-10461 (MFW) (Bankr. D. Del. Apr. 10, 2014); *In re QCE Finance LLC*, Case No. 14-10543 (PJW) (Bankr. D. Del. Apr. 9, 2014); *In re MSD Performance, Inc.*, Case No. 13-12286 (PJW) (Bank. D. Del. Oct. 1, 2013); *In re Longview Power, LLC*, Case No. 13-12211 (BLS) (Bankr. D. Del. Sept. 24, 2013); *In re OnCure Holdings, Inc.*, Case No. 13-11540 (KG) (Bankr. D. Del. July 24, 2013); *In re NE Opco, Inc.*, Case No. 13-11483 (CSS) (Bankr. D. Del. July 11, 2013); *In re Homer City Funding LLC*, Case No. 12-13024 (KG) (Bankr. D. Del. Dec. 6, 2012); *In re Vertis Holdings, Inc.*, Case No. 12-12821 (CSS) (Bankr. D. Del. Nov. 20, 2012); and *In re Blitz U.S.A., Inc.*, Case No. 11-13603 (PJW) (Bankr. D. Del. Dec. 5, 2011).[8]

12.     In addition, since March 20, 2013, RLF has provided many of the Services (as defined below) to the Debtors in connection with their restructuring efforts.  In providing such prepetition professional services to the Debtors, RLF has become familiar with the Debtors and their business, including the Debtors' financial affairs, debt structure, operations, and related matters.  Accordingly, RLF is both well qualified and uniquely able to represent the Debtors in these Chapter 11 Cases in an efficient and timely manner.

## SERVICES TO BE PROVIDED

13.     Subject to further order of the Court and consistent with the Engagement Letter, RLF will render the following professional services (collectively, the "**Services**"):

(a)     take all necessary actions to protect and preserve the estates of the Debtors, including the prosecution of actions on the Debtors' behalf, the defense of any actions commenced against the Debtors, the negotiation of disputes in which the Debtors are involved, and the preparation of objections to claims filed against the Debtors' estates;

---

[8] Because of the voluminous nature of the orders cited herein, they are not attached to the Application but are available upon request to Debtors' counsel.

(b)    advise the Debtors of their rights, powers, and duties as debtors and debtors in possession under chapter 11 of the Bankruptcy Code;

(c)    prepare on behalf of the Debtors, as debtors in possession, all necessary motions, applications, answers, orders, reports, and other papers in connection with the administration of the Debtors' estates and serve such papers on creditors;

(d)    take all necessary or appropriate actions in connection with a plan or plans of reorganization and related disclosure statement(s) and all related documents, and such further actions as may be required in connection with the administration of the Debtors' estates; and

(e)    perform all other necessary legal services in connection with the prosecution of these Chapter 11 Cases.

14.    As set forth in the DeFranceschi Affidavit, RLF has stated its desire and willingness to act in the Debtors' cases and render the necessary professional services as co-counsel to the Debtors on the terms described herein, and to subject itself to the jurisdiction of the Court. RLF understands that the Debtors have chosen Kirkland & Ellis LLP ("**K&E**") to serve as lead bankruptcy counsel to the Debtors. RLF has and will continue to work closely with K&E to prevent any duplication of efforts in the course of advising the Debtors. The employment of RLF is appropriate and necessary to enable the Debtors to execute faithfully their duties as debtors and debtors in possession and to implement their reorganization.

## PROFESSIONAL COMPENSATION

15.    Subject to the approval of this Court, in accordance with sections 327, 328, 330, and 331 of the Bankruptcy Code and as set forth in the DeFranceschi Affidavit, compensation will be paid to RLF on an hourly basis at the customary hourly rates in effect when services are rendered, plus reimbursement of actual, necessary expenses and other charges incurred by RLF according to its customary reimbursement policies. The Debtors respectfully submit that such rates are reasonable.

RLF1 10311035v.1

16.    RLF intends to apply for compensation for professional services rendered and reimbursement of expenses incurred in connection with these Chapter 11 Cases, subject to the Court's approval and in compliance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, and any other applicable procedures and orders of the Court, on an hourly basis.

17.    As set forth in the DeFranceschi Affidavit, RLF has not shared or agreed to share any of its compensation from the Debtors with any other persons, other than the directors of RLF, as permitted by section 504 of the Bankruptcy Code.

18.    As set forth in the DeFranceschi Affidavit, the Debtors do not owe RLF any amount for services rendered or expenses incurred prior to the Petition Date, and thus RLF is not a prepetition creditor of the Debtors.

