**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) | Case No. 14-10979 (CSS) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | **Hearing Date:  June 30, 2014 at 9:30 a.m.** |
| | ) | **Objection Deadline:  June 13, 2014 at 4:00 p.m.** |

**DEBTORS' APPLICATION FOR ENTRY**
**OF AN ORDER AUTHORIZING THE RETENTION AND EMPLOYMENT OF**
**KIRKLAND & ELLIS LLP AS ATTORNEYS FOR THE DEBTORS AND DEBTORS**
**IN POSSESSION EFFECTIVE *NUNC PRO TUNC* TO THE PETITION DATE**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") file this application (this "Application") for the entry of an order (the "Order"), substantially in the form attached hereto as **Exhibit A**, authorizing the Debtors to retain and employ Kirkland & Ellis LLP ("K&E") as their attorneys effective *nunc pro tunc* to the Petition Date (as defined herein).  In support of this Application, the Debtors submit the declaration of Edward O. Sassower, P.C., a partner at K&E (the "Sassower Declaration"), which is attached hereto as **Exhibit B**, and the declaration of Stacey H. Doré, Executive Vice President, General Counsel, and Co-Chief Restructuring Officer of Energy Future Holdings Corp. ("EFH Corp."), Energy Future Intermediate Holding Company LLC ("EFIH"), and Texas Competitive Electric Holdings Company LLC ("TCEH LLC"), which is attached hereto as **Exhibit C** (the "Doré Declaration"). In further support of this Application, the Debtors respectfully state as follows.

---

[1]    The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810.  The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201.  Due to the large number of debtors in these chapter 11 cases, for which joint administration has been granted on an interim basis, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

**<u>Jurisdiction</u>**

1.     The United States Bankruptcy Court for the District of Delaware (the "<u>Court</u>") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Debtors consent pursuant to rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "<u>Local Bankruptcy Rules</u>") to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2.     Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.     The bases for the relief requested herein are sections 327(a) and 330 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>"), rules 2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), and Local Bankruptcy Rules 2014-1 and 2016-2.

**<u>Background</u>**

4.     On April 29, 2014 (the "<u>Petition Date</u>"), each of the Debtors filed a voluntary petition with the Court under chapter 11 of the Bankruptcy Code.  The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  The Court has entered an interim order for joint administration of these chapter 11 cases.  The Court has not appointed a trustee.  The Office of the United States Trustee for the District of Delaware (the "<u>U.S. Trustee</u>") formed an official

committee of unsecured creditors (the "Creditors' Committee") in these chapter 11 cases on May 13, 2014 [D.I. 420]. Further information regarding the Debtors' business operations and capital structure is set forth in the declaration of Paul Keglevic in support of the Debtors' first day motions [D.I. 98] (the "First Day Declaration").

## Relief Requested

5.      By this Application, the Debtors seek the entry of an Order authorizing the retention and employment of K&E as their attorneys in accordance with the terms and conditions set forth in that certain engagement letter between the Debtors and K&E effective as of June 19, 2012 (the "Engagement Letter"), a copy of which is attached hereto as **Exhibit 1** to **Exhibit A** and incorporated herein by reference.[2]

## K&E's Qualifications

6.      The Debtors seek to retain K&E because of K&E's recognized expertise and extensive experience and knowledge in the field of debtors' protections, creditors' rights, and business reorganizations under chapter 11 of the Bankruptcy Code. K&E has been actively involved in major chapter 11 cases and has represented debtors in many cases, including, among others: *In re The Dolan Company*, No. 14-10614 (BLS) (Bankr. D. Del. Mar. 23, 2014); *In re Sorenson Commc'ns, Inc.*, No. 14-10454 (BLS) (Bankr. D. Del. Mar. 3, 2014); *In re Fisker Auto. Holdings, Inc.*, No. 13-13087 (KG) (Bankr. D. Del. Nov. 22, 2013); *In re Physiotherapy Holdings, Inc.*, No. 13-12965 (KG) (Bankr. D. Del. Nov. 14, 2013); *In re Longview Power, LLC*,

---

[2]     The Debtors also seek to employ and retain Richards, Layton & Finger P.A. ("RLF") as their conflicts counsel in connection with these chapter 11 cases to handle matters that the Debtors may encounter that cannot be handled appropriately by K&E because of a conflict of interest. It is intended that the services of RLF shall complement, and not duplicate, the services to be rendered by K&E. Moreover, the responsibilities of RLF shall be confined to discrete legal matters that are distinct from the matters handled by K&E. RLF shall act on its own and will not act under the direct supervision of K&E. Indeed, the Debtors are extremely mindful of the need to avoid duplication of services and appropriate procedures will be implemented to ensure that there is no such duplication and that appropriate ethical walls are erected to screen K&E from the work of RLF.

