**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| In re: | ) ) | Chapter 11 |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) ) ) | Case No. 14-10979 (CSS) |
| Debtors. | ) ) ) | (Jointly Administered) Hearing Date: June 30, 2014 at 9:30 a.m. Objection Deadline: June 13, 2014 at 4:00 p.m. |

**APPLICATION OF ENERGY FUTURE
HOLDINGS CORP., *ET AL.*, FOR ENTRY OF AN
ORDER AUTHORIZING THE DEBTORS TO RETAIN AND EMPLOY
ALVAREZ & MARSAL NORTH AMERICA, LLC AS RESTRUCTURING
ADVISOR EFFECTIVE *NUNC PRO TUNC* TO THE PETITION DATE**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") file this application (this "Application") for the entry of an order (the "Order"), substantially in the form attached hereto as **Exhibit A**, authorizing the Debtors to employ and retain Alvarez & Marsal North America, LLC, together with employees of its affiliates (all of which are wholly-owned by Alvarez & Marsal North America, LLC's parent company and employees) and its subsidiaries, agents and independent contractors (collectively, "A&M") as restructuring advisor effective *nunc pro tunc* to the Petition Date (as defined herein). In support of this Application, the Debtors submit the *Declaration of Jeffery J. Stegenga in Support of the Application of Energy Future Holdings Corp.,* et al.*, for Entry of an Order Authorizing the Debtors to Retain and Employ Alvarez & Marsal North America, LLC as Restructuring Advisor Effective* Nunc Pro

---

[1] The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, for which joint administration has been granted on an interim basis, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

Tunc *to the Petition Date* (the "Stegenga Declaration"), attached hereto as **Exhibit B**.  In further support of this Application, the Debtors respectfully state as follows.

### Jurisdiction and Venue

1. The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Debtors consent pursuant to rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Bankruptcy Rules") to the entry of a final order by the Court in connection with this Application to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory bases for the relief requested herein are sections 327(a), 328, and 330 of title 11 of the United States Code (the "Bankruptcy Code"), rules 2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Local Bankruptcy Rules 2014-1 and 2016-2.

### Relief Requested

4. By this Application, the Debtors seek entry of the Order, effective *nunc pro tunc* to the Petition Date, authorizing the employment and retention of A&M pursuant to sections 327(a), 328, and 330 of the Bankruptcy Code, Bankruptcy Rules 2014(a) and 2016, and Local Bankruptcy Rules 2014-1 and 2016-2 as the Debtors' restructuring advisor in accordance with the terms and conditions set forth in that certain engagement letter, effective as of January 30,

2013, as amended by that certain amendment dated as of December 31, 2013, between Energy Future Holdings Corp. ("EFH Corp."), Energy Future Intermediate Holding Company LLC ("EFIH"), Energy Future Competitive Holdings Company LLC ("EFCH"), and Texas Competitive Electric Holdings Company LLC ("TCEH LLC," and together with EFH Corp., EFIH, and EFCH, the "Company Parties") and A&M, copies of which are attached hereto as **Exhibit C** and incorporated herein by reference (the "Engagement Letter").

## Background

5.     On April 29, 2014 (the "Petition Date"), each of the Debtors filed a voluntary petition with the Court under chapter 11 of the Bankruptcy Code. The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. The Court has entered an interim order for joint administration of these chapter 11 cases. The Court has not appointed a trustee. The Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") formed an official committee of unsecured creditors in these chapter 11 cases on May 13, 2014 [D.I. 420]. Further information regarding the Debtors' business operations and capital structure is set forth in the First Day Declaration.

## A&M's Qualifications

6.     In consideration of the size and complexity of their businesses, as well as the exigencies of the circumstances, the Debtors have determined that the services of experienced restructuring advisors will substantially enhance their attempts to maximize the value of their estates for the benefit of their stakeholders. A&M is well qualified to provide these services in light of their extensive knowledge and expertise with respect to chapter 11 cases.

