# EXHIBIT C

**Engagement Letter**




# EPIQ

## STANDARD SERVICES AGREEMENT

This Standard Services Agreement is being entered into by and between Epiq Bankruptcy Solutions, LLC ("Epiq") and Energy Future Competitive Holdings Company, Texas Competitive Electric Holdings Company LLC and related entities (collectively, the "Client"), as of March 20, 2013.

In consideration of the premises herein contained and of other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

## General Terms and Conditions

**1. Services.**

In accordance with the charges, terms and conditions contained in this agreement and in the schedule(s) attached hereto (collectively, the "Agreement"), Epiq agrees to furnish Client with the services set forth on Exhibit A hereto (the "Services") in connection with a restructuring. Services will be provided on an as needed basis and upon request or agreement of the Client. Charges for the Services will be based on the pricing schedule set forth on Exhibit B hereto (the "Pricing Schedule"). The Pricing Schedule sets forth individual unit pricing for each of the Services provided by Epiq and represents a bona fide proposal for that Service. The Client may request separate Services or all of the Services reflected in the Pricing Schedule.

**2. Term.**

This Agreement shall become effective on the date of its acceptance by both Epiq and the Client; provided, however, Epiq acknowledges that Bankruptcy Court approval of its engagement may be required in order for Epiq to be engaged in a chapter 11 proceeding. The Agreement shall remain in effect until terminated: (a) by the Client, on ten (10) days' prior written notice to Epiq and, to the extent Epiq has been retained by Bankruptcy Court order, entry of an order of the Bankruptcy Court discharging Epiq; or (b) by Epiq, on ninety (90) days' prior written notice to the Client and, to the extent Epiq has been retained by Bankruptcy Court order, entry of an order of the Bankruptcy Court (in form and substance acceptable to the Client) discharging Epiq.

**3. Charges.**

3.1 For the Services and materials furnished by Epiq under this Agreement, the Client shall pay the fees, charges and costs set forth in the Pricing Schedule. Epiq will bill the Client monthly. All invoices shall be due and payable within ten (10) business days of receipt.

3.2 Epiq reserves the right to make reasonable increases to the unit prices, charges and professional service rates reflected in the Pricing Schedule on an annual basis effective January 2, 2014; provided, however, that Epiq shall provide sixty (60) days' prior written notice to the Client of such proposed increases.




3.3 Client agrees to pay Epiq for any reasonable and documented out of pocket expenses including, without limitation, transportation, long distance communications, printing, photocopying, fax, postage and related items.

3.4 Client shall pay or reimburse all taxes applicable to services performed under this Agreement and, specifically, taxes based on disbursements made on behalf of the Client, notwithstanding how such taxes may be designated, levied or based. This provision is intended to include sales, use and excise taxes, among other taxes, but is not intended to include personal property taxes or taxes based on net income of Epiq.

3.5 Client shall pay to Epiq any actual and reasonable charges (including fees, costs and expenses as set forth in the Pricing Schedule) related to, arising out of or resulting from any Client error or omission. Such charges may include, without limitation, print or copy re-runs, supplies, long distance phone calls, travel expenses and overtime expenses for work chargeable at the rates set forth on the Pricing Schedule.

3.6 In the event of termination pursuant to Section 2 hereof, Client shall be liable for all amounts then accrued and/or due and owing to Epiq under the Agreement.

3.7 Client shall pay Epiq a retainer in the amount of $100,000 (the "Retainer"). The Retainer shall be applied in satisfaction of fees, costs and expenses incurred pursuant to this Agreement. To the extent the Client seeks relief under the Bankruptcy Code, any unapplied portion of the Retainer as of the petition date shall be applied immediately against post-petition date invoices until exhausted.

