# **EXHIBIT C**

**Doré Declaration**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) ) | Chapter 11 |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) ) ) | Case No. 14-10979(CSS) |
| Debtors. | ) ) ) | (Jointly Adminsitered) |

**DECLARATION OF STACEY H. DORÉ IN SUPPORT OF THE APPLICATION OF ENERGY FUTURE HOLDINGS CORP., *ET AL.*, FOR AN ORDER AUTHORIZING THE DEBTORS TO RETAIN AND EMPLOY MCDERMOTT WILL & EMERY LLP AS SPECIAL COUNSEL FOR CERTAIN ENERGY-RELATED TRANSACTIONAL MATTERS, EFFECTIVE *NUNC PRO TUNC* TO THE PETITION DATE**

I, Stacey H. Doré, being duly sworn, state the following under penalty of perjury:

1. I am the the Executive Vice President and General Counsel of Energy Future Holdings Corp. ("EFH Corp."), located at 1601 Bryan Street, Dallas, TX 75201.

2. I submit this declaration (the "Declaration") in support of the *Application of Energy Future Holdings Corp.,* et al.*, for an Order Authorizing the Debtors to Retain and Employ McDermott Will & Emery LLP as Special Counsel for Certain Energy-Related Transactional Matters, Effective* Nunc Pro Tunc *to the Petition Date* (the "Application").[2] Except as otherwise noted, I have personal knowledge of the matters set forth herein.

---

[1] The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, for which joint administration has been granted on an interim basis, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' proposed claims and noticing agent at http://www.efhcaseinfo.com.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Application.

**The Debtors' Selection of Counsel**

3.  The Debtors recognize that a comprehensive review process is necessary when selecting and managing chapter 11 special counsel to ensure that bankruptcy professionals are subject to the same client-driven market forces, scrutiny, and accountability as professionals in non-bankruptcy engagements.

4.  To that end, the review process utilized by the Debtors to select special counsel for certain energy-related transactional matters assessed potential counsel based on their expertise in the relevant legal issues and in similar proceedings. Due to the potential legal complexities involved with these chapter 11 cases that may arise, the Debtors were particularly concerned with potential counsel's familiarity with the intricacies of the energy sector, as well as the implications of the corresponding statutory and case law, as well as potential counsel's familiarity with the Debtors' businesses. Using this review process, the Debtors considered several firms to serve as potential special counsel, including McDermott, which had, prior to the commencement of these chapter 11 cases provided energy-related transactional services to the Debtors. McDermott's experience with restructuring trading and marketing activities and negotiating and litigating energy-related claims was a key consideration for the Debtors. For example, McDermott's attorneys have handled the negotiation of numerous long and short-term power sales agreements, revised risk management policies, established a revised hedging program, negotiated trading agreements, and addressed a wide variety of commercial transactions and other matters. McDermott's attorneys have also provided counsel with respect to the commercial operations of power generating companies and have advised clients in complex and extensive negotiations involving regulatory agencies as well as in the creation and implementation of energy programs, including transmission, transportation, storage and purchase enabling agreements, and fuel cost hedging instruments.

5. Furthermore, McDermott has provided legal services to the Debtors in connection with their restructuring efforts since September 24, 2013, when McDermott was retained by the Luminant Entities. I believe that, in providing such prepetition professional services to the Luminant Entities, McDermott has become familiar with the Luminant Entities and their business, including the Luminant Entities' financial affairs, debt structure, operations, and related matters. Additionally, having worked with the Debtors' management and their other advisors, McDermott has developed relevant experience and expertise regarding the Debtors that will assist it in providing effective and efficient services in these chapter 11 cases. I believe that McDermott is both well qualified and uniquely able to represent the Debtors in these chapter 11 cases in an efficient and timely manner.

### Rate Structure

6. In my capacity as General Counsel, I, and my legal team, are responsible for supervising outside counsel retained by the Debtors in the ordinary course of business. McDermott has informed the Debtors that its rates for bankruptcy representations are comparable to the rates McDermott charges for non-bankruptcy representations. As discussed below, I, and my legal team, are also responsible for reviewing the invoices regularly submitted by McDermott, and can confirm that the rates McDermott charged the Debtors in the prepetition period are the same as the rates McDermott will charge the Debtors in the postpetition period, subject to periodic increases agreed to pursuant to the Engagement Letter.

### Cost Supervision

7. The Debtors and McDermott expect to develop a prospective budget and staffing plan to comply with the U.S. Trustee's requests for information and additional disclosures and any other orders of the Court for the period from April 29, 2014 to August 31, 2014, recognizing that in the course of a large chapter 11 case like these chapter 11 cases, it is possible that there

may be a number of unforeseen fees and expenses that will need to be addressed by the Debtors and McDermott. The Debtors further recognize that it is their responsibility to monitor closely the billing practices of their counsel to ensure the fees and expenses paid by the estate remain consistent with the Debtors' expectations and the exigencies of the chapter 11 cases. The Debtors will continue to review the invoices that McDermott regularly submits, and, together with McDermott, amend the budget and staffing plans periodically, as the case develops.

8. As they did prepetition, the Debtors will continue to bring discipline, predictability, client involvement, and accountability to the counsel fees and expenses reimbursement process. While every chapter 11 case is unique, these budgets will provide guidance on the periods of time involved, the level of the attorneys and professionals that will work on various matters, and projections of average hourly rates for the attorneys and professionals for various matters.

[*Remainder of page intentionally left blank.*]

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Dated:  May 29, 2014                                          Respectfully submitted,

                                                 */s/ Stacey H. Doré*_____
                                                 Stacey H. Doré
                                                 Executive Vice President, General Counsel,
                                                 and Co-Chief Restructuring Officer of EFH
                                                 Corp., EFIH, and TCEH LLC.