**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) | Case No. 14-10979 (CSS) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | Hearing Date: June 30, 2014 at 9:30 a.m. |

Objection Deadline: June 13, 2014 at 4:00 p.m.

**APPLICATION OF ENERGY FUTURE HOLDINGS CORP., *ET AL.*, FOR
AN ORDER AUTHORIZING THE DEBTORS TO RETAIN AND EMPLOY
SIDLEY AUSTIN LLP AS SPECIAL COUNSEL FOR CERTAIN CORPORATE AND
LITIGATION MATTERS, EFFECTIVE *NUNC PRO TUNC* TO THE PETITION DATE**

The above captioned debtors and debtors in possession (collectively, the "Debtors") file

this application (this "Application") for the entry of an order (the "Order"), substantially in the

form attached hereto as **Exhibit A**, authorizing the Debtors to employ and retain Sidley

Austin LLP ("Sidley") as special counsel for the Debtors effective *nunc pro tunc* to the Petition

Date (as defined herein).  The purpose of this Application is to permit the Debtors to retain and

employ Sidley to represent the Debtors as their special counsel in connection with certain

corporate and litigation matters on an as-needed basis as required by the Debtors.  In support of

this Application, the Debtors submit the *Declaration of Paul S. Caruso in Support of the*

*Application of Energy Future Holdings Corp.,* et al., *for an Order Authorizing the Debtors to*

*Retain and Employ Sidley Austin LLP as Special Counsel for Certain Corporate and Litigation*

*Matters, Effective* Nunc Pro Tunc *to the Petition Date* (the "Caruso Declaration"), attached

---

[1]  The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, for which joint administration has been granted on an interim basis, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

hereto as **Exhibit B** and the *Declaration of Stacey H. Doré in Support of the Application of Energy Future Holdings Corp.,* et al., *for an Order Authorizing the Debtors to Retain and Employ Sidley Austin LLP as Special Counsel for Certain Corporate and Litigation Matters, Effective* Nunc Pro Tunc *to the Petition Date*, attached hereto as **Exhibit C** (the "Doré Declaration"). In further support of this Application, the Debtors respectfully state as follows.

## Jurisdiction and Venue

1.      The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Debtors consent pursuant to rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Bankruptcy Rules") to the entry of a final order by the Court in connection with this Application to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The statutory bases for the relief requested in this Application are sections 327(e), 328, and 330 of title 11 of the United States Code (the "Bankruptcy Code"), rules 2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Local Bankruptcy Rules 2014-1 and 2016-2.

## Relief Requested

4.      By this Application, the Debtors seek entry of the Order authorizing the employment and retention of Sidley as special counsel to the Debtors, to continue providing

2

legal services, on an as-needed basis as determined by the Debtors, in accordance with the terms and conditions set forth in that certain engagement letter (the "Engagement Letter"), effective as of June 21, 2013, between Energy Future Holdings Corp. ("EFH Corp."), Energy Future Intermediate Holding Company LLC ("EFIH"), Energy Future Competitive Holdings Company LLC ("EFCH"), and Texas Competitive Electric Holdings Company LLC ("TCEH LLC," and together with EFH Corp., EFIH, and EFCH, the "Company Parties") and Sidley, a copy of which is attached as **Exhibit 1** to **Exhibit A** hereto and incorporated herein by reference.

## Background

5.     On April 29, 2014 (the "Petition Date"), each of the Debtors filed a voluntary petition with the Court under chapter 11 of the Bankruptcy Code.  The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  The Court has entered an interim order for joint administration of these chapter 11 cases.  The Court has not appointed a trustee.  The Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") formed an official committee of unsecured creditors in these chapter 11 cases on May 13, 2014 [D.I. 420].  Further information regarding the Debtors' business operations and capital structure is set forth in the *Declaration of Paul Keglevic, Executive Vice President, Chief Financial Officer, and Co-Chief Restructuring Officer of Energy Future Holdings Corp.*, et al., *in Support of First Day Motions* [D.I. 98].

## Sidley's Qualifications

6.     Sidley has experience and expertise in nearly every major substantive area of legal practice.  Sidley is a full-service law firm with more than 1,800 lawyers in nineteen offices in major cities throughout the United States, Europe, and Asia.  Sidley's attorneys have extensive experience and knowledge in, among other things, corporate investigations, complex

commercial litigation, energy and regulatory matters, environmental compliance and litigation, and chapter 11 bankruptcy and restructuring matters.

