IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | ) Chapter 11 |
| | ) |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) Case No. 14-10979 (CSS) |
| Debtors. | ) (Jointly Administered) |
| | ) Re: Docket No. 29 |
| | ) Objection Deadline: May 30, 2014 at 8:00 p.m. |
| | ) Hearing Date and Time: June 5, 2014 at 9:30 a.m. |

## LIMITED OBJECTION OF THE AD HOC GROUP OF TCEH UNSECURED NOTEHOLDERS TO THE MOTION OF ENERGY FUTURE HOLDINGS CORP., ET AL., FOR ENTRY OF A FINAL ORDER AUTHORIZING THE TCEH DEBTORS TO PAY PREPETITION CRITICAL VENDOR CLAIMS

The ad hoc group of certain holders (the "Ad Hoc Group of TCEH Unsecured Noteholders") of approximately $2.7 billion of 10.25% Fixed Senior Notes due 2015 (including Series B) and 10.50%/11.25% Senior Toggle Notes due 2016 issued by Texas Competitive Electric Holdings Company LLC and TCEH Finance, Inc., by and through its undersigned counsel, hereby files this limited objection (the "Limited Objection") to the Motion of Energy Future Holdings Corp., et al., for Entry of Final Order Authorizing the Debtors to Pay Prepetition Critical Vendor Claims [Docket No. 29] (the "Critical Vendor Motion").[2] In support of the Limited Objection, the Ad Hoc Group of TCEH Unsecured Noteholders respectfully represents as follows:

---

[1] The last four digits of Energy Future Holdings Corp.'s federal tax identification number are 8810. The location of the Debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of Debtors in these chapter 11 cases, for which the Debtors have requested joint administration, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at http://www.efhcaseinfo.com.

[2] Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the Critical Vendor Motion.

**PRELIMINARY STATEMENT**

1. The Ad Hoc Group of TCEH Unsecured Noteholders appreciates that, out of necessity, the TCEH Debtors need some authority and discretion to be able to pay prepetition claims asserted by vendors (a) whose services are essential to the TCEH Debtors' ongoing business operations and (b) who otherwise refuse to provide goods and services in the absence of payment of their prepetition claims (the "Critical Vendors"). To that end, at the "first day" hearing, the Ad Hoc Group of TCEH Unsecured Noteholders consented to an interim order authorizing the Debtors to pay up to $30 million to Critical Vendors on account of their prepetition claims. The Ad Hoc Group of TCEH Unsecured Noteholders likewise consents to the remaining request of the Debtors for final authority to pay an additional $10 million of Critical Vendor Claims, but only subject to the four conditions set forth below.

2. By bringing this Limited Objection, the Ad Hoc Group of TCEH Unsecured Noteholders seeks to ensure that only those general unsecured creditors whose services are truly critical to the continued operation of the TCEH Debtors' businesses receive payment of their prepetition claims outside of a chapter 11 plan. Aside from the Critical Vendors, the billions of dollars of other general unsecured claims against the TCEH Debtors are, if "the Debtors" have their way with their current plan proposal, slated to recover their pro rata share of an amount as little as $150 million.[3] Given the significant disparity in anticipated recoveries between Critical Vendors and other peer creditors of the TCEH Debtors, any relief granted by the Court should be directed with laser-like focus to those entities whose continued services are absolutely necessary to operations and who absolutely refuse to provide goods or

---

[3] The Ad Hoc Group of TCEH Unsecured Noteholders believes that the value of unencumbered assets will likely exceed the $150 million estimated by the Debtors. In any event, it is unclear whether, and to what extent, even that $150 million will remain unencumbered as a result of the relief sought by the TCEH Debtors in connection with their motions for approval of debtor-in-possession financing and authorization to use cash collateral.

2

services without payment of their prepetition claims. Critical Vendor relief should not be used for any other purpose, and the conditions described below are intended to effect that result.

## THE CRITICAL VENDOR MOTION

3.  In their Motion, the TCEH Debtors estimate that they owe approximately $507 million to more than 6,700 third-party vendors as of the Petition Date. Critical Vendor Motion ¶ 11. Of that amount, the Debtors estimate that they owe approximately $40 million to "critical trade vendors that are essential to the Debtors' ongoing business operations." Id. at ¶ 13. The TCEH Debtors identify five categories of Critical Vendors: (a) vendors that provide goods and services related to planned maintenance outages; (b) vendors that provide services and related goods that are highly specialized and/or closely integrated with the Debtors' business operations and customer relationships; (c) sole source or geographically limited providers of critical goods; (d) vendors that provide goods and services related to regulatory compliance obligations; and (e) vendors that provide goods and services related to the TCEH Debtors' nuclear power plant at Comanche Peak. Id. at ¶ 14. The TCEH Debtors represent that they have shared the list of Critical Vendors with the office of the United States Trustee, and, to the extent the Critical Vendor Motion is granted, will update certain creditor groups as to the status of payment of the Critical Vendor Claims. May 2, 2014 Hr'g Tr. at 59:20-24.

