**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re | ) Chapter 11 |
| | ) |
| ENERGY FUTURE | ) Case No. 14-10979 (CSS) |
| HOLDINGS CORP., *et al.*, | ) |
| | ) (Jointly Administered) |
| *Debtors.* | ) |
| | ) Related to Docket Nos. 74 & 600 |
| | ) |
| | ) Hearing Date: June 5, 2014 at 9:30 a.m. |
| | ) Objection Deadline: May 31, 2014 at 4:00 |
| | ) p.m. (Extended on Consent) |

**LIMITED OBJECTION OF CSC TRUST COMPANY OF
DELAWARE, AS INDENTURE TRUSTEE AND AS
COLLATERAL TRUSTEE, TO MOTION OF EFIH DEBTORS
FOR APPROVAL OF FIRST-LIEN POSTPETITION FINANCING**

CSC Trust Company of Delaware ("CSC Trust"), as Indenture Trustee (the "10%

Indenture Trustee") for the 10% Senior Secured Notes Due 2020 (the "10% First Lien

Notes" or the "10% Notes") issued by Debtors under the Indenture dated as of August 17,

2010 (together with all supplements, amendments, and exhibits, the "10% Indenture")

between Energy Future Intermediate Holdings LLC ("EFIH"), EFIH Finance Inc. ("EFIH

Finance," and together with EFIH, the "EFIH Debtors") and CSC Trust (as successor to

The Bank of New York Mellon Trust Company, N.A.), and as Collateral Trustee (the

"Collateral Trustee") under the Collateral Trust Agreement dated as of November 16,

2009 among EFIH, the 10% Trustee and other secured parties (as supplemented, joined,

amended and in effect, the "Collateral Trust Agreement"), hereby objects (the

"<u>Objection</u>") to the EFIH Debtors' First Lien DIP Motion[1] [Dkt. No. 74] (the "<u>EFIH First Lien DIP Motion</u>")[2] and proposed final order regarding the EFIH First Lien Financing Motion [Dkt. No. 600-1] (the "<u>Proposed EFIH First Lien DIP Order</u>").  In support of this Objection, the 10% Indenture Trustee and Collateral Trustee respectfully represent and set forth as follows:

<b><u>PRELIMINARY STATEMENT</u></b>

1.        This Limited Objection addresses problematic aspects of the Proposed EFIH First Lien DIP Order, including as a result of the EFIH Debtors' decision and agreement with the 10% Indenture Trustee to bifurcate disputes.  The June 5 hearing will consider approval of: (1) the EFIH First Lien Financing Motion, (2) the First Lien Settlement, and (3) the Alternative Transaction Fee component of the Second Lien DIP Motion.  All matters relating to the disputed redemption premium (the "<u>First Lien Make-Whole Amount</u>") are to be heard on a schedule set by the Court, with a trial and hearing in September 2014, and a full reservation of rights as to the pending adversary proceeding, a contested matter initiated by the 10% Indenture Trustee and the portion of the First Lien Financing Motion in which the EFIH Debtors sought a determination as to the First Lien Make-Whole Amount.

---

[1] Motion of Energy Future Intermediate Holding Company LLC and EFIH Finance, Inc. for Entry of (I) an Interim Order (A) Approving Certain Fees Related to Postpetition Financing and Granting Such Fees Administrative Expense Priority and (B) Scheduling a Final Hearing; and (II) a Final Order (A) Approving Postpetition Financing, (B) Granting Liens and Providing Superiority Administrative Expense Claims, (C) Authorizing the Use of Cash Collateral, (D) Authorizing the EFIH First Lien Refinancing, (E) Authorizing Issuance of Roll-Up Debt to the Extent Authorized by the Settlement Motion, (F) Determining the Value of Secured Claims, and (G) Modifying the Automatic Stay.

[2] Capitalized terms used herein but not defined have the meanings ascribed to them in the EFIH First Lien DIP Motion.

