# Exhibit A

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re<br><br>ENERGY FUTURE<br>HOLDINGS CORP., *et al.*,<br><br>       *Debtors.* | )<br>)<br>)  Chapter 11<br>)<br>)  Case No. 14-10979 (CSS)<br>)<br>)  (Jointly Administered)<br>)<br>) |

**DECLARATION OF CHRISTOPHER J. KEARNS,
EXECUTIVE DIRECTOR OF CAPSTONE ADVISORY GROUP, LLC
<u>CONCERNING FIRST LIEN SETTLEMENT</u>**

I, Christopher J. Kearns, hereby certify and declare as follows based upon my own personal information and knowledge:

1. I am an Executive Director of Capstone Advisory Group, LLC ("<u>Capstone</u>"), in which capacity I have been engaged by CSC Trust Company of Delaware as Indenture Trustee for the 10% Senior Secured Notes Due 2020 (the "<u>10% Notes</u>") issued by the EFIH Debtors under the Indenture dated as of August 17, 2010 (as amended or supplemented from time to time) between Energy Future Intermediate Holdings LLC ("<u>EFIH LLC</u>"), EFIH Finance Inc. (together with EFIH LLC, "<u>EFIH</u>" or the "<u>EFIH Debtors</u>") and CSC Trust Company of Delaware as successor indenture trustee, as well as a steering committee of holders of the 10% Notes to advise on and assist with matters relating to the Debtors' chapter 11 restructuring.

2. I am a Certified Public Accountant, a Certified Insolvency and Restructuring Advisor, a Certified Turnaround Professional, and a Certified Fraud Examiner (inactive). I have over 30 years of broad-based financial experience as an auditor, corporate officer and, for approximately the past 23 years, as an advisor or crisis manager in bankruptcy and turnaround matters.

3. I am one of the founding members of Capstone Advisory Group, LLC ("Capstone"), a financial services consulting firm, founded in January 2004, which provides services to a vast array of businesses. The services provided by Capstone include consultation in business turnaround and restructuring situations, workouts and reorganization, bankruptcy matters, crisis management, transaction advisory and due diligence services, forensic accounting, valuation and dispute resolution services. Prior to co-founding Capstone, from 1991 to 2004, I was a senior managing director of FTI Consulting, Inc. ("FTI") (and predecessor firms) and was co-leader of FTI's New York office. My experience and client assignments during that period were substantially similar to the assignments I have performed at Capstone.

4. Prior to 1991, I was employed by Bristol-Myers Squibb Company for approximately three years (including serving as Assistant Corporate Controller), and a major international public accounting firm for ten years in the mergers and acquisitions group, and in the audit practice. I have served as a testifying expert witness in matters concerning solvency, valuation, contract breach, lost profits and various financial/business issues in bankruptcy and restructuring. I have served as a principal financial advisor in numerous complex bankruptcies and restructurings. In addition, I have served as a testifying expert in cases regarding make whole premiums and no call provisions under various indentures and credit agreements.

5. Additionally, I have relied extensively on the knowledge and experience that I have gained through consultancy and work experience including the areas of business turnaround and restructuring situations, out-of-court workouts, bankruptcy matters, crisis management, transaction advisory and due diligence services and dispute resolution

**Calculation of Redemption Premium**

6. There are $3.985 billion of EFIH First Lien Notes: (i) $3.482 billion of 10% First Lien Notes and (ii) $503 million of 6.875% notes due 2017 (the "6.875% Notes") issued pursuant to that Indenture dated as of August 14, 2012 (the "6.875% Indenture"). The 10% First Lien Notes are of two CUSIPs, issued under a single indenture (together with the 6.875% Indenture, the "First Lien Indentures"). CUSIP 29269QAA5 (the "AA5 10% Notes") consists of $2.18 billion of 10% Notes issued in 2010. CUSIP 29269QAK3 (the "AK3 10% Notes") consists of $1.302 billion of 10% Notes issued in 2013.

7. The 6.875% Notes and the AK3 10% Notes were each issued with an associated registration rights agreement that provides that if such notes are not registered by a date certain, thereafter the notes pay "Additional Interest," first at 0.25% per annum for a period and thereafter at 0.5% per annum. EFIH did not register either of those issuances. Prior to the Petition Date, EFIH paid such Additional Interest in connection with such notes, and I understand from counsel that Additional Interest continues to accrue.

8. As requested by counsel, I calculated the redemption premiums for the 6.875% Notes, the AK3 10% Notes and the AA5 10% Notes, pursuant to the applicable language in the First Lien Indentures. In addition, I calculated the Tender Consideration as a percentage of the redemption premia, as noted in the table below.

**First Lien Notes** *($ in millions)*

| Securities | Redemption Premium (as of June 6, 2014)[1] | Redemption Premium (as a % of principal) | Tender Consideration (as a % of premium) |
|---|---|---|---|
| First Lien 6.875% | $ 41 | 8% | 62% |
| First Lien 10.00% AK3 CUSIP | $ 255 | 20% | 26% |
| First Lien 10.00% AA5 CUSIP | $ 411 | 19% | 27% |

[1]The Applicable Premium is calculated based on Treasury rates as of May 23, 2014

9. The redemption premia calculated by David Ying ("Ying") in his Supplemental Declaration, dated May 25, 2014 differ from my calculations above for the following:

   a. Redemption Date – I assumed a redemption date of June 6, 2014, whereas Ying assumed June 11, 2014.

   b. Registration Default Interest – I assumed both the 6.875% Notes and the AK3 10% Notes continue to accrue Additional Interest through the relevant early redemption dates, whereas Ying did not include Additional Interest in his calculation of the Redemption Premium.

10. The percentage I used to calculate the premium was 105%, in accordance with the Information Memorandum, which defines "Total Consideration" as $1,050.00 in aggregate principal amount of EFIH First Lien DIP Loans for each $1,000 principal amount of EFIH First Lien Notes tendered. The Tender Consideration as a percentage of premium calculated by Ying in his Supplemental Declaration, dated May 25, 2014, differs from my calculations above because he assumes a Total Consideration Price of only 104. Mr. Ying does not explain in his Supplemental Declaration, nor in any deposition testimony I have reviewed, any justification for assuming a Total Consideration Price of 104.

Pursuant to 28 U.S.C. § 1746, I certify under penalty of perjury that the foregoing is true and correct.

Executed on this 30 day of May, 2014.

_____
Christopher J. Kearns