## IN THE UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| ENERGY FUTURE HOLDINGS CORP., *et al.*, | ) | Case No. 14-10979 (CSS) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |
|  | ) | **Re: D.I. 73, 231, 637, 648, 678** |

## TCEH DIP AGENT'S REPLY IN SUPPORT OF THE MOTION OF TEXAS COMPETITIVE ELECTRIC HOLDINGS COMPANY LLC AND CERTAIN OF ITS DEBTOR AFFILIATES, FOR ENTRY OF INTERIM AND FINAL ORDERS (A) APPROVING POSTPETITION FINANCING, (B) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS, (C) MODIFYING THE AUTOMATIC STAY, AND (D) SCHEDULING A FINAL HEARING

Citibank, N.A., as administrative agent (the "<u>TCEH DIP Agent</u>") under that

certain Senior Secured Superpriority Debtor-in-Possession Credit Agreement, dated as of May 5,

2014 (as amended, restated, supplemented, or otherwise modified from time to time, the "<u>DIP</u>

<u>Credit Agreement</u>"), files this reply in support of the *Motion of Texas Competitive Electric*

*Holdings Company LLC and Certain of Its Debtor Affiliates, For Entry of Interim and Final*

*Orders (A) Approving Postpetition Financing, (B) Granting Liens and Providing Superpriority*

*Administrative Expense Claims, (C) Modifying the Automatic Stay, and (D) Scheduling a Final*

*Hearing* [D.I. 73] (the "<u>DIP Motion</u>")[1] and in response to the objections filed by the Official

Committee of Unsecured Creditors (the "<u>Creditors' Committee</u>") [D.I. 637] (the "<u>UCC</u>

<u>Objection</u>"), the Law Debenture Trust Company of New York ("<u>Law Debenture</u>") [D.I. 648] (the

"<u>Law Debenture Objection</u>"), and the Ad Hoc Group of TCEH Unsecured Noteholders (the "<u>Ad</u>

<u>Hoc Group</u>" and, collectively with Law Debenture and the Creditors' Committee, the

---

[1]     Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the DIP Motion or the Final Order, as applicable.

"Objectors") [D.I. 231, 678] (the "Ad Hoc Group Objections" and, collectively with the UCC

Objection and the Law Debenture Objection, the "Objections"), and respectfully represents as

follows:

## PRELIMINARY STATEMENT

1.    The DIP Lenders have agreed to facilitate the restructuring of the TCEH

Debtors' estates by committing to provide up to $4.475 billion in new loans to fund these Cases

to a successful conclusion.  Other than to ensure the indefeasible payment in full of the DIP

Obligations and to safeguard such payment in the unlikely event of administrative insolvency,

the DIP Lenders have no economic interest in the outcome of any value allocation dispute among

prepetition creditors.  The DIP Facility contains no case control covenants nor does it require that

any such dispute be resolved in a particular manner.

2.    The Objectors, each representing different members of the TCEH Debtors'

unsecured creditor constituency, have embarked on a campaign to extract value from the other,

senior stakeholders in an attempt to escape what appears to be their reality.  Their objections to

the DIP Facility, however, are misdirected, as the protections sought by the TCEH Debtors and

the DIP Lenders in connection with the DIP Facility, such as liens on unencumbered assets

(including proceeds of Avoidance Actions) and a waiver of the doctrine of marshaling and

section 506(c) claims, are unlikely to have any impact on the recoveries of unsecured creditors if

the TCEH Debtors' views as to over-collateralization are correct.  In the event, however, that

these views are incorrect, or the TCEH Debtors find themselves beset by crises during the

pendency of these Cases, there is no question that lenders who are new to the TCEH Debtors'

capital structure and who fund these Cases for the benefit of the TCEH Debtors' estates should,

under no circumstance, bear the risk of non-payment in an effort to support a utilitarian ideal that

all stakeholders share in estate recoveries, notwithstanding legal entitlements and the facts of

these Cases.

3.      While the Objectors must recognize that the DIP Lenders are not the Prepetition First Lien Creditors, they go to great lengths to link the DIP Lenders to the Prepetition First Lien Creditors, to lodge inapplicable objections to a clean, new money DIP Facility, and to characterize the DIP Facility as a roll up of prepetition indebtedness because the TCEH Debtors intend to use proceeds of the DIP Facility to make adequate protection payments to the Prepetition First Lien Creditors.

4.      There is no question that the Final Order can and should be entered on the terms set forth therein.  Indeed, while the Objectors contest the propriety of the adequate protection payments and, thereby, the magnitude of the DIP Facility, the Objectors nowhere suggest that the economic protections provided to the TCEH DIP Agent, the DIP Lenders, and the DIP L/C Issuers are anything but fair, reasonable, and the product of arm's length negotiations.  Nor could the Objectors credibly make any such argument given the vigorous and lengthy marketing process, which resulted in a DIP Facility that reflects terms, economic and otherwise, that are favorable to the estates.  The Objectors are thus left with no option but to complain that the terms of the DIP Facility should be even more favorable to the TCEH Debtors and their estates.  Acceding to their demands, which are made without any justification or citation to evidence, would unjustly enrich unsecured creditors.

5.      At bottom, the Objectors ask this Court to disregard the reasonable bargain struck between the TCEH Debtors and the Left Lead Arrangers by stripping certain of the key protections afforded to the DIP Lenders in exchange for the substantial benefits provided to the TCEH Debtors and their estates.  In other words, the Objectors ask this Court to ignore the proper exercise of the TCEH Debtors' sound business judgment by excising certain market standard provisions of the DIP Facility that were heavily negotiated to incentivize the DIP

Lenders to join the capital structure to provide one of the largest DIP loans in the history of the United States.  The Court should not accept the Objectors' invitation to undo this bargain.

6.    Accordingly, for the reasons set forth herein, the TCEH DIP Agent respectfully submits that the Court should defer to the TCEH Debtors' business judgment in entering into the DIP Facility, approve the DIP Facility on a final basis, and overrule the Objections in their entirety.

