UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>ENERGY FUTURE HOLDINGS CORP., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No: 14-10979 (CSS)<br><br>(Jointly Administered)<br><br>Docket Nos. 71, 597, 632, 641, 648, 678, 725 |

**OMNIBUS RESPONSE OF WILMINGTON TRUST, N.A., IN ITS CAPACITY AS SUCCESSOR FIRST LIEN COLLATERAL AGENT, TO OBJECTIONS TO THE MOTION OF TEXAS COMPETITIVE ELECTRIC HOLDINGS COMPANY LLC AND CERTAIN OF ITS DEBTOR AFFILIATES FOR ENTRY OF INTERIM AND FINAL ORDERS (A) AUTHORIZING USE OF CASH COLLATERAL, (B) GRANTING ADEQUATE PROTECTION, (C) MODIFYING THE AUTOMATIC STAY, AND (D) <u>SCHEDULING A FINAL HEARING</u>**

Wilmington Trust, N.A., in its capacity as successor First Lien Collateral Agent ("<u>Wilmington Trust</u>" or the "<u>First Lien Collateral Agent</u>"),[2] by and through its undersigned counsel, respectfully submits this omnibus response (the "<u>Response</u>") to the following objections (collectively, the "<u>Objections</u>") filed with respect to the *Motion of Texas Competitive Electric Holdings Company LLC and Certain of its Debtor Affiliates for Entry of Interim and Final*

---

[1]   The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryant Street, Dallas Texas 75201. Due to the large number of debtors in these chapter 11 cases, which are being jointly administered on an interim basis, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

[2]   Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the *Final Order (A) Authorizing Use of Cash Collateral for Texas Competitive Electric Holdings Company LLC and Certain of its Debtor Affiliates, (B) Granting Adequate Protection, and (C) Modifying the Automatic Stay* [Docket No. 597-1] (the "<u>Final Cash Collateral Order</u>").

*Orders (A) Authorizing Use of Cash Collateral, (B) Granting Adequate Protection, (C) Modifying the Automatic Stay, and (D) Scheduling a Final Hearing* [Docket No. 71]:

    (i)    *Objection of the Official Committee of Unsecured Creditors to the Motion of Texas Competitive Electric Holdings Company LLC and Certain of its Debtor Affiliates for Entry of Interim and Final Orders (A) Authorizing Use of Cash Collateral, (B) Granting Adequate Protection, (C) Modifying the Automatic Stay, and (D) Scheduling a Final Hearing* [Docket No. 641] (the "<u>Committee Objection</u>");

    (ii)    *Objection of Law Debenture Trust Company of New York, as Indenture Trustee to (1) Motion of Texas Competitive Electric Holdings Company LLC and Certain of its Debtor Affiliates for Entry of a Final Order (A) Authorizing Use of Cash Collateral, (B) Granting Adequate Protection and (C) Modifying the Automatic Stay and (2) Motion of Texas Competitive Electric Holdings Company LLC and Certain of its Debtor Affiliates, for Entry of a Final Order (A) Approving Postpetition Financing, (B) Granting Liens and Providing Superpriority Administrative Expense Claims and (C) Modifying the Automatic Stay* [Docket No. 648] (the "<u>Unsecured Creditor Trustee Objection</u>");

    (iii)    *Supplemental Omnibus Objection of the Ad Hoc Group of TCEH Unsecured Noteholders to (I) the Motion of Texas Competitive Electric Holdings Company LLC and Certain of its Debtor Affiliates for Entry of Interim and Final Orders (A) Approving Postpetition Financing, (B) Granting Liens and Providing Superpriority Administrative Expense Claims, (C) Modifying the Automatic Stay, and (D) Scheduling a Final Hearing, and (II) the Motion of Texas Competitive Electric Holdings Company LLC and Certain of its Debtor Affiliates for Entry of Interim and Final Orders (A) Authorizing Use of Cash Collateral, (B) Granting Adequate Protection, (C) Modifying the Automatic Stay, and (D) Scheduling a Final Hearing* [Docket No. 678] (the "<u>Unsecured Noteholders Objection</u>"); and

    (iv)    *Aurelius Capital Management, LP's* ("<u>Aurelius</u>") *Limited Objection to the Motion of Texas Competitive Electric Holdings Company LLC and Certain of its Debtor Affiliates for Entry of Interim and Final Orders (A) Authorizing Use of Cash Collateral, (B) Granting Adequate Protection, (C) Modifying the Automatic Stay, and (D) Scheduling a Final Hearing* [Docket No. 632] (the "<u>Aurelius Objection</u>").

