# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) Case No. 14-10979 (CSS) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |
| | ) Re: D.I. 74, 421, 600, 649, 687, 691 |

## EFIH DEBTORS' OMNIBUS REPLY TO OBJECTIONS TO THE EFIH DEBTORS' MOTION FOR APPROVAL OF THE EFIH FIRST LIEN DIP FINANCING, THE EFIH FIRST LIEN REPAYMENT, AND THE FIDELITY FUNDING FEE

---

[1] The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, which are being jointly administered on an interim basis, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' proposed claims and noticing agent at http://www.efhcaseinfo.com.

## Table of Contents

Background ............................................................................................................................. 2

Reply ...................................................................................................................................... 3

    I.     The Release of Liens Provision is Permissible. ........................................................ 3

    II.    The EFIH Debtors Will Make a Sufficient Showing of Adequate Protection. ............................................................................................................... 3

    III.   A Repayment Amount Will Be Included in the Final Order. ................................... 6

    IV.   The Final Order Need Not Provide the Non-Settling Prepetition EFIH First Lien Creditors with Certainty Regarding the Allowance of their Claims. ............... 7

    V.    The First Lien Trustee's Arguments Regarding Reservation of Rights Will Either Be Addressed or Should Be Overruled. ....................................................... 7

    VI.   The Final Order Does Not Approve Any Aspect of the EFIH Second Lien Repayment or the EFIH Second Lien Settlement. ................................................... 8

    VII.  The Fidelity Funding Fee is Appropriate. ................................................................ 9

    VIII. The Provisions of the Final Order Related to Amendments of the EFIH First Lien DIP Documents are Appropriate and Standard. .................................... 11

    IX.   The Provisions of the EFIH Collateral Trust Agreement Are Not Relevant Here. .......................................................................................................................12

    X.    The First Lien Trustee's "Miscellaneous" Objections Should Be Overruled. ............................................................................................................... 13

The EFIH Debtors file this reply (this "Reply")[1] to (a) the *Limited Objection of CSC Trust Company of Delaware, as Indenture Trustee and as Collateral Trustee, to the Motion of EFIH Debtors for Approval of First-Lien Postpetition Financing* [D.I. 694] (the "First Lien Objection") filed by CSC Trust Company of Delaware in its capacity as the indenture trustee for the 10.00% EFIH First Lien Notes and collateral trustee (the "First Lien Trustee"), (b) the *EFIH Second Lien Notes Indenture Trustee's (I) Preliminary Response to Debtors' Settlement Motion and (II) Limited Objection and Reservation of Rights to Debtors' Motion Approving First Lien DIP Financing* [D.I. 649] (the "Second Lien Objection"), filed by Computershare Trust Company, N.A. and Computershare Trust Company of Canada as the indenture trustee for the EFIH Debtors' second lien notes (the "Second Lien Trustee" and, together with the First Lien Trustee, the "Objectors"), and (c) those portions of the *Preliminary Objection of CSC Trust Company of Delaware, as Indenture Trustee, to Debtors' Motion to Approve First-Lien Post-Petition Financing, Redeem First Lien and Second Lien Notes, and Determine Secured Claim* [D.I. 421] (the "Preliminary Objection" and, together with the First Lien Objection and the Second Lien Objection, the "Objections"), filed by the First Lien Trustee, that remain relevant to the relief requested at the June 5 hearing.[2] In further support of this Reply, the EFIH Debtors respectfully state as follows.[3]

---

[1] Capitalized terms used but not defined in this Reply shall have the meanings set forth in the *Motion of Energy Future Intermediate Holding Company LLC and EFIH Finance Inc. for Entry of (I) an Interim Order (A) Approving Certain Fees Related to Postpetition Financing and Granting Such Fees Administrative Expense Priority and (B) Scheduling a Final Hearing; and (II) a Final Order (A) Approving Postpetition Financing, (B) Granting Lien and Providing Superpriority Administrative Expense Claims, (C) Authorizing the Use of Cash Collateral, (D) Authorizing the EFIH First Lien Refinancing, (E) Authorizing Issuance of Roll-Up Debt to the Extent Authorized by the Settlement Motion, (F) Determining the Value of Secured Claims, and (G) Modifying the Automatic Stay* [D.I. 74] (the "EFIH First Lien DIP Motion") or in the Final Order (as defined herein), as applicable.

