# EXHIBIT B

# FILED UNDER SEAL

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) ) | Chapter 11 |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) ) ) | Case No. 14-_____ (____) |
| Debtors. | ) ) ) | (Joint Administration Requested) |

**DECLARATION OF PAUL KEGLEVIC, EXECUTIVE VICE PRESIDENT, CHIEF FINANCIAL OFFICER, AND CO-CHIEF RESTRUCTURING OFFICER OF ENERGY FUTURE HOLDINGS CORP., *ET AL.*, IN SUPPORT OF FIRST DAY MOTIONS**

---

[1] The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, for which the debtors have requested joint administration, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' proposed claims and noticing agent at http://www.efhcaseinfo.com.

### c. Restructuring of the Debtors' Long-Term Employee Pension Obligations.

155. EFH also modified its pension plan in 2012 to provide greater certainty regarding future costs.[56] The modifications resulted in:

- splitting off assets and liabilities under the plan associated with employees of Oncor and all retirees and terminated vested participants of EFH (including discontinued businesses) to a new plan sponsored and administered by Oncor;

- splitting off assets and liabilities under the plan associated with active employees of the Debtors, other than bargaining unit employees, to a terminating plan, freezing benefits, and vesting all accrued plan benefits for such pension participants;

- terminating, distributing benefits under, and settling all of EFH's liabilities under the terminating plan, resulting in a reduction in annual pension expense by approximately $40 million, mostly for the Debtors; and

- maintaining the plan associated with TCEH's bargaining unit employees.

### 2. Restructuring Negotiations.

156. Despite EFH's successful operational and restructuring initiatives since the 2007 Acquisition, the prepetition capital structure of EFH Corp., EFIH, and the TCEH Debtors cannot be supported by prevailing market realities, so their capital structure must be delevered. Accordingly, the Debtors commenced restructuring discussions and retained restructuring advisors in July 2012 in an effort to develop a consensual restructuring framework that would maximize the value of the Debtors' estates. These restructuring negotiations involved highly diverse stakeholders with varying goals and viewpoints and eventually grew to involve nearly every aspect of the Debtors' capital structure. Membership in the Debtors' various ad hoc stakeholder groups has shifted over time. Importantly, however, there is a consenting group of creditors at each of EFH Corp., TCEH, and EFIH, which lays the groundwork for a prearranged plan. Indeed, the majority of the Debtors' stakeholders are either consenting to or being paid in

---

[56] These modifications did not affect EFH's other post-employment benefit ("OPEB") obligations.

full and in cash under the Global Restructuring. The following table shows certain members of the various ad hoc groups over time and as of the Petition Date, including those groups with members that have executed the Restructuring Support Agreement (the "Restructuring Support Parties"):[57]

| Constituency | Principals | Advisors |
|---|---|---|
| *Restructuring Support Parties* | | |
| Approximately $9.9 billion, or 41%, of the TCEH First Lien Debt | • Apollo, Oaktree, Centerbridge, Mason Capital, Fortress, Och-Ziff, and Franklin | • Paul Weiss, Millstein |
| Approximately $1.2 billion, or 76%, of the EFIH Unsecured Notes<br><br>Certain members also hold approximately $116 million, or 5% of EFIH Second Lien Notes | • Avenue Capital, GSO, PSAM, Third Avenue, and York Capital. | • Akin Gump, Centerview Partners |
| Approximately $471 million, or 73%, of the EFH Unsecured Notes held by parties other than EFIH<br><br>Approximately $437 million, or 11% of the EFIH First Lien Notes<br><br>Approximately $644 million, or 30% of EFIH Second Lien Notes<br><br>Also holds an undisclosed amount of TCEH First Lien Debt | • Fidelity | • Fried Frank, Perella Weinberg |
| EFIH First Lien Notes<br><br>Holds approximately $769 million, or 19%, of the EFIH First Lien Notes | • PIMCO | • Bingham McCutchen |
| EFH Equity Owners | • KKR, TPG, and Goldman Sachs. | • Wachtell Lipton, Blackstone |
| *Groups Not Supporting the Restructuring Support Agreement* | | |
| TCEH Second Lien Notes | • Arrowgrass Capital, Appaloosa Management, and Marathon Asset Management. | • Brown Rudnick, Peter J. Solomon |

---

[57] In certain instances, principals reflected here may have subsequently sold their positions, and this chart is not necessarily a comprehensive list of the principals in applicable groups.

| Constituency | Principals | Advisors |
|---|---|---|
| TCEH Unsecured Notes | • BlueCrest, Claren Road, Cyrus Capital, Deutsche Bank AG, DO S1 Limited, Fairway Fund Limited, Fore, J.P. Morgan Securities LLC, LMA SPC, and Pine River. | • White & Case, Houlihan Lokey |
| EFIH First Lien Notes | • Davidson Kempner, WAMCO, Blue Mountain, Cyrus Capital, JP Morgan. | • Ropes & Gray, Capstone Advisors |
| EFIH Second Lien Notes | • Anchorage Capital, Cyrus Capital, Magnetar Financial, Oak Hill Advisors, Taconic, and Morgan Stanley. | • Kramer Levin, Rothschild |

157. In addition to those key stakeholders, the Debtors also engaged in significant discussions with certain of their regulators and additional stakeholders, including the PUC, ERCOT, the Debtors' unions, the RCT, the NRC, the FERC, the IRS, and Oncor.

