WHITE & CASE

White & Case LLP
1155 Avenue of the Americas
New York, New York 10036-2787

Tel  + 1 212 819 8200
Fax  + 1 212 354 8113
whitecase.com

Direct Dial + (212) 819-8394     cshore@whitecase.com

June 3, 2014

VIA E-MAIL

The Honorable Christopher S. Sontchi
United States Bankruptcy Judge
United States Bankrutpcy Court
824 North Market Street, 5th Floor
Wilmington, Delwaware 19801

Re:   *In re Energy Future Holdings Corporation, et al.*, Case No. 14-10979 (Bankr. Del.)

Judge Sontchi:

We write on behalf of the Ad Hoc Group of TCEH Unsecured Noteholders ("TCEH Ad Hoc Group")[1] concerning an additional discovery dispute that has arisen in connection with the Debtors' Motion for Entry of an Order Authorizing the RSA Debtors to Assume the Restructuring Support Agreement and Modifying the Automatic Stay (the "RSA Assumption Motion") [Docket No. 505] beyond that raised in the letter of Edward S. Weisfelner, dated June 2, 2014 (the "Brown Rudnick Letter") [Docket No. 698] regarding the RSA Assumption Motion. In addition to joining the requests made in the Brown Rudnick Letter, we respectfully submit this letter in lieu of a formal motion to compel in the hope of resolving these additional disputes matter in an expeditious fashion in light of the impending objection deadline.

The Debtors filed the RSA Assumption Motion on May 16. In the motion, Debtors made a number of significant factual assertions as a basis for the requested relief, including, among other things:

---

[1] The TCEH Ad Hoc Group is comprised of holders, advisors, or affiliates of advisors to holders, or managers of various accounts with investment authority, contractual authority or voting authority, of or with respect to 10.25% Fixed Senior Notes due 2015 (including Series B) (the "Fixed Unsecured Notes") and 10.50%/11.25% Senior Toggle Notes due 2016 (the "Toggle Unsecured Notes" and, together with the Fixed Unsecured Notes, the "Unsecured Notes") issued pursuant to that certain Indenture dated as of October 31, 2007 by and among TCEH and TCEH Finance, Inc. ("TCEH Finance"), as issuers, and Energy Future Competitive Holdings Company LLC ("EFCH") and certain of TCEH's subsidiaries (collectively with EFCH, the "Guarantors"), as guarantors, and Law Debenture Trust Company of New York, as successor indenture trustee to The Bank of New York Mellon, (as amended, restated or otherwise modified from time to time, the "Unsecured Notes Indenture").

ALMATY  ANKARA  ASTANA  BEIJING  BERLIN  BRATISLAVA  BRUSSELS  BUDAPEST  DOHA  DÜSSELDORF  FRANKFURT  GENEVA  HAMBURG  HELSINKI
HONG KONG  ISTANBUL  JOHANNESBURG  LONDON  LOS ANGELES  MADRID  MEXICO CITY  MIAMI  MILAN  MONTERREY  MOSCOW  MUNICH
NEW YORK  PARIS  PRAGUE  RIYADH  SÃO PAULO  SHANGHAI  SILICON VALLEY  SINGAPORE  STOCKHOLM  TOKYO  UAE  WARSAW  WASHINGTON, DC

NEWYORK 9221629

The Honorable Christopher S. Sontchi.

**WHITE & CASE**

June 3, 2014

- The Proposed RSA memorializes a "comprehensive restructuring" (RSA Assumption Motion ¶ 2) that "represents an enormous step toward a successful chapter 11 plan of reorganization[.]" (Id. ¶ 6.)

- The Proposed RSA "will significantly reduce the time spent in chapter 11 and further reduce restructuring costs by eliminating potentially significant litigation" between signatories. (Id. ¶ 2.)

- The Debtors' respective Boards discussed the terms of the Proposed RSA, including "all potential conflicts associated with the proposed transaction" (Id. ¶ 23) and "the releases contemplated therein." (Id. ¶ 24.)

- Certain of the "RSA Debtors' advisors and management provided detailed presentations regarding the risks and benefits associated with the Restructuring Support Agreement, including the settlements contained therein" which were important to the "disinterested" director of TCEH and EFCH, Hugh Sawyer, in evaluating the Proposed RSA. (Sawyer Decl. ¶ 12.)

