# EXHIBIT 1

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | ) Chapter 11 |
| | ) |
| ENERGY FUTURE HOLDINGS CORP., *et al.,* [1] | ) Case No. 14-10979 (CSS) |
| | ) |
| | ) (Jointly Administered) |
| Debtors. | ) |
| | ) |
| | ) |

## AD HOC GROUP OF TCEH UNSECURED NOTEHOLDERS' SECOND SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS TO THE DEBTORS PURSUANT TO RULES 7026 AND 7034

Pursuant to Rules 7026, 7034 and 9014 of the Federal Rules of Bankruptcy Procedure, and Rules 26 and 34 of the Federal Rules of Civil Procedure, and concerning the RSA Assumption Motion [Docket No. 505] (as that term is defined herein) and the above captioned debtors and debtors in possession in these Chapter 11 cases (collectively, the "Debtors"), the ad hoc group of certain holders (the "Ad Hoc Group of TCEH Unsecured Noteholders") of 10.25% Fixed Senior Notes due 2015 (including Series B) (the "Fixed Unsecured Notes") and 10.50%/11.25% Senior Toggle Notes due 2016 (the "Toggle Unsecured Notes" and, together with the Fixed Unsecured Notes, the "Unsecured Notes") issued by Texas Competitive Electric Holdings Company LLC ("TCEH") and TCEH Finance, Inc. ("TCEH Finance"), by and through its undersigned counsel, hereby request that Debtors produce for inspection and copying the documents and things requested below no later than **May 22, 2014**, at the offices of White &

---

[1] The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, for which the debtors have requested joint administration, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' proposed claims and noticing agent at http://www.ethcaseinfo.com.

Case LLP, 1155 Avenue of the Americas, New York, New York 10036, attention Christopher

Shore, or such other time and place as the parties shall agree.

## DEFINITIONS

1.      Each reference to a corporation, partnership, joint venture, unincorporated

association, government agency or other fictitious person shall be deemed to include each and all

of its subsidiaries, affiliates, predecessors and successors, and with respect to each of such

entities, its officers, directors, shareholders, employees, partners, limited partners,

representatives, agents, accountants, attorneys and any other person who acted on its behalf.

2.      Each reference to a natural person shall be deemed to include that person's agents,

attorneys and any other person who acted on that person's behalf.

3.      References to the singular shall include the plural and references to the plural

shall include the singular; the conjunctive shall include the disjunctive and the disjunctive shall

include the conjunctive; and the present tense shall include the past tense and the past tense shall

include the present tense.

4.      "And" and "or" shall be construed either disjunctively or conjunctively as

necessary to bring within the scope of the discovery request all responses that might otherwise be

construed to be outside of its scope.

5.      "Affiliate" of any specified Person means any other Person that directly, or

indirectly, through one or more intermediaries, controls, is controlled by, or is under common

control with, the Person specified.

6.      "Alternative Restructuring Transaction" means any proposed, contemplated, or

considered alternative to the restructuring transactions contemplated by the Proposed RSA,

including without limitation the "consolidated transaction structure" referenced in ¶ 15 of the

RSA Assumption Motion, the "taxable transaction that would trigger a deconsolidation tax but would give the new owners of TCEH and EFIH a full 'step-up' in tax basis" referenced in ¶ 16 of the RSA Assumption Motion, and each and every of the "all restructuring alternatives" referenced in ¶ 16 of the RSA Assumption Motion that Debtors allege were considered by the parties referenced therein.

7.      "Any," "all" and "each" shall be construed broadly, and shall mean each, any and all as necessary to bring within the scope of the discovery request all responses that otherwise could be construed to be outside of its scope.

8.      "Asset" means movable, immovable or real property of any kind.

9.      "Bankruptcy Code" means title 11 of the United States Code, and all provisions thereof.

10.      "Board" means any board of directors, managers, or comparable supervisory body, or any group or committee with the responsibility of, among other things, governing Debtors or overseeing the activities and operations of Debtors.

11.      "Chapter 11 Cases" means the chapter 11 cases, commenced by the Debtors in the United States Bankruptcy Court for the District of Delaware on April 29, 2014.

12.      "Claim" shall mean any claim against a Debtor as defined in section 101(5) of the Bankruptcy Code.

13.      "Communication" shall mean the transmittal of information (in the form of facts, ideas, inquiries or otherwise) including, without limitation, all discussions, dialogues, conversations, interviews, negotiations, cablegrams, mailgrams, telegrams, telexes, cables, correspondence, facsimiles, electronic mail, or other forms of written or verbal interchange,

however transmitted, including reports, notes, memoranda, lists, agenda, proposals, opinions and other Documents and records of communication.

14.    "Concerning," "referencing," "in connection with," "relating to," and "referring to" shall be construed to mean, without limitation, relating to, referring to, describing, evidencing, constituting, discussing, supporting, pertaining to, containing, analyzing, evaluating, studying, recording, showing, memorializing, reporting on, commenting on, mentioning, reviewed in conjunction with, setting forth, contradicting, refuting, considering, or recommending, in whole or in part.

