**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) | Case No. 14-10979 (CSS) |
| Debtors. | ) | (Jointly Administered) |
| | ) | **Re: D.I. 25, 31, 37, 38, 629** |

**SUPPLEMENTAL DECLARATION OF PAUL KEGLEVIC, EXECUTIVE VICE PRESIDENT, CHIEF FINANCIAL OFFICER, AND CO-CHIEF RESTRUCTURING OFFICER OF ENERGY FUTURE HOLDINGS CORP., *ET AL.*, IN SUPPORT OF THE CUSTOMER PROGRAMS MOTION [D.I. 31], THE TDSP MOTION [D.I. 38], THE WAGES MOTION [D.I. 25], THE WAGES MOTION SUPPLEMENT [D.I. 629], AND THE CASH MANAGEMENT MOTION [D.I. 37]**

---

[1] The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, for which joint administration has been provided on an interim basis, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' proposed claims and noticing agent at http://www.efhcaseinfo.com.

Pursuant to 28 U.S.C. § 1746, I, Paul Keglevic, hereby declare as follows under penalty of perjury:

1. I am the Executive Vice President, Chief Financial Officer, and Co-Chief Restructuring Officer of Energy Future Holdings Corp. ("EFH Corp.") a corporation organized under the laws of the state of Texas; its direct subsidiary, Energy Future Competitive Holdings Company LLC ("EFCH"), a limited liability company organized under the laws of the state of Delaware; EFCH's direct subsidiary, Texas Competitive Electric Holdings Company LLC ("TCEH LLC" and, together with EFCH and TCEH LLC's direct and indirect subsidiaries, "TCEH," and the entities composing TCEH that are debtors in these chapter 11 cases, the "TCEH Debtors"), a limited liability company organized under the laws of the state of Delaware; and EFH Corp.'s direct subsidiary, Energy Future Intermediate Holding Company LLC ("EFIH"), a limited liability company organized under the laws of the state of Delaware. EFH Corp., various other direct and indirect subsidiaries of EFH Corp. that are debtors in these chapter 11 cases, the TCEH Debtors, and EFIH are collectively referred to as the "Debtors" in this declaration.

2. I have worked for the Debtors since 2008. I am generally familiar with the Debtors' businesses, day-to-day operations, financial matters, results of operations, cash flows, and underlying books and records. All facts set forth in this declaration are based upon my personal knowledge of the Debtors' businesses, operations, and related financial information gathered from my review of their books and records, relevant documents, and information supplied to me by members of the Debtors' management team and advisors. I am over the age of 18 and duly authorized to execute this Declaration on behalf of the Debtors in support of:

- the *Motion of Energy Future Holdings Corp.*, et al., *for Entry of (A) an Order Authorizing the Debtors to (I) Maintain and Administer Customer Programs and*

*Customer Agreements, (II) Honor Prepetition Obligations Related Thereto, (III) Pay Certain Expenses on Behalf of Certain Organizations, (IV) Fix the Deadline to File Proofs of Claim for Certain Customer Claims, and (V) Establish Procedures for Notifying Customers of Commencement of the Debtors' Chapter 11 Cases, Assumption of Customer Agreements, and the Bar Date for Customer Claims and (B) an Order Authorizing Certain of the Debtors to Assume the Customer Agreements* [D.I. 31] (the "Customer Programs Motion");

- the *Motion of Energy Future Holdings Corp.,* et al., *for Entry of (A) an Order Authorizing Certain of the Debtors to Pay Certain Prepetition Transition Charges and Delivery Charges and (B) an Order Authorizing Certain of the Debtors to Assume Transmission and Distribution Service Agreements* [D.I. 38] (the "TDSP Motion");

- the *Motion of Energy Future Holdings Corp., et al., for Entry of Interim and Final Orders Authorizing (A) the Debtors to (I) Pay Certain Prepetition Compensation and Reimbursable Employee Expenses, (II) Pay and Honor Employee and Retiree Medical and Similar Benefits, and (III) Continue Employee and Retiree Benefit Programs, and (B) Modifying the Automatic Stay* [D.I. 25] (the "Wages Motion");

- the *Supplement to the Motion of Energy Future Holdings Corp., et al., for Entry of Interim and Final Orders (A) Authorizing the Debtors to (I) Pay Certain Prepetition Compensation and Reimbursable Employee Expenses, (II) Pay and Honor Employee and Retiree Medical and Similar Benefits, and (III) Continue Employee and Retiree Benefit Programs and (B) Modifying the Automatic Stay* [D.I. 629] (the "Wages Motion Supplement"); and

- the *Motion of Energy Future Holdings Corp., et al., for Entry of an Order (A) Authorizing the Debtors to (I) Continue Using Their Existing Cash Management System, (II) Maintain Existing Bank Accounts and Business Forms, and (III) Continue Using Certain Investment Accounts; (B) Authorizing Continued Intercompany Transactions and Netting of Intercompany Claims; and (C) Granting Postpetition Intercompany Claims Administrative Expense Priority* [D.I. 37] (the "Cash Management Motion").

