UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| ENERGY FUTURE HOLDINGS CORP., *et al.*, | Case No.: 14-10979 (CSS) |
| Debtors. | (Jointly Administered) |
| | Hearing Date: June 5, 2014 at 9:30 a.m. |
| | Re: D.I. 71, 632 and 725 |

**AURELIUS CAPITAL MANAGEMENT, LP'S SUR-REPLY TO**

**THE CORRECTED REPLY OF SEVEN OF THE ELEVEN MEMBERS OF
THE AD HOC COMMITTEE OF TCEH FIRST LIEN CREDITORS TO OBJECTIONS TO**

**THE MOTION OF TEXAS COMPETITIVE ELECTRIC HOLDINGS COMPANY LLC
AND CERTAIN OF ITS DEBTOR AFFILIATES FOR ENTRY OF INTERIM AND FINAL
ORDERS (A) AUTHORIZING USE OF CASH COLLATERAL, (B) GRANTING
ADEQUATE PROTECTION, (C) MODIFYING THE AUTOMATIC STAY, AND
(D) SCHEDULING A FINAL HEARING**

Aurelius Capital Management, LP ("Aurelius"), on behalf of itself and certain of its

managed funds, has previously filed a limited objection (the "Objection")[1] to the Motion referenced

above [D.I. 71] (the "Cash Collateral Motion").  In a corrected Reply filed yesterday [D.I. 725] (the

"Reply"), seven (7) of the eleven (11) members of the Ad Hoc Committee of TCEH First Lien

Creditors (the "Seven Lenders") replied to Aurelius's Objection.[2] *All of those seven members are*

*First Lien Lenders that own no First Lien Notes.*[3]  Aurelius respectfully submits this sur-reply in

response.

---

[1] Reference is hereby made to the Objection and the terms thereof are incorporated herein by reference.

[2] *See* Reply at 5, n. 5 and 24-39.  While the Seven Lenders assert that "approximately 43% of the First Lien Notes . . . support entry of the Final Cash Collateral Order[,]" none of the holders of the First Lien Notes (0%) have joined in the Seven Lenders' Reply or otherwise opposed Aurelius's request for the First Lien Adequate Protection Payments to be allocated in accordance with the terms of the First Lien Intercreditor Agreement.

[3] *See Amended Verified Statement of the Ad Hoc Committee of TCEH First Lien Creditors Pursuant to Bankruptcy Rule 2019* [D.I. 607].

I.      **Preliminary Statement**

1.      Aurelius has undertaken the expense and effort to seek enforcement – for the benefit
of all holders of First Lien Notes – of the contractual commitment the First Lien Lenders made to
the holders of First Lien Notes concerning (i) how the Collateral[4] would be shared between them
and (ii) how each payment resulting from the lien on that Collateral would be allocated between
them.  That commitment should be enforced, and the Prepetition First Lien Creditors should be
adequately protected on the basis of their respective shares of the Collateral, in both regards as
determined by the contract among them and not by any other standard.  Just as the Prepetition First
Lien Creditors correctly seek to hold the Prepetition Second Lien Creditors to the intercreditor
agreement between them, so too should the Prepetition First Lien Creditors be held to their
agreement inter se.

2.      Although Aurelius is content to entrust this issue to the Court for determination on
the merits, the Seven Lenders exert much energy trying to avoid that.  First they accuse Aurelius of
not acting altruistically.  Aurelius admits to this "sin" and harbors suspicions that even the Seven
Lenders may be due for like confession.  Second, they criticize Aurelius for being alone in having
the courage – and the faith in the rule of law – to hold the Seven Lenders to their bargain.  This
criticism is best directed elsewhere.  Regardless, it is irrelevant to the merits.  Third, the Seven
Lenders contend that Aurelius is not even allowed to have its Objection heard.  Then, they
mischaracterize both Aurelius's arguments and the contract.  Having gotten that out of their system,
the Seven Lenders seek to moot the Objection by indefinitely escrowing the money to which the
holders of First Lien Notes are entitled.

II.     **The First Lien Intercreditor Agreement Does Not Prohibit Aurelius's Objection**

3.      Contrary to the Reply, Section 6.1 of the First Lien Intercreditor Agreement does not

---

[4] Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Objection.

waive Aurelius's right to contest the allocation of the First Lien Adequate Protection Payments.

