# KIRKLAND & ELLIS LLP
AND AFFILIATED PARTNERSHIPS

555 California Street
San Francisco, CA 94104

Mark McKane
To Call Writer Directly:
(415) 439-1473
mark.mckane@kirkland.com

(415) 439-1400

www.kirkland.com

Facsimile:
(415) 439-1500

June 4, 2014

**By Hand**

The Honorable Christopher S. Sontchi
United States Bankruptcy Judge
United States Bankruptcy Court
824 North Market Street, 5th Floor
Wilmington, Delaware 19801

Re: *In re Energy Future Holdings, Corp., et. al.* (Case No. 14-10979)

Dear Judge Sontchi:

I write in response to Mr. Weisfelner's June 2, 2014 letter on behalf of Wilmington Savings Fund Society, FSB ("WSFS") [D.I. 698], and Mr. Shore's June 3, 2014 letter on behalf of the TCEH Ad Hoc Group of Unsecured Noteholders (the "TCEH Ad Hoc Group") [D.I. 749], which request that this Court compel the Debtors to produce "massive"[1] valuation and other confirmation-related discovery in connection with the Debtors' Motion for Entry of an Order Authorizing the RSA Debtors to Assume the Restructuring Support Agreement and Modifying the Automatic Stay (the "RSA Assumption Motion") [D.I. 505]. The Debtors seek to clarify the current state of discovery with respect to the RSA Assumption Motion, and to address the appropriate scope of discovery with respect to that motion. Contrary to the assertions of both creditors, the case law is clear that an RSA Assumption Motion does not require inquiry into valuation and other confirmation-related subjects.

As explained more fully below, the Debtors have already produced and will continue to produce significant volumes of information relevant to the appropriate scope of inquiry under a motion to assume a restructuring support agreement. And the Debtors will provide valuation and other confirmation-related discovery in due course. This dispute is thus not about whether the Debtors will provide such confirmation-related discovery after a reasonable search. It is instead about the sequence of that discovery and the timing of a valuation and confirmation trial. To this

---

[1] In describing the WSFS requests at issue during the May 22, 2014 hearing, Mr. Weisfelner candidly (and accurately) described the requests as "massive." 5/22/2014 Hr'g Tr. at 243:17-25 ("*notwithstanding the fact that we had served massive – reasonably massive – discovery requests* that were asked to be returnable in advance of those depositions. *When I say reasonably massive, they are massive* …" (emphasis added)). *Id.*

## KIRKLAND & ELLIS LLP

The Honorable Christopher S. Sontchi
June 4, 2014
Page 2

end, the Debtors have declined to prioritize WSFS's and the TCEH Ad Hoc Group's numerous and extremely broad requests relating to valuation and other confirmation issues ahead of other pending discovery requests to the Debtors. The Debtors' approach is consistent with settled caselaw that an RSA assumption motion is not the place to have a trial concerning valuation or other confirmation-related issues. The approach, moreover, appropriately balances the need to prioritize responses to competing requests with the practical realities of discovery in a large, contested restructuring.

The Debtors respectfully request that the Court decline WSFS's and the TCEH Ad Hoc Group's invitation to accelerate valuation and other confirmation-stage inquiries to the RSA Assumption Motion stage. The Debtors should not be compelled to produce on an accelerated basis documents that are well beyond the scope of the RSA Assumption Motion, ahead of other more time-sensitive categories of requests to which the Debtors are currently working to respond. In addition, the Debtors also request that the Court clarify the scope of the June 30, 2014 hearing regarding the RSA Assumption Motion, as well as the appropriate scope of inquiry in depositions relating to that motion. WSFS, the TCEH Ad Hoc Group, and others should not be permitted to conduct dress rehearsals of the valuation or confirmation trials that will take place in a few months' time by shoehorning questions well outside the scope of the RSA Assumption Motion into their examinations at the June 30 hearing or at depositions relating to the RSA Assumption Motion. To do so would be both inconsistent with the settled caselaw defining the appropriate scope of motions to assume a restructuring support agreement.

