# EXHIBIT D

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| Energy Future Holdings Corporation, *et al.*, | Case No. 14-10979 (CSS) |
| Debtors. | Jointly Administered |

**WILMINGTON SAVINGS FUND SOCIETY, FSB'S
REQUESTS FOR PRODUCTION OF DOCUMENTS TO THE DEBTORS
PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 26 AND 34**

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure (the "Federal Rules"), made applicable hereto pursuant to Rules 7026, 7034, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and the Local Rules of the United States District Court for the District of Delaware, made applicable hereto pursuant to the Local Rules for the United States Bankruptcy Court for the District of Delaware (collectively the "Local Rules"), Wilmington Savings Fund Society, FSB ("WSFS"), as successor trustee under that certain indenture, dated as of October 6, 2010 (as amended or supplemented), among Texas Competitive Electric Holdings, LLC ("TCEH"), TCEH Finance, Inc., the guarantors party thereto, and The Bank of New York Mellon Trust Co., N.A., as trustee (as amended or supplemented, the "Indenture"), by and through undersigned counsel, hereby requests that the above-captioned Debtors produce the documents and things described below for inspection and copying (the "Request") at the offices of Brown Rudnick LLP, Seven Times Square, New York, NY 10036, Attention: Shivani Poddar, Esq., on or before May 26, 2014 at noon (EST).

The Request incorporates by reference all definitions and rules of construction set forth in Rule 34 of the Federal Rules and any applicable Local Rules that apply to each Request set forth

herein. The Request is continuing, such that any additional documents or information relating in any way to this Request the Debtors acquire will be furnished to WSFS immediately.

## **DEFINITIONS**

For the purposes of these Document Requests, the following Definitions shall apply:

1. "Bankruptcy Code" means title 11 of the United States Code, as amended.

2. "Bankruptcy Court" means the United States Bankruptcy Court for the District of Delaware.

3. "Chapter 11 Cases" means the jointly administered chapter 11 cases, commenced by the Debtors in the Bankruptcy Court.

4. "Communication" means any oral or written utterance, notation, or statement of any nature whatsoever between or among two or more persons, by or to whomsoever made, and including, without limitation, correspondence, documents, conversations, dialogues, discussions, e-mail, interviews, consultations, agreements, and other understandings.

5. "Corporate" means all of TCEH's business segments consolidated, excluding the business segments of Luminant (defined below) and TXU Energy (defined below)

6. "Curtailment Analysis" means any analyses undertaken to contract or reduce the Debtors' operations.

7. "Debtors" means, collectively, Energy Future Holdings Corporation and its affiliated entities, as debtors and debtors in possession, as applicable, which filed voluntary chapter 11 petitions under the Bankruptcy Code commencing the Bankruptcy Case, and any of their respective current or former affiliates, subsidiaries, parent corporations, predecessors, or successor entities; and all of their respective current or former directors, officers, employees, agents, attorneys, advisors, and representatives.

8. "Describe" means:

   a. When used in reference to an individual person shall mean to state his or her full name, present home address, or last home address if present home address is unknown, his or her business affiliation and business address and phone number; and

   b. When used in reference to a document shall mean to state the type of document, date, author, or addressee, title, its present location, the name and address of its custodian, and the substance of its contents. In lieu of

2

the foregoing, a copy of the document may be attached in reference as an exhibit to your answer.

9. "Document" means any printed, written, typed, recorded, transcribed, taped, photographic, or graphic matter, however produced or reproduced, including, but not limited to: any letter, correspondence, or communication of any sort; film, print or negative of photograph; sound recording; video recording; note, notebook, diary, calendar, minutes, memorandum, contract, agreement, or any amendment thereto; telex, telegram, cable; summary, report or record of telephone conversation, voice mail or voice mail back-up, personal conversation, discussion, interview, meeting, conference, investigation, negotiation, act or activity; projection, work paper, or draft; computer or computer network output or input, hard or floppy disc, e-mail, magnetic and/or optical medias, archived or back up data on any of these medias, and documents that have been deleted but are recoverable from any of these medias; opinion or report of consultant; request, order, invoice or bill of lading; analysis, diagram, map, index, sketch, drawing, plan, chart, manual, brochure, pamphlet, advertisement, circular, newspaper or magazine clipping, press release; receipt, journal, ledger, schedule, bill, or voucher; financial statement, statement of account, bank statement, checkbook, stubs, or register, canceled check, deposit slip, charge slip, tax return (income or other), requisition; file, study, graph, tabulation, and any and all other writings and recording of whatever nature, whether signed or unsigned or transcribed, and any other data compilation from which information can be obtained, translated, if necessary, by the respondent through detection devices into reasonably usable form; including, without limitation, all things meeting the definition of "documents" or "electronically stored information" set forth in Rule 34 of the Federal Rules of Civil Procedure, as incorporated by Rules 7034 and 9014 of the Federal Rules of Bankruptcy Procedure, as applicable, or meeting the definition of "writings and recordings" set forth in Rule 1001 of the Federal Rules of Evidence. Any document with any marks such as initials, comments, or notations of any kind is not deemed to be identical to one without such marks and is a separate document within the meaning of this term.

