

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) Case No. 14-10979 (CSS) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) **Re: Docket No. 41** |

## FINAL ORDER (RE: NON-PROPRIETARY TRADING[2] AND HEDGING TRANSACTIONS INVOLVING THE DEBTORS' POWER GENERATION AND RETAIL OPERATIONS) AUTHORIZING THE DEBTORS TO (A) CONTINUE PERFORMING UNDER PREPETITION HEDGING AND TRADING ARRANGEMENTS, (B) PLEDGE COLLATERAL AND HONOR OBLIGATIONS THEREUNDER, AND (C) ENTER INTO AND PERFORM UNDER TRADING CONTINUATION AGREEMENTS AND NEW POSTPETITION HEDGING AND TRADING ARRANGEMENTS

Upon the motion (the "Motion")[3] of the above-captioned debtors and debtors in possession (collectively, the "Debtors"), for entry of a final order (this "Order") authorizing, but not directing, the Debtors to: (a) honor, pay, or otherwise satisfy all obligations arising under hedging and trading contracts with various counterparties solely to hedge their exposure to commodity risks, including price and delivery risk (collectively, and as described below, the

---

[1] The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, for which joint administration has been granted, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

[2] The terms "non-proprietary" and "proprietary" as used herein are for ease of reference and do not represent determinations by the Court as to whether the hedging and trading activities permitted by this Order are or are not proprietary. For the avoidance of doubt, the use in this Order of each of the terms "trade," "trading transaction," "trading activity" or such similar or related term may include, depending on the context, a "hedge transaction" or other trading transaction.

[3] On June 3, 2014, the Debtors filed the *Supplement to the Motion of Energy Future Holdings Corp., et al., for Entry of Interim and Final Orders Authorizing the Debtors to (A) Continue Performing Under Prepetition Hedging and Trading Arrangements, (B) Pledge Collateral and Honor Obligations Thereunder, and (C) Enter into and Perform Under Trading Continuation Agreements and New Postpetition Hedging and Trading Arrangements* (the "Supplement"). As used herein, the term "Motion" includes the Supplement.

"Hedging and Trading Arrangements" and the activities related thereto, the "Hedging and Trading Activities"),[4] in the ordinary course of business, without regard to whether such amounts accrued or arose before the Petition Date; (b) pledge and transfer collateral under the Hedging and Trading Arrangements in the form of cash, letters of credit, and, in certain instances, TCEH Super-Priority DIP Liens, as permitted under the terms of the TCEH DIP Orders and the TCEH Cash Collateral Orders, all in the ordinary course of business without regard to whether such obligations accrued or arose before the Petition Date; (c) continue to honor, pay, or otherwise satisfy postpetition obligations arising under the Hedging and Trading Arrangements in the ordinary course of business consistent with the Risk Management Guidelines and, to the extent applicable, subject to the Internal Hedging Policy; and (d) enter into, and perform under Trading Continuation Agreements and new Postpetition Hedging and Trading Arrangements in the ordinary course of business, consistent with the Risk Management Guidelines, and, to the extent applicable, subject to the Internal Hedging Policy, all as more fully set forth in the Motion (as modified herein); and upon the First Day Declaration and the Supplemental Declaration; and the Court having found that it has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and the Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and the Court having found that venue of these cases and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having entered an interim order in respect of the Motion [D.I. 315]; and the Court having found that the relief requested in the Motion, as modified herein, is in the

---

[4] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion. For the avoidance of doubt, neither the Hedging and Trading Arrangements nor the Hedging and Trading Activities, as those terms are used in this Order (whether denominated as prepetition or postpetition), involve investment arrangements, activities or strategies that do not involve or relate directly to the Debtors' generation or retail operations, and expressly do not include the Debtors' proprietary trading activities (*i.e.*, trading activities that are conducted to generate profits and not intended to hedge or mitigate risk) as described in the Motion and supporting papers.

best interests of the Debtors' estates, their creditors, and other parties in interest; and the Court having found that the Debtors provided appropriate notice of the Motion and the opportunity for a hearing on the Motion under the circumstances; and the Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing, if any, before the Court (the "Hearing"); and the Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before the Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1. The Motion is granted on a final basis as set forth herein.

