## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) | Case No. 14-10979 (CSS) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |
|  | ) | **Hearing Date: June 30, 2014 at 9:30 a.m.** |
|  | ) | **Objection Deadline: June 23, 2014 at 4:00 p.m.** |

## MOTION OF ENERGY FUTURE HOLDINGS CORP., *ET AL.*, FOR AN ORDER AUTHORIZING (A) ENTRY INTO AND PERFORMANCE UNDER THE CROWSON SETTLEMENT AGREEMENT BETWEEN TXU ENERGY RETAIL COMPANY LLC, AND THE TEXAS COMPTROLLER PURSUANT TO SECTION 363(b) OF THE BANKRUPTCY CODE AND RULE 9019 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURES, AND (B) MODIFYING THE AUTOMATIC STAY

The above-captioned debtors and debtors in possession (collectively, the "Debtors") file this motion (this "Motion") for entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Order"), (a) authorizing the settlement agreement (the "Crowson Settlement Agreement") between TXU Energy Retail Company, LLC ("TXU Energy") and Susan Combs, Comptroller of Public Accounts for the State of Texas (the "Texas Comptroller") substantially in the form attached hereto as **Exhibit 1**[2] to **Exhibit A**, and (b) modifying the automatic stay. In support of this Motion, the Debtors submit the *Declaration of Meagan Horn in Support of the Motion of Energy Future Holdings Corp., et al., for an Order Authorizing (A) Entry into and*

---

[1] The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, for which joint administration has been granted, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' proposed claims and noticing agent at http://www.efhcaseinfo.com.

[2] The Crowson Settlement Agreement, attached hereto as **Exhibit 1** to **Exhibit A**, has been substantially agreed to by the Parties (as herein defined). An executed agreement will be filed as a supplement to this Motion prior to the hearing date on this Motion.

*Performance Under the Crowson Settlement Agreement Between TXU Energy Retail Company*

*LLC, and the Texas Comptroller Pursuant to Section 363(b) of the Bankruptcy Code and Rule*

*9019 of the Federal Rules of Bankruptcy Procedures, and (B) Modifying the Automatic Stay* (the

"Horn Declaration"), filed contemporaneously herewith.  In further support of this Motion, the

Debtors respectfully submit as follows.

### Jurisdiction and Venue

1.      The United States Bankruptcy Court for the District of Delaware (the "Court")

has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended*

*Standing Order of Reference from the United States District Court for the District of Delaware*,

dated February 29, 2012.  This matter is a core proceeding within the meaning of 28 U.S.C.

§ 157(b)(2), and the Debtors consent pursuant to rule 9013-1(f) of the Local Rules of Bankruptcy

Practice and Procedure of the United States Bankruptcy Court for the District of Delaware

(the "Local Bankruptcy Rules") to the entry of a final order by the Court in connection with this

Motion to the extent that it is later determined that the Court, absent consent of the parties,

cannot enter final orders or judgments in connection herewith consistent with Article III of the

United States Constitution.

2.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The bases for the relief requested in this Motion are section 363 of title 11 of the

United States Code (the "Bankruptcy Code") and rule 9019 of the Federal Rules of Bankruptcy

Procedure (the "Bankruptcy Rules").

### Relief Requested

4.      By this Motion, the Debtors seek entry of the Order (a) authorizing entry into and

performance under the Crowson Settlement Agreement, as memorialized between TXU Energy

and the Texas Comptroller, and authorizing Energy Future Competitive Holdings Company LLC

and Texas Competitive Electric Holdings Company LLC and its direct and indirect Debtor subsidiaries (collectively, the "TCEH Debtors") to take all actions contemplated by and necessary to the resolution of the Crowson Settlement Agreement, and (b) modifying the automatic stay provided under section 362 of the Bankruptcy Code, solely to the extent necessary to permit the relief as requested in this Motion.

5.    As described herein and in the Horn Declaration, the Crowson Settlement Agreement proposes to release $9,764,973.69 in principal and $1,551,893.72 in interest, totaling $11,316,867.41 (the "Credit Amount") to the Trust (as herein defined).  Importantly, these funds are likely outside the TCEH Debtors' estates and, in exchange for releasing these funds, the TXU Energy will receive a tax credit in the Credit Amount without any penalties or alterations to TXU Energy's right to a prepayment discount.

