## Exhibit C

## EXHIBIT A

**Offer Memorandum**

# ENERGY FUTURE INTERMEDIATE HOLDING COMPANY LLC
# EFIH FINANCE INC.

**Offer to Purchase for Cash Any and All of the Outstanding EFIH Second Lien Notes (as defined below)**

> **The Offer (as defined below) will expire at 11:59 p.m., New York City time, on June 6, 2014, unless extended or earlier terminated by the Company (as defined below) in its sole discretion (the "*Expiration Date*").  Holders of EFIH Second Lien Notes (as defined below) must tender their EFIH Second Lien Notes on or prior to the Expiration Date in order to receive the Tender Consideration (as defined below).  In order to receive the Total Consideration (as defined below), holders of EFIH Second Lien Notes must tender their EFIH Second Lien Notes on or prior to 5:00 p.m., New York City time, on May 23, 2014, unless extended at the sole discretion of the Company (the "*Early Participation Date*").  Tenders of EFIH Second Lien Notes may not be withdrawn, except in certain limited circumstances where withdrawal rights are required by law.  The Offer is subject to, among other things, the approval of the Bankruptcy Court (as defined below), and the Company does not intend to permit the Offer to expire on or prior to the date the EFIH Second Lien Settlement (as defined below) is heard, and approved, by the Bankruptcy Court.**

Energy Future Intermediate Holding Company LLC ("*EFIH*") and EFIH Finance Inc. ("*EFIH Finance*" and, together with EFIH, the "*Issuer*," the "*Company*" "*we*," "*us*" or "*our*"), both of which are wholly owned subsidiaries of Energy Future Holdings Corp. ("*EFH Corp.*"), hereby offer (the "*Offer*") the holders (each, a "*Holder*") of our 11% Senior Secured Second Lien Notes due 2021 (the "*11% Second Lien Notes*") and the 11.750% Senior Secured Second Lien Notes due 2022 (the "*11.750% Second Lien Notes*" and collectively with the 11% Second Lien Notes, the "*EFIH Second Lien Notes*"), upon the terms and subject to the conditions set forth in this Offer to Purchase, including the accompanying Letter of Transmittal and related instruction letters and forms (the "*Offer to Purchase*"), to purchase all of the EFIH Second Lien Notes held by such Holder for the cash consideration set forth below.

Holders who validly tender their EFIH Second Lien Notes in the Offer on or prior to the Early Participation Date will be eligible to receive an amount, paid in cash, equal to $1,123.22 for each $1,000 principal amount of 11% Second Lien Notes and $1,166.22 for each $1,000 principal amount of 11.750% Second Lien Notes based on an assumed Settlement Date (as defined below) of June 11, 2014, which amounts will be **decreased** in each case by $0.14 for each day after June 11, 2014 that the Settlement Date occurs (such amounts as may be reduced, the "*Total Consideration*").  The Total Consideration includes an early participation payment (the "*Early Participation Consideration*") of $50.00 per $1,000 principal amount of EFIH Second Lien Notes payable in respect of EFIH Second Lien Notes validly tendered on or prior to the Early Participation Date.  **Holders must validly tender their EFIH Second Lien Notes on or prior to the Early Participation Date in order to be eligible to receive the Total Consideration for such EFIH Second Lien Notes purchased in the Offer.**  Holders who validly tender their EFIH Second Lien Notes after the Early Participation Date and on or prior to the Expiration Date will be eligible to receive an amount, paid in cash, equal to the Total Consideration less the Early Participation Consideration (the "*Tender Consideration*").  The Company will also pay any and all accrued and unpaid interest up to, but not including, the Settlement Date at the rate of 11% with respect to the 11% Second Lien Notes and 12.25% with respect to the 11.750% Second Lien Notes that are accepted for purchase in the Offer (the "*Accrued Interest*").  Such Accrued Interest includes additional interest payable under the registration rights agreement with respect to the 11.750% Second Lien Notes.  The following table sets forth the Tender Consideration and the Total Consideration payable per $1,000 principal amount of EFIH Second Lien Notes tendered pursuant to the Offer based on an assumed Settlement Date of June 11, 2014:

| Securities | CUSIP Number(s) | Aggregate Principal Amount Outstanding | Tender Consideration(1)(2) | Early Participation Consideration(1) | Total Consideration(1)(2) |
|---|---|---|---|---|---|
| 11% Second Lien Notes | 29269QAB3 | $406,392,000 | $1,073.22 | $50.00 | $1,123.22 |
| 11.750% Second Lien Notes | 29269QAD9 U29197AB3 | $1,750,000,000 | $1,116.22 | $50.00 | $1,166.22 |

(1) Does not include the Accrued Interest, which will be paid on all of the EFIH Second Lien Notes accepted for purchase in the Offer.

(2) The Total Consideration (and therefore the Tender Consideration) will be decreased by $0.14 for each day after June 11, 2014 that the Settlement Date occurs.  See "The Offer—Offer Consideration."

On April, 29, 2014 (the "*Petition Date*"), EFH Corp. and the substantial majority of its direct and indirect subsidiaries, excluding Oncor Electric Delivery Holdings Company LLC and its subsidiaries, but including EFIH and EFIH Finance (collectively, the "*Reorganizing Entities*"), filed voluntary petitions for relief under Chapter 11 of Title 11 ("*Chapter 11*") of the United States Code, 11 U.S.C. §§101 et. seq. (the "*Bankruptcy Code*") in the United States Bankruptcy Court for the District of Delaware (the "*Bankruptcy Court*") and are operating their businesses and managing their property as debtors-in-possession pursuant to the Bankruptcy Code.

Pursuant to the Restructuring Support and Lock-Up Agreement, dated as of April 29, 2014 (as amended from time to time, the "*Restructuring Support Agreement*"), holders of approximately 35% of the outstanding aggregate principal amount of EFIH Second Lien Notes (such holders, the "*RSA EFIH Second Lien Note Parties*") have agreed to a voluntary settlement with respect to the Issuer's obligations under the EFIH Second Lien Notes held by the RSA EFIH Second Lien Note Parties whereby each RSA EFIH Second Lien Note Party has agreed to accept as payment in full for any claims arising out of its EFIH Second Lien Notes, an amount in cash equal to (i) 100% of the principal of, plus accrued and unpaid interest on (including any additional interest payable under a registration rights agreement with respect to the 11.750% Second Lien Notes) the principal amount of EFIH Second Lien Notes held by such RSA EFIH Second Lien Note Party at the contract non-default rate on such EFIH Second Lien Notes up to, but not including, the Settlement Date, plus (ii) 50% of the amount of the EFIH Second Lien Makewhole Claims (as defined below) on the principal amount of EFIH Second Lien Notes held by such RSA EFIH Second Lien Note Party calculated as of the Settlement Date (such settlement, the "*EFIH Second Lien RSA Settlement*"). Certain RSA EFIH Second Lien Note Parties will receive other consideration under the terms of the Restructuring Support Agreement that will not be available to Holders that choose to participate in this Offer. Specifically, a RSA EFIH Second Lien Note Party will have the right to purchase up to $500 million in the form of loans under the EFIH First Lien DIP Facility (as defined herein) and will receive a 1.75% commitment fee in connection with such purchase. In addition, certain other RSA EFIH Second Lien Note Parties will receive a settlement premium of $1.57 million in cash in the aggregate.

This Offer is being made in accordance with the terms of the Restructuring Support Agreement to enable additional Holders of EFIH Second Lien Notes to enter into a voluntary settlement with respect to the Issuer's obligations under the EFIH Second Lien Notes held by such additional Holders (the "*EFIH Second Lien Non-RSA Settlement*," and together with the EFIH Second Lien RSA Settlement, the "*EFIH Second Lien Settlement*"). The Restructuring Support Agreement requires the Company to obtain an order from the Bankruptcy Court to approve the EFIH Second Lien Settlement and to consummate this Offer on or before the 75th day after the Petition Date, which day is July 13, 2014.

In connection with the Offer, the Reorganizing Entities expect to initiate litigation to obtain entry of an order of the Bankruptcy Court: (i) disallowing the claims of Holders of EFIH Second Lien Notes other than RSA EFIH Second Lien Note Parties or Participating Holders (as defined below) (such holders, the "*Non-Settling EFIH Second Lien Note Holders*") derived from or based upon makewhole or other payment provisions under the EFIH Second Lien Notes (such claims, the "*EFIH Second Lien Makewhole Claims*"); and (ii) providing that, upon completion of the EFIH Second Lien DIP Notes Financing (as defined below), the Non-Settling EFIH Second Lien Note Holders will only receive a cash payment in an amount equal to 100% of the principal, plus accrued and unpaid interest on (excluding any additional interest payable under a registration rights agreement with respect to the 11.750% Second Lien Notes) the principal amount of EFIH Second Lien Notes held by such Non-Settling EFIH Second Lien Note Holders at the non-default rate of such holder's claim (not including any premiums, settlements, fees or claims relating to the repayment of the EFIH Second Lien Note Claims (as defined in the Restructuring Support Agreement)) up to, but not including, the consummation date of the EFIH Second Lien DIP Notes Financing. Any other claims of such Non-Settling EFIH Second Lien Note Holders, if any, allowed by the Bankruptcy Court will receive their pro rata share of cash in the amount of such claims on the effective date of the Restructuring Plan (as defined herein) or such other treatment (which may include new debt) as permitted under section 1129(b) of the Bankruptcy Code under the Reorganizing Entities' Chapter 11 plan of reorganization, as mutually agreed by EFIH and the Required EFIH Unsecured Consenting Creditors (as defined in the Restructuring Support Agreement).

A Holder that participates in the Offer (a "*Participating Holder*") is required to tender all of its EFIH Second Lien Notes in the Offer. No partial tender of a Participating Holder's EFIH Second Lien Notes will be valid. No Holder is required to participate in the Offer and any Holder's participation in the Offer is voluntary. The Offer

*(cover page continued)*

is not conditioned on Holders of any minimum principal amount of EFIH Second Lien Notes participating in the Offer.  Subject to applicable law, the Offer is being made separately for each series of EFIH Second Lien Notes and, subject to applicable law, the Company reserves the right to terminate, withdraw or amend the Offer with respect to either series of EFIH Second Lien Notes independently from the other series.

Before deciding to participate in the Offer, you should consider carefully each of the risk factors set forth in "Risk Factors" beginning on page 16 of this Offer to Purchase and the other risk factors incorporated by reference into this Offer to Purchase.

No tenders of EFIH Second Lien Notes will be valid if delivered after the Expiration Date.  A Holder may decide to participate in the Offer by validly tendering its EFIH Second Lien Notes.  A Holder that validly tenders its EFIH Second Lien Notes by the Early Participation Date will receive the Total Consideration.  A Holder that validly tenders its EFIH Second Lien Notes after the Early Participation Date and on or prior to the Expiration Date will receive only the Tender Consideration.  A Holder may not withdraw EFIH Second Lien Notes that it has tendered at any time, except in certain limited circumstances where withdrawal rights are required by law.  If the Company determines to offer withdrawal rights in accordance with applicable law, including in the event a material change causes the Company to update the information relating to this Offer and extend the Expiration Date, any such withdrawal rights will be limited as set forth in any notice thereof by the Company. The Company will determine in its sole discretion whether any EFIH Second Lien Notes have been validly tendered into the Offer and whether to accept any EFIH Second Lien Notes that have not been validly tendered into the Offer.

The consummation of the Offer is subject to several conditions, including, among others, (1) the closing of the EFIH Second Lien DIP Notes Financing, which is also subject to several conditions, including the satisfaction or waiver of the conditions precedent under the note purchase agreement relating to the EFIH Second Lien DIP Notes Financing (the "*EFIH Second Lien DIP Notes Facility*") as described herein, and approval by the Bankruptcy Court of the Company's incurrence of indebtedness and granting of second-priority priming liens under the EFIH Second Lien DIP Notes Facility and (2) approval of the Bankruptcy Court of the terms of this Offer and the EFIH Second Lien Settlement.  Under the terms of the Restructuring Support Agreement, certain parties could have termination rights under the Restructuring Support Agreement to the extent the EFIH First Lien Settlement (as defined herein) and the EFIH First Lien DIP Facility (as defined below) are not consummated in connection with the completion of this Offer and approval of the EFIH Second Lien Settlement.  As a result, this Offer is conditioned upon the approval by the Bankruptcy Court of the EFIH First Lien DIP Facility and the EFIH First Lien Settlement in addition to the Bankruptcy Court's approval of the EFIH Second Lien DIP Notes Financing and EFIH Second Lien Settlement, which conditions can be waived by the Company in its sole discretion. See "Summary—Recent Developments" for a description of the EFIH First Lien DIP Facility and the EFIH First Lien Settlement.

To the extent we are legally permitted to do so, the Company expressly reserves the absolute right, in its sole discretion and, if required, subject to Bankruptcy Court approval, at any time and with respect to any series of EFIH Second Lien Notes to: (i) waive any condition to the Offer, (ii) amend any of the terms of the Offer, (iii) terminate the Offer, (iv) extend the Early Participation Date, the Expiration Date or the Settlement Date or (iv) modify the Total Consideration or Tender Consideration, as applicable, provided that in the event the Company modifies the Total Consideration or Tender Consideration, the Offer will be extended if necessary such that the Early Participation Date or Expiration Date, as applicable, is at least ten business days from the date of such modification. Any waiver, amendment, modification or termination of the Offer will apply to all EFIH Second Lien Notes tendered pursuant to the Offer.  In the event that the Offer is terminated or otherwise not completed, no amounts will be paid or become payable to Holders of the EFIH Second Lien Notes who have validly tendered their EFIH Second Lien Notes in connection with the Offer and all tendered EFIH Second Lien Notes will be returned promptly.

**Nothing herein, or in any of the accompanying forms and letters, shall constitute or be deemed to constitute a solicitation by any party of votes to approve or reject a Chapter 11 plan of reorganization for any debtor (a "*Chapter 11 Plan*"). A solicitation with respect to votes to approve or reject a Chapter 11 Plan may only be commenced once a disclosure statement that complies with section 1125 of the Bankruptcy Code has been approved by the Bankruptcy Court.**

*(cover page continued)*

Questions and requests for assistance or for additional copies of this Offer to Purchase may be directed to the Dealer Managers or Offer Agent, at their respective address and telephone number set forth on the back cover of this Offer to Purchase.

May 9, 2014

_____

Dealer Managers

**Citigroup**  **Deutsche Bank Securities**  **BofA Merrill Lynch**

**Morgan Stanley**  **Barclays**  **RBC Capital Markets**

**Mitsubishi UFJ Securities**  **Evercore**

*(end of cover page)*

**IMPORTANT INFORMATION REGARDING THE OFFER**

THIS OFFER TO PURCHASE AND THE ACCOMPANYING LETTER OF TRANSMITTAL AND RELATED INSTRUCTION LETTERS AND FORMS CONTAIN IMPORTANT INFORMATION THAT SHOULD BE READ CAREFULLY BEFORE ANY DECISION IS MADE WITH RESPECT TO PARTICIPATION IN THE OFFER. AS A CONDITION TO PARTICIPATING IN THE OFFER, HOLDERS WILL BE REQUIRED TO ACKNOWLEDGE THAT THEY HAVE READ THIS OFFER TO PURCHASE AND CERTAIN OTHER DOCUMENTS.

THE OFFER IS NOT BEING MADE TO (NOR WILL THE SURRENDER OF EFIH SECOND LIEN NOTES FOR PURCHASE BE ACCEPTED FROM OR ON BEHALF OF) HOLDERS OF EFIH SECOND LIEN NOTES IN ANY JURISDICTION IN WHICH THE MAKING OR ACCEPTANCE OF THE OFFER WOULD NOT BE IN COMPLIANCE WITH THE LAWS OF SUCH JURISDICTION. NONE OF THE DELIVERY OF THIS DOCUMENT AND ANY DOCUMENT INCORPORATED BY REFERENCE HEREIN OR THE PURCHASE OF EFIH SECOND LIEN NOTES FOR CASH WILL, UNDER ANY CIRCUMSTANCES, CREATE ANY IMPLICATION THAT THE INFORMATION CONTAINED IN THIS OFFER TO PURCHASE OR IN ANY DOCUMENT INCORPORATED BY REFERENCE HEREIN IS CURRENT AS OF ANY TIME SUBSEQUENT TO THE DATE OF SUCH DOCUMENT.

NEITHER THE BANKRUPTCY COURT NOR ANY FEDERAL OR STATE SECURITIES COMMISSION HAS PASSED UPON THE ACCURACY OR ADEQUACY OF THIS OFFER TO PURCHASE. ANY REPRESENTATION TO THE CONTRARY IS UNLAWFUL. NO DEALER, SALESPERSON OR OTHER PERSON IS AUTHORIZED TO GIVE ANY INFORMATION OR TO MAKE ANY REPRESENTATIONS WITH RESPECT TO THE MATTERS DESCRIBED IN THIS OFFER TO PURCHASE OTHER THAN THOSE CONTAINED HEREIN OR IN THE DOCUMENTS INCORPORATED BY REFERENCE HEREIN AND, IF GIVEN OR MADE, SUCH INFORMATION OR REPRESENTATION MUST NOT BE RELIED UPON AS HAVING BEEN AUTHORIZED BY THE COMPANY, ANY DEALER MANAGER, THE OFFER AGENT, THE DEPOSITARY AGENT OR THE TRUSTEE OF THE EFIH SECOND LIEN NOTES.

THE CONTENTS OF THIS OFFER TO PURCHASE SHOULD NOT BE CONSTRUED AS INVESTMENT, LEGAL OR TAX ADVICE. HOLDERS SHOULD CONSULT THEIR OWN COUNSEL, ACCOUNTANTS AND OTHER ADVISORS AS TO LEGAL, TAX, BUSINESS, FINANCIAL AND RELATED ASPECTS CONCERNING THEIR DECISION TO PARTICIPATE IN THE OFFER, INCLUDING PARTICIPATING IN THE OFFER.

NONE OF THE COMPANY, THE DEALER MANAGERS, THE OFFER AGENT, THE DEPOSITARY AGENT, THE TRUSTEE OF THE EFIH SECOND LIEN NOTES OR ANY OF THEIR RESPECTIVE SUBSIDIARIES OR AFFILIATES IS MAKING ANY RECOMMENDATION IN CONNECTION WITH THE OFFER. EACH HOLDER MUST MAKE ITS OWN DECISION AS TO WHETHER OR NOT TO PARTICIPATE IN THE OFFER.

**IMPORTANT INFORMATION REGARDING THIS OFFER TO PURCHASE**

EACH RECIPIENT OF THIS OFFER TO PURCHASE (A "RECIPIENT") ACKNOWLEDGES AND AGREES THAT (I) THE OFFER TO PURCHASE IS PROVIDED TO THE RECIPIENT FOR INFORMATIONAL PURPOSES, (II) THE DEALER MANAGERS AND THEIR RESPECTIVE AFFILIATES BEAR NO RESPONSIBILITY (AND SHALL NOT BE LIABLE) FOR THE ACCURACY OR COMPLETENESS (OR LACK THEREOF) OF THIS OFFER TO PURCHASE OR ANY INFORMATION CONTAINED THEREIN, (III) NO REPRESENTATION REGARDING THIS OFFER TO PURCHASE IS MADE BY THE DEALER MANAGERS OR ANY OF THEIR RESPECTIVE AFFILIATES, (IV) NEITHER THE DEALER MANAGERS NOR ANY OF THEIR RESPECTIVE AFFILIATES HAVE MADE ANY INDEPENDENT VERIFICATION AS TO THE ACCURACY OR COMPLETENESS OF THIS OFFER TO PURCHASE, AND (V) THE DEALER MANAGERS AND THEIR RESPECTIVE AFFILIATES SHALL HAVE NO OBLIGATION TO UPDATE OR SUPPLEMENT THIS OFFER TO PURCHASE OR OTHERWISE PROVIDE ADDITIONAL INFORMATION.

**IMPORTANT DATES**

Holders should take note of the following dates in connection with the Offer:

| Date | Calendar Date and Time | Event |
|---|---|---|
| Mailing Date | May 9, 2014 | The mailing date of this Offer to Purchase, including the accompanying Letter of Transmittal and related instruction letters and forms. |
| Commencement Date | May 9, 2014 | The commencement date of the Offer. |
| Early Participation Date | 5:00 p.m., New York City time, on May 23, 2014, unless extended or earlier terminated by the Company in its sole discretion. | The last day and time for Holders to tender their EFIH Second Lien Notes into the Offer to be eligible to receive the Total Consideration, which includes the Early Participation Consideration and the Tender Consideration. |
| Expiration Date | 11:59 p.m., New York City time, on June 6, 2014, unless extended or earlier terminated by the Company in its sole discretion. | The last day and time for Holders to tender their EFIH Second Lien Notes into the Offer. Holders who validly tender their EFIH Second Lien Notes after the Early Participation Date and on or prior to the Expiration Date will only be eligible to receive the Tender Consideration. |
| Acceptance Date | Subject to the terms and conditions of the Offer, the Company intends to accept for purchase all EFIH Second Lien Notes validly tendered promptly following the Expiration Date. | If the conditions to the Offer are satisfied, or if the Company waives all of the conditions that have not been satisfied, the Company will accept for purchase, after the Expiration Date, all EFIH Second Lien Notes that, at such time, have been validly tendered (or defectively tendered if the Company waives any such defect) pursuant to the Offer. The Company will accept the EFIH Second Lien Notes for purchase by notifying the Offer Agent and Depositary Agent of its acceptance. The notice may be oral if the Company promptly confirms it in writing. |

| Date | Calendar Date and Time | Event |
|------|------------------------|-------|
| Settlement Date ............................................. | The Settlement Date will be a date on or promptly following the Acceptance Date. | The date (i) the Company will pay for EFIH Second Lien Notes that it has accepted for purchase by wiring to DTC (as defined below) on the Settlement Date funds sufficient to pay the full amount of the Total Consideration or Tender Consideration, as applicable, and the Accrued Interest, that it owes to Participating Holders pursuant to the Offer and (ii) the trustee for the EFIH Second Lien Notes will cancel the EFIH Second Lien Notes tendered by Participating Holders. |

**TABLE OF CONTENTS**

Page

IMPORTANT INFORMATION REGARDING THE OFFER ......................................................................... i

IMPORTANT INFORMATION REGARDING THIS OFFER TO PURCHASE ........................................... ii

IMPORTANT DATES ............................................................................................................................ iii

CERTAIN TERMS USED IN THIS OFFER TO PURCHASE ............................................................... vi

NOTICE TO HOLDERS ....................................................................................................................... vii

FORWARD-LOOKING STATEMENTS ............................................................................................... viii

AVAILABLE INFORMATION ................................................................................................................. x

DOCUMENTS INCORPORATED BY REFERENCE ............................................................................. x

SUMMARY ............................................................................................................................................. 1

THE COMPANY ..................................................................................................................................... 1

RECENT DEVELOPMENTS .................................................................................................................. 1

ORGANIZATIONAL STRUCTURE ....................................................................................................... 7

ADDITIONAL INFORMATION ............................................................................................................ 10

SUMMARY OF THE OFFER ............................................................................................................... 11

RISK FACTORS ................................................................................................................................... 16

THE OFFER .......................................................................................................................................... 23

PURPOSE AND BACKGROUND OF THE OFFER ............................................................................. 25

DESCRIPTION OF THE FINANCING ................................................................................................. 26

PROCEDURES FOR TENDERING EFIH SECOND LIEN NOTES .................................................... 26

ACCEPTANCE OF OUTSTANDING NOTES FOR PURCHASE; PAYMENT FOR EFIH SECOND
    LIEN NOTES .................................................................................................................................. 29

WITHDRAWAL OF TENDERS ............................................................................................................ 29

CONDITIONS TO THE CONSUMMATION OF THE OFFER ............................................................. 30

SUMMARY OF RESTRUCTURING SUPPORT AGREEMENT ......................................................... 32

SUMMARY OF EFIH SECOND LIEN DIP NOTES ........................................................................... 35

CERTAIN UNITED STATES FEDERAL INCOME TAX CONSIDERATIONS .................................. 39

OFFER AGENT; DEPOSITARY AGENT; DEALER MANAGERS ..................................................... 44

MISCELLANEOUS ...................................................................................................................................45

## CERTAIN TERMS USED IN THIS OFFER TO PURCHASE

Unless the context otherwise requires or as otherwise indicated, capitalized terms used in this Offer to Purchase that are not otherwise defined herein shall have the meanings set forth below:

- "*2013 Form 10-K*" is the EFIH Annual Report on Form 10-K for the year ended December 31, 2013, filed with the SEC on April 30, 2014, as amended by the EFIH Annual Report on Form 10-K/A filed with the SEC on May 1, 2014;

- "*EFCH*" is Energy Future Competitive Holdings Company LLC and not any of its subsidiaries;

- "*EFH Corp. 2017 Toggle Notes*" are the 11.250%/12.000% Senior Toggle Notes due 2017 issued by EFH Corp.;

- "*EFH Corp. 9.75% Notes*" are EFH Corp.'s 9.75% Fixed Senior Notes due 2019;

- "*EFH Corp. 10% Notes*" are EFH Corp.'s 10% Fixed Senior Notes due 2020;

- "*EFH Corp. 10.875% Notes*" are EFH Corp.'s 10.875% Fixed Senior Notes due 2017;

- "*EFH Corp. Interests*" are the equity interests of EFH Corp;

- "*EFH Corp. Unsecured Notes*" are, collectively, EFH Corp. 9.75% Notes, EFH Corp. 10% Notes, EFH Corp. 10.875% Notes, EFH Corp. 2017 Toggle Notes and Legacy Notes;

- "*EFH Non-Guaranteed Notes*" are, collectively, EFH Corp. 9.75% Notes, EFH Corp. 10% Notes and Legacy Notes;

- "*EFIH 6.875% First Lien Notes*" are the Issuer's 6.875% Senior Secured Notes due 2017;

- "*EFIH 9.75% Unsecured Notes*" are the Issuer's 9.75% Senior Unsecured Notes due 2019;

- "*EFIH 10.00% First Lien Notes*" are the Issuer's 10.00% Senior Secured Notes due 2020;

- "*EFIH 11% Second Lien Notes*" are the Issuer's 11% Senior Secured Second Lien Notes due 2021;

- "*EFIH 11.750% Second Lien Notes*" are the Issuer's 11.750% Senior Secured Second Lien Notes due 2022;

- "*EFIH First Lien Notes*" are, collectively, the EFIH 6.875% First Lien Notes and the EFIH 10.00% First Lien Notes;

- "*EFIH Second Lien Notes*" are, collectively, the EFIH 11% Second Lien Notes and the EFIH 11.750% Second Lien Notes;

- "*EFIH Toggle Notes*" are the Issuer's 11.25/12.25% Unsecured Toggle Notes due 2018;

- "*EFIH Unsecured Notes*" are, collectively, the EFIH Toggle Notes and the EFIH 9.75% Unsecured Notes;

- "*First Lien Commitment Letter*" is that certain commitment letter, dated as of April 28, 2014, between EFIH and initial lenders thereto, relating to the EFIH First Lien DIP Facility;

- "*First Quarter 2014 Form 10-Q*" is the EFIH Quarterly Report on Form 10-Q for the quarterly period ended March 31, 2014, filed with the SEC on May 7, 2014;

- "*General Unsecured Claim Against EFH Corp.*" is any unsecured claim against EFH that is not otherwise paid in full pursuant to a separate order of the Bankruptcy Court, or canceled for no consideration, including EFH Corp. Unsecured Note claims and any claims arising on account of the EFH Corp. 10.875% Notes and EFH Corp. 2017 Toggle Notes, but excluding: (i) administrative claims against EFH Corp. and EFH Corp.'s direct and indirect subsidiaries listed on Exhibit C of the Restructuring Support Agreement; (ii) intercompany claims against EFH Corp. and EFH Corp.'s direct and indirect subsidiaries listed on Exhibit C of the Restructuring Support Agreement; and (iii) other priority claims against EFH Corp. and EFH Corp.'s direct and indirect subsidiaries listed on Exhibit C of the Restructuring Support Agreement;

- "*General Unsecured Claim Against EFIH*" is any unsecured claim against one or more of EFIH and EFIH Finance that is not otherwise paid in full pursuant to a separate order of the Bankruptcy Court, including the EFIH Toggle Notes, EFIH Unsecured Notes, and guaranty claims against EFIH arising on account of the EFH Corp. 10.875% Notes and EFH Corp. 2017 Toggle Notes, but excluding: (i) administrative claims against one or more of EFIH and EFIH Finance; (ii) intercompany claims against EFIH and EFIH Finance; and (iii) other priority claims against EFIH and EFIH Finance;

- "*Legacy Notes*" are, collectively, EFH Corp.'s 5.55% Series P Senior Notes due 2014, EFH Corp.'s 6.50% Series Q Senior Notes due 2024 and EFH Corp.'s 6.55% Series R Senior Notes due 2034;

- "*Oncor Holdings*" and "*Oncor*" are Oncor Electric Delivery Holdings Company LLC and Oncor Electric Delivery Company LLC, respectively, with or without their respective subsidiaries as indicated in context;

- "*Oncor Tax Sharing Agreement*" is that certain Federal and State Income Tax Allocation Agreement among EFH Corp., Oncor Holdings, Oncor and Texas Transmission;

- "*PUCT*" is the Public Utility Commission of Texas;

- "*Reorganized EFH Corp.*" is EFH Corp. as reorganized in connection with its emergence from bankruptcy;

- "*TCEH*" and "*TCEH Finance*" are Texas Competitive Electric Holdings Company LLC and TCEH Finance, Inc., respectively, and not any of their respective subsidiaries; and

- "*TCEH First Lien Claims*" has the meaning given to it in the Restructuring Support Agreement.

