**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| In re: | ) | **Chapter 11** |
|  | ) |  |
| **ENERGY FUTURE HOLDINGS CORP.,** *et al.*,[1] | ) | **Case No. 14-10979 (CSS)** |
|  | ) |  |
| Debtors. | ) | **(Jointly Administered)** |
|  | ) |  |

**DECLARATION OF DISINTERESTEDNESS OF STROZ FRIEDBERG, LLC PURSUANT TO THE ORDER AUTHORIZING THE RETENTION AND COMPENSATION OF CERTAIN PROFESSIONALS UTILIZED IN THE ORDINARY COURSE OF BUSINESS**

I, Erin Nealy Cox, declare under penalty of perjury:

    1.     I  am an Executive Managing Director with Stroz Friedberg, LLC, with an office located at 2101 Cedar Springs Road Suite 1250, Dallas, Texas (the "Company").

    2.     Energy Future Holdings Corporation and certain of its affiliates, as debtors and debtors in possession (collectively, the "Debtors"), have requested that the Company provide IT and data security advisory services to the Debtors, namely EFH Corporate Services Company, and the Company has consented to provide such services.

    3.     The Company may have performed services in the past, may currently perform services and may perform services in the future, in matters unrelated to these chapter 11 cases, for persons that are parties in interest in the Debtors' chapter 11 cases. The Company does not perform services for any such person in connection with these chapter 11 cases, or have any relationship with any such person, their attorneys, or accountants that would be adverse to the

---

[1] The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, for which joint administration has been granted, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

Debtors or their estates with respect to the matter on which the Company is proposed to be employed.

4.      As part of its customary practice, the Company is retained in cases, proceedings, and transactions involving many different parties, some of whom may represent or be employed by the Debtors, claimants, and parties in interest in these chapter 11 cases.

5.      Neither I nor any principal, partner, director, officer, etc., of or professional employed by, the Company has agreed to share or will share any portion of the compensation to be received from the Debtors with any other person other than the principal and regular employees of the Company.

6.      Neither I nor any principal, partner, director, officer, of or professional employed by, the Company, insofar as I have been able to ascertain, holds, or represents any interest adverse to the Debtors or their estates with respect to the matter(s) upon which this Company is to be employed.

7.      The Debtors owe the Company $0.00 for prepetition services, the payment of which is subject to limitations contained in the United States Bankruptcy Code, 11 U.S.C. §§ 101–1532.

8.      I understand that the *Order Authorizing the Retention and Compensation of Certain Professionals Utilized in the Ordinary Course of Business* does not authorize any of the Debtors to pay the Company for prepetition services.

9.      I further understand that this Declaration will not suffice as the Company's proof of claim.

10. As of April 29, 2014, which was the date on which the Debtors commenced these chapter 11 cases, the Company was party to an agreement for indemnification with certain of the Debtors. A copy of such agreement is attached as **Exhibit 1** to this Declaration.

11. Such agreement for indemnification (the "OCP Agreement") is subject to the following modifications, applicable during the pendency of the Debtors' chapter 11 cases:

> (a) the Company shall not be entitled to indemnification, contribution, or reimbursement for services provided under the OCP Agreement other than those described in such OCP Agreement, unless such services and indemnification therefor are approved by the Bankruptcy Court.

> (b) Notwithstanding anything to the contrary in the OCP Agreement, the Debtors shall have no obligation to indemnify the Company, or provide contribution or reimbursement to the Company, for any claim or expense related to such OCP Agreement that is either: (i) judicially determined (the determination having become final) to have arisen from the Company's gross negligence or willful misconduct; (ii) for a contractual dispute in which the Debtors allege the breach of the Company's contractual obligations under the OCP Agreement unless the Court determines that indemnification, contribution or reimbursement would be permissible pursuant to *In re United Artists Theatre Co.*, 315 F.3d 217 (3d Cir. 2003); or (iii) settled prior to a judicial determination as to the exclusions set forth in clauses (i) and (ii) above, but determined by the Court, after notice and a hearing to be a claim or expense for which the Company should not receive indemnity, contribution or reimbursement under the terms of the OCP Agreement as modified by this Order.

