# EXHIBIT D

CONFIDENTIAL

# ENERGY FUTURE INTERMEDIATE HOLDING COMPANY LLC
# EFIH FINANCE INC.

**Offer to Exchange the EFIH First Lien Notes (as defined below) for EFIH First Lien DIP Loans (as defined below)**

> The Offer (as defined below) will expire at 5:00 p.m., New York City time, on June 6, 2014 (the "*Expiration Date*") unless extended or earlier terminated by the Company (as defined below). Holders of the EFIH First Lien Notes (as defined below) must tender their EFIH First Lien Notes on or prior to the Expiration Date in order to receive the Exchange Consideration (as defined below). In order to receive the Total Consideration (as defined below), holders of EFIH First Lien Notes must tender their EFIH First Lien Notes on or prior to 5:00 p.m., New York City time, on May 19, 2014, unless extended at the sole discretion of the Company (the "*Early Participation Date*"). Tenders of EFIH First Lien Notes may not be withdrawn, except in certain limited circumstances where withdrawal rights are required by law. The Offer is subject to, among other things, the approval of the Bankruptcy Court (as defined below), and the Company does not intend to permit the Offer to expire prior to the date the EFIH First Lien Settlement (as defined below) is heard, and approved, by the Bankruptcy Court.

Energy Future Intermediate Holding Company LLC ("*EFIH*") and EFIH Finance Inc. ("*EFIH Finance*" and, together with EFIH, the "*Issuer*," the "*Company,*" "*we*," "*us*" or "*our*"), both of which are wholly owned subsidiaries of Energy Future Holdings Corp. ("*EFH Corp.*"), hereby offer (the "*Offer*") the holders (each, a "*Holder*") of our 6.875% Senior Secured Notes due 2017 (the "*EFIH 6.875% First Lien Notes*") and 10.00% Senior Secured Notes due 2020 (the "*EFIH 10.00% First Lien Notes,*" and together with EFIH 6.875% First Lien Notes, the "*EFIH First Lien Notes*"), upon the terms and subject to the conditions set forth in this Confidential Information Memorandum, including the accompanying Letter of Transmittal and related instruction letters and forms (collectively, the "*Information Memorandum*"), the opportunity to exchange all of the EFIH First Lien Notes held by such Holder for first lien term loans (the "*EFIH First Lien DIP Loans*") under a new senior secured super-priority debtor-in-possession credit agreement (the "*EFIH First Lien DIP Facility*") in an aggregate principal amount calculated in the manner set forth below.

Holders who validly tender their EFIH First Lien Notes on or prior to the Early Participation Date will be eligible to receive for each $1,000 principal amount of EFIH First Lien Notes tendered in the Offer $1,050.00 in an aggregate principal amount of EFIH First Lien DIP Loans (the "*Total Consideration").* The Total Consideration includes an early participation payment (the "*Early Participation Consideration*") of $17.50 in an aggregate principal amount of EFIH First Lien DIP Loans per $1,000 principal amount of EFIH First Lien Notes validly tendered in the Offer on or prior to the Early Participation Date. **Holders must validly tender and deliver their EFIH First Lien Notes on or prior to the Early Participation Date in order to be eligible to receive the Total Consideration for such EFIH First Lien Notes exchanged in the Offer.** Holders who validly tender their EFIH First Lien Notes after the Early Participation Date and on or prior to the Expiration Date will be eligible to receive EFIH First Lien DIP Loans equal to the Total Consideration less the Early Participation Consideration per $1,000 principal amount of EFIH First Lien Notes (the "*Exchange Consideration*"). The Company will also pay through the issuance of additional EFIH First Lien DIP Loans in an aggregate principal amount equal to 101% of the amount of all accrued and unpaid interest at the non-default rate up to, but not including, the Closing Date (as defined below) on all of the EFIH First Lien Notes that are accepted for exchange in the Offer. The following table sets forth the Exchange Consideration and the Total Consideration payable per $1,000 principal amount of EFIH First Lien Notes tendered pursuant to the Offer in the form of EFIH First Lien DIP Loans:

| Securities | CUSIP Numbers | Aggregate Principal Amount Outstanding | Exchange Consideration(1)(2) | Early Participation Consideration(1)(2) | Total Consideration(1)(2) |
|---|---|---|---|---|---|
| 6.875% Senior Secured Notes due 2017 | 29269QAE7 U29197AC1 | $502,714,000 | $1,032.50 | $17.50 | $1,050.00 |
| 10.00% Senior Secured Notes due 2020 | 29269QAA5 29269QAK3 U29197AG2 | $3,482,106,000 | $1,032.50 | $17.50 | $1,050.00 |

---

*(cover page continued)*

(1) Does not include accrued and unpaid interest, which will be paid through the issuance of additional EFIH First Lien DIP Loans in an aggregate principal amount equal to 101% of the accrued and unpaid interest up to, but not including, the Closing Date at the non-default rate on EFIH First Lien Notes accepted for exchange in the Offer.

(2) In no event will the consideration payable in the Offer be adjusted in any manner to take into account the actual amount of original issue discount, if any, that is applicable in connection with any syndication of the EFIH First Lien DIP Loans and the closing of the EFIH First Lien DIP Facility.

To participate in the Offer, Holders must tender their EFIH First Lien Notes and deliver a duly executed Letter of Transmittal on or prior to the Expiration Date. Each Holder that validly tenders EFIH First Lien Notes and delivers a duly executed Letter of Transmittal on or prior to the Early Participation Date will be entitled to receive the Total Consideration on the closing date of the Offer (the "*Closing Date*"). Each Holder that validly tenders EFIH First Lien Notes and delivers a duly executed Letter of Transmittal after the Early Participation Date and on or prior to the Expiration Date will not be entitled to receive the Early Participation Consideration and will only be entitled to receive the Exchange Consideration on the Closing Date.

**On April 29, 2014, EFH Corp. and the substantial majority of its direct and indirect subsidiaries, excluding Oncor Electric Delivery Holdings Company LLC and its subsidiaries, but including EFIH and EFIH Finance (collectively, the "*Reorganizing Entities*"), filed voluntary petitions for relief under Chapter 11 of Title 11 ("*Chapter 11*") of the United States Code, 11 U.S.C. §§101 et. seq. (the "*Bankruptcy Code*") in the United States Bankruptcy Court for the District of Delaware (the "*Bankruptcy Court*") and are operating their businesses and managing their property as debtors-in-possession pursuant to the Bankruptcy Code.**

**The Offer is being made, and the EFIH First Lien DIP Loans are being offered and issued, only to Holders of EFIH First Lien Notes that are (A) "qualified institutional buyers" as defined in Rule 144A of the Securities Act of 1933, as amended (the "*Securities Act*"), (B) institutional accredited investors (as defined in Rule 501(a)(1), (2), (3), or (7) under the Securities Act, or (C) non-U.S. persons (within the meaning of Regulation S under the Securities Act) out of the United States (each a "*Qualifying Holder*").**

Pursuant to that certain Restructuring Support and Lock-Up Agreement, dated as of April 29, 2014 (the "*Restructuring Support Agreement*"), holders of approximately 32% of the outstanding aggregate principal amount of EFIH First Lien Notes (such holders, the "*RSA EFIH First Lien Note Parties*") have agreed to a voluntary settlement with respect to the Issuer's obligations under the EFIH First Lien Notes held by the RSA EFIH First Lien Note Parties (such settlement, the "*EFIH First Lien Settlement*"). Pursuant to such settlement, each RSA EFIH First Lien Note Party has agreed to accept as payment in full of any claims arising out of the EFIH First Lien Notes held by such RSA EFIH First Lien Note Party a principal amount of loans under the EFIH First Lien DIP Facility equal to the greater of:

(a) 105% of the principal amount on the EFIH First Lien Notes plus 101% of the accrued and unpaid interest through the Closing Date at the non-default rate on such principal (which amount will be deemed to include any original issue price discount on the EFIH First Lien DIP Loans); and

(b) 104% of the principal amount of, plus accrued and unpaid interest at the non-default rate on the EFIH First Lien Notes through the Closing Date as adjusted by the original issue price discount paid on the EFIH First Lien DIP Loans in connection with the initial lenders syndication of the EFIH First Lien DIP Facility.

No RSA EFIH First Lien Note Party will receive any other fees, including commitment fees, paid in respect of the EFIH First Lien DIP Facility on account of their EFIH First Lien Notes, although they may receive other consideration in connection with other transactions contemplated by the Restructuring Support Agreement as further described herein.

The Restructuring Support Agreement requires the Company to obtain the final approval by the Bankruptcy Court of the Company's incurrence of indebtedness, and granting of superpriority priming liens, under the EFIH First Lien DIP Facility and of certain makewhole settlements relating to the EFIH First Lien Notes and the EFIH Second Lien Notes (as defined herein) and to consummate this Offer on or before the 75th day after the Petition Date, which day is July 13, 2014.

*(cover page continued)*

In connection with this Offer, the Reorganizing Entities expect to initiate litigation to obtain entry of an order from the Bankruptcy Court:  (i) disallowing the claims of holders of EFIH First Lien Notes that do not participate in the Offer and thereby become a party to the EFIH First Lien Settlement (such holders, the "*Non-Settling EFIH First Lien Note Holders*") derived from or based upon makewhole or other similar payment provisions under the EFIH First Lien Notes (such claims, the "*EFIH First Lien Makewhole Claims*"); and (ii) providing that, upon the closing of the EFIH First Lien DIP Facility, Non-Settling EFIH First Lien Note Holders will receive from the proceeds of such facility only cash in an amount equal to the principal plus accrued and unpaid interest up to but not including the Closing Date, at the non-default rate of such holder's claim (not including any premiums, settlements, fees, or claims relating to the repayment of the EFIH First Lien Notes held by the Non-Settling EFIH First Lien Note Holders).  Any other claims allowed by the Bankruptcy Court of such Non-Settling EFIH First Lien Note Holders arising out of the EFIH First Lien Notes will receive their pro rata share of cash in the amount of such claims on the effective date of the Restructuring Plan (as defined herein) or such other treatment as permitted under section 1129(b) of the Bankruptcy Code, as mutually agreed by EFIH and Required EFIH Unsecured Consenting Creditors (as defined in the Restructuring Support Agreement).

A Holder that participates in the Offer (a "*Participating Holder*") will be required to tender all of its EFIH First Lien Notes.  No partial tender of a Participating Holder's EFIH First Lien Notes will be valid.  No Holder is required to participate in the Offer and any Holder's participation in the Offer is voluntary.  The Offer is not conditioned on any Holders of any minimum principal amount of EFIH First Lien Notes participating in the Offer.  Subject to applicable law, the Offer is being made separately for each series of EFIH First Lien Notes and, subject to applicable law, the Company reserves the right to terminate, withdraw or amend the Offer with respect to either series of EFIH First Lien Notes independently from the other series.

Participating in the Offer requires each Participating Holder to become a lender under the EFIH First Lien DIP Facility and involves risks.  Before deciding to participate in the Offer, you should consider carefully each of the risk factors set forth in "Risk Factors" beginning on page 23 of this Information Memorandum and the other risk factors incorporated by reference into this Information Memorandum.

No tenders of EFIH First Lien Notes will be valid if delivered after the Expiration Date.  A Holder may decide to participate in the Offer by tendering its EFIH First Lien Notes and delivering a validly executed Letter of Transmittal the form accompanying this Information Memorandum in accordance with the instructions set forth therein.  A Holder must tender its EFIH First Lien Notes and deliver a validly executed Letter of Transmittal in the form accompanying this Information Memorandum in accordance with the instructions set forth therein, by the Early Participation Date to receive the Total Consideration.  A Holder that tenders its EFIH First Lien Notes and delivers a validly executed Letter of Transmittal in the form accompanying this Information Memorandum in accordance with the instructions set forth therein after the Early Participation Date and on or prior to the Expiration Date will only be entitled to receive the Exchange Consideration.  A Holder may not withdraw EFIH First Lien Notes that it has tendered for exchange at any time, except in certain limited circumstances where additional withdrawal rights are required by law.  If the Company determines to offer withdrawal rights, in accordance with applicable law, including in the event a material change causes the Company to update the information relating to this Offer and extend the Expiration Date, any such withdrawal rights will be limited as set forth in any notice thereof by the Company. The Company will determine in its sole discretion whether any EFIH First Lien Notes have been validly tendered into the Offer and a validly executed Letter of Transmittal has been validly submitted and whether to accept any EFIH First Lien Notes that have not been validly tendered into the Offer or Letter of Transmittal that has not been validly executed and delivered.

On or promptly following the Expiration Date, Epiq Bankruptcy Solutions, LLC ("*Epiq Systems*"), the information and administrative agent for the Offer (the "*Offer Agent*"), will notify (the "*Closing Date Notification*") each Participating Holder or its nominee of the closing date of the Offer (the "*Closing Date*") and will direct such Participating Holder to execute and return a signature page to the EFIH First Lien DIP Facility to the Offer Agent (or provide such other documents as set forth on the Closing Date Notification), in each case, by the Closing Date.  The Closing Date Notification may be oral or in writing, and if oral will be followed by a writing.  Any Participating Holder that fails to deliver its executed signature page to the EFIH First Lien DIP Facility by the Closing Date will be in breach of its obligations to the Company and the Company reserves all rights it may have against such Holder at law or in equity.  The Company is relying on the procedures of The Depository Trust Company ("*DTC*"), the participants who hold the EFIH First Lien Notes at DTC and the Offer Agent for the

*(cover page continued)*

delivery of this Information Memorandum and related notices and is not responsible if such documents are not received by any Holder.

The consummation of the Offer is subject to several conditions, including, among others, the closing of the EFIH First Lien DIP Facility, which is also subject to several conditions, including the satisfaction or waiver of the conditions precedent under the EFIH First Lien DIP Facility as described herein, and approval by the Bankruptcy Court of the Company's incurrence of indebtedness and granting of superpriority priming liens under the EFIH First Lien DIP Facility and approval of the Bankruptcy Court of the terms of this Offer and the makewhole settlement relating to the EFIH First Lien Notes. Under the terms of the Restructuring Support Agreement, certain parties could have termination rights under the Restructuring Support Agreement to the extent the EFIH Second Lien Settlement (as defined herein) and the EFIH Second Lien DIP Notes Financing, are not consummated in connection with the completion of this Offer. As a result, this Offer is conditioned upon the approval by the Bankruptcy Court of the EFIH Second Lien DIP Notes Facility and the EFIH Second Lien Settlement in addition to the Bankruptcy Court's approval of the EFIH First Lien DIP Facility and EFIH First Lien Settlement, which conditions can be waived by the Company in its sole discretion. See "Summary of the Offer—Conditions to Consummation of the Offer."

To the extent it is legally permitted to do so, the Company expressly reserves the absolute right, in its sole discretion and, if required, subject to Bankruptcy Court approval, at any time and with respect to any series of EFIH First Lien Notes to: (i) waive any condition to the Offer, (ii) amend any of the terms of the Offer, (iii) terminate the Offer, (iv) extend the Early Participation Date, the Expiration Date or the Closing Date or (v) modify the Total Consideration or Exchange Consideration, as applicable, provided that if the Company modifies the Total Consideration or Exchange Consideration, the Early Participation Date or Expiration Date, as applicable, will be extended, if necessary, such that the Early Participation Date or Expiration Date, as applicable, is at least ten business days from the date of such modification.

Following the consummation of this Offer, certain compliance and other documents relating to the EFIH First Lien Facility will be made available on a confidential secured website by Deutsche Bank AG New York Branch, the administrative agent for the EFIH First Lien DIP Facility (the "*EFIH First Lien DIP Agent*"). Access to this site will be provided to all Participating Holders. Prior to the Early Participation Date, all Holders may access and review current available drafts of the EFIH First Lien DIP Facility, the intercreditor agreement and certain other documents at http://www.efhcaseinfo.com.

**Nothing herein, or in any of the accompanying Letter of Transmittal and related instructions letters, shall constitute or be deemed to constitute a solicitation by any party of votes to approve or reject a Chapter 11 Plan. A solicitation with respect to votes to approve or reject a Chapter 11 Plan only may be commenced once a disclosure statement that complies with section 1125 of the Bankruptcy Code has been approved by the Bankruptcy Court.**

Questions and requests for assistance or for additional copies of this Information Memorandum may be directed to the Dealer Managers or Offer Agent, at their respective address and telephone number set forth on the back cover of this Information Memorandum.

May 6, 2014

_____

Dealer Managers

| | | |
|---|---|---|
| **Deutsche Bank Securities** | **Citigroup** | **BofA Merrill Lynch** |
| **Morgan Stanley** | **Barclays** | **RBC Capital Markets** |
| **Mitsubishi UFJ Securities** | | **Evercore** |

*(end of cover page)*

**IMPORTANT INFORMATION REGARDING THE OFFER**

THIS INFORMATION MEMORANDUM, THE ACCOMPANYING LETTER OF TRANSMITTAL AND RELATED INSTRUCTION LETTERS AND FORMS CONTAIN IMPORTANT INFORMATION THAT SHOULD BE READ CAREFULLY BEFORE ANY DECISION IS MADE WITH RESPECT TO PARTICIPATION IN THE OFFER.  AS A CONDITION TO PARTICIPATING IN THE OFFER, HOLDERS WILL BE REQUIRED TO ACKNOWLEDGE THAT THEY HAVE READ THIS INFORMATION MEMORANDUM AND CERTAIN OTHER DOCUMENTS.

THE OFFER IS NOT BEING MADE TO (NOR WILL THE SURRENDER OF EFIH FIRST LIEN NOTES FOR EXCHANGE BE ACCEPTED FROM OR ON BEHALF OF) HOLDERS OF EFIH FIRST LIEN NOTES IN ANY JURISDICTION IN WHICH THE MAKING OR ACCEPTANCE OF THE OFFER WOULD NOT BE IN COMPLIANCE WITH THE LAWS OF SUCH JURISDICTION.  NONE OF THE DELIVERY OF THIS DOCUMENT AND ANY DOCUMENT INCORPORATED BY REFERENCE HEREIN OR THE EXCHANGE OF THE EFIH FIRST LIEN NOTES FOR EFIH FIRST LIEN DIP LOANS WILL, UNDER ANY CIRCUMSTANCES, CREATE ANY IMPLICATION THAT THE INFORMATION CONTAINED IN THIS INFORMATION MEMORANDUM OR IN ANY DOCUMENT INCORPORATED BY REFERENCE HEREIN IS CURRENT AS OF ANY TIME SUBSEQUENT TO THE DATE OF SUCH DOCUMENT.

NEITHER THE BANKRUPTCY COURT NOR ANY FEDERAL OR STATE SECURITIES COMMISSION HAS PASSED UPON THE ACCURACY OR ADEQUACY OF THIS INFORMATION MEMORANDUM.  ANY REPRESENTATION TO THE CONTRARY IS UNLAWFUL.  NO DEALER, SALESPERSON OR OTHER PERSON IS AUTHORIZED TO GIVE ANY INFORMATION OR TO MAKE ANY REPRESENTATIONS WITH RESPECT TO THE MATTERS DESCRIBED IN THIS INFORMATION MEMORANDUM OTHER THAN THOSE CONTAINED HEREIN OR IN THE DOCUMENTS INCORPORATED BY REFERENCE HEREIN AND, IF GIVEN OR MADE, SUCH INFORMATION OR REPRESENTATION MUST NOT BE RELIED UPON AS HAVING BEEN AUTHORIZED BY THE COMPANY, ANY DEALER MANAGER, THE OFFER AGENT, THE EFIH FIRST LIEN DIP AGENT, THE DEPOSITARY AGENT OR THE TRUSTEE OF THE EFIH FIRST LIEN NOTES.

NONE OF THE COMPANY, THE DEALER MANAGERS, THE OFFER AGENT, THE EFIH FIRST LIEN DIP AGENT, THE DEPOSITARY AGENT, THE TRUSTEE OF THE EFIH FIRST LIEN NOTES OR ANY OF THEIR RESPECTIVE SUBSIDIARIES OR AFFILIATES IS MAKING ANY RECOMMENDATION IN CONNECTION WITH THE OFFER.  EACH HOLDER MUST MAKE ITS OWN DECISION AS TO WHETHER OR NOT TO PARTICIPATE IN THE OFFER, AND, IF SO, THE AMOUNTS AT WHICH IT WISHES TO PARTICIPATE.

**IMPORTANT INFORMATION REGARDING THIS INFORMATION MEMORANDUM**

EACH RECIPIENT OF THIS INFORMATION MEMORANDUM (A "RECIPIENT") ACKNOWLEDGES AND AGREES THAT (I) THE INFORMATION MEMORANDUM IS PROVIDED TO THE RECIPIENT FOR INFORMATIONAL PURPOSES, (II) THE DEALER MANAGERS AND THEIR RESPECTIVE AFFILIATES BEAR NO RESPONSIBILITY (AND SHALL NOT BE LIABLE) FOR THE ACCURACY OR COMPLETENESS (OR LACK THEREOF) OF THIS INFORMATION MEMORANDUM OR ANY INFORMATION CONTAINED THEREIN, (III) NO REPRESENTATION REGARDING THIS INFORMATION MEMORANDUM IS MADE BY THE DEALER MANAGERS OR ANY OF THEIR RESPECTIVE AFFILIATES, (IV) NEITHER THE DEALER MANAGERS NOR ANY OF THEIR RESPECTIVE AFFILIATES HAVE MADE ANY INDEPENDENT VERIFICATION AS TO THE ACCURACY OR COMPLETENESS OF THIS INFORMATION MEMORANDUM, AND (V) THE DEALER MANAGERS AND THEIR RESPECTIVE AFFILIATES SHALL HAVE NO OBLIGATION TO UPDATE OR SUPPLEMENT THIS INFORMATION MEMORANDUM OR OTHERWISE PROVIDE ADDITIONAL INFORMATION.

THIS INFORMATION MEMORANDUM HAS BEEN PREPARED TO ASSIST INTERESTED PARTIES IN MAKING THEIR OWN EVALUATION OF THE COMPANY AND THE EFIH FIRST LIEN DIP FACILITY AND DOES NOT PURPORT TO BE ALL-INCLUSIVE OR TO CONTAIN ALL OF THE INFORMATION THAT A PROSPECTIVE PARTICIPANT IN THE OFFER MAY CONSIDER MATERIAL OR DESIRABLE IN MAKING ITS DECISION TO BECOME A LENDER UNDER THE EFIH FIRST LIEN DIP FACILITY.

EACH RECIPIENT SHOULD TAKE SUCH STEPS AS IT DEEMS NECESSARY TO ASSURE THAT IT HAS THE INFORMATION IT CONSIDERS MATERIAL OR DESIRABLE IN MAKING ITS DECISION TO BECOME A LENDER UNDER THE EFIH FIRST LIEN DIP FACILITY AND SHOULD PERFORM ITS OWN INDEPENDENT INVESTIGATION AND ANALYSIS OF THE EFIH FIRST LIEN DIP FACILITY OR THE TRANSACTIONS CONTEMPLATED THEREBY AND THE CREDITWORTHINESS OF THE COMPANY.

EACH RECIPIENT REPRESENTS THAT IT IS SOPHISTICATED AND EXPERIENCED IN EXTENDING CREDIT TO ENTITIES SIMILAR TO THE COMPANY.  THE INFORMATION AND DATA CONTAINED HEREIN ARE NOT A SUBSTITUTE FOR A HOLDER'S INDEPENDENT EVALUATION AND ANALYSIS.

THE CONTENTS OF THIS INFORMATION MEMORANDUM SHOULD NOT BE CONSTRUED AS INVESTMENT, LEGAL OR TAX ADVICE.  HOLDERS SHOULD CONSULT THEIR OWN COUNSEL, ACCOUNTANTS AND OTHER ADVISORS AS TO LEGAL, TAX, BUSINESS, FINANCIAL AND RELATED ASPECTS CONCERNING THEIR DECISION TO PARTICIPATE IN THE OFFER, INCLUDING COMMITTING TO EXCHANGE THEIR EFIH FIRST LIEN NOTES FOR EFIH FIRST LIEN DIP LOANS.

## IMPORTANT DATES

Holders should take note of the following dates in connection with the Offer:

| Date | Calendar Date and Time | Event |
|---|---|---|
| Mailing Date................................................ | May 6, 2014 | The mailing date of this Information Memorandum, including the accompanying Letter of Transmittal and related instruction letters and forms. |
| Commencement Date ..................................... | May 6, 2014 | The commencement date of the Offer. |
| Early Participation Date................................. | 5:00 p.m., New York City time, on May 19, 2014, unless extended or earlier terminated by the Company in its sole discretion. | The last day and time for Holders to tender their EFIH First Lien Notes into the Offer and deliver an executed Letter of Transmittal to the Offer Agent to be eligible to receive the Total Consideration, which includes the Early Participation Consideration and the Exchange Consideration. |
| Expiration Date............................................. | 5:00 p.m., New York City time, on June 6, 2014, unless extended or earlier terminated by the Company in its sole discretion. | The last day and time for Holders to tender their EFIH First Lien Notes into the Offer and deliver an executed Letter of Transmittal to the Offer Agent.  Holders who validly tender their EFIH First Lien Notes after the Early Participation Date and on or prior to the Expiration Date will only be eligible to receive the Exchange Consideration. |
| Closing Notification Date .............................. | On or after the Expiration Date and after the date on which (i) the conditions to the consummation of the Offer have been satisfied, or (ii) the Company determines, in its reasonable judgment, that the conditions to the consummation of the Offer will be satisfied as of or on the Closing Date. | The Offer Agent will notify each Participating Holder or its nominee of such Participating Holder of the Closing Date and will direct such Participating Holder to **execute and return to the Offer Agent a signature page to the EFIH First Lien DIP Facility (or such other documents as set forth on the Closing Date Notification) on or prior to the Closing Date.** |
| Closing Date ................................................. | Promptly following the Expiration Date and as indicated in the Closing Date Notification, unless extended by the Company in its sole discretion. | The date (i) the issuance of the EFIH First Lien DIP Loans to the Participating Holders will be recorded by the First Lien DIP Offer Agent in the applicable register and (ii) the trustee for the EFIH First Lien Notes will cancel the EFIH First Lien Notes tendered by Participating |

| Date | Calendar Date and Time | Event |
|---|---|---|
| | | Holders.  A Participating Holder is required to tender all of its EFIH First Lien Notes in the Offer. |

## TABLE OF CONTENTS

IMPORTANT INFORMATION REGARDING THE OFFER ...............................................................i

IMPORTANT INFORMATION REGARDING THIS INFORMATION MEMORANDUM ........................... ii

IMPORTANT DATES ......................................................................................................................... iii

CERTAIN TERMS USED IN THIS INFORMATION MEMORANDUM ...........................................vi

FORWARD-LOOKING STATEMENTS ........................................................................................... vii

AVAILABLE INFORMATION ..........................................................................................................ix

DOCUMENTS INCORPORATED BY REFERENCE..........................................................................ix

SUMMARY ........................................................................................................................................1

THE COMPANY ................................................................................................................................1

RECENT DEVELOPMENTS ...............................................................................................................1

ORGANIZATIONAL STRUCTURE ...................................................................................................6

ADDITIONAL INFORMATION.........................................................................................................8

SUMMARY OF THE OFFER ............................................................................................................10

SUMMARY OF THE EFIH FIRST LIEN DIP FACILITY ...............................................................16

RISK FACTORS ...............................................................................................................................23

USE OF PROCEEDS ........................................................................................................................36

CAPITALIZATION ...........................................................................................................................36

DESCRIPTION OF THE OFFER ......................................................................................................38

SUMMARY OF EFIH SECOND LIEN DIP NOTES .......................................................................45

SUMMARY OF THE RESTRUCTURING SUPPORT AGREEMENT...............................................49

CERTAIN UNITED STATES FEDERAL INCOME TAX CONSEQUENCES ..................................52

OFFER AGENT; DEPOSITARY AGENT; DEALER MANAGERS .................................................60

**CERTAIN TERMS USED IN THIS INFORMATION MEMORANDUM**

Unless the context otherwise requires or as otherwise indicated, capitalized terms used in this Information Memorandum that are not otherwise defined herein shall have the meanings set forth below:

- "*2013 Form 10-K*" are the EFIH Annual Report on Form 10-K for the year ended December 31, 2013, filed with the SEC on April 30, 2014, as amended by the EFIH Annual Report on Form 10-K/A filed with the SEC on May 1, 2014;

- "*EFCH*" means Energy Future Competitive Holdings Company LLC and not any of its subsidiaries;

- "*EFH Corp. 2017 Toggle Notes*" are the 11.250%/12.000% Senior Toggle Notes due 2017 issued by EFH Corp.;

- "*EFH Corp. 9.75% Notes*" are EFH Corp.'s 9.75% Fixed Senior Notes due 2019;

- "*EFH Corp. 10% Notes*" are EFH Corp.'s 10% Fixed Senior Notes due 2020;

- "*EFH Corp. 10.875% Notes*" are EFH Corp.'s 10.875% Fixed Senior Notes due 2017;

- "*EFH Corp. Interests*" are the equity interests of EFH Corp;

- "*EFH Corp. Unsecured Notes*" are, collectively, EFH Corp. 9.75% Notes, EFH Corp. 10% Notes, EFH Corp. 10.875% Notes, EFH Corp. 2017 Toggle Notes and Legacy Notes;

- "*EFH Non-Guaranteed Notes*" are, collectively, EFH Corp. 9.75% Notes, EFH Corp. 10% Notes and Legacy Notes*;*

- "*EFIH 9.75% Notes*" are the Issuer's 9.75% Senior Unsecured Notes due 2019;

- "*EFIH 11% Second Lien Notes*" are the Issuer's 11% Senior Secured Second Lien Notes due 2021;

- "*EFIH 11.750% Second Lien Notes*" are the Issuer's 11.750% Senior Secured Second Lien Notes due 2022;

- "*EFIH Second Lien Notes*" are, collectively, the EFIH 11% Second Lien Notes and the EFIH 11.750% Second Lien Notes;

- "*EFIH Toggle Notes*" are the Issuer's 11.25/12.25% Unsecured Toggle Notes due 2018;

- "*EFIH Unsecured Notes*" are, collectively, the EFIH Toggle Notes and the EFIH 9.75% Unsecured Notes;

- "*First Lien Commitment Letter*" means that certain commitment letter, dated as of April 28, 2014, between EFIH and initial lenders thereto, relating to the EFIH First Lien DIP Facility;

- "*GAAP*" are the United States generally accepted accounting principles;

- "*General Unsecured Claim Against EFH Corp.*" is any unsecured claim against EFH that is not otherwise paid in full pursuant to a separate order of the Bankruptcy Court, including EFH Unsecured Note claims and any claims arising on account of the EFH Corp. 10.875% Notes and EFH Corp. 2017 Toggle Notes, but excluding: (i) administrative claims against EFH Corp. and EFH Corp.'s direct and indirect subsidiaries listed on Exhibit C of the Restructuring Support Agreement; (ii) intercompany claims against EFH Corp. and EFH Corp.'s direct and indirect subsidiaries listed on Exhibit C of the Restructuring Support Agreement; and (iii) other priority claims against EFH Corp. and EFH Corp.'s direct and indirect subsidiaries listed on Exhibit C of the Restructuring Support Agreement;

- "*General Unsecured Claim Against EFIH*" is any unsecured claim against one or more of EFIH and EFIH Finance that is not otherwise paid in full pursuant to a separate order of the Bankruptcy Court, including the EFIH Toggle Notes, EFIH Unsecured Notes, and guaranty claims against EFIH arising on account of the EFH Corp. 10.875% Notes and EFH Corp. 2017 Toggle Notes, but excluding: (i) administrative claims against one or more of EFIH and EFIH Finance; (ii) intercompany claims against EFIH and EFIH Finance; and (iii) other priority claims against EFIH and EFIH Finance;

- "*Legacy Notes*" are, collectively, EFH Corp.'s 5.55% Series P Senior Notes due 2014, EFH Corp.'s 6.50% Series Q Senior Notes due 2024 and EFH Corp.'s 6.55% Series R Senior Notes due 2034;

- "*Oncor Holdings*" and "*Oncor*" are Oncor Electric Delivery Holdings Company LLC and Oncor Electric Delivery Company LLC, respectively, with or without their respective subsidiaries as indicated in context;

- "*PUCT*" is the Public Utility Commission of Texas;

- "*Reorganized EFH Corp.*" is EFH Corp. as reorganized in connection with its emergence from bankruptcy; and

- "*TCEH*" and "*TCEH Finance*" are Texas Competitive Electric Holdings Company LLC and TCEH Finance, Inc., respectively, and not any of their respective subsidiaries.

## FORWARD-LOOKING STATEMENTS

This Information Memorandum may include "*forward-looking statements*" as that term is defined under the Private Securities Litigation Reform Act of 1995. Forward-looking statements include statements concerning the Company's bankruptcy case, plans, objectives, goals, strategies, future events, future revenue or performance, capital expenditures, liquidity, financing needs, business trends, and other information that is not historical information. When used in this Information Memorandum, the words "*estimates*," "*expects*," "*anticipates*," "*projects*," "*plans*," "*intends*," "*believes*," "*predicts*," "*forecasts*," or future or conditional verbs, such as "*will*," "*should*," "*could*," or "*may*," and variations of such words or similar expressions are intended to identify forward-looking statements. All forward-looking statements, including, without limitation, management's examination of historical operating trends and data, are based upon the Company's expectations and various assumptions. Future events or results may differ from those anticipated or expressed in these forward-looking statements. Important factors that could cause actual events or results to differ materially from these forward-looking statements include, among others, the risks and uncertainties described herein and in more detail under "Risk Factors" contained elsewhere in this Information Memorandum and in the sections captioned "Risk Factors" and "Management's Discussion and Analysis of Financial Condition and Results of Operations" of our 2013 Form 10-K which are incorporated into this Information Memorandum by reference and those described in filings made by the Company with the Bankruptcy Court and in other filings the Company makes with the U.S. Securities and Exchange Commission ("*SEC*") from time to time, as well as the following:

- our ability to obtain the approval of the Bankruptcy Court with respect to motions filed in the bankruptcy proceedings, including with respect to the EFIH First Lien DIP Facility and the makewhole settlements regarding the EFIH First Lien Notes and the EFIH Second Lien Notes;

- the effectiveness of the overall restructuring activities pursuant to the bankruptcy filing and any additional strategies we employ to address our liquidity and capital resources;

- the terms and conditions of any reorganization plan that is ultimately approved by the Bankruptcy Court in the bankruptcy proceedings;

- our ability to consummate and remain in compliance with the requirements of our debtor-in-possession financing facilities, including the EFIH First Lien DIP Facility;

- our ability to maintain or obtain sufficient financing sources to fund our reorganization plan and meet future obligations;

- the actions and decisions of creditors, regulators and other third parties that have an interest in the bankruptcy proceedings that may be inconsistent with our plans;

- the length of time that the Reorganizing Entities will be debtors-in-possession under the Bankruptcy Code pursuant to the bankruptcy proceedings;

- the actions and decisions of regulatory authorities relative to any reorganization plan;

- the outcome of litigation regarding whether note holders are entitled to makewhole premiums in connection with the extinguishment of their claims in bankruptcy;

- our ability to satisfy any of the conditions to the closing of the EFIH First Lien DIP Facility, the EFIH Second Lien DIP Notes Financing (as defined herein) and concurrent offerings;

- prevailing governmental policies and regulatory actions, including those of the Texas Legislature, the Governor of Texas, the Congress of the United States of America ("*U.S.*"), the U.S. Federal Energy Regulatory

Commission (the "*FERC*"), the North American Electric Reliability Corporation, the Texas Reliability Entity, Inc., the PUCT, the Electric Reliability Council of Texas ("*ERCOT*"), the U.S. Environmental Protection Agency (the "*EPA*") and the Texas Commission on Environmental Quality with respect to, among other things:

- allowed rate of return;

- permitted capital structure;

- industry, market and rate structure;

- recovery of investments;

- acquisitions and disposals of assets and facilities;

- operation and construction of facilities;

- changes in tax laws and policies; and

- changes in and compliance with environmental and safety laws and policies;

- legal and administrative proceedings and settlements;

- weather conditions and other natural phenomena, and acts of sabotage, wars or terrorist or cyber security threats or activities;

- economic conditions, including the impact of a recessionary environment;

- unanticipated population growth or decline, or changes in market demand and demographic patterns, particularly in ERCOT;

- unanticipated changes in interest rates or rates of inflation;

- unanticipated changes in operating expenses, liquidity needs and capital expenditures;

- general industry trends;

- hazards customary to the industry and the possibility that we and/or our subsidiaries may not have adequate insurance to cover losses resulting from such hazards;

- changes in technology used by and services offered by us and/or our subsidiaries;

- changes in assumptions used to estimate costs of providing employee benefits, including medical and dental benefits, pension and other postretirement employee benefits, and future funding requirements related thereto;

- significant changes in critical accounting policies material to us and/or our subsidiaries;

- commercial bank and financial market conditions, access to capital, the cost of such capital, and the results of financing and refinancing efforts by EFIH and/or its subsidiaries and affiliates, including availability of funds in the capital markets and the potential for disruptions in U.S. credit markets;

- circumstances which may contribute to impairment of goodwill, intangible or other long-lived assets;

- financial restrictions imposed by the agreements governing Oncor's and EFH Corp.'s debt instruments;

- our or our subsidiaries' ability to generate sufficient cash flow to make interest payments on our or their debt instruments; and

- actions by credit rating agencies.

Any forward-looking statement speaks only as of the date on which it is made, and except as may be required by law, we undertake no obligation to update any forward-looking statement to reflect events or circumstances after the date on which it is made or to reflect the occurrence of unanticipated events. New factors emerge from time to time, and it is not possible for us to predict all of them; nor can we assess the impact of each such factor or the extent to which any factor, or combination of factors, may cause results to differ materially from those contained in any forward-looking statement. As such, you should not unduly rely on such forward-looking statements.

## AVAILABLE INFORMATION

EFIH files annual, quarterly and current reports and other information with the SEC.  EFIH's SEC filings are available to the public over the Internet at the SEC's website at http://www.sec.gov and on the Investor Relations section of EFH Corp.'s corporate website at http://www.energyfutureholdings.com.  Information on EFIH's website does not constitute part of this Information Memorandum.  You may inspect without charge any documents filed by EFIH at the SEC's Public Reference Room at 100 F Street, N.E., Washington, D.C. 20549.  You may obtain copies of all or any part of these materials from the SEC upon the payment of certain fees prescribed by the SEC.  Please call the SEC at 1-800-SEC-0330 for further information on the Public Reference Room.

Copies of the materials referred to in the preceding paragraph, as well as copies of any current amendment or supplement to the Offer, may also be obtained from the Offer Agent at its address set forth on the back cover of this Information Memorandum.

Additionally, EFIH and its affiliates make certain filings with the Bankruptcy Court.  Such filings are available at http://www.efhcaseinfo.com and by contacting the Offer Agent, and are incorporated by reference in this Information Memorandum.

## DOCUMENTS INCORPORATED BY REFERENCE

We "incorporate by reference" into this Information Memorandum documents EFIH files with (and in certain specific cases has furnished to) the SEC, which means that we can disclose important information to you by referring you to those documents.  The information incorporated by reference is an important part of this Information Memorandum.  Some information contained in this Information Memorandum updates the information incorporated by reference, and information that EFIH files subsequently with the SEC will automatically update this Information Memorandum.  In other words, in the case of a conflict or inconsistency between information set forth in this Information Memorandum and information that EFIH files later and incorporates by reference into this Information Memorandum, you should rely on the information contained in the document that was filed later.

We incorporate by reference EFIH's Annual Report on Form 10-K for the year ended December 31, 2013 that it filed with the SEC on April 30, 2014, as amended by EFIH's Annual Report on Form 10-K/A filed with the SEC on May 1, 2014 and any future filings made by EFIH with the SEC under Sections 13(a), 13(c), 14 or 15(d) of the Securities Exchange Act of 1934, as amended (the "*Exchange Act*"), until the Offer has been completed, other than any information contained in such filings that has been furnished, but not filed, with the SEC, including pursuant to Item 2.02 or Item 7.01 of Form 8-K and corresponding information furnished under Item 9.01 of Form 8-K or included as an exhibit.

Copies of these filings are available free of charge by writing to Energy Future Intermediate Holding Company LLC, Energy Plaza, 1601 Bryan Street, Dallas, TX 75201-3411, Attention: Investor Relations, or by telephoning us at 214-812-4600.

As noted above under "Available Information," we also incorporate by reference filings we make with the Bankruptcy Court.

Because the EFIH First Lien DIP Loans are secured by all of the membership interests EFIH owns or holds in Oncor Holdings, this Information Memorandum includes and incorporates by reference financial statements of Oncor Holdings.  EFIH incorporates into this Information Memorandum Oncor Holdings' audited historical consolidated financial statements for the year ended December 31, 2013, which are filed as Exhibit 99(d) to EFIH's 2013 Form 10-K.  For the avoidance of doubt, Oncor Holdings and its subsidiaries (including Oncor): (i) have not filed, nor do they intend to file for bankruptcy, and (ii) will not be Restricted Subsidiaries (as defined therein) for purposes of the EFIH First Lien DIP Facility.

The information incorporated by reference is an important part of this Information Memorandum.  We have not authorized anyone to provide you with information other than that contained in or incorporated by reference into this Information Memorandum.  You should not assume that the information in this Information Memorandum is accurate as of any date other than the date of this Information Memorandum.

You should not rely on or assume the accuracy of any representation or warranty in any agreement that we have filed as an exhibit to any document that we have publicly filed or that we may otherwise publicly file in the future because such representation or warranty may be subject to exceptions and qualifications contained in separate disclosure schedules, may have been included in such agreement for the purpose of allocating risk between the parties to the particular transaction, and may no longer continue to be true as of any given date.

## SUMMARY

*The following summary is provided solely for convenience and is qualified in its entirety by reference to, and should be read in conjunction with, the information appearing elsewhere or incorporated by reference in this Information Memorandum.  Each undefined capitalized term used in this "Summary" has the meaning set forth elsewhere in this Information Memorandum.  You are urged to read this Information Memorandum in its entirety.*

## THE COMPANY

We are a Dallas, Texas-based holding company whose wholly-owned subsidiary, Oncor Holdings, holds a majority interest (approximately 80%) in Oncor.  The investment in Oncor represents substantially all of our reported consolidated net assets and earnings.  Oncor is engaged in regulated electricity transmission and distribution operations in Texas that are primarily regulated by the PUCT.  Oncor provides both transmission and distribution services to retail electric providers, including subsidiaries of TCEH, that sell electricity to consumers and transmission services to other electricity distribution companies, cooperatives and municipalities.  Oncor operates the largest transmission and distribution system in Texas, delivering electricity to more than 3.2 million homes and businesses and operating more than 120,000 miles of transmission and distribution lines.  A significant portion of Oncor's revenues represents fees for services provided to TCEH, which is engaged in competitive electricity market activities largely in Texas, including electricity generation, wholesale energy sales and purchases, commodity risk management and trading activities and retail electricity sales.  Revenues from TCEH represented 27% of Oncor's total reported consolidated revenues for the year ended December 31, 2013.

EFH Corp. and Oncor have implemented certain structural and operational "ring-fencing" measures based on commitments made by Texas Energy Future Holdings Limited Partnership ("*Texas Holdings*") and Oncor to the PUCT to further enhance the credit quality of Oncor Holdings and Oncor and mitigate Oncor's and Oncor Holdings' credit exposure to Texas Holdings and its other subsidiaries, including EFIH (collectively, the "*Texas Holdings Group*"), with the intent to minimize the risk that a court (including the Bankruptcy Court) would order any of the assets and liabilities of Oncor or Oncor Holdings to be substantively consolidated with the assets and liabilities of any member of the Texas Holdings Group (including EFIH and EFIH Finance) in the event any such member were to become a debtor in a bankruptcy case.  We believe, as several major credit rating agencies have acknowledged, that the likelihood of such substantive consolidation of Oncor's or Oncor Holdings' assets and liabilities is remote in consideration of the ring-fencing measures and applicable law.

We have no employees.  At December 31, 2013, Oncor had approximately 3,420 full-time employees, including approximately 690 employees under collective bargaining agreements.

## RECENT DEVELOPMENTS

**Bankruptcy and Restructuring Plan**

On April, 29, 2014, EFH Corp. and the substantial majority of its direct and indirect subsidiaries, including the Issuer but excluding Oncor Holdings and its subsidiaries, filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code in the Bankruptcy Court and are operating their businesses and managing their property as debtors-in-possession pursuant to the Bankruptcy Code.

On April 29, 2014, the Reorganizing Entities and certain of their secured and unsecured creditors entered into the Restructuring Support Agreement in order to effect an agreed upon restructuring of the Reorganizing Entities through a prenegotiated Chapter 11 Plan (the "*Restructuring Plan*").  In addition to the Offer contemplated by this Information Memorandum, the Restructuring Plan includes, among others, the transactions described below.

**The summaries contained in this section and elsewhere in this Information Memorandum assume that all parts of the Restructuring Plan are approved and implemented as currently proposed.  There can be no assurance that all or any part of the Restructuring Plan will in fact be approved in the form currently proposed, in the timeframe currently expected, or at all.**

1

*EFIH Second Lien Settlement*

Pursuant to the Restructuring Support Agreement, holders of at least 35% of the outstanding aggregate principal amount of EFIH Second Lien Notes (such holders, the "*RSA EFIH Second Lien Note Parties*") have agreed to voluntary settlements with respect to the Issuer's obligations under the EFIH Second Lien Notes held by the RSA EFIH Second Lien Note Parties whereby each RSA EFIH Second Lien Note Party has agreed to accept as payment in full of any claims arising out of its EFIH Second Lien Notes, an amount in cash equal to (i) 100% of the principal of, plus accrued but unpaid interest on, the principal amount of EFIH Second Lien Notes held by such RSA EFIH Second Lien Note Party at the contract non-default rate through the date of the closing of the EFIH Second Lien Settlement Offer (as defined below), plus (ii) 50% of  the amount of the EFIH Second Lien Makewhole Claims (as defined below) on the principal amount of EFIH Second Lien Notes held by such RSA EFIH Second Lien Note Party calculated as of the date of the closing of the EFIH Second Lien Settlement Offer (as defined below) (such settlement, the "*EFIH Second Lien Settlement*").  An RSA EFIH Second Lien Note Party, but not other Settling EFIH Second Lien Note Holders (as defined below), will have the right to purchase up to $500 million in the form of loans under the EFIH First Lien DIP Facility and will receive a 1.75% commitment fee in connection with such purchase.  Certain other RSA EFIH Second Lien Note Parties, but not other Settling EFIH Second Lien Note Holders, will receive a settlement premium of $1.57 million in cash in the aggregate.  Pursuant to the Restructuring Support Agreement, the Company intends to commence an offer to all of the holders of the EFIH Second Lien Notes, including the RSA EFIH Second Lien Note Parties, to repurchase their EFIH Second Lien Notes on the terms established under the Restructuring Support Agreement (the "*EFIH Second Lien Settlement Offer*"), and thereby implement the EFIH Second Lien Settlement.  Each such holder of EFIH Second Lien Notes that participates in the EFIH Second Lien Settlement Offer is referred to herein as a "*Settling EFIH Second Lien Note Holder*."  The completion of the EFIH Second Lien Settlement Offer will be conditioned on, among the things, the completion of the EFIH Second Lien DIP Notes Financing (as defined below) and approval by the Bankruptcy Court.

In connection with the EFIH Second Lien Settlement Offer, the Reorganizing Entities expect to initiate litigation to obtain entry of an order from the Bankruptcy Court disallowing the claims of holders of EFIH Second Lien Notes not party to the EFIH Second Lien Settlement (the "*Non-Settling EFIH Second Lien Note Holders*") derived from or based upon makewhole or other similar payment provisions under the EFIH Second Lien Notes (such claims, the "*EFIH Second Lien Makewhole Claims*").  Following the completion of the EFIH Second Lien Settlement Offer and upon Bankruptcy Court approval and consummation of the EFIH Second Lien DIP Notes Financing, the Non-Settling EFIH Second Lien Note Holders will receive from the proceeds of the EFIH Second Lien DIP Notes Financing only cash in an amount equal to the principal plus accrued and unpaid interest up to but not including the closing of the EFIH Second Lien DIP Notes Financing of the EFIH Second Lien Notes held by such Non-Settling EFIH Second Lien Note Holders, at the non-default rate of such holder's allowed claims (not including any premiums, fees, settlements or claims relating to the repayment of the EFIH Second Lien Notes).  With respect to EFIH Second Lien Makewhole Claims allowed, if any, the Non-Settling EFIH Second Lien Note Holders will receive cash or other treatment as permitted under section 1129(b) of the Bankruptcy Code under the Reorganizing Entities' Restructuring Plan, as mutually agreed by EFIH and the Required EFIH Unsecured Consenting Creditors.

*EFIH First Lien DIP Facility*

Pursuant to the First Lien Commitment Letter, dated April 28, 2014, the initial lenders thereto committed to provide the Company funding for the EFIH First Lien DIP Facility in an aggregate principal amount of $5.4 billion. As a result of the RSA EFIH First Lien Note Parties and RSA EFIH Second Lien Note Parties agreeing to exchange their EFIH First Lien Notes and/or EFIH Second Lien Notes, as applicable, and to provide certain backstop commitments (as described below) under and pursuant to the terms of the Restructuring Support Agreement, that commitment amount has been significantly reduced.  As of May 6, 2014, the initial lenders' commitment amount under the EFIH First Lien DIP Facility has been reduced from $5.4 billion to $1.85 billion. In addition, the commitment would be further reduced by an amount of EFIH First Lien DIP Loans required to pay for any EFIH First Lien Notes exchanged in the Offer. Any such reduction in commitments that occurs on or before the Early Participation Date will reduce the fees earned by the commitment parties under the First Lien Commitment Letter. In no event will the aggregate amount of EFIH First Lien DIP Loans exceed $5.4 billion.

Certain RSA EFIH First Lien Notes Parties have provided backstop commitments to the EFIH First Lien DIP Facility in the amount of $1.7 billion.  Receipt of proceeds of such commitments is subject to the satisfaction or waiver of the conditions precedent of the EFIH First Lien DIP Facility, including the rights of a significant backstop commitment party to approve certain matters and the payment of backstop commitment fees to such significant holders in a range of 1.00% to 1.75% of their respective backstop commitment.   A certain backstop party will provide a $50 million commitment on the terms set forth in the EFIH First Lien DIP Facility, including original issue discount, but not including commitment fees.

The initial lenders intend that the EFIH First Lien DIP Facility will be fully syndicated.  Syndication may result in certain limited changes to the terms of the EFIH First Lien DIP Facility that make it more favorable to the lenders.

At the Closing Date, EFIH and EFIH Finance will enter the EFIH First Lien DIP Facility with Deutsche Bank AG New York Branch, acting as administrative agent.  Proceeds of the EFIH First Lien DIP Facility will be used (together with cash on hand) to repay all outstanding principal plus accrued and unpaid interest at the non-default rate due and owing under the EFIH First Lien Notes (which will not include any alleged premiums, fees or claims relating to the repayment of such claims) to Non-Settling EFIH First Lien Note Holders.

It is expected that the EFIH First Lien DIP Facility will be repaid using the proceeds from borrowings under an exit financing that will be put in place at EFIH in connection with its emergence from bankruptcy.  Our ability to obtain such exit financing will depend on, among other things, the timing and outcome of various ongoing matters in the Chapter 11 cases, our business, operations and financial condition, and market conditions.

### EFIH Second Lien DIP Notes Financing

The Restructuring Support Agreement also contemplates that the Issuer will offer (the "*EFIH Second Lien DIP Notes Offer*") to certain holders of unsecured claims against EFIH, the right to purchase up to its "pro rata percentage" of $1.73 billion in accordance with the Restructuring Support Agreement, in aggregate principal amount of 8% Convertible Second Lien Subordinated Secured DIP Financing Tranche A-1 Notes due 2016 (the "*EFIH Second Lien DIP Tranche A-1 Notes*") of the $1.9 billion EFIH Second Lien DIP Notes Financing.  Each holder's "pro rata percentage" is the amount, expressed as a percentage, equal to (i) the aggregate principal amount of EFIH Unsecured Notes held by such holder divided by (ii) the aggregate amount of EFIH Unsecured Notes outstanding. Concurrently with the EFIH Second Lien DIP Notes Offer, the Issuer is offering (the "*concurrent offering*") to a significant holder of EFIH Second Lien Notes the right to purchase up to $170.0 million aggregate principal amount of 8% Convertible Second Lien Subordinated Secured DIP Financing Tranche A-3 Notes due 2016 (the "*EFIH Second Lien DIP Tranche A-3 Notes*").  If such holder elects to participate in any portion of the concurrent offering, EFIH will pay such party $11.25 million upon the closing of the EFIH Second Lien Notes DIP Financing.

The closing of the EFIH Second Lien DIP Notes Offer and the concurrent offering, as well as the satisfaction of any note purchase obligations of the Backstop Parties (as defined below) under the Backstop Commitment Letter (as defined below) is collectively referred to herein as the "*EFIH Second Lien DIP Notes Financing*."

### EFIH Second Lien DIP Notes Backstop Commitment

Certain holders of the EFIH Unsecured Notes (the "*Backstop Parties*") have entered into a commitment letter with EFIH, dated April 29, 2014 (the "*Backstop Commitment Letter*"), pursuant to which, and upon solely the terms and express conditions contained therein, such holders have committed, severally and not jointly, up to $1.9 billion in available funds (the "*Backstop Commitment*") to purchase notes not sold in the EFIH Second Lien DIP Notes Offer and the concurrent offering (the "*unpurchased notes*") pro rata in proportion to their respective share of the Backstop Commitment (such notes, the 8% Convertible Second Lien Subordinated Secured DIP Financing Tranche A-2 Notes due 2016 (the "*EFIH Second Lien DIP Tranche A-2 Notes*")). If any Backstop Party fails to satisfy its obligation to purchase its pro rata share of the unpurchased notes, then the other Backstop Parties would have the right, but not the obligation, to purchase such unpurchased notes.

3

Under the Backstop Commitment Letter and in consideration of the Backstop Commitment, EFIH agreed to pay the Backstop Parties a commitment fee consisting of (i) a $8.75 million execution fee that was paid to the initial Backstop Parties concurrently with the execution of the Commitment Letter, (ii) a $10.25 million approval fee to be paid to the initial Backstop Parties within five days of the issuance of an order by the Bankruptcy Court authorizing the EFIH First Lien Settlement, the EFIH Second Lien Settlement, and the performance by EFH Corp. and EFIH under the Backstop Commitment Letter, (iii) a $2.0 million arranger fee to be paid to certain Backstop Parties within five days of entry of an order of the Bankruptcy Court approving the Company's incurrence of the EFIH Second Lien DIP Notes Financing, (iv) a $19 million funding fee to be paid to the Backstop Parties concurrently with the consummation of the EFIH Second Lien DIP Notes Offer and (v) a fee equal to $95 million in the form of Non-Interest Bearing Convertible Second Lien Subordinated Secured DIP Financing Tranche B Notes due 2016 to be paid to the Backstop Parties (the "*EFIH Second Lien DIP Tranche B Notes*" and, together with the EFIH Second Lien DIP Tranche A-1 Notes, the EFIH Second Lien DIP Tranche A-2 Notes and the EFIH Second Lien DIP Tranche A-3 Notes, the "*EFIH Second Lien DIP Notes*").

In the event EFIH seeks to consummate an alternative transaction that delivers equal or greater value to EFIH than the transactions contemplated in the Restructuring Support Agreement, EFIH shall pay the Backstop Parties a break-up fee of $57 million.  In the event the EFIH Second Lien DIP Notes are repaid in cash prior to the effective date of the Chapter 11 Plan (the "*Effective Date*"), without the consent of at least three or more investment advisors holding at least 50.1% of the EFIH Second Lien DIP Notes (or, in the case of the EFIH Second Lien DIP Tranche A-3 Notes, holders of at least 50.1% of the EFIH Second Lien DIP Tranche A-3 Notes) the holders of EFIH Second Lien DIP Notes will receive their pro rata share of a termination fee of $380 million, which shall be paid by EFIH.

### Equity Conversion of Certain Unsecured Notes and Equity Interests

On the Effective Date, it is expected that all of the EFIH Unsecured Notes, the EFH Corp. Unsecured Notes and the EFH Corp. Interests will be canceled.  In full satisfaction of the General Unsecured Claims Against EFIH, the General Unsecured Claims Against EFH and the EFH Corp. Interests, it is expected that, (i) each holder of a General Unsecured Claim Against EFIH will receive its pro rata share (calculated as the aggregate principal amount of General Unsecured Claims Against EFIH held by such holder divided by the total outstanding General Unsecured Claims Against EFIH) of 98.0% of the shares of common stock of Reorganized EFH Corp. (subject to dilution by the Second Lien Equity Conversion as described below), (ii) each holder of a General Unsecured Claim Against EFH will receive its pro rata share (calculated as the aggregate principal amount of General Unsecured Claims Against EFH held by such holder divided by the total outstanding aggregate principal amount of General Unsecured Claims Against EFH) of rights to purchase up to 9% of the common stock of Reorganized EFIH Corp. that the EFIH Second Lien DIP Tranche A-3 Notes that such holder purchases will convert into (subject to certain terms and conditions) and 1.0% of the shares of common stock of Reorganized EFH Corp. (subject to dilution by the Second Lien Second Lien Equity Conversion), and (iii) each Holder of EFH Corp. Interests will receive its pro rata share (calculated as the number of shares of EFH Corp. common stock held by such holder divided by the total outstanding shares of EFH Corp. common stock) of 1.0% of the shares of common stock of Reorganized EFH Corp. (subject to dilution by the Second Lien Equity Conversion).

Holders of General Unsecured Claims Against EFH are also expected to receive on the Effective Date their pro rata share of either (A) if the Oncor TSA Amendment (described below) has been approved, (1) $55 million in cash from EFIH, provided, however, that if the Oncor tax payments received by EFIH under the Oncor TSA Amendment through the Effective Date are less than 80% of projected amounts, the $55 million payment will be reduced on a dollar for dollar basis by the amount of such shortfall, and (2) cash on hand at EFH Corp. (not including the settlement payment in clause (1) hereof); or (B) if the Oncor TSA Amendment has not been approved, all assets of EFH, including cash on hand and causes of action, but excluding equity interests in EFIH.

### EFH Second Lien DIP Notes Equity Conversion

Under the Restructuring Plan, on the Effective Date the EFIH Second Lien DIP Notes will, subject to certain conditions, automatically convert into approximately 64% of the shares of common stock of Reorganized EFH Corp. (the "*Second Lien Equity Conversion*"), subject to adjustment based on the principal amount of the EFIH Second Lien DIP Notes Financing.

*Oncor TSA Amendment*

The Restructuring Support Agreement provides that the Reorganizing Entities will request authority from the Bankruptcy Court to amend, or otherwise assign the right to payments under, the Oncor Tax Sharing Agreement (the "*Oncor TSA Amendment*") to provide that any payment required to be made to EFH Corp. under the Oncor TSA Amendment after March 31, 2014, will instead be made to EFIH.  Any tax payments received by EFH Corp. before the Bankruptcy Court enters or denies the Oncor TSA Amendment Order will be deposited by EFH Corp. into a segregated account until the earlier of (i) the date the Bankruptcy Court enters the order authorizing the Oncor TSA Amendment, in which case, such amounts will be remitted to EFIH or (ii) the date the Bankruptcy Court denies authorization of the Oncor TSA Amendment, in which case, such amounts will be remitted to EFH Corp.

The Oncor TSA Amendment will automatically terminate and be of no further force and effect in the event that the Backstop Commitment Letter is validly terminated by the Backstop Parties; provided, however, that any amounts that were paid to EFIH in accordance with the Oncor TSA Amendment before its termination will be retained by EFIH if the Backstop Commitment Letter or the EFIH Second Lien DIP Notes Financing is terminated or is not fully funded in accordance with its terms (i.e., except as a result of a breach by the Backstop Parties).  Neither EFH Corp. nor EFIH will have the right to terminate or modify the Oncor TSA Amendment during the Chapter 11 cases if the EFIH Second Lien DIP Notes Financing is consummated.

If the Bankruptcy Court does not approve the Oncor TSA Amendment within 90 days after the commencement of the Chapter 11 cases, or July 28, 2014, the interest rate on the EFIH Second Lien DIP Tranche A Notes (as defined herein) will increase by 4.0%, with such additional interest to be paid in kind and compounded quarterly until such approval is received from the Bankruptcy Court.  If the Bankruptcy Court does not approve the Oncor TSA Amendment by April 29, 2015, each holder of EFIH Second Lien DIP Notes will receive its pro rata share of additional EFIH Second Lien DIP Notes equal to 10.0% of the then outstanding EFIH Second Lien DIP Notes.

The collateral securing the EFIH First Lien DIP Facility and the EFIH Second Lien DIP Notes will include proceeds of payments under the Oncor TSA Amendment, as long as the Oncor TSA Amendment remains in effect.

*Private Letter Ruling*

The Restructuring Support Agreement provides that EFH Corp. will file a request with the Internal Revenue Service (the "*IRS*") for a private letter ruling ("*Private Letter Ruling*") that, among other things, will provide (a) that (i) the transfer by TCEH of all of its assets and its ordinary course operating liabilities to Reorganized TCEH (as defined below), (ii) the transfer by the Reorganizing Entities to Reorganized TCEH of certain operating assets and liabilities that are reasonably necessary to the operation of Reorganized TCEH and (iii) the distribution by TCEH of (A) the equity it holds in Reorganized TCEH and (B) the cash proceeds TCEH receives from Reorganized TCEH to the holders of TCEH First Lien Claims will qualify  as a "reorganization" within the meaning of Sections 368(a)(1)(G) , 355 and 356 of the Internal Revenue Code of 1986, as amended (the "*Code*"), and (b) for certain other rulings under Sections 368(a)(1)(G) and 355 of the Code.

*Conditions Precedent to Restructuring Transactions*

The Restructuring Support Agreement provides that the consummation of the Reorganizing Entities' proposed financial restructuring (the "*Restructuring Transactions*") is subject to the satisfaction or waiver (if applicable) of various conditions, including, among other things:

- the consummation of the debtor-in-possession financing transactions and settlements described above;

- holders of certain EFH Non-Guaranteed Notes will have received not less than 37.15% in value for their respective claims under the plan of reorganization;

- immediately following the distribution by TCEH described above under the heading "Private Letter Ruling," the aggregate tax basis, for federal income tax purposes, of the assets held by Reorganized



TCEH will be equal to a specified minimum amount of aggregate tax basis, and the step-up in aggregate tax basis will be no less than $2.1 billion;

- the receipt of requisite regulatory approvals;

- the receipt of the Private Letter Ruling; and

- the receipt of requisite orders from the Bankruptcy Court.

### ORGANIZATIONAL STRUCTURE

**Current Structure**

The chart below is a summary of EFH Corp.'s organizational and ownership structure as of the date of this Information Memorandum and illustrates EFH Corp.'s and its major subsidiaries' (other than Oncor and its subsidiaries) long-term debt, after giving effect to the funding under the EFIH First Lien DIP Facility and the EFIH Second Lien DIP Notes Financing and the use of proceeds therefrom.  See "Capitalization" for further information regarding our outstanding debt amounts.  The chart below excludes finance subsidiaries and subsidiaries of EFH Corp. that are not subsidiaries of EFIH or EFCH.

_____

(1)    Under the Restructuring Plan, it is expected that on the Effective Date the EFH Corp. Unsecured Notes will be cancelled and each holder, as a holder of General Unsecured Claims Against EFH, will receive its pro rata share (calculated as the aggregate principal amount of General Unsecured Claims Against EFH held by such holder divided by the total amount of General Unsecured Claims Against EFH Corp.) of 1.0% of the shares of common stock of Reorganized EFH Corp. (subject to dilution by the Second Lien Equity Conversion). General Unsecured Claims Against EFH may participate in up to 9% of the Equity Conversion by purchasing (subject to certain terms and conditions) their pro rata share of the EFIH Second Lien DIP Tranche A-3 Notes.

(2)    Excludes $1.282 billion principal amount of Legacy Notes held by EFIH.  The Legacy Notes held by EFIH are expected to be cancelled on the Effective Date (if the Oncor TSA Amendment is approved) and it is expected that EFIH will receive no consideration in connection with such cancellation.

(3)    None of EFH Corp., EFIH's subsidiaries (including Oncor), or EFCH or its subsidiaries will guarantee, and none of them (other than EFIH Finance) will otherwise be liable for, the EFIH Second Lien DIP Notes.

(4)    Under the Restructuring Plan, it is expected that on the Effective Date the EFIH First Lien DIP Facility will be repaid using the proceeds from borrowings under an exit financing facility that will be put in place at EFIH in connection with its emergence from bankruptcy. The ability of EFIH to obtain such exit financing will depend on, among other things, the timing and outcome of various ongoing matters in the Chapter 11 cases, its business, operations and financial condition, and market conditions.  See "Risk Factors — We may not be able to obtain exit financing to repay the EFIH First Lien DIP Facility or, if we are able to obtain such exit financing, the credit agreement governing such exit financing may significantly restrict our financing and operations flexibility after emerging from bankruptcy."

(5)    Under the Restructuring Plan, pursuant to the Second Lien Equity Conversion, it is expected that on the Effective Date the EFIH Second Lien DIP Notes issued under the EFIH Second Lien DIP Notes Financing will, subject to certain conditions, automatically convert into approximately 64% of the shares of common stock of Reorganized EFH Corp.

(6)    Under the Restructuring Plan, it is expected that on the Effective Date, the EFIH Unsecured Notes will be cancelled and each holder, as a holder of General Unsecured Claims Against EFIH, will receive its pro rata share (calculated as the aggregate principal amount of General Unsecured Claims Against EFIH held by such holder divided by the total amount of General Unsecured Claims Against EFIH) of 98.0% of the shares of common stock of Reorganized EFH Corp. (subject to dilution by the Second Lien Equity Conversion).

(7)    EFIH Finance Inc., a wholly owned subsidiary of EFIH not shown on this chart, is the co-issuer (or co-borrower, as applicable) of the EFIH First Lien Notes, the EFIH Second Lien Notes, the EFIH First Lien DIP Facility and the EFIH Second Lien DIP Notes.

(8)    Oncor Electric Delivery Holdings Company LLC and Oncor Electric Delivery Company LLC (the "*Oncor Ring-Fenced Entities*") will not be guarantors or restricted subsidiaries under the EFIH First Lien DIP Facility or the EFIH Second Lien DIP Notes and will not be subject to covenants and events of default thereunder.

**Post-Reorganizational Structure**

On the Effective Date, pursuant to the Restructuring Support Agreement and in connection with the confirmation of the Chapter 11 Plan, it is expected that the outstanding equity of a newly formed subsidiary that contains the assets and liabilities of  TCEH ("*Reorganized TCEH*") will be distributed to holders of TCEH's outstanding senior first lien secured indebtedness, and EFH Corp. will cease to own an indirect interest in the assets and liabilities of TCEH and any of TCEH's direct or indirect subsidiaries. See "Risk Factors – As a result of the Chapter 11 cases and the TCEH Spin Off, EFIH's historical financial information will not be indicative of its future financial performance."

The chart below is a summary of EFH Corp.'s expected organizational and ownership structure as of the Effective Date as contemplated by the Restructuring Plan.



_____

(1) Under the Restructuring Plan, it is expected that on the Effective Date in full satisfaction of the claims under the EFIH Unsecured Notes, the EFH Corp. Unsecured Notes and the EFH Corp. Interests, (i) each holder of General Unsecured Claims Against EFIH, including each holder of EFIH Unsecured Notes, will receive its pro rata share of 98.0% of the equity interests of Reorganized EFH Corp. (subject to dilution by the Second Lien Equity Conversion), (ii) each holder of General Unsecured Claims Against EFH, including each holder of EFH Corp. Unsecured Notes, will receive its pro rata share of 1.0% of the equity interests of Reorganized EFH Corp. (subject to dilution by the Second Lien Equity Conversion) and (iii) each holder of EFH Corp. Interests will receive its pro rata share of 1.0% of the equity interests of Reorganized EFH Corp. (subject to dilution by the Second Lien Equity Conversion).  Pursuant to the Second Lien Equity Conversion, it is expected that on the Effective Date the EFIH Second Lien DIP Notes will, subject to certain conditions, automatically convert on a pro rata basis into approximately 64% of the equity interests of Reorganized EFH Corp.

(2) In connection with an exit from bankruptcy, it is expected that EFIH will require a new credit facility, or "exit financing."  EFIH's ability to obtain such financing will depend on, among other things, the timing and outcome of various ongoing matters in the Chapter 11 cases.

(3) Following the Effective Date, we expect that Oncor Holdings' and Oncor's board of directors will continue to be comprised of a majority of directors that are independent from EFH Corp. and its subsidiaries, including EFIH.  It is expected that the Oncor Ring-Fenced Entities will continue to be restricted from guaranteeing or pledging any of their assets to secure the debt of EFH Corp. or its subsidiaries, including EFIH.  In addition, it is expected that there will continue to be restrictions on the payment of distributions, and the independent members of Oncor's board of directors and the largest non-majority member of Oncor will continue to be entitled to block the payment of distributions to Oncor Holdings.

### ADDITIONAL INFORMATION

EFIH was formed in Delaware in 2007 and EFIH Finance was incorporated in Delaware in 2009.  Our principal executive offices are located at Energy Plaza, 1601 Bryan Street, Dallas, TX 75201 3411.  The telephone number of our principal executive offices is (214) 812 4600.  Our website is

http://www.energyfutureholdings.com/efih.  Information on or connected to our website does not constitute part of this Information Memorandum.

## SUMMARY OF THE OFFER

*The following summary of the Offer is provided solely for convenience and is qualified in its entirety by reference to, and should be read in conjunction with, the information appearing elsewhere or incorporated by reference in this Information Memorandum.*

Offerors ................................................. The Offerors are EFIH and EFIH Finance, also referred to herein as the Company.

EFIH First Lien Notes ........................................ The EFIH First Lien Notes subject to the Offer are listed in the table below:

| Issuers | CUSIP Numbers | Title of Security | Aggregate Principal Amount Outstanding |
|---|---|---|---|
| EFIH; EFIH Finance | 29269QAE7 U29197AC1 | 6.875% Senior Secured Notes due 2017 | $502,714,000 |
| EFIH; EFIH Finance | 29269QAA5 29269QAK3 U29197AG2 | 10.00% Senior Secured Notes due 2020 | $3,482,106,000 |

EFIH 6.875% First Lien Notes ............................... The Company has issued and sold $502,714,000 in aggregate principal amount of the EFIH 6.875% First Lien Notes under that certain Indenture, dated as of August 14, 2012, among the Company and CSC Trust Company of Delaware (as successor trustee to The Bank of New York Mellon Trust Company, N.A.), as trustee (as supplemented, the "*2017 Indenture*"), comprising $250,000,000 in aggregate principal amount on August 14, 2012 and $252,714,000 in aggregate principal amount on October 23, 2012.

EFIH 10.000% First Lien Notes ............................. The Company has issued and sold $3,482,106,000 in aggregate principal amount of EFIH 10.000% First Lien Notes under that certain Indenture, dated as of August 17, 2010, among the Company and CSC Trust Company of Delaware (as successor trustee to The Bank of New York Mellon Trust Company, N.A.), as trustee (as supplemented, the "*2020 Indenture*" and together with the 2017 Indenture, the "*Indentures*"), comprising $2,180,000,000 in aggregate principal amount on August 17, 2010 and $1,302,106,000 in aggregate principal amount on January 29, 2013.

The Offer ............................................. The Company is offering Qualifying Holders the opportunity to exchange all of the EFIH First Lien Notes held by such Holders for EFIH First Lien DIP Loans, in each case, upon the terms and conditions set forth in this Information Memorandum. A Participating Holder will be required to tender all of its EFIH First Lien Notes in the Offer. No partial tender of a Participating Holder's EFIH First Lien Notes will be valid. No Holder is required to participate in the Offer and any Holder's participation in the Offer is voluntary. The Offer is not conditioned on any Holders of any minimum principal amount of EFIH First Lien Notes participating in the Offer. Subject to applicable law, the Offer is being made separately for each series of EFIH First Lien Notes and, subject to applicable law, the Company reserves the right to terminate, withdraw or amend the Offer with respect to either series of EFIH First Lien Notes

independently from the other series.

Qualifying Holders ................................................. The Offer is being made, and the EFIH First Lien DIP Loans are being offered and issued, only to Qualifying Holders, which are Holders of EFIH First Lien Notes that are either (A) a "qualified institutional buyer" as defined in Rule 144A of the Securities Act or (B) institutional accredited investors (as defined in Rule 501(a)(1), (2), (3), or (7) under the Securities Act, or (C) non-U.S. persons (within the meaning of Regulation S under the Securities Act) out of the United States.  Each Participating Holder will be required to represent in its Letter of Transmittal that it is included in one of these categories.

Total Consideration ................................................. Participating Holders who tender their EFIH First Lien Notes and submit an executed Letter of Transmittal relating to such Holder's EFIH First Lien Notes on or prior to the Early Participation Date will be entitled to receive for each $1,000 principal amount of EFIH First Lien Notes tendered $1,050.00 in an aggregate principal amount of EFIH First Lien DIP Loans.

Early Participation Consideration ........................... The Early Participation Consideration will be paid only as a part of the Total Consideration and will be a portion thereof equal to $17.50 in aggregate principal amount of First Lien DIP Loans per $1,000 principal amount of the EFIH First Lien Notes tendered on or prior to the Early Participation Date.

Exchange Consideration ......................................... Participating Holders who tender their EFIH First Lien Notes and submit an executed Letter of Transmittal relating to such Holder's EFIH First Lien Notes after the Early Participation Date and on or prior to the Expiration Date will be entitled to receive for each $1,000 principal amount of EFIH First Lien Notes tendered, the Total Consideration less the Early Participation Consideration.

Accrued and Unpaid Interest ................................. The Company will also pay through the issuance of additional EFIH First Lien DIP Loans in an aggregate principal amount equal to 101% of the amount of all accrued and unpaid interest at the non-default rate up to, but not including, the Closing Date on all of the EFIH First Lien Notes that are accepted for exchange in the Offer.  Accrued and unpaid interest will not include additional interest payable under the registration rights agreements or interest on overdue interest following a default in the payment of interest on an interest payment date.  The amount of such accrued and unpaid interest that will be payable will be calculated at the rate of 6.875% with respect to the EFIH 6.875% First Lien Notes and 10.00% with respect to the EFIH 10.00% First Lien Notes.

Original Issue Discount ......................................... In no event will any amounts payable in the Offer be adjusted in any manner to take into account the actual amount of original issue discount, if any, that is applicable in connection with any syndication of the EFIH First Lien DIP Loans and the closing of the EFIH First Lien DIP Facility.

Early Participation Date......................................... The Early Participation Date will be 5:00 p.m., New York City time, on May 19, 2014, unless extended or earlier terminated by

the Company in its sole discretion. Holders who wish to participate in the Offer and receive the Total Consideration must validly tender their EFIH First Lien Notes and deliver a validly executed Letter of Transmittal in the form accompanying this Information Memorandum in accordance with the instructions set forth therein on or prior to the Early Participation Date.

Withdrawal Rights..................................................... Holders may not withdraw EFIH First Lien Notes that have been validly tendered in the Offer at any time, except in certain limited circumstances where withdrawal rights are required by law. If the Company determines to offer withdrawal rights in accordance with applicable laws, including in the event a material change causes the Company to update the information relating to this Offer and extend the Expiration Date, any such withdrawal rights will be limited as set forth in any notice thereof by the Company.

Expiration Date........................................................ The Offer will expire at 5:00 p.m., New York City time, on June 6, 2014, unless extended or earlier terminated by the Company in its sole discretion. An announcement of an extension of the Offer will be made no later than 9:00 a.m., New York City time, on the next business day following the previously scheduled Expiration Date.

Closing Notification Date ........................................ On or after the Expiration Date and after the date on which (i) conditions to the consummation of the Offer have been satisfied, or (ii) the Company determines in its reasonable judgment that the conditions to the consummation of the Offer will be satisfied as of or on the Closing Date. On the Closing Notification Date, the Offer Agent will notify each Participating Holder or its nominee of such Participating Holder of the Closing Date and direct such Participating Holder to execute and return to the Offer Agent a signature page to the EFIH First Lien DIP Facility by the Closing Date. The Closing Date Notification may be oral or in writing, and if oral will be followed by a writing. The Closing Date Notification date may be extended by the Company in its sole discretion.

Closing Date ............................................................ The Closing Date will be promptly following the Expiration Date as indicated in the Closing Date Notification, unless extended by the Company in its sole discretion. On the Closing Date: (i) the issuance of the EFIH First Lien DIP Loans to the Participating Holders will be recorded by the EFIH First Lien DIP Agent in the applicable register and (ii) the trustee for the EFIH First Lien Notes will cancel the EFIH First Lien Notes tendered by Participating Holders.

To the extent the Closing Date occurs but the Offer fails to close, all EFIH First Lien Notes that are tendered to the Depositary Agent will promptly be returned to the applicable Participating Holder.

Conditions to the Consummation of the Offer; Bankruptcy Court Approval ................................... The consummation of the Offer is subject to several conditions, including, among others: (i) the closing of the EFIH First Lien DIP Facility, which is also subject to several conditions, including the satisfaction or waiver of the conditions precedent

12

under the EFIH First Lien DIP Facility as described herein, and the approval by the Bankruptcy Court of the Company's incurrence of indebtedness and granting of superpriority priming liens under the EFIH First Lien DIP Facility and (ii) approval by the Bankruptcy Court of the EFIH First Lien Settlement.  The Restructuring Support Agreement requires the Company to obtain such orders from the Bankruptcy Court and to consummate this Offer on or before the 75th day after the Petition Date, which day is July 13, 2014.  The consummation of the Offer is also subject to the approval by the Bankruptcy Court of the performance by EFIH and EFIH Finance of their obligations under the dealer manager agreement between the Company and the Dealer Managers.  Under the terms of the Restructuring Support Agreement, certain parties could have termination rights under the Restructuring Support Agreement to the extent the EFIH Second Lien Settlement and the EFIH Second Lien DIP Notes Financing are not consummated in connection with the completion of this Offer.  As a result, this Offer is conditioned upon the approval by the Bankruptcy Court of the EFIH Second Lien DIP Notes Facility and the EFIH Second Lien Settlement in addition to the Bankruptcy Court's approval of the EFIH First Lien DIP Facility and EFIH First Lien Settlement, which conditions can be waived by the Company in its sole discretion.  See "Summary of the EFIH First Lien DIP Facility—Conditions Precedent" for a description of some of the conditions to the closing of the EFIH First Lien DIP Facility and "Description of the Offer—Conditions to the Consummation of the Offer" for a description of the conditions of the Offer.

If these conditions are not satisfied or waived or the EFIH First Lien DIP Facility fails to be completed, the Company may extend the Offer or elect to terminate it.  If the Company elects to terminate the Offer, any EFIH First Lien Notes tendered in the Offer will be promptly returned to the Holder.

Procedures of the Offer...........................................  See "Description of the Offer—How to Tender EFIH First Lien Notes in the Offer." For further information, call the Offer Agent or consult your broker, dealer, commercial bank or trust company.

Terms of EFIH First Lien DIP Loans .....................  See "Summary of the EFIH First Lien DIP Facility" for a summary of the material terms and provisions of the EFIH First Lien DIP Loans.  The summary is qualified in its entirety by the definitive documentation for the EFIH First Lien DIP Facility (as may be updated from time to time during the Offer), which is or will be available at http://www.efhcaseinfo.com.  Holders are advised to check this website regularly for updates.  As a condition to participating in the Offer, Holders will be required to acknowledge in their executed Letter of Transmittal that they have read such documentation.

First Lien Commitment Letter ...............................  Pursuant to the First Lien Commitment Letter, affiliates of the Dealer Managers and other financial institutions have provided commitments as initial lenders under the EFIH First Lien DIP Facility.  As a result of the RSA EFIH First Lien Note Parties

and RSA EFIH Second Lien Note Parties agreeing to exchange their EFIH First Lien Notes and/or EFIH Second Lien Notes, as applicable, and to provide certain backstop commitments under and pursuant to the terms of the Restructuring Support Agreement, that commitment amount has been significantly reduced.  As of May 6, 2014, the initial lenders' commitment amount under the EFIH First Lien DIP Facility has been reduced from $5.4 billion to $1.85 billion. In addition, the commitment would be further reduced by an amount of EFIH First Lien DIP Loans required to consummate the transactions contemplated by the Offer. Any such reduction in commitments that occurs on or before the Early Participation Date will reduce the fees earned by the commitment parties under the First Lien Commitment Letter.  In no event will the aggregate amount of EFIH First Lien DIP Loans exceed $5.4 billion.

The initial lenders intend that the EFIH First Lien DIP Facility will be full syndicated.  Syndication may result in certain limited changes to the terms of the EFIH First Lien DIP Facility that make it more favorable to the lenders.

EFIH First Lien Notes not Exchanged ..................... In connection with the completion of the EFIH First Lien DIP Facility, the Company intends to repay an amount equal to all outstanding principal plus accrued and unpaid interest at the non-default rate due and owing under the EFIH First Lien Notes that are not exchanged in the Offer (which will not include any alleged premiums, settlements, fees or claims relating to the repayment of such claims).  Unless otherwise ordered by the Bankruptcy Court, accrued and unpaid interest will not include additional interest payable under the registration rights agreements or interest on overdue interest following a default in the payment of interest on an interest payment date.

Income Tax Consequences ..................................... For a discussion of certain United States federal income tax consequences applicable to Participating Holders, see "Certain United States Federal Income Tax Consequences."

Dealer Managers ..................................................... Deutsche Bank Securities Inc. and the other entities listed on the cover page of this Information Memorandum.  The contact information for the Dealer Managers appears on the back cover of this Information Memorandum.

Offer Agent ............................................................ The Offer Agent is Epiq Bankruptcy Solutions, LLC ("*Epiq Systems*").  Requests for additional copies of this Information Memorandum should be directed to the Offer Agent.  The contact information for the Offer Agent appears on the back cover of this Information Memorandum.

Depositary Agent ................................................... Epiq Systems. The contact information for the Depositary Agent appears on the back cover of this Information Memorandum.

EFIH First Lien DIP Agent .................................... Deutsche Bank AG New York Branch.

Brokerage Commissions ........................................ No brokerage fees and commissions are payable by the Holders to the Company, the Offer Agent, the Depositary Agent or

14

otherwise in connection with the Offer.

Risk Factors ........................................................  Before deciding to participate in the Offer, carefully review the risk factors set forth in "Risk Factors" beginning on page 23 of this Information Memorandum and those contained in our 2013 Form 10-K incorporated herein by reference and those that may be included in any future SEC filings that are incorporated by reference in this Information Memorandum.

## SUMMARY OF THE EFIH FIRST LIEN DIP FACILITY

*The following is a summary of the material terms and provisions of the EFIH First Lien DIP Facility, including the material terms of the EFIH First Lien DIP Loans.  This summary does not purport to be complete and is qualified in its entirety by reference to provisions of the EFIH First Lien DIP Facility, including the definitions of certain terms therein that are not otherwise defined in this Information Memorandum.  By delivering an executed Letter of Transmittal you will be making an irrevocable commitment to become a lender under the EFIH First Lien DIP Facility.  **Therefore, prior to deciding to participate in the Offer, you should read the entire EFIH First Lien DIP Facility, the most current version of which is available at** http://www.efhcaseinfo.com.*

| | |
|---|---|
| Borrowers | EFIH and EFIH Finance. |
| Guarantors | Each direct and indirect wholly owned domestic restricted subsidiary of the Company formed or acquired after the Closing Date, subject to customary exceptions.  There will be no guarantors on the closing date. |
| Type and Amount | Up to $5,400.0 million aggregate principal amount of term loan facility available to the Borrowers upon the Bankruptcy Court's entry of the Final Order (as defined below) and satisfaction (or waiver) of the conditions precedent. |
| Purchase Price Discount | The EFIH First Lien DIP Loans may be issued at less than their stated principal amount in connection with the initial lenders' syndication of the EFIH First Lien DIP Facility.  Such purchase price discount may be subject to increase if required to fully syndicate the EFIH First Lien DIP Loans.  Notwithstanding the foregoing, none of the EFIH First Lien DIP Loans issued in the Offer will be issued at such a discount. |
| Maturity | The date that is the earliest to occur of (i) the 24-month anniversary of the Closing Date, subject to a six month extension upon the satisfaction of certain conditions, (ii) the effective date of the Chapter 11 Plan, (iii) the consummation of a sale of substantially all of the Borrowers' assets or stock under section 363 of the Bankruptcy Code or (iv) the acceleration of the loans and termination of any then outstanding commitments in in accordance with the terms of the EFIH First Lien DIP Facility, but in any event no later than the 30-month anniversary of the Closing Date. |
| | It is expected that the EFIH First Lien DIP Facility will be repaid using the proceeds from borrowings under an exit financing that will be put in place at EFIH in connection with its emergence from bankruptcy.  Our ability to obtain such exit financing will depend on, among other things, the timing and outcome of various ongoing matters in the Chapter 11 cases, our business, operations and financial condition, and market conditions. |
| Interest Rates | Alternate Base Rate plus a minimum 2.25% per annum interest margin, or LIBOR (with a floor of 1%) plus a minimum 3.25% per annum interest margin. |

| | |
|---|---|
| Original Issue Discount ........................................... | If the stated principal amount of the EFIH First Lien DIP Loans exceeds their "issue price" (as defined in "Certain United States Federal Income Tax Consequences") by more than a statutorily defined de minimis amount, the EFIH First Lien DIP Loans will be treated as issued with original issue discount for U.S. federal income tax purposes.  In such case, Participating Holders subject to U.S. federal income taxation, whether on the cash or accrual method of tax accounting, generally would be required to include amounts representing original issue discount in gross income (as ordinary income) on a constant yield to maturity basis for U.S. federal income tax purposes in advance of the receipt of cash payments to which such original issue discount is attributable.  For further discussion, see "Certain United States Federal Income Tax Consequences." |
| Ranking ................................................................. | The EFIH First Lien DIP Facility will be: |

- subject to the "carve-out," the liens securing the amounts owed under the EFIH First Lien DIP Facility will prime and be senior to the liens securing the Borrower's obligations under all of its existing indebtedness (including the existing EFIH first and second lien indebtedness), other than certain permitted liens;

- secured on a first-priority basis by a lien on the Collateral;

- effectively senior to all unsecured debt of EFIH to the extent of the value of the Collateral (after taking into account certain permitted liens); and

- structurally subordinated to all existing and future debt and other liabilities of EFIH's subsidiaries (other than EFIH Finance), including Oncor Holdings and its subsidiaries, any of EFIH's future foreign subsidiaries and any other subsidiaries that do not provide a guarantee of the EFIH First Lien DIP Facility.

| | |
|---|---|
| Security and Priority ............................................... | Subject to the "carve-out" and the orders of the Bankruptcy Court, the EFIH First Lien DIP Facility will be secured by first priority post-petition liens on substantially all now owned or hereafter acquired assets of the Borrowers and the proceeds thereof, including all of the membership interests and other investments EFIH owns or holds directly in Oncor Holdings, in each case to the extent such assets, membership interests or investments constitute the "Collateral" (as it will be defined in the Interim Order or the Final Order, or collectively, the "*Orders*"). |
| Conditions Precedent ............................................... | The conditions to the closing of the EFIH First Lien DIP Facility include, among others, the following: |

- *Final Order*.  The Final Order shall have been entered by the Bankruptcy Court, upon the DIP Financing Motion, no later than August 16, 2014. Neither the Interim Order nor the Final Order

17

shall have been reversed, modified, amended, stayed or vacated, in the case of any modification or amendment, in a manner, that is adverse to the lenders, without the consent of the EFIH First Lien DIP Agent and a significant backstop commitment party;

- *Payment of Prepetition First Lien Obligations.* If the Final Order (or any order entered concurrently or prior to the entry of the Final Order) approves the repayment in full of the EFIH First Lien Notes to Non-Settling EFIH First Lien Note Holders with the proceeds of the EFIH First Lien DIP Facility, substantially concurrently with the borrowing under the EFIH First Lien DIP Facility, the principal amount plus any accrued and unpaid interest of the EFIH First Lien Notes (which, for the avoidance of doubt, shall not include make-whole payments or premiums in respect of the EFIH First Lien Notes unless otherwise approved by the Borrowers) shall be repaid in full;

- *Security.*  All of the outstanding equity of EFIH Finance and Oncor Holdings shall have been pledged to the collateral agent pursuant to the Final Order. The EFIH First Lien DIP Agent shall have received UCC-1 financing statements in proper form for filing;

- *Customary Deliverables.*  The EFIH First Lien DIP Agent shall have received customary legal opinions, officer certificates, resolutions and evidence of required government consents;

- *Credit Documents.* The loan documents for the EFIH First Lien DIP Facility shall have been executed by the Borrowers, EFIH First Lien DIP Agent and lenders and in respect to material changes relating to the loan documents, such material changes must be reasonably acceptable to a significant backstop commitment party;

- *No Default.* No default or event of default under the EFIH First Lien DIP Facility shall exist and all representations and warranties therein shall be true and correct  in all material respects (or in all respects for representations and warranties qualified by materiality or Material Adverse Event);

- *Fees and Expenses.* All fees and invoiced reasonable and documented out-of-pocket expenses of the EFIH First Lien DIP Agent, collateral agent, initial commitment parties and a significant backstop commitment party shall have been paid to the extent earned, due and

payable;

- *Restructuring Support Agreement.*  Solely in respect of the backstop commitment provided by a significant backstop commitment party, the Restructuring Support Agreement shall be in full force and effect and the Reorganizing Entities shall be in compliance with the Restructuring Support Agreement in all material respects as of the Closing Date.

- *Initial Budget.*  The Company's initial budget shall have been delivered to the EFIH First Lien DIP Agent.

Use of Proceeds .......................................................  Cash proceeds of the EFIH First Lien DIP Facility will be used (together with cash on hand): (a) firstly, to repay in full all outstanding principal plus accrued and unpaid interest at the non-default rate due and owing under the EFIH First Lien Notes (which will not include any alleged premiums, fees or claims relating to the repayment of such claims) to Non-Settling EFIH First Lien Note Holders and (b) secondly, to finance all and any working capital needs, and for any other general corporate purposes of the Borrowers, including funding a portion of the EFIH Second Lien Settlement Offer.

Prepayments .........................................................  *Voluntary*: At any time without premium or penalty (other than breakage costs to the extent applicable).

*Mandatory*: Limited to (i) 100% of the net cash proceeds of insurance/condemnation received by the Borrowers or any restricted subsidiary, subject to reinvestment rights and other customary exceptions and (ii) subject to certain exceptions and certain reinvestment rights, 100% of the net cash proceeds of (x) any disposition of any asset, property or business units of either Borrower and any debtor not in the ordinary course or (y) any dividends or distributions of cash to the Borrowers by any subsidiary of Oncor Holdings (an "*Oncor Subsidiary*") of net cash proceeds from a disposition by such Oncor Subsidiary.

Representations and Warranties .............................  Customary representations and warranties (subject to usual exceptions and materiality qualifiers).

Covenants .........................................................  Customary affirmative and negative covenants (subject to baskets and materiality exceptions) including the following covenants:

- covenants restricting intercompany loans or investments by or to any Borrower or its guarantor subsidiaries to or by other subsidiaries;

- covenants restricting liens, investments, sale leasebacks, restricted payments, asset sales, transactions with affiliates, indebtedness, and

19

actions in the bankruptcy proceeding;

- a financial covenant requiring the Borrowers to have unrestricted cash in excess of $150.0 million at all times; and

- covenants requiring the compliance with applicable laws, payment of post petition taxes, maintenance of corporate existence, maintenance of insurance, access of books and records, delivery of customary annual, quarterly and monthly financial reporting and customary budget reporting, delivery of materials provided to the Bankruptcy Court and satisfaction of other matters related to the bankruptcy proceeding.

Events of Default................................................... Customary events of default (subject to materiality exceptions and qualifications and grace periods), including, among others:

- failure to pay any principal, interest or other amount due under the EFIH First Lien DIP Facility, subject to grace periods except in the case of failure to pay principal;

- breach of specific covenants;

- inaccuracy of representations and warranties;

- change of control of any Borrower;

- cross default to material postpetition indebtedness;

- Material judgments as to any post-petition obligation that is allowed as an administrative expense claim against the Borrowers;

- the confirmation of a plan of reorganization which does not provide for the indefeasible payment in full in cash of the EFIH First Lien DIP Facility;

- entry of an order or orders granting relief from the automatic stay under section 362 of the Bankruptcy Code to any creditor or party in interest to permit foreclosure on any equity in any of the Oncor Subsidiaries held by the Borrowers or any other property having an aggregate value in excess of $25.0 million;

- conversion of the Chapter 11 cases to a case under chapter 7 of the Bankruptcy Code;

- appointment of  a trustee, receiver, interim receiver, or manager;

- the grant of any other superpriority claim that is pari passu with or senior to the EFIH First Lien DIP Facility, subject to exceptions;

- entry of an order by the Bankruptcy Court approving any claims for recovery under section 506 of the Bankruptcy Code; and

- any Borrower making any material payments relating to prepetition obligations other than in accordance with the first day orders, the Interim Orders of the Bankruptcy Court or the Final Order.

Assignment and Participations ..............................  *Assignments*:

- may not be made to certain parties identified by the Company or competitors of the Company; and

- are subject to the consent of the Borrowers and the EFIH First Lien DIP Agent (except for assignments to certain permitted affiliates or assignments made during the continuance of any payment Event of Default).

*Participations:*  The participating lender's rights under the agreement remain unchanged; such lender remains solely responsible for the performance of obligations under the EFIH First Lien DIP Facility; and the Borrowers, the EFIH First Lien DIP Agent and the other lenders will continue to deal solely and directly with such lender in connection with such lender's rights under the EFIH First Lien DIP Facility.

Acknowledgement and Agreement of the Lenders of Oncor Ring-Fencing ...........................  By accepting the EFIH First Lien DIP Loans, lenders will acknowledge: (i) the legal separateness of the Borrowers and the Guarantors from the Oncor Subsidiaries, (ii) that the lenders under the Oncor Electric Delivery Facility and the holders of Oncor's existing debt instruments have likely advanced funds thereunder in reliance upon the separateness of the Oncor Subsidiaries from the Borrowers and the Guarantors, (iii) that the Oncor Subsidiaries have assets and liabilities that are separate from those of the Borrowers and their other subsidiaries, (iv) that the obligations owing under the EFIH First Lien DIP Loans are obligations and liabilities of the Borrowers and the Guarantors only, and are not the obligations or liabilities of any Oncor Subsidiary, (v) that the lenders shall look solely to the Company and the Guarantors and their assets, and not to any assets, or to the pledge of any assets, owned by any Oncor Subsidiary, for the repayment of any amounts payable pursuant to the EFIH First Lien DIP Loans and for satisfaction of any other obligations owing to the lenders under the EFIH First Lien DIP Facility and any related documents and (vi) that none of the Oncor Subsidiaries shall be personally liable to the lenders under the EFIH First Lien DIP Facility for any amounts payable, or any other obligation, under the EFIH First Lien DIP Facility or

any related documents.

The lenders under the EFIH First Lien DIP Facility, by accepting the loans thereunder, will acknowledge and agree that they shall not (i) initiate any legal proceeding to procure the appointment of an administrative receiver or (ii) institute any bankruptcy, reorganization, insolvency, winding up, liquidation, or any like proceeding under applicable law, against any Oncor Subsidiary, or against any of the Oncor Subsidiaries' assets. The lenders further acknowledge and agree that each of the Oncor Subsidiaries is a third party beneficiary thereunder and shall have the right to specifically enforce such covenant in any proceeding at law or in equity. The foregoing acknowledgements and agreements will be contained in the EFIH First Lien DIP Facility.

## RISK FACTORS

*You should carefully consider the risk factors set forth below and the risk factors incorporated into this Information Memorandum by reference to our 2013 Form 10-K as well as the other information contained in and incorporated by reference into this Information Memorandum, before deciding to invest in the EFIH First Lien DIP Loans. Additional risks and uncertainties not currently known to us or those we currently view to be immaterial also may materially and adversely affect our business, financial condition or results of operations. Any of the following risks or any of the risks described in our 2013 Form 10-K could materially and adversely affect our business, financial condition, operating results or cash flow.*

**Risks Related to the Bankruptcy Proceedings**

***We have filed voluntary petitions for relief under the Bankruptcy Code and are subject to the risks and uncertainties associated with a bankruptcy case.***

On April 29, 2014, EFIH and EFIH Finance (together with EFH Corp. and other direct and indirect subsidiaries of EFH Corp. including EFCH and TCEH but excluding the Oncor Ring-Fenced Entities) filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code. For the duration of the Chapter 11 cases, we will be subject to various risks, including but not limited to the following:

- our ability to develop, consummate, and implement one or more plans of reorganization with respect to the Chapter 11 cases;

- our ability to obtain Bankruptcy Court, regulatory (including the approval of the PUCT) and creditor approval of a plan of reorganization and the effect of alternative proposals, views, and objections of creditor committees, creditors, or other stakeholders, which may make it difficult to develop and consummate a plan of reorganization in a timely manner;

- our ability to obtain Bankruptcy Court approval with respect to our motions in the Chapter 11 cases and the outcomes of Bankruptcy Court rulings and of the Chapter 11 cases in general;

- risks associated with third party motions in the Chapter 11 cases, which may interfere with our ability to formulate and implement a plan of reorganization;

- increased costs related to the Chapter 11 cases and related litigation;

- significant time and energy of senior management spent dealing with the bankruptcy and restructuring activities rather than focusing exclusively on business operations;

- our ability to maintain or obtain sufficient financing sources to fund any reorganization plan and meet future obligations; and

- potential incremental increase in risks related to distributions from Oncor.

We will also be subject to risks and uncertainties with respect to the actions and decisions of creditors and other third parties who have interests in the Chapter 11 cases that may be inconsistent with our plans. In addition, the Chapter 11 cases subject us to risks related to litigation and/or claims asserted by creditors or other stakeholders in the Chapter 11 cases. These risks and uncertainties could affect us in various ways and may significantly increase the time we have to operate under Chapter 11 bankruptcy protection. Because of the risks and uncertainties associated with Chapter 11 cases, we cannot predict or quantify the ultimate impact that events occurring during the Chapter 11 cases may have on our cash flows, financial condition and results of operations.

***The structure of the reorganized Company could differ in very material respects from the description contained in this Information Memorandum.***

The description of the various parts of the Restructuring Plan contained in this Information Memorandum, including the transactions contemplated by the Restructuring Support Agreement, assumes that all parts of the Restructuring Plan are approved and implemented as currently proposed.  However, there can be no assurance that all or any part of the Restructuring Plan will in fact be approved in the form currently proposed, in the timeframe currently expected, or at all.  As described above, the bankruptcy process is inherently uncertain, and subject to the actions and decisions of creditors and other third parties who have interests in the Chapter 11 cases, including the risk of objections to the proposed Restructuring Plan and the risk of litigation.  In addition, the Bankruptcy Court has broad discretion in its review and approval of all and any parts of the Restructuring Plan.  As a result of these uncertainties, the capital and other structure of the reorganized Company, if a Chapter 11 reorganization is implemented at all, could differ in very material respects from the description contained in this Information Memorandum.

***Operating under Chapter 11 may restrict our ability to pursue strategic initiatives.***

The terms of the EFIH First Lien DIP Facility and the EFIH Second Lien DIP Notes Financing will limit our ability to undertake certain business initiatives.  These limitations include, among other things, our ability to:

- sell assets outside the normal course of business;

- pay prepetition obligations;

- consolidate, merge, sell or otherwise dispose of all or substantially all of our assets;

- grant liens; and

- finance our investments or other capital needs or to engage in other business activities that may be in our interest.

***If the Reorganizing Entities fail to emerge from bankruptcy, we may be liquidated and you may lose all or part of your investment in the EFIH First Lien DIP Loans.***

We and certain of our affiliates are operating as debtors-in-possession under Chapter 11.  Our continuation as a going concern is contingent upon, among other things, our ability to develop a Chapter 11 Plan and obtain confirmation of that Chapter 11 Plan under the Bankruptcy Code, which includes approval of the Chapter 11 Plan by the Bankruptcy Court and certain of our classes of claims and interests.  Additionally, as part of the process to obtain Bankruptcy Court approval of a Chapter 11 Plan, the Bankruptcy Court must determine that our Chapter 11 Plan is feasible (as such term is defined and interpreted under the Bankruptcy Code).  Our Chapter 11 Plan has not yet been approved by the Bankruptcy Court or approved by the relevant classes of claims and interests.  There is no assurance that we will be able to obtain the requisite approval from the Bankruptcy Court, obtain acceptance of such Chapter 11 Plan from the relevant classes of claims and interests or meet any other statutory conditions applicable to approval of the Chapter 11 Plan.  If we fail to achieve any of these conditions on a timely basis we may not be able to emerge from Chapter 11.  If we fail to emerge from Chapter 11, we may be liquidated and you may lose all or part of your investment in the EFIH First Lien DIP Loans.

***As a result of the Chapter 11 cases, EFIH's historical financial information will not be indicative of its future financial performance.***

It is expected that EFIH's capital structure will be significantly altered as a result of the Chapter 11 cases and the confirmation of the Restructuring Plan.  Additionally, if fresh-start accounting rules apply, EFIH's financial condition and results of operations following its emergence from bankruptcy will not be comparable to the financial condition and results of operations reflected in its historical financial statements.

***If the Reorganizing Entities fail to consummate the Restructuring Plan, a non-prearranged proceeding could delay our emergence from bankruptcy.***

If we are not able to consummate the Restructuring Plan, we would likely become subject to a "traditional" bankruptcy proceeding, which would be lengthy, costly and highly disruptive, and have a more pronounced adverse effect on our business than the pre-arranged plan contemplated by the Restructuring Plan. A "traditional" bankruptcy proceeding would likely involve contested issues with our multiple creditors. A non-prearranged bankruptcy proceeding could also cause critical members of our senior management team to pursue other opportunities. As a result, payments to holders of the EFIH First Lien DIP Loans under a "traditional" bankruptcy proceeding would likely be substantially delayed.

The uncertainty surrounding a prolonged restructuring would also have other adverse effects on us. For example, it would also adversely affect:

- our ability to raise additional capital;

- our liquidity;

- how our business is viewed by regulators, investors, lenders and credit ratings agencies; and

- our enterprise value.

***Our debtor in possession financings, including the EFIH First Lien DIP Facility and the EFIH Second Lien DIP Notes, may be insufficient to fund our cash requirements through our emergence from bankruptcy.***

As discussed above, we filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code. For the duration of the Chapter 11 cases, we will be subject to various risks, including but not limited to (i) the inability to maintain or obtain sufficient financing sources for operations or to fund any reorganization plan and meet future obligations, including the minimum unrestricted cash covenants under the EFIH First Lien DIP Facility and the EFIH Second Lien DIP Notes Financing, and (ii) increased legal and other professional costs associated with the Chapter 11 cases and our reorganization.

***We may not be able to obtain exit financing to repay the EFIH First Lien DIP Facility or, if we are able to obtain such exit financing, the credit agreement governing such exit financing may significantly restrict our financing and operations flexibility after emerging from bankruptcy.***

It is expected that the EFIH First Lien DIP Facility will be repaid using the proceeds from borrowings under an exit financing that will be put in place at EFIH in connection with its emergence from bankruptcy. Our ability to obtain such exit financing will depend on, among other things, the timing and outcome of various ongoing matters in the Chapter 11 cases, our business, operations and financial condition, and market conditions. We have not yet received any commitment with respect to any exit facilities, and there can be no assurance that we will be able to obtain such exit facilities on reasonable economic terms, or at all. If we cannot secure exit financing, we may not be able to emerge from bankruptcy and may not be able to repay the EFIH First Lien DIP Facility at its maturity. Any exit financing that we are able to secure may include a number of significant restrictive covenants which could impair our financing and operational flexibility and make it difficult for us to react to market conditions and satisfy our ongoing capital needs and unanticipated cash requirements. In addition, such exit facilities may require us to periodically meet various financial ratios and tests such as maximum capital expenditure, maximum leverage, minimum excess availability and minimum interest coverage levels. These financial covenants and tests could limit our ability to react to market conditions or satisfy extraordinary capital needs and could otherwise restrict our financing and operations.

**Risks Related to the EFIH First Lien DIP Loans and Our Substantial Debt**

*Our substantial leverage could adversely affect our ability to raise additional capital to fund our operations, limit our ability to react to changes in the economy or our industry and prevent us from meeting obligations under our various debt agreements.*

We are highly leveraged. We will have $5.4 billion outstanding under the EFIH First Lien DIP Facility, and following the EFIH Second Lien DIP Notes Financing, we will have $1.995 billion outstanding under the EFIH Second Lien DIP Notes Financing.  Our substantial leverage could have important consequences, including:

- making it more difficult for us to make payments on our debt;

- requiring a substantial portion of our cash flow to be dedicated to the payment of interest on debt;

- increasing our vulnerability to adverse economic, industry or competitive developments;

- limiting our ability to make strategic acquisitions or causing us to make non-strategic divestitures;

- limiting our ability to obtain additional financing for working capital, debt service requirements, acquisitions and general corporate or other purposes, or to refinance existing debt; and

- limiting our ability to adjust to changing market conditions and placing us at a disadvantage compared to competitors who are less highly leveraged and who, therefore, may be able to operate at a lower overall cost (including debt service) and take advantage of opportunities that we cannot.

*Despite our current high debt level, we may still be able to incur substantially more debt.  This could further exacerbate the risks associated with the EFIH First Lien DIP Loans and our other debt.*

We may be able to incur additional debt in the future.  Although our debt agreements contain restrictions on the incurrence of additional debt, these restrictions are subject to a number of significant qualifications and exceptions.  Further, these debt agreements, and therefore the restrictions on incurring additional debt, may be terminated or amended pursuant to our Chapter 11 proceedings.  Under certain circumstances, the amount of debt, including debt secured by the Collateral, that could be incurred in the future in compliance with these restrictions could be significant.  If new debt is added to our existing debt levels, the related risks that we and noteholders now face would intensify.

*Our debt agreements, certain of the debt agreements of EFH Corp. and the Oncor "Ring-Fencing" measures contain restrictions that limit flexibility in operating our businesses.*

Our debt agreements, including the EFIH First Lien DIP Facility, contain various covenants and other restrictions that limit our ability to engage in specified types of transactions and may adversely affect our ability to operate our businesses. These covenants and other restrictions limit our ability to, among other things:

- incur additional indebtedness;

- grant liens on assets to secure debt;

- dispose of assets;

- make intercompany loans;

- make investments; and

- pay dividends or take certain other actions.

There are a number of important limitations and exceptions to these covenants and other restrictions. For a description of these covenants and other restrictions with respect to the EFIH First Lien DIP Facility and the EFIH Second Lien DIP Notes, see "Summary—Recent Developments—EFIH First Lien DIP Facility" and "Summary—

Recent Developments—EFIH Second Lien Notes DIP Financing" and the documents incorporated therein by reference.

In addition, as described in Note 1 to the Financial Statements in our 2013 Form 10-K, EFH Corp. and Oncor have implemented a number of "ring-fencing" measures to enhance the credit quality of Oncor, its immediate parent, Oncor Holdings, and Oncor Holdings' other subsidiaries. See the financial statements of Oncor Holdings, which are included as Exhibit 99(d) of our 2013 Form 10-K, for a description of the material features of these "ring-fencing" measures. Those measures, many of which were agreed to and required by the PUCT's Order on Rehearing in Docket No. 34077, include, among other things:

- Oncor Holdings' and Oncor's board of directors being comprised of a majority of directors that are independent from the Texas Holdings Group, EFH Corp. and its other subsidiaries, including EFIH;

- Oncor being treated as an unrestricted subsidiary with respect to certain of our debt, including the EFIH First Lien DIP Loans and the EFIH First Lien DIP Facility;

- Oncor not being restricted from incurring its own debt;

- Oncor not guaranteeing or pledging any of its assets to secure the debt of any member of the Texas Holdings Group, including the Issuer; and

- restrictions on the payment of distributions and the right of the independent members of Oncor's board of directors and the largest non-majority member of Oncor to block the payment of distributions to Oncor Holdings (i.e., such distributions not being available to us).

***There will be no guarantors of the EFIH First Lien DIP Loans as of the Closing Date. As a result, the EFIH First Lien DIP Loans will be structurally subordinated to all liabilities of all of EFIH's subsidiaries (other than EFIH Finance) and will have no claim on the assets of EFH Corp. or its subsidiaries, including Oncor, Oncor Holdings and TCEH.***

The EFIH First Lien DIP Loans will not be guaranteed as of the Closing Date.  EFIH is a holding company. EFIH has no operations or operating assets, and has historically relied on distributions from Oncor for its cash flow. As a result of the bankruptcy proceedings, EFH Corp. no longer may make loans or capital contributions to EFIH. EFIH's subsidiaries generated a significant amount of EFIH's reported consolidated income for the years ended December 31, 2013 and 2012.

EFIH's subsidiaries (including Oncor Holdings and Oncor and their subsidiaries) and EFH Corp. and its other subsidiaries are separate and distinct legal entities and have no obligation, contingent or otherwise, to pay any amounts due pursuant to the EFIH First Lien DIP Loans, or to make any funds available therefore, whether by dividends, loans, distributions or other payments. The EFIH First Lien DIP Loans will be structurally subordinated to the debt and other liabilities of all of EFIH's subsidiaries (including Oncor Holdings and Oncor and their subsidiaries), other than EFIH Finance, and holders of the EFIH First Lien DIP Loans will have no claim on the assets of EFH Corp., Oncor, Oncor Holdings, EFCH, TCEH or any of TCEH's subsidiaries, none of which is obligated to make payments on the EFIH First Lien DIP Loans. As of March 31, 2014, the EFIH First Lien DIP Loans would have been structurally subordinated to approximately $6.5 billion principal amount of debt (includes long-term debt, including amounts due currently, and short-term borrowings) of EFIH's subsidiaries (other than EFIH Finance), including all of Oncor Holdings' and its subsidiaries' debt. In addition, as of December 31, 2014, Oncor had approximately $1.4 billion of additional available capacity under its revolving credit facility.

***The EFIH First Lien DIP Facility will not limit or restrict the activities of Oncor Holdings and its subsidiaries.***

Oncor Holdings and its subsidiaries will not be "Restricted Subsidiaries" under the EFIH First Lien DIP Facility. As of the date the EFIH First Lien DIP Loans are incurred, EFIH's subsidiaries (other than EFIH Finance, the co-borrower of the EFIH First Lien DIP Loans) will consist only of Oncor Holdings and its subsidiaries, all of which are unrestricted subsidiaries under the EFIH First Lien DIP Facility. Accordingly, none of EFIH's subsidiaries (other than EFIH Finance) are or will be subject to the restrictive covenants or events of default described within the EFIH First Lien DIP Loans or otherwise will be a party thereto.

Because Oncor Holdings and its subsidiaries are unrestricted subsidiaries of EFIH under the EFIH First Lien DIP Facility and, except with respect to certain transactions that are not made in the ordinary course of business or consistent with past practice, are not subject to any of the restrictive covenants therein, the EFIH First Lien DIP Facility will not serve to limit or restrict the ability of Oncor Holdings or its subsidiaries to take any actions or enter into any transactions that would impair their ability to dividend funds to EFIH to service the EFIH First Lien DIP Loans and other debt of EFIH, or that would negatively affect the value of EFIH's equity interests in Oncor Holdings that are pledged as collateral for the EFIH First Lien DIP Facility, such as incurring debt, selling or transferring all or a portion of the assets of Oncor Holdings or its subsidiaries, entering into joint ventures, dividending out assets or engaging in speculative investments.

**The Bankruptcy Court may not approve the Oncor TSA Amendment.**

There is no assurance that the Bankruptcy Court will approve the Oncor TSA Amendment.  If the Oncor TSA Amendment is not approved, the tax payments deposited by EFH Corp. into a segregated account for the potential benefit of EFIH will be returned to EFH Corp. and EFIH will not receive the benefit of such tax payments.

**EFIH has a very limited ability to control activities at Oncor due to structural and operational "ring-fencing" measures.**

Following the filing of the Chapter 11 cases, EFIH depends upon Oncor for its cash flows and ability to pay its obligations. However, EFIH has a very limited ability to control the activities of Oncor. As part of the ring-fencing measures implemented by EFH Corp. and Oncor, a majority of the members of Oncor's board of directors are required to meet the New York Stock Exchange requirements for independence in all material respects, and the unanimous, or majority, consent of such directors is required for Oncor to take certain actions. In addition, any new independent Oncor directors are required to be appointed by the nominating committee of Oncor Holdings' board of directors, a majority of whose members are independent directors. No member of EFIH's or EFH Corp.'s management is a member of Oncor's board of directors. Under Oncor Holdings' and Oncor's organizational documents, EFH Corp. has the right, indirectly, to consent to new issuances of equity securities by Oncor, material transactions with third parties involving Oncor outside of the ordinary course of business, actions that cause Oncor's assets to increase the level of jurisdiction of the FERC, any changes to the state of formation of Oncor, material changes to accounting methods not required by GAAP and actions that fail to enforce certain tax sharing obligations between Oncor and EFH Corp. See Note 1 to the Financial Statements in our 2013 Form 10-K. Oncor's organizational documents provide for restrictions on Oncor's ability to make distributions to its members, including indirectly to EFIH.

**The EFIH First Lien DIP Facility will be secured, on a first-priority basis, only to the extent of the value of the assets that have been granted as security for the EFIH First Lien DIP Facility. If the principal amount of the EFIH First Lien DIP Loans is required to be repaid, there may be insufficient proceeds to satisfy amounts owed under the EFIH First Lien DIP Facility.**

The collateral securing the EFIH First Lien DIP Facility on a first-priority basis will be comprised primarily of EFIH's membership interests and other investments that EFIH directly owns or holds in Oncor Holdings and its subsidiaries (which at the date of this Information Memorandum consist of all of the membership interests of Oncor Holdings, which are owned by EFIH), including, without limitation, distributions pursuant to the Oncor TSA Amendment so long as the Oncor TSA Amendment remains in effect, but will not include any assets of Oncor Holdings or its subsidiaries. Oncor Holdings owns approximately 80% of Oncor. At the time that the principal amount of the EFIH First Lien DIP Facility is required to be repaid, the fair market value of the collateral may not be sufficient to pay the holders of the EFIH First Lien DIP Loans upon any foreclosure, after taking into account the ratable claims of any other debt secured by a security interest in the collateral of equal priority to that securing the EFIH First Lien DIP Facility and the collateral carve-out (as defined in the EFIH First Lien DIP Facility, the "*carve-out*"). The fair market value of the membership interests of Oncor Holdings is subject to fluctuations based on factors that include, among other things, the financial results and prospects of Oncor Holdings and its subsidiaries and their ability to implement their business strategy, Oncor's capital structure and the amount of its other existing debt (as to which EFIH has no control), applicable regulatory approvals that may be required to foreclose on the membership interests of Oncor Holdings and subsequently dispose of the membership interests of Oncor Holdings, the ability to sell the membership interests of Oncor Holdings in an orderly sale, general economic

conditions, the availability of buyers and similar factors. Furthermore, upon a foreclosure on the collateral, holders of debt with a first-priority security interest in the collateral including the EFIH First Lien DIP Facility may be limited in their ability to obtain the best price for the collateral if they are unable to exercise a "drag-along" right to force Texas Transmission Investment LLC ("*Texas Transmission*"), Oncor's largest non-majority owner, to sell its membership interests pursuant to the terms of an investor rights agreement, dated November 5, 2008, among EFH Corp., Oncor Holdings, Oncor and Texas Transmission (the "*Investor Rights Agreement*"). In addition, a court could limit recoverability if it were to apply non-New York law to a proceeding and deem a portion of the interest claim usurious in violation of public policy. The amount to be received upon a sale of any collateral would depend on numerous factors, including but not limited to the actual fair market value of the collateral at such time, general, market and economic conditions, the timing and the manner of the sale and the amount of proceeds remaining after after taking into account the ratable claims of any other debt secured by a security interest in the collateral of equal priority to that securing the EFIH First Lien DIP Facility.

In addition, pursuant to the terms of the Investor Rights Agreement, any transfer of the equity interests in Oncor Holdings to a third party, including as a result of any enforcement of the lien on the Collateral securing the EFIH First Lien DIP Loans and the EFIH First Lien DIP Facility, may be limited and give rise to a tag-along right of Texas Transmission to participate in that transfer on a pro rata basis, which may hinder the enforcement of the lien on the Collateral in a timely manner, if at all.

***Regulatory approvals may be required in order to enforce the security interests in the Collateral and to dispose of an interest in, or operational control of, the Collateral that secures the EFIH First Lien DIP Facility.***

The Collateral securing the EFIH First Lien DIP Facility will include, on a first-priority basis, all of the membership interests of Oncor Holdings, which are held by EFIH. Pursuant to the Public Utility Regulatory Act ("*PURA*"), Texas Utilities Code §§39.262(l) and 39.915, an electric utility must obtain prior PUCT approval of any change in majority ownership, controlling ownership or operational control of Oncor. As a result, prior to any foreclosure on the membership interests of Oncor Holdings, approval of the PUCT may be required for a change in ownership or control of Oncor Holdings. Pursuant to PURA §§39.262(m) and 39.915(b), the PUCT will approve such a transfer if it finds that the transaction is in the public interest. In making its determination, these sections of PURA provide that the PUCT will consider whether the transaction will adversely affect the reliability of service, availability of service or cost of service of Oncor. Therefore, in connection with any action taken to enforce the security against the Collateral, such approval may not be granted and, if it were to be granted, it is not known how long such approval would take. Even if the approval were granted to foreclose on the Collateral, then additional prior PUCT approval may also be required for any subsequent change in majority ownership, controlling ownership or operational control in the membership interests of Oncor Holdings.

***Due to the Company's status as a debtor-in-possession under the Bankruptcy Code, the ability to realize upon the Collateral securing the EFIH First Lien DIP Loans will be subject to certain bankruptcy law limitations.***

The right of the collateral agent under the EFIH First Lien DIP Facility to repossess and dispose of the collateral, which secures the EFIH First Lien DIP Loans on a first-priority basis, upon acceleration or at maturity is likely to be significantly impaired by federal bankruptcy law because bankruptcy proceedings have been commenced by the Company. Under bankruptcy law, secured creditors, such as the EFIH First Lien DIP Agent, are prohibited from repossessing collateral from a debtor in a bankruptcy case, or from disposing of collateral repossessed from a debtor, without bankruptcy court approval. Moreover, bankruptcy law permits the debtor to continue to retain and to use any such collateral, and the proceeds, products, rents or profits of such collateral, even though the debtor is in default under the applicable debt instruments, provided that the secured creditor is given "adequate protection." The meaning of the term "adequate protection" varies according to circumstances, but in general the doctrine of "adequate protection" requires a debtor to protect the value of a secured creditor's interest in the collateral, through cash payments, the granting of an additional security interest or otherwise. It is impossible to predict whether or when payments in respect of the EFIH First Lien DIP Facility might be made during the bankruptcy case, whether or when the EFIH First Lien DIP Agent would repossess or dispose of the collateral, or whether or to what extent noteholders would be compensated for any delay in payment or loss of value of the collateral through the requirements of "adequate protection." Furthermore, in the event the bankruptcy court determines that the value of the collateral is not sufficient to repay all amounts due on the EFIH First Lien DIP Facility, any other debt secured by liens on the collateral that are equal and ratable with the liens securing the EFIH

First Lien DIP Facility, if any, holders of EFIH First Lien DIP Loans would have unsecured "deficiency claims" as to the difference. Federal bankruptcy laws do not generally permit the payment of interest, costs, or attorneys' fees for unsecured claims during the debtor's bankruptcy case.

***Under the EFIH First DIP Lien Facility, lenders will agree to not file a bankruptcy proceeding against Oncor Holdings or any of its subsidiaries.***

Under the EFIH First Lien DIP Facility, lenders will acknowledge and agree that they will not (i) initiate any legal proceeding to procure the appointment of an administrative receiver or (ii) institute any bankruptcy, reorganization, insolvency, winding up, liquidation, or any like proceeding under applicable law, against Oncor Holdings, Oncor or any of their subsidiaries, or against any of the assets of Oncor Holdings, Oncor or any of their subsidiaries. Such lenders will further acknowledge and agree that each of Oncor Holdings, Oncor and any of their subsidiaries is a third party beneficiary of the foregoing covenant and has the right to specifically enforce such covenant in any proceeding at law or in equity.

***EFIH will in most cases have control over the Collateral.***

EFIH will, subject to supervision by the Bankruptcy Court, in most cases have control over the Collateral securing the EFIH First Lien DIP Loans, and to the extent permitted, its sale by EFIH would eliminate the Collateral securing the EFIH First Lien DIP Loans, subject to the requirement to pledge proceeds from such sale to secure the EFIH First Lien DIP Loans and other secured debt obligations and to use such proceeds to repay first priority obligations in accordance with the terms of the EFIH First Lien DIP Facility. The documents governing the pledge of the Collateral permit EFIH to remain in possession of, retain exclusive control over and freely operate the Collateral and collect, invest and dispose of any income from the Collateral, such as cash dividends.

***The EFIH First Lien DIP Facility may not protect lenders from all actions that the Oncor Subsidiaries may take that would reduce the lenders' interest in the collateral or that may reduce the value of the collateral, including sales or exchanges of the Oncor Subsidiaries for other assets or investments.***

There will be no event of default under the EFIH First Lien DIP Facility if any of the Oncor Subsidiaries sells, transfers or disposes of the assets of Oncor Holdings or investments in or assets of Oncor unless such assets constitute all or substantially all the assets of the Oncor Subsidiaries, taken as a whole. The consideration received in exchange for such assets or investments may decline in value as compared to the assets or investments that were so disposed, and, therefore, the value of the collateral may be less than if such assets and investments had been retained. The Oncor Subsidiaries may transfer their assets and investments in exchange for interests in other businesses or assets, minority interests or interests in joint ventures, in which case the value of the collateral may be at risk of declining due to the factors described above.

In any joint venture that an Oncor Subsidiary has an interest, the Oncor Subsidiary may not have the right or power to direct the management and policies of such joint ventures and other participants may take action contrary to the instructions or requests of such Oncor Subsidiary or against its policies and objectives, and any such actions taken by such joint ventures may not be in noteholders' best interests. In addition, the other participants to any such joint venture may become bankrupt or have economic or other business interests or goals that are inconsistent with the goals of such Oncor Subsidiary and/or noteholders.

The completion of any of the above events may result in the credit risk of the EFIH First Lien DIP Loans increasing, the credit rating agencies taking negative action with respect to the EFIH First Lien DIP Loans or the market price of the EFIH First Lien DIP Loans declining. Additionally, in the event of any foreclosure on the collateral, lenders may recover less than if the collateral still consisted of investments in the Oncor Subsidiaries.

**Risks Related to Structure**

*EFIH is a holding company and its obligations are structurally subordinated to existing and future liabilities and preferred stock of its subsidiaries.*

EFIH's cash flows and ability to meet its obligations are largely dependent upon the earnings of its subsidiaries, in particular, Oncor, and the payment of such earnings to EFIH in the form of dividends or distributions. These subsidiaries (including Oncor) are separate and distinct legal entities and have no obligation (other than existing contractual obligations) to provide EFIH with funds for its payment obligations. Any decision by a subsidiary (including Oncor) to provide EFIH with funds for its payment obligations, whether by dividends or distributions, will depend on, among other things, the subsidiary's results of operations, financial condition, cash requirements, contractual restrictions and other factors. In addition, a subsidiary's ability to pay dividends may be limited by covenants in its existing and future debt agreements or applicable law. Further, the distributions that may be paid by Oncor are limited as discussed in the risk factor below.

*Oncor may or may not make any distributions to EFIH.*

EFH Corp. and Oncor have implemented certain structural and operational "ring-fencing" measures, including certain measures required by the PUCT's Order on Rehearing in Docket No. 34077, based on principles articulated by rating agencies and commitments made by Texas Holdings and Oncor to the PUCT and the FERC to further enhance Oncor's credit quality. These measures were put into place to mitigate Oncor's credit exposure to the Texas Holdings Group (including the Issuer) and to reduce the risk that the assets and liabilities of Oncor would be substantively consolidated with the assets and liabilities of the Texas Holdings Group (including the Issuer) in the event of a bankruptcy of one or more of these entities.

As part of the ring-fencing measures, a majority of the members of the board of directors of Oncor are required to be, and are, independent from EFH Corp. Any new independent directors of Oncor are required to be appointed by the nominating committee of Oncor Holdings, which is required to be, and is comprised of, a majority of directors that are independent from EFH Corp. (and the Issuer). The organizational documents of Oncor give these independent directors, acting by majority vote, and, during certain periods, any director designated by Texas Transmission, the express right to prevent distributions from Oncor if they determine that it is in the best interests of Oncor to retain such amounts to meet expected future requirements. Accordingly, there can be no assurance that Oncor will make any distributions to EFIH. In addition, Oncor's organizational agreements contain restrictions on Oncor's ability to make distributions to its members, including indirectly to EFIH.

Beginning in 2009, the PUCT awarded Oncor the right to construct transmission lines and facilities associated with its Competitive Renewable Energy Zone ("*CREZ*") Transmission Plan. At December 31, 2013, Oncor's cumulative CREZ-related capital expenditures totaled $1.871 billion (see discussion in "Management's Discussion and Analysis of Financial Condition and Results of Operations—Significant Activities and Events and Items Influencing Future Performance — Oncor Matters with the PUCT" in our 2013 Form 10-K, which is incorporated by reference into this Information Memorandum). In connection with those capital expenditures, Oncor has incurred additional debt. In addition, Oncor may incur additional debt in connection with other investments in infrastructure or technology. Accordingly, while Oncor is required to maintain a specified debt to equity ratio, there can be no assurance that Oncor's equity balance will be sufficient to maintain the required debt-to-equity ratio established from time to time by the PUCT for ratemaking purposes, thereby restricting Oncor from making any distributions to its owners, including EFIH. In addition, any increase in Oncor's interest expense may reduce the amounts available to be distributed to EFIH.

*A substantial percentage of Oncor's revenues come from TCEH and its subsidiaries, which are all currently in Chapter 11 proceedings.*

TCEH and its subsidiaries are currently in Chapter 11 proceedings. Revenues from TCEH represented 27% of Oncor's total reported consolidated revenues for the year ended December 31, 2013. We cannot be certain that the TCEH Entities will successfully emerge from bankruptcy or, if they do so, have a comparable financial condition and produce comparable results of operations as they have in the past. Any such changes may have an adverse effect on Oncor's revenues.

**Risks Related to Participation in the Offer**

*The consummation of the Offer is subject to several conditions and there is no assurance that it will be consummated.*

      The consummation of the Offer is subject to several conditions, including the closing of the EFIH First Lien DIP Facility, which is also subject to several conditions, including (i) the satisfaction or waiver of the conditions precedent under the EFIH First Lien DIP Facility as described herein and approval by the Bankruptcy Court of the Company's incurrence of indebtedness, and granting of superpriority priming liens under the EFIH First Lien DIP Facility and (ii) Bankruptcy Court approval of the of the make-whole settlement relating to the EFIH First Lien Notes.  The consummation of the Offer is also subject to the approval by the Bankruptcy Court of the Offer and the dealer manager agreement between the Company and the Dealer Managers.  Under the terms of the Restructuring Support Agreement, certain parties could have termination rights under the Restructuring Support Agreement to the extent the EFIH Second Lien Settlement and the EFIH Second Lien DIP Notes Financing are not consummated in connection with the completion of this Offer.  As a result, this Offer is conditioned upon the approval by the Bankruptcy Court of the EFIH Second Lien DIP Notes Facility and the EFIH Second Lien Settlement in addition to the Bankruptcy Court's approval of the EFIH First Lien DIP Facility and EFIH First Lien Settlement, which conditions can be waived by the Company in its sole discretion.  If these conditions are not satisfied or the EFIH First Lien DIP Facility otherwise fails to be completed, we may extend the Offer or elect to terminate it and, in that event, any EFIH First Lien Notes tendered in the Offer will be promptly returned to the Holder.  See "Description of the Offer—Conditions to the Consummation of the Offer."

*The Offer will likely be completed prior to the completion of the litigation relating to claims derived from or based upon makewhole or other similar payment provisions under the EFIH First Lien Notes.*

      If you wish to participate in the Offer and receive the Total Consideration, you must validly tender your EFIH First Lien Notes in the Offer prior to the Early Participation Date of May 19, 2014.  Holders may not withdraw EFIH First Lien Notes that have been validly tendered in the Offer at any time, except in certain limited circumstances where withdrawal rights are required by law.  As a result, by tendering your EFIH First Lien Notes in the Offer, you will have irrevocably agreed to the terms of the EFIH First Lien Settlement as set forth in this Offer unless the Offer is terminated or otherwise withdrawn.  In connection with this Offer, the Reorganizing Entities expect to initiate litigation to obtain entry of an order from the Bankruptcy Court:  (i) disallowing the claims of the Non-Settling EFIH First Lien Note Holders derived from or based upon makewhole or other similar payment provisions under the EFIH First Lien Notes; and (ii) providing that, upon closing of the EFIH DIP Facility, the Non-Settling EFIH First Lien Note Holders will receive from the proceeds of the EFIH First Lien DIP Facility only cash in an amount equal to the principal plus accrued and unpaid interest, through the closing of the EFIH First Lien DIP Facility, at the non-default rate of such holder's allowed claim (not including any premiums, fees, settlements or claims relating to the repayment of the EFIH First Lien Notes held by the Non-Settling EFIH First Lien Note Holders).  Unless otherwise ordered by the Bankruptcy Court, accrued and unpaid interest will not include additional interest payable under the registration rights agreements or interest on overdue interest following a default in the payment of interest on an interest payment date.  We can give no assurance that this litigation will be successful or that the litigation will not result in a more favorable economic outcome for Non-Settling EFIH First Lien Note Holders compared to the consideration received by Holders that participate in this Offer.  We currently do not expect that such litigation will be resolved by the Early Participation Date, the Expiration Date or prior to the consummation of this Offer.

*The RSA EFIH First Lien Note Parties may receive more consideration with respect to their EFIH First Lien Notes than the Holders participating in the Offer will receive with respect to their EFIH First Lien Notes. In addition, the RSA EFIH First Lien Note Parties may receive a commitment fee for acting as a new money lender under the EFIH First Lien DIP Facility, which will not be available to the Holders participating in the Offer. Moreover, the RSA EFIH First Lien Note Parties may be entitled to receive consideration and/or settlement amounts for other securities they hold in our and our affiliates' capital structure, including the EFIH Second Lien Notes and the EFH Corp. Unsecured Notes.*

      Pursuant to the Restructuring Support Agreement, each of the RSA EFIH First Lien Note Parties (which , in the aggregate, hold approximately 32% of the outstanding EFIH First Lien Notes)  have agreed to voluntary

settlements with respect to the Issuer's obligations under the EFIH First Lien Notes held by such RSA EFIH First Lien Note Party. Pursuant to such settlement, each RSA EFIH First Lien Note Party has agreed to accept as payment in full of any claims arising out of the EFIH First Lien Notes held by such RSA EFIH First Lien Note Party a principal amount of EFIH First Lien DIP Loans equal to the greater of:

>           (a)        105% of the principal amount on the EFIH First Lien Notes plus 101% of the accrued and unpaid interest through the Closing Date at the non-default rate on such principal (which amount will be deemed to include any original issue price discount on the EFIH First Lien DIP Loans); and

>           (b)        104% of the principal amount of, plus accrued and unpaid interest at the non-default rate on the EFIH First Lien Notes through the Closing Date, as adjusted by the original issue price discount paid on the EFIH First Lien DIP Loans in connection with the initial lenders syndication of the EFIH First Lien DIP Facility.

Holders participating in the Offer will only be entitled to the consideration set forth in clause (a) above, and, in the event the consideration set forth in clause (b) above turns out to be greater than the consideration set forth in clause (a) above, then the RSA EFIH First Lien Note Parties would receive more consideration in connection with the EFIH First Lien Settlement than the Holders who participate in the Offer.

While no holder of EFIH First Lien Notes will receive any other fees, including commitment fees, paid in respect of the EFIH First Lien DIP Facility on account of settlement of their EFIH First Lien Notes, certain of the RSA EFIH First Lien Note Parties may receive a commitment fee in the range of 1.00% to 1.75% solely in respect of funding, for cash, their "backstop" commitment pursuant to which such parties have contractually agreed to purchase, for cash, EFIH First Lien DIP Loans under the EFIH First Lien DIP Facility in certain situations. Holders participating in the Offer will not be entitled to any such commitment fee.

Moreover, pursuant to the terms of the Restructuring Support Agreement or otherwise, each RSA EFIH First Lien Note Party may be entitled to receive consideration and/or settlement amounts for other securities it holds in our and our affiliates' capital structure on account of such securities (including the EFIH Second Lien Notes and the EFH Corp. Unsecured Notes).

***EFIH First Lien Notes tendered in the Offer generally may not be withdrawn and will adversely affect Participating Holders' ability to transfer such EFIH First Lien Notes.***

If you wish to participate in the Offer, you must tender your EFIH First Lien Notes in the Offer prior to the Expiration Date. Holders may not withdraw EFIH First Lien Notes that have been validly tendered in the Offer at any time, except in certain limited circumstances where withdrawal rights are required by law. As a result of the foregoing, you will not be able to transfer any EFIH First Lien Notes that have been tendered into the Offer if you choose to participate in the Offer.

***Loans are not securities and tend to be less liquid than bonds or other securities, and as a result your ability to trade the EFIH First Lien DIP Loans may be more limited than your ability to trade the EFIH First Lien Notes. In addition, because loans are not securities, they are not subject to the securities laws and this Information Memorandum may not contain all of the information that would be provided in an offering of bonds or other securities.***

Loan markets tend to be more illiquid than bond markets and the administrative burdens associated with transferring loans are greater than those associated with transferring securities (see "Summary—Recent Developments—Summary of the EFIH First Lien DIP Facility" for a summary of the restrictions on assignments and participations that will apply to the EFIH First Lien DIP Loans). For instance, a lender holding EFIH First Lien DIP Loans will not be permitted to transfer the loans to certain parties without the consent of the Administrative Agent and the Borrowers (except for assignments to certain permitted affiliates or assignments made during the continuance of any payment Event of Default) and will be required to pay a fee to the Administrative Agent of $3,500 for each transfer. Additionally, loan markets tend to have less regularly quoted prices and are generally more difficult to trade. A trading market may not develop for the EFIH First Lien DIP Loans and any trading market that

does develop may cease at any time.  All of these factors may make it less likely or very difficult for you to trade the EFIH First Lien DIP Loans.  In addition, because loans are not securities, they are not subject to the securities laws and this Information Memorandum may not contain all of the information that would be provided in an offering of bonds or other securities.

***The exchange of EFIH First Lien Notes for EFIH First Lien DIP Loans might be a taxable event in which gain or loss is recognized.***

      The exchange of EFIH First Lien Notes for EFIH First Lien DIP Loans might be a taxable event in which gain or loss is recognized.  If the exchange is so treated, a holder will recognize taxable gain or loss upon the exchange depending on the holder's particular tax basis in the EFIH First Lien Notes, and in the case of taxable gain, might be required to pay U.S. federal, state, local or foreign income tax on such gain without having received any cash in the Offer.  The Company intends to take the position that the EFIH First Lien DIP Loans do not constitute securities for U.S. federal income tax purposes and, therefore, the exchange does not qualify as a tax-free exchange.  See "Certain United States Federal Income Tax Consequences."

***The EFIH First Lien DIP Loans may be issued with original issue discount.***

      If the stated principal amount of the EFIH First Lien DIP Loans exceeds their "issue price" (as defined in "Certain United States Federal Income Tax Consequences") by more than a statutorily defined de minimis amount, the EFIH First Lien DIP Loans will be treated as issued with original issue discount for U.S. federal income tax purposes.  The issue price of the EFIH First Lien DIP Loans received in the Offer by Participating Holders will be determined by reference to the issue price of the EFIH First Lien DIP Loans sold for cash in connection with the syndication of the EFIH First Lien DIP Facility and, as result, if the EFIH First Lien DIP Loans sold for cash are treated as having original issue discount so will the EFIH First Lien DIP Loans issued in the Offer even though the consideration payable in the Offer will not be adjusted in any manner to give effect to such original issue discount. In such case, Participating Holders subject to U.S. federal income taxation, whether on the cash or accrual method of tax accounting, generally would be required to include amounts representing original issue discount in gross income (as ordinary income) on a constant yield to maturity basis for U.S. federal income tax purposes in advance of the receipt of cash payments to which such original issue discount is attributable.  See "Certain United States Federal Income Tax Consequences."

**Risks Related to not Participating in the Offer**

***If you do not exchange your EFIH First Lien Notes, the EFIH First Lien Notes you retain may become substantially less liquid as a result of the Offer.***

      If a significant number of EFIH First Lien Notes are exchanged in the Offer, the liquidity of the trading market for the EFIH First Lien Notes, if any, after the completion of the Offer may be substantially reduced.  Any EFIH First Lien Notes exchanged for EFIH First Lien DIP Loans will reduce the aggregate number of EFIH First Lien Notes outstanding.  As a result, the EFIH First Lien Notes may trade at a discount to the price at which they would trade if the transactions contemplated by this Information Memorandum were not consummated, subject to prevailing interest rates, the market for similar securities and other factors.  An active trading market in the EFIH First Lien Notes may not exist or be sustained, and the EFIH First Lien Notes may not have sufficient liquidity to avoid price volatility and trading disadvantages.

***If you do not exchange your EFIH First Lien Notes, you may receive less consideration for your retained EFIH First Lien Notes than is being offered in Offer.***

      The Company intends to use the cash proceeds of the EFIH First Lien DIP Facility, together with cash on hand, to repay all outstanding principal at par plus accrued and unpaid interest at the non-default rate due and owing under the EFIH First Lien Notes that did not participate in the Offer.  The repurchase price will not include any alleged premiums, fees, settlements or claims relating to the repayment of such claims and, as a result, will be lower than the Total Consideration and Exchange Consideration that will be paid to Participating Holders in the Offer.  In connection with the foregoing, the Reorganizing Entities intend to initiate litigation to obtain entry of an order from the Bankruptcy Court:  (i) disallowing the claims of such Holders that did not participate in the Offer derived from

or based upon makewhole or other similar payment provisions under the EFIH First Lien Notes; and (ii) providing that, upon closing of the EFIH DIP Facility, such Holders will only receive their pro rata share of cash from the proceeds of the EFIH First Lien DIP Facility in an amount equal to the principal plus accrued and unpaid interest, through the closing of the EFIH First Lien DIP Facility, at the non-default rate of such holder's claim.

## USE OF PROCEEDS

The Company will receive no proceeds from this Offer. Participating Holders will receive EFIH First Lien DIP Loans in exchange for EFIH First Lien Notes tendered in the Offer and will thereby become bound by the EFIH First Lien Settlement. Cash proceeds of the EFIH First Lien DIP Facility will be used (together with cash on hand) to: (a) first, repay all outstanding principal plus accrued and unpaid interest at the non-default rate due and owing under the EFIH First Lien Notes (which will not include any alleged premiums, fees or claims relating to the repayment of such claims) to Non-Settling EFIH First Lien Note Holders and (b) second, to finance all and any working capital needs, and for any other general corporate purposes of the Company, including funding a portion EFIH Second Lien Settlement Offer.

## CAPITALIZATION

The following table sets forth, as of December 31, 2013, EFIH's cash and cash equivalents and capitalization on an actual basis and as adjusted basis, assuming that (i) all EFIH First Lien Notes are tendered in the Offer, (ii) all of the EFIH Second Lien Notes are tendered in the EFIH Second Lien Settlement Offer and (iii) the funding of the EFIH First Lien DIP Facility and the EFIH Second Lien DIP Note Financing, and the application of the net proceeds therefrom. The As Adjusted balances as of December 31, 2013 do not include adjustments that may result from the application of accounting standards for the reorganization subsequent to the petition date or give effect to any transactions contemplated by the Restructuring Plan that are expected to be implemented through a plan of reorganization on the Effective Date.

|  | As of December 31, 2013 | |
|  | Actual | As Adjusted |
|  | (millions of dollars) | |
| Cash and cash equivalents ............................................................... | $ 242 | $ 494 |
| Debt issued by EFIH: | | |
| EFIH First Lien DIP Facility(a) ............................................... | $ — | $ 5,400 |
| EFIH Second Lien DIP Notes(b) ............................................... | — | 1,995 |
| 6.875% Fixed Senior Secured First Lien Notes due August 15, 2017 (c) ........ | 503 | — |
| 10% Fixed Senior Secured First Lien Notes due December 1, 2020 (c) .......... | 3,482 | — |
| 11% Fixed Senior Secured Second Lien Notes due October 1, 2021 (d)(e) ..... | 406 | — |
| 11.75% Fixed Senior Secured Second Lien Notes due March 1, 2022 (d)(e) .. | 1,750 | — |
| 11.25% / 12.25% Senior Toggle Notes due December 1, 2018 (f) ................... | 1,566 | 1,566 |
| 9.75% Fixed Senior Notes due October 15, 2019 (f) ...................................... | 2 | 2 |
| Unamortized premium ........................................................................ | 284 | 266 |
| Unamortized discount ........................................................................ | (146) | (125) |
| Total debt issued by EFIH ........................................................ | 7,847 | 9,104 |
| Pushed down debt: | | |
| 10.875% EFH Corp. Fixed Senior Notes due November 1, 2017 (g)(h) . | 17 | 17 |
| 11.25% / 12.00% EFH Corp. Senior Toggle Notes due November 1, 2017 (g)(h) ........................................................... | 13 | 13 |
| Total pushed down debt ........................................................... | 30 | 30 |
| Total consolidated debt ........................................................... | 7,877 | 9,134 |
| Total membership interest ............................................................... | (1,822) | (2,289) |
| Total capitalization ................................................................. | $ 6,055 | $ 6,845 |

————————

36

(a)   It is expected that the EFIH First Lien DIP Facility will be repaid using the proceeds from borrowings under an exit financing facility that will be put in place at EFIH in connection with its emergence from bankruptcy.  Our ability to obtain such exit financing will depend on, among other things, the timing and outcome of various ongoing matters in the Chapter 11 cases, our business, operations and financial condition, and market conditions.

(b)   The Restructuring Support Agreement contemplates that on the Effective Date, the EFIH Second Lien DIP Notes issued under the EFIH Second Lien DIP Notes Financing will, subject to certain conditions, automatically convert into approximately 64% of the equity of Reorganized EFH Corp.

(c)   These notes or EFIH's guarantees thereof, as applicable, are secured by the Collateral on a first-priority basis, subject to the super-priority liens under the EFIH First Lien DIP Facility and the EFIH Second Lien DIP Notes.

(d)   These notes will be subject to the EFIH Second Lien Settlement Offer.  Any of these notes that remain outstanding after the closing of the EFIH Second Lien Settlement Offer will be cancelled in connection with the Chapter 11 cases.

(e)   These notes are secured by the Collateral on a second-priority basis, subject to the super-priority liens under the EFIH First Lien DIP Facility, the carve-out and the EFIH Second Lien DIP Notes.

(f)   Under the Restructuring Plan, it is expected that on the Effective Date, the EFIH Unsecured Notes will be cancelled and each holder, as a holder of General Unsecured Claims Against EFIH, will receive its pro rata share (calculated as the aggregate principal amount of General Unsecured Claims Against EFIH held by such holder divided by the total amount of General Unsecured Claims Against EFIH) of 98.0% of the shares of common stock of Reorganized EFH Corp. (subject to dilution by the Second Lien Equity Conversion).

(g)   EFIH guarantees these notes on a senior unsecured basis.

(h)   Represents 50% of the principal amount of certain EFH Corp. debt guaranteed by EFIH (pushed-down debt), as discussed in Note 5 to EFIH and its subsidiaries' historical consolidated financial statements included in our 2013 Form 10-K, which is incorporated by reference into this Information Memorandum.

## DESCRIPTION OF THE OFFER

*You should carefully consider the risks and uncertainties described below and other information included in this Information Memorandum before you decide to tender your EFIH First Lien Notes in the Offer.*

**General**

The Company hereby offers, upon the terms and subject to the conditions set forth in this Information Memorandum (including the accompanying Letter of Transmittal), Qualifying Holders the opportunity to exchange all of the EFIH First Lien Notes held by such Holders that are validly tendered on or prior to the Early Participation Date or on or prior to the Expiration Date, as applicable, for EFIH First Lien DIP Loans as further described below. Each Holder that elects to participate in the Offer will thereby voluntarily settle its EFIH First Lien Makewhole Claims in accordance with the EFIH First Lien Settlement. The Restructuring Support Agreement requires the Company to obtain an order from the Bankruptcy Court to approve the EFIH First Lien Settlement and to consummate this Offer on or before the 75th day after the Reorganizing Entities filed their voluntary petitions for relief under Chapter 11 of the Bankruptcy Code, which day is July 13, 2014.

The Boards of Directors of EFIH or EFIH Finance (the *"Board"*) is not making any recommendation to the Holders as to whether to tender or refrain from tendering EFIH First Lien Notes in the Offer. Each Holder must decide whether to tender EFIH First Lien Notes. Any Holder that participates in the Offer must tender all of its EFIH First Lien Notes. Holders are urged to review carefully all of the information contained in this Information Memorandum (including the documents incorporated by reference herein), and to obtain current market quotations for the EFIH First Lien Notes.

**Offer Consideration**

The Total Consideration for each $1,000 principal amount of EFIH First Lien Notes tendered and accepted for exchange pursuant to the Offer is $1,050.00 in an aggregate principal amount of EFIH First Lien DIP Loans. The Early Participation Consideration for each $1,000 principal amount of EFIH First Lien Notes tendered and accepted for exchange pursuant to the Offer is equal to $17.50 in an aggregate principal amount of EFIH First Lien DIP Loans. The Exchange Consideration for each $1,000 principal amount of EFIH First Lien Notes tendered and accepted for exchange pursuant to the Offer is equal to the Total Consideration minus the Early Participation Consideration. The Company will also pay through the issuance of additional EFIH First Lien DIP Loans in an aggregate principal amount equal to 101% of the amount of all accrued and unpaid interest at the non-default rate up to, but not including, the Closing Date on all EFIH First Lien Notes that are accepted for exchange in the Offer. Accrued and unpaid interest will not include additional interest payable under the registration rights agreements or interest on overdue interest following a default in the payment of interest on an interest payment date. The amount of such accrued and unpaid interest that will be payable will be calculated at the rate of 6.875% with respect to the EFIH 6.875% First Lien Notes and 10.00% with respect to the EFIH 10.00% First Lien Notes. In no event will the consideration payable in the Offer be adjusted in any manner to take into account the actual amount of original issue discount, if any, that is applicable in connection with any syndication of the EFIH First Lien DIP Loans and the closing of the EFIH First Lien DIP Facility.

To participate in the Offer, Holders must tender their EFIH First Lien Notes and deliver a duly executed Letter of Transmittal on or prior to the Expiration Date. Each Holder that validly tenders EFIH First Lien Notes and delivers a duly executed Letter of Transmittal on or prior to the Early Participation Date will be entitled to receive the Total Consideration on the Closing Date. Each Holder that validly tenders EFIH First Lien Notes and delivers a duly executed Letter of Transmittal after the Early Participation Date and on or prior to the Expiration Date will not be entitled to receive the Early Participation Payments and will only be entitled to receive the Exchange Consideration on the Closing Date.

No alternative, conditional or contingent tenders will be accepted. A Holder that participates in the Offer is required to tender all of its EFIH First Lien Notes in the Offer. No partial tender of a Participating Holder's EFIH First Lien Notes will be valid. The Company's obligation to accept EFIH First Lien Notes that are tendered is subject to the conditions described below under "Conditions to the Consummation of the Offer." No Holder is required to participate in the Offer and any Holder's participation in the Offer is voluntary. The Offer is not

conditioned on any Holders of any minimum principal amount of EFIH First Lien Notes participating in the Offer.  Subject to applicable law, the Offer is being made separately for each series of EFIH First Lien Notes and, subject to applicable law, the Company reserves the right to terminate, withdraw or amend the Offer with respect to either series of EFIH First Lien Notes independently from the other series.

The delivery to the Offer Agent of required executed documents that were otherwise due by the Early Participation Date or the Expiration Date within one business day of the Early Participation Date or the Expiration Date, as the case may be, will be deemed to be valid delivery of such required executed documents to the Offer Agent by the Early Participation Date or the Expiration Date, as the case may be.

A Holder tendering its EFIH First Lien Notes in the Offer will, upon the terms and subject to the conditions set forth in this Information Memorandum (including the accompanying Letter of Transmittal), among other things, (i) commit to exchange all of the EFIH First Lien Notes held by such Holder for EFIH First Lien DIP Loans and become a party to the EFIH First Lien DIP Facility, (ii) acknowledge in its executed Letter of Transmittal that it has read this Information Memorandum, the EFIH First Lien DIP Facility, the intercreditor agreement, the Restructuring Support Agreement and certain other documents, (iii) represent that it is a Qualifying Holder, (iv)  agree (A) that it will be bound by the terms and conditions of the EFIH First Lien Settlement as described herein (including, but not limited to, surrendering and waiving any and all claims it may have with respect to its EFIH First Lien Notes), (B) that it will not, directly or indirectly, object to, delay, impede, or take any other action to interfere with acceptance, implementation, or consummation of certain transactions contemplated in this Information Memorandum in the Bankruptcy Court or otherwise, and (C) that it will take all necessary steps to effectuate its participation in the Offer and becoming a lender under the EFIH First Lien DIP Facility, including timely providing all requisite documentation as required.

All EFIH First Lien Notes accepted for exchange in the Offer will cease to accrue interest on the Closing Date, unless the Company defaults in the payment of the applicable consideration pursuant to the Offer.

Participating Holders of EFIH First Lien Notes purchased in the Offer will not be obligated to pay brokerage commissions or fees to the Offer Agent or the Company or, except as indicated in the instructions to the Letter of Transmittal, to pay transfer taxes with respect to the exchange of their EFIH First Lien Notes; however, such Holders may be obligated to pay commissions to their own brokers or other agents.  The Company will pay all other reasonable charges and expenses in connection with the Offer.

**Early Participation Date; Expiration Date; Extensions; Termination; Amendment**

The Early Participation Date will be 5:00 p.m., New York City time, on May 19, 2014 unless extended or earlier terminated by the Company in its sole discretion.  In the event that it extends the Early Participation Date, the term *"Early Participation Date"* with respect to such extended Early Participation Date shall mean the time and date on which the Early Participation Date as so extended will expire. The Company expressly reserves the right to extend the Early Participation Date from time to time or for such period or periods as it may determine in its sole discretion by giving oral (to be confirmed in writing) or written notice of such extension to the Offer Agent and by making a public announcement no later than 9:00 a.m., New York City time, on the next business day following the previously scheduled Early Participation Date. Without limiting the manner in which any public announcement may be made, the Company shall have no obligation to publish, advertise or otherwise communicate any such public announcement other than by issuing a press release.

The Offer will expire at 5:00 p.m., New York City time, on June 6, 2014, unless the Company extends the Expiration Date in its sole discretion. In the event that the Company extends the Offer, the term "*Expiration Date*" with respect to such extended Offer shall mean the time and date on which the Offer as so extended will expire. The Company expressly reserves the right to extend the Offer from time to time or for such period or periods as it may determine in its sole discretion by giving oral (to be confirmed in writing) or written notice of such extension to the Offer Agent and by making a public announcement no later than 9:00 a.m., New York City time, on the next business day following the previously scheduled Expiration Date. Without limiting the manner in which any public announcement may be made, the Company shall have no obligation to publish, advertise or otherwise communicate any such public announcement other than by issuing a press release. During any extension of the Offer, all EFIH

First Lien Notes previously tendered and not accepted for purchase will remain subject to the Offer and may, subject to the terms and conditions of the Offer, be accepted for purchase by it.

To the extent it is legally permitted to do so, the Company expressly reserves the absolute right, in its sole discretion and, if required, subject to Bankruptcy Court approval, at any time and with respect to any series of EFIH First Lien Notes to: (i) waive any condition to the Offer, (ii) amend any of the terms of the Offer, (iii) terminate the Offer, (iv) extend the Early Participation Date, the Expiration Date or the Closing Date or (v) modify the Total Consideration or Exchange Consideration, as applicable, provided that in the event the Company modifies the Total or Exchange Consideration, the Early Participation Date or Expiration Date, as applicable, will be extended, if necessary, such that the Early Participation Date or Expiration Date, as applicable, is at least ten business days from the date of such modification. Any waiver, amendment, modification or termination of the Offer will apply to all EFIH First Lien Notes tendered pursuant to the Offer. If the Company makes a material change in the terms of the Offer or waive a material condition of the Offer, it will give oral (to be confirmed in writing) or written notice of such amendment or such waiver to the Offer Agent and will disseminate additional offer documents and extend the Offer to the extent required by law. Notwithstanding the foregoing, the Company's ability to make certain changes to the terms of the Offer is limited by the terms of the Restructuring Support Agreement.

Prior to the Expiration Date, the Company also reserves the right to terminate the Offer if any condition of the Offer is not satisfied or otherwise able to be satisfied on or prior to the Closing Date.

There can be no assurance that the Company will exercise its right to extend the Early Participation Date or the Expiration Date.

**Withdrawal of Tenders**

You may not withdraw EFIH First Lien Notes that you have tendered for exchange at any time, except in certain limited circumstances where withdrawal rights are required by law. If the Company determines to offer withdrawal rights in accordance with applicable law, including in the event a material change causes the Company to update the information relating to this Offer and extend the Expiration Date, any such withdrawal rights will be limited as set forth in any notice thereof by the Company.

In the event the Company offers withdrawal rights in accordance with applicable law, for a withdrawal of a tender of EFIH First Lien Notes to be effective, a notice of withdrawal in the form of a "Request Message" transmitted through ATOP must be received by the Offer Agent prior to the applicable withdrawal deadline. Any such notice of withdrawal must specify the name and number of the account at DTC to be credited with the withdrawn EFIH First Lien Notes and otherwise comply with the ATOP procedures. Any EFIH First Lien Notes validly withdrawn will be deemed to be not validly tendered for purposes of the Offer.

**Closing Date Notification**

On or after the Expiration Date and after the conditions to the consummation of the Offer have been satisfied, or in the Company's reasonable judgment, will be satisfied as of or on the Closing Date, the Offer Agent will notify each Participating Holder or its nominee of the Closing Date and direct such Participating Holder to execute and return to the Offer Agent a signature page to the EFIH First Lien DIP Facility or such other documents related to the exchange of such Participating Holder's EFIH First Lien Notes in the Offer as is reasonably acceptable to the Company, by the Closing Date. The Closing Date Notification will also instruct each Participating Holder how to provide to, and obtain from, the EFIH First Lien DIP Agent certain required information and documentation in connection with the EFIH First Lien DIP Facility on a confidential secured website that will be made available by the EFIH First Lien DIP Agent. The Closing Date Notification may be oral or in writing, and if oral it will be followed by a writing.

**Prior to the Closing Date, each Participating Holder will be required to have executed and returned to the Offer Agent a signature page to the EFIH First Lien DIP Facility or such other documents as instructed in the Closing Date Notification by the Offer Agent in the Closing Date Notification.** To the extent that any Participating Holder fails to have executed and returned a signature page to the EFIH First Lien DIP Facility or such other documents as instructed in the Closing Date Notification to the Offer Agent prior to the

Closing Date, such defaulting Holder will be in breach of its obligations to the Company and the Company reserves all rights it may have against such Holder at law or in equity.

No executed signature page to the EFIH First Lien DIP Facility or such other documents as instructed in the Closing Date Notification should be sent to the Company, any Dealer Manager or the Depositary Agent.

**Acceptance of EFIH First Lien Notes Tendered for Exchange; Closing Date**

If the conditions to the Offer are satisfied, or if the Company waives all of the conditions that have not been satisfied, the Company will accept for exchange, promptly following the Expiration Date, all EFIH First Lien Notes that, at such time, have been validly tendered (or defectively tendered if it waives any such defect) pursuant to the Offer. The Company will accept the EFIH First Lien Notes for exchange by notifying the Offer Agent of its acceptance. The notice may be oral if it promptly confirmed it in writing.

The Company intends to accept for exchange promptly following the Expiration Date any and all EFIH First Lien Notes validly tendered prior to the Expiration Date. However, if the conditions to the consummation of the Offer are not satisfied, the Company has the right to retain such EFIH First Lien Notes without accepting them or without paying for them until the conditions are satisfied. If the Company causes the Offer Agent to hold such EFIH First Lien Notes, the Company must comply with Rule 14e-1 under the Exchange Act, which requires it to pay for all tendered EFIH First Lien Notes or return the EFIH First Lien Notes promptly after termination or withdrawal of the Offer.

The Closing Date will be promptly following the Expiration Date and on the date specified in the Closing Date Notification, unless extended by the Company in its sole discretion.  On the Closing Date (i) the issuance of the EFIH First Lien DIP Loans to the Participating Holders will be recorded by the EFIH First Lien DIP Agent in the applicable register and (ii) the applicable trustee for the EFIH First Lien Notes will cancel the EFIH First Lien Notes tendered by Participating Holders.

**How to Tender EFIH First Lien Notes in the Offer**

Any Participating Holder whose EFIH First Lien Notes are held in book-entry form through a broker, dealer, commercial bank, trust company or other nominee should contact such broker, bank, dealer or other nominee promptly and instruct such nominee to submit instructions for the tender of EFIH First Lien Notes for the Offer on such Participating Holder's behalf.  In some cases, the bank, broker, dealer or other nominee may request submission of such instructions on a Participating Holder's Instruction Form.  Please check with your nominee to determine the procedures for such firm.

EFIH First Lien Notes may be tendered only in authorized denominations of at least $2,000 and multiples of $1,000 in excess thereof.  Pursuant to the Offer, a Participating Holder is required to tender all of its EFIH First Lien Notes. A Participating Holder that is unable to do as a result of these denomination requirements should promptly contact the Depositary Agent regarding the matter.

Any acceptance of an Agent's Message (defined below) transmitted through ATOP is at the election and risk of the person transmitting an Agent's Message and delivery will be deemed made only when the Agent's Message is actually received by the Depositary Agent.

The tender of EFIH First Lien Notes for the Offer by a Participating Holder pursuant to the procedures set forth herein will constitute an agreement between such Holder and the Company in accordance with the terms and subject to the conditions set forth herein.

**By tendering EFIH First Lien Notes in the Offer, the tendering Participating Holder will be deemed to have represented and warranted that such Participating Holder has full power and authority to tender, sell, assign and transfer the EFIH First Lien Notes tendered thereby and that when such EFIH First Lien Notes are accepted by the Company, the Company will acquire good title thereto, free and clear of all liens, restrictions, charges and encumbrances and not subject to any adverse claim or right.  The Participating Holder will also be deemed to have agreed to, upon request, execute and deliver any additional documents**

41

**deemed by the Offer Agent, the Depositary Agent or the Company to be necessary or desirable to complete the Offer or the assignment and transfer of the EFIH First Lien Notes tendered thereby.**

**By tendering EFIH First Lien Notes for the Offer, the tendering Participating Holder will be deemed to have agreed that the delivery and surrender of the EFIH First Lien Notes is not effective until the receipt by the Depositary Agent of a properly transmitted Agent's Message together with all accompanying evidences of authority and any other required documents in form satisfactory to the Company. All questions as to the form of all documents and the validity (including time of receipt) and acceptance of such documents will be determined by the Company, in its sole discretion, which determination will be final and binding.**

## Other Matters

Notwithstanding any other provision of the Offer, the exchange of EFIH First Lien Notes for EFIH First Lien DIP Loans will occur only after timely receipt by the Depositary Agent of a Book-Entry Confirmation (defined below) with respect to such EFIH First Lien Notes, together with an Agent's Message and any other required documents. Tenders of EFIH First Lien Notes pursuant to the procedures described above, and acceptance thereof by the Company, will constitute a binding agreement between the Participating Holder and the Company upon the terms and subject to the conditions of the Offer. All questions as to the form of all documents and the validity (including time of receipt) and acceptance of all tenders of EFIH First Lien Notes will be determined by the Company, in its sole discretion, which determination will be final and binding. **Alternative, conditional or contingent Letters of Transmittal, tenders of EFIH First Lien Notes for EFIH First Lien DIP Loans or other documents delivered by Participating Holders in connection with the consummation of the Offer will not be considered valid.** The Company reserves the absolute right to reject any or all Letters of Transmittal, tenders of EFIH First Lien Notes or other documents that are not in proper form or the acceptance of which would, in the Company's opinion, be unlawful. The Company also reserves the right to waive any defects, irregularities or conditions as to particular Letters of Transmittal, EFIH First Lien Notes or other documents delivered by Participating Holders in connection with the consummation of the Offer. The Company's interpretations of the terms and conditions of the Offer will be final and binding. Any defect or irregularity in connection with Letters of Transmittal or tenders of EFIH First Lien Notes must be cured within such time as the Company determines, unless waived by it. Tenders of EFIH First Lien Notes for the Offer, as applicable, will not be deemed to have been made until all defects and irregularities have been waived by the Company or cured. None of the Company, the trustee for the EFIH First Lien Notes, any of the Dealer Managers, any agent or any other person will be under any duty to give notice of any defects or irregularities in Letters of Transmittal, tenders of EFIH First Lien Notes for the Offer or other documents delivered by Participating Holders in connection with the consummation of the Offer, nor will they incur any liability to Holders for failure to give any such notice.

## Book-Entry Transfer

The Depositary Agent will establish an account with respect to the EFIH First Lien Notes at DTC for purposes of the Offer, and any financial institution that is a participant in DTC may make book-entry delivery of EFIH First Lien Notes by causing DTC to transfer such EFIH First Lien Notes into the Depositary Agent's account in accordance with DTC's procedures for such transfer. However, although delivery of EFIH First Lien Notes may be effected through book-entry transfer into the Depositary Agent's account at DTC, an Agent's Message, and any other required documents, must, in any case, be transmitted to and received by the Offer Agent at its address set forth on the back cover of this Information Memorandum on or prior to the Closing Date. The confirmation of a book-entry transfer into the Depositary Agent's account at DTC as described above is referred to herein as a "*Book-Entry Confirmation.*" **Delivery of documents to DTC does not constitute delivery to the Depositary Agent.**

The term "*Agent's Message*" means a message transmitted by DTC to, and received by, the Depositary Agent and forming a part of the Book-Entry Confirmation, which states that DTC has received an express acknowledgment from the participant in DTC described in such Agent's Message, stating (i) the aggregate principal amount of EFIH First Lien Notes that have been tendered for the Offer by such participant, (ii) that such participant has received the Offer and agrees to be bound by the terms of the Offer as described in this Information Memorandum and (iii) that we may enforce such agreement against such participant.

**No Guaranteed Delivery**

There are no guaranteed delivery provisions provided for by us in conjunction with the Offer under the terms of this Information Memorandum or any other of the Offer materials. Participating Holders must tender their EFIH First Lien Notes in accordance with the procedures set forth herein.

**EFIH First Lien Notes Not Exchanged**

In connection with the completion of the EFIH First Lien DIP Facility, the Company intends to repay an amount equal to all outstanding principal plus accrued and unpaid interest at the non-default rate due and owing under the EFIH First Lien Notes that are not exchanged in the Offer (which will not include any alleged premiums, settlements, fees or claims relating to the repayment of such claims). See "Risk Factors—Risks Related to not Participating in the Offer." Unless otherwise ordered by the Bankruptcy Court, accrued and unpaid interest will not include additional interest payable under the registration rights agreements or interest on overdue interest following a default in the payment of interest on an interest payment date.

**Conditions to the Consummation of the Offer**

Notwithstanding any other provision of the Offer, the Company's obligation to accept for exchange, and to exchange for EFIH First Lien DIP Loans, any EFIH First Lien Notes validly tendered pursuant to the Offer is conditioned upon the following having occurred or been satisfied or having been waived by the Company, provided that the Offer will not close unless conditions (i) and (ii) below have been satisfied:

(i)     (a) the Company shall have obtained an order from the Bankruptcy Court to approve the Company's incurrence of indebtedness and granting of super-priority liens under the EFIH First Lien DIP Facility, which shall be in full force and effect and not subject to any stay, (b) all of the conditions to entry into the EFIH First Lien DIP Facility shall have been satisfied or will, in the Company's reasonable judgment, be satisfied on or prior to the Closing Date, and, in the Company's reasonable judgment, the EFIH First Lien DIP Facility will become effective on the Closing Date and (c) the Company shall have received, or will receive on the Closing Date, the net proceeds from the EFIH First Lien DIP Facility (each of (a), (b) and (c) together constitute the "*Financing Condition*");

(ii)     the Company shall have obtained one or more orders from the Bankruptcy Court to approve the EFIH First Lien Settlement, the consummation of this Offer and the performance by EFIH and EFIH Finance of their obligations under the dealer manager agreement between the Company and the Dealer Managers and such order(s) remains in full force and effect and not subject to any stay, all as further described in the dealer manager agreement (the "*EFIH First Lien Settlement Approval Condition*"); provided that this condition may not be waived by the Company;

(iii)     the Company shall have obtained an order from the Bankruptcy Court to approve the EFIH Second Lien DIP Notes Facility and EFIH Second Lien Settlement and such order remains in full force and effect and not subject to any stay;

(iv)     the Restructuring Support Agreement shall have remained in full force and effect;

(v)     the following shall not have occurred, or if the Company shall have become aware of any of the following or if any of the following exists on the date of this Information Memorandum, the Company shall not have become aware of a material worsening (the "*General Conditions*"):

(a)     any instituted, threatened or pending legal or administrative proceeding or investigation that could, in our reasonable judgment, prohibit, prevent, restrict or delay closing or otherwise adversely affect its ability to close the Offer;

(b)     an order, statute, rule, regulation, executive order, stay, decree, judgment or injunction shall have been proposed, threatened, enacted, entered, issued, promulgated, enforced or deemed applicable by any court (including the Bankruptcy Court) or governmental, regulatory or administrative agency or

instrumentality that, or the occurrence of any other event that, in each case in our reasonable judgment, (i) prohibits, prevents, restricts or delays the consummation of the Offer or places material restrictions on the Offer, (ii) is, or is likely to be, materially adverse to the Company's business, operations, properties, condition (financial or otherwise), assets, liabilities or prospects of it, its affiliates and its subsidiaries or (iii) otherwise adversely affects the Company's ability to realize the contemplated benefits from the Offer;

      (c)      any suspension of trading in securities in the U.S. financial or capital markets;

      (d)      any change or development, including a prospective change or development, in the general economic, financial, currency exchange or market conditions in the United States or abroad or, in the case of any of the foregoing existing on the date hereof, a material acceleration or worsening thereof, that, in the Company's reasonable judgment, has or may likely have a material adverse effect on the market price of the EFIH First Lien Notes or upon trading in the EFIH First Lien Notes or the value of the EFIH First Lien Notes to it, its affiliates or its subsidiaries;

      (e)      any moratorium or other suspension or limitation that, in our reasonable judgment, will affect the ability of banks to extend credit or receive payments;

      (f)      a material impairment, in the Company's reasonable judgment, in the trading market for debt securities;

      (g)      any limitation (whether or not mandatory) by any government or governmental, administrative or regulatory authority or agency, domestic or foreign, or other event that, in the Company's reasonable judgment, might affect the extension of credit by banks or other lending institutions; or

      (h)      the commencement or escalation of a war or armed hostilities involving the United States (including acts of terrorism) or any other calamity or crisis or any change in political, financial or economic conditions.

The foregoing conditions are for the Company's sole benefit and may be asserted by it, in its sole discretion, in relation to the Offer, regardless of the circumstances giving rise to any such condition (including any action or inaction on its part). The Company will have the right (but not the obligation) to waive any of the preceding conditions and to consummate the Offer. No Holder or any other person who tenders EFIH First Lien Notes for exchange for EFIH First Lien DIP Loans will have the ability to prevent it from waiving a condition or will have the ability to withdraw EFIH First Lien Notes tendered if it waives any of the foregoing conditions. The Company also has the right to determine whether or not any of the conditions were satisfied and to terminate or extend the Offer if any condition of the Offer was not satisfied. The Company's decision as to whether or not a condition was satisfied will be final and binding, and no Holder will have any right to disagree with its conclusions.

Notwithstanding any other provisions of the Offer, the Company has the right, in its sole discretion, to terminate the Offer at any time and for any reason. In such event, it will provide notice by public announcement.

## SUMMARY OF EFIH SECOND LIEN DIP NOTES

*The following is a summary of the material terms and provisions of the EFIH Second Lien DIP Notes and the related note purchase agreement as set forth in a term sheet attached to the Restructuring Support Agreement. This summary does not purport to be complete and is qualified in its entirety by reference to such term sheet. The terms of the note purchase agreement and any related documentation are still being negotiated and, as a result, the terms as outlined below may be modified during and after the consummation of the Offer up to the Closing Date, that the final, definitive terms may differ from those described below and any such differences may be material.*

Issuer ........................................... EFIH and EFIH Finance.

Guarantors ................................... Each direct and indirect wholly owned domestic restricted subsidiary of the Company formed or acquired after the Closing Date. There will be no guarantors on the closing date of the EFIH Second Lien DIP Notes Financing.

Securities Offered ........................ $1.9 billion aggregate principal amount in three tranches of 8% Convertible Second Lien Subordinated Secured DIP Financing Tranche A Notes due 2016 .

Automatic Conversion ................. The EFIH Second Lien DIP Notes, subject to certain conditions, will automatically convert on the Effective Date into shares of Reorganized EFH Corp. common stock constituting approximately 64% of the shares of common stock of Reorganized EFH Corp.

Also on the Effective Date, the EFIH Unsecured Notes, the EFH Corp. Unsecured Notes and the EFH Corp. Interests will be canceled. In full satisfaction of the claims under the EFIH Unsecured Notes, the EFH Corp. Unsecured Notes and the EFH Corp. Interests, (i) each holder of EFIH Unsecured Notes will receive its pro rata share (calculated as the aggregate principal amount of EFIH Unsecured Notes held by such holder divided by the total amount of General Unsecured Claims Against EFIH) of 98.0% of the shares of common stock of Reorganized EFH Corp. (subject to dilution by the Second Lien Equity Conversion), (ii) each Holder of EFH Corp. Unsecured Notes will receive its pro rata share (calculated as the aggregate principal amount of EFH Corp. Unsecured Notes held by such holder divided by the total amount of General Unsecured Claims Against EFH) of 1.0% of the shares of common stock of Reorganized EFH Corp. (subject to dilution by the Second Lien Equity Conversion), and (iii) each Holder of EFH Corp. Interests will receive its pro rata share (calculated as the number of shares of EFH Corp. common stock held by such holder divided by the total outstanding shares of EFH Corp. common stock) of 1.0% of the shares of common stock of Reorganized EFH Corp (subject to dilution by the Second Lien Equity Conversion).

Maturity Date .............................. The date that is the earliest to occur of (i) the 24-month anniversary of the Closing Date, (ii) the effective date of the Chapter 11 Plan, (iii) the consummation of a sale of substantially all of the Borrowers' assets or stock under section 363 of the Bankruptcy Code or (iv) the acceleration of the Second Lien DIP Notes and termination of any then outstanding commitments in accordance with the terms of the EFIH Second Lien DIP Financing.

Interest Rate ................................ The EFIH Second Lien DIP Tranche A-1 Notes, the EFIH Second Lien DIP Tranche A-2 Notes and the EFIH Second Lien DIP Tranche A-3 Notes (collectively, the "*EFIH Second Lien DIP Tranche A Notes*") will accrue interest at the rate of 8% per annum from the closing date of the EFIH Second Lien DIP Notes Financing.

If the Bankruptcy Court does not approve the Oncor TSA Amendment within 90 days after the commencement of the Chapter 11 cases, or July 28, 2014, the interest rate on the EFIH Second Lien DIP Tranche A Notes will increase by 4.0%, with such additional interest to be paid in kind and compounded quarterly until such approval is received from the Bankruptcy Court.  If the Bankruptcy Court does not approve the Oncor TSA Amendment by April 29, 2015, each holder of EFIH Second Lien DIP Notes will receive its pro rata share of additional EFIH Second Lien DIP Notes equal to 10.0% of the then outstanding EFIH Second Lien DIP Notes.

Interest Payment Dates ............... Interest will be payable on the final business day of each fiscal quarter, beginning on the final business day of the fiscal quarter following the closing date of the EFIH Second Lien DIP Notes Financing.

Default Interest ............................ During the continuance of an event of default (as defined in the note purchase agreement), overdue amounts on the EFIH Second Lien DIP Notes will bear interest at an additional 2% per annum.

Optional Prepayment ................... The Issuer may prepay the EFIH Second Lien DIP Notes subject to customary notice periods and a prepayment fee of $380 million (which payment may be waived upon the written consent of holders of at least 50.1% of the outstanding commitments and/or exposure under the EFIH Second Lien DIP Notes Financing (the "*Required Note Purchasers*") in their sole discretion; provided, however, that the Required Note Purchasers may not waive such prepayment fee with respect to the EFIH Second Lien DIP Tranche A-3 Notes).

Ranking ....................................... The EFIH Second Lien DIP Notes will be:

- subordinated obligations of the Issuer and rank junior in right of payment with the EFIH First Lien DIP;

- subject to the "carve out," the liens securing the amounts owed under the EFIH Second Lien DIP Notes will prime and be senior to the liens securing the Issuer's obligations under all of its existing indebtedness, other than the EFIH First Lien DIP Facility and certain permitted liens;

- secured on a second-priority basis by a lien on the Collateral;

- effectively senior to all unsecured debt of EFIH to the extent of the value of the Collateral (after taking into account, subject to the carve-out, any first-priority liens on the Collateral, including the liens on the Collateral under the EFIH First Lien DIP Facility and certain permitted liens;

- subordinated to EFIH's obligations under the EFIH First Lien DIP Facility, certain permitted liens and any other future debt subject to first-priority liens on the Collateral, to the extent of the value of the Collateral; and

- structurally subordinated to all existing and future debt and other liabilities of EFIH's subsidiaries (other than EFIH Finance), including Oncor Holdings and its subsidiaries, any of EFIH's future foreign subsidiaries and any other subsidiaries that do not provide a guarantee of the EFIH Second Lien DIP Facility.

Security and Priority .................... The EFIH Second Lien DIP Notes are secured on a second-priority priming basis by EFIH's grant of a lien on the Collateral securing the EFIH First Lien DIP Facility, including all of the membership interests and other investments it owns or holds in Oncor Holdings.

The liens securing the amounts owed under the EFIH Second Lien DIP Notes will prime any obligations under the Issuer's pre-petition indebtedness, including the pre-petition on second lien notes.  All obligations under the EFIH Second Lien DIP Notes will constitute allowed super-priority administrative expense claims with priority under section 364(c)(1) of the Bankruptcy Code over all other administrative expense claims in the Chapter 11 cases, subject to the carve-out, junior only to the super-priority administrative expense claims under the EFIH First Lien DIP Facility and certain permitted liens.

The EFIH Second Lien DIP Notes will be subject to an intercreditor agreement, which includes, among other things, customary payment block and standstill provisions (the "*Intercreditor Agreement*"), a copy of which will be made available at http://www.efhcaseinfo.com.

| | |
|---|---|
| Representations and Warranties .. | Customary representations and warranties (subject to usual exceptions and materiality qualifiers). |
| Covenants .................................... | Customary affirmative and negative covenants (subject to baskets and materiality exceptions), consistent with those found in the EFIH First Lien DIP Facility including the following covenants: |

- covenants restricting intercompany loans or investments by or to the Company or its guarantor subsidiaries to or by other subsidiaries;

- covenants restricting liens, investments, sale leasebacks, restricted payments, asset sales, transactions with affiliates, events and actions in the bankruptcy proceeding and indebtedness, subject to certain baskets; and

- a financial covenant requiring the Borrowers to have unrestricted cash in excess of $127.5 million at all times.

| | |
|---|---|
| Events of Default .......................... | The note purchase agreement will contain Events of Default (other than cross default to material postpetition indebtedness, but will include a cross acceleration to material post-petition indebtedness), subject to materiality exceptions and qualifications and grace periods, consistent with those found in the EFIH First Lien DIP Facility, subject to a 15% cushion. |
| Conditions to Consummation ...... | The note purchase agreement will contain certain conditions to consummation including the following: |

- *Final Order*.  The Final Order shall be in full force and effect.

- *Second Lien Refinancing*. The second lien obligations shall have been contemporaneously refinanced.

- *Security*.  Subject to the intercreditor agreement, all of the outstanding equity of EFIH Finance and Oncor shall have been pledged to the collateral agent pursuant to Final Order. The administrative agent shall have received UCC-1 financing statements in proper form for filing;

- *Customary Deliverables*.  The administrative agent shall have received customary legal opinions, officer certificates, resolutions and evidence of required government consents.

- *Credit Documents*. The note documents shall have been executed by the

Issuers, administrative agent and purchasers.

- *Initial Budget.* The Company's initial budget shall have been delivered.

- *Patriot Act.* The Borrowers shall have satisfied "know your customer" and patriot act requests.

- *No Default.* No default or event of default under the EFIH First Lien DIP Facility shall exist and all representations and warranties therein shall be true and correct in all material respects (or in all respects for representations and warranties qualified by materiality or Material Adverse Event).

- *Fees and Expenses.* All applicable fees and expenses owed to the holders of the EFIH Second Lien DIP Notes under the Restructuring Support Agreement, Backstop Commitment Letter and the note purchase agreement shall have been paid.

- *Restructuring Support Agreement.* The Restructuring Support Agreement shall be in full force and effect, and the Issuer shall be in compliance with the Restructuring Support Agreement in all material respects as of the Closing Date.

- *EFIH First Lien DIP Facility.* Substantially concurrently with the closing, proceeds of the EFIH First Lien DIP Facility, which shall be on the terms set forth in the Restructuring Support Agreement and the aggregate principal amount under the EFIH First Lien DIP Facility shall not exceed $5,400,000,000 (with such changes that are not materially adverse to the purchasers) shall have been used (together with cash on hand) to (i) repay in full all outstanding principal plus accrued and unpaid interest at the non-default rate due and owing under the EFIH First Lien Notes (which shall not include any alleged premiums, fees or claims relating to the repayment of such Claims) to Non-Settling EFIH First Lien Note Holders and (ii) repay the EFIH First Lien Notes held by Settling EFIH First Lien Noteholders in accordance with the EFIH First Lien Settlement and no default under the EFIH First Lien DIP Facility is then existing.

- *Material Adverse Event.* No Material Adverse Event shall have occurred.

Transfer Restrictions ................... The Issuer will not register the EFIH Second Lien DIP Notes under the Securities Act or any state or other securities laws. The EFIH Second Lien DIP Notes will be subject to restrictions on transfer and may only be offered or sold in accordance with the terms of the note purchase agreement and in transactions exempt from, or not subject to, the registration requirements of the Securities Act or pursuant to an effective registration statement.

## SUMMARY OF THE RESTRUCTURING SUPPORT AGREEMENT

*The following is a summary of the material terms and provisions of the Restructuring Support Agreement. This summary does not purport to be complete and is qualified in its entirety by reference to the text of the Restructuring Support Agreement, including the definitions of certain terms therein that are not otherwise defined in this Information Memorandum, which is incorporated herein by reference. The Restructuring Support Agreement has been filed with the SEC as an exhibit to our 2013 Form 10-K through Amendment No. 1 on Form 10-K/A filed on May 1, 2014.*

In anticipation of the filing of the Chapter 11 cases, the Reorganizing Entities entered into the Restructuring Support Agreement on April 29, 2014 with the following parties:

- Texas Holdings;

- Texas Energy Future Capital Holdings LLC, a Delaware limited liability company and the general partner of Texas Holdings ("*TEF*" and, together with Texas Holdings, the "*Consenting Interest Holders*");

- certain lenders or investment advisors or managers of discretionary accounts that hold claims under the Credit Agreement, dated October 10, 2007, by and among TCEH, as borrower, EFCH and certain of TCEH's subsidiaries, as guarantors, and the members of the lending syndicate, including Citibank, N.A., in its capacity as administrative agent and collateral agent, and certain other syndication agents (as amended, modified or otherwise supplemented from time to time, the "*TCEH Credit Agreement*");

- certain holders (the "*Consenting TCEH First Lien Noteholders*") of TCEH and TCEH Finance 11.50% senior secured notes due October 1, 2020 (the "*TCEH First Lien Notes*");

- certain holders (the "*Consenting EFIH First Lien Noteholders*") of the EFIH First Lien Notes;

- certain holders (the "*Consenting EFIH Second Lien Noteholders*") of the EFIH Second Lien Notes;

- certain holders (the "*Consenting EFIH Unsecured Noteholders*") of the EFIH Unsecured Notes; and

- certain holders (the "*Consenting EFH Corp. Unsecured Noteholders*" and, together with the Consenting TCEH First Lien Lenders, the Consenting TCEH First Lien Noteholders, the Consenting EFIH First Lien Noteholders, the Consenting EFIH Second Lien Noteholders and the Consenting EFIH Unsecured Noteholders, the "*Consenting Creditors*") of the EFH Corp. Notes.

Pursuant to the Restructuring Support Agreement, the Consenting Interest Holders and Consenting Creditors agreed, subject to the terms and express conditions contained in the Restructuring Support Agreement, to support the Reorganizing Entities' proposed financial restructuring, or Restructuring Transactions described in the restructuring term sheet attached as an exhibit to the Restructuring Support Agreement (the "*Term Sheet*"), and further agreed not to transfer any ownership (including any beneficial ownership) in the EFH Corp. Interests, the equity interests in Texas Holdings ("*Texas Holdings Interests*"), the equity interests in TEF ("*TEF Interests*"), the TCEH First Lien Claims, the EFIH First Lien Notes, the EFIH Second Lien Notes, the EFIH Unsecured Notes or the EFH Corp. Unsecured Notes, as applicable, or any other claims against the Reorganizing Entities (the "*Claims*"), except a transferee that meets specified suitability requirements and agrees to be bound by the Restructuring Support Agreement. Each Consenting Equity Interest Holder and Consenting Creditor also agreed that any additional EFH Corp. Interests, Texas Holdings Interests, TEF Interests, TCEH First Lien Claims, EFIH First Lien Notes, EFIH Second Lien Notes, EFIH Unsecured Notes or EFH Corp. Unsecured Notes that it acquired after executing the Restructuring Support Agreement would automatically and immediately become subject to all the terms of the Restructuring Support Agreement. In accordance with the terms set forth in the Restructuring Support Agreement, the Reorganizing Entities filed the bankruptcy petitions on April 29, 2014.

The Restructuring Support Agreement may be terminated, subject to certain exceptions, if among other things: (i) a plan (the "*Qualified Plan*") in form and substance reasonably satisfactory to (a) certain Consenting Creditors other than the Consenting EFIH Unsecured Noteholders holding more than 50.1% of the claims of the Consenting Creditors, and (b) at least three investment advisors that manage and/or advise funds or accounts that beneficially own, collectively, at least 66.67% of the EFIH Unsecured Note Claims held by all Consenting Creditors at such time and a disclosure statement (the "*Disclosure Statement*") related to the Qualified Plan have not been filed with the Bankruptcy Court by 45 days from the Petition Date; (ii) the Disclosure Statement has not been approved by the Bankruptcy Court by 105 days from the Petition Date; (iii) the Bankruptcy Court has not entered an order confirming a Qualified Plan by 275 days from the Petition Date; (iv) the effective date of the Qualified Plan has not occurred within 30 days from entry of the order confirming a Qualified Plan, it being understood that if all conditions to the Plan Effective Date other than receipt of any applicable regulatory approvals required to consummate the Restructuring Plan and/or the Private Letter Ruling (as defined in the Restructuring Support Agreement) have been satisfied on or before the Initial Outside Date (as defined in the Restructuring Support Agreement), the Initial Outside Date shall be automatically extended by an additional thirty (30) days; (v) the Reorganizing Entities have breached any of their respective representations, warranties, or covenants set forth in the Restructuring Support Agreement that would have a material adverse effect on the Restructuring Transactions; (vi) any governmental authority, including any regulatory authority or court of competent jurisdiction, issues any final, non-appealable ruling or order enjoining the consummation of a material portion of the Restructuring Transactions in a way that cannot be reasonably remedied by the Reorganizing Entities; (vii) an examiner with expanded powers beyond those set forth in section 1106(a)(3) and (4) of the Bankruptcy Code or a receiver is appointed in one or more of the chapter 11 cases; (viii) the entry of a final order by the Bankruptcy Court or any other court with appropriate jurisdiction that would prevent consummation of the Restructuring Transactions; or (ix) one or more of the Reorganizing Entities' chapter 11 cases is converted to one under chapter 7 or dismissed.  The Restructuring Support Agreement may also be terminated by the mutual written consent of (a) each of the Consenting Equity Interest Holders, (b) Consenting Creditors holding at least 50.1% in aggregate principal amount of each of the TCEH First Lien Claims, the EFIH First Lien Notes, the EFIH Second Lien Notes, and the EFH Unsecured Notes held by all Consenting Creditors at such time, (c) at least three investment advisors that manage and/or advise funds or accounts that beneficially own, collectively, at least 66.67% of the EFIH Unsecured Note Claims held by all Consenting Creditors at such time and (d) the Reorganizing Entities.

The Term Sheet sets forth the material terms of the Restructuring Transactions pursuant to which, in general:

(a)     Holders of the TCEH First Lien Secured Claims will receive their pro rata share of (i) 100% of the equity of Reorganized TCEH, subject to dilution only by the Reorganized TCEH Management Incentive Plan; and (ii) 100% of the net cash proceeds from the issuance of the New Reorganized TCEH Debt.

(b)     Holders of General Unsecured Claims Against the TCEH Debtors (which shall include TCEH First Lien Deficiency Claims, TCEH Second Lien Note Claims, and TCEH Unsecured Note Claims) will receive their pro rata share of the TCEH Unsecured Claim Fund.

(c)     Pursuant to the EFIH First Lien Settlement, RSA EFIH First Lien Note Parties will convert their EFIH First Lien Note Claims to EFIH First Lien DIP Claims in a principal amount equal to the greater of (a) 105% of the principal amount on the EFIH First Lien Notes plus 101% of the accrued and unpaid interest through the closing date of the EFIH First Lien DIP Facility at the non-default rate on such principal (which amount will be deemed to include any original issue price discount on the EFIH First Lien DIP Loans) and (b) 104% of the principal amount of, plus accrued and unpaid interest at the non-default rate on the EFIH First Lien Notes through the Closing Date as adjusted by the original issue price discount paid on the EFIH First Lien DIP Loans in connection with the initial lenders syndication so the EFIH First Lien DIP Facility.  No RSA EFIH First Lien Note Party will receive any other fees, including commitment fees, paid in respect of the EFIH First Lien DIP Facility and any other Allowed EFIH First Lien Note Claims shall receive their pro rata share of cash in the amount of such claims on the Effective Date or such other treatment as permitted under section 1129(b) of the Bankruptcy Code, as mutually agreed by EFIH and the Required EFIH Unsecured Consenting Creditors.

(d)     Pursuant to the EFIH Second Lien Settlement, Settling EFIH Second Lien Note Holders will receive their pro rata share of (a) principal plus accrued and unpaid interest at the non-default rate, through

consummation of the EFIH Second Lien Notes DIP Financing; and (b) 50% of the aggregate amount of the EFIH Second Lien Makewhole Claims.  A significant holder of EFIH Second Lien Notes may purchase up to $500 million of EFIH First Lien DIP Loans and receive a 1.75% commitment fee in connection with such purchase.  The Reorganizing Entities expect to initiate litigation to obtain entry of an order from the Bankruptcy Court disallowing any EFIH Second Lien Makewhole Claim of Non-Settling EFIH Second Lien Note Holders, and Non-Settling EFIH Second Lien Note Holders will receive their pro rata share of cash on hand at EFIH or from the proceeds of the EFIH Second Lien Notes DIP Financing and available cash at EFIH in an amount equal to the principal plus accrued and unpaid interest, through consummation of the EFIH Second Lien DIP Financing, at the non-default rate of such holder's allowed claim (not including any premiums, fees, or Claims relating to the repayment of the EFIH Second Lien Note Claims).  Any other EFIH Second Lien Note Claims allowed shall receive their pro rata share of cash in the amount of such Claims on the Effective Date or such other treatment as permitted under section 1129(b) of the Bankruptcy Code, as mutually agreed by EFIH and the Required EFIH Unsecured Consenting Creditors.

(e)        Pursuant to the Backstop Commitment Letter, certain Holders of EFIH Unsecured Note Claims will commit up to $1.9 billion in cash, which shall be utilized to backstop the EFIH Second Lien Notes DIP Financing.  On the Effective Date, EFIH Second Lien DIP Claims shall convert on a pro rata basis to equity of Reorganized EFH Corp. pursuant to the Second Lien Equity Conversion and the terms set forth the Second Lien Equity Conversion Term Sheet attached as Exhibit J to the Restructuring Support Agreement.

(f)        Certain unsecured creditors of EFIH will receive their pro rata share of 91% of the Participation Rights in accordance with the Restructuring Support Agreement;

(g)        Holders of General Unsecured Claims Against the EFIH Debtors will receive their pro rata share of 98% of the Reorganized EFH Corp. common stock, subject to dilution on account of the Second Lien Equity Conversion.

(h)        Holders of General Unsecured Claims Against EFH will receive their pro rata share of: (i) subject to certain terms and conditions, up to 9% of the shares of common stock of Reorganized EFH Corp. issuable upon the conversion of the 8% Convertible Second Lien Subordinated Secured DIP Financing Tranche A-3 Notes due 2016 that they hold; (ii) on the Effective Date, 1% of the equity of Reorganized EFH Corp. common stock, subject to dilution on account of the Second Lien Equity Conversion; and (iii) on the Effective Date, either:  (A) if the Oncor TSA Amendment has been approved, (1) $55 million in cash from EFIH; provided, however, that if the Oncor tax payments received by EFIH under the Oncor TSA Amendment through the Effective Date are less than 80% of the projected amounts set forth in the Term Sheet, the $55 million shall be reduced dollar-for-dollar by such shortfall, and (2) cash on hand at EFH (not including the settlement payment in clause (1) hereof); or (B) if the Oncor TSA Amendment has not been approved, all EFH assets, including cash on hand and any Causes of Action, but excluding Interests in EFIH.

(i)        Holders of General Unsecured Claims Against EFH Debtors Other Than EFH shall receive treatment in accordance with the priorities set forth in the Bankruptcy Code.

(j)        Holders of EFH Interests will receive, on the Effective Date, their pro rata share of 1% of the equity of Reorganized EFH Corp., subject to dilution on account of the Second Lien Equity Conversion.

## CERTAIN UNITED STATES FEDERAL INCOME TAX CONSEQUENCES

This section summarizes certain U.S. federal income tax consequences to holders of outstanding EFIH First Lien Notes who exchange such EFIH First Lien Notes pursuant to this Offer.  This summary does not provide a complete analysis of all potential tax considerations.  The information provided below is based on the Code, Treasury regulations issued under the Code, judicial authority and administrative rulings and practice, all as of the date hereof.  These authorities are subject to differing interpretations and may be changed, perhaps retroactively, resulting in U.S. federal income tax consequences different from those discussed below.

This summary deals only with holders who hold outstanding EFIH First Lien Notes, and will hold the EFIH First Lien DIP Loans acquired in exchange therefor, as "capital assets" within the meaning of Section 1221 of the Code.  This summary is general in nature and does not purport to deal with all aspects of U.S. federal income taxation that might be relevant to particular holders in light of their personal investment circumstances or status, nor does it address tax considerations applicable to persons in special tax situations, such as financial institutions, individual retirement and other tax deferred accounts, insurance companies, S corporations, partnerships or other pass-through entities for U.S. federal income tax purposes (or investors in such entities), regulated investment companies, tax exempt investors, real estate investment trusts, broker-dealers, dealers in securities and currencies, U.S. expatriates, controlled foreign corporations, passive foreign investment companies, persons holding EFIH First Lien Notes or the EFIH First Lien DIP Loans as a position in a "straddle," "hedge," "conversion transaction," or other integrated transaction for tax purposes, or U.S. Holders (as defined below) whose functional currency is not the U.S. dollar.  Further, this discussion does not address the consequences under U.S. alternative minimum tax rules, any consequences resulting from the newly enacted Medicare tax on investment income, U.S. federal estate or gift tax laws, the tax laws of any U.S. state or locality, any non-U.S. tax laws, or any tax laws other than income tax laws.  We will not seek a ruling from the IRS with respect to any of the matters discussed herein, and there can be no assurance that the IRS will not challenge one or more of the tax consequences described herein.

As used herein, a "*U.S. Holder*" is a beneficial owner of the EFIH First Lien Notes or the EFIH First Lien DIP Loans acquired in exchange therefor that is, for U.S. federal income tax purposes:

- an individual who is a citizen or resident of the United States,

- a corporation created or organized under the laws of the United States, any state thereof or the District of Columbia,

- an estate whose income is includible in gross income for U.S. federal income tax purposes regardless of its source, or

- a trust, if (i) a court within the United States is able to exercise primary supervision over the administration of the trust and one or more U.S. persons have the authority to control all substantial decisions of the trust or (ii) it has a valid election in effect under applicable Treasury regulations to be treated as a U.S. person.

As used herein, the term "*Non-U.S. Holder*" means a beneficial owner of EFIH First Lien Notes or the EFIH First Lien DIP Loans acquired in exchange therefor that is, for U.S. federal income tax purposes, an individual, corporation, estate or trust and is not a U.S. Holder.

If any entity treated as a partnership for U.S. federal income tax purposes is a beneficial owner of EFIH First Lien Notes or the EFIH First Lien DIP Loans acquired in exchange therefor, the treatment of a partner in the partnership generally will depend upon the status of the partner and upon the activities of the partnership.  A holder of EFIH First Lien Notes or the EFIH First Lien DIP Loans acquired in exchange therefor that is a partnership and partners in such a partnership should consult their independent tax advisors about the U.S. federal income tax consequences of the Offer and the ownership of the EFIH First Lien DIP Loans received pursuant thereto.

***The following U.S. federal income tax discussion as to both U.S. Holders and Non-U.S. Holders is included for general information only and may not be applicable depending upon a holder's particular situation.***

*Holders of EFIH First Lien Notes should consult their own tax advisors with respect to the tax consequences to them of the Offer and the ownership of the EFIH First Lien DIP Loans received pursuant thereto, including the tax consequences under state, local, foreign and other tax laws and the possible effects of changes in federal or other tax laws.*

### Early Maturity

The EFIH First Lien DIP Loans will mature on the earliest to occur of (i) the 24-month anniversary of the Closing Date, subject to a six month extension upon the satisfaction of certain conditions, (ii) the effective date of the Chapter 11 Plan, (iii) the consummation of a sale of substantially all of the Borrowers' assets or stock under section 363 of the Bankruptcy Code or (iv) the acceleration of the loans and termination of any then outstanding commitments in in accordance with the terms of the EFIH First Lien DIP Facility, but in any event no later than the 30-month anniversary of the Closing Date.  It is possible that the multiple possible maturity dates for the EFIH First Lien DIP Loans could cause the EFIH First Lien DIP Loans to be subject to the provisions of Treasury regulations relating to "contingent payment debt instruments." Although not free from doubt, we intend to take the position that the aforementioned multiple possible maturity dates would not cause the EFIH First Lien DIP Loans to be treated as contingent payment debt instruments.  Our position is binding on a Participating Holder, unless the Participating Holder discloses in the proper manner to the IRS that it is taking a different position.  A successful challenge of this position by the IRS could adversely affect the timing and amount of a Participating Holder's income and could cause any gain from the sale or other disposition of an EFIH First Lien DIP Loan to be treated as ordinary income, rather than capital gain.  This disclosure assumes that the EFIH First Lien DIP Loans will not be considered contingent payment debt instruments.  Holders are urged to consult their own tax advisors regarding the potential application to the EFIH First Lien DIP Loans of the contingent payment debt regulations and the consequences thereof.

### Tax Consequences to U.S. Holders

#### *Tax Consequences to U.S. Holders Who Do Not Participate in the Offer*

We believe the Offer will not be a taxable event to you for U.S. federal income tax purposes if you do not exchange any of your EFIH First Lien Notes in the Offer.  Upon consummation of the Offer, you will have the same adjusted tax basis and accrued market discount (if any) in, and holding period for, your EFIH First Lien Notes as you had immediately prior to the Offer.  The law is unclear as to the federal income tax consequences to a Non-Settling EFIH First Lien Note Holder who receives cash and retains an interest in the EFIH First Lien Makewhole Claims with respect to such holder's EFIH First Lien Notes.  The tax consequences depend on a number of factors, including the timing of the resolution of the EFIH First Lien Makewhole Claims. You should consult your own tax advisors regarding the consequences of not participating in the Offer.

#### *Tax Consequences to U.S. Holders Who Participate in the Offer*

Under U.S. federal income tax law, the exchange of EFIH First Lien Notes for EFIH First Lien DIP Loans results in an exchange under Section 1001 of the Code on which taxable gain or loss may be realized if the exchange constitutes a significant modification of the terms of the EFIH First Lien Notes.  The modification of a debt instrument is a significant modification if, based on all the facts and circumstances and taking into account all modifications of the debt instrument, the legal rights and obligations under the debt instrument are altered in a manner that is economically significant.  We believe, and the rest of this discussion assumes, that the exchange of EFIH First Lien Notes for EFIH First Lien DIP Loans pursuant to the Offer will constitute a significant modification of the terms of the EFIH First Lien Notes under the applicable Treasury regulations, and, as a result, you will realize gain or loss (if any) for U.S. federal income tax purposes upon the exchange.  The amount of any such gain or loss would be equal to the difference (if any) between the amount realized by such holder in the exchange (other than in respect of accrued and unpaid interest on the EFIH First Lien Notes, which will be recognized as ordinary interest income to the extent not previously included in gross income) and the holder's adjusted basis in the EFIH First Lien Notes exchanged.  The amount realized by a holder in respect of EFIH First Lien Notes would be equal to the "issue price" (as discussed below) of the EFIH First Lien DIP Loans received in exchange for such EFIH First Lien Notes.

53

The treatment of any gain or loss realized upon the exchange will depend on whether the exchange constitutes a recapitalization within the meaning of Section 368(a)(1)(E) of the Code and the Treasury regulations thereunder, as discussed below.

*Recapitalization*.  The exchange of EFIH First Lien Notes for EFIH First Lien DIP Loans pursuant to the Offer will be treated as a recapitalization only if both the EFIH First Lien Notes and the EFIH First Lien DIP Loans constitute "securities" within the meaning of the provisions of the Code governing reorganizations.  The test as to whether a debt instrument is a security involves an overall evaluation of the nature of the debt instrument, the extent of the investor's proprietary interest in the issuer and certain other considerations.  One of the most significant factors considered in determining whether a particular debt instrument is a security is its original term.  Although not free from doubt, we intend to take the position that the EFIH Lien DIP Loans do not constitute securities and, therefore, the exchange does not qualify as a recapitalization.  You should consult your own tax advisor as to whether the EFIH First Lien Notes and the EFIH First Lien DIP Loans received in the Offer constitute securities and whether the exchange of such EFIH First Lien Notes for the EFIH First Lien DIP Loans qualifies as a recapitalization for U.S. federal income tax purposes.

If recapitalization treatment applies, a U.S. Holder of EFIH First Lien Notes should recognize any gain (but not loss) realized on the recapitalization, to the extent of the amount of any "boot" received.  For this purpose, "boot" includes the excess of the "principal amount" of the EFIH First Lien DIP Loans received by such holder over the "principal amount" of the EFIH First Lien Notes exchanged therefor.  Although boot is generally measured by reference to excess stated principal amount, it is not entirely clear in the context of OID securities whether "principal amount" refers to stated principal amount or, alternatively, to adjusted issue price.  U.S. Holders should consult their tax advisors on the tax treatment of any excess principal amount.  Subject to the application of the market discount rules discussed below, any such gain will generally be capital gain and will be considered "long-term" if a U.S. Holder's holding period in the EFIH First Lien Notes exchanged exceeds one year.  Long-term capital gains of noncorporate U.S. Holders generally are eligible for a reduced rate of taxation.

If recapitalization treatment applies, a U.S. Holder's initial tax basis in the EFIH First Lien DIP Loans received in exchange for EFIH First Lien Notes would be the same as such holder's tax basis in the EFIH First Lien Notes, decreased by the amount of any boot received and increased by the amount of gain recognized (if any).  A U.S. Holder's holding period for the EFIH First Lien DIP Loans would include the period during which such holder held the EFIH First Lien Notes exchanged therefor.

If the exchange of the EFIH First Lien Notes for the EFIH First Lien DIP Loans is not treated as a recapitalization for U.S. federal income tax purposes (because either the EFIH First Lien Notes or the EFIH First Lien DIP Loans are not deemed securities for U.S. federal income tax purposes), a holder would recognize any realized gain or loss at the time of such exchange.  Any such gain or loss will be capital gain or loss, subject to the application of the market discount rules discussed below.  Any capital gain or loss will be considered "long-term" if a U.S. Holder's holding period in the exchanged EFIH First Lien Notes exceeds one year.  Long-term capital gains of noncorporate U.S. Holders generally are eligible for a reduced rate of taxation.  Deductions for capital losses are subject to certain limitations.  In addition, the U.S. Holder's holding period in the EFIH First Lien DIP Loans that are received would begin on the day after the exchange, and the U.S. Holder's adjusted basis in the EFIH First Lien DIP Loans would be equal to their issue price.

*Market Discount*.  In general, if a U.S. Holder's initial tax basis in its EFIH First Lien Notes was less than their issue price by more than a de minimis amount, such EFIH First Lien Notes would be deemed to have been acquired with "market discount" equal to such difference.  Unless a U.S. Holder previously elected to include market discount in gross income as it accrued, any gain recognized by a U.S. Holder pursuant to the Offer will be treated as ordinary income (rather than capital gain) to the extent of any accrued market discount at the time of the exchange.  As discussed below, if an exchange of EFIH First Lien Notes for EFIH First Lien DIP Loans qualifies as a recapitalization, any accrued market discount not recognized pursuant to the Offer generally will carry over to the EFIH First Lien DIP Loans.

*Issue Price of the EFIH First Lien DIP Loans*.  Where a "substantial amount" of debt instruments in an issue are issued for money, the issue price of each debt instrument in the issue is the first price at which a substantial amount of the debt instruments is sold for money.  Concurrent with the issuance of the EFIH First Lien DIP Loans to

Participating Holders pursuant to the Offer, EFIH will issue EFIH First Lien DIP Loans for money. The EFIH First Lien DIP Loans to be issued in exchange for EFIH First Lien Notes as well as the EFIH First Lien DIP Loans to be issued for money will be issued pursuant to the same credit agreement and will have identical payment terms. Accordingly, they should be treated as part of a single issue. Although not free from doubt, we intend to take the position that the issuance of EFIH First Lien DIP Loans for cash would be considered a "substantial amount" and, accordingly, the issue price of the EFIH First Lien DIP Loans issued pursuant to the Offer will be equal to the price at which the EFIH First Lien DIP Notes are issued for money. However, the term "substantial amount" is not defined in the Treasury regulations and there are no authorities directly addressing this issue. Participating Holders should consult their tax advisors as to the issue price of EFIH First Lien DIP Loans to be issued pursuant to the Offer.

***Early Participation Consideration***.  There are no authorities directly addressing the U.S. federal income tax treatment of the additional principal amount of EFIH First Lien DIP Loans representing the Early Participation Consideration received by U.S. Holders who tender on or prior to the Early Participation Date. We intend to treat the Early Participation Consideration as part of the consideration for the EFIH First Lien Notes, and this disclosure assumes such treatment. The IRS may take the position, however, that an Early Participation Consideration may be treated as the receipt of a separate payment in the nature of a fee paid for the U.S. Holder's early participation in the Offer, and in such instance, the separate payment or fee would be subject to tax as ordinary income. U.S. Holders should consult their tax advisors as to the proper treatment of an Early Participation Consideration.

***Backup Withholding and Information Reporting***.  Payments pursuant to the Offer may be subject to backup withholding and information reporting unless the U.S. Holder provides its social security or other taxpayer identification number ("TIN") and otherwise complies with applicable requirements of the backup withholding rules.  U.S. backup withholding tax is not an additional tax.  The amount of any backup withholding from a payment to a U.S. Holder will be allowed as a credit against such holder's U.S. federal income tax liability and may entitle such holder to a refund, provided that the required information is timely furnished to the IRS.

### Ownership of the EFIH First Lien DIP Loans by U.S. Holders

***Stated Interest***.  Stated interest on the EFIH First Lien DIP Loans will be includable by a U.S. Holder as ordinary interest income at the time it accrues or is received in accordance with such U.S. Holder's regular method of accounting for U.S. federal income tax purposes.

***Original Issue Discount***.  If the stated principal amount of the EFIH First Lien DIP Loans exceeds their issue price (as defined above) by more than a statutorily defined de minimis amount (1/4 of 1% of the EFIH First Lien DIP Loans' stated principal amount multiplied by the number of complete years to maturity), the EFIH First Lien DIP Loans will be treated as issued with original issue discount ("OID") for U.S. federal income tax purposes.

A U.S. Holder (whether a cash or accrual method taxpayer) generally will be required to include the OID in gross income (as ordinary income) as the OID accrues (on a constant yield to maturity basis), in advance of the U.S. Holder's receipt of cash payments attributable to this OID.  However, if you have "acquisition premium" with respect to the EFIH First Lien DIP Loans (i.e., if your adjusted tax basis immediately after the exchange is greater than the EFIH First Lien DIP Loans' issue price but less than or equal to their stated principal amount), the amount of OID that you would include in gross income would be reduced to reflect the acquisition premium.  All payments on a EFIH First Lien DIP Loan issued with OID, other than payments of stated interest, generally will be viewed first as a payment of previously accrued OID, to the extent thereof, and then as payments of principal.

The rules regarding OID are complex.  You should consult your own tax advisors regarding the consequences of OID, including the amount of OID that you would include in gross income for a taxable year.

***Bond Premium***.  If immediately after the exchange you have an adjusted tax basis in the EFIH First Lien DIP Loans in excess of their stated principal amount, the EFIH First Lien DIP Loans will be treated as issued with "bond premium." In this case, you would not be required to include any OID in gross income in respect of the EFIH First Lien DIP Loans.  In addition, subject to the limitation noted below, you generally may elect to amortize such bond premium as an offset to interest on the EFIH First Lien DIP Loans, using a constant yield method prescribed under applicable Treasury regulations, over the remaining term of the EFIH First Lien DIP Loans.  You should

consult your tax advisor regarding the availability of an election to amortize bond premium for U.S. federal income tax purposes and the extent to which any amortization deductions may be deferred or limited.

If you elect to amortize bond premium, you must reduce your basis in the EFIH First Lien DIP Loans by the amount of the premium amortized. Once you make an election to amortize bond premium for one taxable premium bond, the election applies to all taxable premium bonds owned by you during that tax year and all subsequent tax years.

If immediately after the exchange you have an adjusted tax basis in the EFIH First Lien DIP Loans in excess of its "issue price" (for tax purposes), but less than stated principal amount, the EFIH First Lien DIP Loans will be treated as having "acquisition premium." In this case, you may elect to include in gross income all interest that accrues on the instrument by using the constant yield method. For purposes of this election, interest includes stated interest, acquisition discount, OID, de minimis OID, market discount, de minimis market discount, and unstated interest, as adjusted by any amortizable bond premium or acquisition premium.

*Market Discount*. If you acquired your EFIH First Lien Notes at a market discount (as discussed above) and the exchange of EFIH First Lien Notes for EFIH First Lien DIP Loans qualifies as a recapitalization (as discussed above), any accrued market discount inherent in the EFIH First Lien Notes that was not included in income for U.S. federal income tax purposes prior to or as a result of the exchange will carry over to the EFIH First Lien DIP Loans, as described below. In addition, the EFIH First Lien DIP Loans may be treated as having unaccrued market discount to the extent the issue price of the EFIH First Lien DIP Loans exceeds your tax basis in the EFIH First Lien DIP Loans by more than the amount of accrued market discount that carries over to the EFIH First Lien DIP Loans under the preceding sentence.

Generally, upon any disposition (other than certain non-recognition transactions) of EFIH First Lien DIP Loans treated as acquired at a market discount (i.e., when the issue price of the EFIH First Lien DIP Loans exceeds a U.S. Holder's initial tax basis by more than a de minimis amount), you will be required to recognize any accrued market discount carried over from the EFIH First Lien Notes, plus any market discount that has accrued on the EFIH First Lien DIP Loans, as ordinary income up to the amount of any gain realized on the disposition (to the extent such accrued market discount has not been previously included in income). If the EFIH First Lien DIP Loans are not treated as acquired at a market discount but accrued market discount in respect of the EFIH First Lien Notes has carried over to the EFIH First Lien DIP Loans, upon any disposition (other than certain nonrecognition transactions) of the EFIH First Lien DIP Loans, any gain recognized will be treated as ordinary income to the extent of such accrued market discount.

*Sale, Taxable Exchange or Other Taxable Disposition of the EFIH First Lien DIP Loans*. Upon the disposition of EFIH First Lien DIP Loans by sale, exchange, repayment or other taxable disposition, a U.S. Holder will generally recognize gain or loss equal to the difference between (i) the amount realized on the disposition (other than any amounts attributable to accrued but unpaid interest, which will be taxed as ordinary interest income to the extent not previously so taxed) and (ii) the U.S. Holder's adjusted tax basis in the EFIH First Lien DIP Loans. A U.S. Holder's adjusted tax basis generally will be equal to the U.S. Holder's initial tax basis in the EFIH First Lien DIP Loans (as described above), increased by any accrued OID and market discount previously included in such U.S. Holder's gross income and decreased by any amortized bond premium. Except to the extent of any accrued market discount on the EFIH First Lien DIP Loans (or carried over from the EFIH First Lien Notes) as described above under "— Market Discount," with respect to which any gain will be treated as ordinary income, a U.S. Holder's gain or loss generally will constitute capital gain or loss and will be long-term capital gain or loss if the U.S. Holder has held such EFIH First Lien DIP Loans (including, in the case of an exchange of the EFIH First Lien Notes for the EFIH First Lien DIP Loans that qualifies as a recapitalization, such U.S. Holder's holding period for the EFIH First Lien Notes exchanged for such EFIH First Lien DIP Loans) for longer than one year. Non-corporate taxpayers are generally subject to a reduced U.S. federal income tax rate on net long-term capital gains. The deductibility of capital losses is subject to certain limitations.

*Backup Withholding and Information Reporting*. In general, a U.S. Holder will be subject to backup withholding at the applicable tax rate (currently 28%) with respect to payments of interest (including any OID) on the EFIH First Lien DIP Loans and the gross proceeds from dispositions (including a repayment) of the EFIH First Lien DIP Loans, unless the U.S. Holder (i) is an entity that is exempt from backup withholding (generally including

corporations, tax-exempt organizations and certain qualified nominees) and, when required, provides appropriate documentation to that effect or (ii) provides us or our paying agent with its social security or other TIN within a reasonable time after a request therefor, certifies that the TIN provided is correct and that the U.S. Holder has not been notified by the IRS that it is subject to backup withholding due to a prior underreporting of interest or dividends, and otherwise complies with applicable requirements of the backup withholding rules. A U.S. Holder who does not provide us or our paying agent with its correct TIN may be subject to penalties imposed by the IRS. U.S. backup withholding tax is not an additional tax. The amount of any backup withholding from a payment to a U.S. Holder will be allowed as a credit against such U.S. Holder's U.S. federal income tax liability and may entitle such U.S. Holder to a refund, provided that the required information is timely furnished to the IRS. We or our paying agent will report to the U.S. Holders and the IRS the amount of any "reportable payments" (including accruals of OID) and any amounts withheld with respect to the EFIH First Lien DIP Loans as required by the Code and applicable Treasury regulations.

## Tax Consequences to Non-U.S. Holders

### *Tax Consequences to Non-U.S. Holders Who Do Not Participate in the Offer*

As discussed above under "—Tax Consequences to U.S. Holders—Tax Consequences to U.S. Holders Who Do Not Participate in the Offer," the Offer is not expected to be a taxable event with respect to you if you do not participate in the exchange and the law is unclear as to the federal income tax consequences to a Non-Settling EFIH First Lien Note Holder who receives cash and retains an interest in the EFIH First Lien Makewhole Claims with respect to such holder's EFIH First Lien Notes. You should consult your own tax advisors regarding the consequences of not participating in the Offer.

### *Tax Consequences to Non-U.S. Holders Who Participate in the Offer*

As discussed above under "—Tax Consequences to U.S. Holders—Tax Consequences to U.S. Holders Who Participate in the Offer," the exchange by a Non-U.S. Holder of EFIH First Lien Notes for EFIH First Lien DIP Loans pursuant to the Offer is expected to constitute an exchange under applicable Treasury regulations in which some or all of the gain (if any) in your EFIH First Lien Notes may be recognized. However, you will only be subject to U.S. federal income tax on any gain recognized in the exchange to the extent described below under "—Ownership of the EFIH First Lien DIP Loans by Non-U.S. Holders — Sale, Taxable Exchange or Other Disposition of the EFIH First Lien DIP Loans," treating the reference therein to the EFIH First Lien DIP Loans as a reference to the EFIH First Lien Notes. Amounts attributable to accrued and unpaid interest on the EFIH First Lien Notes that you receive pursuant to the Offer will not be subject to U.S. federal income tax or withholding tax except to the extent described below under "— Ownership of the EFIH First Lien DIP Loans by Non-U.S. Holders — Payments of Interest on the EFIH First Lien DIP Loans," treating the references therein to interest on the EFIH First Lien DIP Loans as references to accrued and unpaid interest on the EFIH First Lien Notes.

*Early Participation Consideration.* As discussed above under "—Tax Consequences to U.S. Holders—Tax Consequences to U.S. Holders Who Participate in the Offer—Early Participation Consideration," we intend to treat the Early Participation Consideration received in the Offer as part of the consideration for the EFIH First Lien Notes, and this disclosure assumes such treatment. The IRS may take the position, however, that the Early Participation Consideration instead should be treated as a separate payment or fee that could be subject to the 30% U.S. federal withholding tax.

### *Ownership of the EFIH First Lien DIP Loans by Non-U.S. Holders*

*Payments of Interest on the EFIH First Lien DIP Loans*. Subject to the discussion of backup withholding and FATCA below, interest income (which, for purposes of this discussion of Non-U.S. Holders, includes OID) of a Non-U.S. Holder that is not effectively connected with a U.S. trade or business carried on by the Non-U.S. Holder will qualify for the so-called "portfolio interest exemption" and, therefore, will not be subject to U.S. federal income tax or withholding, provided that:

- the Non-U.S. Holder does not own, actually or constructively, 10% or more of the total combined voting power of all classes of EFH Corp.'s stock entitled to vote within the meaning of Section 871(h)(3) of the Code and Treasury regulations thereunder;

- the Non-U.S. Holder is not a controlled foreign corporation related to EFH Corp., actually or constructively through the stock ownership rules under Section 864(d)(4) of the Code;

- the Non-U.S. Holder is not a bank that is receiving the interest on an extension of credit made pursuant to a loan agreement entered into in the ordinary course of its trade or business; and

- the beneficial owner gives us or our paying agent an appropriate IRS Form W-8 (or a suitable substitute or successor form or such other form as the IRS may prescribe) that has been properly completed and duly executed establishing its status as a Non-U.S. Holder.

If not all of these conditions are met, interest on the EFIH First Lien DIP Loans paid to a Non-U.S. Holder that is not effectively connected with a U.S. trade or business carried on by the Non-U.S. Holder generally will be subject to federal income tax and withholding at a 30% rate, unless an applicable income tax treaty reduces or eliminates such tax and the Non-U.S. Holder claims the benefit of that treaty by providing an appropriate IRS Form W-8 (or a suitable substitute or successor form or such other form as the IRS may prescribe) that has been properly completed and duly executed.

If interest on the EFIH First Lien DIP Loans is effectively connected with a U.S. trade or business carried on by the Non-U.S. Holder ("ECI"), the Non-U.S. Holder will be required to pay U.S. federal income tax on that interest on a net income basis generally in the same manner as a U.S. Holder (and the 30% withholding tax described above will not apply, provided the appropriate statement is provided to us or our paying agent) unless an applicable income tax treaty provides otherwise. If a Non-U.S. Holder is eligible for the benefits of any income tax treaty between the United States and its country of residence, any interest income that is ECI will be subject to U.S. federal income tax in the manner specified by the treaty if the Non-U.S. Holder claims the benefit of the treaty by providing an appropriate IRS Form W-8 (or a suitable substitute or successor form or such other form as the IRS may prescribe) that has been properly completed and duly executed. In addition, a corporate Non-U.S. Holder may, under certain circumstances, be subject to an additional "branch profits tax" at a 30% rate, or, if applicable, a lower treaty rate, on its effectively connected earnings and profits attributable to such interest (subject to adjustments).

***Sale, Taxable Exchange or Other Disposition of the EFIH First Lien DIP Loans***. A Non-U.S. Holder generally will not be subject to U.S. federal income tax on any gain realized on a sale, exchange, repayment or other taxable disposition of EFIH First Lien DIP Loans (other than any amount representing accrued but unpaid interest on the EFIH First Lien DIP Loans, which is subject to the rules discussed above under "— Ownership of the EFIH First Lien DIP Loans by Non-U.S. Holders — Payments of Interest on the EFIH First Lien DIP Loans") unless:

- the gain is effectively connected with the conduct of a trade or business within the U.S. by the Non-U.S. Holder, or

- in the case of a Non-U.S. Holder who is a nonresident alien individual, such Non-U.S. Holder is present in the United States for 183 or more days in the taxable year and certain other requirements are met.

If a Non-U.S. Holder falls under the first of these exceptions, unless an applicable income tax treaty provides otherwise, the Non-U.S. Holder will be taxed on the net gain derived from the disposition of the EFIH First Lien DIP Loans under the graduated U.S. federal income tax rates that are applicable to U.S. Holders and, if the Non-U.S. Holder is a foreign corporation, it may also be subject to the branch profits tax described above.

If an individual Non-U.S. Holder falls under the second of these exceptions, the Non-U.S. Holder generally will be subject to U.S. federal income tax at a rate of 30% (unless a lower applicable treaty rate applies) on the amount by which the gain derived from the disposition exceeds such Non-U.S. Holder's capital losses allocable to sources within the United States for the taxable year of the sale.

*Backup Withholding and Related Information Reporting*.  Amounts of interest paid to a Non-U.S. Holder on a EFIH First Lien DIP Loans, and amounts withheld from such payments, if any, generally will be required to be reported to the IRS and to such Non-U.S. Holder.  The IRS may make this information available under the provisions of an applicable income tax treaty to the tax authorities in the country in which the Non-U.S. Holder is resident.

Backup withholding generally will not apply to payments of interest on the EFIH First Lien DIP Loans by us or our paying agent if a Non-U.S. Holder certifies its status as a Non-U.S. Holder under penalties of perjury or otherwise establishes an exemption, provided that we or our paying agent do not have actual knowledge or reason to know that such Non-U.S. Holder is a U.S. person.  The payment of the proceeds of the disposition of EFIH First Lien DIP Loans (including a repayment) to or through the U.S. office of a U.S. or foreign broker will be subject to backup withholding and related information reporting (currently 28%) unless the Non-U.S. Holder provides the certification described above or otherwise establishes an exemption.

The proceeds of a disposition (including a repayment) of EFIH First Lien DIP Loans effected outside the U.S. by a Non-U.S. Holder to or through a foreign office of a broker generally will not be subject to backup withholding or related information reporting.  However, if that broker is, for U.S. federal income tax purposes, a U.S. person or a non-U.S. person with certain specified U.S. connections, such information reporting requirements will apply unless that broker has documentary evidence in its files of such Non-U.S. Holder's status as a Non-U.S. Holder.  Backup withholding tax is not an additional tax.  Any amounts withheld from a payment to a Non-U.S. Holder under the backup withholding rules will be allowed as a credit against such Non-U.S. Holder's U.S. federal income tax liability and may entitle it to a refund, provided the Non-U.S. Holder timely furnishes the required information to the IRS.

### *New Legislation Affecting Taxation of the EFIH First Lien DIP Loans Held By or Through Foreign Entities*

Legislation enacted in 2010 (commonly known as "FATCA") generally imposes a withholding tax of 30% on interest income (including OID) paid on a debt obligation and on the gross proceeds of a disposition of a debt obligation paid after December 31, 2012 to (i) a foreign financial institution (as the beneficial owner or as an intermediary for the beneficial owner), unless such institution enters into an agreement with the U.S. government to collect and provide to the U.S. tax authorities substantial information regarding U.S. account holders of such institution (which would include certain equity and debt holders of such institution, as well as certain account holders that are foreign entities with U.S. owners) and (ii) a foreign entity that is not a financial institution (as the beneficial owner or as an intermediary for the beneficial owner), unless such entity provides the withholding agent with a certification identifying the substantial U.S. owners of the entity, which generally includes any U.S. person who directly or indirectly owns more than 10% of the entity.  Under certain circumstances, a lender of EFIH First Lien DIP Loans might be eligible for a refund or credits of such taxes, and a lender might be required to file a U.S. federal income tax return to claim such refunds or credits.  Under newly issued guidance from the IRS, this legislation generally will not apply to debt instruments outstanding on July 1, 2014 (except to the extent that such instrument is modified after such date in a manner that results in such instrument being treated as a new debt instrument for U.S. federal income tax purposes).  Accordingly, if the EFIH First Lien DIP Loans are issued on or prior to July 1, 2014, this legislation generally will not apply to such loans.  Furthermore, under this new guidance, even if the debt instruments are issued after July 1, 2014, this withholding tax will not apply to (i) interest income on a debt instrument that is paid on or before June 30, 2014, or (ii) gross proceeds from the sale or other disposition of a debt instrument paid on or before December 31, 2016.  Investors are encouraged to consult with their own tax advisors regarding the implications of this legislation.

### TREASURY DEPARTMENT CIRCULAR 230 DISCLOSURE

To ensure compliance with Treasury Department Circular 230, you are hereby notified that the discussion of tax matters set forth in this offering circular was written in connection with the preparation of this information memorandum and marketing of the Offer and was not intended or written to be used, and cannot be used by any holder, for the purpose of avoiding tax-related penalties under the Code.  Each holder should seek advice based on its particular circumstances from an independent tax advisor.

## OFFER AGENT; DEPOSITARY AGENT; DEALER MANAGERS

### Offer Agent and Depositary Agent

Epiq Systems has been appointed Agent for the Offer, or, the Offer Agent, and Depositary Agent. All deliveries and correspondence sent to the Offer Agent or the Depositary should be directed to the address set forth on the back cover of this Information Memorandum.

We will pay brokerage houses and other custodians, nominees and fiduciaries the reasonable out-of-pocket expenses incurred by them in forwarding copies of this Information Memorandum and related documents to the beneficial owners of the EFIH First Lien Notes and in handling or forwarding tenders of EFIH First Lien Notes for the Offer by their customers.

We will also pay the Offer Agent and the Depositary Agent reasonable and customary fees for its services.

### Dealer Managers

The Company has appointed Deutsche Bank Securities Inc., Citigroup Global Markets Inc., Merrill Lynch, Pierce, Fenner & Smith Incorporated, Morgan Stanley & Co. LLC, Barclays Capital Inc., RBC Capital Markets, LLC, Mitsubishi UFJ Securities (USA), Inc. and Evercore Group L.L.C. to act as the Dealer Managers in connection with this Offer. The Company will reimburse the Dealer Managers for certain reasonable expenses. The obligation of the Dealer Managers to perform such function is subject to certain conditions. The Company has agreed to indemnify the Dealer Managers against certain liabilities, including liabilities under the federal securities laws.

From time to time the Dealer Managers and their affiliates have provided, and may in the future provide from time to time, investment banking and commercial banking services and financial advisory services to us for which they have in the past received, and may in the future receive, customary fees.

In addition, the Dealer Managers and certain of their affiliates (other than Evercore) are commitment parties under the First Lien Commitment Letter. As described above, the commitments under the First Lien Commitment Letter are reduced by, among other things, holders of EFIH First Lien Notes agreeing to exchange such notes for commitments under the EFIH First Lien DIP Facility, including under this Offer. Any such reduction in commitments that occurs on or before the Early Participation Date will reduce the fees earned by the commitment parties under the First Lien Commitment Letter. Deutsche Bank Securities Inc. is acting as Left Lead DIP Facility Arranger for the EFIH First Lien DIP Facility and an affiliate of Deutsche Bank Securities Inc. will act as the Administrative Agent for the EFIH First Lien DIP Facility. The other Dealer Managers (other than Evercore) are acting as Joint Lead Arrangers for the EFIH First Lien DIP Facility. The Dealer Managers and their affiliates (other than Evercore) may have additional roles under the EFIH First Lien DIP Facility or otherwise in connection with the Restructuring Plan.

The Dealer Managers or their affiliates (other than Evercore) are also acting as joint lead arrangers for the proposed debtor-in-possession, or DIP, facility for TCEH and may have additional roles in the restructuring of TCEH or other members of the EFH Corp. group.

In the ordinary course of their respective businesses, the Dealer Managers and their affiliates may at any time hold long or short positions, and may trade for their own accounts or the accounts of customers, in securities of the Company and its affiliates, including any of the EFIH First Lien Notes. To the extent that the Dealer Managers or their affiliates own EFIH First Lien Notes during the Offer, they may tender such notes pursuant to the terms of the Offer.

*The Offer Agent and the Depositary Agent for the Offer is:*

**EPIQ SYSTEMS**



| By Registered, Certified or Express mail or Overnight Courier Service | By Electronic Mail in a Portable Document Format (a "pdf file") |
|---|---|
| EFIH First Lien Offer Processing c/o Epiq Systems 757 Third Avenue, 3rd Floor New York, NY 10017<br><br>Telephone: (646) 282-2500 Toll Free: (866) 734-9393 (ask for the Solicitation Group) | E-Mail Address:<br><br>tabulation@epiqsystems.com<br><br>With reference to "EFIH First Lien" in the subject line |

Any questions or requests for assistance and requests for additional copies of the Information Memorandum may be directed to the Offer Agent at the above address and telephone numbers.  Holders may also contact their broker, dealer, commercial bank, trust company or other nominee for assistance concerning the Offer.

*The Dealer Managers for the Offer are:*

**DEUTSCHE BANK SECURITIES**

60 Wall Street, 2nd Floor
New York, NY 10005
Call Collect: (212) 250-7527
Toll Free: (855) 287-1922
Attn: Liability Management Group

**CITIGROUP**

390 Greenwich Street, 1st Floor
New York, NY 10013
Call Collect:  (212) 723-6106
Toll Free:  (800) 558-3745
Attn:  Liability Management Group

**BofA MERRILL LYNCH**

214 N. Tryon Street, 21st Floor
Charlotte, NC 28255
Call Collect:  (646) 855-2464
Toll Free:  (888) 292-0070
Attn:  Liability Management Group

**MORGAN STANLEY**

1585 Broadway
New York, NY 10036
Call Collect: (212) 761-1057
Toll Free: (800) 624-1808
Attn: Liability Management Group

**BARCLAYS**

745 Seventh Avenue, 5th Floor
New York, NY 10019
Telephone:  (212) 528-7581
Toll Free: (800) 438-3242
Attn: Liability Management Group

**RBC CAPITAL MARKETS**

3 World Financial Center
200 Vesey Street, 8th Floor
New York, NY 10281
Call Collect: (212) 618-7822
Toll Free:  (877) 381-2099
Attn:  Liability Management

**MITSUBISHI UFJ SECURITIES**

1633 Broadway, 29th Floor
New York, NY 10019-6708
Call Collect:  (212) 405-7481
Toll Free:  (877) 744-4532
Attn:  Liability Management Group

**EVERCORE**

55 East 52nd Street
New York, New York 10055
Call Collect:  (212) 857-3100
Toll Free:  (888) 387-2673
Attn:  Chuck McMullan and
Jeremy Matican

# LETTER OF TRANSMITTAL

**for**
**Offer to Exchange the Securities Listed Below**
**for EFIH First Lien DIP Loans**

**6.875% Senior Secured Notes due 2017**
**(CUSIP Nos. 29269QAE7 and U29197AC1)**
**and**
**10.00% Senior Secured Notes due 2020**
**(CUSIP Nos. 29269QAA5, 29269QAK3 and U29197AG2)**

of

## ENERGY FUTURE INTERMEDIATE HOLDING COMPANY LLC
## EFIH FINANCE INC.

**Pursuant to the Information Memorandum**
**Dated May 6, 2014**

**HOLDERS MUST COMPLETE THIS FORM, AND**
**THE HOLDER'S NOMINEE MUST PROVIDE THE "VOI" NUMBER(S)**
**FOR THE HOLDER'S TENDER OF NOTES PURSUANT TO THE OFFER.**
**A COMPLETED LETTER OF TRANSMITTAL MUST BE RETURNED TO THE OFFER AGENT**
**(AN EMAILED PDF VERSION IS ACCEPTABLE).**

---

**THE OFFER WILL EXPIRE AT 5:00 P.M., NEW YORK CITY TIME, ON JUNE 6, 2014, UNLESS EXTENDED OR EARLIER TERMINATED AS DESCRIBED IN THE INFORMATION MEMORANDUM. THE EARLY PARTICIPATION DATE WILL EXPIRE AT 5:00 P.M., NEW YORK CITY TIME, ON MAY 19, 2014, UNLESS EXTENDED OR EARLIER TERMINATED AS DESCRIBED IN THE INFORMATION MEMORANDUM. THERE ARE NO WITHDRAWAL RIGHTS ONCE THE LETTER OF TRANSMITTAL IS VALIDLY DELIVERED AND EFIH FIRST LIEN NOTES ARE TENDERED.  IF THE COMPANY DETERMINES TO OFFER WITHDRAWAL RIGHTS, INCLUDING IN THE EVENT A MATERIAL CHANGE CAUSES THE COMPANY TO UPDATE THE INFORMATION RELATING TO THIS OFFER AND EXTEND THE EXPIRATION DATE, ANY SUCH WITHDRAWAL RIGHTS WILL BE LIMITED AS SET FORTH IN ANY NOTICE THEREOF BY THE COMPANY.  _INSTRUCTIONS FOR THE DELIVERY OF YOUR SIGNATURE PAGE TO THE EFIH FIRST LIEN DIP FACILITY OR SUCH OTHER EXCHANGE DOCUMENTS WILL BE PROVIDED ON THE CLOSING NOTIFICATION DATE IN THE CLOSING DATE NOTIFICATION TO BE SENT TO HOLDERS WHO HAVE VALIDLY DELIVERED A LETTER OF TRANSMITTAL AND TENDERED THEIR EFIH FIRST LIEN NOTES BY THE EARLY PARTICIPATION DATE OR THE EXPIRATION DATE._**

---

*The Offer Agent and the Depositary Agent for the Offer is:*

# EPIQ SYSTEMS



| *By Registered, Certified or Express mail or Overnight Courier Service* | *By Electronic Mail in a Portable Document Format (a "pdf file")* |
| --- | --- |

| | |
|---|---|
| EFIH First Lien Offer Processing<br>c/o Epiq Systems<br>757 Third Avenue, 3rd Floor<br>New York, NY 10017<br><br>Telephone:  (646) 282-2500<br>Toll Free:  (866) 734-9393<br>(ask for the Solicitation Group) | E-Mail Address:<br><br>tabulation@epiqsystems.com<br><br>With reference to "EFIH First Lien" in the<br>subject line |

**YOU SHOULD READ THE INSTRUCTIONS CONTAINED HEREIN CAREFULLY BEFORE COMPLETING THIS LETTER OF TRANSMITTAL.**

To participate in the Offer, this Letter of Transmittal (or an emailed pdf version thereof) properly completed and duly executed and any other required signatures, must be transmitted to your Nominee in sufficient time to allow your Nominee to deliver your instructions to the Offer Agent and tender your EFIH First Lien Notes on or prior to the Early Participation Date to receive the Total Consideration or the Expiration Date to receive the Exchange Consideration.  No Holder is required to participate in the Offer and any Holder's participation in the Offer is voluntary.  Subject to applicable law, the Offer is being made separately for each series of EFIH First Lien Notes and, subject to applicable law, the Company reserves the right to terminate, withdraw or amend the Offer with respect to either series of EFIH First Lien Notes independently from the other series.

Only Holders that are either (A) "qualified institutional buyers" as defined in Rule 144A of the Securities Act of 1933, as amended (the "Securities Act"), (B) institutional accredited investors (as defined in Rule 501(a)(1), (2), (3), or (7) under the Securities Act), or (C) non-U.S. persons (within the mean of Regulation S under the Securities Act) out of the United States may participate in the Offer.

**TO PARTICIPATE IN THE OFFER, YOU MUST DELIVER THIS LETTER OF TRANSMITTAL AND TENDER ALL OF YOUR EFIH FIRST LIEN NOTES AS INSTRUCTED HEREIN.  AFTER THE EXPIRATION DATE, YOU MUST DELIVER AN EXECUTED SIGNATURE PAGE TO THE EFIH FIRST LIEN DIP FACILITY OR SUCH OTHER DOCUMENTS RELATED TO THE EXCHANGE OF YOUR EFIH FIRST LIEN NOTES IN THE OFFER AS INSTRUCTED IN THE CLOSING DATE NOTIFICATION.**

All capitalized terms used but not defined herein shall have the meanings ascribed to them in the Information Memorandum, dated May 6, 2014.

**IMPORTANT NOTICE REGARDING THE OFFER TO EXCHANGE EFIH FIRST LIEN NOTES FOR EFIH FIRST LIEN DIP LOANS**

NO EXCHANGE OF EFIH FIRST LIEN NOTES FOR EFIH FIRST LIEN DIP LOANS SHALL TAKE PLACE UNTIL THE CLOSING DATE. ON OR PROMPTLY AFTER THE EXPIRATION DATE, THE OFFER AGENT WILL NOTIFY EACH PARTICIPATING HOLDER AND ITS NOMINEE, BY PROVIDING A CLOSING DATE NOTIFICATION, SUBSTANTIALLY IN THE FORM ATTACHED HERETO AS <u>EXHIBIT A</u>, OF THE CLOSING DATE AND DIRECT EACH PARTICIPATING HOLDER TO EXECUTE AND RETURN A SIGNATURE PAGE TO THE EFIH FIRST LIEN DIP FACILITY OR SUCH OTHER DOCUMENTS AS INSTRUCTED IN THE CLOSING DATE NOTIFICATION TO THE OFFER AGENT ON OR PRIOR TO THE CLOSING DATE. THE CLOSING DATE NOTIFICATION MAY BE ORAL OR IN WRITING, AND IF ORAL WILL BE FOLLOWED BY A WRITING.

IF YOU ELECT TO PARTICIPATE IN THE OFFER, YOU WILL BE ENTERING INTO A BINDING LEGAL COMMITMENT WITH THE COMPANY. IF YOU HAVE TENDERED YOUR EFIH FIRST LIEN NOTES, BUT FAIL TO EXECUTE AND RETURN A SIGNATURE PAGE TO THE EFIH FIRST LIEN DIP FACILITY OR SUCH OTHER DOCUMENTS AS INSTRUCTED IN THE CLOSING DATE NOTIFICATION TO THE OFFER AGENT ON OR PRIOR TO THE CLOSING DATE, YOU WILL BE IN BREACH OF YOUR OBLIGATIONS TO THE COMPANY AND THE COMPANY RESERVES ALL RIGHTS IT MAY HAVE AGAINST YOU AT LAW OR IN EQUITY.

THE OFFER IS NOT BEING MADE TO (NOR WILL TENDERS OF EFIH FIRST LIEN NOTES BE ACCEPTED FROM OR ON BEHALF OF) HOLDERS IN ANY JURISDICTION IN WHICH THE MAKING OR ACCEPTANCE OF THE OFFER WOULD NOT BE IN COMPLIANCE WITH THE LAWS OF SUCH JURISDICTION.

ON APRIL 29, 2014, EFH CORP. AND THE SUBSTANTIAL MAJORITY OF ITS DIRECT AND INDIRECT SUBSIDIARIES, EXCLUDING ONCOR ELECTRIC DELIVERY HOLDINGS COMPANY LLC AND ITS SUBSIDIARIES, BUT INCLUDING EFIH, FILED VOLUNTARY PETITIONS FOR RELIEF UNDER CHAPTER 11 OF TITLE 11 ("CHAPTER 11") OF THE UNITED STATES CODE, 11 U.S.C. §§101 ET. SEQ. (THE "BANKRUPTCY CODE") AND ARE OPERATING THEIR BUSINESSES AND MANAGING THEIR PROPERTY AS DEBTORS-IN-POSSESSION PURSUANT TO THE BANKRUPTCY CODE.

NOTHING HEREIN, OR IN ANY OF THE ACCOMPANYING FORMS AND LETTERS, SHALL CONSTITUTE OR BE DEEMED TO CONSTITUTE A SOLICITATION BY ANY PARTY OF VOTES TO APPROVE OR REJECT A CHAPTER 11 PLAN FOR ANY DEBTOR. A SOLICITATION WITH RESPECT TO VOTES TO APPROVE OR REJECT A CHAPTER 11 PLAN ONLY MAY BE COMMENCED ONCE A DISCLOSURE STATEMENT THAT COMPLIES WITH SECTION 1125 OF THE BANKRUPTCY CODE HAS BEEN APPROVED BY THE BANKRUPTCY COURT.

**NOTE: SIGNATURES MUST BE PROVIDED BELOW**
**PLEASE READ THE ACCOMPANYING INSTRUCTIONS CAREFULLY**

Ladies and Gentlemen:

This Letter of Transmittal is to be used by Holders to have your Nominee irrevocably tender EFIH First Lien Notes on or prior to the Early Participation Date or on or prior to the Expiration Date in exchange for EFIH First Lien DIP Loans on the Closing Date, assuming that the Offer is completed. The undersigned has completed, executed and delivered this Letter of Transmittal as required by the terms and conditions of the Offer.

The instructions included with this Letter of Transmittal must be followed. Questions and requests for assistance or for additional copies of this Letter of Transmittal or the Information Memorandum to which it relates may be directed to the Offer Agent, whose addresses and telephone numbers appear on the front cover of this Letter of Transmittal. See Instructions below.

The undersigned understands that the election to participate in the Offer pursuant to any of the procedures described in the Information Memorandum and in the instructions hereto will constitute a binding agreement between the undersigned and the Company upon the terms and subject to the conditions of the Information Memorandum.

All authority conferred or agreed to be conferred by this Letter of Transmittal shall survive the death or incapacity of the undersigned and every obligation of the undersigned under this Letter of Transmittal shall be binding upon the undersigned's heirs, personal representatives, executors, administrators, successors, assigns, trustees in bankruptcy and other legal representatives.

**TENDER OF EFIH FIRST LIEN NOTES IN EXCHANGE FOR EFIH FIRST LIEN DIP LOANS**

**Representations by Holders**

Each Holder who participates by completing and returning this Letter of Transmittal will be deemed to have represented and agreed as follows:

1.      it acknowledges that the EFIH First Lien DIP Loans are not securities and therefore have not been and will not be registered in a transaction under the Securities Act;

2.      it is either (A) a "qualified institutional buyer" as defined in Rule 144A of the Securities Act, (B) an institutional accredited investor (as defined in Rule 501(a)(1), (2), (3), or (7) under the Securities Act), or (C) a non-U.S. person (within the mean of Regulation S under the Securities Act) out of the United States;

3.      it has received a copy of the Information Memorandum prepared by the Company and:

(a)      has been afforded an opportunity to ask questions of and to request information from the Company, and has received all additional information it considers necessary in connection with its decision to participate in the Offer and to verify the accuracy and completeness of the information contained herein and therein;

(b)      is relying on the information contained in the Information Memorandum (including the documents incorporated by reference therein) in making its decision with respect to the exchange of EFIH First Lien Notes and has not relied on anyone in connection investigating the accuracy of such information or its decision to participate in the Offer;

(c)      acknowledges that the summaries of certain documents provided in the Information Memorandum do not purport to be complete and are qualified in their entirety by reference to the text of such documents; and

4

(d)      acknowledges that no representation or warranty has been made by the Offer Agent, the Depositary Agent, the Dealer Managers, the trustee of the EFIH First Lien Notes, the EFIH First Lien DIP Agent, the Joint Lead Arrangers for the EFIH First Lien DIP Facility and other parties under the EFIH First Lien DIP Facility as to the accuracy or completeness of the information contained in the Information Memorandum or any of the additional information described herein;

4.      it (i) has such knowledge and experience in financial and business matters as to be capable of evaluating the merits and risks of its prospective participation in the Offer, (ii) has the ability to bear the economic risks of its prospective investment and can afford the complete loss of such investment, (iii) may be required to bear the financial risks of this investment for an indefinite period of time; and (iv) has the requisite authority and ability to be a lender under the EFIH First Lien DIP Facility and hold EFIH First Lien DIP Loans;

5.      it has read this Letter of Transmittal, the Information Memorandum (including documents incorporated by reference therein) to which it relates, and additional information provided, including the Restructuring Support Agreement, the EFIH First Lien DIP Facility and related agreements and documents which have been made available at http://www.efhcaseinfo.com;

6.      by participating in the Offer, it is agreeing: (a) that it will be bound by the terms and conditions of the EFIH First Lien Settlement as set forth in the Information Memorandum (including, but not limited to, surrendering and waiving any and all claims it may have with respect to its EFIH First Lien Notes); (b) that it will not, directly or indirectly, object to, delay, impede, or take any other action to interfere with acceptance, implementation, or consummation of the EFIH First Lien Settlement, the EFIH Second Lien Settlement, the EFIH First Lien DIP Facility or the EFIH Second Lien DIP Notes Financing (the "Transactions") in the Bankruptcy Court or otherwise, including releasing and waiving any and all claims relating to the EFIH First Lien Notes upon consummation of the EFIH First Lien Settlement and (c) that it will take all necessary steps to effectuate its participation in the Offer and becoming a lender under the EFIH First Lien DIP Facility, including timely providing all requisite documentation as required; and

7.      it understands that the Company, the Offer Agent, the Depositary Agent, the Dealer Managers, the trustee of the EFIH First Lien Notes, the EFIH First Lien DIP Agent, the Joint Lead Arrangers for the EFIH First Lien DIP Facility and other parties under the EFIH First Lien DIP Facility and others will rely upon the truth and accuracy of the foregoing acknowledgements, representations and agreements and agrees that if any of the acknowledgements, representations and agreements deemed to have been made by it are no longer accurate, it shall promptly notify the Company in writing.

**Item 1.  Tenders of EFIH First Lien Notes**

A Participating Holder must tender all of the EFIH First Lien Notes held by it at or prior to the Early Participation Date to receive the Total Consideration or by the Expiration Date to receive the Exchange Consideration.  The Holder's Nominee must tender the Holder's EFIH First Lien Notes through ATOP, in accordance with the procedures contained in the Information Memorandum.

Participating Holders should provide instructions with respect to the Offer and deliver this completed form to their Nominee in accordance with the directions of the Nominee. HOLDERS SHOULD ALLOW SUFFICIENT TIME FOR THE NOMINEE TO TENDER THE HOLDER'S NOTES THROUGH ATOP AND FINALIZE AND RETURN THIS LETTER OF TRANSMITTAL TO THE OFFER AGENT.

**HOLDER: Complete Items 2 and 3 below before sending to your Nominee. (Follow the directions of your Nominee and allow sufficient time prior to the Early Participation Date (if you wish to receive the Total Consideration) or the Expiration Date.)**

**NOMINEE: Complete Item 4 after submitting the Holder's EFIH First Lien Notes through ATOP and send the fully completed form to the Offer Agent at the address or email address set forth above so that it is**

**received by the Offer Agent no later than one business day after the Early Participation Date or the Expiration Date, as applicable.**

**Delivery of this Letter of Transmittal; Modification and Waivers.**

To participate in the Offer, this Letter of Transmittal (or an email PDF version thereof) properly completed and duly executed and any other required documents, must be transmitted to your Nominee in sufficient time to allow your Nominee to tender your EFIH First Lien Notes, insert the "VOI" Number in Item 5 below, and deliver your instruction to the Offer Agent on or prior to the Early Participation Date to receive the Total Consideration, or the Expiration Date to receive the Exchange Consideration.

The Company expressly reserves the right, subject to applicable law and, if required, the authorization of the Bankruptcy Court to amend, modify or waive at any time, or from time to time, the terms of the Offer in any respect and to extend the Early Participation Date, the Expiration Date, the Closing Notification Date and the Closing Date, or to terminate the Offer.

If the Company exercises any such right, the Company will give written notice thereof to the Offer Agent and Depositary Agent and make a public announcement thereof as promptly as practicable. An announcement of an extension of the Expiration Date will be made no later than 9:00 a.m., New York City time, on the next business day after the scheduled Expiration Date.

The minimum extension period during which Holders of EFIH First Lien Notes may deliver executed Letters of Transmittal following changes to the terms of the Offer (or during which Holders may be granted withdrawal rights) will depend upon the facts and circumstances of changes to the terms of the Offer, including their relative materiality. For certain material changes, the Company may extend the Offer by ten business days and may grant certain withdrawal rights during that period. Any such determination will be made by the Company in its sole discretion.

**No Withdrawals.**

**Tenders of EFIH First Lien Notes may not be withdrawn, except in certain limited circumstances where required by law, unless otherwise determined by the Company in its sole discretion.**

**Irregularities.**

All questions as to the form of all documents and the validity (including time of receipt) and acceptance of all tenders of EFIH First Lien Notes will be determined by the Company, in its sole discretion, which determination will be final and binding. **Alternative, conditional or contingent Letters of Transmittal delivered by potential Participating Holders in connection with the Offer will not be considered valid.** The Company reserves the absolute right to reject any or all Letters of Transmittal, executed signature pages to the EFIH First Lien DIP Facility and other documents that are not in proper form or the acceptance of which would, in the Company's opinion, be unlawful. The Company also reserves the right to waive any defects, irregularities or conditions as to particular Letters of Transmittal, executed signature pages to the EFIH First Lien DIP Facility or other documents delivered by Participating Holders in connection with the consummation of the Offer. The Company's interpretations of the terms and conditions of the Offer will be final and binding. Any defect or irregularity in connection with Letters of Transmittal, executed signature pages to the EFIH First Lien DIP Facility or other documents, or tenders of EFIH First Lien Notes must be cured within such time as the Company determines, unless waived by it. Tenders of EFIH First Lien Notes will not be deemed to have been made until all defects and irregularities have been waived by the Company or cured. None of the Company, the trustee for the EFIH First Lien Notes, the Offer Agent, the Dealer Managers, any agent or any other person will be under any duty to give notice of any defects or irregularities in Letters of Transmittal, executed signature pages to the EFIH First Lien DIP Facility, tenders of EFIH First Lien Notes for the Offer or other documents delivered by Participating Holders in connection with the consummation of the Offer, nor will they incur any liability to Holders for failure to give any such notice.

**Requests for Assistance or Additional Copies.**

Requests for additional copies of the Information Memorandum and this Letter of Transmittal may be directed to the Offer Agent at the address on the front page of this Letter of Transmittal.

***************************

**Item 2.**   **Registration Information**. Please provide registration details below, which will be used to issue your EFIH First Lien DIP Loans:

Name 1 (Maximum 35 Characters)_____

Name 2 (Maximum 35 Characters)_____

Attention (Maximum 35 Characters)_____

Address 1 (Maximum 35 Characters) _____

Address 2 (Maximum 35 Characters) _____

City (Maximum 35 Characters) _____

State/Province (Maximum 35 Characters) _____

**FOREIGN** Country Name _____

Zip/ Postal Code _____

Email Address _____

U.S. Tax Identification Number_____

   Check here if non-US (no TIN)  ❑

**Item 3.**   **Certifications and Signature.**

   The undersigned understands that the Closing Date will promptly follow the Expiration Date and as indicated in the Closing Date Notification, unless extended by the Company in its sole discretion, subject to the conditions of the Offer, including the satisfaction of the terms and conditions set forth in the EFIH First Lien DIP Facility. The undersigned irrevocably agrees to exchange all of its EFIH First Lien Notes in the amounts set forth above with respect to the respective CUSIPs set forth in Item 4 below and to become bound by the EFIH First Lien Settlement. See "Description of the Offer" in the Information Memorandum. I certify that all of the EFIH First Lien Notes held by the undersigned Holder, whether or not held through this Nominee, are being tendered into the Offer.

**[Continued on following page]**

8

Full Legal Name of Holder (Please Print) _____

Authorized Signature _____

Name of Signatory _____

Title of Signatory[1] _____

Street Address _____

City, State, Zip Code _____

Telephone Number _____

Email Address _____

Date Completed _____


**Item 4.  "VOI" NUMBER(S) TO BE INSERTED BY NOMINEE.**


The VOI Number(s) for the Participating Holder's EFIH First Lien Notes that have been tendered into the Offer is/are:

| Note Description and CUSIP Number | VOI Number(s) for the Tendered EFIH First Lien Notes of the Participating Holder |
|---|---|
| EFIH 6.875% First Lien Notes **CUSIP 29269QAE7** | |
| EFIH 6.875% First Lien Notes **CUSIP U29197AC1** | |
| EFIH 10.000% First Lien Notes **CUSIP 29269QAA5** | |
| EFIH 10.000% First Lien Notes **CUSIP 29269QAK3** | |
| EFIH 10.000% First Lien Notes **CUSIP U29197AG2** | |


**DTC Participant Number: _____**


**Item 5.  Return of completed forms.**  This fully executed Letter of Transmittal should be sent to the Offer Agent in accordance with the information provided on the first page of this Letter of Transmittal.

---

[1]    If signature is by a trustee, executor, administrator, guardian, attorney-in-fact, officer or other person acting in a fiduciary or representative capacity, such person must submit evidence satisfactory to the Company of such person's authority to so act.

**Exhibit A**

**Form of Closing Date Notification**

**FORM OF CLOSING DATE NOTIFICATION**

for

**Offer to Exchange the Securities Listed Below
for EFIH First Lien DIP Loans**

**6.875% Senior Secured Notes due 2017
(CUSIP Nos. 29269QAE7 and U29197AC1)
and
10.00% Senior Secured Notes due 2020
(CUSIP Nos. 29269QAK3, 29269QAA5 and U29197AG2)**

of

# ENERGY FUTURE INTERMEDIATE HOLDING COMPANY LLC
# EFIH FINANCE INC.

**CLOSING DATE: NO LATER THAN 5:00 P.M. NEW YORK CITY TIME ON
JUNE [ ], 2014, UNLESS EXTENDED BY THE COMPANY IN ITS SOLE DISCRETION**

June [ ], 2014

To the Holder:  «Account_Name»

In connection with an offer to exchange EFIH First Lien Notes for EFIH First Lien DIP Loans by Energy Future Intermediate Holding Company LLC ("*EFIH*") and EFIH Finance Inc. ("*EFIH Finance*" and, together with EFIH, the "*Company*") pursuant to that certain Information Memorandum, dated May 6, 2014 (the "*Information Memorandum*"), this letter is to notify you of the Closing Date of the Offer and instruct you regarding the next steps that you must take to receive your EFIH First Lien DIP Loans.

Capitalized terms used but not defined herein shall have the meanings assigned to them in Information Memorandum.

**Summary of steps required to be taken**:

1.  After reviewing the EFIH First Lien DIP Facility, which has been made available at http://www.efhcaseinfo.com, the Holder must sign the signature page to the EFIH First Lien DIP Facility or such other documents related to the exchange of such Holder's EFIH First Lien Notes in the Offer as are reasonably acceptable to the Company attached hereto and return it to the Offer Agent, as detailed in <u>Item 2</u> below.

**Item 1.  EFIH First Lien Notes Tendered:**

The table below specifies your EFIH First Lien Notes (as submitted through ATOP by your Nominee) to be exchanged for EFIH First Lien DIP Loans.

| Note Description and CUSIP Number | Amount Tendered |
|---|---|
| EFIH 6.875% First Lien Notes **CUSIP 29269QAE7** | $ |
| EFIH 6.875% First Lien Notes **CUSIP U29197AC1** | $ |
| EFIH 10.000% First Lien Notes **CUSIP 29269QAA5** | $ |
| EFIH 10.000% First Lien Notes **CUSIP 29269QAK3** | $ |
| EFIH 10.000% First Lien Notes **CUSIP U29197AG2** | $ |

**Item 2.  Signature Page to EFIH First Lien DIP Facility or Other Exchange Documents:**

Please execute the signature page to the EFIH First Lien DIP Facility or such other documents related to the exchange of your EFIH First Lien Notes in the Offer as are reasonably acceptable to the Company that accompanies this Closing Date Notification and return it to the Offer Agent at its address listed below by the Closing Date.  By executing the signature page to the EFIH First Lien DIP Facility or such other exchange documents, you will be deemed to have read and agreed to the terms of the EFIH First Lien DIP Facility and related agreements.

*The Offer Agent and Depositary Agent for the Offer is:*

# EPIQ SYSTEMS



| *By Registered, Certified or Express mail or Overnight Courier Service* | *By Electronic Mail in a Portable Document Format (a "pdf file")* |
|---|---|
| EFIH First Lien Offer Processing c/o Epiq Systems 757 Third Avenue, 3rd Floor New York, NY 10017  Telephone:  (646) 282-2500 Toll Free:  (866) 734-9393 (ask for the Solicitation Group) | E-Mail Address:  tabulation@epiqsystems.com  With reference to "EFIH First Lien" in the subject line |

2

## INSTRUCTIONS TO CLOSING DATE NOTIFICATION

### FORMING PART OF THE TERMS AND CONDITIONS OF THE OFFER

1.    **Delivery of Executed Signature Page to EFIH First Lien DIP Facility**.

On or before the Closing Date, you must deliver the fully executed EFIH First Lien DIP Facility signature page or such other documents related to the exchange of your EFIH First Lien Notes in the Offer as are reasonably acceptable to the Company that accompanies this Closing Date Notification to the Offer Agent at the address provided on the back cover page of this Closing Date Notice.

2.    **EFIH First Lien DIP Loans Details.**

Your EIFH First Lien DIP Loans will be issued as directed in the Letter of Transmittal, as shown below:

<<_____>>
<<_____>>
<<_____>>
<<_____>>
<<_____>>
<<_____>>

3.    **Transfer Taxes.**

The Company will pay all transfer taxes applicable to the exchange and transfer of EFIH First Lien Notes pursuant to the Offer, except if a transfer tax is imposed for any reason other than the transfer and exchange of EFIH First Lien Notes to the Company or its order pursuant to the Offer. If satisfactory evidence of payment of such taxes or exemption therefrom is not submitted herewith, the amount of such transfer taxes will be deducted from any payment made or billed directly to such tendering Holder.

4.    **Requests for Assistance or Additional Copies.**

Requests for additional copies of the Information Memorandum and this Closing Date Notification may be directed to the Offer Agent at the address on the back page of this Closing Date Notification.

If you have any questions or require any further information, please contact the Offer Agent, Epiq Systems, Telephone: (646) 282-2500, or (866) 734-9393, E-mail: tabulation@epiqsystems.com and include "EFIH First Lien" in the subject line.  Thank you for your prompt attention to this matter.

Sincerely,

Epiq Systems
as Offer Agent

3

FORM OF SIGNATURE PAGE TO EFIH FIRST LIEN DIP FACILITY
FORM OF OTHER EXCHANGE DOCUMENTS

[TO BE PROVIDED IN DEFINITIVE CLOSING DATE NOTIFICATION]

EPIQ ID << >>

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

FILED

2014 MAY 20  PM 5: 37

CLERK
U.S. BANKRUPTCY COURT
DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) | Case No. 14-10979 (CSS) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |
|  | ) | **Re: D.I. 400, 441** |

### NOTICE OF EXTENSION OF PRIMARY OPT-IN
### PERIOD FOR PROPOSED EFIH SECOND LIEN SETTLEMENT

**PLEASE TAKE NOTICE THAT** the above-captioned debtors and debtors in possession (collectively, the "Debtors") filed their petitions for relief under chapter 11 of title 11 of the United States Code on April 29, 2014, in the United States Bankruptcy Court for the District of Delaware. These chapter 11 cases are being jointly administered on an interim basis pursuant to the *Interim Order Directing Joint Administration of the Debtors' Chapter 11 Cases*, entered May 1, 2014 [D.I. 287]. On May 9, 2014, the Debtors filed the *Notice of Initiation of Opt-In Period for Proposed EFIH Second Lien Settlement* [D.I. 400] (the "Second Lien Opt-In Notice").[2] The Second Lien Opt-In Notice explained that the Debtors had opened the proposed EFIH Second Lien Settlement for participation by any Holder of EFIH Second Lien Notes on the terms, and for the time periods, set forth in the Offer Memorandum, including, specifically, that

---

[1] The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, which are being jointly administered on an interim basis, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at http://www.efhcaseinfo.com.

[2] Capitalized terms used but not defined in this Notice shall have the meanings set forth in the Second Lien Opt-In Notice.

Holders of EFIH Second Lien Notes would receive greater consideration if they opted into the proposed EFIH Second Lien Settlement within a primary opt-in period scheduled to conclude on May 23, 2014 at 5:00 p.m. (Eastern Daylight Time) (the "Primary Opt-In Period").

PLEASE TAKE NOTICE that, on May 14, 2014, the indenture trustee for the EFIH Second Lien Notes (the "Second Lien Trustee") filed its *Emergency Motion of EFIH 2nd Lien Notes Indenture Trustee to Compel Debtors to Obtain Prior Approval of Procedures Governing Their EFIH 2nd Lien Tender Offer* [D.I. 441] (the "Motion to Compel"). In the Motion to Compel, the Second Lien Trustee raised various objections—all of which the Debtors dispute— to the proposed EFIH Second Lien Settlement, including the duration of the Primary Opt-In Period.

PLEASE TAKE NOTICE THAT, to facilitate the Motion to Compel being heard by the Bankruptcy Court on Thursday, May 22, 2014 at 9:30 a.m. (Eastern Daylight Time), the Debtors have extended the Primary Opt-In Period by one week to May 30, 2014 at 5:00 p.m. (Eastern Daylight Time) (the "Opt-In Extension"), unless otherwise extended by the Debtors (upon notice to the Bankruptcy Court, the U.S. Trustee, the Creditors' Committee, and all other parties in interest). On May 20, 2014, in accordance with applicable securities laws, the Debtors filed a Form 8-K and issued a press release (both of which are attached hereto as **Exhibit A**) disclosing the Opt-In Extension. For the avoidance of doubt, the Opt-In Extension does not extend the ultimate expiration date of the Second Lien Opt-In Period, which remains Friday, June 6, 2014 at 11:59 p.m. (Eastern Daylight Time).

PLEASE TAKE NOTICE THAT, AS STATED IN THE RESTRUCTURING SUPPORT AGREEMENT, AND AS DISCUSSED AT THE FIRST DAY HEARINGS, THE COMPROMISE OF THE EFIH SECOND LIEN NOTE CLAIMS IS SUBJECT TO

2

BANKRUPTCY COURT APPROVAL, AND WILL NOT BE CONSUMMATED UNLESS AND UNTIL THE BANKRUPTCY COURT PROVIDES SUCH AUTHORIZATION. THE COMPROMISE OF THE EFIH SECOND LIEN NOTE CLAIMS IS ALSO CONDITIONED ON CONSUMMATION OF THE EFIH SECOND LIEN DIP FINANCING, WHICH IS SUBJECT TO BANKRUPTCY COURT APPROVAL, AND WILL NOT BE CONSUMMATED UNLESS AND UNTIL THE BANKRUPTCY COURT PROVIDES SUCH AUTHORIZATION.

*[Remainder of page intentionally left blank]*

3

Dated:  May 20, 2014
        Wilmington, Delaware

**RICHARDS, LAYTON & FINGER, P.A.**
Mark D. Collins (No. 2981)
Daniel J. DeFranceschi (No. 2732)
Jason M. Madron (No. 4431)
920 North King Street
Wilmington, Delaware 19801
Telephone:      (302) 651-7700
Facsimile:      (302) 651-7701
Email:          collins@rlf.com
                defranceschi@rlf.com
                madron@rlf.com

-and-

**KIRKLAND & ELLIS LLP**
Richard M. Cieri (admitted *pro hac vice*)
Edward O. Sassower, P.C. (admitted *pro hac vice*)
Stephen E. Hessler (admitted *pro hac vice*)
Brian E. Schartz (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022-4611
Telephone:      (212) 446-4800
Facsimile:      (212) 446-4900
Email:          richard.cieri@kirkland.com
                edward.sassower@kirkland.com
                stephen.hessler@kirkland.com
                brian.schartz@kirkland.com

-and-

James H.M. Sprayregen, P.C. (admitted *pro hac vice*)
Chad J. Husnick (admitted *pro hac vice*)
Steven N. Serajeddini (admitted *pro hac vice*)
300 North LaSalle
Chicago, Illinois 60654
Telephone:      (312) 862-2000
Facsimile:      (312) 862-2200
Email:          james.sprayregen@kirkland.com
                chad.husnick@kirkland.com
                steven.serajeddini@kirkland.com

Proposed Co-Counsel to the Debtors and Debtors in Possession

4

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) | Case No. 14-10979 (CSS) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | **Re: D.I. 400, 441, 555** |

### DEBTORS' SECOND NOTICE OF EXTENSION OF PRIMARY
### OPT-IN PERIOD FOR PROPOSED EFIH SECOND LIEN SETTLEMENT

**PLEASE TAKE NOTICE** that the above-captioned debtors and debtors in possession (collectively, the "Debtors") filed their petitions for relief under chapter 11 of title 11 of the United States Code on April 29, 2014, in the United States Bankruptcy Court for the District of Delaware. These chapter 11 cases are being jointly administered on an interim basis pursuant to the *Interim Order Directing Joint Administration of the Debtors' Chapter 11 Cases*, entered May 1, 2014 [D.I. 287]. On May 9, 2014, the Debtors filed the *Notice of Initiation of Opt-In Period for Proposed EFIH Second Lien Settlement* [D.I. 400] (the "Second Lien Opt-In Notice").[2] The Second Lien Opt-In Notice explained that the Debtors had opened the proposed EFIH Second Lien Settlement for participation by any Holder of EFIH Second Lien Notes on the terms, and for the time periods, set forth in the Offer Memorandum, including, specifically, that Holders of

---

[1] The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, which are being jointly administered on an interim basis, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at http://www.efhcaseinfo.com.

[2] Capitalized terms used but not defined in this Notice shall have the meanings set forth in the Second Lien Opt-In Notice.

EFIH Second Lien Notes would receive greater consideration if they opted into the proposed EFIH Second Lien Settlement within a primary opt-in period scheduled to conclude on May 23, 2014 at 5:00 p.m. (Eastern Daylight Time) (the "Primary Opt-In Period").

**PLEASE TAKE NOTICE** that on May 14, 2014, the indenture trustee for the EFIH Second Lien Notes (the "Second Lien Trustee") filed its *Emergency Motion of EFIH 2nd Lien Notes Indenture Trustee to Compel Debtors to Obtain Prior Approval of Procedures Governing Their EFIH 2nd Lien Tender Offer* [D.I. 441] (the "Motion to Compel"). In the Motion to Compel, the Second Lien Trustee raised various objections—all of which the Debtors dispute—to the proposed EFIH Second Lien Settlement, including the duration of the Primary Opt-In Period. To facilitate the Motion to Compel being heard by the Bankruptcy Court on Thursday, May 22, 2014 at 9:30 a.m. (Eastern Daylight Time), the Debtors extended the Primary Opt-In Period by one week to May 30, 2014 at 5:00 p.m. (Eastern Daylight Time). The ultimate expiration date of the Second Lien Opt-In Period remained Friday, June 6, 2014 at 11:59 p.m. (Eastern Daylight Time). To provide notice of this extension, on May 20, 2014, the Debtors filed the *Notice of Extension of Primary Opt-In Period for Proposed EFIH Second Lien Settlement* [D.I. 555].

**PLEASE TAKE NOTICE** that the Debtors have agreed to extend further the Primary Opt-In Period to Wednesday, June 11, 2014 at 5:00 p.m. (Eastern Daylight Time) and to extend the ultimate expiration date of the Second Lien Opt-In Period to Thursday, July 3, 2014 at 5:00 p.m. (Eastern Daylight Time), each unless otherwise extended by the Debtors (upon notice to the Bankruptcy Court, the U.S. Trustee, the Creditors' Committee, and all other parties in interest). On May 27, 2014, in accordance with applicable securities laws, the Debtors filed a Form 8-K and issued a press release (both of which are attached hereto as **Exhibit A**) disclosing

2

these further extensions.  During this extended Primary Opt-In Period, the Debtors will engage in good faith negotiations with the Second Lien Trustee and certain holders of EFIH Second Lien Notes over the alternative second lien DIP proposal made by members of that group and other issues that they have raised in their various filings to date.

**PLEASE TAKE NOTICE THAT, AS STATED IN THE RESTRUCTURING SUPPORT AGREEMENT, AS DISCUSSED AT THE FIRST DAY HEARINGS, AND AS DESCRIBED WITHIN SUBSEQUENTLY FILED PLEADINGS, THE COMPROMISE OF THE EFIH SECOND LIEN NOTE CLAIMS IS SUBJECT TO BANKRUPTCY COURT APPROVAL, AND WILL NOT BE CONSUMMATED UNLESS AND UNTIL THE BANKRUPTCY COURT PROVIDES SUCH AUTHORIZATION.  THE COMPROMISE OF THE EFIH SECOND LIEN NOTE CLAIMS IS ALSO CONDITIONED ON CONSUMMATION OF THE EFIH SECOND LIEN DIP FINANCING, WHICH IS SUBJECT TO BANKRUPTCY COURT APPROVAL, AND WILL NOT BE CONSUMMATED UNLESS AND UNTIL THE BANKRUPTCY COURT PROVIDES SUCH AUTHORIZATION.**

*[Remainder of page intentionally left blank]*

3

Dated: May 27, 2014
Wilmington, Delaware

**RICHARDS, LAYTON & FINGER, P.A.**
Mark D. Collins (No. 2981)
Daniel J. DeFranceschi (No. 2732)
Jason M. Madron (No. 4431)
920 North King Street
Wilmington, Delaware 19801
Telephone:      (302) 651-7700
Facsimile:      (302) 651-7701
Email:          collins@rlf.com
                defranceschi@rlf.com
                madron@rlf.com

-and-

**KIRKLAND & ELLIS LLP**
Richard M. Cieri (admitted *pro hac vice*)
Edward O. Sassower, P.C. (admitted *pro hac vice*)
Stephen E. Hessler (admitted *pro hac vice*)
Brian E. Schartz (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022-4611
Telephone:      (212) 446-4800
Facsimile:      (212) 446-4900
Email:          richard.cieri@kirkland.com
                edward.sassower@kirkland.com
                stephen.hessler@kirkland.com
                brian.schartz@kirkland.com

-and-

James H.M. Sprayregen, P.C. (admitted *pro hac vice*)
Chad J. Husnick (admitted *pro hac vice*)
Steven N. Serajeddini (admitted *pro hac vice*)
300 North LaSalle
Chicago, Illinois 60654
Telephone:      (312) 862-2000
Facsimile:      (312) 862-2200
Email:          james.sprayregen@kirkland.com
                chad.husnick@kirkland.com
                steven.serajeddini@kirkland.com

Proposed Co-Counsel to the Debtors and Debtors in Possession

4

# EXHIBIT A

**Form 8-K and Press Release**



| ENERGY FUTURE HOLDI | RR Donnelley ProFile | swrdoc1 11.4.14 | SWRpf_rend | 23-May-2014 23:55 EST | | 732930 TX 1 | 3* |
| FORM 8-K | | | DAL | | | HTM ESS | 0C |
| | | | | | | Page 1 of 2 | |

# UNITED STATES
# SECURITIES AND EXCHANGE COMMISSION
### Washington, D.C. 20549

---

# Form 8-K

---

### Current Report
### Pursuant to Section 13 or 15(d)
### of the Securities Exchange Act of 1934

### Date of Report (date of earliest event reported) – May 27, 2014

---

# Energy Future Holdings Corp.
#### (Exact name of registrant as specified in its charter)

---

| Texas | 1-12833 | 46-2488810 |
|:---:|:---:|:---:|
| (State or other jurisdiction of incorporation) | (Commission File Number) | (I.R.S. Employer Identification No.) |

---

# Energy Future Intermediate Holding Company LLC
#### (Exact name of registrant as specified in its charter)

---

| Delaware | 1-34544 | 26-1191638 |
|:---:|:---:|:---:|
| (State or other jurisdiction of incorporation) | (Commission File Number) | (I.R.S. Employer Identification No.) |

---

# Energy Future Competitive Holdings Company LLC
#### (Exact name of registrant as specified in its charter)

---

| Delaware | 1-34543 | 75-1837355 |
|:---:|:---:|:---:|
| (State or other jurisdiction of incorporation) | (Commission File Number) | (I.R.S. Employer Identification No.) |



| ENERGY FUTURE HOLDI | RR Donnelley ProFile | swrdoc1 11.4.14 | SWRpf_rend | 23-May-2014 23:55 EST | | 732930 TX 1 | 3* |
| FORM 8-K | | | DAL | | | HTM ESS | 0C |
| | | | | | | Page 2 of 2 | |

**Energy Plaza, 1601 Bryan Street, Dallas, Texas 75201**
(Address of principal executive offices, including zip code)

**214-812-4600**
(Registrants' telephone number, including Area Code)

———————————

Check the appropriate box below if the Form 8-K filing is intended to simultaneously satisfy the filing obligation of the registrants under any of the following provisions (see General Instruction A.2. below):

☐ Written communications pursuant to Rule 425 under the Securities Act (17 CFR 0.425)

☐ Soliciting material pursuant to Rule 14a-12 under the Exchange Act (17 CFR 240.14a-12)

☐ Pre-commencement communications pursuant to Rule 14d-2(b) under the Exchange Act (17 CFR 240.14d-2(b))

☐ Pre-commencement communications pursuant to Rule 13e-4(c) under the Exchange Act (17 CFR 240.13e-4(c))

| ENERGY FUTURE HOLDI | RR Donnelley ProFile | AZ0151AC5S9765 11.4.15 | SWRgaond0px | 26-May-2014 16:47 EST | 732930 TX 2 | 5* |
| FORM 8-K | | | ■ DAL | | HTM ESS | 0C |
| | | | | | Page 1 of 1 | |

### *Introductory Note*

Each of Energy Future Holdings Corp. ("EFH Corp.") and Energy Future Intermediate Holding Company LLC ("EFIH") is filing only the information contained in Item 8.01 and Item 9.01 of this Current Report on Form 8-K and the information contained under the heading "Cautionary Note Regarding Forward-Looking Statements." Energy Future Competitive Holdings Company LLC ("EFCH") is filing only the information contained under the heading "Amendment to Restructuring Support and Lock-Up Agreement" of Item 8.01 and Exhibit 99.2 of Item 9.01 of this Current Report on Form 8-K and the information contained under the heading "Cautionary Note Regarding Forward-Looking Statements" and is furnishing only the information contained in Item 7.01 and Exhibit 99.1 of Item 9.01 of this Current Report on Form 8-K.

### Item 7.01 Regulation FD Disclosure.

On May 27, 2014, EFIH and EFIH Finance Inc. (together with EFIH, the "Issuer") issued a press release announcing that (i) the early participation date for the Issuer's previously announced offer to purchase its 11% Senior Secured Second Lien Notes due 2021 and 11.750% Senior Secured Second Lien Notes due 2022 (collectively, the "EFIH Second Lien Notes") for cash as a voluntary settlement (such settlement, the "EFIH Second Lien Settlement") with respect to the EFIH Second Lien Notes has been extended from 5:00 p.m., New York City time, on May 30, 2014 to 5:00 p.m., New York City time, on June 11, 2014 (the "Early Participation Date"), (ii) the expiration date for the EFIH Second Lien Settlement has been extended from 11:59 p.m., New York City time, on June 6, 2014 to 5:00 p.m., New York City time, on July 3, 2014 (the "Expiration Date") and (iii) it has determined to offer withdrawal rights in the EFIH Second Lien Settlement up to the Early Participation Date. Except for the availability of withdrawal rights and changes to the Early Participation Date, the Expiration Date, and the assumed settlement date of the EFIH Second Lien Settlement and corresponding changes to the EFIH Second Lien Settlement consideration as described in the press release, the terms of the EFIH Second Lien Settlement are unchanged. A copy of the press release is attached hereto as Exhibit 99.1 and is incorporated herein by reference.

### Item 8.01 Other Events.

### EFIH Second Lien Settlement Extension

The information set forth under Item 7.01 of this Current Report on Form 8-K is incorporated by reference into this Item 8.01.

### Amendment to Restructuring Support and Lock-Up Agreement

On April 29, 2014, EFH Corp. and the substantial majority of its direct and indirect subsidiaries (the "Reorganizing Entities"), including EFIH, EFCH and Texas Competitive Electric Holdings Company LLC ("TCEH") but excluding Oncor Electric Delivery Holdings Company LLC and its subsidiaries, filed voluntary petitions for relief (the "Bankruptcy Filing") under Chapter 11 of the United States Bankruptcy Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware ("Bankruptcy Court"). During the pendency of the Bankruptcy Filing, the Reorganizing Entities will operate their businesses as "debtors-in-possession" under the jurisdiction of the Bankruptcy Court and in accordance with the applicable provisions of the Bankruptcy Code.

In anticipation of the Bankruptcy Filing, on April 29, 2014, the Reorganizing Entities entered into a Restructuring Support and Lock-Up Agreement (as amended, "the Restructuring Support and Lock-Up Agreement") with various stakeholders (the "Consenting Parties") in order to effect an agreed upon restructuring of the Reorganizing Entities through a pre-arranged Chapter 11 plan of reorganization. The Restructuring Support and Lock-Up Agreement is filed as an exhibit to EFH Corp.'s 2013 Form 10-K through Amendment No. 1 on Form 10-K/A filed with the Securities and Exchange Commission on May 1, 2014, and the First Amendment to the Restructuring Support and Lock-Up Agreement is filed as an exhibit to the Current Report on Form 8-K filed by EFH Corp., EFIH and EFCH with the Securities and Exchange Commission on May 13, 2014.

On May 16, 2014, the Reorganizing Entities and certain of the Consenting Parties entered into the Second Amendment to the Restructuring Support and Lock-Up Agreement (the "Second Amendment"), which included an amendment to the definition of "Consenting Ad Hoc TCEH Committee" and extended the deadline for the Reorganizing Entities to file the RSA Assumption Motion (as defined therein).

| ENERGY FUTURE HOLDI | RR Donnelley ProFile | AZ0151AC599765 11.4.15 | SWRgaond0px | 26-May-2014 16:47 EST | 732930 TX 3 | 5* |
| FORM 8-K | | | DAL | | HTM ESS | 0C |
| | | | | | Page 1 of 1 | |

Attached and incorporated herein by reference as Exhibit 99.2 is the Second Amendment. The above description of the Second Amendment is qualified in its entirety by reference to the Second Amendment.

### Item 9.01 Financial Statements and Exhibits.

(d) Exhibits

| Exhibit No. | Description |
|---|---|
| 99.1 | Press release dated May 27, 2014 |
| 99.2 | Second Amendment to the Restructuring Support and Lock-Up Agreement dated May 16, 2014, among the Reorganizing Entities and the other parties thereto |

### *Cautionary Note Regarding Forward-Looking Statements*

This Current Report on Form 8-K includes forward-looking statements within the meaning of the Private Securities Litigation Reform Act of 1995, which are subject to risks and uncertainties. All statements, other than statements of historical facts, are forward-looking statements. Readers are cautioned not to place undue reliance on forward-looking statements. Although we believe that in making any such forward-looking statement our expectations are based on reasonable assumptions, any such forward-looking statement involves uncertainties and is qualified in its entirety by reference to the discussion of risk factors under Item 1A, "Risk Factors" and the discussion under Item 7, "Management's Discussion and Analysis of Financial Condition and Results of Operations" in the Annual Reports on Form 10-K (and in the corresponding sections of any subsequent Quarterly Reports on Form 10-Q) filed by each of EFH Corp., EFIH and EFCH and the following important factors, among others, that could cause actual results to differ materially from those projected in such forward-looking statements:

- our ability to obtain the approval of the Bankruptcy Court with respect to motions filed in our ongoing bankruptcy proceedings, including with respect to the EFIH Second Lien Settlement and the transactions related thereto;

- the effectiveness of the overall restructuring activities pursuant to the Bankruptcy Filing and any additional strategies we employ to address our liquidity and capital resources;

- the terms and conditions of any reorganization plan that is ultimately approved by the Bankruptcy Court;

- the actions and decisions of creditors, regulators and other third parties that have an interest in the bankruptcy proceedings;

- the duration of the bankruptcy proceedings; and

- restrictions on us due to the terms of debtor-in-possession financing facilities and restrictions imposed by the Bankruptcy Court.

Any forward-looking statement speaks only at the date on which it is made, and except as may be required by law, we undertake no obligation to update any forward-looking statement to reflect events or circumstances after the date on which it is made or to reflect the occurrence of unanticipated events. New factors emerge from time to time, and it is not possible for us to predict all of them; nor can we assess the impact of each such factor or the extent to which any factor, or combination of factors, may cause results to differ materially from those contained in any forward-looking statement. As such, you should not unduly rely on such forward-looking statements.



## SIGNATURES

Pursuant to the requirements of the Securities Exchange Act of 1934, each registrant has duly caused this report to be signed on its behalf by the undersigned thereunto duly authorized.

**ENERGY FUTURE HOLDINGS CORP.**

/s/ Stanley J. Szlauderbach
Name: Stanley J. Szlauderbach
Title:  Senior Vice President & Controller

**ENERGY FUTURE INTERMEDIATE HOLDING COMPANY LLC**

/s/ Stanley J. Szlauderbach
Name: Stanley J. Szlauderbach
Title:  Senior Vice President & Controller

**ENERGY FUTURE COMPETITIVE HOLDINGS COMPANY LLC**

/s/ Stanley J. Szlauderbach
Name: Stanley J. Szlauderbach
Title:  Senior Vice President & Controller

May 27, 2014

| ENERGY FUTURE HOLDI | RR Donnelley ProFile | AZ0151AM002121 11.4.15 | SWRhaacm0px | 27-May-2014 00:29 EST | | 732930 EX99_1 1 | 7* |
| FORM 8-K | | | DAL | | ex99_1logo | HTM ESS | 0C |

**Exhibit 99.1**

*News Release*

## Energy Future Holdings

**FOR IMMEDIATE RELEASE**

**Energy Future Intermediate Holding Company LLC and
EFIH Finance Inc. Announce Extension of Early Participation Date and Expiration Date and Availability of Withdrawal
Rights in Cash Tender Offer for Second Lien Notes**

**DALLAS—May 27, 2014—**Energy Future Intermediate Holding Company LLC ("EFIH"), a wholly-owned subsidiary of Energy Future Holdings Corp. ("EFH Corp."), and EFIH Finance Inc. ("EFIH Finance" and together with EFIH, the "Issuer") today announced that the early participation date for its previously announced offer to purchase EFIH Second Lien Notes (as defined below) for cash as a voluntary settlement with respect to the Issuer's obligations under the EFIH Second Lien Notes (such offer and settlement, the "EFIH Second Lien Settlement") has been extended from 5:00 p.m., New York City time, on May 30, 2014 to 5:00 p.m., New York City time, on June 11, 2014 (the "Early Participation Date"). The Issuer also announced that the expiration date for the EFIH Second Lien Settlement has been extended from 11:59 p.m., New York City time, on June 6, 2014 to 5:00 p.m., New York City time, on July 3, 2014 (the "Expiration Date"). The Issuer has also determined to offer withdrawal rights in the EFIH Second Lien Settlement up to the Early Participation Date. Tenders of EFIH Second Lien Notes may be withdrawn at any time prior to the Early Participation Date but not thereafter.

The EFIH Second Lien Settlement is open to all holders of the Issuer's 11% Senior Secured Second Lien Notes due 2021 (the "EFIH 11% Second Lien Notes") and 11.750% Senior Secured Second Lien Notes due 2022 (the "EFIH 11.750% Second Lien Notes" and together with the EFIH 11% Second Lien Notes, the "EFIH Second Lien Notes"). Except for the adjustment to the consideration described below, the change to the Early Participation Date and the Expiration Date and the availability of the withdrawal rights, the terms of the EFIH Second Lien Settlement are unchanged.

Upon the terms and subject to the conditions of the offer to purchase with respect to the EFIH Second Lien Settlement, each holder of EFIH Second Lien Notes that validly tenders its EFIH Second Lien Notes on or prior to 5:00 p.m., New York City time, on the Early Participation Date, which may be further extended by EFIH at its sole discretion, will be eligible to receive on the closing date of the offer (the "Settlement Date") as payment in full of any claims arising out of such holder's interest in the EFIH Second Lien Notes an amount, paid in cash, equal to (i) $1,119.30 for each $1,000 principal amount of EFIH 11% Second Lien Notes and (ii) $1,162.30 for each $1,000 principal amount of EFIH 11.750% Second Lien Notes tendered based on an assumed Settlement Date of July 9, 2014, which amounts will be <u>decreased</u> in each case by $0.14 for each day after July 9, 2014 that the Settlement Date occurs (such amount as may be reduced, the "Total Consideration" as set forth in the table below). The adjustment in such consideration from the previously announced consideration results solely from a $0.14 decrease for each day the assumed Settlement Date has been delayed from June 11, 2014 to July 9, 2014. The Total Consideration includes an early participation payment (the "Early Participation Consideration" as set forth in the table below) of $50.00 per $1,000 principal amount of EFIH Second Lien Notes validly tendered on or prior to the Early Participation Date.

| ENERGY FUTURE HOLDI | RR Donnelley ProFile | swrdoc1 11.4.14 | SWRpf_rend | 23-May-2014 23:55 EST | | 732930 EX99_1 2 | 3* |
| FORM 8-K | | | DAL | | | HTM ESS | 0C |
| | | | | | | | Page 1 of 1 |

Each holder that validly tenders its EFIH Second Lien Notes after the Early Participation Date and on or prior to the Expiration Date will be eligible to receive on the Settlement Date an amount, paid in cash, equal to the Total Consideration less the Early Participation Consideration (the "Tender Consideration" as set forth in the table below).

| Securities | CUSIP Number(s) | Aggregate Principal Amount Outstanding | Tender Consideration(1)(2) | Early Participation Consideration | Total Consideration(1)(2) |
|---|---|---|---|---|---|
| EFIH 11% Second Lien Notes | 29269QAB3 | $ 406,392,000 | $ 1,069.30 | $ 50.00 | $ 1,119.30 |
| EFIH 11.750% Second Lien Notes | 29269QAD9 U29197AB3 | $1,750,000,000 | $ 1,112.30 | $ 50.00 | $ 1,162.30 |

(1) Does not include accrued and unpaid interest up to, but not including, the Settlement Date, which will be paid on all of the EFIH Second Lien Notes accepted for purchase in the offer.

(2) The Total Consideration (and therefore also the Tender Consideration) will be decreased by $0.14 for each day after July 9, 2014 that the Settlement Date occurs.

The Issuer does not intend to permit the offer period for the EFIH Second Lien Settlement to expire prior to the date the EFIH Second Lien Settlement is heard, and approved, by the bankruptcy court. The consummation of the EFIH Second Lien Settlement is subject to several conditions, including, among others, the closing of new debt financing through the issuance of approximately $1.9 billion of 8% Convertible Second Lien Subordinated Secured DIP Financing Notes due 2016 (the "EFIH Second Lien DIP Notes Financing"), which is also subject to several conditions. The EFIH Second Lien Settlement will not be consummated unless, among other things, the bankruptcy court approves the EFIH Second Lien DIP Notes Financing and the EFIH Second Lien Settlement.

Epiq Systems is serving as the Offer Agent and Depositary Agent, and may be contacted by telephone at (646) 282-2500 or toll free at (866) 734-9393 or by email at tabulation@epiqsystems.com (please reference "EFIH Second Lien Offer" in the subject line), including with respect to procedures for the withdrawal rights under the EFIH Second Lien Settlement.

*Other Information*

This press release will not constitute an offer to sell, or the solicitation of an offer to buy, any EFIH Second Lien Notes, the EFIH Second Lien DIP Notes Financing or any other security. The offer to participate in the EFIH Second Lien Settlement is being made only pursuant to the offer to purchase and the related letter of transmittal. The offer to participate in the EFIH Second Lien Settlement is not being made to persons in any jurisdiction in which the making or acceptance thereof would not be in compliance with the securities, blue sky or other laws of such jurisdiction.

**Nothing in this press release will constitute or be deemed to constitute a solicitation by any party of votes to approve or reject a Chapter 11 plan of reorganization. A solicitation with respect to votes to approve or reject a Chapter 11 plan of reorganization may only be commenced once a disclosure statement that complies with section 1125 of the United States Code, 11 U.S.C. §§101 et. seq., has been approved by the United States Bankruptcy Court for the District of Delaware.**

**Forward-Looking Statements**

This press release includes forward-looking statements within the meaning of the Private Securities Litigation Reform Act of 1995, which are subject to risks and uncertainties. All statements, other than statements of historical facts, are forward-looking statements. Readers are cautioned not to place undue

| ENERGY FUTURE HOLDI | RR Donnelley ProFile | swrdoc1 11.4.14 | SWRpf_rend | 23-May-2014 23:56 EST | 732930 EX99_1 3 | 3* |
| FORM 8-K | | | DAL | | HTM ESS | 0C |
| | | | | | Page 1 of 1 | |

reliance on forward-looking statements. Although we believe that in making any such forward-looking statement our expectations are based on reasonable assumptions, any such forward-looking statement involves uncertainties and is qualified in its entirety by reference to the discussion of risk factors under Item 1A, "Risk Factors" and the discussion under Item 7, "Management's Discussion and Analysis of Financial Condition and Results of Operations" in the Annual Reports on Form 10-K (and in the corresponding sections of any subsequent Quarterly Reports on Form 10-Q) filed by each of EFH Corp., EFIH and Energy Future Competitive Holdings Company LLC and the following important factors, among others, that could cause actual results to differ materially from those projected in such forward-looking statements:

- our ability to obtain the approval of the bankruptcy court with respect to motions filed in the bankruptcy proceedings, including with respect to the EFIH Second Lien Settlement, the EFIH Second Lien DIP Notes Financing and the transactions related thereto;

- the effectiveness of the overall restructuring activities pursuant to the bankruptcy filing and any additional strategies we employ to address our liquidity and capital resources;

- the terms and conditions of any reorganization plan that is ultimately approved by the bankruptcy court;

- the actions and decisions of creditors, regulators and other third parties that have an interest in the bankruptcy proceedings;

- the duration of the bankruptcy proceedings; and

- restrictions on us due to the terms of debtor-in-possession financing facilities and restrictions imposed by the bankruptcy court.

Any forward-looking statement speaks only at the date on which it is made, and except as may be required by law, we undertake no obligation to update any forward-looking statement to reflect events or circumstances after the date on which it is made or to reflect the occurrence of unanticipated events. New factors emerge from time to time, and it is not possible for us to predict all of them; nor can we assess the impact of each such factor or the extent to which any factor, or combination of factors, may cause results to differ materially from those contained in any forward-looking statement. As such, you should not unduly rely on such forward-looking statements.

-END-

**Corporate Communications:**
Allan Koenig
214-812-8080
Media.Relations@energyfutureholdings.com

**Investor Relations:**
Blake Holcomb
214-812-8005
Blake.Holcomb@energyfutureholdings.com

3

| ENERGYG FUTURE HOLDI | RR Donnelley ProFile | swrdoct 11.4.15 | SWRlowew0cm | 24-May-2014 03:39 EST | 732930 EX99_2 1 | 4* |
| FORM 8-K | | | ■ DAL | | HTM ESS | 0C |

Exhibit 99.2

*Execution Version*

## SECOND AMENDMENT TO RESTRUCTURING SUPPORT AND LOCK-UP AGREEMENT

**THIS SECOND AMENDMENT TO THE RESTRUCTURING SUPPORT AND LOCK-UP AGREEMENT** (this "**Amendment**") is made as of May 16, 2014 by and among all of the following: (a) the Consenting Interest Holders; (b) the Consenting Ad Hoc TCEH Committee (as amended below); (c) Consenting Creditors holding at least 50.1% in principal amount of the aggregate amount of EFH Unsecured Note Claims held at such time by the Consenting Creditors; (d) Consenting Fidelity EFIH First Lien Noteholders holding at least 50.1% in principal amount of the aggregate amount of the EFIH First Lien Note Claims held by all Consenting Fidelity First Lien Noteholders at such time; (e) Consenting Creditors holding at least 50.1% in principal amount of the aggregate of each of the EFIH Second Lien Note Claims at such time; (f) the Required EFIH Unsecured Consenting Creditors; (g) each applicable Consenting Non-Fidelity EFIH First Lien Noteholder; and (h) each of the Debtors (each of the foregoing listed on the signature pages attached hereto and collectively, the "**Required Amendment Parties**") and amends that certain restructuring support and lock up agreement dated as of April 29, 2014 by and among the Restructuring Support Parties and amended on May 7, 2014 (as amended, the "**Restructuring Support Agreement**"). Capitalized terms used but not otherwise defined herein have the meanings ascribed to such terms in the Restructuring Support Agreement.

WHEREAS, the Restructuring Support Parties desire to amend the Restructuring Support Agreement as set forth in this Amendment;

WHEREAS, Section 9 of the Restructuring Support Agreement permits the Restructuring Support Parties to modify, amend or supplement the Restructuring Support Agreement with the consent of the Required Amendment Parties as set forth above;

NOW, THEREFORE, in consideration of the mutual covenants and agreements and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Restructuring Support Parties hereto hereby agree to amend the Restructuring Support Agreement as follows:

1. Amendments to the Restructuring Support Agreement.

    1.01. Clause (a) of the definition of "**Required Consenting Creditors**" in Section 3 of the Restructuring Support Agreement is hereby deleted in its entirety and replaced with the following:

        (a) at least three (3) members of the Ad Hoc TCEH Committee who are Consenting Creditors who collectively hold at least 50.1% of the TCEH First Lien Claims held by the members of the Ad Hoc TCEH Committee who are Consenting Creditors (the "**Consenting Ad Hoc TCEH Committee**");

    1.02. Section 8.01(b) of the Restructuring Support Agreement is hereby deleted in its entirety and replaced with the following:

        the Debtors shall not have filed the RSA Assumption Motion with the Bankruptcy Court on or before May 16, 2014.

| ENERGYG FUTURE HOLDI | RR Donnelley ProFile | swrdoc1 11.4.14 | SWRpf_rend | 23-May-2014 23:55 EST | | 732930 EX99_2 2 | 3* |
| FORM 8-K | | | DAL | | | HTM ESS | 0C |
| | | | | | | Page 1 of 1 |

2. <u>Ratification</u>. Except as specifically provided for in this Amendment, no changes, amendments, or other modifications have been made on or prior to the date hereof or are being made to the terms of the Restructuring Support Agreement or the rights and obligations of the parties thereunder, all of which such terms are hereby ratified and confirmed and remain in full force and effect.

3. <u>Effect of Amendment</u>. This letter agreement shall be effective on the date on which the Debtors have received all of the Required Amendment Parties' signature pages. Following the effective date, whenever the Restructuring Support Agreement is referred to in any agreements, documents, and instruments, such reference shall be deemed to be to the Restructuring Support Agreement as amended by this Amendment.

4. <u>Waiver of Certain Termination Rights</u>. Each of the Required Amendment Parties hereby waives, as applicable, the termination rights as set forth in Section 8.01(b) of the Restructuring Support Agreement that may exist as of the effective date of this Amendment.

*[Signature pages redacted.]*

2

| ENERGY FUTURE HOLDI | RR Donnelley ProFile | swrdoc1 11.4.14 | SWRpf_rend | 24-May-2014 00:00 EST | 732930 EX99_2SIG 1 | 6* |
| FORM 8-K | | | DAL | | HTM ESS | 0C |
| | | | | | Page 1 of 1 |

**Debtor Signature Page to the Plan Support and Lock-Up Agreement**

ENERGY FUTURE HOLDINGS CORP.
TEXAS COMPETITIVE ELECTRIC HOLDINGS COMPANY LLC
4CHANGE ENERGY COMPANY
4CHANGE ENERGY HOLDINGS LLC
BIG BROWN 3 POWER COMPANY LLC
BIG BROWN LIGNITE COMPANY LLC
BIG BROWN POWER COMPANY LLC
BRIGHTEN ENERGY LLC
BRIGHTEN HOLDINGS LLC
COLLIN POWER COMPANY LLC
DALLAS POWER AND LIGHT COMPANY, INC.
DECORDOVA POWER COMPANY LLC
DECORDOVA II POWER COMPANY LLC
EAGLE MOUNTAIN POWER COMPANY LLC
EEC HOLDINGS, INC.
EECI, INC.
EFH AUSTRALIA (NO. 2) HOLDINGS COMPANY
EFH CORPORATE SERVICES COMPANY
EFH FINANCE (NO. 2) HOLDINGS COMPANY
EFH FS HOLDINGS COMPANY
EFH RENEWABLES COMPANY LLC
EFIH FINANCE INC.
ENERGY FUTURE COMPETITIVE HOLDINGS COMPANY LLC
ENERGY FUTURE INTERMEDIATE HOLDING COMPANY LLC
GENERATION DEVELOPMENT COMPANY LLC
GENERATION MT COMPANY LLC
GENERATION SVC COMPANY
LAKE CREEK 3 POWER COMPANY LLC
LONE STAR ENERGY COMPANY, INC.
LONE STAR PIPELINE COMPANY, INC.
LSGT GAS COMPANY LLC
LSGT SACROC, INC.
LUMINANT BIG BROWN MINING COMPANY LLC
LUMINANT ENERGY COMPANY LLC
LUMINANT ENERGY TRADING CALIFORNIA COMPANY
LUMINANT ET SERVICES COMPANY
LUMINANT GENERATION COMPANY LLC
LUMINANT HOLDING COMPANY LLC
LUMINANT MINERAL DEVELOPMENT COMPANY LLC
LUMINANT MINING COMPANY LLC
LUMINANT RENEWABLES COMPANY LLC
MARTIN LAKE 4 POWER COMPANY LLC
MONTICELLO 4 POWER COMPANY LLC
MORGAN CREEK 7 POWER COMPANY LLC

| ENERGY FUTURE HOLDI | RR Donnelley ProFile | swrdoc1 11.4.14 | SWRpf_rend | 24-May-2014 00:00 EST | 732930 EX99_2SIG 2 | 7* |
| FORM 8-K | | | DAL | | ex99_2sig02 | HTM ESS 0C |

NCA DEVELOPMENT COMPANY LLC
NCA RESOURCES DEVELOPMENT COMPANY LLC
OAK GROVE MANAGEMENT COMPANY LLC
OAK GROVE MINING COMPANY LLC
OAK GROVE POWER COMPANY LLC
SANDOW POWER COMPANY LLC
SOUTHWESTERN ELECTRIC SERVICE COMPANY, INC.
TCEH FINANCE, INC.
TEXAS ELECTRIC SERVICE COMPANY, INC.
TEXAS ENERGY INDUSTRIES COMPANY, INC.
TEXAS POWER AND LIGHT COMPANY, INC.
TEXAS UTILITIES COMPANY, INC.
TEXAS UTILITIES ELECTRIC COMPANY, INC.
TRADINGHOUSE 3 & 4 POWER COMPANY LLC
TRADINGHOUSE POWER COMPANY LLC
TXU ELECTRIC COMPANY, INC.
TXU ENERGY RETAIL COMPANY LLC
TXU ENERGY SOLUTIONS COMPANY LLC
TXU RETAIL SERVICES COMPANY
TXU SEM COMPANY
VALLEY NG POWER COMPANY LLC
VALLEY POWER COMPANY LLC

By: _____
Name: Anthony R. Horton
Title:  Senior Vice President & Treasurer

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) | Case No. 14-10979 (CSS) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | **Re: D.I. 363, 400, 555, 612** |

## DEBTORS' NOTICE OF (A) EXTENSION OF FIRST LIEN
## OPT-IN PERIOD AND (B) AMENDMENTS TO SECOND LIEN OPT-IN

**PLEASE TAKE NOTICE** that the above-captioned debtors and debtors in possession (collectively, the "Debtors") filed their petitions for relief under chapter 11 of title 11 of the United States Code on April 29, 2014, in the United States Bankruptcy Court for the District of Delaware. These chapter 11 cases are being jointly administered pursuant to the *Final Order Directing Joint Administration of the Debtors' Chapter 11 Cases* [D.I. 849]. This Notice relates to the extension of the First Lien Opt-In Period and certain amendments to the Second Lien Opt-In (each as defined herein).[2]

---

[1] The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, which are being jointly administered, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at http://www.efhcaseinfo.com.

[2] Capitalized terms used but not defined in this Notice shall have the meanings set forth in the *Declaration of Paul Keglevic, Executive Vice President, Chief Financial Officer, and Co-Chief Restructuring Officer of Energy Future Holdings Corp., et al., in Support of First Day Motions* [D.I. 98] (the "First Day Declaration").

## Extension of First Lien Opt-In Period

**PLEASE TAKE NOTICE** that, on May 7, 2014, the Debtors filed the *Notice of Initiation of Opt-In Period for Proposed EFIH First Lien Settlement* [D.I. 363] (the "First Lien Opt-In Notice"). The First Lien Opt-In Notice explained that the Debtors had opened the proposed EFIH First Lien Settlement for participation by any qualified holder of EFIH First Lien Notes on the terms, and for the time periods, set forth in the relevant offering materials (such opt-in, the "First Lien Opt-In" and, such opt-in period, the "First Lien Opt-In Period"). The ultimate expiration date of the First Lien Opt-In Period was scheduled for June 6, 2014 at 5:00 p.m. (Eastern Daylight Time).

**PLEASE TAKE NOTICE** that consummation of the First Lien Opt-In was expressly conditioned on the Bankruptcy Court's approval of the EFIH First Lien Settlement. On Friday, June 6, 2014, the Bankruptcy Court entered the *Order Approving EFIH First Lien Settlement* [D.I. 858] (the "First Lien Settlement Order"), which by its terms shall become effective on Thursday, June 12, 2014 at 12:01 a.m. (Eastern Daylight Time).

**PLEASE TAKE NOTICE** that, given the June 12, 2014 effective date of the First Lien Settlement Order, to give holders additional time to consider whether to participate in the First Lien Opt-In and to ensure its consummation promptly after expiration of the First Lien Opt-In Period as required by applicable regulations and guidance of the United States Securities and Exchange Commission (the "SEC"), the Debtors have extended the First Lien Opt-In Period to Tuesday, June 10, 2014 at 5:00 p.m. (Eastern Daylight Time) (the "First Lien Opt-In Extension"). On Monday, June 9, 2014, in accordance with applicable securities laws, the Debtors filed a Form 8-K and issued a press release (both of which are attached hereto as **Exhibit A**) disclosing, among other things, the First Lien Opt-In Extension.

2

## Amendments to Second Lien Opt-In

**PLEASE TAKE NOTICE** that, on May 9, 2014, the Debtors filed the *Notice of Initiation of Opt-In Period for Proposed EFIH Second Lien Settlement* [D.I. 400] (the "Second Lien Opt-In Notice"). The Second Lien Opt-In Notice explained that the Debtors had opened the proposed EFIH Second Lien Settlement for participation by any holder of EFIH Second Lien Notes on the terms, and for the time periods, set forth in the relevant offering materials (such opt-in, the "Second Lien Opt-In" and, such opt-in period, the "Second Lien Opt-In Period"), including, specifically, that holders of EFIH Second Lien Notes would receive greater consideration if they opted into the proposed EFIH Second Lien Settlement within a primary opt-in period scheduled to conclude on May 23, 2014 at 5:00 p.m. (Eastern Daylight Time) (the "Primary Second Lien Opt-In Period").

**PLEASE TAKE NOTICE** that on May 27, 2014, the Debtors filed the *Debtors' Second Notice of Extension of Primary Opt-In Period for Proposed EFIH Second Lien Settlement* [D.I. 612], providing notice that the Primary Second Lien Opt-In Period had been further extended to Wednesday, June 11, 2014 at 5:00 p.m. (Eastern Daylight Time) and that the Second Lien Opt-In Period had been extended to Thursday, July 3, 2014 at 5:00 p.m. (Eastern Daylight Time).

**PLEASE TAKE NOTICE** that, on Thursday, May 29, 2014, the SEC contacted Kirkland & Ellis LLP, proposed counsel to the Debtors, regarding the Second Lien Opt-In. In a discussion with the Debtors' external and internal counsel on Friday, May 30, 2014, the SEC explained that counsel to the indenture trustee for the EFIH Second Lien Notes (the "Second Lien Trustee") had contacted the SEC regarding the Second Lien Opt-In. Although the SEC did not discuss with the Debtors' external or internal counsel any of the issues raised to date by the

3

Second Lien Trustee,[3] the SEC provided input, on an informal telephonic basis, with respect to two provisions of the Second Lien Opt-In: (a) the decrease in consideration under the Second Lien Opt-In by $0.14 per $1,000.00 per day after July 9, 2014, until consummation of the EFIH Second Lien Settlement (the "Incremental Closing Adjustment") and (b) the condition to consummation of the Second Lien Opt-In that funding of the EFIH Second Lien DIP Facility have occurred (the "Financing Condition"). To reflect these discussions with the SEC, the Debtors and their professionals agreed to amend the Second Lien Opt-In.

**PLEASE TAKE NOTICE** that, on Wednesday, June 4, 2014, the Debtors shared with the SEC a draft of Supplement No. 1 to the Offer to Purchase for Cash Any and All of the Outstanding EFIH Second Lien Notes, attached hereto in its final form as **Exhibit B** (the "Second Lien Opt-In Supplement"), which sets forth the full terms of the amendments to the Second Lien Opt-In (the "Second Lien Opt-In Amendments").[4] Based on a follow-up discussion on Friday, June 6, 2014, between the SEC and the Debtors' external counsel, it is the Debtors' understanding that the SEC presently has no further matters to discuss regarding the Second Lien Opt-In.

**PLEASE TAKE NOTICE** that on Monday, June 9, 2014, in accordance with applicable securities laws, the Debtors announced the Second Lien Opt-In Amendments in the Form 8-K and an additional press release (which press release is also attached hereto as **Exhibit A**) and began distributing the Second Lien Opt-In Supplement to all holders of EFIH Second Lien

---

[3] *See Emergency Motion of EFIH 2nd Lien Notes Indenture Trustee to Compel Debtors to Obtain Prior Approval of Procedures Governing Their EFIH 2nd Lien Tender Offer* [D.I. 441]; *EFIH Second Lien Notes Indenture Trustee's (I) Preliminary Response to Debtors' Settlement Motion and (II) Limited Objection and Reservation of Rights to Debtors' Motion Approving First Lien DIP Financing* [D.I. 649].

[4] The terms of the Second Lien Opt-In Amendments as set forth in the Second Lien Opt-In Supplement control at all times over the description of those terms set forth in this Notice.

4

Notes.  The Second Lien Opt-In Supplement, among other things, (a) provides that the Second

Lien Opt-In will no longer include the Incremental Closing Adjustment or the Financing

Condition and (b) makes certain supplemental disclosures relevant to the Second Lien Opt-In.

**PLEASE TAKE NOTICE THAT, AS STATED IN THE RESTRUCTURING SUPPORT AGREEMENT, AS DISCUSSED AT THE FIRST DAY HEARINGS, AND AS DESCRIBED WITHIN SUBSEQUENTLY FILED PLEADINGS, THE COMPROMISE OF THE EFIH SECOND LIEN NOTE CLAIMS IS SUBJECT TO BANKRUPTCY COURT APPROVAL, AND WILL NOT BE CONSUMMATED UNLESS AND UNTIL THE BANKRUPTCY COURT PROVIDES SUCH AUTHORIZATION. THE COMPROMISE OF THE EFIH SECOND LIEN NOTE CLAIMS IS ALSO CONDITIONED ON BANKRUPTCY COURT APPROVAL OF THE EFIH SECOND LIEN DIP FACILITY AND WILL NOT BE CONSUMMATED UNLESS AND UNTIL THE BANKRUPTCY COURT PROVIDES SUCH AUTHORIZATION.**

*[Remainder of page intentionally left blank]*

Dated: June 9, 2014
Wilmington, Delaware

**RICHARDS, LAYTON & FINGER, P.A.**
Mark D. Collins (No. 2981)
Daniel J. DeFranceschi (No. 2732)
Jason M. Madron (No. 4431)
920 North King Street
Wilmington, Delaware 19801
Telephone:     (302) 651-7700
Facsimile:     (302) 651-7701
Email:         collins@rlf.com
               defranceschi@rlf.com
               madron@rlf.com

-and-

**KIRKLAND & ELLIS LLP**
Richard M. Cieri (admitted *pro hac vice*)
Edward O. Sassower, P.C. (admitted *pro hac vice*)
Stephen E. Hessler (admitted *pro hac vice*)
Brian E. Schartz (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022-4611
Telephone:     (212) 446-4800
Facsimile:     (212) 446-4900
Email:         richard.cieri@kirkland.com
               edward.sassower@kirkland.com
               stephen.hessler@kirkland.com
               brian.schartz@kirkland.com

-and-

James H.M. Sprayregen, P.C. (admitted *pro hac vice*)
Chad J. Husnick (admitted *pro hac vice*)
Steven N. Serajeddini (admitted *pro hac vice*)
300 North LaSalle
Chicago, Illinois 60654
Telephone:     (312) 862-2000
Facsimile:     (312) 862-2200
Email:         james.sprayregen@kirkland.com
               chad.husnick@kirkland.com
               steven.serajeddini@kirkland.com

Proposed Co-Counsel to the Debtors and Debtors in Possession

6

**EXHIBIT A**

**Form 8-K and Press Releases**

# UNITED STATES
# SECURITIES AND EXCHANGE COMMISSION
### Washington, D.C. 20549

---

## Form 8-K

---

**Current Report**
**Pursuant to Section 13 or 15(d)**
**of the Securities Exchange Act of 1934**

**Date of Report (date of earliest event reported) – June 9, 2014**

---

# Energy Future Holdings Corp.
### (Exact name of registrant as specified in its charter)

---

| Texas | 1-12833 | 46-2488810 |
|---|---|---|
| (State or other jurisdiction of incorporation) | (Commission File Number) | (I.R.S. Employer Identification No.) |

---

# Energy Future Intermediate Holding Company LLC
### (Exact name of registrant as specified in its charter)

---

| Delaware | 1-34544 | 26-1191638 |
|---|---|---|
| (State or other jurisdiction of incorporation) | (Commission File Number) | (I.R.S. Employer Identification No.) |

---

# Energy Future Competitive Holdings Company LLC
### (Exact name of registrant as specified in its charter)

---

| Delaware | 1-34543 | 75-1837355 |
|---|---|---|
| (State or other jurisdiction of incorporation) | (Commission File Number) | (I.R.S. Employer Identification No.) |

**Energy Plaza, 1601 Bryan Street, Dallas, Texas 75201**
(Address of principal executive offices, including zip code)

**214-812-4600**
(Registrants' telephone number, including Area Code)

---

Check the appropriate box below if the Form 8-K filing is intended to simultaneously satisfy the filing obligation of the registrants under any of the following provisions (see General Instruction A.2. below):

☐   Written communications pursuant to Rule 425 under the Securities Act (17 CFR 0.425)

☐   Soliciting material pursuant to Rule 14a-12 under the Exchange Act (17 CFR 240.14a-12)

☐   Pre-commencement communications pursuant to Rule 14d-2(b) under the Exchange Act (17 CFR 240.14d-2(b))

☐   Pre-commencement communications pursuant to Rule 13e-4(c) under the Exchange Act (17 CFR 240.13e-4(c))

*Introductory Note*

Each of Energy Future Holdings Corp. ("EFH Corp.") and Energy Future Intermediate Holding Company LLC ("EFIH") is filing only the information contained in Item 8.01 and Item 9.01 of this Current Report on Form 8-K and the information contained under the heading "Cautionary Note Regarding Forward-Looking Statements." Energy Future Competitive Holdings Company LLC ("EFCH") is furnishing only the information contained in Item 7.01 and Item 9.01 of this Current Report on Form 8-K and the information contained under the heading "Cautionary Note Regarding Forward-Looking Statements."

**Item 7.01 Regulation FD Disclosure.**

**EFIH First Lien Settlement**

On June 9, 2014, EFIH and EFIH Finance Inc. (together with EFIH, the "Issuer") issued a press release announcing that the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") has issued an order approving, subject to a stay of such order until 12:01 a.m., New York City time, on June 12, 2014, (i) the voluntary settlement provided for in the Issuer's previously announced offer (the "Offer") to holders of the Issuer's 6.875% Senior Secured Notes due 2017 and 10.000% Senior Secured Notes due 2020 (such notes, the "EFIH First Lien Notes") to participate in a voluntary settlement with respect to the Issuer's obligations under the EFIH First Lien Notes (such settlement, the "EFIH First Lien Settlement") and (ii) the Issuer's entry into a new senior secured super-priority debtor-in-possession credit agreement (the "EFIH First Lien DIP Facility"). In addition, the Issuer announced that (a) the expiration date for the Offer has been extended to 5:00 p.m., New York City time, on June 10, 2014 (the "First Lien Settlement Expiration Date") and (b) the Issuer has waived a condition to the closing of the Offer as described in more detail in the press release. Other than the extension of the First Lien Settlement Expiration Date and the waiver of the condition as described in the press release, the terms of the EFIH First Lien Settlement are unchanged. A copy of the press release is attached hereto as Exhibit 99.1 and is incorporated herein by reference.

**EFIH Second Lien Settlement**

On June 9, 2014, the Issuer issued a press release announcing that the terms of the Issuer's previously announced offer to purchase its 11% Senior Secured Second Lien Notes due 2021 and 11.750% Senior Secured Second Lien Notes due 2022 (collectively, the "EFIH Second Lien Notes") for cash as a voluntary settlement (such settlement, the "EFIH Second Lien Settlement") with respect to the EFIH Second Lien Notes had been amended to (1) provide that each of the Tender Consideration and the Total Consideration (each as defined in the press release) will no longer be decreased $0.14 per day for each day the closing date of the offer (the "Second Lien Settlement Date") occurs after the assumed Second Lien Settlement Date of July 9, 2014, (2) delete and amend certain conditions to the consummation of the EFIH Second Lien Settlement as described in more detail in the press release and (3) make certain disclosures described in the press release regarding the right of the Issuer to determine whether or not any of the conditions to the consummation of the EFIH Second Lien Settlement were satisfied and to terminate or extend the EFIH Second Lien Settlement. Other than such amendments, which are described in the press release, the terms of the EFIH Second Lien Settlement are unchanged. A copy of the press release is attached hereto as Exhibit 99.2 and is incorporated herein by reference.

**Item 8.01 Other Events.**

The information set forth under Item 7.01 of this Current Report on Form 8-K is incorporated by reference into this Item 8.01.

1

**Item 9.01 Financial Statements and Exhibits.**

(d)  Exhibits

| Exhibit No. | Description |
| --- | --- |
| 99.1 | Press release dated June 9, 2014 with respect to the EFIH First Lien Settlement |
| 99.2 | Press release dated June 9, 2014 with respect to the EFIH Second Lien Settlement |

### _Cautionary Note Regarding Forward-Looking Statements_

This Current Report on Form 8-K includes forward-looking statements within the meaning of the Private Securities Litigation Reform Act of 1995, which are subject to risks and uncertainties. All statements, other than statements of historical facts, are forward-looking statements. Readers are cautioned not to place undue reliance on forward-looking statements. Although we believe that in making any such forward-looking statement our expectations are based on reasonable assumptions, any such forward-looking statement involves uncertainties and is qualified in its entirety by reference to the discussion of risk factors under Item 1A, "Risk Factors" and the discussion under Item 7, "Management's Discussion and Analysis of Financial Condition and Results of Operations" in the Annual Reports on Form 10-K (and in the corresponding sections of any subsequent Quarterly Reports on Form 10-Q) filed by each of EFH Corp., EFIH and EFCH and the following important factors, among others, that could cause actual results to differ materially from those projected in such forward-looking statements:

- any successful stay or similar equitable relief obtained by any objecting party that results in the closing of the EFIH First Lien Settlement occurring later than anticipated and/or any successful appeal obtained by any objecting party that overturns the Bankruptcy Court's approval of the EFIH First Lien Settlement;

- our ability to obtain the approval of the Bankruptcy Court with respect to motions filed in our ongoing bankruptcy proceedings, including with respect to the EFIH Second Lien Settlement and the transactions related thereto;

- the effectiveness of the overall restructuring activities pursuant to the Bankruptcy Filing and any additional strategies we employ to address our liquidity and capital resources;

- the terms and conditions of any reorganization plan that is ultimately approved by the Bankruptcy Court;

- the actions and decisions of creditors, regulators and other third parties that have an interest in the bankruptcy proceedings;

- the duration of the bankruptcy proceedings; and

- restrictions on us due to the terms of debtor-in-possession financing facilities and restrictions imposed by the Bankruptcy Court.

Any forward-looking statement speaks only at the date on which it is made, and except as may be required by law, we undertake no obligation to update any forward-looking statement to reflect events or circumstances after the date on which it is made or to reflect the occurrence of unanticipated events. New factors emerge from time to time, and it is not possible for us to predict all of them; nor can we assess the impact of each such factor or the extent to which any factor, or combination of factors, may cause results to differ materially from those contained in any forward-looking statement. As such, you should not unduly rely on such forward-looking statements.

2

## SIGNATURES

Pursuant to the requirements of the Securities Exchange Act of 1934, each registrant has duly caused this report to be signed on its behalf by the undersigned thereunto duly authorized.

**ENERGY FUTURE HOLDINGS CORP.**

/s/ Stanley J. Szlauderbach
Name: Stanley J. Szlauderbach
Title:  Senior Vice President & Controller

**ENERGY FUTURE INTERMEDIATE
HOLDING COMPANY LLC**

/s/ Stanley J. Szlauderbach
Name: Stanley J. Szlauderbach
Title:  Senior Vice President & Controller

**ENERGY FUTURE COMPETITIVE
HOLDINGS COMPANY LLC**

/s/ Stanley J. Szlauderbach
Name: Stanley J. Szlauderbach
Title:  Senior Vice President & Controller

June 9, 2014

Exhibit 99.1

*News Release*

# Energy Future Holdings

**FOR IMMEDIATE RELEASE**

### Energy Future Intermediate Holding Company LLC and
### EFIH Finance Inc. Announce Bankruptcy Court Approval of First Lien
### Notes Settlement and First Lien DIP Facility, Extension of Expiration
### Date and Waiver of Condition

**DALLAS—June 9, 2014**—Energy Future Intermediate Holding Company LLC ("EFIH"), a wholly-owned subsidiary of Energy Future Holdings Corp. ("EFH Corp."), and EFIH Finance Inc. ("EFIH Finance" and together with EFIH, the "Issuer") today announced that the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") has issued an order approving, subject to a stay of such order until 12:01 a.m., New York City time, on June 12, 2014, (i) the voluntary settlement provided for in the Issuer's previously announced offer (the "Offer") to holders of EFIH First Lien Notes (as defined below) to participate in a voluntary settlement with respect to the Issuer's obligations under the EFIH First Lien Notes (such settlement, the "EFIH First Lien Settlement") and (ii) the Issuer's entry into a new senior secured super-priority debtor-in-possession credit agreement (the "EFIH First Lien DIP Facility"). In addition, the expiration date for the Offer has been extended to 5:00 p.m., New York City time, on June 10, 2014 (the "Expiration Date").

The Offer is open to all qualified holders of the Issuer's 6.875% Senior Secured Notes due 2017 and 10.000% Senior Secured Notes due 2020 (such notes, the "EFIH First Lien Notes"). As of 5:00 p.m., New York City time, on June 6, 2014, approximately $0.42 billion of EFIH First Lien Notes (approximately 10% of the outstanding EFIH First Lien Notes) had been submitted for exchange in the Offer. In addition, pursuant to the Restructuring Support and Lock-Up Agreement, dated April 28, 2014 (as amended), to which the Issuer is a party, certain holders holding, in the aggregate, approximately $1.26 billion of EFIH First Lien Notes (approximately 32% of the outstanding EFIH First Lien Notes) have agreed to the EFIH First Lien Settlement on the terms provided in such agreement.

As previously disclosed, the consummation of the Offer is subject to several conditions. The Issuer has waived the condition to consummation of the Offer that the Bankruptcy Court approve the Issuer's previously announced offer to purchase its 11% Senior Secured Second Lien Notes due 2021 and 11.750% Senior Secured Second Lien Notes due 2022 (collectively, the "EFIH Second Lien Notes") for cash as a voluntary settlement of its obligations with respect to the EFIH Second Lien Notes and the related issuance by the Issuer of convertible second lien subordinated secured DIP financing notes due 2016.

Other than the extension of the Expiration Date and the waiver of the condition described in this press release, the terms of the Offer are unchanged.

Epiq Systems is serving as the Offer Agent and Depositary Agent, and may be contacted by telephone at (646) 282-2500 or toll free at (866) 734-9393 or by email at tabulation@epiqsystems.com (please reference "EFIH First Lien Offer" in the subject line).

## Other Information

This press release will not constitute an offer to sell, or the solicitation of an offer to buy, any EFIH First Lien Notes. The Offer is being made only pursuant to an Information Memorandum and the related Letter of Transmittal. The Offer is not being made to persons in any jurisdiction in which the making or acceptance thereof would not be in compliance with the securities, blue sky or other laws of such jurisdiction.

**Nothing in this press release will constitute or be deemed to constitute a solicitation by any party of votes to approve or reject a Chapter 11 plan of reorganization. A solicitation with respect to votes to approve or reject a Chapter 11 plan of reorganization may only be commenced once a disclosure statement that complies with section 1125 of the United States Code, 11 U.S.C. §§101 et. seq., has been approved by the Bankruptcy Court.**

## Forward-Looking Statements

This press release includes forward-looking statements within the meaning of the Private Securities Litigation Reform Act of 1995, which are subject to risks and uncertainties. All statements, other than statements of historical facts, are forward-looking statements. Readers are cautioned not to place undue reliance on forward-looking statements. Although we believe that in making any such forward-looking statement our expectations are based on reasonable assumptions, any such forward-looking statement involves uncertainties and is qualified in its entirety by reference to the discussion of risk factors under Item 1A, "Risk Factors" and the discussion under Item 7, "Management's Discussion and Analysis of Financial Condition and Results of Operations" in the Annual Reports on Form 10-K (and in the corresponding sections of any subsequent Quarterly Reports on Form 10-Q) filed by each of EFH Corp., EFIH and Energy Future Competitive Holdings Company LLC and the following important factors, among others, that could cause actual results to differ materially from those projected in such forward-looking statements:

- any successful stay or similar equitable relief obtained by any objecting party that results in the closing of the Offer occurring later than anticipated and/or any successful appeal obtained by any objecting party that overturns the Bankruptcy Court approval of the EFIH First Lien Settlement and EFIH First Lien DIP Facility;

- the effectiveness of the overall restructuring activities pursuant to the bankruptcy filing and any additional strategies we employ to address our liquidity and capital resources;

- the terms and conditions of any reorganization plan that is ultimately approved by the Bankruptcy Court;

- the actions and decisions of creditors, regulators and other third parties that have an interest in the bankruptcy proceedings;

- the duration of the bankruptcy proceedings; and

- restrictions on us due to the terms of debtor-in-possession financing facilities and restrictions imposed by the Bankruptcy Court.

Any forward-looking statement speaks only at the date on which it is made, and except as may be required by law, we undertake no obligation to update any forward-looking statement to reflect events or circumstances after the date on which it is made or to reflect the occurrence of unanticipated events. New factors emerge from time to time, and it is not possible for us to predict all of them; nor can we assess the impact of each such factor or the extent to which any factor, or combination of factors, may cause results to differ materially from those contained in any forward-looking statement. As such, you should not unduly rely on such forward-looking statements.

-END-

2

**Corporate Communications:**
Allan Koenig
214-812-8080
Media.Relations@energyfutureholdings.com

**Investor Relations:**
Blake Holcomb
214-812-8005
Blake.Holcomb@energyfutureholdings.com

3

Exhibit 99.2

*News Release*

**Energy Future Holdings**

**FOR IMMEDIATE RELEASE**

### Energy Future Intermediate Holding Company LLC and EFIH Finance Inc. Announce Amendment to Certain Terms of Second Lien Notes Settlement

**DALLAS—June 9, 2014**—Energy Future Intermediate Holding Company LLC ("EFIH"), a wholly-owned subsidiary of Energy Future Holdings Corp. ("EFH Corp."), and EFIH Finance Inc. ("EFIH Finance" and together with EFIH, the "Issuer") today announced the amendment of certain terms of its previously announced offer to purchase EFIH Second Lien Notes (as defined below) for cash as a voluntary settlement with respect to the Issuer's obligations under the EFIH Second Lien Notes (such offer and settlement, the "EFIH Second Lien Settlement"). The EFIH Second Lien Settlement is open to all holders of the Issuer's 11% Senior Secured Second Lien Notes due 2021 (the "EFIH 11% Second Lien Notes") and 11.750% Senior Secured Second Lien Notes due 2022 (the "EFIH 11.750% Second Lien Notes" and together with the EFIH 11% Second Lien Notes, the "EFIH Second Lien Notes").

The terms of the EFIH Second Lien Settlement have been amended to (1) provide that each of the Tender Consideration (as defined below) and the Total Consideration (as defined below) will no longer be decreased $0.14 per day for each day the Settlement Date occurs (as defined below) after the assumed Settlement Date of July 9, 2014, (2) delete and amend certain conditions to the consummation of the EFIH Second Lien Settlement as described in more detail below and (3) make certain disclosures described below regarding the right of the Issuer to determine whether or not any of the conditions to the consummation of the EFIH Second Lien Settlement were satisfied and to terminate or extend the EFIH Second Lien Settlement. Other than the amended terms described in this press release, the terms of the EFIH Second Lien Settlement are unchanged.

Upon the terms and subject to the conditions of the offer to purchase with respect to the EFIH Second Lien Settlement, each holder of EFIH Second Lien Notes that validly tenders its EFIH Second Lien Notes on or prior to 5:00 p.m., New York City time, on June 11, 2014 (the "Early Participation Date"), which may be further extended by the Issuer at its sole discretion, will be eligible to receive on the closing date of the offer (the "Settlement Date") as payment in full of any claims arising out of such holder's interest in the EFIH Second Lien Notes an amount, paid in cash, equal to (i) $1,119.30 for each $1,000 principal amount of EFIH 11% Second Lien Notes and (ii) $1,162.30 for each $1,000 principal amount of EFIH 11.750% Second Lien Notes tendered (the "Total Consideration" as set forth in the table below). The Total Consideration includes an early participation payment (the "Early Participation Consideration" as set forth in the table below) of $50.00 per $1,000 principal amount of EFIH Second Lien Notes validly tendered on or prior to the Early Participation Date. Each holder that validly tenders its EFIH Second Lien Notes after the Early Participation Date and on or prior to 5:00 p.m., New York City time, on July 3, 2014 (the "Expiration Date") will be eligible to receive on the Settlement Date an amount, paid in cash, equal to the Total Consideration less the Early Participation Consideration (the "Tender Consideration" as set forth in the table below).

| Securities | CUSIP Number(s) | Aggregate Principal Amount Outstanding | Tender Consideration(1) | Early Participation Consideration | Total Consideration(1) |
|---|---|---|---|---|---|
| EFIH 11% Second Lien Notes | 29269QAB3 | $ 406,392,000 | $ 1,069.30 | $ 50.00 | $ 1,119.30 |
| EFIH 11.750% Second Lien Notes | 29269QAD9 U29197AB3 | $1,750,000,000 | $ 1,112.30 | $ 50.00 | $ 1,162.30 |

(1)  Does not include accrued and unpaid interest up to, but not including, the Settlement Date, which will be paid on all of the EFIH Second Lien Notes accepted for purchase in the offer.

As previously disclosed, the consummation of the EFIH Second Lien Settlement is subject to several conditions. The terms of the EFIH Second Lien Settlement have been amended to remove the conditions relating to the consummation of and receipt of proceeds from the issuance of approximately $1.9 billion of 8% Convertible Second Lien Subordinated Secured DIP Financing Notes due 2016 (the "EFIH Second Lien DIP Notes Financing"). The consummation of the EFIH Second Lien Settlement continues to be subject to, among others, the bankruptcy court's approval of both (1) the incurrence of indebtedness and granting of second-priority priming liens relating to the EFIH Second Lien DIP Notes Financing and (2) the EFIH Second Lien Settlement. The terms of the EFIH Second Lien Settlement have also been amended to disclose that the Issuer has the right to determine whether or not any of the conditions to the consummation of the EFIH Second Lien Settlement were satisfied and to terminate or extend the EFIH Second Lien Settlement if any condition to such consummation was not satisfied or otherwise will not be satisfied on or prior to the Expiration Date or, with respect to conditions relating to obtaining regulatory approval (such as bankruptcy court approval), on or prior to the Settlement Date.

The Issuer has provided to the holders of the EFIH Second Lien Notes a supplement to the original offer to purchase amending the terms of the EFIH Second Lien Settlement as described in this press release.

Epiq Systems is serving as the Offer Agent and Depositary Agent, and may be contacted by telephone at (646) 282-2500 or toll free at (866) 734-9393 or by email at tabulation@epiqsystems.com (please reference "EFIH Second Lien Offer" in the subject line), including to obtain a copy of the supplement to the original offer to purchase.

*Other Information*

This press release will not constitute an offer to sell, or the solicitation of an offer to buy, any EFIH Second Lien Notes, the EFIH Second Lien DIP Notes Financing or any other security. The offer to participate in the EFIH Second Lien Settlement is being made only pursuant to the offer to purchase and the related letter of transmittal. The offer to participate in the EFIH Second Lien Settlement is not being made to persons in any jurisdiction in which the making or acceptance thereof would not be in compliance with the securities, blue sky or other laws of such jurisdiction.

**Nothing in this press release will constitute or be deemed to constitute a solicitation by any party of votes to approve or reject a Chapter 11 plan of reorganization. A solicitation with respect to votes to approve or reject a Chapter 11 plan of reorganization may only be commenced once a disclosure statement that complies with section 1125 of the United States Code, 11 U.S.C. §§101 et. seq., has been approved by the United States Bankruptcy Court for the District of Delaware.**

2

**Forward-Looking Statements**

This press release includes forward-looking statements within the meaning of the Private Securities Litigation Reform Act of 1995, which are subject to risks and uncertainties. All statements, other than statements of historical facts, are forward-looking statements. Readers are cautioned not to place undue reliance on forward-looking statements. Although we believe that in making any such forward-looking statement our expectations are based on reasonable assumptions, any such forward-looking statement involves uncertainties and is qualified in its entirety by reference to the discussion of risk factors under Item 1A, "Risk Factors" and the discussion under Item 7, "Management's Discussion and Analysis of Financial Condition and Results of Operations" in the Annual Reports on Form 10-K (and in the corresponding sections of any subsequent Quarterly Reports on Form 10-Q) filed by each of EFH Corp., EFIH and Energy Future Competitive Holdings Company LLC and the following important factors, among others, that could cause actual results to differ materially from those projected in such forward-looking statements:

- our ability to obtain the approval of the bankruptcy court with respect to motions filed in the bankruptcy proceedings, including with respect to the EFIH Second Lien Settlement, the EFIH Second Lien DIP Notes Financing and the transactions related thereto;

- the effectiveness of the overall restructuring activities pursuant to the bankruptcy filing and any additional strategies we employ to address our liquidity and capital resources;

- the terms and conditions of any reorganization plan that is ultimately approved by the bankruptcy court;

- the actions and decisions of creditors, regulators and other third parties that have an interest in the bankruptcy proceedings;

- the duration of the bankruptcy proceedings; and

- restrictions on us due to the terms of debtor-in-possession financing facilities and restrictions imposed by the bankruptcy court.

Any forward-looking statement speaks only at the date on which it is made, and except as may be required by law, we undertake no obligation to update any forward-looking statement to reflect events or circumstances after the date on which it is made or to reflect the occurrence of unanticipated events. New factors emerge from time to time, and it is not possible for us to predict all of them; nor can we assess the impact of each such factor or the extent to which any factor, or combination of factors, may cause results to differ materially from those contained in any forward-looking statement. As such, you should not unduly rely on such forward-looking statements.

-END-

**Corporate Communications:**
Allan Koenig
214-812-8080
Media.Relations@energyfutureholdings.com

**Investor Relations:**
Blake Holcomb
214-812-8005
Blake.Holcomb@energyfutureholdings.com

3

# EXHIBIT B

## Second Lien Opt-In Supplement

Supplement No. 1
(To Offer to Purchase dated May 9, 2014)

# ENERGY FUTURE INTERMEDIATE HOLDING COMPANY LLC
# EFIH FINANCE INC.

**Offer to Purchase for Cash Any and All of the Outstanding EFIH Second Lien Notes (as defined below)**

---

The Offer (as defined below) will expire at 5:00 p.m., New York City time, on July 3, 2014, unless extended or earlier terminated by the Company (as defined below) in its sole discretion (the "*Expiration Date*"). Holders of EFIH Second Lien Notes (as defined below) must tender their EFIH Second Lien Notes on or prior to the Expiration Date in order to receive the Tender Consideration (as defined below). In order to receive the Total Consideration (as defined below), holders of EFIH Second Lien Notes must tender their EFIH Second Lien Notes on or prior to 5:00 p.m., New York City time, on June 11, 2014, unless extended at the sole discretion of the Company (the "*Early Participation Date*"). Tenders of EFIH Second Lien Notes may be withdrawn at any time prior to the Early Participation Date but not thereafter, except in certain limited circumstances where withdrawal rights are required by law. The Offer is subject to, among other things, the approval of the Bankruptcy Court, and the Company does not intend to permit the Offer to expire on or prior to the date the EFIH Second Lien Settlement is heard, and approved, by the Bankruptcy Court.

---

This Supplement No. 1 is qualified in its entirety by reference to the Offer to Purchase, dated May 9, 2014, including the accompanying Letter of Transmittal and related instruction forms and letters of same date (collectively, the "*Original Offer to Purchase*"), pursuant to which Energy Future Intermediate Holding Company LLC ("*EFIH*") and EFIH Finance Inc. ("*EFIH Finance*" and, together with EFIH, the "*Company*" "*we*," "*us*" or "*our*"), both of which are wholly owned subsidiaries of Energy Future Holdings Corp. ("*EFH Corp.*"), are offering to purchase (the "*Offer*") from the holders (each, a "*Holder*") of our 11% Senior Secured Second Lien Notes due 2021 (the "*11% Second Lien Notes*") and our 11.750% Senior Secured Second Lien Notes due 2022 (the "*11.750% Second Lien Notes*" and collectively with the 11% Second Lien Notes, the "*EFIH Second Lien Notes*") upon certain terms and conditions, all of the EFIH Second Lien Notes held by such Holders. Terms used in this Supplement No. 1 that are not defined herein have the meanings set forth in the Original Offer to Purchase.

**Nothing herein shall constitute or be deemed to constitute a solicitation by any party of votes to approve or reject a Chapter 11 plan of reorganization for any debtor (a "*Chapter 11 Plan*"). A solicitation with respect to votes to approve or reject a Chapter 11 Plan may only be commenced once a disclosure statement that complies with section 1125 of the Bankruptcy Code has been approved by the Bankruptcy Court.**

Questions and requests for assistance or for additional copies of this Supplement No. 1 or the Original Offer to Purchase may be directed to the Dealer Managers or Offer Agent, at their respective address and telephone number set forth on the back cover of this Supplement No. 1.

June 9, 2014

---

Dealer Managers

| | | |
|---|---|---|
| **Citigroup** | **Deutsche Bank Securities** | **BofA Merrill Lynch** |
| **Morgan Stanley** | **Barclays** | **RBC Capital Markets** |
| **Mitsubishi UFJ Securities** | **Evercore** | |

**Prior Amendments**

On May 20, 2014, the Company issued a press release and filed with the SEC a Current Report on Form 8-K announcing that the early participation date for the Offer had been extended to 5:00 p.m., New York City time, on May 30, 2014.

On May 27, 2014, the Company issued a press release and filed with the SEC a Current Report on Form 8-K announcing (i) that the early participation date for the Offer had been further extended to 5:00 p.m., New York City time, on June 11, 2014, (ii) that the expiration date for the Offer had been extended to 5:00 p.m., New York City time, on July 3, 2014, (iii) corresponding changes to the Total Consideration and Tender Consideration as a result of extending the assumed Settlement Date from June 11, 2014 to July 9, 2014 and (iv) that tenders of EFIH Second Lien Notes may be withdrawn at any time prior to the Early Participation Date but not thereafter, except in certain limited circumstances where withdrawal rights are required by law.

As a result of the incorporation by reference of such Current Reports on Form 8-K, the terms of the Original Offer to Purchase were amended and are further amended as set forth therein. As of May 27, 2014, $2.0 million in aggregate principal amount of the EFIH Second Lien Notes had been tendered into the Offer.

**Amendments Pursuant to this Supplement No. 1**

As set forth in more detail below, this Supplement No. 1 further amends the Original Offer to Purchase to (1) provide that each of the Tender Consideration and the Total Consideration will not be decreased $0.14 per day for each day the actual Settlement Date occurs after the assumed Settlement Date of July 9, 2014, (2) delete and amend certain conditions to the consummation of the Offer in the Original Offer to Purchase such that it will no longer be a condition to the consummation of the Offer that the Company consummate, and receive the net proceeds of, the EFIH Second Lien DIP Notes Financing (although it will still be a condition to the consummation of the Offer that the Bankruptcy Court approve the EFIH Second Lien Settlement and EFIH Second Lien DIP Notes Financing) and (3) disclose that the Company has the right to determine whether or not any of the conditions were satisfied and to terminate or extend the Offer if any condition of the Offer was not satisfied or otherwise will not be satisfied on or prior to the Expiration Date or, with respect to conditions relating to obtaining regulatory approval, on or prior to the Settlement Date.

As a result, the following terms of the Original Offer to Purchase are further amended as follows:

**Deletion of Potential Daily Adjustments of Consideration**

The third paragraph of the cover page of the Original Offer to Purchase is deleted in its entirety and replaced with the following:

"Holders who validly tender their EFIH Second Lien Notes in the Offer on or prior to the Early Participation Date will be eligible to receive an amount, paid in cash, equal to $1,119.30 for each $1,000 principal amount of 11% Second Lien Notes tendered and $1,162.30 for each $1,000 principal amount of 11.750% Second Lien Notes tendered (such amounts, the "*Total Consideration*"). The Total Consideration includes an early participation payment (the "*Early Participation Consideration*") of $50.00 per $1,000 principal amount of EFIH Second Lien Notes payable in respect of EFIH Second Lien Notes validly tendered on or prior to the Early Participation Date. **Holders must validly tender their EFIH Second Lien Notes on or prior to the Early Participation Date in order to be eligible to receive the Total Consideration for such EFIH Second Lien Notes purchased in the Offer.** Holders who validly tender their EFIH Second Lien Notes after the Early Participation Date and on or prior to the Expiration Date will be eligible to receive an amount, paid in cash, equal to the Total Consideration less the Early Participation Consideration (the "*Tender Consideration*"). **Neither the Total Consideration nor the Tender Consideration is subject to any adjustment based on the actual date on which the Settlement Date occurs.** The Company will also pay any and all accrued and unpaid interest up to, but not including, the Settlement Date at the rate of 11% with respect to the 11% Second Lien Notes and 12.25% with respect to the 11.750% Second Lien Notes that are accepted for purchase in the Offer (the "*Accrued Interest*"). Such Accrued Interest includes 0.50% of additional interest payable pursuant to the registration rights agreement with respect to the 11.750% Second Lien Notes. The following table sets forth the Tender Consideration and the Total Consideration payable per $1,000 principal amount of EFIH Second Lien Notes tendered pursuant to the Offer:

| Securities | CUSIP Number(s) | Aggregate Principal Amount Outstanding | Tender Consideration(1) | Early Participation Consideration | Total Consideration(1) |
|---|---|---|---|---|---|
| 11% Second Lien Notes | 29269QAB3 | $406,392,000 | $1,069.30 | $50.00 | $1,119.30 |
| 11.750% Second Lien Notes | 29269QAD9 U29197AB3 | $1,750,000,000 | $1,112.30 | $50.00 | $1,162.30 |

(1) Does not include the Accrued Interest, which will be paid on all of the EFIH Second Lien Notes accepted for purchase in the Offer.

The paragraph directly across from the caption "Total Consideration" in the table under the heading "Summary of the Offer" on page 12 of the Original Offer to Purchase is deleted in its entirety and replaced with the following:

"Holders who validly tender their EFIH Second Lien Notes on or prior to the Early Participation Date will be eligible to receive an amount, paid in cash, equal to $1,119.30 for each $1,000 principal amount of 11% Second Lien Notes tendered and $1,162.30 for each $1,000 principal amount of 11.750% Second Lien Notes tendered. See "The Offer—Offer Consideration.""

The second sentence of the first paragraph under the heading "The Offer—Offer Consideration" on page 23 of the Original Offer to Purchase is deleted in its entirety and replaced with the following:

"The Total Consideration will be an amount, paid in cash, equal to $1,119.30 for each $1,000 principal amount of 11% Second Lien Notes tendered and $1,162.30 for each $1,000 principal amount of 11.750% Second Lien Notes tendered."

The fourth paragraph under the heading "The Offer—Offer Consideration" on page 24 of the Original Offer to Purchase is deleted in its entirety.

**Deletion and Amendment of Certain Conditions to the Consummation of the Offer**

The first sentence of paragraph eleven of the cover page of the Original Offer to Purchase is hereby deleted in its entirety and replaced with the following:

"The consummation of the Offer is subject to several conditions, including, among others, the approval by the Bankruptcy Court of (1) the Company's incurrence of indebtedness and granting of second-priority priming liens under the note purchase agreement relating to the EFIH Second Lien DIP Notes Financing (the "*EFIH Second Lien DIP Notes Facility*") and (2) the terms of the Offer and the EFIH Second Lien Settlement."

The second sentence of the second paragraph of "Summary—Recent Developments—EFIH Second Lien DIP Notes Financing" on page 4 of the Original Offer to Purchase is hereby deleted in its entirety and replaced with the following:

"Consummation of the Offer as set forth in this Offer to Purchase is expressly contingent upon, among other things, the Financing Approval Condition and the EFIH Second Lien Settlement Approval Condition."

The first sentence of the paragraph directly across from the caption "Conditions to Consummation of the Offer; Bankruptcy Court Approval" in the table under the heading "Summary of the Offer" on page 14 of the Original Offer to Purchase is hereby deleted in its entirety and replaced with the following:

"The consummation of the Offer is subject to several conditions, including, among others, the approval by the Bankruptcy Court of (1) the Company's incurrence of indebtedness and granting of second-priority priming liens under the EFIH Second Lien DIP Notes Facility and (2) the terms of the Offer and the EFIH Second Lien Settlement."

The first bullet under the risk factor entitled "The consummation of the Offer is subject to several conditions and there is no assurance that we will be able to satisfy those conditions or that we will be able to satisfy

those conditions on the timing contemplated by the Offer" on page 19 of the Original Offer to Purchase is hereby deleted in its entirety, and the second bullet point under such risk factor on page 20 of the Original Offer to Purchase is hereby deleted in its entirety and replaced with the following:

"•  the Company will have obtained one or more orders from the Bankruptcy Court to approve the Company's incurrence of indebtedness and granting of second-priority priming liens under the EFIH Second Lien DIP Notes Facility, the EFIH Second Lien Settlement, the Offer and the performance by EFIH and EFIH Finance under the Dealer Manager Agreement between the Company and the Dealer Managers, and such order or orders will be in full force and effect and not subject to any stay; and"

The fourth sentence of the paragraph under the heading "The Offer—Source and Amount of Funds" on page 24 of the Original Offer to Purchase is hereby deleted in its entirety.

The first paragraph under the heading "The Offer—Description of the Financing" on page 26 of the Original Offer to Purchase is hereby deleted in its entirety and replaced with the following:

"In connection with the Offer, the Company intends to consummate the EFIH Second Lien DIP Notes Financing. The consideration payable for tendered EFIH Second Lien Notes, including Accrued Interest, and the costs and expenses of the Offer, are expected to be paid with the proceeds of the EFIH Second Lien DIP Notes Financing together with cash on hand."

The text of section (i) under the heading "The Offer—Conditions to the Consummation of the Offer" on page 30 of the Original Offer to Purchase is hereby deleted in its entirety and replaced with the following:

"(i)    the Company will have obtained an order from the Bankruptcy Court to approve the incurrence of indebtedness and granting of second-priority priming liens under the EFIH Second Lien DIP Notes Financing, which will be in full force and effect and not subject to any stay (the *Financing Approval Condition*");"

The fourth sentence of the first paragraph on page 31 of the Original Offer to Purchase is hereby deleted in its entirety and replaced with the following:

"The Company also has the right to determine whether or not any of the conditions were satisfied and to terminate or extend the Offer if any condition of the Offer was not satisfied or otherwise will not be satisfied on or prior to the Expiration Date or, with respect to conditions relating to obtaining regulatory approval, on or prior to the Settlement Date."

The text of the last sentence under the heading "The Offer—Conditions to the Consummation of the Offer" on page 31 of the Original Offer to Purchase is hereby deleted in its entirety.

**No other amendments to the Original Offer to Purchase have been made by this Supplement No. 1.**

*The Offer Agent and the Depositary Agent for the Offer is:*

**EPIQ SYSTEMS**



| *By Registered, Certified or Express mail or Overnight Courier Service* | *By Electronic Mail in a Portable Document Format (a "pdf file")* |
|---|---|
| EFIH Second Lien Offer Processing<br>c/o Epiq Systems<br>757 Third Avenue, 3rd Floor<br>New York, NY 10017<br>Telephone: (646) 282-2500<br>Toll Free: (866) 734-9393<br>(ask for the Solicitation Group) | E-Mail Address:<br><br>tabulation@epiqsystems.com<br><br>With reference to "EFIH Second Lien" in the subject line |

Any questions regarding the terms of the Offer may be directed to the Dealer Managers or Offer Agent, and requests for additional copies of documentation related to the Offer, requests for copies of the Indentures and any questions or requests for assistance in tendering may also be directed to the Offer Agent. Holders of EFIH Second Lien Notes may also contact their brokers, dealers, commercial banks or trust companies for assistance concerning the Offer.

*The Dealer Managers for the Offer are:*

**CITIGROUP**

390 Greenwich Street, 1st Floor
New York, NY 10013
Call Collect: (212) 723-6106
Toll Free: (800) 558-3745
Attn: Liability Management Group

**DEUTSCHE BANK SECURITIES**

60 Wall Street, 2nd Floor
New York, NY 10005
Call Collect: (212) 250-7527
Toll Free: (855) 287-1922
Attn: Liability Management Group

**BofA MERRILL LYNCH**

214 N. Tryon Street, 21st Floor
Charlotte, NC 28255
Call Collect: (646) 855-2464
Toll Free: (888) 292-0070
Attn: Liability Management Group

**MORGAN STANLEY**

1585 Broadway
New York, NY 10036
Call Collect: (212) 761-1057
Toll Free: (800) 624-1808
Attn: Liability Management Group

**BARCLAYS**

745 Seventh Avenue, 5th Floor
New York, NY 10019
Telephone: (212) 528-7581
Toll Free: (800) 438-3242
Attn: Liability Management Group

**RBC CAPITAL MARKETS**

3 World Financial Center
200 Vesey Street, 8th Floor
New York, NY 10281
Call Collect: (212) 618-7822
Toll Free: (877) 381-2099
Attn: Liability Management

**MITSUBISHI UFJ SECURITIES**

1633 Broadway, 29th Floor
New York, NY 10019-6708
Call Collect: (212) 405-7481
Toll Free: (877) 744-4532
Attn: Liability Management Group

**EVERCORE**

55 East 52nd Street
New York, New York 10055
Call Collect: (212) 857-3100
Toll Free: (888) 387-2673
Attn: Chuck McMullan and
Jeremy Matican