

COLE, SCHOTZ, MEISEL, FORMAN & LEONARD P.A.

Nicholas J. Brannick
Associate

Reply to Delaware Office
Writer's Direct Line: 302-651-2006
Writer's Direct Fax: 302-574-2106
Writer's E-Mail: nbrannick@coleschotz.com

500 Delaware Avenue, Suite 1410
Wilmington, DE 19801
302-652-3131   302-652-3117 fax

New Jersey
—
New York
—
Maryland
—
Texas

June 23, 2014

**BY HAND DELIVERY AND ECF**

Hon. Christopher S. Sontchi
United States Bankruptcy Court
 for the District Court of Delaware
824 North Market Street, 5th Floor
Wilmington, Delaware 19801

Re:   *In re Energy Future Holdings Corp.*, 14-10979-CSS and
      *CSC Trust Company of Delaware v. Energy Future Intermediate
      Holding Company LLC*, Adv. Proc. No. 14-50363-CSS

Dear Judge Sontchi:

    Cole, Schotz, Meisel, Forman & Leonard, P.A. and Drinker Biddle & Reath LLP represent CSC Trust Company of Delaware, as successor indenture trustee (the "10% Trustee") for the 10% Senior Secured Notes Due 2020 issued by Energy Future Intermediate Holdings LLC and EFIH Finance Inc. (together, the "EFIH Debtors"). We are writing regarding a discovery dispute that has arisen between the 10% Trustee and the Ad Hoc Committee of (the "Ad Hoc Committee") EFIH Unsecured Noteholders (the "Noteholders") with regard to discovery relevant to three motions scheduled to be heard on June 30, 2013 (the "Hearing").[1] We write this letter in lieu of filing a formal motion in the hope of expeditiously resolving the dispute before the Hearing.

 A.   **Background Regarding Discovery**

    By way of background, on May 8, 2014, the 10% Trustee issued informal discovery requests (the "Informal Discovery") to the Ad Hoc Committee in connection with the EFIH Debtors' first day filings, including the First Lien DIP Financing Motion [D.I. 71]. The Informal Discovery is attached as Exhibit A. On May 15, 2014, the 10% Trustee commenced an adversary proceeding against the EFIH Debtors captioned *CSC Trust Company of Delaware v. Energy Future Intermediate Holding Company LLC*, Adv. Proc. No. 14-50363 (CSS) (the "Adversary

---

[1] The motions are: (i) Motion of Energy Future Holdings Corp., et al., for Entry of Orders Approving Certain EFIH Settlements and the Oncor TSA Amendment [D.I. 472] (the "Second Lien Settlement"); (ii) Motion of Energy Future Intermediate Holding Company LLC and EFIH Finance Inc. for Entry of an Order (A) Approving Postpetition Second Lien Financing, (B) Granting Liens and Providing Superpriority Administrative Expense Claims, (C) Authorizing the Use of Cash Collateral, (D) Authorizing the EFIH Second Lien Repayment, (E) Authorizing Entry into and Payment of Fees Under the Commitment Letter, and (F) Modifying the Automatic Stay [D.I. 477] (the "Second Lien DIP Financing"); and (iii) Motion of Energy Future Holdings Corp., et al., for Entry of an Order Authorizing the RSA Debtors to Assume the Restructuring Support Agreement and Modifying the Automatic Stay [D.I. 505].

Cole, Schotz, Meisel, Forman & Leonard, P.A.
Attorneys at law

Hon. Christopher S. Sontchi
June 23, 2014
Page 2

Proceeding"). On May 21, 201, the 10% Trustee issued its First Set of Document Requests (the "Document Requests"), to the Ad Hoc Committee, through its counsel Akin Gump Strauss Hauer & Feld LLP, both in the EFIH Debtors' main case [D.I. 577] and in the Adversary Proceeding [D.I. 6]. A copy of the Document Requests is attached as Exhibit B.

Between May 15 and 22, the Ad Hoc Committee produced documents in response to the Informal Requests. On May 19, 2014, counsel for the 10% Trustee sent an e-mail to counsel for the Ad Hoc Committee, among others, noting certain deficiencies in the production of documents through that date, and stating that the 10% Trustee is "entitled to discovery of the parties, not advisors. That means a review of and production from the files of actual business people … is required." See Exhibit C. Thus, the Ad Hoc Committee has known for over a month that the 10% Trustee is seeking internal e-mail exchanges that are responsive to its document requests.

On June 2, 2014, the Ad Hoc Committee submitted its Responses and Objections to the Document Requests (the "Responses and Objections"). A copy of the Responses and Objections is attached as Exhibit D.

