**EXHIBIT B**

B257 (Form 257 – Subpoena to Produce Documents, Information, or Objects or To Permit Inspection in a Bankruptcy Case or Adversary Proceeding) (12/13)

# UNITED STATES BANKRUPTCY COURT

District of __DELAWARE__

In re __ENERGY FUTURE HOLDINGS CORP et al.__
_____
Debtor

Case No. __14-10979 (CSS)__

Chapter __11__

_(Complete if issued in an adversary proceeding)_
CSC TRUST CO. OF DELAWARE
_____
Plaintiff
v.
ENERGY FUTURE INTERMEDIATE HOLDINGS COMPANY, LLC, ET AL.
_____
Defendant

Adv. Proc. No. __14-50363 (CSS)__

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A BANKRUPTCY CASE (OR ADVERSARY PROCEEDING)

The Ad Hoc Committee of EFIH Unsecured Note Holders c/o Ira S. Dizengoff, Esq.,

To: Akin Gump Strauss Hauer & Feld LLP, One Bryant Park, Bank of America Tower, New York, NY 10036
_____
_(Name of person to whom the subpoena is directed)_

[X] _Production_: **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:    See attached document request.

| PLACE Cole, Schotz, Meisel, Forman & Leonard, P.A. Attn: Warren A. Usatine, Esq. 900 Third Avenue, 16th Floor, New York, NY 10022 | DATE AND TIME 5/28/14 by 4:00 p.m. |
|---|---|

[ ] _Inspection of Premises_: **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| PLACE | DATE AND TIME |
|---|---|

The following provisions of Fed. R. Civ. P. 45, made applicable in bankruptcy cases by Fed. R. Bankr. P. 9016, are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and 45(g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: __May 21, 2014__

CLERK OF COURT

OR

_____
Signature of Clerk or Deputy Clerk

_Nicholas J.B._
_Attorney's signature_

The name, address, email address, and telephone number of the attorney representing _(name of party)_
CSC Trust Company of Delaware as Indenture Trustee
Nicholas J. Brannick, Cole, Schotz, Meisel, Forman & Leonard, P.A., 500 Delaware Ave., Suite 1410, Wilmington, DE 19801, nbrannick@coleschotz.com, 302.651.2006
, who issues or requests this subpoena, are:

## Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things, or the inspection of premises before trial, a notice and a copy of this subpoena must be served on each party before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

B257 (Form 257 – Subpoena to Produce Documents, Information, or Objects or To Permit Inspection in a Bankruptcy Case or Adversary Proceeding) (Page 2)

## PROOF OF SERVICE
**(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)**

I received this subpoena for *(name of individual and title, if any)*: _____

on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

_____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of $ _____ .

My fees are $ _____ for travel and $_____ for services, for a total of $_____ .

I declare under penalty of perjury that this information is true and correct.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information concerning attempted service, etc.:

## Federal Rule of Civil Procedure 45(c), (d), (e), and (g) (Effective 12/1/13)
### (made applicable in bankruptcy cases by Rule 9016, Federal Rules of Bankruptcy Procedure)

**(c) Place of compliance.**

*(1) For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  (A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  (B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
    (i) is a party or a party's officer; or
    (ii) is commanded to attend a trial and would not incur substantial expense.

*(2) For Other Discovery.* A subpoena may command:
  (A) production of documents, or electronically stored information, or things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  (B) inspection of premises, at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

*(1) Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

*(2) Command to Produce Materials or Permit Inspection.*
  *(A) Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  *(B) Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    (i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    (ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

*(3) Quashing or Modifying a Subpoena.*
  *(A) When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
    (i) fails to allow a reasonable time to comply;
    (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
    (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    (iv) subjects a person to undue burden.
  *(B) When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
    (i) disclosing a trade secret or other confidential research, development, or commercial information; or

    (ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  *(C) Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    (i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    (ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

*(1) Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
  *(A) Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  *(B) Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  *(C) Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  *(D) Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

*(2) Claiming Privilege or Protection.*
  *(A) Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    (i) expressly make the claim; and
    (ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  *(B) Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.
…
**(g) Contempt.** The court for the district where compliance is required – and also, after a motion is transferred, the issuing court – may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013)

