**EXHIBIT C**

## Brannick, Nicholas

| | |
|---|---|
| **From:** | Usatine, Warren [WUsatine@coleschotz.com] |
| **Sent:** | Monday, May 19, 2014 6:09 PM |
| **To:** | 'Dempsey, David R.'; Pernick, Norman; Stickles, Kate |
| **Cc:** | Boller, Robert; Frost-Davies, Julia; EAKleinhaus@WLRK.com; JLynch@wlrk.com; Groner, Samuel; David, Israel; Ganter, Jonathan F.; Esser, Michael P.; McKane, Mark E.; Sabin, Jeffrey S.; Hessler, Stephen E.; Sassower, Edward O; McGaan, Andrew R.; Carty, Chris; Qureshi, Abid; Donohue, Ryan; Baldini, Stephen; patrick.strawbridge@bingham.com; Brannick, Nicholas |
| **Subject:** | RE: In re Energy Future Holdings Corp., et al Case No 14-10979(CSS) [COLESCHOTZ-CSDOCS.FID1688482] |

Dear Counsel :

I write in connection with the document production you have undertaken in response to the informal discovery requests set forth in my May 8th letter. Our purpose in serving the informal requests was to allow for the accelerated production of key information central to the interests of the First Lien Holders. Having just this weekend begun to receive documents on behalf of some (but still not all) of your clients, I write to identify several initial issues that have arisen.

1. **Refusal to Produce from Actual Parties** - We are particularly frustrated by the Debtors' counsel's refusal to produce any documents from any Debtor. While the covering letters indicate some the parties are reviewing files of individuals that expand beyond the advisor teams, the letter from the Debtors' counsel indicates only an advisor search is being conducted for items 2, 4, 5 and 7 of my May 8th letter. As we discussed on our meet and confer call on May 14th, we fail to see how a complete production can be accomplished without a search of the files of the party representatives themselves. Stated differently, we don't believe we should be limited by the assumption that each responsive document passed over the email account of an advisor. We are entitled to discovery of the parties, not advisors. That means a review of and production from the files of actual business people -- and not lawyers and bankers -- is required. We view the Debtors' unwillingness to allow actual discovery of the parties as part of this process to be completely deficient, and we urge the Debtors to reconsider this position.

2. **Our Request Number 2** - As discussed and requested on the May 14th meet and confer, I delivered an email on May 15th expanding on our reasons for making this request. In the May 17th letter from Kirkland & Ellis that accompanied the Debtors' initial production, the Debtors' counsel states they "are willing to meet and confer further about this request..." Respectfully, I'm not sure what else we might say to each other on such a further meet and confer. We have articulated our reasons for the request. We think the issue of creating a default to avoid the makewhole premium obviously is a major issue in the case. And we think we are entitled to the discovery. The last point I would add here is that we assume you will agree this is certainly not an area where a search of the files merely of professionals will suffice.

3. **Search Terms** - We appreciate that, notwithstanding the initial position taken on the May 14th call, the Debtors have shared the searches run for certain of the requests. We believe, however, that the search terms relating to all requests should be shared so that we can provide input and be satisfied that a full production will be made. For the requests for which search terms were shared, our view is that the terms appear entirely too narrow (although we say that without the usual benefit of having dialogue with you on the number of "hits" achieved using various combinations of searches). For example, we think your search for the items in Request Number 4 should be expanded, at a minimum, to include terms such as, without limitation: (a) "exit" within some proximity of words like financing/facility/loan; (b) "conversion" or "convert" and/or "equity" within some proximity of DIP/loan/financing/etc.; and (c) words like "model" or "forecast" or "projection" or "diligence". With regard to the search terms relating to Request Number 7, please explain the reasons for including the word "Oncor" for the searches run on the files of the Kirkland attorneys, but not for the Evercore team. On its face, the limitation imposed by requiring the word "Oncor" might improperly and unnecessarily limit the number of "hits" for the Kirkland team. As I stated on our May 14th call, our expectation was and is that you will consult with us on search terms before searches are run. That is the most efficient way to proceed, especially under the extremely truncated schedule the Debtors have advanced.

I look forward to your responses, as well as your continuing production.



