**EXHIBIT F**



**ROBERT J. BOLLER**
+1 212.872.8170/fax: +1 212.872.1002
rboller@akingump.com

June 20, 2014

VIA E-MAIL (wusatine@coleschotz.com)

Warren A. Usatine
Cole, Schotz, Meisel, Forman & Leonard P.A.
Court Plaza North
25 Main Street
P.O. Box 800
Hackensack, NJ 07602-0800

   Re:  In re Energy Future Holdings Corp. et al.
       Case No. 14-10979

Warren:

  We represent the ad hoc committee of holders of 11.25%/12.25% unsecured senior toggle notes due December 1, 2018 issued pursuant to that certain indenture, dated December 5, 2012, by and among Energy Future Intermediate Holding Company LLC ("<u>EFIH</u>") and EFIH Finance, Inc., as issuers, and UMB Bank N.A., as successor trustee (the "<u>Ad Hoc Committee of EFIH Unsecured Noteholders</u>").[1]  I write (1) in response to your letter dated June 17, 2014 (the "<u>Letter</u>"), (2) as a follow-up to our meet and confer call held on June 18, 2014, (3) in initial response to the deposition subpoenas that your firm served on the same day, and (4) to propose a possible way forward.

**I.**  **<u>Background</u>**

  Before addressing the substance of the allegations in your Letter, I must first take issue with your delay in contacting us regarding the supposed deficiencies in the Ad Hoc Committee of EFIH Unsecured Noteholders' production.  For more than a month, the EFIH First Lien Trustee has been fully aware of the scope of our document production and the search parameters that we applied, including the date ranges, custodians and domain name limiters.  Yet, the first time your client raised any purported deficiencies was in your letter Tuesday afternoon, in which you demanded an immediate conference and resolution.

---

[1] All capitalized terms used but not defined herein shall have the meaning ascribed to them in the Ad Hoc Committee of EFIH Unsecured Noteholders' Responses and Objections to CSC Trust Company of Delaware's First Set of Document Requests, dated June 2, 2014 (the "<u>Responses and Objections</u>").



Warren A. Usatine
Cole, Schotz, Meisel, Forman & Leonard P.A.
June 20, 2014
Page 2

      On May 8, 2014, the EFIH First Lien Trustee first sent informal document requests to the Ad Hoc Committee of EFIH Unsecured Noteholders (the "<u>Informal Requests</u>"), requesting that we produce seven categories of documents within a week. We disagreed (and continue to disagree) that any of the Informal Requests were relevant to, or reasonably calculated to lead to the discovery of admissible evidence in connection with, any Contested Matter. However, in order to avoid an unnecessary discovery dispute, we agreed (without waiving any of our rights) to produce a narrowly-tailored set of documents related to the negotiation of the RSA and the transactions contemplated therein.

      On May 12, 2014, we participated with you in a meet and confer call where we discussed the scope and parameters of our planned productions. On May 15, 2014, we began a rolling production of documents in response to the Initial Requests. As you are aware, the cover letter to that production once again detailed the parameters of our document production, including the custodians, the date ranges, and the domain name restrictions. Specifically, we accepted the custodians you requested and included four additional custodians from the members of the Ad Hoc Committee of EFIH Unsecured Noteholders. We tailored our domain name restrictions and applicable date range to isolate documents related to the negotiations of the RSA.[2] We did not apply any search term restrictions, but rather, we produced broadly all non-privileged documents relevant to the EFH negotiations, including negotiations surrounding the RSA and the Second Lien DIP.

      On May 22, 2014, we completed our production in response to your Informal Requests. In sum, we produced 3,666 documents totaling almost 20,000 pages. At no time prior to June 17, 2014, did you raise any issues with our search parameters or the scope of our production.

      Moreover, on May 21, 2014, on the eve of completing our expeditious production in response to the Informal Requests, you served the Ad Hoc Committee of EFIH Unsecured Noteholders with a formal document subpoena (the "<u>Subpoena</u>"). Although the EFIH First Lien Trustee now seems to contend otherwise, the Subpoena clearly indicated that it was issued in connection with the EFIH First Lien Makewhole Adversary Proceeding (Adv. Dkt. No. 14-50363). (*See* Subpoena caption, 1.) In the Subpoena, the EFIH First Lien Trustee requested categories of documents that were previously produced in connection with the Informal Requests, as well as numerous additional broad categories of documents. On June 2, 2014, the Ad Hoc Committee of EFIH Unsecured Noteholders served its Responses and Objections to the

---

[2] On May 20, 2014, we made a second production and disclosed that we updated our search parameters to include two additional domain names.



