**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| ) | |
| ) | |
| In re ) | Chapter 11 |
| ) | |
| ENERGY FUTURE ) | Case No. 14-10979 (CSS) |
| HOLDINGS CORP., *et al.*, ) | |
| ) | (Jointly Administered) |
| *Debtors*. ) | |
| ) | |

**DECLARATION OF CHRISTOPHER J. KEARNS,
EXECUTIVE DIRECTOR OF CAPSTONE ADVISORY GROUP, LLC
<u>CONCERNING SECOND LIEN SETTLEMENT</u>**

I, Christopher J. Kearns, hereby certify and declare as follows based upon my own personal information and knowledge:[1]

1.  I am an Executive Director of Capstone Advisory Group, LLC ("<u>Capstone</u>"), in which capacity I have been engaged by CSC Trust Company of Delaware as Indenture Trustee for the 10% Senior Secured Notes Due 2020 (the "<u>10% Notes</u>") issued by the EFIH Debtors under the Indenture dated as of August 17, 2010 (as amended or supplemented from time to time, the "<u>10% Indenture</u>") between Energy Future Intermediate Holdings LLC ("<u>EFIH LLC</u>"), EFIH Finance Inc. (together with EFIH LLC, "<u>EFIH</u>" or the "<u>EFIH Debtors</u>") and CSC Trust Company of Delaware as successor indenture trustee, as well as a steering committee of holders of the 10% Notes to advise on and assist with matters relating to the Debtors' chapter 11 restructuring.

---

[1] Capitalized terms used but not defined herein have the meaning ascribed in the *Objection of CSC Trust Company of Delaware, as Indenture Trustee and Collateral Trustee, to Debtors' (A) Motion to Approve Second Lien Post-Petition Financing, Redeem Second Lien Notes, And Determine Secured Claim and (B) Motion To Approve Certain EFIH Settlements* filed contemporaneously with this Declaration.

2.    I am a Certified Public Accountant, a Certified Insolvency and Restructuring Advisor, a Certified Turnaround Professional, and a Certified Fraud Examiner (inactive). I have over 30 years of broad-based financial experience as an auditor, corporate officer and, for approximately the past 23 years, as an advisor or crisis manager in bankruptcy and turnaround matters.

3.    I am one of the founding members of Capstone Advisory Group, LLC ("Capstone"), a financial services consulting firm, founded in January 2004, which provides services to a vast array of businesses. The services provided by Capstone include consultation in business turnaround and restructuring situations, workouts and reorganization, bankruptcy matters, crisis management, transaction advisory and due diligence services, forensic accounting, valuation and dispute resolution services. Prior to co-founding Capstone, from 1991 to 2004, I was a senior managing director of FTI Consulting, Inc. ("FTI") (and predecessor firms) and was co-leader of FTI's New York office. My experience and client assignments during that period were substantially similar to the assignments I have performed at Capstone.

4.    Prior to 1991, I was employed by Bristol-Myers Squibb Company for approximately three years (including serving as Assistant Corporate Controller), and a major international public accounting firm for ten years in the mergers and acquisitions group, and in the audit practice. I have served as a testifying expert witness in matters concerning solvency, valuation, contract breach, lost profits and various financial/business issues in bankruptcy and restructuring. I have served as a principal financial advisor in numerous complex bankruptcies and restructurings. In addition, I have served as a testifying expert in cases regarding make whole premiums and no call provisions under various indentures and credit agreements.

5.    Additionally, I have relied extensively on the knowledge and experience that I have gained through consultancy and work experience including the areas of business turnaround and restructuring situations, out-of-court workouts, bankruptcy matters, crisis management, transaction advisory and due diligence services and dispute resolution

## Calculation of Redemption Premium

6.    As of the Petition Date, the EFIH Debtors had $3.985 billion principal amount outstanding of first lien notes consisting of: (i) $3.482 billion of 10% Notes, and (ii) $503 million of 6.875% notes due 2017 (the "6.875% Notes") issued pursuant to that Indenture dated as of August 14, 2012 (the "6.875% Indenture" and, together with the 10% Indenture, the "First Lien Indentures").  The 10% Notes are of two CUSIPs, both issued under the 10% Indenture. CUSIP 29269QAA5 (the "AA5 10% Notes") consists of $2.18 billion of 10% Notes issued in 2010.  CUSIP 29269QAK3 (the "AK3 10% Notes") consists of $1.302 billion of 10% Notes issued in 2013.[2]

7.    The 6.875% Notes and the AK3 10% Notes were each issued with an associated registration rights agreement that provides that if such notes are not registered by a date certain, thereafter the notes pay "Additional Interest," first at 0.25% per annum for a period and thereafter at 0.5% per annum.  EFIH did not register either of those issuances.  Prior to the Petition Date, EFIH paid such Additional Interest in connection with the 6.875% Notes, and I understand from counsel that Additional Interest continues to accrue on each of the 6.875% Notes and the AK3 10% Notes.

