## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>Energy Future Holdings Corporation, *et al.*,<br><br>Debtors. | Chapter 11<br><br>Case No. 14-10979 (CSS)<br><br>Jointly Administered<br><br>Re: Docket Nos.: 472, 477, 1071 and 1078<br>Hearing Date: June 30, 2014 at 9:30 a.m. |

**[REDACTED] JOINDER OF WILMINGTON SAVINGS FUND SOCIETY, FSB TO CERTAIN OBJECTIONS TO (I) THE MOTION OF ENERGY FUTURE INTERMEDIATE HOLDING COMPANY LLC AND EFIH FINANCE INC. FOR ENTRY OF AN ORDER (A) APPROVING POSTPETITION SECOND LIEN FINANCING, (B) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS,
(C) AUTHORIZING THE USE OF CASH COLLATERAL, (D) AUTHORIZING THE EFIH SECOND LIEN REPAYMENT, (E) AUTHORIZING ENTRY INTO AND PAYMENT OF FEES UNDER THE COMMITMENT LETTER, AND
(F) MODIFYING THE AUTOMATIC STAY AND (II) THE MOTION OF ENERGY FUTURE HOLDINGS CORP., ET AL., FOR ENTRY OF ORDERS APPROVING CERTAIN EFIH SETTLEMENTS AND THE ONCOR TSA AMENDMENT**

Wilmington Savings Fund Society, FSB ("WSFS"), as successor trustee under that certain indenture, dated as of October 6, 2010, among Texas Competitive Electric Holdings, LLC, TCEH Finance, Inc., the guarantors party thereto, and The Bank of New York Mellon Trust Co., N.A., as trustee (as amended or supplemented, the "Indenture"), hereby joins in the objections to (i) the motion [Docket No. 477] (the "Financing Motion") of Energy Future Immediate Holding Company LLC ("EFIH") and EFIH Finance Inc. (together with EFIH, the "EFIH Debtors") for entry of an Order authorizing certain EFIH second lien debtor in possession financing; and (ii) the motion [Docket No. 472] (the "Settlement/TSA Motion" and together with the Financing Motion, the "Motions") of Energy Future Holdings Corp. ("EFH Corp."), et al., for entry of Orders approving a second lien settlement and related amendment to the tax sharing agreement pertaining to EFIH's non-Debtor subsidiary Oncor filed by: (a) the *Ad Hoc* Group of

{00870208;v1 }

TCEH Unsecured Noteholders [Docket No. 1078] (the "TCEH Ad Hoc Group Objection") and (b) the objection of the Ad Hoc Group of EFH Legacy Noteholders [Docket No. 1071][1] (the "EFH Legacy Noteholder Objection" and, together with the TCEH Ad Hoc Group Objection, the "Objections").[2] In support of this joinder and the Objections, WSFS respectfully submits as follows:

1. The Objections, among other filings in response to the Motions, aptly set forth numerous reasons the Motions cannot be approved, including, inter alia, that: (a) the proposed transactions' primary purpose would be to lock the Debtors into pursuing a restructuring support agreement (the "RSA") that has not yet been approved by the Court and a plan of reorganization that has not even been filed; (b) the proposed financing actually results in less, rather than more, liquidity; and (c) any alleged "cost savings" through the repayment of the EFIH Debtors' prepetition second lien notes are overstated and unlikely to be achieved. In these regards, WSFS joins in the Objections,[3] and urges the Court to deny approval of the Motions for the reasons stated therein.

---

[1] WSFS joins in Arguments I, III, IV, V and VI of the redacted EFH Legacy Noteholder Objection available on the Court's public docket.

[2] As of the filing of this joinder, the Official Committee of Unsecured Creditors (the "Committee") has yet to file its opposition to the Motions. WSFS understand the Committee intends to oppose the Motions, and reserves the right to join in such objection.

