**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Energy Future Holdings Corp., *et al.*,[1] | ) | Case No. 14-10979 (CSS) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | |

**DECLARATION OF TIMOTHY R. POHL IN SUPPORT OF OMNIBUS OBJECTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO (I) THE MOTION OF ENERGY FUTURE INTERMEDIATE HOLDING COMPANY LLC AND EFIH FINANCE INC. FOR ENTRY OF AN ORDER (A) APPROVING POSTPETITION SECOND LIEN FINANCING, (B) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS, (C) AUTHORIZING THE USE OF CASH COLLATERAL, (D) AUTHORIZING THE EFIH SECOND LIEN REPAYMENT, (E) AUTHORIZING ENTRY INTO AND PAYMENT OF FEES UNDER THE COMMITMENT LETTER, AND (F) MODIFYING THE AUTOMATIC STAY AND (II) THE MOTION OF ENERGY FUTURE HOLDINGS CORP., *ET AL.*, FOR ENTRY OF ORDERS APPROVING CERTAIN EFIH SETTLEMENTS AND THE ONCOR TSA AMENDMENT**

I, Timothy R. Pohl, declare under penalty of perjury:

1. I am a Managing Director of the firm Lazard Frères & Co. LLC ("Lazard" or the "Firm"), which has its principal office at 30 Rockefeller Plaza, New York, New York 10020. I am authorized to make this declaration on behalf of Lazard and in support of the omnibus objection (the "Objection") of the Official Committee of Unsecured Creditors (the "Committee") of the above-captioned debtors and debtors-in-possession (the "Debtors") to (i) the motion [Docket No. 477] (the "Financing Motion") of Energy Future Immediate Holding Company LLC and EFIH Finance Inc. (together, the "EFIH Borrowers") for entry of an order authorizing the EFIH Second Lien DIP and (ii) the motion [Docket No. 472] (the "Settlement/TSA Motion" and

[1] The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, which are being jointly administered on an interim basis, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://efhcaseinfo.com.

together with the Financing Motion, the "Motions") of Energy Future Holdings Corp. ("EFH Corp."), *et al.*, for entry of orders approving the Second Lien Settlement and the Oncor TSA Amendment.[2] Unless otherwise stated in this declaration, I have personal knowledge of the facts set forth herein.[3]

## QUALIFICATIONS

2. Lazard is the U.S. operating subsidiary of a preeminent international financial advisory and asset management firm. Lazard, together with its predecessors and affiliates, has been advising clients around the world for over 150 years. Lazard has dedicated professionals who provide restructuring services to its clients.

3. The current vice chairmen, managing directors, directors, vice presidents and associates of Lazard have extensive experience working with financially troubled companies in complex financial restructurings out-of-court and in Chapter 11 proceedings. Lazard and its principals have been involved as advisor to debtor, creditor and equity constituencies and government agencies in many reorganization cases. Since 1990, Lazard's professionals have been involved in over 250 restructurings, representing over $1 trillion in debtor assets.

4. At Lazard, I have advised on numerous complex restructurings including United States Enrichment Corp., Longview Power, A123 Systems, Midwest Generation (bondholders), GMAC/Residential Capital, Capital Source, Highland Hotels, Opti Canada, Westgate Resorts, Clear Channel Outdoor and Xerium Technologies, among others.

5. Prior to joining Lazard, I was co-leader of Skadden, Arps, Meagher & Flom's worldwide corporate restructuring practice where I was involved in a variety of in-court and out-

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Objection.

[3] Certain disclosures herein relate to matters within the personal knowledge of other professionals at Lazard and are based on information provided by them.

of-court restructurings. I led the Chapter 11 cases of a number of major corporations, including National Steel, ICG Communications, McLeod USA, Radnor Holdings, VeraSun Energy and Diamond Brands. I also led successful out-of-court restructurings for companies across many industries, including Meridian Technologies, Reliant Resources, ITC^DeltaCom, Rural Cellular Communications, American National Power, InterGen, and Krispy Kreme in the restructuring of its troubled franchisees. I have also advised on numerous M&A transactions, including acting as lead counsel in the merger of America West and US Airways, the acquisition by OAO Severstal of Rouge Industries, the sale of National Steel to U.S. Steel, the acquisitions by Transworld Entertainment of multiple industry competitors, and acquisitions by private equity firms of companies such as Smart Carte Corp, Werner Ladder Company and Bayou Steel.

