

# Akin Gump

## STRAUSS HAUER & FELD LLP

ROBERT J. BOLLER
+1 212.872.8170/fax: +1 212.872.1002
rboller@akingump.com

June 25, 2014

**VIA HAND DELIVERY AND ECF**

Hon. Christopher S. Sontchi
United States Bankruptcy Court
824 North Market Street, 5th Floor
Wilmington, Delaware 19801

> Re:  ***In re Energy Future Holdings Corp. et al.*, Case No. 14-10979 and
> *CSC Trust Co. of Delaware v. Energy Future Intermediate Holding Co. LLC*,
> Adv. Proc. No. 14-50363-CSS**

Dear Judge Sontchi:

We represent the ad hoc committee of holders of 11.25%/12.25% unsecured senior toggle notes due December 1, 2018, issued pursuant to that certain indenture, dated December 5, 2012, by and among Energy Future Intermediate Holding Company LLC ("EFIH") and EFIH Finance, Inc., as issuers, and UMB Bank N.A., as successor trustee (the "Ad Hoc Committee of EFIH Unsecured Noteholders").  We write in response to the letter (the "Discovery Letter") from counsel to the CSC Trust Company of Delaware, as successor indenture trustee (the "First Lien Trustee") for the 10% Senior Secured Notes Due 2020 issued by EFIH and EFIH Finance Inc., dated June 23, 2014 (Docket No. 1058), requesting a telephonic conference with the Court concerning the disputes raised in its Discovery Letter.

The First Lien Trustee is seeking to compel production from the Ad Hoc Committee of EFIH Unsecured Noteholders of:  (i) internal communications or documents from within the specific firms that are members of the Ad Hoc Committee of EFIH Unsecured Noteholders; (ii) Bloomberg instant messages or other undefined forms of electronic communication; and (iii) an expanded search for documents dating back to January 1, 2013.  The First Lien Trustee also alleges that the Ad Hoc Committee of EFIH Unsecured Noteholders has asserted a broad common interest privilege as the basis for withholding documents and demands production of a privilege log.  Finally, and for the first time, the First Lien Trustee takes issue with the fact that



**Akin Gump**

STRAUSS HAUER & FELD LLP

Hon. Christopher S. Sontchi
Akin Gump Strauss Hauer & Feld
June 25, 2014
Page 2

we did not produce documents in response to Document Requests 9, 23, 31.[1]  *See* Discovery
Letter at 2-3.

   In an effort to paint the Ad Hoc Committee of EFIH Unsecured Noteholders as
intransigent or uncooperative, the First Lien Trustee—which has no economic interest at stake in
the issues before the Court at the June 30 hearing—makes numerous misstatements, and omits
material facts in describing the discovery dispute.[2]  Contrary to what the allegations set forth in
the Discovery Letter:

   •  The RSA Assumption Motion is not scheduled to be heard at the June 30 hearing.
*See* Discovery Letter at 1, fn. 1.  Only the Second Lien DIP[3] and Second Lien Settlement[4] will
go forward at that time.[5]

   •  The Ad Hoc Committee of EFIH Unsecured Noteholders did not wait until June 2,
2014 to notify the First Lien Trustee of its position regarding the requested discovery.  *See*
Discovery Letter at 2-3.

---

  [1] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Ad Hoc
Committee of EFIH Unsecured Noteholders' Responses and Objections to CSC Trust Company of Delaware's First
Set of Document Requests, dated June 2, 2014 (the "Responses and Objections"), attached as Exh. D to the
Discovery Letter.

  [2] It is, however, worth noting that counsel to the First Lien Trustee also serves as counsel in these cases to
the Ad Hoc Group of EFIH First Lien Noteholders whose interests are opposed to those of the Ad Hoc Committee
of EFIH Unsecured Noteholders and which submitted a competing bid to provide the Second Lien DIP financing.

