IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | ) Chapter 11 ) ) Bankr. Case No. 14-10979 (CSS) |
| ENERGY FUTURE HOLDINGS CORP., *et al.*, | ) ) Jointly Administered ) |
| *Debtors*. | ) Related to D.I. 873 ) |

**MOTION OF CSC TRUST COMPANY OF DELAWARE,
AS INDENTURE TRUSTEE, FOR CERTIFICATION
OF DIRECT APPEAL UNDER 28 U.S.C. § 158(d)(2)**

In order to expedite final resolution of its appeal from this Court's *Order Approving the EFIH First Lien Settlement*, CSC Trust Company of Delaware (the "10% Trustee"), as successor indenture trustee for the 10% First Lien Notes issued by Energy Future Intermediate Holdings LLC ("EFIH LLC") and EFIH Finance Inc.[1] ("EFIH Finance," and together with EFIH LLC, "EFIH" or the "EFIH Debtors"), submits this motion (the "Motion") pursuant to 28 U.S.C. § 158(d)(2) and Rule 8001(f)(3) of the Federal Rules of Bankruptcy Procedure, for certification of a direct appeal to the United States Court of Appeals for the Third Circuit (the "Third Circuit"). A proposed form of Certification is attached hereto as Exhibit A.

In support of this Motion, the 10% Trustee respectfully represents and sets forth as follows:

## PRELIMINARY STATEMENT

1. The Preliminary Statement and Factual Background set forth in the *Objection of CSC Trust Company of Delaware, as Indenture Trustee, to the EFIH Debtors' Motion to Approve the "First Lien Settlement"* [D.I. 694] are incorporated herein by reference.

2. The 10% Trustee has filed a Notice of Appeal (the "Appeal"), BAP-14-024 [D.I. 873] of the *Order Approving the EFIH First Lien Settlement* (the "Order") entered on June 6, 2014 [D.I. 858] by this Court. A true and correct copy of the Order is attached hereto as Exhibit B. Now, the 10% Trustee requests certification of this Appeal for direct appeal to the Third Circuit.

---

[1] EFIH Finance Inc. is a wholly owned subsidiary of Energy Future Intermediate Holdings LLC that was formed for the purpose of serving as the co-issuer of the 10% First Lien Notes. *See* Information Memorandum at 7 [D.I. 363-1, pg. 22 of 90].

1

3. The Appeal addresses fundamental questions relating to the substance and procedure of the EFIH Debtors' settlement of first lien noteholders' claims for redemption premiums (the "First Lien Settlement"). Critically, the First Lien Settlement was accomplished through the launch—without prior court approval—of a tender and solicitation process that is unprecedented in chapter 11 bankruptcy. The EFIH Debtors sought not only the extraordinary relief of paying claims outside a plan, but also the authority to pay equivalent claims on a differential and unequal basis. The manner in which the EFIH Debtors have chosen to reorganize their capital structure and lock in creditors' recoveries raises important and novel questions under both the bankruptcy laws and securities laws. Even the EFIH Debtors' financial advisor admitted this transaction is unprecedented in chapter 11. Despite overruling the 10% Trustee's objection, this Court acknowledged that the transaction was highly unusual, noting "it's something where thinking is really going to have to develop." June 6, 2014 Hearing Transcript at 260:19–25.

4. The 10% Trustee's appeal raises the question whether the use of a non-court approved tender offer for debt in a chapter 11 case is precluded by the Chandler Act of 1938 as well as the 1978 Bankruptcy Code overhaul, in which Congress virtually eliminated the SEC from the chapter 11 process, while retaining both (i) prior court approval of solicitation to groups of creditors and (ii) a requirement of equal treatment of creditors within a class.

5. The Order on appeal also raises novel questions regarding settlement of claims of similarly situated creditors on terms providing such creditors substantially unequal recoveries on their identical claims. The Order approved a class-wide settlement

2

that would pay, in the form of new super-priority notes, 100% of the principal amount of each of two sets of First Lien Notes, as well as an additional payment of 5% of the principal amount, representing settlement of the noteholders' redemption premium claims. That payment represents a 60% recovery by the holders of 6⅞% first-lien bonds and a 25% recovery by the holders of 10% first-lien bonds, although their claims are identical in all relevant respects. The 10% Trustee's appeal thus raises the question whether it is permissible to settle otherwise identical claims of noteholders, who are in the same class of creditors, on terms providing for disparate recovery that would be forbidden as part of a plan.

6. Direct appellate review would speed ultimate resolution of these questions and assist the Court and parties alike. Through its statements and pleadings, EFIH has made clear that the First Lien Settlement is the first in a series of transactions that it decided to pursue sequentially – in a divide and conquer manner and contrary to the plan process sanctioned by Congress. On June 30, 2014, the EFIH Debtors will seek approval of another settlement structured as a postbankruptcy tender offer by EFIH, to which the 10% Trustee has objected.

