## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) | Case No. 14-10979 (CSS) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | **Re: D.I. 472, 1068, 1067, 1071, 1078, 1090** |

## DEBTORS' OMNIBUS REPLY TO OBJECTIONS
## TO EFIH SECOND LIEN SETTLEMENT MOTION

---

[1]   The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810.  The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201.  Due to the large number of debtors in these chapter 11 cases, which are being jointly administered, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

## Table of Contents

Preliminary Statement.............................................................................................................2

Background ...............................................................................................................................4

Argument .................................................................................................................................7

I.      The Second Lien Settlement Is a Sound Exercise of the Debtors' Business
        Judgment. .....................................................................................................................7

II.     The Second Lien Settlement Is Not a *Sub Rosa* plan..........................................9

III.    The Second Lien Settlement Does Not Violate Section 1123(a)(4) of the
        Bankruptcy Code. ......................................................................................................10

        A.      Section 1123(a)(4) Does Not Apply in the Case of Rule 9019 Settlements..........10

        B.      Even If Section 1123(a)(4) Did Apply, the Parties That Are Receiving
                Different Consideration Are Not Similarly Situated and Would Therefore
                Not Be Subject to Equal Treatment Under a Plan. .................................................13

IV.     Waiver of the Stay Under Bankruptcy Rule 6004(h) is Warranted. ..................................15

## Table of Authorities

**Cases**

*Bank of Am. Nat. Trust & Sav. Ass'n v. 203 N. LaSalle St. P'ship*, 526 U.S. 434, 448-49 (1999)12

*Burtch v. Revchem Composites, Inc. (In re Sierra Concrete Design, Inc.)*, 463 B.R. 302, 304 (Bankr. D. Del. 2012) ................................................................................................ 11

*Costa v. Robotic Vision Systems, Inc. (In re Robotic Vision Systems, Inc.)*, 2006 WL 929322, *3 (1st Cir. B.A.P. Apr. 11, 2006) ...................................................................... 12

*Howard Delivery Service Inc. v. Zurich American Ins. Co.*, 547 U.S. 651, 655 (2006) .............. 11

*In re Allegheny Int'l, Inc.,* 118 B.R. 282, 295-96 (Bankr. W.D. Pa. 1990) .................................. 12

*In re Am. Home Mortg. Holdings, Inc.*, 501 B.R. 44, 59 (Bankr. D. Del. 2013) ......................... 11

*In re AOV Indus., Inc.*, 792 F.2d 1140 (D.C. Cir. 1986) ............................................................ 12

*In re AppliedTheory Corp.*, 02-11868(REG), 2008 WL 1869770, at *2 (Bankr. S.D.N.Y. Apr. 24, 2008) ............................................................................................................................ 12

*In re Capmark Fin. Grp. Inc.*, 438 B.R. 471, 513 (Bankr. D. Del. 2010) ..................................... 9

*In re CGE Shattuck, LLC*, 254 B.R. 5 (Bankr. D.N.H. 2000) ...................................................... 12

*In re Columbia Gas Sys., Inc.*, 1995 WL 404892, at *2 (Bankr. D. Del. June 16, 1995)............. 11

*In re Combustion Eng'g, Inc.*, 391 F.3d 190, 239 (3d Cir. 2004 ................................................... 11

*In re Combustion Engineering, Inc.*, 391 F.3d 190, 239 (3d Cir. 2005)....................................... 11

*In re Coram Healthcare Corp.*, 315 B.R. 321, 330 (Bankr. D. Del. 2004) .................................... 8

*In re Dana Corp.*, 412 B.R. 53, 62 (S.D.N.Y. 2008) .................................................................... 10

*In re Flight Trans. Corp. Secs. Lit.*, 730 F.2d 1128 (8th Cir. 1984)............................................ 12

*In re Iridium Operating LLC*, 478 F.3d 452, 455 (2d Cir. 2007) ................................................. 12

*In re Journal Register Co.*, 407 B.R. 520, 533 (Bankr. S.D.N.Y. 2009)....................................... 10

*In re Kmart Corp.*, 359 F.3d 866, 872 (7th Cir. 2004) ................................................................ 12

*In re Martin*, 91 F.3d 389, 393 (3d Cir. 1996)............................................................................ 7

*In re New Century TRS Holdings, Inc.*, 407 B.R. at 592 (D. Del. 2009) ..................................... 10

*In re Nutraquest, Inc.*, 434 F.3d 639, 645 (3d Cir. 2006) ................................................................. 7

*In re Pa. Truck Lines, Inc.*, 150 B.R. 595, 599 (E.D. Pa. 1992), *aff'd*, 8 F.3d 812 (3d Cir. 1993)  8

*In re Tower Auto. Inc.*, 241 F.R.D. 162, 168 (S.D.N.Y. 2006)....................................................... 9

*In re Warren*, 2011 WL 3299819 (9th Cir. B.A.P. 2011) ............................................................ 12

*Jevic Holding Corp.*, No. BR 08-11006(BLS), 2014 WL 268613, at *3 (D. Del. Jan. 24, 2014) 12

*U.S. v. AWECO, Inc.*, 725 F.2d 293, 298 (5th Cir. 1984) ............................................................ 12

