# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| *In re* | : | Chapter 11 |
| | : | |
| Energy Future Holdings Corp., e*t al*, | : | Case No: 14-10979(CSS) |
| | : | |
| | : | Jointly Administered |
| | : | |
| Debtors | : | **Prop. Hearing Date: June 30, 2014 @ 9:30 a.m.** |
| | : | **Prop. Objection Deadline: June 30, 2014 @ 9:30 a.m.** |

## THE UNITED STATES TRUSTEE'S OMNIBUS OBJECTION TO THE VARIOUS MOTIONS TO FILE OBJECTIONS, EXHIBITS AND DOCUMENTS UNDER SEAL PURSUANT TO 11 U.S.C. § 107(b) AND FED. R. BANKR. P. 9018 (D. I. 1072, 1073, 1081, 1084 & 1093, 1097)

Roberta A. DeAngelis, the United States Trustee for Region 3 ("U. S. Trustee"), by and through her undersigned counsel, hereby files this Omnibus Objection to the Various Motions to File Objections, Exhibits and Documents under Seal Pursuant to 11 U.S.C. § 107(b) and Fed. R. Bankr. P. 9018 (D. I. 1072, 1073, 1081, 1084 & 1093, 1097) (collectively the "Sealing Motions") and in support thereof states as follows:

### <u>INTRODUCTION</u>

1.      This Court has jurisdiction to hear the above-referenced Objection.

2.      Pursuant to 28 U.S.C. § 586, the U. S. Trustee is charged with the administrative oversight of cases commenced pursuant to title 11 of the United States Bankruptcy Code. This duty is part of the U. S. Trustee's overarching responsibility to enforce the bankruptcy laws as written by Congress and interpreted by the courts. *See United States Trustee v. Columbia Gas Sys., Inc. (In re Columbia Gas Sys., Inc.),* 33 F.3d 294, 295-96 (3d Cir. 1994) (the U. S. Trustee

has "public interest standing" under 11 U.S.C. § 307, which goes beyond mere pecuniary interest).

3.      Pursuant to 11 U.S.C. § 307, the U. S. Trustee has standing to be heard with regard to the above-referenced Objection.

## BACKGROUND

4.      On April 29, 2014, each of the Debtors filed a voluntary Chapter 11 petition.

5.      On May 13, 2014, the U. S. Trustee appointed a statutory committee of unsecured creditors (the "Committee") (D. I. 420).

6.      The Debtors' businesses include the largest generator, distributor, and retail electricity provider in Texas.  EFH conducts substantially all of its business operations in the electricity market overseen by the Electric Reliability Council of Texas which covers the majority of Texas.  The Texas electricity market, in turn, is subject to oversight and regulation by the Public Utility Commission of Texas.  EFH has approximately 9,100 employees, approximately 5,700 of whom are employed by the Debtors, in three distinct business units, namely electricity generation, mining, wholesale electricity sales, and commodity risk management and trading activities, conducted by the TCEH Debtors composing "Luminant"; EFH's retail electricity sales operations and related operations, mainly conducted by the TCEH Debtors composing "TXU Energy"; and EFH's rate-regulated electricity transmission and distribution operations, conducted by Oncor, a non-Debtor.  EFIH indirectly owns approximately 80% of Oncor. (Declaration of Paul Keglevic at Paragraph 6 - D. I. 98).

7.      On June 24, 2014, the CSC Trust Company of Delaware, as Indenture Trustee ("CSC") filed a motion seeking to file its Objection to the Debtors' (A) Motion to Approve

Second-Lien Post-Petition Financing, Redeem Second Lien Notes, and Determine Secured Claim and (B) Motion to Approve Certain EFIH Settlements under Seal (D. I. 1072) (the "CSC Sealing Motion").

8.      On June 24, 2014, Computershare Trust Company, N.A. and Computershare Trust Company of Canada, as Indenture Trustee filed a motion seeking to file under Seal Unredacted Versions of: (I) Objection to Debtors' Motion to Approve Second Lien Settlement; (II) Objection to Debtors' Motion to Approve Second Lien DIP; and (III) Declaration of Todd R. Snyder (D. I. 1073) (the "Computershare Sealing Motion").

