**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | ) |
| | ) Chapter 11 |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) |
| | ) Case No. 14-10979 (CSS) |
| Debtors. | ) |
| | ) (Jointly Administered) |
| | ) |

**DECLARATION OF DISINTERESTEDNESS OF THE MADISON GROUP, LLC**
**PURSUANT TO THE ORDER AUTHORIZING THE RETENTION AND**
**COMPENSATION OF CERTAIN PROFESSIONALS UTILIZED IN THE ORDINARY**
**COURSE OF BUSINESS**

I, Marcus S. Mason, declare under penalty of perjury:

1.      I am a Senior Partner of The Madison Group, LLC, located at 1030 15th Street NW, Suite 1080 West, Washington, District of Columbia, 20005 (the "Company").

2.      Energy Future Holdings Corp. and certain of its affiliates, as debtors and debtors in possession (collectively, the "Debtors"), have requested that the Company provide Consulting services to the Debtors, namely Energy Future Holdings Corp., and the Company has consented to provide such services.

3.      The Company may have performed services in the past, may currently perform services and may perform services in the future, in matters unrelated to these chapter 11 cases, for persons that are parties in interest in the Debtors' chapter 11 cases.  The Company does not perform services for any such person in connection with these chapter 11 cases, or have any

---

[1]    The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810.  The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201.  Due to the large number of debtors in these chapter 11 cases, for which joint administration has been granted, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

relationship with any such person, their attorneys, or accountants that would be adverse to the Debtors or their estates with respect to the matter on which the Company is proposed to be employed.

4.      As part of its customary practice, the Company is retained in cases, proceedings, and transactions involving many different parties, some of whom may represent or be employed by the Debtors, claimants, and parties in interest in these chapter 11 cases.

5.      Neither I nor any principal, partner, director, officer, etc., of or professional employed by, the Company has agreed to share or will share any portion of the compensation to be received from the Debtors with any other person other than the principal and regular employees of the Company.

6.      Neither I nor any principal, partner, director, officer, of or professional employed by, the Company, insofar as I have been able to ascertain, holds, or represents any interest adverse to the Debtors or their estates with respect to the matter(s) upon which this Company is to be employed.

7.      The Debtors owe the Company $ 0 for prepetition services, the payment of which is subject to limitations contained in the United States Bankruptcy Code, 11 U.S.C. §§ 101–1532.

8.      I understand that the *Order Authorizing the Retention and Compensation of Certain Professionals Utilized in the Ordinary Course of Business* does not authorize any of the Debtors to pay the Company for prepetition services.

9.      I further understand that this Declaration will not suffice as the Company's proof of claim.

10.     As of April 29, 2014, which was the date on which the Debtors commenced these chapter 11 cases, the Company was party to an agreement for indemnification with certain of the Debtors.  [A copy of such agreement is attached as **Exhibit 1** to this Declaration.]

11.     Such agreement for indemnification (the "OCP Agreement") is subject to the following modifications, applicable during the pendency of the Debtors' chapter 11 cases:

(a) the Company shall not be entitled to indemnification, contribution, or reimbursement for services provided under the OCP Agreement other than those described in such OCP Agreement, unless such services and indemnification therefor are approved by the Bankruptcy Court.

(b) Notwithstanding anything to the contrary in the OCP Agreement, the Debtors shall have no obligation to indemnify the Company, or provide contribution or reimbursement to the Company, for any claim or expense related to such OCP Agreement that is either:   (i) judicially determined (the determination having become final) to have arisen from the Company's gross negligence or willful misconduct; (ii) for a contractual dispute in which the Debtors allege the breach of the Company's contractual obligations under the OCP Agreement unless the Court determines that indemnification, contribution or reimbursement would be permissible pursuant to *In re United Artists Theatre Co.*, 315 F.3d 217 (3d Cir. 2003); or (iii) settled prior to a judicial determination as to the exclusions set forth in clauses (i) and (ii) above, but determined by the Court, after notice and a hearing to be a claim or expense for which the Company should not receive indemnity, contribution or reimbursement under the terms of the OCP Agreement as modified by this Order.

(c) If, before the earlier of (i) the entry of an order confirming a chapter 11 plan in these cases (that order having become a final order no longer subject to appeal), and (ii) the entry of an order closing these chapter 11 cases, the Company believes that it is entitled to the payment of any amounts by the Debtors on account of the Debtors' indemnification, contribution and/or reimbursement obligations under the OCP Agreement (as modified by this Order), including without limitation the advancement of defense costs, the Company must file an application therefor in this Court, and the Debtors may not pay any such amounts to the Company before the entry of an order by this Court approving the payment.  This subparagraph (c) is

any such amounts to the Company before the entry of an order by this Court approving the payment. This subparagraph (c) is intended only to specify the period of time under which the Court shall have jurisdiction over any request for fees and expenses by the Company for indemnification, contribution or reimbursement, and not a provision limiting the duration of the Debtors' obligation to indemnify the Company. All parties in interest in these chapter 11 cases shall retain the right to object to any demand by the Company for indemnification, contribution or reimbursement.]

