**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) | Case No. 14-10979 (CSS) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | **Hearing Date:  July 18, 2014 at 9:30 a.m.** |
| | ) | **Objection Deadline:  July 11, 2014 at 4:00 p.m.** |

**MOTION OF ENERGY FUTURE HOLDINGS CORP., *ET AL.*, FOR ENTRY
OF AN ORDER AUTHORIZING, BUT NOT REQUIRING, THE TCEH DEBTORS
(A) TO PARTICIPATE IN A COMPETITIVE AUCTION, AND (B) IF SELECTED
AS THE WINNING BIDDER, TO CONSUMMATE A PROPOSED ACQUISITION**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") file this motion (this "Motion") for entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Order"), authorizing the TCEH Debtors (defined herein) to (a) participate in a competitive auction for the acquisition of certain strategic business assets, pursuant to the Bidding and Acquisition Procedures (defined herein); and (b) if selected as the winning bidder, consummate the proposed acquisition without further order of the Court.  In support of this Motion, the Debtors submit the *Declaration of Michael Carter in Support of the Motion of Energy Future Holdings Corp.,* et. al.*, for Entry of an Order Authorizing, But Not Requiring, the Debtors (A) to Participate in a Competitive Auction, and (B) If Selected as the Winning Bidder, to Consummate a Proposed Acquisition*, filed contemporaneously herewith.  In further support of this Motion, the Debtors respectfully state as follows.

---

[1]   The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810.  The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201.  Due to the large number of debtors in these chapter 11 cases, which are being jointly administered, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

## Jurisdiction and Venue

1.      The United States Bankruptcy Court for the District of Delaware has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Debtors consent pursuant to rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Bankruptcy Rules") to the entry of a final order by the United States Bankruptcy Court for the District of Delaware in connection with this Motion (the "Court")[2] to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The bases for the relief requested in this Motion are sections 105 and 363 of the Bankruptcy Code (the "Bankruptcy Code") and rule 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## Relief Requested

4.      By this Motion, the Debtors seek entry of the Order authorizing the TCEH Debtors (as defined herein) to (a) participate in a competitive auction for the acquisition of certain strategic business assets, pursuant to the Bidding and Acquisition Procedures; and (b) if selected as the winning bidder, consummate the proposed acquisition without further order of the Court.

---

[2]     As used herein, the term "Court" shall refer specifically to the Bankruptcy Court overseeing the Debtors' chapter 11 proceedings.

**Background**

5.      On April 29, 2014 (the "Petition Date"), each of the Debtors filed a voluntary petition with the Court under chapter 11 of the Bankruptcy Code.  The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  The Court has entered a final order for joint administration of these chapter 11 cases.  The Court has not appointed a trustee.  The Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") formed an official committee of unsecured creditors (the "Creditors' Committee") in these chapter 11 cases on May 13, 2014 [D.I. 420].  Further information regarding the Debtors' business operations and capital structure is set forth in the declaration of Paul Keglevic in support of the Debtors' first day motions [D.I. 98] (the "First Day Declaration").

**I.      The TCEH Debtors' Generation Business.**

6.      The Debtors have been a longstanding leader in the electricity industry and in the Electric Reliability Council of Texas ("ERCOT").  The ERCOT market manages the flow of electricity to 24 million people in Texas and manages the supply of approximately 85% of the electricity consumption in Texas.  The TCEH Debtors use ERCOT as a platform for their retail activities (through Debtor TXU Energy Retail Company LLC and its subsidiaries), their commodities hedging activities (through certain Debtor entities, including Luminant Energy Company LLC, Luminant ET Services Company, and Luminant Generation Company LLC), and their generation activities (through Debtor Luminant Generation Company LLC and its subsidiaries (collectively, "Luminant" and, together with Energy Future Competitive Holdings Company LLC, Texas Competitive Electric Holdings Company LLC and certain of its direct and indirect Debtor subsidiaries, the "TCEH Debtors").

3

7.      Luminant's lignite/coal-fueled generation and mining activities consist of twelve surface lignite coal mines at five plant sites, eight of which are in active operation with total capacity of 8,017 megawatts.  Using these operations, coal/lignite-fuel generation accounted for 52% of Luminant's nameplate capacity and 71% of Luminant's electricity generation in 2013. Luminant sells approximately **18%** of the generation capacity for the ERCOT market and operates as the ***largest coal miner in Texas and seventh largest coal miner in the United States***.

