IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) ) | Chapter 11 |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) ) ) | Case No. 14-10979 (CSS) |
| Debtors. | ) ) ) | (Jointly Administered) **Re: Docket No. 1225** |

### DECLARATION OF MICHAEL CARTER IN SUPPORT OF THE MOTION OF ENERGY FUTURE HOLDINGS CORP., *ET AL.*, ENTRY OF AN ORDER AUTHORIZING, BUT NOT REQUIRING, THE DEBTORS (A) TO PARTICIPATE IN A COMPETITIVE AUCTION, AND (B) IF SELECTED AS THE WINNING BIDDER, TO CONSUMMATE A PROPOSED ACQUISITION

Pursuant to 28 U.S.C. § 1746, I, Michael Carter, hereby declare as follows under penalty of perjury:

1. I am the Senior Vice President of Corporate Planning and an Assistant Treasurer of EFH Corporate Services Company, a direct subsidiary of Energy Future Holdings Corp. ("EFH Corp."), both of which are corporations organized under the laws of the state of Texas. EFH Corp.'s direct subsidiary Energy Future Competitive Holdings Company LLC ("EFCH"), a limited liability company organized under the laws of the state of Delaware; EFCH's direct subsidiary, Texas Competitive Electric Holdings Company LLC ("TCEH LLC" and, together with EFCH and TCEH LLC's direct and indirect subsidiaries, "TCEH," and the entities composing TCEH that are debtors in these chapter 11 cases, the "TCEH Debtors"), a limited liability company organized under the laws of the state of Delaware; EFH Corp.'s direct

---

[1] The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, which are being jointly administered, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

subsidiary, Energy Future Intermediate Holding Company LLC ("EFIH"), a limited liability company organized under the laws of the state of Delaware; and various other direct and indirect subsidiaries of EFH Corp. that are debtors in these chapter 11 cases, are collectively referred to as the "Debtors" in this declaration.

2. I have worked for the Debtors since 2005. I am generally familiar with the Debtors' businesses, day-to-day operations, financial matters, results of operations, cash flows, and underlying books and records. All facts set forth in this declaration are based upon my personal knowledge of the Debtors' businesses, operations, and related financial information gathered from my review of their books and records, relevant documents, and information supplied to me by members of the Debtors' management team and advisors. I am over the age of 18 and duly authorized to execute this Declaration on behalf of the Debtors in support of the *Motion of Energy Future Holdings Corp., et. al., for Entry of an Order Authorizing, But Not Requiring, the Debtors (A) to Participate in a Competitive Auction, and (B) If Selected as the Winning Bidder, to Consummate a Proposed Acquisition* (the "Motion").[2] Except as otherwise noted, I have personal knowledge of the matters set forth herein.

3. The Debtors have been a longstanding leader in the electricity industry and in ERCOT. The ERCOT market manages the flow of electricity to 24 million people in Texas and manages the supply of approximately 85% of the electricity consumption in Texas. The TCEH Debtors use ERCOT as a platform for their retail activities (through Debtor TXU Energy Retail Company LLC and its subsidiaries), their commodities hedging activities (through certain Debtor entities, including Luminant Energy Company LLC, Luminant ET Services Company, and

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Motion.

Luminant Generation Company LLC), and their generation activities (through Debtor Luminant Generation Company LLC and its subsidiaries.

4. Luminant's lignite/coal-fueled generation and mining activities consist of twelve surface lignite coal mines at five plant sites, eight of which are in active operation with total capacity of 8,017 megawatts. Using these operations, coal/lignite-fuel generation accounted for 52% of Luminant's nameplate capacity and 71% of Luminant's electricity generation in 2013. Luminant sells approximately 18% of the generation capacity for the ERCOT market and operates as the largest coal miner in Texas and seventh largest coal miner in the United States.

