IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | ) Chapter 11 |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) Case No. 14-10979 (CSS) |
| Debtors. | ) (Jointly Administered) |
|  | ) Hearing Date: July 18, 2014 at 9:30 a.m. |
|  | ) Objection Deadline: July 11, 2014 at 4:00 p.m. |

**MOTION OF ENERGY FUTURE HOLDINGS
CORP., *ET AL.*, AUTHORIZING ENTRY INTO AMENDMENTS
TO THE COMANCHE PEAK JOINT VENTURE AGREEMENTS**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") file this motion (this "Motion") for the entry of an order (the "Order"), substantially in the form attached hereto as **Exhibit A**, authorizing Debtors Energy Future Holdings Corp. ("EFH Corp."), Texas Competitive Electric Holdings Company LLC ("TCEH LLC"), and Luminant Generation Company LLC ("Luminant Generation") to enter into (a) certain amendments, substantially in the form attached hereto as **Exhibit 1** to **Exhibit B**, modifying the Joint Venture Agreements related to the Comanche Peak Joint Venture (each as defined herein) (the "Amendments"), and (b) an Integration Letter (as defined herein), substantially in the form attached hereto as **Exhibit 2** to **Exhibit B**, integrating the Amendments into a unified, non-severable document. In support of this Motion, the Debtors submit the *Declaration of Robert Frenzel, Senior Vice President and Chief Financial Officer of Luminant Generation Company LLC, in Support of the*

---

[1] The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, for which joint administration has been granted, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

*Motion of Energy Future Holdings Corp., et al., for Entry of an Order Authorizing Entry into the Amendments to the Joint Venture Agreements* (attached hereto as **Exhibit B**, the "Frenzel Declaration"). In further support of the Motion, the Debtors respectfully state as follows.

### Jurisdiction and Venue

1. The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Debtors consent pursuant to rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Bankruptcy Rules") to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The bases for the relief requested in this Motion are section 363 of title 11 of the United States Code (the "Bankruptcy Code") and rules 4001 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

### Relief Requested

4. By this Motion, the Debtors request entry of the Order authorizing the Debtors to enter into: (a) enter into the Amendments modifying the Joint Venture Agreements and (b) the Integration Letter to integrate the Amendments.

KE 31772781

**Background**

5.     On April 29, 2014 (the "Petition Date"), each of the Debtors filed a voluntary petition with the Court under the Bankruptcy Code. The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. The Court has entered an order for joint administration of these chapter 11 cases. The Court has not appointed a trustee. The Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") formed an official committee of unsecured creditors (the "Creditors' Committee") in these chapter 11 cases on May 13, 2014 [D.I. 420]. Further information regarding the Debtors' business operations and capital structure is set forth in the declaration of Paul Keglevic in support of the Debtors' first day motions [D.I. 98] (the "First Day Declaration").

**I.    Formation of the Comanche Peak Joint Venture.**

6.     Luminant Generation owns and operates the Comanche Peak nuclear power facility ("Comanche Peak"), located in Somervell County, Texas. Currently, Comanche Peak has two licensed, operating nuclear generation units. Unit 1 was completed in 1990 and received its operating license from the Nuclear Regulatory Commission (the "NRC") in the same year. Unit 2 was completed in 1993 and received its operating license in the same year.

7.     In July 2007, Luminant Generation and Mitsubishi Nuclear Energy Systems, Inc. ("MNES") entered into a services agreement, whereby MNES would provide services to Luminant Generation in the preparation of a combined operating license application (the "License Application") to be filed with the NRC for the construction and operation of two new nuclear generation units (the "New Units"). In the License Application, Luminant Generation indicated that, based on the pressurized water reactor platform used at Comanche Peak Units 1 and 2, Luminant Generation wanted to generate power at the New Units using an advanced type

3

KE 31772781

of nuclear reactor, called the US-Advanced Pressurized Water Reactor (the "US-APWR"), developed by MNES's affiliate, Mitsubishi Heavy Industries Ltd. (together with MNES and certain other affiliates, "MHI").[2] As a result, Luminant Generation entered into negotiations with MHI to develop and use the US-APWR at the New Units.

