IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) ) | Chapter 11 |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) ) | Case No. 14-10979 (CSS) |
| Debtors. | ) ) ) ) ) | (Jointly Administered)<br><br>Hearing Date: July 18, 2014 at 9:30 a.m.<br>Objection Deadline: July 11, 2014 at 4:00 p.m. |

**MOTION OF ENERGY FUTURE HOLDINGS
CORP., *ET AL*., FOR AN ORDER AUTHORIZING
THE DEBTORS TO EXECUTE THE 401(k) PLAN SEPARATION**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") file this motion (this "Motion") for entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Order"), authorizing the transfer of the accounts of non-Debtor Oncor Electric Delivery Holdings Company LLC ("Oncor") employees who participate in a qualified, defined contribution 401(k) plan with the Debtors (the "401(k) Plan")[2] to a new 401(k) plan to be established by Oncor (the "401(k) Plan Separation")[3] pursuant to sections 363(b) and 541(d) of the Bankruptcy Code. In support of this Motion, the Debtors respectfully state as follows.

---

[1] The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, for which joint administration has been granted, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

[2] The 401(k) Plan is subject to the Employee Retirement Income Security Act (the "ERISA") provisions. ERISA governs retirement plans in the United States and establishes the requirements for how a company retirement plan must be run. Among other things, ERISA mandates that the funds set aside for retirement plans must be managed with utmost care, in order to protect the interests of employees, and stipulates that once a retirement plan vests, the employer must provide the promised vested benefits.

[3] The documentation governing the 401(k) Plan Separation has not yet been executed. The Debtors anticipate the finalization and execution of the documentation in the near term.

**Jurisdiction and Venue**

1. The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Debtors consent pursuant to rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Bankruptcy Rules") to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The bases for the relief requested in this Motion are sections 363(b) and 541 of title 11 of the United States Code (the "Bankruptcy Code") and rules 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

**Relief Requested**

4. By this Motion, the Debtors, seek entry of the Order, authorizing the 401(k) Plan Separation.

**Background**

5. On April 29, 2014 (the "Petition Date"), each of the Debtors filed a voluntary petition with the Court under chapter 11 of the Bankruptcy Code. The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. The Court has entered an order for joint administration of these chapter 11 cases. The Court has not appointed a trustee. The Office of

the United States Trustee for the District of Delaware (the "U.S. Trustee") formed an official committee of unsecured creditors in these chapter 11 cases on May 13, 2014 [D.I. 420]. Further information regarding the Debtors' business operations and capital structure is set forth in the declaration of Paul Keglevic in support of the Debtors' first day motions [D.I. 98].

**I.    The 401(k) Plan.**

6.     The Debtors employ approximately 5,700 employees (collectively, the "Employees"), approximately 5,650 of whom are full-time and approximately 50 of whom are part-time. All Employees are automatically enrolled in the 401(k) Plan within 30 days of their start date, unless they actively opt out. Current Employees that are automatically enrolled in the 401(k) Plan contribute 3% of their base salary to the 401(k) Plan in their first year unless they choose an alternative percentage to pay. This percentage automatically increases by 1% per year for seven years. Alternatively, Employees may choose to contribute anywhere from 1%-75% of their base pay per year.[4] The Debtors also maintain a limited matching program under the 401(k) Plan. Specifically, the Debtors match 100% of the first 6% of an Employee's contributions, except that as to those Employees who are covered under the traditional retirement plan formula of the Debtors' defined benefit plan, the Debtors match 75% of the first 6% of an Employee's contributions. Approximately 7,000 current and former Employees participate in the 401(k) Plan.[5]

7.     Currently, approximately 4,000 current and former employees of the Debtors' non-Debtor affiliate, Oncor, participate in the 401(k) Plan as well. Approximately $626 million

---

[4]  Employees determined by the Debtors to be "highly compensated employees" as defined by applicable IRS regulations may contribute a maximum of 20% of their base pay.

