
ORIGINAL

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | ) Chapter 11 |
|  | ) |
| ENERGY FUTURE HOLDINGS CORP., et al.,[1] | ) Case No. 14-10979 (CSS) |
|  | ) |
| Debtors. | ) (Jointly Administered) |
|  | ) Re: Docket No. 41, 860, 861, & 1197 |

**FINAL ORDER (RE: PROPRIETARY TRADING TRANSACTIONS[2] THAT DO NOT INVOLVE THE DEBTORS' POWER GENERATION AND RETAIL OPERATIONS) AUTHORIZING THE DEBTORS TO (A) CONTINUE PERFORMING UNDER PREPETITION HEDGING AND TRADING ARRANGEMENTS, (B) PLEDGE COLLATERAL AND HONOR OBLIGATIONS THEREUNDER, AND (C) ENTER INTO AND PERFORM UNDER PROPRIETARY TRADING TRANSACTIONS SUBJECT TO INTERNAL RISK MANAGEMENT GUIDELINES**

Upon the motion (the "Motion")[3] of the above-captioned debtors and debtors in possession (collectively, the "Debtors"), for entry of a final order (this "Order") authorizing, but not directing, the Debtors to: (a) honor, pay, or otherwise satisfy all obligations arising under hedging and trading contracts with various counterparties solely to hedge their exposure to

---

[1] The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, for which joint administration has been granted on a final basis, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

[2] The term "proprietary" as used herein is for ease of reference and does not represent a determination by the Court as to whether the hedging and trading activities permitted by this Order are or are not proprietary and may be otherwise. For the avoidance of doubt, the use in this Order of each of the terms "trade," "trading transaction," "trading activity" or such similar or related term may include, depending on the context, a "hedge transaction" or other trading transaction.

[3] On June 27, 2014, the Debtors filed the *Supplemental Declaration of Terry L. Nutt in Support of the Motion of Energy Future Holdings Corp., et al., for Entry of a Final Order (Re: Proprietary Trading Transactions that Do Not Involve the Debtors' Power Generation and Retail Operations) Authorizing the Debtors to (A) Continue Performing Under Prepetition Hedging and Trading Arrangements, (B) Pledge Collateral and Honor Obligations Thereunder, and (C) Enter Into and Perform Under Trading Continuation Agreements and New Postpetition Hedging and Trading Arrangements* [D.I. 1197] (the "Second Nutt Declaration"). As used herein, the term "Motion" includes the Supplement and the Second Nutt Declaration.

commodity risks, including price and delivery risk (collectively, the "Hedging and Trading Arrangements" and the activities related thereto, the "Hedging and Trading Activities")[4]; (b) pledge and transfer collateral under the Hedging and Trading Arrangements in the form of cash, letters of credit, and, in certain instances, TCEH Super-Priority DIP Liens, as permitted under the terms of the TCEH DIP Orders and the TCEH Cash Collateral Orders, all in the ordinary course of business without regard to whether such obligations accrued or arose before the Petition Date; (c) continue to honor, pay, or otherwise satisfy postpetition obligations arising under the Hedging and Trading Arrangements in the ordinary course of business consistent with the Risk Management Guidelines and, to the extent applicable, subject to the Internal Hedging Policy; and (d) enter into, and perform under Trading Continuation Agreements and new Postpetition Hedging and Trading Arrangements in the ordinary course of business, consistent with the Risk Management Guidelines, and, to the extent applicable, subject to the Internal Hedging Policy, all as more fully set forth in the Motion (as modified herein); and upon the First Day Declaration and the Debtors having engaged in numerous discussions with the U.S. Trustee through counsel relating to objections and comments raised informally and resulting in the filing of the Second Nutt Declaration; and the Court having found that it has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and the Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and the Court having found that venue of these cases and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having entered an interim order in respect of the Motion [D.I. 315], a second interim order

---

[4] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion. For the avoidance of doubt, neither the Hedging and Trading Arrangements nor the Hedging and Trading Activities, as those terms are used in this Order (whether denominated as prepetition or postpetition), involve investment arrangements, activities or strategies that do not involve or relate directly to the Debtors' generation or retail operations, and expressly do not include the Debtors' proprietary trading activities (*i.e.*, trading activities that are conducted to generate profits and not intended to hedge or mitigate risk) as described in the Motion and supporting papers.

regarding proprietary trading activities as described in the Motion [D.I. 861], and a final order in respect of the Motion, except with respect to certain proprietary trading activities [D.I. 860]; and the Court having found that the relief requested in the Motion, as modified herein and subject to the Risk Management Guidelines, is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and the Court having found that the Debtors provided appropriate notice of the Motion and the opportunity for a hearing on the Motion under the circumstances; and the Court having reviewed the Second Nutt Declaration and the Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing, if any, before the Court (the "Hearing"); and the Court having determined that the legal and factual bases set forth in the Motion, and the Second Nutt Declaration, and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before the Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1. The Motion, as modified, is granted as set forth herein.

