**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) | Case No. 14-10979 (CSS) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |

**DECLARATION OF DISINTERESTEDNESS OF WEBER SHANDWICK PURSUANT TO THE ORDER AUTHORIZING THE RETENTION AND COMPENSATION OF CERTAIN PROFESSIONALS UTILIZED IN THE ORDINARY COURSE OF BUSINESS**

I, Neil Nowlin, declare under penalty of perjury:

1.     I am a General Manager of the Southwest office of Weber Shandwick, located at 1717 Main Street, Suite 1600, Dallas, TX 75201 (the "Company").

2.     Energy Future Holdings Corporation and certain of its affiliates, as debtors and debtors in possession (collectively, the "Debtors"), have requested that the Company provide Public Relations services to the Debtors, namely Energy Future Holdings, and the Company has consented to provide such services.

3.     The Company may have performed services in the past, may currently perform services and may perform services in the future, in matters unrelated to these chapter 11 cases, for persons that are parties in interest in the Debtors' chapter 11 cases. The Company does not perform services for any such person in connection with these chapter 11 cases, or have any relationship with any such person, their attorneys, or accountants that would be adverse to the

---

[1]     The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, for which joint administration has been granted, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

Debtors or their estates with respect to the matter on which the Company is proposed to be employed.

4.      As part of its customary practice, the Company is retained in cases, proceedings, and transactions involving many different parties, some of whom may represent or be employed by the Debtors, claimants, and parties in interest in these chapter 11 cases.

5.      Neither I nor any principal, partner, director, officer, etc., of or professional employed by, the Company has agreed to share or will share any portion of the compensation to be received from the Debtors with any other person other than the principal and regular employees of the Company.

6.      Neither I nor any principal, partner, director, officer, of or professional employed by, the Company, insofar as I have been able to ascertain, holds, or represents any interest adverse to the Debtors or their estates with respect to the matter(s) upon which this Company is to be employed.

7.      The Debtors owe the Company $28,776.52 for prepetition services, the payment of which is subject to limitations contained in the United States Bankruptcy Code, 11 U.S.C. §§ 101–1532.

8.      I understand that the *Order Authorizing the Retention and Compensation of Certain Professionals Utilized in the Ordinary Course of Business* does not authorize any of the Debtors to pay the Company for prepetition services.

9.      I further understand that this Declaration will not suffice as the Company's proof of claim.

10.    As of April 29, 2014, which was the date on which the Debtors commenced these chapter 11 cases, the Company was party to an agreement for indemnification with certain of the Debtors.  A copy of such agreement is attached as **Exhibit 1** to this Declaration.

11.    Such agreement for indemnification (the "OCP Agreement") is subject to the following modifications, applicable during the pendency of the Debtors' chapter 11 cases:

(a) the Company shall not be entitled to indemnification, contribution, or reimbursement for services provided under the OCP Agreement other than those described in such OCP Agreement, unless such services and indemnification therefor are approved by the Bankruptcy Court.

(b) Notwithstanding anything to the contrary in the OCP Agreement, the Debtors shall have no obligation to indemnify the Company, or provide contribution or reimbursement to the Company, for any claim or expense related to such OCP Agreement that is either:    (i) judicially determined (the determination having become final) to have arisen from the Company's gross negligence or willful misconduct; (ii) for a contractual dispute in which the Debtors allege the breach of the Company's contractual obligations under the OCP Agreement unless the Court determines that indemnification, contribution or reimbursement would be permissible pursuant to *In re United Artists Theatre Co.*, 315 F.3d 217 (3d Cir. 2003); or (iii) settled prior to a judicial determination as to the exclusions set forth in clauses (i) and (ii) above, but determined by the Court, after notice and a hearing to be a claim or expense for which the Company should not receive indemnity, contribution or reimbursement under the terms of the OCP Agreement as modified by this Order.

12.    If, before the earlier of (i) the entry of an order confirming a chapter 11 plan in these cases (that order having become a final order no longer subject to appeal), and (ii) the entry of an order closing these chapter 11 cases, the Company believes that it is entitled to the payment of any amounts by the Debtors on account of the Debtors' indemnification, contribution and/or reimbursement obligations under the OCP Agreement (as modified by this Order), including without limitation the advancement of defense costs, the Company must file an application

3

therefor in this Court, and the Debtors may not pay any such amounts to the Company before the entry of an order by this Court approving the payment. This subparagraph (c) is intended only to specify the period of time under which the Court shall have jurisdiction over any request for fees and expenses by the Company for indemnification, contribution or reimbursement, and not a provision limiting the duration of the Debtors' obligation to indemnify the Company. All parties in interest in these chapter 11 cases shall retain the right to object to any demand by the Company for indemnification, contribution or reimbursement.]

13.     The Company is conducting further inquiries regarding its retention by any creditors of the Debtors, and upon conclusion of that inquiry, or at any time during the period of its employment, if the Company should discover any facts bearing on the matters described herein, the Company will supplement the information contained in this Declaration.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Date:  June 17, 2014

_____
Neil Nowlin

Executive Vice President/General Manager

Weber Shandwick Southwest

**Exhibit 1**


weber
shandwick
engaging. always.

Allan Koenig
Vice President, Corporate Communications
Energy Future Holdings
1601 Bryan Street
Dallas, Texas 75201

**Subject:  Statement of Work and Budget Authorization**

This Statement of Work ("SOW"), dated January 21, 2014 sets forth the terms and conditions under which Weber Shandwick agrees to provide services to Energy Future Holdings.

