## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) | Case No. 14-10979 (CSS) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | **Re: D.I. 1222** |

### AMENDED MOTION OF ENERGY FUTURE
### HOLDINGS CORP., *ET AL.*, FOR ENTRY OF AN ORDER
### AUTHORIZING CERTAIN OF THE DEBTORS TO CONTINUE
### HONORING OBLIGATIONS TO RETIREES AND NON-INSIDER
### EMPLOYEES ON ACCOUNT OF NON-QUALIFIED BENEFIT PROGRAMS

The above-captioned debtors and debtors in possession (collectively, the "Debtors") file

this motion (this "Motion") for entry of an order, substantially in the form attached hereto as

**Exhibit A** (the "Order"), authorizing the Participating Debtors (as defined herein) to continue to

honor certain obligations to retirees and non-insider employees on account of two Non-Qualified

Benefit Programs (as defined herein) in the ordinary course of business (approximately $25.2

million in the aggregate).   In support of this Motion, the Debtors submit the *Declaration of*

*Carrie Kirby, Executive Vice President of Human Resources for Energy Future Holdings Corp.*

*in Support of the Amended Motion of Energy Future Holdings Corp.,* et al.*, for an Order*

*Authorizing Certain of the Debtors to Continue Honoring Obligations to Retirees and*

*Non-Insider Employees on Account of Non-Qualified Benefit Programs* (the "Kirby

---

[1] The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810.  The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201.  Due to the large number of debtors in these chapter 11 cases, for which joint administration has been granted, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

Declaration"). In further support of this Motion, the Debtors respectfully state as follows.

## Jurisdiction and Venue

1.     The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Debtors confirm their consent pursuant to rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Bankruptcy Rules") to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2.     Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.     The bases for the relief requested in this Motion are sections 105(a), 362, 363, and 507(a)(4)-(5) of title 11 of the United States Code (the "Bankruptcy Code"), and rule 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## Relief Requested

4.     By this Motion, the Debtors seek entry of an Order authorizing, but not directing, certain of the Debtors (the "Participating Debtors")[2] to honor certain of their obligations to current, non-insider and former employees under the Non-Qualified Benefit Programs

---

[2]    The Participating Debtors are composed of those Debtors whose former or current employees participate in at least one of the Non-Qualified Benefit Programs: 4Change Energy Company; EFH Corporate Service Company; Energy Future Holdings Corp. ("EFH Corp."); LSGT Gas Company LLC; Luminant Energy Company LLC; Luminant Generation Company LLC; Luminant Mining Services Company LLC; and TXU Energy Retail Company LLC.

(approximately $25.2 million in the aggregate).[3]

## Background

5.      On April 29, 2014 (the "Petition Date"), each of the Debtors filed a voluntary petition with the Court under chapter 11 of the Bankruptcy Code.  The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  The Court has entered an order for joint administration of these chapter 11 cases.  The Court has not appointed a trustee.  The Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") formed an official committee of unsecured creditors in these chapter 11 cases on May 13, 2014 [D.I. 420].  Further information regarding the Debtors' business operations and capital structure is set forth in the declaration of Paul Keglevic in support of the Debtors' first day motions [D.I. 98].

## I.      Overview of the Non-Qualified Benefit Programs.

6.      The Debtors have, through the Participating Debtors, historically offered two non-qualified benefit programs to certain eligible employees: (a) a non-contributory, non-qualified pension plan that provides retirement benefits to participants whose tax-qualified pension benefits are limited due to restrictions under the Internal Revenue Code and/or deferrals to other defined benefit programs (the "SSRP")[4] and (b) a contributory, non-qualified defined contribution plan that permitted participants to voluntarily defer a portion of their base salary

---

[3]   For the avoidance of doubt, the Debtors are not seeking relief with respect to any employees who are excluded from the relief authorized in the requested in the *Order (Second Final) Authorizing the Debtors to (A) Pay Certain Prepetition Amounts on Account of Non-Insider Compensation Programs and (B) Continue the Non-Insider Compensation Programs in the Ordinary Course of Business on a Postpetition Basis* [D.I. 1420].

