## EXHIBIT B

**Blackline of Amended Motion**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) | Case No. 14-10979 (CSS) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | **Re:  D.I. 1229** |
| | ) | |
| | ) | **Hearing Date:  July 18, 2014 at 9:30 a.m.** |
| | ) | **Objection Deadline:  July 11, 2014 at 4:00 p.m.** |

### AMENDED MOTION OF ENERGY FUTURE HOLDINGS CORP., *ET AL.*, FOR AN ORDER AUTHORIZING THE DEBTORS TO EXECUTE THE 401(k) PLAN SEPARATION

The above-captioned debtors and debtors in possession (collectively, the "Debtors") file this motion (this "Motion") for entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Order"), authorizing the transfer of the accounts of non-Debtor Oncor Electric Delivery Holdings Company LLC ("Oncor") employees who participate in a qualified, defined contribution 401(k) plan with the Debtors (the "401(k) Plan")[2] to a new 401(k) plan to be established by Oncor (the "401(k) Plan Separation")[3] pursuant to sections 363(b) and 541(d) of the Bankruptcy Code.  In support of this Motion, the Debtors *submit the Declaration of Carrie Kirby, Executive Vice President of Human Resources for Energy Future Holdings Corp., in*

---

[1]    The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810.  The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201.  Due to the large number of debtors in these chapter 11 cases, for which joint administration has been granted, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

[2]    The 401(k) Plan is subject to the Employee Retirement Income Security Act (the "ERISA") provisions.  ERISA governs retirement plans in the United States and establishes the requirements for how a company retirement plan must be run.  Among other things, ERISA mandates that the funds set aside for retirement plans must be managed with utmost care, in order to protect the interests of employees, and stipulates that once a retirement plan vests, the employer must provide the promised vested benefits.

[3]    The documentation governing the 401(k) Plan Separation has not yet been executed.  The Debtors anticipate the finalization and execution of the documentation in the near term.

*Support of the Amended Motion of Energy Future Holdings Corp.,* et al.*, for an Order Authorizing the Debtors to Execute the 401(k) Plan Separation* (the "Kirby Declaration"). In further support of this Motion, the Debtors respectfully state as follows.

## Jurisdiction and Venue

1.    The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Debtors consent pursuant to rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Bankruptcy Rules") to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2.    Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.    The bases for the relief requested in this Motion are sections 363(b) and 541 of title 11 of the United States Code (the "Bankruptcy Code") and rules 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## Relief Requested

4.    By this Motion, the Debtors, seek entry of the Order, authorizing the 401(k) Plan Separation.

## Background

5.    On April 29, 2014 (the "Petition Date"), each of the Debtors filed a voluntary petition with the Court under chapter 11 of the Bankruptcy Code.  The Debtors are operating

their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. The Court has entered an order for joint administration of these chapter 11 cases. The Court has not appointed a trustee. The Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") formed an official committee of unsecured creditors in these chapter 11 cases on May 13, 2014 [D.I. 420]. Further information regarding the Debtors' business operations and capital structure is set forth in the declaration of Paul Keglevic in support of the Debtors' first day motions [D.I. 98].

**I.    The 401(k) Plan.**

6.    The Debtors employ approximately 5,700 employees (collectively, the "Employees"), approximately 5,650 of whom are full-time and approximately 50 of whom are part-time. *See* Kirby Decl. ¶ 3. All Employees are automatically enrolled in the 401(k) Plan within 30 days of their start date, unless they actively opt out. *Id.* Current Employees that are automatically enrolled in the 401(k) Plan contribute 3% of their base salary to the 401(k) Plan in their first year unless they choose an alternative percentage to pay. *Id.* This percentage automatically increases by 1% per year for seven years. *Id.*[4] Alternatively, Employees may choose to contribute anywhere from 1%-75% of their base pay per year.[4] *Id.* The Debtors also maintain a limited matching program under the 401(k) Plan. *Id.* Specifically, the Debtors match 100% of the first 6% of an Employee's contributions, except that as to those Employees who are covered under the traditional retirement plan formula of the Debtors' defined benefit plan, the

---

[4]    ~~Employees determined by the Debtors to be "highly compensated employees" as defined by applicable IRS regulations may contribute a maximum of 20% of their base pay.~~

[4]    Employees determined by the Debtors to be "highly compensated employees" as defined by applicable IRS regulations may contribute a maximum of 20% of their base pay.

