**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) | Case No. 14-10979 (CSS) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | **Re: D.I. 1471** |

**DECLARATION OF CARRIE KIRBY,
THE EXECUTIVE VICE PRESIDENT OF
HUMAN RESOURCES IN SUPPORT OF THE AMENDED MOTION OF
ENERGY FUTURE HOLDINGS CORP., *ET AL.*, FOR AN ORDER
AUTHORIZING THE DEBTORS TO EXECUTE THE 401(k) PLAN SEPARATION**

Pursuant to 28 U.S.C. § 1746, I, Carrie Kirby, declare as follows:

1.     I am the Executive Vice President of Human Resources for Energy Future Holdings Corp. ("EFH Corp.").  I have been with EFH Corp. since 2006, and have served as Vice President of Human Resources for TXU Energy Retail Company, LLC, and before that as Human Resources Director.  I am generally familiar with EFH Corp.'s day-to-day operations, staffing, organizational development, employee activities, employee-related policies and standards, and related information from my review of records, relevant documents, and information supplied to me by EFH Corp.'s human resources and legal team.  I am over the age of 18 and duly authorized to execute this declaration (the "Declaration") on behalf of the Debtors in support of, the *Motion of Energy Future Holdings Corp.,* et al*., for an Order Authorizing the*

---

[1]     The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810.  The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201.  Due to the large number of debtors in these chapter 11 cases, for which joint administration has been granted, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

*Debtors to Execute the 401(k) Plan Separation* (the "<u>Motion</u>"),[2] filed contemporaneously herewith.

2.　　　The facts in this Declaration are based on my personal knowledge and review of information and my experience with the Debtors' operations and transactions relating to human resources.  If called to testify, I would testify to the facts set forth herein.

## I.　　The 401(k) Plan.

3.　　　The Debtors employ approximately 5,700 Employees, approximately 5,650 of whom are full-time and approximately 50 of whom are part-time.  All Employees are automatically enrolled in the 401(k) Plan within 30 days of their start date, unless they actively opt out.  Current Employees that are automatically enrolled in the 401(k) Plan contribute 3% of their base salary to the 401(k) Plan in their first year unless they choose an alternative percentage to pay.  This percentage automatically increases by 1% per year for seven years.  Alternatively, Employees may choose to contribute anywhere from 1%-75% of their base pay per year.[3]  The Debtors also maintain a limited matching program under the 401(k) Plan.  Specifically, the Debtors match 100% of the first 6% of an Employee's contributions, except that as to those Employees who are covered under the traditional retirement plan formula of the Debtors' defined benefit plan, the Debtors match 75% of the first 6% of an Employee's contributions.  Approximately 7,000 current and former Employees participate in the 401(k) Plan.[4]

---

[2]　　All capitalized terms used herein have the meaning given to them in the Motion.

[3]　　Employees determined by the Debtors to be "highly compensated employees" as defined by applicable IRS regulations may contribute a maximum of 20% of their base pay.

[4]　　For additional information regarding the 401(k) Plan, *see Motion of Energy Future Holdings Corp.*, et al., *for Entry of Interim and Final Orders (A) Authorizing the Debtors to (I) Pay Certain Prepetition Compensation and Reimbursable Employee Expenses, (II) Pay and Honor Employee and Retiree Medical and Similar Benefits, and (III) Continue Employee and Retiree Benefit Programs, and (B) Modifying the Automatic Stay* [D.I. 25] (the "<u>Wages Motion</u>").

4.      Currently, approximately 4,000 current and former employees of the Debtors' non-Debtor affiliate, Oncor, participate in the 401(k) Plan as well.  Approximately $626 million (or 40%) of the assets in the 401(k) Plan are attributable to the Oncor participants, and approximately $927 million (or 60%) of the assets in the 401(k) Plan are attributable to Debtor participants.  The Debtors pay the costs of administering benefits on behalf of the Oncor employees who participate in the 401(k) Plan in the first instance, and then Oncor reimburses the Debtors on a monthly basis for these administration costs.  Historically, Fidelity Workplace Services LLC ("Fidelity") has administered benefits for the Debtors' and Oncor's employee participants on the same plan and platform.

## II.      The 401(k) Plan Separation.

5.      For purposes of ERISA, Oncor is within the Debtors' controlled group and has historically been a participating employer in the Debtors' benefit plans.  However, in recent years, Oncor and the Debtors have taken steps to achieve Oncor's separation from the Debtors' benefit plans and administration.  In 2012, Oncor established, and now sponsors, its own defined benefits plan.  Effective July 1, 2014, Oncor will establish and sponsor its own health and welfare plan. Before the Petition Date, and in preparation for Oncor's withdrawal from the Debtors' health and welfare plan, the Debtors and Oncor took steps to separate assets they each contributed into a trust to pay retiree medical benefits.  In addition, and as further described in the Wages Motion, the Debtors and Oncor executed two agreements that allocated costs and administrative responsibilities relating to the administration of health and welfare benefits for current employees, retirees, and dependents  (as described in the Wages Motion, the Split Participant Agreement and the Welfare Benefit Administration Agreement).

