**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>Energy Future Holdings Corp., et al.,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 14-10979 (CSS)<br><br>(Jointly Administered) |

**STATUS REPORT OF THE OFFICIAL COMMITTEE OF**
**UNSECURED CREDITORS CONCERNING DISCOVERY**

The Official Committee of Unsecured Creditors (the "Committee") of Energy Future Holdings Corp., et al. (collectively, the "Debtors"), joined by the Ad Hoc Group of TCEH Unsecured Noteholders (the "TCEH Ad Hoc Group") and Wilmington Savings Fund Society, FSB ("WSFS")[2], provide this status report to the Court regarding document discovery in this matter.[3] Specifically, the Committee provides a report on the status of: (1) the Debtors' total production of documents in this case; (2) discovery in connection with the Final Cash Collateral Order (defined below); (3) the protocol governing the discovery sought in connection with the Rule 2004 Motion (defined below);[4] and (4) discovery in connection with the RSA Assumption Motion.

---

[1] The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these Chapter 11 cases, which are being jointly administered on an interim basis, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

[2] WSFS is appearing as the successor trustee under that certain indenture, dated as of October 6, 2010 (as amended or supplemented), among Texas Competitive Electric Holdings, LLC ("TCEH"), TCEH Finance, Inc., the guarantors party thereto, and The Bank of New York Mellon Trust Co., N.A., as trustee.

[3] On July 7, 2014, the Committee shared a copy of the status report in draft with the Debtors. Without pointing to any specifics, the Debtors expressed their disagreement with the report.

[4] The Court scheduled a status conference for WSFS's Motion for Leave to Conduct Discovery Pursuant to Rule 2004 (Docket No. 6), which was listed as Item 34 in the Notice of Agenda of Matters Scheduled for Hearing, on June 30 and July 1, 2014 at 9:30 a.m. (EDT) [Docket No. 1148]. As the Court is aware, that hearing was continued to July 10 and July 11, 2014.

I.      THE DEBTORS' PRODUCTION OF DOCUMENTS TO ALL PARTIES

In response to a number of formal document requests, the Debtors began producing documents in this matter in mid-May 2014. Since that time, the Committee has been given access by the Debtors to all of the Debtors' productions to all parties in this matter, including productions to the Indenture Trustees to the Energy Future Intermediate Holding Company LLC ("EFIH") First and Second Lien Notes, WSFS, and the TCEH Ad Hoc Group. While the Debtors have reported to the Court the total number of *pages* of documents that they have produced in this case, *see* June 30, 2014 Hearing Tr. at 17:9-12, the actual number of documents they have produced is much more limited; in fact, the Debtors have produced only 13,906 documents through today. For a case of this size and complexity, this is an extremely limited production of documents.

Moreover, even this limited number of documents overstates the actual size of the Debtors' production. In reviewing the document production, the Committee's counsel determined that the same documents were being produced multiple times with different Bates numbers. Therefore, the Committee's counsel performed a preliminary analysis of the 13,661 documents that the Debtors had produced as of June 30, 2014, to determine the extent to which the same documents were being produced more than once but with different Bates numbers. This de-duplication analysis was performed using, where available, the unique MSG_IDs and MD5 Hash IDs for the electronic documents produced by the Debtors.

ny-1149578

The following table sets forth the results of the Committee's analysis:

| | Emails | Attachments (excluding emails that are attachments to emails) | Loose E-documents | All |
|---|---|---|---|---|
| Original[5] | 2976 | 1398 | 2372 | 6746 |
| Duplicate[6] | 2059 | 4367 | 489 | 6915 |
| Exact Duplicate[7] | 808 | 1925 | 462 | 3195 |
| Total | 5035 | 5765 | 2861 | 13661 |

This analysis, based on the limited metadata provided to date by the Debtors, suggests that the Debtors have, in fact, produced less than 7,000 Original documents in this case. It is the Committee's view that the Debtors' document production to date is still relatively small and full of duplicative material that could have been removed from the production to avoid forcing parties to review the same documents multiple times. Using standard de-duplication processes the number of unique documents in the Debtors' production would be substantially reduced.

