## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) | Case No. 14-10979 (CSS) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | **Re: D.I. 461, 472, 552, 694, 1123** |

## DEBTORS' OPPOSITION TO MOTION OF CSC TRUST COMPANY OF DELAWARE, AS INDENTURE TRUSTEE, FOR CERTIFICATION OF DIRECT APPEAL UNDER 28 U.S.C. § 158(d)(2)

---

[1]    The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, for which joint administration has been granted, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

The above-captioned debtors and debtors in possession (collectively, the "Debtors") file this Opposition (this "Opposition") to the *Motion of CSC Trust Company of Delaware, as Indenture Trustee, for Certification of Direct Appeal Under 28 U.S.C. § 158(d)(2)* [D.I. 1123] (the "Motion") filed by the indenture trustee for the 10.00% EFIH First Lien Notes (the "Trustee"). In support of this Opposition, the Debtors respectfully state as follows.

### Preliminary Statement

1.      This Court approved the First Lien Settlement (the "Settlement"), and the Trustee failed to obtain a stay of that decision from the District Court. The Trustee has now appealed this Court's decision approving the Settlement, and now, without citing a single case in its favor, the Trustee asks this Court to certify that the Trustee's appeal should bypass the District Court and proceed directly to the U.S. Court of Appeals for the Third Circuit. This Court should deny the Motion.

2.      Direct appeals are most appropriate where a Court of Appeals is asked to decide a pure legal issue. Although the Trustee's appeal attempts to invoke such an issue, the actual Settlement order the Trustee now appeals does not present a pure issue of law. Instead, this Court approved the Settlement by applying the well-established legal standard for approving pre-confirmation settlements to the particular facts of this Settlement. The Trustee's appeal of that ruling therefore does not present any pressing legal questions or any conflict with other courts for which a direct appeal is designed. Accordingly, the Trustee's motion fails to establish *any* of the statutory bases for certifying a direct appeal.

3.      Further, the Debtors should not be deprived of the opportunity for intermediate appellate review. The District Court is highly accustomed to determining factual issues, and this fact-specific appeal would benefit greatly from the additional assessment that Court will provide

1

to the legal application to facts presented in this appeal. The Trustee, similarly, should not be permitted to effectively avoid review from the same forum that denied its stay application.

4.      Additionally, direct appeal of this Settlement would serve no purpose because the Settlement has already been consummated and would be next-to-impossible to unwind. The Debtors funded their First Lien DIP Facility, in part, through the exchange of First Lien Notes held by settling holders into loans issues pursuant to such First Lien DIP Facility. This Settlement is thus a significant precursor to the Debtors restructuring plan, and unwinding the settlement payments would potentially leave a hole in the Debtors' DIP Financing. The Trustee's emergency stay motion filed in the District Court repeatedly invoked its concern that review of the Settlement would be impossible if a stay is denied and the Settlement is consummated. *See* Emergency Mot. 1, ¶¶ 3, 42, 47 [Dist. Ct. No. 1:14-cv-00723, D.I. 2]. The District Court denied that stay motion, and approximately $1.8 billion in pre-petition First Lien Notes have now been rolled over into the First Lien DIP Facility as part of the Settlement. A direct appeal would not materially advance this case where, as here, the appeal is already statutorily and equitably moot.

## Background

5.      On June 6, 2014, this Court held a hearing concerning whether, as a part of its Chapter 11 reorganization, EFIH could repay the First Lien Notes, which were automatically accelerated by EFIH's bankruptcy filing and due and payable immediately, thus saving the Debtors potentially tens of millions of dollars in interest payments. To this end, the Debtors secured $5.4 billion in First Lien DIP financing, a large portion of which has already been used to repay the First Lien Notes.

