**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re | ) Chapter 11 |
|  | ) |
|  | ) Bankr. Case No. 14-10979 (CSS) |
| ENERGY FUTURE | ) |
| HOLDINGS CORP., *et al.*, | ) Jointly Administered |
|  | ) |
| *Debtors*. | ) Related to D.I. 873 |
|  | ) |

**MOTION OF CSC TRUST COMPANY OF DELAWARE,**
**AS INDENTURE TRUSTEE, FOR CERTIFICATION**
**OF DIRECT APPEAL UNDER 28 U.S.C. § 158(d)(2)**

In order to expedite final resolution of its appeal from this Court's *Order Approving the EFIH First Lien Settlement*, CSC Trust Company of Delaware (the "10% Trustee"), as successor indenture trustee for the 10% First Lien Notes issued by Energy Future Intermediate Holdings LLC ("EFIH LLC") and EFIH Finance Inc.[1] ("EFIH Finance," and together with EFIH LLC, "EFIH" or the "EFIH Debtors"), submits this motion (the "Motion") pursuant to 28 U.S.C. § 158(d)(2) and Rule 8001(f)(3) of the Federal Rules of Bankruptcy Procedure, for certification of a direct appeal to the United States Court of Appeals for the Third Circuit (the "Third Circuit"). A proposed form of Certification is attached hereto as Exhibit A.

In support of this Motion, the 10% Trustee respectfully represents and sets forth as follows:

## PRELIMINARY STATEMENT

1.      The Preliminary Statement and Factual Background set forth in the *Objection of CSC Trust Company of Delaware, as Indenture Trustee, to the EFIH Debtors' Motion to Approve the "First Lien Settlement"* [D.I. 694] are incorporated herein by reference.

2.      The 10% Trustee has filed a Notice of Appeal (the "Appeal"), BAP-14-024 [D.I. 873] of the *Order Approving the EFIH First Lien Settlement* (the "Order") entered on June 6, 2014 [D.I. 858] by this Court. A true and correct copy of the Order is attached hereto as Exhibit B. Now, the 10% Trustee requests certification of this Appeal for direct appeal to the Third Circuit.

---

[1] EFIH Finance Inc. is a wholly owned subsidiary of Energy Future Intermediate Holdings LLC that was formed for the purpose of serving as the co-issuer of the 10% First Lien Notes. *See* Information Memorandum at 7 [D.I. 363-1, pg. 22 of 90].

3.      The Appeal addresses fundamental questions relating to the substance and procedure of the EFIH Debtors' settlement of first lien noteholders' claims for redemption premiums (the "First Lien Settlement"). Critically, the First Lien Settlement was accomplished through the launch—without prior court approval—of a tender and solicitation process that is unprecedented in chapter 11 bankruptcy. The EFIH Debtors sought not only the extraordinary relief of paying claims outside a plan, but also the authority to pay equivalent claims on a differential and unequal basis. The manner in which the EFIH Debtors have chosen to reorganize their capital structure and lock in creditors' recoveries raises important and novel questions under both the bankruptcy laws and securities laws. Even the EFIH Debtors' financial advisor admitted this transaction is unprecedented in chapter 11. Despite overruling the 10% Trustee's objection, this Court acknowledged that the transaction was highly unusual, noting "it's something where thinking is really going to have to develop." June 6, 2014 Hearing Transcript at 260:19–25.

4.      The 10% Trustee's appeal raises the question whether the use of a non-court approved tender offer for debt in a chapter 11 case is precluded by the Chandler Act of 1938 as well as the 1978 Bankruptcy Code overhaul, in which Congress virtually eliminated the SEC from the chapter 11 process, while retaining both (i) prior court approval of solicitation to groups of creditors and (ii) a requirement of equal treatment of creditors within a class.

5.      The Order on appeal also raises novel questions regarding settlement of claims of similarly situated creditors on terms providing such creditors substantially unequal recoveries on their identical claims. The Order approved a class-wide settlement

that would pay, in the form of new super-priority notes, 100% of the principal amount of each of two sets of First Lien Notes, as well as an additional payment of 5% of the principal amount, representing settlement of the noteholders' redemption premium claims. That payment represents a 60% recovery by the holders of 6⅞% first-lien bonds and a 25% recovery by the holders of 10% first-lien bonds, although their claims are identical in all relevant respects. The 10% Trustee's appeal thus raises the question whether it is permissible to settle otherwise identical claims of noteholders, who are in the same class of creditors, on terms providing for disparate recovery that would be forbidden as part of a plan.

