**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) | Case No. 14-10979 (CSS) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | **Re: D.I. 1496** |

**DEBTORS' RESPONSE TO THE STATUS REPORT OF THE OFFICIAL
COMMITTEE OF UNSECURED CREDITORS CONCERNING DISCOVERY**

---

[1] The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, for which joint administration has been granted, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

The above captioned debtors and debtors in possession (collectively, the "Debtors") submit this response to the July 8, 2014 *Status Report of the Official Committee of Unsecured Creditors Concerning Discovery* [D.I. 1496] (the "Status Report"). The Debtors provide this response to correct inaccuracies in the Official Committee of Unsecured Creditors' (the "Committee's") Status Report and to provide a more complete summary of discovery of the Debtors as of the date of this filing. The Committee drastically understates the Debtors' discovery efforts to date—both seen and unseen—and minimizes the sheer burden of the discovery they seek to impose. Nonetheless, the Debtors have been working hard and will continue to negotiate in good faith in the hopes of addressing the Committee's issues.

## I.    STATUS OF DISCOVERY DIRECTED TO THE DEBTORS FROM ALL CREDITOR CONSTITUENCIES

These restructuring proceedings have been pending for a little over ten weeks. During that time, the Debtors have been bombarded with discovery requests, including 527 document requests, both formal and informal, 39 personal deposition notices, and 11 30(b)(6) deposition notices listing a total of 67 deposition topics. The Debtors have made great efforts to respond quickly and fully to these requests, from a wide range of creditor constituencies.

From the outset of these proceedings, the Debtors have taken great efforts to respond to discovery requests on an expedited basis. The Debtors received an initial set of document requests from the Ad Hoc Group of TCEH Unsecured Noteholders on Friday, May 2, 2014, in the midst of the First Day Hearing. The Debtors' outside counsel were on-site at the Debtors' offices in Dallas to collect responsive materials the following Monday, May 5, 2014. Within a week of the First Day Hearing, the Debtors received three additional sets of document requests— from the Indenture Trustee for the EFIH Second Lien Notes and ad hoc group of EFIH Second Lien Noteholders, Wilmington Savings Fund Society, and CSC Trustee Company of Delaware—

regarding motions set for the Second Day Hearing.  The Debtors produced documents on a rolling basis beginning on May 12, 2014, just thirteen days after filing these proceedings, and have been producing documents on a rolling basis ever since.

That work has continued apace since the filing date.  As of today, the Debtors have produced 14,310 documents, comprised of 277,512 pages, and made witnesses available for 15 depositions, including 2 30(b)(6) depositions on 12 topics.  The Debtors' CFO and Co-Chief Restructuring Officer, Paul Keglevic, for example, has sat for 4 depositions, spanning 5 days. The Debtors' financial advisor, David Ying, has sat for another 2 depositions.  This is just the work that the creditor groups have seen.

Moreover, in part to address the lack of coordination among the creditor constituencies on discovery issues, the Debtors have made available each of their document productions to all of the creditor groups.  Although the Committee suggests that the total number of documents produced by the Debtors to date is "relatively small," that claim is belied by the actual volume of discovery to date—which is still on-going—and the fact that *no party*, including the Committee, has argued that they did not receive sufficient discovery on any motions that the Court has heard.

In all events, there has been a significant amount of discovery work by the Debtors that has not been visible to other parties.  Read literally, the requests propounded by the junior creditors of TCEH and Official Committee seek the production of just about every scrap of paper at the Debtors.  While the Debtors believe that those requests are significantly overbroad, they have pushed forward with the collection of potentially responsive materials.  Counsel for the Debtors have interviewed 48 EFH employees, some on several occasions, in connection with the document discovery in these cases.  The Debtors have collected electronic data from dozens of custodians, 14 shared drives, 5 data rooms, and 142 boxes of hard copy documents.  In all, the

2

Debtors have collected nearly 2 terabytes of data, comprised of approximately 4.75 million unique documents after de-duplication. Based on metrics from the document production to date, the Debtors roughly estimate that their document collection may exceed 100 million pages. Those materials, of course, must be sorted, searched, and reviewed for responsiveness and privilege in light of the extraordinarily broad—and fast-paced—requests served by creditors.

