# EXHIBIT A



COLE, SCHOTZ, MEISEL, FORMAN & LEONARD P.A.

500 Delaware Avenue, Suite 1410
Wilmington, DE 19801
302-652-3131 302-652-3117 fax

New Jersey
New York
Maryland
Texas

Nicholas J. Brannick
Associate

Reply to Delaware Office
Writer's Direct Line: 302-651-2006
Writer's Direct Fax: 302-574-2106
Writer's E-Mail: nbrannick@coleschotz.com

June 23, 2014

**BY HAND DELIVERY AND ECF**

Hon. Christopher S. Sontchi
United States Bankruptcy Court
for the District Court of Delaware
824 North Market Street, 5th Floor
Wilmington, Delaware 19801

**Re:** ***In re Energy Future Holdings Corp.*, 14-10979-CSS and *CSC Trust Company of Delaware v. Energy Future Intermediate Holding Company LLC*, Adv. Proc. No. 14-50363-CSS**

Dear Judge Sontchi:

Cole, Schotz, Meisel, Forman & Leonard, P.A. and Drinker Biddle & Reath LLP represent CSC Trust Company of Delaware, as successor indenture trustee (the "10% Trustee") for the 10% Senior Secured Notes Due 2020 issued by Energy Future Intermediate Holdings LLC and EFIH Finance Inc. (together, the "EFIH Debtors"). We are writing regarding a discovery dispute that has arisen between the 10% Trustee and the Ad Hoc Committee of (the "Ad Hoc Committee") EFIH Unsecured Noteholders (the "Noteholders") with regard to discovery relevant to three motions scheduled to be heard on June 30, 2013 (the "Hearing").[1] We write this letter in lieu of filing a formal motion in the hope of expeditiously resolving the dispute before the Hearing.

**A. Background Regarding Discovery**

By way of background, on May 8, 2014, the 10% Trustee issued informal discovery requests (the "Informal Discovery") to the Ad Hoc Committee in connection with the EFIH Debtors' first day filings, including the First Lien DIP Financing Motion [D.I. 71]. The Informal Discovery is attached as Exhibit A. On May 15, 2014, the 10% Trustee commenced an adversary proceeding against the EFIH Debtors captioned *CSC Trust Company of Delaware v. Energy Future Intermediate Holding Company LLC*, Adv. Proc. No. 14-50363 (CSS) (the "Adversary

[1] The motions are: (i) Motion of Energy Future Holdings Corp., et al., for Entry of Orders Approving Certain EFIH Settlements and the Oncor TSA Amendment [D.I. 472] (the "Second Lien Settlement"); (ii) Motion of Energy Future Intermediate Holding Company LLC and EFIH Finance Inc. for Entry of an Order (A) Approving Postpetition Second Lien Financing, (B) Granting Liens and Providing Superpriority Administrative Expense Claims, (C) Authorizing the Use of Cash Collateral, (D) Authorizing the EFIH Second Lien Repayment, (E) Authorizing Entry into and Payment of Fees Under the Commitment Letter, and (F) Modifying the Automatic Stay [D.I. 477] (the "Second Lien DIP Financing"); and (iii) Motion of Energy Future Holdings Corp., et al., for Entry of an Order Authorizing the RSA Debtors to Assume the Restructuring Support Agreement and Modifying the Automatic Stay [D.I. 505].

Case 14-10979-CSS Doc 1058 Filed 06/23/14 Page 2 of 5

Proceeding"). On May 21, 201, the 10% Trustee issued its First Set of Document Requests (the "Document Requests"), to the Ad Hoc Committee, through its counsel Akin Gump Strauss Hauer & Feld LLP, both in the EFIH Debtors' main case [D.I. 577] and in the Adversary Proceeding [D.I. 6]. A copy of the Document Requests is attached as Exhibit B.

Between May 15 and 22, the Ad Hoc Committee produced documents in response to the Informal Requests. On May 19, 2014, counsel for the 10% Trustee sent an e-mail to counsel for the Ad Hoc Committee, among others, noting certain deficiencies in the production of documents through that date, and stating that the 10% Trustee is "entitled to discovery of the parties, not advisors. That means a review of and production from the files of actual business people ... is required." *See* Exhibit C. Thus, the Ad Hoc Committee has known for over a month that the 10% Trustee is seeking internal e-mail exchanges that are responsive to its document requests.

On June 2, 2014, the Ad Hoc Committee submitted its Responses and Objections to the Document Requests (the "Responses and Objections"). A copy of the Responses and Objections is attached as Exhibit D.

After reviewing the documents produced by the Ad Hoc Committee and the Responses and Objections, counsel for the 10% Trustee determined that the production of the Ad Hoc Committee suffered several deficiencies. These deficiencies were described in a letter sent by counsel for the 10% Trustee to counsel for the Ad Hoc Committee on June 17, 2014 (the "Deficiency Letter"). A copy of the Deficiency Letter is attached as Exhibit E. Among the most critical deficiencies affecting the ability of the 10% Trustee to prepare for the Hearing[2] are: (i) the failure of the Ad Hoc Committee to produce any internal communications or documents from within the specific firms that are members (each a "Member" and together the "Members")[3] of the Ad Hoc Committee; (ii) the failure of the Ad Hoc Committee to produce any Bloomberg instant messages or other similar electronic modes of communication widely used in the industry; (iii) the unjustified limitation of the "look-back" period for documents to January 28, 2014, despite the Document Requests seeking documents from January 1, 2013 forward; and (iv) the assertion of a broad "common interest privilege" as the basis for withholding documents without the provision of a privilege log compliant with Civil Rule 26(b)(5).

Counsel for the parties held a telephonic meet and confer on June 18, 2014. During that meet and confer, counsel for the Ad Hoc Committee told counsel for 10% Trustee that internal communications are not relevant to the issues before the Court for the Hearing or the Adversary Proceeding and that, essentially, the 10% Trustee was searching for a "needle in a haystack."

[2] The Ad Hoc Committee's responses to the discovery issued by the 10% Trustee are deficient in other respects with regard to information relevant to the Adversary Proceeding. To expedite the resolution of deficiencies related to and to stay focused on the discovery needed for the Hearing, those additional deficiencies are not addressed in this letter. The 10% Trustee reserves its rights with regard to all other deficiencies not addressed in this letter.

[3] The Ad Hoc Committee and its counsel have yet to file a notice pursuant to Bankruptcy Rule 2019. Upon information and belief, the members of the Ad Hoc Committee are: York Capital Management, Avenue Capital Group, Third Avenue Management, GSO Capital Partners, and P. Schoenfeld Asset Management.

Counsel for the Ad Hoc Committee further posited that it would not indulge the 10% Trustee in such a search because of the costs involved. Counsel further stated that the categories with respect to which the Ad Hoc Committee wholesale refused to produce documents (i.e. Document Requests 9, 23 and 31) were not relevant to the issues in the Adversary Proceeding. In response, counsel for the 10% Trustee indicated they were amenable to reasonable limitations on the custodians whose communications would be reviewed and produced, the relevant search terms and the appropriate date range to be applied in searching for responsive documents.[4] Counsel for the Ad Hoc Committee said that a formal response to the Deficiency Letter would be transmitted within 24 hours.

On June 20, 2014, at approximately 11:00 p.m., counsel for the Ad Hoc Committee issued its formal written response (the "Response Letter").[5] A copy of that letter is attached as Exhibit F. The Ad Hoc Committee confirms its preposterous position that all internal communications within its individual Members are irrelevant to the matters to be adjudicated at the Hearing ***regardless of the content of those communications***. The Ad Hoc Committee also adopts the view that no communications prior to January 28, 2014 are relevant because "[t]he negotiations over the transaction that became the RSA did not begin until late January 2014."

Throughout the Response Letter, the Ad Hoc Committee asserts that the 10% Trustee has been dilatory in raising its concerns regarding deficiencies in the Ad Hoc Committee's discovery. Counsel for the Ad Hoc Committee has known since May 19, however, of the 10% Trustee's position that internal e-mail communications should be searched and provided. The Ad Hoc Committee's contrary position was not fully and formally expressed until, at the earliest, its submission of the Responses and Objections. Thus, the Ad Hoc Committee's accusations are unfounded, disingenuous and transparently aimed at avoiding its obligations to comply with legitimate discovery requests.

## B. Refuting the Ad Hoc Committee's Unreasonable Positions

The Ad Hoc Committee has offered no legal authority—because no such authority exists—for its unsubstantiated conclusion that the internal e-mails of Members of the Ad Hoc Committee are irrelevant to any of the issues before the Court at the Hearing simply because they are internal correspondence. Essentially the Ad Hoc Committee asserts that it is the source of a document, rather than its content, that is determinative of relevance. Such an extreme position is directly contrary to the relatively low threshold for discovery provided under Federal Rule of Civil Procedure 26(b)(1). *See* F.R.C.P. 26(b)(1); F.R.B.P. 7026. *See also Flagg v. City of Detroit*, 2008

[4] In fact, counsel for the 10% Trustee expressly stated they would be willing to limit custodians to those persons who were key negotiators of the Second Lien DIP Financing and Second Lien Settlement.

[5] As set forth above, the request for the Courts' intervention into the parties' discovery dispute is limited solely to the urgent matters, i.e., the matters scheduled for consideration at the Hearing. To the extent there are other issues discussed in the Response Letter that are not resolved between the parties, they will be brought to the Court's attention by way of separate request.

WL 787039, at *3-4 (E.D. Mich. Mar. 20, 2008) (rejecting defendants' argument that all communications among city employees were necessarily irrelevant without regard to their content).

While it is true that the Ad Hoc Committee has produced various correspondence between Members and the EFIH Debtors (or their representatives or equity sponsors), it is possible that those e-mails were carefully choreographed to avoid containing certain information that, at a minimum, is discoverable. For instance, it is unlikely that the Members would exchange e-mails with external parties that would be subject to discovery containing information damaging to their position in these cases, but they may well have done so internally. Indeed, the Members' most honest reflections on the issues before this Court are likely contained in internal messages. *Cf. In re Motor Fuel Temperature Sales Practices Lit.*, 707 F. Supp.2d 1145, 1161-62 (D. Kan. 2010) *appeal dismissed* 641 F.3d 470 (10th Cir. 2011) (internal communications were highly relevant to conspiracy claims and not protected by First Amendment associational privilege). Those communications are directly relevant to whether the EFIH Debtors and the Ad Hoc Committee have acted in good faith, and whether this Court can make such a finding with regard to the Second Lien DIP Financing. *See* 11 U.S.C. § 364(e); [D.I. 994-1 at ¶ J].

Similarly, the Ad Hoc Committee has provided no legal basis for self-selecting January 28, 2014 as the date prior to which it will not produce documents. The 10% Trustee limited its request to documents after January 1, 2013. According to the EFIH Debtors' own SEC filings, the EFIH Debtors (or their affiliates or equity sponsors) were engaged in negotiations with various creditor constituencies as early as April of 2013 regarding restructuring the EFIH Debtor's debt. *See, e.g.*, 8-K (Oct. 15, 2013) ("[A]s disclosed in the Companies' filings with the Securities and Exchange Commission, since April 2013, the Companies and their professional advisors have engaged in additional discussions with the professional advisors of the TCEH Creditors and EFIH Creditors.").[6] In fact, it appears as though Noteholders, some of whom may or may not be members of the Ad Hoc Committee, made a restructuring proposal to the EFIH Debtors on October 10, 2013. *See id.* at Ex. 99.3.

Finally, the Ad Hoc Committee has asserted a "common interest privilege" and absurdly claims in the Response Letter that the burden is on the 10% Trustee to explain why that assertion is inappropriate. The Ad Hoc Committee fails to articulate, among other things, (i) when it believes the alleged "common interest privilege" attached; (ii) all of the parties with whom the alleged "common interest privilege" exists; (iii) the nature and scope of the documents to which the alleged "common interest privilege" attaches; and (iv) the documents withheld on account of this alleged "common interest privilege". The Ad Hoc Committee has the burden of establishing that any documents withheld are subject to the common interest privilege. *See, In re Leslie Controls, Inc.*, 437 B.R. 493, 495 (Bankr. D. Del. 2010) ("The party invoking the protection of the common interest doctrine must establish: (1) the communication was made by separate parties in the course of a matter of common interest, (2) the communication was designed to further that effort, and (3) the privilege has not otherwise been waived."). Thus, the Ad Hoc Committee must set forth the

---

[6] *Available at* http://www.sec.gov/Archives/edgar/data/1023291/000119312513398858/d611938d8k.htm.

Case 14-10979-CSS Doc 1058 Filed 06/23/14 Page 5 of 5

basis upon which the common interest privilege is professed and should provide a privilege log in compliance with Federal Rule of Civil Procedure 26(b)(5); the Ad Hoc Committee cannot avoid this obligation by simply proclaiming documents subject to this alleged "common interest privilege" are irrelevant. For the avoidance of doubt, the 10% Trustee disputes any assertion that the common interest privilege attached to the Ad Hoc Committee's entire negotiations with the EFIH Debtors, particularly with regard to the Second Lien DIP Financing, as to which there was no commitment made until April 28, 2014; the day before the Petition Date. Simply stated, until the parties reached agreement on the terms of the RSA and the Second Lien DIP Financing, they were adversaries whose communications were not cloaked with any privilege.

In light of these significant, and unjustifiable, deficiencies in the responses of the Ad Hoc Committee to the discovery requested by the 10% Trustee, and the impending Hearing, the 10% Trustee respectfully requests a telephonic conference with Your Honor to address these issues at the Court's earliest convenience.

We thank the Court in advance for its time and consideration of this matter.

Respectfully submitted,

*/s/ Nicholas J. Brannick*
Nicholas J. Brannick (DE No. 5721)

and

*/s/ Warren A. Usatine*
Warren A. Usatine (admitted *pro hac vice*)

Enclosures

cc: Via Electronic Mail

See attached service list.

**EXHIBIT A**



COLE, SCHOTZ, MEISEL, FORMAN & LEONARD P.A.

Court Plaza North
25 Main Street
P.O. Box 800
Hackensack, NJ 07602-0800
201-489-3000 201-489-1536 fax

New York
—
Delaware
—
Maryland
—
Texas

Warren A. Usatine
Member

Reply to New Jersey Office
Writer's Direct Line: 201-525-6233
Writer's Direct Fax: 201-678-6233
Writer's E-Mail: wusatine@coleschotz.com

May 8, 2014

**BY E-MAIL**

Mark D. Collins, Esq.
Richards, Layton & Finger, P.A.
920 North King Street
Wilmington, DE 19801

Richard M. Cieri, Esq.
Stephen E. Hessler, Esq.
Edward O. Sassower, Esq.
Kirkland & Ellis LLP
601 Lexington Avenue
New York, NY 10022-4611

Ira S. Dizengoff, Esq.
Akin Gump Strauss Hauer & Feld
One Bryant Park
Bank of America Tower
New York, NY 10036-6745

Gary L. Kaplan, Esq.
Fried, Frank, Harris, Shriver & Jacobson LLP
One New York Plaza
New York, NY 10004

Jeffrey S. Sabin, Esq.
Bingham McCutchen LLP
399 Park Avenue
New York, NY 10022-4689

Richard G. Mason, Esq.
Wachtell, Lipton, Rosen & Katz
51 West 52nd Street
New York, NY 10019

**Re: *In re Energy Future Holdings Corp., et al.*, Case No. 14-10979 (CSS)**
**Informal and Preliminary Request for Production of Documents**

Dear Counsel:

As you are aware, we represent CSC Trust Company of Delaware (the "Indenture Trustee"), as indenture trustee to the first lien notes issued by Energy Future Intermediate Holdings Corporation ("EFIH"), and as collateral trustee for the collateral securing the EFIH first lien and second lien notes, in the above-referenced bankruptcy proceeding (the "Bankruptcy Proceeding").

We appreciate our ongoing discussions regarding scheduling for the litigation and related matters. While that is ongoing, we would like to try to advance matters, since we know that regardless of the precise agreed, or judicially-determined, outcome regarding scheduling, we will need discovery.

As we have previously discussed with you, we will need discovery on at least four topics: (i) the intent and nature of the transaction that your clients are pursuing with respect to EFIH, and EFIH Finance Inc. ("EFIH Finance"); (ii) the meaning of the Indentures and related documents; (iii) the views of the proposed first-lien DIP agent, syndication agent, and committed lenders with respect to the contingency of their commitment in relation to the allowance of the so-called make-whole; and (iv) the views of the committed lenders under the proposed second-lien DIP with respect to the contingency of their commitment in relation to the allowance of the so-called make-whole. In order to move the process forward, we ask that each of you, on behalf of your firms and your respective clients, provide us with the following documents in your or your clients' possession, custody or control. For example, we ask that the Debtors produce all responsive material in the possession of EFIH, EFIH Finance, or Energy Future Holdings Corp. ("EFH"), or any present or former officer, employee, agent, servant, attorney, investment banker, financial advisor, representative or other person acting for or on behalf of EFIH, EFIH Finance, or EFH. We similarly ask the other addressees of this letter to produce responsive materials in the possession, custody and control of your respective firms, clients, or your clients' representatives.

