# EXHIBIT B



# Akin Gump
### STRAUSS HAUER & FELD LLP

**ROBERT J. BOLLER**
+1 212.872.8170/fax: +1 212.872.1002
rboller@akingump.com

June 25, 2014

<u>**VIA HAND DELIVERY AND ECF**</u>

Hon. Christopher S. Sontchi
United States Bankruptcy Court
824 North Market Street, 5th Floor
Wilmington, Delaware 19801

     Re:     ***In re Energy Future Holdings Corp. et al.*, Case No. 14-10979 and**
              ***CSC Trust Co. of Delaware v. Energy Future Intermediate Holding Co. LLC*,**
              **Adv. Proc. No. 14-50363-CSS**

Dear Judge Sontchi:

     We represent the ad hoc committee of holders of 11.25%/12.25% unsecured senior toggle notes due December 1, 2018, issued pursuant to that certain indenture, dated December 5, 2012, by and among Energy Future Intermediate Holding Company LLC ("EFIH") and EFIH Finance, Inc., as issuers, and UMB Bank N.A., as successor trustee (the "<u>Ad Hoc Committee of EFIH Unsecured Noteholders</u>").  We write in response to the letter (the "<u>Discovery Letter</u>") from counsel to the CSC Trust Company of Delaware, as successor indenture trustee (the "<u>First Lien Trustee</u>") for the 10% Senior Secured Notes Due 2020 issued by EFIH and EFIH Finance Inc., dated June 23, 2014 (Docket No. 1058), requesting a telephonic conference with the Court concerning the disputes raised in its Discovery Letter.

     The First Lien Trustee is seeking to compel production from the Ad Hoc Committee of EFIH Unsecured Noteholders of:  (i) internal communications or documents from within the specific firms that are members of the Ad Hoc Committee of EFIH Unsecured Noteholders; (ii) Bloomberg instant messages or other undefined forms of electronic communication; and (iii) an expanded search for documents dating back to January 1, 2013.  The First Lien Trustee also alleges that the Ad Hoc Committee of EFIH Unsecured Noteholders has asserted a broad common interest privilege as the basis for withholding documents and demands production of a privilege log.  Finally, and for the first time, the First Lien Trustee takes issue with the fact that



**Akin Gump**
STRAUSS HAUER & FELD LLP

Hon. Christopher S. Sontchi
Akin Gump Strauss Hauer & Feld
June 25, 2014
Page 2

we did not produce documents in response to Document Requests 9, 23, 31.[1]  *See* Discovery Letter at 2-3.

   In an effort to paint the Ad Hoc Committee of EFIH Unsecured Noteholders as intransigent or uncooperative, the First Lien Trustee—which has no economic interest at stake in the issues before the Court at the June 30 hearing—makes numerous misstatements, and omits material facts in describing the discovery dispute.[2]  Contrary to what the allegations set forth in the Discovery Letter:

   • The RSA Assumption Motion is not scheduled to be heard at the June 30 hearing. *See* Discovery Letter at 1, fn. 1.  Only the Second Lien DIP[3] and Second Lien Settlement[4] will go forward at that time.[5]

   • The Ad Hoc Committee of EFIH Unsecured Noteholders did not wait until June 2, 2014 to notify the First Lien Trustee of its position regarding the requested discovery.  *See* Discovery Letter at 2-3.

---

 [1] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Ad Hoc Committee of EFIH Unsecured Noteholders' Responses and Objections to CSC Trust Company of Delaware's First Set of Document Requests, dated June 2, 2014 (the "Responses and Objections"), attached as Exh. D to the Discovery Letter.

 [2] It is, however, worth noting that counsel to the First Lien Trustee also serves as counsel in these cases to the Ad Hoc Group of EFIH First Lien Noteholders whose interests are opposed to those of the Ad Hoc Committee of EFIH Unsecured Noteholders and which submitted a competing bid to provide the Second Lien DIP financing.

 [3] "Second Lien DIP" refers to EFIH Second Lien DIP Facility described in the *Motion of Energy Future Intermediate Holding Company LLC and EFIH Finance Inc. for Entry of an Order (A) Approving Postpetition Second Lien Financing, (B) Granting Liens and Providing Superpriority Administrative Expense Claims, (C) Authorizing the Use of Cash Collateral, (D) Authorizing the EFIH Second Lien Repayment; (E) Authorizing Entry Into and Payment of Fees Under the Commitment Letter, and (F) Modifying the Automatic Stay* [Docket No. 477] (the "EFIH Second Lien DIP Motion").

 [4] "Second Lien Settlement" refers to the second lien settlement with (a) the Second Lien RSA Parties and (b) all other holders of EFIH Second Lien Notes that elect to participate in the Second Lien Settlement and become Settling EFIH Second Lien Note Holders through the Second Lien Opt-In, as described in the *Motion of Energy Future Holdings Corp., et al., for Entry of Orders Approving Certain EFIH Settlements and the Oncor TSA Amendment Filed by Energy Future Holdings Corp.* at Docket No. 472.

