# EXHIBIT C

**Loveland, Benjamin**

| | |
|---|---|
| **Subject:** | FW: EFIH |

**From:** Boller, Robert <rboller@akingump.com>
**Sent:** Friday, July 11, 2014 3:02 AM
**To:** Anker, Phil
**Cc:** wusatine@coleschotz.com; Baldini, Stephen
**Subject:** FW: EFIH

Phil,

I've reviewed your email and we have discussed internally. I won't respond point-by-point, because (as you concede) this is essentially a reiteration of the requests we discussed and briefed at length a few weeks ago. It doesn't appear from your email or from our call that the First Lien Trustee has narrowed its requests in any way, and in fact, you seem to contemplate expanding them. Our position likewise remains unchanged; as we explained in our letters to your client and the Court on June 20 and June 25, respectively, none of the additional categories of documents that your client has once again requested is in any way relevant to the claims or defenses at issue in the First Lien Makewhole Adversary Proceeding, and we will not be making an additional production in response.

The First Lien Makewhole Adversary Proceeding involves a fairly straight-forward contract dispute. The individual members of our Ad Hoc Committee—who are not parties to the litigation—were not involved in negotiating the terms of the First Lien indenture that is at the center of the dispute. So it is unclear how their documents would aid the court in interpreting the terms of that agreement. Likewise, there is no support for the First Lien Trustee's assertion that the various categories of additional documents it requested are relevant to any claims or defenses.

With respect to the common interest privilege, as we have repeatedly told your client, including in our June 25 letter to the Court, the only prepetition common interest we assert with the Debtors is narrow and relates to our respective legal analyses and litigation strategy regarding the enforceability of the makewhole claims. (Despite your statement to the contrary, our common legal interest with the Debtors on this point is obvious.) We have not withheld on the basis of common interest privilege the pre-bankruptcy negotiations between the Ad Hoc Committee and the Debtors. As should be evident from the document production related to the RSA and Second Lien DIP, the Ad Hoc Committee and the Debtors have produced such materials.

Finally, and as we discussed the other day, your client has served 13 separate depositions subpoenas on the individual members of the Ad Hoc Committee and certain of their employees. For the reasons stated above and in our various letters to your client, our clients have no relevant testimony to provide in connection with the First Lien Makewhole Adversary Proceeding. Moreover, serving such broad deposition subpoenas on non-parties is burdensome to the point of harassment. We will not make the witnesses available voluntarily.

I assume, based on your email, that you intend to address these disputes to the Court in the form of letter briefs. I should be around for most of the day tomorrow if you would like to discuss scheduling.

Rob

**Robert J. Boller**
**AKIN GUMP STRAUSS HAUER & FELD** LLP

One Bryant Park | New York, NY 10036-6745 | USA | Direct: +1 212.872.8170 | Internal: 38170
Fax: +1 212.872.1002 | rboller@akingump.com | akingump.com | Bio

1

**From:** Anker, Phil [mailto:Philip.Anker@wilmerhale.com]
**Sent:** Wednesday, July 09, 2014 4:51 PM
**To:** Boller, Robert
**Cc:** wusatine@coleschotz.com
**Subject:** EFIH

Rob:

Following up on our call yesterday, I am writing to confirm our view of various issues that we understand remain outstanding with respect to the Ad Hoc Committee's responses to the First Set of Document Requests (the "Document Requests") served by our client, CSC Trust Company of Delaware, as successor indenture trustee (the "Trustee") for the holders of the 10% Senior Secured Notes Due 2020 (the "10% Noteholders").  To be clear, we maintain that the Trustee is entitled to all documents requested in the Document Requests, and the specific categories of documents identified in this email should not be construed as a limitation on the Document Requests or a waiver of the Trustee's rights to raise additional issues with respect to the Ad Hoc Committee's response to those Document Requests, which rights are expressly reserved.  In addition, our providing this list should not be construed as a waiver of the Trustee's rights to serve additional document requests as permitted by the Federal Rules, Bankruptcy Rules, and the discovery protocol, which rights are expressly reserved.

