# EXHIBIT A

July 16, 2014

*VIA E-MAIL*

Board of Directors of Energy Future Intermediate Holding Company LLC
c/o Paul Keglevic
Chief Financial Officer
1601 Bryan Street
Dallas, Texas 75201

   Re: <u>In re Energy Future Holdings Corp., *et al*., No. 14-10979 (CSS)</u>

Dear Paul:

  On June 18, 2014, NextEra Energy, Inc. ("<u>NextEra</u>"), together with the ad hoc group of EFIH Second Lien Noteholders (the "<u>Second Lien Group</u>"), submitted a letter of intent describing the terms toward which NextEra and the Second Lien Group wished to work with the Debtors to document a comprehensive restructuring of the Debtors, including a proposed second lien debtor-in-possession financing facility. NextEra and the Second Lien Group submitted revised proposals, each with significantly improved economic terms over the previous proposals, on June 20th, 22nd, and 27th.

  On July 8, 2014, the Debtors announced that they remain committed to the goal of maximizing estate value and that they intend to engage in discussions with third parties. To this end, NextEra and the Second Lien Group wish to work side-by-side with the Debtors to consummate a transaction that we believe will deliver the best value for reorganized EFH common stock and maximize value for all of the Debtors' creditors.

  NextEra and the Second Lien Group are pleased to present to you the annexed summary of terms, and we are ready to work collaboratively with the Debtors to document a comprehensive restructuring embodying those terms (the "<u>Strategic Proposal</u>"), including:

(1) funding of the Debtors' plan of reorganization (the "<u>Strategic Investment</u>") or, to the extent the Debtors wish to maintain the financing structure contemplated by the RSA, funding of a second lien debtor-in-possession financing facility with a mandatory equity conversion (the "<u>Strategic DIP</u>"); and

(2) a tax-free merger of reorganized EFH and a subsidiary of NextEra in an all-stock merger in which NextEra would acquire 100% of reorganized EFH common stock in exchange for NextEra common stock (the "<u>Merger</u>").

c/o Paul Keglevic                                    -2-                                    July 16, 2014

The terms of the Strategic Proposal are set forth in more detail below and on the annexed term sheet. The Strategic Proposal is superior to the RSA transactions because it:

- implies a significantly higher enterprise valuation for Oncor than the implied enterprise valuation under the RSA, with an approximate $500 million increase over our prior proposal;

- provides the Debtors with flexibility to allocate value throughout the capital structure and implement the proposed transaction via either the Strategic Investment or the Strategic DIP;

- provides for a Strategic DIP at the option of the Debtors, which, if consummated, would have no cash fees, no prepayment premium, and significantly lower interest rates than any other financing proposal made public to date;

- contemplates the Merger, which would provide certainty of value to the Debtors' estates and liquidity upon plan effectiveness to EFH and EFIH creditors;

- preserves the Debtors' tax strategy, including the tax-free spin of TCEH;

- results in NextEra, an entity that owns significant operations regulated by the PUC, holding a substantial majority ownership stake in Oncor, reducing the regulatory risk embedded in the RSA;[1]

- provides for approximately $180 million of additional value available for consensual settlements throughout the Debtors' capital structure; and

- provides for higher recoveries for creditors of both EFH and EFIH than is provided for under the RSA, including:

    o payment in full to the EFIH PIK Notes and EFH LBO Notes equal to the aggregate amount of the principal and, at the Debtors' discretion and/or if required by the Bankruptcy Court, accrued contract interest and makewhole;

    o payment to the EFIH Second Lien Notes equal to the aggregate amount of principal, accrued contract interest, and makewhole, less $25 million; and

    o an increase of $20 million in the cash distribution to the EFH Legacy Notes over the recovery provided for under the RSA.

