WILMERHALE

July 22, 2014

**Philip D. Anker**

+1 212 230 8890 (t)
+1 212 230 8888 (f)
philip.anker@wilmerhale.com

**VIA HAND DELIVERY AND ECF**

Hon. Christopher S. Sontchi
United States Bankruptcy Court
  for the District of Delaware
824 North Market Street, 5th Floor
Wilmington, Delaware 19801

> Re:   *In re Energy Future Holdings Corp. et al.*, **Case No. 14-10979 (CSS), and** *CSC Trust Co. of Delaware v. Energy Future Intermediate Holding Co. LLC et al.*, **Adv. Proc. No. 14-50363 (CSS)**

Dear Judge Sontchi:

         We write to respond to Mr. McGaan's letter submitted yesterday, July 21, 2014.   We wish to make three brief points:

         *First*, as Mr. McGaan now acknowledges, the debtors in *Calpine* redeemed the debt at issue in that case "during the no-call period" (D.I. 94, McGann Letter at 1 (Jul. 21, 2014)), when the pertinent indentures did not require the payment of any makewhole premium.  As Judge Lifland made clear, it was this fact—that the redemption occurred before the period during which the *Calpine* indentures required payment of a makewhole premium—that caused Judge Lifland to observe that he did not see the relevancy of solvency in determining the noteholders' entitlement to a makewhole premium.  *See* Transcript at 62:13-15, *In re Calpine Corp.*, No. 05-60200 (Bankr. S.D.N.Y. Feb. 27, 2007) ("The key issue before me is whether the make whole premium is in the cards here or whether the documents, sir, provide for it appropriately."); *In re Calpine Corp.*, 365 B.R. 392, 398 (Bankr. S.D.N.Y. 2007) ("none of the agreements governing the CalGen Secured Debt require a prepayment premium for repayment prior to April 1, 2007"), *aff'd in part with disagreement on other grounds*, *HSBC Bank USA, N.A. v. Calpine Corp.*, No. 07-3088, 2010 U.S. Dist. LEXIS 96792, 2010 WL 3835200 (S.D.N.Y. Sept. 14, 2010).  Indeed, in his published written opinion in which he denied the noteholders' claim for payment of a makewhole premium because the redemption took place outside of the period to which the makewhole formula applied, Judge Lifland nevertheless held that the noteholders were entitled to a claim for damages for breach of the no-call provision.  *Calpine*, 365 B.R. at 399 ("The CalGen Secured Lenders' expectation of an uninterrupted payment stream has been dashed giving rise to damages . . .").  And, in connection with that allowed claim, Judge Lifland made clear that the Calpine debtors' solvency *was relevant* to assess the proper rate of interest payable to the noteholders on the claim.  *Id.* at 400 ("The fact that a debtor is solvent, while not dispositive, is also a consideration when determining the rate of interest due.").  Thus, *Calpine* does not stand—as the Debtors appear to argue—for the proposition that solvency is never relevant to the issue of whether a makewhole premium or damages for violation of a no-call

WILMERHALE

July 22, 2014
Page 2

provision are payable.    Instead, *Calpine* stands for the unremarkable proposition that the relevance of solvency depends on the particular facts and circumstances of the case.

In this case, the EFIH Debtors redeemed the 10% Notes during a period when the relevant indentures both provided for payment of a makewhole premium and otherwise barred the EFIH Debtors from redeeming the 10% Notes.[1]    And the Trustee, on behalf of the 10% Noteholders, is seeking to recover not only the unpaid makewhole premium (and damages for breach of the no-call provision), but also interest.

*Second*, several other cases hold that solvency is a relevant consideration in a make-whole or no-call dispute.  *See, e.g.*, *In re Chemtura Corp.*, 439 B.R. 561, 605 (Bankr. S.D.N.Y. 2010) ("[T]he allowance of claims for breach of a no-call may be affected by a debtor's solvency . . . . [I]n a solvent debtor case, . . . 'it is the role of the bankruptcy court to enforce the creditors' contractual rights.' . . . [W]ith a solvent debtor, … the allowance of claims under a make-whole provision 'should be an issue of state law alone.'"); *accord UPS Capital Bus. Credit v. Gencarelli (In re Gencarelli)*, 501 F.3d 1, 7 (1st Cir. 2007); *Premier Entm't Biloxi LLC v. U.S. Bank Nat'l Ass'n (In re Premier Entm't Biloxi LLC)*, 445 B.R. 582, 636 (Bankr. S.D. Miss. 2010) (explaining that "when a debtor is solvent, bankruptcy courts generally will enforce the debtor's contractual obligations to the extent they are valid under applicable state law" and considering the debtor's solvency an important factor in determining to allow damages for breach of a no-call provision); *see also* Scott K. Charles & Emil A. Kleinhaus, *Prepayment Clauses in Bankruptcy*, 15 ABI L. REV. 537, 583-84 (2007).

*Third*, while the Trustee believes that in the final analysis the makewhole premium (and damages for breach of the no-call provision) should be due whether or not the EFIH Debtors are solvent, the arguments presented by the EFIH Debtors underscore the relevance of solvency in the context of *this case* on the Debtors' *own legal theories*.  In his letter to the Court submitted last Thursday, Mr. McGaan asserted that the EFIH Debtors' redemption of the 10% Notes was "not . . . optional."  D.I. 90, McGann Letter at 2 (Jul. 17, 2014).  But even if the EFIH Debtors could avoid liability for the makewhole premium and breach of the no-call provision to the extent that they were required to redeem the 10% Notes (and nothing in the indentures so provides), the Bankruptcy Code does not require a debtor as a matter of law to redeem outstanding debt at the outset of its bankruptcy case; to the contrary, even at plan confirmation, the Code allows a Chapter 11 debtor to reinstate such debt.  11 U.S.C. § 1124(2)(B); *see also, e.g.*, *Imperial Coronado Partners Ltd. v. Home Fed. Sav. & Loan Ass'n (In re Imperial Coronado Partners Ltd.)*, 96 B.R. 997, 1000 (BAP 9th Cir. 1989) (holding that lender was

---

[1] Attached to this letter as Exhibit A are the cover page and relevant excerpts from one of the Indentures requiring the payment of the makewhole premium upon a redemption of the 10% Notes prior to December 1, 2015 (Section 3.07(a)) and otherwise barring any redemption prior to that date (Section 3.07(c)).  Capitalized terms not otherwise defined in this letter shall have the same meanings as set forth in my July 15, 2014 letter to the Court.

WilmerHale

July 22, 2014
Page 3


entitled to prepayment premium, even though the maturity of its loan had been accelerated when its borrower had filed for bankruptcy, because the debtor "had the right to deaccelerate the due date of the loan"). Thus, the Debtors' argument must be that the Debtors' bankruptcy filing and immediate refinancing of the 10% Notes was required financially under the facts of this case. Indeed, at the hearing held last Friday, one of Mr. McGaan's partners argued that the EFIH Debtors had not "intentionally defaulted in order to avoid that make-whole" and, instead, had proceeded as they had because they were "running out of [money]." Exhibit B, D.I. 93, Transcript at 66:15-19 (Jul. 18, 2014) (remarks of Mr. Dempsey).

The EFIH Debtors cannot have it both ways. If they are going to rely on their supposed financial circumstances, they cannot at the same time claim that their solvency is irrelevant.


Respectfully submitted,

*/s/ Philip D. Anker*

Philip D. Anker

Counsel for CSC Trust Company of Delaware, as successor indenture trustee for the holders of the 10% Senior Secured Notes Due 2020