**EXHIBIT B**

# LAZARD

As of May 14, 2014

OFFICIAL COMMITTEE OF UNSECURED CREDITORS
OF ENERGY FUTURE HOLDINGS CORP.

Mr. Michael Puryear, Esquire
General Counsel
Holt Texas LTD, d/b/a Holt Cat
3302 South W.W. White Road
San Antonio, TX 78222

Dear Mr. Puryear:

This letter and the accompanying exhibit confirm the terms under which the Official Committee of Unsecured Creditors of Energy Future Holdings Corp., *et al* (the "Committee") has engaged Lazard Frères & Co. LLC to act as investment banker to the Committee in connection with the matters set forth herein. For purposes hereof, the term "Company" means, collectively, Energy Future Holdings Corp. and its subsidiaries and affiliates that are debtors in the chapter 11 cases (Case No. 14-10979 (Jointly Administered))[1].

I.  <u>Scope of Services</u>. Lazard shall perform the following investment banking services for the Committee, in each case as necessary and if requested:

   A.  review and analyze the business, operations, liquidity, assets and liabilities, financial condition and prospects of the Company;

   B.  review and analyze the Company's business plan;

   C.  evaluate the Company's debt capacity in light of its projected cash flows;

   D.  review and provide an analysis of any proposed capital structure for the Company;

   E.  review and provide an analysis of any valuation of the Company or its assets;

   F.  advise and attend meetings of the Committee as well as meetings with the Company or other third parties as appropriate in connection with the matters set forth herein;

---

[1] It is expressly understood and agreed that all references to obligations of the Company under the terms of the Engagement Letter and Exhibit A shall be obligations of the Company pursuant to the order entered by the Court pursuant to and in accordance with the Lazard retention application.

Lazard Frères & Co. LLC
190 S. LaSalle Street
31st Floor
Chicago, IL 60603

G. advise and assist the Committee in evaluating the financial aspects of any potential DIP loans or other financing by the Company;

H. review, analyze and advise the Committee with respect to the existing debt structures of the Company, and potential refinancing alternatives for existing secured debt;

I. advise and assist the Committee in analyzing strategic alternatives potentially available to the Company;

J. review and provide an analysis of any restructuring plan (as the same may be modified from time to time, a "Plan") proposed by any party;

K. review and provide an analysis of any new securities, other consideration or other inducements to be offered and/or issued under the Plan or otherwise;

L. assist the Committee and/or participate in negotiations with the Company;

M. provide testimony, as necessary, with respect to matters on which we have been engaged to advise the Committee in any proceeding before the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"); and

N. provide such other financial advisory services as the Committee may from time to time reasonably request and which are customarily provided by financial advisors in similar situations.

In rendering its services to the Committee hereunder, Lazard is not assuming any responsibility for the Committee's, the Company's, any creditor's or any other person's underlying business decision to pursue (or not to pursue) any business strategy or to effect (or not to effect) any other transaction(s) or decision(s). Lazard shall not have any obligation or responsibility to provide accounting, audit, "crisis management," or business consultant services for the Company or any other person or entity and shall have no responsibility for designing or implementing operating, organizational, administrative, cash management or liquidity improvements. Nothing in this agreement is intended to obligate or commit Lazard or any of its affiliates to provide any services other than those set forth above. The Committee confirms that it will rely on its own counsel, accountants and other similar expert advisors for legal, accounting, tax and other specialist advice.

The Committee shall use all reasonable efforts to assist Lazard in obtaining from the Company all information concerning the business, assets, liabilities, operations, cash flows, properties, financial condition and prospects of the Company that Lazard reasonably requests in connection with the services to be performed for the Committee hereunder. The Committee acknowledges that at all times during Lazard's engagement Lazard will be assuming that all information furnished to Lazard (i) is accurate and complete in all material respects and (ii) does not contain any untrue statement of a material fact or omit to state a material fact necessary in order to make the statements therein not misleading in light of the circumstances under which such statements are made. The Committee further recognizes and confirms that in advising the Committee

pursuant to its engagement hereunder, Lazard will be using and relying on publicly available information and on data, material and other information furnished to Lazard by the Company, the Committee and other parties. It is understood that in performing under this engagement, Lazard is not assuming any responsibility for independent verification of such information. Lazard will not, as part of its engagement, undertake any appraisal of any of the assets or liabilities of the Company or of any third party.

