## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) | Case No. 14-10979 (CSS) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | **Re: D.I. 660** |

**AMENDED DECLARATION OF EDWARD O. SASSOWER IN SUPPORT
OF THE DEBTORS' APPLICATION FOR ENTRY OF AN ORDER AUTHORIZING
THE RETENTION AND EMPLOYMENT OF KIRKLAND & ELLIS LLP AS
ATTORNEYS FOR THE DEBTORS AND DEBTORS IN POSSESSION
EFFECTIVE *NUNC PRO TUNC* TO THE PETITION DATE**

I, Edward O. Sassower, being duly sworn, state the following under penalty of perjury:

1.    I am the president of Edward O. Sassower, P.C., a partner in the law firm of Kirkland & Ellis LLP, located at 601 Lexington Ave., New York, New York 10022, and a partner of Kirkland & Ellis International LLP (together with Kirkland & Ellis LLP, "K&E"). I am the lead attorney from K&E working on the above-captioned chapter 11 cases. I am a member in good standing of the Bar of the State of New York, and I have been admitted to practice in the United States Bankruptcy Court for the Southern District of New York and the United States Bankruptcy Court for the Eastern District of New York. There are no disciplinary proceedings pending against me.

2.    I submit this declaration (the "Declaration") in support of the *Debtors' Application for Entry of an Order Authorizing the Retention and Employment of Kirkland & Ellis*

---

[1]    The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, for which joint administration has been granted, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

*LLP as Attorneys for the Debtors and Debtors in Possession Effective* Nunc Pro Tunc *to the Petition Date* (the "Application").[2] Except as otherwise noted, I have personal knowledge of the matters set forth herein.

## K&E's Qualifications

3.     The Debtors seek to retain K&E because of K&E's recognized expertise and extensive experience and knowledge in the field of debtors' protections, creditors' rights, and business reorganizations under chapter 11 of the Bankruptcy Code.

4.     K&E has been actively involved in major chapter 11 cases and has represented debtors in many cases, including, among others: *In re The Dolan Company*, No. 14-10614 (BLS) (Bankr. D. Del. Mar. 23, 2014); *In re Sorenson Commc'ns, Inc.*, No. 14-10454 (BLS) (Bankr. D. Del. Mar. 3, 2014); *In re Fisker Auto. Holdings, Inc.*, No. 13-13087 (KG) (Bankr. D. Del. Nov. 22, 2013); *In re Physiotherapy Holdings, Inc.*, No. 13-12965 (KG) (Bankr. D. Del. Nov. 14, 2013); *In re Longview Power, LLC*, No. 13-12211 (BLS) (Bankr. D. Del. Sept. 24, 2013); *In re Maxcom Telecomunicaciones S.A.B. de C.V.*, No. 13-11839 (PJW) (Bankr. D. Del. July 23, 2013); *In re Dex One Corp.*, No. 13-10533 (KG) (Bankr. D. Del. Mar. 18, 2013).[3]

5.     In preparing for its representation of the Debtors in these chapter 11 cases, K&E has become familiar with the Debtors' businesses and many of the potential legal issues that may arise in the context of these chapter 11 cases. I believe that K&E is both well-qualified and uniquely able to represent the Debtors in these chapter 11 cases in an efficient and timely manner.

---

[2]     Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Application.

[3]     Because of the voluminous nature of the orders cited herein, they are not attached to this Declaration. Copies of these orders are available upon request of Debtors' proposed counsel.

**Services to Be Provided**

6.      Subject to further order of the Court and that certain engagement letter effective

June 19, 2012 (the "Engagement Letter"), a copy of which is attached as **Exhibit 1** to **Exhibit A**

to the Application, the Debtors retained K&E to render, without limitation, the following legal

services:

a.      advising the Debtors with respect to its powers and duties as debtor in possession in the continued management and operation of its businesses and properties;

b.      advising and consulting on the conduct of these chapter 11 cases, including all of the legal and administrative requirements of operating in chapter 11;

c.      attending meetings and negotiating with representatives of creditors and other parties in interest;

d.      taking all necessary actions to protect and preserve the Debtors' estates, including prosecuting actions on the Debtors' behalf, defending any action commenced against the Debtors, and representing the Debtors in negotiations concerning litigation in which the Debtors are involved, including objections to claims filed against the Debtors' estates;

e.      preparing pleadings in connection with these chapter 11 cases, including motions, applications, answers, orders, reports, and papers necessary or otherwise beneficial to the administration of the Debtors' estates;

f.      representing the Debtors in connection with obtaining authority to continue using cash collateral and postpetition financing;

g.      advising the Debtors in connection with any potential sale of assets;

h.      appearing before the Court and any appellate courts to represent the interests of the Debtors' estates;

i.      advising the Debtors regarding tax matters;

j.      taking any necessary action on behalf of the Debtors to negotiate, prepare, and obtain approval of a disclosure statement and confirmation of a chapter 11 plan and all documents related thereto; and

k. performing all other necessary legal services for the Debtors in connection with the prosecution of these chapter 11 cases, including: (i) analyzing the Debtors' leases and contracts and the assumption and assignment or rejection thereof; (ii) analyzing the validity of liens against the Debtors; and (iii) advising the Debtors on corporate and litigation matters.

## Professional Compensation

7. K&E intends to apply for compensation for professional services rendered on an hourly basis and reimbursement of expenses incurred in connection with these chapter 11 cases, subject to the Court's approval and in compliance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, and any other applicable procedures and orders of the Court. The hourly rates and corresponding rate structure K&E will use in these chapter 11 cases are the same as the hourly rates and corresponding rate structure that K&E uses in other debtor representations, and are comparable to the hourly rates and corresponding rate structure that K&E uses for complex corporate, securities, and litigation matters whether in court or otherwise, regardless of whether a fee application is required. These rates and the rate structure reflect that such restructuring and other complex matters typically are national in scope and involve great complexity, high stakes, and severe time pressures.

8. K&E operates in a national marketplace for legal services in which rates are driven by multiple factors relating to the individual lawyer, his or her area of specialization, the firm's expertise, performance, and reputation, the nature of the work involved, and other factors.

9. As discussed in more detail below, K&E's rates are subject to periodic change in the ordinary course of business. K&E's hourly rates for matters related to these chapter 11 cases from April 29, 2013, to December 31, 2013, ranged as follows:

| Billing Category | U.S. Range |
|---|---|
| Partners | $655-$1,150 |
| Of Counsel | $450-$1,150 |
| Associates | $430-$790 |
| Paraprofessionals | $150-$335 |

10.     K&E's current hourly rates for matters related to these chapter 11 cases as of January 1, 2014, range as follows:[4]

| Billing Category[5] | U.S. Range |
|---|---|
| Partners | $665-$1,295 |
| Of Counsel | $415-$1,195 |
| Associates | $450-$865 |
| Paraprofessionals | $170-$355 |

11.     The Debtors and K&E expect to develop a prospective budget and staffing plan to comply with the U.S. Trustee's requests for information and additional disclosures, and any other orders of the Court for the period from April 29, 2014, to August 31, 2014, recognizing that in the course of these massive chapter 11 cases, there may be unforeseeable fees and expenses that will need to be addressed by the Debtors and K&E.

12.     K&E's hourly rates are set at a level designed to compensate K&E fairly for the work of its attorneys and paralegals and to cover fixed and routine expenses.  Hourly rates vary

---

[4]     These ranges reflect proposed changes to K&E's billing rates that will take effect on June 1, 2014, and July 1, 2014.  K&E will make appropriate disclosures to the Court, the U.S. Trustee, and other parties in interest if the rates when finalized differ in any material respect from those listed above.  For professionals and paraprofessionals residing outside of the U.S., hourly rates are billed in the applicable currency.  When billing a U.S. entity, such foreign rates are converted into U.S. dollars at the then applicable conversion rate.  After converting these foreign rates into U.S. dollars, it is possible that certain rates may exceed the billing rates listed in the chart herein.

