**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>ENERGY FUTURE HOLDINGS CORP., *et al.*,[1]<br><br>      Debtors. | Chapter 11<br><br>Case No. 14-10979 (CSS)<br><br>Jointly Administered<br><br>Related Docket Item: 1676<br><br>Hearing Date: August 13, 2014 at 9:30 a.m.<br>Objection Deadline: August 6, 2014 at 4:00 p.m. |

**STATEMENT OF UMB BANK, N.A., AS INDENTURE TRUSTEE, REGARDING
MOTION OF EFH NOTES INDENTURE TRUSTEE FOR APPOINTMENT
OF AN OFFICIAL COMMITTEE OF UNSECURED CREDITORS
FOR ENERGY FUTURE HOLDINGS CORP.**

UMB Bank, N.A., as indenture trustee ("UMB"), files this statement in response to the Motion of EFH Notes Indenture Trustee Pursuant to 11 U.S.C. §§ 1102(a)(1) and 105 for Appointment of an Official Committee of Unsecured Creditors for Energy Future Holdings Corp. (the "Motion") [Docket No. 1676].[2] In response to the Motion, UMB states as follows:

**BACKGROUND**

UMB serves as the successor indenture trustee for: (i) the 11.25%/12.25% senior toggle notes due 2018 (the "EFIH Senior Toggle Notes") and (ii) the 9.75% senior notes due 2019 (the "9.75% Notes," and, together with the EFIH Senior Toggle Notes, the "EFIH Unsecured Notes"), both of which were issued by Energy Future Intermediate Holding Company LLC ("EFIH") and EFIH Finance Inc. ("EFIH Finance" and together with EFIH, the "EFIH Issuers"). The combined aggregate outstanding principal amount of the EFIH Unsecured Notes is

---

[1] The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, for which the debtors have requested joint administration, a complete list of the debtors and the last four digits of their federal tax identification Numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' proposed claims and noticing agent at http://www.efhcaseinfo.com.

$1,568,249,000, which constitutes, by far, the largest component, if not all, of the pool of unsecured claims against the estates of the EFIH Issuers.

UMB sought to serve as a member of an official committee of unsecured creditors in these Chapter 11 Cases, timely submitted a completed questionnaire to the Office of the United States Trustee requesting such appointment, and attended the committee formation meeting, which was held on May 12, 2014.

On May 13, 2014, the Office of the United States Trustee filed its Notice of Appointment of Committee of Unsecured Creditors (the "Notice of Appointment") [Docket No. 420], which appointed an official committee of unsecured creditors (the "Committee") comprised entirely of creditors with claims against Texas Competitive Electric Holdings Company LLC ("TCEH LLC") and its parent Energy Future Competitive Holdings Company LLC ("EFCH" and together with TCEH LLC and EFCH's direct and indirect subsidiaries, the "TCEH Debtors") and EFH Corporate Services Company. In a footnote to the Notice of Appointment, the United States Trustee expressly stated that the Committee would not represent the interests of unsecured creditors on the "E-Side" of the Debtors' corporate structure: rather, "[t]he committee represents the interests of the unsecured creditors of only the TCEH Debtors and EFH Corporate Services Company and of no other debtors." Thus, as indenture trustees for unsecured debt issued by EFH and the EFIH Issuers (together, the "E-Side Debtors"), neither AST nor UMB were appointed to the Committee.

On July 23, 2014, AST filed the Motion, requesting that the Court enter an order directing the United States Trustee to appoint an official committee of unsecured creditors for Debtor Energy Future Holdings Corp. ("EFH").

---

[2] Capitalized terms used but not defined herein have the meaning given them in the Motion.

2

**STATEMENT REGARDING MOTION FOR APPOINTMENT OF EFH COMMITTEE**

UMB understands the concerns expressed by AST in the Motion. After all, the lack of an official committee to represent the interests of unsecured creditors on the E-Side, including billions of dollars of unsecured note claims, was unexpected and seems somewhat unusual. Nevertheless, insofar as AST's Motion seeks an official committee only for EFH, it does not directly implicate UMB or its noteholders, whose debt is owed only by EFIH and EFIH Finance.

While UMB thus does not need to take a position on AST's Motion, the Motion does raise the obvious question of whether an official committee ought to be appointed for the EFIH Issuers or, alternatively, whether one joint committee should be appointed for EFH and the EFIH Issuers. UMB thus files this Statement to address that potential issue.

In short, UMB does not believe it is necessary at this time to appoint an official committee of unsecured creditors for EFIH and/or EFIH Finance.[3] This is because, in addition to active unsecured noteholder participation, UMB assumed and undertook much of the due diligence, analysis and negotiation which an E-Side committee would normally undertake. Almost immediately after the appointment of the Committee (which excluded and does not represent E-Side creditors), UMB consulted with the Debtors and other major E-Side parties about options for the most economical and efficient, and least costly and dilatory, manner to provide necessary participation in the case and adequate representation of E-Side creditor interests. This was particularly pressing insofar as there were pending a slew of immediate dispositive motions and settlements (described further below) relating to EFIH debt with no committee in place to evaluate such motions and settlements. UMB and the Debtors discussed various possible alternatives, and concluded that the most cost-effective and least disruptive

---

[3] UMB reserves its right to seek any appropriate relief in the future.

