**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| *In re*: | : | Chapter 11 |
| | : | |
| ENERGY FUTURE HOLDINGS | : | Case No. 14-10979 (CSS) |
| CORP., *et al.*, | : | |
| | : | Jointly Administered |
| | : | |
| Debtors. | : | **Hearing Date: August 13, 2014, at 9:30 a.m.** |
| | : | **Objections Due: August 6, 2014 at 4:00 p.m.** |
| | | **Deadline extended for the U. S. Trustee.** |

**UNITED STATES TRUSTEE'S RESPONSE TO MOTION OF
EFH NOTES INDENTURE TRUSTEE FOR APPOINTMENT OF
EFH CORP. OFFICIAL COMMITTEE OF UNSECURED CREDITORS (D. I. 1676)**

In support of her Response to the Motion of the EFH Notes Indenture Trustee Pursuant to 11 U.S.C. §§ 1102(a)(1) and 105 for Appointment of an Official Committee Of Unsecured Creditors for Energy Future Holdings Corp. (D. I. 1676) (the "Motion"),[1] Roberta A. DeAngelis, the United States Trustee for Region 3, by counsel, respectfully states as follows:

## I.  INTRODUCTION

The Motion for the appointment of a committee of EFH creditors is premature and may be unnecessary. While the appointment of a second creditors' committee, or the addition of creditors to the existing creditors committee, is within the discretion of the U.S. Trustee, the facts and circumstances surrounding AST's request requires additional time for the U.S. Trustee to evaluate whether the EFH creditor body is adequately represented. In addition, given the known facts to date, the U.S. Trustee is concerned with the motives underlying the Motion and whether the Motion was filed for a proper purpose. Accordingly, the U.S. Trustee needs additional time

---

[1] Unless otherwise defined herein, capitalized terms shall have the same meaning and context as those capitalized terms included in the Motion.

to ascertain the facts, take discovery, and to be able to decide, among other things, whether a second committee or some other resolution is appropriate.

## II. JURISDICTION AND PROCEDURAL HISTORY

1.      The Court has jurisdiction to hear this Response.

2.      Pursuant to Section 586 of title 28, U.S. Code, the U.S. Trustee is charged with overseeing the administration of Chapter 11 cases filed in this District. 11 U.S.C. § 586. Under Section 586 and Section 307 of the Bankruptcy Code, Congress charged the U.S. Trustee with broad responsibilities in Chapter 11 cases and the standing to rise and be heard on any issue in any case or proceeding. 11 U.S.C. § 307; *see also United States Trustee v. Columbia Gas Sys., Inc. (In re Columbia Gas Sys., Inc.),* 33 F.3d 294, 295-96 (3d Cir. 1994) (the U.S. Trustee has "public interest standing" under 11 U.S.C. § 307, which goes beyond mere pecuniary interest).

3.      Under Section 1102 of the Bankruptcy Code, the U.S. Trustee is authorized to appoint a committee of creditors holding unsecured claims, and may appoint additional committees of creditors or of equity holders as the U.S. Trustee deems appropriate. 11 U.S.C. § 1102(a)(1). Section 586(a)(1)(E) requires that the U.S. Trustee monitor creditors' committees once they have been appointed. 28 U.S.C. § 586(a)(1)(E).

## III. FACTS

*A.      Background.*

4.      On April 29, 2014, the Debtors commenced these Chapter 11 cases.

5.      According to Paul Keglevic, the Executive Vice President, Chief Financial Officer, and Co-Chief Restructuring Officer of EFH Corp., the Debtors are the largest generator, distributor, and retail electricity provider in Texas. *See* Declaration of Paul Keglevic, Executive Vice President, Chief Financial Officer, and Co-Chief Restructuring Officer of Energy Future

Holdings Corp., e*t al.*, in Support of First Day Motions dated April 29, 2014 ("Keglevic

Declaration") at ¶ 6. (D.I. 98).

