Exhibit "A"



**NIXON PEABODY**

NIXON PEABODY LLP
ATTORNEYS AT LAW

NIXONPEABODY.COM
@NIXONPEABODYLLP

Richard C. Pedone
T 617-345-1305
rpedone@nixonpeabody.com

100 Summer Street
Boston, MA 02110-2131
617-345-1000



July 17, 2014

**_FEDERAL EXPRESS AND ELECTRONIC MAIL_**

Roberta A. DeAngelis
United States Trustee
United States Department of Justice
Office of the United States Trustee
J. Caleb Boggs Federal Building
844 King Street, Suite 2207, Lockbox 35
Wilmington, DE 19801
Attention:  Andrea B. Schwartz, Trial Attorney
            Richard L. Schepacarter, Trial Attorney

**RE:  In re Energy Future Holdings Corp. Case No 14-10979 (CSS) - Official Committee of Unsecured Creditors**

Dear Andrea and Richard:

     As you know we represent American Stock Transfer & Trust Company, LLC ("AST") as the successor trustee to The Bank of New York Mellon Trust Company, N.A. (in such capacity, the "Indenture Trustee") under the Indentures listed on Schedule I attached hereto.[1] We write to request that the U.S. Trustee appoint an official committee of unsecured creditors for Energy Future Holdings Corp. ("EFH").

     These cases, though initially styled as a simple balance sheet restructuring, are among the largest and most complex ever filed in the District of Delaware and they raise numerous complicated legal and financial issues involving the tax treatment of proposed transactions, the treatment of intercompany claims, and the valuation of the Debtors' energy generation and regulated transmission businesses.  While these cases were commenced with a pre-negotiated plan memorialized in the Restructuring Support Agreement (the "RSA"), which was executed by holders of a significant amount of debt at many levels of the Debtors' complex capital

---

[1] Capitalized terms used but not defined herein shall have the mean ascribed to them in the *Declaration of Paul Keglevic in Support of First Day Motions* [ECF 98].

15060231.2

Andrea B. Schwartz
Richard L. Schepacarter
July 17, 2014
Page 2

NIXON PEABODY LLP
ATTORNEYS AT LAW

NIXONPEABODY.COM
@NIXONPEABODYLLP

structure, the motion to approve that RSA has been adjourned indefinitely and it has been reported that the RSA has been, or soon will be, terminated by one or more parties to the agreement. Clearly these cases are not progressing according to "plan."

In the midst of this chaos there is no fiduciary appointed pursuant to the Bankruptcy Code looking out for the interests of EFH creditors. Section 1102 of the Bankruptcy Code requires the U.S. Trustee to appoint a committee or committees with responsibility for each Debtor's bankruptcy case. Your office Trustee, in its appointment of the Unsecured Creditors' Committee of only the TCEH Debtors and EFH Corporate Services Company, made clear that the appointed committee would not represent the interests of the EFH unsecured creditors. (*See Notice of Appointment of Committee of Unsecured Creditors* [D.I. 420]). AST is eligible and in fact well positioned to serve on a committee of unsecured EFH creditors. Neither the Indenture Trustee, nor any holders of the EFH Notes (other than certain funds affiliated with FMR LLC (collectively, "Fidelity")) were signatories to or bound by the RSA. The Indenture Trustee has not received, and does not expect to receive, any direction from funds affiliated with Fidelity. In addition, we are aware of at least three unsecured creditors with claims against EFH that have expressed interest in serving on a committee of unsecured EFH creditors.

Accordingly, we request the U.S. Trustee fulfill its statutory mandate under the Bankruptcy Code to ensure adequate representation of each of the Debtors' creditors and appoint a committee to represent unsecured creditors of EFH. We would be happy to work with you to the extent that you are not able to identify other potential committee members.

Time is of the essence in light of the complexities and pace of this case. We believe, in these circumstances, that the Bankruptcy Code mandates the prompt appointment of a committee. Accordingly, we respectfully request that you contact us by the end of the day tomorrow to discuss the formation of a second committee to fulfill this important fiduciary function. If we do not receive a prompt positive response, we will bring our request directly to the Court.

