**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re: | ) Chapter 11 |
|  | ) |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) Case No. 14-10979 (CSS) |
|  | ) |
| Debtors. | ) (Jointly Administered) |
|  | ) |
|  | ) **Re: D.I. 1676** |

**DEBTORS' OBJECTION TO MOTION**
**OF EFH NOTES INDENTURE TRUSTEE PURSUANT TO 11 U.S.C.**
**§§ 1102(a)(1) AND 105 FOR APPOINTMENT OF AN OFFICIAL COMMITTEE**
**OF UNSECURED CREDITORS FOR ENERGY FUTURE HOLDINGS CORP.**

---

[1] The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, which are being jointly administered, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

## Table of Contents

Preliminary Statement...............................................................................................................1

Background ...............................................................................................................................2

Argument ..................................................................................................................................4

I.      No Legal Basis Exists to Appoint a Separate Committee for EFH Corp's
        Unsecured Creditors.......................................................................................................4

        A.      Appointment of an EFH Corp. Creditors' Committee is Not Mandatory................5

        B.      Appointment of an Additional Committee is Not Appropriate. ............................6

II.     To the Extent Unsecured Creditors of EFH Corp. Require Further Representation,
        the Existing Creditors' Committee is Best Suited to Serve in this Capacity.......................9

## Table of Authorities

**Cases**

*In re BH&P, Inc.*, 949 F.2d 1300 (3d Cir. 1991) .......................................................................... 6

*In re Dana Corp.*, 344 B.R. 35 (Bankr. S.D.N.Y. 2006) ............................................................. 7, 9

*In re Enron Corp.*, 279 B.R. 671 (Bankr. S.D.N.Y. 2002) ......................................................... 5, 6

*In re Garden Ridge Corp.*, No. 04-10324, 2005 WL 523129 (Bankr. D. Del. Mar. 2, 2005) . 7, 10, 11

*In re Hills Stores Co.*, 137 B.R. 4 (Bankr. S.D.N.Y. 1992) ............................................................ 9

*In re McLean Indus., Inc.*, 70 B.R. 852 (Bankr. S.D.N.Y. 1987) .......................................... 5, 6, 10

*In re Orfa Corp. of Phila.*, 121 B.R. 294 (Bankr. E.D. Pa. 1990) ................................................. 6

*In re Parkway Calabasas Ltd.*, 89 B.R. 832 (Bankr C.D. Cal. 1988) ........................................... 6

*In re Shaffer-Gordon Assocs., Inc.*, 40 B.R. 956 (Bankr. E.D. Pa. 1984) ..................................... 7

*In re Spansion*, 421 B.R. 151 (Bankr. D. Del. 2009) ..................................................................... 7

*In re White Motor Credit Corp.*, 18 B.R. 720 (Bankr. N.D. Ohio 1980) ....................................... 6

*Matter of Interco Inc.*, 141 B.R. 422 (Bankr. E.D. Mo. 1992) ...................................................... 7

*Mirant Ams. Energy Mktg., L.P. v. Official Comm. of Unsecured Creditors of Enron Corp.*, No. 02-6274, 2003 WL 22327118 (S.D.N.Y. Oct. 10, 2003) ...................................................... 5

*Victor v. Edison Bros. Stores (In re Edison Bros. Stores, Inc.)*, 1996 WL 534853 (D. Del. Sept. 17, 1996) ................................................................................................................................ 7

**Statutes**

11 U.S.C. § 1102(a)(1) ................................................................................................................ 4, 5

11 U.S.C. § 1102(a)(2) ................................................................................................................... 4

The above-captioned debtors and debtors in possession (collectively, the "Debtors") file this objection (this "Objection")[1] to the *Motion of EFH Notes Indenture Trustee Pursuant to 11 U.S.C. §§ 1102(a)(1) and 105 for Appointment of an Official Committee of Unsecured Creditors for Energy Future Holdings Corp.* (the "Motion") filed by American Stock Transfer & Trust Company, LLC, as successor trustee to The Bank of New York Mellon Trust Company, N.A., for certain EFH Corp. unsecured notes ("AST"). In support of this Objection, the Debtors respectfully state as follows.

