IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>ENERGY FUTURE HOLDINGS CORP., *et al*.,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 14-10979 (CSS)<br><br>(Jointly Administered)<br><br>**Re: D.I. 1682, 1791** |

*CORRECTED* OBJECTION OF CERTAIN ASBESTOS CLAIMANTS
TO THE MOTION OF ENERGY FUTURE HOLDINGS CORP., *ET AL.*,
FOR ENTRY OF AN ORDER (A) SETTING BAR DATES FOR FILING
NON-CUSTOMER PROOFS OF CLAIM AND REQUESTS FOR PAYMENT
UNDER SECTION 503(B)(9) OF THE BANKRUPTCY CODE, (B) APPROVING
THE FORM OF AND MANNER FOR FILING NON-CUSTOMER PROOFS
OF CLAIM AND REQUESTS FOR PAYMENT UNDER SECTION 503(B)(9)
OF THE BANKRUPTCY CODE, AND (C) APPROVING NOTICE THEREOF

The asbestos personal injury law firms of Gori Julian & Associates, P.C., Simmons Hanley Conroy, Paul Reich & Meyers, P.C., Kazan, McClain, Satterley & Greenwood, a Professional Law Corporation, and Early, Lucarelli, Sweeney & Meisenkothen (collectively, the "PI Law Firms"), by and through its undersigned counsel, hereby file this objection ("Objection")[2] in opposition to the Motion of Energy Future Holdings Corp., *et al.*, (the "Debtors") for Entry of an Order (the "Bar Date Order") (A) Setting Bar Dates for Filing Non-Customer Proofs of Claim and Requests for Payment Under Section 503(b)(9) of the Bankruptcy Code, (B) Approving the Form of and Manner for Filing Non-Customer Proofs of Claim and

---

[1] The last four digits of Energy Future Holdings Corp.'s taxpayer identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, for which joint administration has been granted, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

[2] The Debtors consented to provide the PI Law Firms to and including 6:00 p.m. on August 8, 2014 to file this Objection.

Requests for Payment Under Section 503(b)(9) of the Bankruptcy Code, and (C) Approving Notice Thereof (the "Motion") [D.I. 1682]. In support of this Objection, the PI Law Firms respectfully state as follows:

## PRELIMINARY STATEMENT

Several of the Debtors have been named in litigation by personal injury claimants seeking compensation for injuries sustained as a result of exposure to asbestos (the "Asbestos Defendants").[3] The Asbestos Defendants were in the business (and/or are successors to entities that had been in the business) of building power plants and electricity generation.

Both nuclear and electric power generation produces extreme amounts of heat as a result of burning or boiling. The presence of this heat necessitated the installation of insulation throughout power plants including in the walls, wires, pipes, boilers, and generators. As such, historically, power plants were depositories of asbestos and asbestos-laden materials and products.

Insulators, pipefitters, electricians, welders and other laborers often worked in close quarters and either handled asbestos or drilled or cut into it, releasing toxic asbestos fibers. Cutting into asbestos insulation would make fibers airborne, where they could be easily inhaled. In addition to its presence throughout the plant and equipment, workers responsible for building and maintaining the plants and equipment would wear insulated clothing or gear to do their jobs. For years, these pants, coats, aprons, mitts, and masks contained asbestos. In short, asbestos exposure was virtually unavoidable in power plants built prior to 1980. To the extent that

---

[3] The Debtors named in pending litigation include Ebasco Services, Inc. ("Ebasco"), EECI, Inc. f/k/a Ensearch E&C, Inc. ("EECI"), Energy Future Holdings Corp., EFH CG Holdings Company and/or EFH Corporate Services Company ("EFH"), Lone Star Industries, Inc. and/or Lone Star Energy Company, Inc. ("Lone Star"), Southwest Electric Corporation and/or Southwestern Electric Service Company, Inc. ("Southwest"), and Texas Utilities Company, Inc. and/or Texas Utilities Electric Company, Inc. and/or TXU Electric Company, Inc. ("TXU").

3736446v1

asbestos located in power plants was remediated after 1980, exposures causing personal injuries also could have occurred.

