## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| ENERGY FUTURE HOLDINGS CORP. *et. al.*,[1] | ) Case No. 14-10979 (CSS) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |
| | ) **Hearing Date: August 13, 2014 @ 9:30 a.m.** |
| | ) **Objection Deadline: August 6, 2014 @ 4:00** |
| | ) **p.m.** |
| | ) |
| | ) **Re: 1676, 1769, 1789** |

### REPLY IN SUPPORT OF MOTION OF EFH NOTES INDENTURE TRUSTEE PURSUANT TO 11 U.S.C. §§ 1102(A)(1) AND 105 FOR APPOINTMENT OF AN OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR ENERGY FUTURE HOLDINGS CORP.

---

[1]   The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, which are jointly administered, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' proposed claims and noticing agent at http://www.efhcaseinfo.com.

## Table of Contents

Page

Preliminary Statement..................................................................................................... 1

A.    Background Facts Regarding Indenture Trustee............................................... 2

B.    The Debtors' Corporate Structure..................................................................... 2

C.    Original Solicitation and Formation of the T-Side Creditors' Committee ......... 3

D.    Termination of the RSA and Other Changes in the Trajectory of These Cases
      Prompted the Indenture Trustee to Request Appointment of a First § 1102(a)(1)
      Committee for EFH Corp............................................................................... 5

E.    The U.S. Trustee's July 30, 2014 Decision to Solicit for an EFH Corp. Creditors'
      Committee........................................................................................................ 6

F.    The Uncertain Status of the U.S. Trustee's Position on Solicitation................. 6

STANDARD OF REVIEW ........................................................................................... 7

ARGUMENT ................................................................................................................. 8

I.    SECTION 1102(a)(1) UNEQUIVOCALLY MANDATES THE APPOINTMENT
      OF A COMMITTEE FOR ALL UNSECURED CREDITORS OF EFH CORP. –
      BUT THAT HAS NOT OCCURRED HERE ................................................. 8

A.    The Plain Meaning of the Statute Controls and Requires Appointment of the
      Requested Committee ..................................................................................... 8

B.    The Appointment of a Committee is not Discretionary..................................... 9

C.    The T-Side Committee does not Satisfy Section 1102(a)(1) for EFH Corp..... 11

D.    11 U.S.C § 1102's Mandate Applies to each Debtor..................................... 12

E.    The Indenture Trustee Seeks a First 1102(a)(1) Committee, Not a "Second"
      1102(a)(2) Committee...................................................................................... 13

II.   THERE IS AN URGENT PRACTICAL NEED FOR THE IMMEDIATE
      APPOINTMENT OF A STATUTORILY REQUIRED 1102(a)(1) COMMITTEE
      FOR EFH CORP............................................................................................ 14

III.  WHILE THE MOTION WAS FILED FOR A PROPER PURPOSE DICTATED
      BY THE INDENTURES AND THE TRUST INDENTURE ACT, THE
      INDENTURE TRUSTEE'S MOTIVES OR PURPOSE ARE NOT RELEVANT
      TO THE COURT'S DETERMINATION OF WHETHER § 1102(a)(1)'S
      MANDATE HAS BEEN SATISFIED ......................................................... 15

Table of Contents (continued)

Page

A.   The U.S. Trustee's Conjecture Regarding the Indenture Trustee's Purposes is
     Irrelevant .......................................................................................................................... 15

IV.  THE ENTRY OF AN ORDER REQUIRING COMPLIANCE WITH SECTION
     1102(a)(1) FOR EFH CORP IS NECESSARY TO ENSURE PROMPT ACTION
     BY THE U.S. TRUSTEE ................................................................................................ 19

V.   CONCLUSION ............................................................................................................... 19

## TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.,
    467 U.S. 837, 104 S. Ct. 2778, 81 L. Ed. 2d 694 (1984)........................................................10

In re ABC Automotive Prods. Corp.,
    210 B.R. 437 (Bankr. E.D. Pa. 1997) ...................................................................................9

In re Combustion Eng'g, Inc.,
    391 F.3d 190 (3d Cir. 2004)....................................................................................................8

In re Garden Ridge Corp.,
    Civil Action No. 04-10324, 2005 Bankr. LEXIS 323 (Bankr. D. Del. Mar. 2, 2005).........9, 12

In re Kindred Healthcare, Inc.,
    No. 99-3199 (MFW), 2003 Bankr. LEXIS 1308 (Bankr. D. Del. Oct. 9, 2003) .....................14

In re NVF Co.,
    394 B.R. 33 (Bankr. D. Del. 2008) ........................................................................................9

In re Tribune Co.,
    464 B.R. 126 (Bankr. D. Del. 2011) .......................................................................................14

Mirant Ams. Energy Mktg., L.P. v. Official Comm. of Unsecured Creditors of Enron
    Corp.,
    Civil Action 02-6274, 2003 U.S. Dist. LEXIS 18149 (S.D.N.Y. Oct. 9, 2003).................9, 10

Morgan v. Gay,
    466 F.3d 276 (3d Cir. 2006)....................................................................................................9

Norwest Bank Worthington v. Ahlers,
    485 U.S. 197, 108 S.Ct. 963, 99 L.Ed.2d 169 (1988).............................................................8

United States v. Ron Pair Enters.,
    489 U.S. 235 (1989)................................................................................................................9

**FEDERAL STATUTES**

11 U.S.C. § 105...............................................................................................................................1, 8

