**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) | Case No. 14-10979 (CSS) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | **Re: D.I. 1682, 1782, 1791, 1796** |

**DEBTORS' REPLY IN SUPPORT OF
BAR DATE WITH RESPECT TO ASBESTOS CLAIMS**

---

[1]  The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810.  The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201.  Due to the large number of debtors in these chapter 11 cases, which are being jointly administered, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

## Table of Contents

Table of Authorities .................................................................................................... ii

Preliminary Statement .................................................................................................1

Background ...................................................................................................................3

Argument ......................................................................................................................5

I.      Section 524(g) Is Not The Sole Vehicle To Address Unmanifested Asbestos
        Claims. ..............................................................................................................5

II.     The Proposed Notice and Procedures With Respect to Present Asbestos Claimants
        is Reasonable and Should be Approved ..........................................................10

        A.      The PI Law Firms' Due Process Concerns Are Unfounded and Unripe. ..............10

        B.      Notice of the Motion Was Proper. .......................................................13

        C.      Notice to "Present but Unidentified" Asbestos Claimants of the Bar Date
                Is Sufficient. ...............................................................................14

        D.      The Proof of Claim Process, As Altered, is Not Unduly Burdensome. ................16

        E.      The PI Law Firms' Concerns Regarding Judicial Economy Are
                Inapplicable Here. .........................................................................16

i

## <u>Table of Authorities</u>

**Cases**

*Amchem Products, Inc. v. Windsor,*
    521 U.S. 591 (1997)................................................................................................ 10, 11

*Chemetron Corp. v. Jones,*
    72 F.3d 341 (3d Cir. 1995)........................................................................................ 5

*First Fidelity Bank, N.A. v. Hooker Invs., Inc. (In re Hooker Invs., Inc.),*
    937 F.2d 833 (2d Cir. 1991)................................................................................. 5, 15

*In re Chance Indus., Inc.,*
    367 B.R. 689 (Bankr. D. Kan. 2006) ...................................................................... 11

*In re Combustion Eng'g, Inc.,*
    391 F.3d 190 (3d Cir. 2004)................................................................................... 6, 8

*In re Flintkote Company,*
    486 B.R. 99 (Bankr D. Del. 2012) ........................................................................... 7

*In re Hexcel Corp.,*
    239 B.R. 564 (N.D. Cal. 1999) ............................................................................... 11

*In re Keene Corp.,*
    188 B.R. 903 (Bankr. S.D.N.Y. 1995)............................................................. 5, 6, 15

*In re Kewanee Boiler Corp.,*
    198 B.R. 519 (Bankr. N.D. Il. 1996)...................................................................... 11

*In re Placid Oil Co.,*
    753 F.3d 151 (5th Cir. 2014) .................................................................................... 2

*In re Smidth & Co.,*
    413 B.R. 161 (Bankr. D. Del. 2009) ........................................................................ 5

*In re Specialty Products Holding Corp., et al.,*
    No. 10-11780 (PJW) (Bankr. D. Del. May 31, 2010)............................................ 2, 6, 8, 9

*In re W. R. Grace & Co.,*
    729 F.3d 311 (3d Cir. 2013)................................................................................... 6, 8

*Jeld-Wen, Inc. v. Van Brunt (In re Grossman's Inc.),*
    607 F.3d 114 (3d Cir. 2010)............................................................................. passim

*Katchen v. Landy,*
    382 U.S. 323 (1966)................................................................................................. 5

ii

*Waterman S.S. Corp. v. Aguiar (In re Waterman S.S. Corp.)*,
    141 B.R. 552 (Bankr. S.D.N.Y. 1992) .............................................................................. 11

*Wright v. Corning*,
    679 F.3d 101 (3d Cir. 2012) ..................................................................... 2, 11, 13, 14

**Statutes**

11 U.S.C. § 101(5) .................................................................................................. 1, 6, 8

11 U.S.C. § 105 ............................................................................................................... 8

11 U.S.C. § 105(a) ..................................................................................................... 8, 11

11 U.S.C. § 1141 .......................................................................................................... 6, 8

11 U.S.C. § 524(g) .................................................................................................. passim

11 U.S.C. § 524(g)(2)(B)(ii)(I) ........................................................................................ 7

11 U.S.C. § 524(g)(5) ....................................................................................................... 7

**Rules**

Fed. R. Bankr. P. 2002(a)(7) .......................................................................................... 13

Fed. R. Bankr. P. 2002(l) ............................................................................................... 11

Fed. R. Bankr. P. 3003(c) .............................................................................................. 13

Fed. R. Bankr. P. 3003(c)(3) ............................................................................................ 5

Fed. R. Bankr. P. 9008 .................................................................................................... 11

LBR 2002-1(e) .......................................................................................................... 13, 16

The above-captioned debtors and debtors in possession (collectively, the "Debtors") file this reply (this "Reply")[1] to the objection (the "Objection")[2] to the Debtors' motion to approve a bar date (the "Motion"),[3] filed by a group of personal injury law firms that represent holders of purported asbestos claims against certain Debtor entities (the "PI Law Firms"). In support of this Reply, the Debtors respectfully state as follows.

