**EXHIBIT A**

**In re Specialty Products Holding Corp.,** *et al.***, Case No. 10-11780**

**Excerpt of Transcript of November 5, 2013 Hearing**

```
 1              IN THE UNITED STATES BANKRUPTCY COURT

 2                  FOR THE DISTRICT OF DELAWARE

 3
        In re:                     ) Chapter 11
 4                                 )
        SPECIALTY PRODUCTS         ) Case No. 10-11780
 5      HOLDING CORP., et al.,     ) (PJW)
                                   )
 6                  Debtors.       ) (Jointly Administered)

 7                                   Wilmington, Delaware
                                     November 5, 2013
 8                                   11:05 a.m.

 9


10
              TRANSCRIPT OF AN ELECTRONIC RECORDING
11           BEFORE THE HONORABLE PETER J. WALSH
                 UNITED STATES BANKRUPTCY JUDGE
12


13


14   APPEARANCES:

15   For the Debtors      DANIEL J. DeFRANCESCHI, ESQ.
                          ZACHARY I. SHAPIRO, ESQ.
16                        RICHARDS LAYTON & FINGER, P.A.
                                   -and-
17                        GREGORY M. GORDON, ESQ.
                          DAN B. PRIETO, ESQ.
18                        THOMAS R. JACKSON, ESQ.
                          JONES DAY
19                                 -and-
                          C. MICHAEL EVERT, JR., ESQ.
20                        EVERT WEATHERSBY & HOUFF

21   For the Asbestos     NATALIE D. RAMSEY, ESQ.
     Claimants            MARK B. SHEPPARD, ESQ.
22   Committee            DAVIS LEE WRIGHT, ESQ.
                          MARK A. FINK, ESQ.
23                        MONTGOMERY McCRACKEN WALKER &
                          RHOADS, LLP
24

25
```

 1    a half or so, actually longer than a year and a half, was
 2    on the estimation of the asbestos claims, both on
 3    discovery and issues that arose from the discovery, and
 4    then the process itself was extended over a year period.
 5    There's probably about a year period with discovery and
 6    then another year's period related to the estimation
 7    proceeding itself.
 8              THE COURT:  Does anybody believe that we
 9    should be proceeding without a claims bar date?
10              MR. GORDON:  I think, Your Honor, you'll
11    see from the pleadings that we agree to a number of
12    things.  We agree that there should be a bar date for
13    claims other than asbestos claims.  We agree that that
14    bar date should apply to both SPHC and Bondex.  And I
15    think we now all agree that there should be a publication
16    notice.
17              Where we disagree, Your Honor, is whether
18    there should be a bar date at this point for asbestos
19    claims, and I think that's where the focus of the
20    briefing has been.  As we tried to indicate in our
21    pleadings, we believe we are to a point in these cases
22    where if we're going to have a bar date, it makes sense
23    to go ahead and set it for the asbestos claims as well,
24    because at this point we don't know where this case is
25    heading.

1           We concede that in a consensual 524(g) plan

2     context the bar date isn't needed.  It's been used in

3     some of those cases; it's not needed.  But at this point

4     in time, we're in a situation where there's a cramdown

5     plan that's on the table from the other side.  Obviously

6     we object to that.

7           Your Honor may have seen that on Friday we

8     filed our own plan, which we hope would become the basis

9     for a consensual 524(g) plan, but it recognizes that in

10    fact we may not get there, and accordingly, we may need

11    to pursue a cramdown, and if we pursue a cramdown, we

12    wouldn't pursue it under 524(g), but, instead, would

13    pursue the normal discharge under 1141(d), and see some

14    injunctions related to litigation that would be addressed

15    in that plan.

16          And from our perspective, if -- since we're

17    in a litigation mode, we have a plan that contemplates a

18    potential discharge under 1141(d), although that's not

19    our preference, we don't know how we can pursue a

20    discharge without a bar date for asbestos claims.  And so

21    that's kind of, I think, the crux of the dispute at this

22    point with respect to the bar date.

23          THE COURT:  Let me ask another question.

24    What's the status of the appeal from Judge Fitzgerald's

25    estimation?

