## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) | Case No. 14-10979 (CSS) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | **Hearing Date:  September 4, 2014 at 9:30 a.m.** |
| | ) | **Objection Deadline:  August 28, 2014 at 4:00 p.m.** |

### MOTION OF ENERGY FUTURE HOLDINGS CORP., *ET AL.*,
### FOR ENTRY OF AN ORDER ESTABLISHING PROCEDURES
### FOR THE LIQUIDATION BY THIRD PARTIES OF CLAIMS ON
### ACCOUNT OF CERTAIN HEDGING AND TRADING ARRANGEMENTS

The above-captioned debtors and debtors in possession (collectively, the "Debtors") file this motion (this "Motion") for entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Order"), establishing procedures for the liquidation of claims on account of certain Hedging and Trading Arrangements (as defined herein).  In further support of this Motion, the Debtors respectfully state as follows.

### Jurisdiction and Venue

1.      The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Debtors consent pursuant to rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware

---

[1]    The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810.  The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201.  Due to the large number of debtors in these chapter 11 cases, for which joint administration has been granted, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

(the "<u>Local Bankruptcy Rules</u>") to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The bases for the relief requested in this Motion are sections 105(a), 363(b), 507(a)(8), and 541 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>"), and rule 6004 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>").

<strong><u>Relief Requested</u></strong>

4.      The Debtors' businesses are sensitive to fluctuations in energy prices for a variety of commodities, including natural gas, power, coal, fuel oil, uranium, and emission allowances. As is customary in the Debtors' industry, certain of the Debtor entities, including Luminant Energy Company LLC, Luminant ET Services Company, and Luminant Generation Company LLC (collectively, the "<u>Hedging and Trading Entities</u>"), enter into contracts with various counterparties to hedge their exposure to such fluctuations (collectively, and as described below, the "<u>Hedging and Trading Arrangements</u>").

5.      Certain of the counterparties to the Hedging and Trading Arrangements may be eligible for "safe harbor" relief under sections 362(b), 546, 553, 555, 556, 559, 560, or 561 of the Bankruptcy Code (collectively, the "<u>Safe Harbor Provisions</u>").  Among other things, the Safe Harbor Provisions may allow counterparties to exercise their contractual rights to unilaterally terminate their Hedging and Trading Arrangements.  By this Motion, the Debtors seek entry of an Order establishing procedures for liquidating claims arising from the termination of Hedging

2

and Trading Arrangements under the Safe Harbor Provisions (such procedures, the "Liquidation

Procedures").[2]

## Background

6.      On April 29, 2014 (the "Petition Date"), each of the Debtors filed a voluntary

petition with the Court under chapter 11 of the Bankruptcy Code.  The Debtors are operating

their businesses and managing their properties as debtors in possession pursuant to

sections 1107(a) and 1108 of the Bankruptcy Code.  The Court has entered an order for joint

administration of these chapter 11 cases.  The Court has not appointed a trustee.  The Office of

the United States Trustee for the District of Delaware (the "U.S. Trustee") formed an official

committee of unsecured creditors in these chapter 11 cases on May 13, 2014 [D.I. 420].  Further

information regarding the Debtors' business operations and capital structure is set forth in the

declaration of Paul Keglevic in support of the Debtors' first day motions [D.I. 98].

## I.      The Hedging and Trading Arrangements.

7.      As of the date herein, the Hedging and Trading Entities have approximately [71]

active Hedging and Trading Arrangements which generally fall into the following three

categories:[3]

---

[2]    The Debtors, by filing this Motion, are not expressing a view as to whether any particular Hedging and Trading Arrangement is entitled to the protection of the Safe Harbor Provisions or whether any particular counterparty is entitled to exercise rights pursuant to the Safe Harbor Provisions of the Bankruptcy Code and accordingly, they reserve all rights related thereto.

