# EXHIBIT A

**Proposed Order**

RLF1 10704558v.1

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | ) Chapter 11 |
|  | ) |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) Case No. 14-10979 (CSS) |
|  | ) |
| Debtors. | ) (Jointly Administered) |
|  | ) |

**ORDER ESTABLISHING PROCEDURES
FOR THE LIQUIDATION BY THIRD PARTIES OF CLAIMS
ON ACCOUNT OF CERTAIN HEDGING AND TRADING ARRANGEMENTS**

Upon the motion (the "<u>Motion</u>")[2] of the above-captioned debtors and debtors in possession (collectively, the "<u>Debtors</u>") for entry of an order (this "<u>Order</u>") establishing procedures for the liquidation of claims on account of the termination of Hedging and Trading Arrangements, all as more fully set forth in the Motion; and the Court having found that it has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and the Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and the Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and the Court having found that the Debtors provided appropriate notice of the Motion and the opportunity for a hearing on the Motion under the circumstances; and the Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before the

---

[1] The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, for which joint administration has been granted, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

Court (the "Hearing"); and the Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before the Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1. The Motion is granted as set forth herein.

2. The Debtors have the authority to negotiate, resolve, and liquidate claims arising on account of the Hedging and Trading Arrangements consistent with the relief granted in this Order and any other Order of this Court.

3. The Liquidation Procedures are approved as follows:

    (a) ***Liquidation Agreement.*** To the extent the Debtors and a Hedging and Trading Arrangement Counterparty who has validly terminated one or more Hedging and Trading Arrangements reach an agreement regarding the amount of the claims against the Debtors arising on account of such termination (the "Liquidation Agreement"),[3] the Debtors shall provide notice of such Liquidation Agreement to (i) The Office of the United States Trustee for the District of Delaware, J. Caleb Boggs Federal Building, 844 King Street, Suite 2207, Wilmington, DE 19801, Attn: Richard L. Schepacarter [email address: Richard.Schepacarter@usdoj.gov] and The Office of the United States Trustee for the Southern District of New York, U.S. Federal Office Building, 201 Varick Street, Room 1006, New York, NY 10014, Attn: Andrea B. Schwartz [email address: Andrea.B.Schwartz@usdoj.gov]; (ii) proposed co-counsel to the official committee of unsecured creditors appointed in these chapter 11 cases (the "Creditors' Committee"), Morrison & Foerster LLP, 250 West 55th Street, New York, New York 10019, Attn: Jennifer Marines; (iii) proposed co-counsel, to the Creditors' Committee, Polsinelli PC, 222 Delaware Avenue, Suite 1101, Wilmington, Delaware 19801, Attn: Christopher Ward; and (iv) those parties requesting notice pursuant to Bankruptcy Rule 2002. Such notice shall set forth, among other things: (i) the claims to be liquidated on account of the Hedging and Trading Arrangement(s); (ii) the names and addresses of the counterparties to such Hedging and Trading Arrangement(s); (iii) a summary the terms of the Liquidation Agreement; and (iv) a concise statement of the rationale for the Liquidation Agreement (the "Liquidation Notice").

---

[3] A form Liquidation Agreement is attached hereto as **Exhibit 1** to **Exhibit A**. By this Motion, the Debtors seek approval of the form Liquidation Agreement, *provided*, *however*, that the Debtors are authorized to modify the form Liquidation Agreement on a case-by-case basis.

(b) ***Resolution of Objections.*** Parties objecting to a Liquidation Agreement must provide a written statement of their objections within 14 calendar days of receiving notice of the Liquidation Agreement (the "<u>Liquidation Objections</u>"). Each Liquidation Objection must be served by overnight delivery service upon the following parties, as applicable: (i) proposed counsel to the Debtors, Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022, Attn.: Brian E. Schartz, and 300 North LaSalle, Chicago, Illinois 60654, Attn.: Chad J. Husnick; (ii) the applicable Hedging and Trading Arrangement Counterparty to the Hedging and Trading Arrangement described in the Liquidation Agreement; (iii) the U.S. Trustee; (iv) counsel to the Creditors' Committee; and (v) those parties requesting notice pursuant to Bankruptcy Rule 2002 (sub-clauses (i) through (v) collectively, the "<u>Noticing Parties</u>"). The parties may consensually resolve a Liquidation Objection; provided, however, that to the extent such agreement is reached, the Debtors shall provide notice of the resolution to the Noticing Parties.

