# WILMERHALE

August 15, 2014

**Philip D. Anker**

+1 212 230 8890 (t)
+1 212 230 8888 (f)
philip.anker@wilmerhale.com

**VIA HAND DELIVERY AND ECF**

Hon. Christopher S. Sontchi
United States Bankruptcy Court
 for the District of Delaware
824 North Market Street, 5th Floor
Wilmington, Delaware 19801

**Re:**   *In re Energy Future Holdings Corp. et al.*, Case No. 14-10979 (CSS), and *CSC Trust Co. of Delaware v. Energy Future Intermediate Holding Co. LLC et al.*, Adv. Proc. No. 14-50363 (CSS)

Dear Judge Sontchi:

CSC Trust Company of Delaware, as successor indenture trustee for the holders of the 10% Senior Secured Notes Due 2020, submits the following response to Mr. McGaan's August 13, 2014 letter asking, on behalf of the EFIH Debtors, that the Court bifurcate the so-called Makewhole Litigation.

Under the EFIH Debtors' proposed bifurcation, the Court would decide in the first phase whether those Debtors are liable for a makewhole or other premium under state law *regardless* of whether they were solvent or insolvent. (Because the EFIH Debtors would have withheld all discovery on solvency, they would be estopped in this first phase from arguing that the makewhole premium was not due or should be limited based on any claim that they were or are insolvent.) In the event that the Court finds that the EFIH Debtors are so liable, the parties would then litigate, and the Court would decide, in a second phase of the litigation whether the EFIH Debtors are, in fact, insolvent and, if so, whether equitable principles allow the Court to limit or disallow the premium. For the reasons set forth below, we respectfully request that the Court deny the EFIH Debtors' request.

*First*, the request should be understood for what it is: an effort to get this Court to reconsider what it has already decided. In its Opinion dated August 5, 2014 [Dkt. No. 105], the Court held that the EFIH Debtors' solvency was "relevant, and thus discoverable, in the context of [the Makewhole Litigation]" (Op. at 2), but stated that under three alternative scenarios such discovery could be deferred. One of those alternatives was that "[t]he parties may agree to bifurcate the trial." (Op. at 3.) But the Court never suggested that this alternative would apply even if, as has proven to be the case, the parties could not reach agreement that bifurcation makes sense. To the contrary, the Court reiterated, twice, that this option would require the agreement of the parties. (Op. at 24 ("The parties may agree to bifurcate"); Op. at 25

WILMERHALE

August 15, 2014
Page 2

("discovery as to solvency may be deferred (or possibly eliminated) if . . . the parties agree to bifurcate the trial")).[1]

*Second*, as the party "seeking bifurcation," the EFIH Debtors have the burden of proving that "bifurcation is justified." *Spectra-Physics Lasers, Inc. v. Uniphase Corp.*, 144 F.R.D. 99, 101 (N.D. Cal. 1992) (citing *Willemijn Houdstermaatschaapij BV v. Apollo Computer*, 707 F. Supp. 1429, 1435 (D. Del. 1989)). "That burden is more difficult to meet where, as here, the case is to be tried without a jury." *Apollo Computer*, 707 F. Supp. at 1435 (citing *Procter & Gamble Co. v. Nabisco Brands, Inc.*, 604 F. Supp. 1485, 1492 (D. Del. 1985)). The EFIH Debtors do not and cannot meet their burden. In particular, Mr. McGaan's lament that solvency discovery could be time consuming and expensive rings hollow, since the EFIH Debtors have the keys to avoid that discovery in connection with the Makewhole Litigation. As noted, the Court identified three alternatives for deferring, at least for now, any discovery on solvency, only one of which was that the parties could agree to bifurcate the trial. The other two were and are entirely in the EFIH Debtors' unilateral control: They either "may concede their []solvency[2] solely for purposes of this makewhole litigation" or they "may waive their right to assert any defense to payment of the makewhole premium based upon insolvency, i.e., that payment should be reduced or not paid based upon equitable principles." (Op. at 3.) Thus, if the EFIH Debtors really think that solvency discovery in this matter would be so time consuming and expensive—and, for the reasons discussed below, CSC doubts that—they have it completely within their discretion to avoid the discovery altogether.

*Third*, the EFIH Debtors' unwillingness—at least for now—to choose either of these two alternatives is puzzling. As this Court has observed, it is "notabl[e]" that the EFIH Debtors' answer to the complaint in the Makewhole Litigation "does not attempt to decline payment of the makewhole premium under any sections of the Bankruptcy Code." (Op. at 14.) Indeed, agreeing with the law in this District,[3] Mr. McGaan has stressed that the "the Debtors do not argue that makewhole premiums that the Trustee claims to be owed should be disallowed as unmatured interest under section 502(b)(2)" of the Bankruptcy Code. July 17, 2014, Letter from Mr. McGaan to the Court, at 5 [Dkt. No. 90]. The EFIH Debtors have thus up until now eschewed arguing any bankruptcy or equitable principles for limiting or disallowing the makewhole

---

[1] As the very authorities cited by the EFIH Debtors show, this Court is not alone in agreeing to bifurcation where the parties have so stipulated. *See Tobacco & Allied Stocks v. Transamerica Corp,* 16 F.R.D. 537 (D. Del. 1954) (cited in Mr. McGaan's August 13, 2014, Letter to the Court [Dkt. No. 108], at 2).

