**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) Case No. 14-10979 (CSS) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |

**SUPPLEMENT TO THE APPLICATION OF ENERGY**
**FUTURE HOLDINGS CORP., *ET AL.*, FOR ENTRY OF**
**AN ORDER AUTHORIZING THE DEBTORS TO RETAIN**
**AND EMPLOY ERNST & YOUNG LLP AS PROVIDERS**
**OF TAX ADVISORY AND INFORMATION TECHNOLOGY**
**SERVICES EFFECTIVE *NUNC PRO TUNC* TO THE PETITION DATE**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") hereby file this supplement (this "Supplement") to the *Application of Energy Future Holdings Corp, et al., for Entry of an Order Authorizing the Debtors to Retain and Employ Ernst & Young LLP as Providers of Tax Advisory and Information Technology Services Effective* Nunc Pro Tunc *to the Petition Date* [D.I. 655] (the "Application").[2] In support of this Supplement, the Debtors submit the *Declaration of Stephen A. Thiel in Support of the Supplement to the Application of Energy Future Holdings Corp., Et Al., for Entry of an Order Authorizing the Debtors To Retain and Employ Ernst & Young LLP as Providers of Tax Advisory and Information Technology Services Effective* Nunc Pro Tunc *to the Petition Date* (the "Thiel

---

[1] The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, for which joint administration has been granted, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

[2] Capitalized terms used but not otherwise defined herein are used as defined in the Application.

Declaration"), filed contemporaneously herewith.  In further support of this Supplement, the Debtors respectfully state as follows:

<u>**Supplement**</u>

1.      On May 29, 2014, the Debtors filed the Application requesting that the Court authorize the retention of Ernst & Young LLP ("<u>EY</u>") as providers of tax advisory and information technology services in accordance with the terms and conditions set forth in the MSA and effective *nunc pro tunc* to the Petition Date.  The Debtors attached as **<u>Exhibit C</u>** through **<u>Exhibit G</u>** of the Application the master services agreement, by and between EY and EFH Corporate Services Company, dated June 10, 2010 (the "<u>MSA</u>"), and certain related statements of work (each, an "<u>SOW</u>"), referred to collectively therein as the Engagement Letter.

2.      As set forth in further detail in the MSA and the related statement of work, by and between EY and EFH Corporate Services Company, dated July 24, 2014 (the "<u>Information Security, Risk, and Compliance SOW</u>"), attached hereto as **<u>Exhibit H</u>**, and the related statement of work, by and between EY and EFH Corporate Services Company, dated August 6, 2014 (the "<u>August Information Security, Risk, and Compliance SOW</u>"), attached hereto as **<u>Exhibit I</u>**, EY has agreed to provide certain information security, risk, and compliance services in connection with these chapter 11 cases (the "<u>Information Security, Risk, and Compliance Services</u>"), subject to approval by the Court of the Application, the Supplement, and the terms and conditions of the MSA, the July Information Security, Risk, and Compliance SOW, and the August Information Security, Risk, and Compliance SOW.[3]  Subject to the detailed description in the MSA, the July

---

[3]    To the extent that this Declaration and the terms of  either of the the MSA, the July Information Security, Risk, and Compliance SOW, or the Augst Information Security, Risk, and Compliance SOW are inconsistent, the terms of the MSA, the July Information Security, Risk, and Compliance SOW, or the August Information Security, Risk, and Compliance SOW, as applicable, shall control.

Information Security, Risk, and Compliance SOW, and the August Information Security, Risk, and Compliance SOW, a summary description of the Information Security, Risk, and Compliance Services is set forth below.

## Scope of Services

3.      As set forth in detail in the MSA, EY will perform certain services as set forth in specific statements of work executed pursuant to the MSA.

4.  As set forth in detail in the July Information Security, Risk, and Compliance SOW, EY will advise EFH Corporate Services Company in connection with certain information security, risk, and compliance activities.  EY may provide certain advisory services and deliverables relating to IT Security & Risk Strategy, IT Security Organization Development, IT Security Architecture & Operations, IT Risk Management & Business Continuity, and IT Regulatory & Compliance.  Such advisory services may include:

a.      Collaborating with a variety of internal and external strategic thought leaders and intelligence organizations, in order to assist EFH with refining the enterprise IT Security & Risk Strategy, and assist EFH in protecting its critical data, assets and infrastructure. The EY Resource (as defined in the July Information Security, Risk, and Compliance SOW) will work in collaboration with the EFH IT executive team working to keep cyber defenses, operations and the overall organization prepared for current and ongoing threats. The IT Security & Risk Strategy should align with business strategy/priorities and be communicated on a regular basis to executives and other stakeholders across EFH, Luminant and TXU Energy. The EY Resource is expected to periodically communicate strategy, critical updates, and measurable progress against industry cyber maturity level targets to EFH IT senior leadership. Additionally, the EY Resource is expected to provide recommendations if/when cyber security breaches occur.

