# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) Case No. 14-10979 (CSS) |
| Debtors. | ) (Jointly Administered) |
| | ) **Re: D.I. 1838** |

## DECLARATION OF JOSEPH HO, SENIOR VICE PRESIDENT OF ENTERPRISE RISK MANAGEMENT, IN SUPPORT OF THE MOTION OF ENERGY FUTURE HOLDINGS CORP., *ET AL.*, FOR ENTRY OF AN ORDER ESTABLISHING PROCEDURES FOR THE LIQUIDATION BY THIRD PARTIES OF CLAIMS ON ACCOUNT OF CERTAIN HEDGING AND TRADING ARRANGEMENTS

Pursuant to 28 U.S.C. § 1746, I, Joseph Ho, declare as follows:

1. I am over the age of 18 and duly authorized to execute this declaration (the "Declaration") on behalf of the Debtors in support of, the *Motion of Energy Future Holdings Corp., et al., for Entry of an Order Establishing Procedures for the Liquidation by Third Parties of Claims on Account of Certain Hedging and Trading Arrangements* [D.I. 1838] (the "Motion"),[2] filed contemporaneously herewith.

2. I am Senior Vice President of Enterprise Risk Management for EFH Corporate Services Company. I have served in various roles for the Debtors for the past six years. Through these roles, I have been, and continue to be, responsible for managing enterprise-wide risk assessment and management efforts, including managing market, credit, and operational

---

[1] The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, for which joint administration has been granted, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

[2] Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to them in the Motion.

risks for the Debtors' trading and marketing operations. I have been employed in various finance and risk management positions in the wholesale energy marketing and trading industry for over thirteen years, with the predominant amount of that time spent with firms engaged in wholesale electricity and natural gas marketing and trading activities.

3.  The facts in this Declaration are based on my personal knowledge and review of information, my experience with the Debtors' operations (and specifically, with respect to its Hedging and Trading Entities' operations), and my experience and knowledge of the industry and general market conditions. If called to testify, I would testify to the facts set forth herein.

I.  **The Hedging and Trading Arrangements.**

4.  As of the date herein, the Hedging and Trading Entities have approximately 71 active Hedging and Trading Arrangements which generally fall into the following three categories:[3]

> (a) ***Over-the-Counter Transactions.*** The Hedging and Trading Entities enter into over-the-counter physical and financial transactions related to natural gas, power, coal, fuel oil, uranium, emission allowances, and other energy-related commodities directly with unrelated third parties.
>
> (b) ***Clearing Broker Arrangements.*** The Hedging and Trading Entities are also party to customer agreements with clearing brokers to clear trades and hedges related to the purchase and sale of power, fuel oil, natural gas, uranium, emission allowances, and other energy-related products and physical and financial derivatives thereof, through various exchanges. Generally, each clearing broker has broad discretion under the customer

---

[3] A complete description of the Debtors' Hedging and Trading Arrangements may be found in the Motion and the *Declaration of Terry L. Nutt in Support of the Motion of Energy Future Holdings Corp., et al., for Entry of Interim and Final Orders Authorizing the Debtors to (A) Continue Performing Under Prepetition Hedging and Trading Arrangements, (B) Pledge Collateral and Honor Obligations Thereunder, and (C) Enter Into and Perform Under Trading Continuation Agreements and New Postpetition Hedging and Trading Arrangements*, filed May 1, 2014 [D.I. 229], and the *Supplemental Declaration of Terry L. Nutt in Support of the Motion of Energy Future Holdings Corp., et al., for Entry of a Final Order (Re: Proprietary Trading Transactions That Do Not Involve the Debtors Power Generation and Retail Operations) Authorizing the Debtors to (A) Continue Performing Under Prepetition Hedging and Trading Arrangements, (B) Pledge Collateral and Honor Obligations Thereunder, and (C) Enter Into and Perform Under Trading Continuation Agreements and New Postpetition Hedging and Trading Arrangements*, filed June 27, 2014 [D.I. 1197].

arrangement to terminate its agreement and cancel or liquidate the Hedging and Trading Entities' open positions.

(c) ***ERCOT Transactions***. ERCOT manages the flow of electric power, and schedules power on an electric grid, for 23 million Texas customers, representing 85% of the state's electric load. ERCOT also performs financial settlements for the competitive wholesale bulk-power market and administers retail switching for 6.7 million premises in competitive choice areas. The ERCOT market provides the Hedging and Trading Entities with unique access to sell and procure power, ancillary services, and congestion revenue rights to mitigate the risks associated with the Debtors' power generation and retail electricity businesses.

