## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) | Case No. 14-10979 (CSS) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | **Hearing Date: September 16, 2014 at 11:00 a.m.** |
| | ) | **Objection Deadline: September 9, 2014 at 4:00 p.m.** |

### MOTION OF ENERGY FUTURE HOLDINGS CORP., *ET AL.,* APPROVING THE STIPULATION BY AND AMONG LUMINANT GENERATION COMPANY LLC, LUMINANT MINING COMPANY LLC, SANDOW POWER COMPANY LLC, AND ALCOA INC.

The above-captioned debtors and debtors in possession (collectively, the "Debtors") file this motion (this "Motion") for entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Order"), authorizing Luminant Generation Company LLC ("Luminant Generation"), Luminant Mining Company LLC ("Luminant Mining"), and Sandow Power Company LLC ("SPC" and, together with Luminant Generation and Luminant Mining, the "Debtor Parties") to enter into and perform under the stipulation attached hereto as **Exhibit 1** to the Order (the "Stipulation")[2] with Alcoa Inc. ("Alcoa"). In support of this Motion, the Debtors submit the *Declaration of Robert Frenzel, Senior Vice President and Chief Financial Officer of Luminant Generation Company LLC in Support of the Motion of Energy Future Holdings Corp.,* et al.*, Approving the Stipulation by and Among Luminant Generation Company*

---

[1]    The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, for which joint administration has been granted, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

[2]    All terms used but not defined herein shall have the meaning ascribed to them in the Stipulation. In the event of any inconsistency between this Motion and the Stipulation, the Stipulation shall control.

*LLC, Luminant Mining Company LLC, Sandow Power Company LLC, and Alcoa Inc.* (the "Frenzel Declaration"). In further support of this Motion, the Debtors respectfully state as follows.

### Jurisdiction and Venue

1.       The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware,* dated February 29, 2012. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Debtors confirm their consent pursuant to rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Bankruptcy Rules") to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2.       Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.       The bases for the relief requested in this Motion are sections 362(d), 363, and 553(a) of title 11 of the United States Code (the "Bankruptcy Code") and rules 2002, 4001(a)(3), and 6004(h) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

### Relief Requested

4.       By this Motion, the Debtors seek entry of the Order authorizing the Debtor Parties to enter into and perform under the Stipulation with Alcoa, providing for the netting and set off of certain claims arising under and relating to the Alcoa Agreements (defined herein), including (a) certain prepetition claims owing by and among (i) Luminant Generation and Alcoa, (ii) Luminant Mining and Alcoa, and (iii) SPC and Alcoa, and (b) certain postpetition claims owing

2

by and among (i) Luminant Generation and Alcoa, (ii) Luminant Mining and Alcoa, and (iii)

SPC and Alcoa.

## Background

5.      On April 29, 2014 (the "Petition Date"), each of the Debtors filed a voluntary

petition with the Court under chapter 11 of the Bankruptcy Code.  The Debtors are operating

their businesses and managing their properties as debtors in possession pursuant to

sections 1107(a) and 1108 of the Bankruptcy Code.  The Court has entered an order for joint

administration of these chapter 11 cases.  The Court has not appointed a trustee.  The Office of

the United States Trustee for the District of Delaware (the "U.S. Trustee") formed an official

committee of unsecured creditors (the "Creditors' Committee") in these chapter 11 cases on May

13, 2014 [D.I. 420].  Further information regarding the Debtors' business operations and capital

structure is set forth in the declaration of Paul Keglevic in support of the Debtors' first day

motions [D.I. 98].

I.      **The Alcoa Agreements.**

6.      Alcoa, a corporation organized under the laws of the Commonwealth of

Pennsylvania, has a primary aluminum smelter facility located at Rockdale, Texas (the

"Rockdale Facility"), which, when operating, required approximately 535 megawatts of energy

to operate at full capacity.  In connection with supplying the energy needed for this facility,

Luminant Generation, Luminant Mining, SPC, and Alcoa are each party to one or more of the

following prepetition agreements relevant to the attached Stipulation (collectively, the "Alcoa

Agreements"):

