## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) | Case No. 14-10979 (CSS) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | **Hearing Date: September 16, 2014 at 11:00 a.m.** |
| | ) | **Objection Deadline: September 9, 2014 at 4:00 p.m.** |

## MOTION OF ENERGY FUTURE HOLDINGS CORP., *ET AL.*, FOR THE ENTRY OF AN ORDER AUTHORIZING AND APPROVING EXPEDITED PROCEDURES TO REJECT OR ASSUME EXECUTORY CONTRACTS AND UNEXPIRED LEASES

The above-captioned debtors and debtors in possession (collectively, the "Debtors") file this motion (this "Motion") for the entry of an order (the "Order"), substantially in the form attached hereto as **Exhibit A**, establishing procedures (as described herein, the "Contract and Lease Procedures") by which the Debtors may reject, assume (in some instances, as amended), and assume and assign certain of their prepetition executory contracts (collectively, the "Contracts") and prepetition unexpired leases (collectively, the "Leases").[2] In support of this

---

[1] The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, for which joint administration has been granted, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

[2] Notwithstanding anything contained herein, approval of the Contract and Lease Procedures will not prevent the Debtors from seeking to reject or assume any Contracts or Leases by separate motion. For the avoidance of doubt, pursuant to this Motion and the Contract Procedures, the Debtors will not seek to assume or reject (a) any Hedging and Trading Arrangement contract, as defined and described in the *Motion of Energy Future Holdings Corp., et al., for Entry of Interim and Final Orders Authorizing the Debtors to (A) Continue Performing Under Prepetition Hedging and Trading Arrangements, (B) Pledge Collateral and Honor Obligations Thereunder, and (C) Enter Into and Perform Under Trading Continuation Agreements and New Postpetition Hedging and Trading Arrangements* [D.I. 41] and the *Motion of Energy Future Holdings Corp., et al., for Entry of an Order Establishing Procedures for the Liquidation by Third Parties of Claims on Account of Certain Hedging and Trading Arrangements* [D.I. 1838], or (b) any Customer Agreement that has been assumed by the Debtors pursuant to the *Order Authorizing the Retail Debtors to Assume the Customer Agreements* [D.I. 785].

Motion, the Debtors submit the *Declaration of Michael Carter, Senior Vice President, Corporate Planning, and Assistant Treasurer of EFH Corporate Service Company, in Support of the Motion of Energy Future Holdings Corp.*, et al., *for the Entry of an Order Authorizing and Approving Expedited Procedures to Reject or Assume Executory Contracts and Unexpired Leases* (the "Carter Declaration"), attached hereto as **Exhibit D**.   In further support of the Motion, the Debtors respectfully state as follows.

### Jurisdiction and Venue

1.      The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Debtors consent pursuant to rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware  to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The bases for the relief requested in this Motion are sections 363, 365, and 554 of title 11 of the United States Code (the "Bankruptcy Code") and rules 2002,  4001, 6004, 6006, and 6007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

### Relief Requested

4.      By this Motion, the Debtors seek entry of the Order authorizing and approving the Contract and Lease Procedures.

2

<u>**Background**</u>

5.     On April 29, 2014 (the "<u>Petition Date</u>"), each of the Debtors filed a voluntary petition with the Court under the Bankruptcy Code. The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. The Court has entered an order for joint administration of these chapter 11 cases. The Court has not appointed a trustee. The Office of the United States Trustee for the District of Delaware (the "<u>U.S. Trustee</u>") formed an official committee of unsecured creditors (the "<u>Creditors' Committee</u>") in these chapter 11 cases on May 13, 2014 [D.I. 420].   Further information regarding the Debtors' business operations and capital structure is set forth in the declaration of Paul Keglevic in support of the Debtors' first day motions [D.I. 98] (the "<u>First Day Declaration</u>").

I.     **The Debtors' Executory Contracts and Unexpired Leases.**

6.     As of the Petition Date, the Debtors were party to over 12,000 Contracts and Leases, which include agreements with vendors for the supply of goods and services and leases for real and personal property. Approximately 6,000 of these may be considered nonresidential real property leases subject to section 365(d)(4) of the Bankruptcy Code, providing that, absent agreement with the non-Debtor counterparty, such Leases will be deemed rejected unless they are assumed within 120 days from the Petition Date.[3]

7.     The Debtors are in the process of evaluating all of their Contracts and Leases to determine (a) whether such Contracts and Leases should be rejected as unfavorable to the Debtors or (b) whether such Contracts and Leases should be assumed or assumed and assigned,

---

[3]     Specifically, the Court has entered the *Order Extending the Debtors' Time to Assume or Reject Unexpired Leases of Nonresidential Real Property* (D.I. 1803), extending the deadline under section 365(d)(4) of the Bankruptcy Code through and including November 25, 2014.

including those Contracts and Leases to be assumed as amended through consensual negotiations with the relevant counterparties.

