## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) | Case No. 14-10979 (CSS) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

### SUPPLEMENT TO THE APPLICATION OF ENERGY FUTURE HOLDINGS CORP., *ET AL.*, FOR ENTRY OF AN ORDER AUTHORIZING THE DEBTORS TO RETAIN AND EMPLOY KPMG LLP AS BANKRUPTCY ACCOUNTING AND TAX ADVISORS EFFECTIVE *NUNC PRO TUNC* TO THE PETITION DATE

The above-captioned debtors and debtors in possession (collectively, the "Debtors") hereby file this supplement (this "Supplement") to the *Application of Energy Future Holdings Corp.* et al.*, for Entry of an Order Authorizing the Debtors to Retain and Employ KPMG LLP as Bankruptcy Accounting and Tax Advisors Effective* Nunc Pro Tunc *to the Petition Date* [D.I. 652] (the "Original Application"). In support of this Supplement, the Debtors submit the *Supplemental Declaration of Thomas D. Bibby in Support of the Application of Energy Future Holdings Corp.,* et al.*, for Entry of an Order Authorizing the Debtors To Retain and Employ KPMG LLP as Bankruptcy Accounting and Tax Advisors Effective* Nunc Pro Tunc *to the Petition Date* (the "Supplemental Declaration"), filed contemporaneously herewith. In further support of this Supplement, the Debtors respectfully state as follows:

---

[1] The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, for which joint administration has been granted, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

## Background

1.      On May 29, 2014, the Debtors filed the Application requesting that the Court authorize the retention of KPMG LLP ("KPMG") as bankruptcy accounting and tax advisors effective *nunc pro tunc* to the Petition Date.

2.      On June 11, 2014, the Debtors filed the *Settlement Notice of Debtors' Entry into Additional Statement of Work with KPMG LLP* [D.I. 910] (the "Supplemental Application" and, together with the Original Application, the "Application")[2] to supplement the Application with respect to an additional statement of work entered into between the Debtors and KPMG on June 3, 2014.

## Scope of Services

3.      As set forth in detail in the Engagement Letter and the MSA, KPMG will perform certain services as set forth in specific statements of work executed pursuant to the MSA.

4.      Since the Application was filed, the Debtors and KPMG have entered into certain additional statements of work regarding services for the Debtors, as follows:

  a.      that certain statement of work, by and between KPMG and EFH Corporate Services Company, dated June 17, 2014 (the "Tax Loan Services SOW") attached hereto as **Exhibit E**;

  b.      that certain statement of work, by and between KPMG and EFH Corporate Services Company, dated July 2, 2014 (the "EFH Services SOW") attached hereto as **Exhibit F**;

  c.      that certain statement of work, by and between KPMG and EFH Corporate Services Company, dated July 15, 2014 (the "Oncor Services SOW" and, together with the EFH Services SOW, the "EFH and Oncor Services SOWs"), attached hereto as **Exhibit G**;

---

[2]    Capitalized terms used but not otherwise defined herein are used as defined in the Application.

d.      that certain statement of work, by and between KPMG and EFH Corporate Services Company, dated June 17, 2014 (the "SOX Compliance SOW") attached hereto as **Exhibit H**;

e.      that certain statement of work, by and between KPMG and EFH Corporate Services Company, dated August 11, 2014 (the "Service Costing SOW") attached hereto as **Exhibit I**; and

f.      that certain statement of work, by and between KPMG and EFH Corporate Services Company, dated August 15, 2014 (the "Technology Business Management SOW" and, collectively with the Tax Loan Services SOW, the EFH and Oncor Services SOW, the Service Costing SOW, and the Technology Business Management SOW, the "Additional SOWs") attached hereto as **Exhibit J**.

5.      As set forth in further detail in the Engagement Letter, the MSA, and the Additional SOWs, KPMG has agreed to provide certain additional services in connection with these chapter 11 cases, subject to approval by the Court of the Application, the Supplement, and the terms and conditions of the MSA, the Engagement Letter, and the Additional SOWs.[3] Subject to the detailed description in the Engagement Letter, the MSA, and the Additional SOWs, a summary description of these additional services is set forth below.

**The Tax Loan Services SOW**

6.      As set forth in detail in the Tax Loan Services SOW, KPMG has agreed to assist the Debtors with respect to their property tax accounts in the state of Texas (the "Tax Loan Services").  Specifically, KPMG has agreed to:

a.      review property tax notices and bills sent from local jurisdictions;

b.      assist Debtors' personnel with mechanical assistance in the processing of property tax forms and payments;

c.      populate spreadsheets and/or forms; and

---

[3]    To the extent that this Supplement conflicts with the terms of the Engagement Letter, the MSA, or the Additional SOWs, the terms of the Engagement Letter, the MSA, or the Additional SOWs, as applicable, shall control.

        d.        compare to client provided data to determine accuracy.

7.      Pursuant to the Tax Loan Services SOW, KPMG will bill the Debtors at an Associate rate of $175 per hour.

**<u>The EFH and Oncor Services SOWs</u>**

8.      As set forth in detail in the EFH and Oncor Services SOWs, KPMG has agreed to perform limited review procedures (respectively, the "<u>EFH Services</u>" and the "<u>Oncor Services</u>") with respect to federal income tax returns prepared by the Debtors (Form 1120 and Form 1065) for the Debtors and for Oncor Electric Delivery Company LLC ("<u>Oncor</u>") for the taxable year ended December 31, 2013.  Specifically, KPMG has agreed to:

        a.        perform a high-level review of transactional data contained in the Debtors' and Oncor's consolidated 2013 Form 10-Ks and compare with draft tax elections, statements, and disclosures prepared by the Debtors and included in the 2013 tax return;

        b.        consult with subject matter professionals regarding new tax developments relevant within the Debtors' and Oncor's industry that may affect the 2013 consolidated federal income tax return;

        c.        present to the Debtors for consideration new tax developments identified by KPMG;

        d.        review a comparison of the Debtors' and Oncor's 2012 tax returns with draft current year return including elections, statements, and disclosures prepared by the Debtors.

        e.        identify any inconsistencies in the elections, statements, and disclosures and gain an understanding of the reasons for these inconsistencies;

        f.        pursuant to the Oncor Services SOW only, perform a high-level review of Oncor's Internal Revenue Code Section 704(c) partnership allocation calculation prepared by the Debtors; and

        g.        review for reasonableness an AICPA Fonn 1065 checklist, completed by the Debtors for KPMG's review; and

        h.        provide consulting services for which the Debtors may seek KPMG's advice, both written and oral.

9.      The fees charged pursuant to the Oncor Services SOW are based on the actual time incurred to complete the work, not to exceed $40,000.  The hourly rates for the Oncor Services rendered by KPMG are as follows:

| Oncor Services | Hourly Rate |
|---|---|
| Partners & Principals | $545 |
| Tax Managing Directors | $490 |
| Senior Managers | $450 |
| Managers | $370 |
| Senior Associates | $260 |
| Associates | $210 |

10.     The fees charged pursuant to the EFH Services SOW are based on the actual time incurred to complete the work, not to exceed $55,000.  The hourly rates for the EFH Services rendered by KPMG are as follows:

| EFH Services | Hourly Rate |
|---|---|
| Partners & Principals | $575 |
| Tax Managing Directors | $515 |
| Senior Managers | $465 |
| Managers | $385 |
| Senior Associates | $275 |
| Associates | $210 |

**The SOX Compliance SOW**

11.     As set forth in detail in the SOX Compliance SOW, KPMG will assist in the next phase of the Debtors' Sarbanes-Oxley compliance efforts (the "SOX Services").  This next phase will consist of KPMG assisting the Debtors with respect to the TXU Energy ("TXUE"), Luminant, and EFH Corporate Services control environments, including to:

    a.      assist in the implementation of revised SOX primary IT General Controls ("ITGC") by performing the following key activities:

(1)    assess and evaluate existing control framework and improvement recommendations for new proposed SOX ITGC controls framework, including recommendations for disposition of controls that will no longer be part of the new proposed SOX ITGC framework;

(2)    work with control owners to establish control activities and requirements for minimum standards of evidence;

(3)    build and deliver control owner training sessions to establish responsibility, capability, and expectations related to ongoing performance of controls and controls certifications;

(4)    update/build process and policy documentation as necessary to reflect revised controls;

(5)    support control performance by control owners through real time coaching and review;

(6)    collaboratively define criteria to demonstrate IT SOX transition progress to EFH management;

(7)    assess available supporting documentation evidence to confirm conformity with newly established control requirements; and

(8)    update SOX Primary ITGC controls matrix template in format necessary to upload new revised SOX Primary ITGCs into the CMT tool (template to be provided by EFH);

b.    assist in the risk management efforts associated with key SOX-relevant system implementation efforts by performing the following key activities:

(1)    review project implementation plans, timelines, and communications scheduled for go-live in 2014;

(2)    participate in the evaluation and determination of potential impact to SOX compliance efforts; and

(3)    establish plan for real time involvement in critical implementation efforts to monitor and support program development control objectives;

c.    assist in the definition and planning for management's desired overall IT Compliance function by performing the following activities:

   (1) meet with IT management to share our understanding of leading practices for compliance management and the compliance function's performance of monitoring and testing activities;

   (2) understand IT management objectives for compliance management; and

   (3) establish implementation plans related to people, process, and technology components of compliance function;

 d. assist with significant people change management impacts by performing the following activities:

   (1) participate in the vision setting effort for the transformation effort, contributing to the establishment of the desired outcome;

   (2) understand cultural attributes and define the actionable behaviors that will support the effective transformation process;

   (3) identify key communication elements regarding strategy, management objectives, and control performance that are intended to improve adoption and understanding by control owners;

   (4) identify and propose opportunities to align and drive toward the new culture and behaviors;

   (5) identify stakeholders impacted by the defined changes and analyze current level of awareness, buy-in, and commitment;

   (6) engage stakeholders throughout the transformation effort to facilitate their ownership;

   (7) periodically monitor stakeholder expectations and involvement; and

   (8) develop training materials to support training sessions noted previously which incorporate these key messaging elements and techniques;

 e. incorporate various project management activities, such as:

   (1) develop meeting and status communication materials for the project team, management and executives, as requested;

7

(2)  support IT Compliance in meetings with external and internal audit teams as requested to discuss control concepts, plans, and progress; and

(3)  assist in the preparation of relevant data points for July Audit Committee meeting, as requested.

