**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | Case No. 14-10979 (CSS) |
| Debtors. | (Jointly Administered) |
| | **Re: D.I. 1682, 1791, 1796, 1804** |

**SUPPLEMENTAL BRIEF OF THE PERSONAL INJURY LAW FIRMS
IN OPPOSITION TO THE IMPOSITION OF A CLAIMS BAR DATE AFFECTING
PRESENT AND FUTURE ASBESTOS PERSONAL INJURY CLAIMANTS**

MONTGOMERY MCCRACKEN
 WALKER & RHOADS LLP
Natalie D. Ramsey (DE Bar No. 5378)
Davis Lee Wright (DE Bar No. 4324)
1105 North Market Street, Suite 1500
Wilmington, DE  19801
Telephone:  (302) 504-7800
Facsimile:  (302) 504-7820

*Counsel for Gori Julian & Associates, P.C.; Simmons Hanly Conroy, LLC; Paul Reich & Meyers, P.C.; Kazan, McClain, Satterley & Greenwood, a Professional Law Corporation; and Early, Lucarelli, Sweeney & Meisenkothen*

Dated: September 9, 2014

---

[1] The last four digits of Energy Future Holdings Corp.'s taxpayer identification number are 8810.  The location of the debtors' service address is 1601 Bryan Street, Dallas, TX 75201.  Due to the large number of debtors in these Chapter 11 cases, for which joint administration has been granted, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

3754385v2

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................................................ 1

PUBLICATION NOTICE WILL DENY DUE PROCESS OF LAW TO FUTURE
ASBESTOS PERSONAL INJURY CLAIMANTS .................................................................... 2

    A.    Publication Notice of an Asbestos-Related Bar Date is Insufficient for
Future Claimants Who are Unaware or Unknowing of Their Injuries .................. 2

    B.    There Can Be No Due Process for Future Claimants in the Absence of a
Future Claimants' Representative to Advocate Their Interests ............................. 6

    C.    Establishment of an Asbestos Bar Date Would Not Achieve Any
Legitimate Reorganizational Objective in this Case .............................................. 9

    D.    None of the Decisions in Grossman's, Wright, or Placid Support the
Proposition that Due Process Notice Can be Provided To Future
Claimants .............................................................................................................. 11

    E.    Because Asbestos Claims may only be Addressed by Section 524(g) or a
Pass- Through Plan, Bankruptcy Courts Generally Decline to Set an
Asbestos Bar Date, and No Benefit Can Be Derived Through a Bar Date
in This Case .......................................................................................................... 13

CONCLUSION ............................................................................................................................ 15

3754385v2

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Amatex Corp.*,
    30 B.R. 309 (Bkrtcy. E.D. Pa. 1983) ................................................................................. 7, 8

*In re Amatex Corp.*,
    755 F.2d 1034 (3d Cir. 2985) ............................................................................................ 7, 8

*Amchem Products, Inc. v. Windsor*,
    521 U.S. 591 (1997) ........................................................................................................... 5, 6

*In re AMF Bowling Worldwide, Inc.*,
    278 B.R. 96 (Bankr. E.D. Va. 2002) ..................................................................................... 2

*Avellino & Bienes v. M. Frenville Co. (Matter of Frenville Co.)*,
    744 F.2d 332 (3d Cir. 1984) ............................................................................................ 11, 12

*In re Budd Co.*,
    512 B.R. 910 (Bankr. N.D. Ill. 2014) .................................................................................. 11

*In re Chance Indus., Inc.*,
    367 B.R. 689 (Bankr. D. Kan. 2006) ..................................................................................... 4

*Chemetron Corp. v. Jones*,
    72 F.3d 341 (3d Cir. 1995) ................................................................................................... 4

*In re Congoleum Corp.*,
    No. 03-51524, 2008 WL 314699 (Bankr. D.N.J. Feb. 4, 2008) ......................................... 13

*In re Eagle-Picher Indus., Inc.*,
    137 B.R. 679 (Bankr. S.D. Ohio 1992) ............................................................................... 14

*Findley v. Falise (In re Joint E. & S. Dist. Asbestos Litig.)*,
    878 F. Supp. 473 (E.D.N.Y. & S.D.N.Y. 1995) .................................................................... 6

*In re Flintkote Co.*,
    486 B.R. 99 (Bankr. D. Del. 2012) ........................................................................... 4, 10, 11

*Greater Am. Land Res., Inc. v. Town of Brick, N.J.*,
    C.A. No. 11-5308, 2012 WL 1831563 (D.N.J. May 17, 2012) ............................................. 2

*JELD-WEN, Inc. v. Van Brunt (In re Grossman's, Inc., et al.)*,
    607 F.3d 114 (3d Cir. 2010) .................................................................................... 11, 12, 13

*In re Johns-Manville Corp.*,
     36 B.R. 743 (Bankr. S.D.N.Y. 1984) ...................................................................................7, 8

