# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) Case No. 14-10979 (CSS) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |
| | ) **Re: D.I. 1682, 1791, 1796, 1804** |

## DEBTORS' SUPPLEMENTAL BRIEF IN SUPPORT OF
## BAR DATE WITH RESPECT TO ASBESTOS CLAIMS

---

[1] The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, which are being jointly administered, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

# Table of Contents

Table of Authorities .................................................................................................................. ii

Preliminary Statement..............................................................................................................1

Argument .................................................................................................................................4

I.   Setting a Bar Date is a Fundamental Aspect of the Bankruptcy Process From Which No Group of Creditors Should Be Universally Excepted. .......................................4

II.   Setting a Bar Date Under These Circumstances Is Not Unique. .........................................8

III.   Due Process Should Not Be Determined Prospectively. ....................................................11

## Table of Authorities

**Cases**

*Alderwoods Gr'p Inc. v. Garcia*,
    420 B.R. 609 (Bankr. S.D. Fla. 2009)................................................................................ 9

*Chemetron Corp. v. Jones*,
    72 F.3d 341 (3d Cir. 1995)................................................................................ 4, 12

*First Fidelity Bank, N.A. v. Hooker Invs., Inc. (In re Hooker Invs., Inc.)*,
    937 F.2d 833 (2d Cir. 1991)................................................................................ 4

*Gabauer v. Chemtura Corp. (In re Chemtura Corp.)*, 505 B.R. 427 (S.D.N.Y. 2014)........ 7, 8, 10

*Hodel v. Virginia Surface Min. and Reclamation Ass'n, Inc.*,
    452 U.S. 264 (1981)................................................................................ 2, 3

*In re Chateaugay Corp.*,
    2009 WL 367490 (Bankr. S.D.N.Y. Jan. 14, 2009)................................................................................ 9

*In re Chemtura*,
    No. 09-11233 (REG), Hr'g Tr. at 27:21–30:11 (Bankr. S.D.N.Y. Aug. 17, 2009).............. 3, 7

*In re Dana Corp.*,
    No. 06-10354 (BRL) (Bankr. S.D.N.Y. Oct. 23, 2007)................................................................................ 6

*In re Furniture Brands Int'l, Inc.*,
    No. 13-12329 (CSS) (Bankr. D. Del. Oct. 10, 2013)................................................................................ 10

*In re Grossman's*,
    607 F.3d 114 (3d Cir. 2010)................................................................................ passim

*In re Grunman Olson Indus., Inc.*,
    467 B.R. 694 (S.D.N.Y. 2012)................................................................................ 11

*In re Keene Corp.*,
    188 B.R. 903 (Bankr. S.D.N.Y. 1995)................................................................................ 4

*In re Lear Corp.*,
    2012 WL 443951 (Bankr. S.D.N.Y. Feb. 10, 2012)................................................................................ 3, 12

*In re Lyondell Chem. Co.*,
    No. 09-10023 (REG) (Bankr. S.D.N.Y. Apr. 16, 2009)................................................................................ 10

*In re New Century TRS Holdings, Inc.*,
    _ F. Supp. 2d _, 2014 WL 4100749 (D. Del. Aug. 20, 2014)................................................................................ 12

*In re Ormet Corp.*,
  No. 13-10334 (MFW) (Bankr. D. Del. Apr. 23, 2013) .......................................................... 10

*In re Overseas Shipholding Gr'p, Inc.*,
  No. 12-20000 (PJW) (Bankr. D. Del. Apr. 10, 2013) ........................................................... 10

*In re Smidth & Co.*,
  413 B.R. 161 (Bankr. D. Del. 2009) ...................................................................................... 4

*In re Solutia Inc.*,
  No. 03-17949 (PCB) (Bankr. S.D.N.Y) ................................................................................ 11

*In re Waterman Steamship Corp.*,
  157 B.R. 220 (S.D.N.Y. 1993) ............................................................................................... 8

