IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) Case No. 14-10979 (CSS) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |
| | ) **Re: D.I. 1683, 1758, 1965** |

**REPLY OF ENERGY FUTURE HOLDINGS CORP., *ET AL.*,
TO THE OBJECTIONS OF CSC TRUST COMPANY
OF DELAWARE TO THE DEBTORS' MOTION FOR ENTRY OF
AN ORDER EXTENDING THE DEBTORS' EXCLUSIVE PERIODS
TO FILE A CHAPTER 11 PLAN AND SOLICIT ACCEPTANCES
THEREOF PURSUANT TO SECTION 1121 OF THE BANKRUPTCY CODE**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") file this reply (this "Reply") in support of the *Motion of Energy Future Holdings Corp., et al., for Entry of an Order Extending the Debtors' Exclusive Periods to File a Chapter 11 Plan and Solicit Acceptances Thereof Pursuant to Section 1121 of the Bankruptcy Code* [D.I. 1683] (the "Exclusivity Motion") and in response to the *Limited Objection of CSC Trust Company of Delaware, as Indenture Trustee, to Debtors' Motion for Extension of Exclusivity Periods* [D.I. 1758] (the "Initial Objection") and *Supplemental Limited Objection of CSC Trust Company of Delaware, as Indenture Trustee, to Debtors' Motion for Extension of Exclusivity Periods* [D.I. 1965] (the "Supplemental Objection" and, together with the Initial Objection, the

---

[1] The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, for which joint administration has been granted, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' proposed claims and noticing agent at http://www.efhcaseinfo.com.

"Objections").[2] In response to the Objections, and in further support of the Exclusivity Motion, the Debtors respectfully state as follows.

## Reply

1. As an initial matter, the Objections mischaracterize several facts regarding the Exclusivity Motion. The Supplemental Objection states that the Debtors have requested an extension of exclusivity through April 2015. That is not the case: the Debtors seek the exclusive right to file a *plan* until *February* 2015 (*i.e.*, an 180-day extension), with the exclusive solicitation period *ending* in April 2015 (*i.e.*, 60 days following the filing of a plan). Moreover, the Objections create an inaccurate link between the process of marketing an investment to obtain the equity in, and/or assets of, reorganized EFH or its direct and indirect subsidiaries, including EFIH, but excluding EFCH, TCEH, and TCEH's direct and indirect subsidiaries (the "EFH Transaction") and exclusivity. Specifically, the CSC Supplemental Objection notes that the Debtors indicated they would be developing a "bidding process" *in connection with* the exclusivity bridge order the Court entered on August 11, 2014, extending exclusivity until September 18, 2014 (the "Bridge Order").[3] This is not true. The Bridge Order is a very succinct, two-page order that does not tie exclusivity to *any* restructuring initiative, but merely extends exclusivity to September 18, 2014.[4]

---

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Objections or the Exclusivity Motion, as applicable.

[3] *See Bridge Order Extending the Exclusive Periods During Which Only the Debtors May File a Chapter 11 Plan and Solicit Acceptances Thereof* [D.I. 1802].

[4] Nevertheless, and as discussed below, the Debtors have been actively developing a comprehensive process with respect to the EFH Transaction.

2.     Apart from these misstatements in the Objections, the Debtors believe that the Court should deny CSC's request and approve the Exclusivity Motion for at least the following three reasons:

3.     *First*, the Debtors' request is wholly expected and appropriate given the size and complexity of these chapter 11 cases. The Debtors have nearly $49 billion in liabilities, spread across 71 separate entities and a number of separate secured and unsecured debt silos. As such, the Debtors' chapter 11 cases constitute the largest operating company to file for bankruptcy in the United States Bankruptcy Court for the District of Delaware and the seventh largest chapter 11 case filed in history (by liabilities).

4.     Viewed from this perspective, the Debtors' request is well in line with exclusivity requests approved in other "mega" cases, as illustrated by the following table:

| Case | Approx. Liabilities ($ bil) | Approximate Initial Extension |
| --- | --- | --- |
| Lehman Brothers Holdings Inc. No. 08-13555 (JMP) (Bankr. S.D.N.Y. Jan. 15, 2009) | 613.0 | 180 days |
| AMR Corporation No. 11-15463 (SHL) (Bankr. S.D.N.Y. Mar. 22, 2012) | 29.5 | 180 days |
| Delta Air Lines, Inc. No. 05-17923 (PCB) (Bankr. S.D.N.Y. Jan. 5, 2006) | 28.2 | 180 days |
| General Growth Properties, Inc. No. 09-11977 (ALG) (Bankr. S.D.N.Y. July 28, 2009) | 27.2 | 195 days |
| Calpine Corp. No. 05-60200 (BRL) (Bankr. S.D.N.Y. Apr. 11, 2006) | 22.5 | 255 days |
| Delphi Corporation No. 05-44481 (RDD) (Bankr. S.D.N.Y. Jan. 6, 2006) | 22.1 | 180 days |
| Capmark Financial Group Inc. No. 09-13684 (CSS) (Bankr. D. Del. Feb. 19, 2010) | 21.0 | 220 days |
| Northwest Airlines Corporation No. 05-17930 (ALG) (Bankr. S.D.N.Y. Jan 10, 2006) | 17.9 | 180 days |

| Case | Approx. Liabilities ($ bil) | Approximate Initial Extension |
|---|---|---|
| Mirant Corporation<br>No. 03-46591 (DML) (Bankr. N.D.Tex. Dec. 9, 2003) | 11.4 | 170 days |

