# Exhibit A

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | Case No. 14-10979 (CSS) |
| Debtors. | (Jointly Administered) |

## ORDER APPROVING THE STIPULATION BY AND AMONG LUMINANT GENERATION COMPANY LLC, LUMINANT MINING COMPANY LLC, SANDOW POWER COMPANY LLC, AND ALCOA INC.

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors"), for entry of an order (this "Order"), authorizing the Debtor Parties to enter into and perform under the Stipulation with Alcoa, providing for the netting and set off of certain claims arising under and relating to the Alcoa Agreements, all as set forth in the Motion; and upon the Frenzel Declaration; and the Court having found that it has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and the Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and the Court having found that venue of this case and the Motion in this district is proper pursuant to §§ 1408 and 1409; and the Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and the Court having found that the Stipulation was extensively negotiated in good faith and at arms' length by the Parties; and the

---

[1] The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, for which joint administration has been granted, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' proposed claims and noticing agent at http://www.efhcaseinfo.com.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion. In the event of any inconsistency between this Order and the Stipulation, the Stipulation shall control.

Court having found that the Stipulation and the transactions contemplated therein are fair and reasonable; and the Court having found that the Debtors provided appropriate notice of the Motion and the opportunity for a hearing on the Motion under the circumstances; and the Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing, if any, before the Court (the "Hearing"); and the Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before the Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.      The Motion is granted as set forth herein.

2.      Pursuant to sections 363 and 553 of the Bankruptcy Code, the Stipulation attached hereto as **Exhibit 1** is approved in all respects, and Alcoa, Luminant Mining, Luminant Generation, and SPC are authorized to enter into and perform all of the obligations thereunder, to execute and deliver all such other documents or instruments related to the Stipulation, and to take such other action as may be necessary or appropriate to implement and effectuate the transactions contemplated therein.

3.      The automatic stay imposed by 11 U.S.C. § 362(a) is hereby modified to the extent necessary for the Parties to effectuate the Stipulation and the transactions contemplated therein, and shall not be modified except as expressly set forth herein and in the Stipulation.

4.      Nothing in the Stipulation or this Order shall affect the right of the Debtor Party acting as paying agent to be reimbursed by the Debtor Party obligor. Any such intercompany claims shall be treated in accordance with the *Final Order (A) Authorizing the Debtors to (I) Continue Using their Existing Cash Management System, (II) Maintain Existing Bank Accounts and Business Forms, and (III) Continue Using Certain Investment Accounts; (B) Authorizing*

*Continued Intercompany Transactions and Netting of Intercompany Claims; and (C) Granting Postpetition Intercompany Claims Administrative Expense Priority* [D.I. 801]; provided, however, that nothing in the Stipulation or this Order shall obligate the Debtors (other than the Debtor Parties) to fund any payments to Alcoa contemplated by the Stipulation, including, for the avoidance of doubt, Energy Future Holdings Corp., Energy Future Intermediate Holding Company LLC, or EFIH Finance Inc.

5.      Notwithstanding the relief granted in this Order, nothing in this Order shall be deemed:  (a) an admission as to the validity, amount, type, or priority of any particular claim against any Party, including administrative expense claims under section 503(b) of the Bankruptcy Code (except as set forth in section 2.09 of the Stipulation); (b) with respect to any claim, a change in the priority level existing in the absence of the Stipulation; (c) a promise or requirement to pay any particular claim other than those specifically agreed to in this Stipulation; (d) a waiver of any Party's right to dispute or assert any particular claim on any grounds, including, without limitation, any right to assert a claim based on a breach or default of any of the Alcoa Agreements; (e) a waiver or limitation of any of the rights, claims, or potential causes of action of the Parties under the Bankruptcy Code or any other applicable law, including those relating to the Alcoa Agreements; (f) a waiver of Alcoa's claims, right to payment, setoff or recoupment rights for amounts related to mechanics' liens asserted against the Debtor Parties; (g) a waiver of any claims with respect to the writedowns identified in those certain letters of John P. Holsinger of Alcoa to Tiffany L. Silvey of Luminant dated March 17, 2014 and Tiffany L. Silvey of Luminant to John P. Holsinger of Alcoa on  January 16, 2014 and March 4, 2014 (the "Lignite Dispute"); (h) a waiver of any claims with respect to or arising from the lignite inventory described in the Lignite Inventory Agreement between Alcoa, SPC, and Luminant

Mining dated August 31, 2007; (i) a request or authorization to assume or reject any of the Alcoa Agreements or other agreements under section 365 of the Bankruptcy Code; (j) a waiver of any Party's rights to assert that any other Party is in breach or default of the Alcoa Agreements; or (k) an admission that the Alcoa Agreements are integrated.

6.    All Parties reserve all rights, including Alcoa's rights to assert that the Alcoa Agreements are integrated, object to the rejection, assumption, and/or assignment of any of the Alcoa Agreements, and move to compel the rejection of any of the Agreements.  The Parties further reserve all other rights, remedies, and objections under applicable law, including but not limited to the exercising of any rights to setoff, offset, and recoupment related to any Party's mutual postpetition claims and/or debts.

