## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re | ) | Chapter 11 |
| | ) | |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) | Case No. 14-10979 (CSS) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | **Re: Docket No. 1683** |

**STATEMENT OF THE AD HOC GROUP OF TCEH UNSECURED
NOTEHOLDERS IN SUPPORT OF THE MOTION OF ENERGY FUTURE
HOLDINGS CORP., ET AL., FOR ENTRY OF AN ORDER EXTENDING THE
DEBTORS' EXCLUSIVE PERIODS TO FILE A CHAPTER 11 PLAN AND
SOLICIT ACCEPTANCES THEREOF PURSUANT TO SECTION 1121 OF
THE BANKRUPTCY CODE**

The ad hoc group of certain holders (the "Ad Hoc Group of TCEH Unsecured Noteholders") of approximately $2.6 billion of 10.25% Fixed Senior Notes due 2015 (including Series B) and 10.50%/11.25% Senior Toggle Notes due 2016 issued by Texas Competitive Electric Holdings Company LLC ("TCEH") and TCEH Finance, Inc., by and through its undersigned counsel, hereby files its statement (the "Statement") in support of the Motion of EFH Corp., Et Al., for Entry of an Order Extending the Debtors' Exclusive Periods to File a Chapter 11 Plan and Solicit Acceptances Thereof Pursuant to Section 1121 of the Bankruptcy Code [Docket No. 1683] (the "Motion").[2] In support of the Motion, the Ad Hoc Group of TCEH Unsecured Noteholders respectfully represents as follows:

---

[1] The last four digits of Energy Future Holdings Corp.'s federal tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, for which the debtors have requested joint administration, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

[2] Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the Motion.

## THE MOTION SHOULD BE GRANTED

1.        These administratively consolidated Cases, with over $40 billion in secured and unsecured debt spread out over 71 estates, present exactly the type of daunting financial and operational complexities for which an extension of exclusivity periods is ordinarily warranted without the need for comment or dispute.  Indeed, the Debtors here are challenged with the additional reality that they are comprised of two distinct businesses – a regulated transmission utility and a merchant power generation and sales enterprise – each with a separate unique capital structure, regulatory scheme and reorganizational practicalities.  Notably, the "E-side" and the "T-side" of the organizational chart are, at this time, tethered together by only two threads:  (1) the myriad complex inter-Debtor claims and causes of action that stem from the billions of dollars worth of transactions that occurred between and among the two estate groups prior to the commencement of these Cases; and (2) a single small team of senior management and advisors that are saddled with the significant burden of trying to resolve the relationships between their two estate groups on mutually fair terms while simultaneously being burdened with the conflicts that arise from being on both sides of the debate.

2.        At the commencement of these Cases, the Debtors promised a "quick fix" to these complexities that would have dispensed with all disputes in a single plan supported only by creditors and stakeholders who, not surprisingly, had more than $100 million of their fees and expenses paid in the days leading up to the filing.  That "fix," however, was slated to come directly at the expense of tens of billions of dollars of creditors outside the deal, most notably the TCEH unsecured and second lien creditors, whose recoveries were set at zero, and who had been denied any of the diligence, analysis or prepetition negotiations that one would normally have expected in a prepetition plan support process.  Throughout the entire life of the RSA, no TCEH

unsecured or second lien creditor ever expressed to the Court any support for any aspect of the prepetition deal.

3.    Now, following significant litigation, the Debtors and their advisor team purport to have committed to set aside once and for all their "quick deconsolidation at any cost" strategy in favor of a more traditional, bottoms-up look at the restructuring of their companion estates.  The Ad Hoc Group of TCEH Unsecured Noteholders is appreciative of this new-found direction and intends to participate fully in the plan processes that the Debtors outline in their Motion, including all of the diligence and analysis that will be critical to informing any proper global plan settlement.  To that end, and in reliance on the Debtors' commitments to meaningful negotiations, the Ad Hoc Group of TCEH Unsecured Noteholders supports the requested extension of exclusivity.

