# Exhibit A

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | Case No. 14-10979 (CSS) |
| Debtors. | (Jointly Administered) |
| | **Re: D.I. 660, 1733** |

## FIRST SUPPLEMENTAL DECLARATION OF EDWARD O. SASSOWER IN SUPPORT OF THE DEBTORS' APPLICATION FOR ENTRY OF AN ORDER AUTHORIZING THE RETENTION AND EMPLOYMENT OF KIRKLAND & ELLIS LLP AND KIRKLAND & ELLIS INTERNATIONAL LLP AS ATTORNEYS FOR THE DEBTORS AND DEBTORS IN POSSESSION EFFECTIVE *NUNC PRO TUNC* TO THE PETITION DATE

I, Edward O. Sassower, being duly sworn, state the following under penalty of perjury:

1.    I am the president of Edward O. Sassower, P.C., a partner in the law firm of Kirkland & Ellis LLP, located at 601 Lexington Ave., New York, New York 10022, and a partner of Kirkland & Ellis International LLP (together with Kirkland & Ellis LLP, "K&E"). I am the lead attorney from K&E working on the above-captioned chapter 11 cases. I am a member in good standing of the Bar of the State of New York, and I have been admitted to practice in the United States Bankruptcy Court for the Southern District of New York and the United States Bankruptcy Court for the Eastern District of New York. There are no disciplinary proceedings pending against me.

---

[1]   The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, for which joint administration has been granted, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

2.     I submit this first supplemental declaration on behalf of K&E (the "First Supplemental Declaration") in further support of the *Debtors' Application for Entry of an Order Authorizing the Retention and Employment of Kirkland & Ellis LLP as Attorneys for the Debtors and Debtors in Possession Effective* Nunc Pro Tunc *to the Petition Date* [D.I. 660] (the "Application")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for an order pursuant to sections 327(a) and 330 of title 11 of the United States Code (the "Bankruptcy Code"), rules 2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rules 2014-1 and 2016-2 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Bankruptcy Rules").

3.     Except as otherwise noted, I have personal knowledge of the matters set forth herein.

### Background

4.     On May 29, 2014, the Debtors filed the Application.   In support of the Application, the Debtors filed the *Declaration of Edward O. Sassower, P.C. in Support of the Debtors' Application for Entry of an Order Authorizing the Retention and Employment of Kirkland & Ellis LLP as Attorneys for the Debtors and Debtors in Possession Effective* Nunc Pro Tunc *to the Petition Date* (the "Original Declaration"), which was filed as **Exhibit B** to the Application.   On July 31, 2014, the Debtors filed the *Amended Declaration of Edward O. Sassower in Support of the Debtors' Application for Entry of an Order Authorizing the Retention and Employment of Kirkland & Ellis LLP as Attorneys for the Debtors and Debtors in*

---

[2]   Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Application.

*Possession Effective* Nunc Pro Tunc *to the Petition Date* [D.I. 1733] (the "Amended Declaration").

5.      This First Supplemental Declaration provides additional information with respect to certain disclosures made in the Amended Declaration and makes certain additional disclosures.  Based on the conflicts search conducted to date and described herein, to the best of my knowledge, neither I, K&E, nor any partner, of counsel, or associate thereof, insofar as I have been able to ascertain, has any connections with the Debtors, their creditors, or any other parties in interest, their respective attorneys or accountants, the U.S. Trustee, any person employed by the U.S. Trustee, or any person employed by the Bankruptcy Court for the District of Delaware, the United States District Court for the District of Delaware, or the United States Court of Appeals for the Third Circuit, except as disclosed or otherwise described herein and in the Amended Declaration.

## Clarifications and Additional Information Regarding Disclosures in the Amended Declaration

**A.      Large Chapter 11 Case Fee Guidelines.**

6.      For clarification of certain disclosures in the Amended Declaration, I provide responses to the following questions:

7.      **Question:**  Did K&E agree to any variations from, or alternatives to, K&E's standard billing arrangements for this engagement?

8.      **Response:**  No.  K&E and the Debtors have not agreed to any variations from, or alternatives to, K&E's standard billing arrangements for this engagement.

9.      **Question:**  Do any of the professionals in this engagement vary their rate based on the geographic location of the Debtors' chapter 11 cases?

3

10.    **Response:**  No.  The hourly rates used by K&E in representing the Debtors are consistent with the rates that K&E charges other comparable chapter 11 clients, regardless of the location of the chapter 11 case.

11.    **Question:**  If K&E has represented the Debtors in the 12 months prepetition, disclose K&E's billing rates and material financial terms for the prepetition engagement, including any adjustments during the 12 months prepetition.  If K&E's billing rates and material financial terms have changed postpetition, explain the difference and the reasons for the difference.

12.    **Response:**  K&E's hourly rates for matters related to these chapter 11 cases from April 29, 2013, to December 31, 2013, ranged as follows:

| Billing Category | U.S. Range |
|---|---|
| Partners | $655-$1,150 |
| Of Counsel | $450-$1,150 |
| Associates | $430-$790 |
| Paraprofessionals | $150-$335 |

13.    K&E's current hourly rates for matters related to these chapter 11 cases as of July 1, 2014, range as follows:[3]

| Billing Category | U.S. Range |
|---|---|
| Partners | $665-$1,295 |
| Of Counsel | $415-$1,195 |
| Associates | $450-$865 |
| Paraprofessionals | $170-$355 |

14.    These ranges were proposed to take effect on June 1, 2014, and July 1, 2014.  These ranges have been finalized and are currently in effect, subject to periodic adjustments to reflect economic and other conditions.[4]

---

[3]    For professionals and paraprofessionals residing outside of the U.S., hourly rates are billed in the applicable currency.  When billing a U.S. entity, such foreign rates are converted into U.S. dollars at the then applicable conversion rate.  After converting these foreign rates into U.S. dollars, it is possible that certain rates may exceed the billing rates listed in the chart herein.

4

15.    **Question:**  Have the Debtors approved K&E's budget and staffing plan, and, if so, for what budget period?

16.    **Response:**  Yes, for the period from April 29, 2014 through August 31, 2014.

