**Exhibit B**

**Blackline**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | Case No. 14-10979 (CSS) |
| Debtors. | (Jointly Administered) |

**ORDER AUTHORIZING THE DEBTORS TO ~~RETAIN AND EMPLOY~~ RETAIN AND EMPLOY EVERCORE GROUP L.L.C. AS INVESTMENT BANKER ~~AND FINANCIAL ADVISOR EFFECTIVE~~ AND FINANCIAL ADVISOR EFFECTIVE *NUNC PRO TUNC* TO THE PETITION DATE**

Upon application (the "Application")[2] [D.I. 1712] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of an order (this "Order") authorizing the Debtors to retain and employ Evercore Group L.L.C. ("Evercore") as their investment banker and financial advisor effective *nunc pro tunc* to the Petition Date; all as more fully set forth in the Application ~~and the Ying~~, *the Ying Declaration, the Supplemental Declaration of David Ying in Support of the Application of Energy Future Holdings Corp., et al., for Entry of an Order Authorizing the Debtors to Retain and Employ Evercore Group L.L.C. as Investment Banker and Financial Advisor Effective Nunc Pro Tunc to the Petition Date* [D.I. 1712], *the Second Supplemental Declaration of David Ying in Support of the Application of*

---

[1]  The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810.  The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201.  Due to the large number of debtors in these chapter 11 cases, for which joint administration has been granted ~~on an interim basis~~, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

[2]  Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Application. ~~and the Ying Declarations, as applicable.~~

*Energy Future Holdings Corp., et al., for Entry of an Order Authorizing the Debtors to Retain and Employ Evercore Group L.L.C. as Investment Banker and Financial Adivsor Effective Nunc Pro Tunc to the Petition Date* [D.I. _____] (collectively, the "Ying Declarations") and the First Day Declaration; and the Court having found that the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and the Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and the Court having found that venue of this ~~case~~proceeding and the Application in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having found that the relief requested in the Application (as modified herein) is in the best interests of the Debtors' estates, their creditors, and other Parties-in-Interest; and the Court having found that the Debtors provided appropriate notice of the Application and the opportunity for a hearing on the Application under the circumstances; and the Court having reviewed the Application and having heard the statements in support of the relief requested therein at a hearing, if any, before the Court (the "Hearing"); and the Court having determined that the terms and conditions of Evercore's employment, including the Fee and Expense Structure set forth in the Engagement Letter (attached hereto as **Exhibit 1**), are reasonable as required by section 328(a) of the Bankruptcy Code; and the Court having determined that the legal and factual bases set forth in the Application and the Ying Declarations and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before the Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.      The Application is granted as ~~set forth~~provided herein, effective *nunc pro tunc* to the Petition Date.

2.      To the extent the Application, the Ying Declarations, or the Engagement Letter is inconsistent with the Order, the terms of this Order shall govern.

2.3.    The Debtors are authorized pursuant to sections 327(a) and 328 of the Bankruptcy Code, Bankruptcy Rule 2014, and Local Rule 2014-1 to employ and retain Evercore as their investment banker and financial advisor in accordance with the terms and conditions set forth in the Engagement Letter, effective *nunc pro tunc*, and to pay fees and reimburse expenses to Evercore on the terms and times specified in the Engagement Letter.

3.4.    The terms of the Engagement Letter are approved in all respects except as limited or modified herein, including pursuant to paragraph 1012 hereof.

4.5.    All of Evercore's compensation set forth in the Engagement Letter, including, without limitation, the Fee and Expense Structure, is approved pursuant to section 328(a) of the Bankruptcy Code and Evercore shall be compensated and reimbursed pursuant to section 328(a) of the Bankruptcy Code in accordance with the terms of the Engagement Letter, subject to the procedures set forth in the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and any other applicable orders of this Court.

6.    Paragraph 2(a) of the Engagement Letter is hereby modified by reducing the monthly fee referred to in clause (Y) thereof from $650,000 to $525,000.

7.    Paragraph 8 of the Engagement Letter is hereby modified by deleting the second and third sentences thereof.

8.    Paragraph 14 of the Engagement Letter is hereby modified by deleting the last sentence thereof.

9.    In the event of a conversion of all or substantially all of these chapter 11 cases to cases under chapter 7, no subsequent Sale Fee, Restructuring Fee or DIP Financing Fee shall be payable.

5.10.  None of the fees payable to Evercore shall constitute a "bonus" or fee enhancement under applicable law.

11.    Evercore shall apply the balance of the prepetition expense estimate paid by the Debtors prior to the Petition Date to the first fees and expenses approved pursuant hereto.

12.    Pursuant to the terms of the Engagement Letter, Evercore is entitled to reimbursement by the Debtors for reasonable expenses incurred in connection with the performance of its engagement under the Engagement Letter, including, without limitation, the reasonable fees, disbursements and other charges of Evercore's counsel (which counsel shall not be required to be retained pursuant to section 327 of the Bankruptcy Code or otherwise), in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, any applicable orders of this Court and the Fee Guidelines promulgated by the Office of the United States Trustee, *provided however*, that Evercore shall not seek reimbursement for any services provided by Evercore's counsel to the Debtors; *provided further*, that Evercore shall submit the invoices of Evercore's counsel together with any application seeking allowance of reimbursement for the fees, disbursements and other charges of its counsel.

13.    Evercore shall use reasonable efforts to avoid any duplication of services provided by any of the Debtors' other retained professionals in these chapter 11 cases.

6.14.  Notwithstanding any provision to the contrary in this Order, the U.S. Trustee shall have the right to object to Evercore's request(s) for interim and final compensation and reimbursement based on the reasonableness standard provided in section 330 of the Bankruptcy Code, not section 328(a) of the Bankruptcy Code.  This Order and the record relating to the Court's consideration of the Application shall not prejudice or otherwise affect the rights of the U.S. Trustee to challenge the reasonableness of Evercore's fees under the standard set forth in

the preceding sentence. Accordingly, nothing in this Order or the record shall constitute a finding of fact or conclusion of law binding the U.S. Trustee, on appeal or otherwise, with respect to the reasonableness of Evercore's fees.

7. Evercore shall include in its fee applications, among other things, time records setting forth, in a summary format, a description of the services rendered by each professional, and the amount of time spent on each date by each such individual in rendering services on behalf of the Debtors in half-hour increments, but Evercore shall be excused from keeping time in tenth-hour increments.

15. Notwithstanding anything to the contrary herein or in the proposed *Stipulation and Agreed Order Regarding a Protocol for Certain Case Matters* [D.I. 1947-1], the Official Committee of Unsecured Creditors (the "Committee") shall retain the right to object to any Sale Fee component of Evercore's interim and final fee applications based on the necessity, and duplication, of services under section 330 of the Bankruptcy Code in the event of future retention of additional sale-related financial advisory or investment banking professionals by the Debtors, but in every other respect, review of such applications by the Official Committee of Unsecured Creditors shall be on the bases otherwise set forth herein.

16. Evercore is hereby authorized to keep reasonably detailed time records in half-hour increments and will submit, with any interim or final fee application, together with the time records, a narrative summary, by project category, of services rendered and will identify each professional rendering services and, with respect to such interim or final period, the category of services rendered by Evercore and the amount of compensation requested.

8.17.    Evercore is granted a waiver of the information requirements relating to compensation requests set forth in Local Rule 2016-2(d) to the extent requested in the Application.

9.18.    Evercore shall file fee applications for interim and final allowance of compensation and reimbursement of expenses pursuant to the procedures set forth in sections 330 and 331 of the Bankruptcy Code; provided, however, the fee applications filed by Evercore shall be subject to review only pursuant to the standard of review set forth in section 328 of the Bankruptcy Code and not subject to the standard of review set forth in section 330 of the Bankruptcy Code, except as otherwise expressly set forth herein.

10.19.    The Debtors shall be bound by the indemnification, contribution, reimbursement, exculpation and other provisions of the Engagement Letter and will indemnify and hold harmless Evercore and the other Indemnified Parties, pursuant to the Engagement Letter, subject, during the pendency of these chapter 11 cases, to the following:

(a)    Evercore shall not be entitled to indemnification, contribution or reimbursement pursuant to the Engagement Letter for services, unless such services and the indemnification, contribution or reimbursement therefor are approved by the Court;

(b)    the Debtors shall have no obligation to indemnify Evercore, or provide contribution or reimbursement to Evercore, for any claim or expense that is either:  (i) judicially determined (the determination having become final) to have arisen from Evercore's gross negligence, fraud, willful misconduct, breach of fiduciary duty, if any, bad faith or self-dealing; (ii) for a contractual dispute in which the Debtors allege the breach of Evercore's contractual obligations, unless the Court determines that indemnification, contribution or reimbursement would be permissible pursuant to *In re United Artists Theatre Co.*, 315 F.3d 217 (3d Cir. 2003); or (iii) settled prior to a judicial determination as to the exclusions set forth in clauses (i) and (ii) above, but determined by the Court, after notice and a hearing, to be a claim or expense for which Evercore should not receive indemnity, contribution or reimbursement under the terms of the Engagement Letter as modified by this Order; and

(c) if, before the earlier of (i) the entry of an order confirming a chapter 11 plan in these cases (that order having become a final order no longer subject to appeal) and (ii) the entry of an order closing these chapter 11 cases, Evercore believes that it is entitled to the payment of any amounts by the Debtors on account of the Debtors' indemnification, contribution and/or reimbursement obligations under the Engagement Letter (as modified by this Order), including, without limitation, the advancement of defense costs, Evercore must file an application therefor in the Court, and the Debtors may not pay any such amounts to Evercore before the entry of an order by the Court approving the payment. This subparagraph (c) is intended only to specify the period of time under which the Court shall have jurisdiction over any request for fees and expenses by Evercore for indemnification, contribution or reimbursement, and not a provision limiting the duration of the Debtors' obligation to indemnify Evercore. All Parties-In-Interest shall retain the right to object to any demand by Evercore for indemnification, contribution or reimbursement.

11.20. The fourth paragraph of Schedule I of the Engagement Letter is modified by deleting the following from clause (ii) thereof: "provided, however, that, to the extent permitted by applicable law, in no event shall Evercore or any other Indemnified Person be required to contribute an aggregate amount in excess of the aggregate fees actually paid to Evercore for such financial advisory services."

12.21. The relief granted herein shall be binding upon any chapter 11 trustee appointed in any of these chapter 11 cases, or upon any chapter 7 trustee appointed in the event of a subsequent conversion of any of these chapter 11 cases to cases under chapter 7.

13.22. Notwithstanding anything in the Engagement Letter, Application or the Ying Declarations to the contrary, for the avoidance of doubt, the Bankruptcy Court shall have jurisdiction over any and all matters arising under or in connection with Evercore's engagement by the Debtors on behalf of the Debtors and the Engagement Letter, including without limitation, the indemnification provisions outlined in the Engagement Letter.

14.23. The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order.

15.24.  The terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

16.25.  The Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

Wilmington, Delaware
Dated:  _____, 2014

_____
THE HONORABLE CHRISTOPHER S. SONTCHI
UNITED STATES BANKRUPTCY JUDGE

**EXHIBIT 1 to <u>EXHIBIT A</u>**

**Engagement Letter**

April 28, 2014

Energy Future Holdings Corp.
Energy Future Competitive Holdings Company LLC
Texas Competitive Electric Holdings Company LLC
Energy Future Intermediate Holding Company LLC

1601 Bryan Street
Dallas, TX 75201-3411

Ladies and Gentlemen:

This engagement letter (this "Agreement") is to formalize the arrangement between Evercore Group L.L.C. ("Evercore"), on the one hand, and Energy Future Holdings Corp. ("EFH"), Texas Competitive Electric Holdings LLC ("TCEH"), Energy Future Competitive Holdings Company LLC ("EFCH"), and Energy Future Intermediate Holding Company LLC ("EFIH"), on the other hand, regarding the retention of Evercore by each Company (as defined below) as its financial advisor for the purposes set forth herein. As used herein, "the Company" and "each Company" shall mean each of EFH, TCEH, EFCH and EFIH, together with its direct and indirect subsidiaries (excluding Oncor Electric Delivery Holdings Company LLC and its subsidiaries). This letter amends and restates, in its entirety, the engagement letter between Evercore, EFH, TCEH, EFCH and EFIH dated October 29, 2013 (the "Effective Date").

