**<u>Exhibit B</u>**

**Blackline**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | Case No. 14-10979 (CSS) |
| Debtors. | (Jointly Administered) |

**ORDER AUTHORIZING THE DEBTORS TO RETAIN AND EMPLOY**
**SIDLEY AUSTIN LLP AS SPECIAL COUNSEL FOR CERTAIN CORPORATE AND**
**LITIGATION MATTERS, EFFECTIVE *NUNC PRO TUNC* TO THE PETITION DATE**

Upon the application (the "Application")[2] filed by the Debtors, seeking authorization to employ and retain Sidley Austin LLP ("Sidley") as special counsel to the Debtors, to continue providing legal services, on an as-needed basis as determined by the Debtors, in accordance with the terms and conditions set forth in the Engagement Letters, effective *nunc pro tunc* to the Petition Date, all as more fully set forth in the Application, the Caruso Declaration, and the Doré Declaration, and Supplemental Caruso Declaration; and the Court having found that it has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and the Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and the Court having found that venue of this proceeding and the Application in this district is proper pursuant to 28 U.S.C.

---

[1]    The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810.  The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201.  Due to the large number of debtors in these chapter 11 cases, which are being jointly administered on an interim basis, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Application or the Supplemental Declaration of Paul S. Caruso in Further Support of the Application of the Debtors for an Order Authorizing the Debtors to Retain and Employ Sidley Austin LLP as Special Counsel For Certain Corporate and Litigation Matters, Effective Nunc Pro Tunc to the Petition Date dated September 15, 2014 (the "Supplemental Caruso Declaration"), as applicable.

§§ 1408 and 1409; and the Court having found that the relief requested in the Application is in the best interests of the Debtors' estates, their creditors, and other parties-in-interest; and the Court having found that the Debtors provided appropriate notice of the Application and the opportunity for a hearing on the Application under the circumstances; and the Court having reviewed the Application and having heard the statements in support of the relief requested therein at a hearing, if any, before the Court (the "Hearing"); and the Court having determined that the legal and factual bases set forth in the Application and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before the Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.      The Application is granted, to the extent ~~set forth~~provided herein, effective *nunc pro tunc* to the Petition Date.

2.      To the extent the Application, the Caruso Declaration, the Doré Declaration, the Supplemental Caruso Declaration, or any of the Engagement Letters is inconsistent with this Order, the terms of this Order shall govern.

~~2.~~3.    The Debtors are authorized to retain and employ Sidley as special counsel to the Debtors, to continue providing legal services, on an as-needed basis as determined by the Debtors, effective *nunc pro tunc* to the Petition Date in accordance with the terms and conditions set forth in the Application and in the Engagement Letters attached hereto as **Exhibit 1**, as such letters have been amended or supplemented from time to time.

~~3.~~4.    Sidley shall apply for compensation for professional services rendered and reimbursement of expenses incurred in connection with the Debtors' chapter 11 cases in compliance with sections 330 and 331 of the Bankruptcy Code and applicable provisions of the Bankruptcy Rules, Local Bankruptcy Rules, and any other applicable procedures and orders of

the Court.  Sidley also intends to make a reasonable effort to comply with the U.S. Trustee's request for information and additional disclosures as set forth in the *Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases Effective as of November 1, 2013*, both in connection with this application and the interim and final fee applications to be filed by Sidley in these chapter 11 cases.

5. Sidley shall use its reasonable efforts to avoid any duplication of services provided by any of the Debtors' other retained professionals in these chapter 11 cases.

4.6. Notwithstanding anything in the Engagement Letters to the contrary, Sidley shall apply any currently remaining amounts of the Advanced Payment Retainer and the EPA Advance Payment toward postpetition fees and expenses, after such postpetition fees and expenses are approved pursuant to an order of the Court awarding fees and expenses to Sidley. Sidley is authorized without further order of the Court to allocateshall disclose such remaining amounts from thein advance of the hearing on Sidley's first interim fee application. The Advance Payment Retainer and the EPA Advanced Payment that would otherwiseshall not be allocated toward payment ofreplenished postpetition fees and expenses as are necessary and appropriate to compensate and reimburse Sidley for fees or expenses incurred on or prior to the Petition Date consistent with its ordinary course billing practices.

5.7. Sidley shall not charge a markup to the Debtors with respect to fees billed by contract attorneys who are hired by Sidley to provide services to the Debtors, if any, and shall ensure that any such contract attorneys are subject to conflict checks and disclosures in accordance with the requirements of the Bankruptcy Code and Bankruptcy Rules.

