# **EXHIBIT C**

**Form of Term Sheet**

**ENERGY FUTURE HOLDINGS CORP.**

<u>Term Sheet for Acquisition of Reorganized Energy Future Holdings Corp.</u>

This Term Sheet summarizes the principal indicative terms with respect to a potential acquisition by [_____] ("<u>Parent</u>") of the equity of reorganized Energy Future Holdings Corp. ("<u>Reorganized EFH</u>") or one or more of its subsidiaries (including Energy Future Intermediate Holding Company LLC ("<u>EFIH</u>") and its subsidiaries, but excluding Energy Future Competitive Holdings Company LLC, reorganized Texas Competitive Electric Holdings Company LLC ("<u>Reorganized TCEH</u>") and its subsidiaries). EFH, EFIH, and their respective subsidiaries (other than Reorganized TCEH) are collectively referred to herein as the "<u>EFH Debtors</u>". This Term Sheet does not include all of the conditions, covenants, representations, warranties and other terms that would be contained in the definitive Plan of Reorganization and Merger Agreement (each as defined below).

**THE STRUCTURE SET FORTH IN THIS TERM SHEET IS FOR ILLUSTRATIVE PURPOSES ONLY. BIDDERS MAY PROPOSE ANY ALTERNATIVE STRUCTURE(S).**

| | |
|---|---|
| <u>Parties</u> | Energy Future Holdings Corp. ("<u>EFH</u>"), Parent and Merger Sub (as defined below). |
| <u>Merger Sub</u> | A newly formed Delaware limited liability company ("<u>Merger Sub</u>") wholly owned by Parent. |
| | Parent will guarantee all obligations of Merger Sub contemplated by the definitive documentation, including the Merger Agreement. |
| <u>Structure</u> | The acquisition of the equity interests in one or more of the EFH Debtors will take place (i) in accordance with the steps set forth below; (ii) pursuant to a definitive agreement (the "<u>Merger Agreement</u>"); and (iii) as part of a confirmed and effective Chapter 11 plan of reorganization (the "<u>Plan of Reorganization</u>"). The following steps shall occur substantially contemporaneously on the Closing Date (as defined below). |
| | **Step 1**: Equity securities of Reorganized TCEH shall be distributed to TCEH creditors in furtherance of a tax-free spin-off of Reorganized TCEH (the "<u>TCEH Spin</u>") and in accordance with a private letter ruling from the Internal Revenue Service (the "<u>Private Letter Ruling</u>") and the Plan of Reorganization; <u>provided</u> that, the Private Letter Ruling will be requested by the EFH Debtors (and obtained from the IRS) in a form reasonably satisfactory to the |

|  |  |
|---|---|
|  | Parent and the EFH Debtors. |
|  | **Step 2:** Reorganized EFH will issue a number of shares of its common stock to certain creditors and/or equityholders of the EFH Debtors in satisfaction of their allowed claims against the EFH Debtors as set forth in, and pursuant to, the Plan of Reorganization (the "Issuance"). Other allowed claims against the EFH Debtors will be satisfied in exchange for the right to receive cash consideration (the "Repayment Amount") as provided for in the Plan of Reorganization (which cash shall be paid as described in Step 3). |
|  | **Step 3**: Reorganized EFH will merge with and into Merger Sub in a tax-free reorganization under section 368(a)(1)(A) of the the Internal Revenue Code of 1986, as amended (the "Code") pursuant to the Plan of Reorganization (the "Merger"). As a result of the Merger, Merger Sub will acquire all of the assets and liabilities of Reorganized EFH. The merger consideration shall consist of a number of shares of Parent common stock to be issued to the holders of Reorganized EFH equity (other than Parent or Merger Sub) with an aggregate value equal to $[●] (such stock consideration, the "Merger Consideration" and, together with the Repayment Amount, the "Plan Value"). Simultaneous with the Merger, and in accordance with the Plan of Reorganization, the Repayment Amount shall be paid from cash on hand at EFH and EFIH as of the Effective Date and $[●] of cash supplied by Parent and Merger Sub. |
| Deposit | Upon execution of the Merger Agreement, Parent will deposit $[●] with an escrow agent to be held in a segregated, interest-bearing account and disbursed pursuant to an escrow agreement. |
| Financial Backstop | Parent shall provide the necessary financial backstop to meet the statutory feasibility requirements to permit the Plan of Reorganization to be confirmed. |
| Closing Date | The closing of the transactions contemplated by the Merger Agreement (the "Closing") shall occur three (3) business days after satisfaction of all conditions to Closing set forth in the Merger Agreement are met. The date on which such Closing actually occurs is hereinafter referred to as the "Closing Date." |
| Drop Dead Date | December 31, 2015, subject to extension by the EFH Debtors for up to six (6) months in the event that any necessary or advisable regulatory approval has not been received as of such date. |
| Liquidity/Transfer Restrictions | Any Parent common stock to be issued in the Merger shall be freely tradable. Parent shall provide customary registration rights to any recipients that would become control affiliates of Parent for purposes |

