# KIRKLAND & ELLIS LLP
AND AFFILIATED PARTNERSHIPS

655 Fifteenth Street, N.W.
Washington, D.C. 20005

Bridget K. O'Connor
To Call Writer Directly:
(202) 879-5048
bridget.oconnor@kirkland.com

(202) 879-5000

www.kirkland.com

Facsimile:
(202) 879-5200

October 1, 2014

**By Hand and By ECF**

The Honorable Christopher S. Sontchi
United States Bankruptcy Judge
United States Bankruptcy Court
824 North Market Street, 5th Floor
Wilmington, Delaware 19801

Re:   Discovery re Bidding Procedures Motion (D.I. 2087),
      *In re Energy Future Holdings, Corp., et. al.* (Case No. 14-10979)

Dear Judge Sontchi:

    I write on behalf of the above-referenced debtors and debtors in possession (collectively, the "Debtors") in connection with the extensive discovery that has been issued by certain creditor parties purporting to relate to the *Motion of Energy Future Holdings Corp., et al., for Entry of an Order (A) Approving Bidding Procedures, (B) Scheduling an Auction and Related Deadlines and Hearings, and (C) Approving the Form and Manner of Notice Thereof,* filed September 19, 2014 [D.I. 2087] (the "Bidding Procedures Motion" or "Mot.") and those parties' request that the hearing on the Bidding Procedures Motion be delayed due to those discovery requests.

    The relief sought in the Bidding Procedures Motion is narrow and procedural. The Bidding Procedures Motion asks that the Court approve the bidding procedures as set forth in the motion for "an investment, ***in any form***, to acquire any or all of the assets or the reorganized equity of Energy Future Holdings Corp. ('EFH Corp.')," scheduling an auction for the transaction and related deadlines, and approving the form of notice for that auction and related deadlines. Mot. at 1 (emphasis added). The motion ***does not*** affect any party's substantive rights, dictate the structure of any potential bid, or specify the form of the ultimate transaction.

    Certain creditors have nonetheless issued excessive discovery requests regarding this narrow and procedural motion.[1] The Debtors are providing fulsome responses to discovery

---

[1] The discovery requests at issue include: 30(b)(6) Dep. Notice - Debtors (UCC) [D.I. 2099]; Dep. Notice - Hiltz (UCC) [D.I. 2100]; 30(b)(6) Dep. Notice - Debtors (WSFS) [D.I. 2102]; Dep. Notice - Sawyer (WSFS) [D.I. 2103]; Dep. Notice - Hiltz (WSFS) [D.I. 2104]; Dep. Notice - Cremens (WSFS) [D.I. 2015]; Dep. Notice - Keglevic (WSFS) [D.I. 2106]; RFPs served by the UCC [D.I. 2107]; RFPs served by WSFS [D.I. 2108]; Dep. Notice -

## KIRKLAND & ELLIS LLP

The Honorable Christopher S. Sontchi
October 1, 2014
Page 2

requests to the extent the requests relate to the relief sought in the Bidding Procedures Motion. But as described below, it has become apparent through multiple meet-and-confer discussions that a significant portion of these requests seeks information that has no bearing on that relief and instead targets issues that are not yet before the Court (or may never be). Rather than advancing any effort to develop potential objections to the Bidding Procedures Motion, these overly broad portions of the pending discovery instead are being used as a basis for urging that the hearing on the Bidding Procedures Motion be delayed for the sake of allowing additional time to complete discovery that does not relate to the relief sought in that motion.

Accordingly, the Debtors respectfully request that the Court issue a protective order limiting the volume and scope of the requesting creditors' discovery on the Bidding Procedures Motion consistent with the limits described below.

**The Bidding Procedures Motion Seeks Narrow Procedural Relief.**

The Bidding Procedures Motion does not affect the substantive rights of any creditor. The Bidding Procedures Motion instead seeks approval of bidding *procedures*, the goal of which is to maximize the value of the Debtors' assets while market conditions remain favorable and the interest from potential purchasers remains high. Mot. at ¶¶ 2-5. The procedures seek to accomplish this goal in two stages. First, the bid procedures describe a two-step method for selecting a "stalking horse bidder." *See* Proposed Bidding Procedures, Ex. 1 to Ex. A of Mot. (D.I. 2087-2), at ¶ F. Next, the procedures explain how the Debtors' assets will be auctioned via the subsequent "Open Bidding Process." *Id.* at ¶¶ I-O.

