# EXHIBIT C

**September 29, 2014 Letter from C. Kerr to B. O'Connor *et al.***

MORRISON | FOERSTER

250 WEST 55TH STREET
NEW YORK, NY 10019-9601

TELEPHONE: 212.468.8000
FACSIMILE: 212.468.7900

WWW.MOFO.COM

MORRISON & FOERSTER LLP

NEW YORK, SAN FRANCISCO,
LOS ANGELES, PALO ALTO,
SACRAMENTO, SAN DIEGO,
DENVER, NORTHERN VIRGINIA,
WASHINGTON, D.C.

TOKYO, LONDON, BERLIN, BRUSSELS,
BEIJING, SHANGHAI, HONG KONG,
SINGAPORE

September 29, 2014

Writer's Direct Contact
+1 (212) 468.8043
CKerr@mofo.com

By Email

Bridget O'Connor
Kirkland & Ellis LLP
655 Fifteenth St., N.W.
Washington, D.C. 20005

Re:    *In re Energy Future Holdings Corporation, et al.* No. 14-10979 (Bankr. Del.)

Dear Bridget:

I am writing in response to your letter, dated September 28, 2014, regarding the *Motion for Entry of an Order (A) Approving Bidding Procedures, (B) Scheduling an Auction and Related Deadlines and Hearings, and (C) Approving the Form and Manner of Notice Thereof*, filed September 19, 2014 [Docket No 2087] (the "Bidding Procedures Motion").

**Adjournment of Hearing Date**:  During our discussion on September 25, 2014, and in our follow-up email, dated September 26, 2014, the Creditors' Committee joined in the request of the other T-Side and E-Side creditors, Wilmington Savings Fund Society FSB, The Ad Hoc Group of TCEH Unsecured Noteholders, and Delaware Trust Company, as Indenture Trustee, who are seeking discovery in connection with the Bidding Procedures Motion, seeking a more reasonable schedule to address the motion by adjourning the hearing date for eleven days from October 17, 2014 until October 28, 2014, or the next available hearing date if that date is no longer available.

Even leaving aside the areas of disagreement regarding the Debtors' overly-narrow proposed scope of discovery discussed below, a brief adjournment would be undeniably beneficial to the fair and proper consideration of the motion by the Court and by the parties. More importantly, the Debtors would not be prejudiced in any way by agreeing to the modest extension of time that the parties have proposed.  The Debtors have articulated no reason why it is imperative that this motion be heard on October 17, 2014, rather than having it heard eleven days later on October 28, 2014, or the next available date thereafter, so that the parties can have at least a reasonable amount of time in which to conduct discovery, evaluate the evidence, and serve thoughtful objections if that proves necessary.

**Custodians**:  In your letter dated September 24, 2014, the Debtors proposed conducting an email search of the following custodians: (1) Michael Carter, (2) Stephen

ny-1160051

MORRISON | FOERSTER

Bridget O'Connor
September 29, 2014
Page Two

Goldstein, (3) Stephen Hessler, (4) William Hiltz, (5) Anthony Horton, (6) Paul Keglevic, (7) Kristopher Moldovan, (8) Edward Sassower, and (9) David Ying, for the limited period from July 1, 2014 to the present, which the Debtors have since clarified means September 12, 2014.

For that same limited two and a half month time period, the parties seeking discovery requested that the Debtors add some additional custodians including: (1) Rick Cieri, (2) Charles Cremens, (3) Stacey Dore, (4) Meagan Horn, (5) Carla Howard, (6) Brendan Panda, (7) Sesh Raghavan, (8) Hugh Sawyer, (9) James Sprayregen, and (10) the point person at Bank of America who was involved in these matters.

The Debtors have agreed to add Brendan Panda and Sesh Raghavan, both of whom are clearly identified as points of contacts on the presentation to potential investors in connection with this sale [Docket No. 2087-3], and have removed Stephen Goldstein. The Debtors have otherwise refused to include any additional custodians other than those that they initially proposed.

At a minimum, the Debtors must include Hugh Sawyer and Charles Cremens as custodians, unless the Debtors are willing to stipulate that neither Mr. Sawyer nor Mr. Cremens, in their individual or Board capacities, nor the respective boards on which they sit, were consulted in connection with the bid procedures being proposed, including any board votes to approve the filing of the motion seeking approval of the proposed bid procedures, or undertook any independent assessment of the Bidding Procedures or sale that is being proposed.

Moreover, we understand that Mr. Goldstein has been involved in the sale process and, accordingly, he should remain a custodian. While other Evercore employees may have had more involvement than Mr. Goldstein, we believe that his email should still be searched, particularly since any additional burden in searching his email should be mitigated by the de-duplication of emails among Evercore employees.

As stated in the Debtors' now-withdrawn motion to assume the Restructuring Support Agreement, the Debtors, as part of the restructuring, recognized the need to supplement their overlapping Board membership by providing that each of the TCEH and EFIH boards of directors and boards of managers had at least one disinterested member. The purpose of this was supposedly to ensure that decisions made by the Boards of TCEH and EFCH and by EFIH were made by independent Directors. To that end, Hugh E. Sawyer was appointed as a disinterested director at TCEH and EFCH in October 2013, and Charles H. Cremens was appointed as a disinterested director at EFIH in February 2014. [Docket No. 505]. In light of the consequences to the T-Side Creditors and the E-Side Creditors of this proposed transaction, it is inconceivable that neither Mr. Sawyer nor Mr. Cremens (or their respective boards) were consulted in connection with developing and approving the bid procedures for

MORRISON | FOERSTER

Bridget O'Connor
September 29, 2014
Page Three

the proposed sale of the putative Reorganized EFH equity. Nonetheless, if they were not, and the Debtors are willing to stipulate to that, the parties can agree to forego document discovery from Mr. Sawyer and Mr. Cremens.

