# WHITE & CASE

White & Case LLP
1155 Avenue of the Americas
New York, New York 10036-2787

Tel   + 1 212 819 8200
Fax  + 1 212 354 8113
whitecase.com

Direct Dial + (212) 819-8394     cshore@whitecase.com

October 2, 2014

<u>VIA ECF</u>

The Honorable Christopher S. Sontchi
United States Bankruptcy Judge
United States Bankrutpcy Court
824 North Market Street, 5th Floor
Wilmington, Delaware 19801

Re:   *In re Energy Future Holdings Corporation, et al.*, Case No. 14-10979 (Bankr. Del.)

Judge Sontchi:

We write on behalf of the Ad Hoc Group of TCEH Unsecured Noteholders ("<u>TCEH Ad Hoc Group</u>") with respect to the *Motion for Entry of an Order (A) Approving Bidding Procedures, (B) Scheduling an Auction and Related Deadlines and Hearings, and (C) Approving the Form and Manner of Notice Thereof*, filed September 19, 2014 [Docket No 2087] (the "<u>Bidding Procedures Motion</u>") and in response to the letter submitted by the Debtors dated October 1 (the "<u>Letter Motion</u>"). By their Letter Motion, the Debtors seek a protective order limiting the scope of discovery related to the Bidding Procedures Motion, ostensibly on the basis that the discovery sought is too broad. It is not.

While we will be happy to address our issues during the scheduled teleconference, two points bear noting in advance.

<u>First</u>, the Bidding Procedures Motion plainly seeks to set in place a process by which all of the Debtors will be seeking to sell, at some point in the future before any plan is filed, some or all of the assets that the E-side currently owns or, in the case of post-reorganization EFH stock, might control in the future. That is an ambitious project, to say the least, particularly in light of the fact that, to date, no creditor on either side of the capital structure has vocally supported even this first step, despite the pre-filing roadshow that management took to a broad swath of the creditor body before filing the Motion. On the contrary, it appears that the Bidding Procedures Motion has actually caused the first coalition of E-side and T-side objectors, each with a different set of questions and concerns as to how the process affects the estates. At present, the TCEH Ad Hoc

ALMATY  ANKARA  ASTANA  BEIJING  BERLIN  BRATISLAVA  BRUSSELS  BUDAPEST  DOHA  DÜSSELDORF  FRANKFURT  GENEVA  HAMBURG  HELSINKI
HONG KONG  ISTANBUL  JOHANNESBURG  LONDON  LOS ANGELES  MADRID  MEXICO CITY  MIAMI  MILAN  MONTERREY  MOSCOW  MUNICH
NEW YORK  PARIS  PRAGUE  RIYADH  SÃO PAULO  SHANGHAI  SILICON VALLEY  SINGAPORE  STOCKHOLM  TOKYO  UAE  WARSAW  WASHINGTON, DC

NEWYORK 9347100

The Honorable Christopher S. Sontchi

October 2, 2014

Group still has some very basic unaddressed questions and concerns regarding management's judgment, including the following:

- What assets are the Debtors putting on the auction block?
- Why exactly do the Debtors need to sell now, and do they have any support for their conclusory statements regarding future risks to certain asset classes?
- Can the Debtors really protect themselves from the purported threat of future market degradation by agreeing to sell now?
- Why are the T-side Debtors, which aren't selling anything, proponents of an E-side sale process that would restrict T-side restructuring options?
- What efforts if any did the Debtors make to manage potential conflicts between the two sides of the capital structure in constructing the procedures?
- Why wasn't management's decision to develop procedures and commence the sale of billions of dollars of assets approved by any board of directors or managers on either the T- or E-side?
- What have management and their advisors been telling potential bidders about any of the foregoing, and have they over-messaged their views on tax advantageous structures?
- What are the costs of the bidding process, both tangible and intangible, and do they outweigh the potential benefits of a sale now?

All of those questions are fair game on a motion, brought pursuant to Section 363, that seeks to have the Court approve "the Debtors'" business judgment. Some of these questions will need to be addressed in depositions, some in documents. To that end, we issued document requests and sought dates for four depositions on September 23, and have been actively engaged with the Debtors since then.

Second, despite the implication in the Letter Motion that the Debtors and potential objectors are in significant disagreement over the proper scope of discovery, the TCEH Ad Hoc Group has a very limited set of issues that need the Court's assistance to resolve at this time.

1) With respect to depositions, an issue has arisen regarding the noticed depositions of Hugh Sawyer and Charles Cremens. To the extent they are not otherwise produced, we have no conceptual problem with the Debtors' refusal to produce either of these independent directors on the T- or E-side given the representation that the boards were not involved. All we have asked for is a commitment that, having limited the inquiry into the board process, the Debtors will not rely on "board process," formal or informal, to justify their business decision.

2) With respect to documents, we continue to challenge the Debtors' practice of formulating their own search terms and conducting their own electronic searches of custodians' files before obtaining any input from the requesting parties. The Local Rules explicitly

The Honorable Christopher S. Sontchi

WHITE & CASE

October 2, 2014

      contemplate otherwise.  That process has, for example, led to the Debtors' failure to search any custodians' files for the obvious string "bid!" in connection with a bidding procedures motion.  We will continue to work with the Debtors to refine the process, but we may unfortunately need to address some search parameters with the Court.

3) We are now seven days from the extended objection deadline to the Bidding Procedures Motion.  The Debtors just this morning sent formal responses to our document requests (served nine days ago) and as of now have not completed producing even those documents that they have agreed to produce.  It is unclear when the production will be complete, or how the six parties seeking discovery will conduct seven depositions, scheduled to begin tomorrow, and prepare and file objections once the document review is complete.  While we have been, and are, willing to work deliberately, we fail to see what legitimate interest the Debtors have in curtailing so severely the time for factual inquiry into their decision-making process essentially by, for example, forcing depositions to occur before the questioning parties have had an opportunity to read and digest the documents produced.  The proffered explanation – that market participants have been socialized to the notion that the procedures will be in place on the scheduled hearing date – rings hollow given that we specifically protested the Debtors going to the market at all before getting Court approval.  Thus, depending on the Debtors' ability to provide documents and depositions in an expedited fashion, we may need to seek a short adjournment to ensure that the discovery process can run smoothly and any objections can be presented in a precise and final form.

We look forward to addressing these and any other issues that may arise in the context of the hearing on the Letter Motion.

Respectfully submitted,


*/s/ Christopher Shore*

Christopher Shore

cc:    James M. Peck
        Charles L. Kerr
        Lorenzo Marinuzzi
        Brett Miller
        Bridget O'Connor
        James W. Stoll
        Jeffrey L. Jonas
        D. Ross Martin

NEWYORK 9347100