## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re<br><br>ENERGY FUTURE HOLDINGS CORP.,<br>  *et al.,*<br><br>                    Debtors. | Chapter 11<br><br>Case No. 14-10979 (CSS)<br><br>Jointly Administered<br><br>**Hearing Date: October 8, 2014, 9:30 a.m.**<br>**Objection Deadline: October 2, 2014, 4:00 p.m.** |

### UNITED STATES TRUSTEE'S OBJECTION TO THE MOTION OF ENERGY FUTURE HOLDINGS CORPORATION FOR ENTRY OF AN ORDER AUTHORIZING THE DEBTORS TO FILE UNDER SEAL CERTAIN PORTIONS OF THE DEBTORS' MOTION TO (A) PAY PREPETITION BONUSES TO INSIDERS AND (B) TO CONTINUE INSIDER BONUS PROGRAMS (D. I. 1795)

Roberta A. DeAngelis, the United States Trustee for Region 3 ("U.S. Trustee"), by and through her undersigned attorneys, respectfully submits this objection to the *Motion of Energy Future Holdings Corporation for Entry of an Order Authorizing the Debtors to File under Seal the Certain Portions of Commercially Sensitive Information Set Forth in the Debtors' Motion for Entry of an Order Authorizing the Debtors to (A) Pay Certain Prepetition Amounts on Account of the Insider Compensation Programs and (B) Continue the Insider Compensation Programs in the Ordinary Course of Business on a Postpetition Basis* (D. I. 1795) (the "Seal Motion").[1]  In support hereof, the U.S. Trustee respectfully states:

---

[1]      Unless otherwise defined herein, capitalized terms shall have the same meaning and context as those capitalized terms included in the Seal Motion.

## PRELIMINARY STATEMENT

1.      The U.S. Trustee objects to the Seal Motion, because, through that motion, the

Debtors seek to prevent access to their creditors, other parties in interest, and the general public,

to information that is central to the Debtors' Insider Bonus Motion (as defined below), and which

is neither confidential commercial information or otherwise eligible for protection under §107(b)

of the Bankruptcy Code.

2.      There is a strong presumption under U.S. law that the public has a right to access

of judicial records.  In bankruptcy proceedings, the only categories of information that may be

shielded from disclosure are "trade secret or other confidential research, development or

commercial information," information that is "scandalous or defamatory,"  information "made

confidential by statute or regulation," or which could result in identity theft.  11 U.S.C. § 107(b),

(c);  Fed. R. Bankr. P. 9018.  The Debtors have failed to meet their burden to establish that the

information they seek to keep from their creditors and other parties in interest falls within this

narrow exception.

3.      The Debtors request authority to keep under seal portions of the Insider Bonus

Motion itself, the entirety of a 67-page declaration that they have submitted in support of such

motion, as well as portions of another declaration in support.   The information the Debtors seek

to keep sealed include such basic facts as the aggregate amount they are requesting authority to

pay in bonuses to their insiders, the metrics used to calculate the amount of such bonuses,[2]

information regarding the Debtors' past performance, which can be found in or deduced from the

---

[2]    The Insider Bonus Motion does not disclose anywhere, either in sealed or unsealed portions,
       the particular amounts the Debtors seek to pay to the individual insiders.

Debtors' public filings with the SEC, the basic process the Debtors undertook to develop their

budget and bonus plans, which is also disclosed in their SEC filings, and information from

governmental and other public sources about the Debtors' industry.

4.      The Debtors are also inconsistent with their treatment of the information they

claim is highly confidential, redacting it in one paragraph of their Insider Bonus Motion, and

disclosing it a few paragraphs later, or quoting, in the publicly filed version of the Insider Bonus

Motion, from the supporting declaration they filed under seal.  In addition, the Chairman of

Energy Future Holdings Corp.'s Board of Directors and of the Organization and Compensation

Committee testified at deposition to certain information that is the subject of the Seal Motion, yet

the Debtors have not requested that such testimony be marked confidential, or otherwise shielded

from disclosure.

5.      The information the Debtors seek to keep hidden is necessary for the Debtors to

meet their burden of proof to show that their insider bonus programs do not fall within the

purview of § 503(c)(1) of the Code.  Thus, unless the trial on the Debtors' Insider Bonus Motion

is to be conducted in secret, the information the Debtors seek to shield will have to be disclosed

at trial.

