# EXHIBIT B

## AMENDED AND RESTATED EMPLOYMENT AGREEMENT

This AMENDED AND RESTATED EMPLOYMENT AGREEMENT (the "*Agreement*") dated March 31, 2014 is made by and between ENERGY FUTURE HOLDINGS CORP. (the "*Company*") and JOHN YOUNG ("*Executive*") (individually, each a "*Party*" and collectively, the "*Parties*").

## WITNESSETH

WHEREAS, the Parties previously entered into an employment agreement dated January 6, 2008 and effective January 31, 2008 ("*Original Effective Date*"), amended and restated by an employment agreement dated October 17, 2011 and effective July 1, 2011, and most recently amended and restated by an employment agreement dated December 27, 2012 and effective December 26, 2012; and

WHEREAS, Executive has been granted an opportunity to earn supplemental incentive awards; and

WHEREAS, the Parties desire to amend and restate the employment agreement, in each case on the terms and conditions set forth herein.

NOW, THEREFORE, in consideration of the mutual promises, covenants and obligations contained herein, the Company and Executive agree as follows:

1.    <u>Term of Employment</u>. Subject to the provisions of Section 7 of this Agreement, this Agreement, as restated, and Executive's employment hereunder shall be effective as of January 22, 2014 ("*Effective Date*") and shall end as of 11:59:59 P.M. on December 31, 2016 (the "*Initial Term*"). Subject to the provisions of Section 7 of this Agreement, this Agreement shall automatically renew for an additional one (1) year period commencing immediately following the last day of the Initial Term and each one (1) year period thereafter (each, a "*Renewal Term*"), unless, the Company or Executive provides the other Party written notice of non-renewal at least sixty (60) days prior to the end of the applicable term. The period during which Executive is employed by the Company hereunder is hereinafter referred to as the "*Employment Term*."

2.    <u>Position and Duties</u>.

(a)    During the Employment Term, Executive shall serve as Chief Executive Officer ("*CEO*") of the Company. Executive shall also serve as a member of the board of directors of the Company (as used herein, the term "*Board*" shall mean the board of directors of the Company or a committee designated by such board), without additional compensation. In such position, Executive shall have such duties, authority and responsibilities as shall be determined from time to time by the Board, which duties, authority and responsibilities shall be customary for Executive's position in a business of similar size, type and nature to that of the Company. Executive shall be the senior most executive officer of the Company and shall report to the Board with respect to his responsibilities to the Company.

(b)    During the Employment Term, Executive will devote Executive's full business time and best efforts to performance of the duties described in Section 2(a) and will not

1

EXHIBIT   3
WIT:   UST
DATE:   9/25/14
FRANK BAS, RPR CRR

8.    <u>Restrictive Covenants</u>.

(a)    In consideration of the Company entering into this Agreement with Executive and hereby promising and committing itself to provide Executive with Confidential Information and/or specialized training after Executive executes this Agreement, Executive shall not, directly or indirectly:

(i)    at any time during or after the Employment Term, disclose any Confidential Information pertaining to the business of the Company, the Sponsor Group, or any of their respective Affiliates, except when required to perform his duties to the Company or one of its Affiliates, or by law or judicial process, provided that Executive gives the Company reasonable notice of any legal or judicial proceeding requiring Executive to disclose Confidential Information and an opportunity to challenge the disclosure of any such information, and Executive agrees to provide such reasonable notice in writing to:

General Counsel<br>
Energy Future Holdings Corp.<br>
1601 Bryan Street, 41st Floor<br>
Dallas, Texas 75201<br>
(214) 812-5153 (facsimile);

(ii)    at any time during the Employment Term and for a period of twenty-four (24) months thereafter (the "*Non-Compete Period*"), directly or indirectly, act as a proprietor, investor, director, officer, employee, substantial stockholder, consultant, or partner in any Competing Business in Texas or any other geographic area in which Texas Energy Future Holdings Limited Partnership, the Company or any of their respective subsidiaries operates or conducts business; or

