## Exhibit I

In addition to the benefits, perquisites and compensation set forth in the Agreement, Executive shall be entitled to receive the benefits, perquisites and compensation set forth in this Exhibit I, subject to the terms and conditions set forth herein:

(a) Executive shall have the opportunity to earn the retention awards set forth in this Exhibit I, collectively referred to herein as the "*Retention Award*", subject to the terms and conditions set forth herein:

(i) Executive shall earn a long-term cash bonus award equal to 100% of the aggregate Annual Bonus amount actually earned by Executive in respect of fiscal years 2009, 2010, and 2011 (the "*First Retention Award*"). The First Retention Award earned by Executive shall be paid to Executive in a lump sum on September 30, 2012; provided, that, subject to the provisions of sub-paragraph (a)(v) of this Exhibit I, Executive is employed by the Company or an Affiliate thereof on September 30, 2012.

(ii) Executive shall earn an additional long-term cash bonus award in an amount between $750,000 and $1,500,000 determined by the Company's performance as indicated by the level of EFH Management EBITDA actually achieved for the fiscal year ended December 31, 2011 relative to the EFH Management EBITDA threshold and target amounts set by the Board for such fiscal year (the "*Second Retention Award*"). For the achievement of the threshold level of EFH Management EBITDA in respect of such year, Executive shall earn $750,000, for the achievement of at least the target level of EFH Management EBITDA in respect of such year, Executive shall earn $1,500,000 (the "*Second Retention Target Award*"), and for the achievement of EFH Management EBITDA in between the threshold and target levels in respect of such year, Executive shall earn an amount between $750,000 and $1,500,000 as determined by linear interpolation. The Second Retention Award, if earned, shall be paid to Executive in two equal installments on September 30, 2012 and September 30, 2013; provided, that, subject to the provisions of sub-paragraph (a)(v) of this Exhibit I, Executive is employed by the Company or an Affiliate thereof on the applicable payment date.

(iii) Executive shall earn an additional long-term cash bonus award in an amount between $1,350,000 and $2,700,000 per fiscal year determined by the Company's performance as indicated by the level of EFH Management EBITDA actually achieved for the fiscal years ended December 31, 2012, December 31, 2013, and December 31, 2014 relative to the EFH Management EBITDA threshold and target amounts set by the Board for each respective fiscal year (the "*Third Retention Award*"). For the achievement of the threshold level of EFH Management EBITDA in respect of any such year, Executive shall earn $1,350,000, for the achievement of at least the target level of EFH Management EBITDA in respect of any such year, Executive shall earn $2,700,000 (the "*Third Retention Target Award*"), and for the achievement of EFH Management EBITDA in between the threshold and target levels in respect of any such year, Executive shall earn an amount between $1,350,000 and $2,700,000 as determined by linear interpolation. The Third Retention Award, if earned, shall be paid to Executive in a lump sum on March 13, 2015; provided, that, subject to the provisions of sub-paragraph (a)(v) of this Exhibit I, Executive is employed by the Company or an Affiliate thereof on March 13, 2015.

Exhibit I-1

DAL:0103309/00001:2026208v31

(iv) The process followed by the O&C Committee in establishing the EFH Management EBITDA threshold and target amounts for purposes of the Second Retention Award and the Third Retention Award shall be consistent with the O&C Committee's prior practice.

(v) In the event Executive's employment is terminated pursuant to Section 7(b), 7(c), 7(d)(ii), or 7(e) hereof, in any case, prior to the payment date of an applicable Retention Award, Executive shall be entitled to receive the Retention Award, or a portion thereof, that Executive would otherwise have been entitled to receive pursuant to sub-paragraphs (a)(i), (a)(ii), and (a)(iii) of this Exhibit I, calculated as set forth below (the sum of such amounts referred to herein as the "*Pro-Rata Retention Award*"), with such Pro-Rata Retention Award payable to Executive as soon as practical but no later than the earlier of: (a) March 15 following the calendar year in which termination occurs or (b) ninety (90) days following termination; provided, that, in the case of a termination of employment pursuant to Section 7(c), 7(d)(ii), or 7(e), Executive (x) does not violate the restrictions set forth in Section 8 of this Agreement and (y) executes, delivers and does not revoke a general release of claims against the Company and its Affiliates (excluding claims for indemnification, claims for coverage under officer and director policies, and claims as a stockholder of the Company).

