## Exhibit II

In addition to the benefits, perquisites and compensation set forth in the Agreement, Executive shall be entitled to receive the benefits, perquisites and compensation set forth in this Exhibit II, subject to the terms and conditions set forth herein:

(a) <u>Service Crediting</u>. For purposes of eligibility to receive retiree medical benefits under any retiree medical benefit plan or program of the Company or its Affiliates, Executive shall be deemed eligible for such benefits upon retirement at any time after reaching age 55, so long as Executive has completed five (5) years of service with the Company and its Affiliates following January 31, 2008; provided that in all other respects Executive shall be subject to the terms and conditions of any such retiree medical plan (including with respect to any requirement for employee contributions).

(b) <u>Life Insurance</u>. During the Employment Term, the Company shall maintain in effect, at the Company's cost, a ten (10) year term life insurance policy on the life of Executive in the amount of $10,000,000, payable to such beneficiary as designated by Executive. If Executive terminates employment prior to the expiration of the ten (10) year term of such policy, he may continue to maintain the policy at his own expense or the policy may be allowed to lapse.

(c) <u>Annuity Benefit</u>. Provided Executive remains continuously employed by the Company through December 31, 2014, the Company shall purchase on Executive's behalf, as soon as administratively feasible, but in no event later than March 15, 2015, a single premium annuity contract from an insurance company acceptable to Executive, providing an annual annuity commencing on such date thereafter and payable in such form (e.g., life annuity, term certain and life annuity or joint and survivor annuity) as specified by Executive (the "*Annuity Contract*"). The Annuity Contract shall provide the specified annuity in the amount which may be provided by a single premium of the net amount remaining after withholding all applicable income and payroll taxes, from a non-periodic payment of $3,000,000. If, prior to December 31, 2014, Executive has been terminated without Cause by the Company, resigns for Good Reason, or terminates employment due to death or Disability, Executive (or his personal representative, as the case may be) shall be entitled to such Annuity Contract as soon as administratively practicable following Executive's termination of employment, but in no event later than March 15th of the year following such termination of employment. If Executive is terminated by the Company for Cause or resigns without Good Reason prior to December 31, 2014, he shall forfeit his right to the Annuity Contract.

(d) <u>Additional Cooperation</u>. Notwithstanding anything in Section 9(n) to the contrary, (i) Executive and the Company shall coordinate with Executive's schedule so as to minimize the extent to which any cooperation obligation under Section 9(n) interferes with Executive's other business activities, and (ii) the Company shall pay Executive's travel expenses (transportation, lodging, meals, etc.) in a level of comfort comparable to that enjoyed while employed hereunder and reasonable attorneys' fees of counsel selected by him, incurred in order to satisfy Executive's obligations under Section 9(n).

Exhibit II-1

DAL:0103309/00001:2026208v31

Exhibit III

In addition to the benefits, perquisites and compensation set forth in the Agreement, Executive shall be entitled to receive the benefits, perquisites and compensation set forth in this Exhibit III, subject to the terms and conditions set forth herein:

    (a)    Executive shall have the opportunity to earn the supplemental incentive awards set forth in this Exhibit III subject to the terms and conditions set forth herein:

        (i)    For each of calendar year 2015 and 2016, if the Company has not adopted a long term equity incentive compensation plan after January 22, 2014 under which Executive has been granted an award, Executive shall have the opportunity to earn a cash bonus award in an aggregate amount of $2,700,000 (the "*Annual Supplemental Award*"). The Annual Supplemental Award shall be earned by Executive on a quarterly basis for each of calendar year 2015 and 2016, with Executive having the opportunity to earn one-quarter (1/4) of the Annual Supplemental Award for each quarter commencing in 2015 and 2016, respectively; provided that if the Company adopts a long term equity incentive compensation plan after January 22, 2014, Executive shall have an opportunity to earn a prorated award for the quarter in which Executive first receives a grant under such plan (based on the portion of the quarter elapsed as of the date of such grant) and Executive shall no longer be eligible to earn future quarterly or annual awards under this Exhibit III thereafter.

