UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| In re<br><br>ENERGY FUTURE HOLDINGS CORP., *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 14-10979 (CSS)<br>(Jointly Administered) |
| AVENUE CAPITAL MANAGEMENT II, LP, on behalf of certain investment funds and accounts it advises, GSO CAPITAL PARTNERS LP, on behalf of certain funds and accounts it manages, P. SCHOENFELD ASSET MANAGEMENT LP, an investment manager on behalf of certain of its affiliated investment funds, THIRD AVENUE MANAGEMENT LLC, on behalf of certain funds it manages, and YORK CAPITAL MANAGEMENT GLOBAL ADVISORS, LLC, on behalf of certain funds and/or accounts managed or advised by it and/or its affiliates,<br><br>Plaintiffs,<br><br>v.<br><br>FIDELITY INVESTMENTS,  | Adversary Proceeding<br>No. _____(CSS)<br><br>**ADVERSARY COMPLAINT**<br><br>REDACTED<br>Pursuant to Confidentiality Agreement and Stipulated Protective Order (D.I. 1833). |

---

[1] All of the debtors in these jointly administered chapter 11 cases are collectively referred to herein as the "Debtors."



Defendants.

TO THE HONORABLE CHRISTOPHER S. SONTCHI, UNITED STATES BANKRUPTCY JUDGE:

Avenue Capital Management II, LP, on behalf of certain investment funds and accounts it advises ("Avenue"), GSO Capital Partners LP, on behalf of certain funds and accounts it manages ("GSO"), P. Schoenfeld Asset Management LP, an investment manager on behalf of certain of its affiliated investment funds ("PSAM"), Third Avenue Management LLC, on behalf of certain funds it manages ("Third Avenue"), and York Capital Management Global Advisors, LLC, on behalf of certain funds and/or accounts managed or advised by it and/or its affiliates ("York" and, collectively, with Avenue, GSO, PSAM and Third Avenue, the "Plaintiffs"), by and through their undersigned counsel, complain and allege as follows against Fidelity Investments and each of the other entities identified on Schedule 1 annexed hereto (collectively, "Fidelity" or "Defendants").

In this Adversary Proceeding, Plaintiffs assert a claim for breach of contract based on Fidelity's refusal to comply with its unconditional obligation to sell and transfer its EFH Non-Guaranteed Notes (defined below) to the Plaintiffs after the Plaintiffs properly exercised their Call Right (defined below), which is expressly set forth in the RSA (defined below).  Plaintiffs further seek a declaration, *inter alia*, that the Call Right was properly exercised and that the Plaintiffs are entitled to specific performance, and that Fidelity has no right, title, or interest in the EFH Non-Guaranteed Notes or any rights appurtenant to ownership of the EFH Non-Guaranteed Notes, including, without limitation, any right to transfer or dispose of the EFH Non-Guaranteed Notes to any person or entity other than Plaintiffs, or to take any action in the Debtors' chapter 11 cases or otherwise based upon its alleged ownership or possession of the EFH Non-Guaranteed Notes.  In addition to all other relief the Court deems just and appropriate, the Plaintiffs seek, *inter alia*, (i) an order directing Fidelity to perform its obligations under the Call Right and promptly transfer its EFH Non-Guaranteed Notes to the Plaintiffs in exchange for the agreed upon purchase price provided for in the Call Right, and (ii) a preliminary injunction prohibiting Fidelity from exercising any rights arising out of its alleged ownership or possession of the EFH Non-Guaranteed Notes because Fidelity no longer has any such rights following the Plaintiffs' exercise of the Call Right, including any rights to transfer or dispose of the EFH Non-Guaranteed Notes to any person or entity other than Plaintiffs or to take any action in the Debtors' chapter 11 cases or otherwise based upon its alleged ownership or possession of the EFH Non-Guaranteed Notes, without the consent of the Plaintiffs.  Plaintiffs have been and continue to be ready, willing, and able to pay the agreed upon purchase price provided for in the Call Right.

**PRELIMINARY STATEMENT**

1. This Adversary Proceeding arises from Fidelity's failure to comply with its unconditional contractual obligation to sell and transfer all of its EFH Non-Guaranteed Notes to Plaintiffs after the Plaintiffs properly exercised their right to purchase all of the EFH Non-Guaranteed Notes held by Fidelity.

