## Exhibit F

## Letter to Fidelity's Counsel, dated June 6, 2014

WEIL:\95111762\1\47168.0005

**Weil, Gotshal & Manges LLP**

BY ELECTRONIC AND FIRST CLASS MAIL

767 Fifth Avenue
New York, NY 10153-0119
+1 212 310 8000 tel
+1 212 310 8007 fax

Stephen Karotkin
+1 (212) 310-8350
stephen.karotkin@weil.com

June 6, 2014

Brad Eric Scheler, Esq.
Fried, Frank, Harris, Shriver & Jacobson LLP
One New York Plaza
New York, New York 10004

**Re: GSO Capital Partners LP and Avenue Capital Group – EFH et. al. Chapter 11 Cases**

Dear Mr. Scheler:

As you know, we represent GSO Capital Partners LP ("GSO") and Avenue Capital Group ("Avenue") (on behalf of certain funds managed or sub-advised by them or their affiliates) in connection with the chapter 11 cases of Energy Future Holdings Corp. and its affiliates (collectively, "EFH") and the Governing Documents, as defined below.

Reference is made to the following documents, as amended from time to time (collectively, the "Governing Documents")[1], relating to the chapter 11 cases of EFH:

i.  Restructuring Support and Lock-Up Agreement, dated April 29, 2014 (the "RSA"), among EFH and certain of its affiliates, and the Restructuring Support Parties, which include Fidelity;

ii. Amended and Restated Restructuring Term Sheet (the "Restructuring Term Sheet"), attached as Exhibit A to the RSA;

iii. Commitment Letter, dated April 28, 2014, attached as Exhibit C to the RSA;

iv. Equity Conversion Term Sheet, attached as Exhibit B to the Commitment Letter; and

v.  Amended and Restated Second Lien Subordinated Secured Debtor In Possession Notes Facility Term Sheet (the "Second Lien DIP Term Sheet"), attached as Exhibit H to the Restructuring Term Sheet.

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Governing Documents, as applicable.

Brad Eric Scheler  
June 6, 2014  
Page 2

**Weil, Gotshal & Manges LLP**

By letter dated May 27, 2014 to Mr. Nate Van Duzer of Fidelity as to which you were copied (the "Call Letter"), GSO and Avenue exercised their unconditional Call Right provided in the RSA to purchase all of the EFH Non-Guaranteed Notes held by Fidelity for the fixed purchase price, including all of the rights attendant thereto. As you know, Fidelity has not responded to or complied with the Call Letter or its obligations with respect to the Call Right.

Further, based on my conversation with you on June 2, 2014, you made it clear that both you and Fidelity take the position that the Call Right and 9% of the Participation Rights in the EFIH Second Lien DIP Financing, which are expressly issued on account of the EFH Non-Guaranteed Notes that are the subject of the Call Right, are not linked. Apparently, it is your position that, even if Fidelity transfers the EFH Non-Guaranteed Notes pursuant to the Call Letter (as it is now obligated to do), Fidelity somehow nevertheless retains the 9% Participation Rights in the EFIH Second Lien DIP Financing and all rights attendant thereto.

As I indicated to you in our conversation on June 2nd, we are totally perplexed by Fidelity's position. It is entirely contrary to the express terms of the Governing Documents and defies logic. We have asked you to identify any provisions in the Governing Documents that support your position, but have not received a response. Indeed, you implied that such a response likely would not be forthcoming.

As demonstrated below, the Governing Documents clearly and unequivocally provide that Fidelity's 9% Participation Rights in the EFIH Second Lien DIP Financing are inextricably linked to and inseparable from the EFH Non-Guaranteed Notes that are the subject of the Call Right. There is no rational reading of the Governing Documents that can lead to a different conclusion.

The Governing Documents are clear:

- The 9% Participation Rights are provided to Fidelity expressly on account of Fidelity's status as a "Holder of General Unsecured Claims of EFH." *See* Restructuring Term Sheet, at *9 ("(h) Fidelity, *as a Holder of General Unsecured Claims of EFH*, shall receive 9% of the Participation Rights ….") (emphasis added).

