**Exhibit B**

1

09:20:25  1          WARNING - ROUGH DRAFT COPY ONLY!!!!

2      RE:  ENERGY FUTURE HOLDINGS

3

            DEPOSITION OF:
4

5      Michael Panacio

6      October 6, 2014

7      Wilmington, DE

8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

---

2

1    ROUGH UNEDITED TRANSCRIPT REPORTER'S NOTE:

2

3    "This transcript is an UNCERTIFIED ROUGH DRAFT

4    TRANSCRIPT.  It contains raw output from the

5    court reporter's stenotype machine translated

6    into English by the court reporter's computer,

7    without the benefit of proofreading.  It will

8    contain untranslated steno outlines,

9    mistranslations (wrong words), and

10   misspellings.  These and any other errors will

11   be corrected in the final transcript  Since

12   this rough draft transcript has not been

13   proofread, the court reporter cannot assume

14   responsibility for any errors therein.  This

15   rough draft transcript is intended to assist

16   attorneys in their case preparation and is not

17   to be construed as the final transcript.  It

18   is not to be read by the witness or quoted in

19   any pleading or for any other purpose and may

20   not be filed with any court."

21
22
23
24
25

---

3

1      IN THE UNITED STATES BANKRUPTCY COURT
          FOR THE DISTRICT OF DELAWARE
2

3    ------------------------
     In re:            ) CHAPTER 11
4                      ) CASE NO.
                       ) 14-10979 (CSS)
5                      ) (Jointly Administered)
                       )
6                      )
     ENERGY FUTURE HOLDINGS   )
7    CORPORATION, et al.    )
                       )
8        Debtors.   )
     ------------------------

9          CONFIDENTIAL

10

11      Monday, October 6, 2014

        10:00 A.M.
12

13      Deposition of MICHAEL PANACIO,
14   pursuant to notice, held at the offices of
15   Richards Layton, 920 North King Street,
16   Wilmington, Delaware 19801, before Gregory T.
17   DiDonato, Certified Realtime Reporter and
18   Notary Public in and for the State of
19   Delaware, when were present:
20
21
22
23
24
25

---

4

1    APPEARANCES:
2    KIRKLAND & ELLIS LLP
     Proposed Counsel for the Debtors:
3      555 California Street
       San Francisco, California  94104
4
     BY: MARK McKANE, ESQ.
5      (mark.mckane@kirkland.com)
       HOLLY TROGDON, ESQ.
6      (holly.trogdon@kirkland.com)

7
     RICHARDS LAYTON & FINGER
8      One Rodney Square
       920 North King Street
9      Wilmington, DE  19801

10   BY: JASON M. MADRON, ESQ.
       (madron@rlf.com)
11
12   U.S. DEPARTMENT OF JUSTICE
     Office of the U.S. Trustee
13     U.S. Federal Office Building
       201 Varick Street, Room 1006
14     New York, NY  10014

15   BY:  ANDREA B. SCHWARTZ, ESQ.
       (andrea.b.schwartz@usdoj.gov)
16     RICHARD L. SCHEPACARTER, ESQ.
       (richard.schepacarter@usdoj.gov)
17

18
     POTTER ANDERSON CORROON, LLP
19   Attorneys for Deutsche Bank
       1313 N. Market Street
20     Wilmington, DE  19899

21   BY:  R. STEPHEN McNEILL, ESQ.
       (rmcneill@potteranderson.com)
22
23
24
25

5

1
2   AKIN GUMP STRAUSS HAUER & FELD LLP
    Attorneys for the Ad Hoc Committee of EFIH
3   Unsecured Noteholders and the Second Lien Debt
    Holders:
4       One Bryant Park
        Bank of America Tower
        New York, NY  10036
5
6   BY:  LINDSEY ZAHRADKA, ESQ.
        (lindseyzahradka@akingump.com)
7       (Via Phone Conference)

8   BINGHAM McCUTCHEN LLP
    Attorneys for PIMCO:
9       One Federal Street
        Boston, Massachusetts 02110
10
    BY:  JULIA FROST-DAVIES, ESQ.
11      (julia.frost-davies@bingham.com)
        (Via Phone Conference)
12
13  MORRISON & FOERSTER LLP
    Attorneys for the Official Committee of
14  Unsecured Creditors for TCEH
        230 West 55th Street
15      New York, New York  10019

