**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) ) | Chapter 11 |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) ) ) | Case No. 14-10979 (CSS) |
| Debtors. | ) ) | (Jointly Administered) |
| | ) ) ) | **Re: D.I. 1795, 2304** |

**REPLY OF ENERGY FUTURE HOLDINGS CORP. *et al.*, IN SUPPORT OF THE DEBTORS' MOTION FOR ENTRY OF AN ORDER AUTHORIZING THE DEBTORS TO FILE UNDER SEAL CERTAIN PORTIONS OF THE DEBTORS' MOTION TO (A) PAY PREPETITION BONUSES TO INSIDERS AND (B) TO CONTINUE INSIDER BONUS PROGRAMS (D.I. 1795)**

The Debtors in the above-captioned proceeding respectfully submit this reply (the "Reply") in support of the Debtors' motion to file under seal certain materials in connection with their insider compensation motion [D.I. 1795] (the "Motion to Seal"), and in response to the U.S. Trustee's objection to that sealing motion, [D.I. 2304] (the "Objection" or "Obj.").[2]

**Preliminary Statement**

1.  The Trustee's objection seeks to unseal the Debtors' confidential, proprietary business planning documents and compensation information, which could harm the competitive position of the Debtors. As the Debtors explained in their opening motion, the disclosure of this information—which concerns the Company's "long-range planning, business risks, proprietary customer pricing and margins, and other performance challenges" (T. Filsinger Decl. ¶ 4)—may

---

[1] The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, which are being jointly administered, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

[2] Unless otherwise defined herein, capitalized terms shall have the same meaning and context as those capitalized terms included in the Motion to Seal.

RLF1 10906852v.1

be used by other power producers and retail energy providers to compete with the Debtors. The remainder of the redacted information concerns the specific compensation of individuals under the Debtors' compensation plans, and its disclosure could be used by competitors to recruit key management away from the Debtors or may affect employee morale if disclosed internally. All of this information is "confidential. . . commercial information" that merits protection. 11 U.S.C. § 107(b)(1). It is not in the public eye, and its disclosure "would result in 'an unfair advantage to competitors by providing them information as to the commercial operations of the debtor.'" *In re Alterra Healthcare Corp.*, 353 B.R 66, 75 (Bankr. D. Del. 2006)(citation omitted).

2. The Trustee's response is to object in wholesale to the Debtors' sealing motion, arguing that the Debtors must demonstrate "'that the interest in secrecy outweighs the presumption in favor of access'" or "'extraordinary circumstances and compelling need to obtain protection,'" (Obj. ¶ 19)(citations omitted), without taking on whether the redacted information is actually sensitive. The law is not nearly that strict: section 107(b) of the Bankruptcy Code does not require the Debtors to engage in a balancing test or show "good cause" to merit sealing. *See Video Software Dealers Ass'n v. Orion Pictures Corp. (In re Orion Pictures Corp.)*, 21 F.3d 24, 28 (2d Cir. 1994). Rather, if the material sought to be protected constitutes "confidential … commercial information," "the Court is *required* to protect a requesting interested party and has no discretion to deny the application." *Id.* at 27(emphasis in original). In the words of the statute, the "bankruptcy court *shall* . . . protect an entity with respect to . . . confidential . . . commercial information." 11 U.S.C. § 107(b) (emphasis added).

3. Moreover, the fact that the "Debtors have the burden of proof on [their motion to improve incentive compensation programs]" does not support the sweeping disclosure that the

