**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| In re: | ) ) | Chapter 11 |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) ) ) | Case No. 14-10979 (CSS) |
| Debtors. | ) ) ) ) ) ) | (Jointly Administered)<br><br>**Hearing Date: October 28, 2014 at 12:00 p.m. (ET)**<br>**Objection Deadline: October 21, 2014 at 4:00 p.m. (ET)** |

**APPLICATION OF ENERGY FUTURE HOLDINGS**
**CORP., *ET AL.*, FOR AN ORDER AUTHORIZING THE**
**DEBTORS TO RETAIN AND EMPLOY BALCH & BINGHAM**
**LLP AS SPECIAL COUNSEL FOR CERTAIN ENVIRONMENTAL**
**MATTERS, EFFECTIVE *NUNC PRO TUNC* TO OCTOBER 1, 2014**

The above captioned debtors and debtors in possession (collectively, the "Debtors") file this application (this "Application") for the entry of an order (the "Order"), substantially in the form attached hereto as **Exhibit A**, authorizing the Debtors to employ and retain Balch & Bingham LLP ("Balch") as special counsel for the Debtors effective *nunc pro tunc* to October 1, 2014. The limited purpose of this Application is to permit the Debtors to retain and employ Balch to continue to represent the Debtors as their special counsel in connection with certain environmental matters. In support of this Application, the Debtors submit the *Declaration of P. Stephen Gidiere III, Partner* at Balch & Bingham LLP (the "Gidiere Declaration"), attached hereto as **Exhibit B** and the *Declaration of Stacey H. Doré in Support of the Application of Energy Future Holdings Corp., et al., for an Order Authorizing the Debtors to Retain and*

---

[1] The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, for which joint administration has been granted, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

*Employ Balch & Bingham LLP as Special Counsel for Certain Environmental Matters, Effective* Nunc Pro Tunc *to October 1, 2014*, attached hereto as **Exhibit C** (the "Doré Declaration"). In further support of this Application, the Debtors respectfully state as follows.

**Jurisdiction and Venue**

1.      The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Debtors consent pursuant to rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Bankruptcy Rules") to the entry of a final order by the Court in connection with this Application to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The statutory bases for the relief requested in this Application are sections 327(e), 328, and 330 of title 11 of the United States Code (the "Bankruptcy Code"), rules 2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Local Bankruptcy Rules 2014-1 and 2016-2.

**Relief Requested**

4.      By this Application, the Debtors seek entry of the Order authorizing the employment and retention of Balch as special counsel to the Debtors in accordance with the terms and conditions set forth in the engagement letter, dated May 21, 2010, between Luminant Holding Company LLC and Balch, as further supplemented by the advance deposit arrangement

2

letter dated April 8, 2013, between Energy Future Holdings Corp. ("EFH Corp.") and Balch (the "Retainer Letter"), and the engagement letter dated January 8, 2014, between EFH Corp., Luminant Generation Company LLC, and Balch, copies of which are attached as **Exhibit 1** to **Exhibit A** and incorporated herein by reference (collectively, the "Engagement Letters").

### Background

5. On April 29, 2014 (the "Petition Date"), each of the Debtors filed a voluntary petition with the Court under chapter 11 of the Bankruptcy Code. The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. The Court has entered a final order for joint administration of these chapter 11 cases. The Court has not appointed a trustee. The Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") formed an official committee of unsecured creditors in these chapter 11 cases on May 13, 2014 [D.I. 420]. Further information regarding the Debtors' business operations and capital structure is set forth in the *Declaration of Paul Keglevic, Executive Vice President, Chief Financial Officer, and Co-Chief Restructuring Officer of Energy Future Holdings Corp.*, et al., *in Support of First Day Motions* [D.I. 98].

6. Balch is currently approved by the Court as a Tier 1 Ordinary Course Professional ("Tier 1 OCP") pursuant to the *Order Authorizing the Retention and Compensation of Certain Professionals Utilized in the Ordinary Course of Business* [D.I. 765] (the "OCP Order") and has been performing services for the Debtor in that capacity since the Petition Date. Pursuant to the OCP Order, work performed by Balch and all other Tier 1 OCPs is capped at $150,000 per month, calculated on a three-month rolling basis (the "Tier 1 OCP Cap"). The work required on the environmental matters for which Balch has been retained has substantially increased, requiring Balch to incur fees that have exceeded the Tier 1 OCP cap (the "Excess Fees").

Pursuant to the OCP Order, Balch has filed a Notice of Excess Fees in the amount of $234,652.80 contemporaneously with this Application. Balch and the Debtors collectively determined that the work required of Balch under the terms of the Engagement Letters will cause Balch to continually incur Excess Fees, prompting the Debtors to file this Application.

