1   UNITED STATES BANKRUPTCY COURT

2   DISTRICT OF DELAWARE

3

4

5   In re:                          :

                                    :    Chapter 11

6   ENERGY FUTURE HOLDINGS          :

    CORP.,  et al.,                 :    Case No. 14-10979(CSS)

7                                   :

            Debtors.                :    (Jointly Administered)

8   _____:

9

10

                                United States Bankruptcy Court

11

                                824 North Market Street

12

                                Wilmington, Delaware

13

14

                                October 6, 2014

15

                                3:58 PM - 4:26 PM

16

    B E F O R E :

17

    HON CHRISTOPHER S. SONTCHI

18

    U.S. BANKRUPTCY JUDGE

19

20

21

22

23

24

    ECR OPERATOR:  LESLIE MURIN

25

1    HEARING re Telephonic Hearing

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25    Transcribed by:  Dawn South

Page 3

1    A P P E A R A N C E S :

2    KIRKLAND & ELLIS

3         Attorneys for the Debtors

4

5    BY:  BRIDGET K. O'CONNOR, ESQ. (TELEPHONIC)

6         STEVE HEPLER, ESQ. (TELEPHONIC)

7

8    BROWN RUDNICK

9         Attorney for Wilmington Savings Fund Society

10

11   BY:  EDWARD WEISFELNER, ESQ. (TELEPHONIC)

12

13   ROPES & GRAY LLP

14        Attorney for EFIH First Lien Trustee

15

16   BY:  ANDREW DEVORE, ESQ. (TELEPHONIC)

17

18   WHITE & CASE LLP

19        Attorney for Ad Hoc Group of TCEH Unsecured

20        Noteholders

21

22   BY:  J. CHRISTOPHER SHORE, ESQ. (TELEPHONIC)

23

24

25

1

2    MORRISON & FOERSTER

3         Attorneys for the Committee

4

5    BY:  CHARLES L. KERR, ESQ. (TELEPHONIC)

6

7    AKIN GUMP STRAUSS HAUER & FELD

8         Attorney for EFIH PIC Committee

9

10   BY:  ABID QURESHI, ESQ. (TELEPHONIC)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                  P R O C E E D I N G S
 2           THE COURT:  Good afternoon, everyone, this is
 3    Judge Sontchi.
 4           I understand we have -- okay, I understand we have
 5    a situation at a deposition, and that's all I know, so why
 6    don't you go from there.
 7           MR. SHORE:  Your Honor, why don't we do a role
 8    real quickly.  You've got Chris Shore from White & case.
 9           ME. WEISFELNER:  Ed Weisfelner from Brown Rudnick.
10           MR. KERR:  We have Charles Kerr of Morrison on
11    behalf of the official committee.
12           MR. DEVORE:  You have Andrew Devore of Ropes &
13    Gray on behalf of the EFIH first lien trustee.
14           MS. O'CONNOR:  (Indiscernible - 3:59:18).
15           THE COURT:  Didn't hear that.
16           MR. SHORE:  Probably have to step down to the mic
17    down here, guys, sorry.
18           MR. WEISFELNER:  I don't know that we need
19    everyone to make an appearance that doesn't care to make an
20    appearance.  Anybody else care to make an appearance?
21           MR. QURESHI:  Yeah, Abid Qureshi from Akin Gump on
22    behalf of the EFIH PIC committee.
23           MS. O'CONNOR:  Bridgett O'Connor, Kirkland & Ellis
24    on behalf of the debtors, and I'm here with Steve Hepler
25    also of Kirkland & Ellis.
```

1           MR. SHORE:  All right, Judge -- Judge Sontchi this

2    is Chris Shore and we appreciate your time, I understand

3    your time is limited so we'll try to be brief, but seeing

4    that discovery is moving so quickly we just had to bring

5    this to your attention, can't let it slip for even a day.

6           We took the deposition of Mr. Keglevic last week

7    and on what we see is a big issue in this case whether to

8    even start the sale process now.  He pointed to Evercore and

9    their advice with respect to the sale.

10          Today we have Mr. Hiltz (ph) from Evercore in

11   deposition, and he was the one who submitted the declaration

12   that said that marketing conditions are currently favorable

13   for potential sellers, and there's a risk that the market

14   conditions may shift.

15          During the course of today's deposition we learned

16   that Mr. Hiltz has a -- at least a folder, but also Evercore

17   people have analyses of market conditions relating to Encore

18   stock and utility stocks in general.  Those documents were

19   all part of document requests that we had submitted, that

20   for example, called for all documents concerning any

21   assessment, evaluation, consideration, or analysis of the

22   potential and/or actual volatility of Encore stock or the

23   stock of regulated utility companies, and many other

24   requests since we can only write the same request in

25   different ways many times.

1            The debtors have committed to review the documents

2    and get back to us, but with three qualifications.

3            One, they will not unequivocally allow us to come

4    back for a deposition to ask about the documents in the

5    folder.

6            Two, there's an assertion that if documents in

