## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

```
------------------------------------------------ x
In re:                                           :  Chapter 11
                                                 :
Energy Future Holdings, Inc., et al.,            :  Case No. 14-10978 (CSS)
                                                 :
                     Debtors.                    :  (Jointly Administered)
                                                 :
------------------------------------------------ x  Re: Dkt. No. 2087
```

### OBJECTION OF THE EFIH SECOND LIEN NOTES INDENTURE TRUSTEE AND EFIH SECOND LIEN GROUP TO DEBTORS' MOTION TO APPROVE BIDDING PROCEDURES

Computershare Trust Company, N.A. and Computershare Trust Company of Canada, as indenture trustee (the "**Indenture Trustee**") for $2,156,392,000 aggregate principal amount of second lien notes (the "**EFIH Second Lien Notes**" and the holders thereof the "**EFIH Second Lien Noteholders**") issued by Energy Future Intermediate Holding Company LLC and EFIH Finance Inc. (collectively, "**EFIH**") pursuant to the Indenture dated as of April 25, 2011, and the First Supplemental Indenture dated as of February 6, 2012 (together with all supplements, amendments, and exhibits, the "**Indenture**") and certain EFIH Second Lien Noteholders (the "**EFIH Second Lien Group**"), by and through their undersigned counsel, hereby submit this objection (the "**Objection**") to the motion (the "**Bid Procedures Motion**") of the above-captioned debtors (the "**Debtors**") to enter an order approving (a) approving bidding procedures, (b) scheduling an auction and related deadlines and hearings, and (c) approving the form and manner of notice thereof [Docket No. 2087]. In support of this Objection, the Indenture Trustee and the EFIH Second Lien Group state the following:

## OBJECTION

1. The Indenture Trustee and the EFIH Second Lien Group are pleased the Debtors are engaging in this marketing process but object to certain provisions as laid out below.

2. As an initial matter, and as the Court is aware, this is not the first time the Debtors have sought to sell their indirect equity interest in Oncor. The Debtors filed bankruptcy with a restructuring support agreement (the "**RSA**") that contemplated, among other things, a $1.9 billion second-lien DIP (the "**EFIH Second Lien DIP**") which contained a conversion feature through which the EFIH Second Lien DIP lenders (also the unsecured creditors of EFIH) would receive approximately 65% of the Reorganized EFH equity upon consummation of a plan of reorganization (with most of the remaining 35% going to EFIH unsecured creditors). This initial restructuring path, however, proved to be unsuccessful because, among other reasons, the Debtors made absolutely no efforts to market the equity of Reorganized EFH to be issued as part of the EFIH Second Lien DIP and RSA. *June 30 Hearing Tr.* [Docket No. 1443] at 154:21-25 and *July 1 Hearing Tr.* [Docket No. 1444] at 87:16-20.

3. Recognizing Oncor's significant value, in mid-June, the EFIH Second Lien Group took the initiative to solicit interest from a strategic investor, NextEra Energy, Inc. ("**NextEra**"), and presented the Debtors with a joint proposal from NextEra and the EFIH Second Lien Group – which is what led to the current robust market interest in Oncor. It was only after these events (and the Court's indication that it was unlikely to approve the EFIH Second Lien DIP) that the Debtors withdrew their motion for approval of an EFIH Second Lien DIP, terminated the RSA, and determined to initiate a true marketing process.

4. The Indenture Trustee and the EFIH Second Lien Group hope that this new marketing process for the 80% interest in Oncor leads to a successful outcome. The

Indenture Trustee and the EFIH Second Lien Group are concerned, however, that the Debtors may be embarking on a path that repeats prior mistakes, particularly with regard to creditor involvement in the process. For example, the Debtors are limiting the information to be given to creditor constituencies during the initial phase of the marketing process and only intend to provide details about the bids and the decision making process *after* they have chosen the stalking horse. *Bid Procedures Motion* at ¶ 34.[1] It is both inappropriate and inefficient for the Debtors to withhold information and make a decision that will direct the trajectory of these cases without creditor input. While the Debtors have expressed concerns relating to bidders' need for confidentiality, the advisors to the Indenture Trustee and the EFIH Second Lien Group are parties to non-disclosure agreements with the Debtors, and there is no reason why the Debtors cannot discuss the proposals they are receiving with the advisors throughout the entire marketing process.[2]

5.     Moreover, the Indenture Trustee and the EFIH Second Lien Group have concerns about whether this bidding process will in fact maximize the value of Oncor and lead to a successful transaction. It is important to note, as is clear from the bid procedures, that the Debtors are actually searching for a "plan sponsor" – as opposed to an asset purchaser. For example, included among the various criteria to be considered by the Debtors in determining the stalking horse are (i) "Stakeholder Consensus" (which is explained as "the level of support for the Bid among the Debtors' stakeholders, including in particular those stakeholders the support

