## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Energy Future Holdings Corp., *et al.,*[1] | ) | Case No. 14-10979 (CSS) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | **Re: Docket No. 2087** |

**DECLARATION OF DAVID S. KURTZ IN SUPPORT OF OPPOSITION TO MOTION OF ENERGY FUTURE HOLDINGS CORP., *ET AL.*, FOR ENTRY OF AN ORDER (A) APPROVING BIDDING PROCEDURES, (B) SCHEDULING AN AUCTION AND RELATED DEADLINES AND HEARINGS, AND (C) APPROVING THE FORM AND MANNER OF NOTICE THEREOF**

I, David S. Kurtz, declare under penalty of perjury:

1.    I am over the age of 18 and am competent to testify.  I am a Vice Chairman and the Global Head of the Restructuring Group of Lazard Frères & Co. LLC ("**Lazard**"), which has its principal office at 30 Rockefeller Plaza, New York, New York 10020.

2.    I am authorized to make this declaration on behalf of Lazard and in support of the objection (the "**Objection**") of the Official Committee of Unsecured Creditors of Energy Future Competitive Holdings Company LLC ("**EFCH**"), EFCH's direct subsidiary, Texas Competitive Electric Holdings Company LLC ("**TCEH**") and their direct and indirect subsidiaries, and EFH Corporate Services Company (the "**Committee**") to the *Motion of Energy Future Holdings Corp.,* et al.*, for Entry of an Order (A) Approving Bidding Procedures, (B) Scheduling an Auction and Related Deadlines and Hearings, and (C) Approving the Form and Manner of*

---

[1] The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810.  The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201.  Due to the large number of debtors in these chapter 11 cases, which are being jointly administered, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://efhcaseinfo.com.

*Notice Thereof* [Docket No. 2087].[2]  Unless otherwise stated in this declaration, I have personal

knowledge of the facts set forth herein.[3]

<u>**Qualifications**</u>

3.      Lazard is the primary U.S. operating subsidiary of an international financial

advisory and asset management firm.  Lazard, together with its predecessors and affiliates, has

been advising clients around the world for more than 150 years.  The current managing directors,

directors, vice presidents and associates at Lazard have extensive experience working with

financially troubled companies in complex financial restructurings both out-of-court and in

chapter 11 proceedings.

4.      Lazard and its principals have been involved as advisors to debtors, creditors,

equity constituencies and government agencies in many reorganization cases.  Since 1990,

Lazard's professionals have been involved in over 250 restructurings, representing more than $1

trillion in debtor assets, including sales of assets under section 363 of the Bankruptcy Code.

Notably, Lazard has been retained as an investment banker and financial advisor in numerous

large and complex chapter 11 cases, including, among others, *In re Longview Power, LLC*, No.

13-12211 (BLS) (Bankr. D. Del. Sept. 24, 2013); *In re Cengage Learning, Inc.*, No. 13-44106

(Bankr. E.D.N.Y. July 24, 2013); *In re A123 Sys., Inc.*, No. 12-12859 (Bankr. D. Del. Nov. 9,

2012); *In re Eastman Kodak Co.*, No. 12-10202 (Bankr. S.D.N.Y. Feb. 28, 2012); *In re NewPage*

*Corp.*, No. 11-12804 (Bankr. D. Del. Sept. 7, 2011); *In re Great Atl. & Pac. Tea Co.*, No. 10-

24549 (Bankr. S.D.N.Y. Jan. 13, 2011); *In re Citadel Broad. Corp.*, No. 09-17442 (Bankr.

S.D.N.Y. Apr. 12, 2010); *In re Lehman Bros. Holdings, Inc.*, No. 08-13555 (Bankr. S.D.N.Y.

Dec. 17, 2008); *In re Tropicana Entm't, LLC*, No. 08 10856 (Bankr. D. Del. May 30, 2008); *In*

---

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Objection.

