# EXHIBIT 16

1      CONFIDENTIAL - CHARLES CREMENS
2      UNITED STATES BANKRUPTCY COURT
3       FOR THE DISTRICT OF DELAWARE
4   --------------------------------X
    In Re:
5
    ENERGY FUTURE HOLDINGS
6   CORPORATION, et al.,
7                Debtors.
8   Chapter 11
    Case No. 14-0979
9   Jointly Administered
    --------------------------------X
10
11
12       *** C O N F I D E N T I A L ***
13
14          VIDEOTAPED DEPOSITION
15                  OF
16          CHARLES CREMENS
17      Wednesday, October 8, 2014
18          Seven Times Square
19          New York, New York
20
21
22  Reported by:
    AYLETTE GONZALEZ, RPR, CLR, CCR
23  JOB NO. 85457
24
25

1      CONFIDENTIAL - CHARLES CREMENS
2      A.   My understanding is that it's
3 billions.
4      Q.   Do you have a range, 1 and 2
5 billion?
6      A.   I don't have a range.
7      Q.   But you do understand it would have
8 to be billions of dollars better than NextEra?
9      A.   Yes.
10     Q.   Has anyone expressed to you a view
11 as to the likelihood of receiving a bid in
12 this process that is billions of dollars
13 better than NextEra's?
14     A.   I have no idea exactly what the
15 market will take, but I think my experience
16 would suggest it's probably remote.
17     Q.   Probably remote.  And what is it
18 within your experience that leads you to
19 believe the likelihood of a taxable
20 transaction coming in at a level that's
21 billions of dollars higher than NextEra, which
22 is what you would need to have that bid be
23 better than a taxable -- a nontaxable
24 transaction, what in your experience leads you
25 to believe that that's remote?

1       CONFIDENTIAL - CHARLES CREMENS
2       A.   It would -- because the size of the
3  transaction relative to the cash flows and the
4  overall multiples, it would just seem like it
5  would be difficult to get.  I mean, this is
6  not that large relative to billions of
7  dollars.
8       Q.   So when --what was the purpose, if
9  you know, behind the debtors' indication that
10 the auction process is now wide open and they
11 will consider any bids that deviate from the
12 optimum tax structure --
13           MS. O'CONNOR:  Object to form.
14      Q.   -- if such bids are considered to
15 be remote?
16           MS. O'CONNOR:  Object to form.
17      A.   No, I didn't say bids -- the bids
18 might not be remote.  I said the idea of being
19 able to come up with billions of dollars more
20 than the NextEra bid is probably remote.
21           So I don't know whether somebody
22 would put forth a taxable transaction or a
23 transaction that is only for part of the
24 business or how is it going to do.  We don't
25 know.  So we're offering the marketplace as a

1        CONFIDENTIAL - CHARLES CREMENS
2   whole to try to give wide breath to what
3   anybody might think and then we could see and
4   work with it.
5        Q.   But, again, just so I'm clear, the
6   notion that an alternative tax structure that
7   would clear the billions of dollars hurdle in
8   your business judgment is remote?
9        A.   I'm saying that it is certainly, as
10  I understand it, remote.
11       Q.   And you have a general familiarity,
12  do you not, with what the market multiples are
13  in the utility space?
14       A.   I do.
15       Q.   And, again, other than the
16  possibility of people coming up with bids for
17  different portions of the business, you're not
18  anticipating a taxable transaction to provide
19  enough value to become the winning bidder, do
20  you?
21            MS. O'CONNOR:   Object to form.
22       A.   Again, my overall view is that
23  based upon the work that has been done that we
24  have been exposed to is that a -- we're
25  inclined -- the difference is substantial