# EXHIBIT 12

```
                                                                    Page 1
 1   UNITED STATES BANKRUPTCY COURT
 2   DISTRICT OF DELAWARE
 3
 4
 5   In re:                              :
                                         :   Chapter 11
 6   ENERGY FUTURE HOLDINGS              :
     CORP., et al.,                      :   Case No. 14-10979(CSS)
 7                                       :
              Debtors.                   :   (Jointly Administration
 8   _____        :   Requested)
     CSC TRUST COMPANY OF DELAWARE,:
 9   as INDENTURE TRUSTEE,               :
                                         :
10            Plaintiff,                 :
                                         :
11      v.                               :   Adv. Proc. No. 14-50363
                                         :   (CSS)
12   ENERGY FUTURE INTERMEDIATE          :
     HOLDING COMPANY LLC and EFIH        :
13   FINANCE INC.,                       :
                                         :
14            Defendants.                :
     _____:
15
16
17
18                               United States Bankruptcy Court
19                               824 North Market Street
20                               Wilmington, Delaware
21                               July 1, 2014
22                               9:35 AM - 5:18 PM
23
24
25
```

1  like, but I believe it's in your pleadings binder there at
2  tab 31, if you want to take a look.
3       The debtor refers to the capital markets risk and says
4  that any delay causes significant risk with respect to these
5  rates, referring to the interest rates, that could both
6  significantly increase the cost of capital for the repayment
7  of the EFIH second lien notes and negatively affect the
8  valuation of Oncor.
9  A    Yes.  I remember it says that.
10 Q    And that's at page 15.
11 A    Yes.  I remember it says that.
12 Q    You're not aware of any subsequent plan if this DIP is
13 not approved to refinance the second lien notes as debt upon
14 emergence, correct?
15 A    Definitely not.  I think I've testified a couple of
16 times as to the lack of feasibility of that and --
17 Q    So the question is whether the interest rates will
18 affect the valuation of Oncor, is that the primary concern?
19 A    Well, obviously, interest rates could adversely affect
20 the value of Oncor.  We experienced in the period from -- I
21 think it was almost a full year ago, probably May of 2013
22 through August where the Federal Reserve started talking
23 about stopping quantitative easing.
24 Q    And you've not done any formal analysis of interest
25 rate movements over the next twelve to twenty-four months,

1  opportunity to explain more fully his answer.

2         THE COURT:  Yeah, I'll allow it.

3         UNIDENTIFIED:  That's all I'm doing, Your Honor.

4         THE COURT:  Overruled.

5  BY MR. UNIDENTIFIED:

6  Q    You had started to say when you were asked about this

7  provision on cross-examination, you had started to refer to

8  a relationship between interest rates and the value of

9  Encore.  Do you recall that?

10 A    Yes, I do.

11 Q    And what is it you were attempting to say then, can you

12 tell the Court now?

13 A    Sure.  I was attempting to say that in particular

14 during the summer of last year when we were negotiating with

15 the TCH lenders and the EFIH lenders about the relative

16 values of their respective companies, we experienced a

17 period of rising interest rates, and that led to a decline

18 in the valuation metrics that one would use to value Encore.

19 And that was causing a lot of angst on the part of the EFIH

20 unsecureds, and the TCEH constituency who we are asking to

21 merge with the EFIH unsecured creditors expressed a lack of

22 desire in making an offer to merge or establishing an

23 exchange ratio because they felt that the value of Encore

24 and EFIH was declining.

25 Q    All right.  And you observed a relationship between

1   interest rates and Encore's value?

2   A    Yes, we did.  As interest rates rose, Encore's value

3   did decline.  And the valuation metrics we looked at like

4   multiples of earnings did go down during that period.

5   Q    Okay.  And what time period had you been observing

6   those kind of data with respect to interest rates on

7   Encore's value?

8   A    Well, I was referring particularly to the time period

9   from I believe was May of 2013, so August of 2013 when there

10  was -- when the markets experienced a significant increase

11  in the rate of interest.

12  Q    Okay.  And does that observation have any bearing, and

13  if so, what is it on your recommendation in favor of the

14  debtors adoption of the proposed second lien DIP and make

15  whole settlement?

16  A    Well, obviously we don't want to experience another

17  period where rates are rising and the value of Encore

18  declines because it would then mean that the economic terms

19  of the DIP facility that are currently are on offer would

20  potentially no longer be available to the debtor.

21  Q    All right.  Now, I want to turn to -- back to I think

22  Debtor's Exhibit 2, which is the June 22nd, 2014 board

23  presentation.

24  A    I have it.

25  Q    Okay.  And if you could turn to page 4.  I think you