1  UNITED STATES BANKRUPTCY COURT

2  DISTRICT OF DELAWARE

3

4

5  In re:                          :

                                   :    Chapter 11

6  ENERGY FUTURE HOLDINGS          :

   CORP.,  et al.,                 :    Case No. 14-10979(CSS)

7                                  :

           Debtors.               :    (Jointly Administered)

8  _____:

9

10

                          United States Bankruptcy Court

11

                          824 North Market Street

12

                          Wilmington, Delaware

13

14

                          October 10, 2014

15

                          2:03 PM - 2:29 PM

16

   B  E  F  O  R  E :

17

   HON CHRISTOPHER S. SONTCHI

18

   U.S. BANKRUPTCY JUDGE

19

20

21

22

23

24

   ECR OPERATOR:  LESLIE MURIN

25

1    HEARING re Telephonic Hearing

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25    Transcribed by:  Dawn South

1  A P P E A R A N C E S :

2  KIRKLAND & ELLIS

3      Attorneys for the Debtors

4

5  BY:  BRIDGET K. O'CONNOR, ESQ. (TELEPHONIC)

6

7  BROWN RUDNICK

8      Attorney for Wilmington Savings Fund Society

9

10  BY:  EDWARD WEISFELNER, ESQ. (TELEPHONIC)

11

12  WHITE & CASE LLP

13      Attorney for Ad Hoc Group of TCEH Unsecured

14      Noteholders

15

16  BY:  J. CHRISTOPHER SHORE, ESQ. (TELEPHONIC)

17

18  MORRISON & FOERSTER

19      Attorneys for the Committee

20

21  BY:  CHARLES L. KERR, ESQ. (TELEPHONIC)

22

23

24

25

```
1                     P R O C E E D I N G S

2              THE CLERK:  All rise.

3              THE COURT:  Please be seated.  Ready?

4              Good afternoon, counsel, this is Judge Sontchi.

5    I'd ask you please to identify yourself before you speak

6    since we're taking this on the record.

7              I believe it was --

8              MR. KERR:  This is Charles Kerr of Morrison &

9    Forester.

10             THE COURT:  Okay.  I was going to say I believe --

11             MR. SHORE:  Chris Shore from White & Case.

12             THE COURT:  All right, we don't need to do a role

13   call.

14             MS. O'CONNOR:  Bridget O'Connor for the debtors.

15             THE COURT:  We don't need a role call, I just want

16   you to identify yourself before you speak.

17             All right.  I understand that this is sort of a

18   joint request of the official committee and the ad hoc

19   committee, TCEH unsecured noteholders, for this call, so

20   I'll turn it over to them.

21             MR. SHORE:  Your Honor, this is Chris Shore.

22             This is been -- kind of been my issue from the

23   beginning, and I've raised at various times with the Court,

24   and I've got a very specific request about the need for

25   written direct testimony here, but let me explain.
```

1          We're about to file our objection, no secret, that

2     our position has been we've been scratching our heads as to

3     why an asset like this that everyone seems to like has to go

4     on the auction block right now in a post-reorg equity sale

5     before a plan is negotiated.

6          They submitted the declaration of Mr. Hiltz, which

7     purports to answer that question.  In paragraph 11 he

8     testifies that they're favorable conditions, which people

9     don't seem to be disputing, but he says one thing, "There is

10    a risk they may shift."  And that's why the debtors need to

11    sell now.  The conditions aren't going to exist much longer

12    or aren't going to exist any longer so we need to sell.

13         In our document request we asked for all

14    documents, analyses, studies, anything done with respect to

15    that, but it didn't sound like Kirkland, that they would put

16    forward an expert who would say that without some material

17    behind it.

18         We started Mr. -- they didn't produce anything, we

19    started Mr. Hiltz' deposition, and no surprise he testified

20    he had a folder of analyses.  They then produced -- after

21    that deposition we got the folder of analyses.  Included in

22    that were various debts.  Encore tax analysis that they had

23    prepared in anticipation of litigation, current financing

24    conditions, a market analysis study, USM&A volume over the

25    last five years, a chart of historic drop-dead dates for

1    regulated utility transactions, a transaction multiple

2    analyses.  All of which look like they were trial

3    demonstrative plus either for the bidding procedures motion

4    or for a contemplated sale motion that was going to be done

5    pursuant to a tax structure that they say is still up in the

6    air.

7          We got 2700 pages of documents the night after

8    that, most of which were duplicative, but turned out to be

9    the call logs that they had withheld, and we got 600 pages

10   last night, which are more transaction multiple analyses and

11   iterations of that overtime.

