# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) ) | Chapter 11 |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) ) ) | Case No. 14-10979 (CSS) |
| Debtors. | ) ) ) | (Jointly Administered) |

## SECOND SUPPLEMENT TO THE APPLICATION OF ENERGY FUTURE HOLDINGS CORP., ET AL., FOR ENTRY OF AN ORDER AUTHORIZING THE DEBTORS TO RETAIN AND EMPLOY ERNST & YOUNG LLP AS PROVIDERS OF TAX ADVISORY AND INFORMATION TECHNOLOGY SERVICES EFFECTIVE *NUNC PRO TUNC* TO THE PETITION DATE

The above-captioned debtors and debtors in possession (collectively, the "Debtors") hereby file this second supplement (this "Second Supplement") to the *Application of Energy Future Holdings Corp, et al., for Entry of an Order Authorizing the Debtors to Retain and Employ Ernst & Young LLP as Providers of Tax Advisory and Information Technology Services Effective* Nunc Pro Tunc *to the Petition Date* [D.I. 655] (the "Application").[2] In support of this Second Supplement, the Debtors submit the *Declaration of Stephen A. Thiel in Support of the Second Supplement to the Application of Energy Future Holdings Corp., et al., for Entry of an Order Authorizing the Debtors To Retain and Employ Ernst & Young LLP as Providers of Tax Advisory and Information Technology Services Effective* Nunc Pro Tunc *to the Petition Date* (the

---

[1] The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, for which joint administration has been granted, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

[2] Capitalized terms used but not otherwise defined herein are used as defined in the Application.

"Thiel Declaration"), filed contemporaneously herewith. In further support of this Second Supplement, the Debtors respectfully state as follows:

## Supplement

1. On May 29, 2014, the Debtors filed the Application requesting that the Court authorize the retention of Ernst & Young LLP ("EY") as providers of tax advisory and information technology services in accordance with the terms and conditions set forth in the MSA and effective *nunc pro tunc* to the Petition Date. The Debtors attached as **Exhibit C** through **Exhibit G** of the Application the master services agreement, by and between EY and EFH Corporate Services Company, dated June 10, 2010 (the "MSA"), and certain related statements of work (each, an "SOW"), referred to collectively therein as the Engagement Letter.

2. As set forth in further detail in the MSA and the related statement of work, by and between EY and EFH Corporate Services Company, dated August 25, 2014 (the "Property Tax Software SOW"), attached hereto as **Exhibit J**, EY has agreed to assist EFH Corporate Services Company with identifying, evaluating and selecting a fully integrated property tax software system for its affiliates, Luminant Big Brown Mining Company LLC, Luminant Energy Company LLC, Luminant Energy Trading California Company, Luminant ET Services Company, Luminant Generation Company LLC, Luminant Holding Company LLC, Luminant Mineral Development Company LLC, Luminant Mining Company LLC, and Luminant Renewables Company LLC (collectively, the "Luminant Entities"), as well as provide to EFH Corporate Services Company permissible support services as EFH Corporate Services Company works with their chosen third party software vendor to implement such software (the "Property Tax Software Services"), subject to approval by the Court of the Application, the *Supplement to the Application of Energy Future Holdings Corp, et al., for Entry of an Order Authorizing the*

*Debtors to Retain and Employ Ernst & Young LLP as Providers of Tax Advisory and Information Technology Services Effective* Nunc Pro Tunc *to the Petition Date* [D.I. 1885], this Second Supplement, and the terms and conditions of the MSA and the Property Tax Software SOW.[3] Subject to the detailed description in the MSA and the Property Tax Software SOW, a summary description of the Property Tax Software Services is set forth below.

## Scope of Services

3.  As set forth in detail in the MSA, EY will perform certain services as set forth in specific statements of work executed pursuant to the MSA.

