*Eagle Mountain 565*

*Dated 5-6-52*

WATER CONTRACT *& Lease Agreement*

BETWEEN

TARRANT COUNTY WATER CONTROL AND IMPROVEMENT DISTRICT NUMBER 1

AND

TEXAS ELECTRIC SERVICE COMPANY

THE STATE OF TEXAS)
                  )
COUNTY OF TARRANT )

THIS CONTRACT AND AGREEMENT, entered into this 6th day of $\overline{\text{May}}$, 1952, by and between TEXAS ELECTRIC SERVICE COMPANY, a Texas corporation, acting by and through its duly authorized officers, hereinafter called Company, and TARRANT COUNTY WATER CONTROL & IMPROVEMENT DISTRICT NO. 1, a Texas municipal corporation, acting by and through its duly authorized officers, hereinafter called District,

### W I T N E S S E T H :

WHEREAS, Company is an electric utility corporation supplying electric service in Tarrant County, Texas, and other counties within the State of Texas and has generating equipment located in Tarrant County, Texas; and

WHEREAS, Company is planning the installation of additional generating equipment in Tarrant County to meet increasing requirements for electric service; and

WHEREAS, Company has acquired a tract of land in Tarrant County having frontage on and along the shores of Eagle Mountain Lake as described in Exhibit A attached hereto and made a part hereof, and as shown on the map marked Appendix B, Sheets 1 and 2 attached hereto and made a part hereof, and Company plans to construct a steam-electric generating station on such property; and

WHEREAS, District owns real property, a dam and appurtenances, the water and relevant water rights pertaining to a lake that has been created on the West Fork of Trinity River north of Fort Worth, Texas, such lake being known as Eagle Mountain Lake; and

WHEREAS, District as one of its purposes created Eagle Mountain Lake for the conservation and beneficial use of waters of Trinity River; and

WHEREAS, Company desires to use raw, untreated water from Eagle Mountain Lake in the operation of its steam-electric generating station to be situated on its land described in Exhibit A and Appendix B attached hereto; and

WHEREAS, the use proposed by Company is one of the uses

-2-

for which Eagle Mountain Lake was created;

NOW, THEREFORE, for and in consideration of the premises and the covenants and obligations hereinafter recited to be mutually kept and performed, the parties contract, covenant and agree as follows:

1.

District grants to Company and its successors and assigns, subject to the conditions hereinafter set out, the right to withdraw from Eagle Mountain Lake and use as much raw untreated water as may be needed by the Company from time to time in the operation of its steam-electric generating stations to be erected on Company's property as herein described.  In this connection, however, it is expressly understood and agreed:

a)  The first obligation of the District under Article 7471 of the Revised Civil Statutes of Texas is to provide water for domestic and municipal uses within the District, and hence the right which the District hereby grants to the Company to withdraw and use water from Eagle Mountain Lake is subject to said first obligation of the District and otherwise to the provisions of Article 7471.

b)  That the right which the District hereby grants to the Company to withdraw and use water from Eagle Mountain Lake is not an unlimited nor an exclusive right but shall to the extent permitted by law be superior to the right of any future purchaser of water from the District for use other than domestic and municipal uses as defined in said Article 7471.

c)  The District does not guarantee the quality or condition of the raw water or to keep the level of Eagle Mountain Lake at any particular elevation and except as hereinabove provided as to preferential use does not guarantee the quantity of the water.

2.

This contract shall continue in effect for a period of fifty (50) years and may be renewed at the option of the Company for an additional period of fifty (50) years provided the payments hereinafter set out are made by Company to District and the Company otherwise keeps and maintains the covenants herein by it to be kept and observed.  Company shall give District written signed notice of its intention to exercise

-3-

the option for a renewal of the contract for an additional
period of fifty (50) years not less than two (2) years prior
to the expiration date of the initial contract period.

3.

Company shall at its own expense construct for its
exclusive use all the necessary works suitable and necessary
for the withdrawal and return of said water from Eagle Mountain
Lake and all necessary or desirable protective works either on
land of Company or on land belonging to District immediately
adjacent to Company's land.  The design of Company's withdrawal,
return and protective works shall be subject to the approval of
District's engineer.  It is recognized by the parties hereto
that the protective works are to be designed and installed for
the express purpose of preventing unauthorized persons from
entering the water and land areas by boats or otherwise, near
the points of withdrawal or return of water, and that such
protection is in the best interest and for the safety of the
general public.

