## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| *In re*: | : | Chapter 11 |
| | : | |
| ENERGY FUTURE HOLDINGS | : | Case No. 14-10979 (CSS) |
| CORP., *et al.*, | : | |
| | : | Jointly Administered |
| | : | |
| Debtors. | : | **Hearing Date: October 28, 2014 at 12:00 p.m.** |
| | : | **Objections Due: October 17, 2014 by 4:00 p.m.** |

**UNITED STATES TRUSTEE'S OBJECTION TO THE APPLICATION OF ENERGY FUTURE HOLDINGS CORP., *ET AL.*, FOR ENTRY OF AN ORDER AUTHORIZING THE DEBTORS TO RETAIN AND EMPLOY ERNST & YOUNG LLP AS PROVIDERS OF TAX ADVISORY AND INFORMATION TECHNOLOGY SERVICES EFFECTIVE *NUNC PRO TUNC* TO THE PETITION DATE (D.I. 655)**

In support of her Objection to the Application of Energy Future Holdings Corp., *et al.*, for Entry of an Order Authorizing the Debtors to Retain and Employ Ernst & Young LLP as Providers of Tax Advisory and Information Technology Services Effective *Nunc Pro Tunc* to the Petition Date (D. I. 655) (the "Motion"),[1] Roberta A. DeAngelis, the United States Trustee for Region 3, by counsel, respectfully states as follows:

### I. JURISDICTION AND PROCEDURAL HISTORY

1.      The Court has jurisdiction to hear this Objection.

2.      Pursuant to Section 586 of title 28, U.S. Code, the U.S. Trustee is charged with overseeing the administration of Chapter 11 cases filed in this District. 11 U.S.C. § 586. Under Section 586 and Section 307 of the Bankruptcy Code, Congress charged the U.S. Trustee with broad responsibilities in Chapter 11 cases and the standing to rise and be heard on any issue in any case or proceeding. 11 U.S.C. § 307; *see also United States Trustee v. Columbia Gas Sys.,*

---

[1] Unless otherwise defined herein, capitalized terms shall have the same meaning and context as those capitalized terms included in the Motion.

*Inc. (In re Columbia Gas Sys., Inc.),* 33 F.3d 294, 295-96 (3d Cir. 1994) (the U.S. Trustee has

"public interest standing" under 11 U.S.C. § 307, which goes beyond mere pecuniary interest).

    3.    Pursuant to 11 U.S.C. § 307, the U. S. Trustee has standing to be heard with

regard to the above-referenced Objection.

## II. FACTS

*A.*    *Background.*

    4.    On April 29, 2014, the Debtors commenced these Chapter 11 cases.

    5.    According to Paul Keglevic, the Executive Vice President, Chief Financial

Officer, and Co-Chief Restructuring Officer of EFH Corp., the Debtors are the largest generator,

distributor, and retail electricity provider in Texas. *See* Declaration of Paul Keglevic, Executive

Vice President, Chief Financial Officer, and Co-Chief Restructuring Officer of Energy Future

Holdings Corp., e*t al.*, in Support of First Day Motions dated April 29, 2014 ("Keglevic

Declaration") at ¶ 6. (D.I. 98).

*B.*    *The Debtors' Businesses.*

    6.    EFH conducts substantially all of its business operations in the electricity market

overseen by the Electric Reliability Council of Texas, which covers the majority of Texas. *Id.*

The Texas electricity market, in turn, is subject to oversight and regulation by the Public Utility

Commission of Texas. *Id.*

    7.    EFH has approximately 9,100 employees, approximately 5,700 of whom are

employed by the Debtors, in several distinct business units, namely electricity generation,

mining, wholesale electricity sales, and commodity risk management and trading activities. *Id.*

C.    *The Corporate Structure.*

8.    EFH Corp. is the parent company of each of the entities that compose EFH, including: (a) the entities composing TCEH (including TCEH's parent company, EFCH); (b) EFIH; (c) non-debtor Oncor Holdings (which is 100% owned by EFIH), Oncor, (which is approximately 80% owned by Oncor Holdings), and certain subsidiaries and affiliates of Oncor Holdings and Oncor; and (d) certain of EFH Corp.'s other direct and indirect debtor and non-debtor subsidiaries. *Id.* at ¶ 19.

