## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | Case No. 14-10979 (CSS) |
| Debtors. | (Jointly Administered) |
| | Re: D.I. 659 |

## SUPPLEMENTAL AFFIDAVIT AND DISCLOSURE OF
## DANIEL J. DEFRANCESCHI ON BEHALF OF RICHARDS, LAYTON & FINGER, P.A.

STATE OF DELAWARE      :
                              :    SS.

COUNTY OF NEW CASTLE   :

DANIEL J. DEFRANCESCHI, being first duly sworn to oath, deposes and says:

1.      I am an attorney admitted to practice in the State of Delaware and before this Court, and I am a director of the firm of Richards, Layton & Finger, P.A. ("RL&F"). RL&F is a Delaware law firm with offices at One Rodney Square, 920 North King Street, Wilmington, Delaware 19801.

2.      On April 29, 2014 (the "Petition Date"), each of the above-captioned debtors and debtors in possession (collectively, the "Debtors"), filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code, §§ 101-1532, with this Court. On May 29, 2014, the Debtors filed the *Application of Energy Future Holdings Corp., et al., for Entry of an Order Authorizing the Debtors to Retain and Employ Richards, Layton & Finger, P.A. as Co-Counsel Effective Nunc Pro Tunc to the Petition Date* [D.I. 659] (the "Application")

---

[1] The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, which are being jointly administered, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

with this Court seeking entry of an order authorizing the employment of RL&F as their co-counsel in the Debtors' jointly-administered chapter 11 cases.  In support of the Application, the Debtors filed an affidavit executed by me on behalf of RL&F (<u>see</u> D.I. 659; Ex. B; the "<u>Original Affidavit</u>") in accordance with, *inter alia*, Rules 2014(a) and 2016(b) of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>") and Rule 2014-1(a) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "<u>Local Rules</u>").  I hereby submit this affidavit to supplement the disclosures set forth in the Original Affidavit based on information that has come to my attention and/or developments that have taken place in the Debtors' chapter 11 cases since the Petition Date.

3.      RL&F represented Carlyle Investment Management, LLC ("<u>Carlyle</u>"), as a potential purchaser of certain assets being sold by Optim Energy, LLC ("<u>Optim</u>") in its chapter 11 case.  The Debtors also decided to participate in the sale of the Optim assets.  I do not believe that RL&F's involvement with the sale of Optim's assets creates a conflict, but have disclosed the connection out of an abundance of caution.

4.      Certain RL&F attorneys have advised Carlyle in Optim's chapter 11 cases, however, none of those attorneys have billed any time to the Debtors' chapter 11 cases (such RL&F attorneys, the "<u>RL&F-Optim Team</u>").  A separate group of RL&F attorneys represented the Debtors in connection with their potential participation in the sale of Optim's assets (the "<u>RL&F-EFH Team</u>").  The RL&F-EFH Team's representation of the Debtors in connection with their potential participation in the sale of Optim's assets was limited to filing the EFH Bid Motion (as defined herein, below) and advising the Debtors' then proposed lead bankruptcy counsel at Kirkland & Ellis LLP and Kirkland & Ellis International LLP (together, "<u>K&E</u>") on procedural and non-substantive local practice issues in connection with that filing.  The RL&F-

EFH Team never advised the Debtors on any substantive matters concerning their potential participation in the sale of Optim's assets and never appeared in Optim's chapter 11 cases on behalf of any of the Debtors.

5.     Out of an abundance of caution, however, RL&F took action to ensure that none of the RL&F attorneys on the RL&F-Optim Team advised the Debtors on their potential participation in the sale of Optim's assets, and none of the RL&F attorneys on the RL&F-EFH Team advised Carlyle, or any other potential purchaser, of Optim's assets. Specifically, RL&F confirmed that no attorneys assigned to the RL&F-Optim Team had billed any time to RL&F's representation of the Debtors and that no attorneys assigned to the RL&F-EFH Team had billed any time to RL&F's representation of Carlyle in connection with Optim's chapter 11 cases. Moreover, RL&F took action to ensure that, during the term of RL&F's representation of Carlyle in connection with Optim's chapter 11 cases, no attorneys assigned to the RL&F-Optim Team would perform any work for the Debtors and no attorneys assigned to the RL&F-EFH Team would perform any work for Carlyle in connection with Optim's chapter 11 cases.

