**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re: ) | Chapter 11 |
| ) | |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] ) | Case No. 14-10979 (CSS) |
| ) | |
| Debtors. ) | (Jointly Administered) |
| ) | |
| ) | Hearing Date: November 20, 2014 at 12:00 p.m. |
| ) | Objection Deadline: November 6, 2014 at 4:00 p.m. |

**MOTION OF ENERGY FUTURE HOLDINGS CORP., *ET AL.*,
FOR ENTRY OF AN ORDER APPROVING THE ASSUMPTION
OF CERTAIN UNEXPIRED LEASES BY AND AMONG
LUMINANT GENERATION COMPANY LLC, LUMINANT MINING
COMPANY LLC, SANDOW POWER COMPANY LLC, AND ALCOA INC.**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") file this motion (this "Motion") for entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Order"), authorizing Luminant Generation Company LLC ("Luminant Generation"), Luminant Mining Company LLC ("Luminant Mining"), and Sandow Power Company LLC ("Sandow Power" and, together with Luminant Generation and Luminant Mining, the "Debtor Parties") to assume the prepetition agreements set forth on **Exhibit 1** to the Order (each, an "Alcoa Lease") with Alcoa Inc. ("Alcoa"), pay any related cure amounts due to Alcoa, and provide adequate assurance of future performance. In support of this Motion, the Debtors submit the *Declaration of Robert Frenzel, Senior Vice President and Chief Financial Officer of Luminant Generation Company LLC in Support of the Motion of Energy Future*

---

[1] The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, for which joint administration has been granted, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

*Holdings Corp.,* et al.*, for Entry of an Order Approving the Assumption of Certain Executory Contracts and Unexpired Leases by and among Luminant Generation Company LLC, Luminant Mining Company LLC, Sandow Power Company LLC, and Alcoa Inc.* (the "Frenzel Declaration"). In further support of this Motion, the Debtors respectfully state as follows.

**Jurisdiction and Venue**

1.   The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Debtors confirm their consent pursuant to rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Bankruptcy Rules") to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2.   Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.   The bases for the relief requested in this Motion are sections 363 and 365 of title 11 of the United States Code (the "Bankruptcy Code") and rules 2002, 6004, and 6006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

**Relief Requested**

4.   By this Motion, the Debtors seek entry of the Order authorizing the Debtor Parties to assume the Alcoa Leases, pay any related cure amounts due to Alcoa, and provide adequate assurance of future performance in accordance with section 365 of the Bankruptcy Code.

**Background**

5.     On April 29, 2014 (the "Petition Date"), each of the Debtors filed a voluntary petition with the Court under chapter 11 of the Bankruptcy Code. The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. The Court has entered an order for joint administration of these chapter 11 cases. The Court has not appointed a trustee. The Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") formed an official committee of unsecured creditors (the "Creditors' Committee") in these chapter 11 cases on May 13, 2014 [D.I. 420]. Further information regarding the Debtors' business operations and capital structure is set forth in the declaration of Paul Keglevic in support of the Debtors' first day motions [D.I. 98].

**I.     The Sandow Facilities and Three Oaks Mine.**

6.     Alcoa, a corporation organized under the laws of the Commonwealth of Pennsylvania, has a primary aluminum smelter facility located at Rockdale, Texas (the "Rockdale Facility"), which, when operating, required approximately 535 megawatts of energy to operate at full capacity. In connection with supplying the energy needed for this facility, Luminant Generation, Luminant Mining, Sandow Power, and Alcoa are party to one or more agreements concerning (a) the operation of a 569 net MW steam electric power generating station commonly known as Unit 4 ("Sandow Unit 4"), (b) the operation of a 564 net MW electric generating station commonly known as Sandow Unit 5 ("Sandow Unit 5"), and/or (c) the mining of coal lignite reserves at the Three Oaks Mine ("Three Oaks Mine"), used in connection with power generation operations at Sandow Unit 4 and Sandow Unit 5.

