# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) Case No. 14-10979 (CSS) |
| Debtors. | ) (Jointly Administered) |
| | ) Re: D.I. 2015, 2311, 2490 |

## DEBTORS' REPLY TO OBJECTION TO NOTICE OF ASSUMPTION

The above-captioned debtors and debtors in possession (collectively, the "Debtors") file this reply (this "Reply") to the objection (the "Objection") of the Tarrant Regional Water District ("TRWD") [D.I. 2490] to the Debtors' notice of assumption [D.I. 2311] (the "Notice") of the Water Contract dated May 6, 1952 (the "Contract") between TRWD and Texas Electric Service Company, predecessor in interest to Luminant Generation Company, LLC ("Luminant"). In support of the Reply, the Debtors submit the *Declaration of Robert Frenzel in Support of the Debtors' Reply to Objection to Notice of Assumption* (the "Frenzel Declaration"). In further support of the Reply, the Debtors respectfully state as follows.

### Background

1. On September 15, 2014, the Court entered an order approving expedited procedures for the rejection, assumption, or assignment of executory contracts and unexpired leases [D.I. 2015] (the "Procedures Order"). Under the Procedures Order, on October 3, 2014, the Debtors filed the Notice, attached to which was a proposed order approving the assumption

---

[1] The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, which are being jointly administered, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

RLF1 10959074v.1

of the Contract (the "Proposed Order"). On October 17, 2014, TRWD filed the Objection to Luminant's assumption of the Contract.

2. The Contract provides that TRWD will sell water to Luminant for use in a steam-electric generating station at Eagle Mountain Lake in Tarrant County, Texas. The Contract has an initial term of 50 years and an option for Luminant to renew for another 50-year term. Luminant exercised this option in 1999.

3. Luminant previously operated a steam-generating electric plant on the lake. Luminant retired the existing steam-generating electric plant in December 2010, and subsequently completed demolition of the original boiler and turbine structures in 2014. Certain equipment and auxiliary facilities of the original plant—primarily water intake and discharge equipment, tunnels and other facilities—have been preserved to allow for a more efficient power plant to be built at the existing site in the future—*i.e.*, a repowering project of the original plant.

4. The Debtors believe that a repowering could provide substantial value for the estates. As a result, since retiring the original units, Luminant has actively been working to develop alternatives to repower the original plant. As part of these efforts, Luminant has explored a variety of financing alternatives (including potential partnerships), taken steps to obtain the necessary water and air permits, and applied for revised interconnect agreements with the Electric Reliability Council of Texas related to the repowering.

5. TRWD has received notice of many, if not all, of these facts. Indeed, on October 11, 2013, Luminant confirmed to TRWD in writing that it had not abandoned the plant.[2] And,

---

[2] The October 11, 2013 correspondence from Luminant to TRWD is attached as **Exhibit A** to the Frenzel Declaration.

on February 22, 2014, and May 31, 2014, the Debtors made disclosures in public notices related to these efforts.[3]

6.  Notwithstanding these facts and disclosures, TRWD filed the Objection to the Debtors' assumption of the Contract.[4] In the Objection, (a) TRWD argues Luminant cannot assume the Contract because TRWD terminated the Contract prepetition when Luminant purportedly abandoned the plant and failed to remove certain facilities from the lake; (b) in the alternative, TRWD argues that Luminant must cure both its failure to remove these facilities and its failure to make a $1,000 annual payment in 2013; and (c) TRWD argues that Luminant has not provided adequate assurance of future performance, and TRWD needs information as to Luminant's future business plans for the plant.

## Argument

7.  The Court should overrule the Objection and authorize the assumption of the Contract. As an initial matter, TRWD does not dispute that the Debtors' business judgment supports assumption of the Contract. Next, TRWD's objections to assumption of the Contract are not valid. The Contract has not terminated by its terms or by operation of law—Luminant has not abandoned the adjacent premises and has no obligation to remove any facilities from the lake. With respect to the appropriate cure amount, the Debtors have reviewed their books and records, and agree with the $1,000 amount and will amend their requested relief accordingly. Finally, TRWD has received adequate assurance of future performance given Luminant's nominal obligations under the Contract relative to the overall operations of Luminant and the Debtors as a whole.

