# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | ) |
| | ) Chapter 11 |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) |
| | ) Case No. 14-10979 (CSS) |
| Debtors. | ) |
| | ) (Jointly Administered) |
| | ) |
| | ) **Objection Deadline: November 20, 2014 at 4:00 p.m.** |

## SUMMARY COVER SHEET TO THE FIRST INTERIM FEE APPLICATION OF GIBSON, DUNN & CRUTCHER LLP SPECIAL COUNSEL TO THE DEBTORS AND DEBTORS IN POSSESSION, FOR THE PERIOD FROM APRIL 29, 2014 THROUGH AND INCLUDING AUGUST 31, 2014

In accordance with the Local Bankruptcy Rules for the District of Delaware (the "Local Bankruptcy Rules"), Gibson, Dunn & Crutcher LLP ("Gibson Dunn"), special counsel to the above-captioned debtors and debtors in possession (collectively, the "Debtors"), submits this summary (this "Summary") of fees and expenses sought as actual, reasonable, and necessary in the fee application to which this Summary is attached (the "Fee Application")[2] for the period from April 29, 2014 through August 31, 2014 (the "Fee Period").

Gibson Dunn submits the Fee Application as an interim fee application in accordance with the *Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Professionals* [Docket No. 2066] (the "Interim Compensation Order") and the *Stipulation and Order Appointing a Fee Committee* [Docket No. 1896] (the "Fee Committee Order").

---

[1] The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, for which joint administration has been granted, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

[2] Capitalized terms used but not otherwise defined in this Summary shall have the meanings ascribed to such terms in the Fee Application.

| General Information | |
| --- | --- |
| Name of Applicant: | Gibson, Dunn & Crutcher LLP |
| Authorized to Provide Services to: | Energy Future Holdings Corp, et al. Debtors and Debtors in Possession |
| Petition Date: | April 29, 2014 |
| Date of Order Authorizing the Debtors to Retain Gibson Dunn [Docket No. 2058]: | September 16, 2014, *nunc pro tunc* to April 29, 2014 |

| Summary of Fees and Expenses Sought in the Fee Application | |
| --- | --- |
| Period for Which Compensation and Reimbursement is Sought in the Fee Application: | April 29, 2014 through August 31, 2014 |
| Amount of Compensation Sought as Actual, Reasonable, and Necessary for the Fee Period: | $786,925.00[3] |
| Amount of Expense Reimbursement Sought as Actual, Reasonable, and Necessary for the Fee Period: | $1,835.07[4] |
| Total Compensation and Expense Reimbursement Requested for the Fee Period: | $788,760.07 |

| Rate Increases Applicable to the Fee Period | |
| --- | --- |
| Total Amount of Compensation Sought for the Fee Period, Calculated Using Rates as of the Date of Retention: | $786,925.00 |

---

[3]   This amount reflects a downward adjustment of $1,111 as stated in the Certificates of No Objection filed in connection with the Monthly Fee Statements.

[4]   During this Fee Period, Gibson Dunn received a credit from a third-party vendor in the amount of $6,502.75 in connection with an EFH Corp. matter, which the Debtors will offset against EFH Corp. fees and expenses paid to Gibson Dunn.  Gibson Dunn is requesting approval of the total actual and necessary expenses incurred.

RLF1 10978528v.1

| *Summary of Past Requests for Compensation and Prior Payments* | |
|---|---|

| | |
|---|---|
| Total Amount of Compensation Previously Requested Pursuant to the Interim Compensation Order to Date: | $629,540.00 |
| Total Amount of Expense Reimbursement Previously Requested Pursuant to the Interim Compensation Order to Date: | $1,835.07 |
| Total Compensation Approved Pursuant to the Interim Compensation Order to Date: | $0 |
| Total Amount of Expense Reimbursement Approved Pursuant to the Interim Compensation Order to Date: | $0 |
| Total Allowed Compensation Paid to Date: | $0 |
| Total Allowed Expenses Paid to Date: | $0 |
| Compensation Sought in this Application Already Paid Pursuant to the Interim Compensation Order But Not Yet Allowed: | $0 |
| Expenses Sought In This Application Already Paid Pursuant to the Interim Compensation Order But Not Yet Allowed: | $0 |

Dallas, Texas
Date: October 30, 2014

/s/ Robert B. Little
**GIBSON, DUNN & CRUTCHER LLP**
Robert B. Little
2100 McKinney Avenue
Dallas, TX 75201
Telephone:  (214) 698-3260
Facsimile:  (214) 571-2900
Email:        RLittle@gibsondunn.com

*Special Counsel to the Debtors and Debtors in Possession*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) | Case No. 14-10979 (CSS) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |

### FIRST INTERIM FEE APPLICATION OF GIBSON, DUNN & CRUTCHER LLP SPECIAL COUNSEL TO THE DEBTORS AND DEBTORS IN POSSESSION, FOR THE PERIOD FROM APRIL 29, 2014 THROUGH AND INCLUDING AUGUST 31, 2014

Gibson, Dunn & Crutcher LLP ("Gibson Dunn"), special counsel to the above-captioned debtors and debtors in possession (collectively, the "Debtors") in these chapter 11 cases (the "Chapter 11 Cases"), hereby submits this first interim fee application (the "Fee Application") for allowance of compensation for professional services provided in the amount of $786,925.00 and reimbursement of actual and necessary expenses in the amount of $1,835.07 that Gibson Dunn incurred for the period from April 29, 2014 through August 31, 2014 (the "Fee Period"). In support of this Fee Application, Gibson Dunn submits the declaration of Robert B. Little, a partner at Gibson Dunn, (the "Little Declaration"), which is attached hereto as **Exhibit A** and incorporated by reference. In further support of this Fee Application, Gibson Dunn respectfully states as follows:

### Jurisdiction

1.      The United States Bankruptcy Court for the District of Delaware (the "Court")

---

[1]    The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, for which joint administration has been granted, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.   This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

2.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The bases for the relief requested herein are sections 330 and 331 of title 11 of the United States Code (the "Bankruptcy Code"), Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), Rules 2016-1 and 2016-2 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Bankruptcy Rules"), the *Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Professionals* [Docket No. 2066] (the "Interim Compensation Order"), and the *Stipulation and Order Appointing a Fee Committee* [Docket No. 1896] (the "Fee Committee Order").

