**Exhibit C**

**Engagement Letter**

RLF1 10978528v.1

# GIBSON DUNN

Gibson, Dunn & Crutcher LLP
2100 McKinney Avenue
Dallas, TX 75201-6912
Tel 214.698.3100
www.gibsondunn.com

Robert B. Little
Direct: 214.698.3260
Fax: 214.571.2924
RLittle@gibsondunn.com

May 9, 2011

Ms. Stacey H. Doré
Mr. Andrew M. Wright
Energy Future Holdings Corp.
1601 Bryan Street, 43rd Floor
Dallas, Texas 75230

Re: Representation of Energy Future Holdings Corp. ("EFH") and Luminant Generation Co. LLC ("Luminant")

Dear Stacey and Andy:

We are pleased to serve EFH and its subsidiary Luminant as a client of Gibson, Dunn & Crutcher LLP (GDC). This letter, the attached EFH Outside Counsel Policy, and the GDC Terms of Retention set forth the terms of our relationship. To the extent the EFH Outside Counsel Policy and the GDC Terms of Retention vary, the EFH Outside Counsel Policy will control.

You are retaining us to provide legal services to EFH and Luminant for Legal Matters identified below. Of course, we will endeavor to keep you informed of the progress of your matters and respond to your inquiries, and you will provide us with accurate and complete information and cooperate and keep us informed of developments related to our representation of you. Unless EFH and we otherwise agree in writing, the terms of this letter and the attached EFH Outside Counsel Policy and GDC Terms of Retention will also apply to any additional matters that we handle on behalf of EFH or any EFH affiliate.

Fees and Billing

Generally, we will bill EFH and Luminant for our services and reimbursable expenses on a monthly basis. While our practice is to charge for our legal services based primarily on the amount of time devoted to a matter at hourly rates for the particular professionals involved, a variety of other factors, identified in the attached

# GIBSON DUNN

Ms. Stacey H. Doré
Mr. Andrew M. Wright
Energy Future Holdings Corp.
May 9, 2011
Page 2

Terms of Retention, may also be considered. The identified lawyers will be primarily responsible for the matters identified below. Other attorneys and paralegals may also perform services during the course of this engagement, as long as we have consulted with the responsible attorneys at EFH or Luminant regarding staffing changes.

We will not charge EFH for certain ancillary services, such as word processing and standard secretarial time. We will invoice you for the cost of other services incurred on your behalf.

Legal Matters

1. EFH Liability Management. EFH has retained GDC to assist with its ongoing efforts to manage the company's financial liabilities. I will continue to support these efforts from GDC, working as the company directs and with lawyers from Simpson, Thacher and Bartlett and Vinson & Elkins. My hourly rate for these matters will be $675 per hour, and I will serve as the principal GDC partner responsible for the firm's involvement in these efforts. I also will support the company's general corporate and securities matters, as the company from time to time might request.

2. Aurelius Capital Management. EFH has retained GDC to assist with efforts regarding Aurelius Capital Management and possibly others. Rob Walters and Mike Raiff will support these efforts from GDC, working with Susman Godfrey and as the company directs. Rob Walters' efforts will be reflected in the consulting arrangement he has negotiated separately with EFH, while Mike Raiff's hourly rate for these matters will be $725 per hour.

3. New Source Review Litigation. Luminant has retained GDC to assist with possible New Source Review litigation brought by the Environmental Protection Agency. Bill Dawson will assist in

2

# GIBSON DUNN

Ms. Stacey H. Doré
Mr. Andrew M. Wright
Energy Future Holdings Corp.
May 9, 2011
Page 3

>     these matters, and his rate for these matters will be $780 per hour.
>
> 4.  <u>FPL Texas Supreme Court Appeal</u>. EFH has retained GDC to assist with the FPL Texas Supreme Court appeal. Jim Ho will assist in this matter, and if you accept an hourly rate structure, his rate for this matter will be $695 per hour. We acknowledge that you are also considering a flat fee arrangement for this matter, which GDC and you may mutually agree to apply.

