### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) | Case No. 14-10979 (CSS) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | **Hearing Date: November 20, 2014 at 12:00 p.m.** |
| | ) | **Objection Deadline: November 13, 2014 at 4:00 p.m.** |

### MOTION OF ENERGY FUTURE HOLDINGS CORP., *ET AL.*, FOR ENTRY OF AN ORDER AUTHORIZING LUMINANT GENERATION COMPANY LLC TO REJECT A WATER CONTRACT WITH TARRANT REGIONAL WATER DISTRICT, EFFECTIVE *NUNC PRO TUNC* TO THE PETITION DATE

The above-captioned debtors and debtors in possession (collectively, the "Debtors") file this motion (this "Motion") for entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Order") authorizing Luminant Generation Company LLC ("Luminant") to reject that certain Agreement, dated March 15, 1976, regarding access to certain water rights (the "Water Contract"), between Luminant (as successor in interest to Texas Power & Light Company) and Tarrant Regional Water District (previously known as Tarrant County Water Control and Improvement District Number One) ("TRWD"), effective *nunc pro tunc* to the Petition Date, to the extent the Water Contract is executory. In support of this Motion, the Debtors submit the *Declaration of Michael Carter, Senior Vice President, Corporate Planning, and Assistant Treasurer of EFH Corporate Services Company, in Support of the Motion of*

---

[1] The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, for which joint administration has been granted, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

*Energy Future Holdings Corp.,* et al., *for Entry of an Order Authorizing Luminant Generation Company LLC to Reject a Water Contract with Tarrant Regional Water District, Effective* Nunc Pro Tunc *to the Petition Date* (the "Carter Declaration"). In further support of this Motion, the Debtors respectfully state as follows.

## Jurisdiction and Venue

1.      The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware,* dated February 29, 2012. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Debtors consent pursuant to rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Bankruptcy Rules") to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The bases for the relief requested in this Motion are sections 105 and 365 of title 11 of the United States Code (the "Bankruptcy Code"), and rules 6004 and 6006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

2

## Relief Requested

4.     By this Motion, the Debtors seek entry of the Order authorizing Luminant to reject the Water Contract between it and TRWD, effective *nunc pro tunc* to the Petition Date, to the extent the Water Contract is executory.[2]

## Background

5.     On April 29, 2014 (the "Petition Date"), each of the Debtors filed a voluntary petition with the Court under chapter 11 of the Bankruptcy Code.  The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  The Court has entered a final order for joint administration of these chapter 11 cases [D.I. 849].  The Court has not appointed a trustee.  The Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") formed an official committee of unsecured creditors of Energy Future Competitive Holdings Company LLC ("EFCH"), Texas Competitive Electric Holdings Company LLC ("TCEH"), the direct and indirect Debtor subsidiaries of EFCH and TCEH, and EFH Corporate Services Company (the "TCEH Creditors' Committee") on May 13, 2014 [D.I. 420] and an official committee of unsecured creditors of Energy Future Holdings Corp., Energy Future Intermediate Holding Company, LLC, EFIH Finance, Inc., and EECI, Inc. (the "EFH Creditors' Committee") on October 27, 2014 [D.I. 2570].  Further information regarding the Debtors' business operations and capital structure is set forth in the declaration of Paul Keglevic in support of the Debtors' first day motions [D.I. 98].

---

[2]    The Debtors believe that the Water Contract was validly terminated in accordance with its terms before the Petition Date, and therefore only seek to reject the Water Contract in an abundance of caution.

