## EXHIBIT A

**Proposed Order**

RLF1 10978906v.1

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | ) | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) | Case No. 14-10979 (CSS) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**ORDER AUTHORIZING LUMINANT GENERATION COMPANY
LLC TO REJECT A WATER CONTRACT WITH TARRANT REGIONAL
WATER DISTRICT, EFFECTIVE *NUNC PRO TUNC* TO THE PETITION DATE**

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors"), for entry of an order (this "Order") authorizing the Luminant Generation Company LLC to reject the Water Contract, effective *nunc pro tunc* to the Petition Date, to the extent the Water Contract is executory; all as more fully set forth in the Motion and the Carter Declaration; and the Court having found that it has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and the Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and the Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and the Court having found that the Debtors provided appropriate notice of the Motion and the opportunity for a hearing on the

---

[1] The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, for which joint administration has been granted, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

Motion under the circumstances; and the Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing, if any, before the Court (the "Hearing"); and the Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before the Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1. The Motion is granted as set forth herein.

2. Pursuant to section 365 of the Bankruptcy Code, the Debtors are authorized to reject the Water Contract, attached hereto as **Exhibit 1**, and hereby do reject the Water Contract *nunc pro tunc* to the Petition Date, to the extent the Water Contract is executory.

3. TRWD must file any proofs of claim relating to the rejection of the Water Contract within thirty (30) days after the date of entry of this Order.

4. Notwithstanding the relief granted in this Order and any actions taken pursuant to such relief, nothing in this Order shall be deemed: (a) an admission as to the validity of any particular claim against a Debtor entity; (b) a waiver of the Debtors' rights to dispute any particular claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Motion; (e) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) a waiver or limitation of the Debtors' rights under the Bankruptcy Code or any other applicable laws, permits,[3] licenses, certificates,[4] agreements, contracts, or leases; or (g) a waiver of the Debtors' rights to dispute or contest whether the Water Contract is

---

[3] Such permits include, but are not limited to, Permit No. W-N-443-41-PERMIT-158 and Water Permit No. 3270.

[4] Such certificates include, but are not limited to, Certificate of Adjudication 08-4983.

actually an executory contract or unexpired lease subject to assumption or rejection under section 365 of the Bankruptcy Code.

5. Notice of the Motion as provided therein shall be deemed good and sufficient and the requirements of the Local Bankruptcy Rules are satisfied by such notice.

6. Notwithstanding the possible applicability of Bankruptcy Rules 6004(h), 7062, 9014 or otherwise, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

7. All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

8. The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Motion.

9. The Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation of this Order.

Dated: _____, 2014
Wilmington, Delaware

_____
THE HONORABLE CHRISTOPHER S. SONTCHI
UNITED STATES BANKRUPTCY JUDGE

# EXHIBIT 1 to EXHIBIT A

## Water Contract

AGREEMENT

This Agreement entered into this 15th day of MARCH 19 76, by and between TARRANT COUNTY WATER CONTROL AND IMPROVEMENT DISTRICT NUMBER ONE, a public body politic and corporate, organized and existing under the provisions of Article 7880, et. seq., Revised Civil Statutes of Texas, with its principal office in Fort Worth, Texas, hereinafter called "DISTRICT", and TEXAS POWER & LIGHT COMPANY, a Texas Corporation, with its principal office in Dallas, Texas, hereinafter called "COMPANY".

WITNESSETH:

1.

Subject to the provisions of paragraph 4 hereof, DISTRICT grants to COMPANY the right to intercept and impound such portion of the run-off of Caney Creek, in Henderson County, Texas, as may be permitted by the Texas Water Rights Commission, which run-off would otherwise flow into DISTRICT'S Cedar Creek Reservoir. DISTRICT agrees that COMPANY may install and maintain on Caney Creek on land owned or leased by COMPANY "such facilities as the Texas Water Rights Commission may permit in order to construct a reservoir (hereinafter called Forest Grove Reservoir) to be used in connection with the operation of a steam electric generating station so long as this Agreement shall be in effect." For such right, and without regard to whether such water is available for such use, COMPANY shall pay to DISTRICT the sum of $300,800 per year, beginning on the May 1st following the first impoundment of water in Forest Grove Reservoir or May 1, 1978, whichever is the earlier.

2.

