**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) | Case No. 14-10979 (CSS) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | **Hearing Date: November 20, 2014 at 12:00 p.m.** |
| | ) | **Objection Deadline: November 13, 2014 at 4:00 p.m.** |
| | ) | |

**MOTION OF ENERGY FUTURE HOLDINGS CORP., *ET AL.*, FOR ENTRY OF AN ORDER AUTHORIZING CERTAIN DEBTORS TO ENTER INTO AGREEMENTS REGARDING MHI'S WITHDRAWAL FROM THE COMANCHE PEAK JOINT VENTURE**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") file this motion (this "Motion") for the entry of an order (the "Order"), substantially in the form attached hereto as **Exhibit A**, authorizing Debtors Energy Future Holdings Corp. ("EFH Corp."), Texas Competitive Electric Holdings Company LLC ("TCEH LLC"), and Luminant Generation Company LLC ("Luminant") to enter into certain agreements, substantially in the form attached hereto as **Exhibit 1** to **Exhibit A** (the "Withdrawal Agreements"), providing for the withdrawal of the participation of Mitsubishi Heavy Industries, Ltd. and its affiliates, Mitsubishi Nuclear Energy Systems, Inc. ("MNES") and MHI Nuclear North America, Inc. (collectively, and together with certain other affiliates, "MHI"), from the Comanche Peak Joint Venture (as defined below). In support of this Motion, the Debtors submit the *Declaration of Robert Frenzel, Senior Vice President and Chief Financial Officer of Luminant Generation Company LLC, in Support of*

---

[1] The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, for which joint administration has been granted, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

*the Motion of Energy Future Holdings Corp.,* et al., *for Entry of an Order Authorizing Certain Debtors to Enter Into Agreements Regarding MHI's Withdrawal from the Comanche Peak Joint Venture* (attached hereto as **Exhibit B**, the "<u>Frenzel Declaration</u>").  In further support of the Motion, the Debtors respectfully state as follows.

## Jurisdiction and Venue

1.      The United States Bankruptcy Court for the District of Delaware (the "<u>Court</u>") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Debtors consent pursuant to rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "<u>Local Bankruptcy Rules</u>") to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The bases for the relief requested in this Motion are section 363 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>") and rules 4001, 6004, and 9019 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>").

## Relief Requested

4.      By this Motion, the Debtors request entry of the Order authorizing the Debtors to enter into the Withdrawal Agreements, which provide for the withdrawal of MHI's participation in the Comanche Peak Joint Venture and leave the Comanche Peak Joint Venture wholly owned and controlled by the Debtors.

**Background**

5.      On April 29, 2014 (the "<u>Petition Date</u>"), each of the Debtors filed a voluntary petition with the Court under the Bankruptcy Code.  The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  The Court has entered a final order for joint administration of these chapter 11 cases [D.I. 849].  The Court has not appointed a trustee.  The Office of the United States Trustee for the District of Delaware (the "<u>U.S. Trustee</u>") formed an official committee of unsecured creditors of Energy Future Competitive Holdings Company LLC ("<u>EFCH</u>"), Texas Competitive Electric Holdings Company LLC ("<u>TCEH</u>"), the direct and indirect Debtor subsidiaries of EFCH and TCEH, and EFH Corporate Services Company (the "<u>TCEH Creditors' Committee</u>") on May 13, 2014 [D.I. 420] and an official committee of unsecured creditors of Energy Future Holdings Corp., Energy Future Intermediate Holding Company, LLC, EFIH Finance, Inc., and EECI, Inc. (the "<u>EFH Creditors' Committee</u>") on October 27, 2014 [D.I. 2570].  Further information regarding the Debtors' business operations and capital structure is set forth in the declaration of Paul Keglevic in support of the Debtors' first day motions [D.I. 98] (the "<u>First Day Declaration</u>").

