## EXHIBIT A

**Proposed Order**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) | Case No. 14-10979 (CSS) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |

**ORDER AUTHORIZING CERTAIN DEBTORS TO ENTER INTO AGREEMENTS REGARDING MHI'S WITHDRAWAL FROM THE COMANCHE PEAK JOINT VENTURE**

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of an order (this "Order") pursuant to section 363(b) of the Bankruptcy Code, authorizing the Debtors to enter into the Withdrawal Agreements, all as more fully set forth in the Motion and the Frenzel Declaration; and the Court having found that it has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and the Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and the Court having found that venue of this case and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and the Debtors having provided appropriate notice of the Motion and the opportunity for a hearing on the Motion under the circumstances; and the Court having considered the Motion and the Frenzel

---

[1]   The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810.  The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201.  Due to the large number of debtors in these chapter 11 cases, for which joint administration has been granted, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

[2]   Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

Declaration; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and upon all of the proceedings had before the Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.      The Motion is granted as set forth herein.

2.      The Debtors are authorized to enter into the Withdrawal Agreements and take any and all actions in connection therewith.

3.      The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Motion.

4.      Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

5.      The Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation of this Order.

Dated: _____
Wilmington, Delaware

_____
THE HONORABLE CHRISTOPHER S. SONTCHI
UNITED STATES BANKRUPTCY JUDGE

## **EXHIBIT 1 to EXHIBIT A**

**Withdrawal Agreements**

*Execution Version*

### REDEMPTION AGREEMENT FOR
### MEMBERSHIP UNITS IN
### COMANCHE PEAK NUCLEAR POWER COMPANY LLC

This Redemption Agreement for Membership Units in Comanche Peak Nuclear Power Company LLC (this "Redemption Agreement") is made and entered into as of the date listed on the signature page hereto (the "Effective Date"), by and among MHI Nuclear North America, Inc., a Delaware corporation (the "MHI Member"), Nuclear Energy Future Holdings II LLC, a Delaware limited liability company (the "Luminant Member"), and Comanche Peak Nuclear Power Company LLC, a Delaware limited liability company (the "Company"). Unless otherwise specified, each capitalized term used herein but not otherwise defined herein shall have the meaning ascribed to such term in that certain Second Amended and Restated Limited Liability Company Agreement of the Company dated effective as of April 28, 2014, as amended from time to time (as amended, the "LLC Agreement").

### W I T N E S S E T H:

**WHEREAS**, in connection with the formation of the Company, the Company previously issued to the MHI Member the number of Membership Units of the Company listed on the signature page hereto (the "Units");

**WHEREAS**, in exchange for the Company's payment to the MHI Member of the Redemption Payment (as defined below) pursuant to this Redemption Agreement, the MHI Member desires to surrender and relinquish to the Company all of the MHI Member's right, title and interest in and to the Units; and

**WHEREAS**, by entering into this Redemption Agreement, the Company and the MHI Member intend to cancel and terminate the Units.

**NOW, THEREFORE**, in consideration of the mutual covenants and premises contained herein, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties agree as follows:

1.      **Surrender of the Units**.  The MHI Member and the Luminant Member, as the sole members of the Company, hereby acknowledge and agree that, notwithstanding anything to the contrary in the LLC Agreement or any other agreement between the MHI Member and the Company or any of its subsidiaries or affiliates (together with the LLC Agreement, collectively, the "Relevant Agreements"), effective as of the Effective Date, the MHI Member hereby surrenders and relinquishes to the Company all of the MHI Member's right, title and interest in and to the Units, and the Units are redeemed and cancelled automatically with no further obligations on the part of the Company thereunder.

2.      **Acknowledgements and Waivers**.  Both the MHI Member and the Luminant Member hereby waive all requirements under the Relevant Agreements in respect of any action otherwise required thereunder by the Company or the other member and, by execution of this Redemption Agreement, the MHI Member further waives and relinquishes any and all rights to receive (a) consideration for the Units other than (i) the Redemption Payment and as otherwise provided in this Redemption Agreement and (ii) the rights and releases obtained by the MHI

Member in the Termination and Acknowledgement Agreement dated as of even date herewith by and among Luminant Generation Company LLC, a Texas limited liability company ("Luminant"), Texas Competitive Electric Holdings Company LLC, a Delaware limited liability company ("TCEH"), Mitsubishi Heavy Industries, Ltd., a Japanese corporation ("MHI"), Mitsubishi Nuclear Energy Systems, Inc., a Delaware corporation ("MNES"), the MHI Member, the Luminant Member and the Company (the "Termination and Acknowledgement Agreement" and together with the consideration set forth in subsection (i) above, collectively the "MHI Consideration"); and (b) distributions and allocations with respect to the Units pursuant to the LLC Agreement.  The Company has made available to the MHI Member true and correct copies of all agreements, documents, information, records and books that the MHI Member has requested relating to the Company.  The MHI Member has had full opportunity to ask questions of and receive answers from the Company and all questions asked by the MHI Member have been adequately answered to the full satisfaction of the MHI Member.

3.    **Redemption Payment**.  In exchange for the surrender and relinquishment of the Units, subject to Section 4 below, the Company will pay to the MHI Member all cash held by the Company as of October 31, 2014 (the "Redemption Payment") which, in the aggregate, constitutes all cash from all Company accounts as of such date (the "Reconciliation Date"). Payment of the Redemption Payment shall be made within thirty (30) days after the Effective Date of this Redemption Agreement.   Notwithstanding anything to the contrary in this Redemption Agreement or the Relevant Agreements, the Luminant Member shall be responsible for and shall pay all costs and expenses incurred by or charged to the Company on or after the Reconciliation Date, including all Approved Costs (as defined in the LLC Agreement).

4.    **Mutual Release**.

(a)    The MHI Member, on behalf of itself and on behalf of all its past, present and future direct or indirect parents, affiliates, predecessors, successors, assigns, heirs, executors, administrators, stockholders, partners, members, managers, employees, assignees, insurers, attorneys, representatives and agents (collectively, "Related Parties"), to the greatest extent permitted by law, hereby acknowledges that the MHI Consideration shall be in full satisfaction of any and all rights the MHI Member may have and all obligations the Company may owe to the MHI Member with respect to the Units or under the LLC Agreement.  Each of the Luminant Member and the Company, on behalf of itself and on behalf of all of its Related Parties, respectively, to the greatest extent permitted by law, hereby acknowledge that the surrender and relinquishment to the Company of the Units shall be in full satisfaction of any and all rights the Luminant Member or the Company may have and all obligations the MHI Member may owe to the Luminant Member or the Company with respect to the Units or under the LLC Agreement.

(b)    Each of the MHI Member, the Luminant Member and the Company, on behalf of itself and on behalf of all of its Related Parties, respectively, hereby releases, acquits and forever discharges each of the other parties and their respective members, directors, officers, employees, affiliates, managers, consultants, including legal counsel, accountants and advisors, and all predecessors, purchasers successors, assigns and representatives of the foregoing (collectively, the "Released Parties") from all actions, causes of action, suits, arbitrations, hearings, audits, investigations, debts, liens, contracts, agreements, obligations, promises, liabilities, claims of any nature whatsoever (whether in tort, contract, under laws or statutes),

rights, demands, damages, losses, costs and expenses (including, without limitation, attorneys' fees, court costs or other costs or expenses actually incurred) (collectively, "Claims") of any nature whatsoever, known and unknown, suspected or unsuspected, fixed or contingent, that have accrued or may accrue and that in any way relate to the surrender, relinquishment, cancellation and/or termination of the Units or any act or omission by the Company, the Luminant Member or the MHI Member, respectively, with respect thereto. Notwithstanding the foregoing, nothing in this Redemption Agreement shall be construed as releasing any rights, obligations or liabilities that the parties may have pursuant to this Redemption Agreement or any Claims arising out of or related to fraud.

5.     **MHI Member's Representations and Additional Agreements**.

(a)     The MHI Member represents and warrants to the Company that (i) at all times since the date of issuance of the Units up to the date hereof the MHI Member was the lawful owner of, and has had good title to, the Units, (ii) the number of Units shown on the signature page hereto are all of the Membership Units (as defined in the LLC Agreement) or rights convertible or exchangeable into Membership Units issued to the MHI Member, (iii) the Units are free and clear of all liens, restrictions, charges, security interests, voting agreements, domestic relations orders, commitments, encumbrances, and adverse claims (other than those set forth in the LLC Agreement or pursuant to applicable securities laws), (iv) the MHI Member has not heretofore assigned, transferred, sold, delivered, mortgaged, pledged, granted options or rights to purchase, or encumbered the Units (except as contemplated in the LLC Agreement), (v) the MHI Member has the right, power, and authority to enter into this Redemption Agreement, (vi) this Redemption Agreement has been duly executed by, and constitutes a legal, valid, binding and enforceable obligation of, the MHI Member, and (vii) the MHI Member is in compliance with all applicable laws with respect to the Units.

(b)     The MHI Member acknowledges that this Redemption Agreement is supported by good and valuable consideration and that once the MHI Member has accepted the Redemption Payment and executed and delivered this Redemption Agreement, the MHI Member has irrevocably ratified the terms and conditions of the release set forth in Section 4 above and is forever precluded from contesting the terms of such release.

