**<u>Exhibit B</u>**

**Retention Order**

ORIGINAL

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) Case No. 14-10979 (CSS) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |
| | ) Re: 664, 2040, 2041 |

## ORDER AUTHORIZING THE DEBTORS TO RETAIN AND EMPLOY MCDERMOTT WILL & EMERY LLP AS SPECIAL COUNSEL FOR CERTAIN ENERGY-RELATED TRANSACTIONAL MATTERS, EFFECTIVE *NUNC PRO TUNC* TO THE PETITION DATE

Upon the application (the "Application")[2] filed by the Debtors, seeking authorization to employ and retain McDermott Will & Emery LLP ("McDermott") as special counsel to the Debtors in accordance with the terms and conditions set forth in the Engagement Letter, as modified herein, effective nunc pro tunc to the Petition Date, all as more fully set forth in the Application; the Catto Declaration, the Doré Declaration, and the *Supplemental Declaration of Iskender H. Catto in Support of the Application of the Debtors for an Order Authorizing the Debtors to Retain and Employ McDermott Will & Emery LLP as Special Counsel for Certain Energy-Related Transactional Matters, Effective* Nunc Pro Tunc *to the Petition Date* [D.I. 2040] (the "Supplemental Catto Declaration"); and the Court having found that the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and the Court having found

---

[1]   The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, for which joint administration has been granted, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

[2]   Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Application, the Catto Declaration, the Doré Declaration, and the Supplemental Catto Declaration, as applicable.

that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and the Court having found that

venue of this case and the Application in this district is proper pursuant to 28 U.S.C. §§ 1408 and

1409; and the Court having found that the relief requested in the Application (as modified

herein) is in the best interests of the Debtors' estates, their creditors, and other parties-in-interest;

and the Court having found that the Debtors provided appropriate notice of the Application and

the opportunity for a hearing on the Application under the circumstances; and the Court having

reviewed the Application and having heard the statements in support of the relief requested

therein at a hearing, if any, before the Court (the "Hearing"); and the Court having determined

that the legal and factual bases set forth in the Application, Catto Declaration, the Doré

Declaration, the Supplemental Catto Declaration, and at the Hearing establish just cause for the

relief granted herein; and upon all of the proceedings had before the Court; and after due

deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.      The Application is granted to the extent provided herein, effective *nunc pro tunc*

to the Petition Date.

2.      To the extent the Application, the Catto Declaration, the Doré Declaration, the

Supplemental Catto Declaration, or the Engagement Letter is inconsistent with the Order, the

terms of this Order shall govern.

3.      The Debtors are authorized to retain and employ McDermott as special counsel to

represent the Debtors in connection with energy-related transactional matters effective *nunc pro*

*tunc* to the Petition Date in accordance with the terms and conditions set forth in the Application

and in the Engagement Letter attached hereto as **Exhibit 1**; *provided, however*, that nothing in

the Engagement Letter shall supersede any provisions of the Bankruptcy Code during the

pendency of the Debtors' chapter 11 cases. Furthermore, nothing in the Engagement Letter shall

relieve McDermott from the responsibility and obligation to disclose any and all proposed representations that may result in McDermott being potentially adverse to the Debtors by way of a separate supplemental declaration filed in these cases.

4.      McDermott shall use reasonable efforts to avoid any duplication of services provided by any of the Debtors' other retained professionals in these chapter 11 cases.

5.      McDermott is authorized to provide the Debtors with the professional services as described in the Application and the Engagement Letter. Specifically, but without limitation, McDermott will render the following legal services, including but not limited to trading issues, fuel transportation and storage, power plant operations, contract disputes, and negotiations and claims resolution.

6.      McDermott is authorized without further order of the Court to reserve and apply amounts from the retainer that McDermott earned prepetition in accordance with the Engagement Letter (the "Retainer") that would otherwise be applied toward payment of postpetition fees and expenses (the "Postpetition Fees and Expenses") as are necessary and appropriate to compensate and reimburse McDermott for fees or expenses accrued on or prior to the Petition Date (the "Prepetition Fees and Expenses") consistent with its ordinary course billing practices. McDermott shall apply the remaining portion(s) of the Retainer to satisfy the payment of the Prepetition Fees and Expenses before the entry of an order approving any portion of McDermott's first interim application (the "First Interim Fee Application") for payment of Postpetition Fees and Expenses. McDermott currently estimates that the remaining amount of the Retainer is approximately $37,823.19 and that the Prepetition Fees and Expenses total approximately $0. In advance of the hearing on the First Interim Fee Application, McDermott shall disclose the amount of the Retainer (if any) that remains after applying the Retainer to the

Prepetition Fees and Expenses.   Thereafter, McDermott shall apply the remaining amount of the Retainer (if any) to satisfy the payment of Postpetition Fees and Expenses approved pursuant to the order granting the First Interim Fee Application.   The Retainer shall not be replenished postpetition.

