## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) | Case No. 14-10979 (CSS) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) | Objection Deadline: November 25, 2014 at 4:00 p.m. |

## COVER SHEETS TO
## FIRST INTERIM FEE APPLICATION OF
## EVERCORE GROUP L.L.C.,
## DEBTORS' INVESTMENT BANKER AND FINANCIAL ADVISOR
## FOR ALLOWANCE OF AN ADMINISTRATIVE CLAIM FOR
## COMPENSATION AND REIMBURSEMENT OF EXPENSES INCURRED FROM
## APRIL 29, 2014 THROUGH AUGUST 31, 2014

| | |
|---|---|
| **Name of Applicant:** | **Evercore Group L.L.C.** |
| Authorized to provide professional services to: | The above-captioned Debtors |
| Date of retention: | September 16, 2014<br>*nunc pro tunc to* April 29, 2014 |
| Period for which compensation and reimbursement is sought: (the "Fee Period") | April 29 - August 31, 2014 |
| Compensation sought as actual, reasonable and necessary: | $7,600,000.00<br>(20% of which is $1,520,000.00) |
| Expense reimbursement sought as actual, reasonable, and necessary: | $368,611.55[2] |

This is an **interim** fee application.[3]

---

[1]   The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810.  The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201.  A complete list of the debtors and the last four digits of their federal tax identification numbers is available at http://www.efhcaseinfo.com.

[2]   Evercore will apply towards reimbursement of these expenses $29,831.33, the balance of the amount previously paid to Evercore by the Debtors on account of anticipated expenses, as described in the *Application of Energy Future Holdings Corp., et al., for Entry of an order Authorizing the Debtors To Retain and Employ Evercore Group L.L.C. as Investment Banker and Financial Advisor Effective Nunc Pro Tunc to the Petition Date* [D.I. 651].

## Prior Statements, Applications and Allowances

| Filing, Date Filed, D.I. | Period Covered | Total Fees (100%) | Requested | | Approved | |
|---|---|---|---|---|---|---|
| | | | Fees | Expenses | Fees | Expenses |
| 1st Monthly Oct. 31, 2014 D.I. 2684 | Apr. 29 - May 31, 2014 | $525,000.00 | $420,000.00 (80%) | $46,375.43 | - | - |
| 2nd Monthly Oct. 31, 2014 D.I. 2685 | June 1 - June 30, 2014 | $6,025,000.00 | $4,820,000.00 (80%) | $43,469.50 | - | - |
| 3rd Monthly Oct. 31, 2014 D.I. 2686 | July 1 - July 31, 2014 | $525,000.00 | $420,000.00 (80%) | $212,521.22 | - | - |
| 4th Monthly Oct. 31, 2014 D.I. 2687 | August 1 - August 31, 2014 | $525,000.00 | $420,000.00 (80%) | $66,245.40 | - | - |
| **1st Interim Oct. 31, 2014 D.I. TBD** | **April 29 - August 31, 2014** | **$7,600,000.00** | **$1,520,000.00 (20%)** **$7,600,000.00 (100%)** | **$368,611.55** | **-** | **-** |
| **Total** | | | **$7,600,000.00** | **$7,600,000.00** | **$368,611.55** | |

## Payments by Date and Source for Post-Petition Fees and Expenses

- None to date.

---

[3]    Notice of this Interim Fee Application shall be served in accordance with the Interim Compensation Order and Fee Committee Order (each as defined herein) and objections to the relief requested herein shall be addressed in accordance with such orders.

**Professionals**

Evercore professionals rendering services during the Fee Period were:

| Professional | Title | Total Hours |
|---|---|---|
| Roger Altman | Senior Managing Director | 6.5 |
| William Hiltz | Senior Managing Director | 22.0 |
| Qazi Fazal | Senior Managing Director | 53.8 |
| Stephen Goldstein | Senior Managing Director | 457.0 |
| David Ying | Senior Managing Director | 729.5 |
| Jeremy Matican | Managing Director | 702.5 |
| Brendan Panda | Managing Director | 25.0 |
| Sesh Raghavan | Managing Director | 345.0 |
| Bo Yi | Vice President | 768.0 |
| Lisa Chen | Associate | 383.5 |
| Neal Patel | Associate | 538.0 |
| Kush Javia | Analyst | 90.0 |
| Vishnu Kalugotla | Analyst | 59.0 |
| Vadim Levit | Analyst | 536.0 |
| Michael Lim | Analyst | 5.5 |
| Steven Peterson | Analyst | 65.0 |
| Aashik Rao | Analyst | 300.0 |
| Brian Smith | Analyst | 461.5 |
| **Total** | | **5,547.8** |

(Evercore does not charge hourly rates to the Debtors and no hourly rates are associated with these professionals.)

