1    UNITED STATES BANKRUPTCY COURT

2    DISTRICT OF DELAWARE

3

4

5    In re:                          :

                                     :    Chapter 11

6    ENERGY FUTURE HOLDINGS          :

     CORP.,  et al.,                 :    Case No. 14-10979(CSS)

7                                    :

             Debtors.               :    (Jointly Administered)

8    _____:

9

10                                   United States Bankruptcy Court

11                                   824 North Market Street

12                                   Wilmington, Delaware

13

14                                   October 28, 2014

15                                   12:07 PM - 1:24 PM

16

17   B E F O R E :

18   HON CHRISTOPHER S. SONTCHI

19   U.S. BANKRUPTCY JUDGE

20

21

22

23

24

25   ECR OPERATOR:  LESLIE MURIN

1    HEARING re Joint Motion of CSC Trust Company of Delaware as

2    Indenture Trustee, and Certain EFIH 10% First Lien

3    Noteholders, for Confirmation that the Automatic Stay Does

4    Not Apply or, Alternatively, for Limited Relief from the

5    Automatic Stay, Solely Regarding Rescission of Acceleration

6    [D.I. 473; filed May 15, 2014]

7

8    HEARING re Application of Energy Future Holdings Corp., et

9    al., for Entry of an Order Authorizing the Debtors to Retain

10   and Employ PricewaterhouseCoopers LLP as Internal Audit,

11   Information Security, and Tax Consultants Effective Nunc Pro

12   Tunc to the Petition Date [D.I. 654; filed May 29, 2014]

13

14   HEARING re Application of Energy Future Holdings Corp., et

15   al., for Entry of an Order Authorizing the Debtors to Retain

16   and Employ Richards, Layton & Finger, P.A. as Co-Counsel

17   Effective Nunc Pro Tunc to the Petition Date [D.I. 659;

18   filed May 29, 2014]

19

20   HEARING re Application of the Official Committee of

21   Unsecured Creditors for an Order Under Bankruptcy Code

22   Sections 328(a) and 1103(a) and Bankruptcy Rules 2014(a) and

23   2016(b) Approving the Employment and Retention of Polsinelli

24   PC Nunc Pro Tunc to May 13, 2014, as Co-Counsel to the

25   Official Committee of Unsecured Creditors [D.I. 1698; filed

1    July 25, 2014]

2

3    HEARING re Application of the Official Committee of

4    Unsecured Creditors of Energy Future Holdings Corp., et al.,

5    for Entry of an Order Pursuant to Sections 328(a) and

6    1103(a) and Bankruptcy Code Authorizing the Employment and

7    Retention of FTI Consulting, Inc. as Financial Advisor

8    Effective as of May 19, 2014 [D.I. 1699; filed July 25,

9    2014]

10

11   HEARING re Application of the Official Committee of

12   Unsecured Creditors of Energy Future Holdings Corp., et al.,

13   for Entry of an Order (A) Approving the Employment and

14   Retention of Lazard Freres & Co. LLC as Investment Banker

15   Effective as of May 14, 2014, (B) Waiving Certain Time-

16   Keeping Requirements Pursuant to Local Rule 2016-2(h), and

17   (C) Granting Related Relief [D.I. 1700; filed July 25, 2014]

18

19   HEARING re Motion of Energy Future Holdings Corp., et al.,

20   for Entry of an Order Authorizing the Debtors to Reject

21   Certain Executory Contracts, Effective Nunc Pro Tunc to

22   October 7, 2014 [D.I. 2334; filed October 7, 2014]

23

24   HEARING re Motion of energy Future Holdings Corp., et al.,

25   for Entry of an Order Approving the Debtors' Agreement to

1  Certain Tax Adjustments [D.I. 2336; filed October 7, 2014]

2

3  HEARING re Motion of Energy Future Holdings Corp., et al.,

4  for Entry of an Order Authorizing (A) Rejection of a Certain

5  Unexpired Lease between Luminant Generation Company LLC and

6  U.S. Gypsum and (B) Abandonment of Certain Property, Each

7  Effective as of November 25, 2014 [D.I. 2338; filed October

8  7, 2014]

9

10  HEARING re Motion of Energy Future Holdings Corp., et al.,

11  for an Entry of an Order Authorizing and Approving

12  Procedures for Settling Certain Prepetition Claims and

13  Causes of Action Brought by or Against the Debtors in a

14  Judicial, Administrative, Arbitral or Other Action or

15  Proceeding [D.I. 2340; filed October 7, 2014]

16

17  HEARING re Application of Energy Future Holdings Corp., et

18  al., for an Order Authorizing the Debtors to Retain and

19  Employ Balch & Bingham LLP as Special Counsel for Certain

20  Environmental Matters, Effective Nunc Pro Tunc to October 1,

21  2014 [D.I. 2344; filed October 7, 2014]

22

23  HEARING re Motion of the Official Committee of Unsecured

24  Creditors for an Order Regarding Creditor Access to

25  Information and Setting and Fixing Creditor Information

1   Sharing Procedures and Protocols Under 11 U.S.C. §§ 105(a),

2   107(b), and 1102(b)(3)(a) [D.I. 2361; filed October 9, 2014]

3

4   HEARING re Application of Energy Future Holdings Corp., et

5   al., for Entry of an Order Authorizing the Debtors to Retain

6   and Employ Deloitte & Touche LLP as Independent Auditor

7   Effective Nunc Pro Tunc to the Petition Date [D.I. 656;

8   filed May 29, 2014]

9

10  HEARING re Motion of Energy Future Holdings Corp., et al.,

11  for Entry of an Order (A) Setting Bar Dates for Filing Non-

12  Customer Proofs of Claim and Requests for Payment Under

13  Section 503(b)(9) of the Bankruptcy Code, (B) Approving the

14  Form of and Manner for Filing Non-Customer Proofs of Claim

15  and Requests for Payment Under Section 503(b)(9) of the

16  Bankruptcy Code, and (C) Approving Notice Thereof [D.I.

17  1682; filed July 23, 2014]

18

19  HEARING re Notice of Assumption of Certain Executory

20  Contracts and Unexpired Leases and Related Relief Thereto

21  [D.I. 2311; filed October 3, 2014]

22

23  HEARING re Application of Energy Future Holdings Corp., et

24  al., for Entry of an Order Authorizing the Debtors to Retain

25  and Employ Ernst & Young LLP as Providers of Tax Advisory

1    and Information Technology Services Effective Nunc Pro Tunc

2    to the Petition Date [D.I. 655; filed May 29, 2014]

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25    Transcribed by:  Dawn South

