## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| *In re*: | : | Chapter 11 |
| | : | |
| ENERGY FUTURE HOLDINGS | : | Case No. 14-10979 (CSS) |
| CORP., *et al.*, | : | |
| | : | Jointly Administered |
| | : | |
| Debtors. | : | **Hearing Date: November 20, 2014 at 12:00 p.m.** |
| | : | **Objections Due: October 30, 2014 by 4:00 p.m.** |
| | : | **Objection due date extended through November** |
| | : | **14, 2014 for the U.S. Trustee** |

**UNITED STATES TRUSTEE'S OBJECTION TO THE DEBTORS' RETENTION OF PRICEWATERHOUSECOOPERS LLP AS AN ORDINARY COURSE PROFESSIONAL PURSUANT TO THE ORDER AUTHORIZING THE RETENTION AND COMPENSATION OF CERTAIN PROFESSIONALS UTILIZED IN THE ORDINARY COURSE OF BUSINESS (D.I. 765, 2478)**

In support of her Objection to the Debtors' Retention of PricewaterhouseCoopers ("PwC") as an Ordinary Course Professional Pursuant to the Order Authorizing the Retention and Compensation of Certain Professionals Utilized in the Ordinary Course of Business (D.I. 765, 2478),[1] Roberta A. DeAngelis, the United States Trustee for Region 3, by counsel, respectfully states as follows:

### I. JURISDICTION AND PROCEDURAL HISTORY

1.      The Court has jurisdiction to hear this Objection.

2.      Pursuant to Section 586 of title 28, U.S. Code, the U.S. Trustee is charged with overseeing the administration of Chapter 11 cases filed in this District. 11 U.S.C. § 586. Under Section 586 and Section 307 of the Bankruptcy Code, Congress charged the U.S. Trustee with broad responsibilities in Chapter 11 cases and the standing to rise and be heard on any issue in

---

[1] Unless otherwise defined herein, capitalized terms shall have the same meaning and context as those capitalized terms included in the OCP Motion, OCP Order and the Declaration of Disinterestedness of PwC submitted therewith.

any case or proceeding. 11 U.S.C. § 307; *see also United States Trustee v. Columbia Gas Sys., Inc. (In re Columbia Gas Sys., Inc.),* 33 F.3d 294, 295-96 (3d Cir. 1994) (the U.S. Trustee has "public interest standing" under 11 U.S.C. § 307, which goes beyond mere pecuniary interest).

3.      Pursuant to 11 U.S.C. § 307, the U. S. Trustee has standing to be heard with regard to the above-referenced Objection.

## II. PRELIMINARY STATEMENT

4.      In these cases, the Debtors are seeking to retain PwC as an ordinary course professional ("OCP") to perform certain internal audit services and information security services for the Debtors in these cases while simultaneously working for and representing the TCEH First-Lien Lenders, a key creditor constituency, providing them with certain tax and restructuring advisory services related to these cases. Despite the OCP moniker, PwC is representing a party with an interest adverse to the estate. It is not possible for PwC to maintain undivided loyalty and exclusive allegiance to the Debtors while providing representation and service to a creditor in these cases.

## III. FACTS

*A.      Background.*

5.      On April 29, 2014, the Debtors commenced these Chapter 11 cases.

6.      According to Paul Keglevic, the Executive Vice President, Chief Financial Officer, and Co-Chief Restructuring Officer of Energy Future Holdings Corp. ("EFH Corp."), the Debtors are the largest generator, distributor, and retail electricity provider in Texas. *See* Declaration of Paul Keglevic, Executive Vice President, Chief Financial Officer, and Co-Chief Restructuring Officer of EFH Corp., e*t al.*, in Support of First Day Motions dated April 29, 2014 ("Keglevic Declaration") at ¶ 6. (D.I. 98).

2

B.      *The Debtors' Corporate Structure.*

7.      EFH Corp. is the parent company of each of the entities that compose EFH, including: (a) the entities composing TCEH (including TCEH's parent company, EFCH); (b) EFIH; (c) non-debtor Oncor Holdings (which is 100% owned by EFIH), Oncor, (which is approximately 80% owned by Oncor Holdings), and certain subsidiaries and affiliates of Oncor Holdings and Oncor; and (d) certain of EFH Corp.'s other direct and indirect debtor and non-debtor subsidiaries. *Id.* at ¶ 19.

