IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| _____ ) | | |
| In re: | ) | Chapter 11 |
| | ) | |
| Energy Future Holdings Corp., et al., | ) | Case No. 14-10979 (CSS) |
| | ) | |
| Debtors.[1] | ) | (Jointly Administered) |
| | ) | Obj. Deadline:  Nov. 14, 2014 @ 4:00 p.m. |
| | ) | (by agreement) |
| _____ | ) | Hearing Date: Nov. 20, 2014 at 12:00 p.m. |

### Tarrant Regional Water District's Objection to Motion of Energy Future Holding Corp., *et al.*, for Entry of an Order Authorizing Luminant Generation Company, LLC to Reject a Water Contract with Tarrant Regional Water District, Effective Nunc Pro Tunc to the Petition Date

Tarrant Regional Water District ("TRWD") files this Objection to the Debtors' Motion for an order authorizing Luminant Generation Company, LLC ("Luminant") to reject a water contract with TRWD (Docket No. 2662).

### Summary

Luminant built a dam across a creek and is impounding water that would otherwise be flowing into Cedar Creek Reservoir as part of the domestic water supply of the State of Texas. Luminant has up to now had a permit to impound that water because of the contract it has breached, claims to have terminated, and now wishes to reject. Luminant has not shown the Court that it has analyzed the

---

[1] The last four digits of Energy Future Holdings Corporation's tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, for which the debtors have requested joint administration, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' proposed claims and noticing agent at http://www.efhcaseinfo.com.

effect of the proposed rejection, which would include losing the water rights and permits, and being required to remove the dam to return the creek to its natural flow. As Debtors have failed to show that an informed business judgment has been made, their Motion should be denied. In any event, TRWD is filing a Motion to Lift Stay so that it can begin the state administrative process to reallocate the water back to TRWD. At the end of this process, Debtors will be better able to show the Court the effect of the proposed rejection.

**Factual Background**

1.      TRWD is a political subdivision of the State of Texas tasked with, among other things, the paramount and fundamental role of providing water for the benefit of millions of citizens.[2] TRWD is one of the largest raw water providers in the State of Texas. It provides water to nearly 2 million residents through more than 30 wholesale customers that include cities and other governmental entities.

2.      TRWD built and maintains Cedar Creek Reservoir in Henderson County, Texas. The Reservoir is an important water source in East Texas and North Texas.

3.      One of the natural sources of water for Cedar Creek Reservoir is Caney Creek. TRWD has the right to water flowing from Caney Creek into Cedar Creek Reservoir.

4.      TRWD's use of water for the domestic water supply is a primary and fundamental purpose under Texas law and public policy. Tex. Water Code §

---

[2] Declaration of Dan Buhman, which is being filed contemporaneously herewith and which is incorporated herein for all purposes.

11.033. Under Texas law, all surface water in Texas is property of the State once it enters a watercourse. Tex. Water Code § 11.021. One can obtain a water right from the State to use the surface water, in accordance with Chapter 11 of the Water Code, but this only grants a usufructuary right to the water (i.e., only a right to use of the property).

5.      The right to the waters of Caney Creek flowing into Cedar Creek and Cedar Creek Reservoir were previously granted to TRWD under Permit No. 1909.

6.      In 1976, well after TRWD was granted this water right, it entered into a contract with Luminant's predecessor in interest. This 1976 contract is the one the Debtors now seek to reject. Under the 1976 contract, Luminant must pay an annual fee to TRWD, in exchange for which TRWD grants to Luminant (1) the right to install and maintain a dam on Caney Creek so that Luminant could construct a reservoir, known as Forest Grove Reservoir, to be used in connection with a steam electric generating station; (2) the right to divert run-off from Caney Creek that would otherwise flow into Cedar Creek Reservoir; and (3) a continuing right to divert, use, and consume up to 7,000 acre-feet of water per year (but not to exceed 12,000 acre-feet in a consecutive four-year period) after the first impoundment of water in Forest Grove Reservoir.[3]

7.      However, under the water rights allocation process of Texas law, Luminant needs not only the contract but also a permit from the State to use the

---

[3] A copy of the contract is attached as Exhibit "A" to the Declaration of Dan Buhman.

water. The state agency now in charge of this process is the Texas Commission on Environmental Quality ("TCEQ").

