| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE**<br>Energy Future Holdings Corp. Claims Processing Center<br>c/o Epiq Bankruptcy Solutions, LLC<br>Grand Central Station, P.O. Box 4613<br>New York, NY 10163-4613 | **PROOF OF CLAIM**<br>COURT USE ONLY<br><br>Filed: USBC - District of Delaware<br>Energy Future Holdings Corp., et al., Et Al.<br>14-10979 (CSS)        0000005775 |
| Name of Debtor:<br>Luminant Generation Company LLC | Case Number:<br>14-11032 (CSS)<br>Jointly Administered<br>in Case No. 14-10979 (CSS) |

NOTE: Do not use this form to make a claim for an administrative expense that arises **after** the bankruptcy filing. You may file a request for payment of an administrative expense according to 11 U.S.C. § 503.

Name and address where notices should be sent:

Tarrant Regional Water District
c/o Michael L. Atchley
Pope, Hardwicke, Christie, Schell, Kelly & Ray, L.L.P.
Suite 600
500 West 7th Street
Fort Worth, Texas 76102

Telephone number: 817-332-3245    Email: matchley@popehardwicke.com
                                         mtaplett@popehardwicke.com

☐ Check this box if this claim amends a previously filed claim.

Court Claim Number: _____ (*If known*)

Filed on: _____

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to this claim. Attach copy of statement giving particulars.

FILED / RECEIVED
OCT 21 2014
EPIQ BANKRUPTCY SOLUTIONS, LLC

Name and address where payment should be sent (if different from above):
(same)

Telephone number: _____    Email: _____

COURT USE ONLY

1. **Amount of Claim as of Date Case Filed:** $ 6,434,908.00 (plus matter stated on attachment)
   If all or part of the claim is secured, complete item 4.
   If all or part of the claim is entitled to priority, complete item 5.
   If all or part of the claim qualifies as an Administrative Expense under 11 U.S.C. §503(b)(9), complete item 6.
   ☑ Check this box if the claim includes interest or other charges in addition to the principal amount of the claim. Attach a statement that itemizes interest charges.

2. **Basis for Claim:** Contract for property interest (water rights)
   (See instruction #2)

3. **Last four digits of any number by which creditor identifies debtor:** ___ 4 1
   3a. Debtor may have scheduled account as: Potential Litigation Claim (Schedule F)
   (See instruction #3a)

4. **Secured Claim** (See instruction #4)
   Check the appropriate box if the claim is secured by a lien on property or a right of setoff, attach required redacted documents, and provide the requested information.
   
   Nature of property or right of setoff:
   ☐ Real Estate   ☐ Motor Vehicle   ☐ Other
   Describe: n/a
   Value of Property: $ _____
   Annual Interest Rate _____ %  ☐ Fixed  or  ☐ Variable
   (when case was filed)
   
   Amount of arrearage and other charges, as of time case was filed, included in secured claim, if any:
   $ _____
   Basis for perfection: _____
   Amount of Secured Claim: $ _____
   Amount Unsecured: $ _____

5. **Amount of Claim Entitled to Priority under 11 U.S.C. § 507 (a).** If any part of the claim falls into one of the following categories, check the box specifying the priority and state the amount.
   
   ☐ Domestic support obligations under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).
   ☐ Wages, salaries or commissions (up to $12,475), earned within 180 days before the case was filed or the debtor's business ceased, whichever is earlier – 11 U.S.C. § 507(a)(4).
   ☐ Contributions to an employee benefit plan – 11 U.S.C. § 507(a)(5).
   ☐ Up to $2,775 of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. § 507(a)(7).
   ☐ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8).
   ☐ Other – Specify applicable paragraph of 11 U.S.C. § 507(a)(___).
   
