# **EXHIBIT C**

**Supplemental Frenzel Declaration**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | ) | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) | Case No. 14-10979 (CSS) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**DECLARATION OF ROBERT FRENZEL, SENIOR
VICE PRESIDENT AND CHIEF FINANCIAL OFFICER OF
LUMINANT HOLDING COMPANY LLC, IN SUPPORT OF THE
SUPPLEMENT TO MOTION OF ENERGY FUTURE HOLDINGS
CORP., *ET AL.*, FOR ENTRY OF AN ORDER AUTHORIZING
CERTAIN DEBTORS TO ENTER INTO AGREEMENTS REGARDING
MHI'S WITHDRAWAL FROM THE COMANCHE PEAK JOINT VENTURE**

Pursuant to 28 U.S.C. § 1746, I, Robert Frenzel, hereby declare as follows under penalty of perjury:

1. I am Senior Vice President and Chief Financial Officer of Luminant Holding Company LLC, which is the parent of Luminant Energy Company LLC ("Luminant Energy"), an indirect subsidiary of EFH Corp.

2. I have worked for EFH Corp. since 2009 and for Luminant Energy since 2012. I am generally familiar with the Debtors' businesses, day-to-day operations, financial matters, results of operations, cash flows, and underlying books and records. All facts set forth in this Declaration (as defined below) are based upon my personal knowledge of the Debtors' businesses, operations, and related financial information gathered from my review of their books

---

[1] The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, for which joint administration has been granted, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

and records, relevant documents, and information supplied to me by members of the Debtors' management team and advisors. I am over the age of 18 and duly authorized to execute this declaration (this "Supplemental Declaration") on behalf of the Debtors in support of the *Supplement to Motion of Energy Future Holdings Corp.,* et al., *for Entry of an Order Authorizing Certain Debtors to Enter into Agreements Regarding MHI's Withdrawal from the Comanche Peak Joint Venture* (the "MHI Withdrawal Supplement").[2]

3. This Supplemental Declaration clarifies certain disclosures in the MHI Withdrawal Motion and provides additional detail regarding certain costs associated with the relief requested pursuant to the MHI Withdrawal Motion.

**I.    Background.**

4. On October 30, 2014, certain of the Debtors (specifically, EFH Corp., TCEH LLC, and Luminant) filed the MHI Withdrawal Motion seeking authority to enter into certain Withdrawal Agreements which provided for MHI's withdrawal from the Comanche Peak Joint Venture.

5. As described in the MHI Withdrawal Motion, in September 2008, Luminant formed a number of wholly-owned Delaware limited liability companies, including the non-Debtor NEFH I and NEFH II. These entities, along with Luminant and EFH Corp. formed a limited liability company for the purpose of developing two new nuclear generation units (such units referred to as the "New Units" in the MHI Withdrawal Motion) and memorialized the limited liability company by entering into a limited liability company agreement.

---

[2] Capitalized terms used but not defined herein shall have the meaning ascribed to them in the MHI Withdrawal Motion.

2

6.      In January 2009, the limited liability company agreement was amended and restated to admit MHI as a member and create the Comanche Peak Joint Venture for the purposes of further developing the New Units using a new nuclear reactor technology developed by MHI (such technology referred to as the "US-APWR" technology in the MHI Withdrawal Motion) (such limited liability company agreement referred to in the MHI Withdrawal Motion as the LLC Agreement). With the addition of MHI, the limited liability company was renamed Comanche Peak Nuclear Power Company LLC (referred to in the MHI Withdrawal Motion as Comanche Peak LLC). In connection with the development and licensing of the New Units and the US-AWPR, Luminant, Comanche Peak LLC, and MHI filed applications for NRC review — Luminant and Comanche Peak LLC filed the License Application and MHI filed the Design Application.

7.      *License Application*. The License Application seeks NRC approval for the construction and operation of the New Units utilizing the US-AWPR technology. For reasons that are further discussed below, the License Application specifies that Comanche Peak LLC will be the owner of the New Units and Luminant will be the operator of the New Units. Under the LLC Agreement, the costs associated with pursuing the License Application, and seeking NRC approval of the relief sought therein, were to be funded by the Comanche Peak Joint Venture. Because the Comanche Peak Joint Venture has no independent source of revenues outside of its members, the LLC Agreement set forth the agreed-upon funding obligations of the members, MHI and NEFH II, including the funding obligations of the Comanche Peak Joint Venture with respect to the License Application.

