IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | ) | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) | Case No. 14-10979 (CSS) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | **Re: D.I. 2798** |

**DECLARATION OF MICHAEL CARTER, SENIOR VICE PRESIDENT, CORPORATE PLANNING, AND ASSISTANT TREASURER OF EFH CORPORATE SERVICES COMPANY, IN SUPPORT OF THE REPLY TO TARRANT REGIONAL WATER DISTRICT'S OBJECTION TO MOTION OF ENERGY FUTURE HOLDINGS CORP., *ET AL.*, FOR ENTRY OF AN ORDER AUTHORIZING LUMINANT GENERATION COMPANY TO REJECT A WATER CONTRACT WITH TARRANT REGIONAL WATER DISTRICT, EFFECTIVE *NUNC PRO TUNC* TO THE PETITION DATE**

Pursuant to 28 U.S.C. § 1746, I, Michael Carter, declare as follows:

1.  I am Senior Vice President, Corporate Planning, and Assistant Treasurer of EFH Corporate Services Company ("EFH Corporate Services"), and the Senior Vice President of Texas Competitive Electric Holdings Company LLC ("TCEH"). EFH Corporate Services, its parent Energy Future Holding Corporation, and its direct and indirect subsidiaries, including TCEH, are collectively referred to as the "Debtors" in this declaration.

2.  I have worked for EFH Corporate Services and its Debtor affiliates since 2005. I am generally familiar with the Debtors' day-to-day operations, financial matters, results of operations, cash flows, and underlying books and records. All facts set forth in this declaration

---

[1] The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, for which joint administration has been granted, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

are based upon my personal knowledge of the Debtors' businesses, operations, and related financial information gathered from my review of their books and records, relevant documents, and information supplied to me by members of the Debtors' management team and advisors.  I am over the age of 18 and duly authorized to execute this declaration on behalf of the Debtors in support of the *Reply to Tarrant Regional Water District's Objection to Motion of Energy Future Holdings Corp.,* et al.*, for Entry of an Order Authorizing Luminant Generation Company to Reject a Water Contract with Tarrant Regional Water District Effective* Nunc Pro Tunc *to the Petition Date* [D.I. 2798] (the "Reply"),[2] filed contemporaneously herewith.  Except as otherwise noted, I have personal knowledge of the matters set forth herein.

3. Prior to the Petition Date, Texas Power & Light Company entered into the Water Contract with TRWD in order to acquire certain water rights necessary for the eventual construction and operation of a steam-electric generating station.  Luminant subsequently became the successor in interest to Texas Power & Light Company under the Water Contract.  Pursuant to the Water Contract, Luminant was given the rights to:  (a) "intercept and impound" a contractually-determined amount of water run-off of Caney Creek in Henderson County, Texas, that would otherwise flow into the Cedar Creek Reservoir,[3] (b) "divert, use, and consume" a contractually-determined amount of water from the Cedar Creek Reservoir,[4] and (c) "install and maintain on Caney Creek, on land owned or leased by [Luminant] such facilities as the Texas

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Reply.

[3] Luminant specifically had the right to "intercept and impound . . . run-off of Caney Creek, in Henderson County, Texas, as . . . permitted by the Texas Water Rights Commission."

[4] The Water Contract allowed Luminant to "divert, use, and consume" from Cedar Creek Reservoir up to 7000 acre feet in a calendar year, but no more than 12,000 acre feet, in four consecutive calendar years.  The Water Contract also gave Luminant the option, prior to May 1, 1985, to increase the amount of water to which it was entitled to divert, use, and consume.  Luminant exercised that option, effective May 1, 1985, by correspondence dated November 1, 1983 to TRWD.

Water Right Commission may permit in order to construct a reservoir (hereinafter called Forest Grove Reservoir) . . . ." In addition, the Water Contract also subordinated TRWD's water rights in and to Caney Creek and Cedar Creek Lake (except those previously conveyed to the City of Ft. Worth and Fort Worth National Bank) to Luminant.

4. The Water Contract expired of its own terms on March 15, 2016, unless renewed by agreement of the parties. However, pursuant to section 12 of the Water Contract, Luminant retained the right to terminate the Water Contract and be released from all obligations and charges after the date of such cancellation, either (a) "prior to beginning the construction of the works herein described," or (b) "in the event of abandonment of the steam-electric generating station or stations" if Luminant "made written request for such payment cancellation not less than one year in advance of the cancellation date, and [Luminant] has restored the natural flow of Caney Creek and its watershed into Cedar Creek." Furthermore, under the terms of the Water Contract, failure to impound or divert water under the Water Contract did not excuse Luminant from its obligations to make payments to TRWD. Accordingly, prior to 2011, Luminant's annual spend under the Water Contract totaled $2.3 million.

