**ORIGINAL**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: ) | ) Chapter 11 |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] ) | ) Case No. 14-10979 (CSS) |
| Debtors. ) | ) (Jointly Administered) |

**ORDER AUTHORIZING CERTAIN DEBTORS TO ENTER
INTO NON-PROPRIETARY HEDGING AND TRADING ARRANGEMENTS
WITH A TENOR BEYOND DECEMBER 31, 2015 AND SUBJECT TO HEDGE AND
TENOR LIMITATIONS CONSISTENT WITH HISTORICAL PRACTICE**

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors"), for entry of an order (this "Order") authorizing, but not directing, the Hedging and Trading Entities to enter into Non-Proprietary Hedging and Trading Arrangements with a tenor that extends past December 31, 2015 and to utilize the Approved Limits in the ordinary course of business and consistent with historical practices and the Risk Management Guidelines, all as more fully set forth in the Motion and the Nutt Declaration, and the Court having found that it has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and the Court having found that this is a core case pursuant to 28 U.S.C. § 157(b)(2); and the Court having found that venue of this case and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having found that the relief requested in the

---

[1] The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, for which joint administration has been granted, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' proposed claims and noticing agent at http://www.efhcaseinfo.com.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and the Court having found that the Debtors provided appropriate notice of the Motion and the opportunity for a hearing on the Motion under the circumstances; and the Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing, if any, before the Court (the "Hearing"); and the Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before the Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1. The Motion is granted as set forth herein.

2. The Hedging and Trading Entities are authorized, but not directed, to enter into Non-Proprietary Hedging and Trading Arrangements with a tenor beyond December 31, 2015 subject to the Approved Limits and in a manner consistent with the Risk Management Guidelines.

3. To clarify paragraph 20 of the Non-Proprietary Trading Order, the limitations set forth in such paragraph regarding hedge and tenor limitations, and the relief granted herein with respect to hedge and tenor limitations, shall not apply to Non-Proprietary Hedging and Trading Arrangements for uranium and Powder River Basin coal and the Hedging and Trading Entities may enter into Non-Proprietary Hedging and Trading Arrangements with respect to uranium and Powder River Basin coal in the ordinary course of business and in a manner consistent with the Risk Management Guidelines. Additionally, to clarify paragraph 20 of the Non-Proprietary Trading Order, the limitations set forth in such paragraph regarding tenor limitations, and the relief granted herein with respect to tenor limitations, shall not apply to transactions (including Non-Proprietary Hedging and Trading Arrangements) entered into to hedge the Debtors' retail

obligations and the Hedging and Trading Entities may enter into Non-Proprietary Hedging and Trading Arrangements to hedge the Debtors' retail obligations in the ordinary course of business, subject to the Approved Limits (but without regard to the tenor restrictions set forth in the Approved Limits).

4. To clarify the second sentence of paragraph 20 of the Non-Proprietary Trading Order, the Hedging and Trading Entities may, with respect to their Non-Proprietary Hedging and Trading Arrangements, hedge up to 100% of their exposure to commodity risks, subject to the Approved Limits, *provided, however* that the Debtors shall not be permitted to amend the tenor and hedge limitations set forth in the Approved Limits in a manner that, in the Debtors' judgment, varies materially from the Debtors' historical hedging practices over the past two years without (a) the prior written consent of (i) counsel to the TCEH First Lien Ad Hoc Committee (as defined in the TCEH Cash Collateral Orders), (ii) the DIP Agent (as defined in the TCEH DIP Orders), and (iii) counsel to any statutorily appointed official committee appointed in these chapter 11 cases or (b) further order of the Court.

5. The Hedging and Trading Entities shall provide to advisors to the TCEH Creditors' Committee, advisors to the Official Committee of Unsecured Creditors of Energy Future Holdings Corporation, Energy Future Intermediate Holding Company, LLC, EFIH Finance, Inc., and EECI, Inc., advisors to the ad-hoc committee of TCEH unsecured noteholders, and advisors to the ad-hoc committee of TCEH first lien noteholders (a) written reports twice a month (as of the 15th and end of the month and within three business days of the 15th and end of month) exclusive of counterparty names or identifiers, summarizing the Debtors' Non-Proprietary Hedging and Trading activity percentage hedged by month for the next 27 calendar months for heat rate and natural gas and the cumulative mark-to-market value as of the reporting

date for such commodities, and relevant pricing information for heat rate and natural gas as of the reporting date and from the prior reporting date and (b) three (3) days prior notice before the Hedging and Trading Entities reasonably believe the aggregate percentage hedged on account of Non-Proprietary Hedging and Trading Arrangements with respect to heat rate and natural gas is likely to reach 25% and, again, at 50% for the period 16 to 27 months from the Reference Date.

