**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| In re: | ) ) | Chapter 11 |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) ) ) | Case No. 14-10979 (CSS) |
| Debtors. | ) ) ) ) ) ) | (Jointly Administered) <br><br> Re: D.I. 2852 , 2853 & 2854 <br> **Hearing Date: December 18, 2014 at 9:30 a.m. (ET)** <br> **Objection Deadline: December 11, 2014 at 4:00 p.m. (ET)** |

**MOTION OF ENERGY FUTURE HOLDINGS CORP. *ET AL.*,
FOR ENTRY OF AN ORDER AUTHORIZING THE DEBTORS TO
FILE UNDER SEAL THE CERTAIN PORTIONS OF COMMERCIALLY
SENSITIVE INFORMATION SET FORTH IN THE DEBTORS' MOTION FOR
ENTRY OF AN ORDER APPROVING THE 2015 COMPENSATION PROGRAMS**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") file this motion (this "Motion")[2] for entry of an order, substantially in the form attached hereto as **Exhibit A**: (a) authorizing the Debtors to file under seal commercially sensitive information ("Commercially Sensitive Information") in the *Debtors' Motion for Entry of an Order Approving the 2015 Compensation Programs* (the "2015 Compensation Programs Motion"), including portions of the supporting declarations of Todd W. Filsinger (the "Filsinger Declaration") and Douglas J. Friske (the "Friske Declaration," and together with the Filsinger Declaration, the "Supporting Declarations"); and (b) directing that this information remain under seal,

---

[1] The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, which are being jointly administered, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

[2] Capitalized terms used but not defined herein have the meanings ascribed to them in the 2015 Compensation Programs Motion (as defined herein), as applicable.

RLF1 11182407v.1

confidential, and not be made available to anyone without the consent of the Debtors or further order from the Court. In support of this Motion, the Debtors respectfully state as follows.

**Background**

1. Concurrently with the filing of this Motion, the Debtors are filing redacted versions of the 2015 Compensation Programs Motion and Supporting Declarations. The Debtors' 2015 Compensation Programs Motion requests authorization to pay certain postpetition amounts under the Debtors' 2015 Compensation Programs and to continue the 2015 Compensation Programs in the ordinary course of business on a postpetition basis. With that motion, the Debtors have submitted for the Court's consideration declarations that include highly-sensitive commercial information, including the specifics of employee compensation strategies as well as core business operations strategy and information.

2. By this Motion, the Debtors seek to file under seal the unredacted portions of the 2015 Compensation Programs Motion and Supporting Declarations. This Court previously ordered sealed similar categories of information in connection with the Debtors' Insider Compensation Programs Motion. *See* Hr'ng Tr. 29:2-31:6, *In re Energy Future Holdings Corp., et al.*, No. 14-10979 (CSS) (Bankr. D. Del. Oct. 8, 2014).

3. The disclosure of this commercially sensitive information to the public is likely to harm the Debtors. First, the information concerning the performance metrics in the 2015 Compensation Programs Motion as well as the declaration of Todd Filsinger, an energy industry expert, concerns, in Mr. Filsinger's words, the Company's "long-range planning, business risks, proprietary customer pricing and margins, and other performance challenges." (T. Filsinger Decl. at ¶ 4.) This information is, in the strictest sense, competitively sensitive, and, if disclosed, may be used by other power producers and retail energy providers to compete against the

2

Debtors in the marketplace. As Mr. Filsinger explains in his declaration, "the public disclosure of the information in [his] declaration has the potential to competitively harm the Debtors." (T. Filsinger Decl. at ¶ 4.) This would unfairly advantage the Debtors' competitors, and should be precluded.

4. Second, the Debtors' competitors in the energy industry would be unfairly advantaged by gaining access to the specifics of a suite of compensation programs for the Debtors' senior management team, including specific compensation amounts not otherwise publicly disclosed. Competitors could use this information to recruit and hire key management employees away from the Debtors. And third, the public release of details about the Debtors' employee compensation strategies, including information about individual incentive payment levels and threshold performance metrics, may also undermine employee morale, thus diminishing workforce productivity and causing potentially disruptive levels of employee turnover during a critical stage in the Debtors' restructuring process.

5. For these reasons, the Debtors seek to protect from disclosure the following information from the Filsinger Declaration:

- Threshold, baseline, and superior metrics and actuals for Luminant EBITDA, TXU Energy EBITDA, Competitive Management EBITDA, and TXU Energy Contribution Margin;

- Information about TXU Energy's competitive positioning in the market;

- Information about Luminant Energy's trading activities; and

- Details about the Luminant Energy Commercial Incentive Plan funding schedule and target levels.

