**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) | Case No. 14-10979 (CSS) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | **Hearing Date:  December 18, 2014 at 9:30 a.m.** |
| | ) | **Obj. Deadline: December 11, 2014 at 4:00 p.m.** |

**MOTION OF ENERGY FUTURE
HOLDINGS CORP., *ET AL.*, FOR AN ORDER
(A) AUTHORIZING ENTRY INTO AND PERFORMANCE
UNDER THE SETTLEMENT AGREEMENT BETWEEN CERTAIN
OF THE DEBTORS AND SIERRA CLUB PURSUANT TO SECTION 363(B)
OF THE BANKRUPTCY CODE AND RULE 9019 OF THE FEDERAL RULES
OF BANKRUPTCY PROCEDURES AND (B) MODIFYING THE AUTOMATIC STAY**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") file

this motion (this "Motion") for entry of an order, substantially in the form attached hereto as

**Exhibit A** (the "Order"), (a) authorizing entry into and performance under the settlement

agreement (the "Settlement Agreement") between Energy Future Holdings Corp. ("EFH Corp."),

Luminant Generation Company LLC ("Luminant"), and Big Brown Power Company LLC ("Big

Brown") (collectively, the "Settling Debtors") and Sierra Club (together with the Settling

Debtors, the "Parties") substantially in the form attached hereto as **Exhibit 1** to **Exhibit A,** and

(b) modifying the automatic stay provided under section 362 of the Bankruptcy Code solely to

the extent necessary (i) in *Sierra Club v. Energy Future Holdings Corp. and Luminant*

*Generation Company LLC*, No. 5:10-cv-00156-MHS-CMC (E.D. Tex.), to allow the Parties to

---

[1]    The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810.  The location of the
debtors' service address is 1601 Bryan Street, Dallas, Texas 75201.  Due to the large number of debtors in these
chapter 11 cases, for which joint administration has been granted, a complete list of the debtors and the last four
digits of their federal tax identification numbers is not provided herein.  A complete list of such information
may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

file a stipulated notice of voluntary dismissal, and (ii) in *Sierra Club v. Energy Future Holdings et al.*, No. 14-50400 (5th Cir. filed Apr. 28, 2014), to allow Sierra Club to file an unopposed motion to dismiss.  In support of this Motion, the Debtors submit the *Declaration of Robert Frenzel in Support of the Motion of Energy Future Holdings Corp.,* et al.*, for an Order (A) Authorizing Entry into and Performance Under the Settlement Agreement Between Certain of the Debtors and Sierra Club Pursuant to Section 363(b) of the Bankruptcy Code and Rule 9019 of the Federal Rules of Bankruptcy Procedures, and (B) Modifying the Automatic Stay* (the "Frenzel Declaration"), filed contemporaneously herewith.  In further support of this Motion, the Debtors respectfully submit as follows.

## Jurisdiction and Venue

1.      The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012.   This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Debtors consent pursuant to rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Bankruptcy Rules") to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The bases for the relief requested in this Motion are section 363 of title 11 of the United States Code (the "Bankruptcy Code") and rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

2

**Relief Requested**

4.      By this Motion, the Debtors seek entry of the Order (a) authorizing the Settling
Debtors to enter into and perform under the Settlement Agreement, and (b) modifying the
automatic stay provided under section 362 of the Bankruptcy Code, solely to the extent
necessary to implement the terms of the Settlement Agreement.

**Background**

5.      On April 29, 2014, each of the Debtors filed a voluntary petition with the Court
under chapter 11 of the Bankruptcy Code.  The Debtors are operating their businesses and
managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the
Bankruptcy Code.  The Court has entered an order for joint administration of these chapter 11
cases.  The Court has not appointed a trustee.  The Office of the United States Trustee for the
District of Delaware (the "U.S. Trustee") formed an official committee of unsecured creditors of
Energy Future Competitive Holdings Company LLC ("EFCH"), Texas Competitive Electric
Holdings Company LLC ("TCEH"), the direct and indirect Debtor subsidiaries of EFCH and
TCEH, and EFH Corporate Services Company (the "TCEH Creditors' Committee") on May 13,
2014 [D.I. 420] and an official committee of unsecured creditors of Energy Future Holdings
Corp., Energy Future Intermediate Holding Company, LLC, EFIH Finance, Inc., and EECI, Inc.
(the "EFH Creditors' Committee") on October 27, 2014 [D.I. 2570].   Further information
regarding the Debtors' business operations and capital structure is set forth in the declaration of
Paul Keglevic in support of the Debtors' first day motions [D.I. 98].

