**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) Case No. 14-10979 (CSS) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |
| | ) **Objection Date: December 11, 2014 at 4:00 p.m. ET** |
| | ) **Hearing Date: December 18, 2014 at 9:30 a.m. ET** |
| | ) |

**MOTION OF ENERGY FUTURE HOLDINGS CORP., *ET AL.*,
FOR ENTRY OF AN ORDER AUTHORIZING THE KPMG DEBTORS
AND KPMG DEBTORS IN POSSESSION TO EXPAND THE RETENTION
AND EMPLOYMENT OF KPMG LLP AS BANKRUPTCY ACCOUNTING
AND TAX ADVISORS EFFECTIVE NUNC PRO TUNC TO AUGUST 1, 2014**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") file

this motion (the "Motion") for entry of an order, substantially in the form attached hereto as

**Exhibit A** (the "Order"),  pursuant to sections 327(a) and 328 of title 11 of the United States

Code, 11 U.S.C. §§ 101-1532 (as amended, the "Bankruptcy Code"), rules 2014(a) and 2016 of

the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), rules 2014-1 and 2016-2

of the Local Bankruptcy Rules of Bankruptcy Practice and Procedure of the United States

Bankruptcy Court for the District of Delaware (the "Local Bankruptcy Rules"), and the *Order*

*Authorizing the Debtors to Retain and Employ KPMG LLP as Bankruptcy Accounting and Tax*

*Advisors Effective* Nunc Pro Tunc *to the Petition Date* including the Engagement Letter attached

to the Original Application as Exhibit C (collectively the "Original Order") [D.I. 2054],

---

[1]     The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810.  The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201.  Due to the large number of debtors in these chapter 11 cases, which are being jointly administered, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

authorizing Energy Future Competitive Holdings Company LLC ("EFCH"), Texas Competitive Electric Holdings Company LLC ("TCEH"), the direct and indirect Debtor-subsidiaries of EFCH and TCEH, and EFH Corporate Services Company ("EFH Corporate Services" and together with EFCH, TCEH, and their direct and indirect Debtor-subsidiaries, the "KPMG Debtors") to: (a) extend the scope of the retention and employment of KPMG LLP ("KPMG") as bankruptcy accounting and tax advisors and (b) establish additional compensation terms that correspond to the additional services *nunc pro tunc* to August 1, 2014.  In support of this Motion, the Debtors submit the *Declaration of Thomas D. Bibby in Support of the Motion of Energy Future Holdings Corp., et al., for Entry of an Order Authorizing the KPMG Debtors and KPMG Debtors in Possession to Expand the Retention and Employment of KPMG LLP as Bankruptcy Accounting and Tax Advisors Effective* Nunc Pro Tunc *to August 1, 2014* (the "Additional Services Bibby Declaration") filed contemporaneously with this Motion.  In addition, the Debtors respectfully state as follows.

## Jurisdiction and Venue

1.    The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Debtors consent, pursuant to rule 9013-1(f) of the Local Bankruptcy Rules, to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2.    Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The bases for the relief requested in this Motion are sections 327(a) and 328 of the Bankruptcy Code, Bankruptcy Rules 2014(a) and 2016, and Local Bankruptcy Rules 2014-1 and 2016-2.

## Relief Requested

4.      By this Motion, the Debtors seek entry of an Order authorizing the KPMG Debtors to expand the scope of KPMG's services to:  (a) continue to remediate IT deficiencies identified through the KPMG Debtors' Sarbanes Oxley Act compliance efforts, (b) expand the length of services of a previously approved statement of work referenced in the Original Order, (c) provide accounting services key to the KPMG Debtors' restructuring, (d) initiate the next of phase of model reconciliation services and Apptio costing services, (e) build out the KPMG Debtors information technology asset management system, and (f) support the planning, analysis, and design of the Enterprise Architecture & Innovation (the "EA&I") team's target-state for the functional and operating models (collectively the "Additional Services"), and (g) establish additional compensation terms for the Additional Services.

5.      As discussed in greater detail below, the KPMG Debtors believe that the continued services of KPMG as bankruptcy accounting and tax advisors are in the best interests of the Debtors and their estates.  Moreover, given KMPG's familiarity with the KPMG Debtors' business and financial affairs, the KPMG Debtors believe that extending KPMG's engagement to include the Additional Services is appropriate under the circumstances.

## Background

6.      On April 29, 2014 (the "Petition Date"), each of the Debtors filed a voluntary petition with the Court under the Bankruptcy Code.  The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of

3

the Bankruptcy Code.  The Court has entered a final order for joint administration of these chapter 11 cases [D.I. 849].  The Court has not appointed a trustee.  The Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") formed an official committee of unsecured creditors of EFCH, TCEH, the direct and indirect Debtor-subsidiaries of EFCH and TCEH, and EFH Corporate Services (the "TCEH Creditors' Committee") on May 13, 2014 [D.I. 420] and an official committee of unsecured creditors of Energy Future Holdings Corp., Energy Future Intermediate Holding Company, LLC, EFIH Finance, Inc., and EECI, Inc. (the "EFH Creditors' Committee") on October 27, 2014 [D.I. 2570].  Further information regarding the Debtors' business operations and capital structure is set forth in the declaration of Paul Keglevic in support of the Debtors' first day motions [D.I. 98].

