## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) Case No. 14-10979 (CSS) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |
| | ) **Hearing Date: December 18, 2014 at 9:30 a.m.** |
| | ) **Obj. Deadline: December 11, 2014 at 4:00 p.m.** |

## MOTION OF ENERGY FUTURE HOLDINGS CORP., *ET AL.*, FOR ENTRY OF AN ORDER AUTHORIZING THE DEBTORS TO SETTLE AND PAY PREPETITION PROPERTY TAXES

The above-captioned debtors and debtors in possession (collectively, the "Debtors")[2] file

this motion (this "Motion") seeking entry of an order, substantially in the form attached hereto as

**Exhibit A** (the "Order"), authorizing, but not directing, the Debtors to (a) negotiate, settle, remit,

and pay all unpaid, outstanding prepetition Property Taxes in excess of the Initial Tax and Fee

Cap (each as defined herein), in an aggregate amount not to exceed $60 million, and (b) to

continue to negotiate, settle, and pay all Property Taxes on a postpetition basis.  This Motion

supplements the relief granted in the *Final Order Authorizing the Debtors to Pay Certain*

*Prepetition Taxes and Fees* [D.I. 799] (the "Final Taxes Order").  In support of this Motion, the

Debtors submit the *Declaration of Carla Howard in Support of the Motion of Energy Future*

---

[1]    The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810.  The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201.  Due to the large number of debtors in these chapter 11 cases, for which joint administration has been granted, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the *Motion of Energy Future Holdings Corp.*, et al.*, for Entry of an Order Authorizing the Debtors to Pay Certain Prepetition Taxes and Fees* [D.I. 23] (the "Taxes Motion").

*Holdings Corp.,* et al., *for Entry of an Order Authorizing the Debtors to Pay Prepetition Property Taxes* (the "<u>Howard Declaration</u>").  In further support of this Motion, the Debtors respectfully state as follows.

<u>**Jurisdiction and Venue**</u>

1.      The United States Bankruptcy Court for the District of Delaware (the "<u>Court</u>") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Debtors consent pursuant to rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "<u>Local Bankruptcy Rules</u>") to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The bases for the relief requested in this Motion are sections 105(a), 363(b), 507(a)(8), and 541 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>") and rules 6004 and 9019 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>").

<u>**Relief Requested**</u>

4.      By this Motion, the Debtors seek entry of an Order authorizing, but not directing, the Debtors to (a) continue negotiating, settling, remitting, and paying all prepetition Property Taxes accrued in the ordinary course of business, in excess of the initial $146.74 million aggregate amount authorized pursuant to the Final Taxes Order applicable to all Taxes and Fees

2

(the "Initial Tax and Fee Cap"), up to an additional, aggregate amount not to exceed $60 million (the "Additional Property Tax Cap"), and (b) to continue to negotiate, settle, and pay all Property Taxes on a postpetition basis.[3]

**Background**

5.    On April 29, 2014 (the "Petition Date"), each of the Debtors filed a voluntary petition with the Court under the Bankruptcy Code.  The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  The Court has entered a final order for joint administration of these chapter 11 cases [D.I. 849].  The Court has not appointed a trustee.  The Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") formed an official committee of unsecured creditors of Energy Future Competitive Holdings Company LLC ("EFCH"), Texas Competitive Electric Holdings Company LLC ("TCEH"), the direct and indirect Debtor subsidiaries of EFCH and TCEH, and EFH Corporate Services Company (the "TCEH Creditors' Committee") on May 13, 2014 [D.I. 420] and an official committee of unsecured creditors of Energy Future Holdings Corp., Energy Future Intermediate Holding Company, LLC, EFIH Finance, Inc., and EECI, Inc. (the "EFH Creditors' Committee") on October 27, 2014 [D.I. 2570].  Further information regarding the Debtors' business operations and capital structure is set forth in the declaration of Paul Keglevic in support of the Debtors' first day motions [D.I. 98].

