# EXHIBIT A

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re | ) | Chapter 11 |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) | Case No. 14-10979 (CSS) |
| Debtors. | ) | Jointly Administered |

**ORDER AUTHORIZING THE TCEH COMMITTEE TO RETAIN AND EMPLOY CHARLES RIVER ASSOCIATES AS NATURAL GAS AND ENERGY CONSULTANT EFFECTIVE AS OFAUGUST 4, 2014**

Upon the application (the "**Application**") of the Official Committee of Unsecured Creditors (the "**Committee**") of Energy Future Competitive Holdings Company LLC ("**EFCH**"), EFCH's direct subsidiary, Texas Competitive Electric Holdings Company LLC ("**TCEH**") and their direct and indirect subsidiaries, and EFH Corporate Services Company (collectively with EFCH and TCEH, the "**TCEH Debtors**")[2] pursuant to sections 328(a) and 1103 of Title 11 of the United States Code (the "**Bankruptcy Code**"), Bankruptcy Rule 2014(a), and Local Rules 2014-1 2016-2(h): authorizing the retention and employment of Charles River Associates ("**CRA**") as natural gas and energy consultant to the TCEH Committee as of August 4, 2014, on the terms set forth in the Engagement Letter;[3] and upon the Yellin Declaration filed in support of the Application; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States

[1] The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, for joint administration has been granted, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

[2] Although EFH Corporate Services is not a subsidiary of TCEH, for ease of reference EFH Corporate Services is included in the definition "TCEH Debtors."

[3] Capitalized terms used and not otherwise defined herein have the meanings ascribed to them in the Application.

District Court for the District of Delaware, dated February 29, 2012; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and this Court having found that venue of this proceeding and the Application in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having reviewed the Application and having heard the statements in support of the relief requested therein at a hearing, if any, before the Court; and the Court having determined that the terms and conditions of CRA's employment, including the fee structure set forth in the Engagement Letter, attached as Exhibit 1 hereto, are reasonable as required by section 328(a) of the Bankruptcy Code; and upon the Court finding that CRA does not represent any adverse interests in connection with these cases and that it is a disinterested person as that term is defined in Bankruptcy Code section 101(14) and as used in Bankruptcy Code section 328(c); and upon further finding that the employment of CRA is necessary and in the best interests of the TCEH Committee; and notice of the Application having been proper; and the relief requested in the Application being warranted; it is **HEREBY ORDERED THAT**:

1. The Application is granted to the extent provided herein.

2. To the extent the Application, the Yellin Declaration, or the Engagement Letter are inconsistent with this Order, the terms of this Order shall govern.

3. The TCEH Committee is authorized pursuant to sections 327(a), 328, and 330 of the Bankruptcy Code to employ and retain CRA as the TCEH Committee's natural gas and energy consultant in accordance with the terms and conditions set forth in the Application and in the Engagement Letter attached hereto as **Exhibit 1,** subject to the terms of this Order, and CRA is authorized to perform the following services:

(a) Develop a long-term natural gas price forecast to be used as a fundamental input for the formation of a revised TCEH/EFH business plan;

(b) Develop associated alternate scenarios/sensitivities to long-term natural gas price forecast;

(c) Develop and document trends in long-term gas price drivers (e.g., shale gas drilling and completion productivity, initial production and decline rates, resource availability in and out of key "sweet spots", prices and trends in liquids production, gas demand including exports and increasing industrial demand, etc.) to support eventual potential testimony on gas price forecasts;

(d) Analyze volatility in natural gas prices with respect to their impact on portfolio value;

(e) Analyze relevant futures market data for forecasting long-term gas prices;

(f) Preparation of an expert report and provision of testimony, if required; and

(g) such other natural gas and energy consultant services or such other assistance as the TCEH Committee or its Counsel may deem necessary that are consistent with the role of a natural gas and energy consultant and not duplicative of services provided by other professionals in this proceeding.

