# <u>Exhibit A</u>

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) | Case No. 14-10979 (CSS) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

### SUPPLEMENTAL DECLARATION OF DOUGLAS FRISKE IN
### SUPPORT OF MOTION OF ENERGY FUTURE HOLDINGS CORP., *ET AL.*,
### FOR ENTRY OF AN ORDER APPROVING THE 2015 COMPENSATION PROGRAMS

I, Douglas J. Friske, hereby declare under penalty of perjury:

1.      I am a managing director of Executive Compensation at Towers Watson Delaware Inc. ("Towers Watson").  Towers Watson was engaged pre-petition in October 2012 to provide compensation consulting services to Energy Future Holdings Corporation and certain of its affiliates.  I am familiar with the structure of the Debtors' 2015 Compensation Programs as they are set forth in the *Motion of Energy Future Holdings Corp., et al., for Entry of an Order Approving the 2015 Compensation Programs* [D.I. 2852] (the "Motion").[2]  In connection with the Motion, I submitted the *Declaration of Douglas Friske in Support of Motion of Energy Future Holdings Corp., et al., for Entry of an Order Approving the 2015 Compensation Programs* [D.I. 2854] (the "Original Declaration").  I am duly authorized to submit this supplemental declaration (this "Supplemental Declaration") on behalf of Towers Watson in further support of the Motion.

---

[1]    The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810.  The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201.  Due to the large number of debtors in these chapter 11 cases, which are being jointly administered, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

[2]    All capitalized terms used but otherwise not defined herein shall have the meanings set forth in the Motion.

2.      Except as otherwise indicated, all facts set forth in this Supplemental Declaration are based upon my personal knowledge of the Debtors' operations and finances, my research into market practices for companies in the energy industry and those that have recently filed for chapter 11 protection, and information supplied to me by members of the Debtors' management and the Debtors' other advisors.  If called upon to testify, I could and would testify competently to the facts set forth herein.

**The Debtors' Incentive Compensation Plans Are Consistent with the Competitive Market**

3.      Along with other members of the Towers Watson team, I assisted with the development of the 2015 Compensation Programs by reviewing the structure of the Debtors' existing base salary and annual company-wide incentive programs, paying specific attention to the participating employees and target payout levels.  I believe that the 2015 Compensation Programs have a reasonable cost and are consistent with comparable compensation levels approved in other chapter 11 cases and in the energy industry.

4.      As described in paragraphs 31 through 38 of my Original Declaration, in evaluating the 2015 Compensation Programs, my team at Towers Watson and I reviewed recent publicly-available filings and Towers Watson's own proprietary databases to assess the total costs of the Debtors' performance-based compensation plans.

5.      The table below sets forth the estimated costs of Debtors' annual incentive plans and supplements the table included in paragraph 34 of my Original Declaration to reflect the estimated costs reported in the Motion by updating (i) the estimated cost of the Key Leader Plan from $6.1 million to $6.3 million, (ii) the estimated cost of the Key Leader Performance Program from $4.2 million to $4.3 million, and (iii) the total cost of the 2015 Compensation Programs from $86.3 million to $86.6 million.  This table also adds a column of data reflecting the maximum potential costs of the Debtors' 2015 Compensation Programs.  These updates do not

otherwise impact the analysis reflected in paragraph 34 of my Original Declaration, as the

percentages reported in the table below remain consistent at 0.77% and 1.17%.

| Annual Incentive Plans | Estimated 2015 Cost (at Target) | Maximum 2015 Cost (at Superior) | 50th Percentile Cost of Annual Incentive Plans as a Percentage of Company Revenues (at Target) | 75th Percentile Cost of Annual Incentive Plans as a Percentage of Company Revenues (at Target) |
|---|---|---|---|---|
| Annual Incentive Plan | $56.1 million | $112.2 million | | |
| Executive Annual Incentive Plan    Non-Insider | $4.3 million | $8.6 million | | |
| Insider | $8.0 million | $16.0 million | | |
| Key Leader Plan | $6.3 million | $6.3 million | General Industry 0.69% Energy Industry 0.68% | General Industry 1.15% Energy Industry 1.09% |
| Key Leader Performance Program | $4.3 million | $4.3 million | | |
| SPC Supplemental Incentive Award[3] | $7.6 million | $7.6 million | | |
| **Total** | $86.6 million | $155.0 million | | |
| **Total as a Percentage of EFH Projected Revenues (of approximately $11.2 billion)** | 0.77% | 1.38% | | |
| **Total as a Percentage of TCEH Projected Revenues (of approximately $7.396 billion)** | 1.17% | 2.10% | | |

