# Exhibit B

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) | Case No. 14-10979 (CSS) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |

## DECLARATION OF CARRIE KIRBY IN SUPPORT OF
## MOTION OF ENERGY FUTURE HOLDINGS CORP., *ET AL.*, FOR
## ENTRY OF AN ORDER APPROVING THE 2015 COMPENSATION PROGRAMS

I, Carrie Kirby, hereby declare under penalty of perjury:

1.      I am the Executive Vice President of Human Resources for Energy Future Holdings Corp. ("EFH Corp.").  I have been with EFH Corp. since 2006, and have served as Vice President of Human Resources for TXU Energy Retail Company, LLC, and before that as Human Resources Director.  I am familiar with EFH Corp.'s day-to-day operations, staffing, organizational development, employee activities, employee-related policies and standards, and related information from my review of records, relevant documents, and information supplied to me by EFH Corp.'s human resources and legal team.  I am over the age of 18 and duly authorized to execute this declaration (this "Declaration") on behalf of the Debtors in support of the *Motion of Energy Future Holdings Corp., et al., for Entry of an Order Approving the 2015 Compensation Programs* [Docket No. 2852] (the "Motion").[2]

---

[1]     The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810.  The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201.  Due to the large number of debtors in these chapter 11 cases, which are being jointly administered, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

[2]     Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

2.      The facts in this Declaration are based on my personal knowledge and review of information and my experience with the Debtors' operations and transactions relating to human resources.  If called to testify, I would testify to the facts set forth herein.

### Introduction

3.      The 2015 Compensation Programs represent a carry forward of the same compensation structure and programs from the Debtors' prepetition practices and as previously approved by the Court, but with the addition of the SPC Supplemental Incentive Award[3] as a successor to the 2014 SPC LTIP.  The Motion sets forth the specifics of the 2015 Compensation Programs in substantial detail.  I submit this Declaration to provide the Court and parties-in-interest additional information regarding the Debtors' 2015 Compensation Programs.

### Year-Over-Year Changes in Potential Costs of Compensation Programs

4.      The following table compares the potential costs at target of the 2015 Compensation Programs to the potential costs at target of the 2014 compensation programs that the Court has already approved:

|  | 2014 Potential Cost (at Target) | % Annual Total | 2015 Potential Cost (at Target) | % Annual Total | % Change (Year-Over-Year) |
|---|---|---|---|---|---|
| Non-Insider | $70.1 million | 78.5% | $72.6 million | 78.4% | 3.6% |
| Insider | $19.2 million | 21.5% | $20.0 million | 21.6% | 4.4% |
| Total Combined | $89.3 million | 100% | $92.6 million | 100% | 3.7% |

---

[3]    As used herein, the term "SPC Supplemental Incentive Award" refers to the Insider Program identified in the Motion as the "2015 SPC LTIP" or the "SPC LTIP."  As described in each of the Supplemental Friske Declaration and the Order Approving the 2015 Compensation Programs, this change in terminology was made to reflect that the program provided for in Exhibit III to the March 31, 2014 Amended and Restated Employment Agreements of John Young, Paul Keglevic, James Burke, Mac McFarland, and John O'Brien, and Exhibit IV to the March 31, 2014 Amended and Restated Employment Agreements of Stacey Dore and Carrie Kirby (collectively, the "SPC Employment Agreements") is a new plan that is the successor to the prior SPC LTIP and covers the 2015 calendar year.

5.      As shown above, the aggregate potential cost of the Debtors' 2014 compensation programs at target is $89.3 million and the aggregate potential cost of the Debtors' 2015 Compensation Programs at target is $92.6 million.  The $3.3 million increase in the potential cost at target of the Debtors' 2015 Compensation Programs represents a 3.7% increase over the potential cost at target of the 2014 compensation programs that the Court has already approved.  Furthermore, as detailed in the table above, the split of non-insider compensation at target versus insider compensation at target remained steady, year-over-year.

