**Exhibit E**

[Levin Declaration]

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>ENERGY FUTURE HOLDINGS CORP., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 14-10979 (CSS)<br><br>(Jointly Administered) |

**DECLARATION OF RICHARD LEVIN IN SUPPORT OF APPLICATION FOR ORDER APPROVING THE EMPLOYMENT OF CRAVATH, SWAINE & MOORE LLP AS COUNSEL TO ENERGY FUTURE INTERMEDIATE HOLDING COMPANY LLC UNDER SECTIONS 327(a) AND 1107(b) OF THE BANKRUPTCY CODE, EFFECTIVE *NUNC PRO TUNC* TO NOVEMBER 16, 2014**

I, Richard Levin, declare under penalty of perjury as follows:

1.      I am a partner in the firm of Cravath, Swaine & Moore LLP ("Cravath"), with an office located at Worldwide Plaza, 825 Eighth Avenue, New York, NY 10019, and have been duly admitted to practice law in the State of California, the State of New York, the Commonwealth of Massachusetts and the District of Columbia.

2.      I am authorized to submit this Declaration in support of the Application for Order Approving Employment of Cravath, Swaine & Moore LLP as Counsel to Energy Future Intermediate Holding Company LLC Under Sections 327(a) and 1107(b) of the Bankruptcy Code, Effective Nunc Pro Tunc to November 16, 2014 (the "Application").[2] Except as otherwise noted, I have personal knowledge of the matters set forth herein.

---

[1] The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, for which joint administration has been granted on an interim basis, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

[2] Capitalized terms not defined in this Declaration have the meaning ascribed to them in the Application.

**Qualifications**

3.      Cravath is a law firm headquartered in New York, New York. Cravath's attorneys have extensive experience and knowledge in, among other things, corporate matters, debtors' rights, business reorganizations, and restructurings under chapter 11 of the Bankruptcy Code and in representing and advising fiduciaries, including directors and officers and including in chapter 11 cases, in connection with, among other things, the exercise of their fiduciary duties. Cravath has become familiar with the Debtors' businesses, the progress of these chapter 11 cases and is well qualified and able to advise and represent EFIH in its chapter 11 case.

4.      Cravath has entered into an Engagement Agreement with EFIH, a copy of which is attached to this Declaration as Exhibit 1, to provide legal services to EFIH in accordance with the Resolutions adopted by EFIH's Board of Managers on November 7, 2014 and December 5, 2014, copies of which are attached to the Application as Exhibit D and Exhibit E. The Engagement Agreement describes the scope of services that Cravath agrees to provide and Cravath's compensation.

**Scope of Services to be Provided**

5.      The scope of Cravath's retention is limited to advising EFIH on Conflict Matters and determining whether a matter constitutes a Conflict Matter and will not duplicate the efforts of Kirkland & Ellis, LLP ("**Kirkland**") or Richards, Layton & Finger, P.A. ("**RLF**"), whose role in these cases as primary restructuring counsel to the Debtors will remain unchanged. Kirkland and RLF on the one hand, and Cravath and Stevens & Lee P.C. on the other, will work to minimize duplication of their work, with Kirkland and RLF being chiefly responsible for providing general bankruptcy and reorganization advice to the Debtors, and Cravath and Stevens & Lee advising EFIH on Conflict Matters and determination of whether a matter

constitutes a Conflict Matter, each consistent with their respective engagements. In addition, in its capacity as counsel to EFIH, Cravath will endeavor not to duplicate the efforts of any other professional retained by the Debtors in these chapter 11 cases, including its co-counsel Stevens & Lee.

**Compensation**

6.     The hourly rates charged by Cravath for the services of professionals and paraprofessionals it employs are:

|  | **2014** | **2015** |
|---|---|---|
| Partners | $845 to $1,150 | $880 to $1200 |
| Associates | $490 to $765 | $520 to $800 |
| Specialist and Senior Attorneys | $500 to $1,000 | $520 to $1035 |
| Discovery and Document Attorneys | $325 to $445 | $340 to $465 |
| Legal Assistants | $225 to $310 | $235 to $325 |

The charges for the attorneys who will render services to EFIH will be based upon actual time spent and upon the experience and expertise of the attorney or legal assistant involved. The hourly rates set forth above are subject to periodic adjustments (generally on January 1 of each year) to reflect economic and other conditions.[3]

7.     The hourly rates set forth above are consistent with the rates that Cravath charges other comparable clients for similar services, whether in or outside of chapter 11, regardless of the location of the client or the court in which a matter is pending. The hourly rates listed above are appropriate and not significantly different from (a) the rates that Cravath charges for other similar types of representations or (b) the rates that other counsel of similar

