**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re | ) Chapter 11 |
| | ) |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) Case No. 14-10979 (CSS) |
| | ) |
| | ) (Jointly Administered) |
| *Debtors.* | ) |
| | ) |
| | ) |
| | ) |
| ENERGY FUTURE INTERMEDIATE HOLDING COMPANY LLC and EFIH FINANCE INC., | ) |
| | ) |
| | ) |
| | ) |
| *Plaintiffs,* | ) Adversary Proceeding |
| | ) No. _____ |
| v. | ) |
| | ) |
| UMB BANK, N.A., as INDENTURE TRUSTEE, | ) |
| | ) |
| | ) |
| *Defendant.* | ) |
| | ) |
| | ) |

**ADVERSARY COMPLAINT FOR DECLARATORY JUDGMENT**
**OF ENERGY FUTURE INTERMEDIATE HOLDING**
**COMPANY LLC AND EFIH FINANCE INC.**

Plaintiffs Energy Future Intermediate Holding Company LLC and EFIH Finance Inc. (together, "EFIH," "EFIH Debtors," or "Plaintiffs"), hereby bring this Complaint against UMB Bank, N.A., as indenture trustee (the "Trustee" or "Defendant") for the unsecured 11.25%/12.25% Senior Toggle Notes Due 2018 ("PIK Notes").

---

[1] The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, for which joint administration has been granted, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

## PRELIMINARY STATEMENT

1.      The Debtors continue to work toward the goal of building consensus and filing a plan of reorganization that has the support of as many creditors as possible.  To advance this process, the Debtors seek to resolve a number of discrete legal disputes that determine the value of claims.  Here, the EFIH Debtors seek to resolve the claim from the Trustee that the PIK Noteholders are entitled to a "makewhole" premium, and any other related claims, due to the EFIH Debtors' bankruptcy petition or the EFIH Debtors' planned repayment of the PIK Notes.  A prompt and efficient resolution of this adversary proceeding is important to move the Debtors' reorganization forward and will provide all parties with clarity beneficial to ongoing plan negotiations.

2.      The Trustee is expected to seek the payment of a premium when the Debtors repay the PIK Notes.  The Indenture (as defined below) governing the PIK Notes provides for a "makewhole premium," defined in the Indenture as an Applicable Premium, but only if the PIK Notes are optionally redeemed before December 1, 2014. The Indenture also provides for an Optional Redemption Price (as defined below) should the PIK Notes be optionally redeemed on or after December 1, 2014.  Neither payment would be owed upon repayment because, among other reasons, the Indenture provides for these payments only in the event of an optional redemption and not, as contemplated here, where the PIK Notes would be repaid after they were automatically accelerated by the EFIH Debtors' filing for bankruptcy.

3.      When the EFIH Debtors make distributions for claims related to the PIK Notes under the plan, they will pay what they owe under applicable state and bankruptcy law.  But under no circumstances will the EFIH Debtors pay the Applicable Premium or Optional Redemption Price unless the Court rules that such additional payment is owed.

2

4.      There is therefore a ripe dispute about the value of the PIK Noteholders' claims based on the discrete legal question of whether the PIK Noteholders are entitled to the Applicable Premium or Optional Redemption Price in connection with the repayment of the PIK Notes following a bankruptcy acceleration.

5.      Accordingly, the EFIH Debtors now seek a declaration that neither their commencement of the above-captioned bankruptcy nor the repayment of the PIK Notes pursuant to a plan of reorganization triggers an obligation under the terms of either the Indenture or the PIK Notes to pay the Applicable Premium or Optional Redemption Price to the PIK Noteholders.

6.      The EFIH Debtors also seek a declaration regarding claims potentially related to Defendant's repayment of the PIK Notes.  Specifically, the Debtors seek a declaration that the Debtors are not liable for breach of contract, or "no call," damages resulting from the automatic acceleration of or eventual repayment of the PIK Notes before a certain date.  The Indenture does not contain any provision that prohibits repayment of the PIK Notes before their scheduled 2018 maturity.  In fact, the Indenture specifically states that any redemption of the PIK Notes must be made pursuant to the provisions of the Indenture, and according to those provisions, no Applicable Premium or Optional Redemption Price will be owed when the EFIH Debtors repay these notes.  If any additional fee is owed, which it is not, that fee is provided in the Indenture.

