**<u>Exhibit A</u>**

[Proposed Order]

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) | Case No. 14-10979 (CSS) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**[PROPOSED] ORDER AUTHORIZING THE RETENTION AND EMPLOYMENT OF
MUNGER, TOLLES & OLSON LLP AS COUNSEL TO DEBTORS AND DEBTORS IN
POSSESSION ENERGY FUTURE COMPETITIVE HOLDINGS COMPANY LLC AND
TEXAS COMPETITIVE ELECTRIC HOLDINGS COMPANY LLC EFFECTIVE *NUNC
PRO TUNC* TO NOVEMBER 16, 2014**

Upon the application (the "Application")[2] of debtors and debtors in possession Energy Future Competitive Holdings Company LLC ("EFCH") and Texas Competitive Electric Holdings Company LLC. ("TCEH" and together with EFCH and their debtor subsidiaries, the "TCEH Debtors") for the entry of an order (this "Order") authorizing the TCEH Debtors to retain and employ Munger, Tolles & Olson LLP ("MTO") as their attorneys effective *nunc pro tunc* to November 16, 2014, to render professional services, under the supervision of Hugh E. Sawyer, the independent board member of the TCEH Debtors (the "TCEH Debtors' Disinterested Manager"), in connection with "Conflict Matters," as defined in and pursuant to the authority delegated to the TCEH Debtors' Disinterested Manager in the respective resolutions of the ECFH and TCEH Board of Managers dated November 7, 2014 and December 9, 2014 to the Application as **Exhibit B** (collectively the "Resolutions"), including the determination by the TCEH Debtors' Disinterested Manager of whether any matter constitutes a

---

[1] The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, for which joint administration has been granted, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Application.

"Conflict Matter" (collectively, "<u>Conflict Matters</u>"), pursuant to sections 327(a) and 330 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>"), rules 2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), and rules 2014-1 and 2016-2 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "<u>Local Bankruptcy Rules</u>"); and the Court having reviewed the Application, the Declaration of Todd J. Rosen, a partner at MTO (the "<u>Rosen Declaration</u>"), and the declaration of Hugh E. Sawyer, authorized member of the Board of Managers of the TCEH Debtors (the "<u>Sawyer Declaration</u>"); and the Court having found that the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and the Court having found that the Application is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and the Court having found that venue of the Application in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having found, based on the representations made in the Application and in the Rosen Declaration, that (a) MTO does not hold or represent an interest adverse to the TCEH Debtors' estates and (b) MTO is a "disinterested person" as defined in section 101(14) of the Bankruptcy Code and as required by section 327(a) of the Bankruptcy Code; and the Court having found that the relief requested in the Application is in the best interests of the TCEH Debtors' estates, their creditors, and other parties in interest; and the Court having found that the TCEH Debtors provided adequate and appropriate notice of the Application under the circumstances and that no other or further notice is required; and the Court having reviewed the Application and having heard statements in support of the Application at a hearing held before the Court (the "<u>Hearing</u>"); and the Court having determined that the legal and factual bases set forth in the Application and at the Hearing establish just cause for the relief granted herein; and any objections to the relief requested herein having been withdrawn or overruled on the merits;

and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.        The Application is granted to the extent set forth herein.

2.        The TCEH Debtors are authorized to retain and employ MTO as its attorneys *nunc pro tunc* to November 16, 2014 in accordance with the terms and conditions set forth in the Application and the Engagement Letter attached hereto as **Exhibit 1**; *provided, however*, that nothing in the Engagement Letter shall supersede any provisions of the Bankruptcy Code during the pendency of the Debtors' chapter 11 cases; *provided further, however*, that to the extent the Application, the Rosen Declaration, the Sawyer Declaration, any later declaration, or the Engagement Letter is inconsistent with this Order, the terms of this Order shall govern.

3.        Under the supervision of the TCEH Debtors' Disinterested Manager, MTO is authorized to provide the TCEH Debtors with professional services in connection Conflict Matters as defined in and pursuant to the authority delegated to the TCEH Debtors' Disinterested Manager in the Resolutions.

4.        MTO shall use its reasonable efforts to avoid any duplication of services provided by any of the TCEH Debtors other retained professionals in these chapter 11 cases.

5.        MTO shall apply for compensation for professional services rendered on an hourly basis and reimbursement of expenses incurred in connection with the TCEH Debtors' chapter 11 cases in compliance with sections 330 and 331 of the Bankruptcy Code and applicable provisions of the Bankruptcy Rules, Local Bankruptcy Rules, the *Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Professionals* entered on September 16, 2014 [D.I. 2066] and any other applicable procedures and orders of the Court, including the *Stipulation and Order Appointing a Fee Committee* [D.I. 1896] (the "Fee

Committee Order"), and shall cooperate with the fee committee appointed under the Fee Committee Order in the discharge of its duties. MTO has agreed to be bound by the terms of the Fee Committee Order. MTO also intends to make a reasonable effort to comply with the U.S. Trustee's requests for information and additional disclosures as set forth in the *Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases Effective as of November 1, 2013* (the "Revised UST Guidelines"), both in connection with the Application and the interim and final fee applications to be filed by MTO in this chapter 11 case.

6.      MTO shall not charge a markup to the TCEH Debtors with respect to fee billed by contract attorneys who are hired by MTO to provide services to the TCEH Debtors and shall ensure any such contract attorneys are subject to conflict checks and disclosures in accordance with the requirements of the Bankruptcy Code and Bankruptcy Rules. For the avoidance of doubt, MTO shall not share fees with existing or future contract attorneys who advise in the Debtors chapter 11 cases or enter into fee sharing arrangements with such contract attorneys.

7.      MTO shall provide ten business days' notice to the TCEH Debtors, the U.S. Trustee, and the Committees before any increases in the rates set forth in the Application or the Engagement Letter are implemented and shall file such notice with the Court. The U.S. Trustee retains all rights to object to any rate increase on all grounds, including the reasonableness standard set forth in section 330 of the Bankruptcy Code, and the Court retains the right to review any rate increase pursuant to section 330 of the Bankruptcy Code.

8.      The TCEH Debtors and MTO are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Application.

9.      Notice of the Application as provided therein is deemed to be good and sufficient notice of such Application, and the requirements of the Local Bankruptcy Rules are satisfied by the contents of the Application.

10.     To the extent the Application, the Rosen Declaration, the Sawyer Declaration, or the Engagement Letter is inconsistent with this Order, the terms of this Order shall govern.

11.     The terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

12.     Notwithstanding any contrary provision in the Application or Engagement Letter, the Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.


