Page 1

1   UNITED STATES BANKRUPTCY COURT

2   DISTRICT OF DELAWARE

3

4

5   In re:                          :

                                    :   Chapter 11

6   ENERGY FUTURE HOLDINGS          :

    CORP., et al.,                  :   Case No. 14-10979(CSS)

7                                   :

            Debtors.                :   (Jointly Administered)

8   _____ :

9

10

11                              United States Bankruptcy Court

12                              824 North Market Street

13                              Wilmington, Delaware

14

15

16                              December 18, 2014

17                              910343 AM - 11:35 AM

18

19

20

21   B E F O R E :

22   HON CHRISTOPHER S. SONTCHI

23   U.S. BANKRUPTCY JUDGE

24

25   ECR OPERATOR:  LESLIE MURIN

Page 2

1    HEARING re Declaration of Disinterestedness of

2    PriceaterhouseCoopers LLP Pursuant to the Order Authorizing

3    the Retention and Compensation of Certain Professionals

4    Utilized in the Ordinary Course of Business [D.I. 2478;

5    filed October 16, 2014]

6

7    HEARING re Motion for Relief from Automatic Stay Under 11

8    U.S.C. §362 filed by Miguel Oliveras Caraballo [D.I. 2547;

9    filed October 24, 2014]

10

11   HEARING re Motion to File Claim after claims Bar Date filed

12   by DeAnna Edwards [D.I. 2571; filed October 27, 2014]

13

14   HEARING re Motion of Pallas Realty Advisors, Inc. for Entry

15   of an Order Extending the Deadline to File Proof of Claim,

16   or Alternatively Allowing Late-Filed Proof of Claim [D.I.

17   2602; filed October 28, 2014]

18

19   HEARING re Motion of Energy Future Holdings Corp., et al.,

20   for Entry of an Order Authorizing Luminant Generation

21   Company LLC to Reject a Water Contract with Tarrant Regional

22   Water District, Effective Nunc Pro Tunc to the Petition Date

23   [D.I. 2662; filed October 30, 2014]

24

25   HEARING re Motion of energy Future Holdings Corp., et al.,

1    for Entry of an Order (A) Waiving Certain Requirements of

2    Bankruptcy Rule 3007 and Local Bankruptcy Rules 3007-1 and

3    3007-2 and (B) Approving the Debtors' Form of Custom Notice

4    [D.I. 2849; filed November 21, 2014]

5

6    HEARING re Motion of Allen Shrode for Relief from the

7    Automatic Stay Pursuant to 11 U.S.C. §362(d) [D.I. 2896;

8    filed November 26, 2014]

9

10   HEARING re Motion of Official Committee of Unsecured

11   Creditors for an Order Regarding Creditor Access to

12   Information and Setting and Fixing Creditor Information

13   Sharing Procedures and Protocols Under 11 U.S.C. §§ 105(a),

14   107(b), and 1102(b)(3)(a) [D.I. 2361; filed October 9, 2014]

15

16   HEARING re Debtors' First Omnibus (Non-Substantive)

17   Objection to (Amended and Supersedes, Exact Duplicate, and

18   Insufficient Documentation) Claims Pursuant to Section

19   502(b) of the Bankruptcy Code, Bankruptcy Rules 3001, 3003,

20   and 3007, and Local Bankruptcy Rule 3007-1 [D.I 2808, filed

21   November 18, 2014]

22

23   HEARING re Motion of Energy Future Holdings Corp., et al.,

24   for an Order (A) Authorizing Entry into and Performance

25   Under the Settlement Agreement Between Certain of the

Page 4

1   Debtors and Sierra Club Pursuant to Section 363(b) of the

2   Bankruptcy Code and Rule 9019 of the Federal Rules of

3   Bankruptcy Procedures and (B) Modifying the automatic Stay

4   [D.I 2865; filed November 24, 2014]

5

6   HEARING re Motion of energy Future Holdings Corp., et al.,

7   for Entry of an Order Authorizing the KPMG Debtors and KPMG

8   Debtors in Possession to Expand the Retention and Employment

9   of KPMG LLP as Bankruptcy Accounting and Tax Advisors

10  Effective Nunc Pro Tunc to August 1, 2014 [D.I. 2892; filed

11  November 25, 2014]

12

13  HEARING re Motion of Energy Future Holdings Corp., et al.,

14  for entry of an Order Authorizing the Debtors to Settle and

15  Pay Prepetition Property Taxes [D.I. 2894; filed November

16  25, 2014]

17

18  HEARING re Application of the Official Committee of TCEH

19  Unsecured Creditors for Entry of an Order Authorizing the

20  Employment and Retention of Charles River Associates

21  Effective as of August 4, 2014 [D.I. 2900; filed November

22  26, 2014]

23

24  HEARING re Motion of Energy Future Holdings Corp., et al.,

25  for Entry of an Order approving the 2015 Compensation

1    Programs [D.I. 2852; filed November 22, 2014]

2

3    HEARING re Motion of Energy Future Holdings Corp., et al.,

4    for Entry of an order Authorizing the debtors to File Under

5    Seal the Certain Portions of Commercially Sensitive

6    Information Set Forth in the Debtors' Motion for Entry of an

7    Order approving the 2015 Compensation Program [D.I. 2855;

8    filed November 22, 2014]

9

10   HEARING re Stipulation and Order Appointing a Fee Committee

11   [D.I. 1896; filed August 21, 2014]

