# EXHIBIT B

## Engagement Letter

GUGGENHEIM SECURITIES, LLC
330 MADISON AVENUE
NEW YORK, NEW YORK 10017
GUGGENHEIMPARTNERS.COM

GUGGENHEIM

As of November 12, 2014

Official Committee of Unsecured Creditors of
Energy Future Holdings Corp., Energy Future Intermediate
Holding Company, LLC, EFIH Finance, Inc., and EECI, Inc.
c/o Sullivan & Cromwell LLP
125 Broad Street
New York, New York 10004

Attention: Andrew Dietderich

Ladies and Gentlemen:

This letter agreement (together with the Annex and the Indemnification Provisions attached hereto, this "Agreement") confirms the agreement between the Official Committee of Unsecured Creditors of Energy Future Holdings Corp., Energy Future Intermediate Holding Company, LLC, EFIH Finance, Inc., and EECI, Inc. (the "Committee") appointed in the cases (the "Bankruptcy Cases") of Energy Future Holdings Corp. and its debtor affiliates (collectively, the "Company" or the "Debtors") under Chapter 11 ("Chapter 11") of Title 11 of the United States Code (the "Bankruptcy Code") pending in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") and Guggenheim Securities, LLC ("Guggenheim Securities") as follows:

1. The Committee hereby engages Guggenheim Securities to act as the Committee's investment banker in connection with the Bankruptcy Cases and any Transaction (as hereinafter defined).

2. Guggenheim Securities hereby accepts the engagement and, in that connection, to the extent requested by the Committee and appropriate under the circumstances, agrees to assist the Committee with respect to the following:

   (a) To the extent that Guggenheim Securities deems necessary, appropriate and feasible, review and analyze the Company's business, operations, financial condition and prospects;

   (b) Review and analyze the Company's business plans and financial projections prepared by the Company's senior management, if available;

   (c) Evaluate the Company's liquidity and debt capacity;

   (d) Advise the Committee regarding the current state of the restructuring;

   (e) Assist and advise the Committee in examining and analyzing any potential or proposed strategy for a Transaction;

(f) Provide such financial analysis as the Committee may reasonably request in connection with the Bankruptcy Cases and any Chapter 11 plan proposed in connection therewith (a "Plan")

(g) Submit affidavits, prepare expert witness testimony, appear in court and/or offer testimony concerning any of the subjects encompassed by the other investment banking services in connection with the Bankruptcy Cases, as reasonably requested by the Committee;

(h) Evaluate potential alternatives in connection with a possible Transaction;

(i) Represent the Committee in negotiations with the Company and third parties with respect to the foregoing;

(j) Attend meetings with the Company and third parties and advise the Committee in connection therewith; and

(k) Provide such other investment banking services as may from time to time be agreed upon by Guggenheim Securities and the Committee in writing during the term of this engagement.

In providing its services to the Committee pursuant to this Agreement, Guggenheim Securities is not assuming any responsibility for the Committee's, the Company's, any creditor's or any other person's underlying decision to pursue, endorse, support or effect (or not pursue, endorse, support or effect) any strategy, Plan or other transaction. The Committee agrees that Guggenheim Securities will not have any obligation or responsibility to provide, nor will Guggenheim Securities be deemed to have provided, any (i) legal, accounting, audit, tax, actuarial or other specialist advice for or to the Committee, (ii) "crisis management" or business consultant services for or to the Committee, (iii) professional services related to designing or implementing operational, organizational, administrative, cash management or liquidity improvements related to the Company or (iv) fairness or valuation opinions or any advice or opinions with respect to solvency in connection with any Transaction. The Committee confirms that it will rely on its own legal counsel, accountants, tax advisors, actuaries and similar expert advisors for all legal, accounting, audit, tax, actuarial and other similar advice.

3. For purposes herein, the term "Transaction" means and includes:

    Any restructuring, reorganization, rescheduling, recapitalization or repayment of all or any material portion of the Company's liabilities (including, without limitation, unfunded pension and retiree medical liabilities, lease obligations, trade credit facilities, contract or tort obligations, joint venture interests and/or partnership interests), or any sale of all or a material portion of the Company or its assets, however such result is achieved, including without limitation through any one or more of the following means, whether in one or a series of transactions: (i) a Plan confirmed in connection with the Bankruptcy Cases and/or (ii) an exchange offer, a consent solicitation, a solicitation of waivers, acceptances or authorizations, covenant relief, the rescheduling of debt maturities, a change in interest rates, the settlement or forgiveness of debt, the conversion of debt into equity, other amendments to the terms, conditions or covenants of the Company's debt instruments, the issuance of new securities, the raising of new debt or equity capital and/or the sale or other transfer of equity, assets or other interests of the Company.

4. In consideration of Guggenheim Securities' services pursuant to this Agreement, the Company will pay or cause to be paid to Guggenheim Securities the cash fees as outlined below:

(a) *Monthly Fees:*

(i) A non-refundable cash fee of $250,000 per month (each, the "Monthly Fee" and collectively, the "Monthly Fees") payable in accordance with any applicable order of the Bankruptcy Court. The first payment will be made by the Company upon approval of this Agreement by the Bankruptcy Court and will be made in respect of the period from the date written above (prorated for such month) through the month in which payment is made (for the full monthly fee for such month). Thereafter, payment will be due and paid by the Company in advance on the first day of each month during the term of this Agreement.

