**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| In re: | ) ) | Chapter 11 |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) ) | Case No. 14-10979 (CSS) |
| Debtors. | ) ) | (Jointly Administered) |
|  | ) ) ) | **Objection Deadline: January 6, 2015 at 4:00 p.m.**<br>**Hearing Date: January 13, 2015 at 9:30 a.m.** |

**MOTION OF ENERGY FUTURE HOLDINGS CORP.,
*ET AL.*, FOR ENTRY OF AN ORDER APPROVING THE
CLAIMS SETTLEMENT AGREEMENT BETWEEN LUMINANT
GENERATION COMPANY LLC AND ADA CARBON SOLUTIONS (RED RIVER) LLC**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") file this motion (this "Motion") for entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Order"), approving the Claims Settlement Agreement, attached as **Exhibit 1** to **Exhibit A**, between Luminant Generation Company LLC ("Luminant Generation") and ADA Carbon Solutions (Red River), LLC (f/k/a/ Red River Environmental Products, LLC) ("ADA"), dated December 13, 2014, (the "Claims Settlement Agreement"). In support of this Motion, the Debtors submit the *Declaration of Robert Frenzel in Support of the Motion of Energy Future Holdings Corp.,* et al.*, for Entry of an Order Approving the Claims Settlement Agreement between Luminant Generation Company LLC and ADA Carbon Solutions (Red River) LLC* (the "Frenzel Declaration"), filed contemporaneously herewith. In further support of this Motion, the Debtors respectfully state as follows.

---

[1] The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, for which joint administration has been granted, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

RLF1 11310889v.1

**Jurisdiction and Venue**

1. The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Debtors consent pursuant to rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Bankruptcy Rules") to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The bases for the relief requested in this Motion are sections 105(a) and 363(b) of title 11 of the United States Code (the "Bankruptcy Code") and rules 6004 and 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

**Relief Requested**

4. By this Motion, the Debtors seek entry of the Order approving the Claims Settlement Agreement.

**Background**

5. On April 29, 2014 (the "Petition Date"), each of the Debtors filed a voluntary petition with the Court under chapter 11 of the Bankruptcy Code. The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. The Court has entered a final order for joint

administration of these chapter 11 cases [D.I. 849]. The Court has not appointed a trustee. The Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") formed an official committee of unsecured creditors of Energy Future Competitive Holdings Company LLC ("EFCH"), Texas Competitive Electric Holdings Company LLC ("TCEH"), the direct and indirect Debtor subsidiaries of EFCH and TCEH, and EFH Corporate Services Company (the "TCEH Creditors' Committee") on May 13, 2014 [D.I. 420] and an official committee of unsecured creditors of Energy Future Holdings Corp., Energy Future Intermediate Holding Company, LLC, EFIH Finance, Inc., and EECI, Inc. (the "EFH Creditors' Committee") on October 27, 2014 [D.I. 2570]. ADA is a member of the TCEH Creditors' Committee. Further information regarding the Debtors' business operations and capital structure is set forth in the declaration of Paul Keglevic in support of the Debtors' first day motions [D.I. 98].

**I.     The Carbon Supply Agreement.**

6.     Activated carbon has historically been an important product in the Debtors' power generation operations, and is generally used to reduce mercury emissions. On September 3, 2008, Luminant Generation, as buyer, and ADA, as seller, entered into that certain Carbon Supply Agreement, including any related agreements, amendments, or modifications thereto (the "Carbon Supply Agreement") for the supply and purchase of activated carbon, including carbon manufactured by ADA at its facility in Coushatta, Louisiana. The Carbon Supply Agreement (as discussed herein), as extended by an amendment dated December 16, 2011, was originally set expire on December 31, 2018. Under the Carbon Supply Agreement, Luminant Generation paid for the carbon delivered on a monthly basis at a certain price per pound, along with certain other costs. In addition, Luminant Generation was obligated to purchase (a) certain specified annual minimum quantities of carbon (each, an "Annual Commitment") and (b) a minimum

3

commitment of 130 million pounds in the aggregate over the entire term of the contract (the "Term Commitment," and together with the Annual Commitments, the "Commitments").

