# **EXHIBIT A**

**Proposed Order**

RLF1 11310889v.1

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | ) | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) | Case No. 14-10979 (CSS) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**ORDER APPROVING THE CLAIMS SETTLEMENT
AGREEMENT BETWEEN LUMINANT GENERATION
COMPANY LLC AND ADA CARBON SOLUTIONS (RED RIVER) LLC**

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors"), for entry of an order (this "Order") approving the Claims Settlement Agreement, all as more fully set forth in the Motion; and upon the Frenzel Declaration; and the Court having found that it has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and the Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and the Court having found that venue of these cases and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and the Court having found that the Debtors provided appropriate notice of the Motion and the opportunity for a hearing on the Motion under the circumstances; and the Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing, if any, before the Court (the "Hearing"); and the Court

---

[1] The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, for which joint administration has been granted, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion and the Claims Settlement Agreement.

having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before the Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1. The Motion is granted as set forth herein.

2. The terms of the Claims Settlement Agreement are fair and reasonable and in the best interests of the Debtors' estates, and pursuant to section 363(b) of the Bankruptcy Code and Bankruptcy Rule 9019, the Claims Settlement Agreement is approved.

3. The Parties are authorized to enter into, perform, execute, and deliver all documents, and take all actions, necessary to immediately continue and fully implement the Claims Settlement Agreement in accordance with the terms, conditions, agreements, and releases set forth therein, all of which are hereby approved.

4. Notice of the Motion as provided therein shall be deemed good and sufficient and the requirements of the Local Bankruptcy Rules are satisfied by such notice.

5. Notwithstanding the possible applicability of Bankruptcy Rules 6004(h), 7062, 9014 or otherwise, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

6. All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

7. The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Motion.

3

8. The Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation of this Order.

Wilmington, Delaware
Dated: _____, 2014

                                                    THE HONORABLE CHRISTOPHER S. SONTCHI
                                                    UNITED STATES BANKRUPTCY JUDGE

*EXECUTION VERSION*

# CLAIM SETTLEMENT AGREEMENT

**THIS AGREEMENT** (as may be amended or modified from time to time, this "Agreement") is made and entered into as of December 13, 2014, by and among Luminant Generation Company LLC ("Luminant Generation") and ADA Carbon Solutions (Red River) LLC, (f/k/a/ Red River Environmental Products, LLC) ("ADA") (together with any affiliates and successors thereto, the "Claimant" and, together with Luminant Generation, the "Parties").

**WHEREAS**, on April 29, 2014 (the "Petition Date"), Luminant Generation and certain of its affiliates (collectively, the "Debtors") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") with the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"), which have been jointly administered under case number 14-10979 (CSS) (collectively, the "Chapter 11 Cases");

**WHEREAS**, the Parties are each party to that certain Carbon Supply Agreement dated September 3, 2008 (together with any related agreements, amendments, or modifications thereto, the "Carbon Supply Agreement");

**WHEREAS**, on October 24, 2014, the Claimant filed proofs of claim in the Chapter 11 Cases against Luminant Generation and certain of its Debtor affiliates in the aggregate amount of $8,632,963.00, which claims have been numbered in the claims register in the Chapter 11 Cases as consecutive claim numbers 7002 through 7072 (collectively, the "ADA Claim");

**WHEREAS**, on November 26, 2014, the Debtors filed a *Notice of Rejection of Certain Executory Contracts and/or Unexpired Leases and Related Relief Thereto* [D.I. 2907], together with a schedule listing the Carbon Supply Agreement (the "Rejection Schedule"), seeking entry of an order approving the rejection of the Carbon Supply Agreement;

**WHEREAS**, the Debtors shall file a motion in the Chapter 11 Cases seeking entry of a non-appealable, final order of the Bankruptcy Court approving this Agreement;

**WHEREAS**, ADA alleges that the rejection damages claim arising from such rejection (excluding amounts included in the ADA Claim) is $74,347,723.00;

**WHEREAS**, the parties are currently negotiating a new Standard Blanket for Product for Brominated Activated Carbon Agreement (the "New Carbon Supply Agreement"), which shall become effective on the Effective Date (defined below); and

**WHEREAS**, by this Agreement, the Parties seek to settle any claims the Claimant may have against the Debtors, including the ADA Claim and any claims on account of the rejection of the Carbon Supply Agreement, and to agree to all other terms and provisions contained herein;

**NOW THEREFORE**, in consideration of the foregoing and of the mutual covenants set forth herein, the Parties agree as follows.

