IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| ENERGY FUTURE HOLDINGS | ) | Case No. 14-10979 (CSS) |
| CORP., et al., | ) | |
| | ) | (Jointly Administered) |
| Debtors. | ) | Re: Docket No. 1682 |

## <u>OPINION</u>

Before the Court is a Bar Date Motion (as defined below) through which the above-captioned debtors and debtors in possession (the "Debtors") request the Court to establish a bar date for claims of unknown persons that have yet to manifest any sign of illness from exposure to asbestos ("Unmanifested Claimants" and "Unmanifested Claims").[1]  The Unminifested Claimants were (allegedly) exposed to asbestos at one of the Debtors' facilities prior to the petition date, yet, as of the date hereof, do not know, even with appropriate due diligence, that they will become ill, due to the potential for a long latency period between asbestos exposure and illness.  The Debtors have requested that a bar date be established for these Unmanifested Claims.  As set forth in detail, *infra*, the Court will establish a bar date for *all* prepetition claims, including Unmanifested Claims.

---

[1] The Debtors and the PI Law Firms, defined *infra*, have limited the scope of the issue before the Court to whether the Court should enter a bar date for unmanifested claims.  There is no dispute over the establishment of a bar date for any other claims, including manifested claims arising from asbestos exposure.  The parties have agreed to address the requirements of the content and scope of the notice required for the bar date at a later time.

## JURISDICTION

This Court has jurisdiction over this matter pursuant to 28 U.S.C. sections 157 and 1334.  Venue is proper in this District pursuant to 28 U.S.C. sections 1408 and 1409.  This is a core proceeding pursuant to 28 U.S.C. section 157(b)(2).  The Court has the judicial authority to enter a final order.

## STATEMENT OF FACTS

### A.  Procedural History

On April 29, 2014, each of the Debtors filed a voluntary petition with the court under Chapter 11 of the Bankruptcy Code.  The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

On July 23, 2014, the Debtors filed a motion seeking a bar date for prepetition claims (the "Bar Date Motion").[2]  Thereafter, certain asbestos personal injury law firms filed an objection to the Bar Date Motion.[3]  The Debtors filed a reply to the PI Law Firm's Objection in which the Debtors modified its bar date request, thus narrowing the issues to those discussed below.  At a hearing on August 13, 2014, the Court heard the Bar Date Motion.  At the conclusion of the hearing, the Court approved the Bar Date Motion as it related to non-asbestos claims and continued the Bar Date Motion (solely as it related to

---

[2] D.I. 1682.

[3] D.I. 1796.  The objectors are Gori Julian & Associates, P.C., Simmons Hanley Conroy, Paul Reich & Meyers, P.C., Kazan McClain, Satterley & Greenwood, a Professional Law Corporation, and Early, Lucarelli, Sweeney & Meisenkothen (collectively referred to herein as the "PI Law Firms").  The PI Law Firms represent over 125 asbestos claimants.

asbestos claims) to a hearing scheduled for September 16, 2014.[4]  Thereafter, the Court

authorized additional briefing, which was filed on September 9, 2014.[5]  Shortly before the

September 16th hearing, the Office of the United States Trustee announced that it would

solicit asbestos claimants to determine whether an asbestos claims committee should be

formed.[6]  In light of the potential for the formation of an asbestos committee, the Court

granted a final continuance of this matter.  Thereafter, on October 27, 2014, the United

States Trustee formed a statutory committee of unsecured creditors whereon two of the

five members are asbestos claimants (the "E-side Committee").[7]  The Court heard

argument solely as it related to the establishment of a bar date for unmanifested asbestos

claims on the continued date of October 28, 2014.  Thereafter, the Court took this matter

under advisement.  To date, neither the E-side Committee nor the T-side Committee have

---

[4]  Although the Court made some preliminary rulings at the August 13, 2014, hearing, the Court subsequently decided to hear the asbestos bar date issue *de novo* at the hearing scheduled for September 16, 2014.

[5]  *See* D.I. 1983 and 1984.

[6]  The United States Trustee had previously appointed a committee of unsecured creditors (the "T-side Committee"). *See* D.I. 420.  None of the members of the T-side Committee, however, are asbestos claimants.

The T-side Committee is composed of creditors of Energy Future Competitive Holdings Company LLC ("EFCH"), EFCH's direct subsidiary, Texas Competitive Holdings Company LLC ("TCEH"), TCEH's direct and indirect subsidiaries, and EFH Corporate Services Company. This committee represents the interests of the unsecured creditors of the aforementioned debtors and no others.

[7]  D.I. 2570.  The E-side Committee is composed of creditors of Energy Future Holdings Corp.; Energy Future Intermediate Holding Company, LLC; EFIH Finance, Inc.; and EECI.  This committee represents the interests of the unsecured creditors of the aforementioned debtors and no others.

submitted any position papers with regard to the issue raised herein.  The only pending objection is that of the PI Law Firms.

## B.  Factual History Related to Bar Date Motion and Asbestos Claims

According to the PI Law Firms, both nuclear and electric power generation produces extreme amounts of heat.  The presence of this heat necessitates the installment of insulation throughout power plants including in the walls, wires, pipes, boilers and generators.  As such, historically, power plants were depositories of asbestos and asbestos-laden materials and products.  In addition to its presence throughout the plant and equipment, workers responsible for building and maintaining the plants and equipment would wear insulated clothing or gear to do their jobs.  For years, these pants, coats, aprons, mitts and masks contained asbestos.  Asbestos exposure was virtually unavoidable in power plants built prior to 1980.  EECI, one of the Debtors, was at one time known as Ebasco, which was at various times affiliated with Boise Cascade, Halliburton and Raytheon Corporation (all of which have had asbestos-related personal injury liability).

The Debtors scheduled 392 asbestos-related cases against the Debtors, including approximately 121 cases being defended (20 of which are related to the Debtors' electricity generation activities) and approximately 270 cases where the Debtors have rejected indemnification demands.  The Debtors believe that litigation and settlement expenses incurred in connection with asbestos claims against the Debtors are not

material.  The Debtors estimate that their asbestos expenses average up to $3 million annually.[8]  The Debtors further believe that their restructuring is unlikely to be driven by asbestos claims or result in a channeling injunction under section 524(g) of the Bankruptcy Code.  The Debtors assert that the purported asbestos claims against the Debtors, like all of the Debtors' liabilities, reflect a point of due diligence for parties participating in the ongoing marketing process of EFH Corp.  Thus, the Debtors and potential bidders seek to use the tools available in the Bankruptcy Code to gather information regarding their outstanding liabilities and to bar *all* "claims" that are not properly and timely filed.

