# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | Chapter 11 |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | Case No. 14-10979 (CSS) |
| Debtors. | Jointly Administered |
|  | **Re: Docket No. 3062** |

### OBJECTION OF OFFICIAL COMMITTEE OF TCEH UNSECURED CREDITORS TO APPLICATION OF ENERGY FUTURE COMPETITIVE HOLDINGS COMPANY LLC AND TEXAS COMPETITIVE ELECTRIC HOLDINGS COMPANY LLC FOR ENTRY OF AN ORDER AUTHORIZING THEM TO RETAIN AND EMPLOY GREENHILL & CO., LLC AS INDEPENDENT FINANCIAL ADVISOR EFFECTIVE *NUNC PRO TUNC* TO NOVEMBER 17, 2014

The Official Committee of TCEH Unsecured Creditors (the "**TCEH Committee**") of Energy Future Competitive Holdings Company LLC ("**EFCH**"), EFCH's direct subsidiary, Texas Competitive Electric Holdings Company LLC ("**TCEH**") and their direct and indirect subsidiaries, and EFH Corporate Services Company, by and through its undersigned counsel, hereby files this objection (the "**Objection**") to the *Application of Energy Future Competitive Holdings Company LLC and Texas Competitive Electric Holdings Company LLC For Entry of an Order Authorizing them to Retain and Employ Greenhill & Co., LLC as Independent Financial Advisor Effective* Nunc Pro Tunc *to November 17, 2014* [Docket No. 3062] (the "**Application**").[2]  In support of the Objection, the TCEH Committee respectfully represents as follows:

---

[1] The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, which are being jointly administered, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://efhcaseinfo.com.

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Application.

ny-1171009

**PRELIMINARY STATEMENT**

1. In its November 3, 2014 oral ruling in connection with the *Motion of Energy Future Holdings Corp.* et al., *for Entry of an Order (A) Approving Bidding Procedures, (B) Scheduling an Auction and Related Deadlines and Hearings, and (C) Approving the Form and Manner of Notice Thereof* [Docket No. 2087], the Court determined that an actual conflict exists in these cases between various Debtors' estates.

2. As a result of the Court's ruling, each of the Debtor groups—EFH, EFIH, and EFCH/TCEH and its subsidiaries—began retaining independent professionals to advise them as to any matters on which an actual conflict exists. Accordingly, EFCH, TCEH, and their debtor subsidiaries, filed the Application, seeking authority to retain Greenhill & Co. ("**Greenhill**") as their independent financial advisor "reporting to and taking direction from Hugh E. Sawyer, the disinterested member of the board of managers of each of EFCH and TCEH . . . in connection with "Conflict Matters.""  (App. 1.)[3] The Application also confirms that "it is implicit in the Engagement Letter and understood by the parties that Greenhill's mandate is to perform the Services (as defined herein) with respect to Conflict Matters, as described herein." (App. n.2.) Thus, Greenhill's role as financial advisor to the TCEH Debtors is limited to those matters that constitute Conflict Matters as ultimately determined by Mr. Sawyer. (App ¶ 45 ("[T]he scope of Greenhill's Services is limited to providing financial advice to the TCEH Debtors only in connection with Conflict Matters, including the determination of whether any matter constitutes a Conflict Matter. As Evercore cannot advise the TCEH Debtors on Conflict Matters, the TCEH Debtors' Disinterested Manager requires access to independent advice.")

---

[3] A "Conflict Matter" is best defined in the resolutions attached to the Application as Exhibit B as "any matter pertaining to the Chapter 11 Case on which an actual conflict exists between TCEH or its direct and indirect subsidiaries, on the one hand, and any other Debtor, on the other hand." (App., Ex. B at 3 of 8.)

3.      The Application does not include a list of specific tasks Greenhill is performing in light of conflicts.  While we understand that it is up to Mr. Sawyer to determine such conflicts, it is not appropriate for Mr. Sawyer to similarly decide now, before the conflicts are determined, what an appropriate fee is for Greenhill.  Without a specific list of tasks for Greenhill's retention, it is impossible for the TCEH Committee to determine whether a $9.5 million Transaction Fee should be approved pursuant to section 328(a) of the Bankruptcy Code.  For this reason and others stated herein, the Court should not approve the Transaction Fee at this time.

