**<u>Exhibit D</u>**

**Cumulative Redline of Revised Order,**
**Revised Bidding Procedures, and Revised Auction Notice**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | Case No. 14-10979 (CSS) |
| Debtors. | (Jointly Administered) |

**ORDER (A) APPROVING REVISED BIDDING PROCEDURES, (B) SCHEDULING
AN AUCTION AND RELATED DEADLINES AND HEARINGS, AND
(C) APPROVING THE FORM AND MANNER OF NOTICE THEREOF**

Upon the motion (the "Motion") of the above-captioned debtors and debtors in possession (collectively, the "Debtors"), for entry of an order (this "Order")[2] (a) approving bidding procedures for the Transaction ~~in the form attached hereto as Exhibit 1~~ (the "Bidding Procedures"), (b) scheduling the Auction and related deadlines and hearings, and (c) approving the form and manner of notice of the Auction and related deadlines and hearings, substantially in the form attached to this Order as Exhibit 2  (the "Auction Notice"), all as more fully set forth in the Motion; and upon the *~~Declaration~~Certification of ~~William O. Hiltz in Support of the Motion of Energy Future Holdings Corp.,~~* ~~et al., for Entry of an~~*Counsel Concerning* Order *(A)* ~~*Approving*~~ *Revised Bidding Procedures, (B) Scheduling an Auction and Related Deadlines and Hearings, and (C)* ~~*Approving the Form and Manner of Notice Thereof*~~  *(the "Certification of Counsel"); and the Court having approved the Motion on a conditional basis on November 3,*

---

[1]   The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810.  The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201.  Due to the large number of debtors in these chapter 11 cases, which are being jointly administered, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

[2]   Capitalized terms used but not otherwise defined in this Order shall have the meanings ascribed to them in the Revised Bidding Procedures.

2014 (the "Ruling"); and the Debtors having revised the Bidding Procedures (the "Revised Bidding Procedures") based on the Ruling in the form attached hereto as **Exhibit 1**; and the Court having found that it has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and the Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and the Court having found that venue of these chapter 11 cases and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and the Court having found that the Debtors provided appropriate notice of the Motion and the opportunity for a hearing on the Motion under the circumstances; and the Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing, if any, before the Court (the "Hearing"); and the Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before the Court; and after due deliberation and sufficient cause appearing therefor,

THE COURT HEREBY FINDS AS FOLLOWS:

1.     The Debtors have articulated good and sufficient reasons for authorizing and approving the Revised Bidding Procedures, which are fair, reasonable, and appropriate under the circumstances and designed to maximize the value received for the Transactionsale of the Debtors' economic interests in Oncor.

2.     The votes of the Debtors' boards and the votes of the disinterested managers and directors of EFH Corp., EFIH, EFCH, and TCEH, to approve the Revised Bidding Procedures were:  (a) informed by, among other things, the meetings, discussions, written materials, and resolutions referenced in the board minutes attached as **Exhibits C - I** to the Certification of

Counsel; and (b) a fair, reasonable, and appropriate exercise of business judgment by the Debtors.

2.3.    The Auction Notice is reasonably calculated to provide all interested parties with timely and proper notice of the Auction, the Revised Bidding Procedures, and the applicable dates and deadlines, including the date, time, and place of the Auction (if one is held), and no other or further notice of the Auction, the Revised Bidding Procedures, or the applicable dates and deadlines shall be required.

3.4.    The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent any of the findings of fact in this Order constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

**NOW, THEREFORE, IT IS ORDERED, ADJUDGED, AND DECREED THAT:**

4.5.    The Motion is hereby GRANTED, to the extent provided herein.

5.6.    The Revised Bidding Procedures, attached hereto as **Exhibit 1** and incorporated by reference as though fully set forth herein, are hereby approved, including each of the dates and deadlines set forth therein, and as modified herein.

6.7.    The Debtors are authorized to solicit Bids and conduct the Stalking Horse Bidding Process, the Open Bidding Process, and the Auction as set forth in the Revised Bidding Procedures.  The Revised Bidding Procedures shall govern the submission, receipt, and analysis of all Bids, and any party desiring to submit a higher or better offer shall do so strictly in accordance with the terms of the Revised Bidding Procedures and this Order.

8.     For the avoidance of doubt, nothing in this Order or the Revised Bidding Procedures constitutes any advance approval of, or prejudices any arguments that may be made in connection with approval of,  a Stalking Horse Bid, Successful Bid, Transaction, or any plan or reorganization for any of the Debtors, including the Transaction and plan of reorganization terms or other agreements set forth in the illustrative term sheet provided by the Debtors and attached to the Motion.  This Order is subject to the Bidding Procedures Ruling, which provides that, among other things:  "Each boards' approval by vote, and in the case of TCEH and EFIH, an independent vote will also have to be obtained to approve the stalking horse and the ultimate winning bidder."  Hr'g Tr. Nov. 3, 2014, at 18:24-19:2.

7.9.    In response to comments from various parties and to address certain objections to the Motion, the Revised Bidding Procedures are deemed modified as provided in the Revised Bidding Procedures and as follows:

(a)    As soon as reasonably practicable after the Round 1 Bid Deadline, upon request, the Debtors will provide the Reviewing Parties with a description (which description shall include sufficient detail to permit the Reviewing Parties to reasonably assess the provisions described in this paragraph) of the structure (including, without limitation, the proposed tax structure) and form of consideration (including the percentage breakdown between the forms of consideration) of all of the Round 1 Bids.  The Debtors will also consult with the Reviewing Parties if any Round 1 Bid does not offer cash equivalent consideration (i.e., publicly-traded stock that will have equity price protection through the term of the Bid) or proposes a structure that is different than the structure described in the term sheet attached to the Motion.  Non-cash equivalent Bids could include, among other things:  (i) unhedged offers that provide publicly traded stock, but offer no price protection between the time of signing and consummation of the plan of reorganization; or (ii) shares of reorganized EFH Corp. common stock or other non-publicly traded securities.

(b)    As soon as reasonably practicable after the Round 2 Bid Deadline, upon request, the Debtors will provide the Reviewing Parties with a description (which description shall include sufficient detail to permit the Reviewing Parties to reasonably assess the provisions described in this paragraph) of the key contract terms contained in all of the Round 2 Bids, which shall include a description of the proposed tax structure, financing conditions, form of consideration (and ratio between cash and cash-equivalent consideration (as described in clause (a) above)

4

and non-cash equivalent consideration (as described in clause (a) above)), closing conditions and required regulatory approvals.  The Debtors will also provide the Reviewing Parties with a description of the material terms of any proposed equity price protection included as part of a Round 2 Bid.

(c)    Before entering into the Stalking Horse Agreement, upon request, the Debtors will consult with the Reviewing Parties regarding their selection of a Stalking Horse Bid.  In connection therewith, the Debtors shall describe the impact (if any) that the form of consideration or any key contract terms described in (a) or (b) above have on their determination of which Round 2 Bid the Debtors believe should be selected as the Stalking Horse Bid.

(d)    Notwithstanding paragraphs (a)-(c) above, but subject to the provisions set forth in the Revised Bidding Procedures, (i) in no event will the Debtors be required to provide any information regarding the Bid Values (except with respect to the forms of consideration, as permitted above) or the identity of the Bidders to any creditor (including the Reviewing Parties), and (ii) after providing the information and consultation rights set forth in (a)-(c) above, nothing shall impair, interfere with, or otherwise affect the Debtors' right to select Round 2 Bids and the Stalking Horse Bid in their sole discretion, consistent with paragraph 8 of this Order.

