Page 1

1    UNITED STATES BANKRUPTCY COURT

2    DISTRICT OF DELAWARE

3

4

5    In re:                    :

                               :    Chapter 11

6    ENERGY FUTURE HOLDINGS    :

     CORP.,  et al.,           :    Case No. 14-10979(CSS)

7                              :

               Debtors.        :    (Jointly Administered)

8    _____:

9

10

11

12                            United States Bankruptcy Court

13                            824 North Market Street

14                            Wilmington, Delaware

15                            January 13, 2015

16                            9:30 AM

17   B E F O R E :

18   HON CHRISTOPHER S. SONTCHI

19   U.S. BANKRUPTCY JUDGE

20

21

22

23

24

25   ECRO OPERATOR:  LESLIE MURIN

1    HEARING re Application for an Order Approving the Employment

2    of Cravath, Swaine & Moore LLP as Counsel to Energy Future

3    Intermediate Holding Company LLC Under Sections 327(a) and

4    1107(b) of the Bankruptcy Code, Effective Nunc Pro Tunc to

5    November 16, 2014 [D.I. 3028; filed December 16, 2014]

6

7    HEARING re Debter Energy Future Holdings Corp.'s Application

8    for Entry of an Order Authorizing the Retention and

9    Employment of Proskauer Rose LLP as Counsel for Debtor and

10   Debtor in Possession Energy Future Holdings Corp. Effective

11   Nunc Pro Tunc to November 19, 2014 [D.I. 3037; filed

12   December 16, 2014]

13

14   HEARING re Debtor Energy Future Holdings Corp.'s Application

15   for Entry of an Order Authorizing the Retention and

16   Employment of O'Kelly Ernst & Bielli, LLC as Co-Counsel for

17   Debtor and Debtor in Possession Energy Future Holdings Corp.

18   Effective Nunc Pro Tunc to November 19, 2014 [D.I. 3038;

19   filed December 16, 2014]

20

21   HEARING re Debtor Energy Future Competitive Holdings Company

22   LLC and Texas Competitive Electric Holdings Company LLC's

23   Application for Entry of an Order Authorizing the Retention

24   and Employment of Munger Tolles & Olson LLP as Counsel to

25   Debtors and Debtors in Possession Energy Future Competitive

1   Holdings Company LLC and Texas Competitive Electric Holdings

2   Company LLC Effective Nunc Pro Tunc to November 16, 2014

3   [D.I. 3040; filed December 16, 2014]

4

5   HEARING re Application of Energy Future Competitive Holdings

6   Company LLC and Texas Competitive Electric Holdings Company

7   LLC for Entry of an Order Authorizing them to Retain and

8   Employ Greenhill & Co., LLC as independent Financial Advisor

9   Nunc Pro Tunc to November 17, 2014 [D.I 3062; filed December

10  17, 2014]

11

12  HEARING re Application of the Official Committee of

13  Unsecured Creditors of Energy Future Holdings Corporation,

14  Energy Future Intermediate Holding Company, LLC, EFIH

15  Finance, Inc. and EECI, Inc., for an Order (A) Authorizing

16  the Retention and Employment of Guggenheim Securities, LLC

17  as Investment Banker to the Committee Nunc Pro Tunc to

18  November 12, 2014 and (B) Waiving Certain Information

19  Requirements Pursuant to Local Rule 2016-2(h) [D.I. 3118;

20  filed December 22, 2014]

21

22  HEARING re Application of the Official Committee of

23  Unsecured Creditors of Energy Future holdings Corporation,

24  Energy Future Intermediate Holding Company, LLC, EFIH

25  Finance, Inc., and EECI, Inc. for an Order Authorizing the

Page 4

1   Retention and Employment of Sullivan & Cromwell LLP as

2   Counsel to the Committee Nunc Pro Tunc to November 5, 2014

3   [D.I. 3120; filed December 22, 2014]

4

5   HEARING re Application of the Official Committee of

6   Unsecured Creditors of Energy Future holdings Corp., Energy

7   Future Intermediate Holding Company, LLC, EFIH Finance,

8   Inc., and EECI, Inc. for an Order Under Bankruptcy Code

9   Sections 328(a) and 1103(a) and Bankruptcy Rules 2014(a) and

10  2016(b) Approving the Employment and Retention of

11  Montgomery, McCracken, Walker & Rhoads, LLP Nunc Pro Tunc to

12  November 5, 2014, as Delaware Bankruptcy Counsel and

13  Conflicts Counsel to the Committee [D.I. 3121; filed

14  December 22, 2014]

15

16  HEARING re Joint Application of the Official Committee of

17  TCEH Unsecured Creditors and the Official Committee of EFH

18  Unsecured Creditors Pursuant to Sections 105(a), 1102(b)(3),

19  and 1103(a) of the Bankruptcy Code, Bankruptcy Rules 2014

20  and 5002, and Local Rule 2014-1, for Entry of Order

21  Approving Retention and Employment of Kurtzman Carson

22  Consultants LLC as Administrative Agent for the Committees

23  Nunc Pro Tunc to July 7, 2014 [D.I. 3122; filed December 22,

24  2014]

25

1   HEARING re Application of the Official Committee of

2   Unsecured Creditors of Energy Future Holdings Corporation,

3   Energy Future Intermediate Holding Company, LLC, EFIH

4   Finance, Inc., and EECI, Inc. for an Order Authorizing the

5   Retention and Employment of AlixPartners, LLP ad

6   Restructuring Advisor to the Committee Nunc Pro Tunc to

7   November 20, 2014 [D.I. 3126; filed December 22, 2014]

8

9   HEARING re Application for an Order Approving the Retention

10   of Stevens & Lee, P.C. as Co-Counsel to Energy Future

11   Holdings Company LLC Under Sections 327(a) and 1107(b) of

12   the Bankruptcy Code, Effective Nunc Pro Tunc to November 26,

13   2014 [D.I. 3139; filed December 24, 2014]

14

15   HEARING re Application for an Order Approving the Employment

16   of Goldin Associates, LLC as Special Financial Advisor to

17   Energy Future Intermediate Holding Company LLC Under Section

18   327(a) of the Bankruptcy Code, Effective Nunc Pro Tunc to

19   December 11, 2014 [D.I. 3144; filed December 26, 2014]

20

21

22

23

24

25   Transcribed by:  Sonya Ledanski Hyde

1   A P P E A R A N C E S :

2   KIRKLAND & ELLIS LLP

3        Attorneys for debtors

4

5   BY:  EDWARD SASSOWER, ESQ

6

7   KRAMER LEVIN

8        Attorneys for EFI

9

10   BY:  GREG HOROWITZ, ESQ (TELEPHONIC)

11

12   MORRISON & FORSTER

13        Attorneys for TCEH Committee

14

15   BY:  BRETT MILLER, ESQ.

16        TODD GOREN, ESQ.

17

18   SOLOMON AND CROMWELL

19        Attorneys for EFH official committee

20

21   BY:  ANDY DIETDERICH, ESQ.

22        BRIAN GLUECHSTEIN

23

24   BROWN & REMNICK

25        Attorneys for the TCEH (second liens)

Page 7

```
 1   BY:  JEFF JONAS, ESQ.

 2

 3   WHITE AND CASE

 4        Attorneys for ad hoc TCEH unsecured notes

 5   BY:  CHRISTOPHER SHORE, ESQ.

 6

 7   PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

 8        Attorneys for ad hoc committee of TCEH first lien

 9   creditors

10

11   BY:  PAUL WEISS, ESQ

12

13   KIRKLAND & ELLIS

14        Attorney for the Debtors

15

16   BY:  STEVE HESSLER, ESQ.

17

18   MCELROY, DEUTSCH, MULVANEY & CARPENTER LLP

19        Attorneys for TCEH debtors

20

21   BY:  DAVID PRIMACK, ESQ.

22

23   MUNGER TOLLES & OLSON

24        Attorneys for TCEH

25
```

