# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) Case No. 14-10979 (CSS) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |
| | ) Hearing Date: February 10, 2015, at 9:30 a.m. |
| | ) Objection Deadline: February 2, 2015, at 4:00 p.m. |

## DEBTOR ENERGY FUTURE HOLDINGS CORP.'S APPLICATION FOR ENTRY OF AN ORDER AUTHORIZING THE RETENTION AND EMPLOYMENT OF SOLIC CAPITAL ADVISORS, LLC AS FINANCIAL ADVISOR FOR DEBTOR AND DEBTOR IN POSSESSION ENERGY FUTURE HOLDINGS CORP. EFFECTIVE *NUNC PRO TUNC* TO DECEMBER 18, 2014

Debtor and debtor in possession Energy Future Holdings Corp. ("EFH Corp.") files this application (this "Application") for the entry of an order (the "Order"), substantially in the form attached hereto as **Exhibit A**, authorizing EFH Corp. to retain and employ SOLIC Capital Advisors, LLC ("SOLIC") as financial advisor effective *nunc pro tunc* to December 18, 2014 to render professional services to EFH Corp.'s disinterested directors in connection with "Conflict Matters" as defined in and pursuant to the authority delegated to the disinterested directors pursuant to resolutions of the EFH Corp. Board of Directors attached hereto as **Exhibit B** (the "Resolutions"), including the determination by EFH Corp.'s disinterested directors regarding whether any matter constitutes a Conflict Matter. In support of this Application, EFH Corp. submits the declaration of Neil F. Luria, a Senior Managing Director and President of SOLIC (the

---

[1] The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, for which joint administration has been granted, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

"Luria Declaration"), which is attached hereto as **Exhibit C**. In further support of this Application, EFH Corp. respectfully states as follows:

### Jurisdiction

1. The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2) and EFH Corp. consents, pursuant to rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Bankruptcy Rules"), to the entry of a final order by the Court in connection with this Application to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The bases for the relief requested herein are sections 327(a) and 328(a) of title 11 of the United States Code (the "Bankruptcy Code"), rules 2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Local Bankruptcy Rules 2014-1 and 2016-2.

### Background

4. On April 29, 2014 (the "Petition Date"), each of EFH Corp. and certain of its affiliates (collectively, the "Debtors") filed a voluntary petition with the Court under chapter 11 of the Bankruptcy Code. The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. The Court

has entered an order for joint administration of these chapter 11 cases. The Court has not appointed a trustee. The Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") formed (a) an official committee of unsecured creditors of Debtors Energy Future Competitive Holdings Company LLC ("EFCH"), EFCH's direct subsidiary, Texas Competitive Electric Holdings Company LLC ("TCEH" and, collectively with EFCH and TCEH's direct and indirect subsidiaries, the "TCEH Debtors") and EFH Corporate Services Company (collectively, the "TCEH Creditors' Committee") in these chapter 11 cases on May 13, 2014 [D.I. 420] and (b) an official committee of unsecured creditors of Debtors EFH Corp., Energy Future Intermediate Holding Company, LLC ("EFIH"), EFIH Finance, Inc. and EECI, Inc. (collectively, the "EFH Creditors' Committee" and, together with the TCEH Creditors' Committee, the "Committees") in these chapter 11 cases on October 27, 2014 [D.I. 2570]. Further information regarding the Debtors' business operations and capital structure is set forth in the declaration of Paul Keglevic in support of the Debtors' first day motions [D.I. 98].

5. On November 3, 2014, this Court issued its ruling on the *Motion of Energy Future Holdings Corp.,* et al., *for Entry of an Order (A) Approving Bidding Procedures, (B) Scheduling an Auction and Related Deadlines and Hearings and (C) Approving the Form and Manner of Notice Thereof* [D.I. 2087], finding, among other things, "[R]egardless of the merits of the debtors' preferred tax structure upon which I offer no opinion one way or the other, there can be no question that it raises actual internal conflicts among the debtors' estates." [Hrg. Tr. Nov. 3, 2014, at 13-14; D.I. 2699].

