IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) Case No. 14-10979 (CSS) |
| Debtors. | ) (Jointly Administered) |
| | ) **Re: D.I. 3338** |

**DECLARATION OF PAUL KEGLEVIC, EXECUTIVE VICE PRESIDENT, CHIEF FINANCIAL OFFICER, AND CO-CHIEF RESTRUCTURING OFFICER OF ENERGY FUTURE HOLDINGS CORP., *ET AL.*, IN SUPPORT OF THE SECOND MOTION OF ENERGY FUTURE HOLDINGS CORP., *ET AL.*, FOR ENTRY OF AN ORDER EXTENDING THE DEBTORS' EXCLUSIVE PERIODS TO FILE A CHAPTER 11 PLAN AND SOLICIT ACCEPTANCES THEREOF PURSUANT TO SECTION 1121 OF THE BANKRUPTCY CODE**

Pursuant to 28 U.S.C. § 1746, I, Paul Keglevic, declare as follows:

1. I am the Executive Vice President, Chief Financial Officer, and Co-Chief Restructuring Officer of Energy Future Holdings Corp. ("EFH Corp."), a corporation organized under the laws of the state of Texas; EFH Corp.'s direct subsidiary Energy Future Competitive Holdings Company LLC ("EFCH"), a limited liability company organized under the laws of the state of Delaware; EFCH's direct subsidiary, Texas Competitive Electric Holdings Company LLC ("TCEH LLC" and, together with EFCH and TCEH LLC's direct and indirect subsidiaries, "TCEH," and the entities composing TCEH that are debtors in these chapter 11 cases, the "TCEH Debtors"), a limited liability company organized under the laws of the state of Delaware; EFH Corp.'s direct subsidiary, Energy Future Intermediate Holding Company LLC ("EFIH"), a

---

[1] The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, for which joint administration has been granted, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

limited liability company organized under the laws of the state of Delaware; and various other direct and indirect subsidiaries of EFH Corp. that are debtors in these chapter 11 cases, are collectively referred to as the "Debtors" in this declaration.

1. I have worked for the Debtors since 2008. I am generally familiar with the Debtors' businesses, day-to-day operations, financial matters, results of operations, cash flows, and underlying books and records. I am over the age of 18 and duly authorized to execute this Declaration (the "Declaration") on behalf of the Debtors in support of, the *Second Motion of Energy Future Holdings Corp., et al., for Entry of an Order Extending the Debtors' Exclusive Periods to File a Chapter 11 Plan and Solicit Acceptances Thereof Pursuant to Section 1121 of the Bankruptcy Code* [D.I. 3338] (the "Second Exclusivity Motion").[2]

2. The facts in this Declaration are based on my personal knowledge of the Debtors' businesses, operations, and related financial information gathered from my review of their books and records, relevant documents, information supplied to me by the members of the Debtors' management team and advisors, and my opinion based upon my experience and knowledge of the Debtors' operations and financial condition. If called to testify, I would testify to the facts set forth herein.

**I.   Overview.**

3. I believe that maintaining the Exclusivity Periods is critical to the Debtors' ability to advance plan discussions beyond the early stages. If granted an extension of the Exclusivity Periods, I anticipate that the Debtors' priority will be to facilitate a continued dialogue with their various stakeholders in order to accomplish the Debtors' ultimate goal—achieving as much

---

[2] Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Second Exclusivity Motion.

consensus as possible on a plan of reorganization that maximizes value and allows the Debtors to expeditiously exit chapter 11.  I believe such a discussion will be more difficult in an environment where multiple plans can be proposed and parties become less willing to engage in a global restructuring discussion.

4. In addition, based on the progress of such restructuring discussions to date, I believe that an extension of the Exclusivity Periods will motivate the parties to work with the Debtors to develop plan alternatives, as well as provide the Debtors with additional time to thoughtfully evaluate such alternatives with an eye towards maximizing the value of each of the respective Debtor's estates.  I also believe an extension of the Exclusivity Periods will allow the Debtors to make further progress on the sale process regarding the economic interest in Oncor Electric Delivery Company LLC (as referenced in the Second Exclusivity Motion, the EFH-EFIH Transaction) and, in conjunction with potential resolution on the makewhole and postpetition interest related to the EFIH debt workstreams described in the Second Exclusivity Motion, potentially provide significantly greater clarity regarding the value of the Debtors' estates.  I believe the relief request in the Second Exclusivity Motion is necessary for the Debtors to focus on achieving as much support as possible for a value-maximizing reorganization.

II. **The Debtors' Post-Petition Progress and the Need for the Relief Requested in the Motion.**

　　A. **Plan Negotiations.**

5. Since the Bankruptcy Court entered the First Extension Order, the Debtors have been focused on generating a discussion with all creditor constituencies.  By fostering a dialogue between the Debtors and their creditors and, in some instances, between the creditors themselves, I believe these discussions have spurred certain creditor constituencies to begin developing plan proposals. In addition, with the addition of the conflicts-matters advisors (as discussed below), I

3

believe these discussions have served as a platform for discussing how to address intercompany claims.

6. I also believe that progress on such plan discussions is likely to be extremely difficult in an environment where the Debtors did not have exclusivity—in the absence of exclusivity, developing a global plan aimed at maximizing value is likely to be extremely challenging.

