IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re:<br><br>ENERGY FUTURE HOLDINGS CORP., *et al.*,<br><br>Debtors. | Chapter 11<br><br>Case No. 14-10979 (CSS)<br><br>(Jointly Administered)<br><br>**Ref No. 3338** |

**LIMITED OBJECTION OF ALCOA INC. TO SECOND MOTION OF ENERGY FUTURES HOLDINGS CORP., *ET AL.*, FOR ENTRY OF AN ORDER EXTENDING LUMINANT'S EXCLUSIVE PERIODS TO FILE A CHAPTER 11 PLAN AND SOLICIT ACCEPTANCES THEREOF PURSUANT TO BANKRUTCY CODE § 1121**

Alcoa Inc. ("Alcoa"), by and through its undersigned counsel, hereby files this limited objection (the "Objection") to the motion (the "Motion") [ECF No. 3338] of the above-captioned debtors and debtors-in-possession (collectively, the "Debtors") for entry of an order (the "Proposed Order") (i) extending the period during which the Debtors have the exclusive right to file a Chapter 11 plan through and including October 29, 2015 (the "Filing Exclusivity Period"), and (ii) extending the Filing Exclusivity Period for an additional sixty days to solicit acceptances of such Chapter 11 plan through and including December 29, 2015 (the "Soliciting Exclusivity Period)," and, together with the Filing Exclusivity Period, the "Exclusivity Periods"), insofar as the Motion relates to Debtors Luminant Generation, LLC ("Luminant Generation"), Luminant Mining, LLC ("Luminant Mining"), and Sandow Power Company, LLC ("Sandow Power," and together with Luminant Mining and Luminant Generation, collectively, with their predecessors, "Luminant").[1] In support of its Objection, Alcoa respectfully represents as follows:

---

[1] Capitalized terms not otherwise defined herein have the meanings ascribed to them in the Motion.

{1017.001-W0034244.}

**PRELIMINARY STATEMENT**

1.    Luminant has failed to articulate any basis for such a lengthy extension of exclusivity. In fact, other than the intercompany claims dispute, neither Luminant nor any of the other so-called "T-Side Debtors," are mentioned at all either in the Motion or in the accompanying declaration of Paul Keglevic in support of the Motion (the "Keglevic Declaration").[2] Alcoa has a significant and complex business relationship with Luminant for the mining of coal and the production of electricity at a facility located in Rockdale, Texas. The contracts concerning the facility are a substantial asset of Luminant. Yet, despite Alcoa's several attempts to discuss the future of Luminant's operations at the Rockdale facility, Alcoa has been rebuffed at every turn.

2.    While Luminant's cold-shoulder tactics may be attributable to the Debtors' need to focus solely on its proposed sale of the assets of the so-called "E-Side Debtors"[3]—specifically the sale of their economic interests in Oncor Electric Delivery Company, LLC ("Oncor")—as well as conflict-of-interest issues concerning that sale, such dispute does not excuse Luminant's fiduciary responsibilities to *its* estates and creditors. Furthermore, issues with the E-Side Debtors surrounding the Oncor sale cannot be a basis for *Luminant's* lengthy request to extend *its* Exclusive Periods.

3.    Accordingly, Alcoa submits that any extension of Luminant's Exclusive Periods should be limited to no more than 90 days with respect to Luminant's Filing Exclusivity Period and no more than an additional 60 days with respect to Luminant's Soliciting Exclusivity Period.

---

[2] The T-Side Debtors consist of Debtors Energy Competitive Holdings Company LLC, Texas Competitive Future Holdings Company LLC, and their direct and indirect subsidiaries, including Luminant.

[3] The E-Side Debtors consist of Debtors Energy Future Intermediate Holding Company, EFIH Finance, Inc., and certain of their subsidiaries.

Any extension of Luminant's Exclusivity Periods also should be subject to Luminant's commencing mandatory discussions with Alcoa on the future of the facility in Rockdale Texas and the contracts related to its operation.

## BACKGROUND

4. Alcoa has a significant and material business relationship with Luminant. In 1951, Alcoa began its decades-long relationship with the complex, interrelated agreements between Alcoa and Luminant to fuel, maintain, and operate a power plant located on an Alcoa smelting facility in Rockdale, Texas (the "Rockdale Facility"). Over the years, the parties entered into of dozens of agreements, amendments and supplements, regarding the operation of power generation units at the Rockdale Facility (the "Alcoa/Luminant Agreements"). Generally, pursuant to the Alcoa/Luminant Agreements, Luminant Mining was contracted by Alcoa to mine lignite coal, which Alcoa would then sell to Luminant Generation and Sandow Power. Luminant Generation and Sandow Power would then use the lignite coal it purchased from Alcoa to generate electricity at two units (known as "Unit 4" and "Unit 5"), which are part of the Rockdale Facility.

