**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | Case No. 14-10979 (CSS) |
| Debtors. | (Jointly Administered) |
| | Re: D.I. 3338 |

**RESPONSE OF THE EFH OFFICIAL COMMITTEE TO THE
SECOND MOTION OF ENERGY FUTURE HOLDINGS CORP., *ET AL.*,
FOR ENTRY OF AN ORDER EXTENDING THE DEBTORS' EXCLUSIVE
PERIODS TO FILE A CHAPTER 11 PLAN AND SOLICIT ACCEPTANCES
THEREOF PURSUANT TO SECTION 1121 OF THE BANKRUPTCY CODE**

The official committee of unsecured creditors of Energy Future Holdings Corporation ("**EFH**"), Energy Future Intermediate Holding Company LLC ("**EFIH**"), EFIH Finance Inc., and EECI, Inc. (the "**EFH Committee**"), hereby submits this response to the second motion (the "**Motion**")[2] of EFH and its affiliated debtors and debtors in possession (collectively, the "**Debtors**") for an order extending the Debtors' exclusive periods to file a chapter 11 plan and solicit acceptances thereof pursuant to section 1121 of title 11 of the U.S. Code (the "**Bankruptcy Code**") [D.I. 3338], and respectfully represents as follows:

**Response**

1. The EFH Committee and the Debtors have discussed the relief requested in the Motion, and the Debtors have agreed to limit the requested extension of the Filing Exclusivity Period to **June 23, 2015** and limit the requested extension of the Soliciting

---

[1] The last four digits of Energy Future Holdings Corp.'s taxpayer identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, for which joint administration has been granted, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

[2] All capitalized terms not otherwise defined herein are to be given the meanings ascribed to them in the Motion.

Exclusivity Period to **August 23, 2015**.  The EFH Committee fully supports the more limited relief requested by the Debtors.

2.  The EFH Committee believes strongly that these cases require a joint plan of reorganization of multiple Debtors in order to achieve the highest distributable value for all stakeholders.  Any joint plan of reorganization should be filed, solicited and confirmed under the guidance of estate fiduciaries, not individual creditors, and the chaos of competing plans by non-fiduciaries would waste millions and jeopardize reorganization.  The Debtors are beginning to make progress toward that joint plan.

3.  However, the EFH Committee has serious concerns.  EFH and EFIH unsecured creditors did not have the protections of section 1102 of the Bankruptcy Code at the beginning of these cases.  As a result, the Debtors and the first lien creditors of Texas Competitive Electric Holdings Company LLC ("**TCEH**," and such creditors, the "**TCEH First Lien Creditors**") pursued a transaction in which the TCEH First Lien Creditors would receive a tax windfall by using EFH tax attributes (at time when EFH unsecured creditors were to be impaired) to achieve a multi-billion dollar basis step-up that the TCEH First Lien Creditors did not bargain for in 2007.[3]  In addition to the free use of EFH's tax attributes (including those generated in the Oncor 'silo'), the TCEH First Lien Creditors would have received (a) free access to all of the business services provided by EFH's non-guarantor subsidiaries and (b) immunity from any challenges relating to the 2007 leveraged buyout, the largest in history.

4.  The stated reason for contributing this value from EFH to the TCEH First Lien Creditors was a threat:  if the TCEH First Lien Creditors foreclosed on their collateral, EFH

---

[3]  On information and belief, all financial projections utilized in connection with the 2007 leveraged buyout anticipated that the Luminant and TXU businesses would pay cash taxes, directly or indirectly, without any basis step-up.

would face a massive tax bill, while the TCEH First Lien Creditors would walk off with both the assets and a basis step-up for which they had not bargained.  Indeed, the TCEH First Lien Creditors continue to threaten the Debtors with this tax liability, most recently in the *Response of the Ad Hoc Committee of TCEH First Lien Creditors to the Second Motion of Energy Future Holdings Corp.,* et al.*, for Entry of an Order Extending the Debtors' Exclusive Periods to File a Chapter 11 Plan and Solicit Acceptances Thereof Pursuant to Section 1121 of the Bankruptcy Code* [D.I. 3439] (the "**First Lien Response**"), filed earlier today.

