## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re | ) | Chapter 11 |
| | ) | |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) | Case No. 14-10979 (CSS) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | Re: Docket No. 3338 |

**STATEMENT OF THE AD HOC GROUP OF TCEH UNSECURED NOTEHOLDERS IN SUPPORT OF THE SECOND MOTION OF ENERGY FUTURE HOLDINGS CORP., ET AL., FOR ENTRY OF AN ORDER EXTENDING THE DEBTORS' EXCLUSIVE PERIODS TO FILE A CHAPTER 11 PLAN AND SOLICIT ACCEPTANCES THEREOF PURSUANT TO SECTION 1121 OF THE BANKRUPTCY CODE**

The ad hoc group of certain holders (the "Ad Hoc Group") of approximately $2.7 billion of 10.25% Fixed Senior Notes due 2015 (including Series B) and 10.50%/11.25% Senior Toggle Notes due 2016 issued by Texas Competitive Electric Holdings Company LLC ("TCEH") and TCEH Finance, Inc., by and through its undersigned counsel, hereby files its statement in support of the Second Motion of Energy Future Holdings Corp., et al., for Entry of an Order Extending the Debtors' Exclusive Periods to File a Chapter 11 Plan and Solicit Acceptances Thereof Pursuant to Section 1121 of the Bankruptcy Code [Docket No. 3338] (the "Second Extension Motion").[2]  In support of the modified relief sought by the Debtors in

---

[1]    The last four digits of Energy Future Holdings Corp.'s federal tax identification number are 8810.  The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201.  Due to the large number of debtors in these chapter 11 cases, for which the debtors have requested joint administration, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

[2]    Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the Second Extension Motion.

connection with the Second Extension Motion,[3] the Ad Hoc Group respectfully represents as follows:

## THE MODIFIED RELIEF SOUGHT BY THE DEBTORS SHOULD BE GRANTED

1.      By the First Extension Motion, the Debtors sought an order extending their initial exclusive periods to file and solicit acceptances of a plan of reorganization by 180 days through and including February 23, 2015 and April 25, 2015, respectively.  In seeking that relief, the Debtors purported to commit to set aside their "quick deconsolidation at any cost" strategy in favor of a more traditional, bottoms-up look at the restructuring of their companion estates, including engagement with creditor constituencies that were not given the opportunity to participate in the prepetition plan support process.

2.      In reliance on the Debtors' commitment to meaningful, open-minded negotiations, the Ad Hoc Group supported the First Extension Motion.[4]  The Ad Hoc Group noted, however, that it remained concerned about the Debtors' pursuit of a sale of post-reorganization EFH Corp. equity pursuant to a deconsolidation plan that appeared to have no support from any T-side creditor.  Nevertheless, the Ad Hoc Group trusted that the Debtors and their advisors would not use the extension of exclusivity merely as a runway for a flawed process that sacrificed meaningful creditor engagement for the renewed promise of an early "tax-free" deconsolidation of the Debtors' two businesses at any cost.

3.      Three days after getting the consensual extension, however, the Debtors filed the Bidding Procedures Motion, entirely premised on a "tax free" deconsolidation of the T-

---

[3]      The Debtors have modified the relief requested by the Second Extension Motion and seek an extension of the exclusive periods of four months rather than approximately eight months.  See Notice of Filing of Amended Proposed Order Extending the Debtors' Exclusive Periods [Docket No. 3445].

[4]      See Statement of the Ad Hoc Group of TCEH Unsecured Noteholders in Support of the Motion of Energy Future Holdings Corp., et al., for Entry of an Order Extending the Debtors' Exclusive Periods to File a Chapter 11 Plan and Solicit Acceptances Thereof Pursuant to Section 1121 of the Bankruptcy Code [Docket No. 1998].

side and the E-side.  That filing set in motion a series of plainly foreseeable events that diverted

every party-in-interest's attention away from any fresh look at a bottoms-up plan negotiation.

Instead, all discourse was focused on the one plan structure—a quick deconsolidation at any

cost—that had bogged down the first ninety days of these cases and ultimately led to termination

of the Debtors' prepetition restructuring support agreement.  Now, having failed to utilize the

period from July to February for any meaningful plan advances, the Debtors claim a renewed

commitment to achieving as much consensus as possible on a global plan of reorganization.

Whether or not they are more sincere this time, the Ad Hoc Group is, for its part, committed to

participating fully in an open, searching and deliberative plan process and supports the modified

relief sought by the Debtors.

> 4.      The Ad Hoc Group is obviously concerned, however, with how the

Debtors will use the additional four months of exclusivity they now seek.  Although they have

recently provided a table around which their creditors have gathered to negotiate amongst

themselves—at least on the T-side—the Debtors have done little substantively to live up to their

purported commitment to meaningfully negotiate with all creditor constituencies.  See Second

Exclusivity Motion at 7-8 (describing the Debtors' efforts with respect to plan negotiations as

"fostering" dialogue that has led to creditor constituencies developing plan proposals).  Instead,

the Debtors have thus far used their extended runway to pursue the same transaction that has

pitted their creditor constituencies against each other with the goal of implementing a "tax-free"

deconsolidation.

