IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) Case No. 14-10979 (CSS) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |
| | ) **Re: D.I. 1683, 3418, 3419, 3431, 3439** |

**OMNIBUS REPLY OF ENERGY FUTURE HOLDINGS CORP., *ET AL.*,
TO CERTAIN OBJECTIONS AND RESPONSES FILED IN CONNECTION WITH
THE SECOND MOTION OF ENERGY FUTURE HOLDINGS CORP., *ET AL.*,
FOR ENTRY OF AN ORDER EXTENDING THE DEBTORS' EXCLUSIVE
PERIODS TO FILE A CHAPTER 11 PLAN AND SOLICIT ACCEPTANCES
THEREOF PURSUANT TO SECTION 1121 OF THE BANKRUPTCY CODE**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") file this omnibus reply (this "Reply") in support of the *Second Motion of Energy Future Holdings Corp., et al., for Entry of an Order Extending the Debtors' Exclusive Periods to File a Chapter 11 Plan and Solicit Acceptances Thereof Pursuant to Section 1121 of the Bankruptcy Code* [D.I. 1683] (the "Exclusivity Motion") and in response to (a) the *Limited Objection of Wilmington Savings Fund Society, FSB to Second Motion of Energy Future Holdings Corp., et al., for Entry of an Order Extending the Debtors' Exclusive Periods to File a Chapter 11 Plan and Solicit Acceptances Thereof Pursuant to Section 1121 of the Bankruptcy Code* [D.I. 3419] (the "TCEH Second Lien Objection"); (b) the *Limited Objection of the EFIH Ad Hoc Committee to the Second Motion of Energy Future Holdings Corp., et al., for Entry of an Order Extending*

---

[1] The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, for which joint administration has been granted, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

RLF1 11464542v.1

*the Debtors' Exclusive Periods to File a Chapter 11 Plan and Solicit Acceptances Thereof Pursuant to Section 1121 of the Bankruptcy Code* [D.I. 3431] (the "EFIH PIKs Objection", together with the TCEH Second Lien Objection, the "Objections" and the parties to the Objections, the "Objectors"); and (c) *Response of the Ad Hoc Committee of TCEH First Lien Creditors to the Second Motion of Energy Future Holdings Corp., et al., for Entry of an Order Extending the Debtors' Exclusive Periods to File a Chapter 11 Plan and Solicit Acceptances Thereto Pursuant to Section 1121 of the Bankruptcy Code* [D.I. 3439] (the "TCEH First Lien Statement").[2] In response to the Objections and the TCEH First Lien Statement and in further support of the Exclusivity Motion, the Debtors respectfully state as follows.[3]

## Reply

1.    Ultimately, no party objects to the negotiated four-month extension of the Debtors' exclusivity periods and, as reflected in the revised form of order the Debtors filed on February 5, 2014, a significant number of stakeholders actively support the negotiated relief.[4] The Debtors believe their original request was justified given the extraordinary complexity of these cases, a fact that is underscored by the various (and oftentimes divergent) viewpoints

---

[2]   Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Exclusivity Motion.

[3]   The Official Committees also filed responses in connection with the Second Exclusivity Motion, supporting the Debtors' negotiated resolution (described herein). *See Response of the EFH Official Committee to the Second Motion of Energy Future Holdings Corp., et al., for Entry of an Order extending the Debtors' Exclusive Periods to File a Chapter 11 Plan and Solicit Acceptances Thereof Pursuant to Section 1121 of the Bankruptcy Code* [D.I. 3443] (the "EFH Committee Statement"); *Statement of Official Committee of TCEH Unsecured Creditors Regarding the Second Motion of Energy Future Holdings Corp., et al., for Entry of an Order Extending the Debtors' Exclusive Period to File a Chapter 11 Plan and Solicit Acceptance Thereof Pursuant to Section 1121 of the Bankruptcy Code* [D.I. 3461] (the "TCEH Committee Statement").

[4]   In particular, the following eight stakeholders have consented to an extension of the exclusivity period: (a) both Official Committees; (b) the ad hoc committee of TCEH first lien noteholders; (c) certain funds and accounts advised by Fidelity Management & Research Company and its affiliates, who, collectively have an interest in EFH and EFIH debt; (d) nearly every tranche of funded EFIH debt, and (e) Alcoa, Inc. ("Alcoa"). A revised draft of the order granting the Exclusivity Motion (the "Negotiated Order") and a redline of the Negotiated Order were filed under separate cover with the Court on February 5, 2014 [D.I. 3447].

