## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | Case No. 14-10979 (CSS) |
| Debtors. | (Jointly Administered) |
| | **Hearing Date:  March 10, 2015 at 9:30 a.m.** |
| | **Objection Deadline:  February 26, 2015 at 4:00 p.m.** |

## MOTION OF ENERGY FUTURE HOLDINGS CORP., ENERGY FUTURE INTERMEDIATE HOLDING COMPANY LLC, AND EFIH FINANCE INC. FOR ENTRY OF (A) ORDER (I) AUTHORIZING PARTIAL REPAYMENT OF EFIH SECOND LIEN NOTES; (II) APPROVING EFIH DIP CONSENT; AND (III) AUTHORIZING CONSENT FEE AND (B) REVISED EFIH FIRST LIEN DIP ORDER

Energy Future Holdings Corp. ("EFH Corp."), Energy Future Intermediate Holding Company LLC ("EFIH"), and EFIH Finance Inc. (collectively with EFH Corp. and EFIH, the "EFIH Debtors"), co-debtors with the above-captioned debtors and debtors in possession (collectively with the EFIH Debtors, the "Debtors"), file this motion ("Motion") seeking entry of (a) an order, substantially in the form attached hereto as **Exhibit A** (the "Repayment Order"), (i) authorizing EFIH to use up to $750 million of its cash on hand to repay outstanding principal and accrued interest on the EFIH 11.00% and 11.75% second lien notes due 2021 and 2022, respectively (collectively, the "EFIH Second Lien Notes"), on a *pro rata* basis (the "Partial Repayment"); (ii) approving the written consent to permit, among other things, the Partial

---

[1]    The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810.  The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201.  Due to the large number of debtors in these chapter 11 cases, for which joint administration has been granted, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

Repayment, substantially in the form attached hereto as **Exhibit 1** to **Exhibit A** (the "EFIH DIP Consent"), entered into between EFIH, EFIH Finance Inc., and the necessary parties under the credit agreement (the "DIP Credit Agreement") and related documents governing the EFIH first lien debtor-in-possession financing facility (such documents, including the DIP Credit Agreement, the "DIP Documents" and, such facility, the "EFIH DIP Facility"); and (iii) authorizing the payment of a cash consent fee of up to $13.5 million to the consenting lenders under the EFIH DIP Facility in exchange for the EFIH DIP Consent (the "Consent Fee"); and (b) an order substantially in the form attached hereto as **Exhibit B** (the "Revised DIP Order"), which amends the previously entered order approving the EFIH DIP Facility [D.I. 859] (as entered, the "DIP Order") to provide for the implementation of the revisions necessary to permit the transactions allowed under the EFIH DIP Consent (and, collectively with the EFIH DIP Consent, the "DIP Modifications").

The EFIH Debtors also submit the *Declaration of David Ying in Support of the Motion of Energy Future Holdings Corp., Energy Future Intermediate Holding Company LLC, and EFIH Finance Inc. for Entry of (a) Order (i) Authorizing Partial Repayment of EFIH Second Lien Notes; (ii) Approving EFIH DIP Consent; and (iii) Authorizing Consent Fee and (b) Revised EFIH First Lien DIP Order* (the "Ying Declaration"), filed contemporaneously herewith.

In further support of this Motion, the EFIH Debtors respectfully submit as follows.

**Preliminary Statement**

1.      The Partial Repayment, and the facilitating DIP Modifications and Consent Fee, are a sound exercise of the EFIH Debtors' business judgment and in the best interests of their respective estates.  The Debtors project that EFIH will have approximately $1.13 billion of cash on hand as of March 31, 2015.  EFIH's only periodic cash expenses during the case are interest

expense on the EFIH DIP Facility and professional fee administrative expenses.  Meanwhile, the

EFIH Second Lien Notes accrue interest at a weighted average rate of approximately 11.61% per

year.

