# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) Case No. 14-10979 (CSS) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |
| | ) **Re: D.I. 3527** |

## DECLARATION OF DAVID YING
## IN SUPPORT OF THE MOTION OF ENERGY FUTURE
## HOLDINGS CORP., ENERGY FUTURE INTERMEDIATE HOLDING
## COMPANY LLC, AND EFIH FINANCE INC. FOR ENTRY OF (A) ORDER
## (I) AUTHORIZING PARTIAL REPAYMENT OF EFIH SECOND LIEN
## NOTES; (II) APPROVING EFIH DIP CONSENT; AND (III) AUTHORIZING
## CONSENT FEE AND (B) REVISED EFIH FIRST LIEN DIP ORDER

I, David Ying, declare as follows:

1.  I am a Senior Managing Director of Evercore Group L.L.C. ("Evercore"), a financial advisory and investment banking firm with offices around the world and financial advisor and investment banker to the above-captioned debtors and debtors in possession (the "Debtors"). I submit this declaration (this "Declaration") in support of the *Motion of Energy Future Holdings Corp., Energy Future Intermediate Holding Company LLC, and EFIH Finance Inc. for Entry of (a) Order (i) Authorizing Partial Repayment of EFIH Second Lien Notes; (ii) Approving EFIH DIP Consent; and (iii) Authorizing Consent Fee and (b) Revised EFIH First Lien DIP Order* [D.I. 3527] (the "Motion").[2]

---

[1] The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, which are being jointly administered, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Motion.

2. Except where specifically noted, the statements in this Declaration are based on either my personal knowledge, information supplied or verified by the Evercore financial team that I supervise or the Debtors' personnel and third-party advisors, my review of relevant documents, or my opinion based upon my experience and knowledge of the Debtors' operations and financial condition. If I were called upon to testify, I could and would testify competently to the facts set forth herein. I am authorized to submit this Declaration on behalf of the Debtors.

3. I offer this declaration in support of the Debtors' motion requesting authorization of the Partial Repayment, approval of the EFIH DIP Consent, authorization of the Amendment Fee, and entry of the Revised DIP Order. In particular, I submit this Declaration to place before this Court evidence supporting my opinion that undertaking the Partial Payment, as well as executing the related DIP Amendments and paying the Amendment Fee, is a sound exercise of the EFIH Debtors' business judgment.

**Qualifications**

4. Evercore is one of the world's leading independent investment banking groups that serves a diverse set of clients around the world from 28 offices in North America, Europe, South America and Asia, including an office located at 55 East 52nd Street, New York, NY 10055. Evercore has expertise in domestic and cross border restructurings, mergers and acquisitions, debt and equity capital markets transactions, and other financial advisory services. Evercore has served as an experienced bankruptcy and restructuring advisor to debtors, bondholders, creditors' committees, single creditor classes and secured creditors, shareholders, and boards of directors in a variety of industries. Evercore is a member of the Financial Industry Regulatory Authority and the Securities Investor Protection Corporation.

5. I specialize in advising both debtors and creditors in financial restructurings and distressed mergers and acquisitions; raising capital for troubled businesses; and representing debtors and creditor constituencies in bankruptcy proceedings. I joined Evercore in 2005 and am a co-founder and head of the firm's Restructuring and Debt Advisory Group. I have over 30 years of experience in restructuring advisory, at Smith Barney and Miller Buckfire Ying & Co, in leveraged finance, at Drexel Burnham Lambert and Donaldson, Lufkin & Jenrette, and in private equity investing, at JLL Partners. I have a B.S. from the Massachusetts Institute of Technology and an M.B.A. from the Wharton School at the University of Pennsylvania.

**Basis for the Partial Repayment**

6. EFIH presently has approximately $7.556 billion in principal amount of funded secured debt. Of that amount, approximately $5.4 billion is owed under the EFIH DIP Facility and $2.156 billion is owed on the EFIH Second Lien Notes. Earlier in the cases, the Court approved the repayment of the $3.985 billion of EFIH first lien notes that were outstanding as of the Petition Date (the "<u>EFIH First Lien Notes</u>") using the lower-cost EFIH DIP Facility to allow the Debtors to save interest expense. The interest rate on the EFIH DIP Facility is currently 4.25%, whereas the weighted-average contractual interest rate on the EFIH Second Lien Notes is approximately 11.61% per year.[3] The interest rate on the EFIH Second Lien Notes is substantially above the rate on the EFIH DIP Facility and that EFIH could presently obtain in the market on a second lien DIP facility. And it is almost certain that the EFIH Second Lien Notes are oversecured.

---

[3] This rate does not include any alleged penalty interest associated with the applicable registration rights agreement. The Debtors reserve all rights with respect to the appropriate rate of postpetition interest on the EFIH Second Lien Notes.

