## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | Case No. 14-10979 (CSS) |
| Debtors. | (Jointly Administered) |
| | **Obj. Deadline:  March 6, 2015 at 4:00 p.m.** |

## SUMMARY COVER SHEET TO THE SECOND INTERIM
## FEE APPLICATION OF GIBSON, DUNN & CRUTCHER LLP
## SPECIAL COUNSEL TO THE DEBTORS AND DEBTORS
## IN POSSESSION, FOR THE PERIOD FROM SEPTEMBER 1, 2014
## THROUGH AND INCLUDING DECEMBER 31, 2014

In accordance with the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Bankruptcy Rules"), Gibson, Dunn & Crutcher LLP ("Gibson Dunn"), special counsel to the above-captioned debtors and debtors in possession (collectively, the "Debtors"), submits this summary (this "Summary") of fees and expenses sought as actual, reasonable, and necessary in the fee application to which this Summary is attached (the "Fee Application")[2] for the period from September 1, 2014 through December 31, 2014 (the "Fee Period").

Gibson Dunn submits the Fee Application as an interim fee application in accordance with the *Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Professionals* [D.I. 2066] (the "Interim Compensation Order") and the *Stipulation and Order Appointing a Fee Committee* [D.I. 1896] (the "Fee Committee Order").

---

[1]  The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810.  The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201.  Due to the large number of debtors in these chapter 11 cases, which are being jointly administered, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

[2]  Capitalized terms used but not otherwise defined in this Summary shall have the meanings ascribed to such terms in the Fee Application.

| General Information | |
| --- | --- |
| Name of Applicant: | Gibson, Dunn & Crutcher LLP |
| Authorized to Provide Services to: | Energy Future Holdings Corp, et al. Debtors and Debtors in Possession |
| Petition Date: | April 29, 2014 |
| Date of Order Authorizing the Debtors to Retain Gibson Dunn [D.I. 2058]: | September 16, 2014, *nunc pro tunc* to April 29, 2014 |

| Summary of Fees and Expenses Sought in the Fee Application | |
| --- | --- |
| Period for Which Compensation and Reimbursement is Sought in the Fee Application: | September 1, 2014 through December 31, 2014 |
| Amount of Compensation Sought as Actual, Reasonable, and Necessary for the Fee Period: | $484,484.80[3] |
| Amount of Expense Reimbursement Sought as Actual, Reasonable, and Necessary for the Fee Period: | $946.97 |
| Total Compensation and Expense Reimbursement Requested for the Fee Period: | $485,431.77 |

| Rate Increases Applicable to the Fee Period | |
| --- | --- |
| Total Amount of Compensation Sought for the Fee Period, Calculated Using Rates as of the Date of Retention: | $484,484.80 |

---

[3]   This amount reflects a downward adjustment of $855.00 in relation to matter number 17 based on Gibson Dunn's agreement to only apply the $630/hr blended rate to litigation, and not corporate, associates.

RLF1 11519081v.1

**Summary of Past Requests for Compensation and Prior Payments**

| | |
|---|---|
| Total Amount of Compensation Previously Requested Pursuant to the Interim Compensation Order to Date: | $786,925.00 |
| Total Amount of Expense Reimbursement Previously Requested Pursuant to the Interim Compensation Order to Date: | $1,835.07 |
| Total Compensation Approved Pursuant to the Interim Compensation Order to Date: | $775,347.00 |
| Total Amount of Expense Reimbursement Approved Pursuant to the Interim Compensation Order to Date: | $1,793.65 |
| Total Allowed Compensation Paid to Date: | $1,049,936.84 |
| Total Allowed Expenses Paid to Date: | $2,223.03 |
| Compensation Sought in this Application Already Paid Pursuant to the Interim Compensation Order But Not Yet Allowed: | $274,589.84 |
| Expenses Sought In This Application Already Paid Pursuant to the Interim Compensation Order But Not Yet Allowed: | $429.38 |

Date:   February 13, 2015
      Dallas, Texas

/s/ Robert B. Little

**GIBSON, DUNN & CRUTCHER LLP**
Robert B. Little
2100 McKinney Avenue
Dallas, TX 75201
Telephone:  (214) 698-3260
Facsimile:  (214) 571-2900
Email:       RLittle@gibsondunn.com

*Special Counsel to the Debtors*
*and Debtors in Possession*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) | Case No. 14-10979 (CSS) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**SECOND INTERIM FEE APPLICATION OF GIBSON, DUNN & CRUTCHER LLP
SPECIAL COUNSEL TO THE DEBTORS AND DEBTORS
IN POSSESSION, FOR THE PERIOD FROM SEPTEMBER 1, 2014
THROUGH AND INCLUDING DECEMBER 31, 2014**

