## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) | Case No. 14-10979 (CSS) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

## DECLARATION OF DISINTERESTEDNESS OF DELOITTE TAX LLP PURSUANT TO THE ORDER AUTHORIZING THE RETENTION AND COMPENSATION OF CERTAIN PROFESSIONALS UTILIZED IN THE ORDINARY COURSE OF BUSINESS

I, Richard Favor, Jr., declare under penalty of perjury:

1.    I am a Director of Deloitte Tax LLP, located at 200 Renaissance Center, Detroit, Michigan  48243 (the "Company" or "Deloitte Tax").

2.    Energy Future Holdings Corporation and certain of its affiliates, as debtors and debtors in possession (collectively, the "Debtors"), have requested that Deloitte Tax provide certain tax advisory services relating to the Foreign Investment in Real Property Tax Act to the Debtors, namely Energy Future Holdings Corporation and its subsidiaries and/or affiliates, and Deloitte Tax has agreed to provide such services under the terms of an engagement letter with the Debtors (the "Engagement Letter").

3.    The statements set forth in this Declaration are based upon my personal knowledge, upon information and belief, and upon client matter records kept in the ordinary course of business that were reviewed by me or other personnel of Deloitte Tax or its affiliates.

---

[1]    The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810.  The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201.  Due to the large number of debtors in these chapter 11 cases, for which joint administration has been granted, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

4.     Subject to the foregoing, except as set forth herein, and in the attachments hereto, to the best of my information, knowledge and belief based on reasonable inquiry, (1) neither I, Deloitte Tax, nor any partner, principal or director of Deloitte Tax that is anticipated to provide the services for which Deloitte Tax is to be retained (the "Deloitte Tax Engagement Partners/Principals/Directors") holds any interest adverse to the Debtors or its affiliates with respect to the matters on which Deloitte Tax is to be retained in the above-captioned chapter 11 cases (the "Cases"), and (2) Deloitte Tax and the Deloitte Tax Engagement Partners/Principals/Directors have no relationship to the Debtors, their significant creditors, certain other parties-in-interest herein, or to the attorneys or other professionals that are known to be assisting the Debtors in the Cases, except as stated herein or on any attachment hereto ("Schedule 1").

5.     From time to time, Deloitte Tax and its affiliates have provided or may currently provide services and likely will continue to provide services to certain creditors of the Debtors and various other parties potentially adverse to the Debtors in matters unrelated to the Cases.

6.     In connection with its proposed retention by the Debtors in these Cases, Deloitte Tax undertook a search to determine, and to disclose, whether it or its affiliates is or has been employed by, or has other relationships with, any of the Debtors or their affiliates, subsidiaries, directors or officers, or any of the Debtors' significant creditors, customers, equity security holders, professionals or other entities with significant relationships with the Debtors. Specifically, Deloitte Tax obtained from the Debtors and/or their representatives the names of the significant individuals and entities that may be parties-in-interest in these Cases (the "Potential Parties-in-Interest"). To check upon and disclose possible relationships with Potential Parties-in-Interest in these Cases, Deloitte Tax researched its client databases and performed

reasonable due diligence to determine whether it or its affiliates had any relationships with any of the Debtors or their affiliates, subsidiaries, directors or officers, or any of the Debtors' significant creditors, equity security holders, professionals or other such entities with significant relationships with the Debtors.

7.    Deloitte Tax and its affiliates have or may have provided professional services to or may currently provide professional services to, and may in the future provide professional services in matters unrelated to these Cases to, certain of the Potential Parties-in-Interest. Additionally, certain of these Potential Parties-in-Interest have or may have provided goods or services to or may currently provide goods or services to, and may in the future provide goods or services to, Deloitte Tax or its affiliates and the Deloitte Tax Engagement Partners/Principals/Directors in matters unrelated to these Cases.

8.    Deloitte & Touche LLP ("Deloitte & Touche"), an affiliate of Deloitte Tax, provided pre-petition services to the Debtors and certain of its affiliates.  I understand the Debtors paid Deloitte & Touche approximately $2,833,500, including certain retainers in the amount of $625,000, in the ninety (90) days prior to the Petition Date.  Deloitte & Touche is continuing to provide post-petition audit services to the Debtors.

9.    Deloitte Tax provided prepetition services to the Debtors.  The Debtors did not pay Deloitte Tax any amounts in the ninety (90) days prior to the Petition Date.  As of the Petition Date, no amounts were outstanding with respect to services performed for the Debtors by Deloitte Tax prior to the Petition Date.

10.    Despite the efforts described above to identify and disclose Deloitte Tax's connections with the parties-in-interest in these Cases, because Deloitte Tax is a nationwide firm with thousands of personnel, and because the Debtors are a large enterprise, Deloitte Tax is

unable to state with certainty that every client relationship or other connection has been disclosed. In this regard, if Deloitte Tax discovers additional material information that it determines requires disclosure, it will file a supplemental disclosure promptly with the Court.

11.    From this internal search, Deloitte Tax has determined that certain relationships should be disclosed as follows and on Schedule 1 hereto:

    a.  Deloitte & Touche is the independent auditor for a joint venture which is partially owned by one of the Debtors. Deloitte & Touche may continue to provide such services in the future.

    b.  Deloitte & Touche is the independent auditor for Oncor Electric Delivery Holdings Company LLC, a non-debtor affiliate of the Debtors, and its subsidiaries (collectively, "Oncor") and expects to continue to provide such services in the future. Certain personnel of Deloitte & Touche [and Deloitte Tax] on the Oncor team perform procedures in connection with the services for the Debtors.

    c.  Deloitte & Touche was formerly the independent auditor of certain of the Debtors' employee benefit plans.

    d.  Deloitte Tax and/or its affiliates provide services in matters unrelated to these Cases to certain of the Debtors' largest unsecured creditors and other Potential Parties-in-Interest listed on Schedule 1 or their affiliates.

    e.  Law firms identified on Schedule 1, including Akin, Gump, Strauss Hauer & Feld LLP; Balch & Bingham LLP; Brown Rudnick LLP; Cadwalader Wickersham & Taft LLP; Davis Polk & Wardwell LLP; Fried Frank Harris Shriver & Jacobson LLP; Gibson Dunn & Crutcher LLP; Hunton & Williams, Jones Day; Kirkland & Ellis LLP; Kramer Levin Naftalis & Frankel LLP; McDermott Will & Emery; Milbank Tweed Hadley & McCloy; Morgan Lewis & Bockius; O'Melveny & Myers LLP; Patterson Belknap Webb & Tyler; Paul Weiss Rifkind Wharton & Garrison LLP; Richards Layton & Finger, PA; Ropes & Gray LLP; Schulte Roth & Zabel LLP; Shearman & Sterling LLP; Sidley Austin LLP; Simpson Thacher & Barlett LLP; Vinson & Elkins; Wachtell Lipton Rosen & Katz; White & Case LLP; and Wilkie Farr & Gallagher LLP, have provided, currently provide and may in the future provide legal services to Deloitte Tax or its affiliates in matters unrelated to these Cases, and/or Deloitte Tax or its affiliates have provided, currently provide and may in the future provide services to such firms and/or their clients.

f.   In the ordinary course of its business, Deloitte Tax and its affiliates have business relationships, in matters unrelated to these Cases, with its principal competitors, which, together with their affiliates, may be Potential Parties-in-Interest in these Cases.  For example, from time to time, Deloitte Tax and one or more of such entities may work on assignments for the same client or may otherwise engage each other for various purposes.

g.   Certain financial institutions or their respective affiliates (including AXA; Bank of America; Bank of Nova Scotia; Barclays Bank; Capital One; Citibank; HSBC; ING; JP Morgan Chase; Northwestern Mutual Life Insurance; Prudential; Teachers Insurance & Annuity; and US Bank) listed on Schedule 1 (i) are lenders to an affiliate of Deloitte Tax (Deloitte Tax is a guarantor of such indebtedness) and/or (ii) have financed a portion of the capital and/or capital loan requirements of various partners and principals, respectively, of Deloitte Tax and its affiliates.  Additionally, certain financial institutions or their respective affiliates listed on Schedule 1 (including Goldman Sachs, SEI and Vanguard) provide asset management services to certain retirement plans of Deloitte Tax and its affiliates.

h.   Personnel of Deloitte Tax and its affiliates may be ordinary course customers of the Debtors and/or their affiliates; however, Deloitte Tax has not conducted any research to determine whether, in fact, such relationships exist.

i.   Deloitte Financial Advisory Services LLP ("Deloitte FAS") and/or Deloitte Transactions and Business Analytics LLP ("DTBA"), affiliates of Deloitte Tax, provide financial advisory services to the Pension Benefit Guaranty Corporation (the "PBGC").  The Debtors and their pension plans are not the subject of these services for the PBGC.

j.   Deloitte Tax performs certain professional services for Brandon Freiman, Jason Ridloff, and Jonathan Smidt, members of the Debtors' board of directors, and Frederick Goltz and Marc Lipschultz, former members of the Debtors' board of directors or board of managers.

k.   Deloitte Tax and its affiliates, including Deloitte & Touche, provided services to Kohlberg Kravis Roberts & Co. LP and TPG Global LLC and/or their respective affiliates, certain of the Debtors' current equity holders, in connection with their acquisition of such equity.

l.   Deloitte Tax and its affiliates, including Deloitte & Touche, provided services to a party that purchased equity in a non-debtor affiliate of the Debtors in connection with such purchase.

m. Certain Potential Parties-in-Interest may be adverse to and/or involved in litigation matters with Deloitte Tax or its affiliates in connection with matters unrelated to these Cases.

