# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | ) | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) | Case No. 14-10979 (CSS) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | **Objections due:  March 10, 2015 at 4:00 p.m. (ET)** |
| | ) | |

## FIRST INTERIM FEE APPLICATION OF
## MUNGER, TOLLES & OLSON LLP, COUNSEL TO
## DEBTORS AND DEBTORS IN POSSESSION ENERGY FUTURE COMPETITIVE
## HOLDINGS COMPANY LLC AND TEXAS COMPETITIVE ELECTRIC
## HOLDINGS COMPANY LLC, FOR THE PERIOD FROM
## NOVEMBER 16, 2014 THROUGH AND INCLUDING DECEMBER 31, 2014

Munger, Tolles & Olson LLP ("MTO"), counsel to the debtors and debtors in possession Energy Future Competitive Holdings Company LLC ("EFCH") and Texas Competitive Electric Holdings Company LLC ("TCEH" and together with EFCH and their debtor subsidiaries, the "TCEH Debtors"), hereby submits its first interim fee application (the "Fee Application") for allowance of compensation for professional services provided in the amount of $1,195,324.75 and reimbursement of actual and necessary expenses in the amount of $14,202.34 that MTO incurred for the period from November 16, 2014 through December 31, 2014 (the "Fee Period"). In support of this Fee Application, MTO submits the declaration of Todd J. Rosen, a partner at MTO, (the "Rosen Declaration"), which is attached hereto as **Exhibit A** and incorporated by reference. In further support of this Fee Application, MTO respectfully states as follows.

---

[1] The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, for which joint administration has been granted, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

**Jurisdiction**

1.  The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

2.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.  The bases for the relief requested herein are sections 330 and 331 of title 11 of the United States Code (the "Bankruptcy Code"), rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), rules 2016-1 and 2016-2 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Bankruptcy Rules"), the *Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Professionals* [D.I. 2066] (the "Interim Compensation Order"), and the *Stipulation and Order Appointing a Fee Committee* [D.I. 1896] (the "Fee Committee Order").

**Background**

4.  On April 29, 2014 (the "Petition Date"), Energy Future Holdings Corp.("EFH Corp.") and certain of its affiliates (collectively, the "Debtors") filed voluntary petitions with the Court under chapter 11 of the Bankruptcy Code. The Debtors are operating their businesses and managing their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. The Court has entered a final order for joint administration of these chapter 11 cases. The Court has not appointed a trustee. The Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") formed (a) an official committee of unsecured creditors composed of creditors of the TCEH Debtors and their direct and indirect affiliates and of creditors of EFH Corporate Services Company (collectively, the "TCEH Creditors' Committee") in these chapter 11 cases on May 13, 2014 [D.I. 420] and (b) an official committee of unsecured

creditors composed of creditors of Debtors EFH Corp., Energy Future Intermediate Holding Company, LLC, EFIH Finance, Inc. and EECI, Inc. (the "EFH Creditors' Committee" and, together with the TCEH Creditors' Committee, the "Committees") in these chapter 11 cases on October 27, 2014 [D.I. 2570]. Further information regarding the Debtors' business operations and capital structure is set forth in the declaration of Paul Keglevic in support of the Debtors' first day motions [D.I. 98] (the "First Day Declaration").

5. On September 16, 2014, the Court entered the Interim Compensation Order, which sets forth the procedures for interim compensation and reimbursement of expenses for all retained professionals in these cases. On August 21, 2914, the Court entered the Fee Committee Order, appointing a fee committee (the "Fee Committee") to review and report, as appropriate, on interim and final fee applications filed by retained professionals. On October 3, 2014, October 7, 2014, and December 1, 2014, the Fee Committee distributed guidelines to the professionals retained in these chapter 11 cases regarding a number of topics, including expense reimbursements, fee review criteria, and the contents of interim fee applications (collectively, the "Fee Committee Guidelines").

**MTO Retention**

6. On January 13, 2015, the Court entered the *Order Authorizing the Retention and Employment of Munger, Tolles & Olson LLP as Counsel to Debtors and Debtors in Possession Energy Future Competitive Holdings Company LLC and Texas Competitive Electric Holdings Company LLC Effective* Nunc Pro Tunc *to November 16, 2014*, dated January 13, 2015 [D.I. 3279] (the "Retention Order"). The Retention Order authorizes the TCEH Debtors to compensate and reimburse MTO in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, the Fee Committee Order, and the Interim Compensation Order. The Retention Order also authorizes the TCEH Debtors to compensate MTO at the

3

hourly rates it charges for services of this type and to reimburse MTO for certain actual and necessary out-of-pocket expenses incurred, subject to application to this Court. The particular terms of MTO's engagement are detailed in the engagement letter by and between MTO and Hugh E. Sawyer, the disinterested manager of the TCEH Debtors, effective as of November 16, 2014 [D.I. 3040-2] (the "Engagement Letter").

