**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| Energy Future Holdings Corp., *et al.*,[1] | ) Case No. 14-10979 (CSS) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |
| | ) **Hearing Date:  March 10, 2015 at 9:30 am** |
| | ) **Objection Deadline:  March 3, 2015 at 4:00 pm** |

**MOTION OF THE AD HOC GROUP OF TCEH UNSECURED NOTEHOLDERS FOR
ENTRY OF AN ORDER GRANTING STANDING AND AUTHORITY TO
COMMENCE,  PROSECUTE, AND SETTLE CERTAIN CLAIMS FOR
DECLARATORY JUDGMENT, AVOIDANCE AND RECOVERY OF LIENS,
SECURITY INTERESTS, OBLIGATIONS, FEES, AND INTEREST PAYMENTS, AND
<u>DISALLOWANCE OF CLAIMS</u>**

The ad hoc group of certain holders (the "Ad Hoc Group") of approximately $2.7 billion

of 10.25% Fixed Senior Notes due 2015 (including Series B) and 10.50%/11.25% Senior Toggle

Notes due 2016 issued by TCEH and TCEH Finance, Inc. (together, the "TCEH Unsecured

Notes") brings this Motion[2] for entry of an order granting standing and authority to commence,

prosecute, and settle certain causes of action on behalf of the TCEH Debtors[3] relating to the First

---

[1] The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810.  The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201.  Due to the large number of debtors in these chapter 11 cases, which are being jointly administered on an interim basis, a complete list of the debtors (the "Debtors") and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://efhcaseinfo.com.

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the *Final Order (A) Authorizing Use of Cash Collateral for Texas Competitive Electric Holdings Company LLC and Certain of its Debtor Affiliates, (B) Granting Adequate Protection, and (C) Modifying the Automatic Stay* [Dkt. No. 855] (the "Cash Collateral Order").

[3] The "TCEH Debtors" include TCEH, EFCH, 4Change Energy Company, 4Change Energy Holdings LLC, Big Brown 3 Power Company LLC, Big Brown Lignite Company LLC, Big Brown Power Company LLC, Collin Power Company LLC, Decordova Power Company LLC, Decordova II Power Company LLC, Eagle Mountain Power Company LLC, Generation MT Company LLC, Generation SVC Company, Lake Creek 3 Power Company LLC, Luminant Big Brown Mining Company LLC, Luminant Energy Company LLC, Luminant Energy Trading

Lien Debt,[4] including claims for avoidance, equitable subordination, disallowance of claims, recharacterization, and certain requests for declaratory relief.[5]  In support of the Motion, the Ad Hoc Group respectfully represents as follows:

## PRELIMINARY STATEMENT

Though their appearances in these Cases have been infrequent and, when made, fleeting, holders of First Lien Debt have not been shy to announce to the Court, through their representatives, that they have unassailable security interests in all of the TCEH Debtors' assets. Nor have they held back, in any respect, in making their conclusory assertions that any and all TCEH Debtor plans of reorganization must either receive with their express consent or it will result in them taking their collateral – through their own plan or relief from the stay – to the detriment of all other stakeholders.  Each time, however, the Ad Hoc Group has cautioned that the purported liens and interests remain subject to open challenge and has questioned the

---

California Company, Luminant ET Services Company, Luminant Generation Company LLC, Luminant Holding Company LLC, Luminant Mineral Development Company LLC, Luminant Mining Company LLC, Luminant Renewables Company LLC, Martin Lake 4 Power Company LLC, Monticello 4 Power Company LLC, Morgan Creek 7 Power Company, NCA Resources Development Company LLC, Oak Grove Management Company LLC, Oak Grove Mining Company LLC, Oak Grove Power Company LLC, Sandow Power Company LLC, TCEH Finance, Inc., Tradinghouse 3 & 4 Power Company LLC, Tradinghouse Power Company LLC, TXU Energy Retail Company LLC, TXU Energy Solutions Company LLC, TXU Retail Services Company, TXU SEM Company, Valley NG Power Company LLC, and Valley Power Company LLC.  The TCEH Debtors (excluding TCEH) are referred to herein as the "Guarantors".

