UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>ENERGY FUTURE HOLDINGS CORP., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 14-10979 (CSS)<br><br>(Jointly Administered)<br><br>**Hearing Date:  March 10, 2015 at 9:30 a.m.**<br>**Objection Deadline:  March 3, 2015 at 4:00 p.m.** |

**MOTION OF THE EFH OFFICIAL COMMITTEE FOR ENTRY OF AN ORDER
GRANTING DERIVATIVE STANDING AND AUTHORITY TO PROSECUTE AND
SETTLE CLAIMS ON BEHALF OF THE LUMINANT DEBTORS' ESTATES**

The official committee of unsecured creditors of Energy Future Holdings

Corporation ("**EFH**"), Energy Future Intermediate Holding Company LLC, EFIH Finance Inc.,

and EECI, Inc. (the "**EFH Committee**") hereby submits this motion ("**Motion**") for entry of an

order, substantially in the form attached hereto as Exhibit A (the "**Proposed Order**"), pursuant

to sections 105(a) and 1109(b) of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the

"**Bankruptcy Code**"), granting exclusive derivative standing to the EFH Committee to assert,

prosecute, litigate, negotiate and, if appropriate and upon Court approval, settle claims and/or

causes of action against the TCEH LBO Creditors (as defined below) on behalf of and for the

benefit of the estates of Luminant Generation Company LLC ("**Luminant**") and its debtor

subsidiaries that are Subsidiary Guarantors (as defined below) (collectively, the "**Luminant**

**Debtors**").  In support of this Motion, the EFH Committee respectfully represents as follows:

---

[1] The last four digits of Energy Future Holdings Corp.'s taxpayer identification number are 8810.  The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201.  Due to the large number of debtors in these chapter 11 cases, for which joint administration has been granted, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

**Preliminary Statement**

The Luminant Debtors are not liable on all of the TCEH LBO Debt but nonetheless serviced it from property otherwise available to their other creditors. The liability of the Luminant Debtors is derivative of upstream guarantees and limited to the amount that the Luminant Debtors could have incurred at the time of the guarantee (2007 for most of the TCEH LBO Debt, 2010 for the Second Lien Notes and 2011 for the First Lien Notes) without such incurrence constituting a fraudulent transfer. For reasons specific to the extraordinary 2007 leveraged buy-out, the liability of the Luminant Debtors is significantly less than the face amount of the TCEH LBO Debt and has been at all times since incurrence of the Limited Guarantees.

EFH is the largest creditor of the Luminant Debtors, excluding the TCEH LBO Creditors. Accordingly, the EFH Committee expects to object to the TCEH LBO Creditors' claims and seek a judicial determination of the amount actually due on their Limited Guarantees. As a party in interest, the EFH Committee does not require standing to object to claims. However, reduced guarantee claims against the Luminant Debtors give rise to related avoidance claims against the TCEH LBO Creditors, which the EFH Committee requires standing to pursue.

Over $8 billion of debt service, fees and expenses have been paid to the TCEH LBO Creditors during the four years prior to the petition date, the applicable statute of limitations if the Court determines that Delaware law applies (the amount is larger under the longer New York period). The Luminant Debtors, insolvent during that period, did not receive 'reasonably equivalent value' to the extent that they made payments on a liability that did not exist. For their own reasons, the TCEH Debtors entered into stipulations that effectively prevent the Luminant Debtors or EFH from challenging the amount of the Limited Guarantees. These stipulations prejudice EFH and the challenge period will expire soon.

2

The EFH Committee seeks standing to prosecute and settle all avoidance actions arising out of or related to debt service, fees, expenses or other amounts transferred to or for the benefit of the TCEH LBO Creditors directly or indirectly from the Luminant Debtors after the initial 2007 LBO, as well as any related liens or obligations incurred by the Luminant Debtors after the initial 2007 LBO (the "**Luminant Avoidance Actions**").  The Luminant Avoidance Actions complement the claims objections that the EFH Committee is pursuing, insofar as disgorgement of avoidance proceeds will be a precondition to allowance of any of the TCEH LBO Creditors' claims against the Luminant Debtors.  The EFH Committee has discussed this Motion with the TCEH Committee, and the EFH Committee believes that granting the relief requested in this Motion does not preclude the Court from granting standing to the TCEH Committee on the other matters referenced in its own motion and attached complaint.

## Facts

### A.    The TCEH LBO Debt

1.    In connection with the 2007 LBO, Texas Competitive Electric Holdings Company LLC ("**TCEH**") borrowed over $24.5 billion under the Credit Agreement, dated as of October 10, 2007 and amended, modified or supplemented from time to time thereafter (the "**First Lien Credit Agreement**"), and TCEH and TCEH Finance, Inc. issued two series of unsecured notes, $3.488 billion in principal amount of 10.25% unsecured notes and $1.749 billion in principal amount of 10.50% unsecured notes (together, the "**Unsecured Notes**")[2] under an Indenture, dated as of October 31, 2007, as supplemented.  Subsequently, to refinance these obligations and/or finance incremental fees, debt service and related amounts, TCEH and TCEH

---

[2]    The Unsecured Notes also include multiple series of pollution control revenue bonds, certain series of which are guaranteed by the Subsidiary Guarantors.

Finance, Inc. issued, $1.57 billion in principal amount of 15.0% second lien notes (the "**Second Lien Notes**") under an Indenture, dated as of October 6, 2010, as supplemented, and $1.75 billion in principal amount of 11.50% senior secured notes (the "**First Lien Notes**") under an Indenture dated April 19, 2011, as supplemented. As of April 29, 2014 (the "**Petition Date**"), the aggregate outstanding principal amount under the First Lien Credit Agreement, the First Lien Notes, the Second Lien Notes and the Unsecured Notes was $32.068 billion (together, the "**TCEH LBO Debt**").[3]

      2.      The TCEH LBO Debt was guaranteed by Energy Future Competitive Holdings Company LLC ("**EFCH**") and certain of TCEH's subsidiaries (the "**Subsidiary Guarantors**,"[4] and together with TCEH and EFCH, the "**TCEH Debtors**"). The Luminant Debtors are Subsidiary Guarantors.

