# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) Case No. 14-10979 (CSS) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |

## NOTICE OF ~~DEBTORS'~~ Creditor's TENTH OMNIBUS
## (SUBSTANTIVE) OBJECTION TO (CERTAIN NO LIABILITY) CLAIMS
## PURSUANT TO SECTION 502(B) OF THE BANKRUPTCY CODE, BANKRUPTCY
## RULES 3001, 3007, AND LOCAL BANKRUPTCY RULE 3007-1 AND HEARING THEREON

Notice of Creditor's Objection To No Liability And Claims Be Expunged

TO: U.S. Bankruptcy Court
For The District of Delaware - Attn: Donna
824 North Market St. - 3rd Floor
Wilmington, Delaware 19801

Energy Future Holdings
/s/ Jason M. Madron

Richard, Layton and Finger, P.A.
920 N. King Street
Wilmington, Delaware 19801
Fax. 302 651-7701

Basis for Objection -

2.

The creditor's claims was created by one of their representatives, a RJR Land Services, in the form of oil and gas lease to drill. The only company filed in this Bankruptcy Court as a debtor is Energy Future Holdings, Corp, et al. Said companies lease expire September 2015. No monies has been paid and damages exist in the form of sink holes in the land. Only 22 acres were leased out of 151 acres, (see lease enclosed).

_____
Mrs. Jo Arvester Cofer
(Same address)

X Mary Cha Coeur
_____
Mary La Coeur
15803 Ruppstock
Missouri City, Tx. 77489

Notice Sent to Incorrect Address

P.S. Notice sent to 15803 Ruppstack instead of 15803 Ruppstock; received said Notice by mail on 2-19-15 and is due 2-00-15.

2 of 2 pages

become payable under this lease) between parties owning interests in land covered by this lease and parties owning interests in land not covered by this lease. Neither shall it impair the right of Lessee to release as provided in paragraph 5 hereof, except that Lessee may not so release as to lands within a unit while there are operations thereon for unitized minerals unless all pooled leases are released as to lands within the unit. At any time while this lease is in force Lessee may dissolve any unit established hereunder by filing for record in the public office where this lease is recorded a declaration to that effect, if at that time no operations are being conducted thereon for unitized minerals. Subject to the provisions of this paragraph 4, a unit once established hereunder shall remain in force so long as any lease subject thereto shall remain in force. If this lease now or hereafter covers separate tracts, no pooling or unitization of royalty interests as between any such separate tracts is intended or shall be implied or result merely from the inclusion of such separate tracts within this lease but Lessee shall nevertheless have the right to pool or unitize as provided in this paragraph 4 with consequent allocation of production as herein provided. As used in this paragraph 4, the words "separate tract" mean any tract with royalty ownership differing, now or hereafter, either as to parties or amounts, from that as to any other part of the leased premises.

5. Lessee may at any time and from time to time execute and deliver to Lessor or file for record a release or releases of this lease as to any part or all of said land or of any mineral or horizon thereunder, and thereby be relieved of all obligations, as to the released acreage or interest.

6. Whenever used in this lease the word "operations" shall mean operations for and any of the following: drilling, testing, completing, marketing, recompleting, deepening, plugging back or repairing of a well in search for or in an endeavor to obtain production of oil, gas, sulphur or other minerals, excavating a mine, production of oil, gas, sulphur or other mineral, whether or not in paying quantities.

7. Lessee shall have the use, free from royalty, of water, other than from Lessor's water wells, and of oil and gas produced from said land in all operations hereunder. Lessee shall have the right at any time to remove all machinery and fixtures placed on said land, including the right to draw and remove casing. No well shall be drilled nearer than 200 feet to the house or barn on said land without the consent of the Lessor. Lessee shall pay for damages caused by its operations to growing crops and timber on said land.

8. The rights and estate of any party hereto may be assigned from time to time in whole or in part and as to any mineral or horizon. All of the covenants, obligations, and considerations of this lease shall extend to and be binding upon the parties hereto, their heirs, successors, assigns, and successive assigns. No change or division in the ownership of said land, royalties, or other moneys, or any part thereof, howsoever effected, shall increase the obligations or diminish the rights of Lessee, including, but not limited to, the location and drilling of wells and the measurement of production. Notwithstanding any other actual or constructive knowledge or notice thereof of or to Lessee, its successors or assigns, no change or division in the ownership of said land or of the royalties, or other monies, or the right to receive the same, howsoever effected, shall be binding upon the then record owner of this lease until thirty (30) days after there has been furnished to such record owner at his or its principal place of business by Lessor or Lessor's heirs, successors, or assigns, notice of such change or division, supported by either originals or duly certified copies of the instruments which have been properly filed for record and which evidence such change or division, and of such court records and proceedings, transcripts, or other documents as shall be necessary in the opinion of such record owner to establish the validity of such change or division. If any such change in ownership occurs by reason of the death of the owner, Lessee may, nevertheless pay or tender such royalties, or other moneys, or part thereof, to the credit of the decedent in a depository bank provided for above.

