# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) ) | Chapter 11 |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) ) | Case No. 14-10979 (CSS) |
| Debtors. | ) ) ) | (Jointly Administered) |

**DECLARATION OF DISINTERESTEDNESS OF ZOLFO COOPER, LLC PURSUANT TO THE ORDER AUTHORIZING THE RETENTION AND COMPENSATION OF CERTAIN PROFESSIONALS UTILIZED IN THE ORDINARY COURSE OF BUSINESS**

I, Scott W. Winn, declare under penalty of perjury:

1. I am a senior managing director of Zolfo Cooper, LLC, located at 1114 Avenue of the Americas, 41st Floor, New York, NY 10036 (the "Company").

2. Energy Future Holdings Corporation and certain of its affiliates, as debtors and debtors in possession (collectively, the "Debtors"), have requested that the Company provide, as directed by the Debtors, the Debtors' advisors and, to the extent it relates to an actual conflict issue or determining what is an actual conflict issue, conflicts matter advisors to the individual estates with information prepared prepetition by the Company regarding the investigation into certain potential prepetition claims (the "Investigation") in accordance with the terms and conditions set forth in that certain engagement letter between Sidley Austin LLP, in its capacity as special counsel to the Debtors, and the Company dated as of July 12, 2013 (the "Engagement Letter"), a copy of which is attached hereto as **Exhibit A**. Further, the Company will not prepare

---

[1] The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, for which joint administration has been granted, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

any additional information related to the Investigation.  Rather, the Company's services shall be limited to transition services, providing the Debtors, Debtors' counsel, and, to the extent necessary, conflict mater advisors with information already prepared prepetition as part of the Investigation.

3. The Company may have performed services in the past, may currently perform services and may perform services in the future, in matters unrelated to these chapter 11 cases, for persons that are parties in interest in the Debtors' chapter 11 cases.  The Company does not perform services for any such person in connection with these chapter 11 cases, or have any relationship with any such person, their attorneys, or accountants that would be adverse to the Debtors or their estates with respect to the matter on which the Company is proposed to be employed.

4. As part of its customary practice, the Company is retained in cases, proceedings, and transactions involving many different parties, some of whom may represent or be employed by the Debtors, claimants, and parties in interest in these chapter 11 cases.

5. Neither I nor any principal, partner, director, officer, etc., of or professional employed by, the Company has agreed to share or will share any portion of the compensation to be received from the Debtors with any other person other than the principal and regular employees of the Company.

6. Neither I nor any principal, partner, director, officer, of or professional employed by, the Company, insofar as I have been able to ascertain, holds, or represents any interest adverse to the Debtors or their estates with respect to the matter(s) upon which this Company is to be employed.

7. The Debtors owe the Company $0 for prepetition services, the payment of which is subject to limitations contained in the United States Bankruptcy Code, 11 U.S.C. §§ 101-1532.

8. I understand that the *Order Authorizing the Retention and Compensation of Certain Professionals Utilized in the Ordinary Course of Business* does not authorize any of the Debtors to pay the Company for prepetition services.

9. The Company currently holds a retainer for services of $480,408.61 (the "Retainer").  The Company will draw from the Retainer as compensation for the services set forth in this Declaration until the Retainer is exhausted.  I do not believe, however, that the Company's services will exceed the Retainer, and the Company will return any remaining portion of the Retainer, at the Debtors' request, upon completion of the Company's services.

10. I further understand that this Declaration will not suffice as the Company's proof of claim.

11. As of April 29, 2014, which was the date on which the Debtors commenced these chapter 11 cases, the Company was party to an agreement for indemnification with certain of the Debtors.  A copy of such agreement is attached in the Engagement Letter.

12. Such agreement for indemnification is subject to the following modifications, applicable during the pendency of the Debtors' chapter 11 cases (Hereinafter the "OCP Agreement"):

> (a) the Company shall not be entitled to indemnification, contribution, or reimbursement for services provided under the OCP Agreement other than those described in such OCP Agreement, unless such services and indemnification therefor are approved by the Bankruptcy Court.
>
> (b) Notwithstanding anything to the contrary in the Engagement Letter, the Debtors shall have no obligation to indemnify the Company, or provide contribution or reimbursement to the Company, for any claim or expense related to such OCP Agreement that is either:  (i) judicially determined (the

3

determination having become final) to have arisen from the Company's gross negligence or willful misconduct; (ii) for a contractual dispute in which the Debtors allege the breach of the Company's contractual obligations under the OCP Agreement unless the Court determines that indemnification, contribution or reimbursement would be permissible pursuant to *In re United Artists Theatre Co.*, 315 F.3d 217 (3d Cir. 2003); or (iii) settled prior to a judicial determination as to the exclusions set forth in clauses (i) and (ii) above, but determined by the Court, after notice and a hearing to be a claim or expense for which the Company should not receive indemnity, contribution or reimbursement under the terms of the OCP Agreement.

