# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

```
------------------------------------------------------------ x
In re:                                                       :   Chapter 11
                                                             :
ENERGY FUTURE HOLDINGS CORP., et al.,                        :   Case No. 14-10979 (CSS)
                                                             :
                           Debtors.                          :   (Jointly Administered)
                                                             :
------------------------------------------------------------ x   Related to Docket No. 3527
```

**SECOND LIEN INDENTURE TRUSTEE'S (A) LIMITED OBJECTION TO DEBTORS' MOTION FOR AUTHORITY TO PARTIALLY PREPAY THE SECOND LIEN NOTES AND (B) CROSS-MOTION TO MODIFY THE PROPOSED ORDER TO PROVIDE (1) THAT THE SECOND LIEN INDENTURE TRUSTEE IS NOT REQUIRED BY THE COLLATERAL TRUST AGREEMENT TO HOLD THE PARTIAL PREPAYMENT IN TRUST FOR FIRST LIEN NOTEHOLDERS OR (2) ALTERNATIVELY, THAT INTEREST CONTINUES TO ACCRUE UNDER THE SECOND LIEN INDENTURE**

# TABLE OF CONTENTS

**Page**

**I.    Preliminary Statement** ................................................................................................ 2

**II.   Background** ................................................................................................................ 4

    A.    The First and Second Lien DIPs, and the Intercreditor Litigation ......................... 4

    B.    The Prepayment Motion ........................................................................................ 6

**III.  Principal Objection and Cross-Motion** ..................................................................... 7

    A.    Before Directing the Second Lien Trustee to Distribute the Partial Prepayment Funds to Noteholders, the Court Must Determine Whether the Collateral Trust Agreement Permits Such Distributions ....................................... 7

    B.    If the Collateral Trust Agreement Requires the Second Lien Trustee to Hold the Funds in Trust for First Lien Noteholders, Interest Will Continue to Accrue on the Second Lien Notes ....................................................................... 9

    C.    Relief Requested by the Cross-Motion ............................................................... 10

**IV.   Other Objections** ...................................................................................................... 10

    A.    The Proposed Application of the Partial Prepayment Violates Section 6.13 of the Indenture ................................................................................................... 10

    B.    The Proposed Application of the Partial Prepayment Violates Sections 2.12 and 4.01 of the Indenture and Section 506(b) of the Bankruptcy Code ....... 12

    C.    The Order Should Expressly Reserve the Second Lien Trustee's Rights to Argue That the Partial Prepayment Is an Optional Redemption That Entitles Second Lien Noteholders to a Makewhole Payment ............................... 14

Computershare Trust Company, N.A. and Computershare Trust Company of Canada, in its capacity as indenture trustee (the "**Second Lien Trustee**" or "**Trustee**") for $2,156,392,000 aggregate principal amount of second lien notes (the "**Second Lien Notes**" and the holders thereof, the "**Second Lien Noteholders**") issued by Energy Future Intermediate Holding Company LLC and EFIH Finance Inc. (collectively, "**EFIH**") pursuant to the Indenture dated as of April 25, 2011, and the First Supplemental Indenture dated as of February 6, 2012 (together with all supplements, amendments, and exhibits thereto, the "**Second Lien Indenture**" or "**Indenture**"), by and through its undersigned counsel, hereby submits this (A) limited objection (the "**Limited Objection**") to the motion of EFIH and its affiliated debtors (the "**Debtors**") requesting, among other things, that the Court authorize partial prepayment of $750 million (the "**Partial Prepayment**") in outstanding principal and interest on Second Lien Notes (the "**Prepayment Motion**") [Dkt. No. 3527], and (B) cross-motion ("**Cross-Motion**") to modify the Proposed Order to provide (i) that the Second Lien Trustee is not required by the Collateral Trust Agreement[1] to hold the Partial Prepayment in trust for First Lien Noteholders or (ii) alternatively, that interest continues to accrue under the Second Lien Indenture.

In support of this Limited Objection and Cross-Motion, the Second Lien Trustee respectfully submits the following:

---

[1] Capitalized terms used but not defined herein have the meanings ascribed to them in the Prepayment Motion.

