**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>ENERGY FUTURE HOLDINGS CORP., *et al.*,<br><br>Debtors. | Chapter 11<br><br>Case No. 14-10979 (CSS)<br><br>(Jointly Administered)<br><br>Docket Ref. Nos. 3593, 3603, 3605<br><br>**Hearing:  3/10/15 @ 9:30 a.m.**<br>**Objections Due:  3/3/15 @ 4:00 p.m.** |

**OMNIBUS OBJECTION OF WILMINGTON TRUST, N.A.,
AS SUCCESSOR TCEH FIRST LIEN ADMINISTRATIVE AGENT
AND SUCCESSOR TCEH FIRST LIEN COLLATERAL AGENT, TO
THE MOTIONS FOR DERIVATIVE STANDING**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................................... iii

PRELIMINARY STATEMENT .................................................................................... 2

BACKGROUND ......................................................................................................... 6

      A.     The 2007 Acquisition and the 2007 Credit Agreement ............................. 6

      B.     The Liability Management Program ........................................................ 7

OBJECTION ............................................................................................................... 9

I.      THE TCEH JUNIOR CREDITORS SHOULD NOT BE GRANTED
STANDING TO PURSUE CONSTRUCTIVE FRAUDULENT
TRANSFER CLAIMS CONCERNING THE 2007 ACQUISITION AND
THE 2011 AMEND AND EXTEND TRANSACTIONS. .................................. 9

II.     THE TCEH JUNIOR CREDITORS' ACTUAL FRAUDULENT
TRANSFER CLAIMS CONCERNING THE 2013 AMEND AND
EXTEND TRANSACTION ARE NOT COLORABLE. .................................. 10

      A.     The Actual Fraudulent Transfer Claims Do Not -- and Cannot --
Adequately Allege the Requisite Intent to Defraud Creditors. ................ 10

      B.     Even if Colorable, Standing to Prosecute the Actual Fraudulent
Transfer Claims Should Be Denied on a Cost/Benefit Analysis. ............ 18

III.    THE TCEH JUNIOR CREDITORS SHOULD NOT BE GRANTED
STANDING TO PURSUE CONSTRUCTIVE FRAUDULENT
TRANSFER CLAIMS WITH REGARD TO THE 2013 AMEND AND
EXTEND TRANSACTION. .......................................................................... 19

IV.    THE TCEH JUNIOR CREDITORS FAIL TO STATE A CLAIM FOR
EQUITABLE SUBORDINATION BECAUSE THERE ARE NO
ALLEGATIONS OF THE REQUISITE INEQUITABLE CONDUCT. ............ 23

V.     THE TCEH JUNIOR CREDITORS CANNOT RECOVER FEES,
INTEREST AND OTHER PAYMENTS FROM THE SUCCESSOR
FIRST LIEN AGENT BECAUSE IT IS NOT A TRANSFEREE UNDER
SECTION 550 OF THE BANKRUPTCY CODE. ........................................... 24

VI.    THE TCEH JUNIOR CREDITORS CANNOT TEMPORARILY
DISALLOW THE SUCCESSOR FIRST LIEN AGENT'S CLAIM. ................ 25

VII.   THE TCEH JUNIOR CREDITORS SHOULD NOT BE GRANTED
STANDING TO BRING CLAIMS FOR THE AVOIDANCE OF
ALLEGED UNPERFECTED LIENS BECAUSE THEY HAVE FAILED
TO IDENTIFY THE LIENS THEY SEEK TO AVOID. .................................. 27

**TABLE OF CONTENTS**
**(continued)**

Page

VIII.    THE TCEH JUNIOR CREDITORS SHOULD NOT BE GRANTED
STANDING TO PROSECUTE THEIR REMAINING CLAIMS. ..................... 29

    A.    The TCEH Junior Creditors' Declaratory Judgment Claims Are
Not Ripe for Resolution And Are Not Justiciable. .................................. 29

    B.    The TCEH Junior Creditors Should Not Be Granted Standing to
Bring Claims that Do Not Implicate the TCEH Debtors'
Stipulations in the Cash Collateral Order. ................................................ 31

RIGHTS RESERVATION ............................................................................................ 33

CONCLUSION ............................................................................................................. 34

# TABLE OF AUTHORITIES

**Page**

## CASES

Aetna Life Ins. Co. of Hartford, Conn. v. Haworth, 300 U.S. 227 (1937) .....................................30

Ashcroft v. Iqbal, 556 U.S. 662 (2009)..................................................................................14 n.8

Autobacs Strauss, Inc. v. Autobacs Seven Co. (In re Autobacs Strauss, Inc.),
    473 B.R. 525 (Bankr. D. Del. 2012) (Sontchi, J.)................................................................12

Bank of N.Y. v. Epic Resorts-Palm Springs Marquis Villas, LLC (In re Epic Capital
    Corp.), 307 B.R. 767 (D. Del. 2004)..................................................................................23

Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007) ............................................................14 n.8

Bond v. Nat'l Fin. Servs. (In re United States Mortg. Corp.),
    491 B.R. 642 (Bankr. D.N.J. 2013) .....................................................................................24

Bonded Fin. Servs. v. European Am. Bank, 838 F.2d 890 (7th Cir. 1988)..................................24

Burtch v. Huston (In re USDigital, Inc.), 443 B.R. 22 (Bankr. D. Del. 2011) .............................13

Burtch v. Masiz (In re Vaso Active Pharms., Inc.), Adv. No. 11-52005 (CSS),
    2012 Bankr. LEXIS 4741 (Bankr. D. Del., Oct. 9, 2012) (Sontchi, J.) .............................21

Campbell v. United States (In re Davis), 889 F.2d 658 (5th Cir. 1989).......................................26

CLC Creditors' Grantor Trust v. Howard Savs. Bank (In re Commercial Loan Corp.),
    396 B.R. 730 (Bankr. N.D. Ill. 2008) .................................................................................18

Consore v. Cohen (In re Roco Corp.), 701 F.2d 978 (1st Cir. 1983) ...........................................16

Cuevas v. Hudson United Bank (In re M. Silverman Laces, Inc.), No. 01 Civ. 6209
    (DC), 2002 U.S. Dist. LEXIS 20288 (S.D.N.Y. Oct. 24, 2002)........................................21

Devaney v. Chester, 813 F.2d 566 (2d Cir. 1987) .......................................................................12

DHP Holdings II Corp. v. Peter Skop Indus., Inc. (In re DHP Holdings II Corp.),
    435 B.R. 220 (Bankr. D. Del. 2010) ...................................................................................26

EBC I, Inc. v. Am. Online, Inc. (In re EBC I, Inc.), 380 B.R. 348
    (Bankr. D. Del. 2008), aff'd, 382 Fed. Appx. 135 (3d Cir. 2010)....................................22

Elway Co. v. Miller (In re Elrod Holdings Corp.), 421 B.R. 700 (Bankr. D. Del. 2010)..............13

**Page**

Geron v. Palladin Overseas Fund Ltd. (In re AppliedTheory Corp.), 330 B.R. 362
    (S.D.N.Y. 2005)................................................................................................21

Giuliano v. Mitsubishi Digital Elecs. Am., Inc. (In re Ultimate Acquisition Partners,
    LP), Adv. No. 11-52663 (MFW), 2012 Bankr. LEXIS 1905 (Bankr. D. Del.
    May 1, 2012)................................................................................................27

In re Capmark Fin. Grp., Inc., 438 B.R. 471
    (Bankr. D. Del. 2010) (Sontchi, J.)................................................................22

In re Centaur, LLC, No. 10-10799 (KJC), 2010 Bankr. LEXIS 3918
    (Bankr. D. Del. Nov. 5, 2010)................................................................9, 19

In re DeVito, 111 B.R. 529 (Bankr. W.D. Pa. 1990)................................................11

In re Lids Corp., 260 B.R. 680 (Bankr. D. Del. 2001)................................................26

In re MIG, Inc., No. 09-12118 (KG), 2009 Bankr. LEXIS 4313 (Bankr. D. Del. Dec.
    18, 2009)................................................................................................19

In re Optim Energy, LLC, No. 14-10262 (BLS), 2014 Bankr. LEXIS 2155
    (Bankr. D. Del. May 13, 2014)................................................................9, 23

In re Plassein Int'l Corp., 388 B.R. 46 (D. Del. 2008), aff'd, 590 F.3d 252 (3d Cir.
    2009)................................................................................................15

In re TWA, Inc., 169 B.R. 91 (Bankr. D. Del. 1994)................................................30, 31

Indus. Enters. of Am., Inc. v. Mazzuto (In re Pitt Penn Holding Co.,), 484 B.R. 25
    (Bankr. D. Del. 2012)................................................................................12

Liquidation Trust v. Daimler AG (In re Old CarCo LLC), 435 B.R. 169
    (Bankr. S.D.N.Y. 2010)................................................................................14

The Liquidation Trust of Hechinger Inv. Co. of Del. v. Fleet Retain Fin. Group
    (In re Hechinger Inv. Co. of Del.), 327 B.R. 537 (D. Del. 2005)................17

Mellon Bank, N.A. v. Metro Commc'ns Inc., 945 F.2d 635 (3d Cir. 1991)................20, 21

Mellon Bank, N.A. v. Official Comm. of Unsecured Creditors of R.M.L., Inc.
    (In re R.M.L., Inc.), 92 F.3d 139 (3d Cir. 1996)................................................21

Page

Mervyn's LLC v. Lubert-Adler Group IV, LLC (In re Mervyn's Holdings, LLC),
    426 B.R. 96 (Bankr. D. Del. 2010) ...................................................................24

Metro Commc'n Corp. BVI v. Advanced Mobilecomm Techs. Inc., 854 A.2d 121
    (Del. Ch. 2004) ..............................................................................................12

Mills v. Polar Molecular Corp., 12 F.3d 1170 (2d Cir. 1993) .......................................16

OHC Liquidation Trust v. Nucor Corp. (In re Oakwood Homes Corp.), 325 B.R. 696
    (Bankr. D. Del. 2005) ......................................................................................12

