## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re | ) | Chapter 11 |
| | ) | |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) | Case No. 14-10979 (CSS) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | **Hearing Date: March 10, 2015 at 9:30 a.m.** |
| | ) | **Objection Deadline: March 3, 2015 at 4:00 p.m.** |
| | ) | **Re: Docket No. 3605** |

**OBJECTION OF THE AD HOC GROUP OF TCEH UNSECURED NOTEHOLDERS TO
THE MOTION OF THE EFH OFFICIAL COMMITTEE FOR ENTRY OF AN ORDER
GRANTING DERIVATIVE STANDING AND AUTHORITY TO PROSECUTE AND
SETTLE CLAIMS ON BEHALF OF THE LUMINANT DEBTORS' ESTATES**

The ad hoc group of certain holders (the "Ad Hoc Group") of approximately $2.7

billion of 10.25% Fixed Senior Notes due 2015 (including Series B) and 10.50%/11.25% Senior

Toggle Notes due 2016 issued by Texas Competitive Electric Holdings Company LLC

("TCEH") and TCEH Finance, Inc., by and through its undersigned counsel, hereby files its

objection to the Motion of the EFH Official Committee for Entry of an Order Granting

Derivative Standing and Authority to Prosecute and Settle Claims on Behalf of the Luminant

Debtors' Estates [Docket No. 3605] (the "EFH Standing Motion").[2]  In support of this objection,

the Ad Hoc Group respectfully represents as follows:

### PRELIMINARY STATEMENT

1.      By the EFH Standing Motion, the official committee of unsecured

creditors of Energy Future Holdings Corp. ("EFH"), Energy Future Intermediate Holding

---

[1]      The last four digits of Energy Future Holdings Corp.'s federal tax identification number are 8810.  The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201.  Due to the large number of debtors in these chapter 11 cases, for which the debtors have requested joint administration, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

[2]      Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the EFH Standing Motion.

Company LLC ("EFIH"), EFIH Finance, Inc., and EECI, Inc. (the "EFH Committee") seeks

entry of an order granting it exclusive derivative standing to assert, prosecute, litigate, negotiate,

and, if appropriate and subject to Court approval, settle certain prepetition claims or causes of

action of the Luminant Debtors[3] against a host of third-parties, including present and former

holders of funded debt claims against the TCEH Debtors (as defined below).  The Court should

deny the EFH Standing Motion.

## OBJECTION

2.        By the Motion, the EFH Committee seeks to commence an adversary

proceeding against certain current and former holders (the "TCEH LBO Creditors") of funded

debt claims against Energy Future Competitive Holdings Company LLC ("EFCH"), TCEH, and

their direct and indirect subsidiaries that are Debtors in these chapter 11 cases (together with

EFCH and TCEH, the "TCEH Debtors") arising from TCEH's First Lien Credit Agreement,

First Lien Notes, Second Lien Notes, and Unsecured Notes (collectively, the "TCEH LBO

Debt").  See EFH Standing Motion at 3, 13.

3.        The alleged claims and causes of action for which the EFH Committee

seeks derivative standing are described as avoidance claims of one or more of the Luminant

Debtors under sections 544, 548 and 550 of the United States Bankruptcy Code, 11 U.S.C.

§§ 101, et seq. (the "Bankruptcy Code"), and applicable state fraudulent transfer or conveyance

law.  Specifically, the EFH Committee seeks to recover over $8 billion of interest payments, fees

and expenses paid to past and in some, but not all, instances current holders of the TCEH LBO

Debt, and to avoid any related liens or obligations incurred by the Luminant Debtors after the

---

[3]        The Luminant Debtors are comprised of three of the seventy-one Debtors in these chapter 11 cases: Luminant Generation Company LLC, Luminant Renewables Company LLC, and Valley NG Power Company LLC. See Declaration of Paul Keglevic, Executive Vice President, Chief Financial Officer, and Co-Chief Restructuring Officer of Energy Future Holdings Corp., et al., in Support of First Day Motions [Docket No. 98], Ex. C.

