**<u>Exhibit B</u>**

**Articles of Merger of Dallas Power & Light Company, Texas Electric Service Company, Texas Power & Light Company with and into Texas Utilities Electric Company**

ARTICLES OF MERGER OF

DALLAS POWER & LIGHT COMPANY,

TEXAS ELECTRIC SERVICE COMPANY,

TEXAS POWER & LIGHT COMPANY

with and into

TEXAS UTILITIES ELECTRIC COMPANY

(Domestic Corporations)

FILED
In the Office of the
Secretary of State of Texas

JAN 0 1 1984

Clerk !!! - W
Corporations Section

Pursuant to the provisions of Article 5.04 of the Texas Business Corporation Act, the undersigned corporations adopt the following Articles of Merger for the purpose of merging certain of them into one of such corporations:

I.

The Reorganization Agreement and Plan of Merger attached hereto as Exhibit "A" was approved by the shareholders of each of the undersigned corporations in the manner prescribed by the Texas Business Corporation Act.

II.

As to each of the undersigned corporations, the number of shares outstanding and the designation and number of outstanding shares of each class entitled to vote as a class on such Reorganization Agreement and Plan of Merger, were as follows:

| NAME OF CORPORATION | NUMBER OF SHARES OUTSTANDING | | | ENTITLED TO VOTE AS A CLASS | |
|---|---|---|---|---|---|
| | Common | Preferred | Total | Designation of Class | Number of Shares |
| DALLAS POWER & LIGHT COMPANY | 15,000,000 | 1,044,430 | 16,044,430 | Preferred | 1,044,430 |

| | NUMBER OF SHARES | | | | |
|---|---|---|---|---|---|
| | | | Entitled to Vote as a Class | | |
| Total Voted For | Total Voted Against | | Class | Voted For | Voted Against |
| 15,744,963 | 41,972 | | Preferred | 746,663 | 40,272 |

| NAME OF CORPORATION | NUMBER OF SHARES OUTSTANDING | | | ENTITLED TO VOTE AS A CLASS | |
|---|---|---|---|---|---|
| TEXAS ELECTRIC SERVICE COMPANY | Common | Preferred | Total | Designation of Class | Number of Shares |
| | 30,300,000 | 2,105,000 | 32,405,000 | Preferred | 2,105,000 |

NUMBER OF SHARES

| | | Entitled to Vote as a Class | | |
|---|---|---|---|---|
| Total Voted For | Total Voted Against | Class | Voted For | Voted Against |
| 32,007,268 | 77,161 | Preferred | 2,707,268 | 77,161 |

| NAME OF CORPORATION | NUMBER OF SHARES OUTSTANDING | | | ENTITLED TO VOTE AS A CLASS | |
|---|---|---|---|---|---|
| TEXAS POWER & LIGHT COMPANY | Common | Preferred | Total | Designation of Class | Number of Shares |
| | 39,850,000 | 2,873,786 | 42,723,786 | Preferred | 2,873,786 |

NUMBER OF SHARES

| | | Entitled to Vote as a Class | | |
|---|---|---|---|---|
| Total Voted For | Total Voted Against | Class | Voted For | Voted Against |
| 41,993,384 | 7,179 | Preferred | 2,143,384 | 7,179 |

| NAME OF CORPORATION | NUMBER OF SHARES OUTSTANDING | | | ENTITLED TO VOTE AS A CLASS | |
|---|---|---|---|---|---|
| TEXAS UTILITIES ELECTRIC COMPANY | Common | Preferred | Total | Designation of Class | Number of Shares |
| | 1,700 | -0- | 1,700 | None | - |

NUMBER OF SHARES

| | | Entitled to Vote as a Class | | |
|---|---|---|---|---|
| Total Voted For | Total Voted Against | Class | Voted For | Voted Against |
| 1,700 | -0- | None | - | - |

