**Exhibit D**

**Incremental Amended DIP Order Redline**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) | Case No. 14-10979 (CSS) |
| | ) | |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | **Re: Docket No. 74** |

**AMENDED FINAL ORDER (A) APPROVING POSTPETITION
FINANCING FOR ENERGY FUTURE INTERMEDIATE
HOLDING COMPANY LLC AND EFIH FINANCE INC., (B) GRANTING
LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS,
(C) APPROVING THE USE OF CASH COLLATERAL BY ENERGY
FUTURE INTERMEDIATE HOLDING COMPANY LLC AND EFIH FINANCE INC.,
(D) AUTHORIZING THE EFIH FIRST LIEN REPAYMENT, (E) AUTHORIZING
ISSUANCE OF ROLL-UP DEBT TO THE EXTENT AUTHORIZED BY
THE SETTLEMENT ORDERS, AND (F) MODIFYING THE AUTOMATIC STAY**

Upon (A) the motion (the "EFIH First Lien DIP Motion") of Energy Future ~~Holdings Corp., Energy Future~~ Intermediate Holding Company LLC ("EFIH~~"),~~") and EFIH Finance Inc. (together with EFIH, the "Borrowers"), each as a debtor and debtor-in-possession (the Borrowers and any Guarantors (as defined herein), collectively, the "EFIH Debtors") in the above-captioned chapter 11 cases of the EFIH Debtors (collectively, the "Cases"), pursuant to sections 105, 361, 362, 363, 364(c)(1), 364(c)(2), 364(c)(3), 364(d), and 507 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "Bankruptcy Code"), rules 2002, 4001, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rule 4001-2 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the

---

[1]  The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810.  The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201.  Due to the large number of debtors in these chapter 11 cases, for which joint administration has been granted on an interim basis, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the debtors' proposed claims and noticing agent at http://www.efhcaseinfo.com.

District of Delaware (the "<u>Local Bankruptcy Rules</u>"), seeking entry of a final order (as amended hereby, this "<u>Final Order</u>"), *inter alia*:

      (i)     authorizing the Borrowers to enter into that certain Senior Secured Superpriority Debtor-in-Possession Credit Agreement (as amended, restated, supplemented, or otherwise modified from time to time, including by the EFIH DIP Consent (as defined herein), the "<u>EFIH First Lien DIP Credit Agreement</u>"), between Borrowers, the financial institutions from time to time party thereto as lenders or assignees of the EFIH First Lien DIP Agent (as defined herein) (including, for the avoidance of doubt, Exchanging Lenders (as defined in the EFIH First Lien DIP Credit Agreement), certain funds and accounts advised or sub-advised by Fidelity Management & Research Company or its affiliates ("<u>Fidelity</u>"), Pacific Investment Management Company LLC, as investment manager for various funds and accounts ("<u>PIMCO</u>"), and other backstop parties (collectively, the "<u>EFIH First Lien DIP Lenders</u>"), Deutsche Bank AG New York Branch, as administrative agent and collateral agent (in such capacities, the "<u>EFIH First Lien DIP Agent</u>"),[2] and the other agents and entities from time to time party thereto, to obtain secured postpetition financing (the "<u>EFIH First Lien DIP Financing</u>") on a superpriority basis, consisting of a superpriority term loan in an aggregate principal amount of $5,400,000,000;

      (ii)    authorizing any other entities, if any, that subsequently commence jointly administered chapter 11 cases and become guarantors under the EFIH First Lien DIP

---

[2]    As used herein, the term "EFIH First Lien DIP Agent" refers to Deutsche Bank AG New York Branch, as administrative agent under the EFIH First Lien DIP Credit Agreement, Deutsche Bank AG New York Branch, as collateral agent under the EFIH First Lien DIP Credit Agreement, or both, as the context requires. All references in this Final Order to the EFIH First Lien DIP Agent with respect to the Secured Hedge Banks or the Secured Cash Management Banks (each, as defined herein) shall mean Deutsche Bank AG New York Branch, in its capacity as collateral agent. Deutsche Bank AG New York Branch, in its capacity as administrative agent, has no duties or obligations to the Secured Hedge Banks or the Secured Cash Management Banks.

Credit Agreement (the "Guarantors") to enter into the Guarantee (as defined in the EFIH First Lien DIP Credit Agreement);

(iii)    authorizing each of the EFIH Debtors to execute and deliver the EFIH First Lien DIP Credit Agreement, the Fee Letter (as defined in the EFIH First Lien DIP Credit Agreement) to the extent not previously approved in the Interim Fee Order (as defined herein), the applicable Security Documents (as defined in the EFIH First Lien DIP Credit Agreement), and the other related documents (collectively, the "EFIH First Lien DIP Documents") (including any intercreditor agreement that is expressly permitted under the EFIH First Lien DIP Documents (the "EFIH DIP Intercreditor Agreement") executed in conjunction with any proposed second lien debtor-in-possession financing facility that is expressly permitted by the EFIH First Lien DIP Documents (the "EFIH Second Lien DIP Facility"), if any, by and among the EFIH Debtors, the EFIH First Lien DIP Agent, and the administrative agent and collateral agent (the "EFIH Second Lien DIP Agent") under any EFIH Second Lien DIP Facility), and to perform such other acts as may be necessary or desirable in connection with the EFIH First Lien DIP Documents;

(iv)    granting allowed superpriority administrative expense claims in each of the Cases and any Successor Cases (as defined herein) in respect of (a) the EFIH First Lien DIP Financing and all obligations owing thereunder and under the EFIH First Lien DIP Documents, (b) obligations (the "Secured Hedge Obligations") owing under or in connection with any Secured Hedging Agreements (as defined in the EFIH First Lien DIP Credit Agreement) with the EFIH Debtors, and (c) any obligations (the "Secured Cash Management Obligations") owing under or in connection with and any Secured Cash Management Agreements (as defined in the EFIH First Lien DIP Credit Agreement)

3

to the EFIH First Lien DIP Agent and the EFIH First Lien DIP Secured Parties (as defined herein) (collectively, and including all "Obligations" as described in the EFIH First Lien DIP Credit Agreement, the "EFIH First Lien DIP Obligations");

(v)    granting to the EFIH First Lien DIP Agent, for the benefit of itself, any sub-agents, the EFIH First Lien DIP Lenders, Hedge Banks (as defined in the EFIH First Lien DIP Credit Agreement) that are or become parties to Secured Hedging Agreements (the "Secured Hedge Banks") with the EFIH Debtors,[3] and Cash Management Banks (as defined in the EFIH First Lien DIP Credit Agreement) that are or become parties to Secured Cash Management Agreements (the "Secured Cash Management Banks" and, collectively with the EFIH First Lien DIP Lenders and the Secured Hedge Banks, the "EFIH First Lien DIP Secured Parties") with the EFIH Debtors, automatically perfected security interests in and liens upon all of the EFIH DIP Collateral (as defined herein), including, without limitation, all property constituting "cash collateral," as defined in section 363(a) of the Bankruptcy Code, which security interests and liens shall be subject to the priorities set forth in this Final Order;

(vi)    authorizing and directing the EFIH Debtors to pay the principal, interest, fees, expenses, and other amounts payable and/or reimbursable under the EFIH First Lien DIP Documents, including the Fee Letter, or this Final Order as such amounts become due, including, without limitation, the Interim Fees (as defined herein) approved by the Interim Fee Order, commitment fees, the 1.75% commitment fee payable to Fidelity (the

---

[3]    For the avoidance of doubt, the EFIH Debtors have not requested or been granted any relief pursuant to the terms of the *Interim Order Authorizing the Debtors To (A) Continue Performing Under the Prepetition Hedging and Trading Arrangements, (B) Pledge Collateral and Honor Obligations Thereunder, and (C) Enter Into and Perform Under Trading Continuation Agreements and New Postpetition Hedging and Trading Arrangements*, and, as of the date of this Order, the EFIH Debtors have not otherwise been authorized by the Court to enter into or post collateral under any Hedging Agreements (as defined in the EFIH First Lien DIP Credit Agreement).

"Fidelity Funding Fee"), the 1.75% commitment fee payable to PIMCO (the "PIMCO Funding Fee"), and other commitment fees payable to the EFIH First Lien DIP Lenders (collectively with the Fidelity Funding Fee and the PIMCO Funding Fee, the "Funding Fees"), all invoiced reasonable and documented out of pocket costs, fees, and expenses (in the case of legal fees, limited to the legal fees of one primary counsel and one local counsel) incurred by PIMCO in connection with the Cases, all invoiced reasonable and documented out of pocket costs, fees, and expenses (in the case of legal fees, limited to the legal fees of one primary counsel and one local counsel) incurred by Fidelity in connection with the EFIH First Lien DIP Financing as set forth in that certain commitment letter with Fidelity, closing fees, arrangement fees, incentive fees, and administrative agent's fees, all to the extent provided in, and in accordance with the terms of, the EFIH First Lien DIP Documents and this Final Order;

(vii)    vacating and modifying the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of the EFIH First Lien DIP Documents, as limited pursuant hereto, and this Final Order;

(viii)    authorizing the EFIH Debtors to use the proceeds of the EFIH First Lien DIP Financing to consummate the repayment of all principal and accrued but unpaid interest due and owing under the EFIH First Lien Notes (as defined herein) (the "EFIH First Lien Repayment"), subject to the reservations of rights described in this Final Order (including with respect to Additional Interest and interest on interest);[4]

---

[4]    All references in the EFIH First Lien DIP Motion to the "EFIH First Lien Refinancing" are references to the EFIH First Lien Repayment.

(ix)    authorizing the EFIH Debtors to use the EFIH First Lien DIP Financing to satisfy EFIH's obligations, including the issuance of debt, including under the EFIH First Lien DIP Financing, in respect of EFIH's settlement of certain "make-whole" claims (such settlements, with respect to the EFIH First Lien Notes, the "EFIH First Lien Settlement," and with respect to the EFIH Second Lien Notes (as defined herein), the "EFIH Second Lien Settlement," and together, the "EFIH Secured Settlements") to the extent authorized pursuant to an order or orders of the Court approving the EFIH First Lien Settlement (the "First Lien Settlement Order") and the EFIH Second Lien Settlement (the "Second Lien Settlement Order," and together with the First Lien Settlement Order, the "Settlement Orders");

(x)    authorizing the EFIH Debtors to use cash collateral and other collateral pursuant to sections 363(c) and 363(e) of the Bankruptcy Code and Rule 4001(b) of the Bankruptcy Rules and the Local Bankruptcy Rules, including Local Bankruptcy Rule 4001-2, on the terms and conditions set forth in this Final Order; and

(xi)    authorizing the EFIH Debtors to borrow immediately under the EFIH First Lien DIP Financing in an aggregate principal amount of $5,400,000,000 to provide financing for (a) transaction fees, liabilities and expenses (including all Allowed Professional Fees) (as defined herein) and other administration costs incurred in connection with the Cases and the negotiation, syndication, documentation (including any engagement or commitment letters), execution and closing of the EFIH First Lien DIP Financing and the exchange of Prepetition First Lien Obligations (the "EFIH First Lien Exchange") and pursuant to the applicable Exchange Agreements (as defined in the EFIH First Lien DIP Credit Agreement) as authorized herein and in the Settlement Orders,

6

(b) the EFIH First Lien Repayment (including through the EFIH First Lien Exchange), (c) Settlement Payments (as defined in the EFIH First Lien DIP Credit Agreement), (d) the repayment of up to $750,000,000 of the EFIH Second Lien Notes, plus payment of the Consent Fee (as defined in the EFIH Partial Second Lien Repayment Order (as defined herein)), on the terms set forth in the EFIH Partial Second Lien Repayment Order (as defined herein) (the "EFIH Partial Second Lien Repayment"), and (e) working capital needs and other general corporate purposes of the EFIH Debtors, as provided for in the EFIH First Lien DIP Documents (including the EFIH First Lien DIP Credit Agreement); and

(B) the motion (the "Consent Motion") of Energy Future Holdings Corp. and the Borrowers seeking, among other things, entry of (i) an order (the "EFIH Partial Second Lien Repayment Order") authorizing the EFIH Partial Second Lien Repayment, approving a written consent to, among other things, the EFIH Partial Second Lien Repayment under the EFIH First Lien DIP Documents (the "EFIH DIP Consent"), and authorizing the Consent Fee (as defined in the EFIH Partial Second Lien Repayment Order) and (ii) this amended Final Order.

