## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | Chapter 11 |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | Case No. 14-10979 (CSS) |
| Debtors. | (Jointly Administered) |
|  | Objection Deadline: April 1, 2015 at 4:00 p.m. (ET) |

## COVER SHEETS TO
## SECOND INTERIM FEE APPLICATION OF
## EVERCORE GROUP L.L.C.,
## DEBTORS' INVESTMENT BANKER AND FINANCIAL ADVISOR
## FOR ALLOWANCE OF AN ADMINISTRATIVE CLAIM FOR
## COMPENSATION AND REIMBURSEMENT OF EXPENSES INCURRED FROM
## SEPTEMBER 1, 2014 THROUGH DECEMBER 31, 2014

| | |
|---|---|
| **Name of Applicant:** | **Evercore Group L.L.C.** |
| Authorized to provide professional services to: | The above-captioned Debtors |
| Date of retention: | September 16, 2014<br>*nunc pro tunc to* April 29, 2014 |
| Period for which compensation and reimbursement is sought:<br>(the "Fee Period") | September 1 - December 31, 2014 |
| Compensation sought<br>as actual, reasonable and necessary: | $2,100,00.00<br>(20% of which is $420,000.00) |
| Expense reimbursement sought<br>as actual, reasonable, and necessary: | $203,938.94 |

This is an **__interim__** fee application.[2]

---

[1]    The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810.  The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201.  A complete list of the debtors and the last four digits of their federal tax identification numbers is available at http://www.efhcaseinfo.com.

[2]    Notice of this Interim Fee Application shall be served in accordance with the Interim Compensation Order and Fee Committee Order (each as defined herein) and objections to the relief requested herein shall be addressed in accordance with such orders.

## Prior Statements, Applications and Allowances

| Filing, Date Filed, D.I. | Period Covered | Total Fees (100%) | Requested | | Approved | | Paid | Holdback/ Amount Due |
|---|---|---|---|---|---|---|---|---|
| | | | Fees (80%) | Expenses | Fees | Expenses[3] | | |
| 1st Monthly Oct. 31, 2014 D.I. 2684 | Apr. 29 - May 31, 2014 | $525,000.00 | $420,000.00 | $46,375.43 | $420,000.00 | $44,482.33 | $464,482.33 | $105,000.00 |
| 2nd Monthly Oct. 31, 2014 D.I. 2685 | June 1 - June 30, 2014 | $6,025,000.00 | $4,820,000.00 | $43,469.50 | $4,820,000.00 | $42,254.63 | $4,862,254.63 | $1,205,000.00 |
| 3rd Monthly Oct. 31, 2014 D.I. 2686 | July 1 - July 31, 2014 | $525,000.00 | $420,000.00 | $212,521.22 | $420,000.00 | $212,051.44 | $632,051.44 | $105,000.00 |
| 4th Monthly Oct. 31, 2014 D.I. 2687 | Aug. 1 - Aug. 31, 2014 | $525,000.00 | $420,000.00 | $66,245.40 | $420,000.00 | $66,245.40 | $486,245.40 | $105,000.00 |
| 1st Interim Oct. 31, 2014 D.I. 2700 | April 29 - August 31, 2014 | $7,600,000.00 | $1,520,000.00 (20%)  $7,600,000.00 (100%) | $368,611.56 | $1,520,000.00 (20%)  $7,600,000.00 (100%) | $351,707.98 | $6,431,707.98 | $1,520,000.00 |
| **Total** | **1st Interim Period** | **$7,600,000.00** | **$7,600,000.00** | **$368,611.56** | **$7,600,000.00** | **$351,707.98** | **$6,431,707.98** | **$1,520,000.00** |
| 5th Monthly Nov. 30, 2014 D.I. 3123 | Sept. 1 - Sept. 30, 2014 | $525,000.00 | $420,000.00 | $93,143.02 | $420,000.00 | $92,732.53 | NA | $617,732.53 |
| 6th Monthly Nov. 30, 2014 D.I. 3124 | Oct. 1 - Oct. 31, 2014 | $525,000.00 | $420,000.00 | $47,909.62 | $420,000.00 | $47,398.62 | NA | $572,398.62 |
| 7th Monthly Mar. 3, 2014 D.I. 3744 | Nov. 1 - Nov. 30, 2014 | $525,000.00 | $420,000.00 | $17,416.72 | NA | NA | NA | $542,416.72 |
| 8th Monthly Mar. 3, 2014 D.I. 3745 | Dec. 1 - Dec. 31, 2014 | $525,000.00 | $420,000.00 | $46,391.07 | NA | NA | NA | $571,391.07 |
| 2nd Interim Mar. 6, 2015 D.I. TBD | Sept. 1 - Dec. 31, 2014 | $2,100,000.00 | $420,000.00 (20%)  $2,100,000.00 (100%) | $203,938.94 [4] | NA | NA | NA | $2,303,938.94 |
| **Total** | **2nd Interim Period** | **$2,100,000.00** | **$2,100,000.00** | **$204,860.43** | **$840,000.00** | **$140,131.15** | **NA** | **$2,303,938.94** |
| **Grand Total** | | **$9,700,000.00** | **$9,700,000.00** | **$573,471.99** | **$8,440,000.00** | **$491,839.13** | **$6,431,707.98** | **$3,823,938.94** |

---

[3]    Expenses approved reflect voluntary adjustments by Evercore in conjunction with discussions with the Fee Committee and U.S. Trustee.

