GODFREY & KAHN, S.C.
One East Main Street
Madison, WI  53703
Telephone:  (608) 257-3911
Facsimile:  (608) 257-0609

Katherine Stadler

*Attorneys for the Fee Committee*

**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

---------------------------------------------------

|  |  |  |
|---|---|---|
| | x | |
| In re | : | **Chapter 11** |
| | : | |
| ENERGY FUTURE HOLDINGS CORP. *et al.*, | : | **Case No. 14-10979 (CSS)** |
| | : | |
| Debtor-in-Possession. | : | **(Jointly Administered)** |
| | | **(D.I. 1888)** |
| | X | |

---------------------------------------------------

**Objection deadline:  April 3, 2015 at 4:00 p.m.**
**Hearing date: To be Determined.**

**FIRST INTERIM APPLICATION OF GODFREY & KAHN, S.C., COUNSEL TO THE
FEE COMMITTEE, FOR ALLOWANCE OF COMPENSATION FOR SERVICES
RENDERED AND REIMBURSEMENT OF EXPENSES FOR THE PERIOD
<u>FROM AUGUST 21, 2014 THROUGH DECEMBER 31, 2014</u>**

## SUMMARY (LOCAL FORM 101)[1]

| | |
|---|---|
| Name of Applicant: | Godfrey & Kahn, S.C. ("the **Applicant**") |
| Authorized to Provide Professional Services to: | Fee Committee |
| Date of Retention: | September 16, 2014, *nunc pro tunc* to August 21, 2014 |
| Date of order approving employment: | September 16, 2014 |
| Period for which compensation and reimbursement is sought: | August 21, 2014 - December 31, 2014 (the "**Compensation Period**") |
| Amount of Compensation sought as actual, reasonable and necessary: | $864,552.13 |
| Amount of Expense Reimbursement sought as actual, reasonable and necessary: | $40,775.62 |

This is an: __X__ interim _____ final application

The total time expended for fee applications is 0 hours and the corresponding compensation requested is $0.

| | |
|---|---|
| Petition date: | April 29, 2014 |
| Total compensation approved by interim order to date: | $0 |
| Total expenses approved by interim order to date: | $0 |
| Total allowed compensation paid to date: | $0 |
| Total allowed expenses paid to date: | $0 |

---

[1] This summary page combines the requirements of Local Rule 2016-2(c)(i) (Local Form 101) and ¶ C.2.l and Exhibit E to the Appendix B Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under United States Code by Attorneys in Larger Chapter 11 Cases (the "**U.S. Trustee Guidelines**").

| | |
|---|---|
| Blended rate in this application for all attorneys: | $432.49 |
| Blended rate in this application for all timekeepers: | $419.89 |
| Prior fee applications: | None |
| Compensation sought in this application already paid pursuant to the Fee Committee Order but not yet allowed: | $864,552.13 |
| Expenses sought in this application already paid pursuant to the order appointing the Fee Committee but not yet approved as interim expense reimbursement: | $40,775.62 |
| Number of professionals included in this application: | 9 |
| If applicable, number of professionals in this application not included in staffing plan approved by client: | N/A |
| If applicable, difference between fees budgeted and compensation sought for this period: | N/A |
| Are any rates higher than those approved or disclosed at retention? | No |

## ATTACHMENTS TO FEE APPLICATION

### EXHIBIT A:  LIST OF PROFESSIONALS

Attached to this Application as Exhibit A, in compliance with Local Rule 2016-2(c)(ii) and ¶ C.2.k of the U.S. Trustee Guidelines, is a chart identifying each of the professionals employed on these cases, their practice areas and years of experience, their hourly billing rate, total billed hours, total compensation sought, and number of rate increases imposed during the Compensation Period.

### EXHIBIT B:  COMPENSATION BY PROJECT CATEGORY

Attached to this Application as Exhibit B, in compliance with Local Rule 2016-2(c)(ii) and ¶ C.8.a and b of the U.S. Trustee Guidelines, is a summary of compensation requested by project category.

### EXHIBIT C:  EXPENSE SUMMARY

Attached to this Application as Exhibit C, in compliance with Local Rule 2016-2(c)(ii) and U.S. Trustee Guidelines ¶ C.12, is a summary, by category, of requested expense reimbursements.

### EXHIBIT D:  LIST OF PROFESSIONALS BY MATTER

Attached to this Application as Exhibit D, in compliance with U.S. Trustee Guidelines ¶ C.8.c, is a chart identifying each Godfrey & Kahn professional who provided services during the Compensation Period, organized by project category.

### EXHIBIT E:  DETAILED TIME RECORDS-GODFREY & KAHN, S.C.

Attached to this Application as Exhibit E, in compliance with Local Rule 2016-2(d) and U.S. Trustee Guidelines ¶ C.9, are detailed records of the services provided by Godfrey & Kahn during the Compensation Period, organized by project category.

