# MORRISON | FOERSTER

250 WEST 55TH STREET
NEW YORK, NY 10019-9601

TELEPHONE: 212.468.8000
FACSIMILE: 212.468.7900

WWW.MOFO.COM

MORRISON FOERSTER LLP

NEW YORK, SAN FRANCISCO,
LOS ANGELES, PALO ALTO,
SACRAMENTO, SAN DIEGO,
DENVER, NORTHERN VIRGINIA,
WASHINGTON, D.C.

TOKYO, LONDON, BERLIN, BRUSSELS,
BEIJING, SHANGHAI, HONG KONG,
SINGAPORE

March 16, 2015

Writer's Direct Contact
+1 (212) 468.8043
ckerr@mofo.com

**VIA HAND DELIVERY**

The Honorable Christopher S. Sontchi
United States Bankruptcy Court
824 North Market Street
5th Floor
Wilmington, DE 19801

    Re:    *In re Energy Future Holdings Corporation, et al.* No. 14-10979 (Bankr. Del.)

Dear Judge Sontchi:

    We are counsel to the Official Committee of the T-Side Unsecured Creditors (the "Committee").  We are writing in connection with the Debtors' March 13, 2015 letter seeking an extension of certain deadlines under the Legacy Discovery Protocol[1] and the need for extensions of time under the corresponding Case Matters Protocol.[2]  These issues have arisen because, as acknowledged in their letter, the Debtors failed to meet the deadlines for producing documents set forth in the Legacy Discovery Protocol.

    As it has previously informed the Debtors, the Committee does not object to the Debtors' requested extension of time in Paragraph 8(c) of the Legacy Discovery Protocol to complete their productions and produce their privilege logs, subject to a satisfactory resolution of the related and connected timing issues under the Case Matters Protocol.

    As the Committee has also made clear, it does not object to disclosing to the Debtors the claims that the Committee has reasonably been able to identify based on its review of the documents produced through mid-February and to update that disclosure to the extent new

---

[1] *Order Establishing Discovery Procedures in Connection with Legacy Discovery of Energy Future Holdings Corporation, Its Affiliates, and Certain Third Parties and Other Related Matters*, dated August 13, 2014 (D.I. 1832), as amended by the *Notice of Agreement to Extend Deadlines in Order Establishing Discovery Procedures in Connection With Legacy Discovery of Energy Future Holdings Corporation, Its Affiliates, and Certain Third Parties and Other Related Matters*, dated November 12, 2014 (D.I. 2748) (the "Legacy Discovery Protocol").

[2] *See Stipulation and Agreed Order Regarding a Protocol for Certain Case Matters*, dated September 16, 2014 (D.I. 2051), as amended by *Stipulation and Agreed Order Extending Dates in Order Regarding a Protocol for Certain Case Matters*, dated November 13, 2014 (D.I. 2760) (the "Case Matters Protocol").

ny-1180046

MORRISON | FOERSTER

The Honorable Christopher S. Sontchi
March 16, 2015
Page Two

claims are identified prior to actually filing a standing motion.  Nonetheless, as the Committee has made clear to the Debtors—and as the Debtors have acknowledged—the Committee cannot be put in a position of waiving the right to seek standing to pursue claims if, despite the Committee's hard work, certain claims are not identified by March 31, 2015, because of the Debtors' delay and lack of full disclosure.[3]  We note that the E-Side Official Committee has no such disclosure obligation or bar date with respect to claims it may seek to pursue.

Throughout the Legacy Discovery process, the Committee has focused on working cooperatively with the Participants to obtain discovery and to try to cure any deficiencies and resolve any disputes without seeking the Court's intervention.  As long as the discovery process continues to move forward, that will remain the Committee's practice.  Nonetheless, the Debtors' letter suggests that they have been completely timely and forthcoming in their disclosures as part of this process.  That is not the case, and while there is no real dispute between the Committee and the Debtors about need for the proposed extensions, the Committee cannot leave the Court with that misimpression.

