**WHITE & CASE**

White & Case LLP
1155 Avenue of the Americas
New York, New York 10036-2787

Tel + 1 212 819 8200
Fax + 1 212 354 8113
whitecase.com

Direct Dial + (212) 819-8394    cshore@whitecase.com

March 18, 2015

<u>VIA ECF</u>

The Honorable Christopher S. Sontchi
United States Bankruptcy Judge
United States Bankrutpcy Court
824 North Market Street, 5th Floor
Wilmington, Delaware 19801

Re:  *In re Energy Future Holdings Corporation, et al.*, Case No. 14-10979 (Bankr. Del.) (the "Cases")

Dear Judge Sontchi:

We write on behalf of the Ad Hoc Group of TCEH Unsecured Noteholders ("TCEH Ad Hoc Group") in response to the Debtors' letter, dated March 13, 2015 (the "March 13 Letter") [Docket No. 3903] pertaining to (i) the Order Establishing Discovery Procedures in Connection with Legacy Discovery, entered in the Cases on August 13, 2014 [Docket No. 1832] (the "Legacy Discovery Order") and (ii) the Stipulation and Agreed Order Regarding a Protocol for Certain Case Matters, entered in the Cases on September 16, 2014 [Docket No. 2051] (the "Conflicts Protocol").

In the March 13 Letter, the Debtors seek a one-way extension of the dates by which they must complete their production as required by the Legacy Discovery Order, while at the same time refusing to provide a parallel extension of the dates in the Conflicts Protocol by which TCEH Creditor Representatives[1] must identify and seek standing to assert claims and causes of action revealed or supported by the Debtors' production.[2]  As we have informed the Debtors, the TCEH Ad Hoc Group would agree to their requested extension if it came with a reciprocal 30-day extension of the related deadlines under the Conflicts Protocol.  The Debtors have steadfastly

---

[1] All capitalized terms not otherwise defined shall have the meaning ascribed to them in the Legacy Discovery Order or Conflicts Protocol.

[2] The TCEH Ad Hoc Group also joins in the response filed by the Official Committee of T-Side Unsecured Creditors [Docket No. 3906] (the "Committee Response") and will not repeat the arguments made therein.

ALMATY  ANKARA  ASTANA  BEIJING  BERLIN  BRATISLAVA  BRUSSELS  BUDAPEST  DOHA  DÜSSELDORF  FRANKFURT  GENEVA  HAMBURG  HELSINKI
HONG KONG  ISTANBUL  JOHANNESBURG  LONDON  LOS ANGELES  MADRID  MEXICO CITY  MIAMI  MILAN  MONTERREY  MOSCOW  MUNICH
NEW YORK  PARIS  PRAGUE  RIYADH  SÃO PAULO  SHANGHAI  SILICON VALLEY  SINGAPORE  STOCKHOLM  TOKYO  UAE  WARSAW  WASHINGTON, DC

Americas 90479428

refused to agree to a mutual extension. The TCEH Ad Hoc Group thus requests a telephonic conference with the Court, preferably on March 19 or 20, to address the propriety of the Debtors' one-way extension request and obtain a non-consensual 30-day extension of the two deadlines set forth in paragraphs 9(a) and (b) of the Conflicts Protocol.

### A. Background of the Two Orders at Issue

At the outset, we note that the March 13 Letter simply ignores the procedural history of, and the fundamental principles behind, the Court's entry of the Legacy Discovery Order and the Conflicts Protocol in these Cases. That context is critical here, even on a matter as seemingly mundane as a request for an additional thirty days for the TCEH Ad Hoc Group to react to document productions that are still ongoing. The two orders are not, as "the Debtors" repeatedly insinuate in the March 13 Letter, nettlesome checklists of procedural hurdles that conflicted management and professionals must clear before being permitted to march ahead with their day-one plans to release all inter-Debtor claims and causes of action for no consideration. Rather, the two orders operate in tandem to provide critically important protections to T-Side unsecured creditors and to ameliorate the substantive and procedural prejudice that, absent more draconian remedies, would be suffered by such creditors as a result of the myriad of material inter-estate conflicts in these Cases.

