**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | ) | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) | Case No. 14-10979 (CSS) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | **Objection Deadline: April 7, 2015 at 4:00 p.m.** |
| | ) | **Hearing Date: April 14, 2015 at 9:30 a.m.** |

**APPLICATION OF ENERGY FUTURE HOLDINGS
CORP., *ET AL.*, FOR AN ORDER AUTHORIZING THE
DEBTORS TO RETAIN AND EMPLOY ENOCH KEVER
PLLC AS SPECIAL COUNSEL FOR CERTAIN REGULATORY AND
LEGISLATIVE MATTERS, EFFECTIVE *NUNC PRO TUNC* TO MARCH 1, 2015**

The above captioned debtors and debtors in possession (collectively, the "Debtors") file this application (this "Application") for the entry of an order (the "Order"), substantially in the form attached hereto as **Exhibit A**, authorizing the Debtors to employ and retain Enoch Kever PLLC ("Enoch Kever") as special counsel for the Debtors effective *nunc pro tunc* to March 1, 2015. The limited purpose of this Application is to permit the Debtors to retain and employ Enoch Kever to continue to represent the Debtors as their special counsel in connection with certain regulatory and legislative matters. In support of this Application, the Debtors submit the *Declaration of Andrew Kever*, *in Support of the Application of Energy Future Holdings Corp., et al., for an Order Authorizing the Debtors to Retain and Employ Enoch Kever PLLC as Special Counsel for Certain Regulatory and Legislative Matters, Effective* Nunc Pro Tunc *to March 1, 2015* (the "Kever Declaration"), attached hereto as **Exhibit B** and the *Declaration of Stacey H.*

---

[1] The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, which are being jointly administered, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

*Doré in Support of the Application of Energy Future Holdings Corp., et al., for an Order Authorizing the Debtors to Retain and Employ Enoch Kever PLLC as Special Counsel for Certain Regulatory and Legislative Matters, Effective* Nunc Pro Tunc *to March 1, 2015*, attached hereto as **Exhibit C** (the "Doré Declaration").  In further support of this Application, the Debtors respectfully state as follows.

### Jurisdiction and Venue

1. The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Debtors consent pursuant to rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Bankruptcy Rules") to the entry of a final order by the Court in connection with this Application to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory bases for the relief requested in this Application are sections 327(e), 328, and 330 of title 11 of the United States Code (the "Bankruptcy Code"), rules 2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Local Bankruptcy Rules 2014-1 and 2016-2.

### Relief Requested

4. By this Application, the Debtors seek entry of the Order authorizing the employment and retention of Enoch Kever as special counsel to the Debtors in accordance with

the terms and conditions set forth in the engagement letters, (a) dated March 6, 2015 between Energy Future Holdings Corp. ("EFH Corp.") and Enoch Kever (the "Consolidated Engagement Letter");[2] and (b) dated March 6, 2015 between EFH Corp. and Enoch Kever (the "Legislative Engagement Letter," together with the Consolidated Engagement Letter, the "Engagement Letters"), copies of which, together with the Existing Engagement Letters (defined herein), are attached as **Exhibit 1** to **Exhibit A** and incorporated herein by reference.

## Background

5.      On April 29, 2014 (the "Petition Date"), each of the Debtors filed a voluntary petition with the Court under the Bankruptcy Code. The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. The Court has entered a final order for joint administration of these chapter 11 cases [D.I. 849]. The Court has not appointed a trustee. The Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") formed an official committee of unsecured creditors of Energy Future Competitive Holdings Company LLC ("EFCH"), Texas Competitive Electric Holdings Company LLC ("TCEH"), the direct and indirect Debtor subsidiaries of EFCH and TCEH, and EFH Corporate Services Company (the "TCEH Creditors' Committee") on May 13, 2014 [D.I. 420] and an official committee of unsecured creditors of Energy Future Holdings Corp., Energy Future Intermediate Holding Company, LLC, EFIH Finance, Inc., and EECI, Inc. (the "EFH Creditors' Committee") on October 27, 2014 [D.I.

