## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) | Case No. 14-10979 (CSS) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | **Re: D.I. 1682, 1791, 1796, 1804, 1983, 1984, 3183, 3329** |
| | ) | |

---

### DEBTORS' SUPPLEMENTAL MEMORANDUM OF
### LAW WITH RESPECT TO THE BAR DATE MOTION
### AND IN SUPPORT OF (A) THE FORM OF AND MANNER FOR
### FILING ASBESTOS PROOFS OF CLAIM AND (B) THE FORM AND MANNER
### OF NOTICE OF BAR DATE WITH RESPECT TO ASBESTOS PROOFS OF CLAIM

---

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS**
**INTERNATIONAL LLP**
Edward O. Sassower, P.C. (*pro hac vice*)
Stephen E. Hessler (*pro hac vice*)
Brian E. Schartz (*pro hac vice*)
601 Lexington Avenue
New York, New York 10022-4611
Telephone: (212) 446-4800
Facsimile: (212) 446-4900

James H.M. Sprayregen, P.C. (*pro hac vice*)
Marc Kieselstein, P.C. (*pro hac vice*)
Chad J. Husnick (*pro hac vice*)
Steven N. Serajeddini (*pro hac vice*)
300 North LaSalle
Chicago, Illinois 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

**RICHARDS, LAYTON & FINGER, P.A.**
Mark D. Collins (No. 2981)
Daniel J. DeFranceschi (No. 2732)
Jason M. Madron (No. 4431)
Tyler D. Semmelman (No. 5386)
920 North King Street
Wilmington, Delaware 19801
Telephone: (302) 651-7700
Facsimile: (302) 651-7701

---

[1] The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, which are being jointly administered, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

## Table of Contents

Background ............................................................................................................. 1

I.      The Proof of Claim Form. ........................................................................... 5

II.     The Notice Plan. ........................................................................................... 5

        A.      Direct Notice Targeting Known Asbestos Claimants. ........................... 6

        B.      Media Plan Targeting Unknown Asbestos Claimants. .......................... 8

Argument ............................................................................................................. 14

I.      The Proof of Claim Form is the Appropriate Form for the Submission of
        Asbestos Claims. ........................................................................................ 14

II.     The Notice Plan Satisfies the Requirements of Due Process Because It Is
        Reasonably Calculated to Provide Notice of the Asbestos Bar Date. ......... 14

        A.      The Notice Plan Will Provide Actual Notice to Known Creditors. ....... 15

        B.      The Notice Plan is Reasonably Calculated to Provide Notice to Unknown
                Asbestos Claimants, Including Holders of Unmanifested Asbestos Claims. ....... 16

## Table of Authorities

**Cases**

*Chemetron Corp. v. Jones*, 72 F.3d 341 (3d Cir. 1995)............................................................ 15, 16

*In re Fed.-Mogul Global Inc.*, No. 01-10578-CSS (Bankr. D. Del.)........................................... 17

*In re The Grand Union Co.*, 204 B.R. 864 (Bankr. D. Del. 1997) ............................................. 14

*In re USG Corp.*, No. 01-2094 (Bankr. D. Del.)......................................................................... 17

*In re W.R. Grace & Co.*, No. 01-01139-JJF (Bankr. D. Del.) ..................................................... 17

*Mennonite Bd. of Missions v. Adams*, 462 U.S. 791 (1983) ........................................................ 15

*Mission Towers v. W.R. Grace*, 2007 WL 4333817, Civil Action No. 07-287 (D. Del. Dec. 6, 2007)............................................................................................................................................ 15

*Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950) ........................................ 14

*Tulsa Prof'l Collection Servs. v. Pope*, 485 U.S. 478 (1988) ...................................................... 14

*Wright v. Corning*, 679 F.3d 101 (3d Cir. 2012) ........................................................................ 16

**Other Authorities**

Federal Judicial Center, *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide* (2010) .......................................................................................................... 17

The above-captioned debtors and debtors in possession (collectively, the "Debtors") file this supplemental memorandum of law with respect to the Bar Date Motion (as defined herein) and in support of the Debtors' proposed order (the "Order") approving the form and manner for filing proofs of claim and of notice of the bar date with respect to all prepetition claims against the Debtors, including unmanifested claims, relating to exposure to asbestos, that are not property damage claims or claims for contractual or common law indemnification or contribution (such claims, the "Asbestos Claims," and such bar date, the "Asbestos Bar Date").[1]  In support of the Order, the Debtors submit the *Declaration of Cameron Azari in Support of the Form and Manner of Notice of Bar Date with Respect to Asbestos Claims* (the "Azari Declaration") and the *Declaration of James Katchadurian in Support of the Bar Date Motion and in Support of (A) The Form of and Manner for Filing Asbestos Proofs of Claim and (B) The Form and Manner of Notice of Bar Date with Respect to Asbestos Proofs of Claim* (the "Katchadurian Declaration"). In further support of the Order, the Debtors respectfully state as follows.

