**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) | Case No. 14-10979 (CSS) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**DECLARATION OF CAMERON AZARI IN SUPPORT OF THE FORM AND MANNER OF NOTICE OF BAR DATE WITH RESPECT TO ASBESTOS PROOFS OF CLAIMS**

Pursuant to 28 U.S.C. § 1746, I, Cameron Azari, Esq., hereby declare as follows under penalty of perjury:

1.      I am a nationally recognized expert in the field of legal notice, and I have served as a media expert in dozens of federal and state cases.  I am the Director of Legal Noticing for Hilsoft Notifications, a firm that specializes in designing, developing, analyzing and implementing large-scale, un-biased, legal notification plans.  Hilsoft is a business unit of Epiq Systems Class Action and Claims Solutions.  I am over the age of 18 and duly authorized to execute this Declaration in support of the Notice Plan as described in the *Debtors' Supplemental Memorandum of Law With Respect to the Bar Date Motion and in Support of the (A) Form of and Manner for Filing Asbestos Proofs of Claim, and (B) Form and Manner of Notice of Bar*

---

[1]    The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810.  The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201.  Due to the large number of debtors in these chapter 11 cases, for which joint administration has been granted, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

*Date with Respect to Asbestos Proofs of Claims* (the "Memorandum").[2]  Except as otherwise

noted, I have personal knowledge of the matters set forth herein.

**I.     Experience Relevant to This Case.**

2.     Hilsoft has been involved with some of the most complex and significant notices

and notice programs in recent history.  Hilsoft Notifications has served as notice expert and has

been recognized and appointed by courts to design and provide notice in many of the largest and

most significant cases, including: *In re Payment Card Interchange Fee and Merchant Discount*

*Antitrust Litigation*, MDL No. 1720 (E.D.N.Y.) (over 19.8 million direct mail notices,

insertions in over 1,500 newspapers, consumer magazines, national business publications, trade

& specialty publications, and language & ethnic targeted publications, banner notices

generating more than 770 million adult impressions); *In Re: Oil Spill by the Oil Rig*

*"Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, MDL 2179 (E.D. La.) (dual

landmark settlement notice programs to separate "Economic and Property Damages" and

"Medical Benefits" settlement classes; notice effort included over 7,900 television spots, over

5,200 radio spots, and over 5,400 print insertions and reached over 95% of Gulf Coast residents);

*In Re: Checking Account Overdraft Litigation*, MDL 2036 (S.D. Fla.) (multiple bank settlements

in 2010-2015 involving direct mail and email to millions of class members and publication in

relevant local newspapers; representative banks include Fifth Third Bank, National City Bank,

Bank of Oklahoma, Webster Bank, Harris Bank, M & I Bank, Community Bank, PNC Bank,

Compass Bank, Commerce Bank, Citizens Bank, Great Western Bank, TD Bank, Bancorp,

Whitney Bank, and Associated Bank); and *In re Residential Schools Class Action Litigation*,

---

[2]     Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Memorandum.
The Notice Plan is attached hereto as **Exhibit A**.

(Canada) (notice program for the landmark settlement between the Canadian government and

Aboriginal former students; Phase IV of the notice program was implemented during 2012).

       3.       Courts have recognized Hilsoft's testimony as to which method of notification is

appropriate for a given case.  For example, courts have stated the following with respect to notice

plans designed and implemented by Hilsoft:

       a)       In *Marolda v. Symantec Corporation*, No. 08-cv-05701 (N.D. Cal.), Judge

Edward M. Chen stated on April 5, 2013:

> *Approximately 3.9 million notices were delivered by email to class members, but only a very small percentage objected or opted out . . .  The Court . . . concludes that notice of settlement to the class was adequate and satisfied all requirements of Federal Rule of Civil Procedure 23(e) and due process.  Class members received direct notice by email, and additional notice was given by publication in numerous widely circulated publications as well as in numerous targeted publications.  These were the best practicable means of informing class members of their rights and of the settlement's terms.*

       b)       In *In Re: Zurn Pex Plumbing Products Liability Litigation*, No. 0:08-cv-

01958 (D. Minn.), Judge Ann D. Montgomery stated on February 27, 2013:

> *The parties retained Hilsoft Notifications ("Hilsoft"), an experienced class-notice consultant, to design and carry out the notice plan. The form and content of the notices provided to the class were direct, understandable, and consistent with the "plain language" principles advanced by the Federal Judicial Center.  The notice plan's multi-faceted approach to providing notice to settlement class members whose identity is not known to the settling parties constitutes "the best notice [\*26] that is practicable under the circumstances" consistent with Rule 23(c)(2)(B).*

       c)       In *In Re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of*

*Mexico, on April 20, 2010* (Economic and Property Damages Settlement), MDL No. 2179 (E.D.

