**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| In re: | ) ) | Chapter 11 |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) ) ) | Case No. 14-10979 (CSS) |
| Debtors. | ) ) ) | (Jointly Administered) <br> **Re: D.I. 662, 2036 & 3422** |

**THIRD SUPPLEMENTAL DECLARATION OF ROBERT B. LITTLE IN
SUPPORT OF THE APPLICATION OF THE DEBTORS FOR AN ORDER
AUTHORIZING THE DEBTORS TO RETAIN AND EMPLOY GIBSON, DUNN
& CRUTCHER LLP AS SPECIAL COUNSEL FOR CERTAIN CORPORATE AND
LITIGATION MATTERS, EFFECTIVE *NUNC PRO TUNC* TO THE PETITION DATE**

I, Robert B. Little, declare and state as follows:

**BACKGROUND**

1. I am a Partner with Gibson, Dunn & Crutcher LLP ("Gibson Dunn"), which has a place of business at 2100 McKinney Avenue, Suite 1100, Dallas, TX 75201.

2. I submit this third supplemental declaration, pursuant to sections 327(a) and 330 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2014 and 2016 of the Federal Rules of Bankruptcy Procedure, and Rule 2014-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware, in further support of the *Application of Energy Future Holdings Corp., et al., for an Order*

---

[1] The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, for which joint administration has been granted, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

*Authorizing the Debtors to Retain and Employ Gibson, Dunn & Crutcher LLP as Special Counsel for Certain Corporate and Litigation Matters, Effective* Nunc Pro Tunc *to the Petition Date* [Docket No. 662] (the "Application").  Except as otherwise noted herein, I have personal knowledge of the matters set forth herein.

3. On May 29, 2014, the Debtors filed the Application.  In support of the Application, the Debtors filed the *Declaration of Robert B. Little in Support of the Application of the Debtors for an Order Authorizing the Debtors to Retain and Employ Gibson, Dunn & Crutcher LLP as Special Counsel for Certain Corporate and Litigation Matters, Effective* Nunc Pro Tunc *to the Petition Date* [Docket No. 662] (the "Little Declaration"), which was attached as Exhibit B to the Application.

4. On September 16, 2014, the Debtors filed the *First Supplemental Declaration of Robert B. Little in Support of the Application of the Debtors for an Order Authorizing the Debtors to Retain and Employ Gibson, Dunn & Crutcher LLP as Special Counsel for Certain Corporate and Litigation Matters, Effective* Nunc Pro Tunc *to the Petition Date* [Docket No. 2036].

5. The Court approved the Application by its *Order Authorizing the Debtors to Retain and Employ Gibson, Dunn & Crutcher LLP as Special Counsel for Certain Corporate and Litigation Matters, Effective* Nunc Pro Tunc *to the Petition Date* [Docket No. 2058] (the "Retention Order").

6. In the Little Declaration, I disclosed Gibson Dunn's billing rate in effect at that time for matters related to these chapter 11 cases.  I also disclosed that Gibson Dunn's billing rates are subject to periodic adjustments to reflect economic and other conditions.  Pursuant to

the Retention Order, Gibson Dunn must provide notice of changes to its billing rates during these chapter 11 cases.

7.      In accordance with the Retention Order, on February 3, 2015, the Debtors filed the *Second Supplemental Declaration of Robert B. Little in Support of the Application of the Debtors for an Order Authorizing the Debtors to Retain and Employ Gibson, Dunn & Crutcher LLP as Special Counsel for Certain Corporate and Litigation Matters, Effective* Nunc Pro Tunc *to the Petition Date* [Docket No. 3422] (the "Second Supplemental Little Declaration"), providing notice that Gibson Dunn's billing rates would increase effective as of February 17, 2015. No party filed an objection to the Second Supplemental Little Declaration.

8.      On March 9, 2015, Gibson Dunn received a letter from the Fee Committee requesting additional support from professionals relating to professionals' rate increases.

## **RATE INCREASE**

9.      It is a fundamental tenet of modern bankruptcy practice that "attorneys or other professionals whose retentions have been approved by the Bankruptcy Court are to be compensated based on market rates . . . ." *In re Drexel Burnham Lambert Group*, 133 B.R. 13, 15 (Bankr. S.D.N.Y. 1991). "In a reversal of the practice that had evolved under the former Bankruptcy Act . . . Congress directed Bankruptcy Courts to compensate lawyers at the market rate, reflected in rates generally accepted by the attorney's clients, and not impose lower or different rates or charges simply because it is a reorganization proceeding." *Id.* at 17 (emphasis added).[2]

---

[2] Numerous cases are in accord. *See, e.g.*, *Stroock & Stroock & Lavan v. Hillsborough Holdings Corp. (In re Hillsborough Holdings Corp.)*, 127 F.3d 1398, 1404 (11th Cir. 1997) (holding that the court should rely on the market in determining whether fees are
[Footnote continued on next page]

10. Throughout these cases, the amounts charged to the Debtors for the particular services rendered have been equal to or lower than the rates charged to other clients of Gibson Dunn for similar services. Indeed, if the firm's retention in these matters were not pursuant to the Bankruptcy Code, Gibson Dunn would have charged the Debtors, and expected to receive, on a current basis, an amount at least equal to the amounts requested in our fee applications for the professional services rendered.

11. During the last quarter of each year, Gibson Dunn reviews its rate structure for the following year. In setting these annual rates, Gibson Dunn, among other factors, evaluates the market and the firm's cost structure, including increases in operating costs. From an expense standpoint, some of the firm's expenses are locked in over a multi-year basis. Examples of this are long term office leases. Other expenses vary from year to year, such as associate attorney costs, the cost of infrastructure including staff, and the cost of insurance which continues to increase dramatically. Consistent with our philosophy, over the last fifteen years, Gibson Dunn's average annual rate increases have been less than its average annual increases in operating expenses.

12. As a result of our approach, we often lag behind the market when it comes to rate increases. For example, Gibson Dunn's average effective rate increase from 2014 to 2015 was 3.6%. According to a survey conducted by Wells Fargo in their Comparative Analytic Tool

---

[Footnote continued from previous page]
appropriate); *In re Busy Beaver Bldg. Ctrs., Inc.*, 19 F.3d 833, 848-56 (3d Cir. 1994) (noting that the purpose of section 330 of the Bankruptcy Code is to compensate professionals at the market rate for services); *Novelly v. Palans (In re Apex Oil Co.)*, 960 F.2d 728, 733 (8th Cir. 1992) (same); In *re Nucorp Energy, Inc.*, 764 F.2d 655, 658 (9th Cir. 1985) (same); *Gazes v. Roswick (In re Roswick)*, 231 B.R. 843, 860 (Bankr. S.D.N.Y. 1999) (same).

2015 Outlook, the average estimated rate increase for AmLaw 100 firms is 4.53% and the National average is estimated to be 5.08%.

13. Attached hereto as Schedule A is a list of the 2015 rates for the primary timekeepers that are expected to bill time to the Debtors' cases. Schedule A separately identifies the amount of the proposed increase attributable to each attorney's increased level of experience and the amount of the proposed increase attributable to increases in Gibson Dunn's base rates for attorneys with similar levels of experience. Each of these rates was and will be consistent with, or lower than, the rates charged to other clients of the firm and to the rates charged by comparably skilled practitioners in the relevant market.

14. The rates listed on Schedule A were negotiated between Gibson Dunn and the Debtors, and the Debtors have consented to the rate increase described herein.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed on March 25, 2015.

/s/ Robert B. Little
Robert B. Little