**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

---

|  |  |  |
|---|---|---|
| | ) | |
| In re: | ) | |
| | ) | Chapter 11 |
| ENERGY FUTURE HOLDINGS CORP., *et al.*[1] | ) | |
| | ) | Case No. 14-10979 (CSS) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | |

---

**SECOND INTERIM FEE APPLICATION OF FTI CONSULTING, INC.,
FINANCIAL ADVISOR TO THE OFFICIAL COMMITTEE OF UNSECURED
CREDITORS, FOR ALLOWANCE OF COMPENSATION FOR SERVICES
RENDERED AND REIMBURSEMENT OF EXPENSES INCURRED FOR THE PERIOD
SEPTEMBER 1, 2014 THROUGH DECEMBER 31, 2014**

| | |
|---|---|
| Name of Applicant: | FTI Consulting, Inc. |
| Authorized to provide professional services to: | The Official Committee of Unsecured Creditors |
| Date of Retention: | October 20, 2014 (Effective May 19, 2014) |
| Period for which compensation and reimbursement are sought: | September 1, 2014 through December 31, 2014 |
| Amount of compensation sought as actual, reasonable, and necessary: | $3,208,864.75 |
| Amount of expense reimbursement sought as actual, reasonable, and necessary: | $206,515.72 |

This is a(n): _____ Monthly __X__ Interim _____ Final Application

---

[1] The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, for which joint administration has been granted on an interim basis, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

## SUMMARY OF MONTHLY APPLICATIONS
## FILED DURING THE INTERIM PERIOD

| | | REQUESTED | | APPROVED | | HOLDBACK REQUESTED 20% |
|---|---|---|---|---|---|---|
| DATE FILED | PERIOD COVERED | FEES | EXPENSES | FEES 80% | EXPENSES | FEES 20% |
| 11/21/2014 | 09/01/2014 - 09/30/2014 | $1,035,681.25 | $69,363.10 | $828,545.00 | $69,363.10 | $207,136.25 |
| 11/25/2014 | 10/01/2014 - 10/31/2014 | 951,319.25 | 91,999.64 | 761,055.40 | 91,999.64 | 190,263.85 |
| 2/9/2015 | 11/01/2014 - 11/30/2014 | 695,958.50 | 42,475.47 | 556,766.80 | 42,475.47 | 139,191.70 |
| 2/9/2015 | 12/01/2014 - 12/31/2014 | 584,002.75 | 2,856.47 | 467,202.20 | 2,856.47 | 116,800.55 |
| | Voluntary Reduction[1] | (58,097.00) | (178.96) | | | (58,275.96) |
| **Total** | | **$3,208,864.75** | **$206,515.72** | **$2,613,569.40** | **$206,694.68** | **$595,116.39** |

(1)    This Fee Application reflects voluntary reductions of $58,097.00 in fees and $178.96 in expenses.  Subsequent to the filing of FTI's monthly fee statements for September
through December 2014, FTI has voluntarily agreed to reduce fees for (i) $23,097.00 for fees charged by timekeepers (13 in total) who were deemed to have tangential
involvement in these cases, and (ii) $35,000.00 for estimated fees incurred to review time entries in connection with billing activities.  In addition, expenses were reduced in
order to comply with lodging rate caps that have been instituted by the Fee Committee.

## SUMMARY OF FEES INCURRED BY PROFESSIONAL
## INTERIM PERIOD BY TIMEKEEPER

| Professional | Position | Billing Rate | Hours | Fees |
|---|---|---|---|---|
| Cavicchi, Joseph | Senior Managing Director | $685 | 63.6 | $43,566.00 |
| Conly, Albert S | Senior Managing Director | 925 | 15.4 | 14,245.00 |
| Davido, Scott | Senior Managing Director | 800 | 107.8 | 86,240.00 |
| Diaz, Matthew | Senior Managing Director | 925 | 315.9 | 292,207.50 |
| Eisenband, Michael | Senior Managing Director | 925 | 69.0 | 63,825.00 |
| Grant, Kenneth | Senior Managing Director | 650 | 111.0 | 72,150.00 |
| Joffe, Steven | Senior Managing Director | 925 | 137.8 | 127,465.00 |
| Jones, Scott | Senior Managing Director | 950 | 103.9 | 98,705.00 |
| Scruton, Andrew | Senior Managing Director | 925 | 188.4 | 174,270.00 |
| Simms, Steven | Senior Managing Director | 925 | 106.8 | 98,790.00 |
| Smith, Ellen | Senior Managing Director | 675 | 21.0 | 14,175.00 |
| Tranen, Jeffrey | Senior Managing Director | 725 | 268.7 | 194,807.50 |
| Cordasco, Michael | Managing Director | 765 | 309.7 | 236,920.50 |
| Greenberg, Mark | Managing Director | 765 | 239.4 | 183,141.00 |
| Park, Ji Yon | Managing Director | 735 | 225.7 | 165,889.50 |
| Wang, Patrick | Managing Director | 650 | 26.8 | 17,420.00 |
| Arsenault, Ronald | Senior Director | 515 | 436.4 | 224,746.00 |
| Celli, Nicholas | Senior Consultant | 480 | 300.6 | 144,288.00 |
| Eisler, Marshall | Senior Consultant | 480 | 448.7 | 215,376.00 |
| Goad, David | Senior Consultant | 550 | 46.1 | 25,355.00 |
| Johnson, Tessa | Senior Consultant | 395 | 30.2 | 11,929.00 |
| Khaimov, Zhanna | Senior Consultant | 480 | 60.6 | 29,088.00 |
| Rauch, Adam | Senior Consultant | 550 | 496.5 | 273,075.00 |
| Budd, Eliza | Consultant | 335 | 113.1 | 37,888.50 |

