IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | ) Chapter 11 |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) Case No. 14-10979 (CSS) |
| Debtors. | ) (Jointly Administered) |

**AMENDED AND SUPERSEDING MOTION
OF ENERGY FUTURE HOLDINGS CORP., *ET AL.*,
FOR ENTRY OF AN ORDER AUTHORIZING CERTAIN
DEBTORS TO ENTER INTO A LONG-TERM POWER
PURCHASE AGREEMENT AND GRANTING RELATED RELIEF**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") file this amended and superseding motion (this "Amended PPA Motion")[2] for entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Order") authorizing Luminant Energy Company LLC ("Luminant") to enter into a long-term power purchase agreement, attached hereto as **Exhibit B**, with ███████████████████████████████████

---

[1] The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, for which joint administration has been granted, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

[2] This Amended PPA Motion amends and supersedes the *Motion of Energy Future Holdings Corp., et al., for Entry of an Order Authorizing Certain Debtors to Enter into a Long-Term Power Purchase Agreement and Granting Related Relief* [D.I. 3709] (the "Original PPA Motion"). Contemporaneously with the filing of this Amended PPA Motion, the Debtors have filed the *Amended and Superseding Motion for Energy Future Holdings, et al., to File Redacted Portions of the Amended and Superseding Power Purchase Agreement Motion Under Seal* (the "Amended Sealing Motion"). Both this Amended PPA Motion and the Amended Sealing Motion narrow the relief that the Debtors initially requested in the Original PPA Motion and the *Motion for Entry of an Order Authorizing Energy Future Holdings Corp., et al., to File the Power Purchase Agreement Under Seal* [D.I. 3708] (the "Original Sealing Motion") filed along with the Original PPA Motion on February 27, 2015, including, eliminating the request that the Court seal the entirety of the Original PPA Motion and all attachments thereto pursuant to Original Sealing Motion. The objection deadline for both the Original PPA Motion and the Original Sealing Motion has passed and no party has filed a formal objection to either Motion. That being said, subsequent to filing the Original PPA Motion and the Original Sealing Motion, counsel to the U.S. Trustee communicated informal objections to the Original Sealing Motion. The Debtors understand that the issues have been resolved based on the filing of this Amended PPA Motion and related documents. Upon filing this Amended PPA Motion and the Amended Sealing Motion, the Debtors will file a notice of withdrawal of the Original PPA Motion and the Original Sealing Motion.

███████████████████████, dated February 20, 2015 (the "PPA"), and granting related relief. In support of this Amended PPA Motion, the Debtors submit the *Amended and Superseding Declaration of Mac McFarland, CEO of Luminant Energy Company LLC, in Support of the Amended and Superseding Motion of Energy Future Holdings Corp., et al., for Entry of an Order Authorizing Certain Debtors to Enter into a Long-Term Power Purchase Agreement and Granting Related Relief,* attached hereto as **Exhibit C** (the "McFarland Declaration"), filed contemporaneously herewith. In further support of this Amended PPA Motion, the Debtors respectfully state as follows.

### Jurisdiction and Venue

1. The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Debtors consent pursuant to rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Bankruptcy Rules") to the entry of a final order by the Court in connection with this Amended PPA Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The bases for the relief requested in this Amended PPA Motion are section 363 of title 11 of the United States Code (the "Bankruptcy Code") and rule 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

**Relief Requested**

4.     By this Amended PPA Motion, the Debtors seek entry of the Order authorizing Luminant to enter into the PPA and perform any obligations and exercise any rights thereunder.

**Background**

5.     On April 29, 2014 (the "Petition Date"), each of the Debtors filed a voluntary petition with the Court under chapter 11 of the Bankruptcy Code. The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. The Court has entered a final order for joint administration of these chapter 11 cases [D.I. 849]. The Court has not appointed a trustee. The U.S. Trustee formed an official committee of unsecured creditors of Energy Future Competitive Holdings Company LLC ("EFCH"), Texas Competitive Electric Holdings Company LLC ("TCEH"), the direct and indirect Debtor subsidiaries of EFCH and TCEH, and EFH Corporate Services Company (the "TCEH Creditors' Committee") on May 13, 2014 [D.I. 420] and an official committee of unsecured creditors of Energy Future Holdings Corp. ("EFH Corp."), Energy Future Intermediate Holding Company, LLC ("EFIH"), EFIH Finance, Inc., and EECI, Inc. (the "EFH Creditors' Committee") on October 27, 2014 [D.I. 2570]. Further information regarding the Debtors' business operations and capital structure is set forth in the declaration of Paul Keglevic in support of the Debtors' first day motions [D.I. 98] (the "First Day Declaration").

