## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| Energy Future Holdings Corporation, *et al.*, | Case No. 14-10979 (CSS) |
| Debtors. | Jointly Administered |
| | **Re: Docket No. 3727**<br>**Reply Deadline: 4/1/15**<br>**Hearing Date: 4/14/15** |

## REPLY OF WILMINGTON SAVINGS FUND SOCIETY, FSB
## TO DEBTORS' OMNIBUS OBJECTION TO STANDING MOTIONS

Wilmington Savings Fund Society, FSB ("WSFS"), as successor trustee under that certain indenture, dated as of October 6, 2010, among Texas Competitive Electric Holdings, LLC ("TCEH"), TCEH Finance, Inc., the guarantors party thereto, and The Bank of New York Mellon Trust Co., N.A., as trustee (as amended or supplemented, the "Indenture"), by and through its undersigned counsel, hereby submits its reply (this "Reply") to the Debtors' Omnibus Objection to Standing Motions [Docket No. 3727].[1] In support of this Reply, WSFS respectfully states as follows:

### PRELIMINARY STATEMENT

1.    Through its motion for standing (the "T-Side Committee Motion") [Docket No. 3593], the official committee of unsecured creditors of TCEH and its affiliates (the "T-Side Committee") raises, inter alia, the following questions: (a) whether the claims for which standing

---

[1]    On March 3, 2015, WSFS filed its response and limited objection [Docket No. 3725] to the motions for standing filed by an ad hoc group of TCEH unsecured creditors [Docket Nos. 3596 & 3603] and the official committee of unsecured creditors (the "E-Side Committee") of Debtors Energy Future Holdings Corporation, Energy Future Intermediate Holdings Company LLC, EFIH Finance Inc. and EECI, Inc. [Docket No. 3605]. That response and limited objection remains extant, and is incorporated by reference herein.

is sought (the "Claims") are colorable; and (b) whether the Debtors' refusal to pursue the Claims is unjustifiable. If the Court grants standing to the T-Side Committee, presumably it will be because the Court has determined the foregoing questions in the affirmative.

2.    It is from that vantage point that WSFS files this Reply in response to the Debtors' request for the continued ability to settle or compromise the same Claims for which the T-Side Committee may be granted standing to pursue. Based on the Debtors' conduct to date, in particular with respect to the Claims, there are ample statutory and equitable grounds upon which to divest the Debtors of the right to settle the Claims. And, to the extent the Court determines the Claims to be colorable and the Debtors' refusal to bring such Claims unreasonable, the Court should divest the Debtors of any further ability in impair such claims at the expense of TCEH creditors.

## BACKGROUND

3.    On February 19, 2015, the T-Side Committee filed its motion for standing to commence and prosecute the Claims, in advance of the deadline (as extended) for commencing such actions established in the *Final Order (A) Authorizing Use of Cash Collateral for Texas Competitive Electric Holdings Company LLC and Certain of its Affiliates, (B) Granting Adequate Protection, and (C) Modifying the Automatic Stay* (the "Cash Collateral Order") [Docket No. 855]. In the Cash Collateral Order, the Debtors' prior stipulations as to the extent and validity of the TCEH first lien debt (the "First Lien Debt") became binding on and enforceable against the Debtors. As a result of those stipulations, the Debtors, even if they were willing, are incapable of prosecuting significantly all of the Claims.

4.    Further, even prior to stipulating away the Claims in connection with the Cash Collateral Order, the Debtors negotiated and entered into a prepetition restructuring support

agreement (the "RSA") with, inter alia, the alleged defendants of the Claims.  Under the RSA, which was later abandoned in the face of significant creditor opposition, the Debtors similarly agreed to compromise the Claims for nothing in return.

5.      Upon information and belief, the Debtors stand poised to propose a plan that will again seek to compromise the Claims for little to no value for the TCEH estates.

## ARGUMENT

6.      In arguing that they should retain concurrent settlement authority, notwithstanding their past refusal, and now inability, to prosecute the Claims, the Debtors cite to Section 1123(b)(3) (chapter 11 plans may provide for the settlement or adjustment of claims) and Bankruptcy Rule 9019 (permitting the "trustee" to propose settlements).  With these citations, the Debtors seem to suggest that, as debtors in possession, they possess some inalienable right to settle estate claims, no matter what the facts and circumstances.  Such is certainly not the case.