## EVERGREEN RETAINER

19.    As set forth in the DeFranceschi Affidavit, RLF received a total retainer in the amount of $125,000.00 (the "**Retainer**"[9]) from the Debtors as compensation for professional services rendered and reimbursement for expenses incurred in connection with the commencement of these Chapter 11 Cases.  The Debtors propose that the remainder of the Retainer paid to RLF and not expended for prepetition services and disbursements be treated as

---

[9] As also disclosed in the DeFranceschi Affidavit, RLF received prepetition payments from the Debtors totaling $728,967.47.  Of the total funds received by RLF from the Debtors prepetition (*i.e.,* $728,967.47), RLF periodically applied certain funds that it received from the Debtors against its prepetition fees and expenses.  As of the Petition Date (once all prepetition fees and expenses incurred by RLF were applied against the prepetition payments that it received), RLF was holding $235,992.05 in total funds from the Debtors.  RLF proposes to apply all amounts that it is holding above the Retainer amount (*i.e.,* $110,992.05) against its first monthly invoice filed with this Court consistent with the terms of any interim compensation procedures order that this Court might enter and then to continue to hold the Retainer amount (*i.e.,* $125,000.00) as an evergreen retainer throughout the pendency of the Debtors' Chapter 11 Cases consistent with the Engagement Letter.

an evergreen retainer to be held by RLF as security throughout these Chapter 11 Cases until RLF's fees and expenses are awarded by final order and payable to RLF.

20.    In this district, evergreen retainer agreements reflect normal business terms in the marketplace. *See In re Insilco Tech., Inc.*, 291 B.R. 628, 634 (Bankr. D. Del. 2003) ("[T]he practice [of receiving security retainers] in this district has been engaged in since at least the early 1990's."). Moreover, RLF believes that its request for approval of an evergreen retainer in these cases satisfies the five-part test articulated by Judge Carey in *Insilco*. First, RLF submits that the proposed terms of its engagement reflect normal business terms in the market place. Second, RLF submits that both it and the Debtors are sophisticated business entities that have negotiated the Retainer at arm's length. Third, RLF believes that approval of the Retainer as an evergreen retainer is in the best interests of the Debtors' estates. Indeed, at this crucial stage of the Debtors' Chapter 11 Cases, RLF believes that it is essential that the Debtors have immediate and uninterrupted access to sophisticated Delaware co-counsel to assist in the prosecution of their bankruptcy cases. Fourth, RLF is currently unaware of any creditor opposition to the approval of the Retainer as an evergreen retainer. Fifth, given the size, circumstances, and posture of the Debtors' Chapter 11 Cases, RLF believes approval of the Retainer as an evergreen retainer (in particular in light of the very modest size of the Retainer given the size of these cases) provides it with an appropriate level of risk minimization in connection with the payment of its prospective fees and costs in these cases. Indeed, in similar circumstances, this Court has overruled opposition from the U.S. Trustee and approved professional retainers as evergreen retainers. *See* Transcript of Record at 42: lines 7-22, *In re Capmark Fin. Group Inc.*, Case No. 09-13684 (CSS) (Bankr. D. Del. Dec. 10, 2009).

RLF1 10311035v.1

21.     Given the extensive nature of the services that RLF will provide to the Debtors, the retention of RLF under an evergreen retainer is appropriate and necessary to enable the Debtors to faithfully execute their duties as debtors and debtors in possession and to implement the reorganization of the Debtors.

### RLF'S DISINTERESTEDNESS

22.     In connection with the proposed retention by the Debtors in these Chapter 11 Cases, RLF received a list identifying more than 10,000 parties-in-interest from the Debtors (the "**Parties-in-Interest**").[10]

23.     To the best of the Debtors' knowledge, information, and belief, other than as set forth in the DeFranceschi Affidavit, (a) RLF is not a creditor, equity security holder, or insider of the Debtors; (b) none of RLF's partners, counsels, or associates is, or was within two years of the Petition Date, a director, officer, or employee of the Debtors; (c) RLF neither holds nor represents an interest materially adverse to the Debtors or their estates; and (d) RLF has not represented any of the Debtors' creditors, equity security holders, or any of the other Parties-in-Interest in any matter relating to the Debtors or their estates.  Consequently, the Debtors believe that RLF is a "disinterested person," as defined in section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code, and that the employment of RLF is necessary and in the best interests of the Debtors, their estates and creditors, and all other Parties-in-Interest.

24.     RLF will conduct an ongoing review of its files to ensure that no conflicts or other disqualifying circumstances exist or arise.  Pursuant to Local Bankruptcy Rule 2014-1, to the extent that RLF learns of any additional material information relating to its employment (such as

---

[10] Because of the voluminous nature of the Parties-in-Interest list, it is not attached to the Application but is available upon request to Debtors' counsel.

potential or actual conflicts of interest), RLF will file and serve a supplemental affidavit with the Court setting forth the additional information.

## **BASIS FOR RELIEF**

25.     Section 327(a) of the Bankruptcy Code provides that a debtor, subject to court approval:

> [M]ay employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the [debtor] in carrying out the [debtor]'s duties under this title.

11 U.S.C § 327(a).

> Moreover, Bankruptcy Rule 2014 requires that an application for retention include:

> [S]pecific facts showing the necessity for the employment, the name of the [firm] to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the [firm's] connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States Trustee, or any person employed in the office of the United States Trustee.