No. 13-12211 (BLS) (Bankr. D. Del. Sept. 24, 2013); *In re Maxcom Telecomunicaciones S.A.B. de C.V.*, No. 13-11839 (PJW) (Bankr. D. Del. July 23, 2013); *In re Dex One Corp.*, No. 13-10533 (KG) (Bankr. D. Del. Mar. 18, 2013).[3]

7.        In preparing for its representation of the Debtors in these chapter 11 cases, K&E has become familiar with the Debtors' businesses and many of the potential legal issues that may arise in the context of these chapter 11 cases.   The Debtors believe that K&E is both well-qualified and uniquely able to represent the Debtors in these chapter 11 cases in an efficient and timely manner.

## Services to be Provided

8.        Subject to further order of the Court, and consistent with the Engagement Letter, the Debtors request the retention and employment of K&E to render the following legal services:

    **a.**    advising the Debtors with respect to their powers and duties as debtors in possession in the continued management and operation of their businesses and properties;

    **b.**    advising and consulting on the conduct of these chapter 11 cases, including all of the legal and administrative requirements of operating in chapter 11;

    **c.**    attending meetings and negotiating with representatives of creditors and other parties in interest;

    **d.**    taking all necessary actions to protect and preserve the Debtors' estates, including prosecuting actions on the Debtors' behalf, defending any action commenced against the Debtors, and representing the Debtors in negotiations concerning litigation in which the Debtors are involved, including objections to claims filed against the Debtors' estates;

    **e.**    preparing pleadings in connection with these chapter 11 cases, including motions, applications, answers, orders, reports, and papers necessary or otherwise beneficial to the administration of the Debtors' estates;

---

[3]    Because of the voluminous nature of the orders cited in this Application, they are not attached to this Application.  Copies of these orders are available upon request of Debtors' proposed counsel.

f.     representing the Debtors in connection with obtaining authority to continue using cash collateral and postpetition financing;

g.     advising the Debtors in connection with any potential sale of assets;

h.     appearing before the Court and any appellate courts to represent the interests of the Debtors' estates;

i.     advising the Debtors regarding tax matters;

j.     taking any necessary action on behalf of the Debtors to negotiate, prepare, and obtain approval of a disclosure statement and confirmation of a chapter 11 plan and all documents related thereto; and

k.     performing all other necessary legal services for the Debtors in connection with the prosecution of these chapter 11 cases, including: (i) analyzing the Debtors' leases and contracts and the assumption and assignment or rejection thereof; (ii) analyzing the validity of liens against the Debtors; and (iii) advising the Debtors on corporate and litigation matters.

### **Professional Compensation**

9.     K&E intends to apply for compensation for professional services rendered on an hourly basis and reimbursement of expenses incurred in connection with these chapter 11 cases, subject to the Court's approval and in compliance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, and any other applicable procedures and orders of the Court. The hourly rates and corresponding rate structure K&E will use in these chapter 11 cases are the same as the hourly rates and corresponding rate structure that K&E uses in other restructuring matters, as well as similar complex corporate, securities, and litigation matters whether in court or otherwise, regardless of whether a fee application is required. These rates and the rate structure reflect that such restructuring and other complex matters typically are national in scope and involve great complexity, high stakes, and severe time pressures.

10.     K&E operates in a national marketplace for legal services in which rates are driven by multiple factors relating to the individual lawyer, his or her area of specialization, the firm's expertise, performance, and reputation, the nature of the work involved, and other factors.