7.     A&M is a preeminent restructuring consulting firm with extensive experience and an excellent reputation for providing high quality, specialized management and restructuring

advisory services to debtors and distressed companies. Specifically, A&M's core services include turnaround advisory services, interim and crisis management, revenue enhancement, claims management, and creditor and risk management advisory services. A&M provides a wide range of debtor advisory services targeted at stabilizing and improving a company's financial position, including developing or validating forecasts, business plans and related assessments of strategic position; monitoring and managing cash, cash flow and supplier relationships, assessing and recommending cost reduction strategies, and designing and negotiating financial restructuring packages. Additionally, A&M provides advice on specific aspects of the turnaround process and helps manage complex constituency relations and communications. A&M is known for its ability to work alongside company management and key constituents during chapter 11 restructurings to develop a feasible and executable plan of reorganization.

8. Since its inception in 1983, A&M has been a global provider of turnaround advisory services to companies in crisis or those in need of performance improvement in specific financial and operational areas, including: *In re Conexant Sys., Inc.*, No. 13-10367 (Bankr. D. Del. Apr. 19, 2013); *In re Hawker Beechcraft, Inc.*, No. 12-11873 (Bankr. S.D.N.Y. May 3, 2012); *In re Appleseed's Intermediate Holdings LLC*, No. 11-10160 (Bankr. D. Del. Jan. 19, 2011); *In re Cooper-Standard Holdings Inc.*, No. 09-12743 (Bankr. D. Del Aug. 3, 2009); *In re Visteon Corp.*, No. 09-11786 (Bankr. D. Del. May 27, 2009); *In re Masonite Corp.*, No. 09-10844 (Bankr. D. Del. Apr. 13, 2009); *In re Leiner Health Prods. Inc.*, No. 08-10446 (Bankr. D. Del. Apr. 8, 2008); *In re DJK Residential LLC*, No. 08-10375 (Bankr. S.D.N.Y. Feb. 26, 2008); *In re Dunmore Homes, Inc.*, No. 08-20569 (Bankr. E.D. Ca. Dec. 20, 2007); *In re Movie Gallery, Inc.*, No. 07-33849 (Bankr. E.D. Va. Oct. 15, 2007); *In re Interstate Bakeries Corp.*, No. 04-45814 (Bankr. W.D. Mo. Oct. 25, 2004); *In re Crescent Jewelers Corp.*,

4

No. 04-44416 (Bankr. N.D. Cal. Sept. 15, 2004); *In re PG&E Natl'l Energy Group, Inc.*, No. 03-30459 (Bankr. D. Md. Aug. 20, 2003); *In re Spiegel, Inc.*, No. 03-11540 (Bankr. S.D.N.Y. Apr. 10, 2003); *In re Network Plus Corp.*, No. 02-10341 (Bankr. D. Del. July 1, 2002); *In re VecTour, Inc.*, No. 01-10903 (Bankr. D. Del. Feb. 11, 2002); *In re The Warnaco Grp., Inc.*, No. 01-41643 (Bankr. S.D.N.Y. Dec. 13, 2001). [2]

9.  In addition, since January 30, 2013, A&M has provided many services, to the Debtors in connection with their restructuring efforts. In providing such prepetition professional services to the Debtors, A&M has become familiar with the Debtors and their business, including the Debtors' financial affairs, debt structure, operations, and related matters. Having worked with the Debtors' management and their other advisors, A&M has developed relevant experience and expertise regarding the Debtors that will assist it in providing effective and efficient services in these chapter 11 cases. Accordingly, A&M is both well-qualified and uniquely able to represent the Debtors in these chapter 11 cases in an efficient and timely manner.

### Services to be Provided

10.  Subject to further order of the Court, A&M may provide the services described in the Engagement Letter, including the following (the "Services"):[3]

> (a) assisting the Debtors in the preparation of financial related disclosures required by the Court, including the Schedules of Assets and Liabilities, Statement of Financial Affairs, and Monthly Operating Reports;

---

[2]  Because of the voluminous nature of the orders cited herein, they are not attached to the Application. Copies of these orders are available on request of the Debtors' counsel.

[3]  The summary of the Engagement Letter in this Application is qualified in its entirety by reference to the provisions of the Engagement Letter. To the extent there is any discrepancy between the summary contained in this Application and the terms set forth in the Engagement Letter, the terms of the Engagement Letter shall control. Capitalized terms used and not otherwise defined herein shall have the meanings ascribed to them in the Engagement Letter.