**4. Confidentiality.**

Client data provided to Epiq during the term of this Agreement in connection with the Services ("Client Data") shall be maintained confidentially by Epiq in the same manner and to the same level as Epiq safeguards data relating to its own business; provided, however, that if Client Data is publicly available, was already in Epiq's possession or known to it, was required to be disclosed by law, was independently developed by Epiq without use or reference to any Client Data, or was rightfully obtained by Epiq from a third party, Epiq shall bear no responsibility for public disclosure of such data.

**5. Title to Property.**

Epiq reserves all property rights in and to all materials, concepts, creations, inventions, works of authorship, improvements, designs, innovations, ideas, discoveries, know-how, techniques, programs, systems and other information, including, without limitation, data processing programs, specifications, applications, processes, routines, sub-routines, procedural manuals and documentation furnished or developed by Epiq for itself or for use by the Client (collectively, the "Property"). Charges paid by Client do not vest in Client any rights to the Property, it being expressly understood that the Property is made available to Client under this Agreement solely for Client's use during and in connection with each use of the Epiq equipment and services. Client



agrees not to copy or permit others (other than its employees, attorneys, and other professional advisors) to copy any of the Property.

**6. Disposition of Data.**

6.1 Client is responsible for the accuracy of the programs and Client Data it provides or gives access to Epiq and for the output resulting from such data. Client shall initiate and maintain backup files that would allow Client to regenerate or duplicate all programs and Client Data which Client provides or gives access to Epiq. Client agrees, represents and warrants to Epiq that, prior to delivery of any Client Data to Epiq, Client warrants that it has full authority to deliver the Client Data to Epiq. Client has obtained binding consents, permits, licenses and approvals from all necessary persons, authorities or individuals, and has complied with all applicable policies, regulations and laws, required by Client, in order to allow Epiq to use all Client Data delivered to it in connection with its Services. Epiq shall not be liable for, and Client accepts full responsibility for, any liability or obligation with respect to Client Data prior to Epiq's receipt, including without limitation, any liability arising during the delivery of Client Data to Epiq.

6.2 Any Client Data, programs, storage media or other materials furnished by the Client to Epiq in connection with this Agreement (collectively, the "Client Materials") may be retained by Epiq until the services provided pursuant to this Agreement are paid for, or until this Agreement is terminated with the services provided herein having been paid for in full. Client shall remain liable for all out of pocket charges incurred by Epiq under this Agreement as a result of any Client Materials maintained by Epiq. Epiq shall dispose of Client Materials in the manner requested by Client (except to the extent disposal may be prohibited by law). Client agrees to pay Epiq for reasonable, out of pocket expenses incurred as a result of the disposition of the Client Materials. Epiq reserves the right to dispose of any Client Materials if this Agreement is terminated without Client's direction as to the return or disposal of Client Material or Client has not paid all charges due to Epiq for a period of at least ninety (90) days; provided, however, Epiq shall provide Client with thirty (30) days' prior written notice if its intent to dispose of such data and media.

**7. Indemnification.**

The Client shall indemnify, defend and hold Epiq, its affiliates, parent, and each such entity's officers, members, directors, agents, representatives, managers, consultants and employees (each an "Indemnified Person") harmless from and against any and all losses, claims, damages, liabilities, costs (including, without limitation, costs of preparation and attorneys' fees) and expenses as incurred (collectively, "Losses"), to which any Indemnified Person may become subject or involved in any capacity arising out of or relating to this Agreement or Epiq's rendering of services pursuant hereto (other than with respect to enforcement of this Agreement), regardless of whether any of such Indemnified Persons is a party thereto, other than Losses to the extent resulting from Epiq's gross negligence or willful misconduct. Without limiting the generality of the foregoing, "Losses" includes any liabilities resulting from claims by third persons against any Indemnified Person. Client and Epiq shall notify the other party in writing promptly of the commencement, institution, threat, or assertion of any claim, action or proceeding of which the




Client is aware with respect to the services provided by Epiq under this Agreement. Such indemnity shall remain in full force and effect regardless of any investigation made by or on behalf of the Client, and shall survive the termination of this Agreement until the expiration of all applicable statutes of limitation with respect to Epiq's liabilities. If Client so elects, Client will assume the defense of such claim, action or proceedings, including the employment of counsel and the payment of the fees and disbursements of such counsel.