7.      Since July 15, 2011, Sidley has represented the Debtors in connection with certain counseling and litigation matters involving the Environmental Protection Agency (the "EPA"), including with respect to, among other things, counseling and litigation regarding various proposed and final EPA regulations (the "EPA Matters"). In addition, prior to the Petition Date, Sidley advised the Debtors on (a) all matters relating to Kohlberg Kravis Roberts & Co. LP, TPG Global, LLC, and GS Capital Partners (the "Sponsors" and all services related thereto, collectively, the "Sponsor Matters") and (b) various other matters.

8.      In providing such prepetition professional services related to the EPA Matters, the Sponsor Matters, and the Intercompany Matters to the Debtors, Sidley has become familiar with the Debtors and their business, including the Debtors' financial affairs, debt structure, operations, and related matters. Having worked with the Debtors' management and their other advisors, Sidley has developed relevant experience and expertise regarding the Debtors that will assist Sidley in providing effective and efficient services in these chapter 11 cases. Accordingly Sidley is both well-qualified and uniquely able to represent the Debtors in these chapter 11 cases in an efficient and timely manner.

## Services to be Provided

9.      The Debtors seek the authority to employ and retain Sidley to represent the Debtors in such legal matters as the Debtors may request and as the Debtors determine are necessary from time to time on a go-forward basis (the "Services").

## No Duplication of Services

10.      By separate application, the Debtors are seeking to retain and employ Kirkland & Ellis LLP ("K&E") to serve as their primary reorganization and bankruptcy counsel.

While the Debtors propose to retain and employ K&E as their primary reorganization and bankruptcy counsel, the Debtors submit that it is appropriate and in their best interests for Sidley to serve as special counsel with respect to the discrete matters described herein.

11.    The Debtors, Sidley, and K&E have fully discussed Sidley's anticipated role in these chapter 11 cases to avoid duplication of work.  Sidley's role will be tailored to providing the Services described herein and certain other Services that may be agreed upon by Sidley and the Debtors, while K&E will serve as the Debtors' primary bankruptcy and reorganization counsel.  The Debtors believe that this clear delineation of responsibility will effectively avoid any risk of duplicative effort and expense.

### Professional Compensation

12.    Sidley intends to apply for allowance of compensation for professional services and reimbursement of expenses incurred in connection with these chapter 11 cases, subject to the Court's approval and in compliance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, and any other applicable procedures and orders of the Court.  Sidley will charge the Debtors for its legal services on an hourly basis at its ordinary and customary rates for matters of these types in effect on the date that the services are rendered, and for reimbursement of all costs and expenses incurred by Sidley in connection with its representation of the Debtors.

13.    Sidley's billing rates for lawyers who may work on these matters currently range from $425 to $1,175 per hour for attorneys and from $110 to $375 per hour for paraprofessionals. The following professionals presently are expected to have primary responsibility for providing services to the Debtors:  Jim Conlan $1,150, Larry Nyhan $1,150,

Kevin Lantry $1,100, Paul Caruso $925, and Matthew Clemente $925. In addition, as necessary, other Sidley professionals and paraprofessionals will provide services to the Debtors.[2]

14.     Sidley's hourly rates are set at a level designed to compensate Sidley fairly for the work of its attorneys and paraprofessionals and to cover fixed and routine expenses. These hourly rates vary with the experience and seniority of the individuals assigned, and are subject to periodic adjustments to reflect economic and other conditions,[3] with the hourly rate charged being the hourly rate in effect on the date that the services are performed.

15.     Sidley represented the Debtors during the twelve-month period before the Petition Date, using the hourly rates listed above. Such rates are consistent with the rates that Sidley charges other comparable chapter 11 clients, regardless of the location of the chapter 11 case. Moreover, the rate structure provided by Sidley is appropriate and not significantly different from (a) the rates that Sidley charges for other similar types of representations or (b) the rates that other comparable counsel would charge to do work substantially similar to the work Sidley will perform in these chapter 11 cases.

16.     In addition to the hourly rates set forth above, Sidley customarily charges its clients for costs and expenses incurred in the rendition of services, including mail and express

---

[2]    Although Sidley does not anticipate using contract attorneys during these chapter 11 cases, in the unlikely event that it becomes necessary to use contract attorneys, Sidley will not charge a markup to the Debtors with respect to fees billed by such attorneys. Moreover, any contract attorneys or non-attorneys who are employed by the Debtors in connection with work performed by Sidley will be subject to conflict checks and disclosures in accordance with the requirements of the Bankruptcy Code.