4.  To date, the Debtors have refused to provide any version of the list to the Ad Hoc Group of TCEH Unsecured Noteholders or its financial advisors, despite having been asked to do so repeatedly and on any terms of confidentiality the Debtors might request. In light of the Debtors' refusal, the Ad Hoc Group is not in a position to determine whether any particular vendor is, in fact, critical. The Debtors have, however, provided the Ad Hoc Group of TCEH Unsecured Noteholders with a reconciliation between interim authorization and interim

use of Critical Vendor cash, and, based on that disclosure, the Ad Hoc Group of TCEH Unsecured Noteholders understands that a significant portion of the prior authorized amounts remains unpaid.

**LIMITED OBJECTION**

5. From the Ad Hoc Group of TCEH Unsecured Noteholders' perspective, the salient questions remaining before the Court are (i) how much additional Critical Vendor authorization is necessary, (ii) for how long should that authorization remain open, and (iii) to whom should the Debtors be reporting on their efforts. In that regard, the Ad Hoc Group of TCEH Unsecured Noteholders requests that the Court include the following terms in any Order granting final relief on the Critical Vendor Motion:

- The Debtors shall provide a list of Critical Vendors (the "Critical Vendor List") to the Ad Hoc Group of TCEH Unsecured Noteholders and the official committee of unsecured creditors (the "Creditors' Committee") within three (3) days of entry of the final order, on an advisors'-eyes-only basis;

- The Debtors shall initiate all discussions with Critical Vendors regarding payment of their prepetition claims within 30 days of the entry of the final order. Any Critical Vendor that is not contacted by or does not contact the Debtors within that sunset period will not be subject to the terms of the present order;

- The Debtors will satisfy all Critical Vendor Claims within 45 days of entry of the final order absent an individualized written extension from the Creditors' Committee, on notice to the Ad Hoc Group;

- To the extent any Critical Vendor Claim remains unpaid after the 45th day following entry of the final order, the Debtors may file a single-page motion with the Court identifying the vendor and the amount sought to be paid and requesting an expedited hearing on that application, with at least two business days' notice to the Creditors' Committee and the Ad Hoc Group.

6. These modifications to the proposed final order are appropriate for five principal reasons. <u>First</u>, requiring the TCEH Debtors to pay Critical Vendors within the next two months will not impose any significant burden on the TCEH Debtors. Notwithstanding any

preference the Debtors' management may have for unbridled, evergreen discretion to pay claims, it is appropriate for the Court to establish at least some rudimentary constraints on the time that the TCEH Debtors have to make payments to the Critical Vendors. Requiring the TCEH Debtors to make those payments in a timely fashion, or otherwise file a short-form motion on notice to only two constituencies, accomplishes this while imposing only de minimis costs on the TCEH Debtors and their professionals.

       7. Second, requiring the TCEH Debtors to pay Critical Vendors promptly ensures that the Debtors pay only those vendors whose services are truly essential to facilitating a "smooth transition" of the ongoing business operations at the outset of the chapter 11 cases. Critical Vendor Motion ¶ 37 ("Thus, the Debtors' other creditors will be no worse off, and in fact will fare far better, if the Debtors are empowered to negotiate such payments to achieve a smooth transition into bankruptcy with minimal disruption to their operations."). Indeed, in requesting first day relief, the Debtors repeatedly emphasized the urgent need to assuage the concerns of trade creditors, customers and regulators that may be wary of transacting with the Debtors while in bankruptcy. See Declaration of Paul Keglevic in Support First Day Motions [Docket No. 98] (the "First Day Declaration") ¶ 180 (first day relief "is essential to providing . . . for a smooth transition into the chapter 11 cases"); May 1, 2014 Hr'g Tr. at 24:5-7 (proposed Debtors' counsel) ("I'd like to emphasize that this is purely a balance sheet restructuring, we're planning to minimize the impact of chapter 11 on the debtors' strong operations"); May 2, 2014 Hr'g Tr. at 46:12-14 (proposed Debtors' counsel) (". . . to ensure that as the debtors entered into chapter 11 that they would have the softest landing humanly possible for this large retail energy provider in Texas"). Incenting the Debtors to pay Critical Vendors within the first three months of these

chapter 11 cases will thus serve to secure continuity in the Debtors' operations and thereby facilitate the needed smooth transition.