2.      The Proposed DIP Order improperly (1) grants relief beyond the matters scheduled for the June 5 hearing, (2) strips the First Lien Make-Whole Amount and other outstanding claims of the 10% Trustee and the Collateral Trustee of their security interest, (3) fails to make necessary findings as to adequate protection (4) appears to authorize aspects of the settlements for the EFIH second lien notes and second lien DIP financing, and (5) seeks certain unsupported factual findings and legal rulings.

3.      The 10% Indenture Trustee and Collateral Trustee will meet and confer with the EFIH Debtors in an effort to resolve these items and minimize issues for the hearing, where possible.

## BACKGROUND

4.      The background set forth in each of (1) the 10% Indenture Trustee's Preliminary Objection to the EFIH First Lien DIP Financing Motion [Dkt. No. 421], (2) the Objection of CSC Trust to First Lien Settlement, filed contemporaneously herewith, and (3) the Objection of CSC Trust to Debtors' Request For Approval of Alternative Transaction Fee, filed contemporaneously herewith, are incorporated herein by reference, as are the allegations of the Complaint for Declaratory Relief [Dkt. No. 470].

5.      The Collateral Trustee is not only the collateral trustee for the 10% Notes, but also for EFIH's 6⅞% Notes due 2017 and second lien notes.

## OBJECTIONS

## I.      EFIH FIRST LIEN NOTE OBLIGATIONS WILL NOT BE PAID IN FULL AND LIENS CANNOT BE RELEASED

6.      While the EFIH Debtors are volunteering to refinance the holders of EFIH First Lien Notes principal and certain accrued interest on the First Lien Notes, the

EFIH Debtors make no provision to pay (i) the First Lien Make-Whole Amount, (ii) Additional Interest due under certain of the 10% Notes, (iii) Fees and Costs, including professional fees and costs in connection with defending the EFIH First Lien Notes' rights concerning the Redemption Premium scheduled for trial in September 2014, and (iv) interest on amounts not paid when due. They make no provisions for the continuing indemnification, fee or other miscellaneous obligations to the 10% Trustee and the Collateral Trustee.[3] Because of these Outstanding First Lien Obligations, the final EFIH first lien DIP order cannot unilaterally direct the release of liens securing these obligations.

7.      Specifically, paragraph 12 of the Proposed DIP Order provides that the EFIH Prepetition Collateral Trustee, the EFIH First Lien Notes Trustee, and the Prepetition EFIH First Lien Creditors are "authorized and directed to (i) take all actions reasonably requested by the EFIH Debtors . . . including authorizing the release, termination, or discharge of, and releasing, terminating or discharging, the liens securing, and any and all other interests of record with respect to, the EFIH First Lien Notes." This and other relevant language in the Proposed DIP Order must be deleted.

## II.     THE PROPOSED DIP ORDER MUST MAKE A FINDING OF ADEQUATE PROTECTION

8.      The proposed EFIH First Lien DIP Financing will prime the Outstanding First Lien Claims. The order must therefore make a finding that such claims are adequately protected. 11 U.S.C. § 364(d)(1)(B); *In re Swedeland Dev. Gp., Inc.*, 16 F.3d

---

[3] All of the amounts referenced in this paragraph are referred to herein as the "Outstanding First-Lien Obligations."

552, 564 (3d Cir. 1994).  That might include a finding that the Outstanding First Lien Claims are oversecured even after the priming and with the potential accrual of post-petition interest.  The current proposed order, at paragraph K, proposes instead a finding that "adequate protection is not required."

9.      There are at least five specific issues relating to adequate protection. First, the EFIH Debtors have presented no evidence of adequate protection; not even a proforma valuation of collateral securing the EFIH First Lien Notes.  The closest the EFIH Debtors get to evidence is a declaration containing the tentative and conclusory statement that "I believe that there is significant equity cushion," while admitting that no "comprehensive valuation" has been completed.  *See* Supplemental Ying Decl., May 25, 2014, ¶ 33 [Dkt. No. 610].