## <u>REPLY</u>

### I.    Final Order Appropriately Grants the DIP Lenders Liens on Unencumbered Assets and Proceeds of Avoidance Actions

7.    As is commonplace in DIP orders, paragraph 7(a) of the Final Order grants a lien on substantially all property of the TCEH Debtors' estates.  (Final Order ¶ 7(a).) The prevalence of this provision notwithstanding, the Objectors nonetheless argue that the Court should not permit the TCEH Debtors to grant liens on unencumbered assets, focusing specifically on approximately $150 million of unencumbered cash held at Union Bank, N.A. (the "<u>Segregated Cash</u>"), commercial tort claims, and any proceeds or property recovered in respect of Avoidance Actions, for two primary reasons.  <u>First</u>, the $4.475 billion DIP Facility allegedly does not provide "proportionate" benefit to the TCEH Debtors' estates, having been provided mainly for the benefit of the Prepetition First Lien Creditors.[2]  <u>Second</u>, in the absence of a "proportionate" benefit to the TCEH Debtors' estates, the TCEH Debtors cannot burden their estates with the DIP Facility and thereby eliminate any chance of recovery for out-of-the-money stakeholders.  Both arguments are wholly unavailing.[3]

---

[2]    This, according to the Creditors' Committee, should cause the Court to evaluate the DIP Facility as though it were a roll up of prepetition debt.  This hardly justifies rebuttal.

[3]    The TCEH DIP Agent disagrees with the Objectors' contention that a $4.475 billion DIP Facility, consisting entirely of new loans, provides no "proportionate" benefit to the TCEH Debtors and their estates, and, in any event, understands that the TCEH Debtors intend to contest this contention.

8.      Recognizing the natural reluctance of lenders to extend credit to a company in bankruptcy, Congress structured section 364 of the Bankruptcy Code with a series of "incentives" and "inducements" (including liens on unencumbered assets) that a debtor may offer to attract postpetition credit.  Tully Constr. Co. v. Cannonsburg Envtl. Assocs., Ltd. (In re Cannonsburg Envtl. Assocs., Ltd.), 72 F.3d 1260, 1267 (6th Cir. 1996); Sapir v. CPQ Colorchrome Corp., Div. of Coppinger Color Lab (In re Photo Promotion Assocs., Inc.), 87 B.R. 835, 839 (Bankr. S.D.N.Y. 1988).  Limiting such incentives and inducements, as the Objectors attempt to do, "undercuts the goals of bankruptcy and would cause a chilling effect on DIP lending."  In re Silver Cinemas Int'l, Inc., No. 00-1978, at 4 (Bankr. D. Del. Aug. 11, 2000).[4]

9.      Indeed, Congress established a priority scheme whereby a debtor must first attempt to obtain financing secured by unencumbered property before granting a priming lien on encumbered property.  Rather than prohibiting the granting of postpetition liens on unencumbered assets, section 364(c) expressly provides that a court may authorize the obtaining of credit or the incurring of debt "secured by a lien on property of the estate that is not otherwise subject to a lien." 11 U.S.C. § 364(c)(2).  In fact, section 364 provides that a priming lien may be granted only if the debtor cannot obtain financing secured by either a lien on unencumbered property or a junior lien on encumbered property.  11 U.S.C. § 364(d).  Therefore, the granting of liens on the Segregated Cash and commercial tort claims respects the statutory preference.

10.     Aware that the Bankruptcy Code plainly authorizes, and even encourages, the granting of a lien on the Segregated Cash and the commercial tort claims, the Objectors spend most of their time attacking the propriety of granting a lien on proceeds of avoidance actions.  In that respect, the Objectors contend that liens on proceeds of avoidance actions are inconsistent with the scope of a debtor's avoidance powers.  The Objectors also contend that

---

[4]      Attached hereto as Exhibit A.

avoidance actions do not constitute property of the estate, but rather, rights that may be exercised for the benefit of a debtor's creditors.  The former contention is not supported by the weight of existing case law.  The latter contention is inapposite, because the precedent cited in support of such contention addresses the propriety of granting liens on, or assigning, avoidance actions, as opposed to the propriety of granting liens on proceeds of avoidance actions.  The distinction is not merely one of semantics.  The difference between granting a lien on avoidance actions and granting a lien on proceeds of avoidance actions is who controls the prosecution and potential settlement of any actual litigation.  And by having a lien only on the proceeds, the TCEH DIP Agent would never be in a position to control the prosecution and settlement of such actions.  Importantly, not a single case to which the Objectors cite stands for the proposition that a DIP lender should not receive a lien on proceeds of avoidance actions.

11.     As discussed, section 364(c) permits a debtor to grant a DIP lender liens on "property of the estate."  11 U.S.C. § 364(c)(2).  Proceeds of avoidance actions are property of a debtor's estate under section 541(a)(3) of the Bankruptcy Code, which provides that any interest in property that a trustee recovers in an avoidance action under section 550 of the Bankruptcy Code is property of the estate.  11 U.S.C. § 541(a)(3).  Therefore, like all other property of the estate, proceeds of avoidance actions may be pledged to secure the claims of DIP lenders.  See, e.g., In re AppliedTheory Corp., Nos. 02–11868 (REG) through 02–11874(REG), 2008 WL 1869770, at *1 (Bankr. S.D.N.Y. Apr. 24, 2008) ("Of course those assets [i.e., proceeds of avoidance actions] started out unencumbered.  But those assets can thereafter be encumbered (or made available to satisfy superpriority claims) . . . ."); Official Unsecured Creditors' Committee v. Northern Trust Co. (In re Ellingsen MacLean Oil Co.), 98 B.R. 284, 291 (Bankr. W.D. Mich. 1989) ("Property of the estate includes preferences recovered by the trustee."); see also In re Silver Cinemas Int'l, Inc., No. 00-1978, at 4 ("postpetition liens may be

extended to avoidance actions.").[5]  Indeed, one court expressed its "surprise" when a creditors'

committee attempted to argue otherwise.  See In re AppliedTheory Corp., 2008 WL 1869770, at

*1 ("I was surprised to see the Creditors' Committee arguing that under no circumstances could

the Lenders have a claim on the proceeds of avoidance actions and other initially unencumbered

assets . . . .").