In support of this Response, the First Lien Collateral Agent respectfully states as follows:

**PRELIMINARY STATEMENT**

1. Wilmington Trust is successor to Citibank, N.A. ("Citibank") as the First Lien Collateral Agent under a Credit Agreement, dated as of October 10, 2007, by and among, inter alios, Texas Competitive Electric Holdings Company LLC ("TCEH"), as Borrower and Energy Future Competitive Holdings Company LLC and certain subsidiaries of TCEH, as Guarantors (the "Credit Agreement"), and an Amended and Restated Collateral Agency and Intercreditor Agreement, dated as of August 7, 2009 (the "Intercreditor Agreement"), under which TCEH and certain of its affiliates serve as obligors. Wilmington Trust is also successor to Citibank as the First Lien Administrative Agent under the Credit Agreement.[3]

2. The First Lien Collateral Agent joins in the *Omnibus Reply of the Ad Hoc Committee of TCEH First Lien Creditors* (the "First Lien Ad Hoc Committee") *to Objections to the Motion of Texas Competitive Electric Holdings Company LLC and Certain of its Debtor Affiliates for Entry of Interim and Final Orders (A) Authorizing Use of Cash Collateral, (B) Granting Adequate Protection, (C) Modifying the Automatic Stay, and (D) Scheduling a Final Hearing* [Docket No. 725] (the "First Lien Ad Hoc Committee Reply") with respect to the Committee Objection, the Unsecured Creditor Trustee Objection and the Unsecured Noteholders Objection (collectively, the "General Objections"). For the reasons set forth therein, the General Objections should be overruled.

3. The First Lien Collateral Agent notes that the Aurelius Objection does not object to the Debtors' use of Cash Collateral or to the amount or type of adequate protection being

---

[3] Wilmington Trust succeeded to Citibank as First Lien Collateral Agent and First Lien Administrative Agent, effective as of May 1, 2014. It is not uncommon in sophisticated credit arrangements for one financial institution to assume both roles, and Wilmington Trust has acted independently and in accord with its obligations both as First Lien Collateral Agent and as First Lien Administrative Agent. Contrary to the suggestion in the Aurelius Objection (Aurelius Objection at ¶ 3(b)), the fact that Wilmington Trust is successor First Lien Collateral Agent and First Lien Administrative Agent does not create a conflict of interest.

provided to the Prepetition First Lien Creditors in the Final Cash Collateral Order (Aurelius Objection at ¶ 2), but instead objects solely to the allocation of First Lien Adequate Protection Payments among the Prepetition First Lien Creditors.  (Id. at ¶ 3)

4. The First Lien Collateral Agent understands that the Debtors intend to revise the Final Cash Collateral Order (the "Proposed Revised Final Cash Collateral Order") to establish an escrow for the disputed portion of First Lien Adequate Protection Payments that will fully preserve and protect the rights of all Prepetition First Lien Creditors pending the resolution of the dispute between the Prepetition First Lien Creditors over the allocation of those payments. Accordingly, the Aurelius Objection should be overruled.

## JOINDER TO THE FIRST LIEN AD HOC COMMITTEE REPLY

5. The First Lien Collateral Agent hereby joins in the First Lien Ad Hoc Committee Reply to the extent it replies to the General Objections.  For the reasons stated therein, the General Objections should be overruled and the Proposed Revised Final Cash Collateral Order should be entered by the Court.

## RESPONSE TO THE AURELIUS OBJECTION

6. The Intercreditor Agreement contemplates that the First Lien Collateral Agent acts on behalf of all Prepetition First Lien Creditors (including holders of First Lien Notes) with respect to the use of cash collateral, DIP financing and adequate protection.  Section 6.1 of the Intercreditor Agreement provides, among other things, that the First Lien Collateral Agent acting at the direction of a majority of the Required Secured Parties may consent to the use of cash collateral or DIP financing and to the terms of adequate protection, and each Secured Party (i.e., each Prepetition First Lien Creditor, including holders of First Lien Notes (including Aurelius)) will be deemed to have consented to the use of such cash collateral or DIP financing and to the

4

terms of adequate protection, so long as "(i) each Secured Party retains the right to object to such use of Cash Collateral or to the granting of any priming liens over any Collateral if the terms thereof, including the terms of adequate protection (if any) granted to the Secured Parties in connection therewith, do not provide for materially equal treatment to all Secured Parties, (ii) the DIP Financing does not expressly require the liquidation of any Collateral prior to a default under the DIP Financing documentation and (iii) if any Cash Collateral order contemplates the liquidation of Collateral, such order provides that the Liens of the Secured Parties will attach to the proceeds of such liquidation equally and ratably."

7. On May 1, 2014, at the direction of a majority of the Required Secured Parties,[4] the First Lien Collateral Agent consented to the entry of the *Interim Order (A) Authorizing Use of Cash Collateral for Texas Competitive Electric Holdings Company LLC and Certain of its Debtor Affiliates, (B) Granting Adequate Protection, (C) Modifying the Automatic Stay, and (D) Scheduling a Final Hearing* [Docket No. 324].