[2] The First Lien Trustee has separately objected to the EFIH First Lien Settlement and the tender process used to solicit participation in the EFIH First Lien Settlement. *See Objection of CSC Trust Company of Delaware, As Indenture Trustee, to the EFIH Debtors' Motion to Approve the "First Lien Settlement"* [D.I. 694] (the "First

(Continued…)

## Background

1. The Debtors filed their petitions for relief under chapter 11 of title 11 of the United States Code on April 29, 2014 (the "Petition Date"), in the United States Bankruptcy Court for the District of Delaware. On the Petition Date, the EFIH Debtors filed the EFIH First Lien DIP Motion, pursuant to which the EFIH Debtors seek the authority to enter into the EFIH First Lien DIP Financing and consummate the EFIH First Lien Repayment without the payment of alleged EFIH First Lien Makewhole Claims. On May 22, 2014, the EFIH Debtors filed a proposed form of final order [D.I. 600, Ex. 1] (the "Final Order") with respect to the relief requested in the EFIH First Lien DIP Motion. The EFIH Debtors have agreed to defer the resolution of certain disputed aspects of the EFIH First Lien Repayment, including the validity of any claims related to alleged makewhole premiums, under a bifurcated litigation schedule.

2. Notably, no party has objected to the primary relief the EFIH Debtors are seeking here: entry into a $5.4 billion superpriority DIP financing and repayment of the EFIH First Lien Notes. Rather, parties are objecting to certain technical aspects of the Final Order that implements that primary relief and an intercreditor issue that is most relevant in the context of the EFIH Second Lien Repayment. As a result, this Reply relates solely to those technical

---

Lien Settlement Objection"). *See Debtors' Reply to Objection of CSC Trust Company of Delaware, as Indenture Trustee, to the EFIH Debtors' Motion to Approve Proposed First Lien Settlement*, which is incorporated herein by reference.

[3] The Appointed Committee also filed the *Limited Objection of the Official Committee of Unsecured Creditors to the Motion of Energy Future Intermediate Holding Company LLC and EFIH Finance Inc. for Entry of (I) an Interim Order (A) Approving Certain Fees Related to Postpetition Financing and Granting Such Fees Administrative Expense Priority and (B) Scheduling a Final Hearing; and (II) a Final Order (A) Approving Postpetition Financing, (B) Granting Lien and Providing Superpriority Administrative Expense Claims, (C) Authorizing the Use of Cash Collateral, (D) Authorizing the EFIH First Lien Refinancing, (E) Authorizing Issuance of Roll-Up Debt to the Extent Authorized by the Settlement Motion, (F) Determining the Value of Secured Claims, and (G) Modifying the Automatic Stay* [D.I. 687]. The EFIH Debtors believe they will resolve all of the Appointed Committee's objections in advance of the hearing. The EFIH Debtors reserve the right to respond to the Appointed Committee's objections at the hearing if a resolution is not reached.

concerns. The EFIH Debtors have been and will continue to work with the Objectors and their stakeholders to attempt to resolve their Objections and will submit a revised proposed form of Final Order at or in advance of the June 5 hearing.

## Reply

**I.    The Release of Liens Provision is Permissible.**

3.    The First Lien Trustee argues that the Final Order must not release liens until all disputed amounts are determined and paid (if applicable). First Lien Objection ¶¶ 6–7. The EFIH Debtors maintain that the release of liens provision is appropriate. The First Lien Trustee intends to assert amounts in excess of principal and accrued interest. But these disputed amounts have not been allowed and until such time, the First Lien Trustee and the holders of EFIH First Lien Notes that are not settling their claims (the "Non-Settling Prepetition EFIH First Lien Creditors") are not entitled to protection with respect to those amounts. In sum, the language proposed by the EFIH Debtors is appropriate and does not preclude the First Lien Trustee from asserting claims in any amount or priority.

**II.   The EFIH Debtors Will Make a Sufficient Showing of Adequate Protection.**

4.    The First Lien Trustee argues that the Final Order must include a finding that the interests of the EFIH Debtors' prepetition secured creditors and agents are adequately protected with respect to the EFIH First Lien DIP Financing. First Lien Objection ¶ 8. As an initial matter, the EFIH Debtors reserve the right to demonstrate that the Non-Settling Prepetition EFIH First Lien Creditors are not entitled adequate protection on claims that they have not shown exist. Regardless, the Final Order will provide the Non-Settling Prepetition EFIH First Lien Creditors adequate protection, to the extent they are so entitled.