158. Two key issues dominated prepetition negotiations. *First*, there was significant tension between whether the Debtors will be restructured on a consolidated basis that would maintain EFH's current corporate form, or on a deconsolidated basis that would separate EFIH (and Oncor) from TCEH. *Second*, any deconsolidated restructuring could either be on a tax-efficient basis, which would avoid triggering in excess of *$6 billion* in deconsolidation-related tax liability, or a taxable basis, which would potentially deliver a step-up in tax basis to certain of the Debtors' new owners.

159. The Debtors' initial preference was to achieve a consensual, consolidated reorganization. There were advantages to such an outcome: EFH's current corporate form offers cost synergies, there would be no risk of triggering deconsolidation-related tax liabilities, and potential disruption to EFH's businesses would be minimized. Under a consolidated framework, however, a significant portion of EFIH, TCEH, and potentially EFH Corp. debt would have been converted into EFH Corp. equity, necessitating a need for a high degree of consensus among multiple creditor groups with claims to distinct asset classes.

# EXHIBIT A

**Evidentiary Support for First Day Pleadings**

refuse to do business with the TCEH Debtors. Therefore, I believe that the TCEH Debtors have an immediate need to access the DIP Facility; otherwise, the ultimate success of the TCEH Debtors' restructurings may be jeopardized.

6. As provided in the DIP Budget, the TCEH Debtors believe that approximately $1,600,000,000 in available liquidity is necessary for operations during the interim period of these chapter 11 cases. I understand that the proposed DIP Financing will provide the TCEH Debtors with immediate access of up to $2,700,000,000, consisting of (a) $800,000,000 under the Revolving Credit Facility, (b) $1,100,000,000 under the Delayed-Draw Term Facility, the proceeds of which, if funded, subject to the condition set forth above, will be applied by TCEH LLC to fund the RCT L/C Collateral Account, and (c) $800,000,000 under the Term Loan Facility, of which up to $800,000,000 may be applied by TCEH LLC to fund the General L/C Collateral Account. Moreover, upon entry of the Final Order, the proposed DIP Financing will provide the TCEH Debtors with up to $4,475,000,000, consisting of (x) $1,950,000,000 under the Revolving Credit Facility, (u) $1,425,000,000 under the Term Loan Facility, of which up to $800,000,000 may be applied by TCEH LLC to fund the General L/C Collateral Account, and (z) $1,100,000,000 under the Delayed Draw Term Facility, the proceeds of which, if funded, subject to the condition set forth above, will be applied by TCEH LLC to fund the RCT L/C Collateral Account to support RCT Letters of Credit.

7. I understand that the TCEH Debtors' decision to proceed with the DIP Financing comes after a dedicated and diligent search for the best financing alternatives as described in greater detail in the Goldstein Declaration. I understand that in early September 2013, the TCEH Debtors and Evercore initiated a request for DIP RFPs, where the TCEH Debtors approached five large financial institutions that are actively involved in the debtor-in-possession and

syndicated finance markets. I understand that proposals were submitted in response to the TCEH Debtors' RFP and after substantial analysis, the TCEH Debtors concluded that no single financial institution would be able to underwrite the entire amount of the DIP financing due to the size of the proposed revolving credit facility. I understand that negotiations with financial institutions continued through October and on October 25, 2013, the TCEH Debtors determined that Citigroup Global Markets Inc. and Deutsche Bank Securities Inc. proposed the best possible combination of terms and effectively addressed the TCEH Debtors' liquidity needs.  I understand that the TCEH Debtors thus began negotiating commitment letters with Citigroup Global Markets Inc. and Deutsche Bank Securities Inc., as well as five other lenders, understanding that the TCEH Debtors would require a broadly-syndicated facility to achieve a revolving credit facility of this size.

8. I understand that the DIP Financing negotiations were renewed in early February 2014 using the initial discussions as a foundation.  I also understand that negotiations with the DIP Lenders continued through April 2014, replacing one of the original seven lenders and culminating in the TCEH Debtors receiving signed commitment letters from all seven lenders on April 28, 2014.

9. I understand that DIP Financing is the best source of financing, providing the TCEH Debtors with the liquidity they need to continue operating their businesses in the ordinary course and satisfy restructuring-related costs. I believe that the relief requested in the TCEH DIP Motion is in the best interest of the TCEH Debtors' estates, their creditors, and all other parties in interest, and is necessary for the TCEH Debtors to continue to operate their businesses in chapter 11 without disruption.  Accordingly, on behalf of the TCEH Debtors, I believe that the relief requested in the TCEH DIP Motion should be granted.