- The transactions contemplated by the Proposed RSA "will eliminate potential tax liabilities that could prevent the Debtors from emerging from chapter 11 and eliminate all unsecured creditor recoveries." (RSA Assumption Motion ¶ 2; see also id. ¶ 47)

- The RSA "contemplates that TCEH will separate into a stand-alone entity through a 'tax-free' deconsolidation transaction that will avoid any of the Debtors incurring 'deconsolidation' tax liability that could be as much as $6 billion." (Id. ¶ 4.)

- "[A]bsent a pre-arranged deal, the Debtors could face disputes about nearly every aspect of their restructuring, from nearly every part of their capital structure, in a long, contentious, and value destructive chapter 11 process." (Id. ¶ 2; see also ¶ 47.)

The TCEH Ad Hoc Group promptly propounded document requests on May 19 (the "RSA Requests") (attached hereto as Exhibit 1) seeking discovery related to the RSA Assumption Motion, including each of the key factual assertions described above.

Following repeated requests from the TCEH Ad Hoc Group, the Debtors finally agreed to meet and confer on May 29. During that meet and confer, counsel for the Debtors indicated that they intend to withhold and not produce certain key categories of documents called for by the RSA Requests. Specifically, we understand that the Debtors intend to object to, and not produce documents responsive to, any document requests concerning:[2]

---

[2] Because the Debtors, to date, have not provided written responses to the RSA Requests, we are not in a position to determine if there are any other document requests which the Debtors intend to object to or other categories of relevant documents which the Debtors intend to withhold. Accordingly, the TCEH Ad Hoc Group reserves all its rights with respect to any other potential discovery disputes related to the RSA Requests.

2

The Honorable Christopher S. Sontchi.

June 3, 2014

- Valuation of the TCEH Debtors' Assets (Document Request No. 45, 49)

- Inter-Debtor Releases and Claims Resolution (Document Requests Nos. 12, 13, 14, 15, 16, 17, 52, 53); and

- Tax Issues (Document Requests Nos. 39, 41, 70).

The Debtors' refusal to produce documents on these core topics is without merit. It cannot be disputed that the Proposed RSA encompasses a wide range of transactions and commitments on the part of the TCEH Debtors. The Debtors themselves have argued that the Proposed RSA memorializes a "comprehensive restructuring" (RSA Assumption Motion ¶ 2) that "represents an enormous step toward a successful chapter 11 plan of reorganization[.]" (RSA Assumption Motion ¶ 6.) Accordingly, the underlying basis for the TCEH Debtors' decision to enter into the agreement, including what the TCEH Debtors' board considered and any assessment or analysis undertaken by the TCEH Debtors to evaluate the terms of the Proposed RSA and transactions contemplated thereunder, are proper subjects of discovery. Such issues are not, as the Debtors seem to suggest, immune from discovery because they may also relate to plan confirmation. The Debtors must establish, even under the most lenient standard of scrutiny, that the RSA was the product of fully-informed, disinterested, good faith, and unconflicted decision-making. Each of the three topics in dispute relates directly to that issue.

First, the Proposed RSA puts at issue the question of valuation. As set forth in greater in detail in the Brown Rudnick Letter,[3] the underlying transactions contemplated by the Proposed RSA presume a certain valuation range for the TCEH Debtors. Indeed, the TCEH Debtors suggest that the transactions contemplated by the Proposed RSA were the only option because "parties were unable to agree on the respective value of the various Debtor entities." (RSA Assumption Motion at ¶ 16.) The issue of valuation, particularly any discussions among the parties to the RSA regarding valuation and the TCEH Debtors' assessment of value, is thus a key issue underlying the bona fides of the Debtors' proposal to approve the RSA and a proper subject of discovery.

Second, with respect to the releases and resolution of inter-Debtor claims contemplated by the Proposed RSA, the TCEH Ad Hoc Group has highlighted from the beginning of these cases that there are significant potential litigation and avoidance claims in these cases that will need to be properly investigated and potentially pursued. The TCEH Debtors were the subject of the largest leveraged buy-out in history, with billions of dollars of secured debt being put on the assets to fund payments to the TCEH Debtors' former owners and significant assets transferred away from the TCEH Debtors to the E-side for no consideration. The TCEH Debtors also made hundreds of millions, if not billions, of dollars of prepetition payments and transfers to or for the benefit of Debtor and non-Debtor affiliates, insiders and third parties, which may well be subject to challenge or avoidance as fraudulent transfers or preferences.