15.    "Consolidated Restructuring Transaction" means any transaction considered, contemplated, or proposed concerning Debtors' restructuring through these Chapter 11 Cases that contemplated a "consolidated transaction structure," as referenced in ¶¶ 15-16 of the RSA Assumption Motion.

16.    "Debtors" means, collectively, Energy Future Holdings Corporation and its affiliated entities, as debtors in possession, as applicable which filed voluntary chapter 11 petitions under the Bankruptcy Code commencing these Chapter 11 Cases, and any of their subsidiaries, affiliates, divisions, subdivisions, departments, predecessors, successors, partners, principals, officers, directors, attorneys, accountants, agents, employees, representatives and other persons acting on its behalf.

17.    "Document" is used in the broadest sense and means any written, typed, printed, graphic or recorded matter of any kind or character, however produced or reproduced; any electronically or magnetically recorded matter of any kind or character, however produced or reproduced; and any other matter of any kind or character constituting a recording upon any medium by any means of communication or representation. The foregoing includes, but is not

limited to, all originals, including drafts, masters, duplicates or copies of: papers, conversations, letters, correspondence, memoranda, summaries, messages, voice mail messages, e-mail messages, Communications, data, databases, minutes, notes, transcripts, statements, circulars, manuals, treatises, books, notebooks, catalogs, pamphlets, flyers, advertisements of any kind, books of account, ledgers, balance sheets, bank deposit slips, bank checks, canceled checks, wire transfers, financial Documents of any kind, files, diaries, diary entries, telephone logs, appointment books, desk or other calendars and similar records of any kind, sound or visual recordings on film, tape, disc, drum, wire or other medium, transcriptions of the foregoing, photographs, sketches, diagrams, drawings, microfilm or microfiche, agreements, contracts, teletype, telegrams, cables, memorials or oral Communications, whether by telephone or face-to-face, notices, bulletins, polls, surveys, findings of fact, observations of facts or circumstances, reports, studies, tables, statistics, pleadings, objects, any data, information or statistics contained within any data storage modules, tapes, discs or other memory device or other information retrievable from storage systems, including but not limited to computer generated reports and print-outs. The term "Document" also includes data compilations or databases, including metadata, from which information can be obtained, and translated, if necessary, through detection devices in a reasonably usable form. If any Document has been modified by the addition of notations or otherwise, or has been prepared in multiple copies which are not identical, each modified copy or non-identical copy is a separate "Document."

18.    "EFCH" means Energy Future Competitive Holdings Company LLC.

19.    "EFH Corp." means Energy Future Holdings Corporation.

20.    "EFIH" means Energy Future Intermediate Holding Company LLC.

21.    "EFIH Debtors" means collectively, EFIH and EFIH Finance Inc.

22.     "Including" shall mean including, without limitation, or in any way qualifying, limiting or restricting the foregoing.

23.     "Keglevic First Day Declaration" means the *Declaration of Paul Keglevic, Executive Vice President, Chief Financial Officer, and Co-Chief Restructuring Officers of Energy Future Holdings Corp., et al., in support of First Day Motions*, dated April 29, 2014 [Docket No. 98].

24.     "Mr. Sawyer" refers to Hugh E. Sawyer.

25.     "Non-Debtor Affiliates" shall mean any affiliates of the Debtors who are not the subject of the above-captioned jointly administered Chapter 11 proceedings, and any Person acting on their behalf.

26.     "Oncor" means Oncor Electric Holdings Company LLC and Oncor Electric Delivery Company LLC, which are owned directly and indirectly, respectively, by EFIH.

27.     "Person" or "Persons" means all natural persons, corporations, partnerships or other business associations and all other legal or governmental entities or associations.

28.     "Proposed RSA" means the proposed Restructuring Support and Lock-Up Agreement, dated as of April 29, 2014, that is attached to the RSA Assumption Motion as Exhibit 1 to Exhibit A (including all exhibits and schedules attached thereto and as may be amended to supplemented from time to time).

29.     "Related Party Transactions" means a transaction between EFH Corp. or its subsidiaries, including EFCH, TCEH and TCEH Finance, on the one hand, and a related person, as defined in the Prospectus of TCEH and TCEH Finance, filed April 4, 2013 on the other hand.

30.     "Restructuring Support Parties" refers to those parties referenced in clause (xvi) on page 2 of the Proposed RSA.

31.     "RSA Assumption Motion" means the *Motion of Energy Future Holdings Corp., et al., for Entry of an Order Authorizing the RSA Debtors to Assume the Restructuring Support Agreement and Modifying the Automatic Stay*, filed on May 16, 2014 [Docket No. 505], and the relief requested by Debtors by that motion.

32.     "RSA Assumption Hearing" means any hearing to be conducted concerning the relief requested by the Debtors in the RSA Assumption Motion.