3. Specifically, this Declaration addresses: (a) the Brighten Programs (as defined herein) administered by TXU Energy Retail (as defined in the Customer Programs Motion); (b) assumption of the Oncor Delivery Agreements (as defined in the TDSP Motion); (c) certain relief and information described in the Wages Motion and Wages Motion Supplement; and (d) the composition of certain state margin tax claims as addressed in the Cash Management Motion.

**I. Customer Programs Motion (The Brighten Programs).**

4. As described in the Customer Programs Motion, the Debtor entity TXU Energy Retail Company LLC ("TXU Energy Retail") offers an energy savings program to certain business customers known as Brighten GreenBack (the "Brighten GreenBack Program"). TXU Energy Retail also provides its customers with discounts and incentives to purchase energy-saving items through its Brighten Online Energy Store (the "Brighten Online Store" and, together with the Brighten GreenBack Program, the "Brighten Programs").

5. The Brighten Programs are managed by, and affiliated with, TXU Energy Retail ***only***. The Brighten Programs have no relationship with any other Debtor entity or any other affiliated non-Debtor entity, including, for the avoidance of doubt, the EFH Corp. non-Debtor subsidiary, Brighten Holdings LLC or its subsidiaries.

**II. TDSP Motion (The Oncor Delivery Agreements).**

6. Pursuant to the TDSP Motion, the Debtors TXU Energy Retail, 4Change Energy Company LLC, and Luminant ET Services Company are seeking to assume 23 electricity transmission and distribution service provider agreements (the "Delivery Agreements") with seven non-debtor regulated transmission and distribution utility service providers, including four of such Delivery Agreements with non-Debtor affiliate Oncor Electric Delivery Company LLC ("Oncor").

7. Because the payment amounts due under the Delivery Agreements are dictated by standard tariffs established by the applicable regulations, I do not believe there are any potential causes of action under chapter 5 of the Bankruptcy Code against Oncor that will be waived as a result of the assumption of the Delivery Agreements to which Oncor is a party.

**III. Wages Motion and Wages Motion Supplement.**

**A. Labor Grievance and Arbitration Program.**

8. Under the terms of the Debtors' collective bargaining agreements ("CBAs"), the Debtors are required to follow certain dispute resolution procedures to resolve labor grievances (as defined in the Wages Motion Supplement, the "Labor Grievance and Arbitration Program"). The Labor Grievance and Arbitration Program requires immediate verbal and written communication of grievances and implements an arbitration protocol in case such grievances cannot consensually be resolved.

9. I understand that there are currently over 150 outstanding labor grievances and that historically, individual labor grievance settlements cost the Debtors approximately $6,500, on average. I believe that if the Debtors could not utilize the Labor Arbitration and Grievance Program to efficiently hear and settle labor grievances, the Debtors would expend additional cost (potentially in excess of $6,500) to resolve such grievances. The CBAs require the Debtors to utilize the Labor Arbitration and Grievance Program and I believe that in order to act in accordance with the CBAs on a postpetition basis, the Debtors must continue to use the procedures outlined in the Labor Arbitration and Grievance Program.

10. As of the Petition Date, I understand that the Debtors estimate that they are required to pay approximately $2,200 in connection with settled prepetition grievances. I believe that authority granted pursuant to the *Interim Order (A) Authorizing the Debtors to (I) Pay Certain Prepetition Compensation and Reimbursable Employee Expenses, (II) Pay and Honor Employee and Retiree Medical and Similar Benefits, and (III) Continue Employee and Retiree Benefit Programs, and (B) Modifying the Automatic Stay* [D.I. 322], which allows the Debtors to continue performing under the CBAs in the ordinary course of business, permits the Debtors to continue hearing and settling labor grievances in accordance with prepetition practices. Out of

an abundance of caution, I believe the Debtors also sought relief from the automatic stay in the Wages Motion Supplement to continue hearing and settling labor grievances.