Section 6.1 only prohibits the Prepetition First Lien Creditors from objecting to the use of cash

collateral:

> [E]ach . . . Secured Party agrees that such Secured Party (a) will be deemed to have consented to, will raise no objection to, nor support any other Person objecting to, the **use of such Cash Collateral** . . . so long as (i) **each Secured Party retains the right to object** to such use of Cash Collateral or to the granting of any priming liens over any Collateral **if the terms thereof**, including the terms of adequate protection (if any) granted to the Secured Parties in connection therewith, **do not provide for materially equal treatment to all Secured Parties**. . . .

First Lien Intercreditor Agreement at § 6.1 (emphasis added).

4.      Aurelius is not objecting to the use of Cash Collateral, or even to the amount of the

First Lien Adequate Protection Payments to be made by the Debtors.  Aurelius objects solely to the

way in which the Debtors propose to <u>allocate</u> the First Lien Adequate Protection Payments among

the Prepetition First Lien Creditors.  That objection is not restricted by Section 6.1 of the First Lien

Intercreditor Agreement.

5.      To read Section 6.1 otherwise would amount to allowing it to supersede numerous

other provisions of the First Lien Intercreditor Agreement prescribing how Collateral should be

allocated among Prepetition First Lien Lenders.  If Aurelius's Objection is correct, surely Section

6.1 was not intended to alter the meaning of those sections.

6.      Even if Section 6.1 were otherwise applicable to the Objection, it would permit

Aurelius to submit its objection where, as is proposed here, the Prepetition First Lien Creditors

would not receive "materially equal treatment."  Surely that equality of treatment is to be judged

from the perspective of the substantive provisions of the First Lien Intercreditor Agreement

governing the sharing of Collateral.[5]  Those provisions dictate that sharing among Prepetition First

Lien Creditors be proportional to the amounts they are due from time to time, not the amounts due

them at a static point in time.  And the materiality of this inequality is obvious from the Seven

Lenders' strenuous opposition to Aurelius's objection, as well as from the substantially different

interest rates among the various first lien debts.

III.    **The Proposed Reservation of Rights and Escrow Arrangement Improperly Defers Determination of a Matter Ripe For Review and Does Not "Moot" Aurelius's Objection**

7.      The Seven Lenders' proposed reservation of rights and escrow arrangement does not

"moot" the Objection or "completely and fairly address Aurelius'[s] concern . . . ."  To the contrary,

this proposed solution would indefinitely deprive Aurelius and other holders of First Lien Notes of

their full share of the First Lien Adequate Protection Payments.  Aurelius has a present right to

payment of its ratable share of the First Lien Adequate Protection Payments and the issue here is

ripe for review.  The Seven Lenders' exertion for indefinite delay of that which can be resolved

presently bespeaks a desire to end-run the First Lien Noteholders' entitlement.

8.      However, should the Court be disinclined to rule on the substance of this issue at this

juncture, Aurelius respectfully requests that it be heard at the next scheduled omnibus hearing or as

soon thereafter as the Court's calendar can accommodate.

IV.    **The First Lien Intercreditor Agreement Applies to the Distribution of First Lien Adequate Protection Payments**

9.      The Seven Lenders reserve the right to argue that Section 4.1 of the First Lien

Intercreditor Agreement does not apply to the allocation of the First Lien Adequate Protection

Payments because they are not "proceeds of Collateral received in connection with the sale or

---

[5] "Equality among creditors who have lawfully bargained for different treatment is not equity but its opposite." *Chem. Bank N.Y. Trust Co. v. Kheel*, 369 F.2d 845, 848 (2d Cir. 1966) (Friendly, J., concurring).

disposition upon[6] the exercise of remedies by the Collateral Agent." That argument fails because, among other things, the First Lien Adequate Protection Payments are payments to compensate the Prepetition First Lien Creditors for a diminution in value of their Collateral. In addition, Section 4.1 of the First Lien Intercreditor Agreement is triggered by the Collateral Agent's acquiescence in or agreement to the proposed allocation of the First Lien Adequate Protection Payments because, in doing so, the Collateral Agent is enforcing its rights, under Sections 5.5 and 8.3 of the Security Agreement, to adequate protection.[7]

## V.    Post-Petition Interest is Due and Payable for Purposes of Section 4.1

10.    The Seven Lenders argue that post-petition interest is not an allowable claim or "due and payable" by the Debtors and, as a result, cannot be considered in determining the Secured Obligations of the parties for purposes of the sharing formula in Section 4.1 of the First Lien Intercreditor Agreement. This is incorrect. First, the Seven Lenders completely ignore the fact that the First Lien Notes contain an automatic acceleration provision that has rendered all amounts (including post-petition interest) currently due and payable. While the automatic stay operates to preclude the holders of the First Lien Notes from enforcing their rights under the First Lien Notes Indenture, that does not change the fact that the principal and interest on the First Lien Notes is, by terms of the contract between the parties, "due and payable."[8]

---

[6] Notably, the Seven Lenders omitted key language from Section 4.1 of the First Lien Intercreditor Agreement, which provides that the sharing formula is triggered by payment of "Collateral or any proceeds thereof received in connection with the sale or other disposition of, **or collection on,** such Collateral . . . ." (emphasis added).