### A.    The Scope of the RSA Assumption Motion

The Debtors seek limited relief in their RSA Assumption Motion, as explained in the first pages of that briefing:

> Assuming the Restructuring Support Agreement at this point in the chapter 11 process *will serve the limited purpose* of allowing the RSA Debtors to commit—*as debtors and debtors in possession*—to achieving the transactions described in the Restructuring Support Agreement. One purpose of this Motion is to ensure that the RSA Debtors maintain the agreed-upon timeframe set forth in the Restructuring Support Agreement and, to the extent they do not, to permit the Restructuring Support Parties to exercise their rights to terminate the Restructuring Support Agreement.

RSA Assumption Motion at ¶ 6 (emphasis added). The Debtors made clear that they "are not seeking to limit the rights of any party in interest with respect to any of the steps required to confirm the Plan. If the Court enters the Order, the Debtors will still need to obtain approval of a disclosure statement, solicit votes on the Plan, and otherwise comply with all of the requirements

## KIRKLAND & ELLIS LLP

The Honorable Christopher S. Sontchi
June 4, 2014
Page 3

with respect to confirmation of the Plan." *Id.* ¶ 7.  The Debtors only sought narrow relief in connection with this motion, "solely focused on protecting the carefully negotiated bargains reached in the Restructuring Support Agreement among the parties thereto with respect to a path forward in these chapter 11 cases. ***All other disputes that may arise in the context of achieving confirmation of the Plan remain to be addressed by the parties and/or the Court at the appropriate time***." *Id.* ¶ 8 (emphasis added); *see* 5/22/2014 Hr'g Tr. at 244:18-245:4 (WSFS counsel acknowledging that what Debtors are "really committing themselves to . . . [is] to pay some 20 odd million dollars of professional fees").

The narrow scope of this motion is reinforced by the fact that the Debtors can walk away from the RSA in certain circumstances.  Specifically, the Restructuring Support Agreement contains two fiduciary-related provisions, including an unqualified fiduciary out:

> Any Debtor may terminate this Agreement as to all Parties upon five (5) business days' prior written notice, delivered in accordance with Section 11.11 hereof, upon the occurrence of any of the following events: …(c) the board of directors, board of managers, or such similar governing body of any Debtor determines based on advice of counsel that proceeding with any of the Restructuring Transactions would be inconsistent with the exercise of its fiduciary duties…

*See* Restructuring Support Agreement, § 8.06(c).  The Debtors have reserved the right to opt out of the Restructuring Support Agreement.  And, even if the Debtors do not opt out of that agreement, WSFS, the TCEH Ad Hoc Group, and other non-RSA parties will still have the right to object to the disclosure statement or plan of reorganization.  Everyone will have their day in court—just at the appropriate time.

This approach is consistent with settled case law concerning the appropriate scope of a RSA motion.  Courts have repeatedly made clear that, in assessing the assumption of plan support agreements, the court is not ruling on the underlying plan or its elements.  For example, in *In re Delphi Corp.*, No. 05-44481, *111 (Bankr. S.D.N.Y. Jan. 12, 2007), in deciding to approve the assumption of the plan support agreement, the court caveated that it was "not ruling today on the underlying plan or any elements of it." ¶¶ 18-19.  Similarly, in assessing the proposed assumption of a restructuring support agreement in *In re Genco Shipping & Trading Limited*, Case No. 14-11108 (SHL) (Bankr. S.D.N.Y. Apr. 24, 2014), the court emphasized that confirmation-related objections could wait: "[O]bjection[s] to the RSA and to that plan resulting from the RSA can be appropriately raised in an objection to plan confirmation.  At this point, the Court is only being asked to approve assumption of the RSA; that is, the agreement among most of the parties in this bankruptcy."

KE 32010666.1

**KIRKLAND & ELLIS LLP**

The Honorable Christopher S. Sontchi
June 4, 2014
Page 4

  The RSA motion is not the appropriate vehicle to determine whether "TCEH's going-concern value is substantially higher than the value being advanced by the Debtors and TCEH 1st lien lenders," as WSFS suggests. (WSFS Ltr. at 4 ("While WSFS concedes that it may, indeed, be premature for a full-blown valuation trial, the Debtors' unsupported valuation thesis can and must be tested on a preliminary basis in order for the RSA to be properly considered.")). As Judge Lane explained in *Genco*, "***the issue of valuation and any objection to valuation is an issue that is preserved for confirmation***, as Judge Glenn's ResCap decision makes clear." Hr'g Tr. at 18:25-19:2 (attached as Exhibit A) (emphasis added).