10. "EFH" means Energy Future Holdings Corp., a corporation organized under the laws of Texas, and any of its respective current or former affiliates, subsidiaries, parent corporations, predecessors, or successor entities and all of its respective current or former directors, officers, employees, agents, attorneys, advisors, and representatives.

11. "ERCOT" means the Electric Reliability Council of Texas, which is a non-profit corporation, subject to oversight by the Public Utility Commission of Texas, that manages the flow of electric power to customers in Texas.

12. "Including" means "including, without limitation" or "including, but not limited to."

13. "Petition Date" means the date upon which the Debtors commenced the Chapter 11 Cases.

14. "LBO" means the approximate $45 billion 2007 leveraged buyout of TXU Corporation by the Sponsor Group (defined below).

15. "Luminant" means the entity or entities comprised of EFH's competitive electricity generation, mining, wholesale electricity sales, and commodity risk management and trading activities, which operates fourteen power plants comprising 40 generation units and 12 surface lignite coal mines in Texas. Luminant includes any and all of its respective current or former affiliates, subsidiaries, parent corporations, predecessors, or successor entities and all of its respective current or former directors, officers, employees, agents, attorneys, advisors, and representatives.

16. "Relate" and its variants encompass the terms "refer," "reflect," "constitute," "evidence," "in connection with," and "concern" and shall be construed to bring within the scope of the Document Request or Topic of Examination, as applicable, all documents and information that comprise, evidence, constitute, describe, explicitly or implicitly refer to, were reviewed in conjunction with, or were generated as a result of the subject matter of the Document Request or Topic of Examination, as applicable, including, but not limited to, all documents and information that reflect, record, memorialize, discuss, evaluate, consider, review, report, or otherwise evidence the existence of the subject matter of the Document Request or Topic of Examination, as applicable.

17. "Retail Customer" means any and all customers serviced by TXU Energy.

18. "REP" means Retail Electric Provider or an electric company that is certified by the Public Utility Commission of Texas to sell electricity to customers.

19. "Sponsor Group" means, collectively, Goldman, Sachs & Co., TPG Capital, and KKR & Co., L.P., and any of their current or former affiliates, subsidiaries, parent corporations, predecessors, or successor entities and all of their respective current or former directors, officers, employees, agents, attorneys, advisors, and representatives.

20. "Trustee" means Wilmington Savings Fund Society, FSB, as successor trustee under that certain indenture, dated as of October 6, 2010 (as amended or supplemented), among Texas Competitive Electric Holdings, LLC, TCEH Finance, Inc., the guarantors party thereto, and The Bank of New York Mellon Trust Co., N.A., as trustee.

21. "TXU Energy" means the entity or entities comprised of EFH's competitive retail electricity sales operations, which sells electricity to 1.7 million residential and business customers in Texas. TXU Energy includes any and all of its respective current or former affiliates, subsidiaries, parent corporations, predecessors, or successor entities and all of its respective current or former directors, officers, employees, agents, attorneys, advisors, and representatives.

22. "Unit" means an electricity generating facility of a power plant.

23. "You" and "your" shall mean and refer to any of the Debtors and any of their respective current or former affiliates, subsidiaries, parent corporations, predecessors, or

successor entities and all of their respective current or former directors, officers, employees, agents, attorneys, advisors, and representatives.

## INSTRUCTIONS

The preceding Definitions apply to each of these Instructions and for purposes of the Request, the following Instructions shall be followed:

1. In accordance with Rule 34(a) of the Federal Rules of Civil Procedure, as incorporated by Rules 7034 and 9014 of the Federal Rules of Bankruptcy Procedure, as applicable, the Document Requests shall be deemed to include any document now or at any time in your possession, custody, or control, including, but not limited to, documents in the possession, custody, or control of any of your current or former affiliates, subsidiaries, parent corporations, predecessors, or successor entities and all of their respective current or former directors, officers, employees, agents, attorneys, advisors, and representatives, or other person acting or purporting to act on its or their behalf. A document is deemed to be in your possession, custody, or control if it is in your physical custody, or if it is in the physical custody of any other person or entity and you: (i) own such document in whole or in part; (ii) have a right, by contract, statute, or otherwise, to use, inspect, examine, or copy such document on any terms; (iii) have an understanding, express or implied, that you may use, inspect, examine, or copy such document on any terms; or (iv) as a practical matter, have been able to use, inspect, examine, or copy such document when you sought to do so. If any requested document was, but no longer is, in your control, state the disposition of each such document.