2. The Debtors are authorized, but not directed, to (a) honor, pay, or otherwise satisfy all obligations under the Hedging and Trading Arrangements in the ordinary course of business, without regard to whether such amounts accrued or arose before or after the Petition Date, consistent with the Risk Management Guidelines, and, to the extent applicable, subject to the Internal Hedging Policy; (b) pay any amounts accrued in the ordinary course of business as a result of credit support obligations and to pledge and transfer collateral in the form of cash, letters of credit, or guarantees on account of the Hedging and Trading Arrangements, and, in the case of Hedging and Trading Arrangements that constitute Permitted Secured Commodity Hedge Agreements, TCEH Super-Priority DIP Liens, as permitted under the terms of the TCEH DIP Orders and the TCEH Cash Collateral Orders, in the ordinary course of business, without regard to whether such obligations accrued or arose before or after the Petition Date; and (c) enter into and perform under Trading Continuation Agreements and new, Postpetition Hedging and Trading Arrangements in the ordinary course of business on a postpetition basis consistent with the Risk Management Guidelines and, to the extent applicable, subject to the Internal Hedging

Policy; *provided, however*, that notwithstanding the foregoing, the Debtors shall not be authorized to honor, pay, or otherwise satisfy prepetition payment obligations arising under the Prepetition Hedging and Trading Arrangements in an aggregate amount greater than $50.8 million (determined after netting payables and receivables to be netted with the same counterparty under existing contractual terms) (the "Prepetition Payment Cap"). For the avoidance of doubt, the Prepetition Hedging and Trading Arrangements include, and are limited to, only those contracts that, as of the Petition Date are (x)(i) "securities contracts," "commodities contracts," "forward contracts," "repurchase agreements," "swap agreements" and/or "master netting agreements" as such terms are defined in section 101, 741, or 761 of the Bankruptcy Code; and (ii) had the contractual right to cause liquidation, termination, acceleration, and/or offset under sections 555, 556, 559, 560, and/or 561 of the Bankruptcy Code because of a condition of the kind specified in section 365(e)(1) of the Bankruptcy Code or (y) Introductory Broker Arrangements (under which the Debtors have approximately $400,000 in outstanding prepetition obligations that are due and payable as of the Petition Date).

3. The Debtors are authorized, but not directed, to replace ERCOT's existing letter of credit with a new, postpetition letter-of-credit to the extent permitted under any DIP financing facility.

4. The Debtors shall use their commercially reasonable efforts to obtain from any Prepetition Hedging and Trading Arrangement counterparty, as a prerequisite to obtaining payment or collateral pursuant to this Order, written acknowledgement of its obligations to perform under the Prepetition Hedging and Trading Arrangements on a postpetition basis, substantially in the form attached hereto as **Exhibit 1** (the "Trading Continuation Agreement"); *provided, however*, that the Debtors may, if necessary under the circumstances, in the Debtors'

judgment, satisfy prepetition payment obligations in accordance with the Prepetition Payment Cap and prepetition collateral posting obligations as set forth in the Motion and this Order without obtaining such agreement; *provided further, however*, that such payment shall not prejudice any Debtor's right to challenge, as a violation of the automatic stay or otherwise, a Hedging and Trading Arrangement counterparty's refusal to perform under the Hedging and Trading Arrangements on a postpetition basis.

5. The form Trading Continuation Agreement, attached hereto as **Exhibit 1**, is approved on a final basis; *provided, however*, that the Debtors are authorized to modify the Trading Continuation Agreement if a particular situation, in the Debtors' judgment, so requires; *provided, further*, that if the Debtors make a material modification to the Trading Continuation Agreement, the Debtors shall notify counsel to the Official Committee of Unsecured Creditors appointed in these chapter 11 cases (the "Creditors' Committee") and counsel to the U.S. Trustee within ten (10) business days of such modification

6. As security and assurance of the Debtors' obligations arising under Hedging and Trading Arrangements, and in exchange for providing benefits to non-terminating counterparties in accordance with this Order:

> (a) counterparties are each hereby granted, for their own benefit, effective as of the Petition Date and without the necessity of the execution by the Debtors, or filing, of security agreements, pledge agreements, mortgages, financing statements or otherwise, pursuant to Bankruptcy Code section 364(c)(2) enforceable first-priority liens and security interests on any cash collateral, and/or letters of credit with respect to initial, maintenance or variation margin or payments in advance provided to such counterparty whether prior hereto, on or after the date of this Order;
>
> (b) the obligations, liabilities and indebtedness of the Debtors arising from postpetition market movements, performance and performance obligations in respect of Postpetition Hedging and Trading Arrangements, and postpetition performance under Prepetition Hedging and Trading Arrangements shall have the status of an administrative expense, and shall be paid at the prices set forth

        in the Prepetition Hedging and Trading Arrangements or Postpetition Hedging and Trading Arrangements, as applicable;

    (c) counterparties may net exposures, amounts, and obligations under Prepetition Hedging and Trading Arrangements against exposures, amounts and obligations under other Prepetition Hedging and Trading Arrangements and Postpetition Hedging and Trading Arrangements with a Debtor and vice versa. In this regard, there shall be no distinction between transactions entered into prepetition and postpetition; and

    (d) the Debtors and the non-terminating counterparties shall be authorized and permitted to apply any and all cash collateral and/or letters of credit that may have been posted prepetition to any obligations arising postpetition, regardless of whether such obligations arise under existing Prepetition Hedging and Trading Arrangements or Postpetition Hedging and Trading Arrangements, as applicable.