### Background

6.    On April 29, 2014, each of the Debtors filed a voluntary petition with the Court under chapter 11 of the Bankruptcy Code.  The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  The Court has entered an order for joint administration of these chapter 11 cases.  The Court has not appointed a trustee.  The Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") formed an official committee of unsecured creditors in these chapter 11 cases on May 13, 2014 [D.I. 420].  Further information regarding the Debtors' business operations and capital structure is set forth in the declaration of Paul Keglevic in support of the Debtors' first day motions [D.I. 98].

I.    **The TXU Energy Lawsuit and Creation of the Trust.**

7.    In 2007, Thomas Crowson, d/b/a Ivory Tree Arlington Limited, Rolling Oaks Apartments, Inc., Texas Arlington Oaks Management, L.L.C., and Texas Arlington Oaks

3

Apartments, L.T.D., as representatives of all other parties similarly situated (the "Crowson Plaintiffs"), filed a class-action lawsuit against TXU Energy in *Thomas Crowson et al. v. TXU Energy Retail Co. LLC*, Cause No. D-GN-07-003901 (Dist. Ct. Tex., Travis Cty. Nov. 9, 2007) (the "TXU Energy Lawsuit"). TXU Energy billed and collected from certain customers, specifically owners or managers of apartment complexes, State, Metropolitan Transit Authority, Special Purpose District, and County sales taxes on electrical services TXU Energy provided. The Crowson Plaintiffs alleged that TXU Energy erroneously charged and collected sales taxes from customers who were exempt from paying theses taxes, and remitted these funds to the state of Texas from August 2002 through March 1, 2008. The Crowson Plaintiffs argued that they were entitled to a refund of these incorrectly taxed amounts.

8.    The settlement class of individuals[3] (the "TXU Energy Lawsuit Settlement Class") and TXU Energy (collectively, the "Parties") reached a settlement agreement in the TXU Energy Lawsuit. To enable its customers to seek refunds from the Texas Comptroller's Office, TXU Energy agreed to the terms of the settlement. Importantly, at all times, TXU denied all allegations of liability and wrongdoing.

9.    As a result of the settlement, the court created a trust for the benefit of the Crowson Plaintiffs (the "Trust") to which TXU Energy assigned its right to file a claim or claims with the Texas Comptroller for refunds of the Credit Amount (the "Assignment"). Pursuant to the settlement agreement, the attorneys for the TXU Energy Lawsuit Settlement Class would file a claim or claims for refund(s) of the Credit Amount from the Texas Comptroller on behalf of the Trust pursuant to the refund rules and regulations of the Texas Comptroller's Office. Further

---

[3] As defined in the *Stipulation and Agreement of Compromise and Settlement*. *See Crowson v. TXU Energy Retail Co. LLC*, Cause No. D-1-GN-07-003901 (Dist. Ct. Tex., Travis Cty. June 6, 2008). All claims against TXU Energy "in connection with or that arise out of or relate in any manner . . . to TXU [Energy's] assessment and/or collection of Taxes . . ." from August 2002 to March 1, 2008 was released in this 2008 settlement.

RLF1 10388876v.1

pursuant to the settlement, any refunds from the Texas Comptroller would be paid directly to the

Trust and then distributed, upon approval of the state court, to pay suit expenses, attorneys' fees

of the TXU Energy Lawsuit Settlement Class, and the TXU Energy Lawsuit Settlement Class.

## II.    Dispute Regarding the Request for Refund.

10.    On June 2, 2009, pursuant to the settlement agreement, the Trust's

court-appointed trustee, W.H. Morea, III (the "Trustee"), filed a request for refund on behalf of

the TXU Energy Lawsuit Settlement Class (the "Request for Refund"). The Texas Comptroller's

Office denied the Request for Refund in a formal letter dated March 9, 2010. The Texas

Comptroller refused to refund the amount, citing Texas Tax Code § 111.104(f).    Subsection

104(f) reads:

> No taxes, penalties, or interest may be refunded to a person who
> has collected taxes from another person unless the person has
> refunded all the taxes and interest to the person from whom the
> taxes were collected.