## NOTICE TO HOLDERS

Any Holder desiring to tender EFIH Second Lien Notes should either (a) complete and sign the Letter of Transmittal or a facsimile copy in accordance with the instructions therein, mail or deliver it and any other required documents to the Depositary Agent, and deliver the certificates for the tendered EFIH Second Lien Notes to the Depositary Agent (or transfer such EFIH Second Lien Notes pursuant to the book-entry transfer procedures described herein), (b) request the Holder's custodian to effect the transaction or (c) tender through DTC pursuant to its Automated Tender Offer Program ("ATOP"). By using the ATOP procedures to tender EFIH Second Lien Notes, you will not be required to deliver a validly executed Letter of Transmittal to the Depositary Agent. However, you will be bound by its terms just as if you had signed it. A Holder with EFIH Second Lien Notes held through a custodian must contact that custodian if such Holder desires to tender those EFIH Second Lien Notes and promptly instruct such custodian to tender such EFIH Second Lien Notes on its behalf. See "Procedures for Tendering EFIH Second Lien Notes." Please note that if EFIH Second Lien Notes are held by a custodian, the custodian may have an earlier deadline for tendering EFIH Second Lien Notes pursuant to the Offer than the Early Participation Date or Expiration Date, as applicable.

Neither the Dealer Managers nor Epiq Systems (as the "*Offer Agent*" or the "*Depositary Agent*") have authorized any other person to provide you with any information other than that contained or incorporated by reference in this Offer to Purchase. The Company does not take any responsibility for, and can provide no assurance as to the reliability of, any other information that others may give you. None of the Company, the Dealer Managers or the Offer Agent are making an offer to or purchase the EFIH Second Lien Notes in any jurisdiction where the offer or purchase is not permitted. You should assume the information appearing in this Offer to Purchase is accurate only as of the date on the front cover page hereof and any document incorporated by reference is accurate only as of the date of such document. The Company's business, financial condition, results of operations and prospects may have changed since that date.

This Offer to Purchase contains important information that should be read in its entirety before any decision is made with respect to the Offer.

This Offer to Purchase is based on information provided by the Company and other sources it believes to be reliable. None of the Dealer Managers, the Offer Agent, the Depositary Agent, the Trustee or the Collateral Trustee makes any representation or warranty that this information is accurate or complete, and none of them is responsible for this information. The Company has summarized portions of certain documents and other information

in a manner we believe to be accurate, but we refer you to the actual documents for a more complete understanding of what we discuss in this document. In making a decision whether or not to participate in the Offer, you must rely on your own examination of the Company's business and the terms of the Offer, as well as the EFIH Second Lien Notes, including the merits and risks involved.

Any questions regarding the terms of the Offer may be directed to the Dealer Managers or the Offer Agent. Requests for additional copies of documentation related to the Offer, requests for copies of the Indentures (as defined below) and any questions or requests for assistance in tendering may also be directed to the Offer Agent. Their contact information appears on the back cover page of this Offer to Purchase. Beneficial owners of EFIH Second Lien Notes may also contact their brokers, dealers, commercial banks or trust companies for assistance concerning the Offer.

No dealer, salesperson or other person has been authorized to give any information or to make any representation not contained in this Offer to Purchase and, if given or made, such information or representation may not be relied upon as having been authorized by the Company, the Dealer Managers, the Offer Agent, the Depositary Agent, the Trustee or the Collateral Trustee.

Subject to the approval of the Bankruptcy Court and the terms of the Restructuring Support Agreement, the Company expressly reserves the right, in its sole discretion, from time to time, to purchase any EFIH Second Lien Notes during or after the Offer through open market or privately negotiated transactions, through one or more additional tender or exchange offers or otherwise, in each case upon terms and conditions and at such prices as the Company may determine, which may be more or less than the price to be paid pursuant to the Offer and could be for cash or other consideration. See "Risk Factors—We may acquire EFIH Second Lien Notes during or after the Offer at prices in excess of the consideration offered in the Offer."

## FORWARD-LOOKING STATEMENTS

This Offer to Purchase may include "*forward-looking statements*" as that term is defined under the Private Securities Litigation Reform Act of 1995. Forward-looking statements include statements concerning the Company's bankruptcy case, plans, objectives, goals, strategies, future events, future revenue or performance, capital expenditures, liquidity, financing needs, business trends, and other information that is not historical information. When used in this Offer to Purchase, the words "*estimates*," "*expects*," "*anticipates*," "*projects*," "*plans*," "*intends*," "*believes*," "*predicts*," "*forecasts*," or future or conditional verbs, such as "*will*," "*should*," "*could*," or "*may*," and variations of such words or similar expressions are intended to identify forward-looking statements. All forward-looking statements, including, without limitation, management's examination of historical operating trends and data, are based upon the Company's expectations and various assumptions. Future events or results may differ from those anticipated or expressed in these forward-looking statements. Important factors that could cause actual events or results to differ materially from these forward-looking statements include, among others, the risks and uncertainties described herein and in more detail under "Risk Factors" contained elsewhere in this Offer to Purchase and in the sections captioned "Certain Considerations" and "Management's Discussion and Analysis of Financial Condition and Results of Operations" of our 2013 Form 10-K and our First Quarter 2014 Form 10-Q, which are incorporated into this Offer to Purchase by reference and those described in filings made by the Company with the Bankruptcy Court and in other filings the Company makes with the U.S. Securities and Exchange Commission ("*SEC*") from time to time, as well as the following:

- our ability to obtain the approval of the Bankruptcy Court with respect to motions filed in the bankruptcy proceedings, including with respect to the EFIH First Lien DIP Facility, the EFIH Second Lien DIP Notes Financing, the EFIH First Lien Settlement and the EFIH Second Lien Settlement;

- the effectiveness of the overall restructuring activities pursuant to the bankruptcy filing and any additional strategies we employ to address our liquidity and capital resources;

- the terms and conditions of any reorganization plan that is ultimately approved by the Bankruptcy Court in the bankruptcy proceedings;

- our ability to consummate, and remain in compliance with the requirements of, our debtor-in-possession financing facilities;

- our ability to maintain or obtain sufficient financing sources \to fund our reorganization plan and meet future obligations;

- the actions and decisions of creditors, regulators and other third parties that have an interest in the bankruptcy proceedings that may be inconsistent with our plans;

- the length of time that the Reorganizing Entities will be debtors-in-possession under the bankruptcy code pursuant to the bankruptcy proceedings;

- the actions and decisions of regulatory authorities relative to any reorganization plan;

- the outcome of litigation regarding whether note holders are entitled to makewhole premiums in connection with the treatment of their claims in bankruptcy, including with respect to any Non-Settling EFIH Second Lien Note Holders;

- our ability to satisfy any of the conditions to the closing of this Offer, the EFIH First Lien DIP Facility and the EFIH Second Lien DIP Notes Financing;

- prevailing governmental policies and regulatory actions, including those of the Texas Legislature, the Governor of Texas, the Congress of the United States of America ("*U.S.*"), the U.S. Federal Energy Regulatory Commission (the "*FERC*"), the North American Electric Reliability Corporation, the Texas Reliability Entity, Inc., the PUCT, the Electric Reliability Council of Texas ("*ERCOT*"), the U.S. Environmental Protection Agency (the "*EPA*") and the Texas Commission on Environmental Quality with respect to, among other things:

  - allowed rate of return;

  - permitted capital structure;

  - industry, market and rate structure;

  - recovery of investments;

  - acquisitions and disposals of assets and facilities;

  - operation and construction of facilities;

  - changes in tax laws and policies; and

  - changes in and compliance with environmental and safety laws and policies;

- legal and administrative proceedings and settlements;

- weather conditions and other natural phenomena, and acts of sabotage, wars or terrorist or cyber security threats or activities;

- economic conditions, including the impact of a recessionary environment;

- unanticipated population growth or decline, or changes in market demand and demographic patterns, particularly in ERCOT;

- unanticipated changes in interest rates or rates of inflation;

- unanticipated changes in operating expenses, liquidity needs and capital expenditures;

- inability of various counterparties to meet their financial obligations to us and/or our subsidiaries, including failure of counterparties to perform under agreements;

- general industry trends;

- hazards customary to the industry and the possibility that we and/or our subsidiaries may not have adequate insurance to cover losses resulting from such hazards;

- changes in technology used by and services offered by us and/or our subsidiaries;

- changes in assumptions used to estimate costs of providing employee benefits, including medical and dental benefits, pension and other postretirement employee benefits, and future funding requirements related thereto;

- significant changes in critical accounting policies material to us and/or our subsidiaries;

- commercial bank and financial market conditions, access to capital, the cost of such capital, and the results of financing and refinancing efforts by EFIH and/or its subsidiaries and affiliates, including availability of funds in the capital markets and the potential for disruptions in U.S. credit markets;

- circumstances which may contribute to impairment of goodwill, intangible or other long-lived assets;

- financial restrictions imposed by the agreements governing Oncor's and EFH Corp.'s debt instruments;

- our or our subsidiaries' ability to generate sufficient cash flow to make interest payments on our or their debt instruments; and

- actions by credit rating agencies.

Any forward-looking statement speaks only as of the date on which it is made, and except as may be required by law, we undertake no obligation to update any forward-looking statement to reflect events or circumstances after the date on which it is made or to reflect the occurrence of unanticipated events. New factors emerge from time to time, and it is not possible for us to predict all of them; nor can we assess the impact of each such factor or the extent to which any factor, or combination of factors, may cause results to differ materially from those contained in any forward-looking statement. As such, you should not unduly rely on such forward-looking statements.

## AVAILABLE INFORMATION

EFIH files annual, quarterly and current reports and other information with the SEC. EFIH's SEC filings are available to the public over the Internet at the SEC's website at http://www.sec.gov and on the Investor Relations section of EFH Corp.'s corporate website at http://www.energyfutureholdings.com. Information on EFH's website does not constitute part of this Offer to Purchase. You may inspect without charge any documents filed by EFIH at the SEC's Public Reference Room at 100 F Street, N.E., Washington, D.C. 20549. You may obtain copies of all or any part of these materials from the SEC upon the payment of certain fees prescribed by the SEC. Please call the SEC at 1-800-SEC-0330 for further information on the Public Reference Room.

Copies of the materials referred to in the preceding paragraph, as well as copies of any current amendment or supplement to the Offer, may also be obtained from the Offer Agent at its address set forth on the back cover of this Offer to Purchase.

Additionally, EFIH and its affiliates make certain filings with the Bankruptcy Court. Such filings are available at http://www.efhcaseinfo.com and by contacting the Offer Agent, and are incorporated by reference in this Offer to Purchase.

## DOCUMENTS INCORPORATED BY REFERENCE

We "incorporate by reference" into this Offer to Purchase documents EFIH files with (and in certain specific cases has furnished to) the SEC, which means that we can disclose important information to you by referring you to those documents. The information incorporated by reference is an important part of this Offer to Purchase. Some information contained in this Offer to Purchase updates the information incorporated by reference, and information that EFIH files subsequently with the SEC will automatically update this Offer to Purchase. In other words, in the case of a conflict or inconsistency between information set forth in this Offer to Purchase and information that EFIH files later and incorporates by reference into this Offer to Purchase, you should rely on the information contained in the document that was filed later.

We incorporate by reference the documents listed below and filed by EFIH, and any future filings made by EFIH with the SEC under Sections 13(a), 13(c), 14 or 15(d) of the Securities Exchange Act of 1934, as amended (the "*Exchange Act*"), until the Offer has been completed, other than any information contained in such filings that has been furnished, but not filed, with the SEC, including pursuant to Item 2.02 or Item 7.01 of Form 8-K and corresponding information furnished under Item 9.01 of Form 8-K or included as an exhibit:

- EFIH's Annual Report on Form 10-K for the year ended December 31, 2013 that it filed with the SEC on April 30, 2014, as amended on May 1, 2014; and

- EFIH's Quarterly Report on Form 10-Q for the quarterly period ended March 31, 2014 that it filed with the SEC on May 7, 2014.

Copies of these filings are available free of charge by writing to Energy Future Intermediate Holding Company LLC, Energy Plaza, 1601 Bryan Street, Dallas, TX 75201-3411, Attention: Investor Relations, or by telephoning us at 214-812-4600.

As noted above under "Available Information," we also incorporate by reference filings we make with the Bankruptcy Court.

The information incorporated by reference is an important part of this Offer to Purchase. We have not authorized anyone to provide you with information other than that contained in or incorporated by reference into this Offer to Purchase. You should not assume that the information in this Offer to Purchase is accurate as of any date other than the date of this Offer to Purchase.

You should not rely on or assume the accuracy of any representation or warranty in any agreement that we have filed as an exhibit to any document that we have publicly filed or that we may otherwise publicly file in the future because such representation or warranty may be subject to exceptions and qualifications contained in separate disclosure schedules, may have been included in such agreement for the purpose of allocating risk between the parties to the particular transaction, and may no longer continue to be true as of any given date.

## SUMMARY

*The following summary highlights selected information from this Offer to Purchase and may not contain all of the information that is important to you. It is qualified in its entirety by the more detailed information appearing elsewhere or incorporated by reference in this Offer to Purchase. Capitalized terms not otherwise defined in this summary have the meanings assigned to them elsewhere in this Offer to Purchase.*

## THE COMPANY

We are a Dallas, Texas-based holding company whose wholly-owned subsidiary, Oncor Holdings, holds a majority interest (approximately 80%) in Oncor.  The investment in Oncor represents substantially all of our reported consolidated net assets and earnings.  Oncor is engaged in regulated electricity transmission and distribution operations in Texas that are primarily regulated by the PUCT.  Oncor provides both transmission and distribution services to retail electric providers, including subsidiaries of TCEH, that sell electricity to consumers and transmission services to other electricity distribution companies, cooperatives and municipalities.  Oncor operates the largest transmission and distribution system in Texas, delivering electricity to more than 3.2 million homes and businesses and operating more than 120,000 miles of transmission and distribution lines.  A significant portion of Oncor's revenues represents fees for services provided to TCEH, which is engaged in competitive electricity market activities largely in Texas, including electricity generation, wholesale energy sales and purchases, commodity risk management and trading activities and retail electricity sales.  Revenues from TCEH represented 27% of Oncor's total reported consolidated revenues for the year ended December 31, 2013.

EFH Corp. and Oncor have implemented certain structural and operational "ring-fencing" measures based on commitments made by Texas Energy Future Holdings Limited Partnership ("*Texas Holdings*") and Oncor to the PUCT to further enhance the credit quality of Oncor Holdings and Oncor and mitigate Oncor's and Oncor Holdings' credit exposure to Texas Holdings and its other subsidiaries, including EFIH (collectively, the "*Texas Holdings Group*"), with the intent to minimize the risk that a court (including the Bankruptcy Court) would order any of the assets and liabilities of Oncor or Oncor Holdings to be substantively consolidated with the assets and liabilities of any member of the Texas Holdings Group (including EFIH and EFIH Finance) in the event any such member were to become a debtor in a bankruptcy case.  We believe, as several major credit rating agencies have acknowledged, that the likelihood of such substantive consolidation of Oncor's or Oncor Holdings' assets and liabilities is remote in consideration of the ring-fencing measures and applicable law.

We have no employees.  At December 31, 2013, Oncor had approximately 3,420 full-time employees, including approximately 690 employees under collective bargaining agreements.

## RECENT DEVELOPMENTS

**Bankruptcy and Restructuring Plan**

On April, 29, 2014, EFH Corp. and the substantial majority of its direct and indirect subsidiaries, including the Issuer but excluding Oncor Holdings and its subsidiaries, filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code in the Bankruptcy Court and are operating their businesses and managing their property as debtors-in-possession pursuant to the Bankruptcy Code.

On April 29, 2014, the Reorganizing Entities, certain of their secured and unsecured creditors and holders of EFH Corp. Interests entered into the Restructuring Support Agreement in order to effect an agreed upon restructuring of the Reorganizing Entities through a prenegotiated Chapter 11 Plan (the "*Restructuring Plan*").  In addition to the Offer contemplated by this Offer to Purchase, the Restructuring Plan includes, among others, the transactions described below.

**The summaries contained in this section and elsewhere in this Offer to Purchase assume that all parts of the Restructuring Plan are approved and implemented as currently proposed.  There can be no assurance that all or any part of the Restructuring Plan will in fact be approved in the form currently proposed, in the timeframe currently expected, or at all.**

**EFIH First Lien Settlement and Related Exchange Offer**

Pursuant to the Restructuring Support Agreement, certain holders of EFIH First Lien Notes (the "*RSA EFIH First Lien Note Parties*") have agreed to a voluntary settlement with respect to the Issuer's obligations under the EFIH First Lien Notes held by the RSA EFIH First Lien Note Parties (such settlement, the "*EFIH First Lien RSA Settlement*"). Pursuant to such settlement, each RSA EFIH First Lien Note Party has agreed to accept as payment in full of any claims arising out of the EFIH First Lien Notes held by such RSA EFIH First Lien Note Party a principal amount of loans under the EFIH First Lien DIP Facility equal to the greater of:

(a) 105% of the principal amount on the EFIH First Lien Notes plus 101% of the accrued and unpaid interest through the closing date of the EFIH First Lien DIP Facility at the non-default rate on such principal (which amount will be deemed to include any original issue price discount on the EFIH First Lien DIP Loans); and

(b) 104% of the principal amount of, plus accrued and unpaid interest at the non-default rate on the EFIH First Lien Notes through the closing date of the EFIH First Lien DIP Facility as adjusted by the original issue price discount paid on the EFIH First Lien DIP Loans in connection with the initial lenders' syndication of the EFIH First Lien DIP Facility.

No RSA EFIH First Lien Note Party will receive any other fees, including commitment fees, paid in respect of the EFIH First Lien DIP Facility on account of their EFIH First Lien Notes, although they may receive other consideration in connection with other transactions contemplated by the Restructuring Support Agreement as further described herein.

On May 6, 2014, the Issuer commenced an offer (the "*EFIH First Lien Exchange Offer*") to holders of the EFIH First Lien Notes to voluntarily settle the Issuer's obligations under the EFIH First Lien Notes held by such holders (the "*EFIH First Lien Non-RSA Settlement,*" and together with the EFIH First Lien RSA Settlement, the "*EFIH First Lien Settlement*").  Pursuant to the terms of the EFIH First Lien Exchange Offer, each holder of EFIH First Lien Notes that validly tenders its EFIH First Lien Notes prior to 5:00 p.m., New York City time, on May 19, 2014, unless extended by the Issuer in its sole discretion, will be eligible to receive on the closing date of the EFIH First Lien Exchange Offer as payment in full of any claims arising out of its EFIH First Lien Notes, for each $1,000 principal amount of EFIH First Lien Notes validly tendered, $1,050.00 in aggregate principal amount of EFIH first lien term loans (the "*EFIH First Lien DIP Loans*") under a new senior secured super-priority debtor-in-possession credit agreement (the "*EFIH First Lien DIP Facility*") (the "*Total Exchange Offer Consideration*"). The Total Exchange Offer Consideration includes an early participation payment of $17.50 in an aggregate principal amount of EFIH First Lien DIP Loans per $1,000 principal amount of EFIH First Lien Notes validly tendered on or prior to the early participation date noted above.

Holders that validly tender their EFIH First Lien Notes after the early participation date and prior to the expiration date of the EFIH First Lien Exchange Offer will be eligible to receive on the closing date of the EFIH First Lien Exchange Offer an amount of EFIH First Lien DIP Loans equal to the Total Exchange Offer Consideration less the early participation exchange consideration as set forth above per $1,000 principal amount of EFIH First Lien Notes.  The Company will also pay through the issuance of additional EFIH First Lien DIP Loans in an aggregate principal amount equal to 101% of the amount of all accrued and unpaid interest at the non-default rate up to, but not including, the closing date of the EFIH First Exchange Offer on the EFIH First Lien Notes that are accepted for exchange in the EFIH First Lien Exchange Offer.  The offer period for the EFIH First Lien Exchange Offer will expire at 5:00 p.m., New York City time, on June 6, 2014 unless extended or earlier terminated by the Issuer in its sole discretion. The Issuer does not intend to permit the offer period for the EFIH First Lien Exchange Offer to expire prior to the date the EFIH First Lien Settlement is heard, and approved, by the Bankruptcy Court.

The consummation of the EFIH First Lien Exchange Offer is subject to several conditions, including, among others, the closing of the EFIH First Lien DIP Facility, which is also subject to several conditions. The EFIH First Lien Exchange Offer will not be consummated unless, among other things, the Bankruptcy Court approves the EFIH First Lien DIP Facility and the EFIH First Lien Settlement.

The Restructuring Support Agreement requires the Company to use commercially reasonable best efforts to obtain entry of a final order approving the First Lien DIP Facility on or before the 45th day after the Petition Date and to obtain the final approval by the Bankruptcy Court of the Company's incurrence of indebtedness, and granting of superpriority priming liens, under the EFIH First Lien DIP Facility and the EFIH First Lien Settlement and to consummate the EFIH First Lien Exchange Offer on or before the 75th day after the Petition Date, which day is July 13, 2014.

In connection with the EFIH First Lien Exchange Offer, the Reorganizing Entities expect to initiate litigation to obtain entry of an order from the Bankruptcy Court:  (i) disallowing the claims of holders of EFIH First Lien Notes that are not RSA EFIH First Lien Note Parties or do not participate in the EFIH First Lien Exchange Offer and thereby become a party to the EFIH First Lien Settlement (such holders, the "*Non-Settling EFIH First Lien Note Holders*") derived from or based upon makewhole or other similar payment provisions under the EFIH First Lien Notes (such claims, the "*EFIH First Lien Makewhole Claims*"); and (ii) providing that, upon the closing of the EFIH First Lien DIP Facility, Non-Settling EFIH First Lien Note Holders will receive from the proceeds of such facility only cash in an amount equal to the principal plus accrued and unpaid interest up to but not including the closing date of the EFIH First Lien DIP Facility, at the non-default rate of such holder's allowed EFIH First Lien Note Claim (as defined in the Restructuring Support Agreement) (not including any premiums, settlements, fees, or claims relating to the repayment of the EFIH First Lien Notes held by the Non-Settling EFIH First Lien Note Holders).  Any other EFIH First Lien Note Claims of such Non-Settling EFIH First Lien Note Holders, if any, allowed by the Bankruptcy Court arising out of the EFIH First Lien Notes will receive their pro rata share of cash in the amount of such claims on the effective date of the Restructuring Plan or such other treatment (which may include new debt) as permitted under section 1129(b) of the Bankruptcy Code, as mutually agreed by EFIH and the Required EFIH Unsecured Consenting Creditors.

**EFIH First Lien DIP Facility**

Pursuant to the First Lien Commitment Letter, dated April 28, 2014, the initial lenders thereto committed to provide the Company funding for the EFIH First Lien DIP Facility in an aggregate principal amount of $5.4 billion. As a result of the RSA EFIH First Lien Note Parties and RSA EFIH Second Lien Note Parties agreeing to exchange their EFIH First Lien Notes and/or EFIH Second Lien Notes, as applicable, and to provide certain backstop commitments (as described below) under and pursuant to the terms of the Restructuring Support Agreement, that commitment amount has been significantly reduced.  As of May 6, 2014, the initial lenders' commitment amount under the EFIH First Lien DIP Facility has been reduced from $5.4 billion to $1.85 billion. In addition, the commitment would be further reduced by an amount of EFIH First Lien DIP Loans required to pay for any EFIH First Lien Notes exchanged in the EFIH First Lien Exchange Offer. Any such reduction in commitments that occurs on or before the EFIH First Lien Exchange Offer early participation date referenced above will reduce the fees earned by the commitment parties under the First Lien Commitment Letter.  In no event will the aggregate amount of EFIH First Lien DIP Loans exceed $5.4 billion.

Certain RSA EFIH First Lien Notes Parties have provided backstop commitments to the EFIH First Lien DIP Facility in the amount of $1.7 billion.  Receipt of proceeds of such commitments is subject to the satisfaction or waiver of the conditions precedent of the EFIH First Lien DIP Facility, including the rights of a significant backstop commitment party to approve certain matters and the payment of backstop commitment fees to such significant holders in a range of 1.00% to 1.75% of their respective backstop commitment.   A certain backstop party will provide a $50 million commitment on the terms set forth in the EFIH First Lien DIP Facility, including original issue discount, but not including commitment fees.

At the closing date of the EFIH First Lien Exchange Offer, EFIH and EFIH Finance will enter into the EFIH First Lien DIP Facility with Deutsche Bank AG New York Branch, acting as administrative agent.  Proceeds of the EFIH First Lien DIP Facility will be used (together with cash on hand) to repay all outstanding principal plus accrued and unpaid interest at the non-default rate due and owing under the EFIH First Lien Notes (which will not include any alleged premiums, fees or claims relating to the repayment of such claims) to Non-Settling EFIH First Lien Note Holders.

**EFIH Second Lien DIP Notes Financing**

The Restructuring Support Agreement also contemplates that the Issuer will offer (the "*EFIH Second Lien DIP Notes Offer*") holders of EFIH Unsecured Notes and EFH Corp. 10.875% Notes and EFH Corp. 2017 Toggle Notes, the right to purchase up to their "pro rata percentage" of $1.73 billion in accordance with the Restructuring Support Agreement, in aggregate principal amount of 8% Convertible Second Lien Subordinated Secured DIP Financing Tranche A-1 Notes due 2016 (the "*EFIH Second Lien DIP Tranche A-1 Notes*") of the $1.9 billion EFIH Second Lien DIP Notes Financing.  Each holder's "pro rata percentage" is the amount, expressed as a percentage, equal to (i) the aggregate amount of EFIH Unsecured Notes, EFH Corp. 10.875% Notes and EFH Corp. 2017 Toggle Notes held by such holder divided by (ii) the aggregate amount of EFIH Unsecured Notes, EFH Corp. 10.875% Notes and EFH Corp. 2017 Toggle Notes outstanding.  Concurrently with the EFIH Second Lien DIP Notes Offer, the Issuer is offering (the "*concurrent offering*") to a Consenting Creditor (as defined below) (that is also a RSA EFIH Second Lien Note Party) the right to purchase up to $171.0 million aggregate principal amount of 8% Convertible Second Lien Subordinated Secured DIP Financing Tranche A-3 Notes due 2016 (the "*EFIH Second Lien DIP Tranche A-3 Notes*").  If such party elects to participate in the concurrent offering, EFIH will pay such party $11.25 million upon the closing of the EFIH Second Lien DIP Notes Financing.

The closing of the EFIH Second Lien DIP Notes Offer and the concurrent offering, as well as the satisfaction of any note purchase obligations of the Backstop Parties (as defined below) under the Backstop Commitment Letter (as defined below) is collectively referred to herein as the "*EFIH Second Lien DIP Notes Financing*."  Consummation of the Offer as set forth in this Offer to Purchase is expressly contingent upon, among other things, the consummation by the Company of the EFIH Second Lien DIP Notes Financing. See "Conditions to the Consummation of the Offer."

This Offer to Purchase is not an offer to sell and is not soliciting any offers to buy the Company's debt securities in connection with the EFIH Second Lien DIP Notes Financing or otherwise. Any offering of debt securities by the Company will be made only by means of a separate offering memorandum.

**EFIH Second Lien DIP Notes Backstop Commitment**

Certain holders of the EFIH Unsecured Notes (the "*Backstop Parties*") have entered into a commitment letter with EFIH, dated April 29, 2014 (the "*Backstop Commitment Letter*"), pursuant to which, and upon solely the terms and express conditions contained therein, such holders have committed, severally and not jointly, up to $1.9 billion in available funds (the "*Backstop Commitment*") to purchase notes not sold in the EFIH Second Lien DIP Notes Offer and the concurrent offering (the "*unpurchased notes*") pro rata in proportion to their respective share of the Backstop Commitment (such notes, the 8% Convertible Second Lien Subordinated Secured DIP Financing Tranche A-2 Notes due 2016 (the "*EFIH Second Lien DIP Tranche A-2 Notes*")). If any Backstop Party fails to satisfy its obligation to purchase its pro rata share of the unpurchased notes, then the other Backstop Parties would have the right, but not the obligation, to purchase such unpurchased notes.

Under the Backstop Commitment Letter and in consideration of the Backstop Commitment, EFIH agreed to pay the Backstop Parties a commitment fee consisting of (i) a $8.75 million execution fee that was paid to the initial Backstop Parties concurrently with the execution of the Commitment Letter, (ii) a $10.25 million approval fee to be paid to the initial Backstop Parties within five days of the issuance of an order by the Bankruptcy Court authorizing the EFIH First Lien Settlement, the EFIH Second Lien Settlement, and the performance by EFH Corp. and EFIH under the Backstop Commitment Letter, (iii) a $2.0 million arranger fee to be paid to certain Backstop Parties within five days of entry of an order of the Bankruptcy Court approving the Company's incurrence of the EFIH Second Lien DIP Notes Financing, (iv) a $19 million funding fee to be paid to the Backstop Parties concurrently with the consummation of the EFIH Second Lien DIP Notes Offer and (v) a fee equal to $95 million in the form of Non-Interest Bearing Convertible Second Lien Subordinated Secured DIP Financing Tranche B Notes due 2016 to be paid to the Backstop Parties (the "*EFIH Second Lien DIP Tranche B Notes*" and, together with the EFIH Second Lien DIP Tranche A-1 Notes, the EFIH Second Lien DIP Tranche A-2 Notes and the EFIH Second Lien DIP Tranche A-3 Notes, the "*EFIH Second Lien DIP Notes*").