> (c) If, before the earlier of (i) the entry of an order confirming a chapter 11 plan in these cases (that order having become a final order no longer subject to appeal), and (ii) the entry of an order closing these chapter 11 cases, the Company believes that it is entitled to the payment of any amounts by the Debtors on account of the Debtors' indemnification, contribution and/or reimbursement obligations under the OCP Agreement (as modified by this Order), including without limitation the advancement of defense costs, the Company must file an application therefor in this Court, and the Debtors may not pay any such amounts to the Company before the entry of an order by this Court approving the payment. This subparagraph (c) is

intended only to specify the period of time under which the Court shall have jurisdiction over any request for fees and expenses by the Company for indemnification, contribution or reimbursement, and not a provision limiting the duration of the Debtors' obligation to indemnify the Company.  All parties in interest in these chapter 11 cases shall retain the right to object to any demand by the Company for indemnification, contribution or reimbursement.

12.    The Company is conducting further inquiries regarding its retention by any creditors of the Debtors, and upon conclusion of that inquiry, or at any time during the period of its employment, if the Company should discover any facts bearing on the matters described herein, the Company will supplement the information contained in this Declaration.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Date:  June 17, 2014

_____

Erin Nealy Cox

<u>EXHIBIT 1</u>

Copy of Agreement



**PRIVILEGED AND CONFIDENTIAL**

**VIA EMAIL**

September 10, 2013 (the "<u>Effective Date</u>")

EFH Corporate Services Company
Energy Plaza
1601 Bryan Street
Dallas, TX 75201
Attn: Jeffrey J. Walker, Vice President Associate Counsel & Secretary

Dear Mr. Walker:

This letter is a Master Services Agreement (the "<u>Agreement</u>") between EFH Corporate Services Company ("<u>Client</u>") and Stroz Friedberg, LLC ("<u>Stroz Friedberg</u>" and, together with Client, the "<u>Parties</u>") that will serve to document the general terms and conditions of specific engagements between the parties for the period between September 10, 2013 and September 10, 2016 (the "<u>Term</u>").  All existing and ongoing engagements, in each case described in a Statement of Work substantially in the form of <u>Attachment A</u>, executed between the Parties and specifically referencing this Agreement (each, a "<u>SOW</u>"), will be covered by this Agreement.

<u>Services</u>

From time to time, Client, through its in-house or outside counsel may request that Stroz Friedberg provide consulting and technical services related to litigation, investigations or corporate activities of Client or any of its affiliates (to the extent described in an SOW, "<u>Engagements</u>").  Such services include, but are not limited to the following:

(a) <u>Incident Response</u>.  Stroz Friedberg's Incident Response Team will work quickly and efficiently to assess of the origin, nature, and extent of any attack on or potential intrusion or unauthorized access into EFH's networks and assets.  Specific tasks in support of this work include:  (a) identification of key systems that may have been targeted; (b) preservation and imaging of key systems; (c) log file and hard drive analysis for evidence of malware exploitable vulnerabilities, and exfiltration; (d) reverse engineering of malware to determine functionality and capabilities;  (e) assistance with remediation of compromised systems to make sure attackers are securely removed from the environment and normal operations resume; and (f) coordination with law enforcement and other government agencies (as requested by EFH) to assist in the investigation into and prosecution of alleged attackers.

(b) <u>Digital Forensics</u>.  As industry leaders in digital forensics, our analysis is often case and/or issue dispositive answering critical questions.  While no matter is identical, for digital forensics projects, Stroz Friedberg's work typically includes the following types of analysis: (a) forensic imaging of hard drives and volatile memory for preservation and analysis; (b) examining forensic image for key evidence, including registry and log file analysis and keyword searching of active and unallocated sectors; (c) analysis for mass deletions or wiping activity; (d) review of system data for evidence of additional external devices plugged into hard drives(including the use of ftp or web mail to exfiltrate company files or data); (e) identification of recently accessed or modified files; (f) review of internet browsing activity (including use of web mail); and (g) carving of artifacts from unallocated space.