After reviewing the documents produced by the Ad Hoc Committee and the Responses and Objections, counsel for the 10% Trustee determined that the production of the Ad Hoc Committee suffered several deficiencies. These deficiencies were described in a letter sent by counsel for the 10% Trustee to counsel for the Ad Hoc Committee on June 17, 2014 (the "Deficiency Letter"). A copy of the Deficiency Letter is attached as Exhibit E. Among the most critical deficiencies affecting the ability of the 10% Trustee to prepare for the Hearing[2] are: (i) the failure of the Ad Hoc Committee to produce any internal communications or documents from within the specific firms that are members (each a "Member" and together the "Members")[3] of the Ad Hoc Committee; (ii) the failure of the Ad Hoc Committee to produce any Bloomberg instant messages or other similar electronic modes of communication widely used in the industry; (iii) the unjustified limitation of the "look-back" period for documents to January 28, 2014, despite the Document Requests seeking documents from January 1, 2013 forward; and (iv) the assertion of a broad "common interest privilege" as the basis for withholding documents without the provision of a privilege log compliant with Civil Rule 26(b)(5).

Counsel for the parties held a telephonic meet and confer on June 18, 2014. During that meet and confer, counsel for the Ad Hoc Committee told counsel for 10% Trustee that internal communications are not relevant to the issues before the Court for the Hearing or the Adversary Proceeding and that, essentially, the 10% Trustee was searching for a "needle in a haystack."

---

[2] The Ad Hoc Committee's responses to the discovery issued by the 10% Trustee are deficient in other respects with regard to information relevant to the Adversary Proceeding. To expedite the resolution of deficiencies related to and to stay focused on the discovery needed for the Hearing, those additional deficiencies are not addressed in this letter. The 10% Trustee reserves its rights with regard to all other deficiencies not addressed in this letter.

[3] The Ad Hoc Committee and its counsel have yet to file a notice pursuant to Bankruptcy Rule 2019. Upon information and belief, the members of the Ad Hoc Committee are: York Capital Management, Avenue Capital Group, Third Avenue Management, GSO Capital Partners, and P. Schoenfeld Asset Management.

Cole, Schotz, Meisel, Forman & Leonard, P.A.
Attorneys at law

Hon. Christopher S. Sontchi
June 23, 2014
Page 3

Counsel for the Ad Hoc Committee further posited that it would not indulge the 10% Trustee in such a search because of the costs involved. Counsel further stated that the categories with respect to which the Ad Hoc Committee wholesale refused to produce documents (i.e. Document Requests 9, 23 and 31) were not relevant to the issues in the Adversary Proceeding. In response, counsel for the 10% Trustee indicated they were amenable to reasonable limitations on the custodians whose communications would be reviewed and produced, the relevant search terms and the appropriate date range to be applied in searching for responsive documents.[4] Counsel for the Ad Hoc Committee said that a formal response to the Deficiency Letter would be transmitted within 24 hours.

On June 20, 2014, at approximately 11:00 p.m., counsel for the Ad Hoc Committee issued its formal written response (the "Response Letter").[5] A copy of that letter is attached as Exhibit F. The Ad Hoc Committee confirms its preposterous position that all internal communications within its individual Members are irrelevant to the matters to be adjudicated at the Hearing ***regardless of the content of those communications***. The Ad Hoc Committee also adopts the view that no communications prior to January 28, 2014 are relevant because "[t]he negotiations over the transaction that became the RSA did not begin until late January 2014."

Throughout the Response Letter, the Ad Hoc Committee asserts that the 10% Trustee has been dilatory in raising its concerns regarding deficiencies in the Ad Hoc Committee's discovery. Counsel for the Ad Hoc Committee has known since May 19, however, of the 10% Trustee's position that internal e-mail communications should be searched and provided. The Ad Hoc Committee's contrary position was not fully and formally expressed until, at the earliest, its submission of the Responses and Objections. Thus, the Ad Hoc Committee's accusations are unfounded, disingenuous and transparently aimed at avoiding its obligations to comply with legitimate discovery requests.

B.    **Refuting the Ad Hoc Committee's Unreasonable Positions**

The Ad Hoc Committee has offered no legal authority—because no such authority exists—for its unsubstantiated conclusion that the internal e-mails of Members of the Ad Hoc Committee are irrelevant to any of the issues before the Court at the Hearing simply because they are internal correspondence. Essentially the Ad Hoc Committee asserts that it is the source of a document, rather than its content, that is determinative of relevance. Such an extreme position is directly contrary to the relatively low threshold for discovery provided under Federal Rule of Civil Procedure 26(b)(1). *See* F.R.C.P. 26(b)(1); F.R.B.P. 7026. *See also Flagg v. City of Detroit*, 2008

---

[4] In fact, counsel for the 10% Trustee expressly stated they would be willing to limit custodians to those persons who were key negotiators of the Second Lien DIP Financing and Second Lien Settlement.

[5] As set forth above, the request for the Courts' intervention into the parties' discovery dispute is limited solely to the urgent matters, i.e., the matters scheduled for consideration at the Hearing. To the extent there are other issues discussed in the Response Letter that are not resolved between the parties, they will be brought to the Court's attention by way of separate request.