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | Chapter 11 |
| ENERGY FUTURE<br>HOLDINGS CORP., *et al.*, | Case No. 14-10979 (CSS) |
| *Debtors.* | (Jointly Administered) |
| CSC TRUST COMPANY OF<br>DELAWARE, as INDENTURE TRUSTEE, | |
| *Plaintiff,* | |
| v. | Adversary Proceeding<br>No. 14-50363 (CSS) |
| ENERGY FUTURE INTERMEDIATE<br>HOLDING COMPANY LLC and<br>EFIH FINANCE INC., | |
| *Defendants.* | |

## FIRST SET OF DOCUMENT REQUESTS TO AD HOC COMMITTEE OF EFIH UNSECURED NOTEHOLDERS BY CSC TRUST COMPANY OF DELAWARE, AS INDENTURE TRUSTEE

Pursuant to Rules 45 of the Federal Rules of Civil Procedure (the "Federal Rules"), as made applicable to these proceedings 9016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), CSC Trust Company of Delaware, as Indenture Trustee (the "10% Indenture Trustee") for the 10% Senior Secured Notes Due 2020 issued by Energy Future Intermediate Holdings LLC and EFIH Finance Inc. (together, the "EFIH Debtors") under the Indenture dated as of August 17, 2010 (together

1

with all supplements, amendments, and exhibits, the "10% Indenture"), hereby directs the following first set of document requests (the "Document Requests") to the Ad Hoc Committee of EFIH Unsecured Noteholders (described herein), to be responded to separately and fully by serving written responses in accordance with Federal Rule 45, to the offices of Cole, Schotz, Meisel, Forman & Leonard, P.A., 900 Third Avenue, 16th Floor, New York, NY 10022, Attn: Warren A. Usatine, Esq., **on or before May 28, 2014, at 4:00 P.M. (Prevailing Eastern Time).**

## INSTRUCTIONS

(1)    You are requested to produce all Documents responsive to these Document Requests in your possession, custody, or control, wherever located, including without limitation, those in the possession, custody or control of your professionals and affiliates, whether or not such documents were prepared by or for you. Where knowledge, information or documents in your possession, custody or control are requested or inquired of, such request or inquiry includes knowledge, information or documents in the possession, custody or control of each of your current and former agents, appointees, employees, representatives, consultants, attorneys and all other persons acting or purporting to act for or on behalf of you, and any other individuals or entities from which you may obtain documents.

(2)    Each Document Request shall be construed independently and without reference to any other request.  Limitations in one request shall not limit any other request.

(3)     Each Document Request shall be deemed to include a request for all actual, proposed, or contemplated envelopes, transmittal sheets, cover letters, exhibits, enclosures, or attachments to the document, in addition to the document in its full and unexpurgated form.

(4)     If any part of the Document Requests cannot be responded to in full, please respond to the extent possible, specifying the reason(s) for your inability to respond to the remainder and stating whatever information or knowledge you have relating to the portion to which you do not respond.

(5)     If any of the requested documents were, but no longer are, in your custody or possession or subject to your control, state whether such document: (a) is missing or lost, (b) has been destroyed, (c) has been transferred voluntarily or involuntarily to any other person or entity or (d) has been otherwise disposed of, and, in each instance, explain the circumstances surrounding the disposition thereof and provide a description of the nature, content, date, author(s) and recipient(s) of the document.

(6)     In the event that any document, or any portion of any document, within the scope of this request for production is withheld from production or redacted upon a claim of privilege, work product, or for any other reason, a privilege log shall be created and served as required by Federal Rule 45(e)(2)(A)(ii), made applicable to these proceedings by Bankruptcy Rule 9016.

(7)     To the extent any responding party intends to employ an electronic search to help locate responsive or potentially responsive documents, you are required to negotiate your proposed search terms and methodology with the Indenture Trustee and

come to an agreement regarding the same, and otherwise comply in full with Rule 7026-3(e) of the Local Rules for the United States Bankruptcy Court, District of Delaware.

(8)    Documents should be segregated according to the number of the Document Request to which they are responsive or produced in the manner they are kept in the ordinary court of business. Documents attached to each other should not be separated.