**Warren A. Usatine**
Member
25 Main Street | Hackensack, NJ | 07601
Direct 201.525.6233 | Firm 201.489.3000 | Fax 201.678.6233 | Cell 201.755.1532 | wusatine@coleschotz.com
New Jersey     |     New York     |     Delaware     |     Maryland     |     Texas
vCard     |     bio     |     website

Legal Secretary: Caroline DeCourcey-Côte | 201.489.3000 x5020 | CDeCourcey-Cote@coleschotz.com

---

**From:** Usatine, Warren [mailto:WUsatine@coleschotz.com]
**Sent:** Thursday, May 15, 2014 2:39 PM
**To:** 'Dempsey, David R.'; Pernick, Norman; Stickles, Kate
**Cc:** Boller, Robert; Frost-Davies, Julia; EAKleinhaus@WLRK.com; JLynch@wlrk.com; Groner, Samuel; David, Israel; Ganter, Jonathan F.; Esser, Michael P.; McKane, Mark E.; Sabin, Jeffrey S.; Hessler, Stephen E.; Sassower, Edward O; *patrick.strawbridge@bingham.com; McGaan, Andrew R.; Carty, Chris; Qureshi, Abid; Donohue, Ryan; Baldini, Stephen; Usatine, Warren
**Subject:** RE: In re Energy Future Holdings Corp., et al Case No 14-10979(CSS) [COLESCHOTZ-CSDOCS.FID1688482]

Counsel - This is in follow-up to yesterday afternoon's telephonic meet and confer regarding the EFIH First Lien Indenture Trustee's informal requests for production pursuant to our letter dated May 8, 2014. Certain of the parties from whom documents are to be produced requested additional information regarding the purpose and scope of two of the requests for production. The additional information provided herein is to assist in the expedited production of documents on a rolling basis, and does not alter or amend the requests for production in any manner. The trustee reserves all rights to serve formal discovery requests and/or seek judicial intervention with respect to the requests.

Request No. 2

As stated in the trustee's preliminary objection, one of the principal factual issues concerning the redemption premium is whether EFIH defaulted with an intent to avoid the premium. This request is targeted to the issue of whether there were discussions regarding not filing EFIH for chapter 11 relief and whether a potential filing of EFIH was done with the intent to avoid the premium. The time frame of the request is prior to any possible assertion of a joint interest privilege so as to avoid any delay resulting from requests for adjudication of that issue in the context of these informal discovery requests. The fact that, as noted by the Debtors during the meet and confer, the requested communications were prior to the negotiation of the current formulation of the RSA does not diminish the probative value of such communications, particularly with respect to available alternatives to an EFIH chapter 11 filing and the contemplation to avoid an EFIH chapter 11 filing altogether. Also, any nonbankruptcy scenarios that included payment of a premium to the PIKs on account of substantively identical premium language is probative.

To the extent that the Debtors contest (i.e. are unwilling to stipulate) that what is being effected is a "redemption" under the terms of the Indentures, we also believe these materials will be probative. In addition, these documents may have probative value with respect to valuation and solvency issues that are potentially at issue in this transaction, including, without limitation, with respect to adequate protection (during the pendency of bankruptcy court litigation after DIP closing, any gap between funding of a priming DIP and payout, and similar relief on appeal) and the propriety of the global transaction for which approval is sought. Because the Debtors have refused to stipulate and covenant as to the secured claim status and priority of the make-whole claims until the final resolution of such claims (which creates the possibility, improperly imposed in our view, but nonetheless possible, of unsecured claim status for the make-whole claim), we are unwilling to forego a full examination of the transactions that might impair the value or rights of such unsecured claim. These issues are a function of the positions of the debtors that are only now becoming clear.

Request No. 6

This request simply seeks an unredacted copy of the RSA, the unredacted signature pages thereto, and the holdings of 6.875% notes by RSA signatories. There is simply no basis to withhold this information that goes to the core of the financial incentives of the various signatories to the RSA. The disparate treatment of the 6.875% and 10% notes is apparent from the RSA. What is not apparent is the extent of the disparate treatment for select holders of such notes which, of course, can only be determined by understanding the holdings of the relevant parties. Further, the amount of other consideration in the form of commitment fees and other value transfers for such parties can only be fully understood in the context of the parties' holdings. Lastly, based upon the debtors' prior and anticipated statements seeking to characterize those who have signed as indicative supporters of the reasonableness of the first lien "settlement," and the majority first lien holders objecting to the settlement as "holdouts," the import of such holdings is obvious.

Finally, as we discussed on the call please send the search terms you are using for the various requests. I look forward to hearing from you on these issues and to your getting the production started on a rolling basis shortly.



**Warren A. Usatine**
**Member**
25 Main Street | Hackensack, NJ | 07601
Direct 201.525.6233 | Firm 201.489.3000 | Fax 201.678.6233 | Cell 201.755.1532 | wusatine@coleschotz.com
New Jersey    |    New York    |    Delaware    |    Maryland    |    Texas
vCard    |    bio    |    website

Legal Secretary: Caroline DeCourcey-Côte | 201.489.3000 x5020 | CDeCourcey-Cote@coleschotz.com

6/23/2014