Warren A. Usatine
Cole, Schotz, Meisel, Forman & Leonard P.A.
June 20, 2014
Page 3

Subpoena, objecting to the additional requests on the grounds that they did not seek documents relevant to, or reasonably calculated to lead to the discovery of admissible evidence in connection with, any Contested Matter or the EFIH First Lien Makewhole Adversary Proceeding. As discussed in more detail below, although your Letter notes that the Ad Hoc Committee of EFIH Unsecured Noteholders has not produced certain categories of documents, the EFIH First Lien Trustee still has failed to address any of our relevancy objections.

## II.  There Are No Deficiencies in the Ad Hoc Committee of EFIH Unsecured Noteholders' Production

There are no deficiencies in the Ad Hoc Committee of EFIH Unsecured Noteholders' document production. Each alleged deficiency identified in the Letter concerns a request for documents that was neither relevant to, nor reasonably likely to lead to the discovery of admissible evidence in connection with, any Contested Matter or the EFIH First Lien Makewhole Adversary Proceeding. We respond to each purported deficiency as follows:

### A.  Categories of Documents Not Produced

The Letter alleges that the Ad Hoc Committee of EFIH Unsecured Noteholders refused to produce several categories of documents: "(i) Oncor strategic business plans and financial projections; (ii) references to a 'fulcrum' security in the Debtors' capital structure; (iii) matters relating to the RSA; (iv) matters relating to the valuation of EFIH; (v) matters relating to tax allocation agreements; and (vi) any potential or actual post-confirmation employment of any present or former directors, officers or management of the Debtors." (Letter at 1.)

First, your assertion is incorrect. We produced our negotiations of the RSA and the transactions contemplated therein, including the proposed amendment of the Oncor tax allocation agreement. Thus we have produced documents concerning matters relating to (i) the RSA and (ii) tax allocation agreements.

Second, documents related to the other four categories and any additional requests related to the valuation of EFIH or the tax allocation agreements are neither relevant to, nor reasonably likely to lead to the discovery of admissible evidence in connection with, any Contested Matter or the EFIH First Lien Makewhole Adversary Proceeding. As Judge Sontchi held during the Second Day Hearings on June 6, 2014, valuation discovery is not relevant at this time, and discovery from creditors is not probative to the issue of whether the Debtors reasonably exercised their business judgment in entering into the RSA. *See* June 6 Hr'g Tr. at 65:22-66:15,



Warren A. Usatine
Cole, Schotz, Meisel, Forman & Leonard P.A.
June 20, 2014
Page 4

67:11-68:15, 69:2-7.  You still have not provided a convincing explanation of why these categories documents are relevant to any matter in which you are entitled to discovery, which merely confirms that the requests amount to nothing more than a fishing expedition, based on the mere hope that something useful might turn up.

Third, you also allege that we made "apparent categorical exclusions of documents, such as underwriting memorandum for the investment positions taken by the members of the Ad Hoc Committee."  (Letter at 2.)  It is unclear what this category of documents relates to or how it could possibly be relevant to any Contested Matter or EFIH First Lien Makewhole Adversary Proceeding.

### B.  Our Search Parameters Were Appropriate

Your Letter objected to the search parameters employed in the Ad Hoc Committee of EFIH Unsecured Noteholders' production.  As discussed above, although we disclosed our search parameters to you both during the May 12 meet and confer and in our May 15 letter, this is the first time you raised any issue with our searches.  Moreover, the search parameters we applied (and which you did not challenge) are entirely appropriate.

First, you appear to be mistaken—notwithstanding the fact that such documents are not relevant (for reasons discussed below), we did search for and produce communications between the members of the Ad Hoc Committee of EFIH Unsecured Noteholders in an effort to be constructive.  We did not produce completely internal communications, *i.e.*, communications solely among employees of an individual member of the Ad Hoc Committee of EFIH Unsecured Noteholders.  Those documents are neither relevant to, nor reasonably likely to lead to the discovery of admissible evidence in connection with, any Contested Matter or the Makewhole Adversary Proceeding.

The issues before the Court on the Contested Matters will relate to the Debtors' decision to enter into the Second Lien DIP, Second Lien Settlement, and RSA.  Internal communications among the members of the Ad Hoc Committee of EFIH Unsecured Noteholders, who are neither employees nor agents of the Debtors, are not relevant on these points.  Nor are their internal analyses of the transactions.

Judge Sontchi ruled on a nearly identical discovery issue at the Second Day hearing on June 6.  There, the TCEH unsecured creditors sought discovery from the TCEH First Lien creditors in connection with the Debtors' motion to assume the RSA.  The TCEH First Lien



Warren A. Usatine
Cole, Schotz, Meisel, Forman & Leonard P.A.
June 20, 2014
Page 5

creditors objected on the grounds that any discovery from them would be irrelevant, as the only relevant question for the Court was whether the Debtors reasonably exercised their business judgment in entering into the transaction. See June 6 Hr'g Tr. at 41:14-42:10. Judge Sontchi agreed and ruled that the requested discovery was improper because the question before the Court would be limited to the Debtors' decision-making. Id. at 65:22-66:15, 69:2-7.