8.    On June 19, 2014 (the "Redemption Date"), the First Lien Priming DIP Facility Closed and was funded.  Upon the closing of the First Lien Priming DIP Facility, EFIH

---

[2]  In addition to the AA5 and AK3 CUSIPS of 10% Notes, there is a small CUSIP of bonds issued into the Canadian market in the 2013 issuance (the "AG2 CUSIP").  The AG2 CUSIP is also the subject of the registration rights agreement and  is included within the figures for the AK3 10% Notes for simplicity.

consummated the First Lien Refinancing by redeeming outstanding principal and a portion of

the outstanding interest under the First Lien Notes. EFIH did not, however, pay the First Lien

Redemption Premium or other Outstanding First Lien Obligations.

    9.  On the Redemption Date, the Debtors redeemed notes held by Non-Settling 10%

First Lien Parties in an aggregate amount of $2,297,618,000. The Debtors also paid the Non-

Settling 10% First Lien Parties a portion of the interest due up to the Redemption Date, as noted

in the table below.

| First Lien Note Redemption on June 19, 2014 *($ in millions)* | | | | |
|---|---|---|---|---|
| Securities | | Principal Redeemed | | Interest Paid |
| *10% Notes* | | | | |
| AK3/AG2 CUSIP | $ | 821.0 | $ | 45.2 |
| AA5 CUSIP | | 1,476.6 | | 81.2 |
| Total Redeemed - 10% Notes | $ | 2,297.6 | $ | 126.4 |

    10. As requested by counsel, I calculated the redemption premia as of the Redemption

Date in total for (i) each CUSIP of the original amount of 10% Notes that were outstanding as

of the Petition Date, and (ii) the $2,297,618,000 in 10% Notes held by non-settling holders that

were redeemed on the Redemption Date, pursuant to the applicable language in the First Lien

Indentures, as noted in the table below.

| 10% First Lien Notes *($ in millions)* | | | | |
|---|---|---|---|---|
| Securities | | Redemption Premium for Settling and Non-Settling Notes | | Redemption Premium for Non-Settling Notes |
| AK3/AG2 CUSIP | $ | 250.2 | $ | 157.7 |
| AA5 CUSIP | | 403.1 | | 273.0 |
| Total | $ | 653.3 | $ | 430.8 |

## Recent Prices of EFIH PIK Notes

11. As of the Petition Date, there are approximately $1.566 billion of EFIH Unsecured Notes (CUSIP 29269QAG2)  pursuant to that indenture dated December 5, 2012 for 11.25%/12.25% toggle notes (the "EFIH Toggle Notes" or "EFIH PIK Notes").

12. Counsel also requested that I provide the trading prices for the EFIH PIK Notes between November 18, 2013 and the First Lien Redemption Date of June 19, 2014.

13. I relied on data gathered from Bloomberg's BVAL pricing service to obtain the historical pricing for the EFIH PIK Notes as shown in my chart below. The BVAL pricing service covers financial instruments across the full spectrum of the capital markets, with special emphasis on debt securities, loans and derivatives.  BVAL is viewed by market participants as a independent and reliable source for establishing values of securities traded on the secondary market because it reflects quotes by market makers even in the absence of transactions clearing the market.

14. The following chart provides the range of BVAL pricing for the EFIH PIK notes from November 18, 2013 through June 23, 2014 and overlays that with actual transaction prices sourced from the FINRA TRACE database.



15. The BVAL pricing data compared to the actual transactions clearing the market, as sourced from the FINRA TRACE database, strongly indicates that the BVAL pricing data is based on information that reflects the value ascribed to the EFIH PIK Notes by market participants.

16. As seen in the chart above, the value of the EFIH PIK Notes for the period prior to the Petition Date (November 18, 2013 to April 29, 2014), ranged between 60.0 and 79.5.

17. On the day after the Petition Date the value of the EFIH PIK Notes increased from 67.0625 to 98.875.

18. On May 22, 2014, the date of the status conference hearing, the value of the EFIH PIK Notes increased to 113.000.

19. The value of the EFIH PIK Notes has continued its upward trajectory since the status conference hearing through the Redemption Date with transactions clearing the market at prices up to 124.5 on June 23, 2014.

20. Pursuant to 28 U.S.C. § 1746, I certify under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed on this 24th day of June, 2014. _____

Christopher J. Kearns
Executive Director
Capstone Advisory Group, LLC