[3] As noted herein, WSFS joins in the Objections, including, inter alia, arguments that the Financing Motion's allocation of equity in Energy Future Holdings Corporation ("EFH") is inappropriate (particularly in advance of a determination of the actual value of that entity, as reorganized). WSFS does not, however, believe the current trading prices of securities exchangeable into such equity allocations are necessarily dispositive of the value of EFH. Rather, WSFS believes the value of reorganized EFH (as well as the other Debtor entities) can be determined only after this Court is provided competent expert testimony and related evidence of enterprise value.

{00870208;v1 }

A.  **The Relief Requested Through The Motions Represents An Abdication Of Fiduciary Duties Owed To TCEH Creditors By The TCEH Board And Management, And Cannot Be Approved.**

2. In addition to the substantive points raised in the Objections, WSFS believes it is critically important for the Court to also consider that the relief sought in the Motions clearly illustrates the serious governance issues that have concerned WSFS and other creditors of Debtor Texas Competitive Electric Holdings LLC ("TCEH") and related debtors (together, the "TCEH Debtors") for many months. See, e.g., *Motion of Wilmington Savings Fund Society, FSB for Leave to Conduct Discovery Pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure of Energy Future Holdings Corporation, Its Affiliates, and Certain Third Parties Filed by Wilmington Savings Fund Society, FSB, in its capacity as successor Indenture Trustee* [Docket No. 6], ¶¶ 13 – 30 (detailing conflicts and intercompany claims observable from publicly available information as of the petition date).[4] Even without the benefit of the Debtors' schedules and statements of financial affairs (which may not be filed until June 30, the date of the hearing on the Financing Motion and the Settlement/TSA Motion (other than with respect to the proposed amendment to the Oncor tax sharing agreement)) or relevant discovery (which has yet to be produced), WSFS understands there may be billions of dollars in claims by TCEH against EFIH, EFH and the equity sponsors based on, inter alia: (a) improper allocations to TCEH of sponsor fees and "shared services" obligations; (b) fraudulent transfers from TCEH, including in connection with the 2007 leveraged buyout transaction; and (c) billions of dollars in

---

[4] As was noted at the June 6 Omnibus hearing, at which the Court considered a request to allow discovery into, inter alia, the value of the assets proposed to be delivered to preferred creditors under the RSA plan, the RSA's negotiation and approval by conflicted boards of directors may subject the RSA and all related transactions to review under a heightened scrutiny standard. See Transcript of June 6, 2014 Hearing, at 46:12-25.

{00870208;v1 }

forced loans from TCEH to EFH at below market rates of interest (collectively, the "TCEH Claims").

3. The relief sought through the Motions could prejudice the TCEH Claims in at least the following manners:

- The refinancing of the existing second lien EFIH notes through the Financing Motion would, potentially, render such claims immune to challenge. Unsecured claims against EFIH, including the TCEH Claims, would benefit from a successful challenge to priority or amount of such claims.

- Holders of the new EFIH second lien DIP claims will be allocated 64% of the equity in reorganized EFH (the value of which entity would be derived from, primarily, EFH's ownership stake in EFIH, which would own the Oncor business). The Debtors have not valued the equity of EFH. As such, it is not possible to determine whether 64% of the equity in EFH will overcompensate the DIP lenders to the detriment of unsecured creditors of EFIH (including the TCEH Debtors on account of the TCEH Claims) who would otherwise have a claim to residual Oncor value. While certain unsecured claimants of EFIH may participate in this equity allocation arrangement so as to protect their value entitlements, the TCEH Debtors (on account of the TCEH Claims) cannot do so.

- Through the Settlement/TSA Motion, the Debtors would divert from EFH to EFIH hundreds of millions of dollars to be paid by Oncor in order to address a liquidity problem at EFIH caused by the same relief sought through the Motions. Absent such diversion, the funds paid to EFH would be potentially available to satisfy unsecured claims against EFH, including TCEH Claims based on forced prepetition loans at below market interest rates.