**BACKGROUND**

6. By the Motions, the Debtors seek to enter into the EFIH Second Lien DIP, the Second Lien Settlement, and the Oncor TSA Amendment.

7. As described in detail in the Objection, the Debtors propose to enter into the EFIH Second Lien DIP, pursuant to which (under the most recent proposal) EFIH[4] would receive $1.9 billion in cash in exchange for issuing $1.9 billion of "Tranche A Notes" to the EFIH Second Lien DIP Lenders bearing a 6.25% interest rate, and $95 million in "Tranche B Notes" to the Commitment Parties in satisfaction of a $95 million PIK Funding Fee. (Financing Mot. at 14.) In addition, the EFIH Second Lien DIP provides for up-front cash fees of approximately $35 million in various execution, approval, arranger, and funding cash fees, as well as a potential $11.25 million rights offering participation fee. (Financing Mot. at 14; Commitment Letter at 3.) At maturity, the holders of the Tranche A and B Notes (the "DIP Notes") would receive

[4] For purposes of this declaration, "EFIH" shall refer to EFIH individually, the EFIH Debtors or the EFIH Borrowers, as appropriate for the applicable context.

approximately 60% of the equity of reorganized EFH Corp. ("EFH"). (Financing Mot. at 17.) If EFIH enters into an alternative transaction such that the holders of DIP Notes are repaid in cash rather than equity, EFIH will have to pay a Prepayment Fee of $95 million, which equals 5% of the total proposed financing amount of $1.9 billion. (*Id.*) If approved, the EFIH Second Lien DIP will require quarterly debt service payments of approximately $30 million in cash (~$9.9 million monthly).

8. The Debtors propose to use the proceeds of the EFIH Second Lien DIP to refinance the two tranches of EFIH Second Lien Notes. As a result of the proposed refinancing of the EFIH Second Lien Notes, the Debtors are also seeking to settle the Alleged Makewhole Claims that purportedly arise as a result of the refinancing of such notes. The Debtors are also seeking approval of the Oncor TSA Amendment, which would divert certain payments that are currently made by Oncor directly to EFH (the tax payer) to EFIH (a disregarded entity for income tax purposes).

## ANALYSIS

### I. The EFIH Second Lien DIP Will Not Result in Any Cost Savings

9. The Debtors assert that the EFIH Second Lien Notes refinancing will save interest expense and deleverage EFH and EFIH, based on the anticipated one-year duration of these proceedings. (First Day Decl. ¶¶ 172, 178.) Specifically, under the original DIP proposal, the Debtors estimated the potential interest savings under the EFIH Second Lien DIP to be approximately $8 million per month. (Financing Mot. ¶ 32.) Using the Debtors' methodology, those savings increase to approximately $11 million per month under the revised DIP proposal. Based on this calculation, the total estimated savings over a twelve month period would be approximately $130 million, before consideration of any fees or other costs associated with the EFIH Second Lien DIP.

10. The Debtors interest expense savings calculation (i) assumes the EFIH Second Lien Notes accrue interest at the contract rate and not the default rate, which would be 200 basis points higher, and (ii) excludes the impact of interest on interest. Had the Debtors utilized the higher default rate and incorporated the impact of interest on interest, the amount of interest savings, before consideration of any fees or other costs associated with the EFIH Second Lien DIP, would be approximately $16 million per month, or approximately $195 million over a twelve month period.