  [3] "Second Lien DIP" refers to EFIH Second Lien DIP Facility described in the *Motion of Energy Future
Intermediate Holding Company LLC and EFIH Finance Inc. for Entry of an Order (A) Approving Postpetition
Second Lien Financing, (B) Granting Liens and Providing Superpriority Administrative Expense Claims, (C)
Authorizing the Use of Cash Collateral, (D) Authorizing the EFIH Second Lien Repayment; (E) Authorizing Entry
Into and Payment of Fees Under the Commitment Letter, and (F) Modifying the Automatic Stay* [Docket No. 477]
(the "EFIH Second Lien DIP Motion").

  [4] "Second Lien Settlement" refers to the second lien settlement with (a) the Second Lien RSA Parties and
(b) all other holders of EFIH Second Lien Notes that elect to participate in the Second Lien Settlement and become
Settling EFIH Second Lien Note Holders through the Second Lien Opt-In, as described in the *Motion of Energy
Future Holdings Corp., et al., for Entry of Orders Approving Certain EFIH Settlements and the Oncor TSA
Amendment Filed by Energy Future Holdings Corp.* at Docket No. 472.

  [5] *See Re-Notice of "Motion of Energy Future Holdings Corp., et al., for Entry of an Order Authorizing the
RSA Debtors to Assume the Restructuring Support Agreement and Modifying the Automatic Stay"* [D.I. 505] and
*Hearing Thereon* [Docket No. 986]



Hon. Christopher S. Sontchi
Akin Gump Strauss Hauer & Feld
June 25, 2014
Page 3

- More than six weeks ago, on May 12, 2014, we disclosed the precise scope and parameters of our document search to the First Lien Trustee. We then re-affirmed the scope of that production in letters dated May 15 and May 20, 2014, which are attached respectively hereto as **Exhibit 1** and **Exhibit 2**. Accordingly, the EFIH First Lien Trustee was aware of our position well before the Ad Hoc Committee of EFIH Unsecured Noteholders served its formal Responses and Objections on June 2, 2014. *See* Discovery Letter at 2-3. Yet, the First Lien Trustee waited until now to raise these issues.

- The May 19, 2014, email on which the First Lien Trustee purports to rely involved a dispute **between the First Lien Trustee and the Debtors** which has subsequently been resolved. *See* Discovery Letter at 2; Exh. C to the Discovery Letter at 1. It was not addressed to, and did not purport to apply to, the Ad Hoc Committee of EFIH Unsecured Noteholders, as the EFIH First Lien Trustee suggests.

- The Ad Hoc Committee of EFIH Unsecured Noteholders provided the First Lien Trustee with ample authority supporting its refusal to produce the purely internal deliberations and analysis of its members (*i.e.,* communications within or among the employees of an individual institution which is a Committee member). *See* Discovery Letter at 3. Namely, we directed the First Lien Trustee to this Court's June 6, 2014 ruling with respect to a nearly identical dispute among TCEH creditors. *See* Exh. F to the Discovery Letter at 4-5.

- The EFIH First Lien Trustee's Document Requests clearly indicate they were issued in connection with the EFIH First Lien Makewhole Adversary Proceeding, not any Contested Matter. *See* Discovery Letter at fn. 2; Exh. B to the Discovery Letter at 1.

- The Ad Hoc Committee of EFIH Unsecured Noteholders has not asserted a broad common interest with the Debtors, nor has it asserted a common interest with the Debtors over the negotiation of the terms of the Second Lien DIP. *See* Discovery Letter at 4-5. Rather, as we have repeatedly explained to the First Lien Trustee—both verbally and in writing—the Ad Hoc Committee of EFIH Unsecured Noteholders has a common interest with the Debtors concerning the supposed entitlement of holders of the EFIH First Lien Notes and EFIH Second Lien Notes to a makewhole premium. *See* **Exhibit 2** at 2; Exh. F to the Discovery Letter at 6. Documents withheld based on the common interest privilege solely relate to analysis of the makewhole premium, and not the Second Lien DIP.



Hon. Christopher S. Sontchi
Akin Gump Strauss Hauer & Feld
June 25, 2014
Page 4

  • In the June 20 Letter, the Ad Hoc Committee of EFIH Unsecured Noteholders offered to explore whether a stipulation of facts by the parties could resolve the instant discovery dispute. *See* Exh. F to the Discovery Letter at 7. The First Lien Trustee failed to respond to this proposal.