7. This case is moving fast, and direct appellate review will allow for timely guidance on these novel issues. One of the major underlying disputes in the bankruptcy case between the 10% Trustee and the EFIH Debtors is a $660 million disputed secured claim, and a trial is set for September 10–12, 2014. EFIH Debtors also have announced that they will seek confirmation of a plan of reorganization in early 2015, with that process beginning as early as the fall of 2014. Certification for direct appeal, to determine whether the First Lien Settlement was permissible at all, is critical to prevent

this course of events from proceeding on a false premise, with a potentially massive waste of judicial, estate, and creditor resources. These issues are novel and are certain to be appealed to the Third Circuit at some point during the EFIH Debtors' cases. Expediting that process via direct appellate review would afford this Court and the parties the benefit of the Third Circuit's views in a more timely and beneficial fashion.

## JURISDICTION AND VENUE

8. This Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157, 158(d)(2). This motion has been timely filed because fewer than 60 days have elapsed since entry of the Order. *Id.* § 158(d)(2)(E).

9. The 10% Trustee requests certification from this Court pursuant to Fed. R. Bankr. P. 8001(f), which provides that a "certification shall be filed in the court in which a matter is pending . . . [and] [a] matter is pending in a bankruptcy court until the docketing, in accordance with Rule 8007(b)." Docketing under Rule 8007(b) requires the transmittal of the record for appeal to the clerk of the district court. Here, because the record of appeal has not yet been prepared and, therefore, has not yet been transmitted to the clerk of the District Court, the "matter is pending" in this Court, and the 10% Trustee has accordingly submitted its Motion to this Court.[2]

## QUESTIONS PRESENTED AND RELIEF SOUGHT

10. Pursuant to Fed. R. Bankr. P. 8001(f) and 28 U.S.C. § 158(d)(2), the 10% Trustee requests that this Court certify the Appeal for immediate appeal to the Third Circuit. Section 158(d)(2) provides for such certification if:

---

[2] 10% Trustee approached Debtors regarding a potential joint motion for certification pursuant to Rule 8001(f)(2)(B). Debtors declined this invitation, but cited no relevant considerations for this denial.

4

(i) the order involves a "question of law as to which there is no controlling decision of the court of appeals for the circuit or of the Supreme Court of the United States, or involves a matter of public importance,"

(ii) "the judgment, order, or decree involves a question of law requiring resolution of conflicting decisions;" or

(iii) an immediate appeal "may materially advance the progress of the case or proceeding in which the appeal is taken.

28 U.S.C. § 158(d)(2)(A).

11. There are four questions presented in this appeal:

Question 1. Whether a debtor in possession under chapter 11 of the Bankruptcy Code may conduct a tender offer for its own securities, and whether it can do so without prior bankruptcy court approval.

Question 2. Whether such a tender offer, when made as part of a proposed class-wide settlement in a chapter 11 case, proposed at the very outset of the case and not as part of a plan of reorganization, can provide different recovery to identically situated creditors, in a manner such that one set of creditors receives less than half of the other group measured as a percentage of their settled claims, even though such disparities would be impermissible as part of a court-approved plan.

Question 3. Whether this class-wide settlement, at this stage of the Debtors' global restructuring program, constitutes a *sub rosa* plan?

Question 4. If permissible as a pre-plan transaction, must the settlement comply with plan requirements, including protection against disparate treatment of creditors within the same class, *United States v. AWECO, Inc. (In re AWECO, Inc.)*, 725 F.2d 293 (5th Cir. 1984), or if deviation from plan requirements is permitted, *Motorola, Inc. v. Off. Comm. of Unsecured Creditors (In re Iridium Operating LLC)*, 478 F.3d 452 (2d Cir. 2007), was the standard satisfied?

12. The 10% Trustee seeks: a ruling (i) that a debtor in possession cannot conduct a tender offer for its own securities (or at least without prior court approval), because of the potential for coercive tender offers and disparate treatment of creditors, and the detriment to creditors' procedural protections under the Bankruptcy Code; or (ii)

5

that such a tender offer is impermissible as part of a class-wide settlement that pays identically situated creditors different recoveries that would be impermissible as part of a court-approved plan. EFIH Debtors are very likely to launch additional tender offers as part of settlements as a way to avoid plan requirements, such as the equal-treatment-of-creditors rule. As such, a ruling that these practices are unlawful is necessary to avoid further abuse of the bankruptcy process.

## ARGUMENT

13. Section 158(d)(2) permits this Court to certify a direct appeal to the Third Circuit if *any* of the above criteria are met. *See* 28 U.S.C. § 158(d)(2); 1 Collier on Bankruptcy ¶ 5.06[2] ("[A]ny one of the four criteria set out above would fulfill the statutory predicate for certification[.]"). Although this test requires only satisfaction of one factor, the unique circumstances of this case satisfy all four.