**Rules**

Bankruptcy Rule 6004(h)............................................................................................................. 15

Bankruptcy Rule 9019 .......................................................................................................... 7, 10, 11

The above-captioned debtors and debtors in possession (collectively, the "Debtors") file this reply (this "Reply")[1] to the objections filed by (a) the indenture trustee under the 10.00% EFIH First Lien Notes (the "First Lien Trustee");[2] (b) the indenture trustee under the EFIH Second Lien Notes (the "Second Lien Trustee") and the ad hoc group of holders of EFIH Second Lien Notes;[3] (c) the ad hoc group of holders of EFH Legacy Notes (the "EFH Unsecured Group");[4] (d) the Official Committee of Unsecured Creditors (the "Creditors Committee");[5] and (e) the ad hoc group of holders of TCEH Unsecured Notes (the "TCEH Unsecured Group"),[6] as well as to the joinders filed by (a) Caxton Associates LP;[7] (b) Wilmington Savings Fund Society, FSB;[8] and (c) Law Debenture Trust Company of New York[9] (collectively, the forgoing objecting

---

[1] Capitalized terms used but not defined in this Reply shall have the meanings set forth in the *Declaration of Paul Keglevic, Executive Vice President, Chief Financial Officer, and Co-Chief Restructuring Officer of Energy Future Holdings Corp., et al., in Support of First Day Motions* [D.I. 98] (the "First Day Declaration").

[2] *Objection of CSC Trust Company of Delaware, as Indenture Trustee and Collateral Trustee, to Debtors' (A) Motion to Approve Second Lien Post-Petition Financing, Redeem Second Lien Notes, and Determine Secured Claim and (B) Motion to Approve Certain EFIH Settlements* [D.I. 1068].

[3] *Objection of the EFIH Second Lien Notes Indenture Trustee and EFIH Second Lien Group to Debtors' Motion to Approve Second Lien Settlement* [D.I. 1067].

[4] *Ad Hoc Group of EFH Legacy Noteholders' Objection to Approval of Proposed Second Lien Financing and Makewhole Settlement* [D.I. 1071].

[5] *Omnibus Objection of the Official Committee of Unsecured Creditors to (I) Motion of Energy Future Intermediate Holding Company LLC and EFIH Finance Inc. for Entry of an Order (A) Approving Postpetition Second Lien Financing, (B) Granting Liens and Providing Superpriority Administrative Expense Claims, (C) Authorizing the Use of Cash Collateral, (D) Authorizing the EFIH Second Lien Repayment, (E) Authorizing Entry Into and Payment of Fees Under the Commitment Letter, and (F) Modifying the Automatic Stay and (II) Motion of Energy Future Holdings Corp., et al., for Entry of Orders Approving Certain EFIH Settlements and the Oncor TSA Amendment* [D.I. 1090].

[6] *Objection of the Ad Hoc Group of TCEH Unsecured Noteholders to the Motion of Energy Future Intermediate Holding Company LLC and EFIH Finance Inc. for Entry of an Order (A) Approving Postpetition Second Lien Financing, (B) Granting Liens and Providing Superpriority Administrative Expense Claims, (C) Authorizing the Use of Cash Collateral, (D) Authorizing the EFIH Second Lien Repayment, (E) Authorizing Entry Into and Payment of Fees Under the Commitment Letter, and (F) Modifying the Automatic Stay and Limited Objection to the Related Motion to Approve the EFIH Second Lien Settlement* [D.I. 1078].

[7] *Joinder of Caxton Associates LP to the Objection of the Ad Hoc Group of EFH Legacy Noteholders to the Approval of Proposed Second Lien Financing and Makewhole Settlement* [D.I. 1079].

[8] *Joinder of Wilmington Savings Fund Society, FSB to Certain Objections to (I) the Motion of Energy Future Intermediate Holding Company LLC and EFIH Finance Inc. for Entry of an Order (A) Approving Postpetition*

(Continued…)

parties, the "Objectors," and, the foregoing objections, the "Objections").   In support of this

Reply, the Debtors respectfully state as follows.

**Preliminary Statement**

1.      The Second Lien Settlement is in the best interests of the Debtors' estates.   The

material facts are undisputed.   The Second Lien Settlement, like the First Lien Settlement,

eliminates a substantial contingency in these chapter 11 cases concerning whether the Debtors

owe a so-called makewhole premium upon the repayment of the EFIH Second Lien Notes, which

were automatically accelerated by EFIH's bankruptcy filing.   The Second Lien Settlement is a

material component of the Restructuring Support Agreement.   And the Second Lien Settlement

has support from the majority of the holders of the classes that bear the economic risk of any

litigation involving makewhole premiums on the Second Lien Notes.