9.      On June 24, 2014, the Ad Hoc Group of TCEH Unsecured Noteholders Field a Motion Pursuant to 11 U.S.C. § 107(b), Bankruptcy Rule 9018, and Local Rule 9018-1(b) for Authority to File under Seal the Objection of the Ad Hoc Group of TCEH Unsecured Noteholders to the Motion of Energy Future Intermediate Holding Company LLC and EFIH Finance Inc. for Entry of an Order (A) Approving Postpetition Second Lien Financing, (B) Granting Liens and Providing Superpriority Administrative Expense Claims, (C) Authorizing the Use of Cash Collateral, (D) Authorizing the EFIH Second Lien Repayment, (E) Authorizing Entry into and Payment of Fees under the Commitment Letter, and (F) Modifying the Automatic Stay and Limited Objection to the Related Motion to Approve EFIH Second Lien Settlement and Supporting Declaration (D. I.  1081) (the "Ad Hoc TCEH Noteholders Sealing Motion").

10.      On June 24, 2014, the Ad Hoc Group of EFH Legacy Noteholders filed a Motion To Seal their Objection to Approval of Proposed Second Lien Financing and Makewhole Settlement (D. I. 1084) (the "EFH Legacy Noteholders Sealing Motion").

11.      On June 24, 2014, the Committee filed a Motion to File Certain Exhibits under Seal Pursuant to 11 U.S.C. § 107, Fed. R. Bankr. P. 9018, and Del. Bankr. L.R. 9018-1 Regarding the Declaration of Todd M. Goren in Support of the Omnibus Objection of the Official Committee of Unsecured Creditors To (I) the Motion of Energy Future Intermediate Holding Company LLC and EFIH Finance Inc. for Entry of an Order (A) Approving Postpetition Second Lien Financing, (B) Granting Liens and Providing Superpriority Administrative Expense Claims, (C) Authorizing the Use of Cash Collateral, (D) Authorizing the EFIH Second Lien Repayment, (E) Authorizing Entry into and Payment of Fees under the Commitment Letter, and (F) Modifying the Automatic Stay and (II) the Motion of Energy Future Holdings Corp., *et al.,* for Entry of Orders Approving Certain EFIH Settlements and the Oncor TSA Amendment (D. I. 1093) (the "Committee Sealing Motion").

12.      On June 24, 2014, Wilmington Savings Fund Society, FSB filed its Motion for Authorization to File under Seal its Joinder to Certain Objections to (I) the Motion of Energy Future Intermediate Holding Company LLC and EFIH Finance Inc. for Entry of an Order (A) Approving Postpetition Second Lien Financing, (B) Granting Liens and Providing Superpriority Administrative Expense Claims, (C) Authorizing the Use of Cash Collateral, (D) Authorizing the EFIH Second Lien Repayment, (E) Authorizing Entry into and Payment of Fees under the Commitment Letter, and (F) Modifying the Automatic Stay and (II) the Motion of Energy Future Holdings Corp., et al., for Entry of Orders Approving Certain EFIH Settlements and the Oncor TSA Amendment (D. I. 1097) (the "WSFS Sealing Motion").

13.       In both the CSC Sealing Motion and the Computershare Sealing Motion, the movants state that information redacted from their objections is derived from certain documents,

deposition testimony and emails that the EFIH Debtors have designated as "confidential" or "highly confidential" without any showing that such documents and testimony falls within the scope of section 107(b)(1)  (See the CSC Sealing Motion at Paragraph 6 and the Computershare Sealing Motion at Paragraph 7).

14.     CSC further specifically states that its objection contains information obtained from deposition testimony of Paul Keglevic and David Ying adduced in connection with the EFIH Second Lien DIP Motion and Second Lien Settlement Motion and that the EFIH Debtors have designated the entirety of the deposition transcripts as confidential as well as certain emails produced in discovery. (CSC Sealing Objection at paragraph 1). Additionally, CSC further states that despite the fact that it does not believe that any of the testimony or exhibits are "confidential", they are seeking to file these documents under seal in order to abide by yet-to-be-entered protective order. *Id.*

15.     Likewise, in the Ad Hoc TCEH Noteholders Sealing Motion, the Ad Hoc TCEH Noteholders state that in their objection that they make reference to certain documents produced by the Debtors, as well as deposition testimony, that the Debtors designated as highly confidential. (the Ad Hoc TECH Noteholders Sealing Motion at Paragraph 5).