12.     The Company is conducting further inquiries regarding its retention by any creditors of the Debtors, and upon conclusion of that inquiry, or at any time during the period of its employment, if the Company should discover any facts bearing on the matters described herein, the Company will supplement the information contained in this Declaration.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Date: June 25, 2014

Marcus S. Mason

4

AGREEMENT FOR PROFESSIONAL SERVICES

BY AND BETWEEN

MADISON GROUP, LLC

AND

ENERGY FUTURE HOLDINGS CORP.

DATED: JANUARY 1, 2012

## AGREEMENT FOR PROFESSIONAL SERVICES

### ARTICLE 12:  CONFIDENTIAL AND PROPRIETY INFORMATION

CONSULTANT acknowledges and agrees that the Services relate to matters that may be highly confidential and proprietary to COMPANY.  CONSULTANT further agrees that it, its employees, agents, representatives and subcontractors will not divulge to third parties, without the prior written consent of COMPANY, information or data obtained from or through COMPANY or COMPANY Group or developed by CONSULTANT that relates to the confidential or proprietary technical or business activities of COMPANY or COMPANY GROUP unless: (1) CONSULTANT has factually supportable evidence that the information was known to CONSULTANT prior to obtaining it from COMPANY; (2) the information is, at the time of disclosure by CONSULTANT , then in the public domain; or (3) CONSULTANT has factually supportable evidence that the information was obtained by CONSULTANT from a third party who did not receive it directly or indirectly from COMPANY and who has no obligation of secrecy with respect to that information.

If so requested by COMPANY, CONSULTANT further agrees to require its employees, agents, representatives or subcontractors to execute a nondisclosure agreement prior to performing any services under this Agreement.

### ARTICLE 13:  RECORDS AND RIGHT TO AUDIT

COMPANY will have the right to request and examine information to verify the accuracy and reasonableness of invoices. In the event such information discloses a discrepancy between invoices and the books and records, CONSULTANT agrees to promptly refund any overpayment by COMPANY.

### ARTICLE 14:  ASSIGNMENT

CONSULTANT will not assign any of the rights or responsibilities arising from this Agreement to any individual or entity without first having obtained the prior written approval of COMPANY.

### ARTICLE 15:  SUBCONTRACTING

CONSULTANT will not subcontract for any of the Services without the prior written approval of COMPANY and only then upon terms and conditions as COMPANY may require.

### ARTICLE 16:  WARRANTY AND INDEMNIFICATION

CONSULTANT warrants and represents that it has the full right, power and authority to enter into this Agreement and to perform legislative and executive branch governmental consulting and public relations services.  CONSULTANT will file all notices, including proper lobby registration and

*CONFIDENTIAL*

## AGREEMENT FOR PROFESSIONAL SERVICES

reports, as required by law. CONSULTANT will indemnify and hold COMPANY harmless from and against any and all claims, damages, liabilities, costs, and expenses, including legal expenses and reasonable attorney's fees, arising out of any breach of CONSULTANT'S obligations under this Agreement or any breach of any representation or warranty made by CONSULTANT under this Agreement.

### ARTICLE 17:  DEDICATION OF KEY PERSONNEL

CONSULTANT agrees that the key individual(s) identified and assigned to perform the Services to be provided by CONSULTANT pursuant to this Agreement will remain through the duration of the Agreement, or this Agreement will be subject to termination at the election of the COMPANY. There will be no addition, deletion or substitution of individuals by CONSULTANT without the prior written approval of COMPANY's Contract Coordinator.

### ARTICLE 18:  WAIVER OF CONSEQUENTIAL DAMAGES

Neither party will be liable to the other in contract, tort, or on any other basis, for any consequential damages of any nature, including, but not limited to, lost profits or revenues, loss of customer goodwill, business interruption costs, overhead costs, lost profit costs of capital, or loss of use of money.

### ARTICLE 19: INTELLECTUAL PROPERTY

CONSULTANT will obtain permission to use any and all intellectual property that may be required in order for CONSULTANT to perform the Services.  The permission will include all necessary licenses and governmental approvals.

CONSULTANT will hold harmless and indemnify COMPANY Group and, at COMPANY's option, defend COMPANY Group from and against any and all fines, penalties, losses, liabilities, damages, claims, and costs (including reasonable attorney's fees and court costs), arising out of or incurred as a result, directly or indirectly, of CONSULTANT's actions leading to any alleged or actual infringement or violation of any right, or alleged right, relating to intellectual property, to include any patent, copyright, or trade secret.

In addition, if any claim is brought alleging infringement or the violation of any intellectual property right, CONSULTANT will avoid any further possible infringement of the intellectual property right in question.  CONSULTANT will seek to resolve the claim in consultation with COMPANY, either by means of alternative arrangements for the Services, or by obtaining permission to use the intellectual property in question.

*CONFIDENTIAL*