8.      Luminant's lignite/coal-fueled units operated at 74.1%, 70.0%, 83.5%, and 82.2% of capacity for the years of 2013, 2012, 2011, and 2010, respectively.  In 2011 and 2010, these units performed at the top decile for U.S. coal-fueled generation facilities and in 2013, Luminant's lignite/coal-fuel generation activities accounted for 71% of Luminant's overall electricity generation.

9.      Luminant's lignite operations constitute a majority of the TCEH Debtors' generation activities and critical to the supply of electricity provided through the ERCOT market. Consequently, Luminant (and the TCEH Debtors) constantly seek out opportunities to create synergies across their operations.

## II.      The Optim Energy, LLC Chapter 11 Cases and Asset Sale.

10.      On February 12, 2014, Optim Energy, LLC and certain of its affiliates filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware.  *See In re Optim Energy, LLC (a/k/a EnergyCo, LLC)* (No. 14-10262) (collectively, "Optim Energy" or "the Seller").[3]  On June 17, 2014, Optim Energy filed a motion with the Bankruptcy Court seeking approval of sale procedures related to its two-unit lignite-fired electric generating plants located in Bremond, Texas (collectively,

---

[3]      Optim Energy is not owned or controlled by any of the Debtors.

4

the "Assets").  The Assets have a collective nameplate capacity of 349 megawatts) and sell their generated power into the market regulated by ERCOT (the "Sale Motion").[4]

11.    Optim Energy also has a prepetition fuel supply agreement (the "FSA") in place with Walnut Creek Mining Company ("Walnut Creek").  Under the FSA, Optim Energy must purchase in excess of approximately 90% of its lignite from Walnut Creek to operate the Assets and is required to purchase minimum lignite quantities regardless of its actual needs for at least another 10 years.  Since 1999, the Debtors have had an agreement in place with Walnut Creek.

12.    As described in the Sale Motion, on June 13, 2014, Optim Energy executed a Purchase Sale Agreement with a stalking horse bidder (the "PSA").  The PSA contemplates a $60 million cash purchase price for the Assets, subject to certain additional adjustments, plus the assumption and assignment of certain executory contracts.  The PSA does not contemplate assumption of the FSA.  The Sale Motion seeks to establish, among other things:  (a) a bid deadline of July 23, 2014, (by which time any bidders other than the stalking horse bidder must submit a bid) (the "Bid Deadline") (such objections will be heard at a hearing scheduled for July 2, 2014); (b) a sale objection deadline of July 29, 2014 (by which time objections to the Sale of the Assets must be filed); and (c) an auction date of August 4, 2014 (objections to the Sale of the Assets will be heard at a hearing held on August 5, 2014).

## III.    The Acquisition.

13.    To remain a leader in the increasingly competitive electricity business, the TCEH Debtors proactively position themselves for new, strategic market opportunities that complement

---

[4]    *See Debtors' Motion for Orders: (A)(I) Approving Sale Procedures and Proposed Purchaser Payments in Connection with the Sale of Certain Assets of Optim Energy Twin Oaks, LP, (II) Scheduling an Auction and Hearing to Consider Approval of the Sale, (III) Approving Notice Relating to the Sale, and (IV) Granting Related Relief; and (B)(I) Authorizing and Approving Optim Energy Twin Oaks, LP to Sell Substantially All of its Property Free and Clear of all Liens, Claims, and Encumbrances, (II) Authorizing Optim Energy Twin Oaks, LP to Assume and Assign Certain Executory Contracts and Unexpired Leases, and (III) Granting Related Relief* [D.I. 359].

their existing lines of business.  The TCEH Debtors believe that acquisition of the Assets would provide strategic enhancements to the TCEH Debtors' existing generation business through the generation of substantial commercial and cost synergies, thereby providing significant value to the TCEH Debtors' estates.

14.    To realize the value offered by an acquisition of the Assets, the Debtors seek authority to submit a bid for the Assets, pursuant to the Bidding and Acquisition Procedures (as defined herein), and, if selected as the winning bidder, to consummate an acquisition of the Assets with the Seller without further order of the Court.  The Debtors believe that preapproval by the Notice Parties (as defined herein) for consummation of the transaction is necessary for the TCEH Debtors to submit a competitive, binding bid for the Assets.  The Seller would be understandably hesitant to accept a bid that is contingent upon further approval by the Notice Parties.  If the TCEH Debtors participate in the bidding process without preapproval to consummate the acquisition of the Assets, the TCEH Debtors would be significantly disadvantaged, and the likelihood of the TCEH Debtors emerging as the successful bidder would be greatly diminished.  Consequently, the Debtors believe the relief requested is appropriate and should be granted.