5. Luminant's lignite/coal-fueled units operated at 74.1%, 70.0%, 83.5%, and 82.2% of capacity for the years of 2013, 2012, 2011, and 2010, respectively. In 2011 and 2010, these units performed at the top decile for U.S. coal-fueled generation facilities and in 2013, Luminant's lignite/coal-fuel generation activities accounted for 71% of Luminant's overall electricity generation.

6. Luminant's lignite operations constitute a majority of the TCEH Debtors' generation activities and critical to the supply of electricity provided through the ERCOT market. Consequently, Luminant (and the TCEH Debtors) constantly seek out opportunities to create synergies across their operations.

7. To remain a leader in the increasingly competitive electricity business, the TCEH Debtors proactively position themselves for new, strategic market opportunities that complement their existing lines of business. I believe that acquisition of the Assets would provide strategic enhancements to the TCEH Debtors' existing generation business through the generation of substantial commercial and cost synergies, thereby providing significant value to the TCEH Debtors' estates.

8. The Assets consist of a two-unit lignite-fired electric generating plant and the underlying real property located close to Luminant's existing generation and mining operations. Furthermore, although Optim Energy owns the Assets, Optim Energy contracts with third-parties to supply the lignite for use in connection with the Assets. If the TCEH Debtors were successful in the auction, they would be able to operate as the owner *and* the lignite supplier for the Assets, thereby maximizing efficient use of the Assets and lowering their own generation costs. To that end, I believe that the purchase of the Assets will generate substantial commercial and cost synergies. I believe these synergies will provide significant value to the Debtors' estates in a number of ways. The purchase of the Assets will allow the TCEH Debtors to expand Luminant's lignite generation capacity, and will create cost saving opportunities for Luminant to act as a mine operator and a lignite mine supplier. The TCEH Debtors will not use any unencumbered assets to acquire the Assets. Further, no assets of any Debtor other than the TCEH Debtors will be used to satisfy amounts paid in connection with the Bidding and Acquisition Procedures.

9. The Debtors, along with their professional advisors, will assess the value of the strategic business opportunities and the commercial and cost synergies they will realize by acquiring the Assets in forming a view on the consideration they would ultimately provide to the Seller if selected as the winning bidder. This value will be determined by using commonly accepted valuation methodologies.

10. Upon being accepted as a qualified bidder on July 14, 2014, the parties will engage in extensive due diligence and negotiations to allow the TCEH Debtors, pursuant to the Bidding and Acquisition Procedures, to arrive at a fair bidding price for the Assets. If selected as

the winning bidder, the TCEH Debtors and the Seller will engage in arm's-length negotiations to develop definitive documentation for and consummate the acquisition of the Assets.

11. Given the fair consideration and the business opportunities the TCEH Debtors may realize as owners of the Assets, I believe that submitting a bid and, if successful, consummating the acquisition of the Assets will maximize the value of the TCEH Debtors' estates for the benefit of all stakeholders in these chapter 11 cases.

12. Implementation of the Bidding and Acquisition Procedures ensures that the TCEH Debtors will be able to enter a binding bid up to the Bid Cap and participate in an auction for the Assets on equal footing with all other interested parties. Successful participation in the bidding process will likely require the TCEH Debtors to respond quickly to the Seller's feedback concerning the TCEH Debtors' initial bid. As such, I believe that acquiring approval from the Notice Parties apart from the Bidding and Acquisition Procedures would materially impair the TCEH Debtors' ability to acquire prompt feedback. In addition, without the Bidding and Acquisition Procedures, any bid by the TCEH Debtors would be weakened by the fact that it is not final and binding. As discussed above, the Assets present a highly valuable complement to the TCEH Debtors' existing businesses that would significantly increase the value of the TCEH Debtors' estates. I believe that the Bidding and Acquisition Procedures are necessary if the Debtors are to successfully bid for the Assets

[*Remainder of page intentionally left blank.*]

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my information and belief.

Dated: June 27, 2014

                                                   */s/ Michael Carter*
                                                 Michael Carter
                                                 Senior Vice President, Corporate Planning, and Assistant Treasurer of EFH Corporate Services Company