8. In September 2008, Luminant Generation formed a number of wholly-owned Delaware limited liability companies, including the non-Debtor entity Nuclear Energy Future Holdings II LLC ("NEFH II"). Together with Luminant Generation and Luminant Generation's parent entity, EFH Corp., these entities formed a joint venture for the purposes of holding the assets of and conducting the development, construction, and operating activities of the New Units. These terms were memorialized in a limited liability company agreement.

9. In January 2009, the limited liability company agreement was amended and restated to admit MHI for purposes of further developing the New Units using the US-APWR. With the addition of MHI, the joint venture was renamed Comanche Peak Nuclear Power Company LLC (the "Comanche Peak Joint Venture").

10. Contemporaneous with MHI's induction into the Comanche Peak Joint Venture, the Comanche Peak Joint Venture executed other documents relating to the development and construction of the New Units (collectively the "Joint Venture Agreements").

11. The parties to the Joint Venture Agreements collectively consist of Comanche Peak Nuclear Power Company LLC, EFH Corp., TCEH LLC, Luminant Generation, NEFH II and its immediate, non-Debtor parent, Nuclear Energy Future Holdings LLC ("NEFH I"), and

---

[2] The US-APWR is not yet licensed or available for use in the United States.

KE 31772781

MHI (collectively, the "Joint Venture Parties"). The following are the key terms of the Joint Venture Agreements:[3]

- *Creation and Purpose of Comanche Peak Joint Venture.* As described above, the Comanche Peak Joint Venture would be created for the purpose of developing, constructing, owning, and operating the New Units on land adjacent to the Comanche Peak site;[4]

- *MHI's Obligations.* MHI would (a) develop and implement the US-APWR and (b) file the design certification document application with the NRC to gain approval for the use of the US-APWR (the "Design Application");

- *TCEH LLC's Obligations.* TCEH LLC, Luminant Generation's indirect Debtor-parent company, would guarantee NEFH II's obligations to make capital contributions under the Comanche Peak Nuclear Power Company LLC amended and restated limited liability company agreement;

- *Comanche Peak Joint Venture Ownership Interests.* Ownership of the Comanche Peak Joint Venture and certain related intellectual property developed in conjunction with the Design Application and the License Application, as determined in the Joint Venture Agreements, would be shared between Luminant Generation and EFH Corp, through NEFH II, on the one hand, and MHI on the other hand;

- *Contribution of "CWIP" Rights.* Luminant Generation would contribute existing construction work in progress ("CWIP") to the Comanche Peak Joint Venture for use in the development of the New Units; and

- *Assignment of Rights to Comanche Peak Joint Venture.* Luminant Generation would use commercially reasonable efforts to assign and/or lease its water rights to the Comanche Peak Joint Venture for use in the development of the New Units.

12. At the time the Joint Venture Parties entered into the Joint Venture Agreements, they expected to obtain NRC approval of the the License Application and the Design Application in time for the New Units to be operational by 2016.

---

[3] This summary of key terms of the Joint Venture Agreements is for illustrative purposes only. To the extent there are inconsistencies between the summary of key terms provided herein and the provisions in the Joint Venture Agreements, the provisions in the Joint Venture Agreements control.

[4] The Comanche Peak Joint Venture is under the direct control of NEFH II and is not a Debtor in these chapter 11 cases.

## II. Decision to Amend the Joint Venture Agreements.

13. Unfortunately, developments outside the Joint Venture Parties' control have delayed licensing and development of the New Units. These developments primarily include: (a) the regulatory and political response to nuclear power following the Fukushima nuclear plant incident in March 2011; and (b) the substantial reduction in the forecast of Texas electricity prices attributable to technological advances in economical extraction of natural gas.

14. Specifically, MHI determined that supporting Japanese utilities in restarting MHI-affiliated pressurized water reactors should be its highest priority after the Japanese regulatory agencies offered a path toward restoration of Japan's nuclear generating assets.[5] Consequently, Luminant Generation, NEFH II, and MHI put all development activities related to the New Units on indefinite hold as of the fourth quarter of 2013, and at MHI's request, the NRC reduced its Design Application review activities.