[5]  For additional information regarding the 401(k) Plan, *see Motion of Energy Future Holdings Corp.*, et al., *for Entry of Interim and Final Orders (A) Authorizing the Debtors to (I) Pay Certain Prepetition Compensation and Reimbursable Employee Expenses, (II) Pay and Honor Employee and Retiree Medical and Similar Benefits, and (III) Continue Employee and Retiree Benefit Programs, and (B) Modifying the Automatic Stay* [D.I. 25] (the "Wages Motion").

3

(or 40%) of the assets in the 401(k) Plan are attributable to the Oncor participants, and approximately $927 million (or 60%) of the assets in the 401(k) Plan are attributable to Debtor participants. The Debtors pay the costs of administering benefits on behalf of the Oncor employees who participate in the 401(k) Plan in the first instance, and then Oncor reimburses the Debtors on a monthly basis for these administration costs. Historically, Fidelity Workplace Services LLC ("Fidelity") has administered benefits for the Debtors' and Oncor's employee participants on the same platform.

**II.    The 401(k) Plan Separation.**

8.    For purposes of ERISA, Oncor is within the Debtors' controlled group and has historically been a participating employer in the Debtors' benefit plans. However, in recent years, Oncor established its own separate, health plan and as a consequence, the Debtors and Oncor have worked to separate Oncor from the Debtors' remaining benefit plans. For example, before the Petition Date, the Debtors and Oncor took steps to separate assets they each contributed into a trust to pay retiree medical benefits. In addition, and as further described in the Debtors' Wages Motion, the Debtors and Oncor executed two prepetition agreements that allocated costs and administrative responsibilities relating to the administration of health and welfare benefits for current employees, retirees, and dependents (as described in the Wages Motion, the "Split Participant Agreement" and the "Welfare Benefit Administration Agreement").

9.    With respect to the Wages Motion, the Court authorized interim and final relief (a) authorizing payment of prepetition amounts accrued in the ordinary course of business on account of the 401(k) Plan: 401(k) deductions, 401(k) administrative fees (owed to, among others, Fidelity), the Debtors' 401(k) matching obligations and (b) permitting the Debtors to continue

honoring obligations related to the 401(k) Plan on a postpetition basis and in the ordinary course of business.

10.     The 401(k) Plan Separation will result in a modest increase in annual fees paid by current and former Employees who participate in the 401(k) Plan (approximately $42,000 in the aggregate, or $6 per participant) due to the minor loss of economies of scale generated by administering benefits on behalf of both the Debtors and Oncor together. In addition, effectuating the split will create a one-time cost of no more than $70,000, payable by Energy Future Holdings Corp. ("EFH Corp.") to Fidelity, who will continue to administer the 401(k) Plan for the benefit of the Debtors after the 401(k) Plan Separation.[6]

11.     In addition, as of January 1, 2015, the Debtors will utilize a new payroll processor.[7] This service provider change will require the Debtors to program a new interface between the Debtors and the new payroll processor and the costs of programing directly correlate to the number of current and former Employees that will participate in the platform created by the new interface. If the 401(k) Plan Separation is consummated before January 1, 2015, the Debtors will only have to pay the programming costs attributable to the Debtors' current and former employees as opposed to the Debtors' and Oncor's current and former employees (resulting in certain cost savings). Considering all costs, the more economically efficient choice is to

---

[6] Before the Petition Date, the Debtors and Oncor separated their joint pension plan into separate pension plans. The joint pension plan was administrated by Fidelity. Following the separation of the joint pension plan, Fidelity continued to administer benefits on behalf of Oncor and the Debtors on the same platform because the 401(k) Plan was still jointly administered.