2. The Debtors are authorized, but not directed, to continue to enter into and perform under Proprietary Trades and engage in Proprietary Trading Activities , in the ordinary course of business, subject to the Risk Management Guidelines.

3. The Debtors shall use their commercially reasonable efforts to obtain from any Proprietary Trade counterparty, as a prerequisite to obtaining payment or collateral pursuant to this Order, written acknowledgement of its obligations to perform under the Proprietary Trade on a postpetition basis, substantially in the form attached hereto as **Exhibit 1** (the "Trading Continuation Agreement"); *provided, however,* that the Debtors may, if necessary under the circumstances, in the Debtors' judgment, satisfy prepetition payment obligations and prepetition collateral posting obligations as set forth in the Motion and this Order without obtaining such

agreement; *provided further, however*, that such payment shall not prejudice any Debtor's right to challenge, as a violation of the automatic stay or otherwise, a Proprietary Trade counterparty's refusal to perform under the applicable Proprietary Trade on a postpetition basis.

4. The form Trading Continuation Agreement, attached hereto as **Exhibit 1**, is approved on a final basis; *provided, however*, that the Debtors are authorized to modify the Trading Continuation Agreement if a particular situation, in the Debtors' judgment, so requires; *provided, further*, that if the Debtors make a material modification to the Trading Continuation Agreement, the Debtors shall notify counsel to the Official Committee of Unsecured Creditors appointed in these chapter 11 cases (the "Creditors' Committee") and counsel to the U.S. Trustee within ten (10) business days of such modification.

5. As security and assurance of the Debtors' obligations arising under Proprietary Trades, and in exchange for providing benefits to non-terminating counterparties in accordance with this Order:

> (a) counterparties are each hereby granted, for their own benefit, effective as of the Petition Date and without the necessity of the execution by the Debtors, or filing, of security agreements, pledge agreements, mortgages, financing statements or otherwise, pursuant to Bankruptcy Code section 364(c)(2) enforceable first-priority liens and security interests on any cash collateral, and/or letters of credit with respect to initial, maintenance or variation margin or payments in advance provided to such counterparty whether prior hereto, on or after the date of this Order;
>
> (b) the obligations, liabilities and indebtedness of the Debtors arising from postpetition market movements, performance and performance obligations in respect of Proprietary Trades, shall have the status of an administrative expense, and shall be paid at the prices set forth in the documents governing Proprietary Trades;
>
> (c) counterparties may net exposures, amounts, and obligations under Proprietary Trades and Hedging and Trading Arrangements that existed as of the Petition Date (each, a "Prepetition Hedging and Trading Arrangement") against exposures, amounts and obligations under other Proprietary Trades, Prepetition Hedging and Trading Arrangements and Hedging and Trading Arrangements entered into after the Petition Date (each, a "Postpetition

<u>Hedging and Trading Arrangement</u>") with a Debtor and vice versa. In this regard, there shall be no distinction between transactions entered into prepetition and postpetition; and

(d) the Debtors and the non-terminating counterparties shall be authorized and permitted to apply any and all cash collateral and/or letters of credit that may have been posted prepetition to any obligations arising under a Proprietary Trade, regardless of whether such obligations arise under existing Prepetition Hedging and Trading Arrangements or Postpetition Hedging and Trading Arrangements, as applicable.

6. Notwithstanding the foregoing, if, after receiving payment or collateral pursuant to this Order (and/or the specified terms of a Trading Continuation Agreement), any party to a Proprietary Trade does not perform under the Proprietary Trade on a postpetition basis or otherwise exercises valid and enforceable termination rights under sections 555, 556, 559, 560, and 561 of the Bankruptcy Code with respect to the Proprietary Trade, then (a) any postpetition payment or collateral received by such party to the Proprietary Trade for prepetition obligations shall be deemed, in the Debtors' sole discretion in consultation with the Creditors' Committee, an improper postpetition transfer, and, therefore, recoverable by the Debtors immediately upon written request by the Debtors, and (b) upon recovery by the Debtors, any prepetition claim of such Proprietary Trade counterparty shall be reinstated as if the payment had not been made and/or the collateral had not been posted.

7. If any or all of the provisions of this Order are stayed, modified in a manner adverse to a Proprietary Trade counterparty or vacated, or this Order otherwise terminates, such stay, modification, vacation or termination will not affect (a) the validity of any indebtedness, obligation or liability incurred by the Debtors to each of the counterparties before the receipt of written notice by the counterparties of the effective date of such stay, modification or vacation, (b) the validity or enforceability of the security interests, administrative claims and netting and termination rights authorized or created hereby or pursuant to the Proprietary Trades, or any

related documents, and (c) the rights of the counterparties to exercise remedies as set forth in the Proprietary Trades, and each counterparty shall be entitled to the benefits of the provisions of section 364(e) of the Bankruptcy Code.