**Project:**      **Job One Video - 2014**

**Description:**    [See Attached A – Statement of Work]

**Term of project:**
                    Start Date:  January, 2014
                    End Date:   March, 2014

**Total Project Budget:*         Estimated FEES:** $14,400
                          **Estimated Expenses:** $350+

* **Project Budget.**  The Project Budget will be agreed upon in advance of commencement of work by Agency. If the scope of the project changes, Agency will notify Client in writing with a revised Project Budget and/or incremental budget required to complete the project.  Client agrees to approve the revised scope of work and incremental budget or re-prioritize the scope of Agency's services in order to stay within the original Project Budget.  The Fee for services rendered by Agency will not exceed the approved Project Budget without prior written authorization from Client.

**Billing Schedule:**   Entire budget will be invoiced upon approval and delivery of video.

By signing below, the parties are agreeing to the terms of this SOW.

**The Studio @ Weber Shandwick**

By:  _Leta Vanderkee_                         Date:  _1-21.14_
      Name & Title of Authorized Signatory

**Energy Future Holdings**

By:  _Allan Koenig_                            Date:  _JAN. 21, 2014_
      Name & Title of Authorized Signatory

| The Studio @ Weber Shandwick | | |
|---|---|---|
| Statement of Work  - Attachment A | | |
| **Description:** | | 1/21/14 |

**Description:**

**Job One Video - 2014**

**Includes:**

- Pre-production - $2,900
  - o Development of video treatment which will include:
    - ▪ Concept and approach to video message
    - ▪ Outline of existing footage and soundbites to be incorporated
    - ▪ Outline of footage and soundbites to be obtained
    - ▪ Music research
    - ▪ Coordinating necessary travel and equipment for shoot day(s)

- Production - $3,500
  - o Includes on-site crew and producer, cameras, lighting and audio equipment for 1 day of shooting

- Post-production - $8,000
  - o Includes editing of final package incorporating B-Roll and soundbites from first phase of project, plus additionally secured footage, animation and music
  - o Includes possible light animation, data visualizations and special effects of Job One graphic with photos in tile effect
  - o Includes up to 3 rounds of edits
  - o Includes providing video in final formats required by EFH

**Not Included:**
Any additional tactics not outlined here are not included. An addendum Scope of Work can be executed if desired.

| Production Estimate Breakdown | Amount |
|---|---|
| Pre-production | $2,900 |
| Production | $3,500 |
| Post-production | $8,000 |
| OOPS - Video Insurance and travel costs (mileage/meals) | $350+ |
| TOTAL | $14,400 + oops |

1717 Main Street, Suite 1600     T 469 375 0223
Dallas, TX 75201                  F 469 375 0201
www.webershandwick.com

2

## Other Conditions - Attachment B

<u>Stop Work Order.</u>   It is understood that the costs listed here are estimated only and do not necessarily represent final prices at which this work will be billed.  Orders to stop approved project will result in 50% of signed estimate fees.

<u>Payment to Agency.</u>  Payment is due no later than forty-five (45) days from the invoice date.  In the event payment is not timely received, Agency reserves the right to charge Client simple interest on any past due amounts computed at 1 1/2% over the prime rate of interest in effect at Citibank, N.A., in New York City until such payment is received.  Client agrees to reimburse Agency for any costs incurred (including reasonable attorneys' fees and court costs) in connection with Agency's attempts to collect any sums that are over forty-five (45) days past due.  In the event of a disputed charge, Client shall notify Agency in writing of the disputed amount within ten (10) days of the invoice date, specifically identify the reason for the dispute, and pay all undisputed amounts owed while the dispute is under negotiation.

<u>Confidentiality.</u>   Agency shall abide by its obligation of confidentiality pursuant to the terms of that certain letter agreement, dated September 11, 2012, between Agency and Client.

<u>Ownership; Use Of Materials.</u>  Subject to any third party rights in licensed elements, Client shall be sole owner of all rights in and to materials developed and produced by Agency on Client's behalf, provided Client has paid all invoices due and owing to Agency pursuant to this Agreement.  Client understands and agrees that its rights in any third party materials or any services including, without limitation, stock photos, licensed materials or talent and talent residuals, are subject to any terms and conditions set forth in any applicable agreement.  Upon prior written approval by client, Agency may use Client's name and any non-confidential materials produced hereunder in Agency's portfolio, on Agency's web site, intranet, and for internal and trade purposes. Agency will be required to obtain Client's advance approval to utilize Client's trademarks or any Client materials or information to be in press releases, Agency brochures, or submission for awards.

<u>Client Obligations.</u>  Client shall be responsible for the accuracy, completeness and propriety of:  (a) information concerning Client's organization, products, services and Client's competitors' products and services provided to Agency by Client or by a third party authorized by Client; (b) any ideas or directions provided to Agency by Client or by a third party authorized by Client; (c) compliance with all securities laws and regulations and/or all other laws and regulations applicable to Client's business; (d) rights, licenses and permissions to use materials furnished to Agency by Client or on Client's behalf in the performance of this Agreement; and (e) the content of any press releases or other disseminated statements approved by Client.

<u>Indemnification.</u>  Client shall defend, indemnify and hold Agency harmless from and against any loss, damage, liability, claim, demand, action, cost and expense (collectively "Loss") resulting from claims made against Agency by any third party, including any governmental entity, which arises out of or in connection with Client's obligations above; information or materials supplied by Client or a third party authorized by Client to Agency; as a result of any governmental investigation, proceeding or administrative hearing regarding the Services; or the nature or use of any of Client's products, services or premiums, including any issue of safety, product liability or performance of Client's products, services or premiums.  Client's indemnity obligations shall include, without limitation, payment to Agency for any and all personnel time incurred in connections with any such claim, suit, proceeding or subpoena based upon Agency's then-current hourly rates.



weber
shandwick

engaging, always.