[4]   The Participating Debtors historically maintained a First Supplemental Retirement Plan. All amounts under the First Supplemental Retirement Plan were paid through a secular trust in 2013 and neither the trust nor the First Supplemental Retirement Plan is in existence as of the Petition Date.  All plan documentation related to the Second Supplemental Retirement Plan refers to such plan as the "Second" Supplemental Retirement Plan and for the sake of consistency, the Participating Debtors have used the same nomenclature in this Motion.

and/or annual incentive plan bonuses (the "SDP" and, together with the SSRP, the "Non-Qualified Benefit Programs"). *See* Kirby Decl. ¶ 3.

7.      Obligations under the Non-Qualified Benefit Programs are, in part, funded by rabbi trusts that EFH Corp owns. *See* Kirby Decl. ¶ 4. The assets in the trusts consist of cash, fixed income securities, and variable life insurance contracts. *Id.* As of the Petition Date, the SDP rabbi trust has approximately $9.9 million in assets and the SSRP rabbi trusts have approximately $13.8 million in assets. *Id.* The assets in the rabbi trusts are subject to substantial restrictions and are available to satisfy creditor claims against the Participating Debtors. *Id.* In the absence of these restrictions, eligible employees would have been required to include any contributions to the rabbi trust (and any interest or other earnings of the rabbi trust) in their gross taxable income in the year in which the contribution was made or the interest was obtained. *See McAllister v. Resolution Trust Corp.*, 201 F.3d 570, 572-73, 575 (5th Cir. 2000).

8.      The Participating Debtors froze the Non-Qualified Benefit Programs in December 2012 such that no current employee can join the Non-Qualified Benefit Programs and previously participating current employees can no longer contribute to the Non-Qualified Benefit Programs. *See* Kirby Decl. ¶ 5. That said, the Participating Debtors have continued to honor their obligations under the Non-Qualified Benefit Programs and, by this Motion, seek to continue honoring certain of these obligations, specifically to retirees and current, non-insider employees, during these chapter 11 cases. *Id.*

9.      The Participating Debtors' obligations under the Non-Qualified Benefit Programs represent compensation that participating current, non-insider and former employees earned in the ordinary course of business that was either added to their retirement through the SSRP or received at a later day through the SDP, if the employee so opted. *See* Kirby Decl. ¶ 6. These

current and former employees are leaders within the Debtors' businesses as well as leaders within the Debtors' industry and communities.  As such, they are in a position to contribute to the stabilization of the workforce and communities at a time of uncertainty, thereby ensuring continuity of operations.  *Id.*  They are also well-equipped to preserve the Debtors' long-standing and crucial relationships with key constituents in the Texas energy market, including various regulators, political leaders, community leaders, and vendors that are necessary for the Debtors' business operations.  *Id.*

10.    Importantly, many of the retirees receiving payments under the Non-Qualified Benefit Programs have been receiving such payments for over twenty years and rely on such payments to meet ***basic*** living costs.  *See* Kirby Decl. ¶ 7.  These retirees are by and large in the 70-90 year age range and, in some instances, do not have access to other funds.  *Id.*  Inability to access payments under the Non-Qualified Benefit Programs will have an ***immediate*** and ***substantially harmful*** effect on their day-to-day lives and, potentially in some cases, their health and welfare.  *Id.*

**A.    Second Supplemental Retirement Plan.**

11.    As of the Petition Date, the Participating Debtors are obligated to provide benefits to a total of 274 current and former employees (with a total obligation of approximately $21.2 million) under the SSRP.  *See* Kirby Decl. ¶ 8.  Importantly, however, the Participating Debtors do not seek to make payments to any current employee who may be considered an insider under the Bankruptcy Code.  *Id.*  By this Motion, the Participating Debtors seek to honor their obligations to current non-insider employees and former employees under the SSRP (a total obligation of approximately $19.6 million).