Debtors match 75% of the first 6% of an Employee's contributions.  *Id.*  Approximately 7,000 current and former Employees participate in the 401(k) Plan.[5]

7.    Currently, approximately 4,000 current and former employees of the Debtors' non-Debtor affiliate, Oncor, participate in the 401(k) Plan as well.  *See* Kirby Decl. ¶ 4. Approximately $626 million (or 40%) of the assets in the 401(k) Plan are attributable to the Oncor participants, and approximately $927 million (or 60%) of the assets in the 401(k) Plan are attributable to Debtor participants.  *Id.*  The Debtors pay the costs of administering benefits on behalf of the Oncor employees who participate in the 401(k) Plan in the first instance, and then Oncor reimburses the Debtors on a monthly basis for these administration costs.  *Id.* Historically, Fidelity Workplace Services LLC ("Fidelity") has administered benefits for the Debtors' and Oncor's employee participants on the same plan and platform.  *Id.*

**II.    The 401(k) Plan Separation.**

8.    ~~9.~~For purposes of ERISA, Oncor is within the Debtors' controlled group and has historically been a participating employer in the Debtors' benefit plans.  *See* Kirby Decl. ¶ 5. However, in recent years, Oncor ~~established its own separate, health plan and as a consequence, the Debtors and Oncor have worked to separate Oncor from the Debtors' remaining benefit plans. For example, before the Petition Date~~and the Debtors have taken steps to achieve Oncor's separation from the Debtors' benefit plans and administration.  *Id.*  In 2012, Oncor established, and now sponsors, its own defined benefits plan.  *Id.*  Effective July 1, 2014, Oncor will establish and sponsor its own health and welfare plan.  *Id.*  Before the Petition Date, and in preparation for Oncor's withdrawal from the Debtors' health and welfare plan, the Debtors and Oncor took steps

---

[5]  For additional information regarding the 401(k) Plan, *see Motion of Energy Future Holdings Corp.*, et al., *for Entry of Interim and Final Orders (A) Authorizing the Debtors to (I) Pay Certain Prepetition Compensation and Reimbursable Employee Expenses, (II) Pay and Honor Employee and Retiree Medical and Similar Benefits, and (III) Continue Employee and Retiree Benefit Programs, and (B) Modifying the Automatic Stay* [D.I. 25] (the "Wages Motion").

to separate assets they each contributed into a trust to pay retiree medical benefits.  *Id.*  In addition, and as further described in the ~~Debtors'~~ Wages Motion, the Debtors and Oncor executed two ~~prepetition~~ agreements that allocated costs and administrative responsibilities relating to the administration of health and welfare benefits for current employees, retirees, and dependents (as described in the Wages Motion, the "Split Participant Agreement" and the "Welfare Benefit Administration Agreement").  *Id.*

9.      With respect to the Wages Motion, the Court authorized interim and final relief (a) authorizing payment of prepetition amounts accrued in the ordinary course of business on account of the 401(k) Plan: 401(k) deductions, 401(k) administrative fees (owed to, among others, Fidelity), the Debtors' 401(k) matching obligations and (b) permitting the Debtors to continue honoring obligations related to the 401(k) Plan on a postpetition basis and in the ordinary course of business.  *See* Kirby Decl. ¶ 6.

10.      The 401(k) Plan Separation will result in a modest increase in annual fees ~~paid by current and former Employees who participate~~ based on who participates in the 401(k) Plan (approximately $42,000 in the aggregate, or $6 per participant per year) due to the minor loss of economies of scale generated by administering benefits on behalf of both the Debtors and Oncor together.  *See* Kirby Decl. ¶ 7.[6]  In addition, effectuating the split will create a one-time cost of no more than $70,000, payable by Energy Future Holdings Corp. ("EFH Corp.") to Fidelity, who

---

[6]  ~~Before the Petition Date, the Debtors and Oncor separated their joint pension plan into separate pension plans. The joint pension plan was administrated by Fidelity.  Following the separation of the joint pension plan, Fidelity continued to administer benefits on behalf of Oncor and the Debtors on the same platform because the 401(k) Plan was still jointly administered.~~