6.      With respect to the Wages Motion, the Court authorized interim and final relief (a) authorizing payment of prepetition amounts accrued in the ordinary course of business on

account of the 401(k) Plan: 401(k) deductions, 401(k) administrative fees (owed to, among others, Fidelity), the Debtors' 401(k) matching obligations and (b) permitting the Debtors to continue honoring obligations related to the 401(k) Plan on a postpetition basis and in the ordinary course of business.

7.     The 401(k) Plan Separation will result in a modest increase in annual fees based on who participates in the 401(k) Plan (approximately $42,000 in the aggregate, or $6 per participant per year) due to the minor loss of economies of scale generated by administering benefits on behalf of both the Debtors and Oncor together.  In addition, effectuating the split will create a one-time cost of no more than $70,000, payable by EFH Corp. to Fidelity, who will continue to administer the 401(k) Plan for the benefit of the Debtors after the 401(k) Plan Separation.[5]

8.     However, as of January 1, 2015, the Debtors will utilize a new payroll processor.[1]  This service provider change will require the Debtors to program a new interface between the Debtors and the new payroll processor and Fidelity (the 401(k) and pension administrator.)  The costs associated with programming a new interface depend on, among other things, whether certain benefits are administered on a single or multiple platforms.  The programming costs of developing a new interface with the new payroll processor (who will only

---

[5]     Before the Petition Date, the Debtors and Oncor separated their joint pension plan into separate pension plans. The joint pension plan was administrated by Fidelity.  Following the separation of the joint pension plan, Fidelity continued to administer benefits on behalf of Oncor and the Debtors on the same platform because the 401(k) Plan was still jointly administered.

As part of the 401(k) Plan Separation, Fidelity will be separating the administration of benefits on behalf of Oncor and the Debtors.  This separation will create costs and to the extent these costs are generated in connection with the prepetition pension plan split, they will be paid as Unpaid 401(k) Administrative Fees pursuant to the *Final Order (A) Authorizing the Debtors to (I) Pay Certain Prepetition Compensation and Reimbursable Employee Expenses, (II) Pay and Honor Employee and Retiree Medical and Similar Benefits, and (III) Continue Employee and Retiree Benefit Programs, and (B) Modifying the Automatic Stay*.

[1]     Additional information regarding the services performed by the Debtors' current Payroll Processor (as defined in the Wages Motion) may be found in the Wages Motion.

process payroll on behalf of the Debtor employees) will be lower if the Debtors' employees are administered on a separate platform than the platform used to administer benefits to Oncor's employees. Thus, an unintentional result of the Thrift Plan Separation (pursuant to which Fidelity will separate its administration of Oncor's employees and the Debtors' employees) is a cost savings associated with the new payroll processor interface. Specifically, the programming costs of developing a new payroll processor interface after the Thrift Plan Separation will be approximately $150,000 less than the costs associated with developing the same interface while Fidelity administers benefits on behalf of Oncor employees and Debtor employees on the same platform. Thus, even though the Thrift Plan Separation generates modest costs, I believe considering all costs, the more economically efficient choice is to effectuate the 401(k) Plan Separation and for the Debtors to pay the programing costs attributable to the more standard interface for the Debtors' 401(k) Plan.

9.       I believe in the short-term the 401(k) Plan Separation will allow the Debtors to focus their resources on the Debtors' Employees during these chapter 11 cases. And, in the long-term, I believe the 401(k) Plan Separation will reduce the administrative burden on the Debtors and contribute to the Debtors' long term plan of separating Debtor employee benefits from Oncor employee benefits.

**III.      The 401(k) Plan Assets Are Not Property of the Debtors' Estates.**

10.       The 401(k) Plan is comprised of funds held by the Debtors on behalf of individual Employees. As such, I believe the Debtors do not have any interest in the funds and the funds are not property of the Debtors' estates.

**IV.     The Court Should Approve the 401(k) Plan Separation As a Sound Exercise of the Debtors' Business Judgment.**

11.     I believe that consummation of the 401(k) Plan Separation is in the best interests of the Debtors' estates.  Although there is a modest cost associated with the 401(k) Plan Separation, I believe upon completion of the 401(k) Plan Separation, EFH Corp. will no longer bear the administrative and monetary burden of servicing the 401(k) Plan on behalf of non-Debtor employees.  In addition, I believe the 401(k) Plan Separation is another step in the Debtors' ongoing efforts and long term goal of reducing administrative burdens.  As further described in the Wages Motion, prior to the Petition Date, Oncor established an independent defined benefit plan and effective July 1, 2014, Oncor will establish its own health and welfare plan.  Moreover, the Debtors and Oncor took proactive steps to separate the assets they each contributed to the retiree medical benefits trust, and also executed the Split Participation Agreement and Welfare Benefit Administration Agreement to further delineate and allocate costs between the Debtors and Oncor.  To that end, I believe the 401(k) Plan Separation will aid in streamlining operations and will efficiently reallocate resources towards Debtor employees.

12.     In consideration of all these factors, I believe that the Court should authorize the Debtors to execute the 401(k) Plan Separation.

*[Remainder of page intentionally left blank.]*

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Wilmington, Delaware
Dated:  July 3, 2014

/s/ Carrie Kirby
Carrie Kirby
Executive Vice President, Human Resources
Energy Future Holdings Corp.