Not only is the size of the production small, but from a qualitative standpoint, the production of material is concerning. For example, the production to date of less than 3000

---

[5] The number of "Original" documents corresponds to the first instance a document appears in the database. In other words, the 6746 figure reflects the first instance in which a particular MSG_ID or MD5 Hash ID value was detected, including where the document is missing a MSG_ID or MD5 Hash ID value. The analysis could not be performed earlier because the Debtors had initially not provided these standard metadata fields with their productions. On June 22, 2014, following repeated requests from the Committee, the Debtors provided the missing metadata for most but not all of the documents. Nonetheless, for several hundred of the documents produced to date, the Debtors have not provided the MSG_IDs or MD5 Hash IDs, and, thus, this duplicate analysis could not be performed with respect to these documents. The Debtors have been asked on a number of occasions to provide this missing metadata, but to date it has not been provided. For purposes of this analysis, any documents missing associated metadata were assumed to be Original.

[6] The Duplicate documents reflect documents that are duplicative of the Original documents including those with minor variations in metadata such as time zone differences.

[7] The Exact Duplicate documents reflect a subset of the Duplicate documents and reflect documents that are the same in all relevant metadata respects with Original documents. For an email, an exact duplicate reflects an email that has a MSG_ID that matches a MSG_ID elsewhere in the database and that same email has an MD5 Hash ID that matches an MD5 Hash ID elsewhere in the database. This excludes emails with adjustments based on simple time zone changes or where the email has a person's name instead of their e-mail address as listed in any of the recipient fields, because even such minor changes will affect the MD5 Hash ID values of an email. For loose e-documents, an exact duplicate reflects a document that has no family and has a matching MD5 Hash ID value with another loose e-document. For a non-email attachment, an exact duplicate reflects documents that are duplicates of other attachments but not duplicates of loose e-documents.

ny-1149578

original emails in a matter of this complexity and with billions of dollars in dispute is remarkable. Going forward, the Debtors will need to provide more fulsome disclosure so that the parties can properly evaluate their claims and the important proposals for which the Debtors seek the approval of this Court.[8]

## II. THE COMMITTEE'S FIRST LIEN INVESTIGATION

One of the most pressing discovery issue arises in connection with the Committee's investigation (the "First Lien Investigation") contemplated by the *Final (A) Authorizing Use of Cash Collateral For Texas Competitive Electric Holdings Company LLC and Certain of Its Debtor Affiliates, (B) Granting Adequate Protection, and (C) Modifying The Automatic Stay*, entered by the Court on Jun 6, 2014 [Docket No. 855] (the "Final Cash Collateral Order"). Under the Final Cash Collateral Order, the Committee has a deadline of September 14, 2014, to challenge the stipulations therein. (*See* Final Cash Collateral Order § 15.) Because the Committee must first move for standing to make that challenge, as a practical matter, that means the Committee needs to substantially complete the First Lien Investigation by the beginning of August 2014, to meet the current schedule set forth in the Final Cash Collateral Order.[9]

On June 16, 2014, the Committee served document demands on the Debtors in connection with the First Lien Investigation. Seeking to work with the Debtors to focus and prioritize the search for documents, on June 20, 2014, the Committee provided a list of seven priority requests for the Debtors to respond to in the first instance.

---

[8] The Debtors and their financial advisors have separately provided, on an informal basis, information and documents to the Committee and to its financial advisors separate from the formal discovery process.

[9] This deadline results from the Court indicating that it would be available to hear the Committee's standing motion on September 4, 2014, and therefore, under the Delaware Local Rules, the Committee would need to file its standing motion nineteen days in advance, or by August 16th (assuming serving by overnight mail). *See* Local Rule 9006-1(c).

To date, the Debtors have produced only 363 documents in response to these First Lien Discovery requests.

| Production Date | Bates Range | Document Count |
|---|---|---|
| June 27, 2014 | EFH00036765 - EFH00037090 | 3 |
| June 28, 2014 | EFH00037091 - EFH00042380 | 115 |
| July 2, 2014 | EFH00042381 - EFH00050499 | 142 |
| July 3, 2014 | EFH00050500 - EFH00053295 | 103 |

For requests that have been outstanding for over three weeks, this limited production is concerning in light of the tight timeframe set by the Final Cash Collateral Order.

The Debtors' counsel has now committed to produce all of the documents responsive to the Committee's priority requests by July 8, 2014, subject only to a small number of priority documents after that date.  (The Debtors have not indicated when they will complete production of any non-priority items requested by the Committee in connection with this investigation.) Whether the Committee can complete its investigation within the time limits set by the Final Cash Collateral Order will depend on the cooperation of the Debtors to produce documents on an expedited basis.