2

6.    Certain holders of First Lien Notes claim that they are owed a "makewhole premium" on these notes, even though the governing Indenture does not provide for such payment where, as here, the First Lien debt has been automatically accelerated by EFIH's bankruptcy filing and thus only the Notes are due and payable immediately.  The Debtors disagree that any such premium is owed, but in an effort to advance the reorganization, the Debtors negotiated, before or shortly after the Petition Date, a settlement of these so-called makewhole claims with three holders of a substantial portion these notes—Fidelity, PIMCO, and WAMCO.  Under the terms of the First Lien Settlement, these holders agreed to exchange their First Lien Notes, and settle their asserted makewhole claims, for debt issued under the EFIH First Lien DIP Facility.  The Debtors also opened the terms of this settlement on a postpetition basis to other holders of First Lien Notes by launching an exchange offer using tender offer procedures that allowed the Debtors to make the offer to as many holders as reasonably possible while still complying with securities regulations.  *See Notice of Initiation of Opt-In Period for Proposed EFIH First Lien Settlement* [D.I. 363].   Approximately 42% of the First Lien noteholders ultimately agreed to settle their claims on these terms.  *See Supplemental Declaration of David Ying, Senior Managing Director of Evercore Group L.L.C., in Support of (1) the EFIH First Lien DIP Motion and (2) the EFIH Settlement Motion* [D.I. 610-1], at ¶ 36. Parties that chose not to enter into the Settlement retained their rights to pursue a better result through litigation, which is already underway and set for trial in September.

7.    The Trustee objected to both the Settlement's procedure and its substantive terms, and on June 6, 2014, this Court held a full hearing to address those objections.  After that hearing, this Court approved both the substantive terms of this Settlement and the process the Debtors used to offer this specific Settlement to its First Lien Noteholders on a postpetition basis.

3

*See Order Approving EFIH First Lien Settlement* [D.I. 858]; (June 6, 2014, Hr'g Tr. at 256:6 -

261:11 (approving Settlement terms and process)).  The Trustee tried and failed to obtain a stay

pending appeal from this Court and then the District Court.[2]  As a result, the Settlement has now

closed.  The First Lien Noteholders' claims have been exchanged for debt issued under the EFIH

First Lien DIP Financing, and the principal and accrued but unpaid interest due and owing under

the First Lien Notes has been paid in full.  Additionally, the Settlement provided non-settling

First Lien Noteholders a full reservation of their rights to litigate the availability of a supposed

makewhole premium.

8.      Despite the consummation of the Settlement, the payment of principal and

accrued but unpaid interest, and its full reservation of rights regarding the alleged makewhole

premium, the Trustee continues to object to the Settlement and now seeks this Court's

permission to appeal directly to the U.S. Court of Appeals for the Third Circuit, under 28 U.S.C.

§ 158(d)(2)(A).

## Argument

### This Court Should Deny The Trustee's Motion Because
### None Of The Four Potential Bases For Certifying A Direct Appeal Exists.

9.      The Trustee's Motion asserts that the "unique circumstances of this case satisfy

all four" grounds for certifying a direct appeal under 28 U.S.C. § 158(d)(2)(A).  *See* Motion ¶ 13.

Quite the contrary, *no* basis exists for certifying a direct appeal.  *First*, the Trustee seeks direct

---

[2]    In its Emergency Motion for Stay Pending Appeal [Case No. 14-cv-723, D.I. 2], the First Lien Trustee argued,
among other things, that it was likely to prevail on the merits and would be irreparably harmed without a stay
pending appeal.  The District Court rejected both arguments, concluding that (1) it was not presented with
"evidence or . . . arguments sufficient to justify overruling the Bankruptcy Court's finding that the settlement is
non-discriminatory and 'a reasonable exercise of the Debtors' business judgment'" and (2) there was no
evidence that the First Lien Trustee would be irreparably harmed absent a stay pending appeal because the risk
of equitable mootness does not constitute irreparable harm.  *See* District Court Order [Case No. 14-cv-723, D.I.
11].

review of this Court's determination that the Settlement was fair and equitable, an application of

well-established law to case-specific facts. There is therefore no question of *law* to certify for

appeal. *Second*, this Settlement does not implicate a matter of public importance because the

settlement at issue only affects the parties to this bankruptcy proceeding, not the broader public.