6.     Direct appellate review would speed ultimate resolution of these questions and assist the Court and parties alike. Through its statements and pleadings, EFIH has made clear that the First Lien Settlement is the first in a series of transactions that it decided to pursue sequentially – in a divide and conquer manner and contrary to the plan process sanctioned by Congress. On June 30, 2014, the EFIH Debtors will seek approval of another settlement structured as a postbankruptcy tender offer by EFIH, to which the 10% Trustee has objected.

7.     This case is moving fast, and direct appellate review will allow for timely guidance on these novel issues. One of the major underlying disputes in the bankruptcy case between the 10% Trustee and the EFIH Debtors is a $660 million disputed secured claim, and a trial is set for September 10–12, 2014. EFIH Debtors also have announced that they will seek confirmation of a plan of reorganization in early 2015, with that process beginning as early as the fall of 2014. Certification for direct appeal, to determine whether the First Lien Settlement was permissible at all, is critical to prevent

3

this course of events from proceeding on a false premise, with a potentially massive waste of judicial, estate, and creditor resources. These issues are novel and are certain to be appealed to the Third Circuit at some point during the EFIH Debtors' cases. Expediting that process via direct appellate review would afford this Court and the parties the benefit of the Third Circuit's views in a more timely and beneficial fashion.

## JURISDICTION AND VENUE

8.      This Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157, 158(d)(2). This motion has been timely filed because fewer than 60 days have elapsed since entry of the Order. *Id.* § 158(d)(2)(E).

9.      The 10% Trustee requests certification from this Court pursuant to Fed. R. Bankr. P. 8001(f), which provides that a "certification shall be filed in the court in which a matter is pending . . . [and] [a] matter is pending in a bankruptcy court until the docketing, in accordance with Rule 8007(b)." Docketing under Rule 8007(b) requires the transmittal of the record for appeal to the clerk of the district court. Here, because the record of appeal has not yet been prepared and, therefore, has not yet been transmitted to the clerk of the District Court, the "matter is pending" in this Court, and the 10% Trustee has accordingly submitted its Motion to this Court.[2]

## QUESTIONS PRESENTED AND RELIEF SOUGHT

10.      Pursuant to Fed. R. Bankr. P. 8001(f) and 28 U.S.C. § 158(d)(2), the 10% Trustee requests that this Court certify the Appeal for immediate appeal to the Third Circuit. Section 158(d)(2) provides for such certification if:

---

[2] 10% Trustee approached Debtors regarding a potential joint motion for certification pursuant to Rule 8001(f)(2)(B). Debtors declined this invitation, but cited no relevant considerations for this denial.

(i) the order involves a "question of law as to which there is no controlling decision of the court of appeals for the circuit or of the Supreme Court of the United States, or involves a matter of public importance,"

(ii) "the judgment, order, or decree involves a question of law requiring resolution of conflicting decisions;" or

(iii) an immediate appeal "may materially advance the progress of the case or proceeding in which the appeal is taken.

28 U.S.C. § 158(d)(2)(A).

11.     There are four questions presented in this appeal:

Question 1.  Whether a debtor in possession under chapter 11 of the Bankruptcy Code may conduct a tender offer for its own securities, and whether it can do so without prior bankruptcy court approval.

Question 2.  Whether such a tender offer, when made as part of a proposed class-wide settlement in a chapter 11 case, proposed at the very outset of the case and not as part of a plan of reorganization, can provide different recovery to identically situated creditors, in a manner such that one set of creditors receives less than half of the other group measured as a percentage of their settled claims, even though such disparities would be impermissible as part of a court-approved plan.

Question 3.  Whether this class-wide settlement, at this stage of the Debtors' global restructuring program, constitutes a *sub rosa* plan?

Question 4.  If permissible as a pre-plan transaction, must the settlement comply with plan requirements, including protection against disparate treatment of creditors within the same class, *United States v. AWECO, Inc. (In re AWECO, Inc.)*, 725 F.2d 293 (5th Cir. 1984), or if deviation from plan requirements is permitted, *Motorola, Inc. v. Off. Comm. of Unsecured Creditors (In re Iridium Operating LLC)*, 478 F.3d 452 (2d Cir. 2007), was the standard satisfied?