This all has required an extraordinary commitment of time and resources from the Debtors, and all of this was accomplished without a single motion to compel. The Committee's Status Report does not contradict any of these points. In fact, despite suggestions that the Debtors have been less than forthcoming, the Committee does not identify one document that the Debtors have wrongly refused to produce.

The Debtors recognize that their discovery obligations in this case are far from over. Right now, for example, the Debtors are working on responding to document requests concerning the EFIH First Line and Second Lien makewhole adversary proceedings, the RSA Assumption Motion, the pending Rule 2004 requests, the Committee's First Lien Investigation, and requests from Centerbridge Partners concerning certain prepetition transactions. The Debtors will continue to work in good faith to provide a complete discovery record on these and other issues.

The remaining portions of this Response are directed at the concerns raised by the Committee with respect to its own discovery of the Debtors.

## II.    STATUS OF THE COMMITTEE'S DISCOVERY OF THE DEBTORS

### A.    The Committee's Discovery Of The Debtors Related To Its First Lien Investigation

The Committee's Status Report expresses concern over whether it will be able to complete its "TCEH First Lien Investigation" within the time limits set by the Cash Collateral

3

Order.  On June 16, 2014, the Committee served a set of 112 document requests related to the TCEH First Lien Investigation.  The Committee followed up a few days later with a set of seven "priority" requests and asked that those materials be produced by July 8, 2014. The Committee's priority requests sought documents on a large swath of transactions and agreements—93 in total—dating back over seven years to the 2007 Leveraged Buyout of Energy Future Holdings' predecessor, TXU.  Despite the shear breadth of these "priority" requests, the Debtors agreed to collect and produce responsive documents on a rolling basis within the timeline set by the Committee.

Although the Committee criticizes the Debtors for having produced "only 363 documents" in response to these priority requests, the Committee knowingly elected to file its Status Report the day before it asked the Debtors to complete their priority productions.  (Status Rpt. at 5)  Consistent with that deadline—July 8, 2014—the Debtors produced an additional 406 documents (5,075 pages) responsive to the Committee's priority requests and have now completed a reasonable search for and produced documents responsive to those requests.  The Committee is currently reviewing those materials and has not raised any issue with them.  The Debtors will continue to work with the Committee in good faith concerning discovery on their First Lien Investigation.

The Debtors are also working with the ad hoc committee of TCEH First Lien creditors to provide some relief from the time constraints regarding the First Lien Investigation.  This week, the Debtors reached out to counsel for the ad hoc committee with a proposal for extending the investigatory period so that the Committee is not required to file a motion by August 16, 2014. We expect to receive a response in advance of Friday's status conference.

### B.    The Rule 2004 Motion And Discovery Protocol

Since Wilmington Savings Fund Society, FSB served its Rule 2004 Motion, the Debtors have been working in parallel and as part of a meet and confer with the Committee and other TCEH creditors on a potential discovery protocol that would coordinate and facilitate discovery in these cases. The Committee is correct that, in many respects, the "parties are in agreement on the elements of the Legacy Discovery protocol." But there is one fundamental disagreement that the parties have not yet been able to overcome: specifically, whether there should be one Discovery Protocol that covers all creditors for all Debtors as well as current and Plan-related discovery, or whether the protocol should be limited to what the Committee has referred to as "Legacy Discovery" and limited solely to the Committee and two sets of TCEH creditors (the "TCEH Junior Creditors").

On this key issue, the Committee and the TCEH Junior Creditors are trying to have their cake and eat it, too. On one hand, the Committee and TCEH Junior Creditors suggest that it would be "premature" now to finalize a protocol for confirmation discovery. (Status Rpt. at 8). However, their proposed Discovery Protocol seeks discovery that is indisputably related to confirmation. The Court has already rejected the creditors' attempts to inject valuation discovery into non-confirmation portions of this case. (*See* 6/6/14 Hr'g Tr. at 65-69) Yet the Committee and TCEH Junior Creditors include this request under the umbrella of "Legacy Discovery" governed by their proposed Discovery Protocol, while at the same time arguing that the protocol should not be expanded to include a second phase for confirmation-related discovery that would occur after the Court approves a disclosure statement.