Our Informal and Preliminary Request for Production of Documents ("Informal Requests") are set forth below:

1. All Documents concerning the drafting, negotiation, terms and issuance of notes under, and of SEC Form S-4 registration statements, prospectuses, offering memoranda, information statements and other exchange offering materials in connection with, the EFIH First Lien Indentures, the EFIH Second Lien Note Indenture and the EFIH Unsecured Notes, and including any discussions with holders or prospective holders, committees or groups of such holders at the time of the exchange offers and (in the case of certain of the EFIH First Lien Notes) issuances. We understand that at least in two instances there were informal groups of holders involved in determining the terms on which they might exchange, and significant placements of EFIH First Lien Notes with a small number of identifiable holders.

2. All Documents concerning communications between the Debtors, the Debtors' equity sponsors and/or the EFIH Unsecured Noteholders (and their ad hoc group) in the period January 2013-October 2013, and specifically including proposals made by the Sponsors or the EFIH Unsecured Noteholders (or their ad hoc committee) regarding any restructuring of EFIH, and/or the status of EFIH in relation to any restructuring of TCEH, and/or the issue as to whether EFIH should file for chapter 11 relief.

3. All Documents concerning any assertion or calculation by the EFIH Unsecured Noteholders, or their ad hoc committee, as to amounts owed to them in connection with any Sponsor- or company-proposed restructuring.

4. All Documents concerning the commitments for the EFIH First Lien DIP Financing and the EFIH Second Lien DIP Financing, including drafting, negotiation and responses to information requested by potential arrangers and underwriters.

5. All Documents concerning Communications regarding the RSA, including without limitation, Communications among: (a) representatives of and advisors to the Debtors; (b) representatives of and advisors to the Consenting EFIH Unsecured Noteholders; (c) representatives of and advisors to Fidelity; (d) representatives of and advisors to Consenting Non-Fidelity EFIH First Lien Noteholders; and (e) representatives of and advisors to EFH Equity Owners.

6. Executed copies of the RSA and Plan Restructuring Documents, including all signature pages, without redactions of names or debt holdings, and any side letters and/or other writings showing bond holdings of signatories, and documents sufficient to show (or a letter stating) the holdings of 6 7/8% notes held or advised by all RSA signatories, at the time of signing the RSA, and as of the date of this letter.

7. All Documents concerning any proposed structure for, planning for, or agreement (including the RSA) to amend the Amended and Restated Tax Sharing Agreement, dated as of November 5, 2008, by and among EFH, Oncor Electric Delivery Holdings LLC ("Oncor Holdings"), Oncor Electric Delivery Company LLC ("Oncor"), Texas Transmission Investment LLC, and Oncor Management Investment LLC, as amended and in effect from time to time ("Oncor TSA"), to include EFIH or otherwise change, in whole or in part to EFIH, the payments under that agreement that were to be made to EFH.

Attached as **Exhibit A** are customary Instructions and Definitions that shall apply to this Informal Request. For the avoidance of doubt, requests herein include requests for Documents of your representatives, since you have the ability to obtain them. For example, documents from law firms that worked on the relevant exchanges and offerings must be turned over. Our expectation is that appropriate steps will be taken to ensure searches will be conducted by all potential custodians of the requested materials, including, but not limited to: (a) representatives of and advisors to the Debtors (including Kirkland & Ellis LLP and Evercore Group L.L.C.); (b) representatives of and advisors to the Consenting EFIH Unsecured Noteholders (including Akin Gump Strauss Hauer & Feld LLP and Centerview Partners LLC); (c) representatives of and advisors to Fidelity (including Fried, Frank, Harris, Shriver & Jacobson LLP and Perella Weinberg Partners); (d) representatives of and advisors to PIMCO (including Bingham McCutchen LLP); and (e) representatives of and advisors to EFH Equity Owners (including Wachtell, Lipton, Rosen & Katz and The Blackstone Group, L.P.). As to relevant custodians, we adopt the list of lead individuals recited in the May 5, 2014 informal discovery letter from the EFIH Second Lien Noteholders, with the addition of Jeffrey S. Sabin, Esq. of Bingham McCutchen LLP as counsel to PIMCO. In addition to those identified individuals, please identify two or three individuals from each institution referenced herein likely to have materials responsive to our requests. After reviewing your initial production in response to this Informal Request, we reserve the right to designate additional custodians if it appears reasonably likely that such potential custodians are in possession of material responsive to these Informal Requests.

Cole, Schotz, Meisel, Forman & Leonard, P.A.
Attorneys at law

May 8, 2014
Page 4

Please provide the Documents requested above no later than May 15, 2014. The Indenture Trustee and Collateral Trustee do not waive, and expressly reserve, all rights to request further, supplemental and/or additional discovery in connection with the bankruptcy cases or otherwise.

Very truly yours,

*/s/ Warren A. Usatine*

*/s/ Norman L. Pernick*

Warren A. Usatine
Norman L. Pernick

WAU:NLP:cdc
cc: Gregory A. Horowitz, Esq. *(via email)*

52881/0001-10593646v3

## INSTRUCTIONS

1.      You are requested to produce all Documents responsive to these Informal Requests in your possession, custody, or control, wherever located, including without limitation, those in the possession, custody or control of your professionals and affiliates, whether or not such documents were prepared by or for you.  Where knowledge, information or documents in your possession, custody or control are requested or inquired of, such request or inquiry includes knowledge, information or documents in the possession, custody or control of each of your current and former agents, appointees, employees, representatives, consultants, attorneys and all other persons acting or purporting to act for or on behalf of you, and any other individuals or entities from which you may obtain documents.

2.      If any part of the Informal Requests cannot be responded to in full, please respond to the extent possible, specifying the reason(s) for your inability to respond to the remainder and stating whatever information or knowledge you have relating to the portion to which you do not respond.

3.      If any Document requested herein was formerly in your possession, custody, or control (or that of your Professional) and has been lost or destroyed or otherwise disposed of, you are requested to submit in lieu of any such Document a written statement.

4.      To the extent any responding party intends to employ an electronic search to help locate responsive or potentially responsive Documents, you are required to negotiate your proposed search terms and methodology with the Indenture Trustee and come to an agreement regarding the same, and otherwise comply in full with Local Rule 7026-3(e).

5.     Documents should be segregated according to the number of the Informal Request to which they are responsive or produced in the manner they are kept in the ordinary court of business. Documents attached to each other should not be separated.

6.     An Informal Request shall be deemed to include a request for any and all transmittal sheets, cover letters, exhibits, enclosures, or attachments to such Document, in addition to the Document in its full and unexpurgated form.

7.     Each Informal Request for Documents herein includes a Request for exact copies of all disks, CDs, DVDs, and other removable media containing any information responsive to such Informal Request. Electronic records and computerized information should be produced in an intelligible format or together with a sufficient description of the system of program from which each was derived to permit rendering the material legible.

8.     If any privilege is claimed as to any Document requested or sought to be identified herein and only portions of a Document are responsive and not privileged, please produce the Document in redacted form with only the privileged parts redacted. In lieu of a privilege log, provide a description of the categories of documents withheld on the grounds of privilege (whether attorney-client, work product or other grounds), which description shall contain detail sufficient to enable a determination as to the validity of the asserted grounds. To the extent any documents are withheld on the basis of joint defense or common interest doctrines, describe and explain the basis for asserting such joint defense or common interest and the date or dates on which such joint defense or common interest came into existence, and identity any written agreements memorializing such joint defense or common interest.

9.      This request shall be deemed continuing in character, so as to require further and supplemental production if additional documents are obtained or become accessible after the time of initial production.

## DEFINITIONS

The definitions of terms provided by the Federal Rules, Bankruptcy Rules, the Local Rules, and any other rules, where applicable, are incorporated herein by reference.

A.      "And" and "or" shall be construed either conjunctively or disjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed outside the scope. "Any" and "all" are used in their inclusive sense.

B.      The singular form of a word shall be considered to include also within its meaning the plural form of a word and vice versa; and the use of any tense of a any verb shall be considered to include also within its meaning all other tenses of the verb.

C.      "Bankruptcy Cases" means the voluntary chapter 11 proceedings commenced by EFIH and its subsidiaries in the United States Bankruptcy Court for the District of Delaware, which are being jointly administered under Case No. 14-10979(CSS).

D.      "Bankruptcy Court" means the United States Bankruptcy Court for the District of Delaware.

E.      "Communications" means the transmittal of information including, but not limited to, transmittals in any form, whether oral, written, telephonic, e-mail (including attachments), text message or any other mode.

F.      "Concerning" and "relating to" shall mean concerning, relating to, referencing, referring to, describing, evidencing, reflecting, constituting, supporting, undermining, proving, disproving, describing, summarizing, constituting or comprising touching upon or being legally, logically or factually connected in any way, in whole or part, with the subject matter.

G.    "Document" is used in the broadest sense contemplated by Bankruptcy Rule 7034 and Federal Rule of Civil Procedure 34 and includes, but is not limited to:

      a.    correspondence, memoranda, notes, calendar or diary entries, statistics, letters, electronic mail, notebooks, telegrams, journals, minutes, agendas, notices, announcements, instructions, charts, schedules, requests, contracts, physical evidence, prospective contracts, agreements, prospective agreements, licenses, prospective licenses, order forms, books, accounts, records, reports, studies, surveys, experiments, analyses, checks, cancelled checks, wire confirmations, statements, receipts, returns, vouchers, statements, credit memoranda, sales slips, promissory notes, summaries, pamphlets, prospectuses, manuals, brochures, announcements, certificates, drawings, plans, inter-office and intraoffice communications, and offers;

      b.    notations in any form made of conversations, telephone calls, meetings, negotiations or other communications;

      c.    bulletins, circulars, schedules, lists, guides, printed matter (including newspapers, magazines, and other publications, articles and clippings therefrom), press releases, computer printouts, teletypes, telecopies, telexes, invoices, ledgers, balance sheets, financial statements or worksheets;

      d.    electronic, mechanical, or optical records or representations of any kind (including tapes, cassettes, discs, hard drives, recordings, voice mail, electronic mail, computer-stored data or material), or transcriptions thereof; and

      e.    all drafts, alterations, modifications, changes and amendments of any of the foregoing and any material underlying, supporting or used in the preparation of any document.

H.    "Including" means including without limitation.

I.    "Person" and "Entity" each and both mean any natural person or any business, legal, or governmental entity, corporation, or association, including trusts, estates, and any other such entities.

J.    "Informal Request" means the requests for documents specified herein.

K. "RSA" shall mean the Restructuring Support and Lock-Up Agreement, attached as Exhibit D to the Declaration of Paul Keglevic, Executive Vice President, Chief Financial Officer, and Co-Chief Restructuring Officer of Energy Future Holdings Corp., *et al.*, in Support of First Day Motions, filed in the Bankruptcy Cases [Docket No. 98].

L. "You" shall have the meaning set forth in the accompanying Informal and Preliminary Request for Production of Documents.

M. Any reference to a Person or Entity shall include references to any of the Person's or Entity's past or present principals, members, shareholders, officers, managers, affiliates, subsidiaries, divisions, branches, agents, representatives, attorneys, testifying or non-testifying experts, employees, servants, consultants, contractors, predecessors, successors and assigns.

N. Any terms not defined herein or in the Informal Requests shall have the meaning ascribed to them in the RSA, which definitions are incorporated herein by reference.

**EXHIBIT B**

B257 (Form 257 – Subpoena to Produce Documents, Information, or Objects or To Permit Inspection in a Bankruptcy Case or Adversary Proceeding) (12/13)

# UNITED STATES BANKRUPTCY COURT

District of DELAWARE

In re ENERGY FUTURE HOLDINGS CORP et al.
Debtor

Case No. 14-10979 (CSS)

(Complete if issued in an adversary proceeding)
CSC TRUST CO. OF DELAWARE
Plaintiff

Chapter 11

v.
ENERGY FUTURE INTERMEDIATE HOLDIGNS COMPANY, LLC, ET AL.
Defendant

Adv. Proc. No. 14-50363 (CSS)

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A BANKRUPTCY CASE (OR ADVERSARY PROCEEDING)

To: The Ad Hoc Committee of EFIH Unsecured Note Holders c/o Ira S. Dizengoff, Esq., Akin Gump Strauss Hauer & Feld LLP, One Bryant Park, Bank of America Tower, New York, NY 10036
*(Name of person to whom the subpoena is directed)*

[X] *Production*: **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See attached document request.

| PLACE | DATE AND TIME |
|---|---|
| Cole, Schotz, Meisel, Forman & Leonard, P.A.<br>Attn: Warren A. Usatine, Esq.<br>900 Third Avenue, 16th Floor, New York, NY 10022 | 5/28/14 by 4:00 p.m. |

[ ] *Inspection of Premises*: **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| PLACE | DATE AND TIME |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45, made applicable in bankruptcy cases by Fed. R. Bankr. P. 9016, are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and 45(g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: May 21, 2014

CLERK OF COURT

OR

Signature of Clerk or Deputy Clerk

Attorney's signature

The name, address, email address, and telephone number of the attorney representing *(name of party)* CSC Trust Company of Delaware as Indenture Trustee, who issues or requests this subpoena, are:

Nicholas J. Brannick, Cole, Schotz, Meisel, Forman & Leonard, P.A., 500 Delaware Ave., Suite 1410, Wilmington, DE 19801, nbrannick@coleschotz.com, 302.651.2006

**Notice to the person who issues or requests this subpoena**

If this subpoena commands the production of documents, electronically stored information, or tangible things, or the inspection of premises before trial, a notice and a copy of this subpoena must be served on each party before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

B257 (Form 257 – Subpoena to Produce Documents, Information, or Objects or To Permit Inspection in a Bankruptcy Case or Adversary Proceeding) (Page 2)

## PROOF OF SERVICE

**(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)**

I received this subpoena for *(name of individual and title, if any)*: ____________________
on *(date)* __________ .

☐ I served the subpoena by delivering a copy to the named person as follows: ____________________
____________________
____________________ on *(date)* ____________ ; or

☐ I returned the subpoena unexecuted because: ____________________
____________________

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of $ ______________ .

My fees are $ _________ for travel and $_________ for services, for a total of $_________ .

I declare under penalty of perjury that this information is true and correct.

Date: ______________

____________________
*Server's signature*

____________________
*Printed name and title*

____________________
*Server's address*

Additional information concerning attempted service, etc.:

# Federal Rule of Civil Procedure 45(c), (d), (e), and (g) (Effective 12/1/13)
## (made applicable in bankruptcy cases by Rule 9016, Federal Rules of Bankruptcy Procedure)

**(c) Place of compliance.**

*(1) For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
(i) is a party or a party's officer; or
(ii) is commanded to attend a trial and would not incur substantial expense.

*(2) For Other Discovery.* A subpoena may command:
(A) production of documents, or electronically stored information, or things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
(B) inspection of premises, at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

*(1) Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

*(2) Command to Produce Materials or Permit Inspection.*
*(A) Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
*(B) Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

*(3) Quashing or Modifying a Subpoena.*
*(A) When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
(i) fails to allow a reasonable time to comply;
(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
(iv) subjects a person to undue burden.
*(B) When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
(i) disclosing a trade secret or other confidential research, development, or commercial information; or
(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
*(C) Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
(ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

*(1) Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
*(A) Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
*(B) Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
*(C) Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
*(D) Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

*(2) Claiming Privilege or Protection.*
*(A) Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
(i) expressly make the claim; and
(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
*(B) Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

...

**(g) Contempt.** The court for the district where compliance is required – and also, after a motion is transferred, the issuing court – may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013)

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re<br><br>ENERGY FUTURE HOLDINGS CORP., *et al.*,<br><br>*Debtors.* | ) | Chapter 11<br><br>Case No. 14-10979 (CSS)<br><br>(Jointly Administered) |
| CSC TRUST COMPANY OF DELAWARE, as INDENTURE TRUSTEE,<br><br>*Plaintiff*,<br><br>v.<br><br>ENERGY FUTURE INTERMEDIATE HOLDING COMPANY LLC and EFIH FINANCE INC.,<br><br>*Defendants.* | ) | Adversary Proceeding No. 14-50363 (CSS) |

**FIRST SET OF DOCUMENT REQUESTS TO AD HOC COMMITTEE OF EFIH UNSECURED NOTEHOLDERS BY CSC TRUST COMPANY OF DELAWARE, AS INDENTURE TRUSTEE**

Pursuant to Rules 45 of the Federal Rules of Civil Procedure (the "Federal Rules"), as made applicable to these proceedings 9016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), CSC Trust Company of Delaware, as Indenture Trustee (the "10% Indenture Trustee") for the 10% Senior Secured Notes Due 2020 issued by Energy Future Intermediate Holdings LLC and EFIH Finance Inc. (together, the "EFIH Debtors") under the Indenture dated as of August 17, 2010 (together

with all supplements, amendments, and exhibits, the "10% Indenture"), hereby directs the following first set of document requests (the "Document Requests") to the Ad Hoc Committee of EFIH Unsecured Noteholders (described herein), to be responded to separately and fully by serving written responses in accordance with Federal Rule 45, to the offices of Cole, Schotz, Meisel, Forman & Leonard, P.A., 900 Third Avenue, 16th Floor, New York, NY 10022, Attn: Warren A. Usatine, Esq., **on or before May 28, 2014, at 4:00 P.M. (Prevailing Eastern Time).**

## INSTRUCTIONS

(1) You are requested to produce all Documents responsive to these Document Requests in your possession, custody, or control, wherever located, including without limitation, those in the possession, custody or control of your professionals and affiliates, whether or not such documents were prepared by or for you. Where knowledge, information or documents in your possession, custody or control are requested or inquired of, such request or inquiry includes knowledge, information or documents in the possession, custody or control of each of your current and former agents, appointees, employees, representatives, consultants, attorneys and all other persons acting or purporting to act for or on behalf of you, and any other individuals or entities from which you may obtain documents.