 [5] See Re-Notice of *"Motion of Energy Future Holdings Corp., et al., for Entry of an Order Authorizing the RSA Debtors to Assume the Restructuring Support Agreement and Modifying the Automatic Stay"* [D.I. 505] and *Hearing Thereon* [Docket No. 986]



**Akin Gump**

STRAUSS HAUER & FELD LLP

Hon. Christopher S. Sontchi
Akin Gump Strauss Hauer & Feld
June 25, 2014
Page 3

- More than six weeks ago, on May 12, 2014, we disclosed the precise scope and parameters of our document search to the First Lien Trustee.  We then re-affirmed the scope of that production in letters dated May 15 and May 20, 2014, which are attached respectively hereto as **Exhibit 1** and **Exhibit 2**.  Accordingly, the EFIH First Lien Trustee was aware of our position well before the Ad Hoc Committee of EFIH Unsecured Noteholders served its formal Responses and Objections on June 2, 2014.  *See* Discovery Letter at 2-3.  Yet, the First Lien Trustee waited until now to raise these issues.

- The May 19, 2014, email on which the First Lien Trustee purports to rely involved a dispute **between the First Lien Trustee and the Debtors** which has subsequently been resolved.  *See* Discovery Letter at 2; Exh. C to the Discovery Letter at 1.  It was not addressed to, and did not purport to apply to, the Ad Hoc Committee of EFIH Unsecured Noteholders, as the EFIH First Lien Trustee suggests.

- The Ad Hoc Committee of EFIH Unsecured Noteholders provided the First Lien Trustee with ample authority supporting its refusal to produce the purely internal deliberations and analysis of its members (*i.e.,* communications within or among the employees of an individual institution which is a Committee member).  *See* Discovery Letter at 3.  Namely, we directed the First Lien Trustee to this Court's June 6, 2014 ruling with respect to a nearly identical dispute among TCEH creditors.  *See* Exh. F to the Discovery Letter at 4-5.

- The EFIH First Lien Trustee's Document Requests clearly indicate they were issued in connection with the EFIH First Lien Makewhole Adversary Proceeding, not any Contested Matter.  *See* Discovery Letter at fn. 2; Exh. B to the Discovery Letter at 1.

- The Ad Hoc Committee of EFIH Unsecured Noteholders has not asserted a broad common interest with the Debtors, nor has it asserted a common interest with the Debtors over the negotiation of the terms of the Second Lien DIP.  *See* Discovery Letter at 4-5.  Rather, as we have repeatedly explained to the First Lien Trustee—both verbally and in writing—the Ad Hoc Committee of EFIH Unsecured Noteholders has a common interest with the Debtors concerning the supposed entitlement of holders of the EFIH First Lien Notes and EFIH Second Lien Notes to a makewhole premium.  *See* **Exhibit 2** at 2; Exh. F to the Discovery Letter at 6.  Documents withheld based on the common interest privilege solely relate to analysis of the makewhole premium, and not the Second Lien DIP.



Hon. Christopher S. Sontchi
Akin Gump Strauss Hauer & Feld
June 25, 2014
Page 4

- In the June 20 Letter, the Ad Hoc Committee of EFIH Unsecured Noteholders offered to explore whether a stipulation of facts by the parties could resolve the instant discovery dispute. *See* Exh. F to the Discovery Letter at 7. The First Lien Trustee failed to respond to this proposal.

For the reasons discussed below, the Court should deny the First Lien Trustee's attempt to compel production of additional discovery from the Ad Hoc Committee of EFIH Unsecured Noteholders. In essence, the requests in the Discovery Letter are untimely and wholly irrelevant to any of the Contested Matters.

## I. Background of Discovery and Meet & Confer Conferences

On May 8, 2014, the First Lien Trustee first sent informal document requests to the Ad Hoc Committee of EFIH Unsecured Noteholders (the "Informal Requests"), requesting the production of seven categories of documents within a week. *See* Exh. A to the Discovery Letter. The Ad Hoc Committee of EFIH Unsecured Noteholders believed (and still believes) that none of the Informal Requests are relevant, or reasonably calculated to lead to the discovery of admissible evidence in connection with, any Contested Matter.

Notwithstanding the lack of relevance, the Ad Hoc Committee of EFIH Unsecured Noteholders agreed to produce certain documents in order to avoid an unnecessary discovery dispute. Accordingly, on May 12, 2014, counsel to the Ad Hoc Committee of EFIH Unsecured Noteholders participated in a meet and confer call with counsel to the First Lien Trustee to discuss the Informal Requests and the Ad Hoc Committee of EFIH Unsecured Noteholders' proposed response. During that meet and confer, counsel to the Ad Hoc Committee of EFIH Unsecured Noteholders described in detail the scope and parameters of the planned production. Specifically, the Ad Hoc Committee of EFIH Unsecured Noteholders agreed to produce emails from Committee members, their attorneys, and their financial advisors, regarding the negotiations that led to the RSA[6] and Second Lien DIP.

On May 15, 2014, exactly one week after receiving the Informal Requests, the Ad Hoc Committee of EFIH Unsecured Noteholders began a rolling production of documents. The cover letter to that production once again detailed the parameters of our document production, including the custodians, the date ranges, and the domain name restrictions. *See* **Exhibit 1**. As

---

[6] "RSA" refers to the Restructuring Support and Lock-Up Agreement, dated as of April 29, 2014, attached hereto as Exhibit 1 to Exhibit A of the RSA Assumption Motion at Docket No. 505.