As discussed on our call, the outstanding issues are largely the same issues identified in Warren Usatine's June 23, 2014 letter brief to the Court regarding discovery disputes with the Ad Hoc Committee relating to the Second Lien DIP Financing and Second Lien Settlement.

We request that the Ad Hoc Committee produce documents falling into the four general categories below, which we understand the Ad Hoc Committee has thus far been unwilling to produce.

1. **Internal Communications and Documents**:  In addition to seeking documents evidencing communications between any member of the Ad Hoc Committee and any other member or other party in interest, the Trustee is seeking internal communications and documents from within the specific firms that are members of the Ad Hoc Committee that fall within the scope of the Document Requests, including without limitation pre-bankruptcy and post-bankruptcy documents and communications regarding the 10% Noteholders' claim for a makewhole (and any strategy/discussions involving any member of the Ad Hoc Committee regarding the makewhole and any purported strategy for denying its payment), documents and communications about the consideration the members expect to receive as a result of the Debtors' restructuring, documents and communications relating to the valuation of the Debtors, and all documents and communications about any possible transaction involving Oncor, including without limitation any possible sale of Oncor (or any interest therein, including any equity interest therein) following confirmation of a Chapter 11 plan for EFIH.  For the avoidance of doubt, as defined in the Document Requests, the term "document" is used in the broadest sense contemplated by the Bankruptcy Rules and Federal Rules of Civil Procedure.  As discussed on the call, these documents are unquestionably relevant to the makewhole litigation because, among other things, they bear on issues of the 10% Noteholders' entitlement to payment of the makewhole, the Debtors' intent in refinancing the notes in the manner they did, and on issues of solvency and the oversecured status of the 10% Noteholders.

2. **Bloomberg and Other Electronic Messaging**: The Trustee is seeking any Bloomberg instant messages and other similar electronic modes of communication that fall within the scope of the Document Requests.  With respect to third parties, the medium of communication is irrelevant (email vs. instant messaging), and the Ad Hoc Committee should have no objection to producing these types of electronic messages.  Because, as

described above, internal member communications are also relevant to the makewhole litigation, the members' internal electronic messages on topics that fall within the scope of the Document Requests are relevant as well.

3. **Pre-2014 Documents**: The Trustee is seeking documents from January 1, 2013 forward that fall within the scope of the Document Requests. The Ad Hoc Committee appears to have taken the position that only documents from January 28, 2014 are relevant. However, the Debtors' public filings demonstrate that restructuring efforts began at least as early as April 1, 2013. As described above, many aspects of the Debtors' restructuring efforts are relevant to the makewhole litigation. Accordingly, the Ad Hoc Committee has no principled reason for limiting the date of its responses to the Document Requests to a start date of January 28, 2014.

4. **Communications with Debtors and Their Advisors**: We understand that the Ad Hoc Committee has thus far withheld certain documents based on the assertion that they are subject to a common interest privilege between the Ad Hoc Committee and the Debtors.

As an initial matter, the common interest doctrine is an extension of the attorney-client privilege and work product doctrine, "thus, the doctrine is only applicable if an underlying privilege has been established." *In re Leslie Controls, Inc.*, 437 B.R. 493, 496 (Bankr. D. Del. 2010). Communications among businesspersons, and even communications between business persons and attorneys that do not involve legal advice, are not protected by the attorney-client privilege or the common interest doctrine. Accordingly, even if the Ad Hoc Committee were entitled to claim the protection of the common interest doctrine with respect to certain matters, a privilege log is required to determine whether the documents for which the Ad Hoc Committee claims protection are in fact privileged in the first instance such that the common interest doctrine would apply. To the extent the Ad Hoc Committee continues to withhold documents on the basis of an asserted privilege, the Ad Hoc Committee must provide the Trustee with a privilege log.