---

[1] NextEra will coordinate with Oncor to obtain any necessary regulatory approvals from the PUC relating to changes in ownership of EFH contemplated by the Strategic Proposal.

c/o Paul Keglevic                          -3-                          July 16, 2014

     NextEra and the Second Lien Group are prepared to move expeditiously to consummate the Strategic Proposal. NextEra currently has approval from its board of directors for the Strategic Investment or the Strategic DIP and will seek Board approval for the Merger at a Board meeting scheduled for July 24-25, 2014.

     We look forward to working together with the Debtors on a comprehensive restructuring that maximizes value for all creditors.

Thomas Moers Mayer  
Kramer Levin Naftalis & Frankel LLP  
Counsel to the Second Lien Group

Sincerely,

Mark E. Hickson  
Vice President, Strategy and Corporate Development, NextEra Energy, Inc.

cc: Charles E. Sieving, Executive Vice President & General Counsel, NextEra Energy, Inc.  
    Howard Seife, Chadbourne & Parke LLP  
    David M. LeMay, Chadbourne & Parke LLP  
    Joshua K. Brody, Kramer Levin Naftalis & Frankel LLP  
    Stephen E. Hessler, Kirkland & Ellis LLP  
    David Ying, Evercore Group L.L.C.

# ENERGY FUTURE HOLDINGS CORP.

<u>TERM SHEET FOR ACQUISITION OF ENERGY FUTURE HOLDINGS CORP.</u>

*This Term Sheet summarizes the principal indicative terms with respect to a potential acquisition by a subsidiary of NextEra Energy, Inc. of Energy Future Holdings Corp. This Term Sheet is intended solely as a basis for further discussion and is not intended to be and does not constitute a commitment, offer to purchase or any legally binding obligation. No other legally binding obligations will be created, implied or inferred until definitive legal documentation is executed and delivered by both parties.*

| | |
|---|---|
| <u>Company</u> | Reorganized Energy Future Holdings Corp. ("<u>Reorganized EFH</u>"). |
| <u>Purchaser</u> | A newly formed Delaware limited liability company ("<u>Purchaser</u>") wholly owned, directly or indirectly, by NextEra Energy, Inc. ("<u>NEE</u>"). |
| <u>Structure</u> | The acquisition will take place in two steps. |

**Step 1**: Purchaser will acquire approximately 41% of the equity of Reorganized EFH from Reorganized EFH for a cash payment equal to $1.625 billion paid pursuant to a confirmed and effective Chapter 11 plan of reorganization (the "<u>Plan of Reorganization</u>"). (See Alternative Step 1 below.)

**Alternative Step 1**: As an alternative to Step 1 above, NEE would invest $1.625 billion in the form of a mandatorily convertible second lien debtor in possession facility ("<u>NEE DIP</u>"), which facility, including the 2% PIK interest and the PIK funding fee described below, would convert into approximately 42% of the equity of Reorganized EFH upon effectiveness of the Plan of Reorganization. The NEE DIP would be part of a larger mandatorily convertible second lien debtor in possession facility that would involve a rollover of a portion of the Second Lien Notes into notes under such facility which will be non-amortizing and bear interest at a fixed rate of 6% per annum payable in cash.

The notes issued to NEE under the NEE DIP facility will be non-amortizing and bear interest at a fixed rate of 6% per annum, of which 4% will be payable in cash and 2% will be payable in the form of additional notes. Such additional notes will also be non-amortizing.

Interest will be payable on all of the notes on the final business day of each quarter, beginning on the first such day after the issue date.

There would be no cash fees payable in respect of the facility and no pre-payment penalty.

There would be a PIK funding fee of $75 million, payable to NEE in equity at confirmation of the Plan of Reorganization only upon the equity conversion of the NEE DIP facility.

**Step 2**: NEE would acquire the balance of the equity of Reorganized EFH pursuant to a tax-free merger of Reorganized EFH with and into Purchaser pursuant to the Plan of Reorganization. Prior to approval and execution of a merger agreement among EFH, NEE and the Purchaser (the "Merger Agreement"), EFH will reincorporate as a Delaware corporation. The merger consideration shall consist of a number of shares of NEE common stock to be issued to the holders of Reorganized EFH Common Stock (other than NEE or Purchaser) with an aggregate value equal to the Net Plan Funding Requirement.