II.   Compensation. As consideration for the services being provided by Lazard, Lazard's compensation for services rendered under this agreement shall be paid by the Company and will consist of the following cash fees and expense reimbursements:

   A.   Monthly Fee.

      (i)   A monthly fee (the "Monthly Fee") of $250,000 for each month of Lazard's engagement hereunder, payable in accordance with any applicable orders of the Court. The Monthly Fee for the month of May 2014 shall be payable pro-rated such that we shall not be paid for the first thirteen (13) days of the month.

      (ii)   50% of all Monthly Fees paid in respect of any month commencing with the month of February 2015 shall be credited (without duplication) against any Contingent Fee (defined below). For the avoidance of doubt, if the Contingent Fee is not payable, there shall be no crediting of the Monthly Fees.

   B.   Restructuring Fee. A fee (the "Restructuring Fee"), payable upon consummation of any Restructuring[2], of $10,000,000.

   C.   Contingent Fee. A fee (the "Contingent Fee"), payable upon consummation of any Restructuring supported by the Committee, of $3,000,000.

   D.   Expense Reimbursement. In addition to any fees that may be payable to Lazard, the Company shall promptly reimburse Lazard for all expenses (including fees and expenses of counsel, if any), travel and lodging, data processing and communications charges, courier services and other expenditures incurred in connection with, or arising out of Lazard's activities under or contemplated by, this engagement.

---

[2] As used in this Agreement, the term "Restructuring" shall mean any restructuring, reorganization, rescheduling, recapitalization or repayment of all or any material portion of the Company's liabilities or any sale of all or material portion of the Company or its assets, however such result is achieved, including, without limitation, through a Plan confirmed by the Bankruptcy Court, an exchange offer or consent solicitation, covenant relief, rescheduling of debt maturities, change in interest rates, other amendments to the Company's debt instruments, settlement or forgiveness of debt, conversion of debt into equity, repayment of the Company's debt instruments, issuance of new securities, raising of new debt, equity or hybrid capital, or the sale or other transfer of equity, assets or other interests of the Company.

E. No fee payable to any other person, by the Company, the Committee or any other person or entity, shall reduce or otherwise affect any fee payable hereunder.

F. All amounts referenced hereunder reflect United States currency and shall be paid promptly in cash after such amounts accrue hereunder.

III. Retention in Chapter 11 Proceedings. The Committee agrees that it will use its best efforts to retain Lazard as investment banker to the Committee on the terms and conditions set forth in this agreement (including Exhibit A) under the provisions of and subject to the standard of review set forth in Section 328(a) of title 11 of the United States Code (the "Bankruptcy Code") and agrees that the arrangements hereunder are reasonable under the standards set forth in Section 328(a). Lazard shall be under no obligation to provide any services under this agreement unless Lazard's retention under the terms of this agreement is approved under section 328(a) of the Bankruptcy Code by final order of the Bankruptcy Court (the "Retention Order"), which Retention Order is acceptable to Lazard in its sole discretion. The retention application shall note that in so agreeing to seek Lazard's retention under Section 328(a) of the Bankruptcy Code, the Committee acknowledges that it believes that Lazard's general restructuring experience and expertise, its knowledge of the capital markets and its merger and acquisition capabilities will inure to the benefit of the Company in pursuing any Restructuring, that the value to the Company of Lazard's services hereunder derives in substantial part from that expertise and experience and that, accordingly, the structure and amount of the deferred fees, including the Restructuring Fee and Contingent Fee, is reasonable regardless of the number of hours to be expended by Lazard's professionals in the performance of the services to be provided hereunder, and that the deferred fee shall not be considered to be "bonuses" or fee enhancements under applicable law.