[5]     K&E currently uses contract attorneys for these chapter 11 cases.  K&E will not charge a markup to the Debtors with respect to fees billed by such attorneys.  Moreover, any contract attorneys or non-attorneys who are employed by the Debtors in connection with work performed by K&E will be subject to conflict checks and disclosures in accordance with the requirements of the Bankruptcy Code.

with the experience and seniority of the individuals assigned.  These hourly rates are subject to periodic adjustments to reflect economic and other conditions.[6]

13.    K&E represented the Debtors during the 12-month period before the Petition Date, using the hourly rates listed above.   Moreover, these hourly rates are consistent with the rates that K&E charges other comparable chapter 11 clients, regardless of the location of the chapter 11 case.  The rate structure provided by K&E is appropriate and is not significantly different from (a) the rates that K&E charges for other non-bankruptcy representations or (b) the rates of other comparably skilled professionals.  K&E and the Debtors have not agreed to any variations from, or alternatives to, K&E's standard billing arrangements for this engagement.

14.    It is K&E's policy to charge its clients in all areas of practice for identifiable, non-overhead expenses incurred in connection with the client's case that would not have been incurred except for representation of that particular client.  It is also K&E's policy to charge its clients only the amount actually incurred by K&E in connection with such items.  Examples of such expenses include postage, overnight mail, courier delivery, transportation, overtime expenses, computer-assisted legal research, photocopying, airfare, meals, and lodging.

15.    To ensure compliance with all applicable deadlines in these chapter 11 cases, K&E utilizes the services of overtime secretaries.  K&E charges fees for these services pursuant to the Engagement Letter between K&E and the Debtors, which permits K&E to bill the Debtors for overtime secretarial charges that arise out of business necessity.   In addition, K&E

---

[6]    For example, like many of its peer law firms, K&E typically increases the hourly billing rate of attorneys and paraprofessionals twice a year in the form of:  (i) step increases historically awarded in the ordinary course on the basis of advancing seniority and promotion and (ii) periodic increases within each attorney's and paraprofessional's current level of seniority. The step increases do not constitute "rate increases" (as the term is used in the *Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases*, effective November 1, 2013.  As set forth in the Order, K&E will provide ten business days' notice to the Debtors, the U.S. Trustee, and any official committee before implementing any periodic increases, and shall file such notice with the Court.

professionals also may charge their overtime meals and overtime transportation to the Debtors consistent with prepetition practices.

16.    K&E currently charges the Debtors $0.13 per page for standard duplication in its offices in the United States.   Notwithstanding the foregoing and consistent with the Local Bankruptcy Rules, K&E will charge no more than $0.10 per page for standard duplication services in these chapter 11 cases.   K&E does not charge its clients for incoming facsimile transmissions.   K&E has negotiated a discounted rate for Westlaw computer-assisted legal research.   Computer-assisted legal research is used whenever the researcher determines that using Westlaw is more cost effective than using traditional (non-computer assisted legal research) techniques.

### Compensation Received by K&E from the Debtors

17.    K&E has provided, and agrees to continue to provide, assistance to the Debtors in accordance with the terms and conditions set forth in the Application and Engagement Letter. As set forth below, on September 13, 2012, the Debtors paid $1 million to K&E as a classic retainer, and the Debtors subsequently increased the classic retainer to $6 million.   A balance of approximately $4.23 million remained as of the Petition Date.   The foregoing retainer constitutes a "classic retainer" as defined in *In re Production Associates, Ltd.*, 264 B.R. 180, 184–85 (Bankr. N.D. Ill. 2001), and *In re McDonald Bros. Construction Inc.*, 114 B.R. 989, 997–99 (Bankr. N.D. Ill. 1990).   Moreover, pursuant to the Engagement Letter, the classic retainers are property of K&E and are not held in a separate account.   As such, K&E earned the classic retainers upon receipt, and, consequently, K&E placed the amounts into its general cash account. The amounts K&E has invoiced the Debtors against the classic retainer for professional

services and for the reimbursement of reasonable and necessary expenses incurred in connection therewith are set forth in the chart below.

18.     During the 90-day period before the Petition Date, K&E invoiced the Debtors, and the Debtors paid K&E, the following amounts:

| Type of Transaction | Billed Amount | Payment Date | Amount of Classic Retainer/Replenishment | Retainer Balance |
|---|---|---|---|---|
| Retainer Replenishment | | 2/12/2014 | $2,600,000.00 | $9,233,628,.56 |
| Invoice | $2,429,454.07 | 3/3/2014 | | $6,804,174.49 |
| Retainer Replenishment | | 3/10/2014 | $3,700,000.00 | $10,504,174.49 |
| Invoice | $3,528,600.01 | 3/21/2014 | | $6,975,574.48 |
| Retainer Replenishment | | 3/26/2014 | $3,000,000.00 | $9,975,574.48 |
| Retainer Replenishment | | 4/4/2014 | $2,600,000.00 | $12,575,574.48 |
| Invoice | $5,323,389.04 | 4/17/2014 | | $7,252,184.54 |
| Retainer Replenishment | | 4/23/2014 | $2,000,000.00 | $9,252,184.54 |
| Invoice | $4,524,493.08 | 4/28/2014 | | $4,727,691.46 |
| Invoice | $500,000 | 4/28/2014 | | $4,227,691.46 |

19.     As of the Petition Date, the Debtors do not owe K&E any amounts for legal services rendered before the Petition Date, although certain expenses and fees may have been incurred by K&E, but not yet applied to K&E's classic retainer.  Such amounts, if any, would be less than the balance of K&E's classic retainer as of the Petition Date.

20.     Pursuant to Bankruptcy Rule 2016(b), K&E has not shared nor agreed to share (a) any compensation it has received or may receive with another party or person, other than with the partners, associates, and contract attorneys associated with K&E or (b) any compensation another person or party has received or may receive.

### K&E's Disinterestedness

21.     In connection with its proposed retention by the Debtors in these chapter 11 cases, K&E undertook to determine whether it had any conflicts or other relationships that might cause it not to be disinterested or to hold or represent an interest adverse to the Debtors.  Specifically, K&E obtained from the Debtors and their representatives the names of individuals and entities

8

that may be parties in interest in these chapter 11 cases (the "Potential Parties in Interest") and such parties are listed on **Schedule 1** hereto.  K&E has searched on its electronic database for its connections to the entities listed on **Schedule 1** hereto.  To the extent that I have been able to ascertain that K&E has been retained within the last three years to represent any of the Potential Parties in Interest (or their affiliates, as the case may be) in matters unrelated to these cases, such facts are disclosed on **Schedule 2** attached hereto.