3

4826-9710-2620.1

alternative was for UMB to undertake the immediate added responsibilities in relation to EFIH creditors, with the understanding that UMB would further retain Delaware counsel (Klehr Harrison Harvey Branzburg LLP) and a financial advisor (Gavin/Solmonese LLC) and would seek (with the Debtors) authority to enable the E-Side Debtors to advance and make current payments of the reasonable fees and expenses of UMB and its counsel and financial advisors. This was reflected in the fact that, *inter alia*, the Debtors proposed including such payments in the proposed order relating to the Second Lien DIP Financing Motion. [Docket No. 1230 at ¶35]. However, the Second Lien DIP Financing Motion and order have been withdrawn.

UMB recognizes that this may seem to be an unusual request.[4] However, these Chapter 11 Cases are extraordinary not only because of their magnitude and complexity, but because so many significant issues have been presented for immediate consideration and action, particularly on the E-Side. The Debtors' efforts to move swiftly toward reorganization resulted in the Debtors seeking relief on a number of complex and potentially dispositive issues affecting the E-Side Debtors at the very outset of these Chapter 11 Cases, such as: the EFIH First Lien DIP Financing Motion [Docket No. 74]; the EFIH Settlements Motion [Docket No. 472]; the EFIH Second Lien DIP Financing Motion [Docket No. 477] (now withdrawn); and the Motion for Entry of an Order Authorizing the RSA Debtors to Assume the Restructuring Support Agreement [Docket No. 505] (now withdrawn).

In addition, UMB's duty is to act as a "prudent person" under the Trust Indenture Act of 1939 and the indentures for the EFIH Unsecured Notes.[5] In accordance with these duties, UMB

---

[4] UMB recognizes that the issue of payment of its fees and expenses may not be ripe at this time, but reserves its right to raise the issue again at an appropriate time.

[5] Each of the relevant indentures provides that the E-Side Unsecured Notes Indenture Trustees are subject to the "prudent man" standard. *See, e.g.*, EFIH Senior Toggle Notes Indenture at §7.01 ("If an Event of Default has occurred and is continuing, the Trustee shall exercise such of the rights and powers vested in it by this Indenture, and use the same degree of care and skill in its exercise, as a prudent person would exercise or use under the

4

has participated energetically in these Chapter 11 Cases, and, as discussed above, has engaged the services of counsel and financial advisors to help perform its duties. This has included significant review, evaluation, discovery and/or negotiation of the terms of the Debtors' major proposals that would impact UMB's noteholders generally and as a class. UMB has also intervened in the first lien makewhole litigation.

Payment of the reasonable fees and expenses of UMB and its professionals on a current basis would essentially only affect the timing of such payment and does not prejudice creditors or other stakeholders. This is because section 7.07 of each of the relevant indentures mandates the payment of the trustee's reasonable fees and expenses and, in fact, specifically provides that such fees and expenses are secured by a charging lien against any distribution ultimately made on account of the EFIH Unsecured Notes. There is little doubt that EFIH will eventually make substantial distributions to the EFIH Unsecured Noteholders. Thus, even if only looking to assert its charging lien, the reasonable fees and expenses of UMB and its professionals will not only be easily covered, but will likely only amount to a small percentage of those eventual distributions. Such fees and expenses also are commonly provided for in chapter 11 plans.

---

circumstances in the conduct of such person's own affairs."). In addition, section 315(c) of the Trust Indenture Act of 1939 imposes similar "prudent man" duties upon the E-Side Unsecured Notes Indenture Trustees. 15 U.S.C. § 77ooo. The Trust Indenture Act establishes strong public policy in favor of the existence and compensation of indenture trustees. *See, e.g.*, Trust Indenture Act § 302 (15 U.S.C. § 77bbb) ("it is hereby declared that the national public interest, and the interest of investors in notes, … are adversely affected— (1) when the obligor fails to provide a trustee to protect and enforce the rights and to represent the interests of such investors …").

4826-9710-2620.1

**CONCLUSION**

Insofar as these Chapter 11 Cases have proceeded for in excess of three months and UMB and its professionals have actively participated and "climbed the learning curve", the addition of another representative committee at the EFIH and/or EFIH Finance levels – to the extent such possibility is implicated by the Motion – does not seem necessary at this time.

Dated: Wilmington, DE  
       August 6, 2014

By: /s/ Raymond H. Lemisch  
Raymond H. Lemisch  
KLEHR HARRISON HARVEY BRANZBURG LLP  
919 Market Street, Suite 1000  
Wilmington, Delaware 19801  
Tel: (302) 426-1189  
Fax: (302) 426-9193  
E-mail: rlemisch@klehr.com

   - and

Harold L. Kaplan  
Mark F. Hebbeln  
Lars A. Peterson  
FOLEY & LARDNER LLP  
321 North Clark Street, Suite 2800  
Chicago, Illinois 60654-5313  
Tel: (312) 832-4500  
Fax: (312) 832-4700  
E-mail: hkaplan@foley.com  
       mhebbeln@foley.com  
       lapeterson@foley.com

Attorneys for UMB BANK, N.A., as indenture trustee