**B.      The Debtors' Businesses.**

6.      EFH conducts substantially all of its business operations in the electricity market

overseen by the Electric Reliability Council of Texas, which covers the majority of Texas. *Id.*

The Texas electricity market, in turn, is subject to oversight and regulation by the Public Utility

Commission of Texas. *Id.*

7.      EFH has approximately 9,100 employees, approximately 5,700 of whom are

employed by the Debtors, in several distinct business units, namely electricity generation,

mining, wholesale electricity sales, and commodity risk management and trading activities. *Id.*

**C.      The Corporate Structure.**

8.      EFH Corp. is the parent company of each of the entities that compose EFH,

including: (a) the entities composing TCEH (including TCEH's parent company, EFCH); (b)

EFIH; (c) non-debtor Oncor Holdings (which is 100% owned by EFIH), Oncor, (which is

approximately 80% owned by Oncor Holdings), and certain subsidiaries and affiliates of Oncor

Holdings and Oncor; and (d) certain of EFH Corp.'s other direct and indirect debtor and non-

debtor subsidiaries. *Id.* at ¶ 19.

9.      EFIH is a holding company and a direct, wholly-owned subsidiary of EFH Corp.

*Id.* at ¶ 53. EFIH's primary asset is its 100% ownership of Oncor Holdings. *Id.* at ¶ 53. EFIH has

no active business operations, and its capital structure is premised on the value derived from its

indirect ownership of Oncor. *Id.* at ¶ 53.

10.      EFCH is a Delaware limited liability company and the direct parent of TCEH. *Id.*

at ¶ 1. TCEH is composed of: (a) the TCEH Debtors, including TCEH LLC; TCEH LLC's direct

parent, EFCH; and most of the entities that compose TCEH, including the entities that compose

Luminant's electricity generation, mining, commodity risk management and trading activities,

and wholesale operations, TXU Energy and the other entities that compose the Debtors' retail

operations, and TCEH Finance, Inc.; and (b) certain other entities that are not obligated on the

TCEH Debtors' funded indebtedness. *Id.* at ¶ 22. TCEH's business operations also depend on

certain services that are provided by EFH Corporate Services Company, a subsidiary of EFH

Corp., which acts as a shared-services center for Luminant and TXU Energy. *Id.* at ¶ 22.

11.    EFH Corporate Services Company provides a host of shared services, primarily to

TCEH (*i.e.*, Luminant and TXU Energy) and, to a lesser extent, EFH Corp., EFIH, and Oncor.

*Id.* at ¶ 45.

**D.    The Creditors' Committee.**

12.    On April 30, 2014, the U.S. Trustee solicited the 50 largest creditors from the top

50 consolidated list of creditors as provided by the Debtors.  On May 7, 2014, the U.S. Trustee

solicited the 20 largest creditors of each of EFH Corp., EFIH, EFCH, EFH Corporate Services,

and TCEH for interest in serving on an official committee of unsecured creditors.

13.    On May 12, 2014, the U.S. Trustee convened a meeting (the "Formation

Meeting") to form an official committee of unsecured creditors in these cases. At the conclusion

of the Formation Meeting, during which the U.S. Trustee's counsel interviewed various creditors

who had returned questionnaires and indicated a willingness to serve on a creditors' committee,

the U.S. Trustee appointed a seven-member creditors' committee for the TCEH-related debtors,

EFCH, and EFH Corporate Services. (the "Creditors' Committee").

14.    The members of the Creditors' Committee include:

- Pension Benefit Guaranty Corporation

4

- HCL America, Inc.

- The Bank of New York Mellon

- Law Debenture Trust Company of New York

- Holt Texas LTD, d/b/a Holt Cat

- ADA Carbon Solutions (Red River)

- Wilmington Savings Fund Society

Notice of Appointment of Official Committee of Unsecured Creditors. (D.I. 420).

15.    The U.S. Trustee was unable to form a creditors' committee for EFIH or EFH

Corp. and their related debtors due to a lack of interest.

**E.    The RSA and the Second-Lien EFIH DIP Financing.**

16.    Contemporaneous with the filing of the petitions in these cases, the Debtors filed

a Restructuring Support Agreement (the "RSA") (D.I. 98, Ex. D), which, among other things,

provided for a reorganized EFH to retain ownership of a reorganized EFIH, pay holders of

secured claims at EFIH in full (with the issue of a make-whole claim to be subsequently settled

or resolved), and a separate TCEH as a stand-alone entity through a "tax-free" deconsolidation

transaction. Motion to Assume the Restructuring Support Agreement at ¶ 3. (D. I. 505). Fidelity

Investments and certain holders of EFIH Unsecured Notes signed the RSA. Keglevic Decl. at ¶¶

156.