Sincerely,

Richard C. Pedone

Cc: Edward O. Sassower, Esq.

15060231.2

## Schedule I

EFH Unsecured Legacy Notes issued pursuant to:

1. Indenture dated as of November 1, 2004, between Energy Future Holdings Corp.("EFH"), as issuer, and the Indenture Trustee, as trustee, as amended and supplemented by the Officer's Certificate, dated as of November 26, 2004, the Supplemental Indenture, dated as of July 1, 2010, and the Second Supplemental Indenture, dated as of April 15, 2013 (collectively, the "Series P Indenture").

2. Indenture dated as of November 1, 2004, between EFH, as issuer, and the Indenture Trustee, as trustee, as amended and supplemented by the Officer's Certificate, dated as of November 26, 2004, the Supplemental Indenture, dated as of December 5, 2012, and the Second Supplemental Indenture, dated as of April 15, 2013 (collectively, the "Series Q Indenture").

3. Indenture dated as of November 1, 2004, between EFH, as issuer, and the Indenture Trustee, as trustee, as amended and supplemented by the Officer's Certificate, dated as of November 26, 2004, the Supplemental Indenture, dated as of December 5, 2012, and the Second Supplemental Indenture, dated as of April 15, 2013 (collectively, the "Series R Indenture")

EFH Unexchanged Notes issued pursuant to:

1. Indenture dated as of November 16, 2009, between EFH, as issuer, and the Indenture Trustee, as trustee, as amended and supplemented by the Supplemental Indenture, dated as of January 25, 2013, and the Second Supplemental Indenture, dated as of April 15, 2013 (collectively, the "9.75% Senior Notes Indenture").

2. Indenture dated as of January 12, 2010, between EFH, as issuer, and the Indenture Trustee, as trustee, as amended and supplemented by the First Supplemental Indenture, dated as of March 16, 2010, the Second Supplemental Indenture, dated as of April 13, 2010, the Third Supplemental Indenture, dated as of April 14, 2010, the Fourth Supplemental Indenture, dated as of May 21, 2010, the Fifth Supplemental Indenture, dated as of July 2, 2010, the Sixth Supplemental Indenture, dated as of July 6, 2010, the Seventh Supplemental Indenture, dated as of July 7, 2010, the Eighth Supplemental Indenture, dated as of January 25, 2013, and the Ninth Supplemental Indenture, dated as of April 15, 2013 (collectively, the "10.00% Senior Notes Indenture").

EFH LBO Notes issued pursuant to:

1. Indenture dated as of October 31, 2007, among EFH, as issuer, the Guarantors party thereto and the Indenture Trustee, as trustee, as amended and supplemented by the First Supplemental Indenture, dated as of July 8, 2008, the Second Supplemental Indenture, dated as of August 3, 2009, the Third Supplemental Indenture, dated as of July 29, 2010, the Fourth Supplemental Indenture, dated as of October 18, 2011, and the Fifth Supplemental Indenture, dated as of April 15, 2013 (collectively, the "10.875% Senior Notes and 11.250%/12.000% Senior Toggle Notes Indenture", and collectively with the Series P Indenture, the Series Q Indenture, the Series R Indenture, the 9.75% Senior Notes Indenture, and the 10.00% Senior Notes Indenture, the "Indentures").

15060231.2

Exhibit "B"



U.S. Department of Justice

Office of the United States Trustee

*District of Delaware*

---

*844 King Street, Suite 2207*  (302) 573-6491
*Wilmington, DE  19801*  fax (302) 573-6497

July 30, 2014

**VIA REGULAR MAIL AND EMAIL**
Richard Pedone, Esquire
Nixon Peabody, LLP
100 Sumer Street
Boston, MA 02110

    Re:    In re Energy Future Holdings Corp. – Lead Case No. 14-10979(CSS)

Dear Mr. Pedone:

    Thank you for your interest in the above-referenced matter.

    After consideration of your July 17, 2014 letter and July 23, 2014 Motion, on behalf of American Stock Transfer & Trust Company, LLC, as successor trustee to The Bank of New York Mellon Trust Company, N.A., ("Indenture Trustee Motion"), seeking the appointment an official committee of unsecured creditors for Energy Future Holdings Corporation, the U. S. Trustee has decided to solicit further for such a committee.