## Preliminary Statement

1. AST's request for the appointment of a committee of unsecured creditors of Energy Future Holdings Corporation ("EFH Corp.") should be denied for several reasons. *First*, AST's assertion that the appointment of an additional committee is statutorily mandated by section 1102(a)(1) of title 11 of the United States Code (the "Bankruptcy Code") is unsupported by existing case law. *Second*, AST fails to carry its burden to show that appointment of a committee is appropriate under section 1102(a)(2) of the Bankruptcy Code, because AST fails to show that EFH Corp.'s unsecured creditors are currently inadequately represented in these chapter 11 cases. In fact, unsecured creditors of EFH Corp. are already represented in these cases by two active creditor groups represented by highly-sophisticated counsel. Furthermore, in the near future, the Debtors hope to secure a restructuring transaction that has the potential to significantly increase projected recoveries to unsecured creditors of EFH Corp. Therefore, the substantial costs of appointing an additional committee in these chapter 11 cases are unnecessary and unwarranted by the minimal, if any, benefits that EFH Corp.'s unsecured creditors would

---

[1]  Capitalized terms used but not defined in this Objection shall have the meanings set forth in the *Declaration of Paul Keglevic, Executive Vice President, Chief Financial Officer, and Co-Chief Restructuring Officer of Energy Future Holdings Corp., et al., in Support of First Day Motions* [D.I. 98] (the "First Day Declaration").

receive from such an appointment.  ***Third***, if additional representation of these creditors is necessary, the Debtors believe that the more appropriate action is to expand the scope of the existing interests of the official committee of unsecured creditors (the "Creditors' Committee") and, if necessary, to appoint an additional general unsecured creditor of EFH Corp. to the Creditors' Committee.

## Background

2.      The Debtors filed their petitions for relief under chapter 11 of the Bankruptcy Code on April 29, 2014 (the "Petition Date"), in the United States Bankruptcy Court for the District of Delaware (the "Court").  On the Petition Date, the Debtors filed their prepetition Restructuring Support and Lock-Up Agreement, dated as of April 29, 2014, filed as Exhibit D to the First Day Declaration (as amended from time to time, including the Restructuring Term Sheet and all other schedules and exhibits thereto, collectively, the "RSA").

3.      On May 12, 2014, the United States Trustee for the District of Delaware (the "U.S. Trustee") convened a meeting to form the Creditors' Committee in these chapter 11 cases.  AST attended this formation meeting, and requested appointment to the Creditors' Committee.  At that time, the U.S. Trustee elected not to appoint AST to the Creditors' Committee.  Notably, AST did not seek reconsideration of that decision or file a motion with the Court at that time.

4.      After the Petition Date, the Debtors consummated a number of restructuring initiatives under the rubric of the RSA.  Most notably, the Debtors closed the First Lien DIP Facility at Energy Future Intermediate Holding Company LLC ("EFIH"), repaying in full the

EFIH first lien notes and allowing the Debtors to save $13 million a month in interest payments.[2] In addition, the EFIH First Lien DIP Facility funded the EFIH First Lien Makewhole Settlement, greatly mitigating EFIH's litigation exposure to holders of first lien notes alleging entitlement to "makewhole premiums" (or prepayment penalties).

5.    Since the Petition Date, multiple parties have expressed interest in equity investments in reorganized EFH Corp., on terms potentially higher or better than those embodied in the RSA.[3]  On July 23, 2014, certain of the Debtors' boards determined that continuing to pursue the restructuring transactions under the RSA would be inconsistent with these respective boards' fiduciary duties, and authorized the applicable Debtors to terminate the RSA as to all parties.  And, on July 24, 2014, EFH Corp., Energy Future Competitive Holdings Company LLC, Texas Competitive Electric Holdings Company LLC, and EFIH exercised their right to terminate the RSA as to all parties, effective July 31, 2014, to pursue higher or otherwise better restructuring proposals.  The Debtors are now engaged in discussions with a number of potential parties regarding proposals that could increase projected recoveries for all creditors of EFH Corp.