Because of changes in corporate structure and naming, the Asbestos Defendants have been named in a relatively small number of cases to date. Most of the PI bar has only recently learned, after extensive research, that the entity now known as EECI was at one time known as Ebasco, which was at various times part of or affiliated with Boise Cascade, Halliburton, and Raytheon Corporation, entities well-known to have liability for asbestos-related personal injuries.

Even without a widespread understanding of which entities were responsible for causing asbestos injuries, however, the Debtors' schedules reflect several hundred claims characterized as "personal injury" claims. Just the five PI Law Firms represent over 125 asbestos claimants. The PI Law Firms do not know whether all of the personal injury claims scheduled are asbestos claims, however, the asbestos claims brought against the Debtor entities by the PI Law Firms are so classified on the Debtors' schedules.

Additionally, generally accepted epidemiology instructs that asbestos claims will continue to manifest through 2049 or 2050. *See, e.g.*, *In re Fed.-Mogul Global, Inc.*, 330 B.R. 133, 158 (D. Del. 2005) (court found expert's methodology of estimation of future claims, which forecasted through 2049, more reliable (related expert report can be found at 2004 WL 3569872)); *In re Specialty Prods. Holding Corp.*, Case No. 10-11780, 2013 WL 2177694 (Bankr. D. Del. May 20, 2013) (court adopted expert methodology for estimation which forecasted claims through 2050). As a result, in every case in which asbestos claims have been estimated, the value of the unmanifested, future claims vastly outweighs the value of the present claims, often by a multiple of 4 to 5 times.

Through the Motion, the Debtors seek to have this Court enter a bar date that will apply to all "claims" as defined by Section 101(5) of the Bankruptcy Code – that is, the bar date sought by the Debtors would apply to ***present and future asbestos personal injury claims***.[4] Despite their knowledge of these existing claims and the likelihood of being sued in the future for injuries caused by asbestos exposure, the Motion does not mention the words "asbestos," "personal injury," "bodily injury" or otherwise provide notice that it is intended to apply to asbestos claimants (other than those whose claims are listed on the Schedules as "contingent," *i.e.* those who are were in litigation with the Asbestos Defendants when the cases were filed). Indeed, virtually every aspect of the Motion appears to be designed to conceal its effect on asbestos claimants.

While the Debtors certainly are able to provide direct notice to those creditors who commenced litigation before these bankruptcy cases filed,[5] present claimants who have not filed suit must be provided with adequate due process, including specialized publication notice. Due process also requires notice in the best media mix available[6] in order to ensure that those individuals or estates understand that their rights to pursue compensation are at issue. For example, the proposed bar date order would bar the claim of someone who has been diagnosed with cancer but may not (a) be aware that their cancer (especially if it is a form of cancer that has

---

[4] In *Jeld-Wen, Inc. v. Gordon Van Brunt (In re Grossman's Inc.)*, 607 F.3d 114 (3d Cir. 2010), the Court of Appeals stated that an asbestos claim arises when an individual is exposed to asbestos, not at the later point in time when such individual is diagnosed with an asbestos injury.

[5] It is interesting to note, however, that the attorneys who represent the asbestos personal injury claimants are not identified on the Debtors' schedules and therefore apparently not the intended recipient of notice of the proposed individualized proofs of claim. Because many of these claimants are suffering from serious health problems, this proposal will likely result in delay, confusion, and may result in some claims that are clearly being pursued not being filed timely.

[6] The Debtors propose to publish notice of the bar date on ***one occasion.*** With no television, internet or targeted publication in the locations where asbestos was located, the publication proposed is woefully insufficient and will not reach unknown present asbestos creditors.

-4-

multiple potential causes, such as lung cancer) could have been caused by exposure to asbestos or (b) hired a lawyer to advise them about their rights to pursue compensation. Or, the proposed bar date would act as a bar to an estate for a deceased individual who may have had a fatal asbestos disease but has not yet hired counsel to pursue compensation. There are many examples of these types of special circumstances related to the serious diseases caused by asbestos exposure and the latency period in manifestation of an asbestos disease that require that these types of claimants be provided with a notice specifically designed to inform them adequately of the entry of a bar date.