11 U.S.C. § 1102(a)(1)............................................................................................................... passim

11 U.S.C. § 1102(a)(2)................................................................................................................11, 14

Trust Indenture Act (the "TIA") ...................................................................................................2

**RULES**

Fed. R. Bankr. P. 2020 .................................................................................................................8

Fed. R. Bankr. P. 9014 .................................................................................................................8

## Preliminary Statement

American Stock Transfer & Trust Company, LLC ("AST"), as successor trustee to The

Bank of New York Mellon Trust Company, N.A. (in such capacity, the "Indenture Trustee")

under the Indentures issued by EFH Corp.,[2] by and through its undersigned counsel, respectfully

replies to the Response filed by the United States Trustee (the "U.S. Trustee") (D.I. 1769) and to

the Debtors' Objection (D.I. 1773) to the motion for an entry of order requiring the appointment

of an official committee of unsecured creditors (the "EFH Committee") for the debtor Energy

Future Holdings Corp. ("EFH Corp.") pursuant to 11 U.S.C. §§ 1102(a)(1) and 105 (the

"Motion").  With the Motion the Indenture Trustee seeks entry of an order:

> (i)     compelling the U.S. Trustee to promptly appoint a creditors'
>         committee for EFH Corp. in accordance with Section 1102(a)(1)'s
>         mandate; and

> (ii)    requiring the immediate commencement of an appropriate
>         solicitation process for the selection of members for that
>         committee.

The appointment of an official committee representing EFH Corp. unsecured creditors is

not "discretionary" as the Debtors and the U.S. Trustee incorrectly assert in their responsive

papers.  By the express terms of the U.S. Trustee's May 13, 2014 Notice of Appointment, the

existing unsecured creditors' committee does not represent unsecured creditors of EFH Corp.

See U.S. Trustee's May 13, 2014 "Notice of Appointment" attached hereto as Exhibit 1 (D.I.

420).  The failure to appoint a committee to act as a fiduciary on behalf of EFH Corp. unsecured

creditors – the unsecured creditors of *the parent corporation* of the family of corporate entities

that is the subject of this multi-billion dollar bankruptcy proceeding – violates the Bankruptcy

Code.

---

[2]    Capitalized terms not defined herein shall have the meaning ascribed to them in the Motion (D.I. 1676) filed on
July 23, 2014.

While the U.S. Trustee's Response is conspicuously silent as to the U.S. Trustee's willingness to commence a solicitation process, little more than a week ago, in a letter to the Indenture Trustee, the U.S. Trustee stated that solicitation for an EFH Corp. Creditors' Committee would proceed. See U.S. Trustee's July 30 "Solicitation Letter" attached hereto as Exhibit 2 (stating "the U.S. Trustee has decided to solicit further for such a committee). For these reasons, those stated in the Indenture Trustee's underlying Motion, and those stated below, a solicitation must immediately proceed.

## A.    Background Facts Regarding Indenture Trustee

1.    The Indenture Trustee represents interests in approximately $1.9 billion in debt issued by EFH Corp. AST assumed its duties as Indenture Trustee shortly before the April 29, 2014 Petition Date. The Indenture Trustee's duties in these cases are governed by the terms of the Indentures and the Trust Indenture Act (the "TIA"). See Semi-Tech Litig., LLC v. Bankers Trust Co., 353 F. Supp.2d 460, 471 (S.D.N.Y. 2005) (noting that a "trustee's duties are limited to what is set forth in the indenture and the statute.").

## B.    The Debtors' Corporate Structure

2.    EFH Corp. is the parent company of all of the Debtors, including: (a) the entities comprising the "T-Side," namely TCEH and TCEH's parent company, EFCH, as well as their operating subsidiaries; (b) EFIH and its non-debtor Oncor Holdings (which is 100% owned by EFIH), Oncor, (which is approximately 80% owned by Oncor Holdings), and certain subsidiaries and affiliates of Oncor Holdings and Oncor; and (c) certain of EFH Corp.'s other direct and indirect debtor and non-debtor subsidiaries. Declaration of Paul Keglevic ¶¶ 19-22 (D.I. 98).

3.    The debtor EFIH is a holding company and a direct, wholly-owned subsidiary of EFH Corp. Id. at ¶ 53. EFIH's primary asset is its 100% ownership of Oncor Holdings. Id. at

¶ 53.  EFIH has no active business operations, and its capital structure is premised on the value derived from its indirect ownership of Oncor. Id. at ¶ 53.

4.      EFCH is a Delaware limited liability company and the direct parent of TCEH. Id. at ¶ 1.  TCEH is composed of: (a) the TCEH Debtors, including TCEH LLC; TCEH LLC's direct parent, EFCH; and most of the entities that compose TCEH, including the entities that compose Luminant's electricity generation, mining, commodity risk management and trading activities, and wholesale operations, TXU Energy and the other entities that compose the Debtors' retail operations, and TCEH Finance, Inc.; and (b) certain other entities that are not obligated on the TCEH Debtors' funded indebtedness. Id. at ¶ 22.  TCEH's business operations also depend on certain services that are provided by EFH Corporate Services Company, a subsidiary of EFH Corp., which acts as a shared-services center for Luminant and TXU Energy. Id. at ¶ 22.