## Preliminary Statement

1.      The Debtors filed a motion to set a bar date for all "claims," as that term is defined in section 101(5) of the Bankruptcy Code. The Motion was filed on proper notice, and the only objection to the Motion was the Objection filed by the PI Law Firms. In essence, the Objection asserts two reasons that the Motion should not be approved with respect to asbestos claims: (a) the Motion improperly subjects "unmanifested" asbestos claims to a bar date process; and (b) the form of notice provided to "manifested" but unidentified claims is insufficient and the proposed proof of claim process is problematic because of the unique nature of asbestos claims. Although not legally required, the Debtors will make certain changes to the bar date notice to address some of the issues raised in the Objection. The Objection should otherwise be overruled.

---

[1]     Capitalized terms used but not defined in this Reply shall have the meanings set forth in the *Declaration of Paul Keglevic, Executive Vice President, Chief Financial Officer, and Co-Chief Restructuring Officer of Energy Future Holdings Corp.,* et al., *in Support of First Day Motions* [D.I. 98] (the "First Day Declaration").

[2]     *Objection of Certain Asbestos Claimants to the Motion of Energy Future Holdings Corp., et al., for Entry of an Order (A) Setting Bar Dates for Filing Non-Customer Proofs of Claim and Requests for Payment Under Section 503(b)(9) of the Bankruptcy Code, (B) Approving the Form of and Manner for Filing Non-Customer Proofs of Claim and Requests for Payment Under Section 503(b)(9) of the Bankruptcy Code, and (C) Approving Notice Thereof* [D.I. 1791].

[3]     *Motion of Energy Future Holdings Corp., et al., for Entry of an Order (A) Setting Bar Dates for Filing Non-Customer Proofs of Claim and Requests for Payment Under Section 503(b)(9) of the Bankruptcy Code, (B) Approving the Form of and Manner for Filing Non-Customer Proofs of Claim and Requests for Payment Under Section 503(b)(9) of the Bankruptcy Code, and (C) Approving Notice Thereof* [D.I. 1682].

2.      There is nothing in the Bankruptcy Code that requires the Debtors to treat asbestos claims differently than any other claims against the Debtors.  That applies with equal force to unmanifested asbestos claims.  The law in the Third Circuit is clear:  unmanifested claims are "claims" under section 101(5) of the Bankruptcy Code that are subject to the application of a bar date.  *Wright v. Corning*, 679 F.3d 101 (3d Cir. 2012) ("persons exposed to a debtor's conduct or product pre-petition are deemed to understand that they held claims"); *Jeld-Wen, Inc. v. Van Brunt (In re Grossman's Inc.)*, 607 F.3d 114 (3d Cir. 2010) (holding that bar date applied to asbestos claim based on prepetition exposure that manifested postpetition).  Thus, holders of asbestos claims have the same rights *and obligations* as any other individual with a claim in these chapter 11 cases.

3.      At least one circuit court has directly held that an unmanifested asbestos claim may be discharged where a bar date is combined with a generic publication notice that does not mention asbestos claims.  *See In re Placid Oil Co.*, 753 F.3d 151 (5th Cir. 2014).  Moreover, as the Objection acknowledges, the firm that is collectively representing the personal injury firms that filed the Objection made substantially the same arguments in *Specialty Products*—an "asbestos case" that involved 15,000 asbestos claims on the Petition Date—and those arguments were overruled there.[4]  The PI Law Firms attempt to avoid the straightforward analysis required by *Grossman's* and *Wright* and the outcome in *Placid* by relying on due process arguments that are not ripe, section 524(g) of the Bankruptcy Code, and out-of-context statements from

---

[4]      *In re Specialty Products Holding Corp., et al.*, No. 10-11780 (PJW) (Bankr. D. Del. May 31, 2010).  The relevant transcripts are attached hereto as **Exhibit A**.  Although the bar date order has not yet been entered, the court has made it clear that it will not reconsider its fundamental decision to subject unmanifested asbestos claims to the bar date.  *Specialty Products*, Hr'g Tr. at 6:10-13 [D.I. 4458] (Bankr. D. Del. Jan. 7, 2014) ("I've already ruled that there's going to be a bar date. . . . That's not an issue that I'm going to address again.").  Thus, the assertion that the establishment of a bar date for unmanifested claims in *Specialty Products* remains open—other than potentially on appeal—is incorrect.