 1               MR. GORDON:  Well, I think with that then,

 2     Your Honor, the matter then to be considered is whether

 3     we include asbestos claims in the bar date.  And again, I

 4     think that's the issue where we disagree with the other

 5     side on that.

 6               THE COURT:  You want to notice the asbestos

 7     claimants?

 8               MR. GORDON:  Yes, Your Honor.

 9               THE COURT:  And they don't?  Why do they

10     not want that?

11               MR. GORDON:  Well, basically, you know,

12     it's -- obviously for their constituents, it's going to

13     require some work by them.  And they feel that we have

14     the -- we had the estimation process.  We obtained

15     information we needed with respect to claims there, and

16     why do we need a bar date?

17               Well, the problem with all of that, Your

18     Honor, is that the -- in the mediation -- I'm sorry, in

19     the estimation process, the claim questionnaire

20     procedure, that I think I explained to Your Honor before,

21     was limited only to mesothelioma claims, and even then,

22     only to mesothelioma claims that had pending lawsuits,

23     where there were pending lawsuits on the date of the

24     bankruptcy filing.

25               And so there was no effort to collect any

1    information as to non-mesothelioma claimants, and that

2    was done intentionally because we were trying to do this

3    estimation.  And just so Your Honor knows the breakdown,

4    we had about ultimately 2,800 questionnaires that were

5    returned by mesothelioma claimants, which is about where

6    we thought we were based on the lawsuits.  But we had

7    15,000 claims pending on the petition dates.

8               By the way, not a really large number of

9    claims for an asbestos case.  Most of the other cases

10   that they -- you know, they talk about in their briefs,

11   there are 100,000 claims, 150,000 claims.

12              But, nonetheless, we had a limited subset

13   of these parties, and we used that information for

14   estimation purposes.  Their feeling is, you know, enough

15   is enough.

16              In addition, I think they've taken the

17   position that it's a waste of time because we can't

18   possibly get a discharge anyway if we don't get a 524(g)

19   channelling injunction.  And we pointed out that we

20   certainly can get a discharge, particularly in the Third

21   Circuit in light of the *Grossman's* opinion, which, if I

22   recall correctly, Your Honor was the bankruptcy judge on

23   that.  Maybe I'm incorrect, but I think that's -- my

24   recollection is right.

25              THE COURT:  Um-hum.

**In re Specialty Products Holding Corp.,** *et al.***, Case No. 10-11780**

**Excerpt of Transcript of November 13, 2013 Hearing**

```
 1              IN THE UNITED STATES BANKRUPTCY COURT
                  FOR THE DISTRICT OF DELAWARE
 2
        In re:                        ) Chapter 11
 3                                     )
        SPECIALTY PRODUCTS             ) Case No. 10-11780
 4      HOLDING CORP., et al.,         ) (PJW)
                                       )
 5                Debtors.            ) (Jointly Administered)

 6                                      Wilmington, Delaware
                                        November 13, 2013
 7                                      1:35 p.m.

 8

 9
                  TRANSCRIPT OF AN ELECTRONIC RECORDING
10            BEFORE THE HONORABLE PETER J. WALSH
                  UNITED STATES BANKRUPTCY JUDGE
11

12   APPEARANCES:

13   For the Debtors     ZACHARY I. SHAPIRO, ESQ.
                         RICHARDS LAYTON & FINGER, P.A.
14                             -and-
                         GREGORY M. GORDON, ESQ.
15                       DAN B. PRIETO, ESQ.
                         JONES DAY
16                             -and-
                         C. MICHAEL EVERT, JR., ESQ.
17                       EVERT WEATHERSBY & HOUFF

18   For the Asbestos    NATALIE D. RAMSEY, ESQ.
     Claimants           MARK B. SHEPPARD, ESQ.
19   Committee           MONTGOMERY McCRACKEN WALKER &
                         RHOADS, LLP
20
     For Future          EDWIN J. HARRON, ESQ.
21   Claimants'          SHARON M. ZIEG, ESQ.
     Representative      ERIN EDWARDS, ESQ.
22                       YOUNG CONAWAY STARGATT & TAYLOR LLP

23   For RPM             GREGORY W. WERKHEISER, ESQ.
     International       MORRIS NICHOLS ARSHT & TUNNELL, LLP
24                             -and-
                         MARK F. ROSENBERG, ESQ.
25                       MICHAEL H. TORKIN, ESQ.
                         SULLIVAN & CROMWELL, LLP
```

1                    THE COURT:  Please be seated.

2                    MR. GORDON:  Good afternoon, Your Honor.

3    Greg Gordon --

4                    THE COURT:  Good afternoon.

5                    MR. GORDON:  -- Greg Gordon, Jones Day, on

6    behalf of the debtors.