[3]    A complete description of the Debtors' Hedging and Trading Arrangements may be found in the *Motion of Energy Future Holdings Corp., et al., for Entry of Interim and Final Orders Authorizing the Debtors to (A) Continue Performing Under Prepetition Hedging and Trading Arrangements, (B) Pledge Collateral and Honor Obligations Thereunder, and (C) Enter Into and Perform Under Trading Continuation Agreements and New Postpetition Hedging and Trading Arrangements* (the "Trading Arrangements Preservation Motion"), filed April 29, 2014 [D.I. 41], the *Declaration of Terry L. Nutt in Support of the Motion of Energy Future Holdings Corp., et al., for Entry of Interim and Final Orders Authorizing the Debtors to (A) Continue Performing Under Prepetition Hedging and Trading Arrangements, (B) Pledge Collateral and Honor Obligations Thereunder, and (C) Enter Into and Perform Under Trading Continuation Agreements and New Postpetition Hedging and Trading Arrangements*, filed May 1, 2014 [D.I. 229], and the *Supplemental Declaration of Terry L. Nutt in Support of the Motion of Energy Future Holdings Corp., et al., for Entry of a Final Order (Re: Proprietary*

3

(a) ***Over-the-Counter Transactions***. The Hedging and Trading Entities enter into over-the-counter physical and financial transactions related to natural gas, power, coal, fuel oil, uranium, emission allowances, and other energy-related commodities directly with unrelated third parties.

(b) ***Clearing Broker Arrangements***. The Hedging and Trading Entities are also party to customer agreements with clearing brokers to clear trades and hedges related to the purchase and sale of power, fuel oil, natural gas, uranium, emission allowances, and other energy-related products and physical and financial derivatives thereof, through various exchanges. Generally, each clearing broker has broad discretion under the customer arrangement to terminate its agreement and cancel or liquidate the Hedging and Trading Entities' open positions.

(c) ***ERCOT Transactions***. The Electric Reliability Council of Texas ("ERCOT") manages the flow of electric power, and schedules power on an electric grid, for 23 million Texas customers, representing 85% of the state's electric load. ERCOT also performs financial settlements for the competitive wholesale bulk-power market and administers retail switching for 6.7 million premises in competitive choice areas. The ERCOT market provides the Hedging and Trading Entities with unique access to sell and procure power, ancillary services, and congestion revenue rights to mitigate the risks associated with the Debtors' power generation and retail electricity businesses.

8.     There is the potential that certain of the counterparties to the Hedging and Trading Arrangements (each such counterparty, a "Hedging and Trading Arrangement Counterparty") and, collectively, the "Hedging and Trading Arrangement Counterparties") may be entitled to the protections of the Safe Harbor Provisions.  The Safe Harbor Provisions generally permit the Hedging and Trading Arrangement Counterparties to exercise certain rights and remedies (*i.e.*, unilateral termination) that are not generally available to typical contract counterparties in a

---

*Trading Transactions That Do Not Involve the Debtors Power Generation and Retail Operations) Authorizing the Debtors to (A) Continue Performing Under Prepetition Hedging and Trading Arrangements, (B) Pledge Collateral and Honor Obligations Thereunder, and (C) Enter Into and Perform Under Trading Continuation Agreements and New Postpetition Hedging and Trading Arrangements*, filed June 27, 2014 [D.I. 1197].

As used in this Motion, and as described in the First Day Declaration, the term Hedging and Trading Arrangements shall also include the TCEH Debtors' positions in the natural gas price hedging program and all of the first lien interest rate swaps of TCEH, which are secured by substantially all of the TCEH Debtors' assets on a first-lien basis that is pari passu with the outstanding obligations under the TCEH Debtors' first-lien credit agreement and first-lien notes.  As used herein, the term "TCEH Debtors" shall refer to Texas Competitive Electric Holding Company LLC, together with its direct and indirect Debtor subsidiaries.

bankruptcy case.   Specifically, sections 546(e)-(g) (providing relief from certain avoidance actions), section 553 (providing for the exercise of contractual setoff rights against the debtor), section 555 (providing for the liquidation of certain security accounts), section 556 (providing for the liquidation of forward and commodity contracts), section 559 (providing for the liquidation of certain repurchase agreements), and section 560 (providing for the exercise of contractual rights to liquidate, terminate or accelerate a swap agreement) of the Bankruptcy Code, in combination with sections 362(b)(6), (7) and (17) of the Bankruptcy Code—often referred to as the "safe harbors"—grant special protections to counterparties to future, forward, and financial contracts.