(c) ***Unresolved Objections.*** If the parties are unable to resolve a Liquidation Objection, the Debtors and the applicable Hedging and Trading Arrangement Counterparty shall be precluded from consummating the Liquidation Agreement in accordance with its terms absent resolution or withdrawal of the Liquidation Objection or approval of the Liquidation Agreement by the Court.

(d) ***Adjudication of Liquidation Objections.*** If a Liquidation Objection is timely filed with the Noticing Parties and not withdrawn or resolved, the Debtors may file a notice to consider the Liquidation Agreement at the next omnibus hearing that is at least 14 calendar days after the filing of the notice. If the Liquidation Agreement is approved by the Court, the Debtors and the applicable Hedging and Trading Arrangement Counterparty shall be immediately authorized to consummate the Liquidation Agreement in accordance with its terms.

(e) ***Certificate of No Objection.*** If no Liquidation Objection is timely served in accordance with paragraph (b) above, or a timely served Liquidation Objection is withdrawn or resolved, the Debtors shall file with the Court a certificate of no objection, and the Debtors and the applicable Hedging and Trading Arrangement Counterparty shall be immediately authorized to consummate the Liquidation Agreement in accordance with its terms, and all parties receiving notice of the Liquidation Agreement shall be deemed to have consented to the Liquidation Agreement.

4. The form Liquidation Agreement, attached to the Order as **<u>Exhibit 1</u>**, is approved.

5. The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Motion.

6.     Notwithstanding the relief granted in this Order and any actions taken pursuant to such relief, nothing in this Order shall be deemed: (a) an admission as to the validity of any claim against a Debtor entity; (b) a waiver of the Debtors' rights to dispute any claim on any grounds; (c) a promise or requirement to pay any claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Motion; (e) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) a waiver or limitation of the Debtors' rights under the Bankruptcy Code or any other applicable law; or (g) an admission that one or more of the contracts or agreements to which one or more of the Debtors may be party constitutes a Hedging and Trading Arrangement.

7.     Notice of the Motion as provided therein shall be deemed good and sufficient and the requirements of the Local Rules of the United States Bankruptcy Court for the District of Delaware are satisfied by such notice.

8.     All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

9.     Notwithstanding the possible applicability of Bankruptcy Rules 6004(h), 7062, 9014 or otherwise, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

10.    The Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation of this Order.

Wilmington, Delaware
Dated: _____, 2014

> THE HONORABLE CHRISTOPHER S. SONTCHI
> UNITED STATES BANKRUPTCY JUDGE

## **EXHIBIT 1** to **EXHIBIT A**

**Liquidation Agreement**

# LIQUIDATION AGREEMENT

This liquidation agreement is made and entered into as of this ____ day of ____, 201_ by and between _____ ("Counterparty") and [Texas Competitive Electric Holdings LLC and certain of its subsidiaries listed on the signature pages hereto (collectively "TCEH")] (each individually a "Party" and collectively, the "Parties").

## RECITALS

**WHEREAS**, TCEH has commenced a voluntary proceeding for reorganization ("Bankruptcy Proceeding") under title 11 of chapter 11 of the United States Code ("Bankruptcy Code") before the Bankruptcy Court for the District of Delaware ("Bankruptcy Court") in Case No. 14-10979;

**WHEREAS**, on August 14, 2014 as part of the Bankruptcy Proceeding, TCEH, together with certain of its affiliates, filed a *Motion of Energy Future Holdings Corp.,* et al., *for Entry of an Order Establishing Procedures for the Liquidation by Third Parties of Claims on Account of Certain Hedging and Trading Arrangements* which was approved by the Bankruptcy Court and which established certain liquidation procedures for settling claims arising from terminated Hedging and Trading Arrangements (the "Liquidation Procedures");

**WHEREAS**, [TCEH] and Counterparty are engaged in substantial business transactions and trading relationships (collectively, the "Hedging and Trading Arrangements") and on [___] [TCEH] received a notice of termination from Counterparty seeking to terminate one or more of such Hedging and Trading Arrangements, as set forth in the schedule attached hereto as **Exhibit A** (such terminated Hedging and Trading Arrangements, the "Terminated Hedging and Trading Arrangements");

**WHEREAS**, as of the date hereof, there are a number of open transactions (collectively, the "Transactions"), as described below:

> (a) [Counterparty identification of in-the-money transactions and applied collateral, if any] (the "Company Payables").
>
> (b) [TCEH identification of in-the-money transactions and applied collateral, if any] (the "Counterparty Payables").