[2] The Opinion states that the EFIH Debtors may concede their "*in*solvency," but we understand the Court to have meant that the EFIH Debtors may concede their solvency. The Debtors evidently agree. *See* August 13, 2014, Letter from Mr. McGaan to the Court [Dkt. No. 108], at 1 (stating that the Court gave the EFIH Debtors the option to concede "solvency").

[3] *See In re School Specialty*, Inc., Case No. 13-10125 (KJC), 2013 WL 1838513, at * 5 (Bankr. D. Del. Apr. 22, 2013) (Carey, J.); *In re Trico Marine Servs., Inc.*, 450 B.R. 474, 480-81 (Bankr. D. Del. 2011) (Shannon, J.).

WilmerHale

August 15, 2014
Page 3

premium to the holders of the EFIH First Lien Notes for which CSC acts as Trustee. To be sure, the EFIH Debtors now state that they want to "preserve" possible defenses that they have never seen fit to assert because this is supposedly a "dynamic and evolving litigation." August 13, 2014, Letter from Mr. McGaan to the Court [Dkt. No. 108], at 3. Yet, even now, they admit that they "have not yet argued that they will seek to limit the payment of any make whole premium on equitable grounds involving their insolvency"—and they suggest no "dynamic or evolving" basis on which they plausibly could do so in the future. *Id.* It appears that the EFIH Debtors are attempting to preserve rights that they have no intention of asserting, simply for the sake of preserving them (and perhaps in the hope that they will give the EFIH Debtors leverage at some point in the future), at the expense of efficiency in the Makewhole Litigation. In fact, Mr. McGaan's letter all but states that if the Court refuses to direct bifurcation, the EFIH Debtors will elect one of the two alternative options. *See* August 13, 2014, Letter from Mr. McGaan to the Court [Dkt. No. 108], at 3 ("The Debtors should not have to concede or waive their rights").

*Fourth*, the EFIH Debtors' unequivocal decision up until now not to rely on any bankruptcy or equitable principles reflects their own admissions on valuation and the indisputable record. The EFIH Debtors have three tiers of debt: the EFIH First Lien Notes, the EFIH Second Lien Notes, and the EFIH unsecured debt, which consists principally of the so-called "PIK" Notes. The EFIH Debtors' answer in the Makewhole Litigation admits that the First Lien Notes are oversecured.[4] The EFIH Debtors have likewise admitted that the holders of the EFIH Second Lien Notes are oversecured.[5] As for the PIK Notes and any other unsecured debt, NextEra's offer, made in writing on the docket of these bankruptcy cases, provides for "payment in full" of those notes, including, "at the Debtors' discretion and/or if required by the Bankruptcy Court, accrued contract interest and makewhole."[6] And, at the hearing held earlier this week in the general bankruptcy cases, the EFIH Debtors represented that they are seeking to develop an auction or other bidding process for economic interests in Oncor, in order to increase even more the overall recoveries. Under these circumstances, it is hard to imagine how the EFIH Debtors can dispute that they are solvent.

---

[4] *See* Complaint [Dkt. No. 1] ¶ 49 ("As of the Petition Date, the value of the Collateral exceeds the amount of all Obligations under the 10% Notes and any notes that are *pari passu* with the 10% Notes, including the amount of the Applicable Premium for all such notes."); Answer [Dkt. No. 27] ¶ 49 ("Admitted.").

[5] *See* Complaint, *Computershare Trust Co., N.A., et al., v. Energy Future Intermediate Holding Co. LLC et al.*, Adv. Proc. No. 14-50405 (CSS) [Dkt. No. 1] ¶ 46 ("As of the Petition Date, the value of the Collateral exceeds the amount of all Obligations under the Second Lien Notes and all notes that are pari passu with the Second Lien Notes, including the amount of the Applicable Premiums for all such notes."); Answer [Dkt. No. 5] ¶ 46 ("Admitted, though Defendants deny any implication that the Applicable Premium might be owed in connection with the EFIH Debtors' proposed repayment of the Second Lien Notes, which were automatically accelerated upon EFIH's bankruptcy filing as required by the express terms of the Indenture's acceleration provision and by operation of law.").

[6] *See* Notice of Strategic Proposal by NextEra Energy, Inc. and EFIH Second Lien Group [Case No. 14-10979, Dkt. No. 1593], Ex. A at 2.