b.      Making recommendations regarding the development and growth of the IT Security, Risk and Compliance organization, focused on employee development and creating a clear vision/roadmap for the organization. EFH will be responsible for final decisions regarding EFH personnel and organizational changes.

c.      Assisting EFH and providing recommendations, in collaboration with EFH's infrastructure, application and operational technology teams, for the direction of and delivery of the overall IT Security Architecture for EFH, Luminant, and TXU. The road map is to be aligned with the needs, priorities and strategies of the business while incorporating and leveraging new security technologies to drive an appropriate and secure operating environment.

d.      Providing recommendations for the definition, development, and management of the enterprise IT/OT Security Operations function. This includes: 1) an internal operational organization, 2) a new 24x7 onshore IT/OT Cyber Security Operations Center, 3) aligning with Luminant operational technology asset monitoring requirements, 4) the interface with 3rd party Managed Security Services Provider for external network monitoring and cyber intelligence, 5) measurement of incident handling performance, and 6) working closely with external entities (industry, government) regarding current threats, indicators of compromise, or other intelligence.

e.      Collaborating with Legal, Physical Security and HR organizations, and provide recommendations to the Cyber Security Incident Response Team (CSIRT) and IT Security & Technology Forensics Team.

f.      Providing recommendations to the EFH team managing a multi-vendor team in the design, development, deployment and support of many critical security related projects (e.g. enterprise identity and access management system) as part of achieving overall improved maturity of IT security capabilities.

g.      Working with the infrastructure, application and operational technology teams to provide recommendations to define risk measurement standards and repeatable NIST or equivalent framework for key components of IT risk, including vendor, cloud, stability, supportability, regulatory, disaster preparedness, and security. The EFH team will perform ongoing risk assessments and provide executive updates/escalation as necessary. The EY Resource will interface and seek to align with the VP, Corporate Risk Management, representing IT in Risk Management Forums with each part of the organization on a periodic basis.

h.      Providing recommendations to the EFH team managing and improving the enterprise-wide Business Continuity function as well as the IT Disaster Recovery function.

i.      Providing recommendations and advisory services to the EFH team responsible for defining, measuring and driving ITGC compliance including but not limited to defining regulatory requirements PCI, SOX and HIPAA. The EY Resource will help support EFH with Luminant

stakeholders to assist them in addressing their compliance to NERC CIP, NEI 08-09, and other standards. The EY Resource will also provide recommendations to the EFH primary interface to the Internal Audit organization, including review of IT-related audit findings, follow-ups and management response commitments.

j.    Keeping EFH apprised of key developments with regulatory and industry-specific organizations, including Edison Electric Institute (EEI), Utility IT Benchmarking (Unite), regulatory working groups and other relevant industry information as facilitated by EFH.

5.    EY's project deliverables under the July Information Security, Risk, and Compliance SOW include an updated security and risk strategy based on the existing EFH security strategy and roadmap, weekly status reports, an updated security, risk, and compliance organizational chart, an updated security architecture roadmap, and achievement of the identity and access management milestones.

6.    As set forth in detail in the August Information Security, Risk, and Compliance SOW, EY will advise EFH Corporate Services Company in connection with certain additional information security, risk, and compliance activities.    EY may provide advisory services to relating to (i) Luminant Energy security architecture support areas and (ii) Comanche Peak Nuclear Power security architecture support areas.    Services relating to the former will include network segmentation enhancements, generation plant control system upgrades, TIBCO upgrade (and other efforts/projects as mutually agreed), industry standards for security practices in the operational technology environment, Luminant architecture review board requirements, and general security related reviews, observations, and recommendations that may be directed by EFH.    Services relating to the latter will include network segmentation and zoned architecture enhancements, firewall architecture, patch management program development, generation plant control system upgrade (and other efforts/projects as mutually agreed), industry standards for

security practices in the operational technology environment, and general security related reviews, observations, and recommendations that may be directed by EFH.

7.      EY's project deliverables under the August Information Security, Risk, and Compliance SOW include bi-weekly status updates, point of view presentations and white papers, and architecture standards, patterns, or reference architecture and recommendations.

## Professional Compensation

8.      The July Information Security, Risk, and Compliance SOW is a Time and Materials – Not to Exceed ("NTE") Statement of Work (as defined in the MSA).  Pursuant and subject to the detailed descriptions contained in the July Information Security, Risk, and Compliance SOW, EY intends to charge EFH Corporate Services Company for the services rendered in connection with the Information Security, Risk, and Compliance SOW as follows:

|  | NTE Fees |
|---|---|
| Eric Trapp Professional Services at $250 per hour (48 hours per week) | $468,000 |
| Eric Kim Professional Services at $250 per hour (48 hours per week) | $444,000 |
| Travel and Expense | $136,800 |
| Total | $1,048,800 |

9.      The period of performance for Eric Trapp under the July Information Security, Risk, and Compliance SOW is from July 7, 2014 to March 31, 2015.  The period of performance for Eric Kim under the July Information Security, Risk, and Compliance SOW is from July 23, 2014 to March 31, 2015.