5. There is the potential that certain of the Hedging and Trading Counterparties may be entitled to the protections of the Safe Harbor Provisions. The Safe Harbor Provisions generally permit the Hedging and Trading Arrangement Counterparties to exercise certain rights and remedies (*i.e.*, unilateral termination) that are not generally available to typical contract counterparties in a bankruptcy case. Specifically, I understand that sections of the Bankruptcy Code—often referred to as the "safe harbors"—grant special protections to counterparties to future, forward, and financial contracts.

6. On the Petition Date, the Debtors filed the Trading Arrangements Preservation Motion, pursuant to which the Debtors sought authority to (a) satisfy prepetition payment and collateral obligations related to the Hedging and Trading Arrangements (subject to certain caps on an interim basis), (b) continue to honor the prepetition Hedging and Trading Arrangements in the postpetition period in the ordinary course of business, (c) enter into, and perform under, new postpetition Hedging and Trading Arrangements in the ordinary course of business; and (d) execute trading continuation agreements with certain Hedging and Trading Arrangement Counterparties pursuant to which such Counterparties agree to waive any Safe Harbor Protections to which they may be entitled in exchange for settlement of their prepetition claims. The Court entered this relief on a final basis on June 6, 2014 [D.I. 860] (except with respect to

new proprietary trading transactions, which relief was granted on a final basis on June 30, 2014 [D.I. 1309]).

7. The relief provided through the Trading Arrangements Preservation Motion is intended to provide Hedging and Trading Arrangement Counterparties with comfort regarding the Debtors' ability to continue performing under the Hedging and Trading Arrangements, in the hopes of preventing such Counterparties from unilaterally terminating the Hedging and Trading Arrangements.

8. The relief granted through the Trading Arrangements Preservation Motion has been tremendously helpful in preserving the value of the Debtors' estates. The Debtors have successfully executed a number of trading continuation agreements with their counterparties (which ensure that such counterparties continue to transact with the Debtors) and have entered into new postpetition Hedging and Trading Arrangements, which have allowed the Debtors to mitigate the loss of value associated with postpetition drops in natural gas prices.

9. Notwithstanding the benefits provided through the relief granted in connection with the Trading Arrangements Preservation Motion, a number of collateralized Hedging and Trading Arrangement Counterparties have taken advantage of the Safe Harbor Provisions that allow Hedging and Trading Arrangement Counterparties to unilaterally terminate Hedging and Trading Arrangements.

10. In connection with such terminations, there have been instances where the Hedging and Trading Arrangement Counterparties owe amounts to the Debtors. The Debtors, therefore, require a streamlined process for liquidating claims arising from validly terminated Hedging and Trading Arrangements. The Liquidation Procedures would allow the Debtors to efficiently and quickly liquidate such amounts and, critically, receive prompt payment to the

benefit of the Debtors' estates.

## II. The Liquidation Procedures Should Be Approved and Authorized.

11. I believe that the Liquidation Procedures are efficient and cost-saving to the Debtors whether the termination of Hedging and Trading Arrangements requires payment to be made by the Debtors or by the Hedging and Trading Arrangement Counterparties. When the Debtors owe payment, I believe that the Liquidation Procedures provide efficient, standardized procedures to cut unnecessary costs associated with using a non-standardized process to settle potential payment amounts and preserve the value of the Debtors' estates. When the Debtors are owed amounts by Hedging and Trading Arrangement Counterparties, I believe the Liquidation Procedures allow the Debtors to promptly receive such payment.

12. I believe the Liquidation Procedures will streamline the liquidation of claims arising on account of the termination of Hedging and Trading Arrangements. I believe efficiently administering the Debtors' estates is critical to preserving the value of those estates for the benefit of all stakeholders in these chapter 11 cases. I also believe that implementation of the Liquidation Procedures will facilitate the Debtors' ability to expedite the liquidation of any claims arising on account of the termination of Hedging and Trading Arrangements, without the inefficiency and additional costs of Hedging and Trading Arrangement Counterparties exercising ad hoc remedies outside an established process. In addition, I believe that the Liquidation Procedures will simplify the process of collecting payments owed to the Debtors, ultimately yielding benefits that are in the best interest of the Debtors, their estates, and all stakeholders in these chapter 11 cases.

13. In consideration of all these factors, I believe that the Court should approve the relief requested in the Motion.

*[Remainder of page intentionally left blank.]*

RLF1 10749267v.1

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Wilmington, Delaware
Dated: August 26, 2014

Joseph Ho
Senior Vice President, Enterprise Risk Management
EFH Corporate Services Company