- *Contract Mining Agreement* dated August 31, 2007, as amended from time to time (the "CMA"), between Alcoa, SPC and Luminant Mining under which Luminant Mining acts as a contract miner to mine lignite coal reserves at a lignite mine known as the "Three Oaks Mine" and mines and supplies lignite coal (a) to Alcoa to meet Alcoa's obligation to supply 100% of the fuel for an electric generation unit known as Sandow Unit 4

3

("Unit 4") and (b) to SPC for use by SPC as fuel for an electric generation unit known as Sandow Unit 5 ("Unit 5"). Under the CMA, Luminant Mining invoices Alcoa for the cost of mining lignite at the Three Oaks Mine, including the cost of capital and depreciation (the "Mining Operation Costs").[3]

- **Ground Lease** dated August 31, 2007 (the "Ground Lease"), between Alcoa and Luminant Mining. The Ground Lease is a non-royalty bearing real property ground lease under which Alcoa leases certain real property to Luminant Mining in connection with the CMA, and charges Luminant Mining for use of the leased premises (the "Ground Lease Obligations").

- **Sandow Unit 4 Agreement** dated August 13, 1976, as amended from time to time and together with various related agreements and amendments thereto (the "Unit 4 Agreement"), between Alcoa and Luminant Generation, under which Alcoa supplies lignite coal to Luminant Generation, and Luminant Generation converts the lignite coal into electricity. Under the Unit 4 Agreement, Alcoa invoices Luminant Generation for the cost of lignite used to generate Luminant Generation's portion of the power (the "Lignite Costs"), and Luminant Generation invoices Alcoa for Alcoa's portion of the expenses incurred by Luminant Generation in operating Unit 4 (the "Operating Expenses"). Additionally, Alcoa is required to pay Luminant Generation an operating fee and certain other fees for the cost of capital and depreciation (the "Luminant Fees"), and Luminant Generation is required to pay Alcoa for surplus power sold into the grid, as well as other fees based upon cost of capital and other specific items as set forth in the applicable agreements (the "Alcoa Fees").

- **Amended and Restated Common Facilities Agreement** dated August 10, 2012, as amended from time to time (the "CFA"), between Alcoa, Luminant Generation, and SPC, clarifying the ownership and duties of the parties with respect to various common areas. Under the CFA, Luminant Generation and SPC are required to pay Alcoa certain amounts for use of the common areas and facilities (the "CFA Obligations").

- **Letter Agreement - Sandow Building 200 Rental** dated January 31, 2009 (the "Building 200 Lease") between Alcoa and SPC. Under the Building 200 Lease, SPC is required to pay Alcoa for the rental of Building 200 for use as office space and related uses in support of SPC's power generation operations (the "Building 200 Obligations").

- **Agreement Regarding Ownership of Lignite Interest** dated August 15, 2007 (the "Lignite Agreement"), between Alcoa and SPC, establishing the ownership of certain lignite interests. Under the Lignite Agreement, Alcoa pays certain lignite royalties to SPC (the "Lignite Royalties").

- **Lignite Mining Lease** dated August 31, 2007 (the "Mining Lease"), between Alcoa and SPC. Under the Mining Lease, SPC leases Alcoa's interest in certain lignite that is

---

[3]    Pursuant to the Parties' historical practices, Alcoa also invoices Luminant Mining for power used in Luminant Mining's lignite mining operations at the Three Oaks Mine (the "Mining Power Costs").

subject to the Lignite Agreement, and pays lignite mining royalties to Alcoa (the "Mining Royalties").[4]

## II.    The Stipulation.

### A.    Overview.

7.    Prior to the Petition Date, the Debtor Parties and Alcoa regularly netted and setoff amounts owing by and among the Debtor Parties and Alcoa under the Alcoa Agreements.  By the Stipulation, the Debtor Parties seek to allow Alcoa to net and set off certain of the agreed, undisputed prepetition amounts that each of the Debtor Parties owe to Alcoa, against amounts that Alcoa owes to each of the Debtor Parties under the Alcoa Agreements (each, a "Prepetition Setoff" and collectively, the "Prepetition Setoffs"), resulting in a total net payable from Alcoa to the Debtors of approximately $4.96 million.