8.    Absent the relief requested in this Motion, the Debtors would be required to file separate motions to reject or assume individual Contracts and Leases, resulting in substantial costs to, and administrative burdens on, the Debtors' estates—not to mention the additional burden such an approach would place on the Court's docket.  To that end, the Debtors intend the Contract and Lease Procedures to minimize the costs and administrative burden on the Debtors' estates and for purposes of judicial economy.

## II.    The Proposed Rejection Procedures.

9.    The Debtors seek entry of the Order authorizing and approving the following with respect to rejection of Contracts and Leases (the "Rejection Procedures"):

a.  The Debtors will file a notice with the Court (the "Rejection Notice") with an attached schedule (the "Rejection Schedule") of those Contracts and/or Leases that the Debtors seek to reject pursuant to section 365 of the Bankruptcy Code.  The Rejection Schedule shall set forth, among other relevant information:  (i) the Contracts and/or Leases to be rejected; (ii) the names and addresses of the counterparties to such Contracts and/or Leases (the "Rejection Counterparties"); (iii) the proposed effective date of rejection for such Contracts and/or Leases (the "Rejection Date"); (iv) if a Lease, the personal property to be abandoned, if any, and an estimate of the book value of such property; and (v) the deadlines and procedures for filing objections to the Rejection Notice (as set forth below).  The Debtors will cause the Rejection Schedule to be served by overnight delivery upon (i) each Rejection Counterparty; (ii) counsel to the Creditors' Committee; (iii) counsel to the ad hoc committee of TCEH first lien creditors; (iv) the U.S. Trustee; and (v) all parties requesting notice pursuant to Bankruptcy Rule 2002 (the "Rejection Notice Parties").

b.  The Debtors will cause an individualized Rejection Notice (the "Individual Rejection Notice"), substantially in the form of **Exhibit B**, to be served by overnight delivery upon the affected Rejection Counterparty.  The Individual Rejection Notice shall not be filed with the Court, provided, however, that the Debtors shall file an affidavit of service with the Court evidencing service of the Individual Rejection

4

Notice upon the affected Rejection Counterparty within five (5) business days of serving such Individual Rejection Notice.

c. The Individual Rejection Notice will set forth: (i) the Contract(s) and/or Lease(s) to be rejected; (ii) the name of the Debtor party and Rejection Counterparty (and its counsel if known); (iii) the Rejection Date; (iv) if a Lease, the personal property to be abandoned, if any, and an estimate of the book value of such property; and (v) the deadlines and procedures for filing objections to the Rejection Notice (as set forth below).

d. Any objections to a proposed rejection of a Contract and/or Lease must be filed with the Court and served so as to be **actually received** by Debtors' counsel no later than fourteen (14) days after the date that the Debtors served the Individual Rejection Notice to reject such Contract and/or Lease (the "<u>Rejection Objection Deadline</u>"). The Debtors' counsel will, within a reasonable time, provide the Rejection Notice Parties with a copy of the objection by e-mail.

e. For those Contracts and/or Leases where no objection is filed and served by the Rejection Objection Deadline, the Debtors may generate an amended Rejection Schedule (the "<u>Amended Rejection Schedule</u>"). The Amended Rejection Schedule may be attached to a proposed order to reject the Contracts and/or Leases listed in the Amended Rejection Schedule, substantially in the form of **Exhibit 1** to **Exhibit B** attached hereto (the "<u>Rejection Order</u>") and filed with the Court under a certificate of no objection.

f. If an objection is properly filed and served on the Debtors' counsel, as specified above, unless such parties agree otherwise in writing, a hearing will be scheduled to consider that objection. Such Contract and/or Lease will only be deemed rejected upon entry by the Court of a consensual form of Rejection Order resolving the objection as between the objecting party and the Debtors, or upon further order of the Court.

g. If the Debtors have deposited monies with a counterparty as a security deposit or other arrangement, such counterparty may not set off or recoup or otherwise use such deposit without the prior approval of the Court.

h. In connection with the rejection of a Lease, with respect to any personal property of the Debtors located at any of the premises subject to any Rejection Notice, the Debtors shall remove such property prior to the Rejection Date. If the Debtors determine that the property at a particular location has no or *de minimis* value or the cost of removing the property exceeds the value of such property, the Debtors shall

generally describe the property in the Individual Rejection Notice and
their intent to abandon such property. Absent a timely objection, the
property will be deemed abandoned pursuant to section 554 of the
Bankruptcy Code, as is, effective as of the Rejection Date.[4] Upon
abandonment, the landlord may dispose of such property without
further notice or Court order and free of liability for such action.