12.  KPMG's project deliverables under the SOX Compliance SOW include:

a.  observations related to identified Internal control improvement recommendations;

b.  defined activity plans to support the implementation of control remediation;

c.  an updated SOX Primary ITGC controls matrix template in format necessary to upload new revised SOX Primary ITGCs into the CMT tool;

d.  training materials and supporting reference materials intended for control owners;

e.  a summary log of personnel trained through various training sessions;

f.  recommendations related to change communication strategies;

g.  process and policy documentation updates;

h.  a plan for integrated control performance assistance in critical system implementation efforts;

i.  recommendations related to improved sustainability capabilities for ongoing IT compliance efforts; and

j.  status reports and communication materials.

13.  The fees charged pursuant to the SOX Compliance SOW are based on the actual time incurred to complete the work, not to exceed $400,000.  The hourly rates for the SOX Services rendered by KPMG are as follows:

| EFH Services | Hourly Rate |
|---|---|
| Partners & Managing Directors | $325 |
| Directors & Senior Managers | $290 |
| Managers | $250 |
| Senior Associates | $190 |

Associates                          $125

**The Service Costing SOW**

14.     As set forth in detail in the Service Costing SOW, KPMG will assist and work closely with the Debtors to assess the current service costing processes, governance, data, and systems (the "Service Costing Services").  Pursuant to the Service Costing SOW, KPMG will review the Apptio model designs, allocation strategies and evaluate the process to (a) load and reconcile data; (b) allocate costs, and (c) reconcile the existing Excel spreadsheet mode to the Apptio model(s).  KPMG will also review the custom report structures and validate the design against the enhancements identified during the Debtors' Apptio training earlier in the spring of 2014.  Specifically, the scope of work includes the following activities:

    a.    Service Costing Assessment

        (1)    conduct interviews with key stakeholders on the  current processes, governance, data and reporting;

        (2)    validate monthly data load and reconciliation process;

        (3)    benchmark allocation strategies, key performance indicators ("KPIs") and definitions against leading and industry standards as well as Apptio Architecture;

        (4)    present service costing leading practices as part of the review of the Debtors' allocation strategies

        (5)    evaluate Apptio models designs and validate them against the Apptio standard architecture and leading practices;

        (6)    review current documentation;

    b.    Model Reconciliation Process:

        (1)    participate in a review for the current service costing model with key stakeholders including data sources, assumptions, calculations, etc.;

        (2)    review the Apptio models to understand how the costs are loaded, transformed and allocated within the model;

(3)     walk-thru the Debtors' model reconciliation process with key stakeholders to reconcile the Apptio model(s) to the existing Excel spreadsheet service costing model using the month of July 2014;

(4)     identify the GAPs and issues contributing to the reconciliation delta problem;

(5)     design a new model reconciliation process for the Debtors to complete the model reconciliations going forward;

c.     Report Fixes and Enhancements:

(1)     review the custom report structures and validate the design against the Apptio Architecture (Unified Model);

(2)     identify GAPs that will prevent the Debtor to leverage OOB features and functions;

(3)     validate the report development complexity table attached as **Exhibit B** to the Service Costing SOW based on the Debtors' current model(s);

(4)     evaluate the list of fixes and enhancements set forth in the Service Costing SOW and determine the level of effort required compared to the allocation of 80 hours included in the Service Costing SOW; and

(5)     provide deliverables around report fixes and enhancements that can be delivered within the 80 hour budget.

15.     The fees charged pursuant to the Service Costing SOW are based on the actual time incurred to complete the work, not to exceed $136,160.  The hourly rates for the Service Costing Services rendered by KPMG are as follows:

| Service Costing Services | Hourly Rate |
| --- | --- |
| Principals | $350 |
| Directors | $340 |
| Apptio SME | $185 |
| Data SME | $155 |

## The Technology Business Management SOW

16.      As set forth in detail in the Technology Business Management SOW, KPMG will assist the Debtors' personnel in further building out the Debtors' technology business management ("TBM") capabilities, including information technology asset management ("ITAM") and software asset management ("SAM"), specifically assisting in the analysis of ITAM and data consumer requirements, review of various foundational technologies, and key integration sources including asset request and procurement tools, inventory and discovery tools, human resources ("HR") and identity access management ("IAM") systems, financial systems, as well as other underlying functions in order to propose a data architecture that supports ongoing data capture and ITAM reporting needs (collectively, the "TBM Services").  Pursuant to the Service Costing SOW, KPMG has agreed to:

    a.      determine existing and potential integration points/attributes and analyze data from various sources including Procurement, HR, Finance, Inventory, Discovery and other sources;

    b.      identify the authoritative data sources, unique identifiers, and data collection mechanism for the systems publishing data to ITAM repository in order to maintain a data consistency;

    c.      analyze existing manual imports and identify whether tool capability/functionality can reduce manual efforts through workflow, alerts, notifications, etc.;

    d.      determine gaps, roadblocks, dependencies across integration points;

    e.      develop KPI /CSI's and determine feasibility of implementing a reporting capability to automate collection;

    f.      document end-state solution architecture based on above assessment activities and subsequent decisions by the Debtors;

    g.      document a comprehensive roadmap that accounts for all in-scope systems as well as the determined integration points that will cover multiple applications; and

h.      provide deliverables around proposed ITAM architecture, ITAM target state roadmap, and ITAM executive summary.

17.      The fees charged pursuant to the Technology Business Management SOW are based on the actual time incurred to complete the work, not to exceed $125,000.00.  The hourly rates for the TBM Services rendered by KPMG are as follows:

| TBM Services | Hourly Rate |
|---|---|
| Partner/Managing Directors | $325 |
| Directors | $295 |
| Senior Associates | $190 |

18.      KPMG also will seek reimbursement for reasonable, documented, and necessary expenses incurred, including, but not limited to meals, lodging, travel, photocopying, delivery service, postage, vendor charges, and other out-of-pocket expenses incurred in providing professional services.

### Disclosure of Connections

19.      To the best of the Debtors' knowledge and except to the extent set forth in the Bibby Declaration, KPMG does not hold nor represent any interest materially adverse to the Debtors in the matters for which KPMG is proposed to be retained.  The proposed employment of KPMG is not prohibited by or improper under Bankruptcy Rule 5002.  Accordingly, the Debtors believe that KPMG is eligible for retention by the Debtors under the Bankruptcy Code.

20.      At the Debtors' request, following the Petition Date and prior to Court approval of KPMG's engagement in these cases, KPMG has provided, and may continue to provide in its sole discretion, certain of the services described in the Engagement Letter, the MSA, and/or the Additional SOWs.  Thus, KPMG requests that this retention be authorized *nunc pro tunc* to the Petition Date, the date on which KPMG began providing postpetition services to the Debtors.

21.     KPMG intends to apply to the Court for payment of compensation and reimbursement of expenses in accordance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Engagement Letter, the MSA, the Additional SOWs, and pursuant to any additional orders or procedures that may be established by the Court in these chapter 11 cases.