*In re Lloyd E. Mitchell, Inc.*,
     373 B.R. 416 (Bankr. D. Md. 2007) ........................................................................................14

*In re MMH Auto. Grp., LLC*,
     385 B.R. 347 (Bankr. S.D. Fla. 2008) ..................................................................................2, 15

*In re Motors Liquidation*,
     Case No. 09-50026, Order Pursuant to Sections 105 and 1109 ................................................9

*Mullane v. Cent. Hanover Bank & Trust Co.*,
     339 U.S. 306 (1950) ..................................................................................................................4

*Official Comm. of Asbestos Claimants of G-I Holdings, Inc. v. Heyman*,
     277 B.R. 20 (S.D.N.Y. 2002) ..................................................................................................14

*Official Comm. of Unsecured Creditors of Cybergenics Corp. v. Chinery*,
     330 F.3d 548 (3d Cir. 2003) ......................................................................................................6

*In re Placid Oil Co.*,
     753 F.3d 151 (5th Cir. 2014) ...................................................................................................13

*In re Plant Insulation Co.*,
     469 B.R. 843 (Bankr. N.D. Cal. 2012), *aff'd.*, 485 B.R. 203 (N.D. Calif. 2012) ......................5

*In re Plant Insulation Co.*,
     734 F.3d 900 (9th Cir. 2013) ...................................................................................................11

*In re Specialty Prods. Holding Corp.*,
     Case No. 10-11780 (Bankr. D. Del.) (Walsh, J.) ......................................................................3

*In re UNR Industries, Inc.*,
     725 F.2d 1111 (7th Cir. 1984) ...................................................................................................7

*In re W.R. Grace & Co.*,
     729 F.3d 311 (3d Cir. 2013) ....................................................................................................10

*In re W.R. Grace & Co.*,
     729 F.3d 332 (3d Cir. 2013) ....................................................................................................10

*White v. Jacobs (In re New Century TRS Holdings, Inc., et al.)*,
     Civ. No. 13-1719-SLR, 2014 WL 4100749 (D. Del. Aug. 19, 2014) ..................................2, 3

*Wright v. Owens Corning*,
     679 F.3d 101 (3d Cir. 2012) ....................................................................................................12

**Statutes**

11 U.S.C. § 524(g) ........................................................................................................ *passim*

section 1109(b) of the Bankruptcy Code ........................................................................7

Uniform Guardianship and Protective Proceedings Act § 102(5) ..................................................7

**Other Authorities**

140 Cong. Rec. H10752-01 (Oct. 4, 1994) .........................................................................9

Fed. R. Civ. P. 17 ..........................................................................................................6, 7

Fed. R. Bankr. P. 3003(c)(2) ...............................................................................................3

Laura B. Bartell, *Due Process for the Unknown Future Claim in Bankruptcy—Is This Notice Really Necessary?*, 78 AM. BANKR. L.J. 339, 366 (2004) ..................................................6

Frederick Tung, *The Future Claims Representative in Mass Tort Bankruptcy: A Preliminary Inquiry*, 3 CHAP. L. REV. 43, 53 (2000) ...................................................................5

Yair Listokin and Kenneth Ayotte, *Protecting Future Claimants in Mass Tort Bankruptcies*, 98 NW. U. L. REV. 1435, 1449 (2004) ...................................................................5

The PI Law Firms,[2] by and through their undersigned counsel, hereby file this supplemental brief in opposition to the Debtors' motion to impose a claims bar date for asbestos personal injury claimants. In support, the PI Law Firms respectfully state as follows:

## PRELIMINARY STATEMENT

The Debtors' Motion for Entry of an Order (A) Setting Bar Dates for Filing Non-Customer Proofs of Claim and Requests for Payment Under Section 503(b)(9) of the Bankruptcy Code, (B) Approving the Form of and Manner for Filing Non-Customer Proofs of Claim and Requests for Payment Under Section 503(b)(9) of the Bankruptcy Code, and (C) Approving Notice Thereof (the "Motion") requests that this Court impose a bar date on present and future asbestos personal injury claims.

The Debtors' plan fails to satisfy the constitutionally-mandated due process rights of present and future asbestos personal injury claimants. Future asbestos personal injury claimants cannot be treated similarly to other personal injury tort claimants. Congress recognized this important distinction when it passed legislation creating Section 524(g) of the Bankruptcy Code. Because asbestos-related injuries may not diagnosed for up to fifty years after exposure, establishing a bar date violates due process by cutting off the rights of thousands of potential claimants who do not even know that they have a claim. While courts have accepted publication as providing constructive notice to creditors unknown to a debtor, publication does not satisfy the requirements of due process for an entire class of claimants that are so unknown as to be unknown even to themselves.