*Katchen v. Landy*,
  382 U.S. 323 (1966) ............................................................................................................... 4

*Placid Oil*,
  753 F.3d 151 (5th Cir. 2014) .................................................................................................. 8

*Wright v. Corning (In re Owens Corning)*,
  679 F.3d 101 (3d Cir. 2012) ............................................................................................. 2, 5

**Statutes**

11 U.S.C. § 1121 ................................................................................................................ 2, 3, 6, 7

11 U.S.C. § 1129(b)(1) ................................................................................................................. 5

11 U.S.C. § 1171(a) ...................................................................................................................... 5

11 U.S.C. § 363 ........................................................................................................................... 11

11 U.S.C. § 507(a) ........................................................................................................................ 5

11 U.S.C. § 524(g) ................................................................................................................ passim

11 U.S.C. §101(5) ......................................................................................................................... 1

28 U.S.C. § 2071 *et. seq.* ............................................................................................................... 5

**Other Authorities**

Pub. L. No. 103-394, § 111(b) (Oct. 22, 1994) ............................................................................. 6

The above-captioned debtors and debtors in possession (collectively, the "<u>Debtors</u>") file this supplemental brief in support of the Debtors' motion to set a bar date with respect to all asbestos claims.[1] In response to the Court's request for supplemental briefing on the question of whether a bar date for asbestos claims is permissible, and in further support of the Debtors' Motion and Reply, the Debtors respectfully state as follows.

### Preliminary Statement

1. The Debtors seek to set a bar date for all "claims," as that term is defined in section 101(5) of the Bankruptcy Code. That includes unmanifested asbestos claims. Setting a bar date and running a claims process is a routine and fundamental step in a chapter 11 case: it provides important information about a debtor's outstanding liabilities; it forces potential claimants to bring their claims in a common forum; and it provides a debtor with the ability to evaluate and, where appropriate, to challenge claims. These steps are vital to the debtors and other parties in interest.

2. The PI Law Firms do not deny any of these fundamental principles. Rather, the PI Law Firms assert that this Court should create new law by establishing a blanket rule that excepts a single group of creditors from the bar date and claims process in every case. The PI Law Firms' proposed blanket rule would force all debtors with potential unmanifested asbestos claims to choose between a channeling injunction under section 524(g) of the Bankruptcy Code or "ride-through" treatment that completely excepts such claims from the bankruptcy process. Because that choice is in fact a Hobson's Choice of no choice at all, and is at odds with established caselaw from this Circuit requiring that examination of due process under a bar date

---

[1] The Debtors incorporate by reference the arguments made in the *Debtors' Reply in Support of Bar Date With Respect to Asbestos Claims* [D.I. 1804] (the "<u>Reply</u>"). Capitalized terms that are used but not defined herein shall have the meanings ascribed in the Reply.

1

structure be conducted on a case-by-case, fact-intensive, *post hoc* basis, the PI Law Firms' arguments must fail.

3. Specifically, the PI Law Firms' proposed blanket rule is inconsistent with the fact-intensive, case-by-case, *post hoc* due process analysis established by *In re Grossman's*, 607 F.3d 114, 127–28 (3d Cir. 2010) (holding that a bar date could be established for unmanifested asbestos claims and remanding for a fact-specific due process analysis) and *Wright v. Corning (In re Owens Corning)*, 679 F.3d 101, 108 & n.7 (3d Cir. 2012) (discussing and reaffirming *Grossman's* and the Third Circuit's refusal to establish bright line rules in the due process context). Individuals' prospective due process challenges to the discharge of claims pursuant to the bar date are not ripe. *See Hodel v. Virginia Surface Min. and Reclamation Ass'n, Inc.*, 452 U.S. 264, 293 (1981) (holding that takings claim was not ripe for adjudication and noting that "'ad hoc, factual inquiries' must be conducted with respect to specific property, and the particular estimates of economic impact and ultimate valuation relevant in the unique circumstances").