5.      *Second*, other than with respect to CSC, the Debtors have reached agreement with all of their major stakeholders regarding the relief the Debtors requested in the Exclusivity Motion. The notes for which CSC serves as indenture trustee have already been repaid in full through the EFIH First Lien DIP Facility, and the Debtors and CSC are in active litigation regarding whether CSC's asserted makewhole claims under the applicable indentures should be allowed. If CSC is successful in the pending makewhole litigation, the Debtors will satisfy their makewhole obligations as ordered by the Court. Accordingly, the Debtors believe that CSC's interests in these chapter 11 cases have largely been addressed through the EFIH First Lien DIP Facility and the pending makewhole litigation, and the relief that the Debtors seek in the Exclusivity Motion does not materially affect CSC's interests.

6.      *Third*, the Debtors have been very productive during the first 120 days of these chapter 11 cases and fully expect to continue those efforts in the next phase of their reorganization. In order to do that, however, the Debtors require adequate time to achieve their goals.

7.      In the first 90 days of these chapter 11 cases, the Debtors centered their efforts on: (a) stabilizing their operations (through nearly 30 Court orders granting operational relief); (b) maximizing liquidity (through the TCEH Cash Collateral Order, which provides the Debtors with access to cash collateral for 18 months without onerous milestones, and the TCEH DIP Facility, which provides the Debtors with $4.475 billion in available liquidity); (c) refinancing

RLF1 10805633v.1

high interest rate EFIH debt with lower interest rate EFIH First Lien DIP Financing and settling certain makewhole claims of EFIH first lien creditors; and (d) setting the stage for a global restructuring through discussions with stakeholders and regulatory authorities.

8.  If the Court grants the Debtors' extension request, the Debtors will use the additional time to further develop a restructuring transaction with the input of their stakeholders. For example, and although the Debtors believe the Objections inappropriately link the auction process to the relief requested in the Exclusivity Motion, the Debtors *have* made progress on that front as well. In advance of the hearing on the Exclusivity Motion, the Debtors believe they will have addressed a number of CSC's concerns through various discussions with their key creditor groups as well as strategic and financial bidders, all in advance of filing a motion with the Court seeking approval of bidding procedures with respect to the EFH Transaction that will establish a timeline for the remainder of 2014 and into 2015.[5] At the same time, the Debtors have been, and will continue to be, actively engaged in global plan negotiations.

9.  Conversely, CSC's proposed 60-day extension would waste estate and judicial resources. Not only is it clear that the Debtors' restructuring efforts require more than an additional 60 days, CSC's approach would require the Debtors to file another request to extend exclusivity within the next 30 days, respond to potential objections to that request, and, to the extent the Debtors cannot resolve those objections (as they have worked very hard to do with respect to the Exclusivity Motion), litigate that motion before the Court.

10. Rather than spend additional and unnecessary time and effort negotiating and potentially litigating over an exclusivity extension that all major stakeholders agree is

---

[5] Although CSC's interests in these cases have been diminished, the Debtors have kept, and will continue to keep, CSC apprised of their restructuring initiatives. In fact, during the week following CSC's filing of its supplemental objection, the Debtors' advisors contacted CSC's advisors to address some of their concerns regarding the Debtors' anticipated process regarding the EFH Transaction.

appropriate, the Debtors firmly believe that estate and judicial resources are best spent on ensuring the development and implementation, on an expeditious basis, of a chapter 11 restructuring that will benefit all stakeholders.

## Conclusion

For the reasons set forth above and in the Exclusivity Motion, the Debtors respectfully request that the Court deny the Objections and grant the relief requested in the Exclusivity Motion.

*[Remainder of page intentionally left blank.]*

Dated: September 11, 2014
       Wilmington, Delaware

/s/ _____

**RICHARDS, LAYTON & FINGER, P.A.**
Mark D. Collins (No. 2981)
Daniel J. DeFranceschi (No. 2732)
Jason M. Madron (No. 4431)
920 North King Street
Wilmington, Delaware 19801
Telephone:    (302) 651-7700
Facsimile:    (302) 651-7701
Email:    collins@rlf.com
    defranceschi@rlf.com
    madron@rlf.com

-and-

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Richard M. Cieri (admitted *pro hac vice*)
Edward O. Sassower, P.C. (admitted *pro hac vice*)
Stephen E. Hessler (admitted *pro hac vice*)
Brian E. Schartz (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022-4611
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900
Email:    richard.cieri@kirkland.com
    edward.sassower@kirkland.com
    stephen.hessler@kirkland.com
    brian.schartz@kirkland.com

-and-

James H.M. Sprayregen, P.C. (admitted *pro hac vice*)
Chad J. Husnick (admitted *pro hac vice*)
Steven N. Serajeddini (admitted *pro hac vice*)
300 North LaSalle
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200
Email:    james.sprayregen@kirkland.com
    chad.husnick@kirkland.com
    steven.serajeddini@kirkland.com

Proposed Co-Counsel to the Debtors and Debtors in Possession

RLF1 10805633v.1