7.    Notwithstanding anything in this Order to the contrary, this Order shall not (a) constitute a settlement of the Lignite Dispute, (b) affect the rights, claims, causes of action or defenses of the Parties with respect to the Lignite Dispute, or (c) create, or entitle any of the Parties to assert, any rights to payment, setoff, or recoupment related to the Lignite Dispute against amounts payable under sections 2.01 through 2.05 of the Stipulation.

8.    Commencing with the month following the Effective Date, the Debtors shall provide a summary on a monthly basis to advisors for the Creditors' Committee of Postpetition Transactions subject to the Stipulation, including an accounting of net receivables and net payables owing by and among the Debtor Parties and Alcoa and any cash settlements of such net amounts for the preceding month; *provided, however*, that the Debtors' reporting obligations under this paragraph with respect to any such Postpetition Transactions shall terminate upon the earlier of the date that (a) the relevant Alcoa Agreement is assumed, rejected, or terminated or (b) the Stipulation is terminated.

9.     Notice of the Motion as provided therein shall be deemed good and sufficient and the requirements of the Local Bankruptcy Rules are satisfied by such notice.

10.    The requirements set forth in Local Rules 9013-1(a) and 9013-1(b) are satisfied.

11.    Notwithstanding the possible applicability of Bankruptcy Rules 6004(h), 7062, 9014 or otherwise, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

12.    All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

13.    The Debtors and Alcoa are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Motion.

14.    The Court retains exclusive jurisdiction, to the extent set forth in the Stipulation, with respect to all matters arising from or related to the implementation of this Order.

Wilmington, Delaware
Dated: _____, 2014

_____
THE HONORABLE CHRISTOPHER S. SONTCHI
UNITED STATES BANKRUPTCY JUDGE

# Exhibit 1

*EXECUTION VERSION*

## STIPULATION

This stipulation (the "Stipulation") is entered into as of August 26, 2014 by and between (a) Luminant Generation Company LLC, a limited liability company organized under the laws of the State of Texas ("Luminant Generation"), (b) Luminant Mining Company LLC, a limited liability company organized under the laws of the State of Texas ("Luminant Mining"), and (c) Sandow Power Company LLC, a limited liability company organized under the laws of the State of Texas ("SPC"), on the one hand, and (d) Alcoa Inc. ("Alcoa"), a corporation organized under the laws of the Commonwealth of Pennsylvania, on the other hand. Luminant Generation, Luminant Mining, SPC, and Alcoa shall be referred to, individually, as a "Party," and collectively, as the "Parties."

## RECITALS

WHEREAS, on April 29, 2014 (the "Petition Date"), Luminant Generation, Luminant Mining, SPC and their affiliated debtors (collectively, the "Debtors") filed voluntary petitions with the U.S. Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), and the chapter 11 cases of the Debtors are jointly administered under case no. 14-10979 (CSS) (the "Bankruptcy Cases"), and the Debtors have remained in possession of their properties and continue to operate their businesses as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code;

WHEREAS, the Parties have agreed, for the purposes of this Stipulation, to bifurcate the payment obligations owed to each other under the Agreements between the pre- and postpetition periods as of April 28, 2014;

WHEREAS, each of the Parties is party to one or more of the following agreements relevant to this Stipulation: (i) Contract Mining Agreement dated August 31, 2007, as amended from time to time (the "CMA"), between Alcoa, SPC and Luminant Mining; (ii) Ground Lease dated August 31, 2007 (the "Ground Lease"), between Alcoa and Luminant Mining; (iii) Sandow Unit 4 Agreement dated August 13, 1976, as amended from time to time and together with various related agreements and amendments thereto (the "Unit 4 Agreement"), between Alcoa and Luminant Generation; (iv) Amended and Restated Common Facilities Agreement dated August 10, 2012, as amended from time to time (the "CFA"), between Alcoa, Luminant Generation, and SPC; (v) Letter Agreement - Sandow Building 200 Rental dated January 31, 2009 (the "Building 200 Lease") between Alcoa and SPC; (vi) Agreement Regarding Ownership of Lignite Interest dated August 15, 2007 (the "Lignite Agreement"), between Alcoa and SPC; and (v) Lignite Mining Lease dated August 31, 2007 (the "Mining Lease"), between Alcoa and SPC. The CMA, Ground Lease, Unit 4 Agreement, CFA, Building 200 Lease, Lignite Agreement, Mining Lease, and any other related agreements shall be referred to collectively as the "Agreements."

WHEREAS, the parties to the CMA are Alcoa, SPC, and Luminant Mining. Under the CMA, Luminant Mining acts as a contract miner to mine lignite coal reserves at a lignite mine known as the "Three Oaks Mine" and mines and supplies lignite coal to Alcoa to

meet Alcoa's obligation to supply 100% of the fuel for an electric generation unit known as Sandow Unit 4 ("Unit 4");

WHEREAS, both Alcoa and Luminant Mining have payment obligations to the other under the CMA. Specifically, Luminant Mining invoices Alcoa for the cost of mining lignite at the Three Oaks Mine, including cost of capital and depreciation (the "Mining Operation Costs");

WHEREAS, pursuant to the Parties' historical practices, Alcoa invoices Luminant Mining each month for power used in Luminant Mining's lignite mining operations at the Three Oaks Mine (the "Mining Power Costs").