4.    The Ad Hoc Group of TCEH Unsecured Noteholders remains concerned, however, with these Debtors and their plans, particularly in light of their prior unapologetic willingness to disenfranchise tens of billions of dollars of secured and unsecured debt based solely on untested suppositions of value and conflicted views of proposed inter-Debtor settlements.  In that regard, the fact that "the Debtors" are collectively pursuing a sale of post-reorganization EFH equity pursuant to a global plan that appears to have no support from any T-side creditor calls into question the promises of future collaboration that pervade the Motion.

5.    Meaningful creditor input is a hallmark of any successful reorganization generally, and has proven to be indispensable here.  Indeed, absent the willingness of ad hoc groups of creditors outside the prepetition RSA deal to insert themselves into the process, at great expense to such creditors, billions of dollars in reorganization value may well have been dissipated:

- Hundreds of millions of dollars of TCEH cash would have unnecessarily leaked out to prepetition creditors under the proposed critical vendor, cash management, and hedging motions.

- Hundreds of millions of dollars of unencumbered TCEH cash and an even larger sum of unliquidated avoidance claims available to unsecured creditors would have been pledged to secured lenders.

- All of the Debtors' claims against each other (including three-quarters of a billion dollars of TCEH's scheduled inter-Debtor claims), as well as their claims against various lenders and the Debtors' sponsors would have been eliminated for no payment.

- None of the projected TCEH reorganization expenses would have been chargeable to secured creditors, including the direct costs of collateral preservation.

- The entire corpus of the E-side assets would have been sold to the EFIH second lien DIP lenders in a transaction that market evidence now demonstrates would have overpaid those lenders by at least half a billion dollars.

6.      All of this could have been avoided without litigation through meaningful advance collaboration with creditors and an abandonment of the Debtors' insistence upon absolute dominion over the process.

7.      In sum, the Ad Hoc Group of TCEH Unsecured Noteholders trusts that the Debtors' management and advisors will not use an exclusivity extension merely as a runway for a new, but equally-flawed, process that sacrifices meaningful creditor engagement for the renewed promise of an early deconsolidation of the two businesses at any cost. These Cases are going to take time. Billions of dollars of prepetition transactions require scrutiny; significant litigations need to be resolved; tax disentanglements need to be structured; a monumental valuation exercise may need to run its course; and $40 billion of debt needs to be restructured in accordance with the Bankruptcy Code. All of that will require cooperation, collaboration, a seriousness of purpose, hard work, and an appreciation of conflicting goals of stakeholders and estates. Anything short of that will inevitably lead to more cost, more delay and a failed plan

process that serves no legitimate purpose.

Dated: September 12, 2014
        Wilmington, Delaware

FOX ROTHSCHILD LLP

By: _____
    Jeffrey M. Schlerf (No. 3047)
    John H. Strock (No. 4965)
    L. John Bird (No. 5310)
    919 North Market St., Suite 300
    Wilmington, DE 19801
    Telephone:  (302) 654-7444
    Facsimile:  (302) 463-4971
    jschlerf@foxrothschild.com
    jstrock@foxrothschild.com
    lbird@foxrothschild.com

    and

    WHITE & CASE LLP
    Thomas E Lauria (admitted *pro hac vice*)
    Matthew C. Brown (admitted *pro hac vice*)
    Southeast Financial Center, Suite 4900
    200 South Biscayne Blvd.
    Miami, FL 33131
    Telephone:  (305) 371-2700
    Facsimile:  (305) 358-5744
    tlauria@whitecase.com
    mbrown@whitecase.com

    J. Christopher Shore (admitted *pro hac vice*)
    Gregory M. Starner (admitted *pro hac vice*)
    1155 Avenue of the Americas
    New York, NY 10036
    Telephone:  (212) 819-8200
    Facsimile:  (212) 354-8113
    cshore@whitecase.com
    gstarner@whitecase.com

    *Counsel to the Ad Hoc Group of TCEH Unsecured*
    *Noteholders*