**B.    Certain Additional Matters.**

17.    K&E currently uses 69 contract attorneys for these chapter 11 cases. Additionally, 14 contract attorneys were previously used for these chapter 11 cases and have left the project.  These contract attorneys are hired through Special Counsel, Inc.  K&E will not charge a markup to the Debtors with respect to fees billed by such attorneys.  Charges for contract attorneys will be reflected as an expense in K&E's invoices to the Debtors.

18.    All contract attorneys currently employed by the Debtors in connection with work performed by K&E have been subject to conflicts checks and will be subject to ongoing conflicts checks with respect to any additional parties in interest in these chapter 11 cases.  Specifically, K&E paraprofessionals checked each contract attorney's hiring records against each party in interest reflected in **Schedule 1** to the Amended Declaration.  Each contract attorney was asked to verify that (a) they have not performed any work related to the Debtors, or, if they have, to describe the work in detail, and (b) any work performed for any entity reflected in the contract attorney's hiring records and on **Schedule 1** to the Amended Declaration was unrelated to the Debtors or, if it was related to the Debtors, to describe the work in detail.  Each contract attorney was asked to sign a statement attesting to the accuracy of these disclosures, which are kept on

---

[4]    For example, like many of its peer law firms, K&E typically increases the hourly billing rate of attorneys and paraprofessionals twice a year in the form of:  (i) step increases historically awarded in the ordinary course on the basis of advancing seniority and promotion and (ii) periodic increases within each attorney's and paraprofessional's current level of seniority. The step increases do not constitute "rate increases" (as the term is used in the *Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases*, effective November 1, 2013.  As set forth in the Order, K&E will provide ten business days' notice to the Debtors, the U.S. Trustee, and any official committee before implementing any periodic increases, and shall file such notice with the Court.

5

file. Each contract attorney affirmatively represented that he or she has not done any work relating to the Debtors.[5] To the best of my knowledge and as far as K&E has been able to ascertain, the contract attorneys have no connection to the Debtors or to parties in interest in these chapter 11 cases that would require disclosure in accordance with the requirements of the Bankruptcy Code. Any contract attorneys or non-attorneys employed by the Debtors in the future will be subject to the same conflicts checks.

19.    Notwithstanding anything to the contrary in the Application, the Amended Declaration, or the Engagement Letter, K&E will cooperate with the fee committee appointed pursuant to the *Stipulation and Order Appointing a Fee Committee* [D.I. 1896] (the "Fee Committee Order") in the discharge of the fee committee's duties, and has agreed to be bound by the terms of the Fee Committee Order.

20.    The prepetition payments set forth in paragraphs 17–18 of the Amended Declaration that K&E received during the 90-day period before the Petition Date were paid by EFH Corporate Services in its capacity as administrator of the EFH money pool.[6] EFH Corporate Services then directly billed a portion of each payment to EFH Corp., EFIH, and TCEH LLC.

21.    Fees and expenses that accrued on or before the Petition Date (the "Prepetition Fees and Expenses") that have not yet been deducted from the retainer that K&E earned prepetition in accordance with the Engagement Letter (the "Retainer") do not represent an

---

[5]    Of the 14 contract attorneys who have left the project, 12 have completed the questionnaire with respect to the parties in interest listed on **Schedule 1** of the Amended Declaration. Two of the contract attorneys who have left the project have not responded to the materials.

[6]    The EFH money pool is discussed in greater detail in the *Motion of Energy Future Holdings Corp., et al., for Entry of an Order (A) Authorizing the Debtors to (I) Continue Using their Existing Cash Management System, (II) Maintain Existing Bank Accounts and Business Forms, and (III) Continue Using Certain Investment Accounts; (B) Authorizing Continued Intercompany Transactions and Netting of Intercompany Claims; and (C) Granting Postpetition Intercompany Claims Administrative Expense Priority* [D.I. 37].

amount owed to K&E by the Debtors, and the Debtors did not owe K&E any amounts as of the Petition Date, because the Retainer is a "classic retainer," as defined in *In re Production Associates, Ltd.*, 264 B.R. 180, 184–85 (Bankr. N.D. Ill. 2001), and *In re McDonald Bros. Construction Inc.*, 114 B.R. 989, 997–99 (Bankr. N.D. Ill. 1990). Pursuant to the Engagement Letter, the Retainer is the property of K&E and is not held in a separate account. As such, K&E earned the Retainer upon receipt, and, consequently, K&E placed the amounts into its general cash account.

22.     Before the entry of an order approving K&E's first interim application (the "First Interim Fee Application") for payment of fees and expenses that accrued after the Petition Date (the "Postpetition Fees and Expenses"), K&E shall apply the remaining portion(s) of the Retainer to satisfy the payment of the Prepetition Fees and Expenses. K&E currently estimates that the remaining amount of the Retainer is approximately $4.2 million and that the Prepetition Fees and Expenses total approximately $1.1 million. In advance of the hearing on the First Interim Fee Application, K&E will disclose the amount of the Retainer (if any) that remains after applying the Retainer to the Prepetition Fees and Expenses. Thereafter, K&E shall apply the remaining amount of the Retainer (if any) to satisfy the payment of Postpetition Fees and Expenses to the extent the Court approves payment of such Postpetition Fees and Expenses. The Retainer will not be replenished postpetition.

23.     Paragraph 20 of the Amended Declaration is amended and restated in its entirety as follows: No agreement or understanding exists between K&E and any other person, other than as permitted by section 504 of the Bankruptcy Code, to share compensation received for services rendered in connection with these chapter 11 cases, nor shall K&E share or agree to

7

share compensation received for services rendered in connection with these chapter 11 cases with any other person other than as permitted by section 504 of the Bankruptcy Code.

24.    Notwithstanding anything in the Application, the Amended Declaration, or the Engagement Letter to the contrary, K&E may not terminate its representation of the Debtors without order of the Court.

25.    Notwithstanding anything to the contrary in the Application or the Engagement Letter, K&E will not seek reimbursement of expenses for office supplies.