**Assignment Scope:**

The Company hereby retains Evercore as of the Effective Date as its financial advisor to provide the Company with general investment banking advice and to advise it in connection with any Restructuring, Financing and/or Sale (each defined below, and each of a Restructuring, Financing and/or Sale is also referred to herein as a "Transaction") on the terms and conditions set forth herein. Evercore will provide financial advisory services as customarily may be provided by Evercore in connection with engagements of this type.

As used in this Agreement, the term "Restructuring" shall mean, collectively, any restructuring, reorganization and/or recapitalization (including, but not limited to, a restructuring pursuant to 11 U.S.C. §101 *et. seq.*, as from time to time amended, and any other current or future federal statute or regulation that may be applicable to a restructuring of the Company (11 U.S.C. §101 *et. seq.* and those other statutes and regulations are referred to herein generically as the "Bankruptcy Code")), including without limitation, cancellation, forgiveness, satisfaction, retirement, purchase and/or a material modification or amendment to the terms of the Company's outstanding bank debt, bond debt, preferred stock, and other on and off balance sheet indebtedness as of the Effective Date (individually, an "Existing Obligation" and, collectively, the "Existing Obligations") including pursuant to a sale, repurchase or an exchange transaction, a Plan (as defined below) or a solicitation of consents, waivers, acceptances or authorizations; provided that any cancellation, forgiveness, satisfaction, retirement, purchase and/or material modification or amendment by the Company of any of the Existing Obligations that is (x) undertaken in accordance with the

1

Energy Future Holdings Corp.
Energy Future Competitive Holdings Company LLC
Texas Competitive Electric Holdings Company LLC
Energy Future Intermediate Holding Company LLC
April 28, 2014
Page 2

Company's existing liability management program (or any substantially similar program) or is immaterial in amount or scope and (y) mutually agreed by the Company and Evercore, acting in good faith, to be outside the scope of the transactions contemplated by this Agreement, shall not constitute a Restructuring (any of the foregoing, an "Excepted Transaction"). In addition to the foregoing, for purposes of Section 2 hereof, any Sale (as defined below) of all or substantially all of either or both of TCEH/EFCH and EFIH shall also be deemed a Restructuring.

As used in this Agreement, the term "Financing" shall mean a private issuance, sale or placement of newly issued or treasury equity or equity-linked or debt securities, instruments or obligations of the Company with one or more lenders and/or investors or security holders (each such lender or investor, an "Investor"), including, without limitation, any "DIP Financing" or "exit financing" in connection with a case under the Bankruptcy Code, or any rights offer or any loan or other financing or obligation.

As used in this Agreement, the term "Sale" shall mean whether or not in one transaction, or a series of related transactions: (a) the disposition to one or more third parties whether or not pursuant to the Bankruptcy Code of all or a portion of the issued and outstanding equity securities or any other issued and outstanding securities of the Company by the existing security holders of the Company; or (b) an acquisition, merger, consolidation, or other business combination, including a sale pursuant to the Bankruptcy Code, of which all or a portion of the business, assets or existing equity or securities of the Company are, directly or indirectly, sold or transferred to, or combined with, another company (other than an ordinary course intra-company transaction); or (c) an acquisition, merger, consolidation, sale, including a sale pursuant to the Bankruptcy Code, or other business combination involving the Company pursuant to a successful "credit bid" of any securities by existing securities holders.

**Description of Services**:

1.  Evercore agrees, in consideration of the compensation provided in Section 2 below, to perform the following services, to the extent the Company and Evercore deems such services necessary, appropriate and feasible:

    a.  Reviewing and analyzing the Company's business, operations and financial projections;

    b.  Advising and assisting the Company in a Restructuring, Financing and/or Sale, if the Company determines to undertake such a Transaction;

    c.  Providing financial advice in developing and implementing a Restructuring, which would include:

        i.  Assisting the Company in developing a restructuring plan or plan of reorganization, including a plan of reorganization pursuant to the

2

Energy Future Holdings Corp.
Energy Future Competitive Holdings Company LLC
Texas Competitive Electric Holdings Company LLC
Energy Future Intermediate Holding Company LLC
April 28, 2014
Page 3

      Bankruptcy Code (any such plans are referred to generically herein as the "Plan");

    ii.  Advising the Company on tactics and strategies for negotiating with various stakeholders regarding the Plan;

    iii.  Providing testimony, as necessary, with respect to matters on which Evercore has been engaged to advise the Company in any proceedings under the Bankruptcy Code that are pending before a court (generically referred to herein as the "Bankruptcy Court") exercising jurisdiction over the Company as a debtor; and,

    iv.  Providing the Company with other financial restructuring advice as Evercore and the Company may deem appropriate.

  d.  If the Company pursues a Financing, assisting the Company in:

    i.  Structuring and effecting a Financing;

    ii.  Identifying potential Investors (as defined below) and, at the Company's request, contacting such Investors; and,

    iii.  Working with the Company in negotiating with potential Investors.

It is understood that nothing contained herein shall constitute an express or implied commitment by Evercore to act in any capacity or to underwrite, place or purchase any financing or securities, which commitment, if any, shall be set forth in a separate underwriting placement or other appropriate agreement relating to a Financing.

  e.  If the Company pursues a Sale, assisting the Company in:

    i.  Structuring and effecting a Sale;

    ii.  Identifying interested parties and/or potential acquirors and, at the Company's request, contacting such interested parties and/or potential acquirors; and,

    iii.  Advising the Company in connection with negotiations with potential interested parties and/or acquirors and aiding in the consummation of a Sale.

In rendering its services to the Company hereunder, Evercore is not assuming any responsibility for the Company's underlying business decision to pursue or not to pursue any

3

Energy Future Holdings Corp.
Energy Future Competitive Holdings Company LLC
Texas Competitive Electric Holdings Company LLC
Energy Future Intermediate Holding Company LLC
April 28, 2014
Page 4

business strategy or to effect or not to effect any Restructuring, Financing, and/or Sale or other transaction.

Evercore shall not have any obligation or responsibility to provide accounting, audit or "crisis management" services to the Company, and shall have no responsibility for design or implementation of operating, organizational, administrative, cash management or liquidity improvements relating to the Company; nor shall Evercore be responsible for providing any tax, legal or other specialist advice to the Company. The Company confirms that it will rely on its own counsel, accountants and similar expert advisors for legal, accounting, tax and other similar advice.

**Fees:**

2. As compensation for the services rendered by Evercore hereunder, (i) TCEH/EFCH, EFIH, and EFH, severally and not jointly, agree to pay Evercore, in cash as and when set forth below, their respective shares of the Monthly Fees, as set forth in Section 2(a), and (ii) each Company, severally and not jointly, agrees to pay Evercore the applicable fees in Sections 2(b), 2(c), 2(d) and/or 2(f), in cash as and when set forth below, with respect to any Transaction consummated by such Company:

   a. A monthly fee of (X) $400,000, payable on the Effective Date and on the 1st day of each month commencing December 1, 2013 until April 1, 2014, and (Y) $650,000 payable on the 1st day of each month commencing May 1, 2014 until the earlier of the consummation of a Restructuring or the termination of Evercore's engagement pursuant to the terms of this Agreement (each fee under (X) and (Y), a "Monthly Fee"). In the event of a filing by a Company pursuant to the Bankruptcy Code (a "Filing"): (i) all Monthly Fees earned by Evercore in the first eight months after such Filing, to the extent previously paid to Evercore, shall be credited (one time only and without duplication) against any Restructuring Fee payable hereunder, and (ii) the amount by which each subsequent Monthly Fee (i.e. the Monthly Fees earned by Evercore after the first eight months after such Filing) earned by Evercore exceeds $400,000 shall be credited (one time only and without duplication) against any Restructuring Fee payable hereunder; provided, however, that any such credit of Monthly Fees contemplated by this sentence shall only apply to the extent that all such Monthly Fees and the Restructuring Fee, as applicable, are approved in their entirety by the Bankruptcy Court pursuant to a final order not subject to appeal and which order is acceptable to Evercore. For the avoidance of doubt, any Monthly Fee earned by Evercore hereunder shall not be credited or creditable against any other fees payable hereunder, if earned by Evercore (i) prior to a Filing by a Company, or (ii) subsequent to a Filing and after the first eight months from the Filing date to the extent by which such Monthly Fee is less than $400,000. Commencing with a Filing, Evercore will use reasonable efforts to record whether hours expended providing services under this Agreement are attributable to (i) TCEH/EFCH, (ii) EFIH, (iii) EFH or (iv) more than one of the foregoing (the sum of hours attributable to (i), (ii)

4

Energy Future Holdings Corp.
Energy Future Competitive Holdings Company LLC
Texas Competitive Electric Holdings Company LLC
Energy Future Intermediate Holding Company LLC
April 28, 2014
Page 5

and (iii) for any given period, "Total Allocated Hours"). Each Monthly Fee shall be allocated among TCEH/EFCH, EFIH, and EFH in the proportion of the time attributed to each such entity that month to Total Allocated Hours. Notwithstanding the generality of the foregoing, the Monthly Fee credits described above shall be allocated to TCEH/EFCH, EFIH, and EFH in the same proportion as the Monthly Fees were actually paid by each, and any credit shall only be applied against a Restructuring Fee that is payable hereunder by the Company to whom such credit is allocated.

b. Subject to the credits described in 2(a) and 2(d) (as applicable), a fee (the "Restructuring Fee") payable as follows:

    i. If either a single Restructuring or simultaneous Restructurings involve both TCEH/EFCH and EFIH, then a Restructuring Fee of $35 million shall be payable upon consummation of such Restructuring(s) and shall be allocated among TCEH/EFCH, EFIH and (if involved) EFH in the proportion of (1) time attributed to each entity to (2) time attributed to all such entities (from Filing to Restructuring(s)).

    ii. In any other Restructuring not covered by (b)(i), a Restructuring Fee of $35 million shall be payable in two parts: (a) a portion payable upon consummation of the first Restructuring equal to the product of (X) $35 million and (Y) the proportion of (1) time attributed to whichever of TCEH/EFCH and EFIH the Restructuring involves (together with, if involved, time attributed to EFH) to (2) time attributed to all such entities (from Filing to Restructuring(s)); and (b) a portion payable upon consummation of the next Restructuring (if any) equal to the difference between $35 million and the payment made pursuant to (b)(ii)(a) above, allocated among the entities involved in the proportion to attributed time (from Filing to Restructuring(s)).

It is understood and agreed that there shall be no Restructuring Fee for Excepted Transactions and that, subject to the credits described in 2(a) and 2(d) (as applicable), the aggregate Restructuring Fees due under this Agreement shall not exceed $35 million.

c. A one-time fee of $9 million (a "Sale Fee"), payable upon consummation of any Sale of all or substantially all of either or both of TCEH/EFCH and EFIH. If one or multiple Sales concern more than one of TCEH/EFCH and EFIH, then the Sale Fee shall be allocated (or, upon a subsequent Sale, reallocated) among such entities concerned in the proportion of (1) time attributed to each entity to (2) time attributed to all such entities (from Filing to the most recent Sale). Otherwise the Sale Fee shall be allocated to the entity which such Sale concerns. It is understood and agreed that the aggregate Sale Fee due under this Agreement shall not exceed $9 million.

Energy Future Holdings Corp.
Energy Future Competitive Holdings Company LLC
Texas Competitive Electric Holdings Company LLC
Energy Future Intermediate Holding Company LLC
April 28, 2014
Page 6

d.  A fee (the "DIP Financing Fee") in an amount equal to $11 million shall be payable to Evercore in the event a first lien DIP Financing is raised by EFCH/TCEH or EFIH, of which $3.0 million shall be credited (one time only and without duplication) against any Restructuring Fee payable hereunder; provided, however, that any such credit shall only apply to the extent that the DIP Financing Fee and the Restructuring Fee, as applicable, are approved in their entirety by the Bankruptcy Court pursuant to a final order not subject to appeal and which order is acceptable to Evercore.