6.8.    Sidley shall provide ten business days notice to the Debtors, the U.S. Trustee, and any official committee before any increases in the current rates set forth in the Application or the Engagement Letters are implemented and shall file such notice with the Court. The U.S. Trustee retains all rights to object to any rate increase on all grounds, including the reasonableness standard set forth in section 330 of the Bankruptcy Code, and the Court retains the right to review any rate increase pursuant to section 330 of the Bankruptcy Code.

7.9.    The Debtors and Sidley are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Application.

8.10.    Notice of the Application as provided therein is deemed to be good and sufficient notice of such Application, and the requirements of the Local Bankruptcy Rules are satisfied by the contents of the Application.

9.    To the extent the Application, the Caruso Declaration, the Doré Declaration, or the Engagement Letter is inconsistent with this Order, the terms of this Order shall govern.

10.11.  The terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

11.12. The Court retains jurisdiction with respect to Notwithstanding any provision to the contrary in this Application, the Caruso Declaration, the Doré Declaration, the Supplemental Caruso Declaration, or any of the Engagement Letters the Court shall retain jurisdiction to hear and to determine all matters arising from or related to the implementation of this Order.

Wilmington, Delaware
Dated: _____, 2014

_____
THE HONORABLE CHRISTOPHER S. SONTCHI
UNITED STATES BANKRUPTCY JUDGE

## EXHIBIT 1 TO EXHIBIT A

**Engagement Letters**



**SIDLEY**  SIDLEY AUSTIN LLP

SIDLEY AUSTIN LLP
1501 K STREET, N.W.
WASHINGTON, D.C. 20005
(202) 736 8000
(202) 736 8711 FAX

| | |
|---|---|
| BEIJING | HONG KONG | SHANGHAI |
| BOSTON | HOUSTON | SINGAPORE |
| BRUSSELS | LONDON | SYDNEY |
| CHICAGO | LOS ANGELES | TOKYO |
| DALLAS | NEW YORK | WASHINGTON, D.C. |
| FRANKFURT | PALO ALTO | |
| GENEVA | SAN FRANCISCO | |

pkeisler@sidley.com
(202) 736 8027

FOUNDED 1866

~~SIDLEY DRAFT  06/21/13~~  *f'2₁₅*

June 21, 2013

**PRIVILEGED AND CONFIDENTIAL**

Stacey H. Doré
Executive Vice President and General Counsel
Energy Future Holdings Corp.
1601 Bryan Street, 43rd Floor
Dallas, TX  75291

Dear Stacey:

Sidley Austin LLP ("Sidley") is pleased that you have asked us to serve as your special
counsel.  This letter governs the terms of our engagement by you.  We have received your
Outside Legal Counsel Policy and agree that it also governs the terms of our engagement by you.
We also agree that to the extent of a conflict between this letter and your Outside Legal Counsel
Policy, the Outside Legal Counsel Policy will control, except as to Section X of the Outside
Legal Counsel Policy entitled "Other Clients," which will not apply to this engagement.  If this
letter is acceptable to you, please sign two copies in the space provided, retain one copy and
return the other copy to me.

Clients.  Our clients will be Energy Future Holdings Corp.; Energy Future Competitive
Holdings Company; Texas Competitive Electric Holdings, LLC;  and Energy Future
Intermediate Holding Company LLC (the "Clients").

Matter; Scope.  We will evaluate whether the Clients have or may have claims or causes
of action against Kohlberg Kravis Roberts & Co LP,  TPG Global, LLC and GS Capital Partners
(collectively, the "Sponsors") arising out of (i) that certain Merger Agreement dated February
25, 2007 pursuant to which the Sponsors, together with entities advised by or affiliated with the
Sponsors, became the direct or indirect shareholders of the Clients (the "Merger"), (ii) all
transactions relating to the Merger, including the acquisition financing arranged for the Merger,
(iii) advisory fees, management fees and financing fees paid by the Clients to the Sponsors from
the date of the Merger through the present, and (iv) such other events or transactions as may
hereafter be identified by the Clients.

Sidley Austin (DC) LLP is a Delaware limited liability partnership doing business as Sidley Austin LLP and practicing in affiliation with other Sidley Austin partnerships.

DC1 4077676v.1

2



Stacey H. Dore
June 14, 2013
Page 2

    <u>Fees and Expenses</u>.  Our fees relating to this matter will be based on the billing rate for each attorney and legal assistant (as well as any other relevant timekeeper), as applicable, devoting time to the matter.  Our billing rates for attorneys in our United States offices currently range from $370 per hour for new associates to $1,100 per hour for senior partners.  Time devoted by legal assistants in those offices is currently charged at billing rates ranging from $210 per hour to $340 per hour.  These billing rates are subject to change from time to time.