2

| | |
|---|---|
| | of the Securities Act. |
| Representations and Warranties | The Merger Agreement shall contain customary representations and warranties of the EFH Debtors, Parent and Merger Sub for transactions of this type. |
| Covenants | The Merger Agreement shall contain covenants and agreements of the EFH Debtors (other than with respect to Oncor Electric Delivery Holdings Company LLC ("Oncor") and its subsidiaries, collectively, the "Oncor Entities"), Parent and Merger Sub, customary for transactions of this type; provided that EFH will (i) exercise its rights, if any, as a direct or indirect equityholder of the Oncor Entities in a manner that seeks to cause Oncor to abide by certain covenants and agreements under the Merger Agreement and (ii) withhold its consent to certain actions under the organizational agreements of the Oncor Entities. |
| Regulatory Covenant | Parent and Merger Sub will, and EFH will exercise its rights, if any, as a direct or indirect equityholder of the Oncor Entities in a manner that seeks to cause each of the Oncor Entities to, use its respective reasonable best efforts to obtain as promptly as practicable all consents, registrations, approvals, permits and authorizations from any governmental entity which are necessary or advisable in connection with the execution, delivery and performance of the Merger Agreement and the consummation of the transactions contemplated by the Merger Agreement, including taking all actions required by, and accepting all conditions and/or requirements attached to any order or approval issued by, any governmental entity in connection with obtaining such consent, registration, approval, permit or authorization. |
| Closing Conditions | The obligation of Parent and EFH to effect the Closing will be subject solely to the satisfaction (or waiver) of the following conditions: |

- The terms and conditions of the Plan of Reorganization shall not be inconsistent, in any material respect, with the provisions set forth in the Merger Agreement and the requirements set forth in Exhibit A attached hereto;

- The Bankruptcy Court shall have entered an order approving the Plan of Reorganization and the Merger Agreement, and such order shall be final and in full force and effect and not subject to any stay;

- Any and all governmental consents and approvals necessary in connection with the transactions contemplated by the Merger

3

- Agreement (including HSR, NRC, FERC, FCC and the PUCT) shall have been obtained and shall remain in full force and effect; <u>provided</u> that, approval of the PUCT shall have been obtained if the PUCT issues its conditional approval to the transactions;

- No court or other governmental entity of competent jurisdiction shall have enacted, issued, promulgated, enforced or entered any law (whether temporary, preliminary or permanent) that is in effect and restrains, enjoins, renders illegal or otherwise prohibits consummation of the transactions contemplated by the Merger Agreement;

- EFH shall have obtained a Private Letter Ruling related to the TCEH Spin from the IRS to the reasonable satisfaction of EFH and Parent;

- The TCEH Spin shall have occurred in accordance with the Private Letter Ruling;

- Each of Parent and EFH shall have obtained an opinion of counsel to the effect that the Merger will qualify as a reorganization within the meaning of Section 368(a) of the Code;