In a typical chapter 11 sale, the Debtors would undertake the first step—the stalking horse selection process—***without court approval*** and only then file a bidding procedures motion to govern the ultimate auction after the stalking horse bidder was already selected. Here, the

---

Howard (CSC) [D.I. 2114]; Dep. Notice - Horton (CSC) [D.I. 2115]; Dep. Notice - Hiltz (DTC) [D.I. 2116]; Dep. Notice - Keglevic (DTC) [D.I. 2117]; 30(b)(6) Dep. Notice - Debtors (DTC) [D.I. 2118]; RFPs served by DTC [D.I. 2119]; RFPs served by the Ad Hoc Group of TCEH Unsecured Noteholders [D.I. 2257]; 30(b)(6) Dep. Notice - Debtors (Ad Hoc Committee of EFIH Unsecured Noteholders) [D.I. 2260]; Dep. Notice - Cremens (Ad Hoc Committee of EFIH Unsecured Noteholders) [D.I. 2261]; Dep. Notice - Keglevic (Ad Hoc Committee of EFIH Unsecured Noteholders) [D.I. 2262]; Dep. Notice - Hiltz (Ad Hoc Committee of EFIH Unsecured Noteholders) [D.I. 2263]; Dep. Notice - Howard (Ad Hoc Committee of EFIH Unsecured Noteholders) [D.I. 2264]; RFPs served by Ad Hoc Committee of EFIH Unsecured Noteholders [D.I. 2265]; Amended Dep. Notice - Hiltz (UCC) [D.I. 2268]; Amended 30(b)(6) Dep. Notice - Debtors (UCC) [D.I. 2269]; Amended Dep. Notice - Sawyer (WSFS) [D.I. 2270]; Dep. Notice - Hiltz (WSFS) [D.I. 2271]; Dep. Notice - Cremens (WSFS) [D.I. 2272]; Dep. Notice - Keglevic (FSB) [D.I. 2273]; Dep. Notice - Cremens (EFIH 2L) [D.I. 2275]; Dep. Notice - Sawyer (EFIH 2L) [D.I. 2276]; Dep. Notice - Horton (EFIH 2L) [D.I. 2277]; Dep. Notice - Howard (EFIH 2L) [D.I. 2278]; Dep. Notice - Keglevic (EFIH 2L) [D.I. 2279]; Dep. Notice - Hiltz (EFIH 2L) [D.I. 2280].

**KIRKLAND & ELLIS LLP**

The Honorable Christopher S. Sontchi
October 1, 2014
Page 3

Debtors have filed the Bidding Procedures Motion at the outset of the process—before selecting a stalking horse bidder — to provide additional transparency to creditors and to the Court and to provide certainty to bidding participants and to the market as to the deadlines and requirements of the process. Certain creditors are now using the Debtors' motion as an excuse to delay the stalking horse process by serving exhaustive and unnecessary discovery into that process, comprising 64 Requests for Production of Documents ("RFPs"), six notices of deposition, and three separate sets of Rule 30(b)(6) deposition topics.

The requested discovery is entirely disproportionate to and beyond the scope of the narrow procedural relief requested in the pending Bidding Procedures Motion. No substantive rights are at stake in the Bidding Procedures Motion. The Bidding Procedures Motion only seeks limited approval of a *process* for selecting the stalking horse bidder and performing the eventual auction. As the Motion makes clear, once a stalking horse bidder is selected, "the Debtors will file a motion with the Court seeking approval of the stalking Horse Bid." Mot. ¶ 3. The Debtors have also agreed to provide a report of bids received, including their material terms, with that later stalking horse motion. Further, the Bidding Procedures Motion obviously and explicitly does not seek the Court's approval for an asset sale. Once the open auction process is complete and a successful bidder is selected, the Debtors will file yet another motion seeking the Court's approval. Mot. ¶ 30. At either of those two subsequent points the parties will have an opportunity to evaluate the decision-making process, including by taking discovery and filing an objection, if any. Right now, the only request for relief before the Court is for the approval of procedures disclosed out of an abundance of transparency in an effort to improve the process and maximize the value of the ultimate sale.

**The Debtors Have Agreed to Provide Reasonable Discovery Relating to the Bidding Procedures.**

Despite the overbroad and disproportionate discovery requests, the Debtors have nonetheless agreed to provide extensive document and deposition discovery. The Debtors have provided the requesting creditors with a list of custodians and search terms for *each* of the 64 RFPs served and, with the exception of the identity of bidders and the details of bids, have not refused to provide documents for *any* of the requests for production. The Debtors have also agreed to make three of the requested six witnesses available for deposition, and will also provide testimony regarding many of the topics contained in the three Rule 30(b)(6) deposition notices served on Debtors.