**Search Terms**: In your letter dated September 24, 2014, the Debtors proposed using certain search terms to identify potentially responsive emails collected from the custodians identified above. As part of the meet and confer process mandated by the local rules, the parties seeking discovery made a reasonable request that the Debtors include certain additional search terms. The Debtors have refused to include <u>any</u> of the additional search terms.

The Debtors concede that even if they were to use no search terms and simply review all of the emails for these custodians for the limited two and a half month period, it would only increase the number of responsive documents to be reviewed from 9,333 to 31,000. This is not an inordinate number of documents to review, particularly in light of the size of the proposed transaction and the amount of time and money the Debtors propose to spend in connection with the auction process.

Nonetheless, the Debtors should at a minimum meet the parties seeking discovery half way on this by including the additional search terms that the parties proposed. The Debtors noted that this would increase the number of documents to be reviewed from 9,333 to 15,490. Reviewing a few thousand additional emails that adding these additional search terms would entail is not unreasonable in these circumstances.

**Domain Name Restrictions**: As set forth in our email dated September 26, 2014, the parties do not agree that it is appropriate for the Debtors to use the domain name restrictions that you have proposed. Using this limited list of domain names that are clearly under-inclusive and not reviewing any emails that do not include one of those Debtor-selected domain names as a recipient or sender of the email is not reasonable.

The Debtors could exclude from the review any documents that are purely internal to Kirkland & Ellis or any documents solely between Kirkland & Ellis and the Debtors, and we are willing to work with the Debtors in that regard. In addition, to the extent that use of domain name restrictions is even appropriate, we have provided you a list of additional domain names that must be used, which you have not yet confirmed you will do.

**Depositions**: In addition to a Rule 30(b)(6) deposition of the Debtors, the parties seeking discovery sought the depositions of six individual witnesses: (1) Hugh Sawyer, (2) Paul Keglevic, (3) William Hiltz, (4) Charles Cremens, (5) Anthony Horton, and (6) Carla Howard. In your letter, the Debtors agreed only to make Mr. Keglevic, Mr. Hiltz and Mr. Horton available for deposition.

MORRISON | FOERSTER

Bridget O'Connor
September 29, 2014
Page Four

In the first instance, it is not proper for the Debtors to simply refuse to produce duly noticed witnesses, regardless of the Debtors' apparent belief that the testimony that those witnesses will provide is of little or no relevance. That issue aside, and as discussed above, the creditors are willing to cooperate with Messrs Sawyer's and Cremens's schedules, should that be an issue or accept a stipulation that neither Mr. Sawyer nor Mr. Cremens, nor their respective boards were consulted in any way, nor presented with any presentations or requests for approval of the motion seeking approval of bid procedures to sell putative Reorganized EFH's equity interests, nor undertook any independent assessment in connection with the Bidding Procedures or the proposed sale. If the Debtors are prepared to so stipulate, the parties could agree to limit depositions to the three deponents that the Debtors have proposed in addition to the 30(b)(6) deposition.

**Scope of Discovery**: In review of the objections to the document requests that have been served to date, we have serious concerns about the constrained manner in which the Debtors appear to view discovery in connection with the motion.

First, with respect to the "optimal deal structure" that the Debtors are promoting as part of the sale process, the Debtors appear to be refusing to produce any documents regarding that deal structure unless the document also refers specifically to the Bidding Procedures.  Whether the deal structure that the Debtors are promoting is in fact optimal is a central issue in this case, and the Debtors' motion makes clear this so-called "optimal deal structure" is being highlighted and promoted to potential bidders as part of the Bidding Procedures. Therefore, these documents should be produced. The Debtors should not be allowed to use Bidding Procedures that will lock in a deal structure which the Debtors assert is the "optimal deal structure" without disclosing the analysis and documents underlying that claim and any alternative structures that have been considered.

Second, the Debtors state that they do not intend to produce materials that identify actual or potential bidders, or discuss the terms of such actual or potential bids. All of the parties seeking discovery are signatories to the *Confidentiality Agreement and Stipulated Protective Order*, entered by this Court on August 13, 2014 [Docket No. 1832-2], and are bound by that Court order. Such material can be designated as appropriate under the Protective Order, and a blanket refusal to produce document that identify actual or potential bidders or the terms of such actual or potential bids is not appropriate. Such a blanket exclusion would result in clearly relevant material being excluded from the production.

**MORRISON | FOERSTER**

Bridget O'Connor
September 29, 2014
Page Five


We look forward to discussing these matters with you at your earliest availability.
Please let us know if you are available tomorrow morning to discuss.

Sincerely,

Charles L. Kerr

cc:    James W. Stoll
Jeffrey L. Jonas
Christopher Shore
D. Ross Martin