6.      For all these reasons, the Debtors' Seal Motion should be denied.[3]

---

[3]   The U.S. Trustee has been in communications with the Debtors' counsel to determine if the
Debtors might narrow the information they seek to have sealed.  If the Debtors do so, it may
resolve certain of the issues raised herein.

## JURISDICTION

7.      The Court has jurisdiction to hear this Objection.

8.      Pursuant to Section 586 of title 28, U.S. Code, the U.S. Trustee is charged with overseeing the administration of Chapter 11 cases filed in this District. 11 U.S.C. § 586. Under Section 586 and Section 307 of the Bankruptcy Code, Congress charged the U.S. Trustee with broad responsibilities in Chapter 11 cases and the standing to rise and be heard on any issue in any case or proceeding. 11 U.S.C. § 307; *see also United States Trustee v. Columbia Gas Sys., Inc. (In re Columbia Gas Sys., Inc.),* 33 F.3d 294, 295-96 (3d Cir. 1994) (the U.S. Trustee has "public interest standing" under 11 U.S.C. § 307, which goes beyond mere pecuniary interest).

9.      Pursuant to 11 U.S.C. § 307, the U. S. Trustee has standing to be heard with regard to the Seal Motion and this Objection.

## FACTUAL BACKGROUND

10.      A recitation of the background facts is set forth in the Objection of the United States Trustee to Debtors' Motion (A) To Pay Prepetition Bonuses to Insiders and (B) To Continue Insider Bonus Programs (the "Objection to the Insider Bonus Motion"), which is being filed concurrently with this objection.  The U.S. Trustee hereby incorporates the fact section of the Objection to the Insider Bonus Motion as if fully set forth herein.   The facts set forth below relate specifically to the Seal Motion.

11.      On August 8, 2014, the Debtors filed their Motion for Entry of an Order Authorizing the Debtors to (A) Pay Certain Prepetition Amounts on Account of the Insider Compensation Programs and (B) Continue the  Insider Compensation Programs in the Ordinary

Course of Business on a Postpetition Basis ("Insider Bonus Motion")[redacted version filed at D. I. 1792]. The Insider Bonus Motion seeks, among other things, Court approval of certain bonus programs for insiders (the "Insider Bonus Programs"), and authority to make bonus payments to insiders under their Insider Bonus Programs.

12.     At the same time the Debtors filed their Insider Bonus Motion, they also filed the Seal Motion. Through the Seal Motion, the Debtors seek permission to keep under seal certain portions of the Insider Bonus Motion, certain portions of the Declaration of Douglas Friske in support of the Insider Bonus Motion (the "Friske Dec.")[redacted version filed at D. I. 1794], and the entirety of the 67-page supporting declaration of Todd W. Filsinger (the "Filsinger Dec.") [*see* D. I. 1793].

13.     By the Seal Motion, the Debtors seek to keep under seal the following information:

- the aggregate amount the Debtors seek to pay under the Luminant CIP to all executives; the aggregate amount the Debtors seek to pay under the SPC LTIP both for pre-petition periods and the remainder of 2014; and the aggregate amounts the Debtors seek to pay under all Insider Bonus Programs for the remainder of 2014 (*see* Insider Bonus Motion, ¶ 7 (chart), and ¶57, and Exhibit B thereto);

- the performance metrics the Debtors use for their EAIP, which are also used for the Key Leader Performance Program (*see id.,* ¶¶ 15, 21);

- the amount the Debtors paid under the Luminant CIP to the Chief Commercial Officer at Luminant for the fiscal year ending December 31, 2013 (*see id.,* ¶ 25);

- the amount of payments that may potentially be due to employees under the SPC LTIP in March 2015 for the three-year period of 2012-2014; and how much of the

Debtors' payment obligations under the SPC LTIP are not funded under letters of credit, which amount the Debtors are seeking the authority to pay (*see id.,* ¶ 27);

- the total target costs of the Insider Bonus Programs as a percentage of the Debtors' projected revenues (*see id.,* ¶ 48, and the Friske Dec. ¶¶ 31-34);

- the Debtors' annual target total direct compensation for the five highest compensated members of the SPC.  *See* Friske Dec., ¶ 23 (chart); and

- a comparison of the total target compensation the Debtors seek to pay to various SPC members with the total compensation paid to similarly situated executives employed by what the Debtors believe to be their peer companies (*see* Insider Bonus Motion, ¶ 50, Friske Dec., ¶¶ 22, 23 (chart) and 27 (chart)).