(iii)    at any time during the Employment Term and for a period of twenty-four (24) months thereafter, directly or indirectly (A) solicit customers or clients of the Company or any of its Affiliates to terminate their relationship with the Company or any of its Affiliates or otherwise solicit such customers or clients to compete with any business of the Company or any of its Affiliates, or (B) solicit or offer employment to any person who is, or has been at any time during the twelve (12) months immediately preceding the termination of Executive's employment, employed by the Company or any of its Affiliates;

provided that in each of (ii) and (iii) above, such restrictions shall not apply with respect to any member of the Sponsor Group or any of its Affiliates that is not engaged in any business that competes, directly or indirectly, with the Company or any of its subsidiaries in any geographic area where they operate. Notwithstanding the foregoing, for the purposes of this Section 8(a), (A) Executive may, directly or indirectly own, solely as an investment, securities of any Person engaged in the business of the Company or its Affiliates that are publicly traded on a national or regional stock exchange or quotation system or on the over-the-counter market if Executive (I) is not a controlling person of, or a member of a group which controls, such Person and (II) does not, directly or indirectly, own 5% or more of any class of securities of such Person, and (B) Section 8(a)(ii) shall not be violated by reason of any exercise of tag-along rights under the Sale Participation Agreement, by and between the Company (and related parties) and Executive

11

(the *"Sale Participation Agreement"*) or Drag Transaction (as defined in the Sale Participation Agreement) that may occur after the date hereof.

(b)      Notwithstanding clause (a) above, if at any time a court holds that the restrictions stated in such clause (a) are unreasonable or otherwise unenforceable under circumstances then existing, the Parties hereto agree that the maximum period, scope or geographic area determined to be reasonable under such circumstances by such court will be substituted for the stated period, scope or area. Because Executive's services are unique and because Executive has had access to Confidential Information, the Parties hereto agree that money damages will be an inadequate remedy for any breach of this Agreement. In the event of a breach or threatened breach of this Agreement, the Company or its successors or assigns may, in addition to other rights and remedies existing in their favor, apply to any court of competent jurisdiction for specific performance and/or injunctive relief in order to enforce, or prevent any violations of, the provisions hereof (without the posting of a bond or other security). Notwithstanding the foregoing, in the event Executive breaches the covenants set forth in this Section 8, the Company's rights and remedies with respect Executive's Options, Option Stock, and Stock and payments related thereto, as those terms are defined in the Management Stockholder's Agreement, by and between the Company (and related parties) and Executive (the *"Management Stockholder's Agreement"*) shall be limited to those set forth in Section 22(c) of the Management Stockholder's Agreement.

(c)      For purposes of this Agreement, the terms listed below shall be defined as follows:

(i)      *"Affiliate"* shall mean with respect to any Person, any entity directly or indirectly controlling, controlled by or under common control with such Person; provided, however, for purposes of this Agreement, Texas Energy Future Co-Invest, LP shall not be deemed to be an Affiliate of the Sponsor Group or any member of the Sponsor Group.

(ii)      *"Competing Business"* shall mean any business that directly or indirectly competes, at the relevant determination date, with one or more of the businesses of the Company or any of its Affiliates in any geographic area where Texas Energy Future Holdings Limited Partnership, the Company, or any of their respective subsidiaries operates.

(iii)      *"Confidential Information"* shall mean information: (A) disclosed to or known by Executive as a consequence of or through his employment with the Company or any Affiliate; (B) not publicly available or not generally known outside the Company or any Affiliate; and (C) that relates to the business and/or development of the Company or any Affiliate. Any information that does not meet each of the criteria listed above (in subsections (A) – (C)) shall not constitute Confidential Information.   By way of example, Confidential Information shall include but not be limited to the following: all non-public information or trade secrets of the Company, or any Affiliate that gives the Company or any Affiliate a competitive business advantage or the opportunity of obtaining such advantage, or disclosure of which might be detrimental to the interests of the Company or any Affiliate; information regarding the Company's or any Affiliate's business operations, such as financial and sales data (including budgets, forecasts, and historical financial data), operational information, plans, and strategies; business and marketing strategies and plans for various products and services; rate and

12