(A) with respect to the First Retention Award, (x) 100% of the aggregate Annual Bonus amount(s) actually earned by Executive in respect of any applicable fiscal year completed prior to the date of Executive's termination, plus (y) if the termination occurs prior to January 1, 2012, 100% of the Pro-Rata Bonus amount calculated pursuant to Section 7(b)(i)(B) above (for avoidance of doubt, the First Retention Award payment shall not be based on any Annual Bonus or Pro-Rata Bonus earned by or paid to Executive with respect to fiscal year 2012); plus

(B) with respect to the Second Retention Award, (x) if the termination occurs prior to January 1, 2012, a portion of the Second Retention Award to be determined by multiplying the Second Retention Target Award by a fraction, the numerator of which is the number of days during which Executive was employed by the Company or an Affiliate thereof in the fiscal year of Executive's termination, and the denominator of which is 365, or (y) if the termination occurs on or after January 1, 2012, the actual earned amount of the Second Retention Award; plus

(C) with respect to the Third Retention Award, (x) if the termination occurs prior to January 1, 2015, a portion of the Third Retention Award equal to (1) the amount that would have been payable under sub-paragraph (a)(iii) of this Exhibit I for any completed fiscal year, plus (2) a portion of the Third Retention Award to be determined by multiplying the Third Retention Target Award for the year of Executive's termination by a fraction, the numerator of which is the number of days during which Executive was employed by the Company or an Affiliate thereof in the fiscal year of Executive's termination, and the denominator of which is 365, or (y) if the termination occurs on or after January 1, 2015, the actual earned amount of the Third Retention Award.

(vi) Notwithstanding any provision of this Exhibit I to the contrary, in the event of a Change in Control, Executive's entitlement to the Retention Awards shall be

Exhibit I-2

DAL:0103309/00001:2026208v31

determined without regard to the achievement of EFH Management EBITDA in respect of the fiscal year in which such Change in Control occurs and any subsequent year, and the amount earned by Executive shall be determined as if target level of EFH Management EBITDA were achieved for any such year, but to the extent the Retention Award is attributable to any prior fiscal year, actual EFH Management EBITDA for such prior year shall be used.

(vii) To assure payment of the Company's obligations under sub-paragraphs (a)(ii) and (a)(iii) above, the Company has obtained the issuance of an Irrevocable Standby Letter of Credit (the "*LOC*") for the benefit of Executive from a bank (the "*Issuer*") on the following terms:

(A) The LOC shall be in the amount of $9,600,000.

(B) The LOC shall expire on April 13, 2015.

(C) The LOC shall not be transferable.

(D) Partial and multiple draws shall be permitted under the LOC. Furthermore, draws shall be limited under the LOC as follows:

(1) Prior to January 1, 2012, not to exceed $1,500,000 (in the aggregate).

(2) Between January 1, 2012 and December 31, 2012, not to exceed $4,200,000 (in the aggregate).

(3) Between January 1, 2013 and December 31, 2013, not to exceed $6,900,000 (in the aggregate).

(4) Between January 1, 2014 and March 13, 2015, not to exceed $9,600,000 (in the aggregate).

(5) Payment of the full amount earned or pro-rated amount with respect to the Second Retention Award and/or the Third Retention Award (pursuant to sub-paragraph (a)(v) of this Exhibit I), to be made in one (1) draw on the date specified in such sub-paragraph.

(viii) A copy of the LOC so issued is attached hereto as Exhibit I(A).

(ix) Any amount paid under the LOC to the United States Treasury in respect of the Company's tax account shall be credited as withheld income and payroll taxes with respect to Executive, and the Company shall properly report such amount on IRS Form W-2 issued to Executive for the applicable tax year.