        (ii)    Subject to sub-paragraph (a)(iii), below, Executive shall earn $675,000 (the "*Baseline Quarterly Supplemental Award*") or a prorated portion thereof as provided under sub-paragraph (a)(i) above for a particular quarter if: (A) Executive is employed by the Company or an Affiliate thereof on the last day of such quarter (or the date on which Executive first receives a grant under a long term equity incentive compensation plan adopted by the Company after January 22, 2014, if earlier) and (B) the applicable baseline performance metrics established by the O&C Committee (the "*Baseline Performance Metrics*") for that quarter are achieved. If the Baseline Performance Metrics for a quarter are not achieved but the threshold performance metrics established by the O&C Committee (the "*Threshold Performance Metrics*") for that quarter are achieved, Executive shall earn a percentage between 50% and 100% of the Baseline Quarterly Supplemental Award, determined by linear interpolation (the "*Threshold Quarterly Supplemental Award*"), if the condition in clause (A) above is satisfied for such quarter. Notwithstanding the foregoing, if the Baseline Performance Metrics or Threshold Performance Metrics are not achieved for any particular quarter, but the Company has achieved as of the end of that quarter or a subsequent quarter the cumulative baseline performance metrics established by the O&C Committee for that quarter (the "*Cumulative Baseline Performance Metrics*") or the cumulative threshold performance metrics established by the O&C Committee for that quarter (the "*Cumulative Threshold Performance Metrics*"), Executive shall be entitled to the following if the condition in clause (A) above is satisfied for such quarter: (x) the payment calculated for such quarter (the "*Current Quarter*") to the extent either the Baseline Performance Metrics or Threshold Performance Metrics for the Current Quarter are achieved and either (y) if the Cumulative Baseline Performance Metrics are achieved, Executive shall be entitled to an amount equal to the excess of the sum of the Baseline Quarterly Supplemental Awards for each quarter ending with the Current Quarter over the aggregate amount paid or payable to Executive under this Exhibit III through the Current Quarter

Exhibit III-1

(including the amount that would be paid under clause (x) for the Current Quarter) or (z) if the Cumulative Threshold Performance Metrics are achieved (but the Cumulative Baseline Performance Metrics are not achieved), Executive shall be entitled to an amount equal to the excess of the sum of the Threshold Quarterly Supplemental Awards (determined by linear interpolation, utilizing the Cumulative Threshold Performance Metrics and Cumulative Baseline Performance Metrics for the Current Quarter) for each quarter ending with the Current Quarter over the aggregate amount paid or payable to Executive under this Exhibit III through the Current Quarter (including the amount that would be paid under clause (x) for the Current Quarter). Notwithstanding anything contained herein to the contrary, (i) in no event shall the sum of the payments made to Executive under this Exhibit III exceed the sum of the Baseline Quarterly Supplemental Awards through the end of the applicable quarter and (ii) each of 2015 and 2016 shall be administered separately, so that there shall be no carryover of award opportunities or performance from 2015 into 2016.

(iii) Notwithstanding anything to the contrary contained herein, in the event Executive's employment is terminated pursuant to Section 7(b), 7(c), or 7(e) hereof, Executive shall receive a prorated portion (based on the portion of the applicable quarter Executive was employed by the Company or an Affiliate thereof) of the award Executive would have earned for such quarter had Executive's employment continued through the end of such quarter; provided, that, in the case of a termination of employment pursuant to Section 7(c) or 7(e), Executive (x) does not violate the restrictions set forth in Section 8 of this Agreement and (y) executes, delivers and does not revoke a general release of claims against the Company and its Affiliates (excluding claims for indemnification, claims for coverage under officer and director policies, and claims as a stockholder of the Company). Such prorated payment shall be paid at the time set forth in sub-paragraph (a)(iv).

(iv) Any payment earned by Executive with respect to a quarter shall be paid in a lump sum cash payment within 60 days of the end of such quarter. In no event shall (A) Executive be required to repay any amounts previously received under this Exhibit III and/or (B) Executive not receive a payment for a quarter if the Baseline Performance Metrics, Threshold Performance Metrics, Cumulative Baseline Performance Metrics, or Cumulative Threshold Performance Metrics for such quarter are achieved (unless Executive fails to meet the condition set forth in sub-paragraph (a)(ii)(A), above).

(v) Prior to the commencement of each quarter in 2015 and 2016, the O&C Committee shall establish Baseline Performance Metrics, Threshold Performance Metrics, Cumulative Baseline Performance Metrics and Cumulative Threshold Performance Metrics for such quarter. The process followed by the O&C Committee in establishing these performance metrics shall otherwise be generally consistent with the O&C Committee's prior practice in establishing performance metrics.

(vi) For the avoidance of any doubt, the Annual Supplemental Award provided under this Exhibit III is in addition to any other annual or long-term incentive award Executive may be entitled to receive under the Agreement or otherwise and Executive agrees and acknowledges that, unlike other awards which he may be entitled to receive, the Annual Supplemental Award is not covered by or subject to an irrevocable standby letter of credit.

Exhibit III-2

DAL:0103309/00001:2026208v31

(vii) Capitalized terms used herein shall have the meanings ascribed to such terms in the Agreement or Exhibits hereunder.