2. On April 29, 2014, in connection with the commencement of the Debtors' chapter 11 cases, Energy Future Holdings Corp. ("EFH"), certain of EFH's affiliates, and the Restructuring Support Parties (as defined therein), which include Fidelity and each of the Plaintiffs, entered into that certain Restructuring Support and Lock-Up Agreement (as amended, the "RSA").[2] The RSA, along with the Amended and Restated Restructuring Term Sheet (the "Term Sheet"), which is annexed to and incorporated into the RSA as Exhibit A thereto, and certain other documents incorporated into the RSA, set forth the terms of, and support for, a restructuring of the Debtors to be effected through a chapter 11 plan of reorganization. As the Debtors have noted, the RSA and the Term Sheet were the product of protracted, good-faith negotiations among numerous stakeholders, including the Plaintiffs and Fidelity.

3. Pursuant to the express terms of the RSA, the Plaintiffs were granted the unconditional right to purchase from Fidelity all of the EFH Non-Guaranteed Notes held by

---

[2] A copy of the RSA and Term Sheet are annexed hereto as Exhibit A. The RSA and Term Sheet were obtained from filings made in this Court by the Debtors including: (1) the Debtors' *Proposed Order Authorizing the RSA Debtors to Assume the Restructuring Support Agreement and Modifying the Automatic Stay* [D.I. 505-2]; (2) the *Declaration of Paul Keglevic, Executive Vice President, Chief Financial Officer, and Co-Chief Restructuring Officer of Energy Future Holdings Corp, et al., in Support of First Day Motions* [D.I. 98]; and (3) the Debtors' *Motion of Energy Future Intermediate Holding Company LLC and EFIH Finance Inc. for Entry of an Order (A) Approving Postpetition Second Lien Financing, (B) Granting Liens and Providing Superpriority Administrative Expense Claims, (C) Authorizing the Use of Cash Collateral, (D) Authorizing the EFIH Second Lien Repayment, (E) Authorizing Entry into and Payment of Fees under the Commitment Letter, and (F) Modifying the Automatic Stay* [D.I. 505-2]. Capitalized terms used but not defined herein shall have the meanings ascribed to them in the RSA or Term Sheet, as applicable.

Fidelity for a purchase price equal to 37.15% of par plus accrued and unpaid interest through the Petition Date (the "Call Right").

4. By letter, dated May 27, 2014, to Fidelity (the "GSO and Avenue Call Letter"), a copy of which is annexed hereto as Exhibit B, GSO and Avenue exercised the Call Right effective as of that day.

5. By letters, dated July 17, 2014, to Fidelity, each of York, Third Avenue, and PSAM exercised the Call Right effective as of that day. Copies of such letters are annexed hereto as Exhibits C, D, and E, respectively (such letters, together with the GSO and Avenue Call Letter, are referred to herein as the "Call Letters").

6. Pursuant to the Call Right and the Call Letters, Fidelity became immediately obligated to transfer all of its EFH Non-Guaranteed Notes in the face amount of approximately $423 million to the Plaintiffs in exchange for the fixed purchase price provided in the RSA.

7. Fidelity has refused to comply with its obligations with respect to the Call Right.

8. On June 6, 2014, Plaintiffs' counsel sent a letter on behalf of Avenue and GSO to Fidelity's counsel demanding that Fidelity promptly transfer its EFH Non-Guaranteed Notes as required by the Call Right. A copy of the letter is attached hereto as Exhibit F. As of the date hereof, Fidelity has not complied with its obligations with respect to the Call Right. As a result, Plaintiffs have been deprived of the EFH Non-Guaranteed Notes, and all of the rights attendant to ownership of such notes.

9. ███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████





10. The Debtors elected to terminate the RSA effective as of July 31, 2014. However, at the time the Call Right was exercised, the RSA was in full force and effect and binding on the Restructuring Support Parties, which include Fidelity. RSA ¶ 1 ("This Agreement shall become effective and binding upon each of the Parties at 12:00 a.m., prevailing Eastern Time, on the date on which [each of the conditions precedent has been satisfied] on or before April 29, 2014 . . . ."). In addition, paragraph 8.11 of the RSA provides, in relevant part:

> 8.11 <u>Effect of Termination</u>: . . . . Notwithstanding anything to the contrary in this Agreement . . . [termination of the RSA] shall not be construed to prohibit . . . any of the Restructuring Support Parties . . . to seek enforcement of any rights under this Agreement . . . that arose or existed before a Termination Date."