- Virtually every reference in the Governing Documents to Fidelity's interest in 9% of the Participation Rights is directly tied to its status as a holder of General Unsecured Claims against EFH. *See* Commitment Letter, at *1 ("The Debtors will offer the right to purchase the Tranche A Notes to … (ii) *General Unsecured Claims Against EFH held by Fidelity* . . .") (emphasis added); Second Lien DIP Term Sheet, at *1 ("Fidelity shall receive their Pro Rata share of 9% of the Participation Rights *which participation shall be in the form of Tranche A-3 Note* [defined in the Commitment Letter by reference to "General Unsecured Claims Against EFH held by Fidelity"].") (emphasis added).

Brad Eric Scheler  
June 6, 2014  
Page 3

**Weil, Gotshal & Manges LLP**

- The only General Unsecured Claims against EFH held by Fidelity are approximately $423 million of EFH Non-Guaranteed Notes and approximately $48 million of EFH LBO Notes. The EFH LBO Notes are guaranteed by EFIH, and, therefore, to the extent Fidelity holds such notes, it will participate in its pro rata share of the 91% Participation Rights in the EFIH Second Lien DIP Financing, together with other holders of EFH LBO Note Claims and holders of EFIH Unsecured Note Claims, on account of those notes. *See* Restructuring Term Sheet, at *3 ("Holders of EFIH Unsecured Note Claims and EFH LBO Notes Guaranty Claims will receive their Pro Rata share of 91% of the Participation Rights . . . ."); *see also id.* at *8-9 (same); Second Lien DIP Term Sheet, at *1 (same). As a result, Fidelity's 9% Participation Rights are only on account of its remaining General Unsecured Claims against EFH, which relate solely to the EFH Non-Guaranteed Notes. Any other reading of the Governing Documents is completely illogical and ignores the plain meaning of the terms and provisions of the Governing Documents.

- All of the EFH Non-Guaranteed Notes held by Fidelity are subject to the Call Right that has been exercised by GSO and Avenue. The Call Right provides:

    > (f) **Call Right**. At any time before the Effective Date, any one or more Commitment Parties shall have the right to purchase from Fidelity *all of its EFH Non-Guaranteed Notes* for a purchase price equal to 37.15% of par plus accrued and unpaid interest through the Petition Date (the "**Call Right**").

    Restructuring Term Sheet, at *8 (emphasis added). The Call Right has been exercised, is unconditional and obligates Fidelity to transfer *all* of its EFH Non-Guaranteed Notes to GSO and Avenue. Upon such required transfer, Fidelity no longer will have any of the 9% Participation Rights.

- The Equity Conversion Term Sheet, which governs the conversion of the Second Lien DIP Notes to Reorganized EFH Common Stock, contemplates that a transferee of Fidelity may hold the Tranche A-3 Notes at the time of the conversion. Specifically, the "Summary of Equity Conversion" in the Equity Conversion Term Sheet states:

    > Holders of General Unsecured Claims Against EFH other than Fidelity may elect to participate in their Pro Rata share (with all Holders of General Unsecured Claims Against EFH) of up to 9% of the Equity Conversion . . . provided that such Holders of General Unsecured Claims may only participate in the Equity Conversion by purchasing Tranche A-3 Notes held by Fidelity *or any direct or indirect transferee thereof* . . . .

Brad Eric Scheler  
June 6, 2014  
Page 4

**Weil, Gotshal & Manges LLP**

Equity Conversion Term Sheet, at *1 (emphasis added).

Indeed, to suggest that Fidelity could somehow retain the 9% Participation Rights after the Call Right has been exercised is not only directly at odds with the provisions of the Governing Documents, but would result in a totally unjustifiable windfall to Fidelity that would undermine the restructuring provided for in the RSA.

Accordingly, on behalf of GSO and Avenue, we hereby demand that Fidelity promptly proceed with the transfer of the EFH Non-Guaranteed Notes to GSO and Avenue in accordance with the Call Letter and as required by the Call Right. Of course, GSO and Avenue reserve all of their rights with respect to the Governing Documents and otherwise.

Any questions with respect to the foregoing should be directed to the undersigned.

Very truly yours,

Stephen Karotkin

cc: Jason New  
    Matthew Kimble  
    Gary L. Kaplan  
    Matthew Roose