16  BY: TIFFANI B. FIGUEROA, ESQ.
        (tfigueroa@mofo.com)
17      (Via Phone Conference)

18  FOLEY & LARDNER

19  BY:  JOSEPH RICHMAN, ESQ.
        (Via Conference Call)
20

21  GAVIN SOLMENASE
    Attorneys for UMB:
22      919 N. Market Street
        Suite 600
23      Wilmington, DE 19801

24  BY:  JOSEPH RICHMAN, ESQ.
        (joseph.richman@gavinsolmonese.com)
25      (Via Conference Call)

---

6

1   ALSO PRESENT:

2   Alex Najemy, Richards Layton Observing

3

4   Sam Schreiber, Filsinger Energy Group
    (Via Conference Call)
5
    Michael Gadsden, Filsinger Energy Group
6   (Via Conference Call)

7

8

9

10

11              * * * * *
12
13
14
15
16
17
18
19
20
21
22
23
24
25

---

7

1           P R O C E E D I N G S.
2           (Commencing 10:05 a.m.)
3           (Discussion off the record.)
4           THE REPORTER:  Raise your right hand,
5   please.
6           Do you solemnly swear that the
7   testimony you will give today will be the
8   truth, the whole truth, and nothing but the
9   truth, so help you God?
10          THE WITNESS:  I do.
11  WHEREUPON,
12          MICHAEL PANACIO, 5 Split Rail
13  Lane, Marlton, New Jersey  08055, called as a
14  witness, and having been first duly sworn, was
15  examined and testified as follows:
16      EXAMINATION BY COUNSEL FOR DEBTORS:
10:07:40  17  BY MR. McKANE:
10:07:40  18      Q.  Good morning, Mr. Panacio, is it
10:07:43  19  pa-nach-io, am I proceeding it right or
10:07:46  20  po-notch-io?
10:07:47  21      A.  Po-notch-io.  Good Irish name.
10:07:50  22      Q.  I'll do high best.
10:07:56  23          Sir have you ever been deposed
10:07:57  24  before?
10:07:57  25      A.  I have not.

---

8

10:08:00  1      Q.  Have you ever testified in court
10:08:01  2   before?
10:08:01  3       A.  I have.
10:08:03  4      Q.  When was the last time you testified
10:08:04  5   in court?
10:08:05  6       A.  About a year ago.
10:08:08  7      Q.  What were the circumstances under
10:08:09  8   which you testified?
10:08:10  9       A.  It was regarding I believe it was
10:08:12  10  regarding quarterly fees, U.S. Trustee
10:08:17  11  quarterly fees.
10:08:17  12      Q.  So, it was to provide a factual
10:08:20  13  foundation for the quarterly fees charged by
10:08:23  14  the United States trustee?
10:08:24  15      A.  Correct.
10:08:25  16      Q.  Sir, do you understand that the oath
10:08:26  17  you just took is the same oath that you would
10:08:28  18  take in court?
10:08:29  19      A.  Yes.
10:08:29  20      Q.  And, sir, you understand you're here
10:08:31  21  to give answers under oath?
10:08:33  22      A.  Correct.
10:08:33  23      Q.  Sir if you I'm going to ask you a
10:08:36  24  series of questions if tau at any point in
10:08:38  25  time you don't understand those questions let

9

10:08:40  1   me know okay?
10:08:40  2        A.  I will.
10:08:40  3        Q.  If you answer the question that I
10:08:42  4   can, I'm assuming you understood it.  Do you
          5   understand that?
10:08:44  6        A.  Correct.
10:08:45  7        Q.  Now, sir, you've been asked to
10:08:48  8   testify on Wednesday at the insider
10:08:50  9   compensation hearing; is that right?
10:08:52 10        MS. SCHWARTZ:   Objection.
10:08:53 11        MR. McKANE:  You can answer.
10:08:54 12        MS. SCHWARTZ:  No.  Objection.  It
10:08:55 13   hasn't been determined whether he's testifying
10:08:57 14   or not.
10:08:58 15        Q.  Have you been asked, sir, to testify
10:09:01 16   at the insider comp hearing on Wednesday?
10:09:04 17        A.  It had not been determined.
10:09:06 18        Q.  Had you been asked?
10:09:08 19        MS. SCHWARTZ:  Objection to form.
10:09:10 20        MR. McKANE:  You can answer.
10:09:12 21        A.  It's been discussed.
10:09:15 22        Q.  Have you been asked to provide any
10:09:16 23   opinions regarding any subject matter that
10:09:23 24   covered under the debtor's motion tor insider
10:09:27 25   compensation?