Trustee demands. (Obj. ¶ 26.) This Court, of course, can consider materials under seal as part of the record—both as part of briefing and at trial. The alternative is not, as the Trustee suggests, that the trial "be conducted in secret" (Obj. ¶ 27), as there are a number of practical ways to litigate this motion without disclosing the Debtors' proprietary information. *See, e.g.*, Hr'g Tr. at 16:15-18:10; 19:11, *In re Vertis Holdings, Inc.*, Case No. 12-12821 (CSS) (Bankr. D. Del. Nov. 27, 2012) (D.I. 379) (granting order to seal job titles, salaries, and potential payouts if plan metrics are achieved); Hr'g Tr. at 22:21-23:5, *In re Furniture Brands Int'l Inc.*, Case No. 13-12329 (CSS) (Bankr. D. Del. Oct. 11, 2013) (D.I. 549) (granting order to seal participants and their compensation); Hr'g Tr. at 9:15-19; 13:23-25, *In re Green Field Energy Services Inc.*, Case No. 13-12783 (KG) (Bankr. D. Del. Jan. 13, 2014) (D.I. 423) (granting motion to seal, in part, redaction of individual bonus incentives).

    4. The Debtors believed—and still believe—that the information that they previously sought to protect meets the statutory requirements for sealing. Because, however, it is clear that this motion is headed for trial, and the Debtors want to balance the need to keep the courtroom open with the sensitivity of this information, the Debtors now submit with this brief an updated and substantially reduced set of proposed redactions. Moreover, all of the information that the Trustee suggested was already in the public record has been released as part of these proposed redactions. (*See, e.g.*, Obj. ¶ 31 (arguing that executive salary and bonuses are disclosed in S.E.C. filings without mentioning that specific compensation figures are limited to the Top 5 executives); *id.* ¶ 34 (claiming that some material in the Filsinger declaration has been publicly disclosed)). And, critically, this more limited set of redactions easily meets the liberal

3

standards for protecting the confidentiality of competitively-sensitive business information, as explained in more detail below.[3]

## Background

5.    On August 8, 2014, the Debtors filed their *Motion for Entry of an Order Authorizing the Debtors to (A) Pay Certain Prepetition Amounts on Account of the Insider Compensation Programs and (B) Continue the Insider Compensation Programs in the Ordinary Course of Business on a Postpetition Basis* [partially redacted version filed at D.I. 1792]. The Debtors also filed supporting declarations of Todd W. Filsinger (the "Filsinger Declaration") [entirely redacted version filed at D.I. 1793]—which walked through the Debtors' business plans for 2014—and Douglas Friske (the "Friske Declaration") [partially redacted version filed at D.I. 1974]—which discussed specific compensation information of the Debtors. At the same time, the Debtors asked the Court to seal certain information in these materials.

6.    As explained in the Trustee's Objection, when the Trustee notified the Debtors of her intention to object to the Motion to Seal, the Debtors responded that they would narrow the information in the Filsinger Declaration they seek to redact. (*See* Obj. at 3, n.3.) The Debtors have accordingly attached to this motion updated redactions to the Insider Compensation Motion and Mr. Filsinger's Declaration (Exhibits A and B, respectively), as well as an unredacted copy of Mr. Friske's declaration (Exhibit C). These redactions focus on two types of information: (1) highly sensitive information about the Debtors' business strategy which, if disclosed, will result in competitive harm; and (2) sensitive compensation information, which, if disclosed, may result in the recruitment of the Debtors' top talent by competitors.

---

[3]    To the extent the Court or any parties have questions about the confidentiality of these materials, the Chief Executive Officers of Luminant and TXU Energy will be at the hearing.

7. Specifically, the Debtors seek to redact the following, limited information in the motion itself:

- Threshold, baseline, and superior metrics and actuals for Luminant and TXU EBITDA, and Contribution Margin (Table II-I)

- Details about the Luminant Energy Commercial Incentive Plan funding schedule and target levels to the CIO at Luminant (¶ 15)

8. And the Debtors have redacted the following information in Mr. Filsinger's declaration:

- Threshold, baseline, and superior metrics and actuals for Luminant and TXU EBITDA, and Contribution Margin (Filsinger Decl. at 2, 4–6, 19–20, 25, 27–28, 39, 44, 46–50, 52–54)

- Information about TXU Energy's competitive positioning in the market (Filsinger Decl. at 8, 51, 54)

- Information about Luminant Energy's trading activities (Filsinger Decl. at 24, 25)