### Balch's Qualifications

7. The Debtors believe that Balch is particularly well-suited to serve as the Debtors' special counsel for certain environmental matters in these chapter 11 cases. Balch is a nationally recognized law firm with more than 250 attorneys in 7 offices. Balch has represented and is currently representing the Debtors in multiple pending environmental litigation matters. In addition to these litigation matters, the firm provides the Debtors with ongoing environmental compliance counseling, permitting, and other guidance, particularly regarding the Clean Air Act. Balch has represented the Debtors for such matters for over four years.

8. Balch has provided environmental services to other clients in numerous large cases, including most recently: *Environmental Defense v. Duke Energy Corp.*, 549 U.S. 561 (2007) (counsel of record for electric utility industry as *amici curiae* in review of Clean Air Act enforcement action); *Leavitt v. Tennessee Valley Authority*, 541 U.S. 1030 (2004) (successfully opposed a petition for writ of certiorari filed by the United States Department of Justice in a Clean Air Act enforcement case); *State of West Virginia v. U.S. Environmental Protection Agency*, 362 F.3d 861 (D.C. Cir. 2004) (Represented major utility in challenge to EPA rulemaking on NOx emissions); *Conservation Law Foundation v. Public Service Company of New Hampshire*, No. 11-cv-353-JL, 2012 WL 4477669 (D.N.H Sept. 27, 2012) (claims under Clean Air Act for penalties and injunctive relief at coal-fired power plant); *United States v. Alabama Power Co.*, 773 F. Supp. 2d 1250 (N.D. Ala. 2011), *aff'd in part and rev'd in part*, -- F.3d --, 2013 WL 5273804 (11th Cir. Sept. 19, 2013) (government civil enforcement action

4

under the Clean Air Act seeking penalties and installation of emissions control equipment). Further, Balch has represented many large electric utility companies in a wide range of environmental permitting, compliance, and administrative matters, similar to matters in which it represents the Debtors.

9. In addition, since May 2010, Balch has provided many of the Services (as defined below) to the Debtors. In providing such prepetition professional services to the Debtors, Balch has become familiar with the Debtors and their business, including the Debtors' financial affairs, debt structure, operations, and related matters. Having worked with the Debtors' management and their other advisors, Balch has developed relevant experience and expertise regarding the Debtors that will assist it in providing effective and efficient services as described in this Application and the Engagement Letters. Accordingly, Balch is both well-qualified and uniquely able to represent the Debtors in an efficient and timely manner.

**Services to be Provided**

10. Subject to further order of the Court and consistent with the Engagement Letters, Balch may continue to represent the Debtors in connection with the services provided prepetition and postpetition as a Tier 1 OCP. Balch's representation of the Debtors will include, but shall not be limited to, the following services (collectively, the "Services"):

(a) litigating against entities, including government and non-governmental entities, who seek civil penalties or injunctive relief related to the Debtors' coal-fueled and other generation units;

(b) providing environmental and regulatory compliance counseling, permitting, and other guidance;

(c) representing the Debtors in administrative proceedings on environmental matters;

(d) seeking judicial review and clarification over certain environmental rules and regulations; and

5

(e) drafting documents related to all the Services above.

**Professional Compensation**

11.  As set forth in the Gidiere Declaration, upon execution of the Retainer Letter, the Debtors paid $500,000 to Balch as a classic retainer (the "Retainer") before the Petition Date. Pursuant to the Retainer Letter, Balch allocated the Retainer amount toward a portion of Balch's fees and disbursements before the Petition Date. As of the Petition Date, Balch had been paid for all professional services and expenses rendered to the Debtors prior to the Petition Date. As a Tier 1 OCP, Balch sought fees and expenses postpetition through September 30, 2014, in accordance with the procedures set forth in the OCP Order. Pursuant to the Retainer Letter, Balch intends to apply the Excess Fees toward the Retainer.

12.  Balch intends to apply for allowance of compensation for professional services and reimbursement of expenses incurred in connection with these chapter 11 cases, subject to the Court's approval and in compliance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, guidelines established by the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee"), and any other applicable procedures and orders of the Court, on an hourly basis.