7    that folder relate to particular bids they are going to be

8    withheld even if they form the basis of the opinions which

9    are being expressed by Mr. Hiltz regarding market conditions

10   and the reason to sell now.

11           And three, that some documents were created after

12   the motion was submitted and his declaration was submitted

13   and after the document requests were done, but nonetheless

14   based upon his answers appear to be informing his opinions

15   that he's expressing in the deposition.

16           So what we need I think is some guidance from Your

17   Honor about what's got to be produced out of that, and you

18   know, what is the follow on from that.

19           Again, we're in the process of working through

20   this, we just can't let it slip a day.  Our objection is due

21   Friday, we've got four other -- three other depositions that

22   have to take place this week, and we're just kind of running

23   out of time.

24           ME. WEISFELNER:  And, Your Honor, if I could just

25   amplify.  This is Ed Weisfelner.

1          We only found out about the existence of these

2     documents during the course of Mr. Hiltz' deposition where

3     he in effect told us that he had a number of analyses,

4     including analysis of what sort of step up in basis would be

5     realized by the EFH estate in a taxful transaction, analysis

6     that demonstrated to him that the T side creditors, with the

7     exception of the first liens, are out of the money, leveled

8     with M&A activity from various market sources, information

9     regarding interest rates from a number of sources, including

10    Morgan Stanley and Deutsche Bank, that he relied on, as well

11    as analysis of trading prices of various utilities, as well

12    as a post-725 log indicating who may have contacted Evercore

13    or the other way around that doesn't have any entries beyond

14    the 25th, notwithstanding the witness's testimony that those

15    entries would in the ordinary course be made.

16          We also have a problem that the witness believes,

17    and has so testified, that his obligation to produce

18    responsive documents with only as of the day he received the

19    document production requests, and any documents that were

20    created for him or that he looked at, which he acknowledged

21    he has in a file, didn't need to be produced because he

22    didn't look at them or didn't ask for them until after he

23    received the document production requests.

24          And, Your Honor, we're trying to get through the

25    deposition and we think we have an obligation to work with

1    debtors' counsel once these documents are ultimately

2    produced, but we're not getting any definitive response from

3    the debtors as to when the documents will be produced, nor

4    are we getting a commitment from the debtor that once the

5    documents are reviewed and responsive documents are produced

6    that they'll make the witness available for further

7    deposition once we've all been armed with documents that

8    frankly we believe we should have gotten before the

9    deposition started.

10           MS. O'CONNOR:  Your Honor -- oh, sorry.

11           MR. DEVORE:  Your Honor, this is Andrew Devore of

12   Ropes & Gray for the EFIH first lien trustee.

13           We have an issue regarding the 30(b)(6)

14   designations that this witness has been designated to

15   testify with respect to, and I'm happy to raise that issue

16   now or if you want to first deal with the document issues.

17           THE COURT:  One thing at a time.

18           MS. O'CONNOR:  Your Honor, this is Bridgett

19   O'Connor on behalf of the debtors in response to the two

20   descriptions of the situation that you just received.

21           As a threshold issue as the two -- there are

22   essentially two documents or two issues with respect to

23   documents that are at issue here.  Since references to those

24   documents or files were made we have been in the process of

25   tracking down what those references refer to specifically

1    when it comes to Mr. Hiltz' files.  We of course are also

2    concurrently sitting in the deposition and he's testifying.

3    So that process is under way, we are doing it as quickly as

4    we can, and we had represented that to everyone here.

5           And my understanding is that the CourtCall

6    actually has arisen as a result of a miscommunication

7    between folks in the room and folks out of the room as to

8    whether that was necessary given that we are looking into

9    this issue and will provide the documents as soon as we can

10   have them in hand and figure out what they are, whether

11   they're responsive, whether they've privileged, and whether

12   they should be produced, or whether they've already been