---

[1] Separately, the Bidding Procedures provides for the Debtors to consult with the "Reviewing Parties" on a variety of issues during the Open Bidding Process and Auction. Reviewing Parties is defined to include almost all of the represented creditor groups in this bankruptcy case, except, notably (and surprisingly), advisors to the Indenture Trustee and the EFIH Second Lien Group. The Debtors have confirmed they will revise this definition to include advisors and counsel to the Indenture Trustee and EFIH Second Lien Group. To the extent this change is not made in the Bid Procedures in advance of the hearing, the Indenture Trustee and the EFIH Second Lien Group object to their exclusion.

[2] In addition, nothing in any order or any confidentiality agreement should preclude creditors from obtaining information about any of the bids in future discovery.

of which the Debtors deem critical to the confirmation of one or more value-maximizing plans of reorganization") and (ii) "Likelihood of Confirmation." However, despite these criteria, the Debtors make no mention as to how or when they intend to try to create creditor consensus or which creditors they deem critical to confirmation. Indeed, this is strikingly similar to their flawed prepetition process where the Debtors largely excluded multiple creditor groups from the process.

6. █████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
██████████████████████████████████

7. ████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████

---

[3] ███████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████



8.     The Debtors will also consider tax issues in evaluating bids, and bidders will need to make their own analysis of the myriad of tax issues to determine whether a plan can in fact be confirmed. Bidders that propose a tax-free transaction (the Debtors' preferred structure) may conclude that providing a majority of Reorganized EFH equity to existing EFIH creditors to serve as the "continuity of interest" is the optimal path to secure IRS approval and thus to ensure that their bid will be viable. As the Court will recall, it was exactly this construct that led to the Debtors' proposed marketing process. The EFIH Second Lien Group previously offered to compromise a portion of their claims into equity as part of its joint proposal with NextEra in order to satisfy continuity of interest. The Debtors, for their part, turned this proposal down (a proposal which (i) demonstrated that EFIH is solvent, (ii) paid EFH creditors significant additional consideration over what was contemplated in the RSA, and (iii) facilitated the tax-free spin) because other parties expressed an interest in bidding for the assets.

---

[4] [redacted]

9. If the Debtors are truly running an open process, they should be encouraging bidders to engage in discussions with creditor groups in order to develop bids that will lead to a confirmable plan (including along the lines of the original EFIH Second Lien Group/NextEra proposal). The EFIH Second Lien Group continues to be prepared to work with bidders to work on a transaction that maximizes the value of the Debtors' indirect interest in Oncor and that uses the EFIH Second Lien Notes as a vehicle for continuity of interest. ██████████████████████████████████████████[5]

10. The EFIH Second Lien Group and the Indenture Trustee reserve all their rights to raise any additional issues at or prior to the hearing on the Bid Procedures Motion.

---

[5] ██████████████████████████████████████████

WHEREFORE, the EFIH Second Lien Group and the Indenture Trustee request that the Court deny the Bid Procedures Motion unless the following additional provisions are added to the bid procedures order: (i) the Debtors are directed to communicate with Reviewing Parties (which shall include advisors to the Indenture Trustee and the EFIH Second Lien Group) during the stalking horse bidding process about proposals they receive from bidders during the process; (ii) nothing in the bid procedures order, any other order or any confidentiality agreement will restrict any party's right to obtain information regarding the bids in discovery, and ▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Dated: October 10, 2014         PACHULSKI STANG ZIEHL & JONES LLP

/s/ *Laura Davis Jones*

Laura Davis Jones (Bar No. 2436)
Robert J. Feinstein (NY Bar No. RF-2836)
919 N. Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400
Email: ljones@pszjlaw.com
       rfeinstein@pszjlaw.com

- *and* -

KRAMER LEVIN NAFTALIS & FRANKEL LLP
Thomas Moers Mayer
Joshua K. Brody
Kramer Levin Naftalis & Frankel LLP
1177 Avenue of the Americas
New York, New York 10036
Telephone: (212) 715-9100
Facsimile: (212) 715-8000
Email: tmayer@kramerlevin.com

jbrody@kramerlevin.com

*Counsel to the EFIH Second Lien Group and the Indenture Trustee*

*- and -*

BRYAN CAVE LLP

Stephanie Wickouski
1290 Avenue of the Americas
New York, New York 10104-3300
Tel: 212-541-1114
Fax: 212-904-0514
Email: stephanie.wickouski@bryancave.com

*Counsel to the Indenture Trustee*