[3] Certain disclosures herein relate to matters within the personal knowledge of other professionals at Lazard and are based on information provided by them.

re Wellman, Inc., No. 08-10595 (Bankr. S.D.N.Y. Mar. 19, 2008); *In re Movie Gallery, Inc.*, No. 07 33849 (Bankr. E.D. Va. Oct. 18, 2007); *In re New Century TRS Holdings, Inc.*, No. 07-10416 (Bankr. D. Del. Apr. 5, 2007); *In re Northwest Airlines Inc.*, No. 05-17930 (Bankr. S.D.N.Y. July 20, 2006); *In re Calpine Corp.*, No. 05-60200 (Bankr. S.D.N.Y. May 2, 2006); *In re Collins & Aikman Corp.*, No. 05-55927 (Bankr. E.D. Mich. July 18, 2005); *In re Tower Auto., Inc.*, No. 05-10578 (Bankr. S.D.N.Y. June 15, 2005); *In re Solutia, Inc.*, No. 03-17949 (Bankr. S.D.N.Y. May 26, 2004); *In re Parmalat U.S.A Corp.*, No. 04-11139 (Bankr. S.D.N.Y. Apr. 22, 2004); *In re Adelphia Comm. Corp.*, No. 02 41729 (Bankr. S.D.N.Y. Dec. 12, 2003); and *In re Worldcom, Inc.*, No. 02 13533 (Bankr. S.D.N.Y. Jan. 14, 2003)

5.      I have been employed by Lazard since 2002, and have extensive experience as an advisor in corporate restructurings.  I have advised companies, creditors and investors in connection with numerous in-court and out-of court restructurings and recapitalizations, including *In re Cengage Learning, Inc.*, No. 13-44106 (Bankr. E.D.N.Y. July 24, 2013); *In re Eastman Kodak Co.*, No. 12-10202 (Bankr. S.D.N.Y. Feb. 28, 2012); *In re Tribune Company*, No. 08-13141 (Bankr. D. Del. Dec. 8, 2008); *In re Dynegy Holdings, LLC*, Case No. 11-38111 (Bankr. S.D.N.Y. Nov. 7, 2011); *In re Great Atl. & Pac. Tea Co.*, Case No. 10-24549 (Bankr. S.D.N.Y. Dec. 12, 2010); *Local Insight Media Holdings, Inc.*, Case No. 10-13677 (Bankr. D. Del. Nov. 17, 2010); *In re R.H. Donnelley Corp.*, Case 09-11833 (Bankr. D. Del. May 28, 2009); *In re Charter Commc'ns., Inc.*, Case No. 09-11435 (Bankr. S.D.N.Y. Mar. 27, 2009); *In re Smurfit-Stone Container Corp.,* Case No. 09-10235 (Bankr. D. Del. Jan. 26, 2009); *In re New Century Fin. Corp.*, Case No. 07-10416 (Bankr. D. Del. Apr. 2, 2007); *In re Calpine Corp.*, Case No. 05-60200 (Bankr. S.D.N.Y. Dec. 20, 2005); *In re Northwest Airlines, Inc.*, Case No. 05-17930 (Bankr. S.D.N.Y. Sept. 14, 2005); and *In re Adelphia Commc'ns Corp.*, Case No. 02-41729 (Bankr. S.D.N.Y. June 25, 2002).

6.     Prior to joining Lazard, I was a partner at Mayer, Brown & Platt from 1986 to 1989, a partner at Jones, Day, Reavis & Pogue LLP from 1989 to 1999 and a senior partner in the Corporate Restructuring Department at Skadden Arps, Slate, Meagher & Flom LLP from 1999 to 2002.   I hold FINRA Series 7 General Securities and Series 24 General Principal licenses.  I have a J.D. and B.A. from Case Western Reserve University.  I am a fellow of the American College of Bankruptcy, and served as a member of the Board of Directors from 2005 through 2011.  I am also a frequent lecturer on bankruptcy and reorganization related topics and I have co-authored "*Representing the Unsecured Creditors' Committee in Insolvency Restructurings*," *Workouts & Turnarounds II*, (1999), Wiley and Sons.

## The Bidding and Sale Process

7.     Prior to commencing these Chapter 11 Cases, the Debtors spent over a year attempting to orchestrate a restructuring agreement among certain of its creditors, pursuant to which their businesses would be held intact.  This was called "Project Olympus."  This approach reflected the Debtors' view that separating the Oncor business from TCEH was not the best way to maximize value.  Only upon the failure to achieve sufficient consensus among the creditors on relative valuations of the businesses and distributions under a restructuring plan did the Debtors shift to pursuit of a restructuring plan predicated on separation of the businesses, as initially reflected in the Restructuring Support Agreement.