12         All of that it looks like was prepared to support

13   the contention that the expert gave that there is risk that

14   the markets may shift.  We said we need another deposition,

15   and we need to see what the experts' opinions are, because I

16   don't want to come to trial and cross this guy cold.

17         The debtors agreed to the continued deposition on

18   Tuesday and they agreed to produce all the documents by

19   midnight last night, or if there are any -- a single

20   document comes in again we may -- they agree we can come

21   back and ask this Court for an adjournment.

22         But the issue is simple.  The debtors refuse to

23   give us a written direct, either say the written direct is

24   as it was filed or give it to us in advance, and are

25   insisting on doing an oral direct.

1           If they give us a written -- I don't have a

2     problem with them wanting to change the testimony after the

3     deposition, but if it's written we can see where the witness

4     is going to go and see what his opinions are so that we have

5     an opportunity to address it with the Court.  It may be that

6     those opinions are not materially different or materially

7     expansive from what was put in the motion, and they may be

8     -- you know, it may turn out that when he said shift he

9     meant materially downgrade and wants to support that.  But

10    at least if we have a writing we'll see it.

11          If we don't have a writing the way this plays out

12    is we take his deposition, ask him about all this stuff, he

13    answers whatever questions he can on that, I say what are

14    you going to testify to at trial?  He says like any expert

15    would, I don't know, whatever the questions -- the lawyers

16    ask me.  We come to the trial on Friday, the written -- or

17    the oral direct starts and he starts getting asked questions

18    ability what do you mean by shift?  And the witness says,

19    well let me show you demonstrative A and B and C and D and E

20    and F and G and H and I and J, and each time that happens I

21    stand up, then Mr. Kerr stands up, then Mr. Weisfelner

22    stands up, and then Mr. Jonas stands up, then Mr. Weisfelner

23    sits down and we all go you can't do that, and now we're

24    right in the position where Your Honor said last time you

25    didn't want us to be, which is you're not entertaining an

1    adjournment request.  So then we're either in a situation

2    where we have to cross a witness cold or the debtors are

3    going to be precluded from putting on anything other than

4    what I'm trying to figure out now, which is what's the --

5    what's the written direct testimony.

6           The -- you know, and it's not -- it's not like we

7    can't handle it, but you don't want to sit and listen to me

8    cross a witness cold on things like are interest rates going

9    rise 750 bips (sic) or 685 bips over the next 18 months?

10   That's just not going to be helpful to Your Honor, and the

11   only way to make it helpful to Your Honor is to have the

12   debtors submit the written direct.  Either say we're going

13   to live with the deposition -- or the declaration that was

14   submitted or we will, as I suggested, give a written direct

15   to the other side, I said even up 'til 5 o'clock the night

16   before the deposition, so that we at least have an

17   understanding as to what that witness is going testify to.

18           And let me add, because someone else raised it.

19   If the debtors want to say that he's not testifying as an

20   expert I don't have a -- I don't necessarily have any

21   problem and they can do what they're going to do, but them

22   they're going to be suggest to the hearings rules with

23   respect to any of these analyses.

24           THE COURT:  All right.  Anyone else before I turn

25   it over to the debtor?

1          All right, I'll hear from the debtor.

2          MS. O'CONNOR:  Your Honor, this is Bridget

3    O'Connor with Kirkland & Ellis on behalf of the debtors.

4          I would first raise in response that we -- I guess

5    in terms of Mr. Shore saying that he was -- that they were

6    scratching their heads about certain aspects of the motion,

7    we're -- we're pretty confused as to why we're even on the

8    call with the Court at this time.

9          The issue of whether Mr. Hiltz would be raised --

10   brought live on direct was raised for the first time quite

11   vaguely in an email at 9:55 p.m. from Mr. Shore last night.

12   Since that time this morning he indicated that he was going

13   to raise this with the Court.  I asked him to explain what

14   the actual issue was on that front and also to confer with

15   us about it.  This is the first time that we've heard any

16   articulation about what his position is with respect to why

17   he opposes Mr. Hiltz testifying live.  And Mr. Shore

18   declined to confer with us.  And we made clear that we

19   thought it was premature to raise this with the Court, and

20   that got nowhere, and here we are on the call.

21         I would also add that this is the second time this

22   has happened.  I didn't press it as hard last time when they

23   called in the middle of the deposition, but there was

24   apparently confusion that led to that CourtCall, it was

25   unclear what really was even sought then.