4.  As set forth in detail in the Property Tax Software SOW, EY will assist and support EFH Corporate Services Company with identifying, evaluating and selecting a fully integrated property tax software system for its affiliates, the Luminant Entities. Such assistance and support may include:

    a.  Providing EFH Corporate Services Company with a comparison of the costs, benefits, and additional support structures necessary for each third party system that EFH Corporate Services Company chooses to evaluate. These cost factors are expected to include the additional costs of implementation including any data conversion costs, middleware requirements, or other costs necessary to have a fully functioning system. Qualitative factors will also be identified that include ease of use, integration, and compatibility with existing systems, risks associated with the financial stability of the firm offering the software, service support, and history in power generation/distribution implementation.

    b.  Reviewing and making recommendations regarding the data to be identified and relayed to the core property tax system.

    c.  Reviewing EFH Corporate Services Company's current internal property tax processes and making recommendations, as applicable, focused on internal controls and that the selected program adheres to best practices for proactive management of property taxes. EY expects that this review will

---

[3] To the extent that this Second Supplement and the terms of the MSA and/or the Property Tax Software SOW are inconsistent, the terms of the MSA and/or the Property Tax Software SOW shall control.

          encompass the processes for both real and personal property asset tracking and management of property tax liabilities, as well as focus on identifying areas where process flow might be enhanced to improve efficiencies and/or accounting controls.

    d.    Providing to EFH Corporate Services Company permissible support services as EFH Corporate Services Company works with their chosen third party software vendor to implement such software.

5. EY's project deliverables under the Property Tax Software SOW may include flow charts, tables, evaluation rubrics, or other written and/or oral comments related to the competitor evaluations and review of internal processes as identified by EY through the procedures performed above. Deliverables may also include any additional work product that EY believes would be of benefit to EFH Corporate Services Company in connection with the work outlined above.

## Professional Compensation

6. Pursuant and subject to the detailed descriptions contained in the Property Tax Software SOW, EY intends to charge EFH Corporate Services Company for the services rendered in connection with the Property Tax Software SOW based on the time that EY's professionals spend performing them, billed at the hourly rate designated in the table below for each such individual. EFH Corporate Services Company will also pay any potential value-added taxes (VAT), sales taxes, and other indirect taxes incurred in connection with the delivery of the services rendered in connection with the Property Tax Software SOW, including any such taxes and related administrative costs that result from billing arrangements specifically requested by EFH Corporate Services Company.

| Title | Rate Per Hour |
|---|---|
| Partner (more than 10 years) | $582 |
| Partner (6th through 10th year) | $543 |

| | |
|---|---|
| Partner (1st through 5th year) | $516 |
| Executive Director | $480 |
| Senior Manager | $470 |
| Manager | $360 |
| Senior (3rd through 4th+ year) | $285 |
| Senior (1st through 2nd year) | $234 |
| Staff (2nd+ year) | $183 |
| Staff (1st year) | $105 |
| Intern/CSA | $105 |

7. EY's hourly rates are subject to annual adjustment each July 1.

8. This project is not authorized to exceed $150,000. Any extension or increase in spending will require amendment to the Property Tax Software SOW or similar written agreement between EY and EFH Corporate Services Company (e.g., e-mails) and will be subject to the approval of the Court.

9. In addition to the fees set forth above, the Debtors shall reimburse EY for any direct expenses incurred in connection with EY's retention in these chapter 11 cases and the performance of the services set forth in the MSA and the Property Tax Software SOW. EY's direct expenses shall include, but not be limited to, reasonable and customary out-of-pocket expenses for items such as travel, meals, accommodations, and other expenses specifically related to this engagement.

10. The MSA also includes language substantially similar to the following:

> If we are required by applicable law, legal process or government action to produce information or personnel as witnesses with respect to the Services or this Agreement, you shall reimburse us for any professional time and expenses (including reasonable external and internal legal costs) incurred to respond to the request,

unless we are a party to the proceeding or the subject of the investigation.

### Term of Engagement

11. EY's provision of the Property Tax Software Services to the Debtors is contingent upon the Court's approval of the terms and conditions set forth in the MSA and the Property Tax Software SOW.

### Disclosure of Connections

12. To the best of the Debtors' knowledge and except to the extent set forth in the Thiel Declaration, EY does not hold nor represent any interest materially adverse to the Debtors in the matters for which EY is proposed to be retained. The proposed employment of EY is not prohibited by or improper under Bankruptcy Rule 5002. Accordingly, the Debtors believe that EY is eligible for retention by the Debtors under the Bankruptcy Code.