4.

The major portion of the water to be withdrawn from
Eagle Mountain Lake by Company shall be used for circulation
through Company's condensers and heat interchangers and other
similar equipment and water so circulated through Company's
equipment will be returned to the lake without detrimental
chemical additions or other pollution.  Company covenants that
Eagle Mountain Lake will not be subjected to objectionable
forms or degree of contamination due to Company's use of the
lake and that Company's operations hereunder shall be in com-
pliance with all applicable state law and valid regulations
of the District, including the provision relating to sanitation
and pollution as set out in ordinance heretofore adopted by
the District on May 4, 1937, to which reference is expressly here
made.  District shall be privileged to have its duly appointed
representatives inspect the generating station and its premises
at any and all times to ascertain whether or not Company is
conforming to and complying with such covenants.  Company agrees
to take appropriate steps to remedy violation of the sanitary
and pollution requirements as provided herein upon written
notice there of by the District.

5.

Company is hereby granted the right to use an area in
the lake mutually agreed upon with District, such area being
identified approximately on Appendix B, Sheet 1 by two legends
"Protective Barrier".  The area referred to is all of the area

EXHIBIT "B" Page 4 of 17

-4-

on the land side of the protective barriers.  District agrees
to designate such areas as "Forbidden Zones" in accordance with
the provisions for such zones of ordinance heretofore adopted
by District on May 4, 1937, to which reference is expressly
here made.  Company shall have the right to guard and patrol
such "Forbidden Zones" in order to protect the same from
trespassers or use by the public to the extent that Company
shall deem advisable or necessary to the extent permitted by
law in order to provide adequate protection to Company's prop-
erty.  Representatives and agents of the District will have
the right of access to "Forbidden Zones".  Company is expressly
granted the right under this agreement to fence off by means
of buoys, cable, or other appropriate means, the defined area
of the lake which is hereby agreed upon, such area being shown
approximately on Appendix B, Sheet 1, area identified by legend
"Protective Barrier" and made a part hereof.  Company agrees to
install, maintain and operate adequate lighting facilities for
buoys and such other obstructions as may be erected by Company
in the lake.  The design of buoys and lighting facilities shall
be subject to the approval of District's engineer.

6.

        Company represents that it plans to construct a steam-
electric generating station on the tract herein described for
operation in 1954, said station to have an initial capacity
of approximately 100,000 kilowatts and that additional steam-
electric generating capacity may be added in the future.  Should
Company for any reason fail to complete an electric generating
station by 1954, the rights herein granted shall not be affected
thereby so long as the payments herein provided for are made
and the Company otherwise keeps and maintains the covenants
herein by it to be kept and observed and the contract is not
cancelled as hereinafter provided.

        Upon the execution of this contract Company has paid
District the sum of $666.66, the receipt of which is hereby
acknowledged and confessed by District, and Company obligates
itself to pay to District at the offices of the District in the
City of Fort Worth, Texas, on or before the 31st day of December,
1952, and the 31st day of December of each year thereafter the
sum of $1,000.00 for the purpose of preserving and continuing
the rights herein granted until exercised.  The payment pro-
vided for in this paragraph shall cease upon the completion of
said plant and the payments provided for in the next succeeding
paragraph shall commence and shall continue as therein provided.

7.

        Company shall pay District at the office of the District

-5-

in the City of Fort Worth, Texas, for the use of the facilities
and water and for the rights herein set out as follows:

(1) $5,600.00 per year per 100,000 kilowatts of steam-
electric generating capacity, with proportionate payments for
installation of greater or lesser capacity installed after the
initial installation. Such capacity shall be the sum of the
manufacturer's guaranteed name plate capacity ratings in kilo-
watts of all steam-electric generating units installed in said
generating station. Representative or agents of the District
shall have access to the station for the purpose of checking the
installed name plate capacity. Minimum annual payment shall be
$5,600.00. Payment hereunder shall date from the date the first
steam-electric generating unit goes into operation and shall be
for the prorata part of the first year and for the full year
thereafter. The same proration and payment shall apply for such
subsequent steam-electric generating capacity as may be installed.
Payment shall be made on or before the 31st day of December of
each year, the first payment to be made on the 31st day of
December following the installation and beginning of operation
of the first steam-electric generating unit. Payment herein
provided for shall cover the use and consumption of water from
Eagle Mountain Lake for the purposes necessary in the sole
judgement of Company in the operation and maintenance of the
steam-electric generating plant and the necessary facilities
in connection therewith subject, however, to the limitations
set out in paragraph 1 hereof.