9.    EFIH is a holding company and a direct, wholly-owned subsidiary of EFH Corp. *Id.* at ¶ 53. EFIH's primary asset is its 100% ownership of Oncor Holdings. *Id.* at ¶ 53. EFIH has no active business operations, and its capital structure is premised on the value derived from its indirect ownership of Oncor. *Id.* at ¶ 53.

10.    EFCH is a Delaware limited liability company and the direct parent of TCEH. *Id.* at ¶ 1. TCEH is composed of: (a) the TCEH Debtors, including TCEH LLC; TCEH LLC's direct parent, EFCH; and most of the entities that compose TCEH, including the entities that compose Luminant's electricity generation, mining, commodity risk management and trading activities, and wholesale operations, TXU Energy and the other entities that compose the Debtors' retail operations, and TCEH Finance, Inc.; and (b) certain other entities that are not obligated on the TCEH Debtors' funded indebtedness. *Id.* at ¶ 22. TCEH's business operations also depend on certain services that are provided by EFH Corporate Services Company, a subsidiary of EFH Corp., which acts as a shared-services center for Luminant and TXU Energy. *Id.* at ¶ 22.

11.    EFH Corporate Services Company provides a host of shared services, primarily to TCEH (*i.e.*, Luminant and TXU Energy) and, to a lesser extent, EFH Corp., EFIH, and Oncor. *Id.* at ¶ 45.

**D.      *The Professional's Retention Application.***

12.      On May 29, 2014, the Debtors filed a number of professional retention applications including an application to retain Ernst & Young ("EY") as a tax advisory and information technology consultant (the "Application").[2]

13.      Specifically, EY has agreed to provide tax advisory services on behalf of EFH Corporate Services Company which services may include tax advisory services related to assessment and implementation regarding certain Treasury Regulations and Revenue Procedures. EY may also provide certain additional tax advisory services to EFH Corporate Services Company which services may include:

> (a) providing assistance and oversight for any Texas sales and use tax audits for which EFH Corporate Services Company requests assistance; (b) assisting EFH Corporate Services Company with the Texas sales and use tax audits, including reviewing schedules, invoices, and correspondence as requested by EFH Corporate Services Company; (c) assisting with compiling supporting documentation and replies for the auditor as requested by EFH Corporate Services Company; (d) advising EFH Corporate Services Company regarding their penalty exposure with respect to EY's advice rendered and the disclosures that may avoid such penalties as determined by The Internal Revenue Code, related IRS guidance and professional standards; and (e) assisting EFH Corporate Services Company with one off taxability questions that arise. Application at ¶¶ 9-11.

14.      In addition, EY will also provide information technology services to TXUE related to upgrading their SAP technical environment. Application at ¶ 12.

---

[2] With respect to accounting professionals, in addition to the Debtors' Application to Application to Retain Ernst & Young LLP as the Debtors' Providers of Tax Advisory and Information Technology Services, the Debtors also filed an Application to Retain KPMG LLP as the Debtors' Bankruptcy Accounting and Tax Advisors (D.I. 652), an Application to Retain PWC as the Debtors' Internal Audit, Information Security, and Tax Consultants (D.I. 654) and an Application to Retain Deloitte & Touche LLP as the Debtors' Independent Auditors (D.I. 656).