6.     On June 27, 2014, the Debtors filed the *Motion of Energy Future Holdings Corp., et al., for Entry of an Order Authorizing, but not Requiring, the TCEH Debtors (A) to Participate in a Competitive Auction, and (B) if Selected as the Winning Bidder, to Consummate a Proposed Acquisition* [D.I. 1225] (together with the supporting declaration of Michael Carter [D.I. 1226], the "EFH Bid Motion"), seeking authority to potentially submit a bid to acquire Optim's assets.

7.     Following the filing of the EFH Bid Motion, RL&F took the following actions:

a.  RL&F confirmed that no member of the RL&F-Optim Team has or will bill any time to the Debtors' chapter 11 cases during the pendency of the Debtors' chapter 11 cases until the conclusion of RL&F's representation of Carlyle in Optim's chapter 11 cases;

b.  RL&F transitioned any work that it was doing related to the Debtors' potential acquisition of the Optim assets going forward to Gibson, Dunn, Crutcher LLP, as proposed special corporate and litigation counsel, and Bifferato LLC, as proposed Delaware co-counsel;

c.  RL&F agreed to write off all time it otherwise would have billed the Debtors with respect to the potential acquisition of the Optim assets; and

d.  RL&F agreed to file this supplemental affidavit.

8.  The Debtors, ultimately, withdrew the EFH Bid Motion on July 14, 2014 [D.I. 1564]. Moreover, although Carlyle participated in the sale process in Optim's chapter 11 case, it is my understanding that Carlyle was ultimately not the successful bidder for Optim's assets and Carlyle's role in Optim's chapter 11 cases as a potential bidder is likewise concluded.

9.  The Debtors sought to retain and employ certain legal advisors in addition to RL&F. RL&F shall use its reasonable efforts to avoid any duplication of services provided by any of the Debtors' other retained professionals in these chapter 11 cases. The following chart lists the services that I am informed are to be provided by each of the legal advisors the Debtors either seek to retain (in the case of RL&F) or have already retained pursuant to an order of this Court (in the case of the other legal advisors listed).

| Professional | Description of Services |
| --- | --- |
| RL&F, as Delaware counsel and conflicts counsel | RL&F will be primarily responsible for:<br><br>• Providing Delaware law expertise to the Debtors, including advising the Debtors and K&E on issues of local practice and the Local Rules<br><br>• Acting as Delaware counsel with respect to the Debtors' restructuring, including (i) reviewing, commenting on, and filing the various documents and pleadings principally drafted by K&E; and (ii) drafting certifications of counsel, certifications of no objection, notices, and other routine documents that are not principally drafted |