**A.     Sandow Unit 4.**

7.     Luminant Generation owns and operates Sandow Unit 4, and also owns the real

3

property on which Sandow Unit 4 is located. In connection with the operation of Sandow Unit 4, Alcoa delivers lignite coal to Luminant Generation, and Luminant Generation meets Alcoa's Rockdale Facility load requirements with up to 398 MW of firm energy. Pursuant to an agreement dated August 13, 1976 (as amended from time to time and together with various related agreements and amendments thereto, the "Unit 4 Agreement") between Alcoa and Luminant Generation, Alcoa invoices Luminant Generation for the cost of lignite used to generate Luminant Generation's portion of the power, and Luminant Generation invoices Alcoa for Alcoa's portion of the expenses incurred by Luminant Generation in operating Sandow Unit 4. Additionally, Alcoa is required to pay Luminant Generation an operating fee and certain other fees for the cost of capital and depreciation, and Luminant Generation is required to pay Alcoa for surplus power sold into the grid, as well as other fees based upon cost of capital and other specific items as set forth in the applicable agreements. The Unit 4 Agreement is effective through December 31, 2038, and continues in effect thereafter unless terminated in writing by either party on three years' notice.

### B. Sandow Unit 5.

8. Sandow Power owns and operates Sandow Unit 5, and leases the real property on which Sandow Unit 5 is located from Alcoa. Pursuant to an agreement dated August 31, 2007 (the "Unit 5 Agreement") between Alcoa, Luminant Generation, and Sandow Power, the parties agreed to the terms governing, among other things, the construction, ownership, and operation of Sandow Unit 5.[2] At present, Sandow Power supplies lignite coal to Sandow Unit 5. The Unit 5 Agreement is effective through December 31, 2038, and continues in effect thereafter unless terminated in writing by either party on one year's notice.

---

[2] The Unit 5 Agreement was amended on August 31, 2007 to provide, among other things, that Alcoa and Sandow Power would enter into the Unit 5 Premises Lease (as defined herein).

### C. Three Oaks Mine.

9. Alcoa and the Debtor Parties are party to several agreements regarding the ownership and mining of lignite reserves at the Three Oaks Mine. Pursuant to the Agreement Regarding Ownership of Lignite Interest dated August 15, 2007 between Alcoa and Sandow Power (the "Lignite Agreement"), the parties established their respective ownership of and interests in the lignite reserve in Three Oaks Mine. Specifically, Alcoa owns the lignite reserves for the supply of lignite to Sandow Unit 4 and Sandow Power owns the lignite reserves for the supply of lignite to Sandow Unit 5. Alcoa and Sandow Power each bear responsibility for the payment of royalties attributable to their respective lignite ownership in the Three Oaks Mine.[3]

10. Pursuant to the Contract Mining Agreement dated August 31, 2007 between Alcoa, Sandow Power, and Luminant Mining (as amended from time to time, the "CMA"), Luminant Mining mines the Three Oaks Mine lignite coal reserves and supplies lignite coal (a) to Alcoa, to meet Alcoa's obligation to supply 100% of the fuel for Sandow Unit 4 and (b) to Sandow Power, for use by Sandow Power as fuel for Sandow Unit 5. Under the CMA, Luminant Mining invoices Alcoa for the cost of mining lignite at the Three Oaks Mine, including the cost of capital and depreciation. The CMA termination date is the earlier of the life of the Three Oaks Mine or December 31, 2038.

---

[3] Pursuant to the Lignite Agreement, the parties also agreed, among other things, to enter into the following agreements: (a) the Lignite Inventory Agreement dated August 31, 2007 between Alcoa, Luminant Mining, and SPC (the "Lignite Inventory Agreement"), pursuant to which SPC purchased an undivided 55% ownership interest in Alcoa's lignite inventory at Three Oaks Mine; (b) the CPS Lease Assignment (discussed herein); (c) the Assignment of Coal and Lignite Leases (discussed herein); (d) the Lignite Mining Lease (discussed herein); and (e) the Lignite Mining Lease Assignment (discussed herein).