---

[3] The Debtors' public notices and related affidavits of publication are attached as **Exhibit B** to the Frenzel Declaration.

[4] The Debtors are engaged in a dialogue with TRWD and hope to be able to resolve the Objection in advance of the hearing on the Motion.

I.  **The Contract Has Not Terminated and Therefore the Debtors are Entitled to Assume the Contract.**

8. TRWD argues that the Contract was terminated because Luminant purportedly "abandoned" the plant and thus breached its subsequent obligation to remove the facilities from the lake, which somehow equates to termination of the Contract. This is inconsistent with the applicable facts and law.

9. Under the Bankruptcy Code, a debtor "may assume or reject any executory contract or unexpired lease." 11 U.S.C. § 365(a). An executory contract is one under which the obligations of both the debtor and the counterparty "are so far unperformed that the failure of either to complete performance would constitute a material breach." *Cinicola v. Scharffenberger*, 248 F.3d 110, 123 (3d Cir. 2001). As this Court has held, a "contract is not deemed terminated and no longer executory simply because the debtor has defaulted or breached the contract before the commencement of a bankruptcy case." *In re Broadstripe, LLC*, 402 B.R. 646, 656 (Bankr. D. Del. 2009) (Sontchi, J.). Instead, "a distinction must be made between a contract breached pre-petition and a contract terminated pre-petition under applicable non-bankruptcy law." *Id.*

10. As an initial matter, Luminant did not "abandon" the plant. Texas courts give the legal definition to a term of art used in a contract. *See Torch Energy Advisors Inc. v. Plains Exploration & Prod. Co.*, 409 S.W.3d 46, 56 (Tex. App. 2013). Under Texas property law, "abandonment" requires "both an intention to abandon and an actual relinquishment." *Shuttle Oil Corp. v. Hamon*, 477 S.W.2d 701, 705 (Tex. Civ. App. 1972). Indeed, "non-use and the passage of time alone do not constitute an abandonment." *Morgan v. Fox*, 536 S.W.2d 644, 652 (Tex. Civ. App. 1976); *see also Strauch v. Coastal States Crude Gathering Co.*, 424 S.W.2d 677 (Tex. Civ. App. 1968) (finding that a 22-year period of nonuse did not establish abandonment).

4

Here, the mere fact that Luminant demolished certain structures of the existing plant does not constitute an abandonment, particularly because Luminant maintained many structures of the existing plant, such as the existing water intake and discharge equipment and tunnels at the lake. Indeed, Luminant has expressly informed TRWD of its intention to resume operations at the plant through a publicly-proposed repowering project. And, Luminant has been actively pursuing permits to support the repowering of this site that will take advantage of the infrastructure remaining on the site. Given that no abandonment has occurred, the Contract has not been breached and therefore has not been terminated on this basis.

11. Nor is the Debtors' failure to make the most recent $1,000 annual payment a basis for termination of the Contract. Under Texas law, an immaterial breach does not result in termination of a contract. *See Mustang Pipeline Co. v. Driver Pipeline Co.*, 134 S.W.3d 195, 198 (Tex. 2004). The delay in making the $1,000 payment—which the Debtors are prepared to make in connection with assumption—is immaterial in light of the scope of the Contract. *See Querencia Props., S. de R.L. de C.V. v. New Querencia Capital Partners, L.L.C.*, 224 S.W.3d 348, 351 (Tex. App. 2006) ("[A] material failure to perform or to offer to perform on a stated day does not of itself discharge the other party's remaining duties unless the circumstances, including the language of the agreement, indicate that performance or an offer to perform by that day is important."). Indeed, the delay was partially the result of TRWD's failure to invoice the Debtors for the annual lease payment or otherwise inform the Debtors that it was owed any amount until this time. Thus, because the Contract was not terminated before the Petition Date under Texas law, the Debtors are entitled to assume the Contract.