## Background

4.       On April 29, 2014 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  On June 5, 2014, the Court entered an order [Docket No. 849] for the joint administration of the Chapter 11 Cases.  The Court has not appointed a trustee or examiner in the Chapter 11 Cases.  The Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") formed an official committee of unsecured creditors (the "Creditors' Committee") in the Chapter 11 Cases on May 13, 2014 [Docket No. 420].  Further information regarding the Debtors' business operations and capital structure is set forth in the declaration of Paul Keglevic in support of the Debtors' first day motions [Docket No. 98].

5.      On September 16, 2014, the Court entered the Interim Compensation Order, which sets forth the procedures for interim compensation and reimbursement of expenses for all

2

professionals in these cases.

6.      Given the size and complexity of the Chapter 11 Cases, the U.S. Trustee, the Debtors, and the Creditors' Committee agreed to recommend that the Court appoint a fee committee to review and report, as appropriate, on interim and final fee applications filed by all of the Debtors' retained professionals in accordance with 11 U.S.C. §§ 328, 330, and 331 of the Bankruptcy Code and the Interim Compensation Order (the "Fee Committee").  On August 21, 2014, the Court entered the Fee Committee Order, appointing the Fee Committee and establishing the procedures governing the Fee Committee's review of the Debtors' retained professionals applications for compensation and the resolution of any concerns raised during such review.  On October 3, 2014, the Fee Committee distributed an initial memorandum regarding guidelines for expense reimbursements to those professionals retained in the Chapter 11 Cases (the "Fee Committee Guidelines").  Gibson Dunn received the Fee Committee Guidelines on Friday, October 3, 2014.  Gibson Dunn believes that the relief requested herein complies with those guidelines.

**Preliminary Statement**

7.      During the Fee Period, Gibson Dunn advised the Debtors in connection with certain corporate, public policy, and litigation matters.  The matters are identified as services provided to all Debtors or specifically to (a) Energy Future Holdings Corp. ("EFH Corp."), (b) Energy Future Intermediate Holding Company LLC ("EFIH"), and (c) Energy Future Competitive Holdings Company LLC and each of its direct and indirect subsidiaries that are Debtors in the Chapter 11 Cases (collectively, the "TCEH Debtors").

8.      ***Litigation Matters***.  During the Fee Period, Gibson Dunn represented the TCEH Debtors in litigation matters, including: (a) disputes with Aurelius Capital Management LP and affiliates; (b) multiple lawsuits with FPL Energy, LLC; (c) a Freedom of Information Act

dispute; (d) disputes with the Sierra Club involving claimed violations of the Clean Air Act at the Martin Lake Power Plant and the Big Brown Power Plant; and (e) a lawsuit brought by the EPA with respect to certain coal-fueled power plants.  Specifically, Gibson Dunn attended to issues pertaining to the applicability and effects of the automatic stay on the Debtors' prepetition litigation; counseled the TCEH Debtors on strategies for continued litigation and counterclaims, negotiated case schedules and prepared pretrial reports; and represented the Debtors in front of the Bankruptcy Court with regard to a motion to extend the automatic stay with respect to one of the pending litigation matters.

9.    ***Corporate Matters***.  During the Fee Period, Gibson Dunn represented the Debtors in general and special transactional matters and provided advice to the Debtors in connection with required filings with the Securities and Exchange Commission (the "SEC").  These matters included (a) conducting diligence, providing advice, and preparing resolutions and board presentation materials regarding corporate governance and executive compensation matters; (b) reviewing and revising business-related risk factors to be included in the Debtors' disclosure statements; (c) preparing requisite legal opinions to be delivered in connection with the TCEH Debtors' debtor-in-possession credit facility; (d) consulting with the TCEH Debtors regarding the proposed acquisition of certain energy related assets from Optim Energy; (e) drafting proposed timelines for EFIH's exchange offer, tender offer, and DIP notes offering; (f) reviewing and advising with respect to the tripartite agreement for EFIH's outstanding indentures; (g) drafting model contractual clauses to be included in the EFH Corp. master service agreements; (h) conducting analysis regarding the potential delisting of certain outstanding EFH Corp. notes from the New York Stock Exchange in connection with the EFH Corp. bankruptcy filing; and (i) consulting with EFH Corp. regarding the appointment of officers and in connection

with directors and officers insurance policies.   During the Fee Period, Gibson Dunn also provided advice to EFH Corp. and EFIH in connection with required filings with the SEC, including reviewing and revising the annual report on Form 10-K, quarterly report on Form 10-Q for the first quarter of 2014, and current reports on Form 8-K.

10.    ***Debtor-in-Possession Financing***.   During the Fee Period, Gibson Dunn spent considerable time working closely with the Debtors and the Debtors' other professionals to evaluate, negotiate, and execute (a) an exchange offer of EFIH first lien notes for EFIH first lien debtor-in-possession notes (the "EFIH First Lien DIP Exchange Offer"), (b) a cash tender offer for EFIH second lien notes (the "EFIH Second Lien DIP Tender Offer"), and (c) a new-money offering of EFIH second lien convertible debtor-in-possession notes (the "EFIH Second Lien DIP Notes Offering").   Specifically Gibson Dunn (a) identified and evaluated various DIP financing alternatives in close consultation with the Debtors and the Debtors' other professionals; (b) reviewed and edited presentations to the Debtors' board of directors regarding DIP financing proposals; (c) identified and analyzed pertinent securities laws issues implicated by such transactions; (d) drafted and revised transaction documents; (e) monitored, reviewed, and analyzed filings with the Bankruptcy Court related to the transactions; (f) worked with Epiq Systems to coordinate launch and closing mechanics; (g) assisted in evaluating appropriate extensions to the tender offer period; and (h) drafted and revised Forms 8-K and Form 10-K disclosure and press releases.

11.    ***Other Matters***.   During the Fee Period, Gibson Dunn assisted the Debtors with several tax issues, including research and analysis of the tax considerations of the terms of the second-lien debtor-in-possession notes and preparation of tax disclosures with respect thereto, as well as provided advice to the Debtors related to public policy matters.

12.     In short, during the Fee Period, Gibson Dunn spent considerable time advising the Debtors in connection with corporate, litigation, and other non-bankruptcy matters.  In light of the above, and as more fully set forth herein, the Court should approve this Fee Application.