<u>Waiver of Prospective Conflicts on Unrelated Matters</u>

We represent many other clients. It is possible that during or after the time we represent EFH, other present or future clients will ask us to represent them in disputes or transactions with or involving EFH (which includes any related persons or entities) as to legal matters not substantially related to our representation of EFH. It is also possible that other future or present clients will ask us to take a position on their behalf on a legal or policy issue in matters not substantially related to our representation of EFH that is inconsistent with, or contrary to, a position advocated by EFH or that EFH may perceive as being directly or indirectly adverse to its interests. In these situations, the firm could be tempted to balance the interests between its clients rather than vigorously assert a single client's interest on an issue. We do not believe, however, that our simultaneous representation of you in the present matter, and our representation of another client in any such substantially unrelated matter adverse to you will compromise our ability to adequately represent you.

We wish to clarify our mutual understanding with EFH as to the extent to which our present representation both will affect, and will not affect, our ability to represent other existing or future clients in other legal matters, whether or not EFH (including related persons or entities) are adverse or otherwise involved in those matters. As a condition of our undertaking this matter, EFH agrees that:

- we can continue to represent, or can in the future represent, existing or new clients in any matter, including litigation or other adversarial proceedings (which includes bankruptcy or insolvency proceedings, including instances

3

# GIBSON DUNN

Ms. Stacey H. Doré
Mr. Andrew M. Wright
Energy Future Holdings Corp.
May 9, 2011
Page 4

> where EFH is a creditor or equity holder in such a proceeding) ("Other Matters"), so long as the Other Matters are not substantially related to our work for EFH on the matters identified below, even if those other clients' interests are adverse to EFH's interests in the Other Matters;
>
> - we can continue to take legal and policy positions on behalf of existing clients or future clients on matters substantially unrelated to our representation of EFH that may be inconsistent with, or contrary to, the position advocated by EFH or that EFH may perceive as being adverse to the interests of EFH ("Other Issues");
>
> - we might obtain confidential information of interest to EFH in these Other Matters or relating to the Other Issues that we cannot share with EFH; and
>
> - EFH waives conflicts of interest that might arise from the firm's engagement in the Other Matters or with respect to the Other Issues, and will not seek to disqualify the firm or any of the firm's lawyers in, or assert a conflict with respect to, the firm's engagement in the Other Matters or Other Issues.

If for any reason, EFH's consent and waiver of potential conflicts is not effective in the circumstances, EFH consents to our resignation from our representation of EFH, and agrees to support a motion, if filed by the firm, to withdraw from our representation of EFH if resignation at that time is otherwise permissible under applicable professional rules. In that case, EFH would need to engage, at EFH's expense, separate counsel to represent EFH's interests.

Of course, without EFH's further prior written consent, we cannot and will not represent another client in a matter adverse to EFH if we have obtained confidential information of a nonpublic nature from EFH, as a result of our representation of EFH, that, if known to the other client, could be used in the Other Matters by the other client to EFH's material disadvantage without EFH's approval after consultation.

# GIBSON DUNN

Ms. Stacey H. Doré
Mr. Andrew M. Wright
Energy Future Holdings Corp.
May 9, 2011
Page 5

Confirmation of Agreement

If this letter accurately reflects your understanding of our agreement, please acknowledge your approval and acceptance of these terms by signing and returning to me the enclosed copy of this letter. Of course, I would be pleased to answer any questions you might have.

On behalf of Gibson, Dunn & Crutcher LLP, I look forward to continuing our mutually rewarding relationship.

Very truly yours,

Robert B. Little
of GIBSON, DUNN & CRUTCHER LLP

Agreed to this 13th day of May, 2011.