RLF1 10978906v.1

## I.      The Water Contract.

6.      Before the Petition Date, Texas Power & Light Company entered into the Water Contract with TRWD to acquire access to certain water rights necessary for the construction and operation of a steam-electric generating station.  Luminant is successor in interest to Texas Power & Light Company under the Water Contract.  Under the Water Contract, Luminant had the right to:  (a) "intercept and impound" a contractually-determined amount of water run-off of Caney Creek in Henderson County, Texas, that would otherwise flow into the Cedar Creek Reservoir,[3] (b) "divert, use, and consume" a contractually-determined amount of water from the Cedar Creek Reservoir,[4] and (c) "install and maintain on Caney Creek, on land owned or leased by [Luminant] such facilities as the Texas Water Rights Commission may permit in order to construct a reservoir (hereinafter called Forest Grove Reservoir) . . . ."  In addition, the Water Contract also subordinated TRWD's water rights in and to Caney Creek and Cedar Creek Lake (except those previously conveyed to the City of Fort Worth and Fort Worth National Bank) to Luminant.

7.      The Water Contract was set to expire by its own terms on March 15, 2016, unless renewed by agreement of the parties.  Under section 12 of the Water Contract, however, Luminant retained the right to terminate the Water Contract and be released from all obligations and charges after the date of such cancellation, either (a) "prior to beginning the construction of the works herein described," or (b) "in the event of abandonment of the steam-electric generating

---

[3]     Luminant specifically had the right to "intercept and impound . . . run-off of Caney Creek, in Henderson County, Texas, as . . . permitted by the Texas Water Rights Commission."

[4]     The Water Contract allowed Luminant to "divert, use, and consume" from Cedar Creek Reservoir up to 7000 acre feet in a calendar year, but no more than 12,000 acre feet, in four consecutive calendar years.  The Water Contract also gave Luminant the option, prior to May 1, 1985, to increase the amount of water to which it was entitled to divert, use, and consume.  Luminant exercised that option, effective May 1, 1985, by correspondence dated November 1, 1983 to TRWD.

4

station or stations" if Luminant "made written request for such payment cancellation not less than one year in advance of the cancellation date, and [Luminant] has restored the natural flow of Caney Creek and its watershed into Cedar Creek." Furthermore, under the terms of the Water Contract, any failure to impound or divert water under the Water Contract did not excuse Luminant from its obligations to make payments to TRWD. Accordingly, prior to 2011, Luminant's annual spend under the Water Contract totaled $2.3 million.

8.       After the execution of the Water Contract, Luminant constructed the Forest Grove Dam and Reservoir (the "Reservoir").[5] To date, Luminant has not initiated construction of the steam-electric generating station or stations contemplated under the Water Contract. Furthermore, the Debtors have never impounded or diverted water from Caney Creek or Cedar Creek Lake as contemplated by the Water Contract. Accordingly, before the Petition Date, the Debtors reviewed the Water Contract to determine whether it provided any benefits to the Debtors and determined that it did not.

9.       As a result, by correspondence dated October 25, 2010, Luminant gave notice of termination (the "Termination Notice") of the Water Contract, effective October 25, 2011 (the "Termination Date"), and advised TRWD that it would "pro rate the payment due on May 1, 2011 to cover the amount due through [October 25, 2011]." Subsequently, by correspondence dated June 30, 2011, from Luminant to TRWD (the "June 2011 Letter"), Luminant transmitted a check in the amount of $1,063,633.16 payable to TRWD to cover the prorated amounts due to TRWD under the Water Contract from May 1, 2011, through October 25, 2011. In the June 2011 Letter, Luminant reiterated its position that the Water Contract had been terminated as of

---

[5]    The Reservoir is located on Caney Creek, a tributary of Cedar Creek, which is a tributary of the Trinity River, Texas.

the Termination Date pursuant to the Termination Notice.[6] Luminant repeated this position in correspondence dated October 8, 2013, from Luminant's general counsel to TRWD. TRWD, however, has continued to dispute the validity of Luminant's termination of the Water Contract.[7]

10.     Although TRWD has refused to acknowledge Luminant's termination of the Water Contract,[8] Luminant believes that the Water Contract was properly and validly terminated, in accordance with section 12 thereof, on the Termination Date. Luminant also asserts that it has had no further obligations to TRWD since the Termination Date. In an abundance of caution, to the extent the Water Contract was not terminated pursuant to the Termination Notice, the Debtors seek an order rejecting the Water Contract *nunc pro tunc* to the Petition Date.