DISTRICT further grants to COMPANY the right to divert, use and consume, from Cedar Creek Reservoir, not to exceed 7,000 acre-feet of water in any calendar year and not to exceed 12,000 acre-feet of water during any period of four (4) consecutive calendar years. For such right, COMPANY shall pay to DISTRICT the sum of $169,700 per year, beginning on the May 1st following first impoundment of water in Forrest Grove Reservoir or May 1, 1978, whichever is the earlier.

-1-

Until May 1, 1985, COMPANY shall have the option, upon one year's written notice to DISTRICT, to increase the amount of Cedar Creek Reservoir water which COMPANY is hereby entitled to divert, use and consume not to exceed 12,000 acre-feet of water in any calendar year and not to exceed 24,000 acre-feet of water during any period of four consecutive calendar years. If COMPANY shall elect to exercise this option, payments by COMPANY to DISTRICT under this paragraph shall be increased to $344,000 per year, beginning on the May 1st following written notice by COMPANY to DISTRICT of intention to increase the amounts of diversion.

3.

Payment by COMPANY to DISTRICT shall be made in advance for each year beginning on May 1st thereof with the first such payment due as provided in Paragraphs 1 and 2 above unless increased or decreased by reason of the following:

In the event that the annual maintenance and operating costs for 1977 of DISTRICT'S reservoirs and pipeline and other facilities including but not limited to pumping energy are increased or decreased above or below such costs during the calendar year preceding the date of execution of this Agreement, then the payments provided for in Paragraphs 1 and 2 above due in 1978 shall be increased or decreased in the same proportion as such cost increase or decrease; but in no event shall the payments be less than the payments set forth in Paragraphs 1 and 2 above. DISTRICT'S annual maintenance and operating costs for any year will be shown in Combined Statement of Expenditures-All Funds in DISTRICT'S Annual Report for such year. Thereafter, the amount payable by COMPANY under Paragraphs 1 and 2 shall be increased or decreased each May 1 in the same proportion as the DISTRICT'S maintenance and operating costs increased or decreased during the preceding calendar year, as such costs are reflected in the aforesaid Combined Statement of Expenditures-All Funds, over such costs for the year preceding execution hereof. Since only part of COMPANY'S payments are for DISTRICT'S operation and maintenance, the increase or decrease will apply only to that portion of COMPANY'S payments which corresponds

-2-

to the fraction of DISTRICT'S total costs represented by operation and maintenance. The portion of COMPANY'S payments as set forth in Paragraphs 1 and 2 which are subject to increase or decrease for changes in DISTRICT'S operation and maintenance costs shall be determined each year as follows: COMPANY'S said payment shall be multiplied by a fraction, the numerator of which is the sum of administrative expense, building, levees and floodway improvements and maintenance, tax assessing and collecting, contributions to employees retirement fund and miscellaneous expense, and the denominator shall be DISTRICT'S total expenditures, exclusive of capital expenditures and debt service on any additional bonds sold by the DISTRICT. In the event that debt service on DISTRICT'S outstanding bonds becomes less than $4,675,200 during any calendar year, then such denominator shall be the total of the numerator amount plus $4,675,200.

No water shall be taken by COMPANY from Cedar Creek Reservoir in excess of the allowable pumpages provided in paragraph 2 until and unless the DISTRICT shall first consent to such additional taking in writing, and the payment for such additional taking shall be negotiated and contained in such written instrument of agreement. Unless otherwise agreed at the time of such supplemental agreement, such additional water diverted from Cedar Creek Reservoir shall not be charged against COMPANY'S allowable annual pumpage for succeeding years.

4.

It is expressly understood and agreed by and between DISTRICT and COMPANY, however, that the rights of COMPANY hereunder are subject and subordinate to the rights of the City of Fort Worth under a contract by and between DISTRICT and the City of Fort Worth, effective March 1, 1960, and the rights of Fort Worth National Bank, Trustee, under a Resolution and Trust Indenture by and between DISTRICT and Fort Worth National Bank, Trustee, dated March 1, 1960. In the event that the obligations undertaken herein by DISTRICT shall conflict with its obligations pursuant to said Contract and said Resolution and Trust Indenture, then the terms of said Contract and said Resolution and Trust Indenture shall in all things govern and take precedence over the provisions of this Agreement.



-3-

5.