**I.      Formation of the Comanche Peak Joint Venture**.[2]

6.      In September 2008, Luminant formed a number of wholly-owned Delaware limited liability companies, including the non-Debtor entity Nuclear Energy Future Holdings II LLC ("<u>NEFH II</u>").  Together with Luminant and Luminant's parent entity, EFH Corp., these entities formed a joint venture for the purposes of holding the assets of, and conducting the

---

[2]      Additional information regarding the formation of the Comanche Peak Joint Venture and the 2014 amendments to the documents governing the Comanche Peak Joint Venture may be found in the *Motion of Energy Future Holdings Corp.* et al., *Authorizing Entry into Amendments to the Comanche Peak Joint Venture Agreements* [D.I. 1227].

development, construction, and operating activities of, two new nuclear generation units (the

New Units") and the use of an advanced type of nuclear reactor at the New Units called the

US-Advanced Pressurized Water Reactor (the "US-APWR"). These terms were memorialized in

a limited liability company agreement.

7.      In January 2009, the limited liability company agreement (the "LLC Agreement")

was amended and restated to admit MHI and create a joint venture for purposes of further

developing the New Units using the US-APWR (the "Comanche Peak Joint Venture"). With the

addition of MHI, the joint venture was renamed Comanche Peak Nuclear Power Company LLC

(the "Comanche Peak LLC").

## II.     The Joint Venture Agreements.

8.      Contemporaneous with MHI becoming a member of the Comanche Peak Joint

Venture, the Comanche Peak Joint Venture executed other documents relating to the

development and construction of the New Units (collectively the "Joint Venture Agreements").

9.      The parties to the Joint Venture Agreements collectively consist of Comanche

Peak LLC, EFH Corp., TCEH LLC, Luminant, NEFH II and its immediate, non-Debtor parent,

Nuclear Energy Future Holdings LLC ("NEFH I"), and MHI (collectively, the "Joint Venture

Parties").

10.     The key terms of the Joint Venture Agreements[3] included: (a) MHI's obligation to

develop and implement the US-APWR; (b) MHI's obligation to file the design certification

document application with the Nuclear Regulatory Commission ("NRC") to gain approval for

the use of the US-APWR (the "Design Application"); (c) TCEH LLC's obligation to guarantee

---

[3]     This summary of key terms of the Joint Venture Agreements is for illustrative purposes only. To the extent
there are inconsistencies between the summary of key terms provided herein and the provisions in the Joint
Venture Agreements, the provisions in the Joint Venture Agreements control.

NEFH II's obligations to make capital contributions under the LLC Agreement; (d) the division between the Joint Venture Parties of ownership interests in the Comanche Peak Joint Venture and certain related intellectual property developed in conjunction with the Design Application and the application governing construction of the New Units (the "License Application"); and (e) Luminant's covenant to use commercially reasonable efforts to assign and/or lease its water rights to the Comanche Peak Joint Venture for use in the development of the New Units.

### III.    Decision to Withdraw MHI from the Comanche Peak Joint Venture.

11.    At the time the Joint Venture Parties entered into the Joint Venture Agreements, they expected to obtain NRC approval of the License Application and the Design Application in time for the New Units to be operational by 2016.  However, certain events delayed licensing and development of the New Units.  Specifically, in the wake of Japan's recovery from the Fukushima nuclear plant incident in March 2011, in which all of Japan's nuclear generating facilities were shut down (including 24 plants designed and built by MHI), MHI, with the support of Japanese regulatory agencies, determined that supporting Japanese utilities in restarting MHI-affiliated pressurized water reactors should be its highest priority.  Additionally, a precipitous and prolonged decline in natural gas prices that resulted from increased exploitation and production of "unconventional" natural gas fundamentally altered market conditions.

12.    Consequently, Luminant, NEFH II, and MHI executed the steps outlined below, initially to suspend the business of, and now to withdraw MHI from participation in the Comanche Peak Joint Venture. The parties' coordinated actions were designed to allow the Debtors to beneficially preserve Comanche Peak LLC, which hereafter will be wholly owned by NEFH II, because Comanche Peak LLC is the applicant under the License Application and the Department of Energy loan guarantee application relating to the New Units.  For a number of

regulatory reasons, Luminant desires to keep these applications active after MHI's withdrawal from the Comanche Peak Joint Venture.

13.    *First*, Luminant, NEFH II, and MHI put all development activities related to the New Units on indefinite hold as of the fourth quarter of 2013, and at MHI's request, the NRC reduced its Design Application review activities.  Contemporaneously with MHI's request to the NRC, Luminant and NEFH II also requested that the NRC suspend all reviews of the License Application.