(c)     The MHI Member agrees and covenants that the MHI Member shall not in the future assert, file, or prosecute any claim, demand or cause of action that is released by this Redemption Agreement against any of the Released Parties to recover any damages or injunctive relief, whether on the MHI Member's own behalf or on behalf of an entity that is not a party to this Redemption Agreement. If the MHI Member breaches this covenant-not-to-sue, the Released Party sued by the MHI Member shall be entitled to recover from the MHI Member all reasonable attorneys' fees and out-of-pocket costs incurred by it as a result of such breach.

(d)     The MHI Member agrees to indemnify and hold harmless each of the Released Parties from and against the full amount of any and all liabilities, losses, damages, or reasonable out-of-pocket expenses (including costs and reasonable attorneys' fees) or judgments suffered or incurred by the Released Parties in connection with any claim, demand or cause of action released by this Redemption Agreement brought by the MHI Member or any person or entity under assignment or title derivative from the MHI Member.

(e)     Any subsequent dispute among the parties shall not affect the validity and enforceability of the releases, the covenants-not-to-sue, or the indemnities granted by the MHI Member in favor of the Released Parties hereunder with respect to the terminated Units.

6.     **The Luminant Member's and the Company's Representations and Additional Agreements**.

(a)     Each of the Luminant Member and the Company represents and warrants to the MHI Member that (i) the Luminant Member and the Company has the right, power, and authority to enter into this Redemption Agreement; and (ii) this Redemption Agreement has been duly executed by, and constitutes a legal, valid, binding and enforceable obligation of, the Luminant Member and the Company.

(b)     The Luminant Member and the Company each acknowledges that this Redemption Agreement is supported by good and valuable consideration and that once the MHI Member has accepted the Redemption Payment and executed and delivered this Redemption Agreement, each of the Luminant Member and the Company has irrevocably ratified the terms and conditions of the release set forth in Section 4 above and each of the Luminant Member and the Company is forever precluded from contesting the terms of such release.

(c)     Each of the Luminant Member and the Company agrees and covenants that the Luminant Member and the Company shall not in the future assert, file, or prosecute any claim, demand or cause of action that is released by this Redemption Agreement against any of the Released Parties to recover any damages or injunctive relief, whether on the Luminant Member's or the Company's own behalf or on behalf of an entity that is not a party to this Redemption Agreement.  If the Luminant Member or the Company breaches this covenant-not-to-sue, the Released Party sued by the Luminant Member or the Company shall be entitled to recover from the Luminant Member or the Company on a joint and several basis all reasonable attorneys' fees and out-of-pocket costs incurred by it as a result of such breach.

(d)     In the event (and to the extent) that any portion of the Redemption Payment is voided, set aside, or otherwise must be returned or refunded by the MHI Member at any time for any reason relating to the business and operations of the Luminant Member or its affiliates (the "Redemption Repayment Obligation"), the Luminant Member hereby assumes sole and exclusive liability for the Redemption Repayment Obligation, to the extent permitted by applicable law, as its own obligation and shall undertake to satisfy it without need of demand or notice by the MHI Member.

(e)     Each of the Luminant Member and the Company, on a joint and several basis, agrees to indemnify and hold harmless each of the Released Parties from and against the full amount of any and all liabilities, losses, damages, or reasonable out-of-pocket expenses (including costs and reasonable attorneys' fees) or judgments suffered or incurred by the Released Parties in connection with any claim, demand or cause of action released by this Redemption Agreement brought by the Luminant Member, the Company or any person or entity under assignment or title derivative from the Luminant Member or the Company.

(f)     Any subsequent dispute among the parties shall not affect the validity and enforceability of the releases, the covenants-not-to-sue, or the indemnities granted by the Luminant Member and the Company in favor of the MHI Member and the Released Parties hereunder with respect to the terminated Units.

(g)     Each of the Luminant Member and the Company agree to keep true and accurate financial records, files, and books of the Company relating to activities and operations occurring on or prior to December 31, 2014 for a period of not less than one (1) year following the payment of the Redemption Payment. The Luminant Member and the Company shall, during this one-year period, permit MHI (or a third-party designated by MHI), upon receipt of reasonable prior notice to examine such records, files, and books from time to time to the extent necessary to verify the amount of the Redemption Payment, provided that unless such audit reveals an underpayment or a discrepancy in the determination of the Redemption Payment, MHI shall not exercise this audit right more than once unless it can demonstrate a reasonable belief of an error regarding an underpayment or the determination of the Redemption Payment.  In the event that the audit reveals an underpayment of any amount regarding the Redemption Payment, the Company shall promptly pay to MHI an amount equal to such underpayment, and in the event that an underpayment representing a discrepancy of more than ten percent (10%) is discovered, (i) the Company shall pay the amount of such underpayment along with interest on such underpayment, accruing from the date that such payment should have been made, at a rate of interest equal to the lesser of (a) the highest non-usurious contract rate permitted by applicable Law or (b) 450 basis points in excess of the rate published by Citibank, N.A. from time to time, as its "prime rate", and (ii) the cost of such audit shall be borne by the Company.  The Luminant Member shall procure that the Company has sufficient funds to meet the Company's payment obligations under this subsection (g).

7.     **Parties' Acknowledgement**.  Each of the MHI Member, the Luminant Member and the Company acknowledges that such party has read and understands this Redemption Agreement, is fully aware of its legal effect, has not acted in reliance upon any written or oral statements, representations or promises made by another party other than those contained in writing herein, and has entered into this Redemption Agreement freely based on its own judgment.  The MHI Member, the Luminant Member and the Company acknowledge and agree that, in deciding to enter into this Redemption Agreement, such party is relying on its own judgment and the judgment of the professionals of its choice, if any, with whom such party has consulted.

8.     **Termination as Member**.  Notwithstanding anything to the contrary in the LLC Agreement, the Company, the Luminant Member and the MHI Member hereby irrevocably consent and agree that immediately upon execution and delivery of this Redemption Agreement and payment of the Redemption Payment, all rights of the MHI Member under the LLC Agreement shall automatically be terminated for all purposes and the MHI Member shall cease to be a Member (as defined in the LLC Agreement) of the Company for all purposes.

9.     **Reserved**.

10.     **Effectiveness of Redemption Agreement**.   This Redemption Agreement is irrevocable by the parties hereto and effective as of the Effective Date.   Notwithstanding

anything to the contrary herein, this Redemption Agreement shall be effective upon approval by the United States Bankruptcy Court for the District of Delaware overseeing the chapter 11 bankruptcy proceedings of *In re Energy Future Holdings Corp.* [Case No. 14-10979] (CSS) and its subsidiaries.  This Redemption Agreement shall be binding upon and shall inure to the benefit of the parties hereto and shall also be binding upon and shall inure to the benefit of each of the party's predecessors, successors, assigns, representatives and agents.

11.    **Integration**.

(a)    When taken together, this Agreement and the Termination and Acknowledgment Agreement (collectively, the "Integrated Agreements") comprise one integrated agreement between and among the parties hereto and thereto (collectively, the "Integrated Parties") in furtherance of modifying the original purpose of the Company and the rights, duties and obligations of the members thereof and their respective affiliates, such that the Integrated Agreements are not to be construed as a bundle of separate, independent or severable agreements of the Integrated Parties.

(b)    Each of the Integrated Agreements is given by the parties thereto in consideration for each other Integrated Agreement, none of which the Integrated Parties would enter into without entry into each other Integrated Agreement by the parties thereto and the expectation of the continued effectiveness of each such Integrated Agreement.

(c)    Except to the extent otherwise agreed by the Integrated Parties, in the event that any Integrated Agreement is rescinded, invalidated, voided, avoided, rejected under section 365 of the United States Bankruptcy Code (or any analogous statute), or otherwise deemed or rendered ineffective for any reason (including without limitation by operation of law or court order, including any order of the United States Bankruptcy Court for the District of Delaware denying approval of such Integrated Agreement or the entry into such Integrated Agreement by Luminant or its affiliates), the Integrated Parties shall promptly take all steps necessary to reinstate and restore all agreements and assets affected by the Integrated Agreements, as applicable, to the status quo existing on the date hereof.

12.    **Governing Law**.  *THIS REDEMPTION AGREEMENT IS GOVERNED BY AND SHALL BE CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF DELAWARE, WITHOUT REGARD TO THE CONFLICTS OF LAW PRINCIPLES OF SUCH STATE.*

13.    **Dispute Resolution.**

(a)    Negotiation to Resolve Disputes.  If any claim, counterclaim, demand, cause of action, dispute, controversy or other matter in question arising out of or relating to this Redemption Agreement, or to the alleged breach hereof, or in any way relating to the subject matter of this Redemption Agreement or the relationship among the parties created by this Redemption Agreement (whether extra-contractual in nature, sounding in contract, tort or otherwise, or provided for by federal or state statute, common law or otherwise) (hereafter a "*Dispute*") arises, a party desiring to initiate dispute resolution shall give notice to all other parties to initiate the dispute resolution procedures set forth herein.  Promptly upon receipt of

such notice, each party that is a party to the Dispute (each, a "***Disputing Party***") shall refer such Dispute to a senior executive officer ("**SEO**") of such Disputing Party. The SEOs will meet in person or by teleconference as soon as mutually practicable (but in any event within 10 business days after such notice) in order to try and resolve the Dispute. If the SEOs are unable to resolve the Dispute on or before the 30th day after such notice, any Disputing Party may notify each other Disputing Party that it desires to commence an arbitration under this <u>Section 13</u> (an "***Arbitration Notice***").