7.   McDermott shall apply for compensation for professional services rendered and reimbursement of expenses incurred in connection with the Debtors' chapter 11 cases in compliance with sections 330 and 331 of the Bankruptcy Code and applicable provisions of the Bankruptcy Rules, Local Bankruptcy Rules, and any other applicable procedures and orders of the Court.

8.   McDermott also intends to make a reasonable effort to comply with the U.S. Trustee's request for information and additional disclosures as set forth in the *Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases Effective as of November 1, 2013*, both in connection with this application and the interim and final fee applications to be filed by McDermott in these chapter 11 cases.

9.   Notwithstanding anything in the Engagement Letter to the contrary, McDermott shall apply any remaining amounts of its prepetition retainers as a credit toward postpetition fees and expenses, after such postpetition fees and expenses are approved pursuant to an order of the Court awarding fees and expenses to McDermott.   McDermott is authorized without further order of the Court to reserve and apply amounts from the prepetition retainers that would otherwise be applied toward payment of postpetition fees and expenses as are necessary and appropriate to compensate and reimburse McDermott for fees or expenses incurred on or prior to the Petition Date consistent with its ordinary course billing practices.

10.     McDermott shall not charge a markup to the Debtors with respect to fees billed by contract attorneys who are hired by McDermott to provide services to the Debtors and shall ensure that any such contract attorneys are subject to conflict checks and disclosures in accordance with the requirements of the Bankruptcy Code and Bankruptcy Rules.  For the avoidance of doubt, McDermott shall not share fees with existing or future contract attorneys who advise on the Debtors' chapter 11 cases or enter into fee sharing arrangements with such contract attorneys.

11.     McDermott shall provide ten business days' notice to the Debtors, the U.S. Trustee, and any official committee before any increases in the rates set forth in the Application or the Engagement Letter are implemented and shall file such notice with the Court.  The U.S. Trustee retains all rights to object to any rate increase on all grounds, including the reasonableness standard set forth in section 330 of the Bankruptcy Code, and the Court retains the right to review any rate increase pursuant to section 330 of the Bankruptcy Code.

12.     The Debtors and McDermott are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Application.

13.     Notice of the Application as provided therein is deemed to be good and sufficient notice of such Application, and the requirements of the Local Bankruptcy Rules are satisfied by the contents of the Application.

14.     Notwithstanding any provision to the contrary in the Engagement Letter, any dispute relating to the services provided by McDermott shall be referred to arbitration consistent with the terms of the Engagement Letter only to the extent that this Court does not have, retain or exercise jurisdiction over the dispute, and 28 U.S.C. § 1334(e)(2) shall govern the form for resolving fee disputes.

15.     The terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

16.     Notwithstanding any provision to the contrary in this Application, the Catto Declaration, the Doré Declaration, the Supplemental Catto Declaration, or the Engagement Letter, the Court shall retain jurisdiction to hear and to determine all matters arising from or related to implementation of this Order.

Wilmington, Delaware
Dated:   9/16 , 2014

THE HONORABLE CHRISTOPHER S. SONTCHI
UNITED STATES BANKRUPTCY JUDGE

Case 14-10979-CSS    Doc 2002-1    Filed 09/16/44    Page 8 of 11

# EXHIBIT 1

**Engagement Letter**

# McDermott
# Will & Emery

Boston  Brussels  Chicago  Düsseldorf  Houston  London  Los Angeles  Miami  Milan     Iskender H. Catto
Munich  New York  Orange County  Paris  Rome  Silicon Valley  Washington, D.C.          Attorney at Law
                                                                                        icatto@mwe.com
Strategic alliance with MWE China Law Offices (Shanghai)                                 +1 212 547 5505

September 24, 2013

Tiffany Silvey
Luminant Energy Company LLC
505 North Ackard Street, 10th Fl.
Dallas. TX 75201

Dear Tiffany:

Thank you for selecting McDermott Will & Emery LLP ("McDermott") to represent Luminant
Energy Company LLC, Luminant Holding Company LLC and Luminant Generation Company
LLC ("Luminant") in connection with energy trading matters, including in connection with any
restructuring in a Chapter 11 filing under the Bankruptcy Code that may be filed by Luminant or
its parent companies, subsidiaries or affiliates. McDermott is a limited liability partnership
registered in the State of Illinois. The terms of our representation are set forth in this letter.