## Hours by Matter

Hours expended by these professionals by matter during the Fee Period were:

| Matter Number | Matter Description | Total Hours |
|:---:|:---:|---:|
| 1 | General Case Administration | 402.5 |
| 2 | Due Diligence | 175.8 |
| 3 | Capital Structure and Debt Capacity Analysis | 0.0 |
| 4 | Financing | 605.5 |
| 5 | Asset Sales and Other M&A Activity | 1,373.0 |
| 6 | Valuation and Recoveries Analysis | 481.0 |
| 7 | General Financial Analysis and Research | 277.0 |
| 8 | Plan of Reorganization | 49.0 |
| 9 | Board Communications | 334.5 |
| 10 | Creditor Communication and Due Diligence | 482.0 |
| 11 | Court Testimony and Litigation Support | 1,117.0 |
| 12 | Travel | 168.5 |
| 13 | Evercore Retention | 82.0 |
| **Total** | | **5,547.8** |

## Summary of Expenses by Category

| Matter Number | Matter Description | Total Expenses |
|:---:|:---:|---:|
| 1 | General Case Administration | $15,582.68 |
| 2 | Due Diligence | 1,586.11 |
| 3 | Capital Structure and Debt Capacity Analysis | -- |
| 4 | Financing | 1,642.69 |
| 5 | Asset Sales and Other M&A Activity | 2,290.91 |
| 6 | Valuation and Recoveries Analysis | 1,054.19 |
| 7 | General Financial Analysis and Research | 859.10 |
| 8 | Plan of Reorganization | 8.10 |
| 9 | Board Communications | 1,473.66 |
| 10 | Creditor Communication and Due Diligence | 4,903.45 |
| 11 | Court Testimony and Litigation Support | 302,835.40 |
| 12 | Travel | 15,462.18 |
| 13 | Evercore Retention | 20,913.09 |
| **Total** | | **$368,611.55** |

## Summary of Expenses by Category Allocation

(Allocation of fees is described in paragraph 11 of the fee application filed together with these cover sheets.)

| Expense Category | EFH Corp. | EFIH | TCEH | Collective | Total |
|---|---:|---:|---:|---:|---:|
| Air / Rail Travel | $0.00 | $4,564.69 | $7,934.91 | $10,072.20 | $22,571.80 |
| Copies and Shipping | - | - | - | 132.90 | 132.90 |
| Legal / Professional Fees | - | - | - | 314,123.11 | 314,123.11 |
| Local Ground Transportation | 10.20 | 910.31 | 274.98 | 1,404.87 | 2,600.36 |
| Meals | - | 1,905.83 | 397.32 | 2,889.53 | 5,192.68 |
| Research | - | - | - | 2,179.78 | 2,179.78 |
| Telecom | - | 47.97 | 16.19 | 81.14 | 145.30 |
| Travel Ground Transportation | - | 979.27 | 1,106.32 | 3,650.43 | 5,736.02 |
| Travel Lodging | - | 3,786.49 | 2,344.80 | 7,303.46 | 13,434.75 |
| Travel Meals | - | 848.46 | 608.29 | 1,038.11 | 2,494.86 |
| **Total** | **$10.20** | **$13,043.02** | **$12,682.81** | **$342,875.53** | **$368,611.55** |

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) | Case No. 14-10979 (CSS) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**FIRST INTERIM FEE APPLICATION OF
EVERCORE GROUP L.L.C.,
DEBTORS' INVESTMENT BANKER AND FINANCIAL ADVISOR
FOR ALLOWANCE OF AN ADMINISTRATIVE CLAIM FOR
COMPENSATION AND REIMBURSEMENT OF EXPENSES INCURRED FROM
APRIL 29, 2014 THROUGH AUGUST 31, 2014**

Evercore Group L.L.C. (collectively, "Evercore"), investment banker and financial advisor for the above-captioned debtors and debtors in possession (collectively, the "Debtors"), hereby submits its interim fee application (the "Fee Application") for allowance of compensation for professional services provided and reimbursement of actual and necessary expenses, each as described in the cover sheet hereto, that Evercore provided in the above-captioned period (the "Fee Period").

**Jurisdiction and Applicable Standards**

1.     The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

2.     Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.     The bases for and standards governing the relief requested herein are sections 327, 328, 330, and 331 of chapter 11 of title 11 of the United States Code, (the "Bankruptcy

---

[1]     The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810.  The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201.  A complete list of the debtors and the last four digits of their federal tax identification numbers is available at http://www.efhcaseinfo.com.

Code"), Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), the Order Authorizing the Employment and Retention of Evercore Group L.L.C. as investment banker and financial advisor for the Debtors and Debtors in Possession Nunc Pro Tunc to the Petition Date, dated September 16, 2014 [D.I. 2056] (the "<u>Retention Order</u>"), attached hereto as **<u>Exhibit A</u>**, the Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Professionals, dated September 16, 2014 [D.I. 2066] (the "<u>Interim Compensation Order</u>"), the Stipulation and Order Appointing a Fee Committee [D.I. 1896] (the "<u>Fee Committee Order</u>"), Rule 2016-2 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "<u>Local Bankruptcy Rules</u>"), and the United States Trustee's Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed under 11 U.S.C. §330 (the "<u>Appendix A Guidelines</u>").