1    A P P E A R A N C E S :

2    KIRKLAND & ELLIS

3         Attorneys for the Debtors

4

5    BY:  EDWARD O. SASSOWER, ESQ.

6         CHAD J. HUSNICK, ESQ.

7         BRIAN E. SCHARTZ, ESQ.

8

9    RICHARDS, LAYTON & FINGER

10        Attorneys for the Debtors

11

12   BY:  DAVID J. DEFRANCESCHI, ESQ.

13        JASON M. MADRON, ESQ.

14

15   LATHAM & WATKINS LLP

16        Attorney for Ernst & Young LLP

17

18   BY:  PETER GILHULY, ESQ.

19

20   AKIN GUMP STRAUSS HAUER & FELD

21        Attorney for the Ad Hoc Committee of EFH Unsecured

22        Noteholders

23

24   BY:  JACK TRACY, ESQ.

25

1   CHIPMAN BROWN CICERO & COLE, LLP

2        Attorney for the Ad Hoc Committee of EFH Unsecured

3        Noteholders

4

5   BY:  ANN KASHISHIAN, ESQ.

6

7   DRINKER BIDDLE & REATH

8        Attorney for Citibank, DIP Agent

9

10  BY:  HOWARD CHOEN, ESQ.

11

12  KLEHR HARRISON

13       Attorney for UMB Bank Indenture Trustee

14

15  BY:  RAYMOND H. LEMISCH, ESQ.

16

17  FOLEY & HARDNER LLP

18       Attorney for UMB Bank, As Trustee

19

20  BY:  MARK HEBBELN, ESQ.

21

22  POTTER ANDERSON & CORROON, LLP

23       Attorney for Deutsche Bank New York

24

25  BY:  R. STEPHEN MCNEILL, ESQ.

1    POLSINELLI

2         Attorneys for the Committee

3

4    BY:  CHRIS WARD, ESQ.

5         JUSTIN EDELSON, ESQ.

6

7    MORRISON FOERSTER

8         Attorney for the Committee

9

10   BY:  BILLY HIDBOLD, ESQ.

11

12   THE HOGAN FIRM

13        Attorney for the Ad Hoc Committee of EFH

14

15   BY:  GARVAN MCDANIEL

16

17   ROPES & GRAY

18        Attorney for Delaware Trust Co.

19

20   BY:  ANDREW DEVORE, ESQ.

21

22   COLE SHOTZ

23        Attorney Delaware Trust Co.

24

25   BY:  NORMAN PERNICK, ESQ.

1    ASHBY & GEDDES

2          Attorney for WSFS, Trustee

3

4    BY:  GREG TAYLOR, ESQ.

5

6    PACHULSKI STANG ZIEHL & JONES

7          Attorneys for EFIH Send Lien Note

8

9    BY:  LAURA DAVIS JONES, ESQ.

10          COLIN R. ROBINSON, ESQ.

11

12   UNITED STATES DEPARTMENT OF JUSTICE

13          Attorneys for the U.S. Trustee

14

15   BY:  ANDREA B. SCHWARTZ, ESQ.

16          RICHARD L. SCHEPACARTER, ESQ.

17

18   YOUNG CONAWAY STARGATT & TAYLOR

19          Attorney for the Ad Hoc Committee of TCEH First Lien

20          Creditors

21

22   BY:  RYAN BARLEY, ESQ.

23

24

25

1   MONTGOMERY, MCCRAKEN, WALKE & RHOADES

2        Attorney for Five Personal Injury Law Firms

3

4   BY:   NATALIE RAMSELY, ESQ.

```
 1                 P R O C E E D I N G S

 2            THE CLERK:  All rise.

 3            THE COURT:  Please be seated.  Good afternoon.

 4            MR. SASSOWER:  Good afternoon, Your Honor.  For

 5      the record Edward Sassower --

 6            THE COURT:  The others -- the others come and go,

 7      Mr. Sassower, but it's you and me and Ms. Doré.

 8         (Laughter)

 9            MR. SASSOWER:  We shall persevere together, Your

10      Honor.

11            THE COURT:  All right.

12            MR. SASSOWER:  Your Honor, having been in court

13      for 8 of the last 15 business days I think I'm going to

14      dispense with the typical status report because you're

15      pretty up to speed on our status.

16            THE COURT:  Yes.

17            MR. SASSOWER:  We've got a pretty short agenda for

18      today.  We have the asbestos bar date and then a couple of

19      retention issues that we'll touch on.

20            So with that I'll yield the podium to my partner,

21      Chad Husnick.

22            THE COURT:  Okay.  Thank you.

23            MR. SASSOWER:  Excuse me.  My partner Brian

24      Schartz.

25            THE COURT:  All right.  Thank you.
```

1          MR. SCHARTZ:  Good afternoon, Your Honor, Brian

2     Schartz from Kirkland & Ellis for the debtors.

3          Very quickly I want to talk first about an item

4     that we put as a status conference item on the agenda, it's

5     item number 16 --

6          THE COURT:  Right.

7          MR. SCHARTZ:  -- which is a kind of a weird place

8     to put it, it's the retention of Ernst & Young in connection

9     with state law tax services and information technology

10    services that they provide to the debtors.

11         We actually filed a withdrawal of that application

12    late last night, and that was in response to a whole host of

13    conversations that we've had with the United States

14    Trustee's Office as well as Peter Gilhuly from Latham who

15    represents Ernst & Young.

16         And what I would like to just note on the record

17    today is that what we're going to do with Ernst & Young is

18    there is a whole host of sort of non-professional services

19    that they've provided the debtors with respect to

20    information technology, cyber security, it's not auditor

21    work, it's not accountant work, it's not tax work, it's not

22    attorney work, it's not anything like that, the debtor is

23    going to continue that in the ordinary course.

24         There is small subset of professional services

25    related to tax work that we're not quite sure what we're

1    going to do yet, and so we withdrew the application without

2    prejudice, we're exploring alternatives, and we may or may

3    not file something in the future with respect to that.  But

4    for the time being we're just going let it sit as it was

5    with respect to the vendor services.

6              THE COURT:  Okay.  Anyone wish to be hard?

7    Mr. Schepacarter?

8              MR. SCHEPACARTER:  Good afternoon, Your Honor.

9    Richard Schepacarter for the United States Trustee.

10             Despite the fact that the matter -- that the

11   motion has been -- or the application has been withdrawn

12   what I would sort of -- I guess I want to clarify the record

13   to a certain extent is that there are maybe some issues that

14   are still going on and we're reserving all of our rights to

15   don't look at that situation, whatever it may be.

16             THE COURT:  All right.

17             MR. SCHEPACARTER:  Thank you, Your Honor.

18             THE COURT:  Uh-huh.

19             MR. GILHULY:  Your Honor, Peter Gilhuly of Latham

20   & Watkins on behalf of Ernst & Young.

21             THE COURT:  Good afternoon.

22             MR. GILHULY:  Your Honor, Mr. Schartz, he

23   referenced the work that is more of the -- the kind of

24   vendor work, the non-professional work is a very -- a huge

25   majority of the work, it's well over 90 percent of the work

1    that we're talking about here, and given the U.S. Trustee's

2    objections and our discussion we kind of came to the

3    resolution that we should put kind of the disputed part,

4    something that may come back to you in some form, but

5    because the vast majority of it we kind of reached

6    resolution of we were okay with withdrawing the application

7    and coming back to you with this in the future, if

8    necessary.

9               THE COURT:  All right.  Thank you.

10              MR. GILHULY:  Thank you.

11              MR. SCHEPACARTER:  Not to belabor the point, Your

12    Honor, Richard Schepacarter for the United States Trustee.

13              With respect to Mr. Gilhuly's comments, not to go

14    through the history of it, but if you recall we filed an

15    objection to the application.

16              So based on what I think the work that's been done

17    there may still need to be some additional follow up of some

18    sort to -- I guess to endeavor to figure out exactly what

19    needs to be done.

20              So like I said, we're reserving all of our rights

21    with respect to whether they file an application or don't

22    file an application or the like, so.