8.      EFIH is a holding company and a direct, wholly-owned subsidiary of EFH Corp. *Id.* at ¶ 53. EFIH's primary asset is its 100% ownership of Oncor Holdings. *Id.* at ¶ 53. EFIH has no active business operations, and its capital structure is premised on the value derived from its indirect ownership of Oncor. *Id.* at ¶ 53.

9.      EFCH is a Delaware limited liability company and the direct parent of TCEH. *Id.* at ¶ 1. TCEH is composed of: (a) the TCEH Debtors, including TCEH LLC; TCEH LLC's direct parent, EFCH; and most of the entities that compose TCEH, including the entities that compose Luminant's electricity generation, mining, commodity risk management and trading activities, and wholesale operations, TXU Energy and the other entities that compose the Debtors' retail operations, and TCEH Finance, Inc.; and (b) certain other entities that are not obligated on the TCEH Debtors' funded indebtedness. *Id.* at ¶ 22. TCEH's business operations also depend on certain services that are provided by EFH Corporate Services Company, a subsidiary of EFH Corp., which acts as a shared-services center for Luminant and TXU Energy. *Id.* at ¶ 22.

10.     EFH Corporate Services Company provides a host of shared services, primarily to TCEH (*i.e.*, Luminant and TXU Energy) and, to a lesser extent, EFH Corp., EFIH, and Oncor. *Id.* at ¶ 45.

3

**C.**     ***The PricewaterhouseCoopers' Professional Retention Application.***

11.     On May 29, 2014, the Debtors filed a number of professional retention applications including an application to retain PwC as Internal Audit, Information Security, and Tax Consultants (D.I. 654) (the "Application").[2]

12.     According to the Application, PwC has been providing many of the services, as identified in the Application, since 2009. In particular, since December 2013, PwC has provided many of these services to the Debtors in connection with their restructuring efforts. Application at ¶ 8. PwC's services include (a) internal audit services, internal audit assurance services, internal audit consulting services and Sarbanes-Oxley services, (b) information security services, and (c) federal individual income tax review, preparation and planning and financial planning services to certain members of the Debtors' senior management. Application at ¶ 9.

13.     On or about March 8, 2013, PwC was retained by Paul, Weiss, Rifkind, Wharton & Garrison LLP ("Paul Weiss") to provide tax and restructuring advisory services in connection with Paul Weiss' representation of certain first-lien TCEH lenders (the "TCEH First-Lien Lender Representation") and PwC has continued to provide such services since the Petition Date. The Application also states that the Debtors (a) have been aware of the TCEH First-Lien Lender Representation since its inception, (b) have waived any potential conflict in connection with the TCEH First-Lien Lender Representation, (c) believe that the TCEH First-Lien Lender Representation is unrelated to the Internal Audit Services and the Information Security Services

---

[2] With respect to accounting professionals, in addition to the Debtors' Application to Retain PWC as the Debtors' Internal Audit, Information Security, and Tax Consultants, the Debtors also filed an Application to Retain KPMG LLP as the Debtors' Bankruptcy Accounting and Tax Advisors (D.I. 652), an Application to Retain Ernst & Young LLP as the Debtors' Providers of Tax Advisory and Information Technology Services (D.I. 655) and an Application to Retain Deloitte & Touche LLP as the Debtors' Independent Auditors (D.I. 656).

being provided by PwC to the Debtors, (d) understand that the PwC personnel providing services

to the Debtors are not the same personnel engaged on the Lender Representation, that (e) PwC

has and will continue to maintain strict confidentiality in accordance with certain policy with

respect to the services provided, and that (f) PwC has erected an ethical wall between those

professionals who are providing services to the Debtors and those who are providing services to

the first-lien TCEH lenders. Application at ¶¶ 25-27.

14.     On October 30, 2014, the Debtor's withdrew the Application without prejudice.

(D.I. 2555).