8.     Because of the contract — and solely because of the contract — Luminant obtained a permit from the Texas Water Rights Commission (TCEQ's predecessor) to divert and impound water from Caney Creek. Specifically, Luminant obtained Contractual Permit No. CP-341,[4] which states among other things:

> . . . this permit to use State Water is issued to [Luminant] based on a contract dated March 15, 1976, with [TRWD], owner of Permit No. 1909, which authorizes the use of water granted by this permit.
> ***
> [Luminant] is authorized to divert and use not to exceed 12,000 acre-feet of water per annum . . . from Cedar Creek Reservoir, as authorized by Permit No. 1909, for industrial purposes.
> ***
> [Luminant] is authorized to intercept, impound and divert such amounts of the runoff of Caney Creek which will reduce the firm yield of Cedar Creek Reservoir by 5765 acre-feet of water per annum and use the said water for industrial purposes.
> ***
> **_This permit shall expire upon termination of the contract._**  [emphasis added]

In other words, Luminant has a permit to divert water that otherwise TRWD would have the right to acquire for the domestic water supply, but that permit expires when the contract is terminated.

---

[4] A copy of Contractual Permit No. CP-341 is attached as Exhibit "B" to the Declaration of Dan Buhman.

9.      Based solely on the existence of the contract and Contractual Permit

No. CP-341, Luminant was able to obtain Permit No. 3270 from the Texas Water

Rights Commission to construct a dam across Caney Creek.[5] That Permit states in

part:

> [Luminant] is authorized to construct . . . a dam and reservoir on Caney Creek and impound therein not to exceed 20,038 acre-feet of water at elevation 359 feet above man sea level.
>
> ***
>
> [Luminant] may impound in said reservoir not to exceed 16,348 acre-feet per annum from the runoff of Caney Creek. [Luminant's] impoundment and use of Caney Creek runoff will reduce the firm yield of the Cedar Creek Reservoir by 5,765 acre-feet of water per annum, the right to said firm yield being purchased under contract with [TRWD] and authorized by Contractual Permit No. CP-341.
>
> ***
>
> [Luminant] may also impound in said reservoir and divert and use therefrom the water authorized by Contractual Permit No. CP-341.
>
> ***
>
> This permit is issued subject to Contractual Permit No. CP-341 based on a contract between [Luminant] and [TRWD]. It is specifically provided that [the uses granted in the Permit are] subject to this provision.

In other words, Luminant was authorized to construct a dam across Caney Creek

to impound water to form a reservoir, but the right is subject to the Contractual

Permit and therefore, as with the Contractual permit, it expires when the contract

is terminated.

---

[5] A copy of Permit No. 3270 is attached as Exhibit "C" to the Declaration of Dan Buhman.

10.    So when the contract terminates, Luminant's permits (and water rights) expire. Under Texas law, an administrative process with TCEQ becomes necessary to reallocate the water rights back to TRWD.

11.    After obtaining the above permits, Luminant constructed a dam across Caney Creek and impounded its waters to form Forest Grove Reservoir, and then it began construction of the steam electric generating station. Luminant admitted as much when it obtained an adjudication of the water rights in a Texas state judicial proceeding in 1985. The Final Decree that Luminant obtained includes these findings:

> [Luminant has] constructed a dam located at diversion point D-1080, which is the authorized location on Caney Creek, tributary of Cedar Creek . . . . The reservoir created by this dam is known as Forest Grove Reservoir.
>
> ***
>
> [Luminant has] begun construction of the power plant, Forest Grove Steam Electric Station. It has been projected that it would be fully operational by 1991.
>
> ***
>
> The impoundment of water in Forest Grove Reservoir began on April 21, 1980. Since that time 3248 acre-feet has been impounded in the reservoir.
>
> ***
>
> [Luminant is] recognized a right under Permit No. 3270 to maintain a dam and reservoir at D-1080 on Caney Creek . . . .
>
> ***
>
> [Luminant may] impound in said reservoir not to exceed 16,348 acre-feet of water per year from the runoff of Caney Creek. [Luminant's] impoundment and use of Caney Creek runoff will reduce the firm yield of Cedar Creek Reservoir by

> 5765 acre-feet of water per year, the right to the said firm yield being purchased under contract with [TRWD] . . . ."
>
> ***
>
> [Luminant's] rights under Permit No. 3270 are subject to the Special Conditions contained in the permit.[6]

In short, Luminant constructed a dam and diverted water from Caney Creek to create Forest Grove Reservoir, began construction of the electric generating station, and obtained judicial approval to do so subject to the conditions in the permit. The conditions, as shown above, included the fact that the permit ceases to exist when the contract is terminated.

12.    It is also a physical fact that the dam was constructed, has impounded the waters of Caney Creek to create Forest Grove Reservoir, and is still impounding water to this day. Here is a photo of the area in which Debtors contend that Luminant has never diverted or impounded water from Caney Creek:

---

[6] A certified copy of this decree is attached as Exhibit "D" to the Buhman Declaration. The quotations are on page 22 of the listing attached to the decree.



This photograph depicts the dam that Luminant constructed on Caney Creek and the substantial impoundment it has undertaken to create Forest Grove Reservoir. It also shows the natural flow of Caney Creek, which is behind Luminant's dam, in the foreground of the photo, meandering into the trees. Obviously Luminant has diverted water from Caney Creek, is impounding water from it, and has not restored the creek's natural flow.

13.    The conditions depicted in the above photo still exist to this day. A simple Google Earth search for "Forest Grove Reservoir Texas" shows as much. Also, Debtors nowhere in their Motion contend that Luminant has removed the dam or otherwise restored Caney Creek to its natural flow. And to the best of TRWD's knowledge, the condition has not been remedied.

14. Forest Grove Reservoir loses water each year through evaporation. The Reservoir is replenished by the dam's continued diversion and impoundment of water from Caney Creek.

15. As Debtors acknowledge in their Motion, the 1976 contract has a procedure that allows for cancellation of the payment requirement before the 2016 termination date. As Luminant admitted to the Texas state court in 1985, it began construction of the electric generating station. Therefore, this is the cancellation provision that applies:

> ***In the event of abandonment of the steam-electric generating station or stations***, it is agreed that the payment required for the use of water . . . will be waived or cancelled for the unexpired portion of the contract period, provided that [Luminant] shall have made written request for such payment cancellation not less than one year in advance of the cancellation date, ***and [Luminant] has restored the natural flow of Caney Creek and its watershed into Cedar Creek***. [emphasis added]

This provision is perfectly rational. If Luminant ceases to pay for the right to divert water, then that water must be returned to the domestic water supply of Texas.

16. Debtors do not state in their Motion that Luminant has abandoned the station. Rather, they contend that work on the station never began. Also, Debtors do not state in their Motion that Luminant has restored the natural flow of Caney Creek and its watershed into Cedar Creek. This is because Luminant has not done so. Therefore, the alleged termination of the contract discussed in

Debtors' Motion was simply invalid. There is no legitimate dispute of this fact. This is the basis of the Proof of Claim TRWD filed on this issue.

17.     Also, as is show above, if the contract is terminated or rejected (or is breached), then Luminant's water rights permits expire, meaning that TRWD is entitled to have the TCEQ reallocate the water rights back to TRWD and to have the dam removed. TRWD is filing a Motion to Lift Stay so that this procedure can be undertaken.