   Amount entitled to priority:
   $ _____

6. **Amount of Claim that qualifies as an Administrative Expense under 11 U.S.C. §503(b)(9):** $ n/a  (See instruction #6)

7. **Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim. (See instruction #7)

8. **Documents:** Attach **redacted** copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages and security agreements. If the claim is secured, box 4 has been completed, and **redacted** copies of documents providing evidence of perfection of a security interest are attached. *(See instruction #8 and definition of "redacted".)*
   DO NOT SEND ORIGINAL DOCUMENTS.  ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.
   If the documents are not available, please explain:

9. **Signature:** (See instruction #9)   Check the appropriate box:
   ☐ I am the creditor.   ☑ I am the creditor's authorized agent.   ☐ I am the trustee, or the debtor, or their   ☐ I am a guarantor, surety, indorser, or other codebtor.
   (Attached a copy of power of attorney, if any.)   authorized agent. (See Bankruptcy Rule 3004.)   (See Bankruptcy Rule 3005.)

I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.

Print Name: Sandra Newby    Signature: *Sandra Newby*
Title: Director of Finance
Company: Tarrant Regional Water District    Date: 10-14-14

Address, telephone number, and email (if different from notice address above):
_____
Telephone number: 817 335 2491
Email: Sandy.Newby@trwd.com

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

EXHIBIT "F"

In re Luminant Generation Company, LLC
Case No. 14-11032 (CSS)

### Attachment to Proof of Claim of Tarrant Regional Water District

In addition to the amount of the claim as stated in paragraph 1, Tarrant Regional Water District seeks all applicable costs, attorney's fees, post-petition principal, and post-petition interest. Also, as an additional or alternative claim, if the parties' contract is terminated or otherwise expires, Tarrant Regional Water District seeks to have the water rights addressed in the parties' contract returned or otherwise transferred to it, cancellation of the permits obtained by Luminant as a result of the contract, an amendment to or revision of the certificate of adjudication and related court findings and orders relating to those permits so as to return or otherwise transfer all of the water rights addressed therein to Tarrant Regional Water District, and the restoration of the natural flow of Caney Creek and its watershed into Cedar Creek. To the extent Debtors refuse to undertake efforts to restore the Creek's natural flow, which will include removal of a dam, then Tarrant Regional Water District additionally seeks reimbursement or other payment for the cost of such removal and restoration.

**TXU Luminant Payment Summary**

| Billing Period | Beginning Balance | Maint/Ops Amount Due | Payment Received | Date of Payment | Ending Balance | Interest | | | | | Total Due w Interest thru 4/29/14 |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | Jun 1, 2011 - Dec 31, 2011 | Jan 1, 2012 - Dec 31, 2012 | Jan 1, 2013 - Dec 31,2013 | Jan 1, 2014 - Apr 29, 2014 | May 1, 2014 - Sept 1, 2014 | |
| FY 2011 | $0 | $2,187,021 | $1,063,633 | 7-1-2011 | $1,123,388 | $44,637 | $70,081 | $74,286 | $26,248 | | $1,338,640 |
| | | | | | | | Jun 1, 2012 - Dec 31, 20112 | Jan 1, 2013 - Dec 31,2013 | Jan 1, 2014 - Apr 29, 2014 | May 1, 2014 - Sept 1, 2014 | |
| FY 2012 | $1,123,388 | $2,313,102 | $0 | | $3,436,490 | $0 | $80,959 | $143,644 | $50,754 | | $2,588,458 |
| | | | | | | | | Jun 1, 2013 - Dec 31, 20113 | Jan 1, 2014 - Apr 29, 2014 | May 1, 2014 - Sept 1, 2014 | |
| FY 2013 | $3,436,490 | $2,375,495 | $0 | | $5,811,984 | $0 | $0 | $83,142 | $49,173 | | $2,507,810 |
| FY 2014 | | | | | | | | | | | |
| | | | | | | | | | | | $6,434,908 |

TRWD - Principal and Interest Calculation

## TU Electric
### CALCULATION OF MAINTENANCE AND OPERATING EXPENSES FOR THE
### PERIOD 10-01-09 THROUGH 9-30-10

|  | General Fund | Enterprise Fund | Total |
|---|---|---|---|
| General and Administrative | 7,202,349 | 12,375,073 | 19,577,422 |
| Personnel Services | 2,320,404 | 10,525,135 | 12,845,539 |
| Pension Plan Contribution | 905,237 | 673,986 | 1,579,223 |
| Utilities |  | 10,173,954 | 10,173,954 |
| Total Expenditures | 10,427,990 | 33,748,148 | 44,176,138 |