8.      *Design Application*. The Design Application, filed under MHI's name, seeks NRC approval for the use of the US-AWPR technology itself. The Design Application is not

3

site-specific (*i.e.*, MHI can use the NRC-approved US-AWPR technology at various nuclear plant sites in the United States, including sites unaffiliated with the Debtors). As a result, MHI agreed to pay 100% of the costs associated with maintaining the Design Application and seeking NRC approval of the relief requested therein.

9. In connection with various macroeconomic factors described in greater detail in the MHI Withdrawal Motion, MHI, Luminant, and NEFH II decided to first suspend development and licensing activities related to the New Units and ultimately to allow MHI to withdraw from further participation in the Comanche Peak Joint Venture. As part of MHI's withdrawal from the Comanche Peak Joint Venture, the parties negotiated various Withdrawal Agreements. The Withdrawal Agreements are described in further detail in the MHI Withdrawal Motion and were filed under seal with the Court.

**II.     Clarifications of Disclosures Provided in MHI Withdrawal Motion**.

10. Pursuant to this Declaration, there are a number of important points to clarify with respect to the effect of MHI's withdrawal from the Comanche Peak Joint Venture, each as described in further detail below.

11. ***Preservation of Status Quo Regarding License Application and Related Costs***. MHI's withdrawal from the Comanche Peak Joint Venture affects neither the NRC suspended review status of the License Application, nor Luminant's relationship to the License Application (as the operator of the New Units). As a result, Luminant, on behalf of itself and NEFH II (which has no independent source of revenues), has certain payment obligations to the NRC in order to maintain the License Application in its suspended condition.

12. As a preliminary matter, MHI's withdrawal from the Comanche Peak Joint Venture does not terminate development of the New Units. As noted above, MHI, Luminant and

NEFH II decided to suspend development activities related to the New Units as of the fourth quarter of 2013 and requested that the NRC suspend further reviews of the License Application. Luminant and NEFH II did not, however, withdraw the License Application because leaving the License Application open would allow Luminant and NEFH II to potentially restart licensing and development of the New Units in the future if macroeconomic conditions change in a favorable way, *without* having to start the NRC's review process of the License Application from scratch.

13. The license application process is a multi-phase approach that approves different aspects of the license applications in phases over several years. The NRC has already approved many aspects of the Comanche Peak LLC License Application. If Luminant and NEFH II were to resume licensing and development of the New Units utilizing the US-APWR technology, much of the existing License Application would still be relevant and would reduce the time and cost to restart.

14. In addition, the NRC has already approved a number of aspects of the License Application that are site-specific (*e.g.*, the geological and environmental aspects of the property on which the New Units would be developed). If the License Application is preserved in a suspended state, Luminant and NEFH II could restart development of the New Units with any approval NRC technology in the future without obtaining approval of (or paying the associated costs of) certain site-specific aspects of the License Application that have already been approved by the NRC (*i.e.*, those aspects that are specific to the site of the New Units as opposed to chapters that are directly tied to the reactor technology that would be utilized at the New Units).

15. To streamline the NRC review process at the outset, the License Application originally specified Luminant as both the owner and operator of the New Units. After MHI was admitted to the Comanche Peak Joint Venture, Comanche Peak LLC became the owner of the

5

New Units in the License Application, but Luminant continued as the designated operator of the New Units in the License Application because Luminant is recognized by the NRC as an experienced nuclear power plant operator. Since 1992, Luminant has owned and operated two nuclear units. If, in the future, Luminant and NEFH II decide to relaunch licensing and development of the New Units, the NRC review process will be less burdensome with Luminant as the operator of the New Units under the License Application. As a result, the Debtors did not alter Luminant's status as the operator of the New Units under the Withdrawal Agreements.