5. Subsequent to the execution of the Water Contract, Luminant constructed the Reservoir.[5] To date, Luminant has not constructed the steam-electric generating station or stations contemplated under the Water Contract. Furthermore, since the Water Contract was entered into in 1976, the Debtors have not utilized impounded or diverted water, if any, from Caney Creek or Cedar Creek Lake as contemplated by the Water Contract. Accordingly, prior to

---

[5] The Reservoir is located on Caney Creek, a tributary of Cedar Creek, which is a tributary of the Trinity River, Texas.

the Petition Date, the Debtors reviewed the Water Contract to determine whether it provided any benefits to the Debtors and determined that it did not.

6. The perceived lack of benefit from the Water Contract coupled with the substantial annual cost of the Water Contract led Luminant to analyze the advantages and disadvantages of keeping the Water Contract in place. Luminant's management team and advisors discussed consequences of terminating the Water Contract under Texas Law and determined that the benefit of eliminating the yearly financial burden under the Water Contract outweighed the cost of any negative effects Luminant might incur from terminating the Water Contract, including removing the Forest Grove Reservoir Dam (the "Dam"). Luminant made the decision to terminate and reject the Water Contract on an informed basis, well aware that by doing so, TRWD would continue to claim that Luminant has no water rights independent of the Water Contract and that rejection and/or termination would somehow trigger an obligation to remove the Dam.

7. As a result, by correspondence dated October 25, 2010, Luminant terminated the Water Contract under the first termination option in Section 12 of the Water Contract, gave notice of termination of the Water Contract, effective October 25, 2011, and accordingly advised TRWD that it would "pro rate the payment due on May 1, 2011 to cover the amount due through [October 25, 2011]." Subsequently, by correspondence dated June 30, 2011, from Luminant to TRWD,[6] Luminant transmitted a check in the amount of $1,063,633.16 payable to TRWD to cover the prorated amounts due to TRWD under the Water Contract from May 1, 2011, through

---

[6] TRWD responded to the June 2011 Letter by letter dated July 15, 2011, to TRWD stating that Luminant's cancellation of the Water Contract was not effective because, TRWD claimed, Luminant had not "restored the natural flow of Caney Creek and its watershed into Cedar Creek," as required by section 12 of the Water Contract. Moreover, TRWD claimed that "some degree of impoundment [was] still occurring."

October 25, 2011.  This final payment of "all obligations and charges due from [the Debtor] to the date of such cancellation" was required to satisfy the terms of the Water Contract and cancel the agreement.  In the June 2011 Letter, Luminant reiterated its position that the Water Contract had been terminated pursuant to the Termination Notice.  Luminant repeated this position in correspondence, dated October 8, 2013, from Luminant's general counsel to TRWD.  TRWD, however, has continued to dispute the validity of Luminant's termination of the Water Contract.[7]

8. Although TRWD has refused to acknowledge Luminant's termination of the Water Contract,[8] Luminant asserts that the Water Contract was properly and validly terminated, in accordance with section 12 thereof, well before the Petition Date.  Luminant also asserts that it has, and has had, no further obligations to TRWD since the Cancellation Effective Date.  To the extent the Court determines, however, that the Water Contract was not terminated pursuant to the Termination Notice, the Debtors seek an order rejecting the Water Contract *nunc pro tunc* to the Petition Date.

9. The Debtors considered the advantages and disadvantages of the Water Contract for over four years, and made the decision to reject the Water Contract in good faith because rejection of the Water Contract offers the greatest cost-savings benefit to the Debtors' estate.  Luminant made the decision to reject the Water Contract on an informed basis, well aware that by doing so, TRWD would continue to claim that Luminant has no water rights independent of the Water Contract and that rejection and/or termination would somehow trigger an obligation to remove the Dam.  Attached hereto in this regard, as **Exhibit A** is the Certificate of Adjudication

---

[7] By correspondence from TRWD to Luminant dated September 19, 2013, TRWD's attorneys again stated that Luminant's termination of the Water Contract was not effective and demanded that Luminant pay $5,811,984.30 to TRWD within thirty days.

[8] By correspondence from TRWD to Luminant dated July 15, 2011, and September 19, 2013, TRWD, amongst other things, has claimed that the Termination Notice was ineffective.

No. 08-4983 issued May 5, 1987 in favor of Luminant as "OWNER," which gives Luminant certain water rights separate and distinct from the Water Contract.

10.     Luminant thoughtfully considered the risk that it could be required to remove the Dam and concluded, in its informed business judgment and for the reasons described above, that the benefits of rejecting the Water Contract outweigh the costs. Luminant has thoroughly considered both the advantages and disadvantages of rejecting the Water Contract.

11.     Luminant did not take lightly or capriciously make the decision to seek rejection of the Water Contract. Rather, Luminant has deliberated the costs and benefits of the Water Contract since October 2010. Luminant believes that rejecting the Water Contract is in the Debtors' best interest.

[*Remainder of page intentionally left blank.*]

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Dated:  November 18, 2014				Respectfully submitted,

							*/s/ Michael Carter*
							Michael Carter
							Senior Vice President, Corporate Planning,
							and Assistant Treasurer of EFH Corporate
							Services Company