6.  The absence of an objection by the EFH Creditors' Committee, the TCEH Creditors' Committee; the ad-hoc committee of TCEH unsecured noteholders; Law Debenture Trust Company of New York, in its capacity as indenture trustee under: (i) the 10.25% TCEH senior unsecured notes due 2015; and (ii) the 10.50%/11.25% TCEH senior toggle notes due 2016; or Wilmington Savings Fund Society, FSB, in its capacity as successor trustee under that certain second lien indenture, dated as of October 6, 2010 (as amended or supplemented), to the Motion shall not limit such parties' ability to challenge the Debtors' hedging strategy as part of any enterprise valuation litigation regarding any TCEH Debtor.

7.  Nothing in this Order shall supersede the limitations set forth in the Non-Proprietary Trading Order except as otherwise provided for in this Order.

8.  Nothing in this Order shall affect the relief granted to the Debtors pursuant to the *Final Order (Re: Proprietary Trading Transactions That Do Not Involve the Debtors' Power Generation and Retail Operations) Authorizing the Debtors to (A) Continue Performing Under Prepetition Hedging and Trading Arrangements, (B) Pledge Collateral and Honor Obligations Thereunder, and (C) Enter Into and Perform Under Proprietary Trading Transactions Subject to Internal Risk Management Guidelines* [D.I. 1309].

9.  This Order does not grant any relief with respect to or affect the rights, duties, or obligations of EFIH or EFIH Finance Inc.

10. In accordance with this Order and any other order of this Court, each of the financial institutions at which the Debtors maintain their accounts relating to the payment of the obligations described in this Order is authorized to honor checks and electronic payment requests presented for payment of obligations described in this Order and all fund transfer requests made by the Debtors related thereto to the extent that sufficient funds are on deposit in such amounts.

11. Notwithstanding the relief granted in this Order and any actions taken pursuant to such relief, nothing in this Order shall be deemed: (a) an admission as to the validity of any claim against a Debtor entity; (b) a waiver of the Debtors' rights to dispute any claim on any grounds; (c) a promise or requirement to pay any claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Order or the Motion; (e) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) a waiver or limitation of the Debtors' rights under the Bankruptcy Code or any other applicable law; or (g) an admission that any agreement to which one or more of the Debtors may be party constitutes a Non-Proprietary Hedging and Trading Arrangement or a Proprietary Hedging and Trading Arrangement. Payments made pursuant to this Order shall not be construed as an admission as to the validity of any claim or a waiver of the Debtors' rights to subsequently dispute such claim.

12. Nothing in this Order shall authorize or direct the Debtors to take any action that would violate or breach the terms of the TCEH DIP Credit Agreement (as defined in the TCEH DIP Orders) or violate any order of this Court approving the TCEH DIP Facility.

13. Notwithstanding anything herein to the contrary, the provisions of this Order shall not apply to the First Lien Hedges and Swaps or the Legacy Swaps, and the Debtors are not authorized hereunder to make any payments or other transfers (except for the return of cash

collateral held by Debtors pursuant to the First Lien Hedges and Swaps) on account of or in relation to the First Lien Hedges and Swaps or the Legacy Swaps.

14. Notice of the Motion as provided therein shall be deemed good and sufficient and the requirements of the Local Bankruptcy Rules are satisfied by such notice.

15. Notwithstanding the possible applicability of Bankruptcy Rules 6004(h), 7062, 9014 or otherwise, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

16. Notwithstanding the relief granted in this Order, any payment made by the Debtors pursuant to the authority granted herein shall be subject to the TCEH DIP Orders and TCEH Cash Collateral Orders.

17. All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

18. The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Motion.

19. The Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation of this Order.

Wilmington, Delaware
Dated: __Nov. 20__, 2014

THE HONORABLE CHRISTOPHER S. SONTCHI
UNITED STATES BANKRUPTCY JUDGE