6.      Additionally, the Debtors seek to to protect from disclosure the following information from the Friske Declaration:

- Certain aggregate compensation information regarding the Debtors' senior management from which non-publicly disclosed individual compensation information can be derived.

7.      Lastly, the Debtors seek to protect from disclosure the same information where it is reflected in the 2015 Compensation Programs Motion itself.

## Jurisdiction and Venue

8.      The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Debtors confirm their consent pursuant to rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Bankruptcy Rules") to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

9.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

10.     The bases for the relief requested in this Motion are sections 105(a) and 107(b) of title 11 of the United States Code (the "Bankruptcy Code"), rule 9018 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Local Bankruptcy Rule 9018-1.

## Relief Requested

11.     By this Motion, the Debtors seek entry of an order, substantially in the form attached hereto as **Exhibit A**:  (a) authorizing the Debtors to file under seal unredacted portions

4

of the 2015 Compensation Programs Motion and Supporting Declarations relating to the Debtors' employee compensation strategy and other Commercially Sensitive Information; and (b) directing that these certain portions remain under seal and confidential and not be made available to anyone without the consent of the Debtors or further order from the Court.  The Debtors will provide unredacted copies of the 2015 Compensation Programs Motion and Supporting Declarations, upon request and on a highly confidential basis, to the United States Trustee for the District of Delaware (the "U.S. Trustee") and professionals for the Official Committees of Unsecured Creditors, the EFH Committee, the ad hoc group of TCEH First Lien creditors, ad hoc group of TCEH Unsecured creditors, TCEH Second Lien Indenture Trustee, Fidelity, ad hoc group of EFH Legacy noteholders, ad hoc group of EFIH Unsecured creditors, and ad hoc group of EFIH Second Lien creditors.

## Basis for Relief

12.    The Bankruptcy Code and the Bankruptcy Rules give the Court specific authority to grant the Debtors' request to file under seal the Commercially Sensitive Information contained in the 2015 Compensation Programs Motion and Supporting Declarations.  The Bankruptcy Code provides that "[o]n request of a party in interest, the bankruptcy court shall . . . protect an entity with respect to a trade secret or confidential research, development, or commercial information[.]"  11 U.S.C. § 107(b)(1). Moreover, section 105(a) of the Bankruptcy Code codifies the Court's inherent equitable powers and empowers it to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a).

13.    Bankruptcy Rule 9018 sets forth the procedures by which a party may obtain a protective order authorizing the filing of a document under seal.  The rule provides, in relevant

part, that "[o]n motion, or on its own initiative, with or without notice, the court may make any order which justice requires (1) to protect the estate or any entity in respect of a trade secret or other confidential research, development, or commercial information . . . ." Fed. R. Bankr. P. 9018.  Further, Local Bankruptcy Rule 9018-l(b) provides, in relevant part, that "[a]ny party who seeks to file documents under seal must file a motion to that effect." Del. Bankr. L.R. 9018-l(b).

14. Unlike its counterpart in Rule 26(c) of the Federal Rules of Civil Procedure, section 107(b) of the Bankruptcy Code does not require an entity seeking such protection to demonstrate "good cause." *Video Software Dealers Ass'n v. Orion Pictures Corp.* (*In re Orion Pictures Corp.*), 21 F.3d 24, 28 (2d Cir. 1994).  If the material sought to be protected falls within one of section 107(b)'s enumerated categories, "the court is required to protect a requesting party and has no discretion to deny the application." *Id.* at 27; *accord* 11 U.S.C. § 107(b) ("On request of a party in interest, the bankruptcy court **shall** . . . protect an entity with respect to . . . confidential . . . commercial information . . . .") (emphasis added).

15. Section 107(b)'s protections extend to "confidential . . . commercial information" whose disclosure "would result in 'an unfair advantage to competitors by providing them information as to the commercial operations of the debtor.'" *In re Alterra Healthcare Corp.*, 353 B.R 66, 75 (Bankr. D. Del. 2006) (citing *Orion Pictures*, 21 F.3d at 27-28); *see In re Global Crossing, Ltd.*, 295 B.R. 720, 725 (Bankr. S.D.N.Y. 2003) (finding that the purpose of Bankruptcy Rule 9018 is to "protect business entities from disclosure of information that could reasonably be expected to cause the entity commercial injury").  "Commercial information" in this context need not rise to the level of a trade secret in order to warrant protection. *See Orion Pictures*, 21 F.3d at 27-28 (finding that section 107(b)(l) creates an exception to the general rule

that court records are open to examination by the public and, under this exception, an interested party has to show only that the information it wishes to seal is "confidential" and "commercial" in nature).