**I.      The Litigation with Sierra Club.**

6.      The Settling Debtors and Sierra Club have been engaged in environmental
litigation since 2010.  As described below, the Settlement Agreement resolves all current and
currently threatened litigation between the Settling Debtors and Sierra Club, and provides for a

release by Sierra Club of all claims it may have against the Debtors through and including the effective date of the Settlement Agreement.

7.    The Settling Debtors have one outstanding cause of action against Sierra Club for $6.45 million (the "Fee Award").  The Fee Award stems from district court litigation brought against the Settling Debtors by Sierra Club under the Clean Air Act (the "CAA").  On July 24, 2014, this Court entered an order finding that the automatic stay does not preclude the Settling Debtors from collecting the Fee Award (the "Fee Award Order").[2]

8.    Comparatively, Sierra Club has several current and threatened causes of action against the Settling Debtors, which are being settled or otherwise resolved through the Settlement Agreement:

    (a) Sierra Club filed lawsuits against Luminant and EFH Corp. alleging violations of the CAA at Luminant's Martin Lake Steam Electric Station[3] and Big Brown Generating Station[4] (collectively, the "CAA Cases");

    (b) Sierra Club sent letters to EFH Corp. and its subsidiaries alleging violations of the CAA at Luminant's Monticello Steam Electric Station and Sandow Power Station Unit 4, giving notice of intent to sue under the CAA (collectively, the "Notice of Intent Claims");

    (c) EIP, on behalf of itself and Sierra Club, petitioned the EPA to object to the renewal of certain of Luminant's operating permits (collectively, the "Objection Petitions"), and Sierra Club filed a lawsuit challenging the EPA's failure to timely respond to the Objection Petitions (the "Timing Lawsuit");[5]

    (d) Sierra Club previously sought to intervene in pending litigation between the United States and Luminant relating to alleged violations of the CAA at

---

[2]    *Order Determining Applicability of the Automatic Stay to Nonbankruptcy Litigation Involving Certain of the Debtors* [D.I. 1686].

[3]    *Sierra Club v. Energy Future Holdings Corp.*, No. 5:10-cv-00156-MHS-CMC (E.D. Tex. filed Sept. 2, 2010).

[4]    *Sierra Club v. Energy Future Holdings Corp.*, No. 6:12-cv-00108-WSS (W.D. Tex. filed May 1, 2012).

[5]    *Envtl. Integrity Project & Sierra Club v. McCarthy*, No. 14-1196-CRC (D. D.C. filed July 16, 2014).

4

Luminant's Martin Lake Steam Electric Station and Big Brown Generating Station (the "New Source Review Case");[6] and

(e) Sierra Club and the Environmental Integrity Project ("EIP") submitted a Freedom of Information Act request (the "FOIA Request") to the Environmental Protection Agency (the "EPA") requesting copies of certain documents produced by Luminant relating to the New Source Review Case (the "Luminant Referral Documents"), and Sierra Club filed a motion to intervene in a resulting case between Luminant and the EPA relating to the confidential nature of the Luminant Referral Documents ("the Reverse FOIA Case").[7]

9.    The above causes of action are at varying stages of litigation associated with varying levels of risk.  The Settling Debtors estimate that resolving each cause of action through the civil litigation process would take several more years, cost millions of dollars in additional fees and expenses, and would be a distraction to the Debtors' business operations.  Furthermore, the Settling Debtors believe that, due to the inherent uncertainty of litigation, there is a risk that the Settling Debtors will not be able to recover the full $6.45 million amount of the Fee Award and might not prevail on all other threatened and pending litigation.  As detailed below, the Settling Debtors believe that the Settlement Agreement is the most effective and efficient way to minimize the uncertainties surrounding Sierra Club's causes of action and claims and maximize value for the Debtors' estates.

## II.    The Settlement Agreement.

10.    In an effort to consensually resolve causes of action between Sierra Club and the Settling Debtors, the Parties engaged in arms'-length discussions after entry of the Fee Award Order.  These discussions were productive, and the parties agreed to compromise their respective

---

[6]    *United States v. Luminant Generation Co.*, No. 3:13-cv-03236-K (N.D. Tex. filed Aug. 16, 2013).