7.       On May 29, 2014, the Debtors filed the *Application of Energy Future Holdings Corp. et al., for Entry of an Order Authorizing the Debtors to Retain and Employ KPMG LLP as Bankruptcy Accounting and Tax Advisors Effective* Nunc Pro Tunc *to the Petition Date* [D.I. 652] (the "Original Application") and the *Declaration of Thomas D. Bibby in Support of the Application of Energy Future Holdings Corp.,* et at., *for Entry of an Order Authorizing the Debtors to Retain and Employ KPMG LLP as Bankruptcy Accounting and Tax Advisors Effective* Nunc Pro Tunc *to the Petition Date* (the "Bibby Declaration") [D.I. 652].

8.       On June 11, 2014, the Debtors filed a *Notice of Debtors' Entry into Additional Statement of Work with KPMG LLP* [D.I. 910] (the "Notice" and together with the Original Application, the "Application") to supplement the Original Application with respect to an additional statement of work entered into between the KPMG Debtors and KPMG on June 3, 2014.

4

9.      On September 5, 2014, the Debtors filed a *Supplement to the Application of Energy Future Holdings Corp., et al., for Entry of an Order Authorizing the Debtors to Retain and Employ KPMG LLP as Bankruptcy Accounting and Tax Advisors Effective* Nunc Pro Tunc *to the Petition Date* [D.I. 1968] (the "Application Supplement") and a *Supplemental Declaration of Thomas D. Bibby in Support of the Application of Energy Future Holdings Corp.,* et al., *for Entry of an Order Authorizing the Debtors to Retain and Employ KPMG LLP as Bankruptcy Accounting and Tax Advisors Effective* Nunc Pro Tunc *to the Petition Date* [D.I. 1969] (the "Supplemental Bibby Declaration") to address additional statements of work and provide additional services in connection with these chapter 11 cases.

10.     Also on September 5, 2014, the Debtors filed a *Declaration of Nancy Braun for Entry of an Order Authorizing the Debtors to Retain and Employ as Bankruptcy Accounting Advisor Effective* Nunc Pro Tunc *to June 17, 2014* [D.I. 1971] (the "Thavron Declaration") to address additional disclosures regarding KPMG's use of Thavron Solutions LLC ("Thavron"). KPMG hired Thavron Solutions LLC to provide technical assistance with cost modeling in connection with the new Apptio system.  The Thavron Declaration also established Thavron's disinterestedness with respect to work performed on behalf of the KPMG Debtors.[2]

11.     On September 16, 2014, the Debtors filed a *Second Supplemental Declaration of Thomas D. Bibby in Support of the Application of Energy Future Holdings Corp.,* et al., *for Entry of an Order Authorizing the Debtors to Retain and Employ KPMG LLP as Bankruptcy Accounting and Tax Advisors Effective* Nunc Pro Tunc *to the Petition Date* [D.I. 2038] (the

---

[2]     Thavron will continue to provide technical assistance related to cost modeling in connection with Apptio services as part of the Additional Services (defined herein).  Thavron will promptly provide a declaration to reaffirm its disinterestedness subsequent to the filing of this Motion.

"Second Supplemental Bibby Declaration")[3] to address additional disclosures regarding the specific delineation of services between the various retained professionals in these chapter 11 cases and retainer payments made by the KPMG Debtors to KPMG.

### Scope of Additional Services

12.     Since the Debtors filed the Application, the Application Supplement, the Bibby Declaration, the Supplemental Bibby Declaration, and the Second Supplemental Bibby Declaration, the KPMG Debtors and KPMG have entered into additional statements of work ("SOWs"), change orders modifying a new SOW, and an amendment to Schedule A-14 referenced in the Original Order (collectively, the "Agreements") regarding KPMG's Additional Services to the KPMG Debtors, as set forth below:

a.     a statement of work, by and between KPMG and EFH Corporate Services, dated September 9, 2014 and effective as of August 15, 2014 (the "SOX Compliance SOW – Phase 2 Bridge") attached as **Exhibit 1** to **Exhibit A**;

b.     a change order regarding the SOX Compliance SOW – Phase 2 Bridge, by and between KPMG and EFH Corporate Services, dated October 28, 2014 and effective as of October 1, 2014 (the "Phase 2 SOX IT Efforts - CO 1") attached as **Exhibit 2** to **Exhibit A**;

c.     a change order regarding the SOX Compliance SOW – Phase 2 Bridge, by and between KPMG and EFH Corporate Services, dated October 31, 2014 and effective as of November 1, 2014 (the "Phase 2 SOX IT Efforts - CO 2") attached as **Exhibit 3** to **Exhibit A**;

d.     an amendment to the statement of work, Schedule A-14, dated March 4, 2014 referenced in the Original Application, by and between KPMG and EFH Corporate Services, dated October 7, 2014 and effective as of August 1, 2014 (the "Accounts Payable Consulting Amendment") attached as **Exhibit 4** to **Exhibit A**;

---

[3]     Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Original Order, the Motion, the Application, the Application Supplement, the Bibby Declaration, the Supplemental Bibby Declaration, the Second Supplemental Bibby Declaration, and the Additional Services Bibby Declaration.

e.      a statement of work, by and between KPMG and EFH Corporate Services, dated September 17, 2014 and effective as of September 15, 2014 (the "CAO Financial Reporting Support SOW") attached as **Exhibit 5** to **Exhibit A**;

f.      a statement of work, by and between KPMG and EFH Corporate Services, dated October 31, 2014 and effective as of October 6, 2014 (the "Model Reconciliation Services") attached as **Exhibit 6** to **Exhibit A**;

g.      a statement of work, by and between KPMG and EFH Corporate Services, dated November 7, 2014 and effective as of November 10, 2014 (the "HW Contract Advisor Services SOW") attached as **Exhibit 7** to **Exhibit A**;

h.      a statement of work, by and between KPMG and EFH Corporate Services, dated November 7, 2014 and effective as of November 10, 2014 (the "EA Strategy Foundation") attached as **Exhibit 8** to **Exhibit A**; and

i.      a statement of work, by and between KPMG and EFH Corporate Services, dated November 7, 2014 and effective as of November 10, 2014 (the "Phase II IT Costing Apptio Service Catalog") attached as **Exhibit 9** to **Exhibit A**.