6.    On the Petition Date, the Debtors filed the Taxes Motion, seeking authority to negotiate, remit, and pay prepetition sales, use, state income, franchise, margin, real and personal

---

[3]    For the avoidance of doubt, by this Motion, the Debtors are not seeking (a) any relief with respect to Taxes or Fees owed to the Internal Revenue Service or (b) to pay any Taxes or Fees that have accrued for past due or prior tax periods.

property, and other taxes, and prepetition operational and other similar fees (collectively, as defined and further described in the Taxes Motion, the "Taxes and Fees").

7.      On May 2, 2014, the Court granted interim relief authorizing the Debtors to (a) pay all outstanding prepetition Taxes and Fees in an aggregate amount not to exceed $80.74 million, and (b) negotiate and pay postpetition Taxes and Fees [D.I. 320].

8.      On June 4, 2014, the Court entered the Final Taxes Order authorizing the Debtors to (a) pay all outstanding prepetition Taxes and Fees up to the Initial Tax and Fee Cap, and (b) negotiate and pay all postpetition Taxes and Fees.

9.      In the months leading to the Petition Date, the Debtors and their advisors estimated the Debtors' total liability to the Taxing and Regulatory Authorities on account of Taxes and Fees that arose or accrued before the Petition Date.  These estimates were based on a number of assumptions relating to the Debtors' financial and operational results from prior tax periods, as well as extrinsic factors, and formed the basis for the Initial Tax and Fee Cap.

10.     Since the Petition Date, the Debtors have paid to the Taxing and Regulatory Authorities (or such other appropriate third parties responsible for remitting such payments to the Taxing and Regulatory Authorities) approximately $82 million in the aggregate on account of prepetition Taxes and Fees, as such amounts have become due and owing in the ordinary course of business.[4]   Accordingly, as of November 2014, the Debtors estimate that there is

---

[4]   Specifically, in the ordinary course of business the Debtors negotiate and settle scores of Property Tax claims with the applicable Taxing Authorities, including with respect to the assessed value of the underlying property, the applicable tax rates, and proposed payment schedules.  Additionally, the Debtors and the Taxing Authorities may agree to lower tax assessments in exchange for payment earlier than the last day permitted by law before a penalty is imposed.  The Debtors believe that the authority in the Final Taxes Order includes the ability to negotiate with the Taxing Authorities and reach agreement as to the actual amount that is due and owing, especially where such amount is less than the amount initially assessed or invoiced by the Taxing Authorities. In an abundance of caution , the Debtors seek to clarify in the Order their authority to continue negotiating, settling, and satisfying those Property Taxes that the Debtors determine, in the exercise of their sound business judgment, are actually due and owing to the Taxing Authorities.

approximately $64.7 million of remaining availability under the Initial Tax and Fee Cap for prepetition Taxes and Fees.

11.    The initial Tax and Fee Cap was based on assessed valuations as of the time and on an accrual of the tax amounts through April 2014.  In light of updated valuations, and taking into account all prepetition obligations for all taxes, including Texas Margin Taxes, Other State Income and Margin Taxes, Sales and Use Taxes, certain variable-rate Fees, and all 2014 tax year real and personal property taxes (the "Property Taxes"), the Debtors now need authority to pay an additional amount of such prepetition Taxes and Fees.

12.    Based on the updated information and full-year calculations, the Debtors have determined that there is approximately $120 million remaining to be paid on account of prepetition Taxes and Fees, of which approximately $100 million relates to Property Taxes. Although the majority of the outstanding Taxes and Fees in excess of the Initial Tax and Fee Cap relate only to Property Taxes, the Initial Tax and Fee Cap limits the Debtors' ability to pay all types of Taxes and Fees.  Accordingly, to ensure that the Debtors have authority to honor all prepetition Taxes and Fees (including all Property Taxes), the Debtors request authority to pay all unpaid, outstanding prepetition Property Taxes in an aggregate amount not to exceed the Additional Property Tax Cap.