4. CRA shall use reasonable efforts to avoid any duplication of services provided by any of the other Committee professionals in these chapter 11 cases.

5. Pursuant to the terms of the Engagement Letter, CRA is entitled to reimbursement by the TCEH Debtors for reasonable expenses incurred in connection with the performance of services in paragraph three (3) above, including, without limitation, the reasonable fees, disbursements and other charges of CRA's counsel (which counsel shall not be required to be retained pursuant to section 327 of the Bankruptcy Code or otherwise), in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, any applicable orders of this Court and (to the extent applicable) and the Fee Guidelines promulgated by the Office of the United States Trustee; *provided however,* that CRA shall not seek reimbursement for any services provided by CRA's counsel; *provided further,* that CRA may only seek reimbursement for services in connection with retention and fee application preparation, except as otherwise provided herein with respect to claims for indemnification; *provided further,* that CRA

shall submit the invoices of CRA's counsel together with any application seeking allowance of reimbursement for the fees, disbursements, and other charges of its counsel.

6. CRA will file fee applications for interim and final allowance of compensation and reimbursement of expenses pursuant to the procedures set forth in sections 330 and 331 of the Bankruptcy Code; *provided, however,* that CRA shall be compensated in accordance with the terms of the Engagement Letter and subject to the procedures set forth in the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, the guidelines established by the U.S. Trustee, and any other applicable orders of the Court.

7. Absent further order of this Court, fees and expenses incurred by CRA shall be paid by the TCEH Debtors.

8. The indemnification provisions in the Engagement Letter are approved, subject to the following modifications, applicable during the pendency of these cases:

(a) CRA shall not be entitled to indemnification, contribution, or reimbursement pursuant to the Engagement Letter for services other than those described in the Engagement Letter, unless such services and indemnification therefor are approved by the Bankruptcy Court;

(b) the Debtors shall have no obligation to indemnify CRA, or provide contribution or reimbursement to CRA, for any claim or expense that is either: (i) judicially determined (the determination having become final) to have arisen from CRA's gross negligence or willful misconduct; (ii) for a contractual dispute in which the TCEH Committee alleges the breach of CRA's contractual obligations unless the Court determines that indemnification, contribution or reimbursement would be permissible pursuant to *In re United Artists Theatre Co.*, 315 F .3d 217 (3d Cir. 2003); or (iii) settled prior to a judicial determination as to the exclusions set forth in clauses (i) and (ii) above, but determined by the Court, after notice and a hearing to be a claim or expense for which CRA should not receive indemnity, contribution or reimbursement under the terms of the Engagement Letter as modified by this Order; and

(c) if, before the earlier of (i) the entry of an order confirming a chapter 11 plan in these cases (that order having become a final order no longer subject to appeal), and (ii) the entry of an order closing these chapter 11 cases, CRA believes that it

is entitled to the payment of any amounts by the TCEH Debtors on account of the TCEH Debtors' indemnification, contribution and/or reimbursement obligations under the Engagement Letter (as modified by this Order), including without limitation the advancement of defense costs, CRA must file an application therefor in this Court, and the TCEH Debtors may not pay any such amounts to CRA before the entry of an order by this Court approving the payment. This subparagraph (c) is intended only to specify the period of time under which the Court shall have jurisdiction over any request for fees and expenses by CRA for indemnification, contribution or reimbursement, and not a provision limiting the duration of the TCEH Debtors' obligation to indemnify CRA. All parties-in-interest shall retain the right to object to any demand by CRA for indemnification, contribution or reimbursement.

9. The TCEH Committee and CRA are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Application.

10. Notwithstanding anything in this Order to the contrary, the United States Trustee for the District of Delaware shall retain all rights to object to CRA's fees pursuant to the Engagement Letter based on the reasonableness standard provided for in section 330 of the Bankruptcy Code.

11. The terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

12. Notwithstanding any provision to the contrary in this Application, the Yellin Declaration, or the Engagement Letter, the Court shall retain jurisdiction to hear and to determine all matters arising from or related to implementation of this Order.