6.      Specifically, paragraph 35 of my Original Declaration provides that the aggregate

estimated cost of the Debtors' 2015 Compensation Programs at target performance is

---

[3]    As used herein, the term "SPC Supplemental Incentive Award" refers to the Insider Program identified in the Motion as the "2015 SPC LTIP" or the "SPC LTIP." As described in each of the Supplemental Kirby Declaration and the Order Approving the 2015 Compensation Programs, this change in terminology was made to reflect that the program provided for in Exhibit III to the March 31, 2014 Amended and Restated Employment Agreements of John Young, Paul Keglevic, James Burke, Mac McFarland, and John O'Brien, and Exhibit IV to the March 31, 2014 Amended and Restated Employment Agreements of Stacey Dore and Carrie Kirby (collectively, the "SPC Employment Agreements") is a new plan that is the successor to the prior SPC LTIP and covers the 2015 calendar year.

3

approximately .77% of EFH's projected 2014 revenues of $11.23 billion and approximately 1.17% of TCEH's projected 2014 revenues of $7.396 billion. Compared to energy industry data within the Towers Watson Annual Incentive Plan Design Survey, costs representing .77% of projected revenues fall slightly above the 50th percentile and costs representing 1.17% of projected revenues fall slightly above the 75th percentile.

7.    Annual incentive programs in the energy industry typically include the opportunity to earn above-target payouts for superior performance. Specifically, Towers Watson evaluated the annual incentive programs among the Debtors' Peer Group (as disclosed in recent proxy filings) and all fifteen peer companies provide for above target-level payout opportunities in their annual incentive plans, with the majority providing maximum payments equal to 200% of target, consistent with the Debtors' programs.[4]    Based on my experience and knowledge from having participated in the development and design of hundreds of management and employee incentive plans for companies inside and outside of bankruptcy, I would expect that the Debtors' maximum cost as a percentage of revenue (1.38% of EFH's projected 2014 revenues of $11.23 billion and 2.10% of TCEH's projected 2014 revenues of $7.396 billion) would be similarly positioned relative to the market at its target cost, particularly given the existence of the Debtors' caps on target payouts under several of the Debtors' incentive plans.

8.    In addition, as set forth in the following table, the Debtors' 2015 Compensation Programs are positioned at or below market median practice considering the cost of long-term incentive compensation awards among the Debtors' peer companies. Specifically, Towers Watson evaluated the cost of long-term incentive awards among the Debtors' Peer Group and

---

[4]    Maximum annual incentive cost data are not collected in Towers Watson's survey, because differences in various plan designs do not allow for consistent comparison of maximum aggregate costs (e.g. some plans place no hard limits on performance that can earn a bonus creating unlimited upside opportunities).

combined this information with the aforementioned target annual incentive costs for the energy industry, which we believe are representative of likely peer company practices.

9.      As described in paragraph 36 of my Original Declaration, the annual cost of these long-term incentive plans is approximately 0.4% of revenues at median and approximately 0.5% of revenues at the 75th percentile.  The inclusion of these programs in the data is relevant given that the Key Leader Performance Plan and Key Leader Plans function to mirror the long-term compensation opportunities that would ordinarily comprise a part of the aggregate compensation for Debtor executives, and the SPC Supplemental Incentive Award addresses the shortfall to competitive compensation levels created by the close of the SPC LTIP.