6.      Participants in the Debtors' incentive compensation programs are eligible to earn enhanced awards for top-tier performance if performance exceeds the baseline level for some portion or all of the scorecard metrics.  The following table compares the maximum potential costs of the Debtors' 2015 Compensation Programs to the maximum potential costs of the 2014 compensation programs that the Court has already approved:

| | 2014 | | 2015 | | % Change |
| | Potential Cost (at Superior) | % Annual Total | Potential Cost (at Superior) | % Annual Total | (Year-Over-Year) |
|---|---|---|---|---|---|
| Non-Insider | $130.4 million | 82.7% | $133.0 million | 82.7% | 2.0% |
| Insider | $27.2 million | 17.3% | $27.9 million | 17.3% | 2.6% |
| Total Combined | $157.6 million | 100% | $160.9 million | 100% | 2.1% |

7.      The maximum potential cost of the Debtors' 2014 compensation programs is $157.6 million, while the maximum potential cost of the Debtors' 2015 Compensation Programs is $160.9 million.  This $3.3 million increase represents a 2.1% increase in total potential maximum cost of the compensation programs, year-over-year.  To earn the maximum payouts under the 2015 Compensation Programs, the Debtors would need to reach the "superior" targets

KE 34306340

on all of the AIP/EAIP scorecard metrics—something the Debtors have never accomplished.  If overall performance on metrics falls between the "baseline" or "superior" levels, the resulting payout may fall somewhere between the "at Target" and "at Superior" amounts shown in the tables above.  It is important to note that performance exceeding the baseline level adds more value to the enterprise—a small portion of which is added to the AIP and EAIP payout for recognition of this level of performance.

## Compensation Programs Year-Over-Year

| Program | 2014 | | 2015 | | Payment Timing |
|---|---|---|---|---|---|
| | # of Participants | Potential Cost (at Target) | # of Participants | Potential Cost (at Target) | |
| Annual Incentive Plan[1] | | | | | |
|    Non-Insider | 5,425 | $56.1 million | 5,425 | $56.1 million | Annual |
| Executive Annual Incentive Plan[1] | | | | | |
|    Non-Insider | 46 | $4.3 million | 45 | $4.3 million | Annual |
|    Potential Insider[2] | 26 | $8.0 million | 25 | $8.0 million | Annual |
| Luminant Commercial Incentive Plan[3] | | | | | |
|    Non-Insider | 54 | $3.3 million | 54 | $4.1 million | Annual |
|    Potential Insider | 1 | $0.08 million | 1 | $0.1 million | Annual |
| Luminant Developer Incentive Plan | 25 | $0.017 million | 25 | $0.21 million | Annual |
| Individual Bonus Programs | 100 | $1.6 million | 192 | $1.6 million | Annual |
| Key Leader Plan | 147 | $4.8 million | 153 | $6.3 million | Quarterly |
| Key Leader Performance Plan | 19 | $3.36 million | 18 | $4.3 million | Quarterly |
| SPC LTIP[4] | 7 | $7.72 million | | | Quarterly |
| SPC Supplemental Incentive Award[4] | | | 7 | $7.6 million | Semi |
| **Total Potential Cost** | | **$89.3 million** | | **$92.6 million** | |

1. The potential costs of the 2014 and 2015 AIP and EAIP are subject to change.  The potential cost estimates for 2014 and 2015 are at target amount based on current headcount and salaries—except for the potential costs of the EAIP as it applies to the 25 potential insiders, which already includes the effect of contemplated base salary increases that have not yet received final approval by the Debtors.  Further increases in base salary for other employees may be made as part of the Debtors' annual review and merit process, which will be complete in March of 2015.
2. The number of potential insiders for 2014, as well as 2015, includes one non-VP who participates in the AIP.
3. Potential cost of the Luminant CIP is contingent on actual, incremental value generated by Luminant on commercial trading transactions.
4. The SPC LTIP ended in 2014 and was replaced with the SPC Supplemental Incentive Award as set forth in Exhibit III to the March 31, 2014 Amended and Restated Employment Agreements of John Young, Paul Keglevic, James Burke, Mac McFarland, and John O'Brien, and Exhibit IV to March 31, 2014 Amended and Restated Employment Agreements of Stacey Dore and Carrie Kirby.

4

8.      The table above details the number of participants and the potential costs at target of the Debtors' 2015 Compensation Programs as set forth in the Motion, as well as the number of participants and potential costs at target of the Debtors' 2014 compensation programs which were previously approved by the Court.  The following sections provide an overview of the year-over-year changes to the Debtors' compensation programs for the 2015 performance period.