---

[3] For example, like many similar law firms, Cravath increases the hourly billing rate of attorneys and paraprofessionals yearly in the form of: (a) step increases historically awarded in the ordinary course on the basis of advancing seniority and promotion and (b) periodic increases within each attorney's and paraprofessional's current level of seniority. The step increases do not constitute "rate increases" (as the term is used in the Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases, effective November 1, 2013. As set forth in the Order, Cravath has agreed to provide ten business days' notice to the Debtors, the U.S. Trustee, and the Committees before implementing any periodic increases and has agreed file such notice with the Court.

expertise and experience would charge to do work similar to the work Cravath will perform in this chapter 11 case.

8.      Cravath does typically hire contract attorneys. If it uses any contract attorneys in this case, it will pass through to EFIH only the actual charge it pays for their service.

9.      It is Cravath's policy to charge its clients in all areas of practice for all other expenses incurred in connection with the client's case. The expenses charged to clients include, among other things, telephone conference call and international call charges, mail, express mail, and overnight delivery service charges, special or hand delivery charges, document retrieval charges, photocopying charges, charges for mass mailings (including envelopes and labels) provided by Cravath to outside copying services, travel expenses, expenses for "working meals," computerized research, transcription costs, and non-ordinary overhead expenses such as secretarial and other overtime. Cravath will charge EFIH for these expenses in a manner and at rates consistent with charges made generally to Cravath's other clients and within the guidelines set forth in Rule 2014-1 of the Local Rules and all amendments and supplemental standing orders of the Court. Cravath believes that it is more appropriate to charge these expenses to the clients incurring them than to increase the hourly rates and spread the expenses among all clients. Cravath does not charge clients for office supplies.

10.     Notwithstanding the foregoing and consistent with the Local Rules, Cravath will charge no more than $0.10 per page for photocopying. Cravath does not charge its clients for incoming facsimile transmissions or for office supplies and will not seek reimbursement for them in this case.

11.     Cravath will apply for compensation for professional services rendered and reimbursement of expenses incurred in connection with EFIH's chapter 11 case in compliance with sections 330 and 331 of the Bankruptcy Code and applicable provisions of the Bankruptcy

4

Rules, Local Bankruptcy Rules, the Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Professionals entered on September 16, 2014 [ECF 2066] and any other applicable procedures and orders of the Court, including the Stipulation and Order Appointing a Fee Committee [ECF 1896], and will cooperate with the fee committee appointed under that Stipulation and Order in the discharge of its duties. In connection with any employment or interim or final fee application Cravath files in this chapter 11 case, Cravath will make a reasonable effort to comply with the Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases Effective as of November 1, 2013.

12.     Cravath does not share fees with any attorneys except to the extent permitted by section 504.

**Disinterestedness; Absence of Conflicts of Interest and Grounds for Disqualification**

13.     In the ordinary course of business, Cravath requires its professionals, before accepting the representation of a new client or the representation of an existing client in a new matter, to perform a conflict check through the firm's database and to enter conflict information regarding new clients for new matters into that database. Thus, a review of the database should reveal any and all actual or potential conflicts of interest with respect to any given representation.

14.     At Cravath's request, Kirkland provided Cravath a list of potential parties in interest in EFIH's case, which includes EFIH's affiliates, significant creditors, equity interest holders, other known potential parties in interest in its chapter 11 case, employees of this Court and of the U.S. Trustee's Office for Region 3, and the Debtors' professionals that are known to be assisting the Debtors in these chapter 11 cases (collectively, the "Parties in Interest"). The list of Parties in Interest includes more than 1,000 entries. Cravath has conducted an investigation

5

(the "Conflicts Check") of its client records for purposes of compliance with Bankruptcy Rule 2014.

15.    Cravath has compared the Parties in Interest list with its list of current and former clients. The Parties in Interest who or whose affiliates are current or former clients are listed on Exhibit 2 to this Declaration. Cravath is not providing and will not provide any representation or advice to any of the entities listed on the Parties in Interest list, including any who are current clients, for any matter arising in or in connection with this chapter 11 case and has not provided any such services, except as described below.

a.    Cravath was engaged by the Strategic Transactions Committee of the Board of Directors of TXU Corp. (now Energy Future Holdings Corp.) in connection with the 2007 leveraged buy-out of TXU Corp. That Committee no longer exists, its members are no longer on the Board of Directors of any TXU Corp. affiliate, and Cravath's representation of the Committee has concluded.