7.      Additionally, the EFIH Debtors seek a declaration that they did not intentionally file for bankruptcy to avoid paying the Applicable Premium or Optional Redemption Price.  Such a claim would be unusual because the substantial majority of PIK Noteholders were party to a restructuring support agreement with the Debtors that

3

was subject to termination if the Debtors did not file for bankruptcy on or before April 29, 2014, the Petition Date.  Further, the EFIH Debtors did not intentionally default to avoid paying the Applicable Premium or Optional Redemption Price.  The EFIH Debtors filed for chapter 11 protection for a number of reasons, including that EFIH had projected that it would exhaust its liquidity in the second quarter of 2014.

8.    Finally, the EFIH Debtors seek a declaration that the PIK Noteholders are not entitled to receive post-petition interest on the outstanding principal at the rate specified in the Indenture.  Although the Indenture specifically provides for interest to accrue at the Indenture's stated rate, even after bankruptcy has been filed, the Bankruptcy Code and other applicable law prohibit the payment of this interest.  Specifically, if the EFIH Debtors are found to be insolvent, section 502 of the Bankruptcy Code prohibits the payment of *any* post-petition interest on this unsecured claim.  And, even if the EFIH Debtors are solvent, any post-petition interest for this unsecured claim accrues at the rate specified for federal judgments in 28 U.S.C. § 1961, not at the rate specified in the Indenture.

## **PARTIES**

9.    Plaintiff Energy Future Intermediate Holding Company LLC is a limited liability company organized under the laws of the State of Delaware and EFIH Finance Inc. is a corporation also organized under the laws of the State of Delaware.  On April 29, 2014 (the "Petition Date"), the Debtors, including Plaintiffs, filed voluntary petitions in the United States Bankruptcy Court for the District of Delaware for protection under chapter 11 of the Bankruptcy Code.

10.    Defendant UMB Bank, N.A., serves as the trustee pursuant to that certain Indenture, dated as of December 5, 2012, as amended and supplemented by the First

4

Supplemental Indenture, dated as of December 19, 2012, the Second Supplemental Indenture, dated as of January 29, 2013, and the Third Supplemental Indenture, dated as of January 30, 2013, (collectively the "Indenture") by and among Energy Future Intermediate Holding Company LLC and EFIH Finance Inc., as issuers, and the Bank of New York Mellon Trust Company, N.A., the predecessor indenture trustee, pursuant to which EFIH issued the 11.25%/12.25% unsecured senior toggle notes due December 1, 2018.

**JURISDICTION AND VENUE**

11.    Jurisdiction exists over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334 because the adversary proceeding (i) arises in the chapter 11 cases of EFIH LLC and EFIH Finance pending in the United States Bankruptcy Court for the District of Delaware, jointly administered under the case of In re Energy Future Holdings Corp., Case No. 14-10979 (CSS), (ii) relates to the EFIH LLC and EFIH Finance chapter 11 cases, and/or (iii) arises under the Bankruptcy Code, because the Debtors seek declarations concerning its legal obligations under the Indenture.

12.    The EFIH Debtors seek relief under 28 U.S.C. § 2201 and section 105(a) of the Bankruptcy Code, as the parties to this action have adverse legal interests and are in dispute over a substantial controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

13.    The counts are core matters, and the Debtors consent to the Bankruptcy Court's entry of final orders with regard to the claims and counterclaims in this action.

14.    Venue of this adversary proceeding in this district is proper pursuant to 28 U.S.C. § 1409 because (a) the above-captioned chapter 11 case to which this case is

related is pending in this District before this Court and (b) none of the exceptions set forth in 28 U.S.C. § 1409 apply to this action.

**FACTUAL ALLEGATIONS**

A. **The Governing Indenture**

15.    On December 5, 2012, EFIH and the Trustee entered into an indenture, pursuant to which EFIH issued $1,144,770,000 aggregate principal amount of PIK Notes. EFIH subsequently issued an additional $159,032,000 aggregate principal amount of PIK Notes under a First Supplemental Indenture dated as of December 19, 2012, an additional $63,930,000 aggregate principal amount of PIK Notes under a Second Supplemental Indenture dated as of January 29, 2013, and an additional $24,713,000 aggregate principal amount of PIK Notes under a Third Supplemental Indenture dated as of on January 30, 2013.  Collectively, such indenture and supplemental indentures comprise the "Indenture," which is attached hereto as **Exhibits A through C**.