Dated: _____
          Wilmington, Delaware                        _____
                                                      The Honorable Christopher S. Sontchi
                                                      United States Bankruptcy Judge

**<u>Exhibit 1</u>** (to Order)

[Engagement Letter]

## MUNGER, TOLLES & OLSON LLP

355 SOUTH GRAND AVENUE
THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1560
TELEPHONE (213) 683-9100
FACSIMILE (213) 687-3702

————————

560 MISSION STREET
SAN FRANCISCO, CALIFORNIA 94105-2907
TELEPHONE (415) 512-4000
FACSIMILE (415) 512-4077

November 16, 2014

RONALD L. OLSON*
ROBERT E. DENHAM
JEFFREY I. WEINBERGER
GARY B. LESMAN
GREGORY P. STONE
GREGG D. BRIAN
BRADLEY S. PHILLIPS
GEORGE M. GARVEY
WILLIAM D. TEMKO
STEVEN M. KRISTOVICH
JOHN W. SPIEGEL
TERRY E. SANCHEZ
STEVEN M. PERRY
MARK B. HELM
JOSEPH D. LEE
MICHAEL R. DOYEN
MICHAEL E. SOLOFF
GREGORY D. PHILLIPS
KATHLEEN M. McDOWELL
GLENN D. POMERANTZ
THOMAS B. WALPER
PATRICK J. CAFFERTY, JR.
JAY M. FUJITANI
O'MALLEY M. MILLER
SANDRA A. SEVILLE-JONES
MARK H. EPSTEIN
HENRY WEISSMANN
KEVIN S. ALLRED
BART H. WILLIAMS
JEFFREY A. HEINTZ
JUDITH T. KITANO
KRISTIN LINSLEY MYLES
MARC T.G. DWORSKY
JEROME C. ROTH
STEPHEN D. ROSE
JEFFREY L. BLEICH
GARTH T. VINCENT
TED DANE
STUART N. SENATOR
MARTIN D. BERN
DANIEL P. COLLINS
ROBERT L. DELL ANGELO
BRUCE A. ABBOTT
JONATHAN E. ALTMAN
MARY ANN TODD
MICHAEL J. O'SULLIVAN
KELLY M. KLAUS
DAVID B. GOLDMAN
KEVIN S. MASUDA
HOJOON HWANG

'A PROFESSIONAL

PETER A. DETRE
DAVID H. FRY
LISA J. DEMSKY
MALCOLM A. HEINICKE
GREGORY J. WEINGART
TAMERLIN J. GODLEY
JAMES C. RUTTEN
RICHARD ST. JOHN
ROHIT K. SINGLA
LUIS LI
CAROLYN HOECKER
LUEBYKE
C. DAVID LEE
MARK H. KIM
BRETT J. RODDA
SEAN ESKOVITZ
FRED A. ROWLEY, JR.
KATHERINE M. FORSTER
BLANCA FROMM YOUNG
RANDALL G. SOMMER
MARIA SEFERIAN
MANUEL F. CACHÁN
ROSEMARIE T. RING
TODD J. ROSEN
MELINDA EADES LeMOINE
SETH GOLDMAN
GRANT A. DAVIS-DENNY
JONATHAN H. BLAVIN
DANIEL B. LEVIN
MIRIAM KIM
MISTY M. SANFORD
KATHERINE KU
HAILYN J. CHEN
BETHANY W. KRISTOVICH
SUSAN R. SZABO
KIMBERLY A. CHI
JACOB S. KREILKAMP
ERIC P. TUTTLE
HEATHER E. TAKAHASHI
KEITH R.D. HAMILTON, II
SORAYA C. KELLY
JEFFREY Y. WU
ALISSA BRANHAM
ADAM R. LAWTON
JENNY H. HONG
AARON SEIJI LOWENSTEIN
LAURA D. SMOLOWE
MIRIAM A.
MACDONALD
MARGARET G.
MARASCHINO

ESTHER H. SUNG
BENJAMIN J. MARO
MICHAEL J. MONGAN
KYLE A. CASAZZA
ERIN J. COX
CLAIRE YAN
ALLISON S. WOODS
JESLYN A. MILLER
MARK R. SAYSON
CHRISTIAN K. WREDE
PETER E. GRATZINGER
ANJAN CHOUDHURY
JEREMY A. LAWRENCE
BENJAMIN B. FRIEDMAN
CHRISTOPHER M. LYNCH
RAY S. SEILIE
NICHOLAS G. SOLTMAN
ADAM I. KAPLAN
AMELIA L.B. SARGENT
KENNETH M. TRUJILLO-JAMISON
BRYAN H. HECKENLIVELY
LAURA WIRTH
JASMINE M. ROBERTS
JENNIFER A. JONES
LAURA K. LIN
KYLE W. MACH
JEFFREY M. OSOFSKY
GREGORY M. SERGI
ACHYUT J. PHADKE
DAVID A. TAYLOR
TINA V. ALKOYO
MARY ROVERBECK
JESSE MAX OREED
JOHN M. GILDERSLEEVE
ERIC K. CHIU
SARAH L. GRAHAM
JESSICA BARCLAY-STROBEL
ZACHARY M. BRIERS
JENNIFER M. BRODER
CHRISTINA P. MONDIDIS
JOHN P. MITTELBACH
SARAH GARBER
SAMUEL T. GREENBERG
CAROLINE M. MCKAY
EMILY D. VIGLIETTA
WILLIAM J. EDELMAN
KEVIN L. BRADY
EMILY R.D. MURPHY
ELLEN MEDLIN
WROPLEY

NICOLE S. PHILLIS
JORDAN D. SEGALL
DANIEL J. HARRIS
VICTORIA A. DEGTYAREVA
WESLEY T.L. BURRELL
CHRISTA L. CULVER
ARYA A. GOLDSTEIN
KAREN A. LORANG
KURUVILLA J. OLASA
KEVIN H. SCOTT
JUSTIN P. RAPHAEL
HANNAH R. SHEARER
ELIA HERRERA
ROBERT W. GRAY, JR.
THOMAS P. CLANCY
JOSHUA PATASHNIK
ERIC G. TUNG
GUHA KRISHNAMURTHI
JOSHUA S. MELTZER
SARA E. CROLL
ANDREW G. PROUT
THANE REHN
ADAM B. WEISS
ROSE LEDA EHLER
AMY L. GREYWITT
ANDREW Z. WOLSTAN
NASSIM NAZEMI

————————

OF COUNSEL
RICHARD D. ESSENSHADE†
ROBERT N. JOHNSON†
ALAN V. FRIEDMAN†
RONALD K. MEYER
ALLISON B. STEIN
SUSAN R. NASH
WILLIANA CHANG
MIRANDA KANE
BRAD SCHNEIDER