12

13

14

15

16

17

18

19

20

21

22

23

24

25   Transcribed by:  Dawn South

1   A P P E A R A N C E S :

2   KIRKLAND & ELLIS

3        Attorneys for the Debtors

4

5   BY:  EDWARD SASSOWER, ESQ.

6        BRIAN SCHARTZ, ESQ.

7

8   RICHARDS, LAYTON & FINGERS

9        Attorney for the Debtors

10

11  BY:  DANIEL J. DEFRANCESCHI, ESQ.

12       JASON  M. MADRON, ESQ.

13

14  UNITED STATES DEPARTMENT OF JUSTICE

15       Attorneys for the U.S. Trustee

16

17  BY:  RICHARD L. SCHEPACARTER, ESQ.

18       ANDREA SCHWARTZ, ESQ. (TELEPHONIC)

19

20  SHEARMAN & STERLING

21       Attorney for Duetsche Bank AG New York Branch

22

23  BY:  NED S. SCHODEK, ESQ.

24

25

1   POTTER ANDERSON & CORROON LLP

2        Attorney for Deutsche Bank AG New York Branch

3

4   BY:  R. STEPHEN MCNEILL, ESQ.

5

6   ROPES & GRAY LLP

7        Attorneys for CSC Trust Company of Delaware

8

9   BY:  ANDREW DEVORE, ESQ.

10

11  COLE SCHOTZ MEISEL FORMAN & LEONARD, PA

12        Attorney for CSC Trust Company of Delaware

13

14  BY:  DAVID W. GIATTINO, ESQ.

15

16

17  POLSINELLI

18        Attorneys for the Committee

19

20  BY:  CHRIS WARD, ESQ.

21        JUSTIN K. EDELSON, ESQ.

22

23

24

25

1   MORRISON & FOERSTER

2        Attorney for the Committee

3

4   BY:  LORENZO MARINUZZI, ESQ.

5

6   KLEHR HARRISON HARVY BRANZBURG LLP

7        Attorney for UMB Bank, Indenture Trust

8

9   BY:  RAYMOND H. LEMISCH, ESQ.

10  FOX ROTHSCHILD

11       Attorney for TECH Unsecured Ad Hoc Group

12

13  BY:  L. JOHN BIRD, ESQ.

14

15  ASHBY & GEDDES

16       Attorney for WSFS, Trustee

17

18  BY:  WILLIAM P. BOWDEN, ESQ.

19

20  PHILLIPS GOLDMAN & SPENCE

21       Attorney for the Fee Committee

22

23  BY:  AARON C. BAKER, ESQ.

24

25

1   GODFREY KAHN, S.C.

2         Attorney for the Fee Committee

3

4   BY:   KATHERINE STANDLER, ESQ.

5         RICHARD GITLIN, ESQ. (TELEPHONIC)

6

7   MONTGOMERY MCCRACKEN WALKER & RHOADS, LLP

8         Attorney for WSFS

9

10   BY:   NATALIE RAMSEY, ESQ.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                     P R O C E E D I N G S
 2              THE CLERK:  All rise.
 3              THE COURT:  Please be seated.  Good morning.
 4              MR. SASSOWER:  Good morning, Your Honor, and happy
 5      holidays.
 6              THE COURT:  Same to you.
 7              MR. SASSOWER:  For the record Edward Sassower of
 8      Kirkland & Ellis on behalf of the debtors.
 9              Your Honor, as you know the debtors have either
10      adjourned or resolved the items that were previously
11      scheduled to be heard on today's omnibus hearing agenda.
12      Those items included the debtors' 2015 compensation motion,
13      which Your Honor approved yesterday via certificate of
14      counsel, and we very much appreciate that.  You saved us the
15      time and expense of flying in the many witnesses, so thank
16      you.
17              THE COURT:  You're welcome.
18              MR. SASSOWER:  As a result the only item left on
19      today's agenda is the status conference on professional
20      fees, but before we turn to that I would like to provide
21      Your Honor with a brief status report on the debtors'
22      progress since we were last in court 28 days ago on
23      November 20th.
24              THE COURT:  Okay.
25              MR. SASSOWER:  The first update is with respect to
```

1    conflict matters advisors.

2           As I noted at the November 20th hearing the

3    disinterested directors at each of EFH, EFIH, EFCH, and TCEH

4    have selected competent mattered counsel to represent their

5    representative estates.  Again it was Proskauer as counsel

6    to EFH, Munger, Tolles as counsel to EFCH and TCEH, and

7    Cravath as counsel to EFIH.  TCEH also retained Greenhill &

8    Company as conflict matters financial advisor.

9           Since the last hearing EFIH has selected Gold &

10   Associates as its conflict matters financial advisor, and

11   EFH is in the process of reviewing conflict matters

12   financial advisors as well.

13          Each of the conflict matter law firms filed their

14   retention applications earlier this week to be heard at the

15   January 13th hearing, and I'd like to highlight for Your

16   Honor the respective board resolutions that are attached to

17   those retention applications as exhibits.

18          The board resolutions, which the boards of EFH,

19   EFIH, EFCH, and TCEH adopted on December 9th grant the

20   disinterested directors at each estate the authority to

21   determine, in consultation with their respective conflict

22   matters advisors, whether a particular matter constitutes an

23   actual conflict matter and then to act upon any such actual

24   conflict matter.

25          Over the past month the debtors and their advisors

1    have invested considerable time and effort providing the

2    conflict matters advisors with diligence regarding all

3    aspects of the case and we will continue to do so to get

4    them up to speed as quickly as possible.  I

5              'd also like to give Your Honor an update on the

6    debtors' ongoing settlement efforts.

7              In Your Honor's ruling on the debtors' bidding

8    procedures motion Your Honor encouraged the constituencies

9    to begin plan negotiations as soon as possible, and to that

10   end, and as I noted at the last hearing, the debtors on

11   November 19th had had a global settlement conference with

12   the professionals for the TCEH creditors and the EFIH and

13   EFH creditors.

14             Since that time the debtors have held two more

15   global settlement conferences with the T side professionals

16   and two more global settlement conferences with the E side

17   professionals.

18             At this time we believe it's more productive to

19   hold separate settlement discussions with the TCEH creditors

20   and the EFIH and EFH creditors.  But as the discussions

21   progress we hope to marry these discussions.

22             These global settlement conferences have spurred

23   countless one-off discussions between the debtors and

24   various creditor groups as well as discussions amongst the

25   various creditor groups themselves, not including the

1   debtors, regarding potential plan alternatives and the

2   bidding procedures.  And while the independent counsel

3   conflict matters counsels are conducting their diligence the

4   debtors are continuing to discuss the revised bidding

5   procedures order with the official committees.

6           As with my last update on settlement discussions I

7   will not disclose anything that was said at the meetings or

8   even try to characterize the meetings, which are fully

9   covered by 408 and confidentiality.  As I noted at the last

10  hearing we want people to speak freely at these meetings and

11  we know that they're not going to do so if they're concerned

12  that we quote facts that they said to us in that meeting in

13  the courtroom.

14          Your Honor, the debtors remain concerned about the

15  passage of time.  The debtors' maximum statutory create of

16  exclusivity expires on October 29th, 2015 and the

17  corresponding deadline to solicit votes on a plan expires on

18  December 29th, 2015.  And while that seems like a long ways