(ii) Whether or not any Transaction has taken place or will take place, Guggenheim Securities will earn and be paid each Monthly Fee every month during the term of this Agreement.

(iii) 50% of the aggregate Monthly Fees in excess of $1,500,000 will be credited (but only once), to the extent actually paid, against the Transaction Fee upon consummation of a Transaction.

(b) *Transaction Fee:*

(i) If (A) at any time during the term of this engagement or within the twelve full months following the expiration or termination of this engagement (including the term of this engagement, the "Fee Period"), any Transaction is consummated or (B) any transaction is consummated at any time (including following expiration of the Fee Period) resulting from negotiations occurring during the Fee Period, a cash fee (a "Transaction Fee") in an amount equal to $9,000,000; *provided*, that no Transaction Fee shall be payable under this Agreement with respect to any Transaction if the principal definitive agreement relating to such Transaction is signed following a termination of this Agreement by Guggenheim Securities without cause.

(ii) Any such Transaction Fee will be payable promptly upon the consummation of any Transaction.

(c) *Miscellaneous*. The Committee expressly acknowledges and agrees that more than one fee and more than one type of fee may be payable to Guggenheim Securities hereunder. No fee or compensation payable to any third party by the Company or any other person or entity in connection with the subject matter of this engagement will reduce or otherwise affect any fee payable by the Company to Guggenheim Securities hereunder. Notwithstanding the foregoing, once a Transaction Fee is paid by the Company to Guggenheim Securities, no further Transaction Fee shall be payable hereunder by the Company to Guggenheim Securities for Transactions subsequently consummated by the reorganized Debtors.

5. In addition to any fees that may be paid to Guggenheim Securities hereunder, whether or not any Transaction occurs, the Company will reimburse Guggenheim Securities for all reasonable documented out-of-pocket expenses (including the (i) reasonable documented fees and expenses of its outside counsel and (ii) reasonable, documented fees and expenses of any other independent experts retained by Guggenheim Securities with the consent of the Committee, which consent shall not be unreasonably withheld) actually and reasonably incurred by Guggenheim Securities and its designated affiliates in connection with the engagement contemplated hereunder.

6. The Company's obligation to pay any fee, expense or indemnity set forth herein will be absolute and

unconditional and will not be subject to any reduction by way of setoff, recoupment or counterclaim.

The parties hereto acknowledge and agree that (a) Guggenheim Securities' restructuring expertise as well as its capital markets knowledge, financing skills and mergers and acquisitions capabilities, some or all of which may be required during the term of Guggenheim Securities' engagement hereunder, were important factors in determining the nature and amount of the various fees set forth herein and (b) the ultimate benefit of Guggenheim Securities' services hereunder cannot be measured merely by reference to the number of hours to be expended by Guggenheim Securities' professionals in the performance of such services. The parties hereto also acknowledge and agree that (a) the various fees set forth herein have been agreed upon by the parties in anticipation that a substantial professional commitment of time and effort will be required of Guggenheim Securities and its professionals in connection with this complex engagement, (b) such commitment may foreclose other business opportunities for Guggenheim Securities and (c) the actual time and commitment required of Guggenheim Securities and its professionals to perform its services hereunder may vary substantially from week to week or month to month, thereby creating potential "peak load" issues for Guggenheim Securities. Given the numerous and complex issues that may arise in engagements of this nature, the aforementioned issues with Guggenheim Securities' commitment to the variable level of time and effort necessary to address all such complex issues as they arise, the expertise and capabilities of Guggenheim Securities that will be required for this engagement and the market prices for professionals of Guggenheim Securities' stature and reputation for engagements of this nature, each of the parties agrees that the fee and expense arrangements hereunder are just and reasonable under all applicable legal standards and provide the requisite certainty to the Company and the Committee.

7. The Committee and Guggenheim Securities agree to the following provisions:

(a) The Committee will apply promptly to the Bankruptcy Court for the approval, pursuant to Sections 1103 and 328(a) of the Bankruptcy Code, of this Agreement (including, without limitation, the compensation, expense and indemnification provisions hereof) and Guggenheim Securities' retention by the Company under the terms of this Agreement pursuant to, and subject to the standards of review set forth in, Section 328(a) of the Bankruptcy Code (and not subject to the standards of review set forth in Section 330 of the Bankruptcy Code or any other standard of review), *nunc pro tunc* to the date first written above and will use its reasonable best efforts to obtain a final order of the Bankruptcy Court for authorization thereof. The Committee will supply Guggenheim Securities and its legal counsel with a draft of such application and the proposed order authorizing Guggenheim Securities' retention that is proposed to be submitted to the Bankruptcy Court sufficiently in advance of the filing of such application or the submission of such order (as the case may be) to enable Guggenheim Securities and its legal counsel to review and comment thereon. The retention application and the proposed order authorizing Guggenheim Securities' retention must be acceptable to Guggenheim Securities in its sole discretion. In agreeing to seek Guggenheim Securities' retention under Section 328(a) of the Bankruptcy Code, the Committee acknowledges that (i) it believes that Guggenheim Securities' restructuring expertise as well as its capital markets knowledge, financing skills and mergers and acquisitions capabilities will inure to the benefit of the Company, (ii) the value to the Committee of Guggenheim Securities' services derives in substantial part from that experience and expertise and (iii) accordingly, the structure and amount of the fees set forth in Section 4 herein are reasonable, regardless of the number of hours expended by Guggenheim Securities' professionals in the performance of the services to be provided hereunder.