7. The Carbon Supply Agreement provided that within 30 days after the end of each contract year, Luminant Generation would pay ADA for the amount by which the Annual Commitment exceeded the actual amount of carbon delivered during the year, if any. Similarly, within 30 days after December 31, 2018, the end of the current term, Luminant Generation would pay ADA for the amount by which the Term Commitment exceeded the actual quantity of carbon delivered to Luminant Generation during the contract term plus any amounts paid to satisfy Annual Commitments in preceding years.

8. Over the past several years, Luminant Generation's demand for activated carbon has steadily declined. This decrease in demand is partially attributable to the implementation of alternative technologies, work performed on the emissions equipment, fuel changes, and generation changes, which result in substantial cost savings to the Debtors. The Debtors expect that their demand for activated carbon will continue to decrease, which would have resulted in increasingly larger payments related to the Commitments under the Carbon Supply Agreement. As a result, on November 26, 2014, the Debtors filed a *Notice of Rejection of Certain Executory Contracts and/or Unexpired Leases and Related Relief Thereto* [D.I. 2907], together with a schedule listing the Carbon Supply Agreement (the "Rejection Schedule"), seeking entry of an order approving the rejection of the Carbon Supply Agreement. On December 18, 2014, the Court entered the *Order Approving the Rejection of Certain Executory Contracts and Unexpired Leases* [D.I. 3065] approving the rejection of the Carbon Supply Agreement, effective as of December 18, 2014.[2]

---

[2] The deadline to object to the rejection of the Carbon Supply Agreement expired on December 11, 2014. On December 17, 2014, the Debtors filed the *Certification of Counsel Concerning Order Approving the Rejection*

**II.     The Claims Settlement Agreement.**

9.      Since before the Petition Date, the Debtors and ADA engaged in discussions regarding the Carbon Supply Agreement, including Luminant Generation's desire to obtain relief from the Commitments.

10.     On October 24, 2014, ADA filed proofs of claim against Luminant Generation and certain of its Debtor affiliates in the aggregate amount of $8,632,963.00 (the "ADA Claim") for amounts due under the Carbon Supply Agreement as of the Petition Date.  The ADA Claim included an unsecured claim of $8,385,380.90 and an administrative expense claim under section 503(b)(9) of the Bankruptcy Code for the remaining $247,582.10.  The ADA Claim also included claims for accrued and unpaid interest at the applicable rate set forth in the Carbon Supply Agreement, and other penalties, costs and expenses, and other amounts indemnifiable, reimbursable, or otherwise chargeable under the Carbon Supply Agreement.

11.     After the Debtors moved to reject the Carbon Supply Agreement, they continued to engage in good-faith, arm's-length discussions with ADA regarding the ADA Claim and the Debtors' proposed rejection of the Carbon Supply Agreement.  As set forth in the Claims Settlement Agreement, ADA alleges that the rejection damages claim arising from the rejection of the Carbon Supply Agreement is $74,347,723.00.  The parties ultimately arrived at the resolution embodied in the Claims Settlement Agreement attached as **Exhibit 1** to **Exhibit A**.

12.     Under the Claims Settlement Agreement, the parties agreed that (a) ADA shall be entitled to (i) an allowed general unsecured claim in the amount of $20,000,000.00 and (ii) an allowed priority claim under section 503(b)(9) of the Bankruptcy Code in the amount of $247,582.10 (collectively, the "Agreed Claim"), in lieu of the ADA Claim and any claims

---

*of Certain Executory Contracts and Unexpired Leases* [D.I. 3064] certifying, among other things, that the Debtors received no formal or informal objections to the proposed rejection of the Carbon Supply Agreement.

resulting from the rejection of the Carbon Supply Agreement, and (b) ADA shall release the Debtors and certain other parties from all claims or rights (other than the Agreed Claim) relating to the Carbon Supply Agreement, except for claims (a) judicially determined to have arisen from fraud, bad faith, or willful misconduct or (b) for unpaid amounts on account of activated carbon actually delivered, or in the process of being delivered, by ADA to the Debtors in the ordinary course of business in accordance with the Carbon Supply Agreement.  The Claims Settlement Agreement will become effective upon entry of the Order.