1. **Termination of the Carbon Supply Agreement**. Upon the entry of an order of the Bankruptcy Court approving the rejection of the Carbon Supply Agreement, the Carbon Supply Agreement shall be deemed rejected and terminated.

KE 33966329

2.      **Agreed Claims.**  The Claimant shall receive an allowed general unsecured claim in the amount of $20,000,000.00 and an allowed priority claim under section 503(b)(9) of the Bankruptcy Code in the amount of $247,582.10 on account of the ADA Claim and rejection of the Carbon Supply Agreement (collectively, the "Agreed Claim").

3.      **Conditions to Effectiveness.**  Notwithstanding anything to the contrary herein, this Agreement shall not be effective until the date that (a) the Bankruptcy Court has entered (i) an order authorizing the rejection of the Carbon Supply Agreement, and (ii) an order approving this Agreement, and (b) ADA and Luminant have entered into the New Carbon Supply Agreement (the "Effective Date").  The Parties' obligations with respect to this Agreement are expressly subject to the occurrence of the Effective Date.  Luminant Generation shall take reasonably necessary steps to obtain approval of this Agreement by the Bankruptcy Court, including filing a motion for approval of this Agreement, as soon as reasonably practicable.  Unless otherwise agreed to in writing by the Claimant and Luminant Generation, if the Effective Date does not occur on or before February 28, 2015, this Agreement shall be null and void in all respects, and nothing contained in this Agreement shall (a) constitute a waiver or release of any claims by or claims against the Debtors or (b) constitute an admission, acknowledgment, offer, or undertaking by the Parties or any other entity in any respect.

4.      **Release of the Debtors.**  Except with respect to the Agreed Claim, which shall be allowed as provided in paragraph 2 of this Agreement, upon the Effective Date, for good and valuable consideration, the sufficiency of which is hereby acknowledged, the Claimant shall, to the maximum extent allowed by applicable law, release, waive, and discharge the Debtors, their respective affiliates, parents, subsidiaries, members, principals, shareholders, officers, directors, employees, representatives, agents, financial advisors, attorneys, accountants, investment bankers, consultants, and other professionals, and any person or entity seeking to exercise the rights of the Debtors' estates, including any successors to the Debtors or any estate representative appointed or selected pursuant to section 1123(b)(3) of the Bankruptcy Code and the Debtors' property, from any and all claims, interests, obligations, debts, rights, suits, damages, causes of action, remedies, and liabilities arising under the Carbon Supply Agreement before or after the Petition Date or on account of rejection of the Carbon Supply Agreement whatsoever, including any derivative claims, whether known or unknown, foreseen or unforeseen, liquidated or unliquidated, contingent or non-contingent, existing or hereafter arising, in law, at equity or otherwise (including any avoidance actions under Chapter 5 of the Bankruptcy Code), any damages resulting from the rejection of the Carbon Supply Agreement or administrative expenses arising under the Carbon Supply Agreement before or after the Petition Date, including under sections 503(b)(1)(A) and (b)(9), whether for tort, contract, violations of federal or state securities laws, or otherwise, based on or relating to, or in any manner arising from, in whole or in part, the Carbon Supply Agreement; *provided, however,* that nothing herein shall be deemed to release any claim of Claimant (a) judicially determined to have arisen from fraud, bad faith, or willful misconduct or (b) for unpaid amounts on account of activated carbon actually delivered, or in the process of being delivered, by ADA to the Debtors in the ordinary course of business in accordance with the Carbon Supply Agreement.

5.      **Release of Claimant**.  Upon the Effective Date, for good and valuable consideration, the sufficiency of which is hereby acknowledged, the Debtors shall, to the maximum extent allowed by applicable law, release, waive, and discharge the Claimant, its respective affiliates, parents,