The Debtors filed the Bar Date Motion seeking to establish October 27, 2014, as the "General Bar Date" in these cases for all claims;[9] as the hearing on the asbestos bar date was scheduled on October 28, 2014, the Debtors are seeking authority to establish such date in the future.  The PI Law Firms object to any bar date that would apply to Unmanifested Claims.  The PI Law Firms advance two main arguments: (i) because

---

[8] Tr. Hr'g Aug. 13, 2014 71:14-16 (D.I. 1945).  *Compare* Declaration of Paul Keglevic, Executive Vice President, Chief Financial Officer, and Co-Chief Restructuring Office of Energy Future Holdings Corp., *et al.*, in Support of First Day Motions at ¶ 21 (estimating $36 billion in assets, $49 billion in liabilities, including funded indebtedness, and $5.9 billion in consolidated annual revenues for the year ending December 31, 2013).

[9] On the petition date, the Debtors filed a motion seeking approval and continuation of its customer programs (the "Customer Programs Motion," D.I. 31).  The Customer Programs Motion sought authority to, among other things, establish the Customer Claims Bar Date (as defined in the Customer Programs Motion) as the deadline by which each customer (including governmental units asserting claims solely in their capacities as customers of the Debtors) must file its proof of claim against any of the Debtors.  The Court approved the Customer Programs Motion and established October 27, 2014, as the Customer Programs Bar Date. D.I. 307.

asbestos-related injuries may not be diagnosed for up to 50 years after exposure, publication notice does not satisfy the requirements of due process for an *entire class of claimants that are so unknown as to be unknown even to themselves*; and (ii) asbestos liabilities are best (and, indeed, must be) addressed through the creation of an asbestos personal injury trust.

## LEGAL DISCUSSION

### A.    The PI Law Firms Lack Standing to Object to the Bar Date Motion

Section 1109(b)[10] allows a creditor to be heard on any issue in a bankruptcy case. It does not, however, change the general principle of standing that a party may assert only its own legal interests and not the interests of another.[11]  The Third Circuit has described a party-in-interest as "'anyone who has a legally protected interest that could be affected by a bankruptcy proceeding.'"[12]

---

[10]  Section 1109(b) states:

> A party in interest, including the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee, may raise and may appear and be heard on any issues in a case under this chapter.

11 U.S.C. § 1109(b).

[11]  *In re ANC Rental Corp., Inc.*, 278 B.R. 714, 719 (Bankr. D. Del. 2002) (citations omitted).  *See also Matter of James Wilson Associates*, 965 F.2d 160, 169 (7th Cir. 1992) ("We think all the section [1109(b)] means is that anyone who has a legally protected interest that could be affected by a bankruptcy proceeding is entitled to assert that interest with respect to any issue to which it pertains, thus making explicit what is implicit in an *in rem* proceeding—that everyone with a claim to the *res* has a right to be heard before the *res* is disposed of since that disposition will extinguish all such claims.").

[12]  *In re Global Indus. Technologies, Inc.*, 645 F.3d 201, 210 (3d Cir. 2011) (adopting and quoting the test from *Matter of James Wilson Associates*, 965 F.2d 160, 169 (7th Cir. 1992)).

This ruling is limited to Unmanifested Claims.  The PI Law Firms do not represent any Unmanifested Claimants nor do the PI Law Firms have a legally protected interest independent of their potential, future clients.[13]   While the Unmanifested Claimants would have standing to object to the bar date at issue herein;[14] the Court finds that the PI Law Firms do not have standing to raise an objection to the Bar Date Motion.

Although the PI Law Firms do not have standing to object to the Bar Date Motion and, thus, there is no pending objection to the motion, given the due process concerns in play, the Court, in exercising its independent review, will consider the PI Law Firms' arguments in determining whether to establish a bar date for Unmanifested Claims.

---

[13]  *Kowalski v. Tesmer*, 543 U.S. 125, 129 (2004) ("We have adhered to the rule that a party generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." (citations and internal quotation marks omitted)); *Fieger v. Ferry*, 471 F.3d 637, 648 (6th Cir. 2006) ("As a general matter, a plaintiff must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties.  However, the Supreme Court has delineated exceptions to its prudential limitation on third party standing, and has allowed plaintiffs to assert the rights of a third party where practical obstacles prevent a party from asserting rights on behalf of itself.  To fit within this exception, a plaintiff must show three elements: first, injury in fact; second, a close relationship with the third party whose rights he asserts; and third, that the third party has no forum to protect its own interests." (citations and internal quotation marks omitted)).

[14]  As a predicate to discussing the unmanifested claimants' right to counsel, the court in *In re Johns-Manville Corp.*, 36 B.R. 743 (Bankr. S.D.N.Y. 1984), analyzed whether unmanifested claimants had standing to appear and be heard under section 1109(b).  The *Johns-Manville* Court found that

> . . . a resolution of the interests of the future claimants is a central focus of these reorganization proceedings.  Any plan emerging from this case which ignores these claimants would serve the interests of neither the debtor nor the creditor constituencies in that the central short and long-term economic drain on the debtor would not have been eliminated.

*Id.* at 746.  As a result, the potential future claimants were found to have standing.  *Id.* at 747-57.

**B.  Why Establish a Bar Date?**

Bankruptcy Rule 3003(c)(3) provides:

> Time for Filing.  The court **shall** fix and for cause shown may extend time within which proofs of claim or interest may be filed.  Notwithstanding the expiration of such time, a proof of claim may be filed to the extent and under the conditions stated in Rule 3002(c)(2), (c)(3), and (c)(4).[15]

"A bar date serves the important purpose of enabling the parties to a bankruptcy case to identify with reasonable promptness the identity of those making claims against the bankruptcy estate, and the general amount of the claims, a necessary step in achieving the goal of successful reorganization.  It is akin to a statute of limitations, and must be strictly observed."[16]  This rule "contributes to one of the main purposes of bankruptcy law, securing, within a limited time, the prompt and effectual administration and settlement of the debtor's estate."[17]

> Absent the setting of a bar date, a Chapter 11 case could not be administered to a conclusion.  There would be no time established for the filing of claims.  But it is essential to the bar date mechanism that notice be given to creditors consistent with the demands of due process, for as provided in Rule 3003(c)(2), a creditor who fails to file a claim within the time allowed is precluded from being treated as a creditor and from both voting on a plan and receiving a distribution from estate property.  Failure to give notice consistent with due process surely constitutes cause under Rule 3003(c)(3).  A

---

[15]  Bankr. R. 3003(c)(3) (emphasis added).

[16]  *In re Victory Mem'l Hosp.*, 435 B.R. 1, 4 (Bankr. E.D.N.Y. 2010) (internal quotation marks and citations omitted).