## BACKGROUND

4.      On September 16, 2014, the Court entered the *Order Approving the Debtors to Retain and Employ Evercore Group L.L.C. as Investment Banker and Financial Advisor Effective* Nunc Pro Tunc *to the Petition Date* [Docket No. 2056] (the "**Evercore Order**"), which authorized *all of the Debtors*, including EFCH, TCEH, and the other TCEH Debtors,[4] to retain Evercore as their financial advisor to provide general investment banking advice in connection with any "Restructuring, Financing and/or Sale," as each term is defined in the engagement letter between the Debtors and Evercore (the "**Evercore Engagement Letter**").  Among several other fees, the Evercore Engagement Letter, as amended by the Evercore Order, provides that Evercore shall receive a "Restructuring Fee" of $35 million upon consummation of a "Restructuring," as such term is defined in the Evercore Engagement Letter.

5.      Also on September 16, 2014, the Court entered the *Stipulation and Agreed Order Regarding a Protocol for Certain Case Matters* [Docket No. 2051] (the "**Case Matters**

---

[4] The Application defines the "TCEH Debtors" as EFCH, TCEH, and their debtor subsidiaries.  For the avoidance of doubt, the TCEH Committee also represents the interests of unsecured creditors of EFH Corporate Services Company.

**Protocol**") in order to avoid, among other things, any potential objection to Evercore's retention application.

6. The Greenhill Engagement Letter describes the Fee and Expense Structure that will pay Greenhill compensation in consideration of the Services described in the Application. Greenhill's Fee and Expense Structure is summarized, in relevant part, below:

- Monthly Advisory Fee: $250,000 per month until termination of Greenhill's engagement;

- Transaction Fee: Upon consummation of any Restructuring, Greenhill will be entitled to receive a transaction fee payable promptly at the closing thereof, equal to $9,500,000 (the "Transaction Fee"); and

- Credit of Fee: An amount equal to 50% of any Monthly Advisory Fees that arise after the 9th month of the term of the Greenhill Engagement Letter, to the extent paid, shall be creditable against the Transaction Fee.

7. A "Restructuring" is defined in the Greenhill Engagement Letter as follows:

Any sale, recapitalization, reorganization and/or restructuring (including, without limitation, through any exchange, conversion, cancellation, settlement, forgiveness, retirement and/or modification or amendment to the terms, conditions or covenants) of all or a portion of the Company's equity and/or debt securities and/or other indebtedness, obligations or liabilities (including, without limitation, bank debt, swap liabilities, pension liabilities, OPEB liabilities, preferred stock, partnership interests, capital or operating lease obligations, trade claims, other contract or tort obligations, and other on and off balance sheet indebtedness), however such result is achieved, including, without limitation, pursuant to an exchange transaction, a Plan or a solicitation of consents, waivers, acceptances or authorization, an acquisition or sale related transaction, the issuance of new securities or debt instruments and/or other similar transactions or series of transactions.

(App, Ex. A, Ex. 1 at 8 of 17.)[5]

---

[5] The TCEH Committee requested that the definition of "Restructuring" in the Greenhill Engagement letter be modified to narrow the circumstances under which Greenhill would receive a Transaction Fee. Such revisions have been accepted by Greenhill and have been incorporated into a revised form of order.