(e)    Any Reviewing Party that receives any Bid information in connection with consultation rights provided in the Stalking Horse Bidding Process may not publicly disclose or otherwise use such information in connection with any actual or threatened litigation in the Bankruptcy Court or other court of competent jurisdiction, including seeking any discovery related to the Stalking Horse Bidding Process, to object to, delay, or otherwise impede the Stalking Horse Bidding Process through the earlier of the date (i) the Debtors file the Stalking Horse Motion orand (ii) the Debtors abandon the Stalking Horse Bidding Process (the earlier of such dates, the "Stalking Horse End Date"); *provided*, *however*, that the foregoing shall not limit or preclude the Reviewing Parties from taking any actions in respect of the Stalking Horse Motion, or in respect of any other relief the Debtors may seek, in each case after the Stalking Horse End Date (including, without limitation, in connection with any proposed chapter 11 plan of reorganization) and all such rights are fully reserved.; *provided further, however, that the foregoing shall not limit the Committees from taking any actions consistent with the Bidding Procedures.*

(f)    Any provisions contained in confidentiality agreements (including Confidentiality Agreements) that preclude communication between potential bidders and the Debtors' creditors (including the Reviewing Parties) will be void and of no further force and effect, *provided*, for the avoidance of doubt, that any provisions contained in confidentiality agreements (including Confidentiality Agreements) that preclude entering into exclusive arrangements with creditors (including the Reviewing Parties) shall remain in full force and effect.

8.10.    The Debtors are authorized~~, following consultation with their advisors,~~ to modify the Revised Bidding Procedures in any manner that they determine~~,~~ in their ~~sole business judgment,~~reasonable discretion will best promote the goals of the bidding process or impose, at or ~~prior to~~before the Auction, additional customary terms and conditions on the Transaction, including, without limitation, modifying the Bid Requirements or the Open Bid Requirements, extending the deadlines set forth in the Revised Bidding Procedures, adjourning the Auction at the Auction, ~~and/or~~adjourning the Auction Approval Hearing in open court without further notice, and/or canceling the Auction~~,~~*; provided, however, the Debtors may only make material modifications to the Revised Bidding Procedures either with the consent of the TCEH Committee* and ~~rejecting any~~ the EFH Committee not to be unreasonably withheld or ~~all Qualified Bids,~~delayed, or by approval of the Court (which approval may be sought on an *in camera* basis), following notice to the Committees.  Nothing in the Revised Bidding Procedures shall prejudice the right or ability of any party in interest, including the Reviewing Parties, to at any time object to the Transaction, its structure, or the Debtors' ~~sole business judgment~~selection of one Transaction structure over another.

11.    Nothing in the Revised Bidding Procedures shall require the board of directors, board of managers, or such similar governing body of a Debtor to take any action, or to refrain from taking any action, with respect to the Revised Bidding Procedures to the extent such board of directors, board of managers, or such similar governing body determines, or based on the advice of counsel, that taking such action, or refraining from taking such action, as applicable, is required to comply with applicable law or its fiduciary obligations under applicable law.

9.12.  In accordance with the Revised Bidding Procedures, each Bidder must acknowledge in writing that it has not engaged in any collusion with respect to any Bids, the

Stalking Horse Bidding Process, the Open Bidding Process, the Auction, or the ~~Equity Investment~~Transaction and agrees not to engage in any collusion with respect to any Bids, the Stalking Horse Bidding Process, the Open Bidding Process, the Auction, or the ~~Equity Investment~~Transaction.

~~10.~~13.  Absent material irregularities in the conduct of the Auction, the Court will not consider Bids made after the Auction has been closed.

~~11.~~14.  The Auction Notice, substantially in the form attached hereto as **Exhibit 2**, is hereby approved.  The Auction Notice shall state with specificity the dates and times of the Bid Deadline, the Auction, and the Auction Approval Hearing, consistent with the parameters set forth in the Revised Bidding Procedures.  Within ~~five~~three business days of ~~selecting~~ the entry of the Stalking Horse ~~Bid or determining not to select any Stalking Horse Bid, as applicable~~Order, the Debtors will serve the Auction Notice upon the following parties: (a) ~~all entities that have requested~~the core notice ~~of the proceedings~~ parties in the~~se~~ chapter 11 cases ~~pursuant to Bankruptcy Rule 2002~~; (b) ~~Reviewing Parties~~other parties that request notification; and (c) any other parties ~~who have expressed written interest in consummating~~that the ~~Transaction~~Debtors determine to be reasonably necessary.

~~12.~~15.     Notice of the Motion as provided therein shall be deemed good and sufficient and the requirements of the Local Bankruptcy Rules are satisfied by such notice.

~~13.~~16.     Notwithstanding the possible applicability of Bankruptcy Rules 6004(h), 7062, 9014, or otherwise, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

~~14.~~17.  In the event of any inconsistencies between this Order, the Motion, and the Revised Bidding Procedures, this Order shall govern in all respects.

7

15.18.        All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

16.19.        The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order.

17.20.        The Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation or modifications of this Order or the Revised Bidding Procedures.

Wilmington, Delaware
Dated: _____, 20145

_____
THE HONORABLE CHRISTOPHER S. SONTCHI
UNITED STATES BANKRUPTCY JUDGE

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) | Case No. 14-10979 (CSS) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**TRANSACTION BIDDING PROCEDURES**

On [_____], 201~~4~~5, the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") entered an order approving these bidding procedures (these "Bidding Procedures," and such order, the "Bidding Procedures Order"),[2] in the jointly-administered chapter 11 cases (the "Chapter 11 Cases") of Energy Future Holdings Corp. ~~("EFH Corp.") and certain of its~~("EFH Corp."), Energy Future Intermediate Holding Company LLC ("EFIH"), Energy Future Competitive Holdings Company LLC ("EFCH"), Texas Competitive Electric Holdings Company LLC ("TCEH"), and certain of their affiliates (collectively, the "Debtors"). The Bankruptcy Court will have jurisdiction with respect to any dispute that may arise with respect to these Bidding Procedures.

These Bidding Procedures set forth the process by which the Debtors are authorized to solicit proposals ("Bids" and, the persons or entities submitting such Bids, including, without limitation, any creditors, "Bidders") ~~for an investment~~to acquire, in any form~~, to acquire~~ and employing any structure, whether taxable (in whole or in part) or tax-free, any or all of the assets or the reorganized equity (the "Transaction") of EFH Corp. or one or more of its direct ~~and~~or indirect subsidiaries, including ~~Energy Future Intermediate Holding Company LLC ("EFIH"), other than Energy Future Competitive Holdings Company LLC ("~~, and not including EFCH~~")~~, TCEH, and its direct and indirect subsidiaries (collectively, the "TCEH Entities~~"~~")), to be sold or issued (as applicable) in accordance with title 11 of the United States Code (the "Bankruptcy Code").

Under these Bidding Procedures, the Debtors will select the Stalking Horse Bid (as defined below) after a two-stage closed bidding process (the "Stalking Horse Bidding Process"). After announcing the Stalking Horse Bid, the Debtors will conduct a round of open bidding (the

---

[1]    The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810.  The location of the ~~d~~Debtors' service address is 1601 Bryan Street, Dallas, Texas 75201.  Due to the large number of ~~d~~Debtors in these chapter 11 cases, which are being jointly administered, a complete list of the ~~d~~Debtors and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the ~~d~~Debtors' claims and noticing agent at http://www.efhcaseinfo.com.