1   BY:   THOMAS WALPER, ESQ.

2         TODD ROSEN

3

4   U.S.   TRUSTEE

5

6   BY:   ANDREA SCHWARTZ

7         RICHARD SCHEPACARTER

8         ANDREW VERA

9

10   RICHARDS, LAYTON & FINGER, P.A.

11         Attorney for the Debtors

12

13   BY:   DANIEL DEFRANCESCHI

14         JASON MADRON

15

16   STEVENS & LEE

17         Co-counsel for EFIH

18

19   BY:   JOHN DEMMY

20

21   CRAVATH, SWAINE & MOORE

22         Co-counsel for EFIH

23

24   BY:   RICHARD LEVIN

25

1    O'KELLY ERNST & BIELLI

2         Co-counsel debtor Energy Future Holdings Corp

3

4    BY:  DAVID CLAUDER, ESQ.

5

6    PROSKAUER ROSE

7         Attorneys for EFH

8

9    BY:  JEFF J. MARWIL

10        MARK THOMAS

11

12   ALSO PRESENT TELEPHONICALLY:

13   EMPHRAIM DIAMOND

14   ARLENE R. ALVES

15   DESIREE M. AMADOR

16   NII-AMAR AMAMOO

17   CAITLIN BARR

18   PEG A. BRICKLEY

19   MATTHEW BROD

20   MABLE BROWN

21   JEREMY COFFEY

22   KEN COLLIER

23   LOUIS A. CURCIO

24   Michael L. DAVITT

25   Adam M. DENHOFF

1    ANDREW DEVORE

2    STACEY DORE

3    DAVID M. DUNN

4    RYAN ECKERT

5    JON ERNSWILLER

6    MARITA ERBECK

7    BENJAMIN D. FEDER

8    MARK FLANNAGAIN

9    SARAH FOSS

10   JULIA FROST-DAVIES

11   CHARLES GARRISON

12   MEGGIE GILSTRAP

13   SETH GOLDMAN

14   MARK F. HEBBEIN

15   ANGELA K. HERRING

16   WILLIAM HILDBOLD

17   PATRICK HOLOHAN

18   SANDRA HORWITZ

19   HOSEPH H. HUSTON, JR.

20   NATHASH HWANGPO

21   ANNA KALENCHITS

22   Chris D. KENNY

23   CHARLES KOSTER

24   STUART KOVENSKY

25   MICHELE F. KYROUZ

1    MICHAEL LEE

2    DANIEL A. LOWENTHAL

3    KENNETH MAIMAN

4    ROBERT K. MALONE

5    ROSS MARTIN

6    PATRICK C. MAXCY

7    THOMAS MOERS MAYER

8    HAL F. MORRIS

9    NAOMI MORRIS

10   TUVIA PERETZ

11   MEREDITH PFISTER

12   MATTHEW ROOSE

13   RAVI SARAWGI

14   FREDIC SOSNICK

15   PATRICK STRAWBRIDGE

16   ANDREW M. THAU

17   AMER TIWANA

18   CARL TULLSON

19   MATTHEW UNDERWOOD

20   BRADY C. WILLIAMSON

21   APAMA YENARNANDRA

22   DANIEL ZAZOVE

23

24

25

1                    P R O C E E D I N G S

2              CLERK:  Please rise.

3              THE COURT:  Please be seated.  Good morning.

4              MR. SASSOWER:  Good morning, your Honor.  Happy

5    New Year.

6              THE COURT:  Happy New Year.

7              MR. SASSOWER:  For the record, Edward Sassower of

8    Kirkland & Ellis LLP, on behalf of the debtors.

9              Your Honor, the debtors have either resolved or

10   adjourned the majority of the items that are on the agenda.

11   All that remains is a handful of retention applications

12   relating to the conflict matter, professionals or the EFH

13   committee.

14             But before we turn to those retention applications

15   I'd like to give the Court a short update on the progress

16   we've made since we were here last on December 18th and then

17   I think a few other people would also like to make some

18   opening remarks.

19             THE COURT:  Okay.

20             MR. SASSOWER:  The first update, your Honor, is

21   with respect to plan negotiations.  The level of activity

22   has certainly picked up since your Honor encouraged the

23   parties to begin plan negotiations as soon as possible.

24   Consistent with 408 and confidentiality I won't get into

25   those plan negotiations other than to note that they are

1    happening.

2           The debtor's goal is to file a plan as early as

3    possible in the year.  The debtors hope to make that plan as

4    consensual as possible, hopefully at the time of filing, if

5    not then before we get to the confirmation hearing.

6           In an effort to streamline the confirmation

7    process as much as possible, the debtors anticipate that

8    when they file the plan and disclosure statement they'll

9    also file a motion to approve a scheduling order that will

10   govern any litigation relating to the disclosure statement

11   and or the plan.

12          I will also note that he debtors have an

13   exclusivity hearing coming up.  Exclusivity currently is set

14   to expire on February 23rd.  As a result the debtors will be

15   filing a motion next week to extend their exclusivity

16   periods.  So that motion can be heard at the February 10th

17   hearing date.

18          Your Honor, the second update is with respect to a

19   variety of ongoing litigation work streams.  In connection

20   with the legacy discovery protocol the debtors are required

21   to certify that they have completed producing documents in

22   connection with the first set of legacy discovery requests

23   within 150 days of those requests and the debtors believe

24   that they are on track to satisfy this obligation in the

25   coming weeks and to date have produced over half a million

1    documents and over 3.25 million pages.

2             Beyond this, your Honor, the EFIH first lien,

3    second lien and PIC may call an interest rate litigations

4    are ongoing and Mr. McGaan and Mr. McKane are in the Court

5    today to the extent that you have any questions about any of

6    those litigation work streams.

7             THE COURT:  I'm sorry, which work streams at the

8    end there?

9             MR. SASSOWER:  The litigation work streams.  The

10   EFIH first lien, second lien and PIC may call an interest

11   rate litigations as well as any of the discovery.

12            And the third and final update, your Honor, is

13   with respect to the bidding procedures.  This morning we

14   filed a certification of counsel.  That includes the revised

15   bidding procedures and proposed form of order.  The bidding

16   procedures and order are not on this morning's agenda, but

17   Mr. Hessler is available to the extent you have any

18   questions about that submission and we otherwise request

19   that the Court enter that order at your earliest

20   convenience.

21            THE COURT:  I did see that this morning and I

22   noted, and maybe this is what people are going to want to be

23   heard on to a certain extent in their comments, but I noted

24   that the COC indicates the sign off on the committees,

25   official committees, but it was a little vague in connection

1    with the ad hoc committees in that they had not provided

2    comments, but it didn't indicate assent so I don't know if I

3    should hear from Mr. Hessler on that or whether or I should

4    allow other people to comment if they with before--

5            MR. HESSLER:  I can comment quickly, your Honor.

6    My guess is that they'll speak up, but we don't have their

7    assent to the extent we didn't receive any feedback.

8            THE COURT:  Okay.  So you've received in effect

9    silence, you don't know.

10            MR. HESSLER:  Silence as to the substantive.

11    There were some back and forth emails that didn't really

12    provide any comments to the proposed form or the manner of

13    notice, but there were one or two replies.  We followed up

14    subsequent to the communications as described in the

15    certification files that we did not receive any comments

16    that we otherwise able to respond to with regards to the

17    manner of notice.

18            THE COURT:  All right.  Thank you.

19            MR. HESSLER:  Thank you, your Honor.

20            MR. SASSOWER:  I guess I'll just further note that

21    as you saw from the submission that the proposed form of

22    order does include comments from the two official committees

23    and it does reflect the affirmative votes of the

24    participating directors at EFH, EFIH, EFCH and TCH as well

25    as the subsequent affirmative votes of the boards--

1          THE COURT:  I saw that.

2          MR. SASSOWER:  --of those entities.

3          THE COURT:  Yeah.  I didn't have an opportunity to

4   actually read the attachments, but I did read the

5   certification.  In connection with the make whole

6   litigation, where is Mr. McGaan?  There he is.

7          MR. MCGAAN:  Yes sir.

8          THE COURT:  You might as well go to the podium.  I

9   saw that there was some activity in connection with the

10  second lien make whole litigation about whether that is

11  going to go forward or be delayed.  Can you give me more

12  information on that?

13         MR. MCGAAN:  I'm not sure precisely what you're

14  referring to.  There is a motion that goes to rightness.

15         THE COURT:  Right.

16         MR. MCGAAN:  So they challenge whether it's right

17  to be litigating their make whole claim at this time and

18  we're in the middle of the briefing on that.

19         THE COURT:  Okay.

20         MR. MCGAAN:  And it may be--

21         THE COURT:  That's what I'm talking about.

22         MR. MCGAAN:  Yes, okay.  We're in the midst of

23  briefing.  I think we filed our opposition brief, if memory

24  serves, very recently and their reply is due soon.

25         THE COURT:  Okay.  And that's going to be

1    scheduled up for a hearing--

2              MR. MCGAAN:  Yes.

3              THE COURT:  --or is that going to go under

4    certification of completion of briefing?  I assume it'll be

5    a hearing.

6              MR. MCGAAN:  I believe it'll be teed up to be

7    argued before your Honor unless your Honor would prefer

8    simply to handle it on the papers.

9              THE COURT:  No, that's the kind of thing--

10             GREG HOROWITZ:  Your Honor?

11             THE COURT:  Yes.

12             GREG HOROWITZ:  Your Honor, this is Gregory

13   Horowitz from Kramer Levin on behalf of the EFI second lien.

14   If I may just make a brief comment.

15             THE COURT:  Yes.

16             GREG HOROWITZ:  Our reply brief is due today and

17   we will get it in by the end of the day today.  We did have

18   an agreement with the debtors that the parties would jointly

19   request oral argument obviously.