6. On November 7, 2014, the EFH Corp. Board of Directors adopted resolutions (the "November 7 Resolutions") determining that Donald L. Evans and Billie I. Williamson are disinterested directors of EFH Corp. and delegating to them authority to engage independent legal

3

counsel and other advisors as they deem necessary to represent and advise EFH Corp. on Conflict Matters.

7. Based on the foregoing, among other things, EFH Corp.'s disinterested directors determined it necessary and prudent to retain independent counsel and a financial advisor with respect to Conflict Matters. On November 19, 2014, EFH Corp.'s disinterested directors chose Proskauer[2] to render legal services to EFH Corp.'s disinterested directors, in connection with Conflict Matters as defined in and pursuant to the authority delegated to the disinterested directors pursuant to the Resolutions, including the determination by EFH Corp.'s disinterested directors regarding whether any matter constitutes a Conflict Matter.

8. After EFH Corp., EFIH and EFCH retained independent counsel to advise and represent them on Conflict Matters, counsel reviewed the November 7 Resolutions with a view to advising their clients whether the November 7 Resolutions provided sufficient clarity to the boards in addressing Conflict Matters. Each counsel proposed supplemental resolutions to clarify and enhance the November 7 Resolutions. EFH Corp. determined that, as with the November 7 Resolutions, it was important to the sound conduct of these cases and to the protection of the independence of the independent managers, directors and advisors, that each of the three companies adopt substantively identical resolutions governing the treatment of Conflict Matters. Therefore, independent counsel negotiated on behalf of their respective clients and reached agreement on the form of supplemental resolutions. Counsel presented the supplemental resolutions to the three companies' boards and engaged in further discussions with the boards and with management. Based on those discussions, a form of supplemental resolutions was presented to the three boards and the Resolutions were adopted on December 9, 2014.

---

[2] After its retention of Proskauer, EFH Corp. selected the firm of O'Kelly Ernst & Bielli, LLC as co-counsel to EFH Corp.

9. Thereafter, EFH Corp.'s disinterested directors interviewed financial advisor candidates and, on December 18, 2014, chose SOLIC to render professional services to them in connection with Conflict Matters.

10. EFH Corp. requests approval of SOLIC's employment *nunc pro tunc* to December 18, 2014. SOLIC commenced work for EFH Corp. immediately upon its employment on December 18, 2014 because of the urgent matters pending in this case, and, since that date, has been actively engaged in providing services to EFH Corp.

**Relief Requested**

11. By this Application, EFH Corp. seeks the entry of an Order authorizing the retention and employment of SOLIC as financial advisor to EFH Corp., effective as of December 18, 2014, to render professional services to EFH Corp.'s disinterested directors, in connection with Conflict Matters as defined in and pursuant to the authority delegated to the disinterested directors pursuant to the Resolutions, including the determination by EFH Corp.'s disinterested directors regarding whether any matter constitutes a Conflict Matter, in accordance with the terms and conditions set forth in that certain engagement letter between EFH Corp. and SOLIC effective as of December 18, 2014 (the "Engagement Letter"), a copy of which is attached hereto as **Exhibit 1** to **Exhibit A** and incorporated herein by reference.

**SOLIC's Qualifications**

12. SOLIC is a leading financial advisory and investment banking firm providing merger and acquisition, operational and financial restructuring, capital placement and valuation advisory services to companies, lenders, institutional investors, the legal community and other creditor constituencies.

13. SOLIC's leadership team has worked together for over fifteen years, successfully consummating over 475 mandates, involving in excess of $90 billion in capitalization. SOLIC's experienced team of financial advisory professionals has decades of operating and financial advisory experience in a number of specialized industries including energy, business/professional services, consumer/retail, financial services, healthcare, industrial/manufacturing, infrastructure, and real estate/construction operating companies.