7. In addition, I believe the Debtors would not have been positioned to engage in rigorous plan discussions without their progress on a number of other restructuring initiatives (as described below and including, among others, the educational efforts with respect to the EFH Creditors' Committee and the new conflicts advisors, the Legacy Discovery efforts and the claims resolution process) that collectively:

- provide clarity regarding the form of a global restructuring;

- set the stage for ongoing robust discussions and progress on critical plan constructs (specifically, plan provisions related to the settlement of intercompany claims and plan distributions); and

- maximize the value of the estates by obtaining Court-approval of a number of operational orders designed to safeguard the Debtors' operations.

**B.    Entry of Bidding Procedures Order Governing EFH-EFIH Transaction.**

8. Following the Bidding Procedures Ruling, the Debtors worked with the professionals for the Official Committees as well as the disinterested directors and their respective conflicts-matters advisors on revised procedures and a form of order for the Bidding Procedures Motion. In connection with the Bidding Procedures Ruling, the Debtors filed relevant materials with the Bankruptcy Court on January 13, 2015. The Court entered the Bidding Procedures Order on January 14, 2015. I understand that following entry of the Bidding Procedures Order, the Debtors circulated a process letter to potential bidders to provide guidance

on how to submit a bid on the EFH-EFIH Transaction for review by the Debtors. The Debtors have initiated the steps necessary to move forward with the process set forth in the Bidding Procedures Order. Were the Debtors to lose exclusivity before the sale process is complete, the possibility of competing plans of reorganization could compromise the integrity of the very bidding process that the Court has recently approved.

### C. Educating EFH Creditors' Committee and Conflicts-Matters Advisors to Foster Plan Discussions.

9. To assist the conflicts-matters advisors, and, ultimately, the disinterested directors, in fully engaging in restructuring discussions on actual conflict matters, the Debtors expended significant efforts to provide the conflicts-matters advisors with diligence regarding potential conflicts matters and actual conflicts matters that may need to be addressed in a plan of reorganization. I expect that the Debtors will need the time provided by an extension of the Exclusivity Periods to continue discussions and diligence sessions with the conflicts-matters advisors.

10. The Debtors also have been working to educate the EFH Creditors' Committee and its professionals on the Debtors' operations, financials, and restructuring goals. There have been multiple telephonic and in-person diligence sessions (including a meeting with the EFH Creditors' Committee, their professionals, and the Debtors' management team on January 14, 2015), and, I understand, the production of thousands of documents, and access to multiple datarooms. I also understand that these professionals participate in the standing call with the Debtors, their advisors, the TCEH Creditors' Committee, and the TCEH Junior Creditors and negotiated a case matters protocol with the Debtors.

### D. Substantial Completion of Legacy Discovery.

11. The Debtors have expended significant time and resources to produce discovery materials to other Legacy Discovery participants and review the productions made by such participants. On January 12, 2015, I understand that the Debtors notified all legacy discovery participants of the Debtors' substantial compliance with their discovery obligations and compliance with all deadlines set forth in the Legacy Discovery Protocol. I further understand that the Debtors believe they are on track to complete the production of documents in response to the Initial Consolidated Legacy Discovery Requests by the February 9, 2015 deadline contemplated by the Legacy Discovery Protocol, as amended, and subject to continuing privilege review and quality control review that may continue after that date.

12. In addition, I understand the TCEH Junior Creditors and the TCEH Creditors' Committee must disclose the claims for which they will seek standing by March 31, 2015. I also understand that the EFH Creditors' Committee anticipates disclosing to the Debtors the claims for which it intends to seek standing. I believe that maintaining exclusivity while the TCEH Junior Creditors and the EFH Creditors' Committee potentially file motions to seek standing to prosecute claims is important to the Debtors' global restructuring efforts, given the role that such claims likely will play in any plan structure.

### E. Clarity on Potential Plan Distributions.

13. The Debtors have also been working to address multiple workstreams regarding EFIH debt claims, other filed proofs of claim, and the assumption or rejection of various contracts and leases. I believe these workstreams will provide greater clarity on both the pool of potential claimants who may seek to recover under a plan and the size of the pool available to satisfy such claims. Indeed, I believe the Debtors maintaining exclusivity while these issues are

resolved to completion or near completion will ultimately provide clarity on potential plan distributions, thereby advancing plan discussions in the near-term.

### F. Continued Focus on Operational Excellence.

14. As described in the Second Exclusivity Motion and as reflected in the record before the Court to date, the Debtors continue to work minimize the effect of bankruptcy on their operations. I believe the Debtors maintaining exclusivity is important to permitting the Debtors to continue to focus on their business operations in chapter 11.

### III. Conclusion.

15. In short, I believe that the Debtors made significant progress during the four months following entry of the First Extension Order by engaging in significant plan negotiations with all major creditor constituencies. And, importantly, I believe the Debtors also achieved a significant milestone in these chapter 11 cases upon the Court's entry of the Bidding Procedures Order.

16. That being said, much work remains to be done. It is my belief that given the complexity of the Debtors' cases, and the progress that still needs to be made, the Debtors will need more time to achieve their goal of consummating a global, value-maximizing restructuring. I further believe that achieving such a goal requires the focus and willing participation of creditor constituencies who may be disincentivized to participate in a global discussion if the option of filing a competing plan is available. Thus, I believe that to continue the Debtors' efforts to efficiently consummate a restructuring, the Debtors request in the Motion is appropriate.

[*Remainder of page intentionally left blank.*]

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Dated: January 20, 2015

                                            */s/ Paul Keglevic*
                                            Paul Keglevic
                                            Executive Vice President, Chief Financial Officer, and Co-Chief Restructuring Officer of Energy Corp., EFIH, and TCEH LLC