5. The parties originally entered into two contracts in 1951, under Luminant operated three of Alcoa's power plants until late 1980. In 1976, the parties entered into an agreement related to the operation of Unit 4 (the "Unit 4 Agreement"), pursuant to which Luminant agreed to build, own and operate the Unit 4 power plant, and Alcoa agreed to purchase from Luminant, on a cost-plus basis, a set amount of "firm" power (from any source) and supply Luminant with an amount of lignite coal sufficient to operate Unit 4.

6. In addition to the Unit 4 Agreement, there are myriad other agreements the parties have entered into over the years (not counting amendments and side letters). By way of example, some of the other Alcoa/Luminant Agreements consist of agreements related to, *inter*

*alia*, mining, lignite royalty payments, leases, power generation, asset purchase, and common facilities arrangements—just a sample of the kinds of agreements the parties have entered into over the years.

7.  Indeed, it took months of negotiation for Alcoa to reach an agreement with Luminant on the parties' setoff rights alone, which are the subject of a stipulation totaling over fifteen pages, which this Court approved on September 12, 2014 [ECF No. 2002]. Luminant also assumed various purported unexpired leases for non-residential property, under which Alcoa is the lessor, by order of this Court dated November 13, 2014 [ECF No 2759].

8.  Alcoa timely filed proofs of claim on account of this complex business relationship against each of the Luminant Entities, as well as their direct and indirect parents, on October 23, 2014.[4]

## OBJECTION

9.  Despite Alcoa's repeated requests, to date Luminant has refused to engage with Alcoa on the future of the Rockdale Facility. Alcoa has no understanding of whether Luminant intends to assume or reject the Alcoa/Luminant Agreements or request modifications of the same. Alcoa's timely proofs of claim highlight Luminant's various material defaults under the Alcoa/Luminant Agreements. These defaults will need to be cured prior to any assumption. Given the complexity of the interrelated Alcoa/Luminant Agreements, any discussions regarding their assumption, modification, and/or resolutions of claims related thereto will take several months, at minimum.

---

[4] Alcoa's proofs of claim against the Luminant Entities and their direct and indirect parents are listed on the Debtors' claims register as Claim Nos. 6185, 6186, 6187, 6188, 6189, 6190, and 6191.

10. Luminant bears the burden to demonstrate that cause exists to extend exclusivity.[5] It has not. Indeed, nothing in the Keglevic Declaration supports or in any way addresses Luminant's—let alone any of the T-Side Debtors'—restructuring efforts and why an extension of their Exclusive Periods is warranted.[6] It is axiomatic that "a motion [to extend exclusivity] should be granted neither routinely nor cavalierly," and this Court should not countenance Luminant's request to extend *its* Exclusive Periods without any evidence in the record that cause exists for this Court to exercise its discretion to grant such a proposed extension.[7]

11. If the Debtors are unwilling or unable to address Luminant's reorganization prospects and the future of the Rockdale Facility and the Alcoa/Luminant Contracts, perhaps this is an area for the T-Side Debtors' disinterested manager to address.

---

[5] *In re Curry Corp.*, 148 B.R. 754, 755 (Bankr. S.D.N.Y. 1992).

[6] *See In re R.G. Pharmacy, Inc.*, 374 B.R. 484, 487 (Bankr. D. Conn. 2007) (determination of whether to extend exclusive periods is fact-specific on a case-by-case basis); *United Sav. Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd. (In re Timbers of Inwood Forest Assocs., Ltd.)*, 808 F.2d 363, 372 (5th Cir. 1987) (courts should interpret § 1121 "to limit the delay that makes creditors the hostages of Chapter 11 debtors."), *aff'd*, 484 U.S. 365 (1988).

[7] *In re All Seasons Indus., Inc.*, 121 B.R. 1002, 1004 (Bankr. N.D. Ind. 1990) (quotation and citation omitted).

WHEREFORE, Alcoa respectfully requests that the Court (i) deny the Motion in part, (ii) modify the Proposed Order as suggested herein, and (iii) grant Alcoa such other and further relief as this Court may deem just and proper under the circumstances.

Dated: February 3, 2015
     Wilmington, Delaware

               **LANDIS RATH & COBB LLP**

               Adam G. Landis (No. 3407)
               Matthew B. McGuire (No. 4366)
               919 Market Street, Suite 1800
               Wilmington, Delaware 19899
               Telephone: (302) 467-4400
               Facsimile: (302) 467-4450

               -and-

               **MCKOOL SMITH, P.C.**
               Peter S. Goodman (*Admitted Pro Hac Vice*)
               Michael R. Carney (*Admitted Pro Hac Vice*)
               One Bryant Park, 47th Floor
               New York, New York 10036
               Telephone: (212) 402-9400
               Facsimile: (212) 402-9444

               *Counsel for Alcoa Inc.*