5. The simple truth is that the TCEH First Lien Creditors—who have no duties to the other stakeholders of the Debtors—are not in a position to foreclose, compel a taxable plan, or hold the estates as tax hostages.  No viable plan of reorganization in these cases will give rise to tax liabilities that cannot be paid or fail to meet the fiduciary obligations of the Debtors.  Moreover, foreclosure or any other taxable disposition is inefficient.  The resulting tax liabilities (regardless of who pays them) will necessarily exceed the benefit of the corresponding step-up in taxable basis of the disposed assets:  that is, such a transaction results in a net loss of value as compared to a tax-free transaction.  A taxable transaction violates the first principle of successful reorganization:  maximize the pie.

6. The TCEH First Lien Creditors are incorrect to assert that tax inefficiency is an "E side" issue.  For example, because the Luminant entities are currently disregarded for tax purposes, EFH is liable for any taxes resulting from a sale of Luminant's assets.  But EFH is not *solely* liable.  A taxable sale may compel EFH to revoke Luminant's disregarded entity designation, making Luminant jointly and severally liable with EFH for such taxes.  Regardless, EFH will have an administrative contribution claim against Luminant, whose estate benefits from the sale.  In the case of the foreclosure "plan" proposed by the TCEH First Lien Creditors in the First Lien Response, this contribution claim could render Luminant Generation Company

LLC, and potentially TCEH and other Debtors, administratively insolvent. In any event, the TCEH First Lien Creditors cannot assert that a taxable foreclosure "is likely value maximizing from the perspective of the TCEH Debtors' estates." (First Lien Response, p. 3, ¶ 3.)

7.  In light of the history of these cases and the positions taken by the TCEH First Lien Creditors, the EFH Committee asked the Debtors to reduce their requested exclusivity extensions to 120 days. The TCEH First Lien Creditors still seek the keys to Luminant and TXU Energy. There has been no marketing process for either business. Allegations by the TCEH First Lien Creditors that the Debtors are biased toward the "E Side" contradict the fact that, on the current trajectory, virtually all employees and continuing officers of the Debtors will work for the TCEH First Lien Creditors (Oncor is 'ring-fenced' and independently managed). In this situation, it is critical that junior creditors—including *both* of the statutory committees—be involved in the formulation of a successful plan of reorganization. The Debtors must be encouraged, if necessary, to advance one of the many alternatives for a confirmable chapter 11 plan without the consent of the TCEH First Lien Creditors—providing the TCEH First Lien Creditors with what they bargained for in 2007, without a tax windfall at the expense of any junior stakeholders or the U.S. government. And, if the Debtors for any reason prove unable to prosecute such a plan effectively, it is vital to preserve the right of the official committees to do so, acting independently or jointly.

8.  For these reasons, the EFH Committee supports the Debtors' modified request for relief.

| | |
|---|---|
| Dated: Wilmington, Delaware<br>February 4, 2015 | **MONTGOMERY McCRACKEN WALKER & RHOADS, LLP**<br><br>/s/ Mark A. Fink<br>Natalie D. Ramsey, Esquire (DE Bar No. 5378)<br>Davis Lee Wright, Esquire (DE Bar No. 4324)<br>Mark A. Fink, Esquire (DE Bar No. 3946)<br>1105 North Market Street, 15th Floor<br>Wilmington, DE 19801<br>Telephone: (302) 504-7800<br>Facsimile: (302) 504 -7820<br>E-mail:　nramsey@mmwr.com<br>　　　　　dwright@mmwr.com<br>　　　　　mfink@mmwr.com<br><br>– and –<br><br>**SULLIVAN & CROMWELL LLP**<br><br>Andrew G. Dietderich<br>Brian D. Glueckstein<br>Michael H. Torkin<br>Alexa J. Kranzley<br>125 Broad Street<br>New York, New York 10004<br>Telephone:　(212) 558-4000<br>Facsimile:　(212) 558-3588<br>E-mail:　　dietdericha@sullcrom.com<br>　　　　　gluecksteinb@sullcrom.com<br>　　　　　torkinm@sullcrom.com<br>　　　　　kranzleya@sullcrom.com<br><br>*Counsel for The Official Committee of Unsecured Creditors of Energy Future Holdings Corp., Energy Future Intermediate Holding Company, LLC; EFIH Finance, Inc.; and EECI, Inc.* |