> 5.      Understandably, that strategy has, to date, only emboldened the creditor

constituencies that would most benefit from the split at the expense of all others.  In that regard,

a "tax-free" deconsolidation plan, by definition, can only portend divisiveness between

constituencies as they posture for what "belongs" to them in any separation.  The newest voices

in the exclusivity debate prove that point succinctly.  As evidenced by statements contained in

the limited objection of the "EFIH Ad Hoc Committee,"[5] the members of that committee are

only prepared to negotiate about how they obtain for their exclusive benefit the spoils of any

deconsolidation.  See EFIH Ad Hoc Committee Limited Objection at 7 ("The Plan Backstop

Proposal was designed to . . . serve as a floor for the Oncor Auction . . . ."); id. at 9 n.5

(describing a proposal by the EFIH Ad Hoc Committee to provide debtor-in-possession

financing to refinance the EFIH second lien notes).  Similarly, the EFH Creditors' Committee

asserts that it is entitled to those spoils, rather than the T-side creditors.  See Response of the

EFH Official Committee to the Second Motion of Energy Future Holdings Corp., et al., for Entry

of an Order Extending the Debtors' Exclusive Periods to File a Chapter 11 Plan and Solicit

Acceptances Thereof Pursuant to Section 1121 of the Bankruptcy Code [Docket No. 3443] at 5

(describing how the EFH estate may attempt to pass down its own tax liability resulting from a

taxable deconsolidation to the T-side estates).

   6. On the other side of the capital structure, the "Ad Hoc Committee of

TCEH First Lien Creditors"[6] has declared in essence that any negotiation is futile and the

Debtors should just accede to their insistence on a taxable deconsolidation transaction that will

garner its members not just the value of their purported collateral—the extent of which has yet to

be determined—but also significant additional value in the form of a material step-up in tax basis

---

[5] The composition of the EFIH Ad Hoc Committee is described in footnote 1 of the Limited Objection of EFIH Ad Hoc Committee to Second Motion of Energy Future Holdings Corp. et al., for Entry of an Order Extending the Debtors' Exclusive Periods to File a Chapter 11 Plan and Solicit Acceptances and Solicit Acceptances Thereof Pursuant to Section 1121 of the Bankruptcy Code [Docket No. 3431] (the "EFIH Ad Hoc Committee Limited Objection").

[6] The composition of the Ad Hoc Committee of TCEH First Lien Creditors is described in the first paragraph of the Response of the Ad Hoc Committee of TCEH First Lien Creditors to the Second Motion of Energy Future Holdings Corp., et al., for Entry of an Order Extending the Debtors' Exclusive Periods to File a Chapter 11 Plan and Solicit Acceptances Thereof Pursuant to Section 1121 of the Bankruptcy Code [Docket No. 3439] (the "TCEH First Lien Committee Response").

to which they have no entitlement.  See TCEH First Lien Committee Response at 4 ("The Ad Hoc Committee of First Lien Creditors remains willing to continue pursuing a tax-free restructuring . . . if . . . the TCEH first lien creditors are reasonably compensated for the significant value they would forego in a tax-free restructuring.").

7.      The fundamental problem with each of these new positions is that all ignore the amount of heavy-lifting that will have to be done to support any of those groups' respective claimed entitlements.  The challenge period for the T-side first lien creditors' claims, liens and security interests has not yet expired, and it remains entirely unclear the extent of the interests in the assets that they claim as their own, including any value foregone in a "tax-free" deconsolidation.  See Stipulation and Consent Order Extending Certain Deadlines in the Final Cash Collateral Order [Docket No. 3380] at 4.  Similarly, the period in which to identify claims and causes of action against the E-side runs through and including March 31, 2015.  See Stipulation and Agreed Order Extending Dates in Order Regarding Protocol for Certain Case Matters [Docket No. 2760] at 1.  Thus, claims of the EFH Creditors' Committee to purported tax benefits and rights under the Debtors' competitive tax allocation agreement are contested and will remain so for some time.  Until then, for example, the Debtors' schedules of assets and liabilities reflect that TCEH is the creditor entitled to the largest distribution from the EFH estate. See, e.g., TCEH Schedule [Docket No. 1294] at 19.

8.      In all cases, while the Ad Hoc Group is diligently pursuing its investigation, hand in hand with the TCEH Creditors' Committee, the constant attempts by the Debtors to force through their deconsolidation are entirely counterproductive and only serve to divert the Ad Hoc Group's resources (which are not estate-funded) away from the work that this Court has acknowledged must be done.  Nonetheless, with all that said, a termination of

exclusivity would only serve to create more distraction and incentivize creditors insisting on

obtaining entitlements without any legal entitlement to them.  In sum, with some trepidation, the

Ad Hoc Group supports the requested extension of the Debtors' exclusive periods, noting that

any further insistence by the Debtors on pursuing their divisive plan of "de-organization" will

only result in cost, delay and a failed process.

*[Remainder of page intentionally left blank]*

Dated:  February 6, 2014
        Wilmington, Delaware

                            FOX ROTHSCHILD LLP

                    By:  */s/ L. John Bird*
                         Jeffrey M. Schlerf (No. 3047)
                         John H. Strock (No. 4965)
                         L. John Bird (No. 5310)
                         919 North Market St., Suite 300
                         Wilmington, DE 19801
                         Telephone:  (302) 654-7444
                         Facsimile:  (302) 463-4971
                         jschlerf@foxrothschild.com
                         jstrock@foxrothschild.com
                         lbird@foxrothschild.com

                         and

                         WHITE & CASE LLP
                         Thomas E Lauria (admitted *pro hac vice*)
                         Matthew C. Brown (admitted *pro hac vice*)
                         Southeast Financial Center, Suite 4900
                         200 South Biscayne Blvd.
                         Miami, FL 33131
                         Telephone:  (305) 371-2700
                         Facsimile:  (305) 358-5744
                         tlauria@whitecase.com
                         mbrown@whitecase.com

                         J. Christopher Shore (admitted *pro hac vice*)
                         Gregory M. Starner (admitted *pro hac vice*)
                         1155 Avenue of the Americas
                         New York, NY 10036
                         Telephone:  (212) 819-8200
                         Facsimile:  (212) 354-8113
                         cshore@whitecase.com
                         gstarner@whitecase.com

                         *Counsel to the Ad Hoc Group of TCEH Unsecured
                         Noteholders*