Alcoa filed a limited objection but has since agreed to accept the terms of the Negotiated Order.

reflected in the Objections, the TCEH First Lien Statement, and the statements from the Official Committees. But, in the interest of time and expense (and even before any party filed a statement, reply, or objection with respect to the Exclusivity Motion), the Debtors decided to compromise and agree to a shorter extension, rather than focus their efforts on unnecessary litigation over exclusivity. The Debtors are instead focusing their efforts on other, more critical aspects of the plan process. Indeed, consistent with the Court's comments in connection with approval of the bidding procedures order, the Debtors—with input from the disinterested directors and managers and the respective conflicts matters advisors—are pursuing in earnest negotiations regarding a plan of reorganization.

2. Despite the Debtors' compromise, certain creditor constituencies have used the Exclusivity Motion as an opportunity to file "statements" and "objections" complaining about Debtors' refusal to adopt their particularized agendas when, in reality, these creditors do not object to the (now modified) extension at all. Creditor complaints are a common refrain when it comes to exclusivity. But, that is no reason to terminate or modify exclusivity. *See In re Adelphia Commc'ns Corp.*, 336 B.R. 610, 676 (Bankr. S.D.N.Y. 2006), *aff'd*, 342 B.R. 122 (S.D.N.Y. 2006) (noting that the "notion that creditor constituency unhappiness, without more, constitutes cause to undermine the debtor's chances of winning final confirmation of its plan during the exclusivity period has been judicially rejected").

3. At bottom, however, the only remaining objection is from the TCEH second lien indenture trustee. Although the TCEH second lien indenture trustee is amenable to a four-month extension, the TCEH second lien indenture trustee requests that the Court impose two conditions on the Debtors' requested extension. The first condition, which would empower the Official Committees to file a plan if they can reach agreement on one, is unsupported by the case law and

is unnecessary. Tellingly, not even the Official Committees are seeking such extraordinary relief. The second condition, which would vest the TCEH disinterested director with authority to file a plan, also is unsupported by the case law and, more importantly, is an improper effort to dictate corporate governance in the context of exclusivity and ignores the authority the Debtors' have already vested in the disinterested directors to identify and address conflicts matters.

4. In addition, the EFIH PIKs' decision to file an "objection" that seeks the exact same relief reflected in the Negotiated Order, and their explicit consent to the Negotiated Order itself, renders the EFIH PIKs Objection moot.

5. For these reasons, and as discussed below, the Debtors firmly believe the Court should overrule the TCEH Second Lien Objection and the EFIH PIKs Objection and enter the Negotiated Order, which is now agreed to among the Debtors and the vast majority of their key stakeholders.

A.  **The TCEH Second Lien Objection Should Be Overruled.**

6. To be clear, the TCEH second lien indenture trustee is agreeable to a four-month extension of exclusivity. Nevertheless, the TCEH second lien indenture trustee seeks to impose two unnecessary and inappropriate—indeed, unheard of—limitations on the Debtors' corporate governance and plan negotiation process. TCEH Second Lien Objection, ¶ 4. The Court should overrule the TCEH Second Lien Objection for the following reasons.

7. *First*, the TCEH second lien indenture trustee's proposal to permit the Official Committees to terminate exclusivity is unwarranted because it has virtually no support under the law and is not warranted under the facts and circumstances of these chapter 11 cases. As an

initial matter, it is notable that the Official Committees themselves have not conditioned their support of the Negotiated Order on such extraordinary relief.[5]

8. Additionally, there appears to be little legal support for the TCEH second lien indenture trustee's proposal. The vast majority of cases that the TCEH second lien indenture trustee cites were adjudicated *before* the 2005 amendments to the Bankruptcy Code that imposed an 18-month cap on a debtor's exclusivity. This is important because before these amendments to the Bankruptcy Code, debtors could seek indefinite extensions of their exclusivity period, giving major stakeholders and courts a very real basis for fearing that debtors would hold creditors hostage through their grip on exclusivity.[6]