2.      As with the repayment of the EFIH First Lien Notes, which this Court previously

approved, the EFIH Debtors will create significant value by partially repaying the EFIH Second

Lien Notes.  Specifically, by using $750 million to repay in part the EFIH Second Lien Notes,

the EFIH Debtors can prevent an estimated $66 million in accrued postpetition interest claims

through December 2015.[2]  In light of these estimated savings, agreeing to a Consent Fee of up to

$13.5 million, which is payable upon entry of the Repayment Order and the Revised DIP Order

(unless stayed), is a sound financial decision.  At the same time, EFIH will maintain adequate

cash on hand after consummating the Partial Repayment, taking into account projected case

expenses.

3.      In determining to undertake the Partial Repayment, the EFIH Debtors'

management, advisors, and boards considered the advantages and risks of this approach as well

as the advantages and risks of a number of alternatives.  Foremost among the factors that the

EFIH Debtors' considered are the resources of the Court and parties in interest to consider

various courses of action in the Debtors' extraordinarily large and complex chapter 11 cases.  It

was due in large part to these considerations that the Debtors determined that the Partial

Repayment, instead of other potential alternatives, including incurring additional financing to

fully repay the EFIH Second Lien Notes, is the best approach at this point in time to prevent the

unnecessary accrual of above-market interest claims against EFIH.  To that end, after lengthy

---

[2]    That figure would increase to an estimated $89 million as of March 31, 2016 and $105 million as of May 31,
       2016.

3

deliberations and in consultation with the Debtors' management and advisors, the boards of EFH Corp. and EFIH adopted resolutions authorizing EFIH to undertake the Partial Repayment, execute the DIP Modifications, and pay related fees and expenses.

4.      In addition, the stakeholders most affected by the accrual of above-market interest claims on the EFIH Second Lien Notes support the Partial Repayment.  For example, the EFH Creditors' Committee has expressly requested that EFIH use excess cash on hand to repay promptly a portion of the EFIH Second Lien Notes.  The Debtors have also discussed the Partial Repayment at length with other stakeholders and considered their views.  Relatedly, the necessary parties under the EFIH DIP Facility have negotiated and consented to the EFIH DIP Consent and Revised DIP Order, which permit the Partial Repayment.

5.      Thus, for the reasons set forth in this Motion, the Debtors respectfully request that the Court authorize the Partial Repayment, approve the EFIH DIP Consent, authorize the Consent Fee, and enter the Revised DIP Order.

### Jurisdiction and Venue

6.      The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Debtors confirm their consent pursuant to rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Bankruptcy Rules") to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the

4

parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

7.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

8.      The bases for the relief requested in this Motion are sections 105 and 363(b) of title 11 of the United States Code (the "Bankruptcy Code") and Local Bankruptcy Rule 6004.

## Relief Requested

9.      By this Motion, the EFIH Debtors respectfully request that the Court enter (a) the Repayment Order (i) authorizing the Partial Repayment, (ii) approving the EFIH DIP Consent, and (iii) authorizing the Consent Fee and (b) the Revised DIP Order implementing revisions necessary to permit the Partial Repayment.

## Background

10.      On April 29, 2014 (the "Petition Date"), each of the Debtors filed a voluntary petition with the Court under chapter 11 of the Bankruptcy Code. The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. The Court has entered a final order for joint administration of these chapter 11 cases. The Office of the United States Trustee for the District of Delaware formed the Official Committee of Unsecured Creditors of Energy Future Holdings Corp., Energy Future Intermediate Holding Company LLC, EFIH Finance, Inc., and EECI, Inc. on October 27, 2014 [D.I. 2570] (the "EFH Creditors' Committee").

## I.      Bases for the Partial Repayment.

11.      EFIH presently has approximately $7.556 billion in principal amount of funded secured debt. Of that amount, approximately $5.4 billion is owed under the EFIH DIP Facility and $2.156 billion is owed on the EFIH Second Lien Notes. Earlier in the cases, the Court

5

approved the repayment of the $3.985 billion of EFIH first lien notes that were outstanding as of the Petition Date (the "EFIH First Lien Notes") using the lower-cost EFIH DIP Facility to allow the Debtors to save interest expense.  *See* DIP Order ¶ 1.  The interest rate on the EFIH DIP Facility is currently 4.25%, whereas the weighted-average contractual interest rate on the EFIH Second Lien Notes is approximately 11.61% per year.[3]  The interest rate on the EFIH Second Lien Notes is substantially above the rate on the EFIH DIP Facility and that EFIH could presently obtain in the market on a second lien DIP facility.  And it is almost certain that the EFIH Second Lien Notes are oversecured.