7. By repaying $750 million of the EFIH Second Lien Notes, EFIH would save at least an estimated $66 million in total accrued interest claims in the event the Partial Repayment occurs on March 31, 2015 and the Debtors emerge from bankruptcy on December 31, 2015, before taking into account payment of the Consent Fee. If the case extends beyond the end of 2015, that figure would only increase, to an estimated $89 million as of March 31, 2016 and $105 million as of May 31, 2016. This is an estimated $52 million to $92 million of value, net of the Consent Fee, that would otherwise accrete to EFIH stakeholders, including potentially EFH Corp.

8. At this time, EFIH projects that it will have approximately $1.13 billion of cash on hand as of March 31, 2015, which is currently held in accounts that earn interest at between approximately 0.01% and 0.03% per year. If EFIH used $750 million of this cash to partially repay the EFIH Second Lien Notes, EFIH would still have adequate cash on hand, taking into account projected case expenses and the requirements of the EFIH DIP Facility's liquidity-maintenance covenant.

9. In addition, there is litigation pending between the Debtors and the indenture trustee for the EFIH Second Lien Notes (the "EFIH Second Lien Trustee") over the trustee's asserted entitlement to a makewhole premium.[4] The Debtors' position continues to be that the EFIH Second Lien Notes accelerated on the Petition Date without triggering any makewhole premium. Given that the EFIH Second Lien Notes have accelerated, repaying them as soon as practicable would prevent the continued accrual of postpetition interest claims under the repaid notes and thus maximize value for EFIH stakeholders.

---

[4] *See Computershare Trust Co. v. EFIH*, No. 14-50405 (Bankr. D. Del. May 5, 2014).

RLF1 11516174v.1

**Decision to Pursue the Partial Repayment**

10. From the outset of the chapter 11 cases, the Debtors have sought to reduce the accrual of claims for above-market interest on the EFIH secured notes. The EFIH DIP Facility included availability that the Debtors intended to use, together with the proceeds of their proposed EFIH second lien DIP facility, to repay the EFIH Second Lien Notes in full. The Debtors ultimately withdrew the motion to approve that proposed facility, which included an equity conversion feature, and instead pursued bidding procedures to market their economic interests in Oncor. But EFIH had already drawn all available funds under the EFIH DIP Facility, including those meant for repayment of the EFIH Second Lien Notes.

11. Since then, EFIH and EFH Corp. stakeholders have continued to encourage EFIH to repay the EFIH Second Lien Notes in whole or in part, in particular the EFH Creditors' Committee and the ad hoc group of EFIH unsecured noteholders. On January 2, 2015, the EFH Creditors' Committee submitted a letter to the Debtors requesting, in short, that EFIH "use available EFIH cash on hand to pay down the maximum possible amount" of the 11.75% EFIH Second Lien Notes.

12. The partial repayment will avoid at least a projected $66 million of accrued interest claims without necessitating the incurrence or approval of additional financing at this stage in the case. The Partial Repayment does not, however, foreclose the Debtors from seeking the Court's authority for further repayments at a later date should they determine it is in the best interests of their estates to do so in compliance with the terms of the DIP Documents. In determining to undertake the Partial Repayment, the EFIH Debtors' management, advisors, and boards considered the advantages and risks of this approach as well as the advantages and risks of a number of alternatives. Foremost among the factors that the EFIH Debtors' considered are

the resources of the Court and parties in interest to consider various courses of action in the Debtors' extraordinarily large and complex chapter 11 cases.  It was due in large part to these considerations that the Debtors determined that the Partial Repayment, instead of other potential alternatives, including incurring additional financing to fully repay the EFIH Second Lien Notes, is the best approach at this point in time to prevent the unnecessary accrual of above-market interest claims against EFIH.  On January 23, 2015, the boards of directors and managers of EFIH and EFH Corp. adopted resolutions that, among other things, authorize EFIH to undertake the Partial Repayment, execute the DIP Modifications, and pay related fees and expenses.  I believe that the Partial Repayment is in the best interests of the EFIH Debtors' estates.

### The DIP Amendments

13.     EFIH and EFIH Finance Inc. have agreed on the DIP Modifications with the DIP Agent and lenders that constitute the Required DIP Holders.  Under the EFIH DIP Consent, the Required DIP Holders authorized the Partial Repayment, the filing of this Motion, and entry of the Revised DIP Order.  In exchange, the Debtors agreed to pay the consenting lenders the Consent Fee, which is equal to 0.25% of the amounts outstanding under the EFIH DIP Facility that are owed to consenting lenders.  This results in a maximum $13.5 million Consent Fee.  The Consent Fee will be payable only upon the entry and effectiveness of the Repayment Order and the Revised DIP Order.  Although the EFIH Debtors negotiated at length to avoid or reduce the Consent Fee, the Required DIP Holders ultimately would not agree to the DIP Modifications without it.  I believe that the Amendment Fee is reasonable in light of the benefits provided by the Partial Repayment.

*[Remainder of page intentionally left blank.]*

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Dated: February 12, 2015

_____
David Ying
Senior Managing Director
Evercore Group L.L.C.