Gibson, Dunn & Crutcher LLP ("Gibson Dunn"), special counsel to the above-captioned debtors and debtors in possession (collectively, the "Debtors") in these chapter 11 cases (the "Chapter 11 Cases"), hereby submits this second interim fee application (the "Fee Application") for allowance of compensation for professional services provided in the amount of $484,484.80 and reimbursement of actual and necessary expenses in the amount of $946.97 that Gibson Dunn incurred for the period from September 1, 2014 through December 31, 2014 (the "Fee Period"). In support of this Fee Application, Gibson Dunn submits the declaration of Robert B. Little, a partner at Gibson Dunn, (the "Little Declaration"), which is attached hereto as **Exhibit A** and incorporated by reference. In further support of this Fee Application, Gibson Dunn respectfully states as follows:

**Preliminary Statement**

1.      During the Fee Period, Gibson Dunn advised the Debtors in connection with

---

[1]     The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, for which joint administration has been granted, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

certain litigation, corporate, and other matters.  The matters are identified as services provided to all Debtors or specifically to (a) Energy Future Holdings Corp. ("EFH Corp."), (b) Energy Future Intermediate Holding Company LLC ("EFIH"), and (c) Energy Future Competitive Holdings Company LLC and each of its direct and indirect subsidiaries that are Debtors in the Chapter 11 Cases (collectively, the "TCEH Debtors").

2.    ***Litigation Matters***.  During the Fee Period, Gibson Dunn represented the TCEH Debtors in litigation matters, including: (a) multiple lawsuits with FPL Energy, LLC; (b) a Freedom of Information Act dispute; (c) disputes with the Sierra Club involving claimed violations of the Clean Air Act at the Martin Lake Power Plant and the Big Brown Power Plant; and (d) a lawsuit brought by the EPA with respect to certain coal-fueled power plants. Specifically, Gibson Dunn attended to issues pertaining to the applicability and effects of the automatic stay on the Debtors' prepetition litigation; counseled the TCEH Debtors on strategies for continued litigation and counterclaims, negotiated case schedules; and assisted the Debtors in negotiating a very favorable global settlement agreement that resolved multiple disputes with the Sierra Club.

3.    ***Corporate Matters***.  During the Fee Period, Gibson Dunn represented the Debtors in general and special transactional matters and provided advice to the Debtors in connection with required filings with the Securities and Exchange Commission (the "SEC").  These matters included (a) conducting analysis, providing advice, and preparing materials regarding corporate governance matters and (b) reviewing and revising business-related risk factors to be included in the Debtors' disclosure statements.  During the Fee Period, Gibson Dunn also provided advice to EFH Corp. in connection with required filings with the SEC, including reviewing and revising the annual report on Form 10-K, quarterly report on Form 10-Q, and current reports on Form 8-

2

K.

4.      ***Other Matters***.  During the Fee Period, Gibson Dunn assisted the Debtors with several tax issues, including research and analysis regarding cancellation of indebtedness income and a potential solar power investment involving investment tax credits.

In short, during the Fee Period, Gibson Dunn spent considerable time advising the Debtors in connection with corporate, litigation, and other non-bankruptcy matters.  In light of the above, and as more fully set forth herein, the Court should approve this Fee Application.

## Jurisdiction

5.      The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

6.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

7.      The bases for the relief requested herein are sections 330 and 331 of title 11 of the United States Code (the "Bankruptcy Code"), Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), Rules 2016-1 and 2016-2 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Bankruptcy Rules"), the *Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Professionals* [D.I. 2066] (the "Interim Compensation Order"), and the *Stipulation and Order Appointing a Fee Committee* [D.I. 1896] (the "Fee Committee Order").

## Background

8.       On April 29, 2014 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a)

3

and 1108 of the Bankruptcy Code.  On June 5, 2014, the Court entered an order [D.I. 849] for the joint administration of the Chapter 11 Cases.  The Court has not appointed a trustee or examiner in the Chapter 11 Cases.  The Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") formed an official committee of unsecured creditors (the "Creditors' Committee") in the Chapter 11 Cases on May 13, 2014 [D.I. 420].  Further information regarding the Debtors' business operations and capital structure is set forth in the declaration of Paul Keglevic in support of the Debtors' first day motions [D.I. 98].

9.      On September 16, 2014, the Court entered the Interim Compensation Order, which sets forth the procedures for interim compensation and reimbursement of expenses for all professionals in these cases.

10.     Given the size and complexity of the Chapter 11 Cases, the U.S. Trustee, the Debtors, and the Creditors' Committee agreed to recommend that the Court appoint a fee committee to review and report, as appropriate, on interim and final fee applications filed by all of the Debtors' retained professionals in accordance with 11 U.S.C. §§ 328, 330, and 331 of the Bankruptcy Code and the Interim Compensation Order (the "Fee Committee").  On August 21, 2014, the Court entered the Fee Committee Order, appointing the Fee Committee and establishing the procedures governing the Fee Committee's review of the Debtors' retained professionals applications for compensation and the resolution of any concerns raised during such review.  On October 3, 2014, and on October 7, 2014, the Fee Committee distributed memoranda regarding fee and expense guidelines for professionals retained in the Chapter 11 Cases (the "Fee Committee Guidelines").  Gibson Dunn believes that the relief requested herein complies with those guidelines.