12.     Furthermore, through reasonable inquiry, I do not believe there is any connection between the personnel of Deloitte Tax or its affiliates who are anticipated to provide services to the Debtors and the United States Bankruptcy Judge presiding in the Cases, United States Trustee for Region 3, the Assistant United States Trustee for the District of Delaware and the attorney therefor assigned to these Cases.

13.     Except as may be disclosed herein, to the best of my knowledge, information and belief, Deloitte Tax and the Deloitte Tax Engagement Partners/Principals/Directors do not hold or represent any interest adverse to the Debtors, and I believe that Deloitte Tax and the Deloitte Tax Engagement Partners/Principals/Directors are "disinterested persons" as that term is defined in Section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code.

14.     Deloitte LLP, Deloitte Tax's parent, has completed a reorganization of some of its businesses, including its financial advisory services, tax services, solutions, human capital and outsourcing businesses.  This reorganization is intended to align the organizational structure more closely with the manner in which business is conducted.  These businesses are now being conducted by entities affiliated with Deloitte Tax, including Deloitte FAS, Deloitte & Touche, DTBA and Deloitte Consulting LLP.  Some services incidental to the tasks to be performed by Deloitte Tax in these Cases may be performed by personnel now employed by or associated with these affiliates of Deloitte Tax or their respective subsidiaries, including subsidiaries located outside the United States.  The fees and expenses with respect to such services will be included on the fee applications of Deloitte Tax.

15.      Deloitte Tax has received no promises regarding compensation in these Cases other than in accordance with the Bankruptcy Code and as set forth in this Declaration.  Deloitte Tax has no agreement with any nonaffiliated entity to share any compensation earned in these Cases.

16.      I understand that the *Order Authorizing the Retention and Compensation of Certain Professionals Utilized in the Ordinary Course of Business* does not authorize any of the Debtors to pay Deloitte Tax for prepetition services.

17.      I further understand that this Declaration will not suffice as Deloitte Tax's proof of claim.

18.      Deloitte Tax through the Engagement Letter is party to an agreement for indemnification.  A copy of the Engagement Letter is attached as <u>Schedule 2</u> to this Declaration.

19.      Such agreement for indemnification including in the Engagement Letter is subject to the following modifications, applicable during the pendency of the Debtors' chapter 11 cases:

> (a) the Company shall not be entitled to indemnification, contribution, or reimbursement for services provided under the Engagement Letter other than those described in such Engagement Letter, unless such services and indemnification therefor are approved by the Bankruptcy Court.

> (b) Notwithstanding anything to the contrary in the Engagement Letter, the Debtors shall have no obligation to indemnify the Company, or provide contribution or reimbursement to the Company, for any claim or expense related to the Engagement Letter that is either:    (i) judicially determined (the determination having become final) to have arisen from the Company's gross negligence or willful misconduct; (ii) for a contractual dispute in which the Debtors allege the breach of the Company's contractual obligations under the Engagement Letter unless the Court determines that indemnification, contribution or reimbursement would be permissible pursuant to *In re United Artists Theatre Co.*, 315 F.3d 217 (3d Cir. 2003); or (iii) settled prior to a judicial determination as to the exclusions set forth in clauses (i) and (ii) above, but determined by the Court, after notice and a hearing to be a claim or

expense for which the Company should not receive indemnity, contribution or reimbursement under the terms of the Engagement Letter as modified by this Order.

(c) If, before the earlier of (i) the entry of an order confirming a chapter 11 plan in these cases (that order having become a final order no longer subject to appeal), and (ii) the entry of an order closing these chapter 11 cases, the Company believes that it is entitled to the payment of any amounts by the Debtors on account of the Debtors' indemnification, contribution and/or reimbursement obligations under the Engagement Letter (as modified herein), including without limitation the advancement of defense costs, the Company must file an application therefor in this Court, and the Debtors may not pay any such amounts to the Company before the entry of an order by this Court approving the payment. This subparagraph (c) is intended only to specify the period of time under which the Court shall have jurisdiction over any request for fees and expenses by the Company for indemnification, contribution or reimbursement, and not a provision limiting the duration of the Debtors' obligation to indemnify the Company. All parties in interest in these chapter 11 cases shall retain the right to object to any demand by the Company for indemnification, contribution or reimbursement.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Date: <u>February 11, 2015</u>

_____
Richard Favor, Jr.

# SCHEDULE 1

Potential Parties-in-Interest or their affiliates for whom Deloitte Tax LLP or its affiliates has provided or is currently providing services in matters unrelated to these Cases, except as set forth above, or with whom such parties have other relationships, including banking relationships.

4Change Energy Co.
4Change Energy Holdings LLC
A.J. Sloane & Co.
Aberdeen Asset Management
Abu Dhabi Investment Authority
Accenture
ACE
ACIS CLO 2013 2 Ltd.
ADA Carbon Solutions
ADM Investor Services Inc.
Aegon Custody BV RE MM High Yield Fund
AEP Energy Partners LP
AFR - Fidelity Advisor Series I: Fidelity Advisor Floating Rate High Income Fund
AG Centre Street Partnership LP
Akin Gump Strauss Hauer & Feld LLP
Albemarle Corp.
Alcoa Inc.
AllianceBernstein LP
Allianz Global Investors US LLC
Alpha Coal Sales Co. LLC
AlpInvest Partners Co-Investments 2007 CV
Alstom Power Inc.
Alvarez & Marsal
American Century Investment Management Inc.
American Equipment Co. Inc. (AMECO)
American Funds Insurance Series - B Fund
American International Group
American Nuclear Insurers
American Residential
American Stock Transfer & Trust Co.
Ameriprise Certificate Co.
Anchorage Capital Group LLC
Angelo Gordon & Co.
AP TXU Holdings LLC
Apache Corp.
Apollo Capital

Apollo Credit Funding I Ltd.
Apollo Global Management LLC
Apollo Special Opportunities Managed Account LP
Applied Industrial Technologies Inc.
Arch Coal Sales Co. Inc.
Arch Reinsurance Ltd.
Archview Investment Group LP
Areva Inc.
Argo Re (Bermuda)
Arizona State Retirement System
Artio Global High Income Fund
Associated British Foods Pension Scheme
Associated Electric & Gas Insurance Services (AEGIS)
AT&T Inc.
Atmos Energy Corp.
Atmos Pipeline-Texas
Atrium III
AustralianSuper
Avenue Capital Management
Aviva Investors North America Inc.
AXA Capital America LP
Axis
Babcock & Wilcox
Babson Capital Management LLC
Baker Hughes Inc.
BALC - Ballyrock CLO II Ltd.
Balch & Bingham
Bank of America Fund
Bank of New York Mellon Corporation, The
Bank of Nova Scotia, The
Bank of Oklahoma
Bank of Texas
Bank of Tokyo-Mitsubishi UFJ Ltd., The
Bank One Purchasing Card
Barclays Bank PLC
Basic Resources Inc.
Battery Park High Yield Long Short Fund Ltd.
bcIMC (WCBAF) Private Placement (2006) Investment Corp.
Beach Point Capital
Beazley plc
Bechtel Power Corporation

Benida Group LLC, The
Berkshire Hathaway Inc.
BHP Billiton
Big Brown 3 Power Co. LLC
Big Brown Lignite Co. LLC
Big Brown Power Co. LLC
Bill & Melinda Gates Foundation Trust
Black & Veatch Corporation
Black Canyon Direct Investment Fund LP
BlackRock, Inc.
Blackstone Advisory Partners LP
Blue Cross & Blue Shield
Blue Mountain Capital Management LLC
BMO Asset Management Inc.
BNP Paribas Energy Trading GP
BNSF Railway Co.
Bobcat Bluff Wind Project LLC
Bond Fund of America, The
Borealis Infrastructure Management Inc.
BP America Production Co.
BPC Opportunities Fund LP
Brazos Electric Power Cooperative Inc.
Brazos River Authority - BRA
Brevan Howard Asset Management LLP
Brigade Capital Management LLC
Brighten Energy LLC
Brighten Holdings LLC
Brown Rudnick LLP
Brownstone Investment Group LLC
BTG Pactual GLB Asset Management
Cadwalader Wickersham & Taft LLP
California Public Employees Retirement System
California State Teachers Retirement System
Calpine Energy Services LP
Cameco Corp.
Candlewood Investment Group LP
Canyon Balanced Equity Master Fund Ltd.
Canyon TXU LP
Canyon Value Realization Fund LP
CapGemini America Inc.
Capital One NA