7.      After the Retention Order was entered, MTO received and reviewed the Fee Committee Guidelines. MTO believes that the relief requested herein complies with those guidelines.

**MTO Disinterestedness**

8.      To the best of the Debtors' knowledge and as disclosed in the *Declaration of Todd J. Rosen in Support of the Debtors' Application for the Entry of an Order Authorizing the Retention and Employment of Munger, Tolles & Olson LLP as Counsel to Debtors and Debtors in Possession Energy Future Competitive Holdings Company LLC and Texas Competitive Electric Holdings Company LLC Effective* Nunc Pro Tunc *to November 16, 2014,* dated December 16, 2014 [D.I. 3040-4] and the *First Supplemental Declaration of Todd J. Rosen in Support of the Debtors' Application for the Entry of an Order Authorizing the Retention and Employment of Munger, Tolles & Olson LLP as Counsel to the Debtors and Debtors in Possession Energy Future Competitive Holdings Company LLC and Texas Competitive Electric Holdings Company LLC Effective* Nunc Pro Tunc *to November 16, 2014*, dated January 8, 2015 [D.I. 3198-1] (together, the "Retention Declarations") (a) MTO is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code, as required by section 327(a) of the Bankruptcy Code, and does not hold or represent an interest adverse to the Debtors' estates and (b) MTO has no connection to the Debtors, their creditors, or other parties-in-interest, except as may be disclosed in the Retention Declarations.

9.       MTO may have in the past represented, may currently represent, and likely in the future will represent parties-in-interest in connection with matters unrelated to the Debtors in these chapter 11 cases. In the Retention Declarations, MTO disclosed its connections to parties-in-interest that it has been able to ascertain using its reasonable efforts. MTO will update the Retention Declarations, as appropriate, if MTO becomes aware of relevant and material new information.

10.      MTO performed the services for which it is seeking compensation on behalf of the TCEH Debtors and their estates, and not on behalf of any committee, creditor, or other entity. MTO has received no payment and no promises for payment from any source other than the TCEH Debtors for services provided or to be provided in any capacity whatsoever in connection with these chapter 11 cases. MTO has not shared, nor has MTO agreed to share (a) any compensation it has received or may receive with another party or person other than with the partners, counsel, and associates of MTO or (b) any compensation another person or party has received or may receive.

**Relief Requested**

11.      MTO seeks interim compensation for professional services rendered to the Debtors during the Fee Period in the amount of $1,195,324.75 and reimbursement of actual and necessary expenses incurred in connection with providing such services in the amount of $14,202.34. In accordance with paragraph 2(b) of the Interim Compensation Order, all of the fees and expenses MTO seeks in this Fee Application are allocated to TCEH.

12.      MTO submitted Monthly Fee Statements (as defined in the Interim Compensation Order) for each of November and December 2014, seeking payment of (a) 80 percent of the fees incurred by the TCEH Debtors for reasonable and necessary professional services rendered by MTO and (b) 100 percent of the actual and necessary costs and expenses

incurred by MTO in connection with the services provided to the TCEH Debtors for each month. As of the time of this filing, no party has objected to the Monthly Fee Statements. The objection deadline is February 23, 2015. As of the date hereof, MTO has not received any payments under the Interim Compensation Order and the Fee Committee Order.

13.   MTO seeks, by this Fee Application, payment of the 20 percent holdback on fees required under the Interim Compensation Order in the amount of $239,064.95.[2] To the extent that the amounts requested in the Monthly Fee Statements have not been paid by the time of the hearing on this Fee Application, MTO also seeks payment of such amounts.

### Fees and Expenses Incurred During Fee Period

**A.    Customary Billing Disclosures**.

14.   MTO's hourly rates are set at a level designed to compensate MTO fairly for the work of its attorneys and paraprofessionals and to cover fixed and routine expenses. The hourly rates and corresponding rate structure MTO uses in its representation of the TCEH Debtors are the same as the hourly rates and corresponding rate structure that MTO uses in other bankruptcy representations, and are comparable to the hourly rates and corresponding rate structure that MTO uses for complex corporate and litigation matters, whether in court or otherwise, regardless of whether a fee application is required. For the convenience of the Court and all parties-in-interest, attached hereto as **Exhibit B** is a summary of the blended hourly rates for non-EFH matters in 2014 and the blended hourly rates applicable to this Fee Application.