[4]The "First Lien Debt" includes all obligations under (i) first lien Credit Agreement, dated as of October 10, 2007, with Citibank, N.A., as administrative agent and collateral agent, and various lenders and other agents (the "Credit Agreement"), as amended, modified or restated prior to the date hereof, (ii) any and all Secured Commodity Hedge and Power Sales Agreements and Secured Hedging Agreements (each as defined in the Cash Collateral Order), as amended, modified or restated prior to the date hereof, (iii) that certain indenture, dated April 19, 2011 (the "Indenture"), by and among TCEH and TCEH Finance, Inc. (together, the "TCEH Note Issuers") as issuers, the Guarantors, as guarantors, and The Bank of New York Mellon Trust Company, N.A., as indenture trustee, governing the 11.50% senior secured notes due October 1, 2020, as amended, modified or restated prior to the date hereof, and (iv) all other agreements that were contemplated in or related to the agreements in (i) through (iii) above.

[5]The Ad Hoc Group reserves all rights to seek standing to pursue claims against all parties other than the First Lien Lenders (as defined in the Cash Collateral Order (Dkt. No. 855)), including without limitation certain other Debtors, the Sponsors (a consortium of private equity funds led by affiliates of Kohlberg Kravis Roberts & Co. L.P., Texas Pacific Group, and Goldman Sachs), other holders of prepetition equity of EFH and its predecessors-in-interest, Oncor Electric Delivery Company LLC, and other related parties, relating to the facts set forth herein, in accordance with the *Stipulation and Agreed Order Regarding a Protocol for Certain Case Matters* [Dkt. No. 2051], as amended.

accuracy of the repeated bald assertions that the holders of First Lien Debt can dictate the outcome of the TCEH Debtors' cases.  In fact, through the proposed adversary proceeding contemplated hereby, the facts will show that the holders of First Lien Claims may not be secured at all.

To date, the only legal support for the holders of First Lien Debt's assertion of primacy over the assets of the TCEH Debtors are the stipulations made by the TCEH Debtors in the Cash Collateral Order, whereby the Debtors abandoned any legal or equitable challenge to the status and amount of First Lien Debt.  Indeed, those stipulations were apparently made by the TCEH Debtors without any meaningful due diligence, under the cloud of conflicted directors, officers, and advisors (who, for reasons discussed below, had a vested interest in not opening up certain prepetition transactions), and as an integral part of a now-failed restructuring transaction that contemplated a near-total abandonment of the assets of the TCEH Debtors' estates to the holders of First Lien Debt.

By the present motion, the Ad Hoc Group seeks to shine a bright light on the near past as well as the far, and to lay legal and equitable challenges to what have been, to date, nothing more than unsupported, expedient conclusions. As set forth herein, there are substantial challenges to the First Lien Debt reaching back to the 2007 LBO, pursuant to which the claims and liens were first incurred, and touching various critical transactions thereafter that appear to have been orchestrated to delay a necessary bankruptcy filing by the TCEH Debtors.  All of the issues raised in the attached complaint – the product of the Ad Hoc Group's intensive interactions with the Committee – deserve to be asserted, diligenced, prosecuted and recovered upon.

In connection with that process, the Ad Hoc Group deserves to have a voice in all aspects of the contemplated litigation. Beyond being an active participant in these Cases from the first day hearing on May 1, 2014, and beyond their having spent, at their own expense, significant

amounts researching and formulating the Claims discussed below, the members of the Ad Hoc Group are uniquely positioned as the direct and immediate beneficiaries of any lien avoidance and recoveries.  The Ad Hoc Group is not hampered in any way by any turnover obligations to the holders of First Lien Debt (as are the holders of Second Lien Debt) and, by virtue of subsidiary guarantees, is incented to recover on Claims regardless of which "box" in the capital structure might be the beneficiary thereof.  Thus, unlike the representative of an unsecured creditor of TCEH or Luminant Generation or TXU Energy, the Ad Hoc Group is directly incentivized, without conflict, to recover on all claims on behalf of all unsecured creditors of the TCEH Debtors.