**B.**      **The Luminant Debtors are Not Liable on All the TCEH LBO Debt**

      3.      Many facts about the 2007 LBO are striking. The largest LBO in history. $580 million in financing *fees*; an $8 billion impairment of goodwill within a year after closing; a public confession of insolvency within three years. However, one fact stands out with respect to the TCEH Debtors: in 2007, their assets were supposedly worth approximately ▮▮▮▮▮▮▮

---

[3]    The TCEH LBO Debt also include certain first lien interest rate swaps and natural gas commodity hedges.

[4]    The Subsidiary Guarantors include 4Change Energy Company, 4Change Energy Holdings LLC, Big Brown 3 Power Company LLC, Big Brown Lignite Company LLC, Big Brown Power Company LLC, Collin Power Company LLC, Decordova Power Company LLC, Decordova II Power Company LLC, Eagle Mountain Power Company LLC, Generation MT Company LLC, Generation SVC Company, Lake Creek 3 Power Company LLC, Luminant Big Brown Mining Company LLC, Luminant Energy Company LLC, Luminant Energy Trading California Company, Luminant ET Services Company, Luminant Generation Company LLC, Luminant Holding Company LLC, Luminant Mineral Development Company LLC, Luminant Mining Company LLC, Luminant Renewables Company LLC, Martin Lake 4 Power Company LLC, Monticello 4 Power Company LLC, Morgan Creek 7 Power Company, NCA Resources Development Company LLC, Oak Grove Management Company LLC, Oak Grove Mining Company LLC, Oak Grove Power Company LLC, Sandow Power Company LLC, TCEH Finance, Inc., Tradinghouse 3 & 4 Power Company LLC, Tradinghouse Power Company LLC, TXU Energy Retail Company LLC, TXU Energy Solutions Company LLC, TXU Retail Services Company, TXU SEM Company, Valley NG Power Company LLC and Valley Power Company LLC.

according to Duff & Phelps LLP ("**Duff & Phelps**"),[5] and yet the basis in those assets for U.S. federal tax purposes was approximately $7.5 billion.[6] If those assets were sold by the TCEH Debtors in a taxable transaction, the TCEH Debtors would have incurred approximately ███ ███ in taxable gain and been responsible to pay approximately ██████████ in cash taxes (by reimbursing EFH and/or EFCH, who were each tax-paying entities at the time). This significant tax liability—an inescapable constraint on the value of Luminant and TXU Energy—exceeded in amount the entire equity check for the 2007 LBO.

        4.      The low 'inside' tax basis of the TCEH Debtors, as well as the liability of the TCEH Debtors to reimburse EFH and/or EFCH for taxes, was known to the holders of the TCEH LBO Debt (the "**TCEH LBO Creditors**") at the time of the 2007 LBO. In the informational materials distributed to the TCEH LBO Creditors prior to their investment decision in 2007, the "TCEH Projected Financials" show ██████████████████████████ ████████████████████████████████████████████ ███████████████████████████████.[7] Actual payments for the associated taxes (also at the low inside basis) were made by the TCEH Debtors to EFH and/or EFCH, accordingly, with respect to the applicable tax years. The TCEH Debtors have always been liable—one way or another—for the taxes generated by their activities.

        5.      However, when determining how much debt the TCEH Debtors could incur in 2007, the tax liability of the TCEH Debtors appears to have been ignored. For example,

---

[5]    ████████████████████████████████████████████ (the "**D&P Solvency Presentation**") ███. The Debtors hired Duff & Phelps, an independent third party, to conduct a solvency analysis in connection with the 2007 LBO.

[6]    *See* Omnibus Tax Memorandum [D.I. 2296] at 8.

[7]    ████████████████████████████████████████████ ███████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████ [8] The ████████ in

taxes due upon a taxable disposition are not included, either as a cost of selling the assets or as a

contingent liability.  Of course, it may be justifiable to exclude taxes due upon a sale from

contingent liabilities for certain purposes, *e.g.*, going concern accounting where no sale is

contemplated.  But Duff & Phelps excluded taxes when measuring whether the TCEH Debtors

(on their own and in distress) could sell off their assets to pay their debts.  The Duff & Phelps

definition of "fair saleable value" ████████ :



If Duff & Phelps had accounted for the ████████ tax payable upon a taxable disposition, the

TCEH Debtors would have failed the balance sheet test, and likely the other elements of a proper

solvency analysis (*e.g.*, adequate capitalization), even if every non-tax financial assumption of

the D&P Solvency Presentation were otherwise accepted as true.

      6.     Of course, the non-tax financial assumptions in the D&P Solvency

Presentation were anything but true:  they were dead wrong.  At the time of the 2007 LBO,

TCEH—and its primary asset, the Luminant Debtors—had a positive book value of equity in

---

[8] ████████████████████

[9] ████████████████████████

excess of ███████.[10]  One year later, as of December 31, 2008, TCEH's book value of equity

had decreased by at least $8 billion as a result of a goodwill impairment as determined by Duff &

Phelps.[11]  TCEH's book value of equity continued to decrease thereafter with further goodwill

impairments of $4.1 billion in 2010, $1.2 billion in 2012 and $1.0 billion in 2013.[12]  These

impairments of TCEH's goodwill provide a strong indication of the insolvency of TCEH and its

subsidiaries, including its primary subsidiaries, the Luminant Debtors, after giving effect to the

incurrence of the TCEH LBO Debt.