9. In the event Lessor considers that Lessee has not complied with all its obligations hereunder, both express and implied, Lessor shall notify Lessee in writing, setting out specifically in what respects Lessee has breached this contract. Lessee shall then have sixty (60) days after receipt of said notice within which to meet all or any part of the breaches alleged by Lessor. The service of said notice shall be precedent to the bringing of any action by Lessor on said lease for any cause, and no such action shall be brought until the lapse of sixty (60) days after service of such notice on Lessee. Neither the service of said notice nor the doing of any acts by Lessee aimed to meet all or any of the alleged breaches shall be deemed an admission or presumption that Lessee has failed to perform all its obligations hereunder. If this lease is canceled for any cause, it shall nevertheless remain in force and effect as to (1) sufficient acreage around each well as to which there are operations to constitute a drilling or maximum allowable unit under applicable governmental regulations, (but in no event less than forty acres), such acreage to be designated by Lessee as nearly as practicable in the form of a square centered at the well, or in such shape as then existing spacing rules require; and (2) any part of said land included in a pooled unit on which there are operations. Lessee shall also have such easements on said land as are necessary to operations on the acreage so retained.

10. Lessor hereby warrants and agrees to defend title to said land against the claims of all persons whomsoever. Lessor's rights and interests hereunder shall be charged primarily with any mortgages, taxes or other liens, or interest and other charges on said land, but Lessor agrees that Lessee shall have the right at any time to pay or reduce same for Lessor, either before or after maturity, and be subrogated to the rights of the holder thereof and to deduct amounts so paid from royalties or other payments payable or which may become payable to Lessor and/or assigns under this lease. If this lease covers a less interest in the oil, gas, sulphur, or other minerals in all or any part of said land than the entire and undivided fee simple estate (whether Lessor's interest is herein specified or not), or no interest therein, then the royalties and other moneys accruing from any part as to which this lease covers less than such full interest, shall be paid only in the proportion which the interest therein, if any, covered by this lease, bears to the whole and undivided fee simple estate therein. All royalty interest covered by this lease (whether or not owned by Lessor) shall be paid out of the royalty herein provided. This lease shall be binding upon each party who executes it without regard to whether it is executed by all those named herein as Lessor.

11. If, while this lease is in force, at, or after the expiration of the primary term hereof, it is not being continued in force by reason of the shut-in well provisions of paragraph 3 hereof, and Lessee is not conducting operations on said land by reason of (1) any law, order, rule or regulation, (whether or not subsequently determined to be invalid) or (2) any other cause, whether similar or dissimilar, (except financial) beyond the reasonable control of Lessee, the primary term hereof shall be extended until the first anniversary date hereof occurring ninety (90) or more days following the removal of such delaying cause, and this lease may be extended thereafter by operations as if such delay had not occurred.

12. In the event that Lessor, during the primary term of the lease, receives a bona fide offer which Lessor is willing to accept from any party offering to purchase from Lessor a lease covering any or all of the substances covered by this lease and covering all or a portion of the land described herein, with the lease becoming effective upon expiration of this lease, Lessor hereby agrees to notify Lessee in writing of said offer immediately, including in the notice the name and address of the offeror, the price offered and all other pertinent terms and conditions of this offer. Lessee, for a period of fifteen days after receipt of the notice, shall have the prior and preferred right and option to purchase the lease or part thereof or interest therein, covered by the offer at the price and according to the terms and conditions specified in the offer.

13. This Lease covers all of the mineral interest in the land described herein which Lessor has the right to lease. In the event that Lessor is paid a greater lease bonus amount than the lease bonus Lessor is entitled to be paid for the mineral interest actually owned by Lessor, Lessor will, upon request by Lessee, reimburse to Lessee the difference between the lease bonus paid to Lessor for the execution of this Lease and the actual bonus to which Lessor is entitled.