(c) If, before the earlier of (i) the entry of an order confirming a chapter 11 plan in these cases (that order having become a final order no longer subject to appeal), and (ii) the entry of an order closing these chapter 11 cases, the Company believes that it is entitled to the payment of any amounts by the Debtors on account of the Debtors' indemnification, contribution and/or reimbursement obligations under the OCP Agreement, including without limitation the advancement of defense costs, the Company must file an application therefor in this Court, and the Debtors may not pay any such amounts to the Company before the entry of an order by this Court approving the payment. This subparagraph (c) is intended only to specify the period of time under which the Court shall have jurisdiction over any request for fees and expenses by the Company for indemnification, contribution or reimbursement, and not a provision limiting the duration of the Debtors' obligation to indemnify the Company. All parties in interest in these chapter 11 cases shall retain the right to object to any demand by the Company for indemnification, contribution or reimbursement.

13. The Company is conducting further inquiries regarding its retention by any creditors of the Debtors, and upon conclusion of that inquiry, or at any time during the period of its employment, if the Company should discover any facts bearing on the matters described herein, the Company will supplement the information contained in this Declaration.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Date:  February 23, 2015

**Scott W. Winn**
**Senior Managing Director**
**Zolfo Cooper, LLP**

**Exhibit A**

**Engagement Letter**

 ZOLFO COOPER

July 12, 2013

James F. Conlan, Esq.
Sidley Austin LLP
One South Dearborn
Chicago, IL 60603

Re:    **Energy Future Holdings Corp.**

Dear Mr. Conlan:

This letter (this "Agreement") confirms the engagement of Zolfo Cooper, LLC ("we", "ZC," or "Firm")[1] by Sidley Austin LLP in your capacity as counsel ("Sidley" or "Counsel") to Energy Future Holdings Corp.; Energy Future Competitive Holdings Company LLC; Energy Future Intermediate Holding Company LLC; and Texas Competitive Electric Holdings LLC and its subsidiaries (collectively, the "Company" or "you") to provide consulting services.

We understand that the Company underwent a leveraged buyout ("LBO") by certain private equity firms in October 2007. You have requested us to provide the following services (collectively, the "Services"):

1. Advise and assist Counsel in connection with their providing legal advice and counsel to the Company in evaluating whether the Company has or may have claims or causes of action against Kohlberg Kravis Roberts & Co LP, TPG Global, LLC and GS Capital Partners, together with their affiliated funds, and certain entities advised by or affiliated with them, (collectively, the "Sponsors") arising out of (i) that certain Merger Agreement dated February 25, 2007 pursuant to which the Sponsors became the direct or indirect shareholders of the Company (the "Merger"), (ii) all transactions relating to the Merger, including the acquisition financing arranged for the Merger, (iii) advisory fees, management fees, and financing fees paid by the Company to the Sponsors from the date of the Merger through the present, and (iv) such events or transactions as may hereafter be identified by Counsel and the Company.

2. Prepare a report or reports on the foregoing, to the extent requested by Counsel and the Company.

3. Such other services as Counsel and Company request and we agree to perform.

In addition to the specific services listed above that we will perform, we understand that we will participate, at your request and to the extent appropriate, in meetings and discussions with the Company, the bank group, other creditor constituencies, and with their respective professionals.

---

[1] The "Zolfo Cooper" trademark name is owned by ZC Holdings, LLC, ZC's parent company, and it is used in the United States by ZC and its subsidiaries. The Zolfo Cooper trademark is used in Europe and in the British Virgin Islands ("BVI") under license by ZC in Europe and BVI. ZC Holdings, LLC and its subsidiaries are not related to and do not share ownership interests with Zolfo Cooper in Europe and BVI.

101 Eisenhower Parkway, 3rd floor, Roseland, NJ 07068  |  p: 973 618 5000  |  f: 973 618 9430  |  www.zolfocooper.com



Our work will be performed on a "level-of-effort" basis; that is, the depth of our analyses and extent of our authentication of the information on which our advice to you will be predicated may be limited in some respects due to the extent and sufficiency of available information, time constraints dictated by the circumstances of our engagement, and other factors. Moreover, we do not contemplate examining any such information in accordance with generally accepted auditing or attestation standards. Rather, it is understood that, in general, we are to rely on information disclosed or supplied to us by employees and representatives of the Company without audit or other detailed verification of their accuracy and validity.