## I. Preliminary Statement

The Second Lien Trustee does not object to the Debtors' decision to prepay a portion of the Second Lien Notes at this time.[2] However, as the Debtors acknowledge, the funds they propose to use to make this payment – proceeds of the First Lien DIP – are the subject of a pending adversary proceeding (the "**Intercreditor Litigation**"). In that suit, the indenture trustee (the "**First Lien Trustee**") for the EFIH first lien notes (the "**First Lien Notes**") claims that these funds are proceeds of the First Lien Noteholders' collateral, which the Second Lien Trustee is required to hold in trust for those noteholders pursuant to the Collateral Trust Agreement that governs the First Lien and Second Lien Noteholders' respective rights.

It is imperative that the Court resolve this intercreditor dispute before it authorizes the Partial Prepayment. We respectfully submit that this can be accomplished as part of the present contested matter, without undue delay. The Debtors have properly raised the intercreditor dispute in the Prepayment Motion, arguing (at ¶¶ 25-28) that the Collateral Trust Agreement does not bar the proposed distribution. As the Debtors observe, this is a purely legal issue, which the Court can determine based on the language of the Collateral Trust Agreement and other governing agreements. Upon a ruling that the Collateral Trust Agreement does not bar the Second Lien Trustee from distributing the Partial Prepayment to Second Lien Noteholders, the Second Lien Trustee does not object to the provision of the proposed order (the "**Proposed Order**") directing it to distribute the funds to Second Lien Noteholders immediately upon receipt.

---

[2] As noted in Point IV.C below, the Second Lien Trustee believes that the Partial Prepayment constitutes an optional redemption and entitles the Second Lien Noteholders to a makewhole premium under section 3.07 of the Indenture. For the avoidance of doubt, nothing in this Limited Objection and Cross-Motion shall be interpreted as an acknowledgement by the Second Lien Trustee that the Partial Prepayment is not an optional redemption.

If, on the other hand, the Court were to enter the Proposed Order *before* determining the merits of the intercreditor dispute, this could have significant adverse consequences for both the Second Lien Trustee and the Debtors:

- As just noted, the Proposed Order directs the Second Lien Trustee to distribute the Partial Prepayment to Second Lien Noteholders immediately upon receipt. If the Court entered the Proposed Order but subsequently determined that these funds are proceeds of the First Lien Noteholders' collateral, the Trustee's distribution of the funds would arguably contravene its duty under the Collateral Trust Agreement to hold such funds in trust for the First Lien Noteholders. This could expose the Second Lien Trustee to suit by the First Lien Trustee and First Lien Noteholders for losses allegedly caused by the distribution.

- The Debtors would potentially be liable for damages, both because they too are parties to the Collateral Trust Agreement and because they have provided the Second Lien Trustee with a secured indemnity for all losses it incurs in the performance of its duties under the Indenture.

- In addition, an eventual determination that the Partial Prepayment violated the Collateral Trust Agreement could deprive the Debtors of the very benefit they seek to obtain by the Prepayment Motion, namely, stopping the accrual of interest. Any funds that are proceeds of the First Lien Noteholders' collateral are required to be held *in trust for the First Lien Noteholders*. Funds held by the Second Lien Trustee in that capacity are not held for the benefit of, or as agent for, the Second Lien Noteholders and consequently would not stop the accrual of interest on the Second Lien Notes.

The Court can avoid adverse consequences of these sorts by ruling on the merits of the intercreditor dispute at the same time that it rules on the other issues raised by the Prepayment Motion. The Second Lien Trustee respectfully requests that the Court do so. Specifically, the Second Lien Trustee cross-moves for the addition of provisions to the Proposed Order (i) providing that the Second Lien Trustee's distribution of funds to the Second Lien Noteholders pursuant to that Order does not violate the Collateral Trust Agreement, and (ii) dismissing the Intercreditor Litigation with prejudice. Alternatively, if the Court declines to address the merits of the Intercreditor Litigation at this time, the Second Lien Trustee cross-moves to modify the Proposed Order (i) to strike the provision directing the Second Lien Trustee

to distribute the Partial Prepayment to Second Lien Noteholders, and (ii) to provide that interest continues to accrue on the Second Lien Notes pending resolution of the Intercreditor Litigation.