Official Comm. of Unsecured Creditors v. Guardian Ins.
    (In re Parcel Consultants, Inc.), 287 B.R. 41 (Bankr. D. N.J. 2002) ........................... 24-25

Official Comm. of Unsecured Creditors of Champion Enters. v. Credit Suisse (In re
    Champion Enters.), Adv. No. 10-50514 (KG), 2010 Bankr. LEXIS 2720
    (Bankr. D. Del. Sept. 1, 2010) ..........................................................................15

The Official Comm. of Unsecured Creditors of Midway Games Inc. v. Nat'l
    Amusements Inc. (In re Midway Games Inc.), 428 B.R. 303
    (Bankr. D. Del. 2010) ......................................................................................23

The Official Comm. Of Unsecured Creditors of Propex Inc. v. BNP Paribas
    (In re Propex, Inc.), 415 B.R. 321 (Bankr. E.D. Tenn. 2009)...................................... 21-22

Official Comm. of Unsecured Creditors of Teleglobe Commc'ns Corp. v. Pac. Bell
    Tel. Co. (In re Teleglobe Commc'ns Corp.), Adv. No. 04-55062 (PBL), 2004
    Bankr. LEXIS 2166 (Bankr. D. Del. Nov. 18, 2004) ..........................................29

Official Comm. of Unsecured Creditors of Verestar, Inc. v. Am. Tower Corp.
    (In re Verestar, Inc.), 343 B.R. 444 (Bankr. S.D.N.Y. 2006) ............................................18

Pardo v. Avanti Corp. Health Sys., Inc. (In re APF Co.),
    274 B.R. 634 (Bankr. D. Del. 2001) ....................................................................28

Pension Transfer Corp. v. Beneficiaries Under the Third Amendment to Fruehauf
    Trailer Corp. Ret. Plan No. 003 (In re Fruehauf Trailer Corp.), 444 F.3d 203
    (3d Cir. 2006)................................................................................................20

PN Chapter 11 Estate Liquidating Trust v. Inserts East, Inc. (In re Phila. Newspapers,
    LLC), 468 B.R. 712 (Bankr. E.D. Pa. 2012)........................................................26

Public Serv. Comm'n of Utah v. Wycoff Co., Inc., 344 U.S. 237 (1952)......................30

**Page**

Richardson v. United States, IRS (In re Anton Noll, Inc.), 277 B.R. 875 (B.A.P. 1st
      Cir. 2002) ...................................................................................................25

Rupp v. Markgraf, 95 F.3d 936 (10th Cir. 1996)..........................................................25

Savage & Assocs., P.C. v. Mandl (In re Teligent, Inc.), 346 B.R. 73
      (Bankr. S.D.N.Y. 2006) .........................................................................18

SB Liquidation Trust v. Preferred Bank (In re Syntax-Brillian Corp.),
      573 Fed. Appx. 154 (3rd Cir. 2014)..........................................12, 13, 18 n.10

Step-Saver Data Sys., Inc. v. Wyse Tech., 912 F.2d 643 (3rd Cir. 1990) ....................30

Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308 (2007) .............................13

Unsecured Creditors Comm. of Debtor STN Enters., Inc. v. Noyes (In re STN
      Enters.), 779 F.2d 901 (2d Cir. 1985) ...............................................19

VFB LLC v. Campbell Soup Co., 482 F.3d 624 (3d Cir. 2007).....................................20

Weisfelner v. Fund 1 (In re Lyondell Chem. Co.), 503 B.R. 348
      (Bankr. S.D.N.Y. 2014) .........................................................................16

Whitaker v. Mortg. Miracles, Inc. (In re Summit Place, LLC), 298 B.R. 62 (Bankr.
      W.D.N.C. 2002).......................................................................................22

Wyatt, Virgin Is., Inc. v. Gov't of the Virgin Is., 385 F.3d 801 (3d Cir. 2004) ....................29, 30

Zazzali v. Hirschler Fleischer, P.C., 482 B.R. 495 (D. Del. 2012)................................14

## STATUTES AND RULES

6 Del. Code § 1304 ......................................................................10, 11, 15, 17 n.9, 20

6 Del. Code § 1305(a)..................................................................................................20

6 Del. Code § 1308(a)........................................................................................18 n.10

11 U.S.C. § 548(a)(1)(A).......................................................................................11, 15

11 U.S.C. § 548(a)(1)(B) .............................................................................................20

11 U.S.C. § 548(c) ..........................................................................................18 n.10

**Page**

11 U.S.C. § 502(d) ................................................................................................26

11 U.S.C. § 550(a) ...............................................................................................24

Fed. R. Bankr. P. 7008 .........................................................................................28

Fed. R. Bankr. P. 7009 .........................................................................................12

Fed. R. Civ. P. 8 ........................................................................................14 n.8, 28

Fed. R. Civ. P. 9(b) ..............................................................................................12

Fed. R. Civ. P. 12(b)(6) ..........................................................................................9

Wilmington Trust, N.A. ("Wilmington"), as successor TCEH First Lien Administrative Agent and successor TCEH First Lien Collateral Agent (the "Successor First Lien Agent"), by and through its undersigned counsel, hereby files this omnibus objection (the "Objection") to the following motions (collectively, the "Standing Motions")[1]:

(i)     *Motion of the Official Committee of Unsecured Creditors* (the "TCEH Committee") *for Entry of an Order Granting Exclusive Standing and Authority to Commence, Prosecute, and Settle Certain Claims for Declaratory Judgment, Avoidance and Recovery of Liens, Security Interests, Obligations, Fees, and Interest Payments, and Disallowance of Claims* [Docket No. 3593] (the "TCEH Committee Standing Motion");

(ii)    *Motion of the Ad Hoc Group of TCEH Unsecured Noteholders* (the "Ad Hoc Noteholder Group," and together with the TCEH Committee, the "TCEH Junior Creditors) *for Entry of an Order Granting Standing and Authority to Commence, Prosecute, and Settle Certain Claims for Declaratory Judgment, Avoidance and Recovery of Liens, Security Interests, Obligations, Fees, and Interest Payments, and Disallowance of Claims* [Docket No. 3603] (the "Ad Hoc Noteholder Group Standing Motion"); and

(iii)   *Motion of the EFH Official Committee* (the "EFH Committee") *for Entry of an Order Granting Derivative Standing and Authority to Prosecute and Settle Claims on Behalf of the Luminant Debtors' Estates* [Docket No. 3605] (the "EFH Committee Standing Motion").

In support of this Objection, the Successor First Lien Agent respectfully represents as follows:[2]

---

[1]     The Successor First Lien Agent also joins in the arguments of law and relief requested in the *Omnibus Objection of the Ad Hoc Committee of TCEH First Lien Creditors* (the "Ad Hoc Committee") *to Standing Motions* (the "Ad Hoc Committee Objection"), which is being filed contemporaneously herewith.

[2]     Capitalized terms used and not defined herein shall have the meanings ascribed to such terms in the TCEH Committee Standing Motion or, where appropriate, the EFH Committee Standing Motion.

## PRELIMINARY STATEMENT

In the Standing Motions, the TCEH Junior Creditors and the EFH Committee seek derivative standing to challenge over $20 billion of TCEH First Lien Debt.[3]  Rather than an attempt to bring value to the TCEH Debtors' estates, these challenges appear to be another step in an ongoing effort to delay the resolution of these bankruptcy cases and obtain leverage over the TCEH First Lien Creditors.[4]  The Standing Motions should be denied, sending the clear signal to the parties that it is time to bring these cases to a conclusion.

To lessen the burden on the Court, the Successor First Lien Agent has coordinated with the Ad Hoc Committee and the TCEH First Lien Indenture Trustee to avoid duplicative objections to the Standing Motions.  The Successor First Lien Agent joins in the arguments of law and relief requested in the Ad Hoc Committee Objection (together with this Objection, the "TCEH First Lien Objections") and additionally sets out objections to certain of the proposed claims that may not be otherwise addressed in the Ad Hoc Committee Objection.

As a threshold matter, standing should be denied because many of the claims asserted by the TCEH Junior Creditors, including their most significant claims related to the 2007 Acquisition, the 2011 Amend and Extend Transactions and the 2013 Amend and Extend Transaction, are not "colorable" under applicable law and the likelihood of success on the claims

---

[3]    As used herein, the "TCEH First Lien Debt" includes all obligations under (i) the 2007 Credit Agreement (defined below), as amended, modified or restated prior to the date hereof, (ii) any and all Secured Commodity Hedge and Power Sales Agreements and Secured Hedging Agreements (each as defined in the 2007 Credit Agreement), as amended, modified or restated prior to the date hereof, (iii) the Indenture, dated as of April 19, 2011, governing the 11.50% senior secured notes due October 1, 2020, as amended, modified or restated prior to the date hereof, and (iv) all other agreements that were contemplated in, or related to, the agreements in (i) through (iii) above.

[4]    As used herein, the term "TCEH First Lien Creditors" means the Successor First Lien Agent, the indenture trustee for the First Lien Notes (the "TCEH First Lien Indenture Trustee"), and the holders of first lien senior secured claims against the TCEH Debtors.

is so remote so as not to justify the delay and expense to the TCEH Debtors' estates in pursuing them.

<u>First</u>, the TCEH Junior Creditors' claim seeking to unwind the liens, security interests and obligations arising out of the 2007 Acquisition (Count I) is time-barred.  There is no basis for the TCEH Junior Creditors' attempt to rely on the special statute of limitations applicable to IRS-asserted claims.  That standard is not applicable to them and cannot save their otherwise untimely claims.  <u>See</u> Ad Hoc Comm. Obj. ¶¶ 26-46.

<u>Second</u>, the TCEH Junior Creditors' challenges to the liens, security interests and obligations arising out of the 2007 Acquisition (Count I), the 2011 Amend and Extend Transactions (Counts II, III) and the 2013 Amend and Extend Transaction (Counts V, VII) as constructive fraudulent transfers are without merit.  Publicly available information regarding these transactions and, in some cases, the very documents cited by the TCEH Junior Creditors in their motions make plain that the TCEH Debtors were not rendered insolvent as a result of the 2007 Acquisition and received reasonably equivalent value in connection with each of the transactions.  <u>See</u> <u>infra</u> at 9-10, 19-23; Ad Hoc Comm. Obj. ¶¶ 47-69, 77-94.  Moreover, many of the alleged transfers associated with those transactions are immune from avoidance because they were used to satisfy valid antecedent debts and because of the Bankruptcy Code's "safe harbor" provisions.  <u>See</u> Ad Hoc Comm. Obj. ¶¶ 70-76, 95-96.