2007 LBO (collectively, the "Alleged Claims").  See EFH Standing Motion at 3, 15-16.

Although the EFH Committee elected not to file a proposed form of complaint setting forth its

specific averments, the allegations underpinning the Alleged Claims appear to include that the

Luminant Debtors, along with other of the TCEH Debtors, (i) were rendered insolvent by, and

remained insolvent after, the 2007 LBO (see id. at 4-7); (ii) transferred to TCEH or, at TCEH's

direction, transferred to the TCEH LBO Creditors, some or all of the monies used to pay the

TCEH Debt Service (see id. at 9-10); (iii) received none of the proceeds of, or any other form of

benefit from, the TCEH LBO Debt in exchange for granting the Subsidiary Guarantees (see id. at

7); (iv) are liable for only a portion, if any, of the TCEH LBO Debt due to the "limited" nature of

the Limited Guarantees and the Luminant Debtors' insolvency (see id. at 9); and (v) received no

value in exchange for up-streaming cash to TCEH to fund the portion of the TCEH Debt Service

for which the Luminant Debtors were not liable (see id. at 11).

4.    All of the Alleged Claims indisputably belong to the estate(s) of one (or

more) of the Luminant Debtors as the alleged transferor(s) of the monies sought to be recovered.

See id. at 9-10 ("TCEH paid or caused the Luminant Debtors to pay at least $8 billion with

respect to debt service, fees, expenses and other amounts on the TCEH LBO Debt . . . .").  In

seeking exclusive derivative standing to pursue the Alleged Claims on behalf of the Luminant

Debtors, the EFH Committee seeks to avail itself of EFH's purported status as a creditor of

Luminant Generation Company LLC in order to obtain standing.  See id. at 12, 12 n.20, 19

("With the Luminant Debtors and EFH (as creditor) sidelined . . . .").[4]

---

[4]    The EFH Committee has not identified with specificity any claims EFH holds or purports to hold against the Luminant Debtors other than Luminant Generation Company LLC.  See id. at 12, 12 n.20.  The Ad Hoc Group reserves all rights to challenge any claims against the Luminant Debtors later identified and the purported claim of EFH against Luminant Generation Company LLC specifically described in the EFH Standing Motion.

**A.      The EFH Committee Should Not Be Granted Derivative Standing To Pursue Any Causes Of Action Belonging To The Luminant Debtors' Estates**

5.      Other than certain enumerated acts, a committee appointed under section 1102 of the Bankruptcy Code may perform only those services that further the interest of those they are appointed to represent.  See 11 U.S.C. § 1103(c) ("A committee appointed under section 1102 of this title may . . . (5) perform such other services as are in the interest of those represented.") (emphasis added).[5]  The EFH Committee was not appointed to represent creditors of the Luminant Debtors.  Therefore, the EFH Committee, acting in its individual capacity, could not maintain derivative claims on the Luminant Debtors' behalf.  In order to overcome this impediment, the EFH Committee asserts that it may bring claims on behalf of the Luminant Debtors' estates through a theory of "double derivative" standing.  Implicitly, the EFH Committee is asserting that it may do so by, first, obtaining standing to pursue claims on behalf of EFH—a purported creditor of the Luminant Debtors—and, second, while acting in its derivative capacity on behalf of EFH, seeking a second level of derivative standing to pursue estate causes of action on the Luminant Debtors' behalf.

6.      The EFH Committee should be permitted to do neither.  First, the EFH Committee has not made a demand upon EFH to pursue EFH's purported claims against the Luminant Debtors, which is a prerequisite to seeking standing to pursue the Alleged Claims belonging to the Luminant Debtors' estates.  Second, it is unclear if EFH itself has any claims against the Luminant Debtors that the EFH Committee could seek to collect by seeking standing to pursue the Alleged Claims.  And, third, "double derivative" standing of the type sought by the EFH Committee is in any event legally impermissible and cannot be granted by the Court.

---

[5]      The acts enumerated in subsections (1) through (4) of section 1103(c) of the Bankruptcy Code include consultation, investigation, participation in the formulation of a plan, advising those represented with respect to any plan formulated, collecting and filing with the Court acceptances and rejections of a plan, and requesting the appointment of a trustee or examiner.  See id. at § 1103(c)(1)-(4).

**1.      The EFH Committee Has Not Sought Derivative Standing
To Collect EFH's Claims, If Any, Against The Luminant Debtors**

7.      Although the EFH Committee seeks to stand in the shoes of EFH as creditor of the Luminant Debtors for purposes of collecting on EFH's purported claims against the Luminant Debtors, the EFH Committee has not sought derivative standing to pursue such claims on behalf of EFH's estate.  Part and parcel of that failure, the EFH Committee has made no demand upon EFH with respect to EFH's purported claims against the Luminant Debtors. Nowhere in the EFH Standing Motion does the EFH Committee allege that it has requested authority from EFH to seek to collect EFH's purported claims against the Luminant Debtors through the pursuit of the Alleged Claims or otherwise.