Dated:   December 22, 1983

DALLAS POWER & LIGHT COMPANY

BY: _W. W. Aston_____

W. W. Aston, President

BY: _G.M. Hamilton, III_____

G.M.Hamilton,III,Secretary


TEXAS ELECTRIC SERVICE COMPANY

BY: _W.M.Marquardt_____

W. G. Marquardt, President

BY: _C. E. Layton_____

C. E. Layton, Secretary


TEXAS POWER & LIGHT COMPANY

BY: _R. K. Campbell_____

R. K. Campbell, President

BY: _C.V. McCarter_____

C/V. McCarter, Secretary


TEXAS UTILITIES ELECTRIC COMPANY

BY: _Erle Nye_____

Erle Nye, Executive Vice President

BY: _Peter B. Tinkham_____

Peter B. Tinkham, Secretary

THE STATE OF TEXAS  )
                    )
COUNTY OF DALLAS    )

    I, _Judy L. Moorman_ , a Notary Public, do hereby certify that on this 22nd day of December, 1983, personally appeared before me W. W. ASTON, who declared he is President of DALLAS POWER & LIGHT COMPANY, and G. M. HAMILTON, III, who declared he is Secretary of DALLAS POWER & LIGHT COMPANY, executing the foregoing document, and being first duly sworn, acknowledged that they signed the foregoing document in the capacity therein set forth and declared that the statements therein contained are true and correct.

    IN WITNESS WHEREOF, I have hereunto set my hand and seal the day and year before written.

                           _Judy L. Moorman_
                           Notary Public in and for the State
                           of Texas

My Commission expires:

_October 13, 1987_

 

THE STATE OF TEXAS  )
                    )
COUNTY OF DALLAS    )

    I, _Judy L. Moorman_ , a Notary Public, do hereby certify that on this 22nd day of December, 1983, personally appeared before me W. G. MARQUARDT, who declared he is President of TEXAS ELECTRIC SERVICE COMPANY, and C. E. LAYTON, who declared he is Secretary of TEXAS ELECTRIC SERVICE COMPANY, executing the foregoing document, and being first duly sworn, acknowledged that they signed the foregoing document in the capacity therein set forth and declared that the statements therein contained are true and correct.

    IN WITNESS WHEREOF, I have hereunto set my hand and seal the day and year before written.

                           _Judy L. Moorman_
                           Notary Public in and for the State
                           of Texas

My Commission expires:

_October 13, 1987_

THE STATE OF TEXAS )
                   )
COUNTY OF DALLAS   )

I, _Judy L. Moorman_ , a Notary Public, do hereby certify that on this 22nd day of December, 1983, personally appeared before me R. K. CAMPBELL, who declared he is President of TEXAS POWER & LIGHT COMPANY, and C. V. MCCARTER, who declared he is Secretary of TEXAS POWER & LIGHT COMPANY, executing the foregoing document, and being first duly sworn, acknowledged that they signed the foregoing document in the capacity therein set forth and declared that the statements therein contained are true and correct.

IN WITNESS WHEREOF, I have hereunto set my hand and seal the day and year before written.

_Judy L. Moorman_
Notary Public in and for the State of Texas

My Commission expires:

_October 13, 1987_


THE STATE OF TEXAS )
                   )
COUNTY OF DALLAS   )

I, _Judy L. Moorman_ , a Notary Public, do hereby certify that on this 22nd day of December, 1983, personally appeared before me ERLE NYE, who declared he is Executive Vice President of TEXAS UTILITIES ELECTRIC COMPANY, and PETER B. TINKHAM, who declared he is Secretary of TEXAS UTILITIES ELECTRIC COMPANY, executing the foregoing document, and being first duly sworn, acknowledged that they signed the foregoing document in the capacity therein set forth and declared that the statements therein contained are true and correct.

IN WITNESS WHEREOF, I have hereunto set my hand and seal the day and year before written.