The Court (a) having held an interim hearing (the "Interim Hearing") on May 1, 2014 and entered an interim order (the "Interim Fee Order") that, among other things, approved the (i) DIP Facility Fee (as defined in the Fee Letter), (ii) the Ticking Fee (as defined in the Fee Letter), and (iii) to the extent provided in the Commitment Letter (as defined in the EFIH First Lien DIP Credit Agreement), the reasonable and documented expenses (including the fees and charges and disbursement of counsel) of the Commitment Parties (as defined in the Commitment Letter) (collectively with the Ticking Fee and the DIP Facility Fee, the "Interim Fees"), and (iv) scheduled a final hearing (the "Final Hearing") to consider the entry of this Final Order;

7

(b) having approved the EFIH First Lien Settlement in the First Lien Settlement Order and having authorized the consummation of transactions necessary to perform the EFIH First Lien Settlement, including the consummation of the EFIH First Lien Exchange; and (c) having considered the EFIH First Lien DIP Motion, the *Declaration of Paul Keglevic, Executive Vice President, Chief Financial Officer, and Co-Chief Restructuring Officer of Energy Future Holdings Corp., et al., in Support of First Day Motions*, sworn to on April 29, 2014, the exhibits attached thereto, the *Declaration of Stephen Goldstein in Support of the Motion of Energy Future Intermediate Holding Company LLC and EFIH Finance, Inc., for Entry of for Entry of (I) and Interim Order (A) Approving Certain Fees Related to Postpetition Financing and Granting Such Fees Administrative Expense Priority and (B) Scheduling a Final Hearing; and (II) a Final Order (A) Approving Postpetition Financing, (B) Granting Liens and Providing Superpriority Administrative Expense Claims, (C) Authorizing the Use of Cash Collateral, (D) Authorizing the EFIH First Lien DIP Refinancing, (E) Authorizing Issuance of Roll-Up Debt to the Extent Authorized by the Settlement Motion, (F) Determining the Value of Secured Claims, and (G) Modifying the Automatic Stay,* sworn to on April 29, 2014, the *Supplemental Declaration of Stephen Goldstein in Support of the Motion of Energy Future Intermediate Holding Company LLC and EFIH Finance, Inc., for Entry of for Entry of (I) an Interim Order (A) Approving Certain Fees Related to Postpetition Financing and Granting Such Fees Administrative Expense Priority and (B) Scheduling a Final Hearing; and (II) a Final Order (A) Approving Postpetition Financing, (B) Granting Liens and Providing Superpriority Administrative Expense Claims, (C) Authorizing the Use of Cash Collateral, (D) Authorizing the EFIH First Lien DIP Refinancing, (E) Authorizing Issuance of Roll-Up Debt to the Extent Authorized by the Settlement Motion, (F) Determining the Value of Secured Claims, and (G) Modifying the*

*Automatic Stay,* sworn to on April 30, 2014, the *Supplemental Declaration of David Ying, Senior Management Director of Evercore Group L.L.C., in Support of (1) the EFIH First Lien DIP Motion and (2) the EFIH Settlement Motion*, sworn to on May 25, 2014, the EFIH First Lien DIP Documents, all filed objections and responses, and the evidence submitted or adduced and the arguments of counsel made at the Final Hearing held on June 6, 2014; and notice of the Final Hearing having been given in accordance with rules 4001(b), (c), and (d), and 9014 of the Bankruptcy Rules and the Interim Fee Order; and the Final Hearing to consider the final relief set forth in this Final Order having been held and concluded; and all objections, if any, to the relief set forth in this Final Order having been withdrawn, resolved, or overruled by the Court; and it appearing that it is fair and reasonable and in the best interests of the EFIH Debtors and their estates, creditors, and other parties in interest, and is appropriate for the continued operation of the EFIH Debtors' businesses; and it further appearing that the EFIH Debtors are unable to obtain unsecured credit for money borrowed allowable as an administrative expense under section 503(b)(1) of the Bankruptcy Code; and after due deliberation and consideration and for good and sufficient cause appearing therefor;[5]

BASED UPON THE RECORD ESTABLISHED AT THE FINAL HEARING BY THE EFIH DEBTORS, THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:[6]

    A.    <u>Petition Date</u>.  On April 29, 2014 (the "<u>Petition Date</u>"), each of the EFIH Debtors filed a separate voluntary petition under chapter 11 of the Bankruptcy Code in the United States

---

[5]    The EFIH First Lien DIP Motion also sought a determination that no EFIH First Lien Makewhole Claims (as defined herein) are due in connection with the EFIH First Lien Repayment.  The EFIH Debtors continue to contest that any such payment is or will be due, but do not seek a ruling on the EFIH First Lien Makewhole Claims in this Final Order except to the extent of claims addressed pursuant to the First Lien Settlement Order.

[6]    Findings of fact shall be construed as conclusions of law, and conclusions of law shall be construed as findings of fact, pursuant to Bankruptcy Rule 7052.

Bankruptcy Court for the District of Delaware (the "<u>Court</u>") commencing these Cases. On May 1, 2014, the Court entered an order approving the joint administration of these Cases on an interim basis.

B.    <u>Debtors-in-Possession</u>.    The EFIH Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in these Cases.

C.    <u>Jurisdiction and Venue</u>.    The Court has jurisdiction over this matter, these proceedings, and the persons and property affected hereby pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference from the United States District Court for the District of Delaware, dated February 29, 2012. This matter as set forth in this Final Order is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the EFIH Debtors confirm their consent pursuant to rule 9013-1(f) of the Local Bankruptcy Rules to the entry of a final order by the Court in connection with the EFIH First Lien DIP Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution. Venue for the Cases and the EFIH First Lien DIP Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

D.    <u>Committee Formation</u>.    On May 13, 2014, pursuant to section 1102 of the Bankruptcy Code, the United States Trustee for the District of Delaware (the "<u>U.S. Trustee</u>") appointed an official committee to represent the interests of unsecured creditors only in the chapter 11 cases of certain affiliates of the EFIH Debtors (the "<u>Appointed Committee</u>"). As of the date hereof, the U.S. Trustee has not appointed a committee of unsecured creditors to represent the interests of unsecured creditors in the Cases (if appointed, a "<u>Creditors' Committee</u>").

E.    <u>EFIH Prepetition Indebtedness</u>:

(i)    <u>Prepetition EFIH First Lien Notes</u>.  Prior to the Petition Date, the EFIH Debtors:  (a) issued (originally and/or in exchanges) the 10.00% Senior Secured First Lien Notes due 2020 (the "<u>EFIH First Lien 2020 Notes</u>"), under that certain Indenture dated as of August 17, 2010 (as amended, modified, or supplemented, the "<u>EFIH First Lien 2020 Notes Indenture</u>"); (b) issued (originally and/or in exchanges) the 6.875% Senior Secured First Lien Notes due 2017 (the "<u>EFIH First Lien 2017 Notes</u>," and, together with the EFIH First Lien 2020 Notes, the "<u>EFIH First Lien Notes</u>," and the holders of such EFIH First Lien Notes, the "<u>Prepetition EFIH First Lien Creditors</u>"), under that certain Indenture dated as of August 14, 2012 (as amended, modified, or supplemented the "<u>EFIH First Lien 2017 Notes Indenture</u>", and, together with the EFIH First Lien 2020 Notes Indenture, the "<u>EFIH First Lien Indentures</u>," and the trustee under the EFIH First Lien Indentures, the "<u>EFIH First Lien Notes Trustee</u>"); and (c) entered into the Security Documents (as defined in the EFIH First Lien Indentures, and collectively with the EFIH First Lien Indentures, the EFIH First Lien Notes, and the Registration Rights Agreements executed in connection therewith, the "<u>EFIH First Lien Documents</u>," and all purported Obligations as defined in and under the EFIH First Lien Documents, the "<u>Prepetition First Lien Obligations</u>").

(ii)    <u>Prepetition EFIH Second Lien Notes</u>.  Prior to the Petition Date, the EFIH Debtors (a) issued (originally and/or in exchanges) the 11.00% Senior Secured Second Lien Notes due 2021 (the "<u>EFIH Second Lien 2021 Notes</u>"), under that certain Indenture dated as of April 25, 2011 (as amended, modified, or supplemented, the "<u>EFIH Second Lien Notes Indenture</u>," and, the indenture trustee thereunder, the "<u>EFIH Second Lien Notes Trustee</u>," and the EFIH First Lien Notes Trustee, together with the EFIH Second Lien Notes Trustee, the

"Prepetition Secured Notes Trustees" and the EFIH Second Lien Notes Indenture, together with the EFIH First Lien Notes Indentures, the "Prepetition EFIH Secured Indentures"); (b) issued (originally and/or in exchanges) the 11.75% Senior Secured Second Lien Notes due 2022 (the "EFIH Second Lien 2022 Notes", collectively with the EFIH Second Lien 2021 Notes, the "EFIH Second Lien Notes," and the holders of EFIH Second Lien Notes, the "Prepetition EFIH Second Lien Creditors," and the Prepetition EFIH Second Lien Creditors, together with the Prepetition EFIH First Lien Creditors, the "Prepetition EFIH Secured Creditors," and the EFIH Second Lien Notes, together with the EFIH First Lien Notes, the "Prepetition EFIH Secured Notes"), under the EFIH Second Lien Indenture; and (c) entered into the Security Documents (as defined in the EFIH Second Lien Indenture, and collectively with the EFIH Second Lien Indenture, the EFIH Second Lien Notes, and the Registration Rights Agreements executed in connection therewith, the "EFIH Second Lien Documents," and all purported Obligations as defined in and under the EFIH Second Lien Documents, the "Prepetition Second Lien Obligations," and the Prepetition First Lien Obligations together with the Prepetition Second Lien Obligations, the "Prepetition Secured Obligations"),

(iii)    EFIH Collateral Trust Agreement.   Prior to the Petition Date, the EFIH Debtors entered into the collateral trust agreement (the "EFIH Collateral Trust Agreement") by and among EFIH, and CSC, in its capacity as EFIH First Lien Notes Trustee and Collateral Trustee under the EFIH First Lien Documents and EFIH Second Lien Documents, and Computershare, in its capacity as EFIH Second Lien Notes Trustee, relates to the relative rights and remedies of the Prepetition EFIH First Lien Creditors and the Prepetition EFIH Second Lien Creditors with respect to the collateral securing their respective obligations.

(iv)    Prepetition EFIH Senior Toggle Notes.  Prior to the Petition Date, the Issuers issued (originally and/or in exchanges) the 11.25%/12.25% Senior Toggle Notes due 2018 (the "EFIH Senior Toggle Notes," and the holders of such notes, the "Prepetition EFIH Toggle Note Creditors") under that certain Indenture dated as of December 5, 2012 (as amended, modified, or supplemented, the "EFIH Senior Toggle Notes Indenture," together with a related Registration Rights Agreement, the "EFIH Toggle Notes Documents," and the indenture trustee thereunder, the "EFIH Toggle Notes Trustee," and all purported Obligations as defined in and under the EFIH Toggle Notes Documents, the "Prepetition Toggle Notes Obligations"). Approximately $1.566 billion of EFIH Senior Toggle Notes were outstanding as of the Petition Date.[7]

(v)    Settled First Lien Claims.  Pursuant to the First Lien Settlement Order, the Court has approved the settlement and compromise of the claims of certain holders of the EFIH First Lien Notes that are signatories to the Restructuring Support Agreement (as defined in the EFIH First Lien DIP Motion) and other holders of the EFIH First Lien Notes that timely elected to participate in the EFIH First Lien Settlement (collectively, the "Settling EFIH First Lien Note Holders").  The prepetition claims of the Settling EFIH First Lien Note Holders (the "Settled First Lien Claims") approved pursuant to the First Lien Settlement Order have been fully and finally settled and compromised notwithstanding anything to the contrary set forth in this Order.

(vi)    Amount of EFIH First Lien Repayment.  Assuming the EFIH First Lien Repayment is consummated on June 12, 2014, the total amount of the EFIH First Lien Repayment to be paid in cash to non-settling Prepetition EFIH First Lien Creditors is approximately $2,433,777,716, plus or minus a per diem adjustment of $640,882 in the event the

---

[7]    As described in the First Day Declaration, the EFIH Debtors also have approximately $2 million of additional unsecured notes outstanding and guarantee approximately $60 million of unsecured notes issued by EFH.

EFIH First Lien Repayment is not consummated on June 12, 2014, or such other amount as agreed by the EFIH Debtors and the EFIH First Lien Notes Trustee.

(vii)    Rights Reserved.  Except with respect to the Settled First Lien Claims, the EFIH Debtors do not stipulate to the validity or enforceability of the Prepetition Secured Obligations or the Prepetition Toggle Notes Obligations and expressly reserve all rights related thereto, including, for the avoidance of doubt, (a) with respect to any claims for the payment of any so-called "make-whole," prepayment, or "Applicable Premium" in connection with the EFIH First Lien Repayment (the "EFIH First Lien Makewhole Claims") or the EFIH Partial Second Lien Repayment (other than the Consent Fee) (the "EFIH Second Lien Makewhole Claims" and, together with the EFIH First Lien Makewhole Claims, the "EFIH Makewhole Claims"),[8] (b) with respect to any default or penalty interest under the EFIH First Lien Documents, EFIH Second Lien Documents, EFIH Toggle Notes Documents, and EFIH Collateral Trust Agreement (including (i) any Additional Interest under and as defined in the EFIH First Lien Documents, the EFIH Second Lien Documents, and the EFIH Toggle Note Documents and (ii) interest on interest), and (c) with respect to the payment of any professional fees or expenses under the EFIH First Lien Documents, EFIH Second Lien Documents, EFIH Toggle Notes Documents, and EFIH Collateral Trust Agreement, and all parties in interest in these Cases reserve rights with respect thereto.

F.    Findings Regarding Postpetition Financing.

(i)    Request for Postpetition Financing.  The EFIH Debtors seek authority to obtain the EFIH First Lien DIP Financing on the terms described in this Final Order and in the EFIH First Lien DIP Documents to allow them to administer their Cases, satisfy corporate

---

[8]    For the avoidance of doubt, the EFIH Debtors also reserve their rights with respect to any such claims with respect to the EFIH Senior Toggle Notes (the "EFIH Unsecured Makewhole Claim").

obligations, and consummate the EFIH First Lien Repayment, EFIH First Lien Settlement, and EFIH Partial Second Lien Repayment.

(ii)    <u>Priming of Prepetition EFIH Liens</u>.    The priming of (a) the liens purportedly securing the Prepetition First Lien Obligations (the "<u>Prepetition First Priority Liens</u>") and (b) the liens purportedly securing the Prepetition Second Lien Obligations (the "<u>Prepetition Second Priority Liens</u>") under section 364(d) of the Bankruptcy Code, as contemplated by the EFIH First Lien DIP Financing and as further described below, will enable the EFIH Debtors to obtain the EFIH First Lien DIP Financing and to maximize the value of the EFIH Debtors' estates for the benefit of the estates and their creditors.

(iii)    <u>Need for Postpetition Financing</u>.    Entry of this Final Order is necessary to allow the EFIH Debtors to consummate the EFIH First Lien Repayment, the EFIH First Lien Settlement, the EFIH Partial Second Lien Repayment (to the extent proceeds of the EFIH First Lien DIP Financing will be used to fund the EFIH Partial Second Lien Repayment and to the extent permitted under the EFIH First Lien DIP Credit Agreement), and to administer and preserve the value of their estates and satisfy other corporate expenses.    The EFIH Debtors do not have sufficient available sources of working capital and financing to satisfy their restructuring expenses and obligations, consummate the EFIH First Lien Repayment, and consummate the EFIH First Lien Settlement without the EFIH First Lien DIP Financing.