[4]    Expenses reflect voluntary adjustments by Evercore in September 2014 and October 2014.

**Professionals**

Evercore professionals rendering services during the Fee Period were:

| Professional | Title | Total Hours |
|---|---|---|
| Roger Altman | Senior Managing Director | 21.5 |
| William Hiltz | Senior Managing Director | 160.0 |
| Qazi Fazal | Senior Managing Director | 1.0 |
| Stephen Goldstein | Senior Managing Director | 212.0 |
| David Ying | Senior Managing Director | 479.0 |
| Jeremy Matican | Managing Director | 653.0 |
| Sesh Raghavan | Managing Director | 234.0 |
| Bo Yi | Vice President | 621.0 |
| Lisa Chen | Associate | 540.5 |
| Neal Patel | Associate | 615.0 |
| Vishnu Kalugotla | Analyst | 156.5 |
| Vadim Levit | Analyst | 500.0 |
| Aashik Rao | Analyst | 233.0 |
| **Total** | | **4,426.5** |

(Evercore does not charge hourly rates to the Debtors and no hourly rates are associated
with these professionals.)

**Hours by Matter**

Hours expended by these professionals by matter during the Fee Period were:

| Matter Number | Matter Description | Total Hours |
|:---:|:---:|---:|
| 1 | General Case Administration | 426.0 |
| 2 | Due Diligence | 125.0 |
| 3 | Capital Structure and Debt Capacity Analysis | 17.0 |
| 4 | Financing | 21.5 |
| 5 | Asset Sales and Other M&A Activity | 781.5 |
| 6 | Valuation and Recoveries Analysis | 488.0 |
| 7 | General Financial Analysis and Research | 367.0 |
| 8 | Plan of Reorganization | 396.0 |
| 9 | Board Communications | 269.0 |
| 10 | Creditor Communication and Due Diligence | 430.0 |
| 11 | Court Testimony and Litigation Support | 538.0 |
| 12 | Travel | 160.5 |
| 13 | Evercore Retention | 113.5 |
| 14 | Fee Application | 293.5 |
| **Total** | | **4,426.5** |

## Summary of Expenses by Category

| Matter Number | Matter Description | Total Expenses |
|:---:|:---:|---:|
| 1 | General Case Administration[5] | $2,308.04 |
| 2 | Due Diligence | 98.30 |
| 3 | Capital Structure and Debt Capacity Analysis | -- |
| 4 | Financing | 53.11 |
| 5 | Asset Sales and Other M&A Activity | 3,178.00 |
| 6 | Valuation and Recoveries Analysis | 864.90 |
| 7 | General Financial Analysis and Research | 680.61 |
| 8 | Plan of Reorganization | 2,439.81 |
| 9 | Board Communications | 2,468.76 |
| 10 | Creditor Communication and Due Diligence | 1,724.57 |
| 11 | Court Testimony and Litigation Support[5] | 123,173.33 |
| 12 | Travel | 13,882.57 |
| 13 | Evercore Retention[5] | 52,425.01 |
| 14 | Fee Application | 641.93 |
| **Total** | | **$203,938.94** |

---

[5] Includes reallocation of legal expenses across categories relative to categorization reflected in Monthly Fee Statements for the Fee Period. $52,829.33 of legal expenses were reclassified from General Case Administration to Court Testimony and Litigation Support, and $52,306.18 of legal expenses were reclassified from Court Testimony and Litigation Support to Evercore Retention.

## Summary of Expenses by Category Allocation

(Allocation of fees is described in paragraph 11 of the fee application filed together with these cover sheets.)

| Expense Category | EFH Corp. | EFIH | TCEH | Collective | Total |
|---|---|---|---|---|---|
| Air / Rail Travel | $0.00 | $0.00 | $6,199.32 | $14,459.28 | $20,658.60 |
| Copies and Shipping | - | - | - | 722.80 | 722.80 |
| Legal / Professional Fees | - | - | - | 167,669.06 | 167,669.06 |
| Local Ground Transportation | 45.20 | 278.68 | 144.35 | 1,245.82 | 1,714.05 |
| Meals | 89.47 | 614.28 | 291.11 | 2,931.11 | 3,925.97 |
| Research | - | - | - | 463.88 | 463.88 |
| Telecom | - | - | 62.63 | 72.90 | 135.53 |
| Travel Ground Transportation | - | - | 646.84 | 2,329.20 | 2,976.04 |
| Travel Lodging | - | - | 419.79 | 3,873.66 | 4,293.45 |
| Travel Meals | - | - | 157.57 | 1,221.99 | 1,379.56 |
| **Total** | **$134.67** | **$892.96** | **$7,921.61** | **$194,989.70** | **$203,938.94** |

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) | Case No. 14-10979 (CSS) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | Objection Deadline: April 1, 2015 at 4:00 p.m. (ET) |

## SECOND INTERIM FEE APPLICATION OF
## EVERCORE GROUP L.L.C.,
## DEBTORS' INVESTMENT BANKER AND FINANCIAL ADVISOR
## FOR ALLOWANCE OF AN ADMINISTRATIVE CLAIM FOR
## COMPENSATION AND REIMBURSEMENT OF EXPENSES INCURRED FROM
## SEPTEMBER 1, 2014 THROUGH DECEMBER 31, 2014

Evercore Group L.L.C. (collectively, "Evercore"), investment banker and financial advisor for the above-captioned debtors and debtors in possession (collectively, the "Debtors"), hereby submits its interim fee application (the "Fee Application") for allowance of compensation for professional services provided and reimbursement of actual and necessary expenses, each as described in the cover sheet hereto, that Evercore provided in the above-captioned period (the "Fee Period").