**EXHIBIT F:  DETAILED EXPENSE RECORDS-GODREY & KAHN, S.C.**

Attached to this Application as Exhibit F, in compliance with Local Rule 2016-2(e)(i),

are the detailed expense records summarizing the expenses for which Godfrey & Kahn requests

reimbursement.[2]

**EXHIBIT G:  "CUSTOMARY AND COMPARABLE" DISCLOSURES**

The "Customary and Comparable Compensation Disclosures With Fee Applications," as

required by ¶ C.3 of the U.S. Trustee Guidelines, are attached to this Application as Exhibit G.

**EXHIBIT H:  BUDGET & STAFFING PLAN**

The budget and staffing plans, as required by ¶ E of the U.S. Trustee Guidelines, are

attached to this Application as Exhibit H.

---

[2] In compliance with Local Rule 2016-2(e)(iv), additional documentation of expenses and disbursements, noted with asterisks in Exhibit F, has not been filed with this Application but has been provided to the Fee Committee, U.S. Trustee, the Debtors, counsel to the Debtors and counsel to both creditors' committees.

**FEE APPLICATION**

Godfrey & Kahn, S.C. ("**Godfrey & Kahn**"), counsel to the Fee Committee (the

"**Applicant**"), appointed in these cases submits this *First Interim Application of Godfrey &*

*Kahn, S.C., Counsel to the Fee Committee, for Allowance of Compensation for Services*

*Rendered and Reimbursement of Expenses for the Period From August 21, 2014 Through*

*December 31, 2014* (the "**Fee Application**") under 11 U.S.C. §§ 330 and 331, Fed. R. Bankr.

P. 2016, Local Rule 2016-2, and the U.S. Trustee Guidelines.  Pursuant to the flat fee

compensation arrangement established in the *Stipulation and Order Appointing a Fee Committee*

[D.I. 1896] (the "**Fee Committee Order**"), the Fee Application requests interim allowance of

compensation for professional services from August 21, 2014 through December 31, 2014 and

for reimbursement of actual and necessary expenses from August 21, 2014 through

December 31, 2014 (the "**Compensation Period**").

The Applicant requests retrospective Court approval of a total of $864,552.13 in fees and

$40,775.62 in expenses.  This total would, if expressed in terms of an hourly rate, reflect a

blended rate of $408.91.

## BACKGROUND

1.      On April 29, 2014 (the "**Commencement Date**"), each of the Debtors filed a

voluntary petition under chapter 11 of title 11 of the United States Code (the "**Bankruptcy**

**Code**").  The Debtors' chapter 11 cases have been consolidated for procedural purposes only and

are being jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy

Procedure (the "**Bankruptcy Rules**").  The Debtors are authorized to operate their businesses

and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of

the Bankruptcy Code.

2.      The Court appointed a Fee Committee on August 21, 2014 to execute the duties

set forth in the Fee Committee Order, including, among other things, monitoring the fees and

expenses incurred by professionals ("**Retained Professionals**") in these chapter 11 cases.  The

Fee Committee Order further approved the appointment of Richard A. Gitlin, individually and as

Chairman of Gitlin & Company, LLC, as the Independent Member and chairperson of the Fee

Committee (the "**Chair**").

3.      On September 16, 2014, the Court entered the *Order Authorizing the Employment*

*and Retention of Godfrey & Kahn, S.C. as Counsel to the Fee Committee* [D.I. 2065] *nunc pro*

*tunc* to the Fee Committee's appointment date of August 21, 2014, to assist the Fee Committee

in fulfilling the duties set forth in the Fee Committee Order (the "**Godfrey & Kahn**

**Employment Order**").

4.      This Fee Application covers the first four full calendar months of the Applicant's

service—from August 21, 2014 through December 31, 2014.  During that period, the Fee

Committee reviewed at least 12 interim fee applications (corresponding to the first interim fee

period, April 29, 2014 through August 31, 2014), totaling approximately $63,489,620.29 in fees

for professional services and $2,667,272.38 in expense reimbursements.[3]

## THE APPLICANT

5.      Godfrey & Kahn, S.C. is a 180-lawyer Wisconsin-based law firm.  Only a

relatively small number of Godfrey & Kahn professionals work on these matters, and their

assignments have been designed to reduce duplication of effort to the extent possible.  The

majority of the work has been performed by Brady C. Williamson, Katherine Stadler, Carla O.

---

[3] Pursuant to the *Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Professionals* [D.I. 2066] (the "**Interim Compensation Order**"), the Retained Professionals generally have received each month on an interim basis 80 percent of the amounts they have invoiced for their services and 100 percent of their expenses—all subject to adjustment, objection, and Court approval.