I.     **The Committee's Efforts to Obtain Legacy Discovery Regarding Potential Claims**

As soon as our firm became involved in these cases, we began working on preparing a proposed protocol to obtain discovery regarding potential claims for which the Committee may seek standing to pursue on behalf of the T-Side Debtor entities.  Specifically, the Committee worked to put together an agreed-upon discovery protocol to coordinate and standardize the process of pursuing and responding to the wide-ranging discovery sought through the 2004 Motion filed by Wilmington Savings Fund Society FSB (D.I. 6), the joinder in that Motion by the Ad Hoc Group of TCEH Unsecured Noteholders (D.I. 226), and the additional areas of inquiry the Committee identified.[4]

After extensive negotiations throughout the summer, the parties-in-interest agreed on the form of the Legacy Discovery Protocol and, on August 13, 2014, the Court entered the Order Approving the Legacy Discovery Protocol (D.I. 1832).

On September 12, 2014, the Committee served Initial Consolidated Requests on a number of parties including: (1) the Debtors; (2) the Sponsors; (3) certain members of the

---

[3] A copy of the proposed changes to Paragraph 9 of the Case Matters Protocol that the Debtors and the Committee tentatively agreed upon—subject to the agreement of the other TCEH Creditor Representatives to the Case Matters Protocol—is attached as Exhibit A.

[4] *See Status Report Debtors Status Report in Reference to Wilmington Savings Fund Society, FSBs Motion for Leave to Conduct Discovery Pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure of Energy Future Holdings Corporation, its Affiliates, and Certain Third Parties re: Docket Nos. [6], [7], [8], [ 203], [226] and [417] Filed by Energy Future Holdings Corp.*, dated May 20, 2014 (D.I. 537).

ny-1180046

MORRISON | FOERSTER

The Honorable Christopher S. Sontchi
March 16, 2015
Page Three

First Lien Ad Hoc Committee; (4) Citibank; (5) members of the Ad Hoc Committee of EFIH Unsecured Noteholders; and (6) Fidelity.[5]  By October 10, 2014, each of those parties had served their written responses and objections.  Thereafter, the Committee and various Legacy Discovery Participants extensively met and conferred with each of the recipients of Initial Consolidated Requests regarding the search terms, custodians, other search protocols, and the scope of the requests.

The Legacy Discovery Protocol provided that "recipients of Initial Consolidated Requests shall certify to the Participants the <u>substantial completion</u> of their production of documents no later than sixty (60) days after receipt of the Initial Consolidated Requests, and shall certify to the Participants the <u>full completion</u> of their production of documents no later than eighty (80) days after receipt of the Initial Consolidated Requests" (emphasis added).  Thus, the recipients of the Initial Consolidated Requests were required to substantially complete their productions by November 11, 2014, and fully complete those productions by December 1, 2014.[6]

In consideration of the discovery schedule contemplated by the Legacy Discovery Protocol, the Debtors and the TCEH Creditors negotiated, and on September 16, 2014, the Court entered the Case Matters Protocol, which provided that, while the disclosure date could be extended, the TCEH Creditors would notify the Debtors by January 31, 2015, of the claims for which each such TCEH Creditor intended to request standing.  The TCEH Creditors' ability to identify these claims would be largely informed by the documents and discovery they were able to obtain as a result of the Legacy Discovery process.  The Parties agreed that the TCEH Creditors would have approximately three months from the substantial completion of the document productions in response to the Initial Consolidated Requests to evaluate that information and identify potential claims.

As the November 11, 2014 substantial completion deadline approached, it became apparent that the recipients of the Initial Consolidated Requests would not be able to meet that deadline and, therefore, the Parties agreed to extend those dates.  Accordingly, the Legacy Discovery Protocol was amended to give the recipients of Initial Consolidated Requests until January 12, 2015, to substantially complete their productions and until

---

[5] On June 16, 2014, the Committee separately served document requests on the Debtors in connection with the separate First Lien Investigation under the Cash Collateral Order (D.I. 855).  Starting on July 19, 2014, the Debtors began producing documents in response to these requests.  As of August 21, 2014, the Debtors stopped differentiating between whether documents were produced in response to the First Lien Investigation requests or in connection with Legacy Discovery.