As the Court may recall, in the first few days of these Cases, the TCEH Ad Hoc Group joined with the Second Lien Trustee in seeking Rule 2004 discovery from the Debtors regarding pre- and post-petition claims that the T-Side Debtors have against the E-Side Debtors and insiders, all of which were proposed to be released as part of the Debtors' pre-petition RSA.[3] Specifically, the TCEH Ad Hoc Group identified a number of categories of potentially significant claims that the T-Side Debtors were proposing to wipe out, including claims relating to the 2007 LBO, questionable prepetition intercompany tax and expense allocations and historical, non-market intercompany lending, all of which might eventually serve as an important source of recovery for unsecured creditors of the T-Side Debtors. The TCEH Ad Hoc Group also insisted that, rather than waive and release claims in a plan modeled after the tax-free spin of the RSA, the T-Side Debtors should be obligated to preserve whatever inter-Debtor claims existed, to promptly provide all relevant information to the T-Side creditors, to avoid acting on conflicts and to give those whose recoveries were at risk (the creditors) the opportunity to press the TCEH Debtors' claims in this Court, were it to grant standing to do so. The Legacy Discovery Order, negotiated over a period of weeks, was ultimately crafted to operate as a safety valve against the possibility of multiple trustees being appointed at the outset of the Cases and instead to permit one set of Section 327(a) counsel and one set of management at the very least to gather and produce

---

[3] See *Motion of Wilmington Savings Fund Society, FSB ["WSFS"], for Leave to Conduct Discovery Pursuant to the Federal Rules of Bankruptcy Procedure of Energy Future Holdings Corporation, its Affiliates, and Certain Third Parties*, filed on April 29, 2014 [Docket No. 6] (the "Rule 2004 Motion"), and *Limited Joinder of the Ad Hoc Group of TCEH Unsecured Noteholders to the Motion of Wilmington Savings Fund Society, FSB, for Leave to Conduct Discovery Pursuant to the Federal Rules of Bankruptcy Procedure of Energy Future Holdings Corporation, its Affiliates, and Certain Third Parties*, filed on April 30, 2014 [Docket No. 226].

discovery to the TCEH Creditor Representatives who might then be given derivative standing over any claims that merited prosecution.

Beyond the threat to valuable inter-estate claims and causes of action, however, the existence of material conflicts created significant first-day issues with respect to how "the Debtors" could proceed with only one set of Section 327(a) counsel. As the Court may also recall, the TCEH Ad Hoc Group had concerns about whether the Debtors should be permitted to retain K&E for all matters in these Cases due to the material, outcome determinative conflicts that plainly existed (and still exist) between certain of the Debtors' estates. As a result of these concerns, as well as additional issues raised by the Office of the United States Trustee, the Conflicts Protocol eventually put in place a set of rules for handling any matters as to which K&E was not disinterested. Specifically with respect to inter-Debtor disputes, the protocol was intended to provide a mechanism for T-Side creditors to act in the stead of Debtors' counsel for a period of time sufficient to allow a thorough investigation into material inter-Debtor claims and, if necessary, prosecute them. (The more drastic alternative, of course, was to disqualify K&E from addressing any inter-estate matter at all.) Significantly, the parties agreed that the TCEH Creditor Representatives would have approximately three months from the substantial completion of the document productions required by the Legacy Discovery Order to evaluate the information, to conduct necessary interviews or depositions and to identify potential claims as provided for in the Conflicts Protocol. To the extent that claims were not identified, K&E would be then given free rein to act as Section 327(a) counsel with respect to those unnoticed inter-Debtor matters (which, by definition, would presumably not be material to creditor recoveries). Again, these aspects of the Conflicts Protocol were not a procedural nicety whereby conflicted counsel agreed to relinquish control out of some non-specific largesse towards the TCEH Debtors' stakeholders, but rather was the basis of their being retained at all.