---

[2]     The Consolidated Engagement Letter combines the services being performed in the engagement letters (a) dated as of February 3, 2014, between Luminant Energy Company LLC, Luminant Generation Company LLC ("Luminant") and Enoch Kever, (b) dated as of February 3, 2014, between 4Change Energy Company and Enoch Kever, (c) dated as of February 3, 2014, between EFH Corp. and Enoch Kever and (d) dated as of January 15, 2014, between TXU Energy Retail Company LLC and Enoch Kever (collectively, the "Existing Engagement Letters").

3

2570]. Further information regarding the Debtors' business operations and capital structure is set forth in the declaration of Paul Keglevic in support of the Debtors' first day motions [D.I. 98].

6. Enoch Kever is currently approved by the Court as a Tier 1 Ordinary Course Professional ("Tier 1 OCP") pursuant to the *Order Authorizing the Retention and Compensation of Certain Professionals Utilized in the Ordinary Course of Business* [D.I. 765] (the "OCP Order") and has been performing services for the Debtors in that capacity since the Petition Date. Pursuant to the OCP Order, work performed by Enoch Kever and all other Tier 1 OCPs is capped at $150,000 per month, calculated on a three-month rolling basis (the "Tier 1 OCP Cap"). The work required on the regulatory and legislative matters for which Enoch Kever has been retained has substantially increased, requiring Enoch Kever to incur fees that have exceeded the Tier 1 OCP cap (the "Excess Fees"). Pursuant to the OCP Order, Enoch Kever will file a Notice of Excess Fees for those amounts exceeding the Tier 1 OCP cap for all work performed by Enoch Kever before March 1, 2015. Enoch Kever and the Debtors collectively determined that the work required of Enoch Kever under the terms of the Engagement Letters will cause Enoch Kever to continually incur Excess Fees, prompting the Debtors to file this Application.

**Enoch Kever's Qualifications**

7. Enoch Kever is a Texas firm specializing in regulatory and appellate matters, specifically, providing clients with legal advice and representation before administrative agencies and courts regarding matters arising at the intersection of business and government regulation. Enoch Kever's professionals frequently represent clients in regulated industry litigation, business and industrial litigation, administrative proceedings involving electric industry regulation, and rule-making and over-sight. Additionally, Enoch Kever assists clients in changes and challenges to, as well as compliance with, the governing legislation applicable to and rules of the Public Utility Commission of Texas ("PUCT"), the Federal Energy Regulatory

Commission ("FERC"), and the Texas Commission on Environmental Quality ("TCEQ") as well as the North American Electric Reliability Corporation's ("NERC") Reliability Standards and the Electric Reliability Council of Texas ("ERCOT") Protocols and Operating Guides. Additionally, Enoch Kever assists clients by drafting proposed changes to statutes, evaluating proposed changes, assisting with development and execution of legislative strategies and acting as advocates for clients in the Legislative process. Enoch Kever professionals have advised clients with respect to pending or proposed legislation in all but one session of the Texas Legislature since 1975.

8. The professionals of Enoch Kever have provided many of the Services (as defined below) to the Debtors and their predecessor companies for more than 16 years. That has included representation of the predecessor holding company and its operating subsidiaries prior to the acquisition by the Debtors. Certain of the professionals of Enoch Kever represented the Debtors in connection with the acquisition and subsequent operation of the companies as well as the recent restructuring efforts. In providing such prepetition professional services to the Debtors, Enoch Kever has become very familiar with the Debtors and their business, including the Debtors' financial affairs, debt structure, operations, and related matters. Enoch Kever professionals have worked with the Debtors' management and their other advisors for years, developing unparalleled experience and expertise regarding the Debtors' Texas and federal regulatory matters. Accordingly, Enoch Kever is both well-qualified and uniquely able to represent the Debtors regarding these matters in an efficient and timely manner.