## Background

1.      On April 29, 2014 (the "Petition Date"), each of the Debtors filed a voluntary petition with the Court under the Bankruptcy Code.  The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  The Court has entered a final order for joint administration of these chapter 11 cases [D.I. 849].  The Court has not appointed a trustee.  The Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") formed an official committee of unsecured creditors of Energy Future Competitive Holdings Company LLC ("EFCH"), Texas

---

[1]      The Debtors incorporate by reference the arguments made in the *Debtors' Reply in Support of Bar Date With Respect to Asbestos Claims* [D.I. 1804] (the "Reply") and the *Debtors' Supplemental Brief in Support of Bar Date with Respect to Asbestos Claims* [D.I. 1984] (the "First Supplemental Brief").  Capitalized terms that are used but not defined herein shall have the meanings ascribed in the Reply.

Competitive Electric Holdings Company LLC ("TCEH"), the direct and indirect Debtor subsidiaries of EFCH and TCEH, and EFH Corporate Services Company (the "TCEH Creditors' Committee") on May 13, 2014 [D.I. 420] and an official committee of unsecured creditors of Energy Future Holdings Corp., Energy Future Intermediate Holding Company, LLC, EFIH Finance, Inc., and EECI, Inc. (the "EFH Creditors' Committee") on October 27, 2014 [D.I. 2570].

2.      On May 2, 2014 and September 16, 2014, the Court entered orders authorizing the Debtors to employ and retain Epiq Bankruptcy Solutions, LLC ("Epiq"), as the claims and noticing agent and administrative advisor to the Debtors [D.I. 321, 663].

3.      On May 2, 2014, the Court entered an order establishing October 27, 2014, at 5:00 p.m. (prevailing Eastern Time) as the final date and time for certain customer claimants holding or asserting a claim against the Debtors arising on or before the Petition Date to file proofs of claim (the "Customer Proofs of Claim") in these chapter 11 cases and approving the form and manner of notice of the Customer Claims Bar Date [D.I. 307].

4.      On July 23, 2014, the Debtors filed the *Motion of Energy Future Holdings Corp., et al., for Entry of an Order (A) Setting Bar Dates for Filing Non-Customer Proofs of Claim and Requests for Payment Under Section 503(b)(9) of the Bankruptcy Code, (B) Approving the Form of and Manner For Filing Non-Customer Proofs of Claim and Requests for Payment Under Section 503(b)(9) of the Bankruptcy Code, and (C) Approving Notice Thereof* [D.I. 1682], requesting authority to set a bar date for all non-Customer Proofs of Claim, including Asbestos Claims (the "Bar Date Motion").  On August 8, 2015, certain asbestos personal injury law firms (the "PI Law Firms") filed the *Objection of Certain Asbestos Claimants to the Motion of Energy Future Holdings Corp., et al., For Entry of an Order (A) Setting Bar Dates for Filing Non-Customer Proofs of Claim and Requests for Payment Under Section 503(B)(9) of Bankruptcy*

*Code, (B) Approving the Form of and Manner for Filing Non-Customer Proofs of Claim and Requests for Payment Under Section 503(B)(9) of the Bankruptcy Code, and (C) Approving Notice Thereof* [D.I. 1791], objecting to the relief requested in the Bar Date Motion to the extent it applied to Asbestos Claims.[2]  On August 11, 2014, the Debtors filed the *Debtors' Reply in Support of Bar Date With Respect to Asbestos Claims* [D.I. 1804].

5.      On August 18, 2014, the Court entered an order establishing October 27, 2014, at 5:00 p.m. (prevailing Eastern Time) as the final date and time for all persons and entities holding or asserting a claim against the Debtors arising on or before the Petition Date to file proofs of claim in these chapter 11 cases, except for Asbestos Claims ("General Proofs of Claim") [D.I. 1866].  Further, the Court requested briefing from the Debtors and the PI Law Firms as to whether the Court could permissibly set a bar date for asbestos claims.  On September 9, 2014, the Debtors filed the First Supplemental Brief, in further support of setting a bar date for all Asbestos Claims, including unmanifested claims.  On the same day, the PI Law Firms filed the *Supplemental Brief of the Personal Injury Law Firms in Opposition to the Imposition of a Claims Bar Date Affecting Present and Future Asbestos Personal Injury Claimants* [D.I. 1984], arguing, among other things, that a bar date could not be set for unmanifested Asbestos Claims.  Pursuant to agreement between the Debtors and the PI Law Firms, the briefs filed on September 9, 2014, were limited to the issue of whether the Court could set a bar date with respect to Asbestos Claims, including unmanifested Asbestos Claims, with the issue of the form of notice for all

---

[2]      On August 8, 2014, the PI Law Firms filed the *Corrected Objection of Certain Asbestos Claimants to the Motion of Energy Future Holdings Corp., et al., For Entry of an Order (A) Setting Bar Dates for Filing Non-Customer Proofs of Claim and Requests for Payment Under Section 503(B)(9) of Bankruptcy Code, (B) Approving the Form of and Manner for Filing Non-Customer Proofs of Claim and Requests for Payment Under Section 503(B)(9) of the Bankruptcy Code, and (C) Approving Notice Thereof* [D.I. 1796], clarifying certain statements made in the original objection.