La.), Judge Carl J. Barbier stated on December 21, 2012:

> *The Court finds that the Class Notice and Class Notice Plan satisfied and continue to satisfy the applicable requirements of Federal Rule of Civil Procedure 23(c)(2)(b) and 23(e), the Class Action Fairness Act (28 U.S.C.*

*§ 1711 et seq.), and the Due Process Clause of the United States Constitution (U.S. Const., amend. V), constituting the best notice that is practicable under the circumstances of this litigation.*

*The notice program surpassed the requirements of Due Process, Rule 23, and CAFA. Based on the factual elements of the Notice Program as detailed below, the Notice Program surpassed all of the requirements of Due Process, Rule 23, and CAFA.*

  d)  In *Schulte v. Fifth Third Bank*, No. 1:09-cv-6655 (N.D. Ill.), Judge Robert

M. Dow, Jr. stated on July 29, 2011:

> *The Court has reviewed the content of all of the various notices, as well as the manner in which Notice was disseminated, and concludes that the Notice given to the Class fully complied with Federal Rule of Civil Procedure 23, as it was the best notice practicable, satisfied all constitutional due process concerns, and provided the Court with jurisdiction over the absent Class Members.*

  e)  In *In re: Heartland Payment Systems, Inc. Customer Data Security Breach*

*Litigation,* MDL 09-2046 (S.D. Tex.), Judge Lee Rosenthal stated on March 2, 2012:

> *The notice that has been given clearly complies with Rule 23(e)(1)'s reasonableness requirement… Hilsoft Notifications analyzed the notice plan after its implementation and conservatively estimated that notice reached 81.4 percent of the class members. (Docket Entry No. 106, ¶ 32). Both the summary notice and the detailed notice provided the information reasonably necessary for the presumptive class members to determine whether to object to the proposed settlement. See Katrina Canal Breaches, 628 F.3d at 197. Both the summary notice and the detailed notice "were written in easy-to-understand plain English." In re Black Farmers Discrimination Litig., — F. Supp. 2d —, 2011 WL 5117058, at \*23 (D.D.C. 2011); accord AGGREGATE LITIGATION § 3.04(c).15 The notice provided "satisf[ies] the broad reasonableness standards imposed by due process" and Rule 23. Katrina Canal Breaches, 628 F.3d at 197 (internal quotation marks omitted).*

  4.  Numerous other court opinions and comments as to Hilsoft's testimony and opinions on the adequacy of our notice efforts are included in Hilsoft Notifications' curriculum vitae, which is attached to the Notice Plan as Attachment 1.

5.      In forming my expert opinions, I and my staff draw from our in-depth class action case experience, as well as our educational and related work experiences.  I am an active member of the Oregon State Bar, and I received my Bachelor of Science from Willamette University and my Juris Doctor from Northwestern School of Law at Lewis and Clark College.  I have served as the Director of Legal Notice for Hilsoft Notifications since 2008 and have overseen the detailed planning of virtually all of our court-approved notice programs since that time.  Prior to assuming my current role with Hilsoft Notifications, I served in a similar role as Director of Epiq Legal Noticing (previously called Huntington Legal Advertising).  Overall, I have fifteen years of experience in the design and implementation of legal notification and claims administration programs, having been personally involved in well over one hundred successful notice programs. I have been directly and personally responsible for designing the notice planning in this matter, including analyzing the individual notice options and the media audience data and determining the most effective mixture of media.

## II.      Overview of Notice Plan.

6.      The Debtors worked with Hilsoft to design the Notice Plan to provide notice of the Asbestos Bar Date to known and unknown holders of Asbestos Claims (both manifested and unmanifested).  In the process of designing the Notice Plan, the Debtors provided to Hilsoft relevant information, including information regarding the Debtors' corporate history, a summary of asbestos claims filed against the Debtors, the location of the Debtors' or Debtors' predecessors' power plants and business operations, the time period of the potential exposure to asbestos, and the occupation types most likely to have been exposed to asbestos-containing material.  In addition, Hilsoft relied upon its extensive experience in developing notice plans, including chapter 11 asbestos-related cases and non-bankruptcy class action cases.

7.     In my opinion, the Notice Plan is broad and multi-faceted.  The Notice Plan will provide fair and adequate notice to Known and Unknown Asbestos Claimants, including holders of unmanifested Asbestos Claims, and satisfies the requirements of due process.[3]  Below is a brief overview of the major components of the Notice Plan.