| | | | | |
|---|---|---|---|---|
| Eimer, Sean | Consultant | 385 | 487.6 | 187,726.00 |
| Friedrich, Steven | Consultant | 335 | 315.5 | 105,692.50 |
| Mond, Allison | Consultant | 325 | 265.2 | 86,190.00 |
| Hellmund-Mora, Marili | Associate | 250 | 76.7 | 19,175.00 |
| Moore, Teresa | Associate | 225 | 49.8 | 11,205.00 |
| **Subtotal** | | | **5,481.2** | **$3,267,878.50** |
| Less: 50% discount for non-working travel time | | | | (24,013.75) |
| Less: Voluntary Reduction[1] | | | | (35,000.00) |
| **Grand Total** | | | **5,481.2** | **$3,208,864.75** |

(1)    The voluntary reduction of $35,000 represents estimated fees incurred to review time entries in connection with billing activities. In addition, FTI has voluntarily agreed to a reduction of $23,097.00 for fees charged by timekeepers (13 in total) who were deemed to have tangential involvement in these cases (these 13 timekeepers are not included in the Summary of Fees Schedule above).  The total voluntary fee reduction for this Fee Application is $58,097.

## SUMMARY OF FEES INCURRED DURING THE
## INTERIM PERIOD BY PROJECT CATEGORY

| BY TASK CODE | | **Hours** | **Fees** |
|---|---|---|---|
| 1 | Current Operating Results & Events | 169.0 | $80,456.00 |
| 4 | Trade Vendor Issues | 0.7 | 583.50 |
| 6 | Asset Sales | 36.1 | 28,906.50 |
| 9 | Analysis of Employee Compensation Programs | 193.2 | 108,611.00 |
| 11 | Prepare for and Attendance at Court Hearings | 22.1 | 20,346.50 |
| 12 | Analysis of SOFAs & SOALs | 25.5 | 16,710.50 |
| 13 | Analysis of Other Miscellaneous Motions | 127.6 | 79,351.00 |
| 14 | Analysis of Claims/Liabilities Subject to Compromise | 18.0 | 10,995.00 |
| 15 | Analysis of Interco. Claims, Related Party Transactions | 668.0 | 393,381.00 |
| 16 | POR & DS - Analysis, Negotiation and Formulation | 30.8 | 28,490.00 |
| 18.A | Investigations of Select Legacy Transactions- Historical Transactions | 595.1 | 324,163.50 |
| 18.B | Investigations of Select Legacy Transactions- LBO Solvency | 64.0 | 37,614.50 |
| 21 | General Meetings with Committee & Committee Counsel | 109.6 | 96,466.00 |
| 22 | Meetings with Other Parties | 5.9 | 5,045.00 |
| 23 | Firm Retention and Fee Application | 19.8 | 18,315.00 |
| 24 | Preparation of Fee Application | 456.6 | 191,305.00 |
| 25 | Non-Working Travel Time | 67.2 | 48,027.50 |
| 28.A | First Lien Investigation- Legacy Transactions | 79.7 | 59,881.00 |
| 28.B | First Lien Investigation- Historical Solvency | 172.4 | 112,469.00 |
| 29 | Business Plan- Diligence of the Debtors' Long Range Plan | 487.8 | 269,909.50 |
| 30 | Business Plan- Understand and Assess ERCOT Market | 55.4 | 39,589.00 |
| 31 | Business Plan- Develop a Model for ERCOT Market | 237.9 | 97,921.50 |
| 32 | Business Plan- Determine and Sensitize Key EBITDA Drivers | 68.2 | 36,834.50 |
| 33 | Business Plan- Natural Gas / Coal Pricing | 169.9 | 110,940.50 |
| 34 | Business Plan- Environmental | 6.0 | 4,394.00 |
| 35 | Business Plan- New Entry Pricing | 456.8 | 265,298.50 |
| 36 | Business Plan- Communication with Debtors / Other Professionals | 120.3 | 92,972.00 |
| 37 | Analysis of Pre-Petition Tax Payments | 437.6 | 266,572.50 |
| 38 | Analysis of Tax Impact on Restructuring Scenarios | 580.0 | 422,329.00 |
| **Total** | | **5,481.2** | **$3,267,878.50** |
| | Less: 50% discount for non-working travel time | | (24,013.75) |
| | Less: Voluntary Reduction[1] | | (35,000.00) |
| **Grand Total** | | **5,481.2** | **$3,208,864.75** |

(1)    The voluntary reduction of $35,000 represents estimated fees incurred to review time entries in connection with billing activities. In addition, FTI has voluntarily agreed to

a reduction of $23,097.00 for fees charged by timekeepers (13 in total) who were deemed to have tangential involvement in these cases (these 13 timekeepers are not included in the Summary of Fees Schedule above). The total voluntary fee reduction for this Fee Application is $58,097.