**I.     Renewable Energy in ERCOT.**

6.     Renewable energy is poised for rapid growth within the electricity market overseen by the Electric Reliability Council of Texas ("ERCOT"), which covers the majority of Texas. ████████████████████████████████████████████
████████████████████████████████████████████

3

██████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████ The Debtors can benefit from access to renewable energy in a number of ways, including from diversification of energy sources and reduced power costs during peak demand windows, the availability of government incentives tied to the development of renewable energy generating facilities, and the ability to meet renewable energy statutory requirements and commitments to customers.

7. *First*, ████████████████████████████████

██████████████████████████████████████████████

█ ████████████████████████████████████████████

████████████████████████████████████ Peak demand results in spikes in the price of wholesale electricity that providers must purchase in the market from power generators. The price of electricity is set by the marginal low-cost producer, which, in ERCOT, is generally the operator of a combined cycle natural gas-fired turbine. ████

██████████████████████████████████████████████
██████████████████████████████████████████████
██████████████████████████████████████████████
██████████████████████████████████████████████
██████████████████████████████████████████████
██████████████████████████████████████████████
██████████████████████████████████████████████

██████████████████████████████████████████████████████████
████████████████████████████████████[3]

8. **_Second_,** ████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
██████████████████████████████████████[4] ██████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
██████████

9. **_Third_,** ███████████████████████████████████████
████████████████████████████ Certain regulations require the Debtors to obtain a specified amount of their supply of power from renewable energy sources or otherwise to purchase RECs in the market from "retailers" or brokers. Additionally, the Debtors' provide power from renewable energy sources. ████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████

---

[3] In addition to its power generation operations, Luminant purchases electricity from third-parties, including electricity generated from renewable resources. First Day Declaration ¶ 38.

[4] ████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████

II.  The ████████████ and the PPA.

   10. ███████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

██████████████████████████

   11. ███████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████

   12. ███████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

13. ██████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
███████████████████████████████████████

14. █████████████████████████████████████████
████████████████████████ After evaluating several proposals from competitors, the Debtors determined that the ███████ PPA offered the best combination in terms of price, reliability, flexibility, and other key factors. In the weeks preceding the filing of the Original PPA Motion, the Debtors contacted the financial and legal advisors to several of the key TCEH creditor groups, including the ad hoc group of TCEH first lien lenders, the ad hoc committee of TCEH unsecured noteholders, the indenture trustee for the TCEH second lien notes, and the TCEH Creditors' Committee, and informed these advisors of the Debtors' intention ████████████ ██████████████████████████████. Additionally, the Debtors shared diligence materials and a draft of the PPA with these TCEH creditors' advisors. On February 20, 2015, in compliance with the Debtors' risk management policies, Luminant management submitted the PPA for approval by the boards of managers of EFH Corp. and TCEH, each of which duly approved the PPA by resolution.

7

15. The following is a brief summary of certain key provisions of the PPA, attached hereto as **Exhibit B**.[5]

- **Parties**. Luminant and ███████████████████.

- ███████████████████████████████████████████████████████
  ███████████████████████████████████████████████████████
  ███████████████████████████████████████████████████████

- **Contract Capacity**. ██████████ Contract Capacity will be ██████████ ██████████. Luminant has an option to increase the capacity of the PPA up to a total of ██████████████████████████████.

- **Term**. The later of ████████████████ or the 10th anniversary of 10 years from the ███████████████████████████████████████████████████████
  ███████████████████████████████████████████████████ Luminant may, at its discretion, no later than ████████████, elect to extend the term of the PPA for an additional ██████████ on the same terms in increments of ██████████.

- **Contract Price**. ███████████████████████████████████ The price includes the value of all RECs, ██████████████████████. The Debtors currently expect that the notional cost of the PPA (without discounting to the present value and without accounting for the value to the Debtors in entering into the PPA) will be approximately $140 million to $200 million. See Exhibit G.