7.      In the first instance, the Code specifically contemplates non-debtors proposing chapter 11 plans, which plans may likewise deal with estate claims even without the Debtors' input or consent.  See Section 11 U.S.C. 1121(c) (any party in interest may file a plan upon the appointment of a trustee or expiration of exclusivity).

8.      Moreover, even when the predicates for allowing non-debtors to file a chapter 11 plan have not been satisfied, the Code specifically contemplates the authority of debtors-in-possession being limited by the Court, as dictated by the facts and circumstances of the particular case.  More specifically, Section 1107(a) of the Code provides as follows:

> Subject to any limitations on a trustee serving in a case under [chapter 11], *and to such limitations or conditions as the court prescribes*, a debtor in possession shall have all the rights, . . . and shall perform all the functions and duties, . . . of a trustee serving in a case under this chapter.

3

11 U.S.C. § 1107(a) (emphasis added).

9.    Under Section 1107(a), the Court has considerable leeway to limit the authority of a debtor-in-possession as necessary to protect creditor interests.  See In re Gaslight Club, 782 F.2d 767, 770 (7th Cir. 1986) ("The case law demonstrates that the court has considerable authority to interfere with the management of a debtor corporation in order to protect the creditors' interests."); In re Lifeguard Indus., Inc., 37 B.R. 3 (Bankr. S.D. Ohio 1983) ("It is this Court's responsibility to protect creditors' interests from the actions of inexperienced, incapable, or foolhardy management, whether old or new.").  Similarly, Section 1108 provides that "*[u]nless the court . . . orders otherwise*, the trustee may operate the debtor's business."  11 U.S.C. 1108 (emphasis added).  Together, Sections 1107 and 1108 (along with Section 105's grant of authority to enter such Orders as are necessary to carry out the provisions of title 11) provide this Court with ample ability to divest the Debtors of the ability to settle the Claims to the extent standing is granted to the T-Side Committee.

10.    By their prior actions, the Debtors have demonstrated themselves unwilling, and now unable, to prosecute the Claims (which, if standing is granted, the Court will have determined to be colorable and therefore potentially valuable to the TCEH estates).  It is therefore highly unlikely (if not impossible) for the Debtors to negotiate any resolution of the Claims that would result in incremental value to the TCEH estates.  To leave such impaired fiduciaries in a position to undermine the efforts of the T-Side Committee would essentially render any relief granted on account of the T-Side Committee Motion a nullity.

11.    For the reasons stated herein, and those in the T-Side Committee's reply pertaining to its exclusive standing to prosecute and settle the Claims (with which WSFS joins), WSFS requests that the Debtors be divested of any authority to settle, compromise or otherwise

4

affect the Claims to the extent derivative standing to bring the Claims is granted to the T-Side Committee.

## NOTICE

11      Notice of this Reply has been provided to: (a) counsel for the Debtors; (b) the Office of the United States Trustee; (c) counsel for the T-Side Committee; (d) counsel for the E-Side Committee; (e) counsel for the TCEH first lien trustee and ad hoc group; and (f) counsel for the TCEH Ad Hoc Group.  WSFS respectfully submits that no other or further notice need be provided.

*[Remainder of page intentionally left blank]*

## CONCLUSION

WHEREFORE, based on the foregoing, WSFS respectfully requests that this Court: (a) divest the Debtors of any authority to settle, compromise or otherwise affect the Claims to the extent derivative standing to commence and prosecute the claims is granted to the T-Side Committee; and (b) grant WSFS such other and further relief as is just.

Dated: Wilmington, DE
    April 1, 2015

**ASHBY & GEDDES, P.A.**

William P. Bowden (I.D. No. 2553)
Gregory A. Taylor (I.D. No. 4008)
500 Delaware Avenue
P.O. Box 1150
Wilmington, Delaware 19899
Telephone: (302) 654-1888
Facsimile: (302) 654-2067

- and -

**BROWN RUDNICK LLP**
Edward S. Weisfelner (admitted pro hac vice)
Seven Times Square
New York, New York 10036
Telephone: (212) 209-4800
Facsimile: (212) 209-4801

- and -

Jeffrey L. Jonas (admitted pro hac vice)
Jeremy B. Coffey (admitted pro hac vice)
One Financial Center
Boston, Massachusetts 02111
Telephone: (617) 856-8200
Facsimile: (617) 856-8201

*Counsel to Wilmington Savings Fund Society, FSB, solely in its capacity as successor Indenture Trustee*