Fed. R. Bankr. P. 2014.

26.     The terms and conditions of the Engagement Letter were negotiated by the Debtors and RLF at arm's-length and in good faith.  The Debtors and RLF respectfully submit that the terms of RLF's retention are customary and reasonable for co-counsel engagements, both out-of-court and in comparable chapter 11 cases, and in the best interests of the Debtors' estates, creditors, and all Parties-in-Interest.[11]

---

[11] Moreover, pursuant to Local Bankruptcy Rules 9010-1(c) and 9010-1(d), the Debtors are required to retain Delaware counsel.

## NOTICE

27.     The Debtors shall provide notice of this Application on the date hereof via U.S. first class mail to: (a) the Office of the U.S. Trustee for the District of Delaware; (b) (i) the entities listed on the Consolidated List of Creditors Holding the 50 Largest Unsecured Claims filed pursuant to Bankruptcy Rule 1007(d); and (ii) proposed counsel to the Creditors' Committee; (c) Wilmington Trust, N.A., in its capacity as administrative agent under the TCEH first lien credit agreement and collateral agent under the TCEH intercreditor agreements and counsel thereto; (d) Bank of New York Mellon Trust Company, N.A., in its capacity as indenture trustee under: (i) the TCEH unsecured pollution control revenue bonds; and (ii) the EFCH 2037 Notes due 2037, and counsel thereto; (e) American Stock Transfer & Trust Company, LLC, in its capacity as indenture trustee under: (i) the 9.75% EFH senior unsecured notes due 2019; (ii) the 10.0% EFH senior unsecured notes due 2020; (iii) the 10.875% EFH LBO senior unsecured notes due 2017; (iv) the 11.25%/12.0% EFH LBO toggle notes due 2017; (v) the 5.55% EFH legacy notes (series P) due 2014; (vi) the 6.50% EFH legacy notes (series Q) due 2024; and (vii) the 6.55% EFH legacy notes (series R) due 2034, and counsel thereto; (f) Computershare Trust Company, N.A. and Computershare Trust Company of Canada, in their capacities as indenture trustee under: (i) the 11.0% EFIH senior secured second lien notes due 2021; and (ii) the 11.75% EFIH senior secured second lien notes due 2022, and counsel thereto; (g) UMB Bank, N.A. in its capacity as indenture trustee under: (i) the 9.75% EFIH senior unsecured notes due 2019; and (ii) the 11.25%/12.25% EFIH senior toggle notes due 2018, and counsel thereto; (h) BOKF, NA, dba Bank of Arizona, in its capacity as indenture trustee under 11.50% TCEH senior secured notes due 2020, and counsel thereto; (i) CSC Trust Company of Delaware in its capacity as indenture trustee under: (i) the 6.875% EFIH senior secured notes due 2017; and (ii) the 10.0% EFIH senior secured notes due 2020, and counsel thereto; (j) Law Debenture Trust

Company of New York in its capacity as indenture trustee under: (i) the 10.25% TCEH senior unsecured notes due 2015; and (ii) the 10.50%/11.25% TCEH senior toggle notes due 2016, and counsel thereto; (k) Wilmington Savings Fund Society, FSB in its capacity as indenture trustee under the 15.0% TCEH senior secured second lien notes due 2021, and counsel thereto; (l) counsel to certain holders of claims against the Debtors regarding each of the foregoing described in clauses (c) through (k); (m) the agent for the TCEH debtor-in-possession financing facility and counsel thereto; (n) the agent for the EFIH debtor-in-possession financing facility and counsel thereto; (o) counsel to certain holders of equity in Texas Energy Future Holdings Limited Partnership; (p) counsel to the Ad Hoc Committee of TCEH Unsecured Noteholders; (q) counsel to the Ad Hoc Committee of TCEH Second Lien Noteholders; (r) Oncor Electric Delivery Holdings Company LLC and counsel thereto; (s) Oncor Electric Delivery Company LLC and counsel thereto; (t) the Securities and Exchange Commission; (u) the Internal Revenue Service; (v) the Office of the United States Attorney for the District of Delaware; (w) the Office of the Texas Attorney General on behalf of the Public Utility Commission of Texas/PUC; and (x) counsel to the Electric Reliability Council of Texas/ERCOT; and (y) those parties that have requested notice pursuant to Bankruptcy Rule 2002. The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

28.     No prior request for the relief sought in this Application has been made to this or any other court.

*[Remainder of page intentionally left blank.]*

WHEREFORE, the Debtors respectfully request that the Court enter the Order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested herein and granting such other and further relief as is appropriate under the circumstances.

Dated:  May 29, 2014
Wilmington, Delaware

/s/ Stacey H. Doré
Name: Stacey H. Doré
Title:   Executive Vice President, General Counsel, and Co-Chief Restructuring Officer of Energy Future Holdings Corp., *et al.*

14