11.     As discussed in more detail below, K&E's rates are subject to periodic change in the ordinary course of business.  K&E's hourly rates for matters related to these chapter 11 cases from April 29, 2013, to December 31, 2013, ranged as follows:

| Billing Category | U.S. Range |
|------------------|------------|
| Partners | $655-$1,150 |
| Of Counsel | $450-$1,150 |
| Associates | $430-$790 |
| Paraprofessionals | $150-$335 |

12.     K&E's current hourly rates for matters related to these chapter 11 cases range as follows:[4]

| Billing Category[5] | U.S. Range |
|---------------------|------------|
| Partners | $665-$1,295 |
| Of Counsel | $415-$1,195 |
| Associates | $450-$865 |
| Paraprofessionals | $170-$355 |

13.     K&E's hourly rates are set at a level designed to compensate K&E fairly for the work of its attorneys and paraprofessionals and to cover fixed and routine expenses.  Hourly

---

[4]     These ranges reflect proposed changes to K&E's billing rates that will take effect on June 1, 2014, and July 1, 2014.  K&E will make appropriate disclosures to the Court, the U.S. Trustee, and other parties in interest if the rates when finalized differ in any material respect from those listed above.  For professionals and paraprofessionals residing outside of the U.S., hourly rates are billed in the applicable currency.  When billing a U.S. entity, such foreign rates are converted into U.S. dollars at the then applicable conversion rate.  After converting these foreign rates into U.S. dollars, it is possible that certain rates may exceed the billing rates listed in the chart herein.

[5]     In the event K&E uses contract attorneys during these chapter 11 cases, K&E will not charge a markup to the Debtors with respect to fees billed by such attorneys.  Moreover, any contract attorneys or non-attorneys who are employed by the Debtors in connection with work performed by K&E will be subject to conflict checks and disclosures in accordance with the requirements of the Bankruptcy Code.

rates vary with the experience and seniority of the individuals assigned.  These hourly rates are subject to periodic adjustments to reflect economic and other conditions.[6]

14.    K&E represented the Debtors during the 12-month period before the Petition Date, using the hourly rates listed above.  Moreover, these hourly rates are consistent with the rates that K&E charges other comparable chapter 11 clients, regardless of the location of the chapter 11 case.

15.    The rate structure provided by K&E is appropriate and not significantly different from (a) the rates that K&E charges for other similar types of representations or (b) the rates that other comparable counsel would charge to do work substantially similar to the work K&E will perform in these chapter 11 cases.

16.    It is K&E's policy to charge its clients in all areas of practice for identifiable, non-overhead expenses incurred in connection with the client's case that would not have been incurred except for representation of that particular client.  It is also K&E's policy to charge its clients only the amount actually incurred by K&E in connection with such items.  Examples of such expenses include postage, overnight mail, courier delivery, transportation, overtime expenses, computer-assisted legal research, photocopying, airfare, meals, and lodging.

17.    To ensure compliance with all applicable deadlines in these chapter 11 cases, from time to time K&E utilizes the services of overtime secretaries.  K&E charges fees for these services pursuant to the Engagement Letter, which permits K&E to bill the Debtors for overtime

---

[6]    For example, like many of its peer law firms, K&E typically increases the hourly billing rate of attorneys and paraprofessionals twice a year in the form of: (i) step increases historically awarded in the ordinary course on the basis of advancing seniority and promotion  and (ii) periodic increases within each attorney's and paraprofessional's current level of seniority.  The step increases do not constitute "rate increases" (as the term is used in the *Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases*, effective November 1, 2013.  As set forth in the Order, K&E will provide ten business days' notice to the Debtors, the U.S. Trustee, and any official committee before implementing any periodic increases, and shall file such notice with the Court.

secretarial charges that arise out of business necessity.  In addition, K&E professionals also may charge their overtime meals and overtime transportation to the Debtors consistent with prepetition practices.

18.    K&E currently charges the Debtors $0.13 per page for standard duplication in its offices in the United States.  Notwithstanding the foregoing and consistent with the Local Bankruptcy Rules, K&E will charge no more than $0.10 per page for standard duplication services in these chapter 11 cases.  K&E does not charge its clients for incoming facsimile transmissions.  K&E has negotiated a discounted rate for Westlaw computer-assisted legal research.  Computer-assisted legal research is used whenever the researcher determines that using Westlaw is more cost effective than using traditional (non-computer assisted legal research) techniques.