5

(b) assisting with the refinement and management of a 13-week cash flow forecast;

(c) assisting in financing issues including assistance in preparation of reports and liaison with creditors, including assisting in the management and analysis required for the Debtors' debtor-in-possession financing facility;

(d) assisting in the identification and performance of cost/benefit analyses related to supply agreements and other executory contracts and the assumption/rejection of each;

(e) assisting in the discussions with and providing information to potential investors, secured lenders, official committees and, the Office of the United States Trustee for the District of Delaware as deemed necessary and appropriate by the Debtors;

(f) assisting the Debtors and their other advisors in developing restructuring plans or strategic alternatives for maximizing the enterprise value of their various business lines;

(g) serving as the principal contact with the Debtors' key constituents/creditors with respect to financial and operational matters;

(h) reporting to the Debtors Board of Directors as desired or directed by the Responsible Officers; and

(i) other activities as are approved by the Debtors, the Responsible Officers, or the Board and agreed to by A&M.

11.     The Services are necessary to enable the Debtors to maximize the value of their estates. A&M understands the Debtors have chosen Evercore Group L.L.C. ("Evercore") to act as its investment banker and financial advisor and Filsinger Energy Partners ("FEP") to act as its energy consultant. A&M has and will continue to work closely with Evercore and FEP to prevent any duplication of efforts in the course of advising the Debtors.

**Professional Compensation**

12.     A&M's decision to advise and assist the Debtors in connection with these chapter 11 cases is subject to its ability to be retained in accordance with the Engagement Letter. Specifically, the Engagement Letter provides for the following compensation to A&M.

(a) **_Retainer_**.  A retainer in the amount of $500,000, which the Debtors paid upon execution of the Engagement Letter and to be credited against any amounts due at the termination of the engagement and returned upon the satisfaction of all obligations enumerated in the Engagement Letter.

(b) **_Hourly rates_**.  Fees based on the following hourly rates:[4]

| | |
|---|---|
| Managing Directors | $675-925 |
| Directors | $475-675 |
| Analysts/Associates | $275-475 |

13. In addition to the fees described above, the Debtors agree to reimburse A&M for its reasonable and documented out-of-pocket expenses incurred in connection with this engagement, such as travel, lodging, duplicating, messenger and telephone charges.  In addition, A&M shall be reimbursed for the reasonable fees and expenses of its third-party counsel incurred in connection with the approval and defense of this Application.  All fees and expenses due to A&M will be billed in accordance with any interim compensation orders entered by this Court, and the relevant sections of the Bankruptcy Code, Bankruptcy Rules and Local Bankruptcy Rules of this Court.

14. A&M intends to apply for compensation for professional services rendered and reimbursement of expenses incurred in connection with these chapter 11 cases, subject to the Court's approval and in compliance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, the guidelines (the "<u>Trustee Guidelines</u>") established by the U.S. Trustee and any other applicable procedures and orders of the Court, on an hourly basis.  To that end, contemporaneously herewith, the Debtors have filed the _Motion of Energy Future Holdings Corp.,_ et al._, for Entry of an Order Establishing Procedures for Interim_

---

[4] Such rates shall be subject to adjustment annually at such time as A&M adjusts its rates generally.

*Compensation and Reimbursement of Expenses of Professionals*, pursuant to which A&M intends to submit requests for compensation.

15. The Debtors believe the Engagement Letter and the hourly rates contemplated therein are consistent with and typical of compensation arrangements entered into by A&M and other comparable firms in connection with rendering similar services under similar circumstances. The Debtors believe, as does A&M, that the terms and conditions in the Engagement Letter are in fact reasonable, consistent with the market for providers of similar services, and designed to compensate A&M fairly for its work and to cover fixed and routine overhead expenses.

16. As of the Petition Date, the Debtors do not owe A&M any fees for services performed or expenses incurred under the Engagement Letter. Further, during the 90-day period before the Petition Date, A&M received approximately $4,678,000 for professional services performed and approximately $168,000 for expenses incurred.