**8. Representations / Warranties.**

Epiq makes no representations or warranties, express or implied, including, without limitation, any implied or express warranty of merchantability, suitability, fitness or adequacy for a particular purpose or use, quality, productiveness or capacity.

**9. Confidential On-Line Workspace.**

Upon written request of the Client, Epiq shall be authorized to: (a) establish a confidential on-line workspace with an outside vendor in connection with the provision of its services to the Client pursuant to this Agreement; and (b) with the consent of the Client and/or its designees, publish documents and other information to such confidential workspace. By publishing documents and other information to this confidential workspace in accordance with the foregoing, Epiq shall not be considered in violation of any of the provisions of this Agreement, including, but not limited to, Section 4 (Confidentiality).

**10. General.**

10.1 No waiver, alteration, amendment or modification of any of the provisions of this Agreement shall be binding upon either party unless signed in writing by a duly authorized representative of both parties.

10.2 This Agreement may not be assigned by Client without the express written consent of Epiq, which consent shall not be unreasonably withheld. This Agreement may not be assigned by Epiq without the express written consent of Client, which consent shall not be unreasonably withheld. The services provided under this Agreement are for the sole benefit and use of Client, and shall not be made available to any other persons.

10.3 This Agreement shall be governed by the laws of the State of New York, without regard to that state's provisions for choice of law. Client and Epiq hereby agree that any action or proceeding brought with respect to Epiq's engagement hereunder shall be brought and maintained exclusively in the courts of the State of New York located in the City and County of New York or in the United States District Court for the Southern District of New York; provided, however, that if any entity comprising the Client commences a Chapter 11 case, all legal proceedings pertaining to this engagement arising after such case is commenced shall be brought in the Bankruptcy Court handling such case.

10.4 The parties hereto agree that this Agreement is the complete and exclusive statement of the agreement between the parties which supersedes all proposals or prior agreements, oral or



written, and all other communications between the parties relating to the subject matter of this Agreement.

10.5 Client will use its commercially reasonable efforts to cooperate with Epiq at Client's facilities if any portion of the Services requires its physical presence thereon.

10.6 In no event shall Epiq's Services constitute or contain legal advice or opinion, and neither Epiq nor its personnel shall be deemed to practice law hereunder.

10.7 Except for Client's obligation to pay fees, expenses and charges hereunder when due, neither party shall be in default or otherwise liable for any delay in or failure of its performance under this Agreement to the extent such delay or failure arises by reason of any act of God, any governmental requirement, act of terrorism, riots, epidemics, flood, strike, lock-out, industrial or transportational disturbance, fire, lack of materials, war, event of force majeure, or other acts beyond the reasonable control of a performing party.

10.8 This Agreement may be executed in counterparts, each of which shall be deemed to an original, but all of which shall constitute one and the same agreement.

10.9 All clauses and covenants in this Agreement are severable; in the event any or part of them are held invalid or unenforceable by any court, such clauses or covenants shall be valid and enforced to the fullest extent available, and this Agreement will be interpreted as if such invalid or unenforceable clauses or covenants were not contained herein. The parties are independent contractors and, except as expressly stated herein, neither party shall have any rights, power or authority to act or create an obligation on behalf of the other party.

10.10 Notices to be given or submitted by either party to the other, pursuant to this Agreement, shall be sufficiently given or made if given or made in writing and sent by hand delivery, overnight or certified mail, postage prepaid, and addressed as follows:

If to Epiq:

Epiq Bankruptcy Solutions, LLC
757 Third Avenue, Third Floor
New York, New York 10017
Attn: Lorenzo Mendizabal

If to Client:

Texas Competitive Electric Holdings Company LLC
1601 Bryan Street
Dallas, TX 75201
Attn: General Counsel



With a copy to:

Kirkland & Ellis LLP
300 North LaSalle
Chicago, IL 60654
Attn: Chad J. Husnick, Esq.