[3]    For example, like many of its peer law firms, Sidley increases the hourly billing rate of attorneys and paraprofessionals annually in the form of: (i) step increases historically awarded in the ordinary course on the basis of advancing seniority and promotion and (ii) periodic increases within each attorney's and paraprofessional's current level of seniority. The step increases do not constitute "rate increases" (as the term is used in the *Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases*, effective November 1, 2013. As set forth in the Order, Sidley will provide ten business days' notice to the Debtors, the U.S. Trustee, and any official committee before implementing any periodic increases, and shall file such notice with the Court.

mail charges, special and hand delivery charges, photocopying charges, travel expenses, transcription costs, charges and fees of outside vendors, consultants and service providers.

17.     Sidley currently charges the Debtors $0.20 per page for standard duplication in its New York office and $0.15 per page for standard duplication in its other domestic offices.   Notwithstanding the foregoing and consistent with the Local Bankruptcy Rules, Sidley will charge no more than $0.10 per page for standard duplication services in these chapter 11 cases.  Sidley does not charge its clients for incoming facsimile transmissions.

18.     Furthermore, the Debtors and Sidley expect to develop a prospective budget and staffing plan to comply with the U.S. Trustee's requests for information and additional disclosures, and any other orders of the Court for the period of time from April 29, 2014 to August 31, 2014.

### Compensation Received by Sidley from the Debtors

19.     As further described in the Caruso Declaration, during the one year period prior to the Petition Date, Sidley received $16,250,000 from the Debtors for services rendered in connection with the matters other than the EPA Matters.  Specifically, on July 10, 2013, Sidley received $1,000,000 from the Debtors (the "Advanced Payment Retainer").[4]  The Advanced Payment Retainer was supplemented by additional advance payments in the following amounts: (a) $1,500,000 on July 19, 2013; (b) $1,500,000 on July 31, 2013; (c) $1,500,000 on August 12, 2013; (d) $1,500,000 on August 23, 2013; (e) $1,500,000 on September 6, 2013; (f) $1,500,000 on September 16, 2013; (g) $1,500,000 on October 2, 2013; (h) $750,000 on October 25, 2013;

---

[4]     Under Illinois law, the Advance Payment Retainer became the property of Sidley upon receipt by Sidley.  *See Dowling v. Chicago Options Assocs., Inc.*, 875 N.E.2d 1012 (Ill. 2007).  Upon such receipt, the Advance Payment Retainer was deposited into a Sidley operating account.  At no time was the Advance Payment Retainer (or any portion thereof) transferred to or held in a client trust, custodial or escrow account.

(i) $500,000 on December 30, 2013; (j) $500,000 on January 21, 2014; (k) $500,000 on February 10, 2014; (l) $500,000 on February 27, 2014; (m) $1,000,000 on March 27, 2014; and (n) $1,000,000 on April 23, 2014. The Advance Payment Retainer was allocated prior to the Petition Date to time spent and expenses incurred prior to the Petition Date, including both to such time and expenses that were recorded prior to the Petition Date and those which were recorded after the Petition Date. To the extent that the time spent and expenses incurred prior to the Petition Date turns out to be less than the Advance Payment Retainer allocated prior to the Petition Date, any remaining amounts of the Advanced Payment Retainer shall be allocated to Sidley's postpetition fees and expenses, after such postpetition fees and expenses are approved on an interim basis pursuant to an order of the Court awarding fees and expenses to Sidley.

20.     Additionally, during the one year prior to the Petition Date, Sidley received from the Debtors payments totaling $2,151,869 for services rendered or to be rendered in connection with the EPA Matters. In particular, between April 29, 2013 and September 8, 2013, Sidley received payments from the Debtors for its services in connection with the EPA Matters in the ordinary course of business and in accordance with the parties' established practice, as follows: (a) $36,291 on April 29, 2013; (b) $55,766 on April 30, 2013; (c) $25,742 on May 13, 2013; (d) $7,620 on June 6, 2013; (e) $243,989 on June 27, 2013; (f) $605 on July 15, 2013; (g) $240,345 on August 2, 2013; and (h) $116,509 on August 26, 2013. On September 9, 2013, Sidley received $150,000 from the Debtors for services to be rendered in connection with the EPA Matters (the "EPA Advance Payment").[5] The EPA Advanced Payment was

---

[5]  As with the Advance Payment Retainer, the EPA Advance Payment became the property of Sidley upon receipt by Sidley. Upon such receipt, the EPA Advance Payment was deposited into a Sidley operating account. At no time was the EPA Advance Payment (or any portion thereof) transferred to or held in a client trust, custodial or escrow account.

supplemented by additional advance payments in the following amounts: (a) $375,000 on October 7, 2013; (b) $100,000 on July 25, 2013; (c) $400,000 on October 24, 2013; (d) $250,000 on January 7, 2014; and (e) $150,000 on February 20, 2014.  With the exception of $206,126 (the "Remaining Balance"), the EPA Advance Payment was allocated prior to the Petition Date to time spent and expenses incurred in connection with the EPA Matters prior to the Petition Date.  Sidley intends to allocate the Remaining Balance towards Sidley's postpetition fees and expenses, after such postpetition fees and expenses are approved on an interim basis pursuant to an order of the Bankruptcy Court awarding fees and expenses to Sidley.