8. <u>Third</u>, requiring the TCEH Debtors to pay Critical Vendor Claims promptly will further the Debtors' goal of ensuring that their trade relationships with vendors continue post-petition on customary and standard terms. <u>See</u> Exhibit 1 (Vendor Agreement) to Exhibit A (Proposed Order) to Critical Vendor Motion. The TCEH Debtors have announced that they will pay each Critical Vendor only after it agrees to continue supplying goods and services on terms that are acceptable to the TCEH Debtors in light of customary industry practices. May 2, 2014 Hr'g Tr. at 67:17-22 (proposed Debtors' counsel) (the Interim Order "reflects the Debtors' agreement that they will not only seek a letter agreeing to future trade terms from critical vendors, but will in fact obtain such a letter in advance of making a critical vendor payment"). Locking their Critical Vendors into customary trade terms as soon as possible will mitigate any budgeting uncertainty and further the best interests of the TCEH Debtors.

9. <u>Fourth</u>, ordering prompt repayment of Critical Vendor Claims is consistent with prior bankruptcy court decisions which have recognized that debtors ordinarily pay critical vendor claims at the early stages of chapter 11 cases. <u>See, e.g.</u>, <u>In re Arts Dairy, LLC</u>, 414 B.R. 219, 222 n.1 (Bankr. N.D. Ohio 2009) (denying trade creditor's motion for immediate payment of its section 503(b)(9) administrative expense claim, where that trade creditor had not been deemed a critical vendor warranting immediate payment); <u>In re Global Homes Prods., LLC</u>, No. 06-10340 (KG), 2006 WL 3791955, at *3 (Bankr. D. Del. Dec. 21, 2006) (contrasting a debtor's critical vendors, whose claims were paid at the outset of the case to obtain favorable trade terms and products necessary to reorganization, with section 503(b)(9) claimants whose claims were to be paid upon the effective date of a confirmed plan). Indeed, approximately $6 million of the

6

Critical Vendor Claims relate to goods delivered to the Debtors within 20 days of the Petition Date – claims that would be entitled to payment in full upon the effective date of a plan irrespective of Critical Vendor status. Critical Vendor Motion ¶ 38. As the Debtors admit, authorizing the payment of these claims as Critical Vendor Claims "will alter the timing . . . of payment." Id. Ordering prompt payment of all Critical Vendor Claims would ensure that all Critical Vendors receive such expedited treatment.

10. <u>Fifth</u>, requiring prompt payment of Critical Vendor Claims will prevent any conceivable impetus for the Debtors to use Critical Vendor authority for strategic restructuring purposes unrelated to the TCEH Debtors' business operations. Critical vendor relief is premised on a simple and straightforward legal rationale – that a bankruptcy court may authorize a debtor to pay certain prepetition general unsecured creditors in full at the outset of a chapter 11 case where necessary to preserve continued <u>operations</u>. If they are critical to operations, they should be paid now. Critical Vendor status should not be used to entice creditors who are perceived as critical to the reorganization process. A sunset avoids any confusion of those goals.

## CONCLUSION

11. Based on the foregoing, the Ad Hoc Group of TCEH Unsecured Noteholders respectfully requests that the Court deny the Critical Vendor Motion to the limited extent set forth herein.

Dated: May 30, 2014
      Wilmington, Delaware

                            FOX ROTHSCHILD LLP

By: /s/ _____
Jeffrey M. Schlerf (No. 3047)
John H. Strock (No. 4965)
L. John Bird (No. 5310)
919 North Market St., Suite 300
Wilmington, DE 19801
Telephone: (302) 654-7444
Facsimile: (302) 463-4971
jschlerf@foxrothschild.com
jstrock@foxrothschild.com
lbird@foxrothschild.com

and

WHITE & CASE LLP
Thomas E Lauria (admitted *pro hac vice*)
Matthew C. Brown (admitted *pro hac vice*)
Southeast Financial Center, Suite 4900
200 South Biscayne Blvd.
Miami, FL 33131
Telephone: (305) 371-2700
Facsimile: (305) 358-5744
tlauria@whitecase.com
mbrown@whitecase.com

J. Christopher Shore (admitted *pro hac vice*)
Gregory M. Starner (admitted *pro hac vice*)
1155 Avenue of the Americas
New York, NY 10036
Telephone: (212) 819-8200
Facsimile: (212) 354-8113
cshore@whitecase.com
gstarner@whitecase.com

*Counsel to the Ad Hoc Group of TCEH Unsecured Noteholders*

8