10.     Second, the lack of an adequate protection finding could be construed to impair the potential rights of the 10% Trustee and the Collateral Trustee to a claim under Bankruptcy Code Section 507(b).  Such a claim arises by operation of law when adequate protection fails.  There must be an initial finding of adequate protection so as to trigger that later inquiry.

11.     Third, paragraph 20 of the proposed order, and the advance lifting of the automatic stay contained in paragraph 23, work in tandem to preclude a finding of oversecured status and adequate protection.  The order permits the First Lien DIP Lenders and Agent to exercise remedies without further court intervention except for the very limited challenge as to whether an event of default has actually occurred.  The 10% Indenture Trustee and the Collateral Trustee are expressly said to have no "enforcement

rights" and no "rights or remedies that may interfere with" the DIP Lenders and Agent. This would permit the EFIH First Lien DIP Lenders and Agent to sell the collateral, including the 80% interest in the equity of Oncor, at any price they desire while stripping the Collateral Trustee and the 10% Indenture Trustee of basic secured lender protections under the Uniform Commercial Code in circumstances where other lenders are exercising remedies.   The essence of adequate protection in this circumstance is a finding that the collateral for the Outstanding First Lien Obligations is of sufficient value to cover both the priming DIP loan and those obligations, in the event of a sale coupled with non-impairment of the secured lenders rights.   The EFIH Debtors' own theory is that both the first lien and second lien notes, including the disputed make-whole claims if fully allowed, are substantially oversecured.   *See* Supplemental Ying Decl. ¶ 33 [Dkt.. No. 610] ("I believe that there is significant equity cushion for the Prepetition EFIH Second Lien creditors . . . .").   An order that permits total control by the priming DIP lender to conduct a sale for an amount only equal to the DIP loan, thus threatening that none of that value be actually available, does not amount to adequate protection.   It is the EFIH Debtors' burden to structure and propose contractual arrangements to address this.[4]

12.     Fourth, the proposed order does not either (i) require simultaneous distribution of DIP proceeds to the intended recipients, *i.e.* the tendering first lien noteholders and the 10% Indenture Trustee in respect of the nonsettling notes or (ii)

---

[4] It is notable that the EFIH Debtors have proposed a second lien DIP financing that was to have an intercreditor agreement with the proposed first lien financing.   Whether those second lien DIP lenders would have had any rights in connection with a sale of collateral is unknown.   The second lien DIP matters are only on for hearing June 30, and the EFIH Debtors have not filed a proposed intercreditor agreement.

protection for the priming before such distributions reduce the outstanding amounts of the first lien obligations.  That is, from the time of funding the DIP financing to the time of distribution to the first lien notes, those $4.0 billion of first lien prepetition notes are to be primed by $5.4 billion of loans.  The EFIH Debtors will be holding the cash.  No matter if this period is simply overnight or intraday, there must be adequate protection against catastrophic intervening events.  That might come in the form of provisions in the order restricting usage, escrowed and pledged accounts, or other possible structures.

13.    Fifth, the proposed order contemplates a Carve Out for professional fees, to be senior to the Outstanding First Lien Obligations.  The Carve Out itself is not objectionable, but the EFIH Debtors must also demonstrate adequate protection for this priming.

14.    Some, but not all of these issues would be alleviated with customary adequate protection in the form of liens on all currently unencumbered assets and on postpetition property.  There may be other ways in which the EFIH Debtors can propose to satisfy the requirements of Section 364(d) as to the first lien notes, the second lien notes, and the various obligations to the Collateral Trustee.

III.    **THE PROPOSED EFIH  FIRST LIEN DIP ORDER MUST MAKE CLEAR THAT THE PLANNED DISTRIBUTION OF DIP PROCEEDS IN RESPECT OF FIRST LIEN CLAIMS IS IRREVOCABLE**

15.    Paragraph 12 of the proposed order states that the distribution of DIP proceeds in respect of the First Lien Settlement and the First Lien Refinancing are "in full satisfaction" of certain obligations.  However, the proposed order does not state precisely what the EFIH Debtors think the interest and principal amounts are.  The Court

cannot make this ruling, and related findings, without clarity as to what the EFIH Debtors propose to distribute and notice and opportunity to be heard for the Collateral Trustee and the 10% Trustee; *i.e.*, they need a fair opportunity to dispute the amount proposed.