12.     To undercut this well-settled principle, however, the Objectors contend

that proceeds of avoidance actions should inure solely to the benefit of unsecured creditors and

should not be used to benefit the estate as a whole (including secured creditors).  There is no

compelling (if any) authority in this Circuit or otherwise to substantiate this position.  See, e.g.,

Trans World Airlines, Inc. v. Travellers Int'l AG. (In re Trans World Airlines, Inc.), 163 B.R.

964, 972 (Bankr. D. Del. 1994) ("Section 550(a) requires a benefit to the 'estate,' not to

creditors.  'Estate' is a broader term than 'creditors.'  There is no requirement that an avoidance

action recovery be distributed (or 'committed') in whole or in part to creditors.  Indeed, the Code

clearly contemplates otherwise."); Rafool v. Propack Sys., LLC (In re Fleming Packaging

Corp.), No. 05–8124, 2007 WL 4556985, at *6 (Bankr. C.D. Ill. Dec. 20, 2007) ("This Court

does not consider Section 550(a)'s 'for the benefit of the estate' phraseology as a statutory

requirement that the unsecured creditors benefit directly from the recovery of an avoided

transfer, i.e., that the recovered funds end up in the pockets of the unsecured creditors.").

13.     The Objectors cite to a handful of Third Circuit cases in an attempt to

bestow the imprimatur of the Third Circuit on their unsupportable position.  Even a cursory

---

[5]     In fact, even the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules") recognize that financing orders may grant liens on avoidance actions (relief far more extreme than what is being requested in the DIP Motion) by requiring a debtor to highlight any provision in cash collateral and financing orders "that immediately grant to the prepetition secured creditor liens on the debtor's claims and causes of action arising under 11 U.S.C. §§ 544, 545, 547, 548 and 549."  Del. Bankr. L.R. 4001-2(a)(i)(D).  Of course, the Local Rules are not concerned with provisions in financing orders that grant liens on avoidance actions or proceeds thereof to new money DIP lenders (as opposed to prepetition secured creditors).

review of such cases, however, reveals that the Third Circuit has determined that the proceeds of

avoidance actions are meant to benefit the estate as a whole (both secured and unsecured

creditors alike):

- Majestic Star Casino v. Barden Dev., Inc. (In re The Majestic Star Casino, LLC), 716 F.3d 736, 761 n.26  (3d Cir. 2013) (noting that "a debtor may avoid transfers and recover transferred property or its value only if the recovery is 'for the benefit of the estate.'" (citation omitted)).

- Official Comm. of Unsecured Creditors of Cybergenics Corp. v. Chinery, 330 F.3d 548, 580 (3d Cir. 2003) (holding that "bankruptcy courts can authorize creditors' committees to sue derivatively to avoid fraudulent transfers for the benefit of the estate.").

- Buncher Co. v. Official Comm. of Unsecured Creditors of GenFarm Ltd. P'ship IV, 229 F.3d 245, 250 (3d Cir. 2000) (stating that "[t]he purpose of fraudulent conveyance law is to make available to creditors those assets of the debtor that are rightfully a part of the bankruptcy estate, even if they have been transferred away.").

- Official Comm. of Unsecured Creditors of Cybergenics Corp. v. Chinery (In re Cybergenics Corp.), 226 F.3d 237, 245 (3d Cir. 2000) (noting that a debtor in possession is empowered to pursue fraudulent transfer claims "for the benefit of all creditors.").

Nothing in the aforementioned cases even begins to suggest that "for the benefit of the estate" or

"creditors" means "for the benefit of unsecured creditors alone."

14.       Each of the other cases cited by the Objectors is similarly unavailing

because they (a) address prepetition secured lenders as opposed to new money DIP lenders or

(b) ignore the distinction between liens on avoidance actions and the proceeds thereof:

- In Innkeepers, the court held that, in the context of a cash collateral order, prepetition lenders were not entitled to superpriority claims with respect to avoidance actions or the proceeds thereof.  Tr. of Hrg. at 14:22-15:4, In re Innkeepers USA Trust, No. 10-13800 (Bankr. S.D.N.Y. Sept. 2, 2010), a copy of the relevant portions of which is attached to the UCC Objection as Exhibit B.  Putting aside whether Innkeepers should be simply limited to its facts, the court did not address whether DIP lenders are entitled to liens on the proceeds of avoidance actions.

- The Creditors' Committee's reliance on *dicta* in Adams for the proposition that "the grant of a superpriority claim to a pre-petition secured creditor violates the Code's

policy of equality of distribution, particularly where there is no showing that such a grant will benefit the debtors' bankruptcy estate" is also not dispositive.  In re Adams, 275 B.R. 274, 283 (Bankr. N.D. Ill. 2002).  No prepetition security interest is implicated here, and the issue in Adams was whether the prepetition creditor was entitled, after its repossession and sale of vehicles that secured its claim, to a superpriority claim to cover the deficiency price received from the sales of vehicles.  Even if Adams was factually on all fours with the circumstances here, which the TCEH DIP Agent respectfully submits is not the case, the court in Adams did not consider the propriety of granting postpetition liens on the proceeds of avoidance actions to prepetition lenders, let alone to DIP lenders.

- In Goold, the court held that a DIP lender could not be granted a security interest in the debtor's preference actions.  Official Comm. of Unsecured Creditors v. Goold Elecs. Corp., No. 93 C 4196, 1993 WL 408366, at *4 (N.D. Ill. Sept. 22, 1993).  The TCEH DIP Agent is not seeking a lien on the TCEH Debtors' avoidance actions, but rather, is only seeking a lien on the proceeds of avoidance actions.