8. The First Lien Collateral Agent has no economic interest in the allocation of the First Lien Adequate Protection Payments. The fact that the First Lien Collateral Agent acts at the direction of a majority of the Required Secured Parties – including members of the First Lien Ad Hoc Committee – does not create a conflict with the holders of First Lien Notes because, under the Intercreditor Agreement, the First Lien Collateral Agent is expressly permitted to rely on such a direction. (Intercreditor Agreement at § 6.1)

---

[4] Under the Intercreditor Agreement, the "Required Secured Parties" is defined as the Secured Parties owed or holding more than fifty percent of the sum of the Outstanding Amount under the Credit Agreement and the Eligible Hedge Voting Amount thereunder. (Intercreditor Agreement at p. 12) Currently outstanding First Lien Notes are not included in the determination of Required Secured Parties.

9.  Moreover, the allegation in the Aurelius Objection that the Debtors are "circumventing" the application of the Intercreditor Agreement by bypassing the First Lien Collateral Agent and delivering the First Lien Adequate Protection Payments directly to the respective agents for the different tranches of First Lien Debt (Aurelius Objection at ¶¶ 9-11) is incorrect.  This method of payment was included in the interest of operational efficiency, and not to bypass the terms of the Intercreditor Agreement.  The Debtors' payment of the First Lien Adequate Protection Payments directly to the agents, rather than to the First Lien Collateral Agent, was not intended to, nor has the effect of, altering the manner in which First Lien Adequate Protection Payments may be allocated under the Intercreditor Agreement.

10. On May 22, 2014, the Debtors filed with the Court the Final Cash Collateral Order.  Paragraph 5(d) of the Final Cash Collateral Order provides, among other things, that the Prepetition First Lien Creditors "shall receive from the TCEH Debtors their ratable share (calculated based on the proportion that the Prepetition First Lien Obligations owing as of the Petition Date under each of the Prepetition First Lien Documents bears to the aggregate amount of all Prepetition First Lien Obligations owing as of the Petition Date) of the aggregate amount of the First Lien Adequate Protection Payments."

11. Aurelius alleges that the manner in which the Final Cash Collateral Order allocates the First Lien Adequate Protection Payments violates the Intercreditor Agreement.  (Aurelius Objection at ¶¶ 6-10)  Aurelius is the lone objector among the Prepetition First Lien Creditors to the allocation of the First Lien Adequate Protection Payments.  Further, neither the First Lien Notes Trustee, nor any other holder of First Lien Notes, has objected to any terms of the Final Cash Collateral Order.

12. The First Lien Collateral Agent, together with the First Lien Ad Hoc Committee and the Debtors, have agreed in principle to a Proposed Revised Final Cash Collateral Order that would fully preserve the rights of all Prepetition First Lien Creditors with respect to the allocation of the First Lien Adequate Protection Payments, escrowing the disputed amounts until the dispute over the allocation can be resolved at a later time, consensually or otherwise by order of this Court or another court of competent jurisdiction.

13. Under the Proposed Revised Final Cash Collateral Order, pending resolution of the dispute regarding the appropriate allocation of the First Lien Adequate Protection Payments among the Prepetition First Lien Creditors, the difference between the amount of First Lien Adequate Protection Payments that the Prepetition First Lien Creditors would receive under the allocation of those payments as argued in the Aurelius Objection and the amount that the holders of the First Lien Notes would receive as provided in the Proposed Revised Final Cash Collateral Order would be held in a separate escrow account solely for the benefit of the First Lien Creditors.  The undisputed portion of the First Lien Adequate Protection Payments would be paid to the Prepetition First Lien Creditors as set forth in the Proposed Revised Final Cash Collateral Order.

14. The First Lien Collateral Agent's consent to the use of cash collateral is conditioned upon entry of the Proposed Revised Final Cash Collateral Order containing the terms described above that fully protect the rights of all Prepetition First Lien Creditors pending the resolution of the dispute concerning the allocation of the First Lien Adequate Protection Payments.

15. The First Lien Collateral Agent reserves all rights with respect to the allocation of the First Lien Adequate Protection Payments and all rights under the Intercreditor Agreement and related transaction documents.

## CONCLUSION

Based upon the foregoing, the First Lien Collateral Agent respectfully requests that the Court overrule the Objections and enter the Proposed Revised Final Cash Collateral Order.

Dated: June 3, 2014
New York, New York

By: */s/Michael D. DeBaecke*
**BLANK ROME LLP**
Michael D. DeBaecke (No. 3186)
Stanley B. Tarr (No. 5535)
1201 N. Market Street, Suite 800
Wilmington, Delaware 19801
Telephone: (302) 425_6400
Facsimile: (302) 425-6464

-and-

**SEWARD & KISSEL LLP**
John R. Ashmead (admitted *pro hac vice*)
Mark D. Kotwick (admitted *pro hac vice*)
Arlene R. Alves (admitted *pro hac vice*)
One Battery Park Plaza
New York, New York 10004
Telephone: (212) 574-1200
Facsimile: (212) 480-8421

*Counsel to the First Lien Collateral Agent*

SK 02463 0067 1481959 v3