5.    As stated in the Supplemental Ying Declaration,[4] the Prepetition EFIH First Lien Creditors are adequately protected by the existence of a significant equity cushion. Supplemental Ying Declaration ¶¶ 32–33. There has been no contrary testimony regarding this point and Mr. Ying has reaffirmed this conclusion in subsequent deposition testimony.

6.    Moreover, it is well-recognized and a basic economic principle that an agreed sale price is the best evidence of the value of collateral. *In re SW Boston Hotel Venture, LLC*, No. 12-9008, 2014 WL 1399418, at *12 (1st Cir. Apr. 11, 2014); *Ford Motor Credit Co. v. Dobbins*, 35 F.3d 860, 870 (4th Cir. 1994); *In re Two S Corp.*, 875 F.2d 240, 244 (9th Cir. 1989); *see also* 4 *Collier on Bankruptcy* ¶ 506.03[6][b] (16th ed. 2009) ("[R]egardless of the purpose of the valuation, if an actual sale (or equivalent disposition) is to occur, the value of the collateral should be based on the consideration to be received by the estate in connection with the sale, provided that the terms of the sale are fair and were arrived at on an arm's-length basis."). Here, the proposed EFIH Second Lien DIP Facility will convert into 64% of the equity in reorganized EFH Corp. As explained in the Supplemental Ying Declaration, these figures imply a significant equity cushion for any disputed obligations related to the EFIH First Lien Notes (as well as for any principal and accrued interest related to the EFIH Second Lien Notes), and that conclusion is reinforced by the two competing bids the EFIH Debtors have received with respect to the EFIH Second Lien DIP Facility, including one preliminary and non-binding "proposal" sent to the EFIH Debtors (and filed with the Court) by counsel for the First Lien Trustee on behalf of certain Prepetition EFIH First Lien Creditors.

---

[4]   *Supplemental Declaration of David Ying, Senior Managing Director of Evercore Group L.L.C., in Support of (1) the EFIH First Lien DIP Motion and (2) the EFIH Settlement Motion* [D.I. 610, Ex. A].

7. In addition, the First Lien Trustee specifically demands adequate protection with respect to the Carve Out. First Lien Objection ¶ 13. Regardless of whether adequate protection is necessary for a carve out—for the avoidance of doubt, the EFIH Debtors reserve all their rights to demonstrate that no such adequate protection is necessary—the equity cushion here provides more than sufficient adequate protection given the relatively small size of the Carve Out.

8. The First Lien Trustee also argues that the Final Order would permit the EFIH First Lien DIP Agent to dispose of collateral in a way that would prejudice prepetition creditors. First Lien Objection ¶ 11. Similar provisions have been approved with regularity in this jurisdiction. *See, e.g., Brookstone Holdings Corp.*, No. 14-10752 (BLS) (Bankr. D. Del. Apr. 25, 2014) (approving provision that provided that prepetition creditors were deemed to consent to the release of collateral); *In re Exide Tech.*, No. 13-11482 (KJC) (Bankr. D. Del. July 7, 2013) (same); *Synagro Tech., Inc.*, No. 13-11041 (BLS) (Bankr. D. Del. May 28, 2013) (approving substantially identical provision to the provision in the Final Order); *In re Monitor Company Group L'td P'ship*, No. 12-13042 (CSS) (Bankr. D. Del. Dec. 4, 2012) (approving provision that provided that prepetition creditors were deemed to consent to the release of collateral); *In re William Lyon Hones*, No. 11-14019 (CSS) (Bankr. D. Del. Jan. 10, 2012) (same); *In re ACG Holdings, Inc.*, No. 08-11467 (CSS) (Bankr. D. Del. Aug. 18, 2008) (same). This subordination language is necessary to provide the EFIH First Lien DIP Agent the benefit of its priming lien under section 364(d) of the Bankruptcy Code and its standard protection granted to senior creditors both in and out of chapter 11. To the extent the Non-Settling Prepetition EFIH First Lien Creditors and the First Lien Trustee have an interest in the collateral, such interests are adequately protected—in the form of a significant equity cushion, as noted above—from their

priming by the EFIH First Lien DIP Facility as implemented by this subordination provision. And, despite the assertions of the First Lien Trustee to the contrary, no part of this standard subordination language permits the EFIH First Lien DIP Agent to act in bad faith in disposing of this collateral.