---

[3] The TCEH Ad Hoc Group hereby joins in the requests made in the Brown Rudnick Letter and incorporates by reference the arguments contained therein.

3

The Honorable Christopher S. Sontchi.

June 3, 2014

The TCEH Debtors have nonetheless elected to bind themselves to the Proposed RSA pursuant to which they have agreed to broad releases of a long list of affiliates (including the non-TCEH Debtors), insiders (including the Debtors' sponsors, who have received hundreds of millions of dollars of fees and other payments since the LBO), and third parties (including the TCEH Debtors' Prepetition First Lien Creditors). (Term Sheet at 21-23.) Discovery regarding the basis for the TCEH Debtors' decision to forgo such claims without any consideration is absolutely essential, particularly as the record currently is devoid of any evidence that the TCEH Debtors properly evaluated the claims and causes of actions that they now propose to abandon.

The TCEH Debtors' decision to waive all claims against affiliates, insiders, and third parties is clearly the proper subject of discovery. Indeed, the proposed releases and resolution of claims are exactly the type of transactions requiring more scrutiny, not less. See, e.g., In re Los Angeles Dodgers LLC, 457 B.R. 308, 313 (Bankr. D. Del. 2011) (applying "entire fairness" standard and requiring proof of fair dealing and fair price and terms where director faced potential personal liability unless transaction in question was approved) (citing Moran v. Household Int'l, Inc., 500 A.2d 1346 (Del.Supr.1985)); Nixon v. Blackwell, 626 A.2d 1366, 1375-76 (Del. 1993) (holding that transactions approved by managers who stood to benefit from such transactions and were, therefore, on both sides of the transactions were subject to the "entire fairness" test); 7 Collier on Bankruptcy ¶ 1108.07[2] (Alan N. Resnick & Henry J. Sommer eds., 16th ed.) (noting the application of "the most searching standard of review" to "transactions in which there is a potential for managerial self-dealing").

Third, with respect to the tax issues, a central thesis of the TCEH Debtors' determination to enter into the Proposed RSA involves the purported benefits of avoiding certain tax liabilities. Specifically, Mr. Sawyer – the TCEH Debtors' so-called "disinterested" director put forward in support of the RSA Assumption Motion – states that his recommendation to enter into the Proposed RSA was based in part on his belief that it would avoid certain tax liabilities. (Sawyer Declaration ¶ 16.)

Where the tax implications of the proposed transactions (and other alternative transactions considered by the TCEH Debtors) played such a central role in the TCEH Debtors' decision-making and the TCEH Debtors have put that decision-making at issue, there is no basis to suggest that discovery regarding these tax issues is off limits. The TCEH Debtors cannot on the one hand ask the Court to allow them to enter into and assume the Proposed RSA, while refusing to produce discovery regarding their assessment of one of the key issues that they admit was driving value and recoveries and their ultimate decision to enter into the agreement. Nor would the TCEH Debtors' communications with any of the other Restructuring Support Parties regarding the various tax issues be exempt from proper discovery.

\* \* \*

In sum, the TCEH Ad Hoc Group respectfully requests that the Court order the Debtors to produce documents responsive to the document requests and on the topics listed above. We understand that the Court has indicated it intends to address the requests made in the Brown Rudnick Letter at the hearing currently scheduled for June 5. The TCEH Ad Hoc Group joins in

The Honorable Christopher S. Sontchi.

June 3, 2014

those requests, and further respectfully requests that the Court also address at that time the additional issues described above regarding releases and tax issues.

Respectfully submitted,

*/s/ Christopher Shore*

Christopher Shore

<u>Attachments</u>

cc (by electronic mail):    David R. Dempsey
Andrew R. McGaan
Bridget O'Connor
Stephen Hessler
Chad Husnick
Brian Schartz
Steven Serajeddini
Edward Sassower
Anthony Princi
Charles L. Kerr
Lorenzo Marinuzzi
J. Alexander Lawrence
Richard Schepacarter
Jeremy Coffey
Dan Defranceschi
Chris Ward
Edward S. Weisfelner
Aaron B. Lauchheimer