33.     "Sawyer Declaration" means the *Declaration of Hugh E. Sawyer, Disinterested Board Member of Texas Competitive Electric Holdings Company LLC and Energy Future Competitive Holdings Company LLC, in Support of the Motion of Energy Future Holdings Corp., et al., for Entry of an Order Authorizing the RSA Debtors to Assume the Restructuring Support Agreement*, dated May 16, 2014, that is attached to the RSA Assumption Motion as Exhibit C.

34.     "Shared Services Agreement" means the Agreement between TCEH LLC and EFH Corporate Services Company, dated October 23, 2013 (as amended).

35.     "TCEH" means Texas Competitive Electric Holdings Company LLC where not otherwise specified, includes all subsidiaries thereof.

36.     "TCEH Debtors" means, collectively, TCEH, EFCH, and each of their direct and indirect subsidiaries listed on the signature pages to the Proposed RSA.

37.     "TCEH Finance, Inc." means Texas Competitive Electric Holdings Finance, Inc.

38.     "TCEH Tax-Free Spin-Off Transaction" means the "tax-free 'spin-off' and concurrent deleveraging of TCEH" defined in ¶ 25 of the RSA Assumption Motion.

39.     "Term Sheet" means the Restructuring Term Sheet attached as Exhibit A to the Proposed RSA.

40.     "You" and "Your" shall mean the Debtors and all of their current and former affiliates, parents, subsidiaries, members, officers, directors, representatives, employees, agents, consultants, accountants, attorneys, financial advisors, predecessors, successors, assigns and any other person currently or formerly acting or purporting to act on the Debtors' behalf for any purpose whatsoever.

41.     Any ambiguity in a discovery request shall be construed to bring within the scope of the discovery request all responses that otherwise could be construed to be outside of its scope.

## **INSTRUCTIONS**

1.      Pursuant to Federal Rules of Bankruptcy Procedure 9014(c) and 7026 and Federal Rule of Civil Procedure 26(e), these requests for production shall be deemed continuing in nature so as to require you to file supplementary responses if you obtain new or different information up to and including the time of trial of this action.

2.      You are to produce the original and all non-identical copies, including all drafts, of each Document requested.  If you are not able to produce the original of any Document, please produce the best available copy and all non-identical copies, including drafts.

3.      When Documents, data, knowledge, or information in your possession are requested, such request includes the knowledge of your attorneys, accountants, agents, representatives, and experts, and any professional employed or retained by you, concerning any of the facts or issues involved in this bankruptcy.

4.      Each request herein extends to all Documents and Communications in the possession, custody or control of you or anyone acting on your behalf.  A Document is deemed to be in your possession, custody, or control if it is in your physical custody, or if it is in the

physical custody of any other person and you:  (1) own such Document in whole or in part; (2) have a right, by contract, statute or otherwise, to use, inspect, examine or copy such Document on any terms; (3) have an understanding, express or implied, that you may use, inspect, examine, or copy such Document on any terms; or (4) as a practical matter, have been able to use, inspect, examine, or copy such Document when you sought to do so.  If any requested Document was, but no longer is, in your control, state the disposition of each such Document.

5.      In responding to each request, you are to review and search all relevant files of appropriate entities and persons.

6.      All Document requests shall be deemed to include requests for any and all transmittal sheets, cover letters, enclosures, or any other annexes or attachments to the Documents.

7.      Notwithstanding anything else to the contrary herein, each word, term or phrase is intended to have the broadest meaning permitted under the Federal Rules and the Bankruptcy Rules.

8.      To the extent that you deem or consider any request to be ambiguous, you should construe the request to require the fullest and most complete disclosure of all information and requested Documents.

9.      The Documents responsive to this request shall be produced in such a fashion as to indicate clearly the (i) identity of the party making such production and (ii) the identity of the file from which the Documents were produced.

10.     *Emails*: E-mails shall be produced as single-page TIFF images accompanied by Document-level full text and Relativity and opticon load files. The following metadata shall be produced for each e-mail: starting bates, ending bates, to, from, other recipients (cc and bcc),

date sent, subject, body, attachments, begattach, endattach, source, and any applicable confidentiality designation (e.g., Confidential, Highly Confidential). E-mail attachments shall be handled according to the provisions stated below applicable to other electronic Documents.

11.    *Other electronic Documents*: Parties shall produce Excel Documents in native form accompanied by Document-level full text and load files. Word and other electronic Documents shall be produced as single-page TIFF images accompanied by Document-level full text and Relativity and opticon load files. The following metadata shall be produced for each electronic Document: starting bates, ending bates, author, source, date created, last modified date, extracted text, original filename, source, and any applicable confidentiality designation (e.g., Confidential, Highly Confidential).

12.    *Hard copy Documents*: All hard copy Documents shall be produced as single-page TIFF images accompanied by Document-level full text and Relativity and opticon load files.  The following metadata shall be produced for each Document: starting Bates, ending Bates, custodian, and any applicable confidentiality designation (e.g., Confidential, Highly Confidential).