**B. Satisfaction of Prepetition Claims Using Draws on Letters-of-Credit.**

11. As described in the Wages Motion and Wages Motion Supplement, the Debtors seek to pay prepetition amounts owed to the Staffing Providers on a final basis. One of the Staffing Providers, Pinnacle Technical Resources, Inc., ("Pinnacle") has two letters of credit posted to its benefit. The Debtors initially sought to pay Pinnacle pursuant to the Wages Motion because Pinnacle is the largest Staffing Provider used by the Debtors, and the Debtors have used Pinnacle's services for a number of years.

12. Following the Petition Date, Pinnacle drew on its letter of credit in full satisfaction of its prepetition claims. As a result, the Debtors are no longer seeking authority to satisfy prepetition claims owed to Pinnacle in its capacity as a Staffing Provider pursuant to the Wages Motion.

**C. Regulatory Consultants and Board Consultants.**

13. The Debtors historically engage the services of specialized advisory boards as well as two former senior executives to advise on strategic and operational matters.

- ***Nuclear Oversight Advisory Board***. The Nuclear Oversight Advisory Board (the "NOAB") provides oversight and makes regular reports to the Debtors with respect to the management and operations of their nuclear generation business. The NOAB is composed of five members, three of whom are unaffiliated with the Debtors. I understand that the two members who are affiliated with the Debtors do not receive compensation for their services and that the unaffiliated NOAB members earn between $120,000 and $180,000 annually (paid out on a quarterly basis) for their services.

- ***Sustainable Energy Advisory Board***. The Sustainable Energy Advisory Board (the "SEAB") is a ten member advisory board composed of individuals with significant knowledge of the issues affecting the Debtors' businesses, including issues related to customers, economic development, environment, labor, and reliability/technology. The SEAB regularly advises the Debtors in their efforts to enable economic development and social progress by providing

safe, reliable, affordable and environmentally sustainable power. The SEAB is appointed by the EFH Corp. board of directors and, with the exception of one member, is composed of members otherwise unaffiliated with the Debtors. I understand that the affiliated SEAB member does not receive compensation for his services as a SEAB member and that the unaffiliated SEAB members earn $10,000 annually, which can be paid in cash, directed to the charity of their choice, or declined. Further, I understand SEAB members are reimbursed for expenses incurred in the course of their engagement.

- ***Board Consultants***. The Debtors employ two former senior executives as advisors to the EFH Corp. board of directors (as defined in the Wages Motion, the "Board Consultants"). Mr. Thomas Baker is the former President and Chief Executive Officer of Oncor and EFCH's predecessor entity, TXU US Holdings Company, and Mr. Michael Greene is the former vice chairman of the EFH's predecessor entity, TXU Corp. I believe the Board Consultants possess a tremendous amount of institutional knowledge about the Debtors' operations and are uniquely positioned to guide the Debtors going forward. I understand the Board Consultants are paid approximately $250,000 annually for their services (paid on a quarterly basis) and reimbursed for expenses incurred in the course of their engagement.

## IV. Cash Management Motion.

14. The Debtors are seeking final relief in connection with the Cash Management Motion that will allow them to, among other things, pay or settle any prepetition Intercompany Claims asserted by EFH Corp. on account of transfers under the Competitive TSA (as defined in the Cash Management Motion) in an amount not to exceed $40 million. I understand that $40 million reflects the total prepetition state margin tax for which EFCH and TCEH LLC and its direct and indirect subsidiaries (collectively, the "TCEH Debtors") are liable to a relevant unaffiliated party and is composed of (a) $27 million authorized on an interim basis pursuant to the *Interim Order (A) Authorizing the Debtors to (I) Continue Using their Existing Cash Management System; (II) Maintain Existing Bank Accounts and Business Forms, and (III) Continue Using Certain Investment Accounts; (B) Authorizing Continued Intercompany Transactions and Netting of Intercompany Claims; and (C) Granting Postpetition Intercompany Claims Administrative Expense Priority*; (b) $3 million on account of the remaining balance

attributable to the TCEH Debtors' activities (excluding Oncor) for 2013; and (c) $10 million on account of the remaining balance attributable to the TCEH Debtors' activities (excluding Oncor) for the period between January 2014 to April 2014.

[*Remainder of the page left intentionally blank.*]

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my information and belief.

*/s/ Paul Keglevic*
Paul Keglevic
Executive Vice President, Chief Financial Officer, and Co-Chief Restructuring Officer of EFH Corp., EFIH, and TCEH LLC