[7] The "Security Agreement" refers to that certain Amended and Restated Security Agreement, dated as of October 10, 2007, as amended and restated as of August 7, 2009, among TCEH, the Subsidiary Grantors, and Citibank, N.A., as Collateral Agent (the "Security Agreement"). A true and correct copy of the relevant pages of the Security Agreement is attached hereto as Exhibit A. Under Sections 5.5 and 8.3 of the Security Agreement, the Collateral Agent, as the secured party, has all rights with respect to the Collateral that are available to a secured party under any applicable law. Of course, "any applicable law" includes the Bankruptcy Code and, in particular, the enforcement of the rights of a secured party under sections 361 and 363 to adequate protection for the use of its collateral including cash collateral, and of the rights of a secured party to adequate protection when it is being primed under section 364.

[8] Because the Seven Lenders have conveniently ignored the fact that the First Lien Notes were automatically accelerated on the Petition Date, thereby making the post-petition interest due and payable by the Debtors, there is little need to play the "dictionary game" with the Seven Lenders on the so-called plain meaning of "due and payable." Nevertheless, The

11.     <u>Second</u>, even if the First Lien Notes were not due and payable by virtue of the automatic acceleration provision, the First Lien Intercreditor Agreement provides that post-petition interest continues to accrue and is included the sharing calculus <u>as among the Prepetition First Lien Creditors</u> – without regard to whether that interest is allowed or allowable or payable by the Debtors.  In light of the fact that Section 4.1 of the First Lien Intercreditor is modified by the terms "[r]egardless of any Insolvency or Liquidation Proceeding[,]" and the definition of "Secured Obligations" includes post-petition interest that accrues after the commencement of a bankruptcy proceeding, whether matured or unmatured and whether or not allowed or allowable, the only logical reading of Section 4.1, as a whole, is that post-petition interest should be included in the pro rata calculation when determining how payments are allocated among Prepetition First Lien Creditors, regardless of whether such interest was allowed or allowable in any chapter 11 case.  Any other reading would render the qualifying term "regardless of any Insolvency or Liquidation Proceeding" (and the inclusion of post-petition interest in the definition of "Secured Obligations") superfluous.  As the Seven Lenders point out, such a result cannot stand.  *See Galli v. Metz*, 973 F.2d 145, 149 (2d Cir. 1992) ("Under New York law an interpretation of a contract that has 'the effect of rendering at least one clause superfluous or meaningless . . . is not preferred and will be avoided if possible.'") (quotation omitted).

12.     Had the parties intended for post-petition interest to be omitted from a pro rata determination during the pendency of a chapter 11 case, they would have clearly provided for such omission in the plain language of the First Lien Intercreditor Agreement.  They did not.  In contrast, the plain language of the First Lien Intercreditor Agreement states, in a myriad of different ways, that post-petition interest should be added to the debts owing to the Prepetition First Lien Creditors

---

World Book Dictionary (Millennium Edition), defines "due" as including "owed on a debt," " to be paid as a right looked for or expected," " set by agreement," "promised to come," "(of notes, bills and other obligations) becoming payable;" and defines "payable" as including "required to be paid," "that may be paid;" "capable of being discharged by delivering the value in money or goods."

when calculating a party's pro rata share under Section 4.1.

13.    <u>Third</u>, contrary to what the Seven Lenders argue, interest does not stop accruing on the Petition Date and then magically begin accruing again at some indeterminate point in the future that, according to the Seven Lenders, is the date on which a determination is made under Bankruptcy Code section 506(b) that the secured creditor is oversecured.  In fact, section 506(b) supports the contention that interest continues to accrue during the cases and the only question is whether that interest will constitute an allowable claim against the Debtors.  Likewise, under Bankruptcy Code section 502, although the amount of the claim is determined for purposes of allowance as of the Petition Date, and unmatured interest is not allowable, the statute does not suspend the running of interest; it merely limits the amount of the claim for purposes of allowance.  Using post-petition interest in the sharing formula under the First Lien Intercreditor Agreement is no different, conceptually, from an intercreditor and subordination agreement that permits a senior tranche to extract post-petition interest from a junior tranche even if the claim for such interest is not allowable against the debtor.