  This Court has also acknowledged the distinction between approving plan support agreements and the ultimate confirmation of a plan in *In re Visteon Corp.*, No. 09-11786 (CSS) (Bankr. D. Del. June 17, 2010), Hr'g Tr. at 24:19-25:3 (attached as Exhibit B). In *Visteon*, Mr. Shore, counsel to the Ad Hoc Group here, argued on behalf of the parties to that plan support agreement that there was no need for a valuation determination upon the contract's assumption; only fees were being paid, and the valuation issues would be determined instead at confirmation. The Court agreed, rejecting the argument that approval of a plan support agreement would result in a party "los[ing] their right to have [a] valuation fight." *Id.* at 25:19-20. It follows that the appropriate time and place for valuation discovery is at plan confirmation, not in connection with a contract assumption motion.

  Nor is there any need at this stage to test valuation on a "preliminary basis," whatever that might mean. (WSFS Ltr. at 3.) As Judge Lane explained, "[a] motion to assume [a restructuring support agreement] should be considered a summary proceeding intended to efficiently review a trustee or debtor's decision to adhere to or reject a particular contract in the course of swift administration of the bankruptcy estate. ***It is not the time or place for prolonged discovery or a lengthy trial with disputed issues***." *Genco* Hr'g Tr at 21:23-22:3 (emphasis added).

  Consistent with these decisions, the Debtors have not, as WSFS and the TCEH Ad Hoc Group suggest, put valuation at issue by filing its RSA Assumption Motion. The TCEH Ad Hoc Group, for example, argues that its discovery requests should be addressed now because, in the RSA motion, the Debtors explained that the "Proposed RSA … 'represents an enormous step toward a successful chapter 11 plan of reorganization"; the deal "will significantly reduce the time spent in chapter 11 and further reduce restructuring costs by eliminating potentially significant litigation;" and that the "Debtors' respective Boards discussed the terms of the Proposed RSA." (Ad Hoc Ltr. at 2.) This is disingenuous at best. None of these assertions—or the others that the Debtors make in their RSA motion—merit the immediate "massive" discovery and evidentiary trial concerning valuation and other confirmation-related issues that WSFS and the TCEH Ad Hoc Group demand.

## KIRKLAND & ELLIS LLP

The Honorable Christopher S. Sontchi
June 4, 2014
Page 5

### B.   WSFS's Purportedly RSA Assumption Motion-Related Requests

Notwithstanding the narrow scope of the RSA Assumption Motion, the TCEH Ad Hoc Group issued 96 sweeping requests purportedly relating to the RSA Assumption Motion. In reality, these requests relate primarily to valuation and other subjects that will be addressed at the confirmation stage. (*See* TCEH Ad Hoc Group Second Set of Requests for Production of Documents to the Debtors Pursuant to Rules 7026 and 7034 (attached as Exhibit C).) WSFS issued another 26 similarly broad requests (*see* WSFS Requests for Production of Documents to the Debtors Pursuant to Federal Rules of Civil Procedure 26 and 34 (attached as Exhibit D)), in addition to the dozens of requests the EFIH first and second lien noteholders served. On May 28, 2014, WSFS consolidated its 26 individual requests into six extremely broad categories of requests, each of which had numerous subparts. (*See* 5/28/2014 Email from J. Coffee to B. O'Connor et. al (attached as Exhibit E).) These sweeping categories call for the production of, among other things, "models supporting projections from Form 8-K's," "Cash, Unrestricted and Restricted" in various categories, projections as to wholesale and retail volumes from 2014 to 2018, and natural gas price forecasts and sources.

Parties have now served more than 100 document requests supposedly relating to the RSA Assumption Motion. The TCEH Ad Hoc Group served almost 100, suggested that the Debtors prioritize production concerning some, but has not narrowed the scope of a single one. The vast majority of the requests — including WSFS's six broad categories — relate to valuation and other confirmation-related topics that fall well outside the appropriate scope of a motion to assume a restructuring support agreement.