2. As the term "possession" pertains to e-mail, the term includes, but is not limited to, e-mail contained in your electronic e-mail directories containing (i) "deleted" e-mails which have not been permanently deleted, including all subdirectories irrespective of the title of such subdirectories; (ii) "sent" e-mails, including all subdirectories irrespective of the title of such subdirectories; and (iii) "received" e-mails, including all subdirectories irrespective of the title of such subdirectories.

3. The word "all" shall also include "each of," and vice versa. The word "any" shall be construed to mean "any and all" where the effect of such construction is to broaden the scope of the Request.

4. In responding to the Request, you are to review and search all relevant files of appropriate entities and persons.

5. All Requests shall be deemed to include requests for any and all transmittal sheets, cover letters, enclosures, or any other annexes or attachments to the documents.

6. You are to produce the original and all non-identical copies, including all drafts, of each document requested. If you are not able to produce the original of any document, please produce the best available copy and all non-identical copies, including drafts. Any document that cannot be produced in full shall be produced to the fullest extent possible.

7. In accordance with Rule 34(b) of the Federal Rules of Civil Procedure, as incorporated by Rules 7034 and 9014 of the Federal Rules of Bankruptcy Procedure, as applicable, documents shall be produced as they are kept in the ordinary course of business or shall be organized and labeled to correspond with the categories in each Request.  The name of the file from which it was produced, the identity of the person from whose file it was produced, and the identity of the present custodian of that file each shall be set forth.  All documents requested herein shall be produced electronically as tagged image file format ("<u>TIFF</u>") or portable document format ("<u>PDF</u>") files, except that all spreadsheets and accounting and financial data, including those created with Excel software, shall be produced in their native form.

8. If any responsive document is known to have existed and cannot now be located, or has been destroyed, discarded, or otherwise disposed, set forth a complete statement of the circumstances surrounding such loss, destruction, discarding, or other disposition, including:

    a. A description of the document, including the date, a summary of its contents and the identity of its author and the person(s) to whom it was sent or shown;

    b. The last known custodian;

    c. Whether the document is missing or lost or was destroyed, discarded, or otherwise disposed;

    d. The date of loss, destruction, discarding, or other disposition;

    e. The reason(s) for destruction, discarding, or other disposition;

    f. The person(s) authorizing or carrying out such destruction, discarding, or other disposition; and

    g. The efforts made to locate lost or misplaced documents.

9. In the event you seek to withhold any document, thing, or information on the basis that it is properly entitled to some privilege or other limitation of discovery, you shall produce as much of the document concerned as to which no claim of privilege or other limitation of discovery is made.  With respect to documents or portions of documents for which a claim of privilege or other limitation of discovery is made, you are instructed to provide a numeral list of the document(s) and thing(s) for which a privilege or limitation is claimed that (1) identifies the nature of the privilege or limitation (including work product) asserted and, if the privilege or limitation is governed by state law, indicates the state of the privilege rule or other limitation invoked; and (2) provides the following information in the objection, unless divulgence of such information would cause disclosure of the allegedly privileged or otherwise protected information: (i) the type of document; (ii) the name and capacity of each author and recipient of the document; (iii) the general subject matter of the document in a manner sufficient to support

the privilege or other protection claimed; (iv) the date of the document; (v) such other information as is sufficient to identify the document for a subpoena duces tecum, including, where appropriate, the author(s) of the document, the addressee(s) of the document, and any other recipient(s) shown in the document, and, where not apparent, the relationship of the author(s), addressee(s), and recipient(s) to each other; and (vi) the same information referenced in (i)-(v) above for each enclosure or attachment to each listed document if the enclosure or attachment is also withheld from production.  Notwithstanding the assertion of any privilege or other protection, any requested document that contains responsive, non-privileged or non-protected information should be produced, but that portion of the document for which the privilege or other protection is asserted may be redacted, provided that the redacted portion is identified and described consistently according to the requirements listed herein.

       10.       Each Definition, Instruction, and Request herein shall be construed independently and not with reference to any other Definition, Instruction, or Document Request for the purposes of limitation.

       11.       If any meaning of any term in any Request herein is unclear to you, without waiver of the Trustee's right to seek a full and complete response to the Request, you shall assume a reasonable meaning, state what the assumed meaning is, and respond to the Request according to the assumed meaning.