7. Notwithstanding the foregoing, if, after receiving payment or collateral pursuant to this Order (and/or the specified terms of a Trading Continuation Agreement), any Prepetition Hedging and Trading Arrangement counterparty does not perform under the Prepetition Hedging and Trading Arrangements on a postpetition basis or otherwise exercises valid and enforceable termination rights under sections 555, 556, 559, 560, and 561 of the Bankruptcy Code with respect to the Prepetition Hedging and Trading Arrangements, then (a) any postpetition payment or collateral received by such Prepetition Hedging and Trading Arrangement counterparty for prepetition obligations shall be deemed, in the Debtors' sole discretion in consultation with the Creditors' Committee, an improper postpetition transfer, and, therefore, recoverable by the Debtors immediately upon written request by the Debtors, and (b) upon recovery by the Debtors, any prepetition claim of such Prepetition Hedging and Trading Arrangement counterparty shall be reinstated as if the payment had not been made and/or the collateral had not been posted.

8. If any or all of the provisions of this Order are stayed, modified in a manner adverse to a Hedging and Trading Arrangement counterparty or vacated, or this Order otherwise terminates, such stay, modification, vacation or termination will not affect (a) the validity of any

indebtedness, obligation or liability incurred by the Debtors to each of the counterparties before the receipt of written notice by the counterparties of the effective date of such stay, modification or vacation, (b) the validity or enforceability of the security interests, administrative claims and netting and termination rights authorized or created hereby or pursuant to the Hedging and Trading Arrangements, or any related documents, and (c) the rights of the counterparties to exercise remedies as set forth in the Prepetition Hedging and Trading Arrangement or the Postpetition Hedging and Trading Arrangements, as the case may be, and each counterparty shall be entitled to the benefits of the provisions of section 364(e) of the Bankruptcy Code.

9. If there exists an outstanding postpetition balance due from the Debtors to a Prepetition Hedging and Trading Arrangement counterparty that does not perform under the Hedging and Trading Arrangements on a postpetition basis or otherwise exercises valid and enforceable termination rights under sections 555, 556, 559, 560, and 561 of the Bankruptcy Code with respect to the Prepetition Hedging and Trading Arrangements, the Debtors may elect, in the Debtors' sole discretion, to recharacterize and apply any payments made pursuant to this Order, and, as applicable, any collateral posted pursuant to this Order to such postpetition balance, and the Prepetition Hedging and Trading Arrangement counterparty shall repay immediately in cash to the Debtors (and, as applicable, return collateral posted by the Debtors) any amounts that exceed the postpetition obligations then outstanding, and without any claim, right of setoff, or recoupment against the Debtors resulting thereby.

10. The automatic stay provisions of section 362 of the Bankruptcy Code are hereby modified solely to the extent necessary to permit immediate and unconditional enforcement of remedies by any counterparties to Hedging and Trading Arrangements upon the occurrence of a default by the Debtors under the Prepetition Hedging and Trading Arrangements or Postpetition

Hedging and Trading Arrangements, other than a default because of a condition of the kind specified in section 365(e)(1) of the Bankruptcy Code, and the counterparties' rights thereunder shall not be modified, stayed, avoided or otherwise limited by order of this Court or any court proceeding under the Bankruptcy Code. The Debtors waive the right and shall not seek relief, including under section 105(a) of the Bankruptcy Code, to the extent that any such relief would in any way restrict or impair the rights of counterparties under Prepetition Hedging and Trading Arrangements, Postpetition Hedging and Trading Arrangements or this Order; *provided, however*, that such waiver shall not preclude the Debtors from contesting whether a default has occurred under any Prepetition Hedging and Trading Arrangements or Postpetition Hedging and Trading Arrangements.

11. Neither EFIH nor EFIH Finance Inc. (a) is party to, or shall become party to pursuant to this Order, Hedging and Trading Arrangements, or (b) shall engage in Hedging and Trading Activities pursuant to this Order.

12. In accordance with this Order and any other order of this Court, each of the financial institutions at which the Debtors maintain their accounts relating to the payment of the obligations described in this Order is authorized to honor checks and electronic payment requests presented for payment of obligations described in this Order and all fund transfer requests made by the Debtors related thereto to the extent that sufficient funds are on deposit in such amounts.