11.    As of October 2012, neither TXU Energy nor the Trustee had refunded tax or

interest amounts to the consumers. According to the pleadings filed by the Texas Comptroller in

this case, the Texas Comptroller argued that, in this scenario, if TXU Energy did not first refund

its customers prior to the Texas Comptroller's refund to TXU Energy, then TXU Energy could

easily profit from the error. According to the Texas Comptroller, TXU Energy could sell its

rights to the Credit Amount to the Trust, the Trust could collect the refund, and the customers

could see none of the Credit Amount. As such, the Texas Comptroller contends that TXU Energy

and the Trust could potentially profit, at the expense of the customers, from TXU Energy's

erroneous tax collections.

RLF1 10388876v.1

III.    **The Trust Lawsuit and Subsequent Settlement.**

12.    On October 31, 2012, after the Texas Comptroller rejected the Trustee's Request for Refund, the Trustee filed a petition against the Texas Comptroller for cause. *See Crowson Litig. Settlement Trust v. Susan Combs, State of Texas Comptroller of Public Accounts, and Greg Abbott, Attorney General of the State of Texas*, Cause No. D-1-GN-12-003424 (Dist. Ct. Tex., Travis Cty. 2012) (the "Trust Lawsuit").

13.    In efforts to reach a mutually beneficial conclusion, in consultation with the Trust, TXU Energy and the Texas Comptroller now seek to enter into the Crowson Settlement Agreement to effectuate the tax credit.

14.    The key terms of the Crowson Settlement Agreement are as follows: [4]

- The Texas Comptroller and Trust will stipulate that the amount in controversy is $9,764,973.69 in principal and $1,551,893.72 in interest, totaling $11,316,867.41;

- TXU Energy will void the Assignment and refund the Credit Amount to the TXU Energy Lawsuit Settlement Class, and in return, the Texas Comptroller will allow TXU Energy to claim a credit on its next sales tax prepayment reports in the full amount of the Credit Amount;

- within ten days of the latter of both (a) Bankruptcy Court approval and (b) receipt of the Texas Comptroller's approval of the revocation of Assignment, TXU Energy is to begin processing payments to the Trust;

- once the Trust is refunded the Credit Amounts, TXU Energy will notify the Texas Comptroller with proof of payment and the Texas Comptroller will allow TXU to take a credit for the Credit Amount on one of TXU Energy's subsequent Texas sales and use tax prepayment reports (the "Texas Sales and Use Tax Prepayment Reports");

- the Texas Comptroller will not impose any penalties or alter TXU's right to prepayment discounts; [5]

---

[4] The summaries of the Crowson Settlement Agreement set forth in this section are qualified in their entirety by the provisions of the Crowson Settlement Agreement. To the extent there exists any inconsistency between this summary and the Crowson Settlement Agreement, the Crowson Settlement Agreement shall govern.

[5] TXU Energy historically files Texas Sales and Use Tax Prepayment Reports in the second month of each quarter and remits to the Texas Comptroller a prepayment of tax that is equal to or greater

- there will be no penalty for TXU Energy taking a credit for the Credit Amount;

- TXU Energy will qualify for the prepayment credit immediately upon payment to the Trust; and

- TXU Energy's taking of the credit will operate as a full and final release of any claims TXU Energy has against the Texas Comptroller for a refund relating to the TXU Energy Lawsuit. Similarly, TXU Energy's payment to the Trust will operate as a full and final release of any claims by the Texas Comptroller and by the Trust against TXU for payment of the sales tax at issue in the TXU Energy Lawsuit.

### Basis for Relief

I.    **The Crowson Settlement Agreement is Fair and in the Best Interests of the TCEH Debtors' Estates, Is a Proper Exercise of the TCEH Debtors' Business Judgment, and Should Be Approved.**

15.    Bankruptcy Rule 9019(a) provides, in relevant part:

> On motion by the [debtor in possession] and after notice and a hearing, the court may approve a compromise or settlement. Notice shall be given to creditors, the United States trustee, . . . and indenture trustee as provided in Rule 2002 and to any other entity as the court may direct.

Fed. R. Bankr. P. 9019(a).