In the event EFIH seeks to consummate an alternative transaction that delivers equal or greater value to EFIH than the transactions contemplated in the Restructuring Support Agreement, EFIH shall pay the Backstop

Parties a break-up fee of $57 million.  In the event the EFIH Second Lien DIP Notes are repaid in cash prior to the effective date of the Chapter 11 Plan (the "*Effective Date*"), without the written consent of at least three or more investment advisors that manage and/or advise funds or discretionary accounts holding at least 50.1% of the EFIH Second Lien DIP Notes (or, in the case of the EFIH Second Lien DIP Tranche A-3 Notes, holders of at least 50.1% of the EFIH Second Lien DIP Tranche A-3 Notes) the holders of EFIH Second Lien DIP Notes will receive their pro rata share of a termination fee of $380 million, which shall be paid by EFIH.

**Equity Conversion of Certain Unsecured Notes and Equity Interests**

On the Effective Date, it is expected that all of the EFIH Unsecured Notes, the EFH Corp. Unsecured Notes and the EFH Corp. Interests will be canceled.  In full satisfaction of the General Unsecured Claims Against EFIH, the General Unsecured Claims Against EFH and the EFH Corp. Interests, it is expected that, (i) each holder of a General Unsecured Claim Against EFIH will receive its pro rata share (calculated as the aggregate principal amount of General Unsecured Claims Against EFIH held by such holder divided by the total outstanding General Unsecured Claims Against EFIH) of 98.0% of the shares of common stock of Reorganized EFH Corp. (subject to dilution by the Second Lien Equity Conversion as described below), (ii) each holder of a General Unsecured Claim Against EFH Corp. will receive its pro rata share (calculated as the aggregate principal amount of General Unsecured Claims Against EFH Corp. held by such holder divided by the total outstanding aggregate principal amount of General Unsecured Claims Against EFH Corp.) of (a) rights to participate in up to 9% of the Second Lien Equity Conversion in accordance with the Restructuring Support Agreement and (b) 1.0% of the shares of common stock of Reorganized EFH Corp. (subject to dilution by the Second Lien Equity Conversion), and (iii) each holder of EFH Corp. Interests will receive its pro rata share (calculated as the number of shares of EFH Corp. common stock held by such holder divided by the total outstanding shares of EFH Corp. common stock) of 1.0% of the shares of common stock of Reorganized EFH Corp. (subject to dilution by the Second Lien Equity Conversion).

Holders of General Unsecured Claims Against EFH Corp. are also expected to receive on the Effective Date their pro rata share of either (A) if the Oncor TSA Amendment (described below) has been approved, (1) $55 million in cash from EFIH, provided, however, that if the Oncor tax payments received by EFIH under the Oncor TSA Amendment through the Effective Date are less than 80% of projected amounts, the $55 million payment will be reduced on a dollar for dollar basis by the amount of such shortfall, from such projected amounts, and (2) cash on hand at EFH Corp. (not including the settlement payment in clause (1) hereof); or (B) if the Oncor TSA Amendment has not been approved, all assets of EFH Corp., including cash on hand and causes of action, but excluding equity interests in EFIH and general unsecured claims of EFIH against EFH Corp., which will not be released in such circumstances and, subject to all rights and defenses of EFH Corp. as to whether EFIH's general unsecured claims against EFH Corp. are allowed claims, will receive their pro rata recovery with General Unsecured Claims Against EFH Corp.

**EFIH Second Lien DIP Notes Equity Conversion**

Under the Restructuring Plan, on the Effective Date the EFIH Second Lien DIP Notes will, subject to certain conditions, automatically convert into approximately 64% of the shares of common stock of Reorganized EFH Corp. (the "*Second Lien Equity Conversion*"), subject to adjustment based on the principal amount of the EFIH Second Lien DIP Notes Financing.

**Oncor TSA Amendment**

The Restructuring Support Agreement provides that the Reorganizing Entities will request authority from the Bankruptcy Court to amend, or otherwise assign the right to payments under, the Oncor Tax Sharing Agreement (the "*Oncor TSA Amendment*") to provide that any payment required to be made to EFH Corp. under the Oncor TSA Amendment after March 31, 2014, will instead be made to EFIH.  Any tax payments received by EFH Corp. before the Bankruptcy Court enters or denies an order authorizing the Oncor TSA Amendment will be deposited by EFH Corp. into a segregated account until the earlier of (i) the date the Bankruptcy Court enters the order authorizing the Oncor TSA Amendment, in which case, such amounts will be remitted to EFIH or (ii) the date the Bankruptcy Court denies authorization of the Oncor TSA Amendment, in which case, such amounts will be remitted to EFH Corp.

The Oncor TSA Amendment will automatically terminate and be of no further force and effect in the event that the Backstop Commitment Letter is validly terminated by the Backstop Parties; provided, however, that any amounts that were paid to EFIH in accordance with the Oncor TSA Amendment before its termination will be retained by EFIH if the Backstop Commitment Letter or the EFIH Second Lien DIP Notes Financing is terminated or is not fully funded in accordance with its terms (i.e., except as a result of a breach by the Backstop Parties). Neither EFH Corp. nor EFIH will have the right to terminate or modify the Oncor TSA Amendment during the Chapter 11 cases if the EFIH Second Lien DIP Notes Financing is consummated.

If the Bankruptcy Court does not approve the Oncor TSA Amendment within 90 days after the commencement of the Chapter 11 cases, or July 28, 2014, the interest rate on the EFIH Second Lien DIP Tranche A Notes (as defined herein) will increase by 4.0%, with such additional interest to be paid in kind and compounded quarterly until such approval is received from the Bankruptcy Court.  If the Bankruptcy Court does not approve the Oncor TSA Amendment by April 29, 2015, each holder of EFIH Second Lien DIP Notes will receive its pro rata share of additional EFIH Second Lien DIP Notes equal to 10.0% of the then outstanding EFIH Second Lien DIP Notes.

The collateral securing the EFIH First Lien DIP Facility and the EFIH Second Lien DIP Notes will include proceeds of payments under the Oncor TSA Amendment, as long as the Oncor TSA Amendment remains in effect.

**Private Letter Ruling**

The Restructuring Support Agreement provides that EFH Corp. will file a request with the Internal Revenue Service (the "*IRS*") for a private letter ruling ("*Private Letter Ruling*") that, among other things, will provide (a) that (i) the transfer by TCEH of all of its assets and its ordinary course operating liabilities to Reorganized TCEH (as defined below), (ii) the transfer by the Reorganizing Entities to Reorganized TCEH of certain operating assets and liabilities that are reasonably necessary to the operation of Reorganized TCEH and (iii) the distribution by TCEH of (A) the equity it holds in Reorganized TCEH and (B) the cash proceeds TCEH receives from Reorganized TCEH to the holders of TCEH First Lien Claims will qualify  as a "reorganization" within the meaning of Sections 368(a)(1)(G) , 355 and 356 of the Internal Revenue Code of 1986, as amended (the "*Code*"), and (b) for certain other rulings under Sections 368(a)(1)(G) and 355 of the Code.

**Conditions Precedent to Restructuring Transactions**

The Restructuring Support Agreement provides that the consummation of the Reorganizing Entities' proposed financial restructuring (the "*Restructuring Transactions*") is subject to the satisfaction or waiver (if applicable) of various conditions, including, among other things:

- the consummation of the debtor-in-possession financing transactions and settlements described above;

- holders of certain EFH Non-Guaranteed Notes will have received not less than 37.15% in value for their respective claims under the plan of reorganization;

- immediately following the distribution by TCEH described above under the heading "Private Letter Ruling," the aggregate tax basis, for federal income tax purposes, of the assets held by Reorganized TCEH will be equal to a specified minimum amount of aggregate tax basis, and the step-up in aggregate tax basis will be no less than $2.1 billion;

- the receipt of requisite regulatory approvals;

- the receipt of the Private Letter Ruling; and

- the receipt of requisite orders from the Bankruptcy Court.

6

## ORGANIZATIONAL STRUCTURE

**Current Structure**

The chart below is a summary of EFH Corp.'s organizational and ownership structure as of the date of this Information Memorandum and illustrates EFH Corp.'s and its major subsidiaries' (other than Oncor and its subsidiaries) long-term debt, after giving effect to the funding under the EFIH First Lien DIP Facility and the EFIH Second Lien DIP Notes Financing and the use of proceeds therefrom. The chart below excludes finance subsidiaries and subsidiaries of EFH Corp. that are not subsidiaries of EFIH or EFCH.



_____

(1) Under the Restructuring Plan, it is expected that on the Effective Date the EFH Corp. Unsecured Notes (including the Legacy Notes) (subject to Note (2) below) will be cancelled and each holder, as a holder of General Unsecured Claims Against EFH Corp., will receive its pro rata share (calculated as the aggregate principal amount of General Unsecured Claims Against EFH Corp. held by such holder divided by the total amount of General Unsecured Claims Against EFH Corp.) of 1.0% of the shares of common stock of Reorganized EFH Corp. (subject to dilution by the Second Lien Equity Conversion). General Unsecured

Claims Against EFH Corp. may participate in their pro rata share of up to 9% of the Second Lien Equity Conversion in accordance with the Restructuring Support Agreement.

(2)    Excludes $1.282 billion principal amount of Legacy Notes held by EFIH.  The Legacy Notes held by EFIH are expected to be canceled on the Effective Date (if the Oncor TSA Amendment is approved) and it is expected that EFIH will receive no consideration in connection with such cancellation.

(3)    None of EFH Corp., EFIH's subsidiaries (including Oncor), or EFCH or its subsidiaries will guarantee, and none of them (other than EFIH Finance) will otherwise be liable for, the EFIH Second Lien DIP Notes.

(4)    Under the Restructuring Plan, pursuant to the Second Lien Equity Conversion, it is expected that on the Effective Date the EFIH Second Lien DIP Notes issued under the EFIH Second Lien DIP Notes Financing will, subject to certain conditions, automatically convert into approximately 64% of the shares of common stock of Reorganized EFH Corp. subject to adjustment based on the principal amount of the EFIH Second Lien DIP Notes Financing.

(5)    Under the Restructuring Plan, it is expected that on the Effective Date, Holders of General Unsecured Claims Against EFIH will receive their pro rata share (calculated as the aggregate principal amount of General Unsecured Claims Against EFIH held by such holder divided by the total amount of General Unsecured Claims Against EFIH) of 98.0% of the shares of common stock of Reorganized EFH Corp. (subject to dilution by the Second Lien Equity Conversion).

(6)    EFIH Finance Inc., a wholly owned subsidiary of EFIH not shown on this chart, is the co-issuer (or co-borrower, as applicable) of the EFIH First Lien Notes, the EFIH Second Lien Notes, the EFIH First Lien DIP Facility and the EFIH Second Lien DIP Notes.

(7)    Oncor Electric Delivery Holdings Company LLC and Oncor Electric Delivery Company LLC (the "*Oncor Ring-Fenced Entities*") will not be guarantors or restricted subsidiaries under the EFIH First Lien DIP Facility or the EFIH Second Lien DIP Notes and will not be subject to covenants and events of default thereunder.

**Post-Reorganizational Structure**

On the Effective Date, pursuant to the Restructuring Support Agreement and in connection with the confirmation of the Chapter 11 Plan, it is expected that the outstanding equity of a newly formed subsidiary that contains the assets and liabilities of  TCEH ("*Reorganized TCEH*") will be distributed to holders of TCEH's outstanding senior first lien secured indebtedness, and EFH Corp. will cease to own an indirect interest in the assets and liabilities of TCEH and any of TCEH's direct or indirect subsidiaries. See "Risk Factors—As a result of the Chapter 11 cases, EFIH's historical financial information will not be indicative of its future financial performance."

The chart below is a summary of EFH Corp.'s expected organizational and ownership structure as of the Effective Date as contemplated by the Restructuring Plan.



_____

(1)  Under the Restructuring Plan, it is expected that on the Effective Date in full satisfaction of the claims under the EFIH Unsecured Notes, the EFH Corp. Unsecured Notes and the EFH Corp. Interests, (i) each holder of General Unsecured Claims Against EFIH, including each holder of EFIH Unsecured Notes, will receive its pro rata share of 98.0% of the shares of common stock of Reorganized EFH Corp. (subject to dilution by the Second Lien Equity Conversion), (ii) each holder of General Unsecured Claims Against EFH Corp., including each holder of EFH Corp. Unsecured Notes, will receive its pro rata share of 1.0% of the equity interests of Reorganized EFH Corp. (subject to dilution by the Second Lien Equity Conversion) and (iii) each holder of EFH Corp. Interests will receive its pro rata share of 1.0% of the equity interests of Reorganized EFH Corp. (subject to dilution by the Second Lien Equity Conversion).  Pursuant to the Second Lien Equity Conversion, it is expected that on the Effective Date the EFIH Second Lien DIP Notes will, subject to certain conditions, automatically convert on a pro rata basis into approximately 64% of the equity interests of Reorganized EFH Corp. subject to adjustment based on the principal amount of the EFIH Second Lien DIP Notes Financing.

(2)  In connection with an exit from bankruptcy, it is expected that EFIH will require a new credit facility, or "exit financing."  EFIH's ability to obtain such financing will depend on, among other things, the timing and outcome of various ongoing matters in the Chapter 11 cases.

(3)  Following the Effective Date, we expect that Oncor Holdings' and Oncor's boards of directors will continue to be comprised of a majority of directors that are independent from EFH Corp. and its subsidiaries, including EFIH.  It is expected that the Oncor Ring-Fenced Entities will continue to be restricted from guaranteeing or pledging any of their assets to secure the debt of EFH Corp. or its subsidiaries, including EFIH.  In addition, it is expected that there will continue to be restrictions on the payment of distributions from Oncor Holdings to EFIH, and the independent members of Oncor's board of directors and the largest non-majority member of Oncor will continue to be entitled to block the payment of certain distributions to Oncor Holdings.

**ADDITIONAL INFORMATION**

    EFIH was formed in Delaware in 2007 and EFIH Finance was incorporated in Delaware in 2009.  Our principal executive offices are located at Energy Plaza, 1601 Bryan Street, Dallas, TX 75201 3411.  The telephone number of our principal executive offices is (214) 812 4600.  Our website is http://www.energyfutureholdings.com/efih.  Information on or connected to our website does not constitute part of this Offer to Purchase.

# SUMMARY OF THE OFFER

*The following summary is provided solely for convenience and is qualified in its entirety by reference to, and should be read in conjunction with, the information appearing elsewhere or incorporated by reference in this Offer to Purchase. Each undefined capitalized term used in this "Summary of the Offer" has the meaning set forth elsewhere in this Offer to Purchase. You are urged to read this Offer to Purchase in its entirety.  For more information regarding the terms of the Offer, see "The Offer."*

Offerors ...................................................... The Offerors are EFIH and EFIH Finance.

EFIH Second Lien Notes ....................................... The EFIH Second Lien Notes subject to the Offer are listed in the table below:

| Issuer | CUSIP Number(s) | Title of Security | Aggregate Principal Amount Outstanding |
|---|---|---|---|
| EFIH; EFIH Finance | 29269QAB3 | 11% Senior Secured Second Lien Notes due 2021 | $406,392,000 |
| EFIH; EFIH Finance | 29269QAD9 U29197AB3 | 11.750% Senior Secured Second Lien Notes due 2022 | $1,750,000,000 |

EFIH 11% Second Lien Notes ............................... EFIH and EFIH Finance have issued and sold $406,392,000 in aggregate principal amount of the EFIH 11% Second Lien Notes under that certain Indenture, dated as of April 25, 2011, among EFIH, EFIH Finance and Computershare Trust Company, N.A. and Computershare Trust Company of Canada (as successor trustee to The Bank of New York Mellon Trust Company, N.A.) (the "*2021 Indenture*").

EFIH 11.750% Second Lien Notes ........................ EFIH and EFIH Finance have issued and sold $1,750,000,000 in aggregate principal amount of EFIH 11.750% Second Lien Notes under that certain Indenture, dated as of February 6, 2012, among Energy Future Intermediate Holding Company LLC, EFIH Finance Inc. and Computershare Trust Company, N.A. and Computershare Trust Company of Canada (as successor trustee to The Bank of New York Mellon Trust Company, N.A.) (as supplemented, the "*2022 Indenture*" and together with the 2021 Indenture, the "*Indentures*").

The Offer ............................................................ The Company is offering to purchase for cash, upon the terms and subject to the conditions set forth in this Offer to Purchase, any and all outstanding EFIH Second Lien Notes validly tendered on or prior to the Expiration Date.  Each Participating Holder is required to tender all of its EFIH Second Lien Notes in the Offer.  No partial tender of a Participating Holder's EFIH Second Lien Notes will be valid.  No Holder is required to participate in the Offer and any Holder's participation in the Offer is voluntary.  The Offer is not conditioned on Holders of any minimum principal amount of EFIH Second Lien Notes participating in the Offer.  Subject to applicable law, the Offer is being made separately for each series of EFIH Second Lien Notes and, subject to applicable law, the Company reserves the right to terminate, withdraw or amend the Offer with respect to either series of EFIH Second Lien Notes independently from the

other series.

Each Holder should read the discussion in the section entitled "The Offer" for further information regarding the Offer.

Withdrawal Rights..................................................    Tenders of EFIH Second Lien Notes may not be withdrawn, except in certain limited circumstances where withdrawal rights are required by law.  If the Company determines to offer withdrawal rights in accordance with applicable law, including in the event a material change causes the Company to update the information relating to this Offer and extend the Expiration Date, any such withdrawal rights will be limited as set forth in any notice thereof by the Company.

Early Participation Date.........................................    The Early Participation Date will be 5:00 p.m., New York City time, on May 23, 2014, unless extended by the Company in its sole discretion.  An announcement of an extension of the Early Participation Date will be made no later than 9:00 a.m., New York City time, on the next business day following the previously scheduled Early Participation Date.  Holders who wish to participate in the Offer and receive the Total Consideration must validly tender their EFIH Second Lien Notes on or prior to the Early Participation Date.

Expiration Date.......................................................    The Offer will expire at 11:59 p.m., New York City time, on June 6, 2014, unless extended or earlier terminated by the Company in its sole discretion. An announcement of an extension of the Offer will be made no later than 9:00 a.m., New York City time, on the next business day following the previously scheduled Expiration Date.

Acceptance Date .....................................................    Subject to the terms and conditions of the Offer, the Company intends to accept for purchase all EFIH Second Lien Notes validly tendered promptly following the Expiration Date.

Settlement Date ......................................................    The Settlement Date will be a date on or promptly following the Acceptance Date on which the Company pays the Total Consideration and/or Tender Consideration, as applicable, together with Accrued Interest, and purchases the EFIH Second Lien Notes that are validly tendered on or prior to the Expiration Date.

Total Consideration .............................................    Holders who validly tender their EFIH Second Lien Notes on or prior to the Early Participation Date will be eligible to receive an amount, paid in cash, equal to $1,123.22 for each $1,000 principal amount of 11% Second Lien Notes and $1,166.22 for each $1,000 principal amount of 11.750% Second Lien Notes tendered based on the assumed Settlement Date of June 11, 2014, which amounts will each be **decreased** by $0.14 for each day after June 11, 2014 that the Settlement Date occurs.  See "The Offer—Offer Consideration."

| | |
|---|---|
| Early Participation Consideration....................... | The Early Participation Consideration will only be paid as part of the Total Consideration and will be a portion thereof equal to $50.00 per $1,000 principal amount of EFIH Second Lien Notes tendered in the Offer on or prior to the Early Participation Date. |
| Tender Consideration ......................................... | Holders who validly tender their EFIH Second Lien Notes after the Early Participation Date and on or prior to the Expiration Date will be eligible to receive an amount, paid in cash, equal to the Total Consideration less the Early Participation Consideration per $1,000 principal amount of EFIH Second Lien Notes. |
| Accrued and Unpaid Interest .............................. | The Company will also pay the Accrued Interest, which will be an amount equal to any and all accrued and unpaid interest up to, but not including, the Settlement Date at the rate of 11% with respect to the 11% Second Lien Notes and 12.25% with respect to the 11.750% Second Lien Notes that are accepted for purchase in the Offer.  Such Accrued Interest will include additional interest payable under the registration rights agreement with respect to the 11.750% Second Lien Notes, but will not include interest on overdue interest following a default in the payment of interest on an interest payment date. |
| Sources of Funds ................................................ | The consideration payable for tendered EFIH Second Lien Notes and the costs and expenses of the Offer are expected to be paid with the net proceeds of the EFIH Second Lien DIP Notes Financing together with cash on hand. |
| Procedures for Tendering EFIH Second Lien Notes.................................................................. | Each Holder who wishes to participate in the Offer must comply with the procedures for tendering EFIH Second Lien Notes described under "Procedures for Tendering Notes."  For help with tendering EFIH Second Lien Notes, contact the Offer Agent at one of its telephone numbers set forth on the back cover page of this Offer to Purchase or consult your broker, dealer, commercial bank, trust company or other nominee for assistance. |
| Acceptance of EFIH Second Lien Notes and Delivery of Consideration .................................. | If all of the applicable conditions to the Offer are satisfied or waived by the Company, the Company will accept, after the Expiration Date, any and all EFIH Second Lien Notes for purchase that, at such time, have been validly tendered (or defectively tendered if the Company waives any such defect) in the Offer. The Company will deliver the Total Consideration or Tender Consideration, as applicable, together with the Accrued Interest, on the Settlement Date. Each Holder that has validly tendered EFIH Second Lien Notes on or prior to the Early Participation Date or Expiration Date will be entitled to receive the Total Consideration or Tender Consideration, as applicable, together with Accrued Interest, on the Settlement Date. |

Conditions to Consummation of the Offer; Bankruptcy Court Approval .................................. The consummation of the Offer is subject to several conditions, including, among others: (i) the closing of the EFIH Second Lien DIP Notes Financing, which is also subject to several conditions, including the satisfaction or waiver of the conditions precedent under the EFIH Second Lien DIP Notes Facility, and the approval by the Bankruptcy Court of the Company's incurrence of indebtedness and granting of second-priority priming liens under the EFIH Second Lien DIP Notes Facility and (ii) approval by the Bankruptcy Court of the EFIH Second Lien Settlement.  The Restructuring Support Agreement requires the Company to obtain such orders from the Bankruptcy Court and to consummate this Offer on or before the 75th day after the Petition Date, which day is July 13, 2014.  The consummation of the Offer is also subject to the approval by the Bankruptcy Court of the performance by EFIH and EFIH Finance of their obligations under the dealer manager agreement between the Company and the Dealer Managers.  Under the terms of the Restructuring Support Agreement, certain parties could have termination rights under the Restructuring Support Agreement to the extent the EFIH First Lien Settlement and the EFIH First Lien DIP Facility are not consummated in connection with the completion of this Offer.  As a result, this Offer is conditioned upon the approval by the Bankruptcy Court of the EFIH First Lien DIP Facility and the EFIH First Lien Settlement in addition to the Bankruptcy Court's approval of the EFIH Second Lien DIP Notes Financing and EFIH Second Lien Settlement, which conditions can be waived by the Company subject to the terms of the Restructuring Support Agreement.  See "The Offer— Conditions to the Consummation of the Offer" for a description of the conditions of the Offer and "Summary of EFIH Second Lien DIP Notes—Conditions to Consummation."

EFIH Second Lien Notes not tendered in the Offer ...................................................................... In connection with the completion of the EFIH Second Lien DIP Notes Financing, the Company intends to repay an amount equal to all outstanding principal plus accrued and unpaid interest at the non-default rate due and owing as of the closing date of the EFIH Second Lien DIP Notes Financing under the EFIH Second Lien Notes that are not tendered in the Offer (which will not include any alleged premiums, settlements, fees or claims relating to the repayment of such claims).  Unless otherwise ordered by the Bankruptcy Court, accrued and unpaid interest will not include additional interest payable under the registration rights agreement with respect to the 11.750% Second Lien Notes or interest on overdue interest following a default in the payment of interest on an interest payment date.

Income Tax Considerations .................................... For a discussion of certain United States federal income tax considerations applicable to Participating Holders, see "Certain United States Federal Income Tax Considerations."

Dealer Managers.................................................... Citigroup Global Markets Inc. and other entities listed on the cover page of this Offer to Purchase.  The contact information for the Dealer Managers appears on the back cover of this Offer to Purchase.

Offer Agent and Depositary Agent......................... Epiq Systems. Requests for additional copies of this Offer to Purchase should be directed to the Offer Agent. The contact information for the Offer Agent and the Depositary Agent appears on the back cover of this Offer to Purchase.

Brokerage Commissions......................................... No brokerage fees and commissions are payable by the Holders to the Company, the Offer Agent, the Depositary Agent or otherwise in connection with the Offer.

Risk Factors.......................................................... Before deciding to participate in the Offer, you should carefully review the risk factors set forth in "Risk Factors" beginning on page 16 of this Offer to Purchase and those contained in our 2013 Form 10-K and First Quarter 2014 10-Q incorporated herein by reference and those that may be included in any future SEC filings that are incorporated by reference in this Offer to Purchase.

# RISK FACTORS

*You should carefully consider the risk factors set forth below and the risk factors incorporated into this Offer to Purchase by reference to our 2013 Form 10-K and First Quarter 2014 Form 10-Q, as well as the other information contained in and incorporated by reference into this Offer to Purchase before deciding to participate in the Offer.  Additional risks and uncertainties not currently known to us or those we currently view to be immaterial also may materially and adversely affect our business, financial condition or results of operations.  Any of the following risks or any of the risks described in our 2013 Form 10-K and First Quarter 2014 Form 10-Q could materially and adversely affect our business, financial condition, operating results or cash flow.*

## Risks Related to the Bankruptcy Proceedings

***We have filed voluntary petitions for relief under the Bankruptcy Code and are subject to the risks and uncertainties associated with a bankruptcy case.***

On April 29, 2014, EFIH and EFIH Finance (together with EFH Corp. and other direct and indirect subsidiaries of EFH Corp. including EFCH and TCEH but excluding the Oncor Ring-Fenced Entities) filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code.  For the duration of the Chapter 11 cases, we will be subject to various risks, including but not limited to the following:

- our ability to develop, consummate, and implement one or more plans of reorganization with respect to the Chapter 11 cases;

- our ability to obtain Bankruptcy Court, regulatory (including the approval of the PUCT) and creditor approval of a plan of reorganization and the effect of alternative proposals, views, and objections of creditor committees, creditors, or other stakeholders, which may make it difficult to develop and consummate a plan of reorganization in a timely manner;

- our ability to obtain Bankruptcy Court approval with respect to our motions in the Chapter 11 cases and the outcomes of Bankruptcy Court rulings and of the Chapter 11 cases in general;

- risks associated with third party motions in the Chapter 11 cases, which may interfere with our ability to formulate and implement a plan of reorganization;

- increased costs related to the Chapter 11 cases and related litigation;

- significant time and energy of senior management spent dealing with the bankruptcy and restructuring activities rather than focusing exclusively on business operations;

- our ability to maintain or obtain sufficient financing sources to fund any reorganization plan and meet future obligations; and

- potential incremental increase in risks related to distributions from Oncor.

We will also be subject to risks and uncertainties with respect to the actions and decisions of creditors and other third parties who have interests in the Chapter 11 cases that may be inconsistent with our plans.  In addition, the Chapter 11 cases subject us to risks related to litigation and/or claims asserted by creditors or other stakeholders in the Chapter 11 cases.  These risks and uncertainties could affect us in various ways and may significantly increase the time we have to operate under Chapter 11 bankruptcy protection.  Because of the risks and uncertainties associated with Chapter 11 cases, we cannot predict or quantify the ultimate impact that events occurring during the Chapter 11 cases may have on our cash flows, financial condition and results of operations.

***The structure of the reorganized Company could differ in very material respects from the description contained in this Offer to Purchase.***

The description of the various parts of the Restructuring Plan contained in this Offer to Purchase, including the transactions contemplated by the Restructuring Support Agreement, assumes that all parts of the Restructuring Plan are approved and implemented as currently proposed.  However, there can be no assurance that all or any part of the Restructuring Plan will in fact be approved in the form currently proposed, in the timeframe currently expected, or at all.  As described above, the bankruptcy process is inherently uncertain, and subject to the actions and decisions of creditors and other third parties who have interests in the Chapter 11 cases, including the risk of objections to the proposed Restructuring Plan and the risk of litigation.  In addition, the Bankruptcy Court has broad discretion in its review and approval of all and any parts of the Restructuring Plan.  As a result of these uncertainties, the capital and other structure of the reorganized Company, if a Chapter 11 reorganization is implemented at all, could differ in very material respects from the description contained in this Offer to Purchase.