(c) <u>Security Science</u>.  Stroz Friedberg's Security Science team applies an analytic approach to assessing security risk and developing strategic solutions.  While each matter is different, typical steps associated with our risk-based security assessments include: (a) identification of individuals and corporate teams with knowledge of existing security measures in place and the "crown jewels" they protect; (b) investigation and interviews to discern what protections are currently in

place; (c) determination of what enhancements could be made to existing security structures; and (d) assist corporate team on implementation and management of proposed enhancements.

(d) <u>Investigations</u>.  For projects undertaken by Stroz's traditional investigations and intelligence group, our work consists of research and analysis into targeted issues and creation of custom reporting tailored specific project needs.  This includes (a) reputational due diligence investigations of corporate and other entities (overt and covert); (b) background investigations of individuals, vendors, and competitors (overt and covert); (c) new market entry plans and competitor analysis; and (d) specialized reporting, from high-level red flag checks to deep dives, including source inquiries.

(e) <u>Data Discovery</u>.  Stroz Friedberg provides full service electronic discovery solutions, including the following:  (a) collection and harvesting of data; (b) implementation and use of analytic tools to enhance search, culling and analysis such as early case assessment, privilege analytics, and predictive coding; (c) hosting of data in our proprietary review platform, Stroz Review; (d) deduping, "near" duping, and email threading of data; (e) productions, including redactions, bates-labeling and load file creation; (f) mobile processing unit for use in foreign jurisdictions; (g) foreign language translation; and (h) expert testimony (as needed) on electronic discovery issues, such as burden affidavits.

Stroz Friedberg's work on and communications concerning the Engagements, including any preparatory or preliminary work or communications to date, will be covered by the attorney-client and/or the attorney work product privileges.

<u>Fees</u>

(a) <u>General Rates</u>.  Stroz Friedberg charges for the time spent working on each Engagement on an hourly fee basis at rates set forth as follows: for Forensic Examiners and Consultants, $325 to $475 per hour; for Executive Managing Director of the Dallas Office, Erin Nealy Cox, $650 per hour; for other Engagement Managers, including Executive and other Managing Directors, and Vice Presidents, $495 to $525 per hour; and for administrative staff, $90 to $205 per hour.

(b) <u>Machine Time and Specialized Solutions</u>. The rate for machine time devoted to running a forensic process is $95 per hour.  The rates for use of our proprietary compliance monitoring platform, our proprietary host based intrusion detection application, our proprietary incident response platform, the OmniPeek Network Analyzer, and/or our mobile electronic disclosure/discovery processing, hosting and production unit will be charged at an amount to be structured depending upon the circumstances of the deployment.

(c) <u>Electronic Discovery Services</u>.  Upon Client's request, Stroz Friedberg will furnish electronic discovery services, including data processing (e.g., filtering for duplicates, near-duplicates, keywords and advanced data extraction), load file creation, and online hosting.  Electronic discovery services are provided at prices set forth in <u>Attachment B</u> and pursuant to an SOW ("<u>EDG SOW</u>") that specifies the requested services and terms that may apply.

(d) <u>Specialized Services</u>. Utilization of EnCase Enterprise Edition as requested or required by Client, including for data collections performed covertly or live over a network, will be charged at an amount to be structured depending upon the circumstances of the deployment, such amount to be approved by Client in advance.  For work performed by the private investigative division (Stroz Friedberg Investigations), the Investigators' rates range from $250 to $495 per hour.  Charges and/or rates for subcontracted services hereunder, to the extent such subcontracting is permitted by the section "Subcontracting" below, will be charged as agreed to in the applicable consent for such subcontracting.