Cole, Schotz, Meisel, Forman & Leonard, P.A.
Attorneys at law

Hon. Christopher S. Sontchi
June 23, 2014
Page 4

WL 787039, at *3-4 (E.D. Mich. Mar. 20, 2008) (rejecting defendants' argument that all communications among city employees were necessarily irrelevant without regard to their content).

While it is true that the Ad Hoc Committee has produced various correspondence between Members and the EFIH Debtors (or their representatives or equity sponsors), it is possible that those e-mails were carefully choreographed to avoid containing certain information that, at a minimum, is discoverable. For instance, it is unlikely that the Members would exchange e-mails with external parties that would be subject to discovery containing information damaging to their position in these cases, but they may well have done so internally. Indeed, the Members' most honest reflections on the issues before this Court are likely contained in internal messages. *Cf. In re Motor Fuel Temperature Sales Practices Lit.*, 707 F. Supp.2d 1145, 1161-62 (D. Kan. 2010) *appeal dismissed* 641 F.3d 470 (10th Cir. 2011) (internal communications were highly relevant to conspiracy claims and not protected by First Amendment associational privilege). Those communications are directly relevant to whether the EFIH Debtors and the Ad Hoc Committee have acted in good faith, and whether this Court can make such a finding with regard to the Second Lien DIP Financing. *See* 11 U.S.C. § 364(e); [D.I. 994-1 at ¶ J].

Similarly, the Ad Hoc Committee has provided no legal basis for self-selecting January 28, 2014 as the date prior to which it will not produce documents. The 10% Trustee limited its request to documents after January 1, 2013. According to the EFIH Debtors' own SEC filings, the EFIH Debtors (or their affiliates or equity sponsors) were engaged in negotiations with various creditor constituencies as early as April of 2013 regarding restructuring the EFIH Debtor's debt. *See, e.g.,* 8-K (Oct. 15, 2013) ("[A]s disclosed in the Companies' filings with the Securities and Exchange Commission, since April 2013, the Companies and their professional advisors have engaged in additional discussions with the professional advisors of the TCEH Creditors and EFIH Creditors.").[6] In fact, it appears as though Noteholders, some of whom may or may not be members of the Ad Hoc Committee, made a restructuring proposal to the EFIH Debtors on October 10, 2013. *See id.* at Ex. 99.3.

Finally, the Ad Hoc Committee has asserted a "common interest privilege" and absurdly claims in the Response Letter that the burden is on the 10% Trustee to explain why that assertion is inappropriate. The Ad Hoc Committee fails to articulate, among other things, (i) when it believes the alleged "common interest privilege" attached; (ii) all of the parties with whom the alleged "common interest privilege" exists; (iii) the nature and scope of the documents to which the alleged "common interest privilege" attaches; and (iv) the documents withheld on account of this alleged "common interest privilege". The Ad Hoc Committee has the burden of establishing that any documents withheld are subject to the common interest privilege. *See, In re Leslie Controls, Inc.*, 437 B.R. 493, 495 (Bankr. D. Del. 2010) ("The party invoking the protection of the common interest doctrine must establish: (1) the communication was made by separate parties in the course of a matter of common interest, (2) the communication was designed to further that effort, and (3) the privilege has not otherwise been waived."). Thus, the Ad Hoc Committee must set forth the

---

[6] *Available at* http://www.sec.gov/Archives/edgar/data/1023291/000119312513398858/d611938d8k.htm.

Cole, Schotz, Meisel, Forman & Leonard, P.A.
Attorneys at law

Hon. Christopher S. Sontchi
June 23, 2014
Page 5

basis upon which the common interest privilege is professed and should provide a privilege log in compliance with Federal Rule of Civil Procedure 26(b)(5); the Ad Hoc Committee cannot avoid this obligation by simply proclaiming documents subject to this alleged "common interest privilege" are irrelevant. For the avoidance of doubt, the 10% Trustee disputes any assertion that the common interest privilege attached to the Ad Hoc Committee's entire negotiations with the EFIH Debtors, particularly with regard to the Second Lien DIP Financing, as to which there was no commitment made until April 28, 2014; the day before the Petition Date. Simply stated, until the parties reached agreement on the terms of the RSA and the Second Lien DIP Financing, they were adversaries whose communications were not cloaked with any privilege.

In light of these significant, and unjustifiable, deficiencies in the responses of the Ad Hoc Committee to the discovery requested by the 10% Trustee, and the impending Hearing, the 10% Trustee respectfully requests a telephonic conference with Your Honor to address these issues at the Court's earliest convenience.

We thank the Court in advance for its time and consideration of this matter.

Respectfully submitted,

/s/ Nicholas J. Brannick
    Nicholas J. Brannick (DE No. 5721)

and

/s/ Warren A. Usatine
    Warren A. Usatine (admitted *pro hac vice*)

Enclosures

cc:    Via Electronic Mail

       See attached service list.