(9)    Each Document Request herein includes a request for exact copies of all disks, CDs, DVDs, and other removable media containing any information responsive to such Document Request. Electronic records and computerized information should be produced in an intelligible format or together with a sufficient description of the system of program from which each was derived to permit rendering the material legible.

(10)    These Document Requests shall be deemed continuing in character, so as to require further and supplemental production if additional documents are obtained or become accessible after the time of initial production.

(11)    For the avoidance of doubt, requests herein include requests for Documents of your representatives, since you have the ability to obtain them. For example, documents from law firms that worked on the relevant exchanges and offerings must be turned over. Please identify custodians likely to have materials responsive to our requests. After reviewing your initial production in response to these Document Requests, we reserve the right to designate additional custodians if it appears reasonably likely that such potential custodians are in possession of material responsive to these Document Requests.

(12)    If you object to a Document Request, the objection is to be stated in full, along with a citation of any legal authority relied upon.  If an objection is stated with respect to only a portion of a Document Request, the remaining portion of the Document Request is to be answered notwithstanding the objection.  If you object to the scope or time period of a Document Request, the objection is to be stated and the Document Request answered for the scope and time period which you believe is appropriate.  If in answering these Document Requests you assert or believe there are any ambiguities or any vagueness in the construction or wording of either a Document Request, Instruction, or Definition, set forth the matter, construction or wording that you believe to be ambiguous or vague, and the interpretation or construction you used in responding to the Document Request.

(13)    These Document Requests are being propounded upon the Ad Hoc Committee and its members, each as members of the Ad Hoc Committee and in their individual capacity as holders of EFIH Senior Toggle Notes (defined below).

(14)    Unless otherwise indicated in a Document Request, the relevant time period for reach Document Requests is the period from January 1, 2013 through the present.

## **DEFINITIONS**

The following definitions of terms apply to these Document Requests.  Unless otherwise defined herein, all words and phrases used herein shall be accorded their usual meaning and shall be interpreted in their common, ordinary sense.

(1)     The singular form of a word shall be considered to include also within its meaning the plural form of a word and vice versa; and the use of any tense of a any verb shall be considered to include also within its meaning all other tenses of the verb.

(2)     "Ad Hoc Committee" means the self-identified Ad Hoc Committee of EFIH Unsecured Noteholders currently represented by the law firm of Akin Gump Strauss Hauer & Feld LLP that is comprised of holders of EFIH Senior Toggle Notes and, upon information and belief, including without limitation Avenue, GSO, and York.

(3)     "And" and "or" shall be construed either conjunctively or disjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed outside the scope. "Any" and "all" are used in their inclusive sense.

(4)     "Applicable Premium" has the meaning ascribed to it in the applicable indenture.

(5)     "Bankruptcy Cases" means the voluntary chapter 11 proceedings commenced by Debtors and their subsidiaries in the United States Bankruptcy Court for the District of Delaware, which are being jointly administered under Case No. 14-10979(CSS).

(6)     "Concerning" shall mean refers to, relates to, comments on, reflects, mirrors, addresses, discusses, embodies, constitutes, contains information on, indicates, or pertains to, in any way, directly or indirectly, a document subject, topic, issue, act or occurrence, and includes, without limitation, comprising, constituting, analyzing, evidencing, comparing, summarizing, discussing, showing, referring to, forming the basis

of, containing, in connection with, responding to, demonstrating, declaring, describing, or supporting any event, act, or occurrence.

(7)    "DIP Financing" means any contemplated, potential or actual debtor-in-possession financing agreements concerning Debtors in the Bankruptcy Cases, including any such financing that is the subject of the EFIH First Lien DIP Motion or the EFIH Second Lien DIP Motion.