This same reasoning applies to communications internal to the members of our group. To the extent that any documents from the Ad Hoc Committee of EFIH Unsecured Noteholders are relevant, it is only our negotiations with third parties concerning the RSA and the transactions contemplated therein. Accordingly, we used domain name restrictions to isolate such communications and produced them. Indeed, our production was comprehensive because we broadly interpreted your request for RSA negotiations and did not apply any restrictive search terms.

Second, the only even arguably relevant discovery here is related to the negotiation of the transactions at issue. Those negotiations took place over email, not Bloomberg messages or some other electronic medium. Accordingly, your demand to have the Ad Hoc Committee of EFIH Unsecured Noteholders retrieve and examine their Bloomberg messages is unduly burdensome.

Third, our date range of January 28, 2014 through April 29, 2014 was appropriate. The negotiations over the transaction that became the RSA did not begin until late January 2014 and ended with execution of the RSA on April 29, 2014. Any communications predating that range are irrelevant. You state baldly in the Letter that "significant discussions were had regarding EFIH dating back to April 2013", but do not identify any member of the Ad Hoc Committee of EFIH Unsecured Noteholders that you believe had such communications at that time. Without identifying a party, this is once again a classic fishing expedition.

### C.    Privilege Log

We agreed to produce several categories of documents to you on an informal and expedited basis in connection with the Informal Requests. We did not agree to provide a privilege log, and do not intend to re-review that production to create a log now.

We also have no other relevant documents to produce in response to the Subpoena in the adversary proceeding, and therefore do not intend to provide a privilege log in connection therewith. We can identify, however, the categories of documents we have withheld. They are



Warren A. Usatine
Cole, Schotz, Meisel, Forman & Leonard P.A.
June 20, 2014
Page 6

(1) communications between the advisors to the Ad Hoc Committee of EFIH Unsecured Noteholders and the Committee members, containing legal advice, (2) communications among the members of the Ad Hoc Committee of EFIH Unsecured Noteholders discussing or conveying that legal advice, and (3) common interest communications with the Debtors and their counsel related to the enforceability of the makewhole provisions.

### D.   **Common Interest Privilege Assertions**

Finally, the Ad Hoc Committee of EFIH Unsecured Noteholders did not make a "blanket withholding of documents" on the basis of our common interest with the Debtors. (Letter at 2.) Rather, as we stated in our May 20, 2014 letter to you, we asserted a narrow pre-petition common interest with the Debtors regarding our respective legal analyses of the supposed claims of holders of the EFIH First Lien Notes and EFIH Second Lien Notes to a makewhole premium. As should be evident by our intervention as a defendant in the EFIH First Lien Makewhole Adversary Proceeding, our legal interests concerning the applicability of the makewhole are aligned—and have been aligned—with those of the Debtors. You have failed to explain why you do not believe we share a common interest with the Debtors concerning this narrow subject.

### III.   **The Deposition Subpoenas Are Burdensome and Harassing**

On June 18, shortly after our meet and confer call, you emailed 13 subpoenas demanding to take the depositions of each member of our Committee and various employees thereof. These deposition subpoenas, which were issued solely in connection with the Adversary Proceeding, are beyond burdensome and veer into the territory of harassment. At its core, the Adversary Proceeding involves a straight-forward contract question: whether the First Lien Indentures require payment of a makewhole premium in connection with the repayment of the EFIH First Lien Notes. This is a purely legal issue that can be decided on the legal memoranda and for which discovery is unnecessary. But even assuming, *arguendo*, that some limited discovery would be useful, that discovery is not of our clients.

All of the foregoing is obvious, of course, and your demand to depose more than a dozen Committee members and their employees is a transparent attempt to harass and annoy the members of a constituency whose interests are at odds with your clients' interests. We intend to seek appropriate relief from the Court.



Warren A. Usatine
Cole, Schotz, Meisel, Forman & Leonard P.A.
June 20, 2014
Page 7

### IV.  A Potential Compromise

As a means to avoid a dispute over all of the foregoing, I would like to suggest a compromise: stipulated facts.  Rather than incurring the burden and expense of a fight over additional discovery which we believe in the end will be irrelevant, we are willing to consider a stipulation as to certain facts—not conclusions resulting from those facts—that the EFIH First Lien Trustee believes it must establish.  This may be a more direct way for your client to develop a record it thinks is appropriate while relieving the Committee of the burden of performing additional document searches and preparing for dozens of depositions.

I am available to discuss any or all of the above.  Nothing in this letter should be construed as a waiver or any of the Ad Hoc Committee of EFIH Unsecured Noteholders' rights, all of which are expressly reserved.

Sincerely,

*/s/ Robert J. Boller*

Robert J. Boller

Cc:    Michael Winograd, Esq.
James Millar, Esq.
Ira Dizengoff, Esq.
Scott Alberino, Esq.