4. An agreement that involves commission of a breach of fiduciary duty is illegal and unenforceable on public policy grounds – let alone appropriate for imposition and enforcement by an Order of this Court. See Restatement (Second) of Contracts, § 193 (2012) ("A promise by a fiduciary to violate his fiduciary duty or a promise that tends to induce such a violation is unenforceable on grounds of public policy."); Kessler v. Jefferson Storage Corp., 125 F.2d 108, 110 (6th Cir. 1941) ("[W]here the object or tendency of a contract is to constitute a breach of duty on the part of one who stands in a confidential or fiduciary relation, it is illegal and void, as tending to be, or being, a fraud on third persons."); In re U.S. Lines, Inc., 103 B.R.

{00870208;v1 }

427, 431 n.1 (Bankr. S.D.N.Y. 1989) (refusing to enforce debtor's agreement to abstain from objecting to fee applications because "[a] promise by a fiduciary tending to violate his fiduciary duty is unenforceable on grounds of public policy"); In re Tenney Vill. Co., Inc., 104 B.R. 562, 569 (Bankr. D.N.H. 1989) (refusing to approve debtor in possession financing on the basis "that the execution of the Financing Agreement violates the Debtor's fiduciary obligations to the estate").

5. A debtor in possession has a fiduciary duty to conduct the case for all creditors – not just those with whom insider/equity holders have a special relationship or with whom insider/equity holders want to enter into a venture post-bankruptcy. See Duke Energy Trading & Mktg. v. Enron Corp. (In re Enron Corp.), Nos. 01-16034, 02-3609, 2003 WL 1889040, at *8 (Bankr. S.D.N.Y. Apr. 17, 2003) ("[T]he duty of the trustee or debtor in possession is to gather estate assets for pro rata distribution to all creditors and [the debtor] must seek to protect the interests of all creditors collectively."); Pereira v. Foong (In re Ngan Gung Rest.), 254 B.R. 566, 570 (Bankr. S.D.N.Y. 2000) ("A trustee also owes a fiduciary duty to each creditor of the estate . . . . [and] has a duty to treat all creditors fairly . . . ."); In re Whitney Place Partners, 147 B.R. 619, 620-21 (N.D. Ga. 1992) ("In a Chapter 11 case, the debtor in possession has a fiduciary duty to act not in its own best interest, but rather in the best interests of the entire estate, including secured and unsecured creditors.").

6. Notwithstanding the known existence of the potential TCEH Claims, upon information and belief, TCEH's management and board have failed: ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

{00870208;v1 }

████████████████████████████ The failure of management of the TCEH Debtors to take any steps to preserve claims that would be prejudiced through relief requested in the Motions (or to adequately consider the prejudice that would occur) and the failure of the TCEH Debtors to oppose the Motions demonstrate a complete abdication by the TCEH Debtors' management and board of their duties to creditors of the TCEH Debtors.

### B. The Motions Would Effect A Prohibited Sub Rosa Plan, And Cannot Be Approved.

7. Transactions amounting to sub rosa plans are prohibited out of a "fear that a debtor-in-possession will enter into transactions that will, in effect, short circuit the requirements of chapter 11 for confirmation of a reorganization plan." Motorola, Inc. v. Official Comm. of Unsecured Creditors & JP Morgan Chase Bank, N.A. (In re Iridium Operating LLC), 478 F.3d 452, 466 (2d Cir. 2007) (rejecting settlement where it stretched the boundaries of Rule 9019 without properly considering the protections afforded creditors under Bankruptcy Code Section 1129); see In re Summit Global Logistics, Inc., No. 08-11566, 2008 WL 819934, at *13 (Bankr. D.N.J. Mar. 26, 2008) ("Sub rosa plans are prohibited because they violate the requirements of the Chapter 11 process."). Courts fear that "one class of creditors may strong-arm the debtor-in-possession, and bypass the requirements of Chapter 11 to cash out quickly at the expense of other stakeholders, in a proceeding that amounts to a reorganization in all but name, achieved by stealth and momentum." In re Chrysler LLC, 576 F.3d 108, 114 (2d Cir. 2009), vacating as moot 592 F.3d 370 (2d Cir. 2010). Courts are duty-bound to investigate the underlying purpose and effect of a proposed transaction, and must deny requested relief, if, in reality, it is "a vehicle for [a creditor] to implement a plan of reorganization guaranteed to be more favorable to [that creditor] than all other interested parties." In re Louise's, Inc., 211 B.R. 798, 801 (D. Del. 1997)