**EFIH Second Lien DIP vs. Status Quo Interest Expense Comparison**[5]

| ($ in millions) | Status Quo Cost | | | Proposed Transactions Cost | | | Savings | |
|---|---|---|---|---|---|---|---|---|
| | 11.0% Notes | 11.75% Notes | Total | 2L DIP | 1L DIP | Total | Total | Per Month |
| **Memo:** | | | | | | | | |
| Interest Rate | 11.00% | 12.25% | | 6.25% | 4.25% | | | |
| Principal | $406 | $1,750 | $2,156 | $1,900 | $256 | $2,156 | | |
| **Interest Expense - At Contract Rate:** | | | | | | | | |
| 12-Month Period | $45 | $214 | $259 | $119 | $11 | $130 | **$129** | $10.8 |
| 18-Month Period | 67 | 322 | 389 | 178 | 16 | 194 | **194** | 10.8 |
| 24-Month Period | 89 | 429 | 518 | 238 | 22 | 259 | **259** | 10.8 |
| **Interest Expense - At Default Rate:** | | | | | | | | |
| 12-Month Period | $53 | $249 | $302 | $119 | $11 | $130 | **$173** | $14.4 |
| 18-Month Period | 79 | 374 | 453 | 178 | 16 | 194 | **259** | 14.4 |
| 24-Month Period | 106 | 499 | 604 | 238 | 22 | 259 | **345** | 14.4 |
| **Interest Expense - At Default Rate with Interest on Interest:** | | | | | | | | |
| 12-Month Period | $58 | $266 | $324 | $119 | $11 | $130 | **$194** | $16.2 |
| 18-Month Period | 89 | 414 | 503 | 178 | 16 | 194 | **308** | 17.1 |
| 24-Month Period | 123 | 570 | 693 | 238 | 22 | 259 | **433** | 18.1 |

11. A complete analysis of the costs of the proposed Pre-RSA Transactions, however, should take into account a number of additional factors, as described below.

[5] "Interest Expense At Contract Rate" on the EFIH Second Lien Notes is calculated at the stated contract rates (plus additional interest of 50 basis points on the 11.75% Notes due to the failure to register these securities). "Interest Expense At Default Rate" on the EFIH Second Lien Notes includes additional 200 basis points of default interest. "Interest Expense At Default Rate With Interest on Interest" includes interest on accrued prepetition interest and postpetition interest (with semi-annual compounding). "Proposed Transactions Cost" includes (i) interest on the $1.9 billion EFIH Second Lien DIP at 6.25% and (ii) interest at 4.25% on the $256 million of EFIH First Lien DIP Proceeds used to retire the remaining face amount of the EFIH Second Lien Notes.

**A. Cash Transaction Fees Should Be Taken Into Account**

12. There are approximately $46 million in aggregate cash transaction fees due under the EFIH Second Lien DIP (excluding the proposed PIK Funding Fee, Prepayment Fee and fees paid prepetition). Ignoring other relevant costs associated with the EFIH Second Lien DIP and Second Lien Settlement, such proposed transactions would result in cost savings to the Debtors after five months of these chapter 11 cases assuming interest on the EFIH Second Lien Notes accrues at the default rate, and seven months assuming interest accrues at the contract rate. Of course, this simple analysis, similar to the one conducted by the Debtors, fails to account for various other factors.

**B. The Opportunity Cost Associated with Excess Balance Sheet Cash Should Be Taken Into Account**

13. Since a portion of the funds under the EFIH First Lien DIP were borrowed with the express purpose of using such proceeds to fund the refinancing of the EFIH Second Lien Notes and Second Lien Settlement, the cost of such funds should be incorporated into the analysis of the EFIH Second Lien DIP. Specifically, if the Pre-RSA Transactions are not effectuated, EFIH could use excess balance sheet cash to repay a portion of the EFIH First Lien DIP without a prepayment penalty to avoid interest expense at 4.25% per annum. Based on a review of the Debtors' DIP budget, EFIH could conservatively use at least $600 million of excess cash to pay down the EFIH First Lien DIP and therefore reduce its interest expense by approximately $26 million per year. Pro forma for such a paydown, cash on hand would be at least approximately $460 million over the course of a 24 month bankruptcy.

**C. The Effect of the Operation of the Makewhole Premium Provisions and Second Lien Settlement Should be Considered**

14. The principal purpose of makewhole premium provisions, like that in the EFIH Second Lien Notes Indenture, is to ensure that borrowers cannot simply refinance the debt when

interest rates fall, thereby depriving debtholders of their contracted stream of interest payments over a specific period of time. Thus, upon a refinancing or repayment, the borrowers' obligation to pay debtholders above-market interest payments is potentially replaced by a makewhole premium, or in this instance, the Alleged Makewhole Claims. Furthermore, from the moment a makewhole premium is triggered, it accrues interest until the borrower pays the debtholders in full.

15. Accordingly, an assessment of the relative costs of the Pre-RSA Transactions should consider the impact of triggering the Alleged Makewhole Claims. As reflected in the charts below, the contractual decline over time in the amount of any alleged makewhole premiums plus the interest on those premiums that would potentially be triggered upon a refinancing of the EFIH Second Lien Notes outpaces the alleged interest savings under the EFIH Second Lien DIP.