For the reasons discussed below, the Court should deny the First Lien Trustee's attempt to compel production of additional discovery from the Ad Hoc Committee of EFIH Unsecured Noteholders. In essence, the requests in the Discovery Letter are untimely and wholly irrelevant to any of the Contested Matters.

## I.    Background of Discovery and Meet & Confer Conferences

On May 8, 2014, the First Lien Trustee first sent informal document requests to the Ad Hoc Committee of EFIH Unsecured Noteholders (the "Informal Requests"), requesting the production of seven categories of documents within a week. *See* Exh. A to the Discovery Letter. The Ad Hoc Committee of EFIH Unsecured Noteholders believed (and still believes) that none of the Informal Requests are relevant, or reasonably calculated to lead to the discovery of admissible evidence in connection with, any Contested Matter.

Notwithstanding the lack of relevance, the Ad Hoc Committee of EFIH Unsecured Noteholders agreed to produce certain documents in order to avoid an unnecessary discovery dispute. Accordingly, on May 12, 2014, counsel to the Ad Hoc Committee of EFIH Unsecured Noteholders participated in a meet and confer call with counsel to the First Lien Trustee to discuss the Informal Requests and the Ad Hoc Committee of EFIH Unsecured Noteholders' proposed response. During that meet and confer, counsel to the Ad Hoc Committee of EFIH Unsecured Noteholders described in detail the scope and parameters of the planned production. Specifically, the Ad Hoc Committee of EFIH Unsecured Noteholders agreed to produce emails from Committee members, their attorneys, and their financial advisors, regarding the negotiations that led to the RSA[6] and Second Lien DIP.

On May 15, 2014, exactly one week after receiving the Informal Requests, the Ad Hoc Committee of EFIH Unsecured Noteholders began a rolling production of documents. The cover letter to that production once again detailed the parameters of our document production, including the custodians, the date ranges, and the domain name restrictions. *See* **Exhibit 1**. As

---

[6] "RSA" refers to the Restructuring Support and Lock-Up Agreement, dated as of April 29, 2014, attached hereto as Exhibit 1 to Exhibit A of the RSA Assumption Motion at Docket No. 505.



**Akin Gump**

STRAUSS HAUER & FELD LLP

Hon. Christopher S. Sontchi
Akin Gump Strauss Hauer & Feld
June 25, 2014
Page 5

explained in the May 15 letter, the Ad Hoc Committee of EFIH Unsecured Noteholders searched the emails of the custodians requested by the First Lien Trustee—four attorneys and advisors retained by the Ad Hoc Committee of EFIH Unsecured Noteholders—and included four additional custodians from the members of the Ad Hoc Committee of EFIH Unsecured Noteholders. Additionally, we targeted our domain name restrictions and applicable date range to isolate documents related to the negotiations of the RSA.[7] We did not apply any search term restrictions, but rather, we broadly produced all non-privileged emails related to the EFH negotiations between and among the parties to the RSA and members of the Ad Hoc Committee of EFIH Unsecured Noteholders, including among other things, negotiations surrounding the RSA, the Second Lien DIP, and the Second Lien Settlement. Accordingly, the First Lien Trustee's claim that the Ad Hoc Committee of EFIH Unsecured Noteholders waited until June 2, 2014 to articulate its position on discovery is demonstrably false.

On May 19, 2014, counsel to the First Lien Trustee sent an email raising an issue with **the Debtors'** production, and we understand the issue has since been resolved by the First Lien Trustee and the Debtors. *See* Exh. C to the Discovery Letter ("We are particularly frustrated by **the Debtors' counsel's** refusal…"). The May 19 email raised no issue with the production from the Ad Hoc Committee of EFIH Unsecured Noteholders, and gave no indication that the First Lien Trustee was in any way dissatisfied with the scope or parameters thereof, including with respect to our position that only the negotiations among the parties were relevant. Instead, the First Lien Trustee merely insisted that the Debtors expand their production beyond advisors, which the Ad Hoc Committee of EFIH Unsecured Noteholders had already done. *See id.*

On May 22, 2014, the Ad Hoc Committee of EFIH Unsecured Noteholders completed its production in response to the Informal Requests. In total, the Ad Hoc Committee of EFIH Unsecured Noteholders produced 3,666 documents totaling almost 20,000 pages. At no time between our initial production on May 15, 2014, which reiterated the specific search parameters discussed in the prior meet and confer, and June 17, 2014, did the First Lien Trustee raise any issues with the Ad Hoc Committee of Unsecured Noteholders' plan for searching and producing documents in response to the Informal Requests.