### I. THE APPEAL PRESENTS QUESTIONS OF LAW FOR WHICH THERE ARE NO CONTROLLING PRECEDENTS

14. There is no controlling precedent on either of the two issues raised in this appeal. As such, certification is appropriate on this ground alone.

15. As to the first question, whether a debtor in possession may conduct a tender offer for its own securities without prior bankruptcy court approval, all parties agree that this is entirely a question of first impression for the courts. The transaction at issue is indisputably novel. Even the closest analogous tender offer transactions, of which the EFIH Debtors identified only three, were factually different because each occurred much later in the bankruptcy and the debtors obtained prior approval of the

tender procedures. Further, in those cases, the courts did not address the question of whether such tender offers are permissible because no creditor raised such a challenge.

16. The second question – whether such a tender offer, conducted as part of a settlement in a chapter 11 case and proposed not as a plan of reorganization but at the very outset of the case, can provide different recovery to identically situated creditors as a percentage of their claims – is also a matter of first impression for the Third Circuit.[3] At least two Courts of Appeals have ruled that pre-plan settlements cannot violate the rules that apply at confirmation. *In re Iridium*, 478 F.3d 452, 463 (2d Cir. 2007); *United States v. AWECO, Inc. (In re AWECO, Inc.)*, 725 F.2d 293, 298 (5th Cir. 1984). The Third Circuit has ruled that a settlement in connection with a prepackaged chapter 11 reorganization plan cannot violate Section 1123(a)(4) of the Bankruptcy Code, which is the antidiscrimination rule requiring the same treatment of all creditors in a class and the provision that the 10% Trustee asserts was violated by the EFIH Debtors' first lien settlement. *See In re Combustion Eng'g, Inc.*, 391 F.3d 190, 239 (3d Cir. 2004). The Third Circuit has yet to confront a case implicating the equal-treatment-of-creditors rule in the context of a pre-plan settlement, especially one that takes the form of a tender offer launched prior to court approval. But there is no reason to think that the Third Circuit would permit such discriminatory treatment in a settlement subject only to Rule 9019

---

[3] In its opinion authorizing the transaction, this Court opined that the differential in recovery, as a percentage of the 6⅞% noteholders and 10% noteholders' claims, might be justified by differences in their respective claims. Subsequently, the EFIH Debtors informed the District Court that the differential was merely a matter of convenience to the EFIH Debtors, who chose to pay the claims as a percentage of principal, rather than as a percentage of the claims. *Debtors' Memorandum in Opposition to CSC Trust Company's Emergency Motion to Stay the Order Approving the EFIH First Lien Settlement Pending Appeal*, at 15 ("Debtors sought to maintain the simplicity of the structure of the First Lien Settlement . . . .").

7

given the Third Circuit's unwillingness in *Armstrong* to sanction a settlement deviating from the absolute priority rule. *In re Armstrong World Indus.*, 432 F.3d 507, 518 (3d Cir. 2005).

## II.   THE SUBJECT MATTER OF THIS APPEAL IS OF PUBLIC IMPORTANCE

17.   The public interest weighs heavily in favor of certification to enable a timely resolution of this appeal.  In a completely unprecedented fashion, the EFIH Debtors launched a tender offer without any SEC oversight and without any pre-launch approval by this Court of the manner and process by which the tender offer was conducted.  This could be a practice widely adopted by debtors in chapter 11 reorganizations. Indeed, the EFIH Debtors intend this tender offer strategy to be a model for future tender offers, including in this very case.  Thus, it needs to be carefully reviewed by the Third Circuit to determine its legality.  This is especially so in this District and the Third Circuit, as a large number of major chapter 11 restructurings occur here.

18.   It is especially important that the Third Circuit decide whether such pre-plan tender offers can be used to circumvent the requirement that a bankruptcy plan afford all similarly situated creditors in a class equal treatment.  This type of transaction will fundamentally change chapter 11 proceedings, and upset the bankruptcy process that Congress carefully designed.  It will permit tender offers of all varieties, at all different times in a bankruptcy case.  Many are likely to be coercive, even if the proponents claim to comply with relevant SEC rules because the SEC has relatively few rules governing

debt tender offers, and certainly no rules that would guarantee the type of protections afforded by the bankruptcy plan process.

### III. THE APPEAL INVOLVES A QUESTION OF LAW REQUIRING RESOLUTION OF CONFLICTING DECISIONS

19. As noted above, two Courts of Appeals have determined that pre-plan settlements must abide by the rules applicable to plan confirmation. However, those two circuit courts differ in their approach. One imposes a categorical ban on settlements that run afoul of confirmation requirements. *AWECO*, 725 F.2d at 298. The other allows a small amount of flexibility to courts, if the deviation from plan requirements is both small and necessary. *Iridium*, 478 F.3d at 463.