2.      The only party that objects to the Second Lien Settlement that actually applies the

governing legal standards under Bankruptcy Rule 9019 and section 363 of the Bankruptcy Code

is the EFH Unsecured Group.   But it provides no evidence that the Second Lien Settlement fails

---

*Second Lien Financing, (B) Granting Liens And Providing Superpriority Administrative Expense Claims, (C) Authorizing the Use of Cash Collateral, (D) Authorizing the EFIH Second Lien Repayment, (E) Authorizing Entry into and Payment of Fees Under the Commitment Letter, and (F) Modifying the Automatic Stay and (II) the Motion Of Energy Future Holdings Corp., et al., for Entry of Orders Approving Certain EFIH Settlements and the Oncor TSA Amendment* [D.I. 1083]; *Joinder of Wilmington Savings Fund Society, FSB to Omnibus Objection of the Official Committee of Unsecured Creditors to (I) the Motion of Energy Future Intermediate Holding Company LLC and EFIH Finance Inc. for Entry of an Order (A) Approving Postpetition Second Lien Financing, (B) Granting Liens and Providing Superpriority Administrative Expense Claims, (C) Authorizing the Use of Cash Collateral, (D) Authorizing the EFIH Second Lien Repayment, (E) Authorizing Entry into and Payment of Fees Under the Commitment Letter, and (F) Modifying the Automatic Stay and (II) the Motion of Energy Future Holdings Corp., et al., for Entry of Orders Approving Certain EFIH Settlements and the Oncor TSA Amendment* [D.I. 1106].

[9]     *Joinder of Law Debenture Trust Company of New York, as Indenture Trustee to (1) Omnibus Objection of the Official Committee of Unsecured Creditors to (I) Motion of Energy Future Intermediate Holding Company LLC and EFIH Finance Inc. for Entry of an Order (A) Approving Postpetition Second Lien Financing, (B) Granting Liens and Providing Superpriority Administrative Expense Claims, (C) Authorizing the Use of Cash Collateral, (D) Authorizing the EFIH Second Lien Repayment, (E) Authorizing Entry Into and Payment of Fees Under the Commitment Letter, and (F) Modifying the Automatic Stay and (II) Motion of Energy Future Holdings Corp., et al., for Entry of Orders Approving Certain EFIH Settlements and the Oncor TSA Amendment* [D.I. 1098].

to satisfy that standard.  The Debtors agree with the EFH Unsecured Group that holders of EFIH Second Lien Notes are not entitled to a so-called makewhole premium—but it is difficult to argue that the Debtors' settlement offer is unreasonably high when 57% of holders of Second Lien Notes feel it is not high enough.  As a whole, the Debtors have shown that the Second Lien Settlement is a reasonable exercise of business judgment, minimizing litigation risk and the unnecessary expenditure of estate assets.

3.      The First and Second Lien Trustees, on the other hand, ignore the relevant legal standard and instead liken the Second Lien Settlement to a plan of reorganization and otherwise hold it to confirmation standards.  But, as with the First Lien Settlement, the Second Lien Settlement does not constitute a *sub rosa* plan—it is a claims settlement that does not in any way limit plan voting rights.  Nor does the plan-related concept of "unequal treatment" within a class apply in this context.

4.      Regardless, the Debtors have gone above and beyond to treat parties equally in the context of the Second Lien Settlement.  As the evidence at the hearing will show, the Debtors actively engaged the Second Lien Group for an extended period before the Petition Date regarding its alleged makewhole claims and did not rebuff the group in any way.  But the Debtors were unable to make any meaningful progress in these discussions that stretched back over many months.  The Debtors then subsequently negotiated the terms of the Second Lien Settlement with Fidelity, a significant holder of EFIH Second Lien Notes, as part of the Restructuring Support Agreement.  Yet, even after doing so, the Debtors opted to open this deal up on equal terms to all holders of EFIH Second Lien Notes.  The Second Lien Group decided not to accept the settlement and to litigate the availability of a makewhole premium instead.  All

3

the Debtors did was offer to settle with those creditors; they can now hardly argue that they were somehow treated unfairly.

5.    At most, the First and Second Lien Trustee point to consideration that certain holders of EFIH Second Lien Notes—Fidelity, Avenue, GSO, or York—received on account of new money that those creditors brought to the table.  The mere fact that Fidelity is receiving a fee in connection with each of EFIH's DIP facilities, including one that the Court already approved and that the Debtors already paid, does not mean that this settlement is somehow discriminatory.  Those amounts are on account of additional value that Fidelity, and others, contributed to the capital structure following intensive pre-bankruptcy negotiations aimed at facilitating a global restructuring.  Meanwhile, the Second Lien Settlement pays creditors the same 50% amount for each and every holder of EFIH Second Lien Notes on account of their makewhole claim.  To the extent there are divergent recoveries, they reflect different parties' divergent positions and contributions and are fully justified under the circumstances.

6.    In sum, the Second Lien Settlement is a reasonable exercise of the Debtors' business judgment that provides significant value to the Debtors' estates.  For these reasons, the Debtors respectfully request that the Court approve the Second Lien Settlement.