16.     The EFH Legacy Noteholders state in their motion that they entered in a Confidentiality Agreement and Stipulated Protective Order (the "Confidentiality Agreement") which requires that the EFH Legacy Noteholders file portions of filings that disclose confidential information under seal. (EFH Legacy Noteholders Sealing Motion at Paragraphs 4, 5). Specifically, the Confidentiality Agreement applies to " . . . all information, documents and things exchanged in or subject to discovery ... in response to or in connection with any Discovery

5

Requests." (Confidentiality Agreement at Paragraph 3, EFH Legacy Noteholders Sealing Motion

at Paragraph 5).

17.     The Committee states in its motion that "[c]ertain of the exhibits attached to the

Goren Declaration (the "Confidential Goren Declaration Exhibits") contain information that the

Debtors have designated as confidential, including deposition transcripts and a presentation made

to the Boards of Managers and Directors of EFIH and EFIH Finance, Inc., which was produced

by the Debtors to the Committee, regarding alternative proposals to the EFIH Second Lien DIP

(as defined in the Objection). The Committee therefore requests that the Court permit the

Committee to file the Confidential Goren Declaration Exhibits under seal. (Committee Sealing

Motion at Paragraph 10).

18.     Lastly, in the WSFS Sealing Motion, WSFS states that "[i]n its Joinder, WSFS

makes reference to certain deposition testimony that the EFIH Debtors have designated as

"confidential." (WSFS Sealing Motion at Paragraph 6).[1]

19.     In fact, it should be noted that the various litigants and parties involved in these

sealing motions, including the Debtors, have been engaged in extensive discovery but have yet to

---

[1] The U. S. Trustee previously filed her Omnibus Objection to the Motion of the Ad Hoc Group of TCEH Unsecured Noteholders Pursuant to 11 U.S.C. § 107(b), Bankruptcy Rule 9018, and Local Rule 9018-1(b) for Authority to File its Supplemental Omnibus Objection to (I) the Motion of Texas Competitive Electric Holdings Company LLC and Certain of its Debtor Affiliates for Entry of Interim and Final Orders Approving Postpetition Financing and Granting Other Related Relief and (II) the Motion of Texas Competitive Electric Holdings Company LLC and Certain of its Debtor Affiliates for Entry of Interim and Final Orders Authorizing Use of Cash Collateral and Granting Other Related Relief and Supporting Declaration under Seal (D. I. 682); Motion of the Ad Hoc Group of TCEH Unsecured Noteholders Pursuant to 11 U.S.C. § 107(b), Bankruptcy Rule 9018, and Local Rule 9018-1(b) for Authority to File its Limited Omnibus Objection to the Motion of Energy Future Holdings Corp., et al, for Entry of Orders Concerning the Debtors Cash Management and Certain Other Operational First Day Motions and Supporting Declaration under Seal (D. I. 684); and the Motion to File Objection of CSC Trust Company of Delaware, as Indenture Trustee, to the EFIH Debtors Motion to Approve First Lien Settlement under Seal (D. I. 695) on June 4, 2014 at D. I. 823. To the best of our knowledge, neither the three afore-mentioned sealing motions nor the U. S. Trustee's objection have been ruled upon.

negotiate and agree upon an acceptable discovery protocol and protective order which may

resolve some, if not all, of the issues presented in the Sealing Motions.

## LAW AND ANALYSIS

**A.     The relief requested in the Sealing Motions reaches beyond the scope of 11 U.S.C. § 107 and the relevant case law and violates the policy of public access to bankruptcy proceedings and records.**

20.     The relief requested in the Sealing Motions reaches beyond the scope of 11

U.S.C. § 107 and the relevant case law and violates the policy of public access to bankruptcy

proceedings and records.

21.     In *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 591 (1978), the Supreme

Court stated that "[i]t is clear that the courts of this country recognize a general right to inspect

and copy public records and documents, including judicial records and documents."  *Nixon v.