15.    The TCEH Debtors will not use any unencumbered assets to acquire the Assets. Any property or assets that the TCEH Debtors acquire in connection with the Bidding and Acquisition Procedures (including the Assets) shall automatically, upon such acquisition, become subject to the Prepetition First Priority Liens (as defined in the Final Cash Collateral

Order)[5] to secure repayment of the Prepetition First Lien Obligations (as defined in the Final

Cash Collateral Order).

## IV.    The Proposed Bidding and Acquisition Procedures.

16.    The TCEH Debtors propose that they be authorized to bid for and, if selected as

the winning bidder, to consummate an acquisition of the Assets pursuant to the following

procedures (the "Bidding and Acquisition Procedures"):[6]

> a. **Minimum Bid**. The TCEH Debtors will be authorized, but not required, to submit (a) a bid of at least $68 million (the "Minimum Bid") for the Assets, and (b) a cash deposit of 15% of the Minimum Bid (including any related processing or administrative fees, the "Initial Cash Deposit"). Collectively, the Minimum Bid and the Initial Cash Deposit represent the minimum requirements an alternative bidder must meet in order to participate as a "qualified bidder" in the auction scheduled for August 4, 2014. If selected as the winning bidder, the TCEH Debtors are authorized to negotiate definitive agreements in good faith and ultimately consummate the acquisition with the Seller without further order of the Court. The TCEH Debtors will advise the Notice Parties (as defined below) of the terms of any Minimum Bid made pursuant to the order approving this Motion.

> b. **Bid Cap**. Notwithstanding the foregoing, no less than four business days before the objection deadline on this Motion, the TCEH Debtors may determine, in the exercise of their business judgment and in consultation with their professional advisors, to submit a bid in excess of the Minimum Bid. The TCEH Debtors shall provide notice no less than four business days before the objection deadline on this Motion of their intent to file a bid within a specified range, exceeding $68 million but not to exceed a specified amount (such limit, which shall include the aggregate value of any cash or non-cash consideration and any assumed liabilities or other value provided in connection with the acquisition of the Assets, the "Bid Cap"). This notice

---

[5]    The "Final Cash Collateral Order" means the *Final Order (A) Authorizing Use of Cash Collateral For Texas Competitive Electric Holdings Company LLC and Certain of its Debtor Affiliates, (B) Granting Adequate Protection, and (C) Modifying the Automatic Stay* [D. I. 855] entered by the Court on June 6, 2014.

[6]    The Bidding and Acquisition Procedures are permitted under the *Final Order (A) Approving Postpetition Financing for Texas Competitive Electric Holdings Company LLC and Certain of its Debtor Affiliates, (B) Granting Liens and Providing Superpriority Administrative Expense Claims, and (C) Modifying the Automatic Stay* [D.I. 856].

shall include the Bid Cap and shall be provided to the Court, under seal,[7] and to the following parties, on a confidential and professionals' eyes only basis: (a) counsel to the Creditors' Committee, Morrison & Foerster LLP, 250 W. 55th Street, New York, NY 10019, Attn: Lorenzo Marinuzzi and Jennifer Marines; and (b) counsel to the ad hoc committee of TCEH first lien creditors, Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285 Avenue of the Americas, New York, NY 10019, Attn: Jacob A. Adlerstein (collectively, the "Notice Parties").

    i.    If any of the Notice Parties object to the proposed Bid Cap, such Party must file a timely, written objection with the Court, under seal, and serve notice of such objection upon the TCEH Debtors and their counsel, and the other Notice Parties. If no objections are received, the TCEH Debtors will be authorized to submit a bid (subject to Court approval) and subject to the Bid Cap and negotiate definitive agreements in good faith and ultimately consummate the acquisition with the Seller without further order of the Court. The TCEH Debtors will advise the Notice Parties of the terms of any such bid made pursuant to the order approving this Motion.