15. Contemporaneously with MHI's request to the NRC, Luminant Generation and NEFH II also requested that the NRC suspend all reviews of the License Application. Neither the License Application nor the Design Application has been withdrawn from NRC review, and, if conditions change in the future, Luminant Generation, NEFH II, and MHI will revisit application modification requests with the NRC. Based on the current circumstances, however, the Joint Venture Parties believe that continued development of the New Units is not economically feasible at this time and have decided to revise the Joint Venture Agreements to reflect the suspension of development activities related to the New Units.

---

[5] Following the Fukushima nuclear plant incident, all of Japan's nuclear generating facilities were shut down, including 24 nuclear power plants designed and built by MHI.

6

KE 31772781

### III. Terms of the Amendments.

16. In light of the developments described above, the Joint Venture Parties have decided to enter into the Amendments to modify the Joint Venture Agreements. The Amendments consist of the following key terms:[6]

- suspension or termination of certain obligations that the Joint Venture Parties owe to each other under various portions of the Joint Venture Agreements;

- termination of Luminant Generation's obligation under the Joint Venture Agreements to assign water rights to the Comanche Peak Joint Venture and the reversion of any assignment of such rights from the Comanche Peak Joint Venture to NEFH II;

- conveyance from the Comanche Peak Joint Venture to NEFH II of certain easements and fee tracts acquired by the Comanche Peak Joint Venture during the US-APWR development period;

- assignment of Comanche Peak Nuclear Power Company LLC's rights as the tenant under the ground lease where the New Units were to be developed to NEFH II;

- transfer and/or license of certain site-specific intellectual property rights, as determined in the Amendments, to NEFH II and the assignment of intellectual property rights related to the US-APWR technology to MHI;

- termination of TCEH LLC's guaranty of certain of NEFH II's rights and obligations under the Joint Venture Agreements; and

- the independent right of each of Luminant Generation and MHI to dissolve the Comanche Peak Joint Venture, at its option, after a specified period of time has passed following execution of the Amendments.

17. Importantly, the Amendments also provide for material releases of any and all claims by and between the Joint Venture Parties under certain of the Joint Venture Agreements. Currently, Luminant Generation and NEFH II do not believe that they hold any potential claims against MHI.

---

[6] This summary of key terms of the Amendments is for illustrative purposes only. To the extent there are inconsistencies between the summary of key terms provided herein and the provisions in the Amendments attached hereto as **Exhibit 1** to **Exhibit B**, the provisions in the Amendments control.

KE 31772781

18. Because the Amendments are described in various documents, the Joint Venture Parties seek to execute an integration letter that confirms the Joint Venture Parties' intentions to treat the Amendments, collectively, as a single, unified, non-severable document (the "Integration Letter"). The Integration Letter memorializes the Joint Venture Parties' intent to treat the effectiveness of each individual Amendment as being dependent on the execution of the other Amendments.

## Basis for Relief

### I. Entry Into the Amendments and the Integration Letter Is A Sound Exercise of the Debtors' Business Judgment.

19. Section 363 of the Bankruptcy Code provides that a debtor, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b) (1). The use, sale, or lease of property of the estate, other than in the ordinary course of business, is authorized when there is a "sound business purpose" that justifies such action. *See Committee of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1070 (2d Cir. 1983); *see also In re Delaware and Hudson Ry. Co.*, 124 B.R. 169, 176 (Bankr. D. Del. 1991) (noting that the Third Circuit has adopted the "sound business judgment" standard for transactions under section 363 of the Bankruptcy Code).

20. When a valid business justification exists, the law vests the debtor's decision to use property out of the ordinary course of business with a strong presumption that "in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company." *See Official Comm. of Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.)*, 147 B.R. 650, 656 (S.D.N.Y. 1992) (quoting *Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985)), *appeal dismissed*, 3 F.3d 49 (2d Cir. 1993).