As part of the 401(k) Plan Separation, Fidelity will be separating the administration of benefits on behalf of Oncor and the Debtors. This separation will create costs and to the extent these costs are generated in connection with the prepetition pension plan split, they will be paid as Unpaid 401(k) Administrative Fees pursuant to the *Final Order (A) Authorizing the Debtors to (I) Pay Certain Prepetition Compensation and Reimbursable Employee Expenses, (II) Pay and Honor Employee and Retiree Medical and Similar Benefits, and (III) Continue Employee and Retiree Benefit Programs, and (B) Modifying the Automatic Stay*.

[7] Additional information regarding the services performed by the Debtors' current Payroll Processor (as defined in the Wages Motion) may be found in the Wages Motion.

5

effectuate the 401(k) Plan Separation and for the Debtors to pay the programing costs only attributable to the Debtors' 401(k) Plan.

12.     Notwithstanding these modest costs, in the short-term, the 401(k) Plan Separation will allow the Debtors to focus their resources on the Debtors' Employees during these chapter 11 cases.  And in the long-term, the 401(k) Plan Separation will reduce the administrative burden on the Debtors and contribute to the Debtors' long term plan of separating Debtor employee benefits from Oncor employee benefits.

### Basis for Relief

**I.     The 401(k) Plan Assets Are Not Property of the Debtors' Estates.**

13.     The 401(k) Plan Separation contemplates separating funds that do not belong to the Debtors' estates. Section 541(d) of the Bankruptcy Code provides, in relevant part, that "[p]roperty in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest . . . becomes property of the estate under subsection (a)(1) or (2) of this section only to the extent of the debtors' legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold." 11 U.S.C. § 541(d).  The 401(k) Plan is comprised of funds held by the Debtors on behalf of individual Employees. 29 U.S.C. § 1103(a) (noting that benefit plans subject to ERISA are required to hold all assets of an employee benefit plan in trust).  As such, the Debtors do not have any interest in the funds and the funds are not property of the Debtors' estates.  *See*, *In re Dameron*, 155 F.3d 718, 721-22 (4th Cir. 1998) (funds from various lenders held by closing agent in trust for designated third parties not property of debtor's estate); *In re Columbia Gas Sys., Inc.*, 997 F.2d 1039 (3d Cir. 1993) (refunds created and mandated by Federal Energy Regulatory Commission and held by debtor were not property of the estate); *In re College Bound, Inc*. 172 B.R. 399 (Bankr. S.D. Fla. 1994) (wages which debtor withheld from participating employee's checks for payment

6

into a qualified employee benefit plan were held by the debtor in trust and not included in property of the estate).

## II. The Court Should Approve the 401(k) Plan Separation As a Sound Exercise of the Debtors' Business Judgment.

14. Even if the assets in the 401(k) Plan were property of the Debtors' estates, section 363(b)(1) of the Bankruptcy Code provides, in relevant part, that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1).

15. The use of property of the estate, other than in the ordinary course of business, is authorized if the debtor demonstrates a "sound business purpose" for such uses. *See, e.g.*, *Meyers v. Martin (In re Martin)*, 91 F.3d 389, 395 (3d. Cir. 1996) ("[U]nder normal circumstances the [bankruptcy] court would defer to the trustee's [or debtor in possession's] judgment so long as there is a legitimate business justification."); *Computer Sales Int'l, Inc. v. Fed. Mogul Global (In re Fed. Mogul Global, Inc.)*, 293 B.R. 124, 126 (D. Del. 2003) ("[I]n the Third Circuit, a court should approve a debtor's use of assets outside the ordinary course of business if the debtor can demonstrate a sound business justification for the proposed transaction."); *Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1071 (2d Cir. 1983) (" . . . a judge determining a 363(b) application expressly find[s] from the evidenced presented before him . . . a good business reason to grant such an application"). Pursuant to this section, the Court should approve the 401(k) Plan Separation, outside the ordinary course of business, if the proposed use of estate assets is a reasonable exercise of the Debtors' business judgment.