8. If there exists an outstanding postpetition balance due from the Debtors to a Proprietary Trade counterparty that does not perform under the Proprietary Trades on a postpetition basis or otherwise exercises valid and enforceable termination rights under sections 555, 556, 559, 560, and 561 of the Bankruptcy Code with respect to the Proprietary Trades, the Debtors may elect, in the Debtors' sole discretion, to recharacterize and apply any payments made pursuant to this Order, and, as applicable, any collateral posted pursuant to this Order to such postpetition balance, and the Proprietary Trade counterparty shall repay immediately in cash to the Debtors (and, as applicable, return collateral posted by the Debtors) any amounts that exceed the postpetition obligations then outstanding, and without any claim, right of setoff, or recoupment against the Debtors resulting thereby.

9. The automatic stay provisions of section 362 of the Bankruptcy Code are hereby modified solely to the extent necessary to permit immediate and unconditional enforcement of remedies by any counterparties to Proprietary Trades upon the occurrence of a default by the Debtors under the Proprietary Trades, other than a default because of a condition of the kind specified in section 365(e)(1) of the Bankruptcy Code, and the counterparties' rights thereunder shall not be modified, stayed, avoided or otherwise limited by order of this Court or any court proceeding under the Bankruptcy Code. The Debtors waive the right and shall not seek relief, including under section 105(a) of the Bankruptcy Code, to the extent that any such relief would in any way restrict or impair the rights of counterparties under Proprietary Trades or this Order;

*provided, however*, that such waiver shall not preclude the Debtors from contesting whether a default has occurred under any Proprietary Trades.

10. Neither EFIH nor EFIH Finance Inc. is party to, or shall become party to pursuant to this Order, a Proprietary Trade.

11. In accordance with this Order and any other order of this Court, each of the financial institutions at which the Debtors maintain their accounts relating to the payment of the obligations described in this Order is authorized to honor checks and electronic payment requests presented for payment of obligations described in this Order and all fund transfer requests made by the Debtors related thereto to the extent that sufficient funds are on deposit in such amounts.

12. Notwithstanding the relief granted in this Order and any actions taken pursuant to such relief, nothing in this Order shall be deemed (a) an admission as to the validity of any claim against a Debtor entity; (b) a waiver of the rights of the Debtors' estates to dispute any claim on any grounds; (c) a promise or requirement to pay any claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Order or the Motion; (e) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) a waiver or limitation of the rights of the Debtors' estates under the Bankruptcy Code or any other applicable law; or (g) an admission that any agreement to which one or more of the Debtors may be party constitutes a Proprietary Trades. Payments made pursuant to this Order shall not be construed as an admission as to the validity of any claim or a waiver of the rights of the Debtors' estates to subsequently dispute such claim.

13. Notice of the Motion as provided therein shall be deemed good and sufficient and the requirements of the Local Bankruptcy Rules are satisfied by such notice.

14. The Debtors are authorized to take all actions necessary to effectuate the relief

granted pursuant to this Order in accordance with the Motion.

15. Notwithstanding the possible applicability of Bankruptcy Rules 6004(h), 7062, 9014 or otherwise, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

16. Nothing in this Order shall authorize or direct the Debtors to take any action that would violate or breach the terms of the TCEH DIP Credit Agreement (as defined in the TCEH DIP Orders) or violate any order of this Court approving the TCEH DIP Facility.

17. The Debtors shall provide to: (a) the DIP Agent (as defined in the TCEH DIP Orders), (b) counsel to the TCEH First Lien Ad Hoc Committee (as defined in the TCEH Cash Collateral Orders), and (c) counsel to the Creditors' Committee, on a professionals' eyes only basis, unless otherwise agreed to by counsel to the Debtors and counsel to the Creditors' Committee monthly written reports, exclusive of counterparty names or identifiers, of all Proprietary Trades summarizing the aggregate amount of collateral pledged with respect to the Proprietary Trades (it being understood that such summary may be combined with one or more summaries with respect to the other Hedging and Trading Activities).

18. Notwithstanding anything herein to the contrary, all rights of the U.S. Trustee are expressly reserved including, but not limited to, the Court determining that any of the representations made in the Motion, the supporting pleadings or statements of counsel are inconsistent with or do not accurately reflect the nature or extent of the Proprietary Trades as that term is used in this Order.

19. The relief granted in this Order applies only to Proprietary Trades not previously assumed, rejected, or terminated pursuant to sections 365, 546, 555, 556, and 559 of the Bankruptcy Code.

20. All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

21. The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Motion.

22. The Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation of this Order.

Wilmington, Delaware
Dated: 6/30, 2014

_____
THE HONORABLE CHRISTOPHER S. SONTCHI
UNITED STATES BANKRUPTCY JUDGE