Allan Koenig
Vice President, Corporate Communications
Energy Future Holdings
1601 Bryan Street
Dallas, Texas 75201

**Subject: Statement of Work and Budget Authorization**

This Statement of Work ("SOW"), dated April 16, 2014 sets forth the terms and conditions under which Weber Shandwick agrees to provide services to Energy Future Holdings.

**Project:**        **POV Blog Design and Reporting Updates**

**Description:**    [See Attached A – Statement of Work]

**Term of project:**
              Start Date:  April, 2014
              End Date:  April, 2014

**Total Project Budget:***        **Estimated FEES:  $1,300**
                                  **Estimated Expenses:  N/A**

**\* Project Budget**.  The Project Budget will be agreed upon in advance of commencement of work by Agency. If the scope of the project changes, Agency will notify Client in writing with a revised Project Budget and/or incremental budget required to complete the project.  Client agrees to approve the revised scope of work and incremental budget or re-prioritize the scope of Agency's services in order to stay within the original Project Budget.  The Fee for services rendered by Agency will not exceed the approved Project Budget without prior written authorization from Client.

**Billing Schedule:**   Entire budget will be invoiced upon approval and delivery of new files.

By signing below, the parties are agreeing to the terms of this SOW.

**Weber Shandwick - The Studio**

By:  _Leslie Vandelip_                    Date:  _4.17.14_
      Name & Title of Authorized Signatory

**Energy Future Holdings**

By:  _Allan Koenig_                       Date:  _4/17/2014_
      Name & Title of Authorized Signatory

| The Studio @ Weber Shandwick<br>Statement of Work  - Attachment A | | |
|---|---|---|
| **Description:**<br><br>**POV Blog Design and Reporting Updates**<br><br>**Includes:**<br><br>- Adding an "About" section which includes a high-level summary about the blog.<br>- Adding a "Contact Us" section.<br>- Adding Analytics code and setting up the site to provide real-time results on site visits, click-throughs, etc.<br><br>**Not Included:**<br>Any additional tactics not outlined here are not included. An addendum Scope of Work can be executed if desired. | | 4/16/14 |
| **Production Estimate Breakdown** | | **Amount** |
| POV Blog Design and Reporting Updates | | $1,300 |
| **TOTAL** | | **$1,300** |

## Other Conditions - Attachment B

<u>Stop Work Order</u>.  It is understood that the costs listed here are estimated only and do not necessarily represent final prices at which this work will be billed.  Orders to stop approved project will result in 50% of signed estimate fees.

<u>Payment to Agency</u>.  Payment is due no later than forty-five (45) days from the invoice date.  In the event payment is not timely received, Agency reserves the right to charge Client simple interest on any past due amounts computed at 1 1/2% over the prime rate of interest in effect at Citibank, N.A., in New York City until such payment is received.  Client agrees to reimburse Agency for any costs incurred (including reasonable attorneys' fees and court costs) in connection with Agency's attempts to collect any sums that are over forty-five (45) days past due.  In the event of a disputed charge, Client shall notify Agency in writing of the disputed amount within ten (10) days of the invoice date, specifically identify the reason for the dispute, and pay all undisputed amounts owed while the dispute is under negotiation.

<u>Confidentiality</u>.   Agency shall abide by its obligation of confidentiality pursuant to the terms of that certain letter agreement, dated September 11, 2012, between Agency and Client.

<u>Ownership; Use Of Materials</u>.  Subject to any third party rights in licensed elements, Client shall be sole owner of all rights in and to materials developed and produced by Agency on Client's behalf, provided Client has paid all invoices due and owing to Agency pursuant to this Agreement.  Client understands and agrees that its rights in any third party materials or any services including, without limitation, stock photos, licensed materials or talent and talent residuals, are subject to any terms and conditions set forth in any applicable agreement.  Upon prior written approval by client, Agency may use Client's name and any non-confidential materials produced hereunder in Agency's portfolio, on Agency's web site, intranet, and for internal and trade purposes. Agency will be required to obtain Client's advance approval to utilize Client's trademarks or any Client materials or information to be in press releases, Agency brochures, or submission for awards.

<u>Client Obligations</u>.  Client shall be responsible for the accuracy, completeness and propriety of:  (a) information concerning Client's organization, products, services and Client's competitors' products and services provided to Agency by Client or by a third party authorized by Client; (b) any ideas or directions provided to Agency by Client or by a third party authorized by Client; (c) compliance with all securities laws and regulations and/or all other laws and regulations applicable to Client's business; (d) rights, licenses and permissions to use materials furnished to Agency by Client or on Client's behalf in the performance of this Agreement; and (e) the content of any press releases or other disseminated statements approved by Client.

<u>Indemnification</u>. Client shall defend, indemnify and hold Agency harmless from and against any loss, damage, liability, claim, demand, action, cost and expense (including reasonable attorneys' fees and costs) (collectively "Loss") resulting from claims made against Agency by any third party, including any governmental entity, which arises out of or in connection with Client's obligations above; information or materials supplied by Client or a third party authorized by Client to Agency; as a result of any governmental investigation, proceeding or administrative hearing regarding the Services; or the nature or use of any of Client's products, services or premiums, including any issue of safety, product liability or performance of Client's products, services or premiums.  Client's indemnity obligations shall include, without limitation, payment to Agency for any and all personnel time incurred in connections with any such claim, suit, proceeding or subpoena based upon Agency's then-current hourly rates.



weber
shandwick

engaging, always.