12.     As described below, these current, non-insider and former employees are eligible to receive either a cash benefit or a traditional defined benefit.[5]  *See* Kirby Decl. ¶ 9.  The current, non-insider and former employees who are either currently receiving benefits under the SSRP or who are entitled to receive such benefits in the future upon achieving certain eligibility metrics are described as follows (collectively, the "SSRP Beneficiaries"):

- ***SSRP Retirees***. There are 162 retirees who currently receive traditional benefits under the SSRP (collectively, the "SSRP Retirees").  The Participating Debtors' total outstanding obligation on account of SSRP Retirees is approximately $15.3 million.  *Id.*

- ***SSRP Term Vested Participants***. There are 85 participants whose benefits have vested but who are not yet eligible to receive payments, because, for example, such former employees have not attained the age necessary to receive traditional benefits or have not participated for a minimum of ten years, as is required to obtain a cash benefit (collectively, the "SSRP Term Vested Participants").  52 of the SSRP Term Vested Participants will receive a cash benefit that EFH Corp. will pay as a lump sum.  The remaining 33 SSRP Term Vested Participants will receive a traditional benefit which EFH Corp. will pay on a monthly basis.  The Participating Debtors' total outstanding obligation on account of the SSRP Term Vested Participants is approximately $4.1 million. *Id.*

- ***SSRP Active Employees***.  There are 15 active employees who have earned but not yet received any payments under the Second Supplemental Retirement Plan.  Approximately 7 of these employees may be considered insiders under the Bankruptcy Code.  The Participating Debtors do not seek any relief with respect to these employees.  The remaining eligible employees are entitled to receive either a cash balance benefit (that EFH Corp. will pay as a lump sum) or a traditional defined benefit at the time of retirement (collectively, the "SSRP Active Employees").    The Participating Debtors' total outstanding

---

[5]   A ***cash benefit*** is a defined aggregate amount that is paid out either as a lump sum or in the form of monthly payments, at the participant's election at the time of deferral.  A ***traditional benefit*** does not have a defined aggregate amount but, rather, has a defined monthly payment that is paid until the participant's death.

obligation on account of the SSRP Active Employees is approximately $207,000.[6] *Id.*

13.    EFH Corp. uses the services of Fidelity to pay those participants who are entitled to payments under the SSRP. *See* Kirby Decl. ¶ 10. Each month, EFH Corp. funds its obligations under the SSRP to Fidelity and Fidelity, in turn, pays each participant. *Id.* On average, EFH Corp. pays Fidelity approximately $5,600 on a monthly basis for its services. *Id.* EFH Corp. also pays The Bank of New York Mellon approximately $1,750 on a quarterly basis for its services as trustee of the SSRP rabbi trusts. *Id.* As of the Petition Date, approximately $32,000 is due and payable on account of these administration costs. *Id.*

14.    Importantly, the SSRP Retirees include approximately 20 retirees affiliated with an entity the Debtors acquired in 1997. *See* Kirby Decl. ¶ 11. As part of the acquisition, the Participating Debtors absorbed the retirement obligations owed to the EBASCO retirees. *Id.* The Participating Debtors' total outstanding obligation on account of the SSRP Retirees, approximately $17 million, includes approximately $1 million attributable to the EBASCO participant retirees. *Id.* Each EBASCO retiree is entitled to receive, on average, approximately $570 per month through the SSRP. *Id.* These retirees, several in their 80s and 90s, were never employed by the Debtors and rely heavily on retirement funds from the SSRP. *Id.*

**B.    The Salary Deferral Program.**

15.    The SDP historically permitted participating employees to contribute up to 50%

---

[6]    There are approximately 12 currently employees of Oncor Electric Delivery Holding Company LLC (a non-Debtor affiliate of the Debtors, "Oncor") who spent a portion of their career working for the Debtors before moving to Oncor. These employees accrue benefits under the Second Supplemental Retirement Plan in connection with their service to the Debtors. Six of these employees will be entitled to a cash benefit and six will be entitled to a traditional defined benefit. EFH Corp.'s total payment obligations on account of these 12 Oncor employees, determined based on how many years each such employee spent at the Debtors as opposed to at Oncor, cannot be determined with certainty while such employees are still working at Oncor. For illustrative purposes, assuming all such employees retired on December 31, 2013, EFH Corp.'s total outstanding obligation on account of these 12 Oncor employees would be approximately $25,000.

7

of their base salary and up to 85% of their annual incentive plan bonus.  *See* Kirby Decl. ¶ 12.

As of the Petition Date, the Participating Debtors are obligated to provide benefits to a total of 72

current and former employees (with a total obligation of approximately $6 million) under the

SDP.  *Id*.  As described below, the Participating Debtors only seek to honor obligations to former

employees eligible to receive payments under the SDP (approximately $5.6 million in the

aggregate).