~~As part of the 401(k) Plan Separation, Fidelity will be separating the administration of benefits on behalf of Oncor and the Debtors.  This separation will create costs and to the extent these costs are generated in connection with the prepetition pension plan split, they will be paid as Unpaid 401(k) Administrative Fees pursuant to the Final Order (A) Authorizing the Debtors to (I) Pay Certain Prepetition Compensation and Reimbursable Employee Expenses, (II) Pay and Honor Employee and Retiree Medical and Similar Benefits, and (III) Continue Employee and Retiree Benefit Programs, and (B) Modifying the Automatic Stay.~~

will continue to administer the 401(k) Plan for the benefit of the Debtors after the 401(k) Plan Separation.[6] *Id.*

11.    ~~In addition~~However, as of January 1, 2015, the Debtors will utilize a new payroll ~~processor.[7]~~ processor.[1]  This service provider change will require the Debtors to program a new interface between the Debtors ~~and~~ . the new payroll processor ~~and the costs of programing directly correlate to the number of current and former Employees that will participate in the platform created by the new interface.  If the 401(k) Plan Separation is consummated before January 1, 2015, the Debtors will only have to pay the programming costs attributable to the Debtors' current and former employees as opposed to the Debtors' and Oncor's current and former employees (resulting in certain cost savings)~~, and Fidelity (the 401(k) Plan and pension administrator).  *See* Kirby Decl. ¶ 8.  The costs associated with programming a new interface depend on, among other things, whether certain benefits are administered on a single or multiple platforms.  *Id.*  The programming costs of developing a new interface with the new payroll processor (who will only process payroll on behalf of the Debtor employees) will be lower if the Debtors' employees are administered on a separate platform than the platform used to administer benefits to Oncor's employees.  *Id.*  Thus, an unintentional result of the Thrift Plan Separation

---

[6]    Before the Petition Date, the Debtors and Oncor separated their joint pension plan into separate pension plans.  The joint pension plan was administrated by Fidelity.  Following the separation of the joint pension plan, Fidelity continued to administer benefits on behalf of Oncor and the Debtors on the same platform because the 401(k) Plan was still jointly administered.

       As part of the 401(k) Plan Separation, Fidelity will be separating the administration of benefits on behalf of Oncor and the Debtors.  This separation will create costs and to the extent these costs are generated in connection with the prepetition pension plan split, they will be paid as Unpaid 401(k) Administrative Fees pursuant to the *Final Order (A) Authorizing the Debtors to (I) Pay Certain Prepetition Compensation and Reimbursable Employee Expenses, (II) Pay and Honor Employee and Retiree Medical and Similar Benefits, and (III) Continue Employee and Retiree Benefit Programs, and (B) Modifying the Automatic Stay.*

[1]    Additional information regarding the services performed by the Debtors' current Payroll Processor (as defined in the Wages Motion) may be found in the Wages Motion.
~~[7]    Additional information regarding the services performed by the Debtors' current Payroll Processor (as defined in the Wages Motion) may be found in the Wages Motion.~~

(pursuant to which Fidelity will separate its administration of Oncor's employees and the Debtors' employees) is a cost savings associated with the new payroll processor interface. *Id.* Specifically, the programming costs of developing a new payroll processor interface after the Thrift Plan Separation will be approximately $150,000 less than the costs associated with developing the same interface while Fidelity administers benefits on behalf of Oncor employees and Debtor employees on the same platform. *Id.* Considering all costs, the more economically efficient choice is to effectuate the 401(k) Plan Separation and for the Debtors to pay the programing costs only attributable to the Debtors' 401(k) Plan. before developing the new payroll processor interface. *Id.*

12.    Notwithstanding these modest costs, in In the short-term, the 401(k) Plan Separation will allow the Debtors to focus their resources on the Debtors' Employees during these chapter 11 cases. *See* Kirby Decl. ¶ 9. And in the long-term, the 401(k) Plan Separation will reduce the administrative burden on the Debtors and contribute to the Debtors' long term plan of separating Debtor employee benefits from Oncor employee benefits. *Id.*