## III.    THE 2004 MOTION AND THE DISCOVERY PROTOCOL

Currently pending before the Court are (1) the *Motion of Wilmington Savings Fund Society, FSB, for Leave to Conduct Discovery Pursuant to the Federal Rules of Bankruptcy Procedure of Energy Future Holdings Corporation, its Affiliates, and Certain Third Parties*, filed on April 29, 2014 [Docket No. 6] (the "Rule 2004 Motion"), and (2) the *Limited Joinder of the Ad Hoc Group of TCEH Unsecured Noteholders to the Motion of Wilmington Savings Fund Society, FSB, for Leave to Conduct Discovery Pursuant to the Federal Rules of Bankruptcy Procedure of Energy Future Holdings Corporation, its Affiliates, and Certain Third Parties*, filed on April 30, 2014 [Docket No. 226].  Together the Committee, The TCEH Ad Hoc Group,

and WSFS have sought in good faith to negotiate with the Debtors to develop an organized and efficient means for addressing the discovery sought by the Rule 2004 Motion, which was filed over two months ago, as well as certain specified supplemental requests relating to this Motion (the "Legacy Discovery").

At the May 22 status conference, counsel for WSFS represented to the Court that the parties had begun to work on a draft protocol governing the discovery sought through the Rule 2004 Motion and noted the understanding that it would not be possible to draft a protocol that would cover all discovery that would be needed in the case. (*See* May 22, 2014 Hr'g Tr. at 239:12-240:11.) On May 28, 2014, counsel for the Committee sent to the Debtors a proposed Legacy Discovery protocol that included detailed procedures for coordinating and facilitating through the Committee the Legacy Discovery covered by the 2004 Motion. On June 4, 2014, however, the Debtors sent back a revised draft of the protocol, which they had expanded to include, and exclusively govern, any discovery related to future plan confirmation as well. Even though there has been no disclosure statement filed, much less an actual proposed plan for confirmation submitted for consideration, the Debtors' revised draft protocol would require the Committee to serve in relatively short order a single, consolidated set of discovery requests covering both Legacy Discovery and future confirmation-related discovery.

On June 12, 2014, the Committee sent back to the Debtors a further revised draft of the Legacy Discovery protocol in which it addressed many of the Debtors' comments. The Committee's draft, however, was again focused on the Legacy Discovery that was the subject of the Rule 2004 Motion. The Committee set out its reasoning in its covering email.

> We believe that it is important to have a discovery protocol in place as soon as we can in connection with the discovery described in the pending Rule 2004 Motions. If and when a proposed plan is presented, we will certainly work together to incorporate that discovery into this protocol and/or a similar separate protocol.

6

ny-1149578

> Nonetheless, because confirmation discovery will involve a broader range of interested parties and potentially a broader range of yet unknown issues, we believe that it is more appropriate to move forward under this separate protocol for the outstanding Legacy Discovery

Over the following three weeks, the Committee sent to the Debtors two more updated drafts of the draft protocol seeking to resolve outstanding issues and incorporating comments from the U.S. Trustee. In those drafts, the Committee, WSFS, the TCEH Ad Hoc Group and the U.S. Trustee included language expressly agreeing that, in connection with any future proposed plan of reorganization, "they will negotiate in good faith regarding the application of this discovery protocol to any discovery in connection with confirmation of any such proposed plan ("Confirmation Discovery") and to work to have a discovery protocol for Confirmation Discovery in place so that such discovery can commence as soon as any disclosure statement is approved." The most current draft of the proposed Legacy Discovery protocol, which the Committee sent to the Debtors on June 24, 2014, sets forth a reasonable schedule and procedures for the production of Legacy Discovery in an efficient, expeditious and orderly manner. To date, the Debtors have provided no comments to the draft protocol.