*Third*, despite the Trustee's efforts to manufacture a "conflict," the approved settlement does not

clash with any decisions from this or any other Circuit Court of Appeals. *Finally*, a direct appeal

to the Third Circuit would not materially advance this case because the consummated settlement

is both statutorily and equitably moot.

### A.    This Appeal Does Not Present Any Questions Of Law.

10.    This appeal does not seek appellate review of *any* questions of law and therefore

cannot present "a question of law as to which there is no controlling decision"—the first

statutory basis for direct appeal. *See* 28 U.S.C. § 158(d)(2)(A)(i). As the Second Circuit has

persuasively explained, "Congress believed direct appeal would be most appropriate where we

are called upon to resolve a question of law not heavily dependent on the particular facts of a

case, because such questions can often be decided based on an incomplete or ambiguous record."

*Weber v. United States*, 484 F.3d 154, 158 (2d Cir. 2007). Accordingly, courts routinely deny

certification where, as here, the issues to be certified do not present a pure question of law. *See*

*In re Am. Home Mortgage Inv. Corp.*, 408 B.R. 42, 44 (D. Del. 2009) (denying certification for

"mixed questions that implicate the particular circumstances of this case"); *In re 15375 Mem'l*

*Corp.*, No. 06-10859 KG, 2008 WL 2698678, at *1 (D. Del. July 3, 2008) (denying certification

because "[t]he court finds that a pure question of law has not been stated."). For example,

another judge of this Court held that an appeal cannot be certified where "[t]he Appeal disputes

the application of existing controlling law to specific facts and therefore does not first satisfy this

certification criterion." *In re Nortel Networks Corp.*, No. 09-10138(KG), 2010 WL 1172642, at *1 (Bankr. D. Del. Mar. 18, 2010) (Gross, J.).

11.    Although the Trustee has suggested the existence of four overlapping and interrelated questions on appeal, none of these four questions actually presents a legal issue. The Trustee's first issue—whether the Debtors properly offered the Settlement to the postpetition settling parties—seeks to create a question of law where there is none. The Trustee does not cite a single provision or principle of law that this aspect of the Settlement violates. *See* Motion ¶ 15. And the Court expressly declined to rule on this issue, instead finding, as a factual matter, that EFIH had properly offered the Settlement to its noteholders on a postpetition basis. (June 6, 2014, Hr'g Tr. at 261:3-7 ("[I]n the specific and unique facts and circumstances of this first lien settlement I'm not troubled by it and I'm not going to deny approval of the settlement based on that").) The Court then approved the Settlement as reasonable—a quintessential "application of existing controlling law to specific facts." *See In re Nortel*, 2010 WL 1172642, at *1.

12.    The Trustee's second and fourth issues, each concerning supposed discriminatory treatment, are based on an underlying factual premise: that the Settlement was discriminatory. But this Court made precisely the opposite factual finding. Indeed, the Court expressly stated that it did not "view this as a discriminatory settlement." (June 6, 2014, Hr'g Tr. at 256:11-12.) Specifically, the Court found that fees paid to Fidelity, PIMCO, and WAMCO in exchange for commitments to fund the First Lien DIP Facility are reasonable because these First Lien Noteholders were "providing additional consideration in exchange for the different treatment that they are getting." (*Id.* at 257:4-8.) This Court also found, as a factual matter, that settling on the same terms with both the 6 7/8% and 10% Noteholders was fair under the circumstances. (*Id.* at

256:13-21.)  Any direct appeal of these two questions similarly presents fact-bound issues, not questions of law.

13.     Finally, the Trustee's third issue, concerning whether this settlement of claims litigation is a *sub rosa* plan, is not colorable and clearly does not merit expedited appellate review.  *See In re Capmark Fin. Grp. Inc.*, 438 B.R. 471, 513 (Bankr. D. Del. 2010) (a settlement is a *sub rosa* plan only if it "either (i) dispose[s] of all claims against the estate or (ii) restrict[s] creditors' rights to vote.").