12.     The 10% Trustee seeks: a ruling (i) that a debtor in possession cannot conduct a tender offer for its own securities (or at least without prior court approval), because of the potential for coercive tender offers and disparate treatment of creditors, and the detriment to creditors' procedural protections under the Bankruptcy Code; or (ii)

that such a tender offer is impermissible as part of a class-wide settlement that pays identically situated creditors different recoveries that would be impermissible as part of a court-approved plan.  EFIH Debtors are very likely to launch additional tender offers as part of settlements as a way to avoid plan requirements, such as the equal-treatment-of-creditors rule.  As such, a ruling that these practices are unlawful is necessary to avoid further abuse of the bankruptcy process.

## ARGUMENT

13.    Section 158(d)(2) permits this Court to certify a direct appeal to the Third Circuit if *any* of the above criteria are met.  *See* 28 U.S.C. § 158(d)(2); 1 Collier on Bankruptcy ¶ 5.06[2] ("[A]ny one of the four criteria set out above would fulfill the statutory predicate for certification[.]").  Although this test requires only satisfaction of one factor, the unique circumstances of this case satisfy all four.

I.    **THE APPEAL PRESENTS QUESTIONS OF LAW FOR WHICH THERE ARE NO CONTROLLING PRECEDENTS**

14.    There is no controlling precedent on either of the two issues raised in this appeal.  As such, certification is appropriate on this ground alone.

15.    As to the first question, whether a debtor in possession may conduct a tender offer for its own securities without prior bankruptcy court approval, all parties agree that this is entirely a question of first impression for the courts.  The transaction at issue is indisputably novel.  Even the closest analogous tender offer transactions, of which the EFIH Debtors identified only three, were factually different because each occurred much later in the bankruptcy and the debtors obtained prior approval of the

tender procedures.  Further, in those cases, the courts did not address the question of whether such tender offers are permissible because no creditor raised such a challenge.

16.    The second question – whether such a tender offer, conducted as part of a settlement in a chapter 11 case and proposed not as a plan of reorganization but at the very outset of the case, can provide different recovery to identically situated creditors as a percentage of their claims – is also a matter of first impression for the Third Circuit.[3]  At least two Courts of Appeals have ruled that pre-plan settlements cannot violate the rules that apply at confirmation.  *In re Iridium*, 478 F.3d 452, 463 (2d Cir. 2007); *United States v. AWECO, Inc. (In re AWECO, Inc.)*, 725 F.2d 293, 298 (5th Cir. 1984).  The Third Circuit has ruled that a settlement in connection with a prepackaged chapter 11 reorganization plan cannot violate Section 1123(a)(4) of the Bankruptcy Code, which is the antidiscrimination rule requiring the same treatment of all creditors in a class and the provision that the 10% Trustee asserts was violated by the EFIH Debtors' first lien settlement.  *See In re Combustion Eng'g, Inc.*, 391 F.3d 190, 239 (3d Cir. 2004).  The Third Circuit has yet to confront a case implicating the equal-treatment-of-creditors rule in the context of a pre-plan settlement, especially one that takes the form of a tender offer launched prior to court approval. But there is no reason to think that the Third Circuit would permit such discriminatory treatment in a settlement subject only to Rule 9019

---

[3] In its opinion authorizing the transaction, this Court opined that the differential in recovery, as a percentage of the 6⅞% noteholders and 10% noteholders' claims, might be justified by differences in their respective claims.  Subsequently, the EFIH Debtors informed the District Court that the differential was merely a matter of convenience to the EFIH Debtors, who chose to pay the claims as a percentage of principal, rather than as a percentage of the claims. *Debtors' Memorandum in Opposition to CSC Trust Company's Emergency Motion to Stay the Order Approving the EFIH First Lien Settlement Pending Appeal*, at 15 ("Debtors sought to maintain the simplicity of the structure of the First Lien Settlement . . . .").

given the Third Circuit's unwillingness in *Armstrong* to sanction a settlement deviating from the absolute priority rule. *In re Armstrong World Indus.*, 432 F.3d 507, 518 (3d Cir. 2005).

## II.     THE SUBJECT MATTER OF THIS APPEAL IS OF PUBLIC IMPORTANCE

17.     The public interest weighs heavily in favor of certification to enable a timely resolution of this appeal.   In a completely unprecedented fashion, the EFIH Debtors launched a tender offer without any SEC oversight and without any pre-launch approval by this Court of the manner and process by which the tender offer was conducted.    This could be a practice widely adopted by debtors in chapter 11 reorganizations. Indeed, the EFIH Debtors intend this tender offer strategy to be a model for future tender offers, including in this very case.   Thus, it needs to be carefully reviewed by the Third Circuit to determine its legality.   This is especially so in this District and the Third Circuit, as a large number of major chapter 11 restructurings occur here.