For example, the Committee's June 24 draft of the protocol expressly encompasses documents relating to "[t]he valuation of the Debtors." The same is true for the Rule 2004

5

motion: it seeks a broad swath of valuation-related material that, at core, relates to confirmation issues. Just by way of example, that motion seeks:

- All Documents relating to forecasts, analyses, or projections as to future prices of natural gas.

- All Documents relating to forecasts, analyses, or projections as to future electricity prices.

- All Documents relating to dispatch modeling conducted by, for, or on behalf of, the Debtors.

- All Documents relating to projected costs and/or any analyses of environmental compliance with respect to any of the Debtors' assets.

- All Documents relating to studies or analyses as to use of gas-fired versus coal-fired generation capacity.

- All Documents relating to studies or analyses as to optimization of the Debtors' generation fleet.

- All Documents relating to the mix of the Debtors' retail versus wholesale sales.

- All Documents relating to the Debtors' retail sales strategy.

- All Documents relating to efforts to increase the Debtors' retail sales volume.

- All Documents relating to hedging transactions involving the Debtors.

- All Documents relating to studies or analyses as to the effect of the Debtors' credit rating on the Debtors' retail business.

- All Documents relating to efforts to recruit salespeople or other staff to support the Debtors' retail business.

- All Documents relating to "index" or fixed-price contracts offered by the Debtors to retail customers.

- All Documents relating to the Debtors' strategy to maintain or increase their retail customer base.

- All Documents relating to studies or analyses as to the effect of the Debtors' creditor rating on the Debtors' wholesale business.

6

- All Documents relating to decisions as to whether to sell power into the wholesale spot market versus into forward markets.

- All Documents relating to the Debtors' hedging strategy.

- All Documents relating to studies or analyses as to the Debtors' SG&A expenses.

- All Documents relating to the Debtors' efforts in support of capacity pricing and/or Interim Solution B+ in the ERCOT market.

- All Documents relating to the projected impacts of implementation of capacity pricing and/or Interim Solution B+ in the ERCOT market

- All documents concerning the fair market value of the Debtors' assets.

- All Documents concerning valuation of the Debtors' assets or businesses.

And the list goes on. Since the Debtors received these 2004 Motion requests, the TCEH Junior Creditors have served well over 100 more requests that similarly involve valuation issues. While the Committee seeks to limit the Protocol to "Legacy Discovery," there should be no mistake that the scope of that discovery is far broader and involves significant confirmation-related issues. The Debtors should not be made to do this twice without any sort of orderly process at all, and has proposed a Discovery Protocol that includes many terms on which the parties have agreed but also provides guardrails for confirmation-related discovery.

It is well-established the bankruptcy courts are courts of equity, empowered to invoke equitable principles to achieve fairness and justice in the reorganization process. *See Momentum Mfg. Corp. v. Employee Creditors Comm. (In re Momentum Mfg. Corp.)*, 25 F.3d 1132, 1136 (2d Cir. 1994). Moreover, Section 105(d) of the Bankruptcy Code permits the Court, *sua sponte* or at the request of a party in interest, to "issue an order . . . prescribing such limitations and conditions as the court deems appropriate to ensure that the case is handled expeditiously and economically . . . ." 11 U.S.C. § 105(d). Similar procedures in connection with the discovery process have been established in other large, complex chapter 11 cases.

7

Here, the imposition of a Discovery Protocol that purports to be limited to "Legacy Discovery" but which is, in reality, far broader in scope and involves significant confirmation-related issues, will lead to an unorganized, inefficient, and overly burdensome discovery process and require duplicative efforts on behalf of the Debtors to respond to requests that are not coordinated within the context of a single, organized Discovery Protocol. Such a result will not only impede the Debtors' ability to effectively respond to discovery in the most expeditious manner possible, it will also create inefficiencies and unnecessary litigation expenses that will undermine the Debtors' efforts to maximize value for the estates and all parties in interest.