(2) Each Document Request shall be construed independently and without reference to any other request. Limitations in one request shall not limit any other request.

(3)     Each Document Request shall be deemed to include a request for all actual, proposed, or contemplated envelopes, transmittal sheets, cover letters, exhibits, enclosures, or attachments to the document, in addition to the document in its full and unexpurgated form.

(4)     If any part of the Document Requests cannot be responded to in full, please respond to the extent possible, specifying the reason(s) for your inability to respond to the remainder and stating whatever information or knowledge you have relating to the portion to which you do not respond.

(5)     If any of the requested documents were, but no longer are, in your custody or possession or subject to your control, state whether such document: (a) is missing or lost, (b) has been destroyed, (c) has been transferred voluntarily or involuntarily to any other person or entity or (d) has been otherwise disposed of, and, in each instance, explain the circumstances surrounding the disposition thereof and provide a description of the nature, content, date, author(s) and recipient(s) of the document.

(6)     In the event that any document, or any portion of any document, within the scope of this request for production is withheld from production or redacted upon a claim of privilege, work product, or for any other reason, a privilege log shall be created and served as required by Federal Rule 45(e)(2)(A)(ii), made applicable to these proceedings by Bankruptcy Rule 9016.

(7)     To the extent any responding party intends to employ an electronic search to help locate responsive or potentially responsive documents, you are required to negotiate your proposed search terms and methodology with the Indenture Trustee and

come to an agreement regarding the same, and otherwise comply in full with Rule 7026-3(e) of the Local Rules for the United States Bankruptcy Court, District of Delaware.

(8)    Documents should be segregated according to the number of the Document Request to which they are responsive or produced in the manner they are kept in the ordinary court of business. Documents attached to each other should not be separated.

(9)    Each Document Request herein includes a request for exact copies of all disks, CDs, DVDs, and other removable media containing any information responsive to such Document Request. Electronic records and computerized information should be produced in an intelligible format or together with a sufficient description of the system of program from which each was derived to permit rendering the material legible.

(10)    These Document Requests shall be deemed continuing in character, so as to require further and supplemental production if additional documents are obtained or become accessible after the time of initial production.

(11)    For the avoidance of doubt, requests herein include requests for Documents of your representatives, since you have the ability to obtain them. For example, documents from law firms that worked on the relevant exchanges and offerings must be turned over. Please identify custodians likely to have materials responsive to our requests. After reviewing your initial production in response to these Document Requests, we reserve the right to designate additional custodians if it appears reasonably likely that such potential custodians are in possession of material responsive to these Document Requests.

(12) If you object to a Document Request, the objection is to be stated in full, along with a citation of any legal authority relied upon. If an objection is stated with respect to only a portion of a Document Request, the remaining portion of the Document Request is to be answered notwithstanding the objection. If you object to the scope or time period of a Document Request, the objection is to be stated and the Document Request answered for the scope and time period which you believe is appropriate. If in answering these Document Requests you assert or believe there are any ambiguities or any vagueness in the construction or wording of either a Document Request, Instruction, or Definition, set forth the matter, construction or wording that you believe to be ambiguous or vague, and the interpretation or construction you used in responding to the Document Request.

(13) These Document Requests are being propounded upon the Ad Hoc Committee and its members, each as members of the Ad Hoc Committee and in their individual capacity as holders of EFIH Senior Toggle Notes (defined below).

(14) Unless otherwise indicated in a Document Request, the relevant time period for reach Document Requests is the period from January 1, 2013 through the present.

## DEFINITIONS

The following definitions of terms apply to these Document Requests. Unless otherwise defined herein, all words and phrases used herein shall be accorded their usual meaning and shall be interpreted in their common, ordinary sense.

(1)     The singular form of a word shall be considered to include also within its meaning the plural form of a word and vice versa; and the use of any tense of a any verb shall be considered to include also within its meaning all other tenses of the verb.

(2)     "Ad Hoc Committee" means the self-identified Ad Hoc Committee of EFIH Unsecured Noteholders currently represented by the law firm of Akin Gump Strauss Hauer & Feld LLP that is comprised of holders of EFIH Senior Toggle Notes and, upon information and belief, including without limitation Avenue, GSO, and York.

(3)     "And" and "or" shall be construed either conjunctively or disjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed outside the scope. "Any" and "all" are used in their inclusive sense.

(4)     "Applicable Premium" has the meaning ascribed to it in the applicable indenture.

(5)     "Bankruptcy Cases" means the voluntary chapter 11 proceedings commenced by Debtors and their subsidiaries in the United States Bankruptcy Court for the District of Delaware, which are being jointly administered under Case No. 14-10979(CSS).

(6)     "Concerning" shall mean refers to, relates to, comments on, reflects, mirrors, addresses, discusses, embodies, constitutes, contains information on, indicates, or pertains to, in any way, directly or indirectly, a document subject, topic, issue, act or occurrence, and includes, without limitation, comprising, constituting, analyzing, evidencing, comparing, summarizing, discussing, showing, referring to, forming the basis

of, containing, in connection with, responding to, demonstrating, declaring, describing, or supporting any event, act, or occurrence.

(7)    "DIP Financing" means any contemplated, potential or actual debtor-in-possession financing agreements concerning Debtors in the Bankruptcy Cases, including any such financing that is the subject of the EFIH First Lien DIP Motion or the EFIH Second Lien DIP Motion.

(8)    "Document" is used in the broadest sense contemplated by Bankruptcy Rule 7034 and Federal Rule of Civil Procedure 34 and includes, but is not limited to:

i)    correspondence, memoranda, notes, calendar or diary entries, statistics, letters, electronic mail, text messages, notebooks, telegrams, journals, minutes, agendas, notices, announcements, instructions, charts, schedules, requests, contracts, physical evidence, prospective contracts, agreements, prospective agreements, licenses, prospective licenses, order forms, books, accounts, records, reports, studies, surveys, experiments, analyses, checks, cancelled checks, wire confirmations, statements, receipts, returns, vouchers, statements, credit memoranda, sales slips, promissory notes, summaries, pamphlets, prospectuses, manuals, brochures, announcements, certificates, drawings, plans, inter-office and intraoffice communications, and offers;

ii)    notations in any form made of conversations, telephone calls, meetings, negotiations or other communications;

iii)    bulletins, circulars, schedules, lists, guides, printed matter (including newspapers, magazines, and other publications, articles and clippings

therefrom), press releases, computer printouts, teletypes, telecopies, telexes, invoices, ledgers, balance sheets, financial statements or worksheets;

iv) electronic, mechanical, or optical records or representations of any kind (including tapes, cassettes, discs, hard drives, recordings, voice mail, electronic mail, text messages, computer-stored data or material), or transcriptions thereof; and

v) all drafts, alterations, modifications, changes and amendments of any of the foregoing and any material underlying, supporting or used in the preparation of any document.

(9)    "EFH" means Energy Future Holdings Corp. and any of its Representatives.

(10)    "EFH Equity Owners" shall have the meaning ascribed to it in the First Day Declaration.

(11)    "EFIH" means Energy Future Intermediate Holding Company LLC and any of its Representatives.

(12)    "EFIH 6.875% Indenture" means the Indenture dated as of August 14, 2010 between EFIH and EFIH Finance, as issuers, and The Bank of New York Mellon Trust Company, N.A., as the original indenture trustee, and all supplements, amendments, and exhibits thereto.

(13)    "EFIH 6.875% Notes" means the 6.875% Senior Secured Notes Due 2017 issued by EFIH and EFIH Finance under the 6.875% Indenture.

(14)    "EFIH 10% Indenture" means the Indenture dated as of August 17, 2010 between EFIH and EFIH Finance, as issuers, and The Bank of New York Mellon Trust Company, N.A., as the original indenture trustee, and all supplements, amendments, and exhibits thereto.

(15)    "EFIH 10% Notes" means the 10.000% Senior Secured Notes Due 2020 issued by EFIH and EFIH Finance under the 10% Indenture.

(16)    "EFIH Debtors" means, collectively, EFIH and EFIH Finance and their respective Representatives.

(17)    "EFIH Finance" means EFIH Finance Inc. and any of its Representatives.

(18)    "EFIH First Lien DIP Financing" has the meaning ascribed to it in the EFIH DIP Motion.

(19)    "EFIH First Lien DIP Motion" means the Motion of Energy Future Intermediate Holding Company LLC and EFIH Finance, Inc. for Entry of (I) an Interim Order (A) Approving Certain Fees Related to Postpetition Financing and Granting Such Fees Administrative Expense Priority and (B) Scheduling a Final Hearing; and (II) a Final Order (A) Approving Postpetition Financing, (B) Granting Liens and Providing Superpriority Administrative Expense Claims, (C) Authorizing the Use of Cash Collateral, (D) Authorizing the EFIH First Lien Refinancing, (E) Authorizing Issuance of Roll-Up Debt to the Extent Authorized by the Settlement Motion, (F) Determining the Value of Secured Claims, and (G) Modifying the Automatic Stay filed in the Bankruptcy Cases [D.I. 74].

(20)    "EFIH First Lien Settlement" has the meaning ascribed to the term "First Lien Settlement" in EFIH First Lien Settlement Motion.

(21)    "EFIH First Lien Settlement Motion" means the Motion of Energy Future Holdings Corp., *et al.* for Entry of Orders Approving Certain EFIH Settlements and the Oncor TSA Amendment, filed in the Bankruptcy Cases [D.I. 472].

(22)    "EFIH First Lien Tender Offer" means that certain tender offer launched by the EFIH Debtors on or about May 7, 2014 in connection with the EFIH First Lien Settlement, including the Information Memorandum filed in the Bankruptcy Cases [D.I. 363-1].

(23)    "EFIH Second Lien DIP Facility" has the meaning ascribed to it in the EFIH Second Lien DIP Motion.

(24)    "EFIH Second Lien DIP Motion" means the Motion of Energy Future Intermediate Holding Company LLC and EFIH Finance Inc. for Entry of an Order (A) Approving Postpetition Second Lien Financing, (B) Granting Liens and Providing Superpriority Administrative Expense Claims, (C) Authorizing the Use of Cash Collateral, (D) Authorizing the EFIH Second Lien Repayment, (E) Authorizing Entry Into and Payment of Fees Under the Commitment Letter, and (F) Modifying the Automatic Stay, filed in the Bankruptcy Cases [D.I. 477].

(25)    "EFIH Second Lien Indenture" means the Indenture dated as of April 25, 2011 between EFIH and EFIH Finance, as issuers, and The Bank of New York Mellon Trust Company, N.A., as original indenture trustee, and all supplements, amendments, and exhibits thereto.

(26)    "EFIH Second Lien Notes" means collectively the 11.0% senior secured second lien notes due 2021 issued by EFIH and EFIH Finance under the Second Lien Indenture and the 11.75% senior secured second lien notes due 2022 issued by EFIH and EFIH Finance under the Second Lien Indenture.

(27)    "EFIH Second Lien Settlement" has the meaning ascribed in the EFIH First Lien DIP Motion.

(28)    "EFIH Second Lien Tender Offer" means that certain tender offer launched by the EFIH Debtors on or about May 9, 2014 in connection with the EFIH Second Lien Settlement, including, but not limited to, the Offer Memorandum filed in the Bankruptcy Cases [D.I. 400-1].

(29)    "EFIH Senior Toggle Indenture" means the Indenture dated as of December 5, 2012 between EFIH and EFIH Finance, as issuers, and The Bank of New York Mellon Trust Company, N.A., as trustee, and all supplements, amendments, and exhibits thereto.

(30)    "EFIH Senior Toggle Notes" the 11.25%/12.25% unsecured senior toggle notes due 2018, issued by EFIH and EFIH Finance pursuant to the Senior Toggle Indenture.

(31)    "EFIH Unexchanged Notes Indenture" means the Indenture dated as of November 16, 2009 between EFIH and EFIH Finance, as issuers, and The Bank of New York Mellon Trust Company, N.A., as trustee, and all supplements, amendments, and exhibits thereto.

(32)    "EFIH Unexchanged Notes" means the 9.75% fixed senior notes due 2019 issued by EFIH and EFIH Finance under the Unexchanged Notes Indenture.

(33)    "EFIH Unsecured Notes" means collectively the EFIH Senior Toggle Notes and the EFIH Unexchanged Notes.

(34)    "Exchange Offer(s)" means the series of transactions from July 2010 to January 2013 through which EFIH issued and/or offered the 6.875% Notes or the 10% Notes in exchange for preexisting debt obligations or for cash.

(35)    "First Day Declaration" means the Declaration of Paul Keglevic, Executive Vice President, Chief Financial Officer, and Co-Chief Restructuring Officer of Energy Future Holdings Corp., *et al.*, in Support of First Day Motions, filed in the Bankruptcy Cases [D.I. 98].

(36)    "Including" means including without limitation.

(37)    "Offering Memoranda" means the offering memoranda prepared in accordance with the issuance of the 6.875% Notes or 10% Notes.

(38)    "Oncor" means Oncor Electric Delivery Holdings Company LLC and Oncor Electric Delivery Company LLC and of their parents, subsidiaries, affiliated companies, and Representatives.

(39)    "Person" and "Entity" each and both mean any natural person or any business, legal, or governmental entity, corporation, or association, including trusts, estates, and any other such entities.

(40)    "Plan Restructuring Documents" has the meaning ascribed in the RSA.

(41)    "Representatives" means, with respect to any Person or Entity, such Person's or Entity's employees or former employees, agents or former agents, counsel or former counsel, accountants or former accountants, advisers or former advisers (including, but not limited to financial advisers), representatives or former representatives, directors or former directors, and/or officers or former officers and/or any other person(s) acting or purporting to act on its behalf.

(42)    "RSA" means the Restructuring Support and Lock-Up Agreement, attached as Exhibit D to the First Day Declaration.

(43)    "TCEH" means Texas Competitive Electric Holdings Company LLC, and any of its parents, subsidiaries, affiliated companies, and Representatives.

(44)    The terms "You," "Your," and "Yourself" refer to the Ad Hoc Committee, each member of the Ad Hoc Committee, all Representatives of the foregoing, the person or persons producing the documents on its or their behalf and any present or former officer, employee, agent, servant, attorney, investment banker, financial advisor, representative or other person acting for or on behalf of said party or parties.

(45)    Any reference to a Person or Entity shall include references to any of the Person's or Entity's past or present principals, members, shareholders, officers, managers, affiliates, subsidiaries, divisions, branches, agents, representatives, attorneys, testifying or non-testifying experts, employees, servants, consultants, contractors, predecessors, successors and assigns.

(46) Any terms not defined herein or in the Document Requests shall have the meaning ascribed to them in the RSA, which definitions are incorporated herein by reference.

**DOCUMENT REQUESTS**

(1) All Documents identifying the holders of the EFIH Senior Toggle Notes and the amount held by each such holder of EFIH Senior Toggle Notes.

(2) A complete copy of the EFIH Senior Toggle Indenture, including all amendments or modifications thereto and all documents incorporated therein by reference.

(3) All Documents concerning the drafting, negotiation, terms and/or issuance of notes under, and of SEC Form S-4 registration statements, prospectuses, offering memoranda, information statements and other exchange offering materials in connection with, the EFIH Senior Toggle Indenture and/or any indenture that was used as a precedent or model for any of the foregoing including all communications with holders or prospective holders, committees or groups of such holders at or before the time of the exchange offers or original issuances, as applicable.

(4) All drafts of, and documents sufficient to identify all persons who participated in the drafting of, the EFIH Senior Toggle Notes Indenture and the form of the Senior Toggle Notes, including any indenture that was used as a precedent or model for any of the foregoing.

(5) All communications between, among or within the Ad Hoc Committee, its members, its Representatives or any Representative of any member of the Ad Hoc

Committee, on the one hand, and any of the EFIH Debtors, EFH Equity Owners, the EFIH Unsecured Noteholders, the Consenting Fidelity EFIH First Lien Noteholders, the Consenting Non-Fidelity EFIH First Lien Noteholders, the EFIH Second Lien Noteholders (or committees or groups of holders of any of the foregoing), Fidelity, PIMCO or the respective Representatives of any of the foregoing, on the other hand, regarding any "Applicable Premium," make-whole premium, or similar premium for the EFIH 6.875% Notes, EFIH 10% Notes, EFIH Second Lien Notes, EFIH Senior Toggle Notes or the EFIH Unexchanged Notes.

(6)     All Documents concerning any assertion or calculation by the Ad Hoc Committee or any member thereof, or their respective Representatives, as to amounts owed to them in connection with any proposed restructuring of EFH, TCEH or the EFIH Debtors.