STRAUSS HAUER & FELD LLP

Hon. Christopher S. Sontchi
Akin Gump Strauss Hauer & Feld
June 25, 2014
Page 5

explained in the May 15 letter, the Ad Hoc Committee of EFIH Unsecured Noteholders searched the emails of the custodians requested by the First Lien Trustee—four attorneys and advisors retained by the Ad Hoc Committee of EFIH Unsecured Noteholders—and included four additional custodians from the members of the Ad Hoc Committee of EFIH Unsecured Noteholders. Additionally, we targeted our domain name restrictions and applicable date range to isolate documents related to the negotiations of the RSA.[7] We did not apply any search term restrictions, but rather, we broadly produced all non-privileged emails related to the EFH negotiations between and among the parties to the RSA and members of the Ad Hoc Committee of EFIH Unsecured Noteholders, including among other things, negotiations surrounding the RSA, the Second Lien DIP, and the Second Lien Settlement. Accordingly, the First Lien Trustee's claim that the Ad Hoc Committee of EFIH Unsecured Noteholders waited until June 2, 2014 to articulate its position on discovery is demonstrably false.

On May 19, 2014, counsel to the First Lien Trustee sent an email raising an issue with **the Debtors'** production, and we understand the issue has since been resolved by the First Lien Trustee and the Debtors. *See* Exh. C to the Discovery Letter ("We are particularly frustrated by **the Debtors' counsel's** refusal…"). The May 19 email raised no issue with the production from the Ad Hoc Committee of EFIH Unsecured Noteholders, and gave no indication that the First Lien Trustee was in any way dissatisfied with the scope or parameters thereof, including with respect to our position that only the negotiations among the parties were relevant. Instead, the First Lien Trustee merely insisted that the Debtors expand their production beyond advisors, which the Ad Hoc Committee of EFIH Unsecured Noteholders had already done. *See id.*

On May 22, 2014, the Ad Hoc Committee of EFIH Unsecured Noteholders completed its production in response to the Informal Requests. In total, the Ad Hoc Committee of EFIH Unsecured Noteholders produced 3,666 documents totaling almost 20,000 pages. At no time between our initial production on May 15, 2014, which reiterated the specific search parameters discussed in the prior meet and confer, and June 17, 2014, did the First Lien Trustee raise any issues with the Ad Hoc Committee of Unsecured Noteholders' plan for searching and producing documents in response to the Informal Requests.

Nevertheless, on May 21, 2014, just prior to completing our expeditious production in response to the Informal Requests, the First Lien Trustee served the Ad Hoc Committee of EFIH Unsecured Noteholders with a formal document subpoena (the "Subpoena"). Although the First

---

[7] On May 20, 2014, we made a second production and disclosed that we updated our search parameters to include two additional domain names. *See* **Exhibit 2**.



Lien Trustee now seems to contend otherwise, the caption of the Subpoena clearly indicates that it was issued in connection with the EFIH First Lien Makewhole Adversary Proceeding. *See* Exh. B to the Discovery Letter at 1. In the Subpoena, the First Lien Trustee requested categories of documents that were previously produced in connection with the Informal Requests, as well as numerous additional broad categories of documents.

On June 2, 2014, the Ad Hoc Committee of EFIH Unsecured Noteholders served its Responses and Objections to the Subpoena, objecting to the additional requests on the grounds that they did not seek documents relevant to, or reasonably calculated to lead to the discovery of admissible evidence in connection with, any Contested Matter or the EFIH First Lien Makewhole Adversary Proceeding. Notwithstanding the relevance objections, the Responses and Objections made clear that because of the breadth of its production in response to the Informal Requests, which included all non-privileged communications between and among the RSA parties related to EFH, the Ad Hoc Committee of EFIH Unsecured Noteholders had previously produced documents responsive to the vast majority of the Requests.

On June 17, 2014, approximately five weeks after the initial production of documents by the Ad Hoc Committee of EFIH Unsecured Noteholders, the First Lien Trustee sent a letter (the "June 17 Letter") to the Ad Hoc Committee of EFIH Unsecured Noteholders, complaining for the first time that there were deficiencies in its production. *See* Exh. E to the Discovery Letter. The next day, on June 18, 2014, counsel for the Ad Hoc Committee of EFIH Unsecured Noteholders and the First Lien Trustee participated in a meet and confer during which the Ad Hoc Committee of EFIH Unsecured Noteholders made clear that the additional discovery requested in the June 17 Letter, including purely internal analysis and communications among the Ad Hoc Committee of EFIH Unsecured Noteholders' individual member institutions, is neither relevant nor reasonably calculated to the lead to the discovery of admissible evidence in connection with the Contested Matters. On June 20, 2014, the Ad Hoc Committee of EFIH Unsecured Noteholders formally responded to the June 17 Letter, and reiterated the positions it set forth during the June 18 meet and confer. *See* Exh. F to the Discovery Letter.

## II.     The Additional Discovery Sought By The EFIH First Lien Trustee Is Not Relevant To Any Contested Matter

In its Discovery Letter, the First Lien Trustee contends that the Ad Hoc Committee of EFIH Unsecured Noteholders must produce three additional categories of documents: (1) purely internal emails and analysis; (2) Bloomberg messages; and (3) documents pre-dating January 28, 2014. None of these categories are relevant to, or reasonably calculated to lead to the discovery



Hon. Christopher S. Sontchi
Akin Gump Strauss Hauer & Feld
June 25, 2014
Page 7

of admissible evidence in connection with, any Contested Matter.  In addition, the First Lien Trustee belatedly takes issue with the fact that we did not produce documents in response to Document Requests 9, 23, 31 to the Subpoena.