Moreover, the Ad Hoc Committee cannot establish that it shares a *legal* interest with the Debtors regarding the 10% Noteholders' entitlement to the makewhole that would bring those communications within the scope of the common interest doctrine. Therefore, the Trustee does not believe that the Ad Hoc Committee shares a common interest with the Debtors in respect of matters relevant to the makewhole litigation.

However, to be clear, the Trustee is not looking for communications directly between counsel to the Ad Hoc Committee and counsel to the Debtors since the filing of the Debtors' chapter 11 cases regarding their litigation strategy in the makewhole litigation. Instead, the Trustee is requesting pre-bankruptcy communications relating to the negotiations between the Ad Hoc Committee (and its members) and their representatives and the Debtors and their representatives (as well as post-bankruptcy communications not involving counsel and seeking or providing legal advice). We request that you produce these documents.

In addition to the categories described above, we request that the Ad Hoc Committee produce the categories of documents described below, which the Ad Hoc Committee has thus far refused to produce on the basis that the Trustee has not articulated their relevance to the makewhole litigation. Each of the categories of documents below bears on the Debtors' and the Ad Hoc Committee's intent to avoid having the Debtors pay the makewhole, as well as the Debtors' ability to pay the makewhole and potential solvency. Accordingly, each of the following categories of documents is

relevant to the makewhole litigation (the Document Request references following each category are not intended to be exhaustive):

1. Matters relating to the valuation of EFIH and Oncor, and the projected value of the distributions members of the Ad Hoc Committee will receive under the proposed restructuring of the Debtors (Document Request Nos. 11, 12, 14, 24, 25);

2. Any potential or actual post-confirmation employment of any present or former directors, officers or management of the Debtors (Document Request No. 31);

3. Oncor strategic business plans, financial projections, and other documents and communications concerning any possible transaction involving Oncor, including without limitation any possible sale of Oncor (or any interest therein including any equity interest therein) following confirmation of a Chapter 11 plan for EFIH (Document Request No. 9);

4. References to a "fulcrum" security in the Debtors' capital structure (Document Request No. 23);

5. Underwriting memoranda for the investments made by the members of the Ad Hoc Committee (Document Request No. 6);

6. Matters relating to tax allocation agreements (Document Request No. 8); and

7. Matters relating to the RSA (numerous Document Requests).


We understand from our conversation yesterday that you will discuss these requests with your clients and get back to us with a response as to whether you are willing to produce the categories of documents set forth above. As I mentioned, given the timeline set forth in the Court's Scheduling Order governing the makewhole litigation, we ask that you please respond to this email by tomorrow if at all possible to allow us to try to resolve these issues, or, if it becomes necessary, raise them promptly with the Court.

To the extent it would be helpful to discuss these matters further, including the possibility of limited, reasonable restrictions on certain categories of documents, we are happy to do so.

Best regards,

Phil

**Philip D. Anker | WilmerHale**
7 World Trade Center
250 Greenwich Street
New York, NY 10007 USA
+1 212 230 8890 (t)
+1 212 230 8888 (f)
philip.anker@wilmerhale.com

**Please consider the environment before printing this email.**

---

IRS CIRCULAR 230 DISCLOSURE:

To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. tax

4

advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

---

This email message and any attachments are being sent by Wilmer Cutler Pickering Hale and Dorr LLP, are confidential, and may be privileged. If you are not the intended recipient, please notify us immediately—by replying to this message or by sending an email to postmaster@wilmerhale.com—and destroy all copies of this message and any attachments. Thank you.

For more information about WilmerHale, please visit us at http://www.wilmerhale.com.

_____

```
IRS Circular 230 Notice Requirement: This communication is not given in the form of a covered
opinion, within the meaning of Circular 230 issued by the United States Secretary of the Treasury.
Thus, we are required to inform you that you cannot rely upon any tax advice contained in this
communication for the purpose of avoiding United States federal tax penalties. In addition, any tax
advice contained in this communication may not be used to promote, market or recommend a
transaction to another party.

The information contained in this e-mail message is intended only for the personal and confidential
use of the recipient(s) named above. If you have received this communication in error, please
notify us immediately by e-mail, and delete the original message.
```