For these purposes—

"Net Plan Funding Requirement" means the sum of the Second Lien Net Funding Requirement, the PIK Net Funding Requirement, the EFH Unsecured LBO Notes Net Funding Requirement, the EFH Unsecured Legacy Notes Net Funding Requirement, and the EFH Equity Funding Requirement. Notwithstanding the calculation of the Net Plan Funding Requirement (which shall be based on a calculation equal to the full amount of the principal, accrued interest at the contract rate, and makewhole with respect to claims against EFIH), all amounts that constitute the components of the Net Plan Funding Requirement other than the Second Lien Net Funding Requirement are fungible and can be reallocated pursuant to the Plan of Reorganization.

"Second Lien Net Funding Requirement" means the aggregate amount of the principal, accrued interest at the contract rate and makewhole payable with respect to the Second Lien Notes, less the sum of (x) all amounts paid in cash in respect thereof and (y) $25 million. The Second Lien Net Funding Requirement shall be payable such that the amounts received pursuant to the Plan of Reorganization and the Merger Agreement result in 50% paid in cash and 50% paid in NEE common stock.

"PIK Net Funding Requirement" means the aggregate amount of the principal and, at the Debtors' discretion and/or if required by the Bankruptcy Court, accrued interest at the contract rate and makewhole payable with respect to the PIK

2

Notes, less all amounts paid in cash in respect thereof. The PIK Net Funding Requirement shall be payable such that the amounts received pursuant to the Plan of Reorganization and the Merger Agreement result in 50% paid in cash and 50% paid in NEE common stock.

"EFH Unsecured LBO Notes Net Funding Requirement" means the aggregate amount of the principal and, at the Debtors' discretion and/or if required by the Bankruptcy Court, accrued interest at the contract rate and makewhole payable with respect to the LBO Notes, less the sum of (x) all amounts paid in cash in respect thereof and (y) any other recovery that the holders are entitled to under the Plan of Reorganization. The EFH Unsecured LBO Notes Net Funding Requirement shall be payable such that the amounts received pursuant to the Plan of Reorganization and the Merger Agreement result in 50% paid in cash and 50% paid in NEE common stock.

"EFH Unsecured Legacy Notes Net Funding Requirement" means an aggregate amount equal to 0.4% of the Reorganized EFH equity paid in NEE common stock. The holders of EFH Unsecured Legacy Notes will also receive all residual cash at EFH.

"EFH Equity Funding Requirement" means an amount equal to 0.4% of the Reorganized EFH equity paid in NEE common stock.

| | |
|---|---|
| Transfer Restrictions | NEE common stock to be issued in the Merger shall be freely tradeable, subject to tax and market related limitations. |
| Governance | As of the closing, the Board and management of the reorganized EFH shall be the Board and management of Purchaser. |
| Representations and Warranties | The Merger Agreement shall contain customary representations and warranties of EFH and NEE and Purchaser for transactions of this type. |
| Covenants | The Merger Agreement shall contain covenants and agreements of EFH and EFIH, customary for a transaction of this type. |
| Conditions Precedent to Merger | The Merger will be conditioned upon satisfaction of customary terms and conditions, including, without limitation, the following: |

- The Bankruptcy Court shall have entered the Confirmation Order, and such order shall be final and in full force and effect

3

        and not subject to a stay;

- Any and all governmental and third party consents and approvals necessary in connection with the Merger and the Plan of Reorganization shall have been obtained and shall remain in effect;

- The Private Letter Ruling related to the tax-free spin-off shall have been obtained from the IRS; and

- The Plan of Reorganization shall have become, or simultaneously with the issuance of the Reorganized EFH Common Stock will become, effective.

<u>Approval</u>        NEE has approval from its Board of Directors for Step 1 and Alternative Step 1 and will seek Board approval for Step 2 (the Merger) at a Board meeting scheduled for July 24-25, 2014.