IV. Indemnification. As a material part of the consideration for Lazard to furnish its services under this agreement, Lazard requires that the Company and certain related persons indemnify, reimburse and provide contribution to Lazard in accordance with the provisions attached hereto as Exhibit A. The provisions of Exhibit A are an integral part of this agreement, and the terms thereof are incorporated in entirety by reference herein. The terms of Exhibit A shall survive any termination or expiration of this agreement or Lazard's engagement, and the Retention Order shall provide for such survival.

V. Termination. This agreement and Lazard's engagement hereunder may be terminated by either the Committee or Lazard at any time, provided, however, that (a) termination of Lazard's engagement hereunder shall not affect the Company's continuing obligations pursuant to Exhibit A, and the Company's and the Committee's obligations and agreements under paragraphs I, II, III, IV, this paragraph V, VI, VII, VIII, and XII hereof, (b) notwithstanding any such termination, Lazard shall remain entitled to any fees accrued pursuant to paragraph II but not yet paid prior to such termination and to reimbursement of expenses pursuant to paragraph II incurred prior to such termination, and (c) in the case of termination by the Committee, Lazard shall remain entitled to full payment of all fees contemplated by paragraph II hereof in respect of any Restructuring announced or resulting from negotiations occurring during the period from the date hereof until twelve months following such termination.

VI. <u>Independent Contractor</u>.  Lazard has been retained under this agreement as an independent contractor to the Committee; nothing herein is intended to create or shall be construed as creating a fiduciary relationship between Lazard and the Committee or its members or any other person or entity.  The Committee acknowledges that Lazard is not the agent of and is not authorized to bind the Committee in any action or decision.  The advice (oral or written) rendered by Lazard pursuant to this agreement is intended solely for the benefit and use of the Committee solely in its capacity as the Committee in considering the matters to which this agreement relates, and such advice may not be relied upon by any other person or entity (including its members or the Company), used for any other purpose or reproduced, disseminated, quoted or referred to at any time, in any manner for any purpose, nor shall any public references to Lazard be made by the Committee or the Company, without the prior consent of Lazard.  Notwithstanding the foregoing, nothing herein shall prohibit any party hereto from disclosing to any and all persons the tax treatment and tax structure of any transaction and the portions of any materials that relate to such tax treatment or tax structure.

VII. <u>Limitation of Liability</u>.  The Committee agrees that neither Lazard nor any Indemnified Persons (as defined in <u>Exhibit A</u>) shall have any liability (whether direct or indirect, in contract or tort or otherwise) to the Company, the Committee, or their respective members, partners, employees, agents or their respective affiliates or security holders for or in connection with this engagement or any transactions or conduct in connection therewith except to the extent that any losses, claims, damages, liabilities or expenses incurred by the Committee are found by a court of competent jurisdiction in a judgment which has become final in that it is no longer subject to appeal or review to have resulted primarily from such Indemnified Person's bad faith or gross negligence.  The Retention Order shall provide for such limitation of liability.

VIII. <u>Successors and Assigns</u>.  This agreement (including <u>Exhibit A</u> hereto) shall be binding upon Lazard, the Committee, and the Company and their respective successors and assigns.  Each party hereto recognizes that Lazard has been engaged solely on behalf of the Committee and that Lazard's engagement is not deemed to be on behalf of and is not intended to confer any rights upon the Company, any shareholder, creditor, member, owner or partner of the Company or the Committee, or any other person or entity not a party hereto other than the Indemnified Persons.  The Company's obligations hereunder are joint and several.

IX. <u>Authority</u>.  Each party hereto represents and warrants that it has all requisite power and authority to enter into this agreement and the transactions contemplated hereby.  Each party hereto further represents and warrants that this agreement has been duly and validly authorized by all necessary corporate or other action on the part of such party, has been duly executed and delivered by such party and constitutes a legal, valid and binding agreement of such party, enforceable in accordance with its terms.

X. <u>Lazard Affiliates</u>.  In connection with the services to be provided hereunder, Lazard may employ the services of its affiliates and may share with any such entity any information concerning the Company, provided that Lazard and such entities shall hold any nonpublic information confidential in accordance with their respective customary policies relating

to nonpublic information. Any such entity so employed shall be entitled to all of the benefits afforded to Lazard hereunder and under the Indemnification Letter and shall be entitled to be reimbursed for its costs and expenses on the same basis as Lazard.