22.    K&E and certain of its partners and associates may have in the past represented, may currently represent, and likely in the future will represent, parties in interest in these chapter 11 cases in connection with matters unrelated (except as otherwise disclosed herein) to the Debtors and these chapter 11 cases.  K&E has searched on its electronic database for its connection to the entities listed on **Schedule 1** attached hereto.  The information listed on **Schedule 1** may have changed without our knowledge and may change during the pendency of these chapter 11 cases.  Accordingly, K&E will update this Declaration as necessary and when K&E becomes aware of additional material information.  The following is a list of the categories that K&E has searched:[7]

| Schedule | Category |
|---|---|
| 1(a) | Debtor Affiliates |
| 1(b) | Joint Venture Parties |
| 1(c) | Current and Recent Former Officers and Directors |
| 1(d) | Banks |
| 1(e) | Bondholders (Secured) |
| 1(f) | Bondholder (Unsecured) |
| 1(g) | Contractual Counterparties |
| 1(h) | Debtholders |
| 1(i) | DIP Parties |
| 1(j) | Indenture Trustees |
| 1(k) | Insurers |

---

[7]    K&E's inclusion of parties in the following Schedules is solely to illustrate K&E's conflict search process and is not an admission that any party has a valid claim against the Debtors or that any party properly belongs in the schedules or has a claim or legal relationship to the Debtors of the nature described in the schedules.

| Schedule | Category |
|----------|----------|
| 1(l) | Investment Banks |
| 1(m) | Landlords |
| 1(n) | Letters of Credit |
| 1(o) | Lienholders |
| 1(p) | Litigants |
| 1(q) | Litigants (Asbestos) |
| 1(r) | Potentially Responsible Parties |
| 1(s) | Professionals |
| 1(t) | Shareholders |
| 1(u) | Significant Customers |
| 1(v) | Significant Vendors |
| 1(w) | Surety Bonds |
| 1(x) | Taxing Authorities |
| 1(y) | Top 50 Unsecured Creditors |
| 1(z) | Unions |
| 1(aa) | United States Trustee and Court Personnel for the District of Delaware (and Key Staff Members) |
| 1(bb) | Unsecured Creditors' Committee Members and Proposed Advisors |
| 1(cc) | Utilities |

23.     To the best of my knowledge, (a) K&E is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code, as required by section 327(a) of the Bankruptcy Code, and does not hold or represent an interest adverse to the Debtors' estates and (b) K&E has no connection to the Debtors, their creditors, or other parties in interest, except as may be disclosed in this Declaration.

24.     Listed on **Schedule 2** to this Declaration are the results of K&E's conflicts searches of the above-listed entities.[8]  For the avoidance of doubt, K&E will not commence a cause of action in these chapter 11 cases against the parties listed on **Schedule 2** that are current or ongoing clients of K&E (including parties listed below under the "Specific Disclosures"

---

[8]     As referenced in **Schedule 2**, the term "current client" means a client to whom time was posted in the 12 months preceding the Petition Date.  As referenced in **Schedule 2**, the term "former client" means a client to whom time was posted between 12 and 36 months preceding the Petition Date.  As referenced in **Schedule 2**, the term "closed client" means a client to whom time was posted in the 36 months preceding the Petition Date, but for which the client representation has been closed.  As a general matter, K&E discloses connections with former clients or closed clients for whom time was posted in the last 36 months, but does not disclose connections if time was billed more than 36 months before the Petition Date.

section of this Declaration) unless K&E has an applicable waiver on file or first receives a waiver from such party allowing K&E to commence such an action.  To the extent that a waiver does not exist or is not obtained from such client and it is necessary for the Debtors to commence an action against that client, the Debtors will be represented in such particular matter by conflicts counsel.[9]

25.    Of the clients listed on **Schedule 2**, only six represented more than one percent of K&E's fee receipts for the twelve-month period ending on April 30, 2014:  Abbott Laboratories and recently spun-off company AbbVie, Inc. ("Abbott"); Bain Capital, LLC and certain of its affiliates and subsidiaries ("Bain"); BP p.l.c. and certain of its affiliates and subsidiaries ("BP"); Edison Mission Energy ("EME"); Samsung Electronics Co., Ltd. ("Samsung"); and the Debtors.[10]

26.    Abbott is a co-defendant in asbestos litigation filed against the Debtors.

27.    Certain subsidiaries/portfolio companies of Bain are parties in interest in these chapter 11 cases.  Specifically, Sungard Consulting Services and Toys R Us-Delaware, Inc. are contract counterparties of the Debtors; Securitas Security Services USA is a contractual counterparty; HD Supply Construction Ltd. is a significant vendor; Brenntag Southwest Inc. and Skillsoft Corp. are vendors; and various Sankaty Advisors LLC (an affiliate of Bain) entities, including Future Fund Board of Guardians, Nash Point CLO, Prospect Harbor Credit Partners LP, Qantas Superannuation Plan, Race Point II, CLO Limited, Race Point IV, CLO Limited, Sankaty Beacon Investment Partners LP, Sankaty Credit Opportunities (Offshore Master) IV LP,

---

[9]    Contemporaneously with the filing of the Application, the Debtors also are seeking to retain and employ Richards, Layton & Finger, P.A. as conflicts counsel pursuant to the *Debtors' Application for the Entry of an Order Authorizing the Retention and Employment of Richards Layton & Finger P.A. as Conflicts Counsel for the Debtors and Debtors in Possession Nunc Pro Tunc to the Petition Date.*

[10]    Specific percentages will be disclosed to the Office of the U.S. Trustee.

Sankaty Credit Opportunities III LP, Sankaty Credit Opportunities IV LP, Sankaty Credit Opportunities V A LP, Sankaty Credit Opportunities V A2 Master LP, Sankaty Credit Opportunities V B LP, Sankaty Drawbridge Opportunities LP, Sankaty High Income Partnership LP, Sankaty Managed Account (PSERS) LP, Sankaty Managed Account (TCCC) LP, Sankaty Managed Account (UCAL) LP, and Sankaty Senior Loan Fund LP, are lenders under the TCEH first lien credit agreement.

28.     Certain affiliates of BP are parties in interest in these chapter 11 cases. Specifically, BP America Production Co. and BP Energy Co. are contract counterparties of the Debtors; BP Energy Co. is also a significant customer of the Debtors; Amoco Chemical Corp., Arco Chemical Co., Atlantic Richfield Co., BP Products North America Inc., Nalco Chemical Co., and Welchem Inc. are potentially responsible parties with the Debtors with respect to certain potential environmental sites; and Arco Corp. is involved in an asbestos case with the Debtors as co-defendants.

29.     An affiliate of EME is a party in interest in these chapter 11 cases. Specifically, Edison Mission Marketing & Trading, Inc., is a contract counterparty.

30.     An affiliate of Samsung is a party in interest in these chapter 11 cases. Specifically, Samsung Austin Semiconductor LP is a contract counterparty.

31.     All prior and current K&E representations of Abbott, Bain, BP, EME, Samsung, and their affiliates and/or subsidiaries have been in matters unrelated to these chapter 11 cases. I do not believe these representations create conflicts, but have disclosed the connections out of an abundance of caution.

32.     The Anandarko Litigation Trust, which is not affiliated with Anadarko Petroleum Corp., represented more than one percent of K&E's fee receipts for the twelve-month period

ending April 30, 2014. The Anadarko Litigation Trust was created to file litigation against Anadarko Petroleum in connection to the Tronox, Inc. bankruptcy. The Anadarko Litigation Trust has no connection to these chapter 11 cases or the Debtors, but Anadarko Petroleum Corp. and certain of its affiliates are listed in **Schedule 1**. I have disclosed this information to avoid any confusion and out of an abundance of caution.

33. K&E's conflicts search of the parties in interest listed on **Schedules 1(a) – 1(cc)** (that K&E was able to locate using its reasonable efforts) reveals, to the best of K&E's knowledge, that those K&E attorneys and paraprofessionals who previously worked at other law firms that represented certain potential parties in interest in these chapter 11 cases have not worked on matters relating to the Debtors' restructuring efforts while at K&E.

34. Based on the conflicts search conducted to date and described herein, to the best of my knowledge, neither I, K&E, nor any partner or associate thereof, insofar as I have been able to ascertain, have any connection with the Debtors, their creditors, or any other parties in interest, their respective attorneys and accountants, the U.S. Trustee, Office of the United States Trustee for the District of Delaware (the "U.S. Trustee"), any person employed in the Office of the U.S. Trustee, or any Bankruptcy Judge currently serving on the United States Bankruptcy Court for the District of Delaware, except as disclosed or otherwise described herein.

35. K&E will review its files periodically during the pendency of these chapter 11 cases to ensure that no conflicts or other disqualifying circumstances exist or arise. If any new relevant facts or relationships are discovered or arise, K&E will use reasonable efforts to identify such further developments and will promptly file a supplemental declaration, as required by Bankruptcy Rule 2014(a).