17.    A key component of the restructuring under the RSA was the EFIH Second Lien

DIP (D. I. 1230), pursuant to which the EFIH Debtor had sought authority to borrow $1.9 billion

in cash, and another $95 million in the form of a Closing Fee to be used, along with cash on hand

and other borrowings, to repay the EFIH Second Lien Notes. EFIH Second Lien DIP Motion at ¶

4-5 (D. I. 477).

5

18.      Following several days of hearings concerning the Debtors' request for approval of the EFIH Second Lien DIP, and weeks of document review and depositions, the Court provided tentative comments, indicating that the Court was not prepared to approve the EFIH Second Lien DIP Facility as presented.

19.      Subsequently, the Debtors withdrew their motion for approval of the EFIH Second Lien DIP and terminated the RSA. *See* Debtors' Notice of (A) Termination of Restructuring Support Agreement, (B) Withdrawal of Second Lien Opt-In, and (C) Withdrawal of EFIH Settlement Motion, EFIH Second Lien DIP Motion, and Restructuring Support Agreement Assumption Motion. (D. I. 1697).

***E.      Request for a Second Creditors' Committee.***

20.      On July 17, 2014, the U.S. Trustee received a letter from counsel to American Stock Transfer & Trust Company, LLC ("AST") (the "AST Letter"),  requesting that the U. S. Trustee appoint a second official committee of unsecured creditors for EFH Corp. A copy of the AST Letter is annexed as **Exhibit A**. AST is the indenture trustee under several indentures for the EFH Unsecured Legacy Notes, the EFH Unexchanged Notes (the 9.75% Senior Notes Indenture and the 10% Senior Notes Indenture), and the EFH LBO Notes (the 10.875% Senior Notes and 11.25%/12% Senior Toggle Notes).[2]

21.      The reasons for AST's request include:

_____

[2] Upon information and belief, the total amount of non-insider debt held under the EFH indentures aggregates approximately $650 million. Of this amount, Fidelity holds the vast majority (approximately 73% of the EFH Notes). Upon information and belief, the remainder of non-EFIH insider debt is approximately $174 million, *i.e.*, notes held by parties other than EFIH insiders or Fidelity. In addition, upon information and belief, there is an *ad hoc* group of EFH Legacy Noteholders (the "EFH Legacy Ad Hoc Group") that is comprised of Contrarian Capital Management, LLC and Deutsche Investment Management Americas Inc.

- These cases, though initially styled as a simple balance-sheet restructuring, are among the largest and most complex ever filed in this District and they raise numerous complicated legal and financial issues involving the tax treatment of proposed transactions, the treatment of intercompany claims, and the valuation of the Debtors' energy generation and regulated transmission businesses;

- The RSA was, at the time, most likely going to be terminated;[3]

- There is no appointed fiduciary looking out for the interests of EFH Corp.'s creditors;

- Although Fidelity, the 73% majority EFH Noteholder, was a signatory to the RSA, neither AST, nor any holders of the EFH Notes (other than the Fidelity-related funds) were signatories to, or bound by, the RSA, and AST has not received, and does not expect to receive, any direction from funds affiliated with Fidelity, and;

- Section 1102 is mandatory and requires that the U. S. Trustee appoint such a committee.

## F.    *Subsequent Developments.*

### I.    <u>AST – EFH Notes Indenture Trustee</u>.

22.    In response to AST's request for a second creditors' committee, the U.S.

Trustee's counsel, by letter dated July 30, 2014, informed AST's counsel that the U.S. Trustee

was willing to re-solicit unsecured creditors willing to serve on an EFH Corp. creditors'

committee. A copy of the U.S. Trustee counsel's July 30th letter is annexed hereto as **Exhibit B.**

The U.S. Trustee requested that AST provide a list, along with addresses and contact

information, of the beneficial holders and/or owners of the EFH Notes, excluding insiders, and

---

[3] The RSA was officially terminated on July 25, 2014 after the date of both the July 17th Letter and the filing of the Motion.

any additional information that AST would like to provide to assist the U.S. Trustee in her

solicitation. *U.S. Trustee counsel's letter at ¶* 2. The U.S. Trustee also requested that AST

adjourn the Motion to September 16, 2014, to permit the U.S. Trustee to conduct this second

solicitation. *U.S. Trustee counsel's letter at ¶* 3. As set forth below, AST declined the U.S.

Trustee's adjournment request.