    In order to facilitate the U. S. Trustee's solicitation, kindly provide us with a list, along with addresses and contact information, of the beneficial holders and/or owners of the EFH Unsecured Legacy Notes, the EFH Unexchanged Notes and the EFH LBO Notes, excluding any insiders. To the extent that you do not have and cannot obtain a comprehensive list, please provide whatever information you do have, so as to facilitate the appointment of such a committee that is representative of the interest of the various unsecured creditors of EFH.

    We also request that you adjourn or continue the Indenture Trustee's Motion to the September 16, 2014 omnibus hearing in light of the U. S. Trustee's further solicitation for an EFH committee. Thank you for your anticipated cooperation. Please call me with any questions you may have.

Very truly yours,

Richard L. Schepacarter
Trial Attorney

# Exhibit "C"



**FOLEY & LARDNER LLP**

ATTORNEYS AT LAW

321 NORTH CLARK STREET, SUITE 2800
CHICAGO, IL 60654-5313
312.832.4500 TEL
312.832.4700 FAX
WWW.FOLEY.COM

WRITER'S DIRECT LINE
312.832.4393
hkaplan@foley.com EMAIL

CLIENT/MATTER NUMBER
092474-0108

July 31, 2014

<u>Via Electronic Mail</u>

Richard L. Schepacarter
Office of the United States Trustee
844 King Street, Suite 2207
Wilmington, Delaware 19801

      Re:    Energy Future Holdings Corp., *et al.* – Case No. 14-10979 (CSS)

Dear Mr. Schepacarter:

      As you know, UMB Bank, N.A., as indenture trustee ("<u>UMB Bank</u>"), and American Stock Transfer & Trust Company, LLC, as indenture trustee ("<u>AST</u>", together with UMB Bank, the "<u>E-Side Unsecured Notes Indenture Trustees</u>"), are the indenture trustees for the unsecured notes, respectively, of Energy Future Intermediate Holding Company LLC ("<u>EFIH</u>") and Energy Future Holdings Corp. ("<u>EFH</u>", and collectively with EFIH, the "<u>Debtors</u>").

      We write you as counsel for UMB Bank to suggest what we believe to be a mutually acceptable alternative to the appointment of one or more committees on the E-Side. That suggestion is entry of an order or stipulation (the "<u>Order</u>") pursuant to sections 105(a) and 363(b) of title 11 of the United States Code (the "<u>Bankruptcy Code</u>") authorizing Debtors EFIH and EFH – who we believe would be agreeable to such a disposition – to reimburse and pay the reasonable fees and expenses of the E-Side Unsecured Notes Indenture Trustees and their professionals in accordance with the terms of the Indentures (as defined below) on a current basis. *Such could be done, not as traditional administrative expenses, but solely as advances against ultimate distributions on the Notes or payment and reimbursement of indenture trustee fees and expenses pursuant to a confirmed chapter 11 plan. Thus, our proposal only impacts the timing of payment of such fees and expenses, and does not create or affect any substantive rights under the Bankruptcy Code.*

      In sum, such a resolution is in the best interests of the Debtors' estates as well as the efficient, economic and timely administration of these chapter 11 cases, particularly in light of the accelerated proceedings which have already occurred and/or are still pending on a number of significant E-Side issues, including originally the Restructuring Support Agreement ("<u>RSA</u>") and Second Lien DIP financing, and still the make-whole litigations and the proposed sale and chapter 11 plan process. Each of the E-Side Unsecured Notes Indenture Trustees has existing and ongoing statutory (the Trust Indenture Act of 1939) and contractual (their respective indentures) obligations to represent their noteholders, including the holders of hundreds of millions of dollars in principal amount of E-Side Unsecured Notes who were not parties to the RSA, as a "prudent person" would. Particularly in light of the accelerated pace of these chapter 11 cases and there being no E-Side

BOSTON           JACKSONVILLE     MILWAUKEE        SAN DIEGO        TALLAHASSEE
BRUSSELS         LOS ANGELES      NEW YORK         SAN FRANCISCO    TAMPA
CHICAGO          MADISON          ORLANDO          SHANGHAI         TOKYO
DETROIT          MIAMI            SACRAMENTO       SILICON VALLEY   WASHINGTON, D.C.