6.    Two groups of unsecured creditors of EFH Corp. are currently active in these chapter 11 cases:  (a) Fidelity Investments and certain of its affiliates (collectively, "Fidelity"), which collectively hold approximately $471 million of EFH unsecured notes, represented by Fried, Frank, Harris, Shriver & Jacobson LLP, and (b) a minority group holding approximately

---

[2]    *See Final Order (A) Approving Postpetition Financing for Energy Future Intermediate Holding Company LLC and EFIH Finance Inc., (B) Granting Liens and Providing Superpriority Administrative Expense Claims, (C) Approving the Use of Cash Collateral by Energy Future Intermediate Holding Company LLC and EFIH Finance Inc., (D) Authorizing the EFIH First Lien Repayment, (E) Authorizing Issuance of Roll-Up Debt to the Extent Authorized by the Settlement Orders, and (F) Modifying the Automatic Stay* [D.I. 859].

[3]    *See, e.g., Notice of Strategic Proposal by NextEra Energy, Inc. and EFIH Second Lien Group* [D.I. 1593].

$49 million of EFH unsecured notes, represented by Kasowitz Benson Torres & Friedman LLP.

Collectively, these two groups represent approximately 80% of EFH Corp.'s unsecured notes

(excluding amounts held by EFIH). Additionally, AST, represented by Nixon Peabody LLP, has

undertaken extensive due diligence in these cases.

7.      To aid in restructuring negotiations with their stakeholders, the Debtors have

launched a postpetition dataroom containing over 1,800 documents containing confidential and

proprietary business information, and have granted dataroom access to any EFH Corp. creditor

that has requested it, including AST. The Debtors and their professional advisors also have been

responsive to requests for additional information, and have met with their stakeholders multiple

times, both telephonically and in person.

8.      On July 17, 2014, AST sent a letter to the U.S. Trustee requesting appointment of

an additional creditors' committee in these chapter 11 cases to represent the unsecured creditors

of EFH Corp. To date, the U.S. Trustee has not made such an appointment. On July 23, 2014,

AST filed the Motion, requesting the same relief from the Court.

## Argument

### I.      No Legal Basis Exists to Appoint a Separate Committee for EFH Corp's Unsecured Creditors.

9.      AST incorrectly asserts that section 1102(a)(1) of the Bankruptcy Code requires

the appointment of a separate committee in these cases and fails to plead or prove the standard

for the appointment of an additional committee under section 1102(a)(2) of the Bankruptcy

Code. Indeed, AST does not cite a single case, does not put forward any evidence, and is wrong

on both the law and the facts. The Court should deny the Motion because the relief requested

would generate additional costs for the Debtors' estates and would not provide a benefit to EFH

Corp.'s well-represented unsecured creditors.

A.    **Appointment of an EFH Corp. Creditors' Committee is Not Mandatory.**

10.    AST incorrectly relies on the "plain language" of section 1102(a)(1) of the Bankruptcy Code to argue that appointment of a separate EFH Corp. creditors' committee is necessary.  Section 1102(a)(1) of the Bankruptcy Code provides that, in a case under chapter 11 of the Bankruptcy Code, the U.S. Trustee shall appoint a committee of creditors holding unsecured claims, and may appoint additional committees of creditors or of equity security holders as the U.S. Trustee deems appropriate.

11.    AST, however, ignores the important facts and law.  First and foremost, there is already a Creditors' Committee in these chapter 11 cases.  AST attended the formation meeting for the Creditors' Committee, and the U.S. Trustee declined to appoint AST to the Creditors' Committee.[4]  This was not an invitation for AST to simply request a "mandatory" appointment of an additional committee, and it is telling that AST failed to make its request for mandatory appointment at that time.  AST asserts that the appointment of a separate committee is now imperative because the RSA is terminated, yet AST fails to explain why the existence, or not, of the RSA makes any difference in the analysis.