In addition, establishment of the bar date sought in the Motion would violate the fundamental due process rights of thousands of potential asbestos claimants, and further punish these involuntary creditors by cutting off rights that they do not even know that they will have. That is, the Debtors seek to require individuals with no cognizable asbestos injury and no present damages, and those in privity with such individuals, to file a "claim" or be forever barred if they (or a family member) develop an asbestos injury in the future.

Finally, turning to the proposed proof of claim form, the imposition of the proposed bar date would impose significant burdens on the individual claimants and this Court.

The Court should deny the Motion with respect to any asbestos-related personal injury claimants who have not been diagnosed with an asbestos injury, and approve a bar date for present claimants, if at all, only as part of an order that addresses the specialized noticing requirements necessary to reach this particular group of claimants.

3736446v1

## OBJECTION

**I.     Notice of the Motion and Bar Date Order Has Been Inadequate to Satisfy the Requirements of Procedural Due Process as Regards the Present and Future Asbestos Personal Injury Claimants**

1.     As the Third Circuit has stated, notice "is 'a[n] elementary and fundamental requirement of due process in any proceeding which is to be accorded finality . . . .'" *Jeld-Wen, Inc. v. Gordon Van Brunt (In re Grossman's Inc.)*, 607 F.3d 114, 125-126 (3d Cir. 2010) (citing *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)).  Therefore, the Third Circuit established that without notice of their claim a "claimant will not have a meaningful opportunity to protect his or her claim" and that "inadequate notice 'precludes discharge of a claim in bankruptcy.'" *Id.* at 126 (internal citations omitted).

2.     *No* notice of the Motion was provided to the individuals who have asserted asbestos-related claims against the Asbestos Defendants and appear on the Debtors' Schedules. *Compare* Global Notes and Statement of Limitation, Methods and Disclaimer Regarding the Debtors' Schedules of Assets and Liabilities and Statements of Financial Affairs [D.I. 1349], at 23-53 (identifying individuals with personal injury claims) *with* Motion ¶ 35 (failing to list any scheduled personal injury creditor under "Notice" heading).

3.     Indeed, the Motion's intention to bar asbestos claims was not readily apparent even to those who have proactively followed the docket in these cases.  Neither the Motion nor the proposed Bar Date Order use the words "asbestos," "personal injury," "bodily injury," or any other terminology that would call to the attention of asbestos counsel that their clients' rights were at issue.

4.     Because there is presently no committee or future claimants' representative appointed in these cases to protect the rights of this unique group of creditors, the implications of

this Motion were nearly missed.[7] Only through their vigilance did the PI Law Firms become aware of the intended breadth of the Motion.

5. By definition, the future claimants do not yet have a diagnosed injury and are therefore unaware that they may have a claim against one or more of the Debtors. They have no means to learn of or understand the importance of the bar date proposed by the Motion. The effort to cut off their future claims without providing them with *any* opportunity to be heard on the Motion is truly extraordinary and outrageous.

## II. The Direct Notice to be Provided to Present Asbestos Personal Injury Claimants is Inadequate.

6. The Debtors propose to serve an individualized proof of claim form not on the asbestos personal injury firm representing a claimant with a claim in suit, but instead directly on the claimant. To the extent that a bar date is established for known asbestos creditors, the proof of claim forms should be directed in the first instance to their personal injury counsel.

7. Where, as here, at least some of unknown but present asbestos claimants will be former employees and contractors, a diligent search of the employment records would identify a portion of the noticing population. Due process requires that these persons be notified. *See Chemetron Corp. v. Jones*, 72 F.3d 341, 346 (3d Cir. 1995) ("…[k]nown creditors must be provided with actual written notice of a debtor's bankruptcy filing and bar claims date.") (citation omitted). The Debtors should be required, at a minimum, to also provide direct notice to each of these individuals.

---

[7] As currently constituted, the Official Committee of Unsecured Creditors (the "OCC") represents a totally different type of liability from the asbestos personal injury creditors. There is no OCC member that is sensitive to the issues of asbestos creditors, understands the substantive and procedural safeguards provided to asbestos creditors, or is knowledgeable about the interests of the asbestos creditors. Consequently, and concurrently with the filing of this Objection, the PI Law Firms have formally requested that the U.S. Trustee appoint a separate committee of asbestos personal injury claimants.