5.      As noted, EFH Corporate Services Company is a wholly and directly owned subsidiary of EFH Corp. which provides a host of shared services, primarily to TCEH (i.e., Luminant and TXU Energy) and, to a lesser extent, EFH Corp., EFIH, and Oncor. Id. at ¶ 45.

6.      According to the Debtors' schedules and statements of financial affairs, EFH Corp. has liabilities of approximately $5.2 billion and assets of approximately $3.5 billion; and it made payments totaling more than $21.2 million to creditors within the 90 days prior to the Petition Date. See EFH Schedules (D.I. 1237); EFH Statement of Financial Affairs (D.I 1345).

7.      Notably, as evidenced by the ongoing disputes concerning solvency within the "make whole" litigation taking place on the "E-Side", the equity that EFH Corp. holds in EFIH may in fact have significant value.

## C.    Original Solicitation and Formation of the T-Side Creditors' Committee

8.      On April 30, 2014, the U.S. Trustee solicited the 50 largest creditors from the top 50 consolidated list of creditors provided by the Debtors.  On May 7, 2014, three business days

ahead of the Formation Meeting, the U.S. Trustee solicited the twenty largest creditors of each of

EFH Corp., EFIH, EFCH, EFH Corporate Services, and TCEH for interest in serving on an

official committee of unsecured creditors. U.S. Trustee Response ¶ 12 (D.I. 1769).

9.      On May 12, 2014, the U.S. Trustee convened a meeting (the "Formation

Meeting"), presumably with the intention of forming one or more official committees of

unsecured creditors in these cases. The Indenture Trustee submitted a questionnaire, attended

the Formation Meeting, and like the UMB Bank, N.A. as indenture trustee which submitted a

Statement in connection with the Motion (D.I. 1760), actively sought to sit as a member of a

creditors' committee that it expected would be formed for all of the Debtors.

10.     At the conclusion of the Formation Meeting, during which the U.S. Trustee's

counsel interviewed various creditors who had returned questionnaires and indicated a

willingness to serve on a creditors' committee, the U.S. Trustee appointed a seven-member

creditors' committee. Inexplicably, that committee of unsecured creditors represents the

interests of the unsecured creditors of *only* the TCEH Debtors and EFH Corporate Services

Company (the "T-Side Committee"). (See Notice of Appointment attached as Exh. 1.

11.     As the U.S. Trustee stated in a footnote to the Notice of Appointment, the

appointed committee does not represent creditors of EFH Corp.:

> ***The committee represents the interests of the unsecured creditors of only the
> TCEH Debtors and EFH Corporate Services Company and of no other debtors.***

Exh. 1 at "*" (emphasis added).

12.     To date no public explanation has been offered for the reasons for the decision not

to charge the existing committee with duties to EFH Corp. as the Debtors, and Fidelity, by

joinder, suggest would be possible. It is well established that the appointment of a single

committee, whose members *and professionals* are charged with fiduciary duties to all creditors

4

of all debtors, is the norm in large jointly administered bankruptcy cases.  See e.g., Docket at

337, In re Calpine Corp., Civil Action No. 05-60200, 2007 Bankr. LEXIS 4390 (S.D.N.Y. 2007)

(appointment of committee of unsecured creditors); Docket at 62, Lehman Bro's Holdings, Inc.,

Civil Action No. 08-13555, 445 B.R. 143 (S.D.N.Y. 2008) (appointment of official committee of

unsecured creditors).

**D.      Termination of the RSA and Other Changes in the Trajectory of These Cases Prompted the Indenture Trustee to Request Appointment of a First § 1102(a)(1) Committee for EFH Corp.**

13.      At the time that the T-Side Creditors' Committee was appointed, the pre-

negotiated Restructuring Support Agreement (the "RSA") was in place and various motions were

pending for the approval of certain DIP loans that had been agreed upon as part of the RSA.

14.      A key component of the restructuring contemplated under the RSA was the EFIH

Second Lien DIP (D.I. 1230), pursuant to which EFIH sought authority to borrow approximately

$1.9 billion in cash and another $95 million in the form of a closing fee to be used to repay the

EFIH Second Lien Notes and to settle "make whole" claims, including those claimed due by

certain Fidelity Funds.  EFIH Second Lien DIP Motion at ¶ 4-5 (D. I. 477).

15.      Following several days of hearings concerning the Debtors' request for approval

of the EFIH Second Lien DIP, and weeks of discovery including many depositions, the Court

provided tentative comments suggesting that it was not prepared to approve the EFIH Second

Lien DIP Facility.

16.      Subsequently, the Debtors withdrew their motion for approval of the EFIH

Second Lien DIP and terminated the RSA.  See Debtors' Notice of (A) Termination of

Restructuring Support Agreement, (B) Withdrawal of Second Lien Opt-In, and (C) Withdrawal

of EFIH Settlement Motion, EFIH Second Lien DIP Motion, and Restructuring Support

Agreement Assumption Motion. (D.I. 1697).

17.     In response to these recent events, and confronted with an uncertain and rapidly evolving environment in which the bond markets indicated that the potential recovery for EFH unsecured creditors would be higher than originally contemplated in the RSA, the Indenture Trustee concluded that there was a compelling and immediate need for the appointment of a creditors' committee to represent and protect the interests of the EFH Corp. unsecured creditors. Those interests include the interests of holders of hundreds-of-millions of dollars in bonds that are held by neither Fidelity funds nor members of the *ad hoc* group represented by Kasowitz Benson Tores & Friedman LLP.  Accordingly, on July 17, 2014, as it appeared imminent that the RSA would be terminated, the Indenture Trustee requested that the U.S. Trustee appoint an EFH Corp. creditors' committee.  See July 17, 2014 letter attached hereto as Exhibit 3.