2

"asbestos cases" that involved tens of thousands—or, in some cases, hundreds of thousands—of asbestos claims.   Those arguments must fail.

4.       The PI Law Firms also assert various objections with respect to the form of notice the Debtors propose to provide to "present but unidentified" potential asbestos claimants (*e.g.*, people who are currently sick and estates of deceased individuals) and "identified" or "known" asbestos claimants (*i.e.*, parties who asserted asbestos claims against the Debtors prepetition).   While not legally necessary, the Debtors will supplement their proposed notice to address certain of these arguments.   The Debtors will file a revised form of order, including revisions to the direct form of notice and a supplemental asbestos-specific publication notice, with the Court in advance of the hearing.   The Debtors request that the Court overrule any remaining objections and enter the revised order establishing a bar date.

## **Background**

5.       These are not "asbestos cases."   The Debtors did not manufacture asbestos, construct thousands of buildings containing asbestos, manufacture consumer products containing asbestos, or take part in any of the other activities that define asbestos-driven bankruptcy cases where tens of thousands, or hundreds of thousands, of asbestos cases are filed.   Because the Debtors do not face substantial asbestos liabilities, the Debtors do not currently anticipate seeking relief under section 524(g) of the Bankruptcy Code.   Rather, the Restructuring Support Agreement (the "RSA") contemplated that all asbestos claims against certain Debtors, including EECI, the putative defendant for the vast majority of asbestos claims asserted by the PI Law Firms, would be paid in the ordinary course of business post-emergence to the extent parties proved their claims and complied with the bar date process.   Given the nature and scope of EECI's asbestos liabilities, the Debtors currently anticipate that similar treatment will be

3

afforded under any proposed plan of reorganization. Asbestos claims against the TCEH Debtors, which are even fewer in number, will be subject to the same treatment as any other general unsecured claim.

6.     As noted in the First Day Declaration, certain Debtor entities, including EECI, are associated with a discontinued gas distribution business. First Day Declaration ¶ 52 (noting certain Debtor and non-Debtor entities associated with discontinued gas distribution businesses). The entities that composed that line of business were acquired by the Debtors in 1997, and the assets involved with that line of business were sold in 2004. The asbestos claims asserted against EECI relate to earlier operations of these entities' predecessors. In total, there are 392 scheduled asbestos-related cases against the Debtors, including approximately 121 cases being defended[5] (20 of which are related to the Debtors' electricity generation activities) and approximately 270 cases where the Debtors have rejected an indemnification demand. The litigation and settlement expenses incurred in connection with asbestos claims against the Debtors are not material. Accordingly, this restructuring is unlikely to be driven by asbestos claims or result in a channeling injunction under section 524(g) of the Bankruptcy Code.[6]

7.     The purported asbestos claims against the Debtors, like all of the Debtors' liabilities, reflect a point of due diligence for parties participating in the ongoing marketing process of EFH Corp. Thus, the Debtors and potential bidders seek to use the tools available in the Bankruptcy Code to gather information regarding their outstanding liabilities and to bar *all* "claims" that are not properly and timely filed. That being said, the Debtors are making every

---

[5]   This figure includes both "direct" claims and claims where the Debtors have accepted an indemnification demand.

[6]   As indicated in the Objection, the PI Law Firms have requested that the United States Trustee appoint an asbestos committee in these cases. The Debtors believe that the request is inappropriate and will address the request in due course with both the United States Trustee and, if a motion is filed, the Court.

effort to protect the due process rights of all claimants, including both "present but unidentified" and unmanifested asbestos claims, by engaging in extensive publication notice. Indeed, a large portion of the Debtors' publication notice was designed with potential future claimants in mind. The Debtors will publish notice of the bar date in a paper located in each jurisdiction that, to the best of the Debtors' knowledge, had a plant or other project that may have led to asbestos exposure. In addition to local publication, the Debtors are publishing notice in trade journals, national newspapers, and certain other sources.

8. Moreover, in an effort to address the PI Law Firms' concerns regarding the form of notice being provided, the Debtors will (a) modify their direct notice to include more information regarding asbestos claims; (b) conduct a reasonable search of their employee records to determine if it is possible to identify former employees and contractors that may have been exposed to asbestos and mail direct notice to such individuals; and (c) publish an asbestos-specific notice including references to asbestos exposure, applicable plants, certain predecessor entities, and the need to file a proof of claim even if an individual has not manifested any illness or injury. To accommodate these adjustments, the Debtors will extend the bar date by 30 days. The Debtors will file a revised form of order and revised notice materials with the Court in advance of the hearing. Notwithstanding these additional steps, all holders of asbestos claims—like any holder of *any* claim that is discharged in bankruptcy—will maintain the right to argue that the bar date violated their due process rights.