7                    I guess, to start out, Your Honor, how much

8    time do we have today?

9                    THE COURT:  All afternoon.

10                   MR. GORDON:  Okay.  There are four matters

11   on the agenda, but they're really in two groups, and the

12   first two matters on the agenda relate to the bar date

13   issue that Your Honor heard I think last week when we

14   were here.  And we'd indicated to Your Honor that we

15   would endeavor to work with the other side to come up

16   with an agreement on the appropriate forms and the like

17   to use in connection with a bar date that would encompass

18   asbestos claims as well in accordance with Your Honor's

19   ruling.

20                   We had a, a conference call with the other

21   side today, and I think we're in relatively good shape,

22   but we have two issues, where we disagree, that we're

23   going to need some guidance from Your Honor.

24                   And then the first issue is with respect to

25   who is required to respond, or what group of asbestos

1    claimants is required to respond to the bar date notice.

2    And we had drafted the notice in a way that simply

3    tracked the law in the Third Circuit, as indicated in the

4    *Grossman's* Third Circuit decision and the *Owens Corning*

5    decision of 2012; in other words, that anyone who claimed

6    to have been exposed to a Bondex or SPHC product prior to

7    the commencement of the bankruptcy cases was filed -- was

8    required to submit a proof of claim.

9            The other side indicated to us on the phone

10   this morning that they thought that your comments were

11   limited to only having what they've described as current

12   claimants respond to a bar date notice, and I think they

13   were defining that as anyone who had a lawsuit, an

14   asbestos lawsuit pending against the debtors as of the

15   petition date for the two cases.

16           From our perspective, the law in the Third

17   Circuit's the law in the Third Circuit.  We were simply

18   intending by our forms to indicate that in the Third

19   Circuit the rule is if you were exposed prepetition,

20   you're required to file a claim, and I think our notice

21   is that simple.  But that's the first issue where we have

22   a disagreement.

23           THE COURT:  Okay.  Let me hear from the

24   Committee.

25           MS. RAMSEY:  Good afternoon, Your Honor,

```
 1   Natalie Ramsey, Montgomery McCracken Walker & Rhoads, for
 2   the Official Committee of Asbestos Claimants, for the
 3   record.
 4              Your Honor, the debtors' proposed bar date
 5   order and notice asked this Court to do something that's
 6   never been done before.  Although the law in the Third
 7   Circuit changed when the Third Circuit entered the
 8   Grossman's case and made clear in the Third Circuit that
 9   a claim arises at the date of exposure, that was
10   generally the law across the country.  Despite that fact,
11   and even since the entry of the Grossman's decision, in
12   every single asbestos bankruptcy case where there has
13   been a bar date order entered, and some of those are
14   identified in paragraph 19 of the debtors' motion, each
15   of those bar dates applied only to present claimants,
16   that is -- and we were defining present claimants to be
17   not only those with pending lawsuits that were filed as
18   of the petition date, but also those asbestos claimants
19   who had manifested asbestos injury that was attributable
20   to a product sold by the debtors as of the petition date.
21              That has generally been the -- that has
22   been the defined term in virtually every other asbestos
23   bar date order.  There have been some that limited it to
24   those that had pending lawsuits.  But the vast majority
25   have made it those claimants that existed, that had
```

 1   manifested injury as of the petition date, whether or not

 2   they had filed a lawsuit.  And that was the population,

 3   Your Honor, that, that we dealt with in connection with

 4   the Personal Injury Questionnaire that was sent to

 5   mesothelioma claimants in connection with the estimation

 6   trial.