9.     On the Petition Date, the Debtors filed the Trading Arrangements Preservation Motion, pursuant to which the Debtors sought authority to (a) satisfy prepetition payment and collateral obligations related to the Hedging and Trading Arrangements (subject to certain caps on an interim basis), (b) continue to honor the prepetition Hedging and Trading Arrangements in the postpetition period in the ordinary course of business, (c) enter into, and perform under, new postpetition Hedging and Trading Arrangements in the ordinary course of business; and (d) execute trading continuation agreements with certain Hedging and Trading Arrangement Counterparties pursuant to which such Counterparties agree to waive any Safe Harbor Protections to which they may be entitled in exchange for settlement of their prepetition claims. The Court entered this relief on an interim basis on May 2, 2014 [D.I. 315] (except with respect to existing proprietary trading transactions, which relief was granted on an interim basis on June 6, 2014 [D.I. 861]) and on a final basis on June 6, 2014 [D.I. 860] (except with respect to existing and new proprietary trades, which relief was granted on a final basis on June 30, 2014 [D.I. 1309]).

5

10.     The relief provided through the Trading Arrangements Preservation Motion is intended to provide Hedging and Trading Arrangement Counterparties with comfort regarding the Debtors' ability to continue performing under the Hedging and Trading Arrangements, in the hopes of preventing such Counterparties from unilaterally terminating the Hedging and Trading Arrangements.

11.     The relief granted through the Trading Arrangements Preservation Motion has been tremendously helpful in preserving the value of the Debtors' estates.  The Debtors have successfully executed a number of trading continuation agreements with their counterparties (which ensure that such counterparties continue to transact with the Debtors) and have entered into new postpetition Hedging and Trading Arrangements.  Importantly, these new Hedging and Trading Arrangements have allowed the Debtors to successfully mitigate the loss of value associated with the postpetition drop in natural gas prices.

12.     Notwithstanding the benefits provided through the relief granted in connection with the Trading Arrangements Preservation Motion, and as reflected in the schedules of assets and liabilities the Hedging and Trading Entities' filed on June 30, 2014, a number of collateralized Hedging and Trading Arrangement Counterparties have taken advantage of the Safe Harbor Provisions that allow Hedging and Trading Arrangement Counterparties to unilaterally terminate Hedging and Trading Arrangements.

13.     In connection with such terminations, there have been instances where the Hedging and Trading Arrangement Counterparties owe amounts to the Debtors.  The Debtors, therefore, require a streamlined process for liquidating claims arising from validly terminated Hedging and Trading Arrangements.  The Liquidation Procedures would allow the Debtors to efficiently and quickly liquidate such amounts and, critically, receive prompt payment to the

6

benefit of the Debtors' estates.

## II.    The Liquidation Procedures.

14.     The Debtors seek entry of an Order establishing the following Liquidation Procedures to implement an orderly process for liquidating claims arising on account of validly terminated Hedging and Trading Arrangements.[4]