**WHEREAS**, Counterparty and [TCEH] desire to settle all claims arising from and under the Transactions.

**NOW**, **THEREFORE**, in consideration of the mutual promises and covenants made herein, the adequacy and sufficiency of which are hereby acknowledged, and with the intent to be legally bound hereby, Counterparty and [TCEH] agree as follows:

## **AGREEMENT**

1.   Settlement Amount.  [TCEH] and Counterparty have cooperated in good faith to determine the amount due from either Party to the other under the Terminated Hedging and Trading Arrangements (the "Settlement Amount").  As a result of Counterparty's termination of the Transaction(s), the Parties have determined that:

> **A.** Counterparty owes [TCEH] the amount of $_____ for the Counterparty Payables; and
>
> **B.**   [TCEH] owes Counterparty the amount of $_____ for the Company Payables.
>
> **C.** [Insert the following if allowing offset].  The Counterparty Payables shall be netted and offset with the Company Payables, resulting in a net amount owed by [Counterparty/TCEH] of $_____.
>
>> (i)   If Counterparty owes such amount to [TCEH], Counterparty may file a proof of claim for such amount.
>>
>> (ii)  If Counterparty owes [TCEH] such amount ("Settlement Payment"), Counterparty shall pay [TCEH] such Settlement Payment in immediately available funds within fifteen (15) business days of the execution of this Liquidation Agreement according to the following wire instructions:
>
> Pay to:
>
> ABA #:
>
> Acct #:
>
> Ref:

2.   Sufficiency of Settlement.  Counterparty and [TCEH] agree and acknowledge that the Settlement Amount represents a fair and accurate calculation of any amount rightfully due one Party from the other due to the termination of the Hedging and Trading Arrangements, and consistent with, the Transaction(s).  Within fifteen (15) days of execution of this Liquidation Agreement, provided that Counterparty has made any payments required by Section 1 of this Liquidation Agreement, [TCEH] shall return to Counterparty any unused credit support currently held under the Transaction(s).  Within fifteen (15) business days of execution of this Liquidation Agreement, Counterparty shall return to [TCEH] any unused credit support held under the Transaction(s).

3.   Interest on Overdue Settlement Payments.  Interest shall accrue on any overdue portion of the Settlement Payment from the date such portion was due to be paid by Counterparty until the date of receipt thereof by [TCEH] at a rate equal to the lesser of (a) a rate per annum equal to the "Prime Rate" published in *The Wall Street Journal* from time to time, and which is defined as

"the base rate on corporate loans at large money center commercial banks," plus two percent (2%), or (b) the maximum non-usurious rate under applicable law. Any interest to be paid by Counterparty to [TCEH] under this Section 3 shall be net of any taxes which may be levied or assessed on such interest. When requested by [TCEH], Counterparty shall provide [TCEH] with the appropriate tax forms indicating Counterparty's tax identification number and, to the extent applicable, verifying Counterparty is exempt from the payment of any such taxes. For purposes of clarification, it is acknowledged and agreed to by the Counterparty that it is responsible for paying all taxes, if any, arising out of the transaction contemplated herein and that it shall pay all such taxes in accordance with applicable law.

4.      <u>Certainty of Settlement Payment</u>.  The Settlement Payment represents a negotiated termination payment for the discharge of all rights and obligations under the Terminated Hedging and Trading Arrangements. The Settlement Payment and any other charges described herein shall not be subject to change through application to the Federal Energy Regulatory Commission ("<u>FERC</u>") pursuant to the provisions of Sections 205 or 206 of the Federal Power Act or Sections 4 or 5 of the Natural Gas Act absent the agreement of all parties hereto.