August 15, 2014
Page 4

*Fifth,* the premise that underlies the EFIH Debtors' request for bifurcation—that it may save great time and expense—is, we submit, faulty. To be sure, litigation over solvency or valuation can be time consuming and costly where there are serious issues as to whether the relevant debtors are solvent. But, given the EFIH Debtors' own admissions and the written offer by NextEra, that is simply not the case as to the EFIH Debtors, the obligors with respect to the EFIH First Lien Notes. *See Johns Hopkins University v. Cellpro*, 160 F.R.D. 30, 35 (D. Del. 1995) (denying bifurcation where moving party could not show that issue it sought to bifurcate was "particularly difficult or complex" and noting that it would be "much more efficient to work towards one trial").

*Finally*, even if a real dispute as to the solvency of the EFIH Debtors somehow exists, it would be more efficient to address that issue and any other defenses the EFIH Debtors may have to payment of the makewhole premium now in a single trial, rather than bifurcate the proceedings and delay the ultimate resolution of the makewhole dispute. For one thing, with the consent of the Debtors, the Court has already authorized discovery concerning "[t]he solvency of the Debtors prior to the Petition Date" in the general bankruptcy cases.[7] Moreover, if the EFIH Debtors are seriously going to dispute their solvency, but no discovery will be permitted for now on that question, the EFIH Debtors will be estopped in the first phase of the Makewhole Litigation from arguing that their liability for the makewhole premium depends in any way on their solvency or insolvency, and thus the Court will in turn have to determine whether they are liable assuming they were and are solvent. That, we respectfully submit, will not be much of a proceeding at all. There is no question that the indenture for the First Lien Notes required the EFIH Debtors to pay the prescribed makewhole premium if the EFIH Debtors redeemed those Notes, and otherwise barred them from redeeming the Notes, "[a]t any time prior to December 1, 2015."[8] And the EFIH Debtors have acknowledged that they could not have refinanced their debt outside bankruptcy during the makewhole period, to take advantage of a reduction in interest rates, without paying the prescribed makewhole premium.[9] If (as all the evidence suggests) the EFIH Debtors are solvent, and there is thus no "limited pie" (Op. at 15) insufficient to pay all the EFIH creditors in full, it is hard to imagine why the result should be any different solely because the EFIH Debtors filed for bankruptcy. After all, "unless some federal interest requires a different result, there is no reason why [the property rights of creditors] should be analyzed differently simply because [the debtor] is involved in a bankruptcy proceeding."

---

[7] Order Establishing Discovery Procedures in Connection with Legacy Discovery of Energy Future Holdings Corporation, its Affiliates, and Certain Third Parties and Other Related Matters [Case No. 14-10979, Dkt. No. 1832] ¶ 1(K).

[8] *See* Compl. [Dkt. No. 1], Ex. A, § 3.07(a).

[9] *See* Tr. of Hearing, July 1, 2014, 47:17-20 (testimony of Mr. Ying) ("Q: You do understand that outside of bankruptcy EFIH could not have prepaid the second lien notes without a make whole, you do understand that, right? [Mr. Ying]: Yes, I do.").

WILMERHALE

August 15, 2014
Page 5

*Travelers Cas. & Surety Co. v. Pacific Gas & Elec. Co.*, 549 U.S. 443, 451 (2007) (quoting *Butner v. United States*, 440 U.S. 48, 55 (1979)). Indeed, in Chapter 11 cases in which a solvent debtor has refinanced its notes during bankruptcy, bankruptcy courts have awarded the noteholders "expectation damages" (or stated that they would be so entitled) even where (unlike here) the refinancing occurred during a period in which the indenture did not require payment of a makewhole or other redemption premium. *See, e.g., In re Chemtura Corp.*, 439 B.R. 561, 605 (Bankr. S.D.N.Y. 2010); *In re Premier Entm't Biloxi LLC*, 445 B.R. 582, 640 (Bankr. S.D. Miss. 2010). In short, while CSC believes that it would have a valid claim for the makewhole premium prescribed in the indenture for the EFIH First Lien Notes even if the EFIH Debtors were insolvent, it does not see how there can be any serious dispute on the question if those Debtors are solvent.

CSC understands that this is not the time or occasion for the Court to resolve the merits of the Makewhole Litigation. But, under the circumstances, it respectfully submits that bifurcating the Makewhole Litigation into two parts will not provide a more efficient way to proceed and that there certainly are no grounds for this Court to reconsider its prior ruling that any bifurcation requires the agreement of the parties.[10]

Respectfully submitted,

*/s/ Philip D. Anker*

Philip D. Anker

Counsel for CSC Trust Company of Delaware, as successor indenture trustee for the holders of the 10% Senior Secured Notes Due 2020

---

[10] CSC is in discussions with counsel for the Ad Hoc Committee of the "PIK Notes" about the appropriate scope of discovery from the members of that Committee, in light of the Court's August 5, 2014, Opinion and its rulings from the bench at the conclusion of the hearing held on July 18, 2014. CSC is hopeful that these issues will be resolved by agreement of the parties. If they are not, it may need to address them with the Court, but doing so now would be premature and hopefully can be avoided altogether.