10.     The August Information Security, Risk, and Compliance SOW is a Time and Materials – Not to Exceed Statement of Work.  Pursuant and subject to the detailed descriptions contained in the August Information Security, Risk, and Compliance SOW, EY intends to charge EFH Corporate Services Company for the services rendered in connection with the August Information Security, Risk, and Compliance SOW as follows:

|  | NTE Fees |
|---|---|
| Joshua Axelrod Professional Services at $300 per hour (8 hours per week average) | $50,400 |
| Sunil Parameswaran Professional Services at $225 per hour (40 hours per week average) | $198,000 |
| Ryan Kimmitt Professional Services at $225 per hour (40 hours per week average) | $198,000 |
| Travel and Expense | $66,960 |
| Total NTE Price | $513,360 |

11.     The period of performance for Joshua Axelrod, Sunil Parameswaran, and Ryan Kimmitt under the August Information Security, Risk, and Compliance SOW is from August 6, 2014 to January 2, 2015.

12.     EY's hourly rates are subject to annual adjustment each July 1.

13.     In addition to the fees set forth above, the Debtors shall reimburse EY for any direct expenses incurred in connection with EY's retention in these chapter 11 cases and the performance of the Information Security, Risk, and Compliance Services set forth in the MSA and the Information Security, Risk, and Compliance SOW.  EY's direct expenses shall include,

but not be limited to, reasonable and customary out-of-pocket expenses for items such as travel,

meals, accommodations, and other expenses specifically related to this engagement.

14.     The MSA also includes language substantially similar to the following:

> If we are required by applicable law, legal process or government action to produce information or personnel as witnesses with respect to the Services or this Agreement, you shall reimburse us for any professional time and expenses (including reasonable external and internal legal costs) incurred to respond to the request, unless we are a party to the proceeding or the subject of the investigation.

### Term of Engagement

15.     EY's provision of the Information Security, Risk, and Compliance Services to the

Debtors is contingent upon the Court's approval of the terms and conditions set forth in the

MSA, the July Information Security, Risk, and Compliance SOW, and the August Information

Security, Risk, and Compliance SOW.

### Disclosure of Connections

16.     To the best of the Debtors' knowledge and except to the extent set forth in the

Thiel Declaration, EY does not hold nor represent any interest materially adverse to the Debtors

in the matters for which EY is proposed to be retained.  The proposed employment of EY is not

prohibited by or improper under Bankruptcy Rule 5002.  Accordingly, the Debtors believe that

EY is eligible for retention by the Debtors under the Bankruptcy Code.

17.     At the Debtors' request, following the Petition Date and prior to Court approval of

EY's engagement in these cases, EY has provided, and may continue to provide in its sole

discretion, certain of the Information Security, Risk, and Compliance Services described in the

MSA, the July Information Security, Risk, and Compliance SOW, and/or the August Information

Security, Risk, and Compliance SOW.  Thus, EY requests that this retention be authorized *nunc*

*pro tunc* to the Petition Date, the date on which EY began providing postpetition services to the Debtors.

18.     EY intends to apply to the Court for payment of compensation and reimbursement of expenses in accordance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the MSA, the July Information Security, Risk, and Compliance SOW, the August Information Security, Risk, and Compliance SOW, and pursuant to any additional orders or procedures that may be established by the Court in these chapter 11 cases.

## Notice

19.     The Debtors shall provide notice of this Supplement on the date hereof via U.S. first class mail to:  (a) the U.S. Trustee; (b) (i) the entities listed on the Consolidated List of Creditors Holding the 50 Largest Unsecured Claims filed pursuant to Bankruptcy Rule 1007(d); and  (ii) proposed counsel to the Creditors' Committee; (c) Wilmington Trust, N.A., in its capacity as administrative agent under the TCEH first lien credit agreement and collateral agent under the TCEH intercreditor agreements and counsel thereto; (d) Bank of New York Mellon Trust Company, N.A., in its capacity as indenture trustee under:  (i) the TCEH unsecured pollution control revenue bonds; and (ii) the EFCH 2037 Notes due 2037, and counsel thereto; (e) American Stock Transfer & Trust Company, LLC, in its capacity as indenture trustee under: (i) the 9.75% EFH senior unsecured notes due 2019; (ii) the 10.0% EFH senior unsecured notes due 2020; (iii) the 10.875% EFH LBO senior unsecured notes due 2017; (iv) the 11.25%/12.0% EFH LBO toggle notes due 2017; (v) the 5.55% EFH legacy notes (series P) due 2014; (vi) the 6.50% EFH legacy notes (series Q) due 2024; and (vii) the 6.55% EFH legacy notes (series R) due 2034, and counsel thereto; (f) Computershare Trust Company, N.A. and Computershare Trust Company of Canada, in their capacities as indenture trustee under:  (i) the 11.0% EFIH