8.    Additionally, the Debtor Parties seek to net and set off accrued, outstanding postpetition claims owing by and among the Debtor Parties and Alcoa under the Alcoa Agreements (each, a "Postpetition Transaction" and collectively, the "Postpetition Transactions").  For the postpetition period beginning April 29, 2014 through June 30, 2014, this will result in a total net payable from Alcoa to the Debtors of approximately $4.05 million.  For postpetition amounts that have accrued since June 30, 2014, and for amounts that will come due thereafter, the Debtor Parties and Alcoa will net, set off, and pay postpetition claims arising under the Alcoa Agreements on the terms described in the Stipulation.

---

[4]    Pursuant to the Parties' historical practices, Luminant Mining pays the Mining Royalties to Alcoa on behalf of SPC, and subsequently seeks reimbursement from SPC.

RLF1 10749256v.1

**B.     Prepetition Setoffs.**

9.     Pursuant to the Stipulation, the Debtor Parties and Alcoa agree that the total net payable owing from Alcoa to the Debtor Parties on account of Prepetition Setoffs is approximately $4.96 million, which includes:

  a. a total net payable of approximately $4,592,541 owed by Alcoa to Luminant Mining (the "Alcoa/Mining Net Payable") resulting from the set off of (i) the amounts Alcoa owes Luminant Mining for Mining Operation Costs against (ii) amounts Alcoa owes Luminant Mining for Mining Power Costs and Ground Lease Obligations;

  b. a total net payable of approximately $371,457 owed by Alcoa to Luminant Generation (the "Alcoa/Generation Net Payable") resulting from the set off of (i) the amounts Alcoa owes Luminant Generation for Operating Expenses and Luminant Fees against (ii) the amounts Luminant Generation owes Alcoa for Lignite Costs, Alcoa Fees, and CFA Obligations; and

  c. the netting and setoff (the "Alcoa/SPC Setoff") of (i) amounts Alcoa owes SPC for Lignite Royalties against (ii) amounts SPC owes Alcoa for CFA Obligations, Building 200 Obligations, and Mining Royalties, up to Alcoa's prepetition exposure to SPC for Lignite Royalties, resulting in a net prepetition claim against SPC of approximately $16,496 (the "Allowed Alcoa/SPC Net Claim").

10.     Specifically, the Prepetition Setoff amounts owing by and among the Debtor Parties and Alcoa, the nature of the obligations, and the relevant prepetition periods are listed in the following chart:

| Debtor | Agreement | Obligation | Payor | Payee | Period | Amount |
|---|---|---|---|---|---|---|
| Luminant Mining | CMA | Mining Operation Costs | Alcoa | Luminant Mining | April 1 - April 28 | $5,168,320 |
| | Historical Practices | Mining Power Costs | Luminant Mining | Alcoa | April 1 - April 28 | $(486,435) |
| | Ground Lease | Ground Lease Obligations | Luminant Mining | Alcoa | April 1 - April 28 | $(89,344) |
| | | | | | *Alcoa/Mining Net Payable* | **$4,592,541** |
| Luminant Generation | Sandow Unit 4 | Operating Expenses | Alcoa | Luminant Generation | April 1 - April 28 | $3,886,989 |

RLF1 10749256v.1

| Debtor | Agreement | Obligation | Payor | Payee | Period | Amount |
|---|---|---|---|---|---|---|
| | Agreement | Luminant Fees | Alcoa | Luminant Generation | April 1 - April 28 | $7,530,674 |
| | | Lignite Costs | Luminant Generation | Alcoa | April 1 - April 28 | $(1,140,904) |
| | | Alcoa Fees | Luminant Generation | Alcoa | April 1 - April 28 | $(9,688,654) |
| | CFA | CFA Obligations | Luminant Generation | Alcoa | April 1 - April 28 | $(216,648) |
| | | | | **Alcoa/Generation Net Payable** | | **$371,457** |
| SPC | Lignite Agreement | Lignite Royalties | Alcoa | SPC | April 1 - April 28 | $329,188 |
| | CFA | CFA Obligations | SPC | Alcoa | April 1 - April 28 | $(227,552) |
| | Building 200 Lease | Building 200 Obligations | SPC | Alcoa | April 1 - April 28 | $(7,467) |
| | Mining Lease | Mining Royalties | SPC | Alcoa | March 1 - April 28 | $(110,665) |
| | | | | **Allowed Alcoa/SPC Net Claim** | | **$(16,496)** |

11.     Pursuant to the Stipulation, Alcoa will pay the Alcoa/Mining Net Payable and the Alcoa/Generation Net Payable to the applicable Debtor Parties, by a single consolidated wire transfer, within five (5) Business Days of the Effective Date.  The Debtor Parties and Alcoa agree that Alcoa's prepetition entitlements that are subject to the Prepetition Setoffs may only be satisfied by set off against the amounts owed to Luminant Mining, Luminant Generation and SPC, respectively, and that payment of the Alcoa/Mining Net Payable and Alcoa/Generation Net Payable, and setoff of the amounts subject to the Alcoa/SPC Setoff, shall constitute the full and final satisfaction of such prepetition claims.