10.    The Debtors further request that counterparties to Contracts and Leases that are
rejected pursuant to the Rejection Procedures be required to file a proof of claim relating to the
rejection of such Contracts and Leases, if any, by the later of (a) any applicable claims bar date
established in these chapter 11 cases or (b) thirty (30) days after entry of the applicable Rejection
Order.

**III.    Proposed Assumption Procedures.**

11.    The Debtors seek entry of the Order authorizing and approving the following
procedures with respect to assumption of Contracts and Leases (the "Assumption Procedures"):

a.    The Debtors will file a notice with the Court (the "Assumption
Notice") with an attached schedule (the "Assumption Schedule") of
those Contracts and/or Leases that the Debtors seek to assume
pursuant to section 365 of the Bankruptcy Code. The Assumption
Schedule shall set forth, among other relevant information: (i) the
Contracts and/or Leases to be assumed; (ii) the names and addresses of
the counterparties to such Contracts and/or Leases (the "Assumption
Counterparties"); (iii) the identity of the proposed assignee of such
Contract(s) and/or Lease(s) (the "Assignee"), if applicable; (iv) the
proposed effective date of the assumption for such Contract and/or
Lease (the "Assumption Date"); (v) the proposed cure amount, if
any; (vi) a description of any material amendments to the Contract or
Lease made outside the ordinary course of business; and (vii) the
deadlines    and    procedures    for    filing    objections    to    the
Assumption Notice (as set forth below). The Debtors will cause the
Assumption Schedule to be served by overnight delivery upon (i) each
Assumption Counterparty; (ii) each Assignee, if applicable;
(iii) counsel to the Creditors' Committee; (iv) counsel to the ad hoc

---

4    If the Rejection Date specified on the Rejection Schedule and the Individual Rejection Notice predates the
removal of any property not otherwise generally described in the abandonment schedule to the Individual
Rejection Notice, the Rejection Date will not become effective until such date the property is removed from the
premises.

committee of TCEH first lien creditors; (v) the U.S. Trustee; and (vi) all parties requesting notice pursuant to Bankruptcy Rule 2002 (the "<u>Assumption Notice Parties</u>").

b.  The Debtors will cause an individualized Assumption Notice (the "<u>Individual Assumption Notice</u>"), substantially in the form of **Exhibit C**, to be served by overnight delivery upon the affected Assumption Counterparty. The Individual Assumption Notice shall not be filed with the Court, provided, however, that the Debtors shall file an affidavit of service with the Court evidencing service of the Individual Assumption Notice upon the affected Assumption Counterparty within five (5) business days of serving such Individual Assumption Notice.

c.  The Individual Assumption Notice will set forth: (i) the Contract(s) and/or Lease(s) to be assumed or assumed and assigned, as applicable; (ii) the names of the Debtor party and Assumption Counterparty (and its counsel if known); (iii) the identity of the Assignee, if applicable; (iv) if a Lease, the proposed intended use for the premises; (v) if there has been a default, the Debtor's and/or Assignee's ability to provide adequate assurance of future performance; (vi) the proposed cure amount, if any; (vii) a description of any material amendments to the Contract or Lease made outside the ordinary course of business; and (vii) the deadlines and procedures for filing objections to the Assumption Notice (as set forth below).[5]

d.  Any objections to a proposed assumption of a Contract and/or Lease must be filed with the Court and served so as to be **actually received** by Debtors' counsel no later than fourteen (14) days after the date that the Debtors served the Individual Assumption Notice to assume such Contract and/or Lease (the "<u>Assumption Objection Deadline</u>"). Debtors' counsel will, within a reasonable time, provide the Assumption Notice Parties with a copy of the objection by email.

e.  For those Contracts and/or Leases where no objection is filed and served by the Assumption Objection Deadline, the Debtors may generate an amended Assumption Schedule (the "<u>Amended Assumption Schedule</u>"). The Amended Assumption Schedule may be attached to a proposed order to assume the Contracts and/or Leases listed in the Amended Assumption Schedule, substantially in the form of **Exhibit 1** to **Exhibit C** attached hereto (the "<u>Assumption Order</u>") and filed with the Court under a certificate of no objection.