**Notice**

22.     The Debtors shall provide notice of this Supplement on the date hereof via U.S. first class mail to:  (a) the U.S. Trustee; (b) (i) the entities listed on the Consolidated List of Creditors Holding the 50 Largest Unsecured Claims filed pursuant to Bankruptcy Rule 1007(d); and (ii) proposed counsel to the Creditors' Committee; (c) Wilmington Trust, N.A., in its capacity as administrative agent under the TCEH first lien credit agreement and collateral agent under the TCEH intercreditor agreements and counsel thereto; (d) Bank of New York Mellon Trust Company, N.A., in its capacity as indenture trustee under:  (i) the TCEH unsecured pollution control revenue bonds; and (ii) the EFCH 2037 Notes due 2037, and counsel thereto; (e) American Stock Transfer & Trust Company, LLC, in its capacity as indenture trustee under: (i) the 9.75% EFH senior unsecured notes due 2019; (ii) the 10.0% EFH senior unsecured notes due 2020; (iii) the 10.875% EFH LBO senior unsecured notes due 2017; (iv) the 11.25%/12.0% EFH LBO toggle notes due 2017; (v) the 5.55% EFH legacy notes (series P) due 2014; (vi) the 6.50% EFH legacy notes (series Q) due 2024; and (vii) the 6.55% EFH legacy notes (series R) due 2034, and counsel thereto; (f) Computershare Trust Company, N.A. and Computershare Trust Company of Canada, in their capacities as indenture trustee under:  (i) the 11.0% EFIH senior secured second lien notes due 2021; and (ii) the 11.75% EFIH senior secured second lien notes due 2022, and counsel thereto; (g) UMB Bank, N.A. in its capacity as indenture trustee

under:  (i) the 9.75% EFIH senior unsecured notes due 2019; and (ii) the 11.25%/12.25% EFIH senior toggle notes due 2018, and counsel thereto; (h) CSC Trust Company of Delaware, in its capacity as indenture trustee under 11.50% TCEH senior secured notes due 2020, and counsel thereto; (i) CSC Trust Company of Delaware in its capacity as indenture trustee under:  (i) the 6.875% EFIH senior secured notes due 2017; and (ii) the 10.0% EFIH senior secured notes due 2020, and counsel thereto; (j) Law Debenture Trust Company of New York in its capacity as indenture trustee under:  (i) the 10.25% TCEH senior unsecured notes due 2015; and (ii) the 10.50%/11.25% TCEH senior toggle notes due 2016, and counsel thereto; (k) Wilmington Savings Fund Society, FSB in its capacity as indenture trustee under the 15.0% TCEH senior secured second lien notes due 2021, and counsel thereto; (l) counsel to certain holders of claims against the Debtors regarding each of the foregoing described in clauses (c) through (k); (m) the agent for the TCEH debtor-in-possession financing facility and counsel thereto; (n) the agent for the EFIH debtor-in-possession financing facility and counsel thereto; (o) counsel to certain holders of equity in Texas Energy Future Holdings Limited Partnership; (p) counsel to the Ad Hoc Committee of TCEH Unsecured Noteholders; (q) counsel to the Ad Hoc Committee of TCEH Second Lien Noteholders; (r) Oncor Electric Delivery Holdings Company LLC and counsel thereto; (s) Oncor Electric Delivery Company LLC and counsel thereto; (t) the Securities and Exchange Commission; (u) the Internal Revenue Service; (v) the Office of the United States Attorney for the District of Delaware; (w) the Office of the Texas Attorney General on behalf of the Public Utility Commission of Texas; (x) counsel to the Electric Reliability Council of Texas; (y) those parties who have requested notice pursuant to Bankruptcy Rule 2002; and (z) all parties the Debtors reasonably believe constitute Lease Counterparties.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

WHEREFORE, the Debtors respectfully request that the Application be amended to include the Additional SOWs as **<u>Exhibits E - J</u>** thereto.

Wilmington, Delaware
Dated:  September 5, 2014

/s/ *Paul M. Keglevic*
_____
Paul M. Keglevic
Executive Vice President, Chief Financial Officer, and Co-Chief
Restructuring Office of EFH Corp., EFIH, and TCEH LLC

15

## Exhibit E

**Tax Loan Services SOW**



KPMG LLP
811 Main Street, Suite 4400
Houston, Texas 77002

Telephone    +1 713 319 2000
Fax          +1 713 319 2041
Internet     www.us.kpmg.com

June 17, 2014

## SCHEDULE A

Following the Parties' execution of this Schedule A, CONTRACTOR is authorized to perform the Work as identified below on behalf of COMPANY pursuant to the terms and conditions in the Master Services Agreement C063l124C ("the Agreement") dated November 1, 2009, as amended on December 16, 2013.

## SCOPE OF WORK AND DELIVERABLES

The Work will be performed in accordance with the specifications and instructions, if any, attached hereto and identified in the List of Attachments. The Work will be scheduled at the direction of COMPANY'S Contract Coordinator as identified herein.

## SCOPE OF WORK:

We will provide tax loan staff services with respect to COMPANY's property tax process. KPMG personnel will assist the COMPANY's personnel with mechanical assistance in the processing of property tax forms and payments by reviewing property tax notices and bills sent from local jurisdictions and populating spreadsheets and/or forms and comparing to client provided data to determine accuracy. All items noted will be brought to the attention of the COMPANY to provide guidance in resolving errors and processing for forms, notices, and payment. Our staff assistance will be rendered entirely under the direction and supervision of Molly Oltmanns, tax manager, who will be responsible for communicating the tasks and requirements of the project to personnel we supply, for reviewing their work, and for the technical and mathematical accuracy of the final work product. This staff assistance does not include providing substantive tax advice or the exercise of discretion on the underlying tax positions.

KPMG personnel will assist the Company with respect to its property tax accounts in the state of Texas.

KPMG is not assuming responsibility for management analysis or decision-making with respect to the property tax process. In addition, in connection with this engagement, KPMG will not:

- Provide any management oversight of our personnel in connection with the project;

- Participate in the determination of the scope and objectives of the project;

- Assist in the development of the project plan/work programs; or

- Provide any manager or partner review of the deliverable(s).

KPMG staff personnel:

- Will not issue reports or letters in KPMG's name or on KPMG letterhead;

- Will not sign returns on behalf of COMPANY

KPMG LLP is a Delaware limited liability partnership, the U. S. Member firm of KPMG International Cooperative ("KPMG International), a Swiss Entity



- Will not commit COMPANY to expenditures, hire or dismiss personnel or make other decisions that would normally be made by COMPANY management;

- Will not function in a management or employee role or make decisions that could have an effect on COMPANY's business; or

- Cannot be referred to or listed as an employee or as management (including in an acting capacity) in any client communications or directories, etc.

The work performed will be based on the information you submit. We will not audit or independently verify the data you provide. However, our personnel may ask for clarification of some of the information. Our engagement cannot be relied on to uncover errors in the underlying information or omissions, or irregularities, should any exist. However, we will inform you of any such matters that come to our attention.

It is anticipated that KPMG personnel will not perform sufficient tax services to be considered tax return preparers under the applicable income tax regulations. EFH has the ultimate responsibility for the return(s) or claim(s).

In the event the services provided by KPMG personnel rise to a level requiring us to sign the tax return(s) or claim(s) as preparer, or EFH requests that KPMG personnel sign the return(s) or claim(s), a separate engagement letter will be issued. That letter will provide for an increase in scope of the engagement and related fees to correlate with the additional preparation and review procedures to be performed in order for KPMG personnel to sign as tax return preparer.

KPMG will not maintain a copy of the tax work papers prepared as a result of this tax loaned staff engagement. Upon request the COMPANY will permit KPMG access to the applicable tax work papers to the extent it is required pursuant to a statutory or regulatory provision or court order, or in order to fulfill professional obligations and internal firm quality review purposes.

Please note that if EFH had a taxable presence in a state (e.g., an employee within the state or any tangible property owned or rented within the state) not listed above, EFH may be subject to property tax in that state, depending upon the particular facts. It is EFH's obligation to notify KPMG if assistance is needed to determine whether EFH is liable for property tax tax or has a filing requirement in states not listed above.]

All returns are subject to examination by the taxing authorities. In the event of an examination, EFH may be requested to produce documents, records, or other evidence to substantiate the items shown on the tax return(s). We rely on your representations that you understand and have complied with applicable documentation requirements for EFH. If an examination occurs, and if you and we agree to have KPMG assist or represent EFH in the examination, any such additional services and the fee therefore would be set forth in a separate engagement letter

If matters exceed the scope of this Schedule A, we will issue a separate Schedule A or clarifying addendum to confirm the revised scope and related terms. Furthermore, a separate Schedule A will be issued for each discrete tax consulting project not specified in this Schedule A (e.g., transfer pricing study, corporate acquisition or disposition, etc.) and for tax controversy representation.



*EFH Corporate Services Company*
*June 17, 2014*
*Page 3 of 6*

To be of greatest assistance to COMPANY, we should be advised **in advance** of proposed transactions.

During the term of this Schedule A and for a period of one year following any expiration or termination of this Schedule A, the COMPANY agrees not to hire or solicit for employment any personnel of KPMG who are assigned to work under this Schedule A.

**Tax Standards**

If KPMG is considered to be a tax return preparer under Treasury Regulation §301.7701-15, we will apply elevated standards in providing tax advice. These standards are dependent on certain characteristics of the entity to which our services will be directed as follows:

1. For U.S. public companies or "large private entities" (i.e., private entities with prior year gross revenues of $300 million or more reflected in audited financial statements prepared in accordance with U.S. generally accepted accounting principles): We must be able to determine that (1) there is "substantial authority" for an undisclosed return position (i.e., the weight of authorities in support of a position is substantial in relation to the weight of authorities in opposition to the position) and (2) a disclosed return position has at least a "realistic possibility" of being sustained on its merits (i.e., approximately a one-in-three or greater likelihood of success if challenged by a tax authority). The laws of some states (e.g., New York) also may impose more stringent return preparation standards for state tax returns. For advice pertaining to a "Tax Shelter" (as defined in IRC §6662(d)(2)(C)(ii)) or a "reportable transaction" with a significant purpose of tax avoidance, tax practitioners must generally conclude their advice satisfies the "more likely than not" standard; if the taxpayer is advised regarding potential taxpayer penalties, tax practitioners may conclude at a "substantial authority" level.

2. For "other private entities" (i.e., entities that do not fall within the definitions above as a U.S. public company or large private entity): We must be able to determine that a return position is at least "more likely than not" to be upheld (i.e., has a greater than 50 percent likelihood of success if challenged by the taxing authorities).