---

[2] The PI Law Firms are Gori Julian & Associates, P.C., Simmons Hanly Conroy, LLC, Paul Reich & Meyers, P.C., Kazan, McClain, Satterley & Greenwood, a Professional Law Corporation, and Early, Lucarelli, Sweeney & Meisenkothen.

Because a bar date for future asbestos creditors cannot satisfy the requirements of due process, the establishment of a bar date will not advance the progress of these cases. Asbestos liabilities are best addressed as Congress intended, through the creation of an asbestos personal injury trust.[3] Accordingly, the Debtors' motion should be denied.

### PUBLICATION NOTICE WILL DENY DUE PROCESS OF LAW TO FUTURE ASBESTOS PERSONAL INJURY CLAIMANTS

A.   *Publication Notice of an Asbestos-Related Bar Date is Insufficient for Future Claimants Who are Unaware or Unknowing of Their Injuries.*

Due process is a threshold requirement in bankruptcy cases. *See Greater Am. Land Res., Inc. v. Town of Brick, N.J.*, C.A. No. 11-5308, 2012 WL 1831563, at *4 (D.N.J. May 17, 2012) ("Due process is also an important consideration in bankruptcy proceedings."); *In re MMH Auto. Grp., LLC*, 385 B.R. 347, 372 (Bankr. S.D. Fla. 2008) ("While I recognize that speed is essential to the success of most bankruptcy cases, . . . expediency does not trump due process."); *In re AMF Bowling Worldwide, Inc.*, 278 B.R. 96, 101 (Bankr. E.D. Va. 2002) ("Without proper notice, a party cannot be held as having relinquished a known claim or right as that party would not have knowledge of its claim to be able to release it.").

The United States District Court for the District of Delaware recently addressed the critical due process considerations that must be evaluated when setting a bar date. *See White v. Jacobs (In re New Century TRS Holdings, Inc., et al.)*, Civ. No. 13-1719-SLR, 2014 WL 4100749 (D. Del. Aug. 19, 2014) (reversing the Bankruptcy Court's determination that adequate notice had been provided in connection with a bar date order). In *White*, the *pro se* plaintiffs

---

[3] Pursuant to an agreement between the parties, the scope of this brief is limited to addressing the issue of whether the Court should enter a bar date for asbestos claimants. Should the Court enter a bar date order, the parties have agreed to address the requirements of the content and scope of the notice required at a later hearing. The PI Law Firms assert that due process notice cannot be provided to future asbestos claimants and that the Debtors' proposed bar date notice and notice plan fail to provide adequate notice to present asbestos personal injury claimants.

contended that the debtors' bar date notice, published just once in *The Wall Street Journal* and *The Orange County Register*, did not provide adequate constructive notice of the bar date. The District Court noted that "whether adequate notice has been provided depends on the circumstances of a particular case," *id.* at *4, and concluded that "the adequacy of the notice provided in this case has not been meaningfully explored and likely was not reasonably calculated to apprise appellants of the bar date." *Id.* at *6. The Court concluded that the debtors' publication notice was insufficient. *Id.*

Here, the Debtors improperly ask that this Court establish a bar date expressly and specifically intended to cut off claims of persons who have not yet manifested any asbestos-related injury, persons who will someday suffer a loss when a family member in the future develops an asbestos-related disease, and even those who do not yet have the relationships that will result in a claim against the Debtors, such as future spouses or unborn children (collectively, "future claimants"). With one exception in a case that settled before a bar date order was entered, no court has ever so ruled.[4]

A bar date has significant consequences. An unscheduled creditor who fails to file a proof of claim or interest by the bar date "shall not be treated as a creditor with respect to such claim for the purposes of voting ***and distribution***." Federal Rule of Bankruptcy Procedure 3003(c)(2) (emphasis added). Therefore, and as stated by this Court at the initial hearing on the

---

[4] *See* 11/5/2013 Hr'g Tr. 40:8-13, *In re Specialty Prods. Holding Corp.*, Case No. 10-11780 [D.I. 4286] (Bankr. D. Del.) (Walsh, J.) ("Well, I'm inclined to direct that a bar date be established, including asbestos claims.") (attached as Ex. A to Corrected Objection of Certain Asbestos Claimants to the Motion [D.I. 1796]). The PI Law Firms respectfully submit that Judge Walsh's ruling was in error. Further, there are two important distinctions between *Specialty Products* and these cases: (1) the *Specialty Products* court appointed a future claimants' representative, *see* Case No. 10-11781 [D.I. 449] (appointing Eric D. Green as Legal Representative for Future Claimants); and (2) the *Specialty Products* court had already conducted an estimation trial and determined that the debtors' asbestos liability was approximately $1.166 billion. *See* Case No. 10-11780 [D.I. Nos. 3852 & 3853] (opinion and order entered determining asbestos liabilities).