4. Similarly here, any due process analysis "must be conducted with respect to specific [claimants], and the particular [factual circumstances and notice provided] relevant in the unique circumstances." *Id.* Moreover, the PI Law Firms would require the Debtors to determine at this early stage of these chapter 11 cases to either permit unmanifested asbestos claims to ride through (*i.e.*, reinstatement), completely excepting such claims from the bankruptcy process, or to seek a channeling injunction under section 524(g) of the Bankruptcy Code. Forcing the Debtors to make that decision at this stage of the chapter 11 cases is inconsistent with the well-settled principle that the Debtors have an exclusive period to formulate and seek confirmation of a plan of reorganization that treats all claims against the Debtors. *See* 11 U.S.C. § 1121; *In re Chemtura*, No. 09-11233 (REG), Hr'g Tr. at 27:21–30:11 (Bankr.

S.D.N.Y. Aug. 17, 2009) (holding that claimants' efforts to require a debtor with future claims to address those future claims in a certain way would be "inconsistent with the concept of Section 1121 of the Code which gives the debtors the exclusive right to propose a plan."). By contrast, and consistent with the Third Circuit's binding decisions in *Grossman's* and *Owens Corning*, the Debtors merely seek to subject unmanifested asbestos claims to precisely the same treatment, precisely the same obligations, and precisely the same defenses to discharge, as any other claim.

5. The PI Law Firms' objections suffer from a fundamental flaw: they attempt to have this court determine due process prospectively, contrary to settled law. *Grossman's* makes clear that due process analysis in the context of a barred claim is a ***retrospective***, case-by-case determination, not a prospective blanket finding. *See also Hodel*, 452 U.S. at 293 (holding that fact-intensive constitutional claims are generally not ripe for adjudication prospectively); *In re Lear Corp.*, 2012 WL 443951, at *9 (Bankr. S.D.N.Y. Feb. 10, 2012) (holding that due process complaints were premature in the bar date context).

6. In contrast, the Debtors are not seeking such a blanket finding from this Court. Indeed, as this Court noted at the August 13 hearing, setting a bar date today does not determine the outcome of future questions regarding whether particular claims are discharged or whether a particular creditor has received due process.[2] Ultimately, when those specific questions are raised, the Debtors must then show that due process has been satisfied. The PI Law Firms' objections at the bar date setting stage are thus misplaced. Accordingly, the Debtors respectfully

---

[2] In the interest of streamlining the issues for resolution, the parties have agreed to limit the September 16th and 17th hearing, and the scope of this briefing, to the question of whether a bar date can be set for unmanifested asbestos claims. Per the parties' agreement, the proposed form of notice with respect to present but unidentified asbestos claims and unmanifested asbestos claims will be addressed separately and adjourned to a later hearing.

request that the Court overrule the Objection and hold that all asbestos claims may be subject to a bar date.[3]

## Argument

**I.  Setting a Bar Date is a Fundamental Aspect of the Bankruptcy Process From Which No Group of Creditors Should Be Universally Excepted.**

7.  Setting a bar date "contributes to one of the main purposes of bankruptcy law, securing, within a limited time, the prompt and effectual administration and settlement of the debtor's estate."  *In re Smidth & Co.*, 413 B.R. 161, 165 (Bankr. D. Del. 2009) (*citing Chemetron Corp. v. Jones*, 72 F.3d 341, 346 (3d Cir. 1995) (*citing Katchen v. Landy*, 382 U.S. 323, 328 (1966)).  "The bar date is critically important to the administration of a successful chapter 11 case, and the reorganization process:  [a] bar order serves the important purpose of enabling the parties to a bankruptcy case to identify with reasonable promptness the identity of those making claims against the bankruptcy estate and the general amount of the claims."  *In re Keene Corp.*, 188 B.R. 903, 907 (Bankr. S.D.N.Y. 1995) (*citing First Fidelity Bank, N.A. v. Hooker Invs., Inc. (In re Hooker Invs., Inc.)*, 937 F.2d 833, 840 (2d Cir. 1991)).