WHEREAS, the Parties agree that for the time period of April 1 through April 28, 2014, Alcoa owes Luminant Mining $5,168,320.08 for Mining Operation Costs, and Luminant Mining owes Alcoa $486,434.67 for Mining Power Costs;

WHEREAS, Alcoa and Luminant Mining are parties to the Ground Lease. The Ground Lease is a non-royalty bearing real property ground lease. Under the Ground Lease, Alcoa leases certain real property to Luminant Mining in connection with the CMA, and Luminant Mining makes payments to Alcoa for use of the leased premises (the "Ground Lease Obligations");

WHEREAS, the Parties agree that for the period of April 1 through April 28, 2014, Luminant Mining owes Alcoa approximately $89,344.27 for Ground Lease Obligations;

WHEREAS, the Parties agree that for the time period of (i) April 29 through May 31, 2014, Alcoa owes Luminant Mining an aggregate net payable of $11,163,993.69 (the "April/May Mining Net Payable") after netting the amounts Alcoa and Luminant Mining owe each other on account of Mining Operation Costs, Mining Power Costs, and Ground Lease Obligations; and (ii) for the time period of June 1 through June 30, 2014, Alcoa owes Luminant Mining a net payable of $7,250,091.80 (the "June Mining Net Payable") after netting the amounts Alcoa and Luminant Mining owe each other on account of Mining Operation Costs, Mining Power Costs, and Ground Lease Obligations;

WHEREAS, the parties to the Unit 4 Agreement are Alcoa and Luminant Generation. Under the Unit 4 Agreement, Alcoa supplies lignite coal to Luminant Generation, and Luminant Generation converts the lignite coal into electricity;

WHEREAS, under the Unit 4 Agreement, Alcoa supplies 100% of the lignite coal required to fuel the full operation of Unit 4. Alcoa invoices Luminant Generation for the cost of lignite used to generate Luminant Generation's portion of the power under the Unit 4 Agreement (the "Lignite Costs"). Luminant Generation invoices Alcoa on a monthly basis for Alcoa's portion of the expenses Luminant Generation incurs in operating Unit 4 (the "Operating Expenses");

WHEREAS, the parties agree that for the period of April 1 through April 28, 2014, Luminant Generation owes Alcoa approximately $1,140,904.00 for Lignite Costs and Alcoa owes Luminant Generation approximately $3,886,989.09 for Operating Expenses.

WHEREAS, under the Unit 4 Agreement, Alcoa is required to pay Luminant Generation an operating fee and certain other fees for cost of capital and depreciation (the "Luminant Fees"). Luminant Generation invoices Alcoa for the Luminant Fees on a monthly basis. Luminant Generation is also required to pay Alcoa for surplus power sold into the grid, as well as other fees based upon cost of capital and other specific items as set forth in the applicable agreements (the "Alcoa Fees");

WHEREAS, for the period of April 1 through April 28, 2014, Luminant Generation owes Alcoa approximately $9,688,654.00 for Alcoa Fees and Alcoa owes Luminant Generation $7,530,673.64 for Luminant Fees;

WHEREAS, Alcoa, Luminant Generation and SPC are parties to the CFA clarifying the ownership and duties of the parties with respect to various common areas and facilities. Under the CFA, Luminant Generation and SPC are required to pay Alcoa certain amounts for use of the common areas and facilities (the "CFA Obligations");

WHEREAS, Alcoa and SPC are parties to the Building 200 Lease. Under the Building 200 Lease, SPC is required to pay Alcoa for the rental of Building 200 for use as office space and related uses in support of SPC's power generation operations (the "Building 200 Obligations");

WHEREAS, the parties agree that for the period of April 1 through April 28, 2014, Luminant Generation owes Alcoa approximately $216,648.00 for CFA Obligations, and SPC owes Alcoa approximately $227,552.00 for CFA Obligations and $7,467.00 for Building 200 Obligations.

WHEREAS, the Parties agree that for the time period of (i) April 29 through May 31, 2014, Luminant Generation owes Alcoa an aggregate net payable of $7,759,353.97 (the "April/May Generation Net Payable") after netting the amounts Alcoa and Luminant Generation owe each other on account of Lignite Costs, Operating Expenses Luminant Fees, and that portion of the CFA Obligations attributable to Luminant Generation; and (ii) for the time period of June 1 through June 30, 2014, Luminant Generation owes Alcoa a net payable of $6,438,480.00 (the "June Generation Net Payable") after netting the amounts Alcoa and Luminant Generation owe each other on account of Lignite Costs, Operating Expenses Luminant Fees, and that portion of the CFA Obligations attributable to Luminant Generation;

WHEREAS, the parties to the Lignite Agreement are Alcoa and SPC. The Lignite Agreement establishes the ownership of lignite interests. Under the Lignite Agreement, Alcoa pays certain lignite royalties to SPC (the "Lignite Royalties");

WHEREAS, the parties agree that for the period of April 1 through April 28, 2014, Alcoa owes SPC approximately $329,188.00 for Lignite Royalties;

WHEREAS, the parties to the Mining Lease are Alcoa and SPC. Under the Mining Lease, SPC leases Alcoa's interest in certain lignite that is subject to the Lignite Agreement, and pays lignite mining royalties to Alcoa (the "Mining Royalties");