**C.    Role of Legal Advisors.**

26.    The Debtors seek to retain and employ certain legal advisors in additional to K&E. K&E shall use its reasonable efforts to avoid any duplication of services provided by any of the Debtors' other retained professionals in these chapter 11 cases. The following chart lists the services to be provided by each of the legal advisors the Debtors seek to retain.

| *Professional* | *Description of Services* |
|---|---|
| Richards, Layton & Finger LLP, as Delaware counsel and conflicts counsel | Richards, Layton & Finger LLP will be primarily responsible for:<br><br>• Acting as Delaware counsel with respect to the Debtors' restructuring, including the review and filing of materials principally drafted by K&E.<br><br>• Interacting with chambers outside of hearings.<br><br>• Acting as conflicts counsel independently from K&E in certain matters.<br><br>Richards, Layton & Finger LLP will **not** be primarily responsible for:<br><br>• Providing legal advice on non-bankruptcy tax matters that are being principally addressed by Thompson & Knight LLP.<br><br>• Matters where another firm is acting as conflicts counsel.<br><br>• Discrete matters being addressed by Sidley Austin LLP, including the Debtors' potential claims against the Debtors' |

8

| | |
|---|---|
| | equity owners in connection with the 2007 buyout.<br><br>• Discrete energy-related transactional matters being handled by McDermott, Will & Emery LLP, except to the extent necessary in connection with preparing applicable pleadings or other documents.<br><br>• Discrete non-bankruptcy issues being handled by Gibson, Dunn & Crutcher LLP. |
| Kirkland & Ellis LLP and Kirkland & Ellis International LLP (collectively, K&E), as primary restructuring counsel | K&E will be primarily responsible for:<br><br>• Providing services related to all bankruptcy-related matters, including, among other things: (a) corporate governance in the bankruptcy context, (b) advising and consulting on the Debtors' conduct during the chapter 11 cases, including the legal and administrative requirements of operating in chapter 11, (c) meetings and negotiations with parties in interest regarding the Debtors' restructuring, (d) taking all necessary actions to protect and preserve the Debtors' estates, (e) preparing and filing pleadings, (f) postpetition financing and cash collateral matters, (g) structuring potential sales of assets or other asset dispositions, (h) advising on tax matters, including certain non-bankruptcy tax matters where they implicate creditor recoveries or the administration of the Debtors' estates, (i) the negotiation of and preparation of a plan and disclosure statement and all related documents and transactions, (j) interactions with vendors, contract counterparties, and similar parties with respect to the treatment of claims and contracts in the chapter 11 process, (k) the claims resolution process, and (l) all other necessary legal services for the Debtors in connection with the chapter 11 cases not otherwise provided by another retained legal professional.<br><br>K&E will **not** be primarily responsible for:<br><br>• Providing legal advice on non-bankruptcy tax matters that are being principally addressed by Thompson & Knight LLP.<br><br>• Matters where Richards, Layton & Finger LLP is acting as conflicts counsel.<br><br>• Discrete matters being addressed by Sidley Austin LLP, including the Debtors' potential claims against the Debtors' equity owners in connection with the 2007 buyout. |

9

| | |
|---|---|
| | • Discrete energy-related transactional matters being handled by McDermott, Will & Emery LLP, except to the extent necessary in connection with preparing applicable pleadings or other documents.<br><br>• Discrete non-bankruptcy issues being handled by Gibson, Dunn & Crutcher LLP.<br><br>• Advising the Debtors in connection with the potential purchase of the assets of Optim Energy (the Debtors have since terminated their involvement in the purchase process). |
| Thompson & Knight LLP, as special counsel for certain tax-related matters | Thompson & Knight will be primarily responsible for:<br><br>• Providing services related to certain tax issues, including, among other things: (a) the Debtors' request for a private letter ruling from the Internal Revenue Service (the "IRS") and the tax issues of the related restructuring matters, (b) Texas tax issues not otherwise addressed by the Debtors' other professionals, (c) the resolution of certain historical and ongoing IRS tax controversies and (d) other discrete matters as directed by the Debtors.<br><br>• Providing services related to certain record retention issues.<br><br>Thompson & Knight will **not** be primarily responsible for:<br><br>• Providing any legal advice on non-tax matters other than those related to record retention.<br><br>• Providing legal advice on bankruptcy-specific tax matters.<br><br>• Providing any legal advice to the Debtors on potential transaction structures (including negotiations with lenders and investors related to the same), except as may relate to the tax issues related to the Debtors' restructuring as described above). |
| Sidley Austin LLP, as special counsel on certain corporate and litigation issues | Sidley Austin will be primarily responsible for:<br><br>• Reviewing matters related to potential claims against EFH Corp.'s majority equity owners and other parties related to the transaction that took the Debtors private in 2007.<br><br>• Advising the Debtors on certain matters relating to the Environmental Protection Agency. |

|  | • Advising the Debtors on an as-requested basis for certain discrete matters on which Kirkland & Ellis will not advise.<br><br>Sidley Austin will **not** be primarily responsible for providing services related to:<br><br>• Advising the Debtors on potential transaction structures (including negotiations with lenders and investors related to the same).<br><br>• Serving as the primary legal point of contact for operational and financing inquiries from creditors.<br><br>• General restructuring issues. |
|---|---|
| Gibson, Dunn & Crutcher LLP, as special corporate counsel and litigation counsel on certain, discrete litigation matters | Gibson Dunn will be primarily responsible for:<br><br>• Advising on certain non-bankruptcy capital market transactions, non-bankruptcy merger and acquisition transactions, Securities and Exchange Commission matters, and corporate governance issues.<br><br>• Advising the Debtors in connection with the potential purchase of the assets of Optim Energy (the Debtors have since terminated their involvement in the purchase process).<br><br>• Representing the Debtors in connection with certain non-bankruptcy litigation matters, including *Aurelius Capital Master, Ltd. v. Acosta* (5th Cir.), *TXU Portfolio Management Co., L.P., FPL Energy, LLC* (Tex.)., *Luminant Generation Co., LLC v. EPA* (E.D. Tex.), *Sierra Club v. Energy Future Holdings Corp.* (E.D. Tex.), *Sierra Club v. Energy Future Holdings Corp.* (5th Cir.), *Luminant Energy Co., LLC v. FPL Energy Pecos Wind I, LLC* (D.C. Tex.), and *United States v. Luminant Generation Co., LLC* (N.D. Tex.).<br><br>Gibson Dunn will **not** be primarily responsible for providing services related to:<br><br>• Advising the Debtors on the bankruptcy issues regarding transaction structures being considered as part of the plan of reorganization (including negotiations with lenders and investors related to the same).<br><br>• Advising the Debtors on tax matters (excluding corporate advisory services that may incidentally involve discrete tax |