The DIP Financing Fee and the related credit shall be allocated on a pro rata basis among TCEH/EFCH and EFIH based on the amount of the respective DIP financing commitments received from each Company's third-party DIP bank lenders pursuant to an executed commitment letter. Each Company shall pay its allocable share of the DIP Financing Fee as follows: (i) fifty percent (50%) of each DIP Financing Fee shall be payable upon receiving an executed commitment letter, and (ii) the remaining fifty percent (50%) of each DIP Financing Fee shall be payable upon entry of a final order by the Bankruptcy Court approving such first lien DIP Financing and the consummation of such first lien DIP Financing. For the avoidance of doubt, the applicable DIP Financing Fee shall be payable regardless of whether a portion of the first lien DIP Financing is comprised of (i) new money from existing pre-petition creditors or third-party lenders, and/or (ii) a rollup, in whole, or part, of pre-petition debt.

Notwithstanding anything to the contrary contained in this Agreement (other than with respect to a DIP Financing Fee with respect to a DIP Financing), no fees shall be payable to Evercore under this Agreement solely on account of any Financing. It is understood and agreed that (a) no DIP Financing Fee shall be payable under this Agreement for any second lien DIP raised by EFCH/TCEH or EFIH and (b) the aggregate DIP Financing Fees due under this Agreement shall not exceed $11 million.

e.  In addition to any fees that may be payable to Evercore and, regardless of whether any Transaction occurs, each Company agrees to promptly reimburse to Evercore all reasonable and documented out-of-pocket expenses (including travel and lodging, data processing and communications charges, courier services, one law firm (plus local counsel if necessary and more cost efficient, in Evercore's reasonable judgment) and other appropriate expenditures). Allocation of out-of-pocket expenses among the Companies shall be as mutually agreed by the Company and Evercore in good faith, subject to Bankruptcy Court approval.

f.  If Evercore provides services to the Company for which a fee is not provided herein, such services shall, except insofar as they are the subject of a separate agreement, be treated as falling within the scope of this Agreement, and the Company and Evercore will agree upon a fee for such services based upon good faith negotiations.

6

Energy Future Holdings Corp.
Energy Future Competitive Holdings Company LLC
Texas Competitive Electric Holdings Company LLC
Energy Future Intermediate Holding Company LLC
April 28, 2014
Page 7

    g.  Notwithstanding anything to the contrary herein, alternate allocations that are agreed by all the parties hereto, may be substituted for the allocations among TCEH/EFCH, EFIH, and EFH described in this Section 2 (subject, after a Filing, to Bankruptcy Court approval, pursuant to a fee application or otherwise).

    h.  All amounts referenced hereunder reflect United States currency and shall be paid promptly in cash after such amounts accrue hereunder.

The Company and Evercore acknowledge and agree that more than one fee may be payable to Evercore under paragraphs 2(b), 2(c), 2(d) and/or 2(f) hereof in connection with any single transaction or a series of transactions, it being understood and agreed that if more than one fee becomes so payable to Evercore in connection with a series of transactions, each such fee shall be paid to Evercore.

If a Restructuring and/or Sale is to be completed through (a) a "pre-packaged" Plan (as such phrase is commonly understood in the context of a Plan) or (b) any other arrangement with pre-petition creditors entered into prior to a Filing that, in the Company's judgment, meaningfully improves the likelihood that such Transaction will be consummated (this clause (b), a "pre-arranged Plan"), then (i) fifty percent (50%) of the fees pursuant to subparagraph 2(b) payable in connection with a "pre-packaged" Plan, or twenty-five (25%) of the fees pursuant to subparagraph 2(b) payable in connection with a pre-arranged Restructuring or Sale, shall be earned by Evercore upon (x) the execution of definitive agreements or delivery of consents with respect to such Plan that are customary for a "pre-packaged" or pre-arranged Plan and (y) the delivery by Evercore of an invoice with respect to such amounts, and, in case, paid by the Company promptly upon receipt of such invoice, and (ii) the remainder of such fees shall be earned and paid to Evercore upon consummation of all transactions contemplated by such Plan; provided, that if Evercore is paid a portion of a fee pursuant to the immediately preceding clause (i) and such "pre-packaged" Plan or pre-arranged Plan is not thereafter consummated, then such portion of such fee previously paid to Evercore may be credited by the Company against any subsequent fee that becomes payable by the Company to Evercore hereunder.

**Retention in Bankruptcy Code Proceedings:**

3.  In the event of a Filing, the Company agrees that it will use commercially reasonable efforts to obtain prompt authorization from the Bankruptcy Court to retain Evercore on the terms and conditions set forth in this Agreement under the provisions of 11 U.S.C. §§ 327 and 328 subject to the standard of review provided in Section 328(a), and not subject to the standard of review under 11 U.S.C. § 330 or any other standard of review. Subject to being so retained, Evercore agrees that during the pendency of any such proceedings, it shall continue to perform its obligations under this Agreement and that it shall file interim and final applications for allowance of the fees and expenses payable to it under the terms of this Agreement pursuant to the applicable Federal Rules of Bankruptcy Procedure, and the local rules and orders of the Bankruptcy Court. The Company shall supply Evercore with a draft of the application and proposed retention

Energy Future Holdings Corp.
Energy Future Competitive Holdings Company LLC
Texas Competitive Electric Holdings Company LLC
Energy Future Intermediate Holding Company LLC
April 28, 2014
Page 8

order authorizing Evercore's retention sufficiently in advance of the filing of such application and proposed order to enable Evercore and its counsel to review and comment thereon. Evercore shall be under no obligation to provide any services under this agreement in the event that the Company becomes a debtor under the Bankruptcy Code unless Evercore's retention under the terms of this Agreement is approved under Section 328(a) by final order of the Bankruptcy Court, not subject to appeal, which order is reasonably acceptable to Evercore. In so agreeing to seek Evercore's retention under Section 328(a), the Company acknowledges that it believes that Evercore's general restructuring experience and expertise, its knowledge of the capital markets and its merger and acquisition capabilities will inure to the benefit of the Company in pursuing any Restructuring, Sale and/or Financing, that the value to the Company of Evercore's services hereunder derives in substantial part from that expertise and experience and that, accordingly, the structure and amount of the contingent fees are reasonable under the standard set forth in Section 328(a), regardless of the number of hours to be expended by Evercore's professionals in the performance of the services to be provided hereunder.  No fee payable to any other person, by the Company or any other party, shall reduce or otherwise affect any fee payable hereunder to Evercore.

**Other:**

4.   Evercore's engagement hereunder is premised on the assumption that the Company will make available to Evercore (i) such access to management and other representatives of the Company as Evercore may reasonably request, and (ii) all information and data that Evercore reasonably deems appropriate, in each case in connection with its services hereunder, and will not omit or withhold any material information.  The Company recognizes and consents to the fact that (a) in connection with its engagement, Evercore will use and rely on the accuracy and completeness of all information provided to or reviewed by Evercore (including, without limitation, publicly available information), and (b) Evercore has no duty to verify any such information and does not assume responsibility for, and may rely without independent verification upon, the accuracy and completeness of any such information.

5.   The Company represents and warrants that any written information made available by the Company, or by Evercore with the consent of the Company, to any Investor in connection with a Financing, taken as a whole, will not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements therein, in light of the circumstances under which they were made, not misleading.  The Company shall extend to each Investor the opportunity to ask questions of, and receive answers from, the Company concerning the Company, and to obtain any information that such Investor may consider necessary in making an informed decision with respect to the relevant Transaction or to verify the accuracy of the information contained in any oral or written information provided by the Company, or by Evercore with the consent of the Company.  Any such information provided to an Investor in due diligence, marketing or otherwise, by the Company or by Evercore with the consent of the Company, is

8

Energy Future Holdings Corp.
Energy Future Competitive Holdings Company LLC
Texas Competitive Electric Holdings Company LLC
Energy Future Intermediate Holding Company LLC
April 28, 2014
Page 9

hereinafter referred to as the "Financing Materials." The Company shall be solely responsible for the contents of any Financing Materials made available to any Investor by the Company or by Evercore with the consent of the Company.

6.    Evercore agrees that information of the Company made available to Evercore by the Company in connection with Evercore's engagement hereunder, whether before or after the Effective Date (the "Confidential Information") will be treated as confidential; provided that such Confidential Information may be disclosed (a) to Evercore's affiliates, partners, employees, agents, advisors and representatives ("Representatives") in connection with its engagement hereunder who shall be informed of the confidential nature of the information and that such information is subject to a confidentiality agreement, (b) to any person with the consent of the Company or (c) as may be required by law or regulatory authority or judicial process.  The term "Confidential Information" does not include any information: (i) that was available to Evercore or any of its Representatives on a non-confidential basis, prior to the time of disclosure to Evercore or such Representatives; (ii) obtained by Evercore or any of its Representatives from a third person which is not known to Evercore or such Representatives to be subject to any prohibition against disclosure; (iii) which was or is independently developed by Evercore or any of its Representatives without violating any confidentiality obligations under this paragraph; or (iv) which was or becomes generally available to the public through no violation by Evercore of this paragraph.  Evercore's obligations under this paragraph will remain in effect for a period of two years from the date of this Agreement.

7.    Evercore's engagement hereunder shall be terminated upon the consummation of the transactions contemplated by a Plan and may be terminated by the Company or Evercore at any time upon written notice and without liability or continuing obligation to the Company or Evercore, except that following such termination (i) Evercore shall remain entitled to any fees accrued, and to reimbursement of any expenses incurred, in each case pursuant to Section 2 that were earned or incurred prior to the termination and have not been paid prior to such termination, and (ii) the provisions of paragraphs 4 through 17 shall survive such termination.  In addition, Evercore shall remain entitled to full payment of all fees contemplated by Section 2 hereof in respect to any Restructuring, Sale, and/or DIP Financing announced or occurring during the 12 months following termination of this Agreement.

8.    Nothing in this Agreement, express or implied, is intended to confer or does confer on any person or entity other than the parties hereto or their respective successors and assigns, and, to the extent expressly set forth in the Indemnification Agreement, the Indemnified Persons (as defined in the Indemnification Agreement), any rights or remedies under or by reason of this Agreement or as a result of the services to be rendered by Evercore hereunder.  The Company acknowledges that Evercore is acting hereunder as an independent contractor, that Evercore is not acting as an agent of the Company or in a fiduciary capacity with respect to the Company and that Evercore is

9

Energy Future Holdings Corp.
Energy Future Competitive Holdings Company LLC
Texas Competitive Electric Holdings Company LLC
Energy Future Intermediate Holding Company LLC
April 28, 2014
Page 10

not assuming any duties or obligations other than those expressly set forth in this Agreement. Nothing contained herein shall be construed as creating, or be deemed to create any agency, joint venture, or partnership.

9.  As part of the compensation payable to Evercore hereunder, the Company agrees to indemnify Evercore and certain related persons in accordance with the Indemnification Agreement. Such indemnification provisions are an integral part of this Agreement, and the terms thereof are incorporated by reference herein. Such indemnification provisions shall survive any termination or completion of Evercore's engagement hereunder.

10. The Company agrees that it shall be solely responsible for any decision made regarding any Transaction regardless of the advice provided by Evercore. The Company acknowledges that the Company's appointment of Evercore pursuant to this Agreement is not intended, and that Evercore is not in a position, to achieve or guarantee the closing of any Transaction or the Company's achievement of the strategic or financial goals underlying any Transaction. Evercore does not provide legal, tax, accounting or audit advice, and, except as agreed in writing by Evercore, Evercore shall not be responsible for the nature, extent, adequacy or performance of any due diligence by or on behalf of the Company with respect to any matters.