    We will include on our bills charges for performing services such as document reproduction, messenger and overnight courier service, travel, long-distance telephone, facsimile and telecopy, document processing, and search and filing fees.  Fees and expenses of others (such as outside experts, consultants, other non-legal professionals and local co-counsel) generally will not be paid by us, but will be billed directly to the Clients.  More detailed information with respect to our expense recovery policies and procedures, which are an integral part of our agreement with you as reflected in this letter, can be accessed on our website at http://www.sidley.com/costrecoveryandpreadmittancebillingratepolicy/us/.  These policies and procedures take into account, among other things, a number of special programs that we have entered into with certain of our vendors and independent service providers.

    Concurrent with your execution of this letter, the Clients shall pay to us an advance payment retainer in the amount of $1 million (the "<u>Advance Payment Retainer</u>").  The Advance Payment Retainer will immediately become the property of Sidley upon receipt by us, and upon its receipt will be deposited into a Sidley operating account.  At no time will the Advance Payment Retainer (or any portion thereof) be transferred to or held in a client trust, custodial or escrow account.

    Sidley's fees and expenses, whether or not invoiced or recorded, will be satisfied from the Advance Payment Retainer as and when services are actually rendered by Sidley.  During the course of this representation, by the 15th of each month for the prior month, we will send you invoices for fees and expenses that have been incurred.  The Clients will promptly remit funds in the invoiced amount to replenish the Advance Payment Retainer upon receipt of an invoice.  If it appears that the services to be provided by Sidley for this matter will exceed $1 million per month, the Clients will increase the Advance Payment Retainer commensurately to ensure that the Advance Payment Retainer is never exhausted.  At the conclusion of this representation and after payment of all of Sidley's fees and expenses, we will refund to the Clients, without interest, the remaining balance (if any) of the Advance Payment Retainer.

    <u>Conflicts</u>.  We have numerous clients, and many of these clients rely upon us for general representation.  We also represent clients with interests in debt of you or certain of your affiliates as well as clients that may compete with you or your affiliates or have an interest in certain of your markets or assets.  We have provided advice to them regarding those positions and interests.

DC1 4077676v.1

3



SIDLEY AUSTIN LLP

Stacey H. Dore
June 14, 2013
Page 3

Although we hope that it never happens, it is possible that an adverse relationship (including litigation) may develop in the future between you and one of our other current or future clients. If we are not representing you in that matter, and the matter in which you and another client have adverse interests is not substantially related to our representation of you in this matter, you agree that we may represent the other client, you waive any conflict arising from such representation, and you agree you will not seek to disqualify or otherwise seek to prevent us from representing such other client. Without limiting the foregoing, you agree that, if one or more of the Clients becomes the subject of a sale process, we may represent another client in its capacity as a buyer, or potential buyer, of the Client(s) or its/their assets. If we do so, we will sequester from the lawyers working for our other client any confidential information we have obtained from you, and we will ensure that no lawyers working on your matters work on the sale matter.

It will be incumbent on us to determine whether a matter in which we represent another client with adverse interests to yours is substantially related to a matter in which we represent you and to so advise you, as soon as practicable consistent with out confidentiality obligations to the other client. Moreover, we cannot and will not represent another client in a matter adverse to you if we have obtained confidential information of a nonpublic nature from you, as a result of our representation of you, that, if known to the other client, could be used by the other client to your material disadvantage, unless we can demonstrate to your reasonable satisfaction that any confidential information we have obtained would be sequestered from the lawyers working for our other client and you provide us with an express written waiver of conflict after having received such satisfactory assurance. You acknowledge that you have had an opportunity to consult with other counsel (in-house or otherwise) prior to agreeing to this waiver, and have made your own decision about whether to do so.

Term of Engagement. Either the Clients or Sidley may terminate our representation in this matter at any time for any reason by written notice, subject on our part to applicable rules of professional conduct. If we terminate the representation before it is concluded, we will take such steps as are reasonably practicable to protect the Clients' interests in the matter.

Unless previously terminated, our engagement in the matter and our representation of the Clients will terminate upon the earlier of (i) the completion by us or abandonment by you of the matter and (ii) our sending our final statement for services rendered in the matter.

*    *    *

Again, we very much appreciate the opportunity to serve you.