- Reorganized EFH, Reorganized TCEH and Parent shall have duly executed a Tax Matters Agreement that is not inconsistent, in any material respect, with the terms set forth on <u>Exhibit B</u> hereto;

- The shares of Parent common stock issuable in the Merger shall have been approved for listing on the NYSE or NASDAQ, subject to official notice of issuance, and either (i) a Form S-4 shall have become effective under the Securities Act of 1933 and shall not be the subject of any stop order or proceedings seeking a stop order, and Parent shall have received all state securities or "blue sky" authorizations necessary for the issuance of the Merger Consideration or (ii) the SEC shall have issued a favorable "no-action" letter agreeing that the exemption from the registration requirements of the Securities Act and from applicable state securities laws provided by Section 1145 of the Bankruptcy Code is applicable in connection with the issuance of the Merger Consideration;

- The representations of the parties in the Merger Agreement shall be true and correct as of the Closing Date except any

|  |  |
|---|---|
|  | failure to be true and correct which has not had, individually or in the aggregate, a material adverse effect; and |
|  | ▪ The covenants to be performed by EFH, Parent, and Merger Sub in the Merger Agreement required to be performed at or prior to the Closing Date shall have been performed and complied with in all material respects. |
| <u>Termination</u> | The Merger Agreement may be terminated at any time prior to the Closing: |

a. By mutual consent of Parent and EFH;

b. If the Closing shall not have been consummated by the Drop Dead Date; provided that, such right to terminate shall not be available to any party whose failure to fulfill any obligation under the Merger Agreement has been the cause of or resulted in the failure of the Closing to occur on or before the Drop Dead Date;

c. If any order permanently restraining, enjoining, rendering illegal or otherwise prohibiting consummation of the transactions contemplated by the Merger Agreement shall have become final and non-appealable;

d. If there has been a breach, in any material respect, of any representation, warranty, covenant or agreement made by the other party in the Merger Agreement which cannot be, or has not been, cured within ten (10) business days after receipt of written notice thereof; provided, however, that the party seeking such termination is not then in material breach of the Merger Agreement so as to cause any of the conditions to Closing not to be satisfied;

e. If the other party has failed to consummate the Closing no later than the date required by the Merger Agreement; provided that the party seeking termination is not then in material breach of the Merger Agreement so as to cause the failure to consummate the Closing;

f. If the bankruptcy court enters an order approving a Plan of Reorganization that is materially and adversely inconsistent with the Merger Agreement;

g. If the bankruptcy court shall enter an order approving a person or entity other than Parent and Merger Sub as the Successful Bidder (as defined in the Bidding Procedures

5

        attached hereto as <u>Exhibit C</u>);

    h. If the pending Chapter 11 cases are dismissed or converted to a case under Chapter 7 of the Bankruptcy Code and neither such dismissal or conversion contemplates the transactions contemplated by the Merger Agreement; or

    i. By EFH, if the EFH board of directors determines, in its sole discretion, that consummation of the transactions contemplated by the Merger Agreement is inconsistent with its fiduciary duties to the stakeholders of the EFH Debtors.