Given the narrow procedural relief requested from the Court, the Debtors respectfully submit that the discovery the Debtors have agreed to provide is sufficient and that the additional discovery requested is unduly burdensome.

## KIRKLAND & ELLIS LLP

The Honorable Christopher S. Sontchi
October 1, 2014
Page 4

**The Requesting Creditors' Discovery Requests Are Both Overly Broad and Unnecessarily Numerous.**

The Federal Rules do not require the Debtors to respond to burdensome discovery requests, even if that discovery is reasonably calculated to lead to relevant evidence. Courts *must* limit discovery where the burden and expense of discovery outweighs any likely benefit. *See* Fed. R. Civ. P. 26(b)(2)(C)(iii); *Wyeth v. Impax Labs., Inc.*, 248 F.R.D. 169, 171 (D. Del. 2006) (holding that a proffered production is reasonable and that a request for additional documents is overly broad); *Callaway Golf Co. v. Corporate Trade Inc.*, 10 CIV. 1676 GBD JCF, 2011 WL 1642377, at *3-4 (S.D.N.Y. Apr. 25, 2011) (holding that discovery requests, although aimed at relevant information, were overbroad and limiting the documents to be produced). In weighing burdens against any likely benefit, courts look to "the needs of the case" and "the importance of the issues at stake in the action," including "the importance of discovery in resolving the issues." *See* Fed. R. Civ. P. 26(b)(2)(C)(iii); *see Public Serv. Enter. Grp. Inc. v. Philadelphia Elec. Co.*, 130 F.R.D. 543, 552 (D.N.J. 1990) (applying this "proportionality standard" to avoid "a substantial sideshow"); *cf. United Air Lines, Inc. v. United States,* 26 F.R.D. 213, 219 n.9 (D. Del. 1960) ("It is well established that discovery has limits and that these limits grow more formidable as the showing of need decreases." (citing United States. v. Procter & Gamble Co., 356 U.S. 677, 682 (1958)).

Here, the burden and expense of the additional discovery the requesting creditors seek outweighs any likely benefit from that discovery. *First*, the requesting creditors seek discovery regarding the identity of bidders participating in the selection of a stalking horse bidder and the content of their bids. As stated in the Bidding Procedures Motion, the Debtors do not intend to reveal the identity of potential stalking horse bidders during the bidding process because doing so is likely to have a chilling effect on the bidding process. Mot. ¶ 6. This, in turn, would threaten to reduce the ultimate sale price of the Debtors' assets and the value to the bankruptcy estates. *Id.* The requesting creditors nonetheless insist that this information is relevant—without explaining how—and insist that notwithstanding its dubious value to the Bidding Procedures Motion and the significant risks of disclosure of this information, this information should be produced under the protective order. But a protective order is cold comfort to potential bidders who, when faced with the possibility of disclosure, will likely steer a conservative course away from submitting a bid. Where, as here, disclosure threatens to disrupt and undermine the very process for which the Bidding Procedures Motion is aimed at achieving approval, the creditors' requests to force such disclosure should be denied. This is particularly true here, since the authentic and appropriate opportunity to explore such issues will arise when the name of the stalking horse bidder is announced and submitted to the Court for approval in a subsequent motion, and the creditors then have a chance to lodge discovery requests like those at issue *when they actually bear upon the relief then being sought.*