14.    As noted above, the Debtors seek to keep sealed the entirety of Mr. Filsinger's 67-page declaration, which they submitted in support of the Insider Bonus Motion. In addition to including information of the kind set forth in the immediately preceding paragraph above, the Filsinger declaration also includes the following types of information:

- information that is publicly disclosed in the Insider Bonus Motion itself.  For example, the publicly filed portions of the Insider Bonus Motion quote from, or paraphrase, portions of the Filsinger Dec. (*see* Insider Bonus Motion, ¶¶ 15 (above and below the redacted portion), 16, 17, 40, 43, and 47.  In addition, on page 1-7 of the Filsinger Dec., there is a list of bullet points nearly identical to that included in the publicly filed version of the Insider Bonus Motion at ¶ 16;

- information regarding the Debtors' past performance, which information can be found in, or deduced from, the Debtors' public filings with the SEC;

- the qualifications of Filsinger's company and its involvement with the Debtors (*see id.,* pp. at 2-9 to 3-12);

- the basic process the Debtors undertook to develop their budget and bonus plans (*see id.,* pp.at 4-13);

- a general overview of information regarding the Debtors' industry, taken from governmental sources (*see id.,* pp. 5-15 to 5-18, and 6-22);

- detail of the various metrics that the Debtors use to calculate the amount of insider bonuses (*see id.,* pp. 6-19 through 6-64); and

- the names of the insiders whom the Debtors seek to compensate through the Insider Bonus Motion, although such information does not include the titles of such insiders, or the amounts the Debtors seek to pay to each of them (*see id.*, Appendix).

15.     Certain of the information the Debtors seek to seal was disclosed as part of the deposition testimony of Donald L Evans in this case, taken on September 25, 2014, the relevant portions of which no party has requested be marked as "confidential."   Excerpts of Mr. Evans' testimony are annexed hereto as Exhibit A.  That testimony includes the identification of certain of the performance metrics the Debtors use to determine bonuses, as well as the percentile under which the compensation packages for the Debtors' executives fall when compared with that of the Debtors' peer group.  *See* Ex. A, Tr. 173:16 – 174:21, 110:1– 111:8; 118:6 – 119:4; 132:14 – 137:4.

## LAW AND ANALYSIS

16.    The Supreme Court stated in *Nixon v. Warner Communications, Inc.*, 435 U.S.

589 (1978), that "[i]t is clear that the courts of this country recognize a general right to inspect

and copy public records and documents, including judicial records and documents."  *Id.* at 591;

*accord Pansy v. Borough of Stroudsburg*, 23 F. 3d 772, 780-81 (3d Cir. 1994) (recognizing "a

right of access to judicial proceedings and that judicial records," and that "this right of access is

'beyond dispute'").

17.    Section 107(a) of the Bankruptcy Code provides that all papers "filed in a case

under this title . . . are public records and open to examination" by the public.  11 U.S.C. §

107(a).  "This policy of open inspection, codified generally in Section 107(a) of the Bankruptcy

Code, evidences Congress's strong desire to preserve the public's right of access to judicial

records in bankruptcy proceedings."  *Video Software Dealers Ass'n v. Orion Pictures Corp. (In*

*re Orion Pictures Corp.)*, 21 F.3d 24, 26 (2d Cir. 1994); *accord In re Alterra Healthcare*

*Corporation*, 353 B.R. 66, 71 (Bankr. D. Del. 2006)("[D]ocuments filed in bankruptcy cases

have historically been open to the press and general public."); *In re Continental Airlines*, 150

B.R. 334, 341 (D. Del. 1993)(noting  ". . . the strong presumption in favor of public access to

judicial records and papers. . . .")**;** *In re Food Mgmt. Group, LLC*, 359 B.R. 543, 553 (Bankr.

S.D.N.Y. 2007).

18.    A limited exception to public disclosure may be invoked to protect "an entity with

respect to a trade secret or confidential research, development or commercial information."  11

U.S.C. § 107(b)(1);[4] *accord* Fed. R. Bankr. P. 9018.  Specifically, Bankruptcy Rule 9018

provides in pertinent part:

> On motion or on its own initiative, with or without notice, the court
> may make any order which justice requires (1) to protect the estate
> or any entity in respect of a trade secret or other confidential
> research, development, or commercial information, (2) to protect
> any entity against scandalous or defamatory matter contained in
> any paper filed in a case under the Code, or (3) to protect
> governmental matters that are made confidential by statute or
> regulation.

Fed. R. Bankr. P. 9018.