(x) For purposes hereof, "*EFH Management EBITDA*" shall mean Energy Future Holdings Corp. consolidated EBITDA; where:

Exhibit I-3

DAL:0103309/00001:2026208v31

(A) "*EBITDA*" shall mean earnings before interest, taxes, depreciation and amortization plus transaction, management and/or similar fees paid to the Sponsor Group and/or its Affiliates, together with such adjustments as the O&C Committee shall determine appropriate in its discretion after good faith consultation with the Chief Executive Officer and/or Chief Financial Officer. Such adjustments will be consistent with those included in the definition of EBITDA in the Energy Future Holdings Corp. Indenture related to its 10.000% Senior Secured Notes due 2020, as such indenture is in effect on the Effective Date, to the extent considered appropriate for management compensation purposes, which will include but are not limited to, adjustments to reflect unrealized mark-to-market valuations of hedging instruments; fees and expenses relating to the Company's receivables financing facilities; the amortization of nuclear fuel costs; and any effects of adjustments in the financial statements resulting from the application of purchase accounting; but which for clarification will not include, without limitation, adjustments to reflect unrealized cost savings and planned and unplanned outages. In any event and notwithstanding anything herein to the contrary, the O&C Committee shall have the discretion to make any further adjustments to the calculation of EBITDA as it deems fair and appropriate after good faith consultation with the Chief Executive Officer and/or Chief Financial Officer.

(B) The O&C Committee shall, fairly and appropriately, following the O&C Committee's good faith consultation with the Chief Executive Officer and/or Chief Financial Officer, adjust the calculation of EBITDA to reflect the following: acquisitions, divestitures, any change required by GAAP relating to share-based compensation or for other changes in GAAP promulgated by accounting standard setters that, in each case, the O&C Committee in good faith determines require adjustment of EBITDA. The O&C Committee's determination of such adjustment shall be based on the effect of such event on the Company's consolidated financial statements.

(b) As soon as administratively practicable following the February O&C Committee meeting in 2013, provided Executive remains continuously employed by the Company or an Affiliate thereof through the grant date, Executive shall be entitled to receive on such date, a grant of 1,500,000 restricted stock units under the 2007 Stock Incentive Plan for Key Employees of Energy Future Holdings Corp. and its Affiliates and the Restricted Stock Unit Agreement, in such form and substance as attached hereto as Exhibit I(B), to be entered into by and between the Company and Executive with respect to the grant. In the event of a Change in Control prior to such grant date, the restricted stock units that would have been granted under this sub-paragraph (b) of this Exhibit I shall be issued and shall be vested immediately prior to the effective date of the Change in Control. The rights and obligations of Executive and the Company shall be governed by the 2007 Stock Incentive Plan for Key Employees of Energy Future Holdings Corp. and its Affiliates and the Restricted Stock Unit Agreement entered into incident to such grant.

Exhibit I-4

DAL:0103309/00001:2026208v31

Exhibit I(A)

DATE: OCTOBER 24, 2011

IRREVOCABLE STANDBY LETTER OF CREDIT NO. 63658988

BENEFICIARY:
JOHN YOUNG
3712 MARQUETTE ST
DALLAS, TX 75225-5127
PHONE NUMBER: 214-987-4747

APPLICANT:
TEXAS COMPETITIVE ELECTRIC HOLDINGS COMPANY LLC
ON BEHALF OF ENERGY FUTURE HOLDINGS CORP.
1601 BRYAN STREET, 44TH FLOOR
DALLAS, TX 75201-3411

AMOUNT: USD 9,600,000.00 (NINE MILLION SIX HUNDRED THOUSAND AND 00/100 U.S. DOLLARS)

EXPIRY DATE: APRIL 13, 2015

LADIES AND GENTLEMEN:

BY ORDER OF OUR CLIENT, TEXAS COMPETITIVE ELECTRIC HOLDINGS COMPANY LLC FOR THE ACCOUNT OF ENERGY FUTURE HOLDINGS CORP. (THE "ACCOUNT PARTY"), WE HEREBY ESTABLISH OUR IRREVOCABLE STANDBY LETTER OF CREDIT NO. 63658988 (THIS "LETTER OF CREDIT") IN YOUR FAVOR FOR DRAWINGS NOT TO EXCEED THE AGGREGATE SUM OF NINE MILLION SIX HUNDRED THOUSAND U.S. DOLLARS ($9,600,000.00), EFFECTIVE IMMEDIATELY. THIS LETTER OF CREDIT IS ISSUED, PRESENTABLE AND PAYABLE AT THE OFFICE OF OUR SERVICER, CITICORP NORTH AMERICA, INC., 3800 CITIBANK CENTER, BUILDING B, 3RD FLOOR, TAMPA, FL 33610, AND, SUBJECT TO THE FURTHER TERMS HEREOF, EXPIRES WITH OUR CLOSE OF BUSINESS ON APRIL 13, 2015.

FUNDS UNDER THIS LETTER OF CREDIT ARE AVAILABLE TO YOU AGAINST YOUR SIGHT DRAFT(S), DRAWN ON US, PURPORTEDLY SIGNED BY YOU (OR YOUR SUCCESSOR(S) OR HEIR(S) AT LAW), AND OTHERWISE IN THE FORM ATTACHED HERETO AS EXHIBIT A, APPROPRIATELY COMPLETED.

FUNDS UNDER THIS LETTER OF CREDIT WILL BE AVAILABLE FOR DRAWING IN ACCORDANCE WITH THE FOLLOWING SCHEDULE; HOWEVER, IN NO EVENT SHALL THE TOTAL AMOUNT OF ALL PAYMENTS MADE UNDER THIS LETTER OF CREDIT EXCEED THE AMOUNT OF $9,600,000.00:

| AVAILABILITY PERIODS | | AMOUNT AVAILABLE IN U.S. DOLLARS |
|---|---|---|
| FROM AND INCLUDING | THROUGH AND INCLUDING | |
| OCTOBER 24, 2011 | 12/31/2011 | $1,500,000.00 |
| 1/1/2012 | 12/31/2012 | AN ADDITIONAL $2,700,000.00 |
| 1/1/2013 | 12/31/2013 | AN ADDITIONAL $2,700,000.00 |
| 1/1/2014 | 04/13/2015 | AN ADDITIONAL $2,700,000.00 |

Exhibit I(A)-1

FOR THE AVOIDANCE OF DOUBT, ANY UNUTILIZED AMOUNT IN ANY GIVEN AVAILABILITY PERIOD WILL BE CUMMULATIVELY ADDED TO THE AMOUNT AVAILABLE IN THE IMMEDIATELY SUCCEEDING AVAILABILITY PERIOD.

FURTHERMORE, THE MAXIMUM AGGREGATE AMOUNT THAT MAY BE DRAWN BY YOU DURING THE TERM OF THIS LETTER OF CREDIT SHALL BE AUTOMATICALLY REDUCED BY THE AGGREGATE AMOUNT OF ANY PRIOR PAYMENTS MADE UNDER THIS LETTER OF CREDIT.

PARTIAL AND MULTIPLE DRAWINGS ARE PERMITTED HEREUNDER. THIS LETTER OF CREDIT SHALL AUTOMATICALLY TERMINATE AFTER PAYMENT OF ANY DRAW MADE UNDER STATEMENT (B) IN THE FORM OF SIGHT DRAFT ATTACHED HERETO AS EXHIBIT A.

THIS LETTER OF CREDIT IS NOT TRANSFERABLE.

WE HEREBY ENGAGE WITH YOU THAT ALL DRAFTS DRAWN UNDER AND IN STRICT COMPLIANCE WITH THE TERMS OF THIS LETTER OF CREDIT WILL BE DULY HONORED IF DRAWN AND PRESENTED FOR PAYMENT ON OR BEFORE THE EXPIRY DATE OF THIS LETTER OF CREDIT. WE SHALL EFFECT PAYMENT THREE BUSINESS DAYS AFTER OUR RECEIPT OF DOCUMENTS IN STRICT CONFORMITY WITH THE TERMS OF THIS LETTER OF CREDIT. AS USED HEREIN "BUSINESS DAY" SHALL MEAN ANY DAY OTHER THAN A SATURDAY OR SUNDAY OR A DAY ON WHICH BANKING INSTITUTIONS IN NEW YORK CITY ARE AUTHORIZED OR REQUIRED TO CLOSE BY LAW.

PAYMENT OF DRAWINGS MADE HEREUNDER SHALL BE MADE IN TWO PARTS, BY WIRE TRANSFER, PURSUANT TO THE FOLLOWING WIRE INSTRUCTIONS:

- SIXTY PERCENT (60%) OF EACH SUCH DRAWING SHALL BE PAYABLE PURSUANT TO BENEFICIARY'S (OR HIS SUCCESSOR(S) OR HEIR(S) AT LAW) WRITTEN WIRE INSTRUCTIONS SET FORTH IN THE APPROPRIATELY COMPLETED AND PRESENTED SIGHT DRAFT(S), AND

- FORTY PERCENT (40%) OF EACH SUCH DRAWING (FOR PURPOSES OF APPLICABLE PAYROLL AND INCOME TAX WITHHOLDING) SHALL BE PAYABLE TO:

    ABA REFERENCE #: 091036164
    NAME OF BANK DEPOSITORY: US TREAS SINGLE TX
    EMPLOYER'S TIN: 75-2669310
    NAME CONTROL: ENER
    EMPLOYER'S FULL NAME: ENERGY FUTURE HOLDINGS CORP.
    TAX TYPE: 94105
    TAX YEAR: [INSERT 2 DIGIT TAX YEAR]
    TAX MONTH: [INSERT 03, 06, 09, OR 12 FOR CALENDAR QUARTER IN WHICH DRAWING OCCURS]

THIS LETTER OF CREDIT IS SUBJECTED TO AND GOVERNED BY LAWS OF THE STATE OF NEW YORK AND THE 2007 REVISION OF THE UNIFORM CUSTOMS AND PRACTICE FOR DOCUMENTARY CREDITS OF THE INTERNATIONAL CHAMBER OF COMMERCE (PUBLICATION NO. 600). IN THE EVENT OF ANY CONFLICT, THE LAWS OF THE STATE OF NEW YORK WILL CONTROL.

SHOULD YOU HAVE OCCASION TO COMMUNICATE WITH US REGARDING THIS LETTER OF CREDIT, KINDLY DIRECT YOUR COMMUNICATIONS TO THE ATTENTION OF OUR LETTER OF CREDIT DEPARTMENT, 3800 CITIBANK CENTER, BUILDING B, 3RD FLOOR, TAMPA, FL 33610, MAKING SPECIFIC REFERENCE TO OUR LETTER OF CREDIT NO. 63658988.

VERY TRULY YOURS,

CITIBANK, N.A.
BY: JOSEPH CHESAKIS, VICE PRESIDENT


BY: _____/s/_____
       AUTHORIZED SIGNATURE

EXHIBIT A TO<br>LETTER OF CREDIT NO. 63658988

<u>FORM OF SIGHT DRAFT</u>

VIA OVERNIGHT MAIL

_____, 20\_\_

CITIBANK, N.A.
C/O CITICORP NORTH AMERICA, INC., AS SERVICER
3800 CITIBANK CENTER, BUILDING B
3RD FLOOR
TAMPA, FLORIDA 33610
ATTENTION: LETTER OF CREDIT DEPT.

    RE:  LETTER OF CREDIT NO. 63658988

[STATE ONE OF THE FOLLOWING (A) OR (B):]

(A)    I HEREBY CERTIFY THAT (1) I AM ENTITLED TO DRAW ON IRREVOCABLE STANDBY LETTER OF CREDIT NO. 63658988 UNDER THE PROVISIONS OF THE AMENDED AND RESTATED EMPLOYMENT AGREEMENT DATED AS OF _____ (THE "EMPLOYMENT AGREEMENT"), BETWEEN ENERGY FUTURE HOLDINGS CORP. (EFH CORP") AND ME, (2) THE FULL AMOUNT EARNED BY AND PAYABLE TO ME UNDER THE RETENTION AWARD AS OF _____ IS $_____, WHICH AMOUNT IS CONSISTENT WITH, AND NOT IN EXCESS OF, THE AMOUNT EARNED BY AND CURRENTLY PAYABLE TO ME UNDER THE RETENTION AWARD, AND (3) I REMAIN EMPLOYED BY EFH CORP, THE ACCOUNT PARTY (AS DEFINED IN IRREVOCABLE STANDBY LETTER OF CREDIT NO. _____) OR AN AFFILIATE OF EFH CORP AND/OR THE ACCOUNT PARTY AS OF THE DATE OF THIS DRAW AND I AM ENTITLED TO THE FULL AMOUNT EARNED AND PAYABLE. I HEREBY ACKNOWLEDGE THAT ANY AMOUNT OF THIS DRAW THAT IS PAID TO ME AND LATER DETERMINED TO BE IN EXCESS OF THE AMOUNT ACTUALLY EARNED BY AND PAYABLE TO ME UNDER THE RETENTION AWARD SHALL CREATE A CAUSE OF ACTION IN FAVOR OF EFH CORP, THE ACCOUNT PARTY AND/OR AN AFFILIATE OF EFH CORP OR THE ACCOUNT PARTY TO RECOVER THE EXCESS PAYMENT.

OR

(B)    I HEREBY CERTIFY THAT (1) I AM ENTITLED TO DRAW ON IRREVOCABLE STANDBY LETTER OF CREDIT NO. 63658988 UNDER THE PROVISIONS OF THE AMENDED AND RESTATED EMPLOYMENT AGREEMENT DATED AS OF _____ (THE "EMPLOYMENT AGREEMENT"), BETWEEN ENERGY FUTURE HOLDINGS CORP. ("EFH CORP") AND ME, (2) THE FULL AMOUNT EARNED BY AND PAYABLE TO ME UNDER THE RETENTION AWARD AS OF _____ IS $_____, WHICH AMOUNT IS CONSISTENT WITH, AND NOT IN EXCESS OF, THE AMOUNT EARNED BY AND CURRENTLY PAYABLE TO ME UNDER THE RETENTION AWARD, AND (3) MY EMPLOYMENT WAS TERMINATED PURSUANT TO SECTION 7(B), 7(C), 7(D)(II), or 7(E) OF THE EMPLOYMENT AGREEMENT PRIOR TO THE DATE OF THIS DRAW AND I AM ENTITLED TO EITHER THE FULL AMOUNT EARNED OR A PRO-RATED AMOUNT (PURSUANT TO SUB-PARAGRAPH (A)(V) OF EXHIBIT I TO THE EMPLOYMENT AGREEMENT). I HEREBY ACKNOWLEDGE THAT ANY AMOUNT OF THIS DRAW THAT IS PAID TO ME AND LATER DETERMINED TO BE IN EXCESS OF THE AMOUNT ACTUALLY EARNED BY AND PAYABLE TO ME UNDER THE RETENTION AWARD SHALL CREATE A CAUSE OF ACTION IN FAVOR OF EFH CORP, THE ACCOUNT PARTY AND/OR AN AFFILIATE OF EFH CORP OR THE ACCOUNT PARTY TO RECOVER THE EXCESS PAYMENT.

Exhibit I(A)-4

DAL:0103309/00001:2026208v31

YOU ARE HEREBY INSTRUCTED TO REMIT THE PAYMENT OF $_____ IN TWO PARTS, BY WIRE TRANSFER, PURSUANT TO THE FOLLOWING WIRE INSTRUCTIONS:

- SIXTY PERCENT (60%) OF SUCH AMOUNT, OR $_____, SHALL BE PAYABLE TO

    ACCOUNT NAME: [INSERT]
    ACCOUNT #: [INSERT]
    ABA REFERENCE #: [INSERT]
    NAME OF BANK DEPOSITORY: [INSERT]

- FORTY PERCENT (40%) OF EACH SUCH DRAWING (FOR PURPOSES OF APPLICABLE PAYROLL AND INCOME TAX WITHHOLDING) SHALL BE PAYABLE TO:

    ABA REFERENCE #: 091036164
    NAME OF BANK DEPOSITORY: US TREAS SINGLE TX
    EMPLOYER'S TIN: 75-2669310
    NAME CONTROL: ENER
    EMPLOYER'S FULL NAME: ENERGY FUTURE HOLDINGS CORP.
    TAX TYPE: 94105
    TAX YEAR: [INSERT 2 DIGIT TAX YEAR]
    TAX MONTH: [INSERT 03, 06, 09, OR 12 FOR CALENDAR QUARTER IN WHICH DRAWING OCCURS]

[IF STATEMENT B ABOVE IS UTILIZED INCLUDE THE FOLLOWING STATEMENT]  [THE UNDERSIGNED HEREBY ACKNOWLEDGES THAT IRREVOCABLE STANDBY LETTER OF CREDIT NO. 63658988 SHALL AUTOMATICALLY TERMINATE AFTER SUCH PAYMENT IS DULY MADE].


By: _____
    [BENEFICIARY] OR
    [BENEFICIARY'S SUCCESSOR(S) OR HEIR(S) AT LAW]

Exhibit I(B)

## 2007 STOCK INCENTIVE PLAN FOR KEY EMPLOYEES OF ENERGY FUTURE HOLDINGS CORP. AND ITS AFFILIATES

### RESTRICTED STOCK UNIT AGREEMENT

To: [Name]   Date of Grant: [Date]   Number of Shares: [#]

This Agreement is made and entered into as of the Date of Grant set forth above by and between Energy Future Holdings Corp., a Texas corporation (the "*Company*"), and you;

WHEREAS, the Company adopted the 2007 Stock Incentive Plan for Key Employees of Energy Future Holdings Corp. and its Affiliates, as it may be amended from time to time (the "*Plan*") under which the Company is authorized to grant restricted stock units to certain employees, directors and other service providers of the Company or a Subsidiary;

WHEREAS, a "*Restricted Stock Unit*" shall represent your right to receive one share of common stock of the Company (the "*Stock*") upon the lapse of the restrictions on your award, plus the additional rights to receive dividend equivalents ("*Dividend Equivalent Right*," or "*DER*"), in accordance with the terms and conditions set forth herein and in the Plan (the "*Award*");

WHEREAS, a copy of the Plan has been made available to you and shall be deemed a part of this Restricted Stock Unit Agreement ("*Agreement*") as if fully set forth herein; and

WHEREAS, you desire to accept the Award made pursuant to this Agreement.

NOW, THEREFORE, in consideration of the mutual covenants set forth herein and for other valuable consideration hereinafter set forth, you and the Company agree as follows:

1. <u>The Grant</u>. Subject to the conditions set forth below, the Company hereby grants you, effective as of the Date of Grant set forth above, an award consisting of [#] Restricted Stock Units (subject to any adjustment made to this Award pursuant to Section 8 of the Plan in connection with a stock split, spin-off, recapitalization or other transaction that affects the Company's equity securities). To the extent that any provision of this Agreement conflicts with the expressly applicable terms of the Plan, you acknowledge and agree that those terms of the Plan shall control and, if necessary, the applicable terms of this Agreement shall be deemed amended so as to carry out the purpose and intent of the Plan. Terms that have their initial letter capitalized, but that are not otherwise defined in this Agreement shall have the meanings given to them in the Plan.

2. <u>No Shareholder Rights</u>. The Restricted Stock Units granted pursuant to this Agreement do not and shall not entitle you to any rights of a holder of Stock prior to the date shares of Stock are issued to you in settlement of the Award. Your rights with respect to the Restricted Stock Units shall remain forfeitable at all times prior to the date on which rights become vested and the restrictions with respect to the Restricted Stock Units lapse in accordance with Section 6 or 7, as the case may be.

Exhibit I(B)-1