RSA ¶ 8.11.

## JURISDICTION AND VENUE

11. This Court has jurisdiction over this proceeding under 28 U.S.C. §§ 157 and 1334. Venue is proper under 28 U.S.C. §§ 1408 and 1409.

12. Pursuant to section 11.05 of the RSA, the parties to the RSA, including Fidelity, have irrevocably agreed to submit to the exclusive jurisdiction of this Court to determine any claim arising out of or related to the RSA.

13. The statutory predicates for this proceeding are 11 U.S.C. § 105(a), 28 U.S.C. § 2201 and Bankruptcy Rules 7001(1), 7001(7), 7001(9) and 7065.

## PARTIES

14. Plaintiff Avenue is a limited partnership organized and existing under the laws of Delaware with its principal place of business in New York, New York.

15. Plaintiff GSO is a limited partnership organized and existing under the laws of Delaware with its principal place of business in New York, New York.

16. Plaintiff PSAM is a limited partnership organized and existing under the laws of Delaware with its principal place of business in New York, New York.

17. Plaintiff Third Avenue is a limited liability company organized and existing under the laws of Delaware with its principal place of business in New York, New York.

18. Plaintiff York is a limited liability company organized and existing under the laws of New York with its principal place of business in New York, New York.

19. Upon information and belief, Fidelity Investments and the other Defendants identified on Schedule 1 are parties to the RSA, and are holders of or investment advisors or managers of discretionary accounts that hold the EFH Non-Guaranteed Notes that are subject to

the Call Right.  Upon information and belief, each of the Defendants has its principal place of business in Boston, Massachusetts.

## FACTUAL BACKGROUND

### A. The Chapter 11 Cases

20. On April 29, 2014, each of the Debtors filed a voluntary petition for relief with this Court under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").  The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee has been appointed in the Debtors' chapter 11 cases.

21. On May 13, 2014, the Office of the United States Trustee for the District of Delaware appointed an official committee of unsecured creditors in these chapter 11 cases.

### B. The Restructuring Support Agreement

22. The Debtors have stated that the prepetition capital structures of EFH, Energy Future Intermediate Holding Company LLC ("EFIH"), and Texas Competitive Electric Holdings Company LLC ("TCEH"), and their affiliated debtors and non-debtor companies, could not be supported by prevailing market realities so their capital structure has to be delevered. Accordingly, commencing in July 2012, the Debtors initiated discussions with certain of their various stakeholders in an effort to achieve a consensus on a comprehensive restructuring of their balance sheet.

23. After months of negotiations among the Debtors and their stakeholders, the Debtors and the Restructuring Support Parties entered into the RSA, which includes the Term Sheet incorporated therein.  Each of the Plaintiffs and Fidelity are Restructuring Support Parties, and are parties to the RSA.

24. Pursuant to its terms, the RSA became effective and binding upon each of the parties on April 29, 2014, immediately upon satisfaction of the conditions set forth in section 1 of the RSA, which were timely satisfied.

25. As of the execution date of the RSA, Fidelity held approximately $471 million, or 73% (excluding amounts held by EFIH), of EFH Unsecured Notes. Approximately $423 million of that amount is comprised of EFH Non-Guaranteed Notes, all of which are subject to the Call Right. The remaining approximately $48 million is comprised of EFH LBO Notes, which were guaranteed by EFIH and certain other entities.

### C. The Call Right

26. Pursuant to the Call Right, the Plaintiffs, as Commitment Parties, were granted the unconditional right to purchase all of the EFH Non-Guaranteed Notes held by Fidelity for a stated price. The Call Right provides as follows:

> (f) **Call Right**. At any time before the Effective Date [of a plan of reorganization], any one or more Commitment Parties shall have the right to purchase from Fidelity all of its EFH Non-Guaranteed Notes for a purchase price equal to 37.15% of par plus accrued and unpaid interest through the Petition Date (the "**Call Right**").

Term Sheet, at *8. The "Effective Date," as set forth in the Call Right, has not occurred.