10

10:09:29  1        A.  In certain areas I have, yes.
10:09:31  2        Q.  You have rendered those opinions?
10:09:33  3        A.  Yes.
10:09:33  4        Q.  Are all of those opinions reflected
10:09:36  5   in a declaration that you filed with the Court
10:09:38  6   on Thursday night?
10:09:40  7        A.  Yes.
10:09:41  8        Q.  What opinions do you may you testify
10:09:45  9   about on Wednesday?
10:09:47 10        A.  Variance opinions, as far as numbers,
10:09:55 11   as far as the calculation of actual figures
10:09:58 12   and target areas; the other area was the list
10:10:05 13   of the tier companies that are comparable
10:10:09 14   companies in comparison to the EFH.
10:10:14 15        Q.  Sir, in preparing to provide those
10:10:17 16   opinions, you did an analysis of certain
10:10:21 17   metrics that the debtors used in value
10:10:25 18   evaluating the eligible for insider
10:10:28 19   compensation; right?
10:10:29 20        A.  Yes.
10:10:29 21        Q.  If I refer to the term metric?
10:10:31 22        A.  Yes.
10:10:31 23        Q.  Those metrics are for the 2014 year?
10:10:34 24        A.  Yes.
10:10:35 25        Q.  Sir is it your yin that the 2014

11

10:10:38  1   metrics are not stretch goals?
10:10:40  2        MS. SCHWARTZ:  Objection to form. Of
10:10:42  3   the question.
10:10:44  4        MR. McKANE:  You can answer.
10:10:45  5        A.  Based on the analysis that I've
10:10:47  6   conducted, comparing the 2014 metric figures
10:10:52  7   to the 5-year performance actual performance
10:10:55  8   history on those metrics, I believe it is
10:11:03  9   beyond the stretch goal.  Those metrics will
10:11:07 10   be easily be obtained.
10:11:08 11        Q.  You believe that based on the
10:11:11 12   analysis that you have done those metrics will
10:11:13 13   easily be obtained?
10:11:15 14        A.  For, again, if you're talking about
10:11:17 15   threshold, I would say threshold.
10:11:19 16        Q.  So, let's try to be a little more
10:11:21 17   precise.
10:11:22 18        A.  Yes.
10:11:23 19        Q.  I it your opinion that the threshold
10:11:25 20   level for the 2014 metrics are easily obtained
10:11:29 21   and therefore not stretch goals?
10:11:30 22        MS. SCHWARTZ:  Objection it's
10:11:31 23   outside the scope of what his declaration
10:11:35 24   says.
10:11:35 25        MR. McKANE:  You can answer.

12

10:11:37  1        A.  Based on the analysis of the 2014
10:11:41  2   comparable to the past history and the actual
10:11:45  3   midpoint levels, I believe there's threshold
10:11:49  4   figures will be obtained, they'll be exceeding
10:11:52  5   the threshold level. Exceeding.
10:11:56  6        Q.  You used the language earlier,easily
10:11:58  7   obtained.  Is it your opinion that the fact
10:12:00  8   they are easily obtained means they are not
10:12:04  9   threshold stretch goals?
10:12:05 10        MS. SCHWARTZ:  Objection; goes
10:12:06 11   outside the scope of the declaration.
10:12:08 12        A.  Can you repeat the question.
10:12:09 13        Q.  So, I asked you a question about
10:12:10 14   whether you thought the 2014 threshold metrics
10:12:13 15   were stretch goals correct.
10:12:15 16        Do you recall that question?
10:12:16 17        A.  Yes.
10:12:16 18        Q.  And in response you said that it is
10:12:18 19   your opinion that you thought that the 2014
10:12:21 20   threshold metrics would be easily obtained?
10:12:23 21        Do you recall that testimony?
10:12:24 22        A.  Yes
10:12:24 23        Q.  I'm trying to understand what is the
10:12:26 24   differentiation in your own mind between
10:12:28 25   easily obtained and stretch goals?