- Details about the Luminant Energy Commercial Incentive Plan funding schedule and target levels (Filsinger Decl. at 39)

**Argument**

**I.   The Trustee Applies the Wrong Standard to the Sealing Motion.**

9. While the Trustee admits, as she must, that section 107(b)(1) of the Bankruptcy Code allows the Court to seal confidential information, the Trustee misstates the law by arguing that the Debtors must demonstrate "'that the interest in secrecy outweighs the presumption in favor of access.'" (Obj. ¶ 19 (quoting *In re Continental Airlines*, 150 B.R. 334, 340 (D. Del. 1993)). That standard only applies when a court seals material *sua sponte*. *In re Continental Airlines*, 150 B.R. at 340 ("As an initial matter, in order for the bankruptcy court, *sua sponte*, to have sealed the court records, filings and papers pursuant to its discretionary authority under section 107(b)(2), the burden rests on the court to show 'that the interest in secrecy outweighs

5

the presumption' in favor of access." (citations omitted)).[4] Instead, to justify sealing, the Debtors are only required to show that information is "confidential" and "commercial" in nature. *Alterra Healthcare*, 353 B.R. at 75. This means that disclosure of such information must give "an unfair advantage to competitors by providing them information as to the commercial operations of the debtor." *Id.* (quoting *Orion Pictures*, 21 F.3d at 27-28). In that case, "the court is **required** to protect a requesting party and has no discretion to deny the application." *Orion Pictures*, 21 F.3d at 27 (emphasis in original).

10. The Debtors need not demonstrate "compelling" or "extraordinary" circumstances *in addition* to showing that the information they seek to protect is confidential commercial information, as the Trustee suggests. (*See* Obj. ¶ 19 (citing *Continental Airlines*, 150 B.R. at 340)). Rather, section 107(b)(1) was enacted to statutorily codify what Congress deemed to be a compelling need—protecting confidential commercial information from public disclosure. *In re Orion*, 21 F.3d at 27 ("Congress, itself, has recognized that under compelling or extraordinary circumstances, an exception to the general policy of public access is necessary. . . . Section 107(b) . . . responds to this need." (citations and internal quotations omitted)). To satisfy section 107(b)(1), the Debtors need only show that the information is confidential and commercial. *Id.*

11. Similarly, the Court should decline the Trustee's invitation to borrow the "good cause" standard from civil cases to determine whether the redacted material can be sealed. (*See* Obj. ¶ 20 (citing *In re Publicker Indus., Inc.*, 733 F.2d 1059 (3d Cir. 1984); *In re Cendant Corp.*, 260 F.3d 183, 194 (3d Cir. 2001).) Courts have repeatedly made clear that debtors need not show good cause to satisfy section 107(b). *See Orion Pictures*, 21 F.3d at 28 (rejecting the

---

[4] Moreover, neither of the two additional cases the U.S. Trustee cites provides that the Debtors must show that an interest in secrecy outweighs the presumption in favor of access. (Obj. ¶ 19 (citing *In re Food Mgmt. Grp., LLC*, 359 B.R. 543 (Bankr. S.D.N.Y. 2007); *In re Fibermark, Inc.*, 330 B.R. 480 (Bankr. D. Vt. 2005)). In fact, those cases do not even reference secrecy.

argument that good cause under the Federal Rules of Civil Procedure is appropriate when interpreting section 107(b)); *see also In re Anthracite Capital, Inc.*, 492 B.R. 162, 177-178 (Bankr. S.D.N.Y. 2013) ("'Good cause' is not a statutory requirement for granting the requested relief under § 107(b)") (citation omitted)).  In other words, if the material that the Debtors seek to put under seal is "confidential. . . commercial information," it should be sealed.