13.  For services rendered by Balch in these cases, the Debtors, subject to the provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, guidelines established by the U.S. Trustee, the *Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Professionals* [D.I. 2066] (the "Interim Compensation Order"), the *Stipulation and Order Appointing Fee Committee* [D.I. 1896] (the "Fee Committee Order"), and any other orders entered by the Court, propose to pay Balch its customary hourly rates that are in effect, from time to time, as set forth in the Gidiere Declaration. The Debtors respectfully submit that such rates are reasonable and comparable to

the rates other firms charge for comparable services.  Additionally, subject to the provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, guidelines established by the U.S. Trustee, the Interim Compensation Order, the Fee Committee Order, and any other orders entered by the Court, the Debtors propose to reimburse Balch for expenses incurred in connection with their representation of the Debtors, including, among other things, word processing, telephone and telecopier usage, photocopying charges, travel expenses, expenses for "working meals," as well as non-ordinary overhead expenses such as secretarial overtime.  The Debtors understand that Balch will charge the Debtors for these expenses in a manner consistent with charges made prior to the Petition Date.

## Basis for Relief

14.     Section 327(e) of the Bankruptcy Code provides that a debtor subject to court approval:

> [M]ay employ, for a specified special purpose, other than to represent the trustee in conducting the case, an attorney that has represented the debtor, if in the best interest of the estate, and if such attorney does not represent or hold any interest adverse to the debtor or to the estate with respect to the matter on which such attorney is to be employed.

11 U.S.C § 327(e).

15.     Moreover, section 1107(b) of the Bankruptcy Code provides that a person is not disqualified for employment under section 327 of the Bankruptcy Code by a debtor-in-possession solely because of such person's employment by or representation of the debtor before the commencement of the case.  11 U.S.C. § 1107(b).

16.     Retention of an attorney under section 327(e) does not require the same searching inquiry required for a debtor to retain general bankruptcy counsel under section 327(a).  *See Meespierson Inc. v. Strategic Telecom Inc.*, 202 B.R. 845, 847 (D. Del. 1996) ("[S]pecial counsel

7

employed under [section] 327(e) need only avoid possessing a conflict of interest concerning the matter at hand.").

17.     Nevertheless, the phrase "does not represent or hold any interest adverse to the debtor or to the estate" requires a factual determination of "all relevant facts surrounding the debtors' case, including, but not limited to, the nature of the debtor's business, all foreseeable employment of special counsel, [and] the expense of replacement counsel. . ." *In re Woodworkers Warehouse, Inc.*, 323 B.R. 403, 406 (D. Del. 2005).  In general, however, subject to the requirements of sections 327 and 1107, a debtor-in-possession is entitled to the counsel of its choosing.  *In re Vouzianas*, 259 F.3d 103, 108 (2d Cir. 2001) (observing that "[o]nly in the rarest cases should the trustee be deprived of the privilege of selecting his own counsel").

**I.     Retaining Balch as Special Counsel is in the Best Interests of the Debtors' Estates.**

18.     The Debtors believe that, in light of Balch's experience in environmental matters and the electric utility industry and its institutional knowledge of the Debtors' business and particular legal matters in which it represents the Debtors, it is in the best interests of the Debtors' estates to retain Balch as special counsel.  Indeed, if the Debtors are required to retain different counsel to replace Balch in current matters, the Debtors will need to find, educate and integrate new counsel in these matters, and expend significant resources in doing so, rather than devoting their time and focus to their reorganization efforts.  In this respect, retaining Balch will avoid unnecessary administrative expenses and delays, result in cost efficiencies, and provide valuable assistance to the Debtors' efforts to reorganize.

**II.    Balch Neither Holds nor Represents any Interest Adverse to the Debtors**.

19.     Except as set forth below and in the Gidiere Declaration, Balch, to the best of the Debtors' knowledge, information, and belief, does not represent, and does not hold, any interest adverse to the Debtors or their estates, their creditors, or equity security holders, their respective

attorneys and accountants, the U.S. Trustee, any person employed by the Office of the U.S. Trustee, or any other party in interest in these chapter 11 cases (a) in the matters for which Balch is to be retained or (b) in matters related to the services to be performed by Balch for the Debtors.

20. Moreover, the lawyers and staff expected to provide services to the Debtors on behalf of Balch are not related to the U.S. Trustee assigned to these cases, any person employed in the Office of the U.S. Trustee, or the Bankruptcy Judge presiding over these cases.

21. As described in the Gidiere Declaration, the Debtors understand that Balch currently represents or has represented certain creditors and other entities and parties in interest in these chapter 11 cases in other, unrelated matters, as set forth in **Schedule 2**, attached hereto and incorporated by reference.[2] Balch submitted and checked against its database the names of entities that were listed on a schedule (attached hereto as **Schedule 1** and incorporated by reference) provided to Balch by the Debtors. This inquiry revealed that certain creditors and/or potential parties in interest (a) are current or former clients or affiliates of clients of Balch or (b) are adverse or were adverse to clients of Balch in connection with matters as to which Balch represented a client. Balch has agreed with EFH Corp. not to represent any such creditors or parties in interest in the chapter 11 proceeding in any matters adverse to the Debtors.