13   produced to the extent that they're responsive and not

14   privileged.

15          Like I said, that's happening as quickly as we

16   possibly can get that done.

17          My understanding is that they've identified --

18   located the file that they -- in Mr. Hiltz' office that they

19   believed he had referenced in his response, and that it

20   appears to be a mix of clearly not responsive documents in

21   terms of board materials that preceded the bidding

22   procedures at all, they were some background materials to

23   get him up to speed, some public materials that are on the

24   docket, and then a handful of materials that I'll need to

25   get more information on to figure out what they are, whether

1    they're responsive, and whether they're privileged.

2              Nonetheless my -- our intention, my intention is

3    to do that as soon as we get out of this deposition and get

4    them those materials as quickly as we can.

5              With respect to the three caveats as they were

6    described, I don't -- I wouldn't agree necessarily with

7    those caveats as they were described.

8              The three issues with respect to our willingness

9    to agree on an open-ended basis without knowing what those

10   documents are that Mr. Hiltz' deposition would be continued

11   I don't believe that it would be appropriate for us to agree

12   to that if in fact the documents are either not responsive,

13   you know, among the categories that I just described.

14             If they are responsive and we produce them then I

15   think it would be appropriate for the parties to assess

16   whether in fact they need additional time with Mr. Hiltz,

17   whether they're cumulative of other information that they

18   receive.  Let's see what the documents are before we address

19   whether we need to all convene again for a continuation of

20   Mr. Hiltz' deposition or what is needed at that point.

21             The other factor being -- get the description of

22   that we were unwilling to produce them even to the extent

23   that they bore upon the analysis, and I don't know the exact

24   words that were used there, that's not what we represented.

25   If they're responses and not privileged we'll produce them,

1    if they're not responsive and/or privileged then I don't

2    think it would -- then we wouldn't need to produce them and

3    we would follow the same parameters as we have with respect

4    to discovery otherwise and that we discussed at length on

5    the call the other day.

6           For example, if they relate solely to the details

7    of an individual bid or the identity of a bidder then they

8    -- I believe they would be outside of what would be called

9    for production in connection with this issue.

10          Finally with respect to the date issue that was

11   mentioned -- and I would also take -- take exception to the

12   idea that Mr. Hiltz testified that it was his understanding

13   that he was not under an obligation to produce documents

14   after a certain date.

15          Mr. Hiltz referenced in the course of discussing

16   these materials that they -- certain of the materials would

17   have been generated after he had been asked for documents in

18   conjunction with the discovery requests.  He did not

19   indicate any understanding that that made it so that he was

20   not obligated to produce them, et cetera, he simply noted

21   that it was after the collection of the documents.

22          We can take -- like I said, we will look at those

23   documents and see what they relate to and whether they

24   should be produced, but we're not using any sort of a date

25   cut off as to whether or not they should be produced, and we

1   will take a look at them.

2          The second category of documents which actually

3   wasn't described fully here but that implicated some of this

4   information were some materials that Mr. Hiltz needed had

5   been prepared for him by individuals at Evercore in the

6   course of the past week in connection with his efforts to

7   prepare for the deposition.

8          We are also locating those, we will plan to

9   produce those, assuming they're appropriate for production,

10  and we'll do so as soon as possible.  So that's in progress,

11  and I think that covers the first slate of issues before we

12  get to any issues from Mr. Devore.

13          MR. SHORE:  If I may respond very briefly, Your

14  Honor.

15          THE COURT:  Go ahead.

16          MR. SHORE:  With respect to the timing issue, this

17  is the problem, right?  We'll get -- you know, we've gotten

18  a bunch of midnight productions, we got the two weekend

19  productions, we'll get another production of some documents

20  some time tonight, tomorrow, then we'll set up a call to

21  have a discussion about whether to open the depositions

22  again, and then we're going to be back in front of Your