8.     After abandoning the Restructuring Support Agreement, the Debtors informed the Committee that they had begun a process to market Oncor for sale.  The Debtors proposed to proceed by first selecting a stalking horse bidder based upon a brief marketing process, to be followed by a longer marketing and auction process.  Lazard did not believe that the process initially proposed by the Debtors was the best process to maximize the value of Oncor, if it were to be sold.  Instead, Lazard was of the view that, because in this particular industry strategic

4

bidders may not be willing to attempt to outbid each other after announcement of a stalking horse bidder, if and when Oncor were to be marketed for sale, a better process would be to conduct an extended marketing process prior to selecting a stalking horse bidder, to be followed by a brief subsequent auction period.  This view is reflected in the Debtors' proposed Bidding Procedures.

9.      However, the Debtors' proposed strategy and process to market and sell Oncor at this time goes far beyond a typical section 363 transaction.  Here, the sale of Oncor will be premised and conditioned upon assumptions regarding a host of complex, contentious issues that have not been negotiated or fully analyzed by the Debtors' constituents, and the resolution of which will ultimately form the building blocks of a plan of reorganization.  Normally, these issues are dealt with in connection with a plan process.  As such, the Debtors are not simply proposing to market an asset for the highest price they can obtain.  Rather, they are proposing to move quickly toward a sale transaction that unilaterally prejudices many of the key issues in these Chapter 11 Cases.

10.     As evidenced by the Term Sheet for an Oncor sale transaction that the Debtors have distributed to potential bidders, as well as the Tax Memorandum, the Debtors have assumed that the only plan of reorganization that can be pursued in these Chapter 11 Cases is one premised upon a tax-free spinoff of TCEH.  Accordingly, the proposed procedures to sell Oncor strongly encourage bidders to bid for the pro forma equity of reorganized EFH Corp., conditioned upon the effectiveness of a subsequent plan of reorganization built around the tax-free spinoff of TCEH.

11.     As set forth in the Tax Memorandum, a tax-free spinoff of TCEH would eliminate a full step-up in basis for the TCEH Entities.  That basis step-up could be valued in excess of $2 billion.  The Debtors' proposed structure would strip TCEH of a substantial portion of this value without any compensation being paid to the TCEH Entities.  The Debtors assert that there are

5

numerous tax issues and claims that would be asserted against various Debtor estates, if a taxable transaction were to occur; however the Committee has not had a sufficient opportunity to diligence and analyze these issues and the hypothetical tax claims or their consequences for each individual estate.

12.    Among the issues that I believe are appropriate for determination under a plan of reorganization, but that the Debtors' proposed process prejudices are:

- whether Oncor should be sold to a third party purchaser rather than held;

- whether a reorganization that keeps EFH Corp., TCEH, and EFIH together is no longer feasible, preferable, or value-maximizing;

- whether the Debtors' chosen tax structure is in the best interests of the TCEH Entities;

- whether TCEH obligations under the Competitive TSA (if they exist at all), or the Competitive TSA itself, are not avoidable;

- whether TCEH creditors will vote for a plan premised upon a tax-free spinoff of TCEH without the full basis step-up;

- whether creditors of EFH Corp./EFIH (including certain TCEH Entities—and by extension their creditors) are willing to accept equity in the Oncor acquirer under a plan of reorganization; and

- whether it is appropriate for TCEH to lose the full basis step-up for no contemporaneous consideration.

13.    In sum, the process now proposed by the Debtors contains many of the same flaws that plagued the Restructuring Support Agreement.  The Debtors are again seeking to move expeditiously down a path in these Chapter 11 Cases that is premised upon a specific plan structure before the issues embedded in that plan structure have begun to be negotiated by, at least, the Committee, or determined by the Court.  A better, more appropriate process would be to address any potential sale of Oncor in the context of a reorganization plan.  Only in the context of a plan process will the Debtors' constituents be given requisite time and opportunity

to fully and fairly assess the issues, be allowed an opportunity to negotiate and attempt to reach consensus, and have their rights and interests sufficiently considered and protected.

14.     Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Dated: October 10, 2014
      Chicago, IL

                   /s/ David S. Kurtz
                   David S. Kurtz
Vice Chairman and Global Head of the Restructuring Group
Lazard Frères & Co. LLC

7