1          But the point is, there's a reason that the

2     parties are required to confer on this, and that's so that

3     we can even understand each other's positions in the first

4     instance and have an opportunity to work them out and find a

5     resolution.  And that step is -- a key step is being skipped

6     here, and I think that comes at the expense certainly of the

7     Court's time, and here we are trying to figure out each

8     other's position here on the fly on this call.

9          So, I would -- I wanted to note that clearly this

10    time because this is -- this pattern keeps happening and

11    it's not clear why.

12         With respect to Mr. Shore's argument now that

13    we're hearing for the first time about why Mr. Shore -- I

14    mean why Mr. Hiltz should not be allowed to testify live on

15    direct.  Again, somewhat scratching our heads here in terms

16    of what the issue actually really comes down to.

17         The documents that Mr. Shore referred to came up

18    in the course of Mr. Hiltz' deposition on Monday, we spoke

19    about that on Monday, and then -- then we indicated that we

20    would track them down and produce them.  We have done so.

21         We -- the specific documents that he referred to

22    on Monday did constitute a file folder and a little -- a --

23    it was eight documents that we produced on Monday, and they

24    were, as Mr. Hiltz testified, the file folder were

25    background materials that he had received when he first got

1    involved in the matter, and the other materials that we

2    produced were materials, as he explained, that were prepared

3    for him by his team in preparation for his deposition over

4    the week or two prior to his deposition.  Contrary to the

5    suggestion they are not -- they were not intended as trial

6    demonstratives, they were just as I said, prepared for him

7    by his team to prepare for his deposition.  That's all they

8    are and that's what he described them as and we produced

9    them.

10            Further, as we had indicated we would do, based on

11   other comments that Mr. Hiltz had referred to, he also

12   indicated that the type of market information, et cetera,

13   comps, that were included in that preparation material that

14   he had received and seen over the period of his involvement,

15   prior versions of that same kind of analysis.  So not the

16   same document, but you know, that they generate that type of

17   information within Evercore over the period of time that

18   he'd been involved.

19            So with that knowledge we had not previously

20   identified that information in connection with our efforts

21   to collect materials on these requests, but with that

22   description we were able to go back and -- back to Evercore

23   and identify the prior versions of those which were produced

24   last night after we tracked them down.

25            We made a production of 31 documents of which 28

1    were the weekly updates of that same type of information,

2    all of which is in the same form as that which Mr. Shore and

3    others received on Monday evening.

4           The other thing that -- in terms of volume, and

5    Mr. Shore is fully aware of this because we did discuss this

6    point specifically in person on Wednesday's depositions, we

7    also produced in response to their specific request and

8    being able to similarly identify them when we had the right

9    questions to ask based on Mr. Hiltz' testimony, the prior

10   and subsequent versions of the call logs that had come up in

11   our searches, and we were able to go back to Evercore and

12   ask about them, and they were again a series of updated call

13   logs.  I believe there were close to 80 of them.  But as

14   we've discussed with Mr. Shore, the 80th of them is

15   cumulative of the prior 79.  So it includes all of the

16   information.  We produced all of them to them in the

17   interest of being as fulsome as possible.  But again, we

18   have pointed them to the single of those 80 that would

19   contain all of the information that they would need to use

20   that document.

21          Now the -- I think getting to the most important

22   point, and I think what I understood, at least to the exact

23   the present time we had any indication of what the issue at

24   hand was, that the sole issue here is whether Mr. Hiltz

25   should be allowed to testify live on his direct.

1           The notion that his testimony is going to change

2     is unfounded, he has submitted a declaration and that

3     declaration has been on file since the time of the motion.

4     The parties here have had a full day of deposition with

5     Mr. Hiltz and will have an additional four hours that we had

6     already agreed to well before this -- today's CourtCall.

7     That's hence our confusion as to why we're even here.  So

8     they will have close to 11 hours or more of time with

9     Mr. Hiltz to depose him on precisely these topics with the

10    declaration in hand.

11          So the notion that anybody will be cross-examining

12    him cold at the hearing is just not supported.  We have, you

13    know, a deposition and a half at this point and it will --

14    you know, his testimony -- there is going to -- track the

15    declaration, it's not -- it's not a complicated situation.

16    There is the declaration, but he will -- it's our intention

17    to call him live so that he can make those points in person

18    and explain his basis.  But there's no -- there's no hiding

19    the ball here.  The declaration has been out there and has

20    been available for the parties to ask Mr. Hiltz about all

21    along.

22          And, you know, I don't think there's any reason to

23    limit that direct to writing, and they've had a full and

24    fair opportunity to question Mr. Hiltz about every angle of

25    his analysis at this point and through Tuesday.