13. At the Debtors' request, following the Petition Date and prior to Court approval of EY's engagement in these cases, EY has provided, and may continue to provide in its sole discretion, certain services to the Debtors. Thus, EY requests that this retention be authorized *nunc pro tunc* to the Petition Date, the date on which EY began providing postpetition services to the Debtors.

14. EY intends to apply to the Court for payment of compensation and reimbursement of expenses in accordance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the MSA, and the Property Tax Software SOW, and pursuant to any additional orders or procedures that may be established by the Court in these chapter 11 cases.

### Notice

15. The Debtors shall provide notice of this Second Supplement on the date hereof via U.S. first class mail to: (a) the U.S. Trustee; (b) (i) the entities listed on the Consolidated List

of Creditors Holding the 50 Largest Unsecured Claims filed pursuant to Bankruptcy Rule 1007(d); and (ii) proposed counsel to the Creditors' Committee; (c) Wilmington Trust, N.A., in its capacity as administrative agent under the TCEH first lien credit agreement and collateral agent under the TCEH intercreditor agreements and counsel thereto; (d) Bank of New York Mellon Trust Company, N.A., in its capacity as indenture trustee under: (i) the TCEH unsecured pollution control revenue bonds; and (ii) the EFCH 2037 Notes due 2037, and counsel thereto; (e) American Stock Transfer & Trust Company, LLC, in its capacity as indenture trustee under: (i) the 9.75% EFH senior unsecured notes due 2019; (ii) the 10.0% EFH senior unsecured notes due 2020; (iii) the 10.875% EFH LBO senior unsecured notes due 2017; (iv) the 11.25%/12.0% EFH LBO toggle notes due 2017; (v) the 5.55% EFH legacy notes (series P) due 2014; (vi) the 6.50% EFH legacy notes (series Q) due 2024; and (vii) the 6.55% EFH legacy notes (series R) due 2034, and counsel thereto; (f) Computershare Trust Company, N.A. and Computershare Trust Company of Canada, in their capacities as indenture trustee under: (i) the 11.0% EFIH senior secured second lien notes due 2021; and (ii) the 11.75% EFIH senior secured second lien notes due 2022, and counsel thereto; (g) UMB Bank, N.A. in its capacity as indenture trustee under: (i) the 9.75% EFIH senior unsecured notes due 2019; and (ii) the 11.25%/12.25% EFIH senior toggle notes due 2018, and counsel thereto; (h) BOKF, NA, dba Bank of Arizona, in its capacity as indenture trustee under 11.50% TCEH senior secured notes due 2020, and counsel thereto; (i) CSC Trust Company of Delaware in its capacity as indenture trustee under: (i) the 6.875% EFIH senior secured notes due 2017; and (ii) the 10.0% EFIH senior secured notes due 2020, and counsel thereto; (j) Law Debenture Trust Company of New York in its capacity as indenture trustee under: (i) the 10.25% TCEH senior unsecured notes due 2015; and (ii) the 10.50%/11.25% TCEH senior toggle notes due 2016, and counsel thereto;

(k) Wilmington Savings Fund Society, FSB in its capacity as indenture trustee under the 15.0% TCEH senior secured second lien notes due 2021, and counsel thereto; (l) counsel to certain holders of claims against the Debtors regarding each of the foregoing described in clauses (c) through (k); (m) the agent for the TCEH debtor-in-possession financing facility and counsel thereto; (n) the agent for the EFIH debtor-in-possession financing facility and counsel thereto; (o) counsel to certain holders of equity in Texas Energy Future Holdings Limited Partnership; (p) counsel to the Ad Hoc Committee of TCEH Unsecured Noteholders; (q) counsel to the Ad Hoc Committee of TCEH Second Lien Noteholders; (r) Oncor Electric Delivery Holdings Company LLC and counsel thereto; (s) Oncor Electric Delivery Company LLC and counsel thereto; (t) the Securities and Exchange Commission; (u) the Internal Revenue Service; (v) the Office of the United States Attorney for the District of Delaware; (w) the Office of the Texas Attorney General on behalf of the Public Utility Commission of Texas; (x) counsel to the Electric Reliability Council of Texas; and (y) those parties who have requested notice pursuant to Bankruptcy Rule 2002.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

[*Remainder of page intentionally left blank.*]

WHEREFORE, the Debtors respectfully request that the Application be amended to include the Property Tax Software SOW as **Exhibit J** thereto.