It is recognized by both parties hereto that the opera-
ting expenses of the District in later years might be more or
less than at the time of the execution of this contract. It is
agreed that the annual operating expenses of the District at
the time of the execution of this contract are $80,000.00. It
is further agreed that 20% of the annual payment of $5,600.00
or $1,120.00 represents annual operating expenses, and $4,480.00
represents fixed costs of the District, which fixed costs will
not vary appreciably from year to year. In recognition of these
facts it is agreed that upon written request by either the Com-
pany or the District at least twelve months prior to the end
of each 25 year period during the life of this contract that the
above $1,120.00 payment by the Company shall be reviewed and
increased or decreased for the next 25 year period in the pro-
portion that the annual operating expenses of the District have
increased or decreased over the amount of $80,000.00. It is
expressly understood and agreed that the annual operating
expense is the expense relating to the administration, operation
and maintenance of Eagle Mountain and Bridgeport Lakes, sometimes
referred to as Program A of the District. The operation expense

EXHIBIT "B" Page 6 of 17

-6-

of any other program of the District will not be considered
in the review.

(2) $1,000.00 per annum for the right to enclose with a
fence built in a manner similar to the sketch shown in Appendix
C and made a part hereof, being approximately 8 acres of lake area
below an elevation of 649 feet above mean sea level and for all
other rights referred to in this contract other than the use or
consumption of water.  This amount is fixed and is not to be
increased or decreased during the term of this contract except
that should it be necessary or desirable that the enclosed area
be changed, such sum shall be adjusted by agreement of the parties
hereto.  Payment hereunder shall date from the date first steam-
electric generating unit goes into operation and shall be for
the prorata part of the first year and the full year thereafter.
Payment shall be made on or before the 31st day of December of
each year, the first payment to be made on the 31st day of
December following the installation and beginning operation of
the first steam-electric generating unit.  Payment herein pro-
vided for shall cover all rights referred to and provided for
in this contract other than the use or consumption of water.

8.

        At any time prior to the construction of the works herein
described, Company may cancel this contract upon payment to
District of District's cost of review of such engineering matters
as may have been incurred by District in connection herewith,
after which no obligation shall exist against either party in
respect to this contract.  In the event of abandonment of the
steam-electric generating station or stations it is agreed that
the payment required for the use and consumption of water as
provided for in sub-division (1) of paragraph 7 above will be
waived or cancelled for the unexpired portion of the contract
period, provided the Company shall have made written request
for such payment cancellation not less than one year in advance
of the cancellation date.

        In the event of abandonment of the steam-electric generating
station or stations Company will, at its own cost and expense,
remove all facilities heretofore constructed by Company on prop-
erty of the District, restoring such area owned by the District
to its original condition.

        It is expressly understood and agreed that the payment
in the amount of $1,000.00 per annum as provided for in sub-
division (2) of paragraph 7 is not subject to cancellation and
shall continue for the full contract period, or the renewal

-7-

thereof, even though the steam-electric generating station
is abandoned.

### 9.

Company agrees to indemnify and hold District harmless
from any and all claims or causes of action arising out of
Company's use of District's land under control of Company or
because of any structures which Company may place in the lake
in connection with its withdrawal, return and protective works.
Company further agrees to hold District harmless from any
damage to Company's works, land or improvements caused by
flood or flowage of water.

Company further agrees to indemnify and hold District
harmless from any and all claims or causes of action arising
out of Company's use and operation of facilities constructed
by Company on Company's land.

### 10.

It is especially understood and agreed that the owner-
ship, construction, installation, operation of said District's
Eagle Mountain Lake Project shall be the sole responsibility
and liability of District in so far as it does not conflict
with other provisions herein provided.