15.     In support of the Application, EY submitted the Declaration of Stephen A. Thiel, an Executive Director of EY (the "Thiel Declaration")[3]. In the Thiel Declaration, Mr. Thiel identifies certain recent past, or currently client relationship with persons or entities in matters either related to or unrelated to these chapter 11 cases. In particular, Mr. Thiel discloses that approximately eight months prior to the filing of these chapter 11 cases, EY performed services for Akin Gump Strauss Hauer & Feld LLP ("Akin Gump") which represents (a) the ad hoc committee of holders of 11.25%/12.25% unsecured senior toggle notes due December 1, 2018 (the "Ad Hoc Committee of EFIH Unsecured Noteholders") and (b) certain parties that had proposed to provide a second lien DIP financing (the "EFIH Second Lien DIP Commitment Parties"), and that EY provided tax advisory and restructuring services to Akin Gump for the benefit of the Ad Hoc Committee of EFIH Unsecured Noteholders. Thiel Declaration at ¶ 32. In addition, EY was paid by the Debtors for the prepetition services that it provided to Akin Gump for the benefit of the Ad Hoc Committee of EFIH Unsecured Noteholders. Id.

16.     Mr. Thiel further states that EY will continue to provide, certain tax advisory and restructuring services for the Ad Hoc Committee of EFIH Unsecured Noteholders and the EFIH Second Lien DIP Commitment Parties in connection with the Debtors' chapter 11 cases and that EY's services to the Ad Hoc Committee of EFIH Unsecured Noteholders and the EFIH Second Lien DIP Commitment Parties during these chapter 11 cases will include: (a) developing alternative tax structures to restructure certain entities; (b) analyzing structural alternatives and performing high level tax calculations; (c) analyzing and considering a Section 355/Type G

---

[3] Mr. Thiel has twice supplemented his supporting declaration with respect to this retention application with supplemental declarations filed on August 19, 2014 (D.I. 1886) and again on October 14, 2014 (D.I. 2450). These supplemental declarations outline and describe additional services to be provide by EY to the Debtors.

reorganization; (d) analyzing the tax consequences in connection with taxable foreclosures and the impact on unsecured creditors; and (e) reviewing and providing comments on prepetition restructuring agreements, including pre-submission memorandum to the Internal Revenue Service. Thiel Declaration at ¶ 34. Additionally, EY will continue to be compensated by the Debtors for the services that it provides for the Ad Hoc Committee of EFIH Unsecured Noteholders and the EFIH Second Lien DIP Commitment Parties in connection with the Debtors' chapter 11 cases. *Id.*

17.    Mr. Thiel further states that so long as EY is performing work on behalf of the Debtors during the chapter 11 cases, EY will keep in place certain information barriers and protective measures in order to, among other things, minimize the likelihood that confidential information is exchanged between the EY working on both engagements. Thiel Declaration at ¶¶ 35-36.

18.    Additionally, and without further explanation, Mr. Thiel states that EY has provided and/or is currently providing services to KKR & Co. LP, TPG, Goldman Sachs & Co., Apollo Global Management LLC, Oaktree Capital Management LP, Avenue Capital Group, and GSO Capital Partners LP who are the Debtors equity sponsors. Thiel Declaration at ¶ 37.

### III. LAW AND ANALYSIS

Federal Rule of Bankruptcy Procedure 2014 sets forth the procedural requirements for an application for employment as a professional for the debtor in possession. The substantive requirements for employment are contained in Code § 327.  As a procedural matter, Bankruptcy Rule 2014 requires the applicant to:

> state the specific facts showing the necessity of employment, the
> name of the person to be employed, the reasons for the selection,

6

> the professional services to be rendered, any proposed arrangement
> for compensation, and to the best of the applicant's knowledge, all
> of the person's connections with the debtor, creditors, any other
> party in interest, their respective attorneys and accountants, the
> United States trustee or any person employed in the office of the
> United States trustee.

Fed. R. Bankr. 2014.

Professional persons seeking employment under 11 U.S.C. § 327(a) must submit a

verified statement disclosing "all connections" with the debtor, creditors, other parties in

interests, and their respective attorneys and accountants. Fed. R. Bankr. P. 2014(a).