| | by K&E for filing in the Debtors' chapter 11 cases. |
|---|---|
| | • Interacting and communicating with chambers outside of hearings. |
| | • Acting as conflicts counsel independently from K&E in certain matters where K&E has a conflict but RL&F does not have a conflict.  To the extent that any matters arise in the Debtors' chapter 11 cases where both RL&F and K&E have an actual conflict, the Debtors will seek to engage separate conflicts counsel to handle such matters. |
| | RL&F will **not** be primarily responsible for: |
| | • Providing legal advice on non-bankruptcy tax matters that are being principally addressed by Thompson & Knight LLP. |
| | • Matters where another firm is acting as conflicts counsel. |
| | • Discrete matters being addressed by Sidley Austin LLP, including the Debtors' potential claims against the Debtors' equity owners in connection with the 2007 buyout. |
| | • Discrete energy-related transactional matters being handled by McDermott, Will & Emery LLP, except to the extent necessary in connection with preparing applicable pleadings or other documents. |
| | • Discrete non-bankruptcy issues being handled by Gibson, Dunn & Crutcher LLP. |
| K&E, as primary restructuring counsel | K&E is primarily responsible for: |
| | • Providing services related to all bankruptcy-related matters, including, among other things:  (a) corporate governance in the bankruptcy context, (b) advising and consulting on the Debtors' conduct during the chapter 11 cases, including the legal and administrative requirements of operating in chapter 11, (c) meetings and negotiations with parties in interest regarding the Debtors' restructuring, (d) taking all necessary actions to protect and preserve the Debtors' estates, (e) preparing and filing pleadings, (f) postpetition financing and cash collateral matters, (g) structuring potential sales of assets or other asset dispositions, (h) advising on tax matters, including certain non-bankruptcy tax matters where they implicate creditor recoveries or the administration of the Debtors' estates, (i) the negotiation of and preparation of a plan and disclosure statement and all related documents and transactions, (j) interactions with vendors, contract counterparties, and similar parties with respect to the treatment of claims and contracts in the chapter 11 |

5

| | |
|---|---|
| | process, (k) the claims resolution process, and (l) all other necessary legal services for the Debtors in connection with the chapter 11 cases not otherwise provided by another retained legal professional.<br><br>K&E is **not** primarily responsible for:<br><br>• Providing legal advice on non-bankruptcy tax matters that are being principally addressed by Thompson & Knight LLP.<br><br>• Matters where RL&F is acting as conflicts counsel.<br><br>• Discrete matters being addressed by Sidley Austin LLP, including the Debtors' potential claims against the Debtors' equity owners in connection with the 2007 buyout.<br><br>• Discrete energy-related transactional matters being handled by McDermott, Will & Emery LLP, except to the extent necessary in connection with preparing applicable pleadings or other documents.<br><br>• Discrete non-bankruptcy issues being handled by Gibson, Dunn & Crutcher LLP.<br><br>• Advising the Debtors in connection with the potential purchase of the assets of Optim (the Debtors have since terminated their involvement in the purchase process). |
| Thompson & Knight LLP, as special counsel for certain tax-related matters | Thompson & Knight is primarily responsible for:<br><br>• Providing services related to certain tax issues, including, among other things: (a) the Debtors' request for a private letter ruling from the Internal Revenue Service (the "IRS") and the tax issues of the related restructuring matters, (b) Texas tax issues not otherwise addressed by the Debtors' other professionals, (c) the resolution of certain historical and ongoing IRS tax controversies and (d) other discrete matters as directed by the Debtors.<br><br>• Providing services related to certain record retention issues.<br><br>Thompson & Knight is **not** primarily responsible for:<br><br>• Providing any legal advice on non-tax matters other than those related to record retention.<br><br>• Providing legal advice on bankruptcy-specific tax matters.<br><br>• Providing any legal advice to the Debtors on potential transaction |

| | |
|---|---|
| | structures (including negotiations with lenders and investors related to the same), except as may relate to the tax issues related to the Debtors' restructuring as described above). |
| Sidley Austin LLP, as special counsel on certain corporate and litigation issues | Sidley Austin is primarily responsible for:<br><br>• Reviewing matters related to potential claims against EFH Corp.'s majority equity owners and other parties related to the transaction that took the Debtors private in 2007.<br><br>• Advising the Debtors on certain matters relating to the Environmental Protection Agency.<br><br>• Advising the Debtors on an as-requested basis for certain discrete matters on which K&E will not advise.<br><br>Sidley Austin is **not** primarily responsible for providing services related to:<br><br>• Advising the Debtors on potential transaction structures (including negotiations with lenders and investors related to the same).<br><br>• Serving as the primary legal point of contact for operational and financing inquiries from creditors.<br><br>• General restructuring issues. |
| Gibson, Dunn & Crutcher LLP, as special corporate counsel and litigation counsel on certain, discrete litigation matters | Gibson Dunn is primarily responsible for:<br><br>• Advising on certain non-bankruptcy capital market transactions, non-bankruptcy merger and acquisition transactions, Securities and Exchange Commission matters, and corporate governance issues.<br><br>• Advising the Debtors in connection with the potential purchase of the assets of Optim (the Debtors have since terminated their involvement in the purchase process).<br><br>• Representing the Debtors in connection with certain non-bankruptcy litigation matters, including *Aurelius Capital Master, Ltd. v. Acosta* (5th Cir.), *TXU Portfolio Management Co., L.P., FPL Energy, LLC* (Tex.)., *Luminant Generation Co., LLC v. EPA* (E.D. Tex.), *Sierra Club v. Energy Future Holdings Corp.* (E.D. Tex.), *Sierra Club v. Energy Future Holdings Corp.* (5th Cir.), *Luminant Energy Co., LLC v. FPL Energy Pecos Wind I, LLC* (D.C. Tex.), and *United States v. Luminant Generation Co., LLC* (N.D. Tex.). |