**II.        The Alcoa Leases.**

11.    In connection with the operation of Sandow Unit 4, Sandow Unit 5, and the mining of lignite at Three Oaks Mine, the Debtor Parties and Alcoa are party to one or more of the following Alcoa Leases:[4]

- *Premises Lease* dated June 30, 2009, as amended from time to time (the "Power Island Premises Lease") between Alcoa, Luminant Generation, and Sandow Power, providing for the lease of certain property known as the "Long-Term Leased Premises" and the "Power Island," used in connection with the operation of Sandow Unit 4 and Sandow Unit 5.  Under the Power Island Premises Lease, Luminant Generation pays Alcoa approximately $44,000 per year in rent and Sandow Power pays Alcoa approximately $44,000 per year in rent (escalated annually at a rate equal to the Consumer Price Index).

- *Premises Lease* dated August 28, 2007 (the "Unit 5 Premises Lease"), between Alcoa and Sandow Power (as assignee of Luminant Generation), under which Alcoa leases certain premises to Sandow Power for the operation of Sandow Unit 5.  Under the Unit 5 Premises Lease, Sandow Power pays Alcoa approximately $1,000 per year in base rent.

- *Letter Agreement - Sandow Building 200 Rental* dated January 31, 2009 (the "Building 200 Lease") between Alcoa and Sandow Power.  Under the Building 200 Lease, Sandow Power is required to pay Alcoa for the rental of Building 200, located at Alcoa's Rockdale Facility, for use as office space and related uses in support of Sandow Unit 5 power generation operations.  Under the Building 200 Lease, Sandow Power pays Alcoa approximately $8,000 per month in rent (escalated annually at a rate equal to the Consumer Price Index).

- *Lignite Mining Lease* dated August 31, 2007 (the "Lignite Mining Lease"), between Alcoa and Sandow Power.  Under the Lignite Mining Lease, Sandow Power leases a portion of Alcoa's mining rights to certain lignite coal reserves at Three Oaks Mine and pays lignite mining royalties to Alcoa.  The royalty payments due and owing to Alcoa depend in part on the aggregate amount of lignite that is mined, and whether

---

[4] Certain of the Alcoa Leases may be leases of nonresidential real property subject to the deadline to assume or reject imposed by section 365(d)(4) of the Bankruptcy Code (the "Section 365(d)(4) Deadline").  On August 11, 2014, the Court entered the *Order, Pursuant to Section 365(d)(4) of the Bankruptcy Code, Extending the Debtors' Time to Assume or Reject Unexpired Leases of Nonresidential Real Property* [D.I. 1803], extending the Section 365(d)(4) Deadline to November 25, 2014.  Accordingly, in an abundance of caution and to avoid a deemed rejection of the Alcoa Leases, the Debtors are seeking to assume the Alcoa Leases prior to November 25, 2014.  For the avoidance of doubt, however, nothing herein shall constitute an admission by the Debtors than any Alcoa Lease is a lease of nonresidential real property subject to the Section 365(d)(4) Deadline.

RLF1 10957588v.1

such lignite is retained by Sandow Power or is sold to third parties.[5] The Debtors estimate that they pay approximately $450,000 per year on account of royalties due under the Lignite Mining Lease.

- *Sublease Agreement* dated August 31, 2007 (the "Mining Sublease") between Alcoa and Luminant Mining, under which Alcoa subleases and assigns to Luminant Mining the surface and mining rights in Three Oaks Mine held by Alcoa through fee ownership and through third-party lignite leases, as more particularly described in Railroad Commission of Texas, Surface Mining and Reclamation Division, Permit No. 48 (the "Mine Permit"). Under the Mining Sublease, Luminant Mining agrees to comply with the Mine Permit and related leases, deeds, and other documents referenced therein.[6]

- *Assignment of Lignite Mining Lease and Assignment Agreement* dated August 31, 2007 between Alcoa and Sandow Power (the "CPS Lease Assignment"), pursuant to which Alcoa assigned to Sandow Power an undivided interest in Alcoa's lignite interests in the Three Oaks Mine, including the right to mine such lignite, held by Alcoa through its ownership of that certain Lignite Mining Lease and Assignment Agreement dated December 28, 1998 between the City of San Antonio and Alcoa (the "CPS Lease"). Under the CPS Lease Assignment, Sandow Power agrees to bear responsibility for the payment of royalties and other payments attributable to its respective undivided ownership in the CPS Lease.[7]