## II. The Debtors Have Provided TRWD With Adequate Assurance of Future Performance.

12. Next, TRWD asserts that, even if the Contract is assumable, Luminant must provide adequate assurance of future performance in the form of information about its business plans for the plant. This is not the appropriate form of adequate assurance under the Contract.

13. Adequate assurance is a test of the likelihood that the debtor will be able to perform under the contract going forward. *See In re PRK Enters., Inc.*, 235 B.R. 597, 603 (Bankr. E.D. Tex. 1999). Moreover, the requirement is given a practical and pragmatic construction. *In re DBSI, Inc.*, 405 B.R. 698, 708 (Bankr. D. Del. 2009). Thus, courts often rely on financial and operational metrics as a basis to find adequate assurance. *See, e.g., In re Great Atl. & Pac. Tea Co., Inc.*, 472 B.R. 666, 675-76 (S.D.N.Y. 2012); *In re Fleming Cos., Inc.*, No. 03-10945, 2004 WL 385517, at *4 (Bankr. D. Del. Feb. 27, 2004), *aff'd*, 499 F.3d 300 (3d Cir. 2007).

14. Here, Luminant's performance obligations under the Contract are a $1,000 fixed annual payment and modest variable payments for the consumption of water. As a practical matter, these obligations are nominal in light of the scale of the Debtors' overall operations. As of August 1, 2014, the Debtors had $2.916 billion of cash on their balance sheets, and Luminant alone had monthly operating revenues of over $450 million. *See Monthly Operating Report for the Period From August 1, 2014 to August 31, 2014* [D.I. 2274]. Moreover, Luminant will emerge from these chapter 11 cases as a viable going concern. The Contract itself does not require Luminant to reveal its business plans for the plant, and therefore these plans are not relevant to adequate assurance of future performance. And, regardless, as the Debtors have made clear in public notices, they are considering variety of strategic alternatives for the plant and are actively in pursuit of relevant permits for a repurposing of the plant.

RLF1 10959074v.1

## Conclusion

For the reasons set forth above and in accordance with the Procedures Order and the Notice, the Debtors respectfully request that the Court deny TRWD's objection and enter the Proposed Order as modified.

*[Remainder of page intentionally left blank.]*

Dated: October 24, 2014
Wilmington, Delaware

/s/ [signature]

**RICHARDS, LAYTON & FINGER, P.A.**
Mark D. Collins (No. 2981)
Daniel J. DeFranceschi (No. 2732)
Jason M. Madron (No. 4431)
920 North King Street
Wilmington, Delaware 19801
Telephone:   (302) 651-7700
Facsimile:   (302) 651-7701
Email:   collins@rlf.com
   defranceschi@rlf.com
   madron@rlf.com

-and-

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Edward O. Sassower, P.C. (admitted *pro hac vice*)
Stephen E. Hessler (admitted *pro hac vice*)
Brian E. Schartz (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022-4611
Telephone:   (212) 446-4800
Facsimile:   (212) 446-4900
Email:   edward.sassower@kirkland.com
   stephen.hessler@kirkland.com
   brian.schartz@kirkland.com

-and-

James H.M. Sprayregen, P.C. (admitted *pro hac vice*)
Chad J. Husnick (admitted *pro hac vice*)
Steven N. Serajeddini (admitted *pro hac vice*)
300 North LaSalle
Chicago, Illinois 60654
Telephone:   (312) 862-2000
Facsimile:   (312) 862-2200
Email:   james.sprayregen@kirkland.com
   chad.husnick@kirkland.com
   steven.serajeddini@kirkland.com

*Co-Counsel to the Debtors and Debtors in Possession*