### The Debtors' Retention of Gibson Dunn

13.     On September 16, 2014, the Court entered the *Order Authorizing the Debtors to Retain and Employ Gibson, Dunn & Crutcher LLP as Special Counsel for Certain Corporate and Litigation Matters, Effective* Nunc Pro Tunc *to the Petition Date* [Docket No. 2058] (the "Retention Order"), attached hereto as **Exhibit B** and incorporated by reference.  The Retention Order authorizes the Debtors to compensate and reimburse Gibson Dunn in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, the Fee Committee Order, and the Interim Compensation Order.  The Retention Order also authorizes the Debtors to compensate Gibson Dunn at Gibson Dunn's hourly rates charged for services of this type and to reimburse Gibson Dunn for Gibson Dunn's actual and necessary out-of-pocket expenses incurred, subject to application to this Court.  The particular terms of Gibson Dunn's engagement are detailed in the engagement letter by and between Gibson Dunn and Energy Future Holdings Corp., effective as of May 9, 2011, and attached hereto as **Exhibit C** (the "Engagement Letter").

14.     Pursuant to the Retention Order, Gibson Dunn was retained to represent the Debtors as Special Counsel for certain corporate, litigation, public policy, and other non-bankruptcy matters effective *nunc pro tunc* to the Petition Date.

15.     To comply with the *Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases* (the "U.S. Trustee Guidelines") promulgated by the Office of the United States Trustee, Gibson Dunn submitted to the Debtors a budget and staffing plan for the Fee Period, attached hereto as **Exhibit D**.

6

## Disinterestedness of Gibson Dunn

16.     To the best of the Gibson Dunn's knowledge and as disclosed in the *Declaration of Robert B. Little in Support of the Application of the Debtors for an Order Authorizing the Debtors to Retain and Employ Gibson, Dunn & Crutcher LLP as Special Counsel for Certain Corporate and Litigation Matters, Effective* Nunc Pro Tunc *to the Petition Date* [Docket No. 662] (the "First Little Declaration") and the *First Supplemental Declaration of Robert B. Little in Support of the Application of the Debtors for an Order Authorizing the Debtors to Retain and Employ Gibson, Dunn & Crutcher LLP as Special Counsel for Certain Corporate and Litigation Matters, Effective* Nunc Pro Tunc *to the Petition Date* [Docket No. 2036] (the "Supplemental Little Declaration"), (a) Gibson Dunn does not hold or represent any interest adverse to any of the Debtors with respect to the matters on which Gibson Dunn is retained and (b) other than as set forth in the First Little Declaration and the Supplemental Little Declaration, Gibson Dunn has no relationship to any of the Debtors, any of the Debtors' significant creditors, equity interest owners, other known parties in interest in the Chapter 11 Cases (as identified by the Debtors), or to the Debtors' professionals that are known to be assisting the Debtors in the Chapter 11 Cases.

17.     Gibson Dunn may have in the past represented, may currently represent, and likely in the future will represent parties in interest in connection with matters unrelated to the Debtors in these Chapter 11 Cases.  In the First Little Declaration and Supplemental Little Declaration, Gibson Dunn disclosed its connections to parties in interest that it has been able to ascertain using its reasonable efforts.  Gibson Dunn will update such disclosures, as appropriate, if Gibson Dunn becomes aware of relevant and material new information.

18.     Gibson Dunn performed the services for which it is seeking compensation on behalf of the Debtors and their estates, and not on behalf of any committee, creditor, or other entity.

7

19.     Except to the extent of the retainer paid to Gibson Dunn as described in the First Little Declaration, during the period covered by this Fee Application, Gibson Dunn has received no payment and no promises for payment from any source other than the Debtors for services provided or to be provided in any capacity whatsoever in connection with the Chapter 11 Cases. There is no agreement or understanding between Gibson Dunn and any other person, other than attorneys of Gibson Dunn, for the sharing of compensation to be received for services provided in the Chapter 11 Cases.

**Summary of Compliance with Interim Compensation Order and Fee Committee Order**

20.     This Fee Application has been prepared in accordance with the Interim Compensation Order and the Fee Committee Order.

21.     Gibson Dunn seeks interim compensation for professional services provided to the Debtors during the Fee Period in the amount of $786,925.00[2] and reimbursement of actual and necessary expenses incurred in connection with providing such services in the amount of $1,835.07.[3]  During the Fee Period, Gibson Dunn attorneys and paraprofessionals expended a total of 1,158.60 hours for which compensation is requested.

22.     Gibson Dunn has not received any payments to date under the Interim Compensation Order or the Fee Committee Order.  Gibson Dunn has submitted Monthly Fee Statements (as defined in the Interim Compensation Order) for each of May, June, July, and August 2014, seeking payment of (a) 80% of the fees incurred by the Debtors for reasonable and necessary professional services provided by Gibson Dunn and (b) 100% of the actual and

---

[2]     This amount reflects a downward adjustment of $1,111 as stated in the Certificates of No Objection filed in connection with the Monthly Fee Statements.

[3]     During this Fee Period, Gibson Dunn received a credit from a third-party vendor in the amount of $6,502.75 in connection with an EFH Corp. matter, which the Debtors will offset against EFH Corp. fees and expenses paid to Gibson Dunn.  Gibson Dunn is requesting approval of the total actual and necessary expenses incurred.

8

necessary costs and expenses incurred by Gibson Dunn in connection with the services provided to the Debtors for each month.

23.     Accordingly, by this Fee Application, and to the extent not already paid by the time of the hearing on this Fee Application, Gibson Dunn seeks payment of all amounts, including the remaining $157,385.00, which represents the 20% holdback on fees incurred during the Fee Period.

## Fees and Expenses Incurred During Fee Period

**A.    Customary Billing Disclosures**

24.     Gibson Dunn's hourly rates are set at a level designed to compensate Gibson Dunn fairly for the work of its attorneys and paraprofessionals and to cover fixed and routine expenses.  The hourly rates and corresponding rate structure utilized by Gibson Dunn in the Chapter 11 Cases are equivalent to or less than the hourly rates and corresponding rate structure used by Gibson Dunn for similar complex corporate, securities, litigation, and restructuring matters, whether in court or otherwise, regardless of whether a fee application is required.  The rates and rate structure reflect that such complex matters typically are national in scope and typically involve great complexity, high stakes, and severe time pressures.

25.     For the convenience of the Court and all parties in interest, attached hereto as **Exhibit E** is a summary of blended hourly rates for timekeepers who billed to non-bankruptcy matters and blended hourly rates for timekeepers who billed to the Debtors during the Fee Period.