**ENERGY FUTURE HOLDINGS CORP.**

By: Stacey H. Doré
Vice President and Associate General Counsel

RBL/ws
101044701.2

# GIBSON DUNN

**TERMS OF RETENTION
OF
GIBSON, DUNN & CRUTCHER LLP**

Except as modified in writing, the following provisions will apply to the relationship between Gibson, Dunn & Crutcher LLP (the "Firm" or "we") and the client ("you"), as identified in the accompanying letter agreement:

1. **Professional Fees.** The Firm will bill you for services it provides based on a variety of factors, including: the time expended; the complexity of the matter; time limitations imposed; the novelty and difficulty of the issues posed; the amount involved and the results obtained; and the experience, reputation, and ability of the attorney or attorneys performing services on your behalf. The billing rates of our attorneys and paralegals vary, depending generally upon the experience and capabilities of the attorney or paralegal involved, and we adjust these rates from time to time. Upon any adjustment in our assigned rates, we will charge you the adjusted rates. Other attorneys and paralegals may also perform services during the course of this engagement.

2. **Costs and Ancillary Services.** The Firm will invoice you for the cost of certain ancillary services incurred on your behalf. Generally, we will not charge you for certain services, such as word processing and regular secretarial time. Whenever practicable, discounts obtained from vendors will be passed on to you. Under certain circumstances, we may ask you to advance anticipated costs or to pay outside vendors directly for their services. The primary ancillary services and our specific policies regarding billing are set forth below. Other services may be rendered during the course of our engagement, and will also be billed to you. Our charges for these costs and ancillary services are subject to change from time to time.

   2.1. **Word Processing.** Most of the Firm's offices have advanced word processing capabilities and our offices are linked by a network which facilitates efficiency and service to clients. The Firm does not charge for equipment usage or word processing time.

   2.2. **Secretarial Time.** The Firm will not charge you for regular secretarial time. We bill for secretarial overtime services only if your specific demands require late night work or in other unusual circumstances (typically a large case or transaction with dedicated secretaries). The standard fee for overtime secretarial services is $40 per hour.

   2.3. **Duplicating/Copying.** The Firm has a substantial investment in duplicating equipment which is located not only in our service centers but also at several locations on each floor to provide quick turn-around when needed. In-house copying is billed to the client at a flat rate of $.10 per page. If you instruct us to do so,

1

## GIBSON DUNN

we will use outside copying services to the extent possible. Outside duplicating services are charged to the client at the Firm's actual cost with no mark-up.

2.4. Telephone. The Firm will not charge you for local telephone service. Long distance calls are charged at a fixed rate per minute equal to the allocated actual cost as revised from time-to-time.

2.5. Telecopy. The Firm provides in-house FAX services at numerous locations for convenience and confidentiality in serving clients. There is no charge for incoming FAX documents. Charges for outgoing documents are strictly limited to the associated long distance telephone charges. There is not a per page charge.

2.6. Legal Research. Computerized research (such as Lexis and Westlaw) is available at the attorney's desk or in a central library location. Certain vendors bill the Firm based on an annual flat rate. The Firm charges for on-line computer research time based on an allocation of the overall annual cost to provide and manage those services. The rates clients pay factor in the benefit of any discounts the Firm is able to negotiate with vendors of such services.

2.7. Overnight And Local Deliveries. We will charge you for overnight deliveries and local deliveries by outside messenger services at the Firm's actual cost. We will pass on negotiated discounts to you.

2.8. Postage. The Firm will not charge you for postage, except for large volume mailings, which are billed at the Firm's actual cost.

2.9. File Storage. The Firm will not charge you for file storage except in extraordinary circumstances and only after consultation with you and your agreement. The Firm may, at its own discretion, choose to store files electronically rather than hardcopy.

2.10. Office Supplies. We will not charge you for routine quantities of office supplies. You may incur a charge, equal to the Firm's actual cost, for substantial and unusual orders of office supplies required for a particular matter.

2.11. Travel and Subsistence. Our attorneys are instructed to incur transportation, lodging, meal and other travel costs at reasonable rates. The Firm instructs its attorneys to comply with the policies of individual clients regarding airline usage and to obtain the lowest fare available consistent with those policies. We will bill you for all travel costs at the Firm's actual cost, including passing along the direct discount offered by airline carriers. From time to time additional travel benefits from certain carriers based on volume are received by the Firm; all such benefits are generally retained by the Firm.