## Basis for Relief

### I.    Rejection of the Water Contract Reflects the Debtors' Sound Business Judgment.

11.     Section 365(a) of the Bankruptcy Code provides that a debtor in possession, "subject to the court's approval, may . . . reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a); *see also Univ. Med. Cent. v. Sullivan (In re Univ. Med. Ctr.)*, 973 F.2d 1065, 1075 (3d Cir. 1992). For the benefit of the estate, a debtor may, under section 365 of the Bankruptcy Code, relieve itself of burdensome agreements where performance still remains. *See In re Rickel Home Ctrs., Inc.*, 209 F.3d 291, 298 (3d Cir. 2000) (Bankruptcy Code section 365 "allows a trustee to relieve the bankruptcy estate of burdensome agreements which have not

---

[6]   TRWD responded to the June 2011 Letter by letter dated July 15, 2011, stating that Luminant's cancellation of the Water Contract was not effective because, TRWD claimed, Luminant had not "restored the natural flow of Caney Creek and its watershed into Cedar Creek," as required by section 12 of the Water Contract. Additionally, TRWD claimed that "some degree of impoundment [was] still occurring."

[7]   By correspondence from TRWD to Luminant dated September 19, 2013, TRWD's attorneys again stated that Luminant's termination of the Water Contract was not effective and demanded that Luminant pay $5,811,984.30 to TRWD within thirty days.

[8]   By correspondence from TRWD to Luminant dated July 15, 2011, and September 19, 2013, TRWD, among other things, has claimed that the Termination Notice was ineffective.

been completely performed.") (internal citations omitted); *see also Sharon Steel Corp. v. Nat'l Fuel Gas Distrib. Corp. (In re Sharon Steel Corp.)*, 872 F.2d 36, 39–40 (3d Cir. 1989).

12.    The decision to assume or reject an executory contract is a matter within the debtor's "business judgment." *See Nat'l Labor Relations Bd. v. Bildisco & Bildisco (In re Bildisco)*, 682 F.2d 72, 79 (3d Cir. 1982) ("The usual test for rejection of an executory contract is simply whether rejection would benefit the estate, the 'business judgment' test." (citation omitted)); *see also In re Fed. Mogul Global, Inc.*, 293 B.R. 124, 126 (D. Del. 2003); *In re HQ Global Holdings, Inc.*, 290 B.R. 507, 511 (Bankr. D. Del. 2003).   The business judgment standard mandates that a court approve a debtor's business decision unless the decision is the product of bad faith, whim, or caprice. *See In re Trans World Airlines, Inc.*, 261 B.R. 103, 121 (Bankr. D. Del. 2001); *see also In re Fed. Mogul Global*, 293 B.R. at 126 (rejecting counterparty's argument that a finding of hardship is a prerequisite to application of the business judgment test); *Summit Land Co. v. Allen (In re Summit Land Co.)*, 13 B.R. 310, 315 (Bankr. D. Utah 1981) (noting that, absent extraordinary circumstances, court approval of a debtor's decision to assume or reject an executory contract "should be granted as a matter of course"). "Accordingly, the court should not interfere with or second-guess the debtor's sound business judgment unless and until evidence is presented that establishes that the debtor's decision was one taken in bad faith or in gross abuse of its retained business discretion." *In re Wheeling-Pittsburgh Steel Corp.*, 72 B.R. 845, 849 (Bankr. W.D. Pa. 1987).

13.    As noted above, the Debtors have determined, in their sound business judgment, that the Water Contract is burdensome.  Before 2011, the Debtors spent an average of $2.3 million for rights to impound and consume water that the Debtors never actually impounded or consumed as contemplated by the Water Contract.  Additionally, the Debtors took the necessary

7

steps to terminate the Water Contract well before the Petition Date, and believe that the Water Contract has already been properly and effectively terminated.  TRWD, however, has not acknowledged that termination.  Accordingly, for purposes of clarity and in an abundance of caution, to the extent the Water Contract was not effectively terminated pursuant to the Termination Notice, the Debtors seek to reject the Water Contract to the extent the Water Contract is executory.