DISTRICT shall not be obligated to treat in any manner the water sold to COMPANY hereunder, and does not guarantee the quality or condition thereof, nor does it warrant or guarantee the quantity of water subject to the COMPANY'S impoundment or use except as hereinafter provided as to preferential use. The right that the DISTRICT grants to the COMPANY in Paragraphs 1 and 2 to withdraw and use water from Cedar Creek Reservoir is not unlimited or exclusive right, but shall to the extent permitted by law be superior to the right of any future purchaser of water from the DISTRICT for similar power development use.

6.

The general location of DISTRICT'S lake and COMPANY'S property is shown on Exhibit "A" attached hereto. The location of COMPANY'S plant, pipeline for withdrawing water from said lake, and return facilities, according to preliminary plans are shown on Exhibit "B" attached hereto. Exhibits "A" and "B" are made a part hereof for all purposes.

Nothing in this agreement shall confer upon COMPANY the right to use the land of the DISTRICT, nor the surface of Cedar Creek Lake. The COMPANY and DISTRICT will negotiate and agree upon, for a separate consideration, a lease to cover some areas of DISTRICT property which COMPANY may need for the construction of protective works and for facilities to withdraw water for use by COMPANY under this Contract.

7.

COMPANY shall at its own expense construct for its exclusive use all the necessary works suitable and necessary for the withdrawal of said water from Cedar Creek Reservoir and all necessary or desirable protective works on land of COMPANY. The design of COMPANY'S withdrawal and protective works shall be subject to the approval in writing of DISTRICT. It is recognized by the parties hereto that the protective works are to be designed and installed for the express purpose of preventing unauthorized persons from entering the water and land areas by boats or otherwise near the points of withdrawal, and that such protection is in the best interest and for the safety of the general public.

-4-

8.

Nothing in this Agreement, expressed or implied, is intended or shall be construed to confer upon any person or corporation other than the parties hereto, their successors and assigns, any right, remedy or claim under or by reason of this Agreement or any covenant, condition or stipulation hereof, and that all covenants, stipulations, promises, and agreements in this Instrument contained by or on behalf of COMPANY shall be and are for the sole and exclusive benefit of the parties hereto, their successors and assigns. COMPANY expressly agrees that it will not sell or permit the use of water sold to it by DISTRICT by any other person, firm or corporation without the consent of DISTRICT first had and obtained in writing. COMPANY may assign this contract wholly or in undivided interests, to Texas Utilities Company and/or any subsidiary or subsidiaries thereof which are the owners, including joint ownership with COMPANY, of the aforesaid generating plant to be constructed on Caney Creek, provided that such assignment shall not relieve COMPANY of responsibility hereunder.

9.

It is further recognized and expressly agreed that the DISTRICT is a public corporation, subject to regulation under the statutes, of the State of Texas, and subject to certain powers vested by law in the Texas Water Rights Commission of the State of Texas, and is further subject to the limitations and requirements in all permits to use public water of the State of Texas which have been heretofore or hereafter issued or assigned to DISTRICT. All of the provisions of this Contract and the use of water hereunder shall be subject to such statutes and regulations as may be issued or promulgated by any governing body having jurisdiction of DISTRICT or of the public waters stored, impounded or otherwise controlled and used by DISTRICT.

10.

Pursuant to the contract of DISTRICT with the City of Fort Worth, the parties to this agreement recognize that in the future the DISTRICT may develop other sources of raw water to supply its users, and that in such event, pursuant to said Contract the rates for raw water sold to the City of Fort Worth may be increased by negotiation between said City and the DISTRICT to provide funds for the construction

-5-

and operation of such additional facilities. In the event of such renegotiation of the raw water rate paid to DISTRICT by the City of Fort Worth, the annual payments by COMPANY to DISTRICT shall then be increased in the same ratio that the rates paid by The City of Fort Worth are increased.