14.    *Second*, the Debtors sought and received approval from this Court to amend the Joint Venture Agreements to reflect this change in circumstances (the "Amendments").  *See Order Authorizing Entry into Amendments to the Comanche Peak Joint Venture Agreements* [D.I. 1619].

15.    As approved by this Court, the Amendments consisted of the following key terms:[4]

- suspension or termination of certain obligations that the Joint Venture Parties owe to each other under various portions of the Joint Venture Agreements;

- termination of Luminant's obligation under the Joint Venture Agreements to assign water rights to the Comanche Peak Joint Venture and the reversion of any assignment of such rights from the Comanche Peak Joint Venture to NEFH II;

- conveyance from the Comanche Peak Joint Venture to NEFH II of certain easements and fee tracts acquired by the Comanche Peak Joint Venture during the US-APWR development period;

- assignment of Comanche Peak LLC's rights as the tenant under the ground lease where the New Units were to be developed to NEFH II;

---

[4]    This summary of key terms of the Amendments is for illustrative purposes only.  To the extent there are inconsistencies between the summary of key terms provided herein and the provisions in the Amendments, the provisions in the Amendments control.

- transfer and/or license of certain site-specific intellectual property rights, as determined in the Amendments, to NEFH II and the assignment of intellectual property rights related to the US-APWR technology to MHI;

- termination of TCEH LLC's guaranty of certain of NEFH II's rights and obligations under the Joint Venture Agreements; and

- the independent right of each of Luminant and MHI to dissolve the Comanche Peak Joint Venture, at its option, after a specified period of time has passed following execution of the Amendments.

16.    Collectively, the Amendments allowed the Joint Venture Parties to allocate amongst themselves real property and intellectual property rights associated with the Comanche Peak Joint Venture and to unwind cross-default obligations.

17.    With the Amendments executed, and the macro conditions that led to the Amendments remaining unchanged (including MHI's priority to support Japanese utilities in restarting MHI-affiliated pressurized water reactors in the wake of Japan's recovery from the Fukushima nuclear plant incident in March 2011 and the substantial reduction in the forecast of Texas electricity prices attributable to the technological advances in the economical extraction of natural gas), the Joint Venture Parties agreed to MHI's withdrawal from the Comanche Peak Joint Venture.  Between August and October 2014, the Joint Venture Parties negotiated the conditions for MHI's consensual withdrawal from the Comanche Peak Joint Venture.  These negotiations culminated in the Withdrawal Agreements.

**IV.    Terms of the Withdrawal Agreements**.

18.    The Withdrawal Agreements consist of the following key terms:[5]

- ***Redemption of MHI's Interests in the Comanche Peak Joint Venture***. MHI will relinquish its membership interests in the Comanche Peak Joint Venture

---

[5]    This summary of key terms of the Withdrawal Agreements is for illustrative purposes only.  To the extent there are inconsistencies between the summary of key terms provided herein and the provisions in the Withdrawal Agreements attached hereto as **Exhibit 1** to **Exhibit A**, the provisions in the Withdrawal Agreements control.

to Comanche Peak LLC in exchange for the remaining cash held by Comanche Peak LLC, all of which was originally contributed to the Comanche Peak Joint Venture by MHI;

- *Termination of MHI's Obligations*. MHI's rights, duties and obligations relating to (a) its agreement to provide licensing, environmental, and other technical support related to the License Application and development of the New Units (the "COLA Services Contract"); (b) its agreement to provide site-specific engineering services necessary for the development of the New Units (the "Engineering Services Contract"); and (c) its agreement to provide security for certain of MNES's obligations for the benefit of Comanche Peak LLC and NEFH II, will be terminated;

- *Termination of Luminant's Obligations*. Luminant's rights, duties, obligations, or liabilities related to its agreement to provide Comanche Peak LLC with certain development services relating to the New Units (the "Development Services Agreement") will terminate;

- *Limited Preservation of IP Rights Other Than US-AWPR*. Licenses or sublicenses with respect to intellectual property developed by MHI in connection with the Design Application and the License Application granted by MHI to Comanche Peak LLC, Luminant, or their respective affiliates pursuant to the COLA Services Contract or the Engineering Services Agreement will be preserved to the extent such licenses or sublicenses are necessary to exercise the rights in the licenses and sublicenses previously granted by MHI to Comanche Peak LLC, Luminant, or their respective affiliates;

- *Rights Relating to License and Design Applications*. MHI will have the sole right to make any decisions with respect to how to pursue a design certification with the NRC regarding the US-AWPR technology, and Luminant will have increased strategic flexibility regarding continued nuclear development including the sole right to make decisions regarding (i) filings with the NRC regarding the New Units and (ii) the pursuit of a nuclear power project with the technology provider of its choice at the Comanche Peak site.