(b)     <u>Arbitration</u>.  All Disputes shall be finally settled under the Commercial Arbitration Rules (the "***Rules***") of the American Arbitration Association ("**AAA**").  The parties agree that any such arbitration shall be confidential and no party shall publicly disclose the fact of such Dispute, the pleadings and positions taken in the arbitration, or the decision of the Tribunal.

(c)     <u>Selection of Arbitrators</u>.  Any arbitration conducted under this <u>Section 13</u> shall be heard by three arbitrators (each an "***Arbitrator***" and collectively the "***Tribunal***") selected in accordance with this <u>Section 13</u> and the Rules.  When a Dispute involves only two Disputing Parties, each Disputing Party shall appoint one Arbitrator within 10 days after the sending of the Arbitration Notice.  The two party-appointed Arbitrators will thereafter appoint a third Arbitrator within 15 days after the appointment of the second Arbitrator, which third Arbitrator shall not be a citizen of the United States of America or Japan.  Where a Dispute involves more than two Disputing Parties, all three Arbitrators shall be selected in accordance with the Rules, with the exception that the AAA shall not directly appoint the Tribunal without first attempting to make the appointments through the National Roster list system.  Each Disputing Party and any proposed Arbitrator shall, as soon as practicable, disclose to the other Disputing Parties any business, personal or other relationship or affiliation that may exist between any party and the proposed Arbitrators.  The Disputing Parties may then object to any of the proposed Arbitrators on the basis of such relationship or affiliation.  The validity of any such objection shall be determined according to the Rules.

(d)     <u>Conduct of Arbitration</u>.  The Tribunal shall expeditiously hear and decide all matters concerning the Dispute.  Any arbitration hearing shall be held in New York, New York.  Arbitration proceedings shall be conducted in English.  The decision of the Tribunal (which shall be rendered in English in the form of a written award) shall be final, nonappealable and binding upon the parties and may be confirmed in, and judgment upon the award entered by, any court having jurisdiction over the parties.  It is acknowledged and agreed that, consistent with the Rules, the Disputing Parties shall be permitted to request interim or injunctive relief from a court at any time.

(e)     <u>Arbitration Costs and Expenses</u>.  The responsibility for paying the costs of the Tribunal and any experts retained by the Tribunal shall be borne equally by the Disputing Parties, and costs incurred by any Disputing Party for its attorneys, advisors, consultants and experts shall be borne by the Disputing Party incurring such costs.

(f)     <u>Jurisdiction and Venue</u>.  Each party hereby consents to the non-exclusive personal jurisdiction and venue of the Federal District Court for the Southern District of New York and the Federal District Court for the Northern District of Texas for any proceedings in aid

of arbitration under this <u>Section 13</u>, including any request for interim or injunctive relief, *provided*, *further*, each party submits to the personal jurisdiction of, and agrees that all proceedings and disputes relating hereto shall be brought in, the United States Bankruptcy Court for the District of Delaware to the extent such court has, and agrees to exercise, jurisdiction.

14.     **Severability**.  If any provision of this Redemption Agreement is held to be illegal, invalid or unenforceable for any reason, such provision shall be fully severable and this Redemption Agreement shall be construed and enforced as if such illegal, invalid or unenforceable provision had never comprised a portion of this Redemption Agreement, and the remaining provisions of this Redemption Agreement shall remain in full force and effect and shall not be affected by the illegal, invalid or unenforceable provision or by its severance from this Redemption Agreement.  Furthermore, in lieu of such illegal, invalid or unenforceable provisions, there shall be added automatically as part of this Redemption Agreement a provision as similar in terms to such illegal, invalid or unenforceable provision as may be possible and be legal, valid and enforceable.

15.     **Headings**.   The section headings in this Redemption Agreement have been inserted for purposes of convenience and shall not be used for interpretive purposes.

16.     **Entirety**.   This Redemption Agreement contains the entire agreement of the parties and supersedes all prior negotiations and understandings with respect to the subject matter hereof, including without limitation, any provision in the LLC Agreement regarding the withdrawal of a Member, the disposition of Membership Units or otherwise related to the subject matter hereof.

17.     **Counterparts**.  This Redemption Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which together shall be deemed to be one and the same agreement. A signed copy of this Redemption Agreement delivered by facsimile, email or other means of electronic transmission shall be deemed to have the same legal effect as delivery of an original signed copy of this Redemption Agreement.

18.     **Notices**.   For purposes of this Redemption Agreement, notices and all other communications provided for herein shall be in writing and shall be deemed to have been duly given when personally delivered, telecopied or electronically mailed and confirmed, or when mailed by certified mail, return receipt requested, or nationally recognized overnight delivery service with proof of receipt maintained, at the following addresses (or any other address that any party may designate by written notice to the other party, in accordance herewith, except that such notice shall be effective only upon receipt):

If to the Company
or the Luminant Member to:   Comanche Peak Nuclear Power Company
                             c/o Luminant Generation Company LLC
                             1601 Bryan Street
                             Dallas, TX  75205
                             Attention:  Bob Frenzel, Senior Vice President,
                             Chief Financial Officer and Development Manager
                             Email:  bob.frenzel@luminant.com

If to the MHI Member to:     MHI Nuclear North America, Inc.
                            c/o Mitsubishi Heavy Industries, Ltd.
                            Global Nuclear Business Operations
                            16-5, Konan 2-Chome, Minato-ku
                            Tokyo 108-8215 Japan
                            Attention:  Hiroshi Matsuda, Deputy Senior Vice President
                            Email:  hiroshi_matsuda@mhi.co.jp

Any such notice shall, if delivered personally, be deemed received upon delivery; shall, if delivered by telecopy or electronic mail, be deemed received upon confirmation; shall, if delivered by nationally recognized overnight delivery service, be deemed received upon confirmed delivery; and shall, if delivered by mail, be deemed received upon actual receipt thereof.

[*Signature page to follow*]

**IN WITNESS WHEREOF**, this Redemption Agreement has been executed as of _____, 2014 by a duly authorized officer of each of the undersigned.

**COMPANY:**

**COMANCHE PEAK NUCLEAR POWER COMPANY LLC**

By: _____

Name: Robert C. Frenzel

Title:  Senior Vice President, Chief Financial Officer and Development Manager

**LUMINANT MEMBER:**

NUCLEAR ENERGY FUTURE HOLDINGS II LLC

By: _____

Name: Robert C. Frenzel

Title:  Senior Vice President and Chief Financial Officer

**MHI MEMBER:**

**MHI NUCLEAR NORTH AMERICA, INC.**

By: _____

Name:  Hiroshi Matsuda

Title:   President


Number of Membership Units held by the MHI Member:

4,800,000

*Execution Version*

# TERMINATION AND ACKNOWLEDGMENT AGREEMENT

This Termination and Acknowledgment Agreement (this "*Agreement*") dated as of _____, 2014 (the "*Effective Date*"), is entered into by and among Luminant Generation Company LLC, a Texas limited liability company ("*Luminant*"), Texas Competitive Electric Holdings Company LLC, a Delaware limited liability company ("*TCEH*"), Nuclear Energy Future Holdings II LLC, a Delaware limited liability company (the "*Luminant Member*"), Mitsubishi Heavy Industries, Ltd., a Japanese corporation ("*MHI*"), Mitsubishi Nuclear Energy Systems, Inc., a Delaware corporation ("*MNES*"), MHI Nuclear North America, Inc., a Delaware corporation (the "*MHI Member*"), and Comanche Peak Nuclear Power Company LLC, a Delaware limited liability company (the "*Company*" and, together with Luminant, TCEH, the Luminant Member, MHI, MNES and the MHI Member, the "*Parties*" and each a "*Party*"). Unless otherwise specified, each capitalized term used herein but not otherwise defined herein shall have the meaning ascribed to such term in that certain Second Amended and Restated Limited Liability Company Agreement of the Company dated effective as of April 28, 2014, as amended from time to time (as amended, the "*LLC Agreement*") or that certain Intellectual Property and Delivery Agreement dated effective as of April 28, 2014 (the "*IP Agreement*"), as applicable.