I will be principally responsible for services provided to you. As circumstances warrant, other
lawyers or non-lawyer professionals will be assigned to work on your matters.

Our fees reflect the value of our services and are based on hourly billing rates that take into
account the complexity of the matter, the skill and experience required to perform the services,
the time constraints imposed by the circumstances and the size of the matter, among other
factors. As a result, a professional's rate may vary from one assignment to another. Our rates are
reviewed annually and may be increased during the course of our representation of you. My
current billing rate is $810.00/ hour. I will inform you in advance of the effective date of any
applicable rate increase.

We have reviewed your Outside Legal Counsel Policy and agree that the terms therein will apply
to the instant engagement except to the extent otherwise agreed to in writing or in this letter. In
order to avoid misunderstandings concerning potential conflicts of interest, it is our policy to
clarify the identity of our clients and the circumstances under which we may represent other
clients with interests which are or may be adverse to yours. In that regard, it is our policy that our
representation of Luminant does not extend to its parents, subsidiaries, employees, officers,
directors, shareholders, partners or other affiliates.

In addition, we are accepting this engagement with your consent that we may accept any other
engagement from an existing or new client, even if the matter requires that we take a position
that is or might be directly adverse to you, provided that the engagement is not substantially
related to the subject matter of any services we have provided to you and will not require
disclosure of any of your confidential information. This advance waiver of conflicts includes

U.S. practice conducted through McDermott Will & Emery LLP.

340 Madison Avenue  New York, New York  10173-1922  Telephone: +1 212 547 5400  Facsimile: +1 212 547 5444  www.mwe.com

2

KE 33106437.5

litigation matters in which we may represent a client who is adverse to you or another member of your corporate family. For clarity, and notwithstanding anything to the contrary contained herein, because this representation extends to any bankruptcy filing by Luminant or its parent companies, subsidiaries and affiliates, we acknowledge and agree that any representation of creditors or parties-in-interest in connection with any such bankruptcy filing would require an express written waiver of conflict by proposed client on a case-by-case basis. Luminant does, however, waive any such conflict in connection with any such bankruptcy filing with respect to W. W. Grainger, Inc. and its subsidiaries or affiliates.

Unless we are otherwise instructed by you in writing at or prior to the completion of the matter for which you have engaged us, we will, after a reasonable period of time has passed, at our discretion, destroy all documents and data (including hard copies, electronically stored information and any other data stored on other forms of media) and any other materials that we have stored or otherwise remain in our possession relating to a matter for which our services have been completed or terminated.

In the event that a dispute arises between us relating to our fees, you may have the right to arbitration of the dispute pursuant to Part 137 of the Rules of the Chief Administrator of the Courts of New York State, a copy of which will be provided to you upon request.

Accompanying this letter is a memorandum entitled "What Clients Should Know" that outlines McDermott's other terms of engagement ("the Additional Arrangements"). For clarity, in the event of a conflict in the provisions set forth in the body of this letter, your Outside Counsel Policy and the Additional Arrangements, the following shall be the order of controlling provisions: (1) the provisions set forth in the body of this letter, (2) your Outside Counsel Policy and (3) the Additional Arrangements. If you have questions concerning any of the information presented here, or should you have a concern or question at any time during our representation, please call me. To confirm your assent with the terms of our representation, please sign the enclosed copy of this letter and return it to me.

Again, thank you for giving us the opportunity to serve you.

Very truly yours,

Iskender H. Catto

Enclosure

McDermott Will & Emery LLP/2

3

Agreed to and accepted (including the Additional Arrangements):

LUMINANT ENERGY COMPANY LLC

By: _____

September 30, 2013

LUMINANT HOLDING COMPANY LLC

By: _____

September
~~October~~ 30, 2013

LUMINANT GENERATION COMPANY LLC

By: _____

September 30, 2013

4