<u>**Case Background**</u>

4.      On April 29, 2014 (the "<u>Petition Date</u>"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors are operating their businesses and managing their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  On May 13, 2014, the United States Trustee for Region 3 (the "<u>U.S. Trustee</u>") appointed an official committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code (the "<u>Committee</u>") [D.I. 420].On June 5, 2014, the Court entered an order [D.I. 849] authorizing the joint administration and procedural consolidation of the Debtors' chapter 11 cases pursuant to Bankruptcy Rule 1015(b).  No entity has requested the appointment of a trustee or examiner in these chapter 11 cases.

5.      A description of the Debtors' businesses, the reasons for commencing the chapter 11 cases, and the relief sought from the Court to allow for a smooth transition into chapter 11 are set forth in the declaration of Paul Keglevic in support of Debtors' first day motions, filed on April 29, 2014 [D.I. 98] and incorporated herein by reference.

**Preliminary Statement**

6.      During the Fee Period, Evercore provided necessary and requested investment banking and financial advisory services to the Debtors.  A summary of these services is provided below.

**The Debtors' Retention of Evercore**

7.      The Retention Order was entered on September 16, 2014, and is attached hereto as **<u>Exhibit A</u>** and incorporated by reference.  The Retention Order approves Evercore's Fee and Expense Structure (as defined therein), pursuant to section 328 of the Bankruptcy Code, subject to the terms of the Retention Order.  (Accordingly, compensation is sought pursuant to sections 328 and 331 and not 330 of the Bankruptcy Code, but subject to the terms of the Retention Order.)

8.      As approved by the Retention Order, the Debtors engaged Evercore to provide the following services:[2]

      (a) reviewing and analyzing the Debtors' business, operations, and financial projections;

      (b) advising and assisting the Debtors in a Restructuring, Financing, and/or Sale, if the Debtors determine to undertake such a Transaction;

      (c) providing financial advice in developing and implementing a Restructuring, which would include:

            (i)      assisting the Debtors in developing a restructuring plan or plan of reorganization, including a plan of reorganization pursuant to the Bankruptcy Code (any such plans are referred to generically as the "<u>Plan</u>");

            (ii)     advising the Debtors on tactics and strategies for negotiating with various stakeholders regarding the Plan;

---

[2]     This summary is presented for convenience purposes only.  The Retention Order is controlling in all respects. Capitalized terms used but not otherwise defined herein have the meanings ascribed to such terms in the Retention Order.

(iii)    providing testimony, as necessary, with respect to matters on which Evercore has been engaged to advise the Debtors in any proceedings before the Bankruptcy Court; and

(iv)    providing the Debtors with other financial restructuring advice as Evercore and the Debtors may deem appropriate;

(d) if the Debtors pursue a Financing, assisting the Debtors in:

(i)    structuring and effecting a Financing;

(ii)    identifying potential Investors and, at the Debtors' request, contacting such Investors; and

(iii)    working with the Debtors in negotiating with potential Investors.

(e) if the Debtors pursue a Sale, assisting the Debtors in:

(i)    structuring and effecting a Sale;

(ii)    identifying interested parties and/or potential acquirors and, at the Debtors' request, contacting such interested parties and/or potential acquirors; and

(iii)    advising the Debtors in connection with negotiations with potential interested parties and/or acquirors and aiding in the consummation of a Sale.

9.    The particular terms of Evercore's engagement are detailed in the engagement letter attached to the Retention Order.  The approved Fee and Expense Structure may be summarized as follows:[3]

(a) **Monthly Fee:**  $525,000 per month until a Restructuring or termination of Evercore's engagement.

(b) **Restructuring Fee:**  $35 million for simultaneous Restructuring(s) of TCEH/EFCH and EFIH.  But if a first Restructuring concerns only one of TCEH/EFCH and EFIH, then a portion of the $35 million Restructuring Fee will then be due based on time allocation and the remainder of $35 million due if and when a second Restructuring occurs.  In either case, the aggregate Restructuring Fee is payable only once.  There is no Restructuring Fee for certain modifications of existing obligations under the Debtors' existing

---

[3]    This summary is presented for convenience purposes only and is not an exhaustive reflection of the fee and expense terms set forth in the Retention Order, which is controlling in all respects.

liability management program or similar programs, certain immaterial modifications and modifications agreed by the Debtors.

(c) **Sale Fee:** $9 million, payable once, for a Sale of all or substantially all of either or both of TCEH/EFCH and EFIH.  Sales that give rise to a Sale Fee also give rise to a Restructuring Fee.

(d) **DIP Financing Fee:** $11 million, payable once, for a first lien DIP Financing. Half of the DIP Financing Fee is due upon DIP Financing commitment, with the balance due upon approval of the DIP Financing by the Court.

(e) **Credits:**

    (i) *Monthly Fee Credit*:  The first eight Monthly Fees, and the amount by which each subsequent Monthly Fee exceeds $400,000 (which will be $125,000 for a Monthly Fee of $525,000), are creditable against the Restructuring Fee.

    (ii) *DIP Financing Fee Credit*:  $3 million of the DIP Financing Fee is creditable against the Restructuring Fee.

    These credits are conditioned on full payment and final approval of the related fees and are subject to allocation.

(f) **Allocation:**  Evercore's fees have been allocated in order to align them with the Debtors' economic structure and the interests of the Debtors' economic stakeholders.