23              THE COURT:  Is there a dispute that the IT

24    services, et cetera, are -- need to be retained or is

25    that --

1              MR. SCHEPACARTER:  I don't think -- I don't know

2     that the issue has been resolved yet on that, and we'll

3     discuss -- I'll discuss that again with Mr. Gilhuly after

4     today's hearing.

5              THE COURT:  Well, I assume the services are

6     continuing, so.

7              MR. SCHEPACARTER:  Understood.

8              THE COURT:  All right.

9              MR. SCHEPACARTER:  And there's other services that

10    are continuing as well, so we're -- like I said, we're going

11    to reserve all of our rights on that just to make sure that

12    all of what's been needed to be done needs to be done.

13             THE COURT:  All right.

14             MR. SCHEPACARTER:  All right.

15             MR. GILHULY:  Your Honor, her application was

16    filed in May -- late May, and due to the exigencies of this

17    case it's in fact continued a number of times.  Obviously

18    that's a dangerous position for a -- for working at the

19    level we're working, and we had, you know, a series of

20    conversations and agreed as late as this weekend to withdraw

21    our -- you know, have the application withdrawn with the

22    understanding that we had this agreement.

23             So, I'm a little concerned with Mr. Schepacarter's

24    comments, because we can't -- Ernst & Young can't continue

25    at this rate with a dispute about this.  I had understood

```
 1   that it was resolved, that was the conversation, it was

 2   essentially a deal.

 3             MR. SCHEPACARTER:  I'll leave it at this.  All our

 4   rights are reserved and I just confirmed that with

 5   Mr. Schartz, so I just -- we'll leave it at that, Your

 6   Honor.  Is that --

 7             THE COURT:  I don't think that satisfies

 8   Mr. Gilhuly.

 9             MR. SCHEPACARTER:  Okay.  Let's --

10             THE COURT:  Do you want to pass this?

11             MR. SCHEPACARTER:  Yeah, let's pass this and then

12   let's -- we'll talk after -- after today's hearing or later

13   on in the hearing.

14             THE COURT:  Well, let's deal with it today, so.

15             MR. SCHEPACARTER:  Yes, we'll deal with it today,

16   that's what I'm saying, we'll talk to him about it.

17             THE COURT:  All right, we'll pass it over now,

18   and --

19             MR. SCHEPACARTER:  As a matter of fact --

20             THE COURT:  -- at some point we'll take a recess

21   and you can discuss it further.

22             MR. GILHULY:  We're going step outside right now,

23   so.

24             THE COURT:  Okay.  What's next?

25             MR. SCHARTZ:  With apologizes aside we had
```

1    (indiscernible - 12:14:13) view on that, but we'll clarify

2    it.

3         The next one is Deloitte's retention application,

4    which I still need to work through a couple of items on the

5    order with Ms. Schwartz from the U.S. Trustee's Office.

6    We're very close to having that done.

7         Deloitte is the company's formal auditor so they

8    sign all of the auditor payments at the end of the year,

9    obviously very important given this time of year that we get

10   Deloitte retained.  I think we're extremely close on

11   resolving that order.

12        We did file just this morning a supplemental

13   declaration from Randy Stocks of Deloitte who's a partner at

14   Deloitte.  In case Your Honor didn't see it I have a copy

15   for you to bring up, but I think if you just give me a

16   moment with Ms. Schwartz we will clean up the order and have

17   something to present for you at the end of this hearing.

18        THE COURT:  All right.  I did not read the

19   declaration, but --

20        MR. SCHARTZ:  Would you like me to hand up a copy?

21        THE COURT:  Yeah, why don't you hand me up a copy.

22        We'll pass this as well so you can continue to

23   hopefully button down the order by the end of the hearing.

24        MS. SCHWARTZ:  Your Honor, we have no objection in

25   form to the retention of Deloitte, we're just going over the

1    form of the order.

2              THE COURT:  Okay.  And that was my impression from

3    the status line --

4              MS. SCHWARTZ:  Okay.

5              THE COURT:  -- on the agenda.

6              MR. SCHARTZ:  Correct.

7         (Pause)

8              THE COURT:  Okay.

9              MR. SCHARTZ:  Thank you, Your Honor.

10             With that I'll pass the podium to

11   Mr. Husnick to cover the asbestos stuff.  Thank you.

12             THE COURT:  You're welcome.

13             MR. HUSNICK:  Good afternoon, Your Honor.  Chad

14   Husnick, Kirkland & Ellis on behalf of the debtors.

15             Your Honor, the item on the agenda that I'm

16   responsible for is the debtors' motion to establish a bar

17   date.  Excuse me.

18             As you may remember the Court previously entered

19   an order granting a portion of the relief for the bar date

20   motion that related to non-asbestos claims, and as to

21   asbestos claims we've basically agreed to adjourn the

22   hearing to the following omnibus, and there's been a couple

23   of subsequent adjournments.

24             The issues that remain -- and I thought it would

25   be helpful to take just a couple of moments to try and

1   clarify what I think is being addressed and what's open.

2          Your Honor, the first issue -- I don't think the

3   plaintiffs' law firms contest that a bar date can be set for

4   identified plaintiffs, that is plaintiffs who know of their

5   injuries and have been identified by the debtors, and they

6   don't contest the form of notice for those identified

7   plaintiffs.

8          The second subset of plaintiffs would be

9   individuals who have suffered asbestos-related illness or

10  injury but have not yet been identified or have not yet sued

11  the debtors.  These are the so-called present but

12  unidentified claims.  With respect to this category of

13  claims I believe the plaintiffs' law firms agree that they

14  can be barred but that the form of notice that the debtors

15  proposed is insufficient.

16         What we agreed prior to the hearing with Your

17  Honor's indulgence is to bifurcate this hearing to address

18  the notice issues at a subsequent hearing altogether such

19  that if Your Honor concludes that unmanifested claims are

20  also able to be barred -- and I'll get to that issue in a

21  second -- that you'd address the noticing issues with both

22  present but unidentified claims and unmanifested claims in a

23  single hearing where we talk about notice.

24         If that's okay with Your Honor then what would be

25  before Your Honor today is a single legal question as to

1    whether it's appropriate for the Court to set a bar date for

2    unmanifested or future asbestos claims.

3              On that issue, Your Honor, we believe there's been

4    two rounds of briefing, we both -- both parties filed

5    supplemental briefs, one round of oral argument at the

6    August 13th hearing.  I'm not going to repeat all of the

7    arguments that I made at the August 13th hearing, but I do

8    think it's helpful in light of the two- or three-month delay

9    that I resummarize some of those arguments and try and

10   package them in a way that I think answers this fairly

11   straightforward question.

12             Your Honor, just to refresh Your Honor's memory on

13   the size of the asbestos -- potential asbestos liability

14   here, there's a small number of cases relative to the

15   overall size of these cases, in fact we have fewer than 400,

16   and around 8- to 900 from the beginning of the debtors'

17   records total, but there's only 371 to be specific that

18   remain pending as of today and that were scheduled in the

19   debtors' schedules and statements.

20             The debtors have spent less than $30 million as

21   far as their records go on asbestos-related costs, that

22   includes costs of settlements, et cetera, and this is in

23   stark contrast of the over $40 billion of debt that we're

24   dealing with in this case, and we've never exceeded

25   $4.2 million in a single year.

1           I think the reason that those stats are relevant

2    is because there is a different process in the bankruptcy --

3    in the bankruptcy rules and in the Code for dealing with

4    asbestos claims.  Section 524(g) is not the exclusive way to

5    address unmanifested asbestos claims.