**D.      *The Ordinary Course Professional Motion, Order and Declaration.***

15.     On May 19, 2014, the Debtors filed the Motion for Entry of an Order Authorizing

the Retention and Compensation of Certain Professionals Utilized in the Ordinary Course of

Business (the "OCP Motion")(D.I. 506), seeking, among other things, entry of an order

authorizing, but not directing, the Debtors to retain and compensate certain law firms, attorneys,

accountants, consultants, and other non-attorney professionals utilized in the ordinary course of

business (the "OCPs") in accordance with certain compensation procedures. (the "OCP

Procedures"). OCP Motion at ¶ 4.[3]

16.     The OCP Motion and OCP Procedures were established in order to provide a

streamlined process for the retention and compensation of OCPs. OCP Motion at ¶ 9. In

particular, among the reasons cited for establishing such OCP Procedures are that:

_____

[3] As set forth in the OCP Motion, the legal and statutory bases underlying the relief requested in the OCP Motion are sections 327, 328, and 330 of the Bankruptcy Code, as well as Federal Rule of Bankruptcy Procedure 2014 and Local Bankruptcy Rule 2014-1. OCP Motion at ¶ 3.

- The Debtors employ over 100 OCPs, consisting of various law firms, attorneys, accountants, consultants, and other non-attorney professionals used in the ordinary course of their businesses. OCP Motion at ¶ 6.

- The OCPs provide services to the Debtors in a variety of matters unrelated to these chapter 11 cases, including specialized legal advice, litigation services, and business advisory services relating to, among other things, corporate, litigation, financial, tax, regulatory, human resources, and environmental matters. OCP Motion at ¶ 6.

- The OCPs may not continue to represent the Debtors on an ongoing basis if they cannot be compensated on a regular basis. OCP Motion at ¶ 7.

- The Debtors do not believe that the OCPs are "professionals" requiring formal retention proceedings under section 327(a) of the Bankruptcy Code. OCP Motion at ¶ 15.

- The OCPs will provide services in connection with the Debtors' ongoing business operations, which services are ordinarily provided by non-bankruptcy professionals. OCP Motion at ¶ 15.

- The OCP procedures provide clarity and an opportunity for oversight, as well as a definitive mechanism for the retention and payment of the OCPs. OCP Motion at ¶ 15.

- It would be impractical, inefficient, and extremely costly for the Debtors and their legal advisors to prepare and submit individual applications and proposed retention orders for each OCP given the large number of OCPs and the significant costs associated with the preparation of retention applications under sections 327, 328, and 330 of the Bankruptcy Code for OCPs who will receive relatively modest fees. OCP Motion at ¶ 16.

- Although some of the OCPs may hold unsecured claims against the Debtors in connection with services rendered to the Debtors prepetition, the Debtors do not believe that any of the OCPs hold interests materially adverse to the Debtors, their creditors, or other parties in interest. OCP Motion at ¶ 17.

17.    On October 16, 2014, the Debtors filed a Declaration of Disinterestedness of PwC

Pursuant to Order Authorizing the Retention and Compensation of Certain Professionals Utilized

in the Ordinary Course of Business (D.I. 765, 2478) seeking to retain PwC as an "ordinary

course professional".

18.    In the Declaration of Disinterestedness, PwC states that:

> Prior to the Petition Date, pursuant to an engagement letter
> dated March 8, 2013 (the "Lender Engagement Letter"),
> the Company was retained by Paul, Weiss, Rifkind, Wharton &
> Garrison LLP to provide tax and restructuring advisory services
> (the "Lender Representation") in connection with Paul
> Weiss's representation of certain first-lien lenders under that
> certain Credit Agreement, dated as of October 10, 2007, by
> and among TCEH, as borrower, EFCH and certain of its
> subsidiaries, as guarantors, and Citibank, N.A., as
> administrative agent. The Company has continued to provide
> such services since the Petition Date. I understand that both
> the Debtors have been aware of the Lender Representation since
> its inception and previously consented thereto and waived any
> potential conflict in connection therewith. I understand further
> that the Lenders are also aware of PwC's retention by the
> Debtors, and, subject to PwC maintaining the limitations on
> sharing information regarding the Lender Representation set
> forth in the Lender Engagement Letter, have waived any
> potential conflict that would preclude PwC from
> performing the Services.