18.     Meanwhile, Luminant is continuing to divert water — before and after filing the bankruptcy petition and continuing to this day — that should be flowing into Cedar Creek Reservoir for the benefit of Texas residents. Luminant stopped paying for the right to divert this water years ago, as is show in TRWD's Proof of Claim (of which TRWD requests the Court to take judicial notice). Even if Luminant validly terminated the contract (which it obviously did not), it is not entitled to continue its wrongful, post-petition, diversion of water to which it has no right.

19.     Luminant is now asking the Court to permit it to reject the contract so that it does not have to pay any money while at least tacitly asking the Court to permit it to continue taking water that it has no right to take. Debtors do not express in their Motion any intention to return Caney Creek to its natural flow.

**Argument**

20.     A court generally approves a debtor's motion to assume or reject an executory contract if the decision is based on the debtor's "business judgment." *In re Network Access Solutions Corp.*, 330 B.R. 67, 75 (Bankr. D. Del. 2005). To analyze whether the business judgment test has been met, the court should examine whether a reasonable business person would make a similar decision under similar circumstances. *In re Exide Technologies*, 340 B.R. 222, 239 (Bankr. D. Del. 2006). The decision to reject or assume the contract should be on an informed basis, in good faith, with the honest belief that the decision is in the best interests of the debtor and the estate. *In re Network Access Solutions*, 330 B.R. at 75.

21.     Here, Debtors have not shown that their decision to reject the contract has been made on an informed basis. They have offered the Court no analysis whatsoever of the effect of having Contractual Permit No. CP-341 and Permit No. 3270 expire. As is shown above, these permits automatically expire upon termination or breach of the contract. Debtors have also offered no analysis of the cost and effect of its being required to remove the dam across Caney Creek, as it will be required to return Caney Creek to its natural flow.

22.     It could be that Debtors realize that Luminant is going to have to return Caney Creek to its natural flow in 2016 anyway, since the contract terminates that year. In other words, if Luminant did not validly terminate the agreement before filing the petition (which it did not), and if the Court refuses to permit the proposed rejection, then the contract will continue until 2016, at which

point it terminates of its own terms, the permits expire at that time, and Luminant loses its water rights, and Luminant will be required to remove the dam at that time. That is, unless Luminant is able to reach a new agreement with TRWD to extend the agreement and thereby potentially extend the permits. But Debtors have offered no analysis as to the relative costs and responsibilities of removing the dam now as opposed to waiting until 2016 to do so.

23.    The contract payments are not really the issue here. Those are due either way. Obviously, even if the Court approves the proposed rejection, Debtors are not relieved of their obligations under the contract. Rather, the rejection merely constitutes a prepetition breach. 11 U.S.C. § 365(g); *In re DBSI*, 409 B.R. 720, 731 (Bankr. D. Del. 2009). Luminant already accomplished this task by failing to make the contract's required payments for the two years preceding this bankruptcy case. Those continue to be due. At best, Luminant might be relieved of paying the contract payment for 2015 and 2016, but Debtors have apparently not analyzed these possible savings weighed against loss of the water rights and the requirement to remove the dam. This will be decided within the state process. Further, Luminant apparently takes the position that it terminated the contract before filing its bankruptcy petition. If the contract has been terminated, there is no need to breach it at this point.

24.    Because Debtors have not shown any analysis of the effect of the proposed rejection, they have not satisfied the business judgment rule and their Motion should be denied.

25.    The police powers of TRWD and the State of Texas are implicated by the proposed rejection or the alleged pre-petition termination of the contract. As Luminant's actions and its proposed rejection result in the loss of the water permits, the water rights need to be allocated back to their grantor — TRWD — and Texas has an administrative procedure which is the means by which to achieve this allocation.[7] Also, as the cancellation of the contract will also mean that Luminant no longer has a permit to impound the runoff of Caney Creek that should be flowing into Cedar Creek, it would be unlawful for Luminant to maintain the dam that prevents some water from reaching TRWD's Cedar Creek Reservoir.

26.    Obviously Luminant is not entitled to reject or terminate the contract and then to continue diverting water from the Texas domestic water supply. The police power exception to the automatic stay "excepts commencement or continuation of actions and proceedings by governmental units to enforce police or regulatory powers. Thus, where a government unit is suing a debtor to prevent or stop violation of fraud, environmental protection, consumer protection, safety, or similar police or regulatory laws, or attempting to fix damages for violation of such law, the action or proceeding is not stayed under the automatic stay." S.Rep. No. 95–989 at 52, 1978 U.S.Code Cong. & Ad.News at 5787, 5838; *In re W.R. Grace & Co.*, 412 B.R. 657, 662 (D. Del. 2009). Orders requiring the removal of materials detrimental to the public health and safety are within the exception even

---

[7] See Tex. Water Code § 11.121 *et seq*.

when they require the expenditure of funds. *See, e.g., Safety-Kleen, Inc. v. Wyche*, 274 F.3d 246, 865-66 (4th Cir. 2001).

27.     The protection and acquisition of water for the domestic water supply is a fundamental public policy of the State of Texas, and TRWD is a governmental entity tasked with a responsibility for carrying out this policy. In the exercise of this police power, TRWD must either enforce the contract with Luminant or reacquire the water for the benefit of Texas residents. Luminant either should not be permitted to reject the contract or, at a minimum, the Court should defer ruling on this issue until the state administrative process is concluded. Until that process is concluded, Luminant cannot be said to have shown the Court that it has analyzed the consequences of rejection sufficiently to satisfy the business judgment rule.

28.     In sum, Luminant's prepetition breach of the contract (by failing to make required payments) renders Debtors' Motion moot. As rejection results only in a prepetition breach and not a termination, and as a pre-petition breach already occurred, there is no need for rejection. If Luminant terminated the contract prepetition (which TRWD disputes), there is also no need for rejection. If the Court finds that there is a need for assumption or rejection, then Debtors have not satisfied the business judgment rule and cannot do so until after the process is complete in Texas to reallocate the water right to TRWD and have Luminant remove the dam and return Caney Creek to its natural flow.

29.    TRWD further requests the Court to set this matter for an evidentiary hearing on a later date and to establish a schedule under which discovery may be obtained. As is shown above, there are basic factual disputes, and these need to be developed through a discovery process.

**Prayer**

30.    Wherefore, TRWD respectfully requests the Court to deny the Debtors' Motion or to defer ruling on it until after the Texas administrative process discussed above concludes. TRWD further requests that the Court set this matter for an evidentiary hearing and order the parties to confer and agree upon a discovery schedule.  Following the conclusion of the evidentiary hearing, TRWD requests that the Court  deny Debtors Motion or to find that the contract was not terminated prepetition, to find that Luminant has breached the contract, and to award TRWD all other relief to which it is entitled.

Date:  November 14, 2014            Respectfully submitted,

                                    COOCH AND TAYLOR, P.A.


                                    */s/ Susan E. Kaufman*
                                    Susan E. Kaufman (DSB # 3381)
                                    The Brandywine Building
                                    1000 West Street, 10th Floor
                                    Wilmington, DE 19801
                                    (302) 984-3820 / (302) 984-3939 Fax
                                    skaufman@coochtaylor.com

                                    -and-

/s/ Michael L. Atchley
Michael L. Atchley
Texas State Bar No. 01397600
matchley@popehardwicke.com
Matthew T. Taplett
Texas State Bar No. 24028026
mtaplett@popehardwicke.com

POPE, HARDWICKE, CHRISTIE,
   SCHELL, KELLY & RAY, L.L.P.
500 West 7th Street, Suite 600
Fort Worth, Texas 76102
(817) 332-3245 (Telephone)
(817) 877-4781 (Facsimile)
matchley@popehardwicke.com
mtaplett@popehardwicke.com

Counsel for Tarrant Regional Water District