| | | |
|---|---|---|
| Total Maintenance and Operation Expense for the period: 10-01-09 through 9-30-10 | (Numerator) | 44,176,138 |
| Add: Long-term Debt | | 4,675,200 |
| Total Maintenance, Operating Expenses & Applicable Debt Service for the Period: 10-01-09 through 9-30-10 | (Denominator) | 48,851,338 |
| Maintenance and Operating Expenses for the Period 10-01-09 through 9-30-10 | | 44,176,138 |
| Maintenance and Operating Expenses for the Period 10-01-08 through 9-30-09 | | 50,652,817 |
| Increase/(Decrease) | | (6,476,679) |
| Increase/(Decrease) Percentage | | -12.79% |
| Portion of Payment (In Paragraph 1 and 2 of Contract) Applicable to Increase/(Decrease): | | |
| $644,800 x (44,176,138/48,851,338) | | 583,091 |
| Amount of Increase/(Decrease): $583,091 x -12.79% | | (74,577) |
| May 1, 2010 Payment | | 2,261,598 |
| Increase/(Decrease) | | (74,577) |
| May 1, 2011 Payment | | 2,187,021 |

V:\Water Customers\TXU- Settle Up\TU 2011.xlsx

TRWD - Principal Amount Calculations
Page 1 of 3

## TU Electric
### CALCULATION OF MAINTENANCE AND OPERATING EXPENSES FOR THE PERIOD 10-01-10 THROUGH 9-30-11

|  | General Fund | Enterprise Fund | Total |
|---|---:|---:|---:|
| General and Administrative | 7,579,916 | 14,737,095 | 22,317,011 |
| Personnel Services | 4,177,093 | 10,501,881 | 14,678,974 |
| Pension Plan Contribution | 369,932 | 1,093,831 | 1,463,763 |
| Utilities |  | 15,108,701 | 15,108,701 |
| Total Expenditures | 12,126,941 | 41,441,508 | 53,568,449 |

| | | |
|---|---|---:|
| Total Maintenance and Operation Expense for the period: 10-01-10 through 9-30-11 | (Numerator) | 53,568,449 |
| Add: Long-term Debt | | 4,675,200 |
| Total Maintenance, Operating Expenses & Applicable Debt Service for the Period: 10-01-10 through 9-30-11 | (Denominator) | 58,243,649 |
| Maintenance and Operating Expenses for the Period 10-01-10 through 9-30-11 | | 53,568,449 |
| Maintenance and Operating Expenses for the Period 10-01-09 through 9-30-10 | | 44,176,138 |
| Increase/(Decrease) | | 9,392,311 |
| Increase/(Decrease) Percentage | | 21.26% |
| Portion of Payment (In Paragraph 1 and 2 of Contract) Applicable to Increase/(Decrease): | | |
| $644,800 x (53,568,449/58,243,649) | | 593,042.10 |
| Amount of Increase/(Decrease): $593,042 x 21.26% | | 126,080.75 |
| May 2011 Payment | | $ 2,187,021.00 |
| Increase/(Decrease) | | 126,080.75 |
| May 2012 Payment | | 2,313,101.75 |
| Remaining Due for 2011 Payment | | 1,123,387.84 |
| Total Due by June 1, 2012 | | $ 3,436,489.59 |

## TU Electric
### CALCULATION OF MAINTENANCE AND OPERATING EXPENSES FOR THE
### PERIOD 10-01-11 THROUGH 9-30-12

|  | General Fund | Enterprise Fund | Total |
|---|---|---|---|
| General and Administrative | 8,410,677 | 17,361,268 | 25,771,945 |
| Personnel Services | 4,198,150 | 9,690,663 | 13,888,813 |
| Pension Plan Contribution | 425,689 | 1,078,990 | 1,504,679 |
| Utilities |  | 17,996,090 | 17,996,090 |
| Total Expenditures | 13,034,516 | 46,127,011 | 59,161,527 |