16. Although the License Application is in Luminant's name (as operator) and Comanche Peak LLC's name (as owner), the costs associated with preserving the License Application have historically been the obligation of the members of the Comanche Peak Joint Venture, as specified in the LLC Agreement. Consistent with historical practice, the ongoing License Application fees are anticipated to be approximately $80,000 per calendar year in the aggregate, although the NRC has the right to modify fees.

17. In connection with MHI's withdrawal from the Comanche Peak Joint Venture, the parties terminated the LLC Agreement. Under the new limited liability company agreement, NEFH II is the sole member of Comanche Peak LLC. Therefore NEFH II, as the sole member of Comanche Peak LLC, has the obligation to pay the costs associated with maintaining the License Application. As noted above, however, NEFH II has no independent source of revenues to pay such costs outside of capital contributions from its sole member, NEFH I, who has no independent source of funding and whose sole member is Luminant.

18. Because (a) Luminant, in an exercise of its business judgment, determined to keep the License Application in a suspended state for the reasons stated above and determined to maintain its status as the operator of the New Units under License Application, and (b) NEFH II

6

has no independent source of revenues outside of capital contributions from its member (NEFH I, who also has no source of independent funding other than Luminant), Luminant anticipates paying approximately $80,000 on an annualized basis to satisfy such costs.[3] Indeed, if Luminant does not pay the costs associated with preserving the License Application, I believe the NRC may, *sua sponte*, terminate the License Application.

19.     ***Property Taxes and Fees Related to Site of New Units***.  Prior to formation of the Comanche Peak Joint Venture, Luminant owned the real property that was contemplated to be the site of the New Units and the New Unit Property, and was thus obligated to pay the associated property taxes and any fees related to the New Unit Property. In connection with the formation of the Comanche Peak Joint Venture, Luminant contributed the New Unit Property to NEFH I and NEFH I leased the New Unit Property to Comanche Peak LLC. As part of the modifications of the joint venture agreements governing the Comanche Peak Joint Venture that were entered into and approved by the Court earlier this year, Comanche Peak LLC assigned its rights and obligations as tenant under the lease of the New Unit Property to NEFH II.

20.     Although the New Units are not currently being developed, it is still beneficial for NEFH I to continue to own the New Unit Property and for NEFH II to continue to lease the New Unit Property because the New Unit Property would be used for any future development should macroeconomic factors permit the Debtors to restart development of the New Units in the future. Moreover, finding a third-party buyer for the New Unit Property would be extremely difficult and selling the property would not be in the best interests of the Debtors due to the

---

[3] In addition, as described in the MHI Withdrawal Motion, MHI has committed to keep the Design Application open as well (in a suspended status). Because the Design Application seeks approval for the use of MHI's proprietary US-AWPR technology, MHI will bear 100% of the costs of keeping the Design Application open.

7

potential interference that such a sale would likely have on Luminant's existing nuclear plants' operations. The New Unit Property is completely surrounded by property Luminant owns and uses to operate its existing nuclear plants that is within the "secure area" required by the NRC for all nuclear plants. Thus, separating the New Unit Property from the Luminant-owned real property used for operation of Luminant's existing nuclear plants would be difficult from a practical, operational, and regulatory standpoint.

21. Because the New Unit Property is owned by NEFH I and leased to NEFH II, and neither NEFH I nor NEFH II has any independent source of revenues outside of capital contributions from their sole members, which are Luminant and NEFH I, respectively, the Debtors seek authority by this Supplement to permit Luminant to pay the annual property taxes that are due on the New Unit Property, which are estimated to be approximately $15,000 per year for 2014 property tax year, consistent with historical practices, however, county tax policies can be variable.

22. In short, following MHI's withdrawal from the Comanche Peak Joint Venture, I believe Luminant will pay approximately $100,000 annually in costs related to the Comanche Peak Joint Venture. These costs are largely associated with preserving the suspended status of the License Application, which, I believe will save the Debtors significant expense in the long-term if macroeconomic factors permit the Debtors to restart development of the New Units in the future.

[*Remainder of page left intentionally blank*.]

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Dated: November 17, 2014

                                            Respectfully submitted,

                                            */s/ Robert Frenzel*
                                      Robert Frenzel
                                      Senior Vice President and Chief Financial Officer
                                      Luminant Generation Company LLC