16.  Here, the material the Debtors seek to protect includes highly confidential commercial information that enumerates the Debtors' business strategy and budgeting thresholds as well as private details of employee compensation. The Debtors seek to redact the following sensitive commercial information that this Court previously sealed with respect to the Debtors' Insider Compensation Programs Motion:

- The targets and actuals for Luminant EBITDA, TXU Energy's EBITDA, Competitive Management EBITDA, and TXU Energy's Contribution Margin. TXU Energy's Contribution Margin and EBITDA information is extremely sensitive, and the disclosure of either would allow other retail energy providers to decipher the company's business strategy in a highly competitive market. This would result in competitive harm to TXU Energy. Similarly, 2015 Competitive Management EBITDA targets have not been publicly disclosed and are commercially sensitive. If Luminant's EBITDA is disclosed, competitors will be able to back into TXU Energy's EBITDA numbers, thus undermining the redaction of the TXU metrics;

- Information about TXU Energy's competitive positioning in the market—which might be used against TXU if disclosed to other retail energy providers;

- Information about Luminant Energy's trading activities, which is confidential information about a highly fluid and competitive market;

- Details about the Luminant Energy Commercial Incentive Plan funding schedule and target levels—which, if disclosed, would reveal a portion of the actual compensation of one individual (whose compensation information is not disclosed in S.E.C. filings) and may lead to competitive harm, as other trading floors compete for top talent and might use target levels to recruit Luminant employees; and

- Total SPC Long-Term Incentive Plan ("SPC LTIP") payments covering seven members of the Debtors' senior management, from which the compensation of two members—who are not required to publicly disclose compensation information—can be derived, as well as certain additional aggregate compensation information regarding the Debtors' senior management from which non-publicly disclosed individual compensation information can be derived.

17. This information falls squarely within the Bankruptcy Code's protection of confidential and commercial information and should be kept under seal. *See Anthracite Capital*, 492 B.R. at 178 (citing *In re Barney's Inc.*, 201 B.R. 703, 709 (Bankr. S.D.N.Y. 1996)) (noting that pricing formulations and short and long-term marketing strategies are the types of information appropriate for sealing). As in *In re Barney's Inc.*, the material that the Debtors seek to keep under seal includes strategic information related to their financial, customer, and incentive plans, the disclosure of which "could reasonably be expected to cause [the Debtors] commercial injury." *In re Global Crossing, Ltd.*, 295 B.R. 720, 725 (Bankr. S.D.N.Y. 2003).

18. For example, the Debtors' contribution margin, if disclosed, would allow competitors to ascertain the Debtors' business strategy. This information, in turn, could be used to compete against the Debtors, resulting in a dilution of market share for the Debtors and ultimately a reduction in value of the Debtors' estate. Similarly, if potential competitors are to gain knowledge of the Debtors' sensitive financial information that is not otherwise available, such as EBITDA metrics, and hedging strategy, it might attract them to become new market participants—impairing the value of the Debtors' estate. Because disclosure of these figures could cause commercial injury to the Debtors, redaction is both necessary and appropriate.

19. In addition, the Debtors seek to protect details regarding the compensation of two members of their senior management which can be derived from certain aggregates. As this Court recognized with respect to the Debtors' 2014 Insider Compensation Motion, individual compensation information of members of senior management that is never publicly disclosed, and which can be derived from certain aggregate numbers, is sensitive and confidential commercial information. *See* Hr'ng Tr. 30:10-13, *In re Energy Future Holdings Corp., et al.*, No. 14-10979 (CSS) (Bankr. D. Del. Oct. 8, 2014) ("Companies don't go around publishing,

internally let alone externally, salary numbers unless required to do so by the law, bonus numbers unless required to do so by the law.").