[7]    *Luminant Generation Co. v. EPA*, No. 4:14-cv-172-RC-ALM (E.D. Tex. filed Mar. 25, 2014).

causes of action on the terms set forth in the Settlement Agreement.  Through the Settlement

Agreement, the Parties agreed as follows:[8]

    (a) ***Resolution of Causes of Action and the Fee Award.***  The CAA Cases (including related appeals) and the Notice of Intent Claims will be resolved with prejudice and compromised without further litigation, Sierra Club will withdraw and release the Notice or Intent Claims, and Sierra Club and Luminant will file a joint Notice of Satisfaction of Judgment extinguishing Sierra Club's monetary liability under the Fee Award;

    (b) ***Intervention in the New Source Review Case.***  Luminant will not oppose Sierra Club's motion to intervene in the New Source Review Case under certain negotiated limitations, and Luminant will provide Sierra Club with access to the Luminant Referral Documents under the terms of a sealing or protective order entered in the New Source Review Case;

    (c) ***Withdrawal of the FOIA Request.***  Sierra Club and EIP will withdraw the FOIA Request and will not reinitiate any request for the Luminant Referral Documents, and Sierra Club and EIP will withdraw from and not reinitiate participation in the Reverse FOIA Case;

    (d) ***Withdrawal of the Objection Petitions.***  Sierra Club will withdraw and not refile or further participate in the Objection Petitions or subsequent litigation related to the EPA's action on the Objection Petitions and will withdraw with prejudice from the Timing Lawsuit;

    (e) ***General Release.***  Sierra Club will release all past claims against the Debtors accruing or arising from any acts or events occurring prior to and through the effective date of the Settlement Agreement; and

    (f) ***Other Actions.***  The Settlement Agreement will not affect any regulatory, permitting, or court actions beyond those identified in the Settlement Agreement (including the general releases of claims up to and including the date of the Settlement Agreement).

## Basis for Relief

**I.**    **The Settlement Agreement is Fair and in the Best Interests of the Settling Debtors' Estates, Is a Proper Exercise of the Settling Debtors' Business Judgment, and Should Be Approved.**

    11.    Bankruptcy Rule 9019(a) provides, in relevant part:

---

[8]    The summaries of the Settlement Agreement set forth in this section are qualified in their entirety by the provisions of the Settlement Agreement.  To the extent there exists any inconsistency between this summary and the Settlement Agreement, the Settlement Agreement shall govern.

> On motion by the [debtor in possession] and after notice and a hearing, the court may approve a compromise or settlement. Notice shall be given to creditors, the United States trustee, . . . and indenture trustee as provided in Rule 2002 and to any other entity as the court may direct.

Fed. R. Bankr. P. 9019(a).

12.    The Settlement Agreement is subject to approval by the Court under Bankruptcy Rule 9019(a).   Settlements and compromises are tools often utilized to expedite case administration and to reduce unnecessary administrative costs; as such, they are favored in bankruptcy.  *See Myers v. Martin*, 91 F.3d 389, 393 (3d Cir. 1996) ("To minimize litigation and expedite the administration of a bankruptcy estate, '[c]ompromises are well favored in bankruptcy."); *see also Will v. Nw. Univ.*, 434 F.3d 639, 644 (3d Cir. 2006); *In re Key3Media Grp., Inc.*, 2006 WL 2842462, at *3 (D. Del. Oct. 2, 2006); *In re Adelphia Commc'n Corp.*, 361 B.R. 337, 348 (Bankr. D. Del. 2007).  Pursuant to Bankruptcy Rule 9019(a), a bankruptcy court may, after appropriate notice and a hearing, approve a compromise or settlement so long as the proposed settlement is fair, reasonable, and in the best interest of the estate.  *See In re Marvel Entm't Grp., Inc.*, 222 B.R. 243, 249 (D. Del 1998) ("[T]he ultimate inquiry [is] whether 'the compromise is fair, reasonable, and in the interest of the estate.'") (citation omitted); *In re Nw. Corp.*, WL 2704341, at *6 (Bankr. D. Del. July 10, 2008) ("the bankruptcy court must determine whether the compromise is fair, reasonable, and in the best interests of the estate") (citation omitted); *In re Key3Media Grp., Inc.*, 336 B.R. 87, 92 (Bankr D. Del. 2005) ("the bankruptcy court has a duty to make an informed, independent judgment that the compromise is fair and equitable").

13.    A proposed settlement need not be the best result that a debtor could have achieved, but only must fall within the "reasonable range of litigation possibilities."  *In re Energy Corp.*, 886 F.2d 912, 929 (7th Cir. 1989); *In re Sea Containers Ltd.*, 2008 WL 4296562,

RLF1 11191409v.1

at *5 (Bankr. D. Del. Sept. 19, 2008); *In re Key3Media Grp. Inc.*, 2006 WL 2842462, at *3 (D. Del. Oct. 2, 2006).   Settlements generally are practical resolutions and are well within the reasonable range of litigation possibilities.   Bankruptcy courts commonly approve of settlements and often cite their cost-saving benefits.