13.    As set forth in further detail in the Agreements, KPMG has agreed to provide these Additional Services in connection with these chapter 11 cases. A summary description of these Additional Services are set forth below.

## I.    SOX Compliance SOW – Phase 2 Bridge.

14.    As set forth in detail in the SOX Compliance SOW - Phase 2 Bridge, KPMG has agreed to assist the KPMG Debtors' personnel in supporting key implementation activities related to the KPMG Debtors' SOX IT compliance efforts including the following:

a.      System Implementation Controls:

i.      Category A projects (Post-Implementation):

1.      Assess the IT General Controls (the "ITGC"s) implemented as part of these projects to identify potential conflicts with newly revised control framework. The four ITGC focus areas are program change control, access to programs and data, program development, and computer operations; and

7

        2.      Assist project team with control remediation efforts called for based on gaps noted by internal or external audit in their relevant reviews.

   ii.     Category B projects (Pre-Implementation):

        1.      Assist with the implementation of revised SOX primary ITGCs associated with program development;

        2.      Assist with the application and integration of revised SOX primary ITGCs associated with program change control, access to programs and data, and computer operations;

        3.      Assist with the identification and design of controls to address key business process and data management risks which could impact SOX compliance efforts;

        4.      Assist with communication and training activities related to SOX compliance; and

        5.      Assist with communication between the KPMG Debtors' project teams and internal and external audit teams.

b.     Identity and Access Management (the "<u>IAM</u>") Controls:

   i.     Assist the EFH IT Risk & Compliance team (the "<u>R&C</u>") with implementation and integration of the ITGCs as documented in the Close Management Tool. Assistance includes the definition and documentation of processes, testing, evidence and training associated with the KPMG Debtors' implementation of the Computer Associates ("<u>CA</u>") Identity Suite;

   ii.     Identify ITGC specific tasks for inclusion in the CA Identity Suite implementation project plan and status reports;

   iii.    Coordinate with R&C regarding ongoing efforts to remediate identified deficiencies;

   iv.    Participate in IAM implementation working sessions and provide guidance on controls implementation requirements and activities;

   v.     Collaborate with internal and external audit teams to seek input on the CA Identity Suite implementation of ITGC including SOX controls; and

   vi.    Facilitate communication between the R&C implementation team and the application and business SOX control owners related to the deployment, testing, documentation and training of the CA solution.

c.     Ongoing IT Compliance Support (the "<u>ITC</u>")

     i.     Support IT's ongoing control implementation and remediation activities identified during the engagement Term by:

          1.     Training IT control owner;
          2.     Monitoring IT owner control performance; and
          3.     Providing consultations and advice regarding specific activities as needed by various control owners.

     ii.     Assist with the Archer e Governance, Risk and Compliance (the "eGRC") implementation project by contributing to key project activities to support the integration of eGRC into the future state SOX compliance program by:

          1.     Designing requirements considerations;
          2.     Configuring analysis;
          3.     Facilitating team discussions; and
          4.     Training users.

     iii.     Assist with ITC support in defining and establishing overall governance and design considerations, organizational structure, and areas of ongoing focus as the KPMG Debtors seek to improve ITC function, performance and sustainability;

     iv.     Develop meeting and status communication materials for the project team, management, and executives, as requested; and

     v.     Support ITC in meetings with external and internal audit teams as requested to discuss control concepts, plans, and progress.

d.     ITC Special Projects – The KPMG Debtors anticipate an additional need for resource assistance throughout the course of the Phase 2 effort. Needs may include, but not be limited to, resources for:

     i.     Targeted implementation or configuration efforts associated with specific remediation recommendations which may require specific technical skill sets to perform activities beyond the assistance noted above; and

     ii.     Periodic specific ITC tasks that may include but not be limited to, non-SOX related compliance testing, subject matter guidance to ITC requirements, or participation in other non-SOX related system change efforts.

e.     Deliverables:

     i.     Provide documented observations related to identified internal control improvement recommendations;

9

ii.    Draft written defined activity plans to support the implementation of control remediation;

iii.    Draft training materials and supporting reference materials intended for control owners;

iv.    Draft summary log of personnel trained through various training sessions;

v.    Provide documented recommendations related to ongoing change communication strategies;

vi.    Develop process and policy documentation updates;

vii.    Provide documented recommendations related to improved sustainability capabilities for ongoing IT compliance efforts; and

viii.    Provide status reports and communication materials.