## Basis for Relief

**I.    Payment of Property Taxes is Necessary and Appropriate.**

13.    As described in the Taxes Motion, approximately 500 tax jurisdictions in Texas where the Debtors' business operations are located possess the authority to levy Property Taxes against the Debtors' real and personal property.  Payment of the Property Taxes will likely give the Taxing Authorities no more than that to which they otherwise would be entitled under a

5

chapter 11 plan, and will save the Debtors the potential interest expense, legal expense, and penalties that otherwise might accrue on the Property Taxes during these chapter 11 cases.

      **A.**      **Certain of the Taxes and Fees May Constitute Secured or Priority Claims Entitled to Special Treatment Under the Bankruptcy Code.**

14.      The determination of when a state tax is incurred is governed by state law.  *See In re Columbia Gas Transmission Corp. v. I.R.S.*, 37 F.3d 982 (3d Cir. 1994).  Under Texas state law, property taxes are the personal obligation of the person who owns or acquires the property on January 1 of the year for which the tax is imposed.  *See Midland Central Appraisal District v. Midland Industrial Service Corp.*, 35. F.3d 164 (5th Cir. 1994) (under Texas law, a property owner's liability for ad valorem taxes for any given year arises as of January 1 of that year regardless of when the tax is assessed).  A person is not relieved of the obligation because he no longer owns the property. TEX. TAX CODE §32.07.  Additionally, a statutory tax lien attaches to property to secure the payment of all taxes, penalties, and interests ultimately imposed for the year on the property, whether or not the taxes are imposed in the year the lien attaches.  TEX. TAX CODE §32.01(a).  Accordingly, on January 1, 2014, a statutory lien attached to all real and personal property owned by the Debtors in the State of Texas as of that date.

15.      Because, in most instances, the value of the Debtors' property exceeds the Property Taxes secured by the tax lien, most Taxing Authorities to whom the Debtors owe prepetition Property Taxes likely hold oversecured claims against the Debtors' estates.  Under section 506(b) of the Bankruptcy Code, these oversecured claims will accrue interest, and the Taxing Authorities will also be entitled to recover "any reasonable fees, costs, or charges provided for under the . . . State statute under which such claim arose." 11 U.S.C. § 506(b); *see, e.g., United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241-43 (1989) (nonconsensual lienholders may receive interest on their claims under section 506(b) of the Bankruptcy Code).

In the State of Texas, such interest rates range from 6% per annum to 12% per annum, depending upon the number of months such tax payment has been delinquent.  TEX. TAX CODE §33.01. These rates substantially exceed the Debtors' cost of capital at current market rates and, if incurred as a result of nonpayment or late payment, would needlessly drain the Debtors' estates of money that could be deployed elsewhere.

16.    Moreover, even if the prepetition claims arising on account of Property Taxes are unsecured, those claims most likely would be priority claims entitled to payment prior to the general unsecured creditors.  *See* 11 U.S.C. § 507(a)(8)(B) (a "property tax incurred before the commencement of the case and last payable without penalty after one year before the date of the filing of the petition").  To the extent that such claims are entitled to priority treatment under section 507(a)(8)(B) of the Bankruptcy Code, the Taxing Authorities also may attempt to assess penalties.  *See* 11 U.S.C. § 507(a)(8)(G) (granting priority status to "a penalty related to a claim of a kind specified in this paragraph and in compensation for actual pecuniary loss").

17.    Consequently, timely payment of Property Taxes merely expedites the treatment and distribution to the Taxing Authorities that would otherwise be made under a proposed plan of reorganization, and should not unduly prejudice the rights of other creditors.  Rather, payment of the Property Taxes as they come due will save the Debtors the potential interest expense (and penalties) that otherwise might accrue on the Property Taxes during these chapter 11 cases. Accordingly, to avoid the further accrual of interest and penalties, the Debtors seek authority, in the Debtors' sole discretion, to pay the prepetition Property Taxes up to the Additional Property Tax Cap, as such become due in the ordinary course.