Dated: __________, 2014
Wilmington, DE

______________________________
HONORABLE CHRISTOPHER S. SONTCHI
UNITED STATES BANKRUPTCY JUDGE

# EXHIBIT 1



November 5, 2014

OFFICIAL COMMITTEE OF UNSECURED CREDITORS
OF ENERGY FUTURE HOLDINGS CORP.

Mr. Frank Godino
Vice President
Law Debenture Trust Company of New York
400 Madison Avenue
New York, NY 10017

Mr. Michael Puryear, Esquire
General Counsel
Holt Texas LTD, d/b/a Holt Cat
3302 South W.W. White Road
San Antonio, TX 78222

Dear Mr. Godino and Mr. Puryear:

Dear Sirs:

I am pleased that, effective as of August 4, 2014, the Official Committee of Unsecured Creditors (the "Committee") of Energy Future Competitive Holdings Company LLC ("EFCH"), EFCH's direct subsidiary, Texas Competitive Electric Holdings Company LLC ("TCEH") and their direct and indirect subsidiaries, and EFH Corporate Services Company (collectively with EFCH and TCEH, the "TCEH Debtors") has retained Charles River Associates ("CRA") to assist with certain natural gas and energy matters pertaining to the chapter 11 cases of EFH Corp., et al. [Case No. 14-10979].

In establishing and maintaining good relationships with our clients, we have found it important to provide each client with a statement of our engagement practices and billing policies. These practices and policies are set forth in our attached Terms and Conditions, which are incorporated herein by reference and which are intended to safeguard our client information, establish reasonable fees for our services, and provide for the billing and collection of those fees in a timely manner.

CRA will provide its services hereunder on a time and materials basis, and will invoice for actual hours worked and expenses incurred. All invoices will be submitted to the Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") for approval and payment by the TCEH Debtors pursuant to the Bankruptcy Court's orders and the United States Trustee's guidelines.

Hourly fee rates for the proposed members of the team are listed below. Other CRA staff working on the project will be billed at their standard prevailing rates at the time. Please note that

CRA's hourly rates are subject to periodic adjustments, which will be disclosed in accordance with the Bankruptcy Court's orders and the United States Trustee's guidelines.

| Name | Level | Standard rate (US$/hr) |
|---|---|---|
| Seabron Adamson | Vice President | 675 |
| Vernon Jones | Principal | 500 |
| Robert Kaineg | Senior Associate | 400 |
| Hayes Winik | Consulting Associate | 310 |
| Mike Niemeyer | Consulting Associate | 320 |
| Courtney Good | Analyst | 290 |
| Analyst | Analyst | 290 |

Thank you for your confidence in our ability to assist the Committee. We look forward to working with you.

Sincerely yours,

Charles River Associates

Seabron Adamson
Vice President

Agreed :

On behalf of the Committee

By: Michael Puryear
Its : Co-Chairperson

## Terms and Conditions

### Scope of Services

(a) Develop a long-term natural gas price forecast to be used as a fundamental input for the formation of a revised TCEH/EFH business plan;

(b) Develop associated alternate scenarios/sensitivities to long-term natural gas price forecast;

(c) Develop and document trends in long-term gas price drivers (e.g., shale gas drilling and completion productivity, initial production and decline rates, resource availability in and out of key "sweet spots", prices and trends in liquids production, gas demand including exports and increasing industrial demand, etc.) to support eventual potential testimony on gas price forecasts;

(d) Analyze volatility in natural gas prices with respect to their impact on portfolio value;

(e) Analyze relevant futures market data for forecasting long-term gas prices;

(f) Preparation of an expect report and provision of testimony, if required; and

(g) such other energy consultant services or such other assistance as the Committee or its Counsel may deem necessary that are consistent with the role of an energy consultant and not duplicative of services provided by other professionals in this proceeding.