10.      The SPC Supplemental Incentive Award was introduced as the successor to the 2014 SPC LTIP.  The SPC LTIP was a three-year program that will conclude at the end of 2014. In early 2014, the Debtors implemented amended and restated employment agreements for the members of the SPC to establish that the SPC Supplemental Incentive Award would make payments on a quarterly basis as an interim incentive compensation plan during the Debtors' Chapter 11 cases.  Towers Watson advised the Debtors in making the decision to move the payment schedule to quarterly to address the uncertainty of the potential Chapter 11 process and incentivize the Debtors' key management personnel to focus on near term objectives.  The SPC Supplemental Incentive Award as set forth in the Motion reflects these considerations and structure and incorporates the same metrics, provisions, and terms of payment as its previous iteration.  Subsequent to filing the Motion, the Debtors agreed to modify the SPC Supplemental Incentive Award to make payments on a semi-annual basis.

11.      The SPC Supplemental Incentive Award addresses the shortfall to competitive compensation levels created by the close of the previous SPC LTIP.  As described in paragraph

27 of my Original Declaration, overall compensation levels for the SPC members are positioned 17% below the competitive median assuming the approval of the SPC Supplemental Incentive Award.  If the SPC Supplemental Incentive Award is not approved, SPC member target total direct compensation opportunities would fall 53% below the competitive median and 46% below the competitive 25th percentile.

12.     Additionally, it is not unusual to see senior management incentive plans payout on less than an annual basis in restructuring cases.  Towers Watson reviewed thirty-six incentive programs for companies recently in Chapter 11.[5]  These companies are comparable as they represent organizations likely facing similar restructuring challenges and compensation plan design constraints as the Debtors. Of the thirty-six plans, seventeen provide for incentive payments to be made if goals are achieved less than twelve months from plan adoption and eleven of these seventeen plans provide for initial payments within less than six months of plan adoption (specifically, the incentive plans at Bruno's Supermarkets, CDX Gas, Circuit City Stores, Extended Stay Hotels, Fedders North America, Goody's, KB Toys, Lear, Neff, Reader's Digest, and Whitehall Jewelers Holdings provide initial payments within less than six months of plan adoption and Borders, Buffets Restaurants, Fleetwood Enterprises, Nortel Networks, Spansion and Visteon provide initial payments within twelve months of plan adoption). Furthermore, incentive plans at an additional nine of the thirty-six observed cases had provisions allowing payments within twelve months of plan adoption, as payments from these plans were tied to either a sale of assets or confirmation of a plan of reorganization (specifically, the incentive plans at Bordier's Nursery, Chesapeake, Eastman Kodak, Eddie Bauer, Eurofresh, Furniture Brands International, Linens Holding, Mark IV Industries and Sportsman's

---

[5]    Attached as **Exhibit A** is a list of the thirty-six companies, along with incentive program names, where available.

Warehouse). These plans are typically designed in this manner in consideration of the uncertainty associated with the timing of the restructuring process and the desire to focus on near term financial and operating objectives.

13.    As illustrated in the table below, compared to energy industry data, total incentive costs at target representing 0.77% of projected revenues fall well below the median of 1.08% of revenues and target incentive plan costs representing 1.17% of projected revenues fall only slightly above the median and well below the 75th percentile of 1.59% of revenues.    As mentioned in paragraph 7, annual incentive program designs in the energy industry typically include the opportunity to earn above-target payouts for superior performance.  This is similarly the case for long-term incentive plans. Specifically, Towers Watson evaluated the long-term performance plan designs among the Debtors' Peer Group[6] and all fifteen peer companies provide for above target-level payout opportunities in their performance plans.  Furthermore, specific data regarding the maximum or average costs for all incentive plans at an organization is not available in surveys or disclosed publicly, though equity incentives, which comprised a significant portion of long-term incentive compensation at all of the Debtors' peers, has an unlimited upside and is unbound by any plan caps.  Given these dynamics, and based on my experience and knowledge from having participated in the development and design of hundreds of management and employee incentive plans for companies inside and outside of bankruptcy, I would expect that the Debtors' maximum incentive plan cost as a percentage of revenue (1.38% of EFH's projected 2014 revenues of $11.23 billion and 2.10% of TCEH's projected 2014 revenues of $7.396 billion) is conservatively positioned relative to market practice.