**A.      AIP**

9.      The 2015 AIP is materially consistent with the Debtors' 2014 AIP.  The number of participants and potential costs at target of the 2015 AIP in the Motion, as well as the table above, are based on current headcount and salaries—and as a result are identical to the number of participants and potential costs at target for 2014, also based on current headcount and salaries.  The potential cost at target of the 2015 AIP is subject to change based on multiple factors, including changes to headcount.  There is typically a fluctuation in the number of eligible employees by year-end as a result of ordinary-course employee departures and new hires.  The potential cost at target of the 2015 AIP is also subject to change based on increases in the base salaries of AIP participants that may be made as part of the Debtors' annual review and merit process, which will be complete in March of 2015.  The budgeted amount of annual merit pay increases for 2015 is 3% of total payroll.  Furthermore, as discussed above, participants are eligible to earn enhanced awards for top-tier performance if performance exceeds the baseline level for some portion or all of the scorecard metrics—which could result in an aggregate AIP payout that exceeds the potential cost at target.

10.     The lone change reflected in the 2015 AIP as compared to the program that the Court approved for 2014 is an update to the definition of "retirement."  Specifically, the Debtors updated the AIP to provide for the payment of an employee's target bonus (as pro-rated to account for how much of the year the employee worked) if the employee is at least 65 years of

5

age and retires during the middle of a year.  An employee that otherwise departs from or is terminated by the Debtors is not eligible for this pro-rated payment.  In previous years, the employee had to be at least 55 years of age and employed by the Debtors for at least 15 years in order to receive a bonus payment, and the amount of the payment was calculated based on his or her target bonus multiplied by the Debtors' actual business unit performance (and then pro-rated to account for how much of the year the employee worked).  The modification to the definition of "retirement" has a negligible effect, if any, on cost of the AIP, as it primarily changes the timing for payments to the Debtors' retirees and makes eligibility for retirement more clearly articulated.

**B.    EAIP**

11.    The 2015 EAIP is identical in structure, process, metrics and plan design as compared to the 2014 AIP.  The 2015 EAIP is also materially consistent with the Debtors' 2014 EAIP.   The number of participants and potential costs at target of the 2014 EAIP in the Motion, as well as the table above, are based on current headcount.  Based on current headcount, the 2015 EAIP applies to 70 of the Debtors' employees—two fewer than in 2014, because one non-insider departed and one insider retired.  The potential costs at target of the 2014 EAIP in the Motion, as well as in the table above, are also based on current salaries—except for the potential costs of the EAIP as it applies to the 25 insiders, which already includes the effect of contemplated base salary increases that have not yet received final approval by the Debtors.  Specifically, the calculated amounts for the EAIP reflect a base-pay adjustment for one insider in the amount of $30,000 because of that individual's increased responsibilities for 2015.  Like the 2014 AIP, the potential cost at target of the 2015 EAIP is subject to change based on multiple factors including (i) the typical fluctuation in the number of eligible employees by year-end as a result of ordinary-course employee departures and new hires, and (ii) increases in base salary for other

KE 34306340

employees that may be made as part of the Debtors' annual review and merit process, as discussed with regard to the AIP.

12.    The same updated definition of "retirement" that applies to the 2015 AIP also constitutes the lone structural change reflected in the 2015 EAIP as compared to the program that the Court approved for 2014.  The change to the definition of "retirement" does not currently impact any member of the SPC.

### C.    Luminant DIP

13.    Although the Motion seeks approval for the Debtors to make payments under the Luminant DIP as they become due, there are currently no anticipated commercial projects that would result in a payment under the Luminant DIP in 2015.

### D.    Individual Bonus Payments

14.    The Individual Bonus Payments remain substantially similar to the non-insider program previously approved by the Court.  Consistent with the payments approved for 2014, the 2015 Individual Bonus Payments apply exclusively to non-insider employees.  The overall projected cost of the individual bonus payments was the same in 2014 as it is in 2015—$1.6 million—while the number of participants has increased from 100 in 2014 to 192 in 2015.  In reality, the actual cost of the 2014 Individual Bonus Payments will be lower than the original targeted amount for several reasons.  As an initial matter, the Debtor experienced some attrition from the pool of employees in the individual retention programs in 2014, resulting in some payments not being made.  In addition, $120,000 payable to 10 non-insider employees was inadvertently included and approved under the 2014 Non-Insider Motion, with actual payments not due until the first quarter of 2015.  These amounts will not be earned in 2014 and therefore should not have been included in the 2014 Non-Insider Motion.  In an abundance of caution and in the interests of transparency, the Debtors have included these amounts in the 2015