b.    Commencing in 2013, in connection with the Debtors' internal investigation before their chapter 11 cases were filed, Cravath represented an investment bank that provided financial advisory services in connection the 2007 leveraged buy-out of TXU Corp. Cravath's representation involved preparing a banker for an informal interview about the leveraged buy-out and participating in the interview. That engagement has concluded; Cravath continues to represent the investment bank on unrelated matters; and the investment bank does not have any objection to our undertaking this engagement.

c.    Cravath has previously advised a holder of EFIH bonds with respect to the enforceability of the "make-whole" provision in the EFIH first and second

lien bonds. That engagement has concluded, and the client in that

engagement, who remains a client on unrelated matters, has consented to our

undertaking this engagement and has waived any conflict that might arise

from either representation.

    d.   Cravath regularly advises and represents Nextera Energy, Inc. ., a potential

bidder in the possible sale of an economic interest in Oncor Electric Delivery

Holdings LLC, on various matters, but not on any matters related to such sale

or in any other way related to these chapter 11 cases.

16.     Rule 2014 requires disclosure of connections with "the debtor, creditors [and]

any other party in interest." The Bankruptcy Code defines "creditor" as "entity that has a claim

against the debtor that arose at the time of or before the order for relief concerning the debtor"

or whose claim is deemed to arise prepetition. EFIH's affiliates' creditors (or parties in interest)

who are not themselves EFIH's creditors (or parties in interest) are not creditors (or parties in

interest) in EFIH's chapter 11 case; they are creditors of EFIH's creditors (or parties in interest).

Based on these provisions, Cravath did not conduct an investigation of the approximately

20,000 other creditors and parties in interest in the related chapter 11 cases who are not parties

in interest in EFIH's chapter 11 case.

17.     Cravath's practices encompass the representation of many investors, financial

institutions and other entities, some of which may be or may become creditors or parties in

interest, including potential acquirers of assets in EFIH's chapter 11 case. Furthermore, as part

of its practice, Cravath appears in cases, proceedings, and transactions involving numerous

attorneys, accountants, and financial advisors, both in adverse and non-adverse roles, some of

which may represent the Debtors, creditors, or parties in interest, or themselves be creditors or

parties in interest in these chapter 11 cases. It is not practicable for Cravath to list all such

representations, but I believe that none of them would prevent Cravath from being a disinterested person, would involve the holding or representation of an interest adverse to the estate, or would create a conflict of interest with respect to this employment. Cravath has not and will not represent any of these creditors, investors, potential acquirers, parties in interest, attorneys, financial advisors, accountants or any other entity in or in connection with these chapter 11 cases.

18.    Based on my review of the Parties in Interest List and the Conflict Check and on my own investigation, I believe that Cravath does not have any conflicts of interest that would prevent or restrict it in representing EFIH under nonbankruptcy conflict rules.

19.    A Cravath partner or I will also file appropriate supplemental disclosure(s) with the Court as necessary to the extent that additional information concerning any other Parties in Interest is developed.

20.    To the extent that issues arise that would cause EFIH to be adverse to any of Cravath's clients such that it would not be appropriate for Cravath to represent EFIH with respect to such matters, the Disinterested Manager will request that its co-counsel Stevens & Lee represent EFIH with respect to those matters.

21.    Based on the foregoing, I believe that Cravath is a "disinterested person", as defined in section 101(14) of the Bankruptcy Code, and does not hold or represent an interest adverse to the EFIH's estate, as required by section 328(a) of the Bankruptcy Code and that Cravath's partners, associates and special attorneys do not hold or represent any interest adverse to EFIH or its estate, except as otherwise specified in this Declaration. Accordingly, I submit that Cravath's is not disqualified for employment by EFIH under section 327(a) of the Bankruptcy Code to advise and represent EFIH as independent counsel.

22.     In addition, to the best of my knowledge, information and belief, neither I, Cravath, nor any partner, associate or special attorney of Cravath, is a relative of, or has been so connected to, any judge of the United States Bankruptcy Court for the District of Delaware, the United States Trustee for the District of Delaware, or any employee of the United States Trustee for the District of Delaware. Accordingly, I submit that Bankruptcy Rule 5002 would not prohibit employment of Cravath as independent counsel.

**Response to U.S. Trustee Fee Guideline Questions**

23.     The following answer the questions in Section D.1 of the Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases Effective as of November 1, 2013:

    a.  Cravath did not agree to any variations from, or alternatives to, its standard or customary billing arrangements for this engagement.

    b.  None of the professionals included in this engagement vary their rate based on the geographic location of the bankruptcy case.

    c.  Cravath has not previously represented EFIH.

    d.  EFIH has not approved Cravath's budget and staffing plan. Because it was employed so recently and under urgent circumstances, Cravath has not yet developed a budget or staffing plan. Cravath intends to do so in accordance with the Stipulation and Order Appointing a Fee Committee [ECF 1896] once its employment is approved.