16.    The terms of the PIK Notes permit interest on the PIK Notes due before June 1, 2016, to be paid (i) in cash with a 11.25% interest rate, (ii) "in kind" with additional PIK Notes issued at a higher 12.25% interest rate, or (iii) half in cash and half in additional notes.  *See* Indenture § 4.01; PIK Notes §§ 1, 2.  After June 1, 2016, interest must be paid only in cash.  *See* PIK Notes § 2.  Until the April 29, 2014 petition date, EFIH elected to pay the interest owed on the PIK Notes entirely "in kind" at the 12.25% rate.

17.    The Indenture and the PIK Notes are governed by, and construed in accordance with, the laws of the State of New York, without regard to principles of conflicts of law.  *See* Indenture § 12.08; Notes § 15.

6

18.    The PIK Notes provide for the payment of an "Applicable Premium" had EFIH voluntarily elected to optionally redeem the PIK Notes before December 1, 2014. Section 3.07 of the PIK Notes titled "Optional Redemption" states at 3.07(a):

> [P]rior to December 1, 2014, the Issuer may redeem, in whole or in part, the Notes at a redemption price equal to 100% of the principal amount of the Notes redeemed <u>plus</u> the Applicable Premium as of, and accrued and unpaid interest (including Additional Interest, if any) to, the date of the redemption (the "<u>Redemption Date</u>"), subject to the right of Holders of Notes of record on the relevant Record Date to receive interest due on the relevant Interest Payment Date.

19.    Section 1.1, the Indenture defines "Applicable Premium" as follows:

> "<u>Applicable Premium</u>" means, with respect to any Note on any Redemption Date, the greater of:
>
> (1) 1.0% of the principal amount of such Note; and
>
> (2) the excess, if any, of (a) the present value at such Redemption Date of (i) the redemption price of such Note at December 1, 2014 (such redemption price as set forth in the table appearing under Section 3.07(d) hereof), plus (ii) all required interest payments (calculated based on the Cash Interest rate payable on the Notes) due on such Note through December 1, 2014 (excluding accrued and unpaid interest, if any, to the Redemption Date), computed using a discount rate equal to the Treasury Rate as of such Redemption Date plus 50 basis points; over (b) the principal amount of such Note.

20.    December 1, 2014, has passed, and the PIK Notes have not yet been repaid.

21.    The PIK Notes provide that after December 1, 2014, EFIH may voluntarily "redeem" the notes at certain "redemption prices" ("<u>Optional Redemption Price</u>").  *See* Indenture § 3.07(d).  For example, if the PIK Notes are "redeem[ed]" at any time between December 1, 2014, and December 1, 2016, EFIH must pay a "redemption price" of an additional 5.6250% on the outstanding principal of the PIK Notes.  *Id.*

22.     Section 6.01(a) of the Indenture defines "Event of Default" and includes at subsections (6) and (7) certain definitions of an Event of Default that relate to insolvency and bankruptcy, including the filing of a bankruptcy petition, as the Debtors have done here.  *See* Indenture § 6.01(a)(6)(i) ("commences proceedings to be adjudicated bankrupt or insolvent").

23.     Section 6.02 defines "Acceleration" and specifies:

> [I]n the case of an Event of Default arising under clause (6) or (7) of Section 6.01(a) hereof, all principal of and premium, if any, interest (including Additional Interest, if any) and any other monetary obligations on the outstanding Notes shall be due and payable immediately without further action or notice.

24.     Nothing in section 3.07(d), which sets forth the Optional Redemption Price, refers to this additional amount owed as a "premium."  And nothing in section 3.07(d), or any other provision of the Indenture, modifies the Acceleration provision of section 6.02 to provide that the Optional Redemption Price is due after the PIK Notes automatically accelerated upon the EFIH's filing for chapter 11 protection.

**B.     The Indenture Does Not Give Rise To The Payment Of the Applicable Premium Or Optional Redemption Price Under The Applicable Circumstances.**

25.     Under section 502 of the Bankruptcy Code and governing case law, the Trustee's claim to the Applicable Premium or Optional Redemption Price is allowable only if the parties' agreement explicitly provides for the payment of the fee.  Under the plain and unambiguous language of the governing Indenture, EFIH owes no Applicable Premium or Optional Redemption Price to the PIK Noteholders.

26.     EFIH owes no Applicable Premium for the plain reason that it is owed only if the PIK Notes are optionally redeemed before December 1, 2014.  *See* Indenture § 3.07(a).  December 1, 2014, has passed and the PIK Notes have neither been

"optional[ly] redeemed" nor repaid in any way.  Accordingly, under no circumstances can the Applicable Premium be owed.