WRITER'S DIRECT CONTACT
(213) 683-9193 TEL
(213) 683-5193 FAX
Thomas.Walper@mto.com

Energy Future Competitive Holdings Company LLC
Texas Competitive Electric Holdings Company LLC
Attention: Hugh E. Sawyer
Energy Plaza, 1601 Bryan Street
Dallas, TX 75201

Re:     *In re Energy Future Holdings Corp., et al.*, Case No. 14-10979 (CSS),
        pending in the United States Bankruptcy Court for the District of
        Delaware (the "Bankruptcy Case")

Ladies and Gentlemen:

We appreciate the opportunity to represent Energy Future Competitive Holdings Company LLC ("EFCH") and Texas Competitive Electric Holdings Company LLC ("TCEH," and together with EFCH and their debtor subsidiaries, collectively, "you" or the "Company") on the terms set forth in this letter in the Bankruptcy Case. Let me thank you for your expression of confidence in retaining Munger, Tolles & Olson LLP ("MTO," the "firm," "we" and "us"). This letter agreement, including the attached Additional Terms of Representation, contain your agreement with us regarding the engagement of our firm.

### Scope of Representation

MTO's clients in this representation will be only you, and not any other individual or entity (whether or not related to you as an affiliate, employee, agent or otherwise). You agree that this representation does not give rise to an attorney-client relationship between MTO and anyone but you. Our engagement is subject to resolution of any conflicts and an order approving our retention in the Bankruptcy Case under 11 U.S.C. § 327. MTO's engagement is limited to advising you, under the sole supervision of your disinterested member of the boards of managers

MUNGER, TOLLES & OLSON
LLP   Energy Future Competitive Holdings Company LLC
Texas Competitive Electric Holdings Company LLC
November 16, 2014
Page 2

of EFCH and TCEH, currently Hugh Sawyer (the "Disinterested Manager"), in connection with "Conflict Matters," as defined in and pursuant to the authority delegated to the Disinterested Manager in resolutions of EFCH and TCEH dated November 7, 2014 and December 9, 2014 (the "Resolutions"), and in connection with whether any matter constitutes a Conflict Matter, all subject to prior determination by us that the firm would not itself have a conflict of interest in providing such advice with respect to any particular Conflict Matter that the Disinterested Manager identifies to us. The Resolutions are attached hereto as Exhibit B. MTO is not your general counsel, and our engagement does not involve an undertaking to represent you or your interests in any other matter. For example, MTO's engagement does not include any advice or other legal services relating to federal or state securities laws, including appearing or practicing before the U.S. Securities and Exchange Commission (SEC) or your disclosure obligations under such laws.

As set forth in the Resolutions, the board of managers delegated to the Disinterested Manager the authority to determine whether any matter constitutes a Conflict Matter, in the exercise of his business judgment and with the advice of Independent Advisors (as defined therein), with any such determination to be binding on the Company. As this is expected to be a process that continues beyond the commencement of this engagement and conflicts among the debtors in the Bankruptcy Case may arise or be resolved as the Bankruptcy Case progresses, not all conflicts have been identified as of the commencement of this engagement. Upon identification of a Conflict Matter to us, we will identify any potential or actual ethical conflicts that MTO may have with respect to such Conflict Matter (the extent of which notice may be affected to the extent that the provision of relevant information to you would itself violate our ethical duty to our other client(s), in which case we will initially provide only the extent of notice that we believe we are then permitted to provide and supplement the notice when doing so would no longer violate our ethical duty to our other client); if there is a conflict with respect to a particular Conflict Matter our representation in that Conflict Matter shall be subject to our receipt of any necessary informed consent.

If not terminated earlier or extended in an express written agreement executed by a partner in MTO, our representation of you in this matter will conclude upon the effective date of a plan of reorganization for the Company in the Bankruptcy Case.

**Direction and Control**

Consistent with the Resolutions and although we shall represent the Company in representation contemplated by this letter agreement, the Disinterested Manager shall have the sole and exclusive power to direct and supervise our work in this matter. MTO shall report exclusively to the Disinterested Manager with respect to this matter, or to such other persons as directed by the Disinterested Manager. In addition, Disinterested Manager shall control any attorney-client, work product, or other privilege belonging to the Company in connection with the MTO's work or privileged communications on the Conflict Matters and on whether any matter constitutes a Conflict Matter. Further, as a condition of our engagement, the other

MUNGER, TOLLES & OLSON
LLP    Energy Future Competitive Holdings Company LLC
Texas Competitive Electric Holdings Company LLC
November 16, 2014
Page 3

members of the boards of managers of EFCH and TCEH have agreed or will agree that they consent to such control by the Disinterested Manager and waive (to the extent permitted by applicable law) any right each of them otherwise may have under the operating agreements for EFCH or TCEH or under applicable law to access, and shall not seek to access, the work or privileged material of MTO on the Conflict Matters, or on whether any matter constitutes a Conflict Matter, except as permitted by the Disinterested Manager.

The foregoing are essential terms of this engagement and are embodied in the Resolutions.

### Billing

Our normal billing practice is to base legal fees upon the amount of time devoted to a matter at hourly rates for the attorneys and other personnel (such as paralegal assistants and case clerks) involved in the project. Any other fee arrangements must be agreed to by you and us in writing. We believe that our hourly rates are comparable to those charged for similar kinds of work by lawyers of similar experience and standing in the community. Our hourly rates are the same for both restructuring and non-restructuring matters.

Our hourly rates for 2014 for the attorneys currently assigned to coordinate and supervise your matter are: $1,025 for Thomas B. Walper; $1,025 for John W. Spiegel; $910 for Stephen D. Rose; $815 for Brett J. Rodda; and $720 for Seth Goldman. Other attorneys in the firm may also be involved in this representation to the extent we find it appropriate. The rates for partners and of counsel range from $640 to $1,150 per hour and the rates for associates range from $375 to $640 per hour. Paralegal time is billed at rates ranging between $160 and $285 per hour.

Effective January 1, 2015, the hourly rates for all of our attorneys and other professionals will increase. For the attorneys currently assigned to your matter, our 2015 rates will be as follows: $1,065 for Thomas B. Walper; $1,065 for John W. Spiegel; $960 for Stephen D. Rose; $850 for Brett J. Rodda; and $750 for Seth Goldman. The rates for partners and of counsel will range from $640 to $1,195 per hour and the rates for associates will range from $395 to $675 per hour. Paralegal time will be billed at rates ranging between $165 and $295 per hour.