19  away for a case of this size we both know that's not a lot

20  of time.

21          The debtors do not want to complicate this already

22  complex restructuring with a completing -- a competing plan

23  dynamic, and we've been talking to the various creditors and

24  committees about that point.

25          Last, Your Honor, there are several updates on the

1    make-whole is interest rate fund.

2         With respect to the EFIH first liens discovery is

3    ongoing and the make-whole trial is scheduled for March 25th

4    through March 27th.

5         With respect to the EFIH second liens, EFIH filed a

6    motion on December 1st seeking leave to file an amended

7    answer to the EFIH second lien make-whole complaint, the

8    amended answer seeks to among other things resolve the EFIH

9    second lien make-whole claims as expeditiously as possible.

10         And with respect to the EFIH --

11         THE COURT:  I'm sorry, is that motion before me?

12         MR. SASSOWER:  The -- yes, it is.  Not today.  Not

13    today.

14         THE COURT:  No, but has it been submitted?

15         MR. SASSOWER:  Yes.  Yeah, it had been submitted.

16         THE COURT:  Do you know when that --

17         MR. SASSOWER:  It was on -- it was filed on

18    December 1st.

19         THE COURT:  But is the briefing complete?

20         MR. SASSOWER:  No.  It's not complete.  No, it's

21    not.

22         THE COURT:  All right.  So I don't have it under --

23         MR. SASSOWER:  Correct.

24         THE COURT:  -- advisement.

25         MR. SASSOWER:  Correct.  I'm just foreshadowing --

1           THE COURT:  Okay.

2           MR. SASSOWER:  -- what's to come.

3           THE COURT:  I just was wondering if you were gently

4    reminding me to do my job.

5           MR. SASSOWER:  No, I was not.  I would never remind

6    you gently or otherwise.

7           THE COURT:  All right.

8           MR. SASSOWER:  And with respect to the EFIH PIC

9    notes, the unsecured notes, the indenture trustee for these

10   notes filed a proof of claim on October 23rd to recover

11   principal make-whole interest and any other amounts owing

12   under the notes, and on Tuesday EFIH filed a declaratory

13   action seeking to disallow the EFHI PIC's claims on the

14   interest.

15           Now that's again not before you, that was just

16   filed, but I just wanted to let you know that that

17   litigation is getting started as well.

18           THE COURT:  We saw that.

19           MR. SASSOWER:  Thank you.

20           And then the last thing to just update you is that

21   the discovery efforts are continuing as well.  We're

22   basically producing over 25,000 pages per week and so we're

23   working as hard as we can to produce as much as we can as

24   fast as we can.

25           And with that unless Your Honor has any questions I

1   defer to Your Honor on the status conference regarding fees.

2          THE COURT:  All right.  Before I do that does

3   anyone else have anything they'd like to say to the Court?

4          Mr. Schepacarter?  Good morning.

5          MR. SCHEPACARTER:  Good morning, Your Honor.  Thank

6   you.  For the record Richard Schepacarter for the United

7   States Trustee.

8          I just wanted to address a counsel points, mostly

9   with respect to the 2015 compensation motion.

10          Today I'm joined by Ms. Andrea Schwartz, she could

11   not be here today, but she's participating via CourtCall.

12   She's celebrating Hanukkah, the holiday with her family.

13          As the Court is aware, Your Honor, we didn't file

14   an objection this time to the -- this motion, the 2015

15   compensation motion, and although we had not filed an

16   objection we still took a comprehensive extensive review of

17   the -- of the compensation programs that were presented in

18   the motion.

19          As Your Honor would know that this motion was --

20   previously there were are two motions that were filed and

21   they were filed at different times.  This was basically one

22   motion that was filed encompassing all of the compensation

23   programs for the year going forward.

24          As Your Honor notes that if we have an issue with

25   it we will file an objection, but in this instance we were

1    unable -- not unable -- we were -- we didn't have to file an

2    objection at this time.

3         Once the motion was filed we took not only just a

4    comprehensive review but we undertook a what I'll call an

5    all hands meeting -- borrow a term from the fire service --

6    and we had a meeting with all of the people from the

7    debtors' side who most of whom Your Honor is aware of

8    testified previously here as well as a number of analysts

9    from our office, and we're able to after having that meeting

10   able to not only just review the programs but boil down some

11   issues that we thought needed some additional information

12   maybe that the debtors had not described fully in the

13   motion.  And you'll find that that information is set forth

14   in the supplemental declarations that were filed I think as

15   recent as maybe yesterday with respect to this motion as

16   well as a revised form of order.

17        One thing I would want to note is that with respect

18   to the motion that was filed there was a reference to the

19   2015 SPC long-term incentive plan, and as we -- as is noted

20   in the declarations you'll see that that is actually a new

21   plan, it's not just a continuation of the old plan, but it's

22   a new plan with different types of incentive award -- timing

23   of the incentive award payments.  So we were able to sort of

24   drill down on that and get that information to be disclosed

25   as well.

1          The debtors also -- as a result of our efforts the

2     debtors also supplemented the executive compensation

3     consultant declaration, that is the one of Mr. Friske, to

4     opine on why the new plan -- this new plan was reasonable

5     and the basis for his opinion.

6          Also hand in hand with that motion was the sealing

7     motion where the debtors sought to seal certain information,

8     and it was fairly consistent with what the debtors

9     ultimately had done at the end of the last hearing with

10    respect to the sealing, except that they still wanted to

11    seal some information with respect to the declaration that

12    was filed by Mr. Friske.  Eventually we were able to resolve

13    that issue and that declaration went in unredacted.

14         The last point I want to make, Your Honor, is the

15    reservation of rights with respect to the letters of credit.

16         As you'll note that the proposed form of order was

17    revised to reserve for the United States Trustee all further

18    rights concerning the payment of any bonuses to the debtors'

19    executives from funds resulting from prepetition letters of

20    credit and to quote the language directly from the order the

21    order to now states "that all of the rights of the United

22    States Trustee and any other party in interest are expressly

23    reserved with respect to any payment made to SPC members of

24    incentive awards from funds secured by or obtained from any

25    letters of credit."