(b) Guggenheim Securities will have no obligation to provide services under this Agreement or any

other agreement unless Guggenheim Securities' retention under this Agreement or such other agreement is approved by a final order of the Bankruptcy Court acceptable to Guggenheim Securities in its sole discretion, which final order must also approve the Indemnification Provisions attached hereto and will not be subject to appeal, rehearing, reconsideration or petition for *certiorari* under Section 328(a) of the Bankruptcy Code (the "Retention Order"), within 60 days of the date first written above. If such Retention Order is not obtained within such 60-day period, or such order is later reversed, vacated, stayed or set aside for any reason, then Guggenheim Securities may terminate this Agreement. Guggenheim Securities reserves the right to seek payment of any fees and expenses incurred prior to the date of termination, including but not limited to, pursuant to Section 503(b) of the Bankruptcy Code. Following entry of the interim order authorizing the retention of Guggenheim Securities, the Company will pay to Guggenheim Securities as promptly as possible all fees and expenses due pursuant to this Agreement, as approved by the Bankruptcy Court and in accordance with the terms of this Agreement, the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure and any applicable local rules and guidelines.

(c) Guggenheim Securities' post-petition fees as set forth herein, payments made pursuant to the expense reimbursement provisions of this Agreement and the Indemnification Provisions attached hereto will be entitled to priority as expenses of administration under Sections 503(b)(1)(A), 503(b)(2) and 507(a)(2) of the Bankruptcy Code and will be entitled to the benefits of any "carve-outs" for professional fees and expenses (to the extent adequate to enable the Company to pay promptly Guggenheim Securities the fees and expense reimbursements contemplated hereby taking into account the Company's obligations to other professionals entitled to the benefit of the carve-outs) in effect pursuant to one or more financing orders entered by the Bankruptcy Court. The Committee agrees to assist Guggenheim Securities in preparing, filing and serving all required monthly fee and expense statements, interim fee applications and a final fee application. The Committee agrees to support Guggenheim Securities' fee and expense applications during any Bankruptcy Court hearing regarding such applications, so long as the fees and expenses sought by Guggenheim Securities therein are consistent with this Agreement.

(d) The Committee will use its reasonable best efforts to ensure that, to the fullest extent permitted by law, any confirmed Plan in the Bankruptcy Case contains typical and customary release provisions and exculpation provisions releasing, waiving and forever discharging Guggenheim Securities and any of its divisions and affiliates, any of Guggenheim Securities' and/or its affiliates' current and former directors, officers, partners, members, agents and employees, and any person controlling Guggenheim Securities and/or its affiliates from any claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action and liabilities related to the Company, the Committee or the engagement described in this Agreement.

(e) The terms of this Section 7 are solely for the benefit of Guggenheim Securities and may be waived, in whole or in part, only by Guggenheim Securities in its sole discretion.

8. The parties hereto agree to the following termination and tail provisions:

(a) Guggenheim Securities' engagement pursuant to this Agreement will extend until the earliest of the (i) effective date of a Plan confirmed in the Bankruptcy Cases, (ii) conversion of the Bankruptcy Cases to Chapter 7 of the Bankruptcy Code, (iii) appointment of a Chapter 11 trustee or an examiner with expanded powers in the Bankruptcy Cases, (iv) dismissal of the Bankruptcy Cases and (v) the dissolution of the Committee; *provided, however,* that this Agreement may be (i) terminated earlier, <u>with or without cause, either by the Committee or by Guggenheim Securities</u>

upon 10 business days' prior written notice thereof to the other party, (ii) terminated earlier as provided elsewhere herein or (iii) extended as may be agreed in writing by the Committee and Guggenheim Securities.

(b) Notwithstanding the foregoing, in the event of any expiration or termination of Guggenheim Securities' engagement pursuant to this Agreement, Guggenheim Securities will continue to be entitled to payment by the Debtors (or their bankruptcy estates) of (i) any unpaid fees pursuant to Section 4 of this Agreement and (ii) any unreimbursed expenses pursuant to Section 5 of this Agreement that were incurred by Guggenheim Securities as a result of services rendered prior to the date of such expiration or termination, all of which amounts will become immediately payable by the Company (or its bankruptcy estates) in full. Furthermore, Sections 5 through 13 inclusive, and the Annex and the Indemnification Provisions attached hereto, will survive any expiration or termination of Guggenheim Securities' engagement hereunder.