13. The Debtors also continued negotiations with ADA, as well as third party alternatives, to secure a future supply source for activated carbon.  In addition to offering the Debtors pricing and other terms that were competitive with those offered by third parties, ADA was willing to compromise the ADA Claim and its rejection damages claims on the terms set forth in the Claims Settlement Agreement.  As a result, on December 13, 2014, the parties executed a new supply agreement on market terms with ADA (the "<u>New Carbon Supply Agreement</u>").  The New Carbon Supply Agreement does not contain annual or term commitments, or the requirement to pay for undelivered carbon.  The New Carbon Supply Agreement may be terminated on five days' written notice by either party if the Order approving the Claim Settlement Agreement is not entered on or before February 11, 2015.

**Basis for Relief**

**I.     The Claims Settlement Agreement Meets the Standards of Bankruptcy Rule 9019.**

14. Section 105(a) of the Bankruptcy Code allows a court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a).  Bankruptcy Rule 9019 provides that, after notice and a hearing, a court may approve a proposed compromise or settlement.  Fed. R. Bankr. P. 9019(a).

6

The Third Circuit has emphasized that "[c]ompromises are favored in bankruptcy." *Myers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996) (citation omitted).

15.     Pursuant to Bankruptcy Rule 9019(a), a bankruptcy court may, after appropriate notice and a hearing, approve a compromise or settlement so long as the proposed settlement is fair, reasonable, and in the best interest of the estate.  *See In re Marvel Entm't Group, Inc.*, 222 B.R. 243, 249 (D. Del 1998) ("[T]he ultimate inquiry [is] whether 'the compromise is fair, reasonable, and in the interest of the estate.'") (citation omitted); *In re Northwestern Corp.*, No. 03-12872, 2008 WL 2704341, at *6 (Bankr. D. Del. July 10, 2008) ("the bankruptcy court must determine whether the compromise is fair, reasonable, and in the best interests of the estate") (citation omitted); *In re Key3Media Group, Inc.*, 336 B.R. 87, 92 (Bankr D. Del. 2005) ("the bankruptcy court has a duty to make an informed, independent judgment that the compromise is fair and equitable").

16.     In determining whether a settlement is fair and equitable, the Third Circuit has adopted a balancing test, under which a bankruptcy court should decide whether to approve a particular compromise or settlement.  The factors of the balancing test are: "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors." *In re Martin*, 91 F.3d 389, 393 (3d Cir. 1996); *see also Key3Media Grp. Inc.*, 336 B.R. at 93 (when determining whether a compromise is in the best interests of the estate, courts must "assess and balance the value of the claim that is being compromised against the value to the estate of the acceptance of the compromise proposal").

17.     "[T]he court does not have to be convinced that the settlement is the best possible compromise," but "the court must conclude that the settlement is 'within the reasonable range of

litigation possibilities.'"  *In re World Health Alternatives, Inc.*, 344 B.R. 291, 296 (Bankr. D. Del. 2006) (citations omitted); *see also In re Energy Corp.*, 886 F.2d 912, 929 (7th Cir. 1989); *In re Sea Containers Ltd.*, No. 06-11156 (KJC), 2008 WL 4296562, at *5 (Bankr. D. Del. Sept. 19, 2008); *In re Key3Media Grp. Inc.*, No. 03-10323 (MFW) 2006 WL 2842462, at *3 (D. Del. Oct. 2, 2006).[3]

18. Additionally, under section 363(b)(1) of the Bankruptcy Code, a debtor "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."  11 U.S.C. § 363(b)(1).  If a valid business justification exists for the use or sale of property, there is strong presumption that "in making a business decision the directors . . . acted on an informed basis, in good faith and in an honest belief that the action taken was in the best interests of the company."  *Official Comm. of Subordinated Bondholders v. Integrated Res., Inc.*, (*In re Integrated Res., Inc.*), 147 B.R. 548, 567 (Bankr. D. Del. 2008) (quoting *Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985)).  Generally, when applying the business judgment standard, courts grant great deference to debtors' business decisions.