subsidiaries, members, principals, shareholders, officers, directors, employees, representatives, agents, financial advisors, attorneys, accountants, investment bankers, consultants, and other professionals, and any person or entity seeking to exercise the rights of the Claimant's estates, including any successors to the Claimant or any estate representative appointed or selected pursuant to section 1123(b)(3) of the Bankruptcy Code and the Claimant's property, from any and all claims, interests, obligations, debts, rights, suits, damages, causes of action, remedies, and liabilities arising under the Carbon Supply Agreement before or after the Petition Date or on account of rejection of the Carbon Supply Agreement whatsoever, including any derivative claims, whether known or unknown, foreseen or unforeseen, liquidated or unliquidated, contingent or non-contingent, existing or hereafter arising, in law, at equity or otherwise (including any avoidance actions under Chapter 5 of the Bankruptcy Code), whether for tort, contract, violations of federal or state securities laws, or otherwise based on or relating to, or in any manner arising from, in whole or in part, the Carbon Supply Agreement; *provided, however,* that nothing herein shall be deemed to release any claim of the Debtors (a) judicially determined to have arisen from fraud, bad faith, or willful misconduct or (b) for unpaid amounts on account of activated carbon actually delivered, or in the process of being delivered, by ADA to the Debtors in the ordinary course of business in accordance with the Carbon Supply Agreement.

6. **Successors and Assigns.**  The provisions of this Agreement shall be binding on the Parties and their successors and assigns and shall inure to the benefit of the Parties and their successors and assigns.

7. **Entire Agreement.**  This Agreement constitutes the entire agreement and understanding between the Parties with respect to the subject matter hereof, and there are no representations, understandings, or agreements relative hereto which are not fully expressed herein.  This Agreement may not be modified, altered, or amended in whole or in part except by a written instrument executed by each Party.

8. **Governing Law.**  This Agreement shall be governed by and construed under the laws of the State of New York.

9. **Jurisdiction**.  The Parties consent to the exclusive jurisdiction of the Bankruptcy Court with respect to this Agreement.  The Parties hereby irrevocably waive any objection on the grounds of venue, forum non conveniens, or any similar grounds and irrevocably consent to service of process by mail or in any other manner permitted by applicable law.  In the event that the Bankruptcy Court declines to or may not accept jurisdiction over a particular matter, the Parties agree to then proceed in the Texas State District Court.  The Parties further hereby waive any right to a trial by jury with respect to any lawsuit or judicial proceeding arising or relating to this Agreement.

10. **No Reliance.**  Each Party represents and warrants that in entering into this Agreement it is relying on its own judgment, belief and knowledge and, as applicable, on that of any attorney it has retained to represent it in this matter.  In entering into this Agreement, no Party is relying on any representation or statement made by any other Party or any person representing such other Party.

11. **Construction.** This Agreement has been drafted through a cooperative effort of both Parties, and neither Party shall be considered the drafter of this Agreement so as to give rise to any presumption of convention regarding construction of this document. All terms of this Agreement were negotiated in good faith and at arm's-length, and this Agreement was prepared and executed without fraud, duress, undue influence, or coercion of any kind exerted by any of the Parties upon the other. The execution and delivery of this Agreement is the free and voluntary act of the Parties.

12. **No Liability.** It is understood and agreed by the Parties that this Agreement represents a settlement and compromise of disputed claims and neither this Agreement itself, any of the payments or covenants described herein, nor anything else connected with this Agreement is to be construed as an admission of fault or liability.

13. **Execution in Counterparts.** This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. All signatures of the Parties to this Agreement may be transmitted by facsimile or by electronic mail, and such transmission will, for all purposes, be deemed to be the original signature of such Party whose signature it reproduces, and will be binding upon such Party.

14. **Severability.** If any provision of this Agreement is determined to be prohibited or unenforceable by reason of any applicable law of a jurisdiction, then such provision shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions thereof, and any such prohibition or unenforceability in such jurisdiction shall not invalidate or render unenforceable such provisions in any other jurisdiction.

15. **Compliance with Applicable Law.** The Parties represent, warrant, and covenant that each document, notice, instruction, or request provided by each respective Party shall comply with applicable laws and regulations. Where, however, the conflicting provisions of any such applicable law may be waived, they are hereby irrevocably waived by the parties hereto to the fullest extent permitted by law, to the end that this Agreement shall be enforced as written.

16. **No Third-Party Beneficiaries.** Nothing in this Agreement, whether express or implied, shall be construed to give to any person or entity other than the Parties any legal or equitable right, remedy, interest or claim under or in respect of this Agreement.

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the date set forth above.

| | |
|---|---|
| **LUMINANT GENERATION COMPANY LLC**, on behalf of itself and the other Debtors | **ADA CARBON SOLUTIONS (RED RIVER), LLC** |
| By: _____ | By: _____ |
| Robert Frenzel<br>Senior Vice President and CFO | Brian Leen<br>President and CEO |

KE 33966329