[17]  *In re Smidth & Co.*, 413 B.R. 161, 165 (Bankr. D. Del. 2009) (citations omitted).

failure to do so would require that the filing of late claim be permitted.[18]

Furthermore, "[t]he objectives of finality and fixing the universe of claims permeate the law of bankruptcy, and in achieving those ends, the setting of a bar date is no more unfair, assuming reasonable notice, than is a statute of limitations, a finality concept firmly embedded in our legal system generally.  Tort claimants can have their right to pursue their claims foreclosed if they fail to take action before the expiration of a statute of limitations.  It is no more unfair to require that they here take action before expiration of the bar date."[19]

## C.  The Unmanifested Claims Arose Prior to the Petition Date

In the Third Circuit, a "'claim' arises when an individual is exposed pre-petition to a product or other conduct giving rise to an injury, which underlies a 'right to payment'

---

[18] *In re Waterman S.S. Corp.*, 59 B.R. 724, 726 (Bankr. S.D.N.Y. 1986).  *See also In re Drexel Burnham Lambert Grp. Inc.*, 151 B.R. 674, 679 (Bankr. S.D.N.Y. 1993) *aff'd sub nom. In re Drexel Burnham Lambert Grp., Inc.*, 157 B.R. 532 (S.D.N.Y. 1993) ("The issuance of the claims bar date is an essential feature of the reorganization process because it provides a date certain after which a plan can be negotiated, formulated, and eventually confirmed.  The bar date is much more than a means to limit claims; it provides finality to a process that will ultimately lead to the rehabilitation of the debtor and the payment of claims under a plan of reorganization." (citations omitted)); *In re Best Products Co., Inc.*, 140 B.R. 353, 357 (Bankr. S.D.N.Y. 1992) ("The bar order then is not a mere procedural gauntlet, but an integral step in the reorganization process. A personal injury claimant is given no special dispensation.  The claimant must comply with the Code, the Federal Rules of Bankruptcy Procedure, and court orders for claims handling procedures before there is a valid bankruptcy claim ripe for liquidation by the district court or the court where such claim arose." (citations omitted)).  *But see In re Eagle-Picher Indus., Inc.*, 137 B.R. 679, 680-81 (Bankr. S.D. Ohio 1992) ("A bar date in a Chapter 11 case is by no  means an absolute, as the court may extend the bar date 'for cause shown,' B.R. 3003(c)(3), a matter left to the sound discretion of the bankruptcy court." (citations omitted)).

[19]  *In re Eagle-Picher Indus., Inc.*, 137 B.R. 679, 682 (Bankr. S.D. Ohio 1992).  However, the *Eagle-Picher Industries* court did **not** establish a bar date for unmanifested claimants.  *Id.* at 680 ("Future claimants, of course, would not be affected by a bar date, for they are as a class inherently unknown and unknowable.").  Furthermore, the *Eagle-Picher Industries* Court further noted that it scheduled a valuation of the debtor's asbestos liability when it rendered its decision to establish a bar date.  *Id.* at 680 n.1.

under the Bankruptcy Code."[20]    In *Grossman's*, the Third Circuit applied this rule in holding that a claimant's pre-petition exposure to a product, such as asbestos, gives rise to the claim, even though the injury manifests after the reorganization.[21]    The Third Circuit then stated that this does not necessarily mean that a claimant's claims are discharged by the plan confirmed in the case.  Rather, due process considerations could revive a claim.[22]  In other words, inadequate notice would preclude discharge of a claim in bankruptcy.[23]

As the Unmanifested Claimants, if any, were exposed to asbestos prior to the Debtors' petition date, any claims against the Debtors flowing from that exposure, i.e., the Unmanifested Claims, arose prior to the petition date.

### D. Would The Discharge of the Unmanifested Claims Be Consistent With Due Process?

The heart of the issue before the Court is whether the discharge of the Debtors' liability for Unmanifested Claims would be consistent with due process.  If the nature of

---

[20] *Jeld-Wen, Inc. v. Van Brunt (In re Grossman's Inc.)*, 607 F.3d 114, 125 (3d Cir. 2010) (citing 11 U.S.C. § 101(5)). *Grossman's* overturned the Third Circuit's prior holding that under the Bankruptcy Code claims did not arise until a cause of action accrued under applicable non-bankruptcy law—in other words, when a claimant possessed a right to payment.  *Matter of M. Frenville Co., Inc.*, 744 F.2d 332 (3d Cir. 1984) *overruled by Jeld-Wen, Inc. v Van Brunt (In re Grossman's Inc.)*, 607 F.3d 114 (3d Cir. 2010).

[21]  *Grossman's*, 607 F.3d at 125.  *Wright v. Corning*, 679 F.3d 101, 107 (3d Cir. 2012) *cert. denied*, 133 S. Ct. 1239, 185 L. Ed. 2d 177 (2013) ("We thus restate the test announced in *Grossman's* to include such exposure and hold that a claim arises when an individual is exposed *pre-confirmation* to a product or other conduct giving rise to an injury that underlies a "right to payment" under the Code." (emphasis supplied)).

[22]  *Grossman's*, 607 F.3d at 125.

[23]  *Id.* at 126 ("Without notice of a bankruptcy claim, the claimant will not have a meaningful opportunity to protect his or her claim.")  (citations omitted).

the claims is such that due process dictates that discharge is unavailable then there is no point in undergoing the expense and confusion of establishing a bar date. However, if discharge might be available then establishment of a bar date could be appropriate as a first step in the Debtors' pursuit of such a discharge.

In *Grossman's*, the Third Circuit discussed a non-comprehensive list of factors for courts to consider in determining whether an asbestos claim has been discharged by a plan of reorganization:

> Whether a particular claim has been discharged by a plan of reorganization depends on factors applicable to the particular case and is best determined by the appropriate bankruptcy court or the district court. In determining whether an asbestos claim has been discharged, the court may wish to consider, *inter alia*, the circumstances of the initial exposure to asbestos, whether and/or when the claimants were aware of their vulnerability to asbestos, whether the notice of the claims bar date came to their attention, whether the claimants were known or unknown creditors, whether the claimants had a colorable claim at the time of the bar date, and other circumstances specific to the parties, including whether it was reasonable or possible for the debtor to establish a trust for future claimants as provided by § 524(g).[24]

In short, such claims *may* be discharged on a case by case basis under the totality of the circumstances.

Section 523(a)(3)(A) of the Bankruptcy Code provides that a creditor's claim may be discharged upon the bankruptcy plan's confirmation if the "creditor had notice or

---

[24] *Id.* at 127-28.

actual knowledge of the case in time for . . . timely filing."[25]  Due process requires that notice be "reasonably calculated, under all the circumstances, to inform interested parties of the pendency" of a proceeding.[26]

The level of notice required by the Due Process Clause depends on whether a creditor is "known" or "unknown." A debtor must provide actual notice to all "known creditors" in order to discharge their claims.[27]  Known creditors include both claimants actually known to the debtor and those whose identities are "reasonably ascertainable."[28] "A creditor's identity is reasonably ascertainable if that creditor can be identified through reasonably diligent efforts.  Reasonable diligence does not require impracticable and extended searches.  The requisite search for a known creditor, instead, usually requires only a careful examination of a debtor's books and records."[29]  By contrast, the debtor need only provide "unknown creditors" with constructive notice by publication.[30] Constructive notice must be "reasonably calculated, under the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present

---

[25] 11 U.S.C. § 523(a)(3)(A).

[26] *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950).

[27] *City of New York v. New York, N.H. & H.R. Co.*, 344 U.S. 293, 295–97 (1953).