4

ny-1171009

**OBJECTION**

8.     Following its retention in November, Greenhill has been an active participant in numerous discussions with creditors of the TCEH Debtors regarding, among other things, how best to move these chapter 11 cases along and maximize value for the TCEH Debtors' estates. Notwithstanding its qualifications, Greenhill's retention is undeniably unusual.  Prompted by the Court's conclusion that an actual conflict exists among the estates, the TCEH Debtors now seek to retain Greenhill more than eight months after commencement of these chapter 11 cases and after the Court has already approved the Debtors' retention of Evercore as financial advisor to *all* of the Debtors.  Thus, the TCEH Debtors have *two* financial advisors in these chapter 11 cases. The allocation of services among Greenhill and Evercore is undefined as the Greenhill Engagement Letter only provides that Greenhill will be handling Conflict Matters, but there remains little guidance as to what matters will ultimately constitute Conflict Matters or what, if any, role Evercore will continue to have with respect to such matters.[6]

9.     With this unusual backdrop, the TCEH Debtors seek approval of Greenhill's retention pursuant to section 328(a) of the Bankruptcy Code, including approval of a $9.5 million Transaction Fee upon consummation of a Restructuring.  The TCEH Committee is concerned that the Transaction Fee—in addition to Evercore's $35 million "success fee"—would be payable to Greenhill regardless of its contribution to the case and ultimate allocation of responsibility between Evercore and Greenhill.  At this time, it is simply impossible to know what kind of restructuring will be realized and whether Greenhill's role will differ substantially from Evercore's in obtaining confirmation of a plan.

---

[6] In light of the significant developments not anticipated at the time of Evercore's retention and Greenhill's mandate to now handle Conflict Matters going forward (if retained), the TCEH Committee reserves all rights with respect to the payment of a "Restructuring Fee" to Evercore pursuant to the Evercore Order.

10. Due to the unique circumstances of Greenhill's engagement by the TCEH Debtors more than eight months into these chapter 11 cases, the TCEH Committee objects to approval of the $9.5 million Transaction Fee to Greenhill upon consummation of a Restructuring pursuant to section 328(a) of the Bankruptcy Code. Section 328(a) of the Bankruptcy Code provides, in relevant part:

> A trustee . . . with the court's approval, may employ or authorize the employment of a professional under section 327 . . . of this title, as the case may be, on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis. Notwithstanding such terms and conditions, the court may allow compensation different from the compensation provided under such terms and conditions after the conclusion of such employment, if such terms and conditions prove to have been improvident in light of developments not capable of being anticipated at the time of the fixing of such terms and conditions.

11. Thus, courts should not take section 328(a) applications lightly because "[o]nce the bankruptcy court has approved a rate or means of payment, such as a contingent fee, the court cannot on the submission of the final fee application instead approve a 'reasonable' fee under § 330(a), unless the bankruptcy court finds that the original arrangement was improvident due to unanticipated circumstances as required by § 328(a)." *In re Energy Partners, Ltd.*, 409 B.R. 211, 224 (Bankr. S.D. Tex. 2009); *see also In re Federal Mogul-Global Inc.*, 348 F.3d 390, 397 (3d Cir. 2003).

12. The court's inquiry of what is reasonable under section 328(a) of the Bankruptcy Code is specific to the particular circumstances of a chapter 11 proceeding and may take into account a number of factors, including:

    a.    whether terms of an engagement agreement reflect normal business terms in the marketplace;

      b.      the relationship between the Debtors and the professionals, i.e., whether the parties involved are sophisticated business entities with equal bargaining power who engaged in an arms-length negotiation;

      c.      whether the retention, as proposed, is in the best interest of the estate; and

      d.      whether there is creditor opposition to the retention.

*See In re Insilco Techs., Inc.*, 291 B.R. 628, 634 (Bankr. D. Del. 2003). "Bankruptcy Courts may approve some of the terms and conditions proposed in an employment application while rejecting others." *Federal Mogul-Global Inc.*, 348 F.3d at 398-99. Importantly, it is the TCEH Debtors' burden to establish that employment of Greenhill under § 328(a) is reasonable, and "evidence, *not conclusory statements*, is required to satisfy that burden." *In re High Voltage Eng'g Corp.*, 311 B.R. 320, 333 (Bankr. D. Mass. 2004) (emphasis added).