[2]    Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to them in the Bidding Procedures Order.

"Open Bidding Process") culminating in an auction intended to obtain a higher or otherwise best bid for the Transaction (the "Auction").

> Copies of the Bidding Procedures Order or other documents related thereto are available on the website of the Debtors' claims and noticing agent at http://www.efhcaseinfo.com.

**A.    Submissions to the Debtors.**

All submissions to the Debtors required to be made under these Bidding Procedures must be directed to each the following persons unless otherwise provided (collectively, the "Debtors' Representatives"):

1.    **Counsel.** Counsel to the Debtors, Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022, Attn.: Edward O. Sassower, P.C. (esassower@kirkland.com), Stephen E. Hessler (shessler@kirkland.com), and Brian E. Schartz (brian.schartz@kirkland.com), Kirkland & Ellis LLP, 300 North LaSalle, Chicago, Illinois 60654, Attn.: ~~Chad J.~~Marc Kieselstein, P.C. (mkieselstein@kirkland.com), Chad J. Husnick (chad.husnick@kirkland.com) and Steven N. Serajeddini (steven.serajeddini@kirkland.com), and Kirkland & Ellis LLP, 600 Travis Street, Suite 2400, Houston, Texas 77002, Attn.: Andrew Calder, P.C. (acalder@kirkland.com) and Amber Meek (ameek@kirkland.com); and

2.    **Financial Advisor.** Financial advisor to the Debtors, Evercore Group L.L.C., 55 East 52nd Street, New York, New York 10055, Attn.: William Hiltz (hiltz@evercore.com), David Ying (ying@evercore.com), Stephen Goldstein (stephen.goldstein@evercore.com), Brendan Panda (panda@evercore.com), and Sesh Raghavan (sesh.raghavan@evercore.com).

The Debtors' Representatives shall reasonably promptly send all such submissions to the Committee Representatives (as defined below) and the legal and financial advisors to EFH Corp., EFIH, EFCH, and TCEH with respect to conflicts matters.

**B.    Participation Requirements.**

To participate in the bidding process or otherwise be considered for any purpose under these Bidding Procedures, a person or entity interested in ~~making~~consummating the Transaction (a "Potential Bidder") must deliver or have previously delivered, if determined to be necessary by the Debtors in their sole discretion, preliminary proof by the Potential Bidder of its financial capacity to close the proposed Transaction, which proof may include, current unaudited or verified financial statements of, or verified financial commitments obtained by, the Potential Bidder (including, if the Potential Bidder is an entity formed for the purpose of ~~making~~consummating the Transaction, an equity commitment letter and guarantee from the party that will backstop all obligations of the Potential Bidder and bear liability for any breach by the Potential Bidder), the adequacy of which the Debtors will determine in their sole discretion~~; and~~, subject to the succeeding paragraph.

The ~~Debtors~~Debtors' advisors will ~~determine and~~ notify each Potential Bidder whether such Potential Bidder has submitted adequate documentation so that such Potential Bidder may submit a Bid (each, an "Acceptable Bidder~~")~~."); *provided, however,* the Debtors shall consult with the official committee of unsecured EFH/EFIH creditors (the "EFH Committee") and the official committee of unsecured TCEH creditors (the "TCEH Committee," and together with the EFH Committee, the "Committees") in the event they determine that a Potential Bidder does not constitute an Acceptable Bidder.

**C.    Obtaining Due Diligence Access.**

To conduct due diligence, an Acceptable Bidder must execute a confidentiality agreement (a "Confidentiality Agreement") acceptable to the Debtors. **No Acceptable Bidder will be permitted to conduct any due diligence without entry into a Confidentiality Agreement.** The Debtors will provide each Acceptable Bidder or such Acceptable Bidder's duly-authorized representatives reasonable and equal access to due diligence information with respect to EFH Corp., its subsidiaries, and Oncor Electric Delivery Holdings Company LLC and its subsidiaries ("Oncor") in accordance with the applicable Confidentiality Agreement. The Debtors and their advisors~~, in their sole discretion,~~ and representatives shall determine the scope, breadth, and timing of due diligence information that is provided to ~~each such~~the Acceptable Bidders.

The Debtors and their advisors and representatives, in consultation with Oncor, shall coordinate all reasonable requests for, and access to, additional due diligence information from such Acceptable Bidders. The Debtors may at any time decline, however, to provide information to any such Acceptable Bidder who, in the Debtors' reasonable business judgment, has not continued to establish that such Acceptable Bidder intends in good faith to, or has the capacity to, consummate the Transaction.

The Debtors have designated the financial advisor to the Debtors listed in section A.2 of these Bidding Procedures to coordinate all reasonable requests for additional information and due diligence access. Unless otherwise directed expressly in writing, no Acceptable Bidder shall directly contact any ~~officer, employee or~~ director of EFH Corp. and its subsidiaries (other than Oncor) with respect to due diligence matters.

**D.    Committee Access and Information.**

The Debtors and their advisors and representatives shall regularly consult with, and make the same information that is provided to Acceptable Bidders available to, up to six individual professionals representing the TCEH Committee, up to six professionals representing the EFH Committee, and any additional individual professionals or members of the Committees requested by the Committees and consented to by the Debtors, such consent not to be unreasonably withheld based on the nature and scope of such request (the "Committee Representatives").

The Debtors and their advisors and representatives will reasonably promptly consult with the Committee Representatives with respect to negotiations with Acceptable Bidders and Qualified Bidders, the terms and conditions of draft agreements with Acceptable Bidders and Qualified Bidders, and the progress of the Stalking Horse Bidding Process, the Open Bidding Process, and the Auction.

3

The Debtors shall also reasonably provide the Committee Representatives with relevant information the Debtors receive relating to any Bidders or Bids, including, but not limited to, information regarding the identity of all Potential Bidders, Acceptable Bidders, and Qualified Bidders (as defined below), the terms and conditions of any Bid, the structure (including, without limitation, the proposed tax structure) and form of consideration of any Bid, other information related to the Bid Requirements, and any other information necessary for the Committee Representatives to evaluate the Bids (such information, the "Bid Information").  The Debtors and the Committee Representatives will work together in good faith to resolve any potential concerns and objections.

The Committee Representatives are permitted to communicate directly with any of the Bidders or their advisors, *provided*, notwithstanding anything to contrary in these Bidding Procedures, all substantive direct communications between Acceptable Bidders, other than Acceptable Bidders that hold material amounts of the Debtors' debt or equity securities or their advisors, and the Committee Representatives shall involve the Debtors and their advisors and representatives to the extent reasonably practicable.

D.E.    **Due Diligence from Acceptable Bidders and Confidentiality.**

If an Acceptable Bidder proposes to use its own or an affiliate's securities as all or part of the financial consideration in its Bid or otherwise makes a Bid that would make relevant the Debtor's or their creditors' need for information from the Bidder concerning the Bidder, the Acceptable Bidder shall comply with all reasonable requests for information byfrom the Debtors and their advisors and representatives regarding the Acceptable Bidder (the "Bidder Due Diligence Information," and together with any Bid Information shared during the Stalking Horse Bidding Process, the "Bidder Confidential Information").  The Acceptable Bidder may request that the Debtors enter into a confidentiality agreement, if the Debtors have not done so, with respect to the Bidder Due Diligence Information satisfactory to the Debtors and the Acceptable Bidder.  Failure by an Acceptable Bidder to comply with reasonable requests for information may be a basis for the Debtors and their advisors and representatives to determine that such bidder no longer qualifies as an Acceptable Bidder.