20             THE COURT:  Okay.

21             GREG HOROWITZ:  Up to the Court, but we do plan

22   to--the parties I think both agree that oral argument would

23   be a good idea here.

24             THE COURT:  Okay.

25             MR. MCGAAN:  I don't disagree with that.  He

1     reminds me that that is the case.

2              THE COURT:  Okay.  I agree.  So go ahead and

3     request and once I receive the binder we'll be in contact

4     and setup a hearing time.

5              MR. MCGAAN:  Will do, your Honor.  Thanks.1

6              THE COURT:  Okay.  Anything further, Mr. Sassower:

7              MR. SASSOWER:  No, your Honor.  With that I'll

8     yield the podium to Mr. Miller.

9              THE COURT:  All right.  Thank you.

10             MR. SASSOWER:  Thank you.

11             BRETT MILLER:  Good morning, your Honor.  Brett

12    Miller, Morrison & Forster on behalf of the TCEH committee.

13    As Mr. Sassower said as well as the COC says that the TCEH

14    committee provided comments to the form of order and

15    procedures and has no objection to the entry of the order.

16    That said, the TCEH committee continues to have the position

17    that now is not the ideal time to Oncor--to mark it Oncor as

18    we are now engaged in significant plan negotiations.  We've

19    come a long way since the plan kickoff dinner that Mr.

20    Weisfelner was not invited to and though we still have a

21    long way to get a deal done, the committee hopes that the

22    sale process does not detrimental affect the parties being

23    at the table and working to come together on a consensual

24    plan.

25             So with that, again, the committee has no

1    objection.  Thank you.

2              THE COURT:  Okay, thank you.

3              GREG HOROWITZ:  Your Honor, I don't know--I can't

4    tell if other people are going to the podium, but it's Greg

5    Horowitz again.  May I be heard briefly on the bid

6    procedures.

7              THE COURT:  You'll have your opportunity, but let

8    me hear people who are in court first.

9              GREG HOROWITZ:  Thank you.

10             MR. DIETTERICH:  Good morning, your Honor.  Andy

11   Dietderich, Solomon and Cromwell for the EFH official

12   committee.  We also provided comment on the bidding

13   procedures.  They raised any number of hard issues.  We've

14   resolved those consensually with the debtor.

15             The central question I think everyone is wrestling

16   with, we're wrestling with as well, which is how do you both

17   pursue standalone plan alternatives and disposition

18   alternatives for Oncor.  We respect the different views

19   we've heard.  Some people arguing for speed.  Some people

20   arguing to take farther steps on a standalone plan before

21   the sale process.  Others arguing to do the sale process so

22   you have indications that then help you in the standalone

23   plan negotiations.

24             I don't think the E committee knows what the right

25   answer is, but our view is that both should be pursued with

1    all possible speed.  And so we have--we sign on.  We support

2    the bidding procedures, but we also ask the debtor to make

3    sure that their attention is not solely on the third-party

4    disposition process, but also on the plan process and we

5    think there is enough intelligence and capacity at the

6    various firms involved to really have our cake and eat it

7    too and do both at the same time.  Thank you.

8            THE COURT:  Thank you.

9            MR. JONAS:  Good Morning, your Honor.  Jeff Jonas

10   from Brown & Remnick on behalf of the TCEH second liens.

11   Your Honor, we continue to be opposed to the Oncor sale and

12   the bidding procedures.  I'll be brief.  We're especially

13   disappointed that this is being put forth and is being

14   supported by our independent director, Hugh Sawyer, now when

15   fairly fulsome settlement discussions among creditor groups

16   recently have gotten underway with respect to which we are

17   cautiously optimistic.

18           We believe restarting the Oncor sale process now

19   could be detrimental to the success of those settlement

20   efforts and moreover we're concerned that Mr. Sawyer's

21   handling of this substantially undermines his ability to be

22   an honest broker in connection with those settlement

23   discussions.  Thank you, your Honor.

24           THE COURT:  You're welcome.

25           CHRIS SHORE:  Happy New Year, your Honor.  Chris

1    Shore from White and Case on behalf of the ad hoc group of

2    TCH unsecured notes.  Let me just kind of step back and bit

3    and maybe give your Honor a state of the estate because

4    you're not--I don't think you're getting the full picture of

5    what's going on and what people are talking about.  There's

6    still no Oncor valuation that's been done by the company,

7    but it's looking like, based on a whole host of factors,

8    like the Oncor sale if structured right can clear EFH to EFH

9    equity with the sponsors getting whatever they cannot pay in

10   the form of make wholes or post-petition interests

11          That structure is going to require a tax free

12   plan, not a standalone sale, and that strategy is going to

13   require a complete no cost disengagement of the T side and

14   the T side pursuant to an RSA type structure.  We are all

15   talking about ways to hold the structure together, how to

16   deal with a standalone sale and typical of the 20-way

17   negotiation, it's pretty complex, it gets pretty heated with

18   the debtors constantly with the drum beat of we're going to

19   file a plan thinking what they're doing is fostering

20   settlement discussions.

21          Let me turn to the bid procedures, not by way of

22   re-argument.  We didn't comment on the order because your

23   Honor in the decision said that it was the committee that

24   had to comment and sign off on the order.  But we're still

25   not on board with the bid procedures process and let me

1    address that.  In that regard, you know, we all I think

2    appreciated the holiday armistice, but it looks like the

3    armistice is going to be over.

4          We still see the Oncor sale as what it was

5    described, your Honor, in the testimony as a catalyst for

6    fostering plan negotiations.  We also view it as a mechanism

7    to moving back to the RSA structure in which the E side is

8    going to get everything.  The sponsors are going to get

9    their tax free spin and avoid liability and the T side is

10   going to get turned over to the first lien lenders.  It's

11   all right.  We get it.  The war will be back.  But as now

12   nothing remarkably good is happening on the T side.

13         After a couple of months and having obtained

14   independent advisors, Mr. Sawyer not surprisingly has not

15   changed his testimony based upon the minutes we just got,

16   you know, where they're going to go forward with the sale

17   process with the idea that if at any time someone comes

18   forward and tells TCH or approves the TCH that something

19   better is available, they'll exercise a fiduciary out, but

20   now they're going to pursue the sale process.

21         What came in last night or this morning at 3:00

22   o'clock is remarkable in three respects and I think it does

23   need to be noted.  First, we did spend a lot of time in

24   November and December working on a fiduciary failsafe, one

25   that would address what would happen in the event of an

1    actual conflict with the counsel being in place to deal with

2    the debtors and the ability of a fiduciary to exclude all

3    the conflicted people from the decision and make a decision

4    with respect to a particular conflict matter.

5           Despite having that fiduciary failsafe in place,

6    there has been no activating of Mr. Sawyer on the bid

7    procedures, even though your Honor ruled that there is an

8    actual conflict.  It's an important matter that a fiduciary

9    when a conflict exists make an unconflicted decision and we

10   put a mechanism in place that would have been satisfied by

11   the sending of a notice that said the decision lies with

12   Hugh Sawyer.

13          Not only was that notice not sent, but your Honor

14   will see, and as was in the certificate of counsel when you

15   go through the minutes and as was represented, the TCEH

16   board, including Mr. Sawyer and all of its conflicted

17   directors, were the ones who supported the bid procedures

18   and they complied with your Honor's ruling, although didn't

19   necessarily address the fiduciary issue when they had a

20   separate certification and a separate meeting that Mr.

21   Sawyer was on board.  But be it clear, Mr. Sawyer did not

22   act for TCEH.  He provided an approval which then the TCEH

23   board in the minutes ultimately adopted the resolutions on

24   the bid procedures.

25          The second remarkable thing is that within three

1   days of having all these board meetings they produced to

2   your Honor fully written out, beautifully written board

3   minutes for EFH, EFIH, TCEH, EFCH and I guess EFCH Finance

4   that layout in great detail everything that was said and all

5   of the reasons why these bid procedures were the best bid

6   procedures for moving forward.  Six months later we still

7   don't have the minutes for the board meetings, whichever

8   board meeting it was, when the debtors determined it was in

9   the best interests of the TCEH estate to support a sale of

10  Oncor.  In other words I think a fair reading of the minutes

11  is if we're going to sell the assets this is the best way to

12  do so, but we still don't have an independent decision that

13  pursuing the Oncor sale, at least from the TCEH side, is in

14  the best interests of the TCEH estate.