14. EFH Corp. seeks to retain SOLIC because of SOLIC's recognized expertise and extensive experience and knowledge in providing restructuring and financial advice in connection with distressed companies. As an example, SOLIC currently represents the Taylor Bean & Whitaker Plan Trust which was formed in connection with the confirmation of a Plan of Liquidation for Taylor Bean & Whitaker Mortgage Corp. ("TBW"), formerly the largest independent mortgage originator in the United States. Previously, SOLIC professionals served as the Chief Restructuring Officer and support staff for TBW during its chapter 11 case and were responsible for structuring and negotiating numerous settlement agreements involving in excess of $5 billion of claims, undertaking significant forensic investigations and pursuing hundreds of avoidance actions. In addition, SOLIC currently represents the Ocala Funding Litigation Trust, which was formed in connection with the confirmation of a Plan of Liquidation for Ocala Funding, LLC ("Ocala"). SOLIC professionals served as chief restructuring officer and support staff to Ocala during its chapter 11 case and negotiated with multiple stakeholder contingencies to develop a consensual plan to maximize value. Furthermore, SOLIC has recently concluded its representation of LifeCare St. Johns, Inc., a large scale continuing care retirement community in

Florida, through a confirmed chapter 11 plan in *In re LifeCare of St. Johns, Inc.*, Case No. 3:13-bk-4158-JAF.

15.     Additionally, SOLIC professionals have represented various stakeholders in a number of distressed situations over the last fifteen years, including debtors, lenders, unsecured creditors, equity holders in bankruptcy and in out-of-court matters.

16.     The resources, capabilities and experience of SOLIC in advising EFH Corp., at the direction of EFH Corp.'s disinterested directors, are crucial to the successful restructuring of EFH Corp. in light of the Conflict Matters the Court has identified already and others likely to be identified and the size and complexity of this chapter 11 case. On account of the Conflict Matters, the retention of an experienced financial advisor such as SOLIC fulfills a critical need that complements the services being provided by EFH Corp.'s other restructuring professionals who may be restricted from working on such matters.

17.     Since December 18, 2014, SOLIC has worked closely with EFH Corp.'s disinterested directors and counsel. As a result, SOLIC has become familiar with EFH Corp. and its business, including EFH Corp.'s financial affairs, debt structure, operations and related matters. Having worked with EFH Corp.'s disinterested directors and EFH Corp.'s other advisors, SOLIC has developed relevant experience and knowledge regarding EFH Corp. that will assist it in providing effective and efficient services in EFH Corp.'s chapter 11 case.

18.     For the foregoing reasons, EFH Corp. believes that SOLIC is well qualified to provide EFH Corp. with financial advisory services concerning Conflict Matters in a timely, efficient and cost-effective manner.

**Services to Be Provided**

19. Subject to further order of the Court, and consistent with the Engagement Letter, EFH Corp. requests the retention and employment of SOLIC to render financial advisory services to EFH Corp at the direction of its disinterested directors in connection with Conflict Matters as defined in and pursuant to the authority delegated to the disinterested directors pursuant to the Resolutions, including the determination by EFH Corp.'s disinterested directors regarding whether any matter constitutes a Conflict Matter.

20. The scope of SOLIC's retention is limited to the foregoing and will not duplicate the efforts of Evercore Group L.L.C. ("Evercore"), whose role in the Debtors' cases as investment banker and financial advisor to the Debtors will remain unchanged, or other professionals retained by the Debtors. Evercore, on the one hand, and SOLIC on the other, will work to minimize duplication of their work, with Evercore being chiefly responsible for providing investment banking and financial advisory services to the Debtors, and SOLIC rendering professional services to EFH Corp at the direction of its disinterested directors, in connection with Conflict Matters, consistent with its engagement.

21. The primary professionals anticipated to lead and work on this matter are Neil F. Luria and Raoul Nowitz. In addition, SOLIC anticipates that it will be necessary for other SOLIC professionals to provide services to the disinterested directors during the course of this case.

**Professional Compensation**

22. SOLIC is not owed any amounts with respect to prepetition fees and expenses in connection with its proposed engagement by EFH Corp. or otherwise in connection with EFH Corp.'s chapter 11 case.