9. Even if the Court is inclined to follow pre-2005 case law, it is readily distinguishable. In *United Press International, Inc.*, 60 B.R. 265 (Bankr. D.D.C. 1996), the single case the TCEH second lien indenture trustee cites in support of the proposition that selective termination may be a viable option, such relief was an extraordinary remedy sought out by the ***debtors*** to resolve an intractable situation. In *United Press*, the court noted that a "major reason" for allowing a limited extension of exclusivity was the finding that "no plan could feasibly be filed in the name of the debtor" given the ongoing disputes between management and labor in which a "disastrous shutdown" of the debtor's business was "only narrowly avoided."

---

[5] More specifically, the EFH Committee Statement notes that the "EFH Committee fully supports the more limited relief requested by the Debtors" and does not call for any modifications of the Negotiated Order. EFH Committee Statement, ¶¶ 1, 2. The TCEH Committee Statement also notes that "the Exclusivity Motion comes at a time when these cases will benefit from the stability of continued exclusivity." TCEH Committee Statement, ¶ 1.

[6] Congress evidently shared these worries, noting more than a decade prior to the 2005 amendments that "undue extension can result in excessively prolonged and costly delay, to the detriment of creditors." H.R. Rep. No. 103-835, at 36 (1994), *as reprinted in* 1994 U.S.C.C.A.N. 3340, 3344–45; *see also*, S. Rep. No. 103-168, at 40 (1994) ("It is not uncommon for the debtor to request and receive extensions for a variety of reasons. Often, these extensions lead to unnecessary and expensive delay in the pendency of the chapter 11 case.").

*Id.* at 271 n.12. Furthermore, the court noted, the debtor itself suggested the modified approach. *Id.*

10. If those are the "appropriate circumstances" in which conditions or exceptions may be placed on exclusivity, then no such deviation is appropriate in this case. Here, the TCEH second lien indenture trustee does not even allege, let alone establish, that a Debtor-sponsored plan is infeasible or that there exists any dispute so great that the Debtors' restructuring or operational initiatives are severely at risk.[7] Therefore, the circumstances in *United Press* are starkly inapposite to the Debtors' circumstances.

11. *Second*, the TCEH second lien indenture trustee's proposal with respect to the disinterested directors is an improper effort to dictate corporate governance in the context of exclusivity and ignores the authority that the Debtors have already vested in their disinterested directors to identify and address conflicts matters. The disinterested directors and managers—each of whom has access to independent counsel and financial advisors—are not themselves asking for the imposition of such a condition for extending exclusivity and the disinterested directors and managers, with the advice of the conflicts matters counsel, support entry of the Negotiated Order.

12. The Debtors' boards have delegated sole authority to identify and act upon actual conflicts matters to the disinterested directors and managers for each of EFH, EFIH, and EFCH/TCEH. This does not mean, however, that the disinterested directors should control *all* aspects of the plan process because no party today knows the extent to which a plan of

---

[7] The TCEH second lien indenture trustee does assert that the Debtors continue to advance the interests of the "Sponsor Group." TCEH Second Lien Objection, ¶¶ 7, 8, 20. But other than pointing to the prepetition RSA, which the TCEH second lien indenture trustee perpetually insists on using as the foundation of its arguments despite the fact that it was terminated over six months ago, the TCEH Second Lien Objection does not present any evidence of such collusion.

reorganization will implicate conflicts matters. In fact, the Court has already noted in the context of the conflicts matter advisor retention applications that any attempt to preemptively identify conflict matters that may arise in these chapter 11 cases would be "inefficient, unfair, and perhaps even prejudicial." *Hr'g Tr.* at [51:10-51:16] (Bankr. D. Del. Jan. 13, 2015).

13. As a result of the Debtors' retention of six new conflicts matter advisors and the delegation of authority to resolve conflict matters to their disinterested directors, the Debtors are confident that whatever deficiencies the Court might have found in the Debtors' prior governance processes as they relate to the bidding procedures have now been fully and adequately addressed in the context of ***all*** conflicts matters.[8] To that end, while engaging in restructuring discussions with all parties, the Debtors' advisors, management, and boards have spent an extraordinary amount of time and effort educating and providing diligence information to the conflicts matter advisors.[9] And, the conflicts matter advisors have spent a significant amount of time in discussions with creditor constituencies regarding conflict matters. The Debtors will continue a similarly thorough and transparent governance process regarding all conflicts matters for the duration of these chapter 11 cases.