12.     By repaying $750 million of the EFIH Second Lien Notes, EFIH would save at least an estimated $66 million in total accrued interest claims in the event the Partial Repayment occurs on March 31, 2015 and the Debtors emerge from bankruptcy on December 31, 2015, before taking into account payment of the Consent Fee.  If the case extends beyond the end of 2015, that figure would only increase, to an estimated $89 million as of March 31, 2016 and $105 million as of May 31, 2016.  This is an estimated $52 million to $92 million of value, net of the Consent Fee, that would otherwise accrete to EFIH stakeholders, including potentially EFH Corp.

13.     At this time, EFIH projects that it will have approximately $1.13 billion of cash on hand as of March 31, 2015, which is currently held in accounts that earn interest at between approximately 0.01% and 0.03% per year.  If EFIH used $750 million of this cash to partially repay the EFIH Second Lien Notes, EFIH would still have adequate cash on hand, taking into

---

[3]     This rate does not include any alleged penalty interest associated with the applicable registration rights agreement.  The Debtors reserve all rights with respect to the appropriate rate of postpetition interest on the EFIH Second Lien Notes.

RLF1 11516169v.1

account projected case expenses and the requirements of the EFIH DIP Facility's liquidity-maintenance covenant. *See* DIP Credit Agreement § 8.9.

14.     In addition, there is litigation pending between the Debtors and the indenture trustee for the EFIH Second Lien Notes (the "<u>EFIH Second Lien Trustee</u>") over the trustee's asserted entitlement to a makewhole premium.[4]  The Debtors' position continues to be that the EFIH Second Lien Notes accelerated on the Petition Date without triggering any makewhole premium.   Given that the EFIH Second Lien Notes have accelerated, repaying them as soon as practicable would prevent the continued accrual of postpetition interest claims under the repaid notes and thus maximize value for EFIH stakeholders.

## II.     Decision to Pursue the Partial Repayment.

15.     From the outset of the chapter 11 cases, the Debtors have sought to reduce the accrual of claims for above-market interest on the EFIH secured notes.  The EFIH DIP Facility included availability that the Debtors intended to use, together with the proceeds of their proposed EFIH second lien DIP facility, to repay the EFIH Second Lien Notes in full [D.I. 477]. The Debtors ultimately withdrew the motion to approve that proposed facility, which included an equity conversion feature, and instead pursued bidding procedures to market their economic interests in Oncor [D.I. 1697].  But EFIH had already drawn all available funds under the EFIH DIP Facility, including those meant for repayment of the EFIH Second Lien Notes.

16.     Since then, EFIH and EFH Corp. stakeholders have continued to encourage EFIH to repay the EFIH Second Lien Notes in whole or in part, in particular the EFH Creditors' Committee and the ad hoc group of EFIH unsecured noteholders.  On January 2, 2015, the EFH

---

[4]     *See Computershare Trust Co. v. EFIH*, No. 14-50405 (Bankr. D. Del. May 5, 2014).

Creditors' Committee submitted a letter to the Debtors requesting, in short, that EFIH "use available EFIH cash on hand to pay down the maximum possible amount" of the 11.75% EFIH Second Lien Notes.

17.    The partial repayment will avoid at least a projected $66 million of accrued interest claims without necessitating the incurrence or approval of additional financing at this stage in the case.  The Partial Repayment does not, however, foreclose the Debtors from seeking the Court's authority for further repayments at a later date should they determine it is in the best interests of their estates to do so in compliance with the terms of the DIP Documents.  On January 23, 2015, the boards of directors and managers of EFIH and EFH Corp. adopted resolutions that, among other things, authorize EFIH to undertake the Partial Repayment, execute the DIP Modifications, and pay related fees and expenses.  By this Motion, the EFIH Debtors respectfully submit that the Partial Repayment is in the best interests of their estates.