11.     On October 30, 2014, Gibson Dunn filed its first fee application [D.I. 2657] (the

"First Fee Application"), requesting interim approval and allowance of the fees and expenses incurred for the period from April 29, 2014 through August 31, 2014 (the "First Interim Compensation Period"). As explained in the Fee Committee's report filed on December 29, 2014 [D.I. 3148], Gibson Dunn agreed to reduce its fees to $775,347.00 and expenses to $1,793.65. No party filed an objection to the First Fee Application. On December 29, 2014, the Court entered an order [D.I. 3148] approving Gibson Dunn's fees and expenses for the First Interim Compensation Period on an interim basis.

### The Debtors' Retention of Gibson Dunn

12.     On September 16, 2014, the Court entered the *Order Authorizing the Debtors to Retain and Employ Gibson, Dunn & Crutcher LLP as Special Counsel for Certain Corporate and Litigation Matters, Effective* Nunc Pro Tunc *to the Petition Date* [D.I. 2058] (the "Retention Order"), attached hereto as **Exhibit B** and incorporated by reference. The Retention Order authorizes the Debtors to compensate and reimburse Gibson Dunn in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, the Fee Committee Order, and the Interim Compensation Order. The Retention Order also authorizes the Debtors to compensate Gibson Dunn at Gibson Dunn's hourly rates charged for services of this type and to reimburse Gibson Dunn for Gibson Dunn's actual and necessary out-of-pocket expenses incurred, subject to application to this Court. The particular terms of Gibson Dunn's engagement are detailed in the engagement letter by and between Gibson Dunn and Energy Future Holdings Corp., effective as of May 9, 2011, and attached hereto as **Exhibit C** (the "Engagement Letter").

13.     Pursuant to the Retention Order, Gibson Dunn was retained to represent the Debtors as Special Counsel for certain corporate, litigation, public policy, and other non-bankruptcy matters effective *nunc pro tunc* to the Petition Date.

14.     To comply with the *Guidelines for Reviewing Applications for Compensation and*

*Reimbursement of Expenses Filed Under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases* (the "U.S. Trustee Guidelines", and together with the Fee Guidelines, the "Guidelines") promulgated by the Office of the United States Trustee, Gibson Dunn submitted to the Debtors a budget and staffing plan for the Fee Period, attached hereto as **Exhibit D**.[2]

### Disinterestedness of Gibson Dunn

15.    To the best of Gibson Dunn's knowledge and as disclosed in the *Declaration of Robert B. Little in Support of the Application of the Debtors for an Order Authorizing the Debtors to Retain and Employ Gibson, Dunn & Crutcher LLP as Special Counsel for Certain Corporate and Litigation Matters, Effective* Nunc Pro Tunc *to the Petition Date* [D.I. 662] (the "First Little Declaration") and the *First Supplemental Declaration of Robert B. Little in Support of the Application of the Debtors for an Order Authorizing the Debtors to Retain and Employ Gibson, Dunn & Crutcher LLP as Special Counsel for Certain Corporate and Litigation Matters, Effective* Nunc Pro Tunc *to the Petition Date* [D.I. 2036] (the "Supplemental Little Declaration"), (a) Gibson Dunn does not hold or represent any interest adverse to any of the Debtors with respect to the matters on which Gibson Dunn is retained and (b) other than as set forth in the First Little Declaration and the Supplemental Little Declaration, Gibson Dunn has no relationship to any of the Debtors, any of the Debtors' significant creditors, equity interest owners, other known parties in interest in the Chapter 11 Cases (as identified by the Debtors), or to the Debtors' professionals that are known to be assisting the Debtors in the Chapter 11 Cases.

16.    Gibson Dunn may have in the past represented, may currently represent, and likely in the future will represent parties in interest in connection with matters unrelated to the

---

[2]    Based on communications from the Fee Committee, and in consultation with the Debtors, Gibson Dunn did not submit monthly budgets for September 2014 and October 2014 *ex ante*. Rather, the attached budgets for September and October were prepared subsequently.

Debtors in these Chapter 11 Cases.  In the First Little Declaration and Supplemental Little Declaration, Gibson Dunn disclosed its connections to parties in interest that it has been able to ascertain using its reasonable efforts.  Gibson Dunn will update such disclosures, as appropriate, if Gibson Dunn becomes aware of relevant and material new information.

17.    Gibson Dunn performed the services for which it is seeking compensation on behalf of the Debtors and their estates, and not on behalf of any committee, creditor, or other entity.

18.    Except to the extent of the retainer paid to Gibson Dunn as described in the First Little Declaration, during the period covered by this Fee Application, Gibson Dunn has received no payment and no promises for payment from any source other than the Debtors for services provided or to be provided in any capacity whatsoever in connection with the Chapter 11 Cases. There is no agreement or understanding between Gibson Dunn and any other person, other than attorneys of Gibson Dunn, for the sharing of compensation to be received for services provided in the Chapter 11 Cases.

**Summary of Compliance with Interim Compensation Order and Fee Committee Order**

19.    This Fee Application has been prepared in accordance with the Interim Compensation Order and the Fee Committee Order.