Capital Research
Capstone Advisory Group LLC
Cargill Inc.
Carlyle Partners
Carval Investors LLC
Castle Hill Asset
Cat Financial Capital Solutions
Caterpillar Financial Corp.
Cent CDO 10 Ltd.
Centaurus TEF LP
Centerbridge Credit Advisors LLC
Centerpoint Energy Services Inc.
Centerview Partners LLC
Central States Southeast & Southwest Areas Health & Welfare Fund
CFIM Hybrid Tri-Asset Fund
Chase Investments
Chesapeake Energy Marketing Inc.
Chi Operating Investment Program L P
Chicago Bridge & Iron Company
Childrens Healthcare of Atlanta Inc.
Chrysler LLC Master Retirement Trust
Chubb Atlantic Indemnity Ltd. (Bermuda)
Citibank Hold (SLT)
CLF Finance Co. LLC
Cloud Peak Energy LLC
COF II ST LLC
Co-Investment Partners (NY) LP (Lexington Partners)
Collin Power Co. LLC
Columbia Funds Series Trust II Columbia Floating Rate Fund
Comanche Peak Nuclear Power Co. LLC
Commerz Markets LLC
Commingled Pension Trust Fund (High Yield Bond) of JPMorgan Chase Bank NA
Commonwealth of Pennsylvania State Employees Retirement System
Computershare Trust Co. of Canada
ConocoPhillips Co.
Constellation Energy
Contrarian Capital Management LLC
Contrarian Funds LLC
CPP Investment Board (USRE II) Inc.
Crane Nuclear Inc.
Credit Suisse

Credit Value Partners LP
CSAA Insurance Exchange
CSC Trust Co. of Delaware
CSS LLC
Cyrus Capital Partners LP
Dallas, Texas, City of
Dallas, Texas, County of
Danske Bank A/S (Asset Management)
Davidson Kempner Partners
Davis Polk & Wardwell LLP
DDJ Capital Management LLC
DeCordova Power Co. LLC
Delek Refining Ltd.
Dell Inc.
Deutsche Asset Management
Deutsche Investment Management Americas Inc.
Devon Gas Services LP
Dow Employees Pension Plan
Drawbridge Investment Ltd.
DTE Energy Trading Inc.
DuPont Capital Management Corp.
Eaton Vance Limited Duration Income Fund
Ebasco Services of Canada Ltd.
ECP I (NE Energy IP) LP
EDF Trading North America LLC
EECI Inc.
EFH Australia (No. 2) Holdings Co.
EFH CG Holdings Co. LP
EFH CG Management Co. LLC
EFH Corp.
EFH Corporate Services Co.
EFH Finance (No. 2) Holding Co.
EFH FS Holdings Co.
EFH Properties Co.
EFH Renewables Co. LLC
EFH Vermont Insurance Co.
EFIH Finance Inc.
Electric Reliability Council of Texas
Electro-Motive Diesel Inc.
Elliott Associates LP
Empower Software Solutions

Endurance
Energy Capital Partners I LP
Energy Future Competitive Holdings Co. LLC
Energy Future Holdings Corp. et. al
Energy Transfer
Energy, U.S. Department of
Enterprise Products Operating LLC
Enterprise Texas Pipeline LLC
E-On Climate & Renewables
Epiq Bankruptcy Solutions
Ernst & Young LLP
ETC Katy Pipeline Ltd.
Euroclear Bank
Evercore Group LLC
Exelon Generation Co. LLC
Family Dollar Stores of Texas LLC
FCO MA Centre Street LP
FCOF II UB Investments LLC
Federal Deposit Insurance Corp. (FDIC)
Federal Insurance Co.
Federated Investment Management Co.
Fedex Corp. Employees Pension Trust
Feingold O'Keeffe Capital LLC
FGOY Investments Corp.
Fidelity Institutional Money Market Funds - Government Portfolio
Fidelity Investments
Fidelity Management & Research Company
Fidelity Series Floating Rate High Income Fund
Fifth Street Capital LLC
FinVest Capital Ltd.
Firstenergy System Master Retirement Trust
Flagship Rail Services Inc.
Flint Hills Resources LP
FLSmidth Airtech Inc.
Fluor Enterprises Inc.
FM Global
Forest Creek Wind Farm LLC
Fortress Investment Group LLC
FPL Energy Pecos Wind I LLC
FPL Energy Pecos Wind II LLC
Franklin Floating Rate

Brandon Freiman
Fried Frank Harris Shriver & Jacobson LLP
FTS SIP Corp.
Fubon Asset Management Co. Ltd.
Fuelco LLC
Future Fund Board of Guardians
GAMCO Asset Management Inc.
GATX Corp.
General Electric Pension Trust
General Motors Canadian Hourly Rate Employees Pension Plan, The
Generation Development Co. LLC
Generation MT Co. LLC
Generation SVC Co.
Generator & Motor Services Inc.
Gibson Dunn & Crutcher LLP
GIC Private Ltd.
Gleneagles CLO Ltd.
Global Bond Investors SA
Global Credit Advisers LLC
GoldenTree Asset Management LP (US)
Goldman Sachs Group, The
Frederick Goltz
Government of Singapore Investment Corp. Pte Ltd.
Grayson & Co.
Greenbriar CLO Ltd.
Greenway Development Holding Co.
GSO Capital Partners LP
Guggenheim Portfolio Co. X LLC
Gulf Stream - Sextant CLO 2006-I Ltd.
Hartford Balanced Income Fund, The
Hartford Floating Rate Fund, The
Hartford Investment Management Co.
HBK Investments LP
HCC
HCL America Inc.
Headwaters
Hewitt Ennisknupp Inc.
High Income Opportunities Portfolio
Highland Capital Management FM
Hotchkis & Wiley Capital Management LLC
Houlihan Lokey Capital Inc.
HSBC Wealth Management Services (Private Account)

Hudson Bay Capital Management LP
Humphreys & Glasgow Ltd.
Hunton & Williams
HVB Capital Partners AG
Iberdrola Renewables Inc.
IBM Corp.
ICF Resources LLC
Income Fund of America, The
Indian Mesa Wind Farm LLC
Industriens Pension Portfolio FMBA High Yield Obligationer III
ING Capital LLC
ING Investment Management CLO II Ltd.
Innocap Fund SICAV PLC In Respect of Mason Sub Fund
Intermarket Corp.
International Brotherhood Of Electrical Workers Local No. 2078
International Paper Co. Commingled Investment Group Trust
Invesco Aim Investment Services
Iowa Public Employees' Retirement System - IPERS
J. Aron & Co.
J. Caird Investors (Bermuda) LP
JHF II Multi Sector Bond Fund
Jones Day
JP Morgan
Kaiser Foundation Hospitals
Kaiser Permanente Group Trust
Kansas City Southern Railway
Kiewit Finance Group Inc.
Kinder Morgan Tejas Pipeline LLC
King Street Acquisition Co. LLC
Kirkland & Ellis LLP
Kohlberg Kravis Roberts & Co. LP
KPMG
Kramer Levin Naftalis & Frankel LLP
L-3 Communications Corp. Master Trust
Lake Creek 3 Power Co. LLC
LaSalle Bank NA
Law Debenture Trust Co. of New York
Lehman Brothers
Leveragesource III LP
LGT Capital Invest Ltd.
Liberty Mutual Employees Thrift Incentive Plan

Loan Funding IV LLC
Lockheed Martin Corp. Master Retirement Trust
Lockton Cos. LLC
Logan Circle Partners LP
Lone Star Energy Co. Inc.
Longhorn Capital DT LP
Loomis Sayles
Lord Abbett
Los Angeles County Employees Retirement Association
Louisiana Energy Services
Louisiana State Employees' Retirement System
Lower Colorado River Authority
LSGT Gas Co. LLC
LSGT SACROC Inc.
LSR Loan Funding LLC
Lucent Technologies Inc. Master Pension Trust
Luminant Big Brown Mining Co. LLC
Luminant Energy Co. LLC
Luminant Energy Trading California Co.
Luminant ET Services Co.
Luminant Generation Co. LLC
Luminant Holding Co. LLC
Luminant Mineral Development Co. LLC
Luminant Mining Co. LLC
Luminant Renewables Co. LLC
Lumx Beach Point Total Return Fund Ltd.
M&T Bank
Macquarie Bank Ltd.
Macys Inc. Defined Benefit Plans Master Trust
Madison Park Funding I Ltd.
Magnetar Financial LLC
Managers High Yield Fund
Manulife Asset Management (US) LLC
Marathon Asset Management
Mariner LDC
Martin Lake 4 Power Co. LLC
Mason Capital LP
MatlinPatterson Global Advisers LLC
McDermott Will & Emery
Merrill Lynch Capital Services
MetLife

MFS Investment Management

MHI Nuclear America Inc.

Microsoft Global Finance Ltd.

Midtown Acquisitions LP

Milbank, Tweed, Hadley & McCoy

Millstein & Co.

Missouri Education Pension Trust

Moelis & Co. LLC

Monticello 4 Power Co. LLC

Morgan Creek 7 Power Co. LLC

Morgan Lewis & Bockius

Morgan Stanley

Motiva Enterprises LLC

Mount Kellett Capital Management LP

MSD Capital LP

Muzinich & Co. Inc.

National Investment Services High Yield Fund LLC

National Railroad Retirement Investment Trust - High Yield

Natural Gas Exchange Inc.

Navigant Consulting Inc.

Navigators

NCA Development Co. LLC

NCA Resources Development Co. LLC

NCRAM Loan Trust

Neuberger Berman

New York City Employees Retirement System

New York City Police Pension Fund

New York Life Capital Partners III LP

New York Times Co. Pension Trust

NextEra Energy Power Marketing LLC

NextEra Energy Resources LLC

NF Urenco Enrichment

Norinchukin Bank, The

North American Coal Royalty Co.