**B.    Fees Incurred During Fee Period**.

15.   In the ordinary course of MTO's practice, MTO maintains computerized records of the time expended to render the professional services required by the TCEH Debtors

---

[2]   As of the date of filing this Application, MTO has not yet received the 80 percent ($956,259.80) sought for fees in the Monthly Fee Statements.

and their estates. For the convenience of the Court and all parties-in-interest, attached hereto as **Exhibit C** is a summary of fees incurred and hours expended during the Fee Period, setting forth the following information:

- the name of each attorney and paraprofessional for whose work on these chapter 11 cases compensation is sought;

- each attorney's year of bar admission and area of practice concentration;

- the aggregate time expended and fees billed by each attorney and each paraprofessional during the Fee Period;

- the hourly billing rate for each attorney and each paraprofessional at MTO's billing rates during the Fee Period;

- the number of rate increases since the inception of the case; and

- a calculation of total compensation requested using the rates disclosed in *Debtors Energy Future Competitive Holdings Company LLC and Texas Competitive Electric Holdings Company LLC's Application for Entry of an Order Authorizing the Retention and Employment of Munger, Tolles & Olson LLP as Counsel to Debtors and Debtors in Possession Debtors Energy Future Competitive Holdings Company LLC and Texas Competitive Electric Holdings Company LLC Effective* Nunc Pro Tunc *to November 16, 2014* [D.I. 3040].

C.   **Actual and Necessary Expenses Incurred During Fee Period**.

16.   It is MTO's policy to charge its clients in all areas of practice for expenses incurred in connection with its clients' cases. The expenses charged to clients include, among other things, telephone conference call and international call charges, mail, express mail, and overnight delivery service charges, special or hand delivery charges, document retrieval charges, charges for mass mailings (including envelopes and labels) provided by MTO to outside copying services, airfare, meals, lodging, transcription costs, and non-ordinary overhead expenses. MTO charges the TCEH Debtors for these expenses in a manner and at rates consistent with charges made generally to MTO's other clients and within the guidelines set forth in Rule 2014-1 of the Local Rules and all amendments and supplemental standing

orders of the Court. MTO believes that it is more appropriate to charge these expenses to the clients incurring them than to increase the hourly rates and spread the expenses among all clients. MTO does not charge clients for office supplies, standard duplication, facsimile transmissions, secretarial support, or Westlaw computer-assisted legal research.

17. For the convenience of the Court and all parties-in-interest, **Exhibit D** contains a summary of expenses for which MTO is seeking reimbursement by category and **Exhibit E** contains MTO's detailed records of expenses incurred during the Fee Period in the rendition of professional services to the TCEH Debtors and their estates.

18. MTO regularly reviews its bills to ensure that the TCEH Debtors are only billed for services that were actual and necessary and, where appropriate, prorates expenses. MTO has waived $3,983.28 of expenses in accordance with the Fee Committee Guidelines.

**Summary of Legal Services Rendered During the Fee Period**

19. The TCEH Debtors retained MTO to render professional services in connection with Conflict Matters (as defined in the Retention Order). MTO's work is supervised by Hugh E. Sawyer, the disinterested manager of the TCEH Debtors.

20. During the Fee Period, MTO analyzed and provided advice to the TCEH Debtors on various Conflict Matters, including: (a) the Oncor bid process; (b) the governance process and protocols for the disinterested directors and managers of the Debtors; (c) potential structures for a plan of reorganization and/or settlement and the inter-debtor ramifications of such structures; and (d) claims that could be asserted by the TCEH Debtors against other Debtors or by other Debtors against the TCEH Debtors. MTO also provided advice to the TCEH Debtors about the scope of the Conflict Matters and the TCEH Debtors' rights and responsibilities to their constituents with respect to the Conflict Matters.

21. MTO used its reasonable efforts to avoid any duplication of services provided by any of the TCEH Debtors' other retained professionals in these chapter 11 cases, including Kirkland & Ellis, LLP and Richards, Layton & Finger, P.A. in their role as primary restructuring counsel on matters other than Conflicts Matters.