Finally, whether the Court confers standing on the Ad Hoc Group, the Committee, some other party in interest, or some combination of unsecured creditors of the TCEH Debtors, the Court must divest the TCEH Debtors of any significant control over these claims. Those Debtors, acting through their boards (including the "independents" periodically put before this Court), have not only stipulated to liens as part of the now unnecessary cash collateral package, but have voted as part of the Restructuring Support Agreement ("RSA") to turn over all of the equity value of the entire TCEH Debtors' enterprise to creditors who, as set forth below, may not even have valid liens on <u>any</u> of that property. The issues raised in the attached complaint are too significant to have any aspect of their resolution left to individuals who have already expressed their distaste for any litigation over prepetition transactions orchestrated by them and who have a vested interest in justifying their prior actions.

In short, the Court should grant the motion in all respects.

## <u>JURISDICTION & VENUE</u>

1.      This Court has jurisdiction over the matter pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2.      Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The statutory bases for the relief requested herein are sections 105(a) and 1109 of the Bankruptcy Code and Rule 9013-1(f) of the Local Rules for the United States Bankruptcy Court for the District of Delaware.

4.      The Ad Hoc Group consents to the entry of final orders or judgments by the Court if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.  If no such statement is included, the Ad Hoc Group shall have waived the right to contest the authority of the Court to enter final orders or judgments.

## STATEMENT OF FACTS

5.      The Proposed Complaint, attached hereto as Exhibit A, alleges the relevant facts set forth therein on the basis of the Ad Hoc Group's investigation to date, including the review of documents produced by the Debtors (almost 5.5 million pages of documents have been produced to date in connection with the first lien investigation and under the *Stipulation and Agreed Order Regarding a Protocol for Certain Case Matters* [Dkt. No. 2051]), and in some instances, upon information and belief, as noted in the attached Proposed Complaint.  The investigation is ongoing and the Ad Hoc Group reserves the right to supplement or amend these allegations.  The Ad Hoc Group incorporates by reference herein each of the allegations in the Proposed Complaint and will not repeat them herein.

### A.      The Chapter 11 Cases

6.      On April 29, 2014 (the "Petition Date"), the Debtors filed voluntary petitions for reorganization under Chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the District of Delaware.  On June 5, 2014, the Court entered an order directing joint administration of the Debtors' cases under Case Number 14-10979 [Dkt. No. 849].  The Debtors

have continued in the management and operation of their businesses and properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in these cases.

7.    The Ad Hoc Group represents holders of approximately $2.7 billion of TCEH unsecured debt. *See* Verified Statement of White & Case LLP, Fox Rothschild LLP and the Ad Hoc Group of TCEH Unsecured Noteholders Pursuant to Bankruptcy Rule 2019 [Dkt. No. 676].

8.    On the Petition Date, the Debtors filed the *Motion of Texas Competitive Electric Holdings Company LLC and Certain of Its Debtor Affiliates for Entry of Interim and Final Orders (A) Authorizing Use of Cash Collateral, (B) Granting Adequate Protection, (C) Modifyin*g the Automatic Stay, and (D) Scheduling a Final Hearing [Dkt. No. 71] (the "Cash Collateral Motion"). On June 6, 2014, the Court entered the Cash Collateral Order approving the Cash Collateral Motion on a final basis [Dkt. No. 855].

9.    In the Cash Collateral Order, the TCEH Debtors agreed to several stipulations regarding the extent and validity of the First Lien Debt (the "Stipulations"), including, in pertinent part, the following:

- "As of the Petition Date, the TCEH Debtors were truly and justly indebted to the First Lien Lenders pursuant to the First Lien Credit Agreement, without defense, counterclaim, or offset of any kind, in the aggregate principal amount of $22,635,987,924 plus accrued and unpaid interest with respect thereto (which, as of the Petition Date, was $227,283,333) and any additional fees, costs, and expenses (including any attorneys', financial advisors', and other professionals' fees, expenses, and indemnities that are chargeable or reimbursable under the First Lien Credit Agreement) and all other Obligations (as defined in the First Lien Credit Agreement) owing under or in connection with the First Lien Credit Agreement . . . ." (Cash Collateral Order ¶ F(i)(a)).