       7.     The Luminant Debtors did not borrow the TCEH LBO Debt and they

received no proceeds from that debt.  The Luminant Debtors are liable on the TCEH LBO Debt

only to the extent that they, as Subsidiary Guarantors, guaranteed the TCEH LBO Debt pursuant

to various limited guarantees (the "**Limited Guarantees**").

       8.     While TCEH was contractually liable for the entire amount of the TCEH

LBO Debt, the liability of each Luminant Debtor under the Limited Guarantees was capped by a

contractual savings clause at the amount such Luminant Debtor could incur without causing a

fraudulent transfer.  Specifically, section 2(b) of the First Lien Credit Agreement Guarantee (the

"**Credit Agreement Savings Clause**") provides:

> Anything herein or in any other Credit Document to the contrary
> notwithstanding, the maximum liability of each Guarantor
> hereunder and under the other Credit Documents shall in no event
> exceed the amount that can be guaranteed by such Guarantor under
> the Bankruptcy Code or any applicable laws relating to fraudulent
> conveyances, fraudulent transfers or the insolvency of debtors.

---

[10] ███████████████████

[11] *See* Declaration of Paul Keglevic, Executive Vice President, Chief Financial Officer, and Co-Chief
Restructuring Officer of Energy Future Holdings Corp., *et al.*, In Support of First Day Motions [D.I. 98], at 62
n. 52.

[12] *Id.*

SC1:3781837.8

Similarly, sections 10.02 of the First Lien Notes Indenture, 10.02 of the Second Lien Notes

Indenture and 10.02 of the Unsecured Notes Indenture (together with the Credit Agreement

Savings Clause, the "**Savings Clauses**") each provide:

> [T]he Trustee, the Holders and the Guarantors hereby irrevocably
> agree that the obligations of each Guarantor shall be limited to the
> maximum amount as shall, after giving effect to such maximum
> amount and all other contingent and fixed liabilities of such
> Guarantor that are relevant under such laws and after giving effect
> to any collections from, rights to receive contribution from or
> payments made by or on behalf of any other Guarantor in respect
> of the obligations of such other Guarantor under this Article 10,
> result in the obligations of such Guarantor under its Guarantee not
> constituting a fraudulent conveyance or fraudulent transfer under
> applicable law.

9.      The Savings Clauses were bargained-for terms of the documentation for

the TCEH LBO Debt and disclosed to the TCEH LBO Creditors prior to their investment

decision.  The purpose of the Savings Clauses is to "save" at least part of the Limited Guarantees

by allocating to the TCEH LBO Creditors, as a matter of New York contract law, the risk that the

incurrence of the Limited Guarantees would constitute a fraudulent transfer by the Luminant

Debtors.  On information and belief, without the Savings Clauses, the Limited Guarantees would

not have been incurred by the Luminant Debtors, or would have been incurred in significantly

reduced amounts.

10.     TCEH is a holding company with no assets other than ownership interests

in the Luminant Debtors and the other Subsidiary Guarantors.  In 2007, TCEH, the nominal

borrower, had no material capacity to make contribution or other payments to Subsidiary

Guarantors in the event there was a call on the Limited Guarantees and the assets of the

Subsidiary Guarantors were insufficient.  Similarly, the assets of the Subsidiary Guarantors,

chiefly the Luminant Debtors, have been the primary source for debt service payments on the

TCEH LBO Debt at all times since its incurrence.  Indeed, a call on the Limited Guarantees in

the event of a TCEH default on the TCEH LBO Debt was a certainty, and the Limited Guarantee

obligations were *de facto* not contingent at the time of incurrence in 2007 and at all times since.[13]

11.    The amount of the claim against the Luminant Debtors under the Limited

Guarantees must be determined based on whether and to what extent an incurrence of the

Limited Guarantees could constitute a fraudulent transfer.  The EFH Committee continues to

investigate and has not yet formed a definitive conclusion.  However, the EFH Committee

submits that claims against the Luminant Debtors under the Limited Guarantees are significantly

less than the face amount of the TCEH LBO Debt in light of (i) the inability of the Luminant

Debtors to support the TCEH LBO Debt when the Limited Guarantees were incurred, (ii) the

insolvency of all the TCEH Debtors, on a *consolidated* basis, at all times at and after the 2007

LBO, (iii) the absence of any reasonable equivalent value in exchange for the incurrence of the

Limited Guarantees, and (iv) the disregard by the TCEH LBO Creditors of the ████████ tax

liability that, although contingent, pre-dated the 2007 LBO.

## C.    Payments by the Luminant Debtors to or for the Benefit of the TCEH LBO Creditors Are Fraudulent Transfers

12.    During the four years prior to the Petition Date, TCEH paid or caused the

Luminant Debtors to pay at least $8 billion with respect to debt service, fees, expenses and other

---

[13]    For this reason, the Limited Guarantees, like many financial guarantees without a credit-worthy primary obligor, are not drafted as contingent obligations at all.  Under the First Lien Credit Agreement Guarantee, each guarantee of the First Lien Credit Agreement obligations was joint and several, unconditional and irrevocable, and guaranteed by each Subsidiary Guarantor as primary obligor and not merely as surety.  *See* First Lien Credit Agreement Guarantee § 2(a).  Similarly, each Subsidiary Guarantor guaranteed the obligations under each of the Indentures jointly and severally, fully and unconditionally, and as a guarantee of payment and not a guarantee of collection.  *See* First Lien Notes Indenture § 10.01; Second Lien Notes Indenture § 10.01; Unsecured Notes Indenture § 10.01.

amounts on the TCEH LBO Debt ("**TCEH Debt Service**").[14]  The TCEH Debt Service included

the following interest payments, in approximate amounts, to the TCEH LBO Creditors:

**TCEH Debt Service Since April 29, 2010 (in millions)**

|  | Q2-Q4 2010 | 2011 | 2012 | 2013 | Q1 2014 |
|---|---|---|---|---|---|
| **First Lien Credit Agreement** | $675 | $1,000 | $1,050 | $1,065 | $270 |
| **First Lien Notes** |  | $200 | $200 | $200 | $50 |
| **Second Lien Notes** | $200 | $400 | $400 | $400 | $100 |
| **Unsecured Notes** | $450 | $590 | $610 | $610 | $150 |
| **TOTAL** | $1,320 | $2,190 | $2,260 | $2,275 | $570 |

      13.     Public filings indicate that TCEH's only significant sources of income to

fund the TCEH Debt Service were distributions from the Subsidiary Guarantors.[15]  On

information and belief, during the four years prior to the Petition Date, the Subsidiary

Guarantors, chiefly the Luminant Debtors, distributed by dividend amounts to fund TCEH Debt

Service and/or paid such amounts to the TCEH LBO Creditors directly on TCEH's behalf.

      14.     The Luminant Debtors were insolvent during this period.  In public filings,

it was consistently disclosed that TCEH was balance-sheet insolvent on a consolidated basis

beginning in 2010 and might have trouble paying or refinancing TCEH's substantial debt when

due.  According to EFH's Form 10-K:

> Recent valuation analyses of TCEH's business indicate that the
> principal amount of its outstanding debt currently exceeds its
> enterprise value.  We may have difficult successfully implementing

---

[14]   During this four year period, TCEH distributed in excess of $10.074 billion in debt service and interest payments.  This amount included debt service and interest payments on EFH, EFCH and TCEH outstanding debt.  *See* Form 10-Q of EFCH for the fiscal quarter ended March 31, 2014, at 39; Form 10-K of EFCH for the fiscal year ended December 31, 2013 ("**EFCH 2013 10-K**"), at 161; Form 10-K of EFCH for the fiscal year ended December 31, 2010, at 152; Form 10-Q of EFCH for the fiscal quarter ended March 31, 2010, at 31.  At least $8 billion of the $10.074 billion was for debt service and interest payments made to the TCEH LBO Creditors.  The EFH Committee reserves the right to assert that the applicable statute of limitations period is longer than four years, as discussed below.

[15]   *See* EFCH 2013 10-K, at 163–66; Form 10-K of EFCH for the fiscal year ended December 31, 2012, at 149–51.

> any refinancing of our debt due to our financial position as reflected in our balance sheet and the valuation analysis.[16]

Similarly, in 2012 and 2013, EFH disclosed that:

> [T]hird party analyses of TCEH's business performed in connection with goodwill impairment testing in accordance with US GAAP, which have indicated that the principal amount of TCEH's outstanding debt exceeds its enterprise value, may make it more difficult for us to successfully access the capital markets to obtain liquidity and/or implement any refinancing or extensions of our debt or obtain additional financing.[17]

15.     The insolvent Luminant Debtors received no value from TCEH or the TCEH LBO Creditors for upstreaming cash to fund that portion of the TCEH Debt Service for which the Luminant Debtors were not liable under their Limited Guarantees.  In addition, even with respect to that portion of the TCEH Debt Service for which the Luminant Debtors may be responsible, a determination whether payments of TCEH Debt Service and/or incurrence of related liens and obligations after the initial 2007 LBO provided meaningful value to the Luminant Debtors can be made only after resolving the threshold question of the liability of the Luminant Debtors on the Limited Guarantees.

**D.     The TCEH Debtors Cannot Pursue the Luminant Avoidance Actions**

16.     On June 6, 2014, the Court entered the *Final Order (A) Authorizing Use of Cash Collateral for Texas Competitive Electric Holdings Company LLC and Certain of its Debtor Affiliates, (B) Granting Adequate Protection, and (C) Modifying the Automatic Stay* [D.I. 855] (the "**Cash Collateral Order**").  The Cash Collateral Order included stipulations by the TCEH Debtors (as defined therein, the "**TCEH Debtor Stipulations**") regarding, among other

---

[16]    Form 10-K of EFH for the fiscal year ended December 31, 2010, at 23.

[17]    Form 10-K of EFH for the fiscal year ended December 31, 2011, at 30; Form 10-K of EFH for the fiscal year ended December 31, 2012, at 22.

11

things, the validity and enforceability of the liens securing and obligations arising under the First

Lien Credit Agreement and the First Lien Notes. (Cash Collateral Order ¶ F(iv).)

17.    The TCEH Debtor Stipulations are binding upon the TCEH Debtors, their

affiliates and any of their respective successors. (Cash Collateral Order ¶ 15.) The TCEH

Debtor Stipulations are also binding on all other parties in interest,[18] including the official

committee of unsecured creditors of the TCEH Debtors (the "**TCEH Committee**"), unless (i) a

party in interest with standing granted by order of the Court has filed an adversary proceeding or

contested matter seeking to avoid, object to, or otherwise challenge the TCEH Debtor

Stipulations by March 13, 2015,[19] and (ii) a final order is entered in favor of the party sustaining

such challenge in any such adversary proceeding or contested matter. (*Id.*)

E.    **EFH is the Largest Non-LBO Creditor of Luminant**

18.    EFH is the largest known unsecured creditor of Luminant, with the

exception of certain TCEH LBO Creditors. Pursuant to intercompany tax sharing agreements

and applicable law, EFH has a prepetition unsecured claim against Luminant in an amount of at

least $500,000,000, and may have a significantly greater prepetition unsecured claim.[20] In

addition, EFH may have substantial administrative claims against the Luminant Debtors to the

extent of taxes incurred in connection with the administration of their estates.

---

[18]  While the Cash Collateral Order refers to all "parties in interest," the EFH Committee reserves its rights as to whether the terms of the Cash Collateral Order apply to the EFH Committee because, *inter alia*, the EFH Committee was not formed until well after the entry of the Cash Collateral Order, and thus had no opportunity to be heard with respect to the matters contained therein.

[19]  The Cash Collateral Order set an initial deadline of September 14, 2014. This deadline has been extended by a series of stipulations by and among the TCEH Debtors, the agents under the First Lien Credit Agreement, the successor indenture trustee under the First Lien Indenture, and the unofficial committee of certain unaffiliated holders of first lien secured claims against the TCEH Debtors. *See* D.I. 1771; 2083; 2704; 2916; 3380.

[20]  *See* Notice of Amendments to Schedules of Assets and Liabilities for Debtor Energy Future Holdings Corp. (Case No. 14-10979), *Exhibit 1, Amended Schedule B,* [D.I. 3586] (listing an approximately $1.29 billion claim owed from Luminant). The EFH Committee reserves its rights with respect to the amount of this claim against Luminant and generally with respect to all claims against the Luminant Debtors.

SC1:3781837.8

**Jurisdiction**

19.     This Court has jurisdiction to consider this matter pursuant to 28 U.S.C.
§ 1334.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter is a core
proceeding pursuant to 28 U.S.C. § 157(b).  The statutory predicates for the relief requested
herein are sections 105(a) and 1109(b) of the Bankruptcy Code.

**Relief Requested**

20.     By this Motion, the EFH Committee requests entry of the Proposed Order
granting exclusive standing and authority to assert, prosecute, litigate, negotiate and, if
appropriate, settle the Luminant Avoidance Actions, including standing to take all actions the
EFH Committee determines in its sole discretion necessary or appropriate with respect to the
Luminant Avoidance Actions, with the full rights and privileges of the Luminant Debtors, with
any and all recoveries to be for the benefit of the Luminant Debtors' estates.

**Basis for Relief**

21.     Section 1109(b) of the Bankruptcy Code provides, in relevant part, that
"[a] party in interest, including . . . a creditors' committee [and] a creditor . . . may raise and may
appear and be heard on any issue in a case under this chapter."  11 U.S.C. § 1109(b).  A
bankruptcy court may exercise its equitable powers to effectuate this fundamental right by
permitting parties in interest, including a creditors' committee, to act on behalf of the debtor's
estate if the debtor unjustifiably fails to do so.  *See Official Comm. of Unsecured Creditors of
Cybergenics Corp.* v. *Chinery*, 330 F.3d 548, 567–68 (3d Cir. 2003) (en banc) (concluding that
section 1109(b), together with other sections of the Bankruptcy Code, makes clear that Congress
approved of derivative suits by creditors' committees to recover property for the benefit of the
estate, and that bankruptcy courts may exercise their equitable powers to confer such derivative
standing where a trustee is delinquent); *see also Eckbold* v. *Miller (In re Redden)*, 2013 WL

13

5436368 (Bankr. D. Del. 2013), at *2–3 (noting that derivative standing may be granted for the benefit of the bankruptcy estate).

22.    This authority is not limited to creditors' committees, however, and bankruptcy courts may also confer derivative standing on a creditor acting in its individual capacity. *See Infinity Investors Ltd.* v. *Kingsborough (In re Yes! Entm't Corp.)*, 316 B.R. 141, 145 (D. Del. 2004) (applying *Cybergenics* to confer derivative standing on an individual creditor to pursue claims on behalf of the estate). Where, as is the circumstance here, the creditor is unable to pursue the claim, it is appropriate to confer standing on the creditors' committee representing the interests of that creditor.

23.    In the Third Circuit, derivative standing requires: "(1) a colorable claim; (2) that the trustee unjustifiably refused to pursue the claim; and (3) permission of the bankruptcy court to initiate the action." *In re Yes! Entm't Corp.*, 316 B.R. at 145; *see also In re Centaur, LLC*, No. 10-10799 KJC, 2010 WL 4624910, at *4 (Bankr. D. Del. Nov. 5, 2010).

A.    **The Luminant Avoidance Actions are Colorable.**

24.    The first requirement, "colorable claim," is a "relatively easy one to make." *Adelphia Commc'ns Corp.* v. *Bank of America, N.A. (In re Adelphia Commc'ns Corp.)*, 330 B.R. 364, 376 (Bankr. S.D.N.Y. 2005). The EFH Committee "does not have to show a likelihood of success on the merits" but only "give the Court comfort that their litigation will be a sensible expenditure of estate resources." *Id.* at 386; *see also In re Centaur*, 2010 WL 4624910, at *5 (noting that the decision whether to grant a committee derivative standing "turns on the outcome of a cost/benefit analysis").

25.    Courts generally undertake the same analysis as when a defendant moves to dismiss a complaint for failure to state a claim. *See In re Centaur,* 2010 WL 4624910, at *4. This inquiry is akin to the pleading requirements of rule 8(a) of the Federal Rules of Civil

14

Procedure, which require only that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief."[21]  Fed. R. Civ. P. 8(a); *see also In re Centaur,* 2010 WL 4624910, at *5.

26.    The EFH Committee has colorable claims that the Luminant Debtors' liability on the Limited Guarantees is less than the face amount of the TCEH LBO Debt, perhaps substantially.  The Savings Clauses allocated to the TCEH LBO Creditors, rather than other stakeholders in the LBO, the risk of fraudulent transfer by the Luminant Debtors.  The EFH Committee alleges that the incurrence of the Limited Guarantees in the full face amount of the TCEH LBO Debt would have constituted a fraudulent transfer, including, without limitation, because the Luminant Debtors were unable to support all of the TCEH LBO Debt when the Limited Guarantees were incurred, the apparent insolvency of the TCEH Debtors on a consolidated basis at all times at and after the 2007 LBO, the absence of any reasonably equivalent value in exchange for the incurrence of the Limited Guarantees, and the knowledge of the TCEH LBO Creditors that TCEH's consolidated tax basis was less than ███████ of the ascribed value of its assets.

27.    The Luminant Avoidance Actions are similarly colorable.  Section 548 of the Bankruptcy Code provides that the trustee, or any party with standing, may avoid actual or constructive fraudulent transfers made on or within two years of the filing of the petition.  11 U.S.C. § 548.  A claim for constructive fraudulent transfer requires a showing that the debtor "received less than a reasonably equivalent value" for the transfer, and that the debtor (i) was

---

[21]    At least one Delaware Bankruptcy Court has noted that even less may be required in appropriate circumstances because "the sufficiency of the allegations simply cannot be [evaluated] to a Rule 12(b)(6) standard . . . [where] . . . we haven't even filed the complaint yet."  Transcript of Proceedings at 97, *In re Fedders North America, Inc.,* No. 07-11176 (BLS) (Bankr. D. Del. Mar. 24, 2008), D.I. 933.

SCI:3781837.8

insolvent at the time of the transfer or became insolvent as a result of the transfer; (ii) was left with unreasonably small capital; or (iii) intended to incur, or believed that it would incur, debts beyond its ability to pay. 11 U.S.C. § 548(a)(1). With respect to the first prong, "a party receives reasonably equivalent value for what it gives up if it gets 'roughly the value it gave.'" *VFB LLC* v. *Campbell Soup Co.*, 482 F.3d 624, 631 (3d Cir. 2007) (quoting *In re Fruehauf Trailer Corp.*, 444 F.3d 203, 213 (3d Cir. 2006)). With respect to the second prong, under section 101(32) of the Bankruptcy Code, often referred to as the "'balance sheet' test for insolvency," a debtor is insolvent when "the sum of such entity's debts is greater than all of such entity's property, at a fair valuation," exclusive of exempt property and any property transferred in actual fraudulent transfers. 11 U.S.C. § 101(32); *Homeplace of Am., Inc.* v. *Salton, Inc. (In re Waccamaw's Homeplace)*, 325 B.R. 524, 529 (Bankr. D. Del. 2005) (citation omitted). If a transfer is avoided under section 548, section 550(a) allows a trustee to recover property from the entity "for whose benefit such transfer was made." 11 U.S.C. § 550(a).

28.     While section 548 of the Bankruptcy Code refers to a two-year look-back period, section 544(b)(1) of the Bankruptcy Code allows a trustee to avoid any transfers that are "voidable under applicable law," including state law. 11 U.S.C. § 544(b)(1). Delaware and Texas have both adopted versions of the Uniform Fraudulent Transfer Act ("**UFTA**"), containing a four-year look back period for constructive fraudulent transfers. *See* Del. Code Ann. tit. 6, § 1309 (West 2015); Tex. Bus. & Com. Code Ann. § 24.010 (West 2015).[22] The Court need not engage in a choice-of-law analysis at this time since the basic elements of a constructive

---

[22]  Alternatively, claims for constructive fraudulent transfer under the Uniform Fraudulent Conveyance Act ("**UFCA**"), as adopted by New York, are subject to a six-year statute of limitations. *See Official Comm. of Unsecured Creditors of Vivaro Corp.* v. *Leucadia Nat'l Corp. (In re Vivaro Corp.)*, No. 12-13810 (MG), 2015 WL 428318, at *7 (Bankr. S.D.N.Y. Feb. 3, 2015). For present purposes, the EFH Committee asserts that the UFTA's four-year statute of limitations applies to the Luminant Avoidance Actions, but reserves the right to argue that the longer six-year statute of limitations under the UFCA applies.

SC1:3781837.8

fraudulent transfer claim are substantially the same under the Bankruptcy Code, the UFCA and the UFTA. *See Charys Liquidating Trust* v. *McMahan Sec. Co., L.P. (In re Charys Holding Co., Inc.)*, 443 B.R. 628, 636 (Bankr. D. Del. 2010) (stating that the elements of an avoidable transfer under the UFTA and UFCA do not substantially vary from the elements set forth in the Bankruptcy Code); *see also Berg Chilling Sys., Inc.* v. *Hull Corp.*, 435 F.3d 455, 462 (3d Cir. 2006) ("According to conflicts of laws principles, where the laws of the two jurisdictions would produce the same result on the particular issue presented, there is a 'false conflict,' and the Court should avoid the choice-of-law question.").

29.     The Luminant Debtors, directly or indirectly, paid at least $8 billion in TCEH Debt Service during the four-year look-back period prior to the Petition Date, and incurred related liens and obligations in support of the TCEH LBO Debt. These transfers were made while the Luminant Debtors were insolvent. Moreover, because the Luminant Debtors did not guarantee the full amount of the TCEH LBO Debt, among other reasons, the Luminant Debtors did not receive reasonably equivalent value for such payments.

30.     The colorable basis to pursue the Luminant Avoidance Actions is underscored by the amount in dispute and the importance of the claims to these estates. *See, e.g., Adelphia Commc'ns*, 330 B.R. at 386 (stating that a court should grant derivative standing where the proposed litigation is a "sensible expenditure of estate resources"). The Luminant Avoidance Actions involve $8 billion of payments, a substantial portion of which may be recoverable for the benefit of the Luminant Debtors' estates. The costs of litigating the Luminant Avoidance Actions are a small fraction of the amount in dispute. Moreover, the Luminant Avoidance Actions relate directly to a central question in these cases: whether the lenders of the First Lien Credit Agreement and holders of the First and Second Lien Notes have valid and enforceable

17

liens on the assets and property of the Luminant Debtors. Claims by these TCEH LBO Creditors are disallowable under section 502(d) of the Bankruptcy Code unless they have paid to the estate any property recoverable on the Luminant Avoidance Actions. The amount of payments, if any, that must be made to the Luminant Debtors as a condition to claim allowance is a question that has significant consequences for stakeholders and should be resolved as promptly as practicable.

**B.      Demand is Futile.**

31.      A party in interest seeking derivative standing need not formally demand that the debtor take action where it is "plain from the record that no action on the part of the debtor would have been forthcoming." *Official Comm. of Unsecured Creditors of Nat'l Forge Co. v. E. Roger Clark (In re Nat'l Forge Co.)*, 326 B.R. 532, 544 (W.D. Pa. 2005). Here, by the express provisions of the Cash Collateral Order, the TCEH Debtors, including the Luminant Debtors, waived all rights to contest the validity of the obligations and liens in connection with the First Lien Credit Agreement and the First Lien Notes. (Cash Collateral Order ¶¶ F, 15.) Thus, a formal request that the Luminant Debtors commence an action to avoid such obligations and liens is futile and is not required. *See In re Nat'l Forge*, 326 B.R. at 545 (holding that creditor seeking standing was not required to make formal demand on the debtor where the debtor had waived all rights to contest secured claim).

32.      The Luminant Debtors are not clearly prohibited from asserting the Luminant Avoidance Actions with respect to the Second Lien Notes and Unsecured Notes. However, it is in the best interests of the Luminant Debtors for the same party to pursue the Luminant Avoidance Actions with respect to *all* TCEH LBO Debt in a single proceeding. The EFH Committee has discussed the Luminant Avoidance Actions with the Debtors, and has been informed that the Luminant Debtors do not intend to pursue any of the Luminant Avoidance Actions, regardless of the scope of the TCEH Debtor Stipulations.

18

**C.    The EFH Committee is the Appropriate Party to Prosecute the Luminant Avoidance Actions**

33.    With the Luminant Debtors and EFH (as creditor) sidelined, either the EFH Committee or the TCEH Committee needs to pursue these potentially valuable claims on behalf of the Luminant Debtors' estates.  While the Court might ordinarily look to the creditors' committee of the debtor at issue to pursue the claims, that is not appropriate here.  There is an obvious and direct conflict between the Luminant Debtors and TCEH as to the amount of the Luminant Debtors' contingent liability for the TCEH LBO Debt.  The Luminant Debtors have an interest in reducing their obligation under the Limited Guarantees, while TCEH has an interest in maximizing the value of those Limited Guarantees.

34.    In addition, any reduction of the Limited Guarantees and success with respect to the Luminant Avoidance Actions would adversely affect the TCEH LBO Creditors, including some who have an influential role on the TCEH Committee.  The TCEH Committee includes Wilmington Savings Fund Society, FSB, the indenture trustee for the Second Lien Notes, and Law Debenture Trust Company of New York, the indenture trustee for the Unsecured Notes.[23]

35.    The EFH Committee, on the other hand, represents all unsecured creditors of EFH.  EFH, in turn, is the largest creditor of Luminant, excluding the TCEH LBO Creditors.  The EFH Committee's incentives with respect to the Luminant Debtors' liability are aligned with those of the Luminant Debtors and all of their unsecured creditors:  establish the lowest amount due under the Limited Guarantees and recover the most avoidance proceeds for the payments and debt service improperly paid by the Luminant Debtors.  Creditors of EFH and the Luminant

---

[23]    Notice of Appointment of Committee of Unsecured Creditors [D.I. 420].

SC1:3781837.8

Debtors will all benefit from the maximum recovery to the Luminant Debtors' estates of proceeds from the Luminant Avoidance Actions. The EFH Committee thus respectfully submits that derivative standing should be granted to the EFH Committee for purposes of pursuing and, if appropriate, and with the approval of the Court, settling the Luminant Avoidance Actions against the TCEH LBO Creditors for the benefit of the EFH and Luminant Debtors' estates and creditors.

**D.      The EFH Committee is Seeking Prior Court Approval to Pursue the Luminant Avoidance Actions.**

36.      By this Motion, the EFH Committee is seeking court approval prior to asserting the Luminant Avoidance Actions on behalf of the Luminant Debtors' estates. Granting derivative standing to the EFH Committee is appropriate based on the facts and circumstances of this case.

## Notice

37.      Notice of this Motion has been provided to: (a) the U.S. Trustee; (b) the Debtors and counsel thereto, including (i) Kirkland & Ellis LLP and (ii) Richards Layton & Finger, P.A.; (c) counsel to the TCEH Committee, including (i) Morrison & Foerster LLP and (ii) Polsinelli PC; (d) counsel to certain lenders of the First Lien Credit Agreement, including (i) Paul, Weiss, Rifkind, Wharton & Garrison LLP and (ii) Young Conaway Stargatt & Taylor LLP; (e) Wilmington Trust, N.A., as agent of the First Lien Credit Agreement, and counsel thereto, including (i) Seward & Kissel LLP and (ii) Blank Rome LLP; (f) Delaware Trust Company (f/k/a/ CSC Trust Company of Delaware) as the trustee under the First Lien Indenture, and counsel thereto, including (i) Perkins Coie LLP and (ii) Bayard, P.A.; (g) counsel for certain holders of the First Lien Notes, O'Melveny & Myers LLP; (h) the unofficial committee of certain holders of the Unsecured Notes, and counsel thereto, including  (i) White & Case LLP

and (ii) Fox Rothschild LLP; (i) counsel to Aurelius Capital Management, LP, a holder of First

Lien Notes, including (i) Goodwin Proctor LLP and (ii) Gellert Scali Busenkell & Brown LLC;

(j) Law Debenture Trust Company of New York as indenture trustee of the Unsecured Notes,

and counsel thereto, including (i) Patterson Belknap Webb & Tyler LLP and (ii) Morris James

LLP; (k) Citibank, N.A., as administrative and collateral agent under that certain senior secured

superpriority debtor-in-possession credit agreement, and counsel thereto, including (i) Drinker

Biddle & Reath LLP, and (ii) Milbank Tweed, Hadley & McCloy LLP; (l) Wilmington Savings

Fund Society, FSB (a/k/a Christiana Trust), as successor indenture trustee of the Second Lien

Notes, and counsel thereto, including (i) Ashby & Geddes, P.A. and (ii) Brown Rudnick LLP;

(m) The Bank of New York Mellon, and The Bank of New York Mellon Trust Company, N.A.

as trustees under the pollution control revenue bonds, and counsel, Reed Smith LLP, (n) all

parties served with the cash collateral motion as noted in the Affidavit of Service [D.I. 212] and

(o) all parties requesting notice in these chapter 11 cases pursuant to Bankruptcy Rule 2002.  The

EFH Committee respectfully submits that further notice of this Motion is neither required nor

necessary.

## No Prior Request

38.    No prior motion for the relief requested herein has been made to this or

any other Court.

WHEREFORE, for the reasons set forth herein, the EFH Committee respectfully requests that the Court (a) enter the Proposed Order, conferring exclusive standing to the EFH Committee with respect to the Luminant Avoidance Actions and (b) grant such other and further relief as is just and proper.

Dated:   Wilmington, Delaware
         February 19, 2015

**MONTGOMERY McCRACKEN WALKER & RHOADS, LLP**

_s/ Mark A. Fink_____
Natalie D. Ramsey, Esquire (DE Bar No. 5378)
Davis Lee Wright, Esquire (DE Bar No. 4324)
Mark A. Fink, Esquire (DE Bar No. 3946)
1105 North Market Street, 15th Floor
Wilmington, DE 19801
Telephone: (302) 504-7800
Facsimile: (302) 504 -7820
E-mail:       nramsey@mmwr.com
              dwright@mmwr.com
              mfink@mmwr.com

– and –

**SULLIVAN & CROMWELL LLP**

Andrew G. Dietderich
Brian D. Glueckstein
Michael H. Torkin
Alexa J. Kranzley
125 Broad Street
New York, New York  10004
Telephone:   (212) 558-4000
Facsimile:   (212) 558-3588
E-mail:       dietdericha@sullcrom.com
              gluecksteinb@sullcrom.com
              torkinm@sullcrom.com
              kranzleya@sullcrom.com

_Counsel for the Official Committee of Unsecured Creditors of Energy Future Holdings Corp., Energy Future Intermediate Holding Company LLC; EFIH Finance Inc.; and EECI, Inc._

22

**EXHIBIT A**

**Proposed Order**

SC1:3781837.8

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | Case No. 14-10979 (CSS) |
| Debtors. | (Jointly Administered) |
| | Re: D.I. [___] |

ORDER GRANTING THE EFH OFFICIAL COMMITTEE
DERIVATIVE STANDING AND AUTHORITY TO PROSECUTE AND SETTLE
CLAIMS ON BEHALF OF THE LUMINANT DEBTORS' ESTATES

Upon the motion (the "**Motion**")[2] of the Official Committee of Unsecured

Creditors of Energy Future Holdings Corporation, Energy Future Intermediate Holding

Company LLC, EFIH Finance Inc., and EECI, Inc. (the "**EFH Committee**") for entry of an

order (this "**Order**") granting exclusive derivative standing to the EFH Committee to assert,

prosecute, litigate, negotiate and, if appropriate and upon Court approval, settle claims and/or

causes of action against the TCEH LBO Creditors on behalf of and for the benefit of the estates

of Luminant Generation Company LLC and its debtor subsidiaries that are Subsidiary

Guarantors (collectively, the "**Luminant Debtors**"); it appearing that this Court has jurisdiction

to consider the Motion pursuant to 28 U.S.C. §§ 157 and 1334; and it appearing that venue of

these chapter 11 cases and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and

1409; and it appearing that this matter is a core proceeding pursuant to 28 U.S.C. § 157(b); and

this Court having found that proper and adequate notice of the Motion and the relief requested

---

[1] The last four digits of Energy Future Holdings Corp.'s taxpayer identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, for which joint administration has been granted, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

SCI:3781837.8

therein has been provided in accordance with the Federal Rules of Bankruptcy Procedure and the

Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the

District of Delaware, and that, except as otherwise ordered herein, no other or further notice is

necessary; and any objections (if any) to the Motion having been withdrawn or overruled on the

merits; and after due deliberation thereon; and good and sufficient cause appearing therefor;

IT IS HEREBY ORDERED THAT:

1.      The Motion is GRANTED as set forth herein.

2.      The EFH Committee is hereby granted exclusive derivative standing and

authority as the Luminant Debtors' estate representatives (a) to assert, prosecute, litigate,

negotiate and/or settle all avoidance actions arising out of or related to debt service, fees,

expenses or other amounts transferred to or for the benefit of the TCEH LBO Creditors directly

or indirectly from the Luminant Debtors after the initial 2007 LBO, as well as any related liens

or obligations incurred by the Luminant Debtors after the initial 2007 LBO (the "**Luminant**

**Avoidance Actions**") and (b) to take all actions the EFH Committee determines in its sole

discretion necessary or appropriate in connection therewith, in each of cases (a) and (b) with the

full rights and privileges of the Luminant Debtors and with any and all recoveries to be for the

benefit of the Luminant Debtors' estates.

3.      Nothing herein shall obligate, nor shall be deemed to obligate, the EFH

Committee to settle, nor to discuss the settlement of, any Luminant Avoidance Action.

4.      Nothing in this Order or the Motion shall in any way affect the EFH

Committee's rights to seek standing to bring any other or additional causes of action against any

Debtor, the TCEH LBO Creditors or any other party.

SCI:3781837.8

5.    This Court shall retain exclusive jurisdiction over all matters pertaining to this Order and the Motion.

Dated: _____, 2015
        Wilmington, Delaware

                                          Christopher S. Sontchi
                                          United States Bankruptcy Judge

SCI:3781837.8