**IN WITNESS WHEREOF**, this instrument is executed on the date first above written.

---

**MARY C. LACOUR**

# OIL, GAS AND MINERAL LEASE

THIS AGREEMENT made this _____22nd_____ day of _____September_____, 2012, betwee

**MARY C. LACOUR**, a single woman, dealing herein with her sole and separate, non homestead property, whose mailing add 15803 Ruppstock Road, Missouri City, Texas 77489, Lessor (whether one or more), and **RAMPART RESOURCES COMPANY**, whose address is 7404 S. Yale Avenue, Tulsa, Oklahoma 74136, Lessee, WITNESSETH:

1. Lessor, in consideration of Ten ($10.00) Dollars, and other, good and valuable consideration, receipt of which is hereby acknowledged, and of the coven agreements of Lessee hereinafter contained, does hereby grant, lease and let unto Lessee the land covered hereby for the purposes and with the exclusive right of ex drilling, mining and operating for, producing and owning oil, gas, sulphur and all other minerals (whether or not similar to those mentioned), together with the make surveys on said land, lay pipe lines, establish and utilize facilities for surface or subsurface disposal of salt water, construct roads and bridges, dig cana tanks, power stations, telephone lines, employee houses and other structures on said land, necessary or useful in Lessee's operations in exploring, drilling for, pr treating, storing and transporting minerals produced from the land covered hereby or any other land adjacent thereto. The land covered hereby, herein called "sai is located in the County of **HENDERSON**, State of Texas, and is described as follows:

151.50 acres of land, more or less, located in the J. K. Brown Survey, A-66, Henderson County, Texas and being the same land m particularly described in the following two (2) tracts:

**TRACT ONE:** 140 acres, more or less, being more particularly described in that certain Deed dated December 11, 1879 from H. Kinningham and wife, Laura Kinningham to John Allen, recorded in Volume U, Page 353 of the Deed Records of Henderson Coun Texas.

**TRACT TWO:** 11.50 acres, more or less, being more particularly described in that certain Deed dated November 19, 1912 from Staffo Smith to Flora Allen, recorded in Volume 74, Page 30 of the Deed Records of Henderson County, Texas.

This lease also covers and includes, in addition to that above described, all land, if any, contiguous or adjacent to or adjoining the land above described and (a) o claimed by Lessor by limitation, prescription, possession, reversion or unrecorded instrument or (b) as to which Lessor has a preference right of acquisition. Lesso to execute any supplemental instrument requested by Lessee for a more complete or accurate description of said land. For the purpose of determining the amount bonus or other payment hereunder, said land shall be deemed to contain _____151.50_____ acres, whether actually containing more or less, and the above re acreage in any tract shall be deemed to be the true acreage thereof. Lessor accepts the bonus as lump sum consideration for this lease and all rights and options here

2. Unless sooner terminated or longer kept in force under other provisions hereof, this lease shall remain in force for a term of **Three (3)** years from the date hereinafter called "primary term", and as long thereafter as operations, as hereinafter defined, are conducted upon said land with no cessation for more than nine consecutive days. In the event this lease is not continued beyond the primary term by production, on-going operations or by any other means or provision herein con Lessee shall have the option, but not the obligation, to extend the primary term of this lease, as to all or any portion of the leased premises, for an additional and ex term of **Two (2)** years, and for so long thereafter as this lease is continued or maintained in force and effect by the production, or allocation to the leased premises, gas or other hydrocarbons, or by any other means or provisions herein contained. Lessee may exercise the option to extend this lease, as to all or any portion of the premises, by tendering to Lessor, at the address stated above and on or before the expiration date of the initial primary term of this lease, an additional One H Twenty-Five Dollars ($125.00) per acre bonus consideration; no further action being required by Lessee to extend this lease.