We currently anticipate that our work will commence upon execution of this Agreement. This Agreement may be terminated at any time, effective immediately, upon written notice to the non-terminating parties. Upon termination of this Agreement, the Company shall have no further obligations hereunder, provided, however, that the Company acknowledges that the termination of this Agreement shall not relieve the Company of its obligations (i) to pay all fees and expenses incurred through the effective date of such termination (ii) which expressly survive termination of this Agreement. At the conclusion of ZC's representation, and after all non-disputed outstanding invoices have been paid, all remaining non-disputed retainer amounts will be immediately refunded to the Company. After all disputed outstanding invoices have been consensually resolved or paid, as applicable, all remaining retainer amounts will be immediately refunded to the Company.

It is our intention to work closely with you throughout our engagement. Regular discussions with you of our engagement should facilitate our progress and provide you with relevant information and an ongoing opportunity to confirm or request that we modify the scope of our engagement to best serve your objectives of advising the Company on legal issues impacting the Company.

In order for us to perform our services, it will be necessary for our personnel to have access to the Company's facilities and to certain books, records and reports of the Company. In addition, we will need to have discussions with Company management and certain other personnel. We will perform our services in a manner that will permit the business operations of the Company to proceed in an orderly fashion, subject to the requirements of this engagement. We understand that the Company has agreed to cooperate with the reasonable requests of our personnel and to make reasonably available to us its personnel and its books, records and other data sources relevant to our needs.

We will submit periodic oral and/or written reports as requested summarizing our evaluations and analyses based on our work pursuant to this engagement letter. Our reports will encompass only matters that come to our attention in the course of our work that we perceive to be significant in relation to the objectives of our engagement. However, because of the time and scope limitations implicit in our engagement and the related limitations on the depth of our analyses and the extent of our verification of information, we may not discover all such matters or perceive their significance. Accordingly, we will be unable to and will not provide assurances in our reports concerning the integrity of the information used in our analyses and on which our findings and advice to you may be based. In addition, we will state that we have no obligation to and will not update our reports or extend our activities beyond the scope set forth herein (recognizing that we may, but shall not be obligated to submit oral and/or written reports summarizing material updates to previously submitted oral and written reports, to the extent such material updates are relevant to or otherwise implicate the Services to be provided) unless you request and we agree to do so.


ZOLFO COOPER

We understand that the Counsel and the Company have agreed to treat any information received from ZC, whether orally or in writing, with utmost confidentiality, and except as provided in this letter, will not publish, distribute or disclose in any manner any information developed by or received from us without our prior written approval; provided, however, that the Company may share information received from ZC, whether orally in writing, with their advisors that have executed confidentiality agreements, their attorneys, and their accountants, without obtaining the prior written approval of ZC. Such approval shall not be unreasonably withheld. Our approval is not needed if either the information sought is required to be disclosed by process of law or such information is otherwise publicly available.

We agree that this Agreement is subject in all respects to the confidentiality agreement by and between ZC and the Company, dated as of July 12, 2013 (the "Confidentiality Agreement"). We intend that ZC's work, opinions, conclusions, and communications will be covered by the attorney-client privilege and attorney work product rule, to the extent provided by law, and we agree to preserve those privileges and take other reasonably requested actions by the Company to preserve those privileges. Counsel and the Company understand and agree that ZC may disclose the fact of this engagement as a reportable relationship in any of ZC's Bankruptcy Court retentions.

Our fees for the services set forth above will be based on the hours charged at our standard hourly rates that are in effect when the services are rendered; our rates generally are revised semi-annually. Our current hourly rates in effect as of July 1, 2013, are as follows:

| | |
|---|---|
| Managing Directors | $800 - $895 |
| Professional Staff | $265 - $780 |
| Support Personnel | $ 55 - $310 |

You hereby understand and agree that from time to time we utilize subcontractors to supplement our professional staff. (Any information provided to them will be provided in accordance with the Confidentiality Agreement.) In that event, their rates are consistent with the rates charged by ZC personnel.

We will also be reimbursed for our reasonable and documented out-of-pocket expenses including, but not limited to, costs of travel, reproduction and any applicable state sales or excise taxes and other direct expenses.