The Second Lien Trustee also objects to several other provisions of the Proposed Order, which violate the Indenture and the Bankruptcy Code. First, the Proposed Order requires that the Partial Prepayment be used solely to pay principal and interest under the Second Lien Notes. This payment scheme is contrary to the payment waterfall established under the Indenture, which requires that the Second Lien Trustee's fees and expenses be satisfied before payment of either principal or interest. Second, the Proposed Order fails to provide for payment of (i) interest on overdue interest or (ii) the additional interest due on the 11.75% Notes under the registration rights agreement (which was being paid prepetition), both of which are required under the Indenture and permitted under these circumstances. Finally, the Order should expressly reserve the Second Lien Indenture Trustee's right to argue that the Partial Prepayment constitutes an optional redemption and that entitles the Second Lien Noteholders to makewhole payments on amounts paid on the Second Lien Notes prior to their stated maturity dates.[3]

## II.   Background

### A. The First and Second Lien DIPs, and the Intercreditor Litigation

1. On April 29, 2014, the Debtors commenced these chapter 11 cases, seeking to consummate a global restructuring that would refinance the EFIH First and Second Lien Notes and offer settlements of their respective makewhole claims (the "**RSA Restructuring**"). To implement the RSA Restructuring, the Debtors filed a series of motions, including motions to approve debtor-in-possession financing to facilitate the first lien settlement (the "**First Lien DIP**") and the second lien settlement (the "**Second Lien DIP**"). The First Lien

---

[3] The Second Lien Trustee is currently working with the Debtors on a potential resolution of the issues raised in this Limited Objection and Cross-Motion.

4

DIP was approved in June 2014; its proceeds were used to pay off principal and accrued interest on the First Lien Notes, as well as the makewhole settlement for those First Lien Noteholders who opted in to the first lien settlement.

2. The Debtors originally proposed to use the proceeds of the Second Lien DIP and a portion of the First Lien DIP to pay off the principal and accrued interest on the Second Lien Notes and fund a makewhole settlement for those Second Lien Noteholders who opted in to the second lien settlement. The First Lien Trustee objected to the Debtors' use of the proceeds of the First and Second Lien DIPs to redeem the Second Lien Notes on the basis that these were proceeds of the First Lien Notes' collateral and were hence required to be held in trust for the benefit of the holders of the First Lien Notes until their makewhole litigation was adjudicated [Dkt. No. 1068].

3. On June 20, 2014, the First Lien Trustee initiated the Intercreditor Litigation against the Second Lien Trustee seeking (a) a declaratory judgment that the proceeds of the First and Second Lien DIPs constituted proceeds of collateral under the Collateral Trust Agreement and (b) an injunction barring the Second Lien Trustee from using those proceeds to satisfy the Second Lien Notes and instead requiring the Second Lien Trustee to establish a reserve to hold such proceeds in trust for the benefit of the First Lien Notes. *See CSC Trust Co. of Del. v. Computershare Trust Co.*, No. 14-50410 (Bankr. D. Del. June 20, 2014), Dkt. No. 4.[4]

4. In July 2014, in light of the Second Lien Noteholders' joint restructuring proposal with NextEra Energy, the Debtors abandoned the RSA Restructuring and instead began to pursue other alternatives for marketing the Oncor equity. At the same time, the Debtors withdrew their request for approval of the Second Lien DIP Motion.

---

[4] The First Lien Trustee amended this complaint in minor respects on June 29, 2014.

5. Even though the Debtors were no longer seeking to repay the Second Lien Notes, the First Lien Trustee did not terminate the Intercreditor Litigation. Instead, the First Lien Trustee agreed to a series of stipulations that put the litigation on hold but required the Second Lien Trustee to answer the complaint in the Intercreditor Litigation should the Debtors once again seek to pay down the Second Lien Notes.

### B. The Prepayment Motion

6. On February 12, 2015, the Debtors filed the Prepayment Motion, pursuant to which they requested Court approval to prepay $750 million of interest and principal outstanding on account of the Second Lien Notes, i.e., the Partial Prepayment. The Partial Prepayment is to be made using proceeds of the First Lien DIP, and the First Lien DIP lenders will receive a cash consent fee of up to $13.5 million for permitting the Partial Prepayment.

7. The Prepayment Motion, although factually different from the Second Lien DIP motion, implicates the same intercreditor issue: whether proceeds of the First Lien DIP financing constitute proceeds of "Collateral" or of a "Sale of Collateral" under the Collateral Trust Agreement. The Second Lien Trustee agrees with the Debtors that these issues are purely legal and can be resolved as part of the Prepayment Motion. The Second Lien Trustee adopts and incorporates the arguments set forth in the Prepayment Motion as to why Partial Prepayment funds are neither proceeds of Collateral nor proceeds of the Sale of Collateral, and the Second Lien Trustee reserves the right to reply to any arguments advanced by the First Lien Trustee on these points.