<u>Third</u>, the TCEH Junior Creditors' proposed claims for actual fraudulent transfers in connection with the 2013 Amend and Extend Transaction (Counts IV, VI) fail as a matter of law.  The TCEH Junior Creditors do not, and cannot, adequately allege with the required particularity the requisite intent on the part of any particular TCEH Debtor to defraud its creditors.  <u>See</u> <u>infra</u> at 10-18.  And, even if the TCEH Junior Creditors stated claims for actual

fraud, the likelihood of prevailing on such claims is so remote so as not to justify the delay and expense to the estates in pursuing those claims in accordance with the cost/benefit analysis required by law.  The Court should preserve the TCEH Debtors' resources and deny the TCEH Junior Creditors standing to prosecute actual fraudulent transfer claims.  See infra at 18-19.

The remaining counts for which the TCEH Junior Creditors and the EFH Committee seek derivative standing suffer from the same fundamental flaw -- none of the causes of action asserted are colorable:

- The TCEH Junior Creditors do not, and cannot, allege inequitable conduct on the part of the Successor First Lien Agent or the TCEH First Lien Creditors sufficient to state a claim for equitable subordination (Count VIII).  See infra at 23-24; Ad Hoc Comm. Obj. ¶¶ 97-100.

- To the extent the TCEH Junior Creditors seek to avoid and recover pre-petition transfers of fees and interest from the Successor First Lien Agent (Counts II, IV, V, VII, XI, XII), such claims fail as a matter of law because the Successor First Lien Agent was not a transferee of such amounts under section 550 of the Bankruptcy Code.  It is undisputed that the Successor First Lien Agent did not succeed its predecessor until after the Petition Date, and therefore could not have been a transferee of pre-petition amounts under section 550.  See infra at 24-25.

- The TCEH Junior Creditors' attempt to temporarily disallow the Successor First Lien Agent's claims prior to a judicial determination of any avoidance actions (Count XIII) is premature and without legal basis.  See infra at 25-27.

- The TCEH Junior Creditors should not be granted standing to prosecute a claim for the avoidance of allegedly unperfected liens (Count XVIII) because they fail to identify any purportedly unperfected lien they seek to avoid.  Instead, they identify properties which they concede have perfected liens, and assert that liens on "all other properties" of the TCEH Debtors are not perfected.  These vague and conclusory allegations do not put the Successor First Lien Agent on sufficient notice of the purported claims against it and are not colorable as a matter of law.  See infra at 27-29.

- The remaining claims asserted by the TCEH Junior Creditors (Counts IX-XII, XIV-XVII, XIX-XXII) are not colorable.  See Ad Hoc Comm. Obj. ¶¶ 101-113.  Their declaratory judgment claims, in particular are not ripe for review and are more appropriately the subject of confirmation objections.  See infra at 29-31; Ad Hoc Comm. Obj. ¶¶ 112-113.

Moreover, certain of the claims do not implicate the TCEH Debtors' stipulations in the Final Cash Collateral Order, thus the TCEH Junior Creditors should not be granted standing to prosecute them on behalf of the TCEH Debtors because the TCEH Debtors have reserved the right to do so at the appropriate time.  <u>See</u> <u>infra</u> at 31-33.

- The EFH Committee has not satisfied the requirements to obtain derivative standing to prosecute any claims on behalf of EFH, much less derivative standing to  assert claims on behalf of the Luminant Debtors. <u>See</u> Ad Hoc Comm. Obj. ¶¶ 114-115. The EFH Committee also fails to state a colorable fraudulent transfer claim.  <u>See</u> Ad Hoc Comm. Obj. ¶¶ 116-121.  The Luminant Debtors received reasonably equivalent value in connection with the debt service payments, and the Savings Clauses do not limit the Luminant Debtors' guarantee obligations.  <u>Id.</u>

As a final matter, even if this Court grants standing -- and the Successor First Lien Agent submits that it should not for the reasons stated above -- only the TCEH Committee should be granted standing to pursue claims on behalf of the TCEH Debtors.  <u>See</u> Ad Hoc Comm. Obj. ¶¶ 123-125.  The TCEH Debtors should also retain authority to settle any causes of action brought on behalf of the TCEH Debtors' estates.  <u>See</u> Ad Hoc Comm. Obj. ¶¶ 126-128.

# BACKGROUND

1.      The relevant factual background is more fully set out in the Ad Hoc Committee Objection and shall not be repeated except as necessary for context.

### A.      The 2007 Acquisition and the 2007 Credit Agreement

2.      In October 2007, the Sponsors acquired all of the outstanding shares of TXU Corp. (the predecessor of debtor Energy Future Holdings Corp. ("EFH")) (the "2007 Acquisition").  Compl.[5] ¶ 23.

3.      To finance the 2007 Acquisition, Texas Competitive Electric Holdings Company LLC ("TCEH"), as borrower, Energy Future Competitive Holdings Company ("EFCH"), as guarantor, and certain of TCEH's subsidiaries, as subsidiary guarantors, entered into a first lien Credit Agreement, dated as of October 10, 2007 (the "2007 Credit Agreement"), with Citibank N.A., as administrative agent and collateral agent (the "Initial First Lien Agent")[6], and various lenders (the "First Lien Lenders") and other agents.  Compl. ¶ 26.

4.      The 2007 Credit Agreement included: (a) a senior secured initial term loan facility up to $16.45 billion (maturing in October 2014); (b) a senior secured delayed draw term loan facility of up to $4.1 billion (also maturing in October 2014) (together with the initial term loan, the "2014 Term Loans"); (c) a senior secured letter of credit facility up to $1.25 billion; (d) a senior secured revolving credit facility up to $2.7 billion due October 2013 (the "2013 Revolver"); and (e) an unlimited senior secured cash posting credit facility designed to fund the

---

[5]      References to the "Complaint" or "Compl." herein refer to the proposed pleading filed by the TCEH Committee, but all arguments apply with equal force to the Ad Hoc Noteholder Group's proposed complaint, which is substantially identical.  The EFH Committee did not file a proposed complaint with its motion.

[6]      On May 1, 2014, Wilmington, the Successor First Lien Agent, succeeded the Initial First Lien Agent as administrative agent and collateral agent under the 2007 Credit Agreement and related documents.

collateral requirements for specific natural gas hedging obligations (together, the "Senior Secured Facilities").  Compl. ¶ 26.[7]

### B.    The Liability Management Program

5.    In October 2009, the TCEH Debtors initiated a Liability Management Program focused on improving the TCEH Debtors' balance sheets by, among other things, reducing interest payments, extending debt maturities and otherwise realigning their balance sheets with the changed market conditions since the 2007 Acquisition.  See Energy Future Holdings Corp., Annual Report (Form 10-K) (Feb. 21, 2012) at 55-56.

6.    A key part of the Liability Management Program was extending or refinancing the approximately $24 billion of Senior Secured Facilities outstanding in Fall 2009 under the 2007 Credit Agreement that would otherwise mature in October 2013 or October 2014.

7.    Consequently, in April 2011, the TCEH Debtors entered into a series of arm's-length transactions (the "2011 Amend and Extend Transactions") to address the maturing first lien debt and provide the TCEH Debtors with critical breathing room to continue to restructure their finances.  The 2011 Amend and Extend Transactions, among other things, extended the maturity of $16.371 billion aggregate principal amount of 2014 Term Loans to 2017 (the "2017 Term Loans"), and extended the maturity of $1.409 billion aggregate principal amount of the 2013 Revolver to 2016 (the "2016 Revolver"), in exchange for a 3.50% cash consent fee and a 1% increase in the contract rate of interest (from LIBOR plus 3.50% per annum to LIBOR plus 4.50% per annum), in the case of the 2017 Term Loans, and a 1% increase in the interest rate (from LIBOR plus 3.50% per annum to LIBOR plus 4.50% per annum) and an increase in the undrawn fee with respect to such commitments from 0.5% to 1%,

---

[7]    See Exhibit 1 to the Declaration of Christopher A. Ward dated February 19, 2015 ("Ward Decl."), which is annexed to the TCEH Committee Standing Motion as Exhibit A.

in the case of the 2016 Revolver.  <u>See</u> Ward Decl. Ex. 3.  TCEH also issued $1.75 billion

principal amount of 11.50% first lien notes due 2020 (the "<u>First Lien Notes</u>") and used the

proceeds thereof to repay $1.604 billion of borrowings under the Senior Secured Facilities.  <u>See</u>

Energy Future Holdings Corp., Annual Report (Form 10-K) (Feb. 21, 2012) at 55-56; Ward

Decl. Ex. 10.

8.        In late 2012, the TCEH Debtors took further steps to complete the

Liability Management Program with respect to the portion of the 2013 Revolver not extended

under the 2011 Amend and Extend Transactions.  <u>See</u> Energy Future Holdings Corp., Current

Report (Form 8-K) (Jan. 4, 2013).  The resulting transaction (the "<u>2013 Amend and Extend</u>

<u>Transaction</u>") was a natural extension and critical part of the Liability Management Program,

solidifying and preserving the benefits of the 2011 Amend and Extend Transactions.