8.      Instead, the EFH Committee simply bypasses that requirement by seeking "double derivative" standing to pursue the Alleged Claims on behalf of the Luminant Debtors' estates.  It does so on the basis that EFH is bound by the TCEH Debtor Stipulations, and thus, cannot pursue the Alleged Claims.  Even if that were sufficient, which it is not, as discussed in greater detail below, the TCEH Debtor Stipulations only relate to the TCEH prepetition first lien creditors.  Further, EFH has not declined to pursue collection of its purported claims against the Luminant Debtors.  Accordingly, as to the required first level of derivative standing, it is not sufficient for the EFH Committee to point to the TCEH Debtor Stipulations—that in no way apply to EFH's purported claims against the Luminant Debtors—as rendering any demand for standing vis-à-vis EFH futile.  Cf. See Official Comm. of Unsecured Creditors of Nat'l Forge Co. v. E. Roger Clark (In re Nat'l Forge Co.), 326 B.R. 532, 545 (W.D. Pa. 2005) (deciding that formal demand was not required where the debtor waived its right to contest bank's claims, and thus, responsibility to investigate and challenge bank's claims clearly passed to committee).  As a prerequisite to any request for derivative standing to pursue to the Alleged Claims belonging to

the Luminant Debtors, standing to step into EFH's shoes as a creditor of the Luminant Debtors

should have already been obtained.

**2.    EFH's Status As A Creditor Of One Luminant
Debtor Is At Best Unclear And Likely Subject to Dispute**

9.    Even if the Court were willing to forego the requirement that a demand be

made of EFH before the EFH Committee steps into its shoes as a creditor of the Luminant

Debtors, it is unclear whether EFH itself is a creditor of the Luminant Debtors, and thus, EFH (or

anyone acting through EFH) could be granted derivative standing to bring the Alleged Claims on

behalf of the Luminant Debtors.  With respect to EFH's claims, The EFH Committee points to

(i) EFH's "prepetition unsecured claim against [Luminant Generation Company LLC] in an

amount of at least $500,000,000" pursuant to the Debtors' competitive tax allocation agreement

(the "Competitive TAA") and "applicable law," and (ii) "substantial" administrative claims that

EFH "may have" against the Luminant Debtors for taxes incurred in connection with the

administration of the Luminant Debtors' estates, as evidence of EFH's status as a creditor of the

Luminant Debtors.  See EFH Standing Motion at 12.  As an initial matter, EFH has a contingent

claim asserted solely against Luminant Generation Company LLC, not the several "Luminant

Debtors."  The EFH Committee thus seeks authority to assert claims that belong to multiple

Debtors, including TCEH, on behalf of only one Debtor in the consolidated group.  The EFH

Committee offers nothing to address practical issues with respect to pursuing such claims where

other parties are indisputably better suited to do so.  In any event, it is not even clear that EFH

has a valid claim against Luminant Generation Company LLC.  As the Debtors have admitted,

the claims scheduled by the Debtors as arising in connection with tax allocations pursuant to the

Competitive TAA remain under consideration and ongoing review.  At the hearing held on July

18, 2014, counsel for the Debtors noted that the Debtors had received multiple inquiries

regarding their scheduled intercompany claims, including with respect to the $1.29 billion claim by EFH against Luminant Generation Company LLC.  <u>See</u> July 18, 2014 Hr'g Tr. at 27:8 – 16.  Debtors' counsel then stated that "the debtors are evaluating a potential amendment or clarification to the [schedules] to evaluate the inquiries we've received to date, and we will update the Court and all parties once that determination has been reached."  <u>Id.</u> at 27:17 – 24.