_Judy L. Moorman_
Notary Public in and for the State of Texas

My Commission expires:

_October 13, 1987_

**REORGANIZATION AGREEMENT**

**AND**

**PLAN OF MERGER**

**DALLAS POWER & LIGHT COMPANY**
**TEXAS ELECTRIC SERVICE COMPANY**
**TEXAS POWER & LIGHT COMPANY**
**TEXAS UTILITIES ELECTRIC COMPANY**

Reorganization Agreement and Plan of Merger

INDEX

Page

1    Parties
2    Authorized Capital Stock – Electric Company, DP&L, TESCo, TP&L

     Article I – Effect of Merger

3    1.1 The Merger
3    1.2 Name
4    1.3 Certificate of Incorporation and Bylaws
4    1.4 Effective Time
4    1.5 Transfer of Rights and Liabilities
4    1.6 Further Assurances
5    1.7 Directors and Officers of Surviving Corporation

     Article II – Conversion of Shares

6    2.1 Stock of DP&L
7    2.2 Stock of TESCO
7    2.3 Stock of TP&L
8    2.4 Exchange of Shares
9    2.5 Payment for DP&L Common Stock Cancelled in Accordance with Section 2.1
11   2.6 Dissenting Shareholders

     Article III – Conditions Precedent to the Merger

11   3.1 Shareholder Approval
12   3.2 Regulatory Approval
12   3.3 Tax Consequences
12   3.4 Termination

     Article IV – Mortgage Matters

13   4.1 DP&L Mortgage
14   4.2 TESCo Mortgage
15   4.3 TP&L Mortgage

     Article V – General Provisions

15   5.1 Expenses
16   5.2 Notices
16   5.3 Employee Retirement Plans
16   5.4 Interim Operations
17   5.5 Amendment
17   5.6 Successors
17   5.7 Assignment
17   5.8 Governing Law

18   Article VI – Execution of Agreement

This Reorganization Agreement and Plan of Merger (the "Agreement") is dated this 19th day of November, 1982, and is hereby made by and among Texas Utilities Electric Company, a corporation organized and existing under the laws of the State of Texas (hereinafter sometimes referred to as "Electric Company" or "Surviving Corporation"), Dallas Power & Light Company, a corporation organized and existing under the laws of the State of Texas (hereinafter sometimes referred to as "DP&L"), Texas Electric Service Company, a corporation organized and existing under the laws of the State of Texas (hereinafter sometimes referred to as "TESCO"), and Texas Power & Light Company, a corporation organized and existing under the laws of the State of Texas (hereinafter sometimes referred to as "TP&L"). Electric Company, DP&L, TESCO and TP&L are hereinafter sometimes collectively referred to as "Constituent Corporations" and each individually as "Constituent Corporation". DP&L, TESCO and TP&L are hereinafter sometimes collectively referred to as "Merging Subsidiaries" and each individually as "Merging Subsidiary".

-2-

## W I T N E S S E T H:

WHEREAS, as of the date hereof, the authorized capital stock of Electric Company consists of (a) 180,000,000 shares of Common Stock, without par value, of which 1,700 shares are issued and outstanding, and (b) 17,000,000 shares of Preferred Stock, cumulative, without par value, none of which have been issued; and

WHEREAS, as of the date hereof, the authorized capital stock of DP&L consists of (a) 20,000,000 shares of Common Stock, without par value, of which 15,000,000 shares are issued and outstanding, and (b) 2,000,000 shares of Preferred Stock, cumulative, without par value, of which 1,044,430 shares are issued and outstanding in seven separate series; and

WHEREAS, as of the date hereof, the authorized capital stock of TESCO consists of (a) 80,000,000 shares of Common Stock, without par value, of which 30,300,000 shares are issued and outstanding, and (b) 10,000,000 shares of Preferred Stock, cumulative, without par value, of which 2,105,000 shares are issued and outstanding in ten separate series; and

WHEREAS, as of the date hereof, the authorized capital stock of TP&L consists of (a) 80,000,000 shares of Common Stock, without par value, of which 39,850,000 shares are issued and outstanding, and (b) 5,000,000 shares of Preferred Stock, cumulative, without par value, of which 2,873,786 shares are issued and outstanding in thirteen separate series; and