(iv)    <u>No Credit Available on More Favorable Terms</u>.    Given their current financial condition, financing arrangements, and capital structure, the EFIH Debtors have been unable to obtain financing from sources other than the EFIH First Lien DIP Lenders on terms more favorable than the EFIH First Lien DIP Financing.    The EFIH Debtors have been unable to obtain unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an

administrative expense.  The EFIH Debtors have also been unable to obtain financing, in a sufficient amount or on adequate terms to satisfy the EFIH Debtors' obligations and enable the EFIH First Lien Repayment, the EFIH First Lien Settlement, and the EFIH Partial Second Lien Repayment, solely by having the financing (a) have priority over that of administrative expenses of the kind specified in sections 503(b), 507(a), and 507(b) of the Bankruptcy Code, (b) be secured by a lien on property of the EFIH Debtors and their estates that is not otherwise subject to a lien, or (c) be secured solely by a junior lien on property of the EFIH Debtors and their estates that is subject to a lien.  Financing on a postpetition basis is not otherwise available on the terms available under the EFIH First Lien DIP Financing without granting the EFIH First Lien DIP Agent, for the benefit of itself, its sub-agents, and the EFIH First Lien DIP Secured Parties, (x) perfected security interests in and liens on (each, as provided in this Final Order) all of the EFIH Debtors' existing and after-acquired assets with the priorities set forth in this Final Order, (y) superpriority claims as set forth in this Final Order, and (z) the other protections set forth in this Final Order.

(v)     Separateness.  The EFIH Debtors, the EFIH First Lien DIP Agent, and the EFIH First Lien DIP Lenders hereby acknowledge and agree to the separateness provisions in section 11.20 of the EFIH First Lien DIP Credit Agreement.

G.     Use of Proceeds of the EFIH First Lien DIP Financing and Payment of EFIH First Lien DIP Obligations.  As a condition to entry into the EFIH First Lien DIP Credit Agreement and the extension of credit under the EFIH First Lien DIP Financing, the EFIH First Lien DIP Agent and the EFIH First Lien DIP Lenders require, and the EFIH Debtors have agreed, that proceeds of the EFIH First Lien DIP Financing shall be used, in each case in a manner consistent with the terms and conditions of the EFIH First Lien DIP Documents and this Final Order, and

the terms of the Budget (defined below) (but not subject to any Budget compliance covenant in respect thereof):  (a) first, to (i) pay transaction fees, liabilities and expenses (including all Allowed Professional Fees) and other administration costs and fees incurred in connection with the Cases and the negotiation, syndication, documentation (including any engagement or commitment letters), execution and closing of the EFIH First Lien DIP Financing, (ii) consummate the EFIH First Lien Repayment (including through the EFIH First Lien Exchange), and (iii) pay Settlement Payments, and (b) second, to finance working capital needs and other general corporate purposes of the EFIH Debtors, as provided for in the EFIH First Lien DIP Credit Agreement and the EFIH First Lien DIP Documents (including, without limitation, to finance the EFIH Partial Second Lien Repayment).  In no event, however, shall the proceeds of the EFIH First Lien DIP Financing be used towards the payment of any EFIH Second Lien Settlement or other payment of Prepetition Second Lien Obligations (other than the EFIH Second Lien Partial Repayment) without the consent of the EFIH First Lien DIP Agent and the Required Lenders (as defined in the EFIH First Lien DIP Credit Agreement).

H.    Section 506(c).  In light of the EFIH First Lien DIP Agent's, the EFIH First Lien DIP Lenders', the EFIH First Lien Notes Trustee's, and the Prepetition EFIH First Lien Creditors' agreement to subordinate their liens and superpriority claims to the Carve Out (as defined herein), the EFIH First Lien DIP Agent, the EFIH First Lien DIP Lenders, the EFIH First Lien Notes Trustee, and the Prepetition EFIH First Lien Creditors are each entitled to a waiver of the provisions of section 506(c) of the Bankruptcy Code.

I.      Good Faith of the EFIH First Lien DIP Agent and the EFIH First Lien DIP Lenders.

(i)      Willingness To Provide Financing.   The EFIH First Lien DIP Lenders have indicated a willingness to provide financing to the EFIH Debtors subject to (a) the entry of this Final Order, (b) approval of the terms and conditions of the EFIH First Lien DIP Financing, the EFIH First Lien DIP Documents, the EFIH First Lien Settlement, and the Exchange Documents, and (c) entry of findings by the Court that (1) such financing is in the best interests of the EFIH Debtors' estates, (2) the EFIH First Lien DIP Agent and each of the EFIH First Lien DIP Lenders are extending credit to the EFIH Debtors pursuant to the EFIH First Lien DIP Documents in good faith, and (3) the EFIH First Lien DIP Agent's and the EFIH First Lien DIP Lenders' claims, superpriority claims, security interests and liens, and other protections granted pursuant to this Final Order and the EFIH First Lien DIP Documents will have the protections provided in section 364(e) of the Bankruptcy Code and will not be affected by any subsequent reversal, modification, vacatur, amendment, reargument, or reconsideration of this Final Order or any other order.

(ii)      Business Judgment and Good Faith Pursuant to Section 364(e).   The terms and conditions of the EFIH First Lien DIP Financing and the EFIH First Lien DIP Documents, and the fees and expenses paid and to be paid thereunder and hereunder, are fair, reasonable, and the best available to the EFIH Debtors under the circumstances, reflect the EFIH Debtors' exercise of prudent business judgment consistent with their fiduciary duties, and are supported by reasonably equivalent value and consideration.   The EFIH First Lien DIP Financing was negotiated in good faith and at arms' length among the EFIH Debtors, the EFIH First Lien DIP Agent, the EFIH First Lien DIP Lenders (including the Exchanging Lenders).   Credit to be

extended under the EFIH First Lien DIP Financing shall be deemed to have been so allowed, advanced, made, used, or extended in good faith, and for valid business purposes and uses, within the meaning of section 364(e) of the Bankruptcy Code. Accordingly, the EFIH First Lien DIP Agent and each of the EFIH First Lien DIP Lenders (including the Exchanging Lenders) are entitled to the protection and benefits of section 364(e) of the Bankruptcy Code and this Final Order.

(iii)    EFIH First Lien Opt-In. The EFIH Debtors invited the Prepetition EFIH First Lien Creditors to participate in the EFIH First Lien Settlement (the "EFIH First Lien Opt-In") in good faith and such invitation did not constitute a solicitation on a plan of reorganization.

J.    Good Cause. The relief requested in the EFIH First Lien DIP Motion as set forth in this Final Order is appropriate and in the best interests of, and will benefit, the EFIH Debtors and their estates, creditors, and other parties in interest, as its implementation will, *inter alia,* provide the EFIH Debtors with the necessary liquidity to preserve and maximize the value of the EFIH Debtors' estates for the benefit of all of the EFIH Debtors' creditors and other parties in interest.

K.    Adequate Protection. The EFIH First Lien DIP Financing and the EFIH Debtors' use of cash collateral satisfy sections 363(c)(2) and 364(d)(4) of the Bankruptcy Code because (a) the EFIH First Lien Notes are being repaid in connection with the EFIH First Lien Repayment authorized by this Final Order, (b) the maximum amount of the EFIH First Lien Makewhole Claims, if any, and any other disputed and undisputed obligations related to the EFIH First Lien Repayment, if any, are oversecured and, therefore, adequately protected to the

extent such disputed obligations are allowed, and (c) the Prepetition EFIH Second Lien Creditors are adequately protected.

L.    Notice.  In accordance with the Interim Fee Order and rules 2002, 4001(c) and (d), and 9014 of the Bankruptcy Rules, and the Local Bankruptcy Rules, notice of the Final Hearing and the relief requested in the EFIH First Lien DIP Motion has been provided by the EFIH Debtors, whether by facsimile, email, overnight courier or hand delivery, to certain parties in interest, including: (a) the Office of the U.S. Trustee for the District of Delaware; (b) the entities listed on the Consolidated List of Creditors Holding the 50 Largest Unsecured Claims filed pursuant to Bankruptcy Rule 1007(d) and proposed counsel thereto; (c) Wilmington Trust, N.A., in its capacity as administrative agent under the Texas Competitive Electric Holdings Company LLC ("TCEH LLC" and, together with Energy Future Competitive Holdings Company LLC ("EFCH") and their subsidiaries, "TCEH")) first lien credit agreement and collateral agent under the TCEH intercreditor agreements and counsel thereto; (d) Bank of New York Mellon Trust Company, N.A., in its capacity as indenture trustee under:  (i) the TCEH unsecured pollution control revenue bonds; and (ii) the EFCH 2037 Notes due 2037, and counsel thereto; (e) American Stock Transfer & Trust Company, LLC, in its capacity as indenture trustee under:  (i) the 9.75% Energy Future Holdings Corp. ("EFH") senior unsecured notes due 2019; (ii) the 10.0% EFH senior unsecured notes due 2020; (iii) the 10.875% EFH LBO senior unsecured notes due 2017; (iv) the 11.25%/12.0% EFH LBO toggle notes due 2017; (v) the 5.55% EFH legacy notes (series P) due 2014; (vi) the 6.50% EFH legacy notes (series Q) due 2024; and (vii) the 6.55% EFH legacy notes (series R) due 2034, and counsel thereto; (f) Computershare Trust Company, N.A. and Computershare Trust Company of Canada, in their capacities as indenture trustee under:  (i) the 11.0% EFIH senior secured second lien notes due

2021; and (ii) the 11.75% EFIH senior secured second lien notes due 2022, and counsel thereto; (g) UMB Bank, N.A. in its capacity as indenture trustee under: (i) the 9.75% EFIH senior unsecured notes due 2019; and (ii) the 11.25%/12.25% EFIH senior toggle notes due 2018, and counsel thereto; (h) BOKF, NA, dba Bank of Arizona, in its capacity as indenture trustee under 11.50% TCEH senior secured notes due 2020, and counsel thereto; (i) CSC Trust Company of Delaware in its capacity as indenture trustee under: (i) the 6.875% EFIH senior secured notes due 2017; and (ii) the 10.0% EFIH senior secured notes due 2020, and counsel thereto; (j) Law Debenture Trust Company of New York in its capacity as indenture trustee under: (i) the 10.25% TCEH senior unsecured notes due 2015; and (ii) the 10.50%/11.25% TCEH senior toggle notes due 2016, and counsel thereto; (k) Wilmington Savings Fund Society, FSB in its capacity as indenture trustee under the 15.0% TCEH senior secured second lien notes due 2021, and counsel thereto; (l) counsel to certain holders of claims against the Debtors regarding each of the foregoing described in clauses (c) through (k); (m) the agent for the TCEH debtor-in-possession financing facility and counsel thereto; (n) the agent for the EFIH First Lien DIP Financing and counsel thereto; (o) counsel to certain holders of equity in Texas Energy Future Holdings Limited Partnership; (p) counsel to the Ad Hoc Committee of TCEH Unsecured Noteholders; (q) counsel to the Ad Hoc Committee of TCEH Second Lien Noteholders; (r) counsel to Oncor Electric Delivery Company LLC, (s) the Securities and Exchange Commission; (t) the Internal Revenue Service; (u) the Office of the United States Attorney for the District of Delaware; (v) the Office of the Texas Attorney General on behalf of the Public Utility Commission of Texas; (w) counsel to the Electric Reliability Council of Texas; (x) Texas Transmission Investment LLC and counsel thereto; (y) Oncor Electric Delivery Holdings Company LLC and counsel thereto; and (z) proposed counsel to the Appointed Committee.

Notice of the Hearing having been given by the EFIH Debtors in a manner consistent with the Bankruptcy Code and the Hearing having been held by this Court on June 6, 2014; and upon the record at the Hearing, and after due deliberation and consideration and sufficient cause appearing therefor;

IT IS HEREBY ORDERED that:

1.    <u>Financing Approved and Repayment Authorized</u>.    The EFIH First Lien DIP Motion is granted to the extent set forth in this Final Order, the EFIH First Lien DIP Financing is authorized and approved, the EFIH First Lien Exchange is authorized and approved, the consummation of the EFIH First Lien Repayment is authorized and approved, and the EFIH Debtors are authorized to use cash collateral, each subject to the terms and conditions set forth in this Final Order.

2.    <u>Objections Overruled</u>.    All objections to the EFIH First Lien DIP Motion, the Consent Motion, the EFIH First Lien DIP Financing, the EFIH Partial Second Lien Repayment, or entry of the Final Order, to the extent not withdrawn or resolved, each as set forth in this Final Order, are hereby overruled.  This Final Order shall be effective immediately upon its entry.

**EFIH First Lien DIP Financing Authorization**

3.    <u>Authorization of the DIP Financing</u>.    The EFIH Debtors are expressly and immediately authorized and empowered to execute and deliver the EFIH First Lien DIP Documents and the Exchange Agreements and other documents related thereto (the "<u>Exchange Documents</u>") and to incur and to perform the EFIH First Lien DIP Obligations and obligations under the Exchange Documents (the "<u>Exchange Obligations</u>") in accordance with, and subject to, the terms of this Final Order, the First Lien Settlement Order, the EFIH First Lien DIP Documents, and the Exchange Documents, and to deliver all instruments and documents which may be required or necessary or reasonably requested by the EFIH First Lien DIP Agent for the

performance by the EFIH Debtors under the EFIH First Lien DIP Financing and the creation and perfection of the EFIH First Lien DIP Liens described in, and provided for by, this Final Order and the EFIH First Lien DIP Documents.  The EFIH Debtors are hereby authorized and directed to pay, as such become due and without need to obtain further Court approval, in accordance with this Final Order, the principal, interest, fees, expenses, reimbursement obligations, and the other amounts payable or reimbursable by the EFIH Debtors pursuant to the EFIH First Lien DIP Documents, the Exchange Documents, and all other documents comprising the EFIH First Lien DIP Financing including, without limitation, the Interim Fees approved by the Interim Fee Order, commitment fees, closing fees, arrangement fees, incentive fees, and administrative agent's fees, whether or not the transactions contemplated hereby are consummated, as provided for in the EFIH First Lien DIP Credit Agreement, the EFIH First Lien DIP Documents, and the Exchange Documents.  All collections and proceeds, whether ordinary course or otherwise, will be applied as required by this Final Order, the EFIH First Lien DIP Documents, and the Exchange Documents.  Upon execution and delivery, the EFIH First Lien DIP Documents and the Exchange Documents shall represent valid and binding obligations of the EFIH Debtors, enforceable against each of the EFIH Debtors and their estates in accordance with their terms.