### Jurisdiction and Applicable Standards

1.  The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

2.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.  The bases for and standards governing the relief requested herein are sections 327, 328, 330, and 331 of chapter 11 of title 11 of the United States Code, (the "Bankruptcy

---

[1]   The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. A complete list of the debtors and the last four digits of their federal tax identification numbers is available at http://www.efhcaseinfo.com.

Code"), Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), the

Order Authorizing the Employment and Retention of Evercore Group L.L.C. as investment

banker and financial advisor for the Debtors and Debtors in Possession Nunc Pro Tunc to the

Petition Date, dated September 16, 2014 [D.I. 2056] (the "<u>Retention Order</u>"), attached hereto as

**<u>Exhibit A</u>**, the Order Establishing Procedures for Interim Compensation and Reimbursement of

Expenses for Professionals, dated September 16, 2014 [D.I. 2066] (the "<u>Interim Compensation</u>

<u>Order</u>"), the Stipulation and Order Appointing a Fee Committee [D.I. 1896] (the "<u>Fee Committee</u>

<u>Order</u>"), Rule 2016-2 of the Local Rules of Bankruptcy Practice and Procedure of the United

States Bankruptcy Court for the District of Delaware (the "<u>Local Bankruptcy Rules</u>"), and the

United States Trustee's Guidelines for Reviewing Applications for Compensation and

Reimbursement of Expenses Filed under 11 U.S.C. §330 (the "<u>Appendix A Guidelines</u>").

<u>**Case Background**</u>

4.        On April 29, 2014 (the "<u>Petition Date</u>"), each of the Debtors filed a voluntary

petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors are operating their

businesses and managing their properties as debtors-in-possession pursuant to sections 1107(a)

and 1108 of the Bankruptcy Code.  On May 13, 2014, the United States Trustee for Region 3

(the "<u>U.S. Trustee</u>") appointed an official committee of unsecured creditors pursuant to section

1102 of the Bankruptcy Code (the "<u>TCEH Committee</u>") [D.I. 420].On June 5, 2014, the Court

entered an order [D.I. 849] authorizing the joint administration and procedural consolidation of

the Debtors' chapter 11 cases pursuant to Bankruptcy Rule 1015(b).  On October 27, 2014, the

U.S. Trustee appointed another official committee of unsecured creditors pursuant to section

1102 of the Bankruptcy Code (the "<u>EFH Committee</u>" and, together with the TCEH Committee,

the "<u>Committees</u>") [D.I. 2570].  No entity has requested the appointment of a trustee or examiner

in these chapter 11 cases.

5.        A description of the Debtors' businesses, the reasons for commencing the chapter

11 cases, and the relief sought from the Court to allow for a smooth transition into chapter 11 are set forth in the declaration of Paul Keglevic in support of Debtors' first day motions, filed on April 29, 2014 [D.I. 98] and incorporated herein by reference.

## Preliminary Statement

6.  During the Fee Period, Evercore provided necessary and requested investment banking and financial advisory services to the Debtors.  A summary of these services is provided below.

## The Debtors' Retention of Evercore

7.  The Retention Order was entered on September 16, 2014, and is attached hereto as **Exhibit A** and incorporated by reference.  The Retention Order approves Evercore's Fee and Expense Structure (as defined therein), pursuant to section 328 of the Bankruptcy Code, subject to the terms of the Retention Order.  (Accordingly, compensation is sought pursuant to sections 328 and 331 and not 330 of the Bankruptcy Code, but subject to the terms of the Retention Order.)

8.  As approved by the Retention Order, the Debtors engaged Evercore to provide the following services:[2]

    (a) reviewing and analyzing the Debtors' business, operations, and financial projections;

    (b) advising and assisting the Debtors in a Restructuring, Financing, and/or Sale, if the Debtors determine to undertake such a Transaction;

    (c) providing financial advice in developing and implementing a Restructuring, which would include:

        (i)    assisting the Debtors in developing a restructuring plan or plan of reorganization, including a plan of reorganization pursuant to the Bankruptcy Code (any such plans are referred to generically as the "Plan");

---

[2]    This summary is presented for convenience purposes only.  The Retention Order is controlling in all respects. Capitalized terms used but not otherwise defined herein have the meanings ascribed to such terms in the Retention Order.

(ii)  advising the Debtors on tactics and strategies for negotiating with various stakeholders regarding the Plan;

(iii)  providing testimony, as necessary, with respect to matters on which Evercore has been engaged to advise the Debtors in any proceedings before the Bankruptcy Court; and

(iv)  providing the Debtors with other financial restructuring advice as Evercore and the Debtors may deem appropriate;

(d) if the Debtors pursue a Financing, assisting the Debtors in:

(i)  structuring and effecting a Financing;

(ii)  identifying potential Investors and, at the Debtors' request, contacting such Investors; and

(iii)  working with the Debtors in negotiating with potential Investors.