Andres, Eric J. Wilson, Erin A. West, Mark Hancock, W. Andrew Dalton, Leah Viola, and

Kathleen Boucher.

6.    Brady C. Williamson, lead attorney for the Fee Committee counsel, is a member

of the National Bankruptcy Conference, the American College of Bankruptcy, and the American

Bankruptcy Institute.  In 1996 and 1997, he chaired the National Bankruptcy Review

Commission on the appointment of the President.  He has appeared before the U.S. Supreme

Court, the U.S. Courts of Appeal, and federal district and bankruptcy courts in a variety of

jurisdictions.  Mr. Williamson also served as the Fee Examiner in the Motors Liquidation (GM)

proceedings and as lead attorney for the Fee Committee counsel in the Lehman Brothers

Holdings chapter 11 proceedings.  *In re Motors Liquidation Co.*, No. 09-50026 (Bankr.

S.D.N.Y.); *In re Lehman Brothers Holdings, Inc.*, No. 08-13555 (Bankr. S.D.N.Y.).

7.    Katherine Stadler, a shareholder, works with the Fee Committee and Chair to

develop policies, guidelines, and standards.  She oversees the Godfrey & Kahn fee review

process to help ensure uniform treatment of the fee applications subject to review.  One of

Ms. Stadler's primary roles is liaison between the Fee Committee Chair and members and Fee

Committee counsel.  Among other things, Ms. Stadler coordinates Fee Committee meetings,

materials and agendas, attends Fee Committee meetings, performs line-by-line review of

Retained Professional applications, drafts Reports, files status reports with the Court, and

appears before the Court on fee-related matters.  Prior to her work here, Ms. Stadler served as

lead counsel to the Fee Examiner in the Motors Liquidation bankruptcy and as counsel to the Fee

Committee in the Lehman Brothers bankruptcy.  An appellate and litigation attorney, she has

more than 17 years of bankruptcy and complex commercial litigation experience.

8.     Eric Wilson and Carla Andres, in addition to participating in the fee review process for Motors Liquidation and Lehman Brothers, each also serves as a supervising attorney in these matters.  Mr. Wilson, a shareholder and former (Wisconsin) Assistant Attorney General and Assistant United States Attorney in Chicago, has more than 20 years of courtroom experience.  Ms. Andres, special counsel and a former corporate CEO, has more than 15 years corporate and transactional bankruptcy experience in addition to litigation experience as a former Special Assistant United States Attorney.

9.     Each of these attorneys also worked with other litigation and bankruptcy associates and paralegals, as appropriate, to increase efficiency and reduce the cost to the estate.

10.     Mr. Wilson and Mark Hancock, an associate, have been almost exclusively responsible for reviewing the applications of Kirkland & Ellis LLP and will be responsible, in addition, for certain other professionals retained after the first interim fee period for the Debtors' independent directors.

11.     Ms. Stadler and Ms. West, an associate, have been almost exclusively responsible for reviewing fee applications from professionals doing work on behalf of the T-Side Creditors' Committee, including Morrison & Foerster, LLP, as well as certain of the Debtors' special counsel.  Ms. Stadler and Ms. West will be responsible, in subsequent fee periods, for reviewing the applications of the E-side creditors' committee counsel and at least one of the law firms representing the independent directors of EFH.

12.     Ms. Andres has worked almost exclusively reviewing fee applications from a group of the Debtors' financial professionals.

13.     Most of the legal research for the fee review process has been conducted by Ms. West, a 2009 law school graduate, and Mr. Hancock, a 2007 law school graduate.  Both

associates have conducted fee and expense analysis, helped draft and review letter reports to the

Retained Professionals, performed research, drafted memoranda, participated in negotiations

with Retained Professionals, and attended Fee Committee meetings.

14.     Two paralegals provided paraprofessional services during the Compensation

Period.  Kathleen Boucher, a former U.S. Bankruptcy Court courtroom deputy and ECF

developer and trainer—with more than 17 years of experience—monitored the docket, attended

team meetings, and held primary responsibility for overseeing maintenance of Godfrey & Kahn's

internal directory of materials and the Fee Committee's schedule and agenda.  Ms. Boucher

coordinated the filing and service of documents, communicated with the Court's staff, and

compiled written materials for the members' use at each Fee Committee meeting.

15.     Leah Viola, a licensed attorney with five years of experience as a paralegal in

complex litigation and bankruptcy, has provided data analysis and support, developed and

managed a task tracking and workflow system using SharePoint software, performed substantive

review of fees and expenses and related documentation, and helped draft and review the Reports

sent to the Retained Professionals.