[6] It was fully contemplated that the substantial completion deadline had meaning and that the productions in response to the Initial Consolidated Requests would be all but complete by that date, and that the intervening period before the full completion deadline would be used to produce any stray documents that had not yet been produced.

ny-1180046

MORRISON | FOERSTER

The Honorable Christopher S. Sontchi
March 16, 2015
Page Four

February 9, 2015, to fully complete their productions. The deadlines to provide privilege logs were also extended so that all privilege logs were to be produced by February 26, 2015.[7]

The corresponding dates in the Case Matters Protocol for identifying potential claims were also extended. As amended, the Case Matters Protocol provides that, while the date could be further extended, including based on "the failure of the Debtor or K&E to fulfill their obligations" under the Legacy Discovery Protocol, the TCEH Creditors would notify the Debtors by March 31, 2015, of the claims for which each TCEH Creditor intends to request standing. Of course, the ability to disclose such claims was contingent on the <u>substantial completion</u> of the document productions by the January 12, 2015 date and the <u>full completion</u> of the document productions by February 9, 2015. This has not occurred.

Likewise, while the Legacy Discovery Protocol expressly provides an opportunity to conduct depositions, the understanding was that depositions would not commence until after completion of the productions in response to the Initial Consolidated Requests. In fact, the Participants would be severely prejudiced if forced to conduct depositions without all of the relevant documents. Depositions are limited in number, time, and scope under the Legacy Discovery Protocol and cannot be repeated as a matter of right if new information comes to light.

**II.    Legacy Discovery Productions in Response to the Initial Consolidated Requests Were Not Substantially Complete by January 12, 2015, Much Less Fully Complete by February 9, 2015.**

**A.    The Debtors**

While suggesting full cooperation in this process, the Debtors have in many respects hampered the Committee's efforts to expeditiously identify claims under the Legacy Discovery Protocol and the Case Matters Protocol.

As set forth on the chart attached as Exhibit B, the Debtors' production was in no way substantially complete by either the original substantial completion deadline nor the extended substantial completion deadline of January 12, 2015. With the latest production of approximately 13,000 documents on March 12, 2015, the Debtors have produced to date over 796,000 documents in connection with the First Lien Investigation and/or Legacy Discovery. Of that total figure, over 253,000 documents—<u>almost one in every three of the documents produced</u>—have been produced by the Debtors *after* the January 12, 2015 substantial completion deadline. Over 84,000 documents—<u>more than out of every ten produced</u>—have

---
[7] *See Notice of Agreement to Extend Deadlines in Order Establishing Discovery Procedures in Connection with Legacy Discovery of Energy Future Holdings Corporation, its Affiliates, and Certain Third Parties and Other Related Matters*, dated November 12, 2014 (D.I. 2748).

ny-1180046

MORRISON | FOERSTER

The Honorable Christopher S. Sontchi
March 16, 2015
Page Five

been produced by the Debtors *after* the February 9, 2015, full completion deadline, with the Debtors indicating in their letter that there are more documents yet to come.

The picture of delay is even clearer when considering the production of emails and attachments, generally recognized as one of the most critical forms of evidence. The Debtors have produced over 470,000 emails and attachments as part of the First Lien Investigation and/or Legacy Discovery. As set forth in the chart attached as Exhibit C, over 191,000 of the emails and attachments—more than 40% of the total produced—were produced *after* the January 12, 2015 substantial completion deadline. Over 71,00 of the emails and attachments—more than out of every seven produced—were produced *after* the February 9, 2015 completion deadline, again with more yet to come.

While the Committee is in the process of making its way through the documents as quickly as possible, the process takes time. The back-loading of the productions with so much of the most critical and potentially relevant evidence being produced after the substantial completion deadline has meant that the Committee still has additional work to do to fully identify all of the potential claims.