### B. Unanticipated Delays in Productions Under the Legacy Discovery Order

Turning to the present dispute, as K&E notes in the March 13 Letter, the production of Legacy Discovery has continued far longer than anyone initially expected. And, as the Committee Response outlines, the Debtors have repeatedly had to seek extensions of the existing discovery schedule which have ultimately interfered with the ability of the Committee, the TCEH Ad Hoc Group, and other T-Side creditors to identify and assess the inter-Debtor claims and causes of action implicated by that discovery. Specifically, the Debtors' document production was not substantially complete by either the original substantial completion deadline or the extended substantial completion deadline of January 12, 2015. Indeed, the Debtors produced hundreds of thousands of documents after the January 12 substantial completion deadline and over 80,000 documents after the extended February 9 full completion deadline, with additional documents still to be produced. In total, the Debtors and other discovery participants have produced approximately 340,000 documents, consisting of almost 3 million pages, since the January 12 deadline. Notably, the documents being produced now – ones that were initially withheld by K&E as privileged – were deemed sufficiently important by some reviewer that they were coded for withholding in the first place.

The Honorable Christopher S. Sontchi

**WHITE & CASE**

March 18, 2015

While the TCEH Ad Hoc Group (which is not estate funded) has invested thousands of attorney hours reviewing targeted portions of the more than 5 million pages of documents produced, the team's document review is not yet complete. More critically, because of the Debtors' delays in production, none of the TCEH Creditor Representatives, including the TCEH Committee, have had the opportunity to conduct any interviews or depose relevant Debtor witnesses who can shed light on the documentary record. Accordingly, when the Debtors requested an extension of their time to complete their production of privilege logs and further responsive documents, the TCEH Ad Hoc Group did not object, but simply requested, for the time being, a corresponding 30-day extension of the deadline to disclose claims and causes of action as provided under the Conflicts Protocol. "The Debtors," consisting as a practical matter of conflicted counsel and the two conflicted CROs acting for them, refused. Instead, they have brazenly insisted that substantially all inter-Debtor claims and causes of action will be waived if not disclosed by March 31, two weeks in advance of their anticipated announcement of a plan of reorganization that will propose to compromise _all_ of the inter-Debtor claims and causes of actions that led to the implementation of the protocols in the first place.

### C. The Court Should Extend the Deadlines In Paragraph 9 of the Conflicts Protocol By 30 Days

Given the foregoing contextual history, there is no legitimate basis for the Debtors' refusal to agree to the short extension of the deadlines in the Conflict Protocol and thereby to provide the same professional courtesies that they have repeatedly enjoyed. When the Debtors were unable to comply with the previous substantial completion deadline of November 11, 2014, the TCEH Ad Hoc Group readily agreed to extend the deadlines to give the Debtors and other recipients of Initial Consolidated Requests until January 15, 2015 to substantially complete their productions and until February 9, 2015 to fully complete their productions. Those extensions necessitated corresponding extensions of the dates in paragraph 9 of the Conflicts Protocol to March 31, 2015 and April 30, 2015 respectively.[4] The new deadlines for claim identification and prosecution, however, were premised on the Debtors and other discovery participants substantially completing their document productions by the agreed-to date of January 12, 2015 and fully completing their productions by February 9, 2015. As noted above, those predicates plainly have not materialized, and the Debtors are currently out of compliance with the Legacy Discovery Order.

With respect to such non-compliance, the Conflicts Protocol provides that the "TCEH Creditor Representatives reserve the right to seek one or more orders extending such deadlines for cause shown, including the failure of the Debtors or K&E to fulfill their obligations under paragraph (6) above [addressing certain conflict issues] or the 2004 Discovery Protocol." (Conflict Protocol ¶ 9) Here, the Debtors admit they cannot comply with the (already once extended) discovery schedule, and on that basis alone the Court can and should extend the deadlines in paragraph 9 of the Conflicts Protocol over their objection. Specifically, the TCEH Ad Hoc

---

[4] The deadline to file Standing Motions was amended to be the later of (i) April 30, 2015, (ii) fifteen days after approval of a disclosure statement, and (iii) such later date as mutually agreed to by the Debtors and the applicable TCEH Creditor Representative.

The Honorable Christopher S. Sontchi

**WHITE & CASE**

March 18, 2015

Group requests a modification of the Conflict Protocol extending the deadline to identify claims for 30 days, until April 30, and extending the date to file a Standing Motion for 30 days, until May 29.[5] The proposed extensions would nonetheless put the deadline for identifying claims significantly closer to the end of document production than originally contemplated under the Conflicts Protocol, as the original deadline for identifying claims was set approximately three months from the substantial completion of document productions.