**Services to be Provided**

9. Subject to further order of this Court and consistent with the Engagement Letters, the Debtors seek the authority to employ and retain Enoch Kever to represent the Debtors in such legal matters as the Debtors may request, including state and federal regulatory and legislative

matters that may arise or be ongoing, contested cases, rulemakings, advocacy, and compliance counseling related to matters jurisdictional to the PUCT, FERC, TCEQ, ERCOT, and NERC (the "Services").

**Professional Compensation**

**I.     OCP Engagement**

10.    Enoch Kever will seek all fees it incurred as an OCP before March 1, 2015 pursuant to the OCP Order, which includes filing all necessary Notices of Excess Fees.

**II.    Consolidated Engagement Letter**

11.    Pursuant to the Consolidated Engagement Letter and as set forth in the Kever Declaration, EFH Corp. agreed to an annual base fee of $1,950,000 to be paid in equal monthly installments of $162,000 for January through December 2015.  The specific allocation of monthly payments by the Debtors are as follows:

| | |
|---|---|
| Luminant | $100,000 |
| EFH Corp. | $50,000 |
| TXU Energy Retail Company LLC | $10,416.67 |
| 4Change Energy Company | $2,083.33 |

12.    Pursuant to the terms of the Consolidated Engagement Letter and the fixed fee structure it creates (the "Fixed Fee Structure"), Enoch Kever is only required to report to the Debtors time-based fees incurred in connection with the Consolidated Engagement Letter.

13.    The Debtors and Enoch Kever negotiated the Fixed Fee Structure to function as and be an interrelated, integrated unit, to correspond with Enoch Kever's Services under the Consolidated Engagement Letter, which Enoch Kever renders not in parts, but as a whole.  It would be contrary to the intention of Enoch Kever and the Debtors for any isolated component of the entire Fixed Fee Structure to be treated as sufficient consideration for any isolated portion of Enoch Kever's Services under the Consolidated Engagement Letter.  Instead, the Debtors and

6

Enoch Kever intend that Enoch Kever's Services under the Consolidated Engagement Letter be considered as a whole that is to be compensated by the Fixed Fee Structure in its entirety.

14. Accordingly, as more fully described below, the Debtors believe that the Court should approve Enoch Kever's retention under the Consolidated Engagement Letter subject to the standard of review set forth in section 328(a) of the Bankruptcy Code and that Enoch Kever's compensation should not be subject to any additional standard of review under section 330 of the Bankruptcy Code, except as provided for in the Order. As set forth in the Kever Declaration, Enoch Kever has not shared or agreed to share any of its compensation from the Debtors with any other person, other than as permitted by section 504 of the Bankruptcy Code.

### III. Legislative Engagement Letter

15. Enoch Kever intends to apply for allowance of compensation for Services under the Legislative Engagement Letter and reimbursement of expenses incurred in connection with these chapter 11 cases, subject to the Court's approval and in compliance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, guidelines established by the U.S. Trustee, and any other applicable procedures and orders of the Court, on an hourly basis.

16. For services rendered by Enoch Kever in these cases, the Debtors, subject to the provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, guidelines established by the U.S. Trustee, the *Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Professionals* [D.I. 2066] (the "Interim Compensation Order"), the *Stipulation and Order Appointing Fee Committee* [D.I. 1896] (the "Fee Committee Order"), and any other orders entered by the Court, propose to pay Enoch Kever its customary hourly rates that are in effect, from time to time, as set forth in the Kever Declaration. The Debtors respectfully submit that such rates are reasonable and comparable to

the rates other firms charge for comparable services. Additionally, subject to the provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, guidelines established by the U.S. Trustee, the Interim Compensation Order, the Fee Committee Order, and any other orders entered by the Court, the Debtors propose to reimburse Enoch Kever for expenses incurred in connection with their representation of the Debtors, including, among other things, word processing, telephone and telecopier usage, photocopying charges, travel expenses, expenses for "working meals," as well as non-ordinary overhead expenses such as secretarial overtime. The Debtors understand that Enoch Kever will charge the Debtors for these expenses in a manner consistent with charges made prior to the Petition Date.