Asbestos Claims, including unmanifested Asbestos Claims, if applicable, to be determined at a later date.[3]

6.      On January 7, 2015, the Court entered an opinion holding that a bar date could be established for all prepetition claims, including unmanifested Asbestos Claims (the "Opinion") [D.I. 3183].

7.      The Debtors worked with Hilsoft Notifications ("Hilsoft"), a business unit of Epiq, to design a comprehensive notice plan (the "Notice Plan")[4] to provide notice of the Asbestos Bar Date to known and unknown holders of Asbestos Claims (collectively, the "Asbestos Claimants").  Hilsoft is a leading global provider of legal noticing services, and has designed and implemented notice programs in many of the largest and most significant cases in history, including *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation*, MDL No. 1720 (E.D.N.Y.); *In Re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, MDL No. 2179 (E.D. La.), and *In Re: Checking Account Overdraft Litigation*, MDL 2036 (S.D. Fla.).  Various courts, including in published decisions, have recognized and approved notice plans designed by Hilsoft.  Azari Decl. ¶ 2–4.  Key Hilsoft principals Cameron Azari, Esq., Director of Legal Noticing, and Lauran Schultz, Executive Director, designed the Notice Plan, and will oversee implementation of the Notice Plan to its successful completion (except as discussed herein).

8.      In addition, the Debtors have engaged in discussions with advisors to the EFH Committee regarding the Asbestos Bar Date generally, the Notice Plan, and other issues relating

---

[3]    *See* First Supplemental Brief at 3, n.2.

[4]    The Notice Plan is attached to the Azari Declaration as Exhibit A.

to the form and manner of notice of the Asbestos Bar Date. As of the date hereof, such discussions are ongoing.

## I.    The Proof of Claim Form.

9.    Under the Order, the proof of claim form used by claimants to submit Customer Proofs of Claim and General Proofs of Claim (the "Proof of Claim Form") is the form through which Asbestos Claimants may submit their Asbestos Claims. A copy of the Proof of Claim Form is attached to the Order as Exhibit 1. Pursuant to the instructions on the Proof of Claim Form, an Asbestos Claimant will be required to attach documents that support the Asbestos Claim. *See* Proof of Claim Form ¶ 7.

## II.    The Notice Plan.

10.    The Notice Plan is targeted to reach various types of potential Asbestos Claimants, including persons who (a) (i) may have been employed by the Debtors or the Debtors' predecessors, may have performed work for or at the Debtors or the Debtors' predecessors as a contractor or subcontractor, or may have performed work for an unrelated entity at a site where the Debtors or the Debtors' predecessors also performed work; and (ii) may have been exposed to asbestos in the course of their employment by the Debtors or the Debtors' predecessors or work for the Debtors or the Debtors' predecessors; or (b) may have a claim against the Debtors based on the exposure of another person to asbestos.

11.    Asbestos Claimants may be classified as either: (a) persons who have asserted the existence of an Asbestos Claim against the Debtors and/or their predecessors (the "Known Asbestos Claimants"); or (b) persons who have not yet asserted the existence of an Asbestos Claim against the Debtors and/or their predecessors, but who may be able to do so, now or in the future (the "Unknown Asbestos Claimants"). Unknown Asbestos Claimants may be further classified two categories: (a) claimants holding manifested Asbestos Claims and (b) claimants

5

holding unmanifested Asbestos Claims. The Notice Plan includes both (a) a direct notice component, targeting Known Asbestos Claimants and Unknown Asbestos Claimants who may be identified from the Debtors' books and records; and (b) a broad, wide-reaching media plan targeting Unknown Asbestos Claimants (the "Media Plan").  Moreover, the Notice Plan targets holders of both manifested and unmanifested Asbestos Claims.

12.    In the process of designing the Notice Plan, the Debtors provided to Hilsoft relevant information, including information regarding the Debtors' corporate history, a summary of asbestos claims filed against the Debtors, the location of the Debtors' or Debtors' predecessors' power plants and business operations, the time period of the potential exposure to asbestos, and the occupation types most likely to have been exposed to asbestos-containing material.  Azari Decl. ¶ 6.  In addition, Hilsoft relied upon its extensive experience in developing notice plans, including chapter 11 asbestos-related cases and non-bankruptcy class action cases. Azari Decl. ¶ 6.