### A.    Direct Notice.

8.     Epiq will implement service of the Direct Notice component of the Notice Plan. The Bar Date Package will be mailed via first class mail to all Known Asbestos Claimants and their counsel, if known.  The Bar Date Package also will be mailed to identified Employees and Contractors.[4]   Prior to the mailing of the Bar Date Packages, the addresses of the Employees and Contractors will be checked against the National Change of Address database maintained by the United States Postal Service or updated through a third-party address search service.  Bar Date Packages that are returned as undeliverable will be remailed on an ongoing basis to any new address available through postal service information, or to better addresses that may be found after reasonable third-party service searches.  Additionally, a Bar Date Package will be mailed to all persons who request one.

### B.    The Media Plan.

9.     The Media Plan includes various forms of notice, utilizing consumer print publications, trade magazines, labor union publications, national newspapers, local daily newspapers, and Internet banner advertising, to reach both holders of manifested Asbestos

---

[3]   Due process requires "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their claims."  *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

[4]   See the *Declaration of James Katchadurian in Support of the Bar Date Motion and in Support of (A) the Form of and Manner for Filing Asbestos Proofs of Claim and (b) the Form and Manner of Notice of Bar Date with Respect to Asbestos Proofs of Claim*, filed herewith, for details on the process undertaken to identify such Employees and Contractors and their mailing addresses.

Claims and holders of unmanifested Asbestos Claims.  The combined measureable reach of the Media Plan, accounting for only the national publications and national digital media, is approximately 87.6% of Men 55+, an average of 3.1 times each, and approximately 80.1% of Adults 18+ in the United States, an average of 2.5 times each.  "Reach" refers to the estimated percentage of the unduplicated audience exposed to the notice.  "Frequency," in contrast, refers to how many times, on average, each member of the target audience had the opportunity to view the notice.

10.    Other components of the Media Plan are not included in the estimated reach and frequency calculation, including the individual notice, publication in trade and local newspaper publications, the Informational Release, the labor union outreach program, and sponsored Internet search listings.  Accordingly, the actual reach of the Media Plan is necessarily understated.  The presence of the non-measured elements will only increase the effectiveness of the notification effort.

### 1.    Target Audiences for the Media Plan.

11.    As further discussed in the Notice Plan, based on the history of asbestos personal injury claims in the United States, the Debtors' corporate history and that of their predecessors, and the characteristics of individuals most likely to have been exposed to asbestos-containing material, Hilsoft selected the population of men 55 years of age or older as the primary target audience of the Media Plan.

12.    Hilsoft also selected a secondary target audience of adults 18 years of age or older.  In addition to taking into account the above factors, this secondary target audience seeks to include all men and women who may have a claim against the Debtors based on the exposure of another person to asbestos.

### 2.    Dedicated Website and Toll-Free Number.

13.    Separate from the Debtors' chapter 11 website, a neutral, informational website with an easily remembered domain name will be established for potential Asbestos Claimants. The Direct Notice, the Proof of Claim Form, and the Publication Notice, as well as answers to frequently asked questions, will be available on the Asbestos Bar Date Website, along with other relevant documents and information.    The Asbestos Bar Date Website address (www.EFHAsbestosClaims.com) will be prominently displayed in all printed notice documents and other paid advertising.

14.    Additionally, a toll-free number has been established for potential Asbestos Claimants to call for more information.  By calling the Toll-Free Number, potential Asbestos Claimants can listen to answers to frequently asked questions and request a copy of the Bar Date Package.  During regular business hours, callers may also speak with a claims representative. The Toll-Free Number will be prominently displayed in all printed notice documents and other paid advertising.

### 3.    Publication Notice in Print Media.

15.    Hilsoft worked with the Debtors to develop a publication version of the Asbestos Bar Date notice that is written in a plain language style (the "Publication Notice") and is consistent with the Federal Judicial Center's "illustrative" forms of plain language notices (available at www.fjc.gov). The Publication Notice features a large headline that allows a reader to easily identify whether they may be affected.  The Publication Notice describes who may file a claim, the deadline to file a claim and the consequences of doing nothing.  The Publication Notice is written in plain, easily understandable language so that readers can comprehend the information effectively.  The Publication Notice also invites direct response by providing simple,

convenient mechanisms, including the Asbestos Bar Date Website address and the Toll-Free Number, to allow readers easy access to further information.