## SUMMARY OF EXPENSES INCURRED
## DURING THE INTERIM PERIOD

| CATEGORY | TOTAL |
|---|---|
| Airfare | $10,518.31 |
| Business Meals | 3,243.48 |
| Ground Transportation | 3,323.14 |
| Lodging | 2,929.78 |
| Other | 186,501.01 |
| **Total** | **$206,515.72** |

This second interim fee application for compensation and reimbursement of expenses (the "Fee Application") is filed by FTI Consulting, Inc. (together with its wholly owned subsidiaries, agents, independent contractors and employees, "FTI") requesting payment for services rendered and reimbursement of costs expended as financial advisor for the Official Committee of Unsecured Creditors (the "Committee") of Energy Future Competitive Holdings Company LLC ("EFCH"), EFCH's direct subsidiary, Texas Competitive Electric Holdings Company LLC ("TCEH") and their direct and indirect subsidiaries, and EFH Corporate Services Company (collectively with EFCH and TCEH, the "TCEH Debtors")[2] for the period of September 1, 2014 through December 31, 2014 (the "Application Period"). In support of this Fee Application, FTI respectfully states as follows:

## Introduction

1.    FTI provided services to the Committee in accordance with the instructions and directions of the Committee. FTI is compensated on an hourly fee basis, plus reimbursement of actual and necessary expenses incurred by FTI.

2.    FTI submits this Fee Application pursuant to sections 330 and 331 of the Bankruptcy Code, Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), Order Establishing Procedures for Interim Compensation and Reimbursement of

---

[2] Although EFH Corporate Services is not a subsidiary of TCEH, for ease of reference EFH Corporate Services is included in the definition "TCEH Debtors".

Expenses of Professionals (the "<u>Administrative Order</u>") [Docket No. 220], Del. Bankr. LR 2016-2 and the Retention Order.  By this Fee Application, FTI seeks interim allowance and payment of 100% of compensation for actual and necessary professional services rendered in the amount of $3,208,864.75, and seeks the allowance and payment of 100% of its actual and necessary expenses in the amount of $206,515.72, in accordance with the terms of the Administrative Order.

3.      FTI has filed and served the monthly fee statements for the periods of (i) September 1, 2014 through September 30, 2014, (ii) October 1, 2014 through October 31, 2014, (iii) November 1, 2014 through November 30, 2014, and (iv) December 1, 2014 through December 31, 2014.

### Jurisdiction

4.      The Court has jurisdiction over this matter under 28 U.S.C. § 157 and 1334.  This is a core proceeding within the meaning of 28 U.S.C. §§ 157(b)(2).  Venue of this chapter 11 case in this district is proper under 28 U.S.C. §§ 1408 and 1409.

### Background

5.      On April 29, 2014 (the "<u>Petition Date</u>"), the TCEH Debtors filed voluntary petitions with this Court under chapter 11 of the Bankruptcy Code. The TCEH Debtors are operating their business as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No request for the appointment of a trustee or examiner has been made in these chapter 11 cases.

6.      On May 12, 2014 (the "<u>Formation Meeting</u>"), the Office of the United States Trustee appointed the Committee pursuant to section 1102 of the Bankruptcy Code.  The Committee consists of the following seven members:

> (a) Pension Benefit Guaranty Corporation;
>
> (b) HCL America, Inc.;
>
> (c) The Bank of New York Mellon;

(d) Law Debenture Trust Company of New York

(e) Holt Texas LTD, d/b/a Holt Cat

(f) ADA Carbon Solution (Red River); and

(e) Wilmington Savings Fund Society.

On May 14, 2014, the Committee selected Morrison & Foerster LLP ("Committee Counsel") and Polsinelli PC to serve as Committee counsel. On May 16, 2014, the Committee selected Lazard Frères & Co. LLC ("Lazard") to serve as its investment banker, and on May 19, 2014, the Committee selected FTI as its financial advisor.

7.    On July 25, 2014 FTI filed its retention application. On October 20, 2014 the Court entered an order approving the retention of FTI as financial advisor to the Committee effective as of May 19, 2014 (the "Retention Order") [Docket No. 2507].

## Summary of Services Rendered

8.    The Debtors' chapter 11 cases have presented numerous large and complex issues that had to be addressed in order to preserve and maximize value for unsecured creditors. The Retention Order authorized FTI to render financial advisory services to the Official Committee of Unsecured Creditors. FTI has taken steps to avoid duplication of efforts among the Committee professionals. The Committee professionals actively coordinate their efforts on weekly calls to discuss work streams, avoid duplication, and leverage each other's work.

9.    FTI has taken reasonable steps to avoid duplication of services by FTI's professionals. During the course of the Second Interim Period, there have been a few instances where more than one FTI professional attended a hearing or conference. These multiple attendees were necessary to accomplish the significant amount of work which needed to be performed in a compressed amount of time involving complex facts and transactions and the participation and involvement.