- ███████████████████████████████████████████████████████
  ███████████████████████████████████████████████████████
  ███████████████████████████████████████████████████████

- **Delivery**. ██████████ shall be responsible for all actions and related costs required to deliver the ██████████████████████████████ to Luminant at the Point of Delivery. Luminant shall arrange and be responsible for transmission service at and from the Point of Delivery and shall schedule or

---

[5] The summary of the PPA set forth herein is provided solely for the convenience of the Court and parties in interest. To the extent there is any conflict between the descriptions set forth herein and the PPA, the PPA shall govern. References in this section to a specific section or exhibit refer to that section in, or exhibit to, the PPA. Capitalized terms not otherwise defined herein have the meanings set forth in the PPA.

arrange for scheduling services with ▇ to receive the product at the Point of Delivery. See Section 5.1.

- **Terms of Payment**. Commencing on the ▇, Luminant shall pay ▇ at the Point of Delivery on or before the 20th day after the end of the month to which an invoice relates.

- **True Up**. In January of each year, the parties will true up ▇ in pricing adjustments as set forth in Sections 7.1(A)(i) and 7.1(A)(ii) respectively.

- **Curtailed Energy**. Luminant will credit and/or pay ▇ for curtailed generation. See Section 7.2.

- **Security**. ▇

- **Environmental Attributes**. Luminant will own all Environmental Attributes associated with ▇, including renewable energy credits. Environmental Attributes excludes any local, state, or federal investment or production tax credit, depreciation deductions, or other tax credits ▇

- **Conditions Precedent**. The PPA shall not become effective, and either party may terminate the PPA, if, among other things, the Bankruptcy Court has not entered the Order approving the PPA by March 31, 2015. ▇

- **Events of Default and Remedies**. Standard events of default by and remedies of ▇ and Luminant for this type of transaction, as set forth in Section 11.

9

- **Representations and Warranties**. Standard representations and warranties for this type of transaction, as set forth in Section 14.

- **Indemnification**. Standard indemnifications for this type of transaction, as set forth in Section 16.

- **Governing Law**. The PPA shall be governed by the laws of the State of Texas.

- **Confidentiality**. The parties agree not to disclose to a third party any non-public information of the other party, including the terms of the PPA. See Section 18.15.

III.     **The Hedging and Trading Motion.**

16.     As discussed, the term of the proposed PPA is 10 years ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, with a renewal option of an additional ▮▮▮▮▮▮ ▮▮▮▮. The Debtors consider the purchase of electricity pursuant to power purchase agreements, including that derived from renewable energy sources, to be soundly within the ordinary course of their business operations. Notwithstanding this fact, the proposed PPA provides for the purchase and delivery of electricity, and thus is likely a "Non-Proprietary Hedging and Trading Arrangement," as defined in the *Motion of Energy Future Holdings Corp., et al., Clarifying Certain Relief Granted in the Non-Proprietary Trading Order and Seeking Entry of an Order Authorizing Certain Debtors to Enter Into Non-Proprietary Hedging and Trading Arrangements with a Tenor Beyond December 31, 2015 and Subject to Hedge and Tenor Limitations Consistent with Historical Practice* [D.I. 2710] (the "Non-Proprietary Hedging and Trading Motion").[6] As such, the PPA is likely subject to the Approved Limits (as defined in the Non-Proprietary Hedging and Trading Motion), including the tenor limitation of 27-months.[7] Accordingly, the Debtors are seeking authority to enter into the PPA.

---

[6]   The Court granted the relief requested in the Non-Proprietary Hedging and Trading Motion on November 20, 2015 [D.I. 2832].