### Compensation Received by K&E from the Debtors

19.    As set forth below, on September 13, 2012, the Debtors paid $1 million to K&E as a classic retainer, and the Debtors subsequently increased the classic retainer to $6 million.  A balance of approximately $4.23 million remained as of the Petition Date.  The foregoing retainer constitutes a "classic retainer" as defined in *In re Production Associates, Ltd.*, 264 B.R. 180, 184–85 (Bankr. N.D. Ill. 2001), and *In re McDonald Bros. Construction Inc.*, 114 B.R. 989, 997–99 (Bankr. N.D. Ill. 1990).  Moreover, pursuant to the Engagement Letter, the classic retainers are property of K&E and are not held in a separate account.  As such, K&E earned the classic retainers upon receipt, and, consequently, K&E placed the amounts into its general cash account.  The amounts K&E has invoiced the Debtors against the classic retainer for professional services and for the reimbursement of reasonable and necessary expenses incurred in connection therewith are set forth in the Sassower Declaration.

8

20.     Pursuant to Bankruptcy Rule 2016(b), K&E has neither shared nor agreed to share (a) any compensation it has received or may receive with another party or person, other than with the partners, associates, and contract attorneys associated with K&E or (b) any compensation another person or party has received or may receive.  As of the Petition Date, the Debtors did not owe K&E any amounts for legal services rendered before the Petition Date.  Although certain expenses and fees may have been incurred, but not yet applied to K&E's classic retainer, such amounts, if any, would be less than the balance of K&E's classic retainer as of the Petition Date.

### K&E's Disinterestedness

21.     K&E understands that certain parties may attempt to derail these chapter 11 cases by challenging the Debtors' efforts to jointly retain counsel and other advisors.  These stakeholders have asserted at the first-day hearing in these chapter 11 cases and in other pleadings that potential intercompany claims somehow create conflicts between various estates.[7] As a result, K&E believes it is appropriate and necessary to address these objections at this time.

22.     Specifically, the Debtors believe there are at least five reasons why K&E's retention is appropriate in these chapter 11 cases and entirely consistent with the requirements set forth in section 327(a) of the Bankruptcy Code.

23.     *First*, K&E understands that, given the intertwined nature of the Debtors' businesses and the Debtors' corporate structure, there are intercompany claims by and among certain of the Debtors.  But there is nothing unusual about that.  Intercompany claims are ubiquitous in large chapter 11 cases involving joint representation of all estates by debtors'

---

[7]    *See Preliminary Objection to the Ad Hoc Group of TCEH Unsecured Noteholders to the Motion of the TCEH Debtors for Entry of an Order Directing Joint Administration of Their Chapter 11 Cases with Those of the Oncor Debtors* [D.I. 222], ¶ 28 (asserting that the Debtors' cases will be driven by irreconcilable conflicts between the TCEH Debtors and EFIH/EFH); Hr'g Tr.,111-114 (May 1, 2014) (attempting to undermine the first day declarant on the necessity of joint administration to establish that joint administration is not appropriate for all of the Debtors).

counsel.[8]  This is also true in large energy sector cases involving complex capital structures with multiple tranches of debt.[9]  If intercompany claims disabled the joint retention of professionals, the chapter 11 process would be unworkable; that is why courts do not disqualify a professional's retention solely because of the presence of such claims.[10]