**Indemnification Provisions**

17. As part of the overall compensation payable to A&M under the terms of the Engagement Letter, the Debtors have agreed to certain indemnification obligations as specifically enumerated in an Indemnification and Limitation of Liability Agreement attached to the Engagement Letter (the "Indemnification Agreement"), as modified by the Amendment. The Indemnification Agreement provides that the Debtors will indemnify and hold harmless A&M, its affiliates and their respective shareholders, members, managers, employees, agents, and representatives under certain circumstances specified in the Indemnification Agreement. Pursuant to the Amendment, each of the Company Parties are jointly and severally liable to A&M and its affiliates for all of their representations, warranties, covenants, liabilities, and obligations set forth in the Indemnification Agreement.

18. The Debtors and A&M believe that the indemnification provisions contained in the Engagement Letter are customary and reasonable for A&M and comparable firms providing restructuring advisory services. That said, pursuant to the Order, the Debtors seek to qualify and limit the indemnification provisions as follows:

> (a) prohibiting A&M from receiving indemnification, contribution or reimbursement pursuant to the Engagement Letter for services other than those described in the Engagement Letter, this Application, or the Order, unless such services and indemnification are approved by the Court;
>
> (b) eliminating the Debtors' obligation to indemnify A&M, or provide contribution or reimbursement to A&M for any claim or expense that is either: (i) judicially determined (the determination having become final) to have arisen from A&M's gross negligence or willful misconduct; (ii) for a contractual dispute with the Debtors in which the Debtors allege the breach of A&M's contractual obligations unless the Court determines that indemnification, contribution or reimbursement would be permissible pursuant to *In re United Artists Theatre Co.*, 315 F.3d 217 (3d Cir. 2003); or (iii) settled prior to a judicial determination as to the exclusions set forth in clauses (i) and (ii) above, but determined by the Court, after notice and a hearing to be a claim or expense for which A&M should not receive indemnity, contribution or reimbursement under the terms of the Engagement Letter (as modified by the Order); and
>
> (c) requiring A&M to file an application with the Court if it believes it is entitled to the payment of any amounts by the Debtors on account of the Debtors' indemnification, contribution, and/or reimbursement obligations under the Engagement Letter, including, without limitation, the advancement of defense costs, (as modified by the Order) before the earlier of (i) the entry of an order confirming a chapter 11 plan in these cases (that order having become a final order no longer subject to appeal), and (ii) the entry of an order closing these chapter 11 cases and prohibiting the Debtors from paying any such amounts to A&M before the entry of an order by the Court approving such payment.

19. These indemnification provisions, as qualified and limited by the Order, are customary in this district and others. *See*, *e.g.*, *In re Appleseed's Intermediate Holdings LLC*, No. 11-10160 (KG) (Bankr. D. Del. Feb. 18, 2011) (approving similar modified indemnification provisions for the retention and employment of Alvarez & Marsal North America, LLC); *In re Local Insight Media Holdings, Inc.*, No. 10-13677 (KG) (Bankr. D. Del. Dec. 17, 2010) (same);

9

*In re Atrium Corp.*, No. 10-10150 (BLS) (Bankr. D. Del. Feb. 24, 2010) (approving similar modified indemnification provisions for the retention and employment of Deloitte Financial Advisory Services LLP); *In re Majestic Star Casino, LLC*, No. 09-14136 (KG) (Bankr. D. Del. Dec. 17, 2009) (approving similar modified indemnification provisions for the retention and employment of Moelis & Company LLC); *In re Muzak Holdings LLC*, No. 09-10422 (KJC) (Bankr. D. Del. Apr. 6, 2009) (approving similar modified indemnification provisions for the retention and employment of Moelis & Company LLC).

20. Moreover, the terms and conditions of the indemnification provisions were negotiated by the Debtors and A&M at arm's length and in good faith. The provisions contained in the Engagement Letter, viewed in conjunction with the other terms of A&M's proposed retention, are reasonable and in the best interest of the Debtors, their estates, and creditors in light of the fact that the Debtors require A&M's services to successfully reorganize. Accordingly, as part of this Application, the Debtors request that the Court approve the indemnification provisions as set forth in the Engagement Letter and as modified pursuant to the Order.

**A&M's Disinterestedness**

21. In connection with the proposed retention by the Debtors in these chapter 11 cases, A&M received a list of parties-in-interest from the Debtors (the "Parties-In-Interest") attached hereto as **Schedule 1**.