10.11 Invoices sent to the Client should be delivered to the following address:

Texas Competitive Electric Holdings Company LLC
1601 Bryan Street
Dallas, TX 75201
Attn: Andrew Wright

Email: awright@energyfutureholdings.com

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first above written.

**EPIQ BANKRUPTCY SOLUTIONS, LLC**

______________________________
Name: Lorenzo Mendizabal
Title: Managing Director

**ENERGY FUTURE COMPETITIVE HOLDINGS COMPANY**

By:______________________________
Name: Andrew Wright
Title: Vice President and Deputy General Counsel

**TEXAS COMPETITIVE ELECTRIC HOLDINGS COMPANY LLC**

By:______________________________
Name: Andrew Wright
Title: Vice President and Deputy General Counsel



EXHIBIT A

## SERVICES SCHEDULE

**BALLOTING/TABULATION**

➢ Provide balloting services in connection with the solicitation process for any prepackaged or prearranged chapter 11 plan, including (as needed):

- Consult with the company and its counsel regarding timing issues, voting and tabulation procedures, and documents needed for the vote.
- Review of appropriate sections of the disclosure statement, plan, and ballots for procedural and timing issues.
- Assist in obtaining information regarding members of voting classes, including lists of holders of bonds from DTC, lenders, and other entities (and, if needed, assist the company in requesting these listings).
- Coordinate distribution of solicitation documents.
- Respond to requests for documents from parties in interest, including lenders, brokerage firm and bank back-offices, and institutional holders.
- Respond to telephone inquiries from lenders, bondholders and nominees regarding the disclosure statement and the voting procedures.
- Establish a website for the posting of solicitation documents.
- Receive and examine all ballots and master ballots cast by voting parties. Date-stamp the originals of all such ballots and master ballots upon receipt.
- Tabulate all ballots and master ballots received prior to the voting deadline in accordance with established procedures, and prepare a certification for filing with the court.
- Undertake such other duties as may be requested by the Client.




**PRE- AND POST-FILING PREPARATIONS**

- Assist the Debtors with administrative tasks in the preparation of their bankruptcy, including, as needed, preparation of the creditor matrix, first day filings, Schedules of Assets and Liabilities ("Schedules") and Statements of Financial Affairs ("Statements"), including (as needed):

  - Coordinate with the Client and its advisors regarding the data collection process, requirements, timelines and deliverables.
  - Create and maintain databases for maintenance and formatting of necessary data.
  - Coordinate collection of data from the Client and advisors.
  - Provide data entry and quality assurance assistance as needed.

**CALL CENTER**

- Provide state-of-the-art Call Center facility and services, including (as needed):

  - Create file of frequently asked questions, call scripts, escalation procedures and call log formats.
  - Record automated messaging.
  - Train Call Center staff.
  - Maintain and transmit call log to the Client and advisors.

**CLAIMS MANAGEMENT**

- Create and maintain a website with general case information, key documents, claim search function, and mirror of ECF case docket.

- Maintain copies of all proofs of claim and proofs of interest filed (in hard copy and electronic form).

- Provide a secure on-line tool through which creditors can file proofs of claim and related documentation, eliminating costly manual intake, processing and data entry of paper claims and ensuring maximum efficiency in the claim-filing process.

- Create and maintain electronic databases for creditor/party in interest information provided by the debtor (e.g., creditor matrix and Schedules of Statements of Assets and Liabilities) and creditors/parties in interest (e.g., proof of claim/interests).

- Process all proof of claim/interest submitted.




- Provide access to the public for examination of copies of the proofs of claim or interest without charge during regular business hours.

- Maintain official claims registers, including, among other things, the following information for each proof of claim or proof of interest:

  - Name and address of the claimant and any agent thereof, if the proof of claim or proof of interest was filed by an agent;
  - Date received;
  - Claim number assigned; and
  - Asserted amount and classification of the claim.