21.    Pursuant to Bankruptcy Rule 2016(b), Sidley has neither shared nor agreed to share (a) any compensation it has received or may receive with another party or person, other than with the partners, associates, and contract attorneys associated with Sidley or (b) any compensation another person or party has received or may receive.  As of the Petition Date, the Debtors did not owe Sidley any amounts for legal services rendered before the Petition Date. Although certain expenses and fees may have been incurred, but not yet allocated to the Advance Payment Retainer and the EPA Advance Payment, such amounts, if any, would be less than the balance of the Advance Payment Retainer and the EPA Advance Payment as of the Petition Date.

## Basis for Relief

22.    Section 327(e) of the Bankruptcy Code provides that a debtor subject to court approval:

> [M]ay employ, for a specified special purpose, other than to represent the trustee in conducting the case, an attorney that has represented the debtor, if in the best interest of the estate, and if such attorney does not represent or hold any interest adverse to the debtor or to the estate with respect to the matter on which such attorney is to be employed.

11 U.S.C § 327(e).

        23.     Moreover, section 1107(b) of the Bankruptcy Code provides that a person is not disqualified for employment under section 327 of the Bankruptcy Code by a debtor-in-possession solely because of such person's employment by or representation of the debtor before the commencement of the case.  11 U.S.C. § 1107(b).

        24.     Retention of an attorney under section 327(e) does not require the same searching inquiry required for a debtor to retain general bankruptcy counsel under section 327(a). *See Meespierson Inc. v. Strategic Telecom Inc.*, 202 B.R. 845, 847 (D. Del. 1996) ("[S]pecial counsel employed under [section] 327(e) need only avoid possessing a conflict of interest concerning the matter at hand.").

        25.     Nevertheless, the phrase "does not represent or hold any interest adverse to the debtor or to the estate" requires a factual determination of "all relevant facts surrounding the debtors' case, including, but not limited to, the nature of the debtor's business, all foreseeable employment of special counsel, [and] the expense of replacement counsel. . ." *In re Woodworkers Warehouse, Inc.*, 323 B.R. 403, 406 (D. Del. 2005).  In general, however, subject to the requirements of sections 327 and 1107, a debtor-in-possession is entitled to the counsel of their choosing. *In re Vouzianas*, 259 F.3d 103, 108 (2d Cir. 2001) (observing that "[o]nly in the rarest cases should the trustee be deprived of the privilege of selecting his own counsel").

## I.     Retaining Sidley as Special Counsel is in the Best Interests of the Debtors' Estates.

        26.     The Debtors believe that, in light of Sidley's prepetition experience in respect of the Services to be provided by Sidley to the Debtors and its institutional knowledge of the Debtors' business and particular legal matters in which it represents the Debtors, it is in the best interests of the Debtors' estates to immediately retain Sidley as special counsel.  Indeed, if the Debtors are required to retain different counsel to replace Sidley in current matters, the

Debtors will need to find, educate and integrate new counsel in these matters, and expend significant resources in doing so, rather than devoting their time and focus to their reorganization efforts. In this respect, retaining Sidley will avoid unnecessary administrative expenses and delays, result in cost efficiencies, and provide valuable assistance to the Debtors' efforts to reorganize.

## II.    Sidley Neither Holds nor Represents any Interest Adverse to the Debtors.

27.    Except as set forth in the Caruso Declaration, Sidley, to the best of the Debtors' knowledge, information, and belief, does not represent, and does not hold, any interest adverse to the Debtors or their estates, their creditors, or equity security holders, their respective attorneys and accountants, the United States Trustee for the District of Delaware (the "U.S. Trustee"), any person employed by the Office of the U.S. Trustee, or any other party in interest in these chapter 11 cases (a) in the matters for which Sidley is to be retained or (b) in matters related to the services to be performed by Sidley for the Debtors. Except as described in the Caruso Declaration, Sidley has agreed with the Company Parties not to represent any such creditors or parties in interest in the chapter 11 proceeding in any matters adverse to the Debtors. Additionally, Sidley has informed the Debtors that it will conduct an ongoing review of its files to ensure that it continues neither to hold nor represent in these proceedings any interests adverse to the Debtors or their estates in relation to the matters on which Sidley is to be engaged pursuant to this Application.