16.     More fundamentally, proposed finding "E(v)" asserts that the EFIH Debtors are not stipulating to any aspect of the First Lien Obligations.  This is in direct contradiction to paragraph 20 of the proposed order.  If the EFIH Debtors want their purported benefit of cessation of interest on the outstanding principal amount, the order cannot permit future challenge of the First Lien Obligations.  If there are particular portions that are disputed, those can be litigated on the bifurcated schedule, along with the make-whole claims.  But the entire amount cannot be left in limbo.

## IV.     THE EFIH DEBTORS HAVE NOT PROVIDED AN ADEQUATE RESERVATION OF RIGHTS WITH RESPECT TO ISSUES SET FOR LATER DETERMINATION

17.     Certain provisions of the Proposed EFIH First Lien DIP Order involve factual findings and decretal statements for which there is insufficient evidentiary support.  In addition, these factual findings and decretal statements could potentially prejudice the ability of interested parties to challenge relief that the EFIH Debtors requested but that is not scheduled for the June 5 hearing.

18.     Paragraph 39(b) of the proposed order contains a limited reservation of rights that purports to embody and document the agreement reached on the record at the May 22 hearing, but the agreement on the record encompassed a full reservation of all make-whole issues to be litigated and heard on the bifurcated track culminating in

-8-

September 2014. In order to effectuate this agreement, the EFIH First Lien DIP Order and the existence of the new $5.4 billion of priming financing cannot have any relevance, preclusive effect or other effect on the subsequent proceeding. The 10% Indenture Trustee believes the following alternative language is necessary:

> Nothing in this Final Order (including, without limitation, any factual findings herein) or the transactions contemplated hereby (including, without limitation, the closing of the EFIH First Lien Refinancing) shall have any precedential, evidentiary, law of the case, or preclusive effect with respect to any present or future dispute concerning the EFIH First Lien Makewhole Claims or any other claims for damages of the EFIH First Lien Notes Trustee or the EFIH First Lien Creditors due or that may become due as a result of, or in connection with, the EFIH First Lien Refinancing, whether in connection with the action styled *CSC Trust Company of Delaware, as Indenture Trustee v. Energy Future Intermediate Holding Company LLC & EFIH Finance Inc.* (Adv. No. 14-50363), the *Joint Motion of CSC Trust Company of Delaware, as Indenture Trustee, and Certain EFIH 10% First Lien Noteholders, for Confirmation that the Automatic Stay Does Not Apply or, Alternatively, for Limited Relief from the Automatic Stay, Solely Regarding Rescission of Acceleration* [D.I. 473], or any claims objection or other proceeding, including, without limitation, whether (i) any Additional Interest is or may become due with respect to the EFIH First Lien Notes, (ii) the EFIH First Lien Notes are subject to reinstatement pursuant to Bankruptcy Code Section 1124(2), and (iii) any acceleration of the EFIH First Lien Notes is subject to rescission by majority holders thereof pursuant to the terms of the EFIH First Lien Indentures.

This language will appropriately freeze the status quo for litigation purposes so that the parties can litigate these issues on a separate track.

19.    Similar issues exist with respect to matters on for hearing on June 30. Proposed finding "J" of the Proposed EFIH First Lien DIP Order states that the relief requested in the EFIH First Lien DIP Motion is essential for the continued operation of the EFIH Debtors' business, notwithstanding that the primary purpose of the financing is not for operational costs or expenses, but rather for the EFIH Debtors to redeem the

EFIH First Lien Notes.  There has been no evidence to show that the EFIH Debtors'

could not continue operations as a holding company with the EFIH Debtors' significant

cash position.

20.     Proposed finding "H" of the Order provides that the EFIH First Lien DIP

Financing was negotiated in good faith and at arms' length.  The EFIH Debtors have

consistently portrayed the financing as part of their integrated "global" transactions.