- In Sun Island, the court addressed the ability of a prepetition secured lender to recover the proceeds of preference actions, a situation wholly inapposite to these Cases, as it does not consider the propriety of granting postpetition liens on the proceeds of avoidance actions to DIP lenders.  Hennessy v. Kennedy (In re Sun Island Foods), 125 B.R. 615 (Bankr. D. Haw. 1991).

- Similarly, in Integrated Testing, the court held that a prepetition security interest did not attach to recoveries of preference actions, which also is inapplicable given that no prepetition security is implicated here.  Mellon Bank (East), N.A. v. Glick (In re Integrated Testing Prods. Corp.), 69 B.R. 901, 905 (D.N.J. 1987).

- In Sweetwater, the district court held that a plan provision that gave a third party the right to enforce avoidance claims was invalid because, among other reasons, avoiding powers are not assignable.  Robison v. First Fin. Capital Mgmt. Corp. (In re Sweetwater), 55 B.R. 724, 731 (D. Utah 1985) ("Sweetwater I").  Aside from the fact that Sweetwater I did not address whether prepetition lenders, let alone DIP lenders, may receive a lien on proceeds of avoidance actions, the holding of Sweetwater I was later reversed by the Tenth Circuit, a critical fact that was not disclosed to the Court by the Ad Hoc Group.  See Citicorp Acceptance Co. v. Robison (In re Sweetwater), 884 F.2d 1323, 1327 (10th Cir. 1989) ("Sweetwater II") (stating that "avoidance claims are also claims of the estate.").  Indeed, the Tenth Circuit in Sweetwater II explicitly recognized that avoidance actions may be "used to satisfy the administrative claimants, who have priority over other unsecured creditors."  Id.

- In Sapolin Paints, the court recognized that a debtor cannot assign the right to maintain a preference action (obviously not the issue under consideration here), but also noted that a decision to void a preference is "a decision that is to be made for the benefit of the creditors," secured and unsecured alike.  United Capital Corp. v. Sapolin Paints, Inc. (In re Sapolin Paints, Inc.), 11 B.R. 930, 937, 939 (Bankr.

E.D.N.Y. 1981).

15.     It is therefore not surprising that, in determining how to distribute the

proceeds of avoidance actions, courts have consistently held that such distributions must be made

to secured and unsecured creditors alike, subject only to the order of their priority.  See, e.g.,

Moore v. Bay, 284 U.S. 4, 5 (1931) ("[W]hat thus is recovered for the benefit of the estate is to

be distributed in 'dividends of an equal per centum on all allowed claims, except such as have

priority or are secured.'" (citation omitted); Ivester v. Miller, 398 B.R. 408, 430 (M.D.N.C.

2008) ("Any property the Trustee recovers as a result of the avoided transfers remains subject to

any valid liens and must be distributed to creditors in accordance with their order of priority.");

In re Amtron, Inc., 192 B.R. 130, 132-33 (Bankr. D.S.C. 1995) ("[O]nce a property comes back

into the estate, it is available to marshal among unsecured creditors, *subject first* to the right of

payment of secured creditors with perfected liens on the property."); In re Figearo, 79 B.R. 914,

918 (Bankr. D. Nev. 1987) ("Without question, any property recovered by the trustee as a result

of an avoided transfer must be distributed to creditors in their order of priority to the extent the

estate has equity in the property recovered.").  In fact, at least one case cited by the Objectors,

Vogel Van & Storage, expressly supports this view, by stating that the proceeds of a preference

action "will be added to the estate and the estate as a whole will be divided between creditors

according to the dictates of the [Bankruptcy] Code."  McCarthy v. Navistar Fin. Corp. (In re

Vogel Van & Storage, Inc.), 210 B.R. 27, 33, 34 (N.D.N.Y. 1997) (holding that trustees may

"'deputize' a creditor to sue to avoid preferences on the trustee's behalf, as long as the fruits of

the action belong to the estate, and the trustee retains control over the action").

16.     Given the foregoing principles, it is thus not uncommon for courts in this

District to grant liens on unencumbered property, including the proceeds of avoidance actions.

See, e.g., In re Ablest Inc., No. 14-10717 (KJC) (Bankr. D. Del. Apr. 23, 2014); In re Southern

Air Holdings, Inc., No. 12-12690 (CSS) (Bankr. D. Del. Oct. 25, 2012); In re CHL, Ltd., No. 12-

12437 (KJC) (Bankr. D. Del. Sept. 24, 2012); In re Bicent Holdings, LLC, No. 12-11304 (KG)

(Bankr. D. Del. May 16, 2012); In re Nebraska Book Co., No. 11-12005 (PJW) (Bankr. D. Del.

July 21, 2011); In re Xerium Techs., Inc., No. 10-11031 (KJC) (Bankr. D. Del. Apr. 28, 2010).

   17. The only issue then is whether the facts and circumstances of these Cases

justify the granting of liens on the TCEH Debtors' unencumbered assets, or whether, as the

Objectors suggest, the DIP Lenders should be exposed to the risk of impairment if this

reorganization fails and the remaining DIP Collateral is insufficient to pay the DIP Obligations in

full in cash.  The TCEH DIP Agent respectfully submits that such grant is particularly

appropriate here for two principal reasons.  First, as discussed above, section 364 of the

Bankruptcy Code contemplates a clear order of priority when encumbering assets, whereby a

debtor must first attempt to grant a lien on unencumbered assets before granting a priming lien

on encumbered assets.  This is because the granting of liens on unencumbered assets obviates the

need to prime security interests in, and liens on, already encumbered assets and, importantly,

provide adequate protection on account thereof.  The Objectors, however, would have this Court

ignore section 364 and force the DIP Lenders to forgo liens on unencumbered assets.  Such

request, if granted, would turn section 364 on its head.