9.  Finally, the First Lien Trustee argues that the Final Order must provide some kind of mechanism with respect to any delay between the funding of the EFIH First Lien DIP Financing and the consummation of the EFIH First Lien Repayment and the EFIH First Lien Settlement. First Lien Objection ¶ 12. This request is unwarranted. There is no practical risk that the Prepetition EFIH First Lien Creditors must be compensated for in this instance. As an initial matter, the EFIH Debtors intend to consummate the EFIH First Lien Repayment and the EFIH First Lien Settlement contemporaneously with the closing of the EFIH First Lien DIP Financing. Moreover, the "use of proceeds" provisions of the EFIH First Lien DIP Credit Agreement and the Final Order require that the EFIH Debtors use a significant portion of the proceeds of EFIH First Lien DIP Financing for that purpose. EFIH First Lien DIP Credit Agreement § 7.16(c); Final Order ¶ G. Accordingly, the EFIH Debtors respectfully submit that no extraordinary measures are required.

### III. A Repayment Amount Will Be Included in the Final Order.

10. The First Lien Trustee argues that the Final Order must include a sum certain that the EFIH Debtors will pay under the EFIH First Lien Repayment. First Lien Objection ¶ 15. The revised form of Final Order will include a repayment amount.

11. Regardless, no party is prejudiced by the extent of the EFIH First Lien Repayment. The EFIH Debtors expressly reserve their rights with respect to all amounts the First Lien Trustee and Non-Settling Prepetition EFIH First Lien Creditors are owed. The EFIH Debtors also acknowledge that the First Lien Trustee and Non-Settling Prepetition EFIH First

Lien Creditors are reserving their rights to argue that a different repayment amount is appropriate. All such disputes will be addressed in the parties' proposed litigation.

### IV. The Final Order Need Not Provide the Non-Settling Prepetition EFIH First Lien Creditors with Certainty Regarding the Allowance of their Claims.

12. The First Lien Trustee argues that "the entire amount [of Non-Settling Prepetition First Lien Creditors' claims] cannot be left in limbo." First Lien Objection ¶ 16. The First Lien Trustee has not cited any precedent for that proposition, and it is incorrect. As noted above, all parties rights' are reserved with respect to amounts paid to Non-Settling Prepetition EFIH First Lien Creditors. And, to the extent any party seeks to or succeeds in avoiding the liens of the EFIH First Lien Notes held by Non-Settling Prepetition EFIH First Lien Creditors or otherwise succeeds in disallowing any such claims, the estates may seek claw back of such amounts. The First Lien Trustee and litigating parties having elected not to enter into a settlement with the EFIH Debtors and are therefore not entitled to releases of any form.

### V. The First Lien Trustee's Arguments Regarding Reservation of Rights Will Either Be Addressed or Should Be Overruled.

13. The First Lien Trustee requested specific reservation of rights language to preserve its claims with respect to disputed amounts under the EFIH First Lien Repayment that will be addressed in the bifurcated litigation schedule. First Lien Objection ¶¶ 17–18. The First Lien Trustee is not entitled to the specific language it has requested. The current language in the Final Order is sufficient to preserve the rights of the First Lien Trustee and the Non-Settling Prepetition EFIH First Lien Creditors with respect to their litigation agenda.

14. Similarly, the First Lien Trustee's objections that attempt to "cabin" the findings in the Final Order to have no effect on the matters scheduled for June 30 also are unnecessary. First Lien Objection ¶¶ 19–20. The First Lien Trustee and all other parties have reserved their rights with respect to their asserted arguments, but this Court must make certain factual findings

7

to approve the EFIH First Lien DIP Financing and certain findings with respect to the lenders' good faith under section 364(e) of the Bankruptcy Code. The EFIH Debtors have made the necessary evidentiary showing for these findings and are entitled to them as a matter of law.[5] Except as expressly agreed to by the EFIH Debtors with respect to the amounts and validity of the Non-Settling Prepetition EFIH First Lien Creditors' claims, there is no requirement to limit the extent of the Court's findings with respect to future litigation.