13.    *TIFF images generally*: Any TIFF images produced shall consist of (a) single page, black and white, group IV TIFF images, one per image named after the bates number with extension ".tif"; and (b) text files, one file per Document (doc level text files with page breaks), named after the starting bates number of the Document, with extension ".txt". The .tiff and .txt files shall reside in the same directory. Metadata shall be provided in a Relativity-format delimited file with a .DAT file extension and ASCII 020 and 254 delimiters for column break and text qualifier. The first line shall be the header with field names, and each subsequent line shall contain the fielded data for each Document. All images should be 300 dpi resolution, all

black and white images should be single page Group IV TIFF (.tif), and all color images should be JPEG (.jpg). For each Document, a Document-level text file should be provided in addition to the TIFFs. The text of native files should be extracted directly from the native file and each text file should be named using its corresponding image files (e.g., MSC000001.TXT).

14.     The Documents responsive to this request shall be produced as they have been kept in the usual course of business or shall be organized and labeled to correspond with the enumerated categories in this request.

15.     If there are no Documents responsive to a particular Request, state so in writing.

16.     If any Document is withheld under any claim of privilege, including, without limitation, attorney-client privilege and attorney work product, you should provide the following information with respect to such Document:

(1)     The date of the Document;

(2)     The title of the Document;

(3)     The name of its author(s) or preparer(s) and an identification by employment and title of each such person;

(4)     The name of each person who was sent or furnished with, received, viewed or has custody of the Document or a copy thereof together with an identification by employment and title of each such person;

(5)     The request to which the Document relates;

(6)     The title and description of the Document sufficient to identify it without revealing the information for which privilege is claimed;

(7)     The claim of privilege under which it is withheld; and

        (8)     A description of the subject matter of the Document in sufficient detail to support your contention that the Document is privileged.

17.    If any Document responsive to these requests is known to have existed and cannot now be located, or has been destroyed or discarded, set forth a complete statement of the circumstances surrounding such loss or destruction, including:

        (1)     a description of the Document, including the date, a summary of its contents and the identity of its author and the person(s) to whom it was sent or shown;

        (2)     the last known custodian;

        (3)     whether the Document is missing or lost or was destroyed or discarded;

        (4)     the date of loss, destruction or discard;

        (5)     the manner of destruction or discard;

        (6)     the reason(s) for destruction or discard;

        (7)     the person(s) authorizing or carrying out such destruction or discard; and

        (8)     the efforts made to locate lost or misplaced Documents.

18.    If after exercising due diligence to secure them, you cannot provide some or any of the requested Documents, so state and provide all Documents to the extent possible, specifying the reason for your inability to produce the remainder of the Documents, and stating whatever information or knowledge you have concerning each Document not produced.

19.    If any requested Document or other Document potentially relevant to this action is subject to destruction under any Document retention or destruction program, the Document

should be exempted from any scheduled destruction and should not be destroyed until the conclusion of this action or unless otherwise permitted by the Court.

20.     If an objection is made to any request, state your objection and the ground or grounds with particularity in your written response.  If an objection is made only to part of the request, identify that part in your written response and state your objection and the ground(s).

21.     An objection or claim of privilege directed to part of a request does not constitute an excuse for failure to respond to the parts of a request for which no objection or claim of privilege is made.  No part of any Request should be left unanswered merely because an objection is interposed to another part of the Request. If a partial or incomplete answer is provided, You shall state that the answer is partial or incomplete.

22.     Unless otherwise indicated in a particular request, the time period covered by these requests is from January 1, 2013 to the present date and shall encompass all Documents and information concerning in whole or in part such period, or events or circumstances during such period, even though dated, prepared, generated or received prior to that date.

## DOCUMENT REQUESTS

1.     All Documents concerning the Proposed RSA including without limitation any drafts of the Proposed RSA or the Term Sheet.

2.     All Documents concerning any Communications made by, on behalf of, or received by the TCEH Debtors concerning the Proposed RSA or any Alternative Restructuring Transactions, including without limitation any negotiations with the Restructuring Support Parties and/or EFH Corp.'s equity owners.

3.     All Documents concerning any assessment, evaluation, consideration, or analysis of a consolidated restructuring transaction, as referenced in ¶¶ 15-16 of the RSA Assumption

Motion, including without limitation any assessment, evaluation, consideration or analysis of the tax implications of any such consolidated restructuring transaction.

4.      All Documents concerning any assessment, evaluation, consideration or analysis of the respective value of the various Debtor entities in connection with any restructuring transaction considered by the TCEH Debtors.

5.      All Documents concerning any assessment, evaluation, consideration or analysis of a deconsolidated restructuring transaction, as referenced in ¶ 16 of the RSA Assumption Motion, including without limitation any assessment, evaluation, consideration or analysis of the tax implications of any such deconsolidated restructuring transaction.