14.    <u>Finally</u>, the cases relied upon by the Seven Lenders are inapposite because they each deal with a situation in which the issue is whether payment in question (interest or otherwise) is "payable" under the terms of the underlying governing documents.  *See, e.g., U.S. Bank, N.A. v. Barclays Bank PLC*, No. 11 Civ. 9199 (WHP), 2013 WL 1180414 (S.D.N.Y. Mar. 12, 2013) (contract specifically rendered relevant debt not "due and payable"); *Becker v. North's Restaurants, Inc.*, 967 P.2d 1246 (Or. Ct. App. 1998) (same); *In re W. Texas Mktg. Corp.*, 155 B.R. 399, 404 (Bankr. N.D. Tex. 1993) (determining whether post-petition interest was payable <u>by the debtor</u> under the Bankruptcy Code and Texas statute as opposed to whether the terms of any contract provided for such interest to be due and payable).  Here, by contrast, the governing documents clearly provide that post-petition interest continues to accrue for purposes of calculating each

Prepetition First Lien Creditor's pro rata share of any payments, regardless of any bankruptcy filing and whether a post-petition interest claim is allowed or allowable.  Whether post-petition interest is currently "allowed" as a claim against the Debtors is not the issue here.  The issue is whether interest continues to accrue post-petition and therefore is due and payable as between creditors for purposes of the ratable sharing formula in Section 4.1 of the First Lien Intercreditor Agreement – which, as described herein and in the Objection, it is.

## VI.    The Language In Paragraph G of the Interim Order Is Irrelevant And Does Not "Moot" the Objection

15.    Paragraph G of the Interim Order – stating that the First Lien Adequate Protection Payments shall be allocated based upon the amounts of the parties' respective Prepetition First Lien Obligations owing as of the Petition Date – is not an adjudicated fact.  Rather, it is an historical acknowledgment of what the Debtors and the Seven Lenders are attempting to do here – ignore the First Lien Intercreditor Agreement.  The fact has no more probative value than if the Debtors and the Seven Lenders agreed the sky is green.  While it might be historically correct to state that the parties made such an agreement, that agreement does not make the sky green.

16.    The proposed "Petition Date Allocation Calculation" contained in the Proposed Final Order is inconsistent with the terms of the First Lien Intercreditor Agreement and violates Aurelius's and the First Lien Noteholders' rights to receive their contractually-designated ratable share of the First Lien Adequate Protection Payments.  That the proposed allocation was included as a "finding of fact/conclusion of law" in the Interim Order makes no difference.  That same order also provides that the order is not intended to alter the rights of the parties to the First Lien Intercreditor Agreement.  *See* Proposed Final Order at ¶ 17(a).  The issue is joined:  the proper allocation of the First Lien Adequate Protection Payments among the Prepetition First Lien Creditors is what is currently before the Court and ready to be adjudicated.

8

## CONCLUSION

Based upon the foregoing, Aurelius respectfully reiterates its requests that the Proposed Final Order, if approved by this Court, direct that the First Lien Adequate Protection Payments be remitted to the First Lien Collateral Agent to be shared with all Prepetition First Lien Creditors in accordance with the ratable sharing provision of Section 4.1 of the First Lien Intercreditor Agreement (which includes recognition of the ongoing accrual of post-petition interest), and that any prior distributions of First Lien Adequate Protection Payments that were inconsistent with Section 4.1 be remedied immediately.  Should the Court be disinclined to rule on the substance of this issue at this juncture, Aurelius respectfully requests that it be heard at the next scheduled omnibus hearing or as soon thereafter as the Court's calendar can accommodate.

**(PAGE INTENTIONALLY LEFT BLANK)**

Dated: June 3, 2014

Respectfully submitted,

**GELLERT SCALI BUSENKELL & BROWN, LLC**

/s/ Michael Busenkell
Michael Busenkell (Del. Bar No. 3933)
913 N. Market St.
Suite 1001
Wilmington, Delaware 19801
Tel.:  302.425.5812
Fax.: 302.425.5814
E-mail:  mbusenkell@gsbblaw.com

and

**GOODWIN PROCTER LLP**
William P. Weintraub
Kizzy L. Jarashow
The New York Times Building
620 Eighth Avenue
New York, New York  10018
Tel.:  212.813.8800
Fax.: 212.355.3333
E-mail:  wweintraub@goodwinprocter.com
        kjarashow@goodwinprocter.com

*Counsel to Aurelius Capital Management, LP*