### C.   WSFS Omits Mention of the Significant RSA Assumption Motion-Related Discovery Already Produced and that Debtors Have Agreed to Produce

The Debtors have agreed to produce expeditiously nonprivileged documents responsive to those topics that relate to the relief requested in the RSA Assumption Motion.[2] In fact, the Debtors have already produced a number of documents relating to the RSA Assumption Motion, including all of the final Board minutes and packages from October 31, 2013 through late-April 2014, which contain materials related to discussion and decisions regarding the Restructuring Support Agreement. The Debtors have also already produced communications between the

---

[2]   Both the TCEH Ad Hoc Group and WSFS suggest that the Debtors did not respond to RSA-related discovery until they insisted on a meet and confer. *See* TCEH Ad Hoc Group Ltr. at 2; WSFS Ltr. at 1. This is not true. The Debtors began producing RSA-related discovery, including negotiations and board materials, well before either asked to sit down to talk. At the same time, the Debtors were in the process of producing over 100,000 pages of materials responsive to various parties' document requests and several witnesses—including three 30(b)(6) witnesses—for deposition.

**KIRKLAND & ELLIS LLP**

The Honorable Christopher S. Sontchi
June 4, 2014
Page 6


Debtors, Evercore, and Kirkland & Ellis LLP, on the one hand, and RSA counterparties, on the other, concerning the Restructuring Support Agreement, including negotiation over its terms. To date, the Debtors have produced thousands of pages of documents that reference the RSA, derivations on that term, or other related issues.

In addition, the Debtors have already produced, or will produce nonprivileged documents relating to the Restructuring Support Agreement (including drafts and term sheets regarding the Restructuring Support Agreement); communications and negotiations regarding the proposed Restructuring Support Agreement; and the payment, fees, milestone, and termination events under the proposed Restructuring Support Agreement. Similarly, the Debtors also have already produced, or will produce, nonprivileged documents relating to the board discussion, consideration, or decision-making regarding the Restructuring Support Agreement, including those relating to the tax implications of entering into the Restructuring Support Agreement (versus alternatives to doing so); the potential for TCEH to separate from EFH in a taxable manner if the Restructuring Support Agreement were not approved; and the value of the Restructuring Support Agreement to EFH Corp.

The Debtors advised WSFS and the TCEH Ad Hoc Group by letter on Friday, May 30, 2014: (i) that the Debtors have already produced numerous documents on RSA Assumption Motion-related subjects; (ii) of the categories of documents that the Debtors were agreeing to produce (as described above); and (iii) that the Debtors expect to complete production of these additional materials by June 13, 2014. (*See* May 30, 2014 Letter from B. O'Connor to G. Starner and J. Stoll (attached as Exhibit F).) The statement in the TCEH Ad Hoc Group's June 3 letter that they "understand that the Debtors intend to object to, and not produce documents responsive to, any document requests concerning . . . [v]aluation of the TCEH Debtors' Assets . . ., Inter-Debtor Releases and Claims Resolution . . ., and Tax Issues . . ." is directly contradicted by the Debtors' May 30 letter. The Debtors specifically explained that the Debtors planned to produce documents in those categories *insofar as those documents reflected information related to board discussion, consideration or decision-making regarding the Restructuring Support Agreement on those topics*. (*See* May 30 Debtors' Ltr. at 1-2.) Notably, each of the TCEH Ad Hoc Group's arguments in support of broad discovery centers on the decision-making relating to the Restructuring Support Agreement as to those topics. (*See* TCEH Ad Hoc Group Ltr. at 3-4 ("*discussions among the parties to the RSA regarding* valuation"; "the *TCEH Debtors' decision* to forgo such claims"; "the TCEH Debtors' decision to waive all claims against affiliates, insiders, and third parties"; "TCEH Debtors' determination to enter into the Proposed RSA involves the purported benefits of avoiding certain tax liabilities")(emphasis added).

In addition to the substantial productions that have already been made, WSFS and the TCEH Ad Hoc Group, as well as others, will have the opportunity to examine TCEH Chief Financial Officer and the Debtors' Co-CRO Paul Keglevic, as well as TCEH disinterested Board

**KIRKLAND & ELLIS LLP**

The Honorable Christopher S. Sontchi
June 4, 2014
Page 7

member Hugh Sawyer regarding what was presented to and considered by the Board in rendering its decision to approve the Restructuring Support Agreement.[3]