       12.       In accordance with Rules 33 and 34 of the Federal Rules of Civil Procedure, as incorporated by Rules 7033, 7034, and 9014 of the Federal Rules of Bankruptcy Procedure, as applicable, objections to any part of this Request shall be stated in full and with specificity.  In the event you interpose an objection to the Request, you must produce the documents to which objection is not made or provide testimony or information not objected to, as the case may be.

       13.       The Request shall be deemed continuing so as to require prompt supplementation if you obtain, generate, or discover additional documents or information.  If, after responding, you obtain or become aware of any additional documents or information responsive to the Request, production of such additional documents or information shall be made forthwith as required by Rule 26 of the Federal Rules of Civil Procedure, as incorporated by Rules 7026 and 9014 of the Federal Rules of Bankruptcy Procedure, as applicable.

       14.       Unless otherwise indicated, the time period covered by the Request is the period of October 10, 2007 through and including the present time, including any documents or information having an earlier origin and in use during the specified period.

       15.       "Including" shall not be construed to limit the scope of the Request.

       16.       Whenever necessary to bring within the scope of the Request documents or information that might otherwise be construed to be outside its scope:

              a.       The use of a verb in any tense shall be construed as the use of that verb in all other tenses;

    b.    The use of a word in its singular form shall be deemed to include within its use the plural form, and vice versa;

    c.    The use of the masculine form of a noun or pronoun shall include the feminine form, and vice versa; and

    d.    The use of the conjunctive or disjunctive, respectively, shall be construed as necessary to be inclusive rather than exclusive.

17.    Each paragraph, subparagraph, clause, and word herein should be construed independently and not by reference to any other paragraph, subparagraph, clause, or word herein for purposes of limitation.

## DOCUMENT REQUESTS

1.    All Documents relating to the Debtors' power price projections, including but not limited to, documents relating to the Retail Customers' pricing projections, the internal locational marginal pricing ("LMP") projections, the zonal pricing projections, the system-wide pricing projections, and any supporting analyses thereto.

2.    All Documents relating to the Debtors' plant operations, including but not limited to, documents sufficient to show:
    a.  Volume assumptions by Unit at the available granularity level (e.g., hourly, peak, off-peak);
    b.  Air emissions assumptions by Unit;
    c.  Delivered fuel cost assumptions by Unit, including transport costs;
    d.  Assumptions related to blended fuel or dual fuel (e.g., Powder, River and Basin ("PRB")/lignite blends);
    e.  Operations and maintenance cost by Unit;
    f.  Variable maintenance cost assumption by Unit;
    g.  Heat rates by Unit;
    h.  Assumed outage rates by Unit;
    i.  Assumed maintenance schedule by Unit;
    j.  Environmental capital expenditures, including capital expenditures related to compliance from MATS and CSPAR; and
    k.  Any corporate Selling, General & Administrative Expense ("SG&A") assessment.

3.    All Documents relating to the Debtors' plant operations, including but not limited to, documents relating to the employees' payroll, separated by the following entities: TXU Energy, Luminant and Corporate.

4.    All Documents relating to the Debtors' property taxes imposed by taxing authorities.

8

5. All Documents relating to the revenues and costs associated with the Debtors' Retail Customers, who were Retail Customers prior to the LBO and remain Retail Customers to date (e.g., legacy Retail Customers).

6. All Documents relating to the revenues and costs associated with the Debtors' Retail Customers, who were acquired after the LBO.

7. All Documents relating to the Debtors' business strategies and projections concerning its Retail Customers, including but not limited to, documents concerning market share analyses, competitive benchmarking analyses, and analyses relating to the impact of new product offerings since the LBO.

8. All Documents relating to Luminant's ability to generate additional volume of electricity with unutilized capacity from its Units.

9. All Documents relating to any and all curtailment analyses performed by TCEH to support plant shutdown decisions, including but not limited to, documents sufficient to show:
   a. Volume flow-through assumptions to surrounding plants;
   b. Price uplift to surrounding plants due to curtailment;
   c. Inputs and results from the LMP model; and
   d. Expected savings from: (1) transportation costs; (2) fuel costs; (3) operations and maintenance costs; (4) SG&A costs; and (5) any other source of expected savings.

10. All Documents relating to breakeven power pricing analyses conducted to support operations of the plants, including but not limited to, analyses for idled or inactive Units.

11. All Documents relating to the Debtors' hedge-roll off schedules, by volume, related to commodity hedges (e.g., heat rate, natural gas, diesel, coal).