13. Notwithstanding the relief granted in this Order and any actions taken pursuant to such relief, nothing in this Order shall be deemed (a) an admission as to the validity of any claim against a Debtor entity; (b) a waiver of the rights of the Debtors' estates to dispute any claim on any grounds; (c) a promise or requirement to pay any claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Order or the Motion; (e) a request or

authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) a waiver or limitation of the rights of the Debtors' estates under the Bankruptcy Code or any other applicable law; or (g) an admission that any agreement to which one or more of the Debtors may be party constitutes a Hedging and Trading Arrangement. Payments made pursuant to this Order shall not be construed as an admission as to the validity of any claim or a waiver of the rights of the Debtors' estates to subsequently dispute such claim.

14. Notice of the Motion as provided therein shall be deemed good and sufficient and the requirements of the Local Bankruptcy Rules are satisfied by such notice.

15. The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Motion.

16. Notwithstanding the possible applicability of Bankruptcy Rules 6004(h), 7062, 9014 or otherwise, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

17. To the extent necessary, the automatic stay provided in section 362 of the Bankruptcy Code is modified to permit ERCOT to continue performing its obligations and exercising its rights under the SFAs and the ERCOT Protocols.

18. Nothing in this Order shall authorize or direct the Debtors to take any action that would violate or breach the terms of the TCEH DIP Credit Agreement (as defined in the TCEH DIP Orders) or violate any order of this Court approving the TCEH DIP Facility.

19. The Debtors shall provide to: (a) the DIP Agent (as defined in the TCEH DIP Orders), (b) counsel to the TCEH First Lien Ad Hoc Committee (as defined in the TCEH Cash Collateral Orders), and (c) counsel to the Creditors' Committee, on a professionals' eyes only basis, unless otherwise agreed to by counsel to the Debtors and counsel to the Creditors'

Committee monthly written reports, exclusive of counterparty names or identifiers, of all Hedging and Trading Arrangements and all Hedging and Trading Activities summarizing the aggregate amount of collateral pledged, and the aggregate amount of Hedging and Trading Arrangements for which TCEH Super-Priority DIP Liens have been granted pursuant to this Order and/or the DIP Orders, as applicable and month-to-date and year-to-date profit and loss reports aggregated by Hedging and Trading Activities, projected profit and loss for two years forward, based on most recent market information including comparison to budget, comparison of current forward commodity prices for relevant natural gas and power trading hubs versus prior report; *provided, however*, that, with the exception of the aggregate amount of collateral pledged, and the aggregate amount of Hedging and Trading Arrangements for which TCEH Super-Priority DIP Liens have been granted, the Debtors shall not be required to provide any other information in such monthly reports that the Debtors reasonably believe is subject to another confidentiality agreement (or other contractual or legal obligation of confidentiality) between the Debtors and their Hedging and Trading Arrangements counterparties.

20. Subject to the Internal Hedging Policy (including any subsequent modification to such policy in a manner consistent with such Internal Hedging Policy and this Order), the Debtors shall not enter into wholesale Hedging and Trading Arrangements with a tenor beyond December 31, 2015. The Debtors shall not be permitted to amend the tenor and hedge limitations set forth in the Internal Hedging Policy, including, without limitation, the Hedging Ceiling, in a manner that, in the Debtors' judgment, varies materially from the Debtors' historical hedging practices over the past two years without further order of the Court.

21. Notwithstanding anything herein to the contrary, and for the avoidance of doubt, the Debtors shall not enter into or perform under new proprietary trades (*i.e.*, trading activities

10

that are conducted to generate profits and not intended to hedge or mitigate risk) without separate order of this Court.[5]

22. Notwithstanding anything herein to the contrary, all rights of the U.S. Trustee are expressly reserved, including, but not limited to, the Court determining that any of the representations made in the Motion, the supporting pleadings or statements of counsel are inconsistent with or do not accurately reflect the nature or extent of the Hedging and Trading Arrangements or Hedging and Trading Activities as those terms are used in this Order.

23. Notwithstanding anything herein to the contrary, the provisions of this Order shall not apply to the First Lien Hedges and Swaps or the Legacy Swaps, and the Debtors are not authorized hereunder to make any payments or other transfers (except for the return of cash collateral held by Debtors pursuant to the First Lien Hedges and Swaps) on account of or in relation to the First Lien Hedges and Swaps or the Legacy Swaps.

24. The relief granted in this Order applies only to Hedging and Trading Arrangements not previously assumed, rejected, or terminated pursuant to sections 365, 546, 555, 556, and 559 of the Bankruptcy Code.

25. Notwithstanding the relief granted in this Order, any payment made by the Debtors pursuant to the authority granted herein shall be subject to the TCEH DIP Orders and the TCEH Cash Collateral Orders.

26. All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

27. The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Motion.

---

[5]

28.     The Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation of this Order.

Wilmington, Delaware
Dated: June 6, 2014

_____
THE HONORABLE CHRISTOPHER S. SONTCHI
UNITED STATES BANKRUPTCY JUDGE

12