16.    The Crowson Settlement Agreement is subject to approval by the Court under Bankruptcy Rule 9019(a). Settlements and compromises are tools often utilized to expedite case administration and to reduce unnecessary administrative costs; as such, they are favored in bankruptcy. *See Myers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996) ("To minimize litigation and expedite the administration of a bankruptcy estate, '[c]ompromises are well favored in bankruptcy."); *see also Will v. Northwestern Univ. (In re Nutraquest, Inc.)*, 434 F.3d 639, 644 (3d Cir. 2006); *In re Key3Media Group, Inc.*, 2006 WL 2842462, at *3 (D. Del. Oct. 2, 2006); *In re Adelphia Commc'n Corp.*, 361 B.R. 337, 348 (Bankr. D. Del. 2007).

---

than the total tax that was due and paid in the same reporting period of the preceding year. Thus, TXU Energy will be allowed a credit totaling the Credit Amount against the amount shown as due and owing on one of the subsequent Texas Sales and Use Tax Prepayment Reports.

Pursuant to Bankruptcy Rule 9019(a), a bankruptcy court may, after appropriate notice and a hearing, approve a compromise or settlement so long as the proposed settlement is fair, reasonable, and in the best interest of the estate. *See In re Marvel Entm't Group, Inc.*, 222 B.R. 243, 249 (D. Del 1998) ("[T]he ultimate inquiry [is] whether 'the compromise is fair, reasonable, and in the interest of the estate.'") (citation omitted); *In re Northwestern Corp.*, No. 03-12872, 2008 WL 2704341, at *6 (Bankr. D. Del. July 10, 2008) ("the bankruptcy court must determine whether the compromise is fair, reasonable, and in the best interests of the estate") (citation omitted); *In re Key3Media Group, Inc.*, 336 B.R. 87, 92 (Bankr D. Del. 2005) ("the bankruptcy court has a duty to make an informed, independent judgment that the compromise is fair and equitable").

17.     In determining whether a settlement is fair and equitable, the Third Circuit has adopted a balancing test, under which a bankruptcy court should decide whether to approve a particular compromise or settlement.  The factors of the balancing test are: "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors." *Martin, 91 F.3d at 393; see also Key3Media Grp. Inc.*, 336 B.R. at 93 (when determining whether a compromise is in the best interests of the estate, courts must "assess and balance the value of the claim that is being compromised against the value of the estate of the acceptance of the compromise proposal").

18.     Based on these factors, the TCEH Debtors believe the Crowson Settlement Agreement represents a fair and reasonable compromise that is in the best interest of the TCEH Debtors' estate.  As contemplated by the Crowson Settlement Agreement, in exchange for voiding the Assignment and releasing funds that likely do not belong to TXU Energy in the first

instance, TXU Energy will receive a tax credit in the Credit Amount without any penalties or alterations to TXU Energy's right to a prepayment discount, a net positive that will avoid the burdensome costs of potential litigation related to this matter.  The Crowson Plaintiffs have already filed a Motion for Rehearing with the Texas Comptroller, which was subsequently denied.

19.    A timely resolution of this matter would return due Credit Amounts to the TXU Energy Lawsuit Settlement Class and bolster TXU Energy's customer relations.  TXU Energy's businesses center on its customer base.  Moreover, as a debtor in a highly competitive industry, TXU Energy is already at risk of losing valuable customers due to its chapter 11 filing. Resolving this issue with a timely settlement will reduce the strain on TXU Energy's customer relations and aid in maintaining customer loyalty.

20.    A proposed settlement need not be the best result that a debtor could have achieved, but only must fall within the "reasonable range of litigation possibilities."  *In re Energy Corp.*, 886 F.2d 912, 929 (7th Cir. 1989); *In re Sea Containers Ltd.*, No. 06-11156 (KJC), 2008 WL 4296562, at *5 (Bankr. D. Del. Sept. 19, 2008); *In re Key3Media Grp. Inc.*, No. 03-10323 (MFW) 2006 WL 2842462, at *3 (D. Del. Oct. 2, 2006).  The TCEH Debtors under the advisement of their advisors and professionals decided upon the Crowson Settlement as the most effective and efficient way of resolving the claims.  Settlements generally are practical resolutions and are well within the reasonable range of litigation possibilities.  As stated previously, bankruptcy courts commonly approve of settlements and often cite their cost-saving benefits.