***Operating under Chapter 11 may restrict our ability to pursue strategic initiatives.***

The terms of the EFIH First Lien DIP Facility and the EFIH Second Lien DIP Notes Financing will limit our ability to undertake certain business initiatives.  These limitations include, among other things, our ability to:

- sell assets outside the normal course of business;

- pay prepetition obligations;

- consolidate, merge, sell or otherwise dispose of all or substantially all of our assets;

- grant liens; and

- finance our investments or other capital needs or to engage in other business activities that may be in our interest.

***If the Reorganizing Entities fail to emerge from bankruptcy, we may be liquidated and you may lose all or part of your investment in the EFIH Second Lien Notes to the extent such EFIH Second Lien Notes are not repurchased by us in the Offer or otherwise repaid.***

We and certain of our affiliates are operating as debtors-in-possession under Chapter 11.  Our continuation as a going concern is contingent upon, among other things, our ability to develop a Chapter 11 Plan and obtain confirmation of that Chapter 11 Plan under the Bankruptcy Code, which includes approval of the Chapter 11 Plan by the Bankruptcy Court and certain of our classes of claims and interests.  Additionally, as part of the process to obtain Bankruptcy Court approval of a Chapter 11 Plan, the Bankruptcy Court must determine that our Chapter 11 Plan is feasible (as such term is defined and interpreted under the Bankruptcy Code).  Our Chapter 11 Plan has not yet been approved by the Bankruptcy Court or approved by the relevant classes of claims and interests.  There is no assurance that we will be able to obtain the requisite approval from the Bankruptcy Court, obtain acceptance of such Chapter 11 Plan from the relevant classes of claims and interests or meet any other statutory conditions applicable to approval of the Chapter 11 Plan.  If we fail to achieve any of these conditions on a timely basis we may not be able to emerge from Chapter 11.  If we fail to emerge from Chapter 11, we may be liquidated and you may lose all or part of your investment in the EFIH Second Lien Notes to the extent such EFIH Second Lien Notes are not repurchased by us in the Offer or otherwise repaid.

***As a result of the Chapter 11 cases, EFIH's historical financial information will not be indicative of its future financial performance.***

It is expected that EFIH's capital structure will be significantly altered as a result of the Chapter 11 cases and the confirmation of the Restructuring Plan.  Additionally, if fresh-start accounting rules apply, EFIH's financial condition and results of operations following its emergence from bankruptcy will not be comparable to the financial condition and results of operations reflected in its historical financial statements.

*If the Reorganizing Entities fail to consummate the Restructuring Plan, a non-prearranged proceeding could delay our emergence from bankruptcy.*

If we are not able to consummate the Restructuring Plan, we would likely become subject to a "traditional" bankruptcy proceeding, which would be lengthy, costly and highly disruptive, and have a more pronounced adverse effect on our business than the pre-arranged plan contemplated by the Restructuring Plan. A "traditional" bankruptcy proceeding would likely involve contested issues with our multiple creditors. A non-prearranged bankruptcy proceeding could also cause critical members of our senior management team to pursue other opportunities.

The uncertainty surrounding a prolonged restructuring would also have other adverse effects on us. For example, it would also adversely affect:

- our ability to raise additional capital;

- our liquidity;

- how our business is viewed by regulators, investors, lenders and credit ratings agencies; and

- our enterprise value.

*Our debtor in possession financings, including the EFIH First Lien DIP Facility and the EFIH Second Lien DIP Notes, may be insufficient to fund our cash requirements through our emergence from bankruptcy.*

As discussed above, we filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code. For the duration of the Chapter 11 cases, we will be subject to various risks, including but not limited to (i) the inability to maintain or obtain sufficient financing sources for operations or to fund any reorganization plan and meet future obligations, including the minimum unrestricted cash covenants under the EFIH First Lien DIP Facility and the EFIH Second Lien DIP Notes Financing, and (ii) increased legal and other professional costs associated with the Chapter 11 cases and our reorganization.

**Risks Related to Participating in the Offer**

*The RSA EFIH Second Lien Note Parties may receive a different amount of consideration than the Holders who participate in the Offer and certain RSA EFIH Second Lien Note Parties will receive other consideration under the terms of the Restructuring Support Agreement. Moreover, the RSA EFIH Second Lien Note Parties may be entitled to receive consideration and/or settlement amounts for other securities they hold in our and our affiliates' capital structure on account of such securities, including the EFIH First Lien Notes and the EFH Corp. Unsecured Notes.*

Pursuant to the Restructuring Support Agreement, each of the RSA EFIH Second Lien Note Parties (which, in the aggregate, hold approximately 35% of the outstanding EFIH Second Lien Notes) have agreed to a voluntary settlement with respect to the Issuer's obligations under the EFIH Second Lien Notes held by such RSA EFIH Second Lien Note Party. Pursuant to such settlement, each RSA EFIH Second Lien Note Party has agreed to accept as payment in full of any claims arising out of the EFIH Second Lien Notes held by such RSA EFIH Second Lien Note Party an amount in cash equal to (i) 100% of the principal of, plus accrued and unpaid interest on (including any additional interest payable under a registration rights agreement with respect to the 11.750% Second Lien Notes) the principal amount of EFIH Second Lien Notes held by such RSA EFIH Second Lien Note Party at the non-default rate on the EFIH Second Lien Notes through the Settlement Date, plus (ii) 50% of the amount of the EFIH Second Lien Makewhole Claims on the principal amount of EFIH Second Lien Notes held by such RSA EFIH Second Lien Note Party calculated as of the Settlement Date. We calculated the amount of the premium payable in the Offer in the identical manner contemplated by the Restructuring Support Agreement by reference to the terms of the applicable Indenture, except that we used the applicable rate for United States Treasury securities as of May 7, 2014 rather than the Settlement Date. As a result, the consideration payable to the RSA EFIH Second Lien Note

18

Parties under the Restructuring Support Agreement could be higher than the consideration paid to Holders that participate in the Offer.

In addition, certain RSA EFIH Second Lien Note Parties will receive other consideration under the terms of the Restructuring Support Agreement. Specifically, a RSA EFIH Second Lien Note Party will have the right to purchase, for cash, up to $500 million in the form of loans under the EFIH First Lien DIP Facility and will receive a 1.75% commitment fee in connection with such purchase. In addition, as discussed in the Restructuring Support Agreement, this RSA EFIH Second Lien Note Party has the benefit of a "most favored nation" provision pursuant to which it could receive additional consideration with respect to the EFIH Second Lien RSA Settlement in certain circumstances in the event we settle with Non-Settling EFIH Second Lien Holders at an amount greater than the amount they are entitled to under the EFIH Second Lien Settlement. Further, certain other RSA EFIH Second Lien Note Parties will receive a settlement premium of $1.57 million in cash in the aggregate. Holders participating in this Offer will not have the benefit of these provisions.

Moreover, pursuant to the terms of the Restructuring Support Agreement or otherwise, each RSA EFIH Second Lien Note Party may be entitled to receive consideration and/or settlement amounts for other securities it holds in our and our affiliates' capital structure on account of such securities (including the EFIH First Lien Notes and the EFH Corp. Unsecured Notes). As discussed in the Restructuring Support Agreement, a RSA EFIH Second Lien Note Party has the right in its capacity as a Consenting EFH Corp. Unsecured Noteholder to purchase up to $171.0 million aggregate principal amount of the EFIH Second Lien DIP Tranche A-3 Notes in connection with the EFIH Second Lien DIP Notes Financing. If such holder elects to participate in that offering, EFIH will pay such party $11.25 million upon the closing of the EFIH Second Lien DIP Notes Financing.

Finally, under the terms of the Restructuring Support Agreement, a Consenting EFH Corp. Unsecured Noteholder (that is also a RSA EFIH Second Lien Note Party) has the ability to terminate its participation in such agreement, up to a time specified in the agreement, in the event that EFH Corp. notifies such party that the expected recovery on the EFH Non-Guaranteed Notes held by such party is expected to be less than 37.15% of the par amount of such EFH Non-Guaranteed Notes; provided that such party shall not have the right to terminate the Restructuring Support Agreement as a result of this minimum recovery condition not being satisfied if the Backstop Parties opt to purchase this party's EFH Non-Guaranteed Notes for a purchase price equal to 37.15% of the par amount of such EFH Non-Guaranteed Notes plus accrued and unpaid interest through the Petition Date. Furthermore, at any time before the Effective Date, the Backstop Parties shall have the right to purchase the EFH Non-Guaranteed Notes referenced in the foregoing sentence for a purchase price equal to 37.15% of the par amount of such EFH Non-Guaranteed Notes plus accrued and unpaid interest through the Petition Date.

For a detailed description of the terms and conditions of the Restructuring Support Agreement and the consideration payable to the parties thereunder, we refer you to the actual Restructuring Support Agreement as filed with the SEC as an exhibit to our 2013 Form 10-K through Amendment No. 1 on Form 10-K/A filed on May 1, 2014, which is incorporated by reference into this Offer to Purchase.

***The consummation of the Offer is subject to several conditions and there is no assurance that we will be able to satisfy those conditions or that we will be able to satisfy those conditions on the timing contemplated by the Offer.***

The consummation of the Offer is subject to the satisfaction or waiver of several conditions, including:

- the Company will have obtained an order from the Bankruptcy Court to approve the EFIH Second Lien DIP Notes Financing, which will be in full force and effect and not subject to any stay, (b) all of the conditions to entry into EFIH Second Lien DIP Notes Financing will have been satisfied or will, in the Company's reasonable judgment, be satisfied on or prior to the Settlement Date, and, in its reasonable judgment, the EFIH Second Lien DIP Notes Financing will become effective on the Settlement Date, and (c) the Company will have received, or will receive on the Settlement Date, net proceeds from the EFIH Second Lien DIP Notes Financing in an amount sufficient together with cash on hand to fund the purchase of all tendered EFIH Second Lien Notes, plus all fees and expenses incurred in connection with the Offer;

- the Company will have obtained one or more orders from the Bankruptcy Court to approve the EFIH Second Lien Settlement, this Offer and the performance by EFIH and EFIH Finance under the Dealer Manager Agreement between the Company and the Dealer Managers and such order will be in full force and effect and not subject to any stay; and

- the Restructuring Support Agreement will be in full force and effect.

In addition, under the terms of the Restructuring Support Agreement, certain parties could have termination rights under the Restructuring Support Agreement to the extent the EFIH First Lien Settlement and the EFIH First Lien DIP Facility are not consummated in connection with the completion of this Offer.  As a result, this Offer is conditioned upon the approval by the Bankruptcy Court of the EFIH First Lien DIP Facility and the EFIH First Lien Settlement in addition to the Bankruptcy Court's approval of the EFIH Second Lien DIP Notes Financing and EFIH Second Lien Settlement, which conditions can be waived by the Company in its sole discretion subject to the terms of the Restructuring Support Agreement.  See "Conditions to the Consummation of the Offer."

The most significant conditions to the Offer are based on matters outside of our control.  As a result, we can provide no assurances that these conditions will be satisfied or that the Offer will be consummated.  Although we have reserved the right to waive any of the conditions to Offer and to otherwise consummate the Offer, we cannot consummate this Offer without obtaining the approval of the Bankruptcy Court under the Bankruptcy Code and are also limited under the terms of the Restructuring Support Agreement. As a result, we will have to either extend the Offer or permit the Offer to terminate in accordance with its terms if we have not obtained the necessary Bankruptcy Court approval on or prior to the Expiration Date. In addition, the Restructuring Support Agreement requires us to obtain an order from the Bankruptcy Court to approve the EFIH Second Lien Settlement and to consummate this Offer on or before the 75th day after the Petition Date, which day is July 13, 2014. As a result, any significant delay in obtaining the necessary Bankruptcy Court approval would result in certain creditors having the right to terminate such agreement.

***We have not obtained any independent valuation of the EFIH Second Lien Notes for purposes of determining the consideration being offered in the Offer.***

We determined the amount of the Total Consideration and the Accrued Interest payable in the Offer based on the terms of the Restructuring Support Agreement. The terms of the Restructuring Agreement were established based on negotiations between us and certain of our secured and unsecured creditors.  The consideration offered to purchase the EFIH Second Lien Notes does not reflect any independent valuation of such EFIH Second Lien Notes and does not take into account events or changes in financial markets (including interest rates) after the commencement of the Offer. We have not obtained or requested a fairness opinion from any banking or other firm as to the fairness of the consideration offered for the EFIH Second Lien Notes. If you tender your EFIH Second Lien Notes, you may or may not receive more than, or as much value as, if you choose to keep them.

***You may receive less in the Offer than what you would receive upon the completion of the makewhole litigation.***

We determined the amount of the Total Consideration and the Accrued Interest payable in the Offer based on the terms of the Restructuring Support Agreement, which provides, among other things, that RSA EFIH Second Lien Note Parties receive 50% of the aggregate amount of the EFIH Second Lien Makewhole Claims calculated as of the consummation of the date the EFIH Second Lien DIP Notes Financing.  In connection with this Offer, the Reorganizing Entities expect to initiate litigation to obtain entry of an order of the Bankruptcy Court: (i) disallowing the claims of the Non-Settling EFIH Second Lien Note Holders derived from or based upon makewhole or other similar payment provisions under the EFIH Second Lien Notes; and (ii) providing that, upon completion of the EFIH Second Lien DIP Notes Financing, the Non-Settling EFIH Second Lien Note Holders will only receive a cash payment in an amount equal to 100% of the principal, plus accrued and unpaid interest on (excluding any additional interest payable under a registration rights agreement with respect to the 11.750% Second Lien Notes) the principal amount of EFIH Second Lien Notes held by such Non-Settling EFIH Second Lien Note Holders, at the non-default rate of such holder's claim (not including any premiums, settlements, fees or claims relating to the repayment of the EFIH Second Lien Note Claims (as defined in the Restructuring Support Agreement)) up to, but not including, the consummation date of the EFIH Second Lien DIP Notes Financing.  Any other claims of such Non-Settling EFIH

Second Lien Note Holders allowed by the Bankruptcy Court will receive their pro rata share of cash in the amount of such claims on the effective date of the Restructuring Plan or such other treatment (which may include new debt) as permitted under section 1129(b) of the Bankruptcy Code under the Reorganizing Entities' Chapter 11 plan of reorganization, as mutually agreed by EFIH and the Required EFIH Unsecured Consenting Creditors.  We can give no assurance that this litigation will be successful or that the litigation will not result in a more favorable economic outcome for Non-Settling EFIH Second Lien Note Holders compared to the consideration received by Holders that participate in this Offer.  We currently do not expect that such litigation will be resolved by the Early Participation Date, the Expiration Date or the Settlement Date.

If the Bankruptcy Court does not agree with our position and determines that Non-Settling EFIH Second Lien Note Holders are entitled to receive 100% of their makewhole claims, Holders of 11% Second Lien Notes and 11.750% Second Lien Notes would be entitled to receive for each $1,000 principal amount of such EFIH Second Lien Notes a premium of approximately $246.44 and $332.44, respectively, if such amounts were calculated as of June 11, 2014.  In that event, such Non-Settling EFIH Second Lien Note Holders may argue that they are entitled to adequate protection of their allowed claims under the Bankruptcy Code, which would not be available to Holders participating in this Offer.  We expect that the trustees under the respective Indentures will retain counsel to litigate the validly of the makewhole claims on behalf of the Non-Settling Second Lien Holders and, contrary to our position, seek to have the fees of such counsel included in their secured claim under 506(b) of the Bankruptcy Code. We intend to oppose any such claims or arguments.

***EFIH Second Lien Notes tendered in the Offer generally may not be withdrawn and may not be transferred.***

If you wish to participate in the Offer, you must tender your EFIH Second Lien Notes in the Offer on or prior to the Expiration Date.  Holders may not withdraw EFIH Second Lien Notes that have been validly tendered in the Offer at any time, except in certain limited circumstances where withdrawal rights are required by law.  Subject to the terms of the Restructuring Support Agreement, we have the right to extend the Offer from time to time and intend to extend the Offer if necessary in order to enable the EFIH Second Lien Settlement to be heard and approved by the Bankruptcy Court. As a result of the foregoing, you will not be able to transfer any EFIH Second Lien Notes that have been tendered into the Offer if you choose to participate in the Offer.

***We may acquire EFIH Second Lien Notes during or after the Offer at prices in excess of the consideration offered in the Offer.***

Whether or not the Offer is consummated, subject to approval of the Bankruptcy Court and the terms of the Restructuring Support Agreement, the Company or its affiliates may from time to time purchase any EFIH Second Lien Notes other than pursuant to the Offer through open market or privately negotiated transactions, through one or more additional tender or exchange offers or otherwise, in each case upon such terms and conditions and at such prices as the Company or such affiliates may determine, which may be more or less than the price to be paid pursuant to the Offer and could be for cash or other consideration.

***You should be aware of the United States federal income tax consequences of the Offer.***

See "Certain United States Federal Income Tax Considerations" for a discussion of certain United States federal income tax consequences of the Offer.

### Risks Related to not Participating in the Offer

***If you do not tender your EFIH Second Lien Notes, the EFIH Second Lien Notes you retain may become substantially less liquid as a result of the Offer.***

If a significant number of EFIH Second Lien Notes are purchased in the Offer, the liquidity of the trading market for the EFIH Second Lien Notes, if any, after the completion of the Offer may be substantially reduced.  Any EFIH Second Lien Notes purchased in the Offer will reduce the aggregate number of EFIH Second Lien Notes outstanding.  As a result, the EFIH Second Lien Notes may trade at a discount to the price at which they would trade if the transactions contemplated by this Offer to Purchase were not consummated.  An active trading market in the

EFIH Second Lien Notes may not exist or be sustained, and the EFIH Second Lien Notes may not have sufficient liquidity to avoid price volatility and trading disadvantages.

***If you do not tender your EFIH Second Lien Notes, you may receive less consideration for your retained EFIH Second Lien Notes than is being offered in Offer.***

The Company intends to use the cash proceeds of the EFIH Second Lien DIP Notes Financing and, to the extent necessary, cash on hand, to repay all outstanding principal at par plus accrued and unpaid interest at the non-default rate due and owing as of the closing date of the EFIH Second Lien DIP Notes Financing under the EFIH Second Lien Notes that do not participate in the Offer.  The repurchase price will not include any alleged premiums, fees, settlements or claims relating to the repayment of such claims and, as a result, will be lower than the Total Consideration and Tender Consideration that will be paid to Participating Holders in the Offer.  In connection with the foregoing, the Reorganizing Entities intend to initiate litigation to obtain entry of an order from the Bankruptcy Court:  (i) disallowing the claims of such Holders that did not participate in the Offer derived from or based upon makewhole or other similar payment provisions under the EFIH Second Lien Notes; and (ii) providing that, upon completion of the EFIH Second Lien DIP Notes Financing, the Non-Settling EFIH Second Lien Note Holders will only receive a cash payment in an amount equal to 100% of the principal, plus accrued and unpaid interest on (excluding any additional interest payable under a registration rights agreement with respect to the EFIH 11.750% Second Lien Notes) the principal amount of EFIH Second Lien Notes held by such Non-Settling EFIH Second Lien Note Holders at the non-default rate of such holder's claim (not including any premiums, settlements, fees, or claims relating to the repayment of the EFIH Second Lien Note Claims) up to, but not including, the consummation date of the EFIH Second Lien DIP Notes Financing.  Any other claims of such Non-Settling EFIH Second Lien Note Holders allowed by the Bankruptcy Court will receive their pro rata share of cash in the amount of such claims on the effective date of the Restructuring Plan or such other treatment (which may include new debt) as permitted under section 1129(b) of the Bankruptcy Code under the Reorganizing Entities' Chapter 11 plan of reorganization, as mutually agreed by EFIH and the Required EFIH Unsecured Consenting Creditors (as defined in the Restructuring Support Agreement).  If we are successful in this litigation, you will receive less consideration for your EFIH Second Lien Notes than if you had tendered them in the Offer.

# THE OFFER

*Before deciding to participate in the Offer, you should carefully review the risk factors set forth in "Risk Factors" beginning on page 16 of this Offer to Purchase and those contained in our 2013 Form 10-K and First Quarter 2014 10-Q incorporated herein by reference and those that may be included in any future SEC filings that are incorporated by reference in this Offer to Purchase.*

## General

The Company hereby offers, upon the terms and subject to the conditions set forth in this Offer to Purchase (including the accompanying Letter of Transmittal), to purchase for cash any and all of the outstanding EFIH Second Lien Notes that are validly tendered on or prior to the Early Participation Date or Expiration Date, for the Total Consideration or Tender Consideration, as applicable, as further described below. Each Holder who participates in the Offer will thereby voluntarily settle its EFIH Second Lien Makewhole Claims in accordance with the EFIH Second Lien Settlement. The Restructuring Support Agreement requires the Company to obtain an order from the Bankruptcy Court to approve the EFIH Second Lien Settlement and to consummate this Offer on or before the 75th day after the Petition Date, which day is July 13, 2014.

The Board of Directors of EFIH and EFIH Finance are not making any recommendation to the Holders as to whether to tender or refrain from tendering EFIH Second Lien Notes in the Offer. Each Holder must decide whether to tender EFIH Second Lien Notes. Any Holder that participates in the Offer must tender all of its EFIH Second Lien Notes. Holders are urged to review carefully all of the information contained in this Offer to Purchase, and to obtain current market quotations for the EFIH Second Lien Notes.

## Offer Consideration

Holders who validly tender their EFIH Second Lien Notes on or prior to the Early Participation Date will be eligible to receive the Total Consideration. The Total Consideration will be an amount, paid in cash, equal to $1,123.22 for each $1,000 principal amount of 11% Second Lien Notes and $1,166.22 for each $1,000 principal amount of 11.750% Second Lien Notes tendered based on the assumed Settlement Date of June 11, 2014, which amounts will be **decreased** in each case by $0.14 for each day after June 11, 2014 that the Settlement Date occurs. The Total Consideration includes the Early Participation Consideration of $50.00 per $1,000 principal amount of EFIH Second Lien Notes payable in respect of EFIH Second Lien Notes validly tendered on or prior to the Early Participation Date. **Holders must validly tender their EFIH Second Lien Notes on or prior to the Early Participation Date in order to be eligible to receive the Total Consideration for such EFIH Second Lien Notes purchased in the Offer.** Holders who validly tender their EFIH Second Lien Notes after the Early Participation Date and on or prior to the Expiration Date will not be entitled to receive the Early Participation Payment and only be entitled to receive the Tender Consideration. The Tender Consideration will be an amount, paid in cash, equal to the applicable Total Consideration less the $50.00 Early Participation Consideration per $1,000 principal amount of EFIH Second Lien Notes.

The Company will also pay the Accrued Interest, which will be an amount equal to any and all accrued and unpaid interest at the rate of 11% with respect to the 11% Second Lien Notes and 12.25% with respect to the 11.750% Second Lien Notes that are accepted for purchase in the Offer up to, but not including, the Settlement Date. Such Accrued Interest includes additional interest payable under the registration rights agreement with respect to the 11.750% Second Lien Notes, but such Accrued Interest will not include interest on overdue interest following a default in the payment of interest on an interest payment date.

The Total Consideration and Accrued Interest payable in the Offer were determined based on the terms of the Restructuring Support Agreement. Specifically, the Company calculated the amount of the premium payable in the Offer in the identical manner contemplated by the Restructuring Support Agreement by reference to the terms of the applicable Indenture, except that it used the applicable rate for United States Treasury securities as of May 7, 2014 rather than the Settlement Date. See "Summary of Restructuring Support Agreement."

Each of the Total Consideration and the Tender Consideration are subject to adjustment in the event the Settlement Date occurs after June 11, 2014, as specified above.  For example, if the Settlement Date were to occur on June 21, 2014 (10 days after the assumed Settlement Date of June 11, 2014), then the Total Consideration per $1,000 principal amount of EFIH Second Lien Notes would each be reduced by $1.40 (10 x $0.14) as follows:

- for the 11% Second Lien Notes from $1,123.22 to $1,121.82; and

- for the 11.750% Second Lien Notes from $1,166.22 to $1,164.82.

The amount of the Tender Consideration per $1,000 principal amount of each of the 11% Second Lien Notes and 11.750% Second Lien Notes would likewise be reduced by $1.40 in this case as well.  Holders, however, would receive additional Accrued Interest for the 10-day period as a result of the Settlement Date occurring later than the assumed Settlement Date of June 11, 2014.

No alternative, conditional or contingent tenders of EFIH Second Lien Notes will be accepted.  No guaranteed delivery provisions have been provided in conjunction with the Offer.  A Holder that participates in the Offer is required to tender all of its EFIH Second Lien Notes in the Offer.  No partial tender of a Participating Holder's EFIH Second Lien Notes will be valid.  No Holder is required to participate in the Offer and any Holder's participation in the Offer is voluntary.  The Offer is not conditioned on Holders of any minimum principal amount of EFIH Second Lien Notes participating in the Offer.  Subject to applicable law, the Offer is being made separately for each series of EFIH Second Lien Notes and, subject to applicable law, the Company reserves the right to terminate, withdraw or amend the Offer with respect to either series of EFIH Second Lien Notes independently from the other series.  The Company's obligation to accept EFIH Second Lien Notes that are tendered is subject to the conditions described below under "Conditions to the Consummation of the Offer."

All EFIH Second Lien Notes accepted for payment in the Offer will cease to accrue interest on the Settlement Date, unless the Company defaults in the payment of amounts payable pursuant to the Offer.

Tendering Holders of EFIH Second Lien Notes purchased in the Offer will not be obligated to pay brokerage commissions or fees to the Offer Agent or the Company or, except as indicated in the instructions to the Letter of Transmittal, to pay transfer taxes with respect to the purchase of their EFIH Second Lien Notes; however, such Holders may be obligated to pay commissions to their own brokers or other agents.  The Company will pay all other reasonable charges and expenses in connection with the Offer.

Subject to the approval of the Bankruptcy Court and the terms of the Restructuring Support Agreement, the Company expressly reserves the right, in its sole discretion, from time to time during or after the Offer, to purchase any EFIH Second Lien Notes that are not tendered or accepted in the Offer through open market or privately negotiated transactions, through one or more additional tender or exchange offers or otherwise, in each case upon terms and conditions and at such prices as the Company may determine, which may be more or less than the price to be paid pursuant to the Offer and could be for cash or other consideration. See "Risk Factors—We may acquire EFIH Second Lien Notes during or after the Offer at prices in excess of the consideration offered in the Offer."

**Source and Amount of Funds**

The Company estimates that it will need approximately $2.6 billion to purchase all of the EFIH Second Lien Notes in the Offer, assuming that all outstanding EFIH Second Lien Notes are validly tendered on or prior to the Early Participation Date and a Settlement Date of June 11, 2014. The Company expects to use borrowings under the EFIH Second Lien DIP Notes Financing together with cash on hand to fund the purchase of the tendered EFIH Second Lien Notes and pay related fees and expenses of the Offer.  The Company may obtain a portion of such cash on hand through borrowings under the EFIH First Lien DIP Facility.  Entry into and availability of sufficient funds from the issuance and sale of the EFIH Second Lien DIP Notes is a condition to the completion of the Offer.  See "Conditions to the Consummation of the Offer and "Summary of EFIH Second Lien DIP Notes—Conditions to Consummation."

**Early Participation Date; Expiration Date; Extensions; Termination; Amendment**

The Early Participation Date will be 5:00 p.m., New York City time, on May 23, 2014 unless extended by the Company in its sole discretion. In the event that it extends the Early Participation Date, the term "*Early Participation Date*" with respect to such extended Early Participation Date will mean the time and date on which the Early Participation Date as so extended will expire. The Company expressly reserves the right to extend the Early Participation Date from time to time or for such period or periods as it may determine in its sole discretion by giving oral (to be confirmed in writing) or written notice of such extension to the Offer Agent and by making a public announcement no later than 9:00 a.m., New York City time, on the next business day following the previously scheduled Early Participation Date. Without limiting the manner in which any public announcement may be made, the Company will have no obligation to publish, advertise or otherwise communicate any such public announcement other than by issuing a press release.

The Offer will expire at 11:59 p.m., New York City time, on June 6, 2014, unless the Company extends the Expiration Date or earlier terminates the Offer in its sole discretion. In the event that it extends the Offer, the term "*Expiration Date*" with respect to such extended Offer will mean the time and date on which the Offer as so extended will expire. The Company expressly reserves the right to extend the Offer from time to time or for such period or periods as it may determine in its sole discretion by giving oral (to be confirmed in writing) or written notice of such extension to the Offer Agent and by making a public announcement no later than 9:00 a.m., New York City time, on the next business day following the previously scheduled Expiration Date. Without limiting the manner in which any public announcement may be made, the Company will have no obligation to publish, advertise or otherwise communicate any such public announcement other than by issuing a press release. During any extension of the Offer, all EFIH Second Lien Notes previously tendered and not accepted for purchase will remain subject to the Offer and may, subject to the terms and conditions of the Offer, be accepted for purchase by the Company.