(e) <u>Expedited Rates</u>.  In situations where expedited work is requested or required by Client, including, but not limited to expert reports or affidavits being prepared in less than seven business days, forensic imaging and/or analysis being performed in less than three business days and work that must be performed over a weekend or holiday, or on an overtime basis, Stroz Friedberg reserves the right to charge for expedited service at 1.5 times its hourly rates for professional services, provided that no such expedited rates/charges shall apply without the prior approval, on a case-by-case basis, by Client.

(f) <u>Expert testimony.</u>  Written expert testimony in the form of expert reports, affidavits or declarations will be charged at the normal hourly rates set forth above.  Stroz Friedberg will consider as part of each Engagement and will charge at the normal hourly rate any internal peer review performed with respect to proposed expert reports, affidavits, declarations or oral testimony of deposition, hearing or trial testimony. However, expert testimony provided orally at depositions, hearings or trials will be charged at 1.5 times the hourly rates set forth above (without a further 1.5 multiplier, if it otherwise would be applicable, for expedited service charges).

(g) <u>Retainer:</u>  For purposes of the Engagements brought under this Agreement, Stroz Friedberg waives its usual retainer fee.  Stroz Friedberg shall rely on normal end-of-month invoices, which shall be payable upon receipt.  Stroz Friedberg reserves the right to request payment of a retainer in the future should the amount owed to Stroz Friedberg exceed fifty thousand dollars ($50,000).  Any estimates of fees and expenses given are only estimates and are not binding.

(h) <u>Miscellaneous Charges.</u>  Fees and reasonable, documented, out-of-pocket expenses and costs to be charged will include, but not be limited to, use of forensically-prepared hard drives ($50 to $400 each, depending upon the size of the drive), other computer hardware and digital media; airfare (business class); hotel; cabs; copies or printed documents (at $.08 per page); overnight delivery charges (at a minimum of $20 per delivery);  necessary late-night (after 8:00 p.m.) meals and transportation; credit check fees; and database searches (if applicable).

(i) <u>Invoices.</u>  All undisputed amounts reflected in Stroz Friedberg invoices are due and payable within 60 days of receipt of the applicable invoice.  Stroz Friedberg reserves the right to terminate its services at any time if Client fails to pay Stroz Friedberg's invoices or a requested reasonable refresher of a retainer in a timely manner.

<u>Confidentiality</u>

Stroz Friedberg will maintain, (and insure that all its personnel agree in writing to comply with the terms of this Agreement and maintain) in trust, confidence and as confidential all information and data it receives from Client and will not disclose such information and data (the "<u>Confidential Information</u>") to any third party or use such Confidential information other than as specifically provided under this Agreement without Client's prior written consent.  Confidential Information does not include information that (1) has been or is, prior to the Effective Date, in the public record, or is placed in the public record by Client after the Effective Date begins; or (2) which Stroz Friedberg can show was received by them from an independent third party that is not under obligation to Client to regarding the information.  If Stroz Friedberg encounters what it deems to be any child pornography on any computer media delivered to it in the course of any Engagement, Stroz Friedberg reserves the right to disclose such contraband to the appropriate authorities.  Upon termination of this Agreement, Stroz Friedberg shall return to Client or destroy (with certification of such destruction provided to Client) all Confidential Information.

<u>Notification of Subpoena</u>

If any of the information or materials related to any Engagement that are within the custody or control of Stroz Friedberg (or the custody or control of any of its agents or representatives) are subpoenaed by any person or entity, Client will be provided written notice of such subpoena in advance of Stroz Friedberg's compliance therewith to enable Client to seek a protective order or other appropriate remedy.  Stroz Friedberg will cooperate with Client in any effort by Client to obtain such protective order or remedy.  If Client does not obtain and deliver to Stroz Friedberg a protective order or other order by the due date of the subpoena, Stroz Friedberg may comply with the subpoena.