(8)    "Document" is used in the broadest sense contemplated by Bankruptcy Rule 7034 and Federal Rule of Civil Procedure 34 and includes, but is not limited to:

i)   correspondence, memoranda, notes, calendar or diary entries, statistics, letters, electronic mail, text messages, notebooks, telegrams, journals, minutes, agendas, notices, announcements, instructions, charts, schedules, requests, contracts, physical evidence, prospective contracts, agreements, prospective agreements, licenses, prospective licenses, order forms, books, accounts, records, reports, studies, surveys, experiments, analyses, checks, cancelled checks, wire confirmations, statements, receipts, returns, vouchers, statements, credit memoranda, sales slips, promissory notes, summaries, pamphlets, prospectuses, manuals, brochures, announcements, certificates, drawings, plans, inter-office and intraoffice communications, and offers;

ii)  notations in any form made of conversations, telephone calls, meetings, negotiations or other communications;

iii) bulletins, circulars, schedules, lists, guides, printed matter (including newspapers, magazines, and other publications, articles and clippings

therefrom), press releases, computer printouts, teletypes, telecopies, telexes, invoices, ledgers, balance sheets, financial statements or worksheets;

iv) electronic, mechanical, or optical records or representations of any kind (including tapes, cassettes, discs, hard drives, recordings, voice mail, electronic mail, text messages, computer-stored data or material), or transcriptions thereof; and

v) all drafts, alterations, modifications, changes and amendments of any of the foregoing and any material underlying, supporting or used in the preparation of any document.

(9)    "EFH" means Energy Future Holdings Corp. and any of its Representatives.

(10)    "EFH Equity Owners" shall have the meaning ascribed to it in the First Day Declaration.

(11)    "EFIH" means Energy Future Intermediate Holding Company LLC and any of its Representatives.

(12)    "EFIH 6.875% Indenture" means the Indenture dated as of August 14, 2010 between EFIH and EFIH Finance, as issuers, and The Bank of New York Mellon Trust Company, N.A., as the original indenture trustee, and all supplements, amendments, and exhibits thereto.

(13)    "EFIH 6.875% Notes" means the 6.875% Senior Secured Notes Due 2017 issued by EFIH and EFIH Finance under the 6.875% Indenture.

(14)   "<u>EFIH 10% Indenture</u>" means the Indenture dated as of August 17, 2010 between EFIH and EFIH Finance, as issuers, and The Bank of New York Mellon Trust Company, N.A., as the original indenture trustee, and all supplements, amendments, and exhibits thereto.

(15)   "<u>EFIH 10% Notes</u>" means the 10.000% Senior Secured Notes Due 2020 issued by EFIH and EFIH Finance under the 10% Indenture.

(16)   "<u>EFIH Debtors</u>" means, collectively, EFIH and EFIH Finance and their respective Representatives.

(17)   "<u>EFIH Finance</u>" means EFIH Finance Inc. and any of its Representatives.

(18)   "<u>EFIH First Lien DIP Financing</u>" has the meaning ascribed to it in the EFIH DIP Motion.

(19)   "<u>EFIH First Lien DIP Motion</u>" means the Motion of Energy Future Intermediate Holding Company LLC and EFIH Finance, Inc. for Entry of (I) an Interim Order (A) Approving Certain Fees Related to Postpetition Financing and Granting Such Fees Administrative Expense Priority and (B) Scheduling a Final Hearing; and (II) a Final Order (A) Approving Postpetition Financing, (B) Granting Liens and Providing Superpriority Administrative Expense Claims, (C) Authorizing the Use of Cash Collateral, (D) Authorizing the EFIH First Lien Refinancing, (E) Authorizing Issuance of Roll-Up Debt to the Extent Authorized by the Settlement Motion, (F) Determining the Value of Secured Claims, and (G) Modifying the Automatic Stay filed in the Bankruptcy Cases [D.I. 74].

(20)    "EFIH First Lien Settlement" has the meaning ascribed to the term "First Lien Settlement" in EFIH First Lien Settlement Motion.

(21)    "EFIH First Lien Settlement Motion" means the Motion of Energy Future Holdings Corp., *et al.* for Entry of Orders Approving Certain EFIH Settlements and the Oncor TSA Amendment, filed in the Bankruptcy Cases [D.I. 472].

(22)    "EFIH First Lien Tender Offer" means that certain tender offer launched by the EFIH Debtors on or about May 7, 2014 in connection with the EFIH First Lien Settlement, including the Information Memorandum filed in the Bankruptcy Cases [D.I. 363-1].

(23)    "EFIH Second Lien DIP Facility" has the meaning ascribed to it in the EFIH Second Lien DIP Motion.