(rejecting settlement agreement that "exceed[ed] the boundaries of a Rule 9019 compromise and [was] really a proposed plan of reorganization disguised as a Rule 9019 compromise").

8. When a proposed transaction has the practical effect of dictating the terms of a plan of reorganization, that transaction will constitute a prohibited sub rosa plan. See In re Capmark Fin. Grp. Inc., 438 B.R. 471, 513 (Bankr. D. Del. 2010) (CSS) ("A settlement constitutes a sub rosa plan when the settlement has the effect of dictating the terms of a prospective chapter 11 plan."); In re Shubh Hotels Pittsburgh, LLC, 439 B.R. 637, 644 (Bankr. W.D. Pa. 2010) (same); see also Official Comm. of Unsecured Creditors of Tower Auto., Inc. v. Debtors & Debtors in Possession (In re Tower Auto., Inc.), 241 F.R.D. 162, 168-69 (S.D.N.Y. 2006) ("A settlement which has the effect of dictating the terms of the debtor's plan of reorganization prior to the confirmation process cannot not be approved."); In re Pub. Serv. Co. of N.H., 90 B.R. 575, 581 (Bankr. D.N.H. 1988) (courts must reject "the proposed transaction [if it] might improperly and indirectly lock the estate into any particular plan mode prematurely, and without the protection afforded by the procedures surrounding a disclosure statement and confirmation hearing, in a plan of reorganization").

9. Through the Motions, the Debtors seek to make the RSA and the related plan (which has yet to even be filed) a fait accompli, including by: (a) allocating 64% of reorganized equity to the second lien DIP lenders (without knowing what the value of that equity might be); (b) moving potential value beyond the reach of EFH creditors through the amendment of the Oncor tax sharing agreement; and (c) otherwise making it cost prohibitive, at an early juncture of the cases, for the Debtors to consider any restructuring scenario other than that to be imposed under the RSA.

## RESERVATION OF RIGHTS

WSFS reserves its right to supplement this joinder and otherwise take any additional or further action with respect to the Motions or the matters addressed therein, including by joining in other arguments against approval of the Motions. WSFS further reserves the right to participate in any hearings on the Motions, including to make argument and examine witnesses.

Dated: June 24, 2014  
Wilmington, Delaware

**ASHBY & GEDDES, P.A.**

/s/ William P. Bowden  
William P. Bowden [I.D. No. 2553]  
Gregory A. Taylor [I.D. No. 4008]  
500 Delaware Avenue  
P.O. Box 1150  
Wilmington, Delaware 19899  
Telephone: (302) 654-1888  
Facsimile: (302) 654-2067

- and -

BROWN RUDNICK LLP  
Edward S. Weisfelner (admitted pro hac vice)  
Seven Times Square  
New York, New York 10036  
Telephone: (212) 209-4800  
Facsimile: (212) 209-4801

- and -

Jeffrey L. Jonas (admitted pro hac vice)  
Jeremy B. Coffey (admitted pro hac vice)  
One Financial Center  
Boston, Massachusetts 02111  
Telephone: (617) 856-8200  
Facsimile: (617) 856-8201

*Counsel to Wilmington Savings Fund Society, FSB, solely in its capacity as successor Indenture Trustee*

{00870208;v1 }