**EFIH Second Lien DIP Interest Expense Savings vs. Makewhole Impacts (Default Rate)[6]**




[6] "DIP Interest Savings" calculated as the difference between the cost of the EFIH Second Lien DIP and the EFIH Second Lien Notes at the contract rate or default rate, as applicable. EFIH Second Lien DIP interest costs include (i) interest expense on $1.9 billion of EFIH Second Lien DIP at 6.25% and (ii) interest on $256 million of EFIH First Lien DIP at 4.25%. EFIH Second Lien Notes costs include (i) accrued interest expense (assumes default interest of 200 basis points, if appropriate), (ii) additional interest of 50 basis points on the 11.75% Notes due to the failure to register these securities and (iii) interest on interest (semi-annual compounding). Makewhole Reduction based on the step-down in the Makewhole Premium as seen in the chart titled "Estimated EFIH Second Lien Notes Makewhole Premium" on page 9 herein. Interest on Makewhole calculated as interest (at the contract rate or default rate, as appropriate) on the contingent Makewhole Premium of $385 million (assumes 43% settling parties), including interest on interest (semi-annual compounding).







### (1) Alleged Makewhole Claims Decrease Over Time if the Debtors Do Not Refinance EFIH Second Lien Notes

16. The amount of the Alleged Makewhole Claims will decrease over time if the EFIH Second Lien Notes are not refinanced. The calculation of the makewhole premium is dependent upon the remaining time until maturity (the more premature the repayment or refinancing, the greater the amount of the alleged premium due), and the prevailing interest rates at the time of prepayment (the lower the prevailing U.S Treasury rate, the greater the premium due). As a result, the amount of the Alleged Makewhole Claims decreases with each passing month. The amount of the Alleged Makewhole Claims will also decrease if interest rates (which remain at historic lows) rise, thereby increasing the rate used to discount each future interest payment.[8]

17. On average, the Alleged Makewhole Claims decrease (non-linearly) by approximately $17 million per month. If the Alleged Makewhole Claims are crystallized on July 9, 2014 (the "Assumed Settlement Date"),[9] the Alleged Makewhole Claims are estimated to total

---

[7] See Footnote 7 above.

[8] While it is true that fluctuations in prevailing interest rates could increase the makewhole calculation, only a downward movement in rates would work against the Debtors.

[9] July 9, 2014 is the assumed settlement date contained in the Form 8-K filed by the Debtors on June 9, 2014.

approximately $664 million (based on prevailing rates and time remaining to the first call dates of the two issuances of EFIH Second Lien Notes).[10] However, as reflected in the chart below, if the Debtors do not refinance the EFIH Second Lien Notes, then the Alleged Makewhole Claims will decrease from approximately $664 million as of the Assumed Settlement Date to approximately $511 million at twelve months from the Petition Date, approximately $397 million at eighteen months from the Petition Date, and approximately $289 million at twenty-four months from the Petition Date (assuming U.S. Treasury rates remain constant).

**Estimated EFIH Second Lien Notes Makewhole Premium**[11]

| **($ in millions)** | **Date** | | | | |
|---|---|---|---|---|---|
| | **4/29/14** | **7/9/14** | **4/30/15** | **10/31/15** | **4/30/16** |
| Total Make Whole Premium | $706 | $664 | $511 | $397 | $289 |
| *Make Whole Premium as % of Total Face Amount* | *32.7%* | *30.8%* | *23.7%* | *18.4%* | *13.4%* |

### (2) Alleged Makewhole Claims Crystallize at their Peak if the Debtors Refinance EFIH Second Lien Notes

18. The refinancing of the EFIH Second Lien Notes as proposed would cause those makewhole claims to crystalize at their peak, substantially increasing the amount of the Alleged Makewhole Claims to be settled and increasing the Debtors' risk with respect to the non-settling noteholders. For example, if the Debtors (i) refinance the EFIH Second Lien Notes, (ii) settle the Alleged Makewhole Claims of 43% of noteholders for 50% of the alleged makewhole claim calculated as of the Assumed Settlement Date, and (iii) lose their makewhole litigation against the remaining 57% of non-settling noteholders, the Pre-RSA Transactions would save the

---

[10] Thus, as of the Assumed Settlement Date, the anticipated cash payment due under the Second Lien Settlement on account of the Alleged Makewhole Claims, assuming the current participation rate of 43%, would be approximately $140 million, with the potential to increase up to approximately $333 million if all holders were to opt into the settlement.