Nevertheless, on May 21, 2014, just prior to completing our expeditious production in response to the Informal Requests, the First Lien Trustee served the Ad Hoc Committee of EFIH Unsecured Noteholders with a formal document subpoena (the "Subpoena"). Although the First

---

[7] On May 20, 2014, we made a second production and disclosed that we updated our search parameters to include two additional domain names. *See* **Exhibit 2**.



Hon. Christopher S. Sontchi
Akin Gump Strauss Hauer & Feld
June 25, 2014
Page 6

Lien Trustee now seems to contend otherwise, the caption of the Subpoena clearly indicates that it was issued in connection with the EFIH First Lien Makewhole Adversary Proceeding. *See* Exh. B to the Discovery Letter at 1. In the Subpoena, the First Lien Trustee requested categories of documents that were previously produced in connection with the Informal Requests, as well as numerous additional broad categories of documents.

On June 2, 2014, the Ad Hoc Committee of EFIH Unsecured Noteholders served its Responses and Objections to the Subpoena, objecting to the additional requests on the grounds that they did not seek documents relevant to, or reasonably calculated to lead to the discovery of admissible evidence in connection with, any Contested Matter or the EFIH First Lien Makewhole Adversary Proceeding. Notwithstanding the relevance objections, the Responses and Objections made clear that because of the breadth of its production in response to the Informal Requests, which included all non-privileged communications between and among the RSA parties related to EFH, the Ad Hoc Committee of EFIH Unsecured Noteholders had previously produced documents responsive to the vast majority of the Requests.

On June 17, 2014, approximately five weeks after the initial production of documents by the Ad Hoc Committee of EFIH Unsecured Noteholders, the First Lien Trustee sent a letter (the "June 17 Letter") to the Ad Hoc Committee of EFIH Unsecured Noteholders, complaining for the first time that there were deficiencies in its production. *See* Exh. E to the Discovery Letter. The next day, on June 18, 2014, counsel for the Ad Hoc Committee of EFIH Unsecured Noteholders and the First Lien Trustee participated in a meet and confer during which the Ad Hoc Committee of EFIH Unsecured Noteholders made clear that the additional discovery requested in the June 17 Letter, including purely internal analysis and communications among the Ad Hoc Committee of EFIH Unsecured Noteholders' individual member institutions, is neither relevant nor reasonably calculated to the lead to the discovery of admissible evidence in connection with the Contested Matters. On June 20, 2014, the Ad Hoc Committee of EFIH Unsecured Noteholders formally responded to the June 17 Letter, and reiterated the positions it set forth during the June 18 meet and confer. *See* Exh. F to the Discovery Letter.

## II.    The Additional Discovery Sought By The EFIH First Lien Trustee Is Not Relevant To Any Contested Matter

In its Discovery Letter, the First Lien Trustee contends that the Ad Hoc Committee of EFIH Unsecured Noteholders must produce three additional categories of documents: (1) purely internal emails and analysis; (2) Bloomberg messages; and (3) documents pre-dating January 28, 2014. None of these categories are relevant to, or reasonably calculated to lead to the discovery



**Akin Gump**

STRAUSS HAUER & FELD LLP

Hon. Christopher S. Sontchi
Akin Gump Strauss Hauer & Feld
June 25, 2014
Page 7

of admissible evidence in connection with, any Contested Matter. In addition, the First Lien Trustee belatedly takes issue with the fact that we did not produce documents in response to Document Requests 9, 23, 31 to the Subpoena.