20. The two different legal rules are not outcome determinative here—the First Lien Settlement fails both tests. But there is no question that there is conflicting authority on this point. The Third Circuit has not ruled on the issue of the application of confirmation rules to pre-plan settlements.

### IV. RESOLUTION OF THE APPEAL WOULD MATERIALLY ADVANCE THE CHAPTER 11 CASE

21. The EFIH Debtors are already trying to do again what they have done in the First Lien Settlement. Currently scheduled for June 30, 2014 is a hearing on a similarly structured "postbankruptcy tender offer" for EFIH's second lien notes. As noted above, this Court has "reserved" on the question of whether a chapter 11 debtor can engage in such a transaction, even though it overruled the 10% Trustee's objection on those same questions in the context of the First Lien Settlement.

22. Without final resolution by the Third Circuit, EFIH appears intent on making additional tender offers. And, there is no question that creditors who object will

9

take appeals, given the stakes involved and the unprecedented nature of the transactions; and, as here, it may be difficult to obtain appellate review of these offers before the transaction is consummated.

23. EFIH Debtors' tactic is to present both the bankruptcy court and appellate courts with transactions that are *fait accompli* while presenting the spectre that this large chapter 11 case will be disrupted unless the unprecedented transactions are approved. In an amazing turn, the EFIH Debtors purported to amend the terms of the First Lien Settlement tender offer on Monday June 9, 2014, *after* this Court entered an order approving the settlement, which further evidences how the settlement model lacks the protection that the plan process affords creditors. Similarly, the EFIH Debtors show every intent of pushing forward with an attempt to confirm a plan of reorganization immediately on the heels of those transactions,[4] even though the EFIH Debtors admit that regulatory approvals and other hurdles could delay completion of the chapter 11 case until early 2015. The rapid pace of this reorganization is further reason to certify the important issues presented for direct review by the Third Circuit.

24. Because it will take at least 8 months (EFIH Debtors have clearly planned for far more with a 24-month DIP facility) to confirm a reorganization plan, a direct appeal would provide significant guidance to the Court. The plan process, which will involve negotiation among competing constituent groups and judicial rulings when agreement cannot be reached, will benefit from an expedited and certain decision from the Third Circuit clarifying major threshold issues such as the propriety of the First Lien

---

[4] The Restructuring Support and Lock-Up Agreement (Dkt. 98) provides that if a plan does not occur within less than a year, then consenting creditors to the Agreement may terminate their rights under the agreement. § 8.01.

Settlement (and soon the propriety of the Second Lien Settlement and related transactions). A one-step appeal to the Third Circuit will prevent delay, conserve resources, and provide a prompt decision on an issue of first impression in this circuit.

## **CONCLUSION**

25. For the foregoing reasons, the 10% Trustee respectfully requests that this Court certify this appeal for direct review by the Third Circuit.

*[Remainder of Page Left Intentionally Blank]*

Dated: June 25, 2014
      Wilmington, Delaware

                Respectfully submitted,

                COLE, SCHOTZ, MEISEL,
                FORMAN & LEONARD P.A.

| | |
|---|---|
| /s/ Norman L. Pernick | |
| Norman L. Pernick (DE No. 2290) | Warren A. Usatine |
|    npernick@coleschotz.com | 25 Main Street |
| J. Kate Stickles (DE No. 2917) | P.O. Box 800 |
|    kstickles@coleschotz.com | Hackensack, NJ 07602 |
| 500 Delaware Avenue | Telephone: 201-489-3000 |
| Suite 1410 | Facsimile: 201-489-1536 |
| Wilmington, DE 19801 | |
| Tel: 302.652.3131 | |
| Fax: 302.652.3117 | |

        -AND-

| | |
|---|---|
| ROPES & GRAY LLP | |
| Keith H. Wofford | D. Ross Martin |
|    keith.wofford@ropesgray.com |    ross.martin@ropesgray.com |
| Michael S. Winograd | Andrew G. Devore |
|    michael.winograd@ropesgray.com |    andrew.devore@ropesgray.com |
| 1211 Avenue of the Americas | Prudential Tower |
| New York, NY 10036-8704 | 800 Boylston Street |
| Tel: 212.596.9000 | Boston, MA 02199-3600 |
| Fax: 212.596.9090 | Tel: 617.951.7000 |
| | Tel: 617.951.7050 |

        -AND-

DRINKER BIDDLE & REATH LLP
James H. Millar
   James.Millar@dbr.com
1177 Avenue of the Americas
41st Floor
New York, NY 10036-2714
Tel: 212.248.3264
Fax: 212.248.3141

*Counsel for CSC Trust Company of Delaware*
*as successor indenture trustee*