## Background

7.    The Debtors filed their petitions for relief under chapter 11 of title 11 of the United States Code on April 29, 2014 (the "Petition Date"), in the United States Bankruptcy Court for the District of Delaware.  On the Petition Date, the Debtors filed the Restructuring Support and Lock-Up Agreement, dated as of April 29, 2014, as Exhibit D to the First Day Declaration (as amended from time to time, including the Restructuring Term Sheet and all other schedules and exhibits thereto, collectively, the "Restructuring Support Agreement").  As part of

4

the Restructuring Support Agreement, certain holders of EFIH First Lien Notes settled their alleged makewhole claims under those notes with the Debtors (the "First Lien Settlement"), as did certain holders of EFIH Second Lien Notes (the "Second Lien Settlement"). The Debtors have sought this Court's approval of both settlements in the *Motion of Energy Future Holdings Corp., et al., for Entry of Orders Approving Certain EFIH Settlements and the Oncor TSA Amendment* [D.I. 472] (the "Settlement Motion"). In support of the Settlement Motion, the Debtors submitted: (a) the First Day Declaration; and (b) two declarations of David Ying of Evercore Group, the Debtors' proposed financial advisor.[10]

8.      The Second Lien Settlement provides for the cash payment of principal, accrued interest, and 50% of the alleged makewhole claims of the settling holders of EFIH Second Lien Notes as of the consummation of the settlement. In exchange for the prepetition settlement of its EFIH Second Lien Notes claims and for entering into the broader Restructuring Support Agreement, Fidelity is entitled to "most favored nation" treatment. In short, this provision entitles Fidelity, as an "anchor tenant" in the Second Lien Settlement, to receive the benefit of any future higher makewhole settlements the Debtors enter into with non-settling holders of EFIH Second Lien Notes until, at the latest, a judgment on the merits on the applicable second lien makewhole claims. Fidelity would not, however, be entitled to receive any additional settlement amount in the event the non-settling holders of EFIH Second Lien Notes were to recover any amounts under a judgment on the merits. Similarly, in connection with the

---

[10]   *See Declaration of David Ying, Senior Managing Director of Evercore Group L.L.C. in Support of the Motion of Energy Future Holdings Corp., et al., for Entry of Orders Approving Certain EFIH Settlements and the Oncor TSA Amendment* [D.I. 474] (the "Ying Declaration"); *Supplemental Declaration of David Ying, Senior Managing Director of Evercore Group L.L.C., in Support of (1) the EFIH First Lien DIP Motion and (2) the EFIH Settlement Motion* [D.I. 610] (the "Supplemental Ying Declaration"). The Debtors submitted the Supplemental Ying Declaration, at the request of the First Lien Trustee, to assist the First Lien Trustee in preparing its response to the First Lien Settlement.

execution of the broader Restructuring Support Agreement, the Debtors also agreed to provide Avenue, GSO, and York a combined settlement premium of $1.57 million.  Lastly, as a part of the Second Lien Settlement, the Debtors and all settling holders of EFIH Second Lien Notes will execute mutual releases of claims against one another.

9.      In the interest of fairness, to give all of the holders of EFIH Second Lien Notes the opportunity to voluntarily participate in the Second Lien Settlement, the Debtors initiated a settlement opt-in period for the Second Lien Settlement.  Similar to the opt-in period under the First Lien Settlement (the "First Lien Opt-In"), the Debtors initiated the opt-in period for the Second Lien Settlement on May 9, 2014, and it is scheduled to expire on July 3, 2014 (the "Second Lien Opt-In").  Consistent with prepetition exchanges, the Second Lien Opt-In had an early participation period during which settling parties could participate in the Second Lien Settlement for an amount equal to 50% of their alleged makewhole claims.  As of the June 11, 2014 early participation deadline, holders of approximately 43% of EFIH Second Lien Notes by principal amount have agreed to participate in the Second Lien Settlement (including the parties to the Restructuring Support Agreement).  No settling holder of EFIH Second Lien Notes has approached the Debtors with any concerns regarding the Second Lien Opt-In or has requested to withdraw from the Second Lien Settlement.

10.      After a hearing on June 6, 2014, the Court approved the First Lien Settlement and the First Lien Opt-In over the objection of the First Lien Trustee.[11]  The First Lien Trustee appealed the Court's decision to the District Court for the District of Delaware and moved for a

---

[11]    *See Order Approving EFIH First Lien Settlement* [D.I 858].

stay pending appeal.[12]  After the parties briefed the issue, the District Court denied the First Lien

Trustee's motion for the stay without a hearing.[13]  The First Lien Trustee has since filed for a

direct appeal to the Court of Appeals for the Third Circuit.[14]

11.    Since filing the Settlement Motion, the Debtors have adjourned certain of the

relief requested therein such that the only relief requested by that motion at the June 30, 2014

hearing is approval of the Second Lien Settlement and Second Lien Opt-In (as modified, the

"Second Lien Settlement Motion").  The First Lien Trustee, the Second Lien Trustee, the EFH

Unsecured Group, and the TCEH Unsecured Group have all objected to the Second Lien

Settlement.  The Creditors' Committee objected to approval of the Oncor TSA Amendment,

which is not before the Court at this hearing.  Various parties have also filed objections to the

approval of the EFIH Second Lien DIP Facility, which the Debtors address in a separate reply.[15]

The Debtors now reply to the Objections and request that the Court approve the Second Lien

Settlement and the Second Lien Opt-In.