Warner Communications, Inc.*, 435 U.S. 589, 591 (1978). In *Orion Pictures Corp. v. Video

SoftwareDealers Assoc.*, 21 F.3d 24 (2d Cir. 1994), the court stated the general rule as  ". . . a

strong presumption of public access to court records. . . helps safeguard the 'integrity, quality,

and respect in our judicial system." *Orion*, 21 F.3d at 26; *see also In re Foundation for New Era

Philanthropy*, 1995 WL 478841 (E.D. Pa. 1995); *In re Barney's Inc.*, 201 B.R. 703 (Bankr.

S.D.N.Y. 1996).  In *In re Continental Airlines*, the court noted "...the strong presumption in

favor of public access to judicial records and papers...".  *In re Continental Airlines*, 150 B.R. 334

(D. Del. 1993).

22.     In *In re Alterra Healthcare Corporation*, 353 B.R. 66 (Bankr. D. Del. 2006), the

bankruptcy court was not persuaded by the reorganized debtor's argument that disclosure will

impair its ability to  settle future claims, and stated that "documents filed in bankruptcy cases have historically been open to the press and general public."  *In re Alterra,* 353 B. R. at 71. In *Alterra*, this Court recognized that the information sought to be sealed did not fall within the prescriptions of Section 107(b) as stated that:

> The Reorganized Debtor argues that the information contained in the settlement agreements is confidential or commercial information within the meaning of section 107(b). The Reorganized Debtor asserts that disclosure of the information would (1) create an unfair advantage to unsettled claimants; (2) cause harm to unsecured creditors; (3) disadvantage the claimants who already settled; (4) provide competitors an unfair advantage through knowledge of its tort claims settling process; (5) hinder its ability to obtain insurance coverage; and (6) result in negative publicity. The Court finds the proffered assertions unpersuasive.

*In re Alterra*, 353 B.R. at 75.

23.    In the bankruptcy context, limited exceptions to the general rule are contained in the Bankruptcy Code and Bankruptcy Rules.  Section 107 provides in pertinent part that:

> (a) Except as provided in subsections (b) and (c) of this section and subject to section 112, a paper filed in a case under this title and the dockets of a bankruptcy court are public records open to examination by an entity at reasonable times without charge.
>
> (b)  On request of a party in interest, the bankruptcy court shall, and on the bankruptcy court's own motion, the bankruptcy court may-
> > (1) protect an entity; with respect to a trade secret or confidential research, development, or commercial information; or
> > (2) protect a person with respect to scandalous or defamatory matter contained in a paper filed in a case under this title.  (Emphasis added).

11 U.S.C. § 107.

24.    As exceptions to the common law rule, the burden is on the moving party to show

that a request to place documents under seal falls within the parameters of Bankruptcy Code section 107 and Fed. R. Bankr. P. 9018 demonstrating ". . . that the interest in secrecy outweighs the presumption in favor of access." *See In re Continental Airlines,* 150 B.R. 334 (D. Del. 1993)[2]. The relevant inquiry, therefore, is whether the matter sought to be placed under seal fits within any of the categories included within either of Section 107(b) or Fed. R. Bankr. P. 9018. There is no showing in the Sealing Motions that the information sought to be protected falls within any of the enumerated categories.

25.    In *Orion*, the court defined commercial information as: ". . . information which would cause an 'unfair advantage to competitors by providing them information as to the commercial operations of the debtor." *Orion,* 21 F. 3d at 27.

26.    In *In re Foundation for New Era Philanthropy,* No. 95-13729, 1995 WL 478841 (Bankr. E.D. Pa. 1995), the court observed:

> [Section 107(b)] was not intended to save the debtor or its creditors from embarrassment, or to protect their privacy in light of countervailing statutory, constitutional and policy concerns . . . . Full disclosure of bankruptcy records may help insure that the bankruptcy statute is applied effectively in this case. It may also assist governmental entities in the performance of their duties *vis-a-vis* this debtor and its officers . . . . Thus, there are significant public concerns which favor full public access to all documents filed in this case. Id. at *4, 6.

---

[2] F.R.B.P. 9018 essentially incorporates the substance of Section 107(b), and adds ". . . governmental matters that are made confidential by statute or regulation" to the type of matters subject to seal.  This item is not applicable in the present case since no governmental matters are implicated.