  c.  ***Enhanced Bid***. The TCEH Debtors may decide, in in the exercise of their business judgment and in consultation with their advisors, to submit a bid at the auction or otherwise, in excess of the Bid Cap. By these Bidding and Acquisition Procedures, the TCEH Debtors are authorized, but not required to, submit any proposal to increase the Bid Cap for the Assets and, if selected as the winning bidder, to negotiate definitive agreements in good faith and ultimately consummate the acquisition with the Seller without further order of the Court, *provided, however,* that the Notice Parties approve such enhanced bid pursuant to the following procedures (the "Enhanced Bid Approval Procedures"):

    i.    if the TCEH Debtors determine, in their business judgment, that submission of a bid in excess of the Bid Cap is in the best interests of the TCEH Debtors' estates, they shall submit a written request (a "Request") to the Notice Parties for approval of such increase;

    ii.    upon receipt of a Request from the TCEH Debtors, the Notice Parties will have two business days to provide a written response (a "Response") to the TCEH Debtors either (A) approving such increase, or (B) stating that the Notice Parties do not approve such increase;

---

[7]    For the avoidance of doubt, the Debtors will file a separate motion with the Court seeking authority to file notice of the Bid Cap under seal.

       iii.    if the Notice Parties do not approve such increase or fail to Respond to a Request, the TCEH Debtors shall not submit a bid in excess of the Bid Cap for the Assets, unless and until the TCEH Debtors receive written approval from the Notice Parties or upon further order of the Court; and

       iv.    if the Notice Parties approve such increase within two business days of the transmittal of a Request, the Bid Cap shall be increased by the amount set forth in the Request and the TCEH Debtors are authorized to submit a bid in an amount not to exceed the amount set forth in the Request.  If the TCEH Debtors are selected as the winning bidder, the TCEH Debtors are authorized to negotiate in good faith and ultimately consummate the acquisition with the Seller without further order of the Court.

## Basis for Relief

**I.**    **Section 363 of the Bankruptcy Code Authorizes the Debtors to Bid For and, If Successful, Consummate the Acquisition of the Assets Because Doing So Is Within the Debtors' Sound Business Judgment.**

17.    Section 363 of the Bankruptcy Code provides that a debtor, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b).  "In evaluating whether a sound business purpose justifies the use, sale or lease of property under Section 363(b), courts consider a variety of factors, which essentially represent a 'business judgment test.'"  *In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (D. Del. 1999).  Once "the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct."  *Comm. of Asbestos-Related Litigants and/or Creditors v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986).  There is a presumption that "in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company."  *In re Integrated Res., Inc.*, 147 B.R. 650, 656 (S.D.N.Y. 1992) *appeal dismissed*, 3 F.3d 49 (2d Cir. 1993) (quoting *Smith v. Van Gorkom*, 488

A.2d 858, 872 (Del. 1985)).  Accordingly, if a debtor's actions satisfy the business judgment rule, then the transaction in question should be approved under section 363(b)(1) of the Bankruptcy Code.

18.     Indeed, when applying the "business judgment" standard, courts show great deference to a debtor's business decisions.  *See Integrated Res.*, 147 B.R. at 656 ("Courts are loath to interfere with corporate decisions absent a showing of bad faith, self-interest, or gross negligence."); *Pitt v. First Wellington Canyon Assocs. (In re First Wellington Canyon Assocs.)*, No. 89-593, 1989 WL 106838, at *3 (N.D. Ill. Sept. 8, 1989) (under the business judgment test, "the debtor's business judgment . . . must be accorded deference unless shown that the bankrupt's decision was taken in bad faith or in gross abuse of the bankrupt's retained discretion.").

19.     Based on this rationale, courts have routinely permitted debtors to consummate transactions outside the ordinary course of business provided there is "some articulated business justification" to support the debtor's actions.  *In re Lionel*, 722 F. 2d 1063, 1070 (2d Cir. 1983); *see also In re Cont'l Airlines*, 780 F. 2d 1223, 1226 (5th Cir. 1986) (affirming authorization of airline to enter into aircraft leases to take advantage of market opportunity).  Once a court is satisfied that a debtor has a sound business reason to justify the transaction in question, the reviewing court should also consider (a) that the debtor has provided the interested parties with adequate and reasonable notice, (b) that the sale price is fair and reasonable, and (c) that the parties are proceeding in good faith.  *See, e.g.*, *In re Del. & Hudson Ry. Co.*, 124 B.R. 169, 176 (D. Del. 1991).