21.    Indeed, when applying the "business judgment" standard, courts show great deference to a debtor's business decisions. *See In re Crystalin, L.L.C.*, 293 B.R. 455, 464 (B.A.P. 8th Cir. 2003) (finding that the court need not "place itself in the position of the trustee or debtor-in-possession") (omitting citations); *see also Pitt v. First Wellington Canyon Assocs. (In re First Wellington Canyon Assocs.)*, No. 89 c 593, 1989 WL 106838, at *3 (N.D. Ill. Sept. 8, 1989) ("Under this test, the debtor's business judgment . . . must be accorded deference unless shown that the bankrupt's decision was taken in bad faith or in gross abuse of the bankrupt's retained discretion."); *In re Psychometric Sys., Inc.*, 367 B.R. 670, 674 (Bankr. D. Colo. 2007) ("The trustee's business judgment is to be given 'great judicial deference.'") (quoting *In re Balakis*, 220 B.R. 525, 532 (Bankr. E.D.N.Y. 1998); *GBL Holding Co., Inc. v. Blackburn/Travis/Cole Ltd. (In re State Park Building Grp., Ltd.)*, 331 B.R. 251, 254 (Bankr. N.D. Tex. 2005) ("Great judicial deference is given to the Trustee's exercise of business judgment.").

22.    Here, the Debtors have determined in the exercise of their sound business judgment that the Amendments are in the best interests of their estates. *First*, as described above, the Amendments transfer the rights to certain land, water, and intellectual property previously held by the Comanche Peak Joint Venture to the control of Luminant Generation and/or its subsidiary NEFH II. Luminant Generation believes that the value of the unencumbered land and water rights coupled with the license rights to certain intellectual property stemming from the Comanche Peak Joint Venture exceeds any potential claims released upon execution of the Amendments that may exist against MHI, which Luminant Generation currently estimates to be zero. *Second*, TCEH LLC will no longer be required to guaranty the obligations owed by NEFH II under the Joint Venture Agreements. *Third*, Luminant Generation

KE 31772781

may, after a specified period of time has passed following execution of the Amendments, decide to fully dissolve the Comanche Peak Joint Venture, giving Luminant Generation the right to reevaluate whether such an arrangement is in its best interests.[7] Further, execution of the Integration Letter preserves the Joint Venture Parties' intent to treat the Amendments as collectively amending the Joint Venture Agreements as opposed to individually amending the Joint Venture Agreements. To that end, the Integration Letter is critical to ensuring that the Amendments, which, in the aggregate, provide identifiable benefits to the Debtors' estates, are collectively executed. Accordingly, the Debtors submit that entry into the Amendments and the Integration Letter is a sound exercise of the Debtors' business judgment.

## Notice

23. The Debtors shall provide notice of this Motion on the date hereof via first class mail to: (a) the Office of the U.S. Trustee for the District of Delaware; (b) (i) the entities listed on the Consolidated List of Creditors Holding the 50 Largest Unsecured Claims filed pursuant to Bankruptcy Rule 1007(d); and (ii) proposed counsel to the Creditors' Committee; (c) Wilmington Trust, N.A., in its capacity as administrative agent under the TCEH first lien credit agreement and collateral agent under the TCEH intercreditor agreements and counsel thereto; (d) Bank of New York Mellon Trust Company, N.A., in its capacity as indenture trustee under: (i) the TCEH unsecured pollution control revenue bonds; and (ii) the EFCH 2037 Notes due 2037, and counsel thereto; (e) American Stock Transfer & Trust Company, LLC, in its capacity as indenture trustee under: (i) the 9.75% EFH senior unsecured notes due 2019; (ii) the 10.0% EFH senior unsecured notes due 2020; (iii) the 10.875% EFH LBO senior unsecured

---

[7]  Dissolution of the Comanche Peak Joint Venture before such period of time has passed requires mutual agreement with MHI.