16. When a valid business justification is articulated, courts in this district have deferred to the debtor's decision to use, sell or lease property out of the ordinary course of business. *See e.g., Myers v. Martin (In re Martin)*, 91 F.3d 389, 395 n.2 (3d Cir. 1996) (noting

that under normal circumstances, courts defer to a trustee's judgment concerning use of property under Bankruptcy Code section 363(b)).  Once "the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct."  *Creditors' Committee of Asbestos-Related Litigants and/or Creditors v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986).  In fact, a debtor bears a "relatively light evidentiary burden of establishing" that the debtor exercised its business judgment in good faith and on a reasonable basis with respect to transactions under section 363 of the Bankrupt Code. *See, In re Nellson Nutraceutical, Inc.*, 369 B.R. 787, 800 (Bankr. D. Del. 2007) (finding that "the evidence presented by the debtors was more than sufficient to satisfy the relatively light evidentiary burden of establishing that the debtors made a business judgment in good faith upon a reasonable basis").

17. Here, the Debtors have determined, in the exercise of their sound business judgment that consummation of the 401(k) Plan Separation is in the best interests of the Debtors' estates.  Although there is a modest cost associated with the 401(k) Plan Separation, upon completion of the 401(k) Plan Separation, EFH Corp. will no longer bear the personnel and monetary burden of administering the 401(k) Plan on behalf of non-Debtor employees.  In addition, the 401(k) Plan Separation is another step in the Debtors' ongoing efforts and long term goal of reducing administrative burdens.  As further described in the Wages Motion, prior to the Petition Date, Oncor established an independent health plan and the Debtors and Oncor separated their pension plan, took proactive steps to separate the assets contributed to the retiree medical benefits trust, and also executed the Split Participation Agreement and Welfare Benefit Administration Agreement to further delineate and allocate costs between the Debtors and Oncor.

To that end, the 401(k) Plan Separation will aid in streamlining operations and efficiently reallocating resources towards Debtor employees. Accordingly, the Debtors respectfully request the Court enter the Order authorizing the 401(k) Plan Separation.

**Waiver of Bankruptcy Rules 6004(a) and 6004(h)**

18.     To implement the foregoing successfully, the Debtors seek a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the 14-day of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h).

**Notice**

19.     The Debtors shall provide notice of this Motion on the date hereof via U.S. first class mail to: (a) the Office of the U.S. Trustee for the District of Delaware; (b) (i) the entities listed on the Consolidated List of Creditors Holding the 50 Largest Unsecured Claims filed pursuant to Bankruptcy Rule 1007(d); and (ii) proposed counsel to the Creditors' Committee; (c) Wilmington Trust, N.A., in its capacity as administrative agent under the TCEH first lien credit agreement and collateral agent under the TCEH intercreditor agreements and counsel thereto; (d) Bank of New York Mellon Trust Company, N.A., in its capacity as indenture trustee under: (i) the TCEH unsecured pollution control revenue bonds; and (ii) the EFCH 2037 Notes due 2037, and counsel thereto; (e) American Stock Transfer & Trust Company, LLC, in its capacity as indenture trustee under: (i) the 9.75% EFH senior unsecured notes due 2019; (ii) the 10.0% EFH senior unsecured notes due 2020; (iii) the 10.875% EFH LBO senior unsecured notes due 2017; (iv) the 11.25%/12.0% EFH LBO toggle notes due 2017; (v) the 5.55% EFH legacy notes (series P) due 2014; (vi) the 6.50% EFH legacy notes (series Q) due 2024; and (vii) the 6.55% EFH legacy notes (series R) due 2034, and counsel thereto; (f) Computershare Trust Company, N.A. and Computershare Trust Company of Canada, in their capacities as indenture trustee under: (i) the 11.0% EFIH senior secured second lien notes due 2021; and (ii) the 11.75%