Allan Koenig
Vice President, Corporate Communications
Energy Future Holdings
1601 Bryan Street
Dallas, Texas 75201

**Subject:  Statement of Work and Budget Authorization**

This Statement of Work ("SOW"), dated February 11, 2014 sets forth the terms and conditions under which Weber Shandwick agrees to provide services to Energy Future Holdings.

**Project:**         **Executive Presentation Design Support**

**Description:**   [See Attached A -- Statement of Work]

**Term of project:**
Start Date:  January, 2014
End Date:  March, 2014

**Total Project Budget:***         **Estimated FEES:  $8,000**
**Estimated Expenses:  N/A**

**\* Project Budget.**  The Project Budget will be agreed upon in advance of commencement of work by Agency. If the scope of the project changes, Agency will notify Client in writing with a revised Project Budget and/or incremental budget required to complete the project.  Client agrees to approve the revised scope of work and incremental budget or re-prioritize the scope of Agency's services in order to stay within the original Project Budget.  The Fee for services rendered by Agency will not exceed the approved Project Budget without prior written authorization from Client.

**Billing Schedule:**   Entire budget will be invoiced upon approval and delivery of presentation.

By signing below, the parties are agreeing to the terms of this SOW.

**Weber Shandwick - The Studio @ Weber Shandwick**

By: _____         Date: 2·18·14 _____
Name & Title of Authorized Signatory

**Energy Future Holdings**

By: _____         Date: FEB. 17, 2014 _____
Name & Title of Authorized Signatory

| The Studio @ Weber Shandwick<br>Statement of Work  - Attachment A | | |
|---|---|---|
| **Description:**<br><br>**Executive Presentation Design Support**<br><br>**Includes:**<br><br>-   Art production, design and flash animation for executive PowerPoint presentation<br>-   Includes updates, changes, graphic design and animation as requested by executive team from January 1, 2014 -- March 31, 2014<br><br>**Not Included:**<br>Any additional tactics not outlined here are not included. An addendum Scope of Work can be executed if desired. | | 2/11/14 |
| **Production Estimate Breakdown** | | **Amount** |
| Executive Presentation Design Support | | $8,000 |
| TOTAL | | $8,000 |

**Other Conditions - Attachment B**

<u>Stop Work Order</u>.  It is understood that the costs listed here are estimated only and do not necessarily represent final prices at which this work will be billed.  Orders to stop approved project will result in 50% of signed estimate fees.

<u>Payment to Agency</u>.  Payment is due no later than forty-five (45) days from the invoice date.  In the event payment is not timely received, Agency reserves the right to charge Client simple interest on any past due amounts computed at 1 1/2% over the prime rate of interest in effect at Citibank, N.A., in New York City until such payment is received.  Client agrees to reimburse Agency for any costs incurred (including reasonable attorneys' fees and court costs) in connection with Agency's attempts to collect any sums that are over forty-five (45) days past due.  In the event of a disputed charge, Client shall notify Agency in writing of the disputed amount within ten (10) days of the invoice date, specifically identify the reason for the dispute, and pay all undisputed amounts owed while the dispute is under negotiation.

<u>Confidentiality</u>.  Agency shall abide by its obligation of confidentiality pursuant to the terms of that certain letter agreement, dated September 11, 2012, between Agency and Client.

<u>Ownership; Use Of Materials</u>.  Subject to any third party rights in licensed elements, Client shall be sole owner of all rights in and to materials developed and produced by Agency on Client's behalf, provided Client has paid all invoices due and owing to Agency pursuant to this Agreement.  Client understands and agrees that its rights in any third party materials or any services including, without limitation, stock photos, licensed materials or talent and talent residuals, are subject to any terms and conditions set forth in any applicable agreement.  Upon prior written approval by client, Agency may use Client's name and any non-confidential materials produced hereunder in Agency's portfolio, on Agency's web site, intranet, and for internal and trade purposes.  Agency will be required to obtain Client's advance approval to utilize Client's trademarks or any Client materials or information to be in press releases, Agency brochures, or submission for awards.

<u>Client Obligations</u>.  Client shall be responsible for the accuracy, completeness and propriety of:  (a) information concerning Client's organization, products, services and Client's competitors' products and services provided to Agency by Client or by a third party authorized by Client; (b) any ideas or directions provided to Agency by Client or by a third party authorized by Client; (c) compliance with all securities laws and regulations and/or all other laws and regulations applicable to Client's business; (d) rights, licenses and permissions to use materials furnished to Agency by Client or on Client's behalf in the performance of this Agreement; and (e) the content of any press releases or other disseminated statements approved by Client.

<u>Indemnification</u>.  Client shall defend, indemnify and hold Agency harmless from and against any loss, damage, liability, claim, demand, action, cost and expense (including reasonable attorneys' fees and costs) (collectively "Loss") resulting from claims made against Agency by any third party, including any governmental entity, which arises out of or in connection with Client's obligations above; information or materials supplied by Client or a third party authorized by Client to Agency; as a result of any governmental investigation, proceeding or administrative hearing regarding the Services; or the nature or use of any of Client's products, services or premiums, including any issue of safety, product liability or performance of Client's products, services or premiums.  Client's indemnity obligations shall include, without limitation, payment to Agency for any and all personnel time incurred in connections with any such claim, suit, proceeding or subpoena based upon Agency's then-current hourly rates.



weber
shandwick
engaging, always.