16.    Benefits under the SDP vest over various periods of time for each participant and,

once vested, the trustee for the SDP (The Bank of New York Mellon) distributes the benefits as

either a lump sum or as annual installments, depending on the participant's election at the date of

deferral.  *See* Kirby Decl. ¶ 13.   There are 53 former employee participants in the SDP

(collectively, the "SDP Retirees").  *Id.*   EFH Corp. pays all of the benefits owed to the SDP

Retirees either as a lump sum or in monthly installments, depending on the participant's election

at the date of deferral.  *Id.*  The Participating Debtors' total outstanding obligation on account of

the SDP Retirees is approximately $5.6 million.[7]  *Id.*  On average, EFH Corp. pays The Bank of

New York Mellon approximately $4,500 each quarter to administer the SDP, and approximately

$9,000 is due and payable as of the Petition Date.  *Id.*

---

[7]    There are 19 active employee participants in the SDP, approximately 4 of whom may be considered insiders
under the Bankruptcy Code.  The Participating Debtors do not seek any relief with respect to these employees.
The remaining 15 employees who participate in the SDP are entitled to receive EFH Corp. stock.  Under the
terms of the relevant plan documents, this stock must remain in a restricted account until the occurrence of an
"event" as defined in such plan documents.  Upon the occurrence of an "event," the participating SDP active
employees are eligible to receive the cash value of the EFH Corp. stock to which they are entitled, valued as of
the date of the "event."  The filing of these chapter 11 cases constituted an "event" and, consequently, the
eligible SDP active employees are entitled to the cash value of their EFH Corp. stock as of the Petition Date,
which is considered to be de minimis.

II.     **Honoring Obligations Under the Non-Qualified Benefit Programs is Critical to the Health and Welfare of the Debtors' Retirees and the Stability of the Debtors' Operations.**

17.     Payments under the SSRP are absolutely critical to many retirees, in particular the EBASCO retirees, who, like others across the retiree population, have been receiving payments for over 20 years and rely on these payments for basic needs.  *See* Kirby Decl. ¶ 14.  Relatedly, a number of the SSRP Retirees receive more from the SSRP than they do from a traditional retirement plan because they either opted for early retirement or participated in a buyback of their benefits in the 1980s.  *Id.*  In both cases, these retirees received a lump sum amount which was placed in the SSRP and with respect to which they are now entitled to payments.  *Id.*

18.     In addition, many of the SSRP Retirees and SDP Retirees continue to be influential within the Debtors' communities and within the Debtors' industry.  *See* Kirby Decl. ¶ 15.  The retirees' continued (and vocal) support of the Debtors' operations and business planning efforts plays an important role in the Debtors' outreach efforts and helps keep the Debtors competitive.  *Id*.  A number of these retirees continue to play active roles in the communities in which the Debtors operate, frequently interact with employees, and often interact with the Debtors' leadership team.  *Id*.  Importantly, the majority of compensation deferred in the SDP was deferred when the Participating Debtors operated as a regulated entity.  *Id*.  Under these circumstances, the SDP Retirees reasonably believed their deferred compensation would be protected and available to them upon their retirement.  *Id*.

19.     Finally, the SSRP Active Employees consist of vital business leaders, whose direction and ongoing commitment to the Debtors is indispensable during these chapter 11 cases and in the future.  *See* Kirby Decl. ¶ 16.  As the Debtors have said time and time again during their chapter 11 cases, this is a balance sheet restructuring, not an operational restructuring.  *Id*.  Operationally, the Debtors have historically been, and continue to be, leaders in their competitive

market industries and this accomplishment is in no small part due to their exceptional leadership team. *Id*.

20.     For these reasons, the Debtors seek authority, but not direction to continue to honor obligations to the SSRP Beneficiaries and the SDP Retirees in the ordinary course of business on a postpetition basis and honor related administration costs.

## Basis for Relief

### I.     Sufficient Cause Exists to Authorize the Debtors to Honor Non-Qualified Benefit Programs

21.     Courts in the Third Circuit and elsewhere generally recognize that debtors may pay prepetition claims that are essential to the continued operation of the debtor's business.  *See, e.g.*, *In re Meridian Auto. Sys.-Composite Operations, Inc.*, 372 B.R. 710, 714 (Bankr. D. Del. 2007) (granting the debtor authority to pay prepetition obligations owed to certain critical vendors); *In re Primary Health Sys., Inc.*, 275 B.R. 709, 710 (Bankr. D. Del. 2002) (allowing payment of prepetition wages upon a finding that such relief was "essential to the continued operation of the Debtors' businesses"); *In re Just for Feet, Inc.*, 242 B.R. 821, 824-45 (Bankr. D. Del. 1999) (noting that debtors may pay prepetition claims that are essential to the continued operation of the debtor's business).  Courts have relied on several legal bases in approving such relief.