## Basis for Relief

**I.    The 401(k) Plan Assets Are Not Property of the Debtors' Estates.**

13.    The 401(k) Plan Separation contemplates separating funds that do not belong to the Debtors' estates. Section 541(d) of the Bankruptcy Code provides, in relevant part, that "[p]roperty in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest . . . becomes property of the estate under subsection (a)(1) or (2) of this section only to the extent of the debtors' legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold." 11 U.S.C. § 541(d). The 401(k) Plan is comprised of funds held by the Debtors on behalf of individual Employees. 29 U.S.C. § 1103(a) (noting that benefit plans subject to ERISA are required to hold all assets of

an employee benefit plan in trust).  *See* Kirby Decl. ¶ 10.  As such, the Debtors do not have any

interest in the funds and the funds are not property of the Debtors' estates.  *See*, *In re Dameron*,

155 F.3d 718, 721-22 (4th Cir. 1998) (funds from various lenders held by closing agent in trust

for designated third parties not property of debtor's estate); *In re Columbia Gas Sys., Inc.*, 997

F.2d 1039 (3d Cir. 1993) (refunds created and mandated by Federal Energy Regulatory

Commission and held by debtor were not property of the estate); *In re College Bound, Inc*. 172

B.R. 399 (Bankr. S.D. Fla. 1994) (wages which debtor withheld from participating employee's

checks for payment into a qualified employee benefit plan were held by the debtor in trust and not

included in property of the estate).

## II.    The Court Should Approve the 401(k) Plan Separation As a Sound Exercise of the Debtors' Business Judgment.

14.    Even if the assets in the 401(k) Plan were property of the Debtors' estates,

section 363(b)(1) of the Bankruptcy Code provides, in relevant part, that "[t]he trustee, after

notice and a hearing, may use, sell, or lease, other than in the ordinary course of business,

property of the estate."  11 U.S.C. § 363(b)(1).

15.    The use of property of the estate, other than in the ordinary course of business, is

authorized if the debtor demonstrates a "sound business purpose" for such uses.  *See, e.g.*, *Meyers*

*v. Martin (In re Martin)*, 91 F.3d 389, 395 (3d. Cir. 1996) ("[U]nder normal circumstances the

[bankruptcy] court would defer to the trustee's [or debtor in possession's] judgment so long as

there is a legitimate business justification."); *Computer Sales Int'l, Inc. v. Fed. Mogul Global*

*(In re Fed. Mogul Global, Inc.)*, 293 B.R. 124, 126 (D. Del. 2003) ("[I]n the Third Circuit, a court

should approve a debtor's use of assets outside the ordinary course of business if the debtor can

demonstrate a sound business justification for the proposed transaction."); *Comm. of Equity Sec.*

*Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1071 (2d Cir. 1983) (" . . . a judge

determining a 363(b) application expressly find[s] from the evidenced presented before him . . . a good business reason to grant such an application"). Pursuant to this section, the Court should approve the 401(k) Plan Separation, outside the ordinary course of business, if the proposed use of estate assets is a reasonable exercise of the Debtors' business judgment.

16.     When a valid business justification is articulated, courts in this district have deferred to the debtor's decision to use, sell or lease property out of the ordinary course of business. *See e.g., Myers v. Martin (In re Martin)*, 91 F.3d 389, 395 n.2 (3d Cir. 1996) (noting that under normal circumstances, courts defer to a trustee's judgment concerning use of property under Bankruptcy Code section 363(b)). Once "the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct." *Creditors' Committee of Asbestos-Related Litigants and/or Creditors v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986). In fact, a debtor bears a "relatively light evidentiary burden of establishing" that the debtor exercised its business judgment in good faith and on a reasonable basis with respect to transactions under section 363 of the Bankrupt Code. *See, In re Nellson Nutraceutical, Inc.*, 369 B.R. 787, 800 (Bankr. D. Del. 2007) (finding that "the evidence presented by the debtors was more than sufficient to satisfy the relatively light evidentiary burden of establishing that the debtors made a business judgment in good faith upon a reasonable basis").