For the most part, the parties are in agreement on the elements of the Legacy Discovery protocol, but the Committee, TCEH Ad Hoc Group, and WSFS cannot agree to the Debtors' insistence on the inclusion of future confirmation discovery in the current draft. While the Committee, TCEH Ad Hoc Group, and WSFS have agreed not to duplicate discovery previously obtained as part of Legacy Discovery, the TCEH creditor constituencies simply are not in a position now to make informed decisions addressing discovery that might arise if and when a proposed confirmation plan is submitted in the future. Confirmation discovery inevitably will involve a much broader range of issues than those comprising the Legacy Discovery. Any discovery protocol relating to confirmation discovery would have to account for those issues,

7

which necessarily cannot be known unless and until the Debtors submit a proposed reorganization plan. Moreover, the scope and timing of confirmation discovery will be impacted by, among other things: (1) the confirmation-related schedule established by the Court; (2) a broader range of objecting parties, beyond the TCEH-side creditors currently seeking the Legacy Discovery, who will be seeking discovery regarding a myriad of confirmation-related issues (many of which are not yet ripe or are not yet known); and (3) the potential for discovery related to multiple disclosure statements and related hearings. It is premature now to finalize a protocol for confirmation discovery while these issues are still undetermined.[10]

As noted above, the Committee, the TCEH Ad Hoc Group, and WSFS are committed to working with the Debtors in good faith at the appropriate time to establish a protocol for confirmation discovery regarding any proposed plan of reorganization, and have even proposed to include language to that effect in the proposed Legacy Discovery protocol. Additionally, it may well be appropriate at that time to put in place the same or similar terms as set forth in the proposed Legacy Discovery protocol to handle confirmation-related discovery. Nonetheless, it is premature to set in stone such discovery related timelines and procedures before any plan or disclosure statement has been filed. Accordingly, the Committee, the TCEH Ad Hoc Group, and WSFS, plan to request that the Court enter a Legacy Discovery protocol at the earliest possible date so that the parties can proceed with Legacy Discovery without further delay.[11]

---

[10] The Debtors' own proposed counsel argued that inquiry into confirmation-related issues is premature at this stage in these Chapter 11 cases. (*See* June 6, 2014 Hr'g Tr. at 23:4-11; 26:14-19; 68:9-69:1.)

[11] The proposed protocol includes a proposed confidentiality protective order as an exhibit. The Committee understands that the Debtors and the United States Trustee are in discussions regarding the terms of that confidentiality protective order, specifically terms regarding the filing of confidential documents under seal. Nonetheless, any discussions regarding the form of the proposed confidentiality protective order need not delay the entry of an order approving the discovery protocol.

**IV.    THE RSA ASSUMPTION MOTION DISCOVERY**

On May 16, 2014, the Debtors filed the *Motion to Authorize (Motion of Energy Future Holdings Corp., et al., for Entry of an Order Authorizing the RSA Debtors to Assume the Restructuring Support Agreement and Modifying the Automatic Stay) Filed by Energy Future Holdings Corp.*. [Docket No. 505]. On May 19, 2014, the TCEH Ad Hoc Group served a comprehensive set of document demands on the Debtors seeking RSA related discovery. On June 13, 3014, the Debtors served responses and objections to the Ad Hoc Group's demands. The Committee, the TCEH Ad Hoc Group and WSFS have followed up in various phone calls and correspondence to those outstanding requests.

In direct response to the May 19, 2014, RSA-related document demands, the Debtors have made three productions totaling only approximately 852 documents.[12]

| Production Date | Bates Range | Document Count |
|---|---|---|
| June 13, 2014 | EFHH2D00072079 - EFH2D000889613 | 611 |
| June 20, 2014 | EFH2D00089620 - EFH2D00090126 | 223 |
| June 24, 2014 | EFH2D00090243 - EFH2D00090268 | 18 |

The Committee, the TCEH Ad Hoc Group and WSFS have met and conferred numerous times with the Debtors' counsel about this production and the Debtors' discovery efforts. Although the Committee is hopeful that these matters can be resolved, a number of discovery issues in connection with the RSA related discovery remain outstanding.

First, the Committee has pressed for more cooperation from the Debtors in the selection of search terms to identify relevant material. Notwithstanding the operative local rules in this Court (*see* L.R. 7026-3(e)), the Debtors initially proceeded with searches for electronic discovery

---

[12] Although not produced specifically in response to the May 19, 2014 RSA-related document demands, documents produced in response to other discovery requests, such as the discovery requests served in connection with the EFIH Second Lien DIP Motion, may also be relevant to the RSA Assumption Motion.

without coordinating with the requesting parties. In response, the Committee, the TCEH Ad Hoc Group, and WSFS have sought the Debtors' agreement to proceed with the selection of search terms on a collaborative process as contemplated by the local rules. To the extent that the Debtors assert that any search terms pose a burden, the Committee has further requested that the Debtors provide supporting data regarding the impact of proposed search terms so that proposed terms can be removed or modified to address any burden. The Committee is hopeful that the Debtors will provide all requested information in this regard so that the parties can meaningfully meet and confer regarding the use of proposed search terms.