14.     Accordingly, because this appeal does not seek review of any pure legal issues, this Court should deny a direct appeal on the first statutory basis for appeal.

**B.      The Appeal Affects Only The Parties In This Bankruptcy Proceeding And Therefore Does Not Involve A Matter Of Public Importance.**

15.     This appeal does not implicate "a matter of public importance."  *See* 28 U.S.C. § 158(d)(2)(A)(i).  "The bar for certification under [the public importance] standard should be set high."  1 *Collier on Bankruptcy* 5.06[4][b] (16th ed. 2014).  "An appeal that impacts only the parties, and not the public at large is not 'a matter of public importance.'"  *In re Nortel*, 2010 WL 1172642, at *2 (citing *Reorganized Debtors ex rel Goody's Family Clothing, Inc. v. Blue Dog Props. Trust (In re Goody's Family Clothing Inc.)*, No. 09-409 (RMB), 2009 WL 2355705, at *2 (D. Del. July 31, 2009)).

16.     As the Trustee admitted in its emergency stay motion, "there is no threat of loss of jobs or shutdown of a company" as a result of this bankruptcy.  *See* Emergency Mot. ¶ 8 [Dist. Ct. No. 1:14-cv-00723, D.I. 2].  Instead, the First Lien Settlement affects, at most, the parties to this Chapter 11 proceeding.  Even then, the parties in interest that are directly affected—the junior creditors that will absorb the cost of the Settlement and the settling parties themselves— have not objected to the Settlement.

7

17.     The Trustee nonetheless suggests that there is a critical question whether "pre-plan tender offers can be used to circumvent the requirement that a bankruptcy plan afford all similarly situated creditors in a class equal treatment." Motion ¶ 18.  Again, this Court found that the Settlement, including the exchange offer, did in fact afford all similarly situated creditors the same treatment.  So any reviewing court must first get past this factual issue before even addressing the question that the Trustee calls a matter of "public importance"—namely, the "process by which the tender offer was conducted."

18.     Moreover, the Trustee's concern that this process is completely without oversight is misplaced.  The Debtors repeatedly made clear that acceptance of the settlement offer—effectuated through an exchange offer—was conditioned on Court approval.  And the Court approved the tender offer process in these circumstances:

> I'm not going to deny this settlement based on the use of this exchange offer. . . . [I]n the specific and unique facts and circumstances of this first lien settlement I'm not troubled by it and I'm not going to deny approval of the settlement based on that.

(June 6, 2014, Hr'g Tr. at 260:17-19, 261:3-6.)  Likewise, there is nothing in the record to suggest that the SEC has no oversight of this process, as the First Lien Trustee suggests.[3]

19.     In any event, none of the Trustee's professed concern with the tender offer rises to the level of "a matter of public importance."  This question (if it even raises a legal question) does not implicate an issue that "transcend[s] the litigants and involves a legal question the resolution of which will advance the cause of jurisprudence to a degree that is usually not the case." *In re Am. Home Mortgage*, 408 B.R. at 44 (quoting 1 *Collier on Bankruptcy* 5.05[A]

---

[3]     To the contrary, the SEC contacted the Debtors on an informal basis in late May regarding the Second Lien tender offer and the Debtors later amended the tender offer to reflect the SEC's input. *See Debtors' Notice of (A) Extension of First Lien Opt-In Period and (B) Amendments to Second Lien Opt-In* [D.I. 883], at 3-4.

8

(15th ed. rev.) and denying certification for a direct appeal). On the contrary, the only effect of the exchange offer was to incrementally increase participation in the Settlement. The particular fact-bound question whether the offer to these settling parties was somehow improper does not "advance the cause of jurisprudence" and therefore does not implicate any public interest.

C.    **This Court's Settlement Approval Does Not Conflict With Any Decisions In This Or Any Other Circuit.**

20.    The Trustee also seeks certification under 28 U.S.C. § 158(d)(2)(A)(ii) based on the erroneous assertion that the Settlement this Court approved conflicts with the decisions of two other Circuits: *United States v. AWECO, Inc. (In re AWECO, Inc.)*, 725 F.2d 293, 298 (5th Cir. 1984), and *In re Iridium Operating LLC*, 478 F.3d 452, 463 (2d Cir. 2007). But these cases are inapposite for two reasons.