18.     It is especially important that the Third Circuit decide whether such pre-plan tender offers can be used to circumvent the requirement that a bankruptcy plan afford all similarly situated creditors in a class equal treatment.   This type of transaction will fundamentally change chapter 11 proceedings, and upset the bankruptcy process that Congress carefully designed.   It will permit tender offers of all varieties, at all different times in a bankruptcy case.   Many are likely to be coercive, even if the proponents claim to comply with relevant SEC rules because the SEC has relatively few rules governing

debt tender offers, and certainly no rules that would guarantee the type of protections afforded by the bankruptcy plan process.

## III.  THE APPEAL INVOLVES A QUESTION OF LAW REQUIRING RESOLUTION OF CONFLICTING DECISIONS

19.    As noted above, two Courts of Appeals have determined that pre-plan settlements must abide by the rules applicable to plan confirmation.  However, those two circuit courts differ in their approach.  One imposes a categorical ban on settlements that run afoul of confirmation requirements.  *AWECO*, 725 F.2d at 298. The other allows a small amount of flexibility to courts, if the deviation from plan requirements is both small and necessary.  *Iridium*, 478 F.3d at 463.

20.    The two different legal rules are not outcome determinative here—the First Lien Settlement fails both tests.  But there is no question that there is conflicting authority on this point.  The Third Circuit has not ruled on the issue of the application of confirmation rules to pre-plan settlements.

## IV.  RESOLUTION OF THE APPEAL WOULD MATERIALLY ADVANCE THE CHAPTER 11 CASE

21.    The EFIH Debtors are already trying to do again what they have done in the First Lien Settlement.  Currently scheduled for June 30, 2014 is a hearing on a similarly structured "postbankruptcy tender offer" for EFIH's second lien notes.  As noted above, this Court has "reserved" on the question of whether a chapter 11 debtor can engage in such a transaction, even though it overruled the 10% Trustee's objection on those same questions in the context of the First Lien Settlement.

22.    Without final resolution by the Third Circuit, EFIH appears intent on making additional tender offers.  And, there is no question that creditors who object will

take appeals, given the stakes involved and the unprecedented nature of the transactions; and, as here, it may be difficult to obtain appellate review of these offers before the transaction is consummated.

23.     EFIH Debtors' tactic is to present both the bankruptcy court and appellate courts with transactions that are *fait accompli* while presenting the spectre that this large chapter 11 case will be disrupted unless the unprecedented transactions are approved. In an amazing turn, the EFIH Debtors purported to amend the terms of the First Lien Settlement tender offer on Monday June 9, 2014, *after* this Court entered an order approving the settlement, which further evidences how the settlement model lacks the protection that the plan process affords creditors.  Similarly, the EFIH Debtors show every intent of pushing forward with an attempt to confirm a plan of reorganization immediately on the heels of those transactions,[4] even though the EFIH Debtors admit that regulatory approvals and other hurdles could delay completion of the chapter 11 case until early 2015.  The rapid pace of this reorganization is further reason to certify the important issues presented for direct review by the Third Circuit.

24.     Because it will take at least 8 months (EFIH Debtors have clearly planned for far more with a 24-month DIP facility) to confirm a reorganization plan, a direct appeal would provide significant guidance to the Court.  The plan process, which will involve negotiation among competing constituent groups and judicial rulings when agreement cannot be reached, will benefit from an expedited and certain decision from the Third Circuit clarifying major threshold issues such as the propriety of the First Lien

---

[4] The Restructuring Support and Lock-Up Agreement (Dkt. 98) provides that if a plan does not occur within less than a year, then consenting creditors to the Agreement may terminate their rights under the agreement. § 8.01.

Settlement (and soon the propriety of the Second Lien Settlement and related transactions). A one-step appeal to the Third Circuit will prevent delay, conserve resources, and provide a prompt decision on an issue of first impression in this circuit.

## CONCLUSION

25.     For the foregoing reasons, the 10% Trustee respectfully requests that this Court certify this appeal for direct review by the Third Circuit.

*[Remainder of Page Left Intentionally Blank]*

Dated: June 25, 2014
Wilmington, Delaware

Respectfully submitted,

COLE, SCHOTZ, MEISEL,
FORMAN & LEONARD P.A.