In addition, the Committee and TCEH Junior Creditors have not offered any reasonable explanation why a Discovery Protocol should not apply to discovery requests for TCEH first lien creditors, EFH creditors, or EFIH creditors. To achieve the best coordination among the creditors and avoid the unnecessary duplication of efforts that will waste estate resources, the Debtors believe there should be similar coordination among the TCEH creditors, EFH creditors, and EFIH creditors. Importantly, however, the Debtors have not asked the Committee to coordinate the discovery request of the EFH and EFIH creditors. Rather, the Debtors' proposed Discovery Protocol asks that these creditors coordinate among themselves. Nonetheless, in discussions to date, the TCEH Junior Creditors have stated that the inclusion of a second phase of confirmation discovery and creditors beyond the Committee and TCEH Junior Creditors is a non-starter.

A second issue is when the Debtors will complete their document production efforts. The Committee suggests that its proposed Discovery Protocol "sets forth a reasonable schedule," which would require completion of the Debtors' document production by September 15. What

8

the Committee did not acknowledge is that the "Legacy Discovery" sought by the Committee, and the 2004 Motion Requests themselves, are extremely overbroad, as evidenced by the list of just some of the hundreds of requests that the Debtors have received. As part of "Legacy Discovery," the Committee and TCEH Junior Creditors appear to seek the production of virtually every piece of paper in the Debtors' possession and thereby render their proposed dates unattainable. The Debtors to date have collected approximately 4.75 million unique documents that span tens—if not hundreds—of millions of pages of material. Requiring the Debtors to respond to these overbroad requests and review this volume of material in such a truncated time frame is not reasonable. In fact, Committee counsel has acknowledged that these dates were placeholders for further discussion and negotiation. Given the vast scope of the proposed documents to be produced, the Debtors' proposed date of October 21, 2014 for completion of its production is a more realistic and reasonable date.

Third, the Committee's Status Report focuses on the fact that the Debtors' first response to the Committee's initial draft protocol proposed that the Committee serve a single, consolidated set of requests, but that issue has been moot for nearly a month. (Status Rpt. at 6) Since a mid-June meet-and-confer session with the Committee, the Debtors have repeatedly stated that they were not trying to limit the Committee to one set of requests for Legacy discovery and plan confirmation discovery. The Debtors' Discovery Protocol makes that point explicit, expressly providing for a second round of discovery requests after the Court approves a plan disclosure statement.

The Debtors will of course continue to work with the Committee and the TCEH Junior Creditors to reach a consensual resolution of issues related to the Discovery Protocol. It may become necessary, however, for the Court to provide further guidance at the July 18 hearing.

9

C.    **Discovery Of The Debtors Related To The RSA Assumption Motion**

The Committee next asserts that the Debtors have not produced documents using their burdensome set of search terms in connection with the RSA Assumption Motion. The Debtors, to be clear, focused their initial document production efforts on the materials most relevant to that motion: (a) documents concerning the Board's consideration and decision to enter into the RSA; and (b) the back-and-forth with third parties concerning the negotiation of the RSA. The Debtors produced materials from individuals who were centrally involved in negotiating the RSA—company custodians Paul Keglevic and Tony Horton; Kirkland & Ellis custodians Rick Cieri, Stephen Hessler, and Edward Sassower; and Evercore custodians David Ying and Stephen Goldstein—as well as a repository of board materials. This was made clear in the Debtors' June 18, 2014 letter to the Ad Hoc Group of TCEH Unsecured Noteholders, which described the search terms and custodians that the Debtors had already used to identify documents potentially responsive to the RSA Assumption Motion-related document requests.