(7)     All Documents concerning whether or not the EFIH Debtors should seek chapter 11 relief, alternatives to chapter 11 relief, and/or any restructuring or restructuring proposals for the EFIH Debtors, including without limitation (i) all Documents concerning the status of the EFIH Debtors in relation to any restructuring of TCEH, and (ii) all communications between, among or within the Ad Hoc Committee, its members, its Representatives or any Representative of any member of the Ad Hoc Committee, on the one hand, and any of the any of the EFIH Debtors, EFH Equity Owners, the EFIH Unsecured Noteholders, the Consenting Fidelity EFIH First Lien Noteholders, the Consenting Non-Fidelity EFIH First Lien Noteholders, the EFIH Second

Lien Noteholders (or committees or groups of holders of any of the foregoing), Fidelity,

PIMCO or the respective Representatives of any of the foregoing, on the other hand.

(8)    All Documents concerning any proposed structure for, planning for, drafts

of, or agreement (including the RSA and/or the Plan Restructuring Documents) to amend

the Amended and Restated Tax Sharing Agreement, dated as of November 5, 2008, by

and among EFH, Oncor Electric Delivery Holdings LLC, Oncor Electric Delivery

Company LLC, Texas Transmission Investment LLC, and Oncor Management

Investment LLC, as amended and in effect from time to time, to include EFIH or to

otherwise redirect, in whole or in part, the payments under that agreement from EFH to

EFIH, including without limitation any cash flow forecasts or other projections reflecting

any change of payments, in whole or in part, from EFH to EFIH.

(9)    All Oncor strategic business plans and financial projections, including

without limitation projections of liquidity, that were in existence immediately prior to any

Exchange Offer.

(10)    All Documents concerning any transaction that was discussed within, or

considered by, the Ad Hoc Committee or its members as an alternative to the RSA.

(11)    All Documents concerning any consideration or analysis of the EFIH

Debtors' solvency, including without limitation any communications concerning the

same, prior to and during the EFIH's Debtors' decision to file for chapter 11 relief.

(12)    All Documents reflecting, referring to, or constituting or containing

projections of EFIH Debtors' financial performance (or any aspect thereof), including pro

formas of financial results, and/or documents containing estimates of Earnings Before

Interest, Taxes, Depreciation and Amortization, and/or including all drafts thereof and all notes, materials and other documents created or referred to in the course of compiling any of the foregoing.

(13)    All Documents reflecting, referring to, or constituting or containing projections concerning whether the EFIH 10% Notes could remain in place, be reinstated, and/or left unimpaired in a Chapter 11 case.

(14)    All Documents concerning any consideration of the EFIH Debtors' enterprise value, including without limitation any communications concerning the same, prior to and during the EFIH's Debtors' decision to file the Bankruptcy Cases.

(15)    All Documents concerning the EFIH First Lien Settlement, the EFIH Second Lien Settlement, the EFIH First Lien Tender Offer, the EFIH Second Lien Tender Offer, the EFIH First Lien DIP Financing, the EFIH Second Lien DIP Facility, and all deadlines or other milestones in the RSA, including, without limitation, (i) all drafts of all documentation for each of the foregoing, and (ii) all communications between, among or within the Ad Hoc Committee, its members, its Representatives or any Representative of any member of the Ad Hoc Committee, on the one hand, and any of and any of the EFIH Debtors, EFH Equity Owners, the EFIH Unsecured Noteholders, the Consenting Fidelity EFIH First Lien Noteholders, the Consenting Non-Fidelity EFIH First Lien Noteholders, the EFIH Second Lien Noteholders (or committees or groups of holders of any of the foregoing), Fidelity, PIMCO or the respective Representatives of any of the foregoing, on the other hand.

(16)    Executed copies of the RSA and Plan Restructuring Documents, including all signature pages, without redaction of names or debt holdings, and any side letters and/or other Documents reflecting the bond or debt holdings of the signatories at the time of signing the RSA.

(17)    All communications between, among or within the Ad Hoc Committee, its members, its Representatives or any Representative of any member of the Ad Hoc Committee, on the one hand, and any of the EFIH Debtors, EFH Equity Owners, the EFIH Unsecured Noteholders, the Consenting Fidelity EFIH First Lien Noteholders, the Consenting Non-Fidelity EFIH First Lien Noteholders, the EFIH Second Lien Noteholders (or committees or groups of such holders), Fidelity, PIMCO or the respective Representatives of any of the foregoing, on the other hand, regarding the RSA.

(18)    All Documents referring to any disparity or difference in treatment under the RSA, First Lien DIP Financing, Second Lien DIP Facility, Plan or any Plan Restructuring Documents between the holders of the EFIH 6.875% Notes or EFIH 10% Notes, on the one hand, and any of the EFIH Unsecured Noteholders, the Consenting Fidelity EFIH First Lien Noteholders, the Consenting Non-Fidelity EFIH First Lien Noteholders, the EFIH Second Lien Noteholders, Fidelity, or PIMCO on the other hand.

(19)    All Documents supporting or concerning the commitments for the EFIH First Lien DIP Financing and the EFIH Second Lien DIP Facility, including all drafts and all communications concerning the negotiation thereof.

(20)    All Documents referring to any release, indemnification or exculpation to be obtained by the Ad Hoc Committee, any of its members, or the Representatives of any of the foregoing pursuant to any Plan or Plan Restructuring Documents.

(21)    All Documents referring or relating to the timing of (a) the commencement of the Bankruptcy Cases; (b) entry of any order of the Bankruptcy Court in the Bankruptcy Cases, including, but not limited to, any order regarding (i) the DIP Financing; (ii) the Applicable Premium under any of the EFIH 6.875% Indenture, the EFIH 10% Indenture or the EFIH Second Lien Indenture; (iii) the RSA; (iv) the EFIH First Lien Settlement; (v) the EFIH Second Lien Settlement; (vi) the EFIH First Lien Tender Offer; or (vii) the EFIH Second Lien Tender Offer; or (c) solicitation of approval of the EFIH First Lien Settlement or the EFIH Second Lien Settlement.

(22)    All Documents referring to or purporting to restrict the authority of the EFIH Debtors to enter into settlement agreements with any holder of EFIH 6.875% Notes, EFIH 10% Notes or the indenture trustee under either the EFIH 6.875% Indenture or the EFIH 10% Indenture.

(23)    All Documents referring to any tranche of debt in the capital structure of EFH or the EFIH Debtors as the "fulcrum" security or utilizing any similar term.

(24)    All Documents referring to any fee to be paid to the Ad Hoc Committee, any member thereof, or any Representative of any of the foregoing pursuant to the RSA, the EFIH Second Lien DIP Facility or any Plan or Plan Restructuring Documents.

(25)    All Documents reflecting or referring to the calculation, estimation or determination of the amount of consideration to be received by the Ad Hoc Committee,

its members, its Representatives or any member's Representative on account of any EFH Unsecured Notes, EFIH First Lien Notes, EFIH Second Lien Notes, EFIH Unsecured Notes, TCEH First Lien Notes or any other security, debt instrument or obligation of any of EFH, the EFIH Debtors or TCEH held by the Ad Hoc Committee or any of its members, pursuant to the RSA, the EFIH First Lien DIP Financing, the EFIH Second Lien DIP Facility, the Plan or any Plan Restructuring Documents.

(26)    All Documents referring to any differences between the EFIH 6.875% Indenture or the EFIH 10% Indenture, on the one hand, and the EFIH Second Lien Indenture or EFIH Senior Toggle Indenture, on the other hand, regarding any Applicable Premium, makewhole or similar obligation.

(27)    All non-privileged legal memoranda or presentations prepared by any Representative of any party referring to the payment of the Applicable Premium, makewhole or similar obligation under the EFIH 6.875% Indenture, the EFIH 10% Indenture, the EFIH Second Lien Indenture, or the EFIH Senior Toggle Indenture.

(28)    All Documents concerning or otherwise reflecting any names of  parties who will receive any portion of the Execution Fee, Approval Fee, Arranger Fee Funding Cash Fee, Postpetition DIP Commitment Fees, Total Second Lien DIP Commitment Fees, Participation Fee, Closing Fee, Alternate Transaction Fee and Arrangement Payment referred to in the EFIH Second Lien DIP Motion.

(29)    All Documents concerning or otherwise reflecting any names of  parties who are the Selected Parties and the Transferee Commitment Party as that term is defined in the EFIH First Lien Settlement Motion.

(30) All Documents concerning or otherwise reflecting any names of parties who are the Selected Partners, Postfunding Partners and Specified Consultants as that term is defined or used in the RSA or exhibits thereto.

(31) All Documents referring to any discussions or other communications concerning post-confirmation employment or engagement, whether or not such employment or engagement was ultimately agreed, by any of the Reorganized Debtors with any present or former directors, officers or management of the Debtors.

Dated: May 21, 2014

COLE, SCHOTZ, MEISEL, FORMAN
& LEONARD, P.A.

Norman L. Pernick (No. 2290)
J. Kate Stickles (No. 2917)
Nicholas J. Brannick (No. 5721)
500 Delaware Avenue, Suite 1410
Wilmington, DE 19801
Telephone: 302-652-3131
Facsimile: 302-652-3117
npernick@coleschotz.com
kstickles@coleschotz.com
nbrannick@coleschotz.com

Warren A. Usatine
25 Main Street,
P.O. Box 800
Hackensack, NJ 07602
Telephone: 201-489-3000
Facsimile: 201-489-1536
wusatine@coleschotz.com

*Counsel for CSC Trust Company of Delaware, as successor indenture trustee and collateral trustee*

Case 14-10979-CSS Doc 1058-3 Filed 06/23/14 Page 1 of 4

**EXHIBIT C**

Case 14-10979-CSS Doc 1058-3 Filed 06/23/14 Page 2 of 4

**Brannick, Nicholas**

**From:** Usatine, Warren [WUsatine@coleschotz.com]

**Sent:** Monday, May 19, 2014 6:09 PM

**To:** 'Dempsey, David R.'; Pernick, Norman; Stickles, Kate

**Cc:** Boller, Robert; Frost-Davies, Julia; EAKleinhaus@WLRK.com; JLynch@wlrk.com; Groner, Samuel; David, Israel; Ganter, Jonathan F.; Esser, Michael P.; McKane, Mark E.; Sabin, Jeffrey S.; Hessler, Stephen E.; Sassower, Edward O; McGaan, Andrew R.; Carty, Chris; Qureshi, Abid; Donohue, Ryan; Baldini, Stephen; patrick.strawbridge@bingham.com; Brannick, Nicholas

**Subject:** RE: In re Energy Future Holdings Corp., et al Case No 14-10979(CSS) [COLESCHOTZ-CSDOCS.FID1688482]

Dear Counsel :

I write in connection with the document production you have undertaken in response to the informal discovery requests set forth in my May 8th letter. Our purpose in serving the informal requests was to allow for the accelerated production of key information central to the interests of the First Lien Holders. Having just this weekend begun to receive documents on behalf of some (but still not all) of your clients, I write to identify several initial issues that have arisen.

1. **Refusal to Produce from Actual Parties** - We are particularly frustrated by the Debtors' counsel's refusal to produce any documents from any Debtor. While the covering letters indicate some the parties are reviewing files of individuals that expand beyond the advisor teams, the letter from the Debtors' counsel indicates only an advisor search is being conducted for items 2, 4, 5 and 7 of my May 8th letter. As we discussed on our meet and confer call on May 14th, we fail to see how a complete production can be accomplished without a search of the files of the party representatives themselves. Stated differently, we don't believe we should be limited by the assumption that each responsive document passed over the email account of an advisor. We are entitled to discovery of the parties, not advisors. That means a review of and production from the files of actual business people -- and not lawyers and bankers -- is required. We view the Debtors' unwillingness to allow actual discovery of the parties as part of this process to be completely deficient, and we urge the Debtors to reconsider this position.

2. **Our Request Number 2** - As discussed and requested on the May 14th meet and confer, I delivered an email on May 15th expanding on our reasons for making this request. In the May 17th letter from Kirkland & Ellis that accompanied the Debtors' initial production, the Debtors' counsel states they "are willing to meet and confer further about this request..." Respectfully, I'm not sure what else we might say to each other on such a further meet and confer. We have articulated our reasons for the request. We think the issue of creating a default to avoid the makewhole premium obviously is a major issue in the case. And we think we are entitled to the discovery. The last point I would add here is that we assume you will agree this is certainly not an area where a search of the files merely of professionals will suffice.

3. **Search Terms** - We appreciate that, notwithstanding the initial position taken on the May 14th call, the Debtors have shared the searches run for certain of the requests. We believe, however, that the search terms relating to all requests should be shared so that we can provide input and be satisfied that a full production will be made. For the requests for which search terms were shared, our view is that the terms appear entirely too narrow (although we say that without the usual benefit of having dialogue with you on the number of "hits" achieved using various combinations of searches). For example, we think your search for the items in Request Number 4 should be expanded, at a minimum, to include terms such as, without limitation: (a) "exit" within some proximity of words like financing/facility/loan; (b) "conversion" or "convert" and/or "equity" within some proximity of DIP/loan/financing/etc.; and (c) words like "model" or "forecast" or "projection" or "diligence". With regard to the search terms relating to Request Number 7, please explain the reasons for including the word "Oncor" for the searches run on the files of the Kirkland attorneys, but not for the Evercore team. On its face, the limitation imposed by requiring the word "Oncor" might improperly and unnecessarily limit the number of "hits" for the Kirkland team. As I stated on our May 14th call, our expectation was and is that you will consult with us on search terms before searches are run. That is the most efficient way to proceed, especially under the extremely truncated schedule the Debtors have advanced.

I look forward to your responses, as well as your continuing production.



**Warren A. Usatine**
**Member**
25 Main Street | Hackensack, NJ | 07601
Direct 201.525.6233 | Firm 201.489.3000 | Fax 201.678.6233 | Cell 201.755.1532 | wusatine@coleschotz.com
New Jersey | New York | Delaware | Maryland | Texas
vCard | bio | website

Legal Secretary: Caroline DeCourcey-Côte | 201.489.3000 x5020 | CDeCourcey-Cote@coleschotz.com

---

**From:** Usatine, Warren [mailto:WUsatine@coleschotz.com]
**Sent:** Thursday, May 15, 2014 2:39 PM
**To:** 'Dempsey, David R.'; Pernick, Norman; Stickles, Kate
**Cc:** Boller, Robert; Frost-Davies, Julia; EAKleinhaus@WLRK.com; JLynch@wlrk.com; Groner, Samuel; David, Israel; Ganter, Jonathan F.; Esser, Michael P.; McKane, Mark E.; Sabin, Jeffrey S.; Hessler, Stephen E.; Sassower, Edward O; *patrick.strawbridge@bingham.com; McGaan, Andrew R.; Carty, Chris; Qureshi, Abid; Donohue, Ryan; Baldini, Stephen; Usatine, Warren
**Subject:** RE: In re Energy Future Holdings Corp., et al Case No 14-10979(CSS) [COLESCHOTZ-CSDOCS.FID1688482]

Counsel - This is in follow-up to yesterday afternoon's telephonic meet and confer regarding the EFIH First Lien Indenture Trustee's informal requests for production pursuant to our letter dated May 8, 2014. Certain of the parties from whom documents are to be produced requested additional information regarding the purpose and scope of two of the requests for production. The additional information provided herein is to assist in the expedited production of documents on a rolling basis, and does not alter or amend the requests for production in any manner. The trustee reserves all rights to serve formal discovery requests and/or seek judicial intervention with respect to the requests.

Request No. 2

As stated in the trustee's preliminary objection, one of the principal factual issues concerning the redemption premium is whether EFIH defaulted with an intent to avoid the premium. This request is targeted to the issue of whether there were discussions regarding not filing EFIH for chapter 11 relief and whether a potential filing of EFIH was done with the intent to avoid the premium. The time frame of the request is prior to any possible assertion of a joint interest privilege so as to avoid any delay resulting from requests for adjudication of that issue in the context of these informal discovery requests. The fact that, as noted by the Debtors during the meet and confer, the requested communications were prior to the negotiation of the current formulation of the RSA does not diminish the probative value of such communications, particularly with respect to available alternatives to an EFIH chapter 11 filing and the contemplation to avoid an EFIH chapter 11 filing altogether. Also, any nonbankruptcy scenarios that included payment of a premium to the PIKs on account of substantively identical premium language is probative.

To the extent that the Debtors contest (i.e. are unwilling to stipulate) that what is being effected is a "redemption" under the terms of the Indentures, we also believe these materials will be probative. In addition, these documents may have probative value with respect to valuation and solvency issues that are potentially at issue in this transaction, including, without limitation, with respect to adequate protection (during the pendency of bankruptcy court litigation after DIP closing, any gap between funding of a priming DIP and payout, and similar relief on appeal) and the propriety of the global transaction for which approval is sought. Because the Debtors have refused to stipulate and covenant as to the secured claim status and priority of the make-whole claims until the final resolution of such claims (which creates the possibility, improperly imposed in our view, but nonetheless possible, of unsecured claim status for the make-whole claim), we are unwilling to forego a full examination of the transactions that might impair the value or rights of such unsecured claim. These issues are a function of the positions of the debtors that are only now becoming clear.

Request No. 6

This request simply seeks an unredacted copy of the RSA, the unredacted signature pages thereto, and the holdings of 6.875% notes by RSA signatories. There is simply no basis to withhold this information that goes to the core of the financial incentives of the various signatories to the RSA. The disparate treatment of the 6.875% and 10% notes is apparent from the RSA. What is not apparent is the extent of the disparate treatment for select holders of such notes which, of course, can only be determined by understanding the holdings of the relevant parties. Further, the amount of other consideration in the form of commitment fees and other value transfers for such parties can only be fully understood in the context of the parties' holdings. Lastly, based upon the debtors' prior and anticipated statements seeking to characterize those who have signed as indicative supporters of the reasonableness of the first lien "settlement," and the majority first lien holders objecting to the settlement as "holdouts," the import of such holdings is obvious.