First, internal communications among the employees of individual members of the Committee are not relevant.  As the Court is well aware, the matters scheduled to be heard at the June 30 hearing relate to the Debtors' decision to enter into the Second Lien DIP and the Second Lien Settlement.[8]  The Debtors bear the burden of demonstrating that their actions are consistent with the exercise of their business judgment.  *See* June 6 Hr'g Tr. at 41:14-42:10, 65:22-66:15, 69:2-7.  Purely internal communications among the employees of individual members of the Ad Hoc Committee of EFIH Unsecured Noteholders, who are neither employees nor agents of the Debtors, are irrelevant here.  Additionally, purely internal analyses of the underlying transactions, which were not shared with the Debtors or other RSA parties, are also of no import to matters being heard on June 30.

The EFIH First Lien Trustee's sole justification for its demand is based on pure speculation: "[I]t is **possible** that those emails [the thousands of documents produced by the Ad Hoc Committee of EFIH Unsecured Noteholders evidencing the arms-length negotiations leading up to the RSA] were carefully choreographed to avoid containing certain information that … is discoverable."  Discovery Letter at 4 (emphasis added).  Based on this preposterous hypothetical, the EFIH First Lien Trustee demands all of the internal emails sent by the members of the Ad Hoc Committee of EFIH Unsecured Noteholders.  This is the very definition of an improper fishing expedition, and should not be countenanced.

This Court ruled on a substantially similar discovery issue at the "Second Day" hearing on June 6, 2014, where the TCEH unsecured creditors sought discovery from the TCEH First Lien creditors in connection with the Debtors' motion to assume the RSA.  The TCEH First Lien creditors objected on the grounds that any discovery from them would be irrelevant, as the only relevant question before the Court in connection with the RSA Assumption Motion will be whether the Debtors reasonably exercised their business judgment in entering into the transaction.  *See* June 6 Hr'g Tr. at 41:14-42:10.  The Court concurred with the TCEH Frist Lien creditors and ruled that the requested discovery was improper because the Court's inquiry was limited to the propriety of the Debtors' decision-making.  *Id.* at 65:22-66:15, 69:2-7.

---

[8] On July 18, the Court will examine the issues related to assumption of the RSA.



Case 14-10979-CSS   Doc 1572   Filed 07/15/14   Page 8 of 23

Hon. Christopher S. Sontchi
Akin Gump Strauss Hauer & Feld
June 25, 2014
Page 8

This same reasoning applies to purely internal communications within each member of the Ad Hoc Committee.  Under Federal Rule of Civil Procedure 26(b), courts in the Third Circuit will deny a discovery request where the requesting party cannot show that the information it seeks is either relevant or reasonably calculated to lead to the discovery of admissible evidence. *See Westchester Fire Ins. Co. v. Household Int'l, Inc.*, CIV.A.02-1328 JJF, 2005 WL 23351, at *2 (D. Del. Jan. 5, 2005) *aff'd*, 167 F. App'x 895 (3d Cir. 2006) ("Notwithstanding the liberal discovery standard in the Third Circuit . . . I conclude that Defendants have not demonstrated that discovery . . . is relevant to their fraud claim…or that such discovery is reasonably calculated to lead to the discovery of admissible evidence. Thus, I will deny Defendant's Motion To Compel Discovery . . . ."); *Konstantopoulos v. Westvaco Corp.*, No. 90-146-CMW, 1991 WL 269606, at *2 (D. Del. Dec. 13, 1991); *Zhang v. ING Direct*, No. 07-555-JJF, 2009 WL 351006, at *3 (D. Del. Feb. 10, 2009).  Here, adjudication of the Contested Matters concern will focus on the Debtors' decision to enter into the Second Lien DIP and the Second Lien Settlement.  Any purely internal communications by members of the Ad Hoc Committee of EFIH Unsecured Noteholders will, therefore, have no impact on the inquiry into the Debtors' judgment in entering into these transactions.  Accordingly, discovery into the Ad Hoc Committee of EFIH Unsecured Noteholders' internal communications is not relevant and should not be compelled.

To the extent that *any* documents from the Ad Hoc Committee of EFIH Unsecured Noteholders are relevant, these would only include the negotiations concerning the RSA and the transactions contemplated therein.  Accordingly, the Ad Hoc Committee of EFIH Unsecured Noteholders' use of domain name restrictions to isolate such communications was an appropriate method to respond to the Informal Requests.

Second, the demand to perform searches of Bloomberg messages or other electronic medium is overly burdensome and not likely to lead to the discovery of admissible evidence.  Only documents relating to the negotiation of the transactions at issue are even *arguably* relevant.  As evidenced by the Ad Hoc Committee of EFIH Unsecured Noteholders' extensive email production, those negotiations took place via email.  Returning now, mere days before the June 30 hearing, to begin a new search through a different medium is untimely and seems aimed at harassing the members of the Ad Hoc Committee of EFIH Unsecured Noteholders rather than at discovering relevant, admissible evidence.