XI. <u>Miscellaneous</u>. This agreement and <u>Exhibit A</u> constitute the entire understanding of the parties hereto as to the matters set forth herein and in <u>Exhibit A</u>, and shall supersede all prior understandings and proposals, whether written or oral, relating to any of the matters contemplated herein or in <u>Exhibit A</u>. This agreement may be executed in counterparts, each of which shall be deemed to be an original, but all of which shall constitute one and the same instrument. This agreement may only be amended or waived by a writing signed by the parties hereto.

XII. <u>Choice of Law</u>. This agreement and any claim related directly or indirectly to this agreement (including any claim concerning advice provided pursuant to this agreement) shall be governed by and construed in accordance with the laws of the State of New York without regard to the principle of conflicts of law. No such claim shall be commenced, prosecuted or continued in any forum other than the courts of the State of New York located in the City and County of New York, the United States District Court for the Southern District of New York, or, during the pendency of the Company's chapter 11 proceedings, the Bankruptcy Court for the District of Delaware, and each of the parties hereby submits to the jurisdiction of such courts. Each party hereto hereby waives on behalf of itself and its successors and assigns any and all right to argue that the choice of forum provision is or has become unreasonable in any legal proceeding. ANY RIGHT TO TRIAL BY JURY WITH RESPECT TO ANY CLAIM OR ACTION ARISING OUT OF THIS AGREEMENT OR CONDUCT IN CONNECTION WITH THIS ENGAGEMENT IS HEREBY WAIVED BY EACH PARTY HERETO.

If the foregoing agreement is in accordance with your understanding of the terms of our engagement, please sign and return to us the enclosed duplicate hereof.

Very truly yours,

LAZARD FRÈRES & CO. LLC

By: *David S. Kurtz* (signature)

David S. Kurtz
Vice Chairman


AGREED TO AND ACCEPTED
as of the date first above written:

On behalf of the OFFICIAL COMMITTEE
OF UNSECURED CREDITORS
OF ENERGY FUTURE HOLDINGS CORP.

HOLT TEXAS LTD, D/B/A HOLT CAT
Co-Chairman of the Committee

By: *Michael Puryear* (signature)

Name: Michael Puryear, Esquire

## **EXHIBIT A**

In connection with our engagement to advise and assist the Official Committee of Unsecured Creditors of Energy Future Holdings Corp., *et al* (the "Committee") with the matters set forth in the engagement letter of even date herewith and attached hereto (the "Engagement Letter"), for good and valuable consideration, receipt of which is acknowledged, Energy Future Holdings Corp. and its subsidiaries and affiliates that are debtors in the chapter 11 cases (Case No. 14-10979 (Jointly Administered)) (jointly and severally, the "Company") will be subject to the terms of this Exhibit A.[3] Capitalized terms used herein without definition shall have the meanings assigned to them in the Engagement Letter. It is understood and agreed that in the event that Lazard Frères & Co. LLC or any of our affiliates, or any of our or their respective directors, officers, members, employees, agents or controlling persons, if any (each of the foregoing, including Lazard Frères & Co. LLC, being an "Indemnified Person"), become involved in any capacity in any action, claim, proceeding or investigation brought or threatened by or against any person, including the Company's security holders or creditors, related to, arising out of or in connection with our engagement, the Company will promptly reimburse each such Indemnified Person for its legal and other expenses (including the cost of any investigation and preparation) as and when they are incurred in connection therewith. The Company will indemnify and hold harmless each Indemnified Person from and against any losses, claims, damages, liabilities or expenses to which any Indemnified Person may become subject under any applicable federal or state law, or otherwise, related to, arising out of or in connection with our engagement, whether or not any pending or threatened action, claim, proceeding or investigation giving rise to such losses, claims, damages, liabilities or expenses is initiated or brought by the Company or on its behalf and whether or not in connection with any action, claim, proceeding or investigation in which the Company or any such Indemnified Person are a party, except to the extent that any such loss, claim, damage, liability or expense is found by a court of competent jurisdiction in a judgment which has become final in that it is no longer subject to appeal or review to have resulted primarily from such Indemnified Person's bad faith or gross negligence. No Indemnified Person shall have any liability (whether direct or indirect, in contract or tort or otherwise) to the Company or its security holders or creditors related to, arising out of or in connection with our engagement except to the extent that any loss, claim, damage or liability is found by a court of competent jurisdiction in a judgment which has become final in that it is no longer subject to appeal or review to have resulted primarily from such Indemnified Person's bad faith or gross negligence. If multiple claims are brought against any Indemnified Person in an arbitration related to, arising out of or in connection with our engagement, and indemnification is permitted under applicable law with respect to at least one such claim, any arbitration award shall be conclusively deemed to be based on claims as to which indemnification is permitted and provided for hereunder, except to the extent the arbitration award expressly states that the award, or any portion thereof, is based solely on a claim as to which indemnification is not available.