36.     Generally, it is K&E's policy to disclose clients in the capacity that they first appear in a conflicts search.  For example, if a client already has been disclosed in this Declaration in one capacity (*e.g.*, a customer), and the client appears in a subsequent conflicts search in a different capacity (*e.g.*, a vendor), K&E does not disclose the same client again in supplemental declarations, unless the circumstances are such in the latter capacity that additional disclosure is required.

37.     From time to time, K&E has referred work to other professionals to be retained in these chapter 11 cases.  Likewise, certain such professionals have referred work to K&E.

38.     Certain insurance companies pay the legal bills of K&E clients.  Some of these insurance companies may be involved in these chapter 11 cases.  None of these insurance companies, however, are K&E clients as a result of the fact that they pay legal fees on behalf of K&E clients.

### Specific Disclosures

39.     As specifically set forth below and in the attached exhibits, K&E represents certain of the Debtors' creditors, equity security holders, or other parties in interest in ongoing matters unrelated to the Debtors and these chapter 11 cases.  None of the representations described herein are materially adverse to the interests of the Debtors' estates.  Moreover, pursuant to section 327(c) of the Bankruptcy Code, K&E is not disqualified from acting as the Debtors' counsel merely because it represents certain of the Debtors' creditors, equity security holders, or other parties in interest in matters unrelated to these chapter 11 cases.

**A.      Connections to Holders of Equity Interests in the Debtors.**

40.     As disclosed on **Schedule 2**, K&E currently represents, and in the past has represented, Goldman Sachs & Co., GS Capital Partners, and its affiliated investment funds and

14

portfolio companies (collectively, "Goldman Sachs"), Kohlberg Kravis Roberts & Co. LP, and

KKR Asset Management LLC (together with their other affiliates, "KKR"), and TPG Growth,

LLC, an affiliate of TPG Capital LP (together with their other affiliates, "TPG") on a variety of

matters unrelated to these chapter 11 cases. Goldman Sachs, KKR, and TPG indirectly own a

majority of the equity interests in EFH Corp. Additionally, certain Goldman Sachs and

KKR entities are members of the Debtors' lending syndicate as debtholders under the TCEH first

lien credit agreement and other secured and unsecured notes.

41.     During the chapter 11 cases, K&E will not represent Goldman Sachs, KKR, or

TPG adverse to the Debtors. Goldman Sachs, KKR, and TPG were represented by Wachtell,

Lipton, Rosen & Katz ("Wachtell") in connection with all prepetition restructuring discussions

and negotiations regarding the Debtors and their non-Debtor affiliates. Wachtell will continue to

represent Goldman Sachs, KKR, TPG, and their affiliated funds in connection with the Debtors'

chapter 11 cases. Moreover, out of an abundance of caution, each of KKR, TPG, and Goldman

has executed a waiver with regard to K&E's representation of the Debtors.

42.     All prior and current K&E representations of Goldman Sachs, KKR, and TPG

have been unrelated to these chapter 11 cases. I do not believe any prior or current

representation of Goldman Sachs, KKR, or TPG creates a conflict, but have disclosed the

connections out of an abundance of caution.

43.     K&E represented Mason Capital Management LLC ("Mason") in connection with

its co-investment in the Buyout. Mason Capital SPV I, L.P., an affiliate of Mason, contributed a

minority equity interest toward the Buyout as a part of Texas Energy Future Holdings Limited

Partnership, which in turn now owns substantially all of EFH Corp. K&E's representation of

Mason in connection with this matter has been terminated and time was last billed to the matter

in December 2007.    Mason and its affiliates are also collectively a member of an ad hoc

committee of first lien debtholders of TCEH LLC and its Debtor subsidiaries (the "Ad Hoc

Committee of TCEH First Lien Creditors").    While K&E continues to represent Mason in

matters unrelated to these chapter 11 cases, K&E does not represent Mason in these chapter 11

cases or any matters related to the Debtors.    I do not believe that K&E's prior or current

representations of Mason create a conflict, but have disclosed the connection out of an

abundance of caution.

**B.**     **Connections to Officers and Directors.**

44.     As disclosed below and in **Schedule 2** attached hereto, K&E currently represents,

and in the past has represented, certain affiliates, subsidiaries, and entities associated with certain

of the Debtors' officers and directors.    I do not believe that K&E's current and prior

representation of the affiliates, subsidiaries, and entities associated with certain officers and

directors precludes K&E from being a disinterested party under the Bankruptcy Code.

45.     David Bonderman, who serves as a director of EFH Corp. and is a founding

member of TPG, one of the Debtors' majority equityholders, is also a director with General

Motors Company ("GM").    K&E currently represents and in the past has represented GM on a

variety of matters unrelated to these chapter 11 cases.    K&E also represents Mr. Bonderman in

certain of those matters.    K&E's current and prior representations of GM and Mr. Bonderman are

unrelated to these chapter 11 cases or the Debtors.    I do not believe K&E's representations of

Mr. Bonderman or GM create a conflict, but have disclosed the connection out of an abundance

of caution.

46.     Nora Mead Brownell was a director of non-Debtor affiliate Oncor Electric

Delivery Company LLC ("Oncor") until February 12, 2014.    As discussed in the First Day

16

Declaration, K&E has not and does not represent Oncor in any matter related to these chapter 11 cases. Ms. Brownell is also a director of Comverge, Inc., which is owned by H.I.G. Capital, LLC. K&E represents H.I.G. and Ms. Brownell in a matter unrelated to these chapter 11 cases or the Debtors. I do not believe this representation creates a conflict, but have disclosed the connection out of an abundance of caution.

47.    Charles H. Cremens, a Manager at EFIH, has also served as an officer or on the boards of directors of other active and inactive K&E clients, including some involved in litigation. As a result, K&E also represented Mr. Cremens as a co-defendant in a number of matters. All representations of Mr. Cremens or the companies he serves are unrelated to these chapter 11 cases or the Debtors. I do not believe K&E's current or prior representations of clients for which Mr. Cremens serves in management and director capacities creates a conflict, but have disclosed the connection out of an abundance of caution.

48.    Monte E. Ford was a director of non-Debtor affiliate Oncor until February 25, 2014, and is the executive chairman and president of Aptean. K&E represents Aptean in matters unrelated to these chapter 11 cases or the Debtors. I do not believe this representation creates a conflict, but have disclosed the connection out of an abundance of caution.

49.    Gregory B. Kelly is an officer of the Debtor Luminant Energy Trading California Company and was formerly an officer with Calpine Corporation ("Calpine") and National Energy & Gas Transmission, Inc. ("National Energy"). K&E served as Debtors' counsel for both Calpine and National Energy. K&E's representations of Calpine and National Energy were unrelated to these chapter 11 cases or the Debtors. I do not believe these representations create a conflict, but have disclosed the connections out of an abundance of caution.

50.     Paul Keglevic is Executive Vice President, Chief Financial Officer, and Co-Chief Restructuring Officer to EFH Corp., TCEH LLC, and EFIH as well as serving as a director and in senior managerial roles for several other Debtors.  Mr. Keglevic was a partner at Arthur Andersen, a former client of K&E.  K&E's former representation of Arthur Andersen is unrelated to these chapter 11 cases or the Debtors.  I do not believe K&E's prior representation of Arthur Andersen while Mr. Keglevic was a partner creates a conflict, but have disclosed the connection out of an abundance of caution.

51.     Jeffrey Liaw is a director for EFH Corp., a manager for EFIH, and a director for non-Debtor affiliates Oncor Electric Delivery Holdings Company LLC and Oncor.  Mr. Liaw was once employed by Bain and served as client contact to K&E.  K&E's current and prior representations of Bain are unrelated to these chapter 11 cases or the Debtors.  I do not believe K&E's representation of Bain while Mr. Liaw was employed there creates a conflict, but have disclosed the connection out of an abundance of caution.