      **II.**     **UMB – EFIH Notes Indenture Trustee.**

    23.     On July 31, 2014, the U.S. Trustee's counsel engaged in two telephone

conversations with Harold L. Kaplan, counsel to UMB Bank, the indenture trustee for the EFIH

unsecured Notes. During these teleconferences, and other calls with various parties, including

AST's counsel and the Debtors' counsel, there appeared to be an implied, if not express,

suggestion that the U.S. Trustee may not need to appoint a second creditors' committee if the

expenses of AST and UMB, including attorneys' fees, would be paid by the Debtors.

    24.     In addition, during one of these teleconferences, AST's counsel stated that it had

not received direction from any of the EFH Noteholders to seek a second creditors' committee,

but rather, was seeking the creditors' committee based upon its own fiduciary duties as the

indenture trustee.

    25.     On July 31, 2014, Mr. Kaplan wrote to the U.S. Trustee setting forth his

suggestion for an alternative to the U.S. Trustee's appointment of a second "E-Side" creditors'

committee, consistent with his comments during the above-referenced teleconferences; that is,

that a mechanism be established to reimburse and pay the expenses of UMB and AST. *See*

*Kaplan Letter dated July 31, 2014,* ¶ 4, p. 1. A copy of the Kaplan Letter dated July 31, 2014 is

annexed hereto as **Exhibit C**.

26.     In his letter, Mr. Kaplan also states that immediately after the U.S. Trustee's

appointment of the Creditors' Committee in these cases, counsel for UMB and AST consulted

with the Debtors and other "major E-Side parties" to discuss the ". . . options for the most

economical and efficient, and least costly and dilatory, manner to provide necessary participation

in the case and adequate representation of E-Side creditor interests." *Kaplan Letter,* ¶ 2, p. 3. Mr.

Kaplan also represents that prior to AST's filing of the Motion, counsel for AST and UMB

discussed with the Debtors, and other parties, the ability of AST and UMB to be compensated on

a "current basis." *Kaplan Letter,* ¶ 2, p. 3.

27.     On August 6, 2014, UMB filed a response to the Motion expressly stating that

UMB did not believe it was necessary to appoint an EFIH creditors' committee because: (i)

UMB assumed and undertook much of the due diligence, analysis and negotiation which an E-

Side committee would normally undertake and (ii) after consulting with the Debtors and other

major "E-Side parties", UMB concluded that the most cost-effective and least disruptive

alternative to a second creditors' committee was for UMB to undertake the immediate added

responsibilities in relation to EFIH creditors, with the understanding that the Debtors would pay

UMB's expenses, including the fees incurred by Foley Lardner (Mr. Kaplan's firm),

Gavin/Solmonese and Klehr Harrison. (D. I. 1760).[4]

### IV. RESPONSE

#### A.  *Governing Law*

28.     Section 1102 (a) of the Bankruptcy Code provides as follows:

---

[4] It is not clear if UMB's response is actually a request for approval of UMB's professionals fees and expenses on a "current basis". To the extent that UMB is making such a request, UMB would need to file and serve a motion in accordance with the Federal Rules of Bankruptcy Procedure and the applicable local rules of this Court.

(a)(1) Except as provided in paragraph (3), as soon as practicable after the order for relief under chapter 11 of this title, the United States trustee shall appoint a committee of creditors holding unsecured claims and may appoint additional committees of creditors or of equity security holders as the United States trustee deems appropriate.

(2) On request of a party in interest, the court may order the appointment of additional committees of creditors or of equity security holders if necessary to assure adequate representation of creditors or of equity security holders. The United States trustee shall appoint any such committee.

***

(4) On request of a party in interest and after notice and a hearing, the court may order the United States trustee to change the membership of a committee appointed under this subsection, if the court determines that the change is necessary to ensure adequate representation of creditors or equity security holders.

11 U.S.C. § 1102 (a)(1), (2) and (4).

29.     Subsection (b)(1) provides that "[a] committee of creditors appointed under subsection (a) of this section shall ordinarily consist of the persons, willing to serve, that hold the seven largest claims against the debtor of the kinds represented on such committee, or of the members of a committee organized by creditors before the commencement of the case under this chapter, if such committee was fairly chosen and is representative of the different kinds of claims to be represented. 11 U.S.C. § 1102 (b)(1).