4830-7068-2396.2



FOLEY & LARDNER LLP

Richard Schepacarter
July 31, 2014
Page 2

creditors' committee, the E-Side Unsecured Notes Indenture Trustees, while having significant responsibilities, are hard pressed without such advances from their Debtors (EFIH and EFH, respectively), to perform, on a timely basis or otherwise, their function as essentially the primary official representatives of the E-Side unsecured creditors, in their capacities as such. As a practical matter, the E-Side Unsecured Notes Indenture Trustees are not material economic stakeholders in these cases, in their individual capacities. Rather, they are service providers to the Debtors and the noteholders under their respective indentures.

## BACKGROUND

On April 29, 2014 (the "Petition Date"), each of the Debtors filed a voluntary petition with the Court under chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases"). The Debtors are operating their businesses and managing their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. The Debtors' Chapter 11 Cases have been consolidated for procedural purposes only, and are being jointly administered pursuant to Bankruptcy Rule 1015(b). No request for the appointment of a trustee or examiner has been made in these Chapter 11 Cases.

UMB Bank serves as the successor indenture trustee for: (i) the 11.25%/12/25% senior toggle notes due 2018 (the "EFIH Senior Toggle Notes") and (ii) the 9.75% senior notes due 2019 (together with the EFIH Senior Toggle Notes, the "EFIH Unsecured Notes"), both of which were issued by EFIH and EFIH Finance Inc. (together with EFIH, the "EFIH Issuers"). The combined aggregate outstanding principal amount of the EFIH Unsecured Notes is $1,568,249,000, which constitutes, by far, the largest component, if not all, of the pool of unsecured claims against the estates of the EFIH Issuers.

AST serves as successor indenture trustee under six EFH indentures. The combined aggregate outstanding principal amount of the notes issued under those EFH indentures is $1,929,000,000 which constitutes, by far, the largest component, if not all, of the pool of unsecured claims against the estate of EFH.

Each of the E-Side Unsecured Notes Indenture Trustees are successor trustees appointed immediately before and in anticipation of the filing of the Debtors' Chapter 11 Cases. Neither of the E-Side Unsecured Notes Indenture Trustees negotiated the RSA or the related settlements.

The E-Side Unsecured Notes Indenture Trustees each sought to serve as members of an Official Committee of Unsecured Creditors (the "Committee") in these Chapter 11 Cases, timely submitted completed questionnaires to the Office of the Unites States Trustee requesting such appointment, and attended the Committee formation meeting. However, not only were the E-Side Unsecured Notes Indenture Trustees not selected to serve on a Committee, but no Committee was appointed to include E-Side creditors.

4830-7068-2396.2


FOLEY & LARDNER LLP

Richard Schepacarter
July 31, 2014
Page 3

In fact, in a footnote to the Notice of Appointment of Committee of Unsecured Creditors, it is expressly stated that the Committee appointed would not represent the interests of unsecured creditors on the "E-Side" of the Debtors' corporate structure: Rather, "[t]he committee represents the interests of the unsecured creditors of only the TCEH Debtors and EFH Corporate Services Company and of no other debtors." [Docket No. 420]

Immediately thereafter, the E-Side Unsecured Notes Indenture Trustees consulted with the Debtors and other major E-Side parties to the cases about options for the most economical and efficient, and least costly and dilatory, manner to provide necessary participation in the case and adequate representation of E-Side creditor interests.