12.    Similarly, the caselaw is clear that the *per se* rule AST seeks is not the law because "[courts] would be constrained to appoint a separate committee for each debtor in a jointly administered case.  Such a mandate would be both counter-productive and costly." *In re Enron Corp.*, 279 B.R. 671, 692 (Bankr. S.D.N.Y. 2002), *aff'd Mirant Ams. Energy Mktg., L.P. v. Official Comm. of Unsecured Creditors of Enron Corp.*, No. 02-6274, 2003 WL 22327118, *5 (S.D.N.Y. Oct. 10, 2003); *see In re McLean Indus., Inc.*, 70 B.R. 852, 860 (Bankr. S.D.N.Y.

---

[4]    *See Notice of Appointment of Committee of Unsecured Creditors* [D.I. 420] (noting that the Creditors' Committee represents only the interests of unsecured creditors of the TCEH Debtors and EFH Corporate Services Company and of no other debtors).

1987) ("We decline to [hold] that a separate committee is required in each separate but jointly administered bankruptcy case.  There is no indication that Congress gave any thought to jointly administered cases and intended to require a committee for each case.  The cost could be extreme."); *In re Orfa Corp. of Phila.*, 121 B.R. 294, 297 (Bankr. E.D. Pa. 1990) (holding that the appointment of a committee for separate debtors requires a fact-intensive inquiry rather than a blanket rule).[5]

13.    Therefore, there is no basis for "mandatory" appointment of a separate committee from the Creditors' Committee in these jointly-administered chapter 11 cases.  Rather, AST's request is more appropriately considered as a request for an additional committee under section 1102(a)(2) of the Bankruptcy Code.

B.    **Appointment of an Additional Committee is Not Appropriate.**

14.    AST has failed to plead, much less satisfy, the standard for the appointment of an additional committee under section 1102(a)(2) of the Bankruptcy Code.  This standard does not support such an appointment.

15.    The standard for appointment of an additional committee is whether creditor interests are adequately represented.  *See* 11 U.S.C. § 1102(a)(2); *see also Enron Corp.*, 279 B.R. at 684 (assurance of adequate representation is the most important factor in determination of whether to appoint additional committee).  Bankruptcy courts analyze the adequacy of

---

[5]    Although two cases—neither of which AST cites—arguably support AST's position, *see In re White Motor Credit Corp.*, 18 B.R. 720, 722 (Bankr. N.D. Ohio 1980) (adopting a blanket rule that a separate committee must be appointed in every case); *In re Parkway Calabasas Ltd.*, 89 B.R. 832, 835 n. 3 (Bankr C.D. Cal. 1988) (adopting in *dicta* a presumption that separate committees, trustees, and counsel should be appointed in certain instances involving substantive consolidation because of inherent conflicts between debtors), the Debtors respectfully submit that these cases should not influence the Court's decision on the instant Motion. *White Motor* was wrongly decided; in the 34 years since it was issued, its holding has not been adopted by any other court and has been expressly rejected by others. *Parkway Calabasas* is irrelevant here, because its presumption arose where substantive consolidation was at issue.  Moreover, the Third Circuit rejected the *Parkway Calabasas* presumption in *In re BH&P, Inc.*, 949 F.2d 1300 (3d Cir. 1991) in the context of fee applications for jointly-represented debtors, and that rejection applies with equal force to committees.

6

representation by engaging in a fact-sensitive analysis of factors such as (1) the ability of the official creditors' committee to function; (2) the ability of creditors to participate in the case even without an official committee; (3) the motivation of the movants; (4) the costs incurred by the appointment of additional committees; and (5) the tasks that a committee or separate committee is to perform. *In re Garden Ridge Corp.*, No. 04-10324, 2005 WL 523129, at *2 (Bankr. D. Del. Mar. 2, 2005) (citing *Enron Corp.*, 279 B.R. at 685 ).