**III.     Any Bar Date That Applies to Present but Unasserted Asbestos Claimants Must Be The Subject of A Specialized Notice and Media Plan Designed to Provide Such Claimants With Adequate Notice**

8.    The Debtors propose to publish notice on one occasion only.  Motion [D.I. 1682], at ¶ 21 ("[T]he Debtors propose to publish the Bar Date Notice, modified for publication . . . on one occasion in each of the publications listed . . . .").

9.    As discussed above, the nature of asbestos injury, and the necessity of understanding the nature of the liability of the Debtor entities, requires that a targeted notice program be approved in order to provide adequate notice to asbestos creditors.

10.    In the relatively few bankruptcy cases where a bar date was entered for present asbestos claimants, an extensive noticing program was implemented.

11.    The proposed publication notice is deficient on its face to the requirements for this population.

**IV.     The Proposed Bar Date Order Contravenes the Due Process Rights of Present and Future Asbestos Personal Injury Claimants**

12.    The Debtors' proposed Bar Date Order would ask this Court to do something that literally no other Court has ever done.  The Debtors propose to establish a bar date for people who do not know that they are injured, for people who do not know that they have been exposed to the Debtors' products, for people who do not yet have the relationships that will result in a claim against the Debtors, and even for those who have not yet been born (collectively, the "future claimants").

13.    Only one judge has expressed an intention to enter a bar date for future asbestos claimants based on his interpretation of *Grossman's*.  A bar date order has not yet been entered, and that legal issue remains hotly contested in those cases.  *See* 11/5/2013 Hr'g Tr. 40:8-13, *In re*

*Specialty Prods. Holding Corp.*, Case No. 10-11780 [D.I. 4286] (Bankr. D. Del.) ("Well, I'm inclined to direct that a bar date be established, including asbestos claims.") (attached as Ex. A).

14. Asbestos injuries have a very long latency period – injury can first manifest more than fifty (50) years following exposure.

15. Because future claimants are unaware that they have been injured, and unable to determine that they have been injured even through appropriate diligence, it is impossible to provide them with adequate due process notice of the need to assert a claim (which they do not now know that they have).

16. In *Amchem Products, Inc. v. Windsor*,[8] in the context of a mass tort class action, the Supreme Court discussed the impossibility of providing due process notice to individuals who had not yet manifested an injury, stating:

> Impediments to the provision of adequate notice, the Third Circuit emphasized, rendered highly problematic any endeavor to tie to a settlement class persons with no perceptible asbestos-related disease at the time of the settlement. Many persons in the exposure-only category, the Court of Appeals stressed, may not even know of their exposure, or realize the extent of the harm they may incur. Even if they fully appreciate the significance of class notice, those without current afflictions may not have the information or foresight needed to decide, intelligently, whether to stay in or opt out.
>
> Family members of asbestos-exposed individuals may themselves fall prey to disease or may ultimately have ripe claims for loss of consortium. Yet large numbers of people in this category – future spouses and children of asbestos victims – could not be alerted to their class membership. And current spouses and children of the occupationally exposed may know nothing of that exposure.

*Amchem*, 521 U.S. at 628.

17. Judge Judith Fitzgerald, a bankruptcy judge who presided over some of the largest and most complex asbestos cases that have sought to reorganize through a Chapter 11 case,

---

[8] 521 U.S. 591, 117 S.Ct. 2231 (1997).

addressed this issue directly in *In re Flintkote Company*,[9] responding to the suggestion that the fact that a future claimant possesses a § 101(5) "claim" allowed those claims to be subjected to a bar date, stating:

> The fact of the matter is that regardless of whether an exposed asbestos creditor who has not yet manifested an injury is said to have a "claim" or a "future demand" that creditor is not a known creditor entitled to actual notice, and is one who is impossible to identify, such that providing actual notice is, itself, impossible. Furthermore, there is no bar date for asbestos personal injury claims, there is an FCR to represent the interests of the exposed yet unimpaired creditors, and, if and when such creditor becomes ill, there will be a trust in place to address claims for compensation. There is nothing to be gained by requiring Flintkote to provide additional notice from what this Court has already approved.

486 B.R. at 128.

18.     Other cases that have addressed this issue (in circuits where the law has always been that an asbestos claim arises on the date of exposure for purposes of the Bankruptcy Code) have reached the same inescapable conclusion when considering the issue of whether notice that satisfies due process can be given to a population of future claimants that the Debtor knows exist.