18.     On July 23, 2014, while the U.S. Trustee was still considering the Indenture Trustee's request, the Indenture Trustee filed the Motion in order to timely place the issue before the Court at the scheduled August 13th omnibus hearing.

**E.     The U.S. Trustee's July 30, 2014 Decision to Solicit for an EFH Corp. Creditors' Committee**

19.     After reviewing the Indenture Trustee's request and its Motion, the U.S. Trustee apparently concluded that the Indenture Trustee's request for a committee was well-founded.  On July 30, 2014, the U.S. Trustee sent a letter to the Indenture Trustee (quoted above) in which in stated that it would conduct a solicitation.  See Exh. 2.

**F.     The Uncertain Status of the U.S. Trustee's Position on Solicitation**

20.     Shortly after sending the July 30 letter, however, the U.S. Trustee puzzlingly reversed its course and informed the Indenture Trustee that it would not solicit for a committee. However, as noted, the U.S. Trustee's filed Response (which notably is not an opposition) is silent with regard to the current status of any solicitation.  U.S. Trustee Response (D.I. 1769).

21.     In accordance with a request contained in the U.S. Trustee's July 30th letter, on

August 3, 2014, the Indenture Trustee provided the U.S. Trustee with contact information for

various holders, at least three of whom had indicated an interest in hearing more about possible

service on a committee.  A redacted copy of the August 3rd letter to the U.S. Trustee is attached

as Exhibit 4.

## STANDARD OF REVIEW

22.     The narrow issue before the Court is the question of whether Section 1102(a)(1)

requires the U.S. Trustee to appoint a committee that is charged with the fiduciary duty to protect

unsecured creditors of the EFH Corp.  The asterisked note in the Notice of Appointment makes it

clear that no such 1102(a)(1) committee currently exists.  This Court unquestionably has the

authority to review and enter an order requiring that the U.S. Trustee comply with

Section 1102(a)(1).

23.     Section 105(a) of the Bankruptcy Code clearly provides this Court with the

authority to enter the narrow order that the Indenture Trustee has requested.  11 U.S.C. § 105(a)

(stating "[t]he court may issue any order, process, or judgment that is necessary or appropriate to

carry out the provisions of this title...."); see also In re Combustion Eng'g, Inc., 391 F.3d 190,

236 (3d Cir. 2004) ("The general grant of equitable power contained in § 105(a) cannot trump

specific provisions of the Bankruptcy Code, and must be exercised within the parameters of the

Code itself.") (citing Norwest Bank Worthington v. Ahlers, 485 U.S. 197, 206, 108 S.Ct. 963, 99

L.Ed.2d 169 (1988)).  Here, the Motion merely seeks enforcement of Section 1102(a)(1) (a

specific provision of the Bankruptcy Code) and does not seek to create any new substantive

right.  See also Fed. R. Bankr. P. 2020 (providing procedure for judicial review of the U.S.

Trustee's acts, or failure to act).

## ARGUMENT

I.   **SECTION 1102(a)(1) UNEQUIVOCALLY MANDATES THE APPOINTMENT OF A COMMITTEE FOR ALL UNSECURED CREDITORS OF EFH CORP. – BUT THAT HAS NOT OCCURRED HERE**

A.   **The Plain Meaning of the Statute Controls and Requires Appointment of the Requested Committee**

24.   The plain language of the Bankruptcy Code requires the appointment of an EFH creditors' committee "as soon as practicable." Section 1102(a)(1) of the Bankruptcy Code states:

> (a)(1)  Except as provided in paragraph (3), as soon as practicable after the order for relief under chapter 11 of this title, the United States trustee shall appoint a committee of creditors holding unsecured claims and may appoint additional committees of creditors or of equity security holders as the United States trustee deems appropriate.

25.   In analyzing a provision of the Bankruptcy Code, "[t]he plain meaning of [a statute] should be conclusive, except in the 'rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intention of its drafters. In such cases, the intention of the drafters, rather than the strict language, controls.'" In re NVF Co., 394 B.R. 33, 38-39 (Bankr. D. Del. 2008) (quoting United States v. Ron Pair Enters., 489 U.S. 235, 242 (1989)); Morgan v. Gay, 466 F.3d 276, 278 (3d Cir. 2006)). Neither the U.S. Trustee nor the Debtors have cited any authority that justifies ignoring the plain meaning of the Bankruptcy Code.

26.   While it is true that the composition of a committee appointed under Section 1102(a)(1) need not include a representative from every single constituent among the assemblage of unsecured creditors, it must nonetheless represent and act as a fiduciary for all unsecured creditors. See, e.g., In re ABC Automotive Prods. Corp., 210 B.R. 437, 441 (Bankr. E.D. Pa. 1997) (Section 1102(a)(1) committees have a fiduciary duty that "obligates them to act with undivided loyalty *for the benefit of all of the unsecured creditors*.") (emphasis supplied); In re

Garden Ridge Corp., Civil Action No. 04-10324, 2005 Bankr. LEXIS 323, at *1, *9 (Bankr. D. Del. Mar. 2, 2005) (Section 1102(a)(1) committee "has a duty to represent *all general unsecured creditors*") (emphasis supplied); Mirant Ams. Energy Mktg., L.P. v. Official Comm. of Unsecured Creditors of Enron Corp., Civil Action No. 02-6274, 2003 U.S. Dist. LEXIS 18149, at *1, *26 (S.D.N.Y. Oct. 9, 2003) ("fundamental notion" that a Section 1102(a)(1) committee ". . . *represents all unsecured creditors* whether or not a particular group is included in its membership") (emphasis supplied).