## Argument

**I.      Section 524(g) Is Not The Sole Vehicle To Address Unmanifested Asbestos Claims.**

9. The Bankruptcy Rules clearly provide for a bar date: "The court shall fix . . . the time within which proofs of claim or interest may be filed." Bankruptcy Rule 3003(c)(3).

5

Moreover, courts recognize that the ability to set a bar date "contributes to one of the main purposes of bankruptcy law, securing, within a limited time, the prompt and effectual administration and settlement of the debtor's estate." *In re Smidth & Co.*, 413 B.R. 161, 165 (Bankr. D. Del. 2009) (*citing Chemetron Corp. v. Jones*, 72 F.3d 341, 346 (3d Cir. 1995) (*citing Katchen v. Landy*, 382 U.S. 323, 328 (1966))). "The bar date is critically important to the administration of a successful chapter 11 case, and the reorganization process:  [a] bar order serves the important purpose of enabling the parties to a bankruptcy case to identify with reasonable promptness the identity of those making claims against the bankruptcy estate and the general amount of the claims." *In re Keene Corp.*, 188 B.R. 903, 907 (Bankr. S.D.N.Y. 1995) (*citing First Fidelity Bank, N.A. v. Hooker Invs., Inc. (In re Hooker Invs., Inc.)*, 937 F.2d 833, 840 (2d Cir. 1991).).  The bar date process, in turn, is vital to the claims allowance process under section 502 of the Bankruptcy Code.  "The bar date is akin to a statute of limitations, and must be strictly observed." *Keene*, 188 B.R. at 907.  Failure to comply with a bar date subjects a claim to discharge under section 1141 of the Bankruptcy Code.  *See Grossman's*, 607 F.3d at 122. And—most relevant to the issues presented in the Objection—under *Grossman's*, it is clear that unmanifested asbestos injuries based on prepetition exposure to asbestos are "claims" under section 101(5) of the Bankruptcy Code that are subject to being discharged.  *Id.* at 125 ("[A] 'claim' arises when an individual is exposed pre-petition to [asbestos.]").

10.     In *Grossman's*, the Third Circuit unambiguously held that a bar date could apply to an unmanifested asbestos claim, but remanded for further proceedings on whether due process had been satisfied in *that particular case*. *Id.* at 125–28.  In that case—which, like this case, was not an "asbestos case"—the Third Circuit held that a bar date applied to an asbestos claim that manifested nearly 10 years following the effectiveness of a plan.  *Id.* at 117.  In so holding,

6

*Grossman's* makes it clear that the PI Law Firms are simply incorrect when they suggest that section 524(g) of the Bankruptcy Code is the sole mechanism to address unmanifested asbestos claims.  Objection ¶¶ 21–24; *see also Specialty Products*, Hr'g Tr. at 46:9-11 [D.I. 4286] (Bankr. D. Del. Nov. 5, 2013) (rejecting  an argument that a bar date could not apply to unmanifested asbestos claims).

11.    The cases cited by the PI Law Firms do not compel a result that deviates from the clear holding in *Grossman's*.  Most are "asbestos cases" that sought and obtained a section 524(g) injunction.  For example, several of the PI Law Firms' citations are passages describing the function of section 524(g).  *See*, *e.g.*, *W. R. Grace & Co.*, 729 F.3d 311, 320 (3d Cir. 2013) (describing the relief provided by section 524(g)).  Similarly, the PI Law Firms rely on a passage from a case that speaks to the unremarkable proposition that the requirements of section 524(g) must be satisfied to *obtain relief* under section 524(g).  Objection ¶ 21 (*citing Combustion Eng'g, Inc.*, 391 F.3d 190, 234 (3d Cir. 2004)).  Of course, the fact that the requirements of section 524(g) must be satisfied to obtain section 524(g) relief is irrelevant here where the Debtors are not seeking relief under section 524(g).

12.    The PI Law Firms also mischaracterize *In re Flintkote Company*, 486 B.R. 99, 128 (Bankr D. Del. 2012), by implying that *Flintkote* directly addressed the question of whether an unmanifested asbestos claim could be subject to a bar date.  Objection ¶ 15.  In fact, *Flintkote* addressed an argument that a claim based on prepetition exposure to asbestos is not a "demand" under section 524(g) of the Bankruptcy Code.  486 B.R. at 124.  This is important *in that context* because, to obtain a section 524(g) injunction, a debtor must show, among other things, that it

will be subject to "substantial future demands for payment."  11 U.S.C. § 524(g)(2)(B)(ii)(I).[7]

The objector in *Flintkote*, relying on *Grossman's*, asserted that claims based on prepetition

exposure to asbestos could not be "demands" under section 524(g), because "it appears from a

literal reading of § 524(g)(5) that the terms 'claim' and 'demand' are meant to be mutually

exclusive" and *Grossman's* held that prepetition exposure to asbestos gives rise to a "claim."