 7            We believe that it is impossible, and we

 8   believe case law says that it is impossible, to provide

 9   adequate due process to the future claimant population.

10   And that fact comes out of the nature of asbestos injury.

11   Asbestos injury is unique because it has such a long

12   latency period, as long as 50 years between date of

13   exposure and manifestation of a disease.  And as a

14   result, literally it is the case that a bar date that

15   attempted to capture the future claimant population would

16   be attempting to capture individuals who have no asbestos

17   injury right now, those individuals who don't even know

18   that they were exposed to a Bondex product because they,

19   they may have been the spouse of someone who worked with

20   Bondex -- asbestos, but because there's no asbestos

21   disease that is occurring haven't, haven't looked into,

22   you know, those -- the types of products that their

23   spouse might have, have purchased over the years.

24            You're also talking about individuals who

25   may not even exist as of this point in time because they

 1    are future spouses or future children of people who will

 2    manifest an asbestos disease in the future.  And so, you

 3    know, for that reason, when these issues have been

 4    addressed by courts in the past -- and I'm going to put

 5    on the ELMO language from the, from the *Amchem* decision

 6    before the Supreme Court.

 7              In the class action context, when the

 8    Supreme Court was evaluating whether or not due process

 9    could be given to a proposed class action settlement

10    class, the Supreme Court specifically said that

11    impediments -- there were impediments to adequate due

12    process precisely for this reason, that there -- that

13    impediments to the provision of adequate notice rendered

14    highly problematic any endeavor to tie a settlement

15    class, persons with no perceptible asbestos-related

16    disease at the time of settlement, many persons in the

17    exposure-only category, the Court of Appeals had stressed

18    may not even know of their exposure or realize the extent

19    of the harm they may incur, and even if they fully

20    appreciate the significance of the notice, with -- those

21    without current afflictions may not have the information

22    or foresight needed to decide intelligently whether to

23    stay in or opt out.

24              And then they went on to say family members

25    of asbestos-exposed individuals may themselves fall prey

1    to disease or may ultimately have ripe claims for loss of

2    consortium, yet large numbers of people in this category,

3    future spouses and children of asbestos victims, could

4    not be alerted to their class membership, and current

5    spouses and children of the occupationally exposed may

6    know nothing of that exposure.

7              This is not a hypothetical issue, Your

8    Honor, in our case, because of the nature of the debtors'

9    product.  The primary product that the debtors have

10   asbestos liability related to was a joint compound that

11   was made primarily for the do-it-at-home market, the

12   do-it-yourself market.

13             And so the testimony at the estimation

14   trial demonstrated that the vast majority of the

15   claimants are individuals who used the product in their

16   homes, and it was for that reason that the debtors'

17   expert testified, and the Court adopted in her estimation

18   decision, that you could have an entire family of

19   individuals exposed, and that over 40 million people

20   could have been exposed to this, to this product.

21             Because the debtors sold the product until

22   1978, a person who -- and because the debtors' testimony

23   from their designated 30(b)(6) witness was that the

24   product had a very long shelf life, as long as five

25   years, could be longer, conservatively, if you had an

1    individual who was exposed in, let's say, 1982 or '83,

2    you could have -- you would have an individual who was

3    maybe five years old at the time, you would have a

4    36-year-old adult right now.

5              In the debtors' settlement files there are

6    a variety of high settlement cases which were precisely

7    the type of individuals that the Supreme Court identified

8    and other courts have identified.  They were children who

9    were exposed to a parent's use of the product in the

10   home.  They were the spouse who washed the laundry of the

11   person who used the compound.  And as a result, these

12   are, are documented situations that occurred in this

13   particular case.

14             Post *Grossman's*, and this was addressed in

15   our papers, Your Honor, Judge Fitzgerald addressed this

16   very issue in the *Flintkote* case and concluded exactly

17   the same, which is that, that the fact of the matter --

18   and I'm reading from her, her decision -- "The fact of

19   the matter is that regardless of whether an exposed

20   asbestos creditor who has not yet manifested an injury is

21   said to have a claim or a future demand, that creditor is

22   not a known creditor entitled to actual notice and is one

23   who is impossible to identify, such that providing actual

24   notice itself is impossible.