(a) ***Liquidation Agreement.***    To the extent the Debtors and a Hedging and Trading Arrangement Counterparty who has validly terminated one or more Hedging and Trading Arrangements reach an agreement regarding the amount of the claims against the Debtors arising on account of such termination (the "Liquidation Agreement"),[5] the Debtors shall provide notice of such Liquidation Agreement to (i) The Office of the United States Trustee for the District of Delaware, J. Caleb Boggs Federal Building, 844 King Street, Suite 2207, Wilmington, DE 19801, Attn: Richard L. Schepacarter [email address: Richard.Schepacarter@usdoj.gov] and The Office of the United States Trustee for the Southern District of New York, U.S. Federal Office Building, 201 Varick Street, Room 1006, New York, NY 10014, Attn: Andrea B. Schwartz [email address: Andrea.B.Schwartz@usdoj.gov]; (ii) proposed co-counsel to the official committee of unsecured creditors appointed in these chapter 11 cases (the "Creditors' Committee"), Morrison & Foerster LLP, 250 West 55th Street, New York, New York 10019, Attn: Jennifer Marines; (iii) proposed co-counsel, to the Creditors' Committee, Polsinelli PC, 222 Delaware Avenue, Suite 1101, Wilmington, Delaware 19801, Attn: Christopher Ward; and (iv) those parties requesting notice pursuant to Bankruptcy Rule 2002. Such notice shall set forth, among other things: (i) the claims to be liquidated on account of the Hedging and Trading Arrangement(s); (ii) the names and addresses of the counterparties to such Hedging and Trading Arrangement(s); (iii) a summary the terms of the Liquidation Agreement; and (iv) a concise statement of the rationale for the Liquidation Agreement (the "Liquidation Notice").

---

[4]    The Liquidation Procedures shall not affect or otherwise limit the rights of a liquidating party to draw on letters of credit and/or realize on any other credit support posted with respect to the Hedging and Trading Arrangements other than as specifically provided for in a Hedging and Trading Arrangement.

For the avoidance of doubt, the Debtors, by filing this Motion, are not seeking direction to pay any Safe Harbor Counterparty. The Debtors are merely seeking authority to liquidate or otherwise resolve the claim (if any) arising on account of each validly terminated Hedging and Trading Arrangement pursuant to a Liquidation Agreement, and discretion to determine whether to file a Liquidation Notice (as defined herein) on a case-by-case basis.

[5]    A form Liquidation Agreement is attached hereto as **Exhibit 1** to **Exhibit A**. By this Motion, the Debtors seek approval of the form Liquidation Agreement, *provided*, *however*, that the Debtors are authorized to modify the form Liquidation Agreement on a case-by-case basis.

(b) *Resolution of Objections.*  Parties objecting to a Liquidation Agreement must provide a written statement of their objections within 14 calendar days of receiving notice of the Liquidation Agreement (the "Liquidation Objections"). Each Liquidation Objection must be served by overnight delivery service upon the following parties, as applicable:  (i) proposed counsel to the Debtors, Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022, Attn.: Brian E. Schartz, and 300 North LaSalle, Chicago, Illinois 60654, Attn.: Chad J. Husnick; (ii) the applicable Hedging and Trading Arrangement Counterparty to the Hedging and Trading Arrangement described in the Liquidation Agreement; (iii) the U.S. Trustee; (iv) counsel to the Creditors' Committee; and (v) those parties requesting notice pursuant to Bankruptcy Rule 2002 (sub-clauses (i) through (v) collectively, the "Noticing Parties"). The parties may consensually resolve a Liquidation Objection; provided, however, that to the extent such agreement is reached, the Debtors shall provide notice of the resolution to the Noticing Parties.

(c) *Unresolved Objections.*  If the parties are unable to resolve a Liquidation Objection, the Debtors and the applicable Hedging and Trading Arrangement Counterparty shall be precluded from consummating the Liquidation Agreement in accordance with its terms absent resolution or withdrawal of the Liquidation Objection or approval of the Liquidation Agreement by the Court.

(d) *Adjudication of Liquidation Objections.*  If a Liquidation Objection is timely filed with the Noticing Parties and not withdrawn or resolved, the Debtors may file a notice to consider the Liquidation Agreement at the next omnibus hearing that is at least 14 calendar days after the filing of the notice.  If the Liquidation Agreement is approved by the Court, the Debtors and the applicable Hedging and Trading Arrangement Counterparty shall be immediately authorized to consummate the Liquidation Agreement in accordance with its terms.