5.      <u>Termination and Release</u>.  Except for [TCEH]'s right to payment as set forth in Section 1(c) or Counterparty's right to file proof of claim as set forth in Section 1(c), Counterparty and [TCEH] agree that immediately and automatically upon execution of this Liquidation Agreement and the Counterparty's payment of any Settlement Payment, each Party hereto and all of its affiliates, divisions, assigns, agents, employees, representatives, officers, partners, insurers, directors, predecessors and successors, and each and all of them, (hereinafter, for the purposes of this Section, the "<u>Releasors</u>"), hereby forever release and discharge the other Party, and all of its present and former parent companies, subsidiaries, officers, directors, managers, principals, equity holders, members, employees, agents, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals (hereinafter, for purposes of this paragraph the "<u>Released Entities and Persons</u>"), from any and all obligations, damages, claims, demands and causes of action of every kind and nature, whether known or unknown, suspected or unsuspected, accrued or unaccrued, liquidated or unliquidated, fixed, contingent, direct, derivative or indirect, consequential, for lost profits or business or economic loss, or otherwise, whether at common law, equitable, or statutory, whether in court, arbitration or other forum, whether based on contract, tort, express or implied warranty, breach of a duty of good faith and fair dealing, tortuous interference with prospective economic advantage, fraud, equitable estoppel, promissory estoppel, unjust enrichment, punitive damages or other cause of action or theory that Releasors had, have, may have, or claim to have or hereafter acquire against the Released Entities and Persons, arising by reason or in respect of any act, omission, cause, matter or thing whatsoever, whether known or unknown, out of or in connection with the Terminated Hedging and Trading Arrangements or Transactions (collectively, "<u>Claims</u>"), *provided that*, [TCEH] does not waive, release or discharge Counterparty from any of its obligations herein, including, without limitation Counterparty's obligation to pay the Settlement Payment, if any. Upon execution of this Liquidation Agreement and Counterparty's full and final payment of the Settlement Payment, if any, the Transactions and Terminated Hedging and Trading Arrangements are terminated and shall no longer be of any force or effect. To the extent any applicable law would not otherwise recognize the earlier provisions of any of this Section 5 as constituting a full and final release applying to all unknown and unanticipated Claims, as well as those now known or disclosed, the Parties hereby expressly waive all rights or benefits which

3

either one or both of them may have now or in the future under any such applicable law and performance thereunder.

6.  Successors and Assigns.  This Liquidation Agreement will inure to the benefit of and be binding upon any and all successors, assigns or trustees of either Party hereto.

7.  Governing Law/Jurisdiction.  To the extent a Terminated Hedging and Trading Arrangement set forth on **Exhibit A** includes a provision defining the law governing interpretation of such Trading Arrangement, such provision shall govern interpretation of this Liquidation Agreement with respect to the particular Trading Arrangement.  In the absence of such a provision, this Liquidation Agreement shall be governed by, and construed in accordance with, the laws of the State of Texas (without reference to its choice of law doctrine).

8.  Authorization and Validity of Agreement.  The execution, delivery and performance of this Liquidation Agreement (a) are within Counterparty's powers, (b) have been duly authorized by all necessary action on its behalf and all necessary consents or approvals have been obtained and are in full force and effect and (c) do not violate any of the terms and conditions of (i) its governing documents, (ii) any applicable law, or (iii) any contracts to which it is a party (except with respect to (c)(i) and (ii) for such violations that would not be reasonably expected to have a material adverse effect on Counterparty's ability to consummate the transactions contemplated by this Liquidation Agreement).

9.  Enforceability.  This Liquidation Agreement has been duly executed and delivered on behalf of Counterparty and constitutes a legal, valid and binding obligation of Counterparty enforceable against it in accordance with its terms except that such enforceability may be limited by (a) applicable bankruptcy, insolvency, reorganization, moratorium and similar laws affecting creditors' rights generally, and (b) equitable principles which may limit the availability of certain equitable remedies (such as specific performance).

10.  No Admission of Liability.  This Liquidation Agreement is not an admission of any liability but is a compromise and the Liquidation Amount and this Liquidation Agreement shall not be treated as an admission of liability.  All communications (whether oral or in writing) between and/or among the Parties, their counsel and/or their respective representatives relating to, concerning or in connection with this Liquidation Agreement, or the matters covered hereby and thereby, shall be governed and protected in accordance with the Federal Rule of Evidence 408 and New York Civil Practice Law and Rules Section 4547 to the fullest extent permitted by law.

11.  No Assignment of Claims.  Each Party represents and warrants that it is the only person who, to its knowledge, has any interest in any Claims released hereby and that none of such Claims, nor any part thereof, have been assigned, granted or transferred in any way to any person.

12.  Interpretation.  This Liquidation Agreement has been jointly drafted by the Parties at arms-length and each Party has had ample opportunity to consult with independent legal counsel.  No provision or ambiguity in this Liquidation Agreement shall be resolved against any Party solely by virtue of its participation in the drafting of this Liquidation Agreement.