senior secured second lien notes due 2021; and (ii) the 11.75% EFIH senior secured second lien notes due 2022, and counsel thereto; (g) UMB Bank, N.A. in its capacity as indenture trustee under:  (i) the 9.75% EFIH senior unsecured notes due 2019; and (ii) the 11.25%/12.25% EFIH senior toggle notes due 2018, and counsel thereto; (h) BOKF, NA, dba Bank of Arizona, in its capacity as indenture trustee under 11.50% TCEH senior secured notes due 2020, and counsel thereto; (i) CSC Trust Company of Delaware in its capacity as indenture trustee under:  (i) the 6.875% EFIH senior secured notes due 2017; and (ii) the 10.0% EFIH senior secured notes due 2020, and counsel thereto; (j) Law Debenture Trust Company of New York in its capacity as indenture trustee under:  (i) the 10.25% TCEH senior unsecured notes due 2015; and (ii) the 10.50%/11.25% TCEH senior toggle notes due 2016, and counsel thereto; (k) Wilmington Savings Fund Society, FSB in its capacity as indenture trustee under the 15.0% TCEH senior secured second lien notes due 2021, and counsel thereto; (l) counsel to certain holders of claims against the Debtors regarding each of the foregoing described in clauses (c) through (k); (m) the agent for the TCEH debtor-in-possession financing facility and counsel thereto; (n) the agent for the EFIH debtor-in-possession financing facility and counsel thereto; (o) counsel to certain holders of equity in Texas Energy Future Holdings Limited Partnership; (p) counsel to the Ad Hoc Committee of TCEH Unsecured Noteholders; (q) counsel to the Ad Hoc Committee of TCEH Second Lien Noteholders; (r) Oncor Electric Delivery Holdings Company LLC and counsel thereto; (s) Oncor Electric Delivery Company LLC and counsel thereto; (t) the Securities and Exchange Commission; (u) the Internal Revenue Service; (v) the Office of the United States Attorney for the District of Delaware; (w) the Office of the Texas Attorney General on behalf of the Public Utility Commission of Texas; (x) counsel to the Electric Reliability Council of Texas; (y) those parties who have requested notice pursuant to Bankruptcy Rule 2002; and (z) all parties

the Debtors reasonably believe constitute Lease Counterparties.   The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

[*Remainder of page intentionally left blank.*]

WHEREFORE, the Debtors respectfully request that the Application be amended to include the July Information Security, Risk, and Compliance SOW as **<u>Exhibit H</u>** and the August Information Security, Risk, and Compliance SOW as **<u>Exhibit I</u>** thereto.

Wilmington, Delaware
Dated:  August 19, 2014

*/s/ Paul M. Keglevic*
Paul M. Keglevic
Executive Vice President, Chief Financial Officer, and Co-Chief
Restructuring Office of EFH Corp., EFIH, and TCEH LLC

## **Exhibit H**

**July Information Security, Risk, and Compliance SOW**

# STATEMENT OF WORK

## Advisory Services regarding the operation of the EFH Security, Risk & Compliance Function

This Statement of Work, dated July 24, 2014 (this "SOW") is made by Ernst & Young LLP ("we" or "EY") and EFH Corporate Services Company ("EFH", "you" or "Client"), pursuant to the Master Services Agreement, dated June 10, 2010 (the "Agreement"), as amended, between EY and EFH.

Except as otherwise set forth in this SOW, this SOW incorporates by reference, and is deemed to be a part of, the Agreement. The additional terms and conditions of this SOW shall apply only to the Services covered by this SOW and not to Services covered by any other SOW pursuant to the Agreement. Capitalized terms used, but not otherwise defined, in this SOW shall have the meanings in the Agreement.

1. **Scope of Work**:

**Summary**

The Parties agree that EY shall advise EFH in connection with certain Information Security, Risk and Compliance activities and deliverables.  For the purposes of this engagement the EY Resource's (as defined in Section 2 below) primary point of contact will be the EFH CIO.  The activities and deliverables to be performed are as follows:

o   **IT Security & Risk Strategy –** The EY Resource will collaborate with a variety of internal and external strategic thought leaders and intelligence organizations, in order to assist EFH with refining the enterprise IT Security & Risk Strategy, and assist EFH in protecting its critical data, assets and infrastructure.  The EY Resource will work in collaboration with the EFH IT executive team working to keep cyber defenses, operations and the overall organization prepared for current and ongoing threats. The IT Security & Risk Strategy should align with business strategy / priorities and be communicated on a regular basis to executives and other stakeholders across EFH, Luminant and TXU Energy.  The EY Resource is expected to periodically communicate strategy, critical updates, and measurable progress against industry cyber maturity level targets to EFH IT senior leadership.  Additionally, the EY Resource is expected to provide recommendations if / when cyber security breaches occur.

  ▪   Deliverable: Updated Security and Risk strategy based on the existing EFH Security Strategy and Roadmap
  ▪   Weekly Status Report during CIO 1:1 meetings

o   **IT Security Organization Development –** The EY Resource will make recommendations regarding the development and growth of the IT Security, Risk and Compliance organization, focused on employee development and creating a clear vision / roadmap for the organization.  EFH will be responsible for final decisions regarding EFH personnel and organizational changes.

  ▪   Deliverable: Updated Security, Risk & Compliance Org. chart

1

**IT Security Architecture & Operations**

o   **IT Security Architecture** – In collaboration with EFH's infrastructure, application and operational technology teams, the EY Resource will assist EFH and provide recommendations for the direction of and delivery of the overall IT Security Architecture for EFH, Luminant, and TXU. The road map is to be aligned with the needs, priorities and strategies of the business while incorporating and leveraging new security technologies to drive an appropriate and secure operating environment.

   ▪   Deliverable: Updated Security Architecture Roadmap

o   **IT / OT Security Operations** – The EY Resource will provide recommendations for the definition, development, and management of the enterprise IT / OT Security Operations function.  This includes:  1) an internal operational organization,  2) a new 24x7 onshore IT / OT Cyber Security Operations Center, 3) aligning with Luminant operational technology asset monitoring requirements,  4) the interface with 3rd party Managed Security Services Provider for external network monitoring and cyber intelligence,  5) measurement of incident handling performance, and  6) working closely with external entities (industry, government)  regarding current threats, indicators of compromise, or other intelligence.

   ▪   Update as appropriate in Weekly Status Report during the CIO 1:1 meetings

o   **IT Forensics** – The EY Resource will collaborate with Legal, Physical Security and HR organizations, and provide recommendations to the Cyber Security Incident Response Team (CSIRT) and IT Security & Technology Forensics Team.

   ▪   Update as appropriate in Weekly Status Report during the CIO 1:1 meetings

o   **Project Design & Delivery** – The EY Resource will provide recommendations to the EFH team managing a multi-vendor team in the design, development, deployment and support of many critical security related projects (e.g. enterprise identity and access management system) as part of achieving overall improved maturity of IT security capabilities.

   ▪   Deliverable: Achieve the 2014 Identity and Access Management milestones

**IT Risk Management & Business Continuity**

o   **IT Risk Management** – Working with the infrastructure, application and operational technology teams, the EY Resource will provide recommendations to define risk measurement standards and repeatable NIST or equivalent framework for key components of IT risk, including vendor, cloud, stability, supportability, regulatory, disaster preparedness, and security.  The EFH team will perform ongoing risk assessments and provide executive updates / escalation as necessary.  The EY Resource will interface and seek to align with the VP, Corporate Risk Management, representing IT in Risk Management Forums with each part of the organization on a periodic basis.

   ▪   Update as appropriate in Weekly Status Report during the CIO 1:1 meetings

o   **IT Business Continuity & Disaster Recovery** – The EY Resource will provide recommendations to the EFH team managing and improving the enterprise-wide Business Continuity function as well as the IT Disaster Recovery function.

   ▪   Update as appropriate in Weekly Status Report during the CIO 1:1 meetings

2

**IT Regulatory & Compliance**

- ○ **IT General Control (ITGC) Compliance & Audit Management –** The EY Resource will provide recommendations and advisory services to the EFH team responsible for defining, measuring and driving ITGC compliance including but not limited to defining regulatory requirements PCI, SOX and HIPAA.  The EY Resource will help support EFH with Luminant stakeholders to assist them in addressing their compliance to NERC CIP, NEI 08-09, and other standards.  The EY Resource will also provide recommendations to the EFH primary interface to the Internal Audit organization, including review of IT-related audit findings, follow-ups and management response commitments.

    - ▪ Update as appropriate in Weekly Status Report during the CIO 1:1 meetings

- ○ **Regulatory / Industry Advocacy –** The EY Resource will keep EFH apprised of key developments with regulatory and industry-specific organizations, including Edison Electric Institute (EEI), Utility IT Benchmarking (Unite), regulatory working groups and other relevant industry information as facilitated by EFH.

    - ▪ Update as appropriate in Weekly Status Report during the CIO 1:1 meetings

**2.    Key EY Personnel**

The following Resources furnished by EY (the "EY Resources") have been identified as critical to the success of the completion of this SOW:

- • Eric Trapp

- • Eric Kim

For any personnel identified as a Key Personnel, Supplier will not replace such Key Personnel unless EFH so agrees, which agreement shall not be unreasonably withheld, except in the event the applicable Key Personnel resigns, is disabled or his/her employment is terminated by Supplier.  Supplier will not charge EFH any additional fees or charges for the replacement such Key Personnel. The replacement Key Personnel provided by Supplier will become a Key Personnel as defined herein and shall have substantially similar skills and experience as the Key Personnel being replaced. The parties' objective is to minimize any adverse impact to the services being provided to EFH hereunder.

**3.    Project Assumptions**

**Global Assumptions**

- • EY may make recommendations to EFH management within the scope of the services provided.  EFH will be responsible for any decisions made relative to these recommendations.
- • The EY Resource with not have any EFH titles that could convey a client management role and / or employee role.
- • EFH is responsible for implementation and utilization of recommendations and templates.
- • EFH will identify the appropriate personnel to participate in interviews and workshops and team members required for meetings will be available when scheduled. In the event of scheduling conflicts, backup interviews will be arranged by EFH to avoid timeline slippages.
- • EFH will provide access to existing/requested relevant documentation within a reasonable timeframe (3 business days).

4.    **Pricing and Payment**

**4.1 Fee Structure**

This is a Time and Materials - Not to Exceed ("NTE") Statement of Work.

|  | NTE Fees |
| --- | --- |
| Eric Trapp Professional Services (@ $250.00) per hour (48 Hours per week) | $468,000 |
| Eric Kim Professional Services (@$250.00) per hour (48 Hours per week) | $444,000 |
| Travel and Expense | $136,800 |
| Total | $1,048,800 |

The period of performance for Eric Trapp under this SOW is from July 7, 2014 to March 31, 2015.  The period of performance for Eric Kim under this SOW is from July 23, 2014 to March 31, 2015.Professional fees will be billed as incurred through March 31, 2015.

**4.2 Payments**

EY will invoice EFH monthly during any calendar month in which Work is performed.  Such invoices will include a detailed description of the Work actually performed and will reference the Agreement number.  Invoices will be accompanied by such documentation as Company may require for verifying the propriety of any amounts billed. Company may refuse to process any invoice that does not conform to the requirements of this Agreement, including without limitation, the requirements of Article 5.  Company will promptly notify EY of any non-conforming invoice that must be resubmitted.  EY's invoices will be paid in compliance with the Agreement.

EFH will reimburse EY for expenses incurred in connection with the performance of the Services, in accordance with EFH's Reimbursable Expense Policy (as provided in Attachment 5 of the Agreement), including reasonable and customary out-of-pocket expenses such as travel, meals, accommodations and other expenses specifically related to this engagement.

For any changes to the scope of the SOW, EY will work with EFH to reach a mutual agreement, in writing, to changes to this Statement of Work.

5.    **Specific Additional Terms and Conditions**

The Services are advisory in nature. EY will not render an assurance report or opinion under this Statement of Work, nor will the Services constitute an audit, review, examination, or other form of attestation as those terms are defined by the American Institute of Certified Public Accountants. None of the Services or any Reports will constitute any legal opinion or advice. We will not conduct a review to detect fraud or illegal acts.

The Services may involve our review of, or advice relating to, agreements to which you are a party with, or products produced by, a third party (an "EY Client") for which EY (or another EY Firm) performs, or has performed, services unrelated to the agreements or products. On behalf of yourself and your affiliates, you acknowledge and consent to our performance of such services for any EY Client, and agree that neither you nor your affiliates will make a claim that these circumstances present a conflict of interest, real or perceived, for us or any other EY Firm. If, however, our services for an EY Client directly relate or related to the agreements or products, we will seek the consent of both you and the EY Client to the continued performance of the Services.  In any event, we confirm that, except as you and the EY Client otherwise agree in writing, your respective

4

confidential or privileged information will remain confidential to that client in accordance with applicable professional standards.  Notwithstanding anything to the contrary in the Agreement or this Statement of Work, we do not assume any responsibility for any third-party products, programs or services, their performance or compliance with your specifications or otherwise.

In performing the services, we will not take any action that we reasonably believe could impair our independence with respect to any of our audit clients or those of other EY Firms. For example, we will not instruct, supervise or contract with an entity, without having first determined that such action would not impair our independence.

We will base any comments or recommendations as to the functional or technical capabilities of any products in use or being considered by you solely on information provided by your vendors, directly or through you. We are not responsible for the completeness or accuracy of any such information or for confirming any of it.

6. **Termination**

   Notwithstanding the provisions of Article 4 of the Agreement, EFH may terminate this SOW, in whole or in part, at any time, at its sole discretion, by providing fourteen (14) days written notice of termination to EY.

7. **Reservation of Rights**

Notwithstanding anything herein to the contrary, EFH will compensate EY for the Services (a) only after EY's engagement by EFH has been approved by the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court) pursuant to section 327(a) of the Bankruptcy Code and (b) in accordance with any order entered by the Bankruptcy Court governing the compensation or reimbursement of fees of parties employed pursuant to section 327(a) of the Bankruptcy Code.

**Unless otherwise agreed to in writing by EFH IT Procurement, the Services shall not begin and Supplier will not be paid for any Services performed before the execution of this Statement of Work by both parties.**

APPROVALS

IN WITNESS WHEREOF, the parties have executed this Statement of Work on the date or dates indicated below to be effective in accordance with the introductory paragraph of this SOW.

**ERNST & YOUNG LLP**

Signature

Stephen A. Thiel
Printed Name

Coordinating Partner
Printed Title

7-23-2014
Date Signed

**EFH CORPORATE SERVICES COMPANY**

Signature

Kolt Sarver
Printed Name

VP, IT Governance & Strategy
Printed Title

7/28/2014
Date Signed

EFH –EY Advisory Services SOW (Security, Risk & Compliance)

## **Exhibit I**

**August Information Security, Risk, and Compliance SOW**

## SCHEDULE A-12

## Advisory Services Statement of Work

## Regarding the Operation of the EFH Security, Risk & Compliance Function

This Statement of Work (Schedule A-12), dated August 6, 2014 (this "SOW") is made by Ernst & Young LLP ("we" or "EY") and EFH Corporate Services Company ("EFH", "you" or "Client"), pursuant to the Master Services Agreement, dated June 10, 2010 (, as amended (the "Agreement").

Except as otherwise set forth in this SOW, this SOW incorporates by reference, and is deemed to be a part of, the Agreement. The additional terms and conditions of this SOW shall apply only to the Services covered by this SOW and not to Services covered by any other SOW pursuant to the Agreement. Capitalized terms used, but not otherwise defined, in this SOW shall have the meanings in the Agreement.

1. <u>Scope of Work</u>:

<u>Summary</u>

The Parties agree that EY shall advise EFH in connection with certain Information Security, Risk and Compliance activities and deliverables.  For the purposes of this engagement the EY Resource's (as defined in Section 2 below) primary point of contact will be the Director, Security Architecture and Delivery.  The activities and deliverables to be performed are as follows, and may include other mutually agreed upon tasks:

- **IT and OT Security Architecture –** EY will provide Advisory Services to assist EFH with Security Architecture that are currently in the pipeline:
  - o Luminant Energy Security Architecture Support Areas –
    - Network segmentation enhancements
    - Generation plant control system upgrades
    - TIBCO upgrade, and other efforts /projects as mutually agreed
    - Industry standards for security practices in the operational technology environment
    - Luminant Architecture review board requirements
    - General security related reviews, observations and recommendations that may be directed by EFH
  - o Comanche Peak Nuclear Power Plant Security Architecture Support Areas –
    - Network segmentation and zoned architecture enhancements
    - Firewall architecture
    - Patch management program development
    - Generation plant control system upgrade, and other efforts/projects as mutually agreed
    - Industry standards for  security practices in the operational technology environment
    - General security related reviews, observations and recommendations that may be directed by EFH
  - o Security Architecture Support Area Project Deliverables

1

- Bi-weekly status updates
- Point of view presentations and white papers
- Architecture standards, patterns, or reference architecture and recommendations

## 2.    Key EY Personnel

The following Resources furnished by EY (the "EY Resources") have been identified as critical to the success of the completion of this SOW:

- Joshua Axelrod (Luminant Energy and Comanche Peak Security Architecture Resource Lead)

- Sunil Parameswaran (Luminant Energy Security Architecture Resource)

- Ryan Kimmitt (Comanche Peak Security Architecture Resource)

For any personnel identified as a Key Personnel, Supplier will not replace such Key Personnel unless EFH so agrees, which agreement shall not be unreasonably withheld, except in the event the applicable Key Personnel resigns, is disabled or his/her employment is terminated by EY.  EY will not charge EFH any additional fees or charges for the replacement such Key Personnel. The replacement Key Personnel provided by EY will become a Key Personnel as defined herein and shall have substantially similar skills and experience as the Key Personnel being replaced. The parties' objective is to minimize any adverse impact to the services being provided to EFH hereunder. Key EY Personnel working on Comanche Peak Nuclear site will be required to complete background investigations and other requirements necessary to qualify for Comanche Peak Nuclear Power Plan unescorted access.

## 3.    Project Assumptions

**Global Assumptions**
- EY may make recommendations to EFH management within the scope of the services provided.  EFH will be responsible for any decisions made relative to these recommendations.
- The EY Resource with not have any EFH titles that could convey a client management role and / or employee role.
- EFH is responsible for implementation and utilization of standards, patterns, recommendations and templates.
- EFH will identify the appropriate personnel to participate in interviews and workshops and team members required for meetings will be available when scheduled. In the event of scheduling conflicts, backup interviews will be arranged by EFH to avoid timeline slippages.
- EFH will provide access to existing/requested relevant documentation within a reasonable timeframe (3 business days).

## 4.    Pricing and Payment

**4.1 Fee Structure**

This is a Time and Materials - Not to Exceed ("NTE") Statement of Work.

|  | NTE Fees |
|---|---|
| Joshua Axelrod Professional Services (@ $300.00) per hour (8 Hours per week average) | $50,400 |
| Sunil Parameswaran | $198,000 |

2

| | |
|---|---|
| Professional Services (@$225.00) per hour (40 Hours per week average) | |
| Ryan Kimmitt Professional Services (@$225.00) per hour (40 Hours per week average) | $198,000 |
| Travel and Expense | $66,960 |
| Total NTE Price | $513,360 |

The period of performance for Joshua Axelrod, Sunil Parameswaran, and Ryan Kimmitt under this SOW is from August 6, 2014 to January 2, 2015.  Professional fees will be billed as incurred through January 2, 2015.

**4.2 Payments**

EY will invoice EFH monthly during any calendar month in which Work is performed.  Such invoices will include a detailed description of the Work actually performed and will reference the Agreement number.  Invoices will be accompanied by such documentation as EFH may require for verifying the propriety of any amounts billed.  EFH may refuse to process any invoice that does not conform to the requirements of this Agreement, including without limitation, the requirements of Article 5.  EFH will promptly notify EY of any non-conforming invoice that must be resubmitted.  EY's invoices will be paid in compliance with the Agreement.

EFH will reimburse EY for expenses incurred in connection with the performance of the Services, in accordance with EFH's Reimbursable Expense Policy (as provided in Attachment 5 of the Agreement), including reasonable and customary out-of-pocket expenses such as travel, meals, accommodations and other expenses specifically related to this engagement.

For any changes to the scope of the SOW, EY will work with EFH to reach a mutual agreement, in writing, to changes to this Statement of Work.

EY will provide EFH a credit equivalent to 15% of the paid professional fees of this SOW.  This credit can be applied to future security projects signed within two years after the date of execution of this SOW.  The credit will be applied at a rate of up to 10% for any single SOW with professional fees less than $750,000 and  25% for any single SOW with professional fees greater than $750,000.

**5.   Specific Additional Terms and Conditions**

The Services are advisory in nature. EY will not render an assurance report or opinion under this Statement of Work, nor will the Services constitute an audit, review, examination, or other form of attestation as those terms are defined by the American Institute of Certified Public Accountants. None of the Services or any Reports will constitute any legal opinion or advice. We will not conduct a review to detect fraud or illegal acts.

The Services may involve our review of, or advice relating to, agreements to which you are a party with, or products produced by, a third party (an "EY Client") for which EY (or another EY Firm) performs, or has performed, services unrelated to the agreements or products. On behalf of yourself and your affiliates, you acknowledge and consent to our performance of such services for any EY Client, and agree that neither you nor your affiliates will make a claim that these circumstances present a conflict of interest, real or perceived, for us or any other EY Firm. If, however, our services for an EY Client directly relate or related to the agreements or products, we will seek the consent of both you and the EY Client to the continued performance of the Services.  In any event, we confirm that, except as you and the EY Client otherwise agree in writing, your respective confidential or privileged information will remain confidential to that client in accordance with applicable professional standards.  Notwithstanding anything to the contrary in the Agreement or this Statement of Work, we

do not assume any responsibility for any third-party products, programs or services, their performance or compliance with your specifications or otherwise.

In performing the services, we will not take any action that we reasonably believe could impair our independence with respect to any of our audit clients or those of other EY Firms. For example, we will not instruct, supervise or contract with an entity, without having first determined that such action would not impair our independence.

We will base any comments or recommendations as to the functional or technical capabilities of any products in use or being considered by you solely on information provided by your vendors, directly or through you. We are not responsible for the completeness or accuracy of any such information or for confirming any of it.

6.  <u>Termination</u>

   Notwithstanding the provisions of Article 4 of the Agreement, EFH may terminate this SOW, in whole or in part, at any time, at its sole discretion, by providing fourteen (14) days written notice of termination to EY.

7.  <u>Reservation of Rights</u>

Notwithstanding anything herein to the contrary, EFH will compensate EY for the Services (a) only after EY's engagement by EFH has been approved by the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") pursuant to section 327(a) of the Bankruptcy Code and (b) in accordance with any order entered by the Bankruptcy Court governing the compensation or reimbursement of fees of parties employed pursuant to section 327(a) of the Bankruptcy Code.

**Unless otherwise agreed to in writing by EFH IT Procurement, the Services shall not begin and EY will not be paid for any Services performed before the execution of this Statement of Work by both parties.**

APPROVALS

IN WITNESS WHEREOF, the parties have executed this Statement of Work on the date or dates indicated below to be effective in accordance with the introductory paragraph of this SOW.

**ERNST & YOUNG LLP**                                    **EFH CORPORATE SERVICES COMPANY**

_____                             _____
Signature                                               Signature

Stephen A. Thiel                                        Kolt Sarver
_____                             _____
Printed Name                                            Printed Name

Coordinating Partner                                    VP, IT Governance & Strategy
_____                             _____
Printed Title                                           Printed Title

8-6-2014                                                8-6-2014
_____                             _____
Date Signed                                             Date Signed

4