### C.     Postpetition Transactions.

12.     The Debtor Parties and Alcoa seek authority to continue to net their postpetition debts on a monthly basis, and to pay and settle all outstanding postpetition amounts owing among the Parties, in the ordinary course of business, according to historical practices. Specifically, the Debtor Parties and Alcoa agree that:

a.    Luminant Mining and Alcoa will net and/or set off postpetition amounts Luminant Mining owes to Alcoa for Mining Power Costs, and Ground Lease Obligations against the postpetition amounts Alcoa owes Luminant Mining for Mining Operation Costs (each such net amount, an "Alcoa/Mining Postpetition Net Payable");

b.    Luminant Generation and Alcoa will net and/or set off the postpetition amounts Luminant Generation owes to Alcoa for Lignite Costs, Alcoa Fees, and CFA Obligations, against the postpetition amounts Alcoa owes Luminant Generation for Operating Expenses and Luminant Fees (each such net amount, an "Alcoa/Generation Postpetition Net Payable"); and

c.    Alcoa and SPC will net and/or set off the postpetition amount SPC owes to Alcoa for CFA Obligations, Building 200 Obligations, and Mining Royalties against the postpetition amount Alcoa owes SPC for Lignite Royalties (each such net amount, an "Alcoa/SPC Postpetition Net Payable").

13.    For the postpetition periods of April 29 to May 31, 2014 and June 1 to June 30, 2014, the Alcoa/Mining Postpetition Net Payables, Alcoa/Generation Postpetition Net Payables, and Alcoa/SPC Postpetition Net Payables owing by and among the Debtor Parties and Alcoa under the applicable Agreements are listed in the following chart:

| Debtor | Payor | Payee | Period | Amount |
|---|---|---|---|---|
| Luminant Mining | Alcoa | Luminant Mining | April 29 - May 31 | $11,163,994 |
| | Alcoa | Luminant Mining | June 1 - June 30 | $7,250,092 |
| | | Alcoa/Mining Postpetition Net Payable | | $18,414,086 |
| Luminant Generation | Luminant Generation | Alcoa | April 29 - May 31 | $(7,759,354) |
| | Luminant Generation | Alcoa | June 1 - June 30 | $(6,438,480) |
| | | Alcoa/Generation Postpetition Net Payable | | $(14,197,834) |
| SPC | Alcoa | SPC | April 29 - May 31 | $33,878 |
| | SPC | Alcoa | June 1 - June 30 | $(202,679) |
| | | Alcoa/SPC Postpetition Net Payable | | $(168,801) |

RLF1 10749256v.1

14.    Pursuant to the Stipulation, Alcoa will pay the April/May and June Alcoa/Mining Postpetition Net Payables and April/May Alcoa/SPC Postpetition Net Payable, net of the April/May and June Alcoa/Generation Postpetition Net Payables and June Alcoa/SPC Postpetition Net Payable, by a single consolidated wire transfer within five (5) Business Days of the Effective Date.

15.    With respect to amounts that have accrued during postpetition months commencing July 1, 2014, the Debtor Parties and Alcoa will net, settle, and pay such amounts (a) with respect to Alcoa/Mining Postpetition Net Payables, on the 4th Business Day of the following month, and (b) with respect to Alcoa/Generation Postpetition Net Payables or Alcoa/SPC Postpetition Net Payables, on the 15th of the following month.

### Basis for Relief

I.    **Cause Exists to Modify the Automatic Stay to Permit Alcoa to Set Off Certain Prepetition Claims.**

16.    The Debtors' bankruptcy petitions operate as a stay against, among other things, "the setoff of any debt owing to the debtor that arose before the commencement of the case under this title against any claim against the debtor." 11 U.S.C. § 362(a)(7). Section 362(d) of the Bankruptcy Code, however, permits the Court, after notice and a hearing, to modify the automatic stay "for cause." 11 U.S.C. § 362(d).

17.    "Cause" can be a flexible standard, taking into account the particular facts and circumstances of the particular issue before the Court. *See Baldino v. Wilson (In re Wilson)*, 116 F.3d 87, 90 (3d Cir. 1997) (noting that section 362(d)(1) "does not define 'cause,' leaving courts to consider what constitutes cause based on the totality of the circumstances in each particular case."). Courts have found that cause exists for modifying the automatic stay where, among other reasons, doing so would permit a debtor to set off mutual prepetition claims with a valued

vendor or other critical stakeholders. *See, e.g.*, *In re Commc'n Dynamics, Inc.*, 300 B.R. 220, 227 (Bankr. D. Del. 2003) (granting vendor's motion to lift stay to set off sale credits due to debtor); *In re Orlinski*, 140 B.R. 600, 604 (Bankr. S.D. Ga. 1991) (granting relief from automatic stay for IRS to set off claims against chapter 13 debtor).

18.    Cause exists here to grant Alcoa the limited relief from the automatic stay to set off its prepetition claims under the Alcoa Agreements on the terms described in the Stipulation. By lifting the automatic stay, Alcoa will, within five Business Days of entry of the Order, pay to the Debtors the Alcoa/Mining Net Payable and Alcoa/Generation Net Payable, for a total payment equal to approximately $4.96 million.

19.    Following the Prepetition Setoffs, Alcoa shall not assert any claim in the Debtors' chapter 11 cases or otherwise against Luminant Mining, Luminant Generation, SPC, or any other Debtor or Debtor affiliate relating to any of the claims subject to Prepetition Setoff and neither Luminant Mining, Luminant Generation nor any other Debtor shall have any obligation to make any payment or satisfy any claim on account of any of such Prepetition Setoff claims (other than on account of the Allowed Alcoa/SPC Net Claim). Accordingly, the Debtors respectfully submit that cause exists to modify the automatic stay on the terms set forth in the Stipulation.

## II.    The Court Should Permit the Parties to Set Off Their Mutual Prepetition Obligations.

20.    Section 553(a) of the Bankruptcy Code allows parties to net out mutual debts in order to avoid the absurdity of "making A pay B when B owes A." *Matter of Bevill, Bresler & Schulman Asset Management*, 896 F.2d 54, 57 (3d Cir. 1990); *In re Metco Mining and Minerals, Inc.*, 171 B.R. 210, 216 (W.D. Pa 1994). Specifically, a creditor may "offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this

title against a claim of such creditor against the debtor that arose before the commencement of the case." 11 U.S.C. § 553(a).

21.    Section 553(a) "recognizes and *preserves* rights of set off," *In re APF Co.*, 264 B.R. 344, 354 (Bankr. D. Del. 2001) (emphasis supplied).  In other words, this section only applies where such right is available under state law. *Citizens Bank of Maryland v. Strumpf*, 516 U.S. 16, 18 (1995) ("Although no federal right of setoff is created by the Bankruptcy Code, 11 U. S. C. § 553(a) provides that, with certain exceptions, whatever right of setoff otherwise exists is preserved in bankruptcy.").  However, any setoff must comply with the statutory requirements as well. *See In re Atanasov,* 221 B.R. 113, 117 (D. N.J. 1998) ("Courts may look to state law in order to determine whether a setoff has occurred, however, the granting or denial of the right to a setoff depends upon the terms of section 553, and not upon the terms of state statutes or laws.").

22.    To determine which state's law to apply, the Court turns to Delaware choice of law rules. *In re Garden Ridge Corp.*, 338 B.R. 627, 632 (Bankr. D. Del. 2006) *aff'd*, 399 B.R. 135 (D. Del. 2008) *aff'd*, 386 F. App'x 41 (3d Cir. 2010).  "Under Delaware [choice of law rules], express choice of law provisions in contracts are generally given effect." *Chemipal Ltd. v. Slim–Fast Nutritional Foods Intern., Inc.,* 350 F. Supp. 2d 582, 595 (D. Del. 2004).  Here, the relevant Alcoa Agreements are governed by Texas law, which provides that "[i]n order for one demand to be set off against another, both demands must mutually exist between the same parties.  Indeed, setoff is proper only where demands are mutual, between the same parties, and in the same capacity or right." *In re Garden Ridge Corp.*, 338 B.R. at 633 (citing *Capital Concepts Properties 85–1 v. Mutual First, Inc.,* 35 F.3d 170, 175 (5th Cir. 1994)).  Similarly, courts in this Circuit have found that setoff is available only where four conditions exist: "(1) the creditor holds a 'claim' against the debtor that arose before the commencement of the case; (2)

11

the creditor owes a 'debt' to the debtor that also arose before the commencement of the case; (3) the claim and debt are 'mutual'; and (4) the claim and debt are each valid and enforceable." *In re APF Co.*, 264 B.R. 344, 354 (Bankr. D. Del. 2001); *see also In re Garden Ridge Corp.*, 338 B.R. at 633 (Bankr. D. Del. 2006) (citing 3 Collier on Bankruptcy ¶ 553.01[1]).

23.    "Under Texas and federal law, mutuality of obligation exists when debts are owing between the same parties in the same right or capacity." *In re Garden Ridge Corp.*, 338 B.R. at 633. "Mutuality of the debt and claim means that the creditor is indebted to the debtor who likewise owes a debt to the creditor." *Id.* at 634; *see also In re Metco Mining and Minerals, Inc.*, 171 B.R. 210, 216 (W.D. Pa. 1994) (finding that for there to be mutuality, "each party must own his claim to his own right severally, with the right to collect in his own name against the debtor in his own right severally").

24.    The prepetition setoffs contemplated under the Stipulation are valid under section 553(a). *First*, all of the prepetition setoff amounts are based on debts that arose before the commencement of the case. *Second*, the mutuality requirement is satisfied: as clearly illustrated above, Alcoa and Luminant Generation are indebted to one another, Alcoa and Luminant Mining are indebted to one another, and the same is true for Alcoa and SPC. *Finally*, all of those obligations are valid and enforceable—they have a certain and ascertainable character that makes them capable of being applied in compensation of each other. *See* 11 U.S.C. § 553(a).

**III.    The Stipulation Satisfies Section 363 of the Bankruptcy Code.**

25.    Section 363(c)(1) of the Bankruptcy Code provides that a debtor in possession "may enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business, without notice or a hearing, and may use property of the estate in the ordinary course of business without notice or a hearing." 11 U.S.C. § 363(c)(1).

26.     In addition, section 363(b)(1) of the Bankruptcy Code authorizes a bankruptcy

court, after notice and a hearing, to authorize a debtor to "use, sell, or lease, other than in the

ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1).  A debtor may use,

sell, or lease property of the estate where a sound business purpose justifies such actions.

*See Contrarian Funds LLC v. Aretex LLC (In re WestPoint Stevens, Inc.)*, 600 F.3d 231, 248 n.8

(2d Cir. 2010); *Fulton State Bank v. Schipper (In re Schipper)*, 933 F.2d 513, 515 (7th Cir. 1991)

(noting that criteria for approval of transaction under section 363(b) is whether debtor has "an

articulated business justification"); *see also Comm. of Equity Sec. Holders v. Lionel Corp. (In re*

*Lionel Corp.)*, 722 F.2d 1063, 1070 (2d Cir. 1983) (holding that debtor must satisfy the business

judgment rule under section 363(b)(1)); *In re Borders Grp., Inc.*, 453 B.R. 459, 473 (Bankr.

S.D.N.Y. 2011) (same).  Specifically, once a debtor articulates a valid business justification for a

particular form of relief, the court reviews the debtor's request under the business judgment rule.

*See In re Commercial Mortg. and Fin. Co.*, 414 B.R. 389, 394 (Bankr. N.D. Ill. 2009) (noting

that debtor in possession "has the discretionary authority to exercise his business judgment in

operating the debtor's business similar to the discretionary authority to exercise business

judgment given to an officer or director of a corporation").

27.     Before the Petition Date, Alcoa and the Debtors regularly netted and set off

mutual obligations owed by and among the Parties, and settled net payables on a monthly basis.

Accordingly, the Debtors submit that the proposed postpetition netting transactions constitute an

ordinary course use of estate property and, subject to approval of the other relief requested by

this Motion, are permitted under section 363(c)(1) of the Bankruptcy Code.

28.     To the extent that section 363(b)(1) of the Bankruptcy Code is applicable to the

Stipulation, the Debtors submit that the Stipulation satisfies section 363(b)(1) of the Bankruptcy

Code. Specifically, the proposed Stipulation was negotiated at arm's-length and in good-faith. The Stipulation also achieves a result that is in the best interests of the Debtors' estate because the Stipulation would, if approved, prevent further disruption to the Debtors' billing practices and result in the payment to the Debtors by Alcoa of approximately $4.96 million on account of prepetition net payables as well as approximately $4.05 million on account of postpetition net payables outstanding as of June 30, 2014. Accordingly, the Debtors submit that the proposed Stipulation reflects the exercise of the Debtors' sound business judgment and respectfully request that the Court approve the Stipulation.

## Waiver of Bankruptcy Rules 6004(a) and 6004(h)

29.    To implement the foregoing successfully, the Debtors seek a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the 14-day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h).

## Reservation of Rights

30.    Nothing in this Motion or any actions taken by the Debtors pursuant to the relief granted in the Order shall constitute or be deemed: (a) an admission as to the validity, amount, type, or priority of any particular claim against any Party, including administrative expense claims under section 503(b) of the Bankruptcy Code (except as set forth in section 2.09 of the Stipulation); (b) with respect to any claim, a change in the priority level existing in the absence of the Stipulation; (c) a promise or requirement to pay any particular claim other than those specifically agreed to in this Stipulation; (d) a waiver of any Party's right to dispute or assert any particular claim on any grounds, including, without limitation, any right to assert a claim based on a breach or default of any of the Alcoa Agreements; (e) a waiver or limitation of any of the rights, claims, or potential causes of action of the Parties under the Bankruptcy Code or any other

applicable law, including those relating to the Alcoa Agreements, (f) a waiver of Alcoa's claims, right to payment, setoff or recoupment rights for amounts related to mechanics' liens asserted against the Debtor Parties; (g) a waiver of any claims with respect to the writedowns identified in those certain letters of John P. Holsinger of Alcoa to Tiffany L. Silvey of Luminant dated March 17, 2014 and Tiffany L. Silvey of Luminant to John P. Holsinger of Alcoa on January 16, 2014 and March 4, 2014  (the "Lignite Dispute"); (h) a waiver of any claims with respect to or arising from the lignite inventory described in the Lignite Inventory Agreement between Alcoa, SPC, and Luminant Mining dated August 31, 2007; (i) a request or authorization to assume or reject any of the Alcoa Agreements or other agreements under section 365 of the Bankruptcy Code, (j) a waiver of any Party's rights to assert that any other Party is in breach or default of the Agreements, or (k) an admission that the Agreements are integrated.

### Notice

31.     The Debtors shall provide notice of this Motion on the date hereof via first class mail to:  (a) the Office of the U.S. Trustee for the District of Delaware; (b) (i) the entities listed on the Consolidated List of Creditors Holding the 50 Largest Unsecured Claims filed pursuant to Bankruptcy Rule 1007(d);  and  (ii)  proposed  counsel  to  the  Creditors'  Committee; (c) Wilmington Trust, N.A., in its capacity as administrative agent under the TCEH first lien credit agreement and collateral agent under the TCEH intercreditor agreements and counsel thereto; (d) Bank of New York Mellon Trust Company, N.A., in its capacity as indenture trustee under: (i) the TCEH unsecured pollution control revenue bonds; and (ii) the EFCH 2037 Notes due 2037, and counsel thereto; (e) American Stock Transfer & Trust Company, LLC, in its capacity as indenture trustee under: (i) the 9.75% EFH senior unsecured notes due 2019; (ii) the 10.0% EFH senior unsecured notes due 2020; (iii) the 10.875% EFH LBO senior unsecured

15

notes due 2017; (iv) the 11.25%/12.0% EFH LBO toggle notes due 2017; (v) the 5.55% EFH legacy notes (series P) due 2014; (vi) the 6.50% EFH legacy notes (series Q) due 2024; and (vii) the 6.55% EFH legacy notes (series R) due 2034, and counsel thereto; (f) Computershare Trust Company, N.A. and Computershare Trust Company of Canada, in their capacities as indenture trustee under: (i) the 11.0% EFIH senior secured second lien notes due 2021; and (ii) the 11.75% EFIH senior secured second lien notes due 2022, and counsel thereto; (g) UMB Bank, N.A. in its capacity as indenture trustee under: (i) the 9.75% EFIH senior unsecured notes due 2019; and (ii) the 11.25%/12.25% EFIH senior toggle notes due 2018, and counsel thereto; (h) BOKF, NA, dba Bank of Arizona, in its capacity as indenture trustee under 11.50% TCEH senior secured notes due 2020, and counsel thereto; (i) CSC Trust Company of Delaware in its capacity as indenture trustee under: (i) the 6.875% EFIH senior secured notes due 2017; and (ii) the 10.0% EFIH senior secured notes due 2020, and counsel thereto; (j) Law Debenture Trust Company of New York in its capacity as indenture trustee under: (i) the 10.25% TCEH senior unsecured notes due 2015; and (ii) the 10.50%/11.25% TCEH senior toggle notes due 2016, and counsel thereto; (k) Wilmington Savings Fund Society, FSB in its capacity as indenture trustee under the 15.0% TCEH senior secured second lien notes due 2021, and counsel thereto; (l) counsel to certain holders of claims against the Debtors regarding each of the foregoing described in clauses (c) through (k); (m) the agent for the TCEH debtor-in-possession financing facility and counsel thereto; (n) the agent for the EFIH debtor-in-possession financing facility and counsel thereto; (o) counsel to certain holders of equity in Texas Energy Future Holdings Limited Partnership; (p) counsel to the Ad Hoc Committee of TCEH Unsecured Noteholders; (q) counsel to the Ad Hoc Committee of TCEH Second Lien Noteholders; (r) Oncor Electric Delivery Holdings Company LLC and counsel thereto; (s) Oncor Electric Delivery Company

LLC and counsel thereto; (t) the Securities and Exchange Commission; (u) the Internal Revenue Service; (v) the Office of the United States Attorney for the District of Delaware; (w) the Office of the Texas Attorney General on behalf of the Public Utility Commission of Texas; (x) counsel to the Electric Reliability Council of Texas; (y) those parties that have requested notice pursuant to Bankruptcy Rule 2002; and (z) Alcoa.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

<u>**No Prior Request**</u>

32.    No prior request for the relief sought in this Motion has been made to this or any other court.

*[Remainder of page intentionally left blank.]*

WHEREFORE, the Debtors respectfully request that the Court enter the Order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested in this Motion and granting such other and further relief as is appropriate under the circumstances.

Dated:   August 26, 2014
         Wilmington, Delaware

                                                                
**RICHARDS, LAYTON & FINGER, P.A.**
Mark D. Collins (No. 2981)
Daniel J. DeFranceschi (No. 2732)
Jason M. Madron (No. 4431)
920 North King Street
Wilmington, Delaware 19801
Telephone:     (302) 651-7700
Facsimile:     (302) 651-7701
Email:          collins@rlf.com
                 defranceschi@rlf.com
                 madron@rlf.com

-and-

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Richard M. Cieri (*pro hac vice* pending)
Edward O. Sassower, P.C. (*pro hac vice* pending)
Stephen E. Hessler (*pro hac vice* pending)
Brian E. Schartz (*pro hac vice* pending)
601 Lexington Avenue
New York, New York 10022-4611
Telephone:     (212) 446-4800
Facsimile:     (212) 446-4900
Email:          richard.cieri@kirkland.com
                 edward.sassower@kirkland.com
                 stephen.hessler@kirkland.com
                 brian.schartz@kirkland.com

-and-

James H.M. Sprayregen, P.C. (*pro hac vice* pending)
Chad J. Husnick (*pro hac vice* pending)
Steven N. Serajeddini (*pro hac vice* pending)
300 North LaSalle
Chicago, Illinois 60654
Telephone:     (312) 862-2000
Facsimile:     (312) 862-2200
Email:          james.sprayregen@kirkland.com
                 chad.husnick@kirkland.com
                 steven.serajeddini@kirkland.com

Proposed Co-Counsel to the Debtors and Debtors in Possession

RLF1 10749256v.1