---

[5]  The Debtors shall serve an Assumption Counterparty with evidence of adequate assurance upon such Assumption Counterparty's written request to the Debtors' counsel.

RLF1 10749278v.1

f.  If an objection is properly filed and served on the Debtors' counsel, as specified above, unless such parties agree otherwise in writing, a hearing will be scheduled to consider that objection.  Such Contract and/or Lease will only be deemed assumed upon entry by the Court of a consensual form of Assumption Order resolving the objection as between the objecting party and the Debtors, or upon further order of the Court.

g.  The Debtors reserve the right to remove any Contract and/or Lease from an Assumption Schedule at any time prior to the Assumption Date (including, without limitation, upon the failure of any proposed assumption and assignment to close).

12.  In addition, pursuant to sections 105(a) and 363(f) of the Bankruptcy Code, the Debtors request that the assignment of any Contract or Lease pursuant to the Assumption Procedures (a) be free and clear of (i) all liens (and any liens shall attach to the proceeds in the same order and priority subject to all existing defenses, claims, setoffs, and rights), and (ii) any and all claims (as that term is defined in section 101(5) of the Bankruptcy Code), obligations, demands, guaranties of or by the Debtors, debts, rights, contractual commitments, restrictions, interests and matters of any kind and nature, whether arising prior to or subsequent to the commencement of these chapter 11 cases, and whether imposed by agreement, understanding, law, equity or otherwise (including, without limitation, claims and encumbrances (A) that purport to give to any party a right or option to effect any forfeiture, modification or termination of the interest of any Debtor or Assignee, as the case may be, in the Contracts and/or Leases, or (B) in respect of any taxes), and (b) constitutes a legal, valid, and effective transfer of such Contracts and/or Leases and vests the applicable Assignee with all rights, titles, and interests to the applicable Contracts and/or Leases.[6]

---

[6]  Certain of the Contracts and/or Leases may contain provisions that restrict, prohibit, condition or limit the assumption and/or assignment of such Contract or Lease.  The Debtors reserve the right to argue that such clauses are unenforceable anti-assignment or *ipso facto* clauses under section 365 of the Bankruptcy Code.

### Basis for Relief

**I.      The Contract and Lease Procedures are in the Best Interests of the Debtors' Estates.**

13.      As noted, the Debtors intend to reject or assume a substantial number of Contracts and Leases. Establishing the Contract and Lease Procedures will streamline the administration of these chapter 11 cases and enhance the efficiency of the reorganization process by eliminating substantial legal expenses that would otherwise be incurred if multiple hearings were held on separate motions with respect to every Contract and Lease that the Debtors seek to assume or reject. The Contract and Lease Procedures are reasonable and fair to Contract and Lease counterparties because they afford parties in interest the opportunity to be heard with respect to the rejection, assumption or assumption and assignment of the Contracts and Leases (and any amendments to Contracts and/or Leases or the abandonment of property related thereto).

14.      Courts in this district often enter orders seeking similar approval. *See, e.g.*, *In re Overseas Shipholding Grp., Inc.*, Case No. 12-20000 (Bankr. D. Del. May 28, 2014) (entering an order for procedures to reject and assume executory contracts and unexpired leases); *In re PMGI Holdings, Inc. (FriendFinder Networks Inc.)*, Case No. 13-12404 (Bankr. D. Del. Nov. 5, 2013) (same); *In re Exide Techs.*, Case No. 13-11482 (Bankr. D. Del. July 11, 2013) (same); *In re Anchor Blue Holding Corp.*, Case No. 11-10110 (Bankr. D. Del. Feb. 4, 2011) (same); *In re Hub Holding Corp.*, Case No. 09-11770 (Bankr. D. Del. June 30, 2009) (same).

**II.     Rejection, Assumption, Assignment, and Amendment of the Contracts and Leases is an Exercise of the Debtors' Business Judgment.**

15.      Section 365(a) of the Bankruptcy Code provides that a debtor in possession "may assume or reject any executory contract or unexpired lease of the debtor" subject to the court's approval. 11 U.S.C. § 365(a). Courts generally authorize debtors to assume or reject executory contracts and unexpired leases where the debtors appropriately exercise their "business

judgment." *See, e.g., Sharon Steel Corp. v. Nat'l Fuel Gas Distrib. Corp.*, 872 F.2d 36, 39-40

(3d Cir. 1989); *Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.)*, 4

F.3d 1095, 1098 (2d Cir. 1993); *Robertson v. Pierce (In re Chi-Feng Huang)*, 23 B.R. 798, 800

(B.A.P. 9th Cir. 1982); *cf. In re Richmond Metal Finishers, Inc.*, 756 F.2d 1043, 1047 (4th Cir.

1985) (holding that absent bad faith or abuse of discretion, deference is given to debtor's

business judgment); *Wheeling-Pittsburgh Steel Corp. v. West Penn Power Co. (In re Wheeling-

Pittsburgh Steel Corp.)*, 72 B.R. 845, 849 (Bankr. W.D. Pa. 1987); *In re G Survivor Corp.*, 171

B.R. 755, 757 (Bankr. S.D.N.Y. 1994).

16.   Courts generally will not second-guess a debtor's business judgment concerning

the assumption or rejection of an executory contract or unexpired lease.   The "business

judgment" test merely requires a showing that either assumption or rejection of the executory

contract or unexpired lease will benefit the debtor's estate. *See In re Trans World Airlines*, 261

B.R. 103, 121 (Bankr. D. Del. 2003) ("A debtor's decision to reject an executory contract must

be summarily affirmed unless it is the product of 'bad faith, or whim or caprice'") (quoting *In re

Wheeling-Pittsburgh Steel Corp.*, 72 B.R. at 849-50); *In re Trans World Airlines, Inc.*, No. 01-

0056, 2001 Bankr. LEXIS 722, at *7-8 (Bankr. D. Del. Mar. 16, 2001) (noting that the standard

under section 365 requires consideration of the benefit of the rejection to the debtor's estate).

17.   Further, as with the assumption or rejection of an executory contract or an

unexpired lease under section 365, any amendment to an executory contract or unexpired lease

that may be deemed outside the ordinary course of business is authorized under section 363 of

the Bankruptcy Code when there is a "sound business purpose" that justifies such action. *See

Committee of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1070 (2d

Cir. 1983); *see also In re Delaware and Hudson Ry. Co.*, 124 B.R. 169, 176 (Bankr. D. Del.

RLF1 10749278v.1

1991) (noting that the Third Circuit has adopted the "sound business judgment" standard for transactions under section 363 of the Bankruptcy Code).

18.     The Debtors have determined, in their sound business judgment, that the rejection, assumption, or assumption and assignment (and any amendments thereto) of Contracts and/or Leases in accordance with the Contract and Lease Procedures proposed herein is and will be in the best interest of the Debtors' estates. The Debtors submit that the information provided on the Rejection Schedules, Assumption Schedules, and Individual Rejection and Assumption Notices will provide the Court and interested parties with sufficient information to establish that the Debtors are entitled to make such a rejection, assumption, or assumption and assignment (and any amendments thereto) in their sound business judgment.

**III.     *Nunc Pro Tunc* Relief May Be Sought Where Appropriate.**

19.     The Rejection Procedures provide the Debtors the ability to set an effective Rejection Date earlier than the date the Court enters the respective Rejection Order. Section 365 of the Bankruptcy Code does not specifically address whether courts may order rejection to be effective retroactively. However, courts in this district and others have held that bankruptcy courts may exercise their equitable powers in granting such a retroactive order when doing so promotes the purposes of section 365(a). *See Thinking Machs. Corp. v. Mellon Fin. Servs. Corp. (In re Thinking Machines Corp.)*, 67 F.3d 1021, 1028-29 (1st Cir. 1995) ("rejection under section 365(a) does not take effect until judicial approval is secured, but the approving court has the equitable power, in suitable cases, to order a rejection to operate retroactively" to the motion filing date); *see also Pacific Shore Dev., LLC v. At Home Corp. (In re At Home Corp.)*, 392 F.3d 1064, 1067 (9th Cir. 2004) (same); *In re Chi-Chi's, Inc.*, 305 B.R. 396, 399 (Bankr. D. Del.

11

2004) ("[T]he court's power to grant retroactive relief is derived from the bankruptcy court's equitable powers so long as it promotes the purposes of § 365(a).").

20.     Courts may approve retroactive rejection of executory contracts and unexpired leases "after balancing the equities" and concluding that they weigh in favor of the debtor. *See In re Chi-Chi's, Inc.*, 305 B.R. at 399 (acknowledging that a bankruptcy court may approve a rejection retroactive to the date the motion is filed after balancing the equities in the particular case); *In re Fleming Cos., Inc.*, 304 B.R. 85, 96 (Bankr. D. Del. 2003) (finding that rejection has been allowed *nunc pro tunc* to the date of the motion); *see also Thinking Machs. Corp.*, 67 F.3d at 1028 ("In the section 365 context, . . . bankruptcy courts may enter retroactive orders of approval, and should do so when the balance of equities preponderates in favor of such remediation."); *In re Jamesway Corp.*, 179 B.R. 33, 36-37 (S.D.N.Y. 1995) (discussing that section 365 does not include "restrictions as to the manner in which the court can approve rejection").

21.     The Rejection Procedures will require the Debtors to provide sufficient information to establish that the balance of the equities favor any retroactive relief sought with respect to a particular Contract or Lease rejection.  Generally, the Debtors will only seek such relief in instances where they have vacated the premises and ceased receiving any benefit under the terms of the Contract or Lease prior to the earlier of the date of service of the Individual Rejection Notice or the date the Debtors gave the Rejection Counterparty notice of the Debtors' intent to terminate and/or reject the Contract or Lease.  Further, the Individual Rejection Notice will provide a Rejection Counterparty with adequate notice of any retroactive relief sought by the Debtors.

IV.     **Abandonment of Personal Property.**

22.     Bankruptcy Code section 554(a) provides that "[a]fter notice and a hearing, the trustee may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate." 11 U.S.C. § 554(a).

23.     The property to be abandoned at the premises of certain Leases would be of inconsequential value or burdensome to the Debtors' estates, and the cost of retrieving, marketing, and reselling such abandoned property would outweigh any recovery the Debtors could attain for the property. Accordingly, the abandonment of such property is in the best interests of the Debtors, their estates, and their creditors and parties in interest will have sufficient notice of such abandonment.

V.      **Assignment of Contracts and Leases Free and Clear of Interests.**

24.     Section 363(f) of the Bankruptcy Code permits a debtor to sell property free and clear of another party's interest in such property if:  (a) applicable nonbankruptcy law permits such a free and clear sale; (b) the holder of the interest consents; (c) the interest is a lien and the sale price of the property exceeds the value of all liens on the property; (d) the interest is in bona fide dispute; or (e) the holder of the interest could be compelled in a legal or equitable proceeding to accept a monetary satisfaction of its interest.  11 U.S.C. § 363(f).

25.     Executory contracts and unexpired leases are property of a debtor's estate.  To the extent the TCEH Debtors assume and assign a Contract or Lease pursuant to the Assumption Procedures, such assignment is tantamount to a sale of estate property, and may be transferred free and clear of the interests in such property held by an entity other than the estate, so long as one of the criteria under section 363(f) of the Bankruptcy Code is satisfied.  The TCEH Debtors propose that if a party in interest fails to timely object to an assumption and assignment

13

consistent with the Assumption Procedures, such party shall be deemed to "consent" to such assumption and assignment within the meaning of section 363(f)(2) of the Bankruptcy Code. As such, the requirements of section 363(f) of the Bankruptcy Code would be satisfied for any proposed "transfer" of Contracts or Leases free and clear of liens, claims, encumbrances and other interests.

26.    Courts in this district have granted similar authority in other complex multi-debtor chapter 11 cases. *In re Anchor Blue Retail Group.*, Case No. 11-11770 (Bankr. D. Del. June 30, 2009 (authorizing the assignment of contracts and leases free and clear of liens and claims); *In re Linens Holding Co.*, Case No. 08-10832 (Bankr. D. Del. July 10, 2008) (same).

**IV.    The Contract and Lease Procedures Satisfy Due Process.**

27.    As a procedural matter, "[a] proceeding to assume, reject, or assign an executory contract or unexpired lease . . . is governed by Rule 9014." Fed. R. Bankr. P. 6006(a). Bankruptcy Rule 9014 provides that: "In a contested matter . . . , not otherwise governed by these rules, relief shall be requested by motion, and reasonable notice and opportunity for hearing shall be afforded the party against whom relief is sought." Fed. R. Bankr. P. 9014(a). The notice and hearing requirements for contested matters under Bankruptcy Rule 9014 are satisfied if appropriate notice and an opportunity for hearing are given *in light of the particular circumstances*. *See* 11 U.S.C. § 102(1)(A) (defining "after notice and a hearing" or a similar phrase to mean such notice and an opportunity for hearing "as [are] appropriate in the particular circumstances").

28.    Under Bankruptcy Rule 6006(e), a debtor may join requests for authority to assume or reject multiple executory contracts or unexpired leases in one motion, subject to Bankruptcy Rule 6006(f). *See* Fed. R. Bankr. P. 6006(e). Bankruptcy Rule 6006(f) sets forth six

14

requirements that motions to assume or reject multiple executory contracts or unexpired leases must satisfy.  These requirements are procedural in nature.  A motion to assume or reject multiple executory contracts or unexpired leases that are not between the same parties shall:

    a.    state in a conspicuous place that parties receiving the omnibus motion should locate their names and their contracts or leases listed in the motion;

    b.    list parties alphabetically and identify the corresponding contract or lease;

    c.    specify the terms, including the curing of defaults, for each requested assumption or assignment;

    d.    specify the terms, including the identity of each assignee and the adequate assurance of future performance by each assignee, for each requested assignment;

    e.    be numbered consecutively with other omnibus motions to assume, assign, or reject executory contracts or unexpired leases; and

    f.    be limited to no more than 100 executory contracts or unexpired leases.

Fed. R. Bankr. P. 6006(f).

29.    The clear purpose of Bankruptcy Rule 6006(f), as amended, is to protect the due process rights of counterparties to the Contracts and Leases.  Counterparties must be able to locate their Contracts and or Leases and readily determine whether their Contracts and/or Leases are being assumed or rejected.

30.    The Contract and Lease Procedures satisfy Bankruptcy Rule 6006(f), including the 100-contract/lease limit set forth in subsection (6).  Although the Assumption and Rejection Schedules allow for the listing of Contracts and/or Leases in excess of the 100-contract/lease limit, each Contract and/or Lease counterparty will receive an Individual Rejection or Assumption Notice limited to those Contracts and/or Leases to which such counterparty is a party, preserving the counterparty's due process rights. Further, given the substantial number of Contracts and Leases the Debtors will be seeking to assume or reject, obtaining Court approval

of each assumption or rejection would impose unnecessary administrative burdens on the Debtors and the Court and result in costs to the Debtors' estates that may decrease the economic benefits of rejection or assumption.[7]

31.    In accordance with Bankruptcy Rule 6007(a), the Debtors will provide the United States Trustee and other parties in interest with the requisite notice and an opportunity to object to any proposed abandonment of property.

32.    As a result, the Contract and Lease Procedures afford Contract and Lease counterparties and all other parties in interest their due process rights by providing notice and the opportunity to be heard.  Moreover, court oversight is maintained in the event of an objection. For the foregoing reasons, the Contract and Lease Procedures should be approved, and the Debtors should be authorized to reject, assume, and assume and assign the Contracts and/or Leases consistent with terms of such procedures.

### Waiver of Bankruptcy Rule 6004(a), 6004(h), and 6006(d)

33.    To implement the foregoing successfully, the Debtors seek a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the 14-day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h).  The Debtors also seek to waive the 14-day stay required of any assignment of any Contract or Lease under Bankruptcy Rule 6006(d).

### Reservation of Rights

34.    Nothing contained in this Motion or any actions taken by the Debtors pursuant to relief granted in the Order is intended or should be construed as:  (a) an admission as to the validity or amount of any particular claim against a Debtor entity; (b) a waiver of the Debtors'

---

[7]    As explained above, there are approximately 6,000 leases subject to the 365(d)(4) deadline, most of which the Debtors anticipate assuming.

RLF1 10749278v.1

rights to dispute any particular claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Motion; (e) an admission by the Debtors that a Contract or Lease is executory or unexpired, as applicable; or (f) a waiver or limitation of the Debtors' rights under the Bankruptcy Code or any other applicable law.  If the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity or amount of any claim or a waiver of the Debtors' rights to subsequently dispute such claim.

**Notice**

35.    The Debtors shall provide notice of this Motion on the date hereof via first class mail to:  (a) the U.S. Trustee; (b) (i) the entities listed on the Consolidated List of Creditors Holding the 50 Largest Unsecured Claims filed pursuant to Bankruptcy Rule 1007(d); and (ii) proposed counsel to the Creditors' Committee; (c) Wilmington Trust, N.A., in its capacity as administrative agent under the TCEH first lien credit agreement and collateral agent under the TCEH intercreditor agreements and counsel thereto; (d) Bank of New York Mellon Trust Company, N.A., in its capacity as indenture trustee under:  (i) the TCEH unsecured pollution control revenue bonds; and (ii) the EFCH 2037 Notes due 2037, and counsel thereto; (e) American Stock Transfer & Trust Company, LLC, in its capacity as indenture trustee under: (i) the 9.75% EFH senior unsecured notes due 2019; (ii) the 10.0% EFH senior unsecured notes due 2020; (iii) the 10.875% EFH LBO senior unsecured notes due 2017; (iv) the 11.25%/12.0% EFH LBO toggle notes due 2017; (v) the 5.55% EFH legacy notes (series P) due 2014; (vi) the 6.50% EFH legacy notes (series Q) due 2024; and (vii) the 6.55% EFH legacy notes (series R) due 2034, and counsel thereto; (f) Computershare Trust Company, N.A. and Computershare

Trust Company of Canada, in their capacities as indenture trustee under: (i) the 11.0% EFIH senior secured second lien notes due 2021; and (ii) the 11.75% EFIH senior secured second lien notes due 2022, and counsel thereto; (g) UMB Bank, N.A. in its capacity as indenture trustee under: (i) the 9.75% EFIH senior unsecured notes due 2019; and (ii) the 11.25%/12.25% EFIH senior toggle notes due 2018, and counsel thereto; (h) CSC Trust Company of Delaware in its capacity as indenture trustee under: (i) the 6.875% EFIH senior secured notes due 2017; (ii) the 10.0% EFIH senior secured notes due 2020; and (iii), the 11.50% TCEH senior secured notes due 2020, and counsel thereto; (i) Law Debenture Trust Company of New York in its capacity as indenture trustee under: (i) the 10.25% TCEH senior unsecured notes due 2015; and (ii) the 10.50%/11.25% TCEH senior toggle notes due 2016, and counsel thereto; (j) Wilmington Savings Fund Society, FSB in its capacity as indenture trustee under the 15.0% TCEH senior secured second lien notes due 2021, and counsel thereto; (k) counsel to certain holders of claims against the Debtors regarding each of the foregoing described in clauses (c) through (j); (l) the agent for the TCEH debtor-in-possession financing facility and counsel thereto; (m) the agent for the EFIH debtor-in-possession financing facility and counsel thereto; (n) counsel to certain holders of equity in Texas Energy Future Holdings Limited Partnership; (o) counsel to the Ad Hoc Committee of TCEH Unsecured Noteholders; (p) counsel to the Ad Hoc Committee of TCEH Second Lien Noteholders; (q) Oncor Electric Delivery Holdings Company LLC and counsel thereto; (r) Oncor Electric Delivery Company LLC and counsel thereto; (s) the Securities and Exchange Commission; (t) the Internal Revenue Service; (u) the Office of the United States Attorney for the District of Delaware; (v) the Office of the Texas Attorney General on behalf of the Public Utility Commission of Texas; (w) counsel to the Electric Reliability Council of Texas; and (x) those parties that have requested notice pursuant to Bankruptcy Rule

18

RLF1 10749278v.1

2002.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

<u>**No Prior Request**</u>

36.      No prior request for the relief sought in this Motion has been made to this or any other court.

*[Remainder of Page Intentionally Left Blank]*

19

WHEREFORE, the Debtors respectfully request that the Court enter the Order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested in this Motion and granting such other and further relief as is appropriate under the circumstances.

Dated:   August 26, 2014
         Wilmington, Delaware

**RICHARDS, LAYTON & FINGER, P.A.**
Mark D. Collins (No. 2981)
Daniel J. DeFranceschi (No. 2732)
Jason M. Madron (No. 4431)
920 North King Street
Wilmington, Delaware 19801
Telephone:     (302) 651-7700
Facsimile:     (302) 651-7701
Email:         collins@rlf.com
               defranceschi@rlf.com
               madron@rlf.com

-and-

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Richard M. Cieri (admitted *pro hac vice*)
Edward O. Sassower, P.C. (admitted *pro hac vice*)
Stephen E. Hessler (admitted *pro hac vice*)
Brian E. Schartz (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022-4611
Telephone:     (212) 446-4800
Facsimile:     (212) 446-4900
Email:         richard.cieri@kirkland.com
               edward.sassower@kirkland.com
               stephen.hessler@kirkland.com
               brian.schartz@kirkland.com

-and-

James H.M. Sprayregen, P.C. (admitted *pro hac vice*)
Chad J. Husnick (admitted *pro hac vice*)
Steven N. Serajeddini (admitted *pro hac vice*)
300 North LaSalle
Chicago, Illinois 60654
Telephone:     (312) 862-2000
Facsimile:     (312) 862-2200
Email:         james.sprayregen@kirkland.com
               chad.husnick@kirkland.com
               steven.serajeddini@kirkland.com

Proposed Co-Counsel to the Debtors and Debtors in Possession