3. If a return position relates to a transaction that is a "principal purpose transaction," we must arrive at a "should" confidence level (i.e., approximately a 70% or greater likelihood of success if challenged by the taxing authorities) with respect to the position.

4. We will not render any advice with respect to a federal or state "listed transaction" or any transaction that is substantially similar to a federal or state "listed transaction."

In determining whether a return position meets the appropriate standard, we will not take into account the possibility that a tax return will not be audited, that an issue will not be raised on audit, or that an issue will be settled. We will inform you as soon as possible if, during our analysis, we determine circumstances exist that prevent us from advising you under these standards.



## TIMING

The engagement will commence on June 09, 2014 and conclude by December 31, 2014.

Contract Coordinator:  Meagan Horn                    Phone Number: (214) 812-7821

## WORK SITE

The Work Site will be the following location(s): CONTRACTOR &/or COMPANY offices located in Dallas, TX.

### *COMPENSATION, INVOICES AND PAYMENT*

As full compensation for the satisfactory performance by CONTRACTOR of the Work authorized pursuant to this Schedule A, COMPANY will compensate CONTRACTOR as follows.

Our fee for this engagement will be based on the actual time incurred to complete the work at the hourly rates for the individuals involved in providing the services summarized in the table below.

**Professional and Support Staff Fees Schedule**

| Associate | | $175/hr |
|---|---|---|

The rates specified in the Schedule A will remain in effect, with respect to and until completion of the Work authorized pursuant to this Schedule A.

In addition, we will bill you for our out-of-pocket expenses (e.g., travel, lodging, meals, etc.).

We will endeavor to notify you if we encounter any circumstances that warrant additional time or expense. If such matters exceed the scope of this Schedule A, we will issue an amendment or supplement to this Schedule A to confirm the scope and related terms of any additional engagements.

We will render progress billing as work is performed.

All invoices shall be sent to:

Ms. Meagan Horn
Tax Counsel
Energy Future Holdings Corp.
1601 Bryan St, 3rd floor
Dallas, TX  75201



## KEY PERSONNEL

CONTRACTOR agrees that the individuals listed below will be assigned to perform the Work authorized by this Schedule A. CONTRACTOR will employ all reasonable efforts to ensure that such individuals remain so assigned until such Work is accepted by COMPANY; provided, however, that in the event that any such individuals are reassigned by CONTRACTOR or otherwise become unavailable to perform such Work, CONTRACTOR will provide, by way of replacement, individuals with reasonably equivalent experience and expertise.

**Matthew Alves, Tax Associate**
**Jacklyn Neitzel, Tax Associate**

CONTRACTOR PERSONNEL AUTHORIZED TO ATTEND MEETINGS WITH COMPANY PERSONNEL PERTAINING TO THE WORK

**Matthew Alves, Tax Associate**
**Jacklyn Neitzel, Tax Associate**

During the term of this engagement letter and for a period of one year following any expiration or termination of this engagement letter, EFH agrees not to hire or solicit for employment any personnel of KPMG who are assigned to work under this SOW.

PRIVILEGES CLAIMED BY COMPANY, WITH RESPECT TO DELIVERABLES OR OTHER DOCUMENTS HEREAFTER DESIGNATED BY COMPANY

_____    ATTORNEY-CLIENT COMMUNICATION

_____    ATTORNEY WORK PRODUCT

_____    TAX ADVISOR

_____    OTHER: _____

*EMPLOYMENT CLAIMS*

For purposes of this Schedule A, CONTRACTOR shall indemnify, defend, and hold harmless COMPANY from and against any claims that arise from or relate to any employment-related laws (including but not limited to discrimination, harassment, wage, benefit, and/or contractual claims under federal, state, or local statute or common law including but not limited to Title VII of the Civil Rights Act of 1964, as amended, the Americans with Disabilities Act, the Equal Pay Act of 1963, the



*EFH Corporate Services Company*
*June 17, 2014*
*Page 6 of 6*

Age Discrimination in Employment Act of 1967, the Civil Rights Act of 1866, the Older Workers Benefit Protection Act, the Family and Medical Leave Act, the Texas Labor Code, the Fair Labor Standards Act, and ERISA) based on an allegation that COMPANY is an employer or joint employer of any loaned KPMG staff. In addition, CONTRACTOR agrees that it is solely responsible for providing any reasonable accommodation required by any loaned KPMG staff under this Schedule A for a qualifying disability under the Americans with Disabilities Act or any state or local disabilities law; provided, however, that COMPANY will reimburse CONTRACTOR for any direct expenditures required for CONTRACTOR to fulfill such obligation, but only to the extent any such accommodation would require tangible modifications to the work environment provided by COMPANY and is deemed by COMPANY based on applicable law to be a reasonable accommodation that does not cause undue hardship for COMPANY.

To the extent necessary to permit COMPANY to enforce this Agreement, COMPANY agrees that with respect to any employment claims brought against COMPANY, CONTRACTOR will and does hereby waive to COMPANY any defense it may have by virtue of the workers' compensation laws of any state.

## LIST OF ATTACHMENTS

COMPANY and CONTRACTOR agree that the following described attachments, if any, are incorporated herein in their entirety as fully as completely rewritten herein.

Work not specified above may be authorized only through a separate Schedule A, or through an amendment or supplement to this Schedule A.

**KPMG LLP**                                    **EFH CORPORATE SERVICES COMPANY**

By: _____          By: _____
    Signature                                          Signature

Name: _Josh Hennessey_____           Name: _D. BOYD LOVELACE_

Title: _Tax Partner_____              Title: _VP Tax Operations_

Date: _6/17/2014_____            Date: _8/6/14_____

**<u>Exhibit F</u>**

**EFH Services SOW**

## SCHEDULE A-18

Following the Parties' execution of this Schedule A, CONTRACTOR is authorized to perform the Work as identified below on behalf of COMPANY pursuant to the terms and conditions contained in the Master Services Agreement C0631124C (" the Agreement") dated November 1, 2009 and amended December 16, 2013.

Any work performed in connection with this engagement before the date of execution of this Schedule A is also governed by the terms and conditions contained in this Schedule A.

## SCOPE OF WORK AND DELIVERABLES

The Work will be performed in accordance with the specifications and instructions, if any, attached hereto and identified in the List of Attachments.  The Work will be scheduled at the direction of COMPANY's Contract Coordinator as identified herein.

**Scope of Work:**

CONTRACTOR will perform limited review procedures with respect to COMPANY'S parent, Energy Future Holdings Corp. ("EFH") U.S. federal income tax return for the taxable year ended December 31, 2013 (the "Services"); specifically CONTRACTOR will perform the following review procedures on this return:

1. CONTRACTOR will perform a high-level review of transactional data contained in EFH'S consolidated 2013 Form 10-K and compare with draft tax elections, statements and disclosures prepared by the COMPANY and included in the 2013 tax return. If CONTRACTOR identifies any potential additional tax elections or disclosures required based on the review performed, CONTRACTOR will present to the COMPANY for consideration and inclusion. COMPANY will provide a copy of the EFH 2012 financial statements and the EFH 2012 tax return for CONTRACTOR to review;

2. CONTRACTOR will consult with subject matter professionals regarding new tax developments relevant within EFH'S industry that may affect  EFH'S 2013 consolidated federal income tax return. New tax developments identified by CONTRACTOR will be presented to the COMPANY for consideration;

3. CONTRACTOR will review a comparison of the EFH 2012 tax return with draft current year return including elections, statements, and disclosures prepared by COMPANY. CONTRACTOR will identify any inconsistencies in the elections, statements, and disclosures, and gain an understanding of the reasons for these inconsistencies;

4. The COMPANY will complete an AICPA Form 1120 checklist for CONTRACTOR'S review for which CONTRACTOR will review for reasonableness.

This statement of work is also intended to apply to preliminary engagement planning activities related to the tax returns specified above for the immediately succeeding tax year.

At the completion of the engagement, CONTRACTOR will provide COMPANY with a written memorandum summarizing the work performed with respect to this review.

COMPANY has requested that we perform a limited scope review of EFH's tax return(s) and work papers. CONTRACTOR will not audit or independently verify the data you submit with the return(s), nor will CONTRACTOR review all furnished work papers for technical and/or mathematical accuracy. Due to the limited scope of CONTRACTOR's engagement and the fact that CONTRACTOR will not review a substantial portion of the tax return(s), CONTRACTOR will not sign the tax return(s). However, CONTRACTOR may ask for clarification of some of the information and make inquiries on specific tax matters encountered during the review of the tax return(s). Additionally, CONTRACTOR may determine that further research is required in order to ascertain whether there is adequate support for a given position taken on the return(s). Such additional research services are not included in CONTRACTOR'S fee for the review services. CONTRACTOR will endeavor to notify COMPANY of any such circumstances as they are assessed.

In the event the services provided by CONTRACTOR personnel rise to a level requiring CONTRACTOR to sign the tax return(s) or claim(s) as preparer, or COMPANY requests that CONTRACTOR personnel sign the return(s) or claim(s), a separate engagement letter will be issued. That letter will provide for an increase in fees to correlate to the additional preparation and review procedures to be performed in order for CONTRACTOR personnel to sign as tax return preparer.

CONTRACTOR'S engagement cannot be relied on to uncover errors in the underlying information incorporated in the tax return(s), omissions, or irregularities, should any exist. However, CONTRACTOR will inform COMPANY of any such matters that come to our attention. Because management has ultimate responsibility for the tax return(s), please have the appropriate corporate officials review the return(s) before an officer signs and files the return(s).

All returns are subject to examination by the taxing authorities. In the event of an examination, the COMPANY may be requested to produce documents, records, or other evidence to substantiate the items of income and deduction shown on the tax return(s). In reviewing EFH'S return(s), CONTRACTOR relies on COMPANY's representations and that COMPANY understands and has complied with the documentation requirements for EFH'S income, expenses, deductions, and credits. If an examination occurs, and if COMPANY and CONTRACTOR agree to have CONTRACTOR assist or represent COMPANY in the examination, any such additional services and the fee therefore would be set forth in a separate statement of work.

Please note that if EFH had a taxable presence (e.g., an employee within the jurisdiction or any tangible property owned or rented within the jurisdiction) in a jurisdiction not listed above, it may be subject to income or franchise tax in that jurisdiction, depending upon the particular facts. It is the COMPANY's obligation to notify CONTRACTOR if assistance is needed to determine whether EFH is liable for income or franchise tax or has a filing requirement in any jurisdiction not listed above.

CONTRACTOR will not maintain a copy of the relevant tax work papers and/or tax return. Upon request, COMPANY will permit CONTRACTOR access to the relevant tax work papers and/or portion of the tax return for those tax returns CONTRACTOR reviewed to the extent it is required pursuant to a statutory or regulatory provision or court order in order to fulfill professional obligations and internal firm quality review purposes.

**Electronic Filing**

CONTRACTOR has not been engaged for electronic filing. It is the responsibility of COMPANY to comply with the mandated electronic filing federal and/or state requirements to timely submit the return to the tax authorities.

**Tax Consulting Services**

This statement of work also covers tax consulting matters that may arise for which COMPANY seeks CONTRACTOR'S advice, both written and oral, and that are not the subject of a separate statement of work. CONTRACTOR will apply the elevated standards described in the "Tax Return Standards" section of this letter with respect to any such advice which would cause CONTRACTOR to be considered a tax return preparer under Treasury Regulation §301.7701-15. CONTRACTOR will not render any advice with respect to a federal or state "listed transaction" or any transaction that is substantially similar to a federal or state "listed transaction."

If matters exceed the scope of this statement of work, CONTRACTOR will issue a separate statement of work or clarifying addendum to confirm the scope and related terms. Furthermore, a separate statement of work will be issued for each discrete tax consulting project not specified in this statement of work (e.g., transfer pricing study, corporate acquisition or disposition, etc.) and for tax controversy representation.

When, in the course of providing general tax consulting services, it is determined that the service would exceed the scope of this letter, preliminary engagement planning activities undertaken prior to the issuance of a separate statement of work for the discrete tax consulting project are intended to be covered by this statement of work.

To be of greatest assistance to COMPANY, CONTRACTOR should be advised **in advance** of proposed transactions.

CONTRACTOR does not anticipate that the written tax advice provided under this engagement letter will be a Covered Opinion as defined in §10.35 of Circular 230 (Covered Opinion). Therefore, all the written tax advice provided under this engagement letter will contain the following legend:

> ANY TAX ADVICE IN THIS COMMUNICATION IS NOT INTENDED OR WRITTEN BY KPMG TO BE USED, AND CANNOT BE USED, BY A CLIENT OR ANY OTHER PERSON OR ENTITY FOR THE PURPOSE OF (i) AVOIDING PENALTIES THAT MAY BE IMPOSED ON ANY TAXPAYER OR (ii) PROMOTING, MARKETING OR RECOMMENDING TO ANOTHER PARTY ANY MATTERS ADDRESSED HEREIN.

However, if CONTRACTOR'S services will rise to the level of a Covered Opinion, CONTRACTOR will issue a separate statement of work for the issuance of a Covered Opinion.

**Tax Advice Standards**

COMPANY shall prepare the tax return, supporting work papers and related documents, and provide copies to CONTRACTOR by no later than June 16, 2014. CONTRACTOR'S procedures are designed to evaluate the substantive correctness and mechanical accuracy of the tax return, however, CONTRACTOR will not independently verify COMPANY -prepared work papers and other supporting documents, the accuracy and completeness of which are the sole responsibility of COMPANY.

The review procedures that CONTRACTOR expects to perform on this engagement will not be significant enough for CONTRACTOR to be considered the "income tax return preparer" of the above described tax returns, and accordingly, CONTRACTOR does not anticipate signing any of these returns as the preparer. CONTRACTOR will communicate to COMPANY any revisions that CONTRACTOR considers necessary to make the material CONTRACTOR reviews substantively correct and mechanically accurate. CONTRACTOR'S review is not intended to provide COMPANY with any assurance that CONTRACTOR has identified all issues that could result in current or future controversies with taxing authorities or additional tax or penalties, that CONTRACTOR has identified all opportunities for minimizing tax liabilities, or that one or more items that CONTRACTOR may review cannot be successfully challenged by any of the taxing authorities.

Although this Schedule A refers to "review procedures," this engagement does not constitute a "review" within the scope of the American Institute of Certified Public Accountants' Standards for Accounting and Review Services.

If CONTRACTOR is considered to be a tax return preparer under Treasury Regulation §301.7701-15, CONTRACTOR will apply elevated standards in reviewing tax returns. These standards are dependent on certain characteristics of the entity to which CONTRACTOR'S services will be directed as follows:

1. For U.S. public companies or "large private entities" (i.e., private entities with prior year gross revenues of $300 million or more reflected in audited financial statements prepared in accordance with U.S. generally accepted accounting principles): CONTRACTOR must be able to determine that (1) there is "substantial authority" for an undisclosed return position (i.e., the weight of authorities in support of a position is substantial in relation to the weight of authorities in opposition to the position) and (2) a disclosed return position has at least a "realistic possibility" of being sustained on its merits (i.e., approximately a one-in-three or greater likelihood of success if challenged by a tax authority). The laws of some states (e.g., New York) also may impose more stringent return preparation standards for state tax returns. For advice pertaining to a "Tax Shelter" (as defined in IRC §6662(d)(2)(C)(ii)) or a "reportable transaction" with a significant purpose of tax avoidance, tax practitioners must generally conclude their advice satisfies the "more likely than not" standard; if the taxpayer is advised regarding potential taxpayer penalties, tax practitioners may conclude at a "substantial authority" level.

2.  For "other private entities" (i.e., entities that do not fall within the definitions above as a U.S. public company or large private entity) or individuals: CONTRACTOR must be able to determine that a return position is at least "more likely than not" to be upheld (i.e., has a greater than 50 percent likelihood of success if challenged by the taxing authorities).

3.  If a return position relates to a transaction that is a "principal purpose transaction," CONTRACTOR must arrive at a "should" confidence level (i.e., approximately a 70% or greater likelihood of success if challenged by the taxing authorities) with respect to the position.

4.  CONTRACTOR will not render any advice with respect to a federal or state "listed transaction" or any transaction that is substantially similar to a federal or state "listed transaction."

In determining whether a return position meets the appropriate standard, CONTRACTOR will not take into account the possibility that a tax return will not be audited, that an issue will not be raised on audit, or that an issue will be settled. CONTRACTOR will inform COMPANY as soon as possible if, during CONTRACTOR'S review, CONTRACTOR determine circumstances exist that prevent CONTRACTOR from reviewing the tax returns under these standards.

**Deliverables:**

Deliverables will be in the format requested by COMPANY depending on the specific tax services that are requested (i.e., oral, e-mail, memorandum, letter, Excel spreadsheet, etc.).

Contract Coordinator: Kevin Ashby          Phone Number: (214) 812-2117

## WORK SITE

The Work Site will be the following location(s): CONTRACTOR &/or COMPANY offices located in Dallas, TX.

## COMPENSATION, INVOICES AND PAYMENT

As full compensation for the satisfactory performance by CONTRACTOR of the Work authorized pursuant to this Schedule A, COMPANY will compensate CONTRACTOR as follows.

Estimated fees for this project will range between $40,000 and $55,000 and will be based on the actual time incurred to complete the work at the hourly rates for the individuals involved in providing the services summarized in the table below. This project is not authorized to exceed

$55,000. Any extension or increase in spend will require amendment to this Schedule A. This estimate assumes there will be no travel to the participant's site(s).

**Professional and Support Staff Fees Schedule**

| | |
|---|---|
| **Partner/Principal** | **$575/hr** |
| **Tax Managing Director** | **$515/hr** |
| **Senior Manager** | **$465/hr** |
| **Manager** | **$385/hr** |
| **Senior Associate** | **$275/hr** |
| **Associate** | **$210/hr** |

The rates specified in the Schedule A will remain in effect, with respect to and until completion of the Work authorized pursuant to this Schedule A. The rates are considered as "not to exceed" the maximum fees to be charged for services.

All invoices shall be sent to:

>       Mr. Kevin Ashby
>       Director - Tax
>       Energy Future Holdings Corp.
>       1601 Bryan St, 3rd floor
>       Dallas, TX 75201


## RESEVATION OF RIGHTS

Notwithstanding anything herein to the contrary, COMPANY will compensate CONTRACTOR for the Work (a) only after CONTRACTOR's engagement by COMPANY has been approved by the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") pursuant to section 327(a) of the Bankruptcy Code and (b) in accordance with any order entered by the Bankruptcy Court governing the compensation or reimbursement of fees of parties employed pursuant to section 327(a) of the Bankruptcy Code.


## KEY PERSONNEL

CONTRACTOR agrees that the individuals listed below will be assigned to perform the Work authorized by this Schedule A. CONTRACTOR will employ all reasonable efforts to ensure that such individuals remain so assigned until such Work is accepted by COMPANY; provided, however, that in the event that any such individuals are reassigned by CONTRACTOR or otherwise become unavailable to perform such Work, CONTRACTOR will provide, by way of replacement, individuals with reasonably equivalent experience and expertise.

>       **Clifford Crockett:** Partner, Federal Tax
>       **John Kane:** Senior Manager, Federal Tax
>       **Andrew Brannon:** Manager, Federal Tax

CONTRACTOR PERSONNEL AUTHORIZED TO ATTEND MEETINGS WITH COMPANY PERSONNEL PERTAINING TO THE WORK

**Clifford Crockett:** Partner, Federal Tax
**John Kane:** Senior Manager, Federal Tax
**Andrew Brannon:** Manager, Federal Tax

PRIVILEGES CLAIMED BY COMPANY, WITH RESPECT TO DELIVERABLES OR OTHER DOCUMENTS HEREAFTER DESIGNATED BY COMPANY

____ ATTORNEY-CLIENT COMMUNICATION
____ ATTORNEY WORK PRODUCT
__✓__ TAX ADVISOR
____ OTHER

### LIST OF ATTACHMENTS

COMPANY and CONTRACTOR agree that the following described attachments, if any, are incorporated herein in their entirety as fully as completely rewritten herein.

Work not specified above may be authorized only through a separate Schedule A, or through an amendment or supplement to this Schedule A.

**KPMG LLP**                                **EFH CORPORATE SERVICES COMPANY**

By: _____              By: _____
    Signature                                Signature

Name: Clifford M. Crockett                Name: Kevin Ashby

Title: Partner                            Title: Tax Director

Date: 7/2/14                              Date: 7/2/14

## **Exhibit G**

**Oncor Services SOW**

C 0631124 C

## SCHEDULE A- 19

Following the Parties' execution of this Schedule A, CONTRACTOR is authorized to perform the Work as identified below on behalf of COMPANY pursuant to the terms and conditions contained in the Master Services Agreement C0631124C ("the Agreement") dated November 1, 2009, as amended.

Any work performed in connection with this engagement before the date of execution of this Schedule A is also governed by the terms and conditions contained in this Schedule A.

## SCOPE OF WORK AND DELIVERABLES

The Work will be performed in accordance with the specifications and instructions, if any, attached hereto and identified in the List of Attachments. The Work will be scheduled at the direction of COMPANY's Contract Coordinator as identified herein.

**Scope of Work:**

CONTRACTOR will perform limited review procedures with respect to COMPANY'S U.S. federal income tax return (Form 1065) for its affiliate, Oncor Electric Delivery Company LLC ("Oncor") for the taxable year ended December 31, 2013 (the "Services"); specifically CONTRACTOR will perform the following review procedures on this return:

1. CONTRACTOR will perform a high-level review of transactional data contained in the Oncor's consolidated 2013 Form 10-K and compare with draft tax elections, statements and disclosures prepared by the COMPANY and included in the Oncor 2013 tax return. If CONTRACTOR identifies any potential additional tax elections or disclosures required based on the review performed, CONTRACTOR will present to the COMPANY for consideration and inclusion. COMPANY will provide a copy of the Oncor 2012 financial statements and the Oncor 2012 tax return for CONTRACTOR to review;

2. CONTRACTOR will consult with subject matter professionals regarding new tax developments relevant within Oncor's industry that may affect Oncor's 2013 consolidated federal income tax return. New tax developments identified by CONTRACTOR will be presented to the COMPANY for consideration;

3. CONTRACTOR will review a comparison of the Oncor 2012 tax return with draft current year return including elections, statements, and disclosures prepared by COMPANY. CONTRACTOR will identify any inconsistencies in the elections, statements, and disclosures, and gain an understanding of the reasons for these inconsistencies;

C 0631124 C

4. CONTRACTOR will perform a high-level review of Oncor's Internal Revenue Code Section 704(c) partnership allocation calculation prepared by the COMPANY.

5. The COMPANY will complete an AICPA Form 1065 checklist for CONTRACTOR'S review for which CONTRACTOR will review for reasonableness.

This statement of work is also intended to apply to preliminary engagement planning activities related to the tax returns specified above for the immediately succeeding tax year.

At the completion of the engagement, CONTRACTOR will provide COMPANY with a written memorandum summarizing the work performed with respect to this review.

COMPANY has requested that we perform a limited scope review of Oncor's tax return(s) and work papers. CONTRACTOR will not audit or independently verify the data you submit with the return(s), nor will CONTRACTOR review all furnished work papers for technical and/or mathematical accuracy. Due to the limited scope of CONTRACTOR's engagement and the fact that CONTRACTOR will not review a substantial portion of the tax return(s), CONTRACTOR will not sign the tax return(s). However, CONTRACTOR may ask for clarification of some of the information and make inquiries on specific tax matters encountered during the review of the tax return(s). Additionally, CONTRACTOR may determine that further research is required in order to ascertain whether there is adequate support for a given position taken on the return(s). Such additional research services are not included in CONTRACTOR'S fee for the review services. CONTRACTOR will endeavor to notify COMPANY of any such circumstances as they are assessed.

In the event the services provided by CONTRACTOR personnel rise to a level requiring CONTRACTOR to sign the tax return(s) or claim(s) as preparer, or COMPANY requests that CONTRACTOR personnel sign the return(s) or claim(s), a separate engagement letter will be issued. That letter will provide for an increase in fees to correlate to the additional preparation and review procedures to be performed in order for CONTRACTOR personnel to sign as tax return preparer.

CONTRACTOR'S engagement cannot be relied on to uncover errors in the underlying information incorporated in the tax return(s), omissions, or irregularities, should any exist. However, CONTRACTOR will inform COMPANY of any such matters that come to our attention. Because management has ultimate responsibility for the tax return(s), please have the appropriate corporate officials review the return(s) before an officer signs and files the return(s).

All returns are subject to examination by the taxing authorities. In the event of an examination, the COMPANY may be requested to produce documents, records, or other evidence to substantiate the items of income and deduction shown on the tax return(s). In reviewingOncor's return(s), CONTRACTOR relies on COMPANY's representations and that COMPANY understands and has complied with the documentation requirements for Oncor's income, expenses, deductions, and credits. If an examination occurs, and if COMPANY and CONTRACTOR agree to have CONTRACTOR assist or represent COMPANY in the

C 0631124 C

examination, any such additional services and the fee therefore would be set forth in a separate statement of work.

Please note that if Oncor had a taxable presence (e.g., an employee within the jurisdiction or any tangible property owned or rented within the jurisdiction) in a jurisdiction not listed above, it may be subject to income or franchise tax in that jurisdiction, depending upon the particular facts. It is the COMPANY's obligation to notify CONTRACTOR if assistance is needed to determine whether Oncor is liable for income or franchise tax or has a filing requirement in any jurisdiction not listed above.

CONTRACTOR will not maintain a copy of the relevant tax work papers and/or tax return. Upon request, COMPANY will permit CONTRACTOR access to the relevant tax work papers and/or portion of the tax return for those tax returns CONTRACTOR reviewed to the extent it is required pursuant to a statutory or regulatory provision or court order in order to fulfill professional obligations and internal firm quality review purposes.

**Electronic Filing**

CONTRACTOR has not been engaged for electronic filing. It is the responsibility of COMPANY to comply with the mandated electronic filing federal and/or state requirements to timely submit the return to the tax authorities.

**Tax Consulting Services**

This statement of work also covers tax consulting matters that may arise for which COMPANY seeks CONTRACTOR'S advice, both written and oral, and that are not the subject of a separate statement of work. CONTRACTOR will apply the elevated standards described in the "Tax Return Standards" section of this letter with respect to any such advice which would cause CONTRACTOR to be considered a tax return preparer under Treasury Regulation §301.7701-15. CONTRACTOR will not render any advice with respect to a federal or state "listed transaction" or any transaction that is substantially similar to a federal or state "listed transaction."

If matters exceed the scope of this statement of work, CONTRACTOR will issue a separate statement of work or clarifying addendum to confirm the scope and related terms. Furthermore, a separate statement of work will be issued for each discrete tax consulting project not specified in this statement of work (e.g., transfer pricing study, corporate acquisition or disposition, etc.) and for tax controversy representation.

When, in the course of providing general tax consulting services, it is determined that the service would exceed the scope of this letter, preliminary engagement planning activities undertaken prior to the issuance of a separate statement of work for the discrete tax consulting project are intended to be covered by this statement of work.

To be of greatest assistance to COMPANY, CONTRACTOR should be advised **in advance** of proposed transactions.

C 0631124 C

CONTRACTOR does not anticipate that the written tax advice provided under this engagement letter will be a Covered Opinion as defined in §10.35 of Circular 230 (Covered Opinion). Therefore, all the written tax advice provided under this engagement letter will contain the following legend:

> ANY TAX ADVICE IN THIS COMMUNICATION IS NOT INTENDED OR WRITTEN BY KPMG TO BE USED, AND CANNOT BE USED, BY A CLIENT OR ANY OTHER PERSON OR ENTITY FOR THE PURPOSE OF (i) AVOIDING PENALTIES THAT MAY BE IMPOSED ON ANY TAXPAYER OR (ii) PROMOTING, MARKETING OR RECOMMENDING TO ANOTHER PARTY ANY MATTERS ADDRESSED HEREIN.

However, if CONTRACTOR'S services will rise to the level of a Covered Opinion, CONTRACTOR will issue a separate statement of work for the issuance of a Covered Opinion.

**Tax Advice Standards**

COMPANY shall prepare the tax return, supporting work papers and related documents, and provide copies to CONTRACTOR by no later than June 18, 2014. CONTRACTOR'S procedures are designed to evaluate the substantive correctness and mechanical accuracy of the tax return, however, CONTRACTOR will not independently verify COMPANY - prepared work papers and other supporting documents, the accuracy and completeness of which are the sole responsibility of COMPANY.

The review procedures that CONTRACTOR expects to perform on this engagement will not be significant enough for CONTRACTOR to be considered the "income tax return preparer" of the above described tax returns, and accordingly, CONTRACTOR does not anticipate signing any of these returns as the preparer. CONTRACTOR will communicate to COMPANY any revisions that CONTRACTOR considers necessary to make the material CONTRACTOR reviews substantively correct and mechanically accurate. CONTRACTOR'S review is not intended to provide COMPANY with any assurance that CONTRACTOR has identified all issues that could result in current or future controversies with taxing authorities or additional tax or penalties, that CONTRACTOR has identified all opportunities for minimizing tax liabilities, or that one or more items that CONTRACTOR may review cannot be successfully challenged by any of the taxing authorities.

Although this Schedule A refers to "review procedures," this engagement does not constitute a "review" within the scope of the American Institute of Certified Public Accountants' Standards for Accounting and Review Services.

If CONTRACTOR is considered to be a tax return preparer under Treasury Regulation §301.7701-15, CONTRACTOR will apply elevated standards in reviewing tax returns. These standards are dependent on certain characteristics of the entity to which CONTRACTOR'S services will be directed as follows:

C 0631124 C

1.  For U.S. public companies or "large private entities" (i.e., private entities with prior year gross revenues of $300 million or more reflected in audited financial statements prepared in accordance with U.S. generally accepted accounting principles): CONTRACTOR must be able to determine that (1) there is "substantial authority" for an undisclosed return position (i.e., the weight of authorities in support of a position is substantial in relation to the weight of authorities in opposition to the position) and (2) a disclosed return position has at least a "realistic possibility" of being sustained on its merits (i.e., approximately a one-in-three or greater likelihood of success if challenged by a tax authority). The laws of some states (e.g., New York) also may impose more stringent return preparation standards for state tax returns. For advice pertaining to a "Tax Shelter" (as defined in IRC §6662(d)(2)(C)(ii)) or a "reportable transaction" with a significant purpose of tax avoidance, tax practitioners must generally conclude their advice satisfies the "more likely than not" standard; if the taxpayer is advised regarding potential taxpayer penalties, tax practitioners may conclude at a "substantial authority" level.

2.  For "other private entities" (i.e., entities that do not fall within the definitions above as a U.S. public company or large private entity) or individuals: CONTRACTOR must be able to determine that a return position is at least "more likely than not" to be upheld (i.e., has a greater than 50 percent likelihood of success if challenged by the taxing authorities).

3.  If a return position relates to a transaction that is a "principal purpose transaction," CONTRACTOR must arrive at a "should" confidence level (i.e., approximately a 70% or greater likelihood of success if challenged by the taxing authorities) with respect to the position.

4.  CONTRACTOR will not render any advice with respect to a federal or state "listed transaction" or any transaction that is substantially similar to a federal or state "listed transaction."

In determining whether a return position meets the appropriate standard, CONTRACTOR will not take into account the possibility that a tax return will not be audited, that an issue will not be raised on audit, or that an issue will be settled. CONTRACTOR will inform COMPANY as soon as possible if, during CONTRACTOR'S review, CONTRACTOR determine circumstances exist that prevent CONTRACTOR from reviewing the tax returns under these standards.

**Deliverables:**

Deliverables will be in the format requested by COMPANY depending on the specific tax services that are requested (i.e., oral, e-mail, memorandum, letter, Excel spreadsheet, etc.).

C 0631124 C

Contract Coordinator: Kevin Ashby          Phone Number: (214) 812-2117

## WORK SITE

The Work Site will be the following location(s): CONTRACTOR &/or COMPANY offices located in Dallas, TX.

## COMPENSATION, INVOICES AND PAYMENT

As full compensation for the satisfactory performance by CONTRACTOR of the Work authorized pursuant to this Schedule A, COMPANY will compensate CONTRACTOR as follows.

Estimated fees for this project will range between $30,000 and $40,000 and will be based on the actual time incurred to complete the work at the hourly rates for the individuals involved in providing the services summarized in the table below. This project is not authorized to exceed $40,000. Any extension or increase in spend will require amendment to this Schedule A. This estimate assumes there will be no travel to the participant's site(s).

**Professional and Support Staff Fees Schedule**

| | |
|---|---|
| **Partner/Principal** | **$545/hr** |
| **Tax Managing Director** | **$490/hr** |
| **Senior Manager** | **$450/hr** |
| **Manager** | **$370/hr** |
| **Senior Associate** | **$260/hr** |
| **Associate** | **$210/hr** |

The rates specified in the Schedule A will remain in effect, with respect to and until completion of the Work authorized pursuant to this Schedule A. The rates are considered as "not to exceed" the maximum fees to be charged for services.

All invoices shall be sent to:

      Mr. Kevin Ashby
      Director - Tax
      Energy Future Holdings Corp.
      1601 Bryan St, 3rd floor
      Dallas, TX 75201

## RESEVATION OF RIGHTS

Notwithstanding anything herein to the contrary, COMPANY will compensate CONTRACTOR for the Work (a) only after CONTRACTOR's engagement by COMPANY has been approved by the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court) pursuant to section 327(a) of the Bankruptcy Code and (b) in accordance with any order entered

C 0631124 C

by the Bankruptcy Court governing the compensation or reimbursement of fees of parties employed pursuant to section 327(a) of the Bankruptcy Code.

## KEY PERSONNEL

CONTRACTOR agrees that the individuals listed below will be assigned to perform the Work authorized by this Schedule A. CONTRACTOR will employ all reasonable efforts to ensure that such individuals remain so assigned until such Work is accepted by COMPANY; provided, however, that in the event that any such individuals are reassigned by CONTRACTOR or otherwise become unavailable to perform such Work, CONTRACTOR will provide, by way of replacement, individuals with reasonably equivalent experience and expertise.

**Clifford Crockett:** Partner, Federal Tax
**John Kane:** Senior Manager, Federal Tax
**Andrew Brannon:** Manager, Federal Tax

CONTRACTOR PERSONNEL AUTHORIZED TO ATTEND MEETINGS WITH COMPANY PERSONNEL PERTAINING TO THE WORK

**Clifford Crockett:** Partner, Federal Tax
**John Kane:** Senior Manager, Federal Tax
**Andrew Brannon:** Manager, Federal Tax

PRIVILEGES CLAIMED BY COMPANY, WITH RESPECT TO DELIVERABLES OR OTHER DOCUMENTS HEREAFTER DESIGNATED BY COMPANY

\_\_\_\_ ATTORNEY-CLIENT COMMUNICATION

\_\_\_\_ ATTORNEY WORK PRODUCT

\_X\_ TAX ADVISOR

\_\_\_\_ OTHER

## LIST OF ATTACHMENTS

COMPANY and CONTRACTOR agree that the following described attachments, if any, are incorporated herein in their entirety as fully as completely rewritten herein.

Work not specified above may be authorized only through a separate Schedule A, or through an amendment or supplement to this Schedule A.

C 0631124 C

**KPMG LLP**

By: _____
    Signature

Name: Clifford M. Crockett

Title: Partner

Date:  7/15/14

**EFH CORPORATE SERVICES COMPANY**

By: _____
    Signature

Name: Kevin Ashby

Title: Tax Director

Date:  7/14/14

## Exhibit H

**SOX Compliance SOW**

C 0631124 C

## SCHEDULE A-18

Following the Parties' execution of this Schedule A-18, CONTRACTOR (also referred as "KPMG") is authorized to perform the Work as identified below on behalf of COMPANY "also referred as EFH Corporate Services Company" pursuant to the terms and conditions contained in the Master Services Agreement C0631124C dated November 1, 2009 and Amendment Number 13A to the Master Consulting Agreement dated December 16, 2013 (collectively referred to as "the Agreement")

### SCOPE OF WORK AND DELIVERABLES

The Work will be performed in accordance with the specifications and instructions, if any, attached hereto and identified in the List of Attachments. The Work will be scheduled at the direction of COMPANY'S Contract Coordinator as identified herein.

### SCOPE OF WORK AND APPROACH

CONTRACTOR will assist COMPANY personnel in supporting key activities related to the remediation of IT deficiencies identified through COMPANY's Sarbanes-Oxley "SOX" compliance efforts. In this phase "Phase 1," CONTRACTOR will assist COMPANY with respect to the TXU Energy (TXUE), Luminant, and EFH Corporate Services control environments:

- Assist in the implementation of revised SOX primary IT General Controls (ITGC) by performing the following key activities. SOX ITGC's include access control, program change control, program development, and computer operations areas.
  - Assess and evaluate existing control framework and improvement recommendations for new proposed SOX ITGC controls framework. Evaluation will include recommendations for disposition of controls that will no longer be part of the new proposed SOX ITGC framework.
  - Work with control owners to establish control activities and requirements for minimum standards of evidence.
  - Build and deliver control owner training sessions to establish responsibility, capability, and expectations related to ongoing performance of controls and controls certifications
  - Update / build process and policy documentation as necessary to reflect revised controls
  - Support control performance by control owners through real time coaching and review
  - Collaboratively define criteria to demonstrate IT SOX transition progress to EFH management
  - Assess available supporting documentation evidence to confirm conformity with newly established control requirements
  - Update SOX Primary ITGC controls matrix template in format necessary to upload new revised SOX Primary ITGCs into the CMT tool (template to be provided by EFH)
- Assist in the risk management efforts associated with key SOX-relevant system implementation efforts by performing the following key activities:
  - Review project implementation plans, timelines, and communications scheduled for go-live in 2014
  - Participate in the evaluation and determination of potential impact to SOX compliance efforts
  - Establish plan for real time involvement in critical implementation efforts to monitor and support program development control objectives. Further assistance to assist during specific system implementations is out of scope of this SOW and, if requested, may be engaged separately.
- Assist in the definition and planning for management's desired overall IT Compliance function by performing the following activities:

C 0631124 C

- Meet with IT management to share our understanding of leading practices for compliance management and the compliance function's performance of monitoring and testing activities
- Understand IT management objectives for compliance management
- Establish implementation plans related to people, process, and technology components of compliance function.  Further assistance to assist during implementation of these recommended components is out of scope of this SOW and, if requested, may be engaged separately.
- Throughout this phase, assist with significant people change management impacts by performing the following activities:
  - Participate in the vision setting effort for the transformation effort, contributing to the establishment of the desired outcome
  - Understand cultural attributes and define the actionable behaviors that will support the effective transformation process
  - Identify key communication elements regarding strategy, management objectives, and control performance that are intended to improve adoption and understanding by control owners
  - Identify and propose opportunities to align and drive toward the new culture and behaviors
  - Identify stakeholders impacted by the defined changes and analyze current level of awareness, buy-in, and commitment
  - Engage stakeholders throughout the transformation effort to facilitate their ownership
  - Periodically monitor stakeholder expectations and involvement
  - Develop training materials to support training sessions noted previously which incorporate these key messaging elements and techniques
- Throughout the phase, various project management activities will be incorporated  such as:
  - Develop meeting and status communication materials for the project team, management and executives, as requested
  - Support IT Compliance in meetings with external and internal audit teams as requested to discuss control concepts, plans, and progress
  - Assist in the preparation of relevant data points for July Audit Committee meeting, as requested

## DELIVERABLES

The intended deliverables associated with this phase of the project include:
- Observations related to identified Internal control improvement recommendations
- Defined activity plans to support the implementation of control remediation
- Updated SOX Primary ITGC controls matrix template in format necessary to upload new revised SOX Primary ITGCs into the CMT tool
- Training materials and supporting reference materials intended for control owners
- Summary log of personnel trained through various training sessions
- Recommendations related to change communication strategies
- Process and policy documentation updates
- Plan for integrated control performance assistance in critical system implementation efforts
- Recommendations related to improved sustainability capabilities for ongoing IT compliance efforts
- Status reports and communication materials

C 0631124 C

Contract Coordinator: Harvey Ewing                    Phone Number: (214) 812-1322

- Deliverables will not be prepared on KPMG letterhead or contain the KPMG logo or other references to KPMG. These deliverables may be prepared on COMPANY letterhead or contain the COMPANY logo, if instructed by the Project Sponsor.
- KPMG may attach a transmittal communication to each deliverable, or provide a periodic transmittal communications referring to the deliverables that have been provided previously. Neither this KPMG transmittal communication, nor a copy thereof, should accompany any reports or deliverables shared outside COMPANY. Should COMPANY attach its own transmittal letter when reports or deliverables are shared externally, such transmittal letter may not indicate that the report or deliverable was prepared by KPMG or that the findings were based on input or test work provided by KPMG. Further KPMG's role in supporting COMPANY internal audit function or other projects may not be publicly disclosed (other than to COMPANY's external auditor) without KPMG's written consent.

## CLIENT PARTICIPATION AND RESPONSIBILITIES

During the development of this engagement letter, we have been guided by certain assumptions about the project scope, and level of COMPANY's involvement and support.

COMPANY's management is responsible for establishing and maintaining an effective internal control structure. Our assistance is intended to help management in fulfilling these responsibilities. COMPANY's Audit Committee will review and approve the internal audit plan and provide final oversight for all testing activities.

COMPANY's management will designate a Project Sponsor, a senior member of management who has the requisite skills and competencies for overseeing the services being provided. The Project Sponsor is responsible for establishing the objectives and scope and determining the nature, timing, and extent of testing procedures; for approving, in conjunction with the Audit Committee, the service delivery plan; and for maintaining appropriate day-to-day oversight of the KPMG team. In addition, the Project Sponsor will have responsibility for reviewing, approving, and taking full responsibility for engagement deliverables prepared during the engagement that document the results; for coordinating with management to determine whether control matters of concern noted constitute deficiencies, significant deficiencies or material weaknesses; for reporting the results within COMPANY's reporting structure, including the Audit Committee; for evaluating the observations and recommendations that arise from the services; and for monitoring corrective action taken.

Notwithstanding the foregoing, CONTRACTOR shall not be obligated to fulfill any particular obligation to provide Work as specified above, to the extent (and solely to the extent) that CONTRACTOR is unable to fulfill such obligation, as a direct result of any of the following dependencies not being completed in all material respects:

- Appropriate access to relevant documentation and resources
- Changes in the population of identified deficiencies which require incremental remediation efforts
- Timely management review and approval of recommendations
- Process and control owner attendance and participation in training sessions

## OTHER MATTERS

KPMG will provide our services in accordance with the terms and conditions of this letter. Our services as outlined in this letter constitute an Advisory Engagement conducted under the American Institute of

C 0631124 C

Certified Public Accountants ("AICPA") Standards for Consulting Services. Such services are not intended to be an audit, examination, attestation, special report or agreed-upon procedures engagement as those services are defined in AICPA literature applicable to such engagements conducted by independent auditors. Accordingly, these services will not result in the issuance of a written communication to third parties by KPMG directly reporting on financial data or internal control or expressing a conclusion or any other form of assurance.

Contractor uses third party service providers within and without the United States to provide at Contractor's direction administrative and clerical services to Contractor. Accordingly, COMPANY consents to Contractor's disclosure to such third party service providers of data and information received from or at the request or direction of Client for the foregoing purposes.

**Sarbanes-Oxley Act of 2002**

The following paragraph supersedes Article 43(a) of the Agreement:

In accepting this engagement, the COMPANY acknowledges that completion of this engagement or acceptance of deliverables resulting from this engagement will not constitute the sole basis for its assessment or evaluation of internal control over financial reporting or the primary basis for its compliance with its principal officer certification requirements under Section 302 of the Sarbanes-Oxley Act of 2002 (the Act). This engagement shall not be construed to be the sole basis to support the COMPANY'S responsibilities under Section 404 of the Act requiring each annual report filed under Section 13(a) or 15(d) of the Securities Exchange Act of 1934 to contain an internal control report from management. It is the responsibility of COMPANY management to establish and maintain an adequate internal control structure and procedures for financial reporting and to assess, as of the end of the most recent fiscal year of the COMPANY, the effectiveness of the internal control structure and procedures of the COMPANY for financial reporting.

**Other Parties**

KPMG has performed a limited internal search for relationships based on the parties identified by COMPANY. Based on that internal search, KPMG and member firms of the KPMG network of independent firms and firms and entities controlled by, or under common control with, one or more such member firms (collectively, "Member Firms") has provided services to the following organizations identified by COMPANY:

- KPMG LLP in the US provides tax and advisory services to PricewaterhouseCoopers.
- KPMG LLP in the US and one or more other member Firms of KPMG Intl provide audit, tax and advisory services to Capgemini America, Inc and or affiliates.
- KPMG LLP in the US provides tax and advisory services and one or more other member Firms of KPMG Intl provide audit, tax and advisory services to HCL TECHNOLOGIES, LTD and or affiliates.

By signing this Statement of Work, COMPANY agrees that these relationships do not (i) constitute a limitation on the services requested; (ii) create a basis for disqualification of KPMG or its professionals; or (iii) constitute a conflict of interest for purposes of KPMG's engagement to perform the services under this Schedule A-18 for COMPANY. COMPANY expressly waives its right to assert any such conflict against KPMG.

KPMG's process for conducting searches of potential conflicts takes place at the time the organizations are identified for review by COMPANY. However, if KPMG becomes aware of any potential conflicts after the start of the engagement, KPMG will promptly inform COMPANY. In addition, during the course of this engagement, COMPANY agrees that it will inform KPMG of additional organizations or name changes for the organizations previously provided by COMPANY. At such time, KPMG will perform an additional