-3-

Debtors' Motion, implicit in the imposition of a bar date is a determination that adequate notice *can* be provided to the creditors whose claims are the subject of the bar date. *See* Hr'g Tr. 94:11-15, *In re Energy Futures Holding Corp., et al.*, (Bankr. D. Del. Aug. 13, 2014) (Sontchi, J.) [D.I. 1945] (emphasis added).[5]

Because this case involves unknown creditors to whom the Debtors are unable to provide direct notice, the Debtors propose to provide notice through publication in a variety of newspapers and trade magazines. Motion [D.I. 1682], at ¶ 21 ("[T]he Debtors propose to publish the Bar Date Notice, modified for publication . . . on one occasion in each of the publications listed in Exhibit 4 to Exhibit A attached hereto."). But publication notice cannot satisfy the constitutional requirements of due process for future claimants.[6] The uniquely long latency period—up to 50 years—associated with asbestos diseases means that individuals who will later become sick have no present knowledge that they will later develop a potentially fatal disease. That is, unlike potential creditors who may be unknown to a debtor but who are aware of their claims and for whom publication notice is effective, future claimants are *unknown to themselves*.[7]

---

[5] "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). Although constructive notice may be used to satisfy the requirements of providing due process notice to unknown creditors, "[i]nadequate notice is a defect which precludes discharge of a claim in bankruptcy." *See Chemetron Corp. v. Jones*, 72 F.3d 341, 346 (3d Cir. 1995).

[6] Even Judge Walsh's inclination to establish a bar date had not progressed to addressing the quantity or quality of notice to be required in order to satisfy the due process rights of future asbestos claimants. Although no order has been – or will be – entered establishing a bar date in *Specialty Products*, the details regarding the type of publication notice plan that would be purportedly adequate due process for future claimants was one issue still open when the parties settled the case.

[7] *See, e.g.*, *In re Flintkote Co.*, 486 B.R. 99, 124-25 (Bankr. D. Del. 2012) (noting asymptomatic individuals do not themselves know if they will suffer from an asbestos-related injury or be entitled to a payment based on manifestation of asbestos-related injury); *see also In re Chance Indus., Inc.*, 367 B.R. 689, 708 (Bankr. D. Kan. 2006) (citing Laura B. Bartell, *Due Process for the Unknown Future Claim in Bankruptcy—Is this Notice Really Necessary?*, 78 AM. BANKR. L.J. 339 (2004) ("notice by publication is an exercise in futility as applied to creditors
Continued…

Further, "even if identified, many [asbestos claimants] may not come forward to participate in a proceeding whose potential effect on them is remote." Frederick Tung, *The Future Claims Representative in Mass Tort Bankruptcy: A Preliminary Inquiry*, 3 CHAP. L. REV. 43, 53 (2000). Such a decision is not tantamount to a knowing waiver of a known right. *See* Yair Listokin and Kenneth Ayotte, *Protecting Future Claimants in Mass Tort Bankruptcies*, 98 NW. U. L. REV. 1435, 1449 (2004). Instead, it arises, for at least two reasons, from a lack of ability to make a reasoned decision based on the information presently available to the potential future claimant. First, concrete information receives a "greater-than-warranted emphasis in decision making, as compared to more abstract information." *Id.* (citing Thomas A. Smith, *A Capital Markets Approach to Mass Tort Bankruptcy*, 104 YALE L.J. 367 (1994) and various studies he describes within the article). And second, uncertainty surrounds the potential claim. *Id.* at 1450. Because only some of those exposed to asbestos will develop an asbestos-related injury, those who do not have a present injury simply will not file a proof of claim.

Indeed, in *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 628 (1997), the Supreme Court recognized the practical unlikelihood that every individual with incidental exposure to asbestos would realize that he or she could someday develop an asbestos disease and make a reasoned decision about whether to take part in the proceeding, stating that "those without current afflictions may not have the information or foresight needed to decide, intelligently, whether to stay in or opt out." *Id.* at 628 ("Impediments to the provision of adequate notice . . . rendered highly problematic any endeavor to tie to a settlement class persons with no perceptible

---

….Continued

who are not only unknown to the Debtor, but are also unknown to themselves"). The constraints of due process do not permit the normal chapter 11 process to be used to discharge the asbestos claims of persons not yet ill, who cannot be given notice, and who would not know what compensation to seek. *In re Plant Insulation Co*., 469 B.R. 843, 852 (Bankr. N.D. Cal. 2012), *aff'd*., 485 B.R. 203 (N.D. Calif. 2012).

-5-

asbestos-related disease at the time of the settlement," and certain claimants "may not even know of their exposure, or realize the extent of the harm they may incur . . . [or] may not have the information or foresight needed to decide, intelligently, whether to stay in or opt out.").[8]

In short, "when an individual cannot recognize that he or she has a claim in a bankruptcy case and, therefore, cannot make a decision about how to assert that claim, that person is functionally or constructively 'incompetent' for purposes of the bankruptcy case." Laura B. Bartell, *Due Process for the Unknown Future Claim in Bankruptcy—Is This Notice Really Necessary?*, 78 AM. BANKR. L.J. 339, 366 (2004).

> B.  There Can Be No Due Process for Future Claimants in the Absence of a Future Claimants' Representative to Advocate Their Interests.

"[F]uture interests are best protected 'by requiring that fair and just recovery procedures be made available to future claimants and by ensuring that they receive vigorous and faithful representation.'" *See Findley v. Falise (In re Joint E. & S. Dist. Asbestos Litig.)*, 878 F. Supp. 473, 565 (E.D.N.Y. & S.D.N.Y. 1995) (*quoting Ivy v. Diamond Shamrock Chems. Co.* (*In re Agent Orange Prod. Liability Litig.*), 996 F.2d 1425, 1435 (2d Cir. 1993)).

Federal Rule of Civil Procedure 17, made applicable by Rules 7017 and 9014 of the Federal Rules of Bankruptcy Procedure, provides for appointment of guardians in federal court.

---

[8] Debtors have previously requested that this Court ignore the Supreme Court's *Amchem* teachings as non-binding *dicta*. The Third Circuit, however, has previously instructed courts to be mindful of relevance of all aspects of a Supreme Court opinion:

> [W]e should not idly ignore considered statements the Supreme Court makes in dicta. The Supreme Court uses dicta to help control and influence the many issues it cannot decide because of its limited docket. Appellate courts that dismiss these expressions [in dicta] and strike off on their own increase the disparity among tribunals (for other judges are likely to follow the Supreme Court's marching orders) and frustrate the evenhanded administration of justice by giving litigants an outcome other than the one the Supreme Court would be likely to reach were the case heard there.

*Official Comm. of Unsecured Creditors of Cybergenics Corp. v. Chinery*, 330 F.3d 548, 561 (3d Cir. 2003) (internal citations omitted).

3754385v2

A court has the discretion to appoint a guardian if a party is found to be incompetent under the laws of the state of his or her domicile, Fed. R. Civ. P. 17(b)[9], and under Rule 17(c), a court may appoint a general guardian, a committee, a conservator, or "a like fiduciary" to represent the incompetent person's interests.

In the seminal *Johns-Manville* case, Judge Lifland found that future claimants were parties in interest under section 1109(b) of the Bankruptcy Code and as parties whose interests were to be affected by a Chapter 11 case, they had to be afforded an opportunity to be heard. *In re Johns-Manville Corp.*, 36 B.R. 743, 747 (Bankr. S.D.N.Y. 1984). The *Johns-Manville* court found that future claimants were entitled to a "separate and distinct representative" to participate in the formulation of the plan. *Id.* at 749. Importantly, the court issued its ruling in a jurisdiction that held that a claim arises upon exposure, as opposed to manifestation of an asbestos-related disease, *id*. at 752,[10] specifically finding that legal conclusion to be "totally unrelated to the status of future claimants as parties in interest." *Id.* at 750.[11] The court then appointed a future claimants' representative to represent their interests in connection with the case and endowed him with the powers and responsibilities of a committee.

---

[9] Many states model their guardianship statutes on the Uniform Guardianship and Protective Proceedings Act ("UGPPA"). The most recent version defines "Incapacitated person" as "an individual who, for reasons other than being a minor, is unable to receive and evaluate information or make or communicate decisions to such an extent that the individual lacks the ability to meet essential requirements for physical health, safety, or self-care, even with appropriate technological assistance." UGPPA § 102(5) (1998) (emphasis added). A representative for such person is appointed by the courts.

[10] The court compared this to the Seventh Circuit's decision in *In re UNR Industries, Inc.*, 725 F.2d 1111 (7th Cir. 1984) and the bankruptcy court's decision in *In re Amatex Corp.*, 30 B.R. 309 (Bkrtcy. E.D. Pa. 1983). However, the Third Circuit overturned *Amatex* aligning Third Circuit law with the *Manville* case line on the issue. *See In re Amatex Corp.*, 755 F.2d 1034 (3d Cir. 2985).

[11] The court also added support for the position, stating "the majority of jurisdictions date the statute of limitations from the point of manifestation of the disease should not have the unintended effect of barring those who have not as yet manifested a disease from asserting their status as parties in interest in this bankruptcy proceeding." *Id*. at 752.

During the same period the bankruptcy court in *Johns-Manville* was considering the unique plight of future claimants, courts in the Third Circuit were also recognizing the need for a representative to represent the interests of future claimants (an "FCR"). *See generally In re Amatex Corp.*, 755 F.2d 1034, 1043 (3d Cir. 1985) (future claimants require their own representative). In *Amatex*, the debtor sought the appointment of a *guardian ad litem* to represent the interests of unknown prospective claimants who might assert claims in the future. The lower courts ruled that future claimants did not hold claims under the Bankruptcy Code, and were therefore not creditors. *Id*. at 1036. In reversing, however, the Third Circuit ruled that future claimants, who presently did not know that they would become sick in the future, were nevertheless parties in interest who needed "a voice in proceedings that will vitally affect their interests." *Id.* at 1043. The Court concluded that "[u]nder the functional approach, the denial of the appointment of a legal representative for future claimants should be recognized as being tantamount to a denial of such individuals' request to intervene[.]" *Id.* at 1040. After recognizing that future claimants had a practical stake in the outcome of the proceedings, because any failure to provide for them may fatally undermine a plan of reorganization or prejudice their position, the court concluded future claimants were "sufficiently affected by the reorganization proceedings to require some voice in them." *Id*. at 1042.

The subsequent enactment of section 524(g), codifying the procedures and relief provided in the *Johns-Manville* case, confirms the need for an advocate to protect the rights of future claimants in a bankruptcy case, particularly where their rights are at issue. 11 U.S.C. § 524(g). Indeed, the legislative history directly addresses the treatment of future claimants and emphasizes that their interests and due process rights must be protected. Congress was "concerned that full consideration be accorded to the interests of future claimants, who, by

definition, do not have their own voice." 140 Cong. Rec. H10752-01, H10765 (Oct. 4, 1994). "[A] central element of the [Manville] case was how to deal with future asbestos claimants – those who were not yet before the court, because their disease had not yet manifested itself. The parties in the Manville case devised a creative solution to help protect the future asbestos claimants, in the form of a trust . . . ." *Id*. Although a future claimants' representative has no power to bind future claimants, the FCR provides a voice for this otherwise unrepresented interest.

Ever since, the appointment of an FCR has been the mechanism used by bankruptcy courts to ensure that the interests of future asbestos claimants are represented, even in liquidation and non-mass tort bankruptcies. *See, e.g., In re Motors Liquidation*, Case No. 09-50026, Order Pursuant to Sections 105 and 1109 of the Bankruptcy Code Appointing Dean M. Trafelet as Legal Representative for Future Asbestos Personal Injury Claimants [D.I. 5459] (Bankr. S.D.N.Y. Apr. 8, 2010).

      C.      *Establishment of an Asbestos Bar Date Would Not Achieve Any Legitimate Reorganizational Objective in this Case.*

Establishment of a bar date for future claimants will not advance the Debtors' reorganization. There are only two potential methods for addressing a debtor's future asbestos liability: establishment of a section 524(g) trust, or a pass-through plan.

An FCR, properly exercising his or her fiduciary duty, would almost certainly seek an estimation of the Debtors' asbestos liability as the only established method for assessing the Debtors' liability for future asbestos claims. The estimated future liability would then form the basis of any treatment proposed by the Debtors under a plan. Presumably the Debtors would then seek to benefit from the broad protection available under § 524(g).

In enacting section 524(g), Congress developed a statutory scheme that aimed at preserving the due process rights of future claimants while providing a debtor with comprehensive, enterprise-wide resolution of its present and future asbestos liability. *See In re W.R. Grace & Co.*, 729 F.3d 311, 320 (3d Cir. 2013) ("§ 524(g) permits all asbestos-related claims against the debtor to be channeled to a trust, and thus it relieves the debtor of the uncertainty of future asbestos liabilities[.]  By removing that uncertainty and allowing the debtor to emerge from bankruptcy free of all asbestos liability, § 524(g) facilitates the company's ongoing viability, which in turn provides the trust with an evergreen source of funding to pay future claims.") (internal quotations omitted).

Alternatively, if the Debtors were to propose a pass-through plan, a bar date would not benefit the case since it would neither inform nor limit the amount of the Debtors' asbestos liability.

In short, the attempted discharge of a future claimant through establishment of a bar date is inconsistent with the statutory scheme established by section 524(g), and inconsistent with the Bankruptcy Code's animating principle of equal distribution to similarly situated creditors.  And critically, it would deny future claimants due process: "Congress created the § 524(g) trust mechanism in order to protect the due process rights of people who had been exposed but not yet affected, and who might not manifest injury until a time when all available compensation had been paid out to people who got sick faster." *In re W.R. Grace & Co.*, 729 F.3d 332, 341 (3d Cir. 2013) (citation omitted).[12]

---

[12] *See also In re Flintkote Co.*, 486 B.R. 99 (Bankr. D. Del. 2012):

> The purpose of §524(g) is to provide those whose illnesses manifest post-petition, regardless of pre- or post-petition exposure, with a fund for recovery equivalent to what currently ill claimants will be paid.  Section 524(g) thus removes the risk that the size of payment in compensation for injuries will depend on how quickly a victim gets sick or manifest an injury.  It is impossible to

Continued…

Even in a recent liquidating chapter 11 case in which asbestos claims were alleged to be relatively *de minimis*, a bankruptcy court recognized the necessity of estimating a debtor's asbestos liability so that present and future claimants may be fairly treated. *See In re Budd Co.*, 512 B.R. 910, 914 (Bankr. N.D. Ill. 2014) ("At some point during these proceedings, the amount of the asbestos liability will have to be estimated. The Court agrees with the Movant that any legitimate estimate of asbestos liability should be rendered with the help of research by an expert with experience in actuarial science or other expertise.").

    D.    *None of the Decisions in* Grossman's, Wright, *or* Placid *Support the Proposition that Due Process Notice Can be Provided To Future Claimants*

The Third Circuit's decision in *JELD-WEN, Inc. v. Van Brunt (In re Grossman's, Inc., et al.)*, 607 F.3d 114 (3d Cir. 2010), does not support imposing a bar date in these chapter 11 cases. Rather, the purpose of *Grossman's* was to overrule the oft-criticized case of *Avellino & Bienes v. M. Frenville Co. (Matter of Frenville Co.)*, 744 F.2d 332 (3d Cir. 1984), and establish a new rule as to when a claim arises under the Bankruptcy Code; it was *not* to provide an alternative to Section 524(g) regarding the discharge of future asbestos claims in bankruptcy. In fact, *Grossman's* was not filed as an asbestos bankruptcy case; at the time it was commenced, there were no pending asbestos claims against it, and therefore the Third Circuit observed that

---

….Continued
    include all individuals who are asymptomatic in the "known, exposed category" because those individuals, themselves, do not know that they might become ill and thus, hold a right to payment, contingent on manifesting an illness. Without the existence of a trust to handle future demands, when asymptomatic individuals eventually manifest an injury, the debtor may no longer have available funds with which to compensate them.

*Id.* at 124-25. The Ninth Circuit has stated that Section 524(g) articulates Congress' "clearer standard for weighing the equities in the context of an asbestos-related bankruptcy," requiring courts to "attentively evaluate" the relative positions of two groups before issuing an injunction: the future asbestos claimants and the nondebtor injunction beneficiaries. *In re Plant Insulation Co.*, 734 F.3d 900, 912 (9th Cir. 2013) (overturning confirmation order on basis that reorganization plan failed to satisfy certain provisions of Section 524(g), including requirement that trust be able to own majority of debtor's equity).

Grossman's could not have sought a channeling injunction under section 524(g) since that Bankruptcy Code provisions only apply to companies that have been sued for asbestos damages prior to the petition date. *Grossman's*, 607 F.3d at 117, 127-128 & n.13.[13]

Both because *Frenville* was the prevailing law in the Third Circuit at the time that the bar date was entered in *Grossman's* and because no asbestos claims had been asserted against *Grossman's* until after its confirmation, the *Grossman's* bankruptcy court was not presented with the issue of whether future asbestos claimants could be provided with notice of a bar date that would satisfy the requirements of due process.

Similarly, the Third Circuit's later opinion in *Wright v. Owens Corning*, 679 F.3d 101 (3d Cir. 2012), *cert. denied sub nom. Corning v. Wright*, 133 S. Ct. 1239 (2013), does not support the imposition of an asbestos bar date. The holding in *Wright* is quite narrow and extends the *Grossman's* analysis to post-petition, pre-confirmation conduct or exposure. *Id.* at 107. Further, the *Wright* court issued its holding in the context of upholding a discharge injunction against a class claimant in a product warranty class action; the claim in *Wright* was not asbestos-related. Thus, *Wright* did not address the issue of due process notice to future asbestos claimants. In fact, *Wright* recognized the importance generally of due process for non-asbestos future claimants by stating:

> Given our reliance on the exceptional circumstances created by the retroactive application of *Grossman's*, we express no opinion on the broader issue of whether discharging unknown future claims comports with due process.

*Id.* at 109, n.7.

---

[13] Importantly, the Third Circuit recognized that the due process implications of discharging asbestos claims had been addressed by Section 524(g). *Id.* at 127 (citing *In re Combustion Eng'g, Inc.*, 391 F.3d 190, 234, n.45 (3d Cir. 2005)). The Third Circuit remanded the case to the district court for a determination of due process. *Id.* at 128. However, following the district court's remand to the bankruptcy court, the case settled without reaching such a determination. *See* Adv. Proc. No. 07-51602 (PJW), Final Order of Dismissal of Action With Prejudice [D.I. 73].

In their Response, the Debtors cite to *In re Placid Oil Co.*, 753 F.3d 151 (5th Cir. 2014), as supporting this Court's ability to discharge asbestos-related personal injury claims. Like *Grossman*'s, *Placid* was not an asbestos bankruptcy. Placid filed for bankruptcy protection in 1986 and the bankruptcy court imposed a January 1987 bar date for all claims (with publication notice for unknown claims in *The Wall Street Journal*). Placid's plan was confirmed in 1988. Prior to confirmation, no asbestos claims had ever been asserted against Placid. *Id.* at 153. In 2004, plaintiff sued Placid in state court, alleging that his wife's 2003 death was caused by mesothelioma she contracted washing plaintiff's clothes. Accordingly, in *Placid*, neither the Fifth Circuit (nor the bankruptcy court) addressed the issue of establishing a bar date intended to bar future asbestos claimants.

In ruling that plaintiff's claims against Placid were discharged by the 1988 confirmation order, the Fifth Circuit noted that section 524(g) was not passed until 1994, and agreed that section 524(g) would never have applied in the debtor's bankruptcy case, even assuming it was law, because Placid had never been subjected to asbestos-related claims pre-petition. *See* 753 F.3d at 158 n.7.

Citing to prior Fifth Circuit case law on publication notice for unknown creditors, due process *outside of Section 524(g)* only required direct notice to creditors where "specific information that reasonably suggests both the claim for which the debtor may be liable and the entity to whom he would be liable." *See id.* at 155. Therefore, *Placid* does not support imposition of a bar date for unknown future claimants.

> E.    Because Asbestos Claims may only be Addressed by Section 524(g) or a Pass-Through Plan, Bankruptcy Courts Generally Decline to Set an Asbestos Bar Date, and No Benefit Can Be Derived Through a Bar Date in This Case

Other bankruptcy courts faced with similar asbestos-related issues have declined to impose bar dates. *See, e.g.*, *In re Congoleum Corp.*, No. 03-51524, 2008 WL 314699, at *4

-13-

(Bankr. D.N.J. Feb. 4, 2008) (denying bondholders' motion for bar date covering asbestos claims); *In re Lloyd E. Mitchell, Inc.*, 373 B.R. 416, 423 (Bankr. D. Md. 2007) (overruling insurance companies' objections and approving voting procedures in which no bar date was set and asbestos claims were temporarily allowed for voting purposes without a proof of claim); *Official Comm. of Asbestos Claimants of G-I Holdings, Inc. v. Heyman*, 277 B.R. 20, 34 n.8 (S.D.N.Y. 2002) (noting that "in many asbestos bankruptcies, no bar date [is] ever set"); *see also In re Eagle-Picher Indus., Inc.*, 137 B.R. 679, 680 (Bankr. S.D. Ohio 1992) ("After careful consideration, we have reached the conclusion that while such bar dates are commonly set in Chapter 11 cases, *upon good cause shown the court may dispense with one in a given case*.") (emphasis added).

Entry of a bar date serves no legitimate reorganizational goal in this case. In addition to the impossibility of providing due process notice to future claimants, the expense and futility associated with providing notice to those with diagnosed illnesses but who have not yet brought suit is an expensive and difficult endeavor. Specialized notice for the population of present but unknown asbestos claimants is necessary because the presently injured population is comprised of individuals in very different circumstances. There will be injured individuals who have just learned that they have an injury, such as lung cancer, and may not yet be aware that asbestos could have caused or contributed to their injury. There will be individuals who have developed an injury that they may be aware was or could have been caused by asbestos but who are fighting for their lives and have not retained counsel or even contemplated pursuing compensation for their injury. There will be individuals who have lost a family member to an asbestos disease who have not yet retained counsel. There will be individuals who have retained counsel but have

-14-

not yet identified that the Debtors have some connection with their asbestos exposure. These are only some examples of the complexities presented by this population.

And, at the conclusion of such a process, either a trust will be established or the plan will provide for a pass-through of asbestos claims, in either event rendering a bar date a wasteful and futile effort.

## CONCLUSION

WHEREFORE, the PI Law Firms respectfully requests that the Court: (a) deny the Motion with respect to asbestos claimants, or, in the alternative, (b) enter a bar date with respect to present asbestos claimants, if at all, only as part of an order that provides targeted and appropriate notice of an asbestos bar date to present claimants; and (c) grant such other just, proper, and equitable relief.

Dated: Wilmington, Delaware
September 9, 2014

Respectfully submitted,

**MONTGOMERY McCRACKEN WALKER & RHOADS LLP**

 /s/ Natalie D. Ramsey
Natalie D. Ramsey, Esquire (DE Bar No. 5378)
Davis Lee Wright, Esquire (DE Bar No. 4324)
1105 North Market Street, Suite 1500
Wilmington, DE  19801
Telephone:  (302) 504-7800
Facsimile:  (302)-504-7820

*Counsel for Gori Julian & Associates, P.C.; Simmons Hanly Conroy, LLC; Paul Reich & Meyers, P.C.; Kazan, McClain, Satterley & Greenwood, a Professional Law Corporation, and Early, Lucarelli, Sweeney & Meisenkothen*