8.  The PI Law Firms argue that unmanifested asbestos claims should be excepted from the "critically important" part of the chapter 11 process because, in their view, the special concerns of asbestos claims require them to be treated differently.  That position is inconsistent with *Grossman's*, which held that the bar date applied to an unmanifested asbestos claim and

---

[3]  This Court has entered orders establishing bar dates for all other claims.  *See Interim Order Authorizing the Debtors to (A) Maintain and Administer Customer Programs and Customer Agreements, (B) Honor Prepetition Obligations Related Thereto, (C) Pay Certain Expenses on Behalf of Certain Organizations, (D) Fix the Deadline to File Proofs of Claim for Certain Customer Claims, and (E) Establish Procedures for Notifying Customers of Commencement of the Debtors' Chapter 11 Cases, Assumption of the Customer Agreements, and the Bar Date for Customers Claims* [D.I. 307] (setting a bar date for certain customer claims); *Order (A) Setting Bar Dates for Filing Non-Customer Proofs of Claim and Requests for Payment Under Section 503(b)(9) of the Bankruptcy Code, (B) Approving the Form of and Manner for Filing Non-Customer Proofs of Claim and Requests for Payment Under Section § 503(b)(9) of the Bankruptcy Code, and (C) Approving Notice Thereof* [D.I. 1866] (setting a general bar date).

remanded for due process evaluation. *See In re Grossman's*, 607 F.3d at 127–28. The Third Circuit reaffirmed that case-by-case approach in *Owens Corning*. *See In re Owens Corning*, 679 F.3d at 108 & n.7 (discussing and reaffirming *Grossman's*). Those decisions are controlling here. Moreover, the PI Law Firms' position is inconsistent with Congress's decision to broadly define "claims" in section 101(5) of the Bankruptcy Code. Congress could have excepted unmanifested claims from the definition of "claim," or could have excepted such claims from the bar date process, had it chosen to do so. Unmanifested asbestos claims could also potentially have been excepted from the bar date process through the process used to amend the Bankruptcy Rules. That authority is ultimately left with the Supreme Court (subject to congressional veto) under the Rules Enabling Act, 28 U.S.C. § 2071 *et. seq.*, however, not with individual courts. Neither Congress nor the Supreme Court elected to except unmanifested claims from the bar date process as the PI Law Firms now suggest.

9.     Additionally, the PI Law Firms' proposed blanket rule does not square with the Bankruptcy Code's prohibition against unfair discrimination. *See* 11 U.S.C. § 1129(b)(1) (prohibiting unfair discrimination in cramdown context). Indeed, the result of the PI Law Firms' argument is that, unless a debtor seeks relief under section 524(g) of the Bankruptcy Code, unmanifested asbestos claims are entitled to reinstatement—recovery in full—in every case, regardless of the treatment of other creditors. Congress knows how to require that certain classes of claims be treated more generously than other classes of claims. *See*, *e.g.*, 11 U.S.C. § 507(a) (establishing priorities for certain categories of prepetition claims). Indeed, Congress knows how to provide for such treatment specifically with respect to personal injury claims. *See* 11 U.S.C. § 1171(a) (providing that certain personal injury claims against railroad debtors are treated as administrative expenses regardless of when they arise). To be sure, there are cases where asbestos claims are carved out from a bar date process and allowed to ride through the

chapter 11 process unaffected.[4]  But there is a fundamental difference between finding that discrimination is fair under the particular circumstances in a particular case (or there simply being no objection to such treatment) on the one hand, and establishing a blanket rule that *requires* discrimination in favor of asbestos claimants in all cases, on the other hand.

10. The availability of section 524(g) relief as an alternative avenue to address future claims does not solve this problem.  As the Debtors explained in their Reply, and setting aside the fact that the Court is not addressing the discharge issue in connection with approving a bar date, section 524(g) supplements, rather than supplants, the discharge. 11 U.S.C. § 524(g)(1)(A) ("After notice and a hearing, a court that enters an order confirming a plan of reorganization under chapter 11 may issue, in connection with such order, an injunction in accordance with this subsection *to supplement* the injunctive effect of a discharge under this section.") (emphasis added) .  It follows that section 524(g) cannot serve as a basis to prohibit the setting of a bar date. Indeed, the enacting legislation for section 524(g) of the Bankruptcy Code provided the following rule of construction:  "Nothing in [the provisions implementing section 524(g)] shall be construed to modify, impair, or supersede any other authority the court has to issue injunctions in connection with an order confirming a plan of reorganization." Pub. L. No. 103-394, § 111(b) (Oct. 22, 1994).

11. Additionally, the asbestos bar should not be entitled to dictate the terms of a plan of reorganization by forcing the Debtors to seek relief under section 524(g) of the Bankruptcy Code.  Indeed, such a rule would effectively ignore the Debtors' period of plan exclusivity. *See* 11 U.S.C. § 1121.  This point was illustrated in a contested bar date hearing in *Chemtura*. *Chemtura* involved tort claims based on exposure to diacetyl, a chemical compound with a

---

[4] *See*, *e.g.*, *In re Dana Corp.*, No. 06-10354 (BRL), Disclosure Statement at 66–67, ECF No. 6669 (Bankr. S.D.N.Y. Oct. 23, 2007) (providing that asbestos personal injury claims would be reinstated).

manifestation period considerably lower than asbestos, but where issues with misdiagnosis or lack of diagnosis also existed. *In re Chemtura*, No. 09-11233 (REG), Hr'g Tr. at 27:21–30:11 (Bankr. S.D.N.Y. Aug. 17, 2009) (describing potential that a manifested claim could take years to be diagnosed as diacetyl-related). Certain parties objected to the proposed bar date arguing that the exposure claims were being treated improperly, claimants were not being provided due process, and the debtors there should establish section 524(g)-like relief with respect to diacetyl claims. *Id.* at 17:17–18:4 (objector arguing that no plan was on file to address future and unknown diacetyl claims and asserting that, as a result, setting a bar date would be premature). The court overruled the objection, and specifically stated that "requir[ing] or expect[ing] the debtors to craft a plan with a 524(g) injunction or other claims channeling mechanism" would be "inconsistent with the concept of Section 1121 of the Code which gives the debtors the exclusive right to propose a plan." *Id.* at 52:17–53:11. The court further noted that it was "puzzled by the notion that the objectors advocate . . . that no bar date should be set at all" because "[t]he debtors and their major creditor constituencies . . . need to know the universe of potential claims that must be satisfied. Frankly, to suggest otherwise is ludicrous." *Id.* at 54:16–55:6.

12.  Notably, a group of claimants challenged the discharge of diacetyl claims in *Chemtura*. The district court, affirming the bankruptcy court, held that the bar date process in *Chemtura* was sufficient to discharge future diacetyl claims. *See Gabauer v. Chemtura Corp. (In re Chemtura Corp.)*, 505 B.R. 427, 430 (S.D.N.Y. 2014). The claimants argued that the publication notice was insufficient to discharge their claims because (a) they did not know they were sick during the bar date process[5] and (b) due process could not be satisfied in the absence of section 524(g)-like protections and a future claims representative because the debtors had

---

[5] The claimants acknowledged that "*some* of the [claimants] *may* have had non-diagnostic symptoms, such as shortness of breath, cough, or wheezing." Brief of Appellants at 8. It is not clear whether other claimants were asymptomatic, *i.e.*, their claims had not manifested at all.

7

pending diacetyl claims during the cases and an expectation that future claims would be brought. *Id.*, Case No. 13-cv-02023, Brief of Appellants, ECF No. 7, at 16–17, 21–25. The district court distinguished *In re Waterman Steamship Corp.*, 157 B.R. 220 (S.D.N.Y. 1993), which the claimants in *Gabauer* and the PI Law Firms here rely on for the proposition that publication notice is insufficient for future creditors where a debtor is aware of the claims, on the basis that the publication notice contained enough specific information to put future creditors on notice. *Gabauer*, 505 B.R. at 430-31 (identifying specific language in the plant-specific notice that called attention to future claims).

13. Ultimately, *Grossman's*, *Owens Corning*, *Chemtura*, and the language of the Bankruptcy Code itself lead to an inescapable conclusion: asbestos claims, including unmanifested claims, should be treated precisely like any other claim. The PI Law Firms should not be permitted to force the Debtors to either reinstate such claims or seek relief under section 524(g) of the Bankruptcy Code.

## II. Setting a Bar Date Under These Circumstances Is Not Unique.

14. The PI Law Firms assert that a bar date has never been set for unmanifested claims where a debtor knew of its potential asbestos liability. The PI Law Firms are wrong. In *Placid Oil*, the court of appeals noted that the debtor knew of potential asbestos liability when it declared bankruptcy. 753 F.3d 151, 153 (5th Cir. 2014) (noting that "[b]y the early 1980s, Placid was aware, generally, of the hazards of asbestos exposure and, specifically, of [the claimant's] exposure in the course of [the claimant's] employment"). Yet, the Fifth Circuit held that a generic national publication notice with *no specific reference to asbestos* satisfied due process with respect to barring unmanifested claims. *Id.* at 158. The PI Law Firms may attempt to distinguish *Placid Oil* on the basis that there was not pending asbestos litigation, but in evaluating whether to set a bar date or whether claims should be discharged, there is no basis to

draw a bright line between parties who knew of potential asbestos exposure and those who happen to have been sued for such exposure. In either case, the debtor is aware of potential future claims. *See Alderwoods Gr'p Inc. v. Garcia*, 420 B.R. 609, 623 (Bankr. S.D. Fla. 2009) (holding that publication notice in that case was insufficient where "although no formal claims had been filed against [the debtor] before the Effective Date of the plan . . . [the debtor] was aware of [the predicates for claims] that existed at the time.").

15. The PI Law Firms may also rely on *Waterman*, *In re Chateaugay Corp.*, 2009 WL 367490 (Bankr. S.D.N.Y. Jan. 14, 2009), *Castleman v. Liquidating Tr.*, 2007 WL 2492792 (N.D.N.Y. Aug. 28, 2007), and *Alderwoods* for the blanket proposition that a bar date cannot be set for future claims because such claims cannot be discharged when a debtor faces pending litigation. As an initial matter, these cases were decided in the *discharge* context, not in the context of setting a bar date. Indeed, bar dates were set for future claims in each case. In *Chateaugay* and *Castleman*, the courts found that claims could be discharged; in *Waterman* and *Alderwoods*, the courts ultimately determined that certain claims could not be discharged, but only after engaging in precisely the sort of fact-intensive analysis required by *Grossman's* and *Owens Corning*. Thus, those cases support the setting of a bar date and a future case-by-case analysis of due process issues.

16. To the extent *Waterman*, *Chateaugay*, *Castleman*, and *Alderwoods* are proffered as support for a blanket rule that due process for future claims cannot be satisfied if there is pending litigation and no future claims representative, such a categorical approach is inconsistent with the case-by-case approach required by *Grossman's* and *Owens Corning*. Nor would such a categorical approach be good law in the district in which *Waterman* and *Chateaugay* were decided: the same argument was advanced in *Gabauer*, where a bar date was set *and* the district court, on appeal, held that future claims had been discharged. 505 B.R. at 427. The Debtors are

9

not asking the Court to rule on due process or discharge today, but even if they were, *Waterman*, *Chateaugay*, *Castleman*, and *Alderwoods* do not alter the case-by-case approach established by *Grossman's* and *Owens Corning*.

17.　　Ultimately, the PI Law Firms' proposed blanket rule would have significant implications for the bankruptcy process—and not solely in the context of asbestos claims. Bar dates without carveouts for asbestos claims have, in fact, been entered in cases where some asbestos claims were listed on the debtors' schedules and statements. *See*, *e.g.*, *In re Furniture Brands Int'l, Inc.*, No. 13-12329 (CSS), ECF No. 350 (Bankr. D. Del. Oct. 10, 2013) (bar date applicable to all claims, asbestos litigation referenced in schedules); *In re Ormet Corp.*, No. 13-10334 (MFW), ECF No. 250 (Bankr. D. Del. Apr. 23, 2013) (same); *In re Overseas Shipholding Gr'p, Inc.*, No. 12-20000 (PJW) (Bankr. D. Del. Apr. 10, 2013) (bar date applicable to all claims, schedules included at least one pending asbestos litigation, and an asbestos law firm filed a proof of claim asserting 3,500 asbestos claims that were ultimately disallowed as time-barred); *In re Lyondell Chem. Co.*, No. 09-10023 (REG) (Bankr. S.D.N.Y. Apr. 16, 2009) (bar date applicable to all claims, asbestos claims referenced in schedules).[6]  Given that asbestos claims are sometimes identified as personal injury claims, it is likely that there are other such cases.

18.　　Notably, in *In re Solutia Inc.*, No. 03-17949 (PCB), ECF No. 1475 (Bankr. S.D.N.Y.), asbestos claims were specifically addressed in the bar date motion and order. Legacy tort claims ultimately rode through the bankruptcy process in *Solutia*, but the *heavily negotiated* settlement that resulted in that treatment, which was unique to the "spin off" factual scenario presented in *Solutia*, was struck *after* the bar date was set. As discussed in the Reply and at the August 13 hearing, *Specialty Products* progressed the same familiar arc discussed above: the

---

[6]　Because of the voluminous nature of the materials cited herein, such orders are not attached to this brief. Copies of these materials are available upon request of the Debtors' counsel.

court approved a bar date, but a plan was ultimately proposed that did not rely on the bar date. *Solutia* and *Specialty Products* each stand for the proposition that a debtor should be allowed to *set* a bar date and negotiate the resolution of claims against it simultaneously.

19. Moreover, the logical extension of the PI Law Firms' argument is that any debtor that has potentially harmful products in the stream of commerce—anything that could lead to any future injury, as long as the debtor is aware of that potential injury—would be required to carve out future claims from the bar date and claims process, regardless of the facts of any particular situation and regardless of the level of process provided. Such a blanket prohibition would also infect free and clear findings in sales under section 363 of the Bankruptcy Code. *See*, *e.g.*, *In re Grunman Olson Indus., Inc.*, 467 B.R. 694, 708–09 (S.D.N.Y. 2012) (applying categorical approach that is inconsistent with *Grossman's* and *Owens Corning* to hold that free and clear findings did not prevent a future claimant from bringing a successor liability claim against a purchaser).

20. Congress, rather than the courts, is the appropriate branch of government to enact a sweeping rule that would effectively invalidate bar dates set in previous cases and have fundamental implications for the bankruptcy process as a whole in future cases. Unless Congress establishes such a rule, the courts should engage in the case-by-case analysis required by *Grossman's* and *Owens Corning*.

### III.   Due Process Should Not Be Determined Prospectively.

21. Under *Grossman's*, an unmanifested asbestos claim is a "claim" subject to the bar date process. 607 F.3d at 125 (holding that prepetition exposure to asbestos gave rise to a claim notwithstanding the fact that injuries had not manifested). The PI Law Firms' asserted basis to avoid a bar date for such claims is that due process with respect to unmanifested asbestos claims can never be satisfied by publication notice. Such a ruling would create new law and would be

11

inconsistent with the case-by-case, fact-intensive, *post hoc* analysis required by *Grossman's* and *Owens Corning*. *In re Grossman's*, 607 F.3d at 127–28 (remanding for due process evaluation and enumerating a non-exhaustive list of factors); *In re Owens Corning*, 679 F.3d at 108 & n.7 (reaffirming refusal to establish bright line rules in the due process context); *see also In re Lear Corp.*, 2012 WL 443951, at *9 ("[Claimants'] contentions that they did not receive constitutionally adequate notice of the Bar Dates are not ripe for decision. The question of adequacy of notice is a separate issue from the question whether a party possessed a 'claim.' *If a party who has a 'claim' asserts lack of adequate notice of the applicable Bar Date, its recourse should ordinarily be to request permission to file a late proof of claim. . . . [I]f any of the [claimants] desire to file a late proof of claim and assert a right to do so because of constitutionally inadequate notice, nothing in this decision precludes such action*.") (emphasis added) (*citing Chemetron Corp. v. Jones*, 72 F.3d 341, 349–50 (3d Cir. 1995) (affirming that publication notice was sufficient but remanding for additional consideration of whether excusable neglect standard had been satisfied)).

22.   Underscoring that a case-by-case, fact-intensive, *post hoc* analysis is required, a Delaware district court recently reversed a bankruptcy court order that prospectively blessed the due process provided by a publication notice. *See In re New Century TRS Holdings, Inc.*, _ F. Supp. 2d _, 2014 WL 4100749 (D. Del. Aug. 20, 2014) (holding that, on the particular facts at bar, "the adequacy of the notice provided [] has not been meaningfully explored and likely was not reasonably calculated to apprise appellants of the bar date").

23.   Not all unmanifested claimants will be similarly situated. Indeed, a large number of potential claimants will receive direct notice based on the Debtors' search of their records. The Debtors ultimately shoulder the risk that a later court holds that a particular claimant was not afforded due process under the particular circumstances. But the factual differences among

potential claimants preclude any prospective ruling that due process cannot be satisfied with respect to unmanifested asbestos claims as a matter of law.

WHEREFORE, the Debtors respectfully request that the Court overrule the Objection, enter the bar date order, and grant such other relief as it deems necessary and proper under the circumstances.

Dated: September 9, 2014
      Wilmington, Delaware

*/s/ Jason M. Madron*
**RICHARDS, LAYTON & FINGER, P.A.**
Mark D. Collins (No. 2981)
Daniel J. DeFranceschi (No. 2732)
Jason M. Madron (No. 4431)
920 North King Street
Wilmington, Delaware 19801
Telephone:   (302) 651-7700
Facsimile:   (302) 651-7701
Email:   collins@rlf.com
       defranceschi@rlf.com
       madron@rlf.com

-and-

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Richard M. Cieri (admitted *pro hac vice*)
Edward O. Sassower, P.C. (admitted *pro hac vice*)
Stephen E. Hessler (admitted *pro hac vice*)
Brian E. Schartz (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022-4611
Telephone:   (212) 446-4800
Facsimile:   (212) 446-4900
Email:   richard.cieri@kirkland.com
       edward.sassower@kirkland.com
       stephen.hessler@kirkland.com
       brian.schartz@kirkland.com

-and-

James H.M. Sprayregen, P.C. (admitted *pro hac vice*)
Chad J. Husnick (admitted *pro hac vice*)
Steven N. Serajeddini (admitted *pro hac vice*)
300 North LaSalle
Chicago, Illinois 60654
Telephone:   (312) 862-2000
Facsimile:   (312) 862-2200
Email:   james.sprayregen@kirkland.com
       chad.husnick@kirkland.com
       steven.serajeddini@kirkland.com

Proposed Co-Counsel to the Debtors and Debtors in Possession