3

WHEREAS, the parties agree that for the period of March 1 through April 28, 2014, SPC owes Alcoa an aggregate of approximately $110,664.60 for Mining Royalties;

WHEREAS, the Parties agree that for the time period of (i) April 29 through May 31, 2014, Alcoa owes SPC an aggregate net payable of $33,877.50 (the "April/May SPC Net Payable") after netting the amounts Alcoa and SPC owe each other on account of Lignite Royalties, that portion of the CFA Obligations attributable to SPC, Building 200 Obligations, and Mining Royalties; and (ii) for the time period of June 1 through June 30, 2014, SPC owes Alcoa a net payable of $202,678.50 (the "June SPC Net Payable") after netting the amounts Alcoa and SPC owe each other on account of Lignite Royalties, that portion of the CFA Obligations attributable to SPC, Building 200 Obligations, and Mining Royalties;

WHEREAS, pursuant to the Parties' historical practices, Luminant Mining pays the Mining Royalties to Alcoa on behalf of SPC, and subsequently seeks reimbursement from SPC;

WHEREAS, prior to the Petition Date (defined below), the Parties historically would send a single wire payment under certain of the Agreements when the amounts owed under such Agreements and the Parties' historical practices were agreed upon by the Parties and owed on the same payment date; and

WHEREAS, the Debtors have determined that the compromise set forth herein is fair and reasonable, and in the best interests of the Debtors, the Debtors' estates and their creditors.

NOW, THEREFORE, in consideration for the mutual promises and covenants set forth herein, and for other good and valuable consideration, the Parties agree as follows:

**AGREEMENT**

**ARTICLE I**

**DEFINITIONS**

As used in this Stipulation, in addition to the terms otherwise defined herein, the following terms shall have the meanings set forth below (the definitions to be applicable to both the singular and plural form of each term defined if both forms of such term are used in this Stipulation).

Section 1.01.    "Applicable Payment Date" means:

(a)    with respect to postpetition net payables that have accrued during any postpetition month that are owing by and among Alcoa and Luminant Mining, as further described in section 2.02(a), the 4th Working Date of the month; or

(b)    with respect to postpetition net payables that have accrued during any postpetition month that are owing by and among Alcoa and Luminant Generation, or Alcoa and SPC, as described in sections 2.02(b) and 2.02(c), respectively, the 15th of the month.

4

Section 1.02. "Business Day" means any day other than a Saturday, a Sunday, or any other day on which banking institutions in New York, New York are required or authorized to close by law or executive order.

Section 1.03. "Effective Date" means the first Business Day on which all the conditions set forth in Section 3.01 hereof are satisfied.

## ARTICLE II

## NETTED PAYMENTS/SETOFFS

Section 2.01. Agreed Prepetition Netted Payments and Setoffs. The Parties hereby agree and stipulate that the Parties shall exercise their rights to net and/or set off valid prepetition debts between Alcoa and Luminant Generation, Alcoa and Luminant Mining, and Alcoa and SPC, as follows:

(a)    Luminant Mining.

(i)    For the period of April 1 through April 28, 2014, Alcoa and Luminant Mining agree that each is entitled to and will net and/or set off the $486,434.67 Luminant Mining owes to Alcoa for Mining Power Costs against the $5,168,320.08 Alcoa owes Luminant Mining for Mining Operation Costs; and

(ii)    for the period of April 1 through April 28, 2014, Alcoa and Luminant Mining agree that each is entitled to and will net and/or set off the net payable in paragraph 2.01(a)(i), above, against the $89,344.27 Luminant Mining owes to Alcoa for Ground Lease Obligations for a total net payable owed from Alcoa to Luminant Mining in the amount of $4,592,541.14 (the "Alcoa/Mining Net Payable").

(iii)    The Parties agree that Alcoa's prepetition entitlements described in this section 2.01(a) may only be satisfied by set off against the amounts described in this section 2.01(a) owed to Luminant Mining. Payment of the Alcoa/Mining Net Payable pursuant to section 2.06(a) shall constitute the full and final satisfaction of prepetition claims for Mining Power Costs, Mining Operation Costs, and Ground Lease Obligations that accrued during the period of April 1 through April 28, 2014, and the Parties shall have no further obligation to make any payment or satisfy any claim on account of the aforementioned claims in sections 2.01(a)(i) and (ii); *provided, however* that nothing contained in this section 2.01(a)(iii) may be construed as a release, waiver, or satisfaction of any claims, rights, or interests described in section 2.08 of this Stipulation.

(b)    Luminant Generation.

(i)    For the period of April 1 through April 28, 2014, Alcoa and Luminant Generation agree that each is entitled to and will net and/or set off the $1,140,904.00 Luminant Generation owes to Alcoa for Lignite Costs against the $3,886,989.09 Alcoa owes Luminant Generation for Operating Expenses;

(ii)    for the period of April 1 through April 28, 2014, Alcoa and Luminant

5

Generation agree that each is entitled to and will net and/or set off the $9,688,654.00 in Alcoa Fees that Luminant Generation owes to Alcoa against the prorated $7,530,673.64 in Luminant Fees that Alcoa owes to Luminant Generation; and

(iii)    for the period of April 1 through April 28, 2014, Alcoa and Luminant Generation agree that each is entitled to and will net and/or set off the net payables in paragraphs 2.01(b)(i) and (ii), above, against the $216,648.00 Luminant Generation owes Alcoa for CFA Obligations, for a total aggregate net payable from Alcoa owed to Luminant Generation in the amount of $371,456.73 (the "Alcoa/Generation Net Payable").

(iv)    The Parties agree that Alcoa's prepetition entitlements described in this section 2.01(b) may only be satisfied by set off against the amounts described in this section 2.01(b) owed to Luminant Generation.  Payment of the Alcoa/Generation Net Payable pursuant to section 2.06(a) shall constitute the full and final satisfaction of prepetition claims for Lignite Costs, Operating Expenses, Alcoa Fees, Luminant Fees, and CFA Obligations that accrued during the period of April 1 through April 28, 2014, and the Parties shall have no further obligation to make any payment or satisfy any claim on account of the aforementioned claims in sections 2.01(b)(i)-(iii); *provided, however* that nothing contained in this section 2.01(b)(iv) may be construed as a release, waiver, or satisfaction of any claims, rights, or interests described in section 2.08 of this Stipulation.

(c)    SPC.

(i)    For the period of April 1 through April 28, 2014, Alcoa and SPC agree that each is entitled to and will net and/or set off the $227,552.00 SPC owes to Alcoa for the CFA Obligations and $7,467.00 SPC owes Alcoa for Building 200 Obligations against the $329,188.00 Alcoa owes SPC for Lignite Royalties; and

(ii)    for the period of March 1 through April 28, 2014, Alcoa and SPC agree that each is entitled to and will net and/or set off the net payable in paragraph 2.01(c)(i), above, against a portion of the $110,664.60 SPC owes to Alcoa for Mining Royalties, resulting in the full satisfaction of all prepetition claims of SPC against Alcoa described in section 2.02(c)(i), and a total aggregate net allowed prepetition unsecured claim of Alcoa against SPC in the amount of $16,495.60 (the "Allowed Alcoa/SPC Net Claim"), and Alcoa shall not be required to file a proof of claim in the Bankruptcy Cases of SPC or any of its affiliates for the Allowed Alcoa/SPC Net Claim, such Allowed Alcoa/SPC Net Claim being deemed an allowed unsecured claim against SPC.

(iii)    The Parties agree that Alcoa's prepetition entitlements described in this section 2.01(c) may only be satisfied by set off against the amounts described in this section 2.01(c) owed to SPC.  Setoff of the amounts described in section 2.01(c)(i)-(ii) shall constitute the full and final satisfaction of prepetition claims for CFA Obligations, Building 200 Obligations, and Lignite Royalties that accrued during the period of April 1 through April 28, 2014 and prepetition claims for Mining Royalties that accrued during the period of March 1 through April 20, 2014, up to the amount of Alcoa's prepetition

exposure to SPC for Lignite Royalties during such periods, and the Parties shall have no further obligation to make any payment or satisfy any claim on account of the aforementioned claims in section 2.01(c)(i)-(ii) other than as provided therein; *provided, however* that nothing contained in this section 2.01(c)(iii) may be construed as a release, waiver, or satisfaction of the Allowed Alcoa/SPC Net Claim or any claims, rights, or interests described in section 2.08 of this Stipulation.

Section 2.02.   Postpetition Netted Payments and Setoffs.   The Parties hereby agree and stipulate that the Parties shall exercise their rights to net and/or set off valid, mutual, postpetition debts arising under the Agreements between Alcoa and Luminant Generation, Alcoa and Luminant Mining, and Alcoa and SPC, for each monthly period following the Petition Date commencing with May 2014, as follows:

(a)    Luminant Mining.

(i)    Alcoa and Luminant Mining agree that each will net and/or set off the amount Luminant Mining owes to Alcoa for Mining Power Costs against the amount Alcoa owes Luminant Mining for Mining Operation Costs; and

(ii)    Alcoa and Luminant Mining agree that each will net and/or set off the net payable in paragraph 2.02(a)(i) against the amount Luminant Mining owes to Alcoa for Ground Lease Obligations.

(b)    Luminant Generation.

(i)    Alcoa and Luminant Generation agree that each will net and/or set off the amount Luminant Generation owes to Alcoa for Lignite Costs against the amount Alcoa owes Luminant Generation for Operating Expenses.

(ii)    Alcoa and Luminant Generation agree that each will net and/or set off the Alcoa Fees that Luminant Generation owes to Alcoa against the Luminant Fees that Alcoa owes to Luminant Generation; and

(iii)    Alcoa and Luminant Generation agree that each will net and/or set off against the net payables in paragraphs 2.02(b)(i) and (ii) the amount Luminant Generation owes Alcoa for CFA Obligations.

(c)    SPC.

(i)    Alcoa and SPC agree that each will net and/or set off the amount SPC owes to Alcoa for CFA Obligations and Building 200 Obligations against the amount Alcoa owes SPC for Lignite Royalties; and

(ii)    Alcoa and SPC agree that each will net and/or set off the net payable in paragraph 2.02(c)(i) against the amount SPC owes to Alcoa for Mining Royalties.

Section 2.03.   Monthly Postpetition Net Payables.   For postpetition payments other than those set forth in sections 2.04 and 2.05, amounts that accrue during any postpetition month under the

7

Agreements that are owed by and among Alcoa and each Debtor Party shall be netted and/or set off in accordance with section 2.02, and any remaining unpaid balances shall be paid on the Applicable Payment Date of the following month in accordance with the payment instructions in section 2.06(b) and/or 2.06(d), as applicable; *provided, however*, that any net payables related to accrued amounts that are subject to setoff and/or netting prior to the Effective Date (other than the amounts specified in section 2.04 and 2.05 of this Stipulation) shall become due and payable on the next Applicable Payment Date following the Effective Date.

Section 2.04.  Outstanding Postpetition April Net Payables.  Amounts owed by and among the Parties under the Agreements and section 2.02 of this Stipulation for April 29 and 30, 2014, shall be reflected in invoices for amounts accrued and owed by and among the Parties during the month of May, 2014, and shall be treated in accordance with section 2.05 as though such amounts had accrued during the month of May, 2014.

Section 2.05.  May and June 2014 Outstanding Postpetition Net Payables.  Amounts owed by and among the Parties under the Agreements and section 2.02 of this Stipulation for the period between May 1, 2014 (including April 29 and 30, 2014) through June 30, 2014 shall be treated in accordance with section 2.02 and shall be paid in accordance with section 2.06(a) and/or 2.06(c) within five (5) Business Days after the Effective Date.

Section 2.06.  Payment.

(a)    Payments by Alcoa on Account of Prepetition Net Payables and Outstanding Postpetition Net Payables.  Subject to sections 2.01, 2.02, 2.04, 2.05, and 2.07, within five (5) Business Days after the Effective Date, Alcoa shall pay (i) the Alcoa/Mining Net Payable and the Alcoa/Generation Net Payable to the Debtors in the total amount of $4,963,998.87 and (ii) the April/May and June Mining Net Payables and the April/May SPC Net Payable to the Debtors in the total amount of $18,447,962.99, for a total payment from Alcoa to the Debtor Parties in the aggregate amount of $23,411,960.86 in U.S. dollars, by wire transfer, as follows:

> Bank:  JPMorgan Chase Bank TX
>
> ABA #:  021000021 (Wire); 111000614 (ACH)
>
> Account Name:  Texas Competitive Electric Holdings Company LLC
>
> Account #:  747480481

(b)    Payments by Alcoa on Account of Monthly Postpetition Net Payables.  Subject to sections 2.02, 2.03 and 2.07(b), any outstanding postpetition net payables to be paid under section 2.02 and 2.03 by Alcoa to Luminant Generation, Luminant Mining and/or SPC, respectively, shall be paid to the applicable Debtor on the Applicable Payment Date(s) of each month as follows:

> Bank:  JPMorgan Chase Bank TX
>
> ABA #:  021000021 (Wire); 111000614 (ACH)

8

Account Name:  Texas Competitive Electric Holdings Company LLC

Account #:  747480481

(c)      Payments by the Debtor Parties on Account of Outstanding Postpetition Net Payables.  Subject to sections 2.01, 2.02, 2.04, 2.05, and 2.07(b), within five (5) Business Days after the Effective Date, Luminant Generation shall pay the April/May and June Generation Net Payables to Alcoa in the total amount of $14,197,833.97 and SPC shall pay the June Alcoa/SPC Net Payable to Alcoa in the total amount of $202,678.50, for a total payment from the Debtor Parties to Alcoa in the aggregate amount of $14,400,512.47 in U.S. dollars, by wire transfer, as follows:

Bank:  BNY Mellon, Pittsburgh, PA

ABA #:  043-000-261

Account Name:  For Benefit of Alcoa Inc.

Swift #:  MELNUS3P

Account #:  118-3208

Ref:  Rockdale Energy

(d)      Payments by the Debtor Parties on Account of Monthly Postpetition Net Payables.  Subject to sections 2.02, 2.03 and 2.07(b), any outstanding postpetition net payables to be paid under section 2.02 and 2.03 by Luminant Generation, Luminant Mining, and/or SPC, respectively, to Alcoa shall be paid to Alcoa in U.S. dollars by wire transfer on the Applicable Payment Date(s) of each month as follows:

Bank:  BNY Mellon, Pittsburgh, PA

ABA #:  043-000-261

Account Name:  For Benefit of Alcoa Inc.

Swift #:  MELNUS3P

Account #:  118-3208

Ref:  Rockdale Energy

Section 2.07.   Consolidated Wire Transfers.

(a)      Payment of the total net payables described in sections 2.01(a), 2.01(b), and 2.01(c) by a consolidated wire transfer in accordance with section 2.06(a) shall not constitute or be deemed the netting and/or setting off of any one such total net payable against any other total net payable described in section 2.01.

9

(b)     Payment of the total net payables described in sections 2.02(a), 2.02(b), and 2.02(c) by one or more consolidated monthly wire transfer in accordance with section 2.06(b), 2.06(c), and/or 2.06(d) shall not constitute or be deemed the netting and/or setting off of any one such total net payable against any other total net payable described in section 2.02; *provided, however,* that in the event of a dispute with respect to the amount of any one total net payable between Alcoa and a Debtor Party, as described in section 2.02(a), 2.02(b), or 2.02(c), the Parties shall not withhold payments relating to undisputed amounts owing between Alcoa and such Debtor Party, or any other undisputed total net payable described in section 2.02 between Alcoa and the other Debtor Parties.  Any Party may request at any time that the Parties commence paying the total net payables described in sections 2.02(a), 2.02(b), and 2.02(c) pursuant to separate wire transfers in accordance with section 2.06(b) and/or 2.06(d), as applicable.

(c)     Payment by Alcoa of the outstanding total net payables owed to the Debtor Parties under sections 2.01, 2.04, and 2.05 pursuant to section 2.06(a), net of the total net payables owed by the Debtor Parties to Alcoa under sections 2.04 and 2.05 (and that would otherwise be payable pursuant to section 2.06(c)), by a consolidated wire transfer shall not constitute or be deemed the netting and/or setting off of any one such total net payable against any other total net payable described in sections 2.01, 2.04, and 2.05.

Section 2.08.  Reservation of Rights.  Nothing in this Stipulation shall constitute or be deemed (a) an admission as to the validity, amount, type, or priority of any particular claim against any Party, including administrative expense claims under section 503(b) of the Bankruptcy Code (except as set forth in section 2.09); (b) with respect to any claim, a change in the priority level existing in the absence of this Stipulation; (c) a promise or requirement to pay any particular claim other than those specifically agreed to in this Stipulation; (d) a waiver of any Party's right to dispute or assert any particular claim on any grounds, including, without limitation, any right to assert a claim based on a breach or default of any of the Agreements; (e) a waiver or limitation of any of the rights, claims, or potential causes of action of the Parties under the Bankruptcy Code or any other applicable law, including those relating to the Agreements; (f) a waiver of Alcoa's claims, right to payment, setoff or recoupment rights for amounts related to mechanics' liens asserted against the Debtor Parties; (g) a waiver of any claims with respect to the writedowns identified in those certain letters of John P. Holsinger of Alcoa to Tiffany L. Silvey of Luminant dated March 17, 2014 and Tiffany L. Silvey of Luminant to John P. Holsinger of Alcoa on  January 16, 2014 and March 4, 2014  (the "Lignite Dispute"); (h) a waiver of any claims with respect to or arising from the lignite inventory described in the Lignite Inventory Agreement between Alcoa, SPC, and Luminant Mining dated August 31, 2007; (i) a request or authorization to assume or reject any of the Agreements or other agreements under section 365 of the Bankruptcy Code; (j) a waiver of any Party's rights to assert that any other Party is in breach or default of the Agreements; or (k) an admission that the Agreements are integrated.  All Parties reserve all rights, including Alcoa's rights to assert that the Agreements are integrated, object to the rejection, assumption, and/or assignment of any of the Agreements, and move to compel the rejection of any of the Agreements.  The Parties further reserve all other rights, remedies, and objections under applicable law, including but not limited to the exercising of any rights to setoff, offset, and recoupment related to any Party's mutual postpetition claims and/or debts.

Section 2.09. <u>Administrative Claims</u>. Alcoa shall be granted an allowed administrative expense claim for valid and undisputed postpetition net payables owed to Alcoa by the Debtor Parties under the Agreements and sections 2.02 through 2.05 of this Stipulation if the payment of such amounts is not made as contemplated under this Stipulation.

Section 2.10. <u>Lignite Dispute Claims Excluded</u>. Notwithstanding anything in this Stipulation to the contrary, this Stipulation shall not (a) constitute a settlement of the Lignite Dispute, (b) affect the rights, claims, causes of action or defenses of the Parties with respect to the Lignite Dispute, or (c) create, or entitle any of the Parties to assert, any rights to payment, setoff, or recoupment related to the Lignite Dispute against amounts payable under sections 2.01 through 2.05 of this Stipulation.

Section 2.11. <u>Default under Agreements</u>. Any breach or default under the Agreements shall be determined in accordance with paragraph 5.12 of this Stipulation.

## ARTICLE III

## CONDITIONS PRECEDENT

Section 3.01. <u>Conditions Precedent to the Effective Date</u>. The Effective Date shall not occur unless and until:

(a)     the Bankruptcy Court shall have approved this Stipulation and authorized its entry under a form of non-appealable, final order agreed upon by the Parties (the "<u>Agreed Order</u>"); and

(b)     the Agreed Order shall modify the automatic stay to the extent necessary for the Parties to carry out the actions, terms, and conditions contemplated under this Stipulation.

## ARTICLE IV

## TERMINATION

Section 4.01. <u>Termination Events</u>. This Stipulation shall terminate in the event that:

(a)     the Bankruptcy Court has not approved this Stipulation and authorized its entry under a non-appealable, final order by October 15, 2014; or

(b)     the Bankruptcy Court expressly declines to enter an order approving this Stipulation; and

(c)     notwithstanding paragraphs 4.01(a) and/or (b) of this Stipulation, this Stipulation shall terminate as between Alcoa and an applicable Debtor Party upon 30 days' written notice by Alcoa or the applicable Debtor Party after the occurrence of any of the following events: (i) the effective date of the chapter 11 plan of reorganization in the Bankruptcy Case of such Debtor Party; (ii) the conversion of such Debtor Party's Bankruptcy Case to one under chapter 7 of the Bankruptcy Code or the dismissal of such Debtor Party's Bankruptcy Case; (iii); with respect to an Agreement to which a Debtor Party is a party, the termination of such Agreement; (iv) the

assumption, assignment, or rejection of an Agreement to which such Debtor Party is a party; or (v) the failure of the other Party to make timely payments under this Stipulation.

## ARTICLE V

### MISCELLANEOUS

Section 5.01.  Voluntary Stipulation.  Each Party acknowledges that it has read all of the terms of this Stipulation, has had an opportunity to consult with counsel of its own choosing or voluntarily waived such right, and enters into this Stipulation voluntarily and without duress.

Section 5.02.  Counterparts.  This Stipulation may be executed and delivered in any number of counterparts, each of which when so executed shall be deemed to be an original and all of which taken together shall constitute one and the same Stipulation.  Delivery of a signature page to this Stipulation by facsimile or other electronic means shall be effective as delivery of the original signature page to this Stipulation.

Section 5.03.  Entire Stipulation; Amendment.  This Stipulation constitutes the entire agreement, and supersedes all prior agreements, understandings, representations and warranties, both written and oral, between the Parties with respect to the subject matter of this Stipulation.

Section 5.04.  Authority.  Each Party represents and warrants that each Person who executes this Stipulation on its behalf is duly authorized to execute this Stipulation on behalf of the respective Party, and that such Party has full knowledge of and has consented to this Stipulation.

Section 5.05.  No Third Party Beneficiaries.  There are no third party beneficiaries of this Stipulation.

Section 5.06.  Modification.  This Stipulation may be modified only in a writing agreed to and signed by each of the Parties hereto.

Section 5.07.  Costs.  All legal fees and other expenses incurred on behalf of a Party in connection with negotiating, drafting and effectuating this Stipulation will be borne by such Party.

Section 5.08.  Headings.  The headings of the Sections of this Stipulation are inserted for convenience only and shall not constitute a part hereof or affect in any way the meaning or interpretation of this Stipulation.

Section 5.09.  Severability.  If any term, clause, provision, or part thereof, of this Agreement is invalidated or unenforceable by operation of law or otherwise, the Parties shall negotiate in good faith a replacement, but legally valid, term, clause or provision that best meets the intent of the Parties.  The remaining provisions of this Agreement will remain in full force and effect.

Section 5.10.  Notices.  All notices or demands given or made by one Party to another relating to this Stipulation shall be in writing and either personally served or sent by registered or certified mail, postage paid, return receipt requested, overnight delivery service, or by electronic mail transmission with a copy by first-class mail, and shall be deemed to be given for purposes of this

12

Stipulation on the earlier of the date of actual receipt or three (3) days after the deposit thereof in the mail.  Unless a different or additional address for subsequent notices is specified in a notice sent or delivered in accordance with this Section, such notices or demands shall be sent as follows:

If to Alcoa:

> Peter S. Goodman, Esq.
> Michael R. Carney, Esq.
> MCKOOL SMITH, P.C.
> One Bryant Park, 47th Floor
> New York, New York 10036
> pgoodman@mckoolsmith.cm
> mcarney@mckoolsmith.com

If to Luminant Generation and/or Luminant Mining:

      Brian Schartz, Esq.
      KIRKLAND & ELLIS LLP
      601 Lexington Avenue
      New York, New York 10022
      brian.schartz@kirkland.com

Section 5.11.  <u>Governing Law</u>.  This Stipulation, the rights and obligations of the Parties under this Stipulation, and any and all disputes arising under or in connection with this Stipulation, shall be governed by and construed in accordance with the laws of the State of Texas, without regard to any conflict of laws provisions that would require the application of the law of any other jurisdiction.

Section 5.12.  <u>Dispute Resolution</u>.  Each Party agrees that for so long as the Bankruptcy Court is exercising jurisdiction in the Bankruptcy Case, it will bring any actions, suits or proceedings arising out of or relating to this Stipulation in the Bankruptcy Court.  In the event that the Bankruptcy Court declines to or may not accept jurisdiction over a particular matter, each Party agrees to then proceed in the Texas State District Court (collectively as set forth in this Section 5.12, the "<u>Chosen Courts</u>").  Each Party, with respect to any actions, suits or proceedings arising out of or relating to this Stipulation, (a) irrevocably submits to the exclusive jurisdiction of the Chosen Courts, (b) waives any objection or claim to laying venue in any such action, suit or proceeding in the Chosen Courts, and (c) waives any objection that the Chosen Courts are an inconvenient forum or do not have jurisdiction over any Party.

*[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]*

IN WITNESS WHEREOF, the Parties have caused this Stipulation to be duly executed as of the date first set forth above.

LUMINANT GENERATION COMPANY LLC

Signature: _____

Name: Robert C. Frenzel

Title: SVP, CFO

LUMINANT MINING COMPANY LLC

Signature: _____

Name: Robert C. Frenzel

Title: SVP, CFO

SANDOW POWER COMPANY LLC

Signature: _____

Name: Robert C. Frenzel

Title: SVP, CFO

IN WITNESS WHEREOF, the Parties have caused this Stipulation to be duly executed as of the date first set forth above.

ALCOA INC.

Signature: _Peter Hong_

Name:  Peter Hong

Title:  Vice President & Treasurer