11

| | issues). |
|---|---|
| McDermott, Will & Emery LLP, as energy advisor | McDermott will be primarily responsible for:<br><br>• Advising the Debtors on certain discrete energy-related transactional matters, negotiations, and disputes.<br><br>McDermott will **not** be primarily responsible for providing services related to:<br><br>• Providing advisory services related to tax, corporate, litigation, and environmental issues (except as they may relate to discrete energy issues).<br><br>• Advising the Debtors on potential bankruptcy transaction structures (including negotiations with lenders and investors related to the same). |

D.    **Additional Information or Clarification Regarding Specific Disclosures in Amended Declaration.**

27.    In further support of the Application, I make the following additional disclosures concerning each party specifically disclosed in the Amended Declaration:  (a) whether K&E can represent the Debtors adversely to such party and (b) the fees generated by such party in the 12 months before July 31, 2014, expressed as a percentage of the total fees incurred by all of K&E's clients in the same period.  This information is attached to this First Supplemental Declaration as **Exhibit A**.  **Exhibit A** also includes this information for certain additional members of the TCEH first lien ad hoc group and/or their affiliates that were not included in the Amended Declaration.

28.    The information in **Exhibit A** is derived from an evaluation of the engagement and/or waiver letters on file, if any, for each entity and/or its affiliates, and whether each entity and/or its affiliates are current, former, or closed clients of K&E, and is accurate to the best of K&E's knowledge.  K&E will engage in further analysis on a case-by-case basis if the Debtors become adverse to any entity in **Exhibit A**, their affiliates, or any other entity on **Schedule 2** of

12

the Amended Declaration. Where **Exhibit A** indicates that K&E may be adverse to an entity, K&E may commence a cause of action on the Debtors' behalf against such entity. K&E will not commence a cause of action in these chapter 11 cases against the parties listed on **Schedule 2** to the Amended Declaration (including the parties listed under the "Specific Disclosures" section of the Amended Declaration and on **Exhibit A**) that are current clients of K&E unless K&E has an applicable waiver on file or first receives a waiver from such party allowing K&E to commence such an action. To the extent that a waiver does not exist or is not obtained from such client and it is necessary for the Debtors to commence an action against that client, the Debtors will be represented in such particular matter by conflicts counsel. For the avoidance of doubt, K&E may request a waiver from any entity that K&E has stated it could not be adverse to in **Exhibit A** and, if such waiver is granted, K&E may represent the Debtors adversely to such entity. Similarly, in certain circumstances, K&E may ask conflicts counsel to handle a matter even where K&E believes it can represent the Debtors adversely to such entity.

29.    At paragraph 28 of the Amended Declaration, I stated that Nalco Chemical Co. ("Nalco") is an affiliate of BP. Upon further analysis, Nalco is not an affiliate of BP.

30.    At paragraph 32 of the Amended Declaration, I stated that the Anadarko Litigation Trust, which is not affiliated with Anadarko Petroleum Corp., represented more than one percent of K&E's fee receipts for the twelve-month period ending April 30, 2014. The Anadarko Litigation Trust was created to file litigation against Anadarko Petroleum Corp. in connection with the Tronox, Inc. bankruptcy. The Anadarko Litigation Trust has no connection to these chapter 11 cases or the Debtors, but Anadarko Petroleum Corp. and certain of its affiliates were listed in **Schedule 1** to the Amended Declaration as potential parties in interest in these chapter 11 cases. In April 2014, the parties to this litigation announced a settlement. The

13

bankruptcy court approved the settlement on report and recommendation to the district court. The settlement is now pending approval before the district court.

31.    Paragraph 33 of the Amended Declaration is amended in its entirety to state: K&E's conflicts search of the parties in interest listed on **Schedules 1(a) – 1(cc)** reveals, to the best of K&E's knowledge, that certain of those K&E attorneys and paraprofessionals who previously worked at other law firms that represented potential parties in interest in these chapter 11 cases have not worked on matters relating to the Debtors' restructuring efforts while at K&E.

32.    At paragraph 47 of the Amended Declaration, I stated that Charles H. Cremens, who is an independent director of EFIH, has served as an officer or director of current and former K&E clients. All such representations of Mr. Cremens and/or the entities Mr. Cremens has served as an officer or director have been unrelated to the Debtors or these chapter 11 cases. I supplement that disclosure by stating that Mr. Cremens is a director for one current confidential K&E client. Mr. Cremens is also a director of a subsidiary of a current confidential K&E client. The subsidiary is represented by separate counsel. K&E does not represent Mr. Cremens individually in any active matters. I do not believe K&E's current or prior representations of Mr. Cremens or the clients for which Mr. Cremens serves or has served creates a conflict, but have disclosed the connections out of an abundance of caution.

33.    At paragraph 53 of the Amended Declaration, I stated that Hugh E. Sawyer, who serves as an independent director of EFCH and TCEH LLC, has served as an officer or director of current and former K&E clients. All such representations of Mr. Sawyer and/or the entities Mr. Sawyer has served as an officer or director have been unrelated to the Debtors or these chapter 11 cases. I supplement that disclosure by stating that Mr. Sawyer was a director of Edison Mission Energy (n/k/a EME Reorganization Trust) ("EME"). Mr. Sawyer is one of five

14

members of EME's reorganization trust oversight board.[7]  Mr. Sawyer is not the reorganization trust oversight board's chairman.  K&E represented EME in its chapter 11 proceedings and continues to represent the EME reorganization trust, but not the reorganization trust oversight board or its members, in certain limited matters.  K&E does not represent Mr. Sawyer individually in any active matters.  I do not believe K&E's current or prior representations of Mr. Sawyer or the clients for which Mr. Sawyer serves or has served creates a conflict, but have disclosed the connections out of an abundance of caution.

34.    At paragraph 55 of the Amended Declaration, I stated that certain of the Debtors and their non-Debtor affiliates or other entities associated with the Debtors are creditors of entities that K&E currently represents or has represented in those entities' bankruptcy proceedings or post-effective date claims processes.  Similarly, certain parties in interest in these chapter 11 cases are current or former K&E restructuring clients.  For the avoidance of doubt, K&E will not represent its other debtor restructuring clients against the Debtors in the restructuring matters of any of K&E's other debtor restructuring clients.  I do not believe these representations create a conflict, but have disclosed the connections out of an abundance of caution.

35.    At paragraph 58 of the Amended Declaration, I stated that K&E represented GFI Energy Group ("GFI"), an affiliate of Oaktree Capital Management, L.P. ("Oaktree"), in a non-adversarial debt review of the TCEH Debtors.  Time was last billed to that matter in December 2010.  I also stated that K&E represents Oaktree in matters unrelated to the Debtors and the chapter 11 cases.  As disclosed in **Schedule 2** to the Amended Declaration, K&E

---

[7]    *See In re Edison Mission Energy, et al.*, No. 12-49219 (JPC), *Notice of Filing of Members of the Board of Directors of Post-Reorganization EME and the Reorganization Trust Oversight Board and Section 1129(A)(5) of the Bankruptcy Code Disclosures* [D.I. 2166] (Bankr. N.D. Ill. Mar. 5, 2014).

represents, and has represented, Oaktree and certain of its affiliates. K&E currently represents GFI in matters unrelated to the Debtors and these chapter 11 cases. I do not believe these representations create a conflict, but have disclosed the connections out of an abundance of caution.

36.     At paragraph 59 of the Amended Declaration, I stated that K&E represents, and in the past has represented, the Government of Singapore Investment Corp. Pte. Ltd. ("GIC") and its affiliates. Upon further investigation, and as disclosed in **Schedule 2** of the Amended Declaration, K&E represents, has represented, certain of GIC's affiliates.[8] One such affiliate, GIC Special Investments Ltd., a closed K&E client, is a member of the investment group Texas Transmission Investment LLC ("Texas Transmission"). Texas Transmission owns approximately 20% of Oncor. K&E's representation of GIC's affiliates are unrelated to the Debtors and these chapter 11 cases. I do not believe K&E's representation of GIC's affiliates creates a conflict, but have disclosed the connection out of an abundance of caution.

37.     At paragraph 62 of the Amended Declaration, I listed various members of ad hoc groups in these chapter 11 cases. K&E does not know with certainty which affiliates of the specifically-listed entities hold claims that are represented by the ad hoc group. **Schedule 2** of the Amended Declaration lists connections to the entities listed in paragraph 62 and any of those entities' affiliates without attempting to identify specific entities that actually hold debt or bonds represented by the ad hoc groups. Going forward, K&E will continue to evaluate any connections to ad hoc groups as disclosed in Bankruptcy Rule 2019 filings and will disclose such connections in supplemental declarations.

---

[8]     GIC is a closed client outside of the 36-month window that is disclosed in **Schedule 2**.

16

38.     At paragraph 63 of the Amended Declaration, I listed certain bondholders and debtholders in addition to members of ad hoc groups.  Additional debtholders and bondholders that were not listed in paragraph 63 of the Amended Declaration are listed in **Schedule 2** of the Amended Declaration.   Going forward, to the extent K&E discovers names of additional debtholders or bondholders and connections to such debtholders or bondholders, K&E will disclose such parties and connections in the schedules to supplemental declarations.

39.     At paragraph 64 of the Amended Declaration, I stated that K&E has not represented a Potential Acquirer for approximately five years.  To clarify this disclosure, K&E has not represented a Potential Acquirer, or any other entity, in connection with potentially acquiring certain portions of the Debtors' business for approximately five years.  K&E currently represents each of the Potential Acquirers or certain of their affiliates in matters that are unrelated to the Debtors and these chapter 11 cases.

40.     At paragraph 69 of the Amended Declaration, I stated that K&E represents, and in the past has represented, Blackstone Advisory Partners, in matters unrelated to these chapter 11 cases and that K&E does not and will not represent Blackstone Advisory Partners in connection with these chapter 11 cases.  Upon further investigation and as disclosed in **Schedule 2** of the Amended Declaration, K&E represents, and has represented, certain of Blackstone Advisory Partners's affiliates, but not Blackstone Advisory Partners.  Additionally, as discussed in the Amended Declaration, K&E represents Major Oak Power LLC ("Major Oak"), an affiliate of Blackstone Advisory Partners, in connection with the Optim Assets matter.  I do not believe K&E's current and prior representations of Blackstone Advisory Partners's affiliates create a conflict, but have disclosed the connection out of an abundance of caution.

17

41.    At paragraph 71 of the Amended Declaration, I stated that K&E currently represents, and in the past has represented, Epiq Bankruptcy Solutions, LLC and certain of its affiliates.    Upon further investigation and as disclosed in **Schedule 2** of the Amended Declaration, K&E has represented EPIQ Systems, Inc., an affiliate of Epiq Bankruptcy Solutions, LLC, but not Epiq Bankruptcy Solutions, LLC.

42.    At paragraphs 99 and 100 of the Amended Declaration, I discuss K&E's screening procedures with respect to certain K&E attorneys that are screened from K&E's representation of the Debtors (the "Screened K&E Attorneys") who will not perform work in connection with K&E's representation of the Debtors and will not have access to confidential information related to the representation.    K&E's formal ethical screen provides sufficient safeguards and procedures to prevent imputation of conflicts by isolating the Screened K&E Attorneys and protecting confidential information.

43.    To supplement the disclosures regarding K&E's screening procedures, I state as following additional information.    When the Debtors' client matter number was opened on K&E's electronic document managing system, only selected attorneys and staff had access to any documents saved in the applicable folder. The Screened K&E Attorneys were not provided access to those documents.    Additionally, the Screened K&E Attorneys are specifically prohibited from accessing documents saved in the applicable folder. These steps are in addition to the other steps that are taken to ensure the Screened K&E Attorneys do not have access to files or other information related to K&E's representation of the Debtors, including the distribution of the screening memorandum distributed to all K&E attorneys and legal assistants which direct such parties:  (a) not to discuss any aspects of K&E's representation of the Debtors with the Screened K&E Attorneys;  (b) to conduct meetings, phone conferences, and other

18

communications regarding K&E's representation of the Debtors in a manner that avoids contact with the Screened K&E Attorneys; (c) to take all measures necessary or appropriate to prevent access by Screened K&E Attorneys to the files or other information related to K&E's representation of the Debtors; and (d) to avoid contact between the Screened K&E Attorneys and all K&E personnel working on the representation of the Debtors unless there is a clear understanding that there will be no discussion of any aspects of K&E's representation of the Debtors.

## Additional Disclosures

44.    While at Simpson Thacher, Erik W. Hepler represented KKR in connection with the 2007 acquisition of the Debtors. Mr. Hepler's involvement was limited to negotiating the terms of the first lien intercreditor agreement. Additionally, while at Simpson Thacher, Mr. Hepler represented the Debtors in connection with various debt issuances, exchanges, and the modification of the TCEH first lien credit agreement. Mr. Hepler joined K&E as a partner in June 2012 and is involved with K&E's representation of the Debtors. I do not believe that Mr. Hepler's representations of KKR and the Debtors while at Simpson Thacher create a conflict or require Mr. Hepler to be screened from K&E's representation of the Debtors, but have disclosed the connections out of an abundance of caution.

45.    While at Simpson Thacher, Andrew T. Calder represented KKR in connection with the 2007 acquisition of the Debtors. Additionally, while at Simpson Thacher, Mr. Calder represented the Debtors in connection with their sale of approximately 20% of its ownership interests in Oncor Electric Delivery Company LLC to Texas Transmission in 2008. Mr. Calder joined K&E as a partner in April 2014 and is involved with K&E's representation of the Debtors. I do not believe that Mr. Calder's representations of KKR and the Debtors while at

Simpson Thacher create a conflict or require Mr. Calder to be screened from K&E's representation of the Debtors, but have disclosed the connections out of an abundance of caution.

**<u>Continued Vigilance and Affirmative Statement of Disinterestedness</u>**

46.    Based on the conflicts search conducted to date and described in the Amended Declaration and herein, to the best of my knowledge and insofar as I have been able to ascertain, (a) K&E is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code, as required by section 327(a) of the Bankruptcy Code, and does not hold or represent an interest adverse to the Debtors' estates and (b) K&E has no connection to the Debtors, their creditors, or other parties in interest, except as may be disclosed in the Amended Declaration and herein.[9]

47.    K&E will continue to review its files periodically during the pendency of these chapter 11 cases to ensure that no conflicts or other disqualifying circumstances exist or arise. If any new relevant facts or relationships are discovered or arise, K&E will use its reasonable efforts to identify any such further developments and will file a supplemental declaration as required by Bankruptcy Rule 2014(a) and as stated in the Amended Declaration and herein.

*[Remainder of page intentionally left blank.]*

---

[9]    K&E is currently in the process of running additional parties through conflicts, including parties identified in the Debtors' SOFAs and Schedules, debtor-in-possession lenders, additional debtholders and bondholders, additional professionals, and additional members of ad hoc groups. K&E will file an additional supplemental disclosure of these connections as soon as the data has been compiled.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Dated:  September 12, 2014                                    Respectfully submitted,

                                                             */s/ Edward O. Sassower*
                                                             Edward O. Sassower
                                                                      as President of Edward O. Sassower,
                                                                      P.C., as Partner of Kirkland & Ellis
                                                                      LLP; and as Partner of Kirkland & Ellis
                                                                      International LLP

21

## EXHIBIT A

**Listing Regarding Ability to Be Adverse and Fees Incurred**

| ¶ | Entity | % Fees Incurred[1] | Can K&E Be Adverse? |
|---|--------|--------------------|---------------------|
| 25 | Abbott Laboratories | 0.85% | Yes. |
| 25 | AbbVie, Inc. (Abbott's spinoff) | | Yes; not listed in Schedule 1. |
| 25 | Bain Capital, LLC | 1.63% | No; not listed in Schedule 1. |
| 25, 28 | BP p.l.c. and certain affiliates[2] | 5.37% | No. |
| 25, 29 | Edison Mission Energy and certain affiliates | 1.07% | Yes.[*] |
| 25, 30 | Samsung Electronics Co., Ltd. and certain affiliates | 1.34% | Yes. |
| 27 | Sungard Consulting Services | N/A[+] | Yes. |
| 27 | Toys R Us-Delaware, Inc. | N/A[+] | Yes. |
| 27 | Securitas Security Services USA | 0.02% | Yes. |
| 27 | HD Supply Construction Ltd. | N/A[+] | Yes. |
| 27 | Brenntag Southwest Inc. | N/A[+] | Yes. |
| 27 | Skillsoft Corp. | N/A[+] | Yes. |
| 27 | Sankaty Advisors LLC and certain affiliates | 0.63% | Yes. |
| 27 | Future Fund Board of Guardians | N/A[+] | Yes. |
| 27 | Nash Point CLO | N/A[+] | Yes. |
| 27 | Prospect Harbor Credit Partners LP | N/A[+] | Yes. |
| 27 | Qantas Superannuation Plan | N/A[+] | Yes. |
| 27 | Race Point II CLO Ltd. | N/A[+] | Yes. |
| 27 | Race Point IV CLO Ltd. | N/A[+] | Yes. |
| 28 | Nalco Chemical Co. | N/A[+] | Yes. |
| 32 | Anadarko Petroleum Corp. | N/A[+] | Yes. |
| 40 | Goldman Sachs & Co. and certain affiliates | 0.09% | Yes. |
| 40 | Kohlberg Kravis Roberts & Co. LP and certain affiliates | 0.52% | Yes. |
| 40 | TPG Growth, LLC and certain affiliates | 0.15% | Yes. |
| 43 | Mason Capital Management LLC and certain affiliates | 0.01% | Yes. |
| 45 | General Motors Company | 0.12% | No. |

---

[1]  Fees incurred figures include each K&E client associated with the specifically-disclosed entity that is reflected in **Schedule 2** of the Amended Declaration; *provided, however*, that Bain Capital LLC's private equity portfolio companies are not included in the calculation for Bain.

[2]  As disclosed at paragraph 28 of the Amended Declaration, certain of BP's affiliates are contract counterparties of the Debtors, one affiliate is a significant customer of the Debtors, certain affiliates are potentially responsible parties with respect to certain potential environmental cites, and one affiliate is a co-defendant with the Debtors in a pending asbestos matter.

[*]  K&E cannot be adverse to this entity in matters related to this entity's bankruptcy proceedings.

[+]  "N/A" indicates that no fees have been incurred in connection with the entity in the 12 months ended July 31, 2014.

| ¶ | Entity | % Fees Incurred[1] | Can K&E Be Adverse? |
|---|--------|--------------------|---------------------|
| 45 | David Bonderman | Included in GM percentage | No. |
| 46 | Comverge, Inc. | 0.11% | Yes. |
| 46 | H.I.G. Capital, LLC | Included with Comverge | No; not listed in Schedule 1. |
| 46 | Nora Meade Brownell | N/A[+] | Yes. |
| 48 | Aptean | 0.06% | Yes; not listed in Schedule 1. |
| 48 | Monte E. Ford | Included with Aptean | Yes. |
| 49 | Calpine Corporation | 0.01% | Yes; but K&E cannot represent a client in a lawsuit, claim, or adversary proceeding directly adverse to Calpine Corporation. |
| 49 | National Energy & Gas Transmission, Inc. | N/A[+] | Yes; not listed in Schedule 1. |
| 50 | Arthur Andersen | N/A[+] | Yes; not listed in Schedule 1. |
| 51 | Jeffrey Liaw | N/A[+] | Yes. |
| 52 | The Boyd's Collection, Ltd. | N/A[+] | Yes; not listed in Schedule 1. |
| 52 | Marc S. Lipschultz | N/A[+] | Yes. |
| 55 | AMF Bowling Worldwide | 0.01% | Yes. |
| 55 | Appleseed's Intermediate Holdings | 0.00% | Yes. |
| 55 | Chemtura Corp. | 0.05% | Yes.[*] |
| 55 | Citadel Broadcasting Corp. | 0.00% | Yes. |
| 55 | Conexant Holdings, Inc. | 0.02% | Yes.[*] |
| 55 | Dex One Corp. | 0.00% | Yes. |
| 55 | The Dolan Company | 0.18% | Yes.[*] |
| 55 | FJ Management, Inc. | 0.00% | Yes.[*] |
| 55 | GGPLP, LLC | 0.01% | Yes.[*] |
| 55 | ION Media Networks | 0.00% | Yes.[*] |
| 55 | Kimball Hill Homes, Inc. | 0.00% | Yes. |
| 55 | Lear Corp | 0.01% | Yes.[*] |
| 55 | Masonite Corp. | 0.00% | Yes.[*] |
| 55 | Maxcom Telecomunicaciones SAB de CV | 0.05% | Yes.[*] |
| 55 | Motors Liquidation Co. (f/k/a General Motors) | 0.00% | No; not listed in Schedule 1. |
| 55 | Muzak L.L.C. | 0.00% | Yes. |
| 55 | Nebraska Book Co. | 0.00% | Yes.[*] |

---

[+]    "N/A" indicates that no fees have been incurred in connection with the entity in the 12 months ended July 31, 2014.

[*]    K&E cannot be adverse to this entity in matters related to this entity's bankruptcy proceedings.

| ¶ | Entity | % Fees Incurred[1] | Can K&E Be Adverse? |
|---|--------|---------------------|---------------------|
| 55 | Neff Corp. | 0.00% | Yes. |
| 55 | Physiotherapy Associates | 0.18% | Yes.* |
| 55 | Sbarro LLC and certain affiliates | 0.11% | Yes.* |
| 55 | Stallion Oilfield Services, Ltd. | 0.00% | Yes. |
| 55 | TMP Directional Marketing LLC | 0.00% | Yes. |
| 55 | TOUSA, Inc. | 0.02% | Yes.* |
| 55 | U.S. Concrete, Inc. | 0.00% | Yes. |
| 55 | W.R. Grace & Company | 0.27% | No. |
| 55 | YRC Worldwide | 0.31% | Yes. |
| 56 | Davidson Kempner Partners | 0.00% | Yes. |
| 57 | Fidelity Investments | 0.00% | Yes. |
| 58 | Oaktree Capital Management, LP and certain affiliates | 0.32% | Yes. |
| 59 | Government of Singapore Investment Corp. Pte. Ltd. and certain affiliates | 0.01% | Yes. |
| 60 | Lazard, Frères & Co. LLC | 0.01% | Yes. |
| 61 | ADA Carbon Solutions, LLC and certain affiliates | 0.19% | Yes. |
| 61 | The Bank of New York Mellon | 0.02% | Yes. |
| 61 | FTI Consulting, Inc. | 0.06% | Yes. |
| 62 | Anchorage Capital Group LLC and certain affiliates | 0.1% | Yes. |
| 62 | Angelo Gordon & Co. and certain affiliates | 0.06% | Yes. |
| 62 | Apollo Global Management LLC | 0.17% | Yes. |
| 62 | Arrowgrass Capital Partners LLP and certain affiliates | 0.00% | Yes. |
| 62 | Avenue Capital Group and certain affiliates | 0.02% | Yes. |
| 62 | Blue Mountain Capital Management L.P. and certain affiliates | 0.00% | Yes. |
| 62 | Centerbridge Group and certain affiliates | 0.44% | Yes. |
| 62 | Cyrus Capital Partners LP and certain affiliates | 0.00% | Yes. |
| 62 | Fortress Investment Group and certain affiliates | 0.17% | Yes. |
| 62 | King Street Capital Management LP and certain affiliates | 0.01% | Yes. |
| 62 | J.P. Morgan Chase & Co. and certain affiliates | 0.20% | Yes. |
| 62 | Magnetar Capital LLC and certain affiliates | 0.03% | Yes. |
| 62 | Marathon Asset Management, LP and certain affiliates | 0.02% | Yes. |
| 62 | Morgan Stanley & Co. Inc. and certain affiliates | 0.26% | Yes. |
| 62 | Oak Hill Advisors LP and certain affiliates | 0.00% | Yes. |
| 62 | Och-Ziff Capital Management and certain affiliates | 0.02% | No. |

---

\*    K&E cannot be adverse to this entity in matters related to this entity's bankruptcy proceedings.

| ¶ | Entity | % Fees Incurred[1] | Can K&E Be Adverse? |
|---|---|---|---|
| 62 | P. Schoenfeld Asset Management LP and certain affiliates | 0.00% | Yes. |
| 62 | Taconic Capital Advisors and certain affiliates | 0.00% | Yes. |
| 62 | York Capital Management LP and certain affiliates | 0.02% | Yes. |
| 63 | Abry Partners II, LLC and certain affiliates | 0.48% | No. |
| 63 | Aegon USA Investment Management, LLC and certain affiliates | 0.00% | Yes. |
| 63 | APG Asset Management US, Inc. and certain affiliates | 0.00% | Yes. |
| 63 | Aviva Investors North America, Inc. and certain affiliates | 0.05% | Yes. |
| 63 | Bluebay Asset Management LLP and certain affiliates | 0.07% | Yes. |
| 63 | BMO Asset Management, Inc. and certain affiliates | 0.00% | Yes. |
| 63 | Carlson Capital, L.P. and certain affiliates | 0.00% | Yes. |
| 63 | Contrarian Funds, LLC and certain affiliates | 0.00% | Yes. |
| 63 | Danske Bank and certain affiliates | 0.00% | Yes. |
| 63 | DDJ Capital Management, LLC and certain affiliates | 0.00% | Yes. |
| 63 | DuPont Capital Management Corp. and certain affiliates | 0.64% | Yes. |
| 63 | Jefferies Capital and certain affiliates | 0.05% | Yes. |
| 63 | New York Life Insurance Co. and certain affiliates | N/A[+] | Yes. |
| 63 | Nuveen Asset Management, LLC and certain affiliates | 0.60% | Yes. |
| 63 | Peak6 Investments, LP and certain affiliates | 0.00% | Yes. |
| 63 | Pine River Capital Management LP and certain affiliates | 0.00% | Yes. |
| 63 | Principal Global Investors, LLC and certain affiliates | 0.09% | Yes. |
| 63 | Redwood Capital Management, LLC and certain affiliates | 0.00% | Yes. |
| 63 | Regiment Capital Advisors, LP and certain affiliates | N/A[+] | Yes. |
| 63 | Salient Partners, LP and certain affiliates | 0.30% | Yes. |
| 63 | Standard Bank PLC and certain affiliates | 0.00% | Yes. |
| 63 | Thrivent Asset Management, LLC and certain affiliates | 0.00% | Yes. |
| 63 | USAA Investment Management Co. and certain affiliates | 0.01% | Yes. |
| 63 | Vector Capital Corp. and certain affiliates | 0.05% | Yes. |
| 64 | Former Potential Purchaser A | 1.06% | Yes. |
| 64 | Former Potential Purchaser B | 0.60% | No. |
| 65 | TransData, Inc | 0.00% | Yes. |
| 67 | Alvarez & Marsal, Inc.; Alvarez & Marsal Capital, LLC; A&M Capital Partners, LP; Alvarez & Marsal Holdings, LLC | 0.01% | Yes. |
| 69 | Blackstone Advisory Partners | 0.15% | Yes. |

[+]    "N/A" indicates that no fees have been incurred in connection with the entity in the 12 months ended July 31, 2014.

| ¶ | Entity | % Fees Incurred[1] | Can K&E Be Adverse? |
|---|--------|-------------------|---------------------|
| 70 | Deloitte & Touche LLP | 0.00% | Yes. |
| 71 | Epiq Bankruptcy Solutions | 0.00% | Yes. |
| 72 | Ernst & Young LLP | 0.00% | Yes. |
| 73 | Evercore Group, LLC | 0.01% | Yes. |
| 74 | KPMG, LLP | 0.07% | No. |
| 75 | PricewaterhouseCoopers LLP | 0.64% | Yes. |
| 76 | Centerview Partners | 0.16% | Yes; but K&E cannot represent a client in a lawsuit, claim, or adversary proceeding directly adverse to Centerview Partners. |
| 76 | Kramer Levin Naftalis & Frankel LLP | 0.00% | Yes. |
| 76 | Moelis & Co. | 0.01% | Yes. |
| 76 | Navigant Consulting, Inc. | 0.00% | Yes. |
| 76 | Perella Weinberg Partners | 0.00% | Yes. |
| 76 | Peter J. Solomon Company Ltd. | 0.00% | No. |
| 76 | Rothschild, Inc. | 0.00% | Yes. |
| 76 | SAIC Energy Environment & Infrastructure LLC | 0.00% | Yes. |
| 80 | Major Oak Power LLC | Included with Blackstone | *See* Amended Declaration for a discussion of K&E's relationship with Major Oak Power LLC and Optim Energy LLC. |
| 80 | Optim Energy, LLC | N/A[+] | Yes. |
| N/A | Paulson & Company, Inc. and certain affiliates | 0.04% | Yes. |
| N/A | Franklin Advisor and certain affiliates | N/A[+] | Yes. |
| N/A | Brookfield Asset Management, LLC and certain affiliates | 0.01% | Yes. |

---

[+]   "N/A" indicates that no fees have been incurred in connection with the entity in the 12 months ended July 31, 2014.

5