11. The Company agrees that any information or advice rendered by Evercore in connection with this engagement is for the confidential use of the senior management and Board of Directors of the Company only in connection with a Transaction and may not be provided to or relied upon by any other person outside the scope of the Services to be provided hereunder without Evercore's prior consent; provided that the Company may disclose such information and advice, on a confidential basis and without reliance thereon, to its legal and other advisors who need to know such information and advice in connection with a Transaction. The Company will not, or will not permit any third party to, use such information or advice for any other purpose or disclose or otherwise refer to such information or advice, or to Evercore, in any manner without Evercore's prior written consent. Without limiting the foregoing, any advice, written or oral, rendered to the Company's Board of Directors or senior management in the course of the Company's engagement of Evercore does not constitute a recommendation to any stakeholder of the Company that such stakeholder might or should take in connection with a Transaction.

12. This Agreement (including the Indemnification Agreement) between Evercore and the Company, embodies the entire agreement and understanding between the parties hereto and supersedes all prior agreements and understandings relating to the subject matter hereof. If any provision of this Agreement is determined to be invalid or unenforceable in any respect, such determination will not affect this Agreement in any other respect, which will remain in full force and effect. This Agreement may not be amended or modified except in writing signed by each of the parties hereto.

10

Energy Future Holdings Corp.
Energy Future Competitive Holdings Company LLC
Texas Competitive Electric Holdings Company LLC
Energy Future Intermediate Holding Company LLC
April 28, 2014
Page 11

13. In the event that, as a result of or in connection with Evercore's engagement for the Company, Evercore becomes involved in any legal proceeding or investigation or is required by government regulation, subpoena or other legal process to produce documents, or to make its current or former personnel available as witnesses at deposition or trial, the Company will reimburse Evercore for the reasonable and documented fees and expenses of one counsel incurred by it in responding to such a request. Nothing in this paragraph shall affect in any way the Company's obligations pursuant to the separate Indemnification Agreement attached hereto.

14. The Company acknowledges that Evercore, in the ordinary course, may have received information and may receive information from third parties which could be relevant to this engagement but is nevertheless subject to a contractual or statutory obligation of confidentiality, and that Evercore is under no obligation hereby to disclose any such information or include such information in its analysis or advice provided to or used by the Company.  In addition, Evercore or one or more of its affiliates may in the past have had, and may currently or in the future have, investment banking, investment management, financial advisory or other relationships with the Company and its officers, directors and affiliates, potential parties to a Transaction involving the Company and their officers, directors and affiliates or persons that are competitors, customers or suppliers of (or have other relationships with) the Company or its affiliates or potential parties to a Transaction involving the Company or their affiliates, and from which conflicting interests or duties may arise.  Nothing contained herein shall limit or preclude Evercore or any of its affiliates from carrying on (i) any business with or from providing any financial or non-financial services to any party whatsoever, including, without limitation, any competitor, supplier or customer of the Company, or any other party which may have interests different from or adverse to the Company or (ii) its business as currently conducted or as such business may be conducted in the future; provided that, (a) during the term of this Agreement and for a period of two (2) years following any termination of this Agreement, Evercore shall not provide financial advisory services to any party other than the Company in any Transaction without the prior written consent of the Company unless Evercore shall have waived its rights under the last sentence of paragraph 7 of this Agreement, and (b) Evercore shall otherwise comply with its confidentiality obligations contained herein.

The Company also acknowledges that Evercore and its affiliates engage in a wide range of activities for their own accounts and the accounts of customers, including corporate finance, mergers and acquisitions, equity sales, trading and research, private equity, asset management and related activities. In connection with these businesses or otherwise, Evercore and its affiliates and/or their respective employees, as well as investment funds in which any of them may have a financial interest, may at any time, directly or indirectly, hold long or short positions and may trade or otherwise effect transactions for their own accounts or the accounts of customers, in debt or equity securities, senior loans and/or derivative products relating to the Company or its affiliates, potential parties to a Transaction or persons that are competitors, customers or suppliers of the Company.

Energy Future Holdings Corp.
Energy Future Competitive Holdings Company LLC
Texas Competitive Electric Holdings Company LLC
Energy Future Intermediate Holding Company LLC
April 28, 2014
Page 12

The Company expressly acknowledges (i) the retention of Evercore by each other Company in connection with the matters contemplated by this Agreement, and (ii) the benefits to it of Evercore's retention by each other Company and Evercore's activities pursuant to the terms of this Agreement. In this regard, the Company hereby waives and releases, to the fullest extent permitted by law, any claims that it may have against Evercore with respect to any actual or perceived conflicts of interest that may result from Evercore's retention by each of the Companies.

15. The Company agrees to provide and procure all corporate, financial and other information regarding the Company and control persons, as Evercore may require to satisfy its obligations as a U.S. financial institution under the USA PATRIOT Act.

16. For the convenience of the parties hereto, any number of counterparts of this Agreement may be executed by the parties hereto, each of which shall be an original instrument and all of which taken together shall constitute one and the same Agreement. Delivery of a signed counterpart of this Agreement by facsimile transmission shall constitute valid sufficient delivery thereof.

17. The parties hereby irrevocably consent to the exclusive jurisdiction of any New York state or United States federal court sitting in New York County over any action or proceeding arising out of or relating to this Agreement, and the parties hereby irrevocably agree that all claims in respect of such action or proceeding may be heard in such New York state or federal court; provided, however, that if any Company entity becomes a debtor under Chapter 11, each party irrevocably agrees to submit to the exclusive jurisdiction and forum of the bankruptcy court in which such Chapter 11 case is proceeding. Evercore and the Company (on its own behalf and, to the extent permitted by applicable law, on behalf of its security holders and creditors) irrevocably agree to waive all rights to trial by jury in any such action or proceeding and irrevocably consent to the service of any and all process in any such action or proceeding by the mailing of copies of such process to each party at its address set forth above. The parties agree that a final judgment in any such action or proceeding shall be conclusive and may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by law. This Agreement and any claim related directly or indirectly to this Agreement shall be governed by and construed in accordance with the laws of the State of New York (without regard to conflicts of law principles). The parties further waive any objection to venue in the State of New York and any objection to any action or proceeding in such state on the basis of *forum non conveniens.*

Energy Future Holdings Corp.
Energy Future Competitive Holdings Company LLC
Texas Competitive Electric Holdings Company LLC
Energy Future Intermediate Holding Company LLC
April 28, 2014
Page 13

If the foregoing correctly sets forth the understanding and agreement between Evercore and the Company, please so indicate in the space provided below, whereupon this letter shall constitute a binding agreement as of the Effective Date.

Very truly yours,

Evercore Group L.L.C.

By: _____
David Ying
Senior Managing Director

Agreed to and Accepted as of the Effective Date:

Energy Future Holdings Corp.

By: _____
Paul Keglevic
Executive Vice President and Chief Financial Officer

Energy Future Competitive Holdings Company LLC

By: _____
Paul Keglevic
Executive Vice President and Chief Financial Officer

Texas Competitive Electric Holdings Company LLC

By: _____
Paul Keglevic
Executive Vice President and Chief Financial Officer

13

Energy Future Holdings Corp.
Energy Future Competitive Holdings Company LLC
Texas Competitive Electric Holdings Company LLC
Energy Future Intermediate Holding Company LLC
April 28, 2014
Page 14

Energy Future Intermediate Holding Company LLC

By:

    Paul Keglevic
    Executive Vice President and Chief Financial Officer

14

Schedule I

Indemnification Agreement


April 28, 2014


Energy Future Holdings Corp.
Energy Future Competitive Holdings Company LLC
Texas Competitive Electric Holdings Company LLC
Energy Future Intermediate Holding Company LLC
1601 Bryan Street
Dallas, TX 75201-3411


Ladies and Gentlemen:

In connection with the engagement of Evercore Group L.L.C. ("Evercore") to render financial advisory services pursuant to the engagement letter, dated April 28, 2014 (the "Engagement Letter"), between Evercore, on the one hand, and Energy Future Holdings Corp. ("EFH"), Texas Competitive Electric Holdings LLC ("TCEH"), Energy Future Competitive Holdings Company LLC ("EFCH"), and Energy Future Intermediate Holding Company LLC ("EFIH"), on the other hand, Evercore and the Company (as defined below) are entering into this agreement as of the Effective Date (as defined in the Engagement Letter). As used herein, "the Company" and "each Company" shall mean each of EFH, TCEH, EFCH and EFIH, together with its direct and indirect subsidiaries.

In the event that Evercore or any of its members, partners, officers, directors, advisors, representatives, employees, agents, affiliates or controlling persons, if any (each of the foregoing, including Evercore, an "Indemnified Person"), become involved in any capacity in any claim, action, proceeding or investigation brought or threatened by or against any person, including the Company's security holders or creditors, related to, arising out of or in connection with Evercore's engagement set forth in the Engagement Letter, Evercore's performance of any service in connection therewith or any transaction contemplated thereby, each Company, jointly and severally, agrees to promptly reimburse each such Indemnified Person for its reasonable and documented legal and other expenses (including the reasonable cost of any investigation and preparation, but excluding any such expenses relating to any action by the Company against an Indemnified Person to enforce the Engagement Letter or this indemnification agreement) as and when incurred. In the event that expenses are advanced to an Indemnified Person pursuant to this paragraph and subsequent to such advancement the indemnification obligations of the Company with respect to such Indemnified Person are not proper (e.g. because of such Indemnified Person's gross negligence), such Indemnified Person agrees to promptly return such advanced expense to the Company.

Each Company, jointly and severally, agrees to indemnify and hold harmless each Indemnified Person from and against, and each Company agrees that no Indemnified Person shall have any liability (whether in contract, tort or otherwise) to the Companies or their security holders

Energy Future Holdings Corp.
Energy Future Competitive Holdings Company LLC
Texas Competitive Electric Holdings Company LLC
Energy Future Intermediate Holding Company LLC
April 28, 2014
Page 2

or creditors related to, arising out of or in connection with, any and all losses, reasonable legal fees, claims, damages, liabilities or expense to which any Indemnified Person may become subject related to, arising out of or in connection with Evercore's engagement pursuant to the Engagement Letter, Evercore's performance of any service in connection therewith or any transaction contemplated thereby (whether or not arising out of any pending or threatened claim, action, proceeding or investigation initiated or brought by or on the Company's behalf and whether or not the Company or an Indemnified Person is a party thereto), except to the extent that any such loss, claim, damage, liability or expense is found by a court of competent jurisdiction in a final, non-appealable judgment to have resulted from such Indemnified Person's gross negligence, bad faith or willful misconduct.

If for any reason the foregoing indemnification is unavailable or insufficient (other than in accordance with the terms hereof), then each Company, jointly and severally, agrees to contribute to the loss, claim, damage, liability or expense for which such indemnification is unavailable or insufficient in such proportion as is appropriate to reflect the relative benefits received, or sought to be received, by the Companies and their security holders on the one hand and the party entitled to contribution on the other hand in the matters contemplated by Evercore's engagement as well as the relative fault of the Companies and such party with respect to such loss, claim, damage, liability or expense and any other relevant equitable considerations.  Each Company agrees that for the purposes hereof the relative benefits received, or sought to be received, by the Companies and their security holders and Evercore shall be deemed to be in the same proportion as (i) the aggregate consideration paid or contemplated to be paid or received or contemplated to be received by the Companies and their security holders, as the case may be, pursuant to a transaction contemplated by the engagement (whether or not consummated) for which Evercore has been engaged to perform financial advisory services bears to (ii) the fees paid to Evercore in connection with such engagement; provided, however, that, to the extent permitted by applicable law, in no event shall Evercore or any other Indemnified Person be required to contribute an aggregate amount in excess of the aggregate fees actually paid to Evercore for such financial advisory services.

The Company's reimbursement, indemnity and contribution obligations under this agreement shall be in addition to any liability which the Company may otherwise have, shall not limit or be limited by any rights Evercore or any other Indemnified Person may otherwise have and shall be binding upon and inure to the benefit of any successors, assigns, heirs and personal representatives of the Company, Evercore, and any other Indemnified Persons.

If any claim, action, proceeding or investigation shall be brought, threatened or asserted against an Indemnified Person in respect of which indemnity may be sought against the Company, Evercore shall within 14 calendar days of receiving notice of such claim, action, proceeding, or investigation, notify the Company if the Company is not a party to such claim, action, proceeding or investigation, provided that the failure to so notify the Company will not relieve the Company from any liability that the Company may have on account of this agreement except to the extent the Company shall not have otherwise learned of such claim, action, proceeding or investigation and such failure results in the forfeiture by the Company of substantial rights and defenses.

2

Energy Future Holdings Corp.
Energy Future Competitive Holdings Company LLC
Texas Competitive Electric Holdings Company LLC
Energy Future Intermediate Holding Company LLC
April 28, 2014
Page 3

The Company shall be entitled to assume the defense of such claim, action, proceeding or investigation, at the Company's expense, with counsel reasonably satisfactory to Evercore.  Such Indemnified Person shall have the right to employ separate counsel in any such claim, action, proceeding or investigation and to participate in the defense thereof, but the fees and expenses of such counsel shall be at the expense of such Indemnified Person unless (i) the Company has agreed to pay such fees and expenses, (ii) the Company has failed to assume the defense, pursue the defense diligently or to employ counsel reasonably satisfactory to Evercore in a timely manner or (iii) in such action, claim, suit, proceeding or investigation there is, in the opinion of outside counsel to such Indemnified Person, an actual or potential conflict of interest or conflict on any material issue between the positions of the Company and an Indemnified Person.  It is understood, however, that in the situation in which an Indemnified Person is entitled to retain separate counsel pursuant to the preceding sentence, the Company shall, in connection with any one such claim, action, proceeding, investigation or separate but substantially similar or related claims, actions, proceedings or investigations in the same jurisdiction arising out of the same general allegations or circumstances, be responsible for the reasonable fees and expenses of only one separate firm of attorneys (in addition to local counsel) at any time for all such Indemnified Persons, which firm shall be designated in writing by Evercore.  No Indemnified Person will enter into any settlement or compromise of any claim, action, proceeding or investigation (or for any related losses, claims, damages, liabilities or expenses) if such settlement or compromise is effected without the Company's prior written consent (which will not be unreasonably withheld).

The Company agrees that, without Evercore's prior written consent (which will not be unreasonably withheld), it will not settle, compromise or consent to the entry of any judgment in any pending or threatened claim, action, proceeding or investigation (whether or not Evercore or any other Indemnified Person is an actual or potential party) in respect of which indemnification or contribution is reasonably likely to be sought hereunder, unless such settlement, compromise or consent includes an unconditional release from the settling, compromising or consenting party of each Indemnified Person from all liability arising out of such claim, action, proceeding or investigation and does not contain any adverse statement with respect to Evercore.  No waiver, amendment or other modification of this agreement shall be effective unless in writing and signed by each party to be bound thereby.

For the convenience of the parties hereto, any number of counterparts of this agreement may be executed by the parties hereto, each of which shall be an original instrument and all of which taken together shall constitute one and the same agreement.  Delivery of a signed counterpart of this agreement by facsimile transmission or other electronic or digital transmission shall constitute valid sufficient delivery thereof.

The parties hereby irrevocably consent to the exclusive jurisdiction of any New York state or United States federal court sitting in New York County over any action or proceeding arising out of or relating to this agreement, and the parties hereby irrevocably agree that all claims in respect of such action or proceeding may be heard in such New York state or federal court; provided,

3

Energy Future Holdings Corp.
Energy Future Competitive Holdings Company LLC
Texas Competitive Electric Holdings Company LLC
Energy Future Intermediate Holding Company LLC
April 28, 2014
Page 4

however, that if a Company entity becomes a debtor under Chapter 11, each party irrevocably agrees to submit to the exclusive jurisdiction and forum of the bankruptcy court in which such Chapter 11 case is proceeding.  Evercore and the Company (on its own behalf and, to the extent permitted by applicable law, on behalf of its security holders and creditors) irrevocably agree to waive all rights to trial by jury in any such action or proceeding and irrevocably consent to the service of any and all process in any such action or proceeding by the mailing of copies of such process to each party at its address set forth above.  The parties agree that a final judgment in any such action or proceeding shall be conclusive and may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by law.   The agreement and any claim related directly or indirectly to this agreement shall be governed by and construed in accordance with the laws of the State of New York (without regard to conflicts of law principles).  The parties further waive any objection to venue in the State of New York and any objection to any action or proceeding in such state on the basis of *forum non conveniens*.

Each party has all legally necessary power and authority to enter into this agreement.  All legally necessary action has been taken by each party for the authorization, execution, delivery of, and the performance of its respective obligations under, this Agreement, and each signatory below is duly authorized to sign this agreement on behalf of the party it represents.

4

Energy Future Holdings Corp.
Energy Future Competitive Holdings Company LLC
Texas Competitive Electric Holdings Company LLC
Energy Future Intermediate Holding Company LLC
April 28, 2014
Page 5

This agreement shall survive any termination of Evercore's engagement pursuant to the Engagement Letter.

Very truly yours,

Evercore Group L.L.C.

By: David Ying
Senior Managing Director

Agreed to and Accepted as of the Effective Date:

Energy Future Holdings Corp.

By: Paul Keglevic
Executive Vice President and Chief Financial Officer

Energy Future Competitive Holdings Company LLC

By: Paul Keglevic
Executive Vice President and Chief Financial Officer

Texas Competitive Electric Holdings Company LLC

By: Paul Keglevic
Executive Vice President and Chief Financial Officer

5

Energy Future Holdings Corp.
Energy Future Competitive Holdings Company LLC
Texas Competitive Electric Holdings Company LLC
Energy Future Intermediate Holding Company LLC
April 28, 2014
Page 6

Energy Future Intermediate Holding Company LLC

By:

Paul Keglevic
Executive Vice President and Chief Financial Officer

April 28, 2014

Energy Future Holdings Corp.
Energy Future Competitive Holdings Company LLC
Texas Competitive Electric Holdings Company LLC
Energy Future Intermediate Holding Company LLC

1601 Bryan Street
Dallas, TX 75201-3411

Ladies and Gentlemen:

This engagement letter (this "Agreement") is to formalize the arrangement between Evercore Group L.L.C. ("Evercore"), on the one hand, and Energy Future Holdings Corp. ("EFH"), Texas Competitive Electric Holdings LLC ("TCEH"), Energy Future Competitive Holdings Company LLC ("EFCH"), and Energy Future Intermediate Holding Company LLC ("EFIH"), on the other hand, regarding the retention of Evercore by each Company (as defined below) as its financial advisor for the purposes set forth herein.  As used herein, "the Company" and "each Company" shall mean each of EFH, TCEH, EFCH and EFIH, together with its direct and indirect subsidiaries (excluding Oncor Electric Delivery Holdings Company LLC and its subsidiaries).  This letter amends and restates, in its entirety, the engagement letter between Evercore, EFH, TCEH, EFCH and EFIH dated October 29, 2013 (the "Effective Date").

**Assignment Scope:**

The Company hereby retains Evercore as of the Effective Date as its financial advisor to provide the Company with general investment banking advice and to advise it in connection with any Restructuring, Financing and/or Sale (each defined below, and each of a Restructuring, Financing and/or Sale is also referred to herein as a "Transaction") on the terms and conditions set forth herein. Evercore will provide financial advisory services as customarily may be provided by Evercore in connection with engagements of this type.

As used in this Agreement, the term "Restructuring" shall mean, collectively, any restructuring, reorganization and/or recapitalization (including, but not limited to, a restructuring pursuant to 11 U.S.C. §101 *et. seq.*, as from time to time amended, and any other current or future federal statute or regulation that may be applicable to a restructuring of the Company (11 U.S.C. §101 *et. seq.* and those other statutes and regulations are referred to herein generically as the "Bankruptcy Code")), including without limitation, cancellation, forgiveness, satisfaction, retirement, purchase and/or a material modification or amendment to the terms of the Company's outstanding bank debt, bond debt, preferred stock, and other on and off balance sheet indebtedness as of the Effective Date (individually, an "Existing Obligation" and, collectively, the "Existing Obligations") including pursuant to a sale, repurchase or an exchange transaction, a Plan (as defined below) or a solicitation of consents, waivers, acceptances or authorizations; provided that any cancellation, forgiveness, satisfaction, retirement, purchase and/or material modification or amendment by the Company of any of the Existing Obligations that is (x) undertaken in accordance with the

1

Energy Future Holdings Corp.
Energy Future Competitive Holdings Company LLC
Texas Competitive Electric Holdings Company LLC
Energy Future Intermediate Holding Company LLC
April 28, 2014
Page 2

Company's existing liability management program (or any substantially similar program) or is immaterial in amount or scope and (y) mutually agreed by the Company and Evercore, acting in good faith, to be outside the scope of the transactions contemplated by this Agreement, shall not constitute a Restructuring (any of the foregoing, an "Excepted Transaction").  In addition to the foregoing, for purposes of Section 2 hereof, any Sale (as defined below) of all or substantially all of either or both of TCEH/EFCH and EFIH shall also be deemed a Restructuring.

As used in this Agreement, the term "Financing" shall mean a private issuance, sale or placement of newly issued or treasury equity or equity-linked or debt securities, instruments or obligations of the Company with one or more lenders and/or investors or security holders (each such lender or investor, an "Investor"), including, without limitation, any "DIP Financing" or "exit financing" in connection with a case under the Bankruptcy Code, or any rights offer or any loan or other financing or obligation.

As used in this Agreement, the term "Sale" shall mean whether or not in one transaction, or a series of related transactions: (a) the disposition to one or more third parties whether or not pursuant to the Bankruptcy Code of all or a portion of the issued and outstanding equity securities or any other issued and outstanding securities of the Company by the existing security holders of the Company; or (b) an acquisition, merger, consolidation, or other business combination, including a sale pursuant to the Bankruptcy Code, of which all or a portion of the business, assets or existing equity or securities of the Company are, directly or indirectly, sold or transferred to, or combined with, another company (other than an ordinary course intra-company transaction); or (c) an acquisition, merger, consolidation, sale, including a sale pursuant to the Bankruptcy Code, or other business combination involving the Company pursuant to a successful "credit bid" of any securities by existing securities holders.

**Description of Services:**

1.  Evercore agrees, in consideration of the compensation provided in Section 2 below, to perform the following services, to the extent the Company and Evercore deems such services necessary, appropriate and feasible:

    a.  Reviewing and analyzing the Company's business, operations and financial projections;

    b.  Advising and assisting the Company in a Restructuring, Financing and/or Sale, if the Company determines to undertake such a Transaction;

    c.  Providing financial advice in developing and implementing a Restructuring, which would include:

        i.  Assisting the Company in developing a restructuring plan or plan of reorganization, including a plan of reorganization pursuant to the

2

Energy Future Holdings Corp.
Energy Future Competitive Holdings Company LLC
Texas Competitive Electric Holdings Company LLC
Energy Future Intermediate Holding Company LLC
April 28, 2014
Page 3

Bankruptcy Code (any such plans are referred to generically herein as the "Plan");

ii.  Advising the Company on tactics and strategies for negotiating with various stakeholders regarding the Plan;

iii. Providing testimony, as necessary, with respect to matters on which Evercore has been engaged to advise the Company in any proceedings under the Bankruptcy Code that are pending before a court (generically referred to herein as the "Bankruptcy Court") exercising jurisdiction over the Company as a debtor; and,

iv.  Providing the Company with other financial restructuring advice as Evercore and the Company may deem appropriate.

d.  If the Company pursues a Financing, assisting the Company in:

i.  Structuring and effecting a Financing;

ii.  Identifying potential Investors (as defined below) and, at the Company's request, contacting such Investors; and,

iii. Working with the Company in negotiating with potential Investors.

It is understood that nothing contained herein shall constitute an express or implied commitment by Evercore to act in any capacity or to underwrite, place or purchase any financing or securities, which commitment, if any, shall be set forth in a separate underwriting placement or other appropriate agreement relating to a Financing.

e.  If the Company pursues a Sale, assisting the Company in:

i.  Structuring and effecting a Sale;

ii.  Identifying interested parties and/or potential acquirors and, at the Company's request, contacting such interested parties and/or potential acquirors; and,

iii. Advising the Company in connection with negotiations with potential interested parties and/or acquirors and aiding in the consummation of a Sale.

In rendering its services to the Company hereunder, Evercore is not assuming any responsibility for the Company's underlying business decision to pursue or not to pursue any

3

Energy Future Holdings Corp.
Energy Future Competitive Holdings Company LLC
Texas Competitive Electric Holdings Company LLC
Energy Future Intermediate Holding Company LLC
April 28, 2014
Page 4

business strategy or to effect or not to effect any Restructuring, Financing, and/or Sale or other transaction.

Evercore shall not have any obligation or responsibility to provide accounting, audit or "crisis management" services to the Company, and shall have no responsibility for design or implementation of operating, organizational, administrative, cash management or liquidity improvements relating to the Company; nor shall Evercore be responsible for providing any tax, legal or other specialist advice to the Company. The Company confirms that it will rely on its own counsel, accountants and similar expert advisors for legal, accounting, tax and other similar advice.

**Fees:**

2.  As compensation for the services rendered by Evercore hereunder, (i) TCEH/EFCH, EFIH, and EFH, severally and not jointly, agree to pay Evercore, in cash as and when set forth below, their respective shares of the Monthly Fees, as set forth in Section 2(a), and (ii) each Company, severally and not jointly, agrees to pay Evercore the applicable fees in Sections 2(b), 2(c), 2(d) and/or 2(f), in cash as and when set forth below, with respect to any Transaction consummated by such Company:

    a.  A monthly fee of (X) $400,000, payable on the Effective Date and on the 1st day of each month commencing December 1, 2013 until April 1, 2014, and (Y) $650,000 payable on the 1st day of each month commencing May 1, 2014 until the earlier of the consummation of a Restructuring or the termination of Evercore's engagement pursuant to the terms of this Agreement (each fee under (X) and (Y), a "Monthly Fee"). In the event of a filing by a Company pursuant to the Bankruptcy Code (a "Filing"): (i) all Monthly Fees earned by Evercore in the first eight months after such Filing, to the extent previously paid to Evercore, shall be credited (one time only and without duplication) against any Restructuring Fee payable hereunder, and (ii) the amount by which each subsequent Monthly Fee (i.e. the Monthly Fees earned by Evercore after the first eight months after such Filing) earned by Evercore exceeds $400,000 shall be credited (one time only and without duplication) against any Restructuring Fee payable hereunder; provided, however, that any such credit of Monthly Fees contemplated by this sentence shall only apply to the extent that all such Monthly Fees and the Restructuring Fee, as applicable, are approved in their entirety by the Bankruptcy Court pursuant to a final order not subject to appeal and which order is acceptable to Evercore. For the avoidance of doubt, any Monthly Fee earned by Evercore hereunder shall not be credited or creditable against any other fees payable hereunder, if earned by Evercore (i) prior to a Filing by a Company, or (ii) subsequent to a Filing and after the first eight months from the Filing date to the extent by which such Monthly Fee is less than $400,000. Commencing with a Filing, Evercore will use reasonable efforts to record whether hours expended providing services under this Agreement are attributable to (i) TCEH/EFCH, (ii) EFIH, (iii) EFH or (iv) more than one of the foregoing (the sum of hours attributable to (i), (ii)

Energy Future Holdings Corp.
Energy Future Competitive Holdings Company LLC
Texas Competitive Electric Holdings Company LLC
Energy Future Intermediate Holding Company LLC
April 28, 2014
Page 5

and (iii) for any given period, "Total Allocated Hours"). Each Monthly Fee shall be allocated among TCEH/EFCH, EFIH, and EFH in the proportion of the time attributed to each such entity that month to Total Allocated Hours. Notwithstanding the generality of the foregoing, the Monthly Fee credits described above shall be allocated to TCEH/EFCH, EFIH, and EFH in the same proportion as the Monthly Fees were actually paid by each, and any credit shall only be applied against a Restructuring Fee that is payable hereunder by the Company to whom such credit is allocated.

b. Subject to the credits described in 2(a) and 2(d) (as applicable), a fee (the "Restructuring Fee") payable as follows:

    i. If either a single Restructuring or simultaneous Restructurings involve both TCEH/EFCH and EFIH, then a Restructuring Fee of $35 million shall be payable upon consummation of such Restructuring(s) and shall be allocated among TCEH/EFCH, EFIH and (if involved) EFH in the proportion of (1) time attributed to each entity to (2) time attributed to all such entities (from Filing to Restructuring(s)).

    ii. In any other Restructuring not covered by (b)(i), a Restructuring Fee of $35 million shall be payable in two parts: (a) a portion payable upon consummation of the first Restructuring equal to the product of (X) $35 million and (Y) the proportion of (1) time attributed to whichever of TCEH/EFCH and EFIH the Restructuring involves (together with, if involved, time attributed to EFH) to (2) time attributed to all such entities (from Filing to Restructuring(s)); and (b) a portion payable upon consummation of the next Restructuring (if any) equal to the difference between $35 million and the payment made pursuant to (b)(ii)(a) above, allocated among the entities involved in the proportion to attributed time (from Filing to Restructuring(s)).

It is understood and agreed that there shall be no Restructuring Fee for Excepted Transactions and that, subject to the credits described in 2(a) and 2(d) (as applicable), the aggregate Restructuring Fees due under this Agreement shall not exceed $35 million.

c. A one-time fee of $9 million (a "Sale Fee"), payable upon consummation of any Sale of all or substantially all of either or both of TCEH/EFCH and EFIH. If one or multiple Sales concern more than one of TCEH/EFCH and EFIH, then the Sale Fee shall be allocated (or, upon a subsequent Sale, reallocated) among such entities concerned in the proportion of (1) time attributed to each entity to (2) time attributed to all such entities (from Filing to the most recent Sale). Otherwise the Sale Fee shall be allocated to the entity which such Sale concerns. It is understood and agreed that the aggregate Sale Fee due under this Agreement shall not exceed $9 million.

Energy Future Holdings Corp.
Energy Future Competitive Holdings Company LLC
Texas Competitive Electric Holdings Company LLC
Energy Future Intermediate Holding Company LLC
April 28, 2014
Page 6

d. A fee (the "DIP Financing Fee") in an amount equal to $11 million shall be payable to Evercore in the event a first lien DIP Financing is raised by EFCH/TCEH or EFIH, of which $3.0 million shall be credited (one time only and without duplication) against any Restructuring Fee payable hereunder; provided, however, that any such credit shall only apply to the extent that the DIP Financing Fee and the Restructuring Fee, as applicable, are approved in their entirety by the Bankruptcy Court pursuant to a final order not subject to appeal and which order is acceptable to Evercore.

The DIP Financing Fee and the related credit shall be allocated on a pro rata basis among TCEH/EFCH and EFIH based on the amount of the respective DIP financing commitments received from each Company's third-party DIP bank lenders pursuant to an executed commitment letter. Each Company shall pay its allocable share of the DIP Financing Fee as follows: (i) fifty percent (50%) of each DIP Financing Fee shall be payable upon receiving an executed commitment letter, and (ii) the remaining fifty percent (50%) of each DIP Financing Fee shall be payable upon entry of a final order by the Bankruptcy Court approving such first lien DIP Financing and the consummation of such first lien DIP Financing. For the avoidance of doubt, the applicable DIP Financing Fee shall be payable regardless of whether a portion of the first lien DIP Financing is comprised of (i) new money from existing pre-petition creditors or third-party lenders, and/or (ii) a rollup, in whole, or part, of pre-petition debt.

Notwithstanding anything to the contrary contained in this Agreement (other than with respect to a DIP Financing Fee with respect to a DIP Financing), no fees shall be payable to Evercore under this Agreement solely on account of any Financing. It is understood and agreed that (a) no DIP Financing Fee shall be payable under this Agreement for any second lien DIP raised by EFCH/TCEH or EFIH and (b) the aggregate DIP Financing Fees due under this Agreement shall not exceed $11 million.

e. In addition to any fees that may be payable to Evercore and, regardless of whether any Transaction occurs, each Company agrees to promptly reimburse to Evercore all reasonable and documented out-of-pocket expenses (including travel and lodging, data processing and communications charges, courier services, one law firm (plus local counsel if necessary and more cost efficient, in Evercore's reasonable judgment) and other appropriate expenditures). Allocation of out-of-pocket expenses among the Companies shall be as mutually agreed by the Company and Evercore in good faith, subject to Bankruptcy Court approval.

f. If Evercore provides services to the Company for which a fee is not provided herein, such services shall, except insofar as they are the subject of a separate agreement, be treated as falling within the scope of this Agreement, and the Company and Evercore will agree upon a fee for such services based upon good faith negotiations.

Energy Future Holdings Corp.
Energy Future Competitive Holdings Company LLC
Texas Competitive Electric Holdings Company LLC
Energy Future Intermediate Holding Company LLC
April 28, 2014
Page 7

g. Notwithstanding anything to the contrary herein, alternate allocations that are agreed by all the parties hereto, may be substituted for the allocations among TCEH/EFCH, EFIH, and EFH described in this Section 2 (subject, after a Filing, to Bankruptcy Court approval, pursuant to a fee application or otherwise).

h. All amounts referenced hereunder reflect United States currency and shall be paid promptly in cash after such amounts accrue hereunder.

The Company and Evercore acknowledge and agree that more than one fee may be payable to Evercore under paragraphs 2(b), 2(c), 2(d) and/or 2(f) hereof in connection with any single transaction or a series of transactions, it being understood and agreed that if more than one fee becomes so payable to Evercore in connection with a series of transactions, each such fee shall be paid to Evercore.

If a Restructuring and/or Sale is to be completed through (a) a "pre-packaged" Plan (as such phrase is commonly understood in the context of a Plan) or (b) any other arrangement with pre-petition creditors entered into prior to a Filing that, in the Company's judgment, meaningfully improves the likelihood that such Transaction will be consummated (this clause (b), a "pre-arranged Plan"), then (i) fifty percent (50%) of the fees pursuant to subparagraph 2(b) payable in connection with a "pre-packaged" Plan, or twenty-five (25%) of the fees pursuant to subparagraph 2(b) payable in connection with a pre-arranged Restructuring or Sale, shall be earned by Evercore upon (x) the execution of definitive agreements or delivery of consents with respect to such Plan that are customary for a "pre-packaged" or pre-arranged Plan and (y) the delivery by Evercore of an invoice with respect to such amounts, and, in case, paid by the Company promptly upon receipt of such invoice, and (ii) the remainder of such fees shall be earned and paid to Evercore upon consummation of all transactions contemplated by such Plan; provided, that if Evercore is paid a portion of a fee pursuant to the immediately preceding clause (i) and such "pre-packaged" Plan or pre-arranged Plan is not thereafter consummated, then such portion of such fee previously paid to Evercore may be credited by the Company against any subsequent fee that becomes payable by the Company to Evercore hereunder.

**Retention in Bankruptcy Code Proceedings:**

3. In the event of a Filing, the Company agrees that it will use commercially reasonable efforts to obtain prompt authorization from the Bankruptcy Court to retain Evercore on the terms and conditions set forth in this Agreement under the provisions of 11 U.S.C. §§ 327 and 328 subject to the standard of review provided in Section 328(a), and not subject to the standard of review under 11 U.S.C. § 330 or any other standard of review. Subject to being so retained, Evercore agrees that during the pendency of any such proceedings, it shall continue to perform its obligations under this Agreement and that it shall file interim and final applications for allowance of the fees and expenses payable to it under the terms of this Agreement pursuant to the applicable Federal Rules of Bankruptcy Procedure, and the local rules and orders of the Bankruptcy Court. The Company shall supply Evercore with a draft of the application and proposed retention

Energy Future Holdings Corp.
Energy Future Competitive Holdings Company LLC
Texas Competitive Electric Holdings Company LLC
Energy Future Intermediate Holding Company LLC
April 28, 2014
Page 8

order authorizing Evercore's retention sufficiently in advance of the filing of such application and proposed order to enable Evercore and its counsel to review and comment thereon. Evercore shall be under no obligation to provide any services under this agreement in the event that the Company becomes a debtor under the Bankruptcy Code unless Evercore's retention under the terms of this Agreement is approved under Section 328(a) by final order of the Bankruptcy Court, not subject to appeal, which order is reasonably acceptable to Evercore. In so agreeing to seek Evercore's retention under Section 328(a), the Company acknowledges that it believes that Evercore's general restructuring experience and expertise, its knowledge of the capital markets and its merger and acquisition capabilities will inure to the benefit of the Company in pursuing any Restructuring, Sale and/or Financing, that the value to the Company of Evercore's services hereunder derives in substantial part from that expertise and experience and that, accordingly, the structure and amount of the contingent fees are reasonable under the standard set forth in Section 328(a), regardless of the number of hours to be expended by Evercore's professionals in the performance of the services to be provided hereunder. No fee payable to any other person, by the Company or any other party, shall reduce or otherwise affect any fee payable hereunder to Evercore.

**Other:**

4.  Evercore's engagement hereunder is premised on the assumption that the Company will make available to Evercore (i) such access to management and other representatives of the Company as Evercore may reasonably request, and (ii) all information and data that Evercore reasonably deems appropriate, in each case in connection with its services hereunder, and will not omit or withhold any material information. The Company recognizes and consents to the fact that (a) in connection with its engagement, Evercore will use and rely on the accuracy and completeness of all information provided to or reviewed by Evercore (including, without limitation, publicly available information), and (b) Evercore has no duty to verify any such information and does not assume responsibility for, and may rely without independent verification upon, the accuracy and completeness of any such information.

5.  The Company represents and warrants that any written information made available by the Company, or by Evercore with the consent of the Company, to any Investor in connection with a Financing, taken as a whole, will not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements therein, in light of the circumstances under which they were made, not misleading. The Company shall extend to each Investor the opportunity to ask questions of, and receive answers from, the Company concerning the Company, and to obtain any information that such Investor may consider necessary in making an informed decision with respect to the relevant Transaction or to verify the accuracy of the information contained in any oral or written information provided by the Company, or by Evercore with the consent of the Company. Any such information provided to an Investor in due diligence, marketing or otherwise, by the Company or by Evercore with the consent of the Company, is

Energy Future Holdings Corp.
Energy Future Competitive Holdings Company LLC
Texas Competitive Electric Holdings Company LLC
Energy Future Intermediate Holding Company LLC
April 28, 2014
Page 9

hereinafter referred to as the "Financing Materials." The Company shall be solely responsible for the contents of any Financing Materials made available to any Investor by the Company or by Evercore with the consent of the Company.

6. Evercore agrees that information of the Company made available to Evercore by the Company in connection with Evercore's engagement hereunder, whether before or after the Effective Date (the "Confidential Information") will be treated as confidential; provided that such Confidential Information may be disclosed (a) to Evercore's affiliates, partners, employees, agents, advisors and representatives ("Representatives") in connection with its engagement hereunder who shall be informed of the confidential nature of the information and that such information is subject to a confidentiality agreement, (b) to any person with the consent of the Company or (c) as may be required by law or regulatory authority or judicial process. The term "Confidential Information" does not include any information: (i) that was available to Evercore or any of its Representatives on a non-confidential basis, prior to the time of disclosure to Evercore or such Representatives; (ii) obtained by Evercore or any of its Representatives from a third person which is not known to Evercore or such Representatives to be subject to any prohibition against disclosure; (iii) which was or is independently developed by Evercore or any of its Representatives without violating any confidentiality obligations under this paragraph; or (iv) which was or becomes generally available to the public through no violation by Evercore of this paragraph. Evercore's obligations under this paragraph will remain in effect for a period of two years from the date of this Agreement.

7. Evercore's engagement hereunder shall be terminated upon the consummation of the transactions contemplated by a Plan and may be terminated by the Company or Evercore at any time upon written notice and without liability or continuing obligation to the Company or Evercore, except that following such termination (i) Evercore shall remain entitled to any fees accrued, and to reimbursement of any expenses incurred, in each case pursuant to Section 2 that were earned or incurred prior to the termination and have not been paid prior to such termination, and (ii) the provisions of paragraphs 4 through 17 shall survive such termination. In addition, Evercore shall remain entitled to full payment of all fees contemplated by Section 2 hereof in respect to any Restructuring, Sale, and/or DIP Financing announced or occurring during the 12 months following any termination of this Agreement.

8. Nothing in this Agreement, express or implied, is intended to confer or does confer on any person or entity other than the parties hereto or their respective successors and assigns, and, to the extent expressly set forth in the Indemnification Agreement, the Indemnified Persons (as defined in the Indemnification Agreement), any rights or remedies under or by reason of this Agreement or as a result of the services to be rendered by Evercore hereunder. The Company acknowledges that Evercore is acting hereunder as an independent contractor, that Evercore is not acting as an agent of the Company or in a fiduciary capacity with respect to the Company and that Evercore is

Energy Future Holdings Corp.
Energy Future Competitive Holdings Company LLC
Texas Competitive Electric Holdings Company LLC
Energy Future Intermediate Holding Company LLC
April 28, 2014
Page 10

not assuming any duties or obligations other than those expressly set forth in this Agreement. Nothing contained herein shall be construed as creating, or be deemed to create any agency, joint venture, or partnership.

9.  As part of the compensation payable to Evercore hereunder, the Company agrees to indemnify Evercore and certain related persons in accordance with the Indemnification Agreement. Such indemnification provisions are an integral part of this Agreement, and the terms thereof are incorporated by reference herein. Such indemnification provisions shall survive any termination or completion of Evercore's engagement hereunder.

10. The Company agrees that it shall be solely responsible for any decision made regarding any Transaction regardless of the advice provided by Evercore. The Company acknowledges that the Company's appointment of Evercore pursuant to this Agreement is not intended, and that Evercore is not in a position, to achieve or guarantee the closing of any Transaction or the Company's achievement of the strategic or financial goals underlying any Transaction. Evercore does not provide legal, tax, accounting or audit advice, and, except as agreed in writing by Evercore, Evercore shall not be responsible for the nature, extent, adequacy or performance of any due diligence by or on behalf of the Company with respect to any matters.

11. The Company agrees that any information or advice rendered by Evercore in connection with this engagement is for the confidential use of the senior management and Board of Directors of the Company only in connection with a Transaction and may not be provided to or relied upon by any other person outside the scope of the Services to be provided hereunder without Evercore's prior consent; provided that the Company may disclose such information and advice, on a confidential basis and without reliance thereon, to its legal and other advisors who need to know such information and advice in connection with a Transaction. The Company will not, or will not permit any third party to, use such information or advice for any other purpose or disclose or otherwise refer to such information or advice, or to Evercore, in any manner without Evercore's prior written consent. Without limiting the foregoing, any advice, written or oral, rendered to the Company's Board of Directors or senior management in the course of the Company's engagement of Evercore does not constitute a recommendation to any stakeholder of the Company that such stakeholder might or should take in connection with a Transaction.

12. This Agreement (including the Indemnification Agreement) between Evercore and the Company, embodies the entire agreement and understanding between the parties hereto and supersedes all prior agreements and understandings relating to the subject matter hereof. If any provision of this Agreement is determined to be invalid or unenforceable in any respect, such determination will not affect this Agreement in any other respect, which will remain in full force and effect. This Agreement may not be amended or modified except in writing signed by each of the parties hereto.

Energy Future Holdings Corp.
Energy Future Competitive Holdings Company LLC
Texas Competitive Electric Holdings Company LLC
Energy Future Intermediate Holding Company LLC
April 28, 2014
Page 11

13. In the event that, as a result of or in connection with Evercore's engagement for the Company, Evercore becomes involved in any legal proceeding or investigation or is required by government regulation, subpoena or other legal process to produce documents, or to make its current or former personnel available as witnesses at deposition or trial, the Company will reimburse Evercore for the reasonable and documented fees and expenses of one counsel incurred by it in responding to such a request. Nothing in this paragraph shall affect in any way the Company's obligations pursuant to the separate Indemnification Agreement attached hereto.

14. The Company acknowledges that Evercore, in the ordinary course, may have received information and may receive information from third parties which could be relevant to this engagement but is nevertheless subject to a contractual or statutory obligation of confidentiality, and that Evercore is under no obligation hereby to disclose any such information or include such information in its analysis or advice provided to or used by the Company. In addition, Evercore or one or more of its affiliates may in the past have had, and may currently or in the future have, investment banking, investment management, financial advisory or other relationships with the Company and its officers, directors and affiliates, potential parties to a Transaction involving the Company and their officers, directors and affiliates or persons that are competitors, customers or suppliers of (or have other relationships with) the Company or its affiliates or potential parties to a Transaction involving the Company or their affiliates, and from which conflicting interests or duties may arise. Nothing contained herein shall limit or preclude Evercore or any of its affiliates from carrying on (i) any business with or from providing any financial or non-financial services to any party whatsoever, including, without limitation, any competitor, supplier or customer of the Company, or any other party which may have interests different from or adverse to the Company or (ii) its business as currently conducted or as such business may be conducted in the future; provided that, (a) during the term of this Agreement and for a period of two (2) years following any termination of this Agreement, Evercore shall not provide financial advisory services to any party other than the Company in any Transaction without the prior written consent of the Company unless Evercore shall have waived its rights under the last sentence of paragraph 7 of this Agreement, and (b) Evercore shall otherwise comply with its confidentiality obligations contained herein.

The Company also acknowledges that Evercore and its affiliates engage in a wide range of activities for their own accounts and the accounts of customers, including corporate finance, mergers and acquisitions, equity sales, trading and research, private equity, asset management and related activities. In connection with these businesses or otherwise, Evercore and its affiliates and/or their respective employees, as well as investment funds in which any of them may have a financial interest, may at any time, directly or indirectly, hold long or short positions and may trade or otherwise effect transactions for their own accounts or the accounts of customers, in debt or equity securities, senior loans and/or derivative products relating to the Company or its affiliates, potential parties to a Transaction or persons that are competitors, customers or suppliers of the Company.

11

Energy Future Holdings Corp.
Energy Future Competitive Holdings Company LLC
Texas Competitive Electric Holdings Company LLC
Energy Future Intermediate Holding Company LLC
April 28, 2014
Page 12

The Company expressly acknowledges (i) the retention of Evercore by each other Company in connection with the matters contemplated by this Agreement, and (ii) the benefits to it of Evercore's retention by each other Company and Evercore's activities pursuant to the terms of this Agreement. In this regard, the Company hereby waives and releases, to the fullest extent permitted by law, any claims that it may have against Evercore with respect to any actual or perceived conflicts of interest that may result from Evercore's retention by each of the Companies.

15. The Company agrees to provide and procure all corporate, financial and other information regarding the Company and control persons, as Evercore may require to satisfy its obligations as a U.S. financial institution under the USA PATRIOT Act.

16. For the convenience of the parties hereto, any number of counterparts of this Agreement may be executed by the parties hereto, each of which shall be an original instrument and all of which taken together shall constitute one and the same Agreement. Delivery of a signed counterpart of this Agreement by facsimile transmission shall constitute valid sufficient delivery thereof.

17. The parties hereby irrevocably consent to the exclusive jurisdiction of any New York state or United States federal court sitting in New York County over any action or proceeding arising out of or relating to this Agreement, and the parties hereby irrevocably agree that all claims in respect of such action or proceeding may be heard in such New York state or federal court; provided, however, that if any Company entity becomes a debtor under Chapter 11, each party irrevocably agrees to submit to the exclusive jurisdiction and forum of the bankruptcy court in which such Chapter 11 case is proceeding. Evercore and the Company (on its own behalf and, to the extent permitted by applicable law, on behalf of its security holders and creditors) irrevocably agree to waive all rights to trial by jury in any such action or proceeding and irrevocably consent to the service of any and all process in any such action or proceeding by the mailing of copies of such process to each party at its address set forth above. The parties agree that a final judgment in any such action or proceeding shall be conclusive and may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by law. This Agreement and any claim related directly or indirectly to this Agreement shall be governed by and construed in accordance with the laws of the State of New York (without regard to conflicts of law principles). The parties further waive any objection to venue in the State of New York and any objection to any action or proceeding in such state on the basis of *forum non conveniens*.

12

Energy Future Holdings Corp.
Energy Future Competitive Holdings Company LLC
Texas Competitive Electric Holdings Company LLC
Energy Future Intermediate Holding Company LLC
April 28, 2014
Page 13

If the foregoing correctly sets forth the understanding and agreement between Evercore and the Company, please so indicate in the space provided below, whereupon this letter shall constitute a binding agreement as of the Effective Date.

Very truly yours,

Evercore Group L.L.C.

By:

David Ying
Senior Managing Director

Agreed to and Accepted as of the Effective Date:

Energy Future Holdings Corp.

By:

Paul Keglevic
Executive Vice President and Chief Financial Officer

Energy Future Competitive Holdings Company LLC

By:

Paul Keglevic
Executive Vice President and Chief Financial Officer

Texas Competitive Electric Holdings Company LLC

By:

Paul Keglevic
Executive Vice President and Chief Financial Officer

13

Energy Future Holdings Corp.
Energy Future Competitive Holdings Company LLC
Texas Competitive Electric Holdings Company LLC
Energy Future Intermediate Holding Company LLC
April 28, 2014
Page 14

Energy Future Intermediate Holding Company LLC

By:

      Paul Keglevic
      Executive Vice President and Chief Financial Officer

Schedule I

Indemnification Agreement


April 28, 2014


Energy Future Holdings Corp.
Energy Future Competitive Holdings Company LLC
Texas Competitive Electric Holdings Company LLC
Energy Future Intermediate Holding Company LLC
1601 Bryan Street
Dallas, TX 75201-3411


Ladies and Gentlemen:

In connection with the engagement of Evercore Group L.L.C. ("Evercore") to render financial advisory services pursuant to the engagement letter, dated April 28, 2014 (the "Engagement Letter"), between Evercore, on the one hand, and Energy Future Holdings Corp. ("EFH"), Texas Competitive Electric Holdings LLC ("TCEH"), Energy Future Competitive Holdings Company LLC ("EFCH"), and Energy Future Intermediate Holding Company LLC ("EFIH"), on the other hand, Evercore and the Company (as defined below) are entering into this agreement as of the Effective Date (as defined in the Engagement Letter).  As used herein, "the Company" and "each Company" shall mean each of EFH, TCEH, EFCH and EFIH, together with its direct and indirect subsidiaries.

In the event that Evercore or any of its members, partners, officers, directors, advisors, representatives, employees, agents, affiliates or controlling persons, if any (each of the foregoing, including Evercore, an "Indemnified Person"), become involved in any capacity in any claim, action, proceeding or investigation brought or threatened by or against any person, including the Company's security holders or creditors, related to, arising out of or in connection with Evercore's engagement set forth in the Engagement Letter, Evercore's performance of any service in connection therewith or any transaction contemplated thereby, each Company, jointly and severally, agrees to promptly reimburse each such Indemnified Person for its reasonable and documented legal and other expenses (including the reasonable cost of any investigation and preparation, but excluding any such expenses relating to any action by the Company against an Indemnified Person to enforce the Engagement Letter or this indemnification agreement) as and when incurred.  In the event that expenses are advanced to an Indemnified Person pursuant to this paragraph and subsequent to such advancement the indemnification obligations of the Company with respect to such Indemnified Person are not proper (e.g. because of such Indemnified Person's gross negligence), such Indemnified Person agrees to promptly return such advanced expense to the Company.

Each Company, jointly and severally, agrees to indemnify and hold harmless each Indemnified Person from and against, and each Company agrees that no Indemnified Person shall have any liability (whether in contract, tort or otherwise) to the Companies or their security holders

1

Energy Future Holdings Corp.
Energy Future Competitive Holdings Company LLC
Texas Competitive Electric Holdings Company LLC
Energy Future Intermediate Holding Company LLC
April 28, 2014
Page 2

or creditors related to, arising out of or in connection with, any and all losses, reasonable legal fees, claims, damages, liabilities or expense to which any Indemnified Person may become subject related to, arising out of or in connection with Evercore's engagement pursuant to the Engagement Letter, Evercore's performance of any service in connection therewith or any transaction contemplated thereby (whether or not arising out of any pending or threatened claim, action, proceeding or investigation initiated or brought by or on the Company's behalf and whether or not the Company or an Indemnified Person is a party thereto), except to the extent that any such loss, claim, damage, liability or expense is found by a court of competent jurisdiction in a final, non-appealable judgment to have resulted from such Indemnified Person's gross negligence, bad faith or willful misconduct.

If for any reason the foregoing indemnification is unavailable or insufficient (other than in accordance with the terms hereof), then each Company, jointly and severally, agrees to contribute to the loss, claim, damage, liability or expense for which such indemnification is unavailable or insufficient in such proportion as is appropriate to reflect the relative benefits received, or sought to be received, by the Companies and their security holders on the one hand and the party entitled to contribution on the other hand in the matters contemplated by Evercore's engagement as well as the relative fault of the Companies and such party with respect to such loss, claim, damage, liability or expense and any other relevant equitable considerations. Each Company agrees that for the purposes hereof the relative benefits received, or sought to be received, by the Companies and their security holders and Evercore shall be deemed to be in the same proportion as (i) the aggregate consideration paid or contemplated to be paid or received or contemplated to be received by the Companies and their security holders, as the case may be, pursuant to a transaction contemplated by the engagement (whether or not consummated) for which Evercore has been engaged to perform financial advisory services bears to (ii) the fees paid to Evercore in connection with such engagement; provided, however, that, to the extent permitted by applicable law, in no event shall Evercore or any other Indemnified Person be required to contribute an aggregate amount in excess of the aggregate fees actually paid to Evercore for such financial advisory services.

The Company's reimbursement, indemnity and contribution obligations under this agreement shall be in addition to any liability which the Company may otherwise have, shall not limit or be limited by any rights Evercore or any other Indemnified Person may otherwise have and shall be binding upon and inure to the benefit of any successors, assigns, heirs and personal representatives of the Company, Evercore, and any other Indemnified Persons.

If any claim, action, proceeding or investigation shall be brought, threatened or asserted against an Indemnified Person in respect of which indemnity may be sought against the Company, Evercore shall within 14 calendar days of receiving notice of such claim, action, proceeding, or investigation, notify the Company if the Company is not a party to such claim, action, proceeding or investigation, provided that the failure to so notify the Company will not relieve the Company from any liability that the Company may have on account of this agreement except to the extent the Company shall not have otherwise learned of such claim, action, proceeding or investigation and such failure results in the forfeiture by the Company of substantial rights and defenses.

Energy Future Holdings Corp.
Energy Future Competitive Holdings Company LLC
Texas Competitive Electric Holdings Company LLC
Energy Future Intermediate Holding Company LLC
April 28, 2014
Page 3

The Company shall be entitled to assume the defense of such claim, action, proceeding or investigation, at the Company's expense, with counsel reasonably satisfactory to Evercore. Such Indemnified Person shall have the right to employ separate counsel in any such claim, action, proceeding or investigation and to participate in the defense thereof, but the fees and expenses of such counsel shall be at the expense of such Indemnified Person unless (i) the Company has agreed to pay such fees and expenses, (ii) the Company has failed to assume the defense, pursue the defense diligently or to employ counsel reasonably satisfactory to Evercore in a timely manner or (iii) in such action, claim, suit, proceeding or investigation there is, in the opinion of outside counsel to such Indemnified Person, an actual or potential conflict of interest or conflict on any material issue between the positions of the Company and an Indemnified Person. It is understood, however, that in the situation in which an Indemnified Person is entitled to retain separate counsel pursuant to the preceding sentence, the Company shall, in connection with any one such claim, action, proceeding, investigation or separate but substantially similar or related claims, actions, proceedings or investigations in the same jurisdiction arising out of the same general allegations or circumstances, be responsible for the reasonable fees and expenses of only one separate firm of attorneys (in addition to local counsel) at any time for all such Indemnified Persons, which firm shall be designated in writing by Evercore. No Indemnified Person will enter into any settlement or compromise of any claim, action, proceeding or investigation (or for any related losses, claims, damages, liabilities or expenses) if such settlement or compromise is effected without the Company's prior written consent (which will not be unreasonably withheld).

The Company agrees that, without Evercore's prior written consent (which will not be unreasonably withheld), it will not settle, compromise or consent to the entry of any judgment in any pending or threatened claim, action, proceeding or investigation (whether or not Evercore or any other Indemnified Person is an actual or potential party) in respect of which indemnification or contribution is reasonably likely to be sought hereunder, unless such settlement, compromise or consent includes an unconditional release from the settling, compromising or consenting party of each Indemnified Person from all liability arising out of such claim, action, proceeding or investigation and does not contain any adverse statement with respect to Evercore. No waiver, amendment or other modification of this agreement shall be effective unless in writing and signed by each party to be bound thereby.

For the convenience of the parties hereto, any number of counterparts of this agreement may be executed by the parties hereto, each of which shall be an original instrument and all of which taken together shall constitute one and the same agreement. Delivery of a signed counterpart of this agreement by facsimile transmission or other electronic or digital transmission shall constitute valid sufficient delivery thereof.

The parties hereby irrevocably consent to the exclusive jurisdiction of any New York state or United States federal court sitting in New York County over any action or proceeding arising out of or relating to this agreement, and the parties hereby irrevocably agree that all claims in respect of such action or proceeding may be heard in such New York state or federal court; provided,

3

Energy Future Holdings Corp.
Energy Future Competitive Holdings Company LLC
Texas Competitive Electric Holdings Company LLC
Energy Future Intermediate Holding Company LLC
April 28, 2014
Page 4

<u>however</u>, that if a Company entity becomes a debtor under Chapter 11, each party irrevocably agrees to submit to the exclusive jurisdiction and forum of the bankruptcy court in which such Chapter 11 case is proceeding.  Evercore and the Company (on its own behalf and, to the extent permitted by applicable law, on behalf of its security holders and creditors) irrevocably agree to waive all rights to trial by jury in any such action or proceeding and irrevocably consent to the service of any and all process in any such action or proceeding by the mailing of copies of such process to each party at its address set forth above.  The parties agree that a final judgment in any such action or proceeding shall be conclusive and may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by law.   The agreement and any claim related directly or indirectly to this agreement shall be governed by and construed in accordance with the laws of the State of New York (without regard to conflicts of law principles).  The parties further waive any objection to venue in the State of New York and any objection to any action or proceeding in such state on the basis of *forum non conveniens.*

Each party has all legally necessary power and authority to enter into this agreement.  All legally necessary action has been taken by each party for the authorization, execution, delivery of, and the performance of its respective obligations under, this Agreement, and each signatory below is duly authorized to sign this agreement on behalf of the party it represents.

Energy Future Holdings Corp.
Energy Future Competitive Holdings Company LLC
Texas Competitive Electric Holdings Company LLC
Energy Future Intermediate Holding Company LLC
April 28, 2014
Page 5

This agreement shall survive any termination of Evercore's engagement pursuant to the Engagement Letter.

Very truly yours,

Evercore Group L.L.C.

By: _____
     David Ying
     Senior Managing Director

Agreed to and Accepted as of the Effective Date:

Energy Future Holdings Corp.

By: _____
     Paul Keglevic
     Executive Vice President and Chief Financial Officer

Energy Future Competitive Holdings Company LLC

By: _____
     Paul Keglevic
     Executive Vice President and Chief Financial Officer

Texas Competitive Electric Holdings Company LLC

By: _____
     Paul Keglevic
     Executive Vice President and Chief Financial Officer

5