DC1 4077676v.1

4

SIDNEY AUSTIN LLP
SIDLEY

Stacey H. Dore
June 14, 2013
Page 4

Very truly yours,

*[signature]* 7/25/13

Peter D. Keisler

Acknowledged and Agreed

By: *[signature]*

Stacey Doré, Executive Vice President and
General Counsel

DC1 4077676v.1

5

**EXHIBIT B**

**Caruso Declaration**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) | Case No. 14-10979 (CSS) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**DECLARATION OF PAUL S. CARUSO IN**
**SUPPORT OF THE APPLICATION OF THE DEBTORS FOR AN**
**ORDER AUTHORIZING THE DEBTORS TO RETAIN AND EMPLOY**
**SIDLEY AUSTIN LLP AS SPECIAL COUNSEL FOR CERTAIN CORPORATE AND**
**LITIGATION MATTERS, EFFECTIVE *NUNC PRO TUNC* TO THE PETITION DATE**

I, Paul S. Caruso, being duly sworn, state the following under penalty of perjury:

1.    I am a partner in the law firm of Sidley Austin LLP ("Sidley") and am a resident at its offices located at One South Dearborn Street in Chicago, Illinois 60603.

2.    I submit this declaration on behalf of Sidley (the "Declaration") in support of the application (the "Application") of the debtors and debtors in possession in the above-captioned cases (collectively, the "Debtors") for an order, pursuant to sections 327(e), 328, and 330 of the Bankruptcy Code for authorization to employ and retain Sidley as special counsel to the Debtors effective *nunc pro tunc* to the Petition Date.[2]  This Declaration is also intended to provide the disclosure of compensation required under section 329 of the Bankruptcy Code and

---

[1]    The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810.  The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201.  Due to the large number of debtors in these chapter 11 cases, for which joint administration has been granted on an interim basis, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

[2]    Capitalized terms not otherwise defined in this Declaration shall have the meanings ascribed to them in the Application.

Bankruptcy Rule 2016(b). Except as otherwise stated in this Declaration, I have personal knowledge of the facts set forth herein.

### Sidley's Qualifications

3. Sidley is both well-qualified and uniquely able to represent the Debtors with respect to the Services as described in the Application. Since July 15, 2011, Sidley has represented the Debtors in connection with certain counseling and litigation matters involving the Environmental Protection Agency (the "EPA"), including with respect to, among other things, counseling and litigation regarding various proposed and final EPA regulations (the "EPA Matters"). In addition, prior to the Petition Date, Sidley advised the Debtors on (a) all matters relating to Kohlberg Kravis Roberts & Co. LP, TPG Global, LLC, and GS Capital Partners (the "Sponsors" and all services related thereto, collectively, the "Sponsor Matters") and (b) various other matters.

4. In providing such prepetition professional services related to the EPA Matters, the Sponsor Matters, and the Intercompany Matters to the Debtors, Sidley has become familiar with the Debtors and their business, including the Debtors' financial affairs, debt structure, operations, and related matters. Having worked with the Debtors' management and their other advisors, Sidley has developed relevant experience and expertise regarding the Debtors that will assist Sidley in providing effective and efficient services in these chapter 11 cases.

### No Duplication of Services

5. The Debtors, Sidley, and K&E have fully discussed Sidley's anticipated role in these chapter 11 cases to avoid duplication of work. Sidley's role will be tailored to providing the Services described in the Application and certain other Services that may be agreed upon by

Sidley and the Debtors, while K&E will serve as the Debtors' primary bankruptcy and reorganization counsel.

### Disclosure of Compensation

6.    Non-EPA Matters.    During the one year period prior to the Petition Date, Sidley received $16,250,000 from the Debtors for services rendered in connection with various other non-EPA Matters.    Specifically, on July 10, 2013, Sidley received $1,000,000 from the Debtors (the "Advanced Payment Retainer").[3]    The Advanced Payment Retainer was supplemented by additional advance payments in the following amounts: (a) $1,500,000 on July 19, 2013; (b) $1,500,000 on July 31, 2013; (c) $1,500,000 on August 12, 2013; (d) $1,500,000 on August 23, 2013; (e) $1,500,000 on September 6, 2013; (f) $1,500,000 on September 16, 2013; (g) $1,500,000 on October 2, 2013; (h) $750,000 on October 25, 2013; (i) $500,000 on December 30, 2013; (j) $500,000 on January 21, 2014; (k) $500,000 on February 10, 2014; (l) $500,000 on February 27, 2014; (m) $1,000,000 on March 27, 2014; and (n) $1,000,000 on April 23, 2014.

7.    The Advance Payment Retainer was allocated prior to the Petition Date to time spent and expenses incurred in connection with the other non-EPA Matters prior to the Petition Date, including both to such time and expenses that were recorded prior to the Petition Date and those which were recorded after the Petition Date.    To the extent that the time spent and expenses incurred prior to the Petition Date turns out to be less than the Advance Payment Retainer allocated prior to the Petition Date, any remaining amounts of the Advanced Payment Retainer shall be allocated to Sidley's postpetition fees and expenses, after such postpetition fees

---

[3]    Under Illinois law, the Advance Payment Retainer became the property of Sidley upon receipt by Sidley. See Dowling v. Chicago Options Assocs., Inc., 875 N.E.2d 1012 (Ill. 2007).    Upon such receipt, the Advance Payment Retainer was deposited into a Sidley operating account.    At no time was the Advance Payment Retainer (or any portion thereof) transferred to or held in a client trust, custodial or escrow account.

and expenses are approved on an interim basis pursuant to an order of the Bankruptcy Court awarding fees and expenses to Sidley.

8.    EPA Matters.    During the one year prior to the Petition Date, Sidley received from the Debtors payments totaling $2,151,869 for services rendered or to be rendered in connection with the EPA Matters.  In particular, between April 29, 2013 and September 8, 2013, Sidley received payments from the Debtors for its services in connection with the EPA Matters in the ordinary course of business and in accordance with the parties' established practice, as follows: (a) $36,291 on April 29, 2013; (b) $55,766 on April 30, 2013; (c) $25,742 on May 13, 2013; (d) $7,620 on June 6, 2013; (e) $243,989 on June 27, 2013; (f) $605 on July 15, 2013; (g) $240,345 on August 2, 2013; and (h) $116,509 on August 26, 2013.  On September 9, 2013, Sidley received $150,000 from the Debtors for services to be rendered in connection with the EPA Matters (the "EPA Advance Payment").[4]  The EPA Advanced Payment was supplemented by additional advance payments in the following amounts: (a) $375,000 on October 7, 2013; (b) $100,000 on July 25, 2013; (c) $400,000 on October 24, 2013; (d) $250,000 on January 7, 2014; and (e) $150,000 on February 20, 2014.  With the exception of $206,126 (the "Remaining Balance"), the EPA Advance Payment was allocated prior to the Petition Date to time spent and expenses incurred in connection with the EPA Matters prior to the Petition Date.  Sidley intends to allocate the Remaining Balance towards Sidley's postpetition fees and expenses, after such postpetition fees and expenses are approved on an interim basis pursuant to an order of the Bankruptcy Court awarding fees and expenses to Sidley.

---

[4]    As with the Advance Payment Retainer, the EPA Advance Payment became the property of Sidley upon receipt by Sidley.  Upon such receipt, the EPA Advance Payment was deposited into a Sidley operating account.  At no time was the EPA Advance Payment (or any portion thereof) transferred to or held in a client trust, custodial or escrow account.

9.    Sidley intends to apply for allowance of compensation for professional services and reimbursement of expenses incurred in connection with these chapter 11 cases, subject to the Court's approval and in compliance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, and any other applicable procedures and orders of the Court.  Sidley will charge the Debtors for its legal services on an hourly basis at its ordinary and customary rates for matters of these types in effect on the date that the services are rendered, and for reimbursement of all costs and expenses incurred by Sidley in connection with its representation of the Debtors.

10.    Sidley's billing rates for lawyers who may work on these matters currently range from $425 to $1,175 per hour for attorneys and from $110 to $375 per hour for paraprofessionals.  The following professionals presently are expected to have primary responsibility for providing services to the Debtors:  Jim Conlan $1,150, Larry Nyhan $1,150, Kevin Lantry $1,100, Paul Caruso $925, and Matthew Clemente $925.  In addition, as necessary, other Sidley professionals and paraprofessionals will provide services to the Debtors.[5]

11.    Sidley's hourly rates are set at a level designed to compensate Sidley fairly for the work of its attorneys and paraprofessionals and to cover fixed and routine expenses.  These hourly rates vary with the experience and seniority of the individuals assigned, and are subject to periodic adjustments to reflect economic and other conditions,[6] with the hourly rate charged being the hourly rate in effect on the date that the services are performed.

[5]    Although Sidley does not anticipate using contract attorneys during these chapter 11 cases, in the unlikely event that it becomes necessary to use contract attorneys, Sidley will not charge a markup to the Debtors with respect to fees billed by such attorneys.  Moreover, any contract attorneys or non-attorneys who are employed by the Debtors in connection with work performed by Sidley will be subject to conflict checks and disclosures in accordance with the requirements of the Bankruptcy Code.

[6]    For example, like many of its peer law firms, Sidley increases the hourly billing rate of attorneys and paraprofessionals annually in the form of: (i) step increases historically awarded in the ordinary course on the
(Continued…)

12.    Sidley represented the Debtors during the twelve-month period before the Petition Date, using the hourly rates listed above.  Such rates are consistent with the rates that Sidley charges other comparable chapter 11 clients, regardless of the location of the chapter 11 case.  Moreover, the rate structure provided by Sidley is appropriate and not significantly different from (a) the rates that Sidley charges for other similar types of representations or (b) the rates that other comparable counsel would charge to do work substantially similar to the work Sidley will perform in these chapter 11 cases.

13.    In addition to the hourly rates set forth above, Sidley customarily charges its clients for costs and expenses incurred in the rendition of services, including mail and express mail charges, special and hand delivery charges, photocopying charges, travel expenses, transcription costs, charges and fees of outside vendors, consultants and service providers.

14.    Sidley currently charges the Debtors $0.20 per page for standard duplication in its New York office and $0.15 per page for standard duplication in its other domestic offices. Notwithstanding the foregoing and consistent with the Local Bankruptcy Rules, Sidley will charge no more than $0.10 per page for standard duplication services in these chapter 11 cases. Sidley does not charge its clients for incoming facsimile transmissions.

15.    Sidley is prepared to act on the Debtors' behalf at its normal and customary rates, together with reimbursement of all costs and expenses incurred by Sidley in connection with its representation of the Debtors, and the Debtors have proposed to pay Sidley at such rates and to reimburse it for such expenses, the applicable provisions of the Bankruptcy Code, the

basis of advancing seniority and promotion and (ii) periodic increases within each attorney's and paraprofessional's current level of seniority.  The step increases do not constitute "rate increases" (as the term is used in the *Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases*, effective November 1, 2013.  As set forth in the Order, Sidley will provide ten business days' notice to the Debtors, the U.S. Trustee, and any official committee before implementing any periodic increases, and shall file such notice with the Court.

Bankruptcy Rules, the Local Rules, and any applicable orders of the Bankruptcy Court. In addition, the Debtors and Sidley expect to develop a prospective budget and staffing plan to comply with the U.S. Trustee's requests for information and additional disclosures, and any other orders of the Court for the period of time from April 29, 2014 to August 31, 2014.

16.    Pursuant to Bankruptcy Rule 2016(b), Sidley has neither shared nor agreed to share (a) any compensation it has received or may receive with another party or person, other than with the partners and associates associated with Sidley or (b) any compensation another person or party has received or may receive. As of the Petition Date, the Debtors did not owe Sidley any amounts for legal services rendered before the Petition Date. Although certain expenses and fees may have been incurred, but not yet allocated to the Advance Payment Retainer and the EPA Advance Payment, such amounts, if any, would be less than the balance of the Advance Payment Retainer and the EPA Advance Payment as of the Petition Date.

### Sidley's Disinterestedness

17.    Sidley has conducted a series of searches of its conflicts databases to identify representations with creditors and other parties in interest (or potential parties in interest) in these chapter 11 cases. Specifically, Sidley has searched its databases to identify, during the last five (5) years (unless otherwise indicated), any (i) circumstances in which Sidley has represented clients other than the Debtors in matters involving the Debtors; (ii) representations by Sidley of the Debtors' non-debtor affiliates; (iii) representations by Sidley of the Debtors' joint venture partners; (iv) representations by Sidley of the Debtors' current and recent former officers and directors; (v) representations by Sidley of certain banks; (vi) representations by Sidley of the Debtors' secured bondholders; (vii) representations by Sidley of the Debtors' unsecured bondholders; (viii) representations by Sidley of the Debtors' contractual counterparties; (ix) representations by Sidley of the Debtors' debtholders; (x) representations by

7

Sidley of the Debtors' DIP parties; (xi) representations by Sidley of the indenture trustees for the Debtors' notes; (xii) representations by Sidley of the Debtors' insurers; (xiii) representations by Sidley of certain investment banks; (xiv) representations by Sidley of the Debtors' landlords; (xv) representations by Sidley of certain parties to the Debtors' letters of credit; (xvi) representations by Sidley of the Debtors' lienholders; (xvii) representations by Sidley of certain litigants; (viii) representations by Sidley of certain other litigants (asbestos); (xix) representations by Sidley of certain potentially responsible parties; (xx) representations by Sidley of the Debtors' professionals; (xxi) representations by Sidley of the Debtors' shareholders; (xxii) representations by Sidley of the Debtors' significant customers; (xxiii) representations by Sidley of the Debtors' significant vendors; (xxiv) representation by Sidley of certain parties related to the Debtors surety bonds; (xxv) representations by Sidley of certain taxing authorities; (xxvi) representations by Sidley of the Debtors' top fifty (50) unsecured creditors; (xxvii) representations by Sidley of the Debtors' unions; (xxviii) representations by Sidley of the United States Trustee and court personnel for the District of Delaware (and key staff members); and (xxix) representations by Sidley of the Debtors' utility providers, all as detailed on Schedule 1 hereto.

18.   Schedule 1 hereto is a list of the names of all creditors and other parties-in-interest (or potential parties in interest) provided by the Debtors to Sidley, which parties and entities were reviewed by Sidley for potential connections with Sidley.  The chart set forth in Schedule 2 hereto summarizes the results of the foregoing searches; specifically, the chart attached as Schedule 2 identifies all current and former representations by Sidley of the parties identified on Schedule 1.  To my knowledge, based upon reasonable inquiry, as set forth in greater detail in Schedule 2, and subject to any explanations and/or exceptions contained therein,

Sidley does not hold or represent any interest adverse to the Debtors' estates with respect to matters upon which Sidley it is to be retained  in these chapter 11 cases.

19.   To the best of my knowledge and information, Sidley has no connections with the Office of the United States Trustee or any person employed by the Office of the United States Trustee or the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"), other than normal professional connections that Sidley has developed as a result of its representations of various parties in interest in unrelated matters before the Bankruptcy Court.

20.   In light of the extensive number of creditors and other parties-in-interest in these chapter 11 cases, and because definitive lists of all such creditors and other parties in interest have not yet been prepared, neither I nor Sidley are able conclusively to identify all relationships or potential relationships with all creditors or other parties in interest in the Debtors' chapter 11 cases.  To the extent that I become aware of any additional relationships that may be relevant to Sidley's representation of the Debtors, I will promptly file a supplemental Declaration.

9

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed on May 29, 2014

/s/ Paul S. Caruso
Paul S. Caruso
Sidley Austin LLP



SIDLEY AUSTIN LLP
1501 K STREET, N.W.
WASHINGTON, D.C. 20005
(202) 736 8000
(202) 736 8711 FAX

BEIJING
BOSTON
BRUSSELS
CHICAGO
DALLAS
FRANKFURT
GENEVA

HONG KONG
HOUSTON
LONDON
LOS ANGELES
NEW YORK
PALO ALTO
SAN FRANCISCO

SHANGHAI
SINGAPORE
SYDNEY
TOKYO
WASHINGTON, D.C.

pkeisler@sidley.com
(202) 736 8027

FOUNDED 1866

~~SIDLEY DRAFT 06/21/13~~

June 21, 2013

**PRIVILEGED AND CONFIDENTIAL**

Stacey H. Doré
Executive Vice President and General Counsel
Energy Future Holdings Corp.
1601 Bryan Street, 43rd Floor
Dallas, TX 75291

Dear Stacey:

    Sidley Austin LLP ("Sidley") is pleased that you have asked us to serve as your special counsel. This letter governs the terms of our engagement by you. We have received your Outside Legal Counsel Policy and agree that it also governs the terms of our engagement by you. We also agree that to the extent of a conflict between this letter and your Outside Legal Counsel Policy, the Outside Legal Counsel Policy will control, except as to Section X of the Outside Legal Counsel Policy entitled "Other Clients," which will not apply to this engagement. If this letter is acceptable to you, please sign two copies in the space provided, retain one copy and return the other copy to me.

    <u>Clients</u>. Our clients will be Energy Future Holdings Corp.; Energy Future Competitive Holdings Company; Texas Competitive Electric Holdings, LLC; and Energy Future Intermediate Holding Company LLC (the "<u>Clients</u>").

    <u>Matter; Scope</u>. We will evaluate whether the Clients have or may have claims or causes of action against Kohlberg Kravis Roberts & Co LP, TPG Global, LLC and GS Capital Partners (collectively, the "<u>Sponsors</u>") arising out of (i) that certain Merger Agreement dated February 25, 2007 pursuant to which the Sponsors, together with entities advised by or affiliated with the Sponsors, became the direct or indirect shareholders of the Clients (the "<u>Merger</u>"), (ii) all transactions relating to the Merger, including the acquisition financing arranged for the Merger, (iii) advisory fees, management fees and financing fees paid by the Clients to the Sponsors from the date of the Merger through the present, and (iv) such other events or transactions as may hereafter be identified by the Clients.

Sidley Austin (DC) LLP is a Delaware limited liability partnership doing business as Sidley Austin LLP and practicing in affiliation with other Sidley Austin partnerships.

DC1 4077676v.1



SIDLEY AUSTIN LLP

Stacey H. Dore
June 14, 2013
Page 2

Fees and Expenses. Our fees relating to this matter will be based on the billing rate for each attorney and legal assistant (as well as any other relevant timekeeper), as applicable, devoting time to the matter. Our billing rates for attorneys in our United States offices currently range from $370 per hour for new associates to $1,100 per hour for senior partners. Time devoted by legal assistants in those offices is currently charged at billing rates ranging from $210 per hour to $340 per hour. These billing rates are subject to change from time to time.

We will include on our bills charges for performing services such as document reproduction, messenger and overnight courier service, travel, long-distance telephone, facsimile and telecopy, document processing, and search and filing fees. Fees and expenses of others (such as outside experts, consultants, other non-legal professionals and local co-counsel) generally will not be paid by us, but will be billed directly to the Clients. More detailed information with respect to our expense recovery policies and procedures, which are an integral part of our agreement with you as reflected in this letter, can be accessed on our website at http://www.sidley.com/costrecoveryandpreadmittancebillingratepolicy/us/. These policies and procedures take into account, among other things, a number of special programs that we have entered into with certain of our vendors and independent service providers.

Concurrent with your execution of this letter, the Clients shall pay to us an advance payment retainer in the amount of $1 million (the "Advance Payment Retainer"). The Advance Payment Retainer will immediately become the property of Sidley upon receipt by us, and upon its receipt will be deposited into a Sidley operating account. At no time will the Advance Payment Retainer (or any portion thereof) be transferred to or held in a client trust, custodial or escrow account.

Sidley's fees and expenses, whether or not invoiced or recorded, will be satisfied from the Advance Payment Retainer as and when services are actually rendered by Sidley. During the course of this representation, by the 15th of each month for the prior month, we will send you invoices for fees and expenses that have been incurred. The Clients will promptly remit funds in the invoiced amount to replenish the Advance Payment Retainer upon receipt of an invoice. If it appears that the services to be provided by Sidley for this matter will exceed $1 million per month, the Clients will increase the Advance Payment Retainer commensurately to ensure that the Advance Payment Retainer is never exhausted. At the conclusion of this representation and after payment of all of Sidley's fees and expenses, we will refund to the Clients, without interest, the remaining balance (if any) of the Advance Payment Retainer.

Conflicts. We have numerous clients, and many of these clients rely upon us for general representation. We also represent clients with interests in debt of you or certain of your affiliates as well as clients that may compete with you or your affiliates or have an interest in certain of your markets or assets. We have provided advice to them regarding those positions and interests.

DC1 4077676v.1

12



SIDLEY

Stacey H. Dore
June 14, 2013
Page 3

Although we hope that it never happens, it is possible that an adverse relationship (including litigation) may develop in the future between you and one of our other current or future clients. If we are not representing you in that matter, and the matter in which you and another client have adverse interests is not substantially related to our representation of you in this matter, you agree that we may represent the other client, you waive any conflict arising from such representation, and you agree you will not seek to disqualify or otherwise seek to prevent us from representing such other client. Without limiting the foregoing, you agree that, if one or more of the Clients becomes the subject of a sale process, we may represent another client in its capacity as a buyer, or potential buyer, of the Client(s) or its/their assets. If we do so, we will sequester from the lawyers working for our other client any confidential information we have obtained from you, and we will ensure that no lawyers working on your matters work on the sale matter.

It will be incumbent on us to determine whether a matter in which we represent another client with adverse interests to yours is substantially related to a matter in which we represent you and to so advise you, as soon as practicable consistent with out confidentiality obligations to the other client. Moreover, we cannot and will not represent another client in a matter adverse to you if we have obtained confidential information of a nonpublic nature from you, as a result of our representation of you, that, if known to the other client, could be used by the other clients to your material disadvantage, unless we can demonstrate to your reasonable satisfaction that any confidential information we have obtained would be sequestered from the lawyers working for our other client and you provide us with an express written waiver of conflict after having received such satisfactory assurance. You acknowledge that you have had an opportunity to consult with other counsel (in-house or otherwise) prior to agreeing to this waiver, and have made your own decision about whether to do so.

Term of Engagement. Either the Clients or Sidley may terminate our representation in this matter at any time for any reason by written notice, subject on our part to applicable rules of professional conduct. If we terminate the representation before it is concluded, we will take such steps as are reasonably practicable to protect the Clients' interests in the matter.

Unless previously terminated, our engagement in the matter and our representation of the Clients will terminate upon the earlier of (i) the completion by us or abandonment by you of the matter and (ii) our sending our final statement for services rendered in the matter.

\*   \*   \*

Again, we very much appreciate the opportunity to serve you.

DC1 4077676v.1

13

## SIDLEY
SIDLEY AUSTIN LLP

Stacey H. Dore
June 14, 2013
Page 4

Very truly yours,

*7/25/13*

Peter D. Keisler

Acknowledged and Agreed

By: _____

Stacey Doré, Executive Vice President and
General Counsel

DC1 4077676v.1