| | |
|---|---|
| <u>Topping Fee</u> | Subject to approval by the bankruptcy court, $[●] (the "<u>Topping Fee</u>") will become due to Parent solely upon the occurrence of both: (i) either (A) the bankruptcy court approving a Successful Bid (as defined in the Bidding Procedures attached hereto as <u>Exhibit C</u>) by a person or entity other than Parent or its affiliates, or (B) the EFH board of directors determining that consummation of the transactions contemplated by the Merger Agreement is reasonably likely to be inconsistent with its fiduciary duties to the stakeholders of the EFH Debtors; <u>and</u> (ii) the EFH Debtors consummating the alternative transaction for which they have terminated the Merger Agreement. |
| <u>Effects of Termination</u> | In the event that the Merger Agreement is terminated (i) by EFH pursuant to clause (d) or (e) in the Termination section above, then the Deposit shall be disbursed to EFH in accordance with the escrow agreement or (ii) for any other reason, then the Deposit shall be returned to Parent in accordance with the escrow agreement. |
| | Except as otherwise provided herein, in the event of termination of the Merger Agreement, the Merger Agreement shall become void and of no force or effect with no further liability on the part of Parent, Merger Sub, EFH or their respective affiliates or representatives with respect thereto; provided that certain customary covenants and agreements set forth in the Merger Agreement shall survive such termination. |
| <u>Approval</u> | Parent has approval from its board of directors for the transactions contemplated by this Term Sheet. |
| | Parent will represent that it does not require regulatory approvals from any state public utility commissions other than the PUCT to consummate the transactions contemplated by this Term Sheet. |

**Exhibit A**
**Obligations Included in the Plan of Reorganization**

1. An obligation of TCEH to form Reorganized TCEH and contribute its assets and liabilities (other than stock of TCEH Finance, Inc.) in exchange for all of the equity securities of Reorganized TCEH.

2. An obligation of EFH Corporate Services Company to directly or indirectly contribute certain assets and certain liabilities of EFH Corporate Services Company to TCEH for further contribution to Reorganized TCEH.

3. Implementation of the transactions contemplated by the Merger Agreement.

4. The Tax Matters Agreement terms described on Exhibit B.

**Exhibit B**
**Material Terms of Tax Matters Agreement**

**THE TERMS PROPOSED IN THIS EXHIBIT ARE FOR ILLUSTRATIVE PURPOSES ONLY. FINAL TERMS OF THE TAX MATTERS AGREEMENT WILL NEED TO BE NEGOTIATED WITH APPROPRIATE STAKEHOLDERS OF THE DEBTORS.**

| | |
|---|---|
| **Parties** | Reorganized EFH, Reorganized TCEH and Parent. |
| **Effective Date** | The effective date of Debtors' plan of reorganization. |
| **Tax Return Procedures** | The Tax Matters Agreement will contain customary provisions relating to the preparation, review and filing of tax returns and audits thereof. |
| **Reorganized TCEH Taxes** | Following the Effective Date, Reorganized TCEH shall be responsible for, and indemnify Reorganized EFH for, any:<br><br>(i)     income taxes imposed on Reorganized EFH and its subsidiaries attributable solely to a failure of the distribution of Reorganized TCEH (the "Distribution") to qualify as a reorganization within the meaning of sections 368(a)(1)(G) and a distribution governed by sections 355 and 356 of the Code (a "Tax-Free Transaction Failure") as a result of a breach of the covenants described below by Reorganized TCEH or its affiliates following the Distribution,<br><br>(ii)    any alternative minimum tax (A) arising from the resolution of audits by a taxing authority for periods (or portions thereof) ending on or before the Effective Date attributable to any business contributed to Reorganized TCEH or its subsidiaries, in a maximum amount to be negotiated and (B) arising as a result of the utilization of any tax attributes of the Reorganized EFH consolidated group to offset gain related to the contemplated contribution of assets to Reorganized TCEH (the "Contribution") to the extent of the portion (if any) of the basis step-up in excess of $1.9 billion,<br><br>(iii)    ordinary course non-income taxes for periods (or portions thereof) ending on or before the Effective Date attributable to any business contributed to Reorganized TCEH (but only to the extent such Taxes are, consistent with past practice, payable by TCEH, Reorganized TCEH or any of its subsidiaries), and<br><br>(iv)    taxes imposed on Reorganized TCEH or any of its |

| | |
|---|---|
| | subsidiaries for periods (or portion of a straddle period) beginning after the Effective Date. |
| **Reorganized EFH Taxes** | Following the Effective Date, Reorganized EFH shall be responsible for, and indemnify Reorganized TCEH for, any taxes for periods (or portion of a straddle period) ending on or before the Effective Date that Reorganized TCEH is not responsible for as described above, including (x) taxes attributable to any business retained by Reorganized EFH or any of its subsidiaries, (ii) taxes of the EFH consolidated group, and (iii) income taxes attributable to a Tax-Free Transaction Failure (except for Reorganized TCEH Taxes).<br><br>No provision of the Tax Matters Agreement shall be interpreted to mean that any party other than Reorganized EFH shall be primarily liable for any Taxes imposed on a failure of the Contribution and Distribution to qualify for the intended tax-free treatment, except to the extent that such failure is as a result of the breach of any covenant by Reorganized TCEH or its affiliates as described in the definition of Reorganized TCEH Taxes. |
| **Covenants** | Following the Distribution,<br><br>(i) each of Parent and Reorganized EFH will not (and will cause each Reorganized EFH subsidiary not to) take any action (or refrain from taking any action) which (x) is inconsistent with the facts presented and the representations made prior to the Effective Date in any materials submitted to the IRS or representation letter provided to support a tax opinion or (y) could reasonably be expected to cause any Tax-Free Transaction Failure; and<br><br>(ii) Reorganized TCEH will not (and will cause each Reorganized TCEH subsidiary not to) take any action (or refrain from taking any action) which (x) is inconsistent with the facts presented and the representations made prior to the Effective Date in any materials submitted to the IRS or representation letter provided to support a tax opinion or (y) could reasonably be expected to cause any Tax-Free Transaction Failure.<br><br>Following the Distribution and prior to the first day following the second anniversary of the Distribution (the "Restriction Period"), Parent, Reorganized EFH and Reorganized TCEH shall, and except with respect to clause (c) below shall cause designated wholly-owned subsidiaries to:<br><br>a. continue the active conduct of each trade or |

B-1

|  | business (for purposes of Section 355(b) of the Code and the Treasury Regulations thereunder) that it was engaged in immediately prior to the Distribution (taking into account Section 355(b)(3) of the Code), |
|---|---|
|  | b.    continue to hold sufficient assets to satisfy the continuity of business enterprise requirements under Section 1.355-3 and 1.368-1(d) of the Treasury Regulations, |
|  | c.    not dissolve or liquidate or take any action that is a liquidation for federal income tax purposes, |
|  | d.    not merge or consolidate with any other Person with such other Person surviving the merger or consolidation in a transaction that does not qualify as a reorganization under Section 368(a) of the Code, and |
|  | e.    not redeem or otherwise repurchase (directly or indirectly through an affiliate) any of its equity if such redemption or repurchase could reasonably be expected to adversely impact the continuity of interest requirement set forth in Treas. Reg. Section 1.368-1(e) or 1.355-2(c)(1). |
|  | Notwithstanding the restrictions imposed above, during the Restriction Period, Parent, Reorganized EFH and Reorganized TCEH may proceed with any of the actions or transactions described therein, if (i) Reorganized EFH shall have received a supplemental private letter ruling from the IRS in form and substance reasonably satisfactory to Reorganized EFH to the effect that such action or transaction will not affect the intended tax-free treatment of any applicable transaction, (ii) in the event that Reorganized EFH chooses not to pursue such supplemental private letter ruling or if such action or transaction is covered by an area in which the IRS will not issue private letter rulings, Reorganized EFH obtains an unqualified tax opinion in form and substance reasonably satisfactory to Reorganized EFH and Reorganized TCEH at least thirty (30) days prior to effecting such action or transaction. If Reorganized TCEH notifies Reorganized EFH that it desires to take one of the actions described above (a "<u>Notified Action</u>"), Reorganized EFH and Reorganized TCEH shall cooperate in obtaining a supplemental private letter ruling from the IRS or an unqualified tax opinion for the purpose of permitting Reorganized TCEH to take the Notified Action. |

B-1

| | |
|---|---|
| **Restrictions on Liquidity** | None. |

**Exhibit C**
**Bidding Procedures**

*See attached.*