## KIRKLAND & ELLIS LLP

The Honorable Christopher S. Sontchi
October 1, 2014
Page 5

      *Second*, the requesting creditors seek extensive discovery about the Debtors' views on and communications about the ultimate tax structure of any future asset sale. According to the requesting creditors, the proposed bidding procedures "lock in" a certain structure and discovery is necessary to understand why that structure is preferred over others. As an initial matter, this premise is not true and is belied by the plain language of the Bidding Procedures Motion. The very first page of the Bidding Procedures Motion states that it seeks an order "approving bidding procedures for an investment, *in any form*…." Mot. at 1 (emphasis added). Further, the Bidding Procedures Motion states: "For the avoidance of doubt, the Bidding Procedures do not preclude any particular transactional structure." Mot. ¶ 7. And although the sample term sheet provides an example of a bid in one particular structure, that very same term sheet says, in bold capital letters: "**THE STRUCTURE SET FORTH IN THIS TERM SHEET IS FOR ILLUSTRATIVE PURPOSES ONLY. BIDDERS MAY PROPOSE ANY ALTERNATIVE STRUCTURE(S).**" Form of Term Sheet, Ex. C to Mot., (D.I. 2087-4), at 1. The Debtors, like other parties, have studied the difficult tax issues implicated by this asset sale, and have a preference for a sale that does not result in a "deconsolidation" that triggers billions in tax liability at EFH, an entity with few assets that is unlikely to be able to satisfy those liabilities. Should a bid maximize the value of the Debtors' estates, while also resulting in a "deconsolidation," the Debtors will of course consider that bid as well. But the bottom line for the Bidding Procedures Motion is that the legal question as to which tax structure is value-maximizing under particular circumstances will be litigated in the context of other motions and is not relevant to this Motion.[2] The sole issue before the Court in the Bidding Procedures Motion is whether the bidding procedures should be approved. To be sure, any party that chooses to challenge the stalking horse bid will have ample opportunity for discovery into relevant tax issues associated with that bid, but discovery into these tax matters is clearly premature at this juncture.

---

      [2] Indeed, the Debtors will soon file an Omnibus Tax Memorandum that is responsive to the several colloquies with the Court and parties in interest in recent hearings—and to the several out-of-court discussions with stakeholders that have been ongoing since the outset of the Debtors' restructuring efforts. The purposes of that upcoming Memorandum are, first, to familiarize the Court and all stakeholders with the federal income tax rules and principles relevant to evaluating the probable tax outcomes of the Debtors' reorganization and, second, to describe the various legal constraints and considerations taken into account by the Debtors in evaluating the potential reorganization alternatives. In doing so, the Debtors intend for that submission to help provide a framework for tax discussions before the Court, relief the Debtors will seek in the future (including a plan of reorganization), and the chapter 11 cases in general.

**KIRKLAND & ELLIS LLP**

The Honorable Christopher S. Sontchi
October 1, 2014
Page 6

**The Debtors Seek Reasonable Limits On Document and Deposition Discovery, Tied to the Relief Sought in the Bidding Procedures Motion.**

The parties have met and conferred several times over the proposed scope of discovery and the requesting creditors' request to postpone the scheduled October 17th hearing on the Bidding Procedures Motion. *See, e.g.*, Exhibits A-D. The parties have been able to reach limited agreement on some targeted issues, but three general areas of disagreement persist: (1) the requesting creditors' insistence on three additional depositions, (2) the requesting creditors' request for broader search terms and additional document custodians, and (3) whether the scheduled October 17th hearing on the Motion should be adjourned to October 28th.

***Deponents***. The requesting creditors have served six notices of deposition for individual witnesses, in addition to three different Rule 30(b)(6) notices. The Debtors (in coordination with Evercore Group LLC ("Evercore")) have agreed to make three of the individuals available for depositions, and will agree to designate witnesses to testify regarding many of the Rule 30(b)(6) topics noticed. The Debtors disagree, however, that the depositions of EFH Board members Hugh Sawyer and Chuck Cremens and of EFH's in-house tax attorney Carla Howard are appropriate under the circumstances of the Bidding Procedures Motion.

Hugh Sawyer and Chuck Cremens are Board members of TCEH and EFIH, respectively, who were not materially involved in the development of the bidding procedures. Although the Board was briefed on the issues reflected in the Bidding Procedures Motion, the Board did not take a formal vote on the bidding procedures, nor do Messrs. Sawyer and Cremens possess any material knowledge about the bidding procedures that is not obtainable from other witnesses. Courts regularly deny depositions of officers and directors, where, as here, their testimony can be obtained from other witnesses. *See Reif v. CNA*, 248 F.R.D. 448, 451-54 (E.D. Pa. 2008) (collecting cases). The creditors' request to seek deposition testimony from Board members that is available from the other witnesses EFH is producing should be denied.

Similarly, Carla Howard did not have any material involvement in the development of the bidding procedures. As an in-house tax attorney with the Debtors, Ms. Howard's testimony would relate primarily to legal issues for which discovery is not appropriate. *See Allergan Inc. v. Pharmacia Corp.*, No. CIV.A.01-141-SLR, 2002 WL 1268047, at *1 (D. Del. May 17, 2002) (quashing an attorney's deposition where the testimony sought related to a legal issue "for the court to determine"); *In re Flintkote Co.*, 486 B.R. 99, 122 (Bankr. D. Del. 2012) ("[The creditor] raises either purely legal issues *that require no discovery* or fact questions as to which the Court authorized discovery and conducted a trial." (emphasis added).) Further, even if the testimony on legal issues were relevant, Ms. Howard's testimony would consist of privileged analyses that she has performed on the Debtors' behalf. The requesting creditors' request for Ms. Howard's testimony is therefore doubly improper. *See Rhone-Poulenc Rorer Inc. v. Home*

## KIRKLAND & ELLIS LLP

The Honorable Christopher S. Sontchi
October 1, 2014
Page 7

*Indem. Co.*, 32 F.3d 851, 864 (3d Cir. 1994) ("While the attorney's advice may be relevant to the matters in issue, the privilege applies and the interests it is intended to protect are still served by confidentiality."). Moreover, the Debtors are not requesting relief on tax issues by way of the Bidding Procedures Motion, and have specifically stated in the Bidding Procedures Motion that they are not seeking approval of any particular transaction structure. The creditors will have plenty of opportunity to litigate the merits of any given tax structure, but now is not that time.

***Document Search Terms and Custodians***. The Debtors identified a set of document custodians upon whose documents search terms would be run for potentially responsive documents based on the individuals that were the most active and engaged in the development of the bidding procedures over the past two and a half months. The Debtors have also provided a set of search terms calibrated to identify responsive non-privileged documents. The requesting creditors have asked that the Debtors add eight additional custodians and expand upon the search terms proposed by the Debtors in several ways, including by not using search terms at all and reviewing every single document in those custodians' possession during the time period at issue.

Using the Debtors' list of custodians and search terms, the Debtors identified 9,333 documents potentially responsive to the creditors' RFPs, and have produced or are producing responsive non-privileged documents resulting from a review of those documents. The requesting creditors have requested that, instead of using search terms, the Debtors simply review *all* of the approximately 31,000 documents from these custodians. The requesting creditors have simultaneously requested changes to the search terms that would increase the number of documents to review for this procedural motion by at least 60% to at least 15,490 documents. The Debtors have agreed to certain of the requesting creditors' proposed terms and have provided the requesting creditors with metrics explaining why the requesting creditors' proposed search terms are overbroad. *See* Sept. 30, 2014 Email from B. O'Connor to C. Kerr *et. al* (attached as Ex. D). Other than simply seeking for the Debtors to review more documents in the *hopes* that there *might* be any responsive documents in that expanded set, the requesting creditors have not explained why the Debtors' terms are too narrow. In the absence of any articulation as to why the Debtors' search terms are inappropriate, the additional review proposed by using the requesting creditors' search terms is an unnecessary burden.

The Debtors (in coordination with Evercore) are providing document discovery from the custodial files of eight different custodians—six from the Debtors (Paul Keglevic (EFH CFO), Tony Horton (EFH Treasurer), Michael Carter (EFH Assistant Treasurer), Kristopher Moldovan (EFH Assistant Treasurer), Hugh Sawyer and Chuck Cremens (Board Members), two from Kirkland & Ellis LLP (Edward O. Sassower, P.C. and Stephen Hessler), and five from Evercore (David Ying, Will Hiltz, Sesh Raghavan, Stephen Goldstein, and Brendan Panda).

# KIRKLAND & ELLIS LLP

The Honorable Christopher S. Sontchi
October 1, 2014
Page 8


The requesting creditors have asked that other custodians—including EFH's in-house tax attorneys, additional Kirkland & Ellis LLP attorneys, and EFH's general counsel—be searched. While adding these custodians will result in a substantial increase in the burden to the Debtors of responding to these requests (including screening those materials for privilege), they are not likely to yield significant additional responsive documents. Specifically, the requesting creditors have asked that the following additional custodians be searched:

- **Meagan Horn and Carla Howard.** Ms. Horn and Ms. Howard are both in-house tax lawyers with the Debtors, and were not materially involved in developing the bid procedures. The majority of the potentially responsive documents in their possession will likely be privileged. Any non-privileged, responsive documents in their possession are likely to be substantially duplicative of the documents that will be identified from the files of the current set of custodians. The costs required to search and review these custodial files for the unlikely presence of unique documents not otherwise produced greatly outweigh any possible benefits. And the requesting creditors have not provided any evidence that unique, responsive, non-privileged documents are located in their custodial files.

    To the extent the request to include Ms. Howard and Ms. Horn as custodians and for Ms. Howard's deposition is a request for discovery regarding the tax implications of the bidding procedures, those are legal issues for which discovery is not appropriate or relevant. *See Pfizer Inc. v. Ranbaxy Labs. Ltd.*, 321 F. Supp. 2d 612, 619 (D. Del. 2004); *In re Flintkote Co.*, 486 B.R. at 122.

- **James Sprayregen and Richard Cieri**. The requesting creditors have also asked that Kirkland & Ellis LLP attorneys Jamie Sprayregen and Rick Cieri be added as custodians. While adding these two individuals as custodians will have the obvious result of increasing the burden on the Debtors resulting from privilege review, insofar as neither Mr. Sprayregen nor Mr. Cieri played a material role in the development of the bidding procedures, the benefit of adding them would likely be negligible at best. To the extent that non-privileged, responsive documents can be identified in their files, they are likely duplicative of those that will already be identified through searches on the files of the current custodians. Thus, the costs to search and review these custodial files for the unlikely presence of any unique documents not otherwise produced greatly outweigh any possible benefits. Further, the requesting creditors have not provided any evidence that unique, responsive, non-privileged documents are located in their custodial files.

- **Stacey Doré**. As General Counsel for the Debtors, any documents on these issues in Ms. Doré's files are likely to be primarily privileged and/or cumulative of the other

## KIRKLAND & ELLIS LLP

The Honorable Christopher S. Sontchi
October 1, 2014
Page 9

      custodians. Thus, like Messrs. Sprayregen and Cieri, the costs of reviewing and producing any such files from her custodial file significantly outweigh any benefits.

      Accordingly, any benefit from searching and producing documents from these custodial files is greatly outweighed by the costs and the delay of doing so, especially in light of procedural and preliminary nature of the relief at issue in this Motion. *See* Fed. R. Civ. P. 26(a)(2)(C)(iii); Fed. R. Bankr. P. 7026, 9014.

**The Requesting Creditors' Effort to Delay the Hearing on the Bidding Procedures Motion Should Be Denied.**

      The consistent and recurring theme of the requesting creditors' approach to these Bidding Procedures discovery requests — since even before the Debtors had provided their first set of responses and objections or had the chance to make their first production — has been that they have been accompanied by requests to delay the hearing from October 17th to October 28th. The request to delay the hearing should be denied for a number of reasons.

      *First*, the creditors have had ample time to evaluate the Bidding Procedures Motion and develop their potential objections. During the week of September 8, 2014, the Debtors held telephone conferences with the advisors to each of their major stakeholders during which they described the proposed bidding procedures, answered questions, and noted creditor concerns. In advance of each call, the Debtors submitted to each group a timeline setting forth the key dates and deadlines associated with the proposed bidding procedures. On September 13th, the Debtors shared drafts of the proposed bidding procedures and the motion with each of these groups. Although the deadline to file the bidding procedures motion on 21 days' notice would have been September 26th, the Debtors filed the bidding procedures motion seven days earlier, on September 19th. Thus, by the time of the hearing on October 17th, the creditors will have been on notice of the proposed bidding procedures for 39 days, and will have had access to the draft motion for 34 days. With this request to delay an additional 11 days, this brings that period to 50 and 45 days, respectively. But the requesting creditors have not explained a basis for needing time beyond the standard 21-day notice period for this narrow, procedural motion. *Second*, as described above, the relief sought in the Motion is narrow and procedural in nature and seeks approval only of the bidding procedures, scheduling an auction for the transaction and related deadlines, and approving the form of notice for that auction and related deadlines. *Third*, the Court specifically set the October 17th hearing date for the Bidding Procedures Motion. *Fourth*, the dates associated with the bidding process have been publicized — including by way of the Motion itself — and that process provides certainty and structure to potential bidders which would be undermined if the hearing date on the Motion were to be moved.

...

## KIRKLAND & ELLIS LLP

The Honorable Christopher S. Sontchi
October 1, 2014
Page 10

\* \* \* \* \*

      For the reasons explained above, the Debtors respectfully submit that the requesting creditors' request that the hearing on the Bidding Procedures Motion should be delayed should denied, as should be their request that the Debtors be required to submit to certain of their unnecessarily broad and voluminous discovery requests.

      Respectfully Submitted,

      */s/ Bridget K. O'Connor*

      Bridget K. O'Connor
      (*admitted pro hac vice*)

Enclosures