19.    The moving party bears the burden of showing that a request to place documents

under seal falls within the parameters of Bankruptcy Code § 107(b) and Bankruptcy Rule 9018

by demonstrating ". . . that the interest in secrecy outweighs the presumption in favor of access."

*Continental Airlines,* 150 B.R. at 340; *accord*, *Food Mgmt. Group*, 359 B.R. at 561; *In re*

*Fibermark, Inc.*, 330 B.R. 480 (Bankr. D. Vt. 2005).  To meet this burden, the movant "must

demonstrate extraordinary circumstances and compelling need to obtain protection." *Food Mgmt.*

*Group*, 359 B.R. at 561 (citing *Orion*, 21 F.3d at 27).

20.    In *Publicker Indus., Inc. v. Cohen*, 733 F.2d 1059 (3d Cir. 1984), the Third Circuit

Court of Appeals indicated that a party seeking to seal any part of a judicial record bears the

burden of showing (1) that the material is the kind of information that courts will protect and (2)

that disclosure will work a clearly defined and serious injury to the party seeking closure.); *Id.* at

1071-2; *accord In re Cendant Corp.,* 260 F.3d 183, 194 (3d Cir. 2001) (party seeking to seal

must "clearly define[]" the "serious injury" that would ensue from public disclosure of the

---

[4]    Although not relevant in these cases, section 107 also permits a court, for cause, to protect an
individual from disclosure of information that could result in identity theft or other unlawful
injury.  11 U.S.C. § 107(c).

9

documents).  Before sealing the record, the court must be able to articulate the compelling

countervailing interests to be protected, and make specific findings on the record concerning the

effects of the disclosure.  *Publicker,* 733 F.2d at 1072.

21.      Debtors do not, and cannot, argue that any of the information they seek to have

kept under seal constitutes a "trade secret."  Nor do they argue that such information constitutes

"confidential research, [or] development."  *See* Insider Bonus Motion,  ¶¶ 1-3, 12-14.  Rather,

the Debtors argue that all of the information they seek to keep hidden is "highly-sensitive

commercial information."  *See id*. at ¶ 1.

22.      As the Debtors concede in the Seal Motion, the "confidential . . . commercial

information" exception protects parties from the release of information which "would result in

'an unfair advantage to competitors by providing them information as to the commercial

operations of the debtor.'"  Seal Motion, ¶ 11, *quoting Alterra,* 353 B.R. at 75 (*quoting Orion*

*Pictures*, 21 F.3d at 27-28); *accord, In re Global Crossing Ltd.,* 295 B.R. 720, 725 (Bankr.

S.D.N.Y. 2003).  As detailed below, a review of the type of material the Debtors seek to keep

sealed demonstrates that such information does not meet this standard, and therefore the Seal

Motion must be denied.

***The Debtors Cannot Withhold From Disclosure Information Regarding the***
***Performance Metrics They Use to Calculate the Bonuses They Seek to Pay their Insiders***

23.      The most critical type of information the Debtors seek to keep under seal relates

to the metrics they use to determine whether an insider qualifies for a bonus under their Insider

Bonus Programs, and to determine the amount of such bonuses.  *See, e.g.,* Insider Bonus

Motion,  ¶ 15.  Although such information is entirely redacted from ¶ 15 of the Insider Bonus

Motion, as well as from the Filsinger declaration, certain of those metrics are disclosed in ¶ 17 of

that same motion (identifying EBITDA as a metric) and ¶ 22 (identifying EBITDA and costs as metrics). Paragraph 17 of the Insider Bonus Motion further discloses that EBITDA is the most heavily weighted metric, at 37.5 % for Luminant insiders and 40 % for TXU's insiders, even though such information is redacted from ¶15 of the motion. In addition, in the non-confidential portion of his deposition testimony, Mr. Evans testified to other performance metrics used, such as fuel costs, mining costs, a scorecard for safety, and generation capacity for various periods of the year. *See* Evans testimony (Ex. A), Tr. 173:16 – 174:21.

24.    Given that the Debtors have publicly disclosed a number of the performance metrics, as well as how the most important of those metrics, EBITDA, is weighted, there would appear to be no grounds for the Debtors to withhold that same information with respect to other metrics. In any event, it is hard to imagine how disclosure of the type of performance metrics, and how much each is weighted for bonus purposes, would provide a competitor with an unfair advantage over the Debtors.

25.    The nature of last aspect of the Debtors' metrics is a publicly disclosed in paragraph 40 of the Insider Bonus Motion to be "a payout range based on varying levels of performance - Threshold, Baseline and Superior." *Id., ¶ 40,* citing to various paragraph of the non-publicly filed Filsinger Dec. What constitutes the "Threshold," "Baseline" and "Superior" levels for each performance metric is set forth in the redacted portion of ¶ 15 of the Motion, as well as in the Filsinger declaration. While such information arguably could be viewed as reflecting the Debtors' performance aspirations, the three different levels of each metric are not the equivalent of projections, and are simply too broad and amorphous to constitute the kind of information which, if disclosed, "would result in 'an unfair advance to competitors by providing them information as to the commercial operations of the debtor.'" *Alterra,* 353 B.R. at 75

(citations omitted).

26.    Significantly, the performance metrics that the Debtors seek to keep hidden from their creditors and other parties in interest are central to the Insider Bonus Motion.  The Debtors have the burden of proof on that motion to establish that their Insider Bonus Programs are not retention plans governed by § 503(c)(1) of the Bankruptcy Code.  *See In re Hawker Beechcraft, Inc.*, 479 B.R. 308, 313 (Bankr. S.D.N.Y. 2012).[5]  To show that a bonus plan is not governed by § 503(c)(1), the Debtors must prove by a preponderance of the evidence that the bonuses are a part of a "pay for value" plan that offers incentives based on performance rather than a "pay to stay" plan.  *In re Global Home Prods. LLC*, 369 B.R. 778, 783 (Bankr. D. Del. 2007); *accord In re Residential Capital LLC,* 478 B.R. 154, 170 (Bankr. S.D.N.Y. 2012).  If the Debtors fail to meet their burden of proof, the bonus plan cannot be approved.

27.    The information relating to the performance metrics, which the Debtors wish to keep sealed, relate directly to whether the Debtors' Insider Bonus Programs are incentive in nature, as they contend, or retentive, as the U.S. Trustee believes.  Such information will be necessary to the Debtors at trial, if they intend to attempt to meet their burden of proof, and also may be used by the U.S. Trustee, in support of her objection to that motion.  Thus, unless the trial on the Debtors' Insider Bonus Motion is to be conducted in secret, the information regarding the Debtors' performance metrics will have to be disclosed at trial.

---

[5]    By enacting the BAPCPA, Congress put into place "a set of challenging standards" and "high hurdles" for debtors to overcome before retention bonuses could be paid.  *In re Mesa Air Grp., Inc.,* Case No. 10-10018 (MG), 2010 WL 3810899, *2 (Bankr. S.D.N.Y. Sept. 24, 2010) (citations omitted).

***The Other Categories of Information the Debtors Seek to Keep Sealed
Do Not Constitute Confidential Commercial Information***

28.     The Debtors also seek to file under seal a number of other categories of

information, none of which fall under the narrow exceptions set forth in § 107(b)(1) of the

Bankruptcy Code, and Federal Rule 9018, to the public's right of access to judicial records in

bankruptcy proceedings.

29.     One category of information the Debtors seek to keep out of the public record is

the aggregate amounts they are seeking to pay to insiders.   *See* Insider Bonus Motion, ¶¶ 7

(chart), 27, and 57.   The Debtors do not explain how such information could constitute

confidential commercial information, other than to assert that the Debtors' competitors could use

such information to recruit and hire key management employees away from the Debtors.  *See*

Insider Bonus Motion, ¶ 3.   Yet nowhere in the information the Debtors seek to seal do they

disclose the amount of bonuses they seek to pay to any particular executive; rather, all the

Debtors disclose are aggregate numbers for all insider bonuses.   It is unclear how a competitor

could use such aggregate information to lure away any of the Debtors' insiders. [6]

30.     The Debtors' purported fear of competitors poaching their insiders ignores that,

based on the documents the Debtors produced in discovery to the U.S. Trustee, the employment

agreements the Debtors have with their executives include non-compete provisions that prevent

such executives from working for the Debtors' competitors for a significant  period of time after

they leave the Debtors' employ.  *See* excerpt from Debtors' employment agreement with John

---

[6]    In addition, in connection with the Debtors' Non-Insider Compensation Programs Motion,
the Debtors publicly filed a list of the amount of compensation, broken down by bonus and
base salary, for each category of non-insiders for which the Debtors sought to pay bonuses.
*See* D. I. 1231, pp. 16-17.   The Debtors do not explain why they have not provided such
information with respect to insiders.

Young, § 8 (b), attached hereto as Ex. B.

31.    The Debtors also ignore that their yearly filings with the SEC include a large amount of information regarding executive salary and bonuses, including details relating to compensation of specific executives.  *See* Debtors' 10K for 2013, the relevant excerpts of which are attached as Ex. C hereto.

32.    The Debtors also seek permission not to disclose how the total target compensation they seek to pay to certain of their executives compares to that paid to similarly situated executives employed by what the Debtors believe to be their peers  *See* Insider Bonus Motion , ¶ 50, Friske Dec., ¶¶ 22, 23 (chart) and 27 (chart)).   Again, these comparisons use aggregate compensation figures, not separate figures for each executive.  It is therefore hard to imagine, and the Debtors fail to explain, how a competitor could use such aggregate information to lure away any particular executive of the Debtors.  In addition, Mr. Evans testified in the non-confidential portion of his deposition to some of the comparison information the Debtors seek to keep sealed.  For example, Mr. Evans testified repeatedly that the compensation of the Debtors' executive officers is below the 75th percentile of their peer companies.  *See* Ex. A, Tr. 110:1-111:8; Tr. 132:14 – 137:4.  Mr. Evans also testified as to the percentile under which two particular executives, Mr. Young and Mr. Keglevic, fell.  *See id.*, Tr. 110:18 – 111:1; 118:6-119:4.

33.    Another category of information the Debtors are seeking to protect from public disclosure relates to the amount of the bonuses the Debtors seek to pay, stated as a percentage of the Debtors' projected 2014 revenues.  This information is completely irrelevant to whether the Debtors' bonuses programs are incentivizing, which the Debtors must establish in connection with their Insider Bonus Motion.  Nor are the Debtors' revenues otherwise relevant to the

requirements of § 503(c) of the Bankruptcy Code.   Thus, the Court need not reach the issue of whether the Debtors' projected revenue for 2014 could be considered confidential commercial information, and instead may simply strike the extraneous material from the record.

34.      Finally, the Debtors seek to keep sealed the entirely of the Filsinger declaration, even though it includes a good deal of information that could not possibly constitute confidential commercial information.  At set forth above in ¶ 14, some of the information included in the Filsinger declaration was disclosed in the publicly filed version of the Insider Bonus Motion itself.  Other information from the Filsinger declaration comes from government or industry sources.  Another portion of the information the Debtors seek to keep sealed relates to the qualifications of Filsinger's company, its involvement with the Debtors, and the basic process the Debtors undertook to develop their budget and bonus plans.  Other information relates to the Debtors' past performance, which can be found in, or deduced from, the Debtors' public filings with the SEC, which are now current through the second quarter of 2014.  Finally, the appendix to the Filsinger declaration sets forth the names of the insiders the Debtors seek to compensate through their Insider Bonus Motion, although not the titles of such insiders or the amounts the Debtors seek to pay each of them.  *See* ¶ 14 above.  The Debtors do not specify how such information constitutes confidential commercial information, or how the disclosure of such information would result in an unfair advantage to their competitors.

35.      In light of the Debtors' failure to meet their burden to establish that any portion of its Insider Bonus Motion, or the declarations filed in support thereof, falls within the narrow exceptions set forth in section 107(b) of the Bankruptcy Code and Federal Rule 9018, public of access to the judicial records in this bankruptcy proceeding should not be denied.

## RESERVATION OF RIGHTS

The U. S. Trustee reserves and any all rights, remedies and obligations to, *inter alia*, complement, supplement, augment, alter, substitute and/or modify this Objection, file a Motion and to conduct any and all discovery as may be deemed necessary or as may be required and to assert such other grounds as may become apparent.


WHEREFORE, the U.S. Trustee respectfully requests that this Court (a) deny the Seal Motion and (b) grant such other and further relief as this Court deems just and appropriate.

Respectfully submitted,

**ROBERTA A. DeANGELIS**
**UNITED STATES TRUSTEE**

By: */s/ Juliet Sarkessian*
      Juliet Sarkessian
      Richard L. Schepacarter
      Andrea B. Schwartz
      Trial Attorneys
      U.S. Department of Justice
      Office of the United States Trustee
      J. Caleb Boggs Federal Building
      844 N. King Street, Suite 2207, Lockbox 35
      Wilmington, DE 19801
      (302) 573-6491 (Tel.)
      (302) 573-6497 (Fax)
      Email: Juliet.M.Sarkessian@usdoj.gov
      Email: Richard.Schepacarter@usdoj.gov
      Email: Andrea.B.Schwartz@usdoj.gov


Dated: October 2, 2014