27.  *See supra* ¶ 9.

28. Pursuant to the Call Letters, the Plaintiffs exercised the Call Right. Fidelity has not complied with its obligations under the Call Right to transfer its EFH Non-Guaranteed Notes to the Plaintiffs.

29. On June 6, 2014, Plaintiffs' counsel sent a letter on behalf of GSO and Avenue to Fidelity's counsel demanding that Fidelity promptly proceed with the transfer of its EFH Non-

Guaranteed Notes as required by the Call Right. As of the date hereof, Fidelity has not transferred its EFH Non-Guaranteed Notes to the Plaintiffs as required by the Call Right.

30. On August 1, 2014, Fidelity informed Plaintiffs that it would not honor the Call Right and that it was free to sell the EFH Non-Guaranteed Notes on its own volition without informing anyone. Fidelity continues to hold the EFH Non-Guaranteed Notes and continues to represent and conduct itself as the putative holder of such notes and the rights associated with them.

31. By reason of Fidelity's breach of its obligations under the Call Right, it is improperly in possession and control of the EFH Non-Guaranteed Notes. Accordingly, Fidelity (i) should not be permitted to exercise any rights appurtenant to ownership of the EFH Non-Guaranteed Notes, including, without limitation, any right to transfer or dispose of the EFH Non-Guaranteed Notes to any entity other than the Plaintiffs, or to take any action in the Debtors' chapter 11 cases or otherwise based upon its alleged ownership or possession of any EFH Non-Guaranteed Notes, and (ii) should be directed to promptly transfer its EFH Non-Guaranteed Notes to the Plaintiffs in exchange for the agreed upon purchase price provided for in the Call Right.

32. The parties recognized the irreparable harm that would result from a breach of the RSA and the entitlement to the remedy of specific performance when they entered into that agreement. The RSA provides:

> 11.15. <u>Specific Performance</u>. It is understood and agreed by the Parties that money damages would be an insufficient remedy for any breach of this Agreement by any Party and each non-breaching Party shall be entitled to specific performance and injunctive or other equitable relief (without the posting of any bond and without proof of actual damages) as a remedy of any such breach, including an order of the Bankruptcy Court or other court of

11

>    competent jurisdiction requiring any Party to comply promptly with any of its obligations hereunder.

RSA ¶ 11.15.

34. Money damages would be insufficient to compensate Plaintiffs for Fidelity's clear and unequivocal breach. The EFH Non-Guaranteed Notes are an integral element of the Debtors' capital structure and the treatment of such notes undoubtedly is a critical part of the plan formulation and negotiation process. As stated in the Debtors' recent motion for, among other things, approval of bidding procedures and scheduling an auction in connection with proposed investments in EFH and its subsidiaries [D.I. 2087], the Debtors are engaged in a process to develop and formulate a plan of reorganization with their stakeholders. Plaintiffs, as the rightful owners of the EFH Non-Guaranteed Notes, are entitled to the notes and to assert all rights in these chapter 11 cases attendant thereto, including in connection with the plan process.

34. The fact that the RSA has been terminated does not permit Fidelity to ignore its express contractual obligations. The RSA was in full force and effect and binding on the Restructuring Support Parties when the Call Right was exercised. In addition, the RSA in section 8.11 specifically provides for the enforceability of all rights that arose or existed before a Termination Date. Further, Fidelity received and retained several benefits provided for in the RSA, including (a) payment in full of approximately $437 million of EFIH First Lien Notes, together with a payment of approximately $22 million on account of make-whole claims on such notes; and (b) the exclusive option pursuant to the RSA to fund $500 million of the First Lien DIP Financing and the payment of an $8.75 million commitment fee in connection with such funding.

## COUNT I
## BREACH OF CONTRACT

35. Plaintiffs repeat, reallege, and incorporate by reference the allegations contained in paragraphs 1 through 34 above as if fully set forth in this cause of action.

36. Each of the Plaintiffs and Fidelity are parties to the RSA which became effective on April 29, 2014.

37. Each of the Plaintiffs is in full compliance with its obligations under the RSA.

38. The Call Right provided for in the RSA granted to the Plaintiffs an immediate and unconditional right to purchase all EFH Non-Guaranteed Notes held by Fidelity at the price stated therein.

39. On May 27, 2014, GSO and Avenue properly exercised the Call Right.

40. On July 17, 2014, York, Third Avenue, and PSAM each properly exercised the Call Right.

41. Fidelity has refused to comply with its obligations under the RSA and Call Right to sell and transfer all of its EFH Non-Guaranteed Notes to the Plaintiffs.

42. As a result of Fidelity's breach of its obligations under the RSA, the Plaintiffs have been harmed and are entitled to specific performance.

## COUNT II
## DECLARATORY JUDGMENT

43. Plaintiffs repeat, reallege, and incorporate by reference the allegations contained in paragraphs 1 through 34 above as if fully set forth in this cause of action.

44. As alleged above, the Plaintiffs properly exercised the Call Right, obligating Fidelity to immediately sell and transfer all of its EFH Non-Guaranteed Notes to the Plaintiffs. Fidelity has not complied with such obligations.

45. Fidelity cannot retain any rights appurtenant to the ownership of the EFH Non-Guaranteed Notes as a result of its breach of its agreement with the Plaintiffs and its unlawful retention of possession and control of the EFH Non-Guaranteed Notes.

46. Given that Fidelity continues to possess the EFH Non-Guaranteed Notes and to assert rights attributable to the ownership thereof despite Plaintiffs' exercise of the Call Right and Fidelity's failure to comply with its obligations in connection therewith, there exists an actual controversy between Plaintiffs and Defendants.

47. Accordingly, Plaintiffs are entitled to a declaration that: (a) Plaintiffs properly exercised the Call Right and are entitled to prompt transfer to them of all of the EFH Non-Guaranteed Notes held by Fidelity in exchange for the agreed upon purchase price provided for in the Call Right; and (b) Fidelity no longer has any right, title or interest in the EFH Non-Guaranteed Notes or any rights appurtenant to ownership of the EFH Non-Guaranteed Notes, including, without limitation, any right to transfer or dispose of the EFH Non-Guaranteed Notes to any person or entity other than the Plaintiffs, or to take any action in the Debtors' chapter 11 cases or otherwise based on its alleged ownership or possession of the EFH Non-Guaranteed Notes.

**RELIEF REQUESTED**

WHEREFORE, Plaintiffs pray that this Court enter judgment in favor of Plaintiffs and against Defendants as follows:

A. Issuing an Order directing Fidelity to promptly sell and transfer all of its EFH Non-Guaranteed Notes to Plaintiffs pursuant to the Call Right;

B. Declaring that:

   i. Plaintiffs properly exercised the Call Right and are entitled to prompt transfer to them of all of the EFH Non-Guaranteed Notes held by Fidelity in exchange for the agreed upon purchase price provided for in the Call Right; and

14

    ii.    Fidelity no longer has any right, title or interest in the EFH Non-Guaranteed Notes or any rights appurtenant to ownership of the EFH Non-Guaranteed Notes, including, without limitation, any right to transfer or dispose of the EFH Non-Guaranteed Notes to any person or entity other than the Plaintiffs, or to take any action in the Debtors' chapter 11 cases or otherwise based on its alleged ownership or possession of the EFH Non-Guaranteed Notes;

C.    Granting preliminary injunctive relief enjoining Fidelity from:

    i.    exercising any rights arising out of its alleged ownership or possession of EFH Non-Guaranteed Notes;

    ii.    transferring or disposing of the EFH Non-Guaranteed Notes to any person or entity other than Plaintiffs; and

    iii.    taking any action in the Debtors' chapter 11 cases or otherwise based on its alleged ownership or possession of the EFH Non-Guaranteed Notes without the consent of the Plaintiffs; and

D.    Awarding Plaintiffs damages in an amount to be determined at trial; and

E.    Awarding Plaintiffs such other and further relief as the Court may deem just and appropriate.

/s/ John G. Harris
John G. Harris (ID No. 4017)
BERGER HARRIS, LLP
1105 North Market Street, 11th Floor
Wilmington, DE 19801
Telephone: (302) 655-1140
Facsimile: (302) 655-1131
*Attorneys for the Plaintiffs*

–*Of Counsel:*

Stephen Karotkin
Yehudah L. Buchweitz
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Dated: October 6, 2014

## **Schedule 1**

1. Fidelity Investments