165

13:12:57 1 income or loss, working capital or loss and
13:13:00 2 long-term debt; right?
13:13:01 3 **A. Correct.**
13:13:01 4 Q. Why did you choose those columns?
13:13:03 5 **A. I wanted to just provide a financial**
13:13:07 6 **picture of EFCH holdings, EFCH company, their**
13:13:16 7 **ability again to generate enough revenue to**
13:13:19 8 **service their long-term debt, working capital**
13:13:23 9 **as you know is your current assets and current**
13:13:27 10 **liabilities, again, to meet current**
13:13:29 11 **obligations.**
13:13:29 12 Q. How is the ability to service its
13:13:32 13 long-term debt in any way applicable to an
13:13:36 14 incentive compensation motion?
13:13:42 15 MS. SCHWARTZ: Could you say the
13:13:43 16 question again. I'm sorry. I didn't hear it.
13:13:45 17 Q. How is the ability to service of a
13:13:49 18 company to service its long-term debt in any
13:13:51 19 way applicable to an incentive compensation
13:13:54 20 motion?
13:13:54 21 MS. SCHWARTZ: Objection to the form
13:13:55 22 of the question, calls for a legal answer.
13:13:59 23 **A. This cart just, I is just want to**
13:14:02 24 **provide a presentation of their financial**
13:14:05 25 **division position.**

166

13:14:06 1 Q. It's your understanding EFH filed for
13:14:08 2 bankruptcy in part to restructure its debt?
13:14:11 3 **A. I understand.**
13:14:13 4 Q. It's not your opinion in any way that
13:14:15 5 a company that's in bankruptcy cannot have an
13:14:19 6 incentive compensation program, is it?
13:14:22 7 MS. SCHWARTZ: Again, he's not here
13:14:23 8 as an kek executive compensation expert; but
13:14:26 9 you can answer that.
13:14:28 10 **A. Correct.**
13:14:31 11 MR. McKANE: Why don't we go off the
13:14:32 12 record for a couple of minutes.
13:18:14 13 (Recess taken: 1:15 p.m.
13:18:24 14 (Reconvening: 1:18 p.m.)
13:18:43 15 MR. McKANE:
13:18:43 16 Q. Mr. Panacio, I apologize, you work
13:18:59 17 out of this office, right, in region three?
13:19:01 18 **A. In Wilmington, yes.**
13:19:03 19 Q. Are you available to testify on
13:19:05 20 Wednesday?
13:19:05 21 **A. I am.**
13:19:07 22 Q. Sir, have you ever done any analysis
13:19:10 23 to evaluate an incentive compensation program
13:19:13 24 motion before?
13:19:14 25 **A. I have not.**

167

13:19:15 1 Q. And sir have you ever done I analysis
13:19:17 2 previously to evaluate an insider compensation
13:19:20 3 motion before?
13:19:21 4 **A. I have not.**
13:19:23 5 MR. McKANE: Andrea, that's all I
13:19:25 6 have.
13:19:25 7 MS. SCHWARTZ: Can we take a few
13:19:26 8 minutes?
13:19:27 9 MR. McKANE: Yes.
13:37:47 10 EXAMINATION
13:37:49 11
13:38:08 12 MS. SCHWARTZ:
13:38:17 13 Q. Mr. Panacio, you've been here today
13:44:15 14 for a pretty long time anting questions
13:44:18 15 regarding your declaration. I just want to
13:44:23 16 ask you a few questions to clarify some of the
13:44:26 17 things you said earlier.
13:44:28 18 First of all, Mr. Panacio, you're an
13:44:36 19 auditor for the U.S. trustee program; is that
13:44:38 20 right. Correct?
13:44:39 21 Q. You've been doing that for
13:44:41 22 approximately 14 years; is that right?
13:44:43 23 **A. Correct.**
13:44:43 24 Q. And you're also an accountant; is
25 that right?

168

13:44:46 1 **A. Yes.**
13:44:46 2 Q. And you're actually a certified
13:44:49 3 public accountant; is that right?
13:44:50 4 **A. That is correct.**
13:44:50 5 Q. And your license is with the
13:44:52 6 Commonwealth of Pennsylvania; is that right?
13:44:54 7 **A. Correct.**
13:44:54 8 Q. Okay. And you're not, it is not your
13:45:00 9 understanding that you're being offered as an
13:45:03 10 expert in executive compensation is that
13:45:05 11 correct?
13:45:06 12 MR. McKANE: Objection; leading.
13:45:07 13 MS. SCHWARTZ: I can lead.
13:45:08 14 MR. McKANE: No you can't. There's
13:45:13 15 no adversity.
13:45:14 16 MS. SCHWARTZ: You can object to
13:45:16 17 leading.
13:45:16 18 Q. Are you being offered to be as an
13:45:20 19 expert in executive compensation?
13:45:23 20 **A. No.**
13:45:24 21 Q. Are you an expert in executive
13:45:27 22 compensation?
13:45:27 23 **A. I am not.**
13:45:28 24 Q. Are you an expert in energy?
13:45:31 25 **A. I am not.**