**II.    The Debtors' Request to Seal Competitive and Confidential Commercial Information Satisfies Section 107(b)(1).**

12.    The Debtors meet that standard here.  The material that the Debtors seek to protect includes highly confidential information that enumerates the Debtors' business strategy as well as private details of employee compensation.  The Debtors seek to redact only the following sensitive, commercial information:

- The targets and actuals for Luminant EBITDA, TXU Energy's EBITDA, and TXU Energy's Contribution Margin.  TXU Energy's margin and EBITDA information is extremely sensitive, and the disclosure of both would allow other retail energy providers to decipher the company's business strategy in a highly competitive market.  This would lead to competitive harm to TXU Energy.  If Luminant's EBITDA is disclosed, these same competitors will be able to back into TXU Energy's EBITDA numbers, thus undermining the redaction of the TXU metrics;

- Information about TXU Energy's competitive positioning in the market—which might be used against TXU if disclosed to other retail energy providers;

- Information about Luminant Energy's trading activities, which is confidential information about a highly fluid and competitive market; and

- Details about the Luminant Energy Commercial Incentive Plan funding schedule and target levels—which, if disclosed, would reveal a portion of the actual compensation of one individual (whose compensation information is not disclosed in S.E.C. filings) and may lead to competitive harm, as other trading floors compete for top talent and might use target levels to recruit Luminant employees.[5]

---

[5]   The Debtors have made revisions to the Insider Compensation Programs Motion that mirror the revised Filsinger Declaration.  The Trustee's objections are moot as to the Friske Declaration.  With this Reply Motion, the Debtors have produced an unredacted copy of the Friske Declaration at **Exhibit C**.  In addition, given the nature of the Debtors' revisions to the redactions in both the Insider Compensation Programs Motion and the

13. This information falls squarely within the Bankruptcy Code's protection of confidential and commercial information and should be kept under seal. *See Anthracite Capital*, 492 B.R. at 178 (citing *In re Barney's Inc.*, 201 B.R. 703, 709 (Bankr. S.D.N.Y. 1996)) (noting that pricing formulations and short and long-term marketing strategies are the types of information appropriate for sealing). As in *In re Barney's Inc.*, the material that the Debtors seek to keep under seal includes strategic information related to its financial, customer, and incentive plans, the disclosure of which "could reasonably be expected to cause [the Debtors] commercial injury." *In re Global Crossing, Ltd.*, 295 B.R. 720, 725 (Bankr. S.D.N.Y. 2003).

14. For example, the Debtors' contribution margin, if disclosed, would allow competitors to ascertain the Debtors' business strategy. This information, in turn, could be used to compete against the Debtors, resulting in a dilution of market share for the Debtors and ultimately a reduction in value of the Debtors' estate. Similarly, if potential competitors are to gain knowledge of the Debtors' sensitive financial information that is not otherwise available, such as EBITDA metrics, and hedging strategy, it might attract them to become new market participants—impairing the value of the Debtors' estate. Because disclosure of these figures could cause commercial injury to the Debtors, redaction is both necessary and appropriate.[6]

15. In addition, the Debtors seek to protect details about individual compensation for the Chief Commercial Officer ("CCO") of Luminant—along with the aggregate numbers in

---

supporting Filsinger Declaration, the Debtors believe that most, if not all, of Trustee's objections are moot as to the Insider Compensation Programs Motion and the Filsinger Declaration.

[6] The Trustee complains that the redacted material is inconsistent with the Debtors' designation of the deposition transcript of Chairman Donald L. Evans. Not so. That transcript contains one instance of material designated as highly confidential. *See* Evans Dep. Tr. at 84:14-17, attached as Ex. A to *Declaration of Andrea B. Schwartz in Support of Objection of the United States Trustee to Debtors' Motion (A) to Prepay Prepetition Bonuses to Insiders and (B) to Continue Insider Bonus Plans* [D.I. 2310]. The designation made on the record relates to information about the Debtors' contribution margin. This information is also redacted accordingly in the Filsinger Declaration, therefore there is no longer an inconsistency as the Trustee suggests.

certain tables that, if disclosed, would allow competitors to back-in to the CCO's individual compensation.[7] Competitors might use this information to recruit this employee—and potentially his reports—away from the Debtors with more attractive financial incentives. Depriving the Debtors of such top talent—especially while in the midst of financial distress—would impair the Debtors' ability to maximize estate value, which Courts have repeatedly found sufficient to merit sealing. *See* Hr'g Tr. at 16:15-18:10; 19:11, *In re Vertis Holdings, Inc.*, Case No. 12-12821 (CSS) (Bankr. D. Del. Nov. 27, 2012) (D.I. 379) (granting order to seal job titles, salaries, and potential payouts if plan metrics are achieved); Hr'g Tr. at 22:21-23:5, *In re Furniture Brands Int'l Inc.*, Case No. 13-12329 (CSS) (Bankr. D. Del. Oct. 11, 2013) (D.I. 549) (granting order to seal participants and their compensation); Hr'g Tr. at 9:15-19; 13:23-25, *In re Green Field Energy Services Inc.*, Case No. 13-12783 (KG) (Bankr. D. Del. Jan. 13, 2014) (D.I. 423) (granting motion to seal, in part, redaction of individual bonus incentives).

16.    Moreover, the disclosure of this personal compensation information might lead to internal issues at the Debtors and affect employee morale. *See* Hr'g Tr. at 46:13-23, *In re Brookstone Holdings Corp.*, Case No. 14-10752 (BLS) (May 12, 2014) (D.I. 384) (granting motion to seal schedules identifying names, positions of employees, and individual bonuses and noting that publication would also pose internal employee compensation concerns). As a result, this information should be sealed.

17.    This Court repeatedly sealed confidential commercial information that, like the materials here, would provide advantage to competitors. *See, e.g., In re Green Field Energy Servs., Inc.*, Case No. 13-12783 (KG) (Bankr. D. Del. Jan. 13, 2014); *In re Brookstone Holdings Corp.*, Case No. 14-10752 (BLS) (Bankr. D. Del. May 12, 2014); *In re Vertis Holdings, Inc.*,

---

[7]    This individual's compensation is ***not*** disclosed as part of S.E.C. filings.

Case No. 12-12821 (CSS) (Nov. 12, 2012); *In re Solar Trust of America, LLC*, Case No. 12-11136 (KG) (Bankr. D. Del. May 11, 2012); *In re Contract Research Solutions, Inc.*, Case No. 12-11004 (KJC) (Bankr. D. Del. April 13, 2012); *In re Capmark Fin. Grp. Inc.*, Case No. 09-13648 (CSS) (Bankr. D. Del. May 10, 2010); *In re Capmark Fin. Grp. Inc.*, Case No. 09-13648 (CSS) (Bankr. D. Del. Mar. 4, 2010); *In re Accuride Corp.*, Case No. 09-13449 (BLS) (Bankr. D. Del. Nov. 24, 2009); *In re Delta Fin. Corp.*, Case No. 07-11880 (CSS) (Bankr. D. Del. May 2, 2008). And there is no reason to depart from that line of cases here.

18. The Trustee responds by misleadingly suggesting that the Debtors seek to protect the "aggregate amount the Debtors seek to pay under the Luminant CIP to all executives." (Obj. at 5.) While that is true, only one such individual is covered by this motion, and so the disclosure of the aggregate information would necessarily reveal his particular compensation. Similarly, the Debtors redacted the "aggregate amounts the Debtors seek to pay under all Insider Bonus Programs" (Obj. at 5) because, without doing so, the amount paid to that same individual under the Luminant CIP would be readily calculable. Indeed, the mere fact that some employees might have non-compete agreements gives the Debtors little comfort (Obj. at 13); the Debtors should not be put through the difficulty of fighting to keep their employees from being hired away.[8] As in *Vertis*, this Court should approve sealing because competitors may engage in "poaching of debtors . . . at a very critical junction in the[] case." Hr'g Tr. at 17:7-9, *In re Vertis*, Case No. 12-12821 (CSS) (Bankr. D. Del. Nov. 27, 2012) (D.I. 379). In fact, this Court sealed specific compensation information in *Delta Financial*, where it was demonstrated that publicly revealing it would offer the "debtors' value of its employees." Hr'g Tr. at 8:3-7, *In re Delta Fin.*

---

[8] Further, the Debtors would have to seek the Court's permission to assume the employment agreements in order to enforce their non-compete provisions.

10

*Corp.*, Case No. 07-11880 (CSS) (Bankr. D. Del. May 2, 2008) (D.I. 396).  The same is true here.

### III.    The Court Can Hear the Debtors' Insider Compensation Programs Motion while Still Protecting this Sensitive Information.

19.    Finally, the Trustee suggests that the Debtors cannot keep confidential information hidden because its disclosure "is necessary for the Debtors to meet their burden of proof." (Obj. at 3.)  Not so.  The Court, of course, can consider material that is under seal as part of the record, and, at trial, the Debtors intend to reference this information at a high level without getting into specifics so as to avoid revealing any confidences.  This is common practice.  For example, in *Vertis*, this Court allowed the debtors to keep potential payout information under seal, and still rendered an opinion on the underlying compensation motion after hearing testimony and argument from the parties.  *See* Hr'g Tr., *In re Vertis*, Case No. 12-12821 (CSS) (Bankr. D. Del. Nov. 27, 2012) (D.I. 379).  In *Capmark*, this Court allowed the debtors' incentive plan to be filed under seal before proceeding with hearing on the post-petition performance incentive plan while the debtor and the Trustee agreed on revised redactions.  *See* Hr'g Tr. at 22:18-23:16, *In re Capmark Fin. Grp. Inc.*, Case No. 09-13648 (Bankr. D. Del. Mar. 4, 2010) (D.I. 962).  This also did not impact evaluation of the relief sought.  And in *Delta Financial*, the Court allowed the Debtors to file incentive payment information under seal before moving forward with proffered testimony.  *See* Hr'g Tr. at 9:21-24, *In re Delta Fin. Corp.*, Case No. 07-11880 (Bankr. D. Del. May 2, 2008) (D.I. 396).

20.    In light of the Debtors' substantial disclosure associated with the Insider Compensation Programs Motion and supporting declarations, the Court will not have to seal the entire courtroom to hear arguments and testimony associated with this relief.  Rather, only a small subset of confirmation information will remain protected from disclosure, and the parties

11

can avoid disclosing that information on the public record by exercising discretion. Given the confidential and sensitive nature of this information, that remedy is appropriate.

[*Remainder of page intentionally left blank.*]

WHEREFORE, the Debtors respectfully request that the Court enter the revised order attached as **Exhibit D** granting the relief requested in this Reply Motion and granting such other and further relief as is appropriate under the circumstances.

Dated: October 7, 2014
      Wilmington, Delaware

/s/ Jason M. Madron
**RICHARDS, LAYTON & FINGER, P.A.**
Mark D. Collins (No. 2981)
Daniel J. DeFranceschi (No. 2732)
Jason M. Madron (No. 4431)
920 North King Street
Wilmington, Delaware 19801
Telephone:   (302) 651-7700
Facsimile:   (302) 651-7701
Email:   collins@rlf.com
       defranceschi@rlf.com
       madron@rlf.com

-and-

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Edward O. Sassower, P.C. (admitted *pro hac vice*)
Stephen E. Hessler (admitted *pro hac vice*)
Brian E. Schartz (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022-4611
Telephone:   (212) 446-4800
Facsimile:   (212) 446-4900
Email:   edward.sassower@kirkland.com
       stephen.hessler@kirkland.com
       brian.schartz@kirkland.com

-and-

James H.M. Sprayregen, P.C. (admitted *pro hac vice*)
Chad J. Husnick (admitted *pro hac vice*)
Steven N. Serajeddini (admitted *pro hac vice*)
300 North LaSalle
Chicago, Illinois 60654
Telephone:   (312) 862-2000
Facsimile:   (312) 862-2200
Email:   james.sprayregen@kirkland.com
       chad.husnick@kirkland.com
       steven.serajeddini@kirkland.com

Co-Counsel to the Debtors and Debtors in Possession