## Notice

22. The Debtors shall provide notice of this Motion on the date hereof via first class mail to: (a) the U.S. Trustee; (b) counsel to the Creditors' Committee; (c) Wilmington Trust,

---

[2] As referenced in **Schedule 2**, the term "current" client means a client to whom time was posted in the 12 months preceding the Petition Date. As referenced in **Schedule 2**, the term "former" client means a client to whom time was posted between 12 and 36 months preceding the Debtor's Petition Date, but for which the client representation has been closed. As referenced in **Schedule 2**, the term "closed" client means a client to whom time was posted in the 36 months preceding the Debtor's Petition Date, but for which the client representation has been closed.

N.A., in its capacity as administrative agent under the TCEH first lien credit agreement and collateral agent under the TCEH intercreditor agreements and counsel thereto; (d) Bank of New York Mellon Trust Company, N.A., in its capacity as indenture trustee under: (i) the TCEH unsecured pollution control revenue bonds; and (ii) the EFCH 2037 Notes due 2037, and counsel thereto; (e) American Stock Transfer & Trust Company, LLC, in its capacity as indenture trustee under: (i) the 9.75% EFH senior unsecured notes due 2019; (ii) the 10.0% EFH senior unsecured notes due 2020; (iii) the 10.875% EFH LBO senior unsecured notes due 2017; (iv) the 11.25%/12.0% EFH LBO toggle notes due 2017; (v) the 5.55% EFH legacy notes (series P) due 2014; (vi) the 6.50% EFH legacy notes (series Q) due 2024; and (vii) the 6.55% EFH legacy notes (series R) due 2034, and counsel thereto; (f) Computershare Trust Company, N.A. and Computershare Trust Company of Canada, in their capacities as indenture trustee under: (i) the 11.0% EFIH senior secured second lien notes due 2021; and (ii) the 11.75% EFIH senior secured second lien notes due 2022, and counsel thereto; (g) UMB Bank, N.A. in its capacity as indenture trustee under: (i) the 9.75% EFIH senior unsecured notes due 2019; and (ii) the 11.25%/12.25% EFIH senior toggle notes due 2018, and counsel thereto; (h) Delaware Trust Company of Delaware in its capacity as indenture trustee under: (i) the 6.875% EFIH senior secured notes due 2017; (ii) the 10.0% EFIH senior secured notes due 2020; and (iii), the 11.50% TCEH senior secured notes due 2020, and counsel thereto; (i) Law Debenture Trust Company of New York in its capacity as indenture trustee under: (i) the 10.25% TCEH senior unsecured notes due 2015; and (ii) the 10.50%/11.25% TCEH senior toggle notes due 2016, and counsel thereto; (j) Wilmington Savings Fund Society, FSB in its capacity as indenture trustee under the 15.0% TCEH senior secured second lien notes due 2021, and counsel thereto; (k) counsel to certain holders of claims against the Debtors regarding each of the foregoing described in clauses

(c) through (j); (l) the agent for the TCEH debtor-in-possession financing facility and counsel thereto; (m) the agent for the EFIH debtor-in-possession financing facility and counsel thereto; (n) counsel to certain holders of equity in Texas Energy Future Holdings Limited Partnership; (o) counsel to the Ad Hoc Committee of TCEH Unsecured Noteholders; (p) counsel to the Ad Hoc Committee of TCEH Second Lien Noteholders; (q) Oncor Electric Delivery Holdings Company LLC and counsel thereto; (r) Oncor Electric Delivery Company LLC and counsel thereto; (s) the Securities and Exchange Commission; (t) the Internal Revenue Service; (u) the Office of the United States Attorney for the District of Delaware; (v) the Office of the Texas Attorney General on behalf of the Public Utility Commission of Texas; (w) counsel to the Electric Reliability Council of Texas; (x) counsel to the Fee Committee; (y) Balch; and (z) those parties that have requested notice pursuant to Bankruptcy Rule 2002.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

## No Prior Request

23.    No prior request for the relief sought in this Application has been made to this or any other court.

[*Remainder of page intentionally left blank.*]

WHEREFORE, the Debtors respectfully request that the Court enter the Order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested herein and granting such other and further relief as is appropriate under the circumstances.

Wilmington, Delaware
Dated: October 7, 2014

*[signature]*
Stacey H. Doré
Executive Vice President, General Counsel, and Co-Chief Restructuring Officer of EFH Corp., EFIH, and TCEH LLC