23  Honor on Friday or Thursday to discuss when and how this

24  deposition is going to be being forward.  We just can't

25  operate on that timeline if we're supposed to be getting our

1    objection in.

2             Second with respect to the statement of privilege

3    and anything else.  It is clear from the declaration that

4    has opinion submitted to the Court by Mr. Hiltz that he is

5    being presented as an expert in bidding procedures and M&A

6    activity.  If they produced privileged materials to him to

7    review to get him up to speed such that he could opine to

8    the Court that marketing conditions are currently favorable

9    here and that market conditions could shift he's got to

10   produce that stuff.

11             THE COURT:  Anything else?

12             MS. O'CONNOR:  Well, with respect to the last

13   points.  This is Bridgett O'Connor.

14             I don't -- Mr. Hiltz' declaration is in support of

15   the motion itself as one of the financial advisors that

16   worked on the development of those procedures, he's not

17   being offered for expert testimony.  He clearly has

18   significant experience in the M&A field, but in terms of the

19   standard here he's been functioning as one of the Evercore

20   advisors, and to the extent that he's -- receives or had

21   access to privileged information that would not be within

22   the scope of discovery here.

23             THE COURT:  All right.  Well on that issue I don't

24   think I can -- I can make a ruling on the fly as to what may

25   or may not be appropriate privilege call, and I don't have a

1    declaration in front of me in any event about whether it's

2    truly opinion testimony or not and whether it's relevant to

3    this motion or not.  That sort of issue is going to have to

4    sort of percolate through as documents are or are not

5    produced, and I understand that's happening on a rolling

6    basis, which of course is frustrating and difficult to

7    predict.

8            Let me see if I can -- I can cut through it here.

9    I think I heard some statements from both sides that aren't

10   necessarily as far apart as -- as you might think, so let me

11   -- let me reiterate some things.

12           First of all, what I'm hearing is that the

13   documents are being tracked down, the documents are being

14   reviewed for privilege and responsiveness, and the non-

15   privilege responsive documents will be produced as soon as

16   possible.  Okay.  And that should happen.

17           I've also heard that documents that relate to

18   specific bids or bidders will not be produced consistent

19   with my prior ruling, my prior ruling stands.

20           Documents created after the date of request I

21   heard, I believe, that those are being gathered and they're

22   also being reviewed for responsiveness and privilege and

23   that non-responsive -- excuse me -- that responsive non-

24   privileged documents will be produced regardless of date.

25           So if that's what I heard I don't think there's

1    something for me to decide, but if there is my decision

2    would be that the document requests are in the nature of a

3    continuing requests and if there are responsive non-

4    privileged documents that were created after the date the

5    document request was actually made then those documents

6    should be produced.

7              In connection on whether or not to commit at this

8    time for a further deposition, my ruling there is it will

9    depend on the nature of the documents produced.

10             If there are responsive non-privileged documents

11   that are material to the bidding procedures issues then the

12   deposition will have to be reconvened.  I can't commit in a

13   -- you know, in a vacuum as to whether that is or is not

14   true, but if there are questions that need to be asked that

15   arise from documents that people don't have right now and

16   those documents are produced after the deposition the

17   deposition will have to be reconvened at a -- you know, at a

18   date and time that hopefully fits into the current schedule

19   that's in front of the Court and is binding the parties,

20   which is as we know abbreviated.

21             I don't know anything -- I haven't heard anything

22   as I sit here today that would require me or -- require is

23   not the proper word -- would persuade me on the record that

24   I have now that a continuance and a slow down of discovery

25   is necessary; however, I would say, that people can only do

1    so much and super human activity is not actually required in

2    trying to prepare for and take these depositions.  Everyone

3    should do the best they can.  But if documents -- if

4    material relevant, responsive non-privileged documents

5    continue to roll in, you know, tomorrow or the day after,

6    the day after that, then almost by definition there's going

7    to have to be slippage in connection with that schedule.

8              I'm not making that ruling today, and I am

9    encouraging the debtors, and it sounds like their doing it,

10   to fulfill their obligations as quickly as possible within

11   the confines of prudence.

12             I hope that deals with the issues as they've been

13   presented other than the 30(b)(6) issues.  Does anyone have

14   any questions or further comment?

15             MR. SHORE:  No, Your Honor.

16             THE COURT:  Okay.  All right.  The 30(b)(6)?

17             MR. DEVORE:  Yes, Your Honor, this is Andrew

18   Devore of Ropes & Gray, counsel for the indenture trustee

19   for the EFIH first lien notes.

20             We noticed the 30(b)(6) deposition of the debtors,

21   and in accordance with this Court's ruling last Thursday the

22   debtors have indicated that Mr. Hiltz will be testifying

23   with respect to various topics that we noticed 30(b)(6)

24   topics for of the debtors.

25             And the two topics that I need to raise with the

1    Court today concern communications between the debtors or

2    Evercore, their advisors, on the one hand and perspective

3    bidders on the other hand, creditors on the other hand, our

4    key stakeholders on the other hand for the period between

5    July 1st and the present.

6              The second topic we had an issue with was the

7    post-July 1st marketing efforts of the debtors.

8              Mr. Hiltz only became involved in this matter in

9    the third week of August, and I examined Mr. Hiltz at length

10   regarding his preparation to testify on behalf of the

11   debtors with respect to these two topics, particularly

12   during the period of -- the two-month period between the

13   beginning of July and the third week of August, on what he

14   had done to prepare for those topics, and there was an

15   absence of preparation by Mr. Hiltz on communications with

16   anyone at the debtors.

17             Further upon asking whether he had any concerns

18   with testifying on behalf of the debtors as a 30(b)(6)

19   witness with respect to these topics Mr. Hiltz testified

20   that he only had anecdotal knowledge of what occurred

21   between July 1 and the third week of August and that he

22   couldn't be definitive with respect to these topics.

23             So based on this we see two paths forward here.

24   First either the debtors keep his deposition open, Mr. Hiltz

25   familiarizes himself with the communications during that

1    time period and we recommence his deposition, or the debtors

2    designate a different witness, perhaps one that was involved

3    in the process during that time period and we go from there.

4              Now we are happy to work with the debtors on which

5    approach they would like to proceed with, but given the time

6    frame here we raise this with the Court.

7              THE COURT:  Response?

8              MS. O'CONNOR:  Your Honor, this is Bridgett

9    O'Connor on behalf of the debtors.

10             On the -- on this issue of the 30(b)(6) topics I

11   would note first of all that the -- counsel for CSC Trust

12   lodged their objection that he was an inadequate witness on

13   these topics, I don't have the time stamp, but certainly

14   within the first time hour of today's deposition.

15             The characterizations of Mr. Hiltz' preparation,

16   including some of the ways that he had described them in

17   terms of anecdotal, knowledge, et cetera, are perhaps

18   imprecise.  They were his attempts -- or he was explaining

19   what he had done to prepare.

20             We are, as you know, not even finished with the

21   deposition today in terms of the coverage of these topics,

22   nor have I even -- I can -- would plan to can ask him about

23   his preparation.  He was not asked affirmatively questions

24   about what he did to prepare, who he met with, who he spoke

25   with.

1          By its nature a 30(b)(6) topic, in particular

2    these topics, which refer to communications with various

3    parties, there's not going to be any witness that knows

4    firsthand every single communication and is able to report

5    on behalf of all of those communications.

6          So by necessity he is referring to anecdotal

7    information as he put it or descriptions of those

8    communications that he got in the course of preparing to be

9    a 30(b)(6) witness on these topics.

10          So again, I think that the request to continue the

11    deposition is premature, we're still in the deposition, and

12    if in fact they believe at the end of today's deposition

13    that he was not an adequate witness we can access that based

14    on the transcript and the responses as they are, but I think

15    much of this is attributable for the nature of a 30(b)(6)

16    deposition.

17          There are numerous professionals involved here,

18    and for any one person to be able to report firsthand on all

19    such communications would be difficult, if not impossible,

20    on a 30(b)(6) basis.

21          MR. DEVORE:  Your Honor, may I be heard?

22          THE COURT:  Yeah, just a second though.  I'm

23    having a hard time hearing.  There's paper shuffling around.

24    Could we please be as quite as possible so I can actually

25    hear counsel's arguments?

1              Yes, you may be heard.

2              MR. DEVORE:  Your Honor, Andrew Devore from Ropes

3     & Gray.

4              The second question I asked Mr. Hiltz this morning

5     was what did you do to prepare for your deposition this

6     morning?  And his answer was he met with counsel on two

7     occasions, viewed the motion, the declaration, the biddings

8     procedures letter, noted relevant information and that was

9     it.  He never mentioned throughout my questioning

10    communicating with any person at the debtors in preparing

11    for this testimony.

12             MS. O'CONNOR:  This is just to follow up briefly

13    on that.  So a follow-up question to that question would be

14    who did you meet with?  Did you prepare for these topics?

15    What did you do to prepare for these topics?  So those would

16    be among the questions that I would plan to follow up with

17    him on later today when I get a chance to ask a few of those

18    questions given the issue that's at hand.

19             THE COURT:  All right, here my ruling.

20             Obviously to the extent it's -- and it sounds to

21    me as I sit here to be an appropriate inquiry topic for the

22    deposition -- if the -- if the witness has not prepared

23    sufficiently for the period -- the period and subject of the

24    30(b)(6) inquiry then that witness either needs to go get

25    prepared and come back or you need a new witness.

1           Now, you're operating in a vacuum, because the

2    record is not fully developed as to what this -- and I'm

3    sorry, I keep missing his name -- but the witness did not

4    do.  I don't think it's sufficient to sort of say -- and I'm

5    assuming facts not in evidence here -- but assuming -- that

6    someone who came in late in the process who had

7    conversations with counsel can't testify as to what happened

8    before he got there, and that's just the nature of 30(b)(6)

9    testimony.  I don't think that's an adequate response.

10          Some effort has to be made in order to educate the

11   witness to be able to respond to the topic area.  It's of

12   course not perfect and you can't have every party to every

13   conversation, that's not the way this type of inquiry works.

14   So it'll be somewhat of a sliding scale, but something has

15   to have been done.  I'm not sure if something was or wasn't

16   done and I'm not -- we can't know the answer to that because

17   the record isn't full, but if the preparation was inadequate

18   then there'll be an opportunity to question a witness who

19   can give adequate responses.

20          Perfect knowledge is not required, and it sounds

21   like we're going to have to wait until we get actual follow-

22   up testimony by debtors' counsel that might clarify the

23   record, but as a sort of overall parameter that'll hopefully

24   inform the parties' positions going forward reasonable

25   preparation by this witness on that topic and that time

1   frame needs to have occurred, and if that happened he knows

2   what he knows and you can ask the questions.  If that didn't

3   happen then he either needs to be educated or a new witness

4   needs to be produced, and that needs to be done quickly.

5            That's all I can say now without having the actual

6   specific facts in front of me.

7            MR. DEVORE:  Thank you, Your Honor.

8            THE COURT:  You're welcome.  Is there anything

9   else before you get back at it?

10           MR. SHORE:  I think that's it, Your Honor.

11           THE COURT:  All right, thank you very much.

12           MR. SHORE:  Thank you very much.

13           THE COURT:  All the best.  We're adjourned.

14       (Whereupon, these proceedings concluded at 4:26 p.m.)

15

16                        * * * * *

17

18

19

20

21

22

23

24

25

Page 24

1                 C E R T I F I C A T I O N

2

3   We, Dawn South certify that the foregoing transcript is a

4   true and accurate record of the proceedings.

5

6   Dawn South

Digitally signed by Dawn South
DN: cn=Dawn South, o, ou,
email=digital1@veritext.com,
c=US
Date: 2014.10.07 16:00:17 -04'00'

_____

7   Dawn South

    AAERT Certified Electronic Transcriber CET**D-408

8

9

10  Veritext

11  330 Old Country Road

12  Suite 300

13  Mineola, NY 11501

14

15  Date:  October 7, 2014

16

17

18

19

20

21

22

23

24

25