1            THE COURT:  Thank you.

2            MS. O'CONNOR:  With that point I think that

3    probably makes the points for now.

4            THE COURT:  Thank you.

5            Mr. Shore?

6            MR. SHORE:  Let me just address the process point

7    that was raised at the beginning.

8            The issue actually arose because the debtors were

9    taking the position that we weren't going to get Mr. Hiltz.

10   I sent them a demand that they get back to us with the

11   answer as to whether they were going to produce Mr. Hiltz.

12   They came back and said you can have him at this time.  I

13   said, that time is not available, are you going to provide

14   someone else?  The debtors waited a day to respond to that

15   until after Your Honor was off the bench yesterday to

16   address that issue.

17           When the colloquy started about, okay, I'm willing

18   to do this if you do that, that was only a means of our

19   accepting the terms under which they were going to have him

20   appear after we file our objection, which isn't ideal for

21   us, because whatever happens in that deposition we won't be

22   able to bring to Your Honor's attention before the hearing

23   and you'll be hearing that stuff for the first time.

24           So we were making accommodation to the debtors who

25   did not, you know, produce the documents in a timely fashion

1    and the witness, you know, they only gave us one time before

2    the objection was due, which was a time no one could do.

3              With respect to the meet and confer I emailed

4    Ms. O'Connor this morning, you have my number on this, it's

5    been clear, we said, we're just not going to consent to you

6    having a witness express opinions for the first time.  It's

7    one thing to say markets will shift, it's going to be an

8    entirely different thing if he wants to say interest rates

9    are going to fall or financing is going tail off or the cost

10   of financing is going to go up by X or Y.

11             I haven't heard why we're not entitled to hear

12   that.  All I heard is his testimony going to be the same, in

13   which case they should live with his declaration.

14             THE COURT:  All right.  I know things are moving

15   quickly in this case, to say the least, and I'm certainly

16   not expecting people to -- to wait forever to inform the

17   Court that they need help.

18             I didn't think to ask, and I sort of assumed, that

19   the parties in interest all were sort of aware that the call

20   was going to be requested, which is neither here nor there

21   for today's purposes, but in the future for any further

22   calls we're going to specifically want to know what the

23   status is of any negotiations or discussions relating

24   specifically to the request and item up for the call.

25             Having said that I'm going deal with the merits.

1    I think that the debtors have provided everything that they

2    are required to provide, if not more.  Certainly with an

3    expert in traditional litigation you'd have an expert report

4    upon which to have an idea exactly about what you're going

5    to be dealing with.  As we all know that doesn't apply in

6    contested matters like this, but in substitution, if you

7    will, you have a written declaration of the witness, you

8    have documents produced, and you have the ability to take a

9    day and a half deposition.

10              Frankly, I think you've got everything you would

11   have with any witness, and certainly in effect what you

12   would have with any expert witness (indiscernible - 2:22:28)

13   traditional litigation standpoint, albeit probably as not as

14   much details as you would with a normal expert report.

15              But given that it's a contested matter and it's a

16   motion I think a written declaration, production of

17   documents, and a day and a half of deposition testimony is

18   more than sufficient for you -- well, I won't say more -- is

19   sufficient for you to be prepared for trial.

20              Now there are always inefficiencies built into to

21   trial, especially a trial on an expedited motion.  I say

22   expedited, we're on normal notice here, but obviously a lot

23   of discovery occurring in preparation for it, but a motion

24   that's being done and discovery that's being done and a lot

25   of objections that are being thrown in, all being done in a

1    very sort of quick time frame.  It is unfortunate that it is

2    the reality of litigation, especially in a bankruptcy

3    context, and it's something we're all familiar with.

4         All of the parties will do their best to put

5    together as cogent a presentation as possible (indiscernible

6    - 2:23:43), but there are risks that it'll have to be more

7    detailed perhaps than ideal, but I don't think they're

8    sufficiently severious to justify boxing the debtors into an

9    additional declaration when they've already submitted one

10   and somehow forcing them to put a witness on by written

11   declaration as opposed to live testimony.

12        So, I think and find that the situation as exists

13   today is sufficient, and I don't -- I'm not going to require

14   the debtors to take any other action other than what they've

15   agreed to do.

16        In the context of the continuance everyone is

17   continuing to be (indiscernible - 2:24:34) situation.  If

18   you get to a situation where you feel that you need a

19   continuance I would like you to confer as much as possible

20   on that, and if unable to reach an agreement to contact the

21   Court to have a telephone conference on whether or not to

22   continue the hearing, and I'd ask you to do that -- well --

23   boy -- I got to give you a continuance just to have a

24   hearing on a continuance.  I'd like you to do that, if at

25   all possible, by the end of the day Wednesday.  I will be in

1    court on Wednesday in this matter on a different issue, and

2    I don't want to bleed those two issues together.  But I can

3    also be available Thursday by telephone early in order to

4    make sure we have an idea of where we are before people hop

5    on airplanes.  Hopefully.

6            So for today's purposes I -- I'm going to sit with

7    what is already in place, and if it turns out people think

8    they need a continuance let's try to deal with that on

9    Wednesday or Thursday morning at the latest and we'll be

10   able to -- I'll be able to make a decision, you will have

11   had your discovery, you'll have your objections in, and

12   we'll have a better idea of what can and can't be

13   accomplished on the 17th.

14           In --

15           ME. WEISFELNER:  Your Honor --

16           THE COURT:  -- in the somewhat likely event that

17   we don't finish on the 17th we will be continuing the --

18   assuming we're going forward -- we'll be continuing the

19   matter the next week, but we'll deal with that at the

20   appropriate time.

21           Yes, Mr. Weisfelner?

22           ME. WEISFELNER:  Your Honor, it's Ed Weisfelner.

23   I was wondering if I could be heard briefly on a separate

24   issue?

25           THE COURT:  Well, actually --

1              ME. WEISFELNER:  We had asked --

2              THE COURT:  -- no, wait a minute.  Actually, I

3    thought I was very specific when I set up to call that I was

4    going to deal with this discreet issue only and not any

5    other issues.

6              Have you -- have you had this -- a discussion on

7    this issue with the other side?

8              ME. WEISFELNER:  We've made a request that has yet

9    to be responded to.

10             THE COURT:  All right.  Well tell me what you want

11   me to hear.

12             ME. WEISFELNER:  We had asked the debtor to insure

13   that Mr. Sawyer, the independent director on the T side, be

14   made available at trial, and we've yet to hear a response.

15   And we made that request a couple of days ago at his

16   deposition.

17             THE COURT:  Is Mr. --

18             MS. O'CONNOR:  Yes, and we -- this is Bridget

19   O'Connor for the debtors.

20             We received a note from Mr. Jonas with

21   Mr. Weisfelner's firm last night to which I almost

22   immediately responded and said that we would let them know

23   by tomorrow, which is today, and we are expecting to get

24   back to them this afternoon.

25             THE COURT:  All right.  Well, I assume that if

1    they don't agree you're going to attempt to subpoena him,

2    Mr. Weisfelner.

3            ME. WEISFELNER:  Yes, that's right.

4            THE COURT:  All right.  Well it doesn't sound like

5    it's ripe --

6            ME. WEISFELNER:  The problem that we have -- the

7    problem that we have is I'm fairly certain Mr. Sawyer is

8    outside the 100 mile limit.

9            THE COURT:  Well --

10           MS. O'CONNOR:  Your Honor, I don't think there's

11   an issue here at this point, and we will address -- we'll

12   address it -- we'll get back to them today, and rather than

13   take everyone's time with this I don't anticipate that the

14   we'll need to use Court time for this.

15           THE COURT:  All right.  I won't say anything about

16   -- I won't say anything.  If you need me call me, confer if

17   you can.  The Court is closed on Monday, so the next time

18   we'll be available is Tuesday.  I'm here 'til approximately

19   4 p.m. today, so if any other emergencies arise please

20   consult as much as possible, but if you need emergency

21   relief you've got probably about another hour, hour and 15

22   minutes today if there are any issues that arise, otherwise

23   it'll be Tuesday.

24           All right, we're adjourned.

25           ME. WEISFELNER:  Thank you.

1          MR. SHORE:  Thank you, Your Honor.

2          MS. O'CONNOR:  Thank you, Your Honor.

3      (Whereupon, these proceedings concluded at 2:29 p.m.)

4

5                          * * * * *

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 22

1                              I N D E X

2

3                              RULINGS

4                                              Page      Line

5    Court's Findings                           17        2

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 23

1                    C E R T I F I C A T I O N

2

3    I, Dawn South, certify that the foregoing transcript is a

4    true and accurate record of the proceedings.

5

6    Dawn South

_____

7    Dawn South

     AAERT Certified Electronic Transcriber CET**D-408

8

9    Veritext

10   330 Old Country Road

11   Suite 300

12   Mineola, NY 11501

13

14   Date:  October 10, 2014

15

16

17

18

19

20

21

22

23

24

25