Wilmington, Delaware
Dated: October 14, 2014                         */s/ Paul M. Keglevic*
                                                Paul M. Keglevic
                                                Executive Vice President, Chief Financial Officer, and Co-Chief
                                                Restructuring Office of EFH Corp., EFIH, and TCEH LLC

## **Exhibit J**

**Property Tax Software SOW**


Building a better
working world

# ATTACHMENT 1
# SCHEDULE A-13

## PROPERTY TAX COMPLIANCE SOFTWARE IDENTIFICATION AND IMPLEMENTATION SUPPORT SERVICES

This Schedule A, dated August 25, 2014 (this "Schedule"), is made by Ernst & Young LLP ("CONTRACTOR") and EFH Corporate Services Company ("COMPANY"), pursuant to the Master Services Agreement, dated June 10, 2010, as amended (the "Agreement").

Except as otherwise set forth in this Schedule, this Schedule incorporates by reference, and is deemed to be a part of, the Agreement. The additional terms and conditions of this Schedule shall apply only to the tax advisory Work covered by this Schedule and not to Work covered by any other Statement of Work pursuant to the Agreement. Capitalized terms used, but not otherwise defined, in this Schedule shall have the meanings in the Agreement.

### SCOPE OF WORK AND DELIVERABLES

The Work will be performed in accordance with the specifications and instructions, if any, attached hereto and identified in the List of Attachments. The Work will be scheduled at the direction of COMPANY's Contract Coordinator as identified herein.

BACKGROUND

The primary objective for this engagement is to assist COMPANY with identifying, evaluating and selecting a fully integrated property tax software system for its affiliate, Luminant, as well as provide to COMPANY permissible support services as COMPANY works with their chosen 3rd party software vendor to implement such software. COMPANY has indicated that this system must enable Luminant to provide proactive management of its property tax liabilities, and it is intended that this core property tax system provide adequate accounting controls while managing property tax liabilities for both real and personal property. COMPANY has also indicated that it must integrate information from the fixed asset system, provide tools for filing annual property tax returns, track assessment notices, tax bills and appeals, and provide calendar functions to support workflow and cash flow/accrual estimates. Additionally, COMPANY has indicated that the selected core property tax system allow for the integration of a data capture (Captiva) and enterprise content management systems (Documentum) to manage the automated scanning and handling of assessment notices and tax bills.

COMPANY has indicated that a new core property tax compliance system must be selected, implemented, tested and fully operational by March 1, 2015. In addition, other systems such as data extraction and enterprise content management (ECM) systems may also be integrated with the core property tax compliance system but fully implemented and tested after March 1, 2015. It is anticipated that the identification, evaluation and selection of data extraction and ECM systems will be done parallel with the installation of the core property tax system. Accordingly, the following steps will need to be accomplished in the critical path of the core property tax compliance system in order to accomplish the March 1, 2015 goal:


Building a better
working world

- **Core project kickoff** – August 25th, 2014
- **Evaluation of core software** – August 25, 2014 through September 5, 2014    (2 weeks)
    - Discovery, developing requirements, RFP, demos, follow up Q&A
- **Selection of core software** – September 5, 2014 through September 12, 2014    (1 week)
    - RFP review, competitor comparison matrix
- **Contract** – September 12, 2014 through September 26, 2014    (2 weeks)
    - Selection, contract, redline exchange, contract finalization
- **Core implementation** – September 29, 2014 through January 16, 2015    (17 weeks)
    - Conference calls, site visits, data integration, training
- **Core testing and rollout** – January 19, 2015 through February 13, 2015    (4 weeks)
- **Data/OCR implementation** – February 16, 2015 through April 10, 2015    (8 weeks)
- **Data/OCR testing and rollout** – April 13, 2015 through May 22, 2015    (6 weeks)
- **"Go Live" for full system** – May 29, 2015    (1 week)
- **Follow-up** – Change management, review after implementation    (As Needed)

SCOPE OF WORK AND DELIVERABLES

CONTRACTOR will assist and support COMPANY with identifying, evaluating and selecting a fully integrated property tax software system for its affiliate, Luminant, including:

- Providing COMPANY with a comparison of the costs, benefits and additional support structures necessary for each third party system that COMPANY chooses to evaluate. These cost factors are expected to include the additional costs of implementation including any data conversion costs, middleware requirements or other costs necessary to have a fully functioning system. Qualitative factors will also be identified that include ease of use, integration and compatibility with existing systems, risks associated with the financial stability of the firm offering the software, service support and history in power generation/distribution implementation.
- Reviewing and making recommendations regarding the data to be identified and relayed to the core property tax system.
- Reviewing COMPANY's current internal property tax processes and making recommendations, as applicable, focused on internal controls and that the selected program adheres to best practices for proactive management of property taxes. CONTRACTOR expects that this review will encompass the processes for both real and personal property asset tracking and management of property tax liabilities, as well as focus on identifying areas where process flow might be enhanced to improve efficiencies and/or accounting controls.
- Providing to COMPANY permissible support services as COMPANY works with their chosen 3rd party software vendor to implement such software.

Deliverables provided by CONTRACTOR to COMPANY may include flow charts, tables, evaluation rubrics or other written and/or oral comments related to the competitor evaluations and review of internal processes as identified by CONTRACTOR through the procedures performed above. Deliverables may also include any additional work product that CONTRACTOR believes would be of benefit to COMPANY in connection with the scope of Work outlined above.



Building a better
working world

## PROJECT ASSUMPTIONS

- CONTRACTOR may make recommendations to COMPANY management within the scope of the Work provided. COMPANY will be responsible for any decisions made relative to these recommendations.
- CONTRACTOR's key personnel designated below will not have any COMPANY titles that could convey a client management role and/or employee role.
- COMPANY is responsible for implementation and utilization of recommendations and templates.
- COMPANY will identify the appropriate personnel to participate in interviews and workshops and team members required for meetings will be available when scheduled. In the event of scheduling conflicts, backup interviews will be arranged by COMPANY to avoid timeline slippages.
- COMPANY will make reasonable efforts to provide access to existing/requested relevant documentation within a reasonable timeframe (3 business days).
- COMPANY will utilize the services of the 3rd party property tax compliance software vendor to implement the chosen software package. Thus, CONTRACTOR will only provide permissible property tax advisory and related implementation support services.
- COMPANY will utilize the services of SAK Consulting to assist in identifying technical specifications and evaluating vendor capabilities for the core property tax management system. It is expected that SAK Consulting will also assist in evaluating the architecture and compatibility of this system to integrate with both the data capture (Captiva) and enterprise content management systems (Documentum) throughout the process up to, and including, the targeted completion of the fully integrated and functional system.

## WORK SITE

The Work Site will be the following locations:

CONTRACTOR Offices:

2323 Victory Avenue
Suite 2000
Dallas, TX 75219

999 3rd Avenue
Suite 3500
Seattle, WA 98104

COMPANY Office:

1601 Bryan Street
Dallas, TX 75201

EFH Corporate Services Company
Page 3 of 8

A member firm of Ernst & Young Global Limited


Building a better
working world

## SCHEDULE

Work will start on or about August 25, 2014, and is expected to be completed on or about June 30, 2015. The scheduling of Work will be coordinated with COMPANY's Contract Coordinator.

Contract Coordinator: Carla Howard       Phone Number: (214) 812-2384

### COMPENSATION, INVOICES AND PAYMENT

Article 5 of the Agreement addresses CONTRACTOR fees and expenses generally.

As full compensation for the satisfactory performance by CONTRACTOR of the Work authorized pursuant to this Schedule, COMPANY will compensate CONTRACTOR as follows.

COMPANY shall pay fees for the Work based on the time that CONTRACTOR professionals spend performing them, billed at the hourly rate designated in the table below for each such individual.

| Level | Rate |
| --- | --- |
| Partner | |
| More than 10 years | 582 |
| 6th through 10th year | 543 |
| 1st through 5th year | 516 |
| Executive Director | 480 |
| Senior Manager | 470 |
| Manager | 360 |
| Senior | |
| 3rd through 4th+ year | 285 |
| 1st through 2nd year | 234 |
| Staff | |
| 2nd+ year | 183 |
| 1st year | 105 |
| Intern/CSA | 105 |

COMPANY will reimburse CONTRACTOR for expenses incurred in connection with the performance of the Work, in accordance with COMPANY's Reimbursable Expense Policy (as provided in Attachment 5 of the Agreement).

COMPANY shall also pay any potential value-added taxes (VAT), sales taxes, and other indirect taxes incurred in connection with the delivery of the Work, including any such taxes and related administrative costs that result from billing arrangements specifically requested by COMPANY. CONTRACTOR will bill COMPANY for CONTRACTOR fees, expenses, and applicable taxes or other charges, if any, on a monthly basis.



Building a better working world

This project is not authorized to exceed $150,000. Any extension or increase in spend will require amendment to this Schedule or similar written agreement between CONTRACTOR and COMPANY (e.g., e-mails) and will be subject to the approval of the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"). This estimate assumes there will be travel to CONTRACTOR and/or COMPANY sites.

The rates specified in this Schedule will remain in effect with respect to, and until completion of the Work authorized pursuant to this Schedule.

Any fees for the Work under this Schedule assume that COMPANY will timely provide, or cause to be provided, to CONTRACTOR all appropriate information and assistance, and that the scope and complexity of such Work is consistent with CONTRACTOR's prior discussions, as well as the description thereof above. If, during the term of this Schedule, CONTRACTOR determines that any additional work is necessary, whether at COMPANY's request or because the complexity of the project increases, CONTRACTOR will promptly contact COMPANY to discuss any adjustments to the scope of Work or CONTRACTOR's fees.

In managing the Project within the resource and time estimates outlined in this Schedule, it is imperative that CONTRACTOR and COMPANY personnel work together to manage project scope and staffing.

All invoices shall be sent to:

> EFH Corporate Services
> 1601 Bryan Street
> Dallas, TX 75201
> Attention: Carla Howard

### KEY PERSONNEL

CONTRACTOR agrees that the individuals listed below will be assigned to perform the Work authorized by this Schedule. CONTRACTOR will employ all reasonable efforts for such individuals to remain so assigned until such Work is accepted by COMPANY; provided, however, that in the event that any such individuals are reassigned by CONTRACTOR or otherwise become unavailable to perform such Work, CONTRACTOR will provide, by way of replacement, individuals with reasonably equivalent experience.

> Person 1: Sandra Wells, Partner
> Person 2: Keith Anderson, Partner
> Person 3: Kristi Poteet, Partner
> Person 4: Bob Henderson, Executive Director
> Person 5: Sam Kinslow, Executive Director
> Person 6: Todd Heinrichs, Senior Manager
> Person 7: Andrew Davis, Senior Manager
> Person 8: Jessica Montgomery, Manager



Building a better working world

**CONTRACTOR PERSONNEL AUTHORIZED TO ATTEND MEETINGS WITH COMPANY PERSONNEL PERTAINING TO THE WORK**

Person 1: Sandra Wells, Partner
Person 2: Keith Anderson, Partner
Person 3: Kristi Poteet, Partner
Person 4: Bob Henderson, Executive Director
Person 5: Sam Kinslow, Executive Director
Person 6: Todd Heinrichs, Senior Manager
Person 7: Andrew Davis, Senior Manager
Person 8: Jessica Montgomery, Manager

**PRIVILEGES CLAIMED BY COMPANY, WITH RESPECT TO DELIVERABLES OR OTHER DOCUMENTS HEREAFTER DESIGNATED BY COMPANY**

_____ ATTORNEY-CLIENT COMMUNICATION

_____ ATTORNEY WORK PRODUCT

✓ TAX ADVISOR

_____ OTHER:_____

### LIST OF ATTACHMENTS

COMPANY and CONTRACTOR agree that the following described attachments, if any, are incorporated herein in their entirety as fully as completely rewritten herein.

I. None

Work not specified above may be authorized only through a separate Statement of Work, or through an amendment or supplement to this Schedule.

**ACCEPTANCE CRITERIA AND ADDITIONAL TERMS AND CONDITIONS APPLICABLE TO THE WORK**

COMPANY will not, and COMPANY will not permit others to, quote or refer to any Reports, any portion, summary or abstract thereof, or to CONTRACTOR or any other CONTRACTOR Firm, in any document filed or distributed in connection with (i) a purchase or sale of securities to which the United States or state securities laws ("Securities Laws") are applicable, or (ii) periodic reporting obligations under Securities Laws. COMPANY will not contend that any provisions of Securities Laws could invalidate any provision of this Schedule.

The Work is advisory in nature. CONTRACTOR will not render an assurance report or assurance opinion under the Agreement, nor will the Work constitute an audit, review, examination, or other form of attestation as those terms are defined by the American Institute of Certified Public Accountants. CONTRACTOR will not conduct a review to detect fraud or illegal acts.

EFH Corporate Services Company
Page 6 of 8

A member firm of Ernst & Young Global Limited


Building a better
working world

If CONTRACTOR receives a request from a third party for any information relating to CONTRACTOR's Tax Advice, CONTRACTOR will notify COMPANY and will not release any such information unless COMPANY has executed an appropriate written consent authorizing such disclosure and the third party has executed a nonreliance and release letter acceptable to us in form and substance.

The Work may involve CONTRACTOR's review of, or advice relating to, agreements to which COMPANY is a party with, or products produced by, a third party (a "CONTRACTOR Client") for which CONTRACTOR (or another CONTRACTOR Firm) performs, or has performed, services unrelated to the agreements or products. On behalf of COMPANY and COMPANY's affiliates, COMPANY acknowledge and consent to CONTRACTOR performance of such services for any CONTRACTOR Client, and agree that neither COMPANY nor COMPANY's affiliates will make a claim that these circumstances present a conflict of interest, real or perceived, for us or any other CONTRACTOR Firm. If, however, CONTRACTOR'S services for a CONTRACTOR Client directly relate or related to the agreements or products, CONTRACTOR will seek the consent of both COMPANY and the CONTRACTOR Client to the continued performance of the Work. In any event, CONTRACTOR confirms that, except as COMPANY and the CONTRACTOR Client otherwise agree in writing, COMPANY respective confidential or privileged information will remain confidential to that client in accordance with applicable professional standards. Notwithstanding anything to the contrary in the Agreement or this Schedule, CONTRACTOR does not assume any responsibility for any third-party products, programs or services, their performance or compliance with COMPANY's specifications or otherwise.

In performing the Work, CONTRACTOR will not take any action that CONTRACTOR reasonably believes could impair CONTRACTOR's independence with respect to any of CONTRACTOR's audit clients or those of other CONTRACTOR Firms. For example, CONTRACTOR will not instruct, supervise or contract with an entity, without having first determined that such action would not impair CONTRACTOR's independence.

CONTRACTOR will base any comments or recommendations as to the functional or technical capabilities of any products in use or being considered by COMPANY solely on information provided by COMPANY's vendors, directly or through COMPANY. CONTRACTOR is not responsible for the completeness or accuracy of any such information or for confirming any of it.

### RESERVATION OF RIGHTS

Notwithstanding anything herein to the contrary, COMPANY will compensate CONTRACTOR for the Work (a) only after CONTRACTOR's engagement by COMPANY has been approved by the "Bankruptcy Court pursuant to section 327(a) of the Bankruptcy Code and (b) in accordance with any order entered by the Bankruptcy Court governing the compensation or reimbursement of fees of parties employed pursuant to section 327(a) of the Bankruptcy Code.



Building a better
working world

| ERNST & YOUNG LLP | EFH CORPORATE SERVICES COMPANY |
|---|---|
| By: _[signature]_ | By: _[signature]_ |
| Name: Keith W. Anderson | Name: MEAGAN HORN |
| Title: Partner | Title: Assoc. General Tax Counsel |
| Date: 9/3/2014 | Date: 9/5/14 |

A member firm of Ernst & Young Global Limited