### 11.

District grants to Company all necessary easements and
right-of-way, together with the right of ingress and egress
over, along and across lands now owned by District in said
Eagle Mountain Lake, such easements and rights-of-way being
limited to those incident and necessary for the construction,
installation, operation and maintenance of intake and dis-
charge structures and facilities as shown approximately on
Appendix B, Sheet 1, and none other. -

District recognizes that in the operation of the steam-
electric generating station referred to herein that it may be
necessary for Company to construct, install, operate and main-
tain other facilities such as telephone and electric trans-
mission and distribution lines, water and gas or oil fuel pipe
lines, roadways and railroad lines over, along and across lands
now owned by the District in the vicinity of Eagle Mountain
Lake. At this time it is not possible to delineate the exact
requirements of Company in this respect. It is understood and
agreed by Company and District that at such time as these

-8-

requirements can be determined that the District will grant to
Company the necessary easements required therefor subject to
(a) approval by District of the location, area and extent of
such facilities, and (b) payment by Company to District of fair
compensation therefor.

District at this time grants Company easement for a
transmission line across any lands owned by the District below
Eagle Mountain Lake Dam and across the lake at or north of the
Tarrant-Wise County line, the exact location of the rights-of-
way and compensation therefor to be agreed on by Company and
District prior to construction by Company. Company agrees that
the initial transmission lines in the vicinity of Eagle Mountain
Lake will be constructed on the east side of the lake and below
Eagle Mountain Lake Dam and Spillway and/or across Eagle Mountain
Lake at or north of the Tarrant-Wise County line to serve the
proposed steam-electric generating station and that each of
these transmission lines will be 132,000 volts capacity.  It is
expressly agreed that the District does not hereby grant the
Company any right to build any transmission or distribution line
across the main body of Eagle Mountain Lake other than herein-
above set out.

12.

Nothing in this agreement, expressed, or implied, is
intended or shall be construed to confer upon any person or
corporation other than the parties hereto, their successors and
assigns, any right, remedy or claim under or by reason of this
agreement or any covenant, condition or stipulation hereof, and
that all covenants, stipulations, promises and agreements in this
agreement contained by or on behalf of Company shall be and are
for the sole and exclusive benefit of the parties hereto, their
successors and assigns.

13.

This agreement supersedes all prior agreements between
Company and District for the water mentioned herein, and also
all representations, promises or other inducements, written or
verbal, made with respect to the matters herein contained.  It
is subject to all laws and governmental regulations and is not
binding upon Company or District until approved by their
respective Board of Directors.  No modification of any provision
of this agreement shall be binding unless reduced to writing
and signed by the parties hereto, and modification of any one or
more provisions of this agreement by mutual consent of the
parties hereto shall not affect any of the remaining provisions
hereof not so modified.  District covenants that it has complied
and will comply with any additional requirements of law related
to certified filings or the obtaining of necessary permits from
the Board of Water Engineers, or other regulatory bodies for the

-9-

purposes and uses proposed to be made by Company of such water
as is proposed hereunder.

14.

There is attached hereto and made a part hereof the
following exhibit and appendices:

Exhibit A, field notes of the tract now owned by
Company referred to herein;

Appendix B, (2 sheets), a sketch of the tract showing
water frontage on Eagle Mountain Lake and other boundaries;

Appendix C, a preliminary drawing of Company's proposed
protective works around the withdrawal and return structures;

Appendix D, a vicinity map of the tract recited herein
and surrounding areas.

EXECUTED IN DUPLICATE, this ___6ᵗʰ___ day of _May_, 1952.

TEXAS ELECTRIC SERVICE COMPANY

By: _____
        President

Attest:

_____
Asst. Secretary

TARRANT COUNTY WATER CONTROL &
IMPROVEMENT DISTRICT NO. 1

By: _____
        President

Attest:

_____
Secretary

APPROVED AS TO FORM:
CANTEY, HANGER, JOHNSON, SCARBOROUGH & GOOCH
By _____



PROTECTIVE BARRIER
SEE APPENDIX "C"

APPROXIMATE LOCATION
OF DISCHARGE STRUCTURE

APPROXIMATE
PLANT
SITE

PROTECTIVE BARRIER
SEE APPENDIX "C"

APPROXIMATE LOCATION
OF INTAKE STRUCTURE
SUBJECT TO LOCATION
AND DESIGN CHANGE

APPENDIX "B"
SHEET #1

EXHIBIT "B" Page 11 of 17



PRELIMINARY DETAIL OF PROPOSED
PROTECTIVE WORK AROUND INTAKE
AND DISCHARGE STRUCTURES.

WOOD
PILING

APPROX
30'-10"

STEEL CABLE

STEEL RODS PROJECTING INTO WATER

WATER SURFACE

APPENDIX C



GRAPHIC SCALE

VICINITY MAP

THE STATE OF TEXAS     X
                           X
COUNTY OF TARRANT    X

       THIS AGREEMENT made and entered into this *22d*
day of *December*____, 1970, by and between TEXAS
ELECTRIC SERVICE COMPANY, a Texas Corporation, hereinafter called
"Company", and TARRANT COUNTY WATER CONTROL AND IMPROVEMENT
DISTRICT NO. 1, a Texas Municipal Corporation, hereinafter called
"District",

       W I T N E S S E T H:

       WHEREAS, Company purchases water from District for
plant and cooling purposes for an electric generation station
located on Eagle Mountain Lake as provided for in an agreement
between District and Company dated the 6th day of May, 1952; and

       WHEREAS, by a letter agreement with District, dated
the 4th day of August, 1959, Company did voluntarily agree to
increase the payments to be paid to District for consumptive use
of raw, untreated water for plant and cooling purposes under the
provisions of the aforementioned agreement so that such payments
would be based on the same rate per thousand gallons actually
paid by the City of Fort Worth to District for raw, untreated
water; and

       WHEREAS, as a result of recent engineering studies
Company and District agree that the Company's actual use of water
is less than the anticipated use as provided in the aforesaid
agreement; and

       WHEREAS, Company now has under construction an additional
generating unit at Company's Eagle Mountain generating station
which will further increase the difference between the Company's
actual use of water and the use as provided in the aforesaid

agreement; and

WHEREAS, Company is desirous and District is agreeable
to amend said agreement so as to substitute the more accurate
method for estimating Company's water use for use in lieu of the
method specified in said agreement.

NOW, THEREFORE, in consideration of the premises and
at the request of Company and in consideration of the sum of
thirty thousand, eight hundred and twenty dollars ($30,820) paid
by Company to District, the Contract and agreement between them
dated the 6th day of May, 1952 as amended and supplemented by
the said letter agreement dated the 4th day of August, 1959, is
hereby modified so that Company's obligation and date of payment
for the consumptive use of water shall be determined as follows:

Company shall pay for the consumptive use of water at
the same rate per 1000 gallons as is being actually paid from time
to time by the City of Fort Worth, Texas to the District for raw,
untreated water.

For the purposes of determining the consumptive use of
water by Company, District and Company agree that in addition to
any permanent withdrawals by the Company which shall be metered
and added to the calculated loss due to evaporation; the amount
of water caused to be evaporated from reservoir by Company shall
be calculated from the net electric energy generated annually at
said generating station and the average annual heat rate at which
it operates using the following formula:

$$\text{water used in gallons/kwh} = 0.56 \frac{(\text{Heat Rate})}{(10,000)} - 0.23$$

Company agrees to furnish annually to District the
records of net energy generated at its Eagle Mountain Plant to-
gether with the average annual heat rate and District shall be
privileged to inspect Company's plant and plant records to the

EXHIBIT "B" Page 16 of 17

extent reasonably necessary to verify the information furnished
by Company.

This amendment and modification shall become effective
on January 1, 1971 and beginning with the payment due for water
used during calendar year 1971, all payments made by Company to
District as provided in said contracts as amended shall be due
annually on March 30th next following the calendar year which
such payments cover.

EXECUTED IN DUPLICATE on the day and year first shown
above.

TEXAS ELECTRIC SERVICE COMPANY

ATTEST:

By: _____
Burl B. Hulsey, Jr., President

_____
Asst. Secretary

TARRANT COUNTY WATER CONTROL AND

IMPROVEMENT DISTRICT NUMBER ONE

ATTEST:

By: _____
Vice President of Board of Directors

_____
Secretary

- 3 -