To comply with Bankruptcy Rule 2014, the applicant must consider and disclose all of

his or her "connections."  Disclosure is not limited to the disclosure of facts which the applicant

deems relevant, but includes all connections between members of the firm and the parties in

interest to the bankruptcy case.   The scope of disclosure is broader than the question of

disqualification; the applicant and the professional must disclose, without exception, all

connections and not merely those that rise to the level of conflicts.  *In re Granite Partners, L.P.*,

219 B.R. 22, 35 (Bankr. S.D.N.Y. 1998).  The professional may not leave the court or other

parties in interest to search the record for such relationships or otherwise to ferret them out. *In re*

*BH&P, Inc.*, 949 F.2d 1300, 1317-18 (3d Cir 1991).

Section 327(a) only allows the debtor in possession to employ professional persons that

"do not hold or represent an interest adverse to the estate", and that are "disinterested persons."[4]

One court has described Section 327(a) as "a prophylactic provision designed to insure that the

---

[4] 11 U.S.C. § 101(14)(C) defines a "disinterested person" as a person that " . . . does not have an interest materially
adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or
indirect relationship to, connection with, or interest in, the debtor, or for any other reason."

undivided loyalty and exclusive allegiance required of a fiduciary to an estate in bankruptcy is

not compromised or eroded." *In re Prudent Holding* Corp., 153 B.R. 629, 631 (Bankr. E.D.N.Y.

1993).

The Third Circuit has stated that a professional person has an interest adverse to the

estate when the professional has ". . . a competing economic interest tending to diminish estate

values or create a potential or actual dispute in which the estate is a rival claimant." *See United*

*States Trustee v. First Jersey Secs.,* 180 F.3d 504, 509 (3d Cir. 1999) (internal quotations

omitted). Any professional person that does not meet both the "no adverse interest" and the

"disinterested person" tests is disqualified from employment under Section 327(a). *See In re*

*BH&P Inc*., 949 F.2d 1300, 1314 (3d Cir. 1991) (Section 327(a) "creates a two-part requirement

for retention of counsel"). Thus, a professional who holds or represents an adverse interest is *per*

*se* disqualified. However, a professional who may not hold or represent an adverse interest is

nevertheless disqualified unless he or she is a "disinterested person" as set forth in 11 U.S.C. §

101(14). *See, e.g.*, *U.S. Trustee v. Price Waterhouse*, 19 F.3d 138, 141-42 (3d Cir. 1994)

(disqualified because not disinterested); *Michel v. Eagle-Picher Indus. (In re Eagle-Picher*

*Indus.)*, 999 F.2d 969, 972 (6th Cir. 1993) (professional can lack disinterestedness without

having an adverse interest).

For example, In *In re Congoleum Corp*., 426 F.3d 675 (3d Cir. 2005), the Third Circuit

found that a certain law firm had acted in violation of the Rules of Professional Conduct and was

not "disinterested" as required by Code § 327(a). A large part of the firm's conflict was found

that while representing Congoleum, the firm had actively participated in settlement negotiations

concerning asbestos claimants while simultaneously representing some of those asbestos

claimants (through its co-counsel relationship with another law firm).  *Id.* at 690.  The Third

Circuit discussed how the representation of Congoleum by the law firm was adverse to the

interests of the asbestos claimants that it also represented.  *Id.* at 690-91. The law firm was

disqualified from representing the Debtors in Congoleum. *Id.* at 694.

In these cases, EY is performing certain services for the Debtors as part of its

restructuring while simultaneously performing tax advisory services for two key creditor

constituencies in these cases such as developing alternative tax structures to restructure certain

entities, analyzing structural alternatives and different types of reorganizations and analyzing the

tax consequences in connection with taxable foreclosures and the impact on unsecured creditors.

EY is representing parties with a competing economic interest that are directly adverse to the

Debtors and EY lacks disinterestedness. It is not possible for EY to maintain an undivided

loyalty and exclusive allegiance to the Debtors while representing creditors in the same

bankruptcy cases who are adverse to the Debtors.

EY's erection of ethical walls or information barriers are without any effect upon EY's

lack of disinterestedness because when one member of a firm is disqualified, all members of that

firm are similarly disqualified. *See, In re Essential Therapuetics, Inc*., 295 B.R. 203, 208-11

(Bankr. D. Del. 2003) (Walrath, J.) (holding that where one member of a law firm's

independence and disinterestedness was impugned because the members was an insider of the

debtors, such infirmities equally affected the entire law firm's independence and

disinterestedness and that the firm was disqualified under 11 U.S.C. § 327(a)).

EY's Application also fails under Section 327(c).  Section 327(c) provides: "In a case

under chapter . . . 11 of this title, a person is not disqualified for employment under this section

solely because of such person's employment by or representation of a creditor, unless there is

objection by another creditor or the United States trustee, in which case the court shall

disapprove such employment if there is an actual conflict of interest."  11 U.S.C. § 327(c).

Because there is an actual conflict of interest here, the Court must disapprove of the proposed

employment of EY. *In re Project Orange Assocs., LLC*, 431 B.R. 363, 371 (Bankr. S.D.N.Y.

2010) ("The statute, however, *requires* disqualification of a professional following an objection

from the U.S. Trustee or a creditor where there is an actual conflict of interest.").

     An actual conflict of interest exists when a professional represents multiple parties that

have opposing interests.  *See Congoleum*, 426 F.3d at 690; *In re CVC, Inc.*, 120 B.R. 874, 877

(Bankr. N.D. Ohio 1990) (holding that an actual conflict existed when an accountant undertook

dual representation of the debtor and a potential third party purchaser, "While the objective of

[the debtor] would be to maximize profits for the [d]ebtor's estate in a sale, [the purchaser], on

the other hand, would attempt to purchase [debtor] at a price most advantageous to

himself.").  Here EY seeks to be retained by the Debtors when it has been working for the Ad

Hoc Committee of EFIH Unsecured Noteholders for nearly a year and will continue to do so at

the Debtors' expense.  The Ad Hoc Committee of EFIH Unsecured Noteholders seek to

maximize their recovery, while the Debtors', under their fiduciary obligations, are charged with

acting in the best interests of the entire bankruptcy estate.  EY has an actual conflict by

representing a party with interests that are adverse to the Debtors' estates.

     Even if an actual conflict of interest does not exist, the Court has wide discretion to deny

the Application due to the potential for such conflicts to arise in the future. *BH&P, Inc.*, 949 F.2d

at 1316-17 ("denomination of a conflict as 'potential' or 'actual' and the decision concerning

whether to disqualify a professional based upon that determination in situations not yet rising to the level of an actual conflict are matters committed to the bankruptcy court's sound exercise of discretion.").

## IV. RESERVATION OF RIGHTS

The U. S. Trustee reserves and any all rights, remedies and obligations to, *inter alia*, complement, supplement, augment, alter, substitute and/or modify this Objection, file a Motion and to conduct any and all discovery as may be deemed necessary or as may be required and to assert such other grounds as may become apparent.

WHEREFORE, the U.S. Trustee respectfully requests that this Court (a) deny the Application and (b) grant such other and further relief as this Court deems just and appropriate.

Respectfully submitted,

**ROBERTA A. DeANGELIS**
**UNITED STATES TRUSTEE**

By: */s/Richard L. Schepacarter*
       Richard L. Schepacarter
       Andrea B. Schwartz
       Timothy J. Fox, Jr.
       Trial Attorneys
       U.S. Department of Justice
       Office of the United States Trustee
       J. Caleb Boggs Federal Building
       844 N. King Street, Suite 2207, Lockbox 35
       Wilmington, DE 19801
       (302) 573-6491 (Tel.)
Dated: October 17, 2014     (302) 573-6497 (Fax)