| | |
|---|---|
| | Gibson Dunn is **not** primarily responsible for providing services related to: <br><br> • Advising the Debtors on the bankruptcy issues regarding transaction structures being considered as part of the plan of reorganization (including negotiations with lenders and investors related to the same). <br><br> • Advising the Debtors on tax matters (excluding corporate advisory services that may incidentally involve discrete tax issues). |
| McDermott, Will & Emery LLP, as energy advisor | McDermott is primarily responsible for: <br><br> • Advising the Debtors on certain discrete energy-related transactional matters, negotiations, and disputes. <br><br> McDermott is **not** primarily responsible for providing services related to: <br><br> • Providing advisory services related to tax, corporate, litigation, and environmental issues (except as they may relate to discrete energy issues). <br><br> • Advising the Debtors on potential bankruptcy transaction structures (including negotiations with lenders and investors related to the same). |

10.    Consistent with the *Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases Effective as of November 1, 2013*, I supplement the Original Affidavit to provide responses to the following questions:

    a.    **Question:**    Did RL&F agree to any variations from, or alternatives to, RL&F's standard billing arrangements for this engagement?

    b.    **Response:**    No.    RL&F did not agree to a variation of its standard or customary billing arrangements in connection with this engagement.

    c.    **Question:**    Do any of the professionals in this engagement vary their rate based on the geographic location of the Debtors' chapter 11 cases?

d.  **Response:**  No.  None of RL&F's professionals included in this engagement have varied their rate based on the geographic location of the Debtors' chapter 11 cases.

e.  **Question:**  If RL&F has represented the Debtors in the 12 months prepetition, disclose RL&F's billing rates and material financial terms for the prepetition engagement, including any adjustments during the 12 months prepetition.  If RL&F's billing rates and material financial terms have changed postpetition, explain the difference and the reasons for the difference.

f.  **Response:**  RL&F represented the Debtors in the twelve (12) months prior to the Petition Date and its billing rates were in the following ranges:

| Position | Range of Hourly Rates |
| --- | --- |
| Directors | $550 to $800 an hour |
| Counsels | $450 to $490 an hour |
| Associates | $240 to $465 an hour |
| Paraprofessionals | $205 to $225 an hour |

The billing rates and material financial terms in connection with RL&F's representation of the Debtors did not change prior to the Petition Date or after the Petition Date, other than potential annual and customary firm-wide adjustments to RL&F's hourly rates in the ordinary course of RL&F's business.

g.  **Question:**  Have the Debtors approved RL&F's budget and staffing plan, and, if so, for what budget period?

h.  **Response:**  As set forth in paragraph 10 of the Original Affidavit, RL&F expects to work with the Debtors to develop a prospective budget and staffing plan to, in a reasonable effort, comply with any requests of the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") for information and additional disclosures, and any other orders of the Court.

11.     Notwithstanding anything in the Application, the Original Affidavit, or the Engagement Letter to the contrary, RL&F will cooperate with the fee committee appointed pursuant to the *Stipulation and Order Appointing a Fee Committee* [D.I. 1896] (the "Fee Committee Order") in the discharge of the fee committee's duties, and has agreed to be bound by the terms of the Fee Committee Order.

RLF1 10587062v.4

12.     Notwithstanding anything in the Application, the Original Affidavit, or the Engagement Letter to the contrary, RL&F will apply the remaining amount of the Retainer to satisfy the payment of allowed fees and expenses accruing after the Petition Date before seeking further payment from the Debtors in satisfaction of such allowed fees and expenses. RL&F will not seek to have the Retainer replenished.

13.     No agreement or understanding exists between RL&F and any other person, other than as permitted by section 504 of the Bankruptcy Code, to share compensation received for services rendered in connection with these chapter 11 cases, nor shall RL&F share or agree to share compensation received for services rendered in connection with these chapter 11 cases with any other person other than as permitted by section 504 of the Bankruptcy Code.

14.     Notwithstanding anything in the Application, the Original Affidavit, or the Engagement Letter to the contrary, RL&F may not terminate its representation of the Debtors without order of the Court.

15.     Notwithstanding anything in the Application, the Original Affidavit, or the Engagement Letter to the contrary, RL&F will not seek reimbursement of expenses for office supplies.

16.     In the Original Affidavit, I disclosed that RL&F in the past represented, currently represents, and/or may in the future (including during the pendency of the Debtors' chapter 11 cases) represent, in matters wholly unrelated to these cases, certain Parties-in-Interest (as defined therein) and certain affiliates of Parties-in-Interest, including, without limitation, those entities set forth on **Exhibit 1** attached thereto (collectively, the "Current Clients"). In the Original Affidavit, I also disclosed the names of the Current Clients whose matters constituted significant engagements of RL&F (collectively, the "Significant Engagements"). To be a

10

Significant Engagement, (i) the amounts billed to the Current Client must be in excess of one half of one percent (.5%) of RL&F's annual fees billed and/or (ii) the amounts billed to the Current Client, when aggregated with the amounts billed to any related Current Clients, must exceed one percent (1%) of RL&F's annual fees billed. The Significant Engagements that were disclosed in the Original Affidavit included: certain affiliates of Blackstone Advisory Group, Wilmington Savings Fund Society, FSB, Dell Inc. and certain affiliates thereof, U.S. Bank Trust, N.A. and certain affiliates thereof, and Vertis Holdings Inc. and certain affiliates thereof. While not a Significant Engagement, I also disclosed in the Original Affidavit that RL&F represents Oncor Electric Delivery Holdings Company LLC and Oncor Electric Delivery Company LLC (together "Oncor"), which are both non-debtor entities that are directly or indirectly owned by one or more of the Debtors, in matters that are wholly unrelated to the Debtors' chapter 11 cases (together with the Significant Engagements, the "Specifically Named Engagements"). At the request of the U.S. Trustee and after further review of the Specifically Named Engagements, I hereby supplement the Original Affidavit by making the following clarifications and additional disclosures with respect to such engagements:

a.     In connection with the Debtors' chapter 11 cases, Blackstone Advisory Group ("Blackstone Advisory") advises a group of private equity funds that acquired Energy Future Holdings Corp. ("EFH") in 2007 pursuant to a leveraged buyout. I understand, based on communications with K&E and a review of the list of Parties-in-Interest, that Blackstone Advisory has no other connections with the Debtors, including that it is not a creditor of the Debtors. In addition, while RL&F does not represent Blackstone Advisory in any matters, several entities that may be related to Blackstone Advisory are Current Clients in matters that are wholly unrelated to the Debtors and their chapter 11 cases, however, such entities are not Parties-in-Interest. Specifically, RL&F represents (i) Blackstone Real Estate Income Fund II, Blackstone Capital Holdings Trust, Blackstone Strategic Partners Secondaries VI Trust, Blackstone/GSO Dynamic Credit Income Fund, Blackstone/GSO Senior Loan Income Fund, Blackstone/GSO Short Duration High Yield Fund, Blackstone/GSO Dynamic Credit Income Fund, Blackstone/GSO Dynamic Credit Income Fund, Blackstone/GSO

11

Dynamic Credit Income Fund, Blackstone/GSO Senior Loan Income Fund, Blackstone/GSO Senior Loan Income Fund, Blackstone/GSO Short Duration High Yield Fund, and Blackstone Alternatives Solution 2014 Trust (Tax Exempt) in connection with rendering certain closed-end business trust formation advice; (ii) Black Stone Minerals Company, L.P., Blackstone Capital, and Providence Equity Partners in connection with rendering certain corporate law advice; (iii) Blackstone Communications Partners, Blackstone Capital Partners V L.P., and Blackstone Capital Partners IV LP in connection with rendering certain UCC opinion advice; (iv) Blackstone Real Estate Holdings VII-ESC L.P. and Blackstone Real Estate Holdings L.P. in connection with rendering Delaware opinions on substantive consolidation of assets and also advice on entity formation matters; (v) Blackstone Japan Real Estate Loan Partners L.P., Blackstone Management Associates VI L.L.C., Blackstone Real Estate Advisors L.P., Blackstone Real Estate Associate Europe (Delaware) IV-NQ L.L.C., Blackstone Real Estate Associate VI L.L.C.,  Blackstone Real Estate Associates Europe (Delaware) III, L.L.C., Blackstone Real Estate Associates Europe (Delaware) IV L.L.C., Blackstone Real Estate Associates Europe (Delaware) IV-NQ L.L.C., Blackstone Real Estate Associates II L.P., Blackstone Real Estate Associates VI L.P., Blackstone Real Estate Partners Europe IV L.P., Blackstone Real Estate Income Fund, Blackstone Strategic Capital Associates L.L.C., Blackstone Strategic Capital Associates L.P., Blackstone Tactical Opportunities Associates L.L.C., Blackstone Treasury Solutions Associates L.L.C., Blackstone/GSO Market Neutral Credit Associates LLC, and Blackstone/GSO Market Neutral Credit Associates LLC in connection with rendering certain advice on entity formation matters; and (vi) Blackstone Real Estate Partners V.F. L.P., Blackstone Real Estate Partners V.TE. 1 L.P., Blackstone Real Estate Partners V.TE. 2 L.P., Blackstone Real Estate Partners V.TE.1 L.P.,  Blackstone Real Estate Partners IV.F L.P., Blackstone Real Estate Partners IV.TE.2 L.P., Blackstone Real Estate Partners V L.P., Blackstone Real Estate Partners VI, LP, Blackstone Real Estate Partners V.F. L.P., Blackstone Real Estate Partners IV L.P., Blackstone Real Estate Partners (DC) IV.TE.3 L.P., Blackstone Real Estate Partners (DC) IV. TE.1 L.P., Blackstone Real Estate Partners (DC) IV.TE.2 L.P., Blackstone Real Estate Holdings VII L.P., Blackstone Real Estate Partners VI (AV) L.P., Blackstone Real Estate Partners V.TE.2 L.P., Blackstone Real Estate Holdings IV L.P., Blackstone Energy Management Associates L.L.C., Blackstone CQP Holdco LP, Blackstone Family Real Estate Partnership V-SMD L.P., The Blackstone Group, L.P., Blackstone Real Estate Partners VI L.P., Blackstone Real Estate Partners VI. TE.1 L.P., Blackstone Real Estate Partners VI.TE.2 L.P., Blackstone Real Estate Partners VII L.P., Blackstone Real Estate Partners VII.F L.P., Blackstone Real Estate Partners VII.TE.1 L.P., Blackstone Real Estate Partners VII.TE.2 L.P., Blackstone Real Estate Partners VII.TE.3 L.P., Blackstone Real Estate Partners VII.TE.4 L.P., Blackstone Real Estate

Partners VII.TE.5 L.P., Blackstone Real Estate Partners VII.TE.6 L.P., Blackstone Real Estate Partners VII.TE.7 L.P., Blackstone Real Estate Partners VII.TE.8 L.P., Blackstone Real Estate Partners VILF-NQ (AV) L.P., and Blackstone Real Estate Partners (AIV) V L.P. in connection with rendering certain opinions on substantive consolidation of assets, all of which matters are wholly unrelated to any of the Debtors or the Debtors' chapter 11 cases.

b.  RL&F represents Wilmington Savings Fund Society, FSB and certain of its affiliates ("WSFS") in matters that are wholly unrelated to the Debtors and their chapter 11 cases. Specifically, RL&F currently represents WSFS in matters wholly unrelated to any of the Debtors or the Debtors' chapter 11 cases, including with respect to: (i) bank regulatory and custody matters; (ii) trust formation, operation and financing matters; (iii) acting as a trustee, fiduciary and/or indenture trustee; (iv) various commercial transactions; (v) the issuance of trust-preferred securities; and (vi) the issuance of loan-closing opinions. RL&F obtained conflict of interest waivers from both WSFS and the Debtors. In the waiver letter from WSFS, WSFS consented to RL&F representing the Debtors in (i) the Debtors' chapter 11 cases and (ii) any further proceedings, appeals, issues or litigation relating to the Debtors' chapter 11 cases and/or the restructuring of EFH, including any such proceedings and issues where WSFS may be adverse to EFH (collectively, the "Related Proceedings"); provided, however, that, while WSFS consented to RL&F representing EFH in the Related Proceedings, WSFS did not consent to RL&F representing EFH in any actual lawsuit or cause of action against WSFS before a court or tribunal in the Related Proceedings or otherwise (nor did RL&F seek such consent at this time). In the waiver letter from the Debtors, the Debtors consented to RL&F's representation of WSFS in matters unrelated to the Debtors or their chapter 11 cases conditioned on the understanding that RL&F may fully represent the Debtors in their chapter 11 cases including taking action that is or may be adverse to WSFS in and in connection with the Debtors' chapter 11 cases, provided, that the Debtors understand that RL&F cannot at this time represent them in any actual lawsuit or cause of action against WSFS before a court or tribunal of competent jurisdiction. In any event, I am informed that K&E has no connections to WSFS that would preclude K&E from representing the Debtors independently of RL&F in connection with any actual lawsuit or cause of action against WSFS before a court or tribunal of competent jurisdiction.

c.  As discussed in some detail in the Original Affidavit, RL&F currently represents Oncor in matters unrelated to the Debtors' chapter 11 cases. Oncor is not a debtor in the chapter 11 cases, but it is 80% directly or indirectly owned by Energy Future Intermediate Holding Company LLC ("EFIH"), one of the Debtors. I am unaware of, and do not believe there to be, any adversity as between Oncor and any of the Debtors; indeed,

EFIH's equity interests in Oncor constitute the most valuable asset of EFIH's estate. RL&F's representation of Oncor has been (and will continue to be) limited to providing Oncor, as a Delaware limited liability company, and its board of directors with legal advice concerning the rights, duties, and obligations of Oncor and its board under applicable Delaware law. RL&F has not and will not provide any legal advice to Oncor with respect to matters of bankruptcy law, and RL&F previously agreed to not represent Oncor in any capacity in the Debtors' chapter 11 cases. Moreover, RL&F has not represented (and will not represent) Oncor in any matters in which Oncor is adverse to any of the Debtors and will not be adverse to Oncor in the Debtors' chapter 11 cases. In addition, I do not believe that the marketing and sales process described in the *Motion of Energy Future Holdings Corp., et al., for Entry of an Order (A) Approving Bidding Procedures, (B) Scheduling an Auction and Related Deadlines and Hearings, and (C) Approving the Form and Manner of Notice Thereof*, dated September 19, 2014 [D.I. 2087] creates any conflict as between Oncor and any of the Debtors. Finally, RL&F created an internal ethical wall at the outset of its representation of the Debtors, such that the attorneys working on the Oncor matter do not have any involvement with RL&F's representation of the Debtors and vice versa, and RL&F also obtained the informed consent of each of Oncor and the Debtors to such representations.

d.      RL&F represents Vertis Holdings Inc. ("Vertis Holdings") and certain of its affiliates in matters that are wholly unrelated to the Debtors and their chapter 11 cases. I understand that Vertis Holdings was included among the list of Parties-in-Interest because it was believed that Vertis Holdings was one of the Debtors' customers. Upon further review, Vertis Holdings is not a current customer of the Debtors and should not have been included among the list of Parties-in-Interest.

e.      In addition, attached hereto as **Exhibit C** is a chart that, with respect to each Specifically Named Engagement (excluding Vertis Holdings and its affiliates, which were listed among the Parties-in-Interest in error), discloses (i) whether RL&F can be adverse to such party or parties[2] and

---

[2] This information is derived from an evaluation of the engagement and/or waiver letters on file, if any, for each entity and/or its affiliates, and is accurate to the best of RL&F's knowledge. RL&F will engage in further analysis on a case-by-case basis if the Debtors become adverse to any entity in **Exhibit C** or their affiliates. Where **Exhibit C** indicates that RL&F may be adverse to an entity, RL&F may commence a cause of action on the Debtors' behalf against such entity. RL&F will not commence a cause of action in the Debtors' chapter 11 cases against the parties listed on **Exhibit C** hereto that are Current Clients unless RL&F has an applicable waiver on file or first receives a waiver from such party allowing RL&F to commence such an action. To the extent that a waiver does not exist or is not obtained from such client and it is necessary for the Debtors to commence an action against that client, the Debtors will be represented in such particular matter by conflicts counsel (*i.e.*, either K&E, to the extent that K&E is not also conflicted or, to the extent that both RL&F and K&E are conflicted, third-party conflicts counsel). For the avoidance of doubt, RL&F may request a waiver from any entity that RL&F has stated

(ii) the fees generated by such party or parties in the 12 months before June 30, 2014, expressed as a percentage of the total fees incurred by all of RL&F's clients in the same period.

17.    Finally, in order to further supplement the Original Affidavit, pursuant to Bankruptcy Rules 2014(a) and 2016(b) and Local Rule 2014-1(a), RL&F conducted a supplemental conflict search with regard to interested, or potentially interested parties, that had either (i) entered an appearance in the Debtors' jointly-administered cases, (ii) requested service of documents filed in the Debtors' jointly-administered cases, and/or (iii) filed one or more motions or responsive pleadings in the Debtors' jointly-administered cases between the Petition Date and July 31, 2014.  In connection with this supplemental conflict check, I became aware that certain clients, former clients and affiliates thereof may be parties in interest in these chapter 11 cases.

18.    Attached hereto as **Exhibit A** is a supplemental list of the clients and affiliates thereof that are currently represented by RL&F in matters wholly unrelated to the Debtors' cases.  Attached as **Exhibit B** hereto is a supplemental list of clients and affiliates thereof that have been represented by RL&F in the past five years in matters wholly unrelated to the Debtors' cases.  Both **Exhibit A** and **Exhibit B** supplement the Original Affidavit.

*[Remainder of page intentionally left blank.]*

(continued…)

it could not be adverse to in **Exhibit C** and, if such waiver is granted, RL&F may represent the Debtors adversely to such entity.  Similarly, in certain circumstances, RL&F may ask conflicts counsel to handle a matter even where RL&F believes it can represent the Debtors adversely to such entity.

RLF1 10587062v.4

19.     I do not believe that any of these matters constitute a Significant

Engagement.  In any event, RL&F will not represent the foregoing parties in interest in any facet

of the Debtors' cases.

Dated:  October 23, 2014
        Wilmington, Delaware

_____
Daniel J. DeFranceschi (No. 2732)

SWORN TO AND SUBSCRIBED before
me this 23rd day of October 2014.

_____
Notary Public

My Commission Expires: 2/26/15

RLF1 10587062v.4