- *Assignment of Coal and Lignite Leases* dated August 31, 2007 (the "Assignment of Coal and Lignite Leases") between Alcoa and Sandow Power, under which Alcoa conveys an undivided ownership interest to Sandow Power in and to certain lignite mining interests in Three Oaks Mine held by Alcoa through ownership of certain coal and lignite leases, equal to the percentage of lignite from Three Oaks Mine that is consumed by Sandow Unit 5, and Sandow Power assumes the obligations under such coal and lignite leases to the extent of its undivided ownership interest in each of the leases.[8] Under the Assignment of Coal and Lignite Leases, Luminant Mining agrees to bear responsibility for the payment of royalties and other payments attributable to its respective undivided ownership in each of the subject coal and lignite leases.

---

[5] Pursuant to the Lignite Mining Lease Assignment dated August 31, 2007 between Alcoa and SPC (the "Lignite Mining Lease Assignment"), SPC conveys an undivided ownership interest to Alcoa in and to the lignite mining interests in the Three Oaks Mine held by SPC through its ownership of the Lignite Mining Lease, equal to the percentage of lignite from Three Oaks Mine that is consumed by Sandow Unit 4, and Alcoa assumes the obligations under the Lignite Mining Lease to the extent of its undivided ownership interest in such lease.

[6] The Mining Sublease is also subject to the terms of the Lignite Agreement.

[7] The CPS Lease Assignment is subject to the Mine Permit and Mining Sublease.

[8] The Assignment of Coal and Lignite Leases is also subject to the Mine Permit and Mining Sublease.

7

- *Coal Lease* dated April 14, 2005 (the "Alcoa Coal Lease") between Alcoa Inc., as lessor, and Sandow Power, as lessee and assignee, under which Alcoa Inc. leases a 275.801 acre tract located in Lee County, Texas to Sandow Power for purposes of mining coal and lignite.[9]

- *Premises Lease* dated August 31, 2007 (the "Mining Premises Lease"), between Alcoa and Luminant Mining, under which Alcoa leases the land on which certain office and maintenance facilities associated with the Three Oaks Mine is located. Under the Mining Premises Lease, Luminant Mining pays Alcoa $100 per month in base rent.

- *Ground Lease* dated August 31, 2007 (the "Sandow Mine Corridor Lease"), between Alcoa and Luminant Mining, under which Alcoa leases certain land to Luminant Mining used for the portion of the transportation corridor for the Three Oaks Mine, located within Alcoa's Railroad Commission of Texas surface mining permit for the Sandow Mine, to enable Luminant Mining to carry out its contracted mining, reclamation, and related activities. Under the Sandow Mine Corridor Lease, Luminant Mining pays Alcoa base rent on a monthly basis, which is calculated using a formula based on the net book value of the leased premises.

- *Ground Lease* dated August 31, 2007 (the "Non-Royalty Bearing Ground Lease"), between Alcoa and Luminant Mining. The Non-Royalty Bearing Ground Lease is a non-royalty bearing real property ground lease under which Alcoa leases approximately 2,500 acres of certain real property to Luminant Mining in connection with Luminant Mining's contract mining operations related to Three Oaks Mine, and charges Luminant Mining for use of the leased premises. Under the Non-Royalty Bearing Ground Lease, Luminant Mining pays Alcoa base rent on a monthly basis, which is calculated using a formula based on the net book value of the leased premises.

### III.    Adequate Assurance.

12.    During these chapter 11 cases, the Debtors have continued operating their power generation and electricity sale businesses as debtors in possession, and have remained current with respect to their ongoing postpetition performance obligations under their agreements with Alcoa, including the Alcoa Leases. Additionally, the Debtors are current on their postpetition payment obligations under their agreements with Alcoa that are subject to the *Order Approving the Stipulation by and among Luminant Generation Company LLC, Luminant Mining Company*

---

[9]    The Alcoa Coal Lease was assigned from Alcoa Inc., as original lessee, to Sandow Power on August 31, 2007, pursuant to the Assignment of Coal and Lignite Leases.

8

RLF1 10957588v.1

*LLC, Sandow Power Company LLC, and Alcoa Inc.* [D.I. 2002] (the "Setoff Order," and such stipulation, the "Setoff Stipulation"), entered by the Bankruptcy Court on September 12, 2014.[10] Importantly, in the aggregate, Alcoa is generally a *net payor* under the various agreements with the Debtor Parties and, as such, net cash payments received from Alcoa for goods and services provided under these agreements provide liquidity and working capital in excess of that required to make payments to Alcoa under the Alcoa Leases.

13. Pursuant to the *Final Order (A) Authorizing Use of Cash Collateral for Texas Competitive Electric Holdings Company LLC and Certain of its Debtor Affiliates, (B) Granting Adequate Protection, and (C) Modifying the Automatic Stay* [D.I. 855] (the "TCEH Cash Collateral Order"), entered by the Court on June 6, 2014, the Debtors received authority to use approximately $272 million of cash collateral of certain prepetition secured lenders. As of August 31, 2014, the Debtors' cash balance totaled approximately $1.534 billion, including approximately $150 million of unencumbered cash. Additionally, pursuant to the *Final Order (A) Approving Postpetition Financing for Texas Competitive Electric Holdings Company LLC and Certain of its Debtor Affiliates, (B) Granting Liens and Providing Superpriority Administrative Expense Claims, and (C) Modifying the Automatic Stay* [D.I. 856] (the "TCEH DIP Order") and the Senior Secured Superpriority Debtor-in-Possession Credit Agreement, dated as of May 5, 2014 (as amended, restated, supplemented, or otherwise modified from time to time, the "TCEH DIP Credit Agreement"), the Debtors have access to a $3.375 billion debtor-in-

---

[10] Pursuant to the Setoff Stipulation, the Debtors and Alcoa agreed to net and set off certain mutual claims, resulting in: (a) the satisfaction of all of Alcoa's prepetition claims against Luminant Mining, Luminant Generation, and Sandow Power arising on account of the various obligations described in the Setoff Stipulation, other than the $16,496.60 Allowed Alcoa/SPC Net Claim (as defined in the Setoff Stipulation) due to Alcoa under the Lignite Mining Lease; (b) the payment by Alcoa to the Debtors of approximately $4.9 million on account of certain net prepetition obligations; (c) the payment by Alcoa to the Debtors of approximately $4.05 million on account of certain net postpetition obligations accrued through June 30, 2014; and (d) the payment, on or before October 15, 2014, of all outstanding net amounts due to or from Alcoa under the Setoff Stipulation for the period July 1, 2014 through September 30, 2014.

9

possession financing facility (the "TCEH DIP Facility"). As of August 31, 2014, the Debtors have approximately $1.950 billion of availability under the TCEH DIP Facility. Accordingly, the Debtors believe that they have provided Alcoa with adequate assurance of the Debtors' future performance under the Alcoa Leases.

**Basis for Relief**

**I.    Assumption of the Alcoa Leases is an Exercise of the Debtors' Business Judgment.**

14. Section 365(a) of the Bankruptcy Code provides that a debtor in possession "may assume or reject any executory contract or unexpired lease of the debtor" subject to the court's approval. 11 U.S.C. § 365(a). Courts generally authorize debtors to assume or reject executory contracts and unexpired leases where the debtors appropriately exercise their "business judgment." *See, e.g., Sharon Steel Corp. v. Nat'l Fuel Gas Distrib. Corp.*, 872 F.2d 36, 39-40 (3d Cir. 1989); *Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.)*, 4 F.3d 1095, 1098 (2d Cir. 1993); *Robertson v. Pierce (In re Chi-Feng Huang)*, 23 B.R. 798, 800 (B.A.P. 9th Cir. 1982); *cf. In re Richmond Metal Finishers, Inc.*, 756 F.2d 1043, 1047 (4th Cir. 1985) (holding that absent bad faith or abuse of discretion, deference is given to debtor's business judgment); *Wheeling-Pittsburgh Steel Corp. v. West Penn Power Co. (In re Wheeling-Pittsburgh Steel Corp.)*, 72 B.R. 845, 849 (Bankr. W.D. Pa. 1987); *In re G Survivor Corp.*, 171 B.R. 755, 757 (Bankr. S.D.N.Y. 1994).

15. Courts generally will not second-guess a debtor's business judgment concerning the assumption or rejection of an executory contract or unexpired lease. The "business judgment" test merely requires a showing that either assumption or rejection of the executory contract or unexpired lease will benefit the debtor's estate. *See In re Trans World Airlines*, 261 B.R. 103, 121 (Bankr. D. Del. 2003) ("A debtor's decision to reject an executory contract must be summarily affirmed unless it is the product of 'bad faith, or whim or caprice'") (quoting *In re*

10

*Wheeling-Pittsburgh Steel Corp.*, 72 B.R. at 849-50); *In re Trans World Airlines, Inc.*, No. 01-0056, 2001 Bankr. LEXIS 722, at *7-8 (Bankr. D. Del. Mar. 16, 2001) (noting that the standard under section 365 requires consideration of the benefit of the rejection to the debtor's estate).

16. The Debtors are currently evaluating all of their executory contracts and unexpired leases with Alcoa for purposes of deciding whether to assume or reject such agreements. While the Debtors have not yet made a decision with respect to all of the agreements with Alcoa, including the Unit 4 Agreement, the Unit 5 Agreement, and the CMA, the Debtors have determined, in their sound business judgment, that assumption of the Alcoa Leases at this time is in the best interest of the Debtors' estates. The Alcoa Leases provide the Debtors with important access, use, mining, and other rights that are necessary to operate Sandow Unit 4 and Sandow Unit 5 and to perform their contract mining and related services. These power generation and mining activities are a significant source of revenue for the Debtors, which more than offset rental payments that are due to the Alcoa under certain of the Alcoa Leases. Additionally, certain of the Alcoa Leases may be unexpired leases of nonresidential real property that are subject to the Section 365(d)(4) Deadline. If the Debtors do not seek to assume such leases prior to November 25, 2014, these leases may be deemed rejected, requiring the Debtors to immediately surrender the property to Alcoa. Accordingly, the Court should approve the assumption of the Alcoa Leases.

## II. The Debtors Have Satisfied the Adequate Assurance Requirements of Section 365 of the Bankruptcy Code.

17. Pursuant to section 365(b)(1)(A) of the Bankruptcy Code, a debtor may not assume an executory contract unless, at the time of assumption, the debtor cures or provides adequate assurance that the debtor will promptly cure any existing default. *See* 11 U.S.C. § 365(b)(1)(A); *see also L.R.S.C. Co. v. Rickel Home Ctrs. (In re Rickel Home Ctrs.), Inc.*, 209

11

F.3d 291, 298 (3d Cir. 2000) (finding that that the debtor must cure defaults or provide adequate assurance of prompt cure); *In re DBSI, Inc.*, 405 B.R. 698, 704 (Bankr. D. Del. 2009) (same); *In re Rowland*, 292 B.R. 815, 818 (Bankr. E.D. Pa. 2003) ("There is no dispute that in order for a debtor to assume an executory contract, it must cure existing defaults."). Further, pursuant to section 365(b)(1)(C) of the Bankruptcy Code, a debtor seeking to assume an executory contract must provide adequate assurance of future performance under such contract.

18.  Presently, there are no existing defaults under the Alcoa Leases (other than the Lignite Mining Lease) covered by the Setoff Stipulation that the Debtors must cure pursuant to section 365(b)(1)(A) of the Bankruptcy Code, and the Debtors will promptly pay the Allowed Alcoa/SPC Net Claim under the Lignite Mining Lease and the cure amounts (if any) due to Alcoa that are associated with all other Alcoa Leases as set forth on **Exhibit 1** to **Exhibit A** attached hereto.  Moreover, Alcoa is adequately assured of the Debtors' future performance under the Alcoa Leases as required by section 365(b)(1)(C) of the Bankruptcy Code.[11]  The Debtors submit that their access to cash collateral and funding under the TCEH DIP Facility, the Debtors' ongoing power generation and electricity sale operations, net cash receipts from other agreements with Alcoa, and diligence in remaining current on postpetition obligations to Alcoa together constitute adequate assurance of future performance. *See Carlisle Homes, Inc. v. Azzari (In re Carlisle Homes, Inc.)*, 103 B.R. 524, 538 (Bankr. D.N.J. 1989) (suggesting the meaning of "adequate assurance of future performance" depends on the facts and circumstances of each case, but should be given "practical, pragmatic construction"); *In re Casual Male Corp.*, 120 B.R. 256, 264-65 (Bankr. D. Mass 1990) (finding an irrevocable letter of credit to be adequate assurance

---

[11] Nothing herein shall constitute an admission by the Debtors that there is or has been a default under any of the Alcoa Leases.

for future performance under section 365(b)(1)(C)); *In re Alipat, Inc.*, 36 B.R. 274, 277-78 (Bankr. E.D. Mo. 1984) (same).

**III.    Cause Exists to Authorize the Debtors' Financial Institutions to Honor Checks and Electronic Fund Transfers.**

19.    The Debtors have sufficient funds to pay the amounts described in this Motion in the ordinary course of business by virtue of expected cash flows from ongoing business operations (including with Alcoa), access to cash collateral and unencumbered cash, and borrowing availability under the TCEH DIP Facility.  In addition, under the Debtors' existing cash management system, the Debtors can readily identify checks or wire transfer requests as relating to an authorized payment in respect of cure amounts or postpetition obligations owing to Alcoa under the Alcoa Leases.  Thus, the Debtors believe that checks or wire transfer requests, other than those relating to authorized payments, will not be honored inadvertently. Accordingly, the Debtors respectfully request that the Court authorize and direct all applicable financial institutions, when requested by the Debtors, to receive, process, honor, and pay any and all checks or wire transfer requests in respect of the relief requested in this Motion.

## Waiver of Bankruptcy Rules 6004(a) and 6004(h)

20.    To implement the foregoing successfully, the Debtors seek a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the 14-day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h).

## Reservation of Rights

21.    Nothing contained in this Motion or any actions taken by the Debtors pursuant to relief granted in the Order is intended or should be construed as:  (a) an admission as to the validity or amount of any particular claim against a Debtor entity; (b) a waiver of the Debtors' rights to dispute any particular claim on any grounds; (c) a promise or requirement to pay any

particular claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Motion; (e) an admission by the Debtors that an Alcoa Lease is executory or unexpired, as applicable; (f) a waiver or limitation of the Debtors' rights under the Bankruptcy Code or any other applicable law; (g) a waiver of any claims with respect to the writedowns identified in those certain letters of John P. Holsinger of Alcoa to Tiffany L. Silvey of Luminant dated March 17, 2014 and Tiffany L. Silvey of Luminant to John P. Holsinger of Alcoa on January 16, 2014 and March 4, 2014  (the "Lignite Dispute"); (h) a waiver of any claims with respect to or arising from the lignite inventory described in the Lignite Inventory Agreement between Alcoa, Sandow Power, and Luminant Mining dated August 31, 2007; (i) a request or authorization to assume or reject any agreements under section 365 of the Bankruptcy Code other than the agreements listed on **Exhibit 1** annexed to **Exhibit A** attached hereto; (j) a waiver of any party's rights to assert that any other party is in breach or default of any agreement; or (k) an admission that any of the Alcoa Leases are integrated with any other contract or lease.

## Notice

22.     The Debtors shall provide notice of this Motion on the date hereof via first class mail to:  (a) the U.S. Trustee; (b) counsel to the Creditors' Committee; (c) Wilmington Trust, N.A., in its capacity as administrative agent under the TCEH first lien credit agreement and collateral agent under the TCEH intercreditor agreements and counsel thereto; (d) Bank of New York Mellon Trust Company, N.A., in its capacity as indenture trustee under:  (i) the TCEH unsecured pollution control revenue bonds; and (ii) the EFCH 2037 Notes due 2037, and counsel thereto; (e) American Stock Transfer & Trust Company, LLC, in its capacity as indenture trustee under:  (i) the 9.75% EFH senior unsecured notes due 2019; (ii) the 10.0% EFH senior unsecured notes due 2020; (iii) the 10.875% EFH LBO senior unsecured notes due 2017; (iv) the

11.25%/12.0% EFH LBO toggle notes due 2017; (v) the 5.55% EFH legacy notes (series P) due 2014; (vi) the 6.50% EFH legacy notes (series Q) due 2024; and (vii) the 6.55% EFH legacy notes (series R) due 2034, and counsel thereto; (f) Computershare Trust Company, N.A. and Computershare Trust Company of Canada, in their capacities as indenture trustee under: (i) the 11.0% EFIH senior secured second lien notes due 2021; and (ii) the 11.75% EFIH senior secured second lien notes due 2022, and counsel thereto; (g) UMB Bank, N.A. in its capacity as indenture trustee under: (i) the 9.75% EFIH senior unsecured notes due 2019; and (ii) the 11.25%/12.25% EFIH senior toggle notes due 2018, and counsel thereto; (h) Delaware Trust Company of Delaware in its capacity as indenture trustee under: (i) the 6.875% EFIH senior secured notes due 2017; (ii) the 10.0% EFIH senior secured notes due 2020; and (iii), the 11.50% TCEH senior secured notes due 2020, and counsel thereto; (i) Law Debenture Trust Company of New York in its capacity as indenture trustee under: (i) the 10.25% TCEH senior unsecured notes due 2015; and (ii) the 10.50%/11.25% TCEH senior toggle notes due 2016, and counsel thereto; (j) Wilmington Savings Fund Society, FSB in its capacity as indenture trustee under the 15.0% TCEH senior secured second lien notes due 2021, and counsel thereto; (k) counsel to certain holders of claims against the Debtors regarding each of the foregoing described in clauses (c) through (j); (l) the agent for the TCEH debtor-in-possession financing facility and counsel thereto; (m) the agent for the EFIH debtor-in-possession financing facility and counsel thereto; (n) counsel to certain holders of equity in Texas Energy Future Holdings Limited Partnership; (o) counsel to the Ad Hoc Committee of TCEH Unsecured Noteholders; (p) counsel to the Ad Hoc Committee of TCEH Second Lien Noteholders; (q) Oncor Electric Delivery Holdings Company LLC and counsel thereto; (r) Oncor Electric Delivery Company LLC and counsel thereto; (s) the Securities and Exchange Commission; (t) the Internal Revenue Service; (u) the Office of the

RLF1 10957588v.1

United States Attorney for the District of Delaware; (v) the Office of the Texas Attorney General on behalf of the Public Utility Commission of Texas; (w) counsel to the Electric Reliability Council of Texas; (x) those parties that have requested notice pursuant to Bankruptcy Rule 2002; and (y) Alcoa.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

## No Prior Request

23. No prior request for the relief sought in this Motion has been made to this or any other court.

[*Remainder of page intentionally left blank.*]

RLF1 10957588v.1

WHEREFORE, the Debtors respectfully request that the Court enter the Order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested in this Motion and granting such other and further relief as is appropriate under the circumstances.

Dated:  October 23, 2014
       Wilmington, Delaware

*/s/ Jason M. Madron*
**RICHARDS, LAYTON & FINGER, P.A.**
Mark D. Collins (No. 2981)
Daniel J. DeFranceschi (No. 2732)
Jason M. Madron (No. 4431)
920 North King Street
Wilmington, Delaware 19801
Telephone:  (302) 651-7700
Facsimile:  (302) 651-7701
Email:  collins@rlf.com
       defranceschi@rlf.com
       madron@rlf.com

-and-

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Edward O. Sassower, P.C. (admitted *pro hac vice*)
Stephen E. Hessler (admitted *pro hac vice*)
Brian E. Schartz (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022-4611
Telephone:  (212) 446-4800
Facsimile:  (212) 446-4900
Email:  edward.sassower@kirkland.com
       stephen.hessler@kirkland.com
       brian.schartz@kirkland.com

-and-

James H.M. Sprayregen, P.C. (admitted *pro hac vice*)
Chad J. Husnick (admitted *pro hac vice*)
Steven N. Serajeddini (admitted *pro hac vice*)
300 North LaSalle
Chicago, Illinois 60654
Telephone:  (312) 862-2000
Facsimile:  (312) 862-2200
Email:  james.sprayregen@kirkland.com
       chad.husnick@kirkland.com
       steven.serajeddini@kirkland.com

Co-Counsel to the Debtors and Debtors in Possession