**B.    Fees Incurred During Fee Period**

26.     In the ordinary course of Gibson Dunn's practice, Gibson Dunn maintains computerized records of the time expended to provide the professional services required by the Debtors and their estates.  For the convenience of the Court and all parties in interest, attached

hereto as **<u>Exhibit F</u>** is a summary of fees incurred and hours expended during the Fee Period, setting forth the following information:

- the name of each attorney and paraprofessional for whose work on compensation is sought;

- each attorney's year of bar admission and area of practice concentration;

- the aggregate time expended and fees billed by each attorney and each paraprofessional during the Fee Period;

- the hourly billing rate for each attorney and each paraprofessional at Gibson Dunn's current billing rates;

- the hourly billing rate for each attorney and each paraprofessional as disclosed in the first interim application;

- the number of rate increases since the inception of the case; and

- a calculation of total compensation requested using the rates disclosed in the first interim application.

## C.    Expenses Incurred During Fee Period

27.    In the ordinary course of Gibson Dunn's practice, Gibson Dunn maintains a record of expenses incurred in the rendition of the professional services required by the Debtors and their estates and for which reimbursement is sought.  For the convenience of the Court and all parties in interest, attached hereto as **<u>Exhibit G</u>** is a summary for the Fee Period, setting forth the total amount of reimbursement sought with respect to each category of expenses for which Gibson Dunn is seeking reimbursement.  This out-of-pocket disbursement sum is broken down into categories of charges, and may include, among other things, telephone and telecopier toll and other charges, mail and express mail charges, special or hand delivery charges, document processing and photocopying charges, charges for mailing supplies (including, without limitation, envelopes and labels) provided by Gibson Dunn to outside copying services for use in mass mailings, travel expenses, expenses for "working meals," computerized research,

10

transcription costs, as well as non-ordinary overhead expenses such as secretarial and other overtime.

### Proposed Payment Allocation

28.     In accordance with paragraph 2(b) of the Interim Compensation Order, Gibson Dunn proposes the following allocation of the fees and expenses sought in this Application among (a) EFH Corp., (b) EFIH, and (c) the TCEH Debtors:

| Debtor(s) | Amount |
|---|---|
| **Direct Benefit Fees:  $735,554.57 (comprised of  $733,719.50 in fees and $1,835.07 in expenses)** | |
| EFH Corp. | $56,973.50 |
| EFIH | $319,555.00 |
| TCEH Debtors | $357,191.00 |
| *Total* | $733,719.50 |
| **Collective Benefit Fees:[4]  $53,205.50 (comprised of $53,205.50 in fees and $0.00 in expenses)** | |
| EFH Corp. | $2,919.46 |
| EFIH | $20,406.47 |
| TCEH Debtors | $29,879.57 |
| *Total* | $53,205.50 |
| *Grand Total* | $788,760.07 |

### Summary of Legal Services Provided During the Fee Period

29.     As discussed above, during the Fee Period, Gibson Dunn provided extensive and important professional services to the Debtors in connection with certain corporate, litigation, and other non-bankruptcy matters.

30.     To provide a meaningful summary of Gibson Dunn's services provided on behalf of the Debtors and their estates, Gibson Dunn has established, in accordance with its internal billing procedures, certain subject matters categories (each, a "Matter Category").  The following is a summary, by Matter Category, of the professional services provided by Gibson Dunn during

---

[4]     Matter Categories applicable to all Debtors are allocated to each Debtor in the same proportion as the amount incurred by each Debtor to its direct benefit on a monthly basis.

the Fee Period. This summary is organized in accordance with Gibson Dunn's internal system of matter numbers. A schedule setting forth a description of each Matter Category utilized in this case, the number of hours expended by Gibson Dunn partners, associates, and paraprofessionals for each Matter Category, and the aggregate fees associated with each Matter Category is attached hereto as **Exhibit H**.

31.     In addition, subject to redaction for attorney-client privilege, work product doctrine, and confidentiality where necessary to protect the Debtors and their estates, Gibson Dunn's computerized records of time expended providing professional services to the Debtors and their estates are attached hereto as **Exhibit I**, and Gibson Dunn's records of expenses incurred during the Fee Period in the rendition of professional services to the Debtors and their estates are attached as **Exhibit J**.

**A.      Applicable to All Debtors**

**1.      Tax Issues (Matter No. 12)**

Fees: $9,286.50          Total Hours: 12.6

32.     This category includes all work related to tax advice and analysis in connection with, among other things, post-bankruptcy debt financing. During the Fee Period, Gibson Dunn assisted the Debtors with several tax issues, including research and analysis of the tax considerations of the terms of the second-lien debtor-in-possession notes and preparation of tax disclosures with respect thereto. Gibson Dunn also consulted with the Debtors' tax specialists regarding such issues.

**2.      Public Policy (Matter No. 25)**

Fees: $1,387.50          Total Hours: 1.5

33.     This category includes all work in connection with providing advice to the Debtors related to certain public policy matters.

12

3.      **Case Administration, Employment, and Fee Applications (Matter No. 30)**

Fees: $42,531.50        Total Hours: 79.4

34.     This category includes all work performed in connection with employment applications, fee statements, fee applications, U.S. Trustee compliance, and other bankruptcy-related administrative responsibilities.    The category also includes all work performed in connection with preparing and submitting budget and staffing plans.[5]

35.     During the Fee Period, Gibson Dunn, spent a considerable amount of time coordinating with the Debtors' bankruptcy counsel with respect to the *Application of Energy Future Holdings Corp.* et al.*, for an Order Authorizing the Debtors to Retain and Employ Gibson, Dunn & Crutcher LLP as Special Counsel for Certain Corporate and Litigation Matters, Effective* Nunc Pro Tunc *to the Petition Date* [Docket No. 662] (the "Retention Application").    Gibson Dunn also finalized the Retention Application, gathered additional information and prepared the Supplemental Little Declaration in response to U.S. Trustee comments and questions, and made initial preparations with respect to the Monthly Fee Statements.    Additionally, Gibson Dunn spent time ensuring that time entries were documented in accordance with the U.S. Trustee Guidelines while preventing the disclosure of privileged or otherwise confidential material.    Moreover, as stated above, Gibson Dunn also spent time preparing and submitting budget and staffing plans in accordance with U.S. Trustee Guidelines.

36.     Each of Gibson Dunn's professionals and paraprofessionals performing services in this category was keenly aware of the importance of performing such services in the most efficient manner possible in order to minimize expenses to the estate.

---

[5]    In accordance with the Fee Committee Guidelines, which require that fees related to budgeting matters be separately classified, Gibson Dunn will separately account for such time going forward.  During this Fee Period, Gibson Dunn estimates that approximately 9.8 hours were spent and approximately $6,077.00 in fees were incurred related to preparing and submitting budget and staffing plans.

13

**B.      Applicable to TCEH Debtors**

**1.      Litigation:  Aurelius (Matter No. 4)**

Fees: $10,771.50       Total Hours: 10.1

37.      This category includes all work related to representing the TCEH Debtors in disputes and potential litigation with Aurelius Capital Management LP and affiliates.  During the Fee Period, Gibson Dunn attended to various administrative issues relating to providing the U.S. Court of Appeals for the Fifth Circuit with notice of and updates on the bankruptcy.

**2.      Litigation:  FPL v. TXU (Matter No. 8)**

Fees: $19,939.50       Total Hours: 24.5

38.      This category includes all work related to representing the TCEH Debtors in litigation with FPL Energy, LLC (together, with its affiliates, "FPL").  During the Fee Period, Gibson Dunn attended to issues pertaining to the applicability and effects of the automatic stay, prepared supplemental briefing and substitution of counsel filings, and counseled the TCEH Debtors on strategies for continued litigation and counterclaims.

**3.      Litigation:  FOIA Disputes and EPA Matters (Matter No. 13)**

Fees: $18,393.50       Total Hours: 30.2

39.      This category includes all work related to representing the TCEH Debtors in a Freedom of Information Act dispute.  During the Fee Period, Gibson Dunn worked with opposing counsel to negotiate a case schedule, prepared Rule 26 disclosures and a joint pretrial report, advised the TCEH Debtors on their strategy for prosecuting their case, and helped formulate a strategy for responding to a potential motion for intervention.

**4.      Litigation:  Sierra Club - Eastern District of Texas (Matter No. 16)**

Fees: $43,576.00       Total Hours: 53.7

40.      This category includes all work related to representing the TCEH Debtors in a

14

dispute with the Sierra Club involving claimed violations of the Clean Air Act at the Martin Lake Power Plant.  During the Fee Period, Gibson Dunn handled issues pertaining to the applicability and effects of the automatic stay and counseled the TCEH Debtors on strategies for continued litigation.

5.    **Litigation:  Sierra Club - Western District of Texas (Matter No. 17)**

Fees: $147,183.00     Total Hours: 220

41.    This category includes all work related to representing the TCEH Debtors in a dispute with the Sierra Club involving claimed violations of the Clean Air Act at the Big Brown Power Plant.  During the Fee Period, Gibson Dunn handled issues pertaining to the applicability and effects of the automatic stay to the underlying litigation and to the TCEH Debtors' motion for attorneys' fees, defeated the Sierra Club's attempt to apply the automatic stay to the TCEH Debtors' motion for attorneys' fees, prepared and filed a reply in support of the TCEH Debtors' motion for attorneys' fees, obtained a $6.4 million fee award, and counseled the TCEH Debtors on litigation strategies.

6.    **Litigation:  NSR Case (Matter No. 18)**

Fees: $87,783.50     Total Hours: 119.7

42.    This category includes all work related to representing the TCEH Debtors in a lawsuit brought by the EPA with respect to certain coal-fueled power plants.  During the Fee Period, Gibson Dunn helped the TCEH Debtors formulate their strategy for defending the litigation, and worked with opposing counsel to negotiate a case schedule and prepare a joint pretrial report.

**7.      Litigation:  2004 FPL Lawsuit (Matter No. 22)**

Fees: $1,071.00          Total Hours: 1.7

43.      This category includes all work related to representing the TCEH Debtors in a lawsuit with FPL initiated in 2004.  During the Fee Period, Gibson Dunn attended to confidential matters related to the lawsuit.

**8.      Litigation:  2011 FPL Lawsuit (Matter No. 23)**

Fees: $5,859.00          Total Hours: 9.3

44.      This category includes all work related to representing the TCEH Debtors in a lawsuit with FPL initiated in 2011.  During the Fee Period, Gibson Dunn attended to issues pertaining to the applicability and effects of the automatic stay, conducted analysis on and communicated with opposing counsel regarding a proposed Rule 11 agreement, and counseled the TCEH Debtors regarding proposed contract amendments.

**9.      Corporate Matters (Matter No. 43)**

Fees: $21,564.00          Total Hours: 30.6

45.      This category includes all work on general and special transactional matters involving TCEH Debtors.  During the Fee Period, Gibson Dunn assisted the TCEH Debtors in connection with certain general corporate matters.  These matters included preparing requisite legal opinions to be delivered in connection with the TCEH Debtors' debtor-in-possession credit facility, conducting related diligence, and providing advice and preparing resolutions and board presentation materials regarding corporate governance and executive compensation matters.  Gibson Dunn also conducted analysis and consulted with the TCEH Debtors regarding the proposed acquisition of certain energy-related assets from Optim Energy.

10. **Non-Working Travel (Matter No. 44)**

Fees: $1,050.00        Total Hours: 2.5
(after applying 50% reduction)

46.    This category includes time that Gibson Dunn attorneys spent traveling in connection with their representation of the TCEH Debtors.  During the Fee Period, Gibson Dunn professionals were required to travel in connection with a hearing in front of the Bankruptcy Court on a motion to extend to the automatic stay filed by a litigant in the Sierra Club - Western District of Texas matter wherein Gibson Dunn is representing the Debtors.  In accordance with Local Rule 2016-2(d)(viii), Gibson Dunn billed the Debtors for one-half of the total time expended.

**C.    Applicable to EFIH Debtors**

1.    **First Lien DIP Exchange Offer (Matter No. 27)**

Fees: $67,412.50        Total Hours: 98.6

47.    This category includes all work on the EFIH First Lien DIP Exchange Offer. During the Fee Period, Gibson Dunn worked closely with the Debtors and the Debtors' other professionals to evaluate, negotiate, and execute the EFIH First Lien DIP Exchange Offer. Gibson Dunn identified and analyzed the pertinent securities laws issues implicated by such transaction.

48.    Gibson Dunn drafted and revised the Information Memorandum and ancillary documents, such as the Letter of Transmittal and Dealer Manager Agreement, in connection with the EFIH First Lien DIP Exchange Offer.  Gibson Dunn continuously updated these documents prior to the launch of the offer to reflect the changing terms of the transaction as it was negotiated.

49.    Gibson Dunn also monitored, reviewed, and analyzed filings with the Bankruptcy

17

Court related to the First Lien Notes Trustee's objections to the EFIH First Lien DIP Exchange Offer.  Gibson Dunn incorporated such analysis into drafts of objections to motions made by the First Lien Notes Trustee.

50.    Additionally, Gibson Dunn worked with Epiq Systems, the Information and Administrative Agent for the EFIH First Lien DIP Exchange Offer, to coordinate launch and closing mechanics for the offer and analyze issues related to the timing of the closing of the offer.

51.    Finally, Gibson Dunn drafted and revised Forms 8-K and Form 10-K disclosure related to the EFIH First Lien DIP Exchange Offer for filing with the SEC.

**2.    Second Lien DIP Tender Offer (Matter No. 28)**

Fees: $43,927.00        Total Hours: 64.4

52.    This category includes all work on the EFIH Second Lien DIP Tender Offer. Throughout the Fee Period, Gibson Dunn worked closely with the Debtors and the Debtors' other professionals to evaluate, negotiate, and execute the EFIH Second Lien DIP Tender Offer in compliance with the securities laws issues implicated by such transaction.  Gibson Dunn identified and analyzed the pertinent securities laws issues.

53.    Gibson Dunn drafted and revised the Offer to Purchase and ancillary documents, such as the Letter of Transmittal, Dealer Manager Agreement and press releases, in connection with the EFIH Second Lien DIP Tender Offer.  Gibson Dunn continuously updated these documents prior to the launch of the offer to reflect the changing terms of the transaction as it was negotiated and throughout the tender offer period.

54.    Additionally, Gibson Dunn analyzed comments from the SEC staff and drafted a supplement to the Offering to Purchase in response thereto.

55.     Gibson Dunn also assisted the Debtors in evaluating appropriate extensions to the tender offer period for the EFIH Second Lien DIP Tender Offer, including the timing of announcement and length of any such extensions; drafted press releases related to extensions of the tender offer period for the EFIH Second Lien DIP Tender Offer; worked with Epiq Systems, the Offer Agent for the EFIH Second Lien DIP Tender Offer, to coordinate launch mechanics for the offer and to analyze issues related to the timing of the launch of the offer and the extensions of the offer period; and assisted the Debtors in evaluating whether to terminate the EFIH Second Lien DIP Tender Offer in connection with the potential termination of the Restructuring Support and Lock-Up Agreement.

56.     Moreover, Gibson Dunn drafted and revised Forms 8-K and Form 10-K disclosure related to the EFIH Second Lien DIP Tender Offer for filing with the SEC, including Forms 8-K for the launch of the offer, announcement of the early tender results, announcements of extensions to the tender offer period, and announcement of the termination of the EFIH Second Lien DIP Tender Offer.

**3.     Second Lien DIP Notes Offering (Matter No. 29)**

Fees: $203,244.00     Total Hours: 306.2

57.     This category includes all work on the EFIH Second Lien DIP Notes Offering. During the Fee Period, Gibson Dunn expended substantial time and energy researching, analyzing, and structuring the EFIH Second Lien DIP Notes Offering.  Although the EFIH Second Lien DIP Notes Offering was not launched during the Fee Period, these services were critical to assist the Debtors in obtaining the best financing opportunity possible.

58.     Gibson Dunn identified and evaluated various DIP financing alternatives in close consultation with the Debtors and the Debtors' other professionals.  Gibson Dunn reviewed and

edited presentations to the Debtors' board of directors regarding DIP financing proposals. Gibson Dunn's tax specialists analyzed the debt structure of the Debtors and advised the Debtors regarding appropriate disclosure of the tax consequences and tax-related considerations implicated by the EFIH Second Lien DIP Notes Offering and other DIP financing proposals.

59.    Additionally, Gibson Dunn researched a variety of securities law issues in connection with the EFIH Second Lien DIP Notes Offering, including an extensive review of the Bankruptcy Code provisions that could provide a registration exemption to the notes to be issued in the EFIH Second Lien DIP Notes Offering.

60.    Gibson Dunn also drafted and revised the Offering Memorandum and ancillary documents, such as the Letters of Subscription, Registration Rights Agreement, and Dealer Manager Agreement, in connection with the EFIH Second Lien DIP Notes Offering.  Gibson Dunn continuously updated these documents throughout the Fee Period to reflect the changing terms of the transaction as it was negotiated.

61.    In addition, Gibson Dunn monitored, reviewed, and analyzed adversary proceedings in, and filings with, the Bankruptcy Court related to the First Lien Notes Trustee's objections to the EFIH Second Lien DIP Notes Offering and incorporated such analysis into revisions to the offering documents for the EFIH Second Lien DIP Notes Offering.

62.    Furthermore, Gibson Dunn worked with Epiq Systems, the Offer Agent for the EFIH Second Lien DIP Notes Offering, to coordinate mechanics for the offer and analyze issues related to the potential timing of the launch of the offer; prepared task and responsibility checklists and timelines and coordinated with the Debtors and the Debtors' other professionals regarding all aspects of the EFIH Second Lien DIP Notes Offering and its potential launch timing, funding mechanics, and other issues; and drafted and revised Forms 8-K related to the

EFIH Second Lien DIP Notes Offering for filing with the SEC.

**4.      SEC Matters (Matter No. 34)**

Fees: $4,009.00        Total Hours: 5.9

63.      This category includes all work related to SEC filings and providing SEC-related advice to EFIH.  During the Fee Period, Gibson Dunn provided advice to EFIH in connection with filings that EFIH was required to make with the SEC, including reviewing and revising EFIH's 2013 annual report on Form 10-K, quarterly report on Form 10-Q for the first quarter of 2014, and current reports on Form 8-K.

**5.      Corporate Matters (Matter No. 35)**

Fees: $962.50 Total Hours: 1.3

64.      This category includes all work on general and special transactional matters involving EFIH.  These matters included work on the EFIH disclosure statement; drafting proposed timelines for EFIH's exchange offer, tender offer, and DIP notes offering; and reviewing and advising with respect to the tripartite agreement for EFIH's outstanding indentures.

**D.      Applicable to EFH Corp. Debtors**

**1.      SEC Matters (Matter No. 31)**

Fees: $19,916.50        Total Hours: 29.3

65.      This category includes all work related to SEC filings and providing SEC-related advice to EFH Corp.  During the Fee Period, Gibson Dunn provided advice to EFH Corp. in connection with filings that EFH Corp. was required to make with the SEC.  This advice included drafting, reviewing, and revising current reports on Form 8-K with respect to restructuring matters and coordinating the filing of those reports, as well as reviewing and revising the EFH Corp. quarterly report on Form 10-Q for the first quarter of 2014.

21

2.      **Corporate Matters (Matter No. 32)**

Fees: $37,057.00          Total Hours: 57.1

66.      This category includes all work on general and special transactional matters involving EFH Corp.  These matters included reviewing and revising business-related risk factors to be included in the EFH Corp. disclosure statement, reviewing bankruptcy hearing transcripts in connection with corporate advice provided by Gibson Dunn, and drafting model contractual clauses to be included in the EFH Corp. master service agreements.

67.      Gibson Dunn also conducted analysis regarding the potential delisting of certain EFH Corp. outstanding notes from the New York Stock Exchange in connection with the EFH Corp. bankruptcy filing and consulted with EFH Corp. on corporate governance matters, including procedures regarding the appointment by EFH Corp. of officers and requirements with respect to the EFH Corp. directors and officers insurance policies.

## Actual and Necessary Expenses Incurred by Gibson Dunn

68.      As set forth in **Exhibit I** attached hereto, and as summarized in **Exhibit G** attached hereto, Gibson Dunn has incurred a total of $1,835.07 in expenses on behalf of the Debtors during the Fee Period.  These charges are intended to reimburse Gibson Dunn's direct operating costs, which are not incorporated into the Gibson Dunn hourly billing rates.  Only clients who actually use services of the types set forth in **Exhibit I** of this Fee Application are separately charged for such services.  The effect of including such expenses as part of the hourly billing rates would impose that cost upon clients who do not require extensive photocopying and other facilities and services.

## Gibson Dunn's Requested Compensation and Reimbursement Should be Allowed

69.      As explained below, Gibson Dunn respectfully submits that the services for which it seeks compensation in this Fee Application were, at the time provided, necessary for and

22

beneficial to the Debtors and their estates and were provided to protect and preserve the Debtors' estates.    Gibson Dunn further believes that it performed the services for the Debtors economically, effectively, and efficiently, and the results obtained benefited not only the Debtors, but also the Debtors' estates and the Debtors' constituents.    Gibson Dunn further submits that the compensation requested herein is reasonable in light of the nature, extent, and value of such services to the Debtors, their estates, and all parties in interest.    Accordingly, Gibson Dunn respectfully submits that approval of the compensation sought herein is warranted and should be approved.

## A.    Reasonable and Necessary Fees Incurred in Providing Services to the Debtors

70.    Section 331 of the Bankruptcy Code provides for interim compensation of professionals and incorporates the substantive standards of section 330 of the Bankruptcy Code to govern the Court's award of such compensation.    Section 330 of the Bankruptcy Code provides that a court may award a professional employed under section 327 of the Bankruptcy Code "reasonable compensation for actual necessary services rendered . . . and reimbursement for actual, necessary expenses."    11 U.S.C. § 330(a)(1).    Section 330 also sets forth the criteria for the award of such compensation and reimbursement:

> In determining the amount of reasonable compensation to be awarded, the court should consider the nature, extent, and the value of such services, taking into account all relevant factors, including—
>
> (A)    the time spent on such services;
>
> (B)    the rates charged for such services;
>
> (C)    whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
>
> (D)    whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem,

23

issue, or task addressed;

(E)    with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and

(F)    whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. § 330(a)(3).

71.    As analyzed below, Gibson Dunn submits that the elements governing awards of compensation justify the allowance requested.

**1.    The Time and Labor Required**

72.    During the Fee Period, 1,158.6 recorded hours have been expended by Gibson Dunn's partners, associates, and paraprofessionals in providing the requested professional services. Gibson Dunn has made every effort to coordinate its efforts with those of the Debtors' bankruptcy counsel so as to avoid any duplication of efforts. The number of hours spent by Gibson Dunn is commensurate with the defined tasks Gibson Dunn has performed and continues to perform on the matters described herein.

**2.    The Rates Charged for Such Services**

73.    During the Fee Period, Gibson Dunn's hourly billing rates ranged from $1,140.00 to $760.00 per hour for partners, from $925.00 to $435.00 for of counsel and associates, and from $380.00 to $355.00 for paraprofessionals. Based on the recorded hours expended by Gibson Dunn's attorneys and paraprofessionals, the average hourly billing rate for Gibson Dunn's services was $679.20.

74.    Gibson Dunn's hourly rates are set at a level designed to compensate Gibson Dunn fairly for the work of its attorneys and paraprofessionals and to cover certain fixed and

routine overhead expenses. Hourly rates vary with the experience and seniority of the individuals assigned. These hourly rates are subject to periodic adjustments to reflect economic and other conditions and are consistent with the rates charged elsewhere.

75.    The hourly rates and corresponding rate structure utilized by Gibson Dunn are equivalent to or less than the hourly rates and corresponding rate structure used by Gibson Dunn for similar complex corporate, securities, litigation, and restructuring matters, whether in court or otherwise, regardless of whether a fee application is required. Specifically, in light of the long tenure of Gibson Dunn's relationship with the Debtors and the volume of matters handled by Gibson Dunn for the Debtors, Gibson Dunn and the Debtors have, with respect to specified matters, negotiated reduced rates and alternative fee arrangements, which has resulted in lower-than-normal billing rates for some attorneys.

### 3.    The Necessity of the Services and the Benefit to the Estate

76.    As detailed above, the services Gibson Dunn provided to the Debtors have conferred substantial benefit on the Debtors' estates. Gibson Dunn's services to the Debtors have also served the desired goal of allowing for continuity of service in these non-bankruptcy matters. In providing these essential non-bankruptcy services, Gibson Dunn has allowed Debtors' bankruptcy counsel to focus on issues more closely related to the reorganization of Debtors' operations.

### 4.    The Complexity, Importance, Nature of, and the Time Spent on Tasks

77.    Gibson Dunn represents and can demonstrate to this Court that the services were performed in a reasonable amount of time, given the complexity of the issues involved and the many and varied legal issues facing the Debtors. Gibson Dunn's detailed and thorough time records demonstrate that the time expended on various tasks was necessary and appropriate to

the vigorous representation of the Debtors.  From the earliest stages of Gibson Dunn's involvement, attempts were made to limit the hours worked, and to avoid duplication of effort and other unnecessary costs.  On occasion, Gibson Dunn attorneys provided services on behalf of the Debtors under severe time constraints.  Moreover, during the Fee Period, Gibson Dunn attorneys were required to perform services on behalf of the Debtors to the preclusion of other firm matters and clients.

**5.      The Experience, Reputation, and Ability of the Attorneys Providing Services**

78.      Gibson Dunn's services have been provided in a highly efficient manner by attorneys who have achieved a high degree of expertise in their respective fields.  Both Gibson Dunn's litigation and corporate departments frequently receive recognition for their skill and achievements.  Gibson Dunn's highly professional and expert group of attorneys has ensured that the representation of the Debtors has progressed in an efficient and expeditious manner.

79.      Because the services provided by Gibson Dunn were, by design, primarily non-bankruptcy in nature, Gibson Dunn submits that board certification in bankruptcy law is not a particularly relevant factor.  In preparing this Fee Application and when otherwise appropriate, however, the Gibson Dunn attorneys performing services for the Debtors did employ the assistance of experienced attorneys in Gibson Dunn's bankruptcy department.

**6.      Customary Compensation**

80.      Gibson Dunn relies on the Court's experience and knowledge with respect to the compensation awards in similar cases.  Given that frame of reference, Gibson Dunn submits that, in light of the circumstances of the case and the substantial benefits derived from Gibson Dunn's assistance, compensation in the amount requested is fair and reasonable.

81.      Based on the factors to be considered under sections 330 and 331 of the

26

Bankruptcy Code, the results Gibson Dunn has achieved to date more than justify allowance in full of Gibson Dunn's compensation and reimbursement request.

**B.      Reasonable and Necessary Expenses Incurred in Providing Services to the Debtors**

82.      For the Fee Period, Gibson Dunn requests reimbursement of $1,835.07 for reasonable and necessary out-of-pocket expenses incurred on behalf of the Debtors.

83.      Gibson Dunn's normal billing rates do not take these expenses into consideration. Rather, Gibson Dunn bills each expense to the applicable client.  A prime example of the rationale for such an approach is photocopying expense.  Because of the great disparity between the photocopying requirements of different clients, it is virtually impossible to absorb photocopying costs fairly and equitably into Gibson Dunn's normal billing rates.  Accordingly, Gibson Dunn charges each client for photocopying expenses separately.  Similarly, Gibson Dunn charges each client separately for telephone, postage, overnight courier, travel expenses, computerized legal research, and messenger services, in each case at Gibson Dunn's cost.

84.      Gibson Dunn does not include the amortization of the cost of any investment, equipment, or capital outlay in its charges for these services.

85.      Pursuant to Rule 2016-2 of the Local Bankruptcy Rules, Gibson Dunn represents that its rate for duplication is $0.10 per page, its rate for outgoing telecopier transmissions is $1.00 per page (excluding related long distance transmission charges), there is no charge for incoming telecopier transmissions, and there is no surcharge for computerized research.

86.      Any services billed by a third-party vendor, with the exception of certain computerized research charges, are charged to the Debtors in the precise amount billed to and paid by Gibson Dunn.  Like many large law firms, Gibson Dunn has negotiated a special arrangement with computerized research companies under which Gibson Dunn pays a flat rate monthly fee for computerized research services.  Consistent with its general policy of billing out-

of-pocket expenses only to clients for which the use of such services is required, Gibson Dunn separately charges each client for computerized research.  To account for such charges while passing through Gibson Dunn's cost savings resulting from its special arrangements, Gibson Dunn charges those clients for whom such services are required at a reduced rate that is less than the rate charged by the computerized research companies to the general public for such services. These charges are intended to cover Gibson Dunn's direct costs for computerized research.

87.    Gibson Dunn has made reasonable efforts to minimize its disbursements in the Chapter 11 Cases.  Each of the expenses incurred by Gibson Dunn in providing professional services to the Debtors was necessary, reasonable, and justified under the circumstances to serve the needs of the Debtors and their estates.

**Reservation of Rights and Notice**

88.    It is possible that some professional time expended or expenses incurred during the Fee Period are not reflected in the Fee Application.  Gibson Dunn reserves the right to include such amounts in future fee applications.  In addition, the Debtors have provided notice of this Fee Application to:  (a) the U.S. Trustee; (b) counsel to the agent of the EFIH First Lien DIP Facility; (c) counsel to the agent of the TCEH DIP Facility; (d) counsel to the Creditors' Committee; and (e) the Fee Committee (collectively, the "Notice Parties").

89.    Pursuant to the Interim Compensation Order and the Fee Committee Order, (a) any Notice Party (other than the Fee Committee) that wishes to object to the Fee Application must file its objection with the Court, with a copy to Chambers and serve it on Gibson Dunn and the Notice Parties so that it is **actually received** on or before **November 20, 2014 at 4:00 p.m. (Eastern Standard Time)** and (b) any member of the Fee Committee that wishes to object to the Fee Application must comply with the procedures set forth in the Fee Committee Order and if such member wishes to object to the Fee Application after complying with such procedures, such

28

member must file its objection with the Court, with a copy to Chambers and serve it on Gibson Dunn and the Notice Parties.

### No Prior Request

90.     No prior application for the relief requested herein has been made to this or any other court.

*[Remainder of Page Intentionally Left Blank]*

WHEREFORE, Gibson Dunn respectfully requests that the Court enter an order (a) awarding Gibson Dunn interim compensation for professional and paraprofessional services provided during the Fee Period in the amount of $786,925.00, and reimbursement of actual, reasonable and necessary expenses incurred in the Fee Period in the amount of $1,835.07; (b) authorizing and directing the Debtors to remit payment to Gibson Dunn for such fees and expenses; and (c) granting such other relief as is appropriate under the circumstances.

Dallas, Texas
Date: October 30, 2014

/s/ Robert B. Little
**GIBSON, DUNN & CRUTCHER LLP**
Robert B. Little
2100 McKinney Avenue
Dallas, TX 75201
Telephone:  (214) 698-3260
Facsimile:  (214) 571-2900
Email:        RLittle@gibsondunn.com

*Special Counsel to the Debtors and Debtors in Possession*