2.12. Employee Transportation. Under certain circumstances, the Firm provides transportation for its employees, especially when public transportation is not available or safe. In those situations where the Firm provides transportation to or from

2

**GIBSON DUNN**

the office for an employee as part of that particular employee's regular schedule, such costs will <u>not</u> be billed to you. In those situations where employees are working overtime for you because of the time demands of a particular matter, the actual transportation costs may be billed at the discretion of the billing attorney.

2.13. <u>Meetings/Meals (Other Than Travel Related)</u>. When a client or third party is present and the meeting is for the benefit of the client, the client may be billed for actual meal-related costs at the discretion of the billing attorney. Meals or beverages ordered where the client or a third party is not present will <u>not</u> be billed to the client, even if the meeting is for the client's benefit.

2.14. <u>Storage Fees</u>. The Firm charges a small monthly fee for storing images (tiff files) of discovery documents which are typically linked to databases. The current cost is $.003/file for the first 500,000 files and $.001/file thereafter.

2.15. <u>Other Costs and Third Party Vendors</u>. Other costs that we incur for your benefit (such as expert witness fees, filing fees, etc.) will be billed at the Firm's actual cost. In addition, the services provided to you may involve services provided by third parties outside the Firm. You will be required to pay for these outside services directly, or to reimburse us if we make payment for these services on your behalf. When there are substantial expenditures involving outside vendors or substantial out of pocket expenditures, we will require either that you pay those sums to us before we expend them or that you directly contract with and pay the outside vendor. You agree that you will indemnify the Firm for any claim made against the Firm from an outside vendor for services rendered in connection with the Firm's representation of you.

3. <u>Estimates Not Binding</u>. It is often impractical to determine in advance the amount of effort that will be needed to complete all the necessary work on a matter or the total amount of fees and costs which may be incurred. Obviously, any estimates or budgets may need to be adjusted upwards or downwards as changes occur. Moreover, these estimates and budgets are not intended to be binding, are subject to unforeseen circumstances, and by their nature are inexact.

4. <u>Billing and Payment</u>. Fees and expenses will generally be billed monthly and are payable upon presentation, but in no event to exceed 30 days from presentation of our statement. We expect prompt payment, and our experience indicates that prompt billing and prompt payment enhances the working relationship. We reserve the right to postpone or defer providing additional services or to discontinue our representation, to the extent legally permissible, if billed amounts are not paid when due. We also reserve the right to charge a late fee of 1% per month on all sums that are not paid within 30 days of presentation of our statement. You also agree that you will promptly review our statements and raise any questions regarding the amounts and items billed within 30 days of presentation. If you object to only a portion of the charges on a statement, then you agree to pay the remainder of the charges, which will not constitute a waiver of your objection.

3

8

# GIBSON DUNN

5. **Advance Payments.** The Firm may have required an advance payment before working on this matter. Unless otherwise agreed, all advance payments shall be deemed to be advances for attorneys' fees and shall not constitute advances for costs and expenses. Where permitted, the Firm will maintain such advance fee payments in a general account. The amount of this advance payment does not represent our estimate of the total charges which may be incurred, but is only a partial advance payment. Of course, the amount of work which we are called upon to perform may subsequently exceed our prior expectations. The Firm reserves its right, as a condition to the provision of further services, to require an advance payment, if none has previously been provided, and/or an increase in any advance payment. Any charge for services or expenditures not covered by the advance payment is due and payable directly by you upon receipt of each monthly statement. At the conclusion of our representation, any portion of any advance payment which has not been used up by services rendered or payment to third parties made or incurred will be refunded to you.

With respect to litigation matters, such matters may proceed to trial or hearing. Preparing for and conducting the trial or hearing is often time consuming and expensive. Thus, if the matter appears likely headed for trial, we may require an additional advance payment prior to our commencement of preparation for the trial or hearing. The amount of the advance payment will be determined once the trial or hearing appears likely and as soon as possible prior to the date the matter is set for trial or hearing, based upon an estimate of the magnitude of service and expenditures included. If you fail to provide this additional advance payment within 15 days after it is requested by us, you agree that we have the right to discontinue our representation to the extent legally permissible.

6. **Termination of Representation.**

    6.1. **Termination By You.** You have the right to terminate our services at any time. If you decide to terminate our services, you agree to give us prompt written notice of such termination. Upon our termination, you will remain obligated to pay for all services rendered and costs or expenses paid or incurred on your behalf prior to the date of such termination or which are reasonably necessary thereafter. If we are attorneys of record in any proceeding, you agree to execute and return to us a Substitution of Attorney promptly upon receipt from us.

    6.2. **Termination By Us.** We also have the right to withdraw from this representation if, among other things, you fail to honor the terms of our engagement letter and these Terms of Retention, you fail to make payment of any of our statements in a timely manner, you fail to cooperate or to follow our advice on a material matter, or any fact or circumstance occurs that would, in our view, render our continuing representation unlawful or unethical, and we determine that we are permitted to withdraw our representation. If we elect to withdraw, you will take all steps necessary to free us of any obligation to perform further services, including the execution of any documents necessary to complete our withdrawal. Notwithstanding such termination, you will remain obligated to pay us for all services provided and to reimburse us for all costs and expenses paid or incurred on your behalf.

4

# GIBSON DUNN

      6.3.   <u>Date of Termination</u>.  Our representation of you will be considered terminated at the earlier of (a) your termination of our representation, (b) our withdrawal from our representation of you or (c) the substantial completion of our work for you. In the event there has been no work performed by our attorneys on your behalf for a period of six consecutive months, we agree our attorney-client relationship will have been terminated.

      6.4.   <u>Duties Upon Termination</u>.  Upon termination of our involvement in a particular matter for which we were engaged, we will have no duty to inform you of future developments or changes in law which may be relevant to such matter. Further, unless you and the Firm agree in writing to the contrary, we will have no obligation to monitor renewal or notice duties or similar deadlines which may arise from the matters for which we had been engaged. If your matter involves obtaining a judgment and such judgment is obtained, we will only be responsible for those post-judgment services (such as recording abstracts, filing judgment liens, and calendaring renewals of judgments) as are expressly agreed to by you and the Firm in writing, and for which you will be obliged to pay.

      7.   <u>Waiver of Potential Conflicts Between You and the Firm</u>.  The occasion might arise for us to consult with our own counsel – our General Counsel or other firm lawyers working with our General Counsel or with our own outside counsel – regarding our engagement for you. This will be done at our expense, of course. To the extent that we are addressing our own rights or responsibilities, a conflict of interest might be deemed to exist between the Firm and EFH as to such consultation or resulting communications, particularly if a dispute were to arise between the Firm and EFH regarding any of the matters identified in this letter. A condition of this engagement is that, in such circumstances, EFH hereby consents to such consultation occurring, and waives any claim of conflict of interest based on such consultation or resulting communications and agrees that such communications are protected by our own attorney-client privilege from disclosure to anyone, including EFH.

      8.   <u>Identity of the Client</u>.  The Firm's client for purposes of this engagement is only the person(s), entity or entities identified in the accompanying letter agreement. Unless expressly agreed, we are not undertaking the representation of any related or affiliated person or entity, nor any family member, parent corporation or entity, subsidiary, or affiliated corporation or entity, nor any of your or their officers, directors, agents, partners or employees (collectively, "Related Entities"). We generally will not be precluded from representing other existing clients or future clients in legal matters relating or adverse to the Related Entities or any of them.

      9.   <u>Market Abuse Directive</u>.  Companies with securities admitted to trading on a regulated market for the purposes of the European Union's Market Abuse Directive 2003/6/EC ("the Directive"),and the legislation implementing the Directive in the relevant EU member states, and persons acting on behalf of such Companies are required to prepare and maintain a list of those persons working for the Company who have access to certain inside information (whether on a regular or occasional basis) relating directly

5

**GIBSON DUNN**

or indirectly to you ("Your Inside Information"). In this connection, you agree to notify the Firm in writing if you are subject to the Directive. Upon receipt of such written notice, we will draw up and maintain a list of those persons working for Gibson, Dunn & Crutcher LLP who have access to Your Inside Information (the "List"). If you have any questions relating to the List or related issues, please contact the Partner who signed this Engagement Letter.

    10.    <u>Insurance Matters</u>.  You should consider whether you have insurance coverage for any of the claims or liabilities arising out of any of the matters identified in this letter or for related fees and expenses incurred. You have not retained us to provide advice about or represent you or any of your agents or affiliates concerning any such insurance coverage or notice of claims. Our work for a number of insurance companies might raise actual or potential conflicts of interest, or "issue" conflicts, for us were we to address insurance coverage matters for you. Accordingly, we may not be able to provide advice or representation to you with respect to the issue of actual or potential claims for insurance coverage for liability or losses arising out of or related to any of the matters identified in this letter (whether arising at the outset or during the course of our representation) that you or any of your agents or affiliates may be entitled to assert under policies issued to any of these entities or other parties in interest. You should be aware that strategic decisions with respect to any of the matters identified in this letter may affect insurance and coverage, and that coverage concerns may impact strategy, particularly in adversarial proceedings.

    We recommend that you consult with other counsel concerning such matters, including any possible or actual claims or disputes against or with any insurer or other parties who may have applicable insurance. We are not undertaking to represent you in these insurance-related matters without a further express agreement to that effect in writing, after appropriate consideration of any potential conflict of interest issues.

    11.    <u>Conflicts of Interest</u>.  To assist in avoiding representation of parties with conflicts of interest, we maintain a computerized conflict of interest index. The Firm will not represent any party with an interest that may be adverse to that of a person or entity included in the index without an examination to determine whether a conflict of interest would actually be created. To allow us to conduct a conflicts check, you represent that you have identified for us all persons and entities that are or may become involved in this matter, including all persons and entities that are affiliated with you and the other involved or potentially involved parties (such as parent corporations, subsidiaries and other affiliates, officers, directors and principals). You also agree that you will promptly notify us if you become aware of any other persons or entities that are or may become involved in this matter.

    12.    <u>Consent to Electronic Communications</u>.  In order to maximize our efficiency, we intend to use state of the art communication devices to the fullest extent possible (e.g., e-mail, document transfer by computer, cellular telephones, facsimile transfers and such other devices which may develop in the future). The use of such devices under current technology may place your confidences and privileges at risk.

# GIBSON DUNN

However, we believe the efficiencies involved in the use of these devices outweigh the risk of accidental disclosure. By agreeing to these terms you consent to the use of these electronic communication devices.

13. **Related Proceedings and Activities.** If any claim is brought against the Firm or any of its personnel based on your negligence or misconduct, if we are asked to testify as a result of our representation of you, or if we must defend the confidentiality of your communications in any proceeding, you agree to pay us for any resulting costs, including for our time, calculated at the hourly rate for the particular individuals involved, even if our representation of you has ended.

14. **Limitations on Liability.**

14.1. **General Limitation on Liability.** You agree that the Firm shall not have any liability to you in connection with our representation of you except for liability for losses, claims, damages, liabilities or expenses incurred by you that result from our professional malpractice, gross negligence or willful misconduct.

14.2. **Registered Limited Liability Partnership.** Gibson, Dunn & Crutcher LLP is a California registered limited liability partnership. As a result, with certain possible limited exceptions, none of which may be applicable, the partners of the Firm are not liable or accountable, directly or indirectly, including by way of indemnification, contribution, assessment, or otherwise, for debts, obligations, or liabilities of or chargeable to the Firm or another partner in the Firm, whether arising in tort, contract, or otherwise, that are incurred, created, or assumed by the Firm, by reason of being a partner or acting in the conduct of the business or activities of the Firm.

14.3. **Additional Rights.** The provisions of this Section 15 are in addition to any rights that we may have at common law or otherwise, including but not limited to any right of contribution.

14.4. **Indemnification.** You agree to indemnify and hold harmless the Firm and each current, former and future partner, associate and employee of the Firm, to the full extent permitted by law, from and against all claims, actions, liabilities or damages related to or arising out of our representation of you and you will reimburse us for all expenses as they are incurred by us in connection with investigating, preparing to defend or defending against such claims or actions (including attorneys' fees, experts' fees, disbursements and compensation for the time expended by attorneys of the Firm in connection with any such action or claim, calculated at the hourly rate for the particular individuals involved), whether or not in connection with pending or threatened litigation in which we are a party or potential party; provided, however, that you will not be responsible for any claims, actions, liabilities, damages, losses or expenses which are finally judicially determined to have resulted from our professional malpractice, gross negligence or willful misconduct.

7

## GIBSON DUNN

15. <u>No Guarantee of Outcome</u>.  We do not and cannot guarantee the outcome in any matter.  Our comments about the outcome of your matter are expressions of opinion only.

16. <u>Document Retention and Destruction</u>.  In the course of our representation of you, we are likely to come into possession of copies or originals of documents or other materials belonging to you or others (collectively, "materials").  Once the particular matter to which those materials relate has been concluded, we will make arrangements either to return the documents to you, retain them in our storage facilities or to dispose of the materials.  In the absence of any other arrangements made with you, the Firm's records retention policy provides that upon the expiration of five years after a matter has been closed, all materials in the file may be destroyed or discarded without notice to you.  Accordingly, if there are any documents or other materials you wish to have retrieved from your file at the conclusion of a matter, it will be necessary for you to advise us of that request to insure that they are not destroyed.

The Firm's files pertaining to the matter will not be delivered to you.  You agree that the Firm's files include, for example, Firm administrative records, time and expense reports, personnel and staffing materials, and credit and accounting records, as well as internal lawyers work product (such as drafts, notes, internal memoranda, and legal and factual research, including investigative reports and mental impressions prepared by us for our internal use).  You agree that the Firm's files remain our property and for various reasons, including the minimization of unnecessary storage expenses, or for no reason, we may destroy or otherwise dispose of the Firm's files within a reasonable time after the conclusion of the matter.

17. <u>Application to Subsequent Matters</u>.  The agreement reflected in these Terms of Retention, and in the accompanying letter, applies to our present representation of you and to any subsequent matters which we agree to undertake on your behalf, unless we agree in writing to some different arrangement.

You also agree to pay the Firm on the same basis as set forth above, the Firm's fees, charges and expenses incurred in responding to subpoenas, in testifying (and preparing testimony) by deposition or otherwise, and otherwise responding with respect to claims or demands relating to or arising out of the matters in which we have represented or are representing you, whether or not related to our services and whether or not we are then representing you.

18. <u>Use of the Firm's Name</u>.  You agree that you will not use the Firm's name for purposes of any marketing or publicity.  Specifically, you agree that without prior express written consent from the Firm, you will not use the Firm's name in any press release, notice, website or any other marketing material.

19. <u>Entire Agreement</u>.  These Terms of Retention and the accompanying letter agreement supersede all other prior and contemporaneous written and oral agreements and understandings between us and contain the entire agreement between

8

**GIBSON DUNN**

the parties. This agreement may be modified only by subsequent written agreement of the parties. You acknowledge that no promises have been made to you other than those stated in this agreement.

20. <u>Applicable Law</u>.   This agreement shall be governed by the internal law, and not the law pertaining to choice or conflict of laws, of the State of Texas.

21. <u>Compliance With Section 307 of the Rules of the Securities and Exchange Commission</u>.   The Firm has adopted policies relating to compliance with the rules adopted pursuant to the Sarbanes-Oxley Act, and will provide a copy of these policies to you upon request.

22. <u>Severability</u>.   If any section or portion of these terms is determined by any court or arbitrator to be illegal or invalid, the validity of the remaining terms shall not be affected therein and said illegal or invalid term shall be deemed not to be a part of this Agreement.

101044701.2

9

14