## II.  *Nunc Pro Tunc* Rejection Is Appropriate.

14.  The Debtors also respectfully submit that, to the extent the Water Contract was not effectively terminated pursuant to the Termination Notice and remains executory, it is appropriate for the Court to order that the effective date of the rejection of the Water Contract is the Petition Date.

15.  While section 365 of the Bankruptcy Code does not specifically address whether the Court may order rejection to be effective retroactively, courts have held that bankruptcy courts may, based on the equities of the circumstances, authorize rejection retroactive to a date prior to entry of the order authorizing such rejection.  *See Republic Underwriters Ins. Co. v. DBSI Republic, LLC (In re DBSI, Inc.)*, 409 B.R. 720, 734 (Bankr. D. Del. 2009) (providing that a bankruptcy court may enter a lease rejection order with an effective date earlier than the date the order is entered); *In re Chi-Chi's, Inc.*, 305 B.R. 396, 399 (Bankr. D. Del. 2004) (acknowledging that a bankruptcy court may approve a rejection retroactive to the date the motion is filed after balancing the equities in the particular case); *In re Fleming Cos., Inc.*, 304 B.R. 85, 96 (Bankr. D. Del. 2003) (stating that rejection has been allowed *nunc pro tunc* to the date of the motion).

8

16.    Here, the balance of the equities favors retroactive relief with respect to the Water Contract. ***First***, Luminant made its intent to terminate the contract clear to TRWD before the Petition Date. *See Republic Underwriters Ins. Co. v. DBSI Republic, LLC (In re DBSI, Inc.)*, 409 B.R. 720, 735 n. 4 (Bankr. D. Del. 2009) (noting that debtors must have an "unequivocal intent to reject" an executory contract for the period they seek retroactive relief (quoting *Fleming*, 304 B.R. at 96)). Luminant expressed its unequivocal intent to terminate the Water Contract in the Termination Notice over three and a half years prior to the Petition Date. Luminant also paid all amounts contractually due to TRWD through the Termination Date, despite the fact that the Debtors never impounded or diverted water from Caney Creek or Cedar Creek Lake as contemplated by the Water Contract. Furthermore, after TRWD's refusal to acknowledge the termination, Luminant repeatedly expressed to TRWD in writing that the Water Contract was terminated.

17.    ***Second***, the Debtors have neither sought nor obtained any benefit under the Water Contract since the Petition Date.[9] As previously stated, the Debtors have ***never*** utilized or impounded water as contemplated by the Water Contract. Moreover, the Debtors terminated, and now seek to reject, the Water Contract only after thoroughly reviewing the Water Contract, analyzing its costs and benefits, and determining that it was and is no longer beneficial to the Debtors' businesses and estates. Without a retroactive date of rejection, the Debtors could be forced to incur unnecessary administrative charges and contractual obligations in connection with the Water Contract that provide no benefit to the Debtors' businesses and estates.

---

[9]    Indeed, the Debtors have not sought or obtained any benefit under the Water Contract since the Termination Date. To the contrary, the Debtors have been clear and unequivocal in their position that the Water Contract was terminated as of the Termination Date.

18.     *Finally*, TRWD will not be prejudiced unduly if the rejection is deemed effective as of the Petition Date.  Luminant has given multiple notices of its intent to terminate the Water Contract, and TRWD has been aware of such intent since it received the Termination Notice in 2010.  *See In re Fleming Cos., Inc.*, 304 B.R. 85, 96 (Bankr. D. Del. 2003) ("To grant [retroactive] rejection, the Debtors must have stated an unequivocal intent to reject the leases."). Additionally, contemporaneously with the filing of this Motion, the Debtors will cause notice of this Motion to be served on TRWD, allowing TRWD sufficient time to act accordingly to the extent that TRWD has not already had sufficient time to act. In sum, the Debtors respectfully submit that, to the extent the Water Contract was not effectively terminated under the Termination Notice, it is fair and equitable for the Court to hold that the Water Contract, to the extent the Water Contract is executory, is rejected *nunc pro tunc* to the Petition Date.

19.     Courts in this jurisdiction have approved relief similar to that requested herein. *See In re QCE Finance, Inc.*, No. 14-10543 (PJW) (Bankr. D. Del. Apr. 9, 2014) (authorizing rejection of unexpired leases *nunc pro tunc* to the petition date); *In re Longview Power, LLC*, No. 13-12211 (BLS) (Bankr. D. Del. Feb. 26, 2014) (authorizing rejection of unexpired leases *nunc pro tunc* to prior notice date); *In re Prommis Holdings, LLC*, No. 13-10551 (BLS) (Bankr. D. Del. June 24, 2013) (same); *In re Ritz Camera & Image, LLC*, No. 12-11868 (KG) (Bankr. D. Del. July 30, 2012) (authorizing rejection of unexpired leases *nunc pro tunc* to the petition date); *In re Friendly Ice Cream Corp.*, No. 11-13167 (KG) (Bankr. D. Del. Oct. 24, 2011) (authorizing rejection of leases and abandonment of property *nunc pro tunc* to date debtors vacated premises); *In re Harry & David Holdings, Inc.*, No. 11-10884 (MFW) (Bankr. D. Del. Apr. 27, 2011) (authorizing rejection of leases *nunc pro tunc* to petition date); *In re CB Holding Corp.*, No. 10-13683 (MFW) (Bankr. D. Del. Dec. 13, 2010) (authorizing rejection of executory

10

contracts, including employment agreements, *nunc pro tunc* to prior notice date); *In re Magnachip Semiconductor Finance Co.*, No. 09-12008 (PJW) (Bankr. D. Del. July 8, 2009) (authorizing rejection of executory contracts *nunc pro tunc* to petition date). The Debtors submit that similar relief is warranted in these chapter 11 cases.[10]

### Reservation of Rights

20.     Nothing contained in this Motion or any action taken by the Debtors pursuant to relief granted in the Order is intended or should be construed as: (a) an admission as to the validity of any particular claim against a Debtor entity; (b) a waiver of the Debtors' rights to dispute any particular claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Motion; (e) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) a waiver or limitation of the Debtors' rights under the Bankruptcy Code or any other applicable laws, permits,[11] licenses, certificates,[12] agreements, contracts, or leases; or (g) a waiver of the Debtors' rights to dispute or contest whether the Water Contract is actually an executory contract or unexpired lease subject to assumption or rejection under section 365 of the Bankruptcy Code.

### Notice

21.     The Debtors shall provide notice of this Motion on the date hereof via first class mail to:  (a) the U.S. Trustee; (b) counsel to the TCEH Creditors' Committee; (c) the EFH Creditors' Committee; (d) Wilmington Trust, N.A., in its capacity as administrative agent under

---

[10]   Because of the voluminous nature of the orders cited herein, such orders are not attached to this Motion.  Copies of these orders are available upon request of the Debtors' counsel.

[11]   Such permits include, but are not limited to, Permit No. W-N-443-41-PERMIT-158 and Water Permit No. 3270.

[12]   Such certificates include, but are not limited to, Certificate of Adjudication 08-4983.

the TCEH first lien credit agreement and collateral agent under the TCEH intercreditor agreements and counsel thereto; (e) Bank of New York Mellon Trust Company, N.A., in its capacity as indenture trustee under: (i) the TCEH unsecured pollution control revenue bonds; and (ii) the EFCH 2037 Notes due 2037, and counsel thereto; (f) American Stock Transfer & Trust Company, LLC, in its capacity as indenture trustee under: (i) the 9.75% EFH senior unsecured notes due 2019; (ii) the 10.0% EFH senior unsecured notes due 2020; (iii) the 10.875% EFH LBO senior unsecured notes due 2017; (iv) the 11.25%/12.0% EFH LBO toggle notes due 2017; (v) the 5.55% EFH legacy notes (series P) due 2014; (vi) the 6.50% EFH legacy notes (series Q) due 2024; and (vii) the 6.55% EFH legacy notes (series R) due 2034, and counsel thereto; (g) Computershare Trust Company, N.A. and Computershare Trust Company of Canada, in their capacities as indenture trustee under: (i) the 11.0% EFIH senior secured second lien notes due 2021; and (ii) the 11.75% EFIH senior secured second lien notes due 2022, and counsel thereto; (h) UMB Bank, N.A. in its capacity as indenture trustee under: (i) the 9.75% EFIH senior unsecured notes due 2019; and (ii) the 11.25%/12.25% EFIH senior toggle notes due 2018, and counsel thereto; (i) Delaware Trust Company of Delaware in its capacity as indenture trustee under: (i) the 6.875% EFIH senior secured notes due 2017; (ii) the 10.0% EFIH senior secured notes due 2020; and (iii), the 11.50% TCEH senior secured notes due 2020, and counsel thereto; (j) Law Debenture Trust Company of New York in its capacity as indenture trustee under: (i) the 10.25% TCEH senior unsecured notes due 2015; and (ii) the 10.50%/11.25% TCEH senior toggle notes due 2016, and counsel thereto; (k) Wilmington Savings Fund Society, FSB in its capacity as indenture trustee under the 15.0% TCEH senior secured second lien notes due 2021, and counsel thereto; (l) counsel to certain holders of claims against the Debtors regarding each of the foregoing described in clauses (c) through (j); (m) the

agent for the TCEH debtor-in-possession financing facility and counsel thereto; (n) the agent for the EFIH debtor-in-possession financing facility and counsel thereto; (o) counsel to certain holders of equity in Texas Energy Future Holdings Limited Partnership; (p) counsel to the Ad Hoc Committee of TCEH Unsecured Noteholders; (q) counsel to the Ad Hoc Committee of TCEH Second Lien Noteholders; (r) Oncor Electric Delivery Holdings Company LLC and counsel thereto; (s) Oncor Electric Delivery Company LLC and counsel thereto; (t) the Securities and Exchange Commission; (u) the Internal Revenue Service; (v) the Office of the United States Attorney for the District of Delaware; (w) the Office of the Texas Attorney General on behalf of the Public Utility Commission of Texas; (x) counsel to the Electric Reliability Council of Texas; (y) those parties that have requested notice pursuant to Bankruptcy Rule 2002; and (z) the TRWD.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

## No Prior Request

22.    No prior request for the relief sought in this Motion has been made to this or any other court.

*[Remainder of page intentionally left blank.]*

13

WHEREFORE, the Debtors respectfully request that the Court enter the Order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested in this Motion and granting such other and further relief as is appropriate under the circumstances.

Dated: October 30, 2014
Wilmington, Delaware

**RICHARDS, LAYTON & FINGER, P.A.**
Mark D. Collins (No. 2981)
Daniel J. DeFranceschi (No. 2732)
Jason M. Madron (No. 4431)
920 North King Street
Wilmington, Delaware 19801
Telephone:    (302) 651-7700
Facsimile:    (302) 651-7701
Email:          collins@rlf.com
                    defranceschi@rlf.com
                    madron@rlf.com

-and-

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Edward O. Sassower, P.C. (admitted *pro hac vice*)
Stephen E. Hessler (admitted *pro hac vice*)
Brian E. Schartz (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022-4611
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900
Email:          edward.sassower@kirkland.com
                    stephen.hessler@kirkland.com
                    brian.schartz@kirkland.com

-and-

James H.M. Sprayregen, P.C. (admitted *pro hac vice*)
Marc Kieselstein, P.C. (admitted *pro hac vice*)
Chad J. Husnick (admitted *pro hac vice*)
Steven N. Serajeddini (admitted *pro hac vice*)
300 North LaSalle
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200
Email:          james.sprayregen@kirkland.com
                    marc.kieselstein@kirkland.com
                    chad.husnick@kirkland.com
                    steven.serajeddini@kirkland.com

*Co-Counsel to the Debtors and Debtors in Possession*

14