In case it is necessary for the DISTRICT to use ad valorem taxes collected by DISTRICT from within the DISTRICT to pay the costs of the Cedar Creek Project (Reservoir, Pipeline, Pump Station, etc.), the COMPANY shall pay to DISTRICT an additional amount of money equivalent to the pro rata share of the costs to be paid from ad valorem taxes; COMPANY'S pro rata share will be based on its consumption of water from Cedar Creek Project as compared to total consumption therefrom. The intention of this provision is for the COMPANY to bear its proportionate part of the burden of Cedar Creek Project costs over Cedar Creek Project revenues, and the parties agree to negotiate in good faith to arrive at the amount by agreement. In the event the parties cannot agree on the amount which COMPANY should pay, the matter will be decided by an arbitrator, to be chosen by agreement of the parties, or, if the parties cannot agree on an arbitrator, to be selected by any Judge of a District Court of Tarrant County, Texas. The decision of such arbitrator will be final and shall be accepted by both parties.

11.

This contract shall continue for a period of 40 years from the date hereof. COMPANY may, provided it makes the payments and otherwise complies with the terms of this Agreement, renew this contract for an additional 40-year period beginning at the expiration of the original term. Such renewal and extension shall be upon terms and conditions then to be agreed upon by DISTRICT and COMPANY. COMPANY shall give DISTRICT notice of its intention to exercise its renewal option not less than two years prior to the expiration date of the initial contract period. In the event COMPANY exercises its renewal option herein granted, DISTRICT covenants that it will not, prior to expiration date of this contract and for a period of one year

-6-

thereafter, contract to sell or sell the water sold to COMPANY under this Agreement without giving COMPANY an opportunity to meet the terms and conditions of any such sale or proposed sale which it desires to accept and COMPANY shall have a period of thirty (30) days thereafter in which to accept such offer by written notice to DISTRICT.

12.

If, prior to beginning the construction of the works herein described, COMPANY elects to cancel this contract it may do so upon payment of all obligations and charges due from COMPANY under this contract to the date of such cancellation, along with DISTRICT'S cost of review of such engineering matter as may have been incurred by DISTRICT in connection herewith, after which no obligation shall exist against either party in respect to this contract. In the event of abandonment of the steam-electric generating station or stations, it is agreed that the payment required for the use of water as provided for in paragraphs 1 and 2 above will be waived or cancelled for the unexpired portion of the contract period, provided the COMPANY shall have made written request for such payment cancellation not less than one year in advance of the cancellation date, and COMPANY has restored the natural flow of Caney Creek and its watershed into Cedar Creek

13.

COMPANY will indemnify and hold DISTRICT harmless of and from any and all claims and causes of action for damages to property or for injuries to persons, including death, arising out of COMPANY'S use of DISTRICT'S land, arising out of structures and facilities which COMPANY may place in the lake in connection with its withdrawal of water and protective works. COMPANY and DISTRICT each shall protect and save the other harmless against any loss liability or expense resulting from injury to or death of its own employees, occurring while such employees are engaged in the line of their duties, whether or not such injury or death occurs on or adjacent to the property of COMPANY or DISTRICT.

-7-

14.

No Modification of any provision of this Agreement shall be binding unless reduced to writing and signed by the parties hereto, and modification of any one or more provisions of this Agreement by mutual consent of the parties hereto shall not affect any of the remaining provisions hereof not so modified. DISTRICT covenants that it has complied with and will comply with any additional requirements of law related to certified filings or the obtaining of necessary permits from the Texas Water Rights Commission or other regulatory bodies for the purposes and uses proposed to be made by COMPANY of such water as it proposed hereunder.

EXECUTED this 15th day of MARCH, 1976

ATTEST:

_____
Secretary

APPROVED BY:

_____
Engineer for District

ATTEST:

_____
Secretary

TARRANT COUNTY WATER CONTROL AND IMPROVEMENT DISTRICT NUMBER ONE

By _____
TOM A. (?) President
BROWN, HEFFLIN, SCOTT,
DEAN & MILES

By _____
General Counsel for District

TEXAS POWER & LIGHT COMPANY

By _____
Vice-President

-8-

TARRANT COUNTY WATER CONTROL AND IMPROVEMENT
DISTRICT NUMBER ONE

800 East North Side Drive
Fort Worth, Texas

BOARD OF DIRECTORS
Wayne E. Newton, President
C. Victor Thornton, Vice President
Robert D. Alexander, Secretary
Preston M. Geren, Jr.
Burford I. King



Ben F. Hickey
General Manager

P.O. Box 4508
Fort Worth, Texas 76106
Area Code 817-335-2491

RECEIVED
FEB 3

February 2, 1984

Texas Utilities Generating Company
2001 Bryan Tower
Dallas, Texas  75201

Attn:  Mr. L. F. Fikar, Vice-President

Gentlemen:

This is to acknowledge receipt of your letter of November 1, 1983, wherein you advised the District that effective May 1, 1985, Texas Utilities Generating Company, elects to exercise its option to increase the amount of Cedar Creek Reservoir water that it is entitled to divert, use and consume not to exceed 12,000 acre-feet of water in any calendar year and not to exceed 24,000 acre-feet of water during any period of four consecutive calendar years.

Very truly yours,

R. M. Doby
Manager of Fiscal Affairs

sw

FEB 3  1983

# FIRST AMENDMENT TO WATER SUPPLY CONTRACT

This Agreement by and between TARRANT REGIONAL WATER DISTRICT (formerly Tarrant County Water Control and Improvement District Number One), a water control and improvement district and political subdivision of the State of Texas, with its principal office in Fort Worth, Texas, hereinafter called "DISTRICT", and TEXAS UTILITIES ELECTRIC COMPANY, a Texas corporation, with its principal office in Dallas, Texas, hereinafter called "COMPANY";

## WITNESSETH:

WHEREAS, District and Texas Power & Light Company, hereinafter called "TPL" entered into a Water Supply Contract dated March 15, 1976, which contract provided for the sale to TPL by DISTRICT of not to exceed 7,000 acre feet of water out of Cedar Creek Reservoir in any calendar year and not to exceed 12,000 acre feet of water during any period of four (4) consecutive calendar years, and contained an option for TPL to increase the amount of water to which it is entitled to not exceed 12,000 acre feet of water out of Cedar Creek Reservoir in any calendar year and not to exceed 24,000 acre feet of water during any period of four (4) consecutive calendar years, and

WHEREAS, on November 1, 1983, Texas Utilities Generating Company as agent for TPL notified DISTRICT of its exercise of said option, effective May 1, 1985, and

WHEREAS, COMPANY has succeeded to the interests of TPL under said contract;

NOW, THEREFORE, the parties agree as follows:

1.

Paragraph 6 of said contract is hereby amended by adding the following language:

"In addition to its right to withdraw water from Cedar Creek Reservoir by pipeline as described herein, Company shall have the right to request the release of all or any part of the water covered by this contract from Cedar Creek Reservoir into the Trinity River for use by COMPANY at one or more of its other generating plants. It is understood and agreed, however, that the total amount of water which COMPANY is entitled to use and consume from Cedar Creek Reservoir, whether at its proposed Forest Grove Steam Electric Station or elsewhere, shall not exceed 12,000 acre-feet of water in any calendar year and not to exceed 24,000 acre feet of water during any period of four consecutive calendar years.

DISTRICT shall be responsible for notifying the Texas Natural Resource Conservation Commission of the location of the point or points at which water shall be released from Cedar Creek Reservoir for use by COMPANY as hereinabove provided, and COMPANY shall be responsible for notifying the Texas Natural Resource Conservation Commission of the location of the diversion point or points for the withdrawal of the water released by DISTRICT as hereinabove provided.

COMPANY agrees to give DISTRICT not less than twenty-four (24) hours written notice of any request for the release of water from Cedar Creek Reservoir, which notice shall state the amount of water to be released, the requested rate of release in cubic feet per second, and the date on which such release shall commence. When the volume of water released by DISTRICT pursuant to any such request shall equal the quantity of water requested by COMPANY, DISTRICT shall terminate such release, and DISTRICT

shall notify COMPANY of such termination. COMPANY may, however, at any time after any such release has commenced, by not less than twenty-four (24) hours written notice to DISTRICT, request the termination thereof.

COMPANY shall bear all losses of any such water incurred in the transportation thereof to COMPANY'S diversion point or points, and DISTRICT shall have no further obligations to COMPANY with respect to the delivery of any such water to COMPANY after its release thereof from Cedar Creek Reservoir."

2.

As hereby amended, said contract is in all respects ratified and confirmed.

EXECUTED this __24__ day of __January__, 1997

TARRANT REGIONAL WATER DISTRICT

ATTEST:

_____    By_____
Assistant General Manager          Its___General Manager___

ATTEST:                            TEXAS UTILITIES ELECTRIC COMPANY

_____    By_____
Assistant Secretary                Its___Vice President___