- *Assignment of Professional Services' Contracts to Comanche Peak LLC*. MHI will assign to Comanche Peak LLC all of its future rights, interests, and obligations under certain consulting and professional services' contracts.

- *Cross Indemnification*. MHI agrees to indemnify EFH Corp., Luminant, TCEH LLC, Comanche Peak LLC, and NEFH II against liabilities, losses, damages, expenses, and judgments resulting from any breach by MHI in connection with the Withdrawal Agreements, and Luminant, NEFH II, and TCEH LLC agree to indemnify MHI from liabilities, losses, damages, expenses, or judgments resulting from (a) a breach by EFH Corp., Luminant, TCEH LLC, Comanche Peak LLC, or NEFH II of the Withdrawal

> Agreements or (b) claims related to the assets or operations of Comanche
> Peak LLC and existing and future nuclear units built by Comanche Peak LLC
> to the extent that MHI is party to the claim as the result of the acts or
> omissions of EFH Corp. or its affiliates after the withdrawal of MHI from the
> Comanche Peak Joint Venture, except to the extent such claim relates to the
> acts and omissions of MHI.

19.     Importantly, the Withdrawal Agreements also provide for material releases of any

and all claims (a) by and between MHI on the one hand, against EFH Corp., Luminant, TCEH,

and Comanche Peak LLC on the other hand, and (b) by and between EFH Corp., Luminant,

TCEH, and Comanche Peak LLC on the one hand against MHI on the other hand.  Currently,

EFH Corp., TCEH, Luminant, and NEFH II do not believe that they hold any potential claims

against MHI.

## Basis for Relief

## I.     Entry Into the Withdrawal Agreements Is A Sound Exercise of the Debtors' Business Judgment.

20.     Section 363 of the Bankruptcy Code provides that a debtor, "after notice and a

hearing, may use, sell, or lease, other than in the ordinary course of business, property of the

estate."  11 U.S.C. § 363(b) (1).  The use, sale, or lease of property of the estate, other than in the

ordinary course of business, is authorized when there is a "good business reason" that justifies

such action.  *See Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d

1063, 1071 (2d Cir. 1983); *see also In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153

(D. Del. 1999) ("In determining whether to authorize the use, sale or lease of property of the

estate under this section, courts require the debtor to show that a sound business purpose justifies

such actions.").

21.     When a valid business justification exists, the law vests the debtor's decision to

use property out of the ordinary course of business with a strong presumption that "in making a

business decision the directors of a corporation acted on an informed basis, in good faith and in

the honest belief that the action taken was in the best interests of the company." *See Official Comm. of Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.)*, 147 B.R. 650, 656 (S.D.N.Y. 1992) (quoting *Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985)), *appeal dismissed*, 3 F.3d 49 (2d Cir. 1993).

22.     Indeed, when applying the "business judgment" standard, courts show great deference to a debtor's business decisions. *See In re Crystalin, L.L.C.*, 293 B.R. 455, 464 (B.A.P. 8th Cir. 2003) (finding that the court need not "place itself in the position of the trustee or debtor-in-possession") (citation omitted); *see also Pitt v. First Wellington Canyon Assocs. (In re First Wellington Canyon Assocs.)*, No. 89 C 593, 1989 WL 106838, at *3 (N.D. Ill. Sept. 8, 1989) ("Under this test, the debtor's business judgment . . . must be accorded deference unless shown that the bankrupt's decision was taken in bad faith or in gross abuse of the bankrupt's retained discretion."); *In re Psychrometric Sys., Inc.*, 367 B.R. 670, 674 (Bankr. D. Colo. 2007) ("The trustee's business judgment is to be given 'great judicial deference.'") (quoting *In re Bakalis*, 220 B.R. 525, 532 (Bankr. E.D.N.Y. 1998); *GBL Holding Co., Inc. v. Blackburn/Travis/Cole, Ltd. (In re State Park Bldg. Grp., Ltd.)*, 331 B.R. 251, 254 (N.D. Tex. 2005) ("Great judicial deference is given to the Trustee's exercise of business judgment.").

23.     Here, the Debtors have determined in the exercise of their sound business judgment that a consensual withdrawal of MHI from the Comanche Peak Joint Venture is in the best interests of their estates. *First*, as described above, MHI, at the request of Japanese regulatory agencies, is currently focused on supporting Japanese utilities in restarting their pressurized water reactors. *Second*, following the altered market conditions that resulted from a precipitous and prolonged decline in natural gas prices, the Debtors have decided to reduce their efforts to develop new nuclear units. *Third*, the Withdrawal Agreements are structured so as to

preserve certain applications with regulatory and government agencies, the approval of which would be necessary should the Debtors choose to resume development of the New Units at a more suitable time.  Accordingly, the Debtors submit that entry into the Withdrawal Agreements is a sound exercise of the Debtors' business judgment.

II.    **Entry Into the Withdrawal Agreements is Fair, Reasonable, and in the Best Interests of the Debtors' Estates**

24.    Bankruptcy Rule 9019(a) provides in relevant part:

> On motion by the [debtor in possession] and after notice and a hearing, the court may approve a compromise or settlement. Notice shall be given to creditors, the United States trustee, . . . and indenture trustees as provided in Rule 2002 and to any other entity as the court may direct.

Fed. R. Bankr. P. 9019(a).

25.    Because the Withdrawal Agreements provide for cross-indemnifications and releases of claims by and between the Joint Venture Parties, the Debtors are also seeking approval of the Withdrawal Agreements under Bankruptcy Rule 9019(a).  Settlements and compromises are favored in bankruptcy because they tend to "minimize litigation and expedite the administration of a bankruptcy estate," as well as reduce unnecessary administrative costs. *See Myers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996); *see also Will v. Northwestern Univ. (In re Nutraquest, Inc.*), 434 F.3d 639, 644 (3d Cir. 2006); *In re W.R. Grace & Co.*, 475 B.R. 34, 77 (D. Del. 2012), *aff'd*, 729 F.3d 332 (3d Cir. 2013).

26.    Pursuant to Bankruptcy Rule 9019(a), a bankruptcy court may, after appropriate notice and a hearing, approve a compromise or settlement so long as the proposed settlement is fair, reasonable, and in the best interest of the estate.  *E.g.*, *In re Marvel Entm't Group, Inc.*, 222 B.R. 243, 249 (D. Del 1998) ("[T]he ultimate inquiry [is] whether 'the compromise is fair, reasonable, and in the interest of the estate.'") (citation omitted); *In re Northwestern Corp.*,

No. 03-12872, 2008 WL 2704341, at *6 (Bankr. D. Del. July 10, 2008) ("the bankruptcy court must determine whether the compromise is fair, reasonable, and in the best interests of the estate") (citing *In re Key3Media Group, Inc.*, 336 B.R. 87, 92 (Bankr D. Del. 2005)).

27.     When evaluating whether a compromise is in the best interest of the estate, the Court must "assess and balance the value of the claim that is being compromised against the value to the estate of the acceptance of the compromise proposal." *See In re Martin*, 91 F.3d 389, 393 (3d Cir. 1996); *accord In re Spansion, Inc.*, No. 09-10690, 2009 WL 1531788, at *4 (Bankr. D. Del. June 2, 2009); *In re World Health Alternatives, Inc.*, 344 B.R. 291, 296 (Bankr. D. Del. 2006).  In striking this balance, the Court should consider: "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors." *See Martin,* 91 F.3d at 393; *accord In re ID Liquidation One, LLC*, 555 F. App'x 202, 205 (3d Cir. 2014); *World Health Alternatives*, 344 B.R. at 296.

28.     The terms of the Withdrawal Agreements are fair, reasonable, and in the best interests of the estate.  While most assessments under Bankruptcy Rule 9019(a) of settlements or compromises involve the resolution of existing disputes, *e.g.*, *Martin*, 91 F.3d at 391 (settlement of breach of contract claims); *Marvel*, 222 B.R. at 245 (settlement between the Debtors and a group of bondholders who had voted pledged shares to replace Marvel's board of directors); *Spansion*, 2009 WL 1531788, at *1 (settlement of patent infringement actions), and no disagreement presently exists between the Joint Venture Parties, entry into the Withdrawal Agreements now will serve to avert potential litigation in the future.  Though the value of any prospective claims that could be precluded by the cross indemnification and material releases provided for in the Withdrawal Agreements is necessarily unknown, it is not clear that any such

claims would in fact materialize.  This uncertainty is outweighed by the clear benefit that would inure to the estate by entering into the Withdrawal Agreements—an early and certain resolution of the withdrawal of MHI from the Comanche Peak Joint Venture and an unwinding of MHI's rights and obligations to the Debtors and other Joint Venture Parties with respect to the Comanche Peak Joint Venture.  Importantly, Luminant, TCEH, and EFH Corp. do not believe that have any claims against MHI.  *See Penn Cent.*, 596 F.2d at 1113 (holding that achieving an "early and certain" payout to senior creditors warranted foregoing the possibility of litigation resulting in a higher valuation of the estates and a lower total amount of administrative claims).

29.    The decision whether to approve a settlement or compromise rests within the discretion of the bankruptcy court.  *In re Washington Mut., Inc.*, 442 B.R. 314, 327 (Bankr. D. Del. 2011); *In re Key3Media Group, Inc.,* 336 B.R. 87, 92 (Bankr. D. Del. 2005).  The Court does not need to be persuaded that the settlement achieves the best possible outcome for the debtor to be approved; the proposed settlement or compromise must simply "fall within the reasonable range of litigation possibilities."  *In re Coram Healthcare Corp.,* 315 B.R. 321, 330 (Bankr. D. Del. 2004) (citing *In re Penn Cent. Transp. Co.,* 596 F.2d 1102, 1114 (3d Cir.1979)).  The Debtors, under the advisement of their advisors and professionals, have determined that the cross indemnification and mutual release terms contained in the Withdrawal Agreements will result in a reasonable, even desirable, outcome and are necessary to effectuate the withdrawal of MHI from the Comanche Peak Joint Venture while preserving Comanche Peak LLC.

30.    As stated above, the Debtors have decided that because (a) MHI is currently focused on rebuilding Japan's nuclear infrastructure, (b) the fundamentally altered market conditions warrant the suspension of efforts to develop new nuclear units, (c) the structure of the Withdrawal Agreements preserves the Debtors' ability to resume development at the Comanche

Peak site in the future, and (d) MHI has a unilateral right to withdraw in 5 years and only *de minimis* performance requirements in the interim, providing for MHI's withdrawal from the Comanche Peak Joint Venture at this time and under the terms that have been negotiated is a sound exercise of business judgment in the best interests of the Debtors' estates.    The Withdrawal Agreements are the best and most efficient mechanism to achieve that end under the circumstances.

### Notice

31.    The Debtors shall provide notice of this Motion on the date hereof via first class mail to:  (a) the U.S. Trustee; (b) counsel to the TCEH Creditors' Committee; (c) the EFH Creditors' Committee; (d) Wilmington Trust, N.A., in its capacity as administrative agent under the TCEH first lien credit agreement and collateral agent under the TCEH intercreditor agreements and counsel thereto; (e) Bank of New York Mellon Trust Company, N.A., in its capacity as indenture trustee under:  (i) the TCEH unsecured pollution control revenue bonds; and (ii) the EFCH 2037 Notes due 2037, and counsel thereto; (f) American Stock Transfer & Trust Company, LLC, in its capacity as indenture trustee under:  (i) the 9.75% EFH senior unsecured notes due 2019; (ii) the 10.0% EFH senior unsecured notes due 2020; (iii) the 10.875% EFH LBO senior unsecured notes due 2017; (iv) the 11.25%/12.0% EFH LBO toggle notes due 2017; (v) the 5.55% EFH legacy notes (series P) due 2014; (vi) the 6.50% EFH legacy notes (series Q) due 2024; and (vii) the 6.55% EFH legacy notes (series R) due 2034, and counsel thereto; (g) Computershare Trust Company, N.A. and Computershare Trust Company of Canada, in their capacities as indenture trustee under:  (i) the 11.0% EFIH senior secured second lien notes due 2021; and (ii) the 11.75% EFIH senior secured second lien notes due 2022, and counsel thereto; (h) UMB Bank, N.A. in its capacity as indenture trustee under:  (i) the 9.75% EFIH senior unsecured notes due 2019; and (ii) the 11.25%/12.25% EFIH senior toggle notes

due 2018, and counsel thereto; (i) Delaware Trust Company of Delaware in its capacity as indenture trustee under:  (i) the 6.875% EFIH senior secured notes due 2017; (ii) the 10.0% EFIH senior secured notes due 2020; and (iii), the 11.50% TCEH senior secured notes due 2020, and counsel thereto; (j) Law Debenture Trust Company of New York in its capacity as indenture trustee under:  (i) the 10.25% TCEH senior unsecured notes due 2015; and (ii) the 10.50%/11.25% TCEH senior toggle notes due 2016, and counsel thereto; (k) Wilmington Savings Fund Society, FSB in its capacity as indenture trustee under the 15.0% TCEH senior secured second lien notes due 2021, and counsel thereto; (l) counsel to certain holders of claims against the Debtors regarding each of the foregoing described in clauses (c) through (j); (m) the agent for the TCEH debtor-in-possession financing facility and counsel thereto; (n) the agent for the EFIH debtor-in-possession financing facility and counsel thereto; (o) counsel to certain holders of equity in Texas Energy Future Holdings Limited Partnership; (p) counsel to the Ad Hoc Committee of TCEH Unsecured Noteholders; (q) counsel to the Ad Hoc Committee of TCEH Second Lien Noteholders; (r) Oncor Electric Delivery Holdings Company LLC and counsel thereto; (s) Oncor Electric Delivery Company LLC and counsel thereto; (t) the Securities and Exchange Commission; (u) the Internal Revenue Service; (v) the Office of the United States Attorney for the District of Delaware; (w) the Office of the Texas Attorney General on behalf of the Public Utility Commission of Texas; (x) counsel to the Electric Reliability Council of Texas; and (y) those parties that have requested notice pursuant to Bankruptcy Rule 2002.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

### No Prior Request

32.     No prior request for the relief sought in this Motion has been made to this or any other court.

*[Remainder of page intentionally left blank]*

WHEREFORE, the Debtors respectfully request that the Court enter the Order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested in this Motion and granting such other and further relief as is appropriate under the circumstances.

Dated: October 30, 2014

/s/ *Tyler D. Semmelman*
**RICHARDS, LAYTON & FINGER, P.A.**
Mark D. Collins (No. 2981)
Daniel J. DeFranceschi (No. 2732)
Jason M. Madron (No. 4431)
Tyler D. Semmelman (No. 5386)
920 North King Street
Wilmington, Delaware 19801
Telephone:      (302) 651-7700
Facsimile:      (302) 651-7701
Email:            collins@rlf.com
                     defranceschi@rlf.com
                     madron@rlf.com
                     semmelman@rlf.com

-and-

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Edward O. Sassower, P.C. (admitted *pro hac vice*)
Stephen E. Hessler (admitted *pro hac vice*)
Brian E. Schartz (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022-4611
Telephone:      (212) 446-4800
Facsimile:      (212) 446-4900
Email:            edward.sassower@kirkland.com
                     stephen.hessler@kirkland.com
                     brian.schartz@kirkland.com

-and-

James H.M. Sprayregen, P.C. (admitted *pro hac vice*)
Marc Kieselstein, P.C. (admitted *pro hac vice*)
Chad J. Husnick (admitted *pro hac vice*)
Steven N. Serajeddini (admitted *pro hac vice*)
300 North LaSalle
Chicago, Illinois 60654
Telephone:      (312) 862-2000
Facsimile:      (312) 862-2200
Email:            james.sprayregen@kirkland.com
                     marc.kieselstein@kirkland.com
                     chad.husnick@kirkland.com
                     steven.serajeddini@kirkland.com

*Co-Counsel to the Debtors and Debtors in Possession*