WHEREAS, the MHI Member and the Luminant Member desire for the LLC Agreement to be terminated in full and to be of no further force or effect as of the Effective Date;

WHEREAS, MNES and the Company (as successor-in-interest by novation to Luminant) are parties to that certain Contract for Services dated as of July 31, 2007, as such contract has been amended from time to time (as amended, the "*COLA Services Contract*"), pursuant to which MNES has agreed to provide engineering, licensing, environmental and other technical support as necessary to develop a COLA;

WHEREAS, MNES and the Company desire for the COLA Services Contract to be terminated in full and to be of no further force or effect as of the Effective Date;

WHEREAS, MNES, MHI, Luminant, TCEH (solely for the purposes set forth therein) and the Company (collectively, the "*Confidentiality Parties*") entered into that certain Amended and Restated Confidentiality Agreement dated as of January 30, 2009 (as amended, the "*Confidentiality Agreement*"), pursuant to which the Confidentiality Parties agreed to maintain the confidentiality of certain information obtained as a result of the formation and the operation of the Company;

WHEREAS, the Confidentiality Parties desire for the Confidentiality Agreement to be terminated in part and to be of no further force or effect as of the Effective Date, except with respect to Confidential Information and Restricted Information (as such terms are defined therein) disclosed up to (and including on) the Effective Date (including, for the avoidance of doubt, any Confidential Information and Restricted Information disclosed in relation to this Agreement and any matters related hereto);

WHEREAS, Luminant, the MHI Member and the Company entered into that certain Development Services Agreement dated as of January 30, 2009, as amended by that certain First

Amendment thereto dated as of April 27, 2012, as amended by that certain Second Amendment thereto dated effective as of April 28, 2014, and as further amended from time to time (as amended, the "**DSA**"), pursuant to which Luminant has agreed to provide the Company with certain development services relating to the Project;

WHEREAS, Luminant, the MHI Member and the Company desire for the DSA to be terminated in full and to be of no further force or effect as of the Effective Date;

WHEREAS, MNES and the Company entered into that certain Engineering Services Agreement dated as of January 30, 2009, as amended by that certain First Amendment thereto dated as of February 1, 2011, as further amended by that certain Second Amendment thereto dated as of April 27, 2012, and as further amended from time to time (as amended, the "**Engineering Services Agreement**"), pursuant to which MNES has agreed to provide the Company with site-specific engineering services necessary for the development of the Project (as defined in the Engineering Services Agreement) and to provide pricing and schedules required to achieve Project financing and to obtain engineering, equipment supply and construction contracts in support of the Project, subject to the terms and conditions set forth in the Engineering Services Agreement;

WHEREAS, MNES and the Company desire for the Engineering Services Agreement to be terminated in full and to be of no further force or effect as of the Effective Date;

WHEREAS, MHI and the Company entered into that certain Mitsubishi Engineering Services Agreement Guaranty dated as of January 30, 2009, as amended from time to time (as amended, the "**Mitsubishi Engineering Services Agreement Guaranty**"), pursuant to which MHI has agreed to provide security for certain obligations of MNES for the benefit of the Company and the Luminant Member, subject to the terms and conditions set forth in the Mitsubishi Engineering Services Agreement Guaranty;

WHEREAS, MHI, the Luminant Member and the Company desire for the Mitsubishi Engineering Services Agreement Guaranty to be terminated in full and to be of no further force or effect as of the Effective Date;

WHEREAS, the COLA Services Contract, the Engineering Services Agreement and the Mitsubishi Engineering Services Agreement Guaranty were suspended pursuant to that certain Suspension Agreement dated effective as of April 28, 2014, among MHI, MNES, the MHI Member, Luminant and the Company (the "**Suspension Agreement**" and, together with the LLC Agreement, the COLA Services Contract, the Confidentiality Agreement, the DSA, the Engineering Services Agreement and the Mitsubishi Engineering Services Agreement Guaranty, the "**Terminated Agreements**");

WHEREAS, MHI, MNES, the MHI Member, Luminant and the Company desire for the Suspension Agreement to be terminated in full and to be of no further force or effect as of the Effective Date;

WHEREAS, MNES, MHI, Luminant and the Company (the "**IP Parties**") entered into the IP Agreement, pursuant to which certain IP Parties have agreed to license certain Intellectual

2

Property (as defined therein) to other IP Parties, and pursuant to which each of MHI and MNES has agreed to deliver certain Basis Documents (as defined therein) to Luminant and its Affiliates;

WHEREAS, the IP Parties desire for the IP Agreement to remain in full force and effect after the Effective Date in accordance with its terms; and

WHEREAS, as of the Effective Date, the MHI Member, the Luminant Member and the Company are entering into that certain Redemption Agreement.

NOW, THEREFORE, in consideration of the premises, the agreements and mutual covenants contained herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

1.　　　Termination of the COLA Services Contract.  Effective as of the Effective Date and subject to Section 8(a) below, the COLA Services Contract, and all rights, duties, obligations and liabilities thereunder, shall terminate and be of no further force or effect, with the result that no Party shall have any further rights, duties, obligations or liabilities of any nature whatsoever under the COLA Services Contract.

2.　　　Termination of the Confidentiality Agreement.  Effective as of the Effective Date, except with respect to the confidentiality obligations and use restrictions regarding the Confidential Information and Restricted Information disclosed up to (and including on) the Effective Date (including, for the avoidance of doubt, any Confidential Information and Restricted Information disclosed in relation to this Agreement and any matters related hereto) and subject to Section 10 of the IP Agreement (which will remain in effect after the Effective Date), the Confidentiality Agreement, and all rights, duties, obligations and liabilities thereunder, shall terminate and be of no further force or effect, with the result that no Party shall have any further rights, duties, obligations or liabilities of any nature whatsoever under the Confidentiality Agreement.

3.　　　Termination of the DSA.  Effective as of the Effective Date, the DSA, and all rights, duties, obligations and liabilities thereunder, shall terminate and be of no further force or effect, with the result that no Party shall have any further rights, duties, obligations or liabilities of any nature whatsoever under the DSA.

4.　　　Termination of the Engineering Services Agreement.  Effective as of the Effective Date and subject to Section 8(a) below, the Engineering Services Agreement, and all rights, duties, obligations and liabilities thereunder, shall terminate and be of no further force or effect, with the result that no Party shall have any further rights, duties, obligations or liabilities of any nature whatsoever under the Engineering Services Agreement.

5.　　　Termination of the Mitsubishi Engineering Services Agreement Guaranty. Effective as of the Effective Date, the Mitsubishi Engineering Services Agreement Guaranty, and all rights, duties, obligations and liabilities thereunder, shall terminate and be of no further force or effect, with the result that no Party shall have any further rights, duties, obligations or liabilities of any nature whatsoever under the Mitsubishi Engineering Services Agreement Guaranty.

6.    <u>Termination of the Suspension Agreement</u>.  Effective as of the Effective Date, the Suspension Agreement, and all rights, duties, obligations and liabilities thereunder, shall terminate and be of no further force or effect, with the result that no Party shall have any further rights, duties, obligations or liabilities of any nature whatsoever under the Suspension Agreement.

7.    <u>Termination of the LLC Agreement</u>.  Effective as of the Effective Date, the LLC Agreement, and all rights, duties, obligations and liabilities thereunder, shall terminate and be of no further force or effect, with the result that no Party shall have any further rights, duties, obligations or liabilities of any nature whatsoever under the LLC Agreement

8.    <u>Intellectual Property</u>.

(a)    After the Effective Date, the IP Agreement shall remain in full force and effect and, notwithstanding anything in the COLA Services Contract or the Engineering Services Agreement to the contrary, in connection with the termination of the COLA Services Contract and the Engineering Services Agreement, all licenses or sublicenses with respect to Intellectual Property (as that term is defined in the IP Agreement) granted by MHI, MNES, or any of their Affiliates to the Company, Luminant, or their respective Affiliates pursuant to the COLA Services Contract or the Engineering Services Agreement shall survive such termination and continue but only to the extent such licenses or sublicenses are necessary to exercise the rights related to the licenses and sublicenses granted to the Company, Luminant, or their respective Affiliates in the IP Agreement.  Notwithstanding the foregoing, (1) MHI, MNES and their respective Affiliates shall have no obligation to provide any document or deliverable developed pursuant to or in connection with the COLA Services Contract or the Engineering Services Agreement to the Company, Luminant, or their respective Affiliates other than the Basis Documents as required under Section 3 of the IP Agreement, and (2) the survival of the licenses and sublicense as set forth in this Section 8(a) shall not affect the termination of all other rights, duties, obligations and liabilities (including warranties) under the COLA Services Contract or the Engineering Services Agreement pursuant to Sections 1 and 4 of this Agreement, respectively.

(b)    The IP Parties acknowledge and agree that, as of the Effective Date, the delivery of Basis Documents required under Section 3 of the IP Agreement is complete, and, in connection with this Agreement, the IP Parties hereby agree, to the extent any such documents have not already been provided, to execute the notifications and certifications to that effect as required by Section 3(f) of the IP Agreement and attached hereto as <u>Exhibits A</u> and <u>B</u>.

9.    <u>Licensing and Project Development</u>.  The Parties acknowledge and agree that, notwithstanding anything herein to the contrary, from and after the Effective Date, (a) MHI and its Affiliates shall have the sole right and power to make any decisions with respect to how to pursue a design certification with the NRC with respect to the MHI US-APWR Technology without any duty, obligation or liability to, and without requiring any consent of or notice to, the Company, Luminant, the Luminant Member, or Energy Future Holdings Corp., a Texas corporation ("**EFH**"), but subject to the surviving obligations and restrictions in the Confidentiality Agreement and the conditions set forth in <u>Exhibit D</u>; and (b) Luminant and its Affiliates shall have the sole right and power to make any decisions and take any actions with respect to (i) filings with the NRC and all other decisions with respect to how to pursue the COLA and (ii) the development of a nuclear power generation project (or any other project at the

4

Site), without any duty, obligation or liability to, and without requiring any consent of or notice to, the Company, MHI, MNES or the MHI Member, but subject to the surviving obligations and restrictions in the Confidentiality Agreement and the conditions set forth in Exhibit D. This Section 9 shall survive any termination of this Agreement and the Parties expressly agree and acknowledge that no Claims in respect of this Section 9 shall be released by the releases set forth in Section 10 and Section 11, respectively.

10.     Release of Claims by the Mitsubishi Parties.  As of the Effective Date, each of MHI, MNES, the MHI Member and the Company, on behalf of itself and each of its respective individual, joint or mutual, past, present and future parents, Affiliates, predecessors, successors, assigns, heirs, executors, administrators, stockholders, partners, members, managers, employees, agents, representatives, assignees, insurers and attorneys (collectively, the "*Mitsubishi Parties*"), hereby releases each of EFH, Luminant, the Luminant Member, TCEH and the Company, and each of their respective individual, joint or mutual, past, present and future parents, Affiliates, predecessors, successors, assigns, heirs, executors, administrators, stockholders, partners, members, managers, employees, agents, representatives, assignees, insurers and attorneys (collectively, the "*EFH Parties*"), from any and all actions, arbitrations, audits, hearings, investigations, litigations, orders, suits (whether civil, criminal, administrative, investigative or informal), debts, sums of money, interest owed, accounts, contribution obligations, reckonings, bonds, bills, covenants, controversies, agreements, guaranties, promises, undertakings, variances, trespasses, credit memoranda, charges, damages, judgments, executions, obligations, costs, expenses, fees (including attorneys' and accountants' fees, expenses and court costs), counterclaims, claims, demands, causes of action and liabilities, and hereby finally, unconditionally, irrevocably and absolutely forever waives any and all offsets and defenses, in each case to the extent arising out of any action, inaction, event, circumstance, agreement, misrepresentation, omission, transaction, fact or occurrence occurring or alleged to have occurred on or prior to the Effective Date hereof, whether known or unknown, absolute or contingent, matured or unmatured, foreseeable or unforeseeable, suspected or unsuspected, accrued or not accrued, previously or presently existing or hereafter discovered, at law, in equity or otherwise, whether arising by statute, common law, in contract, in tort or otherwise, of any kind, character or nature whatsoever (collectively, the "*Claims*"), which the Mitsubishi Parties ever had, now have or hereafter can, shall or may have against the EFH Parties relating to or connected to, or arising out of, the Terminated Agreements (other than with respect to the Confidentiality Agreement to the extent that obligations remain as set forth in this Agreement). The Mitsubishi Parties understand and agree that they are expressly waiving all Claims against the EFH Parties concerning the Terminated Agreements (other than with respect to the Confidentiality Agreement to the extent that obligations remain as set forth in this Agreement), including, without limitation, those Claims that it may not know or suspect to exist, which if known may have adversely affected the decision to provide this release, and the Mitsubishi Parties expressly waive any rights under applicable law that provide to the contrary. Notwithstanding the foregoing, nothing in this Agreement shall be construed as releasing any rights, obligations or liabilities that the Mitsubishi Parties or the EFH Parties may have pursuant to this Agreement or any Claim arising out of or related to fraud.

11.     Release of Claims by the EFH Parties.  As of the Effective Date, each of Luminant, TCEH, the Luminant Member and the Company, on behalf of itself and each of the other EFH Parties, hereby releases each of the Mitsubishi Parties from any and all Claims which

the EFH Parties ever had, now have or hereafter can, shall or may have against the Mitsubishi Parties relating to or connected to, or arising out of, the Terminated Agreements (other than with respect to the Confidentiality Agreement to the extent that obligations remain as set forth in this Agreement).  The EFH Parties understand and agree that they are expressly waiving all Claims against the Mitsubishi Parties concerning the Terminated Agreements (other than with respect to the Confidentiality Agreement to the extent that obligations remain as set forth in this Agreement), including, without limitation, those Claims that it may not know or suspect to exist, which if known may have adversely affected the decision to provide this release, and the EFH Parties expressly waive any rights under applicable law that provide to the contrary. Notwithstanding the foregoing, nothing in this Agreement shall be construed as releasing any rights, obligations or liabilities that the Mitsubishi Parties or the EFH Parties may have pursuant to this Agreement or any Claim arising out of or related to fraud.

12.    Removal of the MHI Member as a Member of the Company and Removal of Mitsubishi Parties from all Filings.  Luminant shall send one or more letters (as necessary) to the governmental authorities regarding the filings described on Exhibit E (which may be amended from time to time upon mutual agreement between Luminant and MHI) discussing the removal of the MHI Member from the Company and seeking the removal of the Mitsubishi Parties from the applicable regulatory filings, permits, authorizations, approvals related to the Project and other Company-related documents, all such letters shall be jointly developed by the Parties in connection with the communication plan developed as part of paragraph (a) in Exhibit D. Luminant, the Luminant Member, and TCEH shall provide, or cause the Company to provide, evidence to the MHI Member of such letters.  Luminant and MHI shall use good faith efforts to reach agreement regarding the letters to be provided to the applicable government authorities and any proposed amendment to Exhibit E by MHI.  In the event that Luminant (or the Luminant Member, TCEH or the Company) is the only party permitted to contact the applicable government authority regarding any applicable regulatory filings, permits, authorizations, approvals related to the Project or other Company-related documents and mutual agreement cannot be reached, such issue will be escalated to the SEOs of MHI and Luminant for resolution.

13.    Indemnification of the EFH Parties.  Each of MHI, MNES, and the MHI Member agrees to indemnify and hold harmless each of the EFH Parties from and against the full amount of any and all liabilities, losses, damages, or reasonable out-of-pocket expenses (including costs and reasonable attorneys' fees) or judgments suffered or incurred by the EFH Parties in connection with any breach of this Agreement by the Mitsubishi Parties.

14.    Indemnification of Mitsubishi Parties; Cooperation.  Each of Luminant, the Luminant Member, and TCEH agrees to (i) indemnify and hold harmless each of the Mitsubishi Parties from and against the full amount of any and all liabilities, losses, damages, or reasonable out-of-pocket expenses (including costs and reasonable attorneys' fees) or judgments suffered or incurred by the Mitsubishi Parties in connection with (a) any breach of this Agreement by the EFH Parties, including the removal set forth in Section 12 above, or (b) any claim related to the assets or operations of the Company, Comanche Peak Units 1&2, Comanche Peak Units 3&4, and the Future Comanche Peak Site Units to the extent in proportion that any of the Mitsubishi Parties is party to the claim as the result of the acts or omissions of any of the EFH Parties after the Effective Date, except to the extent in proportion such claim relates to the acts and omissions of the Mitsubishi Parties and (ii) use commercially reasonable efforts to cooperate with the

6

Mitsubishi Parties in good faith to remove them as a party to any claim relating to the assets or operations of the Company, Comanche Peak Units 1&2, Comanche Peak Units 3&4 and the Future Comanche Peak Site Units, except to the extent such claim relates to the acts and omissions of the Mitsubishi Parties.

15.    Confidentiality.  The EFH Parties agree that, from and after the Effective Date, notwithstanding any provision in the IP Agreement to the contrary, the documents set forth on Exhibit C shall be deemed Confidential Information under the Confidentiality Agreement and, as such, shall be held in confidence and shall not, without the prior written consent of MHI, be disclosed by any of the EFH Parties or their representatives to any third party unless such disclosure would be permissible under Section 3 of the Confidentiality Agreement.

16.    Integration.

(a)    When taken together, this Agreement and the Redemption Agreement (collectively, the "***Integrated Agreements***"), comprise one integrated agreement between and among the parties hereto and thereto (collectively, the "***Integrated Parties***") in furtherance of modifying the original purpose of the Company and the rights, duties and obligations of the members thereof and their respective Affiliates, such that the Integrated Agreements are not to be construed as a bundle of separate, independent or severable agreements of the Integrated Parties.

(b)    Each of the Integrated Agreements is given by the parties thereto in consideration for each other Integrated Agreement, none of which the Integrated Parties would enter into without entry into each other Integrated Agreement by the parties thereto and the expectation of the continued effectiveness of each such Integrated Agreement.

(c)    Except to the extent otherwise agreed by the Integrated Parties, in the event that any Integrated Agreement is rescinded, invalidated, voided, avoided, rejected under section 365 of the United States Bankruptcy Code (or any analogous statute), or otherwise deemed or rendered ineffective for any reason (including without limitation by operation of law or court order, including any order of the United States Bankruptcy Court for the District of Delaware denying approval of such Integrated Agreement or the entry into such Integrated Agreement by Luminant or its Affiliates), the Integrated Parties shall promptly take all steps necessary to reinstate and restore all agreements and assets affected by the Integrated Agreements, as applicable, to the status quo existing on the date hereof.

17.    Governing Law.  This Agreement and the rights and obligations of the Parties under this Agreement (including all matters of construction, validity and performance) shall be governed by, and construed and interpreted in accordance with, the law of the State of New York (including Sections 5-1401 and 5-1402 of the New York General Obligations Law, but excluding, to the maximum extent permitted by applicable law, all other choice of law rules).

18.    Dispute Resolution.

(a)    Negotiation to Resolve Disputes.  If any claim, counterclaim, demand, cause of action, dispute, controversy or other matter in question arising out of or relating to this Agreement, or to the alleged breach hereof, or in any way relating to the subject matter of this

Agreement or the relationship among the Parties created by this Agreement (whether extra-contractual in nature, sounding in contract, tort or otherwise, or provided for by federal or state statute, common law or otherwise) (hereafter a "***Dispute***") arises, a Party desiring to initiate dispute resolution shall give notice to all other Parties to initiate the dispute resolution procedures set forth herein.  Promptly upon receipt of such notice, each Party that is a party to the Dispute (each, a "***Disputing Party***") shall refer such Dispute to a senior executive officer ("***SEO***") of such Disputing Party.  The SEOs will meet in person or by teleconference as soon as mutually practicable (but in any event within 10 Business Days after such notice) in order to try and resolve the Dispute.  If the SEOs are unable to resolve the Dispute on or before the 30th Day after such notice, any Disputing Party may notify each other Disputing Party that it desires to commence an arbitration under this Section 18 (an "***Arbitration Notice***").

(b)    Arbitration.  All Disputes shall be finally settled under the Commercial Arbitration Rules (the "***Rules***") of the American Arbitration Association ("***AAA***").  The Parties agree that any such arbitration shall be confidential and no Party shall publicly disclose the fact of such Dispute, the pleadings and positions taken in the arbitration, or the decision of the Tribunal.

(c)    Selection of Arbitrators.  Any arbitration conducted under this Section 18 shall be heard by three arbitrators (each an "***Arbitrator***" and collectively the "***Tribunal***") selected in accordance with this Section 18 and the Rules.  When a Dispute involves only two Disputing Parties, each Disputing Party shall appoint one Arbitrator within 10 Days after the sending of the Arbitration Notice.  The two party-appointed Arbitrators will thereafter appoint a third Arbitrator within 15 Days after the appointment of the second Arbitrator, which third Arbitrator shall not be a citizen of the United States of America or Japan.  Where a Dispute involves more than two Disputing Parties, all three Arbitrators shall be selected in accordance with the Rules, with the exception that the AAA shall not directly appoint the Tribunal without first attempting to make the appointments through the National Roster list system.  Each Disputing Party and any proposed Arbitrator shall, as soon as practicable, disclose to the other Disputing Parties any business, personal or other relationship or affiliation that may exist between any Party and the proposed Arbitrators.  The Disputing Parties may then object to any of the proposed Arbitrators on the basis of such relationship or affiliation.  The validity of any such objection shall be determined according to the Rules.

(d)    Conduct of Arbitration.  The Tribunal shall expeditiously hear and decide all matters concerning the Dispute.  Any arbitration hearing shall be held in New York, New York.  Arbitration proceedings shall be conducted in English.  The decision of the Tribunal (which shall be rendered in English in the form of a written award) shall be final, nonappealable and binding upon the Parties and may be confirmed in, and judgment upon the award entered by, any court having jurisdiction over the Parties.  It is acknowledged and agreed that, consistent with the Rules, the Disputing Parties shall be permitted to request interim or injunctive relief from a court at any time.

(e)    Arbitration Costs and Expenses.  The responsibility for paying the costs of the Tribunal and any experts retained by the Tribunal shall be borne equally by the Disputing Parties, and costs incurred by any Disputing Party for its attorneys, advisors, consultants and experts shall be borne by the Disputing Party incurring such costs.

      (f)    <u>Jurisdiction and Venue</u>.  Each Party hereby consents to the non-exclusive personal jurisdiction and venue of the Federal District Court for the Southern District of New York and the Federal District Court for the Northern District of Texas for any proceedings in aid of arbitration under this Section 18, including any request for interim or injunctive relief, *provided*, *further*, each party submits to the personal jurisdiction of, and agrees that all proceedings and disputes relating hereto shall be brought in, the United States Bankruptcy Court for the District of Delaware to the extent such court has, and agrees to exercise, jurisdiction.

      19.    <u>Limitations on Liability</u>.  **NOTWITHSTANDING ANY PROVISION OF THIS AGREEMENT, IN NO EVENT SHALL ANY PARTY EVER BE LIABLE TO ANY OTHER PARTY OR THIRD PARTY (EXCEPT FOR, IN EACH CASE, ANY DAMAGES ACTUALLY PAID TO A THIRD PARTY THAT IS NOT AN INDEMNIFIED PARTY PURSUANT TO A THIRD PARTY CLAIM FOR WHICH INDEMNIFICATION IS REQUIRED HEREUNDER) WITH RESPECT TO ANY CLAIM ARISING OUT OF OR RELATING TO THIS AGREEMENT FOR ANY LOST OR PROSPECTIVE PROFITS OR FOR SPECIAL, PUNITIVE, EXEMPLARY, CONSEQUENTIAL, INCIDENTAL OR INDIRECT LOSSES OR DAMAGES FROM ITS PERFORMANCE UNDER THIS AGREEMENT OR FOR ANY FAILURE OF PERFORMANCE HEREUNDER OR RELATED HERETO, WHETHER ARISING OUT OF BREACH OF CONTRACT, NEGLIGENCE, TORT, STRICT LIABILITY OR OTHERWISE AND WHETHER OR NOT ARISING FROM ANY OTHER PARTY'S SOLE, JOINT OR CONCURRENT NEGLIGENCE, STRICT LIABILITY OR OTHER FAULT.**

      20.    <u>Severability</u>.  If any provision of this Agreement or the application thereof to any Party or circumstance is held invalid or unenforceable to any extent, the remainder of this Agreement and the application of that provision to the other Parties or circumstances is not affected thereby and the Parties shall, to the extent practicable and permitted by applicable law, negotiate in good faith to replace that provision with a new provision that is valid and enforceable and that puts the Parties in substantially the same economic, business and legal position as they would have been in if the original provision had been valid and enforceable.

      21.    <u>Amendments</u>.  This Agreement may be amended, modified or superseded, and any of the terms or provisions herein may be waived, only by a written instrument executed by each of the Parties.  No waiver by any Party of any breach of any term or provision contained in this Agreement, in any one or more instances, shall be deemed to be or construed as a further or continuing waiver of any such breach or a waiver of any other breach of any other term or provision.

      22.    <u>Headings</u>.  Titles or captions of sections, paragraphs or subparagraphs contained in this Agreement are inserted only as a matter of convenience and for reference, and in no way define, limit, extend, or describe the scope of this Agreement or the intent of any provision hereof.

      23.    <u>Notices</u>.  Unless otherwise provided herein, all notices, requests, consents, approvals, demands and other communications to be given hereunder shall be in writing and shall be deemed given upon (i) confirmed delivery by a standard overnight carrier or when delivered by hand, (ii) actual receipt, addressed to the respective Parties at the following

addresses (or such other address for a Party as shall be specified by like notice), or (iii) electronic transmission (if followed by delivery by standard overnight carrier or delivery by hand) to the email addresses set forth below:

If to any EFH Party (other than as set forth below), to:

> Energy Future Holdings Corp.
> c/o Luminant Generation Company LLC
> 1601 Bryan Street
> Dallas, Texas 75205
> Attention:  Bob Frenzel, Chief Financial Officer
> Email:  bob.frenzel@luminant.com

> with a copy to:

> Energy Future Holdings Corp.
> c/o Luminant Generation Company LLC
> 1601 Bryan Street
> Dallas, Texas 75205
> Attention:  Stephanie Zapata Moore, General Counsel
> Email: Stephanie.moore@luminant.com

If to Luminant, the Luminant Member, TCEH or the Company, to:

> Luminant Generation Company LLC
> 1601 Bryan Street
> Dallas, Texas 75205
> Attention:  Bob Frenzel, Chief Financial Officer
> Email:  bob.frenzel@luminant.com

> with a copy to:

> Luminant Generation Company LLC
> 1601 Bryan Street
> Dallas, Texas 75205
> Attention:  Stephanie Zapata Moore, General Counsel
> Email: Stephanie.moore@luminant.com

If to MHI, MNES or the MHI Member, to:

> Mitsubishi Heavy Industries, Ltd.
> Global Nuclear Business Operations
> 16-5, Konan 2-Chome, Minato-ku
> Tokyo 108-8215 Japan
> Attention:  Hiroshi Matsuda, Deputy Senior Vice President
> Email:  hiroshi_matsuda@mhi.co.jp

with a copy to:

Mitsubishi Heavy Industries, Ltd.
Legal & General Affairs Department
16-5, Konan 2-Chome, Minato-ku
Tokyo 108-8215 Japan
Attention: Hisashi Kato, Manager
Email: hisasi_kato@mhi.co.jp

A Party may change its notice address by giving written notice in the manner specified above.

24.    <u>Permitted Communications</u>.  The Parties have agreed upon and shall comply with the communications plan set forth in <u>Exhibit D</u>.

25.    <u>Counterparts</u>.  This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which together shall be deemed to be one and the same agreement. A signed copy of this Agreement delivered by facsimile, email or other means of electronic transmission shall be deemed to have the same legal effect as delivery of an original signed copy of this Agreement.

26.    <u>Entire Agreement</u>.  This Agreement contains the entire agreement of the Parties hereto with respect to its subject matter and supersedes all communications, negotiations and agreements (whether written or oral) of the Parties with respect thereto made prior to the Effective Date.

27.    <u>Successors and Assigns</u>.  All of the terms and conditions of this Agreement shall be binding upon, and inure to the benefit of, and be enforceable by, the Parties and their respective successors and permitted assigns. This Agreement and the rights and obligations hereunder shall not be assigned by any Party without the prior written consent of the other Parties.

28.    <u>Effectiveness of Agreement</u>.  This Agreement is irrevocable by the parties hereto and effective as of the Effective Date.  Notwithstanding anything to the contrary herein, this Agreement shall be effective upon approval by the United States Bankruptcy Court for the District of Delaware overseeing the chapter 11 bankruptcy proceedings of *In re Energy Future Holdings Corp.* [Case No. 14-10979] (CSS) and its subsidiaries.

[*Signature Pages Follow*]

11

IN WITNESS WHEREOF, the undersigned have executed this Agreement as of the date first above written.

**LUMINANT GENERATION COMPANY LLC**

By: _____
Name:  Robert C. Frenzel
Title:   Senior Vice President and Chief Financial Officer

**TEXAS COMPETITIVE ELECTRIC HOLDINGS COMPANY LLC**

By: _____
Name:  M. A. McFarland
Title:   Executive Vice President

**NUCLEAR ENERGY FUTURE HOLDINGS II LLC**

By: _____
Name:  Robert C. Frenzel
Title:   Senior Vice President and Chief Financial Officer

**MITSUBISHI HEAVY INDUSTRIES, LTD.**

By: _____
Name:  Hiroshi Matsuda
Title:   Deputy Senior Vice President Global Nuclear Business Operations Plant Business Department

**MITSUBISHI NUCLEAR ENERGY SYSTEMS, INC.**

By: _____
Name:  Yoshinobu Shibata
Title:   President and Chief Executive Officer

SIGNATURE PAGE TO
TERMINATION AGREEMENT

IN WITNESS WHEREOF, the undersigned have executed this Agreement as of the date first above written.

**LUMINANT GENERATION COMPANY LLC**

By: _____
Name:  Robert C. Frenzel
Title:  Senior Vice President and Chief Financial Officer

**TEXAS COMPETITIVE ELECTRIC HOLDINGS COMPANY LLC**

By: _____
Name:  M. A. McFarland
Title:  Executive Vice President

**NUCLEAR ENERGY FUTURE HOLDINGS II LLC**

By: _____
Name:  Robert C. Frenzel
Title:  Senior Vice President and Chief Financial Officer

**MITSUBISHI HEAVY INDUSTRIES, LTD.**

By: _____
Name:  Hiroshi Matsuda
Title:  Deputy Senior Vice President Global Nuclear Business Operations Plant Business Department

**MITSUBISHI NUCLEAR ENERGY SYSTEMS, INC.**

By: _____
Name:  Yoshinobu Shibata
Title:  President and Chief Executive Officer

SIGNATURE PAGE TO
TERMINATION AGREEMENT

IN WITNESS WHEREOF, the undersigned have executed this Agreement as of the date first above written.

**LUMINANT GENERATION COMPANY LLC**

By:_____
Name:  Robert C. Frenzel
Title:   Senior Vice President and Chief Financial Officer

**TEXAS COMPETITIVE ELECTRIC HOLDINGS COMPANY LLC**

By:_____
Name:  M. A. McFarland
Title:   Executive Vice President

**NUCLEAR ENERGY FUTURE HOLDINGS II LLC**

By:_____
Name:  Robert C. Frenzel
Title:   Senior Vice President and Chief Financial Officer

**MITSUBISHI HEAVY INDUSTRIES, LTD.**

By:_____
Name:  Hiroshi Matsuda
Title:   Deputy Senior Vice President Global Nuclear Business Operations Plant Business Department

**MITSUBISHI NUCLEAR ENERGY SYSTEMS, INC.**

By:_____
Name:  Yoshinobu Shibata
Title:   President and Chief Executive Officer

**MHI NUCLEAR NORTH AMERICA, INC.**

By: _____

Name:   Hiroshi Matsuda

Title:    President


**COMANCHE PEAK NUCLEAR POWER COMPANY LLC**


By: _____

Name:   Robert C. Frenzel

Title:    Senior Vice President, Chief Financial Officer and Development Manager

**MHI NUCLEAR NORTH AMERICA, INC.**

By: _____
Name:   Hiroshi Matsuda
Title:    President


**COMANCHE PEAK NUCLEAR
POWER COMPANY LLC**

By: _____
Name:   Robert C. Frenzel
Title:    Senior   Vice   President,   Chief
          Financial Officer and Development
          Manager

## EXHIBIT A

## LUMINANT CERTIFICATION

### Luminant Officer's Certificate

_____, 2014

This Officer's Certificate is being executed and delivered pursuant to **Section 3(f)** of that certain Intellectual Property and Delivery Agreement by and among Mitsubishi Heavy Industries, Ltd., a Japanese corporation ("**MHI**"), Mitsubishi Nuclear Energy Systems, Inc., a Delaware corporation ("**MNES** and, together with MHI, the "**MHI Parties**"), Luminant Generation Company LLC, a Texas limited liability company ("**Luminant**"), and Comanche Peak Nuclear Power Company LLC, a Delaware limited liability company, dated effective as of April 28, 2014 (the "**IP Agreement**").  Capitalized terms used herein and not otherwise defined shall have those meanings assigned to them in the IP Agreement.  The undersigned hereby certifies on behalf of Luminant that:

1. Luminant has downloaded or received all Site Specific Basis Documents that MNES and MHI are required to have delivered to Luminant pursuant to Section 3 of the IP Agreement as of the date hereof.

2. All of the obligations for which the MHI Parties are responsible under Section 3 of the IP Agreement (except with respect to the obligations to retain and deliver to the NRC the Specified Redaction Basis Documents and the MHI Retained Basis Documents in accordance with Section 3) and all of the other obligations for which the MHI Parties are responsible as of the date hereof regarding the Site Specific Basis Documents have been fully satisfied.

[*The remainder of this page is left intentionally blank.*]

IN WITNESS WHEREOF, the undersigned have executed this certificate on the date set forth above.

**LUMINANT GENERATION COMPANY LLC**

By:  _____
Name:  Robert C. Frenzel
Title:   Senior Vice President and
          Chief Financial Officer

## EXHIBIT B

## MHI CERTIFICATION

## MHI Officer's Certificate

_____, 2014

This Officer's Certificate is being executed and delivered pursuant to **Section 3(f)** of that certain Intellectual Property and Delivery Agreement by and among Mitsubishi Heavy Industries, Ltd., a Japanese corporation ("**MHI**"), Mitsubishi Nuclear Energy Systems, Inc., a Delaware corporation ("**MNES**" and, together with MHI, the "**MHI Parties**"), Luminant Generation Company LLC, a Texas limited liability company and Comanche Peak Nuclear Power Company LLC, a Delaware limited liability company, dated effective as of April 28, 2014 (the "**IP Agreement**").  Capitalized terms used herein and not otherwise defined shall have those meanings assigned to them in the IP Agreement.  The undersigned hereby certifies on behalf of the MHI Parties that the MHI Parties have exercised commercially reasonable efforts to locate all Site Specific Basis Documents in their possession, custody, or control and have delivered all such Basis Documents to the Basis Document Data Room, except as set forth in the IP Agreement with respect to the Basis Documents listed on Exhibits 2-4 thereto.

*[The remainder of this page is left intentionally blank.]*

IN WITNESS WHEREOF, the undersigned have executed this certificate on the date set forth above.

**MITSUBISHI HEAVY INDUSTRIES, LTD.**

By: _____

Name: Hiroshi Matsuda

Title: Deputy Senior Vice President
Global Nuclear Business Operations
Plant Business Department

**MITSUBISHI NUCLEAR ENERGY SYSTEMS, INC.**

By: _____

Name: Yoshinobu Shibata

Title: President and Chief Executive Officer

**EXHIBIT C**

**CONFIDENTIAL DOCUMENTS**

| ▊ | ▊▊▊ | ▊▊▊ | ✚ | ▬ |
|---|---|---|---|---|
| ▊ | ▬▬▬ | ▬▬▬▬▬▬▬▬▬▬▬▬ ▬▬ | ▪ | ▬ |
| ▊ | ▬▬▬ | ▬▬▬▬▬▬▬▬▬▬ | ▪ | ▬ |
| ▊ | ▬▬▬ | ▬▬▬▬▬▬ | ▬ | ▬ |
| ▊ | ▬▬▬ | ▬▬▬▬▬▬ | ▪ | ▬ |
| ▊ | ▬▬▬ | ▬▬▬▬▬▬▬ | ▪ | ▬ |
| ▊ | ▬▬▬ | ▬▬▬▬▬▬▬▬ | ▪ | ▬ |
| ▊ | ▬▬ | ▬▬▬▬▬▬ | ▊ | |
| ▊ | ▬▬ | ▬▬▬▬▬ | ▊ | |
| ▊ | ▬▬ | ▬▬▬▬▬ | ▊ | |
| ▬▬▬ | | ▬▬▬▬▬ | ▊ | |
| ▬▬▬ | | ▬▬▬▬▬▬ | ▊ | |
| ▬▬▬ | | ▬▬▬▬▬▬ | ▊ | |
| ▬▬▬ | | ▬▬▬▬▬▬ | ▊ | |

EXHIBIT C

| ██ | ███ | ████ | ██ █ ██ | ███ |
|---|---|---|---|---|
| ████████ | | ████████████████████ | █ | |
| ████████ | | ████████████████████ | █ | |
| ████████ | | ████████████████████ | █ | |
| ████████ | | ████████████████████ | █ | |
| ████████ | | ██████████████████ | █ | |
| ████████ | | ██████████████████ | █ | |
| ████████ | | ██████████████████ | █ | |
| ████████ | | ██████████████████ | █ | |
| ████████ | | █████████████████████ | █ | |
| ████████ | | █████████████████████ | █ | |
| ████████ | | ████████████████████ | █ | |
| ████████ | | █████████████████████ | █ | |
| ████████ | | ████████████████ | █ | |
| ████████ | | ███████████████████ | █ | |
| ████████ | | ███████████████████ | █ | |
| ████████ | | ███████████████████ | █ | |
| ████████ | | ███████████████████ | █ | |
| ████████ | | ███████████████████ | █ | |

Exhibit C

| ▆ | ▆▆ | ▆▆▆ | ▆▆ | | ▆▆ |
|---|---|---|---|---|---|
| ▆▆▆▆▆ | | ▆▆▆▆▆▆▆▆▆▆▆ | | ▆ | |
| ▆▆▆▆▆ | | ▆▆▆▆▆▆▆▆▆ | | ▆ | |
| ▆▆▆▆▆ | | ▆▆▆▆▆▆▆▆▆ | | ▆ | |
| ▆▆▆▆▆ | | ▆▆▆▆▆▆▆▆▆ | | ▆ | |
| ▆▆▆▆▆ | | ▆▆▆▆▆▆▆▆▆ | | ▆ | |
| ▆▆▆▆▆ | | ▆▆▆▆▆▆▆▆▆ | | ▆ | |
| ▆▆▆▆▆ | | ▆▆▆▆▆▆▆▆▆ | | ▆ | |
| ▆▆▆▆▆ | | ▆▆▆▆▆▆▆▆▆ | | ▆ | |
| ▆▆▆▆▆ | | ▆▆▆▆▆▆▆▆▆ | | ▆ | |
| ▆▆▆▆▆ | | ▆▆▆▆▆▆▆▆▆ | | ▆ | |
| ▆▆▆▆▆ | | ▆▆▆▆▆▆▆▆▆▆▆ | | ▆ | |
| ▆▆▆▆▆ | | ▆▆▆▆▆▆▆▆▆▆▆ | | ▆ | |
| ▆▆▆▆▆ | | ▆▆▆▆▆▆▆▆ | | ▆ | |
| ▆▆▆▆▆ | | ▆▆▆▆▆▆▆▆ | | ▆ | |
| ▆▆▆▆▆ | | ▆▆▆▆▆▆▆▆ | | ▆ | |
| ▆▆▆▆▆ | | ▆▆▆▆▆▆▆▆ | | ▆ | |
| ▆▆▆▆▆ | | ▆▆▆▆▆▆▆▆ | | ▆ | |
| ▆▆▆▆▆ | | ▆▆▆▆▆▆▆▆ | | ▆ | |

EXHIBIT C

| ▬ | ▬▬ | ▬▬▬ | ▬ | ▬ |
|---|---|---|---|---|
| ▬▬▬ | | ▬▬▬▬▬▬ | | |
| ▬▬▬ | | ▬▬▬▬▬▬ | | |
| ▬▬▬ | | ▬▬▬▬▬▬ | | |
| ▬▬▬ | | ▬▬▬▬▬▬ | | |
| ▬▬▬ | | ▬▬▬▬▬▬ | | |
| ▬▬▬ | | ▬▬▬▬▬▬ | | |
| ▬▬▬ | | ▬▬▬▬▬▬ | | |
| ▬▬▬ | | ▬▬▬▬▬ | | |
| ▬▬▬ | | ▬▬▬▬▬▬▬ | | |
| ▬▬▬ | | ▬▬▬▬▬▬▬ | | |
| ▬▬▬ | | ▬▬▬▬▬▬▬ | | |
| ▬▬▬ | | ▬▬▬▬▬▬▬ | | |
| ▬▬▬ | | ▬▬▬▬▬ | | |
| ▬▬▬ | | ▬▬▬▬▬ | | |
| ▬▬▬ | | ▬▬▬▬▬ | | |
| ▬▬▬ | | ▬▬▬▬ | | |
| ▬▬▬ | | ▬▬▬▬▬ | | |

EXHIBIT C

| ▪ | ▆▆ | ▆▆▆▆▆ | ✚ | ▆▆ |
|---|---|---|---|---|
| ▆▆▆▆▆ | | ▆▆▆▆▆▆▆▆ | | |
| ▆▆▆▆▆ | | ▆▆▆▆▆▆▆▆▆▆ | | |
| ▆▆▆▆▆ | | ▆▆▆▆▆▆▆ | | |
| ▆▆▆▆▆ | | ▆▆▆▆▆▆▆▆▆ | | |
| ▆▆▆▆▆ | | ▆▆▆▆▆▆▆▆ | | |
| ▆▆▆▆▆ | | ▆▆▆▆▆▆▆ | | |

EXHIBIT C

| ▪ | ███ | ██████ | ✝ | ██ |
|---|---|---|---|---|
| ██████ | █████████ | | | |
| ██████ | █████████████ | | | |
| ██████ | ██████████████ | | | |
| ██████ | ███████████████ | | | |
| ██████ | ██████████████████ | | | |
| ██████ | █████████████ | | | |
| ██████ | ███████████████ | | | |

EXHIBIT C



EXHIBIT C



Exhibit C

| | | | | |
|---|---|---|---|---|
| ▆ | ▆▆▆ | ▆▆▆▆ | ▆ | ▆▆ |

Exhibit C



Exhibit C



Exhibit C



Exhibit C



Exhibit C



Exhibit C



Exhibit C

| ■ | ■■ | ■■■ | ■ | ■ |
|---|---|---|---|---|
| ■ | ■■ | ■■■■■■ | ■ | |
| ■ | ■■ | ■■■■ | ■ | |
| ■ | ■■ | ■■■■■ | ■ | |
| ■ | ■■ | ■■■■ | ■ | |
| ■ | ■■ | ■■■■■■ | ■ | |
| ■ | ■■ | ■■■■■■■ | ■ | |
| ■ | ■■ | ■■■■■■ | ■ | |
| ■ | ■■ | ■■■■■ | ■ | |
| ■ | ■■ | ■■■■■ | ■ | |
| ■ | ■■ | ■■■■■■■ | ■ | |
| ■ | ■■ | ■■■■■ | ■ | |
| ■■■■■■■■■■ | | | | |
| ■ | ■ | ■■■■■ | ■ | |
| ■■■■■■■ | | | | |
| ■ | ■■ | ■■■■■■ | ■ | |

Exhibit C



EXHIBIT C



Exhibit C

| | █████ | ████████ | ✝ | ███ |
|---|---|---|---|---|
| ██████████████████████████ | | | | |
| ██ | ████ | ██████████████ | ██ | |
| ████████████████████████████ | | | ██ | |
| ████████████████████████████ | | | ██ | |
| ██ | ██████ | █████████████ | ██ | |
| ██ | █████ | ████████████████████ | ██ | |
| ██ | █████ | ████████████████████ | ██ | |
| ██ | █████ | ████████████████████ | ██ | |
| ██ | █████ | ████████████████████ | ██ | |
| ██ | █████ | ███████████████████ | ██ | |
| ██ | █████ | ███████████████████ | ██ | |
| ██ | █████ | ███████████████████ | ██ | |
| ██ | █████ | ███████████████████ | ██ | |
| ██ | █████ | █████████████████ | ██ | |
| ██ | █████ | ███████████████████ | ██ | |
| ██ | █████ | ███████████████████ | ██ | |
| ██ | █████ | ███████████████████ | ██ | |
| ██ | █████ | ███████████████████ | ██ | |
| ██ | █████ | ███████████████████ | ██ | |

EXHIBIT C



Exhibit C



EXHIBIT C



Exhibit C

| | | | | |
|---|---|---|---|---|
| ▬ | ███ | ████ | █ | ▬ |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

Exhibit C

# EXHIBIT D

## COMMUNICATIONS PLAN





## **EXHIBIT E**

## **REGULATORY FILINGS AND PERMITS**

1.  COLA

2.  DOE Loan Guarantee Application

3.  Filings with the Delaware Secretary of State