    (i) *Timekeeping*:  To facilitate allocation, Evercore's professionals will record whether hours expended providing services are attributable to TCEH/EFCH, EFIH, or EFH specifically, or are instead attributable more than one of these.

    (ii) *Monthly Fee*:  Monthly Fees will be allocated to TCEH/EFCH, EFIH, and EFH in proportion to time spent by Evercore on each during the month.

    (iii) *Restructuring Fee*:  The Restructuring Fee will be allocated amongst as many of TCEH/EFCH, EFIH, and EFH as are related to the Restructuring, in proportion to all allocated time spent by Evercore on each.

    (iv) *Sale Fee*:  The Sale Fee will be allocated amongst as many of TCEH/EFCH, EFIH, and EFH as are related to the Sale(s), in proportion to all allocated time spent by Evercore on each.

    (v) *DIP Financing Fee*:  The DIP Financing Fee will be allocated in proportion to the third-party DIP financing commitments provided by bank lenders, if any, relating to each of TCEH/EFCH, EFIH, and EFH.

(vi)     *Credits:*  The Monthly Fee credit and the DIP Financing Fee credit will each be allocated to TCEH/EFCH, EFIH, and EFH in proportion to their allocable share of the underlying Monthly Fees or DIP Financing Fee.

(vii)    *Alternate Allocation*:  Subject to Bankruptcy Court approval, the Debtors and Evercore may later agree to alter the allocations described in furtherance of the alignment goals described above.

(g) **Expenses:** The Debtors will pay reasonable and documented out-of-pocket expenses, including reasonable and documented cost of counsel.

### Description of Fees and Expenses

10.     Typical of investment bankers of its kind, Evercore is not compensated by the hour, but through a structure of fixed fees and related compensation, such as was approved by the Retention Order.  Accordingly, certain information appropriate to consideration of the fee requests of hourly-rate compensated professionals, such as blended rates or maturation, do not exist for Evercore.

11.     Evercore's fees and expenses during the Fee Period have been tentatively allocated as follows:[4]

---

[4]    Monthly Fee and expenses are allocated to Debtors based on time.  Pursuant to Evercore's engagement letter, dated April 28, 2014, and approved by the U.S. Bankruptcy Court on September 16, 2014, the DIP Financing Fee will be allocated in proportion to the third-party DIP financing commitments provided by bank lenders, if any, relating to each of TCEH/EFCH, EFIH, and EFH.

| Debtors | | Time | | Monthly Fees | | DIP Fee | | Expenses | |
|---|---|---|---|---|---|---|---|---|---|
| | | Collective Unallocated | Collective Allocated | Total Fees | 20% Holdback | Total Fees | 20% Holdback | Collective Unallocated | Collective Allocated |
| EFH Corp. | May | 0.6% | 1.2% | $6,087.25 | $1,217.45 | - | - | - | $514.09 |
| | June | 0.7% | 1.0% | 5,390.59 | 1,078.12 | - | - | - | 217.22 |
| | July | 2.2% | 6.8% | 35,914.91 | 7,182.98 | - | - | - | 14,471.66 |
| | August | 2.2% | 12.4% | 64,892.81 | 12,978.56 | - | - | 10.20 | 8,147.96 |
| | Total Interim | | | $112,285.57 | $22,457.11 | - | - | $10.20 | $23,350.93 |
| EFIH | May | 44.2% | 67.8% | $355,839.42 | $71,167.88 | - | - | $1,710.44 | $31,762.46 |
| | June | 50.2% | 76.5% | 401,563.01 | 80,312.60 | 1,248,326.85 | 249,665.37 | 10,149.37 | 26,330.87 |
| | July | 16.8% | 60.0% | 314,843.86 | 62,968.77 | - | - | 844.65 | 127,708.76 |
| | August | 11.0% | 59.5% | 312,422.21 | 62,484.44 | - | - | 338.56 | 39,517.28 |
| | Total Interim | | | $1,384,668.50 | $276,933.70 | $1,248,326.85 | $249,665.37 | $13,043.02 | $225,319.37 |
| TCEH | May | 17.9% | 31.1% | $163,073.33 | $32,614.67 | - | - | $326.70 | $14,098.88 |
| | June | 13.0% | 22.5% | 118,046.39 | 23,609.28 | 4,251,673.15 | 850,334.63 | 12,164.58 | 16,921.41 |
| | July | 9.3% | 33.2% | 174,241.22 | 34,848.24 | - | - | 131.53 | 70,340.80 |
| | August | 5.4% | 28.1% | 147,684.98 | 29,537.00 | - | - | 60.00 | 18,580.16 |
| | Total Interim | | | $603,045.93 | $120,609.19 | $4,251,673.15 | $850,334.63 | $12,682.81 | $119,941.25 |
| Collective | May | 37.2% | - | - | - | - | - | $44,338.29 | - |
| | June | 36.1% | - | - | - | - | - | 21,155.55 | - |
| | July | 71.6% | - | - | - | - | - | 211,545.04 | - |
| | August | 81.5% | - | - | - | - | - | 65,836.64 | - |
| | Total Interim | | | - | - | - | - | $342,875.53 | - |
| Total | | | | $2,100,000.00 | $420,000.00 | $5,500,000.00 | $1,100,000.00 | $368,611.55 | $368,611.55 |

12.    Reallocation may be required to give effect to the allocation of credits and other elements of the structure of fees forth in the Retention Order.

**Summary of Services Rendered During the Fee Period**

13.    Evercore provided extensive professional services to the Debtors in connection with these chapter 11 cases, all at the direction of the Debtors or their counsel.  These services were performed at a high level of quality and were often subject to significant time constraints. These services were necessary to address a multitude of critical issues both unique to these chapter 11 cases and typically faced by large corporate debtors in similar cases of this magnitude and complexity.

14.    To provide a meaningful summary of its services provided on behalf of the Debtors and their estates, Evercore has established, in accordance with its internal procedures, certain subject matters categories (each, a "Matter Category") in connection with these chapter 11 cases.

15.    The following is a summary, by Matter Category, of the most significant

professional services provided by Evercore during the Fee Period.  This summary is organized in accordance with Evercore's matter numbers.  The detailed descriptions below and the time records attached as **Exhibit B** demonstrate that Evercore was deeply involved in performing services for the Debtors on a daily basis, often including night and weekend work, to meet the needs of the Debtors' estates in these chapter 11 cases.

(a)    **General Case Administration, Matter Category 1**

Total Hours: 402.5

16.    This category includes time spent by Evercore along, or in conjunction with the Debtors and their counsel and other professionals, in connection with the status or strategy of the case.  This category also includes time spent on general administration and management of the cases and review of court documents filed by the Debtors and other parties-in-interest, except as such related to retention. Furthermore, other work and analysis that are not included in more specific Matter Categories are included in this category.

(b)    **Due Diligence, Matter Category 2**

Total Hours: 175.8

17.     This category includes time spent by Evercore extending its understanding of the businesses of the Debtors, including by means of management calls, meetings, document review, site visits, internal discussions and analysis.  This category also includes time spent by Evercore extending its understanding of the industry in which the Debtors operate, understanding and conducting analysis of the Debtors' business plan, including reviewing, discussing and analyzing key operational and financial assumptions in the business plan, and reviewing other relevant industry-related documents and performing analysis.

18.    During the Fee Period, Evercore continued to perform general business due diligence in order to become familiar with the nature of the various operations, inter-company relationships, and other operating and financial information that are necessary in providing

restructuring and financial advisory services.  Evercore's due diligence involved numerous on-site meetings, site visits and telephonic meetings with senior management of the Debtors and their other professionals.  The subjects reviewed included: (a) financial projections prepared and provided by the Debtors, (b) key assumptions related to the projections, (c) certain historical financial results of the Debtors, (d) the operating, legal, and financial reporting structures, (e) the current and potential legal and tax structure of the Debtors and their subsidiaries, (f) relevant industry information, (g) the Debtor's operational sites, and (h) numerous other matters.

**(c)      Financing, Matter Category 4**

Total Hours: 605.5

19.      This category includes time spent by Evercore in identifying and contacting potential sources of financing, including DIP financing and exit financing, as well as time spent negotiating and structuring the terms of such financing.

20.      During the Fee Period, the Debtors were able to close on two of the largest DIP financings ever completed: the $4.5 billion TCEH DIP Facility and the $5.4 billion EFIH First Lien DIP Facility (collectively, the "DIP Facilities"). The DIP Facilities were a culmination of a significant amount of work by the Debtors and Evercore.  The highly competitive process led to very favorable terms for the Debtors, including a rate of LIBOR + 2.50% for the TCEH DIP Revolving Credit Facility, LIBOR + 2.75% (0.75% LIBOR floor) for the TCEH DIP Term Loan Facility, and LIBOR + 3.25% (1.00% LIBOR floor) for the EFIH First Lien DIP Facility.  The EFIH First Lien DIP Facility will save the Debtors over $160 million in annual interest expense even with the higher principal amount compared to the prepetition EFIH first lien notes.  The DIP Facilities also have 24 month maturities with optional six month extensions, which provide significant flexibility to the Debtors to negotiate a plan of reorganization and reach confirmation.

21.      For the TCEH DIP Facility, Evercore assisted the Debtors and their other professionals to thoroughly search for the best available financing alternatives. Evercore

reviewed and evaluated the Debtors monthly cash flow projections and assisted the Debtors in determining their projected liquidity requirements. In early September 2013, Evercore assisted the Debtors in canvassing the market to find parties interested in providing a DIP financing and launched a process to solicit DIP facility proposals, including contacting five large financial institutions that are actively involved in debtor-in-possession and syndicated finance markets (two additional financial institutions were contacted in October 2013). Evercore and the Debtors conducted formal bank meetings with the DIP lenders. Evercore facilitated financial due diligence for the DIP lenders, including analysis of recent developments, recent financial results, and the financial projections. Evercore assisted the Debtors in negotiating with the DIP lenders and developing tactics and strategies to obtain the most favorable TCEH DIP Facility sizing and terms, including providing current market data and insight with respect to other recent DIP financings and the financing environment in place during that time, as well as insights and advice based on the Evercore team's years of experience.

22.    An important focus of the TCEH First Lien DIP Facility was to maximize flexibility for the treatment of the Debtors' mine reclamation obligations to the Railroad Commission. Evercore assisted the Debtors in negotiating a flexible and largely unprecedented structure with the DIP Lenders, whereby the DIP Facility would reflect a hybrid structure permitting the Railroad Commission to choose between a $1.1 billion claim senior to the TCEH First Lien DIP Facility, or receive a $1.1 billion cash collateralized letter-of-credit facility funded by the TCEH First Lien DIP Facility.

23.    In a separate process, Evercore assisted the Debtors and their other advisors in thoroughly searching for the best available financing alternatives for the EFIH First Lien DIP Facility. Evercore reviewed and evaluated the Debtors monthly cash flow projections and assisted the Debtors determine their projected liquidity requirements used in negotiation of the DIP financing entered into by the Debtors. In January 2014, the Debtors, with the assistance of

Evercore, initiated a request for proposals with respect to the EFIH First Lien DIP Facility. During the initial stage of this process, the Debtors approached seven large financial institutions with active involvement in the debtor-in-possession and syndicated finance markets. Evercore and the Debtors conducted formal bank meetings with the DIP lenders. Evercore facilitated financial due diligence for the DIP lenders, including analysis of recent developments, recent financial results, and the financial projections. Evercore assisted the Debtors in negotiating with the DIP lenders and developing tactics and strategies to obtain the most favorable EFIH DIP Facility sizing and terms, including providing current market data and insight with respect to other recent DIP financings and the financing environment in place during that time, as well as insights and advice based on the Evercore team's years of experience.

24.     An important focus of the EFIH First Lien DIP Facility was the fee structure from the banks, which was heavily negotiated to maximize flexibility for the amount of committed financing, while minimizing fees. Evercore assisted the Debtors negotiate a flexible structure to minimize the cost of committed financing for lower funding requirements if additional holders of EFIH First Lien Notes opted into the EFIH First Lien Settlement after the Petition Date. Accordingly, the EFIH First Lien DIP Facility was particularly favorable to the Debtors under the circumstances because it was extremely flexible, insofar as it allowed the Debtors to scale back the committed banks' portion (and associated fees) of the EFIH First Lien DIP Facility to the extent additional Prepetition EFIH First Lien Creditors opted into the EFIH First Lien Settlement.

25.     In connection with the EFIH First Lien DIP Facility, Evercore assisted the Debtors, along with their other professionals, in developing the EFIH First Lien Settlement offer and giving EFIH First Lien creditors the opportunity to exchange their claims into the EFIH First Lien DIP Facility and settle their alleged makewhole claims.

**(d)      Asset Sales and Other M&A Activity, Matter Category 5**

Total Hours: 1,373.0

26.     This category includes time spent by Evercore advising the Debtors on the sale of the Debtors' assets, including developing marketing materials, contacting potential buyers, assisting potential buyers with due diligence, structuring a potential transaction and negotiating with buyers.   In addition, this category includes time spent by Evercore on any other M&A activity of the Debtors.

27.     During the Fee Period, the Debtors received an unsolicited proposal from NextEra to acquire the Debtors' interests in Oncor.  Evercore spent time analyzing the NextEra proposal and providing advice to senior management and the Boards of Directors.  In addition, Evercore assisted the Debtors, along with their other advisors, to initiate a marketing process to select a Stalking Horse bidder.

28.     In connection with the marketing process, Evercore assisted the Debtors and their other advisors in analyzing the various transaction structure alternatives, developing a timeline and bidding procedures, creating marketing materials, identifying and contacting potential bidders, drafting and negotiating confidentiality agreements, drafting term sheets and definitive documents, and organizing an electronic data room, among other things.  Evercore facilitated bidder due diligence by organizing business and financial due diligence calls with the senior management of the Debtors and Oncor, tracking due diligence questions and information requests, and tracking bidder feedback throughout the process.  In addition, Evercore provided frequent updates to senior management and the Boards of Directors regarding the status of the marketing process, including bidder status and feedback.

29.     The Debtors and Evercore have worked diligently to develop the bids that they received, attract additional bids, and maintain the momentum of the bidding process with the primary objective of maximizing value of the Debtors' estates.  The marketing process should ultimately help inform stakeholders and facilitate a plan of reorganization.

> **(e)** **Valuation and Recoveries Analysis, Matter Category 6**
>
> Total Hours: 481.0

30.     This category includes time spent by Evercore preparing and analyzing the valuation of the Debtors' businesses and analyzing creditor recoveries in various scenarios.

31.     During the Fee Period, Evercore has spent a considerable amount of time preparing to perform a valuation of the Debtors.  Evercore has spent time: (a) understanding industry dynamics, including commodity price trends, (b) researching capital market conditions and valuation drivers, (c) reviewing the historical and projected financial performance, business and valuation drivers of publicly-traded comparable companies, (d) reviewing operational and valuation metrics of comparable companies over time, (e) reviewing valuation metrics of comparable precedent transactions, (f) considering a range of estimates of the weighted average cost of capital of the reorganized company, (g) preparing a comprehensive and flexible valuation model, and (h) conducting various sensitivity analyses, among other things.

> **(f)** **General Financial Analysis and Research, Matter Category 7**
>
> Total Hours: 277.0

32.     This category includes time spent by Evercore preparing general financial analyses and conducting research that is not included in more specific Matter Categories.

33.     During the Fee Period, Evercore, at the request of the Debtors and/or their other professionals, performed numerous analyses, including, but not limited to, liquidity projections, claims calculations under various scenarios, calculation of alleged makewhole claims, tax calculations, exit costs, and emergence cash adjustments. Evercore has also monitored the Debtors' debt trading prices and conducted general financial research.

> **(g)** **Plan of Reorganization, Matter Category 8**
>
> Total Hours: 49.0

34.     This category includes time spent by Evercore assisting the debtors in developing

a plan of reorganization and disclosure statement.

35.     Evercore has had discussions with the Debtors and their other professionals related to a plan of reorganization, including strategy, potential timelines, feedback from stakeholders, and various frameworks for a plan of reorganization and settlements with the various constituents. Evercore has also reviewed preliminary drafts of the plan of reorganization and disclosure statement.

### (h)     Board Communication, Matter Category 9

Total Hours: 334.5

36.     This category includes time spent by Evercore participating in meetings, conference calls and correspondences with the Debtors' Boards of Directors. The category also includes time spent drafting and developing presentations to the Boards of Directors and responding to the Boards' due diligence requests.

37.     During the Fee Period, Evercore, along with the Debtors' other professionals, participated in numerous discussions with the Boards of Directors on a broad range of topics, including, but not limited to, the DIP Facilities, certain EFIH settlement motions, the Restructuring Support Agreement, a sale of the Debtors' interests in Oncor, communications with creditors and other parties-in-interest, the Debtors' financial results and projections, recent developments in the chapter 11 cases, overview of key dates and timelines, plan of reorganization, and general strategic and other issues relating to the chapter 11 process.

### (i)     Creditor Communication and Due Diligence, Matter Category 10

Total Hours: 482.0

38.     This category includes time spent by Evercore negotiating and discussing a wide range of issues with creditors, other parties-in-interest and their respective advisors. The category also includes time spent drafting and developing presentations for creditors and other parties-in-interest and in responding to their due diligence requests.

39.     During the Fee Period, Evercore responded to the informational requests of creditors and other parties-in-interest by interfacing with the relevant personnel at the Debtors or the other advisors to the Debtors. As part of this, Evercore prepared for and participated in various in-person meetings with creditors and their respective financial and legal advisors. Evercore also assisted the Debtors prepare due diligence and presentation materials for creditor meetings.  Creditor communications and due diligence efforts have required a significant amount of Evercore's resources due to the large number of parties-in-interest in these chapter 11 cases.

(j)     **Court Testimony and Litigation Support, Matter Category 11**

Total Hours: 1,117.0

40.     This category includes time spent by Evercore preparing for, and providing, declarations, depositions, court testimony and other litigation support to the Debtors, in coordination with their counsel and other professionals. The category also includes time spent responding to document requests and subpoenas.

41.     During the Fee Period, Evercore assisted the Debtors, along with their other professionals, prepare motions for the DIP Facilities and certain EFIH settlements, among others. In connection with these motions, Evercore professionals, including David Ying and Stephen Goldstein, provided five declarations, testimony in court on four occasions, and depositions on three occasions. In addition, Evercore spent time gathering and reviewing documents in connection with multiple discovery requests by various parties. Evercore also assisted the Debtors and their legal advisors in preparing responses to objections and conducting depositions of various objecting parties. Evercore's court testimony and litigation support related efforts has been significant during this Fee Period.

(k)     **Travel, Matter Category 12**

Total Hours: 168.5

42.     This category includes time spent traveling to and from the Debtors offices, to

Court hearings or to other destinations on the Debtors' behalf.

(l)      **Evercore Retention, Matter Category 13**

Total Hours: 82.0

43.      This category includes time spent by Evercore preparing and reviewing its Retention Application, Monthly Fee Statements and Fee Applications. The Category also includes the efforts to ensure that all expenses charged were incurred in conjunction with time spent by Evercore professionals working on projects related to the Debtors and that all of the Evercore time records comply with the Guidelines, applicable provisions of the Bankruptcy Code, and the orders of this Court.

### Actual and Necessary Expenses Incurred by Evercore

44.      The expenses for which Evercore requests reimbursement for the Fee Period are actual and necessary direct, non-overhead costs incurred in the course of rendering services to the Debtors. Evercore has charged internal black and white copies at 10¢ per page and color copies at 50¢ per page, consistent with the Fee Committee guidance, which reflects a discount to Evercore's standard copy charges. Consistent with the Fee Committee guidance, Evercore has charged in-office meals at cost, subject to a cap of $20.00 per person for each meal, and out-of-office meals at cost, subject to a cap of $40.00 per person for each meal, each reflecting a discount to Evercore's standard meal policy.  Evercore charges external copying and computer research at the provider's cost without markup. Only clients who actually use services of the types described are separately charged for such services. The effect of including such expenses as part of the overhead of Evercore would impose that cost upon clients who do not require such extensive services.

### Reasonable and Necessary Services Provided by Evercore

45.      The foregoing professional services provided by Evercore on behalf of the Debtors during the Fee Period were reasonable, necessary, and appropriate to the administration

of these chapter 11 cases and related matters.

46.     The time constraints imposed by the circumstances of these chapter 11 cases required Evercore's professionals to devote substantial time during the evenings and on weekends to perform services on behalf of the Debtors.  These services were essential to meet deadlines, respond to daily inquiries from various creditors and other parties in interest on a timely basis, and satisfy the demands of the Debtors' businesses and ensure the orderly administration of their estates.  Consistent with Evercore policy, Evercore professionals who worked late in the evenings or on weekends were reimbursed for their reasonable meal and transportation costs.  Evercore's regular practice is not to include components for those charges when establishing fee structures, but rather to charge its clients for these and all other out-of-pocket disbursements incurred during the regular course of the rendition of services.

47.     In addition, due to the location of the Debtors' businesses, counsel, creditors, and other parties in interest in relation to Evercore's offices, frequent multi-party telephone conferences involving numerous parties were required.  On certain occasions, the exigencies and circumstances of these chapter 11 cases required overnight delivery of documents and other materials.  The disbursements for such services are not included in Evercore's overhead and Evercore has made every effort to minimize its disbursements in these chapter 11 cases.  The actual expenses incurred in providing professional services were necessary, reasonable, and justified under the circumstances to serve the needs of the Debtors in these chapter 11 cases.

48.     Evercore has not shared or agreed or entered into any understanding to share any of its compensation with any other entity.

### Certification of Compliance and Waiver

49.     The undersigned representative of Evercore certifies that he has reviewed the requirements of Local Rule 2016-2 and that the Application substantially complies with that Local Rule except to the extent waived by the Retention Order or otherwise modified by orders

of this Court and related guidance of the Fee Committee in this case, as permitted by orders of this Court establishing the Fee Committee and interim compensation procedures. To the extent that the Application does not comply in all respects with the requirements of Local Rule 2016-2, as so modified, Evercore believes that such deviations are not material and respectfully requests that any such requirement be waived.

### Reservation of Rights and Notice

50.     Although every effort has been made to include all fees and expenses incurred in the Fee Period, some fees and expenses might not be included in this Fee Application due to delays caused by accounting and processing during the Fee Period.  Evercore reserves the right to make further application to this Court for allowance of such fees and expenses not included herein.

51.     Notice of this Monthly Fee Statement has been or will shortly be provided to all parties that have entered their appearance pursuant to Bankruptcy Rule 2002 and by hand or overnight delivery on: (i) the Debtors, 1601 Bryan Street, 43rd Floor, Dallas, TX, 75201, Attn: Andrew M. Wright and Cecily Gooch; (ii) co-counsel to the Debtors, Kirkland & Ellis LLP, 601 Lexington Avenue, New York, NY 10022, Attn: Brian E. Schartz and Kirkland & Ellis LLP, 300 North LaSalle, Chicago, IL 60654, Attn: Chad Husnick; (iii) co-counsel to the Debtors, Richards, Layton & Finger, P.A., 920 North King Street, Wilmington, DE 19801, Attn: Daniel DeFranceschi and Jason Madron; (iv) Roberta A. DeAngelis, the United States Trustee for Region 3, J. Caleb Boggs Federal Building, 844 King Street, Room 2207, Wilmington, DE 19801, Attn: Richard L. Schepacarter and U.S. Department of Justice, Office of the U.S. Trustee, U.S. Federal Building, 201 Varick Street, Room 1006, New York, NY 10014, Attn: Andrea B. Schwartz; (v) counsel for the agent of the EFIH First Lien DIP Financing Facility, Shearman & Sterling LLP, 599 Lexington Avenue, New York, NY 10022, Attn: Ned Schodek and Fredric Sosnick; (vi) counsel for the agent of the TCEH DIP Financing Facility, Milbank, Tweed,

Hadley & McCloy LLP, 1 Chase Manhattan Plaza, New York, NY 10005, Attn: Evan Fleck and Matthew Brod, (vii) counsel to the Official Creditors' Committee, Morrison & Foerster LLP, 250 W. 55th Street, New York, NY 10019, Attn: Lorenzo Marinuzzi and Jennifer Marines, and (viii) counsel to the Fee Committee, Godfrey & Kahn, S.C., One East Main Street, Madison, WI 53703, Attn: Katherine Stadler and Carla Andres.

### No Prior Request

52.     No prior application for the relief requested herein has been made to this or any other court.

*[Remainder of page is intentionally blank.]*

WHEREFORE, Evercore respectfully requests that the Court enter an order awarding the interim compensation and reimbursements described herein, authorizing the Debtors to pay Evercore for such fees and expenses to the extent not already paid and granting such other relief as is appropriate under the circumstances.

Dated: November 4, 2014

David Ying
Senior Managing Director and the
Head of Restructuring
Evercore Group L.L.C.