6           In a case such as this where the debtor never

7    manufactured or sold asbestos, the asbestos liabilities may

8    not be necessary, it may not even be possible in light of

9    the statutory structures under 524(g) to satisfy that

10   requirement and ultimately avail -- the debtors to avail

11   themselves of that additional due process protection that's

12   afforded by 524(g).

13          What the PI law firms urge this Court to do is to

14   find that there's blanket rule against a Bankruptcy Court

15   issuing a bar date order that applies to future claimants,

16   and that's future asbestos claimants specifically.

17          I think Your Honor appropriately highlighted at

18   the last hearing that the affect of such a decision would be

19   far broader than just asbestos claimants, to the extent that

20   there are other types of future claims.

21          For example --

22          THE COURT:  But --

23          MR. HUSNICK:  Go ahead.

24          THE COURT:  -- you keep saying future claims, and

25   I think that's deceptive.  When I think of future claims I

1    think of claims that arise post-discharge, but you're

2    talking about claims that arise pre-discharge or prepetition

3    even when you use the term future claims.

4            MR. HUSNICK:  Correct.  I should stick with the

5    term unmanifested, because I think it's the more appropriate

6    way of describing it post Grossmans.  So I will do so.

7            So what the plaintiffs' rule -- or what the

8    plaintiffs' law firms have urged this Court to do is

9    establish a blanket rule that says no unmanifested claim can

10   ever be subject to a bar date, and I'd submit that that

11   blanket rule is completely inconsistent with the cases, with

12   the Bankruptcy Code, and the bankruptcy rules.

13           Specifically Bankruptcy Rule 3003 provides that

14   the Bankruptcy Court shall establish a bar date for filing

15   proofs of claim, and we cited various cases in our briefs,

16   including Grynberg 986 Fed. 2d 367 from the Tenth Circuit

17   holding that 2003(c)(3) is not an optional provision, it's

18   mandatory.  And what it assents to under 2003 is claims.

19           And as we know from the Grossmans' decision in

20   Owens Corning in the Third Circuit that the definition of

21   claims was necessarily meant to be broad and necessarily

22   includes the unmanifested claims that we're discussing here

23   today.

24           Judge Walrath also addressed the mandatory nature

25   of 3003 in a case called International Aluminum Corp. I have

1    a copy of the transcript here, Your Honor.  That's at 10 --

2    case number 10-1003.

3              In that case, Your Honor, Judge Walrath in

4    addressing an assertion that a bar date was optional said,

5    "I'm not really sure" -- "I'm not really" -- "I'm not sure

6    there really is stated discretion to set a bar date."  She

7    noted to set a bar date is actually not the exact language,

8    but that's what was intended.  She noted that there may be

9    discretion in prepacks, but that "Rule 3003 says the Court

10   shall fix the time within which proofs of claims may be

11   filed."  And she went on to say, "So, I think clearly the

12   rule is that a bar date has to be set by a court in a

13   Chapter 11 case."  And I do have a copy of the transcript if

14   Your Honor would like to review it.

15             The takeaway from that decision and other

16   decisions is that it's mandatory under the bankruptcy rules,

17   which then turns to Section 524(g), and whether 524(g) and

18   the provisions that are in the language of that code section

19   give any indication that that section is the exclusive

20   mechanism for Bankruptcy Courts to deal with asbestos claims

21   or unmanifested asbestos claims, and I submit it is not.

22             Specifically 524(g) says that it is meant to

23   supplement the discharge, not supplant the discharge, and

24   the discharge that we're referring to is the other -- the

25   discharge otherwise available under Section 524 and 1141 of

1    the Bankruptcy Code.  This language is not a mistake and the

2    legislative history for 524(g) also makes clear that 524(g)

3    shall not be construed to modify, impair, or supersede any

4    other authority the Court has to issue injunctions in

5    connection with an order confirming a plan of

6    reorganization.

7          If Congress intended to supplant the normal bar

8    date process and discharge provisions it undoubtedly would

9    have chosen a different word than the word "supplant."  And

10   I can give you various examples which I'm sure Your Honor is

11   familiar with of various other code sections where Congress

12   is very explicit about overriding other provisions on the

13   Code.

14         To do as the plaintiffs' law firms urge you to do,

15   Your Honor, I submit is an improper role for the judiciary

16   to override the permissive nature of the 524(g) injunction.

17   And Owens Corning and Grossmans both support the fact that a

18   particular barred claimant -- whether a particular barred

19   claimant receives sufficient due process is appropriately

20   addressed at a fact intensive post-hoc analysis.

21         Your Honor, in fact if you look at footnote 7 of

22   the Owens Corning decision it's important that the court --

23   the third circuit in the case -- observed that it was not

24   establishing a bright line rule in remanding that case, that

25   due process could never be afforded to unmanifested claims.

1    Instead it just highlighted that it's an issue that may need

2    to be addressed on a case by case basis going forward.

3            Your Honor, that decision was then -- has then

4    condition firm in a recent Delaware District Court decision

5    in the New Century TRS Holdings bankruptcy -- or bankruptcy

6    case.  That's 2014 Westlaw 4100749 from August of 2014.

7            In that decision, Your Honor, the Bankruptcy Court

8    had made a decision that a particular process for giving

9    notice to claimants was sufficient to satisfy due process

10   concerns on a prospective basis, and the District Court

11   there reversed, and while it found in that case that

12   ultimately that the notice given in that particular case was

13   not sufficient it reversed the Bankruptcy Court's

14   prospective decision that notice was sufficient.

15           So the answer there I think is completely

16   consistent with Owens Corning and Grossmans where the courts

17   are to look at due process on a post-hoc basis.

18           That also comports with Supreme Court precedent

19   that addressing a due process issue today would not be right

20   for the Court to consider.

21           Finally, Your Honor, I just want to summarize.

22           I think establishing a blanket rule would not only

23   be inconsistent with the Code, the case law of bankruptcy

24   practice, but it's also inconsistent with fundamental

25   premise and bankruptcy code jurisprudence, that is the

1    notion of exclusivity.

2           The plaintiffs' law firms establish or argue in

3    their supplemental brief that there's only two ways to deal

4    with asbestos plaintiffs' claims.  Either you can establish

5    a 524(g) injunction to address unmanifested claims or you

6    can let them ride through entirely in the bankruptcy

7    process.  That's not what Congress intended, that's not what

8    they stated, and what Congress stated in 524(g), and that's

9    not the law.  Such a law would be inconsistent with the

10   anti-discrimination principals underlying the Chapter 11 of

11   the Bankruptcy Code and it would be inconsistent with well-

12   settled bankruptcy practice.

13          Finally, the last thing I would point out is we

14   heard oftentimes I think at the oral argument as well as in

15   each set of briefs that this is the first time that a

16   Bankruptcy Court will ever establish a bar date for asbestos

17   claims.

18          We came forward in the Fifth Circuit's decision in

19   Placid Oil and said that that's untrue.  We then heard that

20   Placid Oil, Your Honor, was arguably limited to its facts,

21   because in Placid Oil the debtor had resolved the asbestos

22   claim prior to filing its schedules and statements.

23          While that may be true the court did observe that

24   the debtor was aware in Placid Oil of the -- the potential

25   existence of asbestos claims.  And while it didn't schedule

1    any existing claims at that time it certainly had knowledge

2    of the potential for exposure when it had previously

3    settled, and that is discussed in the decision -- in the

4    Placid Oil decision.

5            But I also, Your Honor, want to highlight for the

6    Court that that is not the first or probably the last time

7    in which a debtor will file a Chapter 11 case that also has

8    asbestos exposure.  Furniture Brands International Ormet

9    (ph) Crop., Overseas Ship Holding Group, these are all

10   cases, Your Honor, where they scheduled asbestos claims and

11   ultimately sought and obtained a bar date with respect to

12   all claims, not excluding any specific category of claims,

13   and ultimately the case moved on.  So it's not a first time.

14   These are post-Grossmans cases and certainly, Your Honor, I

15   think that that premise is just untrue.

16           Your Honor, in light of all that I think that --

17   and the statements that we've made bar date is a fundamental

18   portion of this process, it's time to get started.  We have

19   served notice of the bar date to all other claimants and we

20   need to get started on addressing the remaining asbestos

21   issues.  We believe it's entirely appropriate under the law

22   to establish a bar date.

23           Thank you.

24           THE COURT:  Thank you.

25           MS. RAMSEY:  Good afternoon, Your Honor.  Natalie

1    Ramsey, Montgomery, McCracken Walker & Rhoads on behalf of

2    five personal injury law firms.

3              Your Honor is probably aware that yesterday the

4    United States Trustee's Office appointed a committee

5    consisting of two asbestos creditors and three other

6    creditors.  One employee retirement creditor and two

7    creditors I understand are noteholders.  That committee has

8    not had an opportunity to employ counsel yet.  We do believe

9    that the issues before the Court should be addressed by an

10   official committee.

11             We had reached out to the debtors in advance of

12   the appointment late last week and asked whether they would

13   consent to move this hearing, and we understood from the

14   Court's remarks at a prior hearing that absent the debtors'

15   consent it was the Court's intention to move forward today,

16   but I do feel obligated before proceeding with the argument

17   to ask the Court whether it would be appropriate to push

18   this hearing off and further adjourn it until the official

19   committee has an opportunity to employ counsel and can be

20   heard on this issue.

21             THE COURT:  No, I'm not going to continue the

22   hearing absent the debtors' consent.  This has been out

23   there for quite some time and the Court can only wait so

24   long, and I understand it took some time to form that

25   committee, but I'm comfortable proceeding today as I

1      previously ruled in early September.

2              MS. RAMSEY:  Okay, Your Honor.

3              With that let me start by saying that the bar date

4      order sought by the debtors today is extraordinary.

5              What we said at the last hearing, Your Honor, on

6      page 81 of the transcript was that we were aware of

7      absolutely no court that had ever entered an order

8      prospectively in a case in which a debtor had asbestos

9      liabilities where the bar date was entered intentionally

10     seeking to discharge and bar those future claims.  And that

11     remains true.

12             The proposed bar date order here presents

13     fundamental constitutional due process issues in a unique

14     context.  The individuals whose rights are at issue are not

15     aware that they have an injury, and even in the exercise of

16     appropriate due diligence, if they went to a doctor today

17     they would not be diagnosed as having an injury.  Because of

18     the latency period associated with asbestos injuries they

19     may not manifest an injury for up to 50 years after

20     exposure.

21             We're aware of only one court that has directly

22     considered the issue that is before the Court today, namely

23     whether a bar date that is designed specifically to require

24     individuals who develop an asbestos injury in the future as

25     a result of exposure to asbestos used by the debtors before

1    their bankruptcy case can satisfy the requirement that a bar

2    date provide adequate notice to that population of exposure

3    only individuals, individuals who are unaware -- may be

4    unaware of their exposure, they're certainly unaware of the

5    severe harm that may ultimately result, and they're unable

6    to recognize that their rights can be affected by this

7    bankruptcy.

8             That case, Your Honor, is In re: Specialty

9    Holdings Corporation where Judge Walsh found the bar date

10   order could be entered because of the Third Circuit's

11   decision In re: Grossmans, but no order was entered in that

12   case because it was settled before the proceeding associated

13   with the bar date order had concluded.

14            The only guidance that Judge Walsh gave the

15   parties with respect to his reasoning was a reference to

16   Grossmans stating on the record "that Grossmans changed

17   everything."

18            We respectfully contend that his decision was in

19   error and that Grossmans did not reach and does not support

20   the conclusion that future claimants can be subject to a bar

21   date.

22            In Grossmans the Court of Appeals reversed the

23   heavily criticized Fenz Bill (ph) decision and adopted a

24   prepetition relationship test as the test to be applied in

25   connection with determining whether a claim exists for

1    purposes of Section 1015 of the Code.  But the facts of

2    Grossmans are important, and so is the Court's dicta in that

3    case.

4              Grossmans filed its case in 1997, its case

5    progressed quickly, and it confirmed a plan in December of

6    that same year.  Grossmans provided notice by publication of

7    a deadline for filing proofs of claim.  No proof of claim

8    was filed by the individual, Ms. Van Brunt (ph), who

9    ultimately brought the case that ended up on appeal.

10             Ms. Van Brunt had purchased products containing

11   asbestos from Grossmans in 1977, but her injuries did not

12   manifest unless 2006, and in 2007 she died from

13   mesothelioma.

14             At the time of its bankruptcy though Grossmans had

15   never been subject to an asbestos claim.  There's nothing in

16   the records that indicates that Grossmans was aware that it

17   had the possibility of ever being pursued on the basis of an

18   asbestos-related claim.  There were no claims pending even

19   as of the date that the plan was confirmed, and these are

20   important facts that the court looked to that underlie the

21   Grossmans' decision.

22             As a result of those facts when Grossmans

23   published its bar date it did not specifically intend to

24   reach a known population of individuals who would or may

25   have -- might have claims in the future against it as a

1    result of specific prepetition conduct or products.

2              The court in Grossmans makes a special note that

3    the due process protections of Section 524(g) were therefore

4    unavailable in that case because there was no prepetition

5    history of asbestos.

6              The Court goes on to identify as of one of the

7    criteria that it asked the lower court to consider in

8    looking at the issue of whether Ms. Van Brunt was given due

9    process notice by the bar date notice that was published in

10   that case, whether it was reasonable or possible for the

11   debtor to establish a trust for future claimants as provided

12   for in Section 524(g).  That's at pages 125 and 126.

13             The court was very cognizant of the due process

14   issues when it remanded the determination to the District

15   Court with respect to her due process saying any application

16   of the test for discharge to be applied cannot be divorced

17   from the fundamental principals of due process.  Notice is

18   an elementary and fundamental requirement of due process in

19   any proceeding which is to be accorded finality.  Citing

20   Melane (ph).

21             Without notice of a bankruptcy claim the claimant

22   will not have a meaningful opportunity to protect his or her

23   claim.  This issue has arisen starkly in the situation

24   presented by persons with asbestos injuries that are not

25   manifested until years or even decades after exposure.

1              There are therefore two critical takeaways from

2     the Grossmans case that are important here.

3              Number one, the case did not deal with the

4     circumstance like the one here where the debtors have a

5     history of asbestos litigation and settlements.

6              And number two, the Third Circuit was very

7     concerned about the due process issues for this particular

8     type of claimant, these unmanifested claimants.

9              The debtors in contrast have an established

10    history of asbestos litigation.  They list among their

11    ordinary course professionals five separate asbestos

12    litigation firms.  The five firms today represent -- account

13    for about 160 claims against EFH and its subsidiaries

14    according to the debtors' statement.

15             In the hearing that took place on August 13th and

16    again today the debtors have represented that there are

17    approximately 391, I think was the number, of pending claims

18    against the debtor, and that they have an asbestos history

19    of settlement.

20             The debtors responded to certain discovery served

21    by the PI law firms by indicating that they have power

22    plants related to discontinued operations in 537 locations

23    in 40 states.  They also provided a list of 25 power plants

24    that relate to the debtors' power generation activities that

25    were in operation in or after 1950.

1          So while Judge Walsh found that Grossmans changed

2     everything, it's our contention instead that 524(g) of the

3     Code changed everything as it relates to debtors that have

4     an asbestos litigation history.

5          The debtors here contend that the amount of their

6     asbestos liability is relatively de minimis, and in this

7     case, a case this large, that is certainly true; however,

8     even with 30 billion in historical liability and by just

9     multiplying out up to 2050, which is the anticipated time

10    frame set by epidemiologists with regard to how long

11    manifestations of asbestos injuries will continue, the --

12    assuming that the debtors' liability history remains

13    stagnant you would come to an estimate of between 75- and

14    170 million in asbestos liability.

15         According to the published report by Rand there's

16    17 active trusts that have 170 million or less in

17    established trust funds for the payment of asbestos

18    liabilities, and quickly looking down the list there are at

19    least 10 or 15 of those trusts that have assets of

20    $40 million or less.

21         So although this may be a small issue with regard

22    to the debtors' overall liability picture, for asbestos

23    claimants it is not de minimis, this is not a de minimis

24    asbestos picture.

25         To go on with the Third Circuit authority, Your

1    Honor, the decision in Wright (ph) which followed Grossmans

2    did not address asbestos, it instead dealt with non-asbestos

3    shingles.  And the factual backdrop of those cases were that

4    asbestos personal injury claims were channeled to an

5    asbestos PI trust that was established under the Owens

6    Corning bankruptcy case.

7            For our purposes we think that the Court ought to

8    focus also on footnote 7 of that opinion which says:

9            "Given or reliance on the exceptional

10   circumstances created by the retroactive application of

11   Grossmans, we express no opinion on the broader issue of

12   whether discharging unknown future claims comports with due

13   process."

14           That brings us then to the Court of Appeals

15   decision in W.R. Grace where it addressed the statutory

16   construction argument about whether the words "claim" as

17   used in 1015 and "demand" as used in Section 524(g) are

18   mutually exclusive.

19           Quoting extensively from the Bankruptcy Court's

20   decision in Flintcoat the Third Circuit noted with approval

21   the Bankruptcy Court's analysis that Congress created 524(g)

22   as a (indiscernible - 12:42:28) mechanism in order to

23   protect the due process rights of people who had been

24   exposed but not yet affected and who might not manifest an

25   injury until a time when all available compensation had been

1    paid out to people who got sick faster.

2            Therefore Section 524(g) improves a quality of

3    treatment among claimants, which is a critical fundamental

4    aspect of bankruptcy jurisprudence.

5            The Court of Appeals goes on to state, and we

6    think the Court should pay particular attention to this

7    language as well, that if all property damage, which was the

8    type of asbestos injury at issue in the appeal in the W.R.

9    Grace case, has occurred and those harmed can be notified

10   the ordinary claims process could arguably meet Congress's

11   objectives of promoting equal treatment of claimants and

12   allowing manufacturers to handle asbestos liability in on

13   orderly and streamline process.

14           What the court was saying was that it was

15   distinguishing the situation here where you cannot provide

16   due process notice, we would contend, to the situation that

17   -- that it was facing in -- that they argued in W.R. Grace

18   and ultimately what the court decided was that future

19   property damage claims were also going to be treated by the

20   trust as established by the plan in W.R. Grace and that that

21   was the mechanism that was designed to meet the due process

22   standard.  That's at page 342 of the W.R. Grace opinion, and

23   we believe it's very telling with respect to what the Third

24   Circuit would do in a situation like this.

25           The other case that the debtors rely on

1      extensively in their pleadings, Your Honor, is the Placid

2      Oil decision out of the Fifth Circuit, which is not only

3      non-binding on this Court, but also we believe very

4      distinguishable on its facts.  And if the Court reviews the

5      specific language of Placid and the reasons why it reached

6      the decision it did it's clear that it was not addressing

7      the issues that are being raised here.

8              Placid was also a pre-524(g) case.  Placid filed

9      in 1986, the bar date was established in 1988, the case was

10     confirmed in 1988.

11             The facts are in Placid that Placid was aware that

12     there was asbestos on its premise and it was aware that the

13     plaintiff in this case, Mr. Williams, worked for Placid.  To

14     that extent it arguably was aware that there was a potential

15     liability.

16             The issue that was being addressed in Placid Oil

17     was whether or not Mr. Williams was a known creditor

18     entitled to direct notice as opposed to an unknown creditor

19     entitled to publication notice.  For whatever reason that

20     was the way that the issue was framed, that was the way that

21     the issue went to the Fifth Circuit.

22             The court is clear in reaching its determination

23     in Placid that it's very focused on the fact that the debtor

24     has no asbestos history, it had never been sued

25     preconfirmation, and even though it reflects that there were

1    cases -- asbestos cases that were asserted against the

2    debtor post-confirmation it makes a point -- the majority

3    makes a point of saying that Placid had never been found

4    liable in any of those cases and had never settled a single

5    claim.

6              There's also evidence that Mr. Williams was -- had

7    testified that he was aware of the bankruptcy case.

8              The facts in that case therefore do not lead to

9    the conclusion that the debtors would contend that it does,

10   and in fact the decent in that case is very telling.  The

11   decent states that it decents because it believes that its

12   duty is to correct the Bankruptcy Court's constitutional

13   errors as well as its misreading of pertinent case law, but

14   that the court does not address that he says twice because

15   of the plaintiff's failure to adequately brief those issues.

16             So the constitutional issues were not being

17   addressed in that case, and Judge Dennis goes on to

18   criticize the court by saying that it should be looking to

19   make sure that the jurisprudence in that circuit is correct

20   and appropriate, it should be policing that, not just making

21   rulings, he contends, on the basis of issues that do not

22   present the more important considerations.

23             He goes on to write a lengthy decent with respect

24   to due process and concludes by saying:

25             "And some constructive notice by publication to

1   asbestos exposed individuals with unmanifested or late

2   mesothelioma without appointment of a representative for

3   such future demands does not satisfy due process."

4           As the Court said in Melane:

5           "We have before indicated in reference to notice

6   by publication that great caution should be used not to let

7   fiction deny the fair play that can be secured only by a

8   pretty close adhesion to fact."

9           And, Your Honor, that leads me to my next point,

10  which is a matter of fundamental fairness.

11          Bar dates are intended to provide the debtor with

12  a certain amount of certainty, and the publication notice

13  and the court's agreement that publication notice can

14  satisfy the requirement of due process in certain

15  circumstances is designed to balance the interests.  The

16  interest of the debtor in achieving finality, the interest

17  of unknown creditors in being able to come forward and

18  protect their rights in the bankruptcy case.

19          Those purposes are not being achieved by the

20  proposed bar date here.  This is a bar date that would act

21  as a gotcha.  This is a bar date that would be implemented

22  as to people who would be completely unable to identify

23  their rights to come in and protect their rights because

24  they don't know they have rights, they don't in fact under

25  applicable non-bankruptcy law have a right to do anything at

1    this point, and that is why the courts have fashioned,

2    starting with Mansville and going forward, and also in the

3    class action context in cases such as Amchem (ph), the

4    solution of appointment of a future claimant's

5    representative to represent the interest of these people.

6              And with respect to determination we're trying to

7    get a handle around what your future liability might be for

8    unmanifested asbestos claimants.

9              What the courts have done is conduct estimation

10   trials.  Estimation trials that are not unique -- by the way

11   the trials may be unique to bankruptcy -- but the concept of

12   estimating future liability in this context is not unique,

13   it's done all the time for financial reporting purposes,

14   it's done all the time for SEC purposes, and in bankruptcy

15   cases it is the most reliable method found so far to allow a

16   debtor to assess what its future liability is.

17             The reason that that leads into 524(g) is having

18   determined an appropriate figure or an estimate, the best

19   estimate possible of what the future liability is going to

20   be, the debtor is then in a position of appropriately

21   equitably distributing its assets among the present

22   claimants and the future asbestos diseased claimants, the

23   currently unmanifested claimants.

24             In doing that there is little reason, assuming

25   that a debtor can otherwise satisfy the requirements of

1    524(g), why the debtor wouldn't seek 524(g) protection so

2    that in exchange for funding an appropriate fund to satisfy

3    the claims of those individuals, that the debtor can also

4    walk away without any overhang of future liability.

5    Congress has set up this system carefully and it has worked

6    for the debtors that have utilized it.

7            I wanted to touch also on what the debtors'

8    proposed bar date would necessarily lead to and why it is

9    futile.

10           If you imagine a circumstance where a certain

11   number of individuals, either because they're hypochondriacs

12   or because they're more astute than other people, would in

13   fact file some sort of protective place holder claim, what

14   would they say?  Well, okay, we were exposed, we don't have

15   an injury, we have no idea what injury we might manifest in

16   the future, so we have no way of valuing that injury.  What

17   are the debtors going to do with that?

18           Well the only way then to try to put some value on

19   that hypothetical limited group of claims would be to try to

20   estimate them in some fashion, and that's going to have to

21   take place if they're going to do the it on an individual

22   basis before the District Court, and what a strange

23   proceeding that would be, or if it's going to be done in

24   some sort of aggregate basis it's going to require the same

25   types of estimation testimony by epidemologists, by

1    statisticians, but econometric experts that you would have

2    in a regular estimation trial.  It simply doesn't have an

3    end that makes sense in that.  There's a lot of money and

4    effort that would be put into something that would

5    ultimately not be useful.

6           And there has never been a circumstance yet where

7    any debtor has emerged from bankruptcy with an asbestos

8    overhang that has felt comfortable not going back and

9    securing the protections of 524(g).  So it doesn't seem to

10   make any sense.

11          With respect to present claimants, Your Honor, and

12   with respect to those -- including those claimants who have

13   present manifested injury that have not sued we do not

14   contest that those -- that group of asbestos creditors could

15   be subject to an appropriate bar date on appropriate notice.

16   And to that extent the debtors could include individuals who

17   have manifested injury we would believe in a bar date.

18   Again we question the need or efficacy of that, but we

19   certainly don't question whether or not that can legally be

20   done consistent with the notions of due process.

21          I wanted to also just bring a couple of other

22   points to the Court's attention again.  One is the language

23   in Amchem Products versus Wenzer (ph).  The debtors have

24   contended that that is dicta, and it is dicta, but Third

25   Circuit authority says that dicta from the Supreme Court

1    should not be taken lightly.

2            The Third Circuit affirming the language used by

3    -- I'm sorry -- the Supreme Court affirming language used by

4    the Third Circuit in determining that it was not possible to

5    approve a class action settlement, including future claims,

6    noted that:

7            "Impediments to the provision of adequate notice

8    the Third Circuit emphasized rendered highly problematic any

9    endeavor to tie a settlement class persons with no

10   perceptible asbestos-related disease at the time of

11   settlement.

12           Many persons in the exposure in that category the

13   Court of Appeals stressed may not even know of their

14   exposure or realize the extent of harm that may occur.  Even

15   if they fully appreciate the significance of class notice,

16   those without current afflictions may not have the

17   information or foresight needed to decide intelligently

18   whether to stay in or opt out.

19           Family members of asbestos exposed individuals may

20   themselves fall fray to disease or may ultimately have ripe

21   claims for loss of consortium, yet large numbers of some

22   people in this category, future spouses and children of

23   asbestos victims, could not be alerted to their class

24   membership and current spouses and children of the

25   occupationally exposed may know nothing of that exposure."

1           That is particularly the case, Your Honor, as the

2    asbestos case law is developing, and what courts are saying

3    more and more is secondary exposure.  Just as the court in

4    Placid dealt with, they're dealing with exposures by often

5    the wives of occupationally exposed individuals who

6    contracted asbestos disease through doing their husband's

7    laundry and who have no other -- no other asbestos history.

8           And so it appears clear in those cases that that

9    is the only way that those individuals could have contracted

10   an asbestos disease.

11          The debtors contend that a bar date is mandatory,

12   but we are -- we can cite the Court to any number of cases

13   where an asbestos bar date was not entered.

14          In Babcock and Wilcox Company in the Eastern

15   District of Louisiana the court declined to enter a bar

16   date.  In re: Congolium (ph) in the District of New Jersey.

17   In W.R. Grace Judge Fitzgerald actually did impose a bar

18   date, but said on the record that the process had been a

19   nightmare and that she would never do it again.  And in fact

20   in Specialty Products had made statements to the debtors

21   that she was disinclined to enter a bar date, which the

22   debtors then did not pursue until her retirement when the

23   case was reassigned to Judge Walsh.

24          Your Honor, the future claimants are unrepresented

25   here.  We feel compelled to come forward because there is no

1    committee or FCR in place to address this issue, because in

2    the few cases that the debtors have cited where it appears

3    that there has been some asbestos history by the debtor and

4    a bar date has been established, there is no evidence in the

5    record that we can locate in any of those cases that anyone

6    came forward and raised this issue with the court.  We

7    believe it's an important question.

8              And that brings me to one of my last two points.

9              One is that the debtors contend that the Third

10   Circuit has established a post-hoc analysis for purposes of

11   due process.  We disagree with that contention.

12             What the Court of Appeals did in Grossmans was all

13   it could do, which is having concluded that at the time that

14   the debtors entered the bar date notice the bar date notice

15   due process determination appeared correct based upon what

16   they knew at the time, but the court was concerned about

17   whether that particular future asbestos claimant had

18   received due process, and that issue was remanded to the

19   district court.

20             In New Century, Your Honor, Judge Robinson

21   specifically says:

22             "The Court concludes that the adequacy of the

23   notice provided in this case has not been meaningfully

24   explored and likely was not reasonably calculated to apprise

25   appellants of the bar date.

1          The Court concludes that due process affords a

2     redo under the circumstances of this case."

3          Your Honor, at the first hearing the Court said

4     that it believed that it needed to make at least a

5     preliminary determination that due process could be

6     satisfied in connection with the entry of a bar date.  We

7     agree with that, that the Court is required to make up front

8     a determination with respect to whether or not it is

9     possible, consistent with due process, to notice

10    unmanifested future claims, and whichever way the Court

11    rules it will be the first ruling of record on this issue.

12          I'd like to conclude, Your Honor, with reference

13    to two decisions out of the Southern District of New York

14    and the Second Circuit.

15          In the case of Gremon (ph) Olson Industries, Your

16    Honor, the court concluded "that because parties holding

17    future claims cannot possibly be identified and thus cannot

18    be provided with notice of the bankruptcy, courts

19    consistently hold that for due process reasons their claims

20    cannot be discharged by Bankruptcy Court orders."

21          In that case, Your Honor, there's a discussion of

22    Johns Mansville Corp. case out of 2010 before the Second

23    Circuit, and I want to end by quoting that language, Your

24    Honor.

25          "In Johns Mansville the Second Circuit rejected

1    the argument that bankruptcy provides a special remedial

2    scheme that creates an exception to the principal of general

3    application in Anglo-American jurisprudence that one is not

4    bound by a judgment in personam in a litigation in which he

5    is not designated as a party or to which he has not been

6    made a party by service of process.

7              As the court explained, the Supreme Court has

8    previously held that where a special remedial scheme exists

9    expressively foreclosing successive litigation by non-

10   litigants as for example in bankruptcy or probate, legal

11   proceedings may terminate preexisting rights but only if the

12   scheme does not -- is otherwise consistent with due

13   process."

14             Quoting Marcus versus Wilks (ph).

15             Thank you, Your Honor.

16             THE COURT:  Thank you.

17             MR. HUSNICK:  Your Honor, I'll be very brief, just

18   a couple points.

19             First, just addressing the fact that this is not

20   extraordinary relief.  Debtors seek bar dates in almost

21   every single case.  I gave you a list of cases where

22   asbestos claims had been scheduled.  I personally worked on

23   the Masonite case where we brought -- I believe we received

24   like 3,500 claims and we ultimately emerged from bankruptcy

25   and dealt with them through the claims process through the

```
1    claims objection process.  So to say, Your Honor, that

2    there's never been a case where there's been a bar date and

3    known asbestos liabilities is simply untrue.

4              Nothing in 3003 distinguishes by the way cases

5    where a debtor is aware of the potential for asbestos

6    liability from cases where the debtor is not aware.

7              So all of the attempts to distinguish the cases

8    like Placid Oil and the other cases that we reference where

9    courts have addressed this issue are simply distinctions

10   without a difference.

11             The post-hoc analysis is appropriate, and that's

12   exactly what the District Court held in New Century.

13             And, Your Honor, finally I just want to address

14   524(g), because I think one issue that's -- that's ripe in

15   the court today is well, if the bar date works and 524(g)

16   works then why would one pursue one over the other?  And I

17   think the answer is pretty clear.  Section 524(g) is a

18   procedural safe harbor that the debtors can use to take --

19   to effectively address with finality any due process

20   concerns.

21             The decision in W.R. Grace, and this is the Third

22   Circuit decision, effectively concluded that claims are

23   subsumed by the term demands under Section 524(g).  So I

24   always draw this little chart demands are greater than

25   claims.  And that's relevant because in the language of
```

1    524(g), and if you actually satisfy all of the procedural

2    hurdles under 524(g), you pick up that entire body of claims

3    that Your Honor when you asked me why I was using the term

4    future versus unmanifested, and I'm very happy that you

5    pointed that out to me, because in a 524(g) circumstance not

6    only would unmanifested claims get picked up, but future

7    claims would get picked up as well, and that's why Congress

8    implemented 524(g), to give debtors a procedural safe

9    harbor.

10         But, Your Honor, again, just the final thing I'll

11   say, there is nothing in the plain language of 524(g) that

12   says that that's the only mechanism by which a debtor can

13   deal with asbestos liability.  They may be taking some

14   procedural due process risk in that post-hoc challenge, but

15   there's nothing that says it's exclusive.

16         With that, Your Honor, I'm done, unless you have

17   any questions.

18         THE COURT:  I do not.  Thank you.

19         All right, I'm going to take a recess before I

20   rule on -- on this issue.

21         Before I do that do we have something we can put

22   on the record on the other open issues?  Mr. Gilhuly?

23         MR. GILHULY:  Thank you, Your Honor.

24         Your Honor, we had a long discussion in the

25   hallway with both the U.S. trustee representatives.  We've

1   understood for some time that they had serious issues on our

2   327 application.  Tried to work them out with them, and I

3   thank them for their professionalism in that process.

4           We decided the best cause -- course of action for

5   us was to withdraw our application and proceed as a vendor

6   for the IT and securities services that we believe are not

7   -- don't constitute professional or personal services.

8   Those services are identified in the statements of work

9   which have been attached to our application, and we've

10  discussed them with the U.S. Trustee.

11          We understand that to the extent that we deviate

12  from the services identified in that application, that the

13  U.S. Trustee reserves all of its rights.

14          But that's how we're going to proceed forward, and

15  I believe the matter is resolved with that.

16          THE COURT:  All right.  Any further comment?  All

17  right, I hear none.  Fine.  Thank you.

18          How are we on the order?  The Deloitte.

19          MR. SCHARTZ:  Your Honor, Brian Schartz for the

20  debtors.

21          We are very close on the order.  I think what

22  we'll do is just finish the discussion with Ms. Schwartz

23  after this hearing and we'll submit it to the clerk through

24  Richards, Layton.

25          THE COURT:  Through certification?

1          MR. SCHARTZ:  Yeah, exactly.

2          THE COURT:  Okay.  That's --

3          MS. SCHWARTZ:  It's just two minor changes, Your

4    Honor.

5          THE COURT:  Okay.  That's fine.  Okay.

6          All right, we'll take a short recess then.

7      (Recess at 1:06 p.m.)

8          THE CLERK:  All rise.

9          THE COURT:  Please be seated.

10         I'm trying to think how to put it.  In a -- you

11   know, you thought you were going to get an answer and you're

12   not, so that's -- I'm going to disappoint everybody.  I'm

13   going to take the matter under advisement.  And once I

14   decide on that I will, if necessary, we'll go to step two,

15   which will be what the actual procedures would be.

16         So, I'm going to take the matter under advisement.

17         UNIDENTIFIED SPEAKER:  Thank you, Your Honor.

18         THE COURT:  You're welcome.

19         UNIDENTIFIED SPEAKER:  Thank you.

20         THE COURT:  Anything else?  Very good, thank you.

21         We're adjourned.

22      (A chorus of thank you)

23      (Whereupon, these proceedings concluded at 1:24 p.m.)

24

25                         * * * * *

Page 53

1                    C E R T I F I C A T I O N

2

3    I, Dawn South, certify that the foregoing transcript is a

4    true and accurate record of the proceedings.

5

6    Dawn South    Digitally signed by Dawn South
                   DN: cn=Dawn South, o=Veritext, ou,
                   email=digital@veritext.com, c=US
                   Date: 2014.10.29 15:22:47 -04'00'
     _____

7

8    Dawn South

9    AAERT Certified Electronic Transcriber CET**D-408

10

11   Veritext

12   330 Old Country Road

13   Suite 300

14   Mineola, NY 11501

15

16   Date:  October 28, 2014

17

18

19

20

21

22

23

24

25