Declaration of Disinterestedness at ¶ 4.

## IV. LAW AND ANALYSIS

Federal Rule of Bankruptcy Procedure 2014 sets forth the procedural requirements for an

application for employment as a professional for the debtor in possession. The substantive

requirements for employment are contained in 11 U.S.C. § 327. As a procedural matter,

Bankruptcy Rule 2014 requires the applicant to:

state the specific facts showing the necessity of employment, the name of the person to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and to the best of the applicant's knowledge, all of the person's connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee or any person employed in the office of the United States trustee.

Fed. R. Bankr. 2014.

Section 327(a) of the Code provides that:

Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

11 U.S.C. § 327(a).

Section 327(a) only allows the debtor in possession to employ professional persons that "do not hold or represent an interest adverse to the estate", and that are "disinterested persons." One court has described Section 327(a) as "a prophylactic provision designed to insure that the undivided loyalty and exclusive allegiance required of a fiduciary to an estate in bankruptcy is not compromised or eroded." *In re Prudent Holding* Corp., 153 B.R. 629, 631 (Bankr. E.D.N.Y. 1993).

The Third Circuit has stated that a professional person has an interest adverse to the estate "when counsel has a competing economic interest tending to diminish estate values or create a potential or actual dispute in which the estate is a rival claimant." *See U.S. Trustee v. First Jersey Secs.*, 180 F.3d 504, 509 (3d Cir. 1999) (internal quotations omitted). Any professional person that does not meet both the "no adverse interest" and the "disinterested person" tests is disqualified from employment under Section 327(a). *See In re BH&P Inc.*, 949

8

F.2d 1300, 1314 (3d Cir. 1991) (Section 327(a) "creates a two-part requirement for retention of

counsel"). Thus, a professional who holds or represents an adverse interest is *per se* disqualified.

However, a professional who does not hold or represent an adverse interest is nevertheless

disqualified unless he or she is deemed a "disinterested person" as set forth in 11 U.S.C. §

101(14). *See, e.g.*, *U.S. Trustee v. Price Waterhouse*, 19 F.3d 138, 141-142 (3d Cir. 1994)

(holding disqualified because not disinterested); *Michel v. Eagle-Picher Indus., (In re Eagle-*

*Picher Indus.)*, 999 F.2d 969, 972 (6th Cir. 1993) (holding that a professional can lack

disinterestedness without having an adverse interest).

For example, In *In re Congoleum Corp.*, 426 F.3d 675 (3d Cir. 2005), the Third Circuit

found that a certain law firm had acted in violation of the Rules of Professional Conduct and was

not "disinterested" as required by Code § 327(a). A large part of the firm's conflict was found

that while representing Congoleum, the firm had actively participated in settlement negotiations

concerning asbestos claimants while simultaneously representing some of those asbestos

claimants (through its co-counsel relationship with another law firm). *Id*. at 690.  The Third

Circuit discussed how the representation of Congoleum by the law firm was adverse to the

interests of the asbestos claimants that it also represented.  *Id.* at 690-91. The law firm was

disqualified from representing the Debtors in Congoleum. *Id.* at 694.

PwC's retention also fails under Section 327(c). Section 327(c) provides: "In a case under

chapter . . . 11 of this title, a person is not disqualified for employment under this section solely

because of such person's employment by or representation of a creditor, unless there is objection

by another creditor or the United States trustee, in which case the court shall disapprove such

employment if there is an actual conflict of interest."  11 U.S.C. § 327(c).  Because there is an

9

actual conflict of interest here, the Court must disapprove PwC's proposed employment. *In re Project Orange Assocs., LLC*, 431 B.R. 363, 371 (Bankr. S.D.N.Y. 2010) ("The statute, however, *requires* disqualification of a professional following an objection from the U.S. Trustee or a creditor where there is an actual conflict of interest.").

An actual conflict of interest exists when a professional represents multiple parties that have opposing interests. *See Congoleum*, 426 F.3d at 690; *In re CVC, Inc.*, 120 B.R. 874, 877 (Bankr. N.D. Ohio 1990) (holding that an actual conflict existed when an accountant undertook dual representation of the debtor and a potential third party purchaser, "While the objective of [the debtor] would be to maximize profits for the [d]ebtor's estate in a sale, [the purchaser], on the other hand, would attempt to purchase [the debtor] at a price most advantageous to himself."). Here PwC seeks to be retained by the Debtors when it has been working for the TCEH First-Lien Lenders for over a year and a half and PwC will continue to do so at the Debtors' expense. The TCEH First-Lien Lenders seek to maximize their recovery, while the Debtors', under their fiduciary obligations, are charged with acting in the best interests of the entire bankruptcy estate. PwC has an actual conflict by representing a party with interests that are adverse to the Debtors' estates.

Even if an actual conflict of interest did not exist, the Court has wide discretion to deny the retention due to the potential for such conflicts to arise in the future. *BH&P, Inc.*, 949 F.2d at 1316-17 ("denomination of a conflict as 'potential' or 'actual' and the decision concerning whether to disqualify a professional based upon that determination in situations not yet rising to the level of an actual conflict are matters committed to the bankruptcy court's sound exercise of discretion."). Moreover, the disqualification in this case is not solely because of PwC's

representation of a creditor, but rather PwC is actually representing that creditor by providing services in these cases to the TCEH First-Lien Lenders whose interests are directly and significantly adverse to the bankruptcy estates.

In these cases, PwC is a professional performing certain internal audit services and information security services for the Debtors in these cases while simultaneously performing tax and restructuring advisory services for the TCEH First-Lien Lenders, a key creditor constituency in these cases. PwC is representing a party with an interest adverse to the estate. It is not possible for PwC to maintain undivided loyalty and exclusive allegiance to the Debtors while providing the TCEH First-Lien Lenders, a party adverse to the Debtors in these cases, with tax and restructuring advisory services. PwC represents an interest adverse to the estate, and as such is disqualified from employment by the Debtors in these cases.[4]

The fact that PwC's retention is now being sought under the OCP Order and OCP Procedures does not obviate the statutory requirements of 11 U.S.C. § 327(a). Despite the method and avenue sought to secure PwC's retention, the fact remains that PwC is representing a party with an interest adverse to the estate. The OCP Procedures were designed to minimize and reduce the substantial costs and cumbersome administrative burdens associated with the plethora of retention applications that would otherwise be filed and considered for the OCPs that the

---

[4] PwC does not qualify as a Section 327(e) professional because it is not an attorney. Section 327(e) provides that a debtor-in-possession may employ, for a specified special purpose, other than to represent the debtor-in-possession in conducting the case, an attorney that has represented the debtor, if in the best interest of the estate, and if such attorney does not represent or hold any interest adverse to the debtor or to the estate with respect to the matter on which such attorney is to be employed.

Debtors would seek to employ. But however, such procedures do not obviate applicability of Section 327 of the Bankruptcy Code.

## V. RESERVATION OF RIGHTS

The U. S. Trustee reserves and any all rights, remedies and obligations to, *inter alia*, complement, supplement, augment, alter, substitute and/or modify this Objection, file a Motion and conduct any and all discovery as may be deemed necessary or as may be required and to assert such other grounds as may become apparent.

WHEREFORE, the U.S. Trustee respectfully requests that this Court deny the retention or employment by the Debtors of PricewaterhouseCoopers as an ordinary course professional and grant such other and further relief as this Court deems just and appropriate.

Respectfully submitted,

**ROBERTA A. DeANGELIS**
**UNITED STATES TRUSTEE**

By: */s/Richard L. Schepacarter*
      Richard L. Schepacarter
      Trial Attorney
      U.S. Department of Justice
      Office of the United States Trustee
      J. Caleb Boggs Federal Building
      844 N. King Street, Suite 2207, Lockbox 35
      Wilmington, DE 19801
      (302) 573-6491 (Tel.)
Dated: November 14, 2014      (302) 573-6497 (Fax)