| | | |
|---|---|---|
| Total Maintenance and Operation Expense for the period: 10-01-11 through 9-30-12 | (Numerator) | 59,161,527 |
| Add: Long-term Debt | | 4,675,200 |
| Total Maintenance, Operating Expenses & Applicable Debt Service for the Period: 10-01-11 through 9-30-12 | (Denominator) | 63,836,727 |
| Maintenance and Operating Expenses for the Period 10-01-11 through 9-30-12 | | 59,161,527 |
| Maintenance and Operating Expenses for the Period 10-01-10 through 9-30-11 | | 53,568,449 |
| Increase/(Decrease) | | 5,593,078 |
| Increase/(Decrease) Percentage | | 10.44% |
| Portion of Payment (In Paragraph 1 and 2 of Contract) Applicable to Increase/(Decrease): | | |
| $644,800 x (59,161,527/63,836,727) | | 597,576.89 |
| Amount of Increase/(Decrease): $597,577 x 10.44% | | 62,392.96 |
| May 2012 Payment | | $ 2,313,101.75 |
| Increase/(Decrease) | | 62,392.96 |
| May 2013 Payment | | 2,375,494.71 |
| Remaining Due for 2011 - 2012 Payments | | 3,436,489.59 |
| Total Due by June 15, 2013 | | $ 5,811,984.30 |

AGREEMENT

This Agreement entered into this 15th day of MARCH 19 76, by and between TARRANT COUNTY WATER CONTROL AND IMPROVEMENT DISTRICT NUMBER ONE, a public body politic and corporate, organized and existing under the provisions of Article 7880, et. seq., Revised Civil Statutes of Texas, with its principal office in Fort Worth, Texas, hereinafter called "DISTRICT", and TEXAS POWER & LIGHT COMPANY, a Texas Corporation, with its principal office in Dallas, Texas, hereinafter called "COMPANY".

WITNESSETH:

1.

Subject to the provisions of paragraph 4 hereof, DISTRICT grants to COMPANY the right to intercept and impound such portion of the run-off of Caney Creek, in Henderson County, Texas, as may be permitted by the Texas Water Rights Commission, which run-off would otherwise flow into DISTRICT'S Cedar Creek Reservoir. DISTRICT agrees that COMPANY may install and maintain on Caney Creek on land owned or leased by COMPANY "such facilities as the Texas Water Rights Commission may permit in order to construct a reservoir (hereinafter called Forest Grove Reservoir) to be used in connection with the operation of a steam electric generating station so long as this Agreement shall be in effect." For such right, and without regard to whether such water is available for such use, COMPANY shall pay to DISTRICT the sum of $300,800 per year, beginning on the May 1st following the first impoundment of water in Forest Grove Reservoir or May 1, 1978, whichever is the earlier.

2.

DISTRICT further grants to COMPANY the right to divert, use and consume, from Cedar Creek Reservoir, not to exceed 7,000 acre-feet of water in any calendar year and not to exceed 12,000 acre-feet of water during any period of four (4) consecutive calendar years. For such right, COMPANY shall pay to DISTRICT the sum of $169,700 per year, beginning on the May 1st following first impoundment of water in Forrest Grove Reservoir or May 1, 1978, whichever is the earlier.

-1-

EXHIBIT "A"

Until May 1, 1985, COMPANY shall have the option, upon one year's written notice to DISTRICT, to increase the amount of Cedar Creek Reservoir water which COMPANY is hereby entitled to divert, use and consume not to exceed 12,000 acre-feet of water in any calendar year and not to exceed 24,000 acre-feet of water during any period of four consecutive calendar years. If COMPANY shall elect to exercise this option, payments by COMPANY to DISTRICT under this paragraph shall be increased to $344,000 per year, beginning on the May 1st following written notice by COMPANY to DISTRICT of intention to increase the amounts of diversion.

3.

Payment by COMPANY to DISTRICT shall be made in advance for each year beginning on May 1st thereof with the first such payment due as provided in Paragraphs 1 and 2 above unless increased or decreased by reason of the following:

In the event that the annual maintenance and operating costs for 1977 of DISTRICT'S reservoirs and pipeline and other facilities including but not limited to pumping energy are increased or decreased above or below such costs during the calendar year preceding the date of execution of this Agreement, then the payments provided for in Paragraphs 1 and 2 above due in 1978 shall be increased or decreased in the same proportion as such cost increase or decrease; but in no event shall the payments be less than the payments set forth in Paragraphs 1 and 2 above. DISTRICT'S annual maintenance and operating costs for any year will be shown in Combined Statement of Expenditures-All Funds in DISTRICT'S Annual Report for such year. Thereafter, the amount payable by COMPANY under Paragraphs 1 and 2 shall be increased or decreased each May 1 in the same proportion as the DISTRICT'S maintenance and operating costs increased or decreased during the preceding calendar year, as such costs are reflected in the aforesaid Combined Statement of Expenditures-All Funds, over such costs for the year preceding execution hereof. Since only part of COMPANY'S payments are for DISTRICT'S operation and maintenance, the increase or decrease will apply only to that portion of COMPANY'S payments which corresponds

-2-



to the fraction of DISTRICT'S total costs represented by operation and maintenance. The portion of COMPANY'S payments as set forth in Paragraphs 1 and 2 which are subject to increase or decrease for changes in DISTRICT'S operation and maintenance costs shall be determined each year as follows: COMPANY'S said payment shall be multiplied by a fraction, the numerator of which is the sum of administrative expense, building, levees and floodway improvements and maintenance, tax assessing and collecting, contributions to employees retirement fund and miscellaneous expense, and the denominator shall be DISTRICT'S total expenditures, exclusive of capital expenditures and debt service on any additional bonds sold by the DISTRICT. In the event that debt service on DISTRICT'S outstanding bonds becomes less than $4,675,200 during any calendar year, then such denominator shall be the total of the numerator amount plus $4,675,200.

No water shall be taken by COMPANY from Cedar Creek Reservoir in excess of the allowable pumpages provided in paragraph 2 until and unless the DISTRICT shall first consent to such additional taking in writing, and the payment for such additional taking shall be negotiated and contained in such written instrument of agreement. Unless otherwise agreed at the time of such supplemental agreement, such additional water diverted from Cedar Creek Reservoir shall not be charged against COMPANY'S allowable annual pumpage for succeeding years.

4.

It is expressly understood and agreed by and between DISTRICT and COMPANY, however, that the rights of COMPANY hereunder are subject and subordinate to the rights of the City of Fort Worth under a contract by, and between DISTRICT and the City of Fort Worth, effective March 1, 1960, and the rights of Fort Worth National Bank, Trustee, under a Resolution and Trust Indenture by and between DISTRICT and Fort Worth National Bank, Trustee, dated March 1, 1960. In the event that the obligations undertaken herein by DISTRICT shall conflict with its obligations pursuant to said Contract and said Resolution and Trust Indenture, then the terms of said Contract and said Resolution and Trust Indenture shall in all things govern and take precedence over the provisions of this Agreement.

5.

DISTRICT shall not be obligated to treat in any manner the water sold to COMPANY hereunder, and does not guarantee the quality or condition thereof, nor does it warrant or guarantee the quantity of water subject to the COMPANY'S impoundment or use except as hereinafter provided as to preferential use. The right that the DISTRICT grants to the COMPANY in Paragraphs 1 and 2 to withdraw and use water from Cedar Creek Reservoir is not unlimited or exclusive right, but shall to the extent permitted by law be superior to the right of any future purchaser of water from the DISTRICT for similar power development use.

6.

The general location of DISTRICT'S lake and COMPANY'S property is shown on Exhibit "A" attached hereto. The location of COMPANY'S plant, pipeline for withdrawing water from said lake, and return facilities, according to preliminary plans are shown on Exhibit "B" attached hereto. Exhibits "A" and "B" are made a part hereof for all purposes.

Nothing in this agreement shall confer upon COMPANY the right to use the land of the DISTRICT, nor the surface of Cedar Creek Lake. The COMPANY and DISTRICT will negotiate and agree upon, for a separate consideration, a lease to cover some areas of DISTRICT property which COMPANY may need for the construction of protective works and for facilities to withdraw water for use by COMPANY under this Contract.

7.

COMPANY shall at its own expense construct for its exclusive use all the necessary works suitable and necessary for the withdrawal of said water from Cedar Creek Reservoir and all necessary or desirable protective works on land of COMPANY. The design of COMPANY'S withdrawal and protective works shall be subject to the approval in writing of DISTRICT. It is recognized by the parties hereto that the protective works are to be designed and installed for the express purpose of preventing unauthorized persons from entering the water and land areas by boats or otherwise near the points of withdrawal, and that such protection is in the best interest and for the safety of the general public.

-4-

8.

Nothing in this Agreement, expressed or implied, is intended or shall be construed to confer upon any person or corporation other than the parties hereto, their successors and assigns, any right, remedy or claim under or by reason of this Agreement or any covenant, condition or stipulation hereof, and that all covenants, stipulations, promises, and agreements in this Instrument contained by or on behalf of COMPANY shall be and are for the sole and exclusive benefit of the parties hereto, their successors and assigns. COMPANY expressly agrees that it will not sell or permit the use of water sold to it by DISTRICT by any other person, firm or corporation without the consent of DISTRICT first had and obtained in writing. COMPANY may assign this contract wholly or in undivided interests, to Texas Utilities Company and/or any subsidiary or subsidiaries thereof which are the owners, including joint ownership with COMPANY, of the aforesaid generating plant to be constructed on Caney Creek, provided that such assignment shall not relieve COMPANY of responsibility hereunder.

9.

It is further recognized and expressly agreed that the DISTRICT is a public corporation, subject to regulation under the statutes, of the State of Texas, and subject to certain powers vested by law in the Texas Water Rights Commission of the State of Texas, and is further subject to the limitations and requirements in all permits to use public water of the State of Texas which have been heretofore or hereafter issued or assigned to DISTRICT. All of the provisions of this Contract and the use of water hereunder shall be subject to such statutes and regulations as may be issued or promulgated by any governing body having jurisdiction of DISTRICT or of the public waters stored, impounded or otherwise controlled and used by DISTRICT.

10.

Pursuant to the contract of DISTRICT with the City of Fort Worth, the parties to this agreement recognize that in the future the DISTRICT may develop other sources of raw water to supply its u···, and that in such event, pursuant to said Contract the rates for ··· water sold to the City of Fort Worth may be increased by negot········ between said City and the DISTRICT to provide funds for the c········ction

-5-

and operation of such additional facilities. In the event of such renegotiation of the raw water rate paid to DISTRICT by the City of Fort Worth, the annual payments by COMPANY to DISTRICT shall then be increased in the same ratio that the rates paid by The City of Fort Worth are increased.

In case it is necessary for the DISTRICT to use ad valorem taxes collected by DISTRICT from within the DISTRICT to pay the costs of the Cedar Creek Project (Reservoir, Pipeline, Pump Station, etc.), the COMPANY shall pay to DISTRICT an additional amount of money equivalent to the pro rata share of the costs to be paid from ad valorem taxes; COMPANY'S pro rata share will be based on its consumption of water from Cedar Creek Project as compared to total consumption therefrom. The intention of this provision is for the COMPANY to bear its proportionate part of the burden of Cedar Creek Project costs over Cedar Creek Project revenues, and the parties agree to negotiate in good faith to arrive at the amount by agreement. In the event the parties cannot agree on the amount which COMPANY should pay, the matter will be decided by an arbitrator, to be chosen by agreement of the parties, or, if the parties cannot agree on an arbitrator, to be selected by any Judge of a District Court of Tarrant County, Texas. The decision of such arbitrator will be final and shall be accepted by both parties.

11.

This contract shall continue for a period of 40 years from the date hereof. COMPANY may, provided it makes the payments and otherwise complies with the terms of this Agreement, renew this contract for an additional 40-year period beginning at the expiration of the original term. Such renewal and extension shall be upon terms and conditions then to be agreed upon by DISTRICT and COMPANY. COMPANY shall give DISTRICT notice of its intention to exercise its renewal option not less than two years prior to the expiration date of the initial contract period. In the event COMPANY exercises its renewal option herein granted, DISTRICT covenants that it will not, prior to expiration date of this contract and for a period of one year

-6-

thereafter, contract to sell or sell the water sold to COMPANY under this Agreement without giving COMPANY an opportunity to meet the terms and conditions of any such sale or proposed sale which it desires to accept and COMPANY shall have a period of thirty (30) days thereafter in which to accept such offer by written notice to DISTRICT.

12.

If, prior to beginning the construction of the works herein described, COMPANY elects to cancel this contract it may do so upon payment of all obligations and charges due from COMPANY under this contract to the date of such cancellation, along with DISTRICT'S cost of review of such engineering matter as may have been incurred by DISTRICT in connection herewith, after which no obligation shall exist against either party in respect to this contract. In the event of abandonment of the steam-electric generating station or stations, it is agreed that the payment required for the use of water as provided for in paragraphs 1 and 2 above will be waived or cancelled for the unexpired portion of the contract period, provided the COMPANY shall have made written request for such payment cancellation not less than one year in advance of the cancellation date, and COMPANY has restored the natural flow of Caney Creek and its watershed into Cedar Creek

13.

COMPANY will indemnify and hold DISTRICT harmless of and from any and all claims and causes of action for damages to property or for injuries to persons, including death, arising out of COMPANY'S use of DISTRICT'S land, arising out of structures and facilities which COMPANY may place in the lake in connection with its withdrawal of water and protective works. COMPANY and DISTRICT each shall protect and save the other harmless against any loss liability or expense resulting from injury to or death of its own employees, occurring while such employees are engaged in the line of their duties, whether or not such injury or death occurs on or adjacent to the property of COMPANY or DISTRICT.

-7-

14.

No Modification of any provision of this Agreement shall be binding unless reduced to writing and signed by the parties hereto, and modification of any one or more provisions of this Agreement by mutual consent of the parties hereto shall not affect any of the remaining provisions hereof not so modified. DISTRICT covenants that it has complied with and will comply with any additional requirements of law related to certified filings or the obtaining of necessary permits from the Texas Water Rights Commission or other regulatory bodies for the purposes and uses proposed to be made by COMPANY of such water as it proposed hereunder.

EXECUTED this 15th day of MARCH, 1976

ATTEST:

_____
Secretary

APPROVED BY:

_____
Engineer for District

ATTEST:

_____
Secretary

TARRANT COUNTY WATER CONTROL AND IMPROVEMENT DISTRICT NUMBER ONE

By_____
   President

BROWN, HERRING, SCOTT,
DEAN & MILES

By_____
   General Counsel for District

TEXAS POWER & LIGHT COMPANY

By_____
   Vice-President

-8-

FIRST AMENDMENT TO WATER SUPPLY CONTRACT

This Agreement by and between TARRANT REGIONAL WATER DISTRICT (formerly Tarrant County Water Control and Improvement District Number One), a water control and improvement district and political subdivision of the State of Texas, with its principal office in Fort Worth, Texas, hereinafter called "DISTRICT", and TEXAS UTILITIES ELECTRIC COMPANY, a Texas corporation, with its principal office in Dallas, Texas, hereinafter called "COMPANY";

WITNESSETH:

WHEREAS, District and Texas Power & Light Company, hereinafter called "TPL" entered into a Water Supply Contract dated March 15, 1976, which contract provided for the sale to TPL by DISTRICT of not to exceed 7,000 acre feet of water out of Cedar Creek Reservoir in any calendar year and not to exceed 12,000 acre feet of water during any period of four (4) consecutive calendar years, and contained an option for TPL to increase the amount of water to which it is entitled to not exceed 12,000 acre feet of water out of Cedar Creek Reservoir in any calendar year and not to exceed 24,000 acre feet of water during any period of four (4) consecutive calendar years, and

WHEREAS, on November 1, 1983, Texas Utilities Generating Company as agent for TPL notified DISTRICT of its exercise of said option, effective May 1, 1985, and

WHEREAS, COMPANY has succeeded to the interests of TPL under said contract;

NOW, THEREFORE, the parties agree as follows:

1.

Paragraph 6 of said contract is hereby amended by adding the following language:

"In addition to its right to withdraw water from Cedar Creek Reservoir by pipeline as described herein, Company shall have the right to request the release of all or any part of the water covered by this contract from Cedar Creek Reservoir into the Trinity River for use by COMPANY at one or more of its other generating plants. It is understood and agreed, however, that the total amount of water which COMPANY is entitled to use and consume from Cedar Creek Reservoir, whether at its proposed Forest Grove Steam Electric Station or elsewhere, shall not exceed 12,000 acre-feet of water in any calendar year and not to exceed 24,000 acre feet of water during any period of four consecutive calendar years.

DISTRICT shall be responsible for notifying the Texas Natural Resource Conservation Commission of the location of the point or points at which water shall be released from Cedar Creek Reservoir for use by COMPANY as hereinabove provided, and COMPANY shall be responsible for notifying the Texas Natural Resource Conservation Commission of the location of the diversion point or points for the withdrawal of the water released by DISTRICT as hereinabove provided.

COMPANY agrees to give DISTRICT not less than twenty-four (24) hours written notice of any request for the release of water from Cedar Creek Reservoir, which notice shall state the amount of water to be released, the requested rate of release in cubic feet per second, and the date on which such release shall commence. When the volume of water released by DISTRICT pursuant to any such request shall equal the quantity of water requested by COMPANY, DISTRICT shall terminate such release, and DISTRICT

shall notify COMPANY of such termination. COMPANY may, however, at any time after any such release has commenced, by not less than twenty-four (24) hours written notice to DISTRICT, request the termination thereof.

COMPANY shall bear all losses of any such water incurred in the transportation thereof to COMPANY'S diversion point or points, and DISTRICT shall have no further obligations to COMPANY with respect to the delivery of any such water to COMPANY after its release thereof from Cedar Creek Reservoir."

2.

As hereby amended, said contract is in all respects ratified and confirmed.

EXECUTED this __24__ day of __January__, 1997

TARRANT REGIONAL WATER DISTRICT

ATTEST:

_____
Assistant General Manager

By _____
Its    General Manager

ATTEST:

_____
Assistant Secretary

TEXAS UTILITIES ELECTRIC COMPANY

By _____
Its    Vice President

**POPE, HARDWICKE
CHRISTIE, SCHELL, KELLY & RAY, L.L.P.**
ATTORNEYS
Established 1952
BANK OF AMERICA BUILDING
500 WEST 7TH STREET, SUITE 600
FORT WORTH, TEXAS 76102
(817) 332-3245
FAX (817) 877-4781

ROBERT E. HARDWICKE
(1889 – 1970)

ALEX POPE, JR.
(1913 – 1988)

ROBERT E. HARDWICKE, JR
(1917 – 1991)

MICHAEL L. ATCHLEY
matchley@popehardwicke.com

October 20, 2014

*By Overnight Mail*
Energy Future Holdings Corp. Claims Processing Center
c/o Epiq Bankruptcy Solutions, LLC
757 Third Avenue, 3rd Floor
New York, New York 10017

Re: Proof of Claim - Luminant Generation Company, LLC
Case 14-10979 (Jointly Administered), U.S. Bankr. Ct., D. Del.)

Enclosed is an original Proof of Claim for Tarrant Regional Water District regarding Forest Grove. I am also enclosing a copy and a return envelope. Please send proof of service. Thank you.

Sincerely,

Michael L. Atchley

MLA
Enc.



**After printing this label:**
1. Use the 'Print' button on this page to print your label to your laser or inkjet printer.
2. Fold the printed page along the horizontal line.
3. Place label in shipping pouch and affix it to your shipment so that the barcode portion of the label can be read and scanned.

Warning: Use only the printed original label for shipping. Using a photocopy of this label for shipping purposes is fraudulent and could result in additional billing charges, along with the cancellation of your FedEx account number.
Use of this system constitutes your agreement to the service conditions in the current FedEx Service Guide, available on fedex.com.FedEx will not be responsible for any claim in excess of $100 per package, whether the result of loss, damage, delay, non-delivery,misdelivery,or misinformation, unless you declare a higher value, pay an additional charge, document your actual loss and file a timely claim.Limitations found in the current FedEx Service Guide apply. Your right to recover from FedEx for any loss, including intrinsic value of the package, loss of sales, income interest, profit, attorney's fees, costs, and other forms of damage whether direct, incidental,consequential, or special is limited to the greater of $100 or the authorized declared value. Recovery cannot exceed actual documented loss.Maximum for items of extraordinary value is $1,000, e.g. jewelry, precious metals, negotiable instruments and other items listed in our ServiceGuide. Written claims must be filed within strict time limits, see current FedEx Service Guide.