20. The individual compensation for the Chief Commercial Officer ("CCO") of Luminant—along with the aggregate numbers in certain tables that, if disclosed, would allow competitors to back-in to the CCO's individual compensation—is also confidential commercial information. Competitors might use this information to recruit this employee—and potentially his reports—away from the Debtors with more attractive financial incentives. Depriving the Debtors of such top talent—especially while in the midst of financial distress—would impair the Debtors' ability to maximize estate value, which Courts have repeatedly found sufficient to merit sealing. *See* Hr'g Tr. at 16:15-18:10; 19:11, *In re Vertis Holdings, Inc.*, Case No. 12-12821 (CSS) (Bankr. D. Del. Nov. 27, 2012) (Dkt. No. 379) (granting order to seal job titles, salaries, and potential payouts if plan metrics are achieved); Hr'g Tr. at 22:21-23:5, *In re Furniture Brands Int'l Inc.*, Case No. 13-12329 (CSS) (Bankr. D. Del. Oct. 11, 2013) (Dkt. No. 549) (granting order to seal participants and their compensation); Hr'g Tr. at 9:15-19; 13:23-25, *In re Green Field Energy Services Inc.*, Case No. 13-12783 (KG) (Bankr. D. Del. Jan. 13, 2014) (Dkt. No. 423) (granting motion to seal, in part, redaction of individual bonus incentives).

21. Moreover, the disclosure of this compensation information might lead to internal issues at the Debtors and affect employee morale. *See* Hr'ng Tr. 30:14-17, *In re Energy Future Holdings Corp., et al.*, Case No. 14-10979 (CSS) (Oct. 8, 2014) ("Disclosing that information publicly will have adverse internal and external consequences to the debtor and put the debtors in a position where they may be harmed in losing key employees or somehow negatively affecting morale."); Hr'g Tr. at 46:13-23, *In re Brookstone Holdings Corp.*, Case No. 14-10752 (BLS) (May 12, 2014) (Dkt. No. 384) (granting motion to seal schedules identifying names, positions of

9

employees, and individual bonuses and noting that publication would also pose internal employee compensation concerns). As a result, this information should be sealed.

22. The Confidential Commercial Information the Debtors seek to seal is, without question, competitively sensitive, and its disclosure has potential to cause "commercial injury" to the Debtors. *In re Alterra Healthcare Corp.*, 353 B.R. at 75. This Court has repeatedly sealed confidential commercial information that, like the materials here, would provide advantage to competitors. *See, e.g.*, Hr'ng Tr. 29:2-31:6, *In re Energy Future Holdings Corp., et al.*, Case No. 14-10979 (CSS) (Bankr. D. Del. Oct. 8, 2014); *In re Green Field Energy Servs., Inc.*, Case No. 13-12783 (KG) (Bankr. D. Del. Jan. 13, 2014); *In re Brookstone Holdings Corp.*, Case No. 14-10752 (BLS) (Bankr. D. Del. May 12, 2014); *In re Vertis Holdings, Inc.*, Case No. 12-12821 (CSS) (Nov. 12, 2012); *In re Solar Trust of America, LLC*, Case No. 12-11136 (KG) (Bankr. D. Del. May 11, 2012); *In re Contract Research Solutions, Inc.*, Case No. 12-11004 (KJC) (Bankr. D. Del. April 13, 2012); *In re Capmark Fin. Grp. Inc.*, Case No. 09-13648 (CSS) (Bankr. D. Del. May 10, 2010); *In re Capmark Fin. Grp. Inc.*, Case No. 09-13648 (CSS) (Bankr. D. Del. Mar. 4, 2010); *In re Accuride Corp.*, Case No. 09-13449 (BLS) (Bankr. D. Del. Nov. 24, 2009); *In re Delta Fin. Corp.*, Case No. 07-11880 (CSS) (Bankr. D. Del. May 2, 2008). This motion is no different.

23. The Debtors thus request permission to file certain unredacted portions of the 2015 Compensation Programs Motion and Supporting Declarations under seal because of the harm that would ensue if the sensitive and highly confidential commercial information contained therein became public information.

**Notice**

24.  The Debtors shall provide notice of this Motion on the date hereof via first class mail to: (a) the U.S. Trustee; (b) counsel to the TCEH Creditors' Committee; (c) the EFH Creditors' Committee and proposed counsel thereto; (d) Wilmington Trust, N.A., in its capacity as administrative agent under the TCEH first lien credit agreement and collateral agent under the TCEH intercreditor agreements and counsel thereto; (e) Bank of New York Mellon Trust Company, N.A., in its capacity as indenture trustee under: (i) the TCEH unsecured pollution control revenue bonds; and (ii) the EFCH 2037 Notes due 2037, and counsel thereto; (f) American Stock Transfer & Trust Company, LLC, in its capacity as indenture trustee under: (i) the 9.75% EFH senior unsecured notes due 2019; (ii) the 10.0% EFH senior unsecured notes due 2020; (iii) the 10.875% EFH LBO senior unsecured notes due 2017; (iv) the 11.25%/12.0% EFH LBO toggle notes due 2017; (v) the 5.55% EFH legacy notes (series P) due 2014; (vi) the 6.50% EFH legacy notes (series Q) due 2024; and (vii) the 6.55% EFH legacy notes (series R) due 2034, and counsel thereto; (g) Computershare Trust Company, N.A. and Computershare Trust Company of Canada, in their capacities as indenture trustee under: (i) the 11.0% EFIH senior secured second lien notes due 2021; and (ii) the 11.75% EFIH senior secured second lien notes due 2022, and counsel thereto; (h) UMB Bank, N.A. in its capacity as indenture trustee under: (i) the 9.75% EFIH senior unsecured notes due 2019; and (ii) the 11.25%/12.25% EFIH senior toggle notes due 2018, and counsel thereto; (i) Delaware Trust Company of Delaware in its capacity as indenture trustee under: (i) the 6.875% EFIH senior secured notes due 2017; (ii) the 10.0% EFIH senior secured notes due 2020; and (iii), the 11.50% TCEH senior secured notes due 2020, and counsel thereto; (j) Law Debenture Trust Company of New York in its capacity as indenture trustee under: (i) the 10.25% TCEH senior unsecured notes due 2015; and (ii) the

10.50%/11.25% TCEH senior toggle notes due 2016, and counsel thereto; (k) Wilmington Savings Fund Society, FSB in its capacity as indenture trustee under the 15.0% TCEH senior secured second lien notes due 2021, and counsel thereto; (l) counsel to certain holders of claims against the Debtors regarding each of the foregoing described in clauses (c) through (j); (m) the agent for the TCEH debtor-in-possession financing facility and counsel thereto; (n) the agent for the EFIH debtor-in-possession financing facility and counsel thereto; (o) counsel to certain holders of equity in Texas Energy Future Holdings Limited Partnership; (p) counsel to the Ad Hoc Committee of TCEH Unsecured Noteholders; (q) counsel to the Ad Hoc Committee of TCEH Second Lien Noteholders; (r) Oncor Electric Delivery Holdings Company LLC and counsel thereto; (s) Oncor Electric Delivery Company LLC and counsel thereto; (t) the Securities and Exchange Commission; (u) the Internal Revenue Service; (v) the Office of the United States Attorney for the District of Delaware; (w) the Office of the Texas Attorney General on behalf of the Public Utility Commission of Texas; (x) counsel to the Electric Reliability Council of Texas; (y) those parties that have requested notice pursuant to Bankruptcy Rule 2002; and (z) those parties who have requested notice pursuant to Bankruptcy Rule 2002.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

## **No Prior Request**

25.    No prior request for the relief sought in this Motion has been made to this or any other court.

[*Remainder of page intentionally left blank.*]

WHEREFORE, the Debtors respectfully request that the Court enter the order substantially in the form attached hereto as **Exhibit A**, granting the relief requested in this Motion and granting such other and further relief as is appropriate under the circumstances.

Wilmington, Delaware
Dated:  November 22, 2014

/s/ William A. Romanowicz
**RICHARDS, LAYTON & FINGER, P.A.**
Mark D. Collins (No. 2981)
Daniel J. DeFranceschi (No. 2732)
Jason M. Madron (No. 4431)
William A. Romanowicz (No. 5794)
920 North King Street
Wilmington, Delaware 19801
Telephone:     (302) 651-7700
Facsimile:      (302) 651-7701
Email:            collins@rlf.com
                     defranceschi@rlf.com
                     madron@rlf.com

-and-

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Edward O. Sassower, P.C. (admitted *pro hac vice*)
Stephen E. Hessler (admitted *pro hac vice*)
Brian E. Schartz (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022-4611
Telephone:     (212) 446-4800
Facsimile:      (212) 446-4900
Email:            edward.sassower@kirkland.com
                     stephen.hessler@kirkland.com
                     brian.schartz@kirkland.com

-and-

James H.M. Sprayregen, P.C. (admitted *pro hac vice*)
Marc Kieselstein, P.C. (admitted *pro hac vice*)
Chad J. Husnick (admitted *pro hac vice*)
Steven N. Serajeddini (admitted *pro hac vice*)
300 North LaSalle
Chicago, Illinois 60654
Telephone:     (312) 862-2000
Facsimile:      (312) 862-2200
Email:            james.sprayregen@kirkland.com
                     marc.kieselstein@kirkland.com
                     chad.husnick@kirkland.com
                     steven.serajeddini@kirkland.com

Co-Counsel to the Debtors and Debtors in Possession