14.     In determining whether a settlement is fair and equitable, the Third Circuit has adopted a balancing test, under which a bankruptcy court should decide whether to approve a particular compromise or settlement.   The factors of the balancing test are: "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors." *Martin*, 91 F.3d at 393*; see also In re Key3Media Grp. Inc.*, 336 B.R. at 93 (when determining whether a compromise is in the best interests of the estate, courts must "assess and balance the value of the claim that is being compromised against the value of the estate of the acceptance of the compromise proposal").

15.     Additionally, under section 363(b)(1) of the Bankruptcy Code, a debtor, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."   11 U.S.C. § 363(b)(1).   Pursuant to this section, the Court should approve transactions outside the ordinary course of business if the proposed use of estate assets is a reasonable exercise of the Debtors' business judgment.   If a valid business justification exists for the use or sale of property, there is a strong presumption that "in making a business decision the directors . . . acted on an informed basis, in good faith and in an honest belief that the action taken was in the best interests of the company."   *Official Comm. of Subordinated Bondholders v. Integrated Res., Inc.*, (*In re Integrated Res., Inc.*), 147 B.R. 548, 567 (Bankr. D. Del. 2008)

(quoting *Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985)). Generally, when applying the business judgment standard, courts grant great deference to debtors' business decisions.

16. Based on the above factors, the Settling Debtors believe the Settlement Agreement represents a fair and reasonable compromise that is in the best interests of the Settling Debtors' estates. As contemplated by the Settlement Agreement, the Settling Debtors will be relieved from defending against multiple current and threatened lawsuits relating to Sierra Club's environmental and administrative causes of action. The Settlement Agreement will resolve such current and threatened lawsuits on a consensual and timely basis without the costs attributed to further potential litigation, and without the uncertainty of success in the current and threatened litigation. This will allow the Settling Debtors to avoid the delay, risks, and distractions of numerous litigations, including federal court complaints and cross-complaints.

17. In return for these benefits, the Settling Debtors agreed to forgo collection of the Fee Award. The Settling Debtors believe that, due to the inherent uncertainty of litigation, there is a risk that the Settling Debtors will not be able to recover the full $6.45 million amount of the Fee Award and might not prevail on all other threatened and pending litigation. Accordingly, the Settling Debtors believe the benefits of the Settlement Agreement outweigh the costs. The Settling Debtors, in consultation with their advisors, have decided that the Settlement Agreement is the most effective and efficient way of resolving Sierra Club's current and threatened causes of action and maximizing value for the Debtors' estates.

18. In consideration of all these factors, the Debtors respectfully request that the Court approve the Settlement Agreement pursuant to Bankruptcy Rule 9019 and section 363 of the Bankruptcy Code.

RLF1 11191409v.1

**II.    The Debtors Seek a Modification of the Automatic Stay to Implement the Terms of the Settlement Agreement.**

19.    Section 362(a) of the Bankruptcy Code operates to stay:

> the commencement or continuation, including the issuance or employment of process of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to receive a claim against the debtor that arose before the commencement of the case under this title . . . .

11 U.S.C. § 362(a)(1).  Section 362, however, also permits a debtor or other parties in interest to request a modification or termination of the automatic stay for "cause."  *Id*. at § 362(d)(1).

20.    The Debtors seek authorization, under section 362(d) of the Bankruptcy Code, to modify the automatic stay solely to the extent necessary to implement the terms of the Settlement Agreement.  In particular, the Debtors request modification of the stay to allow for dismissal of the CAA Cases, including the Consolidated Appeal, pursuant to the Settlement Agreement.

**<u>Notice</u>**

21.    The Debtors shall provide notice of this Motion on the date hereof via first class mail to:  (a) the U.S. Trustee; (b) counsel to the TCEH Creditors' Committee; (c) the EFH Creditors' Committee and proposed counsel thereto; (d) Wilmington Trust, N.A., in its capacity as administrative agent under the TCEH first lien credit agreement and collateral agent under the TCEH intercreditor agreements and counsel thereto; (e) Bank of New York Mellon Trust Company, N.A., in its capacity as indenture trustee under:  (i) the TCEH unsecured pollution control revenue bonds; and (ii) the EFCH 2037 Notes due 2037, and counsel thereto; (f) American Stock Transfer & Trust Company, LLC, in its capacity as indenture trustee under: (i) the 9.75% EFH senior unsecured notes due 2019; (ii) the 10.0% EFH senior unsecured notes due 2020; (iii) the 10.875% EFH LBO senior unsecured notes due 2017; (iv) the 11.25%/12.0% EFH LBO toggle notes due 2017; (v) the 5.55% EFH legacy notes (series P) due 2014; (vi) the

6.50% EFH legacy notes (series Q) due 2024; and (vii) the 6.55% EFH legacy notes (series R) due 2034, and counsel thereto; (g) Computershare Trust Company, N.A. and Computershare Trust Company of Canada, in their capacities as indenture trustee under:  (i) the 11.0% EFIH senior secured second lien notes due 2021; and (ii) the 11.75% EFIH senior secured second lien notes due 2022, and counsel thereto; (h) UMB Bank, N.A. in its capacity as indenture trustee under:  (i) the 9.75% EFIH senior unsecured notes due 2019; and (ii) the 11.25%/12.25% EFIH senior toggle notes due 2018, and counsel thereto; (i) Delaware Trust Company of Delaware in its capacity as indenture trustee under:  (i) the 6.875% EFIH senior secured notes due 2017; (ii) the 10.0% EFIH senior secured notes due 2020; and (iii), the 11.50% TCEH senior secured notes due 2020, and counsel thereto; (j) Law Debenture Trust Company of New York in its capacity as indenture trustee under:  (i) the 10.25% TCEH senior unsecured notes due 2015; and (ii) the 10.50%/11.25% TCEH senior toggle notes due 2016, and counsel thereto; (k) Wilmington Savings Fund Society, FSB in its capacity as indenture trustee under the 15.0% TCEH senior secured second lien notes due 2021, and counsel thereto; (l) counsel to certain holders of claims against the Debtors regarding each of the foregoing described in clauses (c) through (j); (m) the agent for the TCEH debtor-in-possession financing facility and counsel thereto; (n) the agent for the EFIH debtor-in-possession financing facility and counsel thereto; (o) counsel to certain holders of equity in Texas Energy Future Holdings Limited Partnership; (p) counsel to the Ad Hoc Committee of TCEH Unsecured Noteholders; (q) counsel to the Ad Hoc Committee of TCEH Second Lien Noteholders; (r) Oncor Electric Delivery Holdings Company LLC and counsel thereto; (s) Oncor Electric Delivery Company LLC and counsel thereto; (t) the Securities and Exchange Commission; (u) the Internal Revenue Service; (v) the Office of the United States Attorney for the District of Delaware; (w) the Office of the Texas

Attorney General on behalf of the Public Utility Commission of Texas; (x) counsel to the Electric Reliability Council of Texas; (y) those parties that have requested notice pursuant to Bankruptcy Rule 2002; and (z) the Sierra Club and counsel thereto.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

**No Prior Request**

22.    No prior request for the relief sought in this Motion has been made to this or any other court.

*[Remainder of page intentionally left blank.]*

12

WHEREFORE, the Debtors respectfully request that the Court enter the Order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested in this Motion and granting such other and further relief as is appropriate under the circumstances.

Wilmington, Delaware
Dated: November 24, 2014

/s/ *William A. Romanowicz*
**RICHARDS, LAYTON & FINGER, P.A.**
Mark D. Collins (No. 2981)
Daniel J. DeFranceschi (No. 2732)
Jason M. Madron (No. 4431)
William A. Romanowicz (No. 5794)
920 North King Street
Wilmington, Delaware 19801
Telephone:        (302) 651-7700
Facsimile:        (302) 651-7701
Email:        collins@rlf.com
        defranceschi@rlf.com
        madron@rlf.com

-and-

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Edward O. Sassower, P.C. (admitted *pro hac vice*)
Stephen E. Hessler (admitted *pro hac vice*)
Brian E. Schartz (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022-4611
Telephone:        (212) 446-4800
Facsimile:        (212) 446-4900
Email:        edward.sassower@kirkland.com
        stephen.hessler@kirkland.com
        brian.schartz@kirkland.com

-and-

James H.M. Sprayregen, P.C. (admitted *pro hac vice*)
Marc Kieselstein, P.C. (admitted pro hac vice)
Chad J. Husnick (admitted *pro hac vice*)
Steven N. Serajeddini (admitted *pro hac vice*)
300 North LaSalle
Chicago, Illinois 60654
Telephone:        (312) 862-2000
Facsimile:        (312) 862-2200
Email:        james.sprayregen@kirkland.com
        marc.kieselstein@kirkland.com
        chad.husnick@kirkland.com
        steven.serajeddini@kirkland.com

*Co-Counsel to the Debtors and Debtors in Possession*