## II.    Phase 2 SOX IT Efforts - CO 1.

15.    As set forth in detail in the Phase 2 SOX IT Efforts - CO 1, KPMG has agreed to assist the KPMG Debtors with documentation of MyWorkday Benefits Enrollment, MyWorkday Payroll, T&L, and Helpdesk software modules including the following:

a.    Meet with the KPMG Debtors' Human Resources Department ("HR") and project personnel and review available documentation to understand current and planned business processes impacted by the MyWorkday software implementation project;

b.    Assist the KPMG Debtors' HR team in the identification and documentation of key business processes and related controls impacted by the MyWorkday software implementation;

c.    Assist the KPMG Debtors' HR team in the analysis of third-party attestations, third-party system and data access, and overall third-party control governance structures related to the MyWorkday application;

d.    Assist the KPMG Debtors' HR department in reviewing user access roles and permissions for the MyWorkday application, with special attention afforded to the segregation of duties; and

e.    Deliverables:

> i. Provide documentation of the business process flow for core MyWorkday functionalities;
>
> ii. Make observations and recommendations related to the KPMG Debtors' analysis of third-party roles and responsibilities related to the KPMG Debtors' financial controls; and
>
> iii. Create risk and control matrix which includes the KPMG Debtors' HR SOX considerations affected by the implementation of the MyWorkday application.

## III.    Phase 2 SOX IT Efforts - CO 2.

16.    As set forth in detail in the Phase 2 SOX IT Efforts - CO 2, KPMG has agreed to continue current planned assistance under the SOX Compliance SOW - Phase 2 Bridge for an extended period, specifically to extend the length of the SOX Compliance SOW - Phase 2 Bridge from October 31, 2014 to January 15, 2015.  In addition to extending the timeline for activities included in the SOX Compliance SOW - Phase 2 Bridge, the Phase 2 SOX IT Efforts - CO 2 adds activities and deliverables to the SOX Compliance SOW - Phase 2 Bridge related to paragraph 14.b. including the following:

> a. Facilitate IAM implementation working sessions with EFH Internal Audit department, IT compliance, and business application personnel to identify compliance and risk aspects which could impact the IT security team's development of an IAM implementation roadmap for 2015; and
>
> b. Deliverables:
>
> > i. Those identified in the SOX Compliance SOW - Phase 2 Bridge
> >
> > ii. Provide documentation of recommendations regarding risk and control elements which could impact IAM tool project implementation plan elements such as duration, sequence and timing.

17.    Pursuant to the SOX Compliance SOW - Phase 2 Bridge, the Phase 2 SOX IT Efforts - CO 1 and Phase 2 SOX IT Efforts CO - 2, (collectively the "SOX IT Compliance Services") the fees charged are based on the actual time incurred to complete the work.  The

estimated fees under the SOX Compliance SOW - Phase 2 Bridge range from $681,600 to $789,100, the estimated fees for the Phase 2 SOX IT Efforts - CO 1 range from $165,000 to $185,000, and the estimated fees for Phase 2 SOX IT Efforts - CO 2 range from $695,000 to $850,000.  In total, fees for the SOX IT Compliance Services are not to exceed $1,825,000.  The majority of the fees to be charged reflect a reduction of approximately 62 - 67% from KPMG's normal and customary rates. The hourly rates for the SOX IT Compliance Services rendered by KPMG are as follows:

| SOX IT Compliance Services | Discounted Hourly Rate |
| --- | --- |
| Partners/Managing Directors | $325 |
| Directors/Senior Managers | $290 |
| Managers | $250 |
| Senior Associates | $190 |
| Associates | $125 |

## IV.    The Accounts Payable Consulting Amendment.

18.    As set forth in detail in the Accounts Payable Consulting Amendment, KPMG and the KPMG Debtors have agreed to modify the terms of the Schedule A-14 SOW dated March 4, 2014 referenced in the Original Application to extend the period of the services to be performed to December 31, 2014, and addresses the professional levels providing services under this SOW.  Estimated fees under this SOW shall not exceed $312,000.  The Accounts Payable Consulting Amendment removes the Manager role, at a rate of $250 per hour, and reduces the associate role, at a rate of $125 per hour, from six to three.  The remaining rates will remain consistent with the Schedule A-14 SOW.

12

V.      **CAO Financial Reporting Support SOW.**

19.    As set forth in forth in further detail in the CAO Financial Reporting Support SOW, KPMG has agreed to assist the KPMG Debtors' personnel in supporting key accounting activities related to the KPMG Debtors' restructuring.  Services will be requested and directed by the KPMG Debtors' Controller Group and may include the following:

      a.      Provide management reporting and analysis;

      b.      Provide technical accounting analysis and research;

      c.      Provide bankruptcy-related reporting assistance;

      d.      Provide period close assistance;

      e.      Provide month-end restructuring cost analysis;

      f.      Provide general ledger account reconciliations; and

      g.      Provide cash flow reporting review and analysis.

20.    The fees for the CAO Financial Reporting Support Services (the "CAO FR") will be based on the actual time incurred to complete the work, not to exceed $344,000. The majority of fees to be charged reflect a reduction of 65-67% from KPMG's normal and customary rates. The hourly rates for the CAO FR rendered by KPMG are as follows:

| CAO FR | Discounted Hourly Rate |
|---|---|
| Senior Associates | $220 |

VI.     **Model Reconciliation Services.**

21.    As set forth in further detail in the Model Reconciliation Services, KPMG has agreed to work closely with the KPMG Debtors to support the continued work on the model reconciliation and remediation and assist with developing the phase 2 plan following the Service Costing SOW dated August 11, 2014 referenced in the First Supplemental Declaration.  Phase 2

13

will only include the foundational recommendations of the road map for people, process, system, data, and governance including the following activities:

a.    Continuing Model Reconciliation Process:

   i.    Validate existing and define new IT Towers and sub-towers, including:

      1.    Leverage current documentation as a starting point;
      2.    Align the solution design with Apptio standard taxonomy;
      3.    Consolidate common services (e.g. Data and Network); and
      4.    Update documentation to capture new IT towers and subtowers, allocation methodologies, and cost mapping guidelines.

   ii.    Determine and validate cost mapping to sub-towers, including:

      1.    Update current documentation; and
      2.    Validate legacy project cost mapping aligns with sub-tower definitions and intent.

   iii.    Validate/determine appropriate allocation methodologies for each service, including:

      1.    Leverage and update current documentation;
      2.    Confirm allocations are appropriately implemented in the Apptio model;
      3.    Update any revised allocation methods in the documentation and in the Apptio model; and
      4.    Confirm and document how costs flow in and out of Application Services.

   iv.    Confirm business processes, including:

      1.    Confirm business processes will support the new cost and service structure and will be sustained/supported by IT Operations, IT Finance, Supply Chain, and Accounts Payables; and
      2.    Engage peripheral support teams to define change management and end state sustainability/support requirements.

   v.    Implement updates in Apptio models, including:

      1.    Update model configuration and validate changes through testing.

14

    b.      Phase 2 Planning:

         i.      Develop implementation strategy;

         ii.      Build Project Organization, Steering Committee with roles and responsibilities, and Responsible, Accountable, Consulted, and Informed (the "RACI") matrix;

         iii.      Create Project Governance;

         iv.      Determine implementation approach including tasks, deliverables, risks, phase exit criteria, and resource requirements; and

         v.      Build project plan including phases, tasks, task dependencies, resources, milestones, deliverables, and timeline.

    c.      Deliverables

         i.      Updated Apptio model configuration changes and Service Costing definition and allocation methods;

         ii.      Update of EFH Cost Model within the Service Costing Project in Apptio as agreed by both parties within the budget presented in this SOW;

         iii.      Phase 2 implementation strategy, approach, project organization, roles and responsibilities, and project governance; and

         iv.      Detailed Microsoft project plan including phases, tasks, resources, task dependencies, milestones, deliverables and timeline.

22.    The fees charged for the Model Reconciliation services are based on the hourly rates below, not to exceed $101,710.    The hourly rates for Model Reconciliation Services rendered by KPMG are as follows:

15

| **Model Reconciliation Services** | **Discounted Hourly Rate** |
| --- | --- |
| Managing Director | $350 |
| Director | $340 |
| Service Costing SME | $300 |
| Apptio SME | $185 |
| Apptio Configurator | $150 |

## VII.    HW Contract Advisor Services SOW.

23.    As set forth in further detail in the HW Contract Advisor Services SOW, KPMG has agreed to assist the KPMG Debtors' personnel in further building out the KPMG Debtors' IT asset management (the "ITAM") capabilities through key activities, including the following:

a.    KPMG will assist with the compilation and analysis of hardware contract information received from vendors and resellers as well as from the KPMG Debtors' records. KPMG will create a report which identifies all discovered hardware assets and details regarding support and other relevant contract terms and conditions.

i.    The following data sources will be reviewed under the scope of this work:

1.    Review vendor data feeds - hardware contract data from Dell, HP, GOT, etc.;
2.    Review Ariba data feeds - the KPMG Debtors' contract system of record for all the KPMG Debtors' hardware, software, and IT service contracts; and
3.    Review Remedy the Configuration Management Database (the "CMDB") data feeds – the KPMG Debtors' records of physical hardware assets.

ii.    The scope of work will include the following activities:

1.    Review vendor data feeds to ensure vendors are populating key fields for hardware contracts; KPMG will generate a report for key fields that are missing data;
2.    Review Ariba data to ensure key fields are populated for hardware contracts; KPMG will generate a report for key fields that are missing data;
3.    Review Remedy data to ensure key fields are populated for hardware assets; KPMG will generate a report for key fields that are missing data;

16

4.      Review CMDB data to ensure key fields are populated for hardware assets; KPMG will generate a report for key fields that are missing data;

5.      Generate a repeatable report for the hardware assets and the hardware contract details that tie back to those hardware assets; and

6.      Two additional reports will also be created for the hardware assets which could not be tied to the contract details; the first report will identify the hardware assets and the second will, as much as possible, identify the contract details for each asset;

b.      KPMG will review Viper data feeds and POs for hardware assets. The scope of Work will include the following activities:

i.      Provide verification and as necessary, data entry of asset information into the Remedy CMDB Viper data feeds and POs reviewed.

c.      KPMG will not perform the following services under the HW Contract Advisor Services SOW:

i.      Review of all POs in Viper may not be possible; this task is limited by the project timeline;

ii.      Review data feeds from core IT service management (the "ITSM") processes and tools (with the exception of ITAM), such as incident, problem, change, knowledge, configuration management, etc.;

iii.      Review or analyze data related to IT service strategy, design, and deployment (IT Service Portfolio Management);

iv.      Upload data into a third party tool other than Remedy CMDB;

v.      Designing an ongoing method of analyzing hardware contract data; or

vi.      Ensuring 100% accuracy and match of all hardware assets and hardware contracts. The KPMG Debtors will be responsible for the review and approval of all deliverables ("Deliverables").

d.      Deliverables:

i.      Provide hardware assets and contract details reports;

ii.      Provide unmatched hardware assets;

17

      iii.      Provide unmatched hardware contracts;

      iv.      Provide data around identification of and remediation of missing assets and details in Remedy CMDB related to the review of POs from Viper; and

      v.      Provide hardware assets

24.    The estimated fees for this project are $128,340 and this project is not authorized to exceed $147,500.  The hourly rates for the HW Contract Advisor Services SOW rendered by KPMG are as follows:

| **HW Contract Advisor Services SOW** | **Billing Rate** |
| :---: | :---: |
| Partner/Managing Director | $325 |
| Director | $295 |
| Sr. Associate | $190 |
| Sr. Associate 2 (Hardware Contracts) | $190 |
| Sr. Associate (Hardware Assets) | $190 |

## VIII.  EA Strategy Foundation.

25.    As set forth in further detail in the EA Strategy Foundation, KPMG has agreed to assist the KPMG Debtors' personnel in supporting the planning, analysis, and design of the EA&I team's target-state for the functional and operating models, as well as the creation of the roadmap and transition to the new models.  Work performed during the first phase (the "Foundation Phase") of this engagement will establish the key foundational components of EA&I and a baseline which supports the longer term strategic needs and the target-state vision for an Enterprise Architecture governance model applicable to all future technology-based solutions of EFH.  The services related to the EA Strategy foundation efforts include the following:

a.      Develop the Target-State Operating Model. The targeted operating model will define EA&I vision, the customer engagement model, core service offerings, and the delivery & service fulfillment layer. KPMG will support the development of the target-state operating model through the following key activities:

   i.      Assessment of the Current State:

      1.      Capture and align within the current state, the inbound needs and requests (the business unit request); key challenges with delivery, resource skills, and operations; desired outcomes; and areas of improvement (pain points); and

      2.      Develop strategic requirements which align with key inputs and leading/best practices

   ii.     Development of the Target-State Operating Model:

      1.      Define the customer and engagement model;

      2.      Define high-level core service offerings (service catalog) and structure;

      3.      Define core governance, delivery, and organizational structure; and

      4.      Review the current Architecture Review Board structure & effectiveness.

b.      Define the EA&I Functional Organization.  The EA&I functional design will define the target-state value drivers, roles, and responsibilities, and organizational structure. KPMG will support the development of the EA&I functional design including the following key activities:

   i.      Define the key value drivers and targeted outcomes of the EA&I function;

   ii.     Validate value drivers and targeted outcomes with customer stakeholders;

   iii.    Develop and define the EA&I function, roles, responsibilities, and RACI matrix; and

   iv.     Develop EA&I job description(s).

c.      Define the Transition Plan and Roadmap.  The EA&I target-state roadmap will outline the key long term activities and near term tactics to transition to the target state. KPMG will provide support in the development of the EA&I target-state roadmap including the following key activities:

        i.        Develop a near term plan to initiate and transition to the target operating state; and

        ii.       Develop a high-level 3-5 year strategic roadmap.

   d.     Deliverables

        i.        Provide the EA&I Vision Summary;

        ii.       Provide the Target Operating Model;

        iii.     Provide Key Value Drivers;

        iv.     Provide Functional Definition; and

        v.       Provide the High Level Strategic Roadmap

26.    The estimated fees for this project are $176,600 and this project is not authorized to exceed $176,600 for labor plus up to 15% of actual fees for travel expenses.  The hourly rates for the EA Strategy Foundation rendered by KPMG are as follows:

| **EA Strategy Foundation** | **Billing Rate** |
| :---: | :---: |
| Subject Matter Expert (S. Garcia, P. Fritz and A. Oakes) | $325 |
| Director, Engagement Lead and IT Service Strategy | $295 |
| Manager, IT Service Management | $245 |

## IX.    Phase II IT Costing Apptio Service Catalog.

27.    As set forth in further detail in the Phase II IT Costing Apptio Service Catalog, KPMG has agreed to assist with the implementation of the Foundational Phase recommendations detailed in the approved requirements including the following:

   a.     Redesign the service catalog and the cost and budget models;

   b.     Provide initial total cost of ownership design;

   c.     Redesign data architecture to support the new models;

   d.     Provide out of the box (the "OOB") reports and security access;

e.    Technical Design:

     i.    Service Costing Solution:

          1.    Develop the Technical Design Document (the "<u>Technical Design Document</u>");

          2.    Validate Technical Design Document with core team (the "<u>Core Team</u>");

          3.    Build use cases (the "<u>Use Cases</u>"); and

          4.    Validate Use Cases with Core Team, IT Finance and IT Operations.

     ii.    Data Architecture:

          1.    Develop Technical Design Document;

          2.    Validate Technical Design with Core Team;

          3.    Build Use Cases;

          4.    Validate Use Cases with Core Team; and

          5.    Develop Master Data Management (the "<u>MDM</u>") Process and Governance.

f.    Deliverables:

          1.    Provide Technical Design Document;

          2.    Provide Data Architecture Design;

          3.    Provide Master Data Management Process and Governance;

          4.    Provide Data Transformation Rules;

          5.    Provide Prioritized Data Quality Plan; and

          6.    Provide Use Cases.

g.    Configuration:

     i.    Service Costing Solution:

          1.    Update configuration for the Cost and Budget Models and unit test;

          2.    Enable OOB reports and unit test;

          3.    Conduct a comparative analysis of custom and OOB reports and determine which OOB reports to implement;

          4.    Develop custom reports; and

          5.    Validate configuration with Core Team.

     ii.    Data Architecture:

          1.    Update Data Transformation Rules; and

        2.      Implement MDM Process and Governance Data Link configuration, unit testing, and documentation will be performed by Apptio.

    iii.    Testing Preparation:

        1.      Development of a test plan (the "<u>Test Plan</u>"); and
        2.      Support development of a support plan.

    iv.    Deliverables:

        1.      Configure Service Catalog;
        2.      Configure Cost & Budget Model; and
        3.      Setup Data Transformation Rules Test Plan.

h.    Validation:

    i.    Support execution of Test Plan;

    ii.    Support resolution of issues/bugs;

    iii.    Perform root cause analysis (the "<u>RCA</u>") of issues/bugs;

    iv.    Validate fixes with Technology Business Management Administrator (the "<u>TBMA</u>"); and

    v.    Manage list of outstanding issues/bugs.

    vi.    Deliverables:

        1.      Provide end user testing support;
        2.      Provide bug/fix support; and
        3.      Update solution requirements document and run book documenting.

i.    Operationalization:

    i.    Walk through the project milestones and overall engagement;

    ii.    Review the risk & issues log;

    iii.    Validate project documentation;

    iv.    Validate process and governance;

    v.    Review post configuration handoff documents and presentations;

    vi.    Review post configuration handoff document and presentation; and

22

          vii.      Review the Service Costing Assessment roadmap;

    j.      Deliverables:

          i.      Provide production support;

          ii.      Provide impact assessment for IT Finance/IT Operations;

          iii.      Provide adoption roadmap and remediation; and

          iv.      Finalize model reconciliation between the new Apptio model and the manual Excel model.

The estimated fees for this project are $480,000 and this project is not authorized to exceed $480,000. The hourly rates under the Phase II IT Costing Apptio Service Catalog rendered by KPMG are as follows:

| Phase II IT Costing Apptio Service Catalog | Billing Rate |
| --- | --- |
| Engagement Lead | $350 |
| Engagement Manager | $340 |
| Service Costing Subject Matter Expert | $300 |
| Service Costing Support Matter Expert | $225 |
| Apptio Architect | $185 |
| Tech Lead and Data Architect | $150 |
| Apptio Configurator | $110 |

28.    KPMG will continue to use its reasonable efforts to avoid any duplication of services provided to the KPMG Debtors by any of the KPMG Debtors' other retained professionals in these chapter 11 cases.

## Basis for Relief

29.    Consistent with the Court approval received in the Original Order, the KPMG Debtors seek approval of the Agreements pursuant to Bankruptcy Code sections 327 and 328(a).

23

30. Section 327(a) of the Bankruptcy Code provides that a debtor subject to court approval:

> [M]ay employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the [debtor] in carrying out the [debtor]'s duties under this title.

11 U.S.C § 327(a).

31. Moreover, Bankruptcy Rule 2014 requires that an application for retention include:

> [S]pecific facts showing the necessity for the employment, the name of the [firm] to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the [firm's] connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States Trustee, or any person employed in the office of the United States Trustee.

Fed. R. Bankr. P. 2014.

32. The KPMG Debtors require the Additional Services to maximize the value of their estates. The Additional Services will allow KPMG to initiate the next phase of key services, including the KPMG Debtors' efforts to comply with the Sarbanes Oxley Act. KPMG will also provide essential accounting services for the KPMG Debtors' restructuring. Finally, KPMG will build out the KPMG Debtors' ITAM capabilities and improve their EA&I governance so the KPMG Debtors can more efficiently solve problems in the future. These Additional Services will help the KPMG Debtors conduct their business and use their resources more efficiently.

33. The KPMG Debtors seek approval of the fee structure and terms of the Agreements pursuant to section 328(a) of the Bankruptcy Code, which provides, in relevant part,

24

that the KPMG Debtors "with the court's approval, may employ or authorize the employment of a professional person under section 327 . . . on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingency fee basis . . . ."  11 U.S.C § 328.

34.     The terms and conditions of the Agreements were negotiated by the KPMG Debtors and KPMG at arm's length and in good faith.  The KPMG Debtors and KPMG respectfully submit that the terms these agreements are reasonable for bankruptcy accounting and tax advisor engagements and are in the best interests of the Debtors' estates, creditors, and all parties in interest.

35.     The KPMG Debtors respectfully submit that the Additional Services KPMG will perform are not duplicative of the services performed by any other professional retained by the KPMG Debtors.

### KPMG's Disinterestedness

36.     To the best of the KPMG Debtors knowledge, KPMG continues to be a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code as required by 327(a) of the Bankruptcy Code.  KPMG holds no interest adverse to the KPMG Debtors or their estates for the matters for which KPMG is to be employed.  KPMG has no connection to the KPMG Debtors, their creditors, or their related parties herein except as otherwise disclosed in Original Application, the Bibby Declaration, the Supplemental Bibby Declaration, and the Second Supplemental Bibby Declaration.

### Thavron's Disinterestedness

37.     To the best of the KPMG Debtors' knowledge, Thavron continues to be a "disinterested person" within the meaning of Bankruptcy Code section 101(14) as required by

25

Bankruptcy Code section 327(a). Thavron holds no interest adverse to the KPMG Debtors or their estates for matters for which Thavron is to be employed. Thavron has no connection to the KPMG Debtors, their creditors, or their related parties herein except as otherwise disclosed in the Thavron Declaration.

## Notice

38.    The Debtors shall provide notice of this Motion on the date hereof via first class mail to: (a) the U.S. Trustee; (b) counsel to the TCEH Creditors' Committee; (c) Proposed Counsel to the EFH Creditors' Committee; (d) Wilmington Trust, N.A., in its capacity as administrative agent under the TCEH first lien credit agreement and collateral agent under the TCEH intercreditor agreements and counsel thereto; (e) Bank of New York Mellon Trust Company, N.A., in its capacity as indenture trustee under: (i) the TCEH unsecured pollution control revenue bonds; and (ii) the EFCH 2037 Notes due 2037, and counsel thereto; (f) American Stock Transfer & Trust Company, LLC, in its capacity as indenture trustee under: (i) the 9.75% EFH senior unsecured notes due 2019; (ii) the 10.0% EFH senior unsecured notes due 2020; (iii) the 10.875% EFH LBO senior unsecured notes due 2017; (iv) the 11.25%/12.0% EFH LBO toggle notes due 2017; (v) the 5.55% EFH legacy notes (series P) due 2014; (vi) the 6.50% EFH legacy notes (series Q) due 2024; and (vii) the 6.55% EFH legacy notes (series R) due 2034, and counsel thereto; (g) Computershare Trust Company, N.A. and Computershare Trust Company of Canada, in their capacities as indenture trustee under: (i) the 11.0% EFIH senior secured second lien notes due 2021; and (ii) the 11.75% EFIH senior secured second lien notes due 2022, and counsel thereto; (h) UMB Bank, N.A. in its capacity as indenture trustee under: (i) the 9.75% EFIH senior unsecured notes due 2019; and (ii) the 11.25%/12.25% EFIH senior toggle notes due 2018, and counsel thereto; (i) Delaware Trust Company of Delaware in

its capacity as indenture trustee under:  (i) the 6.875% EFIH senior secured notes due 2017; (ii) the 10.0% EFIH senior secured notes due 2020; and (iii), the 11.50% TCEH senior secured notes due 2020, and counsel thereto; (j) Law Debenture Trust Company of New York in its capacity as indenture trustee under:  (i) the 10.25% TCEH senior unsecured notes due 2015; and (ii) the 10.50%/11.25% TCEH senior toggle notes due 2016, and counsel thereto; (k) Wilmington Savings Fund Society, FSB in its capacity as indenture trustee under the 15.0% TCEH senior secured second lien notes due 2021, and counsel thereto; (l) counsel to certain holders of claims against the Debtors regarding each of the foregoing described in clauses (c) through (j); (m) the agent for the TCEH debtor-in-possession financing facility and counsel thereto; (n) the agent for the EFIH debtor-in-possession financing facility and counsel thereto; (o) counsel to certain holders of equity in Texas Energy Future Holdings Limited Partnership; (p) counsel to the Ad Hoc Committee of TCEH Unsecured Noteholders; (q) counsel to the Ad Hoc Committee of TCEH Second Lien Noteholders; (r) Oncor Electric Delivery Holdings Company LLC and counsel thereto; (s) Oncor Electric Delivery Company LLC and counsel thereto; (t) the Securities and Exchange Commission; (u) the Internal Revenue Service; (v) the Office of the United States Attorney for the District of Delaware; (w) the Office of the Texas Attorney General on behalf of the Public Utility Commission of Texas; (x) counsel to the Electric Reliability Council of Texas; (y) those parties that have requested notice pursuant to Bankruptcy Rule 2002; (z) KPMG; and (aa) Thavron.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

## No Prior Request

39.     No prior request for the relief sought in this Motion has been made to this or any other court.

27

WHEREFORE, the Debtors respectfully request that the Court enter the Order, substantially in the form attached hereto as **Exhibit A**, respectively, granting the relief requested in this Motion and granting such other and further relief as is appropriate under the circumstances.

Wilmington, Delaware
Dated:   November 25, 2014

*/s/ William A. Romanowicz*
**RICHARDS, LAYTON & FINGER, P.A.**
Mark D. Collins (No. 2981)
Daniel J. DeFranceschi (No. 2732)
Jason M. Madron (No. 4431)
William A. Romanowicz (No. 5794)
920 North King Street
Wilmington, Delaware 19801
Telephone:       (302) 651-7700
Facsimile:       (302) 651-7701
Email:            collins@rlf.com
                  defranceschi@rlf.com
                  madron@rlf.com

-and-

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Edward O. Sassower, P.C. (admitted *pro hac vice*)
Stephen E. Hessler (admitted *pro hac vice*)
Brian E. Schartz (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022-4611
Telephone:       (212) 446-4800
Facsimile:       (212) 446-4900
Email:            edward.sassower@kirkland.com
                  stephen.hessler@kirkland.com
                  brian.schartz@kirkland.com

-and-

James H.M. Sprayregen, P.C. (admitted *pro hac vice*)
Marc Kieselstein, P.C. (admitted *pro hac vice*)
Chad J. Husnick (admitted *pro hac vice*)
Steven N. Serajeddini (admitted *pro hac vice*)
300 North LaSalle
Chicago, Illinois 60654
Telephone:       (312) 862-2000
Facsimile:       (312) 862-2200
Email:            james.sprayregen@kirkland.com
                  marc.kieselstein@kirkland.com
                  chad.husnick@kirkland.com
                  steven.serajeddini@kirkland.com

*Co-Counsel to the Debtors and Debtors in Possession*

28