18.    Bankruptcy courts routinely have authorized the payment of real and personal property taxes in other large chapter 11 cases in this district and elsewhere.  *See, e.g., In re Dura*

7

*Automotive Sys., Inc.*, No. 06-11202 (KJC) (Bankr. D. Del. Dec. 22, 2006); *In re Teleglobe Comm. Corp.*, No. 02-11518 (MFW) (Bankr. D. Del. May 28, 2002) (authorizing payment of real and personal property taxes); *In re USG Corp.*, No. 01-2094 (RJN) (Bankr. D. Del. Sept. 20, 2001) (authorizing payment of prepetition real and personal property taxes); *In re Northwest Airlines Corp.*, Case No. 05-17930 (ALG) (Bankr. S.D.N.Y. Apr. 12, 2006) (authorizing payment of certain prepetition property and other taxes up to $55 million in the aggregate); *In re Calpine Corporation*, Case No 05-60200 (BRL) (Bankr. S.D.N.Y. March 22, 2006) (authorizing payment of prepetition property taxes up to $37 million in the aggregate); *In re NRG Energy, Inc.*, Case No. 03-13024 (PCB) (Bankr. S.D.N.Y. Sept. 18, 2003) (authorizing payment of prepetition property taxes up to $89 million in the aggregate).

**B.     Payment of the Taxes and Fees is Warranted Under the Doctrine of Necessity.**

19.     Courts in the Third Circuit and elsewhere generally recognize that debtors may pay prepetition claims that are essential to the continued operation of the debtor's business.  *See*, *e.g.*, *In re Meridian Auto. Sys.-Composite Operations, Inc.*, 372 B.R. 710, 714 (Bankr. D. Del. 2007) (granting the debtor authority to pay prepetition obligations owed to certain critical vendors); *In re Primary Health Sys., Inc.*, 275 B.R. 709, 710 (Bankr. D. Del. 2002) (allowing payment of prepetition wages upon a finding that such relief was "essential to the continued operation of the Debtors' businesses"); *In re Just for Feet, Inc.*, 242 B.R. 821, 824-45 (Bankr. D. Del. 1999) (noting that debtors may pay prepetition claims that are essential to the continued operation of the debtor's business).  Courts have relied on several legal bases in approving such relief.

20.     Courts generally recognize that debtors may pay prepetition claims under section 363(b) of the Bankruptcy Code where there is a sound business purpose for the payment of

8

prepetition obligations, and where the debtor is able to "articulate some business justification, other than the mere appeasement of major creditors." *See*, *e.g.*, *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) (granting debtor authority to pay prepetition wages); *Armstrong World Indus. Inc. v. James A. Phillips, Inc. (In re James A. Phillips, Inc.)*, 29 B.R. 391, 398 (Bankr. S.D.N.Y. 1983) (granting the debtor the authority to pay prepetition claims of suppliers who were potential lien claimants).

21.    Courts also recognize that payments to prepetition creditors are appropriate pursuant to section 105(a) of the Bankruptcy Code under the "doctrine of necessity" or the "necessity of payment" rule where such payments are necessary to the continued operation of the debtor's business. *See*, *e.g.*, *In re Lehigh & New England Ry. Co.*, 657 F.2d 570, 581 (3d Cir. 1981) (holding that a court could authorize the payment of prepetition claims if such payment was essential to the continued operation of the debtor); *In re Penn Cent. Transp. Co.*, 467 F.2d 100, 102 n.1 (3d Cir. 1972) (holding that the necessity of payment doctrine permits "immediate payment of claims of creditors where those creditors will not supply services or material essential to the conduct of the business until their pre-reorganization claims have been paid"); *In re Friedman's, Inc.*, 2011 WL 5975283, at *3 (Bankr. D. Del. Nov. 30, 2011) ("[M]ost courts will allow payments [of prepetition claims] under the 'doctrine of necessity,' if the debtor establishes that in its business judgment making such payments is critical to the survival of the debtor's business"); *In re Columbia Gas Sys., Inc.*, 171 B.R. 189, 191–92 (Bankr D. Del. 1994) (noting that debtors may pay prepetition claims that are essential to the continued operation of the debtor's business). The rationale for the necessity of payment rule—the rehabilitation of a debtor in reorganization cases—is "the paramount policy and goal of Chapter 11." *Ionosphere Clubs*, 98 B.R. at 176; *Just for Feet*, 242 B.R. at 826 (finding that payment of prepetition claims

9

to certain trade vendors was "essential to the survival of the debtor during the chapter 11 reorganization.").

22.     Here, the Debtors' payment of the Property Taxes is an exercise of sound business judgment and is necessary to permit a successful reorganization.  As discussed above, the Debtors must continue to pay the Property Taxes to continue operating in certain jurisdictions, avoid interest and penalties, avoid tax liens being placed on assets, and to avoid costly distractions during these chapter 11 cases.   Also, the Debtors believe that some, if not all, of the Taxing Authorities will pursue other remedies if certain of the Property Taxes are unpaid, thus unnecessarily diverting the Debtors' attention away from the operations of their businesses and the reorganization process.

23.     Courts in this district have approved relief similar to the relief requested in this Motion.  *See*, *e.g.*, *In re Coldwater Creek Inc.*, No. 14-10867 (BLS) (Bankr. D. Del. Apr. 14, 2014); *In re Brookstone Holdings Corp.*, No. 14-10752 (BLS) (Bankr. D. Del. Apr. 4, 2014); *In re Quantum Foods, LLC*, No. 14-10318 (KJC) (Bankr. D. Del. Feb. 20, 2014); *In re Event Rentals, Inc.*, No. 14-10282 (PJW) (Bankr. D. Del. Feb. 18, 2014); *In re F & H Acquisition Corp.*, No. 13-13220 (KG) (Bankr. D. Del. Dec. 17, 2013); *In re EWGS Intermediary, LLC*, No. 13-12876 (MFW) (Bankr. D. Del. Nov. 5, 2013); *In re Longview Power, LLC*, No. 13-12211 (BLS) (Bankr. D. Del. Sept. 4, 2013); *In re Rural/Metro Corp.*, No. 13-11952 (KJC) (Bankr. D. Del. Aug. 6, 2013); *In re OnCure Holdings, Inc.*, No. 13-11540 (KG) (Bankr. D. Del. June 18, 2013); *In re Vertis Holdings, Inc.*, No. 12-12821 (CSS) (Bankr. D. Del. Oct. 31, 2012).[5]

---

[5]     Because of the voluminous nature of the orders cited herein, such orders are not attached to the Motion.  Copies of these orders are available on request of the Debtors' counsel.

**II.        Settlement of Property Taxes is Warranted under Bankruptcy Rule 9019.**

24.      Pursuant to Bankruptcy Rule 9019(a), a bankruptcy court may, after appropriate notice and a hearing, approve a compromise or settlement so long as the proposed settlement is fair, reasonable, and in the best interest of the estate.  Fed. R. Bankr. P. 9019(a); *see In re Marvel Entm't Group, Inc.*, 222 B.R. 243, 249 (D. Del 1998) ("[T]he ultimate inquiry [is] whether 'the compromise is fair, reasonable, and in the interest of the estate.'") (citation omitted).   In determining whether a settlement is fair and equitable, the Third Circuit has adopted a balancing test, under which a bankruptcy court should decide whether to approve a particular compromise or settlement.  The factors of the balancing test are: "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors." *Myers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996).

25.      Additionally, under section 363(b)(1) of the Bankruptcy Code, a debtor "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."  11 U.S.C. § 363(b)(1).  If a valid business justification exists for the use or sale of property, there is strong presumption that "in making a business decision the directors . . . acted on an informed basis, in good faith and in an honest belief that the action taken was in the best interests of the company."  *Official Comm. of Subordinated Bondholders v. Integrated Res., Inc.*, (*In re Integrated Res., Inc.*), 147 B.R. 548, 567 (Bankr. D. Del. 2008) (quoting *Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985)).  Generally, when applying the business judgment standard, courts grant great deference to debtors' business decisions.

26.      The Debtors are subject to property tax claims and other tax claims in approximately 500 jurisdictions in Texas.  As discussed above, in the ordinary course of

business, the Debtors negotiate and settle scores of Property Tax claims with applicable Taxing Authorities, including with respect to the assessed value of the underlying property, the applicable tax rates, and proposed payment schedules.  Additionally, the Debtors and the Taxing Authorities may agree to lower tax assessments in exchange for the Debtors' agreement to make payment before the last day such payment can be made without penalty.  The Debtors believe that the authority in the Final Taxes Order includes the ability to negotiate with the Taxing Authorities and reach agreement as to the actual amount that is due and owing, especially where such amount is less than the amount assessed or invoiced by the Taxing Authorities.  In an abundance of caution, the Debtors seek to clarify in the Order their authority to continue negotiating, settling, and satisfying those Property Taxes that the Debtors determine, in the exercise of their sound business judgment, are actually due and owing to the Taxing Authorities.

III.    **Cause Exists to Authorize the Debtors' Financial Institutions to Honor Checks and Electronic Fund Transfers.**

27.    The Debtors have sufficient funds to pay the amounts described herein in the ordinary course of business by virtue of expected cash flows from ongoing business operations, debtor-in-possession financing, and anticipated access to cash collateral.  In addition, under the Debtors' existing cash management system, the Debtors can readily identify checks or wire transfer requests as relating to an authorized payment in respect of the Property Taxes.  Accordingly, the Debtors believe that checks or wire transfer requests, other than those relating to authorized payments, will not be honored inadvertently.  Therefore, the Debtors respectfully request that the Court authorize and direct all applicable financial institutions, when requested by the Debtors, to receive, process, honor, and pay any and all checks or wire transfer requests in respect of the relief requested in this Motion.

### Waiver of Bankruptcy Rules 6004(a) and 6004(h)

28.     To implement the foregoing successfully, the Debtors seek a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the 14-day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h).

### Reservation of Rights

29.     Nothing contained in this Motion or any actions taken by the Debtors pursuant to the relief granted in the Interim or Final Order is intended or should be construed as:  (a) an admission as to the validity of any particular claim against a Debtor entity; (b) a waiver of the Debtors' rights to dispute any particular claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Motion; (e) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; or (f) a waiver or limitation of the Debtors' rights under the Bankruptcy Code or any other applicable law.  If the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity of any particular claim or a waiver of the Debtors' rights to subsequently dispute such claim.

### Notice

30.     The Debtors shall provide notice of this Motion on the date hereof via first class mail to:  (a) the U.S. Trustee; (b) counsel to the TCEH Creditors' Committee; (c) the EFH Creditors' Committee and proposed counsel thereto; (d) Wilmington Trust, N.A., in its capacity as administrative agent under the TCEH first lien credit agreement and collateral agent under the TCEH intercreditor agreements and counsel thereto; (e) Bank of New York Mellon Trust Company, N.A., in its capacity as indenture trustee under:  (i) the TCEH unsecured pollution

13

control revenue bonds; and (ii) the EFCH 2037 Notes due 2037, and counsel thereto; (f) American Stock Transfer & Trust Company, LLC, in its capacity as indenture trustee under: (i) the 9.75% EFH senior unsecured notes due 2019; (ii) the 10.0% EFH senior unsecured notes due 2020; (iii) the 10.875% EFH LBO senior unsecured notes due 2017; (iv) the 11.25%/12.0% EFH LBO toggle notes due 2017; (v) the 5.55% EFH legacy notes (series P) due 2014; (vi) the 6.50% EFH legacy notes (series Q) due 2024; and (vii) the 6.55% EFH legacy notes (series R) due 2034, and counsel thereto; (g) Computershare Trust Company, N.A. and Computershare Trust Company of Canada, in their capacities as indenture trustee under:  (i) the 11.0% EFIH senior secured second lien notes due 2021; and (ii) the 11.75% EFIH senior secured second lien notes due 2022, and counsel thereto; (h) UMB Bank, N.A. in its capacity as indenture trustee under:  (i) the 9.75% EFIH senior unsecured notes due 2019; and (ii) the 11.25%/12.25% EFIH senior toggle notes due 2018, and counsel thereto; (i) Delaware Trust Company of Delaware in its capacity as indenture trustee under:  (i) the 6.875% EFIH senior secured notes due 2017; (ii) the 10.0% EFIH senior secured notes due 2020; and (iii), the 11.50% TCEH senior secured notes due 2020, and counsel thereto; (j) Law Debenture Trust Company of New York in its capacity as indenture trustee under:  (i) the 10.25% TCEH senior unsecured notes due 2015; and (ii) the 10.50%/11.25% TCEH senior toggle notes due 2016, and counsel thereto; (k) Wilmington Savings Fund Society, FSB in its capacity as indenture trustee under the 15.0% TCEH senior secured second lien notes due 2021, and counsel thereto; (l) counsel to certain holders of claims against the Debtors regarding each of the foregoing described in clauses (c) through (j); (m) the agent for the TCEH debtor-in-possession financing facility and counsel thereto; (n) the agent for the EFIH debtor-in-possession financing facility and counsel thereto; (o) counsel to certain holders of equity in Texas Energy Future Holdings Limited Partnership;

14

(p) counsel to the Ad Hoc Committee of TCEH Unsecured Noteholders; (q) counsel to the Ad Hoc Committee of TCEH Second Lien Noteholders; (r) Oncor Electric Delivery Holdings Company LLC and counsel thereto; (s) Oncor Electric Delivery Company LLC and counsel thereto; (t) the Securities and Exchange Commission; (u) the Internal Revenue Service; (v) the Office of the United States Attorney for the District of Delaware; (w) the Office of the Texas Attorney General on behalf of the Public Utility Commission of Texas; (x) counsel to the Electric Reliability Council of Texas; (y) those parties that have requested notice pursuant to Bankruptcy Rule 2002; and (z) the Taxing Authorities.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

## No Prior Request

31.    Certain relief sought in this Motion and the Order seeks to clarify relief granted by the Court pursuant to the Final Taxes Order.

*[Remainder of page intentionally left blank.]*

RLF1 11197506v.1

WHEREFORE, the Debtors respectfully request that the Court enter the Order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested in this Motion and granting such other and further relief as is appropriate under the circumstances.

Wilmington, Delaware
Dated:   November 25, 2014

*/s/ William A. Romanowicz*
**RICHARDS, LAYTON & FINGER, P.A.**
Mark D. Collins (No. 2981)
Daniel J. DeFranceschi (No. 2732)
Jason M. Madron (No. 4431)
William A. Romanowicz (No. 5794)
920 North King Street
Wilmington, Delaware 19801
Telephone:      (302) 651-7700
Facsimile:       (302) 651-7701
Email:            collins@rlf.com
                    defranceschi@rlf.com
                    madron@rlf.com

-and-

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Edward O. Sassower, P.C. (admitted *pro hac vice*)
Stephen E. Hessler (admitted *pro hac vice*)
Brian E. Schartz (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022-4611
Telephone:      (212) 446-4800
Facsimile:       (212) 446-4900
Email:            edward.sassower@kirkland.com
                    stephen.hessler@kirkland.com
                    brian.schartz@kirkland.com

-and-

James H.M. Sprayregen, P.C. (admitted *pro hac vice*)
Marc Kieselstein, P.C. (admitted *pro hac vice*)
Chad J. Husnick (admitted *pro hac vice*)
Steven N. Serajeddini (admitted *pro hac vice*)
300 North LaSalle
Chicago, Illinois 60654
Telephone:      (312) 862-2000
Facsimile:       (312) 862-2200
Email:            james.sprayregen@kirkland.com
                    marc.kieselstein@kirkland.com
                    chad.husnick@kirkland.com
                    steven.serajeddini@kirkland.com

Co-Counsel to the Debtors and Debtors in Possession

16