### Confidentiality

All of CRA's work for clients is confidential. CRA staff members and consultants have signed confidentiality agreements and are obligated not to disclose any confidential information or documents used or obtained in the course of our work. This obligation of confidentiality does not apply to data or information which: (1) is or becomes generally available to the public other than as a result of a disclosure by CRA or any of its representatives; or (2) was in CRA's possession prior to the time it was disclosed to CRA by you; or (3) is disclosed to CRA by a third party who is under no obligation of confidentiality to you. Should CRA be compelled by any valid court or administrative order to disclose any confidential information held in connection with this engagement, we will first notify you and will cooperate, to the extent practicable, with any attempts to legally limit or avoid such disclosure. However, any confidentiality agreement entered into by the Committee shall be binding upon CRA and shall supersede this confidentiality provision.

**Relationship**

The role of CRA is solely that of an independent contractor. In no event shall this agreement or any work performed by CRA create a relationship of principal and agent, partnership or joint venture, or any fiduciary relationship between the parties. This agreement may be terminated, at the discretion of either party, on ten (10) days' written notice, or earlier with the consent of both parties. CRA will be compensated for all services rendered and expenses incurred by CRA up to the date of termination, subject to the Bankruptcy Court's orders and the United States Trustee's guidelines.

Under this agreement, CRA will provide consulting services and will report on the progress of our work, either orally or, if requested, in written form. CRA will offer independent, objective opinions and analysis.

**Data Handling**

Any nonpublic information you have supplied to CRA will be kept confidential with at least the same degree of care as we use for our own materials and in compliance with any confidentiality agreements entered into by the Committee. It is your obligation to inform CRA at the outset of the engagement of any special data handling, storage, or destruction requirements. CRA shall take appropriate steps to accommodate your data handling, storage, and destruction needs. Unless other terms are agreed or there is an order or other legal requirement to the contrary, upon the conclusion of the provision of services under this retention, CRA may destroy or return to you all information related to this retention (hard-copy or electronic). CRA reserves the right to maintain copies (at its expense) of such material as it deems necessary for administrative, legal, or regulatory purposes. The terms of this paragraph shall survive the termination and/or the expiration of this agreement.

**Indemnification**

As a material part of the consideration for CRA to furnish its services, the Committee agrees that neither CRA nor any of our affiliates, or any of our or their respective directors, officers, members, employees, agents or controlling persons, if any (the "Indemnified Persons") shall have any liability (whether direct or indirect, in contract or tort or otherwise) to the TCEH Debtors, or any other Debtors in the chapter 11 cases of EFH Corp., et al., the Committee, or their respective members, partners, employees, agents or their respective affiliates or security holders. The TCEH Debtors shall indemnify and hold harmless CRA and the Indemnified Persons from and against any losses, claims, damages, liabilities or expenses to which CRA or any Indemnified Person may become subject under any applicable federal or state law, or otherwise, related to, arising out of or in connection with our engagement, whether or not any pending or threatened action, claim, proceeding or investigation giving rise to such losses, claims, damages, liabilities or expenses is initiated or brought by the Company or on its behalf and whether or not in connection with any action, claim, proceeding or investigation in which the TCEH Debtors, any other Debtors in the chapter 11 cases of EFH Corp., et al., CRA or any

such Indemnified Person are a party, for or in connection with this engagement or any transactions or conduct in connection therewith except to the extent that any losses, claims, damages, liabilities or expenses incurred by the Committee are found by a court of competent jurisdiction in a judgment which has become final in that it is no longer subject to appeal or review to have resulted primarily from such Indemnified Person's bad faith or gross negligence. The terms of this paragraph shall survive termination and/or the expiration of this agreement.

**Intellectual Property**

You acknowledge and agree that in performing the services for you under this retention, CRA may utilize proprietary works, including without limitation software, tools, models, specifications and other materials, that were developed by CRA or a third party prior to the start of or outside of this engagement ("Preexisting Materials"). CRA owns all right, title and interest in and to the Preexisting Materials and (a) to the extent (i) CRA incorporates Preexisting Materials into the work product, or (ii) any intellectual property rights in such Preexisting Materials are required in connection with the development, use or commercialization of any work product; and (b) all fees to CRA pursuant to this agreement have been fully-paid by you, CRA shall grant you a fully-paid, non-transferable, non-exclusive, royalty-free user license to use the Preexisting Materials, limited to the purposes as stated within this retention agreement.

**Reports**

CRA's reports, and any portions or drafts thereof, are prepared for your use in connection with this matter and shall not be made available to any other party without the prior authorization of CRA, provided, however, that any such materials may be shared with your directors, officers, employees and agents, including accountants, legal counsel and other advisors to the extent necessary in connection with this engagement.

**Billing and Payment**

CRA understands that all invoices are subject to review and approval pursuant to the Bankruptcy Court's orders and the United States Trustee's guidelines regarding payment of professional fees by the TCEH Debtors, including the submission of periodic fee applications as may be required. The obligation to pay CRA's fees and expenses is not contingent upon the results of the services or any suit or matter in connection with which the services are provided. CRA will maintain records of its services rendered to the Committee in one-tenth (0.1) of an hour increments. In addition to any fees that may be payable to CRA, the Debtors shall promptly reimburse CRA for all reasonable expenses incurred by CRA (including, but not limited to, travel and lodging, data processing, communications charges, courier services, and other expenditures) and the reasonable fees and expenses of outside counsel, if any, retained by CRA to negotiate or enforce the Engagement Letter or for services to CRA necessary for CRA to perform its obligations under the Engagement Letter, subject to the procedures set forth in the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules (to the extent not waived).

**Miscellaneous**

In the event that the scope and/or parties to this retention change after the commencement of CRA's services hereunder, CRA reserves the right to decline to provide further services and terminate this retention without liability, unless CRA determines that such change in scope and/or parties will not create a conflict of interest for CRA. You will from time to time provide to us such information and documentation as we may request to comply with our obligations under applicable anti-money laundering or similar legislation in any relevant jurisdiction. We may decline to act or to continue to act for you until you have complied with any such request.

The parties agree that an email agreed to by the parties regarding change of scope, pricing of fees and out of pocket expenses shall be sufficient evidence to approve such changes. In the event that CRA is required to undertake collection efforts for unpaid invoices, client shall also be responsible for payment of CRA's reasonable attorneys' fees and costs associated therewith. If CRA is required by government regulation, protective order, subpoena, or other similar legal requirement that may arise during or after the pendency of this agreement, to produce or destroy documents or provide personnel as witnesses with respect to the services or this agreement, CRA shall be reimbursed for its professional time and expenses, as well as reasonable attorneys' fees and expenses, including the allocable cost of in-house counsel, incurred in responding to such requests.

Neither party shall be liable in damages or have the right to terminate this agreement for any delay or default in performing hereunder if such delay or default is caused by conditions beyond its control including, but not limited to acts of God, government restrictions, wars (declared or undeclared), acts or threats of terrorism, pandemic, insurrections and/or any other cause beyond the reasonable control of the party whose performance is affected.

The client may not use the name, trade name or mark of CRA, any of its subsidiaries or its employees in any marketing or similar promotional materials, including websites or press releases without the express written consent of CRA, unless required by law.

CRA understands and agrees that its retention and issues arising therefrom shall be subject to the jurisdiction of the Bankruptcy Court.

**Entire Agreement**

This agreement and the Bankruptcy Court's retention order shall constitute the complete and exclusive statement of the parties in relation to the subject matter hereof; sets forth all obligations of the parties in relation to the subject matter hereof; supersedes all prior or simultaneous written or oral proposals, estimates and understandings relating thereto, all of which are expressly excluded. Charles River Associates is a registered trade name of CRA International, Inc., which is the entity being retained herein.