---

[6]    Towers Watson reviewed the most recent proxy filings of the Debtors' peers.  In these filings, each peer company described the structure and design of their long-term incentive programs award to their Named Executive Officers (as is required to be disclosed by publically-traded organizations).

| Annual Incentive Plans | Estimated 2015 Cost (at Target) | Maximum 2015 Cost (at Superior) | 50th Percentile Cost of Incentive Plans as a Percentage of Company Revenues (at Target) | 75th Percentile Cost of Incentive Plans as a Percentage of Company Revenues (at Target) |
|---|---|---|---|---|
| Annual Incentive Plan | $56.1 million | $112.2 million | | |
| Executive Annual Incentive Plan | | | | |
|     Non-Insider | $4.3 million | $8.6 million | | |
|     Insider | $8.0 million | $16.0 million | | |
| Key Leader Plan | $6.3 million | $6.3 million | | |
| Key Leader Performance Program | $4.3 million | $4.3 million | Energy Industry 1.08% | Energy Industry 1.59% |
| SPC Supplemental Incentive Award | $7.6 million | $7.6 million | | |
| **Total** | $86.6 million | $155.0 million | | |
| **Total as a Percentage of EFH Projected Revenues (of approximately $11.23 billion)** | 0.77% | 1.38% | | |
| **Total as a Percentage of TCEH Projected Revenues (of approximately $7.396 billion)** | 1.17% | 2.10% | | |

14.    Accordingly, the Debtors' 2015 Compensation Programs are well within the range of competitive market practice and should be approved.


[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing statements are true and correct to the best of my knowledge, information, and belief.

Dated: December 16, 2014

Douglas J. Friske
Towers Watson Delaware Inc.

## Exhibit A

## Incentive Program Names (Where Available)

| Company | Plan Name |
|---|---|
| Borders Group | Key Employee Incentive Plan |
| Bordier's Nursery | Operations Retention Plan |
| Bruno's Supermarkets | Sale and Retention Plan |
| Buffets Restaurants Holdings | Key Employee Incentive Plan |
| CDX Gas | Non-Insider Employee Retention Plan |
| Chemtura | 2009 Management Incentive Plan |
| Chesapeake | Retention Plan |
| Circuit City Stores | Retention Plan |
| Eastman Kodak | Emergence Performance Plan |
| Eddie Bauer Holdings | Key Executive Incentive Plan |
| Eurofresh | Key Employee Retention Plan |
| Exide Technologies | Key Employee Incentive Plan |
| Extended Stay Hotels | HVM Incentive Program |
| Fedders North America | Residential/Corporate Retention Programs |
| Fleetwood Enterprises | Key Employee Incentive Plan |
| Furniture Brands International | Key Employee Incentive Plan |
| General Growth Properties | Key Employee Incentive Plan |
| Global Aviation | Key Employee Retention Plan |
| Goody's | Non-Insider Retention Plan |
| Great Atlantic & Pacific Tea | Key Employee Incentive Plan |
| KB Toys | Retention Plan |
| Lear | Key Management Incentive Plan |
| Linens Holding | Retention Program |
| Lyondell | Management Incentive Plan |
| Mark IV Industries | Key Employee Incentive Plan |
| Movie Gallery | Key Employee Incentive Plan |
| Neff | Valued Employee Program |
| Nortel Networks | Key Employee Retention Plan |
| Reader's Digest | Employee Talent Plan |
| Smurfit-Stone Container | Management Incentive Plan |
| Spansion | Key Executive Incentive Plan |
| Sportsman's Warehouse | Retention Plan |
| Tribune | 2010 Management Incentive Plan |
| Tronox | Key Employee Incentive Plan |
| Visteon | Non-Insider Retention Program |
| Whitehall Jewelers Holdings | Employee Retention Plan |