7

Compensation Programs as well. Therefore, the $120,000 payable to 10 non-insider employees will effectively move to 2015 and will not be paid in 2014—lowering the actual 2014 payments by the same amount of $120,000. There are several additional factors that contribute to the year-over-year change in the number of participants: <u>First</u>, certain of the Debtors' nuclear plant operators—98 individuals eligible to earn a total of $387,500 in Individual Bonus Payments—received their 2014 retention awards prior to the commencement of the Debtors' chapter 11 cases, and therefore were not included in the Debtors' 2014 Individual Bonus Payments. <u>Second</u>, the increase in participants includes 35 lower-level employees that the Debtors have deemed critical to the implementation of multiple new enterprise-wide IT infrastructure projects who are eligible to receive an aggregate total of $309,315 in Individual Bonus Payments. <u>Third</u>, there was one employee that participated in the individual retention plans in 2014 who was moved to the Key Leader Plan in 2015 with similar amounts due in both programs—specifically, the individual was eligible to earn $2,500 more under the individual retention plans in 2014 than the individual will be eligible to earn under the Key Leader Plan in 2015. <u>Fourth</u>, there were 48 individuals that received an aggregate total of $836,000 in Individual Bonus Payments in 2014 that are not scheduled to receive Individual Bonus Payments in 2015.

E.    **Key Leader Plan**

15.    The number of employees participating in the 2015 Key Leader Plan increased from 147 to 153 for the 2015 performance period, as the Debtors moved several more-senior non-insider employees into the Key Leader Plan.[4]  The potential cost of the 2015 Key Leader Plan also rose from approximately $4.8 million in 2014 to a target amount of approximately $6.3 million in 2015.  The total potential cost of the Key Leader Plan increased because the Debtors

---

[4]     A total of 13 individuals who participated in the 2014 Key Leader Plan are no longer with the Company.

KE 34306340

determined that certain mission-critical, high-performing non-insider employees and other employees who will assume substantially increased responsibilities—approximately 89 in total—warranted higher awards for 2015. Specifically, Debtors increased the Key Leader Plan awards for 70 individuals that participated in the 2014 Key Leader Plan by an average of $17,700, and added 19 new individuals to the 2015 Key Leader Plan who are eligible to receive an average of $24,300—an aggregate increase of $1.7 million.

### F. Key Leader Performance Program

16. The 2015 Key Leader Performance Program is similarly consistent with the 2014 version. Beyond the retirement of an insider, the only change is an upturn in the potential target cost of the program arising from several considerations: <u>First</u>, three insiders will receive an aggregate total of $215,000 in increased compensation for the 2015 performance period due to either increased responsibilities or job requirements, or the critical nature of their respective roles. <u>Second</u>, four of the Debtors' insider employees participated in the Owner/Operator Plan (the "<u>Impacted Employees</u>"), which was approved solely for non-insiders pursuant to the 2014 Non-Insider Order. In order to earn the full award available under the Owner/Operator Plan, participants were required to achieve management EBITDA targets and remain employed with the Debtors through the date of payment. The performance period for the Owner/Operator Plan ended in 2013, with the final payments earned under the Plan—including the amounts earned by the Impacted Employees—due to be paid in September 2014. As of January 1, 2014, the Debtors transitioned individuals that Debtors believed to be eligible, non-insider employees—including the Impacted Employees—to the retention based Key Leader Program. The Debtors entered bankruptcy during the nine month gap between the conclusion of performance period and the date of payment for the 2013 Owner/Operator Plan. After the Debtors entered bankruptcy it was determined that—contrary to Debtors understanding as of January 1, 2014—

9

the Impacted Employees may be insiders and therefore ineligible to receive the retention-based

Owner/Operator payments that they earned in 2013, but which were not due to be paid until

September 2014.  As a result, these employees received substantially reduced compensation in

the aggregate for 2014, because they became ineligible to receive the Owner/Operator payment

that was contemplated as part of their respective total compensation packages for 2014.

Accordingly, the Debtors increased the potential award opportunity under the 2015 Key Leader

Performance Program for the impacted employees by an aggregate amount of $680,000 to

provide them the opportunity to earn the potential payment of the forfeited Owner/Operator

amounts that they earned, but did not receive, in 2014.  The $215,000 in aggregate increased

award opportunity for the three insiders due to either increased responsibilities or job

requirements, or the critical nature of their respective roles, and the $680,000 in aggregate

increased award opportunity for the four Impacted Employees sum to a combined total of

$895,000—and thus account for the difference between the $3.36 million potential cost at target

of the 2014 Key Leader Performance Plan, and the $4.3 million potential cost at target of the

2015 Key Leader Performance Plan.

> ### G.    SPC Supplemental Incentive Award

17.    The SPC Supplemental Incentive Award was introduced as the successor to the

2014 SPC LTIP.  The SPC LTIP was a three-year program that will conclude at the end of 2014.

In early 2014, the Debtors implemented amended and restated employment agreements for the

members of the SPC to establish that the SPC Supplemental Incentive Award would make

payments on a quarterly basis as an interim long-term incentive compensation plan to bridge the

period between the Debtors' pre-bankruptcy long-term incentive program and the long-term

incentive program that the Debtors anticipate implementing upon emergence.  The Debtors made

the decision to move the payment schedule to quarterly to address the uncertainty of the potential

Chapter 11 process and incentivize the Debtors' key management personnel to focus on near term objectives.  This decision was made with the advice of the Debtors' advisors at Towers Watson and Kirkland & Ellis, and was in the best business judgment of the Debtors and the O&C Committee.  The SPC Supplemental Incentive Award as set forth in the Motion reflects these considerations and structure and incorporates the same metrics, provisions, and terms of payment as its previous iteration.

18.     Subsequent to filing the Motion, the Debtors engaged in discussions regarding the structure of the SPC Supplemental Incentive Award with the United States Trustee, as well as the Debtors' various creditor constituencies.  As a result of those discussions, the Debtors agreed to modify the 2015 SPC Supplemental Incentive Award—along with the related provisions of the employment agreements for the members of the SPC—to make payments on a semi-annual basis.  Although the Debtors maintain that the quarterly payment structure set forth in the Motion continues to represent the most effective structure for fulfilling the SPC Supplemental Incentive Award's aim of improving the Debtors' long-term stability and profitability by aligning management incentives with the Debtors' business objectives, while at the same time providing participants with competitive, market-based compensation, the Debtors have agreed to modify the SPC Supplemental Incentive Award and adopt the semi-annual structure in the spirit of compromise.  In the Debtors' best business judgment, the semi-annual SPC Supplemental Incentive Award payment structure represents a superior option to a structure involving annual payments, as it addresses the uncertainty of the on-going Chapter 11 process and incentivizes the Debtors' key management personnel to focus on near term objectives—albeit to a lesser extent than the quarterly payment structure contemplated in the Motion.

KE 34306340

**Potential Costs of 2015 Compensation Programs Are Subject to Change**

19.    As the Court is aware, the actual costs of the Debtors' 2015 Compensation Programs are subject to change based on a year's worth of performance, among numerous other factors.  For example, as set forth in the table below, in 2013—the most recent year for which the Debtors have finalized and administered payments related to the Debtors' compensation programs—the actual amounts paid at year-end varied from the projected costs at target of the Debtors' 2013 compensation programs.

| Program | 2013 | |
| --- | --- | --- |
| | Projected Cost (at Target) | Actual Cost |
| Annual Incentive Plan | $52.0 million | $70.7 million |
| Executive Annual Incentive Plan | $11.9 million | $18.4 million |
| Luminant Commercial Incentive Plan | | $3.4 million |
| Luminant Developer Incentive Plan | | $.017 million |
| SPC Long Term Incentive Plan | $7.1 million | $7.1 million |

20.    The AIP and EAIP are the only 2015 Compensation Programs that allow for payment _above_ target—the remainder of the 2015 Compensation Programs only allow for payment at or below target.  As a result, any payments above the projected cost at target for the 2015 Compensation Programs must be attributable to performance that exceeds the baseline level on the Debtors' 2015 AIP/EAIP scorecard.  This is consistent with the structure of the Debtors' 2014 compensation programs that the Court has already approved.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing statements are true and correct to the best of my knowledge, information, and belief.

Dated:  December 16, 2014

Carrie Kirby
Executive Vice President, Human Resources
Energy Future Holdings Corp.