I declare under penalty of perjury as provided in 28 U.S.C. § 1746 that the foregoing is true and correct according to the best of my knowledge, information and belief.

Dated: December __, 2014         /s/ *Richard Levin*
                                 Richard Levin

**Exhibit 1** (to Levin Declaration)

[Engagement Letter]

# CRAVATH, SWAINE & MOORE LLP

STUART W. GOLD
JOHN W. WHITE
EVAN R. CHESLER
MICHAEL L. SCHLER
RICHARD LEVIN
KRIS F. HEINZELMAN
B. ROBBINS KIESSLING
ROGER D. TURNER
PHILIP A. GELSTON
RORY O. MILLSON
FRANCIS P. BARRON
RICHARD W. CLARY
WILLIAM P. ROGERS, JR.
JAMES D. COOPER
STEPHEN L. GORDON
DANIEL L. MOSLEY
JAMES C. VARDELL, III
ROBERT H. BARON
KEVIN J. GREHAN
C. ALLEN PARKER
SUSAN WEBSTER
DAVID MERCADO
ROWAN D. WILSON
CHRISTINE A. VARNEY
PETER T. BARBUR

SANDRA C. GOLDSTEIN
THOMAS G. RAFFERTY
MICHAEL S. GOLDMAN
RICHARD HALL
JULIE A. NORTH
ANDREW W. NEEDHAM
STEPHEN L. BURNS
KEITH R. HUMMEL
DAVID J. KAPPOS
DANIEL SLIFKIN
ROBERT I. TOWNSEND, III
WILLIAM J. WHELAN, III
SCOTT A. BARSHAY
PHILIP J. BOECKMAN
ROGER G. BROOKS
WILLIAM V. FOGG
FAIZA J. SAEED
RICHARD J. STARK
THOMAS E. DUNN
MARK I. GREENE
DAVID R. MARRIOTT
MICHAEL A. PASKIN
ANDREW J. PITTS
MICHAEL T. REYNOLDS
ANTONY L. RYAN

WORLDWIDE PLAZA
825 EIGHTH AVENUE
NEW YORK, NY 10019-7475

TELEPHONE: +1-212-474-1000
FACSIMILE: +1-212-474-3700

———

CITYPOINT
ONE ROPEMAKER STREET
LONDON EC2Y 9HR
TELEPHONE: +44-20-7453-1000
FACSIMILE: +44-20-7860-1150

WRITER'S DIRECT DIAL NUMBER

+1 (212) 474-1978

GEORGE E. ZOBITZ
GEORGE A. STEPHANAKIS
DARIN P. McATEE
GARY A. BORNSTEIN
TIMOTHY G. CAMERON
KARIN A. DEMASI
LIZABETHANN R. EISEN
DAVID S. FINKELSTEIN
DAVID GREENWALD
RACHEL G. SKAISTIS
PAUL H. ZUMBRO
JOEL F. HEROLD
ERIC W. HILFERS
GEORGE F. SCHOEN
ERIK R. TAVZEL
CRAIG F. ARCELLA
TEENA-ANN V. SANKOORIKAL
ANDREW R. THOMPSON
DAMIEN R. ZOUBEK
LAUREN ANGELILLI
TATIANA LAPUSHCHIK
ERIC L. SCHIELE
ALYSSA K. CAPLES
JENNIFER S. CONWAY
MINH VAN NGO

KEVIN J. ORSINI
MATTHEW MORREALE
JOHN D. BURETTA
J. WESLEY EARNHARDT
YONATAN EVEN
BENJAMIN GRUENSTEIN
JOSEPH D. ZAVAGLIA
STEPHEN M. KESSING
LAUREN A. MOSKOWITZ
DAVID J. PERKINS
JOHNNY G. SKUMPIJA
J. LEONARD TETI, II
D. SCOTT BENNETT
TING S. CHEN
CHRISTOPHER K. FARGO
KENNETH C. HALCOM
DAVID M. STUART

SPECIAL COUNSEL
SAMUEL C. BUTLER
GEORGE J. GILLESPIE, III

OF COUNSEL
PAUL C. SAUNDERS

As of November 16, 2014

<u>Engagement Agreement—Energy Future Intermediate Holding
Company LLC Disinterested Director</u>

Ladies and Gentlemen:

This letter confirms the agreement of Energy Future Intermediate Holding Company LLC ("you" or "your") to engage Cravath, Swaine & Moore LLP ("we", "our" or "us") to represent and advise you, reporting to and under the sole direction of your disinterested manager, Charles H. Cremens.

Our engagement is limited to representing and advising you in connection with "Conflict Matters" as defined in resolutions of your Board of Managers adopted November 7, 2014 and supplemented by resolutions adopted December 9, 2014, a copy of which is attached hereto, and in advising your disinterested manager on whether a matter is a Conflict Matter.

The services we will provide in connection with this engagement will encompass all services normally and reasonably associated with this type of engagement that we are requested and are able to provide and that are consistent with our ethical obligations, including review of documents, providing legal analysis and advice, consultation regarding strategy, and appearance on your behalf in the Bankruptcy Court, its appellate courts and any other court as you may specifically request. Philip Gelston and I will coordinate all engagement matters on our behalf.

Attached to this letter is a description of the Firm's billing practices. We review and may change our hourly base rates each year, typically as of January 1. We will send you an invoice monthly for the hourly progress incurred. Subject to any applicable Bankruptcy Court order, invoices are due within 60 days after receipt (other than amounts being disputed in good faith).

Our employment and payment of our fees and expenses are subject to approval of the Bankruptcy Court. We will promptly apply to the Bankruptcy Court for

approval. Because we are not admitted to practice law in Delaware, we will need to associate Delaware counsel as a condition to appearing in the Bankruptcy Court.

Because of the nature of our practice, we may concurrently represent one client in a particular matter and the adversary of that client in an unrelated matter, or more than one client in a Restructuring Matter, whose interests are not adverse to each other. If a conflict of interest arises in the future between you and another of our clients, we will notify you of the conflict (unless providing such notification to you would violate our ethical duty to our other client, in which case we will notify you once providing notice no longer violates our ethical duty to our other client), and you agree to waive any such conflict of interest or other objection that would preclude our representation of the other client (a) in other current or future matters substantially unrelated to this engagement, as long as we have reasonably determined that our responsibilities to you and to the other client would not be adversely limited by the concurrent representations and that we can undertake each engagement without violating any applicable ethical rules or Bankruptcy Code provisions or (b) in another Restructuring Matter in which you may be a creditor or other party in interest of our other client. However, other than as described in clause (b) of the preceding sentence, we may not represent other entities or persons in litigation, arbitration, or other dispute resolution procedure directly adverse to you. As used in this paragraph, "Restructuring Matter" means matter: (a) arising in, arising under, or relating to, the Bankruptcy Code (or analogous state or foreign statute); (b) concerning a financing, refinancing, recapitalization, restructuring, or out-of-court workout of debt or equity; or (c) involving a company that might be in the vicinity of insolvency.

To further this agreement, you agree that you will not, for yourself or for any other party, assert that our representation of you in this engagement or in another engagement is a basis for disqualifying us from representing another party in any such other matter to the extent allowed by this agreement, and you agree that our representation of another party in any such other matter does not constitute a breach of duty to you. The agreement is subject to the Bankruptcy Code's requirements that we remain "disinterested" during our engagement and that we not hold, and not represent in connection with your chapter 11 case any client who holds, an interest adverse to the estate or to any class of creditors or equity security holders.

We have previously advised a holder of EFIH bonds with respect to the enforceability of the "make-whole" provision in the EFIH first and second lien bonds. That engagement has concluded, and the client in that engagement, who remains a client on unrelated matters, has consented to our undertaking this engagement and has waived any conflict that might arise from either representation. We have also previously represented, in connection with EFH's internal investigation before your chapter 11 case was filed, an investment bank who provided financial advisory services for the 2007 leveraged buy-out of Energy Future Holdings. That engagement has concluded; we continue to represent the bank on unrelated matters; and the bank does not have any objection to our undertaking this engagement. We were engaged by the Strategic Transactions Committee of the Board of Directors of TXU Corp. in connection with the 2007 leveraged buy-out. That Committee no longer exists, its members are no longer on

the Board of Directors of any TXU Corp. affiliate, and our representation has concluded. We will review the larger list of interested parties in your case for other client connections, which must be disclosed to the Bankruptcy Court in our employment application.

In accordance with our professional obligations, we will keep completely confidential all discussions, communications, ideas, strategies, and other information, whether written or oral, that we receive from you or the Disinterested Manager, not share any such information, directly or indirectly, in any manner with any other person and not use any such information for any other client's benefit without your or the other client's (as applicable) express and informed consent. You also agree not to assert that our possession of such information, even though it may relate to a matter for which we are representing another client or may be known to someone here working on the matter, (a) is a basis for disqualifying us from representing another of our clients in any matter in which you or any other party has an interest or (b) constitutes a breach of any duty we may owe to you, including any duty regarding information disclosure.

The provisions of this letter will continue in effect, including if you elect to end the engagement (which you are free to do at any time) or if we elect to end the engagement for good cause (which would be subject to ethical requirements and Bankruptcy Court approval). Good cause includes your breach of this agreement (including any material change in our engagement responsibilities without our consent or the failure to pay any amount when due under this agreement), your refusal or failure to cooperate with us, any fact or circumstance that would render our continuing representation unlawful or unethical, or, in our reasonable judgment, resignation of the engagement becomes necessary or appropriate.

At the conclusion of this matter, we will at your request return your file. If you do not request return of your file, we may destroy it after ten years from the conclusion of the matter. Our own files pertaining to the matter will be retained by the firm. These firm files include, for example, firm administrative records, time and expense reports, personnel and staffing materials, and credit and accounting records.

You agree to make appropriate officers or employees available to us to assist as necessary in factual inquiries and factual determinations, court hearings and appearances, transactions and dealings relating to the subject matter on which we have been engaged.

This letter agreement shall be governed by, and construed in accordance with, the laws of the State of New York except to the extent that the Bankruptcy Code supersedes New York law with respect to this engagement.

If you have any questions or wish to discuss this further, please do not hesitate to call me.

With best regards.

Sincerely,

Richard Levin

Energy Future Intermediate Holding Company LLC
   Energy Plaza
      1601 Bryan Street
         Dallas, TX 75201
            Attention: Charles H. Cremens, Disinterested Manager

Encl.

ELECTRONIC MAIL

AGREED AND ACCEPTED AS OF NOVEMBER 16, 2014

ENERGY FUTURE INTERMEDIATE HOLDING COMPANY LLC

By: _____
   Charles H. Cremens, Disinterested Manager

<u>Description of Cravath, Swaine & Moore LLP Billing Practices</u>
<u>Provided Pursuant to Part 1215 of the Joint Rules of the Appellate Divisions of the New York</u>
<u>Supreme Court</u>

In determining fees for legal services on corporate, banking and securities matters (including services focused on tax or employee benefit matters), as well as litigation matters, the Firm takes into account all relevant factors, including when applicable, the type of matter, the complexity and novelty of the work, whether or not the matter is successful, the overall value provided by the Firm to the success of the matter, the size of the transaction, the mix of partner to associate time required by the representation, the Firm's prior experience with the parties involved, fees charged by the Firm in comparable transactions and the hourly progress recorded on the matter. "Hourly progress" refers to the time recorded by lawyers and paralegals working on a matter based on hourly base rates used by the Firm for internal bookkeeping and resource allocation purposes.

As of January 1, 2014, the base rates for partners range from $845 to $1150, the base rates for associates range from $490 to $765, the base rates for special and senior attorneys range from $500 to $1000, the base rates for discovery specialist and document review attorneys range from $325 to $445, and the base rates for legal assistants range from $225 to $310.

As of January 1, 2015, the base rates for partners will range from $880 to $1200, the base rates for associates range from $510 to $800, the base rates for special and senior attorneys range from $520 to $1035, the base rates for discovery specialist and document review attorneys range from $340 to $465, and the base rates for legal assistants range from $235 to $325.

The base rates may change over time; the Firm will provide notice of updated ranges as required by the Bankruptcy Court. Disbursements and other charges incident to the legal services performed on a matter for which the Firm has been retained will be billed (in the case of other charges at our then prevailing rates) to the client by the Firm or in certain cases forwarded to the client for direct payment.

**ENERGY FUTURE INTERMEDIATE HOLDING COMPANY LLC ("EFIH")**
**BOARD OF MANAGERS RESOLUTIONS**
**NOVEMBER 7, 2014**

WHEREAS, Energy Future Holdings Corp. ("EFH Corp.") and certain of its direct and indirect subsidiaries (excluding Oncor Electric Delivery Holdings Company LLC and its subsidiaries) (the "Debtors") on April 29, 2014, filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Chapter 11 Case") in the Bankruptcy Court for the District of Delaware (the "Bankruptcy Court");

WHEREAS, the members of the Board have acknowledged that the material facts relating to the relationships or interests of other members of the Board with other affiliated or related companies and other material relationships have been disclosed to them or are otherwise known to them, as contemplated by Section 144 of the Delaware General Corporation Law (the "DGCL") or EFIH's governing documents, to the extent applicable;

WHEREAS, as described in the material presented and reviewed by the Board and based on the known facts and circumstances, Charles H. Cremens as the member of the Board who is disinterested (within the meaning of Section 144 of the DGCL or EFIH's governing documents, to the extent applicable) (the "Disinterested Manager");

WHEREAS, the members of the Board of Managers of EFIH (the "Board") have considered the *Stipulation and Agreed Order Regarding a Protocol for Certain Case Matters*, approved by the Bankruptcy Court on September 16, 2014, concerning, among other things, the ability of the Disinterested Manager to retain independent counsel and other advisors for EFIH under certain circumstances; and

WHEREAS, the members of the Board desire to delegate certain authority to the Disinterested Manager.

NOW, THEREFORE, BE IT,

RESOLVED that the Board hereby determines that Charles H. Cremens as a member of the Board is currently disinterested (within the meaning of Section 144 of the DGCL or EFIH's governing documents, to the extent applicable) with respect to the Conflict Matters (as defined below); and further

RESOLVED that the Board hereby delegates authority to the Disinterested Manager to engage independent legal counsel and such other advisors as he deems necessary to represent and advise EFIH, reporting to the Disinterested Manager, on matters pertaining to the Chapter 11 Case on which a conflict exists between EFIH and any other Debtor (the "Conflict Matters"); and further

RESOLVED that the Board hereby requests that the Disinterested Manager review Conflict Matters identified by the Disinterested Manager (and his advisors) and make such recommendations to the Board as the Disinterested Manager deems appropriate, in the exercise of his business judgment and with the advice of independent legal counsel and other applicable advisors; and further

RESOLVED, that any officers of EFIH (collectively, the "Authorized Officers"), acting alone or with one or more other Authorized Officers be, and they hereby are, authorized, empowered and directed to take any and all action that they deem necessary or proper to assist the Disinterested Manager in carrying out the foregoing.

1

## ENERGY FUTURE INTERMEDIATE HOLDING COMPANY LLC ("EFIH")
### BOARD OF MANAGERS RESOLUTIONS
### DECEMBER 9, 2014

The following recitals and resolutions supplement the Board of Managers Resolutions dated as of November 7, 2014 ("November 7th Resolutions") and, in the event of any inconsistency, these resolutions shall supersede and control.

WHEREAS, Energy Future Holdings Corp. ("EFH Corp.") and certain of its direct and indirect subsidiaries (excluding Oncor Electric Delivery Holdings Company LLC and its subsidiaries), including EFIH (the "Debtors") on April 29, 2014, filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code ("Chapter 11 Case") in the Bankruptcy Court for the District of Delaware ("Bankruptcy Court");

WHEREAS, the members of the Board of Managers of EFIH ("Board") having relationships or interests with other affiliated or related companies and their direct or indirect equity holders and other material relationships have disclosed certain facts that they believe to be material to the Board;

WHEREAS, as described in the material presented and reviewed by the Board and based on a review of the known facts and circumstances, the Board has determined and confirmed by the November 7th Resolutions that Charles Cremens is the only current member of the Board that is disinterested with respect to any matter pertaining to the Chapter 11 Case on which an actual conflict exists between EFIH, on the one hand, and any other Debtor, on the other hand ("Conflict Matters"), and was designated the Disinterested Manager ("Disinterested Manager") as set forth in *Stipulation and Agreed Order Regarding a Protocol for Certain Case Matters*, approved by the Bankruptcy Court on September 16, 2014 ("Stipulation");

WHEREAS, the members of the Board considered the Stipulation related to, among other things, the authority of the Disinterested Manager to retain independent legal counsel and other advisors under certain circumstances;

WHEREAS, the Board resolved by the November 7th Resolutions to delegate the authority to the Disinterested Manager to seek and retain, at EFIH's sole expense, independent legal counsel and such other advisors ("Independent Advisors") as the Disinterested Manager deems necessary to represent and advise EFIH, reporting to the Disinterested Manager, on the Conflict Matters;

WHEREAS, the Disinterested Manager interviewed and engaged certain Independent Advisors effective as of November 16, 2014 to represent and advise EFIH, and reporting solely to the Disinterested Manager, as set forth herein; and

WHEREAS, pursuant to the Stipulation and Section 2.1(h) of the Second Amended and Restated Limited Liability Company Agreement of EFIH, the members of the Board desire to delegate to the Disinterested Manager certain rights, authority, and powers in connection with Conflict Matters, among other matters set forth herein;

NOW, THEREFORE, BE IT,

RESOLVED that, to the fullest extent permitted by applicable law, the Board hereby delegates to the Disinterested Manager the authority to review and act upon (as set forth herein) any Conflict Matters; and further

RESOLVED that, to the fullest extent permitted by applicable law, the Board hereby delegates to the Disinterested Manager the authority to investigate and determine whether any matter constitutes a Conflict Matter, in the exercise of his business judgment and with the advice of the Independent Advisors, and any such determination shall be binding on EFIH and EFIH's subsidiaries (other than Oncor Electric Delivery Holdings Company LLC and its direct and indirect subsidiaries (the "Excluded Subsidiaries")); and further

RESOLVED that, to the fullest extent permitted by applicable law, the Board hereby delegates to the Disinterested Manager the authority to make all decisions, and to implement or direct the implementation of all such decisions, in each case on EFIH's behalf, with respect to Conflict Matters as the Disinterested Manager deems appropriate, in the exercise of his business judgment and with the advice of the Independent Advisors or others with whom the Disinterested Manager determines it is appropriate or necessary to consult, and to act on behalf of and bind EFIH in connection therewith, including taking action on EFIH's behalf, as the direct and indirect holder of the equity interests in its subsidiaries, causing its subsidiaries (other than the Excluded Subsidiaries) to abide by and implement the decisions and actions of the Disinterested Manager with respect to Conflict Matters and the Disinterested Manager's determination of whether a matter constitutes a Conflict Matter; and further

RESOLVED that the Disinterested Manager will update the Board at board meetings on the status of his or her (i) review of and decisions on whether any matter constitutes a Conflict Matter, and (ii) review of and decisions on Conflict Matters, in each case in the manner that the Disinterested Manager determines is appropriate and necessary to fulfill his or her duties and obligations as the Disinterested Manager, taking into account the confidentiality or privilege of the Disinterested Manager's work and the advice of the Independent Advisors; and further

RESOLVED that EFIH shall, as the direct and indirect holder of the equity interests in its subsidiaries direct and cause each of its subsidiaries (other than the Excluded Subsidiaries) to abide by and comply with these resolutions; and further

RESOLVED that the officers, employees, advisors and agents of EFIH (collectively, the "Authorized Persons"), acting alone or with one or more other Authorized Persons, be, and hereby are, directed to furnish to the Disinterested Manager and the Independent Advisors all information as the Disinterested Manager or the Independent Advisors may request, in a manner that shall not effect a waiver of any applicable privilege, and to cooperate with the Disinterested Manager and the Independent Advisors in all respects; and further

RESOLVED that any Authorized Person, acting alone or with one or more other Authorized Persons be, and hereby are, authorized, empowered and directed to implement any decision made by the Disinterested Manager in respect of a Conflict Matter on behalf of EFIH as directed by the Disinterested Manager; provided that the Disinterested Manager retains the right to implement any such decision on behalf of EFIH and its subsidiaries (other than the Excluded Subsidiaries)  himself or through the Independent Advisors; and further

RESOLVED that any Authorized Person, acting alone or with one or more other Authorized Persons be, and they hereby are, authorized, empowered and directed to take any and all action that they deem necessary or proper to assist the Disinterested Manager in carrying out the foregoing, in each case as requested by and under the direction of the Disinterested Manager; and further

RESOLVED that the Disinterested Manager shall control any attorney-client, work product, or other privilege belonging to EFIH in connection with the Independent Advisors or their work or privileged

communications on the Conflict Matters and on whether any matter constitutes a Conflict Matter; and further

RESOLVED that each member of the Board has agreed and hereby agrees that he or she shall not have access to, and shall not seek access to, and hereby directs that each Authorized Person shall not have access to and shall not seek access to, the work or privileged material of the Independent Advisors on the Conflict Matters or on whether any matter constitutes a Conflict Matter, except as permitted by the Disinterested Manager; and further

RESOLVED that the Disinterested Manager be, and hereby is, authorized to take all such further action, at EFIH's expense, as the Disinterested Manager shall deem necessary, proper or advisable consistent with these resolutions or in order to carry out fully the intent and purposes of these resolutions; and further

RESOLVED that all actions previously done or approved, or caused to be done or approved, by the Disinterested Manager or the Authorized Persons, including the retention of Independent Advisors, in each case only to the extent consistent with these resolutions, or to otherwise carry out the intent of these resolutions, be and hereby are approved, adopted, confirmed and ratified in all respects.

**Exhibit 2** (to Levin Declaration)

[List of Parties in Interest Who Are, or Whose Affiliates Are, Current and Former Cravath Clients]