27.    Further, neither the Applicable Premium nor the Optional Redemption Price is owed because the PIK Notes have not been and will not be optionally redeemed. The Indenture provides that an "Event of Default" occurs if EFIH "commenc[es] proceedings to be adjudicated bankrupt or insolvent."  Indenture § 6.01(a)(6)(i).  The EFIH Debtors filed for chapter 11 protection on April 29, 2014, unquestionably triggering an Event of Default.  Under the plain language of the Indenture, this bankruptcy-induced Event of Default automatically accelerated the PIK Notes' maturity date to the Petition Date.  As section 6.02 of the Indenture provides, "in the case of an Event of Default arising" out of EFIH's bankruptcy filing, "all principal of and premium, if any, interest (including Additional Interest, if any) and any other monetary obligations on the outstanding Notes *shall be due and payable immediately without further action or notice*."[2]

28.    EFIH's intended repayment of the PIK Notes as part of a plan of reorganization is governed by this Acceleration provision, and therefore cannot be an optional redemption under Section 3.07.  In fact, repayment is not optional at all.  On its face, the Indenture distinguishes between an "Optional Redemption" under Section 3.07, which "*may*" be paid at the option of EFIH, and the bankruptcy-induced acceleration triggered by Section 6.02, whose language—"*shall*"—commands that the PIK Notes must be repaid without any option.

---

[2] All emphasis added unless otherwise noted.

29.     While the Acceleration provision in Section 6.02 does provide that a "premium, if any," is owed should EFIH file for bankruptcy, that language neither references the defined term Applicable Premium nor the Optional Redemption Price, as it must for such fees to be owed.   The parties could have expressly referenced the Applicable Premium or Optional Redemption Price as being payable in the event of an automatic acceleration, but they chose not to do so.

30.     Instead, the parties negotiated and included a detailed formula for calculating a possible "Applicable Premium," Indenture § 1.01, and a specific schedule for the payment of an Optional Redemption Price, Indenture § 3.07(d).   And, by the express terms of those provisions, the Applicable Premium or the Optional Redemption Price is owed only upon an optional redemption voluntarily made by the EFIH Debtors, which did not and will not occur here.

31.     Indeed, nothing in the Indenture suggests that either the Applicable Premium or the Optional Redemption Price is owed in any circumstance outside of an optional redemption voluntarily made by EFIH under Section 3.07.   Moreover, if "premium, if any" were intended to include Applicable Premium or Optional Redemption Price, the drafters would not have appended the words "if any," which provides no guidance on if, when, or how much, if at all, a premium might be owed upon a bankruptcy-induced acceleration.   In fact, the "if any" qualifier expressly contemplates that *no* premium might be owed, as is true here.   To equate the words "premium, if any" with "the redemption prices" would contravene basic principles of contract interpretation and the exacting standard noteholders must meet to receive payments of makewhole premiums in bankruptcy.

10

32.     In fact, for the EFIH Debtors to optionally redeem the debt, they must provide the PIK Noteholders with "at least 30 days but not more than 60 days" notice. Indenture § 3.03.   This stands in contrast to the automatic acceleration the parties specifically negotiated, which contemplates no notice at all:   upon EFIH's bankruptcy filing, "the outstanding Notes shall be due and payable immediately without further action or notice."   Indenture § 6.02.

33.     In short, repayment of automatically-accelerated debt under the Indenture is neither optional nor voluntary and therefore does not implicate Section 3.07 of the Indenture and does *not* trigger an Applicable Premium or the Optional Redemption Price.

**C.      The Indenture Also Does Not Give Rise To "No Call" Damages.**

34.     When the Indenture provides that the PIK Notes *may* be redeemed, the Indenture spells out the specific fees to be paid upon redemption.   Specifically, the PIK Notes may be optionally and voluntarily redeemed before December 1, 2014, by paying all of the outstanding principle, accrued interest, and the Applicable Premium.   Indenture § 3.07(a).   Under an equity redemption provision, the PIK Notes may also be optionally redeemed in part before December 1, 2014, through a specific formula providing for the payment of a premium in equity.   Indenture § 3.07(b).   And under a different optional redemption provision, the PIK Notes may be optionally redeemed on or after December 1, 2014, by paying the Optional Redemption Price.   Indenture § 3.07(d).

35.     These are the only fees that could possibly be due were the PIK Notes to be optionally and voluntarily redeemed before their scheduled maturity, as specified in Section 3.07(c) of the Indenture:

> Except pursuant to clause (a) or (b) of this Section 3.07, the Notes shall not be redeemable at the Issuer's option prior to December 1, 2014.

11

36.     As an initial matter, December 1, 2014 has passed and so this provision does not apply.  Further, the Indenture therefore does not contain a so-called "no call" provision—a provision that prohibits the repayment of a note before a specific date.  The Indenture instead specifies that an optional redemption before a certain date requires the payment of a specific premium.  Accordingly, the PIK Noteholders are not entitled to "no call damages"—an unsecured claim for breach of contract damages.  If the PIK Noteholders are entitled to any damages for the repayment of the PIK Notes upon automatic acceleration (and they are not), the PIK Noteholders would receive one of the fees specified in the Indenture, and not "no call" damages.

37.     Additionally, the so-called "perfect tender" rule does not apply here.  Here, the loan at issue was automatically accelerated upon EFIH's chapter 11 filing.  That acceleration advanced the PIK Notes' maturity date to the Petition Date.  Any repayment pursuant to a plan of reorganization occurs after the PIK Notes' maturity date and therefore cannot violate the perfect tender rule, even if it applied.

38.     Further, the parties have, through the Indenture, negotiated specific provisions governing fees owed when the PIK Notes are optionally redeemed (the Applicable Premium or the Optional Redemption Price) and when they are repaid after automatic acceleration (none).  The express language of the parties' agreement governs whether any payment is due, and none is.

### D.     The Debtors Did Not Intentionally Default.

39.     Under the plain text of the Indenture, no Applicable Premium, Optional Redemption Price, or any other fee is owed if the PIK Notes are repaid after automatic acceleration.  Indenture trustees in other cases have nonetheless argued that, even if a

12

loan agreement does not require a prepayment fee for repayment after automatic acceleration, borrowers still owe that prepayment fee if the lender has intentionally defaulted to accelerate the loan, repay it, and thereby avoid the prepayment fee.

40.    Such a claim would also be unusual here because the majority of PIK Noteholders voted in favor of a restructuring support agreement that was subject to termination if the Debtors did not file for chapter 11 protection on or before April 29, 2014, the petition date.  (No. 14-10979, D.I. 505-2, at 21/105, 26/105 (RSA §§ 8.01(a), 8.05(a)).)

41.    Further, such a claim fails on the merits.  The EFIH Debtors did not file for bankruptcy for the purpose of avoiding the Applicable Premium, Optional Redemption Price, or any other fee.  The EFIH Debtors filed for chapter 11 protection for a number of reasons, including that EFIH had projected that it would exhaust its liquidity in the second quarter of 2014.

**E.    Any Applicable Premium, Optional Redemption Price, No Call Damages, Or Damages Based On Intentional Default Are Unmatured Interest.**

42.    Section 506(b) of the Bankruptcy Code provides that oversecured creditors may receive interest and any reasonable fees or charges provided for by contract, to the extent of the oversecured amount.  Because the PIK Notes are unsecured, the Trustee therefore cannot rely on section 506(b) of the Bankruptcy Code to support any potential claim for an Applicable Premium or Optional Redemption Price.

43.    Relatedly, Section 502(b)(2) of the Bankruptcy Code prohibits claims for "unmatured interest."  Even if the Applicable Premium, Optional Redemption Price, no call damages, or damages related to an alleged intentional default are provided for by the

Indenture or applicable state law, any claim for these amounts should be disallowed as unmatured interest.

### F.    The PIK Noteholders Are Not Entitled To Interest At The Rate Specified In The Indenture.

44.    The Indenture provides that the EFIH Debtors "shall pay interest (including post-petition interest in any proceeding under any Bankruptcy Law) on overdue principal at the rate equal to the then applicable interest rate on the Notes to the extent lawful." *See* Indenture § 4.01.  The PIK Notes automatically accelerated and came due on the Petition Date, April 29, 2014.  The EFIH Debtors expect that the Trustee will claim that the PIK Noteholders are entitled to receive interest on the PIK Notes' outstanding principal, from the Petition Date until the date of repayment, at the rate specified in the Indenture.

45.    As stated above, section 502(b)(2) of the Bankruptcy Code disallows claims for unmatured interest on unsecured debt—for example, interest payments on debt, like the PIK Notes—that comes due on or after the Petition Date.

46.    Where Debtors are solvent, some courts have created an exception to this rule and permitted post-petition interest to accrue on outstanding principal during the pendency of the bankruptcy proceedings.  Importantly, the majority of these courts have also ruled that, under their judicially-created exception, interest should accrue at the *federal judgment rate of interest*, 28 U.S.C. § 1961, not at the contract rate, as in § 4.01 of the Indenture.  Specifically, the federal judgment rate of interest is the weekly average 1-year constant maturity Treasury yield as published by the Board of Governors of the Federal Reserve System the week immediately before the Petition Date, compounded annually.

47.     Here, the outstanding principal owed on the PIK Notes should not accrue post-petition interest at the Indenture's specified rate and should instead accrue post-petition interest, if and only if the EFIH Debtors are solvent, at the federal judgment rate of interest.

## COUNT I

### Declaratory Judgment That The PIK Noteholders Are Not Entitled To Payment Of An Applicable Premium

48.     The Debtors re-allege and incorporate by reference the preceding paragraphs of this Complaint as if fully set forth herein.

49.     An actual, justiciable controversy exists between the EFIH Debtors and the Trustee regarding whether the repayment of the PIK Notes after their bankruptcy-induced acceleration and pursuant to a plan of reorganization will give rise to an unsecured claim for the Applicable Premium.

50.     Under 11 U.S.C. § 502, the Trustee's claim for the Applicable Premium is allowable only if the Indenture provides for that premium.    Under the plain and unambiguous language of the governing Indenture, the EFIH Debtors do not owe an Applicable Premium.

51.     The Indenture specifies that an Applicable Premium is owed if the PIK Notes are optionally redeemed before December 1, 2014.  Because December 1, 2014, has passed, and because the PIK Notes have not been repaid, the PIK Notes could not possibly be optionally redeemed before December 1, 2014, and the Applicable Premium could not be owed.

52.     Further, the PIK Notes have not been optionally redeemed.   The PIK Notes were automatically accelerated, due, and payable, upon the EFIH Debtors' filing of

their bankruptcy petition.  Section 6.02 of the Indenture expressly provides that "all outstanding PIK Notes *shall* be due and payable immediately without further action or notice" upon EFIH's bankruptcy filing.  Repayment according to the terms of Section 6.02 as part of a plan of reorganization does not constitute an optional redemption.

53.     Accordingly, the Indenture does not provide for the payment of an Applicable Premium in these circumstances.

## COUNT II

### Declaratory Judgment That The PIK Noteholders
### Are Not Entitled To An Optional Redemption Price

54.     The Debtors re-allege and incorporate by reference the preceding paragraphs of this Complaint as if fully set forth herein.

55.     An actual, justiciable controversy exists between the EFIH Debtors and the Trustee regarding whether the repayment of the PIK Notes after their bankruptcy-induced acceleration and pursuant to a plan of reorganization will give rise to an unsecured claim for the Optional Redemption Price.

56.     Under 11 U.S.C. § 502, the Trustee's claim for an Optional Redemption Price is allowable only if the Indenture provides for that fee.  Under the plain and unambiguous language of the governing Indenture, the EFIH Debtors do not owe an Optional Redemption Price.

57.     Section 3.07(d) of the Indenture specifies that EFIH "may redeem Notes" on or after December 1, 2014, by paying "the redemption prices" specified in that section.

58.     The EFIH Debtors have not (and will not) seek to optionally redeem the PIK Notes.  The PIK Notes were automatically accelerated, due, and payable, upon the

16

EFIH Debtors' filing of their bankruptcy petition. Section 6.02 of the Indenture expressly provides that "all outstanding Notes *shall* be due and payable immediately without further action or notice" upon EFIH's bankruptcy filing. Repayment according to the terms of Section 6.02 as part of a plan of reorganization does not constitute an optional redemption.

59. Accordingly, the Indenture does not provide for the payment of an Optional Redemption Price in these circumstances.

**COUNT III**

**Declaratory Judgment That The Debtors Are Not Liable
For Breach Of A "No Call" Provision**

60. The Debtors re-allege and incorporate by reference the preceding paragraphs of this Complaint as if fully set forth herein.

61. An actual, justiciable controversy exists between the EFIH Debtors and the Trustee regarding whether the repayment of the PIK Notes after their bankruptcy-induced acceleration and pursuant to a plan of reorganization will give rise to an unsecured claim for "no call" damages for repaying the PIK Notes before their date of maturity.

62. The EFIH Debtors are not seeking to repay the PIK Notes before their maturity date. The PIK Notes were automatically accelerated, due, and payable, upon the EFIH Debtors' filing of their bankruptcy petition. Section 6.02 of the Indenture expressly provides that "all outstanding Notes *shall* be due and payable immediately without further action or notice" upon EFIH's bankruptcy filing. Repayment according to the terms of Section 6.02 pursuant to a plan of reorganization will not constitute a breach of the Indenture or any other contract.

17

63.     The Indenture does not contain a prohibition on repaying the PIK Notes before their scheduled maturity, and therefore the EFIH Debtors have not breached any such "no call" provision.

64.     Further, the EFIH Debtors are seeking to repay the PIK Notes according to a plan of reorganization *after* their date of maturity, which automatically accelerated to the April 29, 2014 Petition Date.  The so-called "perfect tender" rule therefore does not apply here, where repayment of the PIK Notes pursuant to a plan of reorganization will occur after, not before, the date of maturity.

65.     Even if the EFIH Debtors were seeking to repay the PIK Notes before their maturity date, which they are not, the parties expressly contracted for provisions providing that any damages owed will be calculated according to the specified formula contained in the Indenture.  *See* Indenture § 3.07.  Were any damages owed in connection with repaying the PIK Notes, which they are not, those damages would be those specifically provided in the bargained-for provisions of the Indenture.

66.     Accordingly, the PIK Noteholders are not entitled to "no call" damages for the repayment of the PIK Notes in these circumstances.

## COUNT IV

**Declaratory Judgment That The Debtors Did Not Default In Order
To Prevent The PIK Noteholders From Recovering The Applicable Premium,
Optional Redemption Price, Or Any Other Fee**

67.     The Debtors re-allege and incorporate by reference the preceding paragraphs of this Complaint as if fully set forth herein.

68.     An actual, justiciable controversy exists between the EFIH Debtors and the Trustee regarding whether the repayment of the PIK Notes after their bankruptcy-induced acceleration and pursuant to a plan of reorganization constitutes an alleged

18

intentional default that would give rise to payment of an Applicable Premium, Optional Redemption Price, or any other fee.

69.     The EFIH Debtors did not intentionally default by filing for bankruptcy, which accelerated the PIK Notes, to avoid paying the Applicable Premium, the Optional Redemption Price, or any other payment.

70.     Accordingly, the PIK Noteholders are not entitled to the Applicable Premium, the Optional Redemption Price, or any other fee based on any theory that might award such damages based on a borrower's intentional default.

### COUNT V

**Declaratory Judgment That Any Claim For The Applicable Premium, Optional Redemption Price, No Call Damages, Or Damages Related To An Alleged Intentional Default Is Disallowed As Unmatured Interest**

71.     The Debtors re-allege and incorporate by reference the preceding paragraphs of this Complaint as if fully set forth herein.

72.     An actual, justiciable controversy exists between the EFIH Debtors and the Trustee, regarding whether the Bankruptcy Code disallows the PIK Noteholders claim for the Applicable Premium, Optional Redemption Price, no call damages, or damages related to an alleged intentional default as unmatured interest.

73.     The PIK Notes are unsecured.  Any claim for the Applicable Premium, Optional Redemption Price, no call damages, or damages related to an alleged intentional default is a claim for unmatured interest, which is disallowed by section 502(b)(2) of the Bankruptcy Code.

## COUNT VI

**Declaratory Judgment That The PIK Noteholders Are Not Entitled
To Receive Post-Petition Interest At The Rate Specified In The Indenture**

74.     The Debtors re-allege and incorporate by reference the preceding paragraphs of this Complaint as if fully set forth herein.

75.     An actual, justiciable controversy exists between the EFIH Debtors and the Trustee, regarding whether the PIK Noteholders are entitled to post-petition interest at the rate specified in the Indenture.

76.     Section 502(b)(2) of the Bankruptcy Code expressly prohibits the payment of unmatured interest to unsecured creditors, like the PIK Noteholders.

77.     Some courts have created an exception to this statute.  Where the debtor is solvent, these courts have permitted unsecured creditors to receive post-petition interest at the federal judgment rate, 28 U.S.C. § 1961.

78.     Regardless, the PIK Noteholders are not entitled to receive post-petition interest at the rate specified in the Indenture.  If the EFIH Debtors are found to be insolvent, the PIK Noteholders are not entitled to receive any post-petition interest.  If the EFIH Debtors are solvent, based on legal and equitable principles, the PIK Noteholders are entitled to receive post-petition interest at the federal judgment rate of interest.

## PRAYER FOR RELIEF

WHEREFORE, the Debtors respectfully request that judgment be entered in its favor as follows:

A.     A declaration that (i) the Debtors' obligations under the PIK Notes were accelerated, under Section 6.02 of the Indenture, by the Debtors' act of filing a

bankruptcy petition, and (ii) the PIK Noteholders are not entitled to an unsecured claim for the Applicable Premium or the Optional Redemption Price under these circumstances.

B.    A declaration that (i) any repayment by the Debtors of the outstanding principal and any accrued and unpaid interest due on the PIK Notes as part of a plan of reorganization will not trigger the payment of an Applicable Premium, which is only owed if an optional redemption occurred before December 1, 2014, a date which has since passed; (ii) any repayment would not constitute an optional redemption of the PIK Notes under Section 3.07(a) of the Indenture; and (iii) given the date and circumstances of any future repayment, the PIK Noteholders would not have an allowed unsecured claim for the Applicable Premium.

C.    A declaration that (i) any payment by the Debtors of the outstanding principal and accrued and unpaid interest due on the PIK Notes as part of a plan of reorganization would not constitute an optional redemption of the PIK Notes under Section 3.07(d) of the Indenture, and (ii) in the event of such a repayment, the PIK Noteholders would not have an allowed unsecured claim for the Optional Redemption Price.

D.    A declaration that any repayment by the Debtors of the outstanding principal and accrued and unpaid interest due on the PIK Notes as part of a plan of reorganization would not violate the terms of the Indenture or otherwise give rise to an unsecured claim for breach of contract or so-called "no call" damages under applicable law.

E.    A declaration that EFIH did not intentionally default to purposely accelerate the PIK Notes to avoid paying a makewhole premium and, therefore, the PIK

Noteholders are not entitled to the Applicable Premium, the Optional Redemption Price, or any other damages based on any intentional default theory.

F.      A declaration that any claim for the Applicable Premium, Optional Redemption Price, no call damages, or damages related to an alleged intentional default is unmatured interest and is disallowed by the Bankruptcy Code.

G.      A declaration that the PIK Noteholders are not entitled to receive post-petition interest at the rate specified in the Indenture and, only if the EFIH Debtors are solvent, are instead entitled to receive post-petition interest at the federal judgment rate of interest, which is the weekly average 1-year constant maturity Treasury yield as published by the Board of Governors of the Federal Reserve System the week immediately before the Petition Date, compounded annually.

H.      Such other and further relief as the Court deems just and appropriate.

*[Remainder of page intentionally left blank.]*

Dated:   December 16, 2014
          Wilmington, Delaware                    /s/ Jason M. Madron
_____

**RICHARDS, LAYTON & FINGER, P.A.**
Mark D. Collins (No. 2981)
Daniel J. DeFranceschi (No. 2732)
Jason M. Madron (No. 4431)
920 North King Street
Wilmington, Delaware 19801
Telephone:      (302) 651-7700
Facsimile:      (302) 651-7701
Email:          collins@rlf.com
                defranceschi@rlf.com
                madron@rlf.com

-and-

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Edward O. Sassower, P.C. (admitted *pro hac vice*)
Stephen E. Hessler (admitted *pro hac vice*)
Brian E. Schartz (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022-4611
Telephone:      (212) 446-4800
Facsimile:      (212) 446-4900
Email:          edward.sassower@kirkland.com
                stephen.hessler@kirkland.com
                brian.schartz@kirkland.com

-and-

James H.M. Sprayregen, P.C. (admitted *pro hac vice*)
Marc Kieselstein, P.C. (admitted *pro hac vice*)
Chad J. Husnick (admitted *pro hac vice*)
Steven N. Serajeddini (admitted *pro hac vice*)
300 North LaSalle
Chicago, Illinois 60654
Telephone:      (312) 862-2000
Facsimile:      (312) 862-2200
Email:          james.sprayregen@kirkland.com
                marc.kieselstein@kirkland.com
                chad.husnick@kirkland.com
                steven.serajeddini@kirkland.com

Co-Counsel to the Debtors and Debtors in Possession