We will send monthly statements to you. These statements will show the current status of your account, both for services rendered and for costs incurred on your behalf, and, subject to applicable Bankruptcy Court (as defined below) order, we will expect payment of the undisputed balance due on those statements within sixty (60) days of receipt of our invoice. MTO will apply for compensation for professional services rendered and reimbursement of expenses incurred in this matter in compliance with 11 U.S.C. §§ 330 and 331 and applicable provisions of the Federal Rules of Bankruptcy Procedure, the local rules of the bankruptcy court where the Bankruptcy Case is pending (the "Bankruptcy Court"), any Bankruptcy Case specific

MUNGER, TOLLES & OLSON
LLP
Energy Future Competitive Holdings Company LLC
Texas Competitive Electric Holdings Company LLC
November 16, 2014
Page 4

fee protocols approved by the Bankruptcy Court after notice and a hearing pursuant to paragraph C.5 of the *Stipulation and Order Appointing a Fee Committee* (Docket No. 1896), the *Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Professionals* (Docket No. 2066), and any other applicable procedures and orders of the Bankruptcy Court.  MTO also intends to make a reasonable effort to comply with the U.S. Trustee's requests for information and additional disclosures as set forth in the *Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases Effective as of November 1, 2013*.

\*   \*   \*

The attorney-client relationship is one of mutual trust and confidence.  We therefore encourage our clients to feel free at all times to raise questions about any aspect of our representation, including billing matters.

Further terms applicable to this engagement are specified in Exhibit A to this letter.  Please contact me as soon as possible if this letter (including its Exhibit A) does not accurately reflect your understanding of our agreement.  Any corrections or changes must be in writing and signed on your behalf and on our behalf.  Otherwise, please sign and return the enclosed acknowledgment copy of this letter at your earliest convenience.

Very truly yours,

Thomas B. Walper

This letter, including Exhibit A hereto, accurately sets forth all of the terms of the engagement of Munger, Tolles & Olson LLP as counsel to Energy Future Competitive Holdings Company LLC and Texas Competitive Electric Holdings Company LLC, and is approved and accepted by them through their authorized representative:

ENERGY FUTURE COMPETITIVE HOLDINGS
COMPANY LLC and TEXAS COMPETITIVE
ELECTRIC HOLDINGS COMPANY LLC

By

Hugh E. Sawyer                                          Date: December 16, 2014
Title:   Disinterested Manager,
         Energy Future Competitive Holdings Company LLC
         Texas Competitive Electric Holdings Company LLC

25323695.1

MUNGER, TOLLES & OLSON
LLP

Energy Future Competitive Holdings Company LLC
Texas Competitive Electric Holdings Company LLC
November 16, 2014
Page 5

## EXHIBIT A -- MTO ADDITIONAL TERMS OF RETENTION

The following terms apply to your retention of Munger, Tolles & Olson LLP in this matter, and are an integral part of our agreement with you.

**Cooperation.** To enable us to represent you effectively, you agree to cooperate fully with us in all aspects of your matter, and fully and accurately to disclose to us all facts and documents that may be relevant to the matter or that we may otherwise request. We may rely on your disclosures without independent verification. You also will make yourself reasonably available to attend meetings, discovery proceedings and conferences, hearings and other proceedings, as applicable.

**Nature Of Services.** We provide only legal services. You are not relying on us for and we are not providing, among other things, investment, insurance, financial, accounting or technical advice or making business decisions, nor are we investigating the character or credit of persons with whom you may be dealing. We will not express opinions or beliefs as to the financial statements or other financial information of you or anyone else. Unless otherwise expressly stated in the body of this letter, we shall have no responsibility to investigate or evaluate whether insurance is available relating to your matter or to tender the matter to any insurance carrier.

**No Guarantee Of Outcome.** We do not and cannot guarantee the outcome of any matter. Either at the commencement or during the course of our representation, we may express opinions or beliefs concerning the litigation or various courses of action and the results that might be anticipated. Any such statements are intended to be expressions of opinion only, based on information available to us at the time, and should not be construed as promises or guarantees.

**Estimates Not Binding.** As you are aware, it is not possible to quote exact amounts to be charged for projects like this one. Even carefully prepared estimates may turn out to be high or low. Our experience has been, however, that our clients consider our fees to be reasonable in light of the responsibilities assumed, the effort expended, the result achieved, and the efficiency with which the project is completed.

**Billing And Payment.** The following billing and payment terms shall apply except that to the extent that, in the body of this letter, it is stated that a third party has agreed to pay our fees and costs in this matter, then the references to your payment obligations in the next three paragraphs shall be interpreted to apply to payment obligations of such third party.

Subject to applicable Bankruptcy Court order(s), Except for amounts subject to a good faith dispute, you agree to pay our statements within sixty (6) days of receipt of our invoice. There are certain costs and expenses (in addition to the fees for our legal services)

25323695.1

MUNGER, TOLLES & OLSON
LLP

Energy Future Competitive Holdings Company LLC
Texas Competitive Electric Holdings Company LLC
November 16, 2014
Page 6

which you will be obligated to pay, if incurred, such as messenger charges, printing and photocopying costs, air express delivery charges, travel costs, transcript fees, parking charges, filing fees, telephone conference call charges, and other similar costs and expenses. From time to time, with your prior written approval, MTO may engage leased workers for specific work on matters (e.g. first level review of documents, etc). These leased workers would work alongside and be supervised by our regular staff and attorneys. The billing rate we charge you for such leased workers shall not exceed the amount paid by MTO for the leased workers' services. We do not bill clients for fees charged by computerized legal research services, telephone charges other than conference call charges, routine facsimile transmissions or routine postage. We may also retain, at your expense, experts or consultants whose services we believe are necessary for effective representation in this matter; provided, that we shall not so do without your prior written consent. In accordance with our normal practice, we will require that significant bills from outside vendors (including, for example, copy services, experts and consultants) be paid directly by you.

You also agree to pay us promptly for our fees, costs and expenses incurred in responding to subpoenas, testifying (and preparing testimony) by deposition or otherwise, or otherwise responding with respect to obligations, claims or demands relating to or arising out of the matters in which we have represented or are representing you, whether or not related to our services and whether or not we are then representing you.

You agree that we may suspend or terminate services, and may withdraw from our representation of you, if our statements or required advance payments are not timely paid or restored as agreed, subject to any required notice or applicable judicial or professional rules.

**Informed Written Consent To Certain Future Conflicts Of Interest.** MTO represents many clients on a variety of legal matters. It is possible that in the future some of our present or future clients may have matters that are potentially or actually adverse to you that are not substantially related to the work we have performed for you. Similarly, there may be matters that you ask us to undertake in the future that present a potential or actual conflict with another client of the firm. Absent informed written consent, these conflicts of interest could adversely affect your ability and the ability of others to choose MTO as their counsel and preclude MTO from representing you or others in pending or future matters. Accordingly, in engaging MTO in this or any other matter, you consent to MTO's representation of others ("other MTO Client(s)") in (a) transactional matters in which you are a counterparty to, or otherwise affected by, the transaction, (b) except with respect to the Bankruptcy Case, bankruptcy matters in which you are an interested party as an equity holder, a debtor, a secured or unsecured creditor, or otherwise, (c) litigation matters (including arbitration and other dispute resolution matters) in which you are not a party but the other MTO Client or another party in the matter is seeking testimony, documents or other evidence from or involving you, and (d) litigation (including arbitration and other dispute resolution matters), transactional, counseling or other matters in which you are not a party but you may have a business or other interest, for example, because you have a business or other relationship with a party or because a legal standard relevant to the matter may also be

MUNGER, TOLLES & OLSON
LLP    Energy Future Competitive Holdings Company LLC
Texas Competitive Electric Holdings Company LLC
November 16, 2014
Page 7

relevant to matters in which you are or may become involved. Once again, the consent that we seek would extend only to matters that are not substantially related to the work we have performed for you. Such matters are referred to as "Permitted Other Representations." An element of your consent is your agreement that neither you nor anyone acting on your behalf will assert MTO's representation of you as a basis for disqualifying MTO from representing another party in any Permitted Other Representation. We commit to adhere to our professional obligation not to disclose or use any of your confidential information for another party's benefit without your consent. Notwithstanding the foregoing, your consent does not apply to the representation of other entities or persons in litigation, arbitration, or other dispute resolution procedures directly adverse to you.

In deciding whether to agree to this informed consent to future conflicts you should consider whether there is any material risk that we will be less zealous or eager on your behalf if we or others in our law firm at the same time represent other parties in Permitted Other Representations. Similarly, you should consider whether there is any material risk that your confidential information will be used adversely to you. We do not believe that there is a material risk of the first type because we understand our role as advocates in particular matters and take our obligations to our clients seriously. We do not believe that there is a material risk of the second type because we seek your consent only with respect to matters that are not substantially related to matters in which we represent you. Nevertheless, these are issues that you should consider for yourself and on which we encourage you to seek advice from independent counsel.

**Electronic Communications.** During our engagement, we may exchange materials with you by electronic means such as email, using commercial software. Such communications can be victimized by destructive electronic programs (so-called "viruses") and interception. Our virus scanning software also may occasionally reject a communication sent by you, and yours may do the same to something sent by us. We believe that these sorts of occurrences are to be expected from time to time as part of the ordinary course of business and cannot guarantee against them, although they do affect the security and reliability of electronic communications. If for these or other reasons you would prefer that we not communicate by electronic means or follow special instructions or use encryptions, you should promptly so advise in writing to those responsible for your matter.

**Consultation With Firm Counsel.** We represent many clients and handle a great number of complex matters. In part because of the number of clients that we represent and the complexity of matters in which we become involved, from time to time issues arise that raise questions as to our professional duties. These might include, for example, conflict of interest issues, and could even include issues raised because of a dispute between us and a client over the handling of a matter. Under normal circumstances when such issues arise we would seek the advice of our internal general counsel who are experienced in such matters. Historically, we have considered such consultations to be attorney-client privileged conversations between firm personnel and the counsel for the firm. In recent years, there have been judicial decisions

MUNGER, TOLLES & OLSON
LLP  Energy Future Competitive Holdings Company LLC
Texas Competitive Electric Holdings Company LLC
November 16, 2014
Page 8

suggesting that under some circumstances such conversations involve a conflict of interest between the client and the law firm and that consultation with firm counsel may not be privileged, unless the law firm either withdraws from the representation of its client or obtains the client's consent to consult with firm counsel.

We believe that it can be in our clients' and our mutual interests that, in the event legal ethics or related issues arise in conjunction with a representation, we receive expert analysis of our obligations. Accordingly, as part of our agreement concerning our representation of you, you agree that if we determine in our own discretion during the course of or following the representation that it is either necessary or appropriate to consult with our firm counsel (either MTO's in-house general counsel or, if we choose, outside counsel) we have your consent to do so in what are and will be deemed to be communications protected by MTO's attorney-client privilege, and that our representation of you shall not, thereby, waive any attorney-client privilege that MTO may otherwise have to protect the confidentiality of our communications with counsel.

**Conflict Checks.**  To allow us to conduct a conflict check, at our request, you will use commercially reasonable efforts to identify for us all persons and entities that are involved in the subject matter, including all persons and entities that in any material respect are related, affiliated or associated with you, and other involved parties (such as parent corporations, subsidiaries and other affiliates, officers, directors and principals). You agree that you will promptly notify us if you become aware of any other persons or entities that are or may become involved in the matter. You agree to cooperate fully with us and provide all necessary information known or available to you that is relevant to our conflict check.

**Public Reference To Representation.**  For matters that are or become public, you confirm that you have no objection to our making public reference to our representation of you, consistent with our responsibilities otherwise to maintain your confidences. Such reference may include, for example, mention in our firm website, statements of an attorney's experience, and brochures or promotional material.

**Termination Of Representation.**  You have the right to discharge us at any time. We may withdraw with your consent or for good cause, which includes client breach of this agreement or refusal to cooperate with us or follow our advice on a material matter, as well as in any other circumstance permitted by applicable rules. If you or we terminate our representation of you, you will cooperate with us to effect that termination, including executing all reasonably necessary documents (such as a Substitution of Attorney). Upon termination, you will remain obligated to pay for all services rendered and costs or expenses paid or incurred on your behalf before the termination or which are reasonably necessary to wind-down our relationship thereafter.

MUNGER, TOLLES & OLSON
LLP
Energy Future Competitive Holdings Company LLC
Texas Competitive Electric Holdings Company LLC
November 16, 2014
Page 9

After the conclusion of our representation, changes may occur in the applicable laws or regulations that could have an impact upon your future rights and liabilities. The firm has no continuing obligation to advise you with respect to future legal developments.

**Record Retention.** At the conclusion of this matter, we will at your request return your file. If you do not request return of your file, we may destroy it after ten years from the conclusion of the matter. Our own files pertaining to the matter will be retained by the firm. These firm files include, for example, firm administrative records, time and expense reports, personnel and staffing materials, and credit and accounting records; as well as internal lawyers' work product such as drafts, notes, internal memoranda, and legal and factual research, including investigative reports, prepared by or for our internal use. You agree that our files remain our property and, for various reasons including the minimization of unnecessary storage expenses, we may destroy or otherwise dispose of our files after ten years from the conclusion of the matter.

**Effective Date.** The effective date of our agreement is the date on which our services commenced. The date printed on this letter is for convenience of reference only. Although this engagement letter may be considered confidential, you agree that we may share the terms of any conflict waivers (excluding otherwise confidential information) with our other affected client(s) and that we may disclose the fact of any conflict waiver, as well as any document memorializing it (after redactions, if appropriate) where reasonably necessary to rebut allegations of improper conflicting representations.

**Dispute Resolution.** In the event of litigation in any way relating to this agreement, New York law will apply and personal jurisdiction and venue will be in New York, New York. We maintain errors and omissions insurance coverage applicable to the services to be rendered under this agreement. This agreement shall be governed by the internal law (and not the law pertaining to choice or conflicts of law) of the State of New York.

25323695.1

**EXHIBIT B**

# TEXAS COMPETITIVE ELECTRIC HOLDINGS COMPANY LLC ("TCEH")
## BOARD OF MANAGERS RESOLUTIONS
### NOVEMBER 7, 2014

WHEREAS, Energy Future Holdings Corp. ("EFH Corp.") and certain of its direct and indirect subsidiaries (excluding Oncor Electric Delivery Holdings Company LLC and its subsidiaries) (the "Debtors") on April 29, 2014, filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Chapter 11 Case") in the Bankruptcy Court for the District of Delaware (the "Bankruptcy Court");

WHEREAS, the members of the Board have acknowledged that the material facts relating to the relationships or interests of other members of the Board with other affiliated or related companies and other material relationships have been disclosed to them or are otherwise known to them, as contemplated by Section 144 of the Delaware General Corporation Law (the "DGCL") or the governing documents of TCEH, to the extent applicable;

WHEREAS, as described in the material presented and reviewed by the Board and based on the known facts and circumstances, Hugh E. Sawyer as the member of the Board that is disinterested (within the meaning of Section 144 of the DGCL or the governing documents of TCEH, to the extent applicable) (the "Disinterested Manager");

WHEREAS, the members of the Board of Managers of TCEH (the "Board") considered the *Stipulation and Agreed Order Regarding a Protocol for Certain Case Matters*, approved by the Bankruptcy Court on September 16, 2014, concerning, among other things, the ability of the Disinterested Manager to retain independent counsel and other advisors for TCEH under certain circumstances; and

WHEREAS, the members of the Board desires to delegate certain authority to the Disinterested Manager.

NOW, THEREFORE, BE IT,

RESOLVED that the Board hereby determines that Hugh E. Sawyer as a member of the Board is currently disinterested (within the meaning of Section 144 of the DGCL or the governing documents of TCEH, to the extent applicable) with respect to the Conflict Matters (as defined below); and further

RESOLVED that the Board hereby delegates authority to the Disinterested Manager to engage independent legal counsel and such other advisors as he deems necessary to represent and advise TCEH, reporting to the Disinterested Manager, on matters pertaining to the Chapter 11 Case on which a conflict exists between TCEH and any other Debtor (the "Conflict Matters"); and further

RESOLVED that the Board hereby requests that the Disinterested Manager review Conflict Matters identified by the Disinterested Manager (and his advisors) and make such recommendations to the Board as the Disinterested Manager deems appropriate, in the exercise of his business judgment and with the advice of independent legal counsel and other applicable advisors; and further

RESOLVED, that any officers of TCEH (collectively, the "Authorized Officers"), acting alone or with one or more other Authorized Officers be, and they hereby are, authorized, empowered and directed to take any and all action that they deem necessary or proper to assist the Disinterested Manager in carrying out the foregoing.

# TEXAS COMPETITIVE ELECTRIC HOLDINGS COMPANY LLC ("TCEH")
## BOARD OF MANAGERS RESOLUTIONS
### DECEMBER 9, 2014

The following recitals and resolutions supplement the Board of Managers Resolutions dated as of November 7, 2014 ("November 7th Resolutions") and, in the event of any inconsistency, these resolutions shall supersede and control.

WHEREAS, Energy Future Holdings Corp. ("EFH Corp.") and certain of its direct and indirect subsidiaries (excluding Oncor Electric Delivery Holdings Company LLC and its subsidiaries), including TCEH (the "Debtors") on April 29, 2014, filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code ("Chapter 11 Case") in the Bankruptcy Court for the District of Delaware ("Bankruptcy Court");

WHEREAS, the members of the Board of Managers of TCEH ("Board") having relationships or interests with other affiliated or related companies and their direct or indirect equity holders and other material relationships have disclosed certain facts that they believe to be material to the Board;

WHEREAS, as described in the material presented and reviewed by the Board and based on a review of the known facts and circumstances, the Board has determined and confirmed by the November 7th Resolutions that Hugh E. Sawyer is the only current member of the Board that is disinterested with respect to any matter pertaining to the Chapter 11 Case on which an actual conflict exists between TCEH or its direct and indirect subsidiaries, on the one hand, and any other Debtor, on the other hand ("Conflict Matters") and was designated the Disinterested Manager ("Disinterested Manager") as set forth in *Stipulation and Agreed Order Regarding a Protocol for Certain Case Matters,* approved by the Bankruptcy Court on September 16, 2014 ("Stipulation");

WHEREAS, the members of the Board considered the Stipulation related to, among other things, the authority of the Disinterested Manager to retain independent legal counsel and other advisors under certain circumstances;

WHEREAS, the Board resolved by the November 7th Resolutions to delegate the authority to the Disinterested Manager to seek and retain, at TCEH's sole expense, independent legal counsel and such other advisors ("Independent Advisors") as the Disinterested Manager deems necessary to represent and advise TCEH, reporting to the Disinterested Manager, on the Conflict Matters;

WHEREAS, the Disinterested Manager interviewed and engaged certain Independent Advisors effective as of November 16, 2014 to represent and advise TCEH, and reporting solely to the Disinterested Manager, as set forth herein; and

WHEREAS, pursuant to the Stipulation and Section 3.11(b) of the Fourth Amended and Restated Limited Liability Company Agreement of TCEH, the members of the Board desire to delegate to the Disinterested Manager certain rights, authority, and powers in connection with Conflict Matters, among other matters set forth herein;

NOW, THEREFORE, BE IT,

RESOLVED that, to the fullest extent permitted by applicable law, the Board hereby delegates to the Disinterested Manager the authority to review and act upon (as set forth herein) any Conflict Matters; and further

RESOLVED that, to the fullest extent permitted by applicable law, the Board hereby delegates to the Disinterested Manager the authority to investigate and determine whether any matter constitutes a Conflict Matter, in the exercise of his business judgment and with the advice of the Independent Advisors, and any such determination shall be binding on TCEH and TCEH's subsidiaries; and further

RESOLVED that, to the fullest extent permitted by applicable law, the Board hereby delegates to the Disinterested Manager the authority to make all decisions, and to implement or direct the implementation of all such decisions, in each case on TCEH's behalf, with respect to Conflict Matters as the Disinterested Manager deems appropriate, in the exercise of his business judgment and with the advice of the Independent Advisors or others with whom the Disinterested Manager determines it is appropriate or necessary to consult, and to act on behalf of and bind TCEH in connection therewith, including taking action on TCEH's behalf, as the direct and indirect holder of 100% of the equity interests in its subsidiaries, causing its subsidiaries to abide by and implement the decisions and actions of the Disinterested Manager with respect to Conflict Matters and the Disinterested Manager's determination of whether a matter constitutes a Conflict Matter; and further

RESOLVED that the Disinterested Manager will update the Board at board meetings on the status of his or her (i) review of and decisions on whether any matter constitutes a Conflict Matter, and (ii) review of and decisions on Conflict Matters, in each case in the manner that the Disinterested Manager determines is appropriate and necessary to fulfill his or her duties and obligations as the Disinterested Manager, taking into account the confidentiality or privilege of the Disinterested Manager's work and the advice of the Independent Advisors; and further

RESOLVED that TCEH shall, as the direct and indirect holder of 100% of the equity interests in its subsidiaries, direct and cause each of its subsidiaries to abide by and comply with these resolutions; and further

RESOLVED that the officers, employees, advisors and agents of TCEH (collectively, the "Authorized Persons"), acting alone or with one or more other Authorized Persons, be, and hereby are, directed to furnish to the Disinterested Manager and the Independent Advisors all information as the Disinterested Manager or the Independent Advisors may request, in a manner that shall not effect a waiver of any applicable privilege, and to cooperate with the Disinterested Manager and the Independent Advisors in all respects; and further

RESOLVED that any Authorized Person, acting alone or with one or more other Authorized Persons be, and hereby are, authorized, empowered and directed to implement any decision made by the Disinterested Manager in respect of a Conflict Matter on behalf of TCEH as directed by the Disinterested Manager; provided that the Disinterested Manager retains the right to implement any such decision on behalf of TCEH and its subsidiaries himself or through the Independent Advisors; and further

RESOLVED that any Authorized Person, acting alone or with one or more other Authorized Persons be, and they hereby are, authorized, empowered and directed to take any and all action that they deem necessary or proper to assist the Disinterested Manager in carrying out the foregoing, in each case as requested by and under the direction of the Disinterested Manager; and further

RESOLVED that the Disinterested Manager shall control any attorney-client, work product, or other privilege belonging to TCEH in connection with the Independent Advisors or their work or privileged communications on the Conflict Matters and on whether any matter constitutes a Conflict Matter; and further

RESOLVED that each member of the Board has agreed and hereby agrees that he or she shall not have access to, and shall not seek access to, and hereby directs that each Authorized Person shall not have access to and shall not seek access to, the work or privileged material of the Independent Advisors on the Conflict Matters or on whether any matter constitutes a Conflict Matter, except as permitted by the Disinterested Manager; and further

RESOLVED that the Disinterested Manager be, and hereby is, authorized to take all such further action, at TCEH's expense, as the Disinterested Manager shall deem necessary, proper or advisable consistent with these resolutions or in order to carry out fully the intent and purposes of these resolutions; and further

RESOLVED that all actions previously done or approved, or caused to be done or approved, by the Disinterested Manager or the Authorized Persons, including the retention of Independent Advisors, in each case only to the extent consistent with these resolutions, or to otherwise carry out the intent of these resolutions, be and hereby are approved, adopted, confirmed and ratified in all respects.

# ENERGY FUTURE COMPETITIVE HOLDINGS COMPANY LLC ("EFCH")
## BOARD OF MANAGERS RESOLUTIONS
### NOVEMBER 7, 2014

WHEREAS, Energy Future Holdings Corp. ("EFH Corp.") and certain of its direct and indirect subsidiaries (excluding Oncor Electric Delivery Holdings Company LLC and its subsidiaries) (the "Debtors") on April 29, 2014, filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Chapter 11 Case") in the Bankruptcy Court for the District of Delaware (the "Bankruptcy Court");

WHEREAS, the members of the Board have acknowledged that the material facts relating to the relationships or interests of other members of the Board with other affiliated or related companies and other material relationships have been disclosed to them or are otherwise known to them, as contemplated by Section 144 of the Delaware General Corporation Law (the "DGCL") or the governing documents of EFCH, to the extent applicable;

WHEREAS, as described in the material presented and reviewed by the Board and based on the known facts and circumstances, Hugh E. Sawyer as the member of the Board that is disinterested (within the meaning of Section 144 of the DGCL or the governing documents of EFCH, to the extent applicable) (the "Disinterested Manager");

WHEREAS, the members of the Board of Managers of EFCH (the "Board") considered the *Stipulation and Agreed Order Regarding a Protocol for Certain Case Matters*, approved by the Bankruptcy Court on September 16, 2014, concerning, among other things, the ability of the Disinterested Manager to retain independent counsel and other advisors for EFCH under certain circumstances; and

WHEREAS, the members of the Board desires to delegate certain authority to the Disinterested Manager.

NOW, THEREFORE, BE IT,

RESOLVED that the Board hereby determines that Hugh E. Sawyer as a member of the Board is currently disinterested (within the meaning of Section 144 of the DGCL or the governing documents of EFCH, to the extent applicable) with respect to the Conflict Matters (as defined below); and further

RESOLVED that the Board hereby delegates authority to the Disinterested Manager to engage independent legal counsel and such other advisors as he deems necessary to represent and advise EFCH, reporting to the Disinterested Manager, on matters pertaining to the Chapter 11 Case on which a conflict exists between EFCH and any other Debtor (the "Conflict Matters"); and further

RESOLVED that the Board hereby requests that the Disinterested Manager review Conflict Matters identified by the Disinterested Manager (and his advisors) and make such recommendations to the Board as the Disinterested Manager deems appropriate, in the exercise of his business judgment and with the advice of independent legal counsel and other applicable advisors; and further

RESOLVED, that any officers of EFCH (collectively, the "Authorized Officers"), acting alone or with one or more other Authorized Officers be, and they hereby are, authorized, empowered and directed to take any and all action that they deem necessary or proper to assist the Disinterested Manager in carrying out the foregoing.

**ENERGY FUTURE COMPETITIVE HOLDINGS COMPANY LLC ("EFCH")**
**BOARD OF MANAGERS RESOLUTIONS**
**DECEMBER 9, 2014**

The following recitals and resolutions supplement the Board of Managers Resolutions dated as of November 7, 2014 ("November 7th Resolutions") and, in the event of any inconsistency, these resolutions shall supersede and control.

WHEREAS, Energy Future Holdings Corp. ("EFH Corp.") and certain of its direct and indirect subsidiaries (excluding Oncor Electric Delivery Holdings Company LLC and its subsidiaries), including EFCH (the "Debtors") on April 29, 2014, filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code ("Chapter 11 Case") in the Bankruptcy Court for the District of Delaware ("Bankruptcy Court");

WHEREAS, the members of the Board of Managers of EFCH ("Board") having relationships or interests with other affiliated or related companies and their direct or indirect equity holders and other material relationships have disclosed certain facts that they believe to be material to the Board;

WHEREAS, as described in the material presented and reviewed by the Board and based on a review of the known facts and circumstances, the Board has determined and confirmed by the November 7th Resolutions that Hugh E. Sawyer is the only current member of the Board that is disinterested with respect to any matter pertaining to the Chapter 11 Case on which an actual conflict exists between EFCH or its direct and indirect subsidiaries, on the one hand, and any other Debtor, on the other hand ("Conflict Matters") and was designated the Disinterested Manager ("Disinterested Manager") as set forth in *Stipulation and Agreed Order Regarding a Protocol for Certain Case Matters*, approved by the Bankruptcy Court on September 16, 2014 ("Stipulation");

WHEREAS, the members of the Board considered the Stipulation related to, among other things, the authority of the Disinterested Manager to retain independent legal counsel and other advisors under certain circumstances;

WHEREAS, the Board resolved by the November 7th Resolutions to delegate the authority to the Disinterested Manager to seek and retain, at EFCH's sole expense, independent legal counsel and such other advisors ("Independent Advisors") as the Disinterested Manager deems necessary to represent and advise EFCH, reporting to the Disinterested Manager, on the Conflict Matters;

WHEREAS, the Disinterested Manager interviewed and engaged certain Independent Advisors effective as of November 16, 2014 to represent and advise EFCH, and reporting solely to the Disinterested Manager, as set forth herein; and

WHEREAS, pursuant to the Stipulation and Section 2.1(h) of the Limited Liability Company Agreement of EFCH, the members of the Board desire to delegate to the Disinterested Manager, who shall constitute a committee thereunder, certain rights, authority, and powers in connection with Conflict Matters, among other matters set forth herein;

NOW, THEREFORE, BE IT,

RESOLVED that, to the fullest extent permitted by applicable law, the Board hereby delegates to the Disinterested Manager the authority to review and act upon (as set forth herein) any Conflict Matters; and further

RESOLVED that, to the fullest extent permitted by applicable law, the Board hereby delegates to the Disinterested Manager the authority to investigate and determine whether any matter constitutes a Conflict Matter, in the exercise of his business judgment and with the advice of the Independent Advisors, and any such determination shall be binding on EFCH and EFCH's subsidiaries (other than

Texas Competitive Electric Holdings Company LLC ("TCEH") and TCEH's direct and indirect subsidiaries); and further

RESOLVED that, to the fullest extent permitted by applicable law, the Board hereby delegates to the Disinterested Manager the authority to make all decisions, and to implement or direct the implementation of all such decisions, in each case on EFCH's behalf, with respect to Conflict Matters as the Disinterested Manager deems appropriate, in the exercise of his business judgment and with the advice of the Independent Advisors or others with whom the Disinterested Manager determines it is appropriate or necessary to consult, and to act on behalf of and bind EFCH in connection therewith, including taking action on EFCH's behalf, as the direct and indirect holder of 100% of the equity interests in its subsidiaries, causing its subsidiaries (other than TCEH and TCEH's direct and indirect subsidiaries) to abide by and implement the decisions and actions of the Disinterested Manager with respect to Conflict Matters and the Disinterested Manager's determination of whether a matter constitutes a Conflict Matter; and further

RESOLVED that the Disinterested Manager will update the Board at board meetings on the status of his or her (i) review of and decisions on whether any matter constitutes a Conflict Matter, and (ii) review of and decisions on Conflict Matters, in each case in the manner that the Disinterested Manager determines is appropriate and necessary to fulfill his or her duties and obligations as the Disinterested Manager, taking into account the confidentiality or privilege of the Disinterested Manager's work and the advice of the Independent Advisors; and further

RESOLVED that EFCH shall, as the direct and indirect holder of 100% of the equity interests in its subsidiaries, direct and cause each of its subsidiaries (other than TCEH and TCEH's direct and indirect subsidiaries) to abide by and comply with these resolutions; and further

RESOLVED that the officers, employees, advisors and agents of EFCH (collectively, the "Authorized Persons"), acting alone or with one or more other Authorized Persons, be, and hereby are, directed to furnish to the Disinterested Manager and the Independent Advisors all information as the Disinterested Manager or the Independent Advisors may request, in a manner that shall not effect a waiver of any applicable privilege, and to cooperate with the Disinterested Manager and the Independent Advisors in all respects; and further

RESOLVED that any Authorized Person, acting alone or with one or more other Authorized Persons be, and hereby are, authorized, empowered and directed to implement any decision made by the Disinterested Manager in respect of a Conflict Matter on behalf of EFCH as directed by the Disinterested Manager; provided that the Disinterested Manager retains the right to implement any such decision on behalf of EFCH and its subsidiaries (other than TCEH and TCEH's direct and indirect subsidiaries) himself or through the Independent Advisors; and further

RESOLVED that any Authorized Person, acting alone or with one or more other Authorized Persons be, and they hereby are, authorized, empowered and directed to take any and all action that they deem necessary or proper to assist the Disinterested Manager in carrying out the foregoing, in each case as requested by and under the direction of the Disinterested Manager; and further

RESOLVED that the Disinterested Manager shall control any attorney-client, work product, or other privilege belonging to EFCH in connection with the Independent Advisors or their work or privileged communications on the Conflict Matters and on whether any matter constitutes a Conflict Matter; and further

RESOLVED that each member of the Board has agreed and hereby agrees that he or she shall not have access to, and shall not seek access to, and hereby directs that each Authorized Person shall not have access to and shall not seek access to, the work or privileged material of the Independent Advisors on the Conflict Matters or on whether any matter constitutes a Conflict Matter, except as permitted by the Disinterested Manager; and further

RESOLVED that the Disinterested Manager be, and hereby is, authorized to take all such further action, at EFCH's expense, as the Disinterested Manager shall deem necessary, proper or advisable consistent with these resolutions or in order to carry out fully the intent and purposes of these resolutions; and further

RESOLVED that all actions previously done or approved, or caused to be done or approved, by the Disinterested Manager or the Authorized Persons, including the retention of Independent Advisors, in each case only to the extent consistent with these resolutions, or to otherwise carry out the intent of these resolutions, be and hereby are approved, adopted, confirmed and ratified in all respects.