```
 1              So basically to sum it up, Your Honor, in light of
 2    the supplemental declarations, in light of the unsealed
 3    report from Mr. Friske and the other declarations, and the
 4    Court's prior ruling from the motion from before, the United
 5    States Trustee does not -- did not object to the relief
 6    sought with the 2015 compensation program.
 7              THE COURT:  Thank you.
 8              MR. SCHEPACARTER:  Thank you, Your Honor.
 9              THE COURT:  Anyone else?
10              MR. BAKER:  Your Honor, Aaron Baker from Phillips
11    Goldman & Spence.
12              Nothing on older matters, I rise just to address
13    the status conference for the fee committee.
14              THE COURT:  Okay.
15              MR. BAKERAWOOD:  And with the Court's permission
16    I'd like to permission I'd like to cede the lectern to
17    Katherine Standler of Godfrey Kahn.
18              THE COURT:  Of course.
19              MS. STANDLER:  Thank you, Judge.  Good morning.
20              THE COURT:  Good morning.
21              MS. STANDLER:  As you know the fee committee
22    submitted a status report with a brief outline of its
23    processes so far.  Since we issued reports earlier this week
24    we're already making good progress towards consensual
25    resolutions.  We believe that we will have at least five
```

1    uncontested applications ready for hearing on December 29th.

2            And I'm here to answer any questions you have about

3    the process, timing, or procedure of the fee committee.

4            Richard Gitlin, the fee committee chair and

5    independent member, is appearing by telephone and he would

6    like to make a few remarks.

7            THE COURT:  All right.  Mr. Gitlin?

8            MR. GITLIN:  Good morning, Your Honor.  It's

9    Richard Gitlin of Gitlin & Company at Sherman of the fee

10   committee.

11           Your Honor, thank you for allowing me today to

12   participate by phone.  We have a hearing on the 29th and I

13   will certainly be there in person, but I appreciate very

14   much this courtesy.

15           Let me start by expressing my appreciation to the

16   professionals in the case for their cooperation with the fee

17   committee.  This greatly enhances our ability to be of

18   assistance to the Court.

19           This is a very complicated case with a complicated

20   capital structure and many fee billers, and that cooperation

21   is very significant to us and we very much appreciate it.

22           Your Honor, what we've tried to do as a fee

23   committee is give the professionals some very clear guidance

24   on how we approach the case.  We started by issuing a memo

25   on expenses, a very detailed memo on expenses.  We filed

1   shortly after that with a memo on the fee process itself,

2   and have sent a subsequent memo on the budgeting process.

3   And we've actually accelerated the budget process beyond the

4   trustee rules and asked for monthly budgets in advance,

5   which we find really critical to be able to stay on top of

6   fees in a case of this magnitude.

7           For the first interim, which covers fees from April

8   to August, by November 1st 14 professional firms filed with

9   651 time keepers for approximately $67 million in fees and

10  expenses.

11          (Indiscernible) outlining Your Honor's orders has

12  us providing confidential letters to the professionals by

13  December 30th, and a negotiation period of 30 days, followed

14  by a hearing which would take place in February.  But as

15  many of the professionals here started working in April I

16  mentioned to the Court when I appeared last that the fee

17  committee would be sensitive to those professionals where

18  year-end was important for them, and the Court indicated at

19  the time some sympathy to that position.

20          We have had seven firms ask us for expedited

21  treatment, six for year-end 12/31 and Kirkland & Ellis whose

22  year-end is 1/31.

23          The fee committee met earlier this week, we

24  reviewed extremely detailed reports of our counsel on the

25  fee applications, including exhibits with every time entry

1    that we'd had an objection to or concern about, and each of

2    those was addressed with the question of whether the fees

3    and expenses complied with the laws and the rules and the

4    guidelines.

5           I must say having the fee committee in a case this

6    size adds significant texture to the discussions, because

7    with 651 billers it's so hard to assess the value

8    (indiscernible) and contribution by reviewing so many

9    entries.  But in discussing the letters, by having a

10   representative of the creditors, having a representative of

11   the debtor, and the U.S. Trustee there's been some

12   interaction generally by one of them with the professionals.

13   And the discussion is so much more meaningful in reviewing

14   the applications by having that input.

15          And just one example.  You know, there was a

16   question raised for a significant amount of fees by a senior

17   lawyer in a firm and the review couldn't tell by the entries

18   what the value was of that contribution, it was a little

19   vague, so we were prepared to object to that on substance.

20   But one of the members of the fee committee, which happened

21   to be the U.S. Trustee, had interacted with this particular

22   individual quite extensively and reiterated they add

23   substantiate value to the case, they were very efficient and

24   effective in their time.  So I respond to the fee committee

25   can be addressing basically inadequate description as

1    opposed to substance making an entirely different response

2    to the professional and a better response to the

3    professional.

4         We had I told the six professionals that we would

5    have until December 24th I believe or just before to

6    negotiate with them, and with respect to those who we can

7    reach consensus we'll then file a report with the Court and

8    ask the Court on December 29th to consider those

9    applications.

10        Your Honor, we're fully aware of how this process

11   imposes a burden on the Court, and we insure the Court that

12   we consider those extraordinary circumstances.  We do not

13   intend to ask the Court for this procedure in the future,

14   and with respect to the other professionals in the first

15   interim, expect for Kirkland & Ellis, we'll follow the

16   normal procedure and we will continue to do that in the

17   future.

18        We also would welcome from the Court advice,

19   guidance on our responsibilities.  We're here to be as best

20   assistance to the Court we can and welcome any comments,

21   Your Honor.

22        THE COURT:  Thank you.

23        I asked -- let me just say a few things and then of

24   course this is open to really anyone who wants to have a

25   dialogue.

1           I asked to have everybody together and you here

2       today because communication was confusing from our end, we

3       just weren't understanding exactly what the process was in

4       connection with the immediate issues in front of the Court

5       and what the process would be going forward, and I was

6       concerned with a few things.

7           One of them was sort of hearing (indiscernible),

8       and whether we were going to be having, you know, fee

9       hearings every three weeks or something, or even every month

10      going forward, which would take a lot of time and effort.

11          The other was the burden on the Court and maybe

12      some clarification on what we were expecting both in terms

13      of documents that we would look at as well as assistance

14      from the fee committee.  And I am going to rely very, very

15      heavily on the efforts of the fee committee.  I simply don't

16      have the resources to review the number and size of these

17      fee applications on any kind of schedule that would

18      accommodate the professionals frankly, and would definitely

19      -- and would hold things up.

20          So, I have a couple sort of bullet items we can go

21      through, but those were sort of our main, you know, thrust

22      here is to try to figure out, you know, what it is you need

23      from me and what it is I need from you and so we can work

24      cooperatively together.

25          So, I took some time to go through the various

1    documents, the various orders, and I have a couple comments

2    slash you know statements slash rulings, however you want to

3    -- however you want to talk about it.

4         So the first is -- the first is on hearings, and

5    what we have -- we have the six scheduled -- it sounds like

6    we're going to go forward at least with five -- but we have

7    six scheduled for the end of December.  We are going to need

8    to set a hearing for Kirkland in January.  And then after

9    that we're going to have I guess the consensual hearing on

10   everybody else some time in February.  And then to the

11   extent necessary I think it works out to -- well, I'm not

12   sure what it works out to -- but to the extent we need a

13   contested hearing we would have that, I don't know, in March

14   or so.  And at least in connection with Kirkland and the

15   February consensual hearing I'd like to, if we can, schedule

16   those today so we know what we're looking at.

17        On whether we're going to have a -- need to have a

18   contested hearing on the first interim fee apps I think we

19   can wait to schedule that to see whether we need it.

20   Hopefully we won't.  But if we do we'll schedule it, and

21   when we know what the issues are and how many fee apps, et

22   cetera, we're talking I'll know how much time to set aside.

23   I don't expect to do a contested fee hearing in three hours,

24   I mean it's just not going to happen, but it depends on what

25   the issues are.

1        Going forward what my plan would be for every

2   interim period would be to schedule a consensual hearing

3   ahead of time and then to schedule, to the extent necessary,

4   a contested hearing so we'll have every interim fee period

5   we'll have two hearings.  We'll have a consensual hearing

6   date and we'll have a non-consensual hearing date.

7        And what I need in order to do the two different

8   things, what I'm looking for is in consensual hearings I

9   don't want the fee applications.  What I am going to rely on

10  is a report issued by the fee committee.  I'm going to want

11  a report for every interim fee application.  I know it says

12  discretion in the -- in the fee order, but I'm really going

13  to need a report on the consensual fees.  I don't need the

14  fee applications themselves, and I'm going to rely on the

15  report in my review.

16       Now, if I decide that I need to see Kirkland's fee

17  application we'll call up and have it sent over, and maybe

18  you could coordinate with the debtor as to who exactly is

19  going to do that so I don't get two sets and everybody is

20  speaking to each other.

21       Obviously for anything that's contested I'm going

22  to want the actual application.  Usually we get those a week

23  before the hearing, but given the size and nature of what's

24  going on we would want those at least two weeks prior to the

25  hearing to have an opportunity to put the resources we need

1    to prepare.

2         By the way, a shout out to my staff on really every

3    other case except this one, where they have been doing

4    nothing but reviewing fee applications for the last three

5    weeks, because it's year-end, so if any of you have fee

6    orders in other cases that have been signed, Ms. Werkheiser

7    is here and she'll be accepting donations.

8         (Laughter)

9         THE COURT:  So any way, so yeah, that's the idea.

10   A consensual hearing date, a contested hearing date, once a

11   quarter for each, and then an interim application period for

12   each, and I'm going to rely on the reports in connection

13   with the consent hearings.  Obviously there'll be briefings,

14   you know, an objection in connection with anything contested

15   and we'll actually need the actual hard copies of the fee

16   application.

17        What I just said sort of just correcting myself on

18   quarter I notice there's a -- in the interim comp order says

19   every three months and the fee committee order says every

20   four.  So I'm not sure which it is.  It is ever four?

21        MS. SANDLER:  It's every four.

22        THE COURT:  It's every four months.  So the second

23   interim period expires at the end of December.

24        MS. SANDLER:  Correct.

25        THE COURT:  Okay.  And then what, 45 days to file

1    your fee application and then -- there's a schedule that

2    keys off of that date, right?

3            MS. SANDLER:  Yes.

4            THE COURT:  Okay.

5            MS. SANDLER:  I can walk through that if you'd

6    like.

7            THE COURT:  That's all right, I see it here.  So --

8    right, so I just -- so -- yeah, the period -- well let's

9    make sure we're on board.

10           So the period expires -- the period ends

11   December 31, so then the fee apps will be due 45 days, so

12   approximately mid February, and then there's the negotiation

13   -- or the committee report which would be mid April, right?

14           MS. SANDLER:  Correct.

15           THE COURT:  And a 30-day negotiation period which

16   would end mid May with hopefully a consent hearing some time

17   in late May or early June, and then to the extent necessary

18   a contested hearing in June/July.  Okay.  And that'll --

19   that sort of process will repeat itself every four months.

20           MS. SANDLER:  Correct.

21           THE COURT:  Okay.  Monthly fee apps, are they being

22   filed?

23           MS. SANDLER:  Yes, they are being filed.

24           For the first interim fee period, which obviously

25   encompassed April, May, June, July, August, and the fee

1   committee counsel was appointed in September, so there was a

2   huge backlog, and so what we decided to do given that the

3   first interim fee period had ended and we knew the reports

4   -- or the applications would be coming in is we elected to

5   do a preliminary high level review of monthly fee statements

6   with particular attention to expenses because those are

7   reimbursed at 100 percent and provide professionals with a

8   letter of no objection in most cases if we did not -- we as

9   the fee committee -- the fee committee didn't have an

10   objection to payment pursuant to the monthly compensation

11   procedures.  And that has been proceeding at pace with most

12   professionals I believe pretty current now on their 80

13   percent payments pursuant to the monthly compensation order.

14           Once we get through the backlog and finish the

15   first interim compensation period we will readdress with the

16   fee committee whether they want to change the approach to

17   monthly fee statements or not.

18           At this moment it appears that the 80 percent

19   payments, 20 percent holdback, has been more than adequate

20   to cover any issues that we've identified and potentially

21   could raise with a professional.  So we have no concerns at

22   the moment that we would end up in a disgorgement situation.

23   If that changes as the case progresses, we have new

24   professionals joining --

25           THE COURT:  Daily.

1          MS. SANDLER:  -- as Mr. Sassower said daily, we'll

2     keep an eye on that, we will continue to review the monthly

3     statements, and if we start to think that there's an issue

4     with that we may change or the committee may change its

5     approach to monthly statements.

6          But at the moment we're looking at the expenses,

7     we're deferring a detailed analysis of the fees requested

8     and the monthlies 'til the interim compensation phase, and I

9     think that process is working pretty well for everybody.

10         THE COURT:  Okay.  I'm glad you mentioned expenses

11    again, and I was going say this and I forgot.  I'm

12    particularly happy to know that you're putting a real fine

13    toothcomb on expenses.  In my experience that's generally

14    where the mischief is, and it's important to keep an eye on

15    expenses, so I'm glad you're doing that, because there's --

16    well they can be problematic.

17         MS. SANDLER:  Yes.  I think the professionals who

18    have received reports from the fee committee will

19    corroborate that they are being examined carefully.

20         THE COURT:  Okay.  I'm not suggesting that it's

21    necessary or unnecessary, I'm simply asking, is there any

22    plans or thoughts to add the representative from what we've

23    been perhaps inaccurately calling the E side committee or

24    the new official committee of unsecured creditors to the fee

25    committee?

1          MS. SANDLER:  There have been discussions, and I

2     think it's probably best to have Mr. Gitlin address that

3     question.  Richard, do you want to --

4          MR. GITLIN:  Sure.

5          MS. SANDLER:  Yeah, thanks.

6          MR. GITLIN:  Sure.  Thank you.

7          Your Honor, we discussed that at length at the fee

8     committee, and we met with the counsel for the new committee

9     and to try to do the same process we did with the people who

10    had been appointed before to explain the process what we're

11    doing to make sure they were as informed about the fee

12    committee process as those who had been previously retained,

13    and we discussed the question of a new member to the fee

14    committee.

15          We suggested that we'd probably prefer one creditor

16    representative representing all creditors, and it turns out

17    that Peter Cravets (ph) who's on the fee committee is -- was

18    acting for a creditor that had claims pretty much across the

19    board of this corporate structure, and the creditors'

20    representatives seemed to know Peter and be comfortable with

21    them, and we asked them if they would support just one fee

22    committee representative because we were concerned adding

23    more representatives to the fee committee would not enhance

24    the process, it might just take it backwards.

25          And they ended up comfortable with that position

1    and I believe after a considerable amount of thought the

2    U.S. Trustee ended up comfortable with that position.

3              So I believe we're all comfortable now subject to

4    Your Honor's views of having Peter Cravets instead of a

5    representative of a particular creditors' committee just

6    represent all creditors.

7              THE COURT:  All right.  Mr. Schepacarter would like

8    to say something on that.

9              MR. SCHEPACARTER:  For the record Richard

10   Schepacarter for if United States Trustee.

11             Mr. Gitlin fairly correctly describes the -- you

12   know, what went through with respect to the fee committee;

13   however, the U.S. Trustee has not -- these are colloquial

14   terms -- signed off on that -- that issue yet, so we still

15   have that under advisement and we're still in discussions

16   with members of the committee on that.  I'll just leave it

17   at that.

18             Thank you, Your Honor.

19             THE COURT:  Okay.

20             MR. GLUECKSTEIN:  If I may on that point, Your

21   Honor.

22             THE COURT:  Yeah.

23             MR. GLUECKSTEIN:  Good morning.  Brian Glueckstein

24   from Sullivan & Cromwell on behalf of the EFH committee.

25             Mr. Gitlin's remarks are correct, we can had made a

1    request initially to add a member to the committee, but we

2    did have the meeting at length Mr. Gitlin described,

3    understood the situation of the creditor representative, the

4    EFH committee has now at this time is comfortable proceeding

5    at Mr. Gitlin's described.

6            THE COURT:  Okay.  Thank you.  And just to be

7    clear, again, I wasn't suggesting a resolution one way or

8    the other, I was more -- it was a informational request.

9    Okay.  Thank you.  That's very helpful.

10           I'm just looking at all my notes, they're kind of

11   all over the place.

12       (Pause)

13           THE COURT:  I think that addresses -- oh, yeah.

14   The other -- the other thing -- the next -- the next thing I

15   want to do is actually schedule the hearings for January and

16   February.  And -- but then the issue is going to be who

17   should the contact person be for Ms. Werkheiser going

18   forward on scheduling fee hearings?  And I don't need an

19   answer right now.  Generally we work with Mr. Madron in

20   connection with scheduling.  We don't have to, I just want

21   to make sure everybody is -- we know who to talk to so that

22   when we get a call, hey, we'd like a February fee hearing we

23   know we only have one contact person, and I assume whoever

24   that contact person is is going to be in communication with

25   the other principals to make sure everybody is sort of on

1   board with whatever is being agreed to by the Court.

2          MS. SANDLER:  I think the fee committee is

3   comfortable with a primary point of contact.  We took to

4   heart Your Honor's statement in September that the fee

5   hearing should be free standing and separate, and so perhaps

6   extrapolated from that that we should arrange the fee

7   hearings.  But we are certainly happy to work with Richards,

8   Layton on the scheduling.

9          THE COURT:  Okay.  So we'll look to communicate

10  directly with you then.

11         MS. SANDLER:  If you would prefer, sure.  I don't

12  want to make it more complicated.  You guys have a system

13  that seems to be working and --

14         THE COURT:  All right.  Why don't you -- I'll tell

15  you what, why we have a discussion offline --

16         MS. SANDLER:  Sure.

17         THE COURT:  -- you can talk about it with Richards

18  and you guys can get Ms. Werkheiser in the loop and you can

19  just figure it out just so we know who to have the

20  conversation with.  It can be either, it doesn't -- since

21  they're free standing and, you know, we might try to nestle

22  them up against omnibus hearings so people don't have to

23  travel twice, but we'll sort of have to play it by ear going

24  forward.  I don't think it's going to be a problem, just so

25  we knew who to talk to.

1            Let's see.  On the reports for uncontested fee

2     hearings, and I know we -- first of all I know we have

3     gotten your initial report and I know I'm going get another

4     report -- an actual report on the fee applications

5     themselves before the 29th, right?

6            MS. SANDLER:  Correct.

7            THE COURT:  Okay.  And I know this is a special

8     circumstance.

9            Going forward I'd like to have them say a week

10    before the hearing so we have -- again, we have an

11    opportunity to prepare.

12           So let's set some hearing dates.

13           MS. SANDLER:  Can I just ask a really quick

14    qualifying --

15           THE COURT:  Yes.

16           THE COURT:  -- clarifying question on the reports?

17           You had said you wanted a report on each

18    uncontested fee application.  Is it Your Honor's preference

19    that there be a free standing report for each professional?

20           THE COURT:  No, no.

21           MS. SANDLER:  Okay.

22           THE COURT:  It can be one report, just as long as

23    it addresses everyone.  Sorry for the confusion.

24           Okay.  Let's set a -- let's start with Kirkland and

25    we'll set a hearing date for them for I guess late January.

1    And that would be the week of the 26th.

2              MR. SASSOWER:  Uh-huh.

3              THE COURT:  Is there anything --

4         (Pause)

5              THE COURT:  Is there anything in particular the

6    parties would be looking for?  I know that you mentioned

7    January 26th in your report, but I think there was a

8    miscommunication as to whether a hearing had been arranged

9    for that day or not.  One had not, but --

10             MS. SANDLER:  Yeah, I think what had happened was I

11   spoke to Ms. (indiscernible) of Kirkland and she had

12   suggested the 27th.  I told her that I personally cannot be

13   here on January 27th because I have a regulatory hearing in

14   another forum, but we have other people that probably could

15   be there, and then she and I discussed the possibility of

16   the 26th as a time that might be a good alternative.  But we

17   never really nailed down what works for everyone.

18             So, I'll defer to others' schedules on that.

19             MR. SASSOWER:  Is there a date that works best for

20   Your Honor?

21             THE COURT:  Let me just look.

22             MR. SASSOWER:  We could make the 26th work or the

23   28th or the 29th.  We don't have --

24             THE COURT:  Actually any date that week -- any --

25   wait a minute.  Not Wednesday the 28th, but any other day

1    that work should work.  Let me double check my second

2    calendar.

3         (Pause)

4            MR. SASSOWER:  If we're thinking between the 26th

5    and the 29th I think we have a preference for the 26th just

6    to make sure that the -- provided the hearing goes well that

7    the --

8            THE COURT:  Sure.

9            MR. SASSOWER:  -- fees come in in time before our

10   fiscal year-ends --

11           THE COURT:  Sure.

12           THE COURT:  -- on January 31st.

13           THE COURT:  I'm sorry, I'm just pulling up a

14   separate calendar.  I have to unfortunately keep two

15   calendars.

16           The 26th is fine.  The only matter I have on is an

17   omnibus at 11:00 in a very inactive case.

18           So really Mr. Gitlin, to the extent he's going to

19   be here, I don't know where -- where are you located,

20   Mr. Gitlin?

21           MR. GITLIN:  I'm in Florida.

22           THE COURT:  Oh.

23           MR. GITLIN:  But I'll be in Connecticut then.  So

24   the 26th is actually a very good date for me if that works

25   for the Court.

1            THE COURT:  All right.  We're going to have all our

2       hearings at your office going until April.

3            (Laughter)

4            MR. GITLIN:  I won't tell you the weather right

5       now.

6            THE COURT:  Oh, please don't.  Okay.  Noon?  Does

7       noon work for everyone?

8            MR. SASSOWER:  Okay.

9            THE COURT:  All right.  And that's just be for

10      Kirkland obviously.

11           MR. SASSOWER:  And we'll do our best to make that

12      hearing consensual, Your Honor.

13           THE COURT:  I'm sure you will.

14           Okay.  Something in February then for everybody

15      else, and I guess that's keyed off a little bit as to when

16      you're -- when you're going to get your report to them to

17      start that negotiation period.  When does that report go?

18           MS. SANDLER:  Those reports are due December 30th.

19           THE COURT:  Okay.

20           MS. SANDLER:  The 30-day negotiation period would

21      then go to January 29th.  And then there's a 15-day window

22      for filing of objections, which goes to February 13th.  Now

23      obviously objections wouldn't go in an uncontested hearing,

24      but I would consider February 13th to be the end of the

25      reporting phase.

1          THE COURT:  Okay.

2          MS. SANDLER:  And then we could have a hearing any

3  time after that.

4          THE COURT:  Well we have an omnibus on January --

5  no, I'm in January, I'm in the wrong month.  Excuse me.  So

6  the 13th is a Friday and then the next Monday is a federal

7  holiday.

8          MR. SASSOWER:  Right, the omnibus is February 10th.

9          THE COURT:  Okay.  So that won't work.  And I'm

10  away the week of the 23rd.  So it would need to be the 17,

11  18, 19th, or 20th would be best, and I don't want anybody to

12  get an idea that I always have all this time available, it's

13  just the further you go out the more likely you are to get

14  something you like.  Oh, dear.  Any time --

15          MR. GITLIN:  Your Honor, that week -- it's Richard

16  Gitlin.  That week I know we scheduled a meeting of our

17  committee -- fee committee for the 18th.  So I wonder

18  whether we could, if it'd fit your calendar, to do it the

19  17th or the 19th so we could have it two days together.

20          THE COURT:  Either day is fine.  Is there a

21  preference?

22          MR. GITLIN:  Well the 17th probably would work

23  better for me --

24          THE COURT:  All right.

25          MR. GITLIN:  -- if that works for others.

1          THE COURT:  So February 17th at 12 noon again, is

2     that -- it gives everybody time to get here from New York

3     and hopefully get home.

4          All right.  So that will be the time for a

5     consensual fee application hearing for the first interim for

6     everybody not covered by the December hearing or the

7     Kirkland hearing.  So if there's -- I think it sounds like

8     that there might be one professional that won't be able to

9     go forward in late December, so if that's the case they can

10    -- that'll get kicked to the February date.

11          MS. SANDLER:  Okay.

12          THE COURT:  Okay.  I think that's all we have to

13    schedule for now.  We'll wait to see if we need a contested

14    hearing to schedule that, and it's a little too far out to

15    schedule stuff in May and June.

16          So, okay.  Let me just -- I think that's it, but

17    let me just double check my notes one more time since I have

18    everybody here.

19         (Pause)

20          THE COURT:  When -- when were you planning on

21    sending over the report for the December 29 hearing?

22          MS. SANDLER:  As soon as we can.

23          What -- we sent those reports out earlier this week

24    as I mentioned, we've already begun discussions with three

25    professionals, so it could be that by the end of tomorrow we

1    could have some of them resolved.  We'll continue to work to

2    resolve them right up until the hearing.  So we could set a

3    date certain that we would file a report and then we could

4    sort of do a last minute addendum if there are -- or if last

5    minute negotiations that take place or we could just plan on

6    filing it, you know, a day or two before the hearing.  We

7    know what the issues are --

8            THE COURT:  Yeah, I --

9            MS. SANDLER:  -- we don't know what the consensual

10   resolutions will be, so we could write the report just to

11   generally inform the Court of the issues and then when fill

12   in the negotiated resolutions later?

13           THE COURT:  I'm not trying to jam you up.

14           MS. SANDLER:  No, I know.

15           THE COURT:  I'm thinking more about -- I mean I'm

16   assuming we're talking -- well what do you think?  I mean

17   are we talking about a 12-page document, are we talking

18   about a 12-page document with a inch of attachments, or is

19   it too soon to know?

20           MS. SANDLER:  I think based on past experience it

21   would be somewhere in the range of a 12- to 15-page

22   document --

23           THE COURT:  Okay.

24           MS. SANDLER:  -- with minimal attachments probably

25   in the nature of the chart -- the summary chart you've seen.

1           THE COURT:  Okay.  Then as long as I get an email

2    copy of it -- I'm not -- I'm concerned -- it's the holidays,

3    so we're closed Christmas day and the 26th, so no one will

4    be here, but we have of course e-filing, so as long as it

5    gets e-filed we'll -- somebody will -- Ms. Werkheiser will

6    forward it to me electronically, I'll call her out by name.

7    So as long as I have it by Sunday the 28th I'll be able to

8    read it and be ready to go forward on the 29th.

9           So, I'm not trying to jam you up, I want to give

10   you the time you need.  It's more making sure that I have it

11   before the morning of the 29th in case I have any questions

12   and have to think.

13          MS. SANDLER:  Understood.

14          THE COURT:  The 28th is my birthday so I'm not sure

15   I'm going to look at it, but I'm going to pretend that it's

16   important that I -- no, I'll look at it.  I'll look at it.

17          Okay.  That's great.  I don't think I have anything

18   else.

19          Mr. Schepacarter?

20          MS. SANDLER:  Thank you, Judge.

21          THE COURT:  Thank you so much for being available

22   and coming, I truly appreciate it.

23          MR. SCHEPACARTER:  Thank you, Your Honor.  Just --

24   just a follow up.  Richard Schepacarter for the United

25   States Trustee.

1          Just a couple points of clarification.  There was

2     some mention of the budgets, the monthly budgets that were

3     required.  The fee committee and the fee examiner

4     specifically have a requirement that they want monthly

5     budgets sort of ahead of time.  It doesn't obviate the

6     requirement for counsel covered by the U.S. Trustee's large

7     case fee guidelines, that they will continue to submit

8     budgets with their interim compensation applications in

9     accordance with the guidelines, which is basically a

10    retroactive budget.  Basically it's a backward looking

11    budget that's submitted with the fee guidelines.

12          Also the second point I wanted to clarify was the

13    reports.  I don't know if there was maybe some confusion or

14    not, but the reports themselves aren't confidential, they

15    can be filed with the Court, so they won't be confidential.

16    I just wanted to clarify that.

17          THE COURT:  Okay.  Thank you.

18          MR. SCHEPACARTER:  All right.  Thank you, Your

19    Honor.

20          THE COURT:  Does anybody have anything else for

21    today?

22          MR. SASSOWER:  Your Honor, you heard about --

23    because of our fiscal close it's a little bit different,

24    we're in January, I won't be here at the December hearing.

25    So this is actually my last time appearing before you in

1    2014.  And we've spent a lot of time together so it would

2    just be remiss if I didn't wish you a Happy New Year and

3    happy birthday and I look forward to seeing you again in a

4    few weeks.

5            THE COURT:  All right.  Well thank you,

6    Mr. Sassower, appreciate it.  And I look forward to seeing

7    you often in 2015.

8        (Laughter)

9            THE COURT:  Anything else?  All right, very good.

10   Thank you again everyone for being present, I truly

11   appreciate it.

12           We are adjourned and I'll see you on the 29th.

13           MR. SASSOWER:  Thank you, Your Honor.

14           MR. GITLIN:  Thank you, Your Honor.

15       (Whereupon the Court recessed at 11:35 a.m.)

16

17

18                        * * * * *

19

20

21

22

23

24

25

Page 45

1                       C E R T I F I C A T I O N

2

3       I, Dawn South certify that the foregoing transcript is a

4       true and accurate record of the proceedings.

5       Dawn South
        Digitally signed by Dawn South
        DN: cn=Dawn South, o, ou,
        email=digital1@veritext.com,
        c=US
6       _____
        Date: 2014.12.18 17:56:46 -05'00'

7       Dawn South

8       AAERT Certified Electronic Transcriber CET**D-408

9

10

11

12      Date:  December 18, 2014

13

14

15

16

17

18

19

20

21

22      Veritext

23      330 Old Country Road

24      Suite 300

25      Mineola, NY 11501