9. The Company shall indemnify Guggenheim Securities and certain related persons in accordance with the Indemnification Provisions attached hereto. The Indemnification Provisions are integral parts of this Agreement, and the provisions thereof are incorporated by reference herein in their entirety. Such Annex and Indemnification Provisions will survive any termination or completion of Guggenheim Securities' engagement hereunder.

10. THE COMMITTEE ACKNOWLEDGES AND AGREES THAT (I) GUGGENHEIM SECURITIES WILL ACT SOLELY AS THE COMMITTEE'S INVESTMENT BANKER IN CONNECTION WITH ANY TRANSACTION AND (II) THIS AGREEMENT DOES NOT CONSTITUTE AN EXPRESS OR IMPLIED COMMITMENT OR UNDERTAKING ON THE PART OF GUGGENHEIM SECURITIES AND/OR ITS AFFILIATES TO UNDERWRITE, PROVIDE OR PLACE ALL OR ANY PART OF ANY FINANCING AND DOES NOT ENSURE OR GUARANTEE THE SUCCESSFUL ARRANGEMENT, PLACEMENT OR COMPLETION OF ANY SUCH FINANCING.

11. EACH OF GUGGENHEIM SECURITIES AND THE COMMITTEE HEREBY WAIVES ANY RIGHT IT MAY HAVE TO TRIAL BY JURY IN RESPECT OF ANY CLAIM BASED UPON, ARISING OUT OF OR IN CONNECTION WITH THIS AGREEMENT AND THE TRANSACTIONS CONTEMPLATED HEREBY.

12. This Agreement will be deemed to be made in the State of New York. This Agreement and all controversies arising hereunder or directly or indirectly relating hereto will be governed by, and construed and enforced in accordance with, the laws of the State of New York without giving effect to such state's rules concerning conflicts of laws that might provide for any other choice of law. If any term, provision, covenant or restriction of this Agreement is held by a court of competent jurisdiction to be invalid, void or unenforceable, or against public policy, the remainder of the terms, provisions, covenants and restrictions contained herein will remain in full force and effect and will in no way be affected, impaired or invalidated.

13. For the convenience of the parties hereto, any number of counterparts of this Agreement may be executed by the parties hereto, each of which will be an original instrument and all of which taken together will constitute one and the same Agreement. Delivery of a signed counterpart of this Agreement by e-mail or facsimile transmission will constitute valid and sufficient delivery thereof.

Energy Future Holdings Corp.
November 12, 2014
Page 7



We are delighted to accept this engagement and look forward to working with the Committee on this important assignment. Please confirm that the foregoing is in accordance with the Committee's understanding by signing in the space provided below and returning to us a duplicate of this Agreement, which will thereupon constitute a binding agreement between Guggenheim Securities, the Committee and the Company.

Very truly yours,

GUGGENHEIM SECURITIES, LLC

By: ______________________
Ronen Bojmel
Senior Managing Director

ACCEPTED AND AGREED TO:

OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF ENERGY FUTURE HOLDINGS CORP., ENERGY FUTURE INTERMEDIATE HOLDING COMPANY, LLC, EFIH FINANCE, INC., AND EECI, INC.

Brown & Zhou LLC
Chairperson, Official Committee of Unsecured Creditors of Energy Future Holdings Corp., Energy Future Intermediate Holding Company, LLC, EFIH Finance, Inc., and EECI, Inc.

By: ______________________

Name: Mabel C. Brown

Title: Chairperson

# ANNEX

## Additional Provisions

Capitalized terms used herein without definition will have the meanings ascribed thereto in the letter agreement dated as of November 12, 2014 (as amended from time to time, the "Agreement") among the Official Committee of Unsecured Creditors of Energy Future Holdings Corp., Energy Future Intermediate Holding Company, LLC, EFIH Finance, Inc., and EECI, Inc. (the "Committee") appointed in the cases (the "Bankruptcy Cases") of Energy Future Holdings Corp. and its debtors affiliates (collectively, the "Company" or the "Debtors") under Chapter 11 of Title 11 of the United States Code (pending in the United States Bankruptcy Court for the District of Delaware) and Guggenheim Securities, LLC ("Guggenheim Securities").

A. During the period of Guggenheim Securities' engagement hereunder, the Committee will, or will use its reasonable efforts to cause the Company to, furnish or arrange to have furnished to Guggenheim Securities all industry, business, financial, legal, regulatory, tax, accounting, actuarial and other information concerning the Company (including, without limitation, its assets, businesses, operations, financial condition and prospects) and any Transaction, and, to the extent within the Committee's and/or the Company's control, any Transaction Counterparty that Guggenheim Securities reasonably deems appropriate for purposes of this engagement (collectively, the "Information") and will provide Guggenheim Securities with access to the Company's and, to the extent within the Committee's and/or Company's control, any such Transaction Counterparty's officers, directors, employees, affiliates, appraisers, independent accountants, legal counsel and other agents, consultants and advisors (collectively with respect to any such party, "Representatives"). In addition, the Committee will, or will use its reasonable efforts to cause the Company to, promptly advise Guggenheim Securities of any material event or change in the business, affairs and/or condition (financial or otherwise) of the Company and, to the extent within the Committee's knowledge, any Transaction Counterparty that occurs during the term of this Agreement.

B. The Committee acknowledges, agrees and confirms that in providing its services pursuant to this Agreement, Guggenheim Securities (i) is and will be entitled to rely upon and assume the accuracy, completeness and reasonableness of all Information furnished by or discussed with the Committee, the Company, any Transaction Counterparty and their respective Representatives, or available from public sources, data suppliers and other parties; (ii) does not and will not assume responsibility, obligation or liability (whether direct or indirect, in contract or tort or otherwise) for the accuracy, completeness, reasonableness or achievability of any such Information; (iii) will have no responsibility or obligation to independently verify such Information or to conduct any independent evaluation or appraisal of the assets or liabilities (including any contingent, derivative or off-balance sheet assets and liabilities) of the Company, any Transaction Counterparty or any other party; (iv) will assume that all financial projections, synergy estimates, other estimates and other forward-looking information (all of the foregoing, "Forward-Looking Information") that may be furnished by or discussed with the Committee, the Company or any Transaction Counterparty and their respective Representatives will have been reasonably prepared and reflect the best then-currently available estimates and judgments of the Committee's, the Company's and/or such Transaction Counterparty's senior management (as the case may be) as to the expected future performance of the relevant company or entity and the realization of any such synergies; (v) will express no view, opinion, representation, guaranty or warranty (in each case, express or implied) regarding the reasonableness or achievability of such Forward-Looking Information; and (vi) will have no responsibility or obligation to evaluate the solvency of the Company, any Transaction Counterparty or any other party under any US federal or state laws relating to bankruptcy, insolvency or similar matters. Guggenheim Securities' role in connection with any due diligence investigation will be limited solely to performing such review as it will deem necessary to support its own financial advice and analyses and will not be on behalf of the Committee, the Company, the Company's controlling stockholder(s) or member(s), the Company's other creditors or any other party.

C. Subject to any applicable non-disclosure agreement or other confidentiality obligation, Guggenheim Securities is authorized to use and distribute the Information and documents provided by such parties pursuant to this Agreement to solicit Transaction Counterparties in connection with any Transaction.

In the event that, during the period of the engagement of Guggenheim Securities hereunder, the Committee and/or any of its Representatives is/are contacted by or on behalf of any party concerning the possibility of a Transaction, then the Committee will promptly so inform Guggenheim Securities so that it can evaluate such party and its interest and assist the Committee in any subsequent discussions. In addition, the Committee will promptly inform Guggenheim Securities in the event that it retains any legal counsel, consultant or other advisor or Representative in connection with any Transaction.

D. Guggenheim Securities is providing services as investment banker to the Committee and is not providing any services on behalf of the individual members of the Committee. At the direction of legal counsel to the Committee, certain communications and correspondence from Guggenheim Securities, and work product and analyses prepared by Guggenheim Securities for the Committee in connection with this matter, will be considered in preparation for litigation over the restructuring of the Company and, accordingly, will be subject to the attorney-client privilege and work-product doctrine. All advice (written or oral) provided by Guggenheim Securities in connection with Guggenheim Securities' engagement (i) is intended solely for the benefit and use of the Committee in considering matters to which this Agreement relates, (ii) is not and will not be deemed to constitute a recommendation to the Committee, the Company's Board of Directors (or any similar governing body) or the Company with respect to any Transaction or any other matter and (iii) is not intended for the benefit and use by the Company, its stockholders, its members, its other creditors or any other person or entity. The Committee agrees that, notwithstanding any expiration or termination of Guggenheim Securities' engagement, no such advice will be used or relied upon for any other purpose or by any person or entity other than the Committee, be disclosed publicly or made available to third parties or be reproduced, disseminated, quoted from or referred to at any time, in any manner or for any purpose, nor will any public references to Guggenheim Securities be made by the Committee or the Company, in each case without Guggenheim Securities' prior written consent.

E. The Committee hereby acknowledges that Guggenheim Securities and its affiliates engage in a wide range of financial services activities for their own accounts and the accounts of customers, including asset and investment management, investment banking, corporate finance, mergers and acquisitions, restructuring, merchant banking, fixed income and equity sales, trading and research, derivatives, foreign exchange and futures. In the ordinary course of these activities, Guggenheim Securities or its affiliates may (i) provide such financial services to the Company and/or any Interested Party (as defined below), for which services Guggenheim Securities or certain of its affiliates has received, and may receive, compensation and (ii) directly or indirectly, hold long or short positions, trade and otherwise conduct such activities in or with respect to certain debt or equity securities, bank debt and derivative products of or relating to the Company and/or any Interested Party. Furthermore, Guggenheim Securities or its affiliates and its or their directors, officers and employees may have investments in the Company and/or any Interested Party. Guggenheim Securities recognizes its responsibilities under applicable securities laws in connection with such activities.

For purposes hereof, the term "Interested Party" includes, without limitation, members of the Committee, the Company's controlling stockholder(s) or member(s), other stockholders, members and other creditors, any Transaction Counterparty, any Transaction Counterparty's controlling stockholder(s) or member(s), other participants in any Transaction or any of the foregoing parties' respective affiliates, subsidiaries, investment funds and portfolio companies.

At any given time, Guggenheim Securities and/or its affiliates may be engaged by one or more entities that may be competitors with, or otherwise adverse to, the Committee (and to its individual members)

and/or the Company and/or the Company's controlling stockholder(s) or member(s) in connection with matters unrelated to the Bankruptcy Cases or any Transaction. As a result, it is possible that Guggenheim Securities and/or its affiliates may from time to time be involved in one or more capacities that, directly or indirectly, may be or may be perceived as being adverse to the Committee's (and/or its individual members') and/or the Company's and/or the Company's controlling stockholders' or members' interests in the context of a potential Transaction or otherwise. Moreover, Guggenheim Securities and/or its affiliates may, in the course of other client relationships, have or in the future acquire or come into possession of information material to the Committee's (and/or its individual members') and/or the Company's controlling stockholders' or members' interests in the context of a potential or actual Transaction or otherwise which, by virtue of such other client relationships, Guggenheim Securities and/or its affiliates is/are not or will not be at liberty to disclose to the Committee (and/or its individual members) or the Company or the Company's controlling stockholder(s) or member(s).

Consistent with applicable legal and regulatory guidelines, Guggenheim Securities has adopted certain policies and procedures to establish and maintain the independence of its research departments and personnel. As a result, Guggenheim Securities' research analysts may hold views, make statements or investment recommendations and/or publish research reports with respect to the Company, any Interested Party and/or any Transaction that differ from the views of Guggenheim Securities' investment banking personnel.

F. Guggenheim Securities may, at its own expense, at any time after the announcement of any definitive or proposed Transaction, (i) publicize (whether in the form of a so-called "tombstone," case study or otherwise) its involvement in such Transaction in customary investment banking pitchbooks, other client-oriented marketing materials (including e-mail blasts), Guggenheim Partners, LLC's and/or Guggenheim Securities' websites and certain other customary media (including, without limitation, newspapers, periodicals, annual reports and other publicly-disseminated marketing materials) and (ii) include the Company's name and logo and a description of Guggenheim Securities' role in connection with such publicity; *provided, however,* that Guggenheim Securities will not disclose any information regarding such Transaction which is not already in the public domain (except that, in any event, Guggenheim Securities may disclose its involvement in connection with such Transaction). If requested by Guggenheim Securities, the Committee agrees to use its commercially reasonable efforts to include a mutually acceptable reference to Guggenheim Securities and its role as the Committee's investment banker in any press release or other public announcement which may be issued in connection with the matters described in this Agreement.

G. To help the United States government fight the funding of terrorism and money laundering activities, the federal law of the United States requires all financial institutions to obtain, verify and record information that identifies each person with whom they do business as a condition to doing such business. Accordingly, the Committee will provide Guggenheim Securities upon request with certain identifying information or documents sufficient to verify such entity's identity, including a government-issued identification number (*e.g.,* a US taxpayer identification number) and certain other information or documents necessary to verify such entity's identity (*e.g.,* a certificate of incorporation, a government-issued business license, a partnership agreement or a trust instrument).

H. Notwithstanding any agreement or representation, written or oral, by either the Committee or Guggenheim Securities in connection with any Transaction or the Bankruptcy Cases, the Committee and its Representatives will have no obligation to Guggenheim Securities to maintain the confidentiality of the tax treatment and tax structure of any Transaction or any materials of any kind (including opinions or other analyses) that are provided to any of them relating to such tax treatment and tax structure. As required by US Treasury Regulations, Guggenheim Securities hereby informs the Committee that (i) any discussion of federal tax issues contained or referred to in any materials prepared by Guggenheim

    Securities in connection with its engagement hereunder is not intended or written to be used, and cannot be used, for the purpose of avoiding penalties that may be imposed under the Internal Revenue Code and (ii) such discussion is written to support the promotion or marketing of the matters addressed therein.  Guggenheim Securities does not provide legal, tax, accounting or actuarial advice.  The Committee will consult its own legal, tax, accounting and/or actuarial advisors in connection with any Transaction.

I.    Each of the parties to this Agreement irrevocably (i) submits to the jurisdiction of any court of the State of New York located in the Borough of Manhattan and/or the United States District Court for the Southern District of New York for the purpose of any suit, action or other proceeding arising out of this Agreement or any of the agreements or transactions contemplated hereby (each, a "Proceeding"), (ii) agrees that all claims in respect of any Proceeding may be heard and determined in any such court, (iii) waives, to the fullest extent permitted by law, any immunity from jurisdiction of any such court or from any legal process therein, (iv) agrees that such courts will have exclusive jurisdiction over any claims in any Proceeding, (v) agrees not to commence any Proceeding other than in such courts and (vi) waives, to the fullest extent permitted by law, any claim that such Proceeding is brought in an inconvenient forum or venue that is otherwise improper.

    Notwithstanding the foregoing, during the Bankruptcy Cases any actions and proceedings arising out of or relating to this Agreement also may be heard and determined by the Bankruptcy Court or any court having appellate jurisdiction over the Bankruptcy Court.  If the Bankruptcy Court declines to assert jurisdiction over such proceedings or if the reference is withdrawn to the United States District Court, then such proceedings will be heard and determined as described in clause (i) of this paragraph, to whose jurisdiction the Committee and the Company hereby irrevocably submit.

    The Committee hereby irrevocably consents to the service of process of any of the aforementioned courts in any such Proceeding by the mailing of copies thereof by registered or certified mail, postage prepaid, to the Committee, such service to become effective ten (10) business days after such mailing.

J.    The obligations of the Company hereunder will be the joint and several obligations of the entities comprising the Company.

K.    The Committee hereby acknowledges and agrees that Guggenheim Securities will act under this Agreement as an independent contractor with obligations solely to the Committee.  Notwithstanding the Debtors' and their estates' obligations hereunder, including without limitation their obligation to pay the fees and expenses of Guggenheim Securities and to indemnify Guggenheim Securities, it is understood and agreed that Guggenheim Securities' sole and exclusive client is the Committee, and Guggenheim Securities will in no circumstances be deemed to be an investment banker to or have any obligation to any other party, including to the Company or to any member of the Committee in its individual capacity.  Nothing in this Agreement or the nature of Guggenheim Securities' services will be deemed to create an agency relationship between or among Guggenheim Securities and the Committee or any other person or entity in connection with any Transaction or otherwise and the Committee agrees that it will not make, and hereby waives, any claim based on an assertion of such an agency relationship; it being understood that Guggenheim Securities will have no authority to bind, represent or otherwise act as agent, executor, administrator, trustee, lawyer or guardian for the Committee, nor will Guggenheim Securities have the authority to manage money or property of the Committee.  The Committee acknowledges that Guggenheim Securities is not the agent of and is not authorized to bind the Committee in any action or decision.  Other than as set forth in the Indemnification Provisions attached hereto or with respect to the Covered Persons (as defined and discussed below), nothing in this Agreement is intended to confer upon any other person (including stockholders, members, creditors or employees of the Company) any rights or remedies hereunder or related hereto.  The Committee agrees that Guggenheim Securities and its affiliates, each of its and their controlling persons (within the

meaning of the US federal securities laws), stockholders, members, directors, officers, managers, employees, consultants, legal counsel and agents and each of its and their respective heirs, successors and assigns (all of the foregoing, "Covered Persons") will not have any liability (including without limitation, liability for any losses, claims, damages, obligations, penalties, judgments, awards, liabilities, costs, expenses or disbursements) in contract, tort or otherwise to the Committee (or any of its individual members), any of the Company's creditors or the Company or any person claiming through the Company or in the Company's right in connection with the engagement of Guggenheim Securities pursuant to this Agreement, the matters contemplated hereby or any Transactions or conduct in connection therewith, except where such liability is found in a final judgment by a court of competent jurisdiction (not subject to further appeal) to have resulted primarily and directly from the gross negligence or willful misconduct of such Covered Person. The Committee further agrees that Guggenheim Securities will have no responsibility for any act or omission by any of the Committee's other Representatives.

L. Each party hereto has all requisite power and authority to enter into this Agreement and perform its obligations hereunder. This Agreement has been duly and validly authorized by all necessary action on the part of each party hereto and has been duly executed and delivered by each such party and constitutes a legal, valid and binding agreement of each party hereto, enforceable in accordance with its terms. This Agreement has been reviewed by the signatories hereto and their counsel. There will be no construction of any provision against Guggenheim Securities because this Agreement was drafted by Guggenheim Securities, and the parties waive any statute or rule of law to that effect.

M. This Agreement (including this Annex and the Indemnification Provisions attached thereto) embodies the entire agreement and understanding of the parties hereto with respect to the subject matter hereof and supersedes all prior agreements and understandings relating to the subject matter hereof. The provisions of this Agreement may not be waived, modified, amended or supplemented except in writing executed by the parties hereto. This Agreement will inure to the benefit of, and be binding upon, the parties hereto and their respective successors and assigns (including, in the case of the Company, any successor to all or a portion of the assets and/or the businesses of the Company under a Plan).

**INDEMNIFICATION PROVISIONS**

Capitalized terms used herein without definition will have the meanings ascribed thereto in the letter agreement dated as of November 12, 2014 (as amended from time to time, the "Agreement") between Official Committee of Unsecured Creditors of Energy Future Holdings Corp., Energy Future Intermediate Holding Company, LLC, EFIH Finance, Inc., and EECI, Inc. (the "Committee") of Energy Future Holdings Corp. and its debtors affiliates (collectively, the "Company" or the "Debtors") and Guggenheim Securities, LLC. As used in these Indemnification Provisions, the term "Guggenheim Securities" will be deemed to refer to and include each of Guggenheim Securities, LLC and its affiliates, each of its and their controlling persons (within the meaning of the US federal securities laws), stockholders, members, directors, officers, managers, employees, consultants, legal counsel and agents and each of its and their respective heirs, successors and assigns.

The Company hereby agrees to (a) indemnify and hold harmless Guggenheim Securities, to the fullest extent permitted by law, from and against any and all losses, claims, damages, obligations, penalties, judgments, awards and other liabilities as and when incurred by Guggenheim Securities (collectively, "Liabilities") and (b) fully reimburse Guggenheim Securities for any and all fees, costs, expenses and disbursements (in all such cases, whether legal or otherwise) as and when incurred by Guggenheim Securities (collectively, "Expenses"), including those of investigating, preparing for (including, without limitation, preparing, reviewing or furnishing documents), participating in, defending against or giving testimony with respect to any private, regulatory, self-regulatory or governmental requests, inquiries, investigations, actions, claims, interrogatories, subpoenas, suits, litigation, proceedings or injunctions, whether or not in connection with any threatened or actual litigation, arbitration or other dispute resolution process and whether or not Guggenheim Securities is a direct party thereto (collectively, "Actions"), in the case of each of the foregoing clauses (a) and (b) whether directly or indirectly caused by, relating to, based upon, arising out of or in connection with any of the following: (w) any advice or services requested of, or rendered or to be rendered by, Guggenheim Securities pursuant to the Agreement, (x) any actions or inactions by Guggenheim Securities with respect to the Agreement, (y) any Transaction or (z) the determination and enforcement by Guggenheim Securities of its rights pursuant to the Agreement (including, without limitation, these Indemnification Provisions); *provided, however*, such indemnification agreement will not apply to any portion of any such Liability or Expense to the extent it is found in a final judgment by a court of competent jurisdiction (not subject to further appeal) to have resulted primarily and directly from the gross negligence or willful misconduct of Guggenheim Securities.

If any Action is commenced as to which Guggenheim Securities proposes to demand indemnification hereunder, it will notify the Company with reasonable promptness; *provided, however*, that any failure by Guggenheim Securities to notify the Company will not relieve the Company from its obligations hereunder. Guggenheim Securities will have the right to retain legal counsel of its own choice to represent it, and the Company will pay the Expenses of such legal counsel; and such legal counsel will, to the extent it believes consistent with its professional responsibilities, cooperate with the Company and any legal counsel designated by the Company. The Company will be liable for any settlement of any claim against Guggenheim Securities made with the Company's written consent, which consent will not be unreasonably withheld. The Company will not, without the prior written consent of Guggenheim Securities, (a) settle or compromise any claim, (b) permit a default or (c) consent to any settlement or other such agreement or the entry of any judgment, in all of the foregoing cases in connection with or related to any Action with respect to which indemnification or contribution may be sought hereunder (whether or not Guggenheim Securities is an actual or potential party to such Action) or as to which any allegation of wrongful acts or omissions by Guggenheim Securities is not denied.

In order to provide for just and equitable contribution, if a claim for indemnification pursuant to these Indemnification Provisions is made but it is found in a final judgment by a court of competent jurisdiction (not subject to further appeal) that such indemnification is unavailable, in whole or in part, for any reason,

even though the express provisions hereof provide for indemnification in such case, then the Company, on the one hand, and Guggenheim Securities, on the other hand, will contribute to the Liabilities and Expenses to which the indemnified persons may be subject (a) in accordance with the relative benefits received (or anticipated to be received) by the Company, on the one hand, and Guggenheim Securities, on the other hand, in connection with Guggenheim Securities' engagement pursuant to the Agreement or (b) if the allocation provided by clause (a) immediately above is not permitted by applicable law, in such proportion as is appropriate to reflect not only the relative benefits referred to in such clause (a), but also the relative fault of the Company, on the one hand, and Guggenheim Securities, on the other hand, in connection with the statements, acts or omissions which resulted in such Liabilities and Expenses. The Company agrees for purposes of this paragraph that the relative benefits to the Company and Guggenheim Securities of any contemplated Transaction (whether or not consummated) will be deemed to be in the same proportion as the total value paid, received or issued or contemplated to be paid, received or issued to or by the Company and its stockholders, claim holders or contract parties in connection with such Transaction bears to the fees paid or payable to Guggenheim Securities pursuant to the Agreement. Notwithstanding the foregoing, Guggenheim Securities will not be obligated to contribute any amount pursuant to this paragraph that exceeds the amount of fees previously received by Guggenheim Securities pursuant to the Agreement. Each of the Company and Guggenheim Securities hereby agrees that it would not be just and equitable if contribution pursuant to this paragraph were determined by pro rata allocation or by any other method which does not take into account the considerations referred to in this paragraph.

The Company's indemnification, contribution, reimbursement and other obligations pursuant to these Indemnification Provisions will be in addition to any liability that the Company may otherwise have, at common law or otherwise, to Guggenheim Securities and will be binding on the Company's successors and assigns. These Indemnification Provisions will (a) apply to Guggenheim Securities' engagement pursuant to the Agreement, any activities or actions of Guggenheim Securities relating to such engagement occurring prior to the date of such Agreement and any subsequent modification of or amendment to such Agreement and (b) remain in full force and effect following the termination or expiration of Guggenheim Securities' engagement pursuant to the Agreement.