19. The Court should approve the Claims Settlement Agreement because the Claims Settlement Agreement is in the best interests of Luminant Generation's estate and is clearly within the range of reasonableness.  The Debtors engaged in extensive, arm's-length discussions with ADA to negotiate and document the treatment of ADA's prepetition claims and rejection damages claims in the Claims Settlement Agreement.  ADA has asserted claims far in excess of the general unsecured and administrative expense claims that compose the Agreed Claim.  Indeed, the Agreed Claim constitutes less than 25% of the total claims that ADA asserted on

---

[3] Moreover, it is not necessary for the court to conduct a "mini trial" of the facts or the merits of the underlying dispute. *In re Grant Broad. of Phila., Inc.*, 71 B.R. 390, 396 (Bankr. E.D. Pa. 1987). Rather, the court need only consider those facts which are necessary to enable it to evaluate the settlement and to make an informed and independent judgment about the settlement. *In re Pa. Cent. Transp. Co.*, 596 F.2d 1102, 1114 (3d Cir. 1979) (citation omitted); *In re Energy Co-op., Inc.*, 886 F.2d 921, 924-25 (7th Cir. 1989).

account of the ADA Claim and rejection damages arising from the Commitments due over the remaining term of the Carbon Supply Agreement.  Settling the ADA Claim and fixing ADA's rejection damages claims will save the Debtors the time and expense associated with potential discovery and litigation.  Accordingly, the Debtors submit that the decision to enter into the Claims Settlement Agreement is well within the range of reasonableness, is a sound exercise of the Debtors' business judgment, and is in the best interests of Luminant Generation's estate.

## Waiver of Bankruptcy Rule 6004(h)

20.    To implement the foregoing successfully, the Debtors seek a waiver of the 14-day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h).

## Reservation of Rights

21.    Nothing contained in this Motion or any actions taken by the Debtors pursuant to relief granted in the Order is intended or should be construed as:  (a) an admission as to the validity or amount of any particular claim against a Debtor entity other than the Agreed Claim; (b) a waiver of the Debtors' rights to dispute any particular claim on any grounds other than the Agreed Claim; (c) an implication or admission that any particular claim is of a type specified or defined in this Motion, other than the Agreed Claim; (d) a waiver or limitation of the Debtors' rights under the Bankruptcy Code or any other applicable law except as set forth in the Claims Settlement Agreement; or (e) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code.

## Notice

22.    The Debtors shall provide notice of this Motion on the date hereof via first class mail to:  (a) the U.S. Trustee; (b) counsel to the TCEH Creditors' Committee; (c) the EFH Creditors' Committee and proposed counsel thereto; (d) Wilmington Trust, N.A., in its capacity

as administrative agent under the TCEH first lien credit agreement and collateral agent under the TCEH intercreditor agreements and counsel thereto; (e) Bank of New York Mellon Trust Company, N.A., in its capacity as indenture trustee under: (i) the TCEH unsecured pollution control revenue bonds; and (ii) the EFCH 2037 Notes due 2037, and counsel thereto; (f) American Stock Transfer & Trust Company, LLC, in its capacity as indenture trustee under: (i) the 9.75% EFH senior unsecured notes due 2019; (ii) the 10.0% EFH senior unsecured notes due 2020; (iii) the 10.875% EFH LBO senior unsecured notes due 2017; (iv) the 11.25%/12.0% EFH LBO toggle notes due 2017; (v) the 5.55% EFH legacy notes (series P) due 2014; (vi) the 6.50% EFH legacy notes (series Q) due 2024; and (vii) the 6.55% EFH legacy notes (series R) due 2034, and counsel thereto; (g) Computershare Trust Company, N.A. and Computershare Trust Company of Canada, in their capacities as indenture trustee under: (i) the 11.0% EFIH senior secured second lien notes due 2021; and (ii) the 11.75% EFIH senior secured second lien notes due 2022, and counsel thereto; (h) UMB Bank, N.A. in its capacity as indenture trustee under: (i) the 9.75% EFIH senior unsecured notes due 2019; and (ii) the 11.25%/12.25% EFIH senior toggle notes due 2018, and counsel thereto; (i) Delaware Trust Company of Delaware in its capacity as indenture trustee under: (i) the 6.875% EFIH senior secured notes due 2017; (ii) the 10.0% EFIH senior secured notes due 2020; and (iii), the 11.50% TCEH senior secured notes due 2020, and counsel thereto; (j) Law Debenture Trust Company of New York in its capacity as indenture trustee under: (i) the 10.25% TCEH senior unsecured notes due 2015; and (ii) the 10.50%/11.25% TCEH senior toggle notes due 2016, and counsel thereto; (k) Wilmington Savings Fund Society, FSB in its capacity as indenture trustee under the 15.0% TCEH senior secured second lien notes due 2021, and counsel thereto; (l) counsel to certain holders of claims against the Debtors regarding each of the foregoing described in clauses

(c) through (j); (m) the agent for the TCEH debtor-in-possession financing facility and counsel thereto; (n) the agent for the EFIH debtor-in-possession financing facility and counsel thereto; (o) counsel to certain holders of equity in Texas Energy Future Holdings Limited Partnership; (p) counsel to the Ad Hoc Committee of TCEH Unsecured Noteholders; (q) counsel to the Ad Hoc Committee of TCEH Second Lien Noteholders; (r) Oncor Electric Delivery Holdings Company LLC and counsel thereto; (s) Oncor Electric Delivery Company LLC and counsel thereto; (t) the Securities and Exchange Commission; (u) the Internal Revenue Service; (v) the Office of the United States Attorney for the District of Delaware; (w) the Office of the Texas Attorney General on behalf of the Public Utility Commission of Texas; (x) counsel to the Electric Reliability Council of Texas; (y) those parties that have requested notice pursuant to Bankruptcy Rule 2002; and (z) ADA.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

## No Prior Request

23.    No prior request for the relief sought in this Motion has been made to this or any other court.

WHEREFORE, the Debtors respectfully request that the Court enter the Order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested in this Motion and granting such other and further relief as is appropriate under the circumstances.

11

Wilmington, Delaware
Dated:  December 23, 2014

/s/ William A. Romanowicz
**RICHARDS, LAYTON & FINGER, P.A.**
Mark D. Collins (No. 2981)
Daniel J. DeFranceschi (No. 2732)
Jason M. Madron (No. 4431)
William A. Romanowicz (No. 5742)
920 North King Street
Wilmington, Delaware 19801
Telephone:  (302) 651-7700
Facsimile:  (302) 651-7701
Email:  collins@rlf.com
defranceschi@rlf.com
madron@rlf.com
romanowicz@rlf.com

-and-

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Edward O. Sassower, P.C. (admitted *pro hac vice*)
Stephen E. Hessler (admitted *pro hac vice*)
Brian E. Schartz (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022-4611
Telephone:  (212) 446-4800
Facsimile:  (212) 446-4900
Email:  edward.sassower@kirkland.com
stephen.hessler@kirkland.com
brian.schartz@kirkland.com

-and-

James H.M. Sprayregen, P.C. (admitted *pro hac vice*)
Marc Kieselstein, P.C. (admitted *pro hac vice*)
Chad J. Husnick (admitted *pro hac vice*)
Steven N. Serajeddini (admitted *pro hac vice*)
300 North LaSalle
Chicago, Illinois 60654
Telephone:  (312) 862-2000
Facsimile:  (312) 862-2200
Email:  james.sprayregen@kirkland.com
marc.kieselstein@kirkland.com
chad.husnick@kirkland.com
steven.serajeddini@kirkland.com

Co-Counsel to the Debtors and Debtors in Possession

RLF1 11310889v.1