[28] *Tulsa Prof'l Collection Servs., Inc. v. Pope*, 485 U.S. 478, 489–90 (1988).  *See also In re W.R. Grace & Co.*, 316 F. App'x 134, 137 (3d Cir. 2009).

[29] *In re W.R. Grace & Co.*, 316 F. App'x 134, 137 (3d Cir. 2009) (citations omitted).

[30] *Chemetron Corp. v. Jones*, 72 F.3d 341, 346 (3d Cir. 1995) (citations omitted).

their objections."[31]  "Publication in national newspapers is regularly deemed sufficient notice to unknown creditors, especially where supplemented . . . with notice in papers of general circulation in locations where the debtor is conducting business."[32]

As the Unmanifested Claimants are "unknown" creditors, the issue becomes whether due process can be satisfied by publication notice.  Discussion of the evolving case law on that point follows:

       *i.*     *In re Waterman S.S. Corp.*

In *In re Waterman S.S. Corp.*,[33] the court considered the question of adequate notice to seamen who had been exposed to asbestos on the debtor's vessels.  The bankruptcy court held that publication notice could not cure inadequate notice to asbestos claimants, even if claimants read the publication notice in the local newspaper, because the notice failed to notify the claimants of the nature of their claims.[34]  On appeal, the district court vacated the bankruptcy court opinion and remanded for the bankruptcy court to make

---

[31] *Id.* at 348 (citation and internal quotation marks omitted). *Wright v. Owens Corning*, 679 F.3d 101, 108 (3d Cir. 2012) *cert. denied*, 133 S. Ct. 1239, 185 L. Ed. 2d 177 (U.S. 2013) (citations and internal quotation marks omitted).

[32] *Chemetron Corp.*, 72 F.3d at 349-49 (citations omitted*); In re Best Products Co., Inc.*, 140 B.R. 353, 358 (Bankr. S.D.N.Y. 1992) ("It is impracticable . . . to expect a debtor to publish notice in every newspaper a possible unknown creditor may read.").

[33] *Waterman Steamship Corp. v. Aguiar (In re Waterman S.S. Corp.)*, 141 B.R. 552 (Bankr. S.D.N.Y. 1992) *vacated*, 157 B.R. 220 (S.D.N.Y. 1993).

[34] *Id.* at 559 ("[N]o future Asbestosis Claimant who, by definition, had yet to manifest any detectible injury prior to confirmation, could be deemed to have relinquished substantive rights when, even if that individual had read the 'notice,' those individuals would have remained completely unaware that their substantive rights were affected.").

factual determinations concerning such questions as when the seamen manifested disease symptoms, and the reasonableness of the notice to particular individuals or groups.[35]   The district court created several groups of claimants which were each accorded a certain type of notice: (i) former seamen who were known to be actual or potential claimants (all those who the debtor knew had manifested signs of illness) were entitled to actual personal notice; (ii) actual or potential claimants who could not be personally identified with reasonable effort were entitled to notice reasonably calculated, under all the circumstances, to apprise them of their claims and the opportunity to file their claims (such as publication); and (iii) potential future claimants (those who had not manifested any detectable signs of disease when the notice of the bar date was given) were not discharged in the bankruptcy proceeding.[36]   Thereafter, on remand, the bankruptcy court held that *only* asbestos claimants whose injury manifested prior to the bar date were barred from asserting claims against the debtor.[37]

ii.    *In re Placid Oil Co.*

In *In re Placid Oil Co.*,[38] the Fifth Circuit Court of Appeals recently held that an unknown asbestos creditor's pre-petition claims were discharged by the debtor's constructive notice and that, even though the notice did not contain asbestos-specific

---

[35] *In re Waterman S.S. Corp.*, 157 B.R. 220, 222 (S.D.N.Y. 1993).

[36] *Id.*

[37] *Waterman Steamship Corp. v. Aguiar (In re Waterman S.S. Corp.)*, 200 B.R. 770, 777 (Bankr. S.D.N.Y. 1996).

[38] *Williams v. Placid Oil Co. (In re Placid Oil Co.)*, 753 F.3d 151, 153 (5th Cir. 2014).

claim information, such notice was not substantially deficient.[39]   Placid Oil Company

("Placid") owned and operated a large natural gas production and processing facility.

Placid filed for bankruptcy and the bankruptcy court established a bar date by which

potential creditors were required to file claims.   On three occasions, Placid published a

notice of bar date in *The Wall Street Journal*.   Placid's notice of bar date informed creditors

of the existence of the bankruptcy case, their opportunity to file proofs of claim, relevant

deadlines, consequences of not filing a proof of claim, and how proofs of claim should be

filed.   Thereafter, the bankruptcy court confirmed Placid's plan of reorganization.   The

confirmation order provided that all claims against Placid that arose on or before the

confirmation date were forever discharged except for Placid's obligations under its plan

which did not address potential future asbestos liability.   Several years after entry of the

confirmation order, certain claimants brought an action against Placid.   More specifically,

the claimants were a former Placid employee and his children whose wife/mother

became ill (several years after confirmation of Placid's plan) and passed-away as a result

of her exposure to asbestos when laundering her husband's work clothing.   Thereafter,

Placid filed a motion to reopen its bankruptcy case and commenced an adversary action

asking the court to determine whether the asbestos claims were discharged.

Prior to its bankruptcy, Placid was aware of the hazards of asbestos exposure and

of the claimant-employee's exposure in the course of his employment.   However, prior

---

[39] *Id.* at 152-53.

to Placid's plan confirmation, no asbestos-related claims had been filed against Placid

and these claimants had not yet filed their claims.  Furthermore, as of the Fifth Circuit

ruling, Placid had not been held liable in any asbestos lawsuits nor had it paid any money

to settle an asbestos case.  The Placid claimants argued that the method and substance of

Placid's notice were insufficient on due process grounds and, as a result, their claims

were not discharged.  The Fifth Circuit disagreed.

The Fifth Circuit held that the asbestos claimants were "unknown" stating:

> policy concerns specific to bankruptcy weigh heavily against
> defining known creditors as those with merely foreseeable
> claims.  Bankruptcy offers the struggling debtor a clean start.
> In the interests of facilitating this recovery and balancing due
> process considerations, the courts have established a practical
> limit to the debtor's duty to notify creditors:  Actual notice is
> required only for "known" creditors.  We decline today to
> alter this limit.[40]

The Fifth Circuit reasoned that, although Placid knew of the dangers of asbestos and the

claimant's exposure, such information suggesting only a risk to the claimant does not

make the claimant a known creditor.[41]  The *Placid Oil* court continued that Placid had no

specific knowledge of any actual injury to the claimant prior to its bankruptcy;[42] in other

words "[p]arties with merely foreseeable claims are not 'known' creditors."[43]  The Fifth

---

[40] *Id.* at 157.

[41] *Id.*

[42] *Id.*

[43] *Id.* at 158.

Circuit reasoned that, in addition, Placid did not know of any instances of asbestos-related injury or illness prior to confirmation.[44]

As the debtor was not required to provide actual notice, the Fifth Circuit then turned to the issue of whether the published notice should have referred specifically to potential asbestos claims. The Fifth Circuit held:

> that because a bar date notice need not inform unknown claimants of the nature of their potential claims, Placid's notices were substantively sufficient to satisfy due process. Placid's notice informed claimants of the existence of the bankruptcy case, the opportunity to file proofs of claim, relevant deadlines, consequences of not filing a proof of claim, and how proofs of claim should be filed. We decline to articulate a new rule that would require more specific notice for unknown, potential asbestos claimants.[45]

In effect, *Placid Oil* holds that (i) asbestos claims can be discharged with all other pre-petition claims, even when a claimant is a future and/or unknown claimant; (ii) an asbestos claimant is unknown when their claim is "merely forseeable;" (iii) publication is sufficient due process to notify unknown claimants; and (iv) publication notice does not need to specifically mention the possibility of asbestos claims.

---

[44] *Id.* at 157 ("Press clippings about widely-known, but general, risks of asbestos exposure do not establish that Placid knew of any specific injury to its employees or any asbestos-related claim." (footnote excluded)).

[45] *Id.* at 158 (footnotes excluded). *See also In re Chicago, Rock Island and Pac. R.R. Co.*, 90 B.R. 329 (N. D. Ill. 1987). After the bar date, a former employee brought suit on a claim arising from asbestos-related injuries. The employee claimed that he was a known creditor because the company knew its employees were exposed to asbestos. The court held that "in the absence of any indication that a particular claim would ensue," the employee was an unknown creditor and publication notice would suffice. *Id.* at 331.

In *Placid Oil*, one of the Fifth Circuit Court Judges filed a dissent, which was concerned almost exclusively with the issue of "whether a latent asbestos claim of an asbestos-exposed, but not yet knowingly injured, person is dischargeable in bankruptcy and, if so, under what circumstances."[46]  The dissent likened a bar date for unmanifested asbestos claims to whether a class action under Rule 23(b)(3) should include individuals who had been exposed to asbestos but had not yet manifested injuries.[47]  In *Amchem Products, Inc. v. Windsor*, which the dissent cited, the Supreme Court ruled that the class as certified failed to satisfy Rule 23's predominance and adequacy-of-representation requirements.[48]  However, in *Amchem*, the Supreme Court mentioned the impediments to the provision of adequate notice to unmanifested victims of asbestos exposure:

> Many persons in the exposure-only category, the [Third Circuit] Court of Appeals stressed, may not even know of their exposure, or realize the extent of the harm they may incur.  Even if they fully appreciate the significance of class notice, those without current afflictions may not have the information or foresight needed to decide, intelligently, whether to stay in or opt out.
>
> Family members of asbestos-exposed individuals may themselves fall prey to disease or may ultimately have ripe claims for loss of consortium.  Yet large numbers of people in this category—future spouses and children of asbestos victims—could not be alerted to their class membership.  And

---

[46] *Id.* at 160.  The dissent acknowledged that this issue was not briefed by the parties; however, the dissent reasoned that the panel owed a duty to oversee orderly development of the Fifth Circuit jurisprudence.  *Id.*

[47] *Id.* at 160-161 (*citing Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997)).

[48] *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 622-28 (1997).

current spouses and children of the occupationally exposed may know nothing of that exposure.

Because we have concluded that the class in this case cannot satisfy the requirements of common issue predominance and adequacy of representation, we need not rule, definitively, on the notice given here. In accord with the Third Circuit, however, . . . we recognize the gravity of the question whether class action notice sufficient under the Constitution and Rule 23 could ever be given to legions so unselfconscious and amorphous.[49]

The dissent continued that "[u]nknown, future claimants, even if they receive notice of a bankruptcy proceeding, are often unable to recognize that their rights will be affected by the bankruptcy, for instance because they are unaware that the debtor has exposed them to toxic substances or because they have yet to manifest any injuries by the time the debtor files for bankruptcy."[50] The dissent ultimately concluded that "constructive notice by publication to asbestos-exposed individuals with unmanifested or latent mesothelioma, without appointment of a representative for such future claimants, does not satisfy due process."[51]

---

[49] *Id.* at 628 (*citing Georgine v. Amchem Products, Inc.*, 83 F.3d 610 (3d Cir. 1996) *aff'd sub nom. Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997)).

[50] *Placid Oil Co.*, 753 F.3d at 161.

[51] *Id.* at 164. Notwithstanding the dissent's conclusion, it is important to note that there is a difference between class certification and a bar date. There are numerous statutory provisions and policy considerations in connection with establishment of a bar date (discussed *infra*) that are not in play in the class action context.

iii.    *In re Chemtura Corp.*

*In re Chemtura Corp.* involved tort claims based on the debtor's production and sale of diacetyl, a butter flavoring ingredient used in food products.[52]  Exposure to diacetyl may lead to lung disease.  At the time the debtor filed for bankruptcy, it faced fifteen diacetyl lawsuits involving approximately fifty plaintiffs.[53]  During the bankruptcy, the debtor requested the bankruptcy court establish a bar date for all creditors, including diacetyl claimants.  Although contested by counsel to the diacetyl claimants,[54] the bar date was approved by the bankruptcy court.[55]  The bankruptcy court reasoned, in its oral ruling:

> The objections represent alternative perspectives as to how the debtors' Chapter 11 case should be run.  And that's not a satisfactory basis for objection on a motion of this character.  Their suggestion that even though this isn't an asbestos case that the filing of this case wasn't asbestos or tort liability driven and the debtors aren't seeking a channeling injunction – I should nevertheless require or expect the debtors to craft a plan with a 524(g) injunction or other claims channeling mechanism.  It's inconsistent with the concept of Section 1121 of the Code which gives the debtors the exclusive right to propose a plan during the period authorized by law, subject to the rights of parties in interest who oppose extensions of the debtors' exclusive period or to seek the termination of that

---

[52] *Gabauer v. Chemtura Corporation (In re Chemtura Corp.)*, 505 B.R. 427, 428 (S.D.N.Y. 2014).

[53] *Id.* at 429.

[54] Counsel to certain diacetyl claimants argued that certain individuals would not know that they had a diacetyl-induced disease because of the latency period of the disease and delays related to diagnosis of the disease. *In re Chemtura Corp.* (Bankr. S.D.N.Y. 09-11233), Transcript of Hr'g Aug 17, 2009, 28:9-30:6.

[55] *Id.* at 429.  Although the bankruptcy court did not issue an opinion related to its ruling, the hearing transcript was provided by the Debtors.  *See* D.I. 1984 (Excerpt of Transcript of August 17, 2009 Hearing).

> right.  At this juncture, the debtors are free to propose a plan
> to meet their needs and concerns and the concerns of what
> they believe will satisfy their unsecured creditor community.
>
> . . .
>
> [T]he diacetyl litigants have to understand that this case, with
> billions of dollars of debt to be satisfied, can't be run for their
> convenience or strategic preferences.
>
> . . .
>
> I need simply find, and I do find, as a factor, mixed question
> of fact and law, that a bar date is necessary and appropriate
> here.  The debtors and their major creditor constituencies –
> and by that I mean at the least the creditors' committee – need
> to know the universe of potential claims that must be
> satisfied.  Frankly, to suggest otherwise is ludicrous.[56]

Thereafter, the debtors mailed direct notice of the bar date to all known creditors and

publication of both general notices and "site-specific" notices for unknown creditors.[57]

The "site-specific" notices contained information about the exposure to diacetyl and

identified, specifically, to whom the debtors supplied, sold and distributed the product.[58]

After the bar date had passed, and after the bankruptcy plan was confirmed, nine

claimants filed state court law suits against the debtors alleging injuries caused by

exposure to diacetyl.  The debtors moved the bankruptcy court to enforce the discharge

injunction.   The bankruptcy court found, in an oral ruling, that the claims were

---

[56] *In re Chemtura Corp.* (Bankr. S.D.N.Y. 09-11233), Transcript of Hr'g Aug 17, 2009, 52:20-53:11; 54:13-15; and 54:23-55:6.

[57] *Chemtura Corp.*, 505 B.R. at 429.

[58] *Id.*

discharged and enjoined the claimants from further prosecuting their suits. The diacetyl claimants then appealed. The sole issue on appeal was whether the diacetyl claimants received constitutionally adequate notice of the bar date because they *did not know* they had diacetyl-induced illnesses until after the bar date and plan confirmation.[59] The district court concluded that the notice of the bar date was sufficient to bar the diacetyl claimants.[60] Distinguishing *Waterman Steamship Corp.*, the district court reasoned that the publication notice informed the claimants that (i) they may have been exposed to diacetyl while working at the plant, (ii) they might have been injured by that exposure, (iii) they might have a claim even if their injury had not yet manifested itself and (iv) they would lose their rights to recover on that claim if they do not file a claim by the bar date.[61] In other words, the district court found that the published notice contained enough specific information to put future claimants on adequate notice, i.e. the published notice was reasonably calculated, under all circumstances, to apprise the claimants of the pendency of the action and afforded them an opportunity to present their claims.[62] Thus, the claims were discharged.[63]

---

[59] *Id.* at 430 ("In essence, Appellants argue that, while the Notice may have been adequate as to people with reason to know that they might have diacetyl-related claims, it was inadequate as to Appellants because they 'had not yet been diagnosed with a diacetyl-induced disease' and thus had no reason to know that they might have claims.")

[60] *Id.*

[61] *Id.* at 431.

[62] *Id.* (citation omitted).

[63] It bears noting that lung disease caused by diacetyl had a latency of approximately five (5) months – in comparison asbestos related illness can have a latency of approximately 40 years. As latency periods are

      *iv.*    *In re Specialty Products Holding Corp.*

Recently, when faced with establishing a bar date in *In re Specialty Products*,[64] former Judge Walsh stated that he was "inclined" to direct that a bar date be established, inclusive of asbestos claims.[65]  However, the Court never entered an order establishing a bar date due to a settlement between the parties after the hearing noted.[66]  In addition, it is of note that the Court had: (i) appointed a future claimants' representative;[67] and (ii) conducted an estimation trial and determined that the debtors' asbestos liability was approximately $1.66 billion.[68]

      *v.*    *Wright v. Owens Corning*

In *Wright v. Owens Corning*,[69] the Third Circuit recently held that constructive notice was sufficient to bar unknown claims.  In the *Owens Corning* bankruptcy case, the bankruptcy court set a bar date for April 2002.  The bar date notice was published twice in *The New York Times*, *The Wall Street Journal*, and *USA Today*, among other publications.  The bar date motion specifically identified claims relating to "'the sale, manufacture,

---

vastly diverse, the diacetyl claimants may have had a better understanding of their exposure versus an asbestos claimant who may have been exposed years/decades prior to the notice.

[64] Del. Bankr. 10-11780.

[65] *In re Specialty Products Holding Corp.*, Del. Bankr. 10-11780, Tr. Hr'g Nov 5, 2013, 40:8-11 (D.I. 4286).

[66] *See generally*, docket in Del. Bankr. 10-11780.

[67] Del. Bankr. Case No. 10-11780 (D.I. 449) (appointing a legal representative for future claimants).

[68] *Id.* at D.I. 3852 and 3853 (opinion and order regarding asbestos liability).

[69] *Wright v. Owens Corning*, 679 F.3d 101 (3d Cir. 2012), *cert. denied*, 133 S. Ct. 1239, 185 L. Ed. 2d 177 (U.S. 2013).

distribution, installation and/or marketing of products by any of the Debtors, including without limitation . . . roofing shingles. . . .'"[70] The *Owens Corning* debtors also published notice of the disclosure statement hearing and notice of the confirmation hearing, both of which referred to the effect of confirmation on holder of claims. Thereafter, several plaintiffs brought claims against the reorganized debtors related to defective roof shingles. The claimants did not know the roof shingles were defective until well after the bankruptcy case, the attendant bar date, and plan confirmation. The former debtors filed a motion for summary judgment, arguing that the plaintiffs' claims were discharged under the plan and confirmation order. After determining that the plaintiffs had claims under the Bankruptcy Code, the Third Circuit held that, under *Grossman's*, the debtors' notices were sufficient as to most unknown claimants.[71]

    vi.    *In re New Century TRS Holdings, Inc.*

Finally, in *In re New Century TRS Holdings, Inc.*,[72] the bankruptcy court established a bar date, which included actual notice to known creditors and published notice in the

---

[70] *Id.* at 103.

[71] *Id.* at 108. Although in *Owens Corning*, the Third Circuit allowed a "re-do" because at the time of Owens Corning's confirmation *Frenville* was the law of the Third Circuit and under *Frenville* the plaintiffs did not have claims against the debtors (whereas under *Grossman's* the plaintiffs did have claims). As the claimants in *Owens Corning* would be affected retroactively by *Grossman's*, the Third Circuit held that their claims were not discharged when the "notice to those persons was with the understanding that they did not hold claims." *Id.* Under the reasoning of the decision, however, absent the *Frenville* issue, the claims would have been barred.

[72] *White v. Jacobs (In re New Century TRS Holdings, Inc.)*, Civ. No. 13-1719, 2014 WL 4100749 (D. Del. Aug. 19, 2014).

national edition of *The Wall Street Journal* as well as *The Orange County Register*.  The

debtors in that case had business operations throughout the United States and had more

than one million customers/borrowers.  The *New Century* debtors did not consider the

borrowers' potential claims but were concerned about the potential for unknown claims

asserted by former employees.  As such, the debtors did not consider the borrowers in

connection with the question of notice.  After the bar date, several borrowers filed claims

against the debtors.  In response to claims by various borrowers, the *New Century*

trustee/plan administrator filed a motion seeking determination that the debtors

complied with the order establishing a bar date and provided constructive notice of the

bar date by publication that satisfied the requirements of due process for unknown

creditors, including borrowers.  The bankruptcy court enforced the bar date against the

borrowers, finding that the *New Century* debtors complied with the order establishing a

bar date and published notice that was reasonably calculated to apprise interested parties

nationwide of the bar date and afforded them the opportunity to file claims.  The

borrowers appealed.

Although the District Court noted that publication notice satisfied the

requirements of due process for unknown creditors, the court looked at the facts and

circumstances to determine whether notice was reasonably calculated, "'under all the

circumstances [in *New Century*] to apprise the interested parties of the pendency of the

action and afford them an opportunity to present their objections.'"[73]  The District Court

distinguished *New Century* from *Owens Corning:*

> unknown claimants in the instant proceeding were given a
> mere 39 days' notice by a single publication.  That single
> publication was presented in *The Wall Street Journal*, certainly
> a newspaper with a national distribution, but not one—like
> *USA Today*—that necessarily enjoys a broad circulation
> among less than sophisticated, focused readers.  The court
> concludes that the adequacy of the notice provided in this
> case has not been meaningfully explored and likely was not
> reasonably calculated to apprise appellants of the bar date.
> The court concludes that "[d]ue process affords a re-do"
> under the circumstances of this case.[74]

In effect, the court held that, although publication notice is sufficient due process for

unknown creditors, in *New Century*, the publication notice was insufficient.  The debtors

in *New Century* have appealed the District Court decision to the Third Circuit.[75]

     *vii.*     *Summary of the Case Law*

The decision in *Waterman S.S. Corp.* and the dissent in *Placid Oil* stand for the

proposition that publication notice is insufficient to provide adequate notice and, thus,

due process, to claimants whose injuries and associated claims have not manifested as of

the bar date.  As such, those claims cannot be discharged.[76]  Under the majority opinion

---

[73]  *Id.* at *6 (*quoting Owens Corning*, 679 F.3d at 108).

[74]  *Id.* (footnotes omitted; *quoting Owens Corning*, 679 F.3d at 108).

[75]  *White v. Jacobs (In re New Century TRS Holdings, Inc.)*, D. Del. Case No. 13-vc-1719, D.I. 20.

[76] The *Placid Oil* dissent cites to the Supreme Court's opinion in *Amchem Products, Inc. v. Windsor* in support
of its conclusion.  While it is true that the Supreme Court identified "the gravity of the question
whether...notice sufficient under the Constitution...could ever be given to legions so unselfconscious and

in *Placid Oil* and the decision in *Chemtura*, on the other hand, such claims may be discharged, provided that notice is adequate.[77]  Finally, the Third Circuit's opinion in *Owens Corning* and the decision in *New* Century are consistent with *Placid Oil* and *Chemtura*.  While under both cases the notice was deemed insufficient, neither court took exception with the underlying proposition that notice *could* be sufficient to enforce a bar date and, thus, discharge, against unmanifested claims.

As the Unmanifested Claimants are "unknown" creditors, the issue is whether due process can be satisfied by publication notice.  Although the case law reaches disparate conclusions, the weight of the developing authority holds that publication notice *may* be sufficient to satisfy due process and, thus, would allow for the discharge of the Unmanifested Claims.  As a discharge of some or all of the Unmanifested Claims may be available to the Debtors, the Court must now turn to whether to establish a bar date.

**E.  The Court Will Establish a Bar Date For Unmanifested Claims**

The Court is faced with whether to establish a bar date for Unmanifested Claims.  These are the claims of persons that were exposed to asbestos pre-petition but have not yet manifested any signs of illness.  These are claimants that do not know that they have an asbestos related injury.  Indeed, they are *unknown* to themselves, let alone the Debtors.

---

amorphous" as the holders of unmanifested asbestos claims, it did so in *dicta* and specifically declined to decide the issue.

[77] The oral observation in *Speciality Products* that the Court was inclined to establish a bar date seems to support the holdings in *Placid Oil* and *Chemtura* but, as the issue was not actually decided and, ultimately, was moot, its persuasive authority is nominal.

As a mixed question of law and fact, however, the Court finds that a bar date should be established for all claims, including Unmanifested Claims.

   i.    *Facts of These Cases*

In these cases, the Unmanifested Claimants, if any, were exposed to asbestos prior to the Debtors' petition date and, as a result, have claims against the debtors. The posture of these cases is different, however, from much of the case law discussed above. Here, the Debtors are seeking a bar date. No plan has been filed and no discharge is being sought. The ultimate treatment of the Unmanifested Claims is not before the Court. The sole issue is whether to establish a bar date for those claims.

Here, the Court is not looking back to determine if adequate due process was given to an unknown claimant.[78] In the look-back cases, courts have the benefit of knowing the contents of the notice, the number of times the notice was published, and in which publications the notice was published. In fact, in a look-back scenario, courts have the benefit of knowing the terms of the plan and whether, in fact, there are Unmanifested Claimants. Obviously, this Court does not have this information (as above stated, the Debtors agreed to narrow the issues herein to whether a bar date may be established for Unmanifested Claimants; the issues related to content and scope of the notice have been

---

[78] *See, e.g., Placid Oil Co.*, 753 F.3d 151; *New Century TRS Holdings*, 13-1719, 2014 WL 4100749; *Chemtura Corp.*, 505 B.R. 427.

continued).  The posture of this issue is akin to the bankruptcy court's ruling in *Chemtura Corp.*[79]  As such, the Court must consider what it does know.

The Debtors did not file these cases as a result of asbestos or tort liability.  In fact, the Debtors estimate that, annually, their prior pay-out on behalf of asbestos claims is less than 0.05% of the Debtors' consolidated annual revenues.  While the Court is sympathetic to all asbestos victims, the Court cannot allow this case to be run for the potential victims' convenience or strategic gains.  The Court must consider *all* of the Debtors' creditors.  Furthermore, as noted above, the E-side Committee has not taken a position with respect to this issue.[80]  The Debtors and their constituents must be allowed to assess all of the claims against the Debtors' estates in order to formulate a plan of reorganization.

 *ii.* *Statutory Interpretation*

The PI Law Firms argue that a bar date for the Unmanifested Claims is not required and that the only way to deal with those claims is through a channeling injunction under section 524(g) of the Bankruptcy Code.   The plain meaning of the Bankruptcy Code and Rules, however, lead to the opposite conclusion.  First, Bankruptcy Rule 3003(c)(3) states: "[t]he court **shall** fix . . . the time within which proofs of claim or interest may be filed."[81]  The term used is "shall" rather than "may."  Although the court

---

[79] *Chemtura Corp.* (Bankr. S.D.N.Y. 09-11233), Transcript of Hr'g Aug 17, 2009, 52:20-53:11; 54:13-15; and 54:23-55:6.

[80] *See, e.g., In re Chemtura Corp.* (Bankr. S.D.N.Y. 09-11233), Transcript of Hr'g Aug 17, 2009, 52:20-53:11; 54:13-15; and 54:23-55:6.

[81] Fed. R. Bankr. Pro. 3003(c)(3).

in *Eagle-Picher Industries*, discussed *supra*, said that a bar date in a chapter 11 case is "by no means absolute, as the court may extend the bar date 'for cause shown' . . . [it is a matter left to the sound discretion of the bankruptcy court,"[82] this Court does not agree. Bankruptcy Rule 3003(c)(3) says "shall" and "may extend" – it does not say that establishment of a bar date is discretionary altogether.  The Supreme Court has held that "[i]t is generally presumed that Congress acts intentionally and purposely when it includes particular language in one section of a statute but omits it in another."[83]  "May" is used several other times in Rule 3003[84] and "[w]hen the same [provision] uses both 'may' and 'shall,' the normal inference is that each is used in its usual sense—the one act being permissive, the other mandatory."[85]  Furthermore, the clear language of Rule 3003(c)(3), if given effect, cannot be said to defeat the plain purpose of the Bankruptcy

---

[82]  *In re Eagle-Picher Indus., Inc.*, 137 B.R. at 681.  *In re Congoleum Corp.*, No. Bankr. 03-51524, 2008 WL 314699, at *3 (Bankr. D. N.J. Feb. 4, 2008) (holding that "this Court is satisfied that it has the discretion to either set or decline to set a bar date for proofs of claim.").

[83]  *BFP v. Resolution Trust Corp.*, 511 U.S. 531, 537, 114 S. Ct. 1757, 1761, 128 L. Ed. 2d 556 (1994) (citations and internal quotations omitted). *See also Escoe v. Zerbst*, 295 U.S. 490, 493 (1935) (The word "shall" is generally construed to be mandatory in its meaning.)  *But see Bob Jones Univ. v. United States*, 461 U.S. 574, 586 (U.S. 1983) ("It is a well-established canon of statutory construction that a court should go beyond the literal language of a statute if reliance on that language would defeat the plain purpose of the statute . . . .").

[84]  *See, e.g.*, Fed. R. Bankr. R. 3003(c)(1) ("Any creditor or indenture trustee may file a proof of claim . . ."); 3003(c)(5) ("An indenture trustee may file a claim . . . ").

[85]  *Barbieri v. RAJ Acquisition Corp. (In re Barbieri)*, 199 F.3d 616, 620 (2d Cir. 1999) (internal quotation marks omitted) (*quoting Anderson v. Yungkau*, 329 U.S. 482, 485, 67 S. Ct. 428, 430, 91 L. Ed. 436 (1947) (further citations omitted)).

Code nor its component sections.[86]  In fact, as discussed *supra*, the establishment of a bar

date is consistent with the goals of the Bankruptcy Code.[87]

Second, section 524(g) of the Bankruptcy Code states: "After notice and hearing, a

court that enters an order confirming a plan of reorganization under chapter 11 **may**

issue, in connection with such order, an injunction in accordance with this subsection to

supplement the injunctive effect of a discharge under this section."[88]  The formation of a

trust pursuant to section 524 is permissive; furthermore, such consideration is not

undertaken until confirmation of a plan of reorganization.  **If** establishment of an

injunction under section 524(g) is the *only* way to satisfy due process **then** Congress

would have made section 524(g) mandatory in cases in which asbestos related liabilities

---

[86] *Byrum v. IRS (In re Byrum)*, 139 B.R. 498, 500 (C.D. Cal. 1992) (considering *Bob Jones Univ. v. United States*, 461 U.S. 574, 586 (U.S. 1983)).

[87] *Carchman v. Nash*, 473 U.S. 716, 743 n. 11 (1985):

> When interpreting a statute, the court will not look merely to a particular clause in which general words may be used, but will take in connection with it the whole statute (or statutes on the same subject) and the objects and policy of the law, as indicated by its various provisions, and give to it such construction as will carry into execution the will of the Legislature. . . .

*Id.* (citations and internal quotation marks omitted).

[88] 11 U.S.C. § 524(g)(1)(A) (emphasis added).  A section 524(g)'s trust mechanism may be used if it "is likely to be subject to substantial future demands for payment arising out of the same or similar conduct or events that gave rise to the claims that are addressed by the injunction."  11 U.S.C. § 524(g)(2)(B)(ii)(I).  Furthermore, "[a] § 524(g) injunction is *only* appropriate where the debtor is likely to be subject to significant future demands."  *In re WR Grace & Co.*, 729 F.3d 332, 338 (3d Cir. 2013) (emphasis added).  "Section 524(g) provides a mechanism that allows companies to handle overwhelming present and future asbestos liability through a trust created in conjunction with a Chapter 11 bankruptcy plan." *Id.* at 339 (citation omitted).

or claims arise and would have carved unmanifested claims out of Bankruptcy Rule 3003(c)(3).  In short, a channeling injunction is not required.

As a result of the plain meaning of Bankruptcy Rule 3003 and section 524 of the Bankruptcy Code, the Court finds that a bar date must be established for all claims, including Unmanifested Claims, even though the Court may later extend such bar date for cause shown.

    *iii.*    *Policy Considerations*

The only issue before the Court is whether a bar date may be established.  It would be inconsistent with the concept of section 1121 of the Bankruptcy Code, which initially gives the debtors the exclusive right to propose and to solicit a plan of reorganization,[89] for the PI Law Firms, the Unmanifested Claimants or this Court to dictate plan terms, including whether to forego discharge of the Unmanifested Claims or to require a section 524(g) injunction.[90]   At this juncture, exclusivity is still in place and the Debtors may propose a plan to meet their needs and concerns, as well as the concerns of their constituencies.  As such, the Court cannot consider whether a section 524(g) injunction ought to be established in the Debtors' plan of reorganization, whether the Court should estimate the Debtors' asbestos exposure, or whether the Court should appoint a futures

---

[89] Subject to the rights of parties in interest who oppose extensions of the debtors' exclusive period or to seek the termination of that right to propose a plan during the period authorized by law.

[90]  *See In re Chemtura Corp.* (Bankr. S.D.N.Y. 09-11233), Transcript of Hr'g Aug 17, 2009, 52:20-53:11; 54:13-15; and 54:23-55:6.

representative.  That being said, however, the Court will consider such proposals as they are presented to it.  Until such matters are raised by motion or the filing of a plan, however, the Court is mindful that the Debtors have exclusive control over whether to submit a plan of reorganization and the terms thereof.  As such, the Court will not impose any proposed treatment for such plan that is still in the early stages of negotiation.

## CONCLUSION

As set forth above, the Court will grant the Debtors' Bar Date Motion and will establish a bar date for Unmanifested Claimants.  Pursuant to the agreement of the parties, an order establishing the bar date and specifying notice thereof will be entered after further proceedings before the Court.

BY THE COURT:

_____
Christopher S. Sontchi
United States Bankruptcy Court

Dated: January 7, 2015