      13.      The TCEH Debtors have not met their burden of proving—with evidence—that the $9.5 million Transaction Fee is reasonable under the circumstances. Lacking any detail whatsoever, the Greenhill Engagement Letter provides that Greenhill will perform services going forward solely with respect to Conflict Matters that will be identified by Mr. Sawyer at some time in the future. At this point, however, neither Greenhill nor the other independent advisors to Mr. Sawyer have identified such matters. Nor have they reached agreement with Evercore that they will no longer act on any Conflict Matters. Due to this lack of clarity regarding Greenhill's role, and the potential for overlapping services between Evercore and Greenhill, the Court and TCEH creditors are unable to assess the reasonableness of the Transaction Fee as it compares to the services that Greenhill will be providing. Moreover, due to the current uncertainty regarding recoveries for TCEH creditors, there is no basis to measure the reasonableness of the Transaction Fee, and it is unclear whether Greenhill's retention, as an independent financial advisor, will yield any positive results for TCEH creditors.

7

ny-1171009

14. There is simply no evidence to justify approval of the Transaction Fee pursuant to section 328(a) of the Bankruptcy Code and the TCEH Committee submits that, due to the unique circumstances surrounding Greenhill's retention at this late stage, approval of the Transaction Fee under section 328(a) of the Bankruptcy Code is inappropriate. The Court should thus deny approval of the Transaction Fee at this time. If Greenhill's contributions to these chapter 11 cases are ultimately worthwhile, it will be free to seek an appropriate Transaction Fee at the conclusion thereof.

15. Alternatively, in the event that the Court is willing to approve a Transaction Fee of some amount at this time under the improvidence standards of section 328(a), the TCEH Committee should have the right to object to payment of the Transaction Fee based on the reasonableness standard provided in section 330 of the Bankruptcy Code. Courts have denied approval of retention applications seeking retention under section 328(a) of the Bankruptcy Code where it was unclear in the application whether the professional would be performing services that were not duplicative of those provided by other professionals. *See In re Trans Nat. Commc'ns Inter., Inc.*, 462 B.R. 339, 345-47 (Bankr. D. Mass. 2011) (denying retention application for investment banker due to the fact that services to be rendered by the investment banker would be duplicative of those provided by other professionals); *In re Wang Labs., Inc.*, 143 B.R. 794, 795 (Bankr. D. Mass. 1992) ("The retention and employment of [financial advisors] is not necessary for the estate because most, if not all, of [the financial advisor's] proposed services are duplicative of the services to be performed by [other retained professionals.]").

16. Due to the uncertainties regarding how these chapter 11 cases will proceed, it is impossible today to determine what matters will ultimately be Conflict Matters and how

Greenhill's role in a restructuring transaction will differ from Evercore's. As a result, and in recognition of the unique circumstances of Greenhill's retention, the TCEH Committee should be afforded the right to evaluate the payment of the Transaction Fee based upon the standard provided in section 330 of the Bankruptcy Code.[7]

Dated: Wilmington, Delaware
       January 9, 2015

**MORRISON & FOERSTER LLP**
James M. Peck
Brett H. Miller
Lorenzo Marinuzzi
Todd M. Goren
250 West 55th Street
New York, New York 10019-9601
Telephone: (212) 468-8000
Facsimile: (212) 468-7900
E-mail:    jpeck@mofo.com
            brettmiller@mofo.com
            lmarinuzzi@mofo.com
            tgoren@mofo.com

      -and-

*/s/ Christopher A. Ward*
**POLSINELLI PC**
Christopher A. Ward (Del. Bar No. 3877)
Justin K. Edelson (Del. Bar No. 5002)
Shanti M. Katona (Del. Bar No. 5352)
222 Delaware Avenue, Suite 1101
Wilmington, Delaware 19801
Telephone: (302) 252-0920
Facsimile: (302) 252-0921
E-mail:    cward@polsinelli.com
            jedelson@polsinelli.com
            skatona@polsinelli.com

*Attorneys for The Official Committee of TCEH Unsecured Creditors*

---

[7] The proposed order already grants the U.S. Trustee the right to object to Greenhill's requests for interim and final compensation and reimbursement based on the reasonableness standard provided in § 330 of the Bankruptcy Code.