The Debtors and each of their respective advisors and representatives and the Committee Representatives shall be obligated to maintain in confidence any Bidder Due DiligenceConfidential Information in accordance with any applicable confidentiality agreement and shall not publicly disclose the identity of any Bidders participating in the Stalking Horse Bidding Process or the terms and conditions of any Bid submitted as part of the Stalking Horse Bidding Process (such information, the "Bidder Confidential Information"),. except in accordance with the termsas otherwise set forth in these Bidding Procedures.  Each recipient of Bidder Confidential Information agrees to use, and to instruct their advisors and representatives to use, such Bidder Confidential Information only in connection with the evaluation of Bids during the Bidding Process or otherwise in connection with the Chapter 11 Cases or in accordance with the terms of any applicable confidentiality agreement.

Notwithstanding the foregoing and the provisions contained in any applicable confidentiality agreement, the Debtors and their advisors and representatives and the Committee Representatives may disclose Bidder Confidential Information:  (i) with the prior written consent

4

of such Bidder and the Debtors; (ii) to Oncor; (iii) to the Committee Representatives; (iv) to the applicable Bidder; (v) in accordance with the Open Bidding Process as set forth in sections I.J and J.K of these Bidding Procedures; and (iv.vi) as otherwise required or allowed by any applicable confidentiality agreement with respect to a particular Bidder or other agreement, law, court or other governmental order, or regulation, including, as appropriate, in consultation with Oncor, to regulatory agencies. In conducting the Stalking Horse Bidding Process, the Debtors and their advisors and representatives and the Committee Representatives may (a) inform any Acceptable Bidder of the existence or submission of one or more competing Bids and (b) provide Acceptable Bidders and their advisors and representatives with general guidance on improving their Bid in light of the general terms and conditions of competing Bids, either of which may constitute Bidder Confidential Information; *provided*, *however,* that, except as otherwise set forth in the Bidding Procedures, the Debtors and the Committee Representatives shall not, and in the case of the Debtors shall instruct their advisors and representatives not to, disclose (x) the identity of any Bidders in the Stalking Horse Bidding Process or (y) the express terms of any specific Bid submitted by a particular Acceptable Bidder in the Stalking Horse Bidding Process.

**E.F.    Bid Requirements.**

Except as otherwise provided below, all Bids in both the Stalking Horse Bidding Process and the Open Bidding Process must comply with the following requirements (the "Bid Requirements").

1. **Consideration and Structure.**

   a. **Total Consideration.** The Bid must identify the form and amount of the total consideration to be provided to the Debtors in cash, debt, securities, or similar consideration (the "Bid Value").

   b. **Sources of Financing**. The Bid must indicate the source of cash consideration and non-cash consideration, including (i) proposed definitive funding commitments with respect to any cash consideration and (ii) any proposals for assuring liquidity and/or value protection in connection with any non-cash consideration, and confirm that such consideration is not subject to any contingencies. The Bid should include a detailed sources and uses schedule.

   c. **Structure.** The Bid must identify the structure proposed for undertaking the Transaction, including the specific assets or reorganized equity of EFH Corp. and/or one or more of its direct or indirect subsidiaries (other than the TCEH Entities) to be acquired, the proposed steps to accomplish such acquisition and any financial, legal, or tax considerations upon which the Bid's proposed structure relies.

   d. **Tax Structure.** The Bid must specify with particularity its tax structure, including whether it is intended to be structured in a tax-free manner or the extent of if any incremental tax liabilities to will be incurred by the Debtors under the Bid.

e.     **Debt Incurred at Closing.**  The Bid must identify the total amount of debt, if any, proposed to be incurred by any Debtors (other than the TCEH Entities) at closing of the Transaction (the "Closing").

f.     **Assumption.**  The Bid must specify which, if any, of the obligations of the Debtors the Bidder proposes to assume.

g.     **Cash on Hand.**  The Bid must provide that the Bidder will not receive ~~or retain any~~the amount of the cash on hand at the Debtors at the Closing.

2.     **Other Requirements.**

a.     **Topping Fee**.  The Bid must identify the dollar amount of the topping fee, if any, to be payable in connection with the Bid (the "Topping Fee") and when the Debtors are required to seek Bankruptcy Court approval of the Topping Fee, which Topping Fee shall apply only to events after such approval.  Subject to Bankruptcy Court approval as set forth in section ~~H~~I of these Bidding Procedures, the Topping Fee will become due and payable solely upon the occurrence of both:  (i) either (A) the Bankruptcy Court approving a Successful Bid (as defined below) by a person or entity other than the Bidder or its affiliates, or (B) the ~~EFH Corp. board of directors determining~~boards of the parties to the Transaction determine that consummation of the Transaction is reasonably likely to be inconsistent with its fiduciary dut~~ies~~y to the ~~Debtors' stakeholders~~respective Debtor; and (ii) the Debtors consummating the alternative transaction for which they ~~have~~ terminated the Transaction.

b.     **Binding and Irrevocable**.  The Bid, other than a Round 1 Bid, (as defined below), must by its terms remain binding and irrevocable until ~~December 31, 2015~~nine months after the date of selection of the Successful Bid, subject to extension by the Debtors for up to six (6) months in the event that any necessary or advisable regulatory approval (including any approvals of any TCEH transaction) has not been received as of such date; *provided*, *however*, that if the Bid is not selected as the Successful Bid, the Bid may be revoked after approval of such Successful Bid by the Bankruptcy Court.

c.     **Regulatory Approvals and Covenants.**  Approval from the Public Utility Commission of Texas ("PUCT") is required in advance of any change in control of Oncor.  The Bid must contain the affirmative representation of Bidder that Bidder understands and agrees that prior PUCT approval of any change in control of Oncor is required and Bidder's confirmation that the Bidder will cooperate with the Debtors and Oncor in seeking approval of the transaction by the PUCT. Each Bid must describe in detail (i) the efforts that each party must utilize in connection with seeking and obtaining all regulatory approvals required to complete the ~~t~~Transaction

and (ii) any limitations on the Bidder's obligation to take all actions necessary or advisable to obtain such regulatory approvals.

d.      **Employees.**  The Bid must detail the treatment of (i) the employees of EFH Corp. and its subsidiaries (other than the TCEH Entities), to the extent such employees are not offered employment by the TCEH Entities, and (ii) the employees of Oncor.

e.      **Conditions to Closing.**  The Bid must identify with particularity each and every condition to Closing.

f.      **No Financing, Approval, or Diligence Outs.**   The Bid, other than a Round 1 Bid, must not be conditioned on obtaining any of the following: (i) financing; (ii) board of directors or other similar approval; or (iii) the outcome or completion of a due diligence review by the Acceptable Bidder.

g.      **Due Diligence Acknowledgement.**  The Bid, other than a Round 1 Bid, must include a written acknowledgement and representation that the Bidder:  (i) has had an opportunity to conduct any and all due diligence regarding the Transaction before making its offer; (ii) has relied solely upon its own independent review, investigation, and/or inspection of any documents and/or the Transaction in making its Bid; and (iii) did not rely upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied, by operation of law, or otherwise, regarding the Transaction or the completeness of any information provided in connection therewith or the Auction, except as expressly stated in the Bidder's proposed form of definitive agreement.

h.      **No Collusion.**  The Bidder must acknowledge in writing that it has not engaged in any collusion with respect to any Bids or the Transaction and agrees not to engage in any collusion with respect to any Bids, the Auction, or the Transaction.

i.      **Good Faith Offer.**  The Bid must constitute a good faith, bona fide offer to ~~make~~consummate the Transaction.

j.      **Identification Information.**  The Bidder must fully disclose the identity of each entity or person that will be ~~bidding  for~~consummating the Transaction or otherwise participating in connection with such Bid, and the complete terms of any such participation, along with sufficient evidence that the Bidder and each such entity is legally empowered, by power of attorney or otherwise, to complete the tTransaction~~s~~ on the terms contemplated by the parties.

k.      **Consent to Jurisdiction.**  The Bidder must submit to the jurisdiction of the Bankruptcy Court and waive any right to a jury trial in connection with any disputes relating to Debtors' qualification of Bids, the Auction, the

construction and enforcement of these Bidding Procedures, and the Transaction documents and the Closing, as applicable.

**~~F.~~G.    Stalking Horse Bidding Process.**

Under the two-stage Stalking Horse Bidding Process, in the initial stage ("Round 1"), Acceptable Bidders may submit preliminary Bid materials to the Debtors (a "Round 1 Bid"), and the Debtors, in consultation with the Committee Representatives, will select certain Acceptable Bidders, based on the Bid Criteria, to advance to the second stage ("Round 2"). During Round 2, Round 2 Bidders (as defined below) will prepare and submit definitive documentation, and the Debtors and certain selected Round 2 Bidders will continue to negotiate the terms of such definitive documentation. The Debtors and their advisors and representatives will reasonably promptly consult with the Committee Representatives with respect to the negotiations. At the conclusion of this process, the Debtors will select, in consultation with the Committee Representatives, the highest or otherwise best Bid to serve as the Stalking Horse Bid (as defined below).

**~~G.~~H.    Round 1.**

To submit a Round 1 Bid, an Acceptable Bidder must deliver to each of the Debtors' Representatives ~~an~~ executed non-binding letter of intent and illustrative term sheet (the word version of which the Debtors will provide to each Acceptable Bidder upon request) setting forth the principal business terms and structure of such Acceptable Bidder's Bid and complying with each of the Bid Requirements (collectively, the "Round 1 Bid Documentation") so that it is **actually received no later than ~~4:00~~11:59 p.m. (prevailing Eastern Time) on ~~October 23, 2014~~March 2, 2015** (such deadline, the "Round 1 Bid Deadline," and each such Acceptable Bidder, a "Round 1 Bidder"). The Bid need not be structured consistent with the form of illustrative term sheet provided by the Debtors and attached to the Motion.

The Round 1 Bid Documentation should be submitted both as an executed PDF and in word version. Round 1 Bid Documentation may not be submitted or modified after the Round 1 Bid Deadline. Reasonably promptly after the receipt of Round 1 Bid Documentation for any Acceptable Bidder, the Debtors will transmit such documentation to the Committee Representatives.

As soon as reasonably practicable after the Round 1 Bid Deadline, the Debtors will determine, ~~in their sole discretion~~in consultation with the Committee Representatives, and notify each Round 1 Bidder, whether such Round 1 Bidder, based on the Bid Criteria, has been selected to advance to Round 2 (each, a "Round 2 Bidder").

**~~H.~~I.    Round 2.**

As soon as reasonably practicable after the selection of Round 2 Bidders, the Debtors will distribute to all Round 2 Bidders a form of definitive documentation to effectuate the Bid (collectively, the "Round 2 Bid Documentation~~").~~"), which form shall be provided to the Committee Representatives for a reasonable opportunity to comment in advance of distribution, and which form need not be structured consistent with the form of illustrative term sheet attached to the Motion.

8

Round 2 Bidders that wish to participate in Round 2 must submit an initial marked version of the Round 2 Bid Documentation to each of the Debtors' Representatives so that it is **actually received no later than ~~4:00~~11:59 p.m. (prevailing Eastern Time) on ~~November 7, 2014~~March 16, 2015** (the "Initial Mark-Up Deadline").  The Debtors will engage in further negotiation, in consultation with the Committee Representatives, with each of the Round 2 Bidders regarding the Round 2 Bid Documentation following the Initial Mark-Up Deadline.  The Debtors and their advisors and representatives will reasonably promptly consult with the Committee Representatives with respect to the negotiations.  Round 2 Bidders must submit a substantially final draft of their Round 2 Bid Documentation to each of the Debtors' Representatives so that it is **actually received no later than ~~4:00~~11:59 p.m. (prevailing Eastern Time) on ~~November 21, 2014~~April 13, 2015** (the "Round 2 Bid Deadline").

The Round 2 Bid Documentation should be submitted both as an executed PDF and in word version, along with a marked version of all Round 2 Bid Documentation against the form provided by the Debtors.  ~~Round 2 Bids must also specify whether the Topping Fee must be approved either:  (i) at the Auction Approval Hearing; or (ii) in advance of the Auction Approval Hearing (the "Stalking Horse Topping Fee").~~  Reasonably promptly after the receipt of Round 2 Bid Documentation for any Round 2 Bidder, the Debtors will transmit such documentation to the Committee Representatives.

As soon as reasonably practicable after the Round 2 Bid Deadline, the Debtors will evaluate the Round 2 Bid Documentation submitted by each Round 2 Bidder based on the Bid Criteria and engage in additional negotiations to finalize such Round 2 Bid Documentation ~~with one or more Round 2 Bidders in their sole discretion~~, in each case in consultation with the Committee Representatives.

Following the additional negotiations to finalize the Round 2 Bid Documentation, the Debtors will, in consultation with the Committee Representatives, select the Round 2 Bidder that has submitted the highest or otherwise best Bid in accordance with the Bid Criteria to serve as the stalking horse bid (such Bid, the "Stalking Horse Bid," and such Bidder, the "Stalking Horse Bidder").  ~~At such time~~The Debtors and their advisors and representatives will reasonably promptly consult with the Committee Representatives with respect to the negotiations.  Upon approval by the Debtors' boards, the Debtors will execute all Round 2 Bid Documentation upon which such Stalking Horse Bid was made (the "Stalking Horse Agreement~~") and file a notice with the Bankruptcy Court announcing the Stalking Horse Bidder.~~ ").  The Stalking Horse Bid need not be structured consistent with the form of illustrative term sheet provided by the Debtors and attached to the Motion.

~~If the Stalking Horse Agreement does not require the Debtors to obtain approval of the Stalking Horse Topping Fee in advance of the Auction Approval Order, the process will follow the "Advanced Auction Schedule."  Otherwise, the process will follow the "Traditional Auction Schedule."~~

Unless otherwise agreed with the Stalking Horse Bidder, within ~~five~~ten business days of execution of the Stalking Horse Agreement, the Debtors, after consultation with the Committee Representatives, will file a motion (the "Stalking Horse Motion") requesting the Bankruptcy Court enter ~~(i)~~an order ~~approving,~~(the "Stalking Horse Order"), among other things,~~ the Stalking~~

~~Horse Topping Fee and (ii) an order~~ authorizing entry into the Stalking Horse Agreement (which shall be filed in unsealed form as an exhibit to the Stalking Horse Motion), ~~to be heard at the Auction Approval Hearing;~~ *provided, however,* ~~that under the Traditional Auction Schedule, the relief requested in the order approving the Stalking Horse Topping Fee will~~including any Topping Fee payable under the Stalking Horse Agreement (the "Stalking Horse Topping Fee"), to be heard as soon as practicable on notice consistent with the Bankruptcy Code, Bankruptcy Rules, and Local Bankruptcy Rules ~~and~~.  From the date of execution of the Stalking Horse Agreement until entry of ~~such order~~the Stalking Horse Order, the Debtors shall not actively market the Transaction or facilitate any bidding with respect thereto, except as may be required under section ~~R~~T of these Bidding Procedures.

The Stalking Horse Motion will contain a description of the Stalking Horse Bidding Process, including summary descriptions of Bids and related significant terms, received in connection with the Stalking Horse Process (provided that the identity of Bidders will be redacted).

**~~I.~~J.     Open Bidding Process.**

Upon entry of the Stalking Horse Order ~~under the Traditional Action Schedule or upon filing the Stalking Horse Motion, under the Advanced Auction Schedule~~, the Debtors will commence the Open Bidding Process to solicit Qualified Bids (as defined below) for a period of at least 30 days.

As part of the Open Bidding Process, the Debtors, their advisors, and Oncor will facilitate due diligence on the part of Acceptable Bidders in accordance with sections B, C, and ~~D~~E of these Bidding Procedures.  The Open Bidding Process will conclude in the Auction (as defined below) in which the Stalking Horse Bidder and any other Qualified Bidders (as defined below) will participate for the purpose of determining the highest or otherwise best Bid for the Transaction in accordance with the Bid Criteria.

**~~J.~~K.    Open Bid Requirements.**

The Debtors will only consider Bids during the Open Bidding Process from Acceptable Bidders that satisfy the Bid Requirements ~~set forth above.~~.  Multiple Bids will be permitted during the Open Bid process.  In addition, Acceptable Bidders during the Open Bidding Process must satisfy the following requirements (the "Open Bid Requirements"):

1.    **Minimum Value**.  The Bid must provide for Bid Value equal to: (a) the Bid Value set forth in the Stalking Horse Bid, plus (b) the Overbid Increment (as defined below), plus (c) the Stalking Horse Topping Fee, if any (provided that such Stalking Horse Topping Fee must be paid in cash), plus (d) any other amounts payable under the Stalking Horse Bid.

2.    **Documentation.**  The Bid must include a marked version of the Stalking Horse Agreement.

3.    **No Other Bid Protections.**  A Bid may not propose any bid protections, other than a Topping Fee if it is selected as the Successful Bid (the "Open Bidding

10

Topping Fee") or provisions for reimbursement of expenses, which the Debtors will consider on a case-by-case basis.

Bids submitted during the Open Bidding Process and fulfilling all of the Bid Requirements and Open Bid Requirements may, at the Debtors' sole discretion, in consultation with the Reviewing Parties (as defined below), be deemed to be "Qualified Bids," and those parties submitting Qualified Bids may, at the Debtors' sole discretion, in consultation with the Reviewing Parties, be deemed to be "Qualified Bidders."  To be eligible to be selected as a Qualified Bidder, a Bidder must be an Acceptable ~~Bidders~~Bidder and must submit a Bid that is **actually received** no later than ~~4:00~~11:59 **p.m. (prevailing Eastern Time) on the date that is 30 days after the commencement of the Open Bidding Process** (the "Bid Deadline") by each of the Debtors' Representatives.  Acceptable Bidders that do not submit a Bid by the Bid Deadline will not be eligible to be selected as Qualified Bidders.  The Bid need not be structured consistent with the form of illustrative term sheet provided by the Debtors and attached to the Motion.

By no later than ~~one~~three business day~~s~~ after the Bid Deadline, the Debtors shall determine which Acceptable Bidders are Qualified Bidders after consultation with their advisors and advisors to:  (i) Oncor; (ii) the ~~official committee of unsecured creditors~~TCEH Committee and the EFH Committee; (iii) the ad hoc group of holders of EFIH first lien notes and Delaware Trust Company, in its capacity as indenture trustee under such notes; (iv) the ad hoc group of holders of EFIH second lien notes and Computershare Trust Company, N.A. and Computershare Trust Company of Canada, in their capacities as indenture trustees under such notes; (v) the ad hoc group of holders of EFIH unsecured notes; (vi) the ad hoc group of holders of EFH Corp. notes; (vii) the ad hoc committee of holders of TCEH first lien claims and its members (including direct consultation with committee members); (viii) the ad hoc group of holders of TCEH second lien notes; (ix) the ad hoc group of holders of TCEH unsecured notes; (x) American Stock Transfer & Trust Company, LLC, as indenture trustee for the EFH Corp. notes; (xi) UMB Bank, N.A., as indenture trustee for the EFIH unsecured notes; (xii) certain holders of equity in Texas Energy Future Holdings Limited Partnership; (xiii) Fidelity Investments; (xiv) Citibank, N.A., as agent under that certain TCEH debtor-in-possession facility; (xv) Deutsche Bank AG New York Branch, as agent under that certain EFIH debtor-in-possession facility; (xvi) Pacific Investment Management Company LLC, as a lender under that certain EFIH debtor-in-possession facility; and (xvii) any such other stakeholders the Debtors deem to be reasonable or appropriate, provided such parties listed in (i) through (xvii) have executed a confidentiality agreement in a form acceptable to the Debtors (collectively, the "Reviewing Parties"), and will notify the Acceptable Bidders whether ~~b~~Bids submitted constitute Qualified Bids so as to enable such Qualified Bidders to bid at the Auction.[3]  Any ~~b~~Bid that is not deemed a Qualified Bid shall not be considered by the Debtors.  The Stalking Horse Bid shall constitute a Qualified Bid.  No party that submits a Bid, and no advisors to such party in such capacity, shall be considered a Reviewing Party after the time it submits such Bid.-

---

[3]    For the avoidance of doubt, all information provided to the Reviewing Parties during the Stalking Horse Bidding Process and the Open Bidding Process shall also be provided to the Committee Representatives and may be shared with the individual members of the Committees and their advisors, subject to the existing confidentiality agreement between the Debtors and the Committees.

**~~K.~~L.    Selection of the Starting Bid.**

In advance of the Auction, the Debtors, in consultation with the Reviewing Parties, shall evaluate Qualified Bids and identify the Qualified Bid that is, in the Debtors' judgment, after consultation with the Committee Representatives, the highest or otherwise best Bid (the "Starting Bid").  At least one business day prior to the date of the Auction, the Debtors shall notify and provide a copy of the Starting Bid to all Qualified Bidders and the Reviewing Parties.

**~~L.~~M.    No Qualified Bids.**

If the Debtors have not received ~~no more than one~~a Qualified Bid ~~as of~~other than the Stalking Horse Bid ~~Deadline~~, then the Auction will not occur and such Qualified Bid, if any, will be deemed the Successful Bid (as defined below).  The Debtors reserve all rights to extend the Bid Deadline, after consultation with the Reviewing Parties, to such later date that the Debtors believe is necessary, in their sole discretion, to obtain additional Qualified Bids.

**~~M.~~N.    Auction.**

If two or more Qualified Bids are received by the Bid Deadline, then the Debtors will conduct the Auction.  The Auction will commence on a date as soon as practicable after the Bid Deadline, at the offices of Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022, or such other time or place as the Debtors will timely notify each Qualified Bidder.

The Auction will be conducted in accordance with the following procedures (the "Auction Procedures").

1. **Starting Bid.**  Bidding will begin at the Starting Bid.

2. **Overbid.**  Subsequent Bids must be made in minimum increments of $20 million (the "Overbid Increment").

3. **Previous Bids.**  Each Qualified Bidder will be informed of the terms of the previous Qualified Bids.

4. **Qualified Bidders.**  Only Qualified Bidders will be entitled to bid at the Auction.

5. **In Person.**  The Qualified Bidders must appear at the Auction in person or through duly-authorized representatives appearing in person.

6. **Permitted Persons.**  Only such authorized representatives of the Debtors, each of the Qualified Bidders, each of the Reviewing Parties, and each of the respective advisors of the foregoing will be permitted to attend the Auction.

7. **Transcription.**  The Auction will be transcribed to ensure an accurate recording of the bidding at the Auction.

8. **Final Bids.**  Absent irregularities in the conduct of the Auction or reasonable and material confusion during the bidding, each as determined by the Bankruptcy

Court, the Bankruptcy Court will not consider Bids made after the Auction has been closed.

9.      **Bid Responses**.  The Debtors may, in their reasonable discretion, set reasonable response times for Bids at the Auction.

~~9.~~10.   **Additional Procedures.**  The Auction will be governed by such other Auction Procedures as may be announced by the Debtors, in their ~~reasonab~~le discretion, in consultation with the Reviewing Parties, to the extent reasonably practicable, from time to time on the record at the Auction, *provided* that any such other Auction Procedures will not be inconsistent with any order of the Bankruptcy Court~~.~~ and any material modification of such Auction Procedures will be subject to section S of these Bidding Procedures.

~~10.~~11.  **Cancelation of Auction.**  Notwithstanding anything herein to the contrary, the Debtors may at any time, and in their ~~reasonab~~le discretion, in consultation with the Reviewing Parties, choose to cancel the Auction, adjourn the Auction, or modify the Auction Procedures~~.~~ in accordance with section S of these Bidding Procedures.

12.     **Conclusion of Auction.**  The Debtors may, in their reasonable discretion, conclude the Auction and notify the Reviewing Parties thereof.

The Debtors will serve ~~all~~ the core notice parties in ~~interest, and~~the chapter 11 cases, other parties that request notification, and any other parties that the Debtors determine to be reasonably necessary, a notice of the Auction and all deadlines related thereto (the "Auction Notice").  The Auction Notice will provide notice to all interested parties that to participate in the bidding process and the Auction and to be deemed a Qualified Bidder, each Potential Bidder must meet the Bid Requirements and the Open Bid Requirements.

~~N.~~O.   **Bid Criteria.**

In evaluating Bids for any purpose under these Bidding Procedures, the Debtors may, in their sole discretion, consider the following criteria (the "Bid Criteria"), each as determined by the Debtors:

1.      **Consideration and Value.**  The Bid Value, Open Bidding Topping Fee, net cash proceeds, implied equity value, implied enterprise value, or any other measure of consideration or value;

2.      **Stakeholder Consensus.**  The level of support for the Bid among the Debtors' stakeholders, including in particular those stakeholders the support of which the Debtors deem critical to the confirmation of one or more value-maximizing plans of reorganization;

3.      **Likelihood of Closing**.  The likelihood of Closing if the Bid were accepted;

4.     **Likelihood of Confirmation.**  The likelihood of confirmation of a plan of reorganization by the Debtors if the Bid were accepted, including with respect to feasibility and valuation issues;

5.     **Tax Implications.**  The tax implications of the Bid, including whether it is intended to be structured in a tax-free manner or the extent of any incremental tax liabilities to be incurred by the Debtors under the Bid, and any related implications for plan confirmation;

6.     **Regulatory Approvals.**  The likelihood of obtaining any regulatory approvals reasonably required or advisable in connection with the Transaction, including under a plan of reorganization, and the Bidder's willingness to accept conditions imposed by the applicable regulatory authority as a requirement to such approvals;

**7.**     **Conditionality.**  The strength and conditionality of the commitment, including the likelihood of closing the Transaction with the Bidder;

8.     **Litigation.**  The nature and existence of any ongoing litigation between the Bidder and the Debtors; and

9.     **Other Factors.**  Any other factors that the Debtors, in their sole discretion, in consultation with the Reviewing Parties, determine are relevant.

~~O.~~**P.**   **Acceptance of the Successful Bid.**

Upon the conclusion of the Auction (if conducted), the Debtors, in their sole discretion, in consultation with the Reviewing Parties, will identify the highest or otherwise best Qualified Bid (the "Successful Bid" and, the Bidder submitting such Bid, the "Successful Bidder").

~~The~~ Upon approval of the Successful Bid by the Debtors' boards, the Debtors will file a notice of the Successful Bid with the Bankruptcy Court, and the Successful Bidder and the Debtors will, as soon as reasonably practicable and after consultation with the Committee Representatives, complete and sign all agreements, contracts, instruments, or other documents evidencing and containing the terms upon which such Successful Bid was made. ~~After the~~The Successful Bid ~~is identified,~~need not be structured consistent with the form of illustrative term sheet provided by the Debtors ~~will file a notice of~~ and attached to the ~~Successful Bid with the Bankruptcy Court~~Motion.

If the Auction is held, the Debtors will be deemed to have accepted a Qualified Bid only when (1) such Bid is declared the Successful Bid ~~and~~; (2) definitive documentation has been executed in respect thereof.~~ Such acceptance is conditioned upon~~; and (3) the Bankruptcy Court ~~approval of~~has approved the Successful Bid at the Auction Approval Hearing (as defined below) or any other hearing conducted for such purpose.

**~~P.~~Q.    Auction Approval Hearing.**

A hearing to consider approval of the selection of the Successful Bid, the Auction~~, the Stalking Horse Motion~~, and the manner in which these Bidding Procedures were otherwise administered (the "<u>Auction Approval Hearing</u>") will be scheduled to take place within seven (7) days of the Auction, or as soon as reasonably practicable thereafter, before the Honorable Christopher S. Sontchi at the Bankruptcy Court, 824 North Market Street, 5th Floor, Courtroom 6, Wilmington, Delaware 19801; *provided*, *however*, that if the Stalking Horse Bid is not the Successful Bid, the Debtors will not seek approval of any outstanding relief under the Stalking Horse Motion and will seek approval of entry into the Successful Bid, including any Open Bidding Topping Fee, as soon as reasonably practicable on notice consistent with the Bankruptcy Code, Bankruptcy Rules, and Local Bankruptcy Rules.  The Auction Approval Hearing may be continued to a later date by the Debtors by filing a notice on the electronic docket of the Bankruptcy Court or sending notice prior to, or making an announcement at, the Auction Approval Hearing.  No further notice of any such continuance will be required to be provided to any party.  Any Bankruptcy Court approval of the Successful Bid, the Auction, or any related matters will remain subject to confirmation and regulatory approvals, as necessary.

**R.        Evaluation of Bids.**

In identifying and reviewing Bids during the Stalking Horse Bidding Process and the Open Bidding Process, the Debtors shall consider any views of the Reviewing Parties known to them and may consider any and all factors consistent with their obligations under any applicable Bankruptcy Code or state law obligations when determining the value of a Qualified Bid.  Only the Debtors, the Reviewing Parties, and the Committee Representatives will be entitled to review the contents of the Bids, consistent with these Bidding Procedures and the Bidding Procedures Order (which, for the avoidance of doubt, shall be treated as Bidder Confidential Information).

**~~Q.~~S.    Reservation of Rights.**

The Debtors ~~reserve their rights, following consultation with their advisors and the Reviewing Parties (to the extent reasonably practicable), to~~may modify the Bidding Procedures in any manner that they determine in their reasonable discretion will best promote the goals of the bidding process or impose, at or ~~prior to~~before the Auction, additional customary terms and conditions on the Transaction, including, without limitation, modifying the Bid Requirements or the Open Bid Requirements, extending the deadlines set forth in the Bidding Procedures, adjourning the Auction at the Auction, ~~and/or~~adjourning the Auction Approval Hearing in open court without further notice, and/or canceling the Auction~~,~~; *provided, however,* the Debtors may only make material modifications to these Bidding Procedures either with the consent of the TCEH Committee and ~~rejecting any~~the EFH Committee not to be unreasonably withheld or ~~all Qualified Bids,~~delayed, or by approval of the Court (which approval may be sought on an *in* ~~the Debtors' business judgment~~*camera* basis)*,* following notice to the Committees.  Nothing in these Bidding Procedures shall prejudice the right or ability of any party in interest, including the Reviewing Parties, to at any time object to the Transaction, its structure, or the Debtors' selection of one Transaction structure over another.

**R.T.    Fiduciary Out.**

Nothing in these Bidding Procedures shall require the board of directors, board of managers, or such similar governing body of a Debtor to take any action, or to refrain from taking any action, with respect to these Bidding Procedures to the extent such board of directors, board of managers, or such similar governing body determines, or based on the advice of counsel, that taking such action, or refraining from taking such action, as applicable, is required to comply with applicable law or its fiduciary obligations under applicable law.

*[Remainder of page intentionally left blank]*

16

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | Case No. 14-10979 (CSS) |
| Debtors. | (Jointly Administered) |

## NOTICE OF AUCTION

**PLEASE TAKE NOTICE** that on [ ● ], 20145, the United States Bankruptcy Court for the District of Delaware (the "Court") entered an order [D.I. __] (the "Bidding Procedures Order")[2] authorizing the above-captioned debtors and debtors in possession (the "Debtors") to conduct an auction (the "Auction") for an investment to solicit proposals ("Bids" and, the persons or entities submitting such Bids, including, without limitation, any creditors, "Bidders") to acquire, in any form, to acquire and employing any structure, whether taxable (in whole or in part) or tax-free, any or all of the assets or the reorganized equity of EFH Corp. or one or more of its direct andor indirect subsidiaries other than the, including EFIH, and not including EFCH, TCEH Entities., and its direct and indirect subsidiaries, to be sold or issued (as applicable) in accordance with title 11 of the United States Code (the "Bankruptcy Code"). The Auction will be governed by the bidding procedures, attached as **Exhibit 1** to the Bidding Procedures Order, approved by the Bankruptcy Court (the "Bidding Procedures").

**PLEASE TAKE FURTHER NOTICE** that on [ ● ], 2015, the Court entered an order [D.I. __] (the "Stalking Horse Order"), authorizing the Debtors' entry into the the Stalking Horse Agreement, in accordance with the Bidding Procedures and the Bid Criteria, the Debtors have selected and filed a notice of the highest or otherwise best Bid received during the Stalking Horse Bidding Process to serve as the stalking horse bid (the "Stalking Horse Bid")..

Copies of the Bidding Procedures Order and the Stalking Horse BidOrder or other documents related thereto are available on the website of the Debtors' claims and noticing agent at http://www.efhcaseinfo.com.

**PLEASE TAKE FURTHER NOTICE** that the Bidding Procedures contain the following deadlines (which may be modified by the Debtors in their sole discretionaccordance

---

[1] The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, which are being jointly administered, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Bidding Procedures.

with section S of the Bidding Procedures), in addition to various bid requirements, bidding criteria, and other relevant provisions governing the submission of Bids.

**PLEASE TAKE FURTHER NOTICE** that, as set forth in the Stalking Horse Bid, the Open Bidding Process will proceed according to the **[Traditional Auction Schedule / Advanced Auction Schedule]** set forth below.

**PLEASE TAKE FURTHER NOTICE** that, to be considered for participation in the Auction, Bidders must submit Bids in accordance with the Bidding Procedures, including meeting the Bid Requirements and Open Bid Requirements, so that they are **actually received** by the Debtors' Representatives no later than **[ ● ]**.

> The Debtors have designated the financial advisor to the Debtors, Evercore Group L.L.C., 55 East 52nd Street, New York, New York 10055, Attn.: William Hiltz (hiltz@evercore.com), David Ying (ying@evercore.com), Stephen Goldstein (stephen.goldstein@evercore.com), Brendan Panda (panda@evercore.com), and Sesh Raghavan (sesh.raghavan@evercore.com), to coordinate all reasonable requests for additional information and due diligence access.

**PLEASE TAKE FURTHER NOTICE** that the Debtors intend to conduct the Auction, at which they will consider proposals submitted to the Debtors, by and pursuant to the Bidding Procedures as set forth in the Bidding Procedures Order, at **[ ● ]**, at the offices of Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022.

**PLEASE TAKE FURTHER NOTICE** that the Auction Approval Hearing is presently scheduled to take place at at **[ ● ]** before the Honorable Christopher S. Sontchi at the Bankruptcy Court, 824 North Market Street, 5th Floor, Courtroom 6, Wilmington, Delaware 19801.

**PLEASE TAKE FURTHER NOTICE** that the Debtors reserve the right, in their reasonable discretion and subject to in accordance with section S of the exercise of their business judgmentBidding Procedures, to alter or terminate the Bidding Procedures and/or to terminate discussions with any Bidders at any time and without specifying the reasons therefore, to the extent not materially inconsistent with the Bidding Procedures.

*[Remainder of page intentionally left blank]*

Wilmington, Delaware
Dated:  [● ], 2014____, 2015

/s/ _____

**RICHARDS, LAYTON & FINGER, P.A.**
Mark D. Collins (No. 2981)
Daniel J. DeFranceschi (No. 2732)
Jason M. Madron (No. 4431)
920 North King Street
Wilmington, Delaware 19801
Telephone:      (302) 651-7700
Facsimile:      (302) 651-7701
Email:          collins@rlf.com
                defranceschi@rlf.com
                madron@rlf.com

-and-


**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Edward O. Sassower, P.C. (admitted *pro hac vice*)
Stephen E. Hessler (admitted *pro hac vice*)
Brian E. Schartz (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022-4611
Telephone:      (212) 446-4800
Facsimile:      (212) 446-4900
Email:          edward.sassower@kirkland.com
                stephen.hessler@kirkland.com
                brian.schartz@kirkland.com
-and-

James H.M. Sprayregen, P.C. (admitted *pro hac vice*)
Marc Kieselstein, P.C. (admitted *pro hac vice*)
Chad J. Husnick (admitted *pro hac vice*)
Steven N. Serajeddini (admitted *pro hac vice*)
300 North LaSalle
Chicago, Illinois 60654
Telephone:      (312) 862-2000
Facsimile:      (312) 862-2200
Email:          james.sprayregen@kirkland.com
                marc.kieselstein@kirkland.com
                chad.husnick@kirkland.com
                steven.serajeddini@kirkland.com


Co-Counsel to the Debtors and Debtors in Possession