15          In fact, I think TCEH creditors would have a lot

16  to say as to whether or not a tax free spin of TCEH is in

17  the best interests of TCEH or whether other structures,

18  including ones in which the tax is incurred, could benefit

19  TCEH.

20          The third remarkable thing when you go through the

21  minutes, and I'd ask your Honor to at least go through the

22  EFH board minutes, as I understand it just piecing it

23  together there was an EFH global meeting where everything

24  was explained and then they had telephonic meetings with

25  respect to the other boards.  It was explained that the

1    reason for pursuing the bid procedures not only, surprising,

2    was it will foster plan negotiations, but also that it will

3    assist in completing the private letter ruling with the IRS.

4              Just to remind the Court, the private letter

5    ruling with the IRS is premised on the RSA.  A tax free

6    disengagement of TCEH and EFCH, or the T side and the E

7    side, with no claims going over and full releases for

8    everybody involved.

9              So despite everything, people are still looking at

10   the RSA structure and people are going to be pursuing the

11   RSA structure unless and until someone steps forward and

12   stops that process.  So, in the end several months later,

13   maybe even nine months later, we're just back to the same

14   process with people trying to move forward with a plan at

15   TCEH which is not a success, it is a disaster.  It is a

16   turnover of all the assets to the first lien creditors.

17             And pre-staging a dispute you saw that there were

18   objections filed with respect to Greenhill and we're going

19   to try to resolve it.  So for example, the independent

20   director has hired somebody and defined it a success for

21   TCEH that the assets are turned over to the first lien

22   lenders for--in full satisfaction of their claims with

23   nothing getting distributed.  As long as it's not a Chapter

24   7 that plan results in a $9.5 million success fees.

25             All told that kind of plan could expose TCEH to

1    $77 million in financial advisor success fees.  That is, the

2    TCEH estate has not a single dollar of distributable value

3    to unsecured creditors and its estate is entirely consumed

4    with the liens of the first lien lenders.  So, all this to

5    say the state of the estate is we're back.  We're going to

6    actively pursue the efforts along with the committee and

7    along with the second liens to maximize the value of the

8    actual assets in which TCEH has an interest and we're hoping

9    that we can get a fiduciary who does that without regard to

10   how that might affect another estate.  It is not in our view

11   sufficient, as I said for your Honor before, to have someone

12   just point to a fiduciary out if everybody does the work and

13   convinces me that we should be doing something different

14   I'll exercise a fiduciary out we're entitled to a fiduciary

15   in the seat.

16           THE COURT:  Thank you.  Actually, let me hear from

17   the people on the phone before I--at this point.

18           GREG HOROWITZ:  Thank you, your Honor.  It's

19   Gregory Horowitz.  Can I be heard?

20           THE COURT:  Yes.  Yes.

21           GREG HOROWITZ:  Thank you.  Gregory Horowitz from

22   Kramer Levin on behalf of the EFIH second lien trustee.

23   Your Honor, we had asked the debtors repeatedly if they

24   would p0rovide us with a copy of the new bid procedures

25   order before they filed it and they had said that they

1    would.  Notwithstanding that we never received a copy.  We

2    never saw this until it was filed early this morning.

3           In the new--in the red line of the bid procedures

4    we were surprised to see a paragraph that purports to limit

5    communications between bidders and any other party solely to

6    communications with the committee representatives.  That's

7    inconsistent with the agreement that we reached with the

8    debtors that was the basis for our having withdrawn our

9    objection to the bid procedures.  The language we negotiated

10   is still in the order, your Honor.  There is still language

11   that says that notwithstanding anything in any

12   confidentiality agreement, nothing in the confidentiality

13   agreement shall limit the right of any creditor to

14   communicate with potential bidders.

15          But in the bid procedures now there's a full

16   paragraph that's inconsistent with that.  Had we seen that

17   ahead of time we would have pointed out that inconsistency

18   to the debtor and asked them to remove it.  As it is we

19   think there is no basis to have that paragraph in there as

20   we noted when I got--as I noted when I got up during the bid

21   procedures hearing.  If this kind of limitation had been in

22   place before your Honor we would not have been able to bring

23   NextEra to the table which has led to so much benefit for

24   the estate.  So we would ask that that paragraph be struck

25   out before any order is entered.

1          THE COURT:  Thank you.  Anyone else on the phone?

2          MR. ADLERSTEIN:  Your Honor, Jacob Adlerstein from

3     Paul Weiss.  May I be heard?

4          THE COURT:  Yes.

5          MR. ADLERSTEIN:  Thank you, your Honor.  Jacob

6     Adlerstein, Paul Weiss Riking on behalf of the ad hoc

7     committee of TCEH first lien creditors.

8          Just very briefly, I'm not going to respond to all

9     of the remarks that Mr. Shore made, but I'd just like to

10    reiterate to the Court that we continue to support approval

11    of the bid procedures and we're very pleased this morning to

12    see that the debtors have satisfied the conditions to

13    approval that your Honor outlined in your November ruling.

14         While we agree with some of the comments that have

15    been made by other parties in court that substantive plan

16    negotiations had commenced and remain ongoing and we're

17    hopeful that those will be fruitful, we also believe the

18    debtors can and should pursue the Oncor auction process on a

19    (indiscernible) track with those plan negotiations and we

20    expect that they will do so.  We think that's in the best

21    interests of all the debtor stakeholders.  So we support

22    approval of the bid procedures and we're hopeful that those

23    plan negotiations will continue.

24         THE COURT:  Thank you.  All right, Mr. Hessler?

25         MR. HESSLER:  Good morning, your Honor.  For the

1    record Steve Hessler of Kirkland & Ellis on behalf of the

2    debtors.  Two relatively quick points, your Honor, and then

3    Mr. Walper of Munger Tolles also I believe wants to be heard

4    as well.

5              First, your Honor, in response to Mr. Shore's

6    comments, as we said at the outset the bid procedures order

7    is not on the agenda for today and so we are not intending

8    to argue the bidding procedures motion before your Honor

9    this morning, particularly given the language in the opinion

10   of your Honor's November 3rd ruling.

11             That said, we are not going to have another

12   hearing on the merits of the decision.  We're going to put

13   together a submission, provide it to your Honor and if your

14   Honor has questions or concerns about the comprehensiveness

15   or propriety of that submission that you will inform the

16   parties.  So, we await either the entry of the order or

17   otherwise hearing from your Honor.

18             I will note as we attempted to set forth in

19   detail, not just in the certification of counsel, but all

20   the materials that were otherwise attached, we read

21   extremely closely and complied what we believe very, very

22   carefully with your Honor's conditional ruling and said I am

23   conditionally approving the bidding procedures provided the

24   debtors satisfy the following steps and I won't go through

25   all of the steps, but we do endeavor in the certification of

1    counsel to indicate how, at very careful and great length,

2    we satisfied each of those steps so we look forward to

3    hearing from your Honor with regard to the review of the

4    submission.

5            My second point with regard to Mr. Horowitz's

6    comment, one just quick correction for the record.  We did

7    not promise to circulate the order to all of the parties of

8    the case in advance one, because it wasn't required by your

9    Court's ruling and two, you know, again taking from the

10   order itself or the ruling itself, the number of sort of

11   cooks in the kitchen here would have made that a very

12   untenable negotiation.  We did negotiate at extraordinary

13   lengths with both of the committees, as your Honor directed

14   us to do so, and we are pleased that we received an order--

15   that we ended up with an order that both of the official

16   committees can consent to its entry.

17           All of that being said, the concern that Mr.

18   Horowitz raises, we did resolve the objection of the EFI

19   seconds with some language that involved consents in the

20   NDAs that were being signed over the summer and early fall

21   and lifting--there was a consent right in there that the

22   debtors had to consent for bidders to be able to talk to

23   creditors.  So we did lift that language to resolve or we

24   lifted that consent right with some language that we added

25   in the order.  That language remains in the order so we have

1    not touched the language that satisfied their objection.

2            As the hearing was started Mr. Horowitz and his

3    colleagues did send us some emails that are pointing to some

4    new language in the procedures that we added at the request

5    of the EFH official committee that arguably creates an

6    inconsistency.  I actually--I think they can be read in

7    concert.  That being said, as soon as this hearing is over

8    we'll confer with Mr. Horowitz and his colleagues and to the

9    extent that we need to put a fix in there to make sure that

10   there's no inconsistency of course we'll endeavor to do so,

11   your Honor.

12           THE COURT:  Okay.

13           MR. HESSLER:  And we'll inform the Court

14   accordingly.

15           THE COURT:  Thank you.

16           MR. HESSLER:  Thank you, your Honor.

17           THE COURT:  Anyone else before--?

18           MR. PRIMACK:  Your Honor, David Primack, McElroy,

19   Deutsch, Mulvaney & Carpenter LLP on behalf of the TCEH

20   debtors.  I'd like to introduce Mr. Walper who will be

21   speaking on our behalf and we'll be filing pro hoc motions.

22           THE COURT:  Okay.  You need to keep your voice up.

23   I can't hear you.

24           MR. PRIMACK:  I'm sorry.  We'll be filing pro hoc

25   motions for Mr. Walper as soon as we can.

1          THE COURT:  All right, thank you.

2          Thank you, your Honor.  Just very briefly, Thomas

3     Walper, Munger Tolles & Olson representing TCEH for--as

4     directed by Mr. Hugh Sawyer for actual conflicts.

5          I just want to respond only very briefly to some

6     of the comments made by my dear colleague, Mr. Shore.  Let

7     me represent to the Court that Mr. Sawyer has acted with the

8     utmost due care with respect to a decision on the bid

9     procedures, has acted independently, been advised both by

10    Munger Tolles as well as by Greenhill and has made the

11    independent determination with respect to the bid procedures

12    and then reported it back to the larger TCEH board which

13    then made the decision as well.

14         I don't want to go into deep detail, but of course

15    in connection with future submissions as necessary we'd be

16    delighted to do so.

17         THE COURT:  All right, thank you.

18         MR. PRIMACK:  Thank you.

19         THE COURT:  Okay.  Well, thank you very much for

20    your comments.  I will take them all into consideration when

21    I look at the certification of counsel and, as I said at the

22    hearing and ruling back in, was it November, I--we're not

23    going to sort of re-argue the hearing we had I think four

24    days and I did make some condi--I did conditionally approve

25    subject to some caveats that needed to be complied with and

1    I'm going to review the certification of counsel with that

2    ruling in mind, but also with the comments that I heard

3    today in mind and enter an order if I deem it appropriate

4    and raise any issues if I deem it appropriate.

5            I'm not quite sure what to do given the issue Mr.

6    Horowitz has raised and the fact that, as Mr. Hessler said,

7    they're going to have comments.  Should I wait for the

8    communication before entering an order?

9            MR. HESSLER:  Yes, your Honor.  But to the extent

10   helpful, I believe we can get back to the Court within the

11   matter of an hour or two.

12           THE COURT:  Okay.  All right.

13           MR. HESSLER:  It's a pretty discrete issue.

14           THE COURT:  All right.  Okay.  All right, very

15   good, thank you.  I'll await that then one way or the other.

16   Why don't we turn to the actual hearing which I believe,

17   given everything I've seen--well, there may be an open issue

18   with the Office of the U.S. Trustee.  So, I don't know

19   exactly how you want to proceed.  I know we go to agenda

20   item--where is it, 13 which sort of starts the catalog.  I

21   will say that I did, as reflected in the amended agenda,

22   sign orders approving the employment or the retention of

23   Montgomery, McCracken and Kurtzman Carson and AlixPartners.

24   In addition, earlier today Guggenheim.  I don't know if

25   that's on the docket yet.  Okay, so I did sign those.

1          MR. GLUECHSTEIN:  And your Honor, if I may, Brian

2     Gluechstein from Sullivan & Cromwell.  Since you were

3     cataloging, and we appreciate you entering the orders on

4     behalf of the other EFC committee professionals, I think the

5     only item remaining outstanding with respect to the EFH

6     committee retentions where the order was not entered ahead

7     of the hearing today is agenda item 19 and that's the

8     retention of my firm Sullivan & Cromwell as the counsel to

9     the EFH committee.

10          The application seeks retention of Sullivan &

11    Cromwell nunc pro tunc to November 5th 2014.  The

12    application was submitted along with documentation in

13    support of the application in the form of a declaration from

14    Mabel Brown, the chair of the EFH committee as well as a

15    declaration and supplemental declaration of Andrew

16    Dietderich of Sullivan & Cromwell.

17          We received no objections to the retention.  We

18    did receive some comments from the United States Trustee

19    which we have worked through with them.  Mr. Dietderich's

20    supplemental declaration that was filed on the docket this

21    morning was filed to address comments from the U.S. Trustee

22    related to disclosure of additional information related to

23    certain entities on the interested parties list.  Subject to

24    any questions from the Court, we would respectfully request

25    that the Court enter that order as well and that would

1    conclude the EFH retentions.

2              THE COURT:  I did see the affidavit and looked at

3    that on the conflicts, although it's not on the amended

4    agenda, but I know it's been a circulating process or

5    evolving process.  Has there been any change to the

6    retention order or just the filing of the--?

7              MR. GLUECHSTEIN:  There has been no change to the

8    order, your Honor.  There was just additional disclosure

9    requested by the U.S. Trustee.

10             THE COURT:  Okay.  Any further comment in

11   connection with the retention of Sullivan & Crowell?

12             MS. SCHWARTZ:  Your Honor, Andrea Schwartz of the

13   U.S. Trustee.  We have no objection.

14             THE COURT:  Okay.

15             MR. GLUECHSTEIN:  Your Honor, I have a copy of the

16   form of order if you'd like me to hand off--

17             THE COURT:  That would be excellent.  I'm looking

18   for it now, but the copy I have is--

19             MR. GLUECHSTEIN:  I have it right here.

20             THE COURT:  --double sided, so.

21             MR. GLUECHSTEIN:  Thank you, your Honor.

22             THE COURT:  Thank you.  I'll sign that order.  So-

23   -

24             MR. SASSOWER:  Okay.  Your Honor, so my retention

25   application is not up today thankfully, but to give the rest

1    of the hearing a little bit of structure I think what we

2    have left is Munger for TCEH, Proskauer for EFH, Cravath for

3    EFIH and their respective Delaware co-counsels.

4              THE COURT:  Right.

5              MR. SASSOWER:  As well as Greenhill for TCEH and

6    Goldin for EFIH.  There have been no objections filed to any

7    of those applications and so they are uncontested, but last

8    night the U.S. Trustee filed a statement and I believe Ms.

9    Schwartz would like to be heard on that statement.

10             THE COURT:  Okay, thank you.

11             MS. SCHWARTZ:  Good morning, your Honor.  For the

12   record, Andrea Schwartz and Richard Schepacarter for the

13   United States Trustee, Andrew Vera, acting U.S. Trustee.

14             Your Honor, thank you for giving me an opportunity

15   to be heard today.  As is the usual and customary process of

16   the U.S. Trustee, when retentions are filed we very promptly

17   engage with the applicants and their counsel to review their

18   applications, discuss issues, discuss disclosures, request

19   additional supplementation, changes to the orders, etcetera

20   and I can report to the Court that each of the conflicts

21   counsel and conflicts advisors have been extremely

22   responsive to the U.S. Trustee.  We've had ongoing

23   discussions.  There has been supplemental declarations

24   filed.

25             Mr. Sassower accurately stated that we did not in

1    fact file and objection and we do not oppose the retention

2    in principle of any of the conflicts counsel or the

3    conflicts advisors.  We have one issue, your Honor, that we

4    really would seek the Court's assistance with respect to.

5            As your Honor is aware, from the outset of these

6    cases there has been looming over the cases different views

7    with respect to the qualification of one law firm to

8    represent each of the various entities with respect to a

9    host of issues.  At the outset of the case we engaged in

10   very lengthy discussions with Kirkland & Ellis with regard

11   to those issues.  You might recall, your Honor, that there

12   were deposition notices served on Mr. Sassower or the firm,

13   30(b)(6) etcetera all about the retention and we came up

14   with what we thought was a very reasonable and appropriate

15   and a process that complied with the law and set forth a

16   good pathway forward for when under the Third Circuit an

17   actual conflict arose.

18           Kirkland & Ellis followed that procedure.  There

19   was also a protocol that was setup with the other creditors.

20   We're now at that point, your Honor, when, as your Honor

21   knows, in the November 3rd ruling your Honor stated as part

22   of your Honor's comments that your Honor did not find--did

23   not agree with the testimony of the certain independent

24   directors that there was only a potential conflict of

25   interest and not an actual conflict of interest.

1         As a result of that, your Honor, Kirkland filed

2   their notice.  There is additional conflicts counsel that is

3   seeking to be retained.

4         The issue, your Honor, that we think is important

5   for the Court to assist and actually weigh in on now is the

6   scope of the retention of conflicts counsel.  We have been

7   in ongoing and evolving discussions with each of the

8   attorneys for conflicts counsel and we asked them, we would

9   like you to please identify the conflict matters on which

10  you are going to be retained and each of them worked

11  together, because they thought it was important for purposes

12  of symmetry that they have the same scope of services with

13  respect to the conflicts issues.

14        We are not comfortable with and don't think it's

15  appropriate at this point in time in the case, your Honor,

16  for conflicts counsel to not identify one matter on which

17  they are to be engaged.  To the contrary, your Honor, not

18  only did they say that A, they're going to be engaged to

19  advise the independent directors as to what is an actual

20  conflict, but they also say that they're going to represent

21  the indepen--at the direction of the independent director

22  for that entity the conflict matter and all matters "arising

23  from and related to the conflict matter".

24        Your Honor, that language is extremely broad and

25  really any service could fall within that scope.  So, the

1    question comes, and we've had open discussions with each of

2    the attorneys on this issue, the question comes well why not

3    kick the can down the road, judge, and just let the fee

4    committee deal with it?  Let's see what happens as the fees

5    are getting incurred and we have a mechanism in place that

6    the Court has already said that the Court is going to rely

7    heavily on, why not just wait until that process is going

8    with respect to the different counsel?

9            We believe, your Honor, that that would not be the

10   best approach and let me share with you a little bit of the

11   reasoning why.  First of all, your Honor, for the first

12   three months of these cases the fees have been approximately

13   $65 million.  There are over 30 professionals that have been

14   retained with the Court's approval or have applied for

15   retention.  That is a huge number of professionals, a huge

16   number of applications and a huge amount of fees.

17           My statements are not a characterization of the

18   reasonableness of those fees, it's just that that's what

19   we're dealing with here and, your Honor, it is not uncommon,

20   in fact it's in many cases, where conflicts counsel comes in

21   and the Court is very mindful as part of the role of the

22   Court to ensure the economical administration of the cases,

23   the Court sets parameters on the scope of the different

24   retentions.  And here one of the things that--response that

25   we've received has been that the counsels say they cannot

1   identify the conflict matters and we do not agree with that,

2   your Honor.

3          I think at this point they certainly can identify

4   the conflict matters on which they're to be engaged and I

5   think, your Honor, it not only benefits the estate, but it

6   benefits the professionals as well.  Shouldn't, your Honor,

7   be a heads up to the professionals that this is where our

8   range of our services are going to fall and to the extent

9   that we're not careful we don't want to overlap or duplicate

10  the services of main bankruptcy counsel with whom we are in

11  current discussions with concerning the scope of their

12  continued retention?  But shouldn't there be some measure at

13  this point that everyone's on notice this is what we're

14  doing, even in more general terms than arising from or

15  related to a conflict matter.  There is no identification of

16  a conflict matter.

17         For example, how about representing EFIH or TCEH

18  with respect to the bid procedures motion?  That's clearly a

19  conflict matter.  They clearly have been involved with it.

20  Certainly that could be identified.  And, your Honor, I

21  have--there have been courts, and perhaps your Honor has

22  done this as well, but conflicts counsel identifies the

23  matters that they're going to be retained on and to the

24  extent an additional conflict matter arises they file a

25  supplemental notice with the Court, a notice to parties in

1    interest so that parties can be heard if there's some

2    concern that the debtors or the estate is going to be

3    incurring fees that may not be warranted, may not be

4    reasonable and so forth.

5              So, your Honor, our sole issue at this point is

6    that we come up with a workable measure by which everyone

7    can be on notice as to where their role is going to be so

8    that, your Honor, we don't get into a situation where

9    there's no description and then you have fees that are

10   either incurred unnecessarily or that they exceed the

11   reasonableness that your Honor will ultimately determine.

12             In addition, your Honor, another benefit would be

13   that there's some information or advice available to the

14   independent directors so that they know that if they have an

15   issue relating to one particular concern which counsel

16   they're supposed to be seeking their guidance from.  I mean,

17   frankly, your Honor, I think this is a very complicated

18   case.  I think that there are overlapping issues.  There

19   certainly--I think it could be completely reasonable that an

20   independent director, no matter how he or she exercises

21   their fiduciary duties, could use guidance as to wait a

22   second, we have all these attorneys in the case, we have all

23   these financial advisors, who am I supposed to be

24   communicating with?  Who am I supposed to be taking

25   direction from?

1          Your Honor, so with that I think that at this

2     point the Court should in fact require the parties to better

3     define the scope of the conflict matter and not approve

4     language that improves arising from or related to the

5     conflicts matter.  I really think, your Honor, that the fee

6     committee is meeting once a month.  We attend the meetings.

7     There's a ton of work that has to be done and why get

8     involved at the point, your Honor, when applications are

9     coming up that then the estate has to incur the cost of

10    litigation over objections?  I mean it's very costly.

11          And so for the economical efficiency and

12    administration of the cases, your Honor, we respectfully

13    request that the Court require the parties to identify the

14    conflicts matters without prejudice to their ability to file

15    supplemental notices regarding additional conflicts matters.

16          THE COURT:  Okay.

17          MS. SCHWARTZ:  Thank you.

18          THE COURT:  Thank you.  Would anyone like to

19    respond?  I'd appreciate a response.

20          MR. DEMMY:  Good morning, your Honor.  John Demmy

21    of Stevens & Lee.  We're here on item 23, our retention

22    application.  I would like to introduce Rich Levin of

23    Cravath, Swaine & Moore.  He's here on Cravath's retention

24    application, it is item 13, and by him standing here next to

25    me I think he would like to address the Court or would like

1    to take the Court's invitation to do so.

2              THE COURT:  Okay.  Thank you.

3              MR. LEVIN:  Thank you, your Honor.  Richard Levin,

4    Cravath, Swaine & Moore as conflicts matter counsel for

5    Energy Futures Intermediate Holding Company LLC.

6              Because the United States Trustee has not filed an

7    objection to, and I'll speak to Cravath's application, but

8    the language in all of the three counsel are the same so it

9    may apply equally to them assuming the other two counsel

10   adopt the views.  Since the U.S. Trustee has not filed an

11   objection to the application we ask that the order be

12   entered as submitted with one correction.  That is we did

13   have some agreement with the U.S. Trustee on some changes to

14   other provisions in the order that did not relate to this

15   specific issue and I just notice on the agenda that that

16   revised order had not been previously filed so we will

17   submit that after the hearing depending on the Court's

18   ruling.

19             But I want to note that the U.S. Trustee's Office

20   said that they would welcome disclosure even in general

21   terms of what the conflict matters are because the language

22   in paragraph 11 of the Cravath supplemental declaration, the

23   same language in different paragraphs of the other two

24   declarations, was too general.  For example, Ms. Schwartz

25   said even discussing the bidding procedures, which is a

1      conflict matter.  So with that I would prefer to paragraph

2      12, the very next paragraph of my supplemental declaration

3      which reads, "Based on Cravath's initial investigation to

4      date, which is ongoing and incomplete, conflicts matters

5      likely will include without limitation intercompany claims

6      between EFIH and its estate on the one hand and any other

7      debtor and its estate on the other hand whether addressed

8      through litigation or through settlement either outside of a

9      plan or under a plan and to the extent involving a conflict

10     matter, any sale or bidding procedures including without

11     limitation the selection of a stalking horse bidder and

12     determination of a winning bidder in any sale and will

13     include other matters as determined by the disinterested

14     manager."

15            So, I think we responded and provided in the

16     record exactly what the U.S. Trustee requested at the

17     lectern here today.  If you have any other questions, your

18     Honor, I'd be happy to answer them.

19            THE COURT:  I do not.  Thank you.

20            MR. LEVIN:  Thank you.

21            THE COURT:  Mr.

22            MR. CLAUDER:  Good morning, your Honor.  David

23     Clauder of O'Kelly Ernst & Bielli, Delaware, counsel for

24     Energy Future Holdings Corp with Proskauer Rose, items 14

25     and 15 on the agenda are both of our firms' retention

1    applications.  Both Mr. Marwil, Mr. Thomas of Proskauer Rose

2    are in attendance.  I think Mr. Thomas would like to address

3    the Court and you've previously entered orders submitting

4    both of them pro hac vice.

5              THE COURT:  Very good.  Thank you.

6              MR. THOMAS:  Good morning, your Honor.

7              THE COURT:  Good morning.

8              MR. THOMAS:  Mark Thomas of Proskauer.  My

9    partner, Mr. Marwil, is here who submitted his declaration.

10   We agree--well, let me back up.  We are counsel to EFH, the

11   ultimate parent debtor reporting to Don Evans and Billy

12   Williamson, the disinterested directors.

13             Mr. Marwil's second supplemental declaration,

14   docket number 3200 paragraph 10, has the language that Mr.

15   Levin quoted regarding the identified conflict matters to

16   date.  We think any other proposals at this stage of this

17   matter are sort of unworkable and just make work and we

18   don't believe it's appropriate.  The U.S. Trustee said they

19   have no objection.  The application should be granted and we

20   understand the risks we have if our fees are deemed

21   duplicative.  Thank you, your Honor.

22             THE COURT:  Thank you.  Anyone else?

23             MR. PRIMACK:  Your Honor, David Primack again,

24   McElroy, Deutsch, Mulvaney & Carpenter.  I'd like to

25   introduce Todd Rosen from Munger Tolles who will speak on

1    behalf of the TCEH debtor.

2              THE COURT:  Okay.  Thank you.

3              MR. ROSEN:  Good morning, your Honor.  I'll be

4    brief.  Just to reiterate, the Munger Tolles application on

5    behalf of the TCEH debtors under the direction of the

6    independent manager Hugh Sawyer also includes the language

7    and based on that we've also asked that the Munger Tolles

8    application be approved on the basis submitted to the Court.

9              THE COURT:  Okay.  Thank you.

10             MR. ROSEN:  Your Honor, we're also here on the

11   Greenhill application.  Should I address that at this point?

12             THE COURT:  No, let's deal with--we'll deal with

13   Greenhill in a minute.  All right, Ms. Schwartz, do you have

14   any reply?

15             MS. SCHWARTZ:  Thank you, your Honor.  With

16   respect to the language in paragraph 11, which does in fact

17   say that any matter arising from or related to a conflict

18   matter, your Honor, we believe that is too broad.  It can be

19   used to modify the additionally very broad language in

20   paragraph 12.

21             The idea--I'm a little bit taken by the comment of

22   make work because I can really tell you, your Honor, we've

23   thought very carefully about it and I've gone through the

24   fee committee process in another case.  Reviewing fees,

25   filing objections, negotiating fees is part of the bread and

1    butter of the U.S. Trustee's program, the statutory charge,

2    etcetera.

3              The idea here is not to have additional

4    litigation, additional costs, additional review.  Your

5    Honor, this is a case where you have, as I said, you have 32

6    professionals and the idea was to streamline it and to make

7    sure, as counsel had stated, that they understand the risk.

8    I mean, yes, they have a risk if they perform services that

9    are not reasonable and the Court ultimately determines that

10   after discussions with the fee committee, etcetera, but

11   that's not the purpose, your Honor, of our statement today.

12             The purpose is that there should be some clear

13   delineation here and that including that very broad language

14   opens up to any service that can possibly fall within

15   arising from or related to a conflict matter.  So, your

16   Honor, I mean, we don't object to their retention in

17   principle, we agree.  And I just want to say one other thing

18   too, your Honor.  I think your Honor is aware that the U.S.

19   Trustee program spends a lot of time with the professionals

20   to go through their applications and does so on a rolling

21   basis.  So, the fact that we may have one issue at the end

22   of the day, I mean, your Honor, you've had 32 applications

23   come before you.  I think we've worked out almost every

24   issue or that retention application was withdrawn.  We

25   really take it seriously our charge to be able to

1    efficiently and economically resolve retention issues and we

2    come to the Court very judiciously to ask for the Court's

3    assistance when we think it's absolutely necessary.

4          THE COURT:  Thank you.  Well, I'm very mindful and

5    always concerned with duplicate effort and I'm also mindful

6    of not unfairly back loading the question of whether

7    duplicate effort has happened or have been approved on the

8    front end at the fee hearing level or at the fee application

9    level.  That is a difficult task.  It's always difficult in

10   reviewing fee applications to parse out exactly what was

11   done, exactly whether that was duplicative of other things

12   that have been done by other counsel.  It requires comparing

13   the applications.  It's an extremely labor intensive process

14   and an inefficient way to parse out responsibilities between

15   professional firms that can be more efficiently parsed out

16   at the front end.

17         It is also true that in many instances when

18   conflict counsel is retained it is both efficient and easy

19   to delineate on the front end what those conflicts are and

20   as a result parse out responsibilities in a way to ensure on

21   the front end that there's not going to be a duplication of

22   effort.

23         For example, debtor's counsel might have a

24   conflict with a litigation opponent that is sufficiently

25   material that it can't be avoided and conflict counsel is

1    retained to pursue the litigation.  That's easy and it is

2    dealt with and should be dealt with at the front end.

3          This is a much more difficult situation.  I think

4    there are counsel in the room who would take the position

5    that the case is inherently conflicted and that it touches

6    every aspect of the negotiation of a plan and the operation

7    of the case going forward.  Indeed, if we go back to the

8    very beginning of the case there was an objection to joint

9    administration based on a fundamental disagreement with the

10   concept that you could actually run the case on a

11   consolidated basis and that touches on this idea that

12   Kirkland & Ellis, as lead counsel to the debtors as a whole,

13   is somehow conflicted and that was part of the negotiation

14   that occurred between Kirkland, the debtors and the Office

15   of the U.S. Trustee to their retention in the first place

16   which gave rise to this idea of if there is a conflict we

17   identify it, etcetera.

18         What's happened in connection with the independent

19   directors has sort of come in to a certain extent through

20   the back door of the process by which the debtors were

21   seeking bid procedures in connection with the Oncor sale and

22   the Court was put into a position of having to make a

23   ruling, which I stand by, that in connection with that

24   litigation--litigation is the wrong word--with that process

25   there was an actual conflict and that the independent

1   directors needed to act specifically in connection with that

2   sale.  I have a certification of counsel that indicates--

3   which I again have reviewed only briefly--which indicates

4   exactly how those directors and independent directors on

5   those boards have indeed acted in consultation with counsel

6   whose retention is before the Court to deal with that.

7   That's obviously a very specific example and one that's

8   easily delineated and appropriate on the front end and has

9   been identified both practically through the submission and

10  the work that's been done and the submission of the

11  certification as well as identified, as Mr. Levin quoted

12  perhaps more generally, but with some specificity in

13  referencing the fact that we're talking about a sale.

14          Okay.  I understand all that and I think that's

15  been dealt with in the context and consistently with the

16  statement that the Office of the U.S. Trustee has put in

17  place.  I think the statement goes sort of a step further

18  and says I want more specificity with any kind of conflict

19  matter that might arise that the independent directors or

20  the corporations on an independent basis I guess more

21  specifically need to act.

22          I disagree there and I'm not going to require any

23  further specificity be provided because this is an ongoing

24  process and it involves a broad range of activities that

25  might come into play and require independent advice and

1    action by conflicts counsel.  We have issues in connection

2    with the tax free spend.  We have issues in connection with

3    ongoing discovery.  We have issues in connection with plan

4    negotiations.  We have issues in connection with the Oncor

5    sale.  We have issues that might arise in the context of

6    other sales.  I don't know how the case is going to proceed.

7              I think that the retention of conflict counsel at

8    this sort of amorphous mission statement is appropriate

9    because I don't know where the case is going to go in the

10   months ahead.  I know it's going to go somewhere and I know

11   there's going to be a lot of action and there's going to be

12   a lot of consideration and possibly, in all likelihood,

13   litigation on at least some aspects of the case going

14   forward and I think that requiring a more specific

15   identification of the issues now and as they arise is both

16   inefficient, unfair and perhaps even prejudicial in tipping

17   the hand of the activities that counsel might be involved

18   with.

19             So, while I appreciate the invitation to limit the

20   scope of the retention, I decline that invitation and think

21   it's inappropriate in the context of this case to shoe horn

22   counsel into a more narrow identification of the issues

23   they're going to be dealing with.  I don't think this is

24   back loading it on the fee committee.  The reality is that

25   duplication is probably inevitable in this case.  Hopefully

1    it will be limited as much as possible.  There are a ton of

2    professionals retained.  This perhaps the most complex

3    capital structure I have ever run up against in my career,

4    certainly the largest case I've run up against in my career

5    and while size isn't necessarily in direct correlation with

6    how much it's going to cost and professionals, I think the

7    combination of the size of the case, but really the capital

8    structure of this company creates challenges that are

9    expensive to deal with hence the reality of how it's going

10   to be.

11          So, it's not an objection, it's a statement.  I

12   certainly appreciate it.  I decline the invitation that's in

13   connection with the statement.  I think that the resolution

14   that has been proposed by the retention professionals is

15   appropriate.  To the extent it's an objection it's overruled

16   and that's all I'll say in connection with that.

17          So, parsing through the applications it sounds

18   like there have been revisions probably to some orders if

19   not all the orders and they haven't been submitted.  It

20   sounds like the best way to do that would be to submit them

21   through certification in red lines, but if they're minor I

22   can look at them now.

23          MR. LEVIN:  They are minor.  I could hand it up.

24   But, you know, there's--actually the one I have has a

25   slight--a further comment from the U.S. Trustee which is not

1    reflected.  So, for Cravath we will submit it under

2    certification of counsel.  I'm not sure that there are any

3    problems with any of the others.  Do you want to turn to the

4    financial advisors at this point or do you want to--?

5            THE COURT:  Let's parse through the lawyers and

6    then we'll turn to the financial advisors.

7            MR. LEVIN:  I was up here so I--

8            THE COURT:  Okay.  No, I understand that.  So

9    Cravath I'll get under certification.  Again, in connection

10   with these that are not objected to and are subject to

11   amendments that arise from comments and negotiations I will

12   approve them subject to actually seeing the orders as

13   they're submitted with black lines that indicate the

14   changes.  So, Cravath will be approved subject to receiving

15   a certification.

16            It just might make some sense if I just go through

17   the agenda in order so we don't lose tough.  Next is

18   Proskauer.

19            MR. CLAUDER:  Your Honor, on Thursday, and it

20   should have made it in the agenda binder, we did file our

21   clean and red lines of the orders that were negotiated with

22   the U.S. Trustee.  I have those both for you.  They are

23   minor changes to both orders.

24            THE COURT:  Yeah.  Let me see that.  I see you did

25   file that and it did make it in the agenda, but I haven't

1    reviewed them.

2              MR. CLAUDER:  May I approach?

3              THE COURT:  Yes.  Your firm?  Let me just look at

4    the black line here.  I've signed the Proskauer order and I

5    signed the O'Kelly order.

6              MR. CLAUDER:  Thank you, your Honor.

7              THE COURT:  That leaves us with Munger.

8              MR. ROSEN:  Yes, your Honor.  Similar to

9    Proskauer, last Thursday we filed a new revised order along

10   with a black line reflecting mainly changes from some

11   comments we got from the U.S. Trustee and I have copies here

12   if the Court would like.

13             THE COURT:  Yeah.

14             MR. ROSEN:  But we'd ask that they be entered

15   today.

16             THE COURT:  All right, please approach.  All

17   right.  Okay, thank you.  Please disable the audio functions

18   on your smart phones.  What was the issue with Andrea

19   Weintraub?

20             MR. ROSEN:  Miss Weintraub was an associate at

21   Kirkland & Ellis for approximately two years and she did

22   some limited work for the debtors and in an abundance of

23   caution we thought prior to having Miss Weintraub work on

24   the case we implemented a screen and disclosed the limited

25   work that she did while at K&E and we wanted to see if there

1    was going to be any concerns with her working on behalf of

2    the TCH debtors at Munger Tolles.  Not having received any

3    we'd like to have her work on the case and remove the

4    screen.  I just wanted to be very transparent about that.

5              THE COURT:  Okay.  That's fine.  All right, I

6    signed the Munger order.

7              MR. ROSEN:  Thank you, your Honor.

8              THE COURT:  You're welcome.  We'll skip Greenhill

9    for now.  I've already signed 18, 19, 20, 21, 22.  That

10   leaves Mr. Demmy for Stephens & Lee and I didn't see a

11   revised order.

12             MR. DEMMY:  There was not.  Your Honor, John Demmy

13   for Stevens & Lee.  There was not a revised order filed.  I

14   have a clean and revised.  I think the changes are very

15   minor.  I could hand that up to your Honor to take a look at

16   right now.

17             THE COURT:  Thank you.

18             MR. DEMMY:  Your Honor, except for the minor

19   change on the first page the only other change is on page

20   four of the comparison I believe.

21             THE COURT:   Any objection?  All right, I'll sign

22   this order.

23             MR. DEMMY:  Thank you, your Honor.

24             THE COURT:  I think that leaves Greenhill and

25   Goldin so let's deal with that.

1          MR. LEVIN:  Goldin may be a bit simpler, your

2     Honor.  Richard Levin for Cravath--for Goldin as conflicts

3     matter financial advisor to EFIH.  Your Honor, we submitted

4     a revised proposed order yesterday.

5          THE COURT:  I did see that.

6          MR. LEVIN:  It's on the agenda.  I think it is

7     agreeable to the U.S. Trustee's Office.  It was as a result

8     of negotiations with that office.  We'd asked that it be

9     signed.

10          THE COURT:  All right.  I did review that black

11     line before the hearing so I have no questions so I'll sign

12     the clean order.

13          MR. LEVIN:  Thank you.

14          THE COURT:  Do you have a copy handy or I can dig

15     it out?

16          MR. LEVIN:  No, I'll bring it up, your Honor.

17          THE COURT:  Okay.

18          MR. ROSEN:  Your Honor, Todd Rosen.

19          THE COURT:  Yes, you may approach.  Yeah, just the

20     one is fine.  Oh, this is--this says revised proposed order

21     on it.  It should just say order, but if there are no

22     changes I'll just strike that part of it.  No further

23     changes.

24          MR. LEVIN:  No further change.

25          THE COURT:  I signed that order, thank you.  And I

1    understand Greenhill is resolved, right?

2              MR. ROSEN:  It is resolved, your Honor.  A revised

3    form of order was filed with the black line yesterday.  The

4    resolution is the TCEH debtors are not seeking today to go

5    forward for approval of the transaction fee.  It's subject

6    to some further negotiation and giving parties in interest

7    10 days' notice prior to moving forward for approval.

8              THE COURT:  Okay.  I did see that.  I did review

9    that certification.  Do you have a clean copy with you.

10             MR. ROSEN:  I do, your Honor.

11             THE COURT:  I can--yeah, thanks.  It's just easier

12   than digging it out of the three binders that I have--four

13   binders that I have in front of me.  Thank you.  Mr.

14   Schepacarter.

15             MR. SCHEPACARTER:  Thank you, your Honor.  Good

16   morning.  Rich Schepacarter for the United States Trustee.

17   I just wanted to indicate that we reviewed the proposed form

18   of order as revised.  I just wanted to indicate on paragraph

19   seven it talks about giving parties in interest 10 days'

20   notice.  I just want to make it clear that the U.S. Trustee

21   would be included in that 10 day notice period with respect

22   to the transaction fee.

23             THE COURT:  Any problem with that?

24             MR. ROSEN:  No problems, your Honor.

25             MR. SCHEPACARTER:  That's all I had on that, your

1    Honor.

2              THE COURT:  Thank you.  Give me a minute here.

3    Just give me a few moments so I can get my paper--my paper

4    keeping correct.  Yes sir, sorry.

5              MR. GOREN:  Thank you, your Honor.  Todd Goren,

6    Morrison & Forster on behalf of the TCEH committee.  We did

7    file an objection to Greenhill's retention on Friday.  Our

8    primary concern is with the transaction fee and I think you

9    really articulated that concern in talking about the need

10   for conflicts counsel to provide additional disclosures.

11   The application originally sought approval of a $9.5 million

12   transaction fee and, as you noted, there's a lot of

13   uncertainty as to how this case is going to proceed.  There

14   remains uncertainty about what exactly the conflicts

15   professionals are going to be handling, how that

16   responsibility is going to be allocated among them and the

17   existing professionals and given that uncertainly along with

18   the uncertainty of what the case is ultimately going to look

19   like, are we going to have a plan that just turns everything

20   over to the TCEH seniors as was contemplated in the RSA.  We

21   were very concerned with simply allowing a $9.5 million fee

22   to be approved at the outset now, an additional $9.5 million

23   fee.

24             So, over the weekend we negotiated with Greenhill

25   to allow the retention application to be approved today, but

1    reserving all aspects of the transaction fee for a later

2    date and we'll continue to work with Greenhill and see if we

3    can come up with a consensual resolution, and the debtors to

4    see if we can come up with a consensual resolution and if

5    not it will be set for hearing on two weeks' notice, but

6    we'll continue to work out--see if we can work out a

7    resolution.

8              THE COURT:  Okay, thank you.  Okay, I've signed

9    all the orders I have.  I think the only open one is

10   Cravath.  I'll wait that under certification.  I will review

11   the certification of counsel in connection with the bid

12   procedures, but I will--even if I don't have any questions

13   I'll await further action until I hear further in connection

14   with the open issue with Mr. Horowitz.  If I have any

15   questions or comments obviously I'll contact counsel and

16   we'll figure out how to deal with those.  Anything else for

17   today?

18             MR. GOREN:  Not today.  Thank you, your Honor.

19             THE COURT:  Ms. Schwartz?

20             MS. SCHWARTZ:  Yes, I just want to say thank you

21   again, your Honor, for considering our statement today.

22             THE COURT:  Of course.  All right, thank you.

23   We're adjourned.

24

25                         * * * * *

Page 60

1                    C E R T I F I C A T I O N

2

3    I certify that the foregoing transcript is a true and

4    accurate record of the proceedings.

5    Sonya

6    Ledanski Hyde
Digitally signed by Sonya Ledanski Hyde
DN: cn=Sonya Ledanski Hyde, o, ou,
email=digital1@veritext.com, c=US
Date: 2015.01.15 14:32:08 -05'00'
_____

7    Sonya Ledanski Hyde

8

9

10

11

12

13

14

15

16

17

18    Veritext

19    330 Old Country Road

20    Suite 300

21    Mineola, NY 11501

22

23

24

25    Date:  January 14, 2015