23. In consideration for the services to be provided by SOLIC, and as fully described in the Engagement Letter, EFH Corp. has agreed, subject to the Court's approval, to pay SOLIC the proposed compensation set forth in the Engagement Letter, including (a) a $200,000 monthly fixed fee payment (pro-rated for any period less than a full month), which is typical for SOLIC's engagements both inside and outside of bankruptcy, until termination of SOLIC's engagement and (b) reimbursement of reasonable and documented out-of-pocket expenses (including all fees and expenses of counsel). Typically, SOLIC also receives compensation based on an incentive-fee structure. Given the nature of this representation, however, SOLIC has not incorporated this standard compensation structure into the Engagement Letter. Notwithstanding anything to the contrary in the Application or the Engagement Letter, SOLIC will not seek reimbursement of expenses for office supplies.

24. EFH Corp. believes that SOLIC's fee and expense structure is consistent with and typical of those arrangements generally entered into by financial advisors of similar stature to SOLIC and their clients for engagements of comparable complexity, scope and risk, both in and out of bankruptcy proceedings.

25. The fee and expense structure is also consistent with SOLIC's normal and customary billing practices for comparably-sized and complex cases and transactions, both in- and out-of-court, involving services comparable to those to be provided in connection with this chapter

9

11 case. SOLIC and EFH Corp. accordingly believe that SOLIC's fee and expense structure is both reasonable and market-based.

26. In addition, the fee and expense structure has been agreed upon by the parties on an arm's-length basis in anticipation that: (a) a substantial commitment of professional time and effort will be required of SOLIC and its professionals hereunder; (b) such commitment may foreclose other opportunities for SOLIC; and (c) the actual time and commitment required of SOLIC and its professionals to perform the services hereunder may vary substantially from week to week and month to month, creating "peak load" issues for SOLIC.

27. For these reasons, EFH Corp. believes that the Court should approve SOLIC's retention subject to the standard of review set forth in section 328(a) of the Bankruptcy Code and that SOLIC's compensation should not be subject to any additional standard of review under section 330 of the Bankruptcy Code, except as provided for in the Order.

28. No agreement or understanding exists between SOLIC and any other person, other than as permitted by section 504 of the Bankruptcy Code, to share compensation received for services rendered in connection with this chapter 11 case. SOLIC shall not share or agree to share compensation received for services rendered in connection with this chapter 11 case with any other person or other than as permitted by section 504 of the Bankruptcy Code.

29. SOLIC intends to apply for compensation for professional services rendered and reimbursement of expenses incurred in connection with EFH Corp.'s chapter 11 case, subject to the Court's approval and in compliance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules and any other applicable procedures and orders of the Court, including the *Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Professionals* [D.I. 2066] (the "Interim Compensation Order") and

any case-specific fee protocols approved by the Court pursuant to the *Stipulation and Order Appointing a Fee Committee* [D.I. 1896] (the "Fee Committee Order"). SOLIC has agreed to be bound by the terms of the Fee Committee Order. SOLIC also intends to make a reasonable effort to comply with the U.S. Trustee's requests for information and additional disclosures as set forth in the *Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases Effective as of November 1, 2013* (the "Revised UST Guidelines"), both in connection with the Application and the interim and final fee applications to be filed by SOLIC in this chapter 11 case.

### Record Keeping and Applications for Compensation

30. It is not the general practice of financial advisory and investment banking firms, including SOLIC, to keep detailed time records similar to those customarily kept by attorneys and required by Local Rule 2016-2(d). Because SOLIC does not ordinarily maintain contemporaneous time records in tenth-hour (.10) increments or provide or conform to a schedule of hourly rates for its professionals, pursuant to Local Rule 2016-2(h), SOLIC should be excused from compliance with such information requirements set forth in Local Rule 2016-2(d) and from compliance with the Interim Compensation Order and Fee Committee Order with respect to SOLIC's professional fees only. SOLIC should be required to maintain time records in half-hour (0.50) increments, not decimal hours, setting forth, in a summary format, a description of the services rendered by each professional and the amount of time spent on each date by each such individual in rendering services on behalf of EFH Corp.

31. SOLIC will also maintain detailed records of any actual and necessary costs and expenses incurred in connection with the services rendered. SOLIC's compensation and expenses

11

will be paid by EFH Corp. pursuant to the terms of the Engagement Letter, in accordance with Local Rule 2016-2(e) and any procedures established by the Court.

### Indemnification Provisions

32. The Engagement Letter contains standard indemnification language with respect to SOLIC's services. EFH Corp. and SOLIC believe that the indemnification provisions contained in the Engagement Letter are customary and reasonable. EFH Corp. requests that the Court approve the indemnification provisions as set forth in the Engagement Letter.

### SOLIC's Disinterestedness

33. To the best of EFH Corp.'s knowledge, and as disclosed herein and in the Luria Declaration: (a) SOLIC is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code, as required by section 327(a) of the Bankruptcy Code, and does not hold or represent any interest adverse to EFH Corp.'s estate; and (b) SOLIC has no connection to EFH Corp., its creditors or related parties, except as may be disclosed in the Luria Declaration.

34. SOLIC will conduct a conflicts search on parties added to the list of Potential Parties in Interest (as defined in the Luria Declaration) from time to time during the pendency of EFH Corp.'s chapter 11 case pursuant to the procedures described in the Luria Declaration. If any new relevant facts or relationships are discovered or arise in such review, SOLIC will file promptly a supplemental declaration where appropriate.

### Supporting Authority

35. EFH Corp. seeks retention of SOLIC as its financial advisor pursuant to section 327(a) of the Bankruptcy Code, which provides that, subject to court approval, a debtor:

> [M]ay employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested

persons, to represent or assist the [debtor] in carrying out the [debtor]'s duties under this title.

11 U.S.C. § 327(a).

36. EFH Corp. also seeks approval of the Engagement Letter (including, without limitation, the fee and expense structure and the indemnification provisions included therein) pursuant to section 328(a) of the Bankruptcy Code, which provides, in relevant part, that a debtor "with the court's approval, may employ or authorize the employment of a professional person under section 327. . . on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis…" 11 U.S.C. § 328(a). Section 328 of the Bankruptcy Code permits the compensation of professionals, including financial advisors, on more flexible terms that reflect the nature of their services and market conditions. Owing to this inherent uncertainty, courts have approved similar arrangements that contain reasonable terms and conditions under section 328 of the Bankruptcy Code. *See, e.g., In re U.S. Airways, Inc.*, No. 02-83984 (SJM) (Bankr. E.D. Va. Aug. 12, 2002); *see also In re J.L. French Auto. Castings, Inc.*, No. 06-10119 (MFW) (Bankr. D. Del. March 24, 2006).

37. The terms of the Engagement Letter appropriately reflect (a) the nature and scope of services to be provided by SOLIC, (b) SOLIC's substantial experience with respect to financial advisory services and (c) the fee structure typically utilized by SOLIC and other leading financial advisors that do not bill their clients on an hourly basis.

38. Bankruptcy Rule 2014(a) requires that an application for retention include:

> [S]pecific facts showing the necessity for the employment, the name of the [firm] to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the [firm's] connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee.

13

Fed. R. Bankr. P. 2014(a).

39. Based on the foregoing, EFH Corp. submits that for all the reasons stated above and in the Luria Declaration, the retention of SOLIC as financial advisor is warranted and satisfies Bankruptcy Rule 2014(a). Further, as stated in the Luria Declaration, SOLIC is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code, as required by section 327(a) of the Bankruptcy Code, and does not hold or represent an interest adverse to EFH Corp.'s estate and has no connection to EFH Corp., its creditors or related parties, except as may be disclosed in the Luria Declaration.

40. EFH Corp. submits that the terms and conditions of SOLIC's employment, as disclosed in this Application, are reasonable.

## Notice

41. EFH Corp. shall provide notice of this Application on the date hereof via U.S. first class mail to: (a) the U.S. Trustee; (b) counsel to the TCEH Creditors' Committee; (c) the EFH Creditors' Committee and proposed counsel thereto; (d) Wilmington Trust, N.A., in its capacity as administrative agent under the TCEH first lien credit agreement and collateral agent under the TCEH intercreditor agreements and counsel thereto; (e) Bank of New York Mellon Trust Company, N.A., in its capacity as indenture trustee under: (i) the TCEH unsecured pollution control revenue bonds; and (ii) the EFCH 2037 Notes due 2037, and counsel thereto; (f) American Stock Transfer & Trust Company, LLC, in its capacity as indenture trustee under: (i) the 9.75% EFH senior unsecured notes due 2019; (ii) the 10.0% EFH senior unsecured notes due 2020; (iii) the 10.875% EFH LBO senior unsecured notes due 2017; (iv) the 11.25%/12.0% EFH LBO toggle notes due 2017; (v) the 5.55% EFH legacy notes (series P) due 2014; (vi) the 6.50% EFH legacy notes (series Q) due 2024; and (vii) the 6.55% EFH legacy notes (series R) due 2034, and counsel

thereto; (g) Computershare Trust Company, N.A. and Computershare Trust Company of Canada, in their capacities as indenture trustee under: (i) the 11.0% EFIH senior secured second lien notes due 2021; and (ii) the 11.75% EFIH senior secured second lien notes due 2022, and counsel thereto; (h) UMB Bank, N.A. in its capacity as indenture trustee under: (i) the 9.75% EFIH senior unsecured notes due 2019; and (ii) the 11.25%/12.25% EFIH senior toggle notes due 2018, and counsel thereto; (i) Delaware Trust Company of Delaware in its capacity as indenture trustee under: (i) the 6.875% EFIH senior secured notes due 2017; (ii) the 10.0% EFIH senior secured notes due 2020; and (iii), the 11.50% TCEH senior secured notes due 2020, and counsel thereto; (j) Law Debenture Trust Company of New York in its capacity as indenture trustee under: (i) the 10.25% TCEH senior unsecured notes due 2015; and (ii) the 10.50%/11.25% TCEH senior toggle notes due 2016, and counsel thereto; (k) Wilmington Savings Fund Society, FSB in its capacity as indenture trustee under the 15.0% TCEH senior secured second lien notes due 2021, and counsel thereto; (l) counsel to certain holders of claims against the Debtors regarding each of the foregoing described in clauses (c) through (j); (m) the agent for the TCEH debtor-in-possession financing facility and counsel thereto; (n) the agent for the EFIH debtor-in-possession financing facility and counsel thereto; (o) counsel to certain holders of equity in Texas Energy Future Holdings Limited Partnership (p) counsel to the Ad Hoc Committee of TCEH Unsecured Noteholders; (q) counsel to the Ad Hoc Committee of TCEH Second Lien Noteholders; (r) Oncor Electric Delivery Holdings Company LLC and counsel thereto; (s) Oncor Electric Delivery Company LLC and counsel thereto; (t) the Securities and Exchange Commission; (u) the Internal Revenue Service; (v) the Office of the United States Attorney for the District of Delaware; (w) the Office of the Texas Attorney General on behalf of the Public Utility Commission of Texas; (x) counsel to the Electric Reliability Council of Texas; (y) those parties that have requested notice pursuant to

Bankruptcy Rule 2002; and (z) the Taxing Authorities. EFH Corp. submits that, in light of the nature of the relief requested, no other or further notice need be given.

## No Prior Request

42. No prior request for the relief sought in this Application has been made to this or any other court.

WHEREFORE, EFH Corp. respectfully requests that the Court enter the Order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested herein and granting such other relief as is just and proper.

Dated: January 16, 2015
   Wilmington, Delaware

*/s/ Donald L. Evans*
Donald L. Evans
Executive Chairman
Board of Directors
Energy Future Holdings Corp.