---

[8] The Court approved the retention of all of the conflicts counsel and financial advisors. With respect to the retention of Greenhill & Co, the financial advisor for EFCH, TCEH, and TCEH's debtor subsidiaries, the retention order states that approval of Greenhill's Transaction Fee (as defined in Greenhill's retention application [D.I. 3162]) will be deferred to a future hearing date. *See Order Authorizing Energy Future Competitive Holdings Company LLC and Texas Competitive Electric Holdings Company LLC to Retain and Employ Greenhill & Co. as Independent Financial Advisor Effective* Nunc Pro Tunc *to November 17, 2014* [D.I. 3283].

The Debtors anticipate that Greenhill & Co. will seek Court approval of its Transaction Fee in the very near term.

[9] In fact, the best example of the success of the Debtors' current governance process is the Court's entry of the Bidding Procedures Order on January 14, 2015, which the Court entered after reviewing the comprehensive corporate governance record the Debtors followed, documented, and filed with the Court.

RLF1 11464542v.1

**B.    The EFIH PIKs Objection is Moot and, Ultimately, Does Not Object to the Negotiated Order.**

14.    After the Debtors proposed the relief contemplated by the Negotiated Order, the EFIH PIKs filed an Objection calling for the very same relief. In addition, as reflected in the notice accompanying the Negotiated Order, the EFIH PIKs have consented to the Negotiated Order. For that reason, the EFIH PIKs Objection is moot in its entirety, and the Debtors will not waste time or resources addressing the many inaccuracies reflected in the Objection. Similarly, the Debtors will not spend time correcting the misstatements set forth in the non-objections filed by other creditor constituencies. Suffice it to say that these creditor constituencies have devoted dozens of pages of pleadings to "position statements" designed to condition the other creditor constituencies to their respective negotiating positions. But none of them—save the TCEH second lien indenture trustee—actually object to the relief the Debtors are seeking.

<u>**Conclusion**</u>

15.    In short, despite the "position pleadings" filed on the docket, *no party* objects to the negotiated four-month extension of the Debtors' exclusivity periods. The Debtors are committed to (and have been) engaging in constructive discussions with all stakeholders, and have established a path forward. The modest four-month extension will further the Debtors' efforts to foster a constructive dialogue regarding a global restructuring.

16.    Accordingly, for the reasons set forth above and in the Exclusivity Motion, the Debtors respectfully request that the Court overrule the Objections and grant the relief requested in the Exclusivity Motion, as modified by the Negotiated Order.

RLF1 11464542v.1

Dated: February 9, 2015
Wilmington, Delaware

/s/ Jason M. Madron

**RICHARDS, LAYTON & FINGER, P.A.**
Mark D. Collins (No. 2981)
Daniel J. DeFranceschi (No. 2732)
Jason M. Madron (No. 4431)
920 North King Street
Wilmington, Delaware 19801
Telephone:    (302) 651-7700
Facsimile:     (302) 651-7701
Email:         collins@rlf.com
               defranceschi@rlf.com
               madron@rlf.com

-and-

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Edward O. Sassower, P.C. (admitted *pro hac vice*)
Stephen E. Hessler (admitted *pro hac vice*)
Brian E. Schartz (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022-4611
Telephone:    (212) 446-4800
Facsimile:     (212) 446-4900
Email:         richard.cieri@kirkland.com
               edward.sassower@kirkland.com
               stephen.hessler@kirkland.com
               brian.schartz@kirkland.com

-and-

James H.M. Sprayregen, P.C. (admitted *pro hac vice*)
Marc Kieselstein, P.C. (admitted *pro hac vice*)
Chad J. Husnick (admitted *pro hac vice*)
Steven N. Serajeddini (admitted *pro hac vice*)
300 North LaSalle
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:     (312) 862-2200
Email:         james.sprayregen@kirkland.com
               chad.husnick@kirkland.com
               steven.serajeddini@kirkland.com

Co-Counsel to the Debtors and Debtors in Possession

RLF1 11464542v.1