### III.    EFIH DIP Modifications.

18.    The EFIH DIP Order and DIP Documents originally contemplated a repayment in full of the EFIH Second Lien Notes.  That repayment, however, was limited to a repayment of the EFIH Second Lien Notes with proceeds from a Court-approved second lien DIP facility and proceeds from the EFIH DIP Facility, the latter only after fully exhausting the proceeds from the second lien DIP facility.  DIP Order ¶ G; DIP Credit Agreement § 7.16(c).  As a result, certain amendments to the DIP Order and DIP Documents are necessary to permit the Partial Repayment.

19.    The DIP Order and DIP Documents permit material amendments under certain circumstances.  The DIP Order permits material amendments on the terms set forth in the DIP Documents and allows the Debtors to seek Court approval of such amendments.  DIP Order ¶ 16.

8

The DIP Documents permit the contemplated amendments with the consent of 50.1% of the lenders under the EFIH DIP Facility by principal amount (the "Required DIP Holders") and Deutsche Bank AG New York Branch, the administrative agent (the "DIP Agent").   *See* DIP Credit Agreement § 11.1.

20.     EFIH and EFIH Finance Inc. have agreed on the DIP Modifications with the DIP Agent and lenders that constitute the Required DIP Holders.  Under the EFIH DIP Consent, the Required DIP Holders authorized the Partial Repayment, the filing of this Motion, and entry of the Revised DIP Order.   In exchange, the Debtors agreed to pay the consenting lenders the Consent Fee, which is equal to 0.25% of the amounts outstanding under the EFIH DIP Facility that are owed to consenting lenders.  This results in a maximum $13.5 million Consent Fee.  The Consent Fee will be payable only upon the entry and effectiveness of the Repayment Order and the Revised DIP Order.  Although the EFIH Debtors negotiated at length to avoid or reduce the Consent Fee, the Required DIP Holders ultimately would not agree to the DIP Modifications without it.  By this Motion, the EFIH Debtors respectfully submit that the DIP Modifications are in the best interests of their estates.

## Basis for Relief

**I.**     **The Partial Repayment and DIP Modifications Are a Sound Exercise of the EFIH Debtors' Business Judgment.**

21.     The Bankruptcy Code authorizes the use of property outside the ordinary course of business with court approval and given a valid business reason.  Specifically, the Bankruptcy Code authorizes a debtor in possession to "use, sell, or lease, other than in the ordinary course of business, property of the estate," after notice and a hearing.  11 U.S.C. § 363(b).  It is well-established in this jurisdiction that a debtor may use property of the estate outside the ordinary course of business under this provision if there is a good business reason for doing so.  *See, e.g.,*

9

*Meyers v. Martin (In re Martin)*, 91 F.3d 389, 395 (3d Cir. 1996); *In re Elpida Memory, Inc.*, No. 12-10947 (CSS), 2012 WL 6090194, at *5 (Bankr. D. Del. Nov. 20, 2012); *In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (Bankr. D. Del. 1999); *In re Del. & Hudson Ry. Co.*, 124 B.R. 169, 175 (Bankr. D. Del. 1991).   Under the business judgment standard, once "the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct."   *Comm. of Asbestos-Related Litigants and/or Creditors v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986).

22.    Moreover, courts often approve the repayment of prepetition secured debt to prevent the accrual of postpetition interest claims.   This Court has held that the repayment of secured debt "may be authorized by section 363(b) of the Bankruptcy Code as a use of estate property outside the ordinary course of business."   *In re Capmark Fin. Grp. Inc.*, 438 B.R. 471, 510-12 (Bankr. D. Del. 2010) (Sontchi, J.); *see also Law Debenture Trust Co. v. Calpine Corp. (In re Calpine Corp.)*, 356 B.R. 585, 597 (S.D.N.Y. 2007) (affirming order of bankruptcy court allowing repayment of prepetition secured debt under section 363(b)); *United States ex rel. Rural Electrification Admin. v. Wabash Valley Power Ass'n (In re Wabash Valley Power Ass'n)*, 167 B.R. 885, 889 (S.D. Ind. 1994) (affirming order of bankruptcy court granting debtor permission to repay prepetition secured debt).    Indeed, as this Court has stated, "such payments are routinely made in a number of different contexts" and "there is ample authority for such a payment." *Capmark*, 438 B.R. at 510-12.  And this Court has already approved the repayment in full of the EFIH First Lien Notes to save interest expense in these chapter 11 cases.  *See* DIP Order ¶ 1.

23.     Here, the Partial Repayment, as well as the DIP Modifications and Consent Fee necessary to effectuate it, are a sound exercise of the EFIH Debtors' business judgment.  The Partial Repayment will prevent at least a projected $66 million in accrued interest claims.  After the Partial Repayment, EFIH will maintain adequate cash on hand.  Moreover, given these savings, paying the maximum $13.5 million Consent Fee is a sound exercise of the EFIH Debtors' business judgment.  The Partial Repayment thus represents the best use of cash on hand otherwise earning nominal rates of interest, which EFIH borrowed in the first instance primarily—with this Court's approval—for the express purpose of repaying EFIH Second Lien Notes.  Thus, for the foregoing reasons, the Debtors respectfully request that the Court authorize the Partial Repayment, approve the DIP Modifications, and authorize payment of the Consent Fee.

## II.    The Partial Repayment Will Cut Off the Accrual of Postpetition Interest Claims on the Repaid Amounts.

24.     The entitlement to postpetition interest on secured claims, if any, is premised on section 506(b) of the Bankruptcy Code.  11 U.S.C. § 506(b) ("[T]here shall be allowed to the holder of [an oversecured] claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement . . . under which such claim arose.").   Payment of a claim by a debtor cuts off any entitlement to interest under section 506(a).  *See Rake v. Wade*, 508 U.S. 464, 468 (1993) ("It is generally recognized that the interest allowed by [section] 506(b) will accrue until payment of the secured claim or until the effective date of the plan.").  Thus, the $750 million dollars of secured claims that are satisfied by paying the EFIH Second Lien Trustee under the Partial Repayment will cease to accrue interest under basic bankruptcy principles.

**III.    The Partial Repayment Is Permissible Under the Collateral Trust Agreement.**

25.    The collateral trust agreement that governed the prepetition EFIH secured debt (the "Collateral Trust Agreement") does not prevent EFIH from using the proceeds of the EFIH DIP Financing to consummate the Partial Repayment.  Notwithstanding this, in connection with the Debtors' motion to approve the proposed EFIH second lien DIP facility, the indenture trustee for the EFIH First Lien Notes (the "EFIH First Lien Trustee") previously objected to the repayment of the EFIH Second Lien Notes on the basis that the Collateral Trust Agreement prohibited the repayment [D.I. 1068].  The EFIH First Lien Trustee also initiated an adversary proceeding against the EFIH Second Lien Trustee and others.[5]  The complaint sought, among other things, to compel the EFIH Second Lien Trustee to hold back from any repayment of EFIH Second Lien Notes the amount of the alleged makewhole claims under the EFIH First Lien Notes.  By this Motion, the Debtors seek entry of the Repayment Order, which would authorize and direct the EFIH Second Lien Trustee to immediately pay the entire amount of the Partial Repayment to the holders of EFIH Second Lien Notes.

26.    The Collateral Trust Agreement provides that, before discharge of the EFIH First Lien Notes, EFIH may not make a payment to the EFIH Second Lien Trustee "from the proceeds resulting from a Sale of Collateral."  Collateral Trust Agreement § 2.4(c).  The Collateral Trust Agreement also provides that, during a bankruptcy and before discharge of the EFIH First Lien Notes, EFIH may not make a payment to the EFIH Second Lien Trustee "from the proceeds of Collateral."  *Id*.  Despite the ongoing litigation concerning alleged makewhole premiums under the EFIH First Lien Notes, the EFIH Debtors believe that the EFIH First Lien Notes have been

---

[5]    *CSC Trust Co. of Del. v. Computershare Trust Co.*, No. 14-50410 (Bankr. D. Del. June 20, 2014).

fully discharged and all amounts due were repaid in full at the closing of the EFIH DIP Facility. Therefore, these provisions are not applicable. The EFIH First Lien Trustee, however, continues to assert additional amounts under the EFIH First Lien Notes.[6]

27.    Even if the EFIH First Lien Notes have not been fully discharged, the cash that will be used to make the Partial Repayment is neither "proceeds resulting from a Sale of Collateral" nor "proceeds of Collateral." ***First***, the Partial Repayment will not be from "proceeds of the Sale of Collateral." The sole collateral for the EFIH First Lien Notes (when they were outstanding) was the equity interests in Oncor Electric Delivery Holdings Company LLC ("Oncor Holdings") held by EFIH. EFIH has not sold these equity interests. Nonetheless, the EFIH First Lien Trustee previously asserted that the proceeds of the EFIH DIP Facility were "proceeds of the Sale of Collateral." But the definition of "Sale of Collateral" does not reference secured financings—despite referencing very specific types of transactions that actually involve sales, like a "Sale and Lease-Back Transaction." EFH 9.75% Notes Indenture (Nov. 16, 2019) ("Reference Indenture") § 1.01, "Asset Sale."[7] Given that the Reference Indenture goes to extraordinary lengths to describe a secured financing itself, it would have specifically referred to a secured financing in this instance if that had been intended.

28.    ***Second***, the Partial Repayment will not be from "proceeds of Collateral," as the EFIH First Lien Trustee previously asserted with respect to the proposed full repayment of the EFIH Second Lien Notes. The Partial Repayment will be from *proceeds of the EFIH DIP*

---

[6]    *CSC Trust Co. of Del. v. EFIH*, No. 14-50363 (Bankr. D. Del. May 15, 2014).

[7]    Certain definitions from the Reference Indenture are incorporated by reference in the Collateral Trust Agreement. *See* Collateral Trust Agreement § 1.1, "Sale of Collateral," "Asset Sale."

*Facility*, not proceeds of the Oncor Holdings equity interests—*e.g.*, dividends from Oncor Holdings.  Thus, the Collateral Trust Agreement does not prohibit the Partial Repayment.

## Waiver of Bankruptcy Rules 6004(a) and 6004(h)

29.    To implement the foregoing successfully, the Debtors seek a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the 14-day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h).

## Notice

30.    The Debtors shall provide notice of this Motion on the date hereof via first class mail to:  (a) the U.S. Trustee; (b) counsel to the TCEH Creditors' Committee; (c) counsel to the EFH Creditors' Committee; (d) Wilmington Trust, N.A., in its capacity as administrative agent under the TCEH first lien credit agreement and collateral agent under the TCEH intercreditor agreements and counsel thereto; (e) Bank of New York Mellon Trust Company, N.A., in its capacity as indenture trustee under:  (i) the TCEH unsecured pollution control revenue bonds; and (ii) the EFCH 2037 Notes due 2037, and counsel thereto; (f) American Stock Transfer & Trust Company, LLC, in its capacity as indenture trustee under:  (i) the 9.75% EFH senior unsecured notes due 2019; (ii) the 10.0% EFH senior unsecured notes due 2020; (iii) the 10.875% EFH LBO senior unsecured notes due 2017; (iv) the 11.25%/12.0% EFH LBO toggle notes due 2017; (v) the 5.55% EFH legacy notes (series P) due 2014; (vi) the 6.50% EFH legacy notes (series Q) due 2024; and (vii) the 6.55% EFH legacy notes (series R) due 2034, and counsel thereto; (g) Computershare Trust Company, N.A. and Computershare Trust Company of Canada, in their capacities as indenture trustee under:  (i) the 11.0% EFIH senior secured second lien notes due 2021; and (ii) the 11.75% EFIH senior secured second lien notes due 2022, and counsel thereto; (h) UMB Bank, N.A. in its capacity as indenture trustee under:  (i) the 9.75%

EFIH senior unsecured notes due 2019; and (ii) the 11.25%/12.25% EFIH senior toggle notes due 2018, and counsel thereto; (i) Delaware Trust Company of Delaware in its capacity as indenture trustee under:  (i) the 6.875% EFIH senior secured notes due 2017; (ii) the 10.0% EFIH senior secured notes due 2020; and (iii), the 11.50% TCEH senior secured notes due 2020, and counsel thereto; (j) Law Debenture Trust Company of New York in its capacity as indenture trustee under:  (i) the 10.25% TCEH senior unsecured notes due 2015; and (ii) the 10.50%/11.25% TCEH senior toggle notes due 2016, and counsel thereto; (k) Wilmington Savings Fund Society, FSB in its capacity as indenture trustee under the 15.0% TCEH senior secured second lien notes due 2021, and counsel thereto; (l) counsel to certain holders of claims against the Debtors regarding each of the foregoing described in clauses (c) through (j); (m) the agent for the TCEH debtor-in-possession financing facility and counsel thereto; (n) the agent for the EFIH debtor-in-possession financing facility and counsel thereto; (o) counsel to certain holders of equity in Texas Energy Future Holdings Limited Partnership; (p) counsel to the Ad Hoc Committee of TCEH Unsecured Noteholders; (q) counsel to the Ad Hoc Committee of TCEH Second Lien Noteholders; (r) Oncor Electric Delivery Holdings Company LLC and counsel thereto; (s) Oncor Electric Delivery Company LLC and counsel thereto; (t) the Securities and Exchange Commission; (u) the Internal Revenue Service; (v) the Office of the United States Attorney for the District of Delaware; (w) the Office of the Texas Attorney General on behalf of the Public Utility Commission of Texas; (x) counsel to the Electric Reliability Council of Texas; and (y) those parties that have requested notice pursuant to Bankruptcy Rule 2002.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

**<u>No Prior Request</u>**

31.     Except as specified herein, no prior request for the relief sought in this Motion has been made to this or any other court.

**<u>Conclusion</u>**

32.     The Debtors respectfully request that the Court (a) enter the Repayment Order, substantially in the form attached hereto as **<u>Exhibit A</u>**, granting the relief requested in this Motion; (b) enter the Revised DIP Order, substantially in the form attached hereto as **<u>Exhibit B</u>**, implementing revisions necessary to permit such relief; and (c) grant such other and further relief as is appropriate under the circumstances.

*[Remainder of page intentionally left blank.]*

RLF1 11516169v.1

Dated: February 12, 2015
       Wilmington, Delaware

*/s/ Jason M. Madron*

**RICHARDS, LAYTON & FINGER, P.A.**
Mark D. Collins (No. 2981)
Daniel J. DeFranceschi (No. 2732)
Jason M. Madron (No. 4431)
920 North King Street
Wilmington, Delaware 19801
Telephone:     (302) 651-7700
Facsimile:     (302) 651-7701
Email:         collins@rlf.com
               defranceschi@rlf.com
               madron@rlf.com

-and-

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Edward O. Sassower, P.C. (admitted *pro hac vice*)
Stephen E. Hessler (admitted *pro hac vice*)
Brian E. Schartz (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022-4611
Telephone:     (212) 446-4800
Facsimile:     (212) 446-4900
Email:         edward.sassower@kirkland.com
               stephen.hessler@kirkland.com
               brian.schartz@kirkland.com

-and-

James H.M. Sprayregen, P.C. (admitted *pro hac vice*)
Marc Kieselstein, P.C. (admitted *pro hac vice*)
Chad J. Husnick (admitted *pro hac vice*)
Steven N. Serajeddini (admitted *pro hac vice*)
300 North LaSalle
Chicago, Illinois 60654
Telephone:     (312) 862-2000
Facsimile:     (312) 862-2200
Email:         james.sprayregen@kirkland.com
               marc.kieselstein@kirkland.com
               chad.husnick@kirkland.com
               steven.serajeddini@kirkland.com

Co-Counsel to the Debtors and Debtors in Possession

17