20.    Gibson Dunn seeks interim compensation for professional services provided to the Debtors during the Fee Period in the amount of $484,484.80[3] and reimbursement of actual and necessary expenses incurred in connection with providing such services in the amount of $946.97.  During the Fee Period, Gibson Dunn attorneys and paraprofessionals expended a total

---

[3]    This amount reflects a downward adjustment of $855.00 in relation to matter number 17 based on Gibson Dunn's agreement to only apply the $630/hr blended rate to litigation, and not corporate, associates.

of 792.5 hours for which compensation is requested.

21.    In accordance with the Interim Compensation Order and the Fee Committee Order, Gibson Dunn has submitted Monthly Fee Statements (as defined in the Interim Compensation Order) for each of September, October, November, and December 2014, seeking payment of (a) 80% of the fees incurred by the Debtors for reasonable and necessary professional services provided by Gibson Dunn and (b) 100% of the actual and necessary costs and expenses incurred by Gibson Dunn in connection with the services provided to the Debtors for each month.  As of the date hereof, Gibson Dunn has received payments totaling $275,019.22 ($274,589.84 of which was for services provided and $429.38 of which was for reimbursement of expenses) for the Fee Period.

22.    Accordingly, by this Fee Application, and to the extent not already paid by the time of the hearing on this Fee Application, Gibson Dunn seeks payment of all amounts, including the remaining $97,067.96, which represents the 20% holdback on all fees incurred during the Fee Period.

### Fees and Expenses Incurred During Fee Period

**A.    Customary Billing Disclosures**

23.    Gibson Dunn's hourly rates are set at a level designed to compensate Gibson Dunn fairly for the work of its attorneys and paraprofessionals and to cover fixed and routine expenses.  The hourly rates and corresponding rate structure utilized by Gibson Dunn in the Chapter 11 Cases are equivalent to or less than the hourly rates and corresponding rate structure used by Gibson Dunn for similar complex corporate, securities, litigation, and restructuring matters, whether in court or otherwise, regardless of whether a fee application is required.  The rates and rate structure reflect that such complex matters typically are national in scope and typically involve great complexity, high stakes, and severe time pressures.

24.    For the convenience of the Court and all parties in interest, attached hereto as **Exhibit E** is a summary of blended hourly rates for timekeepers who billed to non-bankruptcy matters and blended hourly rates for timekeepers who billed to the Debtors during the Fee Period.

**B.    Fees Incurred During Fee Period**

25.    In the ordinary course of Gibson Dunn's practice, Gibson Dunn maintains computerized records of the time expended to provide the professional services required by the Debtors and their estates.  For the convenience of the Court and all parties in interest, attached hereto as **Exhibit F** is a summary of fees incurred and hours expended during the Fee Period, setting forth the following information:

- the name of each attorney and paraprofessional for whose work on compensation is sought;

- each attorney's year of bar admission and area of practice concentration;

- the aggregate time expended and fees billed by each attorney and each paraprofessional during the Fee Period;

- the hourly billing rate for each attorney and each paraprofessional at Gibson Dunn's current billing rates;

- the hourly billing rate for each attorney and each paraprofessional as disclosed in the Fee Application;

- the number of rate increases since the inception of the case; and

- a calculation of total compensation requested using the rates disclosed in the Fee Application.

**C.    Expenses Incurred During Fee Period**

26.    In the ordinary course of Gibson Dunn's practice, Gibson Dunn maintains a record of expenses incurred in the rendition of the professional services required by the Debtors and their estates and for which reimbursement is sought.  For the convenience of the Court and

9

all parties in interest, attached hereto as **Exhibit G** is a summary for the Fee Period, setting forth the total amount of reimbursement sought with respect to each category of expenses for which Gibson Dunn is seeking reimbursement. This out-of-pocket disbursement sum is broken down into categories of charges, and may include, among other things, telephone and telecopier toll and other charges, mail and express mail charges, special or hand delivery charges, document processing and photocopying charges, charges for mailing supplies (including, without limitation, envelopes and labels) provided by Gibson Dunn to outside copying services for use in mass mailings, travel expenses, expenses for "working meals," computerized research, transcription costs, as well as non-ordinary overhead expenses such as secretarial and other overtime.

## Proposed Payment Allocation

27.    In accordance with paragraph 2(b) of the Interim Compensation Order, Gibson Dunn proposes the following allocation of the fees and expenses sought in this Application among (a) EFH Corp., (b) EFIH, and (c) the TCEH Debtors:

| Direct Benefit Fees:  $307,458.27 (comprised of  $306,511.30 in fees and $946.97 in expenses) | |
|---|---|
| **Debtor(s)** | **Amount** |
| EFH Corp. | $69,150.50 |
| EFIH | $0.00 |
| TCEH Debtors | $238,307.77 |
| *Total* | $307,458.27 |
| Collective Benefit Fees:[4]  $177,973.50 (comprised of $177,973.50 in fees and $0.00 in expenses) | |
| **Debtor(s)** | **Amount** |
| EFH Corp. | $51,329.52 |
| EFIH | $0.00 |
| TCEH Debtors | $126,643.98 |
| *Total* | $177,973.50 |
| *Grand Total* | $485,431.77 |

---

[4]    Matter Categories applicable to all Debtors are allocated to each Debtor in the same proportion as the amount incurred by each Debtor to its direct benefit on a monthly basis.

**<u>Summary of Legal Services Provided During the Fee Period</u>**

28.     As discussed above, during the Fee Period, Gibson Dunn provided extensive and important professional services to the Debtors in connection with certain corporate, litigation, and other non-bankruptcy matters.

29.     To provide a meaningful summary of Gibson Dunn's services provided on behalf of the Debtors and their estates, Gibson Dunn has established, in accordance with its internal billing procedures, certain subject matters categories (each, a "<u>Matter Category</u>").  The following is a summary, by Matter Category, of the professional services provided by Gibson Dunn during the Fee Period.  This summary is organized in accordance with Gibson Dunn's internal system of matter numbers.  A schedule setting forth a description of each Matter Category utilized in this case, the number of hours expended by Gibson Dunn partners, associates, and paraprofessionals for each Matter Category, and the aggregate fees associated with each Matter Category is attached hereto as **<u>Exhibit H</u>**.

30.     In addition, subject to redaction for attorney-client privilege, work product doctrine, and confidentiality where necessary to protect the Debtors and their estates, Gibson Dunn's computerized records of time expended providing professional services to the Debtors and their estates are attached hereto as **<u>Exhibit I</u>**, and Gibson Dunn's records of expenses incurred during the Fee Period in the rendition of professional services to the Debtors and their estates are attached as **<u>Exhibit J</u>**.

A.     **Applicable to All Debtors**

1.     **Tax Issues (Matter No. 12)**

Fees: $14,169.00        Total Hours: 19.1

31.     This category includes all work related to tax advice and analysis in connection with, among other things, post-bankruptcy debt financing.  During the Fee Period, Gibson Dunn

11

assisted the Debtors with several tax issues, including research and analysis of the considerations of deferred cancellation of indebtedness income and an analysis of a potential investment in solar power involving investment tax credits. Gibson Dunn also analyzed materials created by and consulted with the Debtors' tax specialists regarding such issues.

### 2. Case Administration, Employment, and Fee Applications (Matter No. 30)

Fees: $152,987.00      Total Hours: 322.0

32. This category includes all work performed in connection with employment applications, fee statements, fee applications, U.S. Trustee compliance, and other bankruptcy-related administrative responsibilities.

33. During the Fee Period, Gibson Dunn spent a considerable amount of time coordinating with the Debtors' bankruptcy counsel with respect to the *Application of Energy Future Holdings Corp.* et al*., for an Order Authorizing the Debtors to Retain and Employ Gibson, Dunn & Crutcher LLP as Special Counsel for Certain Corporate and Litigation Matters, Effective* Nunc Pro Tunc *to the Petition Date* [D.I. 662] (the "Retention Application"). Gibson Dunn also finalized the Retention Application, gathered additional information and prepared the Supplemental Little Declaration in response to U.S. Trustee comments and questions, and participated telephonically in a hearing regarding the Retention Application.

34. Additionally, Gibson Dunn spent a substantial amount of time coordinating with the Fee Committee, the Fee Committee's professionals, the Debtors, and the Debtor's professionals regarding the development, changes, and implementation of the Fee Committee Guidelines. The amount of time spent in this area was necessary to ensure ongoing compliance with the Fee Committee Guidelines and a smooth review process with respect to Gibson Dunn's requested fees and expenses.

35.    Gibson Dunn also prepared Monthly Fee Statements and its First Fee Application, taking steps to prevent the disclosure of privileged or otherwise confidential material and ensuring that time entries were documented in accordance with the Guidelines.  Gibson Dunn had multiple correspondence with the Fee Committee regarding the First Fee Application and was able to consensually resolve any issues such that Gibson Dunn's requested fees and expenses, as modified, were approved by the Court on December 29, 2014.  Gibson Dunn also participated in multiple hearings related to its First Fee Application.

36.    Each of Gibson Dunn's professionals and paraprofessionals performing services in this category was keenly aware of the importance of performing such services in the most efficient manner possible in order to minimize expenses to the estate.

### 3.    Budgeting (Matter No. 46)

Fees: $10,817.50        Total Hours: 16.7

37.    This category includes all work performed in connection with preparing and submitting budget and staffing plans as required under the Guidelines.

## B.    Applicable to TCEH Debtors

### 1.    Litigation:  FPL v. TXU (Matter No. 8)

Fees: $6,467.50        Total Hours: 9.0

38.    This category includes all work related to representing the TCEH Debtors in litigation with FPL Energy, LLC (together, with its affiliates, "FPL").  During the Fee Period, Gibson Dunn attended to the lifting of this Court's stay of the FPL litigation and the reinstatement of the appeal in the Texas Court of Appeals.

2.      **Litigation:  FOIA Disputes and EPA Matters (Matter No. 13)**

Fees: $13,758.00      Total Hours: 22.1

39.      This category includes all work related to representing the TCEH Debtors in a Freedom of Information Act dispute.  During the Fee Period, Gibson Dunn worked with co-counsel to prepare a response and a sur-reply in opposition to a motion to intervene, participated in a scheduling hearing, prepared and exchanged initial disclosures, and negotiated an agreed scheduling order with opposing counsel.

3.      **Litigation:  Sierra Club - Western District of Texas (Matter No. 17)**

Fees: $87,319.30      Total Hours: 121.7

40.      This category includes all work related to representing the TCEH Debtors in a dispute with the Sierra Club involving claimed violations of the Clean Air Act at the Big Brown Power Plant.  During the Fee Period, Gibson Dunn formulated a strategy for executing and collecting on the court's award of attorney's fees and assisted the TCEH Debtors in negotiating a very favorable global settlement agreement that resolved virtually all potential and ongoing disputes with the Sierra Club.

4.      **Litigation:  NSR Case (Matter No. 18)**

Fees: $115,211.00      Total Hours: 152.7

41.      This category includes all work related to representing the TCEH Debtors in a lawsuit brought by the EPA with respect to certain coal-fueled power plants.  During the Fee Period, Gibson Dunn helped the TCEH Debtors prepare and file a motion to dismiss the case and a reply in support of that motion; formulate their strategy for defending the litigation; negotiate, draft, and file with the court a joint status report on scheduling and substantive issues; and negotiate the terms of a protective order and an e-discovery order with opposing counsel.

14

### 5.    Litigation:  2004 FPL Lawsuit (Matter No. 22)

Fees: $12,644.00        Total Hours: 20.0

42.    This category includes all work related to representing the TCEH Debtors in a lawsuit with FPL initiated in 2004.  During the Fee Period, Gibson Dunn attended to the lifting of this Court's stay of the FPL litigation and the reinstatement of the appeal in the Texas Court of Appeals.

### 6.    Litigation:  2011 FPL Lawsuit (Matter No. 23)

Fees: $1,961.00        Total Hours: 3.2

43.    This category includes all work related to representing the TCEH Debtors in a lawsuit with FPL initiated in 2011.  During the Fee Period, Gibson Dunn attended to issues pertaining to the preparation of a joint motion for a scheduling order and related procedural issues.

## C.    Applicable to EFIH Debtors

44.    Gibson Dunn did not perform any services on behalf of EFIH during the Fee Period.

## D.    Applicable to EFH Corp. Debtors

### 1.    SEC Matters (Matter No. 31)

Fees: $19,104.50        Total Hours: 24.7

45.    This category includes all work related to SEC filings and providing SEC-related advice to EFH Corp.  During the Fee Period, Gibson Dunn provided advice to EFH Corp. in connection with filings that EFH Corp. was required to make with the SEC. This advice included drafting, reviewing, and revising current reports on Form 8-K with respect to compensation matters and providing advice with respect to the same; analyzing issues and providing advice with respect to required SEC disclosure regarding conflict minerals; reviewing

15

and revising the EFH Corp. quarterly report on Form 10-Q for the third quarter of 2014; and reviewing and revising the disclosure in EFH Corp.'s annual report on Form 10-K for the year ended December 31, 2014.

**2. Corporate Matters (Matter No. 32)**

Fees: $50,046.00        Total Hours: 81.3

46.    This category includes all work on general and special transactional matters involving EFH Corp. These matters included conducting analysis and providing advice regarding corporate governance policies for EFH Corp.'s subsidiaries and preparing presentations and policies with respect to the same; reviewing and providing advice with respect to questionnaires that are circulated to EFH Corp.'s officers and directors in connection with EFH Corp.'s disclosure obligations; providing advice with respect to EFH Corp.'s board committee charters; reviewing and revising business-related risk factors to be included in the EFH Corp. disclosure statement; and reviewing organizational documents of Oncor Holdings and Oncor Electric LLC and providing advice under the Delaware Limited Liability Company Act with respect to the same.

**Actual and Necessary Expenses Incurred by Gibson Dunn**

47.    As set forth in **Exhibit I** attached hereto, and as summarized in **Exhibit G** attached hereto, Gibson Dunn has incurred a total of $946.97 in expenses on behalf of the Debtors during the Fee Period. These charges are intended to reimburse Gibson Dunn's direct operating costs, which are not incorporated into the Gibson Dunn hourly billing rates. Only clients who actually use services of the types set forth in **Exhibit I** of this Fee Application are separately charged for such services. The effect of including such expenses as part of the hourly billing rates would impose that cost upon clients who do not require extensive photocopying and other facilities and services.

16

**Gibson Dunn's Requested Compensation and Reimbursement Should be Allowed**

48.     As explained below, Gibson Dunn respectfully submits that the services for which it seeks compensation in this Fee Application were, at the time provided, necessary for and beneficial to the Debtors and their estates and were provided to protect and preserve the Debtors' estates.     Gibson Dunn further believes that it performed the services for the Debtors economically, effectively, and efficiently, and the results obtained benefited not only the Debtors, but also the Debtors' estates and the Debtors' constituents.     Gibson Dunn further submits that the compensation requested herein is reasonable in light of the nature, extent, and value of such services to the Debtors, their estates, and all parties in interest.     Accordingly, Gibson Dunn respectfully submits that approval of the compensation sought herein is warranted and should be approved.

**A.      Reasonable and Necessary Fees Incurred in Providing Services to the Debtors**

49.     Section 331 of the Bankruptcy Code provides for interim compensation of professionals and incorporates the substantive standards of section 330 of the Bankruptcy Code to govern the Court's award of such compensation.     Section 330 of the Bankruptcy Code provides that a court may award a professional employed under section 327 of the Bankruptcy Code "reasonable compensation for actual necessary services rendered . . . and reimbursement for actual, necessary expenses."   11 U.S.C. § 330(a)(1).   Section 330 also sets forth the criteria for the award of such compensation and reimbursement:

> In determining the amount of reasonable compensation to be awarded, the court should consider the nature, extent, and the value of such services, taking into account all relevant factors, including—
>
> > (A)     the time spent on such services;
> >
> > (B)     the rates charged for such services;
> >
> > (C)     whether the services were necessary to the administration of, or beneficial at the time at which the service was

17

rendered toward the completion of, a case under this title;

(D)     whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;

(E)     with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and

(F)     whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. § 330(a)(3).

50.     As analyzed below, Gibson Dunn submits that the elements governing awards of compensation justify the allowance requested.

**1.     The Time and Labor Required**

51.     During the Fee Period, 792.5 recorded hours have been expended by Gibson Dunn's partners, associates, and paraprofessionals in providing the requested professional services.  Gibson Dunn has made every effort to coordinate its efforts with those of the Debtors' bankruptcy counsel so as to avoid any duplication of efforts.  The number of hours spent by Gibson Dunn is commensurate with the defined tasks Gibson Dunn has performed and continues to perform on the matters described herein.

**2.     The Rates Charged for Such Services**

52.     During the Fee Period, Gibson Dunn's hourly billing rates ranged from $1,415.00 to $790.00 per hour for partners, from $740.00 to $435.00 for of counsel and associates, and from $380.00 to $355.00 for paraprofessionals.  Based on the recorded hours expended by Gibson Dunn's attorneys and paraprofessionals, the average hourly billing rate for Gibson Dunn's services was $611.34.

53.     Gibson Dunn's hourly rates are set at a level designed to compensate Gibson

18

Dunn fairly for the work of its attorneys and paraprofessionals and to cover certain fixed and routine overhead expenses. Hourly rates vary with the experience and seniority of the individuals assigned. These hourly rates are subject to periodic adjustments to reflect economic and other conditions and are consistent with the rates charged elsewhere.

54.     The hourly rates and corresponding rate structure utilized by Gibson Dunn are equivalent to or less than the hourly rates and corresponding rate structure used by Gibson Dunn for similar complex corporate, securities, litigation, and restructuring matters, whether in court or otherwise, regardless of whether a fee application is required. Specifically, in light of the long tenure of Gibson Dunn's relationship with the Debtors and the volume of matters handled by Gibson Dunn for the Debtors, Gibson Dunn and the Debtors have, with respect to specified matters, negotiated reduced rates and alternative fee arrangements, which has resulted in lower-than-normal billing rates for some attorneys.

**3.      The Necessity of the Services and the Benefit to the Estate**

55.     As detailed above, the services Gibson Dunn provided to the Debtors have conferred substantial benefit on the Debtors' estates. Gibson Dunn's services to the Debtors have also served the desired goal of allowing for continuity of service in these non-bankruptcy matters. In providing these essential non-bankruptcy services, Gibson Dunn has allowed Debtors' bankruptcy counsel to focus on issues more closely related to the reorganization of Debtors' operations.

**4.      The Complexity, Importance, Nature of, and the Time Spent on Tasks**

56.     Gibson Dunn represents and can demonstrate to this Court that the services were performed in a reasonable amount of time, given the complexity of the issues involved and the many and varied legal issues facing the Debtors. Gibson Dunn's detailed and thorough time

records demonstrate that the time expended on various tasks was necessary and appropriate to the vigorous representation of the Debtors.  From the earliest stages of Gibson Dunn's involvement, attempts were made to limit the hours worked, and to avoid duplication of effort and other unnecessary costs.  On occasion, Gibson Dunn attorneys provided services on behalf of the Debtors under severe time constraints.  Moreover, during the Fee Period, Gibson Dunn attorneys were required to perform services on behalf of the Debtors to the preclusion of other firm matters and clients.

**5.    The Experience, Reputation, and Ability of the Attorneys Providing Services**

57.    Gibson Dunn's services have been provided in a highly efficient manner by attorneys who have achieved a high degree of expertise in their respective fields.  Both Gibson Dunn's litigation and corporate departments frequently receive recognition for their skill and achievements.  Gibson Dunn's highly professional and expert group of attorneys has ensured that the representation of the Debtors has progressed in an efficient and expeditious manner.

58.    Because the services provided by Gibson Dunn were, by design, primarily non-bankruptcy in nature, Gibson Dunn submits that board certification in bankruptcy law is not a particularly relevant factor.  In preparing this Fee Application and when otherwise appropriate, however, the Gibson Dunn attorneys performing services for the Debtors did employ the assistance of experienced attorneys in Gibson Dunn's bankruptcy department.

**6.    Customary Compensation**

59.    Gibson Dunn relies on the Court's experience and knowledge with respect to the compensation awards in similar cases.  Given that frame of reference, Gibson Dunn submits that, in light of the circumstances of the case and the substantial benefits derived from Gibson Dunn's assistance, compensation in the amount requested is fair and reasonable.

20

60.     Based on the factors to be considered under sections 330 and 331 of the Bankruptcy Code, the results Gibson Dunn has achieved to date more than justify allowance in full of Gibson Dunn's compensation and reimbursement request.

**B.     Reasonable and Necessary Expenses Incurred in Providing Services to the Debtors**

61.     For the Fee Period, Gibson Dunn requests reimbursement of $946.97 for reasonable and necessary out-of-pocket expenses incurred on behalf of the Debtors.

62.     Gibson Dunn's normal billing rates do not take these expenses into consideration. Rather, Gibson Dunn bills each expense to the applicable client.   A prime example of the rationale for such an approach is photocopying expense.   Because of the great disparity between the photocopying requirements of different clients, it is virtually impossible to absorb photocopying costs fairly and equitably into Gibson Dunn's normal billing rates.   Accordingly, Gibson Dunn charges each client for photocopying expenses separately.   Similarly, Gibson Dunn charges each client separately for telephone, postage, overnight courier, travel expenses, computerized legal research, and messenger services, in each case at Gibson Dunn's cost.

63.     Gibson Dunn does not include the amortization of the cost of any investment, equipment, or capital outlay in its charges for these services.

64.     Pursuant to Rule 2016-2 of the Local Bankruptcy Rules, Gibson Dunn represents that its rate for duplication is $0.10 per page, its rate for outgoing telecopier transmissions is $1.00 per page (excluding related long distance transmission charges), there is no charge for incoming telecopier transmissions, and there is no surcharge for computerized research.

65.     Any services billed by a third-party vendor, with the exception of certain computerized research charges, are charged to the Debtors in the precise amount billed to and paid by Gibson Dunn.   Like many large law firms, Gibson Dunn has negotiated a special arrangement with computerized research companies under which Gibson Dunn pays a flat rate

monthly fee for computerized research services.  Consistent with its general policy of billing out-of-pocket expenses only to clients for which the use of such services is required, Gibson Dunn separately charges each client for computerized research.  To account for such charges while passing through Gibson Dunn's cost savings resulting from its special arrangements, Gibson Dunn charges those clients for whom such services are required at a reduced rate that is less than the rate charged by the computerized research companies to the general public for such services.  These charges are intended to cover Gibson Dunn's direct costs for computerized research.

66.    Gibson Dunn has made reasonable efforts to minimize its disbursements in the Chapter 11 Cases.  Each of the expenses incurred by Gibson Dunn in providing professional services to the Debtors was necessary, reasonable, and justified under the circumstances to serve the needs of the Debtors and their estates.

<u>**Reservation of Rights and Notice**</u>

67.    It is possible that some professional time expended or expenses incurred during the Fee Period are not reflected in the Fee Application.  Gibson Dunn reserves the right to include such amounts in future fee applications.  In addition, the Debtors have provided notice of this Fee Application to:  (a) the U.S. Trustee; (b) counsel to the agent of the EFIH First Lien DIP Facility; (c) counsel to the agent of the TCEH DIP Facility; (d) counsel to the Creditors' Committee; and (e) the Fee Committee (collectively, the "<u>Notice Parties</u>").

68.    Pursuant to the Interim Compensation Order and the Fee Committee Order, (a) any Notice Party (other than the Fee Committee) that wishes to object to the Fee Application must file its objection with the Court, with a copy to Chambers and serve it on Gibson Dunn and the Notice Parties so that it is **actually received** on or before **March 6, 2015 at 4:00 p.m. (Eastern Standard Time)** and (b) any member of the Fee Committee that wishes to object to the Fee Application must comply with the procedures set forth in the Fee Committee Order and if

such member wishes to object to the Fee Application after complying with such procedures, such member must file its objection with the Court, with a copy to Chambers and serve it on Gibson Dunn and the Notice Parties.

## No Prior Request

69.    No prior application for the relief requested herein has been made to this or any other court.

WHEREFORE, Gibson Dunn respectfully requests that the Court enter an order (a) awarding Gibson Dunn interim compensation for professional and paraprofessional services provided during the Fee Period in the amount of $484,484.80, and reimbursement of actual, reasonable and necessary expenses incurred in the Fee Period in the amount of $946.97; (b) authorizing and directing the Debtors to remit payment to Gibson Dunn for such fees and expenses; and (c) granting such other relief as is appropriate under the circumstances.

Date:  February 13, 2015
       Dallas, Texas

/s/ Robert B. Little
**GIBSON, DUNN & CRUTCHER LLP**
Robert B. Little
2100 McKinney Avenue
Dallas, TX 75201
Telephone:  (214) 698-3260
Facsimile:  (214) 571-2900
Email:        RLittle@gibsondunn.com

*Special Counsel to the Debtors*
*and Debtors in Possession*