Northern Trust Co. of New York

NorthgateArinso Inc.

Northwestern Mutual Life Insurance Co., The

NRG Power Marketing LLC

Nuclear Electric Insurance Ltd.

Nuclear Energy Future Holdings II LLC

Nuclear Energy Future Holdings LLC

Nuveen Asset Management LLC
NWP Indian Mesa Wind Farm LP
O'Melveny & Myers LLP
Oak Grove Management Co. LLC
Oak Grove Mining Co. LLC
Oak Grove Power Co. LLC
Oak Hill Advisors LP
Oaktree Capital Management LP
Och-Ziff Capital Management Group, LLC
Oil Casualty Insurance Ltd.
Omega Advisors, Inc.
OMERS Administration Corp.
Oncor Communications Holdings Co. LLC
Oncor Electric Delivery Administration Corp.
Oncor Electric Delivery Co. LLC
Oncor Electric Delivery Holdings Co. LLC
Oncor Electric Delivery Transition Bond Co. LLC
Oncor License Holdings Co. LLC
Oncor Management Investment LLC
Onex Credit Partners LLC
OPERF Co-Investment LLC
Oppenheimer Funds
Oracle Corp.
Oregon Public Employees Retirement Fund
Oz Management LLC
Pacholder High Yield Fund
Pacific Gas & Electric Co. Post Retirement Medical Plan Trust
Pacific Investment Management Company, LLC (PIMCO)
Pacific Life Funds - PL Floating Rate Loan Fund
Patterson Belknap Webb & Tyler
Paul Weiss Rifkind Wharton & Garrison LLP
Peabody COALSALES Co.
Penn Mutual Life Insurance Co. (Asset Management)
Pension Benefit Guaranty Corporation
Perella Weinberg Partners Capital Management LP
Permal Contrarian Fund I Ltd.
Perry Capital
PFA Kapitalforvaltning Fondsmæglerselskab A/S
Phillip Morris Credit Corp.
Phillips 66 Co.
PI Co-Invest LLC

Phoenix Investment Partners
Pine River Credit Relative Value Master Fund Ltd.
Pinnacle Technical Resources Inc.
Pioneer Investment Management Inc.
PPM America Inc.
PricewaterhouseCoopers LLP
Principal Financial Group
Principal Global Investors LLC
Principal Investors Fund Inc.- Bond & Mortgage Securities Fund
ProFund Advisors LLC
Prudential Investment Management Inc.
Public Employees Retirement System of Ohio
Putnam Investments
Qualcomm Global Trading Inc.
Quintana Energy Partners LP
RBC Capital Markets LLC
RBS Greenwich Capital
Regents of The University of California
Regiment Capital Ltd.
Reliance Insurance Co.
Renaissance Reinsurance Ltd.
Richards, Layton & Finger, PA
RidgeWorth Capital Management Inc.
Jason Ridloff
Riversource Life Insurance Co.
RLI
Ropes & Gray LLP
Rosemont Solebury Co-Investment Fund LP
Rothschild Inc.
RSUI (CRC)
Russell Investments Co.
Ryan Partnership
Sabine River Authority of Texas
Safeco Insurance Co. of America
Sageview Capital LP
SAIC Energy, Environment & Infrastructure, LLC
Sandow Power Co. LLC
Sankaty Advisors LLC
Schulte Roth & Zabel LLP
Scottish Widows Investment Partnership Ltd.
Sears Holdings Pension Trust

Securitas Security Services USA Inc.

SEI Global Master Fund PLC - SEI High Yield Fixed Income Fund, The

Seix Investment Advisors LLC

SG Americas Securities LLC

Shaw Environmental Inc.

Shearman & Sterling LLP

Shell Energy North America (US) LP

Sidley Austin LLP

Siemens Demag Delaval Turbomachinery Inc.

Sierra Club

Silver Point Capital

Silverado CLO 2006-I Ltd.

Simpson Thacher & Bartlett LLP

Sitel LLC

SMBC Rail Services LLC

Smidt, Jonathon

Solus Alternative Asset Management

SolutionSet

Southern Ute Indian Tribe

Southfork CLO Ltd.

Standard Bank PLC

Starr Aviation

State of Wisconsin Investment Board

State Street Bank & Trust Co.

State Teachers Retirement System of Ohio

Sterne Agee & Leach Inc.

Stichting Bewaarder Syntrus Achmea Global High Yield Pool

Stockcross Financial Services Inc.

Stone Harbor Global Funds PLC - Stone Harbor Leveraged Loan Portfolio

Stratford CLO Ltd

Sunamerica Income Funds - Sunamerica High Yield Bond Fund

Susquehanna Capital Group

Sweetwater Water Department, City of (TX)

Sweetwater Wind Power LLC

Swiss Re Risk Solutions Corp.

Taconic Capital Advisors

Taggart Global

TCEH Finance Inc.

Teachers Insurance & Annuity Association of America

Teachers' Retirement System of Oklahoma

Teachers Retirement System of The City of New York

Tenaska Gas Storage LLC
Texas Commission on Environmental Quality - TCEQ
Texas Competitive Electric Holdings Co. LLC
Texas County & District Retirement System
Texas Department of Criminal Justice
Texas Energy Future Capital Holdings LLC
Texas Energy Future Holdings LP
Texas Health Resources Inc.
Texas State Comptroller of Public Accounts
Third Avenue Focused Credit Fund
Titan Investment Holdings LP
Torus
Total Gas & Power North America Inc.
Towers Watson
TPG Capital LP
TPUSA
Tractebel LNG North America Service Corp.
Tradinghouse 3 & 4 Power Co. LLC
Tradinghouse Power Co. LLC
Transactel (Barbados) Inc.
Trent Wind Farm LP
Trilogy Capital
Trustees of Dartmouth College
TXU 2007-1 Railcar Leasing LLC
TXU Eastern Finance (A) Ltd.
TXU Eastern Finance (B) Ltd.
TXU Energy Receivables Co. LLC
TXU Energy Retail Co. LLC
TXU Energy Solutions Co. LLC
TXU Europe CP Inc.
TXU Europe Ltd.
TXU Finance (No. 2) Ltd.
TXU Receivables Co.
TXU Retail Services Co.
TXU SEM Co.
UBS AG
UFCW Consolidated Pension Fund
UMB, N.A.
UMB Bank N.A.
UMC Benefit Board Inc.
Union Bank NA

Unipension Invest FMBA High Yield Obligationer II
United States Army Corp of Engineers, Fort Worth
United States Enrichment Corp.
United States Environmental Protection Agency
Uranium One Inc.
Urenco Enrichment Co. Ltd.
US Bank NA
US Nuclear Regulatory Commission
USAA Asset Management Co.
Valero Texas Power Marketing Inc.
Valic Co. II-High Yield Bond Fund
Valley NG Power Co. LLC
Valley Power Co. LLC
Vanguard High Yield Corporate Fund
Varde Partners Inc.
Verizon Business
Vinson & Elkins
Virtus Multi Sector Fixed Income Fund
W.W. Grainger Inc.
Wachovia Bank NA
Wachtell Lipton Rosen & Katz
WageWorks Inc.
Wallace H. Coulter Foundation, The
Walnut Street Associates
Water Island Capital LLC
Waterstone Capital Management LP
Wellington Management Co. LLP
Wellpoint Inc.
Wells Capital Management
Westchester CLO Ltd.
Western Asset Floating Rate High In Fund LLC
Western Asset Management High Income Portfolio Inc.
Westinghouse Electric Co. LLC
White & Case LLP
Whitebox Advisors LLC
Wilkie Farr & Gallagher LLP
Williams Capital Group LP, The
Wilmer Cutler Pickering Hale and Dorr
Wilmington Savings Fund Society FSB
Wilmington Trust Investment Management LLC
Winstead PC

WM Pool - High Yield Fixed Interest Trust
WR Huff Asset Management Co. LLC
XL Insurance (Bermuda) Ltd.
York Capital Management Global Advisors LLC
Ziff Brothers Investments LLC
Zolfo Cooper LLC

# SCHEDULE 2

# Deloitte.

Deloitte Tax LLP
JPMorgan Chase Tower
2200 Ross Avenue, Suite 1600
Dallas, TX 75201-6778
USA

Tel: +1 214 840 7000
www.deloitte.com

September 19, 2014

Ms. Carla Howard
SVP & General Tax Counsel
Energy Future Holdings Corp.
1601 Bryan St.
Dallas, TX  75201

Dear Carla:

Thank you for choosing Deloitte Tax LLP ("Deloitte Tax" or "our") to provide tax advisory services ("Services") for **Energy Future Holdings Corp.** and its subsidiaries and/or affiliates ("Client" or "EFH") during the period July 1, 2014 through earlier of December 31, 2015 or the effective date of Client's bankruptcy plan of reorganization.  Deloitte Tax professionals will generally be available to provide Services on federal tax matters on an as-requested basis.

This engagement letter ("Engagement Letter") describes the scope of the Deloitte Tax Services, the respective responsibilities of Deloitte Tax and EFH relating to this engagement and the fees Deloitte Tax expects to charge.

## SCOPE OF SERVICES

EFH and Deloitte Tax agree that the terms of this Engagement Letter will apply to all Services provided by Deloitte Tax to EFH during the period set forth above, unless such services are the subject of a separate written agreement entered into between Deloitte Tax and EFH.

As the specific Service desired by EFH from Deloitte Tax is identified, EFH and Deloitte Tax will execute a separate work order ("Work Order").  The request for Services should be in a form of a Work Order as set forth in Exhibit A attached to this Engagement Letter (or a substantially similar form).  The request for Services should reference this Engagement Letter and clearly describe the specific details of the Services anticipated pursuant to the Work Order (including scope of work, deliverables, timing, EFH responsibilities and fees).

It is contemplated that the Services requested from Deloitte Tax may include oral and written tax advice and recommendations and other communications rendered in response to specific tax questions posed by EFH.  Deloitte Tax's analysis and response to these tax questions may be based upon a review of various documentation provided by EFH (collectively, "books and records") relevant to EFH's transactions and business activity that EFH provides to Deloitte Tax. With respect to such Services, Deloitte Tax is entitled to assume without independent verification the accuracy of all representations, assumptions, information and data provided by EFH and its representatives provided it is reasonable in Deloitte Tax's experience.  Deloitte Tax may ask EFH and is expected to request EFH to clarify or supplement information provided in this context or inconsistent with other Deloitte Tax knowledge or experience.

Member of
Deloitte Touche Tohmatsu Limited

Energy Future Holdings Corp.
September 19, 2014
Page 2

## REPORTABLE TRANSACTIONS

The IRS and some states have promulgated rules that require taxpayers to disclose their
participation in reportable transactions by attaching a disclosure form to their federal and/or state
income tax returns and, when necessary, by filing a copy of that disclosure form with the IRS
and/or the applicable state tax agency. These rules impose requirements to disclose certain
transactions and such disclosures may encompass transactions entered into in the normal course
of business. The Services that are the subject of this Engagement Letter do not include any
obligation by Deloitte Tax to identify any reportable transactions or disclosure obligations. Any
advisory services regarding reportable transactions will be provided under the terms of a separate
engagement letter. EFH is responsible for ensuring that it has properly disclosed all reportable
transactions; failure to make required disclosure may result in penalties. Deloitte Tax will not be
liable for any penalties resulting from EFH's failure to accurately and timely file any required
reportable transaction disclosure.

## ACKNOWLEDGEMENTS AND AGREEMENTS

The Services will be performed in accordance with the *Statement on Standards for Consulting
Services* established by the American Institute of Certified Public Accountants ("AICPA").
Services to be performed by Deloitte Tax will be established by mutual agreement and can be
changed or modified in the same manner. Deloitte Tax will promptly inform EFH of any
circumstances that warrant a change in the scope of the specific services to be provided, and
similarly, EFH agrees to notify Deloitte Tax promptly if modifications to the Services are
requested.

EFH acknowledges and agrees that the Services provided pursuant to this Engagement Letter will
be based solely upon:

(a)     The representations, information, documents and other facts provided to Deloitte Tax by
        EFH, its personnel and any representatives thereof or that Deloitte Tax has knowledge of
        from its work at Client or reasonably should inquire about;

(b)     EFH's understanding that the review of documents under this Engagement Letter does
        not constitute an engagement to provide audit, compilation, review or attest services as
        described in the pronouncements on professional standards issued by the American
        Institute of Certified Public Accountants or the U.S. Public Company Accounting
        Oversight Board;

(c)     EFH's understanding that Deloitte Tax will only be responsible to provide tax advice
        with respect to the specific matter, transaction or question actually presented by EFH,
        including the type of tax and the taxing jurisdiction specifically identified by EFH (e.g.,
        federal);

(d)     EFH's understanding that any tax advice provided pursuant hereto will be based upon the
        law, regulations, cases, rulings, and other taxing authority in effect at the time specific tax
        advice is provided. If there are subsequent changes in or to the foregoing taxing
        authorities (for which Deloitte Tax shall have no specific responsibility to advise EFH),
        EFH acknowledges that such changes may result in that tax advice being rendered invalid
        or necessitate (upon EFH's request) a reconsideration of that prior tax advice;

**Energy Future Holdings Corp.**
**September 19, 2014**
**Page 3**

(e)     EFH's understanding that EFH may be audited and challenged by the IRS and other tax
        agencies, who may not agree with our positions. In this regard, EFH understands that the
        result of any tax advice is not binding on the IRS, other tax agencies or the courts and
        should never be considered a representation, warranty, or guarantee that the IRS, other
        tax agencies or the courts will concur with our advice or opinion; and

(f)     EFH's understanding that Deloitte Tax, as a result of providing such tax advice, is under
        no obligation to represent EFH with respect to any such challenge or an administrative or
        judicial challenge thereof.

Although Deloitte Tax might in certain circumstances provide EFH with drafts of a deliverable
before it is finalized, EFH understands that EFH may not rely upon any of the analysis,
conclusions, or recommendations unless and until the final deliverable is issued. Any part of our
analysis, including the recommendations or conclusions may change between the time of any
draft and the issuance of a final deliverable.

All rights and obligations of Deloitte Tax and EFH described in this Engagement Letter will
apply to each Work Order. In the event of any conflict or inconsistency between the terms of this
Engagement Letter and the terms of any Work Order, the terms of this Engagement Letter shall
control. Notwithstanding the immediately preceding sentence, in the event that a Work Order
expressly provides that certain provisions therein shall control over specified provisions of this
Engagement Letter, then, to the extent that such provisions of the Work Order conflict or are
inconsistent with the specified provisions of this Engagement Letter, such provisions of the Work
Order shall control. If a Work Order is not executed, as previously described, the terms of this
Engagement Letter will apply to the Services provided.

## FEES AND EXPENSES

The Deloitte Tax fees for Services, other than for Services which are the subject of a separate
engagement letter with a different fee arrangement or a Work Order, are based on the amount of
professional time incurred and our agreed-upon hourly rates, which vary depending upon the
experience level of the professionals involved as set forth in Exhibit B. Deloitte Tax will also bill
you reasonable out-of-pocket expenses. The hourly rates of our Washington National Tax
("WNT") and other subject matter specialists may exceed the hourly rates of our local office
professionals. Deloitte Tax will limit the use of WNT to those services requested by EFH in this
Engagement Letter or a Work Order. Reasonable out-of-pocket expenses incurred are reflected
as additional amounts on the bills. Subject to any applicable Bankruptcy Court (as defined
below) orders, rules or procedures, Deloitte Tax will submit bills monthly as the Services are
performed. The fees and expenses are not dependent upon the findings or results of the Services
or the ultimate resolution of any items with the taxing authorities, nor are those amounts
contingent or refundable.

## ACCEPTANCE AND OTHER MATTERS

Client agrees that it will promptly seek the Bankruptcy Court's approval of this engagement. The
application, proposed order and other supporting documents submitted to the Bankruptcy Court
seeking its approval of this engagement must be satisfactory to Deloitte Tax in all respects.
Deloitte Tax may, in its sole discretion and without any liability arising therefrom, terminate this
engagement in the event that (a) a third party objects or threatens to object, or Deloitte Tax

Energy Future Holdings Corp.
September 19, 2014
Page 4

believes that a third party may object, in the form of an objection or otherwise, to Deloitte Tax's retention by Client on the terms and conditions set forth in this Engagement Letter, (b) a final order authorizing the employment of Deloitte Tax by Client is not issued by the Bankruptcy Court on or before sixty (60) days from the date hereof on the terms and conditions set forth herein or on such other terms and conditions as are satisfactory to Deloitte Tax in its sole discretion, or (c) the application of Client seeking such order is denied by the Bankruptcy Court. In any such event, Client hereby agrees to withdraw or amend, promptly upon Deloitte Tax's request, any application filed or to be filed with the Bankruptcy Court to retain Deloitte Tax's services. For purposes of the Engagement Letter, "Bankruptcy Court" shall mean the United Bankruptcy Court for the District of Delaware.

This Engagement Letter including all exhibits and Work Orders, together with the General Business Terms attached hereto and thereto, constitutes the entire agreement between EFH and Deloitte Tax with respect to this engagement, supersedes all other oral and written representations, understandings or agreements relating to this engagement, and may not be amended except by the mutual written agreement of the EFH and Deloitte Tax.

Please indicate your acceptance of this agreement by signing in the space provided below and returning a copy of this Engagement Letter to our office. Your signature constitutes EFH's consent to disclosure and use of EFH's tax return information in the manner described above.

Thank you for giving Deloitte Tax the opportunity to serve you. If you have any questions regarding the Services described in this Engagement Letter, or any other advice that Deloitte Tax may provide to you, please feel free to contact Vickie Carr at (214) 840-1457.

Very truly yours,

DELOITTE TAX LLP

By: _Vickie F. Carr_
Vickie F. Carr
Tax Partner

AGREED AND ACCEPTED:

Energy Future Holdings Corp. on behalf of itself and its subsidiaries and/or affiliates

By: _____

Title: _SVP + General Tax Counsel_

Date: _9-22-14_
Enclosures

Exhibit A
**Energy Future Holdings Corp.**
**Statement of Work Order**

Work Order Number: _____    Authorized Start Date: _____

This Work Order incorporates the terms and conditions of the Engagement Letter between Deloitte Tax LLP ("Deloitte Tax") and Energy Future Holdings Corp. and its subsidiaries and/or affiliates ("Client") dated September 19, 2014.

**Description of Services:**


**Estimated Timing for Services and Deliverables (if any):**


**Fees and Expenses (if different from the provisions stated in the Engagement Letter):**


**Client Responsibilities:**


**Other Terms (if applicable):**


Your signature constitutes Client's consent to disclosure and use of Client's tax return information in the manner described above.


**Energy Future Holdings Corp.** on behalf of itself    **Deloitte Tax LLP**
and its subsidiaries and/or affiliates

By: _____    By: _____

Printed
Name: Carla Howard    Printed
Name: _____

Title: SVP & General Tax Counsel    Title: _____

Date: 9-22-14    Date: _____

Exhibit B

| Personnel Classification | Hourly Rates |
|---|---|
| Partner/Principal/Director | $720 |
| Senior Manager | $620 |
| Manager | $540 |
| Senior Staff | $425 |
| Staff | $350 |

## Deloitte Tax LLP General Business Terms – Page 1

1.      **Services.** It is understood and agreed that services (the "Services") provided by Deloitte Tax, (as defined in paragraph 12 below), under the engagement letter to which these terms are attached (the "Engagement Letter") may include advice and recommendations, but all decisions in connection with the implementation of such advice and recommendations shall be the responsibility of, and made by, the Client. As the specific Service desired by Client from Deloitte Tax is identified, Client and Deloitte Tax may execute a separate work order ("Work Order"), the form of which is attached to the Engagement Letter as Exhibit A. For purposes of these terms and the Engagement Letter, the "Client" shall mean Energy Future Holdings Corp. and its subsidiaries and/or affiliates. Energy Future Holdings Corp. represents and warrants that it has the power and authority to execute the Engagement Letter on behalf of, and to bind, itself and its subsidiaries and/or its affiliates.

2.      **Payment of Invoices.** Subject to any applicable Bankruptcy Court orders, rules or procedures, except as otherwise provided in a Work Order, Deloitte Tax's invoices are due within thirty (30) days of the invoice date. Without limiting its rights or remedies, Deloitte Tax shall have the right to halt or terminate the Services entirely if payment is not received within thirty (30) days of the invoice date, subject to any applicable Bankruptcy Court orders, rules or procedures. The Client shall be responsible for all taxes imposed on the Services or on the transaction, other than Deloitte Tax's income taxes imposed on a net basis or by employment withholding. and other than taxes imposed on Deloitte Tax's property.

3.      **Term.** Unless terminated sooner in accordance with its terms, this engagement shall terminate on the completion of the Services; provided, however, that the Engagement Letter and these terms shall continue to apply to all Work Orders that are in existence at the effective date of such termination and under which the Services have not been completed. This engagement or a Work Order may be terminated by either party at any time, with or without cause, by giving written notice to the other party not less than thirty (30) days before the effective date of termination; provided that, in the event of a termination for cause, the breaching party shall have the right to cure the breach within the notice period. If any individual Work Order is terminated pursuant to this section, the Engagement Letter and these terms shall continue to apply to all Work Orders that have not been terminated. Deloitte Tax may terminate this engagement, any Work Order or the performance of any Services upon written notice to the Client if Deloitte Tax determines that (a) a governmental, regulatory or professional entity (including, without limitation, the American Institute of Certified Public Accountants, the Public Company Accounting Oversight Board (the "PCAOB") or the Securities and Exchange Commission) or an entity having the force of law has introduced a new, or modified an existing, law, rule, regulation, interpretation or decision, the result of which would render Deloitte Tax's performance of any part of the engagement illegal or otherwise unlawful or in conflict with independence or professional rules, or (b) circumstances change (including, without limitation, changes in ownership of the Client or any of its affiliates) such that Deloitte Tax's performance of any part of the engagement would be illegal or otherwise unlawful or in conflict with independence or professional rules. Upon termination of the engagement, the Client will compensate Deloitte Tax under the terms of the Engagement Letter for the Services performed and expenses incurred through the effective date of termination.

4.      **Ownership of Deloitte Tax Property.** To the extent that Deloitte Tax utilizes any of its property (whether tangible or intangible) in connection with this engagement, such property shall remain the property of Deloitte Tax, and the Client shall not acquire any right or interest in such property. Deloitte Tax shall have ownership (including, without limitation, copyright ownership) and all rights to use and disclose its ideas, concepts, know-how, methods, techniques, processes and skills, and adaptations thereof in conducting its business, and the Client shall not assert or cause to be asserted against Deloitte Tax or its personnel any prohibition or restraint from so doing. In the course of performing the Services, Deloitte Tax may provide to Client, solely for its convenience, spread sheets, models or other software tools. Such items are provided to the Client in "as is" condition without warranty of any kind and Deloitte Tax assumes no responsibility for results obtained by anyone other than Deloitte Tax from the use of such items. Client expresses no opinion as to the proprietary nature of intellectual property of either party to this agreement.

5.      **Limitation on Warranties.** THIS IS A SERVICES ENGAGEMENT. DELOITTE TAX WARRANTS THAT IT SHALL PERFORM THE SERVICES IN GOOD FAITH AND WITH DUE PROFESSIONAL CARE IN ACCORDANCE WITH REASONABLE STANDARDS OF CARE, SKILL AND DILIGENCE CONSISTENT WITH THE APPLICABLE STANDARDS OF THE AMERICAN INSTITITUE OR CERTIFIED PUBLIC ACCOUNTANTS OR THE STATE ACCOUNTANCY BOARD FOR THE STATE WITHIN WHICH SERVICES ARE TO BE PERFORMED. DELOITTE TAX DISCLAIMS ALL OTHER WARRANTIES, EITHER EXPRESS OR IMPLIED, INCLUDING, WITHOUT LIMITATION, WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE.

6.      **Limitation on Damages.** [Intentionally omitted.]

**Deloitte Tax LLP General Business Terms – Page 2**

7.      **Client Responsibilities.** In addition to any responsibilities set forth in a Work Order, the Client shall cooperate with Deloitte Tax in the performance by Deloitte Tax of the Services, including, without limitation, providing Deloitte Tax with reasonable facilities and timely access to data, information and personnel of the Client. The Client shall be responsible for the performance of its personnel and agents and for the accuracy and completeness of all data and information provided to Deloitte Tax for purposes of the performance by Deloitte Tax of the Services.  The Client acknowledges and agrees that Deloitte Tax's performance is dependent upon the timely and effective satisfaction of the Client's responsibilities under the engagement and any Work Order and timely decisions and approvals of the Client in connection with the Services.  Deloitte Tax shall be entitled to rely on all decisions and approvals of the Client.  The Client shall be solely responsible for, among other things: (a) making all management decisions and performing all management functions; (b) designating an individual who possesses suitable skill, knowledge, and/or experience, preferably within senior management, to oversee the Services; (c) evaluating the adequacy and results of the Services performed; (d) accepting responsibility for the results of the Services; and (e) establishing and maintaining internal controls, including, without limitation, monitoring ongoing activities.

8.      **Force Majeure.** Except for the payment of money, neither party shall be liable for any delays or nonperformance directly or indirectly resulting from circumstances or causes beyond its reasonable control, including, without limitation, acts or omissions or the failure to cooperate by the other party (including, without limitation, entities or individuals under its control or any of their respective officers, directors, employees, other personnel and agents), acts or omissions or the failure to cooperate by any third party, fire, epidemic or other casualty, act of God, strike or labor dispute, war or other violence or any law, order or requirement of any governmental agency or authority.

9.      **Limitation on Actions.** No action, regardless of form, relating to this engagement, any Work Order or the Services may be brought by either party more than one year after the cause of action has accrued, except that an action for nonpayment may be brought by a party not later than one year following the date of the last payment due to the party bringing such action.

10.     **Independent Contractor.** Nothing contained in these terms shall alter in any way the duties imposed by law on Deloitte Tax in respect of the services to be provided by Deloitte Tax under this engagement.  It is understood and agreed that each party hereto is an independent contractor and that neither party is, nor shall be considered to be, the other's agent, distributor, partner, joint venturer, co-owner or representative.  Neither party shall act or represent itself, directly or by implication, in any such capacity or in any manner assume or create any obligation on behalf of, or in the name of, the other.

11.     **Confidentiality.** To the extent that, in connection with this engagement or any Work Order, Deloitte Tax comes into possession of any tax return information, trade secrets or other proprietary or confidential information of the Client, Deloitte Tax will not disclose such information to any third party without the Client's consent. The Client hereby consents to Deloitte Tax disclosing such information (a) to any affiliate or related entity (including its partners, principals and employees), or to other subcontractors, in each case, whether located within or outside of the United States, that are providing Services in connection with this engagement or any Work Order and that have agreed to be bound by confidentiality obligations similar to those in this paragraph 11; (b) is required by law, regulation, judicial or administrative process, or in accordance with applicable professional standards, or in connection with litigation pertaining to this engagement or any Work Order after discussion with Client;or (b) to the extent such information (i) shall have otherwise become publicly available (including, without limitation, any information filed with any governmental agency and available to the public) other than as the result of a disclosure by Deloitte Tax in breach hereof, (ii) becomes available to Deloitte Tax on a non-confidential basis from a source other than the Client which Deloitte Tax believes is not prohibited from disclosing such information to Deloitte Tax by obligation to the Client after advising Client of the knowledge, (iii) is known by Deloitte Tax prior to its receipt from the Client without any obligation of confidentiality with respect thereto, or (iv) is developed by Deloitte Tax independently of any disclosures made by the Client to Deloitte Tax of such information.  In satisfying its obligations under this paragraph, Deloitte Tax shall maintain the Client's trade secrets and proprietary or confidential information in confidence using at least the same degree of care as it employs in maintaining in confidence its own trade secrets and proprietary or confidential information, but in no event less than a reasonable degree of care.  Notwithstanding anything to the contrary herein, the Client acknowledges that Deloitte Tax, in connection with performing the Services, may develop or acquire experience, skills, knowledge, and ideas that are retained in the unaided memory of its personnel.  The Client acknowledges and agrees that Deloitte Tax may use and disclose such experience, skills, knowledge and ideas.  However, in no instance will Deloitte Tax disclose Client name or other identifying information of the Client (including geography, industry, merger and acquisition activity or IRS issues or proceedings of the Client).

**Deloitte Tax LLP General Business Terms – Page 3**

12.      **Survival and Interpretation.** The agreements and undertakings of the Client contained in the Engagement Letter, together with all paragraphs herein relating to payment of invoices, ownership of Deloitte Tax property, limitations on warranties, limitations on damages, limitations on actions, confidentiality, survival and interpretation, assignment and subcontracting, waiver of jury trial, indemnification, governing law, venue, jurisdiction and severability, information and data, and third parties and internal use shall survive the expiration or termination of this engagement or any Work Order. For purposes of these terms, Deloitte Tax shall mean Deloitte Tax LLP and Deloitte Tax Products Company LLC, one of its subsidiaries. The Client acknowledges and agrees that no affiliated or related entity of Deloitte Tax, whether or not acting as a subcontractor (or such entity's personnel) shall have any liability hereunder to the Client or any other person, and the Client will not bring any action against any such affiliated or related entity of Deloitte Tax (or such entity's personnel) in connection with this engagement or any Work Order. Without limiting the foregoing, affiliated and related entities of Deloitte Tax are intended third-party beneficiaries of these terms and the agreements and undertakings of Client contained in any Work Order. Any affiliated or related entity of Deloitte Tax may in its own right enforce such terms, agreements and undertakings. **The provisions of paragraphs 5, 6, 9, 12, 14, 15, 16 and 18, hereof shall apply to the fullest extent of the law, whether in contract, statute, tort (such as *negligence*), or otherwise, notwithstanding the failure of the essential purpose of any remedy.**

13.      **Assignment and Subcontracting.** Except as provided below, neither party may assign, transfer or delegate any of its rights or obligations hereunder (including, without limitation, interests or Claims) without the prior written consent of the other party. The Client hereby consents to Deloitte Tax assigning or subcontracting any of Deloitte Tax's rights or obligations under this engagement or any Work Order to (a) any affiliate or related entity, whether located within or outside of the United States, or (b) any entity which acquires all or a substantial part of the assets or business of Deloitte Tax. Services performed by Deloitte Tax subcontractors shall be invoiced as professional fees on the same basis as Services performed by Deloitte Tax personnel, unless otherwise agreed.

14.      **DISPUTE RESOLUTION.** Any Dispute (as defined below) arising out of or relating to the Services performed under this Engagement Letter prior to the effective date of (a) a plan of reorganization of the Client or (b) a court order dismissing the Client's chapter 11 case or cases (the "Effective Date") shall be brought in the Bankruptcy Court (or the District Court (each as defined below), if such District Court withdraws the reference to the Bankruptcy Court). All other Disputes, including, without limitation, Disputes arising out of or relating to services performed after the Effective Date and Disputes over which the Bankruptcy Court (or the District Court) does not have, retain or exercise jurisdiction, shall be resolved by mediation or binding arbitration as set forth in the following paragraphs (the "Dispute Resolution Provision"). The parties each hereby irrevocably waive, to the fullest extent permitted by law, all rights to trial by jury in any Dispute. The foregoing shall be binding up on the parties and any and all of their respective permitted successors and assigns. This paragraph and the Dispute Resolution Provision shall apply to the fullest extent of the law, whether in contract, statute, tort (such as negligence), or otherwise. For purpose of the foregoing, (a) "Dispute" shall mean any controversy or claim between the parties arising out of or relating to the engagement letter, including its appendices, or this engagement, (b) "Bankruptcy Court" shall mean the United States Bankruptcy Court for the District of Delaware and (b) "District Court" shall mean the United States District Court of which the Bankruptcy Court constitutes a unit.

*Dispute Resolution Provision*

This Dispute Resolution Provision sets forth the dispute resolution process and procedures applicable to the resolution of certain Disputes as set forth in the immediately preceding paragraph.

All Disputes not heard by the Bankruptcy Court or the District Court as set forth in the first paragraph of this section paragraph shall be first submitted to nonbinding confidential mediation by written notice to the parties, and shall be treated as compromise and settlement negotiations under the standards set forth in the Federal Rules of Evidence and all applicable state counterparts, together with any applicable statutes protecting the confidentiality of mediations or settlement discussions. If the parties cannot agree on a mediator, the International Institute for Conflict Prevention and Resolution ("CPR"), at the written request of a party, shall designate a mediator.

If a Dispute has not been resolved within 90 days after the effective date of the written notice beginning the mediation process (or such longer period, if the parties so agree in writing), the mediation shall terminate and the Dispute shall be settled by binding arbitration to be held in Dallas, Texas. The arbitration shall be solely between the parties and shall be conducted in accordance with the CPR Rules for Non-Administered Arbitration that are in effect at the time of the commencement of the arbitration, except to the extent modified by this Dispute Resolution Provision (the "Rules").

**Deloitte Tax LLP General Business Terms – Page 4**

The arbitration shall be conducted before a panel of three arbitrators. Each of the Client and Deloitte Tax shall designate one arbitrator in accordance with the "screened" appointment procedure provided in the Rules and the two party-designated arbitrators shall jointly select the third in accordance with the Rules. No arbitrator may serve on the panel unless he or she has agreed in writing to enforce the terms of the Engagement Letter (including its appendices) to which this Dispute Resolution Provision is part and to abide by the terms of this Dispute Resolution Provision. The arbitrators may render a summary disposition relative to all or some of the issues, provided that the responding party has had an adequate opportunity to respond to any such application for such disposition. Discovery shall be conducted in accordance with the Rules.

All aspects of the arbitration shall be treated as confidential, as provided in the Rules. Before making any disclosure permitted by the Rules, a party shall give written notice to all other parties and afford such parties a reasonable opportunity to protect their interests. Further, judgment on the arbitrators' award may be entered in any court having jurisdiction.

Each party shall bear its own costs in both the mediation and the arbitration; however, the parties shall share the fees and expenses of both the mediators and the arbitrators equally.

**15.     Indemnification.** The Client shall indemnify and hold harmless Deloitte Tax, its subcontractors and their respective personnel from all Claims relating to this engagement, any Work Order or the Services under any Work Order, except to the extent finally judicially determined to have resulted primarily from the gross negligence, bad faith or intentional misconduct of Deloitte Tax or its subcontractors. In circumstances where all or any portion of the provisions of this paragraph are finally determined to be unavailable, the aggregate liability of Deloitte Tax, its subcontractors and their respective personnel for any Claim shall not exceed an amount which is proportional to the relative fault that their conduct bears to all other conduct giving rise to such Claim.

**16.     Governing Law and Severability.** These terms, the Engagement Letter, including exhibits, each Work Order and all matters relating to this engagement and each Work Order shall be governed by, and construed in accordance with, the laws of the State of New York (without giving effect to the choice of law principles thereof) except (i) to the extent governed by the bankruptcy laws of the United States and (ii) with respect to the interpretation and enforcement of the arbitration procedures set forth in the Dispute Resolution Provision (which shall be governed by the Federal Arbitration Act). If any provision of such terms or the Engagement Letter is found by a court of competent jurisdiction to be unenforceable, such provision shall not affect the other provisions, but such unenforceable provision shall be deemed modified to the extent necessary to render it enforceable, preserving to the fullest extent permissible the intent of the parties set forth herein.

**17.     Information and Data.** Deloitte Tax shall be entitled to assume, without independent verification, the accuracy of all representations, assumptions, information and data that the Client and its representatives provide to Deloitte Tax. All assumptions, representations, information and data to be supplied by the Client and its representatives will be complete and accurate to the best of the Client's knowledge. Deloitte Tax may use information and data furnished by others; however, Deloitte Tax shall not be responsible for, and Deloitte Tax shall provide no assurance regarding, the accuracy of any such information or data. Except as specifically agreed to in writing, Deloitte Tax shall not provide advice regarding the financial accounting treatment of any transaction implemented from the Services and will not assume any responsibility for any financial reporting with respect to the Services. The Client shall be responsible for all financial information and statements provided by or on behalf of the Client with respect to any of the Services. Deloitte Tax shall have no responsibility to address any legal matters or questions of law, other than tax law.

**18.     Third Parties and Internal Use.** Deloitte Tax acknowledges that Deloitte Tax has not placed any limitations on the Client's disclosure of the tax treatment or tax structure associated with the tax Services or transactions described in the Engagement Letter, any related Work Order and Services provided pursuant to the Engagement Letter and any related Work Order. Nothing in this paragraph shall be construed as limiting or restricting disclosure of the tax treatment or tax structure of the transaction as described in Rule 3501(c)(i) of PCAOB Release 2005-014 or Internal Revenue Code ("IRC") sections 6011 and 6111 and related Internal Revenue Service ("IRS") guidance. The Client acknowledges that none of its other advisors have imposed or will impose any conditions of confidentiality with respect to the tax treatment or tax structure associated with the tax Services or transactions described in the Engagement Letter or a Work Order. All Services shall be solely for the Client's informational purposes and internal use, and this engagement does not create privity between Deloitte Tax and any person or party other than the Client ("third party"). This engagement is not intended for the express or implied benefit of any third party. Unless otherwise agreed to in writing by Deloitte Tax, no third party is entitled to rely, in any manner or for any purpose, on the advice, opinions, reports or other Services of Deloitte Tax. In the event of any unauthorized reliance, the Client agrees to indemnify and hold harmless Deloitte Tax and its personnel from all third-party claims, liabilities, costs and expenses.

**Deloitte Tax LLP General Business Terms – Page 5**

19.   **Certain Tax Disclosures and Reporting.** In accordance with IRC sections 6111 and 6112, Deloitte Tax may be required to report to the IRS or certain state tax authorities the Services including without limitation any related tax transaction(s) described in the Engagement Letter or a Work Order as well as the Client's participation therein. In addition, separate and apart from any reporting by Deloitte Tax, the Client, in accordance with IRC section 6011, may also be required to disclose to a taxing authority its participation in one or more transactions which are the subject of this Engagement Letter and any Work Order executed pursuant to the Engagement Letter and these terms. The determination of whether, when and to what extent Deloitte Tax and the Client should comply with their respective federal or state "tax shelter" reporting requirements will be made exclusively and respectively by Deloitte Tax and the Client. Deloitte Tax and the Client further agree that (i) any liability for fines or penalties or any other consequences resulting from non-compliance by one party with applicable tax disclosure or reporting rules will be borne or incurred exclusively by the non-compliant party, and (ii) any request by the Client of Deloitte Tax for services in identifying or otherwise consulting on transactions subject to IRC section 6011 or corresponding state law and the reporting or disclosing thereof will be the subject of a separate engagement letter.

20.   **Accountant / Client Privilege – IRC §7525.** The Client should be aware that certain information discussed with personnel of Deloitte Tax who are Federally Authorized Tax Practitioners or their agents for the purpose of obtaining Deloitte Tax's advice on tax matters may be privileged from disclosure in any non-criminal tax matters before the IRS and in non-criminal proceedings in Federal court that stem from matters before the IRS, if the United States is a party to the proceedings. The Client is solely responsible for managing the recognition, establishment and maintenance of the confidentiality privilege. The Client must notify Deloitte Tax if the Client wishes to invoke the confidentiality privilege, and Deloitte Tax will cooperate with the Client's reasonable instructions relating to the confidentiality privilege. Circumstances may arise under which the Client may wish to divulge or have Deloitte Tax divulge privileged information to other parties. The Client should be aware that such disclosure might result in a waiver of the confidentiality privilege. Accordingly, if the Client wishes Deloitte Tax to divulge such information, Deloitte Tax shall require the Client to provide Deloitte Tax in advance with written authority to make such disclosures. In addition, if it is ultimately determined that a significant purpose of the tax matter was to avoid or evade any U.S. federal income tax, the Client should be aware that the confidentiality privilege under §7525 of the Internal Revenue Code will not apply to any communications between the Client and Deloitte Tax.

In the event that Deloitte Tax receives a request from a third party (including a subpoena, summons or discovery demand in litigation) calling for the production of privileged information, Deloitte Tax will promptly notify the Client and will follow the Client's reasonable instructions regarding any third party requests or needs for such material before Deloitte Tax would disclose same as may be required under applicable law or rules. The Client agrees to hold Deloitte Tax harmless from, and also assumes responsibility for, any expenses (including attorney's fees, court costs, costs incurred by outside advisors and any other cost imposed whether by way of penalty or otherwise) incurred by Deloitte Tax as a result of the Client's assertion of the confidentiality privilege or the Client's direction to Deloitte Tax to assert the confidentiality privilege on behalf of the Client.

# Energy Future Holdings Corp.
# FIRPTA Analysis

## Work Order Number:2014-01

This Work Order incorporates the terms and conditions of the Engagement Letter between Deloitte Tax LLP ("Deloitte Tax") and Energy Future Holdings Corp. and its subsidiaries and/or affiliates ("Client") dated September 19, 2014 (the "Engagement Letter").

**Description of Services and Deliverables:**

Deloitte Tax will provide tax advisory services ("Services") for Client as Client undertakes an analysis and updating of its Foreign Investment in Real Property Tax Act, referred to as "FIRPTA" analysis.   Services will be based solely upon Client data provided by Client and valuation data provided by Duff & Phelps. Specifically, the Services will include the following:

- A brief written general overview of FIRPTA inclusive of the current methodology to comply with FIRPTA as communicated to Client at conclusion of the FIRPTA study in 2008;
- Analysis of monthly FIRPTA calculations for the year 2013 (January through November of 2013) currently being prepared by the Client;
- Valuation discussion with Duff & Phelps; and
- Assistance with and/or communication of potential adjustments to Client's monthly FIRPTA study methodology for Client's review and acceptance.

All management decisions and final conclusions reached in connection with this engagement will be the responsibility of Client.  Deloitte Tax will not perform any management functions, make any management decisions, or perform in the capacity equivalent to that of an employee of Client.

## Estimated Timing for Services, and Deliverables (if any):

Services will begin as soon as this Work Order is executed and the deliverables as noted above will be finalized and provided to Client within two weeks from the date that the FIRPTA analysis and accompanying work papers necessary for analysis are provided by Client. Deliverables will be provided to Client in a portable document format ("pdf") (or alternative format as necessary).

## Fees and Expenses (if different from the provisions stated in the Engagement Letter):

Deloitte Tax fees for Services are based upon the amount of professional time required and our consulting agreed-upon hourly rates, which vary depending upon the experience of the professionals involved, plus reasonable out-of-pocket expenses.  The Deloitte Tax professional fee to be incurred for the performance of the Services is estimated to be $20,000-$25,000.  If Client and Deloitte Tax discover that additional time is required to complete Services (and the estimated fee range may change), the parties will agree upon the additional time required and document the agreement in writing.

Subject to any applicable Bankruptcy Court orders, rules or procedures, Deloitte Tax fees for Services and expenses will be billed on a monthly basis as incurred. The fees and expenses are not dependent upon the findings or results of the Services or the ultimate resolution of any items with the taxing authorities, nor are these amounts contingent or refundable.

**Energy Future Holdings – SOW # 2014-01**
**FIRPTA Analysis – Page 2**

## Client Responsibilities:

Prior to the start of Services, Client will provide Deloitte Tax with appropriate financial data pertaining to FIRPTA methodology for the January 2013 – November 2013 monthly calculations and the relevant valuation information for the December 2013 FIRPTA analysis.

## Other Terms:

In addition to the acknowledgements in the Engagement Letter, Client acknowledges and agrees that the Services provided pursuant to this Work Order will be based solely upon:

(a) Client's understanding that due to the limitation on the scope of services that is imposed on Deloitte Tax under Public Company Accounting Oversight Board Rule 3522: Tax Transactions, Deloitte Tax will not advise Client on matters for which Deloitte Tax does not believe have at least a more likely than not probability of success under the applicable tax laws;

(b) Client's understanding that Deloitte Tax shall not analyze or provide advice regarding the financial accounting treatment of any operating structure or transaction analyzed as part of our engagement;

(c) Client's understanding that Deloitte Tax has not been engaged to and therefore cannot and will not be involved in Client's calculation of any financial statement provision for income taxes or any other related balance sheet asset or liability account amounts or related disclosures. Client is solely responsible for the appropriate application of any financial accounting pronouncements, including ASC 740, in its financial statements; and

(d) Client will be solely responsible for the design and operation of effective internal controls and for complying with all applicable laws and regulations. In the performance of the Services, Deloitte Tax will not perform any evaluation of internal controls and procedures for financial reporting upon which Client's management can base its assertion in connection with the Sarbanes-Oxley Act of 2002 or related rules or regulations. In addition, Deloitte Tax will not provide any legal advice or conduct a legal review of any of Client's documents, records or policies.

Client acknowledges that Client's tax return information may be disclosed to Deloitte Tax affiliates or related entities (or their affiliates) including Deloitte Tax Services India Private LTD.

Your signature constitutes Client's consent to disclosure and use of Client's tax return information in the manner described above.

| **Energy Future Holdings Corp.** on behalf of itself and its subsidiaries and/or affiliates | **Deloitte Tax LLP** |
|---|---|
| By: | By: |
| Printed Name: Carla Howard | Printed Name: Vickie F. Carr |
| Title: SVP & General Tax Counsel | Title: Tax Partner |
| Date: 9-22-14 | Date: September 19, 2014 |