22. To provide a meaningful summary of MTO's services provided on behalf of the TCEH Debtors and their estates, MTO has established, in accordance with its internal billing procedures, certain subject matter categories (each, a "Matter Category") in connection with these chapter 11 cases. The following is a summary of the fees and hours billed for each Matter Category in the Fee Period:

| Matter Number | Project Category Description | Hours Billed | Total Compensation Billed |
|---|---|---|---|
| 001 | [TCEH] Asset Disposition/Purchases | 156.8 | $135,940.50 |
| 004 | [TCEH] Business Operations | 1.5 | $1,260.00 |
| 006 | [TCEH] Investigation of Claims | 426.6 | $234,608.00 |
| 008 | [TCEH] Corporate Governance | 467.4 | $360,305.00 |
| 010 | [TCEH] Hearings | 2.6 | $1,872.00 |
| 013 | [TCEH] MTO Retention & Fee Applications | 112.4 | $84,840.00 |
| 014 | [TCEH] Non-Working Travel | 19.65 | $18,036.75 |
| 015 | [TCEH] Official & Ad Hoc Committee Issues & Meetings | 12.3 | $11,357.00 |
| 017 | [TCEH] Plan & Disclosure Statement | 17.9 | $13,440.00 |
| 018 | [TCEH] Private Letter Ruling/IRS Matters/Tax Issues | 394.2 | $306,944.50 |
| 019 | [TCEH] Settlement Issues | 2.7 | $2,028.00 |
| 024 | [TCEH] Non-MTO Retention & Fee Applications | 33.7 | $24,693.00 |
| **Total** | | **1647.75** | **$1,195,324.75** |

23. In addition, subject to redaction for attorney-client privilege, work product doctrine, and confidentiality where necessary to protect the TCEH Debtors and their estates, MTO's computerized records of time expended on its representation of the TCEH Debtors and their estates is attached hereto as **Exhibit F**. The following is a summary, by Matter Category, of the most significant professional services provided by MTO during the Fee Period.

  **(a)**   **[TCEH] Asset Disposition/Purchases (Matter No. 1)**

    Total Fees: $135,940.50
    Total Hours: 156.8

  24. This Matter Category includes time spent by MTO attorneys reviewing and analyzing proposed dispositions, including the Debtors' proposed disposition of their interests in Oncor. During the Fee Period, MTO spent substantial time conducting diligence on the Oncor sale and advising Mr. Sawyer with respect to the timing and process of the sale. MTO worked with advisors to the Debtors, the other disinterested directors and managers, and the Committees to develop and negotiate a revised form of bidding procedures order. These discussions ultimately led the TCEH Debtors to pass resolutions authorizing the revised bidding procedures on January 12, 2015, which were then approved by the court. [*See* D.I. 3295.]

  **(b)**   **[TCEH] Business Operations (Matter No. 4)**

    Total Fees: $1,260.00
    Total Hours: 1.5

  25. This Matter Category includes time spent by MTO attorneys reviewing diligence relating to the TCEH Debtors' business operations.

  **(c)**   **[TCEH] Investigation of Claims (Matter No. 6)**

    Total Fees: $234,608.00
    Total Hours: 426.6

  26. During the Fee Period, MTO devoted significant time to the investigation of potential litigation claims that constitute or potentially constitute Conflict Matters, including potential claims that could be asserted by the TCEH Debtors against other Debtors, or by other Debtors against the TCEH Debtors (the "Potential Claims"). MTO's claims-related diligence included (a) substantial work identifying Potential Claims; (b) preparing an extensive work plan for MTO's diligence of Potential Claims; (c) reviewing prior diligence on Potential Claims

prepared by other advisors to the Debtors; (d) drafting legal memoranda and other work product setting forth MTO's preliminary legal and factual analysis of certain Potential Claims; (e) participating in diligence sessions regarding Potential Claims with the Debtors' other advisors, including advisors to the other disinterested directors and managers; and (f) reviewing hundreds of pages of documents relating to the Potential Claims.

      **(d)**     **[TCEH] Corporate Governance (Matter No. 8)**

        Total Fees:    $360,305.00
        Total Hours:   467.4

27.     This Matter Category includes time spent by MTO attorneys relating to corporate governance issues involving the TCEH Debtors. During the Fee Period, this included establishing and documenting appropriate corporate governance protocols and resolutions authorizing Mr. Sawyer, as the disinterested manager of the TCEH Debtors, to review and act upon any Conflict Matters and to investigate and determine whether any matter constitutes a Conflict Matter. MTO also provided advice to Mr. Sawyer regarding the identification of Conflict Matters and decisions involving Conflict Matters, including advice regarding the eventual approval of the revised bidding procedures in January by the TCEH Debtors. Finally, MTO participated in multiple joint and separate board meetings and engaged in extensive negotiations to implement a process to identify Conflict Matters.

      **(e)**     **[TCEH] Hearings (Matter No. 10)**

        Total Fees:    $1,872.00
        Total Hours:   2.6

28.     This Matter Category includes time spent by MTO attorneys attending the December 18, 2014 omnibus hearing and communications regarding the hearing and review of agenda.

      **(f)**      **[TCEH] MTO Retention & Fee Applications (Matter No. 13)**

      Total Fees:    $84,840.00
      Total Hours:  112.4

29. This Matter Category includes time spent by MTO on MTO's retention application. Specifically, to obtain an order of the Court approving the employment of MTO as the TCEH Debtors' conflicts counsel, MTO attorneys spent time preparing MTO's retention application, supporting declarations, and proposed retention order. MTO also analyzed its connections to over 20,000 parties-in-interest and potential parties-in-interest in these chapter 11 cases in order to provide accurate and appropriate disclosures with respect to MTO's disinterestedness. In addition, MTO attorneys discussed MTO's retention application and retention order with the U.S. Trustee and the Debtors.

      **(g)**      **[TCEH] Non-Working Travel (Matter No. 14)**

      Total Fees:    $18,036.75
      Total Hours:  19.65

30. This Matter Category includes non-working travel time spent by MTO attorneys in connection with their representation of the TCEH Debtors. The amounts requested in the Fee Application for travel time not spent working on matters related to MTO's representation of the TCEH Debtors or other clients are charged at 50 percent of MTO's applicable hourly rates.

      **(h)**      **[TCEH] Official & Ad Hoc Committee Issues & Meetings (Matter No. 15)**

      Total Fees:    $11,357.00
      Total Hours:  12.3

31. This Matter Category includes time spent by MTO attorneys meeting with the TCEH Committee and other constituents to discuss Conflict Matters and communicating internally and with the TCEH Debtors regarding such meetings.

    **(i)**    **[TCEH] Plan & Disclosure Statement (Matter No. 17)**

    Total Fees:    $13,440.00
    Total Hours:    17.9

32.    The Debtors and their stakeholders have discussed and continue to discuss a consensual plan of reorganization and/or settlement of some or all inter-debtor and inter-creditor issues. This Matter Category includes time spent by MTO attorneys reviewing plan alternatives to identify and advise on Conflict Matters and communicating and meeting with the Debtors and creditor constituencies about Conflict Matters relating to plan issues.

    **(j)**    **[TCEH] Private Letter Ruling/IRS Matters/Tax Issues (Matter No. 18)**

    Total Fees:    $306,944.50
    Total Hours:    394.2

33.    Inter-debtor tax considerations play an important role in these cases, and in MTO's retention by the TCEH Debtors. During the Fee Period, MTO spent substantial time reviewing the historic and current tax practices of the Debtors and their intercompany tax sharing agreements. MTO's tax team also reviewed and analyzed certain structures proposed by the Debtors and alternatives proposed by the TCEH Committee and other constituents. MTO's tax work during the Fee Period included research regarding the proposed tax structures and the implications of the Debtors' historic and current tax sharing practices. In addition, MTO reviewed and analyzed the Debtors' private letter ruling request submitted to the IRS and advised the TCEH Debtors regarding the ruling. MTO's tax group participated in internal and external meetings to discuss the inter-debtor tax issues, including a weekly call with the Debtors' tax professionals and advisors to the Committees.

    **(k)**    **[TCEH] Settlement Issues (Matter No. 19)**

    Total Fees:    $2,028.00
    Total Hours:    2.7

34. This Matter Category includes time spent by MTO attorneys participating in a global settlement telephone conference.

### (l) [TCEH] Non-MTO Retention & Fee Applications (Matter No. 23)

Total Fees: $24,693.00
Total Hours: 33.7

35. This Matter Category includes time spent by MTO attorneys assisting with the retention of the TCEH Debtors' independent financial advisor, Greenhill & Co., LLC, and discussing retention with potential local Delaware counsel.

36. The foregoing professional services provided by MTO on behalf of the TCEH Debtors during the Fee Period were reasonable, necessary, and appropriate to the representation of the TCEH Debtors with respect to Conflict Matters in these chapter 11 cases.

### MTO's Requested Compensation and Reimbursement Should be Allowed

37. Section 331 of the Bankruptcy Code provides for interim compensation of professionals and incorporates the substantive standards of section 330 of the Bankruptcy Code to govern the Court's award of such compensation. Section 330 of the Bankruptcy Code provides that a court may award a professional employed under section 327 of the Bankruptcy Code "reasonable compensation for actual necessary services rendered . . . and reimbursement for actual, necessary expenses." 11 U.S.C. § 330(a)(1). Section 330 also sets forth the criteria for the award of such compensation and reimbursement:

> In determining the amount of reasonable compensation to be awarded, the court should consider the nature, extent, and the value of such services, taking into account all relevant factors, including—
>
> (a) the time spent on such services;
>
> (b) the rates charged for such services;
>
> (c) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of,

14

>       a case under this title;
>
> (d) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed; and
>
> (e) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. § 330(a)(3).

38. The services for which MTO seeks compensation in this Fee Application were, at the time rendered, necessary for and beneficial to the TCEH Debtors and their estates. MTO performed the services for the TCEH Debtors in an efficient and effective manner and the results obtained not only benefited the TCEH Debtors, but also their constituents and the other Debtors and their stakeholders.

39. MTO's services were consistently performed in a timely manner commensurate with the complexity, importance, and nature of the issues involved. Further, MTO used its reasonable efforts to avoid any duplication of services provided by any of the TCEH Debtors' other retained professionals in these chapter 11 cases, including Kirkland & Ellis, LLP and Richards, Layton & Finger, P.A. in their role as primary restructuring counsel on matters other than Conflicts Matters. MTO also minimized its disbursements, and the actual expenses incurred in providing professional services were absolutely necessary, reasonable, and justified under the circumstances.

40. In sum, MTO believes that the compensation requested is appropriate and in accordance with section 330 of the Bankruptcy Code given the complexity and breadth of the Conflict Matters, the time expended by MTO professionals and paraprofessionals, the nature and extent of the services rendered by MTO, the necessity of such services, the value of MTO's

services, and the cost of comparable services outside of bankruptcy. Accordingly, MTO respectfully submits that approval of the compensation sought herein is warranted.

## Reservation of Rights and Notice

41. It is possible that some professional time expended or expenses incurred during the Fee Period are not reflected in the Fee Application. MTO reserves the right to include such amounts in future fee applications.

42. The TCEH Debtors have provided notice of this Fee Application to: (a) the Debtors; (b) counsel to the Debtors; (c) the U.S. Trustee; (d) counsel to the agent of the EFIH First Lien DIP Financing Facility; (e) counsel to the agent of the TCEH DIP Financing Facility; (f) counsel to the TCEH Creditors' Committee; (g) counsel to the EFH Creditors' Committee; (h) counsel to the Fee Committee; and (i) all parties that have entered their appearance pursuant to Bankruptcy Rule 2002 (collectively, the "Notice Parties").

43. Pursuant to the Interim Compensation Order and the Fee Committee Order, (a) any Notice Party (other than the Fee Committee) that wishes to object to the Fee Application must file its objection with the Court, with a copy to Chambers and serve it on MTO and the Notice Parties so that it is **actually received** on or before **March 10, 2015 at 4:00 p.m.** (Prevailing Eastern Time) and (b) any member of the Fee Committee that wishes to object to the Fee Application must comply with the procedures set forth in the Fee Committee Order and if such member wishes to object to the Fee Application after complying with such procedures, such member must file its objection with the Court, with a copy to Chambers, and serve it on MTO and the Notice Parties, within the time specified under the Fee Committee Order.

## No Prior Request

44. No prior application for the relief requested herein has been made to this or any other court.

WHEREFORE, MTO respectfully requests that the Court enter an order (a) awarding MTO interim compensation for professional and paraprofessional services provided during the Fee Period in the amount of $1,195,324.75, and reimbursement of actual, reasonable, and necessary expenses incurred in the Fee Period in the amount of $14,202.34; (b) authorizing and directing the TCEH Debtors to remit payment to MTO for such fees and expenses; and (c) granting such other relief as is appropriate under the circumstances.

Dated: February 17, 2015    */s/ Todd J. Rosen*
**MUNGER, TOLLES & OLSON LLP**
Thomas B. Walper (admitted *pro hac vice*)
Todd J. Rosen (admitted *pro hac vice*)
Seth Goldman (admitted *pro hac vice*)
355 South Grand Avenue, 35th Floor
Los Angeles, California 90071-1560

Telephone:   (213) 683-9100
Facsimile:   (213) 687-3702
Email:       thomas.walper@mto.com
             todd.rosen@mto.com
             seth.goldman@mto.com

*Counsel to the TCEH Debtors*