- "As of the Petition Date, the TCEH Debtors were truly and justly indebted to the holders of the First Lien Notes pursuant to the First Lien Notes Indenture, without defense, counterclaim, or offset of any kind, in the aggregate principal amount of $1,750,000,000 plus accrued and unpaid interest with respect thereto (which as of the Petition Date was $65,965,278) and any additional fees, costs, and expenses

(including any attorneys', financial advisors', and other professionals' fees and expenses that are chargeable or reimbursable under the First Lien Notes Indenture) and all other Obligations (as defined in the First Lien Notes Indenture) owing under or in connection with the First Lien Notes Indenture." (Cash Collateral Order ¶ F(i)(b)).

- "The Prepetition First Lien Obligations are secured by first priority security interests in and liens on (the "Prepetition First Priority Liens") the "Collateral," as defined in the First Lien Credit Agreement (the "Prepetition Collateral"), including substantially all of the TCEH Debtors' assets, including accounts receivable and cash to the extent that such cash constitutes proceeds of other Prepetition Collateral (the "Cash Collateral")." (Cash Collateral Order ¶ F(i)(e)).

The Stipulations became binding on the TCEH Debtors upon entry of the Cash Collateral Order.[6] (Cash Collateral Order ¶ 15). Further, the Stipulations become binding on all other parties unless a party in interest (including the Ad Hoc Group) objects to the Stipulations on or before the Challenge Deadline.[7] (*Id.* at ¶ F(ii)(c)).

---

[6] Certain of the Stipulations relate to the Second Lien Notes and the Prepetition Second Lien Obligations (each as defined in the Cash Collateral Order). (*See* Cash Collateral Order, ¶ F(ii)). The Stipulations do not specify the amount of the Prepetition Second Lien Obligations that remain outstanding as of the Petition Date. Further, the Stipulations provide that the Prepetition Second Lien Obligations are "purportedly secured by second priority liens" in the Prepetition Collateral. (*Id.*). The Ad Hoc Group reserves all rights to seek standing to bring claims against the Prepetition Second Lien Creditors relating to the Second Lien Notes and the Prepetition Second Lien Obligations. The Ad Hoc Group further reserves all rights to seek a declaratory judgment that the Prepetition Second Lien Creditors are not entitled to share in the proceeds of any recovery from the Ad Hoc Group's avoidance actions against the holders of First Lien Debt, in accordance with Section 6.05 of the Second Lien Intercreditor Agreement (as defined in the Cash Collateral Order).

[7] The "Challenge Deadline" is currently March 13, 2015. The Cash Collateral Order provides that the Ad Hoc Group or a party in interest with standing granted by order of the Court may file an adversary proceeding or contested matter seeking to avoid, object to, or otherwise challenge the TCEH Debtors' Stipulations within 135 calendar days after entry of the interim order granting the Cash Collateral Motion (September 14, 2014), subject to further extension by written agreement of the TCEH Debtors, the Prepetition First Lien Agents, the unofficial committee of certain unaffiliated holders of, *inter alia*, first lien senior secured claims against the TCEH Debtors (the "TCEH First Lien Ad Hoc Committee"), and any individual Prepetition First Lien Creditor that is the subject of a challenge. On August 8, 2014, the Court entered an order approving a stipulation executed by the TCEH Debtors, the Prepetition First Lien Agents, and the TCEH First Lien Ad Hoc Committee, which extended the Challenge Deadline to October 14, 2014 [Dkt. No. 1771]. On September 19, 2014, the Court entered an order approving a second stipulation executed by the same entities, further extending the Challenge Deadline to November 28, 2014 [Dkt. No. 2083]. On November 5, 2014, the Court entered an order approving a third stipulation executed by the same entities, further extending the Challenge Deadline to December 19, 2014 [Dkt. No. 2704]. On December 2, 2015, the Court entered an order approving a fourth stipulation executed by the same entities, further extending the Challenge Deadline to February 12, 2015 [Dkt. No. 2916]. On January 27, 2015, the Court entered an order approving a fifth stipulation executed by the same entities, further extending the Challenge Deadline to March 13, 2015 [Dkt. No. 3380].

B.      **The Prepetition Restructuring Support Agreement**

10.     On the Petition Date, the Debtors filed the RSA.  *See* Exhibit D to *Declaration of Paul Keglevic, Executive Vice President, Chiref Financial Officer, and Co-Chief Restructuring Officer of Energy Future Holdings Corp., et al., in Support of First Day Motions* [Dkt. No. 98]. As such, the RSA proposed to leave the TCEH Debtors' unsecured creditors with virtually nothing to satisfy billions of dollars in unsecured claims.

11.     The RSA, whether intended as a "catalyst" or a declaration of war, contemplated the confirmation of a plan that would have delivered substantially all the value of the TCEH Debtors' businesses to the holders of the First Lien Debt and essentially wiped out nearly $10 billion of the TCEH Debtors' unsecured obligations.

12.     For example, the Amended and Restated Term Sheet provided that holders of the First Lien Debt would receive "their Pro Rata share of (i) 100% of the Reorganized TCEH Common Stock, subject to dilution only by the Reorganized TCEH Management Incentive Plan; and (ii) 100% of the net cash proceeds from the issuance of the New Reorganized TCEH Debt" and, in addition, the "Holders of General Unsecured Claims Against the TCEH Debtors (*which shall include TCEH First Lien Deficiency Claims, TCEH Second Lien Note Claims, and TCEH Unsecured Note Claims*) will receive their Pro Rata share of the TCEH Unsecured Claim Fund." *See* Amended and Restated Restructuring Term Sheet [attached to Exhibit A to Dkt. No. 505, *Motion of Energy Future Holdings Corp., et al., for Entry of an Order Authorizing the RSA Debtors to Assume the Restructuring Support Agreement and Modifying the Automatic Stay*] (emphasis added).

13.     Further, consistent with the plan contemplated by the Restructuring Support Agreement, the Debtors filed a Pre-Submission Memorandum estimating TCEH's enterprise

value at $18 billion, which is less than the balance of the secured claim asserted by the holders of the First Lien Debt.

14.     At the same time, the exhibits to the RSA reflect that creditors holding unsecured claiums against the TCEH Debtors' (including funded debt having a face amount of approximately $7.7 billion) were expected to receive a recovery of less than $350 million cash. *See* Dkt No. 98, Exhibit D (RSA Term Sheet, Ex. E).

### C.     The Ad Hoc Group's Investigation

15.     Since the entry of the Cash Collateral Order, the Ad Hoc Group has diligently investigated potential claims seeking to avoid, object to, or otherwise challenge the TCEH Debtors' Stipulations, including potential claims against the First Lien Lenders (as defined in the Cash Collateral Order).

16.     The Ad Hoc Group's investigation has been targeted and efficient, but necessarily extensive and time consuming as a result of the complexity of the First Lien Debt, including the numerous amendments, extensions, and related transactions from 2007 to present.  The Official Committee of Unsecured Creditors (the "Committee"), working together with the Ad Hoc Group and other TCEH unsecured creditors, issued substantial document requests to the Debtors and has worked with the Debtors informally to prioritize those requests on an iterative basis.  The Ad Hoc Group reviewed thousands of documents received from the Debtors and others.

17.     Understanding the Ad Hoc Group's and other creditors' need to conduct a thorough and timely investigation, and the burdens such an investigation places on the Debtors, the Prepetition First Lien Agents, and the TCEH First Lien Ad Hoc Committee extended the original Challenge Deadline from September 14, 2014 to March 13, 2015.

18.     While the Debtors have been generally responsive to the Committee's discovery requests by supplying information to the Committee and other parties on a rolling basis, as of the

filing of this Motion, the Ad Hoc Group is still in the process of reviewing the substantial

material produced by the Debtors, totaling more than 5.5 million pages.  Since January 12, 2015

alone, the Debtors have produced more than 1.2 million pages of materials jointly in response to

the Committee's First Lien Investigation Requests and additional document requests issued

pursuant to the *Stipulation and Agreed Order Regarding a Protocol for Certain Case Matters*

[Dkt. No. 2051].

**RELIEF REQUESTED**

19.    The Ad Hoc Group respectfully requests the entry of an order, substantially in the

form annexed hereto as Exhibit B (the "Proposed Order"), pursuant to sections 105(a) and 1109

of the Bankruptcy Code granting the Ad Hoc Group standing and authority, on behalf of the

TCEH Debtors' estates, to commence, prosecute, and settle claims against holders of First Lien

Debt arising out of the factual allegations set forth herein and in the Proposed Complaint.  The

Ad Hoc Group understands that the Committee is also seeking standing and will work

cooperatively with the Committee to harmonize the relief requested in the two Motions.

**ARGUMENT**

**I.    THE AD HOC GROUP SHOULD BE GRANTED STANDING TO COMMENCE AND PROSECUTE THE PROPOSED CLAIMS**

20.    The Ad Hoc Group should be granted standing and authority to commence,

prosecute, and settle claims against the holders of the First Lien Debt arising out of the factual

allegations set forth herein and in the Proposed Complaint, on behalf of the TCEH Debtors'

estates pursuant to Section 1109 of the Bankruptcy Code.

21.    Section 1109(b) provides that a party-in-interest, including creditors, "may raise

and may appear and be heard on any issue in a case under [chapter 11]."

22.     Authority to assert estate claims has been extended to creditors acting outside of an official committee. *Glinka v. Murad (In re Housecraft Indus. USA, Inc.)*, 310 F.3d 64, 71 n.7 (2d Cir. 2002) (stating that individual creditor may bring claim under 11 U.S.C. § 547(b) if creditor satisfies requirements for derivative standing); *Can. Pac. Forest Prods. Ltd. v. J.D. Irving Ltd. (In re Gibson Group, Inc.)*, 66 F.3d 1436, 1446 (6th Cir. 1995) (same); *In re Rim*, Civ. No. 10-1066 (DMC), 2010 WL 4615174, at *7 (D.N.J. Nov. 3, 2010) (recognizing that "courts have permitted individual creditors to bring derivative avoidance actions where the Trustee has declined to do so"); *In re Image Innovations Holdings, Inc.*, 391 B.R. 255, 259 (Bankr. S.D.N.Y. 2008) ("There is no question that under certain circumstances a creditor can bring a claim on behalf of the debtor.").

23.     Generally, derivative standing requires: (1) the existence of a colorable claim; (2) the debtor's unjustifiable refusal to pursue the claim (or, alternatively, a showing that a demand that the debtor pursue the claim would be futile); and (3) the permission of the bankruptcy court to initiate the action. *See  Infinity Investors Ltd ex rel. Yes! Entm't Corp. v. Kingsborough (In re Yes! Ent'mt Corp.)*, 316 B.R. 141, 145 (D. Del. 2004).   In determining whether a debtor's refusal (or presumed refusal) to bring an action is unjustified, courts examine whether the claim is likely to benefit the estate but are not required to conduct a "mini-trial." *Id.*

24.     Derivative standing is particularly appropriate where—as here—a debtor needing use of cash collateral during the bankruptcy cases agrees to waive avoidance action claims against their prepetition lenders.  The Third Circuit expressly addressed this in *Official Comm. of Unsecured Creditors of Cybergenics Corp. ex rel. Cybergenics Corp. v. Chinery*, 330 F.3d 548 (3d Cir. 2003) ("*Cybergenics*"):

> A court facing motions for first-day orders has a difficult choice [to refuse to issue the order or] . . . explore the claim's underlying merits. But either choice is problematic, for first-day orders are by their nature extremely urgent . . . The

possibility of a derivative suit by a creditors' committee serves Congress's goals when, by granting fist-day orders, bankruptcy courts nevertheless reserve to the creditors' committees the right to investigate and pursue claims that would otherwise be released in those orders.

*Id.* at 574, n.8 (citations omitted).

### A.    The Proposed Complaint  Has Asserted Colorable Claims

25.    The Ad Hoc Group again understands that the Committee is filing a motion that, in great detail, establishes the colorablity of the Claims against holders of First Lien Claims.  The Ad Hoc Group adopts the Committee's argument in that regard, which is set forth in the *Motion of Official Committee of TCEH Unsecured Creditors for Entry of an Order Grating Exclusive Standing and Authority to Commence, Prosecute, and Settle Certain Claims for Declaratory Judgment, Avoidance and Recovery of Liens, Security Interests, Obligations, Fees, and Interest Payments, and Disallowance of Claims* [Dkt. No. 3593].   The Proposed Complaint is substantially similar to the Committee's.  Thus, rather than repeating the Committee's argument, the Ad Hoc Group incorporates it by reference herein.

### B.    Demand Upon the Debtors Would Be Futile

26.    Derivative standing is generally granted where a debtor unjustifiably or unreasonably refuses to pursue claims that the bankruptcy court finds would benefit the estate. *See Cybergenics*, 330 F.3d at 568.  A party seeking derivative standing is not required to demand formally that a debtor take action where it is "plain from the record that no action on the part of the debtor would have been forthcoming."  *See In re Nat'l Forge Co.*, 326 B.R. at 544 (finding formal request of debtor to bring action waived under DIP financing orders would have been futile as debtor could not have seriously entertained the idea).

27.    Here, it is clear that the Debtors will not take any action because they are bound by the Stipulations in the Cash Collateral Order, including the Stipulations that the TCEH

Debtors are "truly and justly indebted to the First Lien Lenders" and that those obligations First Lien Obligations "are secured by first priority security interests in and liens on . . . substantially all of the TCEH Debtors' assets." (Cash Collateral Order ¶¶ F(i)(a)-(e)).

28.    Indeed, the TCEH Debtors cannot possibly pursue diligently claims that they have already decided to waive for no value at all when they approved the Cash Collateral Motion and the RSA. The minutes of the April 28, 2014 joint board meeting indicate that ███████

█████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████[8]

███████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████ Even after the collapse of the RSA, Mr. Sawyer has already attempted to defend his approval on the purported grounds that the RSA was a "catalyst" that "fulfilled its purpose" of "mov[ing] the company forward to a confirmable plan."  See October 21, 2014 Hr'g Tr. at 202:21-203:20.  If the fiduciaries are of the mind to defend their prepetition conduct at the risk of their credibility with this Court, how can they properly assess and vigorously prosecute claims against holders of First Lien Claims that are premised on the very same conduct?

29.    In that regard, the transactions outlined in the Proposed Complaint – such as the 2007 LBO and the "amend and extend" transactions – further make clear the TCEH Debtors board members and management have a vested interest in avoiding scrutiny of their prior

---

[8] The minutes indicate that the following directors TCEH and EFCH were present: ██████████████████████████████████████████████████ Also present were, among others, ████████████████████████████████████████████████

actions.  *See*, *e.g.*, Proposed Complaint (Ex. A) at ¶¶ 22-50.  For example, as alleged in the Proposed Complaint, the TCEH Debtors' boards approved the 2011 "amend and extend" transactions that cost the TCEH Debtors over $2 billion in fees, incremental interest, and a prepayment benefit but provided no tangible value to the TCEH Debtors because the transactions did not address substantial unsupportable debt maturing in 2013 and 2014.  *See id.* ¶¶ 47-50. These allegations raise serious questions concerning the board members' and management's exercise of their fiduciary duties – questions that board members and management have significant incentive to squelch rather than entertain.  The obvious conflicts presented by these circumstances can most easily be remedied by stripping the board members and management of any control over the Claims they have twice sought to abandon, including, as discussed below, the ability to compromise those Claims

> **C.**    **The Ad Hoc Group is Seeking Prior Court Approval**

30.    The Ad Hoc Group is seeking permission from this Court to pursue avoidance actions against the holders of First Lien Debt.  Because these claims are colorable and a formal demand upon the Debtors would be futile given the Debtors' waivers and Stipulations in the Cash Collateral Order, the Court should grant derivative standing to the Ad Hoc Group to commence and prosecute these claims.

> **D.**    **TCEH Unsecured Creditors Should Be Granted Sole Authority To Settle**

31.    The Debtors' inability to bring the claims asserted in the Proposed Complaint also disables them from effectively managing or settling any resulting litigation.  Without repeating arguments raised above, the TCEH Debtors should be relieved from any ability to settle such claims, once asserted.  Indeed, the ability to access the lower standard afforded by Rule 9019 to forestall a searching inquiry into past transactions is arguably more dangerous than giving the TCEH Debtors the right to sue.

32. As a result, the Debtors should not retain any rights to compromise any claims the Ad Hoc Group is granted leave to commence. Moreover, the Ad Hoc Group's ability to litigate the Claims will be hindered if the Debtors retain the right to propose a settlement because, among other things, it likely will reduce incentives for the holders of First Lien Debt to enter into settlement negotiations with the Ad Hoc Group or other creditors.

33. Similar relief has also been granted by courts in this District and elsewhere. *See, e.g.*, *In re Evergreen Solar, Inc.*, Case No. 11-12590 (MFW) (Bankr. D. Del. Oct. 28, 2011), Dkt. No. 382 at ¶ 3; *see also In re Majestic Capital, LTD.*, Case No. 11-36225 (CGM) (Bankr. S.D.N.Y. Dec. 12, 2011), Dkt. No. 211 at ¶ 3; *In re Old CarCo LLC (f/k/a/ Chrysler LLC)*, Case No. 09-50002 (AJG) (Bankr. S.D.N.Y. Aug. 13, 2009), Dkt. No. 5151 at ¶ 2.

34. The Ad Hoc Group is uniquely positioned to prosecute and, if appropriate, settle the claims set forth in the Proposed Complaint, as noted above. First, members of the Ad Hoc Group are the direct and immediate beneficiaries of any lien avoidances and recoveries. The Ad Hoc Group fought for and exempted such potential avoidances and recoveries from adequate protection liens to ensure that these recoveries are available for all TCEH Unsecured Creditors.

35. Second, the members of the Ad Hoc Group are not subject to any turnover obligations, unlike holders of TCEH Second Lien Debt. In a sense, though sitting on the Committee, holders of TCEH Second Lien Debt are proxies for the holders of First Lien Debt, because they are obligated to turn over any amount received in settlement of claims that are challengers to collateral. Holders of TCEH Second Lien Debt, therefore, have no incentive to pursue settlements the proceeds of which would be classified as collateral. The Ad Hoc Group, on the other hand, is not so limited.

36. Third, the Ad Hoc Group – comprised of holders with direct guarantee claims against each and every TCEH Debtor -- is directly incentivized to recover on claims against **all**

the TCEH Debtors (unlike unsecured creditors of individual TCEH subsidiaries like Luminant Generation or TXU Energy).  As such, from a TCEH Debtor perspective, the Ad Hoc Group is a proxy for all TCEH Unsecured Creditors, unlike other creditors, including trade vendors and contract or litigation claimants, who may have claims against only particular TCEH Debtors.

## CONCLUSION

37.    For the reasons set forth above, there is ample reason to vest the Ad Hoc Group with standing to prosecute claims against holders of First Lien Debt.

WHEREFORE, the Ad Hoc Group respectfully requests that the Court enter an order, substantially in the form of the Proposed Order annexed hereto as Exhibit B, granting the Ad Hoc Group the standing and authority to commence, prosecute, and settle claims against holders of First Lien Debt arising out of the factual allegations set forth above and in the Proposed Complaint, and grant such other and further relief as the Court may deem just and proper.

Dated: Wilmington, Delaware
February 19, 2015

FOX ROTHSCHILD LLP

By:        */s/ Jeffrey M. Schlerf*
Jeffrey M. Schlerf (No. 3047)
John H. Strock (No. 4965)
L. John Bird (No. 5310)
919 North Market St., Suite 300
Wilmington, DE 19801
Telephone:  (302) 654-7444
Facsimile:  (302) 463-4971
jschlerf@foxrothschild.com
jstrock@foxrothschild.com
lbird@foxrothschild.com

and

WHITE & CASE LLP
Thomas E Lauria (admitted *pro hac vice*)
Matthew C. Brown (admitted *pro hac vice*)
Southeast Financial Center, Suite 4900

200 South Biscayne Blvd.
Miami, FL 33131
Telephone:  (305) 371-2700
Facsimile:  (305) 358-5744
tlauria@whitecase.com
mbrown@whitecase.com

J. Christopher Shore (admitted *pro hac vice*)
Gregory M. Starner (admitted *pro hac vice*)
1155 Avenue of the Americas
New York, NY 10036
Telephone:  (212) 819-8200
Facsimile:  (212) 354-8113
cshore@whitecase.com
gstarner@whitecase.com

*Counsel to the Ad Hoc Group of TCEH Unsecured*
*Noteholders*