3. As royalty, Lessee covenants and agrees: (a) To deliver to the credit of Lessor, in the pipe line to which Lessee may connect its wells, the equal **one-sixth (1/6)** all oil produced and saved by Lessee from said land, or from time to time, at the option of Lessee, to pay Lessor the average posted market price of such **one-sixth** part of such oil at the wells as of the day it is ran to the pipe line or storage tanks, Lessor's interest, in either case, to bear **one-sixth (1/6)** of the cost of treating render it marketable pipe line oil; (b) To pay Lessor on gas and casinghead gas produced from said land (1) when sold by Lessee, **one-sixth (1/6)** of the a realized by Lessee, computed at the mouth of the well, or (2) when used by Lessee off said land or in the manufacture of gasoline or other products, the market va the mouth of the well, of **one-sixth (1/6)** of such gas and casinghead gas; (c) To pay Lessor on all other minerals mined and marketed or utilized by Lessee fro land, one-tenth either in kind or value at the well or mine at Lessee's election, except that on sulphur mined and marketed the royalty shall be one dollar ($1.00) pe ton. If, at the expiration of the primary term or at any time or times thereafter, there is any well on said land or on lands with which said land or any portion there been pooled, capable of producing oil or gas, and all such wells are shut-in, this lease shall, nevertheless, continue in force as though operations were being conduc said land for so long as said wells are shut-in, and thereafter this lease may be continued in force as if no shut-in had occurred. Lessee covenants and agrees reasonable diligence to produce, utilize, or market the minerals capable of being produced from said wells, but in the exercise of such diligence, Lessee shall obligated to install or furnish facilities other than well facilities and ordinary lease facilities of flow lines, separator, and lease tank, and shall not be required to settle trouble or to market gas upon terms unacceptable to Lessee. If, at any time or times after the expiration of the primary term, all such wells are shut-in for a period of consecutive days, and during such time there are no operations on said land, then at or before the expiration of said ninety day period, Lessee shall pay or tender, by or draft of Lessee, as royalty, a sum equal to one dollar ($1.00) for each acre of land then covered hereby. Lessee shall make like payments or tenders at or before th of each anniversary of the expiration of said ninety day period if upon such anniversary this lease is being continued in force solely by reason of the provisions c paragraph. Each such payment or tender shall be made to the parties who at the time of payment would be entitled to receive the royalties which would be paid und lease if the wells were producing, and may be deposited in the **PAY DIRECT TO LESSOR AT ADDRESS ABOVE** or its successors, which shall continue depositories, regardless of changes in the ownership of shut-in royalty. If at any time that Lessee pays or tenders shut-in royalty, two or more parties are, or claim entitled to receive same, Lessee may, in lieu of any other method of payment herein provided, pay or tender such shut-in royalty, in the manner above specified, jointly to such parties or separately to each in accordance with their respective ownerships thereof, as Lessee may elect. Any payment hereunder may be made by che draft of Lessee deposited in the mail or delivered to the party entitled to receive payment or to a depository bank provided for above on or before the last date for pay Nothing herein shall impair Lessee's right to release as provided in paragraph 5 hereof. In the event of assignment of this lease in whole or in part, liability for pay hereunder shall rest exclusively on the then owner or owners of this lease, severally as to acreage owned by each.

4. Lessee is hereby granted the right, at its option, to pool or unitize any land covered by this lease with any other land covered by this lease, and/or with any other lease, or leases, as to any or all minerals or horizons, so as to establish units containing not more than 80 surface acres, plus 10% acreage tolerance; provided, how units may be established as to any one or more horizons, or existing units may be enlarged as to any one or more horizons, so as to contain not more than 640 surface plus 10 % acreage tolerance, if limited to one or more of the following: (1) gas, other than casinghead gas, (2) liquid hydrocarbons (condensate) which are not liqui the subsurface reservoir, (3) minerals produced from wells classified as gas wells by the conservation agency having jurisdiction. If larger units than any of those h permitted, either at the time established, or after enlargement, are required or permitted under any governmental rule or order, for the drilling or operation of a well regular location, or for obtaining maximum allowable from any well to be drilled, drilling, or already drilled, any such unit may be established or enlarged to conform t size required or permitted by such governmental order or rule. Lessee shall exercise said option as to each desired unit by executing an instrument identifying such uni filing it for record in the public office in which this lease is recorded. Each of said options may be exercised by Lessee at any time and from time to time while this le in force, and whether before or after production has been established either on said land, or on the portion of said land included in the unit, or on other land uni

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) Case No. 14-10979 (CSS) |
| | ) |
| Debtors. | ) (Jointly Administered) |

NOTICE OF ~~DEBTORS'~~ Creditor's TENTH OMNIBUS
(SUBSTANTIVE) OBJECTION TO (CERTAIN NO LIABILITY) CLAIMS
PURSUANT TO SECTION 502(B) OF THE BANKRUPTCY CODE, BANKRUPTCY
RULES 3001, 3007, AND LOCAL BANKRUPTCY RULE 3007-1 AND HEARING THEREON

---

Declaration of Mary LaCour
Objection To Creditors
No Liability, Claim and Expunge

I, Mary LaCour, owner of said Real property, the subject of this claim in Bankruptcy Court, file these facts herein:

1. Proof of damages are the drilled holes, and no monies paid.

2. Liable for and associated with RJR Land Services actions (their representative). We did not solicit RJR Land Services; out of RJR Land Services, suddenly appeared Energy Future Holdings Corp. in our affairs regarding said real estate.

3. Notice was sent to wrong street adress: correct adress is 15803 Ruppstock, Missouri City, TX. We received one day notice on this matter. Therefore, I declare under penalty of perjury the foregoing is ~~true~~ and correct to best of my knowledge and belief

Dated - February 19, 2015
Missouri City, Tx.

Mary C LaCour
Mary La Cour
15803 Ruppstock
Missouri City, Tx 77489

2 of 2 Pages