It is our policy in these cases to receive a security retainer prior to the commencement of our activities to be held by us throughout our engagement. The retainer secures final payment of our invoices for services rendered. Given the magnitude and scope of the services you have requested, we require the Company to provide a retainer of $500,000. At the conclusion of ZC's representation, and after all non-disputed outstanding invoices have been paid, all remaining non-disputed retainer amounts will be immediately refunded to the Company. After all disputed outstanding invoices have been consensually resolved or paid, as applicable, all remaining retainer amounts will be immediately refunded to the Company.



We agree that we will look exclusively to the Company and not to Counsel for the payment of any and all of our fees and expenses incurred as a result of this engagement.

As we agreed, we will require the Company to provide an initial advance of $500,000 on the day we begin work, and subsequent bi-weekly advances throughout the course of our engagement. On each subsequent advance payment date, we will inform the Company of the required amount to advance, which amount will be our estimate of the amount of unpaid fees and expenses incurred and expected to be outstanding on the next advance payment date. We will submit to the Company with a copy to Counsel, monthly invoices for all services rendered and expenses incurred, our invoices, net of the advance payments received during the invoice period, are payable upon receipt.

You acknowledge and agree that the hours worked, the results achieved and the ultimate benefit to the Company of the work performed in connection with this engagement may be variable and that the Company and ZC have taken this into account in setting the fees hereunder. No fee payable to any other person or entity by the Company or any other party shall affect any fee payable to ZC hereunder.

Company agrees that if any of the employees of ZC are required to testify at any administrative or judicial proceeding relating to this matter, prepare for and appear at a deposition or produce documents, our Firm will be compensated by the Company for our associated time charges at our regular hourly rates, in effect at the time, and reimbursed for reasonable and documented out-of-pocket expenses, including reasonably incurred counsel fees.

We confirm that no employee of ZC has any financial interest or business connection with the Company. However, in the case of public companies, ZC employees may own publicly traded shares and bonds. ZC understands that it is solely responsible for ensuring its employees and Representatives (as defined in the Confidentiality Agreement) adhere to the relevant securities laws with respect to purchasing or selling the Company's publicly traded securities while in possession of material, non-public determination. None of the Company Parties undertake to determine or make any representation as to whether any information provided by the Company Parties constitutes material non-public information under United States securities laws. Additionally, we have run an initial conflict check through ZC's relationship database, which is an Access computer database containing names of individuals and entities that are present or recent former clients of ZC. The Company understands and agrees that its name will be added to ZC's database.

The Company agrees that it shall not hire (nor solicit for employment) any ZC employee. The Company hereby agrees to promptly notify ZC if an offer of employment is extended to an employee of ZC. Notwithstanding anything to the contrary herein, and except as set forth in the immediately preceding paragraph, the Company shall not be precluded from hiring any person (i) who responds to any general solicitation or advertisement (including, without limitation, responding to contacts from "head hunters" or "recruiters"), (ii) who contacts the Company on his/her own initiative without any direct or indirect solicitation or encouragement from the Company, other than any general solicitation or advertisement, or (iii) whose employment with ZC is terminated.



The Company agrees to indemnify and hold harmless ZC against any and all losses, claims, damages, liabilities, penalties, judgments, awards, costs, fees, expenses and disbursements including, without limitation, the reasonable and documented costs, fees, expenses and disbursements (collectively, "Losses"), as and when incurred, of investigating, preparing or defending any action, suit, proceeding or investigation (including reasonably incurred counsel fees for one counsel, chosen jointly by the Company and ZC) (whether or not in connection with proceedings or litigation in which ZC is a party), directly or indirectly, caused by, relating to, based upon, arising out of or in connection with the engagement of ZC by Counsel and the Company or any services rendered pursuant to such engagement (but excluding any action, claim, suit, investigation, or proceeding brought with respect to enforcement of this Agreement) (an "Action"), unless there is a final order of a Court of competent jurisdiction finding any Indemnified Persons (as defined herein) directly liable for fraud, bad faith, gross negligence or willful misconduct with respect to such Losses. These indemnification provisions extend to the employees, subcontractors, representatives, agents and counsel of ZC (together with ZC, the "Indemnified Persons"). In the event there is a final order of a Court of competent jurisdiction, finding an Indemnified Person liable for fraud, bad faith, gross negligence, or willful misconduct for such Losses, amounts reimbursed pursuant to the indemnification provisions of this Agreement with respect to the Action giving rise to such Losses shall be promptly returned to the Company.

Notwithstanding the above, the Company agrees that ZC and its personnel will not be liable to the Company for any claims, liabilities and losses relating to this engagement in excess of the fees paid by them to ZC pursuant to this engagement, unless such claims, liabilities and losses are finally, judicially determined (by order of a Court of competent jurisdiction), to have resulted directly from the fraud, bad faith, gross negligence, or willful misconduct of an Indemnified Person. ZC and its personnel shall not be liable for consequential, special, indirect, incidental, punitive or exemplary loss, damages or expenses relating to this Agreement, unless there is a final order of a Court of competent jurisdiction, finding that such consequential, special, indirect, incidental, punitive, or exemplary loss, damages, or expenses resulted from the fraud, bad faith, gross negligence, or willful misconduct of an Indemnified Person.

These limitations on liability and indemnification provisions extend to the Indemnified Persons.

The limitation on liability, indemnification, confidentiality, compensation, testifying, and jurisdiction provisions contained in this Agreement shall survive the completion or termination of this engagement; provided, however, that any indemnity provided by the Company pursuant to this Agreement, shall not be with respect to indemnified losses based on an Indemnified Person's actions or omissions that were first initiated after the date on which ZC's engagement is terminated.



Each of the Company, ZC, and Counsel agree to reasonably cooperate and confer with the other parties, and not settle, compromise, consent to the entry of any judgment in or otherwise seek to terminate (a "Settlement") any Action in respect of which indemnification is or may be sought hereunder without the prior written consent of the other parties. No Indemnified Person seeking indemnification, reimbursement or contribution under this Agreement will, without the Company's prior written consent, agree to the Settlement of any Action. The Company shall not be liable for any Settlement of any Action (or for any related Losses), if such Settlement is effected without the Company's prior written consent and does not otherwise accord with the terms set forth above.

The Company and Counsel each agree that neither it nor any of its assignees or successors shall (a) seek a jury trial in any lawsuit, proceeding, counterclaim or any other action based upon, or arising out of or in connection with the engagement of ZC by Counsel and the Company or any services rendered pursuant to such engagement, or (b) seek to consolidate any such action with any other action in which a jury trial cannot be or has not been waived. The provisions of this paragraph have been fully discussed by the Company and ZC and these provisions shall be subject to no exceptions. Neither party has agreed with or represented to the other that the provisions of this section will not be fully enforced in all instances.

The Company, ZC, and Counsel each hereby irrevocably and unconditionally (a) submits for itself and its property in any legal action or proceeding relating to the engagement of ZC by Counsel and the Company or any services rendered pursuant to such engagement, to the non-exclusive general jurisdiction of the Commercial Division of the Supreme Court of the State of New York, located in the City and County of New York, Manhattan Division, as well as the United States District Court for the Southern District of New York, and appellate courts from any thereof; (b) consents that any such action or proceeding may be brought in such courts and waives any objection that it may now or hereafter have to the venue of any such action or proceeding in any such court or that such action or proceeding was brought in an inconvenient court and agrees not to plead or claim the same; (c) agrees that service of process in any such action or proceeding may be effected on the Company by mailing a copy thereof by registered or certified mail (or any substantially similar form of mail), postage prepaid, to the addresses set forth above or at such other address of which ZC shall have been notified pursuant thereto, and, in the case of the Company, addressed to Attention: Andrew Wright; (d) agrees that nothing herein shall affect the right to effect service of process in any other manner permitted by law; and (e) waives, to the maximum extent not prohibited by law, any right it may have to claim or recover in any legal action or proceeding referred to in this subsection any special, exemplary or punitive or consequential damages.

Notwithstanding anything to the contrary contained herein, upon completion of this engagement and with the written consent of the Company, ZC may disclose its retention by Counsel and the Company or the successful completion of its services hereunder in its marketing materials.

This engagement letter shall be construed and interpreted in accordance with the laws of the State of New York, without regard to conflict of law principles.

If any provision of this engagement letter is invalid or unenforceable, the remainder of this engagement letter shall not be affected.



This engagement letter may be executed in several counterparts, each of which shall be deemed an original, and all of which shall together constitute one and the same instrument.

We look forward to working with you on this important matter. Please return a copy of this engagement letter, signed in the space provided to signify your agreement with the terms and provisions herein. If you have any questions, please call Scott Winn at (212) 561-4030.

Very truly yours,

Zolfo Cooper, LLC

Agreed by:

SIDLEY AUSTIN LLP

James F. Conlan, Esq.

ENERGY FUTURE HOLDINGS CORP.;
ENERGY FUTURE COMPETITIVE HOLDINGS COMPANY LLC;
TEXAS COMPETITIVE ELECTRIC HOLDINGS, LLC; and
ENERGY FUTURE INTERMEDIATE HOLDING COMPANY LLC

Andrew M. Wright
Vice President and Deputy General Counsel