8. The Second Lien Trustee understands that the First Lien Trustee may prefer to have these matters resolved in the Intercreditor Litigation. We submit that this is unnecessary and may unduly delay these proceedings. Nevertheless, if the Court prefers to resolve the matter in the Intercreditor Litigation, the Second Lien Trustee is prepared to act

expeditiously. To that end, the Second Lien Trustee has proposed a schedule to the First Lien Trustee under which the intercreditor issues presented by the Prepayment Motion could be fully briefed, through cross-motions for judgment on the pleadings or for summary judgment in the Intercreditor Litigation, within the next six weeks.

### III.     Principal Objection and Cross-Motion

**A. Before Directing the Second Lien Trustee to Distribute the Partial Prepayment Funds to Noteholders, the Court Must Determine Whether the Collateral Trust Agreement Permits Such Distributions**

9.      The Debtors ask the Court to approve the Partial Prepayment and to direct the Second Lien Trustee to distribute those funds to Second Lien Noteholders immediately upon receipt, so as to stop the further accrual of interest. The Second Lien Trustee does not take issue with the Debtors' decision to prepay a portion of the Second Lien Notes. However, it is critical that the Court first address the merits of the Intercreditor Litigation and determine that the Collateral Trust Agreement does not require the Partial Prepayment funds to be held in trust.

10.     Granting the relief requested in the Prepayment Motion without first determining whether the funds are required to be held in trust would expose the Second Lien Trustee and the Debtors themselves to potentially substantial liability. If the Second Lien Trustee complies with the Court's direction and distributes the Partial Prepayment funds to the Second Lien Noteholders, and the Court ultimately determines that such funds *are* First Lien Proceeds, the Second Lien Trustee may be subject to suit by the First Lien Trustee and First Lien Noteholders for damages resulting from its failure to hold the First Lien Proceeds in trust as required by the Collateral Trust Agreement. Alternatively, if the Court declines to rule on the merits of the Intercreditor Litigation, the Second Lien Trustee determines that it therefore must hold the Partial Prepayment funds in trust for the First Lien Noteholders, and the Court

ultimately determines that such funds are **not** First Lien Proceeds, the Second Lien Trustee may face claims for failing to remit such funds to the Second Lien Noteholders.

11.     This is not an issue that affects only the Second Lien Trustee. The Debtors themselves are parties to the Collateral Trust Agreement and are seeking to make payments that the First Lien Trustee alleges would violate the Collateral Trust Agreement. Section 2.4(c) of that agreement states that:

> at any time prior to the Discharge of Parity Lien Obligations and after (1) the commencement of any Insolvency or Liquidation Proceeding in respect of EFIH. . . *no payment of money* (or the equivalent of money) *shall be made from the proceeds of Collateral by EFIH to. . . any Junior Lien Representative* or any holder of Junior Lien Obligations with respect to Junior Lien obligations (including, without limitation, payments and prepayments made for application to Junior Lien Obligations). [Emphasis added.]

If the First Lien Trustee is correct that the Partial Prepayment violates the Collateral Trust Agreement, the Debtors themselves would be violating the Collateral Trust Agreement by making the Partial Prepayment. Additionally, under the Indenture and the Collateral Trust Agreement, the Debtors have provided a secured indemnity to the Second Lien Trustee for any liabilities it incurs in performing its duties thereunder. See Indenture § 7.07 ("The Issuer. . . shall indemnify the Trustee for, and hold the Trustee harmless against, any and all loss, damage, claims, liability or expense. . . incurred by it in connection with the acceptance or administration of this trust and the performance of its duties hereunder. . ."); Collateral Trust Agreement § 7.23.

12.     As noted above, the Second Lien Trustee is prepared to litigate the issues raised by the First Lien Trustee in the Intercreditor Litigation or in connection with this motion, whichever setting the Court deems appropriate and efficient. It is imperative, however, that these issues be resolved prior to a ruling on the Prepayment Motion.

**B. If the Collateral Trust Agreement Requires the Second Lien Trustee to Hold the Funds in Trust for First Lien Noteholders, Interest Will Continue to Accrue on the Second Lien Notes**

13.     A determination whether Prepayment Proceeds must be held in trust under the Collateral Trust Agreement is also necessary in order to ascertain whether the Partial Prepayment will yield interest savings to the estates, as the Debtors seek.  If the Partial Prepayment must be held in trust for the benefit of the First Lien Noteholders, interest will continue to accrue on the Second Lien Notes because, in this scenario, the Second Lien Trustee will not have received the funds in its capacity as agent for the Second Lien Noteholders or as Paying Agent under the Second Lien Indenture; rather will hold the funds in trust for the First Lien Noteholders pursuant to the Collateral Trust Agreement.  Collateral Trust Agreement § 2.4(d).

14.     Moreover, the Indenture provides only one mechanism for the Debtors to stop the accrual of interest on the Second Lien Notes by making a partial debt payment—namely, an optional redemption pursuant to Article 3 of the Indenture.[5]  The Debtors insist that the Partial Prepayment is not an optional redemption (not surprising, since an optional redemption would entitle the Second Lien Noteholders to a makewhole premium).  The only other sections of the Indenture that provide for interest ceasing to accrue involve the payment of *all* obligations under the Notes.[6]  These provisions are plainly inapplicable to the Partial Prepayment.

15.     For both of these reasons, the Partial Prepayment cannot be deemed to reduce principal or interest on the Second Lien Notes unless the Court determines that these funds are not proceeds of the First Lien Noteholders' collateral and therefore are not required to

---

[5] Indeed, there is nothing in the Indenture that ever allows for a partial prepayment other than an optional redemption.

[6] *See* Section 4.01 (payment of all obligations owed under notes); Article 8 (Defeasance and Discharge); and Article 12 (Satisfaction and Discharge).

be held in trust for the First Lien Notes. If interest continues to accrue on the Partial Prepayment funds, the Debtors would reap none of the interest savings that they sought to obtain. Instead, the estates would be required to pay up to $13.5 million in DIP consent fees with no corresponding benefit.

### C. Relief Requested by the Cross-Motion

16. For the reasons set forth above, the Second Lien Trustee cross-moves the Court to modify the Proposed Order to add the following provisions:

> i. Section 2.4(d) of the Collateral Trust Agreement does not require that the Second Lien Trustee retain the Partial Prepayment in trust for the First Lien Noteholders; and
>
> ii. The Intercreditor Litigation is dismissed with prejudice.

17. Alternatively, if the Court declines to decide the merits of the Intercreditor Litigation at this time but nevertheless approves the Prepayment Motion, the Second Lien Trustee cross-moves the Court to (i) delete the provision directing the Second Lien Trustee to distribute the proceeds to the Second Lien Noteholders; and (ii) add the following provision:

> The Second Lien Trustee's receipt of the Partial Prepayment in trust for the First Lien Noteholders does not constitute payment under the Indenture. Consequently, interest continues to accrue under the Indenture on all amounts held in trust pending resolution of the Intercreditor Litigation.

### IV. Other Objections

#### A. The Proposed Application of the Partial Prepayment Violates Section 6.13 of the Indenture

18. The Debtors' proposed payment waterfall with respect to the Partial Prepayment under the Proposed Order violates the payment waterfall provisions under the Indenture.

19. The Indenture contains a payment waterfall provision that unambiguously

sets out an order in which the Second Lien Trustee must apply funds it receives following an event of default. Specifically, section 6.13 of the Indenture requires that the first payment be made to the Second Lien Trustee and its agents for their fees and expenses. *See* Indenture § 6.13(i).[7] Such fees and expenses must be paid *before* any payment is made on account of the interest, principal or any premium, which are the second item in the waterfall. *See* Indenture § 6.13(ii).

20. The Debtors ignore the requirement of section 6.13 that Second Lien Trustee's fees and expenses be paid ahead of principal and interest. The Proposed Order seeks to direct the Second Lien Trustee to apply the Partial Prepayment funds only to principal and interest due on account of the Second Lien Notes. *See* Proposed Order ¶ 3. The Proposed Order does not provide for payment of Second Lien Trustee's fees at all, and the Prepayment Motion does not provide any justification for this omission.

21. To the extent the Debtors decline to pay the Second Lien Trustee's fees (which are secured obligations) on a current basis, the Proposed Order must be modified so that Partial Prepayment is applied in accordance with the waterfall set forth in section 6.13 of the Indenture (which allows the Second Lien Trustee to deduct both current fees and expenses and a reserve for future fees and expenses).[8] Because amounts withheld under Section 6.13(i) of the Indenture are not applied to principal, the Second Lien Noteholders will continue to accrue

---

[7] Section 6.13(i) of the Indenture provides that payment must first go "to the Trustee, its agents and attorneys for amounts due under Section 7.07 hereof [Compensation and Indemnity], including payment of all compensation, expenses, and liabilities incurred, and all advances made, by the Trustee and the costs and expenses of collection." Section 7.07 of the Indenture, in turn, provides that "[t]he Issuer and the Guarantors, jointly and severally, shall reimburse the Trustee promptly upon request for all reasonable disbursements, advances and expenses incurred or made by it in addition to the compensation for its services. Such expenses shall include the reasonable compensation, disbursements and expenses of the Trustee's agents and counsel."

[8] While the Second Lien Trustee does not object to applying the balance of the Partial Prepayment (after netting out the fees and expenses payable under section 6.13 of the Indenture) to principal under the Second Lien Notes, this does not amount to an acknowledgment that any principal has become due and payable as a result of any automatic acceleration nor is it a consent to the Debtors' partial prepayment.

11

interest on such amounts and the Second Lien Trustee requests that the Proposed Order include such a provision.

### B. The Proposed Application of the Partial Prepayment Violates Sections 2.12 and 4.01 of the Indenture and Section 506(b) of the Bankruptcy Code

22.     The Debtors' proposed application of the Partial Prepayment under the Proposed Order also violates the Indenture and the Bankruptcy Code because it fails to provide for payment of interest on overdue interest as well as all "Additional Interest"[9] on the Second Lien Notes.

23.     Payment of all such interest is required under the Indenture. *See* Indenture §§ 2.12 (requiring the Issuer to pay the defaulted interest, including any Additional Interest, as well as any interest thereon, to the extent lawful) and 4.01 (covenant requiring the issuer to pay all interest, including post-petition interest in a bankruptcy proceeding on overdue interest).[10]

24.     Payment of interest (including postpetition interest) is also required by the Bankruptcy Code under these circumstances.  Section 506(b) of the Bankruptcy Code provides that a secured creditor "shall be allowed" to receive interest on its secured claim to the extent that the value of its collateral exceeds the amount of such claim.  *See also In re Overseas Shipholding Group, Inc.*, Case No. 12-20000 (MFW) Hearing Tr. August 14, 2014 (Bankr. D. Del) (finding that the secured creditors were entitled to interest on interest as specified in the indenture).  Here, it is undisputed that the value of the collateral securing the Second Lien Notes (i.e., the Debtors' interest in Oncor equity) exceeds the amount of the obligations outstanding under the Second Lien Notes (including the Second Lien Trustee's fees, interest, makewhole

---

[9] "Additional Interest" is defined under the Indenture as certain penalty interest associated with any registration rights agreement.  With respect to the 11.75% EFIH Second Lien Notes, there is Additional Interest owed in the amount of 50 bps on account of the Debtors' failure to register these notes.

[10] Section 1 of the Note accompanying the Indenture also provides for this.

12

premium, and principal).[11]  *See* Ying Declaration ¶ 6.  The Second Lien Noteholders' entitlement to interest on interest and any Additional Interest in the postpetition period is even clearer where, as here, the Debtor is solvent.  *See In re Chicago, Milwaukee, St. Paul and Pacific Railroad Company*, 791 F.2d 524, 530 (7th Cir. 1986) (finding that when a debtor is solvent, "the judicial task is to give each creditor the measure of his contractual claim, no more and no less."); *In re Sublett*, 895 F.2d 1381, 1386 (11th Cir. 1990) (the crucial factual issues are whether the claim is oversecured and whether the estate is solvent).  Here, all indications have been that EFIH is solvent.

25. Notwithstanding the clear requirements of the Indenture and the Bankruptcy Code, the Debtors have failed to provide for payment of all interest due on account of the Second Lien Notes.  The Proposed Order states that the Partial Prepayment can be applied to "interest accrued on the EFIH Second Lien Notes" through the closing of the Partial Prepayment, including Additional Interest (but only through the petition date).  *See* Proposed Order ¶ 3.  The Proposed Order is not clear whether the phrase "interest accrued on the EFIH Second Lien Notes" includes interest on the due but unpaid interest.  Given that the Second Lien Notes are oversecured and the Debtors are solvent, there is no basis for excluding any interest on overdue interest due on the Second Lien Notes.

26. In regard to the Additional Interest, the Proposed Order is explicit in saying that no Partial Prepayment funds shall be applied to "penalty interest associated with any registration rights agreement . . . that accrued after the Petition Date."  Given that the Debtors acknowledge that such amounts are due prepetition and that the Indenture explicitly provides for payment of such amounts postpetition, any Partial Prepayment order should be modified to

---

[11] To the extent that the Second Lien Notes are determined to be undersecured, the Debtors have preserved (in the Proposed Order) their ability to recharacterize and reallocate any interest payments as principal.  *See* Proposed Order ¶ 3.

provide for payment of Additional Interest which accrued after the Petition Date.

27.  Accordingly, if the Court authorizes the Partial Prepayment, the Second Lien Trustee respectfully requests that these funds be applied to pay all interest (including all interest on defaulted interest and all postpetition Additional Interest) in accordance with sections 2.12 and 4.01 of the Indenture and section 506(b) of the Bankruptcy Code.

### C. The Order Should Expressly Reserve the Second Lien Trustee's Rights to Argue That the Partial Prepayment Is an Optional Redemption That Entitles Second Lien Noteholders to a Makewhole Payment

28.  The Second Lien Trustee submits that this Partial Prepayment triggers the Second Lien Noteholders' entitlement to makewhole premium under section 3.07 of the Indenture. The Second Lien Trustee recognizes that the Debtors take a different view of the Partial Prepayment and that the merits of the makewhole will be litigated at the appropriate time. The Second Lien Trustee reserves all rights to argue that this Partial Prepayment constitutes an optional redemption and entitles Second Lien Noteholders to a makewhole payment and requests that the Proposed Order specifically reserve the Second Lien Trustee's rights to do so.

29.  The history of this case and the Debtors' actions in seeking to pursue the Partial Prepayment underscore the optional nature of any payments on the Second Lien Notes prior to their stated maturity. The Debtors initially sought to optionally redeem the Second Lien Notes as part of the Second Lien DIP. Ultimately, that path was abandoned because the Second Lien Noteholders/NextEra joint proposal made clear that the RSA was not the best offer available and it was prudent that the Debtors pursue other possibilities, rather than optionally redeem the Second Lien Notes at that time. The Debtors now seek to go down the optional redemption path once again and redeem a portion of the Second Lien Notes for the expressly stated purpose of saving the interest cost while retaining the right to redeem the remaining Second Lien Notes at any time they choose in the future. The Debtors also have the option of

reinstating the Second Lien Notes under a chapter 11 plan at which point no redemption would occur with respect to the balance of the Second Lien Notes. While the specific course of action which the Debtors ultimately pursue remains subject to their business judgment, the advice and guidance of the various professionals and advisors, and the judgment of the Court, what is abundantly clear is that, whatever choices the Debtors make regarding when, and if, to redeem the Second Lien Notes (other than repayment upon maturity), these choices are being made at the Debtors' election and are entirely optional in nature.

WHEREFORE, for the reasons stated above, the Second Lien Trustee respectfully requests that the Court: (A) modify the Proposed Order as set forth above, and (B) grant such other relief as is just and proper.

*[Remainder of Page Intentionally Left Blank]*

| | |
|---|---|
| Dated:  February 26, 2015 | PACHULSKI STANG ZIEHL & JONES LLP |

*/s/ Laura Davis Jones*
Laura Davis Jones
(Bar No. 2436)
Robert J. Feinstein
(NY Bar No. RF-2836)
919 N. Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE  19899-8705 (Courier 19801)
Telephone:  (302) 652-4100
Facsimile:  (302) 652-4400
Email: ljones@ pszjlaw.com
         rfeinstein@ pszjlaw.com

*- and -*

KRAMER LEVIN NAFTALIS & FRANKEL LLP

Thomas Moers Mayer
Philip Bentley
Joshua K. Brody
Kramer Levin Naftalis & Frankel LLP
1177 Avenue of the Americas
New York, New York 10036
Telephone:  (212) 715-9100
Facsimile:   (212) 715-8000
Email: tmayer@kramerlevin.com
         pbentley@kramerlevin.com
         jbrody@kramerlevin.com

*- and -*

BRYAN CAVE LLP

Stephanie Wickouski
1290 Avenue of the Americas
New York, New York 10104-3300
Telephone: 212-541-1114
Facsimile: 212-904-0514
Email: stephanie.wickouski@bryancave.com

*Counsel to the Second Lien Trustee*

16