9.        With approximately $645 million in borrowings under the 2013 Revolver

coming due in October 2013, TCEH requested that lenders holding these commitments convert

them to commitments under the 2016 Revolver maturing in October 2016 that was part of the

2011 Amend and Extend Transactions.  The lenders agreed, and, on January 4, 2013, the 2007

Credit Agreement was amended.  <u>See</u> Energy Future Competitive Holdings Company, Current

Report (Form 8-K) (Dec. 19, 2012) at 3; Energy Future Competitive Holdings Company, Current

Report (Form 8-K) (Jan. 4, 2013) at 2; Ward Decl. Ex. 4.  As a result of the 2013 Amend and

Extend Transaction, all $2.054 billion of the 2013 Revolver due to mature in October 2013 was

extended to mature in October 2016.  <u>Id.</u>

10.     Specifically, the 2013 Amend and Extend Transaction can be summarized as follows:

a.      the remaining $645 million in commitments under the 2013 Revolver became commitments with the same terms, conditions and maturity as those under the 2016 Revolver (the 2013 Revolver had an interest rate of LIBOR + 3.50% *per annum* and a commitment fee of 0.5% of the average daily unused portion of the facility; the 2016 Revolver had an interest rate of LIBOR + 4.50% *per annum* and a commitment fee of 1% of the average daily unused portion of the facility); and

b.      the extending lenders holding the $645 million in newly amended and extended commitments received fees in the form of approximately $340 million principal amount of incremental term loans with the same terms, conditions and maturity (October 2017) of the 2017 Term Loans.  Id.

## OBJECTION

11.     A party seeking standing to bring causes of action on behalf of a debtor's estate must show, inter alia, that it raises "colorable claims."  In re Centaur, LLC, No. 10-10799 (KJC), 2010 Bankr. LEXIS 3918, *13 (Bankr. D. Del. Nov. 5, 2010); see also Ad Hoc Comm. Obj. ¶ 21.  Delaware bankruptcy courts have interpreted a "colorable claim" as one which could survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  In re Optim Energy, LLC, No. 14-10262 (BLS), 2014 Bankr. LEXIS 2155, *17-18 (Bankr. D. Del. May 13, 2014); see also Ad Hoc Comm. Obj. ¶ 22.

12.     As described below, most -- if not all -- of the proposed causes of action in the Complaint could not survive a motion to dismiss, and thus, they do not state colorable claims. Accordingly, the Standing Motions should be denied.

**I.      THE TCEH JUNIOR CREDITORS SHOULD NOT BE GRANTED STANDING TO PURSUE CONSTRUCTIVE FRAUDULENT TRANSFER CLAIMS CONCERNING THE 2007 ACQUISITION AND THE 2011 AMEND AND EXTEND TRANSACTIONS.**

13.     The TCEH Junior Creditors seek to avoid and recover (a) the liens, security interests and obligations arising out of the 2007 Credit Agreement and 2007 Acquisition

9

(Count I); (b) the fees and incremental interest paid in connection with the 2011 Amend and

Extend Transactions (Count II); and (c) the liens, security interests and obligations arising out of

the First Lien Notes (Count III), as constructive fraudulent transfers under section 544(b)(1) of

the Bankruptcy Code and section 1304(a)(2) of title 6 of the Delaware Code.  Compl. ¶¶ 108-

146.

14.    Any claims arising out of the 2007 Acquisition are time-barred under the

applicable statutes of limitations.  See Ad Hoc Comm. Obj. ¶¶ 26-46.  The TCEH Junior

Creditors cannot rely on the special statute of limitations applicable to IRS-asserted claims, and

their claims related to the 2007 Acquisition are not colorable for this reason alone.  Id.

15.    Moreover, the TCEH Junior Creditors should not be granted standing to

pursue their constructive fraudulent transfer claims because (a) the 2007 Acquisition did not

render the TCEH Debtors' insolvent; (b) the TCEH Debtors received reasonably equivalent

value for the 2007 Credit Agreement, the 2011 Amend and Extend Transactions and the First

Lien Notes; and (c) many of the transfers incurred in connection with those transactions were

used to satisfy valid antecedent debt and are protected from avoidance under the Bankruptcy

Code's "safe harbor" provisions.  See Ad Hoc Comm. Obj. ¶¶ 47-96.

## II.    THE TCEH JUNIOR CREDITORS' ACTUAL FRAUDULENT TRANSFER CLAIMS CONCERNING THE 2013 AMEND AND EXTEND TRANSACTION ARE NOT COLORABLE.

### A.    The Actual Fraudulent Transfer Claims Do Not -- and Cannot -- Adequately Allege the Requisite Intent to Defraud Creditors.

16.    The TCEH Junior Creditors seek to avoid and recover (a) the fees and

incremental interest paid in connection with the 2013 Amend and Extend Transaction (Count

IV); and (b) the liens, security interests and obligations arising out of the 2013 Amend and

Extend Transaction (Count VI), as actual fraudulent transfers under section 548(a)(1)(A) of the

Bankruptcy Code and section 1304(a)(1) of title 6 of the Delaware Code.  Compl. ¶¶ 137-146

(Count IV); ¶¶ 156-164 (Count VI).  The allegations in the Complaint, as a matter of law, fall far

short of stating colorable claims for actual fraudulent transfers.  Thus, the Court should deny

standing to the TCEH Junior Creditors to prosecute those claims.

17.     Whereas "constructive" fraudulent transfer claims focus on a debtor's

financial condition and receipt of reasonably equivalent value (see infra at 20-22), "actual"

fraudulent transfer claims focus on a very different question -- whether the transfer was made by

the debtor with the actual intent to defraud a creditor.  The plain language of section

548(a)(1)(A) makes this abundantly clear:

> made such transfer or incurred such obligation with *actual intent to
> hinder, delay, or defraud* any entity to which the debtor was or
> became, on or after the date that such transfer was made or such
> obligation was incurred, indebted . . .

11 U.S.C. § 548(a)(1)(A) (emphasis added).

18.     Section 1304 of title 6 of the Delaware Code (the "Delaware Fraudulent

Transfer Statute") is equally clear that actual fraudulent intent on the part of the debtor is a

prerequisite to stating a claim for an actual fraudulent transfer.  See 6 Del. Code § 1304(a)(1) (an

intentional fraudulent transfer is one that is made by the debtor "with the actual intent to hinder,

delay or defraud any creditor of the debtor").

19.     Courts interpreting section 548(a)(1)(A) and the Delaware Fraudulent

Transfer Statute similarly find that an actual fraudulent transfer requires proof of actual intent to

defraud.  In re DeVito, 111 B.R. 529, 531 (Bankr. W.D. Pa. 1990) ("As the statutory language

expressly provides, *actual* intent to defraud must be shown.") (emphasis is in original); Metro

Commc'n Corp. BVI v. Advanced Mobilecomm Techs. Inc., 854 A.2d 121, 167 (Del. Ch. 2004)

("'actual intent' . . . is what § 1304(a)(1) requires").

20.     Because an actual fraudulent transfer claim requires proof of actual fraud, the heightened pleading standard of Federal Rule of Civil Procedure 9(b), made applicable to adversary proceedings by Bankruptcy Rule 7009, requires that the claim be stated with particularity.  Indus. Enters. of Am., Inc. v. Mazzuto (In re Pitt Penn Holding Co.,), 484 B.R. 25, 36 (Bankr. D. Del. 2012) (because actual fraudulent transfer claims "sound in fraud, the elevated standard of Rule 9(b) applies"); OHC Liquidation Trust v. Nucor Corp. (In re Oakwood Homes Corp.), 325 B.R. 696, 698 (Bankr. D. Del. 2005) ("There is no question that Rule 9(b) applies to adversary proceedings in bankruptcy which include a claim for relief under §§ 544 or 548, whether it is based upon actual or constructive fraud."); see also SB Liquidation Trust v. Preferred Bank (In re Syntax Brillian Corp.), 573 Fed. Appx. 154, 162 n.11 (3rd Cir. 2014) (actual fraudulent transfer claim must be alleged under the heightened pleading standard of Rule 9(b)).

21.     The TCEH Junior Creditors, moreover, should be held to a higher degree of particularity under Rule 9(b) because they had access to substantial discovery prior to filing the Standing Motions, obtaining more than 5.5 million pages of documents through discovery of the Debtors and others (see Ad Hoc Noteholder Group Standing Motion ¶ 18).  See, e.g., Devaney v. Chester, 813 F.2d 566, 569 (2d Cir. 1987) (degree of particularity required under Rule 9(b) "should be determined in light of such circumstances as whether plaintiff has had an opportunity to take discovery of those who may possess knowledge of the pertinent facts").

22.     In order to state a colorable claim for actual fraudulent transfers, the TCEH Junior Creditors must do more than merely recite the statutory elements of the cause of action.  See Autobacs Strauss, Inc. v. Autobacs Seven Co. (In re Autobacs Strauss, Inc.), 473 B.R. 525, 552 (Bankr. D. Del. 2012) (Sontchi, J.) ("To provide fair notice, the complaint must go

beyond merely quoting the relevant statute."); <u>Burtch v. Huston (In re USDigital, Inc.)</u>, 443 B.R. 22, 33-34 (Bankr. D. Del. 2011) (the pleading requirements "require the trustee to do more than merely identify the allegedly fraudulent transfers").  Instead, to state a colorable claim for an actual fraudulent transfer, the Complaint must set forth specific factual allegations that make it "at least as compelling as any opposing inference" to conclude that the 2013 Amend and Extend Transaction was completed in order to "hinder, delay or defraud" creditors of the TCEH Debtors. See <u>Tellabs, Inc. v. Makor Issues & Rights, Ltd.</u>, 551 U.S. 308, 324 (2007).

23.     Under this standard, the TCEH Junior Creditors fall woefully short of pleading colorable claims for actual fraudulent transfers.  Indeed, there are at least four readily apparent pleading deficiencies in the actual fraudulent transfer claims.  Any one, by itself, would justify a finding that the claims are not colorable.  Taken together, they evidence that the actual fraudulent transfer claims are deficient beyond repair.

24.     <u>First</u>, the Complaint does not allege any facts to support the conclusory allegation that the TCEH Debtors acted with the "actual intent to hinder, delay or defraud" creditors in connection with the 2013 Amend and Extend Transaction, let alone meet the heightened pleading standard under Rule 9(b).  Actual fraudulent transfer claims focus on the intent of *the debtor* to "hinder, delay, or defraud."  <u>In re Syntax-Brillian Corp.</u>, 573 Fed. Appx. at 162 ("[S]ection 548(a)(1)(A) and 6 Del. Code § 1304 unambiguously focus solely on the intent of the debtor."); <u>Elway Co. v. Miller (In re Elrod Holdings Corp.)</u>, 421 B.R. 700, 709 (Bankr. D. Del. 2010) ("[T]he central focus of § 548(a)(1)(A) is the debtor's intent").  Nowhere in the Complaint, however, have the TCEH Junior Creditors alleged that the *TCEH Debtors* intended to "hinder, delay, or defraud" their creditors when they entered into the 2013 Amend and Extend Transaction.

25.     There is not a single factual allegation in the three hundred twenty-two paragraphs of the TCEH Committee Complaint (or the three hundred nineteen paragraphs of the Ad Hoc Noteholder Group Complaint) of the TCEH Debtors' allegedly fraudulent intent in entering the 2013 Amend and Extend Transaction.[8]  While the Complaint goes on at length about the supposed dire financial condition of the TCEH Debtors, their inability to pay their debt load and the "inevitability" of a bankruptcy filing, the TCEH Junior Creditors do not allege anything in respect of actual fraudulent intent on the part of the TCEH Debtors in entering the 2013 Amend and Extend Transaction, other than to quote the statutory language of section 548(a)(1)(A) (Compl. ¶¶ 138, 157) and the Delaware Fraudulent Transfer Statute (Compl. ¶¶ 140, 159).  These conclusory recitals of statutory language are insufficient to state a claim for actual fraudulent transfers.  See, e.g., Zazzali v. Hirschler Fleischer, P.C., 482 B.R. 495, 520 (D. Del. 2012) (dismissing actual fraudulent transfer count of complaint for failing to adequately allege intent to defraud; noting that mere recitation of the statutory requirements "is insufficient as a matter of law"); Liquidation Trust v. Daimler AG (In re Old CarCo LLC), 435 B.R. 169, 194-95 (Bankr. S.D.N.Y. 2010) (dismissing actual fraud claim based on absence from the complaint of "particularized facts concerning the alleged intentional fraudulent claim").

26.     The Complaint instead hints at the *First Lien Lenders'* alleged motives in entering the 2013 Amend and Extend Transaction and protecting their interests in bankruptcy or extracting additional fees (see, e.g., Compl. ¶¶ 93-97), but the TCEH Junior Creditors fail to allege any facts that, if true, would justify imputing the First Lien Lenders' actions to the TCEH

---

[8]     The Complaint's conclusory recitation of the fraudulent transfer statutes does not satisfy Rule 8 of the Federal Rules of Civil Procedure, let alone the heightened pleading standard in Rule 9(b).  See, e.g., Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) ("[T]he tenet that a court must accept as true all of the allegations in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.") (citation omitted); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) ("[A] formulaic recitation of the elements of a cause of action will not do.").

Debtors.  Indeed, the TCEH Junior Creditors do not -- and cannot -- allege that the First Lien

Lenders had anything more than an arm's-length lender-creditor relationship with the TCEH

Debtors.  See Official Comm. of Unsecured Creditors of Champion Enters. v. Credit Suisse (In

re Champion Enters.), Adv. No. 10-50514 (KG), 2010 Bankr. LEXIS 2720, *18 (Bankr. D. Del.

Sept. 1, 2010) ("[C]ourts have refused to apply insider status absent a showing of a high level of

control by the lender.").

27.    Second, the Complaint fails to identify which TCEH Debtor allegedly

made the purported fraudulent transfers.  Rather than setting forth particularized allegations that

a specific TCEH Debtor engaged in the 2013 Amend and Extend Transaction with the intent to

defraud its creditors, the Complaint broadly alleges that the "TCEH Debtors" "entered into an

illusory amendment to the Credit Agreement" (Compl. ¶ 89); never "believed or intended that

the purported three year term of the extension would materialize" (id. ¶ 91); or "paid . . .

unprecedented fees to extend the maturity date on the $645 million of Revolving Loans" (id.

¶ 141).  Notably, the term "TCEH Debtors" is defined in the Complaint as including some forty

different debtors in these chapter 11 cases.  Compl. ¶ 15.

28.    The language of the relevant fraudulent transfer statutes and Rule 9(b)

requires that the TCEH Junior Creditors plead that a *particular transferor* intended to defraud *its*

creditors.  See 11 U.S.C. § 548(a)(1)(A); 6 Del. Code § 1304(a)(1); see also In re Plassein Int'l

Corp., 388 B.R. 46 (D. Del. 2008) (bankruptcy court properly concluded that trustee failed to

allege actionable fraudulent transfer claims under 6 Del. C. §§ 1304, 1305 because the trustee did

not specifically allege facts indicating that a debtor actually made the transfers in question),

aff'd, 590 F.3d 252 (3d Cir. 2009); Mills v. Polar Molecular Corp., 12 F.3d 1170, 1175 (2d Cir.

1993) ("Rule 9(b) is not satisfied where the complaint vaguely attributes the alleged fraudulent statements to 'defendants'.").

29.    <u>Third</u>, having failed to identify a particular TCEH Debtor transferor, it was inevitable that the Complaint would also fail to adequately allege that the transferor's state of mind was to act with actual intent to defraud its creditors.  Where, as here, the transferors are business entities, a plaintiff must plead the relevant particularized fraudulent intent of the person or persons able to control the transfer of the entity's property.  <u>See</u> <u>Weisfelner v. Fund 1 (In re Lyondell Chem. Co.)</u>, 503 B.R. 348, 388 (Bankr. S.D.N.Y. 2014) (in analyzing an intentional fraudulent transfer, the requisite fraudulent intent is of the individual who "was in a position to control the disposition of [the transferor's] property") (quoting <u>Consore v. Cohen (In re Roco Corp.)</u>, 701 F.2d 978, 984 (1st Cir. 1983)).

30.    The Complaint alleges that the Boards of EFH, EFCH and TCEH consented to the 2013 Amend and Extend Transaction.  Compl. ¶ 90.  But the Complaint does not contain a single allegation, even in conclusory form, that any of the managers on the TCEH board (or any member of the EFCH or EFH boards) had the actual intent to hinder, delay or defraud any of TCEH's creditors by approving the 2013 Amend and Extend Transaction.  <u>See</u> <u>In re Lyondell Chem. Co.</u>, 503 B.R. at 388-89 (dismissing actual fraudulent transfer claim for failure to allege fraudulent intent "on the part of a critical mass of the *directors* who made the decisions in question . . . or others [who] could nevertheless 'control the disposition of [Lyondell's] property'—by influence on the remaining Board members or otherwise") (emphasis in original).

31.    <u>Fourth</u>, while courts have recognized that evidence of fraudulent intent under section 548(a)(1)(A) may be established by circumstantial evidence of so-called "badges

of fraud" (The Liquidation Trust of Hechinger Inv. Co. of Del. v. Fleet Retain Fin. Group (In re Hechinger Inv. Co. of Del.), 327 B.R. 537, 551 (D. Del. 2005)), no such evidence is alleged here by the TCEH Junior Creditors.

32.     The badges of fraud that are characteristic of fraudulent intent include: "(1) the relationship between the debtor and the transferee; (2) consideration for conveyance; (3) insolvency or indebtedness of the debtors; (4) how much of the debtor's estate was transferred; (5) reservation of benefits, control or dominion by the debtor; and (6) secrecy or concealment of the transaction." Id.

33.     At best, the Complaint recites the statutory elements of constructive fraud. The TCEH Junior Creditors do not, and cannot, allege that the First Lien Lenders were insiders, that the TCEH Debtors transferred a majority of their estates to the First Lien Lenders, that the TCEH Debtors reserved any benefits, control or dominion over the property transferred, or that the 2013 Amend and Extend Transaction was concealed or kept secret.[9]

34.     Instead, the TCEH Junior Creditors rely on mere conclusory allegations that the 2013 Amend and Extend Transaction was fraudulent because it was made at a time when the TCEH Debtors were insolvent and that the TCEH Debtors did not receive reasonably equivalent value. Compl. ¶¶ 141-142, 145, 161, 163.  While these allegations recite the statutory elements for a *constructive* fraudulent transfer claim, they fail to allege adequately a claim for an

---

[9]     The TCEH Junior Creditors fare no better under the Delaware Fraudulent Transfer Statute, which identifies eleven "badges of fraud": "(1) the transfer or obligation was to an insider; (2) the debtor retained possession or control of the property transferred after the transfer; (3) the transfer or obligation was disclosed or concealed; (4) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit; (5) the transfer was of substantially all of the debtor's assets; (6) the debtor absconded; (7) the debtor removed or concealed assets; (8) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred; (9) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred; (10) the transfer occurred shortly before or shortly after a substantial debt was incurred; and (11) the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor."  6 Del. Code §1304(b).

*actual* fraudulent transfer.  See, e.g., CLC Creditors' Grantor Trust v. Howard Savs. Bank (In re Commercial Loan Corp.), 396 B.R. 730, 747 (Bankr. N.D. Ill. 2008) ("If the elements of constructive fraud were enough to demonstrate actual fraud, the constructive fraud provisions of [the fraudulent transfer statute] would be superfluous."); Savage & Assocs., P.C. v. Mandl (In re Teligent, Inc.), 346 B.R. 73, 77 (Bankr. S.D.N.Y. 2006) (noting the "stark differences between the elements of a constructive fraudulent transfer claim and a claim sounding in intentional fraud"); Official Comm. of Unsecured Creditors of Verestar, Inc. v. Am. Tower Corp. (In re Verestar, Inc.), 343 B.R. 444, 468 (Bankr. S.D.N.Y. 2006) (allegations that a "pattern of inappropriate transfers" were made for less than reasonably equivalent value were insufficient to plead a claim for actual fraudulent transfers).[10]

> **B.**     **Even if Colorable, Standing to Prosecute the Actual Fraudulent Transfer Claims Should Be Denied on a Cost/Benefit Analysis.**

35.    Even were the Court to conclude that the claims for actual fraudulent transfers as to the 2013 Amend and Extend Transaction were colorable, the likelihood of prevailing on such claims is so remote and the benefit to the TCEH Debtors' estates and to the TCEH Junior Creditors so marginal so as not to justify the delay and expense to the TCEH Debtors' bankruptcy estates that the pursuit of such claims will likely produce.  Thus, standing to prosecute those claims should be denied.

---

[10]    The TCEH Junior Creditors' actual fraud claims are not colorable for the reasons stated herein.  Were they colorable, there are a number of meritorious affirmative defenses to the claims, including that the First Lien Lenders are immunized by the good faith exception.  See In re Syntax-Brillian Corp., 573 Fed. Appx. at 161 ("Both the Bankruptcy Code and the Delaware Code provide good faith exceptions.").  Both the Bankruptcy Code and the Delaware Code provide that a transfer found to be fraudulent is nevertheless not voidable against a transferee who took in good faith and gave value to the debtor.  See 11 U.S.C. § 548(c) ("[A] transferee or obligee . . . that takes for value and in good faith has a lien on or may retain any interest transferred or may enforce any obligation incurred, as the case may be, to the extent that such transferee or obligee gave value to the debtor in exchange for such transfer or obligation."); 6 Del. Code § 1308(a) ("A transfer or obligation is not voidable under 1304(a)(1) of this title against a person who took in good faith for a reasonably equivalent value . . . .").  The Successor First Lien Agent reserves all rights to assert any affirmative defenses to the Complaint if and when it is filed.

36.     The court's analysis of a motion for derivative standing to pursue claims on behalf of a debtor's estate does not end with a determination that the claims are colorable.  In re MIG, Inc., No. 09-12118 (KG), 2009 Bankr. LEXIS 4313, *5 (Bankr. D. Del. Dec. 18, 2009). The court must also determine "there is sufficient likelihood of success to justify the anticipated delay and expense to the bankruptcy estate that the initiation and continuation of litigation will likely produce."  Id. (quoting Unsecured Creditors Comm. of Debtor STN Enters., Inc. v. Noyes (In re STN Enters.), 779 F.2d 901, 906 (2d Cir. 1985)); see also In re Centaur, LLC, 2010 Bankr. LEXIS 3918, at *15 (even if claims are colorable, whether the Committee should be allowed to prosecute them "turns on the outcome of a cost/benefit analysis").

37.     If this Court were to grant the TCEH Junior Creditors standing to pursue actual fraudulent transfer claims, the Court would be green-lighting additional costly litigation focused on the TCEH Debtors' intent, despite the fact that, as described above, the TCEH Junior Creditors were unable to plead a single allegation of the TCEH Debtors' actual intent after having had access to substantial discovery.  The TCEH Junior Creditors' failure to do so is itself indicative of the remote likelihood of success on their actual fraudulent transfer claims.  The Court should therefore deny the TCEH Junior Creditors standing to prosecute the actual fraudulent transfer claims and save the TCEH Debtors' valuable, but limited, resources.

## III.     THE TCEH JUNIOR CREDITORS SHOULD NOT BE GRANTED STANDING TO PURSUE CONSTRUCTIVE FRAUDULENT TRANSFER CLAIMS WITH REGARD TO THE 2013 AMEND AND EXTEND TRANSACTION.

38.     Count V of the Complaint seeks to avoid fees and incremental interest associated with the 2013 Amend and Extend Transaction (Compl. ¶¶ 147-155), and Count VII of the Complaint seeks to avoid liens, security interests and obligations arising from the 2013 Amend and Extend Transaction (id. ¶¶ 165-174), in each case, as constructive fraudulent transfers.  However, as with the 2011 Amend and Extend Transactions (see Ad Hoc Comm. Obj.

¶¶ 77-96), the TCEH Junior Creditors should not be granted derivative standing to assert such claims.

39.    A claim for a constructive fraudulent transfer under section 548(a)(1)(B) of the Bankruptcy Code requires establishing that: (a) the debtor (i) was insolvent or rendered insolvent by the transaction, (ii) was left with an unreasonably small capital or (iii) believed it would incur debts beyond its ability to pay, and (b) "reasonably equivalent value" was lacking. 11 U.S.C. § 548(a)(1)(B).

40.    The Delaware Fraudulent Transfer Statute similarly turns on whether the debtor received "reasonably equivalent value in exchange for the transfer" and whether the debtor's remaining assets after the transfer were "unreasonably small in relation to the business" or the debtor was insolvent at the time of the transfer or became insolvent as a result of the transfer.  See 6 Del. Code §§ 1304(a)(2), 1305(a).

41.    It is well established that "reasonably equivalent value is not an esoteric concept: a party receives reasonably equivalent value for what it gives up if it gets 'roughly the value it gave.'"  VFB LLC v. Campbell Soup Co., 482 F.3d 624, 631 (3d Cir. 2007) (quoting Pension Transfer Corp. v. Beneficiaries Under the Third Amendment to Fruehauf Trailer Corp. Ret. Plan No. 003 (In re Fruehauf Trailer Corp.), 444 F.3d 203, 213 (3d Cir. 2006)).

42.    Equally well established is that, in evaluating whether reasonably equivalent value has been provided, both direct and indirect benefits received by the debtor from the challenged transfer should be weighed.  Mellon Bank, N.A. v. Metro Commc'ns Inc., 945 F.2d 635, 646 (3d Cir. 1991).  "The touchstone [of reasonably equivalent value] is whether the transaction conferred realizable commercial value measurably equivalent to the realizable commercial value of the assets transferred."  Id. at 647.  The quantification of the value of the

indirect benefits received by a debtor "depends upon the business opportunities the [challenged transfer] makes available to the [transferor] and on other imponderables in the operation or expansion of its business."  Id.; see also Burtch v. Masiz (In re Vaso Active Pharms., Inc.), Adv. No. 11-52005 (CSS), 2012 Bankr. LEXIS 4741, **56-58 (Bankr. D. Del., Oct. 9, 2012) (Sontchi, J.) (reasonably equivalent value can be satisfied indirectly through the transferee's provision of "intangibles," such as services or the opportunity to obtain future economic value).

43.     The "mere expectation" of a challenged transaction conferring value may be sufficient to establish reasonably equivalent value "so long as the expectation was 'legitimate and reasonable'" and there was "some chance that the [transfer] will generate a positive return at the time of the disputed transfer."  Mellon Bank, N.A. v. Official Comm. of Unsecured Creditors of R.M.L., Inc. (In re R.M.L., Inc.), 92 F.3d 139, 152 (3d Cir. 1996) (quoting Mellon Bank v. Metro Commc'ns, 945 F.2d at 647).  This is true even if the expected benefits from a transaction ultimately are not realized (id.) or they prove only to be short-lived.  Geron v. Palladin Overseas Fund Ltd. (In re AppliedTheory Corp.), 330 B.R. 362, 364 (S.D.N.Y. 2005).

44.     One of the indirect benefits that should be considered in evaluating and quantifying reasonably equivalent value is the creation of "breathing room" -- an opportunity for a transferor to focus on its operations and finances, avoid default, facilitate its rehabilitation and avoid bankruptcy.  See, e.g., Cuevas v. Hudson United Bank (In re M. Silverman Laces, Inc.), No. 01 Civ. 6209 (DC), 2002 U.S. Dist. LEXIS 20288, *17 (S.D.N.Y. Oct. 24, 2002) (finding, as a matter of law, that creation of "breathing room" was a benefit to the debtor); The Official Comm. Of Unsecured Creditors of Propex Inc. v. BNP Paribas (In re Propex, Inc.), 415 B.R. 321, 325 (Bankr. E.D. Tenn. 2009) (granting motion to dismiss where forbearance and temporary relaxation of financial covenants allowing transferor to avoid default in exchange for principal

payment and interest rate increases provided reasonably equivalent value); In re AppliedTheory Corp., 330 B.R. at 364 (financing that allowed transferor to avoid default and created "breathing room" provided reasonably equivalent value as a matter of law); Whitaker v. Mortg. Miracles, Inc. (In re Summit Place, LLC), 298 B.R. 62, 73 (Bankr. W.D.N.C. 2002) (transferor received reasonably equivalent value by way of "avoidance of foreclosure and the chance to survive until it had an opportunity to refinance its project"); cf. EBC I, Inc. v. Am. Online, Inc. (In re EBC I, Inc.), 380 B.R. 348, 356, 359-60 (Bankr. D. Del. 2008) (considering company access to capital key part of solvency analysis), aff'd, 382 Fed. Appx. 135 (3d Cir. 2010); In re Capmark Fin. Grp., Inc., 438 B.R. 471, 518-19 (Bankr. D. Del. 2010) (Sontchi, J.) (equating forbearance on certain terms with repayment of antecedent debt in the context of approving a settlement of a complex fraudulent transfer action).

45.    While the TCEH Junior Creditors acknowledge in the Complaint that the 2013 Amend and Extend Transaction avoided a bankruptcy filing by the TCEH Debtors in 2013 (see Compl. ¶ 88), the Complaint does not acknowledge any of the potentially significant direct and indirect benefits that resulted from the transaction.

46.    The 2013 Amend and Extend Transaction, which extended the maturity of the remaining portion of the 2013 Revolver to 2016, gave the TCEH Debtors "breathing room" and allowed them to preserve and maximize their access to capital and avoid the significant risks and costs of imminent default and a chaotic free-fall bankruptcy involving over $20 billion in outstanding debt, including a potential free-for-all amongst its creditors, significant tax costs, disrupted operations and associated value loss, and professional fees.

47.    Relatedly, the TCEH Junior Creditors ignore that the 2013 Amend and Extend Transaction created value for the TCEH Debtors by increasing the likelihood of

benefiting from potential market improvements.  Importantly, this consisted of far more than just buying time and hoping that markets would improve and allowed the TCEH Debtors to continue to evaluate potential restructuring plans.  Without the 2013 Amend and Extend Transaction, any such restructuring plan would have been preempted by a TCEH default in 2013.  Therefore, the TCEH Debtors received reasonably equivalent value for the 2013 Amend and Extend Transaction, and the TCEH Junior Creditors should not be granted standing to bring their constructive fraudulent transfer claims.

**IV.    THE TCEH JUNIOR CREDITORS FAIL TO STATE A CLAIM FOR EQUITABLE SUBORDINATION BECAUSE THERE ARE NO ALLEGATIONS OF THE REQUISITE INEQUITABLE CONDUCT.**

48.    This Court also should not confer standing on the TCEH Junior Creditors to pursue their claim of equitable subordination (Count VIII), an "extraordinary remedy which is applied sparingly."  Bank of N.Y. v. Epic Resorts-Palm Springs Marquis Villas, LLC (In re Epic Capital Corp.), 307 B.R. 767, 773 (D. Del. 2004) (citations omitted); see also Ad. Hoc Comm. Obj. ¶¶ 96-99.

49.    Here, there are no allegations of the requisite inequitable conduct on the part of the First Lien Lenders with respect to any of the challenged transactions (including the 2013 Amend and Extend Transaction), much less against the Successor First Lien Agent, sufficient to state a colorable claim for equitable subordination, and standing to pursue such claims should be denied to the TCEH Junior Creditors.  See In re Optim Energy, 2014 Bankr. LEXIS 2155, *35 (denying derivative standing to creditor where claims for equitable subordination failed to state a colorable claim because the creditor failed to plead inequitable conduct); The Official Comm. of Unsecured Creditors of Midway Games Inc. v. Nat'l Amusements Inc. (In re Midway Games Inc.), 428 B.R. 303, 322 (Bankr. D. Del. 2010)

(dismissing claim for equitable subordination where plaintiff failed to state facts that would

justify a finding of inequitable conduct); <u>see also</u> Ad. Hoc Comm. Obj. ¶¶ 96-99.

**V.      THE TCEH JUNIOR CREDITORS CANNOT RECOVER FEES,
         INTEREST AND OTHER PAYMENTS FROM THE SUCCESSOR
         FIRST LIEN AGENT BECAUSE IT IS NOT A TRANSFEREE
         UNDER SECTION 550 OF THE BANKRUPTCY CODE.**

        50.     The TCEH Junior Creditors also seek standing to bring a number of claims

for the avoidance of fees, interest and other amounts allegedly paid to unspecified "Defendants"

prior to the Petition Date (Counts II, IV, V, VII, XI, XII).  As set forth above and in the Ad Hoc

Committee Objection, each of these claims fails to state a claim for which relief may be granted,

and standing should be denied for that reason alone.  Moreover, to the extent the TCEH Junior

Creditors purport to name the Successor First Lien Agent as a defendant "First Lien Transferee"

on any of these claims, the Court should deny the TCEH Junior Creditors standing to bring such

claims because the Successor First Lien Agent is not a transferee of any of these alleged transfers

under section 550(a) of the Bankruptcy Code.

        51.     Under section 550(a), an avoidable transfer may be recovered from

"(1) the initial transferee of such transfer or the entity for whose benefit such transfer was made;

or (2) any immediate or mediate transferee of such initial transferee."  11 U.S.C. § 550(a).  In

order to be a transferee for purposes of section 550(a), one must have actually received the funds

sought to be avoided and have had dominion and control over the funds.  <u>Mervyn's LLC v.

Lubert-Adler Group IV, LLC (In re Mervyn's Holdings, LLC)</u>, 426 B.R. 96, 102-103 (Bankr. D.

Del. 2010) (a party must have "'dominion over the money or other asset [and] the right to put the

money to one's own purposes'" to be liable under section 550(a)) (citing <u>Bonded Fin. Servs. v.

European Am. Bank</u>, 838 F.2d 890, 893 (7th Cir. 1988)); <u>Bond v. Nat'l Fin. Servs. (In re United

States Mortg. Corp.)</u>, 491 B.R. 642, 672 (Bankr. D.N.J. 2013) (citing <u>Official Comm. of</u>

Unsecured Creditors v. Guardian Ins. (In re Parcel Consultants, Inc.), 287 B.R. 41, 46 (Bankr. D.

N.J. 2002)); Richardson v. United States, IRS (In re Anton Noll, Inc.), 277 B.R. 875, 879 (B.A.P.

1st Cir. 2002) (quoting Rupp v. Markgraf, 95 F.3d 936, 942 (10th Cir. 1996)).

52.    As set forth in the Complaint, each of the alleged transfers of fees, interest

and other payments sought to be avoided by the TCEH Junior Creditors were allegedly paid by

the TCEH Debtors prior to the Petition Date.  Compl. ¶¶ 23-107.  Yet it cannot be disputed that

the Successor First Lien Agent became the successor Administrative Agent and Collateral Agent

under the 2007 Credit Agreement on May 1, 2014 -- i.e., after the Petition Date.  Therefore, the

Successor First Lien Agent could not have received any allegedly avoidable transfers of pre-

prepetition fees, interest and other payments.  Because the TCEH Junior Creditors cannot plead

that the Successor First Lien Agent received the funds sought to be avoided, the TCEH Junior

Creditors cannot state a colorable claim against the Successor First Lien Agent for the avoidance

of the alleged transfers.

53.    Accordingly, the Court should not grant the TCEH Junior Creditors

standing to assert claims against the Successor First Lien Agent for the avoidance of pre-petition

fees, interests and other amounts.

## VI.    THE TCEH JUNIOR CREDITORS CANNOT TEMPORARILY DISALLOW THE SUCCESSOR FIRST LIEN AGENT'S CLAIM.

54.    The TCEH Junior Creditors' attempt to temporarily disallow the

Successor First Lien Agent's claim pending the outcome of their avoidance actions (Count XIII)

is also insufficient as a matter of law.  In the Complaint, the TCEH Junior Creditors assert that

under section 502(d) of the Bankruptcy Code "each of the lenders' claims should be disallowed

until the time as the Committee's claims asserted herein have been finally resolved."  Compl.

¶ 216.  In addition, the TCEH Junior Creditors assert that each of the lenders' claims should be

limited "in accordance with paragraph 2(b) of the Guarantees."  Compl. ¶ 223.  Finally, the

TCEH Junior Creditors seek a determination under section 502(b) of the Bankruptcy Code as to

the amount of the Successor First Lien Agent's claim.  Compl. ¶ 217.

       55.    At this juncture, the TCEH Junior Creditors' claim under section 502(d) is

premature and fails as a matter of law.  Section 502(d) provides, in relevant part, that "the court

shall disallow any claim of any entity from which property is recoverable under section 542, 543,

550, or 553 of this title or that is a transferee of a transfer avoidable under section 522(f), 522(h),

544, 545, 547, 548, 549, or 724(a) of this title, unless such entity or transferee has paid the

amount, or turned over any such property, for which such entity or transferee is liable . . . ."  11

U.S.C. § 502(d).  In order to "avail itself of the benefits of section 502(d)," however, an objector

"must first obtain a judicial determination on the [avoidance] complaint."  In re Lids Corp., 260

B.R. 680, 684 (Bankr. D. Del. 2001) (overruling a debtor's objection to a claim pursuant to

section 502(d) because "until the debtor obtains a judgment against [the creditor] . . . section

502(d) is not applicable"); see also DHP Holdings II Corp. v. Peter Skop Indus., Inc. (In re DHP

Holdings II Corp.), 435 B.R. 220, 226 (Bankr. D. Del. 2010) (debtors' complaint to disallow

defendant's claims under section 502(d) was premature where debtors did not yet have a

judgment against defendant and defendant had not yet filed a proof of claim); Campbell v.

United States (In re Davis), 889 F.2d 658, 662 (5th Cir. 1989) (stating that section 502(d) "is

designed to be triggered after a creditor has been afforded reasonable time in which to turn over

amounts adjudicated to belong to the bankruptcy estate").

       56.    The TCEH Junior Creditors' reliance on PN Chapter 11 Estate Liquidating

Trust v. Inserts East, Inc. (In re Phila. Newspapers, LLC), 468 B.R. 712 (Bankr. E.D. Pa. 2012),

for the proposition that section 502(d) provides for temporary disallowance of a defendant's

proof of claim (see TCEH Comm. Mot. ¶ 163), is unavailing.  In that case, the court granted summary judgment to the trustee on its avoidance claims and found the creditor liable for preferential transfers under section 547(b) of the Bankruptcy Code.  Thus, the trustee's section 502(d) claim in In re Phila. Newspapers was not premature because, unlike the situation here, the trustee had obtained a judicial determination of the creditor's liability.

57.    Accordingly, in the absence of any judicial determination of the TCEH First Lien Creditors' liability, if any, disallowance of the Successor First Lien Agent's claim is premature.  See, e.g., Giuliano v. Mitsubishi Digital Elecs. Am., Inc. (In re Ultimate Acquisition Partners, LP), Adv. No. 11-52663 (MFW), 2012 Bankr. LEXIS 1905, **9-10 (Bankr. D. Del. May 1, 2012) (dismissing trustee's section 502(d) claim because the trustee had not obtained any judicial determination of the creditor's liability, and therefore had "no basis for a section 502(d) claim").

58.    For the same reasons, disallowance or limitation of the Successor First Lien Agent's claims against the Guarantors is premature.  Likewise, any determination of the amount of the Successor First Lien Agent's claim is premature until any adversary proceedings have been resolved.

## VII.    THE TCEH JUNIOR CREDITORS SHOULD NOT BE GRANTED STANDING TO BRING CLAIMS FOR THE AVOIDANCE OF ALLEGED UNPERFECTED LIENS BECAUSE THEY HAVE FAILED TO IDENTIFY THE LIENS THEY SEEK TO AVOID.

59.    This Court should not confer standing on the TCEH Junior Creditors to pursue a claim for the avoidance of alleged unperfected liens and security interests (Count XVIII) because the TCEH Junior Creditors have not stated a colorable claim.

60.    Under even the liberal pleading standards of Rule 8 of the Federal Rules of Civil Procedure, made applicable to adversary proceedings by Bankruptcy Rule 7008, the

TCEH Junior Creditors have not sufficiently alleged facts to support a plausible claim that there are liens or other security interests on the Collateral that were not perfected.  <u>See</u> <u>Pardo v. Avanti Corp. Health Sys., Inc. (In re APF Co.)</u>, 274 B.R. 634, 639 (Bankr. D. Del. 2001) (complaint "must set forth sufficient information to outline the elements of [the] claim or to permit inferences to be drawn that these elements exist") (internal quotations omitted).

61.    For example, the TCEH Junior Creditors attach exhibits to the Complaint setting forth specific items of Collateral for which they admit the relevant lien and or/security interest *has been* perfected (<u>see</u> Schedule 2: Schedule of As-Extracted Collateral; Schedule 3: Schedule of Perfected Real Property Interests).  Yet nowhere in the Complaint do the TCEH Junior Creditors identify the specific liens or security interests they are seeking to avoid as *not having been* perfected.  Compl. ¶¶ 270-295.  Instead, the TCEH Junior Creditors conclusorily state that the liens and security interests associated with any property not listed on Schedule 2 or Schedule 3 were not perfected.  Compl. ¶¶ 279, 282, 286, 290.

62.    This bare bones pleading fails to put the Successor First Lien Agent on adequate notice of the specific liens and security interests, if any, that the TCEH Junior Creditors are claiming were unperfected and are seeking to avoid.  Instead, the Successor First Lien Agent is left to guess as to the liens and security interests that are the subject of the claim.  Such a pleading is insufficient to state a claim under Rule 8.  <u>See</u> <u>Pardo</u>, 274 B.R. at 639-40 ("Although liberal, the pleading requirements of the Federal Rules are not intended to reduce a defendant to guesswork and conjecture.").

63.    Accordingly, because the TCEH Junior Creditors have failed to put the Successor First Lien Agent on notice of the liens and security interests they allege were not perfected, Count XVIII seeking to avoid such liens and security interests is not colorable.  <u>See</u>,

e.g., Official Comm. of Unsecured Creditors of Teleglobe Commc'ns Corp. v. Pac. Bell Tel. Co. (In re Teleglobe Commc'ns Corp.), Adv. No. 04-55062 (PBL), 2004 Bankr. LEXIS 2166 (Bankr. D. Del. Nov. 18, 2004) (dismissing avoidance claim where the complaint failed to allege the debtor entity or entities which made the particular allegedly preferential transfers).

## VIII.   THE TCEH JUNIOR CREDITORS SHOULD NOT BE GRANTED STANDING TO PROSECUTE THEIR REMAINING CLAIMS.

64.     The remaining counts for which the TCEH Junior Creditors seek standing, including claims for declaratory and other relief, are essentially a sideshow to the primary relief they seek -- the avoidance of the TCEH First Lien Debt -- and the Court should not grant the TCEH Junior Creditors standing to pursue these claims.  See Ad Hoc Comm. Obj. ¶¶ 101-113.[11] As set forth below, the proposed declaratory judgment claims, in particular, fail on the grounds of ripeness and justiciability, and the TCEH Junior Creditors have failed to demonstrate they are entitled to derivative standing to bring any claims that are not implicated by the Stipulations in the Cash Collateral Order.

### A.     The TCEH Junior Creditors' Declaratory Judgment Claims Are Not Ripe for Resolution And Are Not Justiciable.

65.     The TCEH Junior Creditors' claims for various declaratory judgments are not colorable because they are not ripe for resolution and call for advisory opinions, and thus, the TCEH Junior Creditors should not be granted standing to prosecute them.

66.     The Third Circuit has found the declaratory judgment remedy to be "limited to cases and controversies in the constitutional sense."  Wyatt, Virgin Is., Inc. v. Gov't of the Virgin Is., 385 F.3d 801, 805 (3d Cir. 2004).  The controversy must be "definite and

---

[11]     These claims include the TCEH Junior Creditors' declaratory judgment claims (Counts XIV-XVII and XIX-XXII) as well as the TCEH Junior Creditors' other claims seeking miscellaneous relief (Counts IX-XII).

concrete, touching the legal relations of parties having adverse legal interests." Aetna Life Ins.

Co. of Hartford, Conn. v. Haworth, 300 U.S. 227, 240-41 (1937).

67.    In addition, the controversy must be "real and substantial" as opposed to

"advising what the law would be upon a hypothetical state of facts." Id. Thus, in order for a

court to provide declaratory relief, a controversy must be ripe for judicial intervention such that it

is not "nebulous or contingent" but has taken on a "fixed and final shape so that a court can see

what legal issues it is deciding, what effect its decision will have on the adversaries, and some

useful purpose to be achieved in deciding them." Wyatt, 385 F.3d at 806 (citing Public Serv.

Comm'n of Utah v. Wycoff Co., Inc., 344 U.S. 237, 244 (1952)).

68.    A number of the proposed declaratory judgment claims in the Complaint

turn on contingent future events and are therefore not ripe for declaratory judgment. See Wyatt,

385 F.3d at 806 ("A dispute is not ripe for judicial determination if it rests on contingent future

events that may not occur as anticipated, or indeed may not occur at all") (internal quotations and

citations omitted); Step-Saver Data Sys., Inc. v. Wyse Tech., 912 F.2d 643, 649 (3rd Cir. 1990)

("Any contest must be based on a real and substantial controversy admitting to specific relief

through a decree of a conclusive character, as distinguished from an opinion advising what the

law would be upon hypothetical state of facts.") (internal quotation omitted); In re TWA, Inc.,

169 B.R. 91, 95 (Bankr. D. Del. 1994) ("[I]n determining the conclusivity a declaratory

judgment would have upon the legal relationship between the parties, the fact that the order

would apply only if certain events or conditions arise, eventualities which may never happen,

weighs in favor of finding the issue non-justiciable.").

69.    For example, Count XX seeks a declaration that the Defendants are not

entitled to post-petition interest and fees unless they are determined to be oversecured. While

this count is an accurate statement of the law, it is not ripe for a declaratory judgment claim. This Court will necessarily determine the value of the Collateral securing the TCEH First Lien Debt in the context of plan confirmation.  Until that future determination is made, however, the TCEH Junior Creditors are seeking an improper advisory opinion of law.

70.    Similarly, Count XIX seeks a declaratory judgment that there has been no diminution in value of the Collateral securing the TCEH First Lien Debt during the pendency of these chapter 11 cases and that the use of the Cash Collateral will not result in a diminution in value of the Collateral.  But it is impossible to know at this time what the value of the Collateral will be when a plan of reorganization is confirmed.

71.    Although the TCEH Junior Creditors attempt to couch these claims as factual disputes, the reality is they are asking this Court to render advisory opinions of law and make other determinations based on facts that are impossible to know at this time and will necessarily be a part of this Court's determinations at the time of plan confirmation. Accordingly, the declaratory judgment claims are not justiciable.  See, e.g., In re TWA, 169 B.R. at 95 (finding declaratory judgment inappropriate at a time when it was not possible for the court to "know or divine" information relevant to legal determination sought).

**B.    The TCEH Junior Creditors Should Not Be Granted Standing to Bring Claims that Do Not Implicate the TCEH Debtors' Stipulations in the Cash Collateral Order.**

72.    Even if the TCEH Junior Creditors are granted derivative standing to pursue claims challenging the validity and amount of the TCEH First Lien Debt, the TCEH Junior Creditors have failed to demonstrate they are entitled to prosecute claims such as those in Counts XIX, XX and XXI of the Complaint that do not implicate the TCEH Debtors' Stipulations in the Cash Collateral Order.

73.    To satisfy their burden that demand on the TCEH Debtors to pursue claims against the TCEH First Lien Creditors would have been futile, the TCEH Junior Creditors rely solely on allegations that the TCEH Debtors will not pursue certain claims because they are bound by certain Stipulations in the Cash Collateral Order.  See TCEH Comm. Mot. at 71-72; Ad Hoc Mot. at 12-14.  The Stipulations made by the TCEH Debtors, however, were limited to, among other things, the amount of the claims asserted by the TCEH First Lien Creditors against the TCEH Debtors' estates, the TCEH Debtors' agreement not to assert defenses to such claims such as avoidance actions or setoff, the perfection of the liens and security interests on the Collateral securing the TCEH First Lien Debt and the satisfaction of certain conditions in the agreements governing the TCEH First Lien Debt.  Cash Collateral Order ¶ F.

74.    Notably, the TCEH Debtors did not stipulate that the Collateral was diminishing in value post-petition or to a specific characterization of the adequate protection payments received by the TCEH First Lien Creditors for their fees, costs and other expenses in these cases.  To the contrary, the TCEH Debtors expressly reserved their rights to challenge whether there has been a diminution in value of the Collateral (Cash Collateral Order ¶ G), and the TCEH Junior Creditors themselves acknowledge in the Complaint that the TCEH Debtors' right to recharacterize adequate protection payments was expressly preserved (e.g., Compl. ¶ 193).

75.    The TCEH Junior Creditors have proffered no reason why the TCEH Debtors, not having stipulated away any of their rights with respect to the value of the Collateral or the characterization of adequate protection payments, would refuse to exercise such rights, if applicable, at the appropriate time of Plan confirmation.  Accordingly, this Court should not

grant standing to the TCEH Junior Creditors to prosecute the claims in the Complaint that do not implicate the TCEH Debtors' Stipulations.

### **RIGHTS RESERVATION**

76.     In the event the Court grants any of the Standing Motions, in whole or in part, the Successor First Lien Agent reserves all of its rights in connection with any resulting challenge or adversary proceeding, including, without limitation, all claims, defenses and arguments, whether or not raised in this Objection.

## CONCLUSION

77.     For the foregoing reasons, the Successor First Lien Agent requests that

this Court deny the relief requested in the Standing Motions in their entirety and grant such

other, further and different relief as this Court deems just and proper.

Dated: March 3, 2015
        Wilmington, Delaware


By: */s/ Michael D. DeBaecke*_____
**BLANK ROME LLP**
Michael D. DeBaecke (No. 3186)
Stanley B. Tarr (No. 5535)
1201 N. Market Street, Suite800
Wilmington, DE  19801
Telephone:  (302) 425-6400
Facsimile:  (302) 425 6464

and

**SEWARD & KISSEL LLP**
John R. Ashmead (admitted *pro hac vice*)
Mark D. Kotwick (admitted *pro hac vice*)
Thomas Ross Hooper
One Battery Park Plaza
New York, NY  10004
Telephone:  (212) 574-1200
Facsimile:  (212) 480-8421

*Counsel to Wilmington Trust, N.A., as Successor
    TCEH First Lien Administrative Agent and
    Successor TCEH First Lien Collateral Agent*