10.     Moreover, on September 26, 2014, EFH filed amended schedules and restated global notes (the "Amended and Restated Global Notes") with the Court in connection with its filing of amended schedules.  <u>See</u> Notice of Amendments to Statement of Financial Affairs and Schedules of Assets and Liabilities for Debtor Energy Future Holdings Corp. (Case No. 14-10979) [Docket No. 2146], Ex. 1.  In the section of the Amended and Restated Global Notes regarding "Tax Claims," EFH indicated that "[e]ach Debtor is analyzing its assets and liabilities under the [Competitive] TAA and considering all of its rights and remedies with respect thereto, including, without limitation, matters relating to the interpretation and enforceability of the [Competitive] TAA.  One or more of the Debtors may revise, modify, correct, and/or supplement its schedules on its ongoing analysis."  <u>Id.</u> at ¶ 10.  To date, the Debtors have not informed this Court or any other parties that it has reached any determination with respect to EFH's purported claim against Luminant Generation Company LLC.[6]  As such, whether EFH's purported claim against Luminant Generation Company LLC will survive the Debtors' continuing scrutiny remains unclear.  Likewise, whether the Competitive TAA and all

---

[6]     On February 18, 2015, EFH filed amended schedules listing an accounts receivable asset of $1.29 billion due from Luminant Generation Company LLC arising from a "[t]ax allocation matter."  <u>See</u> Notice of Amendments to Schedules of Assets and Liabilities for Debtor Energy Future Holdings Corp. (Case No. 14-10979) [Docket No. 3586], Ex. 1.  EFH later withdrew those amended schedules on February 23, 2015.  <u>See</u> Notice of Withdrawal of Notice of Amendments to Schedules of Assets and Liabilities of Debtor Energy Future Holdings Corp. (Case No. 14-10979) [Docket No. 3624].

obligations incurred pursuant thereto by the TCEH Debtors are enforceable or avoidable remains to be determined.

11.     Similarly, whether EFH has any postpetition administrative claims against the Luminant Debtors remains to be seen, as the EFH Committee admits.  See EFH Standing Motion at 12 ("EFH may have substantial administrative claims . . . .") (emphasis added).  No administrative claims have been formally or informally asserted by EFH against the Luminant Debtors.

12.     Based on the foregoing, the Luminant Debtors' liabilities, if any, to EFH can best be described as uncertain and likely disputed.  If it is ultimately determined that EFH has no claims against the Luminant Debtors, the EFH Committee—attempting to stand in the "creditor" shoes of EFH—will have had no basis upon which to seek standing to assert the Alleged Claims.

**3.     The EFH Committee Cannot Utilize EFH's Status As A Purported Party In Interest In The Luminant Debtors' Cases As A Substitute For Its Own**

13.     Even if the Court (i) is inclined to dispense with the requirement that the EFH Committee first make a demand of EFH, (ii) ignores that no demand has been made of the Luminant Debtors to bring the Alleged Claims against the holders of the Second Lien Notes and Unsecured Notes, and (iii) overlooks the uncertain and disputed nature of EFH's purported claims against the Luminant Debtors, it still should not grant the relief sought by the EFH Committee.  "Double derivative" standing is legally impermissible.  A creditor seeking standing to pursue estate causes of action must be a party in interest within the meaning of section 1109(b) of the Bankruptcy Code with respect to the debtor whose claims it seeks standing to bring.  See In re Lifeco Inv. Grp., Inc., 173 B.R. 478, 487 (Bankr. D. Del. 1994) ("I find no statutory or judicial support to conclude that a creditor of a creditor has standing in a bankruptcy

case.  Indeed, numerous cases state the contrary." (collecting cases)); see also In re Copperfield

Invs., LLC, 421 B.R. 604, 610-11 (Bankr. E.D.N.Y. 2010) (holding that equity holder who

would not receive distribution under confirmed chapter 11 plan lacked standing under section

1109(b) of the Bankruptcy Code to seek authority to litigate claims on behalf of the estate).  It is

not sufficient to be merely a creditor of a party in interest with respect to the debtor holding

claims it seeks standing to bring.  See, e.g., In re New Century TRS Holdings, Inc., 505 B.R.

431, 440 (Bankr. D. Del. 2014) (holding that party that was "not a creditor of the Debtors"

lacked standing to prosecute avoidance claims); In re Refco Inc., 503 F.3d 109, 117 n.10 (noting

that party in interest standing under section 1109(b) of the Bankruptcy Code "does not arise if a

party seeks to assert some right that is purely derivative of another party's right in the bankruptcy

proceeding"); In re Lehman Bros. Holdings Inc., No. 11 Civ. 3760 (RJS), 2012 WL 1057952, at

*6 (S.D.N.Y. Mar. 26, 2012) (stating that "a creditor once removed does not have party in

interest standing").

        14.     Although the EFH Committee pays lip service to the requirement that it

have party in interest status to be granted derivative standing, it conflates its party in interest

status with respect to the estates at which it was appointed (i.e., EFH, EFIH, EFIH Finance, Inc.,

and EECI, Inc.) with party in interest status vis-à-vis the estates of the Luminant Debtors.  See

EFH Standing Motion at 13-14 (suggesting that just by virtue of its status as a committee, the

EFH Committee is a party in interest that can be granted derivative standing with respect to any

Debtor's estate); Second Amended Notice of Appointment of Committee of Unsecured Creditors

[Docket No. 3403] at 1 ("This official committee of unsecured creditors is composed of creditors

of [EFH], [EFIH], EFIH Finance, Inc., and EECI, Inc.  This committee represents the interests of

the unsecured creditors of the aforementioned debtors and no others.") (emphasis added).

15.    Furthermore, the cases cited by the EFH Committee as supporting the relief it seeks do not support disregarding the party in interest requirement.  For example, in Infinity Invs. Ltd. v. Kingsborough (In re Yes! Entm't Corp.), the district court reversed a bankruptcy court decision denying derivative standing, thereby allowing a creditor to prosecute an adversary proceeding on behalf of a debtor estate in which it had a direct interest. 316 B.R. 141, 146 (Bankr. D. Del. 2004).  Likewise, in In re Centaur, LLC, the court merely granted an official committee of unsecured creditors standing to prosecute claims on behalf of the debtors at which committee members held direct claims.  No. 10-10799 (KJC), 2010 WL 4629410, at *7 (Bankr. D. Del. Nov. 5, 2010).  In fact, in the only other example cited by the EFH Committee, the court dismissed an avoidance action, finding that "[n]o support was given of an instance upon which the ability to grant derivative standing extends as far as Plaintiffs have asked this court to go—namely to a non-creditor . . . ." Eckbold v. Miller (In re Redden), No. 12-51012 (PJW), 2013 WL 5436365, at *3 (Bankr. D. Del. Sept. 30, 2013).  The same is true here.  The EFH Committee does not represent creditors of the Luminant Debtors, is not a party in interest with respect to the Luminant Debtors, and cannot be granted standing to pursue estate causes of action belonging to the Luminant Debtors.

16.    Indeed, the EFH Committee fails to cite a single case supporting its assertion that a creditor of a creditor (or a committee representing creditors of a creditor) of a particular debtor has standing to either seek derivative standing or, if granted, prosecute avoidance claims on behalf of such debtor.  There is no basis for expanding the limitation on derivative standing here.  The EFH Committee and the creditors it represents do not have a direct financial stake in the outcome of the litigation the EFH Committee seeks to commence, and the creditors it represents would benefit from such litigation, if at all, only by virtue of their claims at

EFH (assuming EFH has any claims against the Luminant Debtors, which is uncertain and subject to dispute, as discussed above).  This indirect interest is insufficient to render the EFH Committee a party in interest in the Luminant Debtors' cases, and again, the EFH Committee cannot be granted standing to bring the Luminant Debtors' purported causes of action.

17.    In the absence of any authority, the EFH Committee attempts to evade the requirement that it have standing at the Luminant Debtors' estates by arguing that the TCEH Committee is incapable of prosecuting the Alleged Claims due to purported conflicts of interest. Whether the TCEH Committee is conflicted, which it is not, is irrelevant.[7]  As discussed below, at least with respect to the Alleged Claims against the holders of the Second Lien Notes and Unsecured Notes, the Luminant Debtors retain the right, and have not refused, to bring the Alleged Claims.  Accordingly, the fact that the indenture trustees for the Second Lien Notes and Unsecured Notes are members of the TCEH Committee is of no bearing.

18.    Simply put, "double derivative" standing is impermissible and, even if it was permissible, it is not clear that the purported claims of EFH against the Luminant Debtors could support such standing because those claims are uncertain and disputed and no demands have been made by the EFH Committee upon EFH to pursue those purported claims or upon the Luminant Debtors to pursue the Alleged Claims.  The EFH Standing Motion must, therefore, be denied.

---

[7]     As a fiduciary for all unsecured creditors of the TCEH Debtors and not just the unsecured creditors of the three Luminant Debtors (see Notice of Appointment of Committee of Unsecured Creditors [Docket No. 420] at 1), it is possible that the TCEH Committee would consider and, in the interest of the universe of its stakeholders, decide not to pursue the Alleged Claims.

**B.** **The EFH Committee Is Not Able To Bring The Alleged Claims Against The Holders Of The Second Lien Notes And Unsecured Notes Because Demand Has Not Been Made And Is Not Excused**

19.     Even if the Court were to grant standing to the EFH Committee to pursue

certain claims of Luminant Generation Company LLC, there is no basis to expand those claims

beyond the holders of TCEH prepetition first lien claims.

20.     Unlike with respect to the TCEH prepetition first lien creditors,[8] the

Debtors, including the Luminant Debtors, have <u>not</u> stipulated to (i) the validity, perfection,

priority or avoidability of the liens of creditors other than the TCEH prepetition first lien

creditors (<u>e.g.</u>, the holders of the Second Lien Notes) or (ii) the validity or avoidability of the

obligations owed by the TCEH Debtors to creditors other than the TCEH prepetition first lien

creditors (e.g., the holders of the Second Lien Notes and Unsecured Notes).  The EFH

Committee acknowledges as much—with respect to the Luminant Debtors—in the EFH

Standing Motion.  <u>See id.</u> at 18 ("The Luminant Debtors are not clearly prohibited from asserting

the [Alleged Claims] with respect to the Second Lien Notes and Unsecured Notes.")  Nor is the

expiration of the Challenge Period (as defined below) relevant to the Alleged Claims against the

holders of the Second Lien Notes and Unsecured Notes.[9]  Accordingly, it would appear that the

---

[8]         Pursuant to the their stipulations in the Final Order (A) Authorizing Use of Cash Collateral for Texas Competitive Electric Holdings Company LLC and Certain of Its Debtor Affiliates, (B) Granting Adequate Protection, and (C) Modifying the Automatic Stay [Docket No. 855] (the "Final Cash Collateral Order"), the TCEH Debtors acknowledge and agree, among other things, that (i) the Prepetition First Priority Liens (as defined in the Final Cash Collateral Order) are valid, binding, enforceable, non-avoidable and properly perfected liens and security interests in certain prepetition collateral; (ii) the Prepetition First Lien Obligations (as defined in the Final Cash Collateral Order) constitute legal, valid, binding and non-avoidable obligations of the TCEH Debtors and (iii) no offsets, challenges, objections, defenses, claims or counterclaims to any of the Prepetition First Priority Liens or Prepetition First Lien Obligations exist, and no portion of the Prepetition First Priority Liens or Prepetition First Lien Obligations is subject to any challenge or defense.  <u>See</u> Final Cash Collateral Order ¶ F(iv).

[9]         Paragraph 15 of the Final Cash Collateral Order provides that the stipulations and admissions of the TCEH Debtors shall be binding upon all parties in interest unless the TCEH Committee or a party in interest with standing granted by the Court files a contested matter (a "Challenge") to avoid, object to or challenge such stipulations by a certain deadline (the "Challenge Period Termination Date," and the period leading up thereto, the "Challenge Period").  <u>Id.</u> at ¶ 15.  If no Challenge is filed by the Challenge Period Termination Date, the Final Cash Collateral Order states that (i) the Prepetition First Priority Liens shall be deemed to have been, as of the Petition Date, "legal,

only reason the EFH Committee has sought standing to pursue the Alleged Claims against the holders of the Second Lien Notes and Unsecured Notes at this time and arguably prematurely is to exert leverage on the junior creditors of the TCEH Debtors in plan negotiations.

21.    Because the TCEH Debtor Stipulations do not apply to the Second Lien Notes and Unsecured Notes, there is no basis for the EFH Committee to assert that it is excused from making demand upon the Luminant Debtors to bring the Alleged Claims against holders of the Second Lien Notes and Unsecured Notes (or, as discussed below, upon EFH to seek derivative standing to bring the Alleged Claims against the holders of the Second Lien Notes and Unsecured Notes).[10]

22.    Notwithstanding that, the EFH Committee has neither alleged that such a demand was made nor cited to anything in the record that makes plain that "no action on the part [the Luminant Debtors] would be forthcoming."  See In re Nat'l Forge Co., 326 B.R. at 544 (citations omitted).  Instead, the EFH Committee merely alleges that it "has discussed the Luminant Avoidance Actions with the Debtors, and has been informed that the Luminant Debtors do not intend to pursue any of the [Alleged Claims], regardless of the scope of the TCEH Debtor Stipulations."  Id. at 18 (emphasis added).[11]  This statement falls short of demonstrating that the Luminant Debtors have unjustifiably or unreasonably refused to bring the Alleged Claims.  See In re Yes! Entm't Corp., 316 B.R. at 145 (stating that entitlement to

---

valid, binding and perfected" and "not subject to recharacterization, subordination or avoidance" and (ii) the stipulations as to the priority, extent and validity of such claims, liens and interests shall be "of full force and effect and forever binding" upon the TCEH Debtors, their estates and all other parties in interest.  Id.

[10]    By contrast, the EFH Committee acknowledges that the TCEH Debtor Stipulations and the Challenge Period Termination Deadline operate to preclude EFH from seeking to bring any Debtors' estate causes of action against the TCEH prepetition first lien creditors.  See EFH Standing Motion at 2 ("For their own reasons, the TCEH Debtors entered into stipulations that effectively prevent the Luminant Debtors or EFH from challenging the amount of the Limited Guarantees.") (emphasis added); 12 ("The TCEH Debtor Stipulations are binding upon the TCEH Debtors, their affiliates and any of their respective successors.") (emphasis added) (citing Final Cash Collateral Order ¶ 15).

[11]    Similarly, the EFH Committee has merely "discussed [the EFH Standing Motion] with the TCEH Committee."  EFH Standing Motion at 3.

derivative standing requires, among other things, that the trustee unjustifiably refused to pursue

the claim).  In the absence of evidence of a demand upon, and unjustifiable or unreasonable

refusal by, the Luminant Debtors and, in particular, the TCEH Debtors' independent director, the

EFH Committee should not be permitted to bring the Alleged Claims belonging to the Luminant

Debtors against the holders of the Second Lien Notes and Unsecured Notes.  See In re Nat'l

Forge Co., 326 B.R. at 545 (describing circumstances of the case that justified the lower court's

conclusion that the debtors would have declined to pursue estate causes of action).

### RESERVATION OF RIGHTS

23.    The Ad Hoc Group and its members reserve the right to assert in any

proceeding with respect to the Alleged Claims or any objection based on section 502(d) of the

Bankruptcy Code to such members' (or any indenture trustee's) Unsecured Notes claims, that the

members of the Ad Hoc Group are not proper defendants therein, transferees (whether initial,

immediate or mediate) of the TCEH Debt Service, or subject to having their (or any indenture

trustee's) Unsecured Notes claims disallowed pursuant to section 502(d) of the Bankruptcy

Code.

### CONCLUSION

For the foregoing reasons, the EFH Standing Motion should be denied.


*[Remainder of page intentionally left blank]*

Dated:  March 3, 2015
        Wilmington, Delaware

                        FOX ROTHSCHILD LLP

            By:   */s/ Jeffrey M. Schlerf*
                  Jeffrey M. Schlerf (No. 3047)
                  John H. Strock (No. 4965)
                  L. John Bird (No. 5310)
                  919 North Market St., Suite 300
                  Wilmington, DE 19801
                  Telephone:  (302) 654-7444
                  Facsimile:  (302) 463-4971
                  jschlerf@foxrothschild.com
                  jstrock@foxrothschild.com
                  lbird@foxrothschild.com

                  and

                  WHITE & CASE LLP
                  Thomas E Lauria (admitted *pro hac vice*)
                  Matthew C. Brown (admitted *pro hac vice*)
                  Southeast Financial Center, Suite 4900
                  200 South Biscayne Blvd.
                  Miami, FL 33131
                  Telephone:  (305) 371-2700
                  Facsimile:  (305) 358-5744
                  tlauria@whitecase.com
                  mbrown@whitecase.com

                  J. Christopher Shore (admitted *pro hac vice*)
                  Gregory M. Starner (admitted *pro hac vice*)
                  1155 Avenue of the Americas
                  New York, NY 10036
                  Telephone:  (212) 819-8200
                  Facsimile:  (212) 354-8113
                  cshore@whitecase.com
                  gstarner@whitecase.com

                  *Counsel to the Ad Hoc Group of TCEH Unsecured Noteholders*