-3-

WHEREAS, it is deemed by the parties to this Agreement to be in the best interests of the Constituent Corporations, and the shareholders of each, that the Merging Subsidiaries be merged into Surviving Corporation (the "Merger") pursuant to this Agreement and the terms and conditions hereinafter set forth and as set forth in the Articles of Merger;

NOW THEREFORE, in consideration of the premises and mutual agreements herein contained, and the mutual benefits hereby provided, the parties hereto agree as follows:

### ARTICLE I
#### Effect of Merger

1.1 <u>The Merger</u>. At the Effective Time, as defined in Section 1.4, DP&L, TESCO and TP&L shall be merged into Electric Company, which shall be the Surviving Corporation, and the separate existence of DP&L, TESCO and TP&L shall cease. Surviving Corporation shall have all the rights, privileges, immunities, and powers and shall be subject to all the duties and liabilities of a corporation organized under the laws of the State of Texas.

1.2 <u>Name</u>. If the name of Electric Company is changed in the manner provided by the laws of the State of Texas prior to the Effective Time, as defined in Section 1.4, the Merger may nonetheless be consummated and on and after the Effective Time the name of the Surviving Corporation shall be the name as so changed.

-4-

1.3 <u>Certificate of Incorporation and Bylaws</u>. At the Effective Time, the Certificate of Incorporation and the Bylaws of Electric Company, as in effect prior to the Effective Time, shall remain the Certificate of Incorporation and the Bylaws of Electric Company, the Surviving Corporation, until altered, amended or repealed as provided pursuant to the laws of the State of Texas.

1.4 <u>Effective Time</u>. The Merger shall be effective upon the issuance of the Certificate of Merger by the Secretary of State of Texas.

1.5 <u>Transfer of Rights and Liabilities</u>. At the Effective Time, the Surviving Corporation shall thereupon and thereafter possess all the rights, privileges, powers, immunities and franchises, of a public as well as of a private nature, of each of the Merging Subsidiaries; and all property, real, personal and mixed, and all debts due on whatever account, and all other choses in action, and all and every other interest, of or belonging to or due to each of the Merging Subsidiaries, shall be taken and deemed to be transferred to and vested in Surviving Corporation without further act or deed.

1.6 <u>Further Assurances</u>. At the Effective Time, the Surviving Corporation shall thereupon and thereafter be responsible and liable for all liabilities and obligations of each of the Merging Subsidiaries; and any claim existing or action or proceeding pending by or against any of such Merging Subsidiaries may be prosecuted as if the Merger had not taken place, or the Surviving Corporation

-5-

may be substituted in such Merging Subsidiary's place. Neither the rights of creditors nor any liens upon the property of any of the Merging Subsidiaries shall be impaired by the Merger.

If at any time the Surviving Corporation shall consider or be advised that any further assignments, conveyances or assurances are necessary or desirable to vest, perfect or confirm in the Surviving Corporation the title to any property or rights of DP&L, TESCO or TP&L, or otherwise carry out the provisions hereof, the proper officers and directors of DP&L, TESCO or TP&L, as the case may be, as of the Effective Time of the Merger, and thereafter the officers of the Surviving Corporation acting on behalf of DP&L, TESCO or TP&L, as the case may be, shall execute and deliver any and all proper assignments, conveyances and assurances, and do all things necessary or desirable to vest, perfect or confirm title to such property or rights and otherwise to carry out the provisions hereof.

1.7 <u>Directors and Officers of Surviving Corporation</u>. The directors and officers of Electric Company at the Effective Time of the Merger, shall be the directors and officers, as the case may be, of the Surviving Corporation, until their successors shall have been elected and qualify or until otherwise as provided by the laws of the State of Texas, the Certificate of Incorporation and the Bylaws of Electric Company, the Surviving Corporation.

-6-

## ARTICLE II
### Conversion of Shares

2.1 <u>Stock of DP&L</u>. Each share of the Common Stock, without par value, of DP&L issued, outstanding and owned by Texas Utilities Company shall, at the Effective Time of the Merger, be converted into and become, without further action of the holder thereof or any of the parties hereto, one share of the Common Stock, without par value, of the Surviving Corporation.

Each share of the Common Stock, without par value, of DP&L issued and outstanding immediately prior to the Effective Time of the Merger, other than those shares held by Texas Utilities Company, shall be cancelled by virtue of the Merger and shall be converted into and exchanged for the right to receive $32.50 in cash to be paid pursuant to Section 2.5 hereof.

Each share of the Preferred Stock, cumulative, without par value, of DP&L issued and outstanding shall, at the Effective Time of the Merger, be converted into and become, without further action of the holders thereof or of any of the parties hereto, one share of the Preferred Stock, cumulative, without par value, of the Surviving Corporation, of a series having substantially the same preferences, designations, relative rights, privileges and powers, and subject to substantially the same restrictions, limitations, and qualifications as the DP&L Preferred Stock.

-7-

2.2 <u>Stock of TESCO</u>.  Each share of the Common Stock, without par value, of TESCO issued and outstanding shall, at the Effective Time of the Merger, be converted into and become, without further action of the holder thereof or any of the parties hereto, one share of the Common Stock, without par value, of the Surviving Corporation.

Each share of the Preferred Stock, cumulative, without par value, of TESCO issued and outstanding shall, at the Effective Time of the Merger, be converted into and become, without further action of the holders thereof or of any of the parties hereto, one share of the Preferred Stock, cumulative, without par value, of the Surviving Corporation, of a series having substantially the same preferences, designations, relative rights, privileges and powers and subject to substantially the same restrictions, limitations and qualifications as the TESCO Preferred Stock.

2.3 <u>Stock of TP&L</u>. Each share of the Common Stock, without par value, of TP&L issued and outstanding shall, at the Effective Time of the Merger, be converted into and become, without further action of the holder thereof or any of the parties hereto, one share of the Common Stock, without par value, of the Surviving Corporation.

Each share of the Preferred Stock, cumulative, without par value, of TP&L issued and outstanding shall, at the Effective Time of the Merger, be converted into and become, without further

-8-

action of the holders thereof or of any of the parties hereto, one share of the Preferred Stock, cumulative, without par value, of the Surviving Corporation, of a series having substantially the same preferences, designations, relative rights, privileges and powers and subject to substantially the same restrictions, limitations and qualifications as the TP&L Preferred Stock.

2.4 <u>Exchange of Shares</u>.  After the Effective Time of the Merger, each holder of an outstanding certificate for shares of the capital stock of DP&L (other than any holder of DP&L Common Stock cancelled in accordance with Section 2.1 hereof), TESCO or TP&L may, but shall not be required to, surrender such certificate to the Surviving Corporation.  Upon such surrender such holder shall be entitled to receive in exchange for the certificate so surrendered a certificate for the number, class and series of shares of the Surviving Corporation into which his shares of DP&L, TESCO or TP&L, as the case may be, shall have been converted as hereinabove set forth, but such certificate for shares of the Surviving Corporation shall not be issued in a name other than that in which the surrendered certificate for shares of DP&L, TESCO or TP&L, as the case may be, shall be registered on the Effective Time of the Merger unless the surrendered certificate shall be properly endorsed for transfer and any transfer or other taxes required by reason of such transfer shall have been paid by the person requesting such transfer.  Until so surrendered for exchange or transfer, each such outstanding certificate which, prior to the

-9-

Effective Time of the Merger, represented shares of the capital stock of DP&L, TESCO or TP&L, as the case may be, shall be deemed for all corporate purposes to evidence the ownership of the shares of the Common Stock or Preferred Stock, as the case may be, without par value, of the Surviving Corporation into which such shares have been so converted.

2.5 <u>Payment for DP&L Common Stock Cancelled In Accordance With Section 2.1</u>. Prior to the Effective Time of the Merger, Electric Company shall designate a disbursing agent (the "Paying Agent") and deliver to the Paying Agent cash (or shall make other banking arrangements believed by the Board of Directors of DP&L to offer the shareholders of DP&L comparable assurance of payment) in an amount sufficient to pay, promptly upon present ment of stock certificates to the Paying Agent, all amounts to which holders of DP&L Common Stock will be entitled pursuant to Section 2.1 hereof (without regard to the possibility that certain shareholders may elect to pursue appraisal rights under Texas law). After the Effective Time of the Merger each such holder of the outstanding certificate or certificates which immediately prior thereto represented outstanding shares of DP&L Common Stock shall be entitled upon surrender to the Paying Agent of such certificate or certificates for cancellation to receive $32.50 in cash in exchange for each share represented prior to the Effective Time of the Merger by the certificate or certificates so surrendered. Until so surrendered and exchanged,

-10-

each outstanding certificate of such holder, which prior to the Effective Time of the Merger represented shares of DP&L Common Stock, shall be deemed after the Effective Time of the Merger for all purposes to represent only the right to receive $32.50 in cash for each share of DP&L Common Stock represented thereby. If payment is to be made to a person other than the one in whose name a certificate surrendered is registered, it shall be a condition of such payment that the certificate to be surrendered shall be properly endorsed (with such signature guarantees as may be required by the Paying Agent) or otherwise in proper form for transfer and that the person requesti ng such payment shall pay to the Paying Agent any transfer or other taxes required by reason of the payment to a person other than the registered holder of the certificate surrendered or establi sh to the satisfaction of the Paying Agent that such tax has been paid or is not applicable. After the Effective Time of the Merger, no transfer of the shares of DP&L Common Stock outstanding immediately prior to the Effective Time of the Merger shall be entered on the share records of DP&L. Any cash deposited with the Paying Agent for the benefit of the holders of certificates formerly representing shares of DP&L Common Stock which remai ns unclaimed after the expiration of one year after the Effective Time of the Merger shall be delivered to the Surviving Corporation by the Paying Agent, and thereafter the Paying Agent shall not be liable to any person claiming the same. No interest shall accrue or be payable with

-11-

respect to any cash held by the Paying Agent or the Surviving Corporation for the benefit of holders of certificates which, immediately prior to the Effective Time of the Merger, represented shares of DP&L Common Stock, or with respect to the cash amount per share owing to any former holder of DP&L Common Stock.

2.6 _Dissenting Shareholders_.  In the event that any holder of shares of capital stock of DP&L, TESCO or TP&L shall object to the Merger in writing and demand payment of the value of their shares pursuant to Articles 5.11, 5.12 and 5.13 of the Texas Business Corporation Act, such holder shall have only the rights provided by such Articles.

ARTICLE III
Conditions Precedent to the Merger

3.1 _Shareholder Approval_.  The Boards of Directors of Electric Company, DP&L, TESCO and TP&L, upon approving this Agreement, shall by resolution direct that this Agreement be submitted to a vote at a meeting of shareholders of each such Constituent Corporation as provided in the Articles of Incorporation and Bylaws of each such corporation and in accordance with the laws of the State of Texas.

It is understood by the Constituent Corporations that the affirmative vote of the holders of at least two-thirds of the Common Stock (in the case of Electric Company) and Common Stock and Preferred Stock (in the case of DP&L, TESCO and

-12-

TP&L), voting as a single class as to each such corporation, is required to approve this Agreement. In addition, the affirmative vote of the holders of at least two-thirds of the Preferred Stock of each of DP&L, TESCO and TP&L, voting as a separate class of each such corporation, is required to approve this Agreement.

3.2 <u>Regulatory Approval</u>. The Merger provided for by this Agreement shall be subject to obtaining all necessary regulatory approvals, authorizations and consents (including, without limiting the generality of the foregoing, any which may be requisite to the effective transfer to the Surviving Corporation of all material franchises, certificates, licenses and permits of each of the Merging Subsidiaries).

3.3 <u>Tax Consequences</u>. The Merger provided for by this Agreement shall be subject to obtaining rulings of the Internal Revenue Service satisfactory to the Constituent Corporations, or in the event the Internal Revenue Service will not as a matter of general policy issue such rulings, an opinion or opinions of counsel satisfactory to the Constituent Corporations, with respect to the Federal income tax consequences of the Merger and other transactions incident thereto.

3.4 <u>Termination</u>. This Agreement may be terminated for any reason at any time prior to the filing of the Articles of Merger, whether before or after approval of this Agreement by the shareholders of the Constituent Corporations, by a vote of a majority of the Board of Directors of any of the Constituent Corporations. In the event of such termination, this Agreement

-13-

shall be without further effect and there shall be no liability on the part of any parties to the Agreement. Notwithstanding its approval by the shareholders of the Constituent Corporations, if, in accordance with Articles 5.11, 5.12 and 5.13 of the Texas Business Corporation Act, demands for cash payments for shares, aggregating in excess of 3% of the total number of shares of outstanding Preferred Stock of all the Merging Companies, are received, the Agreement may be terminated by majority vote of the Board of Directors of any of the Constituent Corporations.

## ARTICLE IV
### Mortgage Matters

4.1 <u>DP&L Mortgage</u>. Anything herein contained to the contrary notwithstanding, the Merger provided for by and the terms of this Agreement shall not in any respect impair the lien and security of the Mortgage and Deed of Trust from DP&L to Old Colony Trust Company, trustee (The First National Bank of Boston, successor trustee), dated as of February 1, 1937, as amended and supplemented by all indentures supplemental thereto (hereinafter referred to as the "DP&L Mortgage"), and the lien and security of the DP&L Mortgage and all of the rights and powers of the trustee and the bondholders thereunder shall be unimpaired and fully preserved. The Surviving Corporation will, upon the Effective Time of the Merger, execute and deliver to said trustee an instrument in writing expressly assuming and agreeing to pay, duly

-14-

and punctually, the principal of and interest on the bonds issued under the DP&L Mortgage in accordance with the provisions of said bonds, of the coupons appertaining thereto and of the DP&L Mortgage, and expressly agreeing to perform and fulfill, duly and punctually, all the covenants and conditions of the DP&L Mortgage to be kept or performed by DP&L.

4.2 <u>TESCO Mortgage</u>.  Anything herein contained to the contrary notwithstanding, the Merger provided for by and the terms of this Agreement shall not in any respect impair the lien and security of the Mortgage and Deed of Trust from TESCO to The Fort Worth National Bank, trustee, dated as of March 1, 1945, as amended and supplemented by all indentures supplemental thereto (hereinafter referred to as the "TESCO Mortgage"), and the lien and security of the TESCO Mortgage and all of the rights and powers of the trustees and the bondholders thereunder shall be unimpaired and fully preserved.  The Surviving Corporation will, upon the Effective Time of the Merger, execute and deliver to said trustee an instrument in writing expressly assuming and agreeing to pay, duly and punctually, the principal of and interest on the bonds issued under the TESCO Mortgage in accordance with the pro-visions of said bonds, of the coupons appertaining thereto and of the TESCO Mortgage, and expressly agreeing to perform and fulfill, duly and punctually, all the covenants and conditions of the TESCO Mortgage to be kept or performed by TESCO.

-15-

4.3 TP&L Mortgage. Anything herein contained to the contrary notwithstanding, the Merger provided for by and the terms of this Agreement shall not in any respect impair the lien and security of the Mortgage and Deed of Trust from TP&L to RepublicBank Dallas, National Association (formerly Republic National Bank of Dallas), trustee, dated as of May 1, 1945, as amended and supplemented by all indentures supplemental thereto (hereinafter referred to as the "TP&L Mortgage"), and the lien and security of the TP&L Mortgage and all of the rights and powers of the trustee and the bondholders thereunder shall be unimpaired and fully preserved. The Surviving Corporation will, upon the Effective Time of the Merger, execute and deliver to said trustee an instrument in writing expressly assuming and agreeing to pay, duly and punctually, the principal of and interest on the bonds issued under the TP&L Mortgage in accordance with the provisions of said bonds, of the coupons appertaining thereto and of the TP&L Mortgage, and expressly agreeing to perform and fulfill, duly and punctually, all the covenants and conditions of the TP&L Mortgage to be kept or performed by TP&L.

## ARTICLE V
### General Provisions

5.1 Expenses. The expenses of printing this Agreement, the expenses of printing and filing any Joint Proxy Statement and Prospectus with respect to the solicitation of proxies for use in

-16-

connection with special meetings of the shareholders necessary to obtain the vote set forth in Section 3.1 hereof, and the expenses of any related registration statements filed with the Securities and Exchange Commission will be shared equally by the Constituent Corporations.  All other expenses (including, without limitation, accounting and legal fees) will be paid by the party incurring them.

5.2 Notices.  All notices and other communications hereunder shall be in writing and shall be sent to the chief executive officer of the party to whom directed.

5.3 Employee Retirement Plans.  At the Effective Time, the Surviving Corporation shall assume the rights and obligations of the Merging Corporations under their respective Employee Retirement Plans.

5.4 Interim Operations.  The Merging Corporations covenant with each other that between the date of this Agreement and the Effective Time each will use its best efforts to solicit the requisite approval and consent from all parties whose approval and consent is required under the terms of any indenture, contract or agreement to which such Merging Corporation is a party; and, except as contemplated by this Agreement, the Merging Corporations each will carry on its respective business in substantially the same manner as heretofore.

Prior to the Effective Time, it is anticipated that TESCO, which owns all of the stock of Old Ocean Fuel Company ("Old Ocean") will distribute the stock of Old Ocean to Texas

-17-

Utilities Company as a dividend and that Old Ocean will thereupon merge into Texas Utilities Fuel Company, a wholly owned subsidiary of Texas Utilities Company.

5.5 <u>Amendment</u>. The parties hereto by mutual consent of their respective Boards of Directors may, to the extent permitted by law, amend, modify or supplement this Agreement in such manner as may be agreed upon by them in writing, at any time before or after approval of this Agreement by the shareholders of the Constituent Corporations; provided, however, that no such amendment, modification or supplement shall, in the sole judgment of the respective Board of Directors of each Constituent Corporation, materially and adversely affect the rights of the shareholders of such Constituent Corporation.

5.6 <u>Successors</u>. References in this Agreement to particular persons, firms, agencies, statutes, regulations and the like shall be considered as references to any successors thereto.

5.7 <u>Assignment</u>. This Agreement and all of the provisions hereof shall be binding upon and inure to the benefit of the parties hereto and their respective successors and permitted assigns, but neither this Agreement nor any of the rights, interests, or obligations hereunder is assignable, or shall be assigned, by any of the parties hereto without the prior written consent of the others.

5.8 <u>Governing Law</u>. This Agreement shall be governed by and construed in accordance with the laws of the State of Texas.

-18-

## ARTICLE VI
### Execution of Agreement

The Agreement shall be executed in several counterparts, each of which shall be an original and all of which shall constitute but one and the same instrument.

IN WITNESS WHEREOF, each of the parties hereto has caused this Agreement to be executed on its behalf and its corporate seal to be affixed hereunto and attested by its officer thereunto duly authorized, as of the day and year first above written.


(Corporate Seal)

Texas Utilities Electric Company

By _____

Attest:

_____


(Corporate Seal)

Dallas Power & Light Company

By _____

Attest:

_____

-19-

Texas Electric Service Company

(Corporate Seal)

By _____

Attest:

_____

(Corporate Seal)

Texas Power & Light Company

By _____

Attest:

_____