4.    Authorization to Borrow.  Until the DIP Termination Date (as defined herein), and subject to the terms and conditions set forth in the EFIH First Lien DIP Documents, the EFIH First Lien DIP Financing, and this Final Order, the EFIH Debtors are hereby authorized to borrow money under the EFIH First Lien DIP Financing, and any Guarantors are hereby authorized to guarantee such borrowings, consisting of borrowings in an aggregate principal amount of $5,400,000,000 under the EFIH First Lien DIP Financing.

5.     The Term Loans of the Exchanging Lenders shall not be funded in cash, but instead, shall be issued in exchange for the Prepetition EFIH First Lien Obligations (as defined herein) in an amount equal to the Exchanged Amount as calculated in accordance with the Exchange Agreements set forth in the schedules to the EFIH First Lien DIP Credit Agreement.

6.     <u>Use of EFIH First Lien DIP Financing Proceeds</u>.  Immediately upon entry of this Final Order, the EFIH Debtors are authorized to draw the entirety of the EFIH First Lien DIP Financing and use advances of credit under the EFIH First Lien DIP Financing only for the purposes specifically set forth in, and subject to the terms and conditions of, this Final Order and the EFIH First Lien DIP Documents.

7.     <u>EFIH First Lien DIP Obligations</u>.  The EFIH First Lien DIP Obligations shall be enforceable against the EFIH Debtors, their estates, and any successors thereto, including, without limitation, any trustee appointed in the Cases, any case under chapter 7 of the Bankruptcy Code upon the conversion of any of the Cases, or in any other proceedings superseding or related to any of the foregoing (collectively, the "<u>Successor Cases</u>").  On the DIP Termination Date, (a) the EFIH First Lien DIP Obligations shall be due and payable, without notice or demand, to the extent provided for under the EFIH First Lien DIP Credit Agreement and subject to any requirements in the EFIH First Lien DIP Credit Agreement to provide prior notice of acceleration, and (b) unless all the EFIH First Lien DIP Obligations (excluding any Secured Hedge Obligations, any Secured Cash Management Obligations, and Contingent Obligations) have been indefeasibly paid in full, in cash, the use of the EFIH DIP Collateral, including cash collateral, shall automatically cease.

8.     <u>EFIH First Lien DIP Liens</u>.  To secure the EFIH First Lien DIP Obligations, effective immediately upon entry of this Final Order, pursuant to sections 361, 362, 364(c)(2),

364(c)(3), and 364(d) of the Bankruptcy Code, the EFIH First Lien DIP Agent, for the benefit of itself, any sub-agents, and the EFIH First Lien DIP Secured Parties, is hereby granted the following continuing, valid, binding, enforceable, non-avoidable, and automatically and properly perfected postpetition security interests and liens (all property identified in clauses (a), (b), and (c) below being collectively referred to as the "EFIH DIP Collateral"), subject to the payment of the Carve Out (all such liens and security interests granted to the EFIH First Lien DIP Agent, for the benefit of itself, any sub-agents, and the EFIH First Lien DIP Secured Parties, pursuant to this Final Order and the EFIH First Lien DIP Documents, the "EFIH First Lien DIP Liens") and notwithstanding any agreement that may purport to prevent, hinder, or attach obligations with respect to the incurrence of the EFIH First Lien DIP Liens, including, but not limited to, that certain Investor Rights Agreement (as amended, modified, supplemented, restated, or waived from time to time), dated as of November 5, 2008, entered into by and among Oncor Electric Delivery Company LLC, Oncor Electric Delivery Holdings Company LLC, Texas Transmission Investment LLC, and EFH:

(a)     First Lien on Cash Balances and Unencumbered Property.  Pursuant to section 364(c)(2) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected first priority senior security interest in and lien upon all prepetition and postpetition property of the EFIH Debtors, whether existing on the Petition Date or thereafter acquired, that, on or as of the Petition Date, is not subject to valid, perfected, and non-avoidable liens, including, without limitation, all real and personal property, inventory, plant, fixtures, machinery, equipment, cash, any investment of such cash, accounts receivable, other rights to payment whether arising before or after the Petition Date (including, without limitation, postpetition intercompany claims of the EFIH Debtors), deposit accounts, investment property,

supporting obligations, minerals, oil, gas, and as-extracted collateral, causes of action (including those arising under section 549 of the Bankruptcy Code and any related action under section 550 of the Bankruptcy Code), royalty interests, chattel paper, contracts, general intangibles, documents, instruments, interests in leaseholds, letter of credit rights, patents, copyrights, trademarks, trade names, other intellectual property, capital stock and stock equivalents of subsidiaries, books and records pertaining to the foregoing, and to the extent not otherwise included, all proceeds, products, offspring, and profits of any and all of the foregoing (the "Unencumbered Property").  Notwithstanding the prior sentence, Unencumbered Property shall in any event exclude the EFIH Debtors' claims and causes of action under chapter 5 of the Bankruptcy Code (other than causes of action arising under section 549 of the Bankruptcy Code and any related action under section 550 of the Bankruptcy Code), or any other avoidance actions under the Bankruptcy Code (collectively, "Avoidance Actions"), but shall include any proceeds or property recovered, unencumbered, or otherwise the subject of successful Avoidance Actions, whether by judgment, settlement, or otherwise.

(b)     Liens Priming Prepetition EFIH Liens.  Pursuant to section 364(d)(1) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected first priority senior priming security interest in and lien upon all prepetition and postpetition property of the EFIH Debtors, whether existing on the Petition Date or thereafter acquired, that is subject to valid, perfected, and non-avoidable liens presently held by the Collateral Trustee (as defined in the EFIH Collateral Trust Agreement) (the "EFIH Prepetition Collateral Trustee") (for the benefit of the Prepetition Secured Notes Trustees).  The priming security interests and liens granted pursuant to this paragraph 8(b) shall be senior in all respects to the interests in such property of any of the EFIH Prepetition Collateral Trustee, Prepetition Secured Notes Trustees,

and Prepetition Secured Creditors arising from current and future liens of any of the EFIH Prepetition Collateral Trustee, Prepetition Secured Notes Trustees, and Prepetition EFIH Secured Creditors (including, without limitation, any and all forms of adequate protection granted to the foregoing), but shall not be senior to any valid, perfected, and non-avoidable interests of other parties arising out of liens, if any, on such property existing immediately prior to the Petition Date, or to any valid, perfected, and non-avoidable interests in such property arising out of liens to which the liens of the EFIH Prepetition Collateral Trustee or Prepetition Secured Notes Trustees become subject subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code (the "Permitted Liens").

(c)    Liens Junior to Certain Other Liens.  Pursuant to section 364(c)(3) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected security interest in and lien upon all prepetition and postpetition property of the EFIH Debtors (other than the property described in clause (a) or (b) of this paragraph 8, as to which the liens and security interests in favor of the EFIH First Lien DIP Agent will be as described in such clauses), whether existing on the Petition Date or thereafter acquired, that is subject to valid, perfected, and non-avoidable liens in existence immediately prior to the Petition Date, or to any valid and non-avoidable liens in existence immediately prior to the Petition Date that are perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code, which security interests and liens in favor of the EFIH First Lien DIP Agent are junior to such valid, perfected, and non-avoidable liens.

(d)    Liens Senior to Certain Other Liens.  The EFIH First Lien DIP Liens shall be senior to and shall not be junior or subordinate to (i) any lien or security interest that is avoided and preserved for the benefit of the EFIH Debtors and their estates under section 551 of

the Bankruptcy Code or (ii) any liens arising after the Petition Date, including, without limitation, any liens or security interests granted in favor of any federal, state, municipal, or other domestic or foreign governmental unit (including any regulatory body), commission, board, or court for any liability of the EFIH Debtors.

(e)     Notwithstanding anything to the contrary in the EFIH First Lien DIP Documents or this Final Order, for the purposes of this Final Order, in no event shall the Unencumbered Property include, or the EFIH First Lien DIP Liens granted under this Final Order attach to, Excluded Collateral (as defined in the EFIH First Lien DIP Credit Agreement).

9.     <u>DIP Lien Priority</u>.  The EFIH First Lien DIP Liens are valid, binding, continuing, automatically perfected, non-avoidable, senior in priority, and superior to any security, mortgage, collateral interest, lien, or claim to any of the EFIH DIP Collateral, except that the EFIH First Lien DIP Liens shall be junior only to Permitted Liens and the Carve Out.  Pursuant to section 364(d) of the Bankruptcy Code, the EFIH First Lien DIP Liens shall be senior to the Prepetition First Priority Liens, the Prepetition Second Priority Liens, and any and all forms of adequate protection (if any) granted in the Cases.  For purposes of this Final Order, it shall be an Event of Default if, other than as set forth in this Final Order, the EFIH First Lien DIP Liens shall be made junior to, or *pari passu* with, any lien or security interest heretofore or hereinafter granted in the Cases or any Successor Cases, upon the conversion of any of the Cases to a case under chapter 7 of the Bankruptcy Code (or in any other Successor Case), and/or upon the dismissal of any of the Cases or Successor Cases.  No lien or interest avoided and preserved for the benefit of the estate pursuant to section 551 of the Bankruptcy Code shall be *pari passu* with or senior to the EFIH First Lien DIP Liens.

10.      <u>DIP Superpriority Claims</u>.  Upon entry of this Final Order, the EFIH First Lien DIP Agent and the EFIH First Lien DIP Secured Parties are hereby granted, pursuant to section 364(c)(1) of the Bankruptcy Code, allowed superpriority administrative expense claims in each of the Cases and any Successor Cases (collectively, the "<u>DIP Superpriority Claims</u>") for all EFIH First Lien DIP Obligations:  (a) except as set forth in this Final Order, with priority over any and all administrative expense claims, diminution claims, unsecured claims, and all other claims against the EFIH Debtors or their estates in any of the Cases and any Successor Cases, existing on the Petition Date or thereafter arising, of any kind or nature whatsoever, including, without limitation, administrative expenses of the kinds specified in, or ordered pursuant to, sections 105, 326, 328, 330, 331, 365, 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 546(d), 726, 1113, and 1114 of the Bankruptcy Code, and any other provision of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy, or attachment, which allowed claims shall be payable from, and have recourse to, all prepetition and postpetition property of the EFIH Debtors and all proceeds thereof; and (b) which shall at all times be senior to the rights of the EFIH Debtors and their estates, and any successor trustee or other estate representative to the extent permitted by law. Notwithstanding the foregoing, the DIP Superpriority Claims shall be subject only to the payment of the Carve Out, to the extent specifically provided for in this Final Order.

11.      <u>No Obligation to Extend Credit</u>.  The EFIH First Lien DIP Agent and the EFIH First Lien DIP Lenders shall have no obligation to make any loan or advance under the EFIH First Lien DIP Documents, unless all of the conditions precedent to the making of such extension of credit under the EFIH First Lien DIP Documents and this Final Order have been satisfied in full or waived in accordance with the terms of the EFIH First Lien DIP Documents.

**The EFIH First Lien Repayment and EFIH Makewhole Settlements**

12.      The EFIH First Lien Repayment as described more fully in the EFIH First Lien DIP Motion and as set forth in this Final Order is hereby approved and shall be in full satisfaction of all principal and accrued but unpaid interest due and owing under the EFIH First Lien Notes, the EFIH First Lien Indentures and any related documents, and the EFIH Debtors are hereby authorized and directed to consummate the EFIH First Lien Repayment, *provided, however*, that the rights of all parties are preserved with respect to the EFIH First Lien Makewhole Claims, default or penalty interest, if any (including with respect to Additional Interest and interest on interest), and the payment of fees and expenses and all other amounts under the EFIH First Lien Documents and the EFIH Collateral Trust Agreement.  The EFIH Debtors are authorized to issue debt under the EFIH First Lien DIP Financing to satisfy the EFIH Debtors' obligations under the EFIH Makewhole Settlements to the extent authorized by the Settlement Orders and to the extent permitted under the EFIH First Lien DIP Credit Agreement.

13.      The Debtors, EFIH Prepetition Collateral Trustee, EFIH First Lien Notes Trustee, and Prepetition EFIH First Lien Creditors are authorized and directed to (a) take all actions reasonably requested by the EFIH Debtors to implement the EFIH First Lien Repayment and EFIH First Lien Settlement and (b) enter into and deliver any instruments, documents, certifications, supplements and agreements that may be reasonably necessary or desirable to implement the EFIH First Lien Repayment, including, without limitation, the delivery of any physical collateral in the possession of the EFIH Prepetition Collateral Trustee to the EFIH First Lien DIP Agent (provided that such delivery shall not affect the validity and perfection of the liens purportedly securing the Prepetition First Lien Obligations), and the Borrowers or an agent of the Borrowers shall pay the proceeds payable to the non-settling Prepetition EFIH First Lien

Creditors under the EFIH First Lien Repayment, in immediately available funds, to CSC Trust Company of Delaware, in its capacity as paying agent and collateral agent, in connection with the consummation of the EFIH First Lien Repayment for the benefit of the non-settling Prepetition EFIH First Lien Creditors, and, as promptly as practicable thereafter and without undue delay, CSC Trust Company of Delaware shall distribute such proceeds to the non-settling Prepetition EFIH First Lien Creditors in accordance with the EFIH First Lien Indentures.  The EFIH Debtors' payment of amounts set forth in paragraph E(vi) to CSC Trust Company of Delaware shall constitute full satisfaction of all principal and accrued but unpaid interest (but excluding Additional Interest and interest on interest) under the EFIH First Lien Notes held by non-settling Prepetition EFIH First Lien Creditors, and all obligations of the EFIH Debtors shall cease with respect thereto, and, for the avoidance of doubt, no interest shall accrue on the EFIH First Lien Notes held by non-settling Prepetition EFIH First Lien Creditors with respect to amounts so paid.

14.    The EFIH First Lien Notes Trustee, following the consummation of the EFIH First Lien Repayment and the EFIH First Lien Settlement, shall in its customary manner reduce the EFIH First Lien Notes, provide to the EFIH Debtors evidence of such reduction, and take any such other customary or reasonable actions in connection with the consummation of the EFIH First Lien Repayment and EFIH First Lien Settlement, including, without limitation, acceptance of certain withdrawals via "Deposit or Withdrawal at Custodian" and confirmation of any drawdown submitted by the EFIH First Lien Notes Trustee to The Depository Trust Company in connection with the consummation of the EFIH First Lien Repayment and EFIH First Lien Settlement.

**Use of Cash Collateral**

15.     The EFIH Debtors hereby are authorized to use the cash and cash equivalent proceeds of the collateral securing the EFIH Prepetition Secured Obligations that constitute "cash collateral" within the meaning of section 363 of the Bankruptcy Code and other property in which the EFIH Prepetition Collateral Trustee and Prepetition Secured Notes Trustees have an interest pursuant to sections 363(b) and 363(c) of the Bankruptcy Code in accordance with the terms and conditions of the EFIH First Lien DIP Credit Agreement and as set forth in this Final Order, *provided, however*, that use of cash or transfers of cash to any debtor other than the EFIH Debtors shall not be permitted, except to the extent permitted under the "first day" order authorizing the EFIH Debtors to, among other things, continue using their cash management system (the "Cash Management Order"), *provided further, however*, that the foregoing shall not restrict intercompany payments and other transfers of cash collateral in connection with any bankruptcy-related expenses of the EFIH Debtors (including payment of professionals' fees of the EFIH Debtors) to the extent that such payments or other transfers are approved by the Cash Management Order, including, but not limited to, pursuant to any Shared Services Agreement or Tax Sharing Agreement (as defined in the EFIH First Lien DIP Credit Agreement).

**EFIH First Lien DIP Financing**

16.     Amendments to the EFIH First Lien DIP Documents.  The EFIH Debtors are hereby authorized to implement, in accordance with the terms of the EFIH First Lien DIP Documents, (a) any nonmaterial modifications (including, without limitation, any change to the number or composition of the EFIH First Lien DIP Lenders) of the EFIH First Lien DIP Documents without further order of the Court, and (b) any other modifications to the EFIH First Lien DIP Documents, *provided, however*, that notice of any material modification or amendment to the EFIH First Lien DIP Documents shall be provided to counsel for the Creditors'

Committee, the U.S. Trustee, counsel for the EFIH First Lien Notes Trustee, and counsel for the group of EFIH Toggle Notes (the "Toggle Note Group"), each of whom shall have five (5) days from the date of such notice within which to object, in writing, to such modification or amendment.  If the Creditors' Committee, the U.S. Trustee, the EFIH First Lien Notes Trustee, or the Toggle Note Group timely objects to any material modification or amendment to the EFIH First Lien DIP Documents, such modification or amendment shall only be permitted pursuant to an order of the Court.  The foregoing shall be without prejudice to the EFIH Debtors' right to seek approval from the Court of a material modification on an expedited basis.

17.    Budget and Annual Forecast Reporting.  Beginning on the date of entry of this Final Order, the Borrowers will provide the EFIH First Lien DIP Agent (for distribution to each of the EFIH First Lien DIP Lenders), the Creditors' Committee, and the Toggle Note Group with a statement of cash sources and uses of all free cash flow for the next full three (3)-calendar months of the EFIH Debtors (on a consolidated basis) broken down by month (the "Budget"), in the form of the Initial Budget (as defined in the EFIH First Lien DIP Credit Agreement) attached to the EFIH First Lien DIP Credit Agreement as Exhibit I, including the anticipated uses of the EFIH First Lien DIP Financing for such period, and after such three (3)-calendar month period, at the end of each fiscal quarter (or, at the election of the Borrowers, at the end of each calendar month or such other earlier period as may be agreed), an updated Budget for the subsequent three (3)-calendar month period.  The borrowing under the EFIH First Lien DIP Financing is subject to, among other things, the Borrowers' delivery of the Initial Budget to the EFIH First Lien DIP Agent and the EFIH First Lien DIP Lenders, which shall be in form and substance reasonably satisfactory to the EFIH First Lien DIP Agent and the Joint Lead Arrangers (as defined in the EFIH First Lien DIP Credit Agreement).  The Borrowers will also provide the First Lien DIP

Agent (for distribution to each of the EFIH First Lien DIP Lenders), the Creditors' Committee, and the Toggle Note Group on a monthly basis, with a variance report for each calendar month (delivered no later than the end of the subsequent calendar month), (a) showing a statement of actual cash sources and uses of all free cash flow for the immediately preceding calendar month, noting therein all material variances from values set forth for such historical periods in the most recently delivered Budget, including explanations for all material variances and (b) certified as to its reasonableness when made by an Authorized Officer (as defined in the EFIH First Lien DIP Credit Agreement) of the Borrowers.  Beginning on the date 60 days after the entry of this Final Order (and again no later than December 1, 2014 for the business plan and operating budget covering 2015, and no later than December 1, 2015 for the business plan and operating budget covering 2016), the Borrowers will provide the EFIH First Lien DIP Agent (for distribution to each of the EFIH First Lien DIP Lenders), the Creditors' Committee, and the Toggle Note Group with the EFIH Debtors' approved annual business plan and projected operating budget through the EFIH First Lien DIP Financing's stated maturity date (the "Annual Operating Forecast"), (x) which shall be broken down by month, including, without limitation, income statements, balance sheets, cash flow statements, projected capital expenditures, asset sales, a line item for total available liquidity for the period of such Annual Operating Forecast and (y) which shall set forth the anticipated uses of the EFIH First Lien DIP Financing for such period, certified as to its reasonableness when made by an Authorized Officer of the Borrowers.  Both the Budget and the Annual Operating Forecast shall provide, among other things, for the payment of the fees and expenses relating to the EFIH First Lien DIP Financing, ordinary course administrative expenses, bankruptcy-related expenses and working capital, and other general corporate needs; *provided, however*, that the Allowed Professional Fees and fees and expenses related to the EFIH First

Lien DIP Financing will be due and payable, and will be paid by the EFIH Debtors, whether or not consistent with the items or amounts set forth in the Initial Budget, the Budget, or the Annual Operating Forecast; and *provided, further*, that under no circumstance will the Initial Budget, the Budget, or the Annual Operating Forecast be construed as a cap or limitation on the amount of the Allowed Professional Fees or the fees and expenses related to the EFIH First Lien DIP Financing due and payable by the EFIH Debtors.

18.    <u>Modification of the Automatic Stay</u>.    The automatic stay imposed under section 362(a) of the Bankruptcy Code is hereby modified as necessary to effectuate all of the terms and provisions of this Final Order, including, without limitation, to (a) permit the EFIH Debtors to grant the EFIH First Lien DIP Liens and the DIP Superpriority Claims, (b) permit the EFIH Debtors to perform such acts as the EFIH First Lien DIP Agent and the EFIH First Lien DIP Lenders each may request in its sole discretion to assure the perfection and priority of the liens granted in this Final Order, (c) permit the EFIH Debtors to incur all liabilities and obligations to the EFIH First Lien DIP Agent and the EFIH First Lien DIP Secured Parties under the EFIH First Lien DIP Documents and this Final Order, and (d) authorize the EFIH Debtors to make payments, and the EFIH First Lien DIP Agent and the EFIH First Lien DIP Lenders to retain and apply payments made, in accordance with the terms of this Final Order.

19.    <u>Perfection of EFIH First Lien DIP Liens</u>.    This Final Order shall be sufficient and conclusive evidence of the granting, attachment, validity, perfection, and priority of all liens granted in this Final Order, including the EFIH First Lien DIP Liens  without the necessity of filing or recording any financing statement, patent filing, trademark filing, copyright filing, fixture filing, mortgage, notice of lien, or other instrument or document, which may otherwise be required under the law or regulation of any jurisdiction, or the taking possession of, or control

over, assets, or the taking of any other action (including, for the avoidance of doubt, entering into any deposit account control agreement, securities account control agreement, or other similar agreement) to grant, attach, validate, or perfect (in accordance with applicable non-bankruptcy law) the EFIH First Lien DIP Liens, or to entitle the EFIH First Lien DIP Agent, the EFIH First Lien DIP Secured Parties, or other secured parties pursuant to the EFIH First Lien DIP Documents to the priorities granted in this Final Order.  Notwithstanding the foregoing, the EFIH First Lien DIP Agent is authorized, but not required, to file, as it in its sole discretion deems necessary, such financing statements, patent filings, trademark filings, copyright filings, mortgages, notices of liens, and other similar documents to perfect in accordance with applicable non-bankruptcy law or to otherwise evidence the EFIH First Lien DIP Liens, and all such financing statements, patent filings, trademark filings, copyright filings, mortgages, notices of lien, and other documents shall be deemed to have been filed or recorded as of the Petition Date; *provided, however*, that no such filing or recordation shall be necessary or required in order to create or perfect the EFIH First Lien DIP Liens.  The EFIH Debtors are authorized and directed to execute and deliver promptly following written demand to the EFIH First Lien DIP Agent all such financing statements, mortgages, notices, and other documents and information as the EFIH First Lien DIP Agent may reasonably request.  The EFIH First Lien DIP Agent, in its discretion, may file a photocopy of this Final Order as a financing statement with any filing or recording office or with any registry of deeds or similar office, in addition to, or in lieu of, such financing statements, notices of lien, or similar instrument.  In furtherance of the foregoing and without further approval of the Court, each Debtor is (a) authorized to do and perform all acts to make, execute, and deliver all instruments and documents and provide all information and

(b) authorized and directed to pay all fees that, in each case, may be reasonably required or necessary for the EFIH Debtors' performance hereunder.

20. <u>Proceeds of Subsequent Financing</u>.    If the EFIH Debtors, any trustee, any examiner with enlarged powers, or any responsible officer subsequently appointed in the Cases or any Successor Cases, shall obtain credit or incur debt pursuant to sections 364(b), 364(c), or 364(d) of the Bankruptcy Code or in violation of the EFIH First Lien DIP Documents at any time prior to such time as the EFIH First Lien DIP Obligations (excluding any Secured Hedge Obligations, any Secured Cash Management Obligations, and Contingent Obligations) have been indefeasibly paid in full, in cash, all Commitments have been terminated, including subsequent to the confirmation of any plan with respect to any or all of the EFIH Debtors and the EFIH Debtors' estates, and such facilities are secured by any EFIH DIP Collateral, then cash proceeds derived from such credit or debt shall be used to the extent necessary to indefeasibly repay in full, in cash the EFIH First Lien DIP Obligations.

21. <u>Maintenance of EFIH DIP Collateral</u>.    Until such time as all EFIH First Lien DIP Obligations (excluding any Secured Hedge Obligations, any Secured Cash Management Obligations, and Contingent Obligations) have been indefeasibly paid in full, in cash, and all Commitments have been terminated, the EFIH Debtors shall (a) maintain and insure the EFIH DIP Collateral in amounts, for the risks, and by the entities as required under the EFIH First Lien DIP Documents and (b) maintain the cash management system in effect as of the Petition Date consistent with the Cash Management Order (as defined in the EFIH First Lien DIP Credit Agreement), as modified by any order that may be entered by the Court or as otherwise required by the EFIH First Lien DIP Documents.

22. <u>Disposition of EFIH DIP Collateral; Rights of EFIH First Lien DIP Agent and EFIH First Lien DIP Lenders</u>.  The EFIH Debtors shall not sell, transfer, lease, encumber, or otherwise dispose of any portion of the EFIH DIP Collateral other than as permitted in the EFIH First Lien DIP Documents (and, no consent shall be implied from any action, inaction, or acquiescence by the EFIH First Lien DIP Agent, the EFIH First Lien DIP Lenders, or an order of the Court); *provided* that the EFIH Debtors may release liens on the EFIH DIP Collateral solely to the extent permitted by the EFIH First Lien DIP Documents (including the EFIH DIP Intercreditor Agreement).  Without limiting the provisions of the EFIH DIP Intercreditor Agreement, under no circumstances shall the EFIH Prepetition Collateral Trustee, the Prepetition Secured Notes Trustees, the EFIH Second Lien DIP Agent, if any, any Prepetition EFIH Secured Creditor, or lenders or purchasers under any EFIH Second Lien DIP Facility (an "<u>EFIH Second Lien DIP Note Purchaser</u>"), if any, have any enforcement rights against the EFIH First Lien DIP Collateral or any other rights or remedies that may interfere with or otherwise restrict the rights and remedies of the EFIH First Lien DIP Agent or the EFIH First Lien DIP Lenders hereunder, under the EFIH First Lien DIP Documents or otherwise with respect to EFIH First Lien DIP Obligations.  Without limiting any rights or obligations under the EFIH DIP Intercreditor Agreement, and, subject to an obligation of the EFIH First Lien DIP Agent to proceed in good faith, the EFIH First Lien DIP Agent and the EFIH First Lien DIP Lenders shall have no obligations to the EFIH Prepetition Collateral Trustee, the Prepetition Secured Notes Trustees, the EFIH Second Lien DIP Agent, if any, any Prepetition EFIH Secured Creditor, or any EFIH Second Lien DIP Note Purchaser, if any, with respect to the EFIH DIP Collateral, including that, except as may otherwise be specifically provided in the EFIH DIP Intercreditor Agreement: (i) any collection, sale or other disposition of any or all of the EFIH DIP Collateral by the EFIH

First Lien DIP Agent or EFIH First Lien DIP Lenders shall be free and clear of any and all security interests, liens and claims of the EFIH Prepetition Collateral Trustee, the Prepetition Secured Notes Trustees, the EFIH Second Lien DIP Agent, if any, any Prepetition EFIH Secured Creditor, or any EFIH Second Lien DIP Note Purchaser; (ii) none of the foregoing parties will oppose, interfere with or otherwise attempt to prevent the EFIH First Lien DIP Agent on behalf of itself and the EFIH First Lien DIP Lenders from enforcing their security interests in, or liens on, any of the EFIH DIP Collateral; and (iii) none of the foregoing parties shall have any right to require the EFIH First Lien DIP Agent and EFIH First Lien DIP Lenders to (a) marshal any property or assets of the EFIH Debtors, or (b) enforce any guaranty or any security interest or lien given by any person or entity other than any of the EFIH Debtors to secure the payment of any or all of the EFIH First Lien DIP Obligations as a condition precedent or concurrent to taking any action against or with respect to the EFIH DIP Collateral.

23.    <u>DIP Termination Date</u>.  On the DIP Termination Date, (a) the EFIH First Lien DIP Obligations shall be immediately due and payable and all Commitments shall terminate and (b) unless the EFIH First Lien DIP Obligations (excluding any Secured Hedge Obligations, any Secured Cash Management Obligations, and Contingent Obligations) have been indefeasibly paid in full, in cash, all Commitments have been terminated and all authority to use the EFIH DIP Collateral, including cash collateral, shall cease, *provided, however*, that nothing in this Final Order shall prevent or hinder the EFIH Debtors from seeking the continued use of Cash collateral with the consent of the EFIH First Lien DIP Agent in accordance with the provisions of the EFIH First Lien DIP Documents but without the consent of the EFIH Prepetition Collateral Trustee or Prepetition Secured Notes Trustees to the extent necessary.  For purposes of

this Final Order, the "DIP Termination Date" shall mean the Maturity Date as defined in the EFIH First Lien DIP Credit Agreement, or as otherwise provided in this Order.

24.    Events of Default.  The occurrence of an "Event of Default" under the EFIH First Lien DIP Documents shall constitute an Event of Default under this Final Order, unless waived in accordance with the EFIH First Lien DIP Documents.  Notwithstanding anything to the contrary contained herein or in the EFIH First Lien DIP Documents, any Event of Default under this Final Order or the EFIH First Lien DIP Documents, other than any Event of Default which cannot be waived without the written consent of each EFIH First Lien DIP Lender directly and adversely affected thereby, shall be deemed not to be "continuing" if the events, act, or condition that gave rise to such Event of Default have been remedied or cured (including by payment, notice, taking of any action, or omitting to take any action) or have ceased to exist and the Borrower is in compliance with the EFIH First Lien DIP Documents.

25.    Rights and Remedies Upon Event of Default.  Upon the occurrence of an Event of Default and following the giving of five business days' notice to the EFIH Debtors, counsel to the Creditors' Committee (the "Remedies Notice Period"), counsel to the EFIH First Lien Notes Trustee, and counsel to the Toggle Note Group, the EFIH First Lien DIP Agent, on behalf of the EFIH First Lien DIP Lenders, may exercise all rights and remedies provided for in the EFIH First Lien DIP Documents and may declare (a) the termination, reduction, or restriction of any further Commitment to the extent any such Commitment remains, (b) all EFIH First Lien DIP Obligations to be immediately due and payable, without presentment, demand, protest, or other notice of any kind, all of which are expressly waived by the EFIH Debtors, and (c) the termination of the EFIH First Lien DIP Documents as to any future liability or obligation of the EFIH First Lien DIP Agent and the EFIH First Lien DIP Lenders, but without affecting any of

the EFIH First Lien DIP Liens or the EFIH First Lien DIP Obligations. During the Remedies Notice Period, the EFIH Debtors may continue to use the EFIH DIP Collateral, including cash collateral, in the ordinary course of business, consistent with past practices and the most recently delivered Budget, but may not enter into any transactions or arrangements (including, without limitation, the incurrence of indebtedness or liens, investments, restricted payments, asset sales, or transactions with non-Debtor affiliates) that are not in the ordinary course of business; *provided* that nothing in this Final Order shall limit the ability of the EFIH Debtors to (y) seek the use of EFIH DIP Collateral, including cash collateral, on a nonconsensual basis to the extent necessary, or (z) challenge whether an Event of Default has occurred and/or is continuing. Unless the Court orders otherwise during the Remedies Notice Period, at the end of the Remedies Notice Period, (a) the EFIH Debtors shall no longer have the right to use or seek to use the EFIH DIP Collateral, including cash collateral, (b) the automatic stay pursuant to section 362 of the Bankruptcy Code, as to all of the EFIH First Lien DIP Agent and the EFIH First Lien DIP Lenders, shall be automatically terminated without further notice to, or order of, the Court, and (c) the EFIH First Lien DIP Agent, on behalf of itself and the EFIH First Lien DIP Lenders shall be permitted to exercise all rights against the EFIH DIP Collateral in accordance with the EFIH First Lien DIP Documents and this Final Order, and shall be permitted to satisfy the EFIH First Lien DIP Obligations, without further order or application or motion to the Court and without restriction or restraint by any stay under section 362 or 105 of the Bankruptcy Code. Notwithstanding anything in this Final Order to the contrary, the automatic stay pursuant to section 362 of the Bankruptcy Code shall be automatically terminated for the purposes of giving any notice contemplated hereunder. During the Remedies Notice Period, any party in interest shall be entitled to seek an emergency hearing with the Court solely for the purpose of contesting

whether an Event of Default has occurred and/or is continuing, and the EFIH Debtors waive their right to, and shall not be entitled to seek relief, including, without limitation, under section 105 of the Bankruptcy Code, to the extent that such relief would in any way impair or restrict the rights and remedies of the EFIH First Lien DIP Agent, on behalf of itself and the EFIH First Lien DIP Lenders, set forth in this Final Order or the EFIH First Lien DIP Documents, *provided, however*, that nothing in this paragraph shall (a) limit the EFIH Debtors' rights with respect to the EFIH Prepetition Collateral Trustee, the Prepetition Secured Notes Trustees, or the Prepetition EFIH Secured Creditors, including the EFIH Debtors' rights to seek the nonconsensual use of cash collateral and other collateral securing the Prepetition EFIH Secured Notes to the extent necessary; or (b) impair the rights of (i) the EFIH Debtors to file a motion with the Court seeking approval of replacement financing or (ii) any party in interest from filing a motion seeking to purchase the EFIH First Lien DIP Obligations, in either case in such a manner that would provide for the immediate indefeasible payment in full, in cash, of the EFIH First Lien DIP Obligations following the conclusion of the Remedies Notice Period.

26.     <u>Good Faith Under Section 364(e) of the Bankruptcy Code; No Modification or Stay of this Final Order</u>.  Based on the findings set forth in this Final Order and the record made during the Interim Hearing and the Final Hearing, and in accordance with section 364(e) of the Bankruptcy Code, in the event any or all of the provisions of this Final Order are hereafter modified, amended, or vacated by a subsequent order of the Court or any other court, each of the EFIH First Lien DIP Agent and each of the EFIH First Lien DIP Lenders (including the Exchanging Lenders) are entitled to the protections provided in section 364(e) of the Bankruptcy Code.  To the fullest extent permitted under section 364(e) of the Bankruptcy Code, any liens or claims granted to the EFIH First Lien DIP Agent and the EFIH First Lien DIP Lenders

(including the Exchanging Lenders) hereunder arising prior to the effective date of any such modification, amendment, or vacatur of this Final Order shall be governed in all respects by the original provisions of this Final Order, including entitlement to all rights, remedies, privileges, and benefits granted in this Final Order.

27.    <u>DIP and Other Expenses</u>.    Except as set forth below, all fees paid and payable, and costs and/or expenses reimbursed or reimbursable, as set forth in the EFIH First Lien DIP Documents and/or this Final Order, by the EFIH Debtors to the EFIH First Lien DIP Agent, the EFIH First Lien DIP Lenders, and the Joint Lead Arrangers are hereby approved.    The EFIH Debtors are hereby authorized and directed to pay all such fees, costs, and expenses, including those previously authorized by the Interim Fee Order, in accordance with the terms of the EFIH First Lien DIP Documents, including the Funding Fees, without the necessity of any further application with the Court for approval or payment of such fees, costs, or expenses.    The EFIH Debtors are authorized and directed to reimburse on the Closing Date (with respect to all fees and expenses required to be paid on the Closing Date) and thereafter within ten (10) calendar days of written demand (together with reasonably detailed supporting documentation) the EFIH First Lien DIP Agent, the EFIH First Lien DIP Lenders, and the Joint Lead Arrangers for their reasonable and documented out-of-pocket expenses incurred in connection with the negotiation, documentation, syndication, and administration of the EFIH First Lien DIP Financing, any amendments or waivers with respect thereto, any Event of Default in respect of the EFIH First Lien DIP Financing, any exercise of remedies in respect thereof, and the reasonable and documented out-of-pocket prepetition and postpetition fees, charges, and disbursements of legal counsel, financial advisors, and third-party appraisers and consultants advising (a) the EFIH First Lien DIP Agent and PIMCO incurred in connection with the EFIH First Lien DIP Agent's and

PIMCO's participation in the Cases and (b) in the case of Fidelity, to the extent provided in the commitment letter with Fidelity, limited in the case of legal counsel (A) with respect to the EFIH First Lien DIP Agent, to one primary counsel (and (1) local counsel in applicable foreign and local jurisdictions, but limited to one local counsel in each such jurisdiction, (2) regulatory counsel, and (3) solely in the case of a conflict of interest, one additional counsel in each relevant jurisdiction to the affected indemnified persons similarly situated), (B) with respect to PIMCO, one primary counsel and one Delaware counsel (as of the Closing Date (as defined in the EFIH First Lien DIP Credit Agreement), Bingham McCutchen LLP and Connolly Gallagher LLP, respectively), and (C) with respect to Fidelity, one primary counsel and one Delaware counsel (as of the Closing Date, Fried, Frank, Harris, Shriver & Jacobson LLP and Cross & Simon, LLC, respectively).  Payment of all such fees and expenses shall not be subject to allowance by the Court; *provided, however*, that, other than with respect to professional fees and expenses required to be paid pursuant to the Interim Fee Order on the date of entry of this Final Order or on the Closing Date, the EFIH Debtors shall promptly provide copies of invoices received on account of fees and expenses of the professionals retained as provided for in the EFIH First Lien DIP Credit Agreement, the EFIH First Lien DIP Documents, and this Final Order to counsel to the Creditors' Committee, counsel to the Toggle Note Group, and the U.S. Trustee, and the Court shall have exclusive jurisdiction over any objections raised to the invoiced amount of the fees and expenses proposed to be paid, which objections may only be raised within ten (10) calendar days after the EFIH Debtors' receipt thereof.  In the event that within that ten (10) calendar day period the EFIH Debtors, the U.S. Trustee, counsel to the Creditors' Committee, or counsel to the Toggle Note Group raises an objection to a particular invoice, (a) the EFIH Debtors shall promptly pay only the fees and expenses not subject to an objection, and (b) to the extent any

objection is not resolved or withdrawn, the EFIH Debtors shall pay the disputed amounts only upon the entry of an order of the Court resolving such dispute and ordering the EFIH Debtors to pay the disputed amount.  Notwithstanding anything to the contrary in this Final Order, the fees (including Funding Fees), costs, and expenses of the EFIH First Lien DIP Agent, the EFIH First Lien DIP Lenders (including PIMCO and Fidelity (in the case of Fidelity, to the extent provided by commitment letter with Fidelity)), and the Joint Lead Arrangers under the EFIH First Lien DIP Documents and this Final Order, whether incurred prior to or after the Petition Date, shall be deemed fully earned, indefeasibly paid, irrevocable, and non-avoidable pursuant to, and in accordance with, the terms of the EFIH First Lien DIP Documents and, irrespective of any subsequent order approving or denying any other financing pursuant to section 364 of the Bankruptcy Code, fully entitled to all protections of section 364(e) of the Bankruptcy Code.  All unpaid fees, costs, and expenses payable under the EFIH First Lien DIP Documents and this Final Order to the EFIH First Lien DIP Agent, the EFIH First Lien DIP Lenders, and the Joint Lead Arrangers shall be included and constitute part of the EFIH First Lien DIP Obligations and be secured by the EFIH First Lien DIP Liens.

28.    <u>Proofs of Claim</u>.  The EFIH First Lien DIP Agent and the EFIH First Lien DIP Lenders will not be required to file proofs of claim in any of the Cases or Successor Cases for any claim allowed in this Final Order.  Any order entered by the Court in relation to the establishment of a bar date in any of the Cases or Successor Cases shall not apply to the EFIH First Lien DIP Agent or the EFIH First Lien DIP Lenders.

29.    <u>Rights of Access and Information</u>.  Without limiting the rights of access and information afforded the EFIH First Lien DIP Agent and the EFIH First Lien DIP Lenders under the EFIH First Lien DIP Documents, the EFIH Debtors shall be, and hereby are, required to

afford representatives, agents, and/or employees of the EFIH First Lien DIP Agent, the EFIH First Lien DIP Lenders, the Creditors' Committee, the EFIH First Lien Notes Trustee, and the Toggle Note Group reasonable access to the EFIH Debtors' premises and its books and records in accordance with the EFIH First Lien DIP Documents and shall reasonably cooperate, consult with, and provide to such persons all such information as may be reasonably requested.  In addition, the EFIH Debtors shall authorize their independent certified public accountants, financial advisors, investment bankers, and consultants to cooperate, consult with, and provide to the EFIH First Lien DIP Agent, EFIH First Lien DIP Lenders, the EFIH First Lien Notes Trustee, the Creditors' Committee, and the Toggle Note Group all such information as may be reasonably requested from the EFIH Debtors with respect to the business, results of operations, and financial condition of the EFIH Debtors, in each case subject to the EFIH First Lien DIP Documents.

   30. <u>Carve Out</u>.

   (a) <u>Carve Out</u>.  As used in this Final Order, the "<u>Carve Out</u>" means the sum of (i) all fees required to be paid to the Clerk of the Court and to the Office of the United States Trustee under section 1930(a) of title 28 of the United States Code plus interest at the statutory rate (without regard to the notice set forth in (iii) below); (ii) all reasonable and documented fees and expenses up to $50,000 incurred by a trustee under section 726(b) of the Bankruptcy Code (without regard to the notice set forth in (iii) below); (iii) to the extent allowed at any time, whether by interim order, procedural order, or otherwise, all unpaid fees and expenses (the "<u>Allowed Professional Fees</u>") incurred by persons or firms retained by the EFIH Debtors pursuant to section 327, 328, or 363 of the Bankruptcy Code (the "<u>Debtor Professionals</u>") and retained by the Creditors' Committee pursuant to section 1103 of the Bankruptcy Code (the

"Committee Professionals" and, together with the Debtor Professionals, the "Professional Persons") at any time before or on the first business day following delivery by the EFIH First Lien DIP Agent of a Carve Out Trigger Notice (as defined below), whether allowed by the Court prior to or after delivery of a Carve Out Trigger Notice; and (iv) Allowed Professional Fees of Professional Persons in an aggregate amount not to exceed $25,000,000 incurred after the first business day following delivery by the EFIH First Lien DIP Agent of the Carve Out Trigger Notice, to the extent allowed at any time, whether by interim order, procedural order, or otherwise (the amounts set forth in this clause (iv) being the "Post-Carve Out Trigger Notice Cap").  For purposes of the foregoing, "Carve Out Trigger Notice" shall mean a written notice delivered by email (or other electronic means) by the EFIH First Lien DIP Agent to the EFIH Debtors, their lead restructuring counsel, the U.S. Trustee, lead counsel to the Creditors' Committee, and counsel to the Toggle Note Group, which notice may be delivered following the occurrence and during the continuation of an Event of Default and acceleration of the EFIH First Lien DIP Obligations under the EFIH First Lien DIP Financing, stating that the Post-Carve Out Trigger Notice Cap has been invoked.

(b)    Carve Out Reserves.  On the day on which a Carve Out Trigger Notice is given by the EFIH First Lien DIP Agent to the EFIH Debtors (the "Termination Declaration Date"), the Carve Out Trigger Notice shall constitute a demand to the EFIH Debtors to utilize all cash on hand as of such date and any available cash thereafter held by any Debtor to fund a reserve in an amount equal to the then unpaid amounts of the Allowed Professional Fees.  The EFIH Debtors shall deposit and hold such amounts in two segregated accounts at the EFIH First Lien DIP Agent in trust to pay (a) such then unpaid Allowed Professional Fees (the "Pre Carve Out Trigger Notice Reserve") prior to any and all other claims; and (b) pay such Allowed

Professional Fees benefiting from the Post-Carve Out Trigger Notice Cap (the "Post-Carve Out Trigger Notice Reserve" and, together with the Pre Carve Out Trigger Notice Reserve, the "Carve Out Reserves") prior to any and all other claims. All funds in the Pre Carve Out Trigger Notice Reserve shall be used first to pay the obligations set forth in clauses (ii) through (iii) of the definition of Carve Out set forth above, but not, for the avoidance of doubt, the Post-Carve Out Trigger Notice Cap, until paid in full, and then, to the extent the Pre Carve Out Trigger Notice Reserve has not been reduced to zero, to pay the EFIH First Lien DIP Agent for the benefit of the EFIH First Lien DIP Lenders, unless the EFIH First Lien DIP Obligations (excluding any Secured Hedge Obligations, any Secured Cash Management Obligations, and Contingent Obligations) have been indefeasibly paid in full, in cash, in which case any such excess shall be paid to the EFIH Second Lien DIP Agent (in the event the EFIH Second Lien DIP Facility has been consummated and is outstanding) for application to the EFIH Second Lien DIP Facility. All funds in the Post-Carve Out Trigger Notice Reserve shall be used first to pay the obligations set forth in clause (iv) of the definition of Carve Out set forth above, and then, to the extent the Post Carve Out Trigger Notice Reserve has not been reduced to zero, to pay the EFIH First Lien DIP Agent for the benefit of the EFIH First Lien DIP Lenders, unless the EFIH First Lien DIP Obligations (excluding any Secured Hedge Obligations, any Secured Cash Management Obligations, and Contingent Obligations) have been indefeasibly paid in full, in cash. Notwithstanding anything to the contrary in the EFIH First Lien DIP Documents or this Final Order, if either of the Carve Out Reserves is not funded in full in the amounts set forth in this paragraph 30, then, any excess funds in one of the Carve Out Reserves following the payment of the Pre-Carve Out Amounts and Post-Carve Out Amounts, respectively, shall be used to fund the other Carve Out Reserve, up to the applicable amount set forth in this paragraph

30, prior to making any payments to the EFIH First Lien DIP Agent or the EFIH Second Lien DIP Agent, as applicable.  Notwithstanding anything to the contrary in the EFIH First Lien DIP Documents or this Final Order, following delivery of a Carve Out Trigger Notice, the EFIH First Lien DIP Agent, the EFIH Second Lien DIP Agent, the EFIH Prepetition Collateral Trustee, the Prepetition Secured Notes Trustees, and the EFIH Toggle Notes Trustee shall not sweep or foreclose on cash (including cash received as a result of the sale or other disposition of any assets) of the EFIH Debtors until the Carve Out Reserves have been fully funded, but the EFIH First Lien DIP Agent (for the benefit of itself and the EFIH First Lien DIP Secured Parties) shall have a security interest in and the EFIH Second Lien DIP Agent shall have a junior security interest in any residual interest in the Carve Out Reserves, with any excess paid to the EFIH First Lien DIP Agent for application in accordance with the EFIH First Lien DIP Documents, unless the EFIH First Lien DIP Obligations (excluding any Secured Hedge Obligations, any Secured Cash Management Obligations, and Contingent Obligations) have been indefeasibly paid in full, in cash, in which case any such excess shall be paid to the EFIH Second Lien DIP Agent for application in accordance with the definitive documentation governing any EFIH Second Lien DIP Facility (the "EFIH Second Lien DIP Documents"), if any, or, if not, as otherwise ordered by the Court.  Further, notwithstanding anything to the contrary in this Final Order, (i) disbursements by the EFIH Debtors from the Carve Out Reserves shall not constitute Loans or increase or reduce the EFIH First Lien DIP Obligations, (ii) the failure of the Carve Out Reserves to satisfy in full the Allowed Professional Fees shall not affect the priority of the Carve Out, and (iii) in no way shall the Initial Budget, Budget, Annual Operating Forecast, Carve Out, Post-Carve Out Trigger Notice Cap, Carve Out Reserves, or any of the foregoing be construed as a cap or limitation on the amount of the Allowed Professional Fees due and payable by the EFIH

Debtors.  For the avoidance of doubt and notwithstanding anything to the contrary in this Final Order, the EFIH First Lien DIP Financing, the EFIH First Lien DIP Documents, the EFIH Second Lien DIP Facility, the EFIH Second Lien DIP Documents, the Prepetition EFIH Secured Notes, the EFIH First Lien Documents, the EFIH Second Lien Documents, the EFIH Senior Toggle Notes, the EFIH Toggle Notes Documents, or any other document or source, the Carve Out shall be senior to all liens and claims securing the EFIH First Lien DIP Financing, the EFIH Second Lien DIP Facility (if any), and the Prepetition Obligations (if any), and any and all forms of adequate protection, liens, or claims securing or otherwise relating to the the EFIH First Lien DIP Obligations, the obligations under any EFIH Second Lien DIP Facility, the Prepetition Secured Obligations, and the Prepetition Toggle Notes Obligations.

(c)    No Direct Obligation To Pay Allowed Professional Fees.  The EFIH First Lien DIP Agent and the EFIH First Lien DIP Lenders shall not be responsible for the payment or reimbursement of any fees or disbursements of any Professional Person incurred in connection with the Cases or any Successor Cases under any chapter of the Bankruptcy Code.  Nothing in this Final Order or otherwise shall be construed to obligate the EFIH First Lien DIP Agent or the EFIH First Lien DIP Lenders, in any way, to pay compensation to, or to reimburse expenses of, any Professional Person or to guarantee that the EFIH Debtors have sufficient funds to pay such compensation or reimbursement.

(d)    Payment of Allowed Professional Fees Prior to the Termination Declaration Date.  Any payment or reimbursement made prior to the occurrence of the Termination Declaration Date in respect of any Allowed Professional Fees shall not reduce the Carve Out.

(e)     Payment of Carve Out On or After the Termination Declaration Date. Any payment or reimbursement made on or after the occurrence of the Termination Declaration Date in respect of any Allowed Professional Fees shall permanently reduce the Carve Out on a dollar-for-dollar basis.  Any funding of the Carve Out shall be added to, and made a part of, the EFIH First Lien DIP Obligations secured by the EFIH DIP Collateral and shall be otherwise entitled to the protections granted under this Final Order, the EFIH First Lien DIP Documents, the Bankruptcy Code, and applicable law.

31.     Limitations on the EFIH First Lien DIP Financing, the EFIH DIP Collateral, and the Carve Out.  Notwithstanding anything in this Final Order to the contrary, the EFIH Debtors shall not assert or prosecute, and no portion of the proceeds of the EFIH First Lien DIP Financing, the EFIH DIP Collateral, including cash collateral, or the Carve Out, and no disbursements set forth in the Budget, may be used for the payment of professional fees, disbursements, costs, or expenses incurred by any person in connection with (a) incurring Indebtedness (as defined in the EFIH First Lien DIP Credit Agreement) except to the extent permitted under the EFIH First Lien DIP Credit Agreement; (b) preventing, hindering, or delaying any of the EFIH First Lien DIP Agent's and the EFIH First Lien DIP Lenders' (in the case of each of the foregoing, in their respective capacities as such) enforcement or realization upon any of the EFIH DIP Collateral once an Event of Default has occurred and after the Remedies Notice Period; (c) objecting, challenging, or contesting in any manner, or raising any defenses to, the validity, extent, amount, perfection, priority, or enforceability of any of the EFIH First Lien DIP Obligations or the EFIH First Lien DIP Liens, or any other rights or interest of the EFIH First Lien DIP Agent or the EFIH First Lien DIP Secured Parties (in the case of each of the foregoing, in their respective capacities as such); (d) asserting, commencing, or prosecuting any

claims or causes of action, including, without limitation, any actions under chapter 5 of the Bankruptcy Code, against any of the EFIH First Lien DIP Agent, the EFIH First Lien DIP Secured Parties, or any of their respective affiliates, agents, attorneys, advisors, professionals, officers, directors, and employees (in the case of each of the foregoing, in their respective capacities as such); or (e) asserting, joining, commencing, supporting, investigating, or prosecuting any action for any claim, counter-claim, action, cause of action, proceeding, application, motion, objection, defense, or other contested matter seeking any order, judgment, determination, or similar relief against, or adverse to the material interests of the Released Parties (as defined herein), arising out of, in connection with, or relating to the EFIH First Lien DIP Financing, the EFIH First Lien DIP Documents, or the transactions contemplated hereunder or thereunder, including, without limitation, (i) any action arising under the Bankruptcy Code; (ii) any so-called "lender liability" claims and causes of action; (iii) any action with respect to the validity and extent of the EFIH First Lien DIP Obligations, the DIP Superpriority Claims, or the validity, extent, perfection, and priority of the EFIH First Lien DIP Liens; (iv) any action seeking to invalidate, set aside, avoid, reduce, set off, offset, recharacterize, subordinate (whether equitable, contractual, or otherwise), recoup against, disallow, impair, raise any defenses, cross-claims, or counterclaims, or raise any other challenges under the Bankruptcy Code or any other applicable domestic or foreign law or regulation against, or with respect to, the EFIH First Lien DIP Liens or the DIP Superpriority Claims, in whole or in part; (v) appeal or otherwise challenge this Final Order, the EFIH First Lien DIP Documents, or any of the transactions contemplated in this Final Order or therein; and/or (vi) any action that has the effect of preventing, hindering, or delaying (whether directly or indirectly) the EFIH First Lien DIP Agent and the EFIH First Lien DIP Lenders in respect of their liens and security interests in the EFIH DIP Collateral or

any of their rights, powers, or benefits hereunder or in the EFIH First Lien DIP Documents anywhere in the world.  Any and all claims for fees or expenses incurred by the Creditors' Committee, if appointed, or by any party in interest in violation of this paragraph 31 shall not be allowed, treated, or payable as an administrative expense claim for purposes of section 1129(a)(9)(A) of the Bankruptcy Code, and the non-payment of such fees and expenses shall not constitute grounds to deny confirmation of any plan of reorganization for any of the EFIH Debtors.

32.     <u>Payment of Compensation</u>.  Nothing in this Final Order shall be construed as a consent to the allowance of any professional fees or expenses of any Professional Person or shall affect the right of the EFIH First Lien DIP Agent or the EFIH First Lien DIP Lenders to object to the allowance and payment of such fees and expenses.

33.     <u>Release</u>.  The EFIH Debtors, on behalf of themselves and their estates (including any successor trustee or other estate representative in the Cases or Successor Cases) and any party acting by, through, or under the EFIH Debtors or their estates, forever and irrevocably (a) release, discharge, waive, and acquit the current or future EFIH First Lien DIP Agent, the Joint Lead Arrangers, each of the EFIH First Lien DIP Lenders, each of their respective participants and each of their respective affiliates, and each of their respective former, current, or future officers, employees, directors, agents, representatives, owners, members, partners, financial advisors, legal advisors, shareholders, managers, consultants, accountants, attorneys, affiliates, and predecessors in interest (collectively, and in each case in their capacities as such, the "<u>Released Parties</u>"), of and from any and all claims, demands, liabilities, responsibilities, disputes, remedies, causes of action, indebtedness, and obligations, rights, assertions, allegations, actions, suits, controversies, proceedings, losses, damages, injuries, attorneys' fees, costs,

expenses, or judgments of every type, whether known, unknown, asserted, unasserted, suspected, unsuspected, accrued, unaccrued, fixed, contingent, pending, or threatened, including, without limitation, all legal and equitable theories of recovery, arising under common law, statute or regulation or by contract, of every nature and description, arising out of, in connection with, or relating to the EFIH First Lien DIP Financing, the EFIH First Lien DIP Documents, the Exchange Agreements, or the transactions contemplated hereunder or thereunder, including, without limitation, (i) any so-called "lender liability" or equitable subordination claims or defenses, with respect to or relating to the EFIH First Lien DIP Obligations, the Exchange Obligations, EFIH First Lien DIP Liens, or EFIH First Lien DIP Financing, as applicable, (ii) any and all claims and causes of action arising under the Bankruptcy Code, and (iii) and any and all claims and causes of action regarding the validity, priority, perfection, or avoidability of the liens or secured claims of the EFIH First Lien DIP Agent and the EFIH First Lien DIP Lenders and (b) waive any and all defenses (including, without limitation, offsets and counterclaims of any nature or kind) as to the validity, perfection, priority, enforceability, and nonavoidability of the EFIH First Lien DIP Obligations and the EFIH First Lien DIP Liens. For the avoidance of doubt, the release in this paragraph shall not apply to, and the Released Parties shall not include, the EFIH Prepetition Collateral Trustee, the Prepetition EFIH Secured Creditors, or the Prepetition Secured Notes Trustees in their capacities as such.

34.    <u>No Third Party Rights</u>.  Except as explicitly provided for in this Final Order, this Final Order does not create any rights for the benefit of any third party, creditor, equity holder, or any direct, indirect, or incidental beneficiary.

35.    <u>Section 506(c) Claims</u>.  No costs or expenses of administration of the Cases or any future proceeding (including any Successor Cases) that may result therefrom, which have

been or may be incurred in the Cases at any time, shall be charged against the EFIH First Lien

DIP Agent, the EFIH First Lien DIP Lenders, the EFIH First Lien Notes Trustee, the Prepetition

EFIH First Lien Creditors, or any of their respective claims or the EFIH DIP Collateral or other

collateral, pursuant to section 105 or 506(c) of the Bankruptcy Code, or otherwise, without the

prior written consent of such persons, as applicable, and no such consent shall be implied from

any other action, inaction, or acquiescence by such person.

      36.     <u>No Marshaling/Application of Proceeds</u>.  The EFIH First Lien DIP Agent and the

EFIH First Lien DIP Lenders shall not be subject to the equitable doctrine of "marshaling" or

any other similar doctrine with respect to any of the EFIH DIP Collateral, and proceeds shall be

received and applied pursuant to the terms of the DIP Credit Documents notwithstanding any

other agreement or provision herein to the contrary, *provided, however*, that nothing in this Final

Order shall impair the rights of the EFIH First Lien DIP Agent and the EFIH First Lien DIP

Lenders with respect to the EFIH DIP Collateral.  Without limiting the foregoing, or any other

provision of this Final Order, in any respect, in the event that the EFIH First Lien DIP

Obligations and the Prepetition First Lien Obligations are indefeasibly paid in full (including any

disputed portion of Prepetition First Lien Obligations (through final determination of such

amounts including any appeals)) and are satisfied from Unencumbered Property, the Appointed

Committee or any Creditors Committee shall be entitled to argue that upon such full,

indefeasible, and complete satisfaction of the EFIH First Lien DIP Obligations and Prepetition

First Lien Obligations, the proceeds of any EFIH DIP Collateral that does not constitute

Unencumbered Property should be used to establish a fund to fully replenish the Unencumbered

Property, provided that (i) such arguments would not be seeking to alter the rights of the EFIH

First Lien DIP Agent or the EFIH First Lien DIP Lenders under this Final Order, the EFIH First

Lien DIP Financing or the EFIH First Lien DIP Documents in any manner, and (ii) the rights of all parties to oppose such relief are fully preserved.

37.    <u>Noticing to Appointed Committee</u>.    The EFIH Debtors shall provide the Appointed Committee with (a) copies of any notices, statements, reports, and forecasts required to be provided to the Creditors' Committee pursuant to paragraphs 16, 17, and 25 of this Final Order, and (b) advance notice of any non-material amendments and modifications to the EFIH First Lien DIP Documents to the extent reasonably practicable.    Nothing in this Final Order (including the Findings of Fact and Conclusions of Law included herein) shall be deemed either to (i) confer standing or a right to be heard upon the Appointed Committee, or (ii) prejudice or limit the Appointed Committee from asserting that it has, or any party's right to contest any assertion by the Appointed Committee that the Appointed Committee has, standing or a right to be hearing with respect to any other matter in these Cases.

38.    <u>Joint and Several Liability</u>.    Nothing in this Final Order shall be construed to constitute a substantive consolidation of any of the EFIH Debtors' estates, it being understood, however, that the EFIH Debtors shall be jointly and severally liable for the obligations hereunder and in accordance with the terms of the EFIH First Lien DIP Financing and the EFIH First Lien DIP Documents.

39.    <u>Discharge Waiver</u>.    The EFIH First Lien DIP Obligations shall not be discharged by the entry of an order confirming any plan of reorganization, notwithstanding the provisions of section 1141(d) of the Bankruptcy Code, unless the EFIH First Lien DIP Obligations have been indefeasibly paid in full, in cash on or before the effective date of a confirmed plan of reorganization or liquidation.    It shall be an Event of Default if any of the EFIH Debtors propose or support any plan of reorganization or liquidation, sale of all or substantially all of the EFIH

Debtors' assets, or entry of any confirmation order or sale order unless any such plan of reorganization or liquidation, sale, or confirmation order provides that the EFIH First Lien DIP Obligations (excluding any Secured Hedge Obligations, any Secured Cash Management Obligations, and Contingent Obligations) shall be indefeasibly paid in full, in cash on or prior to the earlier to occur of the effective date of any such plan of reorganization or liquidation or sale and the DIP Termination Date.

      40.   <u>Rights Preserved</u>.

      (a)    Notwithstanding anything in this Final Order to the contrary, the entry of this Final Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly:  (a) the EFIH First Lien DIP Agent's or any of the EFIH First Lien DIP Lenders' right to seek any other or supplemental relief in respect of the EFIH Debtors; (b) any of the rights of the EFIH First Lien DIP Agent or any of the EFIH First Lien DIP Lenders under the Bankruptcy Code or under non-bankruptcy law, including, without limitation, the right to (i) request modification of the automatic stay of section 362 of the Bankruptcy Code, (ii) request dismissal of any of the Cases or Successor Cases, conversion of any of the Cases to cases under chapter 7, or appointment of a chapter 11 trustee or examiner with expanded powers, or (iii) propose, subject to the provisions of section 1121 of the Bankruptcy Code, a chapter 11 plan or plans; or (c) any other rights, claims, or privileges (whether legal, equitable, or otherwise) of any of the EFIH First Lien DIP Agent or any of the EFIH First Lien DIP Lenders.

      (b)    Nothing in this Final Order (including, without limitation, any factual findings herein) or the transactions contemplated hereby (including, without limitation, the closing of the EFIH First Lien Repayment) shall have any precedential, evidentiary, law of the case, or preclusive effect with respect to any present or future dispute concerning the amount (if

any) of EFIH First Lien Makewhole Claims or any other claims for damages of the EFIH First Lien Notes Trustee or the Prepetition EFIH First Lien Creditors due or that may become due as a result of, or in connection with, the EFIH First Lien Repayment, whether in connection with the action styled *CSC Trust Company of Delaware, as Indenture Trustee v. Energy Future Intermediate Holding Company LLC & EFIH Financing Inc.* (Adv. No. 14-50363), the *Joint Motion of CSC Trust Company of Delaware, as Indenture Trustee, and Certain EFIH 10% First Lien Noteholders, for Confirmations that the Automatic Stay Does Not Apply or, Alternatively, for Limited Relief from the Automatic Stay, Solely Regarding Rescission of Acceleration* [D.I. 473], or any other claims objection or other proceeding, including, without limitation, whether (i) any acceleration of the EFIH First Lien Notes is subject to rescission by majority holders thereof pursuant to the terms of the EFIH First Lien Indentures or (ii) whether the EFIH First Lien Notes could have been reinstated before the EFIH First Lien Repayment.

41.    No Waiver by Failure To Seek Relief.  The delay or failure of the EFIH First Lien DIP Agent or the EFIH First Lien DIP Lenders to seek relief or otherwise exercise their rights and remedies under this Final Order, the EFIH First Lien DIP Documents, or applicable law, as the case may be, shall not constitute a waiver of any of the rights hereunder, thereunder, or otherwise of the EFIH First Lien DIP Agent, the EFIH First Lien DIP Lenders, the Creditors' Committee, the Toggle Note Group, or any party in interest, unless any such waiver is pursuant to a written instrument executed in accordance with the terms of the applicable EFIH First Lien DIP Documents.

42.    Binding Effect; Successors and Assigns.  The EFIH First Lien DIP Documents and the provisions of this Final Order, including all findings in this Final Order, shall be binding upon all parties in interest in the Cases, including, without limitation, the EFIH First Lien DIP

Agent, the EFIH First Lien DIP Secured Parties, any statutory or nonstatutory committees appointed or formed in the Cases (including the Creditors' Committee), and the EFIH Debtors and their respective successors and assigns (including any chapter 7 or chapter 11 trustee hereinafter appointed for the estate of any of the EFIH Debtors) and shall inure to the benefit of the EFIH First Lien DIP Agent, the EFIH First Lien DIP Lenders, and the EFIH Debtors and their respective successors and assigns; *provided, however*, that the EFIH First Lien DIP Agent and the EFIH First Lien DIP Lenders shall have no obligation to extend any financing to any chapter 7 trustee or similar responsible person appointed for the estates of the EFIH Debtors.  In determining to make any loan under the EFIH First Lien DIP Credit Agreement or in exercising any rights or remedies as and when permitted pursuant to this Final Order or the EFIH First Lien DIP Documents, the EFIH First Lien DIP Agent and the EFIH First Lien DIP Lenders, in such capacities, (a) shall not be deemed to be in control of the operations of any of the EFIH Debtors or to be acting as a "controlling person," "responsible person," or "owner or operator" with respect to the operation or management of any of the EFIH Debtors (as such term, or any similar terms, are used in the Internal Revenue Code, the United States Comprehensive Environmental Response, Compensation and Liability Act (as amended), or any similar Federal or state statute) and (b) shall not owe any fiduciary duty to any of the EFIH Debtors, their creditors, or their estates, or shall not constitute or be deemed to constitute a joint venture or partnership with any of the EFIH Debtors.

43.    <u>No Modification of Final Order</u>.    Unless and until the EFIH First Lien DIP Obligations (excluding any Secured Hedge Obligations, any Secured Cash Management Obligations, and Contingent Obligations) have been indefeasibly paid in full, in cash (such payment being without prejudice to any terms or provisions contained in the EFIH First Lien

DIP Financing which survive such discharge by their terms), an Event of Default shall occur if the EFIH Debtors seek or consent to, directly or indirectly, or if there is entered:  (a) without the prior written consent of the EFIH First Lien DIP Agent and the Required Lenders (as defined in the EFIH First Lien DIP Credit Agreement), (i) any modification, stay, vacatur, or amendment to this Final Order, (ii) a priority claim for any administrative expense or unsecured claim against the EFIH Debtors (now existing or hereafter arising of any kind or nature whatsoever, including, without limitation, any administrative expense of the kind specified in sections 503(b), 507(a), or 507(b) of the Bankruptcy Code, or section 506(c) of the Bankruptcy Code) in any of the Cases or Successor Cases, equal or superior to the DIP Superpriority Claims other than the Carve Out, or (iii) any lien on any of the EFIH DIP Collateral with priority equal or superior to the EFIH First Lien DIP Liens, except as specifically provided in this Final Order or in the EFIH First Lien DIP Documents; (b) without the prior written consent of the EFIH First Lien DIP Agent and the Required Lenders (as defined in the EFIH First Lien DIP Credit Agreement), an order allowing use of the EFIH DIP Collateral, including cash collateral; (c) an order converting or dismissing any of the Cases; (d) an order appointing a chapter 11 trustee in any of the Cases; or (e) an order appointing an examiner with enlarged powers (having powers beyond those set forth in Bankruptcy Code sections 1106(a)(3) and (4)) in any of the Cases; *provided, however*, that notwithstanding anything to the contrary in this Final Order, the EFIH Debtors may seek to use cash collateral on a non-consensual basis pursuant to an order in form and substance acceptable to the EFIH First Lien DIP Agent.  No such consent shall be implied by any other action, inaction, or acquiescence of the EFIH First Lien DIP Agent.

  44. <u>Survival</u>.  The provisions of this Final Order and any actions taken pursuant hereto shall survive entry of any order which may be entered:  (a) confirming any plan of

reorganization or liquidation in any of the Cases; (b) converting any of the Cases to a case under chapter 7 of the Bankruptcy Code; (c) dismissing any of the Cases or any Successor Cases; or (d) pursuant to which the Court abstains from hearing any of the Cases or Successor Cases.  The terms and provisions of this Final Order, including the claims, liens, security interests, and other protections granted to the EFIH First Lien DIP Agent and the EFIH First Lien DIP Secured Parties pursuant to this Final Order and/or the EFIH First Lien DIP Documents, notwithstanding the entry of any such order, shall continue in the Cases, in any Successor Cases, or following dismissal of the Cases or any Successor Cases, and shall maintain their priority as provided by this Final Order until, in respect of the EFIH First Lien DIP Financing, all the EFIH First Lien DIP Obligations (excluding any Secured Hedge Obligations, any Secured Cash Management Obligations, and Contingent Obligations), pursuant to the EFIH First Lien DIP Documents and this Final Order, have been indefeasibly paid in full, in cash (such payment being without prejudice to any terms or provisions contained in the EFIH First Lien DIP Financing which survive such discharge by their terms).

45.    Guarantors.    Any Subsidiary (as defined in the EFIH First Lien DIP Credit Agreement) of the EFIH Debtors that hereafter becomes a debtor in a case under chapter 11 of the Bankruptcy Code in the Court and is or is required to be a Guarantor (as defined in the EFIH First Lien DIP Credit Agreement) under the EFIH First Lien DIP Credit Agreement automatically and immediately, upon the filing of a petition for relief for such Subsidiary, shall be deemed to be one of the "EFIH Debtors" hereunder in all respects, and all the terms and provisions of this Order, including, those provisions granting security interests in, and Liens on, the EFIH DIP Collateral, and DIP Superpriority Claims in each of the Cases, shall immediately be applicable in all respects to such Subsidiary and its chapter 11 estate, *provided, however*, that

for the avoidance of doubt, nothing in this paragraph or elsewhere in this Order shall require Oncor Electric Delivery Holdings Company LLC or any of its direct or indirect subsidiaries, including Oncor Electric Delivery Company LLC, to be a Guarantor under the EFIH First Lien DIP Credit Agreement.  Within five (5) business days of the filing of a petition for relief for any such Subsidiary, the EFIH Debtors shall file a notice with the Court indicating that the Subsidiary is a Guarantor under the EFIH First Lien DIP Credit Agreement.

46.    <u>Final Order Governs</u>.  In the event of any inconsistency between the provisions of this Final Order and the EFIH First Lien DIP Documents, the EFIH Second Lien DIP Documents, if any, and related documents, the final order of the Court approving the EFIH Second Lien DIP Facility, if any, the Settlement Orders, the provisions of this Final Order shall govern.

47.    <u>Effect of this Final Order</u>.  This Final Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and shall take effect and be enforceable immediately upon execution thereof.

48.    <u>Retention of Jurisdiction</u>.  The Court has and will retain jurisdiction to enforce this Final Order according to its terms.


Wilmington, Delaware
Dated: _____, 2015


_____
THE HONORABLE CHRISTOPHER S. SONTCHI
UNITED STATES BANKRUPTCY JUDGE