(e) if the Debtors pursue a Sale, assisting the Debtors in:

(i)  structuring and effecting a Sale;

(ii)  identifying interested parties and/or potential acquirors and, at the Debtors' request, contacting such interested parties and/or potential acquirors; and

(iii)  advising the Debtors in connection with negotiations with potential interested parties and/or acquirors and aiding in the consummation of a Sale.

9.    The particular terms of Evercore's engagement are detailed in the engagement letter attached to the Retention Order.  The approved Fee and Expense Structure may be summarized as follows:[3]

(a) **Monthly Fee:**  $525,000 per month until a Restructuring or termination of Evercore's engagement.

(b) **Restructuring Fee:**  $35 million for simultaneous Restructuring(s) of TCEH/EFCH and EFIH.  But if a first Restructuring concerns only one of TCEH/EFCH and EFIH, then a portion of the $35 million Restructuring Fee will then be due based on time allocation and the remainder of $35 million due if and when a second Restructuring occurs.  In either case, the aggregate

---

[3]    This summary is presented for convenience purposes only and is not an exhaustive reflection of the fee and expense terms set forth in the Retention Order, which is controlling in all respects.

Restructuring Fee is payable only once. There is no Restructuring Fee for certain modifications of existing obligations under the Debtors' existing liability management program or similar programs, certain immaterial modifications and modifications agreed by the Debtors.

(c) **Sale Fee:** $9 million, payable once, for a Sale of all or substantially all of either or both of TCEH/EFCH and EFIH. Sales that give rise to a Sale Fee also give rise to a Restructuring Fee.

(d) **DIP Financing Fee:** $11 million, payable once, for a first lien DIP Financing. Half of the DIP Financing Fee is due upon DIP Financing commitment, with the balance due upon approval of the DIP Financing by the Court.

(e) **Credits:**

    (i) *Monthly Fee Credit*: The first eight Monthly Fees, and the amount by which each subsequent Monthly Fee exceeds $400,000 (which will be $125,000 for a Monthly Fee of $525,000), are creditable against the Restructuring Fee.

    (ii) *DIP Financing Fee Credit*: $3 million of the DIP Financing Fee is creditable against the Restructuring Fee.

These credits are conditioned on full payment and final approval of the related fees and are subject to allocation.

(f) **Allocation:** Evercore's fees have been allocated in order to align them with the Debtors' economic structure and the interests of the Debtors' economic stakeholders.

    (i) *Timekeeping*: To facilitate allocation, Evercore's professionals will record whether hours expended providing services are attributable to TCEH/EFCH, EFIH, or EFH specifically, or are instead attributable more than one of these.

    (ii) *Monthly Fee*: Monthly Fees will be allocated to TCEH/EFCH, EFIH, and EFH in proportion to time spent by Evercore on each during the month.

    (iii) *Restructuring Fee*: The Restructuring Fee will be allocated amongst as many of TCEH/EFCH, EFIH, and EFH as are related to the Restructuring, in proportion to all allocated time spent by Evercore on each.

    (iv) *Sale Fee*: The Sale Fee will be allocated amongst as many of TCEH/EFCH, EFIH, and EFH as are related to the Sale(s), in proportion to all allocated time spent by Evercore on each.

    (v) *DIP Financing Fee*: The DIP Financing Fee will be allocated in proportion to the third-party DIP financing commitments provided

by bank lenders, if any, relating to each of TCEH/EFCH, EFIH, and EFH.

(vi)     *Credits:*  The Monthly Fee credit and the DIP Financing Fee credit will each be allocated to TCEH/EFCH, EFIH, and EFH in proportion to their allocable share of the underlying Monthly Fees or DIP Financing Fee.

(vii)    *Alternate Allocation*:  Subject to Bankruptcy Court approval, the Debtors and Evercore may later agree to alter the allocations described in furtherance of the alignment goals described above.

(g) **Expenses:** The Debtors will pay reasonable and documented out-of-pocket expenses, including reasonable and documented cost of counsel.

<u>**Description of Fees and Expenses**</u>

10.     Typical of investment bankers of its kind, Evercore is not compensated by the hour, but through a structure of fixed fees and related compensation, such as was approved by the Retention Order.  Accordingly, certain information appropriate to consideration of the fee requests of hourly-rate compensated professionals, such as blended rates or maturation, do not exist for Evercore.

11.     Evercore's fees and expenses during the Fee Period have been tentatively allocated as follows:[4]

---

[4]     As summarized above, Monthly Fee and expenses are allocated to Debtors based on time.

| Debtors | Period | Time | | Monthly Fees | | Expenses | |
|---|---|---|---|---|---|---|---|
| | | Collective Unallocated | Collective Allocated | Total Fees | 20% Holdback | Collective Unallocated | Collective Allocated |
| EFH Corp. | Sept. | 2.2% | 10.5% | $55,001.81 | $11,000.36 | $20.00 | $9,249.74 |
| | Oct. | 0.9% | 8.7% | 45,667.15 | 9,133.43 | 9.50 | 4,116.14 |
| | Nov. | 5.9% | 16.3% | 85,404.71 | 17,080.94 | 96.87 | 2,348.43 |
| | Dec. | 5.8% | 14.3% | 74,813.91 | 14,962.78 | 8.30 | 6,540.46 |
| | **Total Interim** | | | **$260,887.58** | **$52,177.52** | **$134.67** | **$22,254.77** |
| EFIH | Sept. | 15.6% | 47.0% | $246,853.98 | $49,370.80 | $286.57 | $41,710.63 |
| | Oct. | 7.6% | 58.5% | 306,928.76 | 61,385.75 | 106.10 | 27,706.81 |
| | Nov. | 14.0% | 37.7% | 198,181.17 | 39,636.23 | 125.70 | 5,350.42 |
| | Dec. | 26.8% | 54.9% | 288,268.67 | 57,653.73 | 374.59 | 25,543.95 |
| | **Total Interim** | | | **$1,040,232.57** | **$208,046.51** | **$892.96** | **$100,311.82** |
| TCEH | Sept. | 8.9% | 42.5% | $223,144.21 | $44,628.84 | $4,326.78 | $41,772.15 |
| | Oct. | 3.8% | 32.8% | 172,404.09 | 34,480.82 | 72.15 | 15,575.67 |
| | Nov. | 16.3% | 46.0% | 241,414.12 | 48,282.82 | 3,353.38 | 9,717.87 |
| | Dec. | 14.0% | 30.8% | 161,917.43 | 32,383.49 | 169.30 | 14,306.66 |
| | **Total Interim** | | | **$798,879.84** | **$159,775.97** | **$7,921.61** | **$81,372.35** |
| Collective | Sept. | 73.3% | - | - | - | 88,099.18 | - |
| | Oct. | 87.7% | - | - | - | 47,210.87 | - |
| | Nov. | 63.9% | - | - | - | 13,840.77 | - |
| | Dec. | 53.4% | - | - | - | 45,838.88 | - |
| | **Total Interim** | | | **-** | **-** | **194,989.70** | **-** |
| **Total** | | | | **$2,100,000.00** | **$420,000.00** | **$203,938.94** | **$203,938.94** |

12.     Reallocation may be required to give effect to the allocation of credits and other elements of the structure of fees forth in the Retention Order.

### Summary of Services Rendered During the Fee Period

13.     Evercore provided extensive professional services to the Debtors in connection with these chapter 11 cases, all at the direction of the Debtors or their counsel.  These services were performed at a high level of quality and were often subject to significant time constraints. These services were necessary to address a multitude of critical issues both unique to these chapter 11 cases and typically faced by large corporate debtors in similar cases of this magnitude and complexity.

14.     To provide a meaningful summary of its services provided on behalf of the Debtors and their estates, Evercore has established, in accordance with its internal procedures, certain subject matters categories (each, a "Matter Category") in connection with these chapter

11 cases.

15.     The following is a summary, by Matter Category, of the most significant professional services provided by Evercore during the Fee Period.  This summary is organized in accordance with Evercore's matter numbers.   The detailed descriptions below and the time records attached as **Exhibit B** demonstrate that Evercore was deeply involved in performing services for the Debtors on a daily basis, often including night and weekend work, to meet the needs of the Debtors' estates in these chapter 11 cases.

### (a)     General Case Administration, Matter Category 1

Total Hours: 426.0

16.     This category includes time spent by Evercore along, or in conjunction with the Debtors and their counsel and other professionals, in connection with the status or strategy of the case.  This category also includes time spent on general administration and management of the cases and review of court documents filed by the Debtors and other parties-in-interest, except as such related to retention. Furthermore, other work and analysis that are not included in more specific Matter Categories are included in this category.

### (b)     Due Diligence, Matter Category 2

Total Hours: 125.0

17.      This category includes time spent by Evercore extending its understanding of the businesses of the Debtors, including by means of management calls, meetings, document review, site visits, internal discussions and analysis.  This category also includes time spent by Evercore extending its understanding of the industry in which the Debtors operate, understanding and conducting analysis of the Debtors' business plan, including reviewing, discussing and analyzing key operational and financial assumptions in the business plan, and reviewing other relevant industry-related documents and performing analysis.

18.     During the Fee Period, Evercore continued to perform general business due

diligence in order to increase its knowledge and familiarity with the nature of the various operations, inter-company relationships, and other operating and financial information that are necessary in providing restructuring and financial advisory services.  Evercore's due diligence involved numerous on-site meetings and telephonic meetings with senior management of the Debtors and their other professionals.  The subjects reviewed included: (a) revised business plan and financial projections prepared and provided by the Debtors, (b) key assumptions related to the projections, (c) certain historical financial results of the Debtors, (d) the operating, legal, and financial reporting structures, (e) the current and potential legal and tax structure of the Debtors and their subsidiaries, (f) relevant industry information, and (g) numerous other matters.

**(c)**      **Capital Structure and Debt Capacity Analysis, Matter Category 3**

Total Hours: 17.0

19.     This category includes time spent by Evercore evaluating the existing and pro forma capital structure and debt capacity of the Debtors.

**(d)**      **Financing, Matter Category 4**

Total Hours: 21.5

20.     This category includes time spent by Evercore in identifying and contacting potential sources of financing, including DIP financing and exit financing, as well as time spent negotiating and structuring the terms of such financing.

21.     During the Fee Period, Evercore evaluated EFIH second lien DIP financing alternatives, and the potential repayment of existing EFIH debt, including partial repayment of the existing EFIH second lien notes.

**(e)**      **Asset Sales and Other M&A Activity, Matter Category 5**

Total Hours: 781.5

22.     This category includes time spent by Evercore advising the Debtors on the sale of

the Debtors' assets, including developing marketing materials, contacting potential buyers, assisting potential buyers with due diligence, structuring a potential transaction and negotiating with buyers.  In addition, this category includes time spent by Evercore on any other M&A activity of the Debtors.

23.     During the Fee Period, the Debtors filed a bid procedures motion, seeking court approval of the marketing process to select a stalking horse bidder for the Debtors' economic interests in Oncor Electric Delivery Company LLC ("Oncor").   The Court held a four-day hearing regarding the bid procedures, which ultimately received court approved.

24.     Evercore worked extensively with the Debtors, their counsel at Kirkland & Ellis, conflicts advisors, and the Committees and their advisors to design and structure the bid procedures and broader marketing process to best position the Debtors to maximize value.

25.     In connection with the marketing process, Evercore assisted the Debtors and their other advisors in analyzing the various transaction structure alternatives, creating marketing materials, identifying and contacting potential bidders, drafting and negotiating confidentiality agreements, drafting term sheets and definitive documents, and organizing an electronic data room, among other things.  Evercore facilitated bidder due diligence by organizing business and financial due diligence calls with the senior management of the Debtors and Oncor, tracking due diligence questions and information requests, and tracking bidder feedback throughout the process.  Senior management, Evercore and other professionals have provided frequent updates regarding the marketing process, including bidder status and feedback, to the Boards of Directors, conflicts advisors, the Committees and/or their advisors, among others.

26.     The Debtors and Evercore have worked diligently to develop the bids that they received, attract additional bids, and maintain the momentum of the bidding process with the primary objective of maximizing value of the Debtors' estates.  The marketing process should ultimately help inform stakeholders and facilitate a plan of reorganization.

**(f)    Valuation and Recoveries Analysis, Matter Category 6**

Total Hours: 488.0

27.    This category includes time spent by Evercore preparing and analyzing the valuation of the Debtors' businesses and analyzing creditor recoveries in various scenarios.

28.    During the Fee Period, Evercore spent a considerable amount of time preparing to perform a valuation of the Debtors.  Evercore spent time, among other things: (a) understanding industry dynamics, including commodity price trends, (b) researching capital market conditions and valuation drivers, (c) reviewing the historical and projected financial performance, business and valuation drivers of publicly-traded comparable companies, (d) reviewing operational and valuation metrics of comparable companies over time, (e) reviewing valuation metrics of comparable precedent transactions, (f) considering a range of estimates of the weighted average cost of capital of the reorganized company, (g) preparing a comprehensive and flexible valuation model, and (h) conducting various sensitivity analyses.

**(g)    General Financial Analysis and Research, Matter Category 7**

Total Hours: 367.0

29.    This category includes time spent by Evercore preparing general financial analyses and conducting research that is not included in more specific Matter Categories.

30.    During the Fee Period, Evercore, at the request of the Debtors and/or their other professionals, performed numerous analyses, including, but not limited to, liquidity projections, claims calculations under various scenarios, calculation of alleged makewhole claims, tax calculations, exit costs, and emergence cash analysis and adjustments. Evercore has also monitored the Debtors' debt trading prices and conducted general financial and restructuring-related research.

**(h)    Plan of Reorganization, Matter Category 8**

Total Hours: 396.0

31.     This category includes time spent by Evercore assisting the debtors in developing a plan of reorganization, disclosure statement and related documentation.

32.     Evercore has had extensive discussions with the Debtors and their other professionals related to a plan of reorganization, including strategy, potential timelines, feedback from stakeholders, and various frameworks for a plan of reorganization and settlements with the various constituents.  Evercore has reviewed preliminary drafts of the plan of reorganization and disclosure statement and worked with the Debtors and their other professionals to develop a comprehensive, global plan term sheet that was shared with creditor constituencies with the intent of driving toward a consensual plan of reorganization in an expeditious manner.

**(i)     Board Communication, Matter Category 9**

Total Hours: 269.0

33.     This category includes time spent by Evercore participating in meetings, conference calls and correspondences with the Debtors' Boards of Directors. The category also includes time spent drafting and developing presentations to the Boards of Directors and responding to the Boards' due diligence requests.

34.     During the Fee Period, Evercore, along with the Debtors' other professionals, participated in numerous discussions with the Boards of Directors on a broad range of topics, including, but not limited to, bid procedures and broader sale process for the Debtors' economic interests in Oncor, communications with creditors and other parties-in-interest, financing activities, the Debtors' financial results and projections, recent developments in the chapter 11 cases, overview of key dates and timelines, plan of reorganization and plan term sheet, and general strategic and other issues relating to the chapter 11 process.

35.     The respective Boards' conflicts advisors joined the case during the Fee Period. Senior management, Evercore, and the Debtors' other professionals have worked extensively to

educate and inform the respective conflicts advisors, and have worked constructively together to advance several key workstreams, including, but not limited to, the plan of reorganization and marketing processes.

**(j)      Creditor Communication and Due Diligence, Matter Category 10**

Total Hours: 430.0

36.      This category includes time spent by Evercore negotiating and discussing a wide range of issues with creditors, including the Committees, as well as other parties-in-interest and their respective advisors. The category also includes time spent drafting and developing presentations for creditors and other parties-in-interest and in responding to their due diligence requests.

37.      During the Fee Period, Evercore responded to the informational requests of creditors and other parties-in-interest by interfacing with the relevant personnel at the Debtors or the other advisors to the Debtors. As part of this, Evercore prepared for and participated in various in-person meetings with creditors and their respective financial and legal advisors. Evercore also assisted the Debtors with preparing due diligence and presentation materials for creditor meetings.

38.      Evercore devoted considerable time to working with the Committees, as well as other creditor constituents, on a range of matters related to the Debtors' restructuring and sale processes and efforts to achieve a consensual plan of reorganization.  In particular, the EFH Committee was appointed during the Fee Period, and the Debtors, Evercore, and other professionals spent significant time and resources educating the advisors to the EFH Committee and working constructively to advance several initiatives, including the plan and sale processes.

39.      The Debtors and their advisors, including Evercore, also held several global plan conferences with creditor constituents at EFH and EFIH on the one-hand, and TCEH on the other.  In addition, the Debtors and their advisors, including Evercore, participated in numerous

in-person and telephonic meetings with individual stakeholders and creditor constituents to better understand their respective interests.  All of these efforts were intended to facilitate constructive dialogue with and among the creditors regarding the plan and promote constructive proposals, which multiple constituents have shared with the Debtors.  To that end, and as described above, the Debtors and their advisors, including Evercore, developed and shared a plan term sheet with all major creditor constituents to drive toward a consensual, value maximizing plan.  In summary, Creditor communications and due diligence efforts have required a significant amount of Evercore's resources due to the large number of parties-in-interest in these chapter 11 cases and our efforts to further the plan and sale processes, among others.

(k)    <b>Court Testimony and Litigation Support, Matter Category 11</b>

Total Hours: 538.0

40.    This category includes time spent by Evercore preparing for, and providing, declarations, depositions, court testimony and other litigation support to the Debtors, in coordination with their counsel and other professionals. The category also includes time spent responding to document requests and subpoenas.

41.    During the Fee Period, Evercore assisted the Debtors, along with their other advisors, with preparing the bid procedures motion, among others.  In connection with the bid procedures motion, William Hiltz of Evercore provided a declaration, deposition and in-court testimony.  In addition, Evercore spent significant time gathering and reviewing documents in connection with multiple discovery requests by various parties.  Evercore also assisted the Debtors and their legal advisors in preparing responses to objections and depositions of senior management and Evercore.  Evercore's court testimony and litigation support related efforts has been significant during this Fee Period.

> **(l)    Travel, Matter Category 12**
>
> Total Hours: 160.5

42.    This category includes time spent traveling to and from the Debtors offices, to Court hearings or to other destinations on the Debtors' behalf.

> **(m)    Evercore Retention, Matter Category 13**
>
> Total Hours: 113.5

43.    This category includes time spent by Evercore preparing and reviewing its Retention Application, as well as dialogue with interested parties regarding Evercore's Retention Application and preparation for the court hearing to approve Evercore's retention.

44.    During the Fee Period, Evercore's retention was approved by the court.  Prior to the retention hearing, Evercore spent time discussing and addressing questions related to its Retention Application with the U.S. Trustee and advisors to the TCEH Committee[5], among other parties, and performing work in conjunction with such discussions and in anticipation of the retention hearing.

> **(n)    Fee Applications, Matter Category 14**
>
> Total Hours: 293.5

45.    This category includes time spent by Evercore preparing and reviewing its Monthly Fee Statements, Fee Applications, and budgets.  The Category includes the efforts to ensure that all expenses charged were incurred in conjunction with time spent by Evercore professionals working on projects related to the Debtors and that all of the Evercore time records comply with the Guidelines, applicable provisions of the Bankruptcy Code, and the orders of this Court.    This category also includes communication with, and review of memoranda promulgating new fee review standards from, the Fee Committee.

---

[5] The EFH Committee was not appointed until after Evercore's retention was approved.

**Actual and Necessary Expenses Incurred by Evercore**

46.    The expenses for which Evercore requests reimbursement for the Fee Period are actual and necessary direct, non-overhead costs incurred in the course of rendering services to the Debtors. Evercore has charged internal black and white copies at 10¢ per page and color copies at 50¢ per page, consistent with the Fee Committee guidance, which reflects a discount to Evercore's standard copy charges. Consistent with the Fee Committee guidance, Evercore has charged in-office meals at cost, subject to a cap of $20.00 per person for each meal, and out-of-office meals at cost, subject to a cap of $40.00 per person for each meal, each reflecting a discount to Evercore's standard meal policy.  Evercore charges external copying and computer research at the provider's cost without markup. Only clients who actually use services of the types described are separately charged for such services. The effect of including such expenses as part of the overhead of Evercore would impose that cost upon clients who do not require such extensive services.

47.    During the Fee Period, expenses were incurred by Evercore's legal counsel in connection with document collection, review, and production conducted at the request of, in consultation with, and for the benefit of the Debtors.  These expenses primarily involved collection, review, and production of documents in Evercore's possession that were potentially responsive to discovery requests served on the Debtors.  Evercore's counsel reviewed these materials in order to identify and withhold privileged materials and materials that reflected confidential information belonging to clients from other engagements.  The potentially responsive materials not falling into either of these categories were then provided to Debtors' counsel for responsiveness review.  These legal expenses were necessary and beneficial to the Debtors' estates in enabling them to comply with their discovery obligations.

**Reasonable and Necessary Services Provided by Evercore**

48.    The foregoing professional services provided by Evercore on behalf of the

Debtors during the Fee Period were reasonable, necessary, and appropriate to the administration of these chapter 11 cases and related matters.

49.     The time constraints imposed by the circumstances of these chapter 11 cases required Evercore's professionals to devote substantial time during the evenings and on weekends to perform services on behalf of the Debtors.  These services were essential to meet deadlines, respond to daily inquiries from various creditors and other parties in interest on a timely basis, and satisfy the demands of the Debtors' businesses and ensure the orderly administration of their estates.  Consistent with Evercore policy, Evercore professionals who worked late in the evenings or on weekends were reimbursed for their reasonable meal and transportation costs.  Evercore's regular practice is not to include components for those charges when establishing fee structures, but rather to charge its clients for these and all other out-of-pocket disbursements incurred during the regular course of the rendition of services.

50.     In addition, due to the location of the Debtors' businesses, counsel, creditors, and other parties in interest in relation to Evercore's offices, frequent multi-party telephone conferences involving numerous parties were required.  On certain occasions, the exigencies and circumstances of these chapter 11 cases required overnight delivery of documents and other materials.  The disbursements for such services are not included in Evercore's overhead and Evercore has made every effort to minimize its disbursements in these chapter 11 cases.  The actual expenses incurred in providing professional services were necessary, reasonable, and justified under the circumstances to serve the needs of the Debtors in these chapter 11 cases.

51.     Evercore has not shared or agreed or entered into any understanding to share any of its compensation with any other entity.

### Certification of Compliance and Waiver

52.     The undersigned representative of Evercore certifies that he has reviewed the requirements of Local Rule 2016-2 and that the Application substantially complies with that

Local Rule except to the extent waived by the Retention Order or otherwise modified by orders of this Court and related guidance of the Fee Committee in this case, as permitted by orders of this Court establishing the Fee Committee and interim compensation procedures. To the extent that the Application does not comply in all respects with the requirements of Local Rule 2016-2, as so modified, Evercore believes that such deviations are not material and respectfully requests that any such requirement be waived.

### Reservation of Rights and Notice

53.     Although every effort has been made to include all fees and expenses incurred in the Fee Period, some fees and expenses might not be included in this Fee Application due to delays caused by accounting and processing during the Fee Period.  Evercore reserves the right to make further application to this Court for allowance of such fees and expenses not included herein.

54.     Notice of this Monthly Fee Statement has been or will shortly be provided to all parties that have entered their appearance pursuant to Bankruptcy Rule 2002 and by hand or overnight delivery on: (i) the Debtors, 1601 Bryan Street, 43rd Floor, Dallas, TX, 75201, Attn: Andrew M. Wright and Cecily Gooch; (ii) co-counsel to the Debtors, Kirkland & Ellis LLP, 601 Lexington Avenue, New York, NY 10022, Attn: Brian E. Schartz and Kirkland & Ellis LLP, 300 North LaSalle, Chicago, IL 60654, Attn: Chad Husnick; (iii) co-counsel to the Debtors, Richards, Layton & Finger, P.A., 920 North King Street, Wilmington, DE 19801, Attn: Daniel DeFranceschi and Jason Madron; (iv) Roberta A. DeAngelis, the United States Trustee for Region 3, J. Caleb Boggs Federal Building, 844 King Street, Room 2207, Wilmington, DE 19801, Attn: Richard L. Schepacarter and U.S. Department of Justice, Office of the U.S. Trustee, U.S. Federal Building, 201 Varick Street, Room 1006, New York, NY 10014, Attn: Andrea B. Schwartz; (v) counsel for the agent of the EFIH First Lien DIP Financing Facility, Shearman & Sterling LLP, 599 Lexington Avenue, New York, NY 10022, Attn: Ned Schodek and Fredric

Sosnick; (vi) counsel for the agent of the TCEH DIP Financing Facility, Milbank, Tweed, Hadley & McCloy LLP, 1 Chase Manhattan Plaza, New York, NY 10005, Attn: Evan Fleck and Matthew Brod; (vii) counsel to the TCEH Committee, Morrison & Foerster LLP, 250 W. 55th Street, New York, NY 10019, Attn: Lorenzo Marinuzzi and Jennifer Marines; (viii) counsel to the Fee Committee, Godfrey & Kahn, S.C., One East Main Street, Madison, WI 53703, Attn: Katherine Stadler and Carla Andres; (ix) co-counsel to the EFH Committee, Sullivan & Cromwell, LLP, 125 Broad Street, New York, NY 10004-2498, Attn. Judith Fiorini and Alexa Kranzley; and (x) co-counsel to the EFH Committee, Montgomery McCracken, Walker & Rhoads, LLP, 1105 North Market Street, 15th Floor, Wilmington, DE 19801, Attn: Natalie D. Ramsey and Davis Lee Wright.

### No Prior Request

55.     No prior application for the relief requested herein has been made to this or any other court.

*[Remainder of page is intentionally blank.]*

WHEREFORE, Evercore respectfully requests that the Court enter an order awarding the interim compensation and reimbursements described herein, authorizing the Debtors to pay Evercore for such fees and expenses to the extent not already paid and granting such other relief as is appropriate under the circumstances.

Dated: March 10, 2015

David Ying
Senior Managing Director and the
Head of Restructuring
Evercore Group L.L.C.