16.     Andrew Dalton is a professional compensation analyst.  Before joining Godfrey &

Kahn, he served as Vice President and Director of Legal Audit at Stuart Maue, Ltd., a legal

auditing and litigation management firm in St. Louis, Missouri.  There, Mr. Dalton supervised a

staff of attorneys and accountants who conducted retrospective fee audits (including analysis in

fee-shifting cases), monthly and quarterly invoice review, and bankruptcy fee examination

services.  The fees subject to review by Stuart Maue exceeded $250 million annually during

Mr. Dalton's tenure there.  In his capacity as Director of Legal Audit, Mr. Dalton regularly

consulted with clients regarding a range of case management and cost control measures

including billing guidelines, budgets, staffing, and hourly rates.  As Vice President and Director

of Legal Audit at Stuart Maue, Mr. Dalton served as the fee examiner and/or consultant to the fee

examiner/fee committee in a series of significant Chapter 11 proceedings, including but not

limited to:  *In re Tribune Company, et al., No. 08-13141* (Bankr. D. Del.); *In re Merisant*

*Worldwide, Inc., et al.*, No. 09-10059 (Bankr. D. Del.); *In re Kmart Corp., et al.*, No. 02-2474

(Bankr. N.D. Ill.); and *In re Motors Liquidation Company, et al.*, No. 09-50026 (S.D.N.Y.).

Mr. Dalton personally served as the Fee Examiner in the Tribune Company cases for

approximately two years.

17.    Prior to his work at Stuart Maue, Mr. Dalton worked in the Legal Audit Group of

Meckler, Bulger & Tilson, a law firm in Chicago, Illinois.  For the last 13 years, Mr. Dalton's

professional career has focused on the analysis of professional compensation in sophisticated

matters, reviewing more than $2 billion in legal and financial services fees.

18.    While Mr. Dalton has a law degree from Emory University and is licensed to

practice in Illinois and Georgia, he has not practiced law since joining Godfrey & Kahn in 2012.

He has been primarily responsible for developing in-house data systems and other tools for

unique technologically-supported bankruptcy fee review.  Mr. Dalton developed, monitors and

maintains the firm's fee analysis database, prepares reports, and performs detailed statistical

analysis of Retained Professional billing practices.  Mr. Dalton develops all of the reporting

formats used as exhibits to the Fee Committee's reports and works with external software

developers to build customized audit and reporting processes for issues of particular interest to

the Fee Committee.

## FEE COMMITTEE PROCESS

19.    As of the date of this Application, the Fee Committee has met at least eight times,

most often in person but, occasionally, by telephone.  During its initial meetings, the Fee

Committee developed and adopted standards (the "**Fee Committee Standards**") for fee review

and resolution of interim and final fee applications.

20.    Through the Chair and Godfrey and Kahn as its counsel, the Fee Committee

distributed the Fee Committee Standards and other expectations to the Retained Professionals

with a series of written memoranda and open conference calls.

21.    At the Fee Committee's direction, counsel very generally reviewed all monthly

statements issued by Retained Professionals and issued preliminary correspondence to each

monthly fee applicant outlining objections the Fee Committee may raise in connection with the

interim fee application process, particularly with respect to expenses.

22.    Once Retained Professionals began filing first interim fee applications in late

October, the Applicant analyzed the applications, the associated retention documents and orders,

as well as expense requests and time records, all under the supervision of the Fee Committee.

23.    The fee review process for the first interim fee applications began with a data

analysis by Godfrey & Kahn, reviewing the applications for accuracy and quantitative

inconsistencies.  Godfrey & Kahn attorneys then analyzed the applications line-by-line,

assigning annotations or codes to each time entry potentially subject to question for quantitative

and/or qualitative reasons.

24.    The results of this analysis were presented to the Fee Committee, which discussed

them at length during its meetings.  The Fee Committee ultimately agreed unanimously on a

letter report (the "**Report**") for each Retained Professional.  These Reports, consistent with the

Fee Committee Order and Fee Committee Standards, raised questions, outlined concerns, and

defined areas where the application of the Bankruptcy Code and Rules, the U.S. Trustee

Guidelines, and case law may suggest an adjustment to the fees sought.

25.     The Applicant communicated with each Retained Professional regarding its fee application; sought additional explanations and supporting documentation from many of them; and negotiated significant stipulated reductions with the Fee Committee's guidance.

26.     As documented in status reports filed with the Court, as a result of the Applicant's efforts, no contested fee hearing has been required—all first interim fee applications, with the exception of two professionals that remain in productive discussions with the Fee Committee, have been consensually resolved.[4]

27.     The Fee Committee also has instituted a budget process that, with the cooperation of the Retained Professionals, will provide both benchmarks and projections for fees to be incurred to help reduce the amount of duplicative services.

28.     To complement the budget process, the Fee Committee has initiated meetings with the Debtors' management team, the Debtors' principal counsel, T-Side Creditors' Committee representatives, E-Side Creditors' Committee representatives, and independent directors' counsel and advisors, to discuss supervision and coordination of each Retained Professional and the management of professional fees.  The Fee Committee's focus in these meetings has been largely, though not solely, the scope of each professional's role in these cases to monitor for duplication and overlap between and among firms.

## DESCRIPTION OF SERVICES PROVIDED

29.     The services for which the Applicant requests compensation have been provided in 47 project categories, summarized here.

---

[4] Two other professionals filed their first interim fee applications late and have agreed that their first and second fee applications will be considered together consistent with the timeline the Fee Committee has established for the second interim fee application process.

30.    <u>Matters 020A-20HH:  Analysis, Reports, and Recommendations Regarding</u>

<u>Professionals' Fee Applications:  $474,480.50 (1,164.9 hours)</u>.

A.    During the Compensation Period, the Applicant completed the review of

at least 12 fee applications for services during the first interim period.  The fee applications were

divided into three groups of related professionals and, to reduce the likelihood of duplication,

each group was assigned to a single supervising attorney.  *See supra*, ¶¶ 5-17.

B.    In general, each fee application and its supporting expense and fee

documentation were initially reviewed by one attorney for compliance with established case law,

guidelines, local rules and this Court's orders.  Questionable billing practices were identified in

this initial review.  Through internal meetings, Godfrey & Kahn identified distinguishing

circumstances surrounding each application and winnowed the list of practices to those brought

to the Fee Committee's direct attention.

C.    Godfrey & Kahn professionals regularly kept each other, the Chair, and

the Fee Committee apprised of the issues in the applications they examined to ensure as

consistent an application of standards as possible.

D.    After consultation with the Fee Committee at scheduled Fee Committee

meetings, the Applicant prepared and revised Reports for each Retained Professional, covering

the first interim fee period, identifying specific billing practices potentially not in compliance

with the applicable standards.  These Reports also included the bases for the reductions requested

in established case law, guidelines, local rules and this Court's orders.  In addition to the

narrative report, the Applicant prepared exhibits detailing the specific billing entries that did not

comport with the guidelines.

E.      The Reports were intended to provide transparency, and each Report explained the basis for any possible objection, rather than merely quantifying a proposed or agreed-upon reduction.

F.      The Reports formed the basis for a dialogue with the Retained Professionals, through a formal "Negotiation Period" commencing with the Report and extending 30 days, to comment and respond to the Fee Committee's concerns for each application.[5]

31.      Matter 0002:  General Case Administration, docket monitoring and maintenance and calendaring:  $16,617.00 (64.2 hours).  Services provided in this category included general case management activities that do not fit easily into another substantive category.  These tasks include maintaining Godfrey & Kahn's "intranet" site, identifying and forwarding significant daily filings and postings to team members, and managing the communications between and among Godfrey & Kahn professionals and paraprofessionals.  The vast majority of services provided in this task category has been performed by paralegals.

32.      Matter 0003:  Retention applications and disclosures-Chair and Godfrey & Kahn: $9,452.50 (22.2 hours).  Services recorded in this category included the filing of the Applicant's revised retention documents and the filing of detailed disclosures to the Court and parties-in-interest.  Because most of the Applicant's disclosure activities took place prior to the Fee Committee's formation, and the *nunc pro tunc* date of the Godfrey & Kahn Retention Order, most of the process for review and identification necessary for Rule 2014 disclosure does not appear in the task descriptions and has not been billed to the estates.

---

[5] On several occasions, a Retained Professional and the Applicant have agreed to variances from this schedule.

33.    <u>Matter 0004:  Retention applications and disclosures—third parties:  $1,326.50</u> <u>(2.6 hours)</u>.  Services provided in this category included review, reporting, and communications regarding third party retention applications.

34.    <u>Matter 0005:  Committee Administrative Documents: $12,787.50 (27.1 hours)</u>. Professionals providing services in this category were creating documents for the internal use of the Fee Committee members or to help guide the Fee Committee's processes.  One example is the preparation of a memorandum and related documents addressing possible Fee Committee procedures for identifying and maintaining the confidentiality of certain billing detail in the fee review process.

35.    <u>Matter 0006:  Contact/Communication with Fee Committee members and U.S.</u> <u>Trustee's office:  $38,227.00 (71.7 hours)</u>.  Services provided in this category included communications between the Fee Committee counsel, Chair, and members outside of the context of preparation for and attendance at Fee Committee meetings (matter 0011).

36.    <u>Matter 0007:  Contact/Communications with retained professionals generally:</u> <u>$42,973.00 (94.0 hours)</u>.  This category included communications between Fee Committee counsel and professionals that do not have a segregated matter number (020A-20JJ), including ordinary course professionals.  This category also includes the preparation, review, revision, and discussion of three separate introductory memoranda issued to all professionals outlining the Fee Committee's policies and standards.

37.    <u>Matter 0008:  Drafting documents to be filed with the Court:  $17,848.50</u> <u>(36.7 hours)</u>.  The Applicant prepared and filed a status report in advance of the December 18, 2014 status conference, *Fee Committee's Status Report on Review Process and First Interim Fee Applications Proposed for Hearing on December 29, 2014* [D.I. 3024], in part describing the

principles and standards that the Fee Committee developed and applied to review each interim

fee application and the status of any ongoing negotiations with Retained Professionals.  The Fee

Committee also filed the *Fee Committee's Report on First Interim Fee Applications Scheduled

for Hearing on December 29, 2014* [D.I. 3147], providing an update on the Fee Committee's

review process and status and detailing negotiated resolutions concerning four of the interim fee

applications that required processing and payment before the calendar year's end.

38.     Matter 0009:  Legal Research and drafting research memoranda: $2,603.50

(6.9 hours).  Fee Committee counsel performed several small research projects during the

Compensation Period, including research related to confidentiality designations and industry

source review on billing rate trends and the treatment of rate increases in bankruptcy.

39.     Matter 0010:  Reviewing filed documents: $16,361.50 (34.1 hours).  Professionals

recorded time in this category to review pleadings, transcripts, and other case materials and

background information directly pertinent to the fee analysis process or the Fee Committee's

work.

40.     Matter 0011:  Prepare for and Attend Fee Committee Meetings:  $56,777.50

(125.3 hours).  During the Compensation Period, the Applicant attended meetings of the Fee

Committee, in person, on October 2, 2014, November 17, 2014, and December 15, 2014, and,

telephonically, on October 8, 2014 and December 28, 2014.  The Applicant has also attended, by

telephone, other meetings to address fee-related issues.  This matter also reflects time spent

preparing agendas, minutes, and comprehensive materials prepared for each Fee Committee

member prior to each meeting.

41.     Matter 0013:  Non-Working Travel:  $30,453.00 (127.6 hours).  Charges for all

non-working travel time have been reduced by half.  Godfrey & Kahn attorneys traveled to New

York for Fee Committee meetings and for initial meetings with some of the Retained

Professionals in October, November, and December, 2014.  In addition to traveling to the Fee

Committee meetings, as noted above, representatives from Godfrey & Kahn traveled to

Wilmington on September 16, December 18, and December 29, 2014 for Court hearings.

42.    Matter 0014:  Prepare for and Attend Hearings and Court Communications:

$25,987.50 (67.1 hours).  Services provided in this category included preparing for and attending

hearings on September 16, December 18, and December 29, 2014.

43.    Matter 0015:  Team Meetings:  $37,991.50 (112.5 hours).  From the outset of its

engagement, Fee Committee counsel has conducted weekly meetings.  These meetings are

usually attended by Ms. Stadler, Ms. Andres, Mr. Wilson, Ms. West, Mr. Hancock, Mr. Dalton,

Ms. Viola, and Ms. Boucher.  Most meetings last no more than one-half hour unless the group is

addressing a major substantive issue or completing a cycle of Reports.  There are two principal

reasons for the meetings.  The first is to communicate decisions of the Fee Committee in its

formal meetings and determine how to most effectively implement them.  Second, the meetings

allow Godfrey & Kahn's professionals to discuss issues arising in the fee application review

process, comparing treatment and approaches to fee application review to ensure they are

consistently handled.  In addition, the meetings allow the team to identify issues that require Fee

Committee consideration, as well as to coordinate the preparation and compilation of data and

Fee Committee materials.  These weekly meetings have ensured, to the extent practical, greater

uniformity of treatment of Retained Professionals, a Fee Committee priority.

44.    Matter 0017:  Fee Applications—Godfrey & Kahn and Gitlin & Company LLC.

Godfrey & Kahn spent no time preparing fee applications during its first four months of

retention.

## REQUEST FOR APPROVAL OF COMPENSATION

45.     Interim compensation to professionals is governed by 11 U.S.C. §§ 330 and 331. The Court is authorized to grant "reasonable compensation for actual, necessary services rendered by the [professional person] and reimbursement for actual, necessary expenses."

46.     The Applicant requests that the Court approve this Fee Application, incorporating services and expenses incurred during the Compensation Period, because they have completed their assignment in a timely, efficient and effective manner.

A.      The services of the Applicant have provided direct benefit to the estates, both tangible and intangible, by saving amounts for professional services inadvertently, improvidently or inappropriately billed to the estates.

B.      The services of the Applicant have assisted the Fee Committee, the Court and the U.S. Trustee in fulfilling their own responsibilities, and those same services have helped encourage the Retained Professionals to submit applications for compensation and reimbursement that meet the requirements of the Bankruptcy Code, the U.S. Trustee Guidelines and the local rules of the District of Delaware.

C.      All of the Fee Committee's standards and guidelines applied to other Retained Professionals have also been applied to the Applicant.

47.     Pursuant to the terms of the Fee Committee Order and the Godfrey & Kahn Employment Order, the Applicant has received $250,000 each month as a fixed payment for Fee Committee Chair and counsel services for September through December 2014 (and thereafter) and a pro-rated $80,645.16 payment for August 2014.

48.     The Applicant and the Chair agreed, pursuant to the Fee Committee Order, to accept a monthly flat fee payment for Fee Committee counsel services as an alternative to customary hourly billing.  *See* U.S. Trustee Guidelines ¶ C.5.a.

49.     The aggregate amount of $1,080,645.14 has been conditionally paid to the Fee Committee's counsel and distributed to it and to the Chair, subject to the filing of this Application and further order of this Court.  Of this amount, the Fee Committee's counsel distributed $864,552.13 to Godfrey & Kahn and $216,093.03 to the Chair.  The Applicant now seeks retrospective Court approval of its portion of these payments.

50.     Godfrey & Kahn's services were provided primarily by professionals and paraprofessionals in its Bankruptcy and Litigation practice groups at billing rates (if billed at the firm's standard hourly rates) ranging from $225 to $585 an hour.

51.     In calculating the "value" of services rendered before adjustment based on the flat fee arrangement, Godfrey & Kahn has charged rates generally consistent with those charged to Wisconsin-based clients in non-bankruptcy cases.[6]

52.     The detailed Godfrey & Kahn time records (totaling $857,312.00 at the firm's 2014 hourly rates), accompanying the Application as Exhibit E, reflect the Applicant's voluntary reductions including matters that, in Godfrey & Kahn's judgment, may not be appropriate for billing to the estates.  This includes time spent staffing, planning and establishing work flow software and systems, training or updating attorneys on the use of fee review database software, developing billing categories and protocols, and reviewing third party or other case materials for general knowledge about these cases but not necessarily related to a fee analysis task.  These write-offs also include all time spent reviewing or revising time records or billing, regardless of whether the work was related to compliance with billing requirements unique to bankruptcy cases.  *See* U.S. Trustee Guidelines ¶¶ C.5.d and e.  In total, Godfrey & Kahn does not seek

---

[6] Godfrey & Kahn, S.C. is a Wisconsin-based law firm.  *See* U.S. Trustee Guidelines ¶ C.5.c; *see also* Exhibit G (required comparability disclosure).  As a result of the Fee Committee Chair and counsel's flat fee arrangement, the actual blended rate for each interim fee application may, at times, be higher or lower than Godfrey & Kahn's standard hourly rates.  The "value" of Godfrey & Kahn services provided during the Compensation Period, if calculated at the firm's hourly rates, is $7,240.13 less than the flat fees collected.

compensation or reimbursement for more than 363 hours/$154,000 in fees and $940.26 in expenses recorded by its professionals during the Compensation Period.

53.     In addition, prior to its *nunc pro tunc* retention date of August 21, 2014, Godfrey & Kahn professionals expended more than 500 hours to prepare for the engagement.  This time included case monitoring and document review, the preparation of retention materials, review and comment upon draft Fee Committee documents, and the identification and preparation of the required Rule 2014 disclosures for the Applicant and Chair.

54.     The fees and expenses recorded are in accordance with the Applicant's existing billing rates and practices.  It is the Applicant's standard practice to evaluate its professionals' billing rates for market- and seniority-based adjustments that routinely take effect on January 1st of each year; however, the rates used to calculate the value of services provided in these cases have not changed since the commencement of this engagement.  *See* U.S. Trustee Guidelines ¶ C.5.f.

55.     There is no agreement or understanding between the Applicant and any other entity for the sharing of compensation to be received.  The Chair and Godfrey & Kahn have agreed to an allocation between them of their collective flat rate fee that, both believe, will reflect over time their respective contributions to the Fee Committee's work.  There is no agreement or understanding between Godfrey & Kahn and any other entity, other than shareholders of Godfrey & Kahn, for the sharing of compensation to be received for the services rendered.

56.     The Applicant respectfully maintains that the services provided were actual and necessary to the administration of the fee examination process in these cases.  The fee review process is a statutory mandate in all chapter 11 cases.  Given the size and complexity of these

cases, however, the parties agreed to the creation of a Fee Committee to aid both the U.S.

Trustee and the Court.

57.     In reviewing whether a compensation request should be granted, the Court should

be guided by the following factors:

> [T]he nature, the extent, and the value of such services, taking into account all relevant factors, including—
>
> (A)     The time spent on such services;
>
> (B)     The rates charged for such services;
>
> (C)     Whether the services were necessary to the administration of or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
>
> (D)     Whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue or task addressed;
>
> (E)     With respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and
>
> (F)     Whether the compensation is reasonable, based on the customary compensation charged by comparably skilled practitioners in cases other than these under this title;

11 U.S.C. § 330.

58.     The requested compensation and reimbursement meet the statutory requirements

for allowance.  The Applicant has completed its work in a timely and efficient manner

commensurate with the complexity, importance and nature of the issues involved.  The projects

were staffed by professionals and paraprofessionals with demonstrated skill in the bankruptcy fee

review context, and all work has been assigned consistently with the need to prevent unnecessary

duplication and to ensure that work is performed by the least senior person competent to handle

the matter efficiently.

59. Moreover, the requested compensation is reasonable because it is no more than the customary compensation charged by comparably skilled professionals in Godfrey & Kahn's Wisconsin market and paid by Godfrey & Kahn's non-bankruptcy clients.

60. Accordingly, approval of the requested compensation is warranted.

**REQUEST FOR REIMBURSEMENT OF ACTUAL AND NECESSARY EXPENSES INCURRED DURING THE COMPENSATION PERIOD**

61. Godfrey & Kahn incurred total expenses from August 21, 2014 through December 31, 2014 in the amount of $41,765.88, of which $990.26 has been voluntarily assumed and not billed to the estate. Exhibits C and F contain the expense categories for which the Applicant seeks reimbursement and the detailed expense records.

A. The expenses for which the Applicant seeks reimbursement include only some of those routinely charged to the Applicant's clients.

B. The Applicant is not making a profit on any expense incurred as a result of services provided by a third party and have made a reasonable estimate of the actual cost for expenses incurred for any services provided in-house. The Applicant's charges in these cases are at the same rates or lower than those routinely charged to, and paid by, the Applicant's clients.

62. The largest expenditure other than travel was for external database support and maintenance. This service allows the Fee Committee counsel to have support around the clock if they require assistance with database functionality. The firm expended funds for temporary paralegal fees to employ a retired paralegal with experience in fee committee representation to assist with the initial development of document management processes and procedures for the engagement.

63. Another significant expense item was photocopies provided through a vendor, including copies made and mailed to the Fee Committee. For internal copies, Godfrey & Kahn

typically charges clients $0.15 for each black-and-white copy and $0.50 for each color copy; however, both rates have been reduced to $0.10 a copy. Photocopies provided by third-party vendors have been paid at rates of $0.08 to $0.125 per page for black-and-white and $1.00 per page for color. The Applicant has made supporting documentation available for all external photocopies. Another significant expense was for overnight mail services primarily related to providing Reports and exhibits to Retained Professionals and Fee Committee materials to the members.

64.     The Applicant has declined to charge the estates for all travel between Godfrey & Kahn offices, staff overtime, in-house meals, and certain travel meals.

65.     The expenses are actual, reasonable and necessary in light of the scope of the Applicant's retention to aid in the administration of these cases.

## NOTICE

66.     Notice of this Fee Application has been provided to the parties in interest in accordance with the Interim Compensation Order. The Applicant submits that such notice is sufficient and that no other or further notice need be provided.

67.     No previous request for the relief sought has been made by the Applicant to this or any other Court for these matters.

## CONCLUSION

The Applicant respectfully requests that the Court enter an order retrospectively authorizing interim allowance of compensation for professional services rendered during the Compensation Period in the amount of $864,552.13 in fees and $40,775.62 in actual and necessary expenses incurred during the Compensation Period.

Dated: March 13, 2015.

PHILLIPS, GOLDMAN & SPENCE, P.A.

By:        */s/ Aaron C. Baker*
           Aaron C. Baker (Bar No. 5588)
           Stephen W. Spence
           PHILLIPS, GOLDMAN & SPENCE, P.A.
           1200 N. Broom Street
           Wilmington, DE 19806
           Phone: (302) 655-4200
           Fax:  (302) 655-4210
           E-mail: acb@pgslaw.com
                  sws@pgslaw.com

           Katherine Stadler
           GODFREY & KAHN, S.C.
           One East Main Street, Suite 500
           P.O. Box 2719
           Madison, Wisconsin 53701-2719
           Telephone: (608) 257-3911
           Facsimile: (608) 257-0609
           E-mail: kstadler@gklaw.com

           *Attorneys for the Fee Committee*