The failure to timely produce documents is far from the only roadblock that has arisen with respect to the Committee's efforts to identify claims. Where the Committee has specifically identified areas of investigation and possible claims and sought additional information either through the Legacy Discovery Protocol (or the Debtors' additional, on-going obligation to provide diligence under the Case Matters Protocol), the Debtors have often been less than forthcoming.

For instance, the Committee has identified potential, and possibly substantial, claims under a Tax Sharing Agreement, dated May 15, 2012. The Debtors have yet to respond to repeated efforts to obtain full disclosure about these critical tax issues and have so far rebuffed efforts to obtain emails from certain key custodians specifically targeted to this Tax Sharing Agreement. Instead of working with the Committee, the Debtors have apparently focused their efforts on generating a "Report on Certain Tax Methods and Practices", prepared by Grant Thornton, in an effort to explain away the Debtors' non-compliance with the Tax Sharing Agreement. Nonetheless, as it has in the past, the Committee intends to continue to work with the Debtors to obtain this information.

Similarly, the Committee has identified possible claims related to payments by some T-Side Debtors in connection with certain transition bonds and sought documents regarding these transactions in Legacy Discovery. Not finding needed answers in the documents, on January 16, 2015, the Committee wrote to Debtors' counsel requesting a description of what consideration, if any, the T-Side Debtors received as part of this transaction. Rather than providing a straightforward narrative response, on February 12, 2015, the Debtors referred the Committee to publicly available documents that the Committee had already reviewed

ny-1180046

MORRISON | FOERSTER

The Honorable Christopher S. Sontchi
March 16, 2015
Page Six

without being able to answer the question. Nonetheless, the Committee re-reviewed the publicly available material to see if the answers to its questions could be found within those documents. They could not and, therefore, the Committee wrote again to the Debtors on March 6, 2015, requesting a simple narrative response. To date, we have received no response to questions that should have been answered weeks ago.

Moreover, while the Legacy Discovery Protocol expressly provides that the Debtors would collect documents from their financial advisors, and the Debtors agreed to collect and produce documents from Duff & Phelps and Deloitte, the productions are woefully incomplete. The Committee continues to work with the Debtors in this regard and with outside counsel for Duff & Phelps, who the Debtors recently directed the Committee to deal directly with on this matter, despite the Debtors' prior agreement to collect and produce documents from Duff & Phelps as required under the Legacy Discovery Protocol.[8]

These are just a few examples that are emblematic of the Debtors' failure to provide full disclosure in accordance with their obligations under the Legacy Discovery Protocol and the Case Matters Protocol. Nonetheless, the Committee fully expects to work through all of these issues without involving the Court unless left with no resort.

### B. The Other Recipients of Initial Consolidated Requests

Rather than making a "rolling production" of documents "as expeditiously as is reasonably practical" as contemplated by Paragraph 5(g) of the Legacy Discovery Protocol, the other recipients of the Initial Consolidated Requests largely held off on making any productions until the January 12, 2015 substantial completion deadline. More than 80% of the documents produced by these other parties were produced on or after the January 12, 2015 substantial completion deadline. And, while in many respects, these productions remain incomplete, the Committee continues to work with these parties to obtain the requested discovery and fully expects that any open issues can be resolved.

The Sponsors have produced over 127,000 documents in response to the Initial Consolidated Request. The Sponsors produced around 50,000 of these documents on the January 12, 2015 substantial completion deadline, and over 47,000 of the documents—<u>more than one in every three documents produced</u>—were produced after that deadline. The Committee is continuing to work with the Sponsors to obtain certain documents that were not in the production and to address issues that the Committee has raised with the Sponsors' assertion of privilege over certain documents. The Committee remains hopeful that these issues can be resolved.

---

[8] As the Debtors note in their letter, the Committee and the Debtors continue to discuss open issues with respect to a handful of search terms upon which the parties did not agree in connection with the Initial Consolidated Requests. The Committee hopes to resolve those issues soon.

ny-1180046

MORRISON | FOERSTER

The Honorable Christopher S. Sontchi
March 16, 2015
Page Seven

    Citibank has produced over 23,000 documents, virtually all of which were produced on the January 12, 2015 substantial completion deadline, with some produced after the February 9, 2015 completion deadline.

    Fidelity has produced approximately 2,000 documents, a little over 1,000 of which were produced on the day after the January 12, 2015 substantial completion deadline, with the rest produced on the February 9, 2015 completion deadline.

    On December 18, 2014, the members of the Ad Hoc Committee of EFIH Unsecured Noteholders made available approximately 3,600 documents previously produced as part of other proceedings in this case, but because of vendor issues that it experienced, those members have still not completed their production. The members produced around 400 additional documents on March 10, 2015, with more to follow.

    The members of the First Lien Ad Hoc Committee have produced approximately 19,000 documents in connection with Legacy Discovery, over 12,000 of which were produced on the January 12, 2015 substantial completion deadline, around 4,000 of which were produced on or about the February 9, 2015 completion deadline, and a little under 3,000 of which were produced on March 11, 2015. Although discovery was more limited in light of the fact that claims against such members are largely outside of those to be noticed under the Case Matters Protocol, this production is also not complete.

### III.  Conclusion

    As discussed above, the Committee does not oppose the extension of time that the Debtors seek on their behalf and on behalf of all of the Participants so long as the Committee is not subject to any waiver of claims being disclosed pursuant to the Case Matters Protocol.

    Nonetheless, any suggestion that the Debtors have fully complied with all of their discovery obligations, or have done so in a timely manner, is not correct. The Committee continues to work diligently to complete its investigation, and that investigation continues.

                                  Respectfully submitted,

                                  */s/ Charles L. Kerr*

                                  Charles L. Kerr

cc:    Mark E. McKane, Esq.
        Official Service List of All Participants to EFH Legacy Discovery Protocol

ny-1180046

# EXHIIBT A

1.      Paragraph 9 of the Case Protocol is hereby modified and amended as follows:

Paragraph 9:  Each TCEH Creditor Representative must (a) <ins>make commercially reasonable efforts to</ins> disclose in writing to the Debtors <ins>by March 31, 2015</ins> any material claims and causes of action <del>for which it intends to</del><ins>that have been identified, including claims and causes of action in any stage of development, based on discovery and diligence materials provided by February 26, 2015 to such TCEH Creditor Representative, for which it may</ins> request standing in a Standing Motion <del>by March 31, 2015</del><ins>, and update such disclosure in good faith on a rolling basis to the extent additional claims are identified prior to the applicable deadline set forth in subparagraph (b) herein;</ins> and (b) file its respective Standing Motion by the later of (i) April 30, 2015, (ii) fifteen days after approval of a disclosure statement, and (iii) such later date as mutually agreed to by the Debtors and the applicable TCEH Creditor Representative; provided, however, that the TCEH Creditor Representatives reserve the right to seek one or more orders extending such deadlines for cause shown, including the failure of the Debtor or K&E to fulfill their obligations under paragraph (6) above or the 2004 Discovery Protocol.  To the extent that it fails to <del>disclose or seek</del><ins>file for</ins> standing to assert a particular claim or cause of action by the applicable deadline (as it may be extended pursuant to the prior sentence), each TCEH Creditor Representative is deemed to have waived any right to seek standing to assert that claim or cause of action; provided further, however, that nothing herein shall amend, modify or supersede the deadlines and procedures for bringing a Challenge as defined in, and as set forth in, Paragraph 15 of the Final Order (A) Authorizing Use of Cash Collateral for Texas Competitive Electric Holdings Company LLC and Certain of its Debtor Affiliates, (B) Granting Adequate Protection, and (C) Modifying the Automatic Stay [D.I. 855].

# EXHIIBT B



ny-1180046

# EXHIIBT C