Even if the Debtors had fully and timely complied with the Legacy Discovery Order, a short 30-day extension of deadlines in the Conflicts Protocol is nonetheless warranted under the circumstances. The Debtors trumpet the "staggering" volume of information they have produced to the Committee and the TCEH Ad Hoc Group, but they disregard entirely the amount of time and effort needed to review those documents by groups that are third-parties to the Debtors' operations. As noted, the TCEH Ad Hoc Group has proceeded diligently, but is not yet finished with document review. Nor would it be a reasonable "compromise" to require the TCEH Creditor Representatives to identify claims based solely on document discovery provided through February 26 (almost five weeks after the deadline for substantial completion and more than two weeks after the deadline for full completion), and only leave open the possibility of identifying additional claims "discovered" thereafter on a rolling basis. At a minimum, that mechanism would open the door for further disputes about what claims were "discovered" after the Debtors' arbitrary bar date of February 26 and would, as discussed below, only exacerbate existing conflicts.[6] Moreover, the Debtors' proposal does not take into account the need for a period of time to conduct witness interviews or depositions before claims identification, which has always been an integral part of the Legacy Discovery Order and is critical in any investigation. In particular, while it is understandable that conflicted counsel and management want to know exactly where the investigation is headed before answering questions, it is more important for the investigators to maintain their work product during the investigatory period. The schedule in the Legacy Discovery Order thus presumes that the TCEH Creditor Representatives would have approximately three months from the completion of document production to conduct depositions before the deadline to identify claims, and it is entirely reasonable for the TCEH Creditor Representatives to want document production to be substantially complete before seeking depositions. This is not only common practice and the most efficient way to conduct discovery, it is also necessary and appropriate here, where the Legacy Discovery Order limits the number of depositions and restricts deposing witnesses more than once.

---

[5] To be clear, contrary to the March 13 Letter, the TCEH Ad Hoc Group has never sought a 60-day extension, but has only ever sought 30 days.

[6] For example, if a claim beyond those specifically identified on March 31 were later asserted, K&E would be in the untenable position of having to advocate for the waiver of creditors' prosecution of a claim as to which they are conflicted from prosecuting themselves.

### D. Notwithstanding The Stated Plans Of Conflicted Professionals to File Global Plans, Inter-Estate Conflicts Are "Ripe" And Must Be Protected Against

Finally, K&E's insistence on rejecting the extension and thereby attempting to dictate the terms and timeline of the investigatory process that was intended to keep these Cases from devolving into existential fights, is unsettling. Given where these Cases stand and the positions that counsel has previously staked out with respect to settlement of inter-Debtor claims and causes of action (all proposed to be released for nothing), there is no doubt an actual conflict exists between the E-Side and T-Side Debtors with respect to all such matters. In the face of that, the proposal for a one-sided extension of the time to complete Legacy Discovery that would hamper the investigation and could lead to the waiver of claims unfortunately advances the interests of persons who are the very targets of the T-Side creditors' investigation and whose entitlement to any recovery in these Cases hinges on the favorable resolution of the claims against them. It is equally unsettling that Mr. Hugh Sawyer, the independent director for the T-Side Debtors charged with acting as another safeguard against the material conflicts at play here, has either been excluded from consideration of the requested short reciprocal extension or has elected not to take a position with respect to the Debtors' refusal of that extension. In such circumstances, it is all the more important to impose appropriate checks on "the Debtors" and to protect the independent interests of T-Side creditors by granting the requested modification of the Conflicts Protocol.

***

As set forth above, the TCEH Ad Hoc Group does not object to the Debtors' requested extension of deadlines in the Legacy Discovery Order, but respectfully requests that the related deadlines in the Conflicts Protocol to identify claims and seek standing to prosecute such claims be extended each by thirty days. We look forward to addressing the Court on these matters.

Respectfully submitted,

*/s/ Christopher Shore*

J. Christopher Shore

cc:   Mark E. McKane, Esq.
      Official Service List of All Participants to EFH Legacy Discovery Protocol