### Basis for Relief

17. Section 327(e) of the Bankruptcy Code provides that a debtor subject to court approval:

> [M]ay employ, for a specified special purpose, other than to represent the trustee in conducting the case, an attorney that has represented the debtor, if in the best interest of the estate, and if such attorney does not represent or hold any interest adverse to the debtor or to the estate with respect to the matter on which such attorney is to be employed.

11 U.S.C § 327(e).

18. Moreover, section 1107(b) of the Bankruptcy Code provides that a person is not disqualified for employment under section 327 of the Bankruptcy Code by a debtor-in-possession solely because of such person's employment by or representation of the debtor before the commencement of the case. 11 U.S.C. § 1107(b).

19. Retention of an attorney under section 327(e) does not require the same searching inquiry required for a debtor to retain general bankruptcy counsel under section 327(a). *See Meespierson Inc. v. Strategic Telecom Inc.*, 202 B.R. 845, 847 (D. Del. 1996) ("[S]pecial counsel

employed under [section] 327(e) need only avoid possessing a conflict of interest concerning the matter at hand.").

20.     Nevertheless, the phrase "does not represent or hold any interest adverse to the debtor or to the estate" requires a factual determination of "all relevant facts surrounding the debtors' case, including, but not limited to, the nature of the debtor's business, all foreseeable employment of special counsel, [and] the expense of replacement counsel. . ." *In re Woodworkers Warehouse, Inc.*, 323 B.R. 403, 406 (D. Del. 2005). In general, however, subject to the requirements of sections 327 and 1107, a debtor-in-possession is entitled to the counsel of its choosing. *In re Vouzianas*, 259 F.3d 103, 108 (2d Cir. 2001) (observing that "[o]nly in the rarest cases should the trustee be deprived of the privilege of selecting his own counsel").

**I.    Retaining Enoch Kever as Special Counsel is in the Best Interests of the Debtors' Estates.**

21.     The Debtors believe that, in light of Enoch Kever's experience in regulatory and legislative matters and the electric utility industry and its institutional knowledge of the Debtors' business and particular legal matters in which it represents the Debtors, it is in the best interests of the Debtors' estates to retain Enoch Kever as special counsel. Indeed, if the Debtors are required to retain different counsel to replace Enoch Kever in current matters, the Debtors will need to find, educate and integrate new counsel in these matters, and expend significant resources in doing so, rather than devoting their time and focus to their reorganization efforts. In this respect, retaining Enoch Kever will avoid unnecessary administrative expenses and delays, result in cost efficiencies, and provide valuable assistance to the Debtors' efforts to reorganize.

**II.   Enoch Kever Neither Holds nor Represents any Interest Adverse to the Debtors**.

22.     Except as set forth below and in the Kever Declaration, Enoch Kever, to the best of the Debtors' knowledge, information, and belief, does not represent, and does not hold, any

interest adverse to the Debtors or their estates, their creditors, or equity security holders, their respective attorneys and accountants, the U.S. Trustee, any person employed by the Office of the U.S. Trustee, or any other party in interest in these chapter 11 cases (a) in the matters for which Enoch Kever is to be retained or (b) in matters related to the services to be performed by Enoch Kever for the Debtors.

23. Moreover, the lawyers and staff expected to provide services to the Debtors on behalf of Enoch Kever are not related to the U.S. Trustee assigned to these cases, any person employed in the Office of the U.S. Trustee, or the Bankruptcy Judge presiding over these cases.

24. As described in the Kever Declaration, the Debtors understand that Enoch Kever currently represents or has represented certain creditors and other entities and parties in interest in these chapter 11 cases in other, unrelated matters, as set forth in **Schedule 2**, attached hereto and incorporated by reference.[3] Enoch Kever submitted and checked against its database the names of entities that were listed on a schedule (attached hereto as **Schedule 1** and incorporated by reference) provided to Enoch Kever by the Debtors. This inquiry revealed that certain creditors and/or potential parties in interest (a) are current or former clients or affiliates of clients of Enoch Kever or (b) are adverse or were adverse to clients of Enoch Kever in connection with matters as to which Enoch Kever represented a client. Enoch Kever has agreed with EFH Corp. not to represent any such creditors or parties in interest in the chapter 11 proceeding in any matters adverse to the Debtors.

**III.      Approval of the Fixed Fee Structure set forth in the Consolidated Engagement Letter under Section 328(a) of the Bankruptcy Code is Appropriate.**

---

[3] As referenced in **Schedule 2**, the term "current" client means a client to whom time was posted in the 12 months preceding the Petition Date. As referenced in **Schedule 2**, the term "former" client means a client to whom time was posted between 12 and 36 months preceding the Debtor's Petition Date, but for which the client representation has been closed. As referenced in **Schedule 2**, the term "closed" client means a client to whom time was posted in the 36 months preceding the Debtor's Petition Date, but for which the client representation has been closed.

25. Section 328(a) of the Bankruptcy Code permits the Court to approve the Fixed Fee Structure set forth in the Consolidated Engagement Letter, described above. Section 328 of the Bankruptcy Code permits the compensation of professionals, including law firms, on more flexible terms that reflect the nature of their services and market conditions. As the United States Court of Appeals for the Fifth Circuit recognized in *In re National Gypsum Co.*, 123 F.3d 861 (5th Cir. 1997):

> Prior to 1978, the most able professionals were often unwilling to work for bankruptcy estates where their compensation would be subject to the uncertainties of what a judge thought the work was worth after it had been done. The uncertainty continues under the present § 330 of the Bankruptcy Code, which provided that the court award to professional consultants reasonable compensation based on relevant factors of time and comparable costs, etc. Under present § 328, the professionals may avoid that uncertainty by obtaining court approval of compensation agreed to with the trustee (or debtor or committee).

*Id.* at 862 (citations omitted).

26. Owing to this inherent uncertainty, courts have approved arrangements similar to the Fixed Fee Structure under section 328 of the Bankruptcy Code where such arrangements contain "reasonable" terms and conditions.

27. The Fixed Fee Structure is reasonable in light of the nature and scope of the Services to be provided under the Consolidated Engagement Letter.

28. Similar hourly and contingency fee arrangements like that proposed under the Engagement Letters have been approved under section 328(a) and implemented by courts in other chapter 11 cases. *See, e.g., In re Linens Holding Co.*, No. 08-10832 (CSS) (Bankr. D. Del. June 11, 2009) (approving the employment of Ciardi Ciardi & Astin as special litigation counsel, on both an hourly and alternative fee basis, pursuant to sections 327(a) and 328(a) of the Bankruptcy Code); *In re Key3Media Group, Inc.*, No. 03-10323 (JWV) (Bankr. D. Del. March

10, 2003) (approving the employment of Howrey Simon Arnold & White, LLP as special insurance litigation counsel, on an alternative fee basis, pursuant to sections 327(e) and 328 of the Bankruptcy Code); *In re CVEO Corp.*, No. 01-223 (MFW) (Bankr. D. Del. Nov. 5, 2002) (approving the employment of Whiteford, Taylor & Preston, L.L.P. as special counsel, on an alternative fee basis, pursuant to sections 105(a) and 328(a) of the Bankruptcy Code).

## Notice

29.    The Debtors shall provide notice of this Motion on the date hereof via first class mail to: (a) the U.S. Trustee; (b) counsel to the TCEH Creditors' Committee; (c) counsel to the EFH Creditors' Committee; (d) Wilmington Trust, N.A., in its capacity as administrative agent under the TCEH first lien credit agreement and collateral agent under the TCEH intercreditor agreements and counsel thereto; (e) Bank of New York Mellon Trust Company, N.A., in its capacity as indenture trustee under: (i) the TCEH unsecured pollution control revenue bonds; and (ii) the EFCH 2037 Notes due 2037, and counsel thereto; (f) American Stock Transfer & Trust Company, LLC, in its capacity as indenture trustee under: (i) the 9.75% EFH senior unsecured notes due 2019; (ii) the 10.0% EFH senior unsecured notes due 2020; (iii) the 10.875% EFH LBO senior unsecured notes due 2017; (iv) the 11.25%/12.0% EFH LBO toggle notes due 2017; (v) the 5.55% EFH legacy notes (series P) due 2014; (vi) the 6.50% EFH legacy notes (series Q) due 2024; and (vii) the 6.55% EFH legacy notes (series R) due 2034, and counsel thereto; (g) Computershare Trust Company, N.A. and Computershare Trust Company of Canada, in their capacities as indenture trustee under: (i) the 11.0% EFIH senior secured second lien notes due 2021; and (ii) the 11.75% EFIH senior secured second lien notes due 2022, and counsel thereto; (h) UMB Bank, N.A. in its capacity as indenture trustee under: (i) the 9.75% EFIH senior unsecured notes due 2019; and (ii) the 11.25%/12.25% EFIH senior toggle notes due 2018, and counsel thereto; (i) Delaware Trust Company of Delaware in its capacity as

indenture trustee under: (i) the 6.875% EFIH senior secured notes due 2017; (ii) the 10.0% EFIH senior secured notes due 2020; and (iii), the 11.50% TCEH senior secured notes due 2020, and counsel thereto; (j) Law Debenture Trust Company of New York in its capacity as indenture trustee under: (i) the 10.25% TCEH senior unsecured notes due 2015; and (ii) the 10.50%/11.25% TCEH senior toggle notes due 2016, and counsel thereto; (k) Wilmington Savings Fund Society, FSB in its capacity as indenture trustee under the 15.0% TCEH senior secured second lien notes due 2021, and counsel thereto; (l) counsel to certain holders of claims against the Debtors regarding each of the foregoing described in clauses (c) through (j); (m) the agent for the TCEH debtor-in-possession financing facility and counsel thereto; (n) the agent for the EFIH debtor-in-possession financing facility and counsel thereto; (o) counsel to certain holders of equity in Texas Energy Future Holdings Limited Partnership; (p) counsel to the Ad Hoc Committee of TCEH Unsecured Noteholders; (q) counsel to the Ad Hoc Committee of TCEH Second Lien Noteholders; (r) Oncor Electric Delivery Holdings Company LLC and counsel thereto; (s) Oncor Electric Delivery Company LLC and counsel thereto; (t) the Securities and Exchange Commission; (u) the Internal Revenue Service; (v) the Office of the United States Attorney for the District of Delaware; (w) the Office of the Texas Attorney General on behalf of the Public Utility Commission of Texas; (x) counsel to the Electric Reliability Council of Texas; (y) those parties that have requested notice pursuant to Bankruptcy Rule 2002; and (z) Enoch Kever. The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

**No Prior Request**

30.     No prior request for the relief sought in this Application has been made to this or any other court.

14

WHEREFORE, the Debtors respectfully request that the Court enter the Order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested herein and granting such other and further relief as is appropriate under the circumstances.

Wilmington, Delaware
Dated: March 24, 2015

*/s/ Stacey H. Doré*
Stacey H. Doré
Executive Vice President, General Counsel, and Co-Chief Restructuring Officer of EFH Corp., EFIH, and TCEH LLC