13.    The Notice Plan is broad and multi-faceted, and seeks to reach its target audiences in a variety of different ways.  The Notice Plan will provide fair and adequate notice to Known and Unknown Asbestos Claimants, including holders of unmanifested Asbestos Claims, and satisfies the requirements of due process.  Azari Decl. ¶ 7.  A summary of the primary components of the Notice Plan is set forth below.[5]

**A.    Direct Notice Targeting Known Asbestos Claimants.**

14.    Immediately prior to the filing of the Debtors' chapter 11 petitions, the Debtors gathered from their books and records information which comprises the Debtors' creditor matrix, including information relating to Known Asbestos Claimants (*i.e.*, those parties who are engaged

---

[5]    Additional information regarding the Notice Plan is contained in the Azari Declaration.

in asbestos-related litigation with the Debtors, have threatened to initiate such litigation, or have made other Asbestos Claim-related demands against the Debtors) and such Known Asbestos Claimants' counsel with respect to such Asbestos Claims.  Katchadurian Decl. ¶ 6.  Additionally, the Debtors conducted a reasonable search of their available records to identify files relating to current and previous employees and contractors of the Debtors and their predecessors who may have been exposed to asbestos in the course of their employment by the Debtors or the Debtors' predecessors or work for the Debtors or the Debtors' predecessors, including those who have not yet asserted the existence of an Asbestos Claim against the Debtors or the Debtors' predecessors (the "Employees and Contractors").  Katchadurian Decl. ¶ 7.

15.    The Debtors, together with their advisors, developed a bar date notice tailored for potential Asbestos Claimants (the "Direct Notice").  A cover letter (the "Cover Letter"), a copy of the Direct Notice, a copy of the Publication Notice (as discussed herein), and a Proof of Claim Form (together, the "Bar Date Package") will be mailed via first class mail to all Known Asbestos Claimants, as well as such Known Asbestos Claimants' counsel with respect to such Asbestos Claims.  The Bar Date Package also will be mailed to all identified Employees and Contractors.  Prior to the mailing of the Bar Date Package to these parties, the addresses of the Employees and Contractors will be checked against the National Change of Address database maintained by the United States Postal Service or updated through a third-party address search service.  Bar Date Packages that are returned as undeliverable will be remailed on an ongoing basis to any new address available through postal service information, or to better addresses that may be found after reasonable third-party service searches.  Additionally, a Bar Date Package will be mailed to all persons who request one.

16.     Epiq will implement service of the Direct Notice component of the Notice Plan. A copy of the proposed Direct Notice is attached to the Order as Exhibit 2.  A copy of the proposed Cover Letter is included in Attachment 3 to the Notice Plan.

**B.     Media Plan Targeting Unknown Asbestos Claimants.**

17.     The Media Plan includes various forms of notice, utilizing consumer print publications, trade magazines, labor union publications, national newspapers, local daily newspapers, and Internet banner advertising, to reach both holders of manifested Asbestos Claims and holders of unmanifested Asbestos Claims.  The Media Plan is designed to meet due process requirements.  The combined measureable reach of the Media Plan, accounting for only the national publications and national digital media, is approximately 87.6% of Men 55+, an average of 3.1 times each, and approximately 80.1% of Adults 18+ in the United States, an average of 2.5 times each.  Azari Decl. ¶ 9.  Other components of the Media Plan are not included in the estimated reach and frequency calculation, including the individual notice, publication in trade and local newspaper publications, the Informational Release (as discussed herein), the labor union outreach program, and sponsored Internet search listings.  Accordingly, the actual reach of the Media Plan is necessarily understated.  The presence of the non-measured elements will only increase the effectiveness of the notification effort.  Azari Decl. ¶ 10.  Further detail regarding each component of the Media Plan is set forth below.

**1.     Target Audiences for the Media Plan.**

18.     As further discussed in the Notice Plan, based on the history of asbestos personal injury claims in the United States, the Debtors' corporate history and that of their predecessors, and the characteristics of individuals most likely to have been exposed to asbestos-containing material, Hilsoft selected the population of men 55 years of age or older ("Men 55+") as the primary target audience of the Media Plan.

8

19.     Hilsoft also selected a secondary target audience of adults 18 years of age or older ("Adults 18+").   In addition to taking into account the above factors, this secondary target audience seeks to include all men and women who may have a claim against the Debtors based on the exposure of another person to asbestos.

### 2.   Dedicated Website and Toll-Free Number.

20.     Separate from the Debtors' chapter 11 website, a neutral, informational website with an easily remembered domain name will be established for potential Asbestos Claimants (the "Asbestos Bar Date Website").   The Direct Notice, the Proof of Claim Form, and the Publication Notice (as described below), as well as answers to frequently asked questions, will be available on the Asbestos Bar Date Website, along with other relevant documents and information.   The Asbestos Bar Date Website address (www.EFHAsbestosClaims.com) will be prominently displayed in all printed notice documents and other paid advertising.

21.     Additionally, a toll-free number has been established for potential Asbestos Claimants to call for more information (the "Toll-Free Number").   By calling the Toll-Free Number, potential Asbestos Claimants can listen to answers to frequently asked questions and request a copy of the Bar Date Package.   During regular business hours, callers may also speak with a claims representative.   The Toll-Free Number will be prominently displayed in all printed notice documents and other paid advertising.

### 3.   Publication Notice in Print Media.

22.     Hilsoft worked with the Debtors to develop a publication version of the Asbestos Bar Date notice that is written in a plain language style (the "Publication Notice") and is consistent with the Federal Judicial Center's "illustrative" forms of plain language notices (available at www.fjc.gov). The Publication Notice features a large headline that allows a reader to easily identify whether they may be affected.  The Publication Notice describes who may file

a claim, the deadline to file a claim, and the consequences of doing nothing.  The Publication

Notice is written in plain, easily understandable language so that readers can comprehend the

information effectively.  The Publication Notice also invites direct response by providing simple,

convenient mechanisms, including the Asbestos Bar Date Website address and the Toll-Free

Number, to allow readers easy access to further information.

23.    Importantly, the Publication Notice includes clear language specifically targeting

holders of unmanifested Asbestos Claims.  Because the Publication Notice is targeted to

workers, contractors and related family members who may have worked at a plant decades ago,

the headline is broadly addressed as follows: "If you or a family member ever worked at certain

power plants, your legal rights could be at stake."  The large, bolded headline of the Publication

Notice states that anyone who "develop[s] an asbestos-related illness in the future" may be

affected.  The Publication Notice specifically indicates that "illness may occur decades after

initial exposure to asbestos," and that even if potential Asbestos Claimants are "not sick now,"

they "**must act <u>now</u> in order to preserve [their] rights**." Publication Notice (emphasis in

original).  Moreover, the Publication Notice directs readers to the Asbestos Bar Date Website to

view a list of sites at which potential Asbestos Claimants may have been exposed to asbestos in

the past, thereby simplifying the process by which such Asbestos Claimants with unmanifested

Asbestos Claims may self-identify.  A list of key Debtor entities, including Ebasco Services,

Inc., is prominently displayed via an inset box in the center of the Publication Notice.

24.    The Publication Notice will be published in a variety of print media having

national and local circulation throughout the United States, specifically targeting men's

publications and magazines aimed at older demographic segments due to the Media Plan's target

audiences, including the following:

      a.     five nationwide consumer publications;

   b.  one hundred and ninety-two various local newspapers across a variety of states surrounding relevant plants and other facilities related to the Debtors or their predecessors;

   c.  three national newspapers;

   d.  nine trade publications; and

   e.  eleven union labor publications.

  25.  Summaries of the print media in which the Publication Notice will be published, the distribution of the print media, and the number of times the Publication Notice will appear in each print media, are included in the Notice Plan.  The Publication Notice is included in Attachment 3 to the Notice Plan.

    **4.**  **Internet Banner Advertising and Sponsored Search Listings.**

  26.  The Media Plan includes an Internet component to further enhance its reach to unknown asbestos claimants.  The Internet notice component includes banner advertisements on high-traffic websites or advertising networks (the "Banner Advertisements").  The Banner Advertisements will link directly to the Asbestos Bar Date Website, thereby allowing potential Asbestos Claimants easier access to relevant information and documents.  The Banner Advertisements use language from the Publication Notice headline, specifically targeting holders of manifested and unmanifested Asbestos Claims.  Potential Asbestos Claimants, including holders of unmanifested Asbestos Claims, are notified that their "legal rights could be at stake" if they or a family member "ever worked at certain power plants," or if they "have an asbestos-related illness today" or "develop an asbestos-related illness in the future."  A chart identifying the websites, the duration and size of the Banner Advertisement, and approximate nationwide Adults 18+ impressions, is included in the Notice Plan.  A copy of the proposed Banner Advertisement is included in Attachment 3 to the Notice Plan.

27.     The Internet component of the Media Plan also includes sponsored search listings linking directly to the Asbestos Bar Date Website from the Google, Yahoo!, and Bing search engines, triggered by an Internet user's entry of specified key search terms.  Specifically, when search engine visitors search common keyword combinations such as "Energy Future Holdings" or "EFH" paired with "asbestos," "claim," or "bar date," the sponsored search listing will be displayed at the top of the page or in the upper right hand column, and will link directly to the Asbestos Bar Date Website, as defined and further discussed herein.

### 5.     Informational Release.

28.     The Media Plan also seeks to reach unknown claimants through an informational release and a labor union outreach program.  A party-neutral, Court-approved informational release (the "Informational Release") will be distributed to approximately 4,200 print and broadcast and 5,500 online press outlets throughout the United States for dissemination as a news story.  The Informational Release will include the address of the Asbestos Bar Date Website and the Toll-Free Number, as discussed herein.  The Informational Release also will include language specifically targeting holders of unmanifested Asbestos Claims.  For example, the Informational Release states that even if potential Asbestos Claimants have not been "diagnosed with any disease or experienced symptoms," they "**must respond now to preserve their rights**" (emphasis in original).  The Informational Release further states that anyone who "in any way may have been exposed to asbestos" related to the Debtors or their predecessors "**must act <u>now</u> in order to preserve their rights**" (emphasis in original).  Although there is no guarantee that any news stories will result, the Informational Release may provide additional notice exposure.  A copy of the proposed Informational Release is included in Attachment 3 to the Notice Plan.

### 6. Labor Union Outreach Effort.

29.     Hilsoft will work with the Debtors to identify unions that are known to represent current and former employees of the Debtors and the Debtors' predecessors who may have been exposed to asbestos.  The Informational Release and other relevant documents will be sent directly to these labor unions, and the labor unions will be asked to include information about the Asbestos Bar Date in communications with their members, including retirees.

### 7. Timing and Cost of the Media Plan.

30.     The Media Plan will extend over an approximate seven-week period, beginning approximately 45 days after the entry of the order establishing the Asbestos Bar Date.  The proposed timeline for the various components of the Media Plan is included in the Notice Plan. The estimated cost of the Media Plan is approximately $2.1 million, which does not include expert and professional fees incurred.

### 8. Reach and Frequency of the Media Plan.

31.     "Reach" refers to the estimated percentage of the unduplicated audience exposed to the notice.  "Frequency," in contrast, refers to how many times, on average, the target audience had the opportunity to view the notice.  The combined measureable reach of the Media Plan, accounting for only the five nationwide consumer publications and the Banner Advertisement components, is 87.6% of Men 55+, with an average frequency of 3.1 times, and 80.1% of Adults 18+, with an average frequency of 2.5 times.  Many of the other components of the Media Plan are not measured in determining the reach and frequency of the Media Plan, including publication in national newspapers and trade and local publications, the Informational Release, the labor union outreach program, and sponsored Internet search listings.  Accordingly, the actual reach of the Media Plan is necessarily understated.  The presence of the non-measured elements will only increase the effectiveness of the notice provided in the Media Plan.

## Argument

### I.   The Proof of Claim Form is the Appropriate Form for the Submission of Asbestos Claims.

32.    The Debtors believe that the Proof of Claim Form is the appropriate form for the submission of Asbestos Claims.  Requiring that Asbestos Claimants file the Proof of Claim Form will not significantly burden such Asbestos Claimants.  Pursuant to the instructions on the Proof of Claim Form, an Asbestos Claimant will be required to attach documents that support the Asbestos Claim. *See* Proof of Claim Form ¶ 7.   This is the same requirement that applies to any claimant asserting claims in bankruptcy.  Therefore, use of the Proof of Claim form for the filing of Asbestos Claims, including unmanifested Asbestos Claims, is appropriate and not unduly burdensome.

### II.   The Notice Plan Satisfies the Requirements of Due Process Because It Is Reasonably Calculated to Provide Notice of the Asbestos Bar Date.

33.    The Notice Plan is reasonably calculated to provide notice of the Asbestos Bar Date, and therefore satisfies the requirements of due process.   In the context of notifying potential claimants of a bankruptcy bar date, due process requires "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their claims."  *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).   Whether a particular notice program is reasonably calculated to apprise interested parties of the bar date depends upon the particular facts and circumstances. *See*, *e.g*, *Tulsa Prof'l Collection Servs. v. Pope*, 485 U.S. 478, 484 (1988); *In re The Grand Union Co.*, 204 B.R. 864, 871 (Bankr. D. Del. 1997) ("Whether a creditor received adequate notice of a bar date depends upon the facts and circumstances of a given case." (internal punctuation removed)).   Publication notice provides sufficient due process with respect to unknown claimants — those claimants whose "interests are either conjectural or future or,

although they could be discovered upon investigation, do not in due course of business come to the knowledge [of the debtor]." *Chemetron Corp. v. Jones*, 72 F.3d 341, 346 (3d Cir. 1995).

34.     The Notice Plan is reasonably calculated to inform **both** Known and Unknown Asbestos Claimants of the Asbestos Bar Date.  Moreover, the Notice Plan is designed to provide fair and adequate notice to holders of unmanifested Asbestos Claims. Hilsoft, a well-known legal notification firm, prepared the comprehensive, multifaceted Notice Plan that provides broad nationwide notice to expansive target audiences in a manner carefully designed to fairly and adequately reach Asbestos Claimants.  Therefore, the Notice Plan satisfies the requirements of due process.

**A.     The Notice Plan Will Provide Actual Notice to Known Creditors.**

35.     The Notice Plan will provide actual notice of the Asbestos Bar Date to Known Asbestos Claimants—*i.e.*, those Asbestos Claimants whose identities are reasonably ascertainable.   The Supreme Court has held that a creditor's identity is "reasonably ascertainable" if that creditor can be identified through "reasonably diligent efforts."  *Mennonite Bd. of Missions v. Adams*, 462 U.S. 791, 798 n. 4 (1983).  The "reasonably ascertainable" standard requires an analysis of the specific facts of each case.   *Id.* at 346 n. 2.  Reasonable diligence "does not require impracticable and extended searches in the name of due process. . . . The required search instead focuses on the debtor's own books and records.  Efforts beyond a careful examination of these documents are generally not required."  *Chemetron*, 72 F.3d at 346-47 (finding that the "reasonably ascertainable" standard did not require the debtors to perform a title search of properties surrounding areas contaminated by the debtors in order to identity known creditors); *see also Mission Towers v. W.R. Grace*, 2007 WL 4333817, at*8, Civil Action No. 07-287 (D. Del. Dec. 6, 2007) (finding that, where debtors had sold asbestos-containing

products, debtors were not required to conduct searches for buildings where the debtors' asbestos-containing products might have been installed in order to identify known creditors).

36.     The Debtors have conducted a thorough, careful search of their books and records to identify all reasonably ascertainable Known Asbestos Claimants and Employees and Contractors.  The Bar Date Package will be mailed via first class mail to (a) all Known Asbestos Claimants, (b) such Known Asbestos Claimants' counsel with respect to such Asbestos Claims, and (c) all identified Employees and Contractors at the best mailing addresses available to the Debtors, thereby providing actual notice of the Asbestos Bar Date to these parties.

**B.     The Notice Plan is Reasonably Calculated to Provide Notice to Unknown Asbestos Claimants, Including Holders of Unmanifested Asbestos Claims.**

37.     The Notice Plan is also reasonably calculated to inform Unknown Asbestos Claimants, including holders of unmanifested Asbestos Claims, of the Asbestos Bar Date, and therefore satisfies the requirements of due process.   "It is well established that, in providing notice to unknown creditors, constructive notice of the bar claims date by publication satisfies the requirements of due process."  *Chemetron*, 72 F.3d at 348. "For unknown claimants, . . . notice by publication in national newspapers is sufficient to satisfy the requirements of due process, particularly if it is supplemented by notice in local papers."  *Wright v. Corning*, 679 F.3d 101, 107-08 (3d Cir. 2012) (finding that a bar date notice that was "published twice in The New York Times, The Wall Street Journal, and USA Today, among other publications," was "sufficient as to most unknown claimants."); *see also Chemetron*, 72 F.3d at 438-49 ("Publication in national newspapers is regularly deemed sufficient notice to unknown creditors, especially where supplemented, as here, with notice in papers of general circulation in locations where the debtor is conducting business.").

16

38.    In class action cases, it is widely accepted that a projected reach of approximately 70–95% provides effective notice.  *See* Federal Judicial Center, *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide* (2010).   In addition, notice programs approved in other asbestos-related bankruptcy cases have had reaches ranging between 80% and 90.1%, with average frequencies between 2.35 and 4.0.  *See*, *e.g.*, *In re Fed.-Mogul Global Inc.*, No. 01-10578-CSS, Affidavit of Wayne L. Pines, Ex. E to *Motion of Debtors and Debtors in Possession for an Order (A) Establishing Bar Date for Filing Proofs of Claim on Account Asbestos-Related Damage to Property Located in the United States and Canada; (B) Approving Proposed Proof of Claim Form for such Asbestos-Related Property Damage Claims; and (C) Approving Scope and Manner of Notice of Bar Date for Asbestos-Related Property Damage Claims*, ECF No. 1682 (Bankr. D. Del. May 7, 2002) (describing bar date notice plan with reach of 80% and 86% for respective target audiences and respective frequencies of 2.36 and 2.68) (approved by order at ECF No. 1867); *In re W.R. Grace & Co.*, No. 01-01139-JJF, *Revised Bar Date Notice Plan, Proof of Claim Forms and Related Materials*, ECF No. 1926-1 (Bankr. D. Del. April 12, 2002) (indicating national bar date notice plan with reach of 90.1% for primary audience and 83.1% for secondary audience, with respective frequencies of 4.0 and 3.3 and Canadian notice plan with reach of 80.3%, with an average frequency of 1.9) (approved by order at ECF No. 1963); *see also In re USG Corp.*, No. 01-2094 (Bankr. D. Del. Apr. 5, 2006), *Affidavit of Katherine Kinsella in Support of Motion of Debtors for an Order Approving (A) Notice of Disclosure Statement Hearing, (B) Contents of Plan Solicitation Packages, (C) Procedures for the Distribution of Solicitation Packages and the Solicitation and Tabulation of Votes to Accept or Reject Proposed Joint Plan of Reorganization and (D) Certain Related Relief*, ECF No. 10807 (indicating that notice plan submitted in the plan context had a reach of

17

73.3% of target audience, with an average frequency of 2.1) (approved by order at ECF No. 10847).

39.    The Debtors and their advisors have carefully designed the Media Plan component of the Notice Plan to provide notice to Unknown Asbestos Claimants.  The Media Plan uses a variety of media, including widespread dissemination of the Publication Notice, the Banner Advertisements, the Informational Release, and the labor union outreach effort, to reach a large number of potential Asbestos Claimants.  The Debtors anticipate that the Media Plan will cost approximately $2.1 million, not including professional or expert fees incurred.  The bold headlines and plain language of each form of notice are designed to alert potential Asbestos Claimants that their legal rights may be at stake, and invite direct response by providing the Asbestos Bar Date Website address and the Toll-Free Number to give readers easy accessibility to more information.

40.    Given the Media Plan's broad target audiences, the measured reach and frequency of the Media Plan is substantial, and is consistent with other court-approved notice programs in asbestos bankruptcy cases.  Without accounting for notice through publication in national newspapers and trade and local publications, the Informational Release, the labor union outreach program, and sponsored Internet search listings, *the Media Plan is estimated to reach 87.6% of Men 55+ with an average frequency of 3.1 times and 80.1% of Adults 18+ with an average frequency of 2.5 times*.  The non-measured components of the Media Plan will only increase the effectiveness of the notice provided in the Media Plan. Therefore, the Debtors submit that the Media Plan is reasonably calculated to provide notice to Unknown Asbestos Claimants.

41.    The Media Plan is also reasonably calculated to provide notice to holders of unmanifested Asbestos Claims. Each of the forms of notice in the Media Plan includes clear language specifically targeting holders of unmanifested Asbestos Claims.  For example, the

18

Publication Notice specifically indicates that "illness may occur decades after initial exposure to asbestos," and even if potential Asbestos Claimants are "not sick now," they "**must act <u>now</u> in order to preserve [their] rights**." Publication Notice (emphasis in original).   The Banner Advertisements notify potential Asbestos Claimants that their "legal rights could be at stake" if they or a family member "ever worked at certain power plants," or if they "develop an asbestos-related illness in the future."   Additionally, the Informational Release states that even if potential Asbestos Claimants have not been "diagnosed with any disease or experienced symptoms," they "**must respond now to preserve their rights**."   The clear language contained in each of these notices specifically alerts holders of unmanifested Asbestos Claims that their legal rights may be affected by the Asbestos Bar Date.

*[Remainder of page intentionally left blank.]*

WHEREFORE, the Debtors respectfully request that the Court enter the Order, and grant such other relief as it deems necessary and proper under the circumstances.

Wilmington, Delaware
Dated:  March 24, 2015

/s/ Tyler D. Semmelman
**RICHARDS, LAYTON & FINGER, P.A.**
Mark D. Collins (No. 2981)
Daniel J. DeFranceschi (No. 2732)
Jason M. Madron (No. 4431)
Tyler D. Semmelman (No. 5386)
920 North King Street
Wilmington, Delaware 19801
Telephone:      (302) 651-7700
Facsimile:      (302) 651-7701
Email:          collins@rlf.com
                defranceschi@rlf.com
                madron@rlf.com
                semmelman@rlf.com

-and-

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Edward O. Sassower, P.C. (admitted *pro hac vice*)
Stephen E. Hessler (admitted *pro hac vice*)
Brian E. Schartz (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022-4611
Telephone:      (212) 446-4800
Facsimile:      (212) 446-4900
Email:          edward.sassower@kirkland.com
                stephen.hessler@kirkland.com
                brian.schartz@kirkland.com

-and-

James H.M. Sprayregen, P.C. (admitted *pro hac vice*)
Marc Kieselstein, P.C. (admitted *pro hac vica*)
Chad J. Husnick (admitted *pro hac vice*)
Steven N. Serajeddini (admitted *pro hac vice*)
300 North LaSalle
Chicago, Illinois 60654
Telephone:      (312) 862-2000
Facsimile:      (312) 862-2200
Email:          james.sprayregen@kirkland.com
                marc.kieselstein@kirkland.com
                chad.husnick@kirkland.com
                steven.serajeddini@kirkland.com

Co-Counsel to the Debtors and Debtors in Possession