16.     The Publication Notice includes clear language specifically targeting holders of unmanifested Asbestos Claims.    Because the Publication Notice is targeted to workers, contractors and related family members who may have worked at a plant decades ago, the headline is broadly addressed: "If you or a family member ever worked at certain power plants, your legal rights could be at stake."  The large, bolded headline of the Publication Notice states that anyone who "develop[s] an asbestos-related illness in the future" may be affected.  The Publication Notice specifically indicates that "illness may occur decades after initial exposure to asbestos," and that even if potential Asbestos Claimants are "not sick now," they "**must act <u>now</u> in order to preserve [their] rights**." Publication Notice (emphasis in original).  Moreover, the Publication Notice directs readers to the Asbestos Bar Date Website to view a list of sites at which potential Asbestos Claimants may have been exposed to asbestos in the past, thereby simplifying the process by which such Asbestos Claimants with unmanifested Asbestos Claims may self-identify.  A list of key Debtor entities, including Ebasco Services, Inc., is prominently displayed via an inset box in the center of the Publication Notice.

17.     The Publication Notice will be published in a variety of print media having national and local circulation throughout the United States, specifically targeting men's publications and magazines aimed at older demographic segments due to the Media Plan's target audiences, including the following:

      a.      five nationwide consumer publications;

      b.      one hundred and ninety-two various local newspapers across a variety of states surrounding relevant plants and other facilities related to the Debtors or their predecessors;

      c.      three national newspapers;

         d.      nine trade publications; and

         e.      eleven union labor publications.

18.     Summaries of the print media in which the Publication Notice will be published, the distribution of the print media, and the number of times the Publication Notice will appear in each print media, are included in the Notice Plan.  The Publication Notice is included in Attachment 3 to the Notice Plan.

**4.      Internet Banner Advertising and Sponsored Search Listings.**

19.     The Media Plan includes an Internet component to further enhance its reach to unknown asbestos claimants.  The Internet notice component includes Banner Advertisements on high-traffic websites or advertising networks.  The Banner Advertisements will link directly to the Asbestos Bar Date Website, thereby allowing potential Asbestos Claimants easier access to relevant information and documents.  The Banner Advertisements use language from the Publication Notice headline, specifically targeting holders of manifested and unmanifested Asbestos Claims.  Potential Asbestos Claimants, including holders of unmanifested Asbestos Claims, are notified that their "legal rights could be at stake" if they or a family member "ever worked at certain power plants," or if they "have an asbestos-related illness today" or "develop an asbestos-related illness in the future."  A chart identifying the websites, the duration and size of the Banner Advertisement, and approximate nationwide Adults 18+ impressions, is included in the Notice Plan.  A copy of the proposed Banner Advertisement is included in Attachment 3 to the Notice Plan.

20.     The Internet component of the Media Plan also includes sponsored search listings linking directly to the Asbestos Bar Date Website from the Google, Yahoo!, and Bing search engines, triggered by an Internet user's entry of specified key search terms.  Specifically, when search engine visitors search common keyword combinations such as "Energy Future Holdings"

or "EFH" paired with "asbestos," "claim," or "bar date," the sponsored search listing will be displayed at the top of the page or in the upper right hand column, and will link directly to the Asbestos Bar Date Website.

### 5.    Informational Release.

21.    The Media Plan also seeks to reach unknown claimants through an informational release and a labor union outreach program.   A party-neutral, Court-approved informational release will be distributed to approximately 4,200 print and broadcast and 5,500 online press outlets throughout the United States for dissemination as a news story.   The Informational Release will include the address of the Asbestos Bar Date Website and the Toll-Free Number, as discussed herein.   The Informational Release also will include language specifically targeting holders of unmanifested Asbestos Claims.   For example, the Informational Release states that even if potential Asbestos Claimants have not "diagnosed with any disease or experienced symptoms," they "**must respond now to preserve their rights**" (emphasis in original).   The Informational Release further states that anyone who "in any way may have been exposed to asbestos" related to the Debtors or their predecessors "**must act <u>now</u> in order to preserve their rights**" (emphasis in original).   Although there is no guarantee that any news stories will result, the Informational Release may provide additional notice exposure.   A copy of the proposed Informational Release is included in Attachment 3 to the Notice Plan.

### 6.    Labor Union Outreach Effort.

22.    Hilsoft will work with the Debtors to identify unions that are known to represent current and former employees of the Debtors and the Debtors' predecessors who may have been exposed to asbestos.   The Informational Release and other relevant documents will be sent directly to these labor unions, and the labor unions will be asked to include information about the Asbestos Bar Date in communications with their members, including retirees.

## 7.    Timing and Cost of the Media Plan.

23.    The Media Plan will extend over an approximate seven-week period, beginning approximately 45 days after the entry of the order establishing the Asbestos Bar Date.    The proposed timeline for the various components of the Media Plan is included in the Notice Plan. The estimated cost of the Media Plan is approximately $2.1 million, which does not include expert and professional fees incurred.

*[Remainder of page intentionally left blank.]*

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my information and belief.

Dated: March 24, 2015

Cameron Azari, Esq.
Director of Legal Noticing
Hilsoft Notifications