10.    The total number of hours expended by FTI professionals and paraprofessionals in performing professional services for the Committee during the Application Period was 5,481.2

hours.  Pursuant to the Retention Order, FTI is entitled to monthly compensation for its services provided to the Committee at its current hourly rates, plus reimbursement of necessary out of pocket expenses.

11.     In addition to the 50% discount for non-working travel time, this Fee Application includes further voluntary fee reductions of $58,097.00.  Subsequent to the filing of FTI's monthly fee statements for September through December 2014, FTI has voluntarily agreed to reduce fees for (i) $23,097.00 for fees charged by timekeepers (13 in total) who were deemed to have tangential involvement in these cases, and (ii) $35,000.00 for estimated fees incurred to review time entries in connection with billing activities.

12.     Services rendered by each professional and paraprofessional during the Application Period, and a summary of the time incurred by project code followed by detailed time entries, is attached hereto as **Exhibit A**, **Exhibit B**, and **Exhibit C**.

13.     The following paragraph(s) describe the primary services rendered by FTI, but are not limited to the categories set forth below.

*Code 1 – Current Operating Results & Events (169.0 hours)*

Time in the Current Operating Results and Events task code primarily includes the analysis of the Debtors' current financial results.  During the Application Period, FTI reviewed and analyzed financial and operating information distributed by the Debtors, their advisors and their affiliates related to historical and current performance.  In addition to analyzing materials provided to the Committee directly by the TCEH Debtors, FTI reviewed quarterly and annual public filings, relevant industry information (e.g., natural gas prices, power prices, other commodity prices), news articles, and docket updates in order to assess potential external factors that may impact the Company's operations.

During the Application Period, FTI analyzed budget-to-actual operating reports for each segment (e.g., Luminant, TXU Energy, and Oncor) as well as the consolidated parent companies

(e.g., EFH, TCEH, and EFIH).   FTI conducted due diligence on the Debtors' second quarter, third quarter, and October operating results.   In addition to analyzing the Debtors' budget-to-actual reports, FTI developed diligence question lists and held calls with the Company's management to assess the drivers of key variances to the budget and determined their impact on the overall performance of the business.   In connection with the aforementioned analyses, FTI prepared several comprehensive written reports that were presented to the Committee over the course of the Application Period, including operating results reports for the second quarter, July, August, the third quarter, and October.   FTI's contribution to this work stream was important to help ensure the Committee was kept abreast of external issues that impact the Debtors' business, as well as the Company's performance versus its business plan.   FTI also examined the Debtors' court-filed monthly operating reports to evaluate key disclosures and business trends.   FTI also reviewed the Debtors' liquidity budget to assess adequacy of the Debtors' forecasts, including analysis of the Debtors' budget-to-actual results associated with the DIP forecast.

### Code 9 – Analysis of Employee Compensation Programs (193.2 hours)

During the Application Period, FTI reviewed and addressed issues relating to the Debtors' proposed incentive programs for insiders and non-insiders. These programs contemplated total payments between $78 million and $137 million.  FTI's efforts were crucial to help ensure that the incentive plans and the operating targets proposed by the Debtors were aligned with the creditors' interests and that the proposed programs were reasonable. Time included in this task code includes FTI's assessment of the United States Trustee's objection to the Debtors' proposed 2014 compensation programs and related discussions with the Committee and Committee Counsel. FTI also analyzed the TCEH Debtors' proposed 2015 compensation programs, including (i) review of the Debtors' presentation on 2015 compensation programs, (ii) analysis of the incentive targets, (iii) evaluation of the reasonableness of the programs against the

bonus programs offered in other bankruptcy cases, (iv) analysis of 2015 compensation structure and levels compared to the prior year, and (v) preparation of a written report to the Committee summarizing our observations and recommendations. During the Application period, the FTI team evaluating the Debtors' employee compensation programs was supplemented to include individuals from the business plan review team.  These individuals, familiar with the Debtors' operations, analyzed the financial targets and benchmarked these targets to prior years to assess achievability.   FTI professionals participated in numerous calls with the Debtors and the Debtors' advisors to discuss diligence materials and participated in discussions with Committee professionals to develop our recommendations. As a result of our analysis of the 2015 incentive programs, FTI identified and negotiated certain modifications to the SPC Supplemental Incentive Award Program, which were ultimately approved by the Court.

### Code 13 – Analysis of Other Miscellaneous Motions (127.6 hours)

Time in this code includes analysis of various motions filed by the Debtors including, among others, (i) contract assumption and rejection motions, (ii) trading and hedging limit modification motions, (iii) amendments to the Comanche Peak joint venture agreement motion, (iv) request to approve a set-off stipulation with Alcoa motion, (v) capital investment notification motion, (vi) ADA Carbon settlement motion, and certain other motions.  FTI analyzed these motions to assess the financial impact of the relief requested within each, and provided observations and recommendations to Committee Counsel in order to supplement Committee Counsel's legal review of the motions.  Diligence on these various motions was conducted by FTI and included (i) analysis of potential cure and claim amounts associated with proposed contract assumptions and rejections, (ii) analysis of the historical performance of the Debtors' hedging and trading operations as well as the go-forward reporting of hedging and trading results to the Committee, (iii) examination of the economic impact of the Comanche Peak joint venture

amendment and Alcoa set-off stipulation, (iv) evaluation of the Debtors' proposal for capital investment notification, and (v) evaluation of the reasonableness of the ADA Carbon settlement.  During the Application Period, FTI participated in several calls with the Debtors and their advisors to review presentations prepared by the Debtors and discuss the timeline and impact of each motion.  FTI's findings and observations were either incorporated in Committee Counsel's summary and recommendation memorandums on each motion to the Committee, or were presented in FTI prepared discussion materials that were presented to the Committee.

### Code 15 – Analysis of Intercompany Claims & Related Party Transactions (668.0 hours)

Avoidance actions may be a primary source of recovery to the TCEH unsecured creditors in these cases. To that end, the Committee, and FTI, have incurred time to identify and analyze potential intercompany and other legacy claims.

Time in this code includes the continued diligence and analysis of various intercompany transactions, their impact on the TCEH Debtors, and the potential causes of action that the TCEH Debtors may have as a result of these transactions.  During the Application Period, FTI's analysis of intercompany activities covered the Demand Notes, shared service cost allocations and underlying allocation methodologies, money pool activities, letters of credit, and other related party transactions.  Time in this code also includes the analysis of potential claims that other Debtors may have against the TCEH Debtors as a result of various historical intercompany transactions.

With respect to shared service cost allocations, FTI continued to refine and modify the shared services sensitivity model, which incorporated historical shared services allocations from 2008 through the Petition Date for over 130 cost categories, for the purpose of analyzing the effects of alternative cost allocation methodologies.  FTI participated in numerous discussions with Committee Counsel to discuss the model assumptions, scenarios, and resulting potential

claims.  FTI also reconciled the Debtors' accounting entries with the monthly summaries of the shared service costs allocated among the entities.

FTI also examined and analyzed volumes of discovery documents in coordination with Committee Counsel, relating to intercompany transactions produced by the Debtors under the Legacy Discovery Protocol. FTI identified key documents and summarized the main points into discussion materials for Committee Counsel to assist in the development of potential claims. These discussion materials were continually updated as new information was received from the Debtors and additional inquiries were raised by Committee Counsel, and were used to assist the discussions between Committee Counsel, Lazard, and FTI regarding potential causes of action arising out of intercompany activities.  FTI also participated in numerous calls with the Debtors and their advisors to address any follow-up questions on the materials reviewed as well as the status of information flow on the outstanding requests.  FTI maintained a tracking document, which was periodically updated and provided to A&M, in order to facilitate an efficient information flow relating to intercompany review.

***Code 18.A – Investigations of Select Legacy Transactions: Historical Transactions (595.1 hours)***

Time in this code primarily includes the investigation and analysis of non-intercompany legacy transactions pertaining to the TCEH Debtors, which included, among others, (i) the Debtors' Liability Management Program ("LMP"), (ii) payments made by the TCEH Debtors in connection with the transition bonds (e.g., payments under the tax and interest rate make-whole agreements and payments made under the settlement agreement), (iii) payments made to the Sponsors subsequent to their 2007 purchase of the Company (the "LBO"), (iv) funds flow associated with the LBO including repayment of pre-LBO debt and related fees paid to the Sponsors, and (v) standing and statute of limitation issues.  FTI continued to develop written

discussion materials on each of the issues being investigated and updated these materials as new information was received from the Debtors and as Committee Counsel raised additional issues for further diligence.  These discussion materials summarized what we learned by each topic and highlighted key observations and issues for analysis.  FTI provided these materials to Committee Counsel to assist them in developing and evaluating claims, preparing legal memos, and to identify further investigation areas. In coordination with Committee Counsel, FTI continued to review the discovery data site, identified and analyzed pertinent financial documents and assisted Committee Counsel in examining and responding to the Debtors' responses to the Committee's initial discovery request under the Legacy Discovery Protocol.  As part of the discovery process, FTI analyzed volumes of discovery and other diligence documents pertaining to the aforementioned investigation topics.  During the Application period, the FTI team analyzing select historical legacy transactions was supplemented to include additional team members. These individuals were added as the core team was stretched to capacity and the work being performed was time sensitive.

### *Code 18.B – Investigations of Select Legacy Transactions: LBO Solvency (64.0 hours)*

Time in this code primarily includes further analysis and refinement of the LBO transaction solvency analysis, which was initiated during the Application Period.  The team members performing the analysis in this code are consistent with the team performing due diligence on the Debtors' business plan, primarily because of their familiarity with the Debtors' operations.  The analysis performed was critical in determining whether the TCEH Debtors were insolvent as of the LBO date.  Time incurred during the Application period included detailed diligence on the Debtors' business plans that were available at the time of the LBO, as well as benchmarking analysis regarding the key operating and valuation assumptions that were  utilized

by the Debtors, as well as other potential assumptions that were reasonable at the time of the LBO.  Summaries of FTI's analysis and observations were provided to Committee counsel.

### Code 21 – General Meetings with Committee & Committee Counsel (109.6 hours)

FTI prepared for and participated in numerous conference calls with the Committee and Committee Counsel to provide updates and advice regarding key events and issues. These calls and meetings included weekly scheduled Committee calls, weekly scheduled Committee professional calls as well as additional meetings and calls that were scheduled on an as-needed basis to address specific case issues. The topics covered by these calls and meetings included key case issues and strategy, operating results, industry updates, the Insider Compensation Motion, updates on Court hearings, expert witness interviews, tax issues, and other key topics.  In preparation for these calls, FTI prepared numerous presentations outlining key issues to be discussed and proposed recommendations for the benefit of the Committee.

### Code 28.A – First Lien Investigation: Legacy Transactions (79.7 hours)

In connection with the Committee's investigation of claims against the TCEH first lien lenders, FTI reviewed and analyzed various reports prepared by the Debtors' advisors over the historical period since the Debtors were taken private in October 2007.  In addition, FTI assisted Counsel in the identification of potential unencumbered assets and the review of collateral accounts. Findings from this analysis were discussed with the Committee and Committee Counsel and were critical in the development of the Committee's draft complaint against the TCEH first lien lenders.  FTI also incurred time reviewing and providing comments to Committee Counsel's draft of the aforementioned complaint.  Additional time was spent developing discovery requests relating to the first lien investigation, as well as analyzing documents serving as responses to such requests.

***Code 28.B – First Lien Investigation: Historical Solvency (172.4 hours)***

In connection with the Committee's investigation of claims against the TCEH first lien lenders, analyzed the TCEH Debtors' solvency at various points in time since the LBO to assess certain potential claims against the TCEH first lien lenders.  This analysis was prepared primarily by individuals analyzing the Debtors' business plans, based on their skillsets and due to their familiarity with the Debtors' operations.  Given the complexity of this analysis, a number of timekeepers were needed to complete this work. Findings from this analysis were discussed with the Committee and Committee Counsel and were critical in the development of the Committee's draft complaint against the TCEH first lien lenders.  FTI also incurred time reviewing and providing comments to Committee Counsel's draft of the aforementioned complaint.

***Code 29 – Business Plan: Diligence of the Debtors' Long Range Plan (487.8 hours)***

Understanding and evaluating each of the Debtors' business plans was time sensitive and essential for the Committee to develop its own independent view of the value of the TCEH Debtors.  Time in this task code includes general analysis and due diligence related to the Debtors' business plans and preparation of an alternative free cash flow model.  Given this sub-code captures the collective team's efforts in putting together an alternative free cash flow model, a number of timekeepers were necessary.

During the Application Period, FTI summarized key issues and observations from the Debtors' business plans and provided written and oral updates to the Committee on a periodic basis.  FTI analyzed the Debtors' updated business plan for each segment to determine key variances compared to prior versions of the business plan and held calls with the Debtors' management to assess the drivers of such changes.  Time in this code also includes preparing

detailed information requests and questions that were designed to understand, on a line item basis, the key assumptions and drivers of the Debtors' long range plan, as well as the mechanics that were utilized to develop the business plan models. FTI continued to refine an alternative business plan free cash flow model based on additional research and diligence responses received from the Debtors and the Debtors' professionals. FTI participated in calls and meetings with the Debtors and the Debtors' professionals to better understand the assumptions incorporated in the business plan, as well as the mechanics of the Debtors' financial models.

During the Application Period, FTI also participated in site visits of the Comanche Peak and Big Brown plants to view certain of the Debtors' operations and assess the processes in place at these plants. Observations and analyses from these visits were summarized for discussion with the Committee and Committee's advisors in the context of the Debtors' go-forward business plan.

Given the complexity of the Debtors' business plan, assistance from various FTI matter experts was necessary.

### *Code 30 – Business Plan: Understand and Assess ERCOT Market (55.4 hours)*

Time in this task code includes analysis and evaluation of key market mechanisms and inputs influencing the operations of the Luminant fleet. Tasks include researching ERCOT's Capacity, Demand, and Reserves Reports ("CDR Report"), which are updated every six months. Continuous monitoring and analysis of the competitive environment within the ERCOT market was critical during the Application Period as changes to the economic factors have significant influence on the Debtors' operating decisions and valuation. Other publications such as materials provided by the Public Utility Commission of Texas ("PUCT") were analyzed to assess the ERCOT market. Information gleaned from this research and analysis was applied to an independent market model described further below.

### *Code 31 – Business Plan: Develop a Model for ERCOT Market (237.9 hours)*

Time in this task code includes the development, refinement, and testing of a financial model designed to analyze various aspects of the Debtors' business plans based on changes in market assumptions.  Tasks include: (i) developing an independent view of the ERCOT supply stack going forward, including power plant additions and retirements, (ii) assessing ERCOT load forecasts and the resulting reserve margin expectations through the time horizon, and (iii) assessing the impact of recent changes in the ERCOT market design on Luminant's production and prices.  During the Application Period, FTI conducted research aimed at refining the model's key inputs, which include unit operating parameters such as seasonal capacities, heat rates, ramp rates, emission rates, environmental controls, and maintenance schedules.  Time in this code also includes the development and refinement of an independent locational marginal price model, designed to determine the price paid per megawatt hour of electricity.

### *Code 32 – Business Plan: Determine and Sensitize Key EBITDA Drivers (68.2 hours)*

Time in this task code includes performing an assessment of the Debtors' assumptions for purposes of identifying the key assumptions that may be considered for sensitivity analysis in the development of the Committee's alternative business plan.  During the Application Period, FTI benchmarked various aspects of Luminant's operations and cost projections against industry peers to assess whether there is any opportunity to improve operations on a go-forward basis.  Such benchmarking analyses were also considered in the development of cost assumptions for the Committee's alternative business plan model.  FTI also researched recent market events, including emerging potential headwinds for the business plan to consider the resulting impact on the Luminant fleet's operations and the modeling of the Committee's alternative business plan.

### Code 33 – Business Plan: Natural Gas / Coal Pricing (169.9 hours)

Time in this code includes assessing natural gas, coal, and other commodity curve assumptions in the Debtors' long range business plan and developing an independent view on such inputs. During the Application Period, FTI spent time understanding current and future coal and transportation costs in order to accurately project gross margins in the Committee's alternative business plan during the projection period. FTI also researched the supply and demand economics in connection with commodity prices and compared commodity price forecasts in various industry reports with the commodity price assumptions driving the Debtors' business plan. These costs represent significant value drivers in the Debtors' business plan and are essential to the development of an accurate, independent forecast of free cash flow to determine valuation.

### Code 35 – Business Plan: New Entry Pricing (456.8 hours)

Time in this task code includes the analysis of key drivers determining outer year power prices in the ERCOT market and the development of an independent view on such drivers. A key driver of outer year power prices is the determination of the economics that would be required to develop new investment in the ERCOT market (e.g. development of new power plants). Which unit is built, how much it costs, what return its owners require, and how long of a period an owner would expect capital recovery to occur are all factors that have an impact on market prices, and as a result Luminant's revenue potential. In this task code, FTI incurred time reviewing the Debtors methodology and assumptions, creating its own set of assumptions based on experience and available data, and preparing various sensitivities to determine the potential impact on projected power prices. During this Application Period, this team was supplemented to include individuals with industry specific expertise to evaluate market assumptions, as well as

financial markets expertise to evaluate returns that new plant owners would require in the development of new units.

### Code 36 – Communication with Debtors / Other Professionals (120.3 hours)

Time in this task code includes general meetings with the Debtors and other case professionals in order to coordinate and facilitate the Committee's independent analysis of the Debtors' business plan. During the Application Period, FTI incurred time participating in diligence meetings (both in person meetings with groups of professionals from various constituents, as well as one-off meetings and/or conference calls to discuss specific diligence items). FTI also incurred time in connection with coordinating diligence efforts with other Committee advisors (particularly Lazard and DNV) to avoid duplication of efforts and ensure that all diligence requests of the Debtors were consolidated and comprehensive. Because this code captures time communicating with the Debtors and other professionals, most of the business plan timekeepers have time charged to this sub-code.

### Code 37 – Analysis of Pre-Petition Tax Payments (437.6 hours)

Identifying potential claims relating to intercompany tax payments will likely be a key source of recoveries for the TCEH unsecured creditors. As such, FTI incurred time in this task code to analyze intercompany tax obligations of, and payments among, EFH Corporation and various subsidiaries, pursuant to several tax sharing agreements. In order to evaluate the tax obligations, FTI reviewed the tax sharing agreements from a financial perspective, historical federal and state tax returns, and related documentation provided by the Debtors. In order to evaluate the tax payments, FTI reviewed SEC filings and related schedules provided by the Debtors. FTI independently calculated historical tax obligations, compared those results to the Debtors' calculations, and identified and attempted to reconcile significant variances on an entity

level basis. FTI frequently shared its findings and diligence observations with Committee counsel.

### Code 38 – Analysis of Tax Impact on Restructuring Scenarios (580.0 hours)

Time in this task code includes identifying and analyzing tax considerations of various potential tax-free and taxable restructuring transactions to evaluate the benefits and costs of each transaction in order to identify optimal tax structures for the benefit of the Committee. Evaluating restructuring alternatives is a critical element of this engagement as they impact recoveries of all secured and unsecured creditors. FTI analyzed the tax basis of assets, net operating losses, depreciation recapture, and cancellation of debt income under multiple potential structures. FTI also computed the claims that each of the restructuring alternatives would give rise to under the Competitive TSA. Furthermore, FTI assisted Committee counsel in evaluating the Debtors' Omnibus Tax Memorandum filed with the Court. FTI prepared numerous presentations to Committee Counsel outlining the aforementioned considerations and their financial impact to our client.

### Actual and Necessary Costs and Expenses Incurred

14.    Reimbursement of expenses in the amount of $206,515.72 is sought herein. A categorized summary of the actual and necessary costs and expenses incurred by FTI during the Application Period, and an itemization of each expense within each category, is attached as **Exhibit D** and **Exhibit E**. FTI reserves the right to request, in subsequent fee applications, reimbursement of any additional expenses incurred during the Application Period, as such expenses may not have been captured in FTI's billing system on the date of filing this Fee Application.

**Statement from FTI Consulting, Inc.**

15.     At all relevant times, FTI has been a disinterested person, as that term is defined

at § 101(14) of the Bankruptcy Code, as modified by § 1103(b) of the Bankruptcy Code, and has

not represented or held any interest adverse to any interest of the Committee.

16.     FTI has received no payment and no promises for payment from any source for

services rendered or to be rendered in any capacity whatsoever in connection with the matters

covered by this Application.  No agreement or understanding exists between FTI and any other

entity (other than shareholders or employees of FTI), except with respect to Cambridge Energy

Solutions ("CES")[3], for the sharing of compensation received or to be received for services

rendered in or in connection with these cases.

17.     All services for which FTI requests compensation were performed at the direction

or instruction of the Committee and for or on behalf of the Committee.  The professional services

and related expenses for which FTI requests quarterly allowance of compensation and

reimbursement of expenses were rendered and incurred in connection with this case in the

discharge of FTI's professional responsibilities as Financial Advisors to the Committee in the

Debtors' Chapter 11 cases.

18.     FTI respectfully submit that, in accordance with the factors enumerated at § 330

of the Bankruptcy Code, the services provided were necessary and beneficial to the Committee,

the Debtors' estates, creditors and other parties in interest and as such the compensation being

sought for its services is fair and reasonable.

**Notice**

19.     As required by the Administrative Order, a copy of this Fee Application has been

served upon: (a) Energy Future Holdings Corp.; (b) co-counsel for the Debtors, Kirkland & Ellis

---

[3] As disclosed in paragraph 6 of the Retention Order and the *Supplemental Declaration of Steven Simms in Support of Application for the Official Committee of Unsecured Creditors of Energy Future Holdings Corp., et al, for Entry of an Order Under Section 328(a) and 1103(a) of the Bankruptcy Code Authorizing the Employment and Retention of FTI Consulting, Inc. as Financial Advisor Effective May 19, 2014.*

LLP; (c) co-counsel to the Debtors', Richards Layton & Finger, P.A.; (d) the Office of the United States Trustee for the District of Delaware; (e) counsel for the agent of the EFIH First Lien DIP Financing Facility, Shearman & Sterling LLP; (f) counsel for the TCEH First Lien DIP Facility, Milbank, Tweed, Hadley & McCloy LLP; (g) counsel to the Committee of Unsecured Creditors, Morrison & Foerster LLP; and (h) counsel to the Fee Committee, Godfrey & Kahn, S.C.  Notice of this Fee Application was served upon all parties requesting notice pursuant to Bankruptcy Rule 2002.

20.    WHEREFORE, FTI respectfully requests that the Court (i) approve and allow on an interim basis the compensation requested and reimbursement of actual and necessary costs and expenses; and (ii) approve the payment of the 100% of allowed fees and expenses and (iii) provide such further relief as may be just and proper.[4]

Dated: March 25, 2015

FTI CONSULTING, INC

By: */s/ Matthew Diaz*
Matthew Diaz
Three Times Square
New York, NY 10036
Telephone: 212-499-3611
E-mail: matthew.diaz@fticonsulting.com

---

[4] Paragraph 2(b) of the Administrative Order requires Professionals (as defined in the Administrative Order) to allocate any fees and expenses to the applicable Debtors for whose direct benefit such fees and expenses were incurred (such fees, the "Direct Benefit Fees").  FTI has incurred fees and expenses for the collective benefit of the TCEH Debtors. As a result, FTI has not attempted to break out the specific Direct Benefit Fees performed for the benefit of the TCEH Debtors since all of its fees and expenses would be allocated to the TCEH Debtors regardless under the Administrative Order.  Thus, all of FTI's fees and expenses identified in this Monthly Fee Statement should be paid by the TCEH Debtors.

## VERIFICATION PURSUANT TO DEL. BANKR.LR. 2016-2(f) AND 28 U.S.C. §1746(2)

I, Matthew Diaz, verify as follows:

1.      I am a Senior Managing Director with FTI Consulting, Inc. (together with its wholly owned subsidiaries, agents, independent contractors and employees, "FTI").  FTI has rendered professional services to the Official Committee of Unsecured Creditors (the "Committee") in this Chapter 11 case.

2.      I have read the foregoing application of FTI for compensation and reimbursement of expenses (the "Fee Application").  To the best of my knowledge, information and belief formed upon the basis of my participation in this case, as well as after reasonable inquiry, the facts set forth in the foregoing Fee Application are true and correct and materially comply with the applicable orders, rules, guidelines and requirements as set forth by the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, Del.Bankr.LR 2016-2, and the Executive Office for the United States Trustee.

Executed on: March 25, 2015          FTI CONSULTING, INC


By: */s/ Matthew Diaz*
   Matthew Diaz
   Three Times Square
   New York, NY 10036
   Telephone: 212-499-3611
   E-mail: matthew.diaz@fticonsulting.com


   *Financial Advisors to the Official*
   *Committee of Unsecured Creditors*