[7]   "The Approved Limits operate on a 27-month cycle and provide hedge limits and targets applicable to certain periods within the cycle, adjusted forward each calendar quarter." Non-Proprietary Hedging and Trading

### Basis for Relief

**I.    The PPA is in the Best Interests of the Debtors' Estates.**

17.    Section 363(b)(1) of the Bankruptcy Code provides, in relevant part, that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). The use of property of the estate, other than in the ordinary course of business, is authorized if the debtor demonstrates a "sound business purpose" for such uses. *See, e.g., Meyers v. Martin (In re Martin)*, 91 F.3d 389, 395 (3d. Cir. 1996) ("[U]nder normal circumstances the [bankruptcy] court would defer to the trustee's [or debtor in possession's] judgment so long as there is a legitimate business justification."); *Computer Sales Int'l, Inc. v. Fed. Mogul Global (In re Fed. Mogul Global, Inc.)*, 293 B.R. 124, 126 (D. Del. 2003) ("[I]n the Third Circuit, a court should approve a debtor's use of assets outside the ordinary course of business if the debtor can demonstrate a sound business justification for the proposed transaction."); *Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1071 (2d Cir. 1983) (". . . a judge determining a 363(b) application expressly find[s] from the evidenced presented before him . . . a good business reason to grant such an application").

18.    The Debtors believe that the decision to enter into the long-term PPA is well within their sound business judgment. The PPA will enable the Debtors to ███████████ ████████████████████████████████████████ ███████████. The PPA also provides the Debtors with substantial optionality to extend the contract or increase ██████████████ output depending upon, among other things, the Debtors' internal analyses and expectations of electricity prices and the cost of traditional and

---

Motion, ¶ 18. Luminant's commodity risk management and trading activities hedge the volume and price risk associated with Luminant's generation fleet. First Day Declaration, ¶ 40.

alternative energy sources. ███████████████████████████████████
███████████████████████████████ The Debtors will own all environmental attributes ████████████████████████, including RECs that the Debtors must retire to satisfy regulatory requirements and commitments to customers. Accordingly, the PPA is in the best interests of the Debtors' estates and should be approved.

19.  Courts in this jurisdiction and others have authorized Debtors to enter into agreements to purchase assets, goods, and services that may be outside of the ordinary course of business. *See, e.g., In re Energy Future Holdings Corp.*, No. 14-10979 (CSS) (Bankr. D. Del. Sept. 15, 2014) (establishing procedures to make certain capital investments and purchases related to power generation and wholesale and retail electricity operations that may arguably be outside the ordinary course of business); *In re Coach Am Grp. Holdings Corp.*, No. 12-10010 (KG) (Bankr. D. Del. March 15, 2012) (approving a purchase agreement for certain real property); *In re Broadstripe, LLC*, No. 09-10006 (CSS) (Bankr. D. Del. Apr. 23, 2009) (same); *In re USG Corp.*, No. 01-2094 (JKF) (Bank. D. Del. Apr. 13, 2006) (approving asset purchase agreement for paper mill assets); *In re Terrestar Networks Inc.*, No. 10-15466 (SHL) (Bankr. S.D.N.Y. Mar. 23, 2011) (approving purchase agreement for network equipment); *In re Allied Holdings, Inc.*, No. 05-12515 (Bank. N.D. Ga. May 11, 2007) (authorizing purchase agreement for rigs and equipment).

### Waiver of Bankruptcy Rule 6004(h)

20.  To implement the foregoing successfully, the Debtors seek a waiver of the 14-day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h).

### Notice

21. The Debtors shall provide notice of this Amended PPA Motion on the date hereof via overnight mail to: (a) the U.S. Trustee; (b) counsel to the TCEH Creditors' Committee; (c) counsel to the EFH Creditors' Committee; (d) Wilmington Trust, N.A., in its capacity as administrative agent under the TCEH first lien credit agreement and collateral agent under the TCEH intercreditor agreements and counsel thereto; (e) Bank of New York Mellon Trust Company, N.A., in its capacity as indenture trustee under: (i) the TCEH unsecured pollution control revenue bonds; and (ii) the EFCH 2037 Notes due 2037, and counsel thereto; (f) American Stock Transfer & Trust Company, LLC, in its capacity as indenture trustee under: (i) the 9.75% EFH senior unsecured notes due 2019; (ii) the 10.0% EFH senior unsecured notes due 2020; (iii) the 10.875% EFH LBO senior unsecured notes due 2017; (iv) the 11.25%/12.0% EFH LBO toggle notes due 2017; (v) the 5.55% EFH legacy notes (series P) due 2014; (vi) the 6.50% EFH legacy notes (series Q) due 2024; and (vii) the 6.55% EFH legacy notes (series R) due 2034, and counsel thereto; (g) Computershare Trust Company, N.A. and Computershare Trust Company of Canada, in their capacities as indenture trustee under: (i) the 11.0% EFIH senior secured second lien notes due 2021; and (ii) the 11.75% EFIH senior secured second lien notes due 2022, and counsel thereto; (h) UMB Bank, N.A. in its capacity as indenture trustee under: (i) the 9.75% EFIH senior unsecured notes due 2019; and (ii) the 11.25%/12.25% EFIH senior toggle notes due 2018, and counsel thereto; (i) Delaware Trust Company of Delaware in its capacity as indenture trustee under: (i) the 6.875% EFIH senior secured notes due 2017; (ii) the 10.0% EFIH senior secured notes due 2020; and (iii), the 11.50% TCEH senior secured notes due 2020, and counsel thereto; (j) Law Debenture Trust Company of New York in its capacity as indenture trustee under: (i) the 10.25% TCEH senior unsecured notes due 2015; and

(ii) the 10.50%/11.25% TCEH senior toggle notes due 2016, and counsel thereto; (k) Wilmington Savings Fund Society, FSB in its capacity as indenture trustee under the 15.0% TCEH senior secured second lien notes due 2021, and counsel thereto; (l) counsel to certain holders of claims against the Debtors regarding each of the foregoing described in clauses (c) through (j); (m) the agent for the TCEH debtor-in-possession financing facility and counsel thereto; (n) the agent for the EFIH debtor-in-possession financing facility and counsel thereto; (o) counsel to certain holders of equity in Texas Energy Future Holdings Limited Partnership; (p) counsel to the Ad Hoc Committee of TCEH Unsecured Noteholders; (q) counsel to the TCEH Second Lien Indenture Trustee; (r) Oncor Electric Delivery Holdings Company LLC and counsel thereto; (s) Oncor Electric Delivery Company LLC and counsel thereto; (t) the Securities and Exchange Commission; (u) the Internal Revenue Service; (v) the Office of the United States Attorney for the District of Delaware; (w) the Office of the Texas Attorney General on behalf of the Public Utility Commission of Texas; (x) counsel to the Electric Reliability Council of Texas; (y) those parties that have requested notice pursuant to Bankruptcy Rule 2002; and (z) ███████████████. The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

### Prior Request

22.     The request for the relief sought in this Amended PPA Motion has been made in the Original PPA Motion. The Court has not ruled upon the relief sought in the Original PPA Motion. The Debtors will file a notice of withdrawal with respect to the Original PPA Motion, providing that the Court may only rule upon the relief sought in this Amended PPA Motion.

[*Remainder of page intentionally left blank.*]

WHEREFORE, the Debtors respectfully request that the Court enter the Order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested in this Amended PPA Motion and granting such other and further relief as is appropriate under the circumstances.

Dated: March 27, 2015
Wilmington, Delaware

*/s/ Tyler D. Semmelman*
**RICHARDS, LAYTON & FINGER, P.A.**
Mark D. Collins (No. 2981)
Daniel J. DeFranceschi (No. 2732)
Jason M. Madron (No. 4431)
Tyler D. Semmelman (No. 5386)
920 North King Street
Wilmington, Delaware 19801
Telephone:   (302) 651-7700
Facsimile:   (302) 651-7701
Email:       collins@rlf.com
             defranceschi@rlf.com
             madron@rlf.com
             semmelman@rlf.com

-and-

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Edward O. Sassower, P.C. (admitted *pro hac vice*)
Stephen E. Hessler (admitted *pro hac vice*)
Brian E. Schartz (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022-4611
Telephone:   (212) 446-4800
Facsimile:   (212) 446-4900
Email:       edward.sassower@kirkland.com
             stephen.hessler@kirkland.com
             brian.schartz@kirkland.com

-and-

James H.M. Sprayregen, P.C. (admitted *pro hac vice*)
Marc Kieselstein, P.C. (admitted *pro hac vice*)
Chad J. Husnick (admitted *pro hac vice*)
Steven N. Serajeddini (admitted *pro hac vice*)
300 North LaSalle
Chicago, Illinois 60654
Telephone:   (312) 862-2000
Facsimile:   (312) 862-2200
Email:       james.sprayregen@kirkland.com
             marc.kieselstein@kirkland.com
             chad.husnick@kirkland.com
             steven.serajeddini@kirkland.com

Co-Counsel to the Debtors and Debtors in Possession