---

[8]     In fact, of the 20 largest jointly administered bankruptcies on record by liabilities, each involved the joint representation of each debtor by debtors' counsel.  *See In re AMR Corp. (d/b/a American Airlines)*, Case No. 11-15463 (Bankr. S.D.N.Y. Mar. 2, 2012) (authorizing retention of single counsel to jointly represent all debtors in the case); *In re MF Global Holdings Ltd.*, Case No. 11-15059 (Bankr. S.D.N.Y. Feb. 9, 2012) (same); *In re CIT Grp. Inc.*, Case No. 09-16565 (Bankr. S.D.N.Y. Dec. 21, 2009) (same); *In re Capmark Fin. Grp. Inc. (f/k/a/ GMAC Commercial Holding Corp.)*, Case No. 09-13684 (Bankr. D. Del. Dec. 14, 2009) (same); *In re Motors Liquidation Co. (f/k/a General Motors Corp.)*, Case No. 09-50026 (Bankr. S.D.N.Y. June 25, 2009) (same); *In re TMST, Inc. (f/k/a Thornburg Mortgage, Inc.)*, Case No. 09-17787 (Bankr. D. Md. May 22, 2009) (same); *In re General Growth Properties, Inc.*, Case No. 09-11977 (Bankr. S.D.N.Y. May 21, 2009) (same); *In re Charter Commc'ns, Inc.*, Case No. 09-11435 (Bankr. S.D.N.Y. Apr. 15, 2009) (same); *In re Lyondell Chem. Co.*, Case No. 09-10023 (Bankr. S.D.N.Y. Feb. 25, 2009) (same); *In re Lehman Bros. Holdings Inc.*, Case No. 08-13555 (Bankr. S.D.N.Y. Nov. 21, 2008) (same); *In re Calpine Corp.*, Case No. 05-60200 (Bankr. S.D.N.Y. Jan. 25, 2006) (same); *In re Refco Fin., Inc.*, Case No. 05-60006 (Bankr. S.D.N.Y. Dec. 12, 2005) (same); *In re DPH Holdings Corp. (f/k/a Delphi Corp.)*, Case No. 05-44481 (Bankr. S.D.N.Y. Nov. 4 2005) (same); *In re Delta Air Lines, Inc.*, Case No. 05-17932 (Bankr. S.D.N.Y. Oct. 18, 2005) (same); *In re Conseco, Inc.*, Case No. 02-49672 (Bankr. N.D. Ill. Jan. 14, 2003) (same); *In re UAL Corp. (d/b/a United Airlines)*, Case No. 02-48191 (Bankr. N.D. Ill. Dec. 30, 2002) (same); *In re Worldcom, Inc.*, Case No. 02-13533 (Bankr. S.D.N.Y. Sept. 4, 2002) (same); *In re Adelphia Commc'ns Corp.*, Case No. 02-41729 (Bankr. S.D.N.Y. July, 31, 2002) (same); *In re NTL, Inc.*, Case No. 02-41316 (Bankr. S.D.N.Y. May 13, 2002) (same); *In re Enron Corp.*, Case No. 01-16034 (Bankr. S.D.N.Y. Jan. 30, 2001) (same).

[9]     *See In re Edison Mission Energy*, (Bankr. N.D. Ill. Jan. 17, 2013) (authorizing the retention of one counsel to represent all debtors with several tranches of debt held by multiple debtors); *In re Calpine Corp.*, Case No. 05-60200 (Bankr. S.D.N.Y. Jan. 25, 2006) (approving the retention of a single debtors' counsel where parent holding several tranches of debt was separate from debt held by debtor-subsidiary); *In re NRG Energy, Inc.*, Case No. 03-13024 (Bankr. S.D.N.Y. June 3, 2003) (same); *In re Mirant Corp.*, Case No. 03-46590 (Bankr. N.D. Tex. July 17, 2003) (approving the retention of a single debtors' counsel where two primary debtors controlled separate debt structures).

[10]    *See In re Adelphia Commc'ns Corp.*, 336 B.R. 610, 672-73 (Bankr. S.D.N.Y. 2006) ("[T]he presence of intercompany claims between debtors represented by the same counsel does not automatically warrant the disqualification of that counsel."); *In re Global Marine, Inc.*, 108 B.R. 998, 1004 (Bankr. S.D. Tex. 1987) ("[T]he mere existence of an intercompany claim does not in and of itself constitute an impermissible conflict of interest that would justify disqualification.").  *See also In re Residential Capital LLC*, No. 12-12020, Hr'g Tr. 73 (Bankr. S.D.N.Y. Jul. 30, 2013) (finding that the joint retention of debtors with intercompany claims is common place and that the ad hoc group's motion to disqualify counsel due to the existence of intercompany claims was a veiled attempt to "hamstring the co-proponents of the reorganization plan from proceeding to seek confirmation of any plan that settles interdebtor claims").

24.    **Second**, the Restructuring Support Agreement provides for the resolution of numerous potential intercompany claims among the Debtors.[11]  This cuts against precipitous action to unjustifiably deprive the Debtors of the counsel of their choice.  At most, this Court should adopt the "wait-and-see" approach commonly used by bankruptcy courts with respect to intercompany claims.[12]

25.    **Third**, as much as disgruntled creditors may want to emphasize potential conflicts among the various estates, the signatories to the Restructuring Support Agreement include holders of claims across the Debtors' capital structure, including holders of approximately 43% of the first lien claims against TCEH LLC, approximately 34% of the first lien claims against EFIH, approximately 35% of the second lien claims against EFIH, approximately 70% of the unsecured note claims against EFIH, approximately 73% of the unsecured note claims against EFH Corp. other than those held by EFIH, and an overwhelming majority, 99.36%, of the equity interests in EFH Corp.[13]  All of these creditors and equity holders support K&E's retention by the Debtors.

26.    **Fourth**, the Debtors have indicated a willingness to engage separate counsel where necessary and appropriate to investigate certain claims or transactions and evaluate certain sensitive issues.  If, hypothetically, actual conflicts were to emerge, any conflicts could be

---

[11]    *See* First Day Declaration at  ¶ 18 ("The Restructuring Support Agreement is an important first step toward a consensual and timely chapter 11 reorganization that avoids the spectre of in excess of $6 billion of deconsolidation-related tax liabilities.").

[12]    *See, e.g., In re Adelphia Commc'ns Corp.*, 336 B.R. at 673 (discussing the merits of taking a "wait-and-see" approach to debtors' counsel with respect to intercompany claims).

[13]    *See Motion of Energy Future Holdings Corp.* et al., *for Entry of an Order Authorizing the RSA Debtors to Assume the Restructuring Support Agreement and Modifying the Automatic Stay* (D.I. 505 ¶ 3).

alleviated through the use of special counsel.[14]   And, as explained below, the Debtors already

routinely and appropriately utilize special counsel when doing so is appropriate.

### a.      Sidley:  Buyout Claims.

27.      Before the Petition Date, the Debtors hired Sidley Austin LLP ("Sidley") to

review matters related to potential claims against EFH Corp.'s majority equity owners and other

parties related to the transaction that took the Debtors private in 2007 (the "Buyout").  The

Debtors seek to retain Sidley pursuant to section 327(e) of the Bankruptcy Code

contemporaneously herewith.

### b.      Gibson:  The Liability Management Plan and Related Corporate Matters.

28.      Gibson Dunn & Crutcher ("Gibson") advised the Debtors on their liability

management program (which is discussed in detail in the First Day Declaration).  The Debtors

seek to retain Gibson pursuant to section 327(e) of the Bankruptcy Code contemporaneously

herewith.  Gibson will continue to advise the Debtors on similar types of matters, including

capital markets transactions, dispositions, Securities and Exchange Commission matters,

corporate governance, and other general corporate matters unrelated to these chapter 11 cases.

29.      *Fifth*, the disinterested directors of EFH Corp., EFIH, and TCEH LLC approved

K&E's retention and the Restructuring Support Agreement.[15]

---

[14]   *See In re Gilbertson's Restaurants, LLC*, 2004 WL 1724878, at *5 ("If a potential conflict develops into an actual conflict, methods other than disqualification are available to manage the problem, including the appointment of special counsel.").  Given the case here, it is not surprising that the use of special counsel is not uncommon in this Court.  *See, e.g.*, Order Approving Employment of Young Conaway Stargatt & Taylor, LLP as Special Conflicts Counsel, *In re Tri-Valley Corp.*, No. 12-12291 (D.I. 267) (Bankr. D. Del. Aug. 7, 2012); Order Authorizing Retention of Polsinelli Shughart PC as Special Conflicts Counsel, *In re Opus South Corp.*, No. 09-11390 (D.I. 970) (Bankr. D. Del. Apr. 22, 2009); Order Authorizing Retention of Jones Day as Conflicts Counsel, *In re Abitibibowater Inc.*, No. 09-1129 (D.I. 2498) (Bankr. D. Del. Apr. 16, 2009); Order Authorizing Employment of Friedman Kaplan Seiler & Adelman LLP as Special Conflicts Counsel, *In re Mervyn's Holdings, LLC*, No. 08-11586 (D.I. 508) (Bankr. D. Del. July 29, 2008).

[15]   *See In re Energy Future Holdings Corp.* Bd. Res. April 28, 2014, Case No. 14-10979 (Bankr. D. Del. April 29, 2014) (D.I. 1 at p. 2-4); *In re Texas Competitive Electric Holdings Company LLC* Bd. Res. April 28, 2014, Case

30.     For these reasons, and to the best of the Debtors' knowledge and as disclosed herein and in the Sassower Declaration, (a) K&E is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code, as required by section 327(a) of the Bankruptcy Code, and does not hold or represent an interest adverse to the Debtors' estates; and (b) K&E has no connection to the Debtors, their creditors, or other parties in interest, except as may be disclosed in the Sassower Declaration.

31.     K&E will review its files periodically during the pendency of these chapter 11 cases to ensure that no conflicts or other disqualifying circumstances exist or arise.  If any new relevant facts or relationships are discovered or arise, K&E will use reasonable efforts to identify such further developments and will promptly file a supplemental declaration, as required by Bankruptcy Rule 2014(a).

## Supporting Authority

32.     The Debtors seek retention of K&E as their attorneys pursuant to section 327(a) of the Bankruptcy Code, which provides that a debtor, subject to Court approval:

> [M]ay employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the [debtor] in carrying out the [debtor]'s duties under this title.

11 U.S.C. § 327(a).

33.     Further, K&E should not be "disqualified for employment under [section 327] solely because of such person's employment by or representation of a creditor" unless such representation "is an actual conflict of interest."  11 U.S.C. § 327(c).  *See also In re Marvel*

---

No. 14-10978 (Bankr. D. Del. April 29, 2014) (D.I. 1 at p. 2-4); *In re Energy Competitive Future Holdings Company LLC* Bd. Res. April 28, 2014, Case No. 14-11005 (Bankr. D. Del. April 29, 2014) (D.I. 1 at p. 2-4); *In re Energy Future Intermediate Holding Company LLC* Bd. Res. April 28, 2014, Case No. 14-11008 (Bankr. D. Del. April 29, 2014) (D.I. 1 at  p. 2-4).

*Entm't Grp., Inc.*, 140 F.3d 463, 476 (3d Cir. 1998) (finding that representation is appropriate where only potential conflicts exist and no actual conflict has arisen).

34.     Objections to retention or motions to disqualify counsel "are often interposed for [the] tactical purpose[]" of separating a party from the attorneys best able to advocate on its behalf, and are thus properly viewed with skepticism.  *Sumitomo Corp. v. J. P. Morgan & Co., Inc.*, 2000 WL 145747, at *3 (S.D.N.Y. Feb. 8, 2000); *see also Bd. of Educ. of N.Y. v. Nyquist*, 590 F.2d 1241, 1246 (2d Cir. 1979) ("Motions to disqualify counsel are generally viewed with disfavor because disqualification has an immediate adverse effect on the client by separating him from counsel of his choice, and because disqualification motions are often interposed for tactical reasons.").

35.     The law, however, is clear that a debtor's choice of counsel should be disturbed only in the "***rarest***" cases, and not based on allegations of potential conflicts.  *See In re Persaud*, 496 B.R. 667, 670-71 (E.D.N.Y. 2013) (emphasis added); *see also In re Enron Corp.*, 2002 WL 32034346, at *5 (Bankr. S.D.N.Y. May 23, 2002) ("The debtor's right to choose qualified counsel should be disturbed only in the rarest cases."); *Vergos v. Timber Creek, Inc.*, 200 B.R. 624, 628 (W.D. Tenn. 1996) ("The debtor's right to choose qualified counsel should be disturbed only in the rarest cases.").  Courts give "great deference" to the Debtor's choice of counsel.  *In re Enron Corp.*, 2002 WL 32034346, at *5.  The Court is also permitted to take a "wait-and-see" approach to determine whether conflicts ripen rather than prophylactically disqualifying a party's counsel of choice.  *See, e.g.*, *In re Universal Enters., LLC*, 2010 WL 2403354 at *4 (Bankr. N.D. W. Va. June 9, 2010); *In re Adelphia Commc'ns Corp.*, 336 B.R. at 673; *In re Gilbertson's Restaurants LLC*, 2004 WL 1724878 at *5 (Bankr. N.D. Iowa May 3, 2004); *In re White Glove, Inc.*, 1998 WL 226781, at *4 (Bankr. N.D. Iowa Apr. 9, 1998).

36.    Bankruptcy Rule 2014(a) requires that an application for retention include:

> [S]pecific facts showing the necessity for the employment, the
> name of the [firm] to be employed, the reasons for the selection,
> the professional services to be rendered, any proposed arrangement
> for compensation, and, to the best of the applicant's knowledge, all
> of the [firm's] connections with the debtor, creditors, any other
> party in interest, their respective attorneys and accountants, the
> United States trustee, or any person employed in the office of the
> United States trustee.

Fed. R. Bankr. P. 2014.

37.    The Debtors submit that for all the reasons stated above and in the Sassower

Declaration, the retention and employment of K&E as counsel to the Debtors is warranted.

Further, as stated in the Sassower Declaration, K&E is a "disinterested person" within the

meaning of section 101(14) of the Bankruptcy Code, as required by section 327(a) of the

Bankruptcy Code, and does not hold or represent an interest adverse to the Debtors' estates and

has no connection to the Debtors, their creditors, or other parties in interest, except as may be

disclosed in the Sassower Declaration.

**<u>Notice</u>**

38.    The Debtors shall provide notice of this Motion on the date hereof via U.S. first

class mail to:  (a) the Office of the U.S. Trustee for the District of Delaware; (b) (i) the entities

listed on the Consolidated List of Creditors Holding the 50 Largest Unsecured Claims filed

pursuant to Bankruptcy Rule 1007(d); and (ii) proposed counsel to the Creditors' Committee;

(c) Wilmington Trust, N.A., in its capacity as administrative agent under the TCEH first lien

credit agreement and collateral agent under the TCEH intercreditor agreements and counsel

thereto; (d) Bank of New York Mellon Trust Company, N.A., in its capacity as indenture trustee

under:  (i) the TCEH unsecured pollution control revenue bonds; and (ii) the EFCH 2037 Notes

due 2037, and counsel thereto; (e) American Stock Transfer & Trust Company, LLC, in its

capacity as indenture trustee under: (i) the 9.75% EFH senior unsecured notes due 2019; (ii) the 10.0% EFH senior unsecured notes due 2020; (iii) the 10.875% EFH LBO senior unsecured notes due 2017; (iv) the 11.25%/12.0% EFH LBO toggle notes due 2017; (v) the 5.55% EFH legacy notes (series P) due 2014; (vi) the 6.50% EFH legacy notes (series Q) due 2024; and (vii) the 6.55% EFH legacy notes (series R) due 2034, and counsel thereto; (f) Computershare Trust Company, N.A. and Computershare Trust Company of Canada, in their capacities as indenture trustee under: (i) the 11.0% EFIH senior secured second lien notes due 2021; and (ii) the 11.75% EFIH senior secured second lien notes due 2022, and counsel thereto; (g) UMB Bank, N.A. in its capacity as indenture trustee under: (i) the 9.75% EFIH senior unsecured notes due 2019; and (ii) the 11.25%/12.25% EFIH senior toggle notes due 2018, and counsel thereto; (h) BOKF, NA, dba Bank of Arizona, in its capacity as indenture trustee under 11.50% TCEH senior secured notes due 2020, and counsel thereto; (i) CSC Trust Company of Delaware in its capacity as indenture trustee under: (i) the 6.875% EFIH senior secured notes due 2017; and (ii) the 10.0% EFIH senior secured notes due 2020, and counsel thereto; (j) Law Debenture Trust Company of New York in its capacity as indenture trustee under: (i) the 10.25% TCEH senior unsecured notes due 2015; and (ii) the 10.50%/11.25% TCEH senior toggle notes due 2016, and counsel thereto; (k) Wilmington Savings Fund Society, FSB in its capacity as indenture trustee under the 15.0% TCEH senior secured second lien notes due 2021, and counsel thereto; (l) counsel to certain holders of claims against the Debtors regarding each of the foregoing described in clauses (c) through (k); (m) the agent for the TCEH debtor-in-possession financing facility and counsel thereto; (n) the agent for the EFIH debtor-in-possession financing facility and counsel thereto; (o) counsel to certain holders of equity in Texas Energy Future Holdings Limited Partnership; (p) counsel to the Ad Hoc Committee of TCEH Unsecured Noteholders;

(q) counsel to the Ad Hoc Committee of TCEH Second Lien Noteholders; (r) Oncor Electric Delivery Holdings Company LLC and counsel thereto; (s) Oncor Electric Delivery Company LLC and counsel thereto; (t) the Securities and Exchange Commission; (u) the Internal Revenue Service; (v) the Office of the United States Attorney for the District of Delaware; (w) the Office of the Texas Attorney General on behalf of the Public Utility Commission of Texas; (x) counsel to the Electric Reliability Council of Texas; and (y) those parties that have requested notice pursuant to Bankruptcy Rule 2002.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

## No Prior Request

39.    No prior request for the relief sought in this Application has been made to this or any other court.

WHEREFORE, the Debtors respectfully request that the Court enter the Order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested herein and granting such other relief as is just and proper.

Dated: May 29, 2014                              */s/  Stacey H. Doré*
Wilmington, Delaware                             Stacey H. Doré
                                                 Executive Vice President, General Counsel,
                                                 and Co-Chief Restructuring Officer of EFH
                                                 Corp.; EFIH; and TCEH LLC