22. A&M has reviewed the list of Parties-In-Interest. To the best of A&M's knowledge, as of the date hereof, and except to the extent disclosed herein and in the Stegenga Declaration, A&M: (a) is a "disinterested person" within the meaning of section 101(14) of the

Bankruptcy Code; (b) does not hold or represent an interest adverse to the Debtors' estates; and (c) has no material connection to the Debtors, their creditors, or their related parties.

23. Given the large number of Parties-In-Interest in these chapter 11 cases, despite the efforts to identify and disclose A&M's relationships with Parties-In-Interest in these chapter 11 cases, A&M is unable to state with certainty that every client relationship or other connection has been disclosed in the Stegenga Declaration. To the extent that A&M discovers any new relevant facts or relationships bearing on the matters described herein during the period of A&M's retention, A&M will use reasonable efforts to promptly file a supplemental declaration as required by Bankruptcy Rule 2014(a).

24. The Debtors do not owe A&M any amount for services performed or expenses incurred prior to the Petition Date and thus, A&M is not a prepetition creditor of the Debtors.

25. The Debtors are informed that A&M will not share any compensation to be paid by the Debtors in connection with services to be performed after the Petition Date with any other person, other than other principals and employees of A&M, to the extent required by section 504 of the Bankruptcy Code.

**Dispute Resolution Procedures**

26. The Debtors and A&M have agreed, subject to the Court's approval of this Application, that notwithstanding the Engagement Letter:

   (a) any controversy or claim with respect to, in connection with, arising out of, or in any way related to this Application or the services provided by the A&M Personnel to the Debtors as outlined in this Application, including any matter involving a successor in interest or agent of any of the Debtors or of A&M, shall be brought in this Court or the United States District Court for the District of Delaware (the "District Court") (if the reference is withdrawn);

   (b) A&M, the Debtors, and any and all successors and assigns thereof, consent to the jurisdiction and venue of such court as the sole and exclusive forum (unless such courts do not have or retain jurisdiction over such claims or controversies) for the resolution of such claims, causes of actions, or lawsuits;

(c) A&M and the Debtors, and any and all successors and assigns thereof, waive trial by jury, such waiver being informed and freely made;

(d) if this Court, or the District Court (if the reference is withdrawn), does not have or retain jurisdiction over the foregoing claims and controversies, A&M and the Debtors, and any and all successors and assigns thereof, will submit first to non-binding mediation; and, if mediation is not successful, then to binding arbitration, in accordance with the dispute resolution procedures (as set forth in **Exhibit 1** attached attached to the Order); and

(e) judgment on any arbitration award may be entered in any court having proper jurisdiction.

27. By this Application, the Debtors seek approval of this agreement by the Court. Further, A&M and the Debtors have agreed not to raise or assert any defense based upon jurisdiction, venue, abstention or otherwise to the jurisdiction and venue of this Court or the District Court (if the reference is withdrawn) to hear or determine any controversy or claims with respect to, in connection with, arising out of, or in any way related to this Application or the services provided hereunder. Similar dispute resolution procedures have been approved in this district. *See In re Visteon Corporation*, No. 09-11786 (CSS) (Bankr. D. Del. June 19, 2009) (approving similar dispute resolution procedures for the retention and employment of A&M).

## Basis for Relief

28. Section 327(a) of the Bankruptcy Code provides that a debtor subject to court approval:

> [M]ay employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the [debtor] in carrying out the [debtor]'s duties under this title.

11 U.S.C § 327(a).

Moreover, Bankruptcy Rule 2014 requires that an application for retention include:

> [S]pecific facts showing the necessity for the employment, the name of the [firm] to be employed, the reasons for the selection,

> the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the [firm's] connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States Trustee, or any person employed in the office of the United States Trustee.

Fed. R. Bankr. P. 2014.

29. The terms and conditions of the Engagement Letter, including the indemnification provisions contained therein, were negotiated by the Debtors and A&M at arm's length and in good faith. The Debtors and A&M respectfully submit that the terms of A&M's retention are customary and reasonable for restructuring advisor engagements, both out-of-court and in comparable chapter 11 cases, and in the best interests of the Debtors' estates, creditors, and all Parties-In-Interest.

## Notice

30. The Debtors shall provide notice of this Application on the date hereof via U.S. first class mail to: (a) the Office of the U.S. Trustee for the District of Delaware; (b) (i) the entities listed on the Consolidated List of Creditors Holding the 50 Largest Unsecured Claims filed pursuant to Bankruptcy Rule 1007(d); and (ii) proposed counsel to the Creditors' Committee; (c) Wilmington Trust, N.A., in its capacity as administrative agent under the TCEH first lien credit agreement and collateral agent under the TCEH intercreditor agreements and counsel thereto; (d) Bank of New York Mellon Trust Company, N.A., in its capacity as indenture trustee under: (i) the TCEH unsecured pollution control revenue bonds; and (ii) the EFCH 2037 Notes due 2037, and counsel thereto; (e) American Stock Transfer & Trust Company, LLC, in its capacity as indenture trustee under: (i) the 9.75% EFH senior unsecured notes due 2019; (ii) the 10.0% EFH senior unsecured notes due 2020; (iii) the 10.875% EFH LBO senior unsecured notes due 2017; (iv) the 11.25%/12.0% EFH LBO toggle notes due 2017; (v) the 5.55% EFH

legacy notes (series P) due 2014; (vi) the 6.50% EFH legacy notes (series Q) due 2024; and (vii) the 6.55% EFH legacy notes (series R) due 2034, and counsel thereto; (f) Computershare Trust Company, N.A. and Computershare Trust Company of Canada, in their capacities as indenture trustee under: (i) the 11.0% EFIH senior secured second lien notes due 2021; and (ii) the 11.75% EFIH senior secured second lien notes due 2022, and counsel thereto; (g) UMB Bank, N.A. in its capacity as indenture trustee under: (i) the 9.75% EFIH senior unsecured notes due 2019; and (ii) the 11.25%/12.25% EFIH senior toggle notes due 2018, and counsel thereto; (h) BOKF, NA, dba Bank of Arizona, in its capacity as indenture trustee under 11.50% TCEH senior secured notes due 2020, and counsel thereto; (i) CSC Trust Company of Delaware in its capacity as indenture trustee under: (i) the 6.875% EFIH senior secured notes due 2017; and (ii) the 10.0% EFIH senior secured notes due 2020, and counsel thereto; (j) Law Debenture Trust Company of New York in its capacity as indenture trustee under: (i) the 10.25% TCEH senior unsecured notes due 2015; and (ii) the 10.50%/11.25% TCEH senior toggle notes due 2016, and counsel thereto; (k) Wilmington Savings Fund Society, FSB in its capacity as indenture trustee under the 15.0% TCEH senior secured second lien notes due 2021, and counsel thereto; (l) counsel to certain holders of claims against the Debtors regarding each of the foregoing described in clauses (c) through (k); (m) the agent for the TCEH debtor-in-possession financing facility and counsel thereto; (n) the agent for the EFIH debtor-in-possession financing facility and counsel thereto; (o) counsel to certain holders of equity in Texas Energy Future Holdings Limited Partnership; (p) counsel to the Ad Hoc Committee of TCEH Unsecured Noteholders; (q) counsel to the Ad Hoc Committee of TCEH Second Lien Noteholders; (r) Oncor Electric Delivery Holdings Company LLC and counsel thereto; (s) Oncor Electric Delivery Company LLC and counsel thereto; (t) the Securities and Exchange Commission; (u) the Internal Revenue

Service; (v) the Office of the United States Attorney for the District of Delaware; (w) the Office of the Texas Attorney General on behalf of the Public Utility Commission of Texas; (x) counsel to the Electric Reliability Council of Texas; (y) those parties that have requested notice pursuant to Bankruptcy Rule 2002; and (z) A&M.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

## No Prior Request

31.    No prior request for the relief sought in this Application has been made to this or any other court.

[*Remainder of page intentionally left blank.*]

WHEREFORE, The Debtors respectfully request that the Court enter the Order, substantially in the form attached hereto as **<u>Exhibit A</u>**, granting the relief requested herein and granting such other and further relief as is appropriate under the circumstances.

Wilmington, Delaware
Dated: May 29, 2014

                                            */s/ Stacey H. Doré*
                                            Stacey H. Doré
                                            Executive Vice President, General Counsel,
                                            and Co-Chief Restructuring Officer of EFH
                                            Corp., EFIH, and TCEH LLC