- Transmit to the Clerk's office a copy of the claims registers on a monthly basis, unless requested by the Clerk's office on a more or less frequent basis or, in the alternative, make available the claims register on-line.

- Implement necessary security measures to ensure the completeness and integrity of the claims registers.

- Record all transfers of claims pursuant to Bankruptcy Rule 3001(e) and provide notice of such transfers as required by Bankruptcy Rule 3001(e).

- Maintain an up-to-date mailing list for all entities that have filed a proof of claim, proof of interest or notice of appearance, which list shall be available upon request of a party in interest or the Clerk's office.

**NOTICING**

- Prepare and serve required notices in the Chapter 11 cases, including:

  - Notice of the commencement of the Chapter 11 cases and the initial meeting of creditors under section 341(a) of the Bankruptcy Code;

  - Notice of any auction sale hearing;

  - Notice of the claims bar date;

  - Notice of objection to claims;

  - Notice of any hearings on a disclosure statement and confirmation of the prepackaged plan of reorganization; and

  - Other miscellaneous notices to any entities, as the debtor or the Court may deem necessary or appropriate for an orderly administration of the Chapter 11 cases.



- After service of a particular notice - whether by regular mail, overnight or hand delivery, email or facsimile service - file with the Clerk's office an affidavit of service that includes a copy of the notice involved, a list of persons to whom the notice was mailed and the date and manner of mailing.

- Update claim database to reflect undeliverable or changed addresses.

- Coordinate publication of certain notices in periodicals and other media.

- Distribute Claim Acknowledgement Cards to creditor having filed a proof of claim/interest.

**MISCELLANEOUS**

- Provide such other claims processing, noticing and related administrative services as may be requested from time to time by the Debtors.

- Promptly comply with such further conditions and requirements as the Court may at any time prescribe.

- Comply with applicable federal, state, municipal, and local statutes, ordinances, rules, regulations, orders and other requirements.

- Provide temporary employees to the Clerk's Office to process claims, as necessary.




EXHIBIT B

**EPIQ PRICING SCHEDULE**

**PROFESSIONAL RATES**[1]

| Title | Rates |
|---|---|
| Clerical | $32.00 – $48.00 |
| Case Manager | $76.00 – $116.00 |
| IT / Programming | $80.00 – $152.00 |
| Snr. Case Manager / Consultant | $132.00 – $176.00 |
| Senior Consultant | $160.00 - $220.00 |

NOTE: Expert professional services provided by Jane Sullivan, Executive Vice President, and Christina Pullo, Vice President, Director of Solicitation Services, would be billed at $350.00 and $305.00 per hour respectively.

**NOTICING SERVICES**[2]

| | |
|---|---|
| Printing | $0.10 per image (volume discounts apply) |
| Personalization / Labels | $0.05 each |
| Postage / Overnight Delivery | At cost |
| E-Mail Noticing | $50 per 1,000 |
| Fax Noticing | $0.10 per page |
| Claim Acknowledgement Card | $0.10 per card |
| Publication Noticing | Quoted at time of request |
| Processing Undeliverable Mail | $0.25 per piece |

---

1 Epiq does not charge a premium/overtime charge for any of the professional services it performs. Outside vendors utilized by Epiq may include a premium / overtime charge for work performed on a weekend, holiday or after standard business hours. Please note that special rates apply for Jane Sullivan and Christina Pullo, as outlined above.

2 Noticing via overnight delivery after traditional overnight drop-off times (e.g., 9:00 p.m. in NYC) may result in additional print charges.




**DATA MANAGEMENT SERVICES**

| | |
|---|---|
| Database Maintenance | $0.10 per record/month |
| Data Import / Transfer | No per creditor charge |
| Electronic Imaging[3] | $0.12 per image |
| Weblink Hosting Fee | WAIVED |
| Manual Claim Input | No per creditor charge |
| CD- ROM (Mass Document Storage) | Quoted at time of request |
| Document Storage (paper) | $2.00 per box |
| (electronic) | No per creditor/image charge |

**ON-LINE CLAIM FILING SERVICES**

| | |
|---|---|
| On-Line Claim Filing | $600 per 100 claims filed |

**CALL CENTER SERVICES**

| | |
|---|---|
| Standard Call Center Setup | $1,250<br>WAIVED |
| Call Center Operator | $75 per hour |
| Voice Recorded Message | $0.34 per minute<br>WAIVED FIRST THREE MONTHS |
| Support/Maintenance | $100.00 per month<br>WAIVED |

**DISBURSEMENT SERVICES**

| | |
|---|---|
| Check and/or Form 1099 | Quoted at time of request |
| Record to Transfer Agent | Quoted at time of request |

[3] An additional $0.10 is charged per image for optical character recognition imaging.

***Execution Version***
***Confidential***

**AMENDMENT TO ENGAGEMENT LETTER**

**THIS AMENDMENT TO ENGAGEMENT LETTER** is made as of January 7, 2014, by and among Epiq Bankruptcy Solutions, LLC ("Epiq"), on the one hand, and Energy Future Holdings Corp. ("EFH"), Energy Future Intermediate Holding Company LLC ("EFIH"), Energy Future Competitive Holdings Company LLC ("EFCH"), and Texas Competitive Electric Holdings Company LLC ("TCEH") (collectively, the "Company Parties"), on the other hand and amends that certain engagement letter entered into by and between EFCH and TCEH, on the one hand, and Epiq, on the other hand, dated as of March 20, 2013 (the "Engagement Letter"). Capitalized terms used but not otherwise defined herein have the meanings ascribed to such terms in the Engagement Letter.

**WHEREAS**, Epiq and the Company Parties desire to amend the Engagement Letter as set forth in this letter agreement.

**NOW, THEREFORE**, in consideration of the mutual covenants and agreements and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

1. Amendment to the Engagement Letter. Paragraph 1 of the Engagement Letter is hereby amended to include the following addition:

> "Pursuant to the terms herein, Epiq will provide services to Energy Future Holdings Corp. and its direct and indirect subsidiaries, other than Oncor Holdings LLC and its subsidiaries (collectively, "Oncor")."

2. Ratification. Except as specifically provided for in this letter agreement, no changes, amendments, or other modifications have been made on or prior to the date hereof or are being made to the terms of the Engagement Letter or the rights and obligations of the parties thereunder, all of which are hereby ratified and confirmed and remain in full force and effect.

3. Effect of Amendment. This letter agreement shall be effective as of January 7, 2014. Following the effective date, whenever the Engagement Letter is referred to in any agreements, documents, correspondence, and instruments, such reference shall be deemed to be in the Engagement Letter as amended by this letter agreement.

[*Signature pages follow.*]

Please confirm your agreement with the foregoing by signing and returning one copy of this letter to the undersigned, whereupon this letter agreement shall become a binding agreement between you and each of the Company Parties.

Very truly yours,

**ENERGY FUTURE HOLDING CORP.**

By: [signature]
Name: Andrew M. Wright
Title: Vice President and Deputy General Counsel

**ENERGY FUTURE COMPETITIVE HOLDINGS COMPANY LLC**

By: [signature]
Name: Andrew M. Wright
Title: Vice President and Deputy General Counsel

**TEXAS COMPETITIVE ELECTRIC HOLDINGS COMPANY LLC**

By: [signature]
Name: Andrew M. Wright
Title: Vice President and Deputy General Counsel

**ENERGY FUTURE INTERMEDIATE HOLDING COMPANY LLC**

By: [signature]
Name: Andrew M. Wright
Title: Vice President and Deputy General Counsel

Accepted and agreed as of the
date first written above:

**EPIQ BANKRUPTCY SOLUTIONS, LLC**

By: ______________________
Name: Lorenzo Mendizabal
Title: Managing Director