28.    Moreover, the lawyers and staff expected to provide services to the Debtors on behalf of Sidley are not related to the U.S. Trustee assigned to these cases, any person employed in the Office of the U.S. Trustee, or the Bankruptcy Judge presiding over these cases.

## Notice

29.    The Debtors shall provide notice of this Motion on the date hereof via first class mail to:  (a) the Office of the U.S. Trustee for the District of Delaware; (b) the entities listed on the Consolidated List of Creditors Holding the 50 Largest Unsecured Claims filed pursuant to Bankruptcy Rule 1007(d) and proposed counsel thereto; (c) Wilmington Trust, N.A., in its capacity as administrative agent under the TCEH first lien credit agreement and collateral agent under the TCEH intercreditor agreements and counsel thereto; (d) Bank of New York Mellon Trust Company, N.A., in its capacity as indenture trustee under:  (i) the TCEH unsecured pollution control revenue bonds; and (ii) the EFCH 2037 Notes due 2037, and counsel thereto; (e) American Stock Transfer & Trust Company, LLC, in its capacity as indenture trustee under: (i) the 9.75% EFH senior unsecured notes due 2019; (ii) the 10.0% EFH senior unsecured notes due 2020; (iii) the 10.875% EFH LBO senior unsecured notes due 2017; (iv) the 11.25%/12.0% EFH LBO toggle notes due 2017; (v) the 5.55% EFH legacy notes (series P) due 2014; (vi) the 6.50% EFH legacy notes (series Q) due 2024; and (vii) the 6.55% EFH legacy notes (series R) due 2034, and counsel thereto; (f) Computershare Trust Company, N.A. and Computershare Trust Company of Canada, in their capacities as indenture trustee under:  (i) the 11.0% EFIH senior secured second lien notes due 2021; and (ii) the 11.75% EFIH senior secured second lien notes due 2022, and counsel thereto; (g) UMB Bank, N.A. in its capacity as indenture trustee under:  (i) the 9.75% EFIH senior unsecured notes due 2019; and (ii) the 11.25%/12.25% EFIH senior toggle notes due 2018, and counsel thereto; (h) BOKF, NA, dba Bank of Arizona, in its capacity as indenture trustee under 11.50% TCEH senior secured notes due 2020, and counsel thereto; (i) CSC Trust Company of Delaware in its capacity as indenture trustee under:  (i) the 6.875% EFIH senior secured notes due 2017; and (ii) the 10.0% EFIH senior secured notes due 2020, and counsel thereto; (j) Law Debenture Trust Company of New York in its capacity as

indenture trustee under:   (i) the 10.25% TCEH senior unsecured notes due 2015; and (ii) the 10.50%/11.25% TCEH senior toggle notes due 2016, and counsel thereto; (k) Wilmington Savings Fund Society, FSB in its capacity as indenture trustee under the 15.0% TCEH senior secured second lien notes due 2021, and counsel thereto; (l) counsel to certain holders of claims against the Debtors regarding each of the foregoing described in clauses (c) through (k); (m) the agent for the TCEH debtor-in-possession financing facility and counsel thereto; (n) the agent for the EFIH debtor-in-possession financing facility and counsel thereto; (o) counsel to certain holders of equity in Texas Energy Future Holdings Limited Partnership; (p) counsel to the Ad Hoc Committee of TCEH Unsecured Noteholders; (q) counsel to the Ad Hoc Committee of TCEH Second Lien Noteholders; (r) counsel to Oncor Electric Delivery Holdings Company LLC; (s) the U.S. Securities and Exchange Commission; (t) the Internal Revenue Service; (u) the Office of the United States Attorney for the District of Delaware; (v) the Office of the Texas Attorney General on behalf of the Public Utility Commission of Texas; (w) counsel to the Electric Reliability Council of Texas; and (x) Sidley.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

### No Prior Request

30.     No prior request for the relief sought in this Application has been made to this or any other court.

*[Remainder of page intentionally left blank.]*

WHEREFORE, the Debtors respectfully request that the Court enter the Order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested herein and granting such other and further relief as is appropriate under the circumstances.

Wilmington, Delaware
Dated:  May 28, 2014

/s/ Stacey H. Doré
Stacey H. Doré
Executive Vice President, General Counsel,
and Co-Chief Restructuring Officer of EFH
Corp., EFIH, and TCEH LLC