Findings as to business necessity and/or good faith on this first-lien DIP related relief

must be expressly cabined, so that there are not later disputes that such findings are

binding as to other matters, such as assumption of the RSA or the second lien financing,

which are set for hearing on June 30.

**V.     THE PROPOSED EFIH FIRST LIEN DIP ORDER IMPROPERLY
        SEEKS AUTHORIZATION WITH RESPECT TO PROPOSED
        REDEMPTION OF SECOND LIEN NOTES AND THE PROPOSED
        SECOND LIEN SETTLEMENT**

21.     A hearing on approval of the EFIH Second Lien DIP Facility (except for

the Alternative Transaction Fee) and the EFIH Second Lien Settlement has been

adjourned until a later date.  Accordingly, the Final EFIH First Lien DIP Order should

not contain any finding or authorize any action regarding any portion of the EFIH

Second Lien DIP Facility or EFIH Second Lien Settlement, including any borrowing

with respect to any EFIH Second Lien Refinancing.  To do so now is premature, will

deprive interested parties of an opportunity to object, and will likely generate later

disputes regarding the meaning and binding effect of any references in this order to

those second-lien issues.

22.     The Proposed EFIH First Lien DIP Order contains numerous approvals and authorizations related to the EFIH Second Lien DIP Facility or the EFIH Second Lien Settlement.  By way of example:

(a)     Paragraph (ix) of the Proposed EFIH First Lien DIP Order purports to authorize the EFIH Debtors to use the EFIH First Lien DIP Financing to satisfy EFIH's obligations in respect of EFIH's settlement of certain EFIH Second Lien Notes "makewhole" or redemption claims.

(b)     Paragraph (xi) of the Proposed EFIH First Lien DIP Order purports to authorize the EFIH Debtors to borrow under the EFIH First Lien DIP Financing for "the repayment of the EFIH Second Lien Notes."

(c)     Paragraph (iii) of the Proposed EFIH First Lien DIP Order states that entry of the order is "necessary to allow the EFIH Debtors to consummate … the EFIH Second Lien [Refinancing] if the EFIH Second Lien [Refinancing] is approved . . . and the EFIH Second Lien Settlement if the EFIH Second Lien Settlement is approved . . .."

(d)     Paragraph "G" of the Proposed EFIH First Lien DIP Order states that the proceeds of the EFIH First Lien DIP Financing shall be used, *inter alia*, to finance the EFIH Second Lien [Refinancing] and EFIH Second Lien Settlement.

The First Lien DIP Facility contemplates that it could be funded in part, at Fidelity's option, with second lien notes exchanged as part of the second lien settlement.  The borrowing authorizations in the proposed order could be read to approve this Fidelity roll-up, since the entire facility is to be funded at one single closing.  The proposed order also authorizes the EFIH Debtors to enter into an intercreditor agreement among first-lien and second-lien DIP agents, which agreement has not been disclosed and would not be approved at this hearing.   Any such relief should be sought only in connection with approval of those arrangements, at the June 30 hearing.

## VI.    PRIOR COURT APPROVAL, AFTER NOTICE AND HEARING, IS REQUIRED FOR AMENDMENTS TO EFIH FIRST LIEN DIP DOCUMENTS

23.    Paragraph 14 of the Proposed EFIH First Lien DIP Order currently provides that (i) immaterial modifications to documents relating to the first lien DIP facility may be executed and delivered without court approval or notice to parties and (ii) notice of any material modification or amendment of the EFIH First Lien DIP Documents need only be provided to counsel to the Creditors' Committee and the U.S. Trustee, who shall have five days to object.  Only after such an objection would the EFIH Debtors have to seek court approval even for a supposedly material modification or amendment.

24.    There is no question that the first lien DIP facility is a transaction outside the ordinary course.  Amendments to it are also outside the ordinary course, and must be court approved, after notice and hearing.  In this disputed chapter 11 case, this Court should not create in the Proposed EFIH First Lien DIP Order a new, vague standard of "nonmateriality" for preapproved modifications to agreements, on topics not yet even imagined.  That will just generate additional disputes.

25.    There is no justification to limit notice to the Official Committee and the United States Trustee.  The Official Committee is expressly not a fiduciary with respect to the EFIH Debtors, and in all events would not be a fiduciary to the major secured creditor constituencies at EFIH.

26.     If the EFIH Debtors need to modify the agreements and documents, they can return to court on such notice and opportunity to be heard as is appropriate under the circumstances.  Bankruptcy Code Section 102(1).

## VII.    MISCELLANEOUS

27.     Proposed finding "C" of the order states that the entire motion is a core proceeding.  This could be read to include the relief sought with respect to the disputed make whole.  As indicated in the preliminary objection of the 10% Indenture Trustee, the precise relief the EFIH Debtors seek, and the legal basis for it, is unclear because to date they have only addressed this in several short paragraphs.  Indeed, the form of order changes the defined term for relief sought even at June 5 from "Refinancing" (the prior term contained in the motion itself) to "Repayment."   See proposed order footnote 5. The 10% Indenture Trustee and Collateral Trustee reserve all rights with respect to the nature of the subsequent June 30 and September 2014 proceedings.

28.     Paragraph 31 of the Proposed EFIH First Lien DIP Order contains an inappropriately broad release, if one is appropriate at all.  The release is not limited to acts prior to the date of the order.  The release applies to future unnamed and not-yet-in-existence parties, such as future agents and lenders.  It applies to affiliates and other related parties, some of whom are debtors in these cases.  Furthermore, the EFIH Debtors have consistently maintained that the EFIH First Lien DIP Facility is integrated with other not-yet-approved transactions.  Thus the scope of the phrase identifying released claims is entirely too broad when it describes claims "arising out of, in connection with, or relating to" the EFIH First Lien DIP Financing and all related

documents "or the transactions contemplated hereunder or thereunder." The last sentence of this paragraph must also make clear that unsecured creditors are not among the released parties.

## **CONCLUSION**

29. For the foregoing reasons, the 10% Indenture Trustee and Collateral Trustee respectfully request that the Court deny the requested relief absent the modifications and showings discussed in this Objection.

*[Remainder of Page Left Intentionally Blank]*

Dated:  May 31, 2014

COLE, SCHOTZ, MEISEL, FORMAN
& LEONARD, P.A.

/s/ Nicholas J. Brannick
Norman L. Pernick (DE No. 2290)
J. Kate Stickles (DE No. 2917)
Nicholas J. Brannick (DE No. 5721)
500 Delaware Avenue, Suite 1410
Wilmington, DE  19801
Telephone: 302-652-3131
Facsimile:  302-652-3117
npernick@coleschotz.com
kstickles@coleschotz.com
nbrannick@coleschotz.com

Warren A. Usatine
25 Main Street,
P.O. Box 800
Hackensack, NJ 07602
Telephone: 201-489-3000
Facsimile:  201-489-1536
wusatine@coleschotz.com

   --and--

ROPES & GRAY LLP
Keith H. Wofford
Mark R. Somerstein
1211 Avenue of the Americas
New York, NY 10036-8704
Telephone: 212-596-9000
Facsimile:  212-596-9090
Keith.Wofford@ropesgray.com
Mark.Somerstein@ropesgray.com

D. Ross Martin
Andrew G. Devore
Prudential Tower
800 Boylston Street
Boston, MA  02199-3600
Telephone: 617-951-7000
Facsimile: 617-951-7050
Ross.Martin@ropesgray.com
Andrew.Devore@ropesgray.com

   --and--

DRINKER BIDDLE & REATH LLP
James H. Millar
1177 Avenue of the Americas
41st Floor
New York, NY 10036-2714
Telephone:  212-248-3264
Facsimile:   212-248-3141
James.Millar@dbr.com

Counsel for CSC Trust Company of Delaware,
as successor indenture trustee