   18. Second, the merits of the Objectors' request vis-à-vis the Prepetition First

Lien Creditors aside (with respect to which the TCEH DIP Agent expresses no view), the merits

of such request vis-à-vis the DIP Lenders is particularly egregious and unwarranted here, where

the DIP Lenders have agreed to provide up to $4.475 billion in new loans to the TCEH Debtors

to fund their reorganization.  The TCEH DIP Agent is, of course, hopeful that the DIP Facility is

over-collateralized as the TCEH Debtors assert.  In such an eventuality, junior creditors,

including the Objectors' constituency, are not harmed by the granting of the DIP Liens on the

unencumbered assets.  To ask the DIP Lenders, however, to bear the risk in the event that the

TCEH Debtors are wrong and permit unsecured creditors to recover ahead of the entities that are

funding the TCEH Debtors' reorganization, is highly inequitable and would result in an

untenable outcome.

19.     Accordingly, the TCEH DIP Agent respectfully requests that the Court

grant the DIP Liens on all unencumbered assets, to the extent set forth in the DIP Credit

Agreement.

## II.    Final Order Appropriately Waives Marshaling Rights With Respect to TCEH DIP Agent, DIP Lenders, and DIP L/C Issuers

20.     The Objectors summarily[6] assert that, to the extent the Court determines

that the DIP Lenders should receive a lien on the TCEH Debtors' unencumbered property,

including the Segregated Cash, commercial tort claims, and proceeds of Avoidance Actions, it

would be inappropriate for this Court to approve the TCEH Debtors' waiver of their rights under

the common law doctrine of marshaling.[7]

21.     As explained by this Court, the doctrine of marshaling is one that operates

only for the benefit of a debtor's secured creditors.  Simon & Schuster, Inc. v. Advanced Mktg.

Servs., Inc. (In re Advanced Mktg. Servs., Inc.), 360 B.R. 421, 427 (Bankr. D. Del. 2007)

("[U]nsecured creditors cannot invoke the equitable doctrine of marshaling." (citation omitted)).

Thus, whether the Final Order includes limitations on the ability to marshal should be of no

consequence to unsecured creditors.  Indeed, marshaling of assets "requires the senior secured

---

[6]     Indeed, each of the Creditors' Committee and Law Debenture relegated their arguments on this point to a footnote, with no citations to legal authority.  The Ad Hoc Group devoted two paragraphs in support of their assertions.

[7]     Paragraph 32 of the Final Order provides that "[t]he DIP Agent, the DIP Lenders, and the DIP L/C Issuers shall not be subject to the equitable doctrine of 'marshaling' or any other similar doctrine with respect to any of the DIP Collateral, and proceeds shall be received and applied pursuant to the terms of the DIP Documents notwithstanding any other agreement or provision to the contrary."  (Final Order ¶ 32.)

creditor to first collect its debt against the collateral other than that in which the junior secured creditor holds an interest, thereby leaving that collateral for the junior secured creditor's benefit." Id. at 427 n.8 (citation omitted).  The purpose of the doctrine is to prevent the potentially arbitrary actions of a senior secured creditor from destroying or otherwise impinging upon the rights of a junior secured creditor.  See, e.g., Meyer v. United States, 375 U.S. 233, 237 (1963).

22.    For this reason, nearly every court to address this issue has concluded that an unsecured creditor has no standing to invoke the doctrine of marshaling.  See, e.g., St. Paul Fire & Marine Ins. Co. v. Fort Vancouver Plywood Co. (In re Brazier Forest Prods., Inc.), 921 F.2d 221, 223 (9th Cir. 1990) ("Under Washington law, only secured or lien creditors can petition a court to marshal a debtor's assets."); Galey & Lord Inc. v. Arley Corp. (In re Arlco, Inc.), 239 B.R. 261, 274 (Bankr. S.D.N.Y. 1999) (noting that an unsecured creditor has no standing to invoke the doctrine of marshaling); Craner v. Marine Midland Bank, N.A. v. Craner (In re Craner), 110 B.R. 111, 123 (Bankr. N.D.N.Y. 1988), rev'd in part on other grounds, 110 B.R. 124 (N.D.N.Y. 1989) ("Under the majority view, an unsecured creditor may not avail himself of the doctrine of marshalling assets as it is basically a protection for junior secured creditors.").

23.    Conceding, as it must, that it does not have standing to invoke the doctrine of marshaling, the Ad Hoc Group nonetheless attempts to circumvent this roadblock by asserting that, since debtors may invoke the doctrine of marshaling by virtue of sections 544(a) and 1107 of the Bankruptcy Code, unsecured creditors may be granted derivative standing to do so, as well.

24.    At least one court, however, that has considered whether section 544 of the Bankruptcy Code enables a trustee to pursue marshaling has held that it does not.  See, e.g., Fed. Land Bank of Columbia v. Tidwell (In re McElwaney), 40 B.R. 66 (Bankr. M.D. Ga. 1984).

13

The court in <u>McElwaney</u> reasoned:

> The strong-arm provision is designed to protect general unsecured creditors against secret, unperfected liens.  Otherwise, the Bankruptcy Code does not vest the trustee with better rights than belonged to the debtor.  In the instant case, the Court notes that there are no secret liens.  Rather, the Trustee is attempting to use his status under section 544 to compel the marshaling of assets for the benefit of Debtor's unsecured creditors and to the detriment of a perfected junior secured creditor of Debtor.
>
> . . . .
>
> To allow the Trustee to invoke the marshaling doctrine, by virtue of his status as a hypothetical lien creditor, would be a use of the strong-arm clause not contemplated by Congress.  In this Court's opinion, the Trustee's construction would frustrate the Code's policy by enriching unsecured creditors over secured creditors.

40 B.R. at 70-71 (citations omitted).  In addition, although not specifically discussing section 544 of the Bankruptcy Code, at least one other court has held that a trustee may not seek to use marshaling for the benefit of the debtor's estate to the detriment of a secured and perfected junior creditor.  <u>Canal Nat'l Bank v. Larry's Equip. Serv., Inc. (In re Larry's Equip. Serv., Inc.)</u>, 23 B.R. 132, 134 (Bankr. D. Me. 1982) ("Marshaling is not equitable if applied for the benefit of a trustee to the detriment of a secured and properly perfected junior creditor.").[8]

---

[8] The three cases to which the Ad Hoc Group cites in support of its contention to the contrary are unconvincing.  The court in <u>Berman v. Green (In re Jack Green's Fashions for Men Big and Tall, Inc.)</u>, 597 F.2d 130, 133 (8th Cir. 1979), permitted marshaling for the benefit of unsecured creditors based on equitable principles, without any discussion of section 544.  In any event, <u>Jack Green's</u> relies heavily on an unpublished lower court opinion and disposes of the marshaling issue in a short paragraph.  <u>See</u> <u>DuPage Lumber & Home Improvement Ctr. Co. v. Georgia-Pacific Corp.</u>, 34 B.R. 737, 741 (N.D. Ill. 1983). Consequently, the case has been widely criticized.  <u>See, e.g.</u>, <u>InterFirst Bank Fannin v. Bernell (In re Mesa Intercontinental, Inc.)</u>, 79 B.R. 669, 672 n.1 (Bankr. S.D. Tex. 1987); <u>Peoples Bank of Tuscaloosa v. The Computer Room, Inc. (In re The Computer Room, Inc.)</u>, 24 B.R. 732, 734 (Bankr. N.D. Ala. 1982). Moreover, the view adopted by the courts in <u>Official Committee of Unsecured Creditors of America's Hobby Center, Inc. v. Hudson United Bank (In re America's Hobby Center, Inc.)</u>, 223 B.R. 275 (Bankr. S.D.N.Y. 1998), and <u>In re Newcorn Enterprises Ltd.</u>, 287 B.R. 744 (Bankr. E.D. Mo. 2002), the other two cases cited by the Ad Hoc Group, has been questioned on the basis that there is "no indication in the legislative history of the Bankruptcy Code that section 544(a) was to be stretched to confer standing upon the trustee to invoke marshaling in favor of unsecured creditors."  <u>In re Blagg</u>, 372 B.R. 502, 508 (Bankr. D. Kan. 2007) (citation omitted).

25.     And it is not surprising that courts analyzing the issue have militated against the argument espoused by the Ad Hoc Group (i.e., a limitation on marshaling might preclude a party in interest from someday seeking standing to pursue marshaling on behalf of the TCEH Debtors or their estates).  Taken to its logical extreme, such an assertion would necessarily mean that a debtor could never settle any claim or waive any right or entitlement simply because, at some unspecified date in the future, a committee or other party might seek to invoke alleged rights under section 544(a).  This is plainly not the law.

26.     Even assuming, arguendo, that a representative of the debtor's estate could pursue marshaling as a hypothetical lien creditor, the Objectors have not provided any reason as to why the TCEH Debtors (on behalf of themselves and their estates) should not be permitted to waive the right to do so as they propose to do here.  The Objectors instead appeal to their myopic definition of "fairness," contending that, without invoking the doctrine of marshaling, the TCEH DIP Agent, the DIP Lenders, and the DIP L/C Issuers will be able to liquidate, in a downside scenario, the unencumbered property first to satisfy the DIP Obligations.  The ability of the Objectors to impose the doctrine of marshaling on the TCEH DIP Agent, the DIP Lenders, and the DIP L/C Issuers should not rise and fall on the projected recoveries of unsecured creditors.  Whether unsecured creditors are in or out of the money is entirely irrelevant to this determination.  However unfair it might appear to unsecured creditors that the DIP Obligations may, in part, be satisfied out of the unencumbered property, the TCEH DIP Agent, the DIP Lenders, and the DIP L/C Issuers will have earned the right to determine how to best recover on their secured claims after lending the TCEH Debtors' estates up to $4.475 billion to fund these Cases.  The TCEH Debtors have exercised sound business judgment in determining to waive the doctrine of marshaling in exchange for the proceeds of the DIP Facility, and such business judgment should be respected by the Court.

27.     Accordingly, as other courts in this District have done time and time again, this Court should approve the waiver of the doctrine of marshaling set forth in the Final Order.  See, e.g., In re Ablest Inc., No. 14-10717 (KJC) (Bankr. D. Del. Apr. 23, 2014); In re Southern Air Holdings, Inc., No. 12-12690 (CSS) (Bankr. D. Del. Oct. 25, 2012); In re CHL, Ltd., No. 12-12437 (KJC) (Bankr. D. Del. Sept. 24, 2012); In re Bicent Holdings, LLC, No. 12-11304 (KG) (Bankr. D. Del. May 16, 2012); In re Nebraska Book Co., No. 11-12005 (PJW) (Bankr. D. Del. July 21, 2011); In re Xerium Techs., Inc., No. 10-11031 (KJC) (Bankr. D. Del. Apr. 28, 2010).

### III.     Final Order Appropriately Waives Section 506(c) Rights With Respect to DIP Collateral

28.     Paragraph 31 of the Final Order provides that

No costs or expenses of administration of the Cases or any future proceeding that may result therefrom, which have been or may be incurred in the Cases at any time, shall be charged against the DIP Agent, the DIP Lenders, or the DIP L/C Issuers, or any of their respective claims or the DIP Collateral, pursuant to section 105 or 506(c) of the Bankruptcy Code, or otherwise, without the prior written consent of the DIP Agent, the DIP Lenders, or the DIP L/C Issuers, as applicable, and no such consent shall be implied from any other action, inaction, or acquiescence by the DIP Agent, any DIP Lender, and any DIP L/C Issuer.

(Final Order ¶ 31.)  Many courts in this District and other districts have routinely endorsed section 506(c) waivers in final DIP financing orders, using virtually the same formulation as the Final Order.  See, e.g., In re Ablest Inc., No. 14-10717 (KJC) (Bankr. D. Del. Apr. 23, 2014); In re Southern Air Holdings, Inc., No. 12-12690 (CSS) (Bankr. D. Del. Oct. 25, 2012); In re CHL, Ltd., No. 12-12437 (KJC) (Bankr. D. Del. Sept. 24, 2012); In re Bicent Holdings, LLC, No. 12-11304 (KG) (Bankr. D. Del. May 16, 2012); In re Nebraska Book Co., No. 11-12005 (PJW) (Bankr. D. Del. July 21, 2011); In re Xerium Techs., Inc., No. 10-11031 (KJC) (Bankr. D. Del. Apr. 28, 2010).

29.    Recognizing that the 506(c) waiver is not meant to address the situation here (i.e., DIP Lenders funding $4.475 billion of new money to fund these Cases and providing at least, and subordinating their liens and claims to, a $50 million professional fee carve out, among other carve outs), the Creditors' Committee did not interpose an objection to the Final Order on this ground.  The same cannot be said for Law Debenture and the Ad Hoc Group, each of which once again demonstrates an unwillingness to distinguish the DIP Lenders from the Prepetition First Lien Creditors.  Indeed, Law Debenture, without citing to any legal authority, and the Ad Hoc Group, citing to legal authority addressing only prepetition creditors, and not DIP lenders,[9] each objects to this relatively standard provision.

30.    The paucity of case law providing them no succor, Law Debenture and the Ad Hoc Group retreat to arguing that section 506(c) claims should not be waived with respect to parties for whose benefit the chapter 11 cases are being run.  But even this last line of defense does not hold, given the limited role of the DIP Lenders in these Cases.  Accordingly, these objections should be summarily overruled.

31.    It is well established that section 506(c) claims are available to, and are an asset of, solely the debtor, and not any creditor or other party in interest.  See Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A., 530 U.S. 1, 6 (2000) ("[T]he trustee is the only party empowered to invoke [section 506(c)]."); see also Smart World Techs., LLC v. Juno Online Servs., Inc. (In re Smart World Techs., LLC), 423 F.3d 166, 181 (2d Cir. 2005) ("Section 506(c) . . . allows only the 'trustee,' or debtor-in-possession, to take advantage of this exception."); Debbie Reynolds Hotel & Casino, Inc. v. Calstar Corp. (In re Debbie Reynolds Hotel & Casino, Inc.), 255 F.3d 1061, 1065 (9th Cir. 2001) ("Following Hartford Underwriters,

---

[9]    Given the inapplicability of the precedent cited by the Ad Hoc Group to the TCEH DIP Agent's 506(c) waiver request, such precedent need not be addressed in further detail herein.

we hold that [administrative claimant] had no standing to seek a surcharge pursuant to § 506(c).").

32.    In this case, the section 506(c) waiver, which is an integral part of the financing arrangement, was negotiated together with an agreement to fund, after the occurrence of an Event of Default, (a) the current payment of allowed professional fees and expenses incurred before the occurrence of such Event of Default and (b) an unprecedented $50 million carve out for professional fees and expenses, up to $50,000 for the fees and expenses of a chapter 7 trustee, and all fees required to be paid to the Clerk of the Court and the Office of the United States Trustee.  Importantly, the DIP Lenders also agreed to subordinate their liens and superpriority claims to up to $1.1 billion required to be paid to the RCT, which will enable the RCT to be paid before the DIP Lenders.  Thus, the TCEH Debtors appropriately elected, as an exercise of their sound business judgment, to include the section 506(c) waiver in the Final Order.

**IV.    Other Issues Raised by Creditors' Committee**

33.    Not satisfied with attacking the core elements of the DIP Facility, the Creditors' Committee also threw in the veritable "kitchen sink," in an attempt to cherry-pick provisions from the integrated financing package.  Aside from the fact that the attacks are devoid of any legal support or justification for denuding the DIP Facility of key lender protections that are routinely granted, the objections ignore that the terms of the DIP Facility and associated agreements resulted from negotiations by the TCEH Debtors' sophisticated financing team and their professional advisors.  Indeed, the TCEH DIP Agent heavily negotiated with the TCEH Debtors the bundle of rights and protections attendant to the DIP Facility in good faith, at arm's length, over the course of several months, and against the backdrop of multiple competing DIP proposals.  Such rights and protections, as reflected in the Final Order and the DIP Credit

Agreement, were an integral part of the overall financing package and a critical component of the

DIP Lenders' decision to fund into the DIP Facility.  The Creditors' Committee's demands to

take the benefits of the DIP Facility, while rejecting its burdens, should not be countenanced.[10]

Accordingly, the TCEH DIP Agent respectfully requests that the Court overrule the remaining

objections.

## CONCLUSION

For all the foregoing reasons, the TCEH DIP Agent respectfully requests that the

Court (i) overrule the Objections, (ii) grant the DIP Motion and enter the Final Order, and

(iii) grant such other and further relief as the Court may deem just.

Dated: June 2, 2014

**DRINKER BIDDLE & REATH LLP**

/s/ Howard A. Cohen
Howard A. Cohen (DE 4082)
222 Delaware Ave., Ste. 1410
Wilmington, Delaware 19801-1621
Telephone:  (302) 467-4200
Facsimile:   (302) 467-4201

- and -

MILBANK, TWEED, HADLEY & McCLOY LLP
Dennis F. Dunne
Evan R. Fleck
Karen Gartenberg
1 Chase Manhattan Plaza
New York, New York 10005
Telephone: (212) 530-5000
Facsimile: (212) 530-5219

*Attorneys for Citibank, N.A., as TCEH DIP Agent*

---

[10]    By not specifically addressing the remainder of the Creditors' Committee's line item by line item attack on the Final Order and the DIP Credit Agreement, the TCEH DIP Agent is by no means waiving its rights to be heard on these issues at or prior to the Final Hearing.  The TCEH DIP Agent expressly reserves all of its rights to raise additional arguments either at or prior to the Final Hearing.

## Exhibit A

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

IN RE                                  :
                                       :  Chapter 11
SILVER CINEMAS INTERNATIONAL,          :
INC., et al.,                          :
                                       :  Case No. 00-1978 JJF
            Debtors.                   :

## MEMORANDUM ORDER

Presently before the Court is the Debtors' Motion for
Authority to Obtain Secured Postpetition Financing, Use Cash
Collateral, and Repay Prepetition Secured Claim (D.I. 17).  By way of
their motion, the Debtors request that the Court enter an interim
order permitting the Debtors to: (1) obtain secured postpetition
financing; (2) repay prepetition secured debt; and (3) use cash
collateral until such refinancing has been completed.

The United States Trustee ("the Trustee") has filed an
objection to this application.  (D.I. 114).  The Trustee objects to
an order which would authorize the Debtors from obtaining secured
postpetition financing from Foothill Capital Corporation
("Foothill").  In support of her motion, the Trustee argues that the
Debtors are unable to adequately secure the new borrowings through
assets other than the avoidance actions.  Emphasizing that federal
courts routinely reject liens on avoidance actions, or the proceeds
thereof, the Trustee objects to the entry of a Final Debtor-in-
Possession Financing Order ("DIP") that would provide Foothill with

any lien or priority position on avoidance actions.   (D.I. 114 at ¶ 7).

Section 364 of Title 11 of the United States Bankruptcy Code authorizes the trustee or debtor in possession, with court approval, to obtain credit or incur debt with: "(1) a superpriority over any or all administrative expenses; (2) security in the form of a lien on free assets; or (3)  security in the form of a junior lien on assets that are already encumbered." 3 Lawrence P. King, Collier on Bankruptcy ¶ 364.04 (15th ed. 1999).[1]

In evaluating requests under section 364(c), courts generally apply a three part test requiring a showing that: (1) the debtor cannot obtain credit unencumbered or without superpriority status; (2) the credit transactions are necessary to preserve assets of the estate; and (3) the terms of the credit agreements are fair, reasonable, and adequate.  Collier's at ¶ 364.04[1]; see also In re

---

[1]   Section 364(c) provides in relevant part that:

> [T]he court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt--
>
> > (1) with priority over any or all administrative expenses of the kind specified in section 503(b) or 507(b) of this title;
> >
> > (2) secured by a lien on property of the estate that is not otherwise subject to a lien; or
> >
> > (3) secured by a junior lien on property of the estate that is subject to a lien.

2

Crouse Group, Inc., 71 B.R. 544 (Bankr. E.D. Pa.), aff'd, 75 B.R. 553 (E.D. Pa. 1987).

The issue here is whether liens on avoidance actions are appropriate.  By way of her objection, the Trustee does not assert that the Debtors have failed to meet the three part test outlined above; rather, the Trustee argues that liens on avoidance actions have been routinely rejected by federal courts as inappropriate and overreaching.  (D.I. 114 at ¶ 6).  Consequently, the Trustee urges that the Court deny the Debtors' motion for entry of the interim and final orders authorizing postpetition financing.

After reviewing the written submissions and considering the various positions presented at the June 14 hearing, the Court concludes that financing proposed by the Debtors does not exceed the intended scope of section 364 and that the Debtors' application should be granted.

In enacting section 364, Congress recognized the natural reluctance of lenders to extend credit to a company in bankruptcy, and, therefore, designed the statute to provide "incentives to the creditor to extend post-petition credit."  Unsecured Creditors' Comm. v. First Nat'l Bank & Trust Co. of Escanaba (In re Ellingsen MacClean Oil Co.), 834 F.2d 599, 603 (6th Cir. 1987), cert. denied, 488 U.S. 817, 109 S. Ct. 55, 102 L.Ed.2d 33 (1988).  Specifically, the language of section 364 was formulated to encourage post-petition financing by providing lenders with security in the debtor's assets

3

and priority over administrative costs.   In particular, courts have
maintained that, because Chapter 11 envisions the continued operation
of a debtor's business, limiting the protections offered by section
364 undercuts the goals of bankruptcy and would cause a chilling
effect on DIP lending.   In re Florida West Gateway, Inc., 147 B.R.
817 (Bankr. S.D. Fla. 1992). Finally, in evaluating orders which
authorize the use of cash collateral, federal courts have
consistently found that postpetition liens may be extended to
avoidance actions.   See Unsecured Creditors' Comm. v. Jones Truck
Lines, Inc. 156 B.R. 608, 614 (W.D. Ark. 1992);   Official Unsecured
Creditors' Comm. v. Northern Trust Co. (In re Ellingsen MacLean Oil
Co.), 98 B.R. 284, 291-92 (Bankr. W.D. Mich. 1989);.

    This Chapter 11 case has every prospect of reorganization, or,
at the very least, a sale that would benefit the entire estate.   The
lifeline of the estate is the DIP financing, for, without it, the
estate cannot operate and manage expansion.   Through the proposed
financing, the Debtor can remain fluid and work toward a plan of
reorganization.    While the Court recognizes that fluidity also
carries with it apprehension, it is the Court's view that without the
benefit of the additional financing, the Debtors will not be able to
continue to operate and work toward stability.

    NOW, THEREFORE, IT IS HEREBY ORDERED this 11th day of August,
2000, that the Motion for Authority to Obtain Secured Postpetition

4

Financing, Use Cash Collateral, and Repay Prepetition Secured Claim

(D.I. 17) is **GRANTED**.


_____
UNITED STATES DISTRICT JUDGE