## VI. The Final Order Does Not Approve Any Aspect of the EFIH Second Lien Repayment or the EFIH Second Lien Settlement.

15. The First Lien Trustee asserts that the Final Order improperly contains "numerous approvals and authorizations related to the EFIH Second Lien DIP Facility or the EFIH Second Lien Settlement." First Lien Objection ¶ 22. That is not correct. The Final Order contain provisions that allow the proceeds of the EFIH First Lien DIP Financing to be used to satisfy the EFIH Debtors' obligations under the EFIH Second Lien Repayment and the EFIH Second Lien Settlement *in the event they are approved by the Court*. These provisions of the Final Order, which mirror provisions in the EFIH First Lien DIP Credit Agreement, do not constitute preapproval of the EFIH Second Lien Facility, the EFIH Second Lien Repayment, or the EFIH Second Lien Settlement. That is true notwithstanding the fact that the EFIH First Lien DIP Financing is a single-draw facility for $5.4 billion that represents the best financing available.

---

[5] In the Preliminary Objection, the First Lien Trustee argued that findings under section 364(e) would require "full litigation." Preliminary Objection ¶ 35. The First Lien Objection does nothing to pursue this line of argument. The EFIH Debtors respectfully submit that the First Lien Trustee has forfeited any argument that the findings under section 364(e) are impermissible as a general matter. In any event, the section 364(e) findings are fully supported by ample record evidence.

## VII. The Fidelity Funding Fee is Appropriate.

16. The Objectors argue that the Fidelity Funding Fee should not be approved. First Lien Objection ¶ 22, Second Lien Objection ¶¶ 26–30. These objections are based on a misapprehension of the underlying facts and, if not withdrawn, should be overruled.

17. Fidelity's role in the EFIH Secured Settlements and the EFIH First Lien DIP Financing warrants clarification:

- *First*, Fidelity is a Settling Prepetition EFIH First Lien Creditor and, accordingly, has agreed to exchange its EFIH First Lien Notes into the EFIH First Lien DIP Financing.

- *Second*, Fidelity has also agreed to settle its EFIH Second Lien Note claims for cash.

- *Third*, as part of the EFIH Second Lien Settlement, Fidelity has the *option* to participate in up to $500 million of the EFIH First Lien DIP Financing (the "Fidelity Investment") and receive a participation fee of 1.75% for doing so.

18. After the EFIH Debtors' agreed to adjourn the EFIH Second Lien Repayment and the EFIH Second Lien Settlement to June 30, Fidelity agreed to commit $500 million of funding for the EFIH First Lien DIP Financing to the EFIH Debtors (the "Fidelity Commitment") on a standalone basis in lieu of the Fidelity Investment. In exchange for the Fidelity Commitment, Fidelity is proposed to receive the 1.75% Fidelity Funding Fee under the Final Order.

19. It is noncontroversial that DIP lenders are entitled to commitment fees. The use of estate funds, including DIP funds, is governed by section 363 of the Bankruptcy Code. *In re Olde Prairie Block Owner, LLC*, 448 B.R. 482, 492 (Bankr. N.D. Ill. 2011), *aff'd*, 460 B.R. 500 (N.D. Ill. 2011). Under section 363(b), a debtor can use property of the estate outside the ordinary course if "a sound business purpose justifies the use." *In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (D. Del. 1999); *see also In re Lionel Corp.*, 722 F.2d 1063, 1071 (2d Cir. 1983) (applying the business judgment standard to the use of property under section 363); *In re Global Home Products, LLC*, 369 B.R. 778, 787 (Bankr. D. Del. 2007) (same). A 1.75%

commitment fee is in line with such fees paid in similar cases in this jurisdiction and is the same commitment fee being received by another major backstop party, PIMCO. Indeed, courts in this jurisdiction have approved far higher fees. *See, e.g., In re Exide Techs.*, No. 13-11482 (KJC) (Bankr. D. Del. July 25, 2013) (approving approximately 4.7% of aggregate fees to underwriters, arrangers, and lenders); *In re Neb. Book Co.*, No. 11-12005 (Bankr. D. Del. Apr. 12, 2012) (approving a commitment fee of 1% of backstop commitment for each month outstanding, a 1% funding fee, expense reimbursement, and similar indemnification language); *In re LSP Energy Ltd. P'ship*, No. 12-10460 (Bankr. D. Del. Feb. 27, 2012) (approving 1.25% DIP commitment fee); *In re Friendly Ice Cream Corp.*, No. 11-13167 (Bankr. D. Del. Nov. 2, 2011) (approving certain letter of credit fees including a 2% issuance fee); *In re Cooper-Standard Holdings Inc.*, No. 09-12743 (Bankr. D. Del. Sept. 2, 2009) (approving 2.5% upfront fee and 2.5% exit fee); *In re Hayes Lemmerz Int'l, Inc.*, No. 09-11655 (Bankr. D. Del. June 15, 2009) (approving 3% exit fee); *In re Aleris Int'l. Inc.*, No. 09-10478 (Bankr. D. Del. Mar. 18, 2009) (approving 3.5% exit fee and 3.5% front-end net adjustment against each lender's initial commitment); *In re Dura Auto. Sys., Inc.*, No. 06-11202 (Bankr. D. Del. Jan. 30, 2008) (approving a 2.5% fee related to refinancing and extending a postpetition financing facility).

20.     The Fidelity Commitment, like the commitments of PIMCO, WAMCO, and the EFIH First Lien DIP Agent, provides significant value to the EFIH Debtors' estates and may be approved. ***First***, as a result of the Fidelity Commitment, the EFIH Debtors were able to reduce the commitment fee payable to the EFIH First Lien DIP Agent. ***Second***, this does not in any manner constitute early approval of the EFIH Second Lien Settlement. The Fidelity Investment, as described in the EFIH Second Lien Settlement, was an option. The Fidelity Commitment is a commitment to fund, as a practical matter identical to the commitments of the EFIH First Lien

DIP Agent and other backstop parties to fund the EFIH First Lien DIP Financing. *Third*, the inclusion of the Fidelity Commitment does not result in any additional cost to the estates, and no party in interest is prejudiced, because the EFIH Debtors would have had to obtain the same financing from another party, at a cost.

## VIII. The Provisions of the Final Order Related to Amendments of the EFIH First Lien DIP Documents are Appropriate and Standard.

21. The First Lien Trustee asserts that the EFIH Debtors should be required to return to this Court any time an immaterial amendment is made to the EFIH First Lien DIP Documents. First Lien Objection ¶¶ 23–24. The First Lien Trustee further argues that the EFIH Debtors seek to impose "a new, vague standard of 'nonmateriality' for preapproved modifications to agreements, on topics not yet even imagined." The assertion flies in the face of precedent: courts in this jurisdiction commonly approve DIP financing orders with similar provisions. *See, e.g.*, *In re Mach Gen, LLC*, No. 14-10461 (MFW) (Bankr. D. Del. Mar. 27, 2014) (allowing immaterial modifications without further order of the court); *In re Buffets Restaurants Holdings, Inc.*, No. 12-10237 (MFW) (Bankr. D. Del. Feb. 14, 2012) (providing that any amendments that did "not materially and adversely impair the rights of the Debtors, their estates or other parties in interest" could be entered into without court approval); *In re Local Insight Media Holdings, Inc.*, No. 10-13677 (KG) (Bankr. D. Del. Dec. 29, 2010) (providing that any amendment that did not shorten maturity, increase the amount of commitments or the rate of interest, change any event of default, or add or amend any covenant to be more restrictive could be entered into without court approval); *In re Visteon Corp.*, No. 09-11786 (CSS) (Bankr. D. Del. Nov. 12, 2009) (providing that *any* amendment that was "not prejudicial in any material respect to the rights of third parties" could be approved without the consent of any party or the court's approval). Indeed, this Court approved a similar provision with respect to the TCEH DIP Facility on an interim basis.

22. Additionally, the provision of notice to the U.S. Trustee and the Appointed Committee is sufficient. The EFIH Debtors have shown that the prepetition secured creditors are adequately protected. The Non-Settling Prepetition EFIH First Lien Creditors are not entitled to anything more under the Bankruptcy Code.

### IX. The Provisions of the EFIH Collateral Trust Agreement Are Not Relevant Here.

23. In the Preliminary Objection, the First Lien Trustee argued that the use of proceeds from the EFIH First Lien DIP Financing to repay the EFIH Second Lien Notes violates provisions of the EFIH Collateral Trust Agreement that provide that EFIH cannot use the "proceeds" of collateral to repay the EFIH Second Lien Notes while there are obligations outstanding under the EFIH First Lien Notes. Preliminary Objection ¶¶ 36–38.

24. This objection should be overruled because the proceeds of *new debt* are not proceeds of collateral, even if the new debt is secured by a lien on collateral. Section 9-102(a)(64) of the Uniform Commercial Code defines "proceeds" as "(A) whatever is acquired upon the sale, lease, license, exchange, or other disposition of collateral; (B) whatever is collected on, or distributed on account of, collateral; (C) rights arising out of collateral; . . . ." None of those provisions apply here. The First Lien Trustee argues that granting a senior lien is a "disposition" of collateral because it "unquestionably reduces" parties' "rights" in the collateral. This is not a correct interpretation. *See In re Hastie*, 2 F.3d 1042 (10th Cir. 1993) (concluding that the definition of proceeds describe events "whereby one asset is disposed of and another is acquired as its substitute"); *Mechanics National Bank v. Gaucher*, 386 N.E. 2d 1052, 1055 (Mass. Ct. Ap. 1979) (finding that disposition implies a permanent transfer of possession). Here, nothing is being "substituted" for the collateral. Rather, something entirely new—a lien—is being granted.

## X. The First Lien Trustee's "Miscellaneous" Objections Should Be Overruled.

25. The First Lien Trustee raises two miscellaneous objections that should be overruled. First Lien Objection ¶¶ 27–28. *First*, the First Lien Trustee reserves its right to argue that the resolution of disputed amounts related to the EFIH First Lien Repayment may not be "core" proceedings. That is plainly inaccurate under both *Stern v. Marshall* or a more traditional "core vs. non-core" analysis. All disputes related to the EFIH First Lien Repayment are intertwined with determining the extent and validity of liens against the EFIH Debtors and are necessarily bound up in the claims resolution process. *See Stern v. Marshall*, 131 S. Ct. 2594, 2618 (2011) (noting that "the question is whether the action at issue stems from the bankruptcy itself or would necessarily be resolved in the claims allowance process."); 28 U.S.C. §§ 157(b)(2)(B), (D), (K), and (O) (providing that matters concerning the allowance of claims, obtaining credit, determining the extent of liens, and "other proceedings affecting the . . . adjustment of the debtor-creditor . . . relationship," among others, are statutorily core proceedings).

26. *Second*, the First Lien Trustee raises a vague objection to the release language in the Final Order. Specifically, the First Lien Trustee argues that the release "is not limited to acts prior to the date of the order," "applies to affiliates and other related parties, some of whom are debtors in these cases," and that the release is "entirely too broad when it describes claims 'arising out of, in connection with, or related to' the EFIH First Lien DIP Financing and all related documents 'or the transactions contemplated hereunder or thereunder.'" First Lien Objection ¶ 28. The First Lien Trustee has not provided any alternative language that would address its concerns. The EFIH Debtors will work with the First Lien Trustee to determine if this objection can be resolved. If it cannot, however, the EFIH Debtors respectfully submit that

the release in the Final Order is appropriately related to the EFIH First Lien DIP Financing and should be approved.

[*Remainder of page intentionally left blank*]

WHEREFORE, the Debtors respectfully request that the Court grant the Motion and grant such other relief as it deems necessary and proper under the circumstances.

Dated: June 3, 2014
       Wilmington, Delaware

/s/ *(signature)*

**RICHARDS, LAYTON & FINGER, P.A.**
Mark D. Collins (No. 2981)
Daniel J. DeFranceschi (No. 2732)
Jason M. Madron (No. 4431)
920 North King Street
Wilmington, Delaware 19801
Telephone:   (302) 651-7700
Facsimile:   (302) 651-7701
Email:   collins@rlf.com
      defranceschi@rlf.com
      madron@rlf.com

-and-

**KIRKLAND & ELLIS LLP**
Richard M. Cieri (admitted *pro hac vice*)
Edward O. Sassower, P.C. (admitted *pro hac vice*)
Stephen E. Hessler (admitted *pro hac vice*)
Brian E. Schartz (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022-4611
Telephone:   (212) 446-4800
Facsimile:   (212) 446-4900
Email:   richard.cieri@kirkland.com
      edward.sassower@kirkland.com
      stephen.hessler@kirkland.com
      brian.schartz@kirkland.com

-and-

James H.M. Sprayregen, P.C. (admitted *pro hac vice*)
Chad J. Husnick (admitted *pro hac vice*)
Steven N. Serajeddini (admitted *pro hac vice*)
300 North LaSalle
Chicago, Illinois 60654
Telephone:   (312) 862-2000
Facsimile:   (312) 862-2200
Email:   james.sprayregen@kirkland.com
      chad.husnick@kirkland.com
      steven.serajeddini@kirkland.com

Proposed Co-Counsel to the Debtors and Debtors in Possession