6.      All Documents concerning any assessment, evaluation, consideration or analysis of a restructuring transaction that would not trigger a deconsolidated tax, including without limitation any assessment, evaluation, consideration or analysis of the TCEH Tax-Free Spin-Off Transaction.

7.      All Documents concerning any negotiation of the TCEH Tax-Free Spin-Off Transaction, including without limitation any negotiations with the Restructuring Support Parties and/or EFH Corp.'s equity owners.

8.      All Documents concerning any Communications with any holders of the "TCEH First Lien Claims" (as that term is referenced in ¶ 3 of the RSA Assumption Motion) concerning a transaction that would separate TCEH from EFH Corp.

9.      All Documents concerning the TCEH Debtors' assessment, evaluation, consideration or analysis of any Alternative Restructuring Transactions.

10.     All Documents concerning any demands or offers made to settle any claims or disputes among the Debtors, any of the Restructuring Support Parties, and/or EFH Corp.'s equity owners.

11.     All Communications concerning any claims or disputes that would be compromised or released under the Proposed RSA.

12.     All Documents concerning any assessment, evaluation, consideration or analysis of the releases contained in the Proposed RSA.

13.     All Documents concerning any assessment, evaluation, consideration or analysis of any consideration or value going to the TCEH Debtors in connection with any of the releases contained in the Proposed RSA.

14.     All Documents concerning any assessment, evaluation, consideration or analysis of any restructuring transactions that did not include a release for EFH Corp.'s equity owners.

15.     All Documents concerning the TCEH Debtors' assessment, evaluation, consideration or analysis of any restructuring transactions that did not include a release for the EFIH Debtors.

16.     All Documents concerning the TCEH Debtors' assessment, evaluation, consideration or analysis of any restructuring transactions that did not include a release for the EFH Corporate Services.

17.     All Documents on which the TCEH Debtors relied in connection with deciding to settle or release any claim or dispute with any other Debtor, any of the Restructuring Support Parties and/or EFH Corp.'s equity owners.

18.    All Documents concerning the payment of fees and expenses under the Proposed RSA, including without limitation the Debtors' agreement to pay or reimburse the fees and expenses of any of the Restructuring Support Parties and/or EFH Corp.'s equity owners.

19.    All Documents concerning the TCEH Debtors' decision to appoint Mr. Sawyer as a director at TCEH and EFCH in October 2013, including without limitation any Board meeting minutes, presentations, consents, resolutions, agenda, or other corporate records regarding his appointment, and any Communication with Mr. Sawyer regarding his appointment.

20.    All Documents concerning any compensation or other consideration provided or to be provided to Mr. Sawyer in connection with his appointment as a director at TCEH and EFCH.

21.    All Documents concerning any Board meeting minutes, presentations, consents, resolutions, agenda, or other corporate records of the TCEH Debtors from January 1, 2009, including without limitation any Documents concerning Related Party Transactions.

22.    All Documents concerning the "break-out sessions . . . without other Board members" involving Mr. Sawyer, that are referenced in ¶ 24 of the RSA Assumption Motion and ¶ 8 of the Sawyer Declaration.

23.    All Documents concerning the "numerous one-off telephone conversations with various members of the Debtors' management team and/or the Debtors' advisors" in which Mr. Sawyer engaged that are referenced in ¶ 24 of the RSA Assumption Motion and ¶ 8 of the Sawyer Declaration, including Documents sufficient to identify (a) the date and time of all such conversations; (b) the identity of the participants in each such conversation; (c) the specific subject matter of each such conversation; and/or (d) any documents or other materials provided to Mr. Sawyer in connection with such conversations.

24.    All Documents concerning any other meetings, conversations, or other Communications between Mr. Sawyer and any of the other TCEH Debtors' Board members.

25.    All Documents considered or reviewed by the TCEH Debtors' Boards since January 1, 2013 concerning any potential restructuring transaction.

26.    All Documents considered or reviewed by the TCEH Debtors' Boards concerning the Proposed RSA or RSA Assumption Motion, including without limitation all Documents considered by the TCEH Debtors' Boards at the April 28, 2014 joint meeting of the Boards to determine whether to enter into the Proposed RSA.

27.    All Documents concerning the discussion of "all potential conflicts associated with the proposed transaction" referenced in ¶ 22 of the RSA Assumption Motion.

28.    All Documents concerning the "detailed presentations regarding risks and benefits associated with the [RSA]" that are referenced in ¶ 23 of the RSA Assumption Motion.

29.    All Documents concerning the proposed transfer of operating assets and liabilities from EFH Corp. to TCEH referenced in ¶ 27 of the RSA Assumption Motion.

30.    All Documents concerning the Milestones (as defined in ¶¶ 35 of the RSA Assumption Motion) set forth in the Proposed RSA.

31.    All Documents concerning the Termination Events set forth in Section 8 of the Proposed RSA and ¶ 39 of the RSA Assumption Motion.

32.    All Documents concerning the statement in ¶ 47 of the RSA Assumption Motion that "absent the transactions contemplated in the Restructuring Support Agreement, the Debtors would be presented with potential tax liabilities that could prevent the Debtors from emerging from chapter 11 and eliminate unsecured creditor recoveries at EFH Corp., EFIH and TCEH."

33.     All Documents concerning the purported "significant cost savings for the RSA Debtors, their estates, and creditors" that is referenced in ¶ 52 of the RSA Assumption Motion.

34.     All Documents concerning the TCEH Debtors' assertion that assumption of the Proposed RSA is an exercise of reasonable business judgment under Bankruptcy Code section 365(a).

35.     All Documents considered or reviewed by Mr. Sawyer in connection with his consideration of whether the TCEH Debtors should enter into the Proposed RSA, including without limitation (a) the presentations made during the various Board meetings Mr. Sawyer attended, as referenced in ¶ 7 of the Sawyer Declaration; and (b) "all the information and advice" that Mr. Sawyer received, as referenced in ¶ 8 of the Sawyer Declaration.

36.     All Documents that Mr. Sawyer considered or relied upon in connection with his recommendation to "the full TCEH board that it should approve the Restructuring Support Agreement," as referenced in ¶ 14 of the Sawyer Declaration.

37.     All Documents Mr. Sawyer considered or relied upon in connection with making the statement that "the Restructuring Support Agreement also likely maximizes value for the TCEH estate by eliminating the need for the long and protracted legal battle that would have resulted in the absence of such a plan," as referenced in ¶ 15 of the Sawyer Declaration.

38.     All Documents concerning Mr. Sawyer's consideration of any potential tax liability arising from certain deconsolidation-based restructuring transactions, as referenced in ¶ 16 of the Sawyer Declaration.

39.     All Documents concerning Mr. Sawyer's consideration of any potential unsecured claim by EFH against TCEH under a tax sharing agreement, as referenced in ¶ 16 of the Sawyer Declaration.

40.    All Documents concerning any assessment, evaluation, consideration, or analysis conducted by the TCEH Debtors regarding the value of the Proposed RSA to EFH Corp. or the EFIH Debtors, including without limitation any Documents concerning the value to EFH Corp. or the EFIH Debtors of avoiding any tax liability associated with a deconsolidated restructuring transaction.

41.    All Documents concerning the tax liability referenced in ¶ 16 of the Sawyer Declaration, including without limitation all Documents that form the basis for Mr. Sawyer's statement that "on account of the additional tax liability referenced above, EFH would, in turn, have a potential unsecured claim against TCEH in excess of $3 billion under a tax sharing agreement, therefore reducing the recovery of EFH's and TCEH's unsecured creditors."

42.    All Documents reviewed or considered by Mr. Sawyer in approving any of the TCEH Debtors' entry into the Proposed RSA.

43.    All Documents concerning any assessment, evaluation, consideration, or analysis of the value of the assets comprising the Debtors' estates.

44.    All Documents concerning any analysis of a liquidation of the TCEH Debtors, including without limitation any liquidation analysis prepared by the TCEH Debtors or any other Debtor.

45.    All Documents concerning the parties' inability to "agree on the respective value of the various Debtor entities" referenced in ¶ 16 of the RSA Assumption Motion, including without limitation any Communications among such parties regarding their respective valuation(s) of Debtors' estates.

46.    All Documents relating to any valuation, solvency or reasonably equivalent value analysis, fairness or legal opinion, or memoranda, prepared internally or by investment bankers,

financial analysts, accountants, consultants, lawyers, or any other Person, relating to the Proposed RSA.

47.    All Documents concerning any assessment, evaluation, consideration or analysis of the value of the assets of the TCEH Debtors on a stand-alone basis, including without limitation the basis for any such valuations.

48.    All Documents concerning any valuation analysis or appraisals performed since January 1, 2009 with respect to any of the TCEH Debtors' assets, including without limitation any valuation prepared by Duff and Phelps.

49.    All Documents concerning any assessment, evaluation, consideration or analysis of the value of the assets to be retained by the Reorganized TCEH (as that term is used in the RSA Assumption Motion) under the terms of the Proposed RSA.

50.    All Documents concerning any agreements between the TCEH Debtors and (a) financial advisors, lawyers, and other professionals of the TCEH Debtors (or any other Debtor) and/or (b) financial advisors, lawyers, and other professionals employed or engaged by third parties, including creditors, creditor groups, or informal committees of creditors of the TCEH Debtors (or any other Debtor); including without limitation a list of all amounts paid or payable under such agreements.

51.    All Documents concerning the retainer paid to Sidley Austin LLP that is referenced in Exhibit F of the Monthly Operating Report filed by Debtors on May 14, 2014 [Docket No. 444], including without limitation all Documents concerning which Debtor entity or entities paid that retainer.

52.     All Documents concerning the work performed by Sidley Austin LLP in connection with the retainer that is referenced in Exhibit F of the Monthly Operating Report filed by Debtors on May 14, 2014 [Docket No. 444].

53.     All Documents concerning the investigation performed by Sidley Austin LLP referenced during the Frist Day Hearing on May 1, 2014.  (See Transcript of May 1, 2014 Proceedings at 90).

54.     All Documents concerning any assessment, evaluation, consideration, or analysis of any claims of causes of action that could be or have been brought by or against the TCEH Debtors.

55.     All Documents concerning any assessment, evaluation, consideration, or analysis of any potential preference claims under section 547 of the Bankruptcy Code.

56.     All Documents concerning any assessment, evaluation, consideration, or analysis of any potential fraudulent conveyance claims under section 544 and/or section 548 of the Bankruptcy Code.

57.     All Documents concerning any assessment, evaluation, consideration, or analysis of any potential claims or causes of action by the TCEH Debtors against any other Debtor.

58.     All Documents concerning any assessment, evaluation, consideration, or analysis of any potential claims or causes of action by the TCEH Debtors against any of the Restructuring Support Parties and/or EFH Corp.'s equity owners.

59.     All Documents concerning Debtors' policies and procedures concerning the consideration, approval, or denial of any consummated or contemplated intercompany or Related Party Transactions.

60.     All Documents concerning any tax allocation arrangements or agreements from January 1, 2009 to the present, including without limitation all business plan projections, financial analyses, or minutes of any meetings of the TCEH Debtors' Boards concerning tax allocation.

61.     All tax sharing and tax allocation agreements between or among the Debtors, including without limitation the Federal and State Income Tax Allocation Agreement Among the Members of the Energy Future Holdings Corp. Consolidated Group dated May 15, 2012 (the "Tax Sharing Agreement") and prior versions or amendments thereto.

62.     All Documents concerning the division of tax liability or tax refunds among the Debtors, or between Debtors and any Non-Debtor Affiliates.

63.     All Documents concerning the amount and valuation of EFH Corp.'s consolidated operating losses or any other tax attribute from January 1, 2009 to the present.

64.     All Documents concerning any net operating losses or any other tax attributes that have been allocated to the TCEH Debtors, including without limitation any agreements relating thereto.

65.     All Documents concerning any tax elections that are planned to be made by or with respect to the TCEH Debtors as part of or in connection with the Proposed RSA.

66.     Copies of IRS Form 1120 or 1120S and each Schedule K-1 filed by EFH Corp. from 2009 to present.

67.     Copies of IRS Form 1065 and each Schedule K-1 filed by [EFH Corp.] from 2009 to present.

68.     All Documents concerning any tax ruling requests to be made as part of or in connection with the Proposed RSA, including without limitation the "Required Ruling" as

defined in the Proposed RSA and any other ruling concerning the proposed the TCEH Tax-Free Spin-Off Transaction.

69.    All Documents concerning the Debtors' execution of a "tax matters" agreement as referenced in ¶ 169 of the Keglevic First Day Declaration.

70.    All Documents concerning any assessment, evaluation, consideration, analysis, or comparison of any "step-up" in tax basis for the new owners of TCEH and EFIH in connection with the Proposed RSA or any Alternative Restructuring Transaction.

71.    All Documents concerning any assessment, evaluation, consideration, or analysis of any potential tax liabilities arising from the transactions contemplated by the Proposed RSA or any Alternative Restructuring Transaction considered by the Debtors.

72.    All Documents concerning any assessment, evaluation, consideration, or analysis of the "partial" step-up in tax basis for the new owners of TCEH in connection with the Proposed RSA.

73.    All Documents that form the basis for the statement "[t]he taxable deconsolidation of EFIH from EFH would create a tax of more than $3 billion (which would also result in a $3 billion tax from the taxable deconsolidation of TCEH from EFH)" set forth in ¶ 9 of the *Declaration of David Ying, Senior Managing Director Of Evercore Group L.L.C., In Support Of The Motion Of Energy Future Intermediate Holding Company LLC And EFIH Finance Inc. for Entry of an Order (A) Approving Postpetition Second Lien Financing, (B) Granting Liens and Providing Superpriority Administrative Expense Claims, (C) Authorizing the Use of Cash Collateral, (D) Authorizing the EFIH Second Lien Repayment, (E) Authorizing Entry Into and Payment of Fees Under the Commitment Letter, and (F) Modifying the Automatic Stay*, dated May 15, 2014 [Docket No. 478].

74.     All Documents concerning the suggestion that "certain restructuring scenarios…would trigger in excess of $6 billion of aggregate tax liability" as referenced in ¶ 15 of the Keglevic First Day Declaration.

75.     All Documents concerning any assessment, evaluation, consideration, or analysis of the "potential taxable gain that would arise based on the tax basis and the fair market value of TCEH's assets and EFIH's interests in Oncor" as referenced in footnote 8 of the Keglevic First Day Declaration.

76.     All Documents concerning any assessment, evaluation, consideration, or analysis of the tax basis of the TCEH Debtors' assets.

77.     All Documents concerning any assessment, evaluation, consideration, or analysis of the tax basis of EFIH's interests in Oncor and EFH Corp.'s interests in Oncor (as a result of EFIH's status as a disregarded entity) and in EFIH.

78.     All management agreements, mutual services agreements, or any agreements related thereto, including without limitation the Shared Services Agreement, to which the TCEH Debtors are a party.

79.     All Documents concerning the Shared Services Agreement, including without limitation any prior version of the Shared Services Agreements or amendments thereto.

80.     All Documents concerning any assessment, evaluation, consideration, or analysis of the allocation under the Shared Services Agreement of any Shared Services (as that term is defined therein), including without limitation any assessment, evaluation, consideration, or analysis of the allocation of costs, fees or expenses under the Shared Services Agreement.

81.     All Documents concerning the deposit letter of credit created on February 18, 2014 in support of the obligations of TCEH under the Shared Services Agreement, and all Documents concerning any amounts drawn (or projected to be drawn) under the same.

82.     Documents sufficient to identify all payments made by the TCEH Debtors to (a) non-insider parties within the 90 days prior to the Petition Date in excess of $1 million and (b) insiders within one year of the Petition Date in excess of $1 million.

83.     All Documents concerning the proposed treatment of the "General Unsecured Claims" (as that term is used in the Term Sheet) against the TCEH Debtors, including but not limited to all documents concerning any change in the proposed treatment of such claims since January 1, 2013.

84.     All Documents concerning any assessment, evaluation, consideration, or analysis of the distribution that the TCEH Debtors expect that holders of "General Unsecured Claims" (as that term is used in the Term Sheet) against the TCEH Debtors will receive under the plan contemplated by the Proposed RSA.

85.     The TCEH Debtors' business plans and budget forecasts from January 1, 2009 to the present.

86.     All Documents concerning any business plans or budget forecasts related to the operation of the Debtors during these Chapter 11 Cases.

87.     All Documents concerning TCEH Debtors' current financial condition, cash on hand, and revenue stream for the foreseeable future, including but not limited to financial forecasts, income statements, balance sheets, statement of cash flows, analyses of ability to pay future debts, including assumptions and sources for assumptions.

88.     All Documents sufficient to show the Debtors' projected cash flows, earnings and income during these Chapter 11 Cases.

89.     All Documents concerning the costs and administrative expenses incurred by (or projected to be incurred by) the Debtors in these Chapter 11 Cases.

90.     All Documents concerning the Debtors' cost of operating during these Chapter 11 Cases.

91.     All Documents concerning any assessment, evaluation, consideration or analysis of the length of time it will take for the Debtors to emerge from these Chapter 11 Cases.

92.     All income statements and/or balance sheet statements for the TCEH Debtors (a) as of the Petition Date and (b) annually since January 1, 2009.

93.     All Documents concerning any intercompany transaction greater than $1 million of value since January 1, 2009 between the TCEH Debtors and any other Debtor or Non-Debtor Affiliate, including EFH Corporate Services Company.

94.     All Documents on which You rely or intend to rely in connection with the RSA Assumption Motion.

95.     All Documents supplied to, or reviewed by, any expert witness or consultant retained by the Debtors in connection with the RSA Assumption Motion, including any Communications between the Debtors and any such expert witness or consultant.

96.     All exhibits or demonstrative aids that Debtors may use or rely upon at the RSA Assumption Hearing.

Dated:      May 19, 2014
              New York, New York

              WHITE & CASE LLP

              By:      */s/ Gregory M. Starner*
              J. Christopher Shore (admitted *pro hac vice*)
              Gregory M. Starner (admitted *pro hac vice*)
              1155 Avenue of the Americas
              New York, NY 10036
              Telephone:  (212) 819-8200
              Facsimile:  (212) 354-8113
              gstarner@whitecase.com
              cshore@whitecase.com

              Thomas E Lauria (admitted *pro hac vice*)
              Matthew C. Brown (admitted *pro hac vice*)
              Southeast Financial Center, Suite 4900
              200 South Biscayne Blvd.
              Miami, FL 33131
              Telephone:  (305) 371-2700
              Facsimile:  (305) 358-5744
              tlauria@whitecase.com
              mbrown@whitecase.com

              and

              FOX ROTHSCHILD LLP
              Jeffrey M. Schlerf (No. 3047)
              John H. Strock (No. 4965)
              L. John Bird (No. 5310)
              919 North Market St., Suite 1600
              Wilmington, DE 19801
              Telephone:  (302) 654-7444
              Facsimile:  (302) 463-4971
              jschlerf@foxrothschild.com
              jstrock@foxrothschild.com
              lbird@foxrothschild.com

              *Counsel to the Ad Hoc Group of*
              *TCEH Unsecured Noteholders*