Discovery concerning these issues will provide objecting parties a full opportunity to test the TCEH Debtors' business judgment in deciding to approve the Restructuring Support Agreement. *See In re Caribbean Petroleum Corp.*, 444 B.R. 263, 268 (Bankr. D. Del. 2010) ("Courts normally leave the decision to reject a contract to the debtor's sound business judgment."); *In re Armstrong World Indus., Inc.*, 348 B.R. 136, 162 (D. Del. 2006) (explaining courts defer to a debtor's business judgment to reject a contract under 11 U.S.C. § 365(a)); *In re Federated Dept. Stores, Inc.*, 131 B.R. 808, 811 (S.D. Ohio 1991) ("Courts traditionally have applied the business judgment standard in determining whether to authorize the rejection of executory contracts and unexpired leases").[4]

### D. WSFS Provides No Support for the Novel and Expansive Approach It Advocates for Evaluation of an RSA Assumption Motion

Simply put, the cases discussed in WSFS's submission do not support an inquiry into valuation or other confirmation-related subjects at the RSA Assumption Motion stage, much less that the Debtors should be compelled to provide expansive discovery on these issues. In fact, the caselaw that WSFS cites actually ***confirms*** that the appropriate time to address such topics ***is at confirmation***, not in the course of an RSA Assumption Motion.

Although WSFS cites *In re SE Steel Company*, No. 00-9225, 2001 WL 1804303 (Bankr. D.S.C. Dec. 7, 2001), for the notion that "valuation of a collateral and a creditor's claim should be flexible and not limited to a single point in time," the posture of that case was actually the

---

[3] The Debtors are also in the process of assembling for production certain valuation-related materials in response to WSFS's 2004 Requests and the parties' proposed discovery protocol, but these materials are relevant to confirmation-related issues, not the RSA Assumption Motion, and should therefore not be used in depositions or hearing examinations relating to the RSA Assumption Motion. *See Genco* Hr'g. Tr. at 21:23 - 22:3.

[4] The TCEH Ad Hoc Group gains no traction when it argues that the RSA assumption motion should be judged according to the entire fairness standard. (WSFS Ltr. at 4.) Setting aside the Debtors' disagreement with the contention that the business judgment rule does not apply, none of the cases that the Ad Hoc Group cites relate to the approval of an RSA motion; and the issue that the Ad Hoc Group suggests "require[s] more scrutiny"— "the proposed releases and resolutions of claims" in the RSA—will be addressed at ***confirmation***. This is "not the time or place for prolonged discovery or a lengthy trial with disputed issues." *Genco* Hr'g. Tr. at 21:23 - 22:3. As for the appropriate standard, as this Court recognized in Visteon, the Debtors' decision to enter "into these agreements" should be evaluated in light of whether the decision was "a reasonable exercise of the debtor's business judgment." *In re Visteon Corp.*, No. 09-11786 (CSS) (Bankr. D. Del. June 17, 2010), Hr'g Tr. at 24:24-25:3.

## KIRKLAND & ELLIS LLP

The Honorable Christopher S. Sontchi
June 4, 2014
Page 8

opposite of what WSFS seeks to have the Court and the parties undertake here. There, the parties had resolved earlier in the case the issue of whether the creditor's claim was secured by consent order, and the court's decision to allow additional valuation discovery *occurred at the confirmation stage*. Thus, *In re SE Steel Company* does not undermine the strong authority specific to the RSA Assumption Motion context that establishes that such a motion is "*not the time or place for prolonged discovery or a lengthy trial with disputed issues*." *Genco* Hr'g. Tr. at 21:23 - 22:3(emphasis added).[5]

WSFS then suggests that *In re Vermont Investment Limited Partnership*, 142 B.R. 571, 574 (Bankr. D.D.C. 1992), should be read to suggest that there is an incentive for the Debtors to delay a valuation trial. But that case has no applicability here: it is a single asset real estate case with little if any factual similarity to this matter, and which did not involve a restructuring support agreement.

Nor does WSFS's reliance on *In re Heritage Highgate, Inc.*, 679 F.3d 132, 143 (3d Cir. 2012), advance its cause. Rather than supporting the accelerated consideration of valuation and other confirmation-related topics at the RSA stage, *In re Heritage* involved a *post-confirmation* trial of the value of certain creditors' collateral under section 506(a) of the Bankruptcy Code. This hardly supports departing from the settled precedent regarding the appropriate scope of an RSA assumption motion.

Finally, the discussion in *In re Innkeepers USA Trust*, 442 B.R. 227 (Bankr. S.D.N.Y. 2010), though related to a court's consideration of a motion to assume a restructuring support agreement, shares little else in common with this case. The decision there was premised on the court's finding that the "fiduciary out" provision in that restructuring support agreement was meaningless in light of the severe restrictions on the debtors' consideration of alternate offers and the fact that termination of that agreement would result in the termination of the Debtors'

---

[5] Although it did not do so in its June 2 submission, counsel for WSFS has previously referenced the *In re Nellson Nutraceutical, Inc.*, Case No. 06-10072 (CSS), in correspondence with the Debtors. *See* 5/22/2014 Hr'g Tr. at 246. Like the other cases cited by WSFS in its submission, however, *Nutraceutical* does not support conducting a valuation trial at the RSA Assumption Motion stage. A key distinction between the *Nutraceutical* case and this one is that the early valuation trial in *Nutraceutical* was held *at the request of the debtors*, with the support of all significant creditor constituencies because doing so was "necessary predicate to a consensual plan of reorganization." Mot. to Determine (1) Enterprise Value of Debtors and (2) Secured Claims of Prepetition Secured Lenders Pursuant to Section 506(a) of the Bankruptcy Code, ¶ 24, *In re Nellson Nutraceutical, Inc.*, Case No. 06-10072 (Bankr. D. Del. Apr. 28, 2006) [D.I. 333] (attached as Exhibit G). Here, the opposite is true: the Debtors have *already obtained agreement* from a number of the significant creditor constituencies to a Restructuring Support Agreement, and the Debtors merely seek to assume that agreement to ensure that Agreement will be allowed to remain in place through the remaining stages of these proceedings, including a trial on valuation and confirmation.

## KIRKLAND & ELLIS LLP

The Honorable Christopher S. Sontchi
June 4, 2014
Page 9

consensual use of cash collateral. *See id.* at 235. There are no such limitations on the fiduciary out provision in the Restructuring Support Agreement in this case. More fundamentally, the court there denied the debtors' motion to assume the restructuring support agreement because the debtors failed to "articulate a sufficient business justification for entry into the PSA" after abbreviated negotiations that did not include consideration of other alternatives. The record here is the exact opposite: the Debtors spent many months evaluating a range of potential settlement options with a number of parties, and only reached agreement on the RSA after more than a year of work. The Debtors, moreover, will provide the record on which the boards made the decision to approve the RSA.

\*   \*   \*

There is no good reason to let WSFS or the TCEH Ad Hoc Group re-write the law concerning the appropriate scope of inquiry on this RSA Assumption motion. It is inappropriate to compel the Debtors to produce valuation and other confirmation-stage discovery under the press of the RSA Assumption hearing. The Debtors will of course provide the TCEH Ad Hoc Group, WSFS, and any other party with an interest in evaluating the RSA Assumption Motion with the information necessary to do so. To be clear, the TCEH Ad Hoc Group and WSFS will get a chance to litigate the valuation of the TCEH Debtors and the confirmability of the plan contemplated by the Restructuring Support Agreement. WSFS is thus wrong when it says that "[w]ere this Court to approve the RSA Motion, the Debtors would essentially be locked into a plan process." (WSFS Ltr. at 2.) As Judge Lane recognized in *Genco*, the mere "approval of an RSA does not ensure that a plan embodying its terms will be confirmed." *Genco* Hr'g Tr. 16:1-11. The RSA Assumption Motion is not the time to have that fight.

Sincerely,

*/s/ Mark McKane*

Mark McKane

Enclosures

cc:   Edward S. Weisfelner
      Christopher Shore

KE 32010666.1

# KIRKLAND & ELLIS LLP

The Honorable Christopher S. Sontchi
June 4, 2014
Page 10

    Anthony Princi
    Charles L. Kerr
    Lorenzo Marinuzzi
    J. Alexander Lawrence
    Richard Schepacarter
    Jeremy Coffey
    Aaron B. Lauchheimer
    Chris Ward
    Edward O. Sassower
    Bridget O'Connor
    Richard M. Cieri
    Stephen Hessler
    Chad Husnick
    Andrew R. McGaan
    David R. Dempsey
    Daniel J. DeFranceschi
    Jason M. Madron

KE 32010666.1