12. All Documents relating to ERCOT assumptions that the Debtors' relied on, including but not limited to, documents relating to:
   a. Load growth profile assumptions;
   b. Seasonal, monthly or hourly load profile assumptions;
   c. New generation build-out Units, re-commissioning inactive or idled Units and retired Units;
   d. Assumed or implied reserve margins; and
   e. Rules for Unit capacity pricing.

13. All Documents relating to the Debtors' cash accounting, including but not limited to, documents sufficient to show the changes in cash accounting policies from January 2012 to present.

14. All Documents relating to intra-company transfers of cash from TCEH, on the one hand, to EFH or EFCH, on the other hand, from January 1, 2012 to present.

9

15. All Documents relating to the Debtors' actual financial statements since the LBO through present, separated by the following entities: TXU Energy, Luminant and Corporate.

16. All Documents relating to the Debtors' projected financial statements, financial presumptions or assumptions since the LBO through 2018, separated by the following entities: TXU Energy, Luminant and Corporate.

17. All Documents relating to the Debtors' actual and projected financial statements since the LBO through 2018, including but not limited to, documents sufficient to show:
    a. Components of the SG&A, including fees and expenses paid to the Sponsor Group;
    b. Contracts or agreements, and underlying data, relating to hedging transactions, including data about volume, price, open positions by TXU Energy and Luminant, and hedging transactions supported by asset first lien ("Hedging Detail");
    c. Any changes in Hedging Detail; and
    d. The impact of the Debtors' credit rating on the Debtors' ability to engage in hedging transactions (e.g., copy of ISDAs and MSAs for existing hedges).

18. The Debtors' tax returns since the LBO to present.

19. All Documents relating to the Debtors' Retail Customer records, including but not limited to, documents sufficient to show:
    a. Quarterly total volume of electricity sold since the LBO, including information about the related customer accounts and forward and spot pricing;
    b. Total retail product offering, including any changes to the offering since the LBO;
    c. Retail Customer collection summaries;
    d. TXU Energy's residential and small commercial accounts, including the quarterly ESI ID counts and originated unit gross margin from 2002 to present;
    e. TXU Energy's competitively acquired large commercial quarterly ESI ID counts and originated Unit gross margin from 2002 to present;
    f. TXU Energy's renewal rates and new customer win rates by customer class (e.g., residential, small business, and large business customers) from 2002 to present;
    g. TXU Energy's actual annual SG&A;
    h. TXU Energy's employee data (e.g., department, function, payroll, benefits) separated by department, from 2002 to present;
    i. TXU Energy's annual strategic planning documents from 2002 to present, including documents relating to the assessment of the retail market, growth opportunities in the retail market, and an assessment of new business investments in the retail market;
    j. TXU Energy's annual pricing strategy documents including analyses and policies related to customer class margin targets, customer win rates and customer attrition goals;
    k. Potential acquisitions TXU Energy evaluated from 2002 to present; and
    l. The transfer pricing agreement between Luminant and TXU Energy, any changes, amendments or revisions to that agreement from 2002 to present, and any drafts thereof.

20. All Documents relating to the Debtors' quarterly volume sales for Luminant, including but not limited to, documents relating to forward and spot pricing.

21. All Documents relating to the Debtors' operating records by Unit since the LBO, including but not limited to, documents sufficient to show:
    a. Dispatch analysis;
    b. Realized LMP/zonal power price;
    c. Generation Availability Data Systems ("GADS") event files (Event Reporting) from 2009 to present;
    d. Hourly dispatch;
    e. Forced outage rate;
    f. Maintenance schedule;
    g. Fuel costs, including lignite mining costs;
    h. Capital expenditures; and
    i. Indirect expenses.

22. All Documents relating to the Debtors' fuel contracts, power sales agreements, financial hedges contracts or other such agreements, and all drafts thereof.

23. All Documents relating to Luminant's annual power trading volumes by counterparty from 2002 to present.

24. All Documents relating to the Debtors' mining operations including actual and projected (through 2018) reserves, third party sales, and operating statements.

25. All Documents concerning investor-related materials prepared by the Sponsor Group concerning the LBO, including but not limited to, confidential information memorandums, roadshow presentations, bank presentations, and presentations to the Debtors' boards.

26. All Documents produced by the Debtors to any party in connection with the *Motion of Energy Future Holdings Corp., et al. for Entry of an Order Authorizing the RSA Debtors to Assume the Restructuring Support Agreement and Modifying the Automatic Stay*, dated May 16, 2014, including but not limited to, documents produced in response to the *Ad Hoc Group of TCEH Unsecured Noteholders' Second Set of Requests for Production of Documents to the Debtors Pursuant to Rules 7026 and 7034*, dated May 19, 2014.