21.    Additionally, under section 363(b)(1) of the Bankruptcy Code, a debtor "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business,

property of the estate."  11 U.S.C. § 363(b)(1).  Pursuant to this section, the Court should approve transactions outside the ordinary course of business if the proposed use of estate assets is a reasonable exercise of the TCEH Debtors' business judgment.  If a valid business justification exists for the use or sale of property, there is strong presumption that "in making a business decision the directors . . . acted on an informed basis, in good faith and in an honest belief that the action taken was in the best interests of the company." *Official Comm. of Subordinated Bondholders v. Integrated Res., Inc., (In re Integrated Res., Inc.)*, 147 B.R. 548, 567 (Bankr. D. Del. 2008) (quoting *Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985)). Generally, when applying the business judgment standard, courts grant great deference to debtors' business decisions.  TXU Energy's management, when presented with the two options of continued litigation or settlement, decided that the cost-benefit calculation favored a settlement.  The Crowson Settlement Agreement will resolve the refund issues on a consensual and timely basis without the costs attributed to further potential litigation.  Credit Amounts will be refunded to the rightful customers and TXU Energy in turn will receive a tax credit in the refunded Credit Amount, both of which are in the best interests of TXU Energy.

22.    Most importantly, the Crowson Settlement Agreement proposes to release funds that likely do not belong to the TCEH Debtors' estates.  The amounts are quintessentially refunds of customer tax monies collected and held on behalf of the state of Texas in trust.  Under the Texas Tax Code, "any person who receives or collects a tax or any money represented to be a tax from another person holds the amount so collected in trust for the benefit of the state." Texas Tax Code § 111.016.  The amounts collected by TXU Energy, therefore, were arguably for the benefit of Texas and never property of TXU Energy.  Ultimately, there is a strong argument that because these funds are not part of the TCEH Debtors' estates, it foregoes an evaluation of

whether their use in the Crowson Settlement Agreement is justifiable under the business judgment standard as non-ordinary course transactions.  *See Texas Comptroller of Public Accounts v. Megafoods Stores (In re Megafoods Stores)*, 163 F.3d 1063 (9th Cir. 1998).  In consideration of all these factors, the Debtors respectfully submit that the Court approve the Crowson Settlement Agreement pursuant to Bankruptcy Rule 9019 and section 363 of the Bankruptcy Code.

**II.    The Debtors Seek a Waiver of the Automatic Stay to Effectuate the Relief Requested in this Motion.**

23.    Section 362(a) of the Bankruptcy Code operates to stay:

> the commencement or continuation, including the issuance or employment of process of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to receive a claim against the debtor that arose before the commencement of the case under this title . . . .

11 U.S.C. § 362(a)(1).  Section 362, however, also permits a debtor or other parties in interest to request a modification or termination of the automatic stay for "cause."  Id. at § 362(d)(1).

24.    The Debtors seek authorization, under section 362(d) of the Bankruptcy Code, to modify the automatic stay to the extent necessary to permit the relief requested in this Motion and, for the reasons described herein.  The Debtors believe this relief is appropriate in the context of modifying the automatic stay such that the state court may approve the Crowson Settlement Agreement, allowing beneficiaries of the Trust to receive their refunds and TXU Energy to receive tax credits, while efficiently resolving the litigated issues.

<u>Notice</u>

25.    The Debtors shall provide notice of this Motion on the date hereof via U.S. first class mail to:  (a) the Office of the U.S. Trustee for the District of Delaware; (b) (i) the entities listed on the Consolidated List of Creditors Holding the 50 Largest Unsecured Claims filed

11

pursuant to Bankruptcy Rule 1007(d); and (ii) proposed counsel to the Creditors' Committee; (c) Wilmington Trust, N.A., in its capacity as administrative agent under the TCEH first lien credit agreement and collateral agent under the TCEH intercreditor agreements and counsel thereto; (d) Bank of New York Mellon Trust Company, N.A., in its capacity as indenture trustee under: (i) the TCEH unsecured pollution control revenue bonds; and (ii) the EFCH 2037 Notes due 2037, and counsel thereto; (e) American Stock Transfer & Trust Company, LLC, in its capacity as indenture trustee under: (i) the 9.75% EFH senior unsecured notes due 2019; (ii) the 10.0% EFH senior unsecured notes due 2020; (iii) the 10.875% EFH LBO senior unsecured notes due 2017; (iv) the 11.25%/12.0% EFH LBO toggle notes due 2017; (v) the 5.55% EFH legacy notes (series P) due 2014; (vi) the 6.50% EFH legacy notes (series Q) due 2024; and (vii) the 6.55% EFH legacy notes (series R) due 2034, and counsel thereto; (f) Computershare Trust Company, N.A. and Computershare Trust Company of Canada, in their capacities as indenture trustee under: (i) the 11.0% EFIH senior secured second lien notes due 2021; and (ii) the 11.75% EFIH senior secured second lien notes due 2022, and counsel thereto; (g) UMB Bank, N.A. in its capacity as indenture trustee under: (i) the 9.75% EFIH senior unsecured notes due 2019; and (ii) the 11.25%/12.25% EFIH senior toggle notes due 2018, and counsel thereto; (h) BOKF, NA, dba Bank of Arizona, in its capacity as indenture trustee under 11.50% TCEH senior secured notes due 2020, and counsel thereto; (i) CSC Trust Company of Delaware in its capacity as indenture trustee under: (i) the 6.875% EFIH senior secured notes due 2017; and (ii) the 10.0% EFIH senior secured notes due 2020, and counsel thereto; (j) Law Debenture Trust Company of New York in its capacity as indenture trustee under: (i) the 10.25% TCEH senior unsecured notes due 2015; and (ii) the 10.50%/11.25% TCEH senior toggle notes due 2016, and counsel thereto; (k) Wilmington Savings Fund Society, FSB in its capacity as indenture trustee

under the 15.0% TCEH senior secured second lien notes due 2021, and counsel thereto; (l) counsel to certain holders of claims against the Debtors regarding each of the foregoing described in clauses (c) through (k); (m) the agent for the TCEH debtor-in-possession financing facility and counsel thereto; (n) the agent for the EFIH debtor-in-possession financing facility and counsel thereto; (o) counsel to certain holders of equity in Texas Energy Future Holdings Limited Partnership; (p) counsel to the Ad Hoc Committee of TCEH Unsecured Noteholders; (q) counsel to the Ad Hoc Committee of TCEH Second Lien Noteholders; (r) Oncor Electric Delivery Holdings Company LLC and counsel thereto; (s) Oncor Electric Delivery Company LLC and counsel thereto; (t) the Securities and Exchange Commission; (u) the Internal Revenue Service; (v) the Office of the United States Attorney for the District of Delaware; (w) the Office of the Texas Attorney General on behalf of the Public Utility Commission of Texas; (x) counsel to the Electric Reliability Council of Texas; (y) those parties that have requested notice pursuant to Bankruptcy Rule 2002; (z) counsel to the Trustee; and (a)(a) the Texas Comptroller.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

### No Prior Request

26.    No prior request for the relief sought in this Motion has been made to this or any other court.

*[Remainder of page intentionally left blank.]*

RLF1 10388876v.1

WHEREFORE, the Debtors respectfully request that the Court enter the Order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested in this Motion and granting such other and further relief as is appropriate under the circumstances.

Dated:  June 9, 2014
       Wilmington, Delaware

**RICHARDS, LAYTON & FINGER, P.A.**
Mark D. Collins (No. 2981)
Daniel J. DeFranceschi (No. 2732)
Jason M. Madron (No. 4431)
920 North King Street
Wilmington, Delaware 19801
Telephone:    (302) 651-7700
Facsimile:    (302) 651-7701
Email:    collins@rlf.com
       defranceschi@rlf.com
       madron@rlf.com

-and-

**KIRKLAND & ELLIS LLP**
Richard M. Cieri (admitted *pro hac vice*)
Edward O. Sassower, P.C. (admitted *pro hac vice*)
Stephen E. Hessler (admitted *pro hac vice*)
Brian E. Schartz (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022-4611
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900
Email:    richard.cieri@kirkland.com
       edward.sassower@kirkland.com
       stephen.hessler@kirkland.com
       brian.schartz@kirkland.com

-and-

James H.M. Sprayregen, P.C. (admitted *pro hac vice*)
Chad J. Husnick (admitted *pro hac vice*)
Steven N. Serajeddini (admitted *pro hac vice*)
300 North LaSalle
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200
Email:    james.sprayregen@kirkland.com
       chad.husnick@kirkland.com
       steven.serajeddini@kirkland.com

Proposed Co-Counsel to the Debtors and Debtors in Possession