To the extent it is legally permitted to do so, the Company expressly reserves the absolute right, in its sole discretion and, if required, subject to Bankruptcy Court approval, at any time with respect to any series of EFIH Second Lien Notes to: (i) waive any condition to the Offer, (ii) amend any of the terms of the Offer, (iii) terminate the Offer, (iv) extend the Early Participation Date, the Expiration Date or the Settlement Date or (v) modify the Total Consideration or the Tender Consideration, as applicable, provided that in the event the Company modifies the Total Consideration or Tender Consideration, the Offer will be extended if required by law such that the Early Participation Date or Expiration Date, as applicable, is at least ten business days from the date of such modification. Any waiver, amendment, modification or termination of the Offer will apply to all EFIH Second Lien Notes tendered pursuant to the Offer. If the Company makes a material change in the terms of the Offer or waives a material condition of the Offer, it will give oral (to be confirmed in writing) or written notice of such amendment or such waiver to the Offer Agent and will disseminate additional offer documents and extend the Offer to the extent required by law. Notwithstanding the foregoing, the Company's ability to make certain changes to the terms of the Offer is limited by the terms of the Restructuring Support Agreement.

On or prior to the Expiration Date, the Company also reserves the right to terminate the Offer if any condition of the Offer is not satisfied or otherwise able to be satisfied on or prior to the Settlement Date.

There can be no assurance that the Company will exercise its right to extend the Early Participation Date or Expiration Date.

**No Appraisal or Similar Rights**

Neither the Indentures nor applicable law gives the Holders any appraisal or similar rights to request a court or other person to value their outstanding EFIH Second Lien Notes in connection with the Offer.

## PURPOSE AND BACKGROUND OF THE OFFER

The principal purpose of the Offer is to acquire all of the outstanding EFIH Second Lien Notes in order to implement the EFIH Second Lien Settlement in accordance with the terms of the Restructuring Support Agreement.

See "Summary—Recent Developments" for additional information regarding the background to the Offer and the other transactions that are contemplated by the Restructuring Plan.

The consideration payable for tendered EFIH Second Lien Notes and the costs and expenses of the Offer are expected to be paid with the net proceeds of the EFIH Second Lien DIP Notes Financing together with cash on hand. See "Conditions to the Consummation of the Offer."

Neither the Company nor any Dealer Manager is making any recommendation to Holders as to whether to tender or refrain from tendering your EFIH Second Lien Notes. You must decide whether to participate in the Offer. You are urged to review carefully all of the information contained in this Offer to Purchase before making a decision as to whether to tender your EFIH Second Lien Notes.

## DESCRIPTION OF THE FINANCING

In connection with the Offer and in an effort to satisfy the Financing Condition (as defined below), the Company intends to consummate the EFIH Second Lien DIP Notes Financing. The consideration payable for tendered EFIH Second Lien Notes, including Accrued Interest, and the costs and expenses of the Offer, are expected to be paid with the proceeds of the EFIH Second Lien DIP Notes Financing together with cash on hand. No assurances can be given that the Company will complete the EFIH Second Lien DIP Notes Financing or that if completed, it will be on the terms contemplated in this Offer to Purchase. Consummation of the Offer is expressly contingent upon, among other things, the consummation by the Company of the EFIH Second Lien DIP Notes Financing. See "Conditions to the Consummation of the Offer" and "Summary of EFIH Second Lien DIP Notes— Conditions to Consummation."

As discussed in the Restructuring Support Agreement, a Consenting Creditor (that is also a RSA EFIH Second Lien Note Party) has the right to purchase up to $171.0 million aggregate principal amount of the EFIH Second Lien DIP Tranche A-3 Notes in connection with the EFIH Second Lien DIP Notes Financing. If such party elects to participate in that offering, EFIH will pay such party $11.25 million upon the closing of the EFIH Second Lien DIP Notes Financing.

This Offer to Purchase is not an offer to sell and is not soliciting any offers to buy the Company's debt securities in connection with the EFIH Second Lien DIP Notes Financing or otherwise. Any offering of debt securities by the Company will be made only by means of a separate offering memorandum.

## PROCEDURES FOR TENDERING EFIH SECOND LIEN NOTES

In order to participate in the Offer, you must validly tender your EFIH Second Lien Notes to the Depositary Agent as described below under the heading "—Book-Entry Delivery of the EFIH Second Lien Notes; Tender through ATOP." It is your responsibility to validly tender your EFIH Second Lien Notes. The Company has the right to waive any defects in its sole discretion. However, the Company is not required to waive defects and is not required to notify you of defects in your tender. A waiver of any defect with respect to the tender of one EFIH Second Lien Note or with respect to one Holder will not constitute a waiver of the same or any other defect with respect to the tender of any other EFIH Second Lien Note or any other Holder, respectively. Further, a defective tender of EFIH Second Lien Notes (which defect is not waived by the Company) will not constitute a valid delivery of the EFIH Second Lien Notes and will not entitle the Holder thereof to any payment pursuant to the Offer.

EFIH Second Lien Notes may be tendered only in authorized denominations, which are minimum denominations of $2,000 and integral multiples of $1,000 in excess thereof. Pursuant to the Offer, a Participating Holder is required to tender all of its EFIH Second Lien Notes. A Participating Holder that is unable to do so as a result of these denomination requirements should promptly contact the Depositary Agent regarding the matter.

If you need help regarding the procedures for tendering your EFIH Second Lien Notes, please contact the Offer Agent, whose address and telephone numbers are listed on the back cover page of this Offer to Purchase.

*Need for Guarantee of Signature.* A recognized participant (a "*Medallion Signature Guarantee*") in the Securities Transfer Agents Medallion Program must guarantee signatures on a Letter of Transmittal unless the EFIH Second Lien Notes tendered thereby are tendered (a) by the registered Holder of those EFIH Second Lien Notes and that Holder has not completed either of the boxes entitled "Special Payment Instructions" or "Special Delivery Instructions" on the Letter of Transmittal, or (b) for the account of a firm that is a member of a registered national securities exchange or the Financial Institution Regulatory Authority or is a commercial bank or trust company having an office in the United States or another "eligible guarantor institution" within the meaning of Rule 17Ad-15 under the Exchange Act. The Company refers to such firms, banks and trust companies as "*Eligible Institutions*."

*Book-Entry Delivery of the EFIH Second Lien Notes; Tender through ATOP.* All of the EFIH Second Lien Notes were issued in book-entry form, and all of the EFIH Second Lien Notes are currently represented by one or more global certificates registered in the name of a nominee of DTC. The Company has confirmed with DTC that the EFIH Second Lien Notes may be tendered using the ATOP procedures instituted by DTC. DTC participants may electronically transmit their acceptance of the Offer by causing DTC to transfer their outstanding EFIH Second Lien Notes to the Depositary Agent using the ATOP procedures. In connection with each book-entry transfer of EFIH Second Lien Notes to the Depositary Agent, DTC will send an agent's message (the "*Agent's Message*") to the Depositary Agent, which, in turn, will confirm its receipt of the book-entry transfer (a "*Book-Entry Confirmation*"). The Agent's Message is transmitted by DTC to, and received by, the Depositary Agent and forms a part of the Book-Entry Confirmation, stating that DTC has received an express acknowledgement from the participant in DTC tendering EFIH Second Lien Notes that such participant has received and agrees to be bound by the terms of the Offer and that it may enforce such agreement against the participant.

**By using the ATOP procedures to tender EFIH Second Lien Notes, you will not be required to deliver a validly executed Letter of Transmittal to the Depositary Agent. However, you will be bound by its terms just as if you had signed it.**

Although delivery of the EFIH Second Lien Notes will be effected through book-entry at DTC, an Agent's Message in lieu of the Letter of Transmittal and any other required documents must be transmitted to and received by the Depositary Agent on or prior to the Expiration Date in order to be eligible to receive the applicable consideration, at its address set forth on the back cover of this Offer to Purchase. Delivery of such documents to DTC does not constitute delivery to the Depositary Agent.

*General.* The tender of EFIH Second Lien Notes pursuant to the Offer by the procedures set forth above will constitute an agreement between the tendering Holder and the Company in accordance with the terms and subject to the conditions of the Offer.

By tendering EFIH Second Lien Notes through book-entry transfer as described in this Offer to Purchase, and subject to and effective upon acceptance for purchase of, and payment for, the EFIH Second Lien Notes tendered therewith, a tendering Holder acknowledges receipt of this Offer to Purchase and (i) sells, assigns and transfers to or upon the order of the Company all right, title and interest in and to all the EFIH Second Lien Notes tendered thereby, (ii) waives any and all other rights with respect to the EFIH Second Lien Notes (including, without limitation, the tendering Holder's waiver of any existing or past defaults and their consequences in respect of the EFIH Second Lien Notes and the Indentures), (iii) releases and discharges the Company and its affiliates from any and all claims such Holder may have now, or may have in the future, arising out of, or related to, the EFIH Second Lien Notes, including, without limitation, any claims that such Holder is entitled to receive additional principal or interest payments or payments derived from or arising from makewhole or similar payment provisions with respect to the EFIH Second Lien Notes or to participate in any redemption or defeasance of the EFIH Second Lien Notes and (iv) irrevocably constitutes and appoints the Depositary Agent as the true and lawful agent and attorney-in-fact of such Holder (with full knowledge that the Depositary Agent also acts as an agent of the Company) with respect to any such tendered EFIH Second Lien Notes, with full power of substitution and resubstitution (such power of attorney being deemed to be an irrevocable power coupled with an interest) to (a) transfer ownership of such EFIH Second Lien Notes on the account books maintained by DTC, together with all accompanying evidences of transfer and authenticity, to the Company, (b) present such EFIH Second Lien Notes for transfer on the relevant security register and (c) receive all benefits or otherwise exercise all rights of beneficial ownership of such EFIH Second Lien Notes (except that the Depositary Agent will have no rights to, or control over, funds from the Company,

27

except as agent for the tendering Holders, for the Total Consideration or Tender Consideration, as applicable, for any tendered EFIH Second Lien Notes that are purchased by the Company).

Furthermore, the Holder, by tendering its EFIH Second Lien Notes in the Offer agrees: (a) that it will be bound by the terms and conditions of the EFIH Second Lien Settlement as set forth in this Offer to Purchase (including, but not limited to, surrendering and waiving any and all claims such Holder may have with respect to its EFIH Second Lien Notes), (b) that it will not, directly or indirectly, object to, delay, impede, or take any other action to interfere with acceptance, implementation, or consummation of the EFIH First Lien Settlement, the EFIH Second Lien Settlement, the EFIH First Lien DIP Facility or the EFIH Second Lien DIP Notes Financing in the Bankruptcy Court or otherwise, including releasing and waiving any and all claims relating to its EFIH Second Lien Notes upon consummation of the EFIH Second Lien Settlement and (c) that it will take all necessary steps to effectuate its participation in the Offer, including timely providing all requisite documentation as required.

**You must allow sufficient time for completion of the ATOP procedures during the normal business hours of DTC to tender your EFIH Second Lien Notes.**

The Holder, by tendering its EFIH Second Lien Notes, represents and warrants that the Holder has full power and authority to tender, sell, assign and transfer the EFIH Second Lien Notes tendered, and that when such EFIH Second Lien Notes are accepted for purchase and payment by the Company, it will acquire good title thereto, free and clear of all liens, restrictions, charges and encumbrances and not subject to any adverse claim or right. The Holder will, upon request, execute and deliver any additional documents deemed by the Depositary Agent or the Company to be necessary or desirable to complete the sale, assignment and transfer of the EFIH Second Lien Notes tendered. All authority conferred or agreed to be conferred by tendering the EFIH Second Lien Notes through book-entry transfer will survive the death or incapacity of the tendering Holder and every obligation of such Holder incurred in connection with its tender of its EFIH Second Lien Notes will be binding upon such Holder's heirs, personal representatives, executors, administrators, successors, assigns, trustees in bankruptcy and other legal representatives.

The Company will not be required to pay for EFIH Second Lien Notes tendered pursuant to the Offer unless those EFIH Second Lien Notes are validly tendered and accepted by the Company for purchase. The Company will have the right to decide whether a tender was made validly and its decision will be final. You should note the following with respect to the Offer:

- If the Company determines you have not validly tendered your EFIH Second Lien Notes, or have not validly complied with the procedures to withdraw EFIH Second Lien Notes previously tendered, you will have to correct the problem in the time period it determines.

- Neither the Company, the Offer Agent nor the Depositary Agent is under any obligation to advise you of any defect in your tender.

- The Company has the right, in its sole discretion, to waive any defect in the tender of EFIH Second Lien Notes, and it may waive a defect with respect to one Holder and not another or with respect to some EFIH Second Lien Notes and not other EFIH Second Lien Notes.

If the Company determines in its sole discretion you have not validly tendered your EFIH Second Lien Notes and it determines in its sole discretion not to waive such defective tender, such EFIH Second Lien Notes will be returned to you at its expense via a credit to the appropriate DTC account promptly following the Expiration Date or the termination of the Offer.

**Holders wishing to participate in the Offer must tender their EFIH Second Lien Notes in accordance with the procedures set forth under this section on or prior to the Expiration Date.**

## ACCEPTANCE OF OUTSTANDING NOTES FOR PURCHASE; PAYMENT FOR EFIH SECOND LIEN NOTES

If the conditions to the Offer are satisfied, or if the Company waives all of the conditions that have not been satisfied, it will accept for purchase, after the Expiration Date, all EFIH Second Lien Notes that, at such time, have been validly tendered (or defectively tendered if it waives any such defect) pursuant to the Offer. The Company will accept the EFIH Second Lien Notes for purchase by notifying the Depositary Agent of its acceptance. The notice may be oral if it promptly confirm it in writing.

If any tendered EFIH Second Lien Notes are not accepted for payment for any reason pursuant to the terms and conditions of the Offer, such EFIH Second Lien Notes will be returned to the tendering Holder via a credit to an account maintained at DTC, designated by the DTC participant who so delivered such EFIH Second Lien Notes to the Depositary Agent, promptly following the Expiration Date or the earlier termination of the Offer.

The Company will pay for EFIH Second Lien Notes that it has accepted for purchase by wiring to DTC on the Settlement Date funds sufficient to pay the full amount of the Total Consideration or Tender Consideration, as applicable and the related Accrued Interest that it owes to the Holders. The Company will not be responsible for any mistakes or delays made by DTC or its participants in distributing the Total Consideration or Tender Consideration, as applicable, and the related Accrued Interest on the EFIH Second Lien Notes to the persons entitled thereto, and no additional accrued interest will be payable because of any such mistake or delay.

The Company intends to accept for purchase promptly following the Expiration Date any and all EFIH Second Lien Notes validly tendered on or prior to the Expiration Date. However, if the conditions to the consummation of the Offer are not satisfied, the Company has the right to retain such EFIH Second Lien Notes without accepting them or without paying for them until the conditions are satisfied. If the Company causes the Depositary Agent to hold such EFIH Second Lien Notes, it must comply with Rule 14e-1 under the Exchange Act, which requires it to pay for all tendered EFIH Second Lien Notes or return the EFIH Second Lien Notes promptly after termination or withdrawal of the Offer.

Subject to approval of the Bankruptcy Court, the Company reserves the right to transfer or assign, in whole at any time or in part from time to time, to one or more of its affiliates, the right to purchase any EFIH Second Lien Notes tendered pursuant to the Offer, but any such transfer or assignment will not relieve the Company of its obligations under the Offer or prejudice the rights of tendering Holders to receive the Total Consideration or Tender Consideration, as applicable, pursuant to the Offer.

Participating Holders of EFIH Second Lien Notes purchased in the Offer will not be obligated to pay brokerage commissions or fees to the Offer Agent, the Depositary Agent or the Company or, except as indicated in the instructions to the Letter of Transmittal, to pay transfer taxes with respect to the purchase of their EFIH Second Lien Notes; however, such Holders may be obligated to pay commissions to their own brokers or other agents. The Company will pay all other reasonable charges and expenses in connection with the Offer. Notwithstanding anything herein to the contrary, the payments to Holders will be made net of any withholding or backup withholding that is required to be imposed pursuant to applicable law. See "Certain United States Federal Income Tax Considerations."

## WITHDRAWAL OF TENDERS

You may not withdraw EFIH Second Lien Notes that you have tendered for purchase at any time, except in certain limited circumstances where withdrawal rights are required by law.  If the Company determines to offer withdrawal rights in accordance with applicable law, including in the event a material change causes the Company to update the information relating to this Offer and extend the Expiration Date, any such withdrawal rights will be limited as set forth in any notice thereof by the Company.

In the event the Company offers withdrawal rights in accordance with applicable law, for a withdrawal of a tender of EFIH Second Lien Notes to be effective, a notice of withdrawal in the form of a "Request Message" transmitted through ATOP must be received by the Depositary Agent prior to the applicable withdrawal deadline.

Any such notice of withdrawal must specify the name and number of the account at DTC to be credited with the withdrawn EFIH Second Lien Notes and otherwise comply with the ATOP procedures. For the avoidance of doubt, any EFIH Second Lien Notes validly withdrawn will be deemed to be not validly tendered for purposes of the Offer.

## CONDITIONS TO THE CONSUMMATION OF THE OFFER

Notwithstanding any other provision of the Offer, the Company's obligation to accept for purchase, and to pay for, any EFIH Second Lien Notes validly tendered pursuant to the Offer is conditioned upon the following having occurred or been satisfied or having been waived by the Company, provided that the Offer will not be completed unless conditions (i) and (ii) below have been satisfied:

(i)    (a) the Company will have obtained an order from the Bankruptcy Court to approve the incurrence of the EFIH Second Lien DIP Notes Financing, which will be in full force and effect and not subject to any stay, (b) all of the conditions to entry into EFIH Second Lien DIP Notes Financing will have been satisfied or will, in the Company's reasonable judgment, be satisfied on or prior to the Settlement Date, and, in its reasonable judgment, the EFIH Second Lien DIP Notes Financing will become effective on the Settlement Date, (c) the Company will have received, or will receive on the Settlement Date, the net proceeds from the EFIH Second Lien DIP Notes Financing and (d) the net proceeds from the EFIH Second Lien DIP Notes Financing will be sufficient together with cash on hand to pay the consideration for all tendered EFIH Second Lien Notes (including Accrued Interest), plus all costs and expenses incurred in connection with the Offer (each of (a), (b), (c) and (d) together constitute the "*Financing Condition*");

(ii)    the Company will have obtained one or more orders from the Bankruptcy Court to approve the EFIH Second Lien Settlement, this Offer and the performance by EFIH and EFIH Finance under the dealer manager agreement between the Company and the Dealer Managers and such order will be in full force and effect and is not subject to any stay, all as further described in the dealer manager agreement (the "*EFIH Second Lien Settlement Approval Condition*"); provided that this condition may not be waived by the Company;

(iii)    the Company will have obtained an order from the Bankruptcy Court to approve the EFIH First Lien DIP Facility and the EFIH First Lien Settlement and such order will be in full force and effect and not subject to any stay (the "*EFIH First Lien Approval Condition*");

(iv)    the Restructuring Support Agreement will be in full force and effect; and

(v)    the following will not have occurred, or if the Company will have become aware of any of the following or if any of the following exists on the date of this Offer to Purchase, it will not have become aware of a material worsening (the "*General Conditions*"):

(a)    any instituted, threatened or pending legal or administrative proceeding or investigation that could, in the Company's reasonable judgment, prohibit, prevent, restrict or delay closing or otherwise adversely affect its ability to close the Offer;

(b)    an order, statute, rule, regulation, executive order, stay, decree, judgment or injunction shall have been proposed, threatened, enacted, entered, issued, promulgated, enforced or deemed applicable by any court or governmental, regulatory or administrative agency or instrumentality that, or the occurrence of any other event that, in each case in the Company's reasonable judgment, (i) prohibits, prevents, restricts or delays the consummation of the Offer or places material restrictions on the Offer, (ii) is, or is likely to be, materially adverse to the business, operations, properties, condition (financial or otherwise), assets, liabilities or prospects of it, its affiliates and its subsidiaries or (iii) otherwise adversely affects its ability to realize the contemplated benefits from the Offer;

(c)    any suspension of trading in securities in the U.S. financial or capital markets;

(d)    any change or development, including a prospective change or development, in the general economic, financial, currency exchange or market conditions in the United States or abroad or, in

the case of any of the foregoing existing on the date hereof, a material acceleration or worsening thereof, that, in the Company's reasonable judgment, has or may likely have a material adverse effect on the market price of the EFIH Second Lien Notes or upon trading in the EFIH Second Lien Notes or the value of the EFIH Second Lien Notes to it, its affiliates or its subsidiaries;

        (e)       any moratorium or other suspension or limitation that, in the Company's reasonable judgment, shall affect the ability of banks to extend credit or receive payments;

        (f)       a material impairment, in the Company's reasonable judgment, in the trading market for debt securities;

        (g)       any limitation (whether or not mandatory) by any government or governmental, administrative or regulatory authority or agency, domestic or foreign, or other event that, in the Company's reasonable judgment, might affect the extension of credit by banks or other lending institutions; or

        (h)       the commencement or escalation of a war or armed hostilities involving the United States (including acts of terrorism) or any other calamity or crisis or any change in political, financial or economic conditions.

The foregoing conditions are for the Company's sole benefit and may be asserted by it, in its sole discretion, in relation to the Offer, regardless of the circumstances giving rise to any such condition (including any action or inaction on its part). Except as noted above, the Company will have the right (but not the obligation) to waive any of the preceding conditions and to consummate the Offer. Neither you nor any other person who tenders EFIH Second Lien Notes for purchase will have the ability to prevent the Company from waiving a condition or will have the ability to withdraw EFIH Second Lien Notes tendered if it waives any of the foregoing conditions. The Company also has the right to determine whether or not any of the conditions were satisfied and to terminate or extend the Offer if any condition of the Offer was not satisfied or otherwise will not be satisfied on or prior to the Settlement Date. Its decision as to whether or not a condition was satisfied will be final and binding, and you will have no right to disagree with its conclusions.

Notwithstanding any other provisions of the Offer, the Company has the right, in its sole discretion, to terminate the Offer at any time and for any reason to the extent it is legally permitted to do so. In such event, it will provide notice by public announcement.

See "Summary of EFIH Second Lien DIP Notes—Conditions to Consummation" for additional information regarding the conditions to the consummation of the EFIH Second Lien DIP Notes Financing.

# SUMMARY OF RESTRUCTURING SUPPORT AGREEMENT

*The following is a summary of the material terms and provisions of the Restructuring Support Agreement. This summary does not purport to be complete and is qualified in its entirety by reference to the text of the Restructuring Support Agreement, including the definitions of certain terms therein that are not otherwise defined in this Offer to Purchase, which is incorporated herein by reference. The Restructuring Support Agreement has been filed with the SEC as an exhibit to our 2013 Form 10-K through Amendment No. 1 on Form 10-K/A filed on May 1, 2014.*

In anticipation of the filing of the Chapter 11 cases, the Reorganizing Entities entered into the Restructuring Support Agreement on April 29, 2014 with the following parties:

- Texas Holdings;

- Texas Energy Future Capital Holdings LLC, a Delaware limited liability company and the general partner of Texas Holdings ("*TEF*" and, together with Texas Holdings, the "*Consenting Interest Holders*");

- certain lenders or investment advisors that manage and/or advise funds or discretionary accounts that hold claims under the Credit Agreement, dated October 10, 2007, by and among TCEH, as borrower, EFCH and certain of TCEH's subsidiaries, as guarantors, and the members of the lending syndicate, including Citibank, N.A., in its capacity as administrative agent and collateral agent, and certain other syndication agents (as amended, modified or otherwise supplemented from time to time, the "*TCEH Credit Agreement*");

- certain holders (the "*Consenting TCEH First Lien Noteholders*") of TCEH and TCEH Finance 11.50% senior secured notes due October 1, 2020 (the "*TCEH First Lien Notes*");

- certain holders (the "*Consenting EFIH First Lien Noteholders*") of the EFIH First Lien Notes;

- certain holders (the "*Consenting EFIH Second Lien Noteholders*") of the EFIH Second Lien Notes;

- certain holders (the "*Consenting EFIH Unsecured Noteholders*") of the EFIH Unsecured Notes; and

- certain holders (the "*Consenting EFH Corp. Unsecured Noteholders*" and, together with the Consenting TCEH First Lien Lenders, the Consenting TCEH First Lien Noteholders, the Consenting EFIH First Lien Noteholders, the Consenting EFIH Second Lien Noteholders and the Consenting EFIH Unsecured Noteholders, the "*Consenting Creditors*") of the EFH Corp. Notes.

Pursuant to the Restructuring Support Agreement, the Consenting Interest Holders and Consenting Creditors agreed, subject to the terms and express conditions contained in the Restructuring Support Agreement, to support the Reorganizing Entities' proposed financial restructuring described in the restructuring term sheet attached as an exhibit to the Restructuring Support Agreement (the "*Term Sheet*"), and further agreed not to transfer any ownership (including any beneficial ownership) in the EFH Corp. Interests, the equity interests in Texas Holdings ("*Texas Holdings Interests*"), the equity interests in TEF ("*TEF Interests*"), the TCEH First Lien Claims, the EFIH First Lien Notes, the EFIH Second Lien Notes, the EFIH Unsecured Notes or the EFH Corp. Unsecured Notes, as applicable, or any other claims against the Reorganizing Entities (the "*Claims*"), except to a transferee that meets specified suitability requirements and agrees to be bound by the Restructuring Support Agreement. Each Consenting Interest Holder and Consenting Creditor also agreed that any additional EFH Corp. Interests, Texas Holdings Interests, TEF Interests, TCEH First Lien Claims, EFIH First Lien Notes, EFIH Second Lien Notes, EFIH Unsecured Notes or EFH Corp. Unsecured Notes that it acquired after executing the Restructuring Support Agreement would automatically and immediately become subject to all the terms of the Restructuring Support Agreement. In accordance with the terms set forth in the Restructuring Support Agreement, the Reorganizing Entities filed the bankruptcy petitions on April 29, 2014.

The Restructuring Support Agreement may be terminated, subject to certain exceptions, if among other things: (i) a plan (the "*Qualified Plan*") in form and substance reasonably satisfactory to (a) certain Consenting Creditors other than the Consenting EFIH Unsecured Noteholders holding more than 50.1% of the claims of the Consenting Creditors, and (b) at least three investment advisors that manage and/or advise funds or accounts that beneficially own, collectively, at least 66.67% of the EFIH Unsecured Note Claims held by all Consenting Creditors at such time and a disclosure statement (the "*Disclosure Statement*") related to the Qualified Plan have not been filed with the Bankruptcy Court by 45 days from the Petition Date; (ii) the Disclosure Statement has not been approved by the Bankruptcy Court by 105 days from the Petition Date; (iii) the Bankruptcy Court has not entered an order confirming a Qualified Plan by 275 days from the Petition Date; (iv) the effective date of the Qualified Plan has not occurred within 30 days from entry of the order confirming a Qualified Plan, it being understood that if all conditions to the Plan Effective Date other than receipt of any applicable regulatory approvals required to consummate the Restructuring Plan and/or the Private Letter Ruling (as defined in the Restructuring Support Agreement) have been satisfied on or before the Initial Outside Date (as defined in the Restructuring Support Agreement), the Initial Outside Date shall be automatically extended by an additional thirty (30) days; (v) the Reorganizing Entities have breached any of their respective representations, warranties, or covenants set forth in the Restructuring Support Agreement that would have a material adverse effect on the Restructuring Transactions; (vi) any governmental authority, including any regulatory authority or court of competent jurisdiction, issues any final, non-appealable ruling or order enjoining the consummation of a material portion of the Restructuring Transactions in a way that cannot be reasonably remedied by the Reorganizing Entities; (vii) an examiner with expanded powers beyond those set forth in section 1106(a)(3) and (4) of the Bankruptcy Code or a receiver is appointed in one or more of the Chapter 11 cases; (viii) the entry of a final order by the Bankruptcy Court or any other court with appropriate jurisdiction that would prevent consummation of the Restructuring Transactions; or (ix) one or more of the Reorganizing Entities' Chapter 11 cases is converted to one under chapter 7 or dismissed. The Restructuring Support Agreement may also be terminated by the mutual written consent of (a) each of the Consenting Interest Holders, (b) Consenting Creditors holding at least 50.1% in aggregate principal amount of each of the TCEH First Lien Claims, the EFIH First Lien Notes, the EFIH Second Lien Notes, and the EFH Unsecured Notes held by all Consenting Creditors at such time, (c) at least three investment advisors that manage and/or advise funds or accounts that beneficially own, collectively, at least 66.67% of the EFIH Unsecured Note Claims held by all Consenting Creditors at such time and (d) the Reorganizing Entities.

The Term Sheet sets forth the material terms of the Restructuring Transactions pursuant to which, in general:

(a)     Holders of the TCEH First Lien Secured Claims will receive their pro rata share of (i) 100% of the equity of Reorganized TCEH, subject to dilution only by the Reorganized TCEH Management Incentive Plan; and (ii) 100% of the net cash proceeds from the issuance of the New Reorganized TCEH Debt.

(b)     Holders of General Unsecured Claims Against the TCEH Debtors (which shall include TCEH First Lien Deficiency Claims, TCEH Second Lien Note Claims, and TCEH Unsecured Note Claims) will receive their pro rata share of the TCEH Unsecured Claim Fund.

(c)     Pursuant to the EFIH First Lien Settlement, RSA EFIH First Lien Note Parties will convert their EFIH First Lien Note Claims to EFIH First Lien DIP Claims in a principal amount equal to the greater of (a) 105% of the principal amount on the EFIH First Lien Notes plus 101% of the accrued and unpaid interest through the closing date of the EFIH First Lien DIP Facility at the non-default rate on such principal (which amount will be deemed to include any original issue price discount on the EFIH First Lien DIP Loans) and (b) 104% of the principal amount of, plus accrued and unpaid interest at the non-default rate on the EFIH First Lien Notes through such closing date as adjusted by the original issue price discount paid on the EFIH First Lien DIP Loans in connection with the initial lenders syndication so the EFIH First Lien DIP Facility.  No RSA EFIH First Lien Note Party will receive any other fees, including commitment fees, paid in respect of the EFIH First Lien DIP Facility and any other Allowed EFIH First Lien Note Claims shall receive their pro rata share of cash in the amount of such claims on the Effective Date or such other treatment (which may include new debt) as permitted under section 1129(b) of the Bankruptcy Code, as mutually agreed by EFIH and the Required EFIH Unsecured Consenting Creditors.

(d)        Pursuant to the EFIH Second Lien Settlement, RSA EFIH Second Lien Note Parties will receive an amount of cash equal to (i) 100% of the principal of, plus accrued and unpaid interest on (including any additional interest payable under registration rights agreements) the principal amount of EFIH Second Lien Notes held by such RSA EFIH Second Lien Note Party at the contract non-default rate on such EFIH Second Lien Notes through the Settlement Date, plus (ii) 50% of the amount of the EFIH Second Lien Makewhole Claims on the principal amount of EFIH Second Lien Notes held by such RSA EFIH Second Lien Note Party calculated as of the Settlement Date.  One RSA EFIH Second Lien Note Party may purchase up to $500 million of EFIH First Lien DIP Loans and receive a 1.75% commitment fee in connection with such purchase.  In addition, certain other RSA EFIH Second Lien Note Parties will receive a settlement premium of $1.57 million in cash in the aggregate.

(e)        The Reorganizing Entities expect to initiate litigation to obtain entry of an order from the Bankruptcy Court disallowing any EFIH Second Lien Makewhole Claim of Non-Settling EFIH Second Lien Note Holders, and Non-Settling EFIH Second Lien Note Holders will receive their pro rata share of cash on hand at EFIH or from the proceeds of the EFIH Second Lien DIP Notes Financing and available cash at EFIH in an amount equal to the principal plus accrued and unpaid interest, through consummation of the EFIH Second Lien DIP Notes Financing, at the non-default rate of such holder's allowed claim (not including any premiums, fees, or Claims relating to the repayment of the EFIH Second Lien Note Claims).  Any other EFIH Second Lien Note Claims allowed shall receive their pro rata share of cash in the amount of such Claims on the Effective Date or such other treatment (which may include new debt) as permitted under section 1129(b) of the Bankruptcy Code, as mutually agreed by EFIH and the Required EFIH Unsecured Consenting Creditors.

(f)        Pursuant to the Backstop Commitment Letter, certain Holders of EFIH Unsecured Note Claims will commit up to $1.9 billion in cash, which shall be utilized to backstop the EFIH Second Lien DIP Notes Financing.  On the Effective Date, EFIH Second Lien DIP Claims shall convert on a pro rata basis to equity of Reorganized EFH Corp. pursuant to the Second Lien Equity Conversion and the terms set forth the Second Lien Equity Conversion Term Sheet attached as Exhibit J to the Restructuring Support Agreement.

(g)        Certain unsecured creditors of EFIH will receive their pro rata share of 91% of the Participation Rights in accordance with the Restructuring Support Agreement;

(h)        Holders of General Unsecured Claims Against EFIH will receive their pro rata share of 98.0% of the Reorganized EFH Corp. common stock, subject to dilution on account of the Second Lien Equity Conversion.

(i)        Holders of General Unsecured Claims Against EFH Corp. will receive their pro rata share of: (i) up to 9% of the Second Lien Equity Conversion in accordance with the Restructuring Support Agreement); (ii) on the Effective Date, 1% of the equity of Reorganized EFH Corp. Common Stock, subject to dilution on account of the Second Lien Equity Conversion; and (iii) on the Effective Date, either:  (A) if the Oncor TSA Amendment has been approved, (1) $55 million in cash from EFIH; provided, however, that if the Oncor tax payments received by EFIH under the Oncor TSA Amendment through the Effective Date are less than 80% of the projected amounts set forth in the Term Sheet, the $55 million shall be reduced dollar-for-dollar by such shortfall, and (2) cash on hand at EFH (not including the settlement payment in clause (1) hereof); or (B) if the Oncor TSA Amendment has not been approved, all EFH assets, including cash on hand and any Causes of Action, but excluding Interests in EFIH.

(j)        Holders of General Unsecured Claims Against EFH Debtors Other Than EFH Corp. shall receive treatment in accordance with the priorities set forth in the Bankruptcy Code.

(k)        Holders of EFH Corp. Interests will receive, on the Effective Date, their pro rata share of 1% of the equity of Reorganized EFH Corp., subject to dilution on account of the Second Lien Equity Conversion.

## SUMMARY OF EFIH SECOND LIEN DIP NOTES

*The following is a summary of the material terms and provisions of the EFIH Second Lien DIP Notes and the related EFIH Second Lien DIP Notes Facility as set forth in a term sheet attached to the Restructuring Support Agreement.  This summary does not purport to be complete and is qualified in its entirety by reference to such term sheet.  The terms of the EFIH Second Lien DIP Notes Facility and any related documentation are still being negotiated and, as a result, the terms as outlined below may be modified during and after the consummation of the Offer up to the Expiration Date, the final, definitive terms may differ from those described below and any such differences may be material.*

Issuer ............................................ EFIH and EFIH Finance.

Guarantors ................................... Each direct and indirect wholly owned domestic restricted subsidiary of the Company formed or acquired after the closing date of the EFIH Second Lien DIP Notes Financing.  There will be no guarantors on the closing date of the EFIH Second Lien DIP Notes Financing.

Securities Offered ........................ $1.9 billion aggregate principal amount in three tranches of 8% Convertible Second Lien Subordinated Secured DIP Financing Tranche A Notes due 2016.

Automatic Conversion ................. The EFIH Second Lien DIP Notes, subject to certain conditions, will automatically convert on the Effective Date into shares of Reorganized EFH Corp. common stock constituting approximately 64% of the shares of common stock of Reorganized EFH Corp. subject to adjustment based on the principal amount of EFIH Second Lien DIP Notes Financing.

Also on the Effective Date, General Unsecured Claims Against EFIH, General Unsecured Claims Against EFH Corp., and EFH Corp. Interests will be released and canceled.  In full satisfaction of such claims and interests, (i) each holder of General Unsecured Claims Against EFIH will receive its pro rata share (calculated as the aggregate principal amount of such General Unsecured Claims Against EFIH held by such holder divided by the total amount of General Unsecured Claims Against EFIH) of 98.0% of the shares of common stock of Reorganized EFH Corp. (subject to dilution by the Second Lien Equity Conversion), (ii) each Holder of General Unsecured Claims Against EFH Corp. will receive its pro rata share (calculated as the amount of General Unsecured Claims Against EFH Corp. held by such holder divided by the total amount of General Unsecured Claims Against EFH Corp.) of 1.0% of the shares of common stock of Reorganized EFH Corp. (subject to dilution by the Second Lien Equity Conversion), and (iii) each Holder of EFH Corp. Interests will receive its pro rata share (calculated as the number of shares of EFH Corp. common stock held by such holder divided by the total outstanding shares of EFH Corp. common stock) of 1.0% of the shares of common stock of Reorganized EFH Corp (subject to dilution by the Second Lien Equity Conversion).

Maturity Date .............................. The date that is the earliest to occur of (i) the 24-month anniversary of the closing date of the EFIH Second Lien DIP Notes Financing, (ii) the Effective Date, (iii) the consummation of a sale of substantially all of the Borrowers' assets or stock under section 363 of the Bankruptcy Code or (iv) the acceleration of the EFIH Second Lien DIP Notes and termination of any then outstanding commitments in accordance with the terms of the EFIH Second Lien DIP Notes Financing.

| | |
|---|---|
| Interest Rate | The EFIH Second Lien DIP Tranche A-1 Notes, the EFIH Second Lien DIP Tranche A-2 Notes and the EFIH Second Lien DIP Tranche A-3 Notes (collectively, the "*EFIH Second Lien DIP Tranche A Notes*") will accrue interest at the rate of 8% per annum from the closing date of the EFIH Second Lien DIP Notes Financing. |
| | If the Bankruptcy Court does not approve the Oncor TSA Amendment within 90 days after the commencement of the Chapter 11 cases, or July 28, 2014, the interest rate on the EFIH Second Lien DIP Tranche A Notes will increase by 4.0%, with such additional interest to be paid in kind and compounded quarterly until such approval is received from the Bankruptcy Court.  If the Bankruptcy Court does not approve the Oncor TSA Amendment by April 29, 2015, each holder of EFIH Second Lien DIP Notes will receive its pro rata share of additional EFIH Second Lien DIP Notes equal to 10.0% of the then outstanding EFIH Second Lien DIP Notes. |
| Interest Payment Dates | Interest will be payable on the final business day of each fiscal quarter, beginning on the final business day of the fiscal quarter following the closing date of the EFIH Second Lien DIP Notes Financing. |
| Default Interest | During the continuance of an event of default (as defined in the EFIH Second Lien DIP Notes Facility), overdue amounts on the EFIH Second Lien DIP Notes will bear interest at an additional 2% per annum. |
| Optional Prepayment | The Issuer may prepay the EFIH Second Lien DIP Notes subject to customary notice periods and a prepayment fee of $380 million (which payment may be waived upon the written consent of three or more investment advisors that manage and/or advise funds or discretionary accounts holding at least 50.1% of the outstanding commitments and/or exposure under the EFIH Second Lien DIP Notes Financing (the "*Required Note Purchasers*") in their sole discretion; provided, however, that the Required Note Purchasers may not waive such prepayment fee with respect to the EFIH Second Lien DIP Tranche A-3 Notes). |
| Ranking | The EFIH Second Lien DIP Notes will be: |

- subordinated obligations of the Issuer and rank junior in right of payment with the EFIH First Lien DIP;

- subject to the "carve out," the liens securing the amounts owed under the EFIH Second Lien DIP Notes will prime and be senior to the liens securing the Issuer's obligations under all of its existing indebtedness, other than the EFIH First Lien DIP Facility and certain permitted liens;

- secured on a second-priority basis by a lien on the Collateral;

- effectively senior to all unsecured debt of EFIH to the extent of the value of the Collateral (after taking into account, subject to the carve-out, any first-priority liens on the Collateral, including the liens on the Collateral under the EFIH First Lien DIP Facility and certain permitted liens;

- subordinated to EFIH's obligations under the EFIH First Lien DIP Facility, certain permitted liens and any other future debt subject to first-priority liens on the Collateral, to the extent of the value of the Collateral; and

- structurally subordinated to all existing and future debt and other liabilities of EFIH's subsidiaries (other than EFIH Finance), including Oncor

Holdings and its subsidiaries, any of EFIH's future foreign subsidiaries and any other subsidiaries that do not provide a guarantee of the EFIH Second Lien DIP Notes Facility.

Security and Priority .................... The EFIH Second Lien DIP Notes are secured on a second-priority priming basis by EFIH's grant of a lien on the Collateral securing the EFIH First Lien DIP Facility, including all of the membership interests and other investments it owns or holds in Oncor Holdings.

The liens securing the amounts owed under the EFIH Second Lien DIP Notes will prime any obligations under the Issuer's pre-petition indebtedness, including the pre-petition on second lien notes. All obligations under the EFIH Second Lien DIP Notes will constitute allowed super-priority administrative expense claims with priority under section 364(c)(1) of the Bankruptcy Code over all other administrative expense claims in the Chapter 11 cases, subject to the carve-out, junior only to the super-priority administrative expense claims under the EFIH First Lien DIP Facility and certain permitted liens.

The EFIH Second Lien DIP Notes will be subject to an intercreditor agreement, which includes, among other things, customary payment block and standstill provisions (the "*Intercreditor Agreement*"), a copy of which will be made available at http://www.efhcaseinfo.com.

Representations and Warranties .. Customary representations and warranties (subject to usual exceptions and materiality qualifiers).

Covenants ..................................... Customary affirmative and negative covenants (subject to baskets and materiality exceptions), consistent with those found in the EFIH First Lien DIP Facility including the following covenants:

- covenants restricting intercompany loans or investments by or to the Company or its guarantor subsidiaries to or by other subsidiaries;

- covenants restricting liens, investments, sale leasebacks, restricted payments, asset sales, transactions with affiliates, events and actions in the bankruptcy proceeding and indebtedness, subject to certain baskets; and

- a financial covenant requiring the Borrowers to have unrestricted cash in excess of $127.5 million at all times.

Events of Default ......................... The EFIH Second Lien DIP Notes Facility will contain Events of Default (other than cross default to material postpetition indebtedness, but will include a cross acceleration to material post-petition indebtedness), subject to materiality exceptions and qualifications and grace periods, consistent with those found in the EFIH First Lien DIP Facility, subject to a 15% cushion.

Conditions to Consummation ...... The EFIH Second Lien DIP Notes Facility will contain certain conditions to consummation including the following:

- *Final Order*. The Final Order shall be in full force and effect.

- *Second Lien Refinancing*. The second lien obligations shall have been contemporaneously refinanced.

- *Security*. Subject to the intercreditor agreement, all of the outstanding equity

of EFIH Finance and Oncor shall have been pledged to the collateral agent pursuant to Final Order. The administrative agent shall have received UCC-1 financing statements in proper form for filing;

- *Customary Deliverables.* The administrative agent shall have received customary legal opinions, officer certificates, resolutions and evidence of required government consents.

- *Credit Documents.* The note documents shall have been executed by the Issuers, administrative agent and purchasers.

- *Initial Budget.* The Company's initial budget shall have been delivered.

- *Patriot Act.* The Borrowers shall have satisfied "know your customer" and patriot act requests.

- *No Default.* No default or event of default under the EFIH First Lien DIP Facility shall exist and all representations and warranties therein shall be true and correct in all material respects (or in all respects for representations and warranties qualified by materiality or Material Adverse Event).

- *Fees and Expenses.* All applicable fees and expenses owed to the holders of the EFIH Second Lien DIP Notes under the Restructuring Support Agreement, Backstop Commitment Letter and the EFIH Second Lien DIP Notes Facility shall have been paid.

- *Restructuring Support Agreement.* The Restructuring Support Agreement shall be in full force and effect, and the Issuer shall be in compliance with the Restructuring Support Agreement in all material respects as of the closing date of the EFIH Second Lien DIP Notes Financing.

- *EFIH First Lien DIP Facility.* Substantially concurrently with the closing, proceeds of the EFIH First Lien DIP Facility, which shall be on the terms set forth in the Restructuring Support Agreement and the aggregate principal amount under the EFIH First Lien DIP Facility shall not exceed $5,400,000,000 (with such changes that are not materially adverse to the purchasers) shall have been used (together with cash on hand) to (i) repay in full all outstanding principal plus accrued and unpaid interest at the non-default rate due and owing under the EFIH First Lien Notes (which shall not include any alleged premiums, fees or claims relating to the repayment of such Claims) to Non-Settling EFIH First Lien Note Holders and (ii) repay the EFIH First Lien Notes held by Settling EFIH First Lien Noteholders in accordance with the EFIH First Lien Settlement and no default under the EFIH First Lien DIP Facility is then existing.

- *Material Adverse Event.* No Material Adverse Event shall have occurred.

Transfer Restrictions ................... The Issuer will not register the EFIH Second Lien DIP Notes under the Securities Act or any state or other securities laws. The EFIH Second Lien DIP Notes will be subject to restrictions on transfer and may only be offered or sold in accordance with the terms of the EFIH Second Lien DIP Notes Facility and in transactions exempt from, or not subject to, the registration requirements of the Securities Act or pursuant to an effective registration statement.

## CERTAIN UNITED STATES FEDERAL INCOME TAX CONSIDERATIONS

The following summary describes certain United States federal income tax consequences to a beneficial owner of EFIH Second Lien Notes of the sale of EFIH Second Lien Notes pursuant to the Offer. This discussion is general in nature, and does not discuss all aspects of United States federal income taxation that may be relevant to a beneficial owner of EFIH Second Lien Notes in light of its particular circumstances. In addition, the discussion does not describe any tax consequences arising under the laws of any local, state or foreign jurisdiction, and does not consider the impact of the Medicare contribution tax on net investment income or any aspects of United States federal tax law (such as estate or gift tax laws) other than income taxation. The discussion deals only with EFIH Second Lien Notes held as capital assets within the meaning of section 1221 of the Code (generally, property held for investment), and does not address tax considerations applicable to Holders that may be subject to special tax rules, such as dealers or traders in securities, banks and other financial institutions, tax-exempt entities, retirement plans and other tax-deferred accounts, regulated investment companies, insurance companies, hybrid entities, real estate investment trusts, brokers, persons subject to the alternative minimum tax, investors that have elected mark to market accounting, S corporations, partnerships or other pass-through entities (or investors in such entities), persons holding EFIH Second Lien Notes as a part of a hedging, integration, conversion or constructive sale transaction, or as part of a straddle or a synthetic security, expatriates, controlled foreign corporations, passive foreign investment companies, corporations that accumulate earnings to avoid United States federal income tax or Holders who received the EFIH Second Lien Notes as compensation. This summary also does not address tax consequences to United States Holders (as defined below) as a result of the use of a "functional currency" that is not the United States dollar.

This summary does not address the United States federal income tax consequences of the Offer to a Holder that is treated as a partnership for United States federal income tax purposes. If an entity treated as a partnership for United States federal income tax purposes holds EFIH Second Lien Notes, the tax treatment of a partner in the partnership will generally depend on the status of the partner and the activities of the partnership. If you are a partner in a partnership holding the EFIH Second Lien Notes, then you should consult an independent tax advisor.

This summary is based on the Code, the Treasury regulations promulgated thereunder (the "*Treasury Regulations*"), administrative pronouncements and judicial decisions as of the date hereof, all of which are subject to change or differing interpretations at any time, with possible retroactive effect. We have not sought, and do not intend to seek, any ruling from the IRS with respect to the statements made and the conclusions reached in the following summary, and no assurance can be given that the IRS will agree with the views expressed herein, or that a court will not sustain any challenge by the IRS in the event of litigation.

The discussion set out below for general purposes only is intended only as a summary of certain United States federal income tax consequences to a beneficial owner of EFIH Second Lien Notes and is not intended to be, and should not be construed to be, tax advice. Persons considering tendering EFIH Second Lien Notes should consult their own tax advisors concerning the United States federal income tax consequences of doing so in light of their particular situations, as well as any consequences arising under the laws of any other taxing jurisdiction.

**TREASURY CIRCULAR 230 DISCLOSURE: ANY STATEMENT HEREIN REGARDING ANY UNITED STATES FEDERAL TAX IS NOT INTENDED OR WRITTEN TO BE USED, AND CANNOT BE USED, BY ANY TAXPAYER FOR THE PURPOSE OF AVOIDING ANY PENALTIES THAT MAY BE IMPOSED UNDER THE CODE. THE STATEMENTS CONTAINED HEREIN WERE WRITTEN IN CONNECTION WITH THE MARKETING OR PROMOTION OF THE TRANSACTIONS OR MATTERS ADDRESSED HEREIN. YOU SHOULD SEEK ADVICE BASED ON YOUR PARTICULAR CIRCUMSTANCES FROM AN INDEPENDENT TAX ADVISOR.**

### Treatment of Tendering United States Holders

As used herein, a "United States Holder" means a beneficial owner of EFIH Second Lien Notes that is, for United States federal income tax purposes, (i) an individual who is a citizen or resident of the United States, (ii) a corporation that was created or organized in or under the laws of the United States, any state thereof or the District of Columbia, (iii) an estate the income of which is subject to United States federal income taxation regardless of its source or (iv) a trust if (a) it is subject to the primary supervision of a court within the United States and one or more

United States persons have the authority to control all substantial decisions of the trust or (b) in the case of a trust that was treated as a domestic trust under the law in effect before 1997, it has a valid election in effect under applicable Treasury Regulations to be treated as a United States person.

*Sale of the EFIH Second Lien Notes*. For United States federal income tax purposes, the sale of EFIH Second Lien Notes pursuant to the Offer will be a taxable transaction to a United States Holder. Subject to the discussions under "—Accrued Stated Interest" and "—Market Discount" below, a United States Holder generally will recognize capital gain or loss upon the sale of EFIH Second Lien Notes in an amount equal to the difference, if any, between (x) the amount of cash received on the sale, other than amounts attributable to accrued and unpaid stated interest (which will be taxable as described under "—Accrued Stated Interest" below), and (y) such United States Holder's adjusted tax basis in the EFIH Second Lien Note at the time of the disposition. Any capital gain or loss generally will be long-term capital gain or loss if the United States Holder has held the EFIH Second Lien Note for more than one year at the time of the sale. Noncorporate United States Holders generally are subject to reduced rates of United States federal income taxation on long-term capital gains. The deductibility of capital losses is subject to certain limitations.

A United States Holder's adjusted tax basis in EFIH Second Lien Notes generally will equal the cost of the EFIH Second Lien Note to the United States Holder, increased by any original issue discount ("*OID*") previously included in income by the United States Holder and decreased by any amortized bond premium or acquisition premium in respect of the EFIH Second Lien Note which has been previously taken into account. In addition, if a United States Holder has elected to include market discount in income as it accrues (as described below), then the United States Holder's tax basis in EFIH Second Lien Notes will be increased by any market discount previously included in gross income.

*Accrued Stated Interest*. Any amounts received by a United States Holder upon the sale of EFIH Second Lien Notes that are attributable to accrued and unpaid stated interest will be taxable to the United States Holder as ordinary interest income, to the extent that such stated interest has not been previously included in income.

*Market Discount*. Gain recognized by a tendering United States Holder will be treated as ordinary income to the extent of any market discount on the EFIH Second Lien Notes that has accrued during the period that the tendering United States Holder held the tendered EFIH Second Lien Notes, unless the United States Holder previously made an election to include market discount in income as it accrued. A EFIH Second Lien Note generally will be treated as having market discount if the stated principal amount (or, in the case of a EFIH Second Lien Note with OID, the revised issue price) of the EFIH Second Lien Note at the time that the United States Holder acquired the EFIH Second Lien Note exceeded the United States Holder's tax basis in that EFIH Second Lien Note by more than a statutorily defined de minimis amount. Market discount accrues on a ratable basis, unless the United States Holder has elected to accrue market discount using a constant yield method.

*Early Participation Consideration*. There are no authorities directly addressing the United States federal income tax treatment of the Early Participation Consideration received by United States Holders who tender on or prior to the Early Participation Date. We intend to treat the Early Participation Consideration as part of the consideration for the EFIH Second Lien Notes, and this disclosure assumes such treatment. The IRS may take the position, however, that an Early Participation Consideration may be treated as the receipt of a separate payment in the nature of a fee paid for the United States Holder's early participation in the Offer, and in such instance, the separate payment or fee would be subject to tax as ordinary income. United States Holders should consult their tax advisors as to the proper treatment of an Early Participation Consideration.

*Backup Withholding and Information Reporting*. In general, we and certain intermediate payors may be required to report certain information to the IRS with respect to payments of the consideration paid for the sale of EFIH Second Lien Notes to a noncorporate United States Holder. The payor (which may be us or an intermediate payor) will be required to impose backup withholding, currently at a rate of 28%, if (1) the payee fails to furnish a taxpayer identification number ("*TIN*") to the payor or to establish an exemption from backup withholding, (ii) the IRS notifies the payor that the TIN furnished by the payee is incorrect, (iii) there has been a notified payee underreporting described in section 3406(c) of the Code, or (iv) the payee has not certified under penalties of perjury that is has furnished a correct TIN and that the IRS has not notified the payee that it is subject to backup withholding under the Code. Backup withholding is not an additional tax. Any amounts withheld under the backup withholding

rules from a payment to a United States Holder will be allowed as a credit against the Holder's United States federal income tax liability and may entitle the holder to a refund, provided that the required information is timely furnished to the IRS.

**Treatment of Tendering Non-United States Holders**

As used herein, the term "non-United States Holder" means a beneficial owner of EFIH Second Lien Notes that is, for United States federal income tax purposes, an individual, corporation, estate or trust and is not a United States Holder.

*Sale of the EFIH Second Lien Notes*.  Subject to the discussions under "—Accrued Interest" and "—Information Reporting and Backup Withholding" below, a non-United States Holder generally will not be subject to United States federal income or withholding tax on any gain realized on the sale of EFIH Second Lien Notes, unless (i) the non-United States Holder is an individual who was present in the United States for 183 days or more in the taxable year of the sale and certain other conditions are met or (ii) such gain is effectively connected with such non-United States Holder's conduct of a trade or business within the United States.  If the first exception applies, such individual generally will be subject to United States federal income tax at a flat rate of 30% (unless a lower applicable income tax treaty rate applies) on such gain (net of certain U.S. source losses).  If the second exception applies, the non-United States Holder generally will be subject to U.S. federal income tax with respect to such gain at graduated rates on a net income basis in the same manner as a United States Holder, unless otherwise provided in an applicable income tax treaty, and a non-United States Holder that is a corporation for U.S. federal income tax purposes might also be subject to a branch profits tax with respect to its effectively connected earnings and profits attributable to such gain at a rate of 30% (or at a reduced rate under an applicable income tax treaty).

*Accrued Interest*.  Subject to the discussion under "—Information Reporting and Backup Withholding" below, amounts paid pursuant to the Offer that are allocable to accrued and unpaid interest (including any OID) on the EFIH Second Lien Notes will not be subject to United States federal income or withholding tax, provided that:

(i)  such interest is not effectively connected with the non-United States Holder's conduct of a trade or business within the United States;

(ii)  the non-United States Holder does not actually or constructively own 10% or more of the total combined voting power of all classes of the stock of the EFH Corp. entitled to vote;

(iii)  the non-United States Holder is not a controlled foreign corporation related to EFH Corp., actually or constructively, within the meaning of the Code;

(iv)  the non-United States Holder is not a bank receiving interest on a loan agreement entered into in the ordinary course of its trade or business; and

(v)  either:

o  the non-United States Holder certifies under penalties of perjury on IRS Form W-8BEN (or other applicable form) that it is not a "United States person," as defined in the Code, and provides its name and address; or

o  a securities clearing organization, bank or other financial institution that holds customers' securities in the ordinary course of its trade or business and holds the EFIH Second Lien Note on behalf of the non-United States Holder certifies under penalties of perjury that such a statement has been received from the non-United States Holder (or an intermediate organization, bank or institution) and furnishes a copy to us, along with certain other information.

If the non-United States Holder cannot satisfy the requirements described above, then payments attributable to accrued and unpaid interest made to such Holder generally will be subject to United States withholding tax at a rate of 30%, unless the Holder provides us or our agent with a properly executed IRS Form W-8BEN (or other

applicable form) establishing an exemption from, or reduction of, the withholding tax under an applicable income tax treaty.

If the interest on the EFIH Second Lien Notes is effectively connected with a United States trade or business conducted by the non-United States Holder, the non-United States Holder will be required to pay U.S. federal income tax on that interest on a net income basis generally in the same manner as a United States Holder unless an applicable income tax treaty provides otherwise (and the 30% United States withholding tax described above will not apply, provided the appropriate statement is provided to us or our paying agent). If a non-United States Holder is eligible for the benefits of any income tax treaty between the United States and its country of residence, any interest income that is effectively connected will be subject to U.S. federal income tax in the manner specified by the income tax treaty and will generally be subject to U.S. federal income tax only if such income is attributable to a permanent establishment or a fixed base maintained by the non-United States Holder in the United States and the non-United States Holder claims the benefit of the income tax treaty by providing an appropriate IRS Form W-8 (or a suitable substitute or successor form or such other form as the IRS may prescribe) that has been properly completed and duly executed. In addition, a corporate non-United States Holder may also, under certain circumstances, be subject to an additional "branch profits tax" at a 30% rate, or, if applicable, a lower income tax treaty rate, on its effectively connected earnings and profits attributable to such interest.

*Early Participation Consideration.* As discussed above under "—Treatment of Tendering United States Holders—Early Participation Consideration," we intend to take the position that the Early Participation Consideration received in the Offer as part of the consideration for the EFIH Second Lien Notes, and this disclosure assumes such treatment. The IRS may take the position, however, that the Early Participation Consideration instead should be treated as a separate payment or fee that could be subject to the 30% United States federal withholding tax.

*Information Reporting and Backup Withholding.* Rules relating to information reporting requirements and backup withholding with respect to the sale of EFIH Second Lien Notes are as follows:

- If the proceeds are paid to or through the United States office of a broker, a non-United States Holder generally will be subject to backup withholding and information reporting unless the non-United States Holder certifies under penalties of perjury that it is not a United States person (usually on IRS Form W-8BEN) or otherwise establishes an exemption.

- If the proceeds are paid to or through a non-United States office of a broker that is not a United States person and does not have one of certain specified United States connections, a non-United States Holder generally will not be subject to backup withholding or information reporting.

- If the proceeds are paid to or through a non-United States office of a broker that is a United States person or that has one of the specified connections, a non-United States Holder generally will be subject to information reporting (but generally not backup withholding), unless the non-United States Holder certifies under penalties of perjury that it is not a United States person (usually on IRS Form W-8BEN) or otherwise establishes an exemption.

Any amounts withheld under the backup withholding rules will be allowed as refund or credit against the non-United States Holder's United States federal income tax liability, provided that the required information is timely furnished to the IRS.

**Treatment of Non-Tendering Holders**

A United States or non-United States Holder that does not tender its EFIH Second Lien Notes will not realize gain or loss for United States federal income tax purposes and such Holder would continue to have the same tax basis, holding period and accrued market discount (if any) with respect to the retained EFIH Second Lien Notes. The law is unclear as to the United States federal income tax consequences to a Non-Settling EFIH Second Lien Note Holder who receives cash and retains an interest in the EFIH Second Lien Makewhole Claims with respect to such holder's EFIH Second Lien Notes. The tax consequences depend on a number of factors, including the timing

of the resolution of the EFIH Second Lien Makewhole Claims. You should consult your own tax advisors regarding the consequences of not participating in the Offer.

   **THE FOREGOING SUMMARY DOES NOT DISCUSS ALL ASPECTS OF UNITED STATES FEDERAL INCOME TAXATION THAT MAY BE RELEVANT TO PARTICULAR HOLDERS OF NOTES IN LIGHT OF THEIR CIRCUMSTANCES.  HOLDERS OF NOTES SHOULD CONSULT THEIR OWN TAX ADVISORS AS TO THE PARTICULAR TAX CONSEQUENCES TO THEM OF THE OFFER, INCLUDING THE EFFECT OF ANY FEDERAL, STATE, LOCAL, FOREIGN OR OTHER TAX LAWS.**

## OFFER AGENT; DEPOSITARY AGENT; DEALER MANAGERS

**Offer Agent**

Epiq Systems has been appointed the Offer Agent for the Offer. All deliveries and correspondence sent to the Offer Agent should be directed to the address set forth on the back cover of this Offer to Purchase.

**Depositary Agent**

Epiq Systems has also been appointed Depositary Agent for the Offer. All deliveries and correspondence sent to the Depositary Agent should be directed in accordance with the instructions set forth in the Letter of Transmittal that will be delivered to Holders or their nominees.

The Company will pay brokerage houses and other custodians, nominees and fiduciaries the reasonable out-of-pocket expenses incurred by them in forwarding copies of this Offer to Purchase and related documents to the beneficial owners of the EFIH Second Lien Notes and in handling or forwarding tenders of EFIH Second Lien Notes for the Offer by their customers. The Company will also pay the Depositary Agent reasonable and customary fees for its services and will reimburse the Depositary Agent for its reasonable out-of-pocket expenses (including reasonable counsel fees and expenses) in connection with the Offer.

**Dealer Managers**

The Company has retained Citigroup Global Markets Inc., Deutsche Bank Securities Inc., Merrill Lynch, Pierce, Fenner & Smith Incorporated, Morgan Stanley & Co. LLC, Barclays Capital Inc., RBC Capital Markets, LLC, Mitsubishi UFJ Securities (USA), Inc. and Evercore Group L.L.C.to act as the Dealer Managers in connection with the Offer. The Company will reimburse the Dealer Managers for certain reasonable expenses. The obligation of the Dealer Managers to perform such function is subject to certain conditions. The Company has agreed to indemnify the Dealer Managers against certain liabilities, including liabilities under the federal securities laws.

From time to time the Dealer Managers and their affiliates have provided, and may in the future provide from time to time, investment banking and commercial banking services and financial advisory services to us for which they have in the past received, and may in the future receive, customary fees.

In addition, the Dealer Managers and certain of their affiliates (other than Evercore) are commitment parties under the First Lien Commitment Letter. As described above, the commitments under the First Lien Commitment Letter are reduced by, among other things, holders of EFIH First Lien Notes agreeing to exchange such notes for commitments under the EFIH First Lien DIP Facility, including under the EFIH First Lien Exchange Offer. Any such reduction in commitments that occurs on or before May 19, 2014 will reduce the fees earned by the commitment parties under the First Lien Commitment Letter. Deutsche Bank Securities Inc. is acting as Left Lead DIP Facility Arranger for the EFIH First Lien DIP Facility and an affiliate of Deutsche Bank Securities Inc. will act as the Administrative Agent for the EFIH First Lien DIP Facility. The other Dealer Managers (other than Evercore) are acting as Joint Lead Arrangers for the EFIH First Lien DIP Facility. The Dealer Managers and their affiliates (other than Evercore) may have additional roles under the EFIH First Lien DIP Facility or otherwise in connection with the Restructuring Plan.

The Dealer Managers or their affiliates (other than Evercore) are also acting as joint lead arrangers for the proposed debtor-in-possession, or DIP, facility for TCEH and may have additional roles in the restructuring of TCEH or other affiliates of EFH Corp. The Dealer Managers are also acting as dealer managers in connection with the EFIH First Lien Exchange Offer.

In the ordinary course of their respective businesses, the Dealer Managers and their affiliates may at any time hold long or short positions, and may trade for their own accounts or the accounts of customers, in securities of the Company and its affiliates, including any of the EFIH Second Lien Notes. To the extent that the Dealer Managers or their affiliates own EFIH Second Lien Notes during the Offer, they may tender such notes pursuant to the terms of the Offer.

## MISCELLANEOUS

In connection with the Offer, the Company's directors and officers may solicit tenders by use of the mails, personally or by telephone, facsimile, telegram, electronic communication or other similar methods. These directors and officers will not be specifically compensated for these services. The Company will pay brokerage houses and other custodians, nominees and fiduciaries the reasonable out-of-pocket expenses incurred by them in forwarding copies of this Offer to Purchase and related documents to the beneficial owners of the EFIH Second Lien Notes and in handling or forwarding tenders of EFIH Second Lien Notes by their customers.

The Offer is being made to all Holders of EFIH Second Lien Notes. The Company is not aware of any jurisdiction in which the Offer is not in compliance with applicable law. If the Company becomes aware of any jurisdiction in which the Offer would not be in compliance with applicable law, the Company will make a good faith effort to comply with any such law. If, after such good faith effort, the Company cannot comply with any such law, the Offer will not be offered to (nor will tenders of EFIH Second Lien Notes be accepted from or on behalf of) the owners of EFIH Second Lien Notes residing in such jurisdiction.

None of the Company, the Dealer Managers, the Offer Agent or Depositary Agent have authorized any other person to provide you with any information other than that contained or incorporated by reference in this Offer to Purchase or in the Letter of Transmittal.  The Company does not take any responsibility for, and can provide no assurance as to the reliability of, any other information that other persons may give you.

None of the Company, the Dealer Managers, the Offer Agent, the Depositary Agent, the Trustee, the Collateral Trustee or any of its or their respective affiliates makes any recommendation to any Holder as to whether to tender EFIH Second Lien Notes. Holders of EFIH Second Lien Notes must make their own decision as to whether to tender EFIH Second Lien Notes.

*The Offer Agent and the Depositary Agent for the Offer is:*

**EPIQ SYSTEMS**



| *By Registered, Certified or Express mail or Overnight Courier Service* | *By Electronic Mail in a Portable Document Format (a "pdf file")* |
|---|---|
| EFIH Second Lien Offer Processing c/o Epiq Systems 757 Third Avenue, 3rd Floor New York, NY 10017 Telephone:  (646) 282-2500 Toll Free: (866) 734-9393 (ask for the Solicitation Group) | E-Mail Address: tabulation@epiqsystems.com With reference to "EFIH Second Lien" in the subject line |

Any questions regarding the terms of the Offer may be directed to the Dealer Managers or Offer Agent, and requests for additional copies of documentation related to the Offer, requests for copies of the Indentures and any questions or requests for assistance in tendering may also be directed to the Offer Agent. Holders of EFIH Second Lien Notes may also contact their brokers, dealers, commercial banks or trust companies for assistance concerning the Offer.

*The Dealer Managers for the Offer are:*

| **CITIGROUP** | **DEUTSCHE BANK SECURITIES** | **BofA MERRILL LYNCH** |
|---|---|---|
| 390 Greenwich Street, 1st Floor New York, NY 10013 Call Collect: (212) 723-6106 Toll Free:  (800) 558-3745 Attn:  Liability Management Group | 60 Wall Street, 2nd Floor New York, NY 10005 Call Collect: (212) 250-7527 Toll Free: (855) 287-1922 Attn: Liability Management Group | 214 N. Tryon Street, 21st Floor Charlotte, NC 28255 Call Collect: (646) 855-2464 Toll Free:  (888) 292-0070 Attn:  Liability Management Group |
| **MORGAN STANLEY** | **BARCLAYS** | **RBC CAPITAL MARKETS** |
| 1585 Broadway New York, NY 10036 Call Collect: (212) 761-1057 Toll Free: (800) 624-1808 Attn: Liability Management Group | 745 Seventh Avenue, 5th Floor New York, NY 10019 Telephone:  (212) 528-7581 Toll Free: (800) 438-3242 Attn: Liability Management Group | 3 World Financial Center 200 Vesey Street, 8th Floor New York, NY 10281 Call Collect: (212) 618-7822 Toll Free:  (877) 381-2099 Attn:  Liability Management |

| **MITSUBISHI UFJ SECURITIES** | **EVERCORE** |
|---|---|
| 1633 Broadway, 29th Floor New York, NY 10019-6708 Call Collect:  (212) 405-7481 Toll Free:  (877) 744-4532 Attn:  Liability Management Group | 55 East 52nd Street New York, New York 10055 Call Collect:  (212) 857-3100 Toll Free:  (888) 387-2673 Attn:  Chuck McMullan and Jeremy Matican |

# LETTER OF TRANSMITTAL

**for**

**Offer to Purchase for Cash Any and All of the Outstanding Securities Listed Below**

**11% Senior Secured Second Lien Notes due 2021**
**(CUSIP No. 29269QAB3)**
**and**
**11.750% Senior Secured Second Lien Notes due 2022**
**(CUSIP Nos. 29269QAD9 and U29197AB3)**

of

# ENERGY FUTURE INTERMEDIATE HOLDING COMPANY LLC
# EFIH FINANCE INC.

**Pursuant to the Offer to Purchase**
**Dated May 9, 2014**

---

**THE OFFER WILL EXPIRE AT 11:59 P.M., NEW YORK CITY TIME, ON JUNE 6, 2014, UNLESS EXTENDED OR EARLIER TERMINATED BY THE COMPANY IN ITS SOLE DISCRETION AS DESCRIBED IN THE OFFER TO PURCHASE (THE "EXPIRATION DATE"). IN ORDER TO RECEIVE THE TOTAL CONSIDERATION, HOLDERS MUST TENDER THEIR EFIH SECOND LIEN NOTES ON OR PRIOR TO 5:00 P.M., NEW YORK CITY TIME, ON MAY 23, 2014, UNLESS EXTENDED AT THE SOLE DISCRETION OF THE COMPANY (THE "EARLY PARTICIPATION DATE"). HOLDERS MUST VALIDLY TENDER THEIR NOTES PRIOR TO THE EXPIRATION DATE IN ORDER TO RECEIVE THE TENDER CONSIDERATION.**

---

*The Offer Agent and the Depositary Agent for the Offer is:*

# EPIQ SYSTEMS



| *By Registered, Certified or Express mail or Overnight Courier Service* | *By Electronic Mail in a Portable Document Format (a "pdf file")* |
|---|---|
| EFIH Second Lien Offer Processing c/o Epiq Systems 757 Third Avenue, 3rd Floor New York, NY 10017 Telephone: (646) 282-2500 Toll Free: (866) 734-9393 (ask for the Solicitation Group) | E-Mail Address: tabulation@epiqsystems.com With reference to "EFIH Second Lien" in the subject line |

All terms used herein and not defined herein have the respective meanings ascribed to them in the Offer to Purchase, dated May 9, 2014, of Energy Future Intermediate Holding Company LLC ("*EFIH*") and EFIH Finance Inc. ("*EFIH Finance*" and, together with EFIH, the "*Company*," "*we*" or "*us*") (as the same may be amended or supplemented, the "*Offer to Purchase*").

The instructions contained herein and elsewhere in the Offer to Purchase should be read carefully before this Letter of Transmittal (this "*Letter of Transmittal*") is utilized.

This Letter of Transmittal is to be used by holders of EFIH Second Lien Notes listed in the heading of this Letter of Transmittal (each, a "*Holder*" and collectively, the "*Holders*"). Tender of the EFIH Second Lien Notes is to be made according to the Automated Tender Offer Program ("*ATOP*") of DTC pursuant to the procedures set forth in the Offer to Purchase under the caption "Procedures for Tendering EFIH Second Lien Notes." DTC participants that are participating in the Offer must transmit their acceptance to DTC, which will verify the acceptance and execute a book-entry delivery to the DTC account of the Offer Agent and Depositary Agent, Epiq Systems. DTC will then send a computer generated Agent's Message to the Depositary Agent for its acceptance. For you to validly tender your EFIH Second Lien Notes in the Offer, the Depositary Agent must receive and confirm, prior to the Expiration Date, an Agent's Message under the ATOP procedures that affirms that:

- DTC has received your instructions to tender your EFIH Second Lien Notes; and

- you agree to be bound by the terms of this Letter of Transmittal.

By participating in the Offer, you are agreeing: (a) that you will be bound by the terms and conditions of the EFIH Second Lien Settlement as set forth in the Offer to Purchase (including, but not limited to, surrendering and waiving any and all claims you may have with respect to your EFIH Second Lien Notes); (b) that you will not, directly or indirectly, object to, delay, impede, or take any other action to interfere with acceptance, implementation, or consummation of the EFIH First Lien Settlement, the EFIH Second Lien Settlement, the EFIH First Lien DIP Facility or the EFIH Second Lien DIP Notes Financing (the "*Transactions*") in the Bankruptcy Court or otherwise, including releasing and waiving any and all claims relating to the EFIH Second Lien Notes upon consummation of the EFIH Second Lien Settlement and (c) that you will take all necessary steps to effectuate your participation in the Offer, including timely providing all requisite documentation as required.

**By using the ATOP procedures to tender outstanding EFIH Second Lien Notes, you will not be required to deliver this Letter of Transmittal to the Depositary Agent. However, you will be bound by its terms just as if you had signed and submitted it.**

We will pay for the EFIH Second Lien Notes that we have accepted for purchase by wiring to DTC on the Settlement Date funds sufficient to pay the full amount of the Tender Consideration and/or Total Consideration (as applicable) that we then owe to the Holders plus cash in the amount of the accrued but unpaid interest (including any additional interest payable under any applicable registration rights agreements) on the principal amount of the purchased EFIH Second Lien Notes at the non-default rate on such EFIH Second Lien Notes to, but not including, the Settlement Date. We will not be responsible for any mistakes or delays made by DTC or any of its participants in distributing the Tender Consideration and Total Consideration (as applicable) on the EFIH Second Lien Notes to the persons entitled thereto, and no additional accrued interest will be payable because of such mistake or delay.

In the event that the Offer is terminated or otherwise not completed, no amounts will be paid or become payable to Holders of the EFIH Second Lien Notes who have validly tendered their EFIH Second Lien Notes in connection with the Offer, and all tendered EFIH Second Lien Notes will be returned promptly.

The Offer is being made strictly upon the terms and subject to the conditions set forth herein and elsewhere in the Offer to Purchase.

The consummation of the Offer is subject to certain conditions including, among others, the Financing Condition, the EFIH Second Lien Settlement Approval Condition, the EFIH First Lien Approval Condition and the

2

General Conditions, all as more fully described in the Offer to Purchase under "Conditions to the Consummation of the Offer."

The instructions included with this Letter of Transmittal must be followed.  Questions and requests for assistance with the procedures for tendering EFIH Second Lien Notes or for additional copies of the Offer to Purchase and this Letter of Transmittal, and questions regarding the terms of the Offer may be directed to the Offer Agent, whose address and telephone numbers appear on the first page of this Letter of Transmittal.

**THE OFFER IS NOT BEING MADE TO (NOR WILL TENDERS OF EFIH SECOND LIEN NOTES BE ACCEPTED FROM OR ON BEHALF OF) HOLDERS IN ANY JURISDICTION IN WHICH THE MAKING OR ACCEPTANCE OF THE OFFER WOULD NOT BE IN COMPLIANCE WITH THE LAWS OF SUCH JURISDICTION.**

3

**PLEASE READ THE ACCOMPANYING INSTRUCTIONS CAREFULLY.**

Ladies and Gentlemen:

By tendering to the Company outstanding EFIH Second Lien Notes in the Offer, you acknowledge receipt of the Offer to Purchase (including this Letter of Transmittal and the instructions hereto), which constitutes our offer to purchase any and all of the EFIH Second Lien Notes.

The Offer is subject to certain conditions, including, among others, the Financing Condition, the EFIH Second Lien Settlement Approval Condition, the EFIH First Lien Approval Condition and the General Conditions, described in the Offer to Purchase under "Conditions to the Consummation of the Offer."

Upon the terms and subject to the conditions set forth in this Letter of Transmittal and the Offer to Purchase (collectively, the "*Offer Documents*"), in consideration of receiving the Total Consideration or Tender Consideration (as applicable), you hereby tender to us the principal amount of EFIH Second Lien Notes indicated in the applicable Agent's Message and hereby agree to the EFIH Second Lien Settlement with respect to such EFIH Second Lien Notes.

Subject to, and effective upon, the acceptance for purchase of the principal amount of EFIH Second Lien Notes tendered under this Letter of Transmittal, you hereby tender, exchange, sell, assign and transfer to, or upon the order of us, all right, title and interest in and to all of the EFIH Second Lien Notes that are being tendered hereby (the applicable amount of which are indicated in the applicable Agent's Message), waive any and all other rights with respect to such EFIH Second Lien Notes, including, without limitation, any existing or past defaults, and release and discharge us from any and all claims you may have now, or may have in the future, arising out of, or related to, such EFIH Second Lien Notes, including, without limitation, any claims that you are entitled to receive additional principal or interest payments, or are entitled to any makewhole payments, with respect to such EFIH Second Lien Notes or to participate in any redemption or defeasance of such EFIH Second Lien Notes. You hereby irrevocably constitute and appoint the Depositary Agent as your true and lawful agent and attorney-in-fact (with full knowledge that the Depositary Agent also acts as our agent) with respect to such EFIH Second Lien Notes, with full powers of substitution and revocation (such power of attorney being deemed to be an irrevocable power coupled with an interest): (i) to transfer ownership of such EFIH Second Lien Notes on the account books maintained by DTC, together with all accompanying evidences of transfer and authenticity, to the Depositary Agent, (ii) to present such EFIH Second Lien Notes for transfer to the relevant security register and (iii) to receive all benefits and otherwise exercise all rights of beneficial ownership of such EFIH Second Lien Notes.

**In the event the Company offers withdrawal rights, you understand that tenders of EFIH Second Lien Notes made prior to the applicable withdrawal deadline may be withdrawn at any time prior to the applicable withdrawal deadline, but not thereafter, except in certain limited circumstances where additional withdrawal rights are required by law.**

You understand that tenders of your EFIH Second Lien Notes pursuant to the procedures described in the Offer to Purchase and in the instructions hereto and acceptance thereof by us will constitute a binding agreement between you and us upon the terms and subject to the conditions of the Offer to Purchase and this Letter of Transmittal, including, but not limited to, with respect to the EFIH Second Lien Settlement.

You hereby represent and warrant that you have full power and authority to tender, sell, assign and transfer the EFIH Second Lien Notes tendered hereby, and that when such EFIH Second Lien Notes are accepted for purchase by us, we will acquire good title thereto, free and clear of all liens, restrictions, charges and encumbrances and subject to no adverse claim or right. You will, upon request, execute and deliver any additional documents deemed by the Depositary Agent or by us to be necessary or desirable to complete the sale, assignment and transfer of the EFIH Second Lien Notes tendered hereby.

In consideration for the purchase of the EFIH Second Lien Notes pursuant to the Offer, you hereby waive, release, forever discharge and agree not to sue the Company or its former, current or future directors, officers, employees, agents, subsidiaries, affiliates, stockholders, predecessors, successors, assigns or other representatives as

to any and all claims, demands, causes of action and liabilities of any kind and under any theory whatsoever, whether known or unknown (excluding any liability arising under U.S. federal securities laws in connection with the Offer), by reason of any act, omission, transaction or occurrence, that you ever had, now have or hereafter may have against the Company as a result of or in any manner related to your purchase, ownership or disposition of the EFIH Second Lien Notes pursuant to the Offer.

Without limiting the generality or effect of the foregoing, upon the purchase of such EFIH Second Lien Notes pursuant to the Offer, the Company shall obtain all rights relating to your ownership of EFIH Second Lien Notes (including, without limitation, the right to all interest payable on the EFIH Second Lien Notes) and any and all claims relating thereto.

For purposes of the Offer, you understand that we will be deemed to have accepted for purchase validly tendered EFIH Second Lien Notes (or defectively tendered EFIH Second Lien Notes with respect to which we have waived such defect), if, as and when we give oral (confirmed in writing) or written notice thereof to the Offer Agent and Depositary Agent. In addition, you understand that we will not accept for purchase any EFIH Second Lien Notes tendered after the Expiration Date.

All authority conferred or agreed to be conferred by this Letter of Transmittal shall survive your death or incapacity, and your obligations under this Letter of Transmittal shall be binding upon your heirs, personal representatives, executors, administrators, successors, assigns, trustees in bankruptcy, other personal and legal representatives and any subsequent transferees of the EFIH Second Lien Notes.

You understand that the delivery and surrender of the EFIH Second Lien Notes is not effective, and the risk of loss of the EFIH Second Lien Notes does not pass to the Depositary Agent, until receipt and confirmation of an Agent's Message.

You understand that all questions as to the form of all documents and the validity (including time of receipt) and acceptance of tenders of EFIH Second Lien Notes will be determined by us, in our sole discretion, which determination shall be final and binding.

Very truly yours,


**Energy Future Intermediate Holding Company LLC**

**EFIH Finance Inc.**

**INSTRUCTIONS**
**Forming Part of the Terms and Conditions of the Offer**

1.        *Need for Guarantee of Signature*. A recognized participant (a "*Medallion Signature Guarantee*") in the Securities Transfer Agents Medallion Program must guarantee signatures on a Letter of Transmittal unless the EFIH Second Lien Notes tendered thereby are tendered (a) by the registered Holder of those EFIH Second Lien Notes and that Holder has not completed either of the boxes entitled "Special Payment Instructions" or "Special Delivery Instructions" on the Letter of Transmittal, or (b) for the account of a firm that is a member of a registered national securities exchange or the Financial Institution Regulatory Authority or is a commercial bank or trust company having an office in the United States or another "eligible guarantor institution" within the meaning of Rule 17Ad-15 under the Securities Exchange Act of 1934, as amended.  The Company refers to such firms, banks and trust companies as "*Eligible Institutions*."

2.        *Book-Entry Confirmations; Consideration; Withdrawal of Tenders*.  To be eligible to receive the Tender Consideration on the Settlement Date for the tender of EFIH Second Lien Notes in the Offer, a confirmation of any book-entry transfer into the account of the Depositary Agent maintained by DTC through ATOP of EFIH Second Lien Notes tendered electronically must be received (and not validly withdrawn) by the Depositary Agent prior to the Expiration Date. To be eligible to receive the Early Participation Consideration on the Settlement Date for the tender of EFIH Second Lien Notes in the Offer, a confirmation of any book-entry transfer into the account of the Depositary Agent maintained by DTC through ATOP of EFIH Second Lien Notes tendered electronically must be received (and not validly withdrawn) by the Depositary Agent prior to the Early Participation Date. Tenders of EFIH Second Lien Notes made prior to the Expiration Date and the Early Participation Date, as applicable, will be accepted in accordance with the procedures described in the preceding sentence or otherwise in compliance with this Letter of Transmittal.  You are solely responsible for ensuring that your EFIH Second Lien Notes are validly tendered in the Offer.  It is suggested that Holders tender their EFIH Second Lien Notes sufficiently in advance of the Expiration Date or the Early Participation Date, as applicable, to permit delivery by DTC of the Agent's Message to the Depositary Agent prior to such time.  The delivery will be deemed made when the Agent's Message is actually received and confirmed by the Depositary Agent.  Holders who validly tender EFIH Second Lien Notes will be paid accrued and unpaid interest, if any, from the last interest payment date on such EFIH Second Lien Notes up to, but not including, the Settlement Date for their EFIH Second Lien Notes accepted for purchase.

In the event the Company offers withdrawal rights, tenders of EFIH Second Lien Notes made prior to the applicable withdrawal deadline may be withdrawn at any time before the applicable withdrawal deadline, but not thereafter, except in certain limited circumstances where additional withdrawal rights are required by law. Withdrawal of tenders of EFIH Second Lien Notes may be accomplished by complying with the applicable ATOP procedures for withdrawal of tenders.  The Depositary Agent must receive the "Request Message" relating to a Holder's withdrawal prior to the applicable withdrawal deadline, assuming no additional withdrawal rights are required by law.  If you withdraw EFIH Second Lien Notes, you will have the right to re-tender them through ATOP prior to the Expiration Date.

**All questions as to the validity, form and eligibility (including time of receipt) of notices of withdrawal of tenders will be determined by us, in our sole discretion (and our determination shall be final and binding).  Neither we, the Offer Agent and Depositary Agent, Computershare Trust Company, N.A. and Computershare Trust Company of Canada, in their capacities as trustee (the "*Trustee*"), nor any other person will be under any duty to give notification of any defects or irregularities in any notice of withdrawal of tenders, or incur any liability for failure to give any such notification.**

3.        *Transfer Taxes*.  We will pay all transfer taxes, if any, payable on the purchase and transfer of EFIH Second Lien Notes purchased pursuant to the Offer, provided, for the avoidance of doubt, that such transfer taxes will not be considered to include income taxes, franchise taxes, or any other taxes that are not occasioned

6

solely by the transfer of the EFIH Second Lien Notes. If, however, payment is to be made to, or if EFIH Second Lien Notes not tendered or purchased are to be registered in the name of or delivered to, any persons other than the registered owners, or if tendered EFIH Second Lien Notes are registered in the name of any persons other than the persons signing this Letter of Transmittal, the amount of any transfer taxes (whether imposed on the registered Holder or such other person) payable on account of the transfer to such other person will be deducted from the payment unless satisfactory evidence of the payment of such taxes or exemption therefrom is submitted.

4.      *Irregularities.* All questions as to the validity (including time of receipt) and acceptance of tenders of EFIH Second Lien Notes will be determined by us, in our sole discretion, which determination shall be final and binding. Alternative, conditional or contingent tenders will not be considered valid. We reserve the absolute right to reject any or all tenders in respect of the EFIH Second Lien Notes or other documents that are not in proper form or the acceptance of which would, in our opinion, be unlawful. We also reserve the right to waive any defects, irregularities or conditions of tender as to particular EFIH Second Lien Notes or other documents delivered by Holders in connection with the consummation of the Offer. Our interpretation of the terms and conditions of the Offer (including the instructions in this Letter of Transmittal) will be final and binding. Any defect or irregularity in connection with tenders of EFIH Second Lien Notes must be cured within such time as we determine, unless waived by us. Tenders of EFIH Second Lien Notes shall not have been deemed to have been made until all defects or irregularities have been waived by us or cured. All tendering Holders, by tender of EFIH Second Lien Notes in the Offer, waive any right to receive notice of the acceptance of their EFIH Second Lien Notes for purchase. Neither we, the Offer Agent and Depositary Agent, the Trustee nor any other person will be under any duty to give notice of any defects or irregularities in tenders of EFIH Second Lien Notes or other documents delivered by Holders in connection with the consummation of the Offer, or will incur any liability to Holders for failure to give any such notice.

5.      *Waiver of Conditions.* While we have no current plans or arrangements to do so, we expressly reserve the absolute right, in our sole discretion, to amend or waive any of the conditions of the Offer in the case of any EFIH Second Lien Notes tendered, in whole or in part, at any time and from time to time. In the case of an amendment to a condition of the Offer, we will give Holders notice of such amendment as may be required by applicable law.

6.      *Backup Withholding; IRS Form W-9; IRS Form W-8.* **TO COMPLY WITH TREASURY DEPARTMENT CIRCULAR 230, YOU ARE HEREBY NOTIFIED THAT: (A) ANY DISCUSSION OF U.S. FEDERAL TAX ISSUES HEREIN IS NOT INTENDED OR WRITTEN TO BE USED, AND CANNOT BE USED, BY YOU FOR THE PURPOSE OF AVOIDING PENALTIES THAT MAY BE IMPOSED UNDER U.S. FEDERAL TAX LAW; (B) SUCH DISCUSSION IS WRITTEN TO SUPPORT THE PROMOTION OR MARKETING OF THE TRANSACTIONS OR MATTERS ADDRESSED HEREIN; AND (C) YOU SHOULD SEEK ADVICE BASED ON YOUR PARTICULAR CIRCUMSTANCES FROM AN INDEPENDENT TAX ADVISOR.**

Under U.S. federal income tax laws, a U.S. Holder (as defined in the Offer to Purchase) whose tendered EFIH Second Lien Notes are accepted for payment is required to provide the withholding agent with such U.S. Holder's correct taxpayer identification number ("TIN") on Internal Revenue Service ("IRS") Form W-9 attached hereto and certify on the IRS Form W-9 that (i) the TIN provided on the IRS Form W-9 is correct (or that such holder is awaiting a TIN) and (ii) the holder is not subject to backup withholding because (x) such holder is exempt from backup withholding, (y) such holder has not been notified by the IRS that it is subject to backup withholding as a result of a failure to report all interest or dividends or (z) the IRS has notified the holder that it is no longer subject to backup withholding. If such U.S. Holder is an individual, the TIN is his or her social security number or individual taxpayer identification number. If the U.S. Holder fails to provide its TIN, a $50 penalty may be imposed on the U.S. Holder by the IRS, and payments made with respect to EFIH Second Lien Notes purchased pursuant to

7

the Offer may be subject to backup withholding (currently at a rate of 28%). Failure to comply truthfully with the backup withholding requirements also may result in the imposition of severe criminal and/or civil fines and penalties.

Exempt U.S. Holders (including, among others, all corporations) are not subject to these backup withholding requirements. However, to prevent backup withholding, an exempt U.S. Holder should provide a properly completed, signed and dated IRS Form W-9, checking the appropriate boxes to indicate its exempt status to the withholding agent. A Non-U.S. Holder may qualify as an exempt recipient by submitting to the withholding agent an appropriate, properly completed IRS Form W-8, signed under penalties of perjury, certifying to such holder's non-U.S. status. An appropriate IRS Form W-8 can be obtained from the Offer Agent or at the IRS website at http://www.irs.gov.

If a U.S. Holder has not been issued a TIN and has applied for a TIN or intends to apply for a TIN in the near future, such holder should write "Applied For" in the space for the TIN provided on the attached IRS Form W-9 in order to prevent backup withholding. Notwithstanding that "Applied For" has been written in the space for the TIN on IRS Form W-9, 28% of all payments made prior to the time a properly certified TIN is provided will be withheld, and if a TIN is not provided within sixty (60) days, such amounts will be paid over to the IRS.

Failure to provide a properly completed IRS Form W-9 or applicable IRS Form W-8 may result in the application of backup withholding. If backup withholding applies, 28% of any payments made to the holder is required to be withheld. Backup withholding is not an additional tax. Rather, the U.S. federal income tax liability of persons subject to backup withholding will be reduced by the amount of tax withheld. If withholding results in an overpayment of taxes, a refund or credit may be obtained from the IRS, provided that the required information is properly provided to the IRS on a timely basis.

For a general discussion of certain U.S. federal income tax considerations of the Offer, you should review the section of the Offer to Purchase entitled "Certain United States Federal Income Tax Considerations."

7.    *Requests for Assistance or Additional Copies*.  Any questions regarding the terms of the Offer may be directed to the Offer Agent at the location and telephone number set forth below, and requests for additional copies of documentation related to the Offer, requests for copies of the Indentures under which the EFIH Second Lien Notes were issued and any questions or requests for assistance in tendering may be directed to the Offer Agent at the location and telephone numbers set forth on the second page of this Letter of Transmittal. Holders may also contact their broker, dealer, commercial bank or trust company for assistance concerning the Offer.

*The Offer Agent and the Depositary Agent for the Offer is:*

# EPIQ SYSTEMS

| *By Registered, Certified or Express mail or Overnight Courier Service* | *By Electronic Mail in a Portable Document Format (a "pdf file")* |
|---|---|
| EFIH Second Lien Offer Processing<br>c/o Epiq Systems<br>757 Third Avenue, 3rd Floor<br>New York, NY 10017<br>Telephone:  (646) 282-2500<br>Toll Free: (866) 734-9393<br>(ask for the Solicitation Group) | E-Mail Address:<br><br>tabulation@epiqsystems.com<br><br>With reference to "EFIH Second Lien" in the subject line |

Any questions regarding the terms of the Offer may be directed to the Offer Agent, and requests for additional copies of documentation related to the Offer, requests for copies of the Indentures and any questions or requests for assistance in tendering may be directed to the Offer Agent.  Holders of EFIH Second Lien Notes may also contact their brokers, dealers, commercial banks or trust companies for assistance concerning the Offer.

Form **W-9**
(Rev. August 2013)
Department of the Treasury
Internal Revenue Service

## Request for Taxpayer
## Identification Number and Certification

Give Form to the
requester. Do not
send to the IRS.

Name (as shown on your income tax return)

Business name/disregarded entity name, if different from above

Check appropriate box for federal tax classification:

☐ Individual/sole proprietor    ☐ C Corporation    ☐ S Corporation    ☐ Partnership    ☐ Trust/estate

☐ Limited liability company. Enter the tax classification (C=C corporation, S=S corporation, P=partnership) ▶ _____

☐ Other (see instructions) ▶

Exemptions (see instructions):

Exempt payee code (if any) _____

Exemption from FATCA reporting
code (if any) _____

Address (number, street, and apt. or suite no.)

Requester's name and address (optional)

City, state, and ZIP code

List account number(s) here (optional)

**Print or type**
**See Specific Instructions on page 2.**

## Part I    Taxpayer Identification Number (TIN)

Enter your TIN in the appropriate box. The TIN provided must match the name given on the "Name" line to avoid backup withholding. For individuals, this is your social security number (SSN). However, for a resident alien, sole proprietor, or disregarded entity, see the Part I instructions on page 3. For other entities, it is your employer identification number (EIN). If you do not have a number, see *How to get a TIN* on page 3.

**Note.** If the account is in more than one name, see the chart on page 4 for guidelines on whose number to enter.

Social security number

| | | | – | | | – | | | | |

Employer identification number

| | | – | | | | | | | |

## Part II    Certification

Under penalties of perjury, I certify that:

1. The number shown on this form is my correct taxpayer identification number (or I am waiting for a number to be issued to me), and

2. I am not subject to backup withholding because: (a) I am exempt from backup withholding, or (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding, and

3. I am a U.S. citizen or other U.S. person (defined below), and

4. The FATCA code(s) entered on this form (if any) indicating that I am exempt from FATCA reporting is correct.

**Certification instructions.** You must cross out item 2 above if you have been notified by the IRS that you are currently subject to backup withholding because you have failed to report all interest and dividends on your tax return. For real estate transactions, item 2 does not apply. For mortgage interest paid, acquisition or abandonment of secured property, cancellation of debt, contributions to an individual retirement arrangement (IRA), and generally, payments other than interest and dividends, you are not required to sign the certification, but you must provide your correct TIN. See the instructions on page 3.

**Sign Here**

Signature of
U.S. person ▶

Date ▶

## General Instructions

Section references are to the Internal Revenue Code unless otherwise noted.

**Future developments.** The IRS has created a page on IRS.gov for information about Form W-9, at *www.irs.gov/w9*. Information about any future developments affecting Form W-9 (such as legislation enacted after we release it) will be posted on that page.

## Purpose of Form

A person who is required to file an information return with the IRS must obtain your correct taxpayer identification number (TIN) to report, for example, income paid to you, payments made to you in settlement of payment card and third party network transactions, real estate transactions, mortgage interest you paid, acquisition or abandonment of secured property, cancellation of debt, or contributions you made to an IRA.

Use Form W-9 only if you are a U.S. person (including a resident alien), to provide your correct TIN to the person requesting it (the requester) and, when applicable, to:

1. Certify that the TIN you are giving is correct (or you are waiting for a number to be issued),

2. Certify that you are not subject to backup withholding, or

3. Claim exemption from backup withholding if you are a U.S. exempt payee. If applicable, you are also certifying that as a U.S. person, your allocable share of any partnership income from a U.S. trade or business is not subject to the

withholding tax on foreign partners' share of effectively connected income, and

4. Certify that FATCA code(s) entered on this form (if any) indicating that you are exempt from the FATCA reporting, is correct.

**Note.** If you are a U.S. person and a requester gives you a form other than Form W-9 to request your TIN, you must use the requester's form if it is substantially similar to this Form W-9.

**Definition of a U.S. person.** For federal tax purposes, you are considered a U.S. person if you are:

• An individual who is a U.S. citizen or U.S. resident alien,

• A partnership, corporation, company, or association created or organized in the United States or under the laws of the United States,

• An estate (other than a foreign estate), or

• A domestic trust (as defined in Regulations section 301.7701-7).

**Special rules for partnerships.** Partnerships that conduct a trade or business in the United States are generally required to pay a withholding tax under section 1446 on any foreign partners' share of effectively connected taxable income from such business. Further, in certain cases where a Form W-9 has not been received, the rules under section 1446 require a partnership to presume that a partner is a foreign person, and pay the section 1446 withholding tax. Therefore, if you are a U.S. person that is a partner in a partnership conducting a trade or business in the United States, provide Form W-9 to the partnership to establish your U.S. status and avoid section 1446 withholding on your share of partnership income.

Cat. No. 10231X

Form **W-9** (Rev. 8-2013)

In the cases below, the following person must give Form W-9 to the partnership for purposes of establishing its U.S. status and avoiding withholding on its allocable share of net income from the partnership conducting a trade or business in the United States:

• In the case of a disregarded entity with a U.S. owner, the U.S. owner of the disregarded entity and not the entity,

• In the case of a grantor trust with a U.S. grantor or other U.S. owner, generally, the U.S. grantor or other U.S. owner of the grantor trust and not the trust, and

• In the case of a U.S. trust (other than a grantor trust), the U.S. trust (other than a grantor trust) and not the beneficiaries of the trust.

**Foreign person.** If you are a foreign person or the U.S. branch of a foreign bank that has elected to be treated as a U.S. person, do not use Form W-9. Instead, use the appropriate Form W-8 or Form 8233 (see Publication 515, Withholding of Tax on Nonresident Aliens and Foreign Entities).

**Nonresident alien who becomes a resident alien.** Generally, only a nonresident alien individual may use the terms of a tax treaty to reduce or eliminate U.S. tax on certain types of income. However, most tax treaties contain a provision known as a "saving clause." Exceptions specified in the saving clause may permit an exemption from tax to continue for certain types of income even after the payee has otherwise become a U.S. resident alien for tax purposes.

If you are a U.S. resident alien who is relying on an exception contained in the saving clause of a tax treaty to claim an exemption from U.S. tax on certain types of income, you must attach a statement to Form W-9 that specifies the following five items:

1. The treaty country. Generally, this must be the same treaty under which you claimed exemption from tax as a nonresident alien.

2. The treaty article addressing the income.

3. The article number (or location) in the tax treaty that contains the saving clause and its exceptions.

4. The type and amount of income that qualifies for the exemption from tax.

5. Sufficient facts to justify the exemption from tax under the terms of the treaty article.

**Example.** Article 20 of the U.S.-China income tax treaty allows an exemption from tax for scholarship income received by a Chinese student temporarily present in the United States. Under U.S. law, this student will become a resident alien for tax purposes if his or her stay in the United States exceeds 5 calendar years. However, paragraph 2 of the first Protocol to the U.S.-China treaty (dated April 30, 1984) allows the provisions of Article 20 to continue to apply even after the Chinese student becomes a resident alien of the United States. A Chinese student who qualifies for this exception (under paragraph 2 of the first protocol) and is relying on this exception to claim an exemption from tax on his or her scholarship or fellowship income would attach to Form W-9 a statement that includes the information described above to support that exemption.

If you are a nonresident alien or a foreign entity, give the requester the appropriate completed Form W-8 or Form 8233.

**What is backup withholding?** Persons making certain payments to you must under certain conditions withhold and pay to the IRS a percentage of such payments. This is called "backup withholding." Payments that may be subject to backup withholding include interest, tax-exempt interest, dividends, broker and barter exchange transactions, rents, royalties, nonemployee pay, payments made in settlement of payment card and third party network transactions, and certain payments from fishing boat operators. Real estate transactions are not subject to backup withholding.

You will not be subject to backup withholding on payments you receive if you give the requester your correct TIN, make the proper certifications, and report all your taxable interest and dividends on your tax return.

**Payments you receive will be subject to backup withholding if:**

1. You do not furnish your TIN to the requester,

2. You do not certify your TIN when required (see the Part II instructions on page 3 for details),

3. The IRS tells the requester that you furnished an incorrect TIN,

4. The IRS tells you that you are subject to backup withholding because you did not report all your interest and dividends on your tax return (for reportable interest and dividends only), or

5. You do not certify to the requester that you are not subject to backup withholding under 4 above (for reportable interest and dividend accounts opened after 1983 only).

Certain payees and payments are exempt from backup withholding. See *Exempt payee code* on page 3 and the separate Instructions for the Requester of Form W-9 for more information.

Also see *Special rules for partnerships* on page 1.

**What is FATCA reporting?** The Foreign Account Tax Compliance Act (FATCA) requires a participating foreign financial institution to report all United States account holders that are specified United States persons. Certain payees are exempt from FATCA reporting. See *Exemption from FATCA reporting code* on page 3 and the Instructions for the Requester of Form W-9 for more information.

## Updating Your Information

You must provide updated information to any person to whom you claimed to be an exempt payee if you are no longer an exempt payee and anticipate receiving reportable payments in the future from this person. For example, you may need to provide updated information if you are a C corporation that elects to be an S corporation, or if you no longer are tax exempt. In addition, you must furnish a new Form W-9 if the name or TIN changes for the account, for example, if the grantor of a grantor trust dies.

## Penalties

**Failure to furnish TIN.** If you fail to furnish your correct TIN to a requester, you are subject to a penalty of $50 for each such failure unless your failure is due to reasonable cause and not to willful neglect.

**Civil penalty for false information with respect to withholding.** If you make a false statement with no reasonable basis that results in no backup withholding, you are subject to a $500 penalty.

**Criminal penalty for falsifying information.** Willfully falsifying certifications or affirmations may subject you to criminal penalties including fines and/or imprisonment.

**Misuse of TINs.** If the requester discloses or uses TINs in violation of federal law, the requester may be subject to civil and criminal penalties.

## Specific Instructions

### Name

If you are an individual, you must generally enter the name shown on your income tax return. However, if you have changed your last name, for instance, due to marriage without informing the Social Security Administration of the name change, enter your first name, the last name shown on your social security card, and your new last name.

If the account is in joint names, list first, and then circle, the name of the person or entity whose number you entered in Part I of the form.

**Sole proprietor.** Enter your individual name as shown on your income tax return on the "Name" line. You may enter your business, trade, or "doing business as (DBA)" name on the "Business name/disregarded entity name" line.

**Partnership, C Corporation, or S Corporation.** Enter the entity's name on the "Name" line and any business, trade, or "doing business as (DBA) name" on the "Business name/disregarded entity name" line.

**Disregarded entity.** For U.S. federal tax purposes, an entity that is disregarded as an entity separate from its owner is treated as a "disregarded entity." See Regulation section 301.7701-2(c)(2)(iii). Enter the owner's name on the "Name" line. The name of the entity entered on the "Name" line should never be a disregarded entity. The name on the "Name" line must be the name shown on the income tax return on which the income should be reported. For example, if a foreign LLC that is treated as a disregarded entity for U.S. federal tax purposes has a single owner that is a U.S. person, the U.S. owner's name is required to be provided on the "Name" line. If the direct owner of the entity is also a disregarded entity, enter the first owner that is not disregarded for federal tax purposes. Enter the disregarded entity's name on the "Business name/disregarded entity name" line. If the owner of the disregarded entity is a foreign person, the owner must complete an appropriate Form W-8 instead of a Form W-9. This is the case even if the foreign person has a U.S. TIN.

**Note.** Check the appropriate box for the U.S. federal tax classification of the person whose name is entered on the "Name" line (Individual/sole proprietor, Partnership, C Corporation, S Corporation, Trust/estate).

**Limited Liability Company (LLC).** If the person identified on the "Name" line is an LLC, check the "Limited liability company" box only and enter the appropriate code for the U.S. federal tax classification in the space provided. If you are an LLC that is treated as a partnership for U.S. federal tax purposes, enter "P" for partnership. If you are an LLC that has filed a Form 8832 or a Form 2553 to be taxed as a corporation, enter "C" for C corporation or "S" for S corporation, as appropriate. If you are an LLC that is disregarded as an entity separate from its owner under Regulation section 301.7701-3 (except for employment and excise tax), do not check the LLC box unless the owner of the LLC (required to be identified on the "Name" line) is another LLC that is not disregarded for U.S. federal tax purposes. If the LLC is disregarded as an entity separate from its owner, enter the appropriate tax classification of the owner identified on the "Name" line.

**Other entities.** Enter your business name as shown on required U.S. federal tax documents on the "Name" line. This name should match the name shown on the charter or other legal document creating the entity. You may enter any business, trade, or DBA name on the "Business name/disregarded entity name" line.

### Exemptions

If you are exempt from backup withholding and/or FATCA reporting, enter in the Exemptions box, any code(s) that may apply to you. See *Exempt payee code* and *Exemption from FATCA reporting code* on page 3.

Form W-9 (Rev. 8-2013)                                                                                                    Page **3**

**Exempt payee code.** Generally, individuals (including sole proprietors) are not exempt from backup withholding. Corporations are exempt from backup withholding for certain payments, such as interest and dividends. Corporations are not exempt from backup withholding for payments made in settlement of payment card or third party network transactions.

**Note.** If you are exempt from backup withholding, you should still complete this form to avoid possible erroneous backup withholding.

The following codes identify payees that are exempt from backup withholding:

1—An organization exempt from tax under section 501(a), any IRA, or a custodial account under section 403(b)(7) if the account satisfies the requirements of section 401(f)(2)

2—The United States or any of its agencies or instrumentalities

3—A state, the District of Columbia, a possession of the United States, or any of their political subdivisions or instrumentalities

4—A foreign government or any of its political subdivisions, agencies, or instrumentalities

5—A corporation

6—A dealer in securities or commodities required to register in the United States, the District of Columbia, or a possession of the United States

7—A futures commission merchant registered with the Commodity Futures Trading Commission

8—A real estate investment trust

9—An entity registered at all times during the tax year under the Investment Company Act of 1940

10—A common trust fund operated by a bank under section 584(a)

11—A financial institution

12—A middleman known in the investment community as a nominee or custodian

13—A trust exempt from tax under section 664 or described in section 4947

The following chart shows types of payments that may be exempt from backup withholding. The chart applies to the exempt payees listed above, 1 through 13.

| IF the payment is for . . . | THEN the payment is exempt for . . . |
|---|---|
| Interest and dividend payments | All exempt payees except for 7 |
| Broker transactions | Exempt payees 1 through 4 and 6 through 11 and all C corporations. S corporations must not enter an exempt payee code because they are exempt only for sales of noncovered securities acquired prior to 2012. |
| Barter exchange transactions and patronage dividends | Exempt payees 1 through 4 |
| Payments over $600 required to be reported and direct sales over $5,000[1] | Generally, exempt payees 1 through 5[2] |
| Payments made in settlement of payment card or third party network transactions | Exempt payees 1 through 4 |

[1] See Form 1099-MISC, Miscellaneous Income, and its instructions.

[2] However, the following payments made to a corporation and reportable on Form 1099-MISC are not exempt from backup withholding: medical and health care payments, attorneys' fees, gross proceeds paid to an attorney, and payments for services paid by a federal executive agency.

**Exemption from FATCA reporting code.** The following codes identify payees that are exempt from reporting under FATCA. These codes apply to persons submitting this form for accounts maintained outside of the United States by certain foreign financial institutions. Therefore, if you are only submitting this form for an account you hold in the United States, you may leave this field blank. Consult with the person requesting this form if you are uncertain if the financial institution is subject to these requirements.

A—An organization exempt from tax under section 501(a) or any individual retirement plan as defined in section 7701(a)(37)

B—The United States or any of its agencies or instrumentalities

C—A state, the District of Columbia, a possession of the United States, or any of their political subdivisions or instrumentalities

D—A corporation the stock of which is regularly traded on one or more established securities markets, as described in Reg. section 1.1472-1(c)(1)(i)

E—A corporation that is a member of the same expanded affiliated group as a corporation described in Reg. section 1.1472-1(c)(1)(i)

F—A dealer in securities, commodities, or derivative financial instruments (including notional principal contracts, futures, forwards, and options) that is registered as such under the laws of the United States or any state

G—A real estate investment trust

H—A regulated investment company as defined in section 851 or an entity registered at all times during the tax year under the Investment Company Act of 1940

I—A common trust fund as defined in section 584(a)

J—A bank as defined in section 581

K—A broker

L—A trust exempt from tax under section 664 or described in section 4947(a)(1)

M—A tax exempt trust under a section 403(b) plan or section 457(g) plan

## Part I. Taxpayer Identification Number (TIN)

**Enter your TIN in the appropriate box.** If you are a resident alien and you do not have and are not eligible to get an SSN, your TIN is your IRS individual taxpayer identification number (ITIN). Enter it in the social security number box. If you do not have an ITIN, see *How to get a TIN* below.

If you are a sole proprietor and you have an EIN, you may enter either your SSN or EIN. However, the IRS prefers that you use your SSN.

If you are a single-member LLC that is disregarded as an entity separate from its owner (see *Limited Liability Company (LLC)* on page 2), enter the owner's SSN (or EIN, if the owner has one). Do not enter the disregarded entity's EIN. If the LLC is classified as a corporation or partnership, enter the entity's EIN.

**Note.** See the chart on page 4 for further clarification of name and TIN combinations.

**How to get a TIN.** If you do not have a TIN, apply for one immediately. To apply for an SSN, get Form SS-5, Application for a Social Security Card, from your local Social Security Administration office or get this form online at *www.ssa.gov*. You may also get this form by calling 1-800-772-1213. Use Form W-7, Application for IRS Individual Taxpayer Identification Number, to apply for an ITIN, or Form SS-4, Application for Employer Identification Number, to apply for an EIN. You can apply for an EIN online by accessing the IRS website at *www.irs.gov/businesses* and clicking on Employer Identification Number (EIN) under Starting a Business. You can get Forms W-7 and SS-4 from the IRS by visiting IRS.gov or by calling 1-800-TAX-FORM (1-800-829-3676).

If you are asked to complete Form W-9 but do not have a TIN, apply for a TIN and write "Applied For" in the space for the TIN, sign and date the form, and give it to the requester. For interest and dividend payments, and certain payments made with respect to readily tradable instruments, generally you will have 60 days to get a TIN and give it to the requester before you are subject to backup withholding on payments. The 60-day rule does not apply to other types of payments. You will be subject to backup withholding on all such payments until you provide your TIN to the requester.

**Note.** Entering "Applied For" means that you have already applied for a TIN or that you intend to apply for one soon.

**Caution:** *A disregarded U.S. entity that has a foreign owner must use the appropriate Form W-8.*

## Part II. Certification

To establish to the withholding agent that you are a U.S. person, or resident alien, sign Form W-9. You may be requested to sign by the withholding agent even if items 1, 4, or 5 below indicate otherwise.

For a joint account, only the person whose TIN is shown in Part I should sign (when required). In the case of a disregarded entity, the person identified on the "Name" line must sign. Exempt payees, see *Exempt payee code* earlier.

**Signature requirements.** Complete the certification as indicated in items 1 through 5 below.

**1. Interest, dividend, and barter exchange accounts opened before 1984 and broker accounts considered active during 1983.** You must give your correct TIN, but you do not have to sign the certification.

**2. Interest, dividend, broker, and barter exchange accounts opened after 1983 and broker accounts considered inactive during 1983.** You must sign the certification or backup withholding will apply. If you are subject to backup withholding and you are merely providing your correct TIN to the requester, you must cross out item 2 in the certification before signing the form.

**3. Real estate transactions.** You must sign the certification. You may cross out item 2 of the certification.

**4. Other payments.** You must give your correct TIN, but you do not have to sign the certification unless you have been notified that you have previously given an incorrect TIN. "Other payments" include payments made in the course of the requester's trade or business for rents, royalties, goods (other than bills for merchandise), medical and health care services (including payments to corporations), payments to a nonemployee for services, payments made in settlement of payment card and third party network transactions, payments to certain fishing boat crew members and fishermen, and gross proceeds paid to attorneys (including payments to corporations).

**5. Mortgage interest paid by you, acquisition or abandonment of secured property, cancellation of debt, qualified tuition program payments (under section 529), IRA, Coverdell ESA, Archer MSA or HSA contributions or distributions, and pension distributions.** You must give your correct TIN, but you do not have to sign the certification.

Form W-9 (Rev. 8-2013)

## What Name and Number To Give the Requester

| For this type of account: | Give name and SSN of: |
|---|---|
| 1. Individual | The individual |
| 2. Two or more individuals (joint account) | The actual owner of the account or, if combined funds, the first individual on the account [1] |
| 3. Custodian account of a minor (Uniform Gift to Minors Act) | The minor [2] |
| 4. a. The usual revocable savings trust (grantor is also trustee) | The grantor-trustee [1] |
| b. So-called trust account that is not a legal or valid trust under state law | The actual owner [1] |
| 5. Sole proprietorship or disregarded entity owned by an individual | The owner [3] |
| 6. Grantor trust filing under Optional Form 1099 Filing Method 1 (see Regulation section 1.671-4(b)(2)(i)(A)) | The grantor* |

| For this type of account: | Give name and EIN of: |
|---|---|
| 7. Disregarded entity not owned by an individual | The owner |
| 8. A valid trust, estate, or pension trust | Legal entity [4] |
| 9. Corporation or LLC electing corporate status on Form 8832 or Form 2553 | The corporation |
| 10. Association, club, religious, charitable, educational, or other tax-exempt organization | The organization |
| 11. Partnership or multi-member LLC | The partnership |
| 12. A broker or registered nominee | The broker or nominee |
| 13. Account with the Department of Agriculture in the name of a public entity (such as a state or local government, school district, or prison) that receives agricultural program payments | The public entity |
| 14. Grantor trust filing under the Form 1041 Filing Method or the Optional Form 1099 Filing Method 2 (see Regulation section 1.671-4(b)(2)(i)(B)) | The trust |

[1] List first and circle the name of the person whose number you furnish. If only one person on a joint account has an SSN, that person's number must be furnished.

[2] Circle the minor's name and furnish the minor's SSN.

[3] You must show your individual name and you may also enter your business or "DBA" name on the "Business name/disregarded entity" name line. You may use either your SSN or EIN (if you have one), but the IRS encourages you to use your SSN.

[4] List first and circle the name of the trust, estate, or pension trust. (Do not furnish the TIN of the personal representative or trustee unless the legal entity itself is not designated in the account title.) Also see *Special rules for partnerships* on page 1.

***Note.** Grantor also must provide a Form W-9 to trustee of trust.

**Note.** If no name is circled when more than one name is listed, the number will be considered to be that of the first name listed.

## Secure Your Tax Records from Identity Theft

Identity theft occurs when someone uses your personal information such as your name, social security number (SSN), or other identifying information, without your permission, to commit fraud or other crimes. An identity thief may use your SSN to get a job or may file a tax return using your SSN to receive a refund.

To reduce your risk:

• Protect your SSN,

• Ensure your employer is protecting your SSN, and

• Be careful when choosing a tax preparer.

If your tax records are affected by identity theft and you receive a notice from the IRS, respond right away to the name and phone number printed on the IRS notice or letter.

If your tax records are not currently affected by identity theft but you think you are at risk due to a lost or stolen purse or wallet, questionable credit card activity or credit report, contact the IRS Identity Theft Hotline at 1-800-908-4490 or submit Form 14039.

For more information, see Publication 4535, Identity Theft Prevention and Victim Assistance.

Victims of identity theft who are experiencing economic harm or a system problem, or are seeking help in resolving tax problems that have not been resolved through normal channels, may be eligible for Taxpayer Advocate Service (TAS) assistance. You can reach TAS by calling the TAS toll-free case intake line at 1-877-777-4778 or TTY/TDD 1-800-829-4059.

**Protect yourself from suspicious emails or phishing schemes.** Phishing is the creation and use of email and websites designed to mimic legitimate business emails and websites. The most common act is sending an email to a user falsely claiming to be an established legitimate enterprise in an attempt to scam the user into surrendering private information that will be used for identity theft.

The IRS does not initiate contacts with taxpayers via emails. Also, the IRS does not request personal detailed information through email or ask taxpayers for the PIN numbers, passwords, or similar secret access information for their credit card, bank, or other financial accounts.

If you receive an unsolicited email claiming to be from the IRS, forward this message to *phishing@irs.gov.* You may also report misuse of the IRS name, logo, or other IRS property to the Treasury Inspector General for Tax Administration at 1-800-366-4484. You can forward suspicious emails to the Federal Trade Commission at: *spam@uce.gov* or contact them at *www.ftc.gov/idtheft* or 1-877-IDTHEFT (1-877-438-4338).

Visit IRS.gov to learn more about identity theft and how to reduce your risk.

## Privacy Act Notice

Section 6109 of the Internal Revenue Code requires you to provide your correct TIN to persons (including federal agencies) who are required to file information returns with the IRS to report interest, dividends, or certain other income paid to you; mortgage interest you paid; the acquisition or abandonment of secured property; the cancellation of debt; or contributions you made to an IRA, Archer MSA, or HSA. The person collecting this form uses the information on the form to file information returns with the IRS, reporting the above information. Routine uses of this information include giving it to the Department of Justice for civil and criminal litigation and to cities, states, the District of Columbia, and U.S. commonwealths and possessions for use in administering their laws. The information may also be disclosed to other countries under a treaty, to federal and state agencies to enforce civil and criminal laws, or to federal law enforcement and intelligence agencies to combat terrorism. You must provide your TIN whether or not you are required to file a tax return. Under section 3406, payers must generally withhold a percentage of taxable interest, dividend, and certain other payments to a payee who does not give a TIN to the payer. Certain penalties may also apply for providing false or fraudulent information.