<u>Indemnification</u>

Client agrees to hold harmless and indemnify Stroz Friedberg, its officers, employees and agents (the "<u>SF Group</u>") against all third party claims, damages and costs including attorneys' fees (collectively "<u>Claims</u>") to the extent arising directly from (i) a violation by Client of the Confidentiality provisions of this Agreement or any tort or physical harm carried out by any Client Group (as defined below) member or (ii) a violation by any Client Group member of any applicable law or (iii) the adjudicated willful misconduct or gross negligence of any Client Group member.

Stroz Friedberg agrees to hold harmless and indemnify Client, Client's affiliates, and the officers, employees and agents of Client and Client's affiliates (the "Client Group") against all Claims to the extent arising directly from (i) a violation by Stroz Friedberg of the Confidentiality provisions of this Agreement or any tort or physical harm carried out by any SF Group member or (ii) a violation by any SF Group member of any applicable law or (iii) the adjudicated willful misconduct or gross negligence of any SF Group member.

Limitation of Liability and Damages

Because digital equipment/data/media are fragile and may be damaged, infected, or corrupted prior to the time Stroz Friedberg receives them, Stroz Friedberg for itself and its agents or employees will not assume responsibility for damage that may occur to the Client's equipment/data/media prior to or during Stroz Friedberg's efforts to complete an Engagement, unless such damage results from the willful misconduct, gross negligence or fraudulent behavior of Stroz Friedberg or its agents and employees. As such, Stroz Friedberg will not be liable for damages, including without limitation consequential damages for loss of data, loss of business profits, business interruption, or other pecuniary loss, or incidental, consequential, or indirect damages ("consequential damages") arising from damage that may occur to Client's equipment/data/media, nor shall Client have any liability to Stroz Friedberg for any consequential damages in connection with this Agreement. Any data, especially data restored from unknown sources, may contain viruses or other malware; therefore, Client assumes responsibility to protect themselves with respect to the receipt of data from Stroz Friedberg or any other party and shall advise its agents and third party recipients to take similar precautions.

Third Party Intellectual Property Claims

Client acknowledges that the efforts of Stroz Friedberg and/or its agents or employees to complete any Engagement may result in the acquisition of forensic images or copies of protected intellectual property located on equipment/data/media belonging to Client. Client agrees to hold Stroz Friedberg harmless for any and all claims that such acquisition of protected intellectual property constitutes an infringement or misappropriation of the intellectual property rights of a third party, but Stroz Friedberg will notify Client should any such claim be made.

Closing of Engagement

At the end of each Engagement or the termination of this Agreement, upon written request from Client, Stroz Friedberg shall return to Client all original materials provided by Client to Stroz Friedberg, (collectively, "Client Materials"). In the absence of a written request to return Client Materials, Stroz Friedberg will retain Client Materials for two years following the applicable Engagement, whereupon Stroz Friedberg reserves the right to destroy that data pursuant to its standard document and electronic data destruction policy.

Conflicts

This Agreement pertains to discrete matters and would not preclude Stroz Friedberg from rendering services to other clients adverse to Client on matters that are in no way related to this Agreement or any Engagement.

Subcontracting

Stroz Friedberg agrees not to subcontract all or any portion of the services hereunder without the prior written consent of Client, which will not be unreasonably withheld; provided that any such consent may be subject, without limitation, to such terms and conditions as Client shall require and the execution by such subcontractor of such documentation as Client shall require; provided, further, that Stroz Friedberg will not be relieved of any duty or liability relating to any services hereunder by reason of subcontracting permitted hereunder.

Records and Rights to Audit

Stroz Friedberg will keep accurate and complete books of accounts, records, documents and other evidence related to the charges for and performance of all services hereunder ("Records"). Client may inspect those records upon prior request at any time during normal business hours.

All Records required for an audit and inspection will be made available at the offices of Stroz Friedberg, at all reasonable times, for inspection, audit or reproduction, until three years from date of final payment for any services hereunder. Client will bear its own expenses incurred in conducting any such inspection or audit; provided that should any audit or investigation produce evidence that Stroz Friedberg has overstated charges or units of measure upon which charges are based, or provided gifts, gratuities or other benefits to employees of Client in violation of the Business Ethics provisions of this Agreement, Stroz Friedberg will be liable to Client the cost of audit and investigation (in addition to any other remedies Client may have hereunder or under applicable law).

Business Ethics

Stroz Friedberg represents, warrants and covenants that neither it, nor any member of SF Group, has provided or offered, or during the term of this Agreement will provide or offer, any compensation or benefit of any type, including any gift or gratuity, other than advertising mementos or other tokens of nominal value or reasonable business meals and business entertainment, to any Client employee.

If, during the term of this Agreement, Stroz Friedberg knows or becomes aware of any facts or circumstances contrary to the representations, warranties and covenants provided for in the preceding paragraph, Stroz Friedberg will immediately notify Client and provide sufficient information for Client to take appropriate protective or corrective actions. Stroz Friedberg further agrees to cooperate fully in any such investigation undertaken by Client.

Compliance with Laws

Stroz Friedberg represents, warrants and covenants that it is knowledgeable of and will comply with all federal, state, and local laws, rules, decrees, orders, regulations, by-laws, ordinances and codes that may, in any manner, affect the conduct of the services hereunder. In this regard, any failure to so comply shall constitute a breach of this Agreement.

Rights to Data

Any work product or other deliverable prepared for Client and delivered to Client pursuant to this Agreement or relating to, directly or indirectly, the services hereunder will become the property of Client when so delivered.

Publicity

Stroz Friedberg shall not publicize its relationship with Client, or the terms of this Agreement, or use Client's name or other trademarks or service marks in any advertisement or publication, without Client's prior written approval.

Miscellaneous

Client and Stroz Friedberg agree that this Agreement shall be governed by and construed and enforced in accordance with the internal laws of the State of Texas (as opposed to the conflict of law provisions) as an agreement made and to be performed entirely within such State. Client and Stroz Friedberg agree that this Agreement (a) may not be modified or amended, except by a writing signed by each Party; (b) shall be binding upon each Party and each Party's successors and permitted assigns; and (c) contains the entire agreement and understanding among Client and Stroz Friedberg with respect to the subject matter hereof and supersedes all prior agreements, arrangements, and understandings, written or oral, among Client and Stroz Friedberg with respect to the subject matter hereof. No provision of this Agreement may be waived except in writing by the party against whom such waiver is sought to be enforced. No waiver by either party, whether express or implied, of any provision of this Agreement, or any breach or default thereof, shall constitute a continuing waiver of such provision or of any other provision of this Agreement. Client and Stroz Friedberg hereby consent to the jurisdiction of the District Court of the State of Texas for the County of Dallas and the United States District Court for the Northern District of Texas for all purposes in connection with this Agreement, and further consent that any process or notice of motion in connection therewith may be served as a notice if in writing and given by (i) certified first class mail, return receipt requested, with postage prepaid, sent to the other, (ii) personal delivery, or (iii) nationally recognized overnight delivery service at the addresses set forth at the beginning of this

letter, and shall be deemed given when received, within or without the State of Texas. Each Party accepts service of process in this manner with respect to this Agreement.

If you find this letter satisfactory, kindly return an executed copy. Stroz Friedberg looks forward to our work with you.

Very truly yours,

STROZ FRIEDBERG, LLC

By: _____
    Erin Nealy Cox
    Executive Managing Director

AGREED TO AND ACCEPTED:

EFH CORPORATE SERVICES COMPANY

By: _____
    Jeffrey J. Walker
    Vice President, Associate General Counsel & Secretary

**Attachment A**

**Forensic Engagement – Statement of Work (SOW)**

| |
|---|
| Prepared for:  EFH Corporate Services Company<br>Project Name:<br>Client Matter:<br>Date: |

Incident Response/Digital Forensics– Statement of Work (SOW)

Date: _____

Contact: _____

Address:
_____

Phone: _____Email: _____

Name of Subject Employee(s), Computer(s), or Data for Review:  _____
Brief Description of Project:_____
Key Date or Date Range: _____

Data to be Examined:  (Check any that apply.  Change number if necessary)

- ☐ One Laptop(s)
- ☐ One Desktop Computer(s)
- ☐ One Server(s)
- ☐ Exchange Email
- ☐ Log Files
- ☐ Malware
- ☐ Policies, Procedures and/or Response Plans
- ☐ Other: _____

Services Requested:

- ☐ Forensically Preserve Hard Drive(s)    ☐ Produce Active and Deleted File Spreadsheets
- ☐ Produce Report regarding Internet Cache/History ☐ Consulting Hours by Stroz Forensic Team
- ☐ Produce Report regarding Removable Devices Used  ☐ Malware Analysis
- ☐ Intrusion Detection ☐ Remediation Assistance ☐ Phone Support ☐ Training
- ☐ Other: _____
_____

Other general terms and conditions for this Engagement are covered by the Master Services Agreement between the parties, dated September 10, 2013.

Authorized by:
EFH Corporate Services Company

By: _____
_____

Acknowledged and Received by:
Stroz Friedberg, LLC

By: _____
ERIN NEALY COX
Executive Managing Director

Please send this SOW to Erin Nealy Cox at enealycox@strozfriedberg.com or 214-764-3151 (e-fax).  Secure and send any data or computers directly to Evidence Technician, Stroz Friedberg, LLC, 2101 Cedar Springs Rd., Suite 1250, Dallas, TX 75201.  Please include our phone number, 214-377-4555, on any shipment tracking forms.

## Attachment B – Stroz Discovery Pricing Schedule

**PROCESSING**

### Stroz Discovery Processing
- Standard Processing (Near Dupe and Threading Included) ............................................. $300 per GB
- Automated Foreign Language Translation to English ........... ........$400 per GB or $0.05 per Page

**- or -**

- Initial Culling ("In").............................................................................................. $100 per GB
- Secondary Processing ("Out") ................................................................................ $300 per GB

### Pre-Processed Data
- Ingestion of Pre-Processed Data (Paper/3rd Party Production/Migrated Data) ................ $100 per GB
- OCR or other text extraction…............................................................................... $100 per GB

**HOSTING**

### Stroz Review
- Stroz Review Hosting…………………… ...................................................$40 per GB per Month
- Stroz Review User Licenses.........................................................................$100 per User per Month
- Data Storage
  - Data Deletion .......................................................................................................... No Charge
  - Full archiving ........................................ $40 per GB transfer charge & $50 Monthly Media Storage
  - Restoration of Archived Project to Stroz Review .......................................................... $120 per GB
  - Near Line ............................................................................................$10 per GB per Month

**PRODUCTION**

### Production
- TIFF Generation ................................................................................................$0.03 per Page
- TIFF Bundle (Production including Bates Stamping, Branding & Watermarking)........ $0.05 per Page
- Load File Delivery...............................................................................$75 to $125 per Load File
- Output to Hard Drive.............................................................................$175 to $400 per Drive
- Output to CD/DVD .................................................................................$35/$55 per Media

**STROZ ANALYTICS**

### Early Data Assessment – First Glance
- First Glance Processing .......................................................................................... $150 per GB
- First Glance Hosting (Up to 90 Days Per Analytic Set) ...................................................... No Charge
- First Glance User Licenses (Up to 3 Licenses) .............................................................. No Charge

### Privilege Analytics...............................................................................................$125 per GB

### Extract (Targeted objective data extraction)............... ..................................…....…$150 per GB

### AutoSuggest (Predictive Coding) .................................................................….......$500 per GB

### Elevate (Rules-based search and classification)……………………………………......$500 per GB

### Near Duplicate/Threading (Unbundled) ……………………………………….…....$150 per GB

**CONSULTING**

### Consulting & Engineering Services
- Expert Consulting & Forensic Analysis ........................................................ Per Engagement Letter
- Project Management and Exception Handling ................................................ Per Engagement Letter
- Customized Engineering Services................................................................ Per Engagement Letter

Pricing for additional services is available upon request.