(24)    "EFIH Second Lien DIP Motion" means the Motion of Energy Future Intermediate Holding Company LLC and EFIH Finance Inc. for Entry of an Order (A) Approving Postpetition Second Lien Financing, (B) Granting Liens and Providing Superpriority Administrative Expense Claims, (C) Authorizing the Use of Cash Collateral, (D) Authorizing the EFIH Second Lien Repayment, (E) Authorizing Entry Into and Payment of Fees Under the Commitment Letter, and (F) Modifying the Automatic Stay, filed in the Bankruptcy Cases [D.I. 477].

(25)    "EFIH Second Lien Indenture" means the Indenture dated as of April 25, 2011 between EFIH and EFIH Finance, as issuers, and The Bank of New York Mellon Trust Company, N.A., as original indenture trustee, and all supplements, amendments, and exhibits thereto.

(26)    "EFIH Second Lien Notes" means collectively the 11.0% senior secured second lien notes due 2021 issued by EFIH and EFIH Finance under the Second Lien Indenture and the 11.75% senior secured second lien notes due 2022 issued by EFIH and EFIH Finance under the Second Lien Indenture.

(27)    "EFIH Second Lien Settlement" has the meaning ascribed in the EFIH First Lien DIP Motion.

(28)    "EFIH Second Lien Tender Offer" means that certain tender offer launched by the EFIH Debtors on or about May 9, 2014 in connection with the EFIH Second Lien Settlement, including, but not limited to, the Offer Memorandum filed in the Bankruptcy Cases [D.I. 400-1].

(29)    "EFIH Senior Toggle Indenture" means the Indenture dated as of December 5, 2012 between EFIH and EFIH Finance, as issuers, and The Bank of New York Mellon Trust Company, N.A., as trustee, and all supplements, amendments, and exhibits thereto.

(30)    "EFIH Senior Toggle Notes" the 11.25%/12.25% unsecured senior toggle notes due 2018, issued by EFIH and EFIH Finance pursuant to the Senior Toggle Indenture.

(31)    "EFIH Unexchanged Notes Indenture" means the Indenture dated as of November 16, 2009 between EFIH and EFIH Finance, as issuers, and The Bank of New York Mellon Trust Company, N.A., as trustee, and all supplements, amendments, and exhibits thereto.

(32)    "EFIH Unexchanged Notes" means the 9.75% fixed senior notes due 2019 issued by EFIH and EFIH Finance under the Unexchanged Notes Indenture.

(33)    "EFIH Unsecured Notes" means collectively the EFIH Senior Toggle Notes and the EFIH Unexchanged Notes.

(34)    "Exchange Offer(s)" means the series of transactions from July 2010 to January 2013 through which EFIH issued and/or offered the 6.875% Notes or the 10% Notes in exchange for preexisting debt obligations or for cash.

(35)    "First Day Declaration" means the Declaration of Paul Keglevic, Executive Vice President, Chief Financial Officer, and Co-Chief Restructuring Officer of Energy Future Holdings Corp., *et al.*, in Support of First Day Motions, filed in the Bankruptcy Cases [D.I. 98].

(36)    "Including" means including without limitation.

(37)    "Offering Memoranda" means the offering memoranda prepared in accordance with the issuance of the 6.875% Notes or 10% Notes.

(38)    "Oncor" means Oncor Electric Delivery Holdings Company LLC and Oncor Electric Delivery Company LLC and of their parents, subsidiaries, affiliated companies, and Representatives.

(39)    "Person" and "Entity" each and both mean any natural person or any business, legal, or governmental entity, corporation, or association, including trusts, estates, and any other such entities.

(40)    "Plan Restructuring Documents" has the meaning ascribed in the RSA.

(41)    "Representatives" means, with respect to any Person or Entity, such Person's or Entity's employees or former employees, agents or former agents, counsel or former counsel, accountants or former accountants, advisers or former advisers (including, but not limited to financial advisers), representatives or former representatives, directors or former directors, and/or officers or former officers and/or any other person(s) acting or purporting to act on its behalf.

(42)    "RSA" means the Restructuring Support and Lock-Up Agreement, attached as Exhibit D to the First Day Declaration.

(43)    "TCEH" means Texas Competitive Electric Holdings Company LLC, and any of its parents, subsidiaries, affiliated companies, and Representatives.

(44)    The terms "You," "Your," and "Yourself" refer to the Ad Hoc Committee, each member of the Ad Hoc Committee, all Representatives of the foregoing, the person or persons producing the documents on its or their behalf and any present or former officer, employee, agent, servant, attorney, investment banker, financial advisor, representative or other person acting for or on behalf of said party or parties.

(45)    Any reference to a Person or Entity shall include references to any of the Person's or Entity's past or present principals, members, shareholders, officers, managers, affiliates, subsidiaries, divisions, branches, agents, representatives, attorneys, testifying or non-testifying experts, employees, servants, consultants, contractors, predecessors, successors and assigns.

(46)    Any terms not defined herein or in the Document Requests shall have the meaning ascribed to them in the RSA, which definitions are incorporated herein by reference.

## DOCUMENT REQUESTS

(1)    All Documents identifying the holders of the EFIH Senior Toggle Notes and the amount held by each such holder of EFIH Senior Toggle Notes.

(2)    A complete copy of the EFIH Senior Toggle Indenture, including all amendments or modifications thereto and all documents incorporated therein by reference.

(3)    All Documents concerning the drafting, negotiation, terms and/or issuance of notes under, and of SEC Form S-4 registration statements, prospectuses, offering memoranda, information statements and other exchange offering materials in connection with, the EFIH Senior Toggle Indenture and/or any indenture that was used as a precedent or model for any of the foregoing including all communications with holders or prospective holders, committees or groups of such holders at or before the time of the exchange offers or original issuances, as applicable.

(4)    All drafts of, and documents sufficient to identify all persons who participated in the drafting of, the EFIH Senior Toggle Notes Indenture and the form of the Senior Toggle Notes, including any indenture that was used as a precedent or model for any of the foregoing.

(5)    All communications between, among or within the Ad Hoc Committee, its members, its Representatives or any Representative of any member of the Ad Hoc

Committee, on the one hand, and any of the EFIH Debtors, EFH Equity Owners, the EFIH Unsecured Noteholders, the Consenting Fidelity EFIH First Lien Noteholders, the Consenting Non-Fidelity EFIH First Lien Noteholders, the EFIH Second Lien Noteholders (or committees or groups of holders of any of the foregoing), Fidelity, PIMCO or the respective Representatives of any of the foregoing, on the other hand, regarding any "Applicable Premium," make-whole premium, or similar premium for the EFIH 6.875% Notes, EFIH 10% Notes, EFIH Second Lien Notes, EFIH Senior Toggle Notes or the EFIH Unexchanged Notes.

(6)     All Documents concerning any assertion or calculation by the Ad Hoc Committee or any member thereof, or their respective Representatives, as to amounts owed to them in connection with any proposed restructuring of EFH, TCEH or the EFIH Debtors.

(7)     All Documents concerning whether or not the EFIH Debtors should seek chapter 11 relief, alternatives to chapter 11 relief, and/or any restructuring or restructuring proposals for the EFIH Debtors, including without limitation (i) all Documents concerning the status of the EFIH Debtors in relation to any restructuring of TCEH, and (ii) all communications between, among or within the Ad Hoc Committee, its members, its Representatives or any Representative of any member of the Ad Hoc Committee, on the one hand, and any of the any of the EFIH Debtors, EFH Equity Owners, the EFIH Unsecured Noteholders, the Consenting Fidelity EFIH First Lien Noteholders, the Consenting Non-Fidelity EFIH First Lien Noteholders, the EFIH Second

Lien Noteholders (or committees or groups of holders of any of the foregoing), Fidelity, PIMCO or the respective Representatives of any of the foregoing, on the other hand.

(8)     All Documents concerning any proposed structure for, planning for, drafts of, or agreement (including the RSA and/or the Plan Restructuring Documents) to amend the Amended and Restated Tax Sharing Agreement, dated as of November 5, 2008, by and among EFH, Oncor Electric Delivery Holdings LLC, Oncor Electric Delivery Company LLC, Texas Transmission Investment LLC, and Oncor Management Investment LLC, as amended and in effect from time to time, to include EFIH or to otherwise redirect, in whole or in part, the payments under that agreement from EFH to EFIH, including without limitation any cash flow forecasts or other projections reflecting any change of payments, in whole or in part, from EFH to EFIH.

(9)     All Oncor strategic business plans and financial projections, including without limitation projections of liquidity, that were in existence immediately prior to any Exchange Offer.

(10)     All Documents concerning any transaction that was discussed within, or considered by, the Ad Hoc Committee or its members as an alternative to the RSA.

(11)     All Documents concerning any consideration or analysis of the EFIH Debtors' solvency, including without limitation any communications concerning the same, prior to and during the EFIH's Debtors' decision to file for chapter 11 relief.

(12)     All Documents reflecting, referring to, or constituting or containing projections of EFIH Debtors' financial performance (or any aspect thereof), including pro formas of financial results, and/or documents containing estimates of Earnings Before

Interest, Taxes, Depreciation and Amortization, and/or including all drafts thereof and all notes, materials and other documents created or referred to in the course of compiling any of the foregoing.

(13)    All Documents reflecting, referring to, or constituting or containing projections concerning whether the EFIH 10% Notes could remain in place, be reinstated, and/or left unimpaired in a Chapter 11 case.

(14)    All Documents concerning any consideration of the EFIH Debtors' enterprise value, including without limitation any communications concerning the same, prior to and during the EFIH's Debtors' decision to file the Bankruptcy Cases.

(15)    All Documents concerning the EFIH First Lien Settlement, the EFIH Second Lien Settlement, the EFIH First Lien Tender Offer, the EFIH Second Lien Tender Offer, the EFIH First Lien DIP Financing, the EFIH Second Lien DIP Facility, and all deadlines or other milestones in the RSA, including, without limitation, (i) all drafts of all documentation for each of the foregoing, and (ii) all communications between, among or within the Ad Hoc Committee, its members, its Representatives or any Representative of any member of the Ad Hoc Committee, on the one hand, and any of and any of the EFIH Debtors, EFH Equity Owners, the EFIH Unsecured Noteholders, the Consenting Fidelity EFIH First Lien Noteholders, the Consenting Non-Fidelity EFIH First Lien Noteholders, the EFIH Second Lien Noteholders (or committees or groups of holders of any of the foregoing), Fidelity, PIMCO or the respective Representatives of any of the foregoing, on the other hand.

(16)    Executed copies of the RSA and Plan Restructuring Documents, including all signature pages, without redaction of names or debt holdings, and any side letters and/or other Documents reflecting the bond or debt holdings of the signatories at the time of signing the RSA.

(17)    All communications between, among or within the Ad Hoc Committee, its members, its Representatives or any Representative of any member of the Ad Hoc Committee, on the one hand, and any of the EFIH Debtors, EFH Equity Owners, the EFIH Unsecured Noteholders, the Consenting Fidelity EFIH First Lien Noteholders, the Consenting Non-Fidelity EFIH First Lien Noteholders, the EFIH Second Lien Noteholders (or committees or groups of such holders), Fidelity, PIMCO or the respective Representatives of any of the foregoing, on the other hand, regarding the RSA.

(18)    All Documents referring to any disparity or difference in treatment under the RSA, First Lien DIP Financing, Second Lien DIP Facility, Plan or any Plan Restructuring Documents between the holders of the EFIH 6.875% Notes or EFIH 10% Notes, on the one hand, and any of the EFIH Unsecured Noteholders, the Consenting Fidelity EFIH First Lien Noteholders, the Consenting Non-Fidelity EFIH First Lien Noteholders, the EFIH Second Lien Noteholders, Fidelity, or PIMCO on the other hand.

(19)    All Documents supporting or concerning the commitments for the EFIH First Lien DIP Financing and the EFIH Second Lien DIP Facility, including all drafts and all communications concerning the negotiation thereof.

(20)    All Documents referring to any release, indemnification or exculpation to be obtained by the Ad Hoc Committee, any of its members, or the Representatives of any of the foregoing pursuant to any Plan or Plan Restructuring Documents.

(21)    All Documents referring or relating to the timing of (a) the commencement of the Bankruptcy Cases; (b) entry of any order of the Bankruptcy Court in the Bankruptcy Cases, including, but not limited to, any order regarding (i) the DIP Financing; (ii) the Applicable Premium under any of the EFIH 6.875% Indenture, the EFIH 10% Indenture or the EFIH Second Lien Indenture; (iii) the RSA; (iv) the EFIH First Lien Settlement; (v) the EFIH Second Lien Settlement; (vi) the EFIH First Lien Tender Offer; or (vii) the EFIH Second Lien Tender Offer; or (c) solicitation of approval of the EFIH First Lien Settlement or the EFIH Second Lien Settlement.

(22)    All Documents referring to or purporting to restrict the authority of the EFIH Debtors to enter into settlement agreements with any holder of EFIH 6.875% Notes, EFIH 10% Notes or the indenture trustee under either the EFIH 6.875% Indenture or the EFIH 10% Indenture.

(23)    All Documents referring to any tranche of debt in the capital structure of EFH or the EFIH Debtors as the "fulcrum" security or utilizing any similar term.

(24)    All Documents referring to any fee to be paid to the Ad Hoc Committee, any member thereof, or any Representative of any of the foregoing pursuant to the RSA, the EFIH Second Lien DIP Facility or any Plan or Plan Restructuring Documents.

(25)    All Documents reflecting or referring to the calculation, estimation or determination of the amount of consideration to be received by the Ad Hoc Committee,

its members, its Representatives or any member's Representative on account of any EFH Unsecured Notes, EFIH First Lien Notes, EFIH Second Lien Notes, EFIH Unsecured Notes, TCEH First Lien Notes or any other security, debt instrument or obligation of any of EFH, the EFIH Debtors or TCEH held by the Ad Hoc Committee or any of its members, pursuant to the RSA, the EFIH First Lien DIP Financing, the EFIH Second Lien DIP Facility, the Plan or any Plan Restructuring Documents.

(26)    All Documents referring to any differences between the EFIH 6.875% Indenture or the EFIH 10% Indenture, on the one hand, and the EFIH Second Lien Indenture or EFIH Senior Toggle Indenture, on the other hand, regarding any Applicable Premium, makewhole or similar obligation.

(27)    All non-privileged legal memoranda or presentations prepared by any Representative of any party referring to the payment of the Applicable Premium, makewhole or similar obligation under the EFIH 6.875% Indenture, the EFIH 10% Indenture, the EFIH Second Lien Indenture, or the EFIH Senior Toggle Indenture.

(28)    All Documents concerning or otherwise reflecting any names of  parties who will receive any portion of the Execution Fee, Approval Fee, Arranger Fee Funding Cash Fee, Postpetition DIP Commitment Fees, Total Second Lien DIP Commitment Fees, Participation Fee, Closing Fee, Alternate Transaction Fee and Arrangement Payment referred to in the EFIH Second Lien DIP Motion.

(29)    All Documents concerning or otherwise reflecting any names of  parties who are the Selected Parties and the Transferee Commitment Party as that term is defined in the EFIH First Lien Settlement Motion.

(30)    All Documents concerning or otherwise reflecting any names of parties who are the Selected Partners, Postfunding Partners and Specified Consultants as that term is defined or used in the RSA or exhibits thereto.

(31)    All Documents referring to any discussions or other communications concerning post-confirmation employment or engagement, whether or not such employment or engagement was ultimately agreed, by any of the Reorganized Debtors with any present or former directors, officers or management of the Debtors.

Dated:  May 21, 2014

              COLE, SCHOTZ, MEISEL, FORMAN
              & LEONARD, P.A.

              *[signature]*

              Norman L. Pernick (No. 2290)
              J. Kate Stickles (No. 2917)
              Nicholas J. Brannick (No. 5721)
              500 Delaware Avenue, Suite 1410
              Wilmington, DE  19801         Warren A. Usatine
              Telephone: 302-652-3131       25 Main Street,
              Facsimile:  302-652-3117        P.O. Box 800
              npernick@coleschotz.com       Hackensack, NJ 07602
              kstickles@coleschotz.com       Telephone: 201-489-3000
              nbrannick@coleschotz.com      Facsimile:  201-489-1536
                                       wusatine@coleschotz.com

              *Counsel for CSC Trust Company of Delaware, as*
              *successor indenture trustee and collateral trustee*