[11] The discount rate for makewhole calculation applied based on constant maturity US Treasury (rates as of June 13, 2014); Treasury rate used for discount purposes changed when redemption date is within a certain time frame of the makewhole date (i.e., switch from 3-year rate to 2-year rate and 2-year rate to 1-year rate). Calculation excludes additional 50 basis points registration rights interest on 11.75% Notes.

Debtors' estates only approximately $40 million had they not executed such transactions and exited bankruptcy in one year. These savings would be reduced to near zero if the chapter 11 cases last seventeen months, and over cases that last two years, the Pre-RSA Transactions actually cost the Debtors more than had they not executed such transactions. Thus, the Debtors will save little, if any, money by entering into the Pre-RSA Transactions if they ultimately lose the EFIH Second Lien Notes makewhole litigation.

**EFIH Second Lien DIP vs. Status Quo Cost Comparison (Makewhole Litigation Lost)[12]**

| EFIH 2nd Lien DIP Interest Expense & Fees | | | | |
|---|---|---|---|---|
| *($ in millions)* | Case Length | | | |
| **Months** | **0** | **12** | **18** | **24** |
| Cash Financing Fees | $46 | $46 | $46 | $46 |
| Postpetition Interest - 2L Notes | 60 | 60 | 60 | 60 |
| Make-Whole Settlement | 140 | 140 | 140 | 140 |
| Contingent Make-Whole | 385 | 385 | 385 | 385 |
| Accrued Interest on Make-Whole | 0 | 45 | 76 | 109 |
| Interest Exp - 2L DIP | 0 | 96 | 156 | 215 |
| Interest Exp - $600mm 1L DIP | 0 | 21 | 33 | 46 |
| **Total** | **$632** | **$793** | **$897** | **$1,001** |

| EFIH 2nd Lien Notes Interest Expense - Default Rate | | | | |
|---|---|---|---|---|
| *($ in millions)* | Case Length | | | |
| **Months** | **0** | **12** | **18** | **24** |
| Postpetition Interest - 2L Notes | $60 | $60 | $60 | $60 |
| Contingent Make-Whole | 664 | 511 | 397 | 289 |
| Interest Exp - 2L Notes | 0 | 264 | 443 | 632 |
| **Total** | **$725** | **$835** | **$900** | **$981** |
| **DIP Savings - Default Rate** | **$93** | **$41** | **$4** | **($20)** |
| Memo: | | | | |
| DIP Savings - Contract Rate | $84 | ($7) | ($73) | ($128) |

($ in millions)
$1,200
1,100
1,000
900
800
$724
700
$632
600
Contract Rate: February 2015 Break-Even
Default Rate: October 2015 Break-Even
$1,001
$976
July 2014 November 2014 March 2015 August 2015 December 2015 April 2016
EFIH 2nd Lien DIP Interest Expense & Fees
EFIH 2nd Lien Notes Interest Expense - Default Rate
EFIH 2nd Lien Notes Interest Expense - Contract Rate

19. Alternatively, if it is assumed that the Debtors are successful in the makewhole litigation, the combined cost of the EFIH Second Lien DIP transaction fees, opportunity cost

[12] All figures include accrued postpetition interest of $60 million or $52 million at default or non-default rate, respectively, through July 9, 2014. "EFIH Second Lien DIP Interest & Fees" includes (i) interest at 6.25%, (ii) $46 million of cash financing fees, excluding the $13.6 million of cash fees paid prepetition, (iii) $140 million Second Lien Settlement (43% Settling Parties), (iv) $385 million contingent Makewhole Premium following settlement, (v) interest on the contingent Makewhole Premium at the default rate (including interest on interest; semi-annual compounding) and (vi) interest on $600 million of EFIH First Lien DIP at 4.25% (represents the opportunity cost associated with certain excess balance sheet cash that could otherwise be used to pay down debt). "EFIH Second Lien Notes Interest Expense - Contract Rate" includes (i) accrued interest, (ii) additional interest of 50 basis points on the 11.75% Notes due to the failure to register these securities, (iii) interest on interest (semi-annual compounding) and (iv) Makewhole Premium as of the emergence date (assumed date of redemption). "EFIH Second Lien Notes Interest Expense - Default Rate" also includes 200 basis points of default interest. The calculation of the EFIH Second Lien Notes Makewhole Premium is linearly interpolated based on assumed equal distribution of interest payments for purposes of this analysis.

associated with excess cash and the Second Lien Settlement with 43% of noteholders will result in a net cost to the estates compared to doing nothing at all unless the Debtors remain in bankruptcy for fourteen months or more, even assuming that default interest is payable on the EFIH Second Lien Notes. If the EFIH Second Lien Notes are only entitled to interest at the contract rate, the chapter 11 cases will need to last more than nineteen months in order for the Pre-RSA Transactions to result in any cost savings.

**EFIH Second Lien DIP vs. Status Quo Cost Comparison (Makewhole Litigation Won)**[13]

| EFIH 2nd Lien DIP Interest Expense & Fees | | | | |
|---|---|---|---|---|
| *($ in millions)* | Case Length | | | |
| Months | 0 | 12 | 18 | 24 |
| Cash Financing Fees | $46 | $46 | $46 | $46 |
| Postpetition Interest - 2L Notes | 60 | 60 | 60 | 60 |
| Make-Whole Settlement | 140 | 140 | 140 | 140 |
| Interest Exp - 2L DIP | 0 | 96 | 156 | 215 |
| Interest Exp - $600mm 1L DIP | 0 | 21 | 33 | 46 |
| **Total** | **$246** | **$363** | **$435** | **$507** |

| EFIH 2nd Lien Notes Interest Expense - Default Rate | | | | |
|---|---|---|---|---|
| *($ in millions)* | Case Length | | | |
| Months | 0 | 12 | 18 | 24 |
| Postpetition Interest - 2L Notes | $60 | $60 | $60 | $60 |
| Interest Exp - 2L Notes | 0 | 264 | 443 | 632 |
| **Total** | **$60** | **$324** | **$503** | **$693** |
| **DIP Savings - Default Rate** | **($186)** | **($39)** | **$68** | **$185** |
| **Memo:** | | | | |
| DIP Savings - Contract Rate | ($194) | ($87) | ($9) | $77 |

($ in millions)
Default Rate: July 2015 Break-Even
Contract Rate: November 2015 Break-Even
$800
700
600
500
400
300
200
100
0
$693
$507
$246
$60
July 2014
November 2014
March 2015
August 2015
December 2015
April 2016
EFIH 2nd Lien DIP Interest Expense & Fees
EFIH 2nd Lien Notes Interest Expense - Default Rate
EFIH 2nd Lien Notes Interest Expense - Contract Rate

20. To illustrate further that the proposed EFIH Second Lien DIP and Second Lien Settlement do not produce material cost savings for the Debtors, it is informative to review the economics of the transaction assuming the Alleged Makewhole Claims ultimately are settled at 50% later in the chapter 11 cases.

[13] All figures include accrued postpetition interest of $60 million or $52 million at default or non-default rate, respectively, through July 9, 2014. "EFIH Second Lien DIP Interest & Fees" includes (i) interest at 6.25%, (ii) $46 million of cash financing fees, excluding the $13.6 million of cash fees paid prepetition, (iii) $140 million Second Lien Settlement (43% settling parties) and (iv) interest on $600 million of EFIH First Lien DIP at 4.25% (represents the opportunity cost associated with certain excess balance sheet cash that could otherwise be used to pay down debt). "EFIH Second Lien Notes Interest Expense - Contract Rate" includes (i) accrued interest, (ii) additional interest of 50 basis points on the 11.75% Notes due to the failure to register these securities and (iii) interest on interest (semi-annual compounding). "EFIH Second Lien Notes Interest Expense - Default Rate" also includes 200 basis points of default interest.

**EFIH Second Lien DIP vs. Status Quo Cost Comparison (Settle Now Vs. Settle Later)[14]**

| EFIH 2nd Lien DIP Interest Expense & Fees | | | | |
|---|---|---|---|---|
| *($ in millions)* | Case Length | | | |
| **Months** | 0 | 12 | 18 | 24 |
| Cash Financing Fees | $46 | $46 | $46 | $46 |
| Postpetition Interest - 2L Notes | 60 | 60 | 60 | 60 |
| Make-Whole Settlement | 140 | 140 | 140 | 140 |
| Contingent Make-Whole at 50% | 193 | 193 | 193 | 193 |
| Accrued Interest on Make-Whole at 50% | 0 | 23 | 38 | 54 |
| Interest Exp - 2L DIP | 0 | 96 | 156 | 215 |
| Interest Exp - $600mm 1L DIP | 0 | 21 | 33 | 46 |
| **Total** | **$439** | **$578** | **$666** | **$754** |

| EFIH 2nd Lien Notes Interest Expense - Default Rate | | | | |
|---|---|---|---|---|
| *($ in millions)* | Case Length | | | |
| **Months** | 0 | 12 | 18 | 24 |
| Postpetition Interest - 2L Notes | $60 | $60 | $60 | $60 |
| Contingent Make-Whole at 50% | 332 | 255 | 199 | 144 |
| Interest Exp - 2L Notes | 0 | 264 | 443 | 632 |
| **Total** | **$392** | **$579** | **$702** | **$837** |
| **DIP Savings - Default Rate** | **($46)** | **$1** | **$36** | **$83** |
| **Memo:** | | | | |
| DIP Savings - Contract Rate | ($55) | ($47) | ($41) | ($25) |




## II. The Refinancing of the EFIH Second Lien Notes Will Reduce the EFIH Debtors' Liquidity

21. Though EFIH currently has approximately $1.1 billion in balance sheet cash, most of which was provided by the EFIH First Lien DIP, the proposed refinancing of the EFIH Second Lien Notes will materially reduce the liquidity of EFIH. Specifically, if the Motions are granted, EFIH will be required to (i) make payments of up to approximately $420 million out of cash on hand to refinance the EFIH Second Lien Notes, including financing fees related thereto, (ii) make the payments under Second Lien Settlement of approximately $140 million (assuming the current 43% participation rate), and (iii) pay interest on a current basis on the EFIH Second

[14] All figures include accrued postpetition interest of $60 million or $52 million at default or non-default rate, respectively, through July 9, 2014. "EFIH Second Lien DIP Interest & Fees" includes (i) interest at 6.25%, (ii) $46 million of cash financing fees, excluding the $13.6 million of cash fees paid prepetition, (iii) $140 million Second Lien Settlement (43% Settling Parties), (iv) 50% of the $385 million contingent Makewhole Premium following settlement, (v) 50% of the interest on the contingent Makewhole Premium at the default rate (including interest on interest; semi-annual compounding) and (vi) interest on $600 million of EFIH First Lien DIP at 4.25% (represents the opportunity cost associated with certain excess balance sheet cash that could otherwise be used to pay down debt). "EFIH Second Lien Notes Interest Expense - Contract Rate" includes (i) accrued interest, (ii) additional interest of 50 basis points on the 11.75% Notes due to the failure to register these securities, (iii) interest on interest (semi-annual compounding) and (iv) 50% of Makewhole Premium as of the emergence date (assumed date of redemption). "EFIH Second Lien Notes Interest Expense - Default Rate" also includes 200 basis points of default interest. The calculation of the EFIH Second Lien Notes Makewhole Premium is linearly interpolated based on assumed equal distribution of interest payments for purposes of this analysis.

Lien DIP—all costs that EFIH would not otherwise be required to bear during these chapter 11 cases. Altogether, the refinancing of the EFIH Second Lien Notes will immediately reduce the liquidity of EFIH by approximately $560 million in cash, as well as require approximately $10 million per month in incremental cash outflows on average thereafter relative to not proceeding with the EFIH Second Lien DIP and Second Lien Settlement.

22. Alternatively, if the Motions are denied, even if these chapter 11 cases run for two years, with no EFIH Second Lien DIP, EFIH's liquidity will never fall below $1 billion unless it elects to use certain excess cash to pay down the EFIH First Lien DIP.

## III. The Oncor Valuation Implied by the EFIH Second Lien Creditor DIP Proposal is Over $880 million Higher than the Revised DIP Proposal

23. The $1.9 billion EFIH Second Lien DIP, including all outstanding Tranche A and Tranche B Notes, will convert into approximately 60% of the stock in reorganized EFH at emergence pursuant to its terms. Assuming the Debtors win the makewhole litigation with non-settling EFIH First Lien Noteholders and EFIH Second Lien Noteholders, the EFIH Second Lien DIP's equity conversion implies a total enterprise value ("TEV") for Oncor of approximately $16.7 billion, as well as an equity value for reorganized EFH of approximately $3.3 billion.[15]

24. The terms of the revised EFIH Second Lien Creditor DIP, which includes NextEra as a strategic partner, implies an Oncor TEV of approximately $17.6 billion and reorganized EFH equity value of $3.6 billion. Accordingly, this DIP proposal implies an Oncor TEV and reorganized EFH equity value that are approximately $880 million and $275 million higher, respectively, than that implied by the EFIH Second Lien DIP.[16] In fact, this revised

[15] Reorganized EFH equity value calculated as Tranche A and B Notes balance at emergence of $1.995 billion divided by 60%.

[16] The reorganized EFH equity value implied by the revised EFIH Second Lien Creditor DIP is at less of a premium relative to the EFIH Second Lien DIP because the terms of the EFIH Second Lien Creditor DIP contemplate paying the Alleged Makewhole Claims in full, among other terms.

proposal appears to view EFIH as solvent—it proposes to pay the Alleged Makewhole Claims in full and to pay EFIH general unsecured creditors in full, while providing some additional value in the form of a further cash payment to EFH general unsecured creditors.

**Implied Valuation of Oncor and Reorganized EFH Equity**[17]

**[CHART REDACTED]**

## IV. The EFIH Unsecured Notes are Trading at a Premium to the Recovery Implied by the EFIH Second Lien DIP Equity Conversion

25. The EFIH Unsecured Notes, which would be entitled to participate in the EFIH Second Lien DIP rights offering, are currently trading at 124% of par and, more relevantly, 118% of their accrued prepetition claims under those securities—a substantial premium, and, as reflected in the chart below, one far in excess of the recovery implied by the proposed equity splits in the EFIH Second Lien DIP.[18] These facts indicate that "the market" likely believes that the participation rights in the proposed EFIH Second Lien DIP have significant independent value.

[17] Debt and Cash Figures Based on 6/22/14 EFH Board Materials. Cash figure for Unsecured Original Proposal adjusted to account for approximately 10 months of incremental interest expense at 8% as opposed to 6.25% on the EFIH Second Lien DIP.

[18] Market Prices as of June 20, 2014 per Bloomberg and AdvantageData. Assumes EFIH Unsecured Notes claim of $1.648 billion does not include either (i) postpetition interest or (ii) redemption or makewhole premium, if applicable.

**EFIH Unsecured Notes Recovery Per RSA vs. Market Trading Price[19]**

| Implied Reorganized Equity | % of Equity | Equity Value ($mm) |
|---|---|---|
| EFIH Second Lien DIP | 60.00% | $1,995 |
| EFIH Unsecured Notes | 39.20% | 1,303 |
| EFH Unsecured Creditors | 0.40% | 13 |
| Sponsors | 0.40% | 13 |
| **Illustrative Reorganized EFH Equity Value** | | **$3,325** |

| Implied EFIH Unsecured Notes Recovery | Recovery ($mm) |
|---|---|
| $ Recovery | $1,303 |
| EFIH Unsecured Claims | 1,648 |
| % Recovery | 79% |
| *Discount to Current Trading Price of 124* | *(45%)* |
| *Discount to Current Claim of 105* | *(26%)* |

## V. The Oncor TSA Amendment Transfers Significant Cash Flow from EFH to EFIH

26. Pursuant to the Oncor TSA Amendment, the payments that are currently made by Oncor directly to EFH—the tax payer—under the Oncor TSA would be diverted to EFIH (a disregarded entity for income tax purposes). As a result, the collateral under the EFIH First Lien DIP Facility and the EFIH Second Lien DIP Facility would include proceeds of the Oncor TSA Amendment payments, which are estimated by the Debtors to total approximately $320 million in net cash flows during the period between the Assumed Settlement Date and twelve months following the Petition Date, and approximately $575 million in the first twenty-four months following the Petition Date.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Dated: June 24, 2014
Chicago, IL

*/s/ Timothy R. Pohl*
**Timothy R. Pohl**
**Managing Director**
**Lazard Frères & Co. LLC**

[19] See Footnote 19 above.