First, internal communications among the employees of individual members of the Committee are not relevant. As the Court is well aware, the matters scheduled to be heard at the June 30 hearing relate to the Debtors' decision to enter into the Second Lien DIP and the Second Lien Settlement.[8] The Debtors bear the burden of demonstrating that their actions are consistent with the exercise of their business judgment. *See* June 6 Hr'g Tr. at 41:14-42:10, 65:22-66:15, 69:2-7. Purely internal communications among the employees of individual members of the Ad Hoc Committee of EFIH Unsecured Noteholders, who are neither employees nor agents of the Debtors, are irrelevant here. Additionally, purely internal analyses of the underlying transactions, which were not shared with the Debtors or other RSA parties, are also of no import to matters being heard on June 30.

The EFIH First Lien Trustee's sole justification for its demand is based on pure speculation: "[I]t is **possible** that those emails [the thousands of documents produced by the Ad Hoc Committee of EFIH Unsecured Noteholders evidencing the arms-length negotiations leading up to the RSA] were carefully choreographed to avoid containing certain information that … is discoverable." Discovery Letter at 4 (emphasis added). Based on this preposterous hypothetical, the EFIH First Lien Trustee demands all of the internal emails sent by the members of the Ad Hoc Committee of EFIH Unsecured Noteholders. This is the very definition of an improper fishing expedition, and should not be countenanced.

This Court ruled on a substantially similar discovery issue at the "Second Day" hearing on June 6, 2014, where the TCEH unsecured creditors sought discovery from the TCEH First Lien creditors in connection with the Debtors' motion to assume the RSA. The TCEH First Lien creditors objected on the grounds that any discovery from them would be irrelevant, as the only relevant question before the Court in connection with the RSA Assumption Motion will be whether the Debtors reasonably exercised their business judgment in entering into the transaction. *See* June 6 Hr'g Tr. at 41:14-42:10. The Court concurred with the TCEH Frist Lien creditors and ruled that the requested discovery was improper because the Court's inquiry was limited to the propriety of the Debtors' decision-making. *Id.* at 65:22-66:15, 69:2-7.

---

[8] On July 18, the Court will examine the issues related to assumption of the RSA.



Hon. Christopher S. Sontchi
Akin Gump Strauss Hauer & Feld
June 25, 2014
Page 8

This same reasoning applies to purely internal communications within each member of the Ad Hoc Committee. Under Federal Rule of Civil Procedure 26(b), courts in the Third Circuit will deny a discovery request where the requesting party cannot show that the information it seeks is either relevant or reasonably calculated to lead to the discovery of admissible evidence. *See Westchester Fire Ins. Co. v. Household Int'l, Inc.*, CIV.A.02-1328 JJF, 2005 WL 23351, at \*2 (D. Del. Jan. 5, 2005) *aff'd*, 167 F. App'x 895 (3d Cir. 2006) ("Notwithstanding the liberal discovery standard in the Third Circuit . . . I conclude that Defendants have not demonstrated that discovery . . . is relevant to their fraud claim…or that such discovery is reasonably calculated to lead to the discovery of admissible evidence. Thus, I will deny Defendant's Motion To Compel Discovery . . . ."); *Konstantopoulos v. Westvaco Corp.*, No. 90-146-CMW, 1991 WL 269606, at \*2 (D. Del. Dec. 13, 1991); *Zhang v. ING Direct*, No. 07-555-JJF, 2009 WL 351006, at \*3 (D. Del. Feb. 10, 2009). Here, adjudication of the Contested Matters concern will focus on the Debtors' decision to enter into the Second Lien DIP and the Second Lien Settlement. Any purely internal communications by members of the Ad Hoc Committee of EFIH Unsecured Noteholders will, therefore, have no impact on the inquiry into the Debtors' judgment in entering into these transactions. Accordingly, discovery into the Ad Hoc Committee of EFIH Unsecured Noteholders' internal communications is not relevant and should not be compelled.

To the extent that *any* documents from the Ad Hoc Committee of EFIH Unsecured Noteholders are relevant, these would only include the negotiations concerning the RSA and the transactions contemplated therein. Accordingly, the Ad Hoc Committee of EFIH Unsecured Noteholders' use of domain name restrictions to isolate such communications was an appropriate method to respond to the Informal Requests.

Second, the demand to perform searches of Bloomberg messages or other electronic medium is overly burdensome and not likely to lead to the discovery of admissible evidence. Only documents relating to the negotiation of the transactions at issue are even *arguably* relevant. As evidenced by the Ad Hoc Committee of EFIH Unsecured Noteholders' extensive email production, those negotiations took place via email. Returning now, mere days before the June 30 hearing, to begin a new search through a different medium is untimely and seems aimed at harassing the members of the Ad Hoc Committee of EFIH Unsecured Noteholders rather than at discovering relevant, admissible evidence.

Third, the First Lien Trustee's request that we search for responsive documents dating back to January 1, 2013 is overly broad and unreasonable. As was made clear to the First Lien



Hon. Christopher S. Sontchi
Akin Gump Strauss Hauer & Feld
June 25, 2014
Page 9

Trustee during the May 12, 2014 meet and confer, the negotiations over the transaction that became the RSA did not begin until late January 2014 and ended with execution of the RSA on April 29, 2014. Moreover, the negotiations over the terms of the Second Lien DIP did not begin until after January 28, 2014. Accordingly, it was appropriate for the Ad Hoc Committee of EFIH Unsecured Noteholders to review and produce documents from the January 28, 2014 to April 29, 2014 date range. Any communications predating that time, which by definition do not relate to the Second Lien DIP and Second Lien Settlement before the Court, are simply irrelevant.

Lastly, in its Discovery Letter, the First Lien Trustee now disputes the Ad Hoc Committee of EFIH Unsecured Noteholders' objections on relevance grounds to Document Requests 9 (related to Oncor business plans and financial projections), 23 (related to use of the term "fulcrum" security), and 31 (related to post-confirmation employment agreements with any present or former Directors and Officers) in the Subpoena. *See* Discovery Letter at fn. 2; Exh. B to the Discovery Letter at 1. However, the First Lien Trustee still has not responded—and cannot—to the relevancy objection or explained how communications related to Oncor's business plans, using the term "fulcrum" security, or discussing the future employment of the Debtors' officers, are relevant to the Second Lien DIP or Second Lien Settlement. *See* Exh. D to the Discovery Letter. Document Requests 9, 23, and 31 are simply not relevant and thus not an appropriate subject of discovery. Moreover, to the extent that any of these topics were discussed with the RSA parties during the relevant time frame, they would have been produced.

### III. The Ad Hoc Committee of EFIH Unsecured Noteholders Asserted a Narrow and Well-Defined Common Interest Privilege with the Debtors and Fully Disclosed Such to the First Lien Trustee

The Ad Hoc Committee of EFIH Unsecured Noteholders has withheld from its production communications with the Debtors and their advisors—and no other parties—on the basis of a common interest privilege. The common interest being asserted is narrow: opposition to the purported claims of holders of the EFIH First Lien Notes and EFIH Second Lien Notes seeking payment of a makewhole premium. The interests of the Ad Hoc Committee of EFIH Unsecured Noteholders and the Debtors are clearly aligned on this point, as both groups will benefit from a ruling in the EFIH First Lien Makewhole Adversary Proceeding disallowing the supposed entitlement to holders of First and Second Lien Notes to payment of a makewhole. The documents withheld are those discussing the legal analysis of the enforceability of the makewhole claims.



Hon. Christopher S. Sontchi
Akin Gump Strauss Hauer & Feld
June 25, 2014
Page 10

    The nature and scope of this common interest was articulated and clearly spelled out in
both the production letter from May 20, 2014 and our June 20, 2014 letter in response to the
Discovery Letter.  *See* **Exhibit 2**; Exh. F to the Discovery Letter.  Thus, there is no basis for the
First Lien Trustee to argue in its Discovery Letter that the Ad Hoc Committee of EFIH
Unsecured Noteholders has somehow "fail[ed] to articulate…the nature and scope of the
documents to which the alleged "common interest privilege" attaches."  *See* Discovery Letter at
4.

    Additionally, and notwithstanding the First Lien Trustee's incorrect assertions, the Ad
Hoc Committee of EFIH Unsecured Noteholders has not withheld communications pertaining to
negotiations over the Second Lien DIP or the terms of the RSA.  Moreover, the First Lien Trustee
inaccurately suggests that because the Ad Hoc Committee of EFIH Unsecured Noteholders and
the Debtors engaged in arms-length negotiations over the terms of the RSA, they could not have
had a common interest on this specific issue until the RSA was consummated.  *See* Discovery
Letter at 5.  This is a complete misstatement of the law in the Third Circuit, which holds that the
parties' interests need not be entirely congruent for the application of the common interest
doctrine.  *See In re Teleglobe Commc'ns Corp.*, 493 F.3d 345, 365 (3d Cir. 2007).  In fact, the
privilege may apply even where "'the parties' interests are adverse in substantial respects.'"  *In
re Leslie Controls, Inc.*, 437 B.R. 493, 497 (Bankr. D. Del. 2010) (citing *In re Mortgage & Realty
Trust*, 212 B.R. 649, 653 (Bankr.C.D.Cal.1997)).

    Further, the First Lien Trustee contends that the Ad Hoc Committee of EFIH Unsecured
Noteholders must produce a privilege log to account for the documents withheld on the basis of
common interest.  The Ad Hoc Committee of EFIH Unsecured Noteholders disputes that
requirement because we agreed to produce several categories of documents to the First Lien
Trustee on an informal and expedited basis in connection with the Informal Requests.  The Ad
Hoc Committee of EFIH Unsecured Noteholders did not agree to provide a privilege log, and
requiring the Ad Hoc Committee of EFIH Unsecured Noteholders to re-review our production
for the purposes of creating a privilege log would be incredibly burdensome.

**IV.    The Thirteen Deposition Subpoenas Noticed by the First Lien Trustee on the EFIH
        First Lien Makewhole Adversary Proceeding Demonstrate The Pattern of
        Harassment by the First Lien Trustee Against the Ad Hoc Committee of EFIH
        Unsecured Noteholders**

    While the First Lien Trustee has asserted that the present discovery fight centers on the
Contested Matters before this Court and *not* on the EFIH First Lien Makewhole Adversary



Hon. Christopher S. Sontchi
Akin Gump Strauss Hauer & Feld
June 25, 2014
Page 11

Proceeding, the fact that the First Lien Trustee recently issued <u>thirteen</u> separate deposition subpoenas to the Ad Hoc Committee of EFIH Unsecured Noteholders further illustrates the broader pattern of harassment by the First Lien Trustee. *See* Discovery Letter at fn. 2.

On June 18, 2014, shortly after the meet and confer call between the First Lien Trustee and the Ad Hoc Committee of EFIH Unsecured Noteholders, the First Lien Trustee emailed thirteen subpoenas demanding to take the depositions of each member of the Ad Hoc Committee of EFIH Unsecured Noteholders and various employees thereof. These deposition subpoenas, which were issued solely in connection with the EFIH First Lien Makewhole Adversary Proceeding, were clearly designed to be burdensome and harass a party whose interests are not aligned with those of the First Lien Trustee. At bottom, the EFIH First Lien Makewhole Adversary Proceeding concerns a straight-forward contract question: whether the first lien indentures require payment of a makewhole premium in connection with the repayment of the EFIH First Lien Notes. This is a discrete legal question that can be decided solely on the underlying transactional documents and for which discovery is unnecessary. However, even if one assumes that discovery and depositions would be necessary, thirteen depositions of individuals who are neither employees nor agents of the Debtors is beyond the scope of reasonable discovery. Such a broad demand is patently unnecessary.

We thank the Court for its consideration of this matter and request that the First Lien Trustee's motion to compel be denied. Counsel for the Ad Hoc Committee of EFIH Unsecured Noteholders will be available should the Court schedule a telephonic conference in connection with the First Lien Trustee's Discovery Letter.

Respectfully submitted,


*/s/ Robert J. Boller*


Robert J. Boller



Hon. Christopher S. Sontchi
Akin Gump Strauss Hauer & Feld
June 25, 2014
Page 12

Enclosures

cc:    Warren Usatine, Esq. (via electronic mail)
       Michael Winograd, Esq. (via electronic mail)
       James Millar, Esq. (via electronic mail)
       Nicholas Brannick, Esq.  (via electronic mail)
       Scott Cousins, Esq. (via electronic mail)
       See attached service list (via electronic mail)