**Argument**

**I.    The Second Lien Settlement Is a Sound Exercise of the Debtors' Business Judgment.**

12.    The legal standard here is straightforward.  Bankruptcy Rule 9019 governs a

compromise entered into by a chapter 11 debtor and settling creditors.  *See e.g., In re Nutraquest,*

*Inc.*, 434 F.3d 639, 645 (3d Cir. 2006).  Under the Rule, courts consider four factors in approving

---

[12]  *See Notice of Appeal* [D.I. 873]; *CSC Trust Co. of Del. v. Energy Future Holdings Corp. (In re Energy Future Holdings Corp.)*, No. 14-723-UNA (D. Del. May 9, 2014) [Dist. D.I. 2].

[13]  *See Order* [Dist. D.I. 11].

[14]  *See Motion of CSC Trust Company of Delaware, as Indenture Trustee, for Certification of Direct Appeal under 28 U.S.C. § 158(d)(2)* [D.I. 1123].

[15]  *Debtors' Omnibus Reply to Objections to the EFIH Second Lien DIP Motion*, filed contemporaneously herewith (the "Second Lien DIP Reply").

7

settlements:  (1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation, and the expense, inconvenience, and delay accompanying it; and (4) the paramount interest of the creditors.  *In re Martin*, 91 F.3d 389, 393 (3d Cir. 1996).  This standard ensures that "settlements [are] moved through quickly to be sure that creditors can resolve claims without waiting for a full reorganization plan."  *In re Pa. Truck Lines, Inc.*, 150 B.R. 595, 599 (E.D. Pa. 1992), *aff'd*, 8 F.3d 812 (3d Cir. 1993).  Furthermore, it is well settled that "the court should defer to a [debtor]'s judgment so long as there is a legitimate business justification for his action."  *In re Coram Healthcare Corp.*, 315 B.R. 321, 330 (Bankr. D. Del. 2004).[16]

13.    As set forth in the Ying Declaration, the Second Lien Settlement is supported by a legitimate business justification and a sound exercise of the Debtors' business judgment.  The Second Lien Settlement resolves a significant portion of the disputed makewhole claims related to the EFIH Second Lien Notes.  As a result, it reduces a significant contingency facing the Debtors and provides greater certainty regarding the Debtors' balance sheet and capital structure upon emergence from chapter 11.  The price of the Second Lien Settlement also includes the mutual release of claims, including avoidance actions, among the settling holders of EFIH Second Lien Notes and the Debtors.  Such releases are commonplace in and integral to Settlement; the assertion by the TCEH Unsecured Group that there is no principled basis to distinguish between settling and non-settling creditors in the context of the Second Lien Settlement and Second Lien Repayment simply defies reason.  It was also critical to obtaining Fidelity's support for the Restructuring Support Agreement.  And it has the support of the

---

[16]    As explained in the EFIH Second Lien DIP Reply, the appropriate standard for evaluation of these transactions is business judgment, not entire fairness or some other heightened standard.

majority of the most affected classes of creditors at EFH Corp. and EFIH—general unsecured creditors.

14.    The Second Lien Settlement is a quintessential example of a bankruptcy settlement.  As the Debtors have stated previously, they believe they will prevail in showing that no makewhole premium is due to holders of EFIH Second Lien Notes.  The EFH Unsecured Group even believes that this settlement is too rich for the Court to approve.  On the other hand, a majority of holders of EFIH Second Lien Notes have demanded the full amount of their makewhole claim—and even their most recent financing offer to the Debtors contemplates payment in full of 100% of such claims.  Meanwhile, the Second Lien Settlement has the support of approximately 43% of the holders of EFIH Second Lien Notes.  These diametrically opposed viewpoints and the remarkable parity between participating and non-participating holders of Second Lien Notes suggests that the settlement is in fact a reasonable exercise of the Debtors' sound business judgment.   As a result, the Court should overrule the Objections and approve the Second Lien Settlement as a valid exercise of business judgment by the Debtors.

**II.**    **The Second Lien Settlement Is Not a *Sub Rosa* plan.**

15.    The Objectors exert great effort seeking to equate the Second Lien Settlement to a chapter 11 plan and hold it to confirmation standards.  As an initial matter, the Second Lien Settlement is not a *sub rosa* plan, or anything close.  The EFH Unsecured Group cites to broad articulations of the *sub rosa* plan standard that would effectively prohibit Restructuring Support Agreements and are simply not the law in this district.  *See, e.g.*, *In re Tower Auto. Inc.*, 241 F.R.D. 162, 168 (S.D.N.Y. 2006) ("A settlement which has the effect of dictating the terms of the debtor's plan of reorganization prior to the confirmation process cannot be approved").  As this Court has held, a settlement is a *sub rosa* plan only if it "either (i) dispose[s] of all claims

against the estate or (ii) restrict[s] creditors' rights to vote." *In re Capmark Fin. Grp. Inc.*, 438

B.R. 471, 513 (Bankr. D. Del. 2010) (Sontchi, J.).

16.     The Second Lien Settlement does not satisfy either prong of this standard.  The

Second Lien Settlement does not dispose of *all* claims against the estate.  To the contrary,

non-settling holders are free to continue litigating their makewhole claims, and the claims of

other tranches of debt remain outstanding as well.  Likewise, the Second Lien Settlement would

not restrict voting rights in connection with the Debtors' plan of reorganization.  If the Court

allows the makewhole claims of non-settling holders of EFIH Second Lien Notes, nothing is to

stop them from voting those claims, if allowed, against the Debtors' plan.

## III.    The Second Lien Settlement Does Not Violate Section 1123(a)(4) of the Bankruptcy Code.

### A.    Section 1123(a)(4) Does Not Apply in the Case of Rule 9019 Settlements.

17.     Various Objectors attempt to hold the Second Lien Settlement to the unequal

treatment prohibition embodied in section 1123(a)(4) of the Bankruptcy Code.  This statute, by

its clear text, governs "a plan" of reorganization, not a Bankruptcy Rule 9019 settlement.  And

the Objectors fail to cite a single case that applies section 1123(a)(4) to a Bankruptcy Rule 9019

settlement.  This is unsurprising, because the law is the opposite.  Courts have repeatedly found

that section 1123(a)(4) does not apply in this context.  *See In re Dana Corp.*, 412 B.R. 53, 62

(S.D.N.Y. 2008) ("[The language of 1123] is not addressed to the steps in a reorganization that

occur before a plan is confirmed, such as the Settlement Order in this case."); *see also In re*

*Journal Register Co.*, 407 B.R. 520, 533 (Bankr. S.D.N.Y. 2009) ("[T]he question under

§ 1123(a)(4) is whether the payment that creates the difference is provided 'under the Plan.'");

*In re New Century TRS Holdings, Inc.*, 407 B.R. 576, 592 (D. Del. 2009) (holding that section

1123(a)(4) is to be enforced "according to its plain language").  As this Court specifically held in

*Columbia Gas*:  "If [the debtor] and a [creditor] ultimately do not settle a claim, the [creditor] retains its rights to seek the full amount of its filed proof of claim, which in each case is higher than any settlement offer.   As to the treatment of claims within the same class, that is a confirmation issue."  *In re Columbia Gas Sys., Inc.*, 1995 WL 404892, at *2 (Bankr. D. Del. June 16, 1995).   And as was the case when the First Lien Trustee made the same argument with respect to the First Lien Settlement, the same is true here—the Objectors' attempt to import section 1123(a)(4) standards to a Bankruptcy Rule 9019 settlement simply is not appropriate.

18.     Separate and apart from section 1123(a)(4), certain Objectors rely on a general "equality of treatment" policy in bankruptcy.  *Howard Delivery Service Inc. v. Zurich American Ins. Co.*, 547 U.S. 651, 655 (2006); *In re Combustion Engineering, Inc.*, 391 F.3d 190, 239 (3d Cir. 2005) (quoting *Begier v. IRS*, 496 U.S. 53, 58 (1990)); *In re Am. Home Mortg. Holdings, Inc.*, 501 B.R. 44, 59 (Bankr. D. Del. 2013); *Burtch v. Revchem Composites, Inc. (In re Sierra Concrete Design, Inc.)*, 463 B.R. 302, 304 (Bankr. D. Del. 2012).   But these cases discuss a policy goal—and one which the Debtors appreciate as evidenced by fact that, in the interest of fairness, the Debtors gave all holders of EFIH Second Lien Notes the ability to voluntarily opt-in to the Second Lien Settlement—not a rule of law.  Rule 9019 settlements, unlike plans, cannot bind creditors that do not consent.  Therefore, they are *by definition* limited to particular creditors.

19.     The Second Lien Trustee's argument hinges on a sole quote from the Third Circuit's opinion in *Combustion Engineering*:   "Several sections of the Code are designed to ensure equality of distribution from the time the bankruptcy petition is filed," including section 1123(a)(4).  *In re Combustion Eng'g, Inc.*, 391 F.3d 190, 239 (3d Cir. 2004).  But the Second Lien Trustee does not quote fully the relevant language:   "Section 1123(a)(4) requires that a

11

*plan of reorganization* 'provide the same treatment for each claim or interest of a particular class.'"  *Id.* (emphasis added).  The Second Lien Trustee thus fails to mention that *Combustion Engineering* actually resolved confirmation objections concerning distributions under a plan. The Second Lien Trustee's selective reading of this case is not a basis to create new law in the Rule 9019 context.[17]

20.     Similarly, the Objectors cite various cases for the proposition that pre-plan settlements must comport with the absolute priority rule.  *In re Iridium Operating LLC*, 478 F.3d 452, 455 (2d Cir. 2007); *U.S. v. AWECO, Inc.*, 725 F.2d 293, 298 (5th Cir. 1984); *Costa v. Robotic Vision Systems, Inc. (In re Robotic Vision Systems, Inc.)*, 2006 WL 929322, *3 (1st Cir. B.A.P. Apr. 11, 2006).  That is not necessarily the law in this district.  *See Jevic Holding Corp.*, No. BR 08-11006(BLS), 2014 WL 268613, at *3 (D. Del. Jan. 24, 2014) ("As discussed by the bankruptcy court, the settlement does not follow the absolute priority rule.  This is not, however, a bar to the approval of the settlement as it is not a reorganization plan.").

21.     Moreover, the absolute priority rule is a protection for unsecured creditors, not secured creditors like the holders of the EFIH First and Second Lien Notes.  *See Bank of Am. Nat. Trust & Sav. Ass'n v. 203 N. LaSalle St. P'ship*, 526 U.S. 434, 448-49 (1999) (stating that

---

[17]  The Second Lien Trustee's remaining cases are also inapposite.  *In re Allegheny Int'l, Inc.,* 118 B.R. 282, 295-96 (Bankr. W.D. Pa. 1990), was based on actions by a *plan proponent* to launch a tender offer at the same time it was soliciting acceptance of a plan; *In re AppliedTheory Corp.*, 02-11868(REG), 2008 WL 1869770, at *2 (Bankr. S.D.N.Y. Apr. 24, 2008), was a bench opinion about a settlement that subjected only counsel to a creditors' committee, and not other professionals, to fee disgorgement; *In re AOV Indus., Inc.*, 792 F.2d 1140 (D.C. Cir. 1986), again, was in the context of confirmation of plan that contained third party releases; *In re Flight Trans. Corp. Secs. Lit.*, 730 F.2d 1128 (8th Cir. 1984), was a highly unique circumstance that essentially contemplate the transfer of all of an estate's assets as part of a class action settlement that excluded certain of the estate's creditors from participation in certain pools;  *In re Kmart Corp.*, 359 F.3d 866, 872 (7th Cir. 2004), was about critical vendor relief; *In re Warren*, 2011 WL 3299819 (9th Cir. B.A.P. 2011), was about a settlement by a chapter 7 trustee to have an insurance company pay certain favored creditors proceeds of a settlement directly; and *In re CGE Shattuck, LLC*, 254 B.R. 5 (Bankr. D.N.H. 2000), was an attempt by a secured creditor to share proceeds of its collateral if creditors rejected a debtor's plan and the creditor could obtain access to the collateral.  These are all in the context of confirmation or other egregious circumstances.

"the absolute priority rule [is] now on the books as subsection (b)(2)(B)(ii)" of section 1129 of the Bankruptcy Code, which states that equity holders should not recover unless unsecured holders are paid in full).

22.    In any event, the Second Lien Settlement does not violate or even implicate the absolute priority rule:  it is simply a settlement of a lawsuit with second lien creditors in exchange for cash.  The Debtors do not seek in any way to disturb the priority of creditors, all of whom will be treated in accordance with such priorities under a plan.

**B.    Even If Section 1123(a)(4) Did Apply, the Parties That Are Receiving Different Consideration Are Not Similarly Situated and Would Therefore Not Be Subject to Equal Treatment Under a Plan.**

23.    In any event, there is no discriminatory treatment under the Second Lien Settlement.  Unlike the Objectors, Fidelity negotiated intensely with the Debtors on a global restructuring and is investing large amounts of new capital to support that restructuring.   To the extent Fidelity is receiving different consideration than other holders of EFIH Second Lien Notes, it is because Fidelity is differently situated from those creditors.  Fidelity is not getting more than other creditors on account of its EFIH Second Lien Notes in particular.  (MacDougall Dep. Trans. 300:4-7 ("The offers made to Fidelity and the offers made to the other members of the second lien group are identical.").)  The offer to all holders is simple and uniform:  par plus accrued interest plus 50% of makewhole claims as of the consummation date. (M. MacDougall Dep. Tr. at 299:10-15.)  Otherwise, all of the items of supposed settlement consideration that the Second Lien Trustee points to are not attributable to the Second Lien Settlement.

24.    *First*, the Second Lien Trustee points to the $8.75 million (1.75% of $500 million) commitment fee that Fidelity *already received* in connection with the EFIH First Lien DIP Financing.  This fee is utterly irrelevant at this stage.  The Court approved this fee, and it did so on account of Fidelity's commitment to fund $500 million of the EFIH First Lien DIP

Financing.  Both the EFIH First Lien DIP Facility and fee have been funded—and approval of the fee is not before the Court as part of the Second Lien Settlement.

25.     **Second**, the Second Lien Trustee argues that Fidelity is receiving an improper right to participate in the Second Lien DIP Facility.  On its face, the proposition that debtors must offer the right to participate in their DIP financings to all prepetition creditors on an equal basis is not plausible.  In any event, the right to participate in the Second Lien DIP Facility is clearly and undoubtedly attributable to Fidelity's significant EFH position.  *See, e.g.*, (MacDougall Dep. Trans. 300:17-20, 301:8-9 ("There's a component offering Fidelity nine percent of the rights to participate in the second lien DIP . . . . It has nothing to do with the second lien make whole claim. . . . It's been offered to Fidelity in relation to their EFH unsecured claims . . . .")); Restructuring Support Agreement, Ex. A, at 8 ("Fidelity, *as a Holder of General Unsecured Claims of EFH*, shall receive 9% of the Participation Rights and General Unsecured Claims Against EFH shall receive a Pro Rata share of 9% of the Equity Conversion on account of the Tranche A-3 Notes." (emphasis added)).

26.     **Third**, the Second Lien Trustee argues that Fidelity is in fact receiving its $11.25 million participation fee under the Second Lien DIP Facility in exchange for the settlement of its second lien makewhole claims.  Fidelity was able to negotiate for this fee as a result of its significant positions across the Debtors' capital structure—not because of its position in the EFIH Second Lien Notes.  More importantly, Fidelity is providing value in exchange for this fee.  Specifically, this fee compensates Fidelity for funding its portion of the Second Lien DIP Facility at this juncture. Moreover, notwithstanding assertions to the contrary—Fidelity does not earn this entire fee for funding $1—Fidelity only earns this fee *pro rata* in the amount of the

Second Lien DIP it funds.  Stated different, Fidelity must fund its full 9% allocation to earn the full participation fee.

27.    ***Fourth***, the Second Lien Trustee points to the fact that Fidelity will receive the benefit of a most favored nation clause under the Second Lien Settlement.  But Fidelity, as the anchor participant in the Second Lien Settlement that agreed to the deal prepetition, bore the risk of a higher future settlement and therefore was entitled to this protection.  Indeed, this provision *promotes* equality of treatment, it does not reduce it.

28.    ***Finally***, the Second Lien Trustee points to the $1.57 million that Avenue, GSO, and York are receiving in connection with the Second Lien Settlement.  But these parties are providing significant and unique value to the Debtors' restructuring, both as parties to the Restructuring Support Agreement and as Commitment Parties.  And, like Fidelity, they agreed to participate in the Second Lien Settlement prepetition, which other parties chose not to do and which was valuable to the Debtors.   In this context—and in the context of a $42 billion restructuring effort—an aggregate payment of $1.57 million to induce this prepetition settlement and garner these parties' support for the Debtors' chapter 11 cases is inconsequential.

**IV.    Waiver of the Stay Under Bankruptcy Rule 6004(h) is Warranted.**

29.    Certain Objectors argue that the stay under Bankruptcy Rule 6004(h) should not be waived.  Under Bankruptcy Rule 6004(h),

> if an objection has been filed and is being overruled, the court should eliminate or reduce the 14–day stay period only upon a showing that there is a sufficient business need to close the transaction within the 14–day period and that the interests of the objecting party, taking into account the likelihood of success on appeal, are sufficiently protected.  If the objecting party informs the court that it intends to appeal and seek a stay, then the stay period should not be reduced to less than an amount of time sufficient to allow the objecting party to seek a stay, unless the court determines that the need to proceed sooner outweighs the objecting party's interests.

15

30.    Waiver of the stay here is appropriate.   Certain steps necessary to closing, including the completion of the offering for participation in the Second Lien DIP Facility, which the Debtors intend to do as soon as practicable after entry of the Order, may not be performed while the Order is subject to a stay.   As a result, any stay of the Order will likely result in commensurate delay in closing.   This is important for two reasons.   **First**, the Restructuring Support Agreement requires that the Second Lien DIP Facility and Second Lien Settlement each be consummated within five business days of entry of the orders approving those transactions.[18] A stay would effectively make meeting this requirement impossible and give rise to termination rights under the Restructuring Support Agreement and therefore the Second Lien DIP Facility. **Second**, each day of delay in consummation of the Second Lien DIP Facility and Settlement would cost the Debtors approximately $350,000 in added interest expense.   Therefore, the effect of a delay on the Debtors would be acute and potentially significant.

*[Remainder of page intentionally left blank]*

---

[18]   The Debtors are in the process of seeking an amendment to the Restructuring Support Agreement to provide for ten business days for closing, but that extended period of time does not mean that closing can occur within ten business days if a stay extends to that period.

WHEREFORE, the Debtors respectfully request that the Court (a) overrule the Objections, (b) approve the Second Lien Settlement, and (c) grant such other relief as it deems necessary and proper under the circumstances.

Dated:  June 27, 2014
      Wilmington, Delaware                */s/ Jason M. Madron*

**RICHARDS, LAYTON & FINGER, P.A.**
Mark D. Collins (No. 2981)
Daniel J. DeFranceschi (No. 2732)
Jason M. Madron (No. 4431)
920 North King Street
Wilmington, Delaware 19801
Telephone:     (302) 651-7700
Facsimile:      (302) 651-7701
Email:          collins@rlf.com
                  defranceschi@rlf.com
                  madron@rlf.com

-and-

**KIRKLAND & ELLIS LLP**
Richard M. Cieri (admitted *pro hac vice*)
Edward O. Sassower, P.C. (admitted *pro hac vice*)
Stephen E. Hessler (admitted *pro hac vice*)
Brian E. Schartz (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022-4611
Telephone:     (212) 446-4800
Facsimile:      (212) 446-4900
Email:          richard.cieri@kirkland.com
                  edward.sassower@kirkland.com
                  stephen.hessler@kirkland.com
                  brian.schartz@kirkland.com

-and-

James H.M. Sprayregen, P.C. (admitted *pro hac vice*)
Chad J. Husnick (admitted *pro hac vice*)
Steven N. Serajeddini (admitted *pro hac vice*)
300 North LaSalle
Chicago, Illinois 60654
Telephone:     (312) 862-2000
Facsimile:      (312) 862-2200
Email:          james.sprayregen@kirkland.com
                  chad.husnick@kirkland.com
                  steven.serajeddini@kirkland.com

Proposed Co-Counsel to the Debtors and Debtors in Possession