**B.      The Information Sought to be Sealed Should be tailored to comply with 11 U.S.C. § 107**

27.      There is little if any indication or evidence in any of the Sealing Motions that the information sought to be redacted or sealed consists of proprietary or confidential commercial information, trade secrets, or that the disclosure of the information may expose a person to scandalous or defamatory matters.

28.      In these cases, the information sought to be sealed has merely been deemed to be "highly confidential" without the requisite showing by any party that the information sought to be sealed complies with or is contemplated to be the type of information that is sealed under 11 U.S.C. § 107(b). Any sealing of such information or documents should be specifically tailored to comply with Section 107(b).

29.      The Third Circuit may not have addressed Section 107(b) or Fed. R. Bankr. P. 9018, but it has examined the common law right of public access in the context of confidential settlement agreements and has "recognized a right of access to judicial proceedings and judicial records, and this right of access is 'beyond dispute . . . "  *Pansy v. Borough of Stroudsburg*, 23 F. 3d 772, 780-81 (3d Cir. 1994)[3].  In the present cases, the movants provide no evidence that the Sealing Motions comply with  Fed. R. Bankr. P.  9018 nor satisfies the standards set forth in Section 107(a). Therefore, the Sealing Motions should be denied as presented.

30.      The moving parties here bear the burden of showing that the information is confidential. *In re Food Mgmt. Group*, LLC, 359 B.R. 543, 561 (Bankr. S.D.N.Y. 2007); *see*

---

[3] Even if the moving parties can demonstrate that some of the information may contain material which may be protected under section 107(b) or Fed. R. Bankr. P.  9018, the relief granted should be narrowly tailored. *See In re Lomas Financial Corporation*, 1991 WL 21231, at *2 (S.D.N.Y. 1991).

*also, In re Fibermark, Inc.*, 330 B.R. 480 (Bankr. D. Vt. 2005). To meet this burden, the movants "must demonstrate extraordinary circumstances and compelling need to obtain protection." *Food Mgmt. Group*, 359 B.R. at 561 (citing *Orion*, 21 F.3d at 27); *see also, Publicker Indus., Inc. v. Cohen*, 733 F.2d 1059 (3d Cir. 1984) (The party seeking to seal any part of a judicial record bears the heavy burden of showing (1) that the material is the kind of information that courts will protect and (2) that disclosure will work a clearly defined and serious injury to the party seeking closure.). Before sealing the record, the court must be able to articulate the compelling countervailing interests to be protected, make specific findings on the record concerning the effects of the disclosure, and provide an opportunity for interested third parties to be heard. *Id.* at 1072.

31.     Additionally, in order to establish that the documents should be sealed and, thus, shielded from public view, the moving party must "clearly define []" the "serious injury" that would ensue from public disclosure of the documents. *In re Cendant Corp.*, 260 F.3d 183, 194 (3d Cir. 2001). Vague allegations that public access to documents would cause hardship are not sufficient to defeat the clear public policy embodied in Section 107(a). *Id.* "In the Second Circuit, documents which are part of the court record should not remain under seal absent the most compelling reasons." *Fibermark*, 330 B.R. at 503-04 (citing *In re Ionosphere Clubs, Inc.*, 156 B.R. 414, 434 (S.D.N.Y. 1993))

32.     The U. S. Trustee reserves any and all rights, remedies and obligations to, *inter alia*, complement, supplement, augment, alter and/or modify this Objection, file an appropriate Motion and/or conduct any and all discovery as may be deemed necessary or as may be required and to assert such other grounds as may become apparent upon further factual discovery.

11

WHEREFORE the U. S. Trustee requests that this Court deny each of the Sealing Motions consistent with this Objection and/or grant such other relief as this Court deems appropriate, fair and just.

Respectfully submitted,

**ROBERTA A. DEANGELIS**
**UNITED STATES TRUSTEE**

BY:      /s/Richard L. Schepacarter
Richard L. Schepacarter
Andrea B. Schwartz
Trial Attorneys
United States Department of Justice
Office of the United States Trustee
J. Caleb Boggs Federal Building
844 King Street, Suite 2207, Lockbox 35
Wilmington, DE 19801
(302) 573-6491
(302) 573-6497 fax
Email: Richard.Schepacarter@usdoj.gov
Dated: June 27, 2014          Email: Andrea.B.Schwartz@usdoj.gov