20.     Courts in this district and others have authorized a debtor's purchase of assets as a sound exercise of business judgment under section 363 of the Bankruptcy Code.  *See*, *e.g.*, *In re*

*W. R. Grace & Co.*, No. 01-01139 (JKF) (Bankr. D. Del. Dec. 8, 2010) (authorizing debtor's $2 million acquisition of interest in limited liability company created to develop new equipment, software, and intellectual property); *In re Solutia Inc.*, No. 03-17949 (PCB) (Bankr. S.D.N.Y. Nov. 2, 2007) (authorizing debtor's $6.95 million acquisition of undisclosed company); *In re Allied Holdings, Inc.*, No. 05-12515 (CRM) (Bankr. N.D. Ga. May 8, 2007) (authorizing debtor's $15 million financing and acquisition of approximately 150 tractor and trailer rigs and related equipment); *In re W. R. Grace & Co.*, No. 01-01139 (JKF) (Bankr. D. Del. May 16, 2006) (authorizing Debtors' $20 million acquisition of target business assets, including buildings, production machinery and equipment, formulations, technology, customer lists, intellectual property, and goodwill); *In re Solutia Inc.*, No. 03-17949 (PCB) (Bankr. S.D.N.Y. Dec. 15, 2005) (authorizing debtor's $20 million acquisition of interest in Mexican production entity and related real property from debtor's joint venture partner); *In re Tower Auto., Inc.*, No. 05-10578 (ALG) (Bankr. S.D.N.Y. Oct. 12, 2005) (authorizing debtor's $10 million acquisition of manufacturing facility); *In re W. R. Grace & Co.*, No. 01-01139 (JKF) (Bankr. D. Del. Oct. 13, 2004) (authorizing Debtors' approximately $12 million acquisition of target business, including formulations, technology, customer lists, intellectual property, and goodwill); *In re W. R. Grace & Co.*, No. 01-01139 (JKF) (Bankr. D. Del. Mar. 18, 2002) (authorizing Debtors' $6.5 million acquisition of masonry admixtures business to add to debtor's related business line); *In re Raytech Corp.*, 190 B.R. 149, 153 (Bankr. D. Conn. 1995) (relying on section 363 of the Bankruptcy Code in holding that debtor could use property of the estate to acquire company that would increase market share and create economies of scale and synergies notwithstanding recent loss of market share and reduced sales forecasts).[8]

---

[8]     Due to the voluminous nature of the orders cited herein, copies of such orders are not attached to the Motion but are available upon request of the Debtors' counsel.

A.    **Sound Business Reason Justifies The Transaction.**

21.    The Debtors have articulated a sound business reason to bid for and, if successful, to consummate an acquisition of the Assets.  The TCEH Debtors have been a longstanding leader in the electricity industry and in ERCOT, and, through Luminant, use ERCOT as a platform for their generation activities.  Luminant sells approximately 18% of the generation capacity for the ERCOT market and operates as the largest lignite miner in Texas and seventh largest lignite miner in the United States.  Thus, Luminant's lignite operations are critical to the TCEH Debtors' generation activities and to the supply of electricity provided through the ERCOT market.  Consequently, Luminant and the TCEH Debtors constantly seek out opportunities to create synergies across their operations.

22.    The Assets consist of a two-unit lignite-fired electric generating plant and the underlying real property located close to Luminant's existing generation and mining operations.  Furthermore, although Optim Energy owns the Assets, Optim Energy contracts with third-parties to supply the lignite for use in connection with the Assets.  If the TCEH Debtors were successful in the auction, they would be able to operate as the owner *and* the lignite supplier for the Assets, thereby maximizing efficient use of the Assets and lowering their own generation costs.  To that end, the TCEH Debtors believe that the purchase of the Assets will generate substantial commercial and cost synergies.  The Debtors believe these synergies will provide significant value to the Debtors' estates in a number of ways.  The purchase of the Assets will allow the TCEH Debtors to expand Luminant's lignite generation capacity, and will create cost saving opportunities for Luminant to act as a mine operator and a lignite mine supplier.  Further, no assets of any Debtor other than the TCEH Debtors will be used to satisfy amounts paid in

connection with the Bidding and Acquisition Procedures.  Therefore, the TCEH Debtors' purchase of the Assets is justified by the Debtors' sound business reason.

**B.    The Final Sale Price Will Be Fair and Reasonable, and Will Be Based Upon the Debtors' Business Judgment.**

23.    The Debtors, along with their professional advisors, will assess the value of the strategic business opportunities and the commercial and cost synergies they will realize by acquiring the Assets in forming a view on the consideration they would ultimately provide to the Seller if selected as the winning bidder.  This value will be determined by using commonly accepted valuation methodologies.

**C.    The Parties are Proceeding in Good Faith.**

24.    The TCEH Debtors and the Seller are proceeding in good faith.  Upon being accepted as a qualified bidder on July 14, 2014, the parties will engage in extensive due diligence and negotiations to allow the TCEH Debtors, pursuant to the Bidding and Acquisition Procedures, to arrive at a fair bidding price for the Assets.  If selected as the winning bidder, the TCEH Debtors and the Seller will engage in arm's-length negotiations to develop definitive documentation for and consummate the acquisition of the Assets.

25.    Given the fair consideration and the business opportunities the TCEH Debtors may realize as owners of the Assets, submitting a bid and, if successful, consummating the acquisition of the Assets will maximize the value of the TCEH Debtors' estates for the benefit of all stakeholders in these chapter 11 cases.  Accordingly, the Debtors respectfully submit that they have satisfied the requirements of section 363(b) of the Bankruptcy Code and request that the Court authorize the TCEH Debtors to submit a bid for the Assets, pursuant to the Bidding and Acquisition Procedures, and, if selected as the winning bidder, to consummate the acquisition of the Assets with the Seller without further order of the Court.

**D.      The Bidding and Acquisition Procedures are Necessary and Appropriate in Order to Allow the Debtors to Submit a Successful Bid.**

26.      The Bidding and Acquisition Procedures have been crafted to eliminate any disadvantage to the TCEH Debtors' participation in the auction for the Assets while also providing the Notice Parties with meaningful protections concerning the TCEH Debtors' ultimate purchase price.  Implementation of the Bidding and Acquisition Procedures ensures that the TCEH Debtors will be able to enter a binding bid up to the Bid Cap and participate in an auction for the Assets on equal footing with all other interested parties.  Successful participation in the bidding process will likely require the TCEH Debtors to respond quickly to the Seller's feedback concerning the TCEH Debtors' initial bid.  As such, acquiring approval from the Notice Parties apart from the Bidding and Acquisition Procedures would materially impair the TCEH Debtors' ability to acquire prompt feedback.  In addition, without the Bidding and Acquisition Procedures, any bid by the TCEH Debtors would be weakened by the fact that it is not final and binding.  As discussed above, the Assets present a highly valuable complement to the TCEH Debtors' existing businesses that would significantly increase the value of the TCEH Debtors' estates.  The TCEH Debtors believe that the Bidding and Acquisition Procedures are necessary if they are to successfully bid for the Assets.  As such, the TCEH Debtors respectfully submit that the Bidding and Acquisition Procedures should be approved.

**Waiver of Bankruptcy Rules 6006(c) and 6004(h)**

27.      To implement the foregoing successfully, the Debtors seek a waiver of the notice requirements under Bankruptcy Rule 6006(c) and the 14-day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h).

## Notice

28.     The Debtors shall provide notice of this Motion on the date hereof via U.S. first class mail to:  (a) the U.S. Trustee; (b) (i) the entities listed on the Consolidated List of Creditors Holding the 50 Largest Unsecured Claims filed pursuant to Bankruptcy Rule 1007(d); and (ii) proposed counsel to the Creditors' Committee; (c) Wilmington Trust, N.A., in its capacity as administrative agent under the TCEH first lien credit agreement and collateral agent under the TCEH intercreditor agreements and counsel thereto; (d) Bank of New York Mellon Trust Company, N.A., in its capacity as indenture trustee under:  (i) the TCEH unsecured pollution control revenue bonds; and (ii) the EFCH 2037 Notes due 2037, and counsel thereto; (e) American Stock Transfer & Trust Company, LLC, in its capacity as indenture trustee under: (i) the 9.75% EFH senior unsecured notes due 2019; (ii) the 10.0% EFH senior unsecured notes due 2020; (iii) the 10.875% EFH LBO senior unsecured notes due 2017; (iv) the 11.25%/12.0% EFH LBO toggle notes due 2017; (v) the 5.55% EFH legacy notes (series P) due 2014; (vi) the 6.50% EFH legacy notes (series Q) due 2024; and (vii) the 6.55% EFH legacy notes (series R) due 2034, and counsel thereto; (f) Computershare Trust Company, N.A. and Computershare Trust Company of Canada, in their capacities as indenture trustee under:  (i) the 11.0% EFIH senior secured second lien notes due 2021; and (ii) the 11.75% EFIH senior secured second lien notes due 2022, and counsel thereto; (g) UMB Bank, N.A. in its capacity as indenture trustee under:  (i) the 9.75% EFIH senior unsecured notes due 2019; and (ii) the 11.25%/12.25% EFIH senior toggle notes due 2018, and counsel thereto; (h) BOKF, NA, dba Bank of Arizona, in its capacity as indenture trustee under 11.50% TCEH senior secured notes due 2020, and counsel thereto; (i) CSC Trust Company of Delaware in its capacity as indenture trustee under:  (i) the 6.875% EFIH senior secured notes due 2017; and (ii) the 10.0% EFIH senior secured notes due 2020, and counsel thereto; (j) Law Debenture Trust Company of New York in its capacity as

indenture trustee under:  (i) the 10.25% TCEH senior unsecured notes due 2015; and (ii) the 10.50%/11.25% TCEH senior toggle notes due 2016, and counsel thereto; (k) Wilmington Savings Fund Society, FSB in its capacity as indenture trustee under the 15.0% TCEH senior secured second lien notes due 2021, and counsel thereto; (l) counsel to certain holders of claims against the Debtors regarding each of the foregoing described in clauses (c) through (k); (m) the agent for the TCEH debtor-in-possession financing facility and counsel thereto; (n) the agent for the EFIH debtor-in-possession financing facility and counsel thereto; (o) counsel to certain holders of equity in Texas Energy Future Holdings Limited Partnership; (p) counsel to the Ad Hoc Committee of TCEH Unsecured Noteholders; (q) counsel to the Ad Hoc Committee of TCEH Second Lien Noteholders; (r) Oncor Electric Delivery Holdings Company LLC and counsel thereto; (s) Oncor Electric Delivery Company LLC and counsel thereto; (t) the Securities and Exchange Commission; (u) the Internal Revenue Service; (v) the Office of the United States Attorney for the District of Delaware; (w) the Office of the Texas Attorney General on behalf of the Public Utility Commission of Texas; (x) counsel to the Electric Reliability Council of Texas; (y) those parties who have requested notice pursuant to Bankruptcy Rule 2002; and (z) Optim Energy.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

**No Prior Request**

29.    No prior request for the relief sought in this Motion has been made to this or any other court.

*[Remainder of page intentionally left blank.]*

16

WHEREFORE, the Debtors respectfully request that the Court enter the Order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested in this Motion and granting such other and further relief as is appropriate under the circumstances.

Wilmington, Delaware
Dated:  June 27, 2014

/s/ *Tyler D. Semmelman*
**RICHARDS, LAYTON & FINGER, P.A.**
Mark D. Collins (No. 2981)
Daniel J. DeFranceschi (No. 2732)
Jason M. Madron (No. 4431)
Tyler D. Semmelman (No. 5386)
920 North King Street
Wilmington, Delaware 19801
Telephone:     (302) 651-7700
Facsimile:      (302) 651-7701
Email:            collins@rlf.com
                       defranceschi@rlf.com
                       madron@rlf.com
                       semmelman@rlf.com

-and-

**KIRKLAND & ELLIS LLP**
Richard M. Cieri (admitted *pro hac vice*)
Edward O. Sassower, P.C. (admitted *pro hac vice*)
Stephen E. Hessler (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022-4611
Telephone:     (212) 446-4800
Facsimile:      (212) 446-4900
Email:            richard.cieri@kirkland.com
                       edward.sassower@kirkland.com
                       stephen.hessler@kirkland.com

-and-

James H.M. Sprayregen, P.C. (admitted *pro hac vice*)
Chad J. Husnick (admitted *pro hac vice*)
Steven N. Serajeddini (admitted *pro hac vice*)
300 North LaSalle
Chicago, Illinois 60654
Telephone:     (312) 862-2000
Facsimile:      (312) 862-2200
Email:            james.sprayregen@kirkland.com
                       chad.husnick@kirkland.com
                       steven.serajeddini@kirkland.com

Proposed Co-Counsel to the Debtors and Debtors in Possession