notes due 2017; (iv) the 11.25%/12.0% EFH LBO toggle notes due 2017; (v) the 5.55% EFH legacy notes (series P) due 2014; (vi) the 6.50% EFH legacy notes (series Q) due 2024; and (vii) the 6.55% EFH legacy notes (series R) due 2034, and counsel thereto; (f) Computershare Trust Company, N.A. and Computershare Trust Company of Canada, in their capacities as indenture trustee under: (i) the 11.0% EFIH senior secured second lien notes due 2021; and (ii) the 11.75% EFIH senior secured second lien notes due 2022, and counsel thereto; (g) UMB Bank, N.A. in its capacity as indenture trustee under: (i) the 9.75% EFIH senior unsecured notes due 2019; and (ii) the 11.25%/12.25% EFIH senior toggle notes due 2018, and counsel thereto; (h) BOKF, NA, dba Bank of Arizona, in its capacity as indenture trustee under 11.50% TCEH senior secured notes due 2020, and counsel thereto; (i) CSC Trust Company of Delaware in its capacity as indenture trustee under: (i) the 6.875% EFIH senior secured notes due 2017; and (ii) the 10.0% EFIH senior secured notes due 2020, and counsel thereto; (j) Law Debenture Trust Company of New York in its capacity as indenture trustee under: (i) the 10.25% TCEH senior unsecured notes due 2015; and (ii) the 10.50%/11.25% TCEH senior toggle notes due 2016, and counsel thereto; (k) Wilmington Savings Fund Society, FSB in its capacity as indenture trustee under the 15.0% TCEH senior secured second lien notes due 2021, and counsel thereto; (l) counsel to certain holders of claims against the Debtors regarding each of the foregoing described in clauses (c) through (k); (m) the agent for the TCEH debtor-in-possession financing facility and counsel thereto; (n) the agent for the EFIH debtor-in-possession financing facility and counsel thereto; (o) counsel to certain holders of equity in Texas Energy Future Holdings Limited Partnership; (p) counsel to the Ad Hoc Committee of TCEH Unsecured Noteholders; (q) counsel to the Ad Hoc Committee of TCEH Second Lien Noteholders; (r) Oncor Electric Delivery Holdings Company LLC and counsel thereto; (s) Oncor Electric Delivery Company

KE 31772781

LLC and counsel thereto; (t) the Securities and Exchange Commission; (u) the Internal Revenue Service; (v) the Office of the United States Attorney for the District of Delaware; (w) the Office of the Texas Attorney General on behalf of the Public Utility Commission of Texas; (x) counsel to the Electric Reliability Council of Texas; (y) those parties that have requested notice pursuant to Bankruptcy Rule 2002; (z) MHI; (aa) NEFH II; (bb) the Comanche Peak Joint Venture; and (cc) the NRC. The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

## No Prior Request

24. No prior request for the relief sought in this Motion has been made to this or any other court.

*[Remainder of Page Intentionally Left Blank]*

KE 31772781

WHEREFORE, the Debtors respectfully request that the Court enter the Order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested in this Motion and granting such other and further relief as is appropriate under the circumstances.

Wilmington, Delaware
Dated: June 27, 2014

/s/ Tyler Semmelman

**RICHARDS, LAYTON & FINGER, P.A.**
Mark D. Collins (No. 2981)
Daniel J. DeFranceschi (No. 2732)
Jason M. Madron (No. 4431)
Tyler D. Semmelman (No. 5386)
920 North King Street
Wilmington, Delaware 19801
Telephone:   (302) 651-7700
Facsimile:   (302) 651-7701
Email:       collins@rlf.com
             defranceschi@rlf.com
             madron@rlf.com
             semmelman@rlf.com

-and-

**KIRKLAND & ELLIS LLP**
Richard M. Cieri (admitted *pro hac vice*)
Edward O. Sassower, P.C. (admitted *pro hac vice*)
Stephen E. Hessler (admitted *pro hac vice*)
Brian E. Schartz (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022-4611
Telephone:   (212) 446-4800
Facsimile:   (212) 446-4900
Email:       richard.cieri@kirkland.com
             edward.sassower@kirkland.com
             stephen.hessler@kirkland.com
             brian.schartz@kirkland.com

-and-

James H.M. Sprayregen, P.C. (admitted *pro hac vice*)
Chad J. Husnick (admitted *pro hac vice*)
Steven N. Serajeddini (admitted *pro hac vice*)
300 North LaSalle
Chicago, Illinois 60654
Telephone:   (312) 862-2000
Facsimile:   (312) 862-2200
Email:       james.sprayregen@kirkland.com
             chad.husnick@kirkland.com
             steven.serajeddini@kirkland.com

Proposed Co-Counsel to the Debtors and Debtors in Possession