EFIH senior secured second lien notes due 2022, and counsel thereto; (g) UMB Bank, N.A. in its capacity as indenture trustee under: (i) the 9.75% EFIH senior unsecured notes due 2019; and (ii) the 11.25%/12.25% EFIH senior toggle notes due 2018, and counsel thereto; (h) BOKF, NA, dba Bank of Arizona, in its capacity as indenture trustee under 11.50% TCEH senior secured notes due 2020, and counsel thereto; (i) CSC Trust Company of Delaware in its capacity as indenture trustee under: (i) the 6.875% EFIH senior secured notes due 2017; and (ii) the 10.0% EFIH senior secured notes due 2020, and counsel thereto; (j) Law Debenture Trust Company of New York in its capacity as indenture trustee under: (i) the 10.25% TCEH senior unsecured notes due 2015; and (ii) the 10.50%/11.25% TCEH senior toggle notes due 2016, and counsel thereto; (k) Wilmington Savings Fund Society, FSB in its capacity as indenture trustee under the 15.0% TCEH senior secured second lien notes due 2021, and counsel thereto; (l) counsel to certain holders of claims against the Debtors regarding each of the foregoing described in clauses (c) through (k); (m) the agent for the TCEH debtor-in-possession financing facility and counsel thereto; (n) the agent for the EFIH debtor-in-possession financing facility and counsel thereto; (o) counsel to certain holders of equity in Texas Energy Future Holdings Limited Partnership; (p) counsel to the Ad Hoc Committee of TCEH Unsecured Noteholders; (q) counsel to the Ad Hoc Committee of TCEH Second Lien Noteholders; (r) Oncor Electric Delivery Holdings Company LLC and counsel thereto; (s) Oncor Electric Delivery Company LLC and counsel thereto; (t) the Securities and Exchange Commission; (u) the Internal Revenue Service; (v) the Office of the United States Attorney for the District of Delaware; (w) the Office of the Texas Attorney General on behalf of the Public Utility Commission of Texas; (x) counsel to the Electric Reliability Council of Texas; (y) Fidelity; and (z) those parties that have requested notice pursuant to

Bankruptcy Rule 2002.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

## **No Prior Request**

20.    No prior request for the relief sought in this Motion has been made to this or any other court.

[*Remainder of page intentionally left blank.*]

WHEREFORE, the Debtors respectfully request that the Court enter the Order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested in this Motion and granting such other and further relief as is appropriate under the circumstances.

Dated:  June 27, 2014

/s/ *Tyler D. Semmelman*
**RICHARDS, LAYTON & FINGER, P.A.**
Mark D. Collins (No. 2981)
Daniel J. DeFranceschi (No. 2732)
Jason M. Madron (No. 4431)
Tyler D. Semmelman (No. 5386)
920 North King Street
Wilmington, Delaware 19801
Telephone:  (302) 651-7700
Facsimile:  (302) 651-7701
Email:  collins@rlf.com
defranceschi@rlf.com
madron@rlf.com
semmelman@rlf.com

-and-

**KIRKLAND & ELLIS LLP**
Richard M. Cieri (admitted *pro hac vice*)
Edward O. Sassower, P.C. (admitted *pro hac vice*)
Stephen E. Hessler (admitted *pro hac vice*)
Brian E. Schartz (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022-4611
Telephone:  (212) 446-4800
Facsimile:  (212) 446-4900
Email:  richard.cieri@kirkland.com
edward.sassower@kirkland.com
stephen.hessler@kirkland.com
brian.schartz@kirkland.com

-and-

James H.M. Sprayregen, P.C. (admitted *pro hac vice*)
Chad J. Husnick (admitted *pro hac vice*)
Steven N. Serajeddini (admitted *pro hac vice*)
300 North LaSalle
Chicago, Illinois 60654
Telephone:  (312) 862-2000
Facsimile:  (312) 862-2200
Email:  james.sprayregen@kirkland.com
chad.husnick@kirkland.com
steven.serajeddini@kirkland.com

Proposed Co-Counsel to the Debtors and Debtors in Possession