Allan Koenig
Vice President, Corporate Communications
Energy Future Holdings
1601 Bryan Street
Dallas, Texas 75201

**Subject: Statement of Work and Budget Authorization**

This Statement of Work ("SOW"), dated April 21, 2014 sets forth the terms and conditions under which Weber Shandwick agrees to provide services to Energy Future Holdings.

**Project:**       **Executive Presentation Design Support**

**Description:**   [See Attached A – Statement of Work]

**Term of project:**
                    Start Date:  March, 2014
                    End Date:  April, 2014

**Total Project Budget:***       **Estimated FEES:  $5,000**
                                  **Estimated Expenses:  N/A**

**\* Project Budget.** The Project Budget will be agreed upon in advance of commencement of work by Agency. If the scope of the project changes, Agency will notify Client in writing with a revised Project Budget and/or incremental budget required to complete the project. Client agrees to approve the revised scope of work and incremental budget or re-prioritize the scope of Agency's services in order to stay within the original Project Budget. The Fee for services rendered by Agency will not exceed the approved Project Budget without prior written authorization from Client.

**Billing Schedule:**  Entire budget will be invoiced upon approval and delivery of presentation.

By signing below, the parties are agreeing to the terms of this SOW.

**Weber Shandwick - The Studio @ Weber Shandwick**

By: _Suzie Vandekop_                          Date: _4·21·14_
      Name & Title of Authorized Signatory

**Energy Future Holdings**

By: _Allan Koenig_                            Date: _4/21/2014_
      Name & Title of Authorized Signatory

G

| The Studio @ Weber Shandwick Statement of Work  - Attachment A | | |
|---|---|---|
| **Description:** | | 4/21/14 |
| **Executive Presentation Design Support** | | |
| **Includes:** | | |
| - Art production, design and flash animation for executive PowerPoint presentation<br>- Includes updates, changes, graphic design and animation as requested by executive team from March 31, 2014 – April 30, 2014 | | |
| **Not Included:** | | |
| Any additional tactics not outlined here are not included. An addendum Scope of Work can be executed if desired. | | |
| **Production Estimate Breakdown** | | **Amount** |
| Executive Presentation Design Support | | $5,000 |
| **TOTAL** | | **$5,000** |

### Other Conditions - Attachment B

<u>Stop Work Order</u>.   It is understood that the costs listed here are estimated only and do not necessarily represent final prices at which this work will be billed.  Orders to stop approved project will result in 50% of signed estimate fees.

<u>Payment to Agency</u>.  Payment is due no later than forty-five (45) days from the invoice date.  In the event payment is not timely received, Agency reserves the right to charge Client simple interest on any past due amounts computed at 1 1/2% over the prime rate of interest in effect at Citibank, N.A., in New York City until such payment is received.  Client agrees to reimburse Agency for any costs incurred (including reasonable attorneys' fees and court costs) in connection with Agency's attempts to collect any sums that are over forty-five (45) days past due.  In the event of a disputed charge, Client shall notify Agency in writing of the disputed amount within ten (10) days of the invoice date, specifically identify the reason for the dispute, and pay all undisputed amounts owed while the dispute is under negotiation.

<u>Confidentiality</u>.   Agency shall abide by its obligation of confidentiality pursuant to the terms of that certain letter agreement, dated September 11, 2012, between Agency and Client.

<u>Ownership; Use Of Materials</u>.  Subject to any third party rights in licensed elements, Client shall be sole owner of all rights in and to materials developed and produced by Agency on Client's behalf, provided Client has paid all invoices due and owing to Agency pursuant to this Agreement.  Client understands and agrees that its rights in any third party materials or any services including, without limitation, stock photos, licensed materials or talent and talent residuals, are subject to any terms and conditions set forth in any applicable agreement.  Upon prior written approval by client, Agency may use Client's name and any non-confidential materials produced hereunder in Agency's portfolio, on Agency's web site, intranet, and for internal and trade purposes. Agency will be required to obtain Client's advance approval to utilize Client's trademarks or any Client materials or information to be in press releases, Agency brochures, or submission for awards.

<u>Client Obligations</u>.  Client shall be responsible for the accuracy, completeness and propriety of:  (a) information concerning Client's organization, products, services and Client's competitors' products and services provided to Agency by Client or by a third party authorized by Client; (b) any ideas or directions provided to Agency by Client or by a third party authorized by Client; (c) compliance with all securities laws and regulations and/or all other laws and regulations applicable to Client's business; (d) rights, licenses and permissions to use materials furnished to Agency by Client or on Client's behalf in the performance of this Agreement; and (e) the content of any press releases or other disseminated statements approved by Client.

<u>Indemnification</u>.  Client shall defend, indemnify and hold Agency harmless from and against any loss, damage, liability, claim, demand, action, cost and expense (including reasonable attorneys' fees and costs) (collectively "Loss") resulting from claims made against Agency by any third party, including any governmental entity, which arises out of or in connection with Client's obligations above; information or materials supplied by Client or a third party authorized by Client to Agency; as a result of any governmental investigation, proceeding or administrative hearing regarding the Services; or the nature or use of any of Client's products, services or premiums, including any issue of safety, product liability or performance of Client's products, services or premiums.  Client's indemnity obligations shall include, without limitation, payment to Agency for any and all personnel time incurred in connections with any such claim, suit, proceeding or subpoena based upon Agency's then-current hourly rates.



weber
shandwick

engaging, always.

Lorinda Birdsong
Energy Future Holdings
1601 Bryan Street
Dallas, Texas 75201

**Subject: Statement of Work and Budget Authorization**

This Statement of Work ("SOW"), dated June 2, 2014 sets forth the terms and conditions under which Weber Shandwick agrees to provide services to Energy Future Holdings.

**Project:**    Maximo 'By the Numbers' Infographic

~~**Description:** [See Attached A – Statement of Work]~~

**Term of project:**
> Start Date:  June, 2014
> End Date:  June, 2014

**Total Project Budget:***        **Estimated FEES: $1,200**
                                  **Estimated Expenses: N/A**

*** Project Budget.** The Project Budget will be agreed upon in advance of commencement of work by Agency. If the scope of the project changes, Agency will notify Client in writing with a revised Project Budget and/or incremental budget required to complete the project. Client agrees to approve the revised scope of work and incremental budget or re-prioritize the scope of Agency's services in order to stay within the original Project Budget. The Fee for services rendered by Agency will not exceed the approved Project Budget without prior written authorization from Client.

**Billing Schedule:**  Entire budget will be invoiced upon approval and delivery of video.

By signing below, the parties are agreeing to the terms of this SOW.

**The Studio @ Weber Shandwick**

By: _Leslie Vande Kop_                    Date: _6-5-14_
      Name & Title of Authorized Signatory

**Energy Future Holdings**

By: _[signature]_                          Date: _6/4/14_
      Name & Title of Authorized Signatory

_Director, Supply Chain_

## Other Conditions - Attachment B

Stop Work Order.  It is understood that the costs listed here are estimated only and do not necessarily represent final prices at which this work will be billed.  Orders to stop approved project will result in 50% of signed estimate fees.

Payment to Agency.  Payment is due no later than forty-five (45) days from the invoice date.  In the event payment is not timely received, Agency reserves the right to charge Client simple interest on any past due amounts computed at 1 1/2% over the prime rate of interest in effect at Citibank, N.A., in New York City until such payment is received.  Client agrees to reimburse Agency for any costs incurred (including reasonable attorneys' fees and court costs) in connection with Agency's attempts to collect any sums that are over forty-five (45) days past due.  In the event of a disputed charge, Client shall notify Agency in writing of the disputed amount within ten (10) days of the invoice date, specifically identify the reason for the dispute, and pay all undisputed amounts owed while the dispute is under negotiation.

Confidentiality.   Agency shall abide by its obligation of confidentiality pursuant to the terms of that certain letter agreement, dated September 11, 2012, between Agency and Client.

Ownership; Use Of Materials.  Subject to any third party rights in licensed elements, Client shall be sole owner of all rights in and to materials developed and produced by Agency on Client's behalf, provided Client has paid all invoices due and owing to Agency pursuant to this Agreement.  Client understands and agrees that its rights in any third party materials or any services including, without limitation, stock photos, licensed materials or talent and talent residuals, are subject to any terms and conditions set forth in any applicable agreement.  Upon prior written approval by client, Agency may use Client's name and any non-confidential materials produced hereunder in Agency's portfolio, on Agency's web site, intranet, and for internal and trade purposes. Agency will be required to obtain Client's advance approval to utilize Client's trademarks or any Client materials or information to be in press releases, Agency brochures, or submission for awards.

Client Obligations.   Client shall be responsible for the accuracy, completeness and propriety of:  (a) information concerning Client's organization, products, services and Client's competitors' products and services provided to Agency by Client or by a third party authorized by Client; (b) any ideas or directions provided to Agency by Client or by a third party authorized by Client; (c) compliance with all securities laws and regulations and/or all other laws and regulations applicable to Client's business; (d) rights, licenses and permissions to use materials furnished to Agency by Client or on Client's behalf in the performance of this Agreement; and (e) the content of any press releases or other disseminated statements approved by Client.

Indemnification.  Client shall defend, indemnify and hold Agency harmless from and against any loss, damage, liability, claim, demand, action, cost and expense (including reasonable attorneys' fees and costs) (collectively "Loss") resulting from claims made against Agency by any third party, including any governmental entity, which arises out of or in connection with Client's obligations above; information or materials supplied by Client or a third party authorized by Client to Agency; as a result of any governmental investigation, proceeding or administrative hearing regarding the Services; or the nature or use of any of Client's products, services or premiums, including any issue of safety, product liability or performance of Client's products, services or premiums.  Client's indemnity obligations shall include, without limitation, payment to Agency for any and all personnel time incurred in connections with any such claim, suit, proceeding or subpoena based upon Agency's then-current hourly rates.



Allan Koenig
Energy Future Holdings
1601 Bryan Street
Dallas, Texas 75201

**Subject:  Statement of Work and Budget Authorization**

This Statement of Work ("SOW"), dated June 2, 2014 sets forth the terms and conditions under which Weber Shandwick agrees to provide services to Energy Future Holdings.

**Project:     Introducing ATLAS Whiteboard Video**

**Description:** [See Attached A – Statement of Work]

**Term of project:**
           Start Date:  June, 2014
           End Date:  June, 2014

**Total Project Budget:\***     **Estimated FEES:  $4,500**
                                **Estimated Expenses:  $500**

**\* Project Budget.**  The Project Budget will be agreed upon in advance of commencement of work by Agency. If the scope of the project changes, Agency will notify Client in writing with a revised Project Budget and/or incremental budget required to complete the project.  Client agrees to approve the revised scope of work and incremental budget or re-prioritize the scope of Agency's services in order to stay within the original Project Budget.  The Fee for services rendered by Agency will not exceed the approved Project Budget without prior written authorization from Client.

**Billing Schedule:**   Entire budget will be invoiced upon approval and delivery of video.

By signing below, the parties are agreeing to the terms of this SOW.

**The Studio @ Weber Shandwick**

By: _~~Acielle Vandekop~~_          Date: _6·10·14_
     Name & Title of Authorized Signatory

**Energy Future Holdings**

By: _Allan Koenig,  VP_          Date: _6 / 10 / 2014_
     Name & Title of Authorized Signatory

| The Studio @ Weber Shandwick<br>Statement of Work  - Attachment A | | |
|---|---|---|
| **Description:** | | 6/2/14 |

**Introducing ATLAS Whiteboard Video**

**Includes:**
    Pre-production - $1,200
- Includes conceptual development of storyline & copywriting for an up to :90 whiteboard animation video
  - Simple, straightforward concept – estimated 12 +/- graphics to be incorporated into animation
  - Up to 4 rounds of revisions to script are included
- Includes review of voiceover talents and sharing with client for approval
  - Includes securing voiceover talent, booking, and sharing audio for approvals

    Production - $3,000
- Upon final approval of script and voiceover, includes art production of graphic animation
  - Graphic animation style will be presented first via a short :15 or so teaser, to make sure the style / look is approved
    - Up to 4 rounds of revisions on style are included
  - Upon approval, entire video will be animated
    - Includes incorporation of approved voiceover and music

    Project management - $300
- Includes working with EFH team, participating in meetings, routing items for approvals
- Overall quality control

**Estimated OOPs:  $500**
- Voiceover - $500 +- (on average, we experience the voiceover for a :60-:90 reading to be in the $500 range or less)
- Music – we will use royalty-free music
- All final files provided to EFH at conclusion of project

**Not Included:**
Any additional tactics not outlined here are not included. An addendum Scope of Work can be executed if desired.

| Production Estimate Breakdown | Amount |
|---|---|
| Pre-production | $1,200 |
| Production | $3,000 |
| Post-production | $300 |
| OOPS - Video Insurance and travel costs (mileage/meals) | $500 |
| **TOTAL** | $5,000 |

1717 Main Street, Suite 1600    T 469 375 0223
Dallas, TX 75201    F 469 375 0201
www.webershandwick.com

### Other Conditions - Attachment B

<u>Stop Work Order</u>.  It is understood that the costs listed here are estimated only and do not necessarily represent final prices at which this work will be billed.  Orders to stop approved project will result in 50% of signed estimate fees.

<u>Payment to Agency</u>.  Payment is due no later than forty-five (45) days from the invoice date.  In the event payment is not timely received, Agency reserves the right to charge Client simple interest on any past due amounts computed at 1 1/2% over the prime rate of interest in effect at Citibank, N.A., in New York City until such payment is received.  Client agrees to reimburse Agency for any costs incurred (including reasonable attorneys' fees and court costs) in connection with Agency's attempts to collect any sums that are over forty-five (45) days past due.  In the event of a disputed charge, Client shall notify Agency in writing of the disputed amount within ten (10) days of the invoice date, specifically identify the reason for the dispute, and pay all undisputed amounts owed while the dispute is under negotiation.

<u>Confidentiality</u>.  Agency shall abide by its obligation of confidentiality pursuant to the terms of that certain letter agreement, dated September 11, 2012, between Agency and Client.

<u>Ownership; Use Of Materials</u>.  Subject to any third party rights in licensed elements, Client shall be sole owner of all rights in and to materials developed and produced by Agency on Client's behalf, provided Client has paid all invoices due and owing to Agency pursuant to this Agreement.  Client understands and agrees that its rights in any third party materials or any services including, without limitation, stock photos, licensed materials or talent and talent residuals, are subject to any terms and conditions set forth in any applicable agreement.  Upon prior written approval by client, Agency may use Client's name and any non-confidential materials produced hereunder in Agency's portfolio, on Agency's web site, intranet, and for internal and trade purposes. Agency will be required to obtain Client's advance approval to utilize Client's trademarks or any Client materials or information to be in press releases, Agency brochures, or submission for awards.

<u>Client Obligations</u>.  Client shall be responsible for the accuracy, completeness and propriety of:  (a) information concerning Client's organization, products, services and Client's competitors' products and services provided to Agency by Client or by a third party authorized by Client; (b) any ideas or directions provided to Agency by Client or by a third party authorized by Client; (c) compliance with all securities laws and regulations and/or all other laws and regulations applicable to Client's business; (d) rights, licenses and permissions to use materials furnished to Agency by Client or on Client's behalf in the performance of this Agreement; and (e) the content of any press releases or other disseminated statements approved by Client.

<u>Indemnification</u>.  Client shall defend, indemnify and hold Agency harmless from and against any loss, damage, liability, claim, demand, action, cost and expense (including reasonable attorneys' fees and costs) (collectively "Loss") resulting from claims made against Agency by any third party, including any governmental entity, which arises out of or in connection with Client's obligations above; information or materials supplied by Client or a third party authorized by Client to Agency; as a result of any governmental investigation, proceeding or administrative hearing regarding the Services; or the nature or use of any of Client's products, services or premiums, including any issue of safety, product liability or performance of Client's products, services or premiums.  Client's indemnity obligations shall include, without limitation, payment to Agency for any and all personnel time incurred in connections with any such claim, suit, proceeding or subpoena based upon Agency's then-current hourly rates.


weber
shandwick
engaging, always.

Rebekah Hamilton Kay
Director, Political Affairs
Energy Future Holdings
1601 Bryan Street
Dallas, Texas 75201

**Subject:  Statement of Work and Budget Authorization**

This Statement of Work ("SOW"), dated May 29, 2014 sets forth the terms and conditions under which Weber Shandwick agrees to provide services to Energy Future Holdings.

**Project:        EFH Annual Report (2013)**

**Description:**    [See Attached A – Statement of Work]

**Term of project:**
              Start Date:  May, 2014
              End Date:   June, 2014

**Total Project Budget:***        **Estimated FEES:  $3,000**
                          **Estimated Expenses:  N/A**

***Project Budget.**  The Project Budget agreed upon above is fixed, non-reconcilable and earned when billed by Agency (the "Fee"). If the project scope changes, Agency will notify Client in writing detailing the changes, and additional fees ("Additional Fees") to implement the changes. Client agrees to approve the revised scope and Additional Fees or re-prioritize work to not exceed the Project Budget. The Fee and any Additional Fees will be billed upon completion of the deliverables.

**Billing Schedule:**  Entire budget will be invoiced upon approval of artwork and final art files delivered to EFH.

By signing below, the parties are agreeing to the terms of this SOW.

**The Studio @ Weber Shandwick**

By: _Leela VandeKop_____        Date: _6·4·14_____
Name & Title of Authorized Signatory


**Energy Future Holdings**

By: _BSA___ Senior Analyst____        Date: _6/4/14_____
Name & Title of Authorized Signatory

| The Studio @ Weber Shandwick<br>Statement of Work - Attachment A | | |
|---|---|---|
| **Description:** | | 5/29/14 |
| EFH Annual Report (2013) | | |
| **Includes:** | | |
| <u>2013 EFH Employee PAC Annual Report - $3,000</u> | | |
| - Includes art production and layout of 34-page annual report including re-working of graphics (tables/charts and map) as required<br><br>- Includes up to 2 rounds of revisions on each page<br><br>- Includes photography search and placement | | |
| Printing is not included. | | |
| Any additional tactics not outlined here are not included. An addendum Scope of Work can be executed if desired. | | |
| **Production Estimate Breakdown** | | Amount |
| EFH Annual Report (2013) | | $3,000 |
| **TOTAL** | | **$3,000** |

1717 Main Street, Suite 1600    T 409 375 0223
Dallas, TX 75201               F 469 375 0201
www.webershandwick.com

2

### Other Conditions - Attachment B

Stop Work Order.   It is understood that the costs listed here are estimated only and do not necessarily represent final prices at which this work will be billed.  Orders to stop approved project will result in 50% of signed estimate fees.

Payment to Agency.  Payment is due no later than forty-five (45) days from the invoice date.  In the event payment is not timely received, Agency reserves the right to charge Client simple interest on any past due amounts computed at 1 1/2% over the prime rate of interest in effect at Citibank, N.A., in New York City until such payment is received.  Client agrees to reimburse Agency for any costs incurred (including reasonable attorneys' fees and court costs) in connection with Agency's attempts to collect any sums that are over forty-five (45) days past due.  In the event of a disputed charge, Client shall notify Agency in writing of the disputed amount within ten (10) days of the invoice date, specifically identify the reason for the dispute, and pay all undisputed amounts owed while the dispute is under negotiation.

Confidentiality.   Agency shall abide by its obligation of confidentiality pursuant to the terms of that certain letter agreement, dated September 11, 2012, between Agency and Client.

Ownership; Use Of Materials.  Subject to any third party rights in licensed elements, Client shall be sole owner of all rights in and to materials developed and produced by Agency on Client's behalf, provided Client has paid all invoices due and owing to Agency pursuant to this Agreement.  Client understands and agrees that its rights in any third party materials or any services including, without limitation, stock photos, licensed materials or talent and talent residuals, are subject to any terms and conditions set forth in any applicable agreement.  Upon prior written approval by client, Agency may use Client's name and any non-confidential materials produced hereunder in Agency's portfolio, on Agency's web site, intranet, and for internal and trade purposes. Agency will be required to obtain Client's advance approval to utilize Client's trademarks or any Client materials or information to be in press releases, Agency brochures, or submission for awards.

Client Obligations.  Client shall be responsible for the accuracy, completeness and propriety of:  (a) information concerning Client's organization, products, services and Client's competitors' products and services provided to Agency by Client or by a third party authorized by Client; (b) any ideas or directions provided to Agency by Client or by a third party authorized by Client; (c) compliance with all securities laws and regulations and/or all other laws and regulations applicable to Client's business; (d) rights, licenses and permissions to use materials furnished to Agency by Client or on Client's behalf in the performance of this Agreement; and (e) the content of any press releases or other disseminated statements approved by Client.

Indemnification.  Client shall defend, indemnify and hold Agency harmless from and against any loss, damage, liability, claim, demand, action, cost and expense (including reasonable attorneys' fees and costs) (collectively "Loss") resulting from claims made against Agency by any third party, including any governmental entity, which arises out of or in connection with Client's obligations above; information or materials supplied by Client or a third party authorized by Client to Agency; as a result of any governmental investigation, proceeding or administrative hearing regarding the Services; or the nature or use of any Client's products, services or premiums, including any issue of safety, product liability or performance of Client's products, services or premiums.  Client's indemnity obligations shall include, without limitation, payment to Agency for any and all personnel time incurred in connections with any such claim, suit, proceeding or subpoena based upon Agency's then-current hourly rates.