22.     Courts generally recognize that debtors may pay prepetition claims under section 363(b) of the Bankruptcy Code where there is a sound business purpose for the payment of prepetition obligations, and where the debtor is able to "articulate some business justification, other than the mere appeasement of major creditors."  *See*, *e.g.*, *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) (granting debtor authority to pay prepetition wages); *Armstrong World Indus. Inc. v. James A. Phillips, Inc., (In re James A. Phillips, Inc.)*,

29 B.R. 391, 398 (Bankr. S.D.N.Y. 1983) (granting the debtor the authority to pay prepetition claims of suppliers who were potential lien claimants).

23.    Courts also recognize that payments to prepetition creditors are appropriate pursuant to section 105(a) of the Bankruptcy Code under the "doctrine of necessity" or the "necessity of payment" rule where such payments are necessary to the continued operation of the debtor's business.   *See, e.g.*, *In re Lehigh & New England Ry. Co.*, 657 F.2d 570, 581 (3d Cir. 1981) (holding that a court could authorize the payment of prepetition claims if such payment was essential to the continued operation of the debtor); *In re Penn Cent. Transp. Co.*, 467 F.2d 100, 102 n.1 (3d Cir. 1972) (holding that the necessity of payment doctrine permits "immediate payment of claims of creditors where those creditors will not supply services or material essential to the conduct of the business until their pre-reorganization claims have been paid"); *In re Friedman's, Inc.*, 2011 WL 5975283, at *3 (Bankr. D. Del. Nov. 30, 2011) ("[M]ost courts will allow payments [of prepetition claims] under the 'doctrine of necessity,' if the debtor establishes that in its business judgment making such payments is critical to the survival of the debtor's business"); *In re Columbia Gas Sys., Inc.*, 171 B.R. 189, 191–92 (Bankr D. Del. 1994) (noting that debtors may pay prepetition claims that are essential to the continued operation of the debtor's business).   The rationale for the necessity of payment rule—the rehabilitation of a debtor in reorganization cases—is "the paramount policy and goal of Chapter 11."   *Ionosphere Clubs*, 98 B.R. at 176; *Just for Feet*, 242 B.R. at 826 (finding that payment of prepetition claims to certain trade vendors was "essential to the survival of the debtor during the chapter 11 reorganization.").

24.    Here, the relief requested in this Motion will benefit the Debtors' estates and creditors by allowing the Debtors' business operations to continue without interruption. *See*

Kirby Decl. ¶ 17.  The employees and former employees that are eligible to participate in the Non-Qualified Benefit Programs are critical to the Debtors' rehabilitation efforts in two distinct ways.  *Id*.  First, these current and former employees are, and continue to be, leaders within the Debtors' *internal* businesses, and therefore, are crucial to the Debtors' efforts to maintain the continued stability of the workforce at a time when employee morale is low and attrition is potentially high.  *Id*.  Second, these employees are leaders within the Debtors' *external* businesses, and therefore are key to the Debtors preserving their role in the Texas energy market. *Id*.  Together, both current and former employees in these plans are active participants in the extended family of the Debtors created over decades of multiple generations of people across the state working for and doing business with the Debtor organizations.  *Id*.  The influence of this extended family on the stability of current and future operations of the company and the Texas energy market is significant.  *Id*.

25.    From both these perspectives, the employees eligible to participate in the Non-Qualified Benefit Programs possess indispensable institutional knowledge and experience, as well as critical relationships with key players in the Debtors' industry.  *See* Kirby Decl. ¶ 18. Following the Petition Date, employee retention may become an immediate and significant issue for the Debtors.  *Id*.  Payment of obligations arising in connection with the Non-Qualified Benefit Programs, and the continuation of these Non-Qualified Benefit Programs on a postpetition basis, will provide critical Employees with a greater sense of financial security.  *Id*.

26.    Importantly, the amounts payable under the Non-Qualified Benefit Programs reflect compensation earned by eligible employees.  *See* Kirby Decl. ¶ 19.  These amounts are *not* new performance or incentive bonuses tied to targets, but are rather amounts that employees earned in the ordinary course of business.  *Id*.  Accordingly, failure to make payments under the

Non-Qualified Benefit Programs would result in a significant and unwarranted reduction in retirement funding and security for the impacted employees.  *Id.*

27.    The importance of honoring obligations related to Non-Qualified Benefit programs has been recognized by courts in this district and others in granting relief similar to the relief requested in this Motion.  *See*, *e.g.*, *In re Neenah Enters., Inc.,* No. 10-10360 (MFW) (Bankr. D. Del. 2010) (authorizing the Debtor to immediately honor outstanding obligations in connection with a supplemental retirement plan for ten employees); *In re Lear Corp.*, No. 09-14326 (ALG) (Bankr. S.D.N.Y. 2009) (granting relief on a final basis to honor prepetition obligations in connection with several non-qualified benefit plans for certain of their key employees); *In re Charter Commc'ns, Inc.*, No. 09-11435 (JMP) (Bankr. S.D.N.Y. 2009) (authorizing the Debtors to honor their obligations to certain critical employees under a non-qualified benefit program); *In re Tousa, Inc.*, No. 008-10928 (JKO) (Bankr. S.D. Fla. 2008) (granting relief on a final basis to honor their prepetition obligations in connection with a non-qualified benefit program that included certain critical employees); *In re Global Grossing Ltd.*, No. 02-40188 (REG) (Bankr. S.D.N.Y. 2002) (allowing the Debtors to immediately honor obligations related to two non-qualified benefit plans for members of the Debtors' management team, including authority to honor prepetition obligations).[8]  By this Motion, the Debtors do not seek interim relief with respect to the Non-Qualified Benefit Programs.

## **Waiver of Bankruptcy Rules 6004(a) and 6004(h)**

28.    To implement the foregoing successfully, the Debtors seek a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the 14-day stay of an order authorizing the use,

---

[8]    Because of the voluminous nature of the orders cited herein, such orders are not attached to this motion.  Copies of these orders are available upon request to the Debtors' counsel.

sale, or lease of property under Bankruptcy Rule 6004(h).

### Reservation of Rights

29.     Nothing contained in this Motion or any actions taken by the Debtors pursuant to relief granted in the Order is intended or should be construed as:  (a) an admission as to the validity of any claim against a Debtor entity; (b) a waiver of the Debtors' rights to dispute any claim on any grounds; (c) a promise or requirement to pay any claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Motion; (e) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; or (f) a waiver or limitation of the Debtors' rights under the Bankruptcy Code or any other applicable law.  If the Court grants the relief sought in this Motion, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity of any claim or a waiver of the Debtors' rights to subsequently dispute such claim.

### Notice

30.     The Debtors shall provide notice of this Motion on the date hereof via U.S. first class mail to:  (a) the Office of the U.S. Trustee for the District of Delaware; (b) (i) the entities listed on the Consolidated List of Creditors Holding the 50 Largest Unsecured Claims filed pursuant to Bankruptcy Rule 1007(d); and (ii) proposed counsel to the Creditors' Committee; (c) Wilmington Trust, N.A., in its capacity as administrative agent under the TCEH first lien credit agreement and collateral agent under the TCEH intercreditor agreements and counsel thereto; (d) Bank of New York Mellon Trust Company, N.A., in its capacity as indenture trustee under:  (i) the TCEH unsecured pollution control revenue bonds; and (ii) the EFCH 2037 Notes due 2037, and counsel thereto; (e) American Stock Transfer & Trust Company, LLC, in its capacity as indenture trustee under:  (i) the 9.75% EFH senior unsecured notes due 2019; (ii) the

14

10.0% EFH senior unsecured notes due 2020; (iii) the 10.875% EFH LBO senior unsecured notes due 2017; (iv) the 11.25%/12.0% EFH LBO toggle notes due 2017; (v) the 5.55% EFH legacy notes (series P) due 2014; (vi) the 6.50% EFH legacy notes (series Q) due 2024; and (vii) the 6.55% EFH legacy notes (series R) due 2034, and counsel thereto; (f) Computershare Trust Company, N.A. and Computershare Trust Company of Canada, in their capacities as indenture trustee under:  (i) the 11.0% EFIH senior secured second lien notes due 2021; and (ii) the 11.75% EFIH senior secured second lien notes due 2022, and counsel thereto; (g) UMB Bank, N.A. in its capacity as indenture trustee under:  (i) the 9.75% EFIH senior unsecured notes due 2019; and (ii) the 11.25%/12.25% EFIH senior toggle notes due 2018, and counsel thereto; (h) BOKF, NA, dba Bank of Arizona, in its capacity as indenture trustee under 11.50% TCEH senior secured notes due 2020, and counsel thereto; (i) CSC Trust Company of Delaware in its capacity as indenture trustee under:  (i) the 6.875% EFIH senior secured notes due 2017; and (ii) the 10.0% EFIH senior secured notes due 2020, and counsel thereto; (j) Law Debenture Trust Company of New York in its capacity as indenture trustee under:  (i) the 10.25% TCEH senior unsecured notes due 2015; and (ii) the 10.50%/11.25% TCEH senior toggle notes due 2016, and counsel thereto; (k) Wilmington Savings Fund Society, FSB in its capacity as indenture trustee under the 15.0% TCEH senior secured second lien notes due 2021, and counsel thereto; (l) counsel to certain holders of claims against the Debtors regarding each of the foregoing described in clauses (c) through (k); (m) the agent for the TCEH debtor-in-possession financing facility and counsel thereto; (n) the agent for the EFIH debtor-in-possession financing facility and counsel thereto; (o) counsel to certain holders of equity in Texas Energy Future Holdings Limited Partnership; (p) counsel to the Ad Hoc Committee of TCEH Unsecured Noteholders; (q) counsel to the Ad Hoc Committee of TCEH Second Lien Noteholders; (r) Oncor Electric

Delivery Holdings Company LLC and counsel thereto; (s) Oncor Electric Delivery Company LLC and counsel thereto; (t) the Securities and Exchange Commission; (u) the Internal Revenue Service; (v) the Office of the United States Attorney for the District of Delaware; (w) the Office of the Texas Attorney General on behalf of the Public Utility Commission of Texas; (x) counsel to the Electric Reliability Council of Texas; (y) those parties that have requested notice pursuant to Bankruptcy Rule 2002; (z) the Bank of New York Mellon; (a)(a) Fidelity; (b)(b) the SSRP Beneficiaries; and  (c)(c) the SDP Retirees.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

### **No Prior Request**

31.     No prior request for the relief sought in this Motion has been made to this or any other court.

*[Remainder of page intentionally left blank.]*

16

WHEREFORE, the Debtors respectfully request that the Court enter the Order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested in this Motion and granting such other and further relief as is appropriate under the circumstances.

Wilmington, Delaware
Dated:  July 1, 2014

*/s/ William A. Romanowicz*

**RICHARDS, LAYTON & FINGER, P.A.**
Mark D. Collins (No. 2981)
Daniel J. DeFranceschi (No. 2732)
Jason M. Madron (No. 4431)
William A. Romanowicz (No. 5794)
920 North King Street
Wilmington, Delaware 19801
Telephone:    (302) 651-7700
Facsimile:    (302) 651-7701
Email:    collins@rlf.com
defranceschi@rlf.com
madron@rlf.com
romanowicz@rlf.com

-and-

**KIRKLAND & ELLIS LLP**
Richard M. Cieri (admitted *pro hac vice*)
Edward O. Sassower, P.C. (admitted *pro hac vice*)
Stephen E. Hessler (admitted *pro hac vice*)
Brian E. Schartz (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022-4611
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900
Email:    richard.cieri@kirkland.com
edward.sassower@kirkland.com
stephen.hessler@kirkland.com
brian.schartz@kirkland.com

-and-

James H.M. Sprayregen, P.C. (admitted *pro hac vice*)
Chad J. Husnick (admitted *pro hac vice*)
Steven N. Serajeddini (admitted *pro hac vice*)
300 North LaSalle
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200
Email:    james.sprayregen@kirkland.com
chad.husnick@kirkland.com
steven.serajeddini@kirkland.com

Proposed Co-Counsel to the Debtors and Debtors in Possession