17.     Here, the Debtors have determined, in the exercise of their sound business judgment that consummation of the 401(k) Plan Separation is in the best interests of the Debtors' estates. *See* Kirby Decl. ¶ 11. Although there is a modest cost associated with the 401(k) Plan Separation, upon completion of the 401(k) Plan Separation, EFH Corp. will no longer bear the

~~personnel~~ administrative and monetary burden of ~~administering~~ servicing the 401(k) Plan on behalf of non-Debtor employees. *Id*. In addition, the 401(k) Plan Separation is another step in the Debtors' ongoing efforts and long term goal of reducing administrative burdens. *Id*. As further described in the Wages Motion, prior to the Petition Date, Oncor established an independent ~~health plan and~~ defined benefit plan and effective July 1, 2014, Oncor will establish its own health and welfare plan. *Id*. Moreover, the Debtors and Oncor ~~separated their pension plan,~~ took proactive steps to separate the assets they each contributed to the retiree medical benefits trust, and also executed the Split Participation Agreement and Welfare Benefit Administration Agreement to further delineate and allocate costs between the Debtors and Oncor. *Id*. To that end, the 401(k) Plan Separation will aid in streamlining operations and will efficiently ~~reallocating~~ reallocate resources towards Debtor employees. Accordingly, the Debtors respectfully request the Court enter the Order authorizing the 401(k) Plan Separation.

### Waiver of Bankruptcy Rules 6004(a) and 6004(h)

18.    To implement the foregoing successfully, the Debtors seek a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the 14-day of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h).

### Notice

19.    The Debtors shall provide notice of this Motion on the date hereof via U.S. first class mail to: (a) the Office of the U.S. Trustee for the District of Delaware; (b) (i) the entities listed on the Consolidated List of Creditors Holding the 50 Largest Unsecured Claims filed pursuant to Bankruptcy Rule 1007(d); and (ii) proposed counsel to the Creditors' Committee; (c) Wilmington Trust, N.A., in its capacity as administrative agent under the TCEH first lien credit agreement and collateral agent under the TCEH intercreditor agreements and counsel thereto; (d) Bank of New York Mellon Trust Company, N.A., in its capacity as indenture trustee

under:  (i) the TCEH unsecured pollution control revenue bonds; and (ii) the EFCH 2037 Notes due 2037, and counsel thereto; (e) American Stock Transfer & Trust Company, LLC, in its capacity as indenture trustee under:  (i) the 9.75% EFH senior unsecured notes due 2019; (ii) the 10.0% EFH senior unsecured notes due 2020; (iii) the 10.875% EFH LBO senior unsecured notes due 2017; (iv) the 11.25%/12.0% EFH LBO toggle notes due 2017; (v) the 5.55% EFH legacy notes (series P) due 2014; (vi) the 6.50% EFH legacy notes (series Q) due 2024; and (vii) the 6.55% EFH legacy notes (series R) due 2034, and counsel thereto; (f) Computershare Trust Company, N.A. and Computershare Trust Company of Canada, in their capacities as indenture trustee under:  (i) the 11.0% EFIH senior secured second lien notes due 2021; and (ii) the 11.75% EFIH senior secured second lien notes due 2022, and counsel thereto; (g) UMB Bank, N.A. in its capacity as indenture trustee under:  (i) the 9.75% EFIH senior unsecured notes due 2019; and (ii) the 11.25%/12.25% EFIH senior toggle notes due 2018, and counsel thereto; (h) BOKF, NA, dba Bank of Arizona, in its capacity as indenture trustee under 11.50% TCEH senior secured notes due 2020, and counsel thereto; (i) CSC Trust Company of Delaware in its capacity as indenture trustee under:  (i) the 6.875% EFIH senior secured notes due 2017; and (ii) the 10.0% EFIH senior secured notes due 2020, and counsel thereto; (j) Law Debenture Trust Company of New York in its capacity as indenture trustee under:  (i) the 10.25% TCEH senior unsecured notes due 2015; and (ii) the 10.50%/11.25% TCEH senior toggle notes due 2016, and counsel thereto; (k) Wilmington Savings Fund Society, FSB in its capacity as indenture trustee under the 15.0% TCEH senior secured second lien notes due 2021, and counsel thereto; (l) counsel to certain holders of claims against the Debtors regarding each of the foregoing described in clauses (c) through (k); (m) the agent for the TCEH debtor-in-possession financing facility and counsel thereto; (n) the agent for the EFIH debtor-in-possession financing facility and counsel thereto;

(o) counsel to certain holders of equity in Texas Energy Future Holdings Limited Partnership; (p) counsel to the Ad Hoc Committee of TCEH Unsecured Noteholders; (q) counsel to the Ad Hoc Committee of TCEH Second Lien Noteholders; (r) Oncor Electric Delivery Holdings Company LLC and counsel thereto; (s) Oncor Electric Delivery Company LLC and counsel thereto; (t) the Securities and Exchange Commission; (u) the Internal Revenue Service; (v) the Office of the United States Attorney for the District of Delaware; (w) the Office of the Texas Attorney General on behalf of the Public Utility Commission of Texas; (x) counsel to the Electric Reliability Council of Texas; (y) Fidelity; and (z) those parties that have requested notice pursuant to Bankruptcy Rule 2002.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

## No Prior Request

20.      No prior request for the relief sought in this Motion has been made to this or any other court.

*[Remainder of page intentionally left blank.]*

WHEREFORE, the Debtors respectfully request that the Court enter the Order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested in this Motion and granting such other and further relief as is appropriate under the circumstances.

Dated: ~~June 27~~July 3, 2014

/s/ Tyler D. Semmelman

**RICHARDS, LAYTON & FINGER, P.A.**
Mark D. Collins (No. 2981)
Daniel J. DeFranceschi (No. 2732)
Jason M. Madron (No. 4431)
Tyler D. Semmelman (No. 5386)
920 North King Street
Wilmington, Delaware 19801
Telephone:      (302) 651-7700
Facsimile:      (302) 651-7701
Email:          collins@rlf.com
                defranceschi@rlf.com
                madron@rlf.com
                semmelman@rlf.com

-and-

**KIRKLAND & ELLIS LLP**
Richard M. Cieri (admitted *pro hac vice*)
Edward O. Sassower, P.C. (admitted *pro hac vice*)
Stephen E. Hessler (admitted *pro hac vice*)
Brian E. Schartz (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022-4611
Telephone:      (212) 446-4800
Facsimile:      (212) 446-4900
Email:          richard.cieri@kirkland.com
                edward.sassower@kirkland.com
                stephen.hessler@kirkland.com
                brian.schartz@kirkland.com

-and-

James H.M. Sprayregen, P.C. (admitted *pro hac vice*)
Chad J. Husnick (admitted *pro hac vice*)
Steven N. Serajeddini (admitted *pro hac vice*)
300 North LaSalle
Chicago, Illinois 60654
Telephone:      (312) 862-2000
Facsimile:      (312) 862-2200
Email:          james.sprayregen@kirkland.com
                chad.husnick@kirkland.com
                steven.serajeddini@kirkland.com

Proposed Co-Counsel to the Debtors and Debtors in Possession

## EXHIBIT A

**Proposed Order**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | ) | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[8][1] | ) | Case No. 14-10979 (CSS) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**ORDER AUTHORIZING THE DEBTORS
TO EXECUTE THE 401(k) PLAN SEPARATION**

Upon the motion (the "Motion")[9][2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors"), for entry of an order (this "Order"), authorizing the 401(k) Plan Separation, all as more fully set forth in the Motion and the Kirby Declaration; and the Court having found that it has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and the Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and the Court having found that venue of this case and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and the Court having found that the Debtors provided appropriate notice of the Motion and the opportunity for a hearing on the Motion under the circumstances; and the Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing, if any, before the Court (the "Hearing"); and the Court having determined

---

[8][1]  The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810.  The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201.  Due to the large number of debtors in these chapter 11 cases, for which joint administration has been granted, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

[9][2]  Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before the Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.      The Motion is granted as set forth herein.

2.      The 401(k) Plan Separation is hereby approved.

3.      The Debtors are authorized to enter into, perform, execute, and deliver all documents, and take all actions, necessary to immediately continue and fully implement the 401(k) Plan Separation, all of which are hereby approved.

4.      Notwithstanding the possible applicability of Bankruptcy Rules 6004(h), 7062, and 9014 or otherwise, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

5.      The Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation of this Order.

Wilmington, Delaware
Dated: _____, 2014

_____
THE HONORABLE CHRISTOPHER S. SONTCHI
UNITED STATES BANKRUPTCY JUDGE