Second, the Debtors have not yet fully agreed to search for and produce material from all of their outside directors. Although the Debtors have agreed to collect and produce documents from the outside "dis-interested" directors Charles Cremens and Hugh Sawyer, the Debtors are taking the position that to obtain documents from outside director Michael MacDougall, the Committee must negotiate separately with his counsel at Wachtell, Lipton, Rosen & Katz, rather than with the Debtors. Although the Committee has no objection to the Debtors working with other counsel to locate and collect responsive documents, the Debtors have a legal responsibility to produce documents held by its directors regarding their work for the Debtors.[13] The Committee hopes to be able to resolve this issue with the Debtors.

---

[13] Because Mr. MacDougall is a director of various Debtor entities, his documents are clearly within the control of the Debtors. *See*, *e.g.*, *Miniace v. Pac. Mar. Ass'n*, No. C 04-03506 SI, 2006 U.S. Dist. LEXIS 17127, 7-8 (N.D. Cal. Feb. 13, 2006) (holding "outside directors" are within a company's control and granting motion to compel the company to produce documents in the possession of its current directors.) Courts do "not require that the party have legal ownership or actual physical possession of the documents at issue; rather, documents are considered to be under a party's control when that party has the right, authority, or practical ability, to obtain the documents from a non-party to the action." *Prokosch v. Catalina Lighting, Inc.*, 193 F.R.D. 633, 636 (D. Minn. 2000). *See also Bank of New York v. Meridien BIAO Bank Tanzania, Ltd.*, 171 F.R.D. 135, 146 (S.D.N.Y.1997); *M.L.C., Inc. v. N.A. Philips Corp.*, 109 F.R.D. 134, 149 (S.D.N.Y.1986) (finding defendant had requisite control of documents due to "ability to easily obtain the[m] when it was in their interest to do so."). Courts have even required corporations to produce the documents of former employees. *See*, *e.g.*, *Exp.-Imp. Bank of U.S. v. Asia Pulp & Paper Co., Ltd.*, 233 F.R.D. 338, 341-42 (S.D.N.Y. 2005); *Herbst v. Able*, 63 F.R.D. 135, 138 (S.D.N.Y. 1972); *In re Folding Carton Antitrust Litig.*, 76 F.R.D. 420, 423 (N.D. Ill. 1977).

In addition to these two issues, counsel for the TCEH Ad Hoc Group and WSFS plan to raise separately with the Court certain waivers of privilege by the Debtors and the Debtors' overly broad assertion of the common interest privilege.

The hearing date for the RSA Assumption Motion has been adjourned *sine die* from July 18, 2014. This will fortunately give the parties more time to work to resolve these outstanding discovery issues in connection with the RSA Assumption motion so that all of the relevant documents can be produced in advance of the remaining RSA related depositions.

Dated: Wilmington, Delaware
      July 8, 2014

**MORRISON & FOERSTER LLP**
James M. Peck
Brett H. Miller
Lorenzo Marinuzzi
Todd M. Goren
Charles L. Kerr
250 West 55th Street
New York, New York 10019-9601
Telephone:  (212) 468-8000
Facsimile:  (212) 468-7900
E-mail:  jpeck@mofo.com
      brettmiller@mofo.com
      lmarinuzzi@mofo.com
      tgoren@mofo.com
      ckerr@mofo.com

-and-

*/s/ Christopher A. Ward*
Christopher A. Ward (Del. Bar No. 3877)
Justin K. Edelson (Del. Bar No. 5002)
Shanti M. Katona (Del. Bar No. 5352)
**POLSINELLI PC**
222 Delaware Avenue, Suite 1101
Wilmington, Delaware 19801
Telephone: (302) 252-0920
Facsimile:  (302) 252-0921
E-mail:  cward@polsinelli.com
      jedelson@polsinelli.com
      skatona@polsinelli.com

*Proposed Counsel for The Official Committee of Unsecured Creditors of Energy Future Holdings Corp., et al.*

ny-1149578