21.    *First*, as set forth above, this Court expressly found as a matter of fact that the Settlement in this case was not discriminatory. The issue before the appellate court, therefore, would be whether to overrule this factual finding. And yet the conflict between these decisions, according to the Trustee, concerns whether it is appropriate for a pre-plan settlement to discriminate as a matter of law. Thus, even if the Trustee has identified a circuit split, the appellate court would not need to rule on the issue that is the subject of the circuit split.

22.    *Second*, *Iridium* and *AWECO* do not concern discriminatory settlements. Instead, each case involves the issue whether the absolute priority rule applies to pre-confirmation settlements. The absolute priority rule is a protection for unsecured creditors, however, not secured creditors like the non-settling holders of the First Lien Notes. *See Bank of Am. Nat. Trust & Sav. Ass'n v. 203 N. LaSalle St. P'ship*, 526 U.S. 434, 448-49 (1999) (stating that "the absolute priority rule [is] now on the books as subsection (b)(2)(B)(ii)" of section 1129 of the Bankruptcy Code, which states that equity holders should not recover unless unsecured holders

9

are paid in full).  Tellingly, the Trustee's statement of issues on appeal does not even mention the absolute priority rule.  Motion ¶ 11.  In any event, the Settlement does not violate or even implicate the absolute priority rule; it is simply a settlement of potential claims with first lien creditors.  The Settlement therefore does not conflict with these cases, and a direct appeal is not warranted.

> **D.    A Direct Appeal Would Not Materially Advance This Case Because The Appeal Is Moot.**

23.    The Trustee concludes its broad Motion by tacking on a request for certification based on the fourth and final available ground—that a direct appeal would "materially advance the progress of the case."  *See* 28 U.S.C. § 158(d)(2)(A)(iii).  This view is mistaken. The District Court already declined to stay the Settlement pending appeal, and the Settlement itself has been consummated.  Those First Lien holders who agreed to settle their claims have exchanged their pre-petition First Lien Debt for EFIH First Lien DIP claims.  *Motion of EFH to Approve EFIH Settlements* [D.I. 472], at ¶ 15.  A direct appeal to the Third Circuit would not provide any material benefit to this proceeding that is statutorily and equitably moot.

24.    The Settlement is inextricably tied to the EFIH First Lien DIP, and therefore this proceeding is statutorily moot.  Section 364(e) of the Bankruptcy Code provides that the "validity of debt" issued under section 364(d) is not affected by subsequent reversal on appeal unless the order is stayed or the lending parties acted in bad faith.  Courts commonly hold that appeals of financing orders are moot where section 364(e) precludes any effective relief.  *See, e.g.*, *In re Swedeland Dev. Grp., Inc.*, 16 F.3d 552 (3d Cir. 1994) (en banc) (holding that appeal was moot with respect to funds that had already been distributed under financing order, but not moot with respect to funds that had not been distributed).

10

25.    The order approving the EFIH First Lien DIP explicitly provided for the issuance of debt to satisfy the Debtors' obligations under the First Lien Settlement, and the closing and funding of the EFIH First Lien DIP was expressly conditioned on the entry and effectiveness of an unstayed order approving the Settlement.  Unwinding the First Lien Settlement—if doing so were possible, and it is not—would call the validity of the new debt issued to settling parties into serious question.  The settling parties cannot be forced to give the Debtors cash to keep their loans under the EFIH First Lien DIP outstanding, and the settled EFIH First Lien Notes cannot be reinstated and paid in full with cash the Debtors do not have.  As a result, although the order approving the Settlement is not itself an order under section 364 of the Bankruptcy Code, the application of section 364(e) nevertheless moots this appeal.

26.    Even if this appeal were not moot because of section 364(e), appeals are regularly dismissed as equitably moot where it would be difficult or impossible to unwind the underlying transaction.  *See, e.g.*, *In re Continental Airlines*, 91 F.3d 553, 558-59 (3d Cir. 1996) (en banc); *In re Zenith Electronics Corp.*, 250 B.R. 207, 218 (D. Del. 2000); *see also In re PC Liquidation Corp.*, No. 05-89022-288, 2008 WL 199457, at *5 (E.D.N.Y. Jan. 17, 2008) (finding the appeal of an approved settlement equitably moot and explaining that "equitable mootness is not limited to appeals of orders confirming reorganization plans").  In dismissing appeals as equitably moot, courts often stress that the failure to obtain a stay, even if one was sought, "is ordinarily a factor that weighs in favor of dismissal for equitable mootness."  *Zenith*, 250 B.R. at 214; *see In re UNR Indus., Inc.*, 20 F.3d 766, 770 (7th Cir. 1994) ("A stay not sought, and a stay sought and denied, lead equally to the implementation of the plan of reorganization.")

27.    This Settlement is, in fact, a significant precursor to the prearranged plan of reorganization, and unwinding that transaction will not "materially advance the progress of the

11

case." Quite the opposite. By settling the makewhole premium disputes on the First Lien notes, and then repaying those notes with the right to participate in the First Lien DIP facility, the Debtors spared the estate tens of millions of dollars in interest. *See* Debtors' Objection to Mot. to Compel [D.I. 552], at ¶ 1. Moreover, the Debtors funded their First Lien DIP Facility, in part, by settling with First Lien creditors. After this Court approved the Settlement, the Trustee tried and failed to obtain a stay, and settling First Lien Noteholders rolled their prepetition claims into $1.8 billion worth of the First Lien DIP Facility. Reversing these transactions would be extremely difficult, if not impossible, and would leave a possible hole in the Debtors' First Lien DIP facility. *See Zenith*, 250 B.R. at 214. In fact, the Trustee effectively admits that this transaction has been consummated and that "it may be difficult to obtain appellate review" as a consequence. *See* Motion ¶ 22. Accordingly, the appeal the Trustee seeks to certify directly to the Third Circuit is already, by its apparent own admission, equitably moot.

28.     Because this appeal is both statutorily and equitably moot, a direct appeal to the Third Circuit court would not serve any purpose and should be denied.

*[Remainder of page intentionally left blank]*

RLF1 10498555v.1

WHEREFORE, the Debtors respectfully request that this Court deny the Trustee's

Motion for Direct Appeal.

Dated: July 9, 2014
        Wilmington, Delaware

**RICHARDS, LAYTON & FINGER, P.A.**
Mark D. Collins (No. 2981)
Daniel J. DeFranceschi (No. 2732)
Jason M. Madron (No. 4431)
920 North King Street
Wilmington, Delaware 19801
Telephone:    (302) 651-7700
Facsimile:     (302) 651-7701
Email:          collins@rlf.com
                  defranceschi@rlf.com
                  madron@rlf.com

-and-

**KIRKLAND & ELLIS LLP**
Richard M. Cieri (admitted *pro hac vice*)
Edward O. Sassower, P.C. (admitted *pro hac vice*)
Stephen E. Hessler (admitted *pro hac vice*)
Brian E. Schartz (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022-4611
Telephone:    (212) 446-4800
Facsimile:     (212) 446-4900
Email:          richard.cieri@kirkland.com
                  edward.sassower@kirkland.com
                  stephen.hessler@kirkland.com
                  brian.schartz@kirkland.com

-and-

James H.M. Sprayregen, P.C. (admitted *pro hac vice*)
Chad J. Husnick (admitted *pro hac vice*)
Steven N. Serajeddini (admitted *pro hac vice*)
300 North LaSalle
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:     (312) 862-2200
Email:          james.sprayregen@kirkland.com
                  chad.husnick@kirkland.com
                  steven.serajeddini@kirkland.com

Proposed Co-Counsel to the Debtors and Debtors in Possession

13