/s/ Norman L. Pernick
Norman L. Pernick (DE No. 2290)
  npernick@coleschotz.com
J. Kate Stickles (DE No. 2917)
  kstickles@coleschotz.com
500 Delaware Avenue
Suite 1410
Wilmington, DE 19801
Tel:  302.652.3131
Fax:  302.652.3117

Warren A. Usatine
25 Main Street
P.O. Box 800
Hackensack, NJ 07602
Telephone: 201-489-3000
Facsimile:  201-489-1536

   -AND-

ROPES & GRAY LLP
Keith H. Wofford
  keith.wofford@ropesgray.com
Michael S. Winograd
  michael.winograd@ropesgray.com
1211 Avenue of the Americas
New York, NY 10036-8704
Tel:  212.596.9000
Fax:  212.596.9090

D. Ross Martin
  ross.martin@ropesgray.com
Andrew G. Devore
  andrew.devore@ropesgray.com
Prudential Tower
800 Boylston Street
Boston, MA 02199-3600
Tel:  617.951.7000
Tel:  617.951.7050

   -AND-

DRINKER BIDDLE & REATH LLP
James H. Millar
  James. Millar@dbr.com
 1177 Avenue of the Americas
41st Floor
New York, NY 10036-2714
Tel:  212.248.3264
Fax:  212.248.3141

*Counsel for CSC Trust Company of Delaware
as successor indenture trustee*

12

## IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ) | Chapter 11 |
| ) | |
| In re ) | Case No. 14-10979 (CSS) |
| ) | |
| ENERGY FUTURE ) | (Jointly Administered) |
| HOLDINGS CORP., *et al.*, ) | |
| ) | **Objection Deadline: July 9, 2014 at 4:00 p.m.** |
| Debtors. ) | **Hearing Date: July 18, 2014 at 9:30 a.m.** |

## NOTICE OF MOTION OF CSC TRUST COMPANY OF DELAWARE, AS INDENTURE TRUSTEE, FOR CERTIFICATION OF DIRECT APPEAL UNDER 28 U.S.C. § 158(d)(2)

**TO:**  (i) counsel to the Debtors; (ii) the Office of the United States Trustee for the District of Delaware; (iii) counsel to the Official Committee of Unsecured Creditors; and (iv) all parties having requested service under Rule 2002-1(b) of the Local Rules.

**PLEASE TAKE NOTICE** that, on June 25, 2014, CSC Trust Company of Delaware (the "10% Trustee"), as successor indenture trustee for the 10% First Lien Notes issued by Energy Future Intermediate Holdings LLC ("EFIH LLC") and EFIH Finance Inc. ("EFIH Finance," and together with EFIH LLC, "EFIH" or the "EFIH Debtors"), filed the **Motion of CSC Trust Company of Delaware, as Indenture Trustee, for Certification of Direct Appeal Under 28 U.S.C. § 158(d)(2)** (the "Motion"), which seeks entry of an order, pursuant to 28 U.S.C. § 158(d)(2) and Rule 8001(f)(3) of the Federal Rules of Bankruptcy Procedure, for certification of a direct appeal to the United States Court of Appeals for the Third Circuit.

**PLEASE TAKE FURTHER NOTICE** that objections, if any, to the Motion must be made in writing, filed with the Clerk of the United States Bankruptcy Court for the District of Delaware, 824 Market Street, 3rd Floor, Wilmington, Delaware 19801, and served upon and received by the undersigned counsel, **on or before 4:00 p.m. on July 9, 2014 (Eastern Time)**.

**PLEASE TAKE FURTHER NOTICE** that if an objection is timely filed, served and received, and the objection is not otherwise timely resolved, a hearing on the Motion will be held on **July 18, 2014 at 9:30 a.m. (Eastern Time)** before the Honorable Christopher S. Sontchi, United States Bankruptcy Judge, United States Bankruptcy Court for the District of Delaware, 5th Floor, Courtroom No. 6, 824 North Market Street, Wilmington, Delaware 19801.

IF YOU FAIL TO RESPOND IN ACCORDANCE WITH THIS NOTICE, THE COURT MAY GRANT THE RELIEF DEMANDED BY THE MOTION WITHOUT FURTHER NOTICE OR HEARING.

Dated: June 25, 2014

Respectfully submitted,

COLE, SCHOTZ, MEISEL,
FORMAN & LEONARD P.A.

*/s/ Norman L. Pernick*
Norman L. Pernick (DE No. 2290)
    npernick@coleschotz.com
J. Kate Stickles (DE No. 2917)
    kstickles@coleschotz.com
500 Delaware Avenue
Suite 1410
Wilmington, DE 19801
Tel:  302.652.3131
Fax: 302.652.3117

Warren A. Usatine
25 Main Street
P.O. Box 800
Hackensack, NJ 07602
Tel:  201-489-3000
Fax: 201-489-1536

-AND-

ROPES & GRAY LLP
Keith H. Wofford
    keith.wofford@ropesgray.com
Michael S. Winograd
    michael.winograd@ropesgray.com
1211 Avenue of the Americas
New York, NY 10036-8704
Tel:  212.596.9000
Fax: 212.596.9090

D. Ross Martin
    ross.martin@ropesgray.com
Andrew G. Devore
    andrew.devore@ropesgray.com
Prudential Tower
800 Boylston Street
Boston, MA 02199-3600
Tel:  617.951.7000
Tel:  617.951.7050

-AND-

DRINKER BIDDLE & REATH LLP
James H. Millar
    James. Millar@dbr.com
1177 Avenue of the Americas
41st Floor
New York, NY 10036-2714
Tel:  212.248.3264
Fax: 212.248.3141

*Counsel for CSC Trust Company of Delaware*
*as successor indenture trustee*

# **EXHIBIT A**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| | ) | Chapter 11 |
| In re | ) | |
| | ) | Bankr. Case No. 14-10979 (CSS) |
| ENERGY FUTURE | ) | |
| HOLDINGS CORP., *et al.*, | ) | Jointly Administered |
| | ) | |
| *Debtors.* | ) | Related to D.I. _____ |
| | ) | |

**CERTIFICATION FOR DIRECT APPEAL TO
THE THIRD CIRCUIT COURT OF APPEALS**

This matter coming before the Court on the motion (the "Motion") of the CSC Trust Company of Delaware ("CSC Trust"), for Certification for Direct Appeal to the Third Circuit Court of Appeals (the "Third Circuit") of the pending appeal (the "Appeal") by the CSC Trust from this Court's *Order Approving EFIH First Lien Settlement*; and the Court having jurisdiction over this Motion pursuant to 28 U.S.C. §§ 158(d)(2); and the Court having reviewed the papers filed in support of the Motion and having considered the prior proceedings herein, and finding good cause for the requested certification; and upon due consideration, the court hereby finds:

1.      The Appeal presents questions of law, including some questions for which there is no controlling decision of the Third Circuit;

2.      The Appeal involves matters of public importance;

3.      The Appeal involves a question of law that requires resolution of conflicting decisions of the Second and Fifth Circuits;

3.      A direct determination of the Third Circuit would materially advance the progress of these proceedings; and

IT IS HEREBY ORDERED that, pursuant to 28 U.S.C. § 158(d)(2) and Rule 8001(f) of the Federal Rules of Bankruptcy Procedure, the Appeal (as defined in the Motion) is hereby certified for direct appeal to the United States Court of Appeals for the Third Circuit.

Dated: June ___, 2014

_____

THE HONORABLE CHRISTOPHER S. SONTCHI
UNITED STATES BANKRUPTCY JUDGE

# **<u>EXHIBIT B</u>**

**ORIGINAL**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) Case No. 14-10979 (CSS) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |
| | ) **Re: D.I. 472** |

## ORDER APPROVING EFIH FIRST LIEN SETTLEMENT

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in

possession (collectively, the "Debtors"), for entry of an order (this "Order"), (a) approving the

First Lien Settlement on the terms set forth in **Exhibit A** attached hereto and the First Lien

Opt-In Materials, and (b) authorizing the Debtors to take any and all actions reasonably

necessary to consummate, and to perform any and all obligations contemplated by, the First Lien

Settlement, all as more fully set forth in the Motion; and upon the First Day Declaration, the

Ying Declaration, and the *Supplemental Declaration of David Ying, Senior Managing Director*

*of Evercore Group L.L.C., in Support of (1) the EFIH First Lien DIP Motion and (2) the EFIH*

*Settlement Motion* [D.I. 610]; and the Court having found that it has jurisdiction over this matter

pursuant to 28 U.S.C. §§ 157 and 1334; and the Court having found that this is a core proceeding

pursuant to 28 U.S.C. § 157(b)(2); and the Court having found that venue of these chapter 11

---

[1]   The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the
debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these
chapter 11 cases, for which joint administration has been granted on an interim basis, a complete list of the
debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list
of such information may be obtained on the website of the debtors' claims and noticing agent at
http://www.efhcaseinfo.com.

[2]   Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

cases and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the

Court having found that the relief requested in the Motion is in the best interests of the Debtors'

estates, their creditors, and other parties in interest; and the Court having found that the Debtors

provided appropriate notice of the Motion and the opportunity for a hearing on the Motion under

the circumstances; and the Court having reviewed the Motion and having heard the statements in

support of the relief requested therein at a hearing, if any, before the Court (the "Hearing"); and

the Court having determined that the legal and factual bases set forth in the Motion, including

sections 105 and 363(b) of the Bankruptcy Code and Bankruptcy Rule 9019, and at the Hearing

establish just cause for the relief granted herein; and upon all of the proceedings had before the

Court; and after due deliberation and sufficient cause appearing therefor, *and for the reasons* it is HEREBY *set forth at the Hearing )*

ORDERED THAT:

1.      The Motion is granted as set forth herein.

2.      The First Lien Settlement is hereby approved on the terms set forth in **Exhibit A**

attached hereto and the First Lien Opt-In Materials.

3.      The Debtors are authorized to enter into the First Lien Settlement with (a) the

First Lien RSA Parties on the terms set forth in **Exhibit A** attached hereto and as otherwise set

forth herein and (b) all other holders of EFIH First Lien Notes that elect to participate in the First

Lien Settlement on the terms set forth in the First Lien Opt-In Materials (collectively, the

"Settling EFIH First Lien Note Holders").

4.      The First Lien DMA, including but not limited to the expense reimbursement and

indemnity obligations contained therein, is approved, and the Debtors are authorized to perform

thereunder.

5.      Upon consummation of the First Lien Settlement, any and all claims, rights, and causes of action related to the EFIH First Lien Notes held by Settling EFIH First Lien Note Holders shall be released and extinguished.  As soon as reasonably practicable thereafter, the EFIH First Lien Note Indenture trustee shall, in its customary manner, cancel the EFIH First Lien Notes held by Settling EFIH First Lien Note Holders, provide to the Debtors evidence of such cancellation, and take any such other customary or reasonable actions in connection with the consummation of the First Lien Settlement, including, without limitation, acceptance of certain withdrawals via "Deposit or Withdrawal at Custodian" and confirmation of any drawdown submitted to the EFIH First Lien Note Indenture trustee by The Depository Trust Company in connection with the consummation of the First Lien Settlement.

6.      The Debtors are authorized to take any and all actions necessary to consummate, and to perform any and all obligations contemplated by, the First Lien Settlement and the First Lien Opt-In Materials, including the payment of any fees and expenses related to any of the foregoing.

7.      Notice of the Motion as provided therein shall be deemed good and sufficient and the requirements of the Local Bankruptcy Rules are satisfied by such notice.

8.      For the reasons set forth on the record at the hearing, Notwithstanding the possible applicability of Bankruptcy Rules 6004(h), 7062, 9014 or otherwise, the terms and conditions of this Order shall be immediately effective and enforceable as of June 12, 2014 at 12:01 a.m.

9.      All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

10.    The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Motion.

11.    The Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation of this Order.

Wilmington, Delaware
Dated: ___Jvn6___, 2014

THE HONORABLE CHRISTOPHER S. SONTCHI
UNITED STATES BANKRUPTCY JUDGE

## EXHIBIT A

**First Lien Settlement Terms of First Lien RSA Parties**

## First Lien Settlement Terms of First Lien RSA Parties

| First Lien Settlement Recovery: | In full satisfaction of their EFIH First Lien Note Claims, the First Lien RSA Parties will exchange their EFIH First Lien Note Claims, including any Alleged First Lien Makewhole Claims, into EFIH First Lien DIP Claims in an amount equal to the greater of: |
|---|---|
| | (a)  (i) 105% of the principal plus (ii) 101% of accrued and unpaid interest at the non-default rate on such principal, through consummation of the EFIH First Lien DIP Facility (deemed to include the original issue discount paid in respect of the EFIH First Lien DIP Facility); and |
| | (b)  (i) 104% of the principal plus (ii) accrued and unpaid interest at the non-default rate on such principal, through consummation of the EFIH First Lien DIP Facility, plus (iii) original issue discount paid in respect of the EFIH First Lien DIP Facility, in connection with the initial syndication of the EFIH First Lien DIP Facility. |
| | The First Lien RSA Parties will also be entitled to interest (in no event less than LIBOR plus 3.25% with a LIBOR floor of 1.00%) on the EFIH First Lien DIP Facility, but will not be entitled to any other fees (including commitment fees) paid under the EFIH First Lien DIP Facility. |
| **Backstop Commitment:** | PIMCO will fund, in the amount of $1.45 billion, and WAMCO, in the amount of $250 million (each, the "Backstop Amount," and together, the "Backstop Commitment," and such backstopping parties, the "Backstop Parties"), the EFIH First Lien DIP Facility (the "Backstop Financing"). |
| | • In connection with any loans made under the Backstop Commitment, the Backstop Parties will be entitled to: (a) interest (in no event less than LIBOR plus 3.25% with a LIBOR floor of 1.00%); and (b) original issue discount (equal to the greater of (i) 1.0% or (ii) such original issue discount as may be paid to the EFIH First Lien DIP Lenders), subject to a Clear Market Provision. The "Clear Market Provision" shall mean the requirement that the Settling EFIH First Lien Note Holders not syndicate or attempt to syndicate any portion of their commitment under the EFIH First Lien DIP Facility, prior to the earlier of (x) the date that the lenders under the EFIH First Lien DIP Facility no longer hold any of the EFIH First Lien DIP Facility (i.e., successful syndication date) and (y) June 13, 2014. |
| | • The Backstop Parties will also be entitled to the following backstop fees (the "Backstop Fees"), upon entry of the final order approving the EFIH First Lien DIP Facility and the funding of any loans pursuant to the Backstop Commitment: |
| | ○ a commitment fee of 1.75% for PIMCO and 1.0% for WAMCO, paid in respect of such funded loans; and |
| | ○ PIMCO will also receive payment of its reasonable and documented professional fees and expenses. |
| **Effect; Most Favored Nation Provision:** | The First Lien Settlement shall be binding on First Lien RSA Parties in all respects and irrespective of the outcome of any litigation in respect of any other Alleged First Lien Makewhole Claims; provided, however, that if EFIH reaches one or more voluntary settlements with a non-settling holder of EFIH First Lien Notes in the period commencing on the Petition Date and ending on the date on which the EFIH First Lien DIP Facility is fully funded pursuant to a final order entered by the Bankruptcy Court, which provides a higher percentage recovery to a non-settling holder of EFIH First Lien Notes than does the First Lien Settlement, the First Lien Settlement shall be automatically amended to provide such higher percentage recovery to Fidelity and PIMCO. |

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re | ) | Chapter 11 |
|  | ) |  |
| ENERGY FUTURE | ) | Case No. 14-10979 (CSS) |
| HOLDINGS CORP., *et al.*, | ) |  |
|  | ) | Jointly Administered |
| *Debtors.* | ) |  |
|  | ) |  |

### CERTIFICATE OF SERVICE

I, J. Kate Stickles, state that on June 25, 2014, I caused a copy of the **Motion of CSC Trust Company of Delaware, as Indenture Trustee, for Certification of Direct Appeal Under 28 U.S.C. § 158(d)(2)** to be served via First-Class Mail and Electronic Mail on the parties on the attached service list.

COLE, SCHOTZ, MEISEL,
FORMAN & LEONARD, P.A.

By:  */s/  J. Kate Stickles*
J. Kate Stickles
500 Delaware Avenue, Suite 1410
Wilmington, DE  19801
Telephone:  302.652.3131

Mark D. Collins, Esquire
Daniel J. DeFranceschi, Esquire
Jason M. Madron, Esquire
Richards, Layton & Finger, P.A.
One Rodney Square, P.O. Box 551
Wilmington, DE 19899

Richard Cieri Esquire
Edward Sassower, Esquire
Stephen Hessler Esquire
Brian E Schartz Esquire
Kirkland & Ellis LLP
601 Lexington Ave
New York, NY 10022

James H.M. Sprayregen, P.C.
Chad Husnick, Esquire
Steven Serajeddini, Esquire
Kirkland & Ellis LLP
300 N. LaSalle
Chicago, IL 60654

David R. Dempsey, Esquire
Kirkland & Ellis LLP
655 Fifteenth Street, N.W.
Washington, D.C. 20005-5793

Mark E. McKane, Esquire
Kirkland & Ellis LLP
555 California Street
San Francisco, CA 94104

Richard Schepacarter, Esquire
United States Trustee
844 King Street, Room 2207
Lockbox #35
Wilmington, DE 19801

James M. Peck, Esquire
Brett H. Miller, Esquire
Lorenzo Marinuzzi, Esquire
Todd M. Goren, Esquire
Samantha Martin, Esquire
Morrison & Foerster LLP
250 West 55th Street
New York, NY 10019-9601

Christopher A. Ward, Esquire
Justin K. Edelson, Esquire
Shanti M. Katona, Esquire
Polsinelli PC
222 Delaware Avenue, Suite 1101
Wilmington, DE 19801