Since then, the Debtors have had multiple rounds of negotiations with the Committee and others in an attempt to address requests that the Debtors use sweeping search terms to capture and review large swaths of material that might concern the RSA. Although the Debtors believe that their initial efforts were reasonable, they have since collected documents from five additional custodians, including two whose email files are not stored on the Debtors' system. The Debtors also expanded the date range for their RSA searches to November 1, 2013, despite the fact that negotiations concerning the restructuring transaction reflected in this RSA did not begin until early 2014. The Debtors also supplemented their substantive search terms in the hopes of addressing the Committee's concerns, and have since produced documents captured by this wider net on a rolling basis. That production is nearly complete.

The Debtors continue to work with the Committee on the scope of RSA-related discovery. The Debtors have been open and forthcoming with metrics and other data concerning the additional search terms that the Committee has proposed so the parties can meaningfully assess the burden imposed by those additional searches as compared to their possible benefit. As a result, the Debtors share the Committee's optimism that any outstanding issues can be resolved without troubling the Court. (Status Rpt. at 10)

We must, however, correct the Committee's statement that the Debtors have "not yet fully agreed to search for and produce material from all of their outside directors." (*Id.*) As the Committee correctly notes, the Debtors have collected and produced responsive documents from disinterested directors Chuck Cremens and Hugh Sawyer. (*Id.*) Contrary to the Committee's assertion, however, the Debtors have also worked directly with director Michael MacDougall's counsel to ensure the production of responsive documents from his files. As the Debtors have repeatedly explained to the Committee, Mr. MacDougall is associated with TPG Capital, L.P., which is represented by Wachtell Lipton. Mr. MacDougall's files are located on TPG's servers, not the Debtors' servers, so going through his counsel to obtain the requested documents is necessary and appropriate. Although the parties have disagreed about the Debtors' "control" over Mr. MacDougall's email, which is located on the servers of his employer, TPG, that issue is largely academic in light of the Debtors' and TPG's cooperation and agreement to produce responsive materials.

TPG's counsel at Wachtell Lipton have made clear that they would provide responsive materials to the Committee, and they have already made extensive productions. Moreover, in response to questions raised by the Committee, TPG has agreed to run additional searches similar to those being run by the Debtors. In light of the Debtors' efforts to facilitate discovery

11

from Mr. MacDougall, the Committee has no grounds to complain about production from outside directors.

## III.    WSFS LETTER CONCERNING THE DEBTORS' PRIVILEGE LOG

Finally, Wilmington Savings Fund Society, FSB ("WSFS") filed a letter with the Court on July 8, 2014 concerning alleged deficiencies in certain documents descriptions contained in the Debtors' June 29, 2014 revised privilege log.  The Debtors and WSFS met and conferred about those issues on Wednesday, July 9, 2014 and agreed that additional discussions would be appropriate before involving the Court.  WSFS has agreed to hold its letter in abeyance until the July 18, 2014 status conference while the parties continue discussions.

Dated: July 10, 2014
      Wilmington, Delaware

**RICHARDS, LAYTON & FINGER, P.A.**
Mark D. Collins (No. 2981)
Daniel J. DeFranceschi (No. 2732)
Jason M. Madron (No. 4431)
920 North King Street
Wilmington, Delaware 19801
Telephone:    (302) 651-7700
Facsimile:    (302) 651-7701
Email:    collins@rlf.com
        defranceschi@rlf.com
        madron@rlf.com

-and-

**KIRKLAND & ELLIS LLP**
Richard M. Cieri (admitted *pro hac vice*)
Edward O. Sassower, P.C. (admitted *pro hac vice*)
Stephen E. Hessler (admitted *pro hac vice*)
Brian E. Schartz (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022-4611
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900
Email:    richard.cieri@kirkland.com
        edward.sassower@kirkland.com
        stephen.hessler@kirkland.com
        brian.schartz@kirkland.com

-and-

James H.M. Sprayregen, P.C. (admitted *pro hac vice*)
Chad J. Husnick (admitted *pro hac vice*)
Steven N. Serajeddini (admitted *pro hac vice*)
300 North LaSalle
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200
Email:    james.sprayregen@kirkland.com
        chad.husnick@kirkland.com
        steven.serajeddini@kirkland.com

Proposed Co-Counsel to the Debtors and Debtors in Possession

13