Finally, as we discussed on the call please send the search terms you are using for the various requests. I look forward to hearing from you on these issues and to your getting the production started on a rolling basis shortly.

**Warren A. Usatine**
**Member**
25 Main Street | Hackensack, NJ | 07601
Direct 201.525.6233 | Firm 201.489.3000 | Fax 201.678.6233 | Cell 201.755.1532 | wusatine@coleschotz.com
New Jersey | New York | Delaware | Maryland | Texas
vCard | bio | website

Legal Secretary: Caroline DeCourcey-Côte | 201.489.3000 x5020 | CDeCourcey-Cote@coleschotz.com

**EXHIBIT D**

Case 14-10979-CSS Doc 1058-4 Filed 06/23/14 Page 2 of 32

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| ENERGY FUTURE HOLDINGS CORP., *et al*.[1] | Case No. 14-10979 (CSS) |
| *Debtors.* | Jointly Administered |
| CSC TRUST COMPANY OF DELAWARE, as INDENTURE TRUSTEE, | |
| *Plaintiff,* | Adversary Proceeding No. 14-50363 (CSS) |
| -against- | |
| ENERGY FUTURE INTERMEDIATE HOLDING COMPANY LLC and EFIH FINANCE INC., | |
| *Defendants.* | |

**THE AD HOC COMMITTEE OF EFIH UNSECURED NOTEHOLDERS' RESPONSES AND OBJECTIONS TO CSC TRUST COMPANY OF DELAWARE'S FIRST SET OF DOCUMENT REQUESTS**

The Ad Hoc Committee of EFIH Unsecured Noteholders (the "Ad Hoc Committee"), by and through their undersigned counsel, hereby respond and object to CSC Trust Company of Delaware's ("CSC Trust") First Set of Requests for Production in the above-captioned matters (collectively, the "Document Requests" and each such request a "Request"). The Ad Hoc Committee's responses are subject to the General and Specific Objections as set forth below.

[1] The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, for which the debtors have requested joint administration, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' proposed claims and noticing agent at http://www.efhcaseinfo.com.

Case 14-10979-CSS Doc 1058-4 Filed 06/23/14 Page 3 of 32

## DEFINITIONS

The following definitions of terms apply to this response to CSC Trust's Document Requests (the "Response"). Unless otherwise defined herein, all words and phrases used herein shall be accorded their usual meaning and shall be interpreted in their common, ordinary sense.

1. Subject to the Specific Objections to Definitions described below, the defined terms used in the Document Requests are incorporated herein.

2. "Contested Matters" include the EFIH First Lien DIP Motion, EFIH First Lien Settlement Motion, EFIH First Lien Tender Offer, EFIH Second Lien DIP Motion, EFIH Second Lien Settlement, and EFIH Second Lien Tender Offer, as those terms are defined in the Document Requests, as well as the RSA Assumption Motion (defined herein).

3. "EFIH First Lien Makewhole Adversary Proceeding" means the above-captioned adversary proceeding commenced by CSC Trust related to the applicability of the Applicable Premium to the EFIH First Lien Notes.

4. "EFIH First Lien Notes" means the EFIH 6.875% Notes and the EFIH 10% Notes, as those terms are defined in the Document Requests.

5. "Fidelity" shall have the meaning ascribed to it in the Informal Document Requests.

6. "Informal Document Requests" refers to the informal document requests of CSC Trust made in the letter of Warren A. Usatine, dated May 8, 2014.

7. "Petition Date" means April 29, 2014 at the time of the commencement of the above-captioned bankruptcy proceedings.

8. "PIMCO" shall have the meaning ascribed to it in the Informal Document Requests.

9. "RSA Assumption Motion" means the Motion of Energy Future Holdings Corp. *et al.*, for Entry of an Order Authorizing the RSA Debtors to Assume the Restructuring Support Agreement and Modifying the Automatic Stay [D.I. 505].

**GENERAL OBJECTIONS**

The following General Objections apply to each Definition, Instruction, and Request, and shall have the same force and effect as if fully set forth in the response to each Request. The Ad Hoc Committee does not waive any General Objections by providing responses and objections to specific Requests.

1. The Ad Hoc Committee objects to the Document Requests to the extent that they seek information that is not relevant to the EFIH First Lien Makewhole Adversary Proceeding or the Contested Matters, and is not reasonably calculated to lead to the discovery of admissible evidence in connection with the EFIH First Lien Makewhole Adversary Proceeding or the Contested Matters.

2. The Ad Hoc Committee objects to the each Request, Instruction, and Definition to the extent that they seek to impose on the Ad Hoc Committee any obligations that are different from, or in addition to, those imposed by the Federal Rules of Civil Procedure (the "Federal Rules"), the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the Local Rules for the Bankruptcy Court for the District of Delaware (the "Local Rules"), or any other applicable law or rules.

3. The Ad Hoc Committee objects to the Document Requests to the extent that they are overbroad, cumulative of discovery that has already been served by CSC Trust and responded to by the Ad Hoc Committee and others, duplicative, unduly burdensome, oppressive, premature, or seek information that is already in CSC Trust's possession, custody, or control, or that is publicly available or obtainable from some other source that is more convenient, less

Case 14-10979-CSS Doc 1058-4 Filed 06/23/14 Page 5 of 32

burdensome, and/or less expensive. Specifically, as provided in more detail in the Specific Objections, the Ad Hoc Committee has already produced documents responsive to many of the Requests in connection with its response to the Informal Document Requests.

4. The Ad Hoc Committee objects to the Document Requests to the extent that they seek the identification and/or production of "all" or "any" facts, documents, or communications of a specific nature or type or which "reflect" or "relate to" a certain topic when a more limited number of such facts, documents, or communications could be sought or identified and would supply the requested information, on the grounds that such a requirement makes the Document Requests overbroad, unduly burdensome and oppressive. In responding to the Document Requests, the Ad Hoc Committee will interpret them reasonably and will not construe specific Document Requests to require production of literally every potentially responsive piece of information or document, no matter how attenuated from the substantive scope of the request or difficult or burdensome to obtain.

5. The Ad Hoc Committee objects to the Document Requests on the grounds and to the extent that they are vague, ambiguous, or contain terms that are undefined.

6. The Ad Hoc Committee objects to the Document Requests to the extent that they seek Documents that are subject to the attorney-client privilege, the attorney work product doctrine, the common interest privilege, or are otherwise protected from disclosure under applicable privileges, laws, or rules. To the extent that any such Document is inadvertently produced in response to the Document Requests, the production of any such Document shall not constitute a waiver of the Ad Hoc Committee's right to assert the applicability of any privilege, or the applicability of the attorney work product doctrine, with respect to such Document. The Ad Hoc Committee objects to any reading, copying, summarizing or other use by CSC Trust of

such Document, and requests that CSC Trust immediately notify the Ad Hoc Committee of any instance where it knows, or reasonably suspects, that such an inadvertent production has occurred, and immediately return such Document to the Ad Hoc Committee.

7.      The Ad Hoc Committee expressly reserves the right to object on any ground at any time to further document requests, and reserves the right to revise, supplement, correct or add to its Response to the Document Requests.  The Ad Hoc Committee expressly reserves any and all rights and privileges under the Federal Rules, the Bankruptcy Rules, the Local Rules, and any other applicable law or rules, and the failure to assert such rights and privileges shall not constitute a waiver thereof, either with respect to these responses or with respect to any future discovery responses or objections.

8.      The Ad Hoc Committee responds to the Document Requests without conceding, and on the contrary reserving and intending to reserve, all questions as to the competence, privilege, relevance, or materiality of the subject matter of the Document Requests, and without prejudice to its right to object to further discovery, or to object to the admissibility of the information or related documents in this matter or in any related or subsequent action or proceeding.

9.      The Ad Hoc Committee objects to the Document Requests insofar as they assume disputed facts or legal conclusions.  The Ad Hoc Committee hereby denies any such facts or legal conclusions.  Any Response or Objection, including the identification of Documents, is without prejudice to this objection and the Ad Hoc Committee's right to dispute facts and legal conclusions assumed by the Document Requests.

10.     The Ad Hoc Committee's Responses, as set forth herein, are based on its knowledge of facts and information presently available.  The Ad Hoc Committee reserves the

right to correct, clarify, modify, amend, or supplement its Responses at any time to the extent that required by federal law should the Ad Hoc Committee discover additional facts, information and/or Documents responsive to the Document Requests.

11. No objection or limitation, or lack thereof, made in these objections shall be deemed an admission by the Ad Hoc Committee as to the existence or nonexistence of information.

12. In responding to each of the Document Requests, the Ad Hoc Committee incorporates, as if fully stated therein, each and every General Objection made heretofore.

**OBJECTIONS TO INSTRUCTIONS**

The Ad Hoc Committee asserts the following Specific Objections, which are incorporated by reference in the Responses to the Document Requests:

1. The Ad Hoc Committee objects to Instruction 7 to the extent that it imposes an undue burden on the Ad Hoc Committee and exceeds the requirements of the Federal Rules, the Bankruptcy Rules, the Local Rules, and any other applicable law or rules. The Ad Hoc Committee will use good faith efforts to generate search terms or parameters that will identify all responsive or potentially responsive Documents and will disclose such search terms or parameters to CSC Trust.

2. The Ad Hoc Committee objects to Instruction 14 because the proposed relevant time period of January 1, 2013 through the present for each Request is overly broad and not tailored to the information sought in each Request. Moreover, the Ad Hoc Committee objects to the extent that Documents sought from the Petition Date "through the present" are subject to attorney-client privilege, the work product doctrine, and/or common interest privilege.

**SPECIFIC OBJECTION TO DEFINITIONS**

The Ad Hoc Committee asserts the following Specific Objections, which are incorporated by reference in its responses to the Document Requests:

1. The Ad Hoc Committee objects to the definitions of "EFH" and "EFIH" in the Document Requests to the extent that it purports to include the Representatives of the entities. To the extent that a Document Request seeks production from the Representatives of EFH and EFIH, such a request must be made explicit.

2. The Ad Hoc Committee objects to the definition of "Representative" on the grounds that it is overly broad.

**SPECIFIC RESPONSES AND OBJECTIONS TO THE REQUESTS**

The Ad Hoc Committee incorporates in each of its responses to the Document Requests each and every General Objection made heretofore, as if expressly set forth herein. The Ad Hoc Committee also objects to the individual Requests as follows:

**DOCUMENT REQUEST NO. 1**

All Documents identifying the holders of the EFIH Senior Toggle Notes and the amount held by each such holder of EFIH Senior Toggle Notes.

**RESPONSE TO DOCUMENT REQUEST NO. 1**

The Ad Hoc Committee objects to this Request because it does not identify the date on which it seeks the identification of the holders of the EFIH Senior Toggle Notes and the amount held by each such holder and is thus overly broad. The Ad Hoc Committee further objects to this Request because the identity of holders of EFIH Senior Toggle Notes is neither relevant to the Makewhole Adversary Proceeding or the Contested Matters nor is likely to lead to the discovery of admissible evidence in connection with the Makewhole Adversary Proceeding or the Contested Matters.

The Ad Hoc Committee further objects to this Request because it is cumulative of the Informal Document Requests. Specifically, in response to the Informal Document Requests, the Ad Hoc Committee has already produced non-privileged Documents in response to this Request from January 28, 2014 through April 29, 2014, identifying the members of the Ad Hoc Committee and the amount of EFIH Senior Toggle Notes held by each such member. Moreover, on behalf of all parties who received the Informal Document Requests, the Debtors have produced the signature pages to the RSA, which contain holdings information as of the Petition Date.

**DOCUMENT REQUEST NO. 2**

> A complete copy of the EFIH Senior Toggle Indenture, including all amendments or modifications thereto and all documents incorporated therein by reference.

**RESPONSE TO DOCUMENT REQUEST NO. 2**

The Ad Hoc Committee objects to this Request to the extent that it seeks all documents incorporated in the EFIH Senior Toggle Indenture by reference as that Request is overly broad and unduly burdensome. The Ad Hoc Committee further objects to this Request because the Senior Toggle Indenture is neither relevant to the Makewhole Adversary Proceeding or the Contested Matters nor likely to lead to the discovery of admissible evidence in connection with Makewhole Adversary Proceeding or the Contested Matters.

Notwithstanding the foregoing, the Ad Hoc Committee will produce a complete copy of the EFIH Senior Toggle Indenture, including all amendments or modifications thereto.

**DOCUMENT REQUEST NO. 3**

> All Documents concerning the drafting, negotiation, terms and/or issuance of notes under, and of SEC Form S-4 registration statements, prospectuses, offering memoranda, information statements and other exchange offering materials in connection with, the EFIH Senior Toggle Indenture and/or any indenture that was used as a precedent or model for any of the foregoing including all communications with holders or prospective holders, committees or groups of

such holders at or before the time of the exchange offers or original issuances, as applicable.

**RESPONSE TO DOCUMENT REQUEST NO. 3**

The Ad Hoc Committee objects to this Request to because it seeks information regarding the drafting and negotiation of the EFIH Senior Toggle Indenture or documents publicly-filed in connection with the issuance of the EFIH Senior Toggle Notes, which is neither relevant to the Makewhole Adversary Proceeding or the Contested Matters nor likely to lead to the discovery of admissible evidence in connection with Makewhole Adversary Proceeding or the Contested Matters. The Ad Hoc Committee further objects to this Request because it seeks communications protected by the attorney-client privilege or the work product doctrine. The Ad Hoc Committee further objects to this Request to the extent that it seeks documents that are publicly available or already in CSC Trust's possession.

**DOCUMENT REQUEST NO. 4**

All drafts of, and documents sufficient to identify all persons who participated in the drafting of, the EFIH Senior Toggle Notes Indenture and the form of the Senior Toggle Notes, including any indenture that was used as a precedent or model for any of the foregoing.

**RESPONSE TO DOCUMENT REQUEST NO. 4**

The Ad Hoc Committee objects to this Request to because it seeks information regarding the drafting of the EFIH Senior Toggle Indenture, which is neither relevant to the Makewhole Adversary Proceeding or the Contested Matters nor likely to lead to the discovery of admissible evidence in connection with Makewhole Adversary Proceeding or the Contested Matters. The Ad Hoc Committee further objects to this Request because it seeks communications protected by the attorney-client privilege or the work product doctrine.

**DOCUMENT REQUEST NO. 5**

All communications between, among or within the Ad Hoc Committee, its

> members, its Representatives or any Representative of any member of the Ad Hoc Committee, on the one hand, and any of the EFIH Debtors, EFH Equity Owners, the EFIH Unsecured Noteholders, the Consenting Fidelity EFIH First Lien Noteholders, the Consenting Non-Fidelity EFIH First Lien Noteholders, the EFIH Second Lien Noteholders (or committees or groups of holders of any of the foregoing), Fidelity, PIMCO or the respective Representatives of any of the foregoing, on the other hand, regarding any "Applicable Premium," make-whole premium, or similar premium for the EFIH 6.875% Notes, EFIH 10% Notes, EFIH Second Lien Notes, EFIH Senior Toggle Notes or the EFIH Unexchanged Notes.

**RESPONSE TO DOCUMENT REQUEST NO. 5**

The Ad Hoc Committee objects to this Request because it seeks communications regarding the applicability of any Applicable Premium, makewhole premium, or similar premium for the EFIH First Lien Notes or the EFIH Second Lien Notes, which are protected by the attorney-client privilege (including the common interest privilege) or the work product doctrine.

The Ad Hoc Committee further objects to this Request to the extent that it is cumulative of the Informal Document Requests. Specifically, in response to the Informal Document Requests, the Ad Hoc Committee has already produced all non-privileged Documents responsive to this Request from January 28, 2014 through the Petition Date between or among the Ad Hoc Committee and/or its advisors, on the one hand, and the Debtors, Fidelity, the EFH Equity Owners, and/or PIMCO, and/or each of their advisors, on the other hand. Counsel for the Ad Hoc Committee will make themselves available to meet and confer to the extent that counsel for CSC Trust can identify any specific deficiencies in prior productions in connection with this Request.

**DOCUMENT REQUEST NO. 6**

> All Documents concerning any assertion or calculation by the Ad Hoc Committee or any member thereof, or their respective Representatives, as to amounts owed to them in connection with any proposed restructuring of EFH, TCEH or the EFIH Debtors.

**RESPONSE TO DOCUMENT REQUEST NO. 6**

The Ad Hoc Committee objects to this Request on the grounds that calculation of the amounts owed to the members of the Ad Hoc Committee is neither relevant to the Makewhole Adversary Proceeding or the Contested Matters nor likely to lead to the discovery of admissible evidence in connection with the Makewhole Adversary Proceeding or the Contested Matters. The Ad Hoc Committee also objects to this Request to the extent that it seeks Documents that are subject to attorney-client privilege, work product doctrine, and/or common interest privilege.

The Ad Hoc Committee further objects to this Request to the extent that it is cumulative of the Informal Document Requests. Specifically, in response to the Informal Document Requests, the Ad Hoc Committee has already produced all non-privileged Documents responsive to this Request from January 28, 2014 through the Petition Date between or among the Ad Hoc Committee and/or its advisors, on the one hand, and the Debtors, Fidelity, the EFH Equity Owners, and/or PIMCO, and/or each of their advisors, on the other hand. Counsel for the Ad Hoc Committee will make themselves available to meet and confer to the extent that counsel for CSC Trust can identify any specific deficiencies in prior productions in connection with this Request.

**DOCUMENT REQUEST NO. 7**

> All Documents concerning whether or not the EFIH Debtors should seek chapter 11 relief, alternatives to chapter 11 relief, and/or any restructuring or restructuring proposals for the EFIH Debtors, including without limitation (i) all Documents concerning the status of the EFIH Debtors in relation to any restructuring of TCEH, and (ii) all communications between, among or within the Ad Hoc Committee, its members, its Representatives or any Representative of any member of the Ad Hoc Committee, on the one hand, and any of the any of the EFIH Debtors, EFH Equity Owners, the EFIH Unsecured Noteholders, the Consenting Fidelity EFIH First Lien Noteholders, the Consenting Non-Fidelity EFIH First Lien Noteholders, the EFIH Second Lien Noteholders (or committees or groups of holders of any of the foregoing), Fidelity, PIMCO or the respective Representatives of any of the foregoing, on the other hand.

Case 14-10979-CSS Doc 1056-4 Filed 06/23/14 Page 19 of 92

**RESPONSE TO DOCUMENT REQUEST NO. 7**

The Ad Hoc Committee objects to this Request to the extent that it seeks information that is neither relevant to the Makewhole Adversary Proceeding or the Contested Matters nor likely to lead to the discovery of admissible evidence in connection with the Makewhole Adversary Proceeding or the Contested Matters. The Ad Hoc Committee also objects to this Request to the extent that it seeks Documents that are subject to attorney-client privilege, work product doctrine, and/or common interest privilege.

The Ad Hoc Committee further objects to this Request because it is cumulative of the Informal Document Requests. Specifically, in response to the Informal Document Requests, the Ad Hoc Committee has already produced all non-privileged Documents responsive to this Request from January 28, 2014 through the Petition Date between or among the Ad Hoc Committee and/or its advisors, on the one hand, and the Debtors, Fidelity, the EFH Equity Owners, and/or PIMCO, and/or each of their advisors, on the other hand. Counsel for the Ad Hoc Committee will make themselves available to meet and confer to the extent that counsel for CSC Trust can identify any specific deficiencies in prior productions in connection with this Request.

**DOCUMENT REQUEST NO. 8**

All Documents concerning any proposed structure for, planning for, drafts of, or agreement (including the RSA and/or the Plan Restructuring Documents) to amend the Amended and Restated Tax Sharing Agreement, dated as of November 5, 2008, by and among EFH, Oncor Electric Delivery Holdings LLC, Oncor Electric Delivery Company LLC, Texas Transmission Investment LLC, and Oncor Management Investment LLC, as amended and in effect from time to time, to include EFIH or to otherwise redirect, in whole or in part, the payments under that agreement from EFH to EFIH, including without limitation any cash flow forecasts or other projections reflecting any change of payments, in whole or in part, from EFH to EFIH.

Case 14-10979-CSS Doc 1056-4 Filed 06/23/14 Page 14 of 32

**RESPONSE TO DOCUMENT REQUEST NO. 8**

The Ad Hoc Committee objects to this Request on the grounds that it is overly broad and unduly burdensome to the extent that it is not sufficiently limited in time. The Ad Hoc Committee further objects to this Request on the grounds that documents related to any proposed amendment to the Amended and Restated Tax Sharing Agreement are neither relevant to the Makewhole Adversary Proceeding or the Contested Matters nor likely to lead to the discovery of admissible evidence in connection with the Makewhole Adversary Proceeding or the Contested Matters. The Ad Hoc Committee also objects to this Request to the extent that it seeks Documents that are subject to the attorney-client privilege, work product doctrine, and/or common interest privilege.

The Ad Hoc Committee further objects to this Request because it is cumulative of the Informal Document Requests. Specifically, in response to the Informal Document Requests, the Ad Hoc Committee has already produced all non-privileged Documents responsive to this Request from January 28, 2014 through the Petition Date between or among the Ad Hoc Committee and/or its advisors, on the one hand, and the Debtors, Fidelity, the EFH Equity Owners, and/or PIMCO, and/or each of their advisors, on the other hand. Counsel for the Ad Hoc Committee will make themselves available to meet and confer to the extent that counsel for CSC Trust can identify any specific deficiencies in prior productions in connection with this Request.

**DOCUMENT REQUEST NO. 9**

> All Oncor strategic business plans and financial projections, including without limitation projections of liquidity, that were in existence immediately prior to any Exchange Offer.

**RESPONSE TO DOCUMENT REQUEST NO. 9**

The Ad Hoc Committee objects to this Request on the grounds that it is overly broad and unduly burdensome to the extent that it is not sufficiently limited in time.   The Ad Hoc Committee further objects to this Request on the grounds that documents related to Oncor's business plans and financial projections are neither relevant to the Makewhole Adversary Proceeding or the Contested Matters nor likely to lead to the discovery of admissible evidence in connection with the Makewhole Adversary Proceeding or the Contested Matters.

**DOCUMENT REQUEST NO. 10**

> All Documents concerning any transaction that was discussed within, or considered by, the Ad Hoc Committee or its members as an alternative to the RSA.

**RESPONSE TO DOCUMENT REQUEST NO. 10**

The Ad Hoc Committee objects to this Request on the grounds that it is overly broad and unduly burdensome to the extent that it is not sufficiently limited in time and to the extent that it seeks information related to "any transaction."   The Ad Hoc Committee further objects to this Request on the grounds that the information sought is neither relevant to the Makewhole Adversary Proceeding or the Contested Matters nor likely to lead to the discovery of admissible evidence in connection with the Makewhole Adversary Proceeding or the Contested Matters. The Ad Hoc Committee also objects to this Request to the extent that it seeks Documents from the Petition Date to the present because that is not reasonably calculated to lead to responsive information.

The Ad Hoc Committee further objects to this Request because it is cumulative of the Informal Document Requests.  Specifically, in response to the Informal Document Requests, the Ad Hoc Committee has already produced all non-privileged Documents responsive to this Request, if any, from January 28, 2014 through the Petition Date between or among the Ad Hoc

Committee and/or its advisors, on the one hand, and the Debtors, Fidelity, the EFH Equity Owners, and/or PIMCO, and/or each of their advisors, on the other hand. Counsel for the Ad Hoc Committee will make themselves available to meet and confer to the extent that counsel for CSC Trust can identify any specific deficiencies in prior productions in connection with this Request.

**DOCUMENT REQUEST NO. 11**

> All Documents concerning any consideration or analysis of the EFIH Debtors' solvency, including without limitation any communications concerning the same, prior to and during the EFIH' Debtors' decision to file for chapter 11 relief.

**RESPONSE TO DOCUMENT REQUEST NO. 11**

The Ad Hoc Committee objects to this Request on the grounds that it is overly broad and unduly burdensome to the extent that it is not sufficiently limited in time. The Ad Hoc Committee further objects to this Request because the phrase "during the EFIH' (sic) Debtors' decision to file for chapter 11 relief" is vague and ambiguous as to any specific time period. The Ad Hoc Committee further objects to this Request on the grounds that it seeks information that is neither relevant to the Makewhole Adversary Proceeding or the Contested Matters nor likely to lead to the discovery of admissible evidence in connection with the Makewhole Adversary Proceeding or the Contested Matters.

The Ad Hoc Committee further objects to this Request because it is cumulative of the Informal Document Requests. Specifically, in response to the Informal Document Requests, the Ad Hoc Committee has already produced all non-privileged Documents responsive to this Request, if any, from January 28, 2014 through the Petition Date between or among the Ad Hoc Committee and/or its advisors, on the one hand, and the Debtors, Fidelity, the EFH Equity Owners, and/or PIMCO, and/or each of their advisors, on the other hand. Counsel for the Ad Hoc Committee will make themselves available to meet and confer to the extent that counsel for

CSC Trust can identify any specific deficiencies in prior productions in connection with this Request.

**DOCUMENT REQUEST NO. 12**

> All Documents reflecting, referring to, or constituting or containing projections of EFIH Debtors' financial performance (or any aspect thereof), including pro formas of financial results, and/or documents containing estimates of Earnings Before Interest, Taxes, Depreciation and Amortization, and/or including all drafts thereof and all notes, materials and other documents created or referred to in the course of compiling any of the foregoing.

**RESPONSE TO DOCUMENT REQUEST NO. 12**

The Ad Hoc Committee objects to this Request on the grounds that it is overly broad and unduly burdensome to the extent that it is not sufficiently limited in time and to the extent that it does not specify the creator of any such projections. The Ad Hoc Committee further objects to this Request on the grounds that it seeks information that is neither relevant to the Makewhole Adversary Proceeding or the Contested Matters nor likely to lead to the discovery of admissible evidence in connection with the Makewhole Adversary Proceeding or the Contested Matters.

The Ad Hoc Committee further objects to this Request because it is cumulative of the Informal Document Requests. Specifically, in response to the Informal Document Requests, the Ad Hoc Committee has already produced all non-privileged Documents responsive to this Request, if any, from January 28, 2014 through the Petition Date between or among the Ad Hoc Committee and/or its advisors, on the one hand, and the Debtors, Fidelity, the EFH Equity Owners, and/or PIMCO, and/or each of their advisors, on the other hand. Counsel for the Ad Hoc Committee will make themselves available to meet and confer to the extent that counsel for CSC Trust can identify any specific deficiencies in prior productions in connection with this Request.

**DOCUMENT REQUEST NO. 13**

> All Documents reflecting, referring to, or constituting or containing projections concerning whether the EFIH 10% Notes could remain in place, be reinstated, and/or left unimpaired in a Chapter 11 case.

**RESPONSE TO DOCUMENT REQUEST NO. 13**

The Ad Hoc Committee objects to this Request on the grounds that it is overly broad and unduly burdensome to the extent that it is not sufficiently limited in time. The Ad Hoc Committee further objects to this Request on the grounds that it seeks information that is neither relevant to the Makewhole Adversary Proceeding or the Contested Matters nor likely to lead to the discovery of admissible evidence in connection with the Makewhole Adversary Proceeding or the Contested Matters. The Ad Hoc Committee also objects to this Request to the extent that it seeks Documents that are subject to the attorney-client privilege, work product doctrine, and/or common interest privilege.

The Ad Hoc Committee further objects to this Request because it is cumulative of the Informal Document Requests. Specifically, in response to the Informal Document Requests, the Ad Hoc Committee has already produced all non-privileged Documents responsive to this Request, if any, from January 28, 2014 through the Petition Date between or among the Ad Hoc Committee and/or its advisors, on the one hand, and the Debtors, Fidelity, the EFH Equity Owners, and/or PIMCO, and/or each of their advisors, on the other hand. Counsel for the Ad Hoc Committee will make themselves available to meet and confer to the extent that counsel for CSC Trust can identify any specific deficiencies in prior productions in connection with this Request.

**DOCUMENT REQUEST NO. 14**

> All Documents concerning any consideration of the EFIH Debtors' enterprise value, including without limitation any communications concerning the same, prior to and during the EFIH's Debtors' decision to file the Bankruptcy Cases.

**RESPONSE TO DOCUMENT REQUEST NO. 14**

The Ad Hoc Committee objects to this Request because the phrase "during the EFIH's Debtors' (sic) decision to file the Bankruptcy Cases" is vague and ambiguous as to any specific time period. The Ad Hoc Committee further objects to this Request to the extent that it seeks Documents concerning any internal valuations performed by the Ad Hoc Committee or its members of the EFIH Debtors' enterprise value as such information is neither relevant to the Makewhole Adversary Proceeding or the Contested Matters nor likely to lead to the discovery of admissible evidence in connection with the Makewhole Adversary Proceeding or the Contested Matters.

The Ad Hoc Committee further objects to this Request because it is cumulative of the Informal Document Requests. Specifically, in response to the Informal Document Requests, the Ad Hoc Committee has already produced all non-privileged Documents responsive to this Request, if any, from January 28, 2014 through the Petition Date between or among the Ad Hoc Committee and/or its advisors, on the one hand, and the Debtors, Fidelity, the EFH Equity Owners, and/or PIMCO, and/or each of their advisors, on the other hand. Counsel for the Ad Hoc Committee will make themselves available to meet and confer to the extent that counsel for CSC Trust can identify any specific deficiencies in prior productions in connection with this Request.

**DOCUMENT REQUEST NO. 15**

> All Documents concerning the EFIH First Lien Settlement, the EFIH Second Lien Settlement, the EFIH First Lien Tender Offer, the EFIH Second Lien Tender Offer, the EFIH First Lien DIP Financing, the EFIH Second Lien DIP Facility, and all deadlines or other milestones in the RSA, including, without limitation, (i) all drafts of all documentation for each of the foregoing, and (ii) all communications between, among or within the Ad Hoc Committee, its members, its Representatives or any Representative of any member of the Ad Hoc Committee, on the one hand, and any of and any of the EFIH Debtors, EFH Equity Owners, the EFIH Unsecured Noteholders, the Consenting Fidelity EFIH

> First Lien Noteholders, the Consenting Non-Fidelity EFIH First Lien Noteholders, the EFIH Second Lien Noteholders (or committees or groups of holders of any of the foregoing), Fidelity, PIMCO or the respective Representatives of any of the foregoing, on the other hand.

**<u>RESPONSE TO DOCUMENT REQUEST NO. 15</u>**

The Ad Hoc Committee objects to this Request on the grounds that it is overly broad, unduly burdensome, and not reasonably calculated to discover responsive Documents because it is not sufficiently limited in time. The Ad Hoc Committee further objects to this Request to the extent that it seeks Documents or communications that are subject to the attorney-client privilege, work product doctrine, and/or common interest privilege.

The Ad Hoc Committee further objects to this Request because it is cumulative of the Informal Document Requests. Specifically, in response to the Informal Document Requests, the Ad Hoc Committee has already produced all non-privileged Documents responsive to this Request from January 28, 2014 through the Petition Date between or among the Ad Hoc Committee and/or its advisors, on the one hand, and the Debtors, Fidelity, the EFH Equity Owners, and/or PIMCO, and/or each of their advisors, on the other hand. Counsel for the Ad Hoc Committee will make themselves available to meet and confer to the extent that counsel for CSC Trust can identify any specific deficiencies in prior productions in connection with this Request.

**<u>DOCUMENT REQUEST NO. 16</u>**

> Executed copies of the RSA and Plan Restructuring Documents, including all signature pages, without redaction of names or debt holdings, and any side letters and/or other Documents reflecting the bond or debt holdings of the signatories at the time of signing the RSA.

**<u>RESPONSE TO DOCUMENT REQUEST NO. 16</u>**

The Ad Hoc Committee objects to this Request to the extent that it is cumulative of the Informal Document Requests.

In connection with the Informal Document Requests, per an e-mail dated May 21, 2014 from David Dempsey, as counsel for the Debtors, to Warren Usatine, as counsel for CSC Trust, copying other interested parties, including advisors to the Ad Hoc Committee, the Debtors agreed to produce Documents responsive to this Request on behalf of all the parties served with the Informal Document Requests. The Ad Hoc Committee does not plan to produce additional documents in response to this Request.

**DOCUMENT REQUEST NO. 17**

> All communications between, among or within the Ad Hoc Committee, its members, its Representatives or any Representative of any member of the Ad Hoc Committee, on the one hand, and any of the EFIH Debtors, EFH Equity Owners, the EFIH Unsecured Noteholders, the Consenting Fidelity EFIH First Lien Noteholders, the Consenting Non-Fidelity EFIH First Lien Noteholders, the EFIH Second Lien Noteholders (or committees or groups of such holders), Fidelity, PIMCO or the respective Representatives of any of the foregoing, on the other hand, regarding the RSA.

**RESPONSE TO DOCUMENT REQUEST NO. 17**

The Ad Hoc Committee objects to this Request on the grounds that it is overly broad, unduly burdensome, and not reasonably calculated to discover responsive Documents because it is not sufficiently limited in time. The Ad Hoc Committee also objects to this Request to the extent that it seeks Documents that are subject to the attorney-client privilege, work product doctrine, and/or common interest privilege.

The Ad Hoc Committee further objects to this Request because it is cumulative of the Informal Document Requests. Specifically, in response to the Informal Document Requests, the Ad Hoc Committee has already produced all non-privileged Documents responsive to this Request from January 28, 2014 through the Petition Date between or among the Ad Hoc Committee and/or its advisors, on the one hand, and the Debtors, Fidelity, the EFH Equity Owners, and/or PIMCO, and/or each of their advisors, on the other hand.

**DOCUMENT REQUEST NO. 18**

> All Documents referring to any disparity or difference in treatment under the RSA, First Lien DIP Financing, Second Lien DIP Facility, Plan or any Plan Restructuring Documents between the holders of the EFIH 6.875% Notes or EFIH 10% Notes, on the one hand, and any of the EFIH Unsecured Noteholders, the Consenting Fidelity EFIH First Lien Noteholders, the Consenting Non-Fidelity EFIH First Lien Noteholders, the EFIH Second Lien Noteholders, Fidelity, or PIMCO on the other hand.

**RESPONSE TO DOCUMENT REQUEST NO. 18**

The Ad Hoc Committee objects to this Request on the grounds that it is overly broad, unduly burdensome, and not reasonably calculated to discover responsive Documents because it is not sufficiently limited in time. The Ad Hoc Committee also objects to this Request to the extent that it seeks Documents that are subject to the attorney-client privilege, work product doctrine, and/or common interest privilege.

The Ad Hoc Committee further objects to this Request because it is cumulative of the Informal Document Requests. Specifically, in response to the Informal Document Requests, the Ad Hoc Committee has already produced all non-privileged Documents responsive to this Request from January 28, 2014 through the Petition Date between or among the Ad Hoc Committee and/or its advisors, on the one hand, and the Debtors, Fidelity, the EFH Equity Owners, and/or PIMCO, and/or each of their advisors, on the other hand.

**DOCUMENT REQUEST NO. 19**

> All Documents supporting or concerning the commitments for the EFIH First Lien DIP Financing and the EFIH Second Lien DIP Facility, including all drafts and all communications concerning the negotiation thereof.

**RESPONSE TO DOCUMENT REQUEST NO. 19**

The Ad Hoc Committee objects to this Request on the grounds that it is overly broad, unduly burdensome, and not reasonably calculated to discover responsive Documents because it is not sufficiently limited in time. The Ad Hoc Committee also objects to this Request to the

extent that it seeks Documents that are subject to the attorney-client privilege, work product doctrine, and/or common interest privilege.

The Ad Hoc Committee further objects to this Request because it is cumulative of the Informal Document Requests.  Specifically, in response to the Informal Document Requests, the Ad Hoc Committee has already produced all non-privileged Documents responsive to this Request from January 28, 2014 through the Petition Date between or among the Ad Hoc Committee and/or its advisors, on the one hand, and the Debtors, Fidelity, the EFH Equity Owners, and/or PIMCO, and/or each of their advisors, on the other hand.

**DOCUMENT REQUEST NO. 20**

> All Documents referring to any release, indemnification or exculpation to be obtained by the Ad Hoc Committee, any of its members, or the Representatives of any of the foregoing pursuant to any Plan or Plan Restructuring Documents.

**RESPONSE TO DOCUMENT REQUEST NO. 20**

The Ad Hoc Committee objects to this Request on the grounds that it is overly broad, unduly burdensome, and not reasonably calculated to discover responsive Documents because it is not sufficiently limited in time. The Ad Hoc Committee also objects to this Request to the extent that it seeks Documents that are subject to the attorney-client privilege, work product doctrine, and/or common interest privilege.

The Ad Hoc Committee further objects to this Request because it is cumulative of the Informal Document Requests.  Specifically, in response to the Informal Document Requests, the Ad Hoc Committee has already produced all non-privileged Documents responsive to this Request, if any, from January 28, 2014 through the Petition Date between or among the Ad Hoc Committee and/or its advisors, on the one hand, and the Debtors, Fidelity, the EFH Equity Owners, and/or PIMCO, and/or each of their advisors, on the other hand.

**DOCUMENT REQUEST NO. 21**

> All Documents referring or relating to the timing of (a) the commencement of the Bankruptcy Cases; (b) entry of any order of the Bankruptcy Court in the Bankruptcy Cases, including, but not limited to, any order regarding (i) the DIP Financing; (ii) the Applicable Premium under any of the EFIH 6.875% Indenture, the EFIH 10% Indenture or the EFIH Second Lien Indenture; (iii) the RSA; (iv) the EFIH First Lien Settlement; (v) the EFIH Second Lien Settlement; (vi) the EFIH First Lien Tender Offer; or (vii) the EFIH Second Lien Tender Offer; or (c) solicitation of approval of the EFIH First Lien Settlement or the EFIH Second Lien Settlement.

**RESPONSE TO DOCUMENT REQUEST NO. 21**

The Ad Hoc Committee objects to this Request on the grounds that it is overly broad, unduly burdensome, and not reasonably calculated to discover responsive Documents because it is not sufficiently limited in time. The Ad Hoc Committee also objects to this Request to the extent that it seeks Documents that are subject to the attorney-client privilege, work product doctrine, and/or common interest privilege.

The Ad Hoc Committee further objects to this Request because it is cumulative of the Informal Document Requests. Specifically, in response to the Informal Document Requests, the Ad Hoc Committee has already produced all non-privileged Documents responsive to this Request, if any, from January 28, 2014 through the Petition Date between or among the Ad Hoc Committee and/or its advisors, on the one hand, and the Debtors, Fidelity, the EFH Equity Owners, and/or PIMCO, and/or each of their advisors, on the other hand.

**DOCUMENT REQUEST NO. 22**

> All Documents referring to or purporting to restrict the authority of the EFIH Debtors to enter into settlement agreements with any holder of EFIH 6.875% Notes, EFIH 10% Notes or the indenture trustee under either the EFIH 6.875% Indenture or the EFIH 10% Indenture.

**RESPONSE TO DOCUMENT REQUEST NO. 22**

The Ad Hoc Committee objects to this Request on the grounds that it is overly broad, unduly burdensome, and not reasonably calculated to discover responsive Documents because it is not sufficiently limited in time. The Ad Hoc Committee also objects to this Request to the extent that it seeks Documents that are subject to the attorney-client privilege, work product doctrine, and/or common interest privilege.

The Ad Hoc Committee further objects to this Request because it is cumulative of the Informal Document Requests. Specifically, in response to the Informal Document Requests, the Ad Hoc Committee has already produced all non-privileged Documents responsive to this Request, if any, from January 28, 2014 through the Petition Date between or among the Ad Hoc Committee and/or its advisors, on the one hand, and the Debtors, Fidelity, the EFH Equity Owners, and/or PIMCO, and/or each of their advisors, on the other hand.

**DOCUMENT REQUEST NO. 23**

All Documents referring to any tranche of debt in the capital structure of EFH or the EFIH Debtors as the "fulcrum" security or utilizing any similar term.

**RESPONSE TO DOCUMENT REQUEST NO. 23**

The Ad Hoc Committee objects to this Request because it seeks information that is neither relevant to the Makewhole Adversary Proceeding or the Contested Matters nor likely to lead to the discovery of admissible evidence in connection with Makewhole Adversary Proceeding or the Contested Matters. The Ad Hoc Committee further objects to this Request because it is vague and ambiguous with respect to use of the term “fulcrum” or “any similar term.” The Ad Hoc Committee further objects to this Request on the grounds that it is overly broad, unduly burdensome, and not reasonably calculated to discover responsive Documents because it is not sufficiently limited in time.

**DOCUMENT REQUEST NO. 24**

> All Documents referring to any fee to be paid to the Ad Hoc Committee, any member thereof, or any Representative of any of the foregoing pursuant to the RSA, the EFIH Second Lien DIP Facility or any Plan or Plan Restructuring Documents.

**RESPONSE TO DOCUMENT REQUEST NO. 24**

The Ad Hoc Committee objects to this Request on the grounds that it is overly broad, unduly burdensome, and not reasonably calculated to discover responsive Documents because it is not sufficiently limited in time. The Ad Hoc Committee also objects to this Request to the extent that it seeks Documents that are subject to the attorney-client privilege, work product doctrine, and/or common interest privilege.

The Ad Hoc Committee further objects to this Request because it is cumulative of the Informal Document Requests. Specifically, in response to the Informal Document Requests, the Ad Hoc Committee has already produced all non-privileged Documents responsive to this Request, if any, from January 28, 2014 through the Petition Date between or among the Ad Hoc Committee and/or its advisors, on the one hand, and the Debtors, Fidelity, the EFH Equity Owners, and/or PIMCO, and/or each of their advisors, on the other hand.

**DOCUMENT REQUEST NO. 25**

> All Documents reflecting or referring to the calculation, estimation or determination of the amount of consideration to be received by the Ad Hoc Committee, its members, its Representatives or any member's Representative on account of any EFH Unsecured Notes, EFIH First Lien Notes, EFIH Second Lien Notes, EFIH Unsecured Notes, TCEH First Lien Notes or any other security, debt instrument or obligation of any of EFH, the EFIH Debtors or TCEH held by the Ad Hoc Committee or any of its members, pursuant to the RSA, the EFIH First Lien DIP Financing, the EFIH Second Lien DIP Facility, the Plan or any Plan Restructuring Documents.

**RESPONSE TO DOCUMENT REQUEST NO. 25**

The Ad Hoc Committee objects to this Request on the grounds that it is overly broad, unduly burdensome, and not reasonably calculated to discover responsive Documents because it is not sufficiently limited in time. The Ad Hoc Committee also objects to this Request to the extent that it seeks Documents that are subject to the attorney-client privilege, work product doctrine, and/or common interest privilege.

The Ad Hoc Committee further objects to this Request because it is cumulative of the Informal Document Requests. Specifically, in response to the Informal Document Requests, the Ad Hoc Committee has already produced all non-privileged Documents responsive to this Request, if any, from January 28, 2014 through the Petition Date between or among the Ad Hoc Committee and/or its advisors, on the one hand, and the Debtors, Fidelity, the EFH Equity Owners, and/or PIMCO, and/or each of their advisors, on the other hand.

**DOCUMENT REQUEST NO. 26**

> All Documents referring to any differences between the EFIH 6.875% Indenture or the EFIH 10% Indenture, on the one hand, and the EFIH Second Lien Indenture or EFIH Senior Toggle Indenture, on the other hand, regarding any Applicable Premium, makewhole or similar obligation.

**RESPONSE TO DOCUMENT REQUEST NO. 26**

The Ad Hoc Committee objects to this Request on the grounds that it is overly broad, unduly burdensome, and not reasonably calculated to discover responsive Documents because it is not sufficiently limited in time. The Ad Hoc Committee also objects to this Request to the extent that it seeks Documents that are subject to the attorney-client privilege, work product doctrine, and/or common interest privilege.

The Ad Hoc Committee further objects to this Request because it is cumulative of the Informal Document Requests. Specifically, in response to the Informal Document Requests, the

Ad Hoc Committee has already produced all non-privileged Documents responsive to this Request, if any, from January 28, 2014 through the Petition Date between or among the Ad Hoc Committee and/or its advisors, on the one hand, and the Debtors, Fidelity, the EFH Equity Owners, and/or PIMCO, and/or each of their advisors, on the other hand.

**DOCUMENT REQUEST NO. 27**

> All non-privileged legal memoranda or presentations prepared by any Representative of any party referring to the payment of the Applicable Premium, makewhole or similar obligation under the EFIH 6.875% Indenture, the EFIH 10% Indenture, the EFIH Second Lien Indenture, or the EFIH Senior Toggle Indenture.

**RESPONSE TO DOCUMENT REQUEST NO. 27**

The Ad Hoc Committee objects to this Request to the extent that it seeks Documents subject to the attorney-client privilege, work product doctrine, and/or common interest privilege.

The Ad Hoc Committee further objects to this Request because it is cumulative of the Informal Document Requests. Specifically, in response to the Informal Document Requests, the Ad Hoc Committee has already produced all non-privileged Documents responsive to this Request, if any, from January 28, 2014 through the Petition Date between or among the Ad Hoc Committee and/or its advisors, on the one hand, and the Debtors, Fidelity, the EFH Equity Owners, and/or PIMCO, and/or each of their advisors, on the other hand. Counsel for the Ad Hoc Committee will make themselves available to meet and confer to the extent that counsel for CSC Trust can identify any specific deficiencies in prior productions in connection with this Request.

**DOCUMENT REQUEST NO. 28**

> All Documents concerning or otherwise reflecting any names of parties who will receive any portion of the Execution Fee, Approval Fee, Arranger Fee Funding Cash Fee, Postpetition DIP Commitment Fees, Total Second Lien DIP Commitment Fees, Participation Fee, Closing Fee, Alternate Transaction Fee and Arrangement Payment referred to in the EFIH Second Lien DIP Motion.

**RESPONSE TO DOCUMENT REQUEST NO. 28**

The Ad Hoc Committee objects to this Request on the grounds that it is overly broad, unduly burdensome, and not reasonably calculated to discover responsive Documents because it is not sufficiently limited in time. The Ad Hoc Committee also objects to this Request to the extent that it seeks Documents that are subject to the attorney-client privilege, work product doctrine, and/or common interest privilege.

The Ad Hoc Committee further objects to this Request because it is cumulative of the Informal Document Requests.  Specifically, in response to the Informal Document Requests, the Ad Hoc Committee has already produced all non-privileged Documents responsive to this Request, if any, from January 28, 2014 through the Petition Date between or among the Ad Hoc Committee and/or its advisors, on the one hand, and the Debtors, Fidelity, the EFH Equity Owners, and/or PIMCO, and/or each of their advisors, on the other hand.  Counsel for the Ad Hoc Committee will make themselves available to meet and confer to the extent that counsel for CSC Trust can identify any specific deficiencies in prior productions in connection with this Request.

**DOCUMENT REQUEST NO. 29**

> All Documents concerning or otherwise reflecting any names of parties who are the Selected Parties and the Transferee Commitment Party as that term is defined in the EFIH First Lien Settlement Motion.

**RESPONSE TO DOCUMENT REQUEST NO. 29**

The Ad Hoc Committee objects to this Request on the grounds that it is overly broad, unduly burdensome, and not reasonably calculated to discover responsive Documents because it is not sufficiently limited in time. The Ad Hoc Committee also objects to this Request to the extent that it seeks Documents that are subject to the attorney-client privilege, work product doctrine, and/or common interest privilege.

The Ad Hoc Committee further objects to this Request because it is cumulative of the Informal Document Requests. Specifically, in response to the Informal Document Requests, the Ad Hoc Committee has already produced all non-privileged Documents responsive to this Request, if any, from January 28, 2014 through the Petition Date between or among the Ad Hoc Committee and/or its advisors, on the one hand, and the Debtors, Fidelity, the EFH Equity Owners, and/or PIMCO, and/or each of their advisors, on the other hand. Counsel for the Ad Hoc Committee will make themselves available to meet and confer to the extent that counsel for CSC Trust can identify any specific deficiencies in prior productions in connection with this Request.

**DOCUMENT REQUEST NO. 30**

> All Documents concerning or otherwise reflecting any names of parties who are the Selected Partners, Postfunding Partners and Specified Consultants as that term is defined or used in the RSA or exhibits thereto.

**RESPONSE TO DOCUMENT REQUEST NO. 30**

The Ad Hoc Committee objects to this Request on the grounds that it is overly broad, unduly burdensome, and not reasonably calculated to discover responsive Documents because it is not sufficiently limited in time. The Ad Hoc Committee also objects to this Request to the extent that it seeks Documents that are subject to the attorney-client privilege, work product doctrine, and/or common interest privilege.

The Ad Hoc Committee further objects to this Request because it is cumulative of the Informal Document Requests. Specifically, in response to the Informal Document Requests, the Ad Hoc Committee has already produced all non-privileged Documents responsive to this Request, if any, from January 28, 2014 through the Petition Date between or among the Ad Hoc Committee and/or its advisors, on the one hand, and the Debtors, Fidelity, the EFH Equity Owners, and/or PIMCO, and/or each of their advisors, on the other hand. Counsel for the Ad

Hoc Committee will make themselves available to meet and confer to the extent that counsel for CSC Trust can identify any specific deficiencies in prior productions in connection with this Request.

**DOCUMENT REQUEST NO. 31**

> All Documents referring to any discussions or other communications concerning post-confirmation employment or engagement, whether or not such employment or engagement was ultimately agreed, by any of the Reorganized Debtors with any present or former directors, officers or management of the Debtors.

**RESPONSE TO DOCUMENT REQUEST NO. 31**

The Ad Hoc Committee objects to this Request because it seeks information that is neither relevant to the Makewhole Adversary Proceeding or the Contested Matters nor likely to lead to the discovery of admissible evidence in connection with Makewhole Adversary Proceeding or the Contested Matters.

Dated: June 2, 2014
New York, NY

**AKIN GUMP STRAUSS HAUER & FELD LLP**

By: *   /s/ Robert J. Boller*

Ira S. Dizengoff
Stephen M. Baldini
Abid Qureshi
Robert J. Boller
Meredith A. Lahaie
One Bryant Park
New York, New York 10036
Telephone: (212) 872-1000
Facsimile: (212) 872-1002
Email: idizengoff@akingump.com
sbaldini@akingump.com
aqureshi@akingump.com
rboller@akingump.com

**AKIN GUMP STRAUSS HAUER & FELD LLP**
Scott L. Alberino
1333 New Hampshire Avenue
Washington, DC 20036-1564
Telephone: (202) 887-4000
Facsimile: (202) 887-4288
Email: salberino@akingump.com

*Counsel for the Ad Hoc Committee of EFIH Unsecured Noteholders*

**EXHIBIT E**



Case 14-10979-CSS Doc 1058-5 Filed 06/23/14 Page 2 of 4

COLE, SCHOTZ, MEISEL, FORMAN & LEONARD P.A.

Court Plaza North
25 Main Street
P.O. Box 800
Hackensack, NJ 07602-0800
201-489-3000 201-489-1536 fax

New York

Delaware

Maryland

Texas

Warren A. Usatine
Member

Reply to New Jersey Office
Writer's Direct Line: 201-525-6233
Writer's Direct Fax: 201-678-6233
Writer's E-Mail: wusatine@coleschotz.com

June 17, 2014

**Via email: rboller@akingump.com**

Robert J. Boller, Esq.
Akin, Gump Strauss Hauer & Feld LLP
One Bryant Park
New York, New York 10036-6745

Re: In re Energy Future Holdings Corp. et al.
Case No. 14-10979

Dear Mr. Boller:

I write to inform you of the deficiencies in the production of documents by the ad hoc committee of holders of 11.25%/12.25% unsecured senior toggle notes due December 1, 2018 issued pursuant to that certain Indenture, dated December 5, 2012, by and among Energy Future Intermediate Holding Company LLC and EFIH Finance Inc., as issuers, and UMB Bank, N.A., as successor trustee (the "Ad Hoc Noteholders' Committee") in response to CSC Trust Company of Delaware's First Set of Document Requests (the "Document Requests"). In that regard, reference is made to the Ad Hoc Committee of EFIH Unsecured Noteholders' Responses and Objections to CSC Trust Company of Delaware's First Set of Document Requests (the "Responses and Objections") and your letters dated May 15, 2014, May 20, 2014 and May 22, 2014.

On the face of its Responses and Objections, the Ad Hoc Noteholders' Committee has wholesale refused to produce documents in response to several document requests. By way of brief summary, those include requests for, among other things, documents concerning[1]: (i) Oncor strategic business plans and financial projections; (ii) references to a "fulcrum" security in the Debtors' capital structure; (iii) matters relating to the RSA; (iv) matters relating to the valuation of EFIH; (v) matters relating to tax allocation agreements; and (vi) any potential or actual post-confirmation employment of any present or former directors, officers or management of the Debtors.

[1] All capitalized terms used but not defined herein shall have the meaning ascribed to them in the Document Requests.

There are massive gaps in the types of documents produced. The Ad Hoc Noteholders' Committee has excluded internal communication within any one of its members or amongst any two or more of its members. There are no Bloomberg chat messages or other such electronic communications. There is no legitimate basis upon which the Ad Hoc Noteholders' Committee has limited custodian searches to external domain names, has refused to produce internal communications or has entirely excluded significant modes of communication.

We also note certain apparent categorical exclusions of documents, such as underwriting memorandum for the investment positions taken by the members of the Ad Hoc Committee.

There also is no legitimate basis upon which the Ad Hoc Noteholders' Committee has objected to Instruction 14 in the Document Request or imposed limitations on the time periods for which a search was conducted or production made. Significant discussions were had regarding EFIH dating back to at least April 2013, and in many such periods there is no possible claim of joint interest.

Moreover, to the extent an appropriate privilege is asserted for the withholding of documents, the Ad Hoc Noteholders' Committee must provide a privilege log that complies with Fed. R. Civ. P. 26(b)(5) by a date that gives CSC sufficient time to examine and take any appropriate action with respect thereto. Additionally, please provide immediately all legal authority for the blanket withholding of documents on the basis of a "common interest privilege" with the Debtors, with which position CSC disagrees.

Given the compressed schedule under which we are operating, and the commencement of depositions today with respect to some of the matters that are the subject of the Document Requests (and the expectation that depositions for the remaining topics would commence in early July), we require prompt receipt of the Ad Hoc Noteholders' Committee's responses to the foregoing deficiencies and the scheduling of a meet-and-confer by no later than June 18, 2014. In the event the Ad Hoc Noteholders' Committee does not comply, please be advised that CSC intends to pursue relief as to all or any portion of the matters raised herein with the Bankruptcy Court.

Cole, Schotz, Meisel, Forman & Leonard, P.A.
Attorneys at law

Robert J. Boller, Esq.
June 17, 2014
Page 3

All rights are expressly reserved.

Very truly yours,

*/s Warren A. Usatine*

Warren A. Usatine

WAU:cdc

52881/0001-10705431v3

Case 14-10979-CSS Doc 1058-6 Filed 06/23/14 Page 1 of 8

**EXHIBIT F**



Case 14-10979-CSS Doc 1058-6 Filed 06/23/14 Page 2 of 8

**ROBERT J. BOLLER**
+1 212.872.8170/fax: +1 212.872.1002
rboller@akingump.com

June 20, 2014

VIA E-MAIL (wusatine@coleschotz.com)

Warren A. Usatine
Cole, Schotz, Meisel, Forman & Leonard P.A.
Court Plaza North
25 Main Street
P.O. Box 800
Hackensack, NJ 07602-0800

Re: In re Energy Future Holdings Corp. et al.
Case No. 14-10979

Warren:

We represent the ad hoc committee of holders of 11.25%/12.25% unsecured senior toggle notes due December 1, 2018 issued pursuant to that certain indenture, dated December 5, 2012, by and among Energy Future Intermediate Holding Company LLC ("EFIH") and EFIH Finance, Inc., as issuers, and UMB Bank N.A., as successor trustee (the "Ad Hoc Committee of EFIH Unsecured Noteholders").[1] I write (1) in response to your letter dated June 17, 2014 (the "Letter"), (2) as a follow-up to our meet and confer call held on June 18, 2014, (3) in initial response to the deposition subpoenas that your firm served on the same day, and (4) to propose a possible way forward.

## I. Background

Before addressing the substance of the allegations in your Letter, I must first take issue with your delay in contacting us regarding the supposed deficiencies in the Ad Hoc Committee of EFIH Unsecured Noteholders' production. For more than a month, the EFIH First Lien Trustee has been fully aware of the scope of our document production and the search parameters that we applied, including the date ranges, custodians and domain name limiters. Yet, the first time your client raised any purported deficiencies was in your letter Tuesday afternoon, in which you demanded an immediate conference and resolution.

---

[1] All capitalized terms used but not defined herein shall have the meaning ascribed to them in the Ad Hoc Committee of EFIH Unsecured Noteholders' Responses and Objections to CSC Trust Company of Delaware's First Set of Document Requests, dated June 2, 2014 (the "Responses and Objections").



On May 8, 2014, the EFIH First Lien Trustee first sent informal document requests to the Ad Hoc Committee of EFIH Unsecured Noteholders (the "Informal Requests"), requesting that we produce seven categories of documents within a week. We disagreed (and continue to disagree) that any of the Informal Requests were relevant to, or reasonably calculated to lead to the discovery of admissible evidence in connection with, any Contested Matter. However, in order to avoid an unnecessary discovery dispute, we agreed (without waiving any of our rights) to produce a narrowly-tailored set of documents related to the negotiation of the RSA and the transactions contemplated therein.

On May 12, 2014, we participated with you in a meet and confer call where we discussed the scope and parameters of our planned productions. On May 15, 2014, we began a rolling production of documents in response to the Initial Requests. As you are aware, the cover letter to that production once again detailed the parameters of our document production, including the custodians, the date ranges, and the domain name restrictions. Specifically, we accepted the custodians you requested and included four additional custodians from the members of the Ad Hoc Committee of EFIH Unsecured Noteholders. We tailored our domain name restrictions and applicable date range to isolate documents related to the negotiations of the RSA.[2] We did not apply any search term restrictions, but rather, we produced broadly all non-privileged documents relevant to the EFH negotiations, including negotiations surrounding the RSA and the Second Lien DIP.

On May 22, 2014, we completed our production in response to your Informal Requests. In sum, we produced 3,666 documents totaling almost 20,000 pages. At no time prior to June 17, 2014, did you raise any issues with our search parameters or the scope of our production.

Moreover, on May 21, 2014, on the eve of completing our expeditious production in response to the Informal Requests, you served the Ad Hoc Committee of EFIH Unsecured Noteholders with a formal document subpoena (the "Subpoena"). Although the EFIH First Lien Trustee now seems to contend otherwise, the Subpoena clearly indicated that it was issued in connection with the EFIH First Lien Makewhole Adversary Proceeding (Adv. Dkt. No. 14-50363). (*See* Subpoena caption, 1.) In the Subpoena, the EFIH First Lien Trustee requested categories of documents that were previously produced in connection with the Informal Requests, as well as numerous additional broad categories of documents. On June 2, 2014, the Ad Hoc Committee of EFIH Unsecured Noteholders served its Responses and Objections to the

[2] On May 20, 2014, we made a second production and disclosed that we updated our search parameters to include two additional domain names.



Case 14-10979-CSS Doc 1058-6 Filed 06/23/14 Page 4 of 8

Subpoena, objecting to the additional requests on the grounds that they did not seek documents relevant to, or reasonably calculated to lead to the discovery of admissible evidence in connection with, any Contested Matter or the EFIH First Lien Makewhole Adversary Proceeding. As discussed in more detail below, although your Letter notes that the Ad Hoc Committee of EFIH Unsecured Noteholders has not produced certain categories of documents, the EFIH First Lien Trustee still has failed to address any of our relevancy objections.

## II. There Are No Deficiencies in the Ad Hoc Committee of EFIH Unsecured Noteholders' Production

There are no deficiencies in the Ad Hoc Committee of EFIH Unsecured Noteholders' document production. Each alleged deficiency identified in the Letter concerns a request for documents that was neither relevant to, nor reasonably likely to lead to the discovery of admissible evidence in connection with, any Contested Matter or the EFIH First Lien Makewhole Adversary Proceeding. We respond to each purported deficiency as follows:

### A. Categories of Documents Not Produced

The Letter alleges that the Ad Hoc Committee of EFIH Unsecured Noteholders refused to produce several categories of documents: "(i) Oncor strategic business plans and financial projections; (ii) references to a 'fulcrum' security in the Debtors' capital structure; (iii) matters relating to the RSA; (iv) matters relating to the valuation of EFIH; (v) matters relating to tax allocation agreements; and (vi) any potential or actual post-confirmation employment of any present or former directors, officers or management of the Debtors." (Letter at 1.)

First, your assertion is incorrect. We produced our negotiations of the RSA and the transactions contemplated therein, including the proposed amendment of the Oncor tax allocation agreement. Thus we have produced documents concerning matters relating to (i) the RSA and (ii) tax allocation agreements.

Second, documents related to the other four categories and any additional requests related to the valuation of EFIH or the tax allocation agreements are neither relevant to, nor reasonably likely to lead to the discovery of admissible evidence in connection with, any Contested Matter or the EFIH First Lien Makewhole Adversary Proceeding. As Judge Sontchi held during the Second Day Hearings on June 6, 2014, valuation discovery is not relevant at this time, and discovery from creditors is not probative to the issue of whether the Debtors reasonably exercised their business judgment in entering into the RSA. *See* June 6 Hr'g Tr. at 65:22-66:15,



67:11-68:15, 69:2-7. You still have not provided a convincing explanation of why these categories documents are relevant to any matter in which you are entitled to discovery, which merely confirms that the requests amount to nothing more than a fishing expedition, based on the mere hope that something useful might turn up.

Third, you also allege that we made "apparent categorical exclusions of documents, such as underwriting memorandum for the investment positions taken by the members of the Ad Hoc Committee." (Letter at 2.) It is unclear what this category of documents relates to or how it could possibly be relevant to any Contested Matter or EFIH First Lien Makewhole Adversary Proceeding.

**B. Our Search Parameters Were Appropriate**

Your Letter objected to the search parameters employed in the Ad Hoc Committee of EFIH Unsecured Noteholders' production. As discussed above, although we disclosed our search parameters to you both during the May 12 meet and confer and in our May 15 letter, this is the first time you raised any issue with our searches. Moreover, the search parameters we applied (and which you did not challenge) are entirely appropriate.

First, you appear to be mistaken—notwithstanding the fact that such documents are not relevant (for reasons discussed below), we did search for and produce communications between the members of the Ad Hoc Committee of EFIH Unsecured Noteholders in an effort to be constructive. We did not produce completely internal communications, *i.e.*, communications solely among employees of an individual member of the Ad Hoc Committee of EFIH Unsecured Noteholders. Those documents are neither relevant to, nor reasonably likely to lead to the discovery of admissible evidence in connection with, any Contested Matter or the Makewhole Adversary Proceeding.

The issues before the Court on the Contested Matters will relate to the Debtors' decision to enter into the Second Lien DIP, Second Lien Settlement, and RSA. Internal communications among the members of the Ad Hoc Committee of EFIH Unsecured Noteholders, who are neither employees nor agents of the Debtors, are not relevant on these points. Nor are their internal analyses of the transactions.

Judge Sontchi ruled on a nearly identical discovery issue at the Second Day hearing on June 6. There, the TCEH unsecured creditors sought discovery from the TCEH First Lien creditors in connection with the Debtors' motion to assume the RSA. The TCEH First Lien



creditors objected on the grounds that any discovery from them would be irrelevant, as the only relevant question for the Court was whether the Debtors reasonably exercised their business judgment in entering into the transaction. See June 6 Hr'g Tr. at 41:14-42:10. Judge Sontchi agreed and ruled that the requested discovery was improper because the question before the Court would be limited to the Debtors' decision-making. Id. at 65:22-66:15, 69:2-7.

This same reasoning applies to communications internal to the members of our group. To the extent that any documents from the Ad Hoc Committee of EFIH Unsecured Noteholders are relevant, it is only our negotiations with third parties concerning the RSA and the transactions contemplated therein. Accordingly, we used domain name restrictions to isolate such communications and produced them. Indeed, our production was comprehensive because we broadly interpreted your request for RSA negotiations and did not apply any restrictive search terms.

Second, the only even arguably relevant discovery here is related to the negotiation of the transactions at issue. Those negotiations took place over email, not Bloomberg messages or some other electronic medium. Accordingly, your demand to have the Ad Hoc Committee of EFIH Unsecured Noteholders retrieve and examine their Bloomberg messages is unduly burdensome.

Third, our date range of January 28, 2014 through April 29, 2014 was appropriate. The negotiations over the transaction that became the RSA did not begin until late January 2014 and ended with execution of the RSA on April 29, 2014. Any communications predating that range are irrelevant. You state baldly in the Letter that "significant discussions were had regarding EFIH dating back to April 2013", but do not identify any member of the Ad Hoc Committee of EFIH Unsecured Noteholders that you believe had such communications at that time. Without identifying a party, this is once again a classic fishing expedition.

**C. Privilege Log**

We agreed to produce several categories of documents to you on an informal and expedited basis in connection with the Informal Requests. We did not agree to provide a privilege log, and do not intend to re-review that production to create a log now.

We also have no other relevant documents to produce in response to the Subpoena in the adversary proceeding, and therefore do not intend to provide a privilege log in connection therewith. We can identify, however, the categories of documents we have withheld. They are



(1) communications between the advisors to the Ad Hoc Committee of EFIH Unsecured Noteholders and the Committee members, containing legal advice, (2) communications among the members of the Ad Hoc Committee of EFIH Unsecured Noteholders discussing or conveying that legal advice, and (3) common interest communications with the Debtors and their counsel related to the enforceability of the makewhole provisions.

**D. Common Interest Privilege Assertions**

Finally, the Ad Hoc Committee of EFIH Unsecured Noteholders did not make a "blanket withholding of documents" on the basis of our common interest with the Debtors. (Letter at 2.) Rather, as we stated in our May 20, 2014 letter to you, we asserted a narrow pre-petition common interest with the Debtors regarding our respective legal analyses of the supposed claims of holders of the EFIH First Lien Notes and EFIH Second Lien Notes to a makewhole premium. As should be evident by our intervention as a defendant in the EFIH First Lien Makewhole Adversary Proceeding, our legal interests concerning the applicability of the makewhole are aligned—and have been aligned—with those of the Debtors. You have failed to explain why you do not believe we share a common interest with the Debtors concerning this narrow subject.

**III. The Deposition Subpoenas Are Burdensome and Harassing**

On June 18, shortly after our meet and confer call, you emailed 13 subpoenas demanding to take the depositions of each member of our Committee and various employees thereof. These deposition subpoenas, which were issued solely in connection with the Adversary Proceeding, are beyond burdensome and veer into the territory of harassment. At its core, the Adversary Proceeding involves a straight-forward contract question: whether the First Lien Indentures require payment of a makewhole premium in connection with the repayment of the EFIH First Lien Notes. This is a purely legal issue that can be decided on the legal memoranda and for which discovery is unnecessary. But even assuming, *arguendo*, that some limited discovery would be useful, that discovery is not of our clients.

All of the foregoing is obvious, of course, and your demand to depose more than a dozen Committee members and their employees is a transparent attempt to harass and annoy the members of a constituency whose interests are at odds with your clients' interests. We intend to seek appropriate relief from the Court.



Case 14-10979-CSS Doc 1058-6 Filed 06/23/14 Page 8 of 8

**IV. A Potential Compromise**

As a means to avoid a dispute over all of the foregoing, I would like to suggest a compromise: stipulated facts. Rather than incurring the burden and expense of a fight over additional discovery which we believe in the end will be irrelevant, we are willing to consider a stipulation as to certain facts—not conclusions resulting from those facts—that the EFIH First Lien Trustee believes it must establish. This may be a more direct way for your client to develop a record it thinks is appropriate while relieving the Committee of the burden of performing additional document searches and preparing for dozens of depositions.

I am available to discuss any or all of the above. Nothing in this letter should be construed as a waiver or any of the Ad Hoc Committee of EFIH Unsecured Noteholders' rights, all of which are expressly reserved.

Sincerely,

*/s/ Robert J. Boller*

Robert J. Boller

Cc: Michael Winograd, Esq.
James Millar, Esq.
Ira Dizengoff, Esq.
Scott Alberino, Esq.