Third, the First Lien Trustee's request that we search for responsive documents dating back to January 1, 2013 is overly broad and unreasonable.  As was made clear to the First Lien



Hon. Christopher S. Sontchi
Akin Gump Strauss Hauer & Feld
June 25, 2014
Page 9

Trustee during the May 12, 2014 meet and confer, the negotiations over the transaction that became the RSA did not begin until late January 2014 and ended with execution of the RSA on April 29, 2014.  Moreover, the negotiations over the terms of the Second Lien DIP did not begin until after January 28, 2014.  Accordingly, it was appropriate for the Ad Hoc Committee of EFIH Unsecured Noteholders to review and produce documents from the January 28, 2014 to April 29, 2014 date range.  Any communications predating that time, which by definition do not relate to the Second Lien DIP and Second Lien Settlement before the Court, are simply irrelevant.

Lastly, in its Discovery Letter, the First Lien Trustee now disputes the Ad Hoc Committee of EFIH Unsecured Noteholders' objections on relevance grounds to Document Requests 9 (related to Oncor business plans and financial projections), 23 (related to use of the term "fulcrum" security), and 31 (related to post-confirmation employment agreements with any present or former Directors and Officers) in the Subpoena.  *See* Discovery Letter at fn. 2; Exh. B to the Discovery Letter at 1.  However, the First Lien Trustee still has not responded—and cannot—to the relevancy objection or explained how communications related to Oncor's business plans, using the term "fulcrum" security, or discussing the future employment of the Debtors' officers, are relevant to the Second Lien DIP or Second Lien Settlement.  *See* Exh. D to the Discovery Letter.  Document Requests 9, 23, and 31 are simply not relevant and thus not an appropriate subject of discovery.  Moreover, to the extent that any of these topics were discussed with the RSA parties during the relevant time frame, they would have been produced.

**III.    The Ad Hoc Committee of EFIH Unsecured Noteholders Asserted a Narrow and Well-Defined Common Interest Privilege with the Debtors and Fully Disclosed Such to the First Lien Trustee**

The Ad Hoc Committee of EFIH Unsecured Noteholders has withheld from its production communications with the Debtors and their advisors—and no other parties—on the basis of a common interest privilege.  The common interest being asserted is narrow:  opposition to the purported claims of holders of the EFIH First Lien Notes and EFIH Second Lien Notes seeking payment of a makewhole premium.  The interests of the Ad Hoc Committee of EFIH Unsecured Noteholders and the Debtors are clearly aligned on this point, as both groups will benefit from a ruling in the EFIH First Lien Makewhole Adversary Proceeding disallowing the supposed entitlement to holders of First and Second Lien Notes to payment of a makewhole.  The documents withheld are those discussing the legal analysis of the enforceability of the makewhole claims.



**Akin Gump**

STRAUSS HAUER & FELD LLP

Hon. Christopher S. Sontchi
Akin Gump Strauss Hauer & Feld
June 25, 2014
Page 10

The nature and scope of this common interest was articulated and clearly spelled out in both the production letter from May 20, 2014 and our June 20, 2014 letter in response to the Discovery Letter. *See* **Exhibit 2**; Exh. F to the Discovery Letter. Thus, there is no basis for the First Lien Trustee to argue in its Discovery Letter that the Ad Hoc Committee of EFIH Unsecured Noteholders has somehow "fail[ed] to articulate...the nature and scope of the documents to which the alleged "common interest privilege" attaches." *See* Discovery Letter at 4.

Additionally, and notwithstanding the First Lien Trustee's incorrect assertions, the Ad Hoc Committee of EFIH Unsecured Noteholders has not withheld communications pertaining to negotiations over the Second Lien DIP or the terms of the RSA. Moreover, the First Lien Trustee inaccurately suggests that because the Ad Hoc Committee of EFIH Unsecured Noteholders and the Debtors engaged in arms-length negotiations over the terms of the RSA, they could not have had a common interest on this specific issue until the RSA was consummated. *See* Discovery Letter at 5. This is a complete misstatement of the law in the Third Circuit, which holds that the parties' interests need not be entirely congruent for the application of the common interest doctrine. *See In re Teleglobe Commc'ns Corp.*, 493 F.3d 345, 365 (3d Cir. 2007). In fact, the privilege may apply even where "'the parties' interests are adverse in substantial respects.'" *In re Leslie Controls, Inc.*, 437 B.R. 493, 497 (Bankr. D. Del. 2010) (citing *In re Mortgage & Realty Trust*, 212 B.R. 649, 653 (Bankr.C.D.Cal.1997)).

Further, the First Lien Trustee contends that the Ad Hoc Committee of EFIH Unsecured Noteholders must produce a privilege log to account for the documents withheld on the basis of common interest. The Ad Hoc Committee of EFIH Unsecured Noteholders disputes that requirement because we agreed to produce several categories of documents to the First Lien Trustee on an informal and expedited basis in connection with the Informal Requests. The Ad Hoc Committee of EFIH Unsecured Noteholders did not agree to provide a privilege log, and requiring the Ad Hoc Committee of EFIH Unsecured Noteholders to re-review our production for the purposes of creating a privilege log would be incredibly burdensome.

**IV.    The Thirteen Deposition Subpoenas Noticed by the First Lien Trustee on the EFIH First Lien Makewhole Adversary Proceeding Demonstrate The Pattern of Harassment by the First Lien Trustee Against the Ad Hoc Committee of EFIH Unsecured Noteholders**

While the First Lien Trustee has asserted that the present discovery fight centers on the Contested Matters before this Court and *not* on the EFIH First Lien Makewhole Adversary



Proceeding, the fact that the First Lien Trustee recently issued <u>thirteen</u> separate deposition subpoenas to the Ad Hoc Committee of EFIH Unsecured Noteholders further illustrates the broader pattern of harassment by the First Lien Trustee. *See* Discovery Letter at fn. 2.

On June 18, 2014, shortly after the meet and confer call between the First Lien Trustee and the Ad Hoc Committee of EFIH Unsecured Noteholders, the First Lien Trustee emailed thirteen subpoenas demanding to take the depositions of each member of the Ad Hoc Committee of EFIH Unsecured Noteholders and various employees thereof. These deposition subpoenas, which were issued solely in connection with the EFIH First Lien Makewhole Adversary Proceeding, were clearly designed to be burdensome and harass a party whose interests are not aligned with those of the First Lien Trustee. At bottom, the EFIH First Lien Makewhole Adversary Proceeding concerns a straight-forward contract question: whether the first lien indentures require payment of a makewhole premium in connection with the repayment of the EFIH First Lien Notes. This is a discrete legal question that can be decided solely on the underlying transactional documents and for which discovery is unnecessary. However, even if one assumes that discovery and depositions would be necessary, thirteen depositions of individuals who are neither employees nor agents of the Debtors is beyond the scope of reasonable discovery. Such a broad demand is patently unnecessary.

We thank the Court for its consideration of this matter and request that the First Lien Trustee's motion to compel be denied. Counsel for the Ad Hoc Committee of EFIH Unsecured Noteholders will be available should the Court schedule a telephonic conference in connection with the First Lien Trustee's Discovery Letter.

Respectfully submitted,

*/s/ Robert J. Boller*

Robert J. Boller



Hon. Christopher S. Sontchi
Akin Gump Strauss Hauer & Feld
June 25, 2014
Page 12

Enclosures

cc:    Warren Usatine, Esq. (via electronic mail)
       Michael Winograd, Esq. (via electronic mail)
       James Millar, Esq. (via electronic mail)
       Nicholas Brannick, Esq.  (via electronic mail)
       Scott Cousins, Esq. (via electronic mail)
       See attached service list (via electronic mail)

**EXHIBIT 1**



**ROBERT J. BOLLER**
+1 212.872.8170/fax: +1 212.872.1002
rboller@akingump.com

May 15, 2014

**BY ELECTRONIC MAIL**

John A. Morris
Pachulski Stang Ziehl & Jones
780 Third Avenue - 36th Floor
New York, NY 10017-2024
jmorris@pszjlaw.com

Gregory A. Horowitz
Kramer Levin Naftalis & Frankel LLP
1177 Avenue of the Americas
New York, NY 10036
ghorowitz@kramerlevin.com

Warren A. Usatine
Cole Schotz
Court Plaza North
25 Main Street, P.O. Box 800
Hackensack, NJ 07602-0800
wusatine@coleshotz.com

> Re: *In re Energy Future Holdings Corp., et al.*, Case No. 14-10979 (CSS) –
> **Ad Hoc Committee of EFIH Unsecured Noteholders' and EFIH Second Lien
> DIP Commitment Parties' Response to Informal Requests for Production of
> Documents**

Dear Counsel:

    We represent the ad hoc committee of holders of 11.25%/12.25% unsecured senior toggle notes due December 1, 2018 issued pursuant to that certain Indenture, dated December 5, 2012, by and among Energy Future Intermediate Holding Company LLC and EFIH Finance Inc., as issuers, and UMB Bank, N.A., as successor trustee (the "Ad Hoc Committee of EFIH Unsecured Noteholders") and the parties to that certain second lien Commitment Letter, dated April 28, 2014, with Energy Future Holdings Corp. and Energy Future Intermediate Holdings Company, LLC (the "EFIH Second Lien DIP Commitment Parties") in connection with the above-referenced bankruptcy proceeding.  We write in response to the informal requests for production of documents served by certain EFIH Second Lien Noteholders, dated May 5, 2014, and CSC Trust Company of Delaware as Indenture Trustee to the EFIH first lien notes, dated May 8, 2014 (collectively, the "Informal Requests").

    We agree to produce documents in response to the Informal Requests pursuant to the meet and confer discussions that the parties have had to date.  Due to the informal nature of the



**Akin Gump**
STRAUSS HAUER & FELD LLP

May 15, 2014
Page 2

requests, and in the interest of efficiency, we do not intend to prepare formal responses and objections. As such, we reserve all rights and remedies in connection with this and any subsequent production of documents. Nothing contained in this response or production should be deemed a waiver of any kind or an admission as to the reasonableness or appropriateness of the Informal Requests.

Per our conversations, we performed a reasonable and diligent search to collect and review documents pursuant to the parameters outlined during the meet and confer discussions. We collected documents from a total of eight custodians from four different entities: Akin Gump (Ira Dizengoff, Scott Alberino); Centerview Partners (Sam Greene, Jeffrey Finger); Avenue Capital Group (Matt Kimble; Steve Burnazian), and GSO Capital Partners (Jason New, Patrick Fleury). As discussed, we applied email domain name restrictions to capture communications between and among the aforementioned and the following entities: Kirkland & Ellis (kirkland.com), Energy Future Holdings (energyfutureholdings.com), Evercore Partners (evercore.com), Fried Frank (friedfrank.com), Perella Weinberg Partners (pwpartners.com), Fidelity (fmr.com), Wachtell Lipton (wlrk.com), Blackstone (blackstone.com), TPG Capital L.P. (tpg.com), and York Capital Management LLC (yorkcapital.com). We reviewed documents from the period between January 28, 2014 and April 29, 2014. We did not apply search terms prior to review.

In light of and subject to the foregoing, we hereby produce documents bates stamped ADHOC_EFIH-DIP0000001 - ADHOC_EFIH-DIP0012151. You will receive an email containing information on how to download the production via an FTP website. The password is: 3577531599.

The production of documents made herein is subject to the agreement among the parties referenced in David Dempsey's email of Monday, May 12, 2014, pursuant to which, in the absence of a signed Confidentiality Agreement and Stipulated Protective Order, the parties will treat discovery materials according to the terms of that proposed order until such time as a final order is entered.

We expect to continue to produce documents on a rolling basis. Please contact us with any questions.

Sincerely,

*/s/ Robert J. Boller*
Robert J. Boller



May 15, 2014
Page 3

cc:   Richard M. Cieri
      David R. Dempsey
      Jeffrey S. Sabin
      Patrick Strawbridge
      Richard G. Mason
      Emil A. Kleinhaus
      Gary L. Kaplan
      Samuel P. Groner
      Ira S. Dizengoff
      Scott L. Alberino
      Stephen M. Baldini

**EXHIBIT 2**



**ROBERT J. BOLLER**
+1 212.872.8170/fax: +1 212.872.1002
rboller@akingump.com

May 20, 2014

<u>**BY ELECTRONIC MAIL**</u>

John A. Morris
Pachulski Stang Ziehl & Jones
780 Third Avenue - 36th Floor
New York, NY 10017-2024
<u>jmorris@pszjlaw.com</u>

Gregory A. Horowitz
Kramer Levin Naftalis & Frankel LLP
1177 Avenue of the Americas
New York, NY 10036
<u>ghorowitz@kramerlevin.com</u>

Warren A. Usatine
Cole Schotz
Court Plaza North
25 Main Street, P.O. Box 800
Hackensack, NJ 07602-0800
<u>wusatine@coleshotz.com</u>

Re:    *In re Energy Future Holdings Corp., et al.*, Case No. 14-10979 (CSS) –
        **Ad Hoc Committee of EFIH Unsecured Noteholders' and EFIH Second Lien**
        **DIP Commitment Parties' Response to Informal Requests for Production of**
        **Documents**

Dear Counsel:

      As you know, we represent the ad hoc committee of holders of 11.25%/12.25%
unsecured senior toggle notes due December 1, 2018 issued pursuant to that certain Indenture,
dated December 5, 2012, by and among Energy Future Intermediate Holding Company LLC and
EFIH Finance Inc., as issuers, and UMB Bank, N.A., as successor trustee (the "<u>Ad Hoc
Committee of EFIH Unsecured Noteholders</u>") and the parties to that certain second lien
Commitment Letter, dated April 28, 2014, with Energy Future Holdings Corp. and Energy
Future Intermediate Holdings Company, LLC (the "<u>EFIH Second Lien DIP Commitment
Parties</u>") in connection with the above-referenced bankruptcy proceeding.  We write in further
response to the informal requests for production of documents served by certain EFIH Second
Lien Noteholders, dated May 5, 2014, and CSC Trust Company of Delaware as Indenture
Trustee to the EFIH first lien notes, dated May 8, 2014 (collectively, the "<u>Informal Requests</u>").
Our previous correspondence, dated May 15, 2014 (the "<u>May 15 Production Cover Letter</u>"), is
incorporated herein by reference.



In addition to the search parameters described in the May 15 Production Cover Letter, we also conducted a similar search applying email domain name restrictions to capture communications with PIMCO (pimco.com) and/or its outside counsel, Bingham McCutchen (bingham.com).

We are not producing certain communications between the members of the Ad Hoc Committee of EFIH Unsecured Noteholders / EFIH Second Lien DIP Commitment Parties and their advisors based on attorney-client privilege and the work product doctrine. We are also not producing correspondence between the Debtors, on the one hand, and the Ad Hoc Committee of EFIH Unsecured Noteholders / EFIH Second Lien DIP Commitment Parties, on the other hand, concerning the EFIH First and Second Lienholders' supposed claims to a makewhole premium. On that issue, our clients share a common interest with the Debtors.

In light of and subject to the foregoing, including the parameters set forth in the May 15 Production Cover Letter, we hereby produce documents bates stamped ADHOC_EFIH-DIP0012152 - ADHOC_EFIH-DIP0017666. You will receive an email containing information on how to download the production via an FTP website. The password is: 3577531599.

The production of documents made herein is subject to the agreement among the parties referenced in David Dempsey's email of Monday, May 12, 2014, pursuant to which, in the absence of a signed Confidentiality Agreement and Stipulated Protective Order, the parties will treat discovery materials according to the terms of that proposed order until such time as a final order is entered.

We expect to continue to produce documents on a rolling basis. Please contact us with any questions.

Sincerely,

/s/ Robert J. Boller
Robert J. Boller

cc:   Richard M. Cieri
      David R. Dempsey
      Jeffrey S. Sabin
      Patrick Strawbridge
      Richard G. Mason
      Emil A. Kleinhaus
      Gary L. Kaplan
      Samuel P. Groner



May 20, 2014
Page 3

 Ira S. Dizengoff
 Scott L. Alberino
 Stephen M. Baldini

VIA EMAIL
Nicholas J. Brannick
Norman Pernick
J. Kate Stickles
Cole, Schotz, Meisel, Forman & Leonard
500 Delaware Avenue, suite 1410
Wilmington, DE 19801
nbrannick@coleschotz.com
npernick@coleschotz.com
kstickles@coleschotz.com

VIA EMAIL
Michael Joseph Joyce
Cross & Simon, LLC
913 North Market Street
11th Floor
Wilmington, DE 19801
mjoyce@crosslaw.com

VIA EMAIL
Laura Davis Jones
Robert J. Feinstein
Pachulski Stang Ziehl & Jones LLP
919 N. Market Street, 17th Floor
Wilmington, DE 19801
ljones@pszjlaw.com
rfeinstein@pszjlaw.com

VIA EMAIL
Karen C. Bifferato
Connolly Gallagher
1000 West Street
Wilmington, DE  19801
kbifferato@connollygallagher.com

VIA EMAIL
Garvan F. McDaniel
The Hogan Firm
1311 Delaware Avenue
Wilmington, DE 19806
gfmcdaniel@dkhogan.com

VIA EMAIL
Richard Cieri, Edward Sassower
Stephen Hessler, Brian E. Schartz
Kirkland & Ellis LLP
601 Lexington Ave.
New York, NY 10022
Richard.cieri@kirkland.com
Edward.sassower@kirkland.com
brianschartz@kirkland.com
Stephen.hessler@kirkland.com

VIA EMAIL
Brad Eric Scheler
Gary Kaplan
Matthew Roose
Frank Fried
One New York Plaza
New York, New York 10004
brad.eric.scheler@friedfrank.com
gary.kaplan@friedfrank.com
matthew.roose@friedfrank.com

VIA EMAIL
Mark D. Collins
Daniel J. Defranceschi
Jason M. Madron
Richards, Layton & Finger
One Rodney Square, P.O. Box 551
Wilmington, DE 19899
Collins@rlf.com
Defranceschi@rlf.com
Madron@rlf.com

VIA EMAIL
James Sprayregen
Chad Husnick
Steven Serajeddini
Kirkland & Ellis LLP
300 N. LaSalle
Chicago, IL 60654
james.sprayregen@kirkland.com
chad.husnick@kirkland.com
Steven.serajeddini@kirkland.com

VIA EMAIL
Raymond H. Lemisch
Klehr Harrison Harvey Branzburg LLP
1835 Market Street, Suite 1400
Philadelphia, PA  19103
rlemisch@klehr.com

VIA EMAIL
Harold L. Kaplan
Mark F. Hebbeln
Lars A. Peterson
Foley & Lardner LLP
321 North Clark Street, Suite 2800
Chicago, IL  60654-5313
hkaplan@foley.com
mhebbeln@foley.com
lapeterson@foley.com

VIA EMAIL
Warren A. Usatine
Cole, Schotz, Meisel, Forman & Leonard
25 Main Street
P.O. Box 800
Hackensack, NJ 07602
wusatine@coleschotz.com

VIA EMAIL
Thomas Moers Mayer
Gregory A. Horowitz
Joshua K. Brody
Kramer Levin Naftalis & Frankel LLP
1177 Avenue of the Americas
New York, NY 10036
tmayer@kramerlevin.com
ghorowitz@kramerlevin.com
jbrody@kramerlevin.com

VIA EMAIL
Julie Frost-Davies
Christopher L. Carter
Bingham McCutchen LLP
One Federal Street
Boston, MA 02110
julia.frost-davies@bingham.com
christopher.carter@bingham.com

VIA EMAIL
Erika Morabito
Brittany J. Nelson
Foley & Lardner LLP
Washington Harbour
3000 K Street, N.W., Suite 600
Washington, D.C.  20007-5109
emorabito@foley.com
bnelson@foley.com

VIA EMAIL
Jeffrey S. Sabin
Bingham McCutchen LLP
399 Park Avenue
New York, NY 10022
jeffrey.sabin@bingham.com

VIA EMAIL
David S. Rosner, Esq.
Andrew K. Glenn, Esq.
Daniel A. Fliman, Esq.
Kasowitz, Benson, Torres & Friedman LLP
1633 Broadway
New York, New York 10019
DRosner@kasowitz.com
AGlenn@kasowitz.com
DFliman@kasowitz.com

VIA EMAIL
Stephanie Wickouski
BRYAN CAVE LLP
1290 Avenue of the Americas
New York, New York 10104-3300
stephanie.wickouski@bryancave.com