---

[3] It is expressly understood and agreed that all references to obligations of the Company under the terms of the Engagement Letter and this Exhibit A shall be obligations of the Company pursuant to the order entered by the Court pursuant to and in accordance with the Lazard retention application.

If for any reason the foregoing indemnification is held unenforceable (other than due to a failure to meet the standard of care set forth above), then the Company shall contribute to the loss, claim, damage, liability or expense for which such indemnification is held unenforceable in such proportion as is appropriate to reflect the relative benefits received, or sought to be received, by the Company and its security holders and creditors on the one hand and the Indemnified Persons on the other hand in the matters contemplated by our engagement as well as the relative fault of the Company and such persons with respect to such loss, claim, damage, liability or expense and any other relevant equitable considerations. For the purposes hereof the relative benefits received, or sought to be received, by the Company and its security holders and creditors and the Indemnified Persons shall be deemed to be in the same proportion as (i) the total value paid or proposed to be paid by or to the Company and its security holders and creditors, as the case may be, pursuant to any transaction (whether or not consummated) in connection with which we have been engaged to perform investment banking services bears to (ii) the fees paid or proposed to be paid to us in connection with such engagement; provided, however, that, to the extent permitted by applicable law, in no event shall we or any other Indemnified Person be required to contribute an aggregate amount in excess of the aggregate fees actually paid to us for such investment banking services. The Company's reimbursement, indemnity and contribution obligations under this agreement shall be joint and several, shall be in addition to any liability which the Company may otherwise have, shall not be limited by any rights we or any other Indemnified Person may otherwise have and shall be binding upon and inure to the benefit of any successors, assigns, heirs and personal representatives of the Company, ourselves, and any other Indemnified Persons.

Without our prior written consent (which will not be unreasonably withheld), the Company will not settle, compromise or consent to the entry of any judgment in any pending or threatened claim, action, proceeding or investigation in respect of which indemnification or contribution could be sought hereunder (whether or not we or any other Indemnified Persons are an actual or potential party to such claim, action, proceeding or investigation), unless such settlement, compromise or consent includes an unconditional release of each Indemnified Person from all liability arising out of such claim, action, proceeding or investigation. No waiver, amendment or other modification of this agreement shall be effective unless in writing and signed by each party to be bound thereby. This Exhibit A and any claim related directly or indirectly to this Exhibit A shall be governed and construed in accordance with the laws of the State of New York (without giving regard to the conflicts of law provisions thereof). No such claim shall be commenced, prosecuted or continued in any forum other than the courts of the State of New York located in the City and County of New York or the United States District Court for the Southern District of New York or, during the pendency of the Company's chapter 11 proceedings, the Bankruptcy Court for the District of Delaware, and each of us hereby submits to the jurisdiction of such courts. The Company hereby waives on behalf of itself and its successors and assigns any and all right to argue that the choice of forum provision is or has become unreasonable. The Company (on its own behalf and, to the extent permitted by applicable law, on behalf of its security holders and creditors) waives all right to trial by jury in any action, proceeding or counterclaim (whether based upon contract, tort or otherwise) related to, arising out of or in connection with our engagement or this Exhibit A. The obligations set forth in this Exhibit A shall remain in effect indefinitely, notwithstanding any termination or expiration of our engagement.