52.     Marc S. Lipschultz is a director of EFH Corp. and an officer of The Boyd's Collection, Ltd.  K&E acted as debtors' counsel in The Boyd's Collection's chapter 11 filing. K&E's representation of The Boyd's Collection was unrelated to these chapter 11 cases or the Debtors. I do not believe this representation creates a conflict, but have disclosed the connection out of an abundance of caution.

53.     Hugh E. Sawyer, who serves as a director of TCEH LLC, has also served as an officer or on the boards of directors of other active and inactive K&E clients.  Each of these other matters has been unrelated to these chapter 11 cases or the Debtors. I do not believe that any of K&E's current and prior representations of clients for which Mr. Sawyer serves in

management and director capacities creates a conflict, but have disclosed the connection out of an abundance of caution.

54.     Lisa M. Winston is a former officer of one of the Debtors. K&E represents Ms. Winston in matters unrelated to these chapter 11 cases and the Debtors. I do not believe this representation of Ms. Winston creates a conflict, but have disclosed the connection out of an abundance of caution.

**C.     Connections to Other Entities.**

55.     As disclosed below and in **Schedule 2** attached hereto, certain of the Debtors and their non-Debtor affiliates or other entities associated with the Debtors are creditors of entities that K&E currently represents or has represented in bankruptcy proceedings or post-effective date claims processes. Similarly, certain parties in interest in these chapter 11 cases are current or former K&E restructuring clients. Collectively, these entities include: AMF Bowling Worldwide; Appleseed's Intermediate Holdings; Calpine Corp.; Chemtura Corp.; Citadel Broadcasting Corp.; Conexant Holdings, Inc.; Dex One Corp.; The Dolan Company; EME; FJ Management, Inc.; GGPLP, LLC; ION Media Networks; Kimball Hill Homes, Inc.; Lear Corp; Masonite Corp.; Motors Liquidation Co. (f/k/a General Motors); Muzak L.L.C.; Nebraska Book Co.; Neff Corp.; Physiotherapy Associates; Sbarro LLC; Sbarro, Inc.; Stallion Oilfield Services, Ltd.; TMP Directional Marketing LLC; TOUSA, Inc.; U.S. Concrete, Inc.; W.R. Grace & Company; and YRC Worldwide. Additionally, Bank of America, an interested party in these chapter 11 cases, owned approximately 40% of Maxcom Telecomunicaciones SAB de CV ("Maxcom"). K&E represented Maxcom through effectuation of its plan of reorganization in its now-concluded chapter 11 case. K&E will not represent the Debtors, the Debtors' non-Debtor affiliates, or other entities associated with the Debtors in any matter related to other K&E clients'

bankruptcy proceedings. Similarly, K&E will not represent any of its other restructuring clients against the Debtors in any of its other clients' restructuring matters. K&E's other chapter 11 representations are unrelated to these chapter 11 cases or the Debtors. I do not believe these representations create a conflict, but have disclosed the connections out of an abundance of caution.

56.     K&E represented Davidson Kempner Partners ("DKP") in connection with DKP's debt holdings in certain foreign, non-Debtor subsidiaries of the Debtors (collectively, "TXU Europe") that are in foreign receivership and/or liquidation proceedings. K&E advised DKP in relation to TXU Europe's administration proceedings and general UK insolvency advice. K&E's representation of DKP in connection with this matter has been terminated and time was last billed to the matter in April 2008. K&E does not represent TXU Europe in connection with these chapter 11 cases or otherwise. Upon information and belief, the Debtors do not retain any economic interest in TXU Europe. Further, K&E's prior representation of DKP with respect to TXU Europe is unrelated to these chapter 11 cases. I do not believe this prior representation of DKP creates a conflict, but have disclosed the connection out of an abundance of caution.

57.     K&E represents, and in the past has represented, Fidelity Investments and certain of its affiliates (collectively, "Fidelity") in a number of matters unrelated to the Debtors. Fidelity holds a significant portion of multiple Debtors' funded indebtedness. K&E's representation of Fidelity is unrelated to these chapter 11 cases and the Debtors. I do not believe K&E's representation of Fidelity creates a conflict, but have disclosed the connection out of an abundance of caution.

58.    K&E represented GFI Energy Group ("GFI"), an affiliate of Oaktree Capital Management, LP ("Oaktree"), in a debt review of the TCEH Debtors.  K&E's representation of GFI in connection with this matter has been terminated and time was last billed to the matter in December 2010.  Oaktree is also a member of the Ad Hoc Committee of TCEH First Lien Creditors.  While K&E continues to represent Oaktree in matters unrelated to these chapter 11 cases, K&E does not currently represent Oaktree in these chapter 11 cases or currently represent Oaktree on any matters related to the Debtors.  I do not believe that K&E's past or current representations of GFI or Oaktree create a conflict, but have disclosed the connections out of an abundance of caution.

59.    K&E represents, and in the past has represented, the Government of Singapore Investment Corp. Pte. Ltd. ("GIC") and its affiliates.  One such affiliate, GIC Special Investments Ltd., is a member of the investment group Texas Transmission Investment LLC ("Texas Transmission").  Texas Transmission owns approximately 20% of Oncor.  K&E's representations of GIC and its affiliates are unrelated to this investment.  I do not believe K&E's representation of GIC and its affiliates creates a conflict, but have disclosed the connection out of an abundance of caution.

60.    K&E represented Lazard, Freres & Co. LLC ("Lazard") in its capacity as financial advisor to the Special Transactions Committee of the Board of Directors and the Board of Directors of the predecessor of EFH Corp. in connection with the Buyout.  In this regard, K&E advised Lazard in connection with Lazard's preparation of its opinions about the fairness of the consideration paid to unaffiliated shareholders in the Buyout and the summaries of those opinions in the predecessor company's proxy disclosures to its shareholders. Lazard's opinions expressly did not address the solvency or fair value of the predecessor company or any other

entity, including under any state, federal or other applicable laws relating to bankruptcy, insolvency or similar matters. K&E did not represent the Board of Directors or any of its committees or the Debtors' predecessor entities in connection with the Buyout. K&E's representation of Lazard in connection with this matter has been terminated and time was last billed to the matter in October 2007. I do not believe K&E's representation of Lazard creates a conflict, but have disclosed the connection out of an abundance of caution.

61.    K&E represents, and in the past has represented, certain members of the Creditors' Committee or their affiliates and certain of the Creditors' Committee's proposed advisors, including: ADA Carbon Solutions, LLC and its affiliate ADA-ES, Inc., The Bank of New York Mellon, Lazard and certain of its affiliates, and FTI Consulting, Inc. K&E's current and former representations of the members of the Creditors' Committee and their proposed advisors listed above are unrelated to these chapter 11 cases or, except as discussed above, the Debtors. I do not believe these representations create a conflict, but have disclosed the connections out of an abundance of caution.

62.    K&E represents, and in the past has represented, other members of certain ad hoc committees in these chapter 11 cases (the "Ad Hoc Debt Committees"), including: Anchorage Capital Croup LLC; Angelo Gordon & Co.; Apollo Global Management LLC; Arrowgrass Capital Partners LLP; Avenue Capital Group; Blue Mountain Capital Management L.P.; Centerbridge Group; Cyrus Capital Partners LP; Fortress Investment Group; King Street Capital Management LP; J.P. Morgan Chase & Co.; Magnetar Capital LLC; Marathon Asset Management, LP; Morgan Stanley & Co. Inc.; Oak Hill Advisors LP; Och-Ziff Capital Management; P. Schoenfeld Asset Management LP; Taconic Capital Advisors; York Capital Management LP; and certain of their direct or indirect affiliates. K&E's current and former

representations of the members of the Ad Hoc Debt Committees listed above are unrelated to these chapter 11 cases or the Debtors. I do not believe these representations create a conflict, but have disclosed the connections out of an abundance of caution.

63.     K&E represents, and in the past has represented, other bondholders (the "Bondholders") that are not otherwise affiliated with any Ad Hoc Debt Committee including: Abry Partners II, LLC; Aegon USA Investment Management, LLC; APG Asset Management US, Inc.; Aviva Investors North America, Inc.; Bluebay Asset Management LLP; BMO Asset Management, Inc.; Carlson Capital, L.P.; Contrarian Funds, LLC; Danske Bank; DDJ Capital Management, LLC; DuPont Capital Management Corp.; Jeffries Capital; New York Life Insurance Co.; Nuveen Asset Management, LLC; Peak6 Investments, LP; Pine River Capital Management LP; Principal Global Investors, LLC; Redwood Capital Management, LLC; Regiment Capital Advisors, LP; Salient Partners, LP; Standard Bank PLC; Thrivent Asset Management, LLC; USAA Investment Management Co.; Vector Capital Corp.; and certain of their direct or indirect affiliates. K&E's current and former representations of the Bondholders listed above are unrelated to these chapter 11 cases or the Debtors. I do not believe these representations create a conflict, but have disclosed the connections out of an abundance of caution.

64.     As noted above, the Debtors have, from time to time, had discussions with parties about potentially acquiring certain portions of the Debtors' business. K&E represented two parties (the "Potential Acquirers") in these potential acquisitions.[11] K&E has not represented a Potential Acquirer for approximately five years. I do not believe these prior representations of

---

[11]    The Potential Acquirers' names have not been disclosed herein because of confidentiality concerns.

the Potential Acquirers create a conflict, but have disclosed the connections out of an abundance of caution.

65.     K&E represented TransData, Inc. in patent litigation against various parties, including Oncor. The case is *TransData, Inc. v. Centerpoint Energy Houston Electric, LLC, et. al.*, No. 10-CV-557 (E.D. Tex. 2011) (the "TransData Litigation"). The TransData Litigation was subsequently transferred to the Western District of Oklahoma and consolidated with *In re Transdata, Inc., Smart Meters Patent Litigation*, MDL No. 2309. K&E ultimately ceased its involvement in the TransData Litigation in 2013. The TransData Litigation is unrelated to these chapter 11 cases. I do not believe this prior representation of TransData creates a conflict, but have disclosed the connection out of an abundance of caution.

**D.     Other Chapter 11 Professionals.**

66.     As disclosed in **Schedule 2** attached hereto, K&E currently represents, and in the past has represented, certain affiliates, subsidiaries, and entities associated with various professionals that the Debtors seek to retain in connection with these chapter 11 cases. All prior and current K&E representations of these professionals have been in matters unrelated to the Debtors and these chapter 11 cases. K&E has not represented and will not represent any such professionals in connection with any matter in these chapter 11 cases.

67.     The Debtors intend to seek approval of their retention of Alvarez and Marsal North America, LLC ("A&M Advisory") as their restructuring advisor during the pendency of these chapter 11 cases. K&E represents Alvarez & Marsal, Inc. ("A&M Inc."), Alvarez & Marsal Capital, LLC ("A&M Capital"), A&M Capital Partners, LP ("A&M Fund"), and related entities in matters unrelated to the Debtors and these chapter 11 cases. A&M Inc., the majority owner of A&M Advisory's parent company, Alvarez & Marsal Holdings, LLC ("A&M

Holdings"), holds a significant interest in A&M Capital. A&M Capital is an investment vehicle that indirectly serves as the general partner of A&M Fund that will make private equity investments in companies. In addition, subject to the parameters discussed in the K&E Attorney and Employee Investments section of this Declaration, K&E person(s) have invested in A&M Fund as an Investment Fund. Each K&E person that has invested in A&M Fund holds less than one percent of A&M Fund.

68.    In addition, Stephen Kotarba, a former K&E associate, is employed by A&M in the position of Managing Director, Paul Kinealy, a former K&E contract attorney, is employed by A&M in the position of Director, and Holden Bixler, a former K&E associate/of counsel, is employed by A&M in the position of consultant. While employed by K&E, Mr. Kotarba's, Mr. Kinealy's, and Mr. Bixler's work was unrelated to the Debtors and these chapter 11 cases. I do not believe these connections to A&M create a conflict, but have disclosed them out of an abundance of caution.

69.    Goldman Sachs, KKR, and TPG hired Blackstone Advisory Partners ("Blackstone") as their financial advisor in these chapter 11 cases. K&E represents, and in the past has represented, Blackstone in matters unrelated to these chapter 11 cases or the Debtors. K&E does not and will not represent Blackstone in connection with these chapter 11 cases. I do not believe that K&E's current and prior representations of Blackstone create a conflict, but have disclosed the connection out of an abundance of caution.

70.    The Debtors intend to seek approval of their retention of Deloitte & Touche LLP ("Deloitte") as independent auditor. K&E currently represents Deloitte and certain of its direct or indirect affiliates in matters unrelated to these chapter 11 cases or the Debtors. K&E does not and will not represent Deloitte in connection with these chapter 11 cases. I do not believe that

K&E's current and prior representations of Deloitte create a conflict, but have disclosed the connection out of an abundance of caution.

71.    The Debtors have retained, with the approval of the court, Epiq Bankruptcy Solutions, LLC ("Epiq") as their notice and claims agent pursuant to 28 U.S.C. 156(c).  The Debtors further intend to seek the retention of Epiq as administrative advisor pursuant to 11 U.S.C. 327(a).  K&E currently represents, and in the past has represented, Epiq and certain of its direct or indirect affiliates in matters unrelated to these chapter 11 cases or the Debtors.  K&E does not and will not represent Epiq in connection with these chapter 11 cases.  I do not believe that K&E's current and prior representations of Epiq create a conflict, but have disclosed the connection out of an abundance of caution.

72.    The Debtors intend to seek approval of their retention of Ernst & Young LLP ("E&Y") as tax consultant.  E&Y is also a tax consultant for an ad hoc committee of EFIH unsecured noteholders.  K&E currently represents, and in the past has represented, E&Y and certain of its direct or indirect affiliates in matters unrelated to these chapter 11 cases or the Debtors.  K&E does not and will not represent E&Y in connection with these chapter 11 cases.  I do not believe that K&E's current and prior representations of E&Y create a conflict, but have disclosed the connection out of an abundance of caution.

73.    The Debtors intend to seek approval of their retention of Evercore Group, LLC ("Evercore") as their investment banker.  K&E currently represents, and in the past has represented, Evercore and certain of its direct or indirect affiliates in matters unrelated to these chapter 11 cases or the Debtors.  K&E does not and will not represent Evercore in connection with these chapter 11 cases.  I do not believe that K&E's current and prior representations of Evercore create a conflict, but have disclosed the connection out of an abundance of caution.

26

74.    The Debtors intend to seek approval of their retention of KPMG, LLP ("KPMG") as their accounting and tax advisor. K&E currently represents, and in the past has represented, KPMG and certain of its direct or indirect affiliates in matters unrelated to these chapter 11 cases or the Debtors. K&E does not and will not represent KPMG in connection with these chapter 11 cases. I do not believe that K&E's current and prior representations of KPMG create a conflict, but have disclosed the connection out of an abundance of caution.

75.    The Debtors intend to seek approval of their retention of PricewaterhouseCoopers LLP ("PwC") as internal auditor. PwC is also a tax advisor to the Ad Hoc Committee of TCEH First Lien Creditors. K&E currently represents, and in the past has represented, PwC and certain of its direct or indirect affiliates in matters unrelated to these chapter 11 cases. K&E does not and will not represent PwC in connection with these chapter 11 cases. I do not believe that K&E's current and prior representations of PwC create a conflict, but have disclosed the connection out of an abundance of caution.

76.    K&E currently represents, and in the past has represented, certain professionals hired by the Ad Hoc Committees or their members to assist them in these chapter 11 cases including: Centerview Partners; Kramer Levin Naftalis & Frankel LLP; Moelis & Co.; Navigant Consulting, Inc.; Perella Weinberg Partners; Peter J. Solomon Company Ltd.; Rothschild, Inc.; SAIC Energy Environment & Infrastructure LLC; and their direct or indirect affiliates. K&E's current and prior representations of these professionals are unrelated to these chapter 11 cases or the Debtors. I do not believe the representations of these professionals create a conflict, but have disclosed the connections out of an abundance of caution.

E.    **K&E Attorney and Employee Investments.**

77.    From time to time, K&E partners, of counsel, associates, and employees personally invest in mutual funds, retirement funds, private equity funds, venture capital funds, hedge funds, and other types of investment funds (the "Investment Funds"), through which such individuals indirectly acquire a debt or equity security of many companies, one of which may be one of the Debtors, often without K&E's knowledge. Each K&E person generally owns substantially less than one percent of such Investment Fund, does not manage or otherwise control such Investment Fund, and has no influence over the Investment Fund's decision to buy, sell, or vote any particular security. The Investment Fund is generally operated as a blind pool, meaning that when the K&E persons make an investment in the Investment Fund, he, she, or they do not know what securities the blind pool Investment Fund will purchase or sell, and have no control over such purchases or sales.

78.    From time to time one or more K&E partners and of counsel voluntarily choose to form an entity (a "Passive-Intermediary Entity") to invest in one or more Investment Funds. Such Passive-Intermediary Entity is composed only of persons who were K&E partners and of counsel at the time of the Passive-Intermediary Entity's formation (although some are now former K&E partners and of counsel). Participation in such a Passive-Intermediary Entity is wholly voluntary and only a portion of K&E's partners and of counsel choose to participate. The Passive-Intermediary Entity generally owns substantially less than one percent of any such Investment Fund, does not manage or otherwise control such Investment Fund, and has no influence over the Investment Fund's decision to buy, sell, or vote any particular security. Each Investment Fund in which a Passive-Intermediary Entity invests is operated as a blind pool, so that the Passive-Intermediary Entity does not know what securities the blind pool Investment

Funds will purchase or sell, and has no control over such purchases or sales. And, indeed, the Passive-Intermediary Entity often arranges for statements and communications from certain Investment Funds to be sent solely to a blind administrator who edits out all information regarding the identity of the Investment Fund's underlying investments, so that the Passive-Intermediary Entity does not learn (even after the fact) identity of the securities purchased, sold, or held by the Investment Fund.

79.     From time to time, K&E partners, of counsel, associates, and employees personally directly acquire a debt or equity security of a company which may be one of the Debtors. K&E has a long-standing policy prohibiting attorneys and employees from using confidential information that may come to their attention in the course of their work. In this regard, all K&E attorneys and employees are barred from trading in securities with respect to which they possess confidential information.

**F.     Other Disclosures.**

80.     K&E currently represents Major Oak Power LLC ("Major Oak"), an affiliate of Blackstone, as a potential purchaser of certain assets being sold by Optim Energy, LLC ("Optim") in its chapter 11 case (the "Optim Assets"). The Debtors also decided to participate in the sale of the Optim Assets. I do not believe that K&E's involvement with the sale of the Optim Assets creates a conflict.

81.     A group of K&E attorneys (such K&E attorneys, the "K&E-Major Oak Team") have advised Major Oak in connection with the sale of the Optim Assets, and the following members of the K&E-Major Oak Team, Jack Bernstein, Andrew Calder, P.C., Jeanne T. Cohn-Connor, Vicki Hood, Todd Maynes, P.C., Scott D. Price, and Brian E. Schartz, all current K&E partners, and Timothy C. Mohan, a current K&E associate, have also billed time to the

Debtors' chapter 11 cases on matters unrelated to the Debtors' potential participation in the sale of Optim Assets.

82.     A separate group of K&E attorneys, Chad J. Husnick, Anthony V. Sexton, Aparna Yenamandra, Teresa Lii, and I, advised the Debtors on their potential participation in the sale of the Optim Assets (the "K&E-EFH Team"). K&E has established screening procedures with respect the sale of the Optim Assets, and no information, files, or materials related to the sale of the Optim Assets will be shared among K&E attorneys assisting the Debtors in the sale of the Optim Assets, on one hand, and Major Oak, on the other hand. As part of these screening procedures, K&E's conflicts department drafted a memorandum to the members of the K&E-EFH Team directing them as follows:  (a) not to discuss any confidential aspects of the K&E-EFH Team's representation of the Debtors in the sale of the Optim Assets with the K&E-Major Oak Team; (b) to take all measures necessary or appropriate to prevent access by the K&E-Major Oak Team to the files or other information of the Debtors for the sale of the Optim Assets; and (c) to restrict circulation of these files or any other information or materials concerning the sale of the Optim Assets to those with a clear "need to know." K&E's conflicts department also drafted a memorandum to the members of the K&E-Major Oak Team directing them as follows:  (a) not to discuss any confidential aspects of the K&E-Major Oak Team's representation of Major Oak in the sale of the Optim Assets with the K&E-EFH Team; (b) to take all measures necessary or appropriate to prevent access by the K&E-EFH Team to the files or other information of the Debtors for the sale of the Optim Assets; and (c) to restrict circulation of these files or any other information or materials concerning the sale of the Optim Assets to those with a clear "need to know."

83.    Importantly, the above-referenced screening procedures applied to both the K&E-Major Oak Team and the K&E-EFH Team as it relates to the potential purchase of Optim Assets. As a result, none of the K&E attorneys on the K&E-Major Oak Team advised the Debtors on their potential participation in the sale of the Optim Assets, and none of the K&E attorneys on the K&E-EFH Team advised Major Oak, or any other potential purchaser, of the Optim Assets.

84.    On June 27, 2014, the Debtors filed the Motion of Energy Future Holdings Corp., *et al.*, for Entry of an Order Authorizing, but not Requiring, the TCEH Debtors (A) to Participate in a Competitive Auction, and (B) if Selected as the Winning Bidder, to Consummate a Proposed Acquisition [D.I. 1225] (together with the supporting declaration of Michael Carter [D.I. 1226], the "EFH Bid Motion"), seeking authority to potentially submit a bid to acquire the Optim Assets.

85.    Following the filing of the EFH Bid Motion, K&E had discussions with the U.S. Trustee regarding K&E's concurrent representation of the Debtors and Major Oak in the potential acquisition of Optim Assets. Following the discussions and to address the concerns of the U.S. Trustee, K&E took the following actions:

- K&E removed all K&E attorneys that represent the Debtors in their chapter 11 cases from the K&E-Major Oak Team, specifically, Jack Bernstein, Andrew Calder, P.C., Jeanne T. Cohn-Connor, Vicki Hood, Todd Maynes, P.C., Scott D. Price, and Brian E. Schartz, all current K&E partners, and Timothy C. Mohan, a current K&E associate;

- K&E transitioned all work related to the Debtors' potential acquisition of the Optim Assets going forward to Gibson, Dunn, Crutcher LLP, as proposed special corporate and litigation counsel, and Bifferato LLC, as proposed Delaware counsel;

- K&E agreed to write off all time it has billed the Debtors with respect to the potential acquisition of the Optim Assets; and

- K&E agreed to file this amended Declaration.

86.     The Debtors, ultimately, withdrew the EFH Bid Motion on July 14, 2014 [D.I. 1564].

87.     Major Oak has also engaged K&E in a potential acquisition of certain assets related to the Optim Assets owned by a third-party that has a contract with the Debtors (the "Additional Assets").  K&E has not and will not represent Major Oak in any matters adverse to the Debtors in connection with the sale of the Additional Assets.  K&E will not represent the Debtors in any matters related to the sale of the Additional Assets.  K&E also has implemented the same screening procedures discussed above in paragraph 82 with respect to the sale of such Additional Assets.  Moreover, no K&E attorney representing the Debtors in their chapter 11 cases will represent Major Oak in the sale of the Additional Assets.

88.     Ryan Dattilo, a current K&E associate that has performed and may continue to perform work on this matter, was a law clerk for the Honorable Mary F. Walrath of the United States Bankruptcy Court for the District of Delaware from August 2010 to September 2011.  Mr. Dattilo began working at K&E in October 2011, and had no connection with the Debtors' chapter 11 cases while working for the court.  I do not believe that Mr. Dattilo's work for the court creates a conflict, but have disclosed the connection out of an abundance of caution.

89.     Devin DeBacker, a current K&E associate that has not performed work on this matter in the past but may do so in the future, was a law clerk for the Honorable D. Brooks Smith of the U.S. Court of Appeals for the Third Circuit from September 2012 to September 2013.  Mr. DeBacker began working at K&E in May 2010, and had no connection with the Debtors' chapter 11 cases while working for the court.  I do not believe that Mr. DeBacker's work for the court creates a conflict, but have disclosed the connection out of an abundance of caution.

32

90.    Neal Paul Donnelly, a current K&E associate that has not performed work on this matter in the past but may do so in the future, was a law clerk for the Honorable Brendan L. Shannon of the United States Bankruptcy Court for the District of Delaware from September 2011 to September 2012.  Mr. Donnelly began working at K&E in October 2012, and had no connection with the Debtors' chapter 11 cases while working for the court.  I do not believe that Mr. Donnelly's work for the court creates a conflict, but have disclosed the relationship out of an abundance of caution.

91.    Michael Glick, a current K&E associate that has performed prepetition work on this matter and may continue to perform work on this matter, was a law clerk for the Honorable Thomas M. Hardiman of the U.S. Court of Appeals for the Third Circuit from September 2008 to September 2009.  Mr. Glick began working at K&E in May 2006, and had no connection with the Debtors' chapter 11 cases while working for the court.  I do not believe that Mr. Glick's work for the court creates a conflict, but have disclosed the connection out of an abundance of caution.

92.    Rachel Goldstein, a current K&E associate that has performed prepetition work on this matter and may continue to perform work on this matter, was a law clerk for the Honorable Thomas I. Vanaskie of the U.S. Court of Appeals for the Third Circuit from September 2011 to August 2012.  Ms. Goldstein began working at K&E in May 2010, and had no connection with the Debtors' chapter 11 cases while working for the court.  I do not believe that Ms. Goldstein's work for the court creates a conflict, but have disclosed the connection out of an abundance of caution.

93.    Max Schlan, a current K&E associate that has performed and will continue to perform work on this matter, was a law clerk for the Honorable Kevin J. Carey, the Honorable Christopher S. Sontchi, and the Honorable Mary F. Walrath of the United States Bankruptcy

Court for the District of Delaware from August 2012 to September 2013. Mr. Schlan began working at K&E in October 2013, and had no connection with the Debtors' chapter 11 cases while working for the court. I do not believe that Mr. Schlan's work for the court creates a conflict, but have disclosed the connection out of an abundance of caution.

94.     Steven Wilson, n.k.a. Drew Wilson, a current K&E associate that has not performed work on this matter in the past but may do so in the future, was a law clerk for the Honorable Sue L. Robinson of the U.S. District Court for the District of Delaware from September 2010 to September 2011. Mr. Wilson began working at K&E in September 2011, and had no connection with the Debtors' chapter 11 cases while working for the court. I do not believe that Mr. Wilson's work for the court creates a conflict, but have disclosed the connection out of an abundance of caution

95.     The spouse of Ilana S. Saltzbart, an associate at K&E, is Chief of the Waste Enforcement Branch at the United Stated Environmental Protection Agency. Out of an abundance of caution, K&E has instituted formal screening measures to screen Ms. Saltzbart from all aspects of K&E's representation of the Debtors.

96.     James H.M. Sprayregen, a partner at K&E, worked as an attorney at K&E from July 1990 until June 2006 and rejoined the firm in December 2008. From June 2006 until December 2008, prior to rejoining the firm, Mr. Sprayregen was co-head of the restructuring group of Goldman Sachs Americas, where he advised U.S. and international clients in restructuring and distressed situations. Certain affiliates of Goldman Sachs are holders of equity interests in the Debtors. As described above, Goldman Sachs is a K&E client and disclosed on **Schedule 2** attached hereto. I do not believe that Mr. Sprayregen's prior employment at

Goldman Sachs creates a conflict in these chapter 11 cases, but have disclosed the connection out of an abundance of caution.

97.    The spouse of K&E partner Helen E. Witt, P.C. is a managing director of JPMorgan Chase & Co. (together with its affiliates, "JPMorgan").  Various JPMorgan entities either hold bonds of the Debtors or their non-Debtor affiliates, are contractual counterparties of the Debtors or their non-Debtor affiliates, are lenders to the Debtors or their non-Debtor affiliates, or are vendors of the Debtors or their non-Debtor affiliates.  Out of an abundance of caution, K&E has instituted formal screening measures to screen Ms. Witt from all aspects of K&E's representation of the Debtors.

98.    The spouse of David Zhang, a partner at K&E, is general counsel, Asia Pacific for Marriott International ("Marriott").  Marriott is contract counterparty of the Debtors.  Out of an abundance of caution, K&E has instituted formal screening measures to screen Mr. Zhang from all aspects of K&E's representation of the Debtors.

99.    Furthermore, prior to joining K&E, certain K&E attorneys represented clients adverse to K&E's current and former restructuring clients.  Certain of these attorneys (the "Screened K&E Attorneys") will not perform work in connection with K&E's representation of the Debtors and will not have access to confidential information related to the representation.  K&E's formal ethical screen provides sufficient safeguards and procedures to prevent imputation of conflicts by isolating the Screened K&E Attorneys and protecting confidential information.

100.    Under K&E's screening procedures, K&E's conflicts department distributes a memorandum to all K&E attorneys and legal assistants directing them as follows: (a) not to discuss any aspects of K&E's representation of the Debtors with the Screened K&E Attorneys; (b) to conduct meetings, phone conferences, and other communications regarding K&E's

representation of the Debtors in a manner that avoids contact with the Screened K&E Attorneys;
(c) to take all measures necessary or appropriate to prevent access by the Screened K&E
Attorneys to the files or other information related to K&E's representation of the Debtors; and
(d) to avoid contact between the Screened K&E Attorneys and all K&E personnel working on
the representation of the Debtors unless there is a clear understanding that there will be no
discussion of any aspects of K&E's representation of the Debtors.  Furthermore, K&E already
has implemented procedures to block the Screened K&E Attorneys from accessing files and
documents related to the Debtors that are stored in K&E's electronic document managing
system.

101.    I adopt all statements, pleadings, and declarations that have been signed by
Edward O. Sassower, P.C. in the Debtors' chapter 11 cases.

### Affirmative Statement of Disinterestedness

102.    Based on the conflicts search conducted to date and described herein, to the best
of my knowledge and insofar as I have been able to ascertain, (a) K&E is a "disinterested
person" within the meaning of section 101(14) of the Bankruptcy Code, as required by section
327(a) of the Bankruptcy Code, and does not hold or represent an interest adverse to the Debtors'
estates and (b) K&E has no connection to the Debtors, their creditors, or other parties in interest,
except as may be disclosed herein.

*[Remainder of page intentionally left blank.]*

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Dated:  July 31, 2014

Respectfully submitted,

Edward O. Sassower
      as President of Edward O. Sassower,
      P.C., as Partner of Kirkland & Ellis
      LLP; and as Partner of Kirkland & Ellis
      International LLP