30.     Section 1102 of the Bankruptcy Code directs and authorizes the U.S. Trustee to appoint an official committee of unsecured creditors and provides the U.S. Trustee with the discretion to appoint additional committees. "On request of a party in interest, the court may order the appointment of additional committees . . . if necessary to assure adequate representation of creditors or of equity security holders." 11 U.S.C. § 1102(a)(2).

10

31.     There is no *per se* rule that separate committees need to be appointed for each separate debtor. *See In re Enron Corp.*, 279 B.R. 671, 691 (Bankr. S.D.N.Y. 2002) (court declined to adopt a *per se* rule that it was improper to appoint single creditors' committee where: (i) affairs of the respective debtors appear to be substantially entangled, (ii) assets have been transferred from one debtor to another in transactions that are not arms-length, and (iii) creditors of debtors have dealt with such debtor as one economic unit).

32.     Bankruptcy Rule 2020 provides for judicial review of the U.S. Trustee's acts or failures to act. It must be stressed, however, that rules of court do not create substantive rights that do not already exist elsewhere. *In re Barney's, Inc*., 197 B.R. 431, 438 (Bankr. S.D.N.Y. 1996) (citing 28 U.S.C. § 2075); *In re Columbia Gas Sys., Inc*., 133 B.R. 174, 176 (Bankr. D. Del. 1991). The Committee Note to this Rule expressly states that the Rule "is not intended to limit the discretion of the United States trustee, provided that the United States trustee's act is authorized by, and in compliance with, the Code, title 28, these rules, and other applicable law." The appointment of individual members of a creditors' committee is eminently a matter committed to the discretion of the United States Trustee.

## B.  The U. S. Trustee Requires Additional Time to Consider AST's Request for a Second Creditors' Committee.

33.     In these cases, the U. S. Trustee duly formed and appointed a committee of unsecured creditors for EFCH, TCEH and EFH Corporate Services. The committee was formed after solicitation of not merely the creditors listed on the Debtor's consolidated top 50 creditor list but after the solicitation of the top 20 creditor lists for EFH, EFIH, EFCH, TCEH and EFH Corporate Services. Thus there is no issue concerning the propriety of the U.S. Trustee's solicitation of creditors for the Creditors' Committee in these cases. However, given the

information and statements of counsel concerning both AST's request for a second creditors'

committee and UMB's response to the Motion, where UMB's indenture trustee expressly states

that its expenses be paid in lieu of the appointment of a committee, the U.S. Trustee needs

sufficient time to evaluate the Motion.  To do so properly, the U.S. Trustee may need to conduct

discovery in this contested matter. See Fed. R. Bankr. P. 9014.

34.     The relief requested in the Motion should be adjourned because the appointment

of a second creditors committee at this time is premature. In fact, it may be unnecessary. The

U.S. Trustee requires additional time to consider, in her discretion, whether (i) a second

committee is warranted, (ii) EFH and/or EFIH creditors should be appointed to the Creditors'

Committee, (iii) EFH or EFIH creditors are willing and eligible to serve on a committee and

discharge their fiduciary duties, and (iv) the Motion was filed for a proper purpose. Accordingly,

the U. S. Trustee requests that the Motion be adjourned for 30 days without prejudice to seek

additional time.[5]

---

[5] The U.S. Trustee reserves any and all rights, remedies, duties and obligations to, *inter alia*, complement, supplement, augment, alter and/or modify this Response, to file and Objection to the Motion, to take any such other and further actions, file any other objections or motions as may be required or necessary, to conduct any and all discovery as may be deemed necessary or as may be required and to assert such other and further grounds as may become apparent upon such factual discovery and to take whatever other actions are deemed necessary and appropriate.

WHEREFORE, the U.S. Trustee respectfully requests that this Court (a) adjourn the

Motion for 30 days and (b) grant such other and further relief as this Court deems just and

appropriate.

Respectfully submitted,

**ROBERTA A. DeANGELIS**
**UNITED STATES TRUSTEE**

By: */s/Richard L. Schepacarter*
        Richard L. Schepacarter
        Andrea B. Schwartz
        Trial Attorneys
        U.S. Department of Justice
        Office of the United States Trustee
        J. Caleb Boggs Federal Building
        844 N. King Street, Suite 2207, Lockbox 35
        Wilmington, DE 19801
        (302) 573-6491 (Tel.)
        (302) 573-6497 (Fax)
        Email: Richard.Schepacarter@usdoj.gov
Dated: August 7, 2014        Email: Andrea.B.Schwartz@usdoj.gov