The idea emerged that instead of the indenture trustees seeking delays in pending proceedings and/or filing a motion for the appointment of a second official committee – this time for the E-Side – the E-Side Unsecured Notes Indenture Trustees (who together represent practically all of the E-Side unsecured debt) would assume the additional burden and cost (including retaining financial advisors), while the Debtors would seek authority to compensate the E-Side Unsecured Notes Indenture Trustees on a current basis. The Debtors thereupon consulted with significant constituencies in the cases – particularly the T-Side official creditors' committee and necessary E-Side parties under the RSA – all of whom approved or did not object to the proposed arrangement with UMB and all but one of whom approved or did not object to such an arrangement with AST. It was proposed to include the requested relief in the pending motion and proposed order relating to the Second Lien DIP, which was deemed appropriately related to the relief for the indenture trustees and was the next motion up for consideration by the Court. The proposed order ultimately filed by the Debtors with the Court included such relief for UMB. [Docket No. 1230]. However, the Second Lien DIP Motion and order have been put on hold indefinitely. Therefore, particularly in light of the significant activity assumed by and imposed on the E-Side Unsecured Notes Indenture Trustees on, *inter alia*, pending matters, ranging from evaluating and weighing in on the Second Lien DIP to intervening in the first lien makewhole litigation, the resolution we are suggesting seems particularly appropriate and non-disruptive to the cases.



Richard Schepacarter
July 31, 2014
Page 4

## BASIS FOR THE RESOLUTION/STIPULATION REQUESTED

**A. Providing Resources to E-Side Unsecured Notes Indenture Trustees to Perform Their Critical Statutory and Contractual Services is in the Best Interests of the Debtors' Estates.**

These Chapter 11 Cases are extraordinary not only because of their magnitude and complexity, but because so many significant issues were and have been presented for immediate consideration and action, particularly on the E-Side.

The Debtors' efforts to move swiftly toward reorganization resulted in the Debtors seeking relief on a number of complex issues affecting the E-Side Unsecured Notes during the early stages of these Chapter 11 Cases, such as: the EFIH First Lien DIP Financing Motion [Docket No. 74]; the EFIH Settlements Motion [Docket No. 472]; the EFIH Second Lien DIP Financing Motion [Docket No. 477]; and the Motion for Entry of an Order Authorizing the RSA Debtors to Assume the Restructuring Support Agreement [Docket No. 505].

The E-Side Unsecured Notes Indenture Trustees, who were not parties to the prepetition negotiations that led to the RSA, have the responsibility to act as a "prudent person" under the Trust Indenture Act of 1939 (the "TIA") and their respective Indentures, which would include reviewing and evaluating the terms of each of the Debtors' major proposals that impact the E-Side Unsecured Noteholders generally and as a class.[1]

As a result, the E-Side Unsecured Notes Indenture Trustees required the services of and retained counsel and financial advisors to perform their duties under the E-Side Unsecured Notes Indentures and the TIA. The level of required services is and was heightened by the fact that there has been no E-Side creditors' committee to gather relevant information and share it with unsecured creditors in accordance with Bankruptcy Code section 1102(b)(3).

---

[1] Each of the E-Side Unsecured Notes Indentures provides that the Trustee is subject to the "prudent man" standard. *See, e.g.*, EFIH Senior Toggle Notes Indenture at §7.01 ("If an Event of Default has occurred and is continuing, the Trustee shall exercise such of the rights and powers vested in it by this Indenture, and use the same degree of care and skill in its exercise, as a prudent person would exercise or use under the circumstances in the conduct of such person's own affairs."). In addition, section 315(c) of the Trust Indenture Act of 1939 imposes similar "prudent man" duties upon the E-Side Unsecured Notes Indenture Trustees. 15 U.S.C. § 77ooo. The Trust Indenture Act establishes strong public policy in favor of the existence and compensation of indenture trustees. *See, e.g.*, Trust Indenture Act § 302 (15 U.S.C. § 77bbb) ("it is hereby declared that the national public interest, and the interest of investors in notes, ... are adversely affected— (1) when the obligor fails to provide a trustee to protect and enforce the rights and to represent the interests of such investors ...").


FOLEY & LARDNER LLP

Richard Schepacarter
July 31, 2014
Page 5

    The E-Side Unsecured Notes Indenture Trustees and the Debtors discussed various possible alternatives, and it became clear that the most cost-effective and least disruptive alternative would be for the E-Side Unsecured Notes Indenture Trustees to retain necessary counsel and financial advisors to perform their enhanced responsibilities, including requesting current payment of the reasonable fees and expenses of the E-Side Unsecured Notes Indenture Trustees and their professionals, with EFIH paying UMB, and EFH paying AST.

    **B.    The Requested Relief is Authorized Under the Bankruptcy Code and Pertinent Case Law.**

    As the Debtors have explained in a number of their first day and other motions,[2] courts in the Third Circuit and elsewhere generally recognize that debtors may pay not only claims for post-petition services and administrative claims, but may also pay prepetition claims that are essential to the continued operation of the debtor's business. *See, e.g., In re Meridian Auto. Sys.-Composite Operations, Inc.*, 372 B.R. 710, 714 (Bankr. D. Del. 2007) (granting the debtor authority to pay prepetition obligations owed to certain critical vendors); *In re Primary Health Sys., Inc.*, 275 B.R. 709, 710 (Bankr. D. Del. 2002) (allowing payment of prepetition wages upon a finding that such relief was "essential to the continued operation of the Debtors' businesses"); *In re Just for Feet, Inc.*, 242 B.R. 821, 824-45 (Bankr. D. Del. 1999) (noting that debtors may pay prepetition claims that are essential to the continued operation of the debtor's business). Courts have relied on several legal bases in approving such relief.

    Courts generally recognize that debtors may pay prepetition (and post-petition) claims under section 363(b) of the Bankruptcy Code where there is a sound business purpose for the payment of such obligations, and where the debtor is able to "articulate some business justification, other than the mere appeasement of major creditors." *See, e.g., In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) (granting debtor authority to pay prepetition wages); *Armstrong World Indus. Inc. v. James A. Phillips, Inc., (In re James A. Phillips, Inc.)*, 29 B.R. 391, 398 (Bankr. S.D.N.Y. 1983) (granting the debtor the authority to pay prepetition claims of suppliers who were potential lien claimants).

    Courts also recognize that current payments to prepetition creditors – let alone for post-petition services or administrative claims – are appropriate pursuant to section 105(a) of the Bankruptcy Code under the "doctrine of necessity" or the "necessity of payment" rule where such payments are necessary to the continued operation of the debtor's business. *See, e.g., In re Lehigh & New England Ry. Co.*, 657 F.2d 570, 581 (3d Cir. 1981) (holding that a court could authorize the payment of prepetition claims if such payment was essential to the continued operation of the

---

    [2] The language in the first three paragraphs of this section of the letter are taken essentially verbatim from certain of the Debtors' filings in these cases.



FOLEY & LARDNER LLP

Richard Schepacarter
July 31, 2014
Page 6

debtor); *In re Penn Cent. Transp. Co.*, 467 F.2d 100, 102 n.1 (3d Cir. 1972) (holding that the necessity of payment doctrine permits "immediate payment of claims of creditors where those creditors will not supply services or material essential to the conduct of the business until their pre-reorganization claims have been paid"); *In re Friedman's, Inc.*, 2011 WL 5975283, at *3 (Bankr. D. Del. Nov. 30, 2011) ("[M]ost courts will allow payments [of prepetition claims] under the 'doctrine of necessity,' if the debtor establishes that in its business judgment making such payments is critical to the survival of the debtor's business"); *In re Columbia Gas Sys., Inc.*, 171 B.R. 189, 191-92 (Bankr. D. Del. 1994) (noting that debtors may pay prepetition claims that are essential to the continued operation of the debtor's business). The rationale for the necessity of payment rule—the rehabilitation of a debtor in reorganization cases—is "the paramount policy and goal of Chapter 11." *Ionosphere Clubs*, 98 B.R. at 176; *Just for Feet*, 242 B.R. at 826 (finding that payment of prepetition claims to certain trade vendors was "essential to the survival of the debtor during the chapter 11 reorganization.").

Applying these principles, Courts have authorized a debtor to pay a creditor's professional expenses where there is good business reason to allow such, and the payment is "in the best interests of the Debtors and all parties in interest." *United States Trustee v. Bethlehem Steel Corp. (In re Bethlehem Steel Corp.)*, 2003 U.S. Dist. LEXIS 12909, 20-21 (S.D.N.Y. July 23, 2003). In fact, in these cases this Court recently entered an order authorizing the Debtors to pay certain necessary post-petition expenses of the PUC and ERCOT on similar grounds in connection with their anticipated active participation in these Chapter 11 Cases. [Docket No. 785]

C. **The Requested Relief is in the Best Interests of the Debtors' Estates and is Not Prejudicial to Any Party.**

Payment of the reasonable fees and expenses of the E-Side Unsecured Notes Indenture Trustees and their professionals on a current basis essentially only affects the timing of payment and does not prejudice creditors or other stakeholders. Section 7.07 of each Indenture mandates the payment of the Trustee's reasonable fees and expenses and, in fact, specifically provides that such fees and expenses are secured by a charging lien against any distribution ultimately made on account of the E-Side Unsecured Notes,[3] and in any bankruptcy are "intended to constitute expenses of administration."[4]

---

[3] Each of the E-Side Unsecured Notes Indentures requires that any distribution made on account of such notes be paid out first "to the Trustee, its agents and attorneys for amounts due under Section 7.07 hereof, including payment of all compensation, expenses and liabilities incurred, and all advances made, by the Trustee and the costs and expenses of collection." EFIH Senior Toggle Notes Indenture at § 6.13(i). Thus the reasonable fees and expenses of the E-Side Unsecured Notes Indenture Trustees and their professionals must ultimately be paid in full before any amounts can be paid to the holders of the E-Side Unsecured Notes.

[4] Each of the E-Side Unsecured Indentures contain substantially similar provisions requiring that the issuer must pay the indenture trustee's fees and expenses. *See, e.g.,* EFIH Senior Toggle Notes Indenture, at §7.07;

4830-7068-2396.2


FOLEY & LARDNER LLP

Richard Schepacarter
July 31, 2014
Page 7


As reflected in the RSA and the competitive bidding on the Second Lien DIP, there is no doubt that E-Side Unsecured Notes are entitled to a recovery, and will receive a substantial distribution in these Chapter 11 Cases. Thus, even if only looking to assert their charging liens, the reasonable fees and expenses of the E-Side Unsecured Notes Indenture Trustees and their professionals will not only be easily covered, but will likely only amount to a small percentage of those eventual distributions.

On the other hand, we are advised that there is a substantial likelihood that the ultimate fees and expenses of E-Side Unsecured Notes Indenture Trustees' professionals may have to be adjusted and could be substantially higher if payment is not made on a current basis, if for no other reason than financial advisors and other professionals willing to be compensated on a discrete hourly basis if paid currently may otherwise insist on additional compensation if ultimate payment cannot be made until the conclusion of these Chapter 11 Cases.

---

The Issuer and the Guarantors, jointly and severally, shall pay to the Trustee from time to time such compensation for its acceptance of this Indenture and services hereunder as the parties shall agree in writing from time to time. ... . The Issuer and the Guarantors, jointly and severally, shall reimburse the Trustee promptly upon request for all reasonable disbursements, advances and expenses incurred or made by it in addition to the compensation for its services. Such expenses shall include the reasonable compensation, disbursements and expenses of the Trustee's agents and counsel. . . Notwithstanding anything to the contrary in Section 4.12 hereof, to secure the payment obligations of the Issuer and the Guarantors in this Section 7.07, the Trustee shall have a Lien prior to the Notes on all money or property held or collected by the Trustee, except that held in trust to pay principal and interest on particular Notes. Such Lien shall survive the satisfaction and discharge of this Indenture. When the Trustee incurs expenses or renders services after an Event of Default specified in clause (6) or (7) of Section 6.01(a) hereof occurs, the expenses and the compensation for the services (including the fees and expenses of its agents and counsel) are intended to constitute expenses of administration under any Bankruptcy Law.



FOLEY & LARDNER LLP

Richard Schepacarter
July 31, 2014
Page 8

    We look forward to following up with you and providing you with any additional information that may be helpful in your consideration of this issue.

                        Very truly yours,

                        Harold L. Kaplan

Enclosure

cc:    Roberta A. DeAngelis (*via electronic mail*)
       Andrea B. Schwartz (*via electronic mail*)
       Mark B. Flannagan (*via electronic mail*)
       Mark F. Hebbeln (*via electronic mail*)