16.    Moreover, the burden lies with the moving party to demonstrate that the appointment of a committee is necessary for adequate representation. *In re Spansion*, 421 B.R. 151, 156 (Bankr. D. Del. 2009) (citing *Victor v. Edison Bros. Stores (In re Edison Bros. Stores, Inc.)*, 1996 WL 534853, *4 (D. Del. Sept. 17, 1996)). Importantly, the court's appointment of an additional committee is considered "extraordinary relief" and should be "the rare exception." *Spansion*, 421 B.R. at 156  (citing *In re Dana Corp.*, 344 B.R. 35, 38 (Bankr. S.D.N.Y. 2006)); *Matter of Interco Inc.*, 141 B.R. 422, 425 (Bankr. E.D. Mo. 1992) (declining to appoint an additional committee and noting that the existence of a committee is not a prerequisite to being heard in a case); *In re Shaffer-Gordon Assocs., Inc.*, 40 B.R. 956, 959 (Bankr. E.D. Pa. 1984) (denying motion to appoint a separate committee for certain unsecured creditors claiming their rights and interests differed from other general unsecured creditors).

17.    AST fails to satisfy the rigorous standard for appointment of an additional committee.  AST has not provided any evidence to show that it is inadequately represented in these chapter 11 cases.  Indeed, EFH Corp.'s unsecured creditors are already participating in these chapter 11 cases in the form of two sophisticated, highly-active creditor groups within AST's *own* constituency, the EFH unsecured notes:  (a) Fidelity, represented by Fried, Frank, Harris, Shriver & Jacobson LLP, which holds approximately $471 million of EFH unsecured

notes, and (b) a minority group holding approximately $49 million of EFH unsecured notes, represented by Kasowitz Benson Torres & Friedman LLP. Collectively, these two groups represent approximately 80% of EFH Corp.'s unsecured notes (excluding amounts held by EFIH). In addition to the active participation by its holders, AST has worked to create a role for itself in the cases by undertaking extensive due diligence. The Debtors have granted access to their postpetition dataroom to any EFH Corp. creditor that has requested it, including AST. The Debtors and their professional advisors also have been responsive to requests for additional information, and have met with unsecured creditors of EFH Corp. multiple times, both telephonically and in person. Thus, there is no doubt that EFH Corp.'s unsecured creditors are well-represented and actively participating in these chapter 11 cases without the existence of a separate committee.

18.    Moreover, the appointment of an additional committee would provide no benefit to unsecured creditors of EFH Corp. Importantly, the Debtors believe that their marketing and sale process will result in significant recoveries for *all* of EFH Corp.'s general unsecured creditors. That process will not benefit from the appointment of an additional committee that would be duplicative of the efforts of the Kasowitz group and Fidelity. The additional committee would hire its own legal and financial advisors, creating further cost for the Debtors. Furthermore, the committee would force additional and duplicative demands on the Debtors and their professionals for information and engage in other time-consuming activities, leading to delay and disruption of the overall bankruptcy proceedings. This would be especially costly at this juncture in these chapter 11 cases, where the Debtors are working to lock in the additional value provided in certain alternative restructuring proposals. Meanwhile, the additional committee likely would not spare the estates the costs of the existing active creditor groups at

8

EFH Corp., who will, given the extent of their economic interests, continue to take an active role in the proceedings on their own behalf.  Simply put, adding one further constituency and one further layer of cost and expense to achieve aims that multiple sets of experienced professionals are actively seeking to advance is unnecessary and counterproductive.  Appointment of the additional committee would drain the Debtors' resources and time when the Debtors should be focused on maximizing the value to be derived from the sale process.

19.    In sum, the substantial costs of appointing another committee in these chapter 11 cases will far outweigh the limited benefit that such appointment would provide for EFH Corp.'s general unsecured creditors.  Accordingly, the Court should deny AST's Motion to order the U.S. Trustee to appoint an additional committee.

## II.    To the Extent Unsecured Creditors of EFH Corp. Require Further Representation, the Existing Creditors' Committee is Best Suited to Serve in this Capacity.

20.    To the extent the Court believes that creditors of EFH Corp. require further representation, the existing Creditors' Committee, rather than the appointment of a new committee, should be used to address that need.  The Creditors' Committee has the duty to "maximize recovery to *all* general unsecured creditors." *Garden Ridge*, 2005 WL 523129, at *4 (emphasis added).  There is no requirement that the Creditors' Committee be an "exact replica" of the creditor body.  *Dana Corp.*, 344 B.R. at 39.  Indeed, it is well-established that "[a] committee of unsecured creditors often consists of creditors with a variety of viewpoints, and thus conflicts are not uncommon . . . . Adequate representation is lacking *only when these conflicts prevent an official committee from upholding its fiduciary obligations* to all general unsecured creditors." *Garden Ridge*, 2005 WL 523129, at *4 (emphasis added); *see also In re Hills Stores Co.*, 137 B.R. 4, 8 (Bankr. S.D.N.Y. 1992) (denying motion for additional committee of unsecured creditors where asserted conflicts among estates were not profound

enough to justify a separate committee); *McLean Indus.*, 70 B.R. at 861 (rejecting *per se* rule that potential conflicts among estates being jointly administered is enough, as a matter of law, to justify overturning the U.S. trustee's decision to form only a single committee).

21.    Here, the Creditors' Committee has already taken an active role in issues related to EFH Corp.  Additionally, the Creditors' Committee already includes a member that is a creditor of EFH Corp.—the Pension Benefit Guaranty Corporation—and is already charged with protecting the interests of EFH Corporate Services Company, a non-TCEH Debtor.  AST has not alleged any disabling conflicts that would prevent the existing Creditors' Committee from serving in this capacity, because there are none, and the Creditors' Committee is fully motivated to maximize the value of the sales process unfolding at EFH Corp.  Therefore, the Creditors' Committee is able to advance the interests of EFH Corp.'s general unsecured creditors as currently constituted.  If, however, this Court believes additional representation is necessary, the U.S. Trustee could appoint another EFH Corp. creditor, such as AST, to the Creditors' Committee.

*[Remainder of page intentionally left blank.]*

WHEREFORE, the Debtors respectfully request that the Court deny the Motion and grant

such other relief as it deems necessary and proper under the circumstances.


Dated:  August 8, 2014
        Wilmington, Delaware

RICHARDS, LAYTON & FINGER, P.A.
Mark D. Collins (No. 2981)
Daniel J. DeFranceschi (No. 2732)
Jason M. Madron (No. 4431)
920 North King Street
Wilmington, Delaware 19801
Telephone:      (302) 651-7700
Facsimile:      (302) 651-7701
Email:          collins@rlf.com
                defranceschi@rlf.com
                madron@rlf.com

-and-

KIRKLAND & ELLIS LLP
KIRKLAND & ELLIS INTERNATIONAL LLP
Richard M. Cieri (admitted *pro hac vice*)
Edward O. Sassower, P.C. (admitted *pro hac vice*)
Stephen E. Hessler (admitted *pro hac vice*)
Brian E. Schartz (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022-4611
Telephone:      (212) 446-4800
Facsimile:      (212) 446-4900
Email:          richard.cieri@kirkland.com
                edward.sassower@kirkland.com
                stephen.hessler@kirkland.com
                brian.schartz@kirkland.com

-and-

James H.M. Sprayregen, P.C. (admitted *pro hac vice*)
Chad J. Husnick (admitted *pro hac vice*)
Steven N. Serajeddini (admitted *pro hac vice*)
300 North LaSalle
Chicago, Illinois 60654
Telephone:      (312) 862-2000
Facsimile:      (312) 862-2200
Email:          james.sprayregen@kirkland.com
                chad.husnick@kirkland.com
                steven.serajeddini@kirkland.com

Proposed Co-Counsel to the Debtors and Debtors in Possession

11