19.     For example, the court in *Waterman S.S. Corp. v. Aguiar (In re Waterman S.S. Corp.)*, 141 B.R. 552 (Bankr. S.D.N.Y. 1992), vacated on other grounds, 157 B.R. 220 (S.D.N.Y.), stated "[w]e find that [the debtor] was unreasonable in its attempt to notify future Asbestos Claimants of the existence of their claims, and find that the claims were not discharged." 141 B.R. at 558. The *Waterman* court continued:

> Notice to these [future] Asbestosis Claimants is not cured by this Court's Order authorizing notice by publication; at its best, publication notice is an emaciated form of minimal due process. First, the notice was not reasonably calculated to apprise these claimants of the pendency of this bankruptcy. Second, no future Asbestosis Claimant could be deemed to have relinquished substantive rights

---

[9] 486 B.R. 99 (Bankr. D. Del. 2012).

> when, even if that individual had read the "notice," those individuals would have remained completely unaware that their substantive rights were affected.

*Id.*

20. The United States Bankruptcy Court for the District of Kansas reached a similar conclusion in *In re Chance Industries, Inc.*, 367 B.R. 689 (Bankr. D. Kan. 2006) explaining:

> If they are alive and actually see the notice, they could not recognize themselves as affected in any way by the bankruptcy case and will, therefore, take no action to ensure their interests are represented…. Such a notice by publication is an exercise in futility as applied to creditors who are not only unknown to the debtor, but are also unknown to themselves. It cannot possibly define the requirements of the Due Process Clause.

*Id.* at 708. *See also Hexcel Corp. v. Stepan Co. (In re Hexel Corp.)*, 239 B.R. 564 (N.D. Cal. 1999):

> [The Debtor] may be correct that this publication was sufficient to satisfy its notice obligation to creditors who could contemplate that they might have a claim. It is difficult to imagine, however, how the announcement of a bankruptcy proceeding published in the Wall Street Journal could possibly satisfy due process concerns for a potential creditor who had no way of knowing that it may have a claim against the debtor some time in the future.

*Id.* at 571. *See also In re Kewanee Boiler Corp.*, 198 B.R. 519, 530 (Bankr. N.D. Ill. 1996):

> Giving notice to future tort claimants is of course hampered by the reality of having to discern who specifically will be injured in the future. Without knowing today who will perceive themselves hurt tomorrow and then press claims, notice to particular individuals cannot be given and the amount of future liability cannot be ascertained except through reference to projections. However accurate such projections, no meaningful notice can be given to individuals who do not yet know they suffer from injury.

21. The only way to protect such future claimants is through representation, something they do not have in these cases. *See Findley v. Falise (In re Joint E. & S. Dist. Asbestos Litig.)*, 878 F. Supp. 473, 565 (E.D.N.Y. & S.D.N.Y. 1995), ("[F]uture interests are best protected 'by requiring that fair and just recovery procedures be made available to future claimants and by ensuring that they receive vigorous and faithful representation.'") (*quoting Ivy*

-11-

*v. Diamond Shamrock Chems. Co.* (*In re Agent Orange Prod. Liability Litig.*), 996 F.2d 1425, 1435 (2d Cir. 1993)).

22.     The solution that Congress reached – which offers an extraordinary benefit to companies that wish to address their asbestos liability in a global manner – was the enactment of Section 524(g) of the Bankruptcy Code.  As a result of the enactment of Section 524(g), a channeling injunction issued under that Section is the only means available to the Debtors to resolve its future asbestos-related liability.  *See In re W.R. Grace & Co.*, 729 F.3d 311, 320 (3d Cir. 2013) (". . . § 524(g) permits all asbestos-related claims against the debtor to be channeled to a trust, and thus it relieves the debtor of the uncertainty of future asbestos liabilities[.]  By removing that uncertainty and allowing the debtor to emerge from bankruptcy free of all asbestos liability, § 524(g) facilitates the company's ongoing viability, which in turn provides the trust with an evergreen source of funding to pay future claims.") (internal quotations omitted); *Combustion Eng'g, Inc.*, 391 F.3d 190, 234 (3d Cir. 2004) ("Section 524(g) provides a special form of supplemental injunctive relief for an insolvent debtor facing the unique problems and complexities associated with asbestos liability. . . . *To achieve this relief, a debtor must satisfy the prerequisites set forth in § 524(g) in addition to the standard plan confirmation requirements*.") (emphasis added).

23.     That is, a debtor cannot discharge its future asbestos liabilities through the use of § 105, a § 1129 discharge or the imposition of a bar date for asbestos personal injury claimants. *See Combustion Eng'g,* 391 F.3d at 237 nn. 49 & 50 (noting that "well-settled maxim" required specific statutory provision to prevail over more general provision and holding that "§ 105(a) cannot be used to achieve a result not contemplated by the more specific provisions of § 524(g)."); *see also In re Fed. Mogul Inc.*, 684 F.3d 355, 357–62 (3d Cir. 2012) (discussing

-12-

history of § 524(g) and observing that it is the only national statutory scheme for resolving asbestos litigation); *Grossman's,* 607 F.3d at 125 (noting that in "enacting §524(g), Congress took account of the due process implications of discharging future claims of individuals whose injuries were not manifested at the time of the bankruptcy petition.").[10]

24.     Congress enacted 11 U.S.C. § 524(g) to protect this specific class of asbestos victims because these individuals would have no reason to know that they even have a compensable claim or would be required to complete a proof of claim form.  *See In re Flintkote Co.*, 486 B.R. 99, 123 (Bankr. D. Del. 2012) (rejecting argument that would vitiate "the purpose of the statute by removing the protections for 'exposed yet unimpaired' asbestos creditors and depriving them of just compensation for their future injuries and illnesses, which was the primary goal behind the enactment of § 524(g).").  In fact, the very argument raised by the Debtors – that individuals who were exposed to the Debtors' products pre-petition can be discharged outside of § 524(g)(2)(B)(ii) – was rejected by at least one court in this district since entry of the *Grossman's* decision.  *See id.* at 126.[11]  In *Flintkote*, a debtor's former parent argued that because individuals who had been exposed to the debtor's products prepetition but had not yet manifested asbestos disease held "claims" under *Grossman's*, they could not hold "demands" as required under § 524(g)(2)(B)(ii).  Judge Fitzgerald flatly rejected this argument as it

---

[10] The PI Law Firms believe that as a matter of law it is impossible to provide adequate notice that satisfies the requirements of due process to future claimants.  Should the Court, however, conclude that the issue is in part or whole an issue of fact, the PI Law Firms request the opportunity to present expert and fact evidence in support of this position.

[11] Implicit in Debtors' Motion is an assertion that the fact that a future claimant is deemed to have a claim for purposes of Section 101(5) of the Bankruptcy Code allows a Debtor to eliminate its future asbestos-related liability through imposition of a bar date.  In so ruling, the Third Circuit did not alter the due process rights afforded to exposed-yet-asymptomatic victims.  *Id.* at 125-126 (noting that notice "is 'a[n] elementary and fundamental requirement of due process in any proceeding which is to be accorded finality'") (citing *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)).  The *Grossman's* court further noted that "[w]ithout notice of a bankruptcy claim, the claimant will not have a meaningful opportunity to protect his or her claim;" further stating that "inadequate notice . . . precludes discharge of a claim in bankruptcy."  *Id.* at 126 (internal citations omitted).

undermined "congressional effort, supported by courts that have confirmed plans and issued section 524(g) injunctions over the years." *Id*. at 125-26. As Judge Fitzgerald observed:

> The purpose of section 524(g) is to provide those whose illnesses manifest post-petition regardless of pre- or post-petition exposure, with a fund for recovery equivalent of what currently ill claimants will be paid. Section 524(g) thus removes the risk that the size of payment in compensation for injuries will depend on how quickly a victim gets sick or manifests an injury. It is impossible to include all individuals who are asymptomatic in the "known, expose category" because those individuals, themselves, do not know that they might become ill and thus, hold a right to payment, contingent on manifesting an illness. Without the existence of a trust to handle future demands, then asymptomatic individuals eventually manifest an injury, the debtor may no longer have available funds with which to compensate them.

*Id*. at 124-25.

25. To enter the Bar Date Order in its current form would hurt individuals whose disease will not manifest for decades and leave them without recourse when their diseases manifest. Future Claimants would be left to suffer and die from asbestos-related diseases without recompense. This is not only manifestly unfair to those individuals, but also contrary to the Bankruptcy Code's animating principle of equal distribution to similarly situated creditors. "Congress created the § 524(g) trust mechanism in order to protect the due process rights of people who had been exposed but not yet affected, and who might not manifest injury until a time when all available compensation had been paid out to people who got sick faster." *In re W.R. Grace & Co.*, 729 F.3d 332, 341 (3d Cir. 2013) (citation omitted).

## V.     The Bar Date Order Will Lead to Unnecessary Expense and Waste of Judicial Assets

26. Personal injury asbestos claims cannot be decided *en masse* because the pervasive factual disputes underlying asbestos claims are too individualized to be litigated in classes.[12]

---

[12] *See, e.g.*, *Georgine v. Amchem Prods., Inc.*, 83 F.3d 610, 626 (3d Cir. 1996), *aff'd sub nom. Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997) ("Class members were exposed to different asbestos-containing products, for different amounts of time, in different ways, and over different periods. Some class members suffer no physical
Continued…

Even "causation of [a] plaintiff's injury by defendant's product and plaintiff's resultant damages must be determined as to 'individuals, not groups.'"[13] The fact-intensive nature and individualized causation of asbestos claims, therefore, are not amenable to summary judgment or even omnibus claims objections. Further, asbestos defendants in the tort system often question product exposure and causation. By their very nature, such defenses almost always turn on disputed facts, preventing summary dispositions. Even if this Court were to consolidate asbestos related-personal injury claims, each claimant would be entitled to their individual due process and discovery rights. The Debtors will be unable to demonstrate that each asbestos plaintiff has not pled facts sufficient to send each case to a jury.

27.   The Court will face an impossible claims-allowance process with tens of thousands of individual estimation proceedings and with a high number of claims that it cannot liquidate filed by a multitude of individuals who are entitled to jury trials. The Court does not have core jurisdiction to make threshold determinations of the validity of asbestos personal injury claims. *See* 28 U.S.C. § 157(b)(2). The same situation led to a district court judge for the Eastern District of Louisiana handling *Babcock & Wilcox* to be highly critical of the debtor's arguments that its proposed claims-objections procedures could be used to eliminate entire categories of claims. The judge pronounced herself "awe-struck" when the debtor suggested that the court could dispose of the *first* 95,000 summary-judgment motions on asbestos personal-

---

….Continued

injury or have only asymptomatic pleural changes, while others suffer from lung cancer, disabling asbestosis, or from mesothelioma — a disease which, despite a latency period of approximately fifteen to forty years, generally kills its victims within two years after they become symptomatic. Each has a different history of cigarette smoking, a factor that complicates the causation inquiry.").

[13] *Cimino v. Raymark Indus., Inc.*, 151 F.3d 297, 313 (5th Cir. 1998) (emphasis added) (quoting *In re Fibreboard Corp.*, 893 F.2d 706, 711 (5th Cir. 1990)); *see also Malcolm v. Nat'l Gypsum Co.*, 995 F.2d 346, 350-54 (2d Cir. 1993) (disapproving consolidation for trial of forty-eight asbestos cases because too many different individual exposures, jobs, job sites, and diseases were involved).

injury proofs of claim in only three months. *See* Hr'g Tr. 1/25/2002, at 14, *In re Babcock & Wilcox Co.*, No. 00-cv-558 (E.D. La.) (attached as Ex. B). Additionally, the *Congoleum* court similarly concluded that an asbestos proof-of-claim resolution process was not feasible. *See In re Congoleum Corp.*, No. 03-51524, 2008 WL 314699, at *3-4 (Bankr. D.N.J. Feb. 4, 2008) ("Moreover, the potential filing of thousands of proofs of claim will likely defeat the interests of judicial economy. . . . In light of the potentially large number of claims in this case, therefore, if a bar date is set it is likely that the Court will face a staggering volume of hearings upon objection of a particular claim.").

28. Ultimately though, it will be the District Court that must liquidate any pending asbestos personal injury-related claims filed in response to the Bar Date Order and an asbestos claimant's statutorily protected jury trial right.[14] Pursuing this course of action will mire this Court – and this District – in burdensome and unnecessary litigation for years to come.

**VI.   The Bar Date Order's Proof of Claim Requirements are Unduly Burdensome for Asbestos Personal Injury Claimants.**

29. In the present case, it is clear that one of the Debtors' primary purposes for pursuing the Motion is to gain an improper litigation advantage over its present and future asbestos personal injury claimants. Their failure to include any reference to asbestos-related personal injury liabilities in their Motion, even though the Debtors know they may have significant asbestos liabilities, demonstrates this. The Debtors undeniably intend to significantly reduce the number and size of asbestos-related claims by relying on a lack of claimant knowledge regarding asbestos exposure, general claimant apathy and a series of omnibus objections. Using this artificially reduced asbestos-related liability, the Debtors will seek approval of a plan of reorganization that unfairly and inequitably discharges present and future

---

[14] *See* 28 U.S.C. §§ 157(b)(2)(B) & (b)(5).

asbestos claimants. *See Bank of Am. Nat'l Trust and Sav. Ass'n v. 203 LaSalle St. P'ship*, 526 U.S. 434, 444 (1999) ("[T]he danger inherent in any reorganization plan proposed by a debtor, then and now, that the plan will simply turn out to be too good a deal for the debtor's owners" and that the debtor will "use the reorganization process to gain an unfair advantage.") (internal quotations omitted).

30. There may be thousands of individuals, including former employees, contractors, their spouses and other family members who may be affected by the Debtors' use of asbestos containing products. In order to adequately protect the rights of these individuals, including those who have no current disease symptoms and who may never develop any illness, asbestos plaintiffs' law firms may feel that they are compelled to submit several forms on behalf of each such individual that they represent. Not only will such a process be unduly burdensome and cause resources to be diverted away from pursuing compensation for those with current injuries, but it would be an entirely wasteful exercise.

31. Present and future asbestos personal injury claimants are further unduly burdened by the Bar Date Order's requirement that each creditor has to fill out a separate claim form against each debtor he believes his claims are against. As summarized previously, the Debtors' corporate transactional history is opaque at best. Present and future asbestos personal injury claimant may not be able to adequately identify the specific Debtor liable for their individual asbestos-related diseases, especially without full disclosure and/or discovery designed to inform the population at large of the entities that used (or have liability for predecessor entities that used) asbestos, when it was used, and complete records of any individual of which the Debtors are aware who may have been exposed to such products.

3736446v1

32.  Compounding the unreasonable and unworkable bar date proposed by the Debtors is the extraordinarily short time frame proposed for the bar date.  The Debtors propose a bar date of approximately 77 days from the date of the entry of the Bar Date Order.  The proposed time period is insufficient to provide adequate publication notice of a bar date to those claimants with a present injury who have not filed suit against the Debtors, let alone time for those individuals to investigate whether they have a claim against the Debtors.

## CONCLUSION

WHEREFORE, the PI Law Firms respectfully requests that the Court: (a) deny the Motion with respect to asbestos claimants, or, in the alternative (b) (1) provide adequate notice to representatives of the asbestos creditors of the intended bar date and provide an opportunity for such representatives to be heard; (2) enter a bar date with respect to present asbestos claimants, if at all, only as part of an order that provides targeted and appropriate notice of an asbestos bar date to present claimants, and (c) deny the Motion with respect to future asbestos claimants; and (c) grant such other just, proper, and equitable relief.

Dated: Wilmington, Delaware
       August 11, 2014

Respectfully submitted,
**MONTGOMERY McCRACKEN WALKER & RHOADS, LLP**

 /s/ Natalie D. Ramsey
Natalie D. Ramsey, Esquire (DE Bar No. 5378)
Davis Lee Wright, Esquire (DE Bar No. 4324)
1105 North Market Street, Suite 1500
Wilmington, DE  19801
(302) 504-7800

*Counsel for Gori Julian & Associates, P.C.; Simmons Hanley Conroy; Paul Reich & Meyers, P.C.; Kazan, McClain, Satterley & Greenwood, a Professional Law Corporation, and Early, Lucarelli, Sweeney & Meisenkothen*