27.    What has occurred here appears unprecedented.  In contravention of the clear mandate of Section 1102(a)(1), the U.S. Trustee has unequivocally instructed the T-Side Committee that it should not represent the interests of creditors of any debtor other than the T-Side Debtors and EFH Corporate Services Company.  As a result, unsecured creditors with claims totaling in hundreds-of-millions of dollars, the creditors at EFH Corp., have been left unrepresented by a statutory fiduciary.

**B.    The Appointment of a Committee is not Discretionary**

28.    Both the Debtor and the U.S. Trustee rely on inapposite cases involving bankruptcy court review of discretionary actions of U.S. Trustees.  For the reasons discussed above, those decisions are of no moment here because the Court is not being asked to review a discretionary decision, such as committee composition.  To the contrary, here the U.S. Trustee has not complied with the requirements of Section 1102(a)(1), which requirements provide "no room for discretion."  See Mirant Ames. Energy Mktg., 2003 U.S. LEXIS 18149 at *9-10 ("no room" for discretion where the Bankruptcy Code states "shall order the appointment").

29.    Further, neither the Bankruptcy Code nor the enabling act for the Office of the United States Trustee affords the U.S. Trustee with any discretion with regard to whether or not its acts to appoint a first committee for a debtor.  The appointment of a committee in cases

involving billions of dollars is mandatory. <u>See</u> <u>Chevron, U.S.A., Inc. v. Natural Res. Def.</u>

<u>Council, Inc.</u>, 467 U.S. 837, 842-43, 104 S. Ct. 2778, 2781, 81 L. Ed. 2d 694 (1984) ("First,

always, is the question of whether Congress has directly spoken to the precise question at issue.

If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency,

must give effect to the unambiguously expressed intent of Congress."); <u>cf.</u> small business

provision of Section 1102(a)(3) (describing the only occasions when the U.S. Trustee is relieved

of the duty to appoint a committee and making it clear that Congress has considered exceptions

to the Section 1102(a)(1) mandate and only elected to provide for exceptions in the smallest of

cases). Here, where the U.S. Trustee has not appointed a committee for a debtor in one of the

largest cases ever, and a party-in-interest has requested the appointment of a committee, the entry

of an order requiring the appointment is mandatory. Such appointment is not subject to the

discretionary analysis that is performed in cases where parties challenge who was or was not

selected for a committee, or where they challenge the discretionary decision not to appoint an

equity or other "second" committee under Section 1102(a)(2).

      30.     The relief that the Indenture Trustee seeks with the Motion is extraordinarily

limited – the entry of an order compelling the U.S. Trustee to conduct a solicitation process and

appoint a committee that is tailored to the unique facts and circumstances of the EFH Corp. case

today. The relief sought is nothing more than what the U.S. Trustee stated it would do in its

Solicitation Letter, where the office stated ". . . the U.S. Trustee has decided to solicit further for

such a committee." <u>See</u> Exh. 2. Any <u>potential</u> issues that may later arise regarding who should

be appointed to such a committee should be reserved for another day.

**C.      The T-Side Committee does not Satisfy Section 1102(a)(1) for EFH Corp.**

31.      Simply stated, what has occurred here is that the U.S. Trustee has appointed a committee that expressly does not represent the EFH Corp. creditors (among others) and thus does not fulfill the threshold requirements of Section 1102(a)(1).

32.      The unusual nature of this situation is obvious.  At the front of the mind of every experienced bankruptcy professional analyzing this case are the questions why the unusual asterisk was inserted and why the U.S. Trustee did not appoint a joint committee for all Debtors.[3]

33.      Indeed, even the Debtors' Objection repeatedly acknowledges that it is axiomatic that a "Creditors' Committee has the duty to 'maximize recovery to all general unsecured creditors.'"  Debtors' Opp. at 9, par. 20 (quoting Garden Ridge, 2005 Bankr. LEXIS 323, at *12 (adding emphasis)).  In stark contrast, the unprecedented asterisked T-Side Committee in these cases avowedly does not have any such duty.  Accordingly, the existing T-Side Committee simply cannot be, and does not in fact function as, a Section 1102(a)(1) committee for EFH Corp.

34.      The Debtors' Objection further underscores this point with their comments regarding the issue of "adequate representation."  As the Debtors italicize: "'Adequate representation is lacking *only when these conflicts prevent an official committee from upholding its fiduciary obligations* to all general unsecured creditors."  Id. (further quoting Garden Ridge, 2005 Bankr. LEXIS 323, at *12).  Once again, the asterisked "committee" never had and never undertook such "fiduciary obligations to all general unsecured creditors," and thus never purported to be, or to serve as, the statutorily mandated Section 1102(a)(1) committee.

---

[3]      The Indenture Trustee does not, by the Motion, challenge the initial decision because the Indenture Trustee's own decision to seek the appointment of an EFH Corp. Committee at this time is driven by the change in the trajectory of these cases following the failure of the Debtors and other RSA parties to achieve their pre-negotiated plan.

35.     What the U.S. Trustee seeks to do here is to cover its failure to comply with the plain, express mandate of the statute with a simple asterisk. The notion appears to be that a law compelling certain specific action can be satisfied by giving a title (such as "Creditors' Committee") to a noncompliant body, and then inserting an asterisk; an asterisk that essentially means: "not."

36.     The U.S. Trustee's apparent position is misleading. On the one hand, the U.S. Trustee squarely admits in the constituting footnote of the asterisked committee that that body has no fiduciary or other duties to creditors of whole portions of the capital structure worth billions of dollars. It says: "The committee represents the interests of the unsecured creditors of only the TCEH Debtors and EFH Corporate Services Company and of no other Debtors." Yet, on the other hand, the U.S. Trustee now pretends in its Response that the formation of the asterisked committee is one that satisfies the express mandate of Section 1102(a)(1) for the EFH Corp. case – which under the case law would require the T-Side Committee to have fiduciary duties to all general unsecured creditors. The U.S. Trustee seems oddly comfortable simultaneously asserting "yes" and (asterisk) "no." The mandate of the statute is straightforward and cannot be satisfied by such equivocation, depriving creditors with claims totaling hundreds of millions of dollars of their right to representation *by an official committee.*

**D.     11 U.S.C § 1102's Mandate Applies to each Debtor**

37.     Neither the Debtors nor the U.S. Trustee have even posited a legal theory to support the proposition that the T-Side Committee satisfies Section 1102(a)(1).

38.     Further, the mere fact that these cases are jointly administered does not relieve the U.S. Trustee of the duty to appoint a committee, for it is axiomatic that the joint administration of debtors in a bankruptcy case does not absolve each debtor from complying with the applicable provisions of the Bankruptcy Code. See e.g., In re Kindred Healthcare, Inc., Civil Action No.

99-3199 (MFW), 2003 Bankr. LEXIS 1308, at *8 (Bankr. D. Del. Oct. 9, 2003) (holding that because "each Debtor must comply with the Bankruptcy Code and Rules," quarterly fees paid by each debtor to the U.S. Trustee would be calculated on the basis of the disbursements of each debtor, even though cases were jointly administered and debtors made disbursements from a centralized cash management system); In re Tribune Co., 464 B.R. 126, 182-83 (Bankr. D. Del. 2011) (holding that section 1129(a)(10) requires that a proposed plan must be accepted by at least one impaired class on a debtor-by-debtor basis).

**E.      The Indenture Trustee Seeks a First 1102(a)(1) Committee, Not a "Second" 1102(a)(2) Committee**

**(i)      The Response of the U.S. Trustee and the Debtor's Objection bypass 1102(a)(1) and seek to recast the Motion as if it were for a Second Committee under 1102(a)(2)**

39.      The Response of the U.S. Trustee and the Debtors' Objection expend significant ink discussing cases where parties complain about the composition of a properly appointed Section 1102(a)(1) committee or argue for the appointment of an additional committee under Section 1102(a)(2) in light of the questioned ability of the committee initially appointed under Section 1102(a)(1) to represent them. Such circumstances – which, to be sure, involve discretionary judgments of the U.S. Trustee – are simply not applicable in light of the note at the asterisk in the Notice of Appointment.

40.      In addition, it is clear that the Indenture Trustee, on the one hand, and the U.S. Trustee and Debtors, on the other, disagree with regard to which provision of Section 1102 is applicable. While the Motion was filed under Section 1102(a)(1), the U.S. Trustee offers no comment on that section's mandate, and instead, engages in a discussion of the law governing discretionary acts under Section 1102(a)(2).

41.     On a contrasting wavelength, the Debtors take an extreme position that Section 1102(a)(1) can be satisfied so long as a committee is appointed for any single debtor in a jointly administered group.  That certainly cannot be the law where, as here, the supposed committee disavows any obligations (let alone fiduciary duties) to whole swaths of the capital structure.

42.     The U.S. Trustee's unprecedented failure to comply with Section 1102(a)(1) is made all the more troubling by the fact that no committee represents the interests of creditors of the parent corporation, EFH Corp, which is the holding company and "corporate brain" for the conglomerate.  The Debtors, of course, delight in the fact that they can march forward in these cases unsupervised by a creditors' committee monitoring the interests of creditors of that corporate parent.  Clearly, any evaluation of the Debtors' argument should be mindful of their natural preference to remain unsupervised by a fiduciary for all creditors of EFH Corp.

## II.      THERE IS AN URGENT PRACTICAL NEED FOR THE IMMEDIATE APPOINTMENT OF A STATUTORILY REQUIRED 1102(a)(1) COMMITTEE FOR EFH CORP.

43.     The immediate need for the appointment of a creditors' committee representing the interests of the EFH Corp. unsecured creditors is abundantly apparent from the factual circumstances quickly unfolding in these cases, which include the following:

i.      These cases are among the largest and most complex ever filed.  Now that the RSA has been terminated, the analysis of the best path to a maximum recovery for EFH Corp. creditors will be complex and subject to variation over the coming months. This will require the analysis of a tremendous amount of tax, valuation and intercompany claims data.  As the Debtors state in their Objection, over 1,800 documents have already been produced.

ii.     In light of the fact that the EFIH may be solvent, the EFIH unsecured creditors and EFH Corp. creditors may in fact now be in competition for the reorganized Debtors' equity.

iii.    The various T-Side creditors, which are represented by multiple firms and the T-Side Committee which employs an investment banker and a financial advisor, have repeatedly stated that they plan on scrutinizing and perhaps challenging historic transactions and transfers between the T-Side and EFH Corp.

iv.   The competing conflicting interests that the Debtors' counsel must balance across these cases are extraordinary and perhaps unprecedented.

v.    Existing active EFH debt holders such as the Fidelity Funds and the members of the *ad hoc* group are all free to hedge, trade and balance any competing interests they may or may not have at other levels of the Debtors' capital structure. Accordingly, their existence and past activity does not serve as a substitute for an official committee.

vi.   These cases continue to proceed at a rapid pace and the EFH Corp. creditors lack a fiduciary to participate in or monitor numerous issues as a creditors' committee would be required to do under Section 1103, including: the ongoing make whole litigation, cash use and accounting at EFH Corp., the Tax Sharing Agreement and any possible amendments thereto, intercompany claims, potential claims, if any, against third parties, the T-Side Committee's ongoing discovery and investigation into potential claims against EFH Corp., and of course negotiations regarding any sale process and/or plans of reorganization in these cases.

44.    In summary, not only is the appointment of an EFH Committee mandatory, but the recent changes to the circumstances in these cases and the uncertain path forward, make it imperative that the U.S. Trustee appoint an EFH Committee in accordance with Section 1102(a)(1)'s mandate.

**III.   WHILE THE MOTION WAS FILED FOR A PROPER PURPOSE DICTATED BY THE INDENTURES AND THE TRUST INDENTURE ACT, THE INDENTURE TRUSTEE'S MOTIVES OR PURPOSE ARE NOT RELEVANT TO THE COURT'S DETERMINATION OF WHETHER § 1102(a)(1)'S MANDATE HAS BEEN SATISFIED**

**A.    The U.S. Trustee's Conjecture Regarding the Indenture Trustee's Purposes is Irrelevant**

45.    The Motion was filed for an unassailably proper purpose – the maximization of the recovery of the amounts due on the Indentures by EFH noteholders as required by the Indentures and the Trust Indenture Act.

46.    This fact was made clear by the Indenture Trustee in an August 3rd letter to the U.S. Trustee.  See August 3, 2014 letter attached hereto as Exhibit 5.  The insinuation in the U.S. Trustee's Response that such a purpose is not proper is without legal or factual support and is not

logical. Notably, the Indenture Trustee has not ever agreed or stated that it would withdraw the Motion if its fees were paid, and it never authorized any other party to make such representations. While the Indenture Trustee previously explored alternatives to the formation of a committee as requested by the Debtors, once it became clear that the RSA would be terminated, the Indenture Trustee has been unwavering in its advocacy for the appointment of a committee of unsecured creditors of EFH Corp.

47.     As such, the U.S. Trustee's admittedly speculative innuendo regarding the Indenture Trustee's purposes in filing the Motion is utterly irrelevant to, and should not excuse or delay, the entry of an order requiring compliance with the U.S. Trustee's unambiguous obligations under 1102(a)(1).

48.     The statute plainly requires the appointment of an EFH Committee irrespective of the Indenture Trustee's or anyone else's purpose in invoking the statute. That should be the end of the matter.

49.     However, to the extent that the Court has any inclination to go further in considering the U.S. Trustee's groundless suppositions, they should be rejected for many reasons. To begin with, the U.S. Trustee's purported grounds for even hypothetically raising any "proper purpose" question are so thin as to be invisible. All that the U.S. Trustee claims is the following:

> On July 31, 2014, the U.S. Trustee's counsel engaged in two telephone conversations with Harold L. Kaplan, counsel to UMB Bank, the indenture trustee for the EFIH unsecured notes. During these teleconferences, and other calls with various parties, including AST's counsel and the Debtors' counsel, there appeared to be an implied, if not express, suggestion that the U.S. Trustee may not need to appoint a second creditors' committee if the expenses of AST and UMB, including attorneys' fees, would be paid by Debtors.

Response at ¶ 23.

50.    There is no indication whatsoever among the whisps of suspicion cited there that even such "appearance" of "implied" "suggestion" came from the Indenture Trustee, as opposed to UMB's counsel.  To be clear, UMB as indenture trustee is quite openly of the view that there is no need for a committee at its own Debtor, and it is also quite openly of the view that the EFIH creditors' advisors' fees ought to be paid on an ongoing basis.  UMB as trustee has said exactly this in its Statement in Response to AST's present motion.  (D.I. 1760).  Moreover, that is also the position that UMB as trustee advocated in its letter dated July 31, 2014 to the U.S. Trustee, which the U.S. Trustee attached as Exhibit C to its Response.  There is nothing suspicious and nothing to hide there.

51.    But, very importantly, that is *not the position of the Indenture Trustee*.  UMB and the Indenture Trustee serve as indenture trustees at different, and perhaps competing, positions in the Debtors' complex capital structure.  Unlike UMB, which feels there is no need for a committee on behalf of the EFIH creditors, and which essentially opposes there being a committee representing all interests here, the Indenture Trustee, by this very Motion, is pressing for the statutorily-mandated committee.  *The U.S. Trustee's innuendo about a purported purpose to seek current payment of fees as the motivation for bringing the Motion, with the implied further insinuation that the Indenture Trustee would withdraw its request if the Debtors agreed to an arrangement that resulted in current payment of fees, is flatly contradicted by the Indenture Trustee's pressing this very motion.*  Unlike UMB, the Indenture Trustee firmly believes that the Bankruptcy Code requires a committee that has fiduciary duties to the Indenture Trustee's constituencies at EFH Corp.  The Indenture Trustee stands by the Motion.  The Indenture Trustee has no intention of withdrawing the Motion.  The Bankruptcy Code expressly affords the Indenture Trustee these rights, and the Court should order compliance with the statute.

52.     Moreover, to the extent that the U.S. Trustee asserts that seeking the payment of fees is improper, such assertions lack any foundation in law – fees and expenses constitute a fully allowable portion of the Indenture Trustee's claims and seeking the prompt and current payment of them is proper.  But to be clear, the Indenture Trustee's efforts to seek the payment of its fees and expenses have not been linked to the Motion.  The Indenture Trustee filed the Motion in response to the complexities created by the derailment of the pre-arranged plan contemplated by the RSA and the obvious need for a fiduciary to lead negotiations and other matters on behalf of EFH Corp. creditors.  The creditors of EFH Corp. should not now bear the burden of the unforeseen consequences resulting from the creation of an "asterisked" committee.

53.     Furthermore, it is ironic that the U.S. Trustee now claims that it "may" need discovery and/or additional time to determine if the Motion was filed for a purpose that, in their subjective view, was improper, when the appointment of a committee with clear fiduciary duties to all EFH Corp creditors, would in fact serve as an antidote to the U.S. Trustee's concerns that parties are not acting properly.  Unfortunately, the U.S. Trustee has allowed hearsay, rumor and innuendo, from parties with interests adverse to the interests of EFH Creditors, to serve as an excuse for its failure to appoint a Bankruptcy-Code mandated fiduciary for the creditors of EFH Corp.[4]

---

[4] The Indenture Trustee has repeatedly requested that the U.S. Trustee inform the Indenture Trustee what, if any, discovery the U.S. Trustee believes is required so that the Indenture Trustee could promptly bring the issue to the Court ahead of the hearing and so that the hearing could proceed on schedule.  To date the U.S. Trustee has not responded to these inquiries and no discovery has been sought by the U.S. Trustee.  The hearing should not be delayed and the U.S. Trustee should be deemed to have waived any right to discovery.  The U.S. Trustee has known since July 17 that the Indenture Trustee would seek an order of the Court if a committee was not appointed.  As discussed herein, the Indenture Trustee believes that the issues before the Court are legal issues and no discovery is required in connection with a request for entry of an order pursuant to Section 1102(a)(1).

## IV.    THE ENTRY OF AN ORDER REQUIRING COMPLIANCE WITH SECTION 1102(a)(1) FOR EFH CORP IS NECESSARY TO ENSURE PROMPT ACTION BY THE U.S. TRUSTEE

54.    Under the current circumstances, where the U.S. Trustee has already reversed course once, and has asserted that an asterisked committee is sufficient, a clear and unequivocal order compelling the appointment of a committee as soon as is practical is required.

55.    To date there has not been any solicitation directed to EFH Corp. bondholders. Since the majority of bonds at EFH Corp. are held through the Depository Trust Corporation ("DTC"), holders can only be reached through widespread publication or through a directed notice delivered through DTC. The solicitation of such holders would neither be burdensome nor expensive. If the U.S. Trustee files a notice on the docket indicating that it is commencing a solicitation process and provides a contact for interested creditors, the Indenture Trustee could deliver copies of that notice to all holders through DTC at no cost or burden to the U.S. Trustee.

## V.    CONCLUSION

56.    As noted above, at this time the Indenture Trustee is not seeking relief to compel any particular committee composition. Rather, the Indenture Trustee is merely seeking an order compelling the U.S. Trustee promptly to commence a solicitation process tailored to the specific current facts and circumstances of these cases to reach the known universe of creditors, including all holders of debt under the EFH Indentures. The Indenture Trustee is asking for an order directing no more than what the U.S. Trustee said it would do in its July 30, 2014 letter. The express language of the statute requires entry of such an order. For the foregoing reasons, and the reasons stated in the Motion, the Indenture Trustee requests that the Court enter an order:

(i)    compelling the U.S. Trustee to promptly appoint a creditors' committee for EFH Corp. in accordance with Section 1102(a)(1)'s mandate; and

(ii)    requiring the immediate commencement of an appropriate
        solicitation process for the selection of members for that
        committee.

August 11, 2014

**CROSS & SIMON, LLC**

By: _CPS_____

Christopher P. Simon (Del. Bar No. 3697)
913 North Market Street, 11th Floor
Wilmington, Delaware 19801
Telephone: (302) 777-4200
Facsimile: (302) 777-4224
csimon@crosslaw.com

- and —

**NIXON PEABODY LLP**
Amanda D. Darwin
Richard C. Pedone
Erik Schneider
100 Summer Street
Boston, Massachusetts 02110
Telephone: (617) 345-1000
Facsimile: (617) 345-1300
adarwin@nixonpeabody.com
rpedone@nixonpeabody.com
eschneider@nixonpeabody.com

*Counsel to American Stock Transfer & Trust
Company, LLC, as Indenture Trustee*