*Flintkote*, 486 B.R. at 124.  The court found that the "literal interpretation [of section 524(g)(5)]

produces a result that cannot be reconciled with the intent of its drafters" and held that claims

based on prepetition exposure to asbestos could constitute "demands" under section 524(g).

Nothing about the holding in *Flintkote* or the language cited in paragraph 15 of the Objection is

relevant to the issue at bar or deviates from *Grossman's* clear holding that unmanifested asbestos

claims can be subject to a bar date, and such claims may be discharged if the bar date satisfied

due process.

13.    The PI Law Firms' argument that a maxim of *statutory construction* somehow

overrules the plain holding of *Grossman's* must also fail.  Section 524(g) provides an iron-clad

channeling injunction that provides 100% certainty with respect to the resolution of all asbestos

claims.  *See, e.g. In re W. R. Grace & Co.*, 729 F.3d 332, 341 (3d Cir. 2013) (noting

"[c]ongressional intent to allow a debtor to 'emerge free and clear of the entire universe of

asbestos liabilities'").  Given those provisions, it is not surprising that cases hold that section

105(a) of the Bankruptcy Code cannot be used to craft an alternative channeling injunction

regime.  *See Combustion Eng'g*, 391 F.3d at 237 nn. 49 & 50 (holding that section 105 cannot

supplant section 524(g) if section 524(g)'s requirements have not been satisfied).  Of course,

---

[7]    "Demand" means "a demand for payment, present or future, that (A) was not a claim during the proceedings leading to the confirmation of a plan of reorganization."  *Id.* § 524(g)(5).

8

setting a bar date that results in the discharge of a claim if due process is satisfied and the bar date is not complied with is entirely distinct from a channeling injunction that represents a full resolution of all current and future asbestos claims (including with respect to non-Debtor third parties).  Moreover, if Congress had intended for section 524(g) to displace the bar date process for unmanifested asbestos claims, it could have excepted those claims from the definition of "claim" in section 101(5) of the Bankruptcy Code or precluded the discharge of such claims via an amendment to section 1141 of the Bankruptcy Code.  Instead, Congress chose to identify a section 524(g) channeling injunction "to *supplement* the injunctive effect of a discharge."  11 U.S.C. § 524(g)(1)(A) (emphasis added).  Ultimately, the PI Law Firms' argument cannot be reconciled with *Grossman's* holding that a bar date applied to an unmanifested asbestos claims.

14.     Notably, the Objection repeats substantially the same arguments that were asserted, and failed, in *Specialty Products*.  In that case, an official committee of asbestos claimants (represented by the same firm representing the PI Law Firms here) proposed a section 524(g) plan and put forward a bar date motion that did not include asbestos claimants.  *Specialty Products*, Nov. 5 Hr'g Tr. at 4:17-20 (noting that a bar date had not been set because there was a disagreement about whether the bar date should apply to unmanifested asbestos claims).  The debtors, who were proposing an alternative plan, objected to the bar date motion and argued that unmanifested asbestos claims should be included in the bar date process under the clear rule adopted in *Grossman's*.  *See id.* at 11:1-21.  The debtors in that case noted that it was unclear whether the final restructuring would include a 524(g) injunction and, if section 524(g) was not used, the debtors were entitled to the benefits of the bar date process and a discharge of claims.  Over the course of two separate hearings and submissions by the asbestos committee and a future claims representative, the bankruptcy court rejected the "exclusivity of section 524(g)," due

9

process, and judicial economy arguments asserted nearly verbatim here. *See id.* at 46:9-11 (after hearing objections to the application of a bar date to unmanifested asbestos claims, "ordering that a bar date notice be sent to everybody"); Hr'g Tr. at 12:21-22 [D.I. 4312] (Bankr. D. Del. Nov. 15, 2013) ("I think *Grossman* has changed everything."); *see also* Jan. 7, 2014 Hr'g Tr. at 6:10-13  ("I've already ruled that there's going to be a bar date. . . . That's not an issue that I'm going to address again.").

15.    Ultimately, the PI Law Firms' reliance on "asbestos cases" involving section 524(g) injunctions illustrates the weakness of this Objection.  This is not an "asbestos case."  The Debtors have given no indication that they will propose a 524(g) plan for these asbestos obligations that do not represent substantial liabilities of the Debtors.  The presence of a bar date in no way prevents the Debtors from proposing a 524(g) plan if that becomes the approach the Debtors elect to pursue after obtaining the additional information provided by the bar date process.  And none of these issues modifies *Grossman's* clear holding that a bar date can apply to unmanifested asbestos claims.

## II.    The Proposed Notice and Procedures With Respect to Present Asbestos Claimants is Reasonable and Should be Approved.

16.    The PI Law Firms assert that the proposed notice and proof of claim suffer various shortcomings.  Each of these arguments has either been addressed in the Debtors' proposed modifications to the notices described here or should be overruled.

### A.    The PI Law Firms' Due Process Concerns Are Unfounded and Unripe.

17.    The PI Law Firms argue that due process with respect to unmanifested asbestos claims can *never* be satisfied by publication notice.  But *Grossman's* plainly forecloses the new blanket rule suggested by the PI Law Firms.  If that rule was the law, *Grossman's* could have

10

been affirmed on alternate grounds, rather than remanded for further proceedings. The Third Circuit simply could have held that the unmanifested injury was a "claim" but that, as a matter of law, the publication notice in that case did not satisfy due process. Instead, the Third Circuit provided a non-exclusive list of considerations that the lower court "may wish to consider" "[i]n determining whether an asbestos claim has been discharged." *Grossman's*, 607 F.3d at 127–28. It defies logic to suggest that *Grossman's* is anything but clear that an unmanifested asbestos claim can, in fact, be subject to a bar date and discharged.

18.    The cases cited by the PI Law Firms cannot overcome *Grossman's* clear holding. The Supreme Court's *dicta* in *Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997), does not set down a blanket rule against publication notice for unknown claimants. *Amchem* was an "asbestos case," notably not in the context of bankruptcy, and involved an expansive effort to settle untold numbers of asbestos claims to be asserted against multiple participating companies. *Id.* at 603–06. In essence, the "settlement" in *Amchem* sought to establish a "grand-scale compensation scheme" using the class action mechanism. *Id.* at 622. The Supreme Court held that the "predominance" and adequate representation requirements for class certification had not been satisfied. *Id.* at 625–27. The court went on to note, in *dicta*, that, "in accord with the Third Circuit, however, [] we recognize the gravity of the question whether class action notice sufficient under the Constitution and Rule 23 could ever be given to legions so unselfconscious and amorphous." *Id.* at 628. Nothing about the Supreme Court's *dicta* in the context of *Amchem*—which was not even a bankruptcy case—supports a conclusion that due process can never be satisfied with respect to unmanifested asbestos claims in the bankruptcy bar date context. Indeed, it is telling that *Amchem* was affirming a Third Circuit ruling that predated *Grossman's*; if the *per se* rule the PI Law Firms seek was the law, *Grossman's* could have

11

affirmed the lower court on alternative grounds rather than remanding for a fact-intensive determination about due process.  The cases from other jurisdictions cited by the PI Law Firms appear to adopt blanket rules against publication notice that are simply incompatible with *Grossman's*.[8]

19.    Publication notice is a widely-accepted form of notice with respect to "unknown" claimants of all types.  *Wright*, 679 F.3d at 107–08 ("[W]e generally hold that for unknown claimants . . . notice by publication in national newspapers is sufficient to satisfy the requirements of due process."); Bankruptcy Rule 2002(l) (providing that "[t]he court may order notice by publication if it finds that notice by mail is impracticable."); Bankruptcy Rule 9008 ("Whenever these rules require or authorize service or notice by publication, the court shall, to the extent not otherwise specified in these rules, determine the form and manner thereof, including the newspaper or other medium to be used and the number of publications.").  There is no question that unmanifested asbestos claimants present unique due process concerns, and that those unique concerns played a role in Congress adopting what amounts to a safe harbor provision.  Compliance with section 524(g) settles, once and for all, any exposure to unmanifested asbestos claims.  But that does not mean that a bar date and publication notice is incapable of satisfying the fact-intensive inquiry due process demands.  Nor does it mean that such claimants will be stripped of the ability to raise due process arguments at a later date.

---

8    *See Waterman S.S. Corp. v. Aguiar (In re Waterman S.S. Corp.)*, 141 B.R. 552 (Bankr. S.D.N.Y. 1992) (appearing to hold that publication notice can never satisfy due process); *In re Chance Indus., Inc.*, 367 B.R. 689, 708–09 (Bankr. D. Kan. 2006) (same); *In re Hexcel Corp.*, 239 B.R. 564 (N.D. Cal. 1999) (same in *dicta*, after applying the "fair contemplation" test to hold that an unmanifested asbestos claim is not a "claim" under section 101(5) of the Bankruptcy Code).  *In re Kewanee Boiler Corp.*, 198 B.R. 519, 538 (Bankr. N.D. Il. 1996), is inapposite, because the "[d]ebtor made no attempt to reach such endangered persons with any notice."  Notably, none of these cases actually analyze the form of notice that was provided.  Indeed, in some instances, it appears that the only publication notice that was provided was a single publication in a national newspaper about the commencement of the debtor's chapter 11 case.  The Debtors do not assert that such a single national publication would satisfy due process with respect to unmanifested claims.

Simply put, the discharge of *any* claim is subject to a due process analysis; asbestos claims are no different.  And, as *Grossman's* makes clear, the *highly-individualized* due process analysis occurs at the time a party *asserts a claim*—asbestos or otherwise—not at the time the bar date itself is set.

20.    The Debtors are providing expansive publication notice pursuant to the materials originally filed in the Motion as well as the supplemental materials that will be filed in advance of the hearing.  Although the Debtors are confident that the proposed notice satisfies the due process rights of unmanifested claimants, the bar date order does not attempt to foreclose future due process challenges.  Certain parties with unmanifested asbestos claims against the Debtors who do not comply with the bar date may successfully assert due process challenges in the future.  But those claims are not ripe today, and they do not present a valid reason to preclude the entry of a bar date that applies to unmanifested claims.

**B.    Notice of the Motion Was Proper.**

21.    The PI Law Firms assert that the Motion should be denied because notice of the Motion was not provided to known asbestos claimants.  The PI Law Firms do not cite a single case to support the proposition that notice of a bar date *motion*, as opposed to notice of a *bar date*, must be provided to all creditors.  That is not surprising: there is no such case because that is simply not the law.  Instead, Bankruptcy Rule 2002(a)(7) provides that parties in interest be provided notice of "the time fixed for filing proofs of claim pursuant to Bankruptcy Rule 3003(c)."  That rule requires notice of the bar date itself, not the motion seeking to establish the bar date.  Indeed, the Local Rules contemplate that a bar date order can be granted *ex parte* as long as the United States Trustee and the official committee are given notice and certain other

13

requirements are met.  *See* Local Rule 2002-1(e).  The Debtors have gone beyond what Local Rule 2002-1(e) requires.

22.     For the avoidance of doubt, the Debtors intended to, and will, serve counsel to identified asbestos claimants as well as the asbestos claimants themselves with notice of the Bar Date once it is set.  The Debtors will clarify this point in the revised form of order.

**C.     Notice to "Present but Unidentified" Asbestos Claimants of the Bar Date Is Sufficient.**

23.     The PI Law Firms assert that the proposed notice to "present but unidentified" holders of asbestos claims (*e.g.*, individuals who currently have asbestos-related illnesses and the estates or certain family members of deceased individuals who have not sued the Debtors) of the Bar Date is insufficient because (a) the proposed publication notice is insufficient in a variety of ways and (b) the Debtors should provide direct notice to prior employees and contractors who may have been exposed to asbestos.  Objection ¶¶ 7, 9–11.

24.     The PI Law Firms do not cite a single case to support their position that the Debtors must use the "best media mix available" to provide publication notice for present but unidentified claimants.  Indeed, the PI Law Firms do not even indicate what the "best media mix available" would be.  Rather, as the Third Circuit made clear in *Wright*, publication notice in print generally satisfies the requirements of due process.  679 F.3d at 107–08 ("[W]e generally hold that for unknown claimants . . . notice by publication in national newspapers is sufficient to satisfy the requirements of due process.").  Moreover, the Debtors' proposed publication notice does beyond national publication and includes a "targeted notice program" of local publications.[9]

---

[9]     The Debtors' proposed list of publications is attached as **Exhibit 4** to the proposed Order.  The proposed Order is attached to the Motion as **Exhibit A**.  The publication list is designed to include local publications near each of the applicable plants that may have resulted in asbestos exposure.  The revised proposed Order that will be

The majority of the proposed publication notice is targeted to the communities around each plant associated with the operations that gave rise to the asbestos claims asserted against the Debtors.

25.     Nevertheless, to address certain of the concerns raised by the PI Law Firms, the Debtors will set the bar date 30 days later than provided in the Motion and take certain steps to supplement the bar date notice.  *First*, the Debtors will modify the direct bar date notice to more specifically reference asbestos exposure, asbestos claims, and the need to file a proof of claim for prepetition exposure, even if they are not sick.  *Second*, the Debtors will conduct a reasonable search of their records to determine if the Debtors can identify prior employees and contractors that may have been exposed to asbestos.  Within 30 days of the entry of the Order, the Debtors will provide direct notice via mail to the last known address of parties the Debtors are able to locate.  *Third*, the Debtors will publish a more specific form of publication notice that explicitly references asbestos exposure and informs parties that they must file a proof of claim if they were exposed, even if they are not sick.  This asbestos-specific publication notice will reference each power plant in question and, when the Debtors have the information available, the power company that operated the plant during the years where exposure to asbestos was possible, and will be published three times before the bar date.  The Debtors will file an amended form of order and amended notice materials in advance of the hearing.

26.     The Debtors believe that these additional forms of notice cure any concerns regarding the form of notice for present but unidentified and unmanifested claims.  The Debtors respectfully submit that under the circumstances, the proposed publication notice is sufficient to

---

filed with the Court in advance of the hearing will also make clear that the Debtors may select additional publications.

satisfy due process.  That said, nothing in the Order precludes a claimant from asserting a due process argument in the future.

**D.     The Proof of Claim Process, As Altered, is Not Unduly Burdensome.**

27.     The PI Law Firms argue that the requirement that an asbestos claimant complete a separate claim form against each debtor is unduly burdensome.  The amended form of order provides that, so long as the proof of claim form identifies that an asbestos claim is being asserted, the proof of claim will not be disallowed because it lists the incorrect Debtor entity, and the Debtors reserve the right to reclassify the entity the proof of claim is asserted against.[10]  The Debtors respectfully submit that this change addresses any concerns.

28.     The PI Law Firms' other argument—that a "primary purpose" of a bar date motion in these chapter 11 cases involving $42 billion in debt is to obtain an unfair advantage over asbestos liability that does not represent a substantial liability for the Debtors is unsupported speculation.  Simply put, the Debtors are running a bar date process to "identify with reasonable promptness the identity of those making claims against the bankruptcy estate and the general amount of the claims."  *Keene*, 188 B.R. at 907 (*citing Hooker Invs.*, 937 F.2d at 840).  And the 77 days provided in the Motion is longer than the required 60-day period for entry of a bar date without notice and a hearing in this jurisdiction.  *See* Local Rule 2002-1(e).  There is nothing unduly burdensome about the proof of claim process being employed here.

**E.     The PI Law Firms' Concerns Regarding Judicial Economy Are Inapplicable Here.**

29.     The PI Law Firms invoke the possibility of "mir[ing] this Court—and this District—in burdensome and unnecessary litigation for years to come."  Objection ¶ 27.  The PI

---

[10]   In the event the Debtors are not able to determine the entity a proof of claim should be asserted against, the Debtors will request additional information from the party filing the proof of claim.

16

Law Firms' attempt to invoke administrative burdens associated with "tens of thousands of individual estimation proceedings" is inapplicable to already-pending asbestos claims that number in the hundreds.  Given the limited asbestos exposure at issue in these cases, there is no significant concern with respect to present but unidentified claimants and unmanifested claimants, either.  The Debtors should be permitted to run a proof of claim process that addresses *all* claims held by *all* creditors.

WHEREFORE, the Debtors respectfully request that the Court overrule the Objection, enter the bar date order, and grant such other relief as it deems necessary and proper under the circumstances.

[*Remainder of page intentionally left blank.*]

17

Dated:  August 11, 2014
      Wilmington, Delaware

*/s/ Jason M. Madron*
_____

**RICHARDS, LAYTON & FINGER, P.A.**
Mark D. Collins (No. 2981)
Daniel J. DeFranceschi (No. 2732)
Jason M. Madron (No. 4431)
920 North King Street
Wilmington, Delaware 19801
Telephone:    (302) 651-7700
Facsimile:    (302) 651-7701
Email:    collins@rlf.com
        defranceschi@rlf.com
        madron@rlf.com

-and-

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Richard M. Cieri (admitted *pro hac vice*)
Edward O. Sassower, P.C. (admitted *pro hac vice*)
Stephen E. Hessler (admitted *pro hac vice*)
Brian E. Schartz (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022-4611
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900
Email:    richard.cieri@kirkland.com
        edward.sassower@kirkland.com
        stephen.hessler@kirkland.com
        brian.schartz@kirkland.com

-and-

James H.M. Sprayregen, P.C. (admitted *pro hac vice*)
Chad J. Husnick (admitted *pro hac vice*)
Steven N. Serajeddini (admitted *pro hac vice*)
300 North LaSalle
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200
Email:    james.sprayregen@kirkland.com
        chad.husnick@kirkland.com
        steven.serajeddini@kirkland.com

Proposed Co-Counsel to the Debtors and Debtors in Possession

18