25             "Furthermore, there is no bar date for

1   asbestos personal injury claims.  There is an FCR to
2   represent the interests of the exposed yet unimpaired
3   creditors, and if and when such creditor becomes ill,
4   there will be a trust in place to address claims for
5   compensation.  There is nothing to be gained by requiring
6   *Flintkote* to provide additional notice from what this
7   Court has already approved."
8              And the question there was whether you can
9   adequately notice future claimants, and the Court decided
10  that you could not.
11             There have been a series of other cases,
12  Your Honor, I can go through, not to belabor the point,
13  because to us it seems very obvious that it's impossible
14  to reach this population, but cases out of the Bankruptcy
15  Court for the Southern District of New York.  The
16  *Waterman* case concluded, likewise, that publication
17  notice was, at best, a form of minimal due process and
18  that here it, in a situation with asbestos claimants, it
19  could not be reasonably calculated to apprise
20  unmanifested claimants of the pendency of the bankruptcy,
21  and it certainly could not be sufficient to relinquish
22  those people of substantive rights.
23             Similarly, the Bankruptcy Court for the
24  Northern District of Illinois in the *Kewanee Boiler*
25  *Company* bankruptcy, 198 BR at 530; similarly, the

1   Northern District of California in the *Hexcel vs. Stepan*

2   *Company* case, and even going as far back as the *Manville*

3   decision, Your Honor, the courts have discussed the

4   impossibility of, of providing adequate notice to this

5   unique population.

6           The solution that Congress reached in

7   looking at this, because the class action mechanism went

8   up twice to the Supreme Court, and ultimately it became

9   pretty clear that that was not a means by which companies

10  could settle their asbestos liability, was fashioned in

11  524(g).  It's the exclusive way that, that Congress has,

12  has determined can be sufficient for companies that wish

13  to address their aggregate liability in a global manner

14  to deal with this liability, and 524(g) provides the dual

15  protections of the future claimant and a supermajority

16  agreement by the presents.

17          We believe, Your Honor, that the entire

18  purpose of the estimation trial was to estimate this

19  future liability and, therefore, the idea of a bar date

20  for the futures simply makes no sense and, as a matter of

21  due process, is impossible.

22          Also, one of the claim justifications the

23  debtors have used for voting is inapplicable because the

24  future claimants, by definition, are not going to be

25  voting on this bankruptcy.

1           I think at that point, Your Honor, I want
2    to address the form once the Court has given us direction
3    on this issue, but I think that's the basis of our
4    disagreement with respect to the scope of the bar date
5    order.  And we understood from the arguments that were
6    made in support of the bar date order, and from the words
7    the Court used in indicating the entry of a bar date
8    order, that, that what the debtors were arguing was that
9    they had a very significant amount of information on
10   their mesothelioma claimants by virtue of the PIQ
11   process, but not on the rest of their asbestos
12   population.  That information could only be obtained from
13   present claimants.  And the Court's exact words were that
14   you were directing that notice be sent to all creditors,
15   and that implied to us that what the Court had in mind
16   was direct notice to the known creditor body and
17   publication notice to supplement, and not publication
18   notice to reach an entirely unknowable population.
19               THE COURT:  Okay.
20               MS. RAMSEY:  Thank you.
21               THE COURT:  I think *Grossman* has changed
22   everything.
23               Is that the only issue relating to the
24   schedule?
25               MR. GORDON:  No, there's one other issue,

**In re Specialty Products Holding Corp.,** *et al.***, Case No. 10-11780**

**Excerpt of Transcript of January 7, 2014 Hearing**

<pre>
 1                IN THE UNITED STATES BANKRUPTCY COURT

 2                    FOR THE DISTRICT OF DELAWARE

 3
     In re:                         ) Chapter 11
 4                                  )
     SPECIALTY PRODUCTS HOLDING     ) Case No. 10-11780 (PJW)
 5   CORP., et al.,                 )
                                    ) (Jointly Administered)
 6              Debtors.            )
                                     Wilmington, Delaware
 7                                   January 7, 2014
                                     10:32 a.m.
 8

 9

10           TRANSCRIPT OF AN ELECTRONIC RECORDING
             BEFORE THE HONORABLE PETER J. WALSH
11             UNITED STATES BANKRUPTCY JUDGE

12
     APPEARANCES:
13
     For the Debtors     DANIEL J. DeFRANCESCHI, ESQ.
14                       RICHARDS LAYTON & FINGER, P.A.
                                   -and-
15                       GREGORY M. GORDON, ESQ.
                         DANIEL B. PRIETO, ESQ.
16                       JONES DAY
                                   -and-
17                       C. MICHAEL EVERT, JR., ESQ.
                         EVERT WEATHERSBY & HOUFF
18
     For the Asbestos    NATALIE D. RAMSEY, ESQ.
19   Claimants           MARK B. SHEPPARD, ESQ.
     Committee           DAVIS LEE WRIGHT, ESQ.
20                       MONTGOMERY McCRACKEN WALKER & RHOADS, LLP

21   For Future          JAMES L. PATTON, JR., ESQ.
     Claimants'          EDWIN J. HARRON, ESQ.
22   Representative      SHARON M. ZIEG, ESQ.
                         YOUNG CONAWAY STARGATT & TAYLOR LLP
23
     For RPM             GREGORY W. WERKHEISER, ESQ.
24   International        MORRIS NICHOLS ARSHT & TUNNELL, LLP

25   For the United      RICHARD L. SCHEPACARTER, ESQ.
     States Trustee
</pre>

1    courtroom deputy to bring me my calendar in.  It's not on the

2    desk here.

3         So that would -- we ought to be able to have the

4    hearing on that by the end of, of January.

5         MR. GORDON:  Yeah, or we could do it at the February

6    5th hearing.  We could obviously do it sooner as well.

7         THE COURT:  Let's see.  The problem is, I have a

8    lengthy trial scheduled for the week of the 27th.

9         MR. GORDON:  Well, I think we can work back, Your

10   Honor, from an earlier date if you prefer to hear it at an

11   earlier date.

12        THE COURT:  Yeah, why don't we -- I'm open on the

13   24th, any time on the 24th.  Suppose the objections were sent

14   to you and docketed by the -- let's see.  How about the 15th,

15   and your reply and filing by the -- noontime on the 22nd, and

16   then we could have the hearing on the 24th.

17        MR. GORDON:  That will work for us, Your Honor.

18        THE COURT:  All right.  Let's make it at 1:30 on the

19   24th.  Anybody have a problem with that schedule?

20        MR. WERKHEISER:  Your Honor, for the record, Gregory

21   Werkheiser on behalf of RPM International.

22        No problem with the schedule, Your Honor.  RPM

23   International filed a joinder as part of the -- in support of

24   the bar date motion and has consented to the current form of

25   the order.  So to the extent the responses raise issues that

1    are directed to us, we would just ask for the opportunity to

2    also file a reply on the same schedule with the debtor.

3             THE COURT:  Okay, that's fine.

4             MR. WERKHEISER:  Thank you, Your Honor.

5             MR. GORDON:  Your Honor, Greg Gordon again.  And just

6    by way of clarification, as I understood Your Honor's

7    comments, what you're asking for are objections or issues with

8    respect to the forms themselves, as opposed to legal argument

9    about whether there should be an asbestos claims bar date?

10            THE COURT:  I've already ruled that there's going to

11   be a bar date.

12            MR. GORDON:  Thank you, Your Honor.

13            THE COURT:  That's not an issue that I'm going to

14   address again.

15            MR. GORDON:  Thank you.

16            MS. RAMSEY:  Your Honor, Natalie Ramsey for the

17   Committee.

18            Several of the counsel that have filed joinders to the

19   objection filed by the Committee and FCR are on the phone.

20   February 5th certainly works for us.  We've already

21   communicated our objections largely in writing.  But I did

22   want to just solicit any additional comments from anyone on

23   the phone.  I'm sorry --

24            MR. FITZPATRICK:  Your Honor, Brian FitzPatrick on

25   behalf of the Belluck & Fox claimants.  The schedule is fine