(e) *Certificate of No Objection.*  If no Liquidation Objection is timely served in accordance with paragraph (b) above, or a timely served Liquidation Objection is withdrawn or resolved, the Debtors shall file with the Court a certificate of no objection, and the Debtors and the applicable Hedging and Trading Arrangement Counterparty shall be immediately authorized to consummate the Liquidation Agreement in accordance with its terms, and all parties receiving notice of the Liquidation Agreement shall be deemed to have consented to the Liquidation Agreement.

<u>Basis for Relief</u>

## I.    The Liquidation Procedures Should Be Approved and Authorized.

15.    The Court may approve and authorize the Liquidation Procedures under section 105(a) of the Bankruptcy Code.  Section 105(a) codifies a bankruptcy court's inherent equitable

8

powers, and allows the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title". 11 U.S.C. § 105(a). Accordingly, the Court has expansive equitable powers to fashion any order or decree that is in the interest of preserving or protecting the value of the Debtors' assets. A bankruptcy court's exercise of its authority under sections 105(a) of the Bankruptcy Code is appropriately used to carry out one of the central policies underlying chapter 11—*i.e.*, to preserve value and maximize property available to satisfy the Debtor's stakeholders. *See*, *e.g.*, *In re Dex One Corp.*, No. 13-10533 (KG) (Bankr. D. Del. [Mar. 19, 2013]) (approving notification and hearing procedures related to the transfer of equity securities on an interim basis under section 105(a)); *In re Trident Microsys. Inc.*, No. 12-10069 (CSS) (Bankr. D. Del. Feb. 7, 2012) (approving bidding procedures for the sale of certain assets under section 105(a)). The Liquidation Procedures are efficient and cost-saving to the Debtors whether the termination of Hedging and Trading Arrangements requires payment to be made by the Debtors or by the Hedging and Trading Arrangement Counterparties. When the Debtors owe payment, the Liquidation Procedures provide efficient, standardized procedures to cut unnecessary costs and preserve the value of the Debtors' estates; whereas, when the Debtors are owed amounts by Hedging and Trading Arrangement Counterparties, the Liquidation Procedures allow the Debtors to promptly receive such payment.

16.     Here, the Liquidation Procedures will streamline the liquidation of claims arising on account of the termination of Hedging and Trading Arrangements. Efficiently administering the Debtors' estates is critical to preserving the value of those estates for the benefit of all stakeholders in these chapter 11 cases. Implementation of the Liquidation Procedures will facilitate the Debtors' ability to expedite the liquidation of any claims arising on account of the termination of Hedging and Trading Arrangements, without the inefficiency and additional costs

9

of Hedging and Trading Arrangement Counterparties exercising ad hoc remedies outside an established process.  In addition, the Liquidation Procedures will simplify the process of collecting payments owed to the Debtors, and reduce the costs associated with the determination of payments to be made under the Liquidation Agreements, ultimately yielding benefits that are in the best interest of the Debtors, their estates, and all stakeholders in these chapter 11 cases.

17.    The Debtors do not seek in this Motion to deprive the Hedging and Trading Arrangement Counterparties of their rights under the relevant safe harbor provisions of the Bankruptcy Code.  The Debtors only seek to establish an optional procedure for liquidating claims arising on account of any validly terminated Hedging and Trading Arrangements.  To that end, the Debtors do not believe that the Liquidation Procedures infringe on the Hedging and Trading Arrangement Counterparties' rights under the safe harbor provisions of the Bankruptcy Code.  Based on the foregoing, the Debtors submit that the proposed Liquidation Procedures should be approved.

18.    Courts in various jurisdictions have approved liquidation procedures similar to the Liquidation Procedures described in this Motion for debtors who operate in industries similar to the industries in which the Debtors operate under section 105(a) of the Bankruptcy Code.  *See*, *e.g.*, *In re Boston Generating, LLC*, No. 10-14419 (SCC) (Bankr. S.D.N.Y. Sept. 23, 2010) (approving procedures for settling terminated safe harbor contracts under section 105(a)); *In re Aurora Oil & Gas Corp.*, No. 09-08254 (SWD) (Bankr. W.D. Mich. Aug. 11, 2009) (authorizing settlement procedures for terminated safe harbor contracts under section 105(a)); *In re Mirant Corp.*, No. 03-46590 (DML) (Bankr. N.D. Tex. Feb. 25, 2004) (using section 105(a) as a basis for approving settlement procedures for safe harbor contracts); *In re NRG Energy, Inc.*, No. 03-13024 (PCB) (Bankr. S.D.N.Y. June 30, 2003) (authorizing procedures for settling

10

terminated safe harbor contracts under section 105(a)); *In re Enron Corp.*, No. 01-16034 (AJG) (Bankr. S.D.N.Y. May 24, 2002) (authorizing procedures for the settlement of terminated safe harbor contracts).[6]

II.    **The Liquidation of Claims Arising on Account of the Hedging and Trading Arrangements is Authorized under Sections 105(a) and 363 of the Bankruptcy Code and Bankruptcy Rule 9019.**

19.    Section 363(c)(1) of the Bankruptcy Code provides explicit authority for a debtor in possession to enter into transactions in the ordinary course of its business. *See* 11 U.S.C. § 363(c)(1).  Pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, the debtor in possession has the authority to operate the debtor's business without obtaining prior court approval.  *See* 11 U.S.C. §§ 1107 and 1108.

20.    As noted above, the Hedging and Trading Entities routinely enter into contracts that may qualify as Hedging and Trading Arrangements in the ordinary course of business.  The liquidation of claims on account of Hedging and Trading Arrangements is standard within the Debtors' industry and consistent with the Debtors' past business practices.  Indeed, the continuation of the prompt liquidation of claims on account of the Hedging and Trading Arrangements and swift reconciliation of outstanding financial obligations is critical to the relevant business relationships among the Hedging and Trading Arrangement Counterparties and the Debtors.  It accelerates the determination of outstanding obligations owing between the parties and provides a concrete and reliable financial path on a going-forward basis.  Although the liquidation of claims on account of Hedging and Trading Arrangements is in the Debtors' ordinary course of business, due to the nature and size of these potential claims, the Debtors are

---

[6]    Because of the voluminous nature of the orders cited herein, such orders are not attached to this Motion.  Copies of these orders are available upon request of the Debtors' counsel.

seeking approval of the Liquidation Procedures to ensure an orderly process and as a courtesy to all parties in interest.

21.     Alternatively, section 363(b)(1) of the Bankruptcy Code provides that a debtor, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1).  Courts have required that such use, sale, or lease be based upon a debtor's sound business judgment. *See*, *e.g.*, *In re Ernst Home Ctr., Inc.*, 209 B.R. 974, 980 (Bankr. W.D. Wash. 1997), *aff'd*, 221 B.R. 243 (B.A.P. 9th Cir. 1998); *In re Plaza Family P'ship*, 95 B.R. 166, 173 (E.D. Cal. 1989); *see also In re Lionel Corp.*, 722 F.2d 1063, 1071 (2d Cir. 1983). "The business judgment rule is a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company." *Official Comm. of Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.)*, 147 B.R. 650, 656 (Bankr. S.D.N.Y. 1992) (quoting *Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985)); *Comm. of Asbestos-Related Litigants and/or Creditors v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 60 B.R. 612, 615-16 (Bankr. S.D.N.Y. 1986) ("a presumption of reasonableness attaches to a debtor's management decisions").

22.     Accordingly, if the Court determines that the liquidation of claims on account of the Hedging and Trading Arrangements does not constitute ordinary course transactions, the Debtors believe the consummation of such transactions and implementation of the Liquidation Procedures reflect an exercise of the Debtors' sound business judgment, is in the Debtors' and their estates best interests, and should be approved as a transaction outside the ordinary course of business under section 363(b) of the Bankruptcy Code.  To accelerate the potential payment owed to the Debtors derived from a termination liquidation of any claims with respect to a

Hedging and Trading Arrangement, it is impractical and counterproductive to require the Debtors to seek separate approval of each settlement of a claim on account of a Hedging and Trading Arrangement without procedures such as the proposed Liquidation Procedures in place.

23.     In addition, Bankruptcy Rule 9019(a) provides, in part, that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a).  Indeed, Bankruptcy Rule 9019(a) empowers the Bankruptcy Court to approve compromises and settlements if they are in the best interests of the estate.  *See, e.g.*, *Protective Comm. v. Anderson (In re TMT Trailer)*, 390 U.S. 414, 424-25 (1968).  Bankruptcy Rule 9019(b) provides, in part, that "[a]fter a hearing on such notice as the court may direct, the court may fix a class or classes of controversies and authorize the trustee to compromise or settle controversies within such class or classes without further hearing or notice." Fed. R. Bankr. P. 9019(b).

24.     Furthermore, Bankruptcy Rule 9019(b) permits the Court to authorize the settlement of certain classes of controversies to occur without further Court approval.  Here, parties in interest will be afforded sufficient time to review and, if necessary, object to a Liquidation Agreement.  Accordingly, the Debtors seek only to expedite the approval process of Bankruptcy Rule 9019(b).

25.     Courts in various jurisdictions have approved settlement procedures similar to the Liquidation Procedures described in this Motion under sections 105(a) and 363 of the Bankruptcy Code and Bankruptcy Rule 9019.  *See, e.g.*, *In re Boston Generating, LLC*, No. 10-14419 (SCC) (Bankr. S.D.N.Y. Sept. 23, 2010) (approving procedures to settle claims arising from terminated trading contracts); *In re Mirant Corp.*, No. 03-46590 (DML) (Bankr. N.D. Tex. Feb. 25, 2004) (authorizing debtors to use settlement procedures to settle claims

13

arising from terminated trading arrangements); *In re Enron Corp.*, No. 01-16034 (AJG) (Bankr. S.D.N.Y. May 30, 2002) (same).

## Waiver of Bankruptcy Rules 6004(a) and 6004(h)

26.    To implement the foregoing successfully, the Debtors seek a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the 14-day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h).

## Reservation of Rights

27.    Nothing contained in this Motion or any actions taken by the Debtors pursuant to relief granted in the Order is intended or should be construed as:  (a) an admission as to the validity of any claim against a Debtor entity; (b) a waiver of the Debtors' rights to dispute any claim on any grounds; (c) a promise or requirement to pay any claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Motion; (e) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) a waiver or limitation of the Debtors' rights under the Bankruptcy Code or any other applicable law; or (g) an admission that one or more of the contracts or agreements to which one or more of the Debtors may be party constitutes a Hedging and Trading Arrangement.

## Notice

28.    The Debtors shall provide notice of this Motion on the date hereof via U.S. first class mail to:  (a) the Office of the U.S. Trustee for the District of Delaware; (b) (i) the entities listed on the Consolidated List of Creditors Holding the 50 Largest Unsecured Claims filed pursuant to Bankruptcy Rule 1007(d); and (ii) proposed counsel to the Creditors' Committee; (c) Wilmington Trust, N.A., in its capacity as administrative agent under the TCEH first lien credit agreement and collateral agent under the TCEH intercreditor agreements and counsel thereto; (d) Bank of New York Mellon Trust Company, N.A., in its capacity as indenture trustee

14

under:  (i) the TCEH unsecured pollution control revenue bonds; and (ii) the EFCH 2037 Notes due 2037, and counsel thereto; (e) American Stock Transfer & Trust Company, LLC, in its capacity as indenture trustee under:  (i) the 9.75% EFH senior unsecured notes due 2019; (ii) the 10.0% EFH senior unsecured notes due 2020; (iii) the 10.875% EFH LBO senior unsecured notes due 2017; (iv) the 11.25%/12.0% EFH LBO toggle notes due 2017; (v) the 5.55% EFH legacy notes (series P) due 2014; (vi) the 6.50% EFH legacy notes (series Q) due 2024; and (vii) the 6.55% EFH legacy notes (series R) due 2034, and counsel thereto; (f) Computershare Trust Company, N.A. and Computershare Trust Company of Canada, in their capacities as indenture trustee under:  (i) the 11.0% EFIH senior secured second lien notes due 2021; and (ii) the 11.75% EFIH senior secured second lien notes due 2022, and counsel thereto; (g) UMB Bank, N.A. in its capacity as indenture trustee under:  (i) the 9.75% EFIH senior unsecured notes due 2019; and (ii) the 11.25%/12.25% EFIH senior toggle notes due 2018, and counsel thereto; (h) BOKF, NA, dba Bank of Arizona, in its capacity as indenture trustee under 11.50% TCEH senior secured notes due 2020, and counsel thereto; (i) CSC Trust Company of Delaware in its capacity as indenture trustee under:  (i) the 6.875% EFIH senior secured notes due 2017; and (ii) the 10.0% EFIH senior secured notes due 2020, and counsel thereto; (j) Law Debenture Trust Company of New York in its capacity as indenture trustee under:  (i) the 10.25% TCEH senior unsecured notes due 2015; and (ii) the 10.50%/11.25% TCEH senior toggle notes due 2016, and counsel thereto; (k) Wilmington Savings Fund Society, FSB in its capacity as indenture trustee under the 15.0% TCEH senior secured second lien notes due 2021, and counsel thereto; (l) counsel to certain holders of claims against the Debtors regarding each of the foregoing described in clauses (c) through (k); (m) the agent for the TCEH debtor-in-possession financing facility and counsel thereto; (n) the agent for the EFIH debtor-in-possession financing facility

and counsel thereto; (o) counsel to certain holders of equity in Texas Energy Future Holdings Limited Partnership; (p) counsel to the Ad Hoc Committee of TCEH Unsecured Noteholders; (q) counsel to the Ad Hoc Committee of TCEH Second Lien Noteholders; (r) Oncor Electric Delivery Holdings Company LLC and counsel thereto; (s) Oncor Electric Delivery Company LLC and counsel thereto; (t) the Securities and Exchange Commission; (u) the Internal Revenue Service; (v) the Office of the United States Attorney for the District of Delaware; (w) the Office of the Texas Attorney General on behalf of the PUC; (x) counsel to ERCOT; and (y) all parties the Debtors reasonably believe may be Hedging and Trading Arrangement Counterparties.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

## No Prior Request

29.     No prior request for the relief sought in this Motion has been made to this or any other court.

*[Remainder of page intentionally left blank.]*

16

WHEREFORE, the Debtors respectfully request that the Court enter the Order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested in this Motion and granting such other and further relief as is appropriate under the circumstances.

Dated: August 14, 2014
       Wilmington, Delaware

*/s/ Jason M. Madron*
**RICHARDS, LAYTON & FINGER, P.A.**
Mark D. Collins (No. 2981)
Daniel J. DeFranceschi (No. 2732)
Jason M. Madron (No. 4431)
920 North King Street
Wilmington, Delaware 19801
Telephone:    (302) 651-7700
Facsimile:    (302) 651-7701
Email:    collins@rlf.com
        defranceschi@rlf.com
        madron@rlf.com

-and-

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Richard M. Cieri (admitted *pro hac vice*)
Edward O. Sassower, P.C. (admitted *pro hac vice*)
Stephen E. Hessler (admitted *pro hac vice*)
Brian E. Schartz (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022-4611
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900
Email:    richard.cieri@kirkland.com
        edward.sassower@kirkland.com
        stephen.hessler@kirkland.com
        brian.schartz@kirkland.com

-and-

James H.M. Sprayregen, P.C. (admitted *pro hac vice*)
Chad J. Husnick (admitted *pro hac vice*)
Steven N. Serajeddini (admitted *pro hac vice*)
300 North LaSalle
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200
Email:    james.sprayregen@kirkland.com
        chad.husnick@kirkland.com
        steven.serajeddini@kirkland.com

Proposed Co-Counsel to the Debtors and Debtors in Possession