13.     Attorneys' Fees.  Each Party shall be responsible for the payment of (a) its own costs and expenses (including reasonable attorneys' fees), and (b) all of its costs and expenses (including reasonable attorneys' fees) in connection with the matters referred to in this Liquidation Agreement.  Nevertheless, in any action or proceeding to enforce this Liquidation Agreement, the prevailing Party shall be entitled to payment of its reasonable costs and expenses (including reasonable attorneys' fees).

14.     Confidentiality.  Each Party agrees that it shall hold in strict confidence and shall not disclose to any third party any Confidential Information (as defined below) of the other Party for the period of three (3) year(s) after the date hereof; provided, however, that nothing herein shall prevent (a) either Party from disclosing Confidential Information to the officers, directors, employees, representatives, lenders, counsel and other professionals (including potential lenders and investors and their counsel) of such Party and of its affiliates (collectively, "Representatives") who need to know such information for purposes of conducting their ordinary course of business, or (b) [TCEH] from disclosing Confidential Information it may be requested to provide to other parties in interest who are subject to another confidentiality agreement or other contractual, legal, or fiduciary obligation of confidentiality to [TCEH] with respect to the Confidential Information, but in each case under this subsection (b) only to the extent necessary to evaluate and/or obtain requisite approvals of this Liquidation Agreement.  Each of the Representatives to whom Confidential Information is disclosed shall be informed of the confidential nature of such information.  In the event that either Party is requested by subpoena, civil investigative demand, or interrogatories to disclose any Confidential Information, such Party will provide the other Party with prompt written notice of such request, demand or interrogatories so that the other Party may seek an appropriate protective order at its cost.  The Parties agree that because an award of money damages (whether pursuant to the foregoing sentence or otherwise) would be inadequate for any breach of this Section, any such breach would cause the non-disclosing Party irreparable harm and therefore the non-disclosing Party shall be entitled, without the requirement of posting a bond or other security, to equitable relief, including injunctive relief and specific performance.  As used in this Section, "Confidential Information" shall mean information delivered by one Party to the other Party hereto that should reasonably have been understood by the recipient, because of legends or other markings, the circumstances of disclosure or the nature of the information itself, to be proprietary or confidential to such disclosing Party.  Confidential Information shall not include information to the extent, but only to the extent, disclosure thereof (or the terms and conditions thereof) is required by applicable law (including the Bankruptcy Code or pursuant to any order of the Bankruptcy Court), or information which a recipient can demonstrate: (x) is or becomes generally available to the public other than as a result of disclosure by the recipient; (y) becomes available to the recipient on a non-confidential basis from a source other than the disclosing Party or any of its representatives, provided that such source is not known by the recipient to be bound by a confidentiality agreement with or other contractual, legal or fiduciary obligation of confidentiality to the disclosing Party or any other party with respect to such information; or (z) is identified in writing by the disclosing Party as no longer proprietary or confidential.  The obligations of the Parties under this Section shall survive the termination or expiration of this Liquidation Agreement for the period specified herein.

15.     Proofs of Claims.  To the extent that the Counterparty has filed any proofs of claims related to the Terminated Hedging and Trading Arrangements in the Bankruptcy Court, other

than any proofs of claim allowed pursuant to Section 1 of this Liquidation Agreement, Counterparty agrees that it will withdraw such proofs of claims with prejudice within five (5) business days of execution of this Liquidation Agreement.

16. Counterparts.  This Liquidation Agreement may be executed in any number of counterparts, each of which will be deemed an original and all of which together will constitute one and the same instrument.

17. Severability.  Any provision of this Liquidation Agreement which is prohibited or unenforceable in any jurisdiction, shall be, as to such jurisdiction, ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof, and any such prohibition or unenforceability in any jurisdiction shall not invalidate or render unenforceable such provision in any other jurisdiction.

[*Signatures follow*]

IN WITNESS WHEREOF, the Parties hereto have caused this Agreement to be executed by facsimile or original signatures and in multiple counterparts, each of whom is deemed an original and effective as one document, all as of the date first written above.

[LUMINANT ENERGY COMPANY LLC
LUMINANT ET SERVICES COMPANY
LUMINANT ENERGY TRADING CALIFORNIA COMPANY
TEXAS COMPETITIVE ELECTRIC HOLDINGS COMPANY LLC]

By: _____
Name:
Title:


[COUNTERPARTY]

By: _____
Name:
Title: