**<u>Exhibit 1</u>**

# ORIGINAL

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| **In re** : | **Chapter 11** |
| : | |
| **CENTAUR, LLC et al.,**[1] : | **Case No. 10-10799 (KJC)** |
| : | |
| **Debtors.** : | **(Jointly Administered)** |
| : | |
| : | Re: Docket Nos. 992, 1022, 1120, 1196, 1199, 1245, 1265, 1274, 1275, 1277, 1306, 1313, 1316, 1317, 1319, 1320, 1348 |

**ORDER (I) CONFIRMING THE SECOND MODIFIED FOURTH AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION FOR CENTAUR, LLC AND ITS AFFILIATED DEBTORS AND (II) GRANTING THE DEBTORS' MOTION FOR ENTRY OF AN ORDER APPROVING SETTLEMENT AGREEMENT BY AND AMONG THE DEBTORS, THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS AND THE PREPETITION FIRST LIEN AGENT PURSUANT TO RULE 9019 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE**

On October 28, 2009, the Valley View Downs Debtors and, on March 6, 2010, the Centaur Debtors (together with the Valley View Downs Debtors, the "**Debtors**")[2] each filed in the United States Bankruptcy Court for the District of Delaware (the "**Bankruptcy Court**") a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (the "**Bankruptcy Code**"). The Debtors' chapter 11 cases (the "**Chapter 11 Cases**") have been consolidated for procedural purposes only and are being jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy**

---

[1]    The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, if applicable, are: Centaur, LLC (8148); Centaur Colorado, LLC (9131); Centaur Indiana, LLC; Centaur Racing, LLC; Hoosier Park, L.P. (0820); HP Dining & Entertainment, LLC; Centaur Pennsylvania, LLC; VVD Properties General Partner, LLC; Valley View Downs GP, LLC; VVD Properties, LP (6808); Valley View Downs, LP (1028); Centaur PA Land Management, LLC; Centaur PA Land General Partner, LP; and Centaur PA Land, LP. Debtors Centaur PA Land, LP and Valley View Downs, LP (together, the "**Valley View Downs Debtors**") filed their chapter 11 petitions on October 28, 2009. The remaining Debtors (collectively, the "**Centaur Debtors**") filed their chapter 11 petitions on March 6, 2010.

[2]    Unless otherwise defined herein, capitalized terms shall have the meanings ascribed to them in the Second Modified Fourth Amended Joint Chapter 11 Plan of Reorganization for Centaur, LLC and Its Affiliated Debtors, dated February 6, 2011 [D.I. 1275] (as amended, the "**Plan**")

Rules") and Rule 1015-1 of the Local Rules of Bankruptcy Practice and Procedure for the

United States Bankruptcy Court for the District of Delaware.

On March 17, 2010, the Office of the United States Trustee for the District of Delaware

(the "**U.S. Trustee**") appointed the Official Committee of Unsecured Creditors (the

"**Committee**") in the Debtors' chapter 11 cases (the "**Chapter 11 Cases**").[3] No trustee or

examiner has been requested or appointed in any of the Chapter 11 Cases.

On March 28, 2010, the Debtors filed the Joint Chapter 11 Plan of Reorganization for

Centaur, LLC and Its Affiliated Debtors [D.I. 85] and a disclosure statement related thereto [D.I.

86].

On May 7, 2010, the Debtors filed the Amended Joint Chapter 11 Plan of Reorganization

for Centaur, LLC and Its Affiliated Debtors [D.I. 236] and a disclosure statement related thereto

[D.I. 238].

On July 22, 2010, the Debtors filed the Second Amended Joint Chapter 11 Plan of

Reorganization for Centaur, LLC and Its Affiliated Debtors [D.I. 457] and a disclosure statement

related thereto [D.I. 459].

On August 24, 2010, the Debtors filed the Third Amended Joint Chapter 11 Plan of

Reorganization for Centaur, LLC and Its Affiliated Debtors [D.I. 599] and a disclosure statement

related thereto [D.I. 601].

On September 3, 2010, the Debtors filed the Fourth Amended Joint Chapter 11 Plan of

Reorganization for Centaur, LLC and Its Affiliated Debtors [D.I. 641] (as was modified on

October 18, 2010 [D.I. 764], the "**October 18, 2010 Plan**") and a disclosure statement [D.I. 643]

---

[3]       On July 6, 2010, the U.S. Trustee filed a revised notice of appointment of the Committee [D.I. 397], which
indicates that one of the original members of the Committee, Churchill Downs, Inc., is no longer a member of the
Committee.

WM1A 988806v1 02/18/11

related to that plan of reorganization (as was modified on October 18, 2010 [D.I. 766], the "**Disclosure Statement**").

On October 20, 2010, this Bankruptcy Court entered the Order (I) Approving the Disclosure Statement Relating to the Fourth Amended Joint Chapter 11 Plan of Reorganization for Centaur, LLC and its Affiliated Debtors; (II) Approving Form of Ballot and Proposed Solicitation, Voting and Tabulation Procedures for the Plan and Plan Confirmation Process; (III) Approving the Solicitation Packages and Prescribing the Form and Manner of Notice and Distribution Thereof; and (IV) Scheduling a Hearing on Plan Confirmation (the "**Disclosure Statement Order**") [D.I. 783].

On or about October 20, 2010, the Debtors' noticing, claims and balloting agent, AlixPartners, LLP (the "**Solicitation Agent**"), commenced transmitting solicitation packages in accordance with the Disclosure Statement Order, as attested to in the Affidavit of Solicitation Mailing, filed October 29, 2010 [D.I. 872] (the "**Solicitation Affidavit**").

On November 24, 2010, this Bankruptcy Court entered the Order (I) Adjourning the Hearing on Confirmation of the Fourth Amended Joint Chapter 11 Plan of Reorganization for Centaur, LLC and Its Affiliated Debtors; (II) Extending the Deadline for Voting on the Plan and (III) Extending the Deadline for Objecting to Confirmation of the Plan [D.I. 985].

On December 7, 2010, the Debtors filed the Debtors' Motion for Entry of an Order (A) Approving Settlement Agreement by and Among the Debtors, the Official Committee of Unsecured Creditors and the Prepetition First Lien Agent Pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure and (B) in the Event the Court Requires Additional Disclosure With Respect to the Plan Modifications Resulting From the Settlement Agreement, Deeming the Notice of the Proposed Plan Modifications to be Adequate Disclosure and Fixing a Deadline to

3

Amend Voting on the Proposed Modified Fourth Amended Joint Plan of Reorganization for Centaur, LLC and Its Affiliated Debtors [D.I. 1022] (the "**Settlement Motion**").

On or about December 7, 2010, the Solicitation Agent commenced distributing notice of the Settlement Motion, as attested to in the Affidavit of Mailing, filed December 13, 2010 [D.I. 1046].

On or about December 8, 2010, the Debtors filed the Notice of (A) Settlement Among the Debtors, the Official Committee of Unsecured Creditors and the Prepetition First Lien Agent Pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure, (B) Improved Treatment of Class 3 – Second Lien Claims, Class 5 – Valley View Downs Unsecured Claims and Class 6 – General Unsecured Claims Under the Fourth Amended Joint Chapter 11 Plan of Reorganization for Centaur, LLC and Its Affiliated Debtors, and (C) Opportunity for Holders of Claims and Equity Interests Entitled to Vote on the Plan to Vote to Accept the Plan, as Modified [D.I. 1027] (the "**Notice of Plan Modifications**").

On or about December 8, 2010, the Solicitation Agent commenced distributing the Notice of Plan Modifications, as attested to in the Affidavit of Mailing, filed December 13, 2010 [D.I. 1048].

On December 13, 2010, the Court entered the Order (A) Adjourning the Hearing on Confirmation of the Fourth Amended Joint Chapter 11 Plan of Reorganization for Centaur, LLC and Its Affiliated Debtors; (B) Extending the Deadline for Voting on the Plan; (C) Extending the Deadline for Objecting to the Plan; (D) Adjourning the Hearing on the Debtors' Motion for Entry of an Order (I) Approving Settlement Agreement by and Among the Debtors, the Official Committee of Unsecured Creditors and the Prepetition First Lien Agent Pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure and (II) in the Event the Court Requires Additional

4

Disclosure With Respect to the Plan Modifications Resulting From the Settlement Agreement, Deeming the Notice of the Proposed Plan Modifications to be Adequate Disclosure and Fixing a Deadline to Amend Voting on the Proposed Modified Fourth Amended Joint Plan of Reorganization for Centaur, LLC and Its Affiliated Debtors; and (E) Establishing Discovery and Briefing Schedule and Protocols in Connection With the Confirmation and Plan Settlement Hearing [D.I. 1058].

On December 13, 2010, the Court entered the Order (A) Authorizing the Transfer of the Equity Interests to be Issued on the Effective Date in the Conveyed Entities and (B) Granting Related Relief [D.I. 1052] (the "**Sale Order**").  The Sale Order, among other things, (i) authorizes the Debtors to transfer the partnership interests of Reorganized Valley View Downs, LP, Reorganized Centaur PA Land General Partner, LP and Reorganized Centaur PA Land, LP and the membership interests of Reorganized Centaur PA Land Management, LLC to be issued on the Effective Date of the Plan (collectively, the "**VVD Interests**") to the Winning Competitive Bidder, and (ii) prohibits both the Debtors and the Winning Competitive Bidder from using the "VALLEY VIEW" mark or any similar or related name or derivation or acronym (the "Valley View Mark"), (i) on Internet websites and search engines, or (ii) in connection with the operation of a hotel, restaurant, racing facility or casino.

On January 20, 2011, the Court entered the Amended Order (A) Adjourning the Hearing on Confirmation of the Fourth Amended Joint Chapter 11 Plan of Reorganization for Centaur, LLC and Its Affiliated Debtors; (B) Extending the Deadline for Voting on the Plan; (C) Extending the Deadline for Objecting to Confirmation of the Plan; (D) Adjourning the Hearing on the Debtors' Motion for Entry of an Order (I) Approving Settlement Agreement by and Among the Debtors, the Official Committee of Unsecured Creditors and the Prepetition First

5

Lien Agent Pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure and (II) in the

Event the Court Requires Additional Disclosure With Respect to the Plan Modifications

Resulting From the Settlement Agreement, Deeming the Proposed Form of Notice of the

Proposed Plan Modifications to be Adequate Disclosure and Fixing a Deadline to Amend Voting

on the Proposed Modified Fourth Amended Joint Plan of Reorganization for Centaur, LLC and

Its Affiliated Debtors; and (E) Establishing Discovery and Briefing Schedule and Protocols in

Connection With the Confirmation and Plan Settlement Hearing [D.I. 1206] (the "**Scheduling**

**Order**").

The Scheduling Order, among other things, (i) established February 4, 2011 as the

deadline for voting on the Plan, and (ii) scheduled a hearing commencing on February 18, 2011

at 10:00 a.m. (Eastern Time) to consider confirmation of the Plan and objections thereto (the

"**Confirmation Hearing**").

On January 28, 2011, the Debtors filed the Modified Fourth Amended Joint Chapter 11

Plan of Reorganization for Centaur, LLC and Its Affiliated Debtors [D.I. 1242].

On January 28, 2011, the Debtors filed a Notice of Filing of Plan Supplement [D.I. 1245],

attaching the Plan Documents.

On February 4, 2011, the Court the Court entered the Order Extending the Deadlines for

the Prepetition First Lien Agent, Prepetition First Lien Claimholders, Prepetition Second Lien

Agent and Prepetition Second Lien Claimholders to Object to, and Vote on, the Plan [D.I. 1268],

which extended the deadline for voting on the Plan, solely as to the Prepetition First Lien Agent,

other Prepetition First Lien Claimholders, Prepetition Second Lien Agent and other Prepetition

Second Lien Claimholders to February 8, 2011.

On February 6, 2011, the Debtors filed the Plan.

On February 6, 2011, the Debtors filed a Notice of Filing of Modifications to Plan Supplement [D.I. 1277], attaching modified forms of the First Lien Take Back Paper, NewCo PIK Notes, Stapled NewCo PIK Notes and NewCo Operating Agreement.

On February 9, 2011, the Court entered the Order Granting Debtors' Motion to Allow Late-Cast Ballots to be Tabulated for Purposes of Determining Whether Class 2 – First Lien Claims and Class 3 – Second Lien Claims Accepted the Second Modified Fourth Amended Joint Chapter 11 Plan of Reorganization for Centaur, LLC and Its Affiliated Debtors [D.I. 1299].

Objections to confirmation of the Plan (collectively, the "**Plan Objections**") were filed by Caterpillar Financial Services Corporation [D.I. 992], the Internal Revenue Service [D.I. 1196], Churchill Downs Incorporated [D.I. 1199], San Pasqual Casino Development, Inc. [D.I. 1265] and the U.S Trustee [D.I. 1274].

An objection to the Settlement Motion (collectively, the "**Settlement Objection**" and, together with the Plan Objections, the "**Objections**") was filed by Churchill Downs Incorporated [D.I. 1120].

On February 10, 2011, the Debtors filed their Memorandum of Law in (A) Support of Confirmation of Second Modified Fourth Amended Joint Chapter 11 Plan of Reorganization for Centaur, LLC and Its Affiliated Debtors, (B) Response to Certain Objections Thereto, (C) Support of Plan Settlement and (D) Response to a Certain Objection Thereto (the "**Confirmation Memorandum**") [D.I. 1306].

On February 14, 2011, the Debtors filed a Second Notice of Filing of Modification to Plan Supplement [D.I. 1316], attaching a further modified form of the NewCo Operating Agreement.

On February 14, 2011, the Debtors filed the Declaration of John S. Franks of AlixPartners, LLP Regarding Voting on, and Tabulation of Ballots Accepting and Rejecting the Joint Chapter 11 Plan of Reorganization for Centaur, LLC and Its Affiliated Debtors, as Amended (the "**Voting Certification**") [D.I. 1317].

On February 15, 2011, the Debtors filed the declarations of Steven M. Zelin (the "**Zelin Declaration in Support of the Plan**") and Kurt E. Wilson in support of confirmation of the Plan (the "**Wilson Declaration in Support of the Plan**" and, together with the Zelin Declaration in Support of the Plan, the "**Declarations in Support of the Plan**") [D.I. 1320 and 1319, respectively].

On February 18, 2011, the Debtors filed a Third Notice of Filing of Modifications to Plan Supplement [D.I. 1348], attaching a further modified form of the First Lien Take Back Paper, a further modified form of the Stapled NewCo PIK Notes, a further modified form of the NewCo Operating Agreement, revised terms of the Management Incentive Plan, modified forms of the Long Term Employment Agreements, a revised list of the proposed members of the Board of Managers on the Effective Date and their affiliations with the Debtors, a revised list of identities of the proposed officers of NewCo on the Effective Date, and a modified form of the Litigation Trust Declaration.

The Confirmation Hearing concluded on February 18, 2011.

NOW, THEREFORE, this Bankruptcy Court having considered the Plan, the Solicitation Affidavit, the Settlement Motion, the Notice of Plan Modifications, the Voting Certification, the Declarations in Support of the Plan, the Confirmation Memorandum, any remaining Objections, all evidence proffered or adduced and the arguments of counsel at the Confirmation Hearing, and the entire record of these Chapter 11 Cases, and after due deliberation thereon and good cause

8

appearing therefor, this Bankruptcy Court hereby makes and issues the following Findings of

Fact and Conclusions of Law and hereby orders:[4]

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

A.      Jurisdiction and Venue. This Bankruptcy Court has subject matter jurisdiction to

confirm the Plan and approve the Settlement pursuant to 28 U.S.C. §§ 157 and 1334.  Venue

before this Bankruptcy Court was proper as of the Petition Date and continues to be proper

pursuant to 28 U.S.C. §§ 1408 and 1409.  Confirmation of the Plan and approval of the

Settlement are core proceedings under 28 U.S.C. § 157(b)(A), (L), and (O).  The Debtors were

and are qualified to be debtors under section 109 of the Bankruptcy Code.

B.      Burden of Proof. The Debtors, as proponents of the Plan, have the burden of

proving the elements of section 1129(a) of the Bankruptcy Code by a preponderance of the

evidence and, as set forth below, the Debtors have met that burden.  The Debtors, as the

proponents of the Settlement, have the burden of establishing that the Settlement is fair and

equitable, achieved at arms'-length and otherwise satisfies the requirement of section 1123(b)(3)

of the Bankruptcy Code and Bankruptcy Rule 9019 and, as set forth below, the Debtors have met

that burden.

C.      Judicial Notice. This Bankruptcy Court takes judicial notice of the docket in

these Chapter 11 Cases maintained by the clerk of this Bankruptcy Court and/or its duly

appointed agent, including, without limitation, all pleadings, notices, and other documents filed,

all orders entered, and all evidence and arguments made, proffered or adduced at the hearings

held before this Bankruptcy Court during these Chapter 11 Cases, including, without limitation,

---

[4]      This Confirmation Order constitutes this Bankruptcy Court's findings of fact and conclusions of law under
Federal Rule of Civil Procedure 52, made applicable by Bankruptcy Rules 7052 and 9014.  Any and all findings of
fact shall constitute findings of fact even if they are stated as conclusions of law, and any and all conclusions of law
shall constitute conclusions of law even if they are stated as findings of fact.

the hearing to consider the adequacy of the Disclosure Statement and the Confirmation Hearing.

D.    The Record.  The following record (the "**Record**") was established to support

confirmation of the Plan and approval of the Settlement:

(i)    All documents identified by the Debtors at the Confirmation Hearing, including, without limitation, the Plan, the Disclosure Statement and all exhibits, schedules and attachments thereto and filed in connection therewith, and the Plan Documents, all of which were admitted into evidence without objection;

(ii)    The Declarations in Support of the Plan;

(iii)    The Solicitation Affidavit;

(iv)    The Plan Settlement Motion;

(v)    The Affidavit of Mailing, filed December 13, 2010, with respect to the Plan Settlement Motion;

(vi)    The Notice of Plan Modifications;

(vii)    The Affidavit of Mailing, filed December 13, 2010, with respect to the Notice of Plan Modifications;

(viii)    The Voting Certification;

(ix)    The entire record of these Chapter 11 Cases and the docket maintained by the clerk of this Bankruptcy Court and/or its duly appointed agent, including, without limitation, all pleadings and other documents filed, all orders entered, and evidence and argument made, proffered, or adduced at the hearings held before this Bankruptcy Court during the pendency of these Chapter 11 Cases, as to all of which this Bankruptcy Court took judicial notice at the Confirmation Hearing; and

(x)    The statements and argument of counsel on the record at the Confirmation Hearing, and all papers and pleadings filed with this Bankruptcy Court in support of, in opposition to, or otherwise in connection with, confirmation of the Plan.

The evidence that was admitted into the Record in support of confirmation of the Plan, approval

of the Settlement and all related matters demonstrates, by a clear preponderance of the evidence,

that the Plan should be confirmed and the Settlement should be approved.

WM1A 988806v1 02/18/11

E.     Modifications to the Plan.  The Debtors have made the nonmaterial modifications to the Plan as set forth in Exhibit A hereto (the "**Modifications**").  Pursuant to section 1127(a) of the Bankruptcy Code and Bankruptcy Rule 3019, none of the Modifications requires additional disclosure under section 1125 of the Bankruptcy Code or resolicitation of votes under section 1126 of the Bankruptcy Code, nor do they require that the holders of Claims or Equity Interests be afforded an opportunity to change previously cast acceptances or rejections of the Plan.  The Plan as modified by the Modifications shall constitute the Plan submitted for confirmation by this Bankruptcy Court.

F.     Resolution of Objections.  As presented at the Confirmation Hearing, the consensual resolutions of certain Objections satisfy all applicable requirements of the Bankruptcy Code and the Bankruptcy Rules and are in the best interest of the Debtors and their Estates and supported by the Record, and therefore, should be approved.  All Objections that were not resolved by agreement on or prior to the Confirmation Hearing should be overruled, or are otherwise disposed of, as set forth herein and on the record of the Confirmation Hearing.

G.     Solicitation and Notice.  To obtain the requisite acceptance of the Plan, on October 20, 2010, the Debtors commenced solicitation of acceptances and rejections of the Plan by distributing the Disclosure Statement and related materials to holders of Claims against the Debtors classified in impaired classes entitled to vote under the Plan.

(i)     As evidenced by the Solicitation Affidavit, and in compliance with the requirements of the Disclosure Statement Order, the Debtors transmitted to all known holders of Claims against the Debtors classified in impaired classes entitled to vote under the Plan: (a) the Disclosure Statement Order (excluding exhibits); (b) a CD-ROM containing a copy of the Disclosure Statement and all schedules and exhibits thereto, including the Plan and Disclosure

11

Statement Order; (c) a notice of the hearing to consider confirmation of the Plan and deadline for filing objections thereto (the "**Confirmation Hearing Notice**"); (d) a ballot; and (e) a postage prepaid return envelope (collectively, the "**Solicitation Packages**").

       (ii)        Specifically, the Solicitation Packages were distributed to holders of Claims in Class 2 – First Lien Claims, Class 3 – Second Lien Claims, Class 5 – Valley View Downs Unsecured Claims, Class 6 – General Unsecured Claims, Class 7 – Convenience Claims and Class 8 – Intercompany Claims.

       (iii)        In addition, as evidenced by the Solicitation Affidavit, and in compliance with the requirements of the Disclosure Statement Order, the Debtors transmitted to all known holders of Claims against and Equity Interests in the Debtors that were either classified as unimpaired or deemed to have rejected the Plan, a notice of non-voting status and of the hearing to consider confirmation of the Plan and deadline for filing objections thereto.  Specifically, the items listed immediately above were transmitted to holders of Class 1 – Priority Claims, Class 4 – Other Secured Claims and Class 9 – Equity Interests.

       (iv)        Furthermore, as evidenced by the Solicitation Affidavit, the Debtors transmitted to all parties requesting notices pursuant to Bankruptcy Rule 2002 and certain other parties in interest who were not entitled to vote on the Plan, (a) the Plan (including exhibits), (b) the Disclosure Statement (including exhibits), (c) the Disclosure Statement Order (excluding exhibits) and (d) a notice of the hearing to consider confirmation of the Plan and deadline for filing objections thereto.

       (v)        As evidenced by the Affidavit of Mailing, filed December 13, 2010, with respect to the Plan Settlement Motion and the Affidavit of Mailing, filed December 13, 2010, with respect to the Notice of Plan Modifications, the Plan Settlement Motion and the Notice of

Plan Modifications were each transmitted to all holders of Claims and Equity Interests, whether classified as impaired or unimpaired, as well as all parties requesting notices pursuant to Bankruptcy Rule 2002 and certain other parties in interest who were not entitled to vote on the Plan.

(vi)     Finally, as evidenced by the Affidavit of Mailing, filed February 9, 2011, with respect to the Plan, the Plan was transmitted to all holders of Claims and Equity Interests, whether classified as impaired or unimpaired, as well as all parties requesting notices pursuant to Bankruptcy Rule 2002 and certain other parties in interest who were not entitled to vote on the Plan.

(vii)    The Debtors complied with the Disclosure Statement Order, the Bankruptcy Code, the Bankruptcy Rules and all other applicable laws in connection with the solicitation of votes on the Plan and the provision of notice of the Confirmation Hearing, the February 3, 2011 and February 7, 2011 (solely as to the Prepetition First Lien Agent, other Prepetition First Lien Claimholders, Prepetition Second Lien Agent and other Prepetition Second Lien Claimholders) deadlines for filing and serving objections to confirmation, the February 4, 2011 and February 8, 2011 (solely as to the Prepetition First Lien Agent, other Prepetition First Lien Claimholders, Prepetition Second Lien Agent and other Prepetition Second Lien Claimholders) deadlines for voting on the Plan and all other relevant deadlines related to the Plan. As such, the notice provided was due and proper with respect to all matters relating to the solicitation of votes on, and the confirmation of, the Plan and satisfied the requirements of due process with respect to all creditors, equity holders and parties in interest who were provided actual or constructive notice.

WM1A 988806v1 02/18/11

H.     Voting. As evidenced by the Voting Certification, each class of Claims and

Equity Interests other than Class 6 – General Unsecured Claims and Class 8 – Intercompany

Claims either (i) voted to accept the Plan under section 1126 of the Bankruptcy Code and for

purposes of section 1129(a)(8)(A) of the Bankruptcy Code; (ii) is not impaired as provided in

section 1124 and 1129(a)(8)(B) of the Bankruptcy Code; or (iii) is deemed, under section

1126(g) of the Bankruptcy Code, to have voted to reject the Plan. As evidenced by the Voting

Certification, no less than $320,732,294.33 of the Claims comprising Class 2 – First Lien

Claims, $141,894,622.28 of the Claims comprising Class 3 – Second Lien Claims,

$61,186,857.02 of the Claims comprising Class 5 – Valley View Downs Unsecured Claims and

$233,578.47 of the Claims comprising Class 7 – Convenience Claims voted to accept the Plan.

As a result of the Bankruptcy Court's approval of the Churchill Settlement (as defined in the

Confirmation Memorandum), the Claims filed by Churchill Downs Management Company that

would otherwise have been Class 6 – General Unsecured Claims are Cure Claims in the

compromised amount set forth in the agreement memorializing the Churchill Settlement, and

thus, excluding the vote of Churchill Downs Management Company, Class 6 – General

Unsecured Claims voted to accept the Plan under section 1126 of the Bankruptcy Code.

No ballots were cast by holders of Intercompany Claims, and thus, Class 8 – Intercompany

Claims neither accepted nor rejected the Plan. Although Class 8 – Intercompany Claims did not

accept the Plan and Class 9 – Equity Interests is deemed to have rejected the Plan pursuant to

section 1126 of the Bankruptcy Code, the Plan is nonetheless confirmable under the cramdown

provisions of the Bankruptcy Code.

I.     Voting and Tabulation. All votes on the Plan are binding and have been properly

tabulated as acceptances or rejections of the Plan.

J.    <u>Releases, Exculpations and Injunctions</u>.  The Plan provides for various releases, exculpations and injunctions.  With regard to the releases contained in <u>Section 17.2</u> of the Plan (the "**Section 17.2 Releases**"), each holder of an impaired Claim against the Debtors was notified on such holder's applicable ballot, that a vote to accept the Plan would be deemed consent by such holder to the Section 17.2 Releases.  To the extent any such holder of an impaired Claim against the Debtors voted to accept the Plan, the Section 17.2 Releases are deemed to be consensual as to that holder.  Furthermore, the releases, exculpations and injunctions provided in the Plan (i) are within the jurisdiction of this Bankruptcy Court under 28 U.S.C. § 1334; (ii) are essential means of implementing the Plan pursuant to section 1123(a)(5) of the Bankruptcy Code; (iii) are integral elements of the transactions incorporated into the Plan; (iv) were consensual and confer material benefit on, and are in the best interests of, the Debtors, their Estates and holders of Claims and Equity Interests, and are important to the overall objectives of the Plan to finally resolve all claims among or against the parties in interest in the Chapter 11 Cases with respect to the Debtors, their organization, capitalization, operation and reorganization; (v) are consistent with sections 105, 524, 1123, 1129, and 1141 and other applicable provisions of the Bankruptcy Code; and (vi) constitute good faith compromises and settlements of the matters thereby made in exchange for the material benefit provided to the Debtors, their Estates and holders of Claims and Equity Interests.

K.    <u>Entry into First Lien Take Back Documents and Exit Financing</u>.  Pursuant to section 1123(a)(5) of the Bankruptcy Code, as set forth in <u>Section 8.2(d)</u> of the Plan, on the Effective Date and at the direction of Centaur, LLC, NewCo, New Centaur, LLC, Hoosier Park, LLC and the Reorganized Debtors shall be authorized, without further act or action under applicable law, regulation, order or rule, to enter into the First Lien Take Back Documents and

15

Exit Financing.  NewCo, New Centaur, LLC, Hoosier Park, LLC and the Reorganized Debtors are hereby authorized to enter into such agreements, collateral documents and other documents, and issue such instruments, <u>including</u>, without limitation, promissory notes, as may be necessary to effectuate their entry into such documents, in form and substance satisfactory to the Prepetition First Lien Agent and Required First Lien Lenders.

       L.       <u>Issuance of NewCo PIK Notes, Stapled NewCo PIK Notes and NewCo Warrants</u>. Pursuant to section 1123(a)(5) of the Bankruptcy Code, as set forth in <u>Section 8.2(e)</u> of the Plan, on the Effective Date, and at the direction of Centaur, LLC, NewCo shall be authorized, without further act or action under applicable law, regulation, order or rule, to issue the NewCo PIK Notes, Stapled NewCo PIK Notes and NewCo Warrants to holders of the Allowed First Lien Claims pursuant to the Plan.  NewCo is hereby authorized to enter into such agreements and documents as may be necessary to effectuate the issuance of the NewCo PIK Notes, Stapled NewCo PIK Notes and NewCo Warrants, in form and substance satisfactory to the Prepetition First Lien Agent and Required First Lien Lenders.  The First Lien Take Back Documents, Exit Financing, NewCo PIK Notes, Stapled NewCo PIK Notes and NewCo Warrants are essential elements of the Plan and entry into, and consummation of the transactions contemplated by the First Lien Take Back Documents, Exit Financing, NewCo PIK Notes, Stapled NewCo PIK Notes and NewCo Warrants is in the best interests of the Debtors, the Estates and holders of Claims, and is approved in all respects.  The Debtors have exercised reasonable business judgment in connection with the First Lien Take Back Documents, Exit Financing, NewCo PIK Notes, Stapled NewCo PIK Notes and NewCo Warrants, and the proposed terms thereunder have been negotiated in good faith and at arms'-length and are fair and reasonable.  The First Lien Take Back Documents, Exit Financing, NewCo PIK Notes, Stapled NewCo PIK Notes and NewCo

Warrants shall, upon execution, be valid, binding and enforceable and shall not be in conflict with any applicable law, regulation or court order.

      M.    <u>Executory Contracts and Unexpired Leases</u>.  The Debtors have exercised reasonable business judgment in determining whether to reject, assume or assume and assign each of their executory contracts and unexpired leases under the terms of the Plan and this Confirmation Order.  Each pre- or post-confirmation rejection, assumption or assumption and assignment of an executory contract or unexpired lease pursuant to <u>Article XIV</u> of the Plan will be legal, valid and binding upon the applicable Debtor, its successor under the Plan, and all non-Debtor parties to such executory contract or unexpired lease, as applicable, all to the same extent as if such rejection, assumption, or assumption and assignment had been effectuated pursuant to an appropriate order of this Bankruptcy Court entered before the Confirmation Date under section 365 of the Bankruptcy Code.  Each of the executory contracts and unexpired leases to be rejected, assumed or assumed and assigned is deemed to be an executory contract or an unexpired lease, as applicable.

      (i)    The Plan constitutes a motion to assume and assign to New Centaur, LLC, Hoosier Park, LLC or the Reorganized Debtors, as applicable, such executory contracts and unexpired leases (collectively, the "**Assumed and Assigned Contracts**") as set forth in Disclosure Statement Schedule 2 solicited with the Disclosure Statement and Plan (as may be amended from time to time, the "**Assumption Schedule**").  <u>Except</u> as otherwise provided in a separate order of this Bankruptcy Court, any non-Debtor party to an Assumed and Assigned Contract was required to object to such assumption and assignment or to the cure amounts proposed by the Debtors in connection therewith by no later than ten (10) Business Days prior to the Confirmation Hearing.  Upon the entry of this Confirmation Order, (a) all of the requirements

17

of sections 365(b) and (f) will have been satisfied with respect to each Assumed and Assigned Contract for which no timely objection was filed; (b) all rights to object to the assumption or assumption and assignment of any such Assumed and Assigned Contract will have been waived; (c) except as this Bankruptcy Court may hereafter determine is necessary and appropriate to effect the purpose of the Bankruptcy Code and equity, all rights to object to the cure amounts with respect to any such Assumed and Assigned Contracts will have been waived; and (d) the assumption or assumption and assignment of such Assumed and Assigned Contracts will have been approved.  Any objections filed with respect to an Assumed and Assigned Contract will be resolved as set forth in Article XIV of the Plan.

(ii)    Except as otherwise provided in this Confirmation Order or Section 14.1 of the Plan, the Plan also constitutes a motion to reject all of the Debtors' executory contracts and unexpired leases, except (a) any executory contracts and unexpired leases that are the subject of separate motions to assume or assume and assign filed pursuant to section 365 of the Bankruptcy Code by the Debtors before the Effective Date; (b) contracts and leases listed in the Assumption Schedule or any subsequently filed "Schedule of Assumed and Assigned Executory Contracts and Unexpired Leases" to be filed by the Debtors with this Bankruptcy Court before the entry of, or as an exhibit to, this Confirmation Order; (c) all executory contracts and unexpired leases assumed or assumed and assigned under the Plan or by order of this Bankruptcy Court entered before the Effective Date; (d) any executory contract or unexpired lease that is the subject of a dispute over the amount or manner of cure pursuant to Section 14.2 of the Plan and for which the Debtors make a motion to reject such contract or lease based upon the existence of such dispute filed at any time; (e) any agreement, obligation, security interest, transaction or similar undertaking that the Debtors believe is not executory or a lease that is later determined by

18

this Bankruptcy Court to be an executory contract or unexpired lease that is subject to assumption or rejection under section 365 of the Bankruptcy Code; (f) any oral or written joint defense agreements relating to actual, potential, or threatened litigation or investigations involving any of the Debtors, which shall be assumed; (g) any guaranty or similar agreement executed by a third party which guarantees repayment or performance of an obligation owed to any of the Debtors or to indemnify the Debtors; and (h) agreements with third parties regarding preservation of the confidentiality of documents produced by the Debtors. Each executory contract or unexpired lease to be rejected pursuant to the Plan is burdensome and the rejection thereof is in the best interests of the Estates.

N.      Standing. The Debtors have satisfied section 1121 of the Bankruptcy Code in that the Debtors have standing to file a plan with respect to each of the Debtors. Furthermore, the Plan reflects the date it was filed with this Bankruptcy Court and identifies the entities submitting it as Plan proponents, thereby satisfying Bankruptcy Rule 3016(a).

O.      The Plan Complies with the Bankruptcy Code (11 U.S.C. §§ 1129(a)(1)). As set forth below and as demonstrated by the Record, the Plan complies with all relevant sections of the Bankruptcy Code, Bankruptcy Rules and applicable non-bankruptcy law relating to the confirmation of the Plan. In particular, the Plan complies with all of the requirements of section 1129 of the Bankruptcy Code.

P.      Proper Classification (11 U.S.C. §§ 1122 and 1123(a)(1)). The Plan complies fully with the requirements of sections 1122 and 1123 of the Bankruptcy Code. The Plan's classifications conform to the statute and separately classify Claims based on valid business and legal reasons. The Debtors' classification has a rational basis because it is based on the respective legal rights of each holder of a Claim against or Equity Interest in the applicable

WM1A 988806v1 02/18/11

Debtor's Estate and was not proposed to create a consenting impaired class and, thereby, manipulate class voting. Article III of the Plan designates classes of Claims and Equity Interests that require classification.

Q.     Specified Unimpaired Classes (11 U.S.C. § 1123(a)(2)). The Plan complies fully with the requirements of section 1123(a)(2) of the Bankruptcy Code. Article IV of the Plan specifies which classes of Claims and Equity Interests are not impaired under the Plan.

R.     Treatment of Impaired Classes (11 U.S.C. § 1123(a)(3)). The Plan complies fully with the requirements of section 1123(a)(3) of the Bankruptcy Code. Article V of the Plan specifies the treatment of classes of Claims and interests under the Plan, including those which are impaired.

S.     No Discrimination (11 U.S.C. § 1123(a)(4)). The Plan complies fully with the requirements of section 1123(a)(4) of the Bankruptcy Code. As reflected in the treatment set forth in Article V of the Plan, the treatment of each of the Claims and Equity Interests in each particular class is the same as the treatment of each of the other Claims or Equity Interests in such class; provided, however, to the extent any claimant received any better treatment than that described by the Plan for its class on the basis of the standards for compromise and settlement, this Bankruptcy Court hereby finds that such better treatment does not need to be made available to other members of the class.

T.     Implementation of Plan (11 U.S.C. § 1123(a)(5)). The Plan complies fully with the requirements of section 1123(a)(5) of the Bankruptcy Code. The Plan provides adequate means for implementation of the Plan through, among other things, the restructuring transactions set forth in Section 8.2 of the Plan, the effectuation of the Settlement, the issuance of NewCo Membership Interests to Centaur, LLC, New Centaur, LLC Membership Interests to NewCo and

20

membership interests of Hoosier Park, LLC to New Centaur, LLC, the entry into the First Lien

Take Back Documents and Exit Financing, the issuance of the NewCo PIK Notes, the Stapled

NewCo PIK Notes and the NewCo Warrants, the transfer of NewCo Membership Interests, the

sale of the VVD Interests in accordance with the terms of the Sale Order or, alternatively, the

withdrawal of the Pennsylvania Gaming License Application, the establishment of the Litigation

Trust, the capitalization of the Litigation Trust with the Administrative Fund and the Designated

Avoidance Actions, the appointment of the Litigation Trustee, the cancellation and termination

of the Original Debt Documents and the termination and extinguishment of all of the Debtors'

obligations under the Original Debt Documents and the imposition of the injunction in favor of

the Debtors pursuant to Section 17.22 of the Plan.

U.      Nonvoting Equity Securities (11 U.S.C. § 1123(a)(6)).  The Plan complies fully

with the requirements of section 1123(a)(6) of the Bankruptcy Code.  As indicated in Section 8.3

of the Plan, the organizational documents of NewCo, New Centaur, LLC, Hoosier Park, LLC

and the Reorganized Debtors shall, as of the Effective Date, prohibit or be amended to prohibit

the issuance of non-voting equity securities by such Entities as required by section 1123(a)(6) of

the Bankruptcy Code; provided, however, that following the Effective Date, NewCo, New

Centaur, LLC, Hoosier Park, LLC and the Reorganized Debtors shall be entitled to issue non-

voting securities, in their sole discretion, and solely in accordance with the terms of the Plan

Documents.

V.      Designation of Managers, General Partners and Officers (11 U.S.C. § 1123(a)(7)).

The Plan complies fully with the requirements of section 1123(a)(7) of the Bankruptcy Code.

Sections 8.7 and 8.8 of the Plan provide for the selection of the initial managers and general

partners, as applicable, and officers of each of NewCo, New Centaur, LLC, Hoosier Park, LLC

21

and the Reorganized Debtors.  Under Section 8.8, of the Plan, certain of the current management and officers of the Debtors, respectively, will continue their service.  From and after the Effective Date, the officers of each of New Centaur, LLC, Hoosier Park, LLC and the Reorganized Debtors shall be selected and appointed by the respective members, managers and partners of such entities, in accordance with, and pursuant to, the provisions of applicable law and their respective organizational documents.  The officers of NewCo shall be as identified in the Plan Supplement.  Section 9.1 of the Plan provides for the selection of the Litigation Trustee.  All of these provisions are consistent with the interests of the Debtors' stakeholders.

 W. Additional Plan Provisions (11 U.S.C. § 1123(b)).  The Plan's provisions are appropriate and consistent with the provisions of the Bankruptcy Code.

 X. Debtors' Compliance with the Bankruptcy Code (11 U.S.C. § 1129(a)(1) and (2)).  The Plan complies fully with the requirements of section 1129(a)(1) of the Bankruptcy Code and applicable provisions of title 11, including, specifically, sections 1125 and 1126 of the Bankruptcy Code, the Bankruptcy Rules and the Disclosure Statement Order governing notice, disclosure and solicitation in connection with the Plan, the Disclosure Statement, the Plan Documents, the Notice of Plan Modifications and all other matters considered by this Bankruptcy Court in connection with the Chapter 11 Cases.  Pursuant to section 1129(a)(2) of the Bankruptcy Code, the Debtors have complied with the applicable provisions of title 11, including, specifically, sections 1125 and 1126 of the Bankruptcy Code, the Bankruptcy Rules and the Disclosure Statement Order governing notice, disclosure and solicitation in connection with the Plan, the Disclosure Statement, the Plan Documents, the Notice of Plan Modifications and all other matters considered by this Bankruptcy Court in connection with the Chapter 11 Cases.

Y.      <u>Plan Proposed in Good Faith (11 U.S.C. § 1129(a)(3))</u>.  The Plan complies fully with the requirements of section 1129(a)(3) of the Bankruptcy Code.  Having examined the totality of the circumstances surrounding the Plan and the Settlement, this Bankruptcy Court has determined that the Plan was proposed in good faith and not by any means forbidden by law.  The Plan achieves the rehabilitative and reorganizational goals of the Bankruptcy Code by restructuring the Debtors' obligations, effectuating the Settlement, and providing the means through which the Debtors' businesses may operate as a viable enterprise.  Attendant to this operation of the enterprise is the ability to preserve jobs and continue business operations through the Reorganized Debtors.  The Plan is the result of extensive arms'-length discussions, debate and/or negotiations among the Debtors and certain key stakeholders and is supported by many creditors and other parties in interest in these Chapter 11 Cases.  It is clear that the Plan promotes the rehabilitative objectives and purposes of the Bankruptcy Code.

Z.      <u>Payment for Services or Costs and Expenses (11 U.S.C. § 1129(a)(4))</u>.  The Plan complies fully with the requirements of section 1129(a)(4) of the Bankruptcy Code.  <u>Section 6.2</u> of the Plan clearly provides that each Professional Person who holds or asserts a Fee Claim will be required to file with this Bankruptcy Court, and serve upon all parties required to receive notice, a Fee Application within forty-five (45) days after the Effective Date.  Failure to file and serve such notice timely and properly results in the Fee Claim being forever barred and discharged.  A Fee Claim in respect of which a Fee Application has been properly filed and served pursuant to <u>Section 6.2</u> of the Plan will become an Allowed Administrative Claim only to the extent allowed by an order of this Bankruptcy Court.  Pursuant to <u>Section 17.16</u> of the Plan, no award or reimbursement of attorneys' fees or related expenses or disbursements will be allowed on, or in connection with, any Claims, <u>except</u> as set forth in the Plan or as ordered by

23

this Bankruptcy Court. This Bankruptcy Court previously approved interim application procedures under section 331 of the Bankruptcy Code, pursuant to which this Bankruptcy Court may authorize and approve the payment of certain fees and expenses of professionals retained in the Chapter 11 Cases. All such fees and expenses, if and to the extent they may be approved on an interim basis, as well as all other accrued fees and expenses of professionals through the Effective Date, remain subject to final review for reasonableness by this Bankruptcy Court under applicable provisions of the Bankruptcy Code. The foregoing procedures for this Bankruptcy Court's review and ultimate determination of fees and expenses paid satisfy the objectives of section 1129(a)(4) of the Bankruptcy Code.

AA.    Board of Managers, Managers, General Partners, Officers and Insiders (11 U.S.C. §1129(a)(5)). The Plan complies fully with the requirements of section 1129(a)(5) of the Bankruptcy Code. The initial managers and general partners, as applicable, and officers for each of the Debtors will be determined in accordance with the process described in Sections 8.7 and 8.8 of the Plan. Section 8.7 of the Plan states that from and after the Effective Date, (a) NewCo shall be managed by the Board of Managers, (b) NewCo shall be the manager of New Centaur, LLC, (c) New Centaur, LLC shall be the manager of all of its subsidiaries that are limited liability companies and (d) the general partners of New Centaur, LLC's subsidiaries that are limited partnerships shall manage such partnerships. Thereafter, the managers and general partners, as applicable, of NewCo, New Centaur, LLC, Hoosier Park, LLC and the Reorganized Debtors shall be selected and determined in accordance with the provisions of the organizational documents of NewCo, New Centaur, LLC, Hoosier Park, LLC and such Reorganized Debtors and applicable law. The members of the Board of Managers shall include the Persons identified in the Plan Supplement. The nature of the compensation of any insiders will include base salary,

24

entitlement to severance and amounts such insiders will be entitled to receive under the Management Incentive Plan and the Long Term Employment Agreements (the terms of which were filed with this Bankruptcy Court as a Plan Document). Such compensation is reasonable and appropriate and should be approved. The identification of the proposed Board of Managers, members, or general partners, as applicable, and officers of the Reorganized Debtors and compensation for any insiders satisfies section 1129(a)(5) of the Bankruptcy Code.

BB.    No Rate Changes (11 U.S.C. § 1129(a)(6)). The Plan complies fully with the requirements of section 1129(a)(6) of the Bankruptcy Code. Pursuant to Section 17.21 of the Plan, the Plan does not provide for the change of any rate that is within the jurisdiction of any governmental regulatory commission after the occurrence of the Effective Date. Therefore, the provisions of section 1129(a)(6) of the Bankruptcy Code are inapplicable, and thus, satisfied.

CC.    Best Interests of Creditors (11 U.S.C. § 1129(a)(7)). The Plan complies fully with the requirements of section 1129(a)(7) of the Bankruptcy Code. As set forth fully in the liquidation analysis and its accompanying notes attached as Exhibit "G" to the Disclosure Statement (the "**Liquidation Analysis**"), the Zelin Declaration in Support of the Plan and by the evidence adduced at the Confirmation Hearing, the "best interests" test is satisfied as to all impaired classes of Claims and Equity Interests. Furthermore, a liquidation under chapter 7 as set forth in the Liquidation Analysis would profoundly and adversely affect the ultimate proceeds available for distribution to all holders of Allowed Claims in the Chapter 11 Cases. Moreover, the increased costs associated with a liquidation under chapter 7 would substantially reduce the proceeds available for distribution. These costs would include, among other things, administrative fees and costs payable to a trustee in bankruptcy and professional advisors to such trustee. Additionally, consummation of the Plan is not likely to be followed by liquidation or the

need for further financial reorganization. In the context of the erosion of the asset values and the increased costs and delay associated with the administration of a chapter 7 case, confirmation of the Plan provides each rejecting creditor and interest holder with a recovery that is not less than such holder would receive in a chapter 7 liquidation of the Debtors. Based upon the foregoing, the Plan satisfies the requirements of section 1129(a)(7) of the Bankruptcy Code. Therefore, the "best interests" test is satisfied with respect to each of these classes.

      DD.    <u>Acceptance by Impaired Classes (11 U.S.C. § 1129(a)(8))</u>. Class 2 – First Lien Claims, Class 3 – Second Lien Claims, Class 5 – Valley View Downs Unsecured Claims, Class 6 – General Unsecured Claims (as a result of the Bankruptcy Court's approval of the Churchill Settlement) and Class 7 – Convenience Claims have voted to accept the Plan. Class 8 – Intercompany Claims has neither accepted nor rejected the Plan. Class 9 – Equity Interests is deemed to have rejected the Plan. Accordingly, section 1129(a)(8) of the Bankruptcy Code has not and cannot be satisfied. The Plan is nonetheless confirmable because it satisfies the nonconsensual confirmation provisions of section 1129(b) of the Bankruptcy Code, as set forth below.

      EE.    <u>Treatment of Administrative, Priority and Tax Claims (11 U.S.C. § 1129(a)(9))</u>. The Plan complies fully with the requirements of section 1129(a)(9) of the Bankruptcy Code. Consistent with section 1129(a)(9)(A) of the Bankruptcy Code, on the Distribution Date, each holder of an Allowed Administrative Expense Claim shall receive (i) the amount of such holder's Allowed Expense Administrative Claim in one Cash payment, or (ii) such other treatment as may be agreed upon in writing by the Debtors and such holder; <u>provided</u>, that such treatment shall not provide a return to such holder having a present value as of the Effective Date in excess of such holder's Allowed Administrative Claim; <u>provided further</u>, that an Administrative Claim

26

representing a liability incurred in the ordinary course of business of the Debtors may be paid at the Debtors' election in the ordinary course of business. As required by section 1129(a)(9)(B) of the Bankruptcy Code, Section 5.1 of the Plan provides that, pursuant to section 1124 of the Bankruptcy Code, all legal, equitable, and contractual rights of each holder of an Allowed Priority Non-Tax Claim in respect of such Claim shall be fully reinstated and retained, and such holder of an Allowed Priority Non-Tax Claim shall be paid in full (including any amounts to which such holder is entitled pursuant to section 1124(2) of the Bankruptcy Code) in accordance with such reinstated rights on the Effective Date. Consistent with section 1129(a)(9)(C) of the Bankruptcy Code, Section 6.3 of the Plan provides that each holder of an Allowed Priority Tax Claim will receive in full satisfaction of such holder's Allowed Priority Tax Claim, (a) on the Distribution Date, the amount of such holder's Allowed Priority Tax Claim in Cash, or (b) such other treatment as may be agreed upon in writing by such holder; provided that such agreed-upon treatment may not provide such holder with a return having a present value as of the Effective Date that is greater than the amount of such holder's Allowed Priority Tax Claim. As set forth in Section 6.3 of the Plan, pursuant to this Confirmation Order, each holder of an Allowed Priority Tax Claim is permanently enjoined and prohibited from commencing or continuing any action or proceeding against any responsible person or officer of the Debtors that otherwise would be liable to such holder for payment of an Allowed Priority Tax Claim so long as the Debtors are in compliance with Section 6.3 of the Plan. Based upon the foregoing, the Plan satisfies the requirements of section 1129(a)(9) of the Bankruptcy Code.

FF.     Acceptance by Impaired Classes (11 U.S.C. § 1129(a)(10)). The Plan complies fully with the requirements of section 1129(a)(10) of the Bankruptcy Code. For each of the Debtors, at least one class of impaired creditors accepted the Plan. Specifically, Class 2 – First

Lien Claims has voted to accept the Plan as to each Debtor.

GG.    Feasibility (11 U.S.C. § 1129(a)(11)).  The Plan complies fully with the requirements of section 1129(a)(11) of the Bankruptcy Code.  Based on the Record before this Bankruptcy Court, this Bankruptcy Court concludes that the Debtors will have sufficient means to meet all of their obligations under the Plan.  The Record establishes that the Reorganized Debtors will emerge from bankruptcy as a viable, financially healthy business enterprise, unlikely to be in need of further financial reorganization.  Based on the foregoing findings and conclusions, the Plan satisfies the feasibility standard of section 1129(a)(11).

HH.    Payment of Fees (11 U.S.C. § 1129(a)(12)).  The Plan complies fully with the requirements of section 1129(a)(12) of the Bankruptcy Code.  Section 17.4 of the Plan provides for the payment of all statutory fees by the Debtors on or before the Effective Date.  The Plan accordingly satisfies section 1129(a)(12) of the Bankruptcy Code.

II.    Payment of Retiree Benefits (11 U.S.C. § 1129(a)(13)).  Pursuant to Section 17.14 of the Plan, on or after the Effective Date, all retiree benefits,[5] if any, will continue to be paid in accordance with applicable law.  The Plan accordingly satisfies section 1129(a)(13) of the Bankruptcy Code.

JJ.    Miscellaneous Provisions (11 U.S.C. §§ 1129(a)(14)-(16)).  Sections 1129(a)(14)-(16) are inapplicable as the Debtors (i) have no domestic support obligations (1129(a)(14)), (ii) are not individuals (1129(a)(15)) and (iii) are for-profit businesses (1129(a)(16)).

KK.    Nonconsensual Confirmation (Cramdown) of Non-Accepting Classes (11 U.S.C.

---

[5]    As defined in section 1114 of the Bankruptcy Code, "Retiree Benefits" means payments to any entity or person for the purpose of providing or reimbursing payments for retired employees and their spouses and dependants, for medical, surgical, or hospital care benefits, or benefits in the event of sickness, accident, disability, or death under any plan, fund, or program (through the purchase of insurance or otherwise) maintained or established in whole or in part by the debtor prior to filing a petition commencing a case under the Bankruptcy Code.

WM1A 988806v1 02/18/11

§ 1129(b)).  The Plan does not discriminate unfairly and is fair and equitable to each Class of

Claims or Equity Interests that has not accepted the Plan, specifically including Class 8 –

Intercompany Claims and Class 9 – Equity Interests.  Further, within their respective Classes,

there exists no unfair discrimination of any of the holders of Claims or Equity Interests.  Finally,

the Plan does not violate the "absolute priority" rule contained in section 1129(b)(2) of the

Bankruptcy Code.

      LL.    Confirmation of Only One Plan (11 U.S.C. § 1129(c)).  The Plan (including

previous versions thereof) is the only plan that has been filed in these Chapter 11 Cases which

has been found to satisfy the requirements of subsections (a) and (b) of section 1129 of the

Bankruptcy Code.  Accordingly, the requirements of section 1129(c) of the Bankruptcy Code

have been satisfied.

      MM.    Principal Purpose of Plan (11 U.S.C. § 1129(d)).  The Plan complies fully with

the requirements of section 1129(d) of the Bankruptcy Code.  The principal purpose of the Plan

is not the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act

of 1933.

      NN.    Satisfaction of Confirmation Requirements.  The Plan satisfies all of the

requirements for confirmation set forth in section 1129 of the Bankruptcy Code and should be

confirmed.

      OO.    Good Faith Solicitation (11 U.S.C. § 1125(e)).  Based on the record in these

Chapter 11 Cases, the Debtors and each of their respective current or former officers, directors,

members, partners, general partners, employees, agents, attorneys, advisors, accountants,

restructuring consultants, financial advisors, and investment bankers have acted in "good faith"

within the meaning of section 1125(e) of the Bankruptcy Code and in compliance with the

applicable provisions of the Bankruptcy Code and Bankruptcy Rules in connection with all of their respective activities relating to the solicitation of acceptances to the Plan.

PP.    <u>Conditions Precedent to Confirmation</u>.  Upon entry of this Confirmation Order, all conditions precedent to confirmation of the Plan contained in <u>Section 15.1</u> of the Plan, if not waived pursuant to <u>Section 15.3</u> of the Plan, shall be, and hereby are, satisfied.

QQ.    <u>Plan Documents</u>.  The Plan Documents, as they may be amended as contemplated and permitted by the Plan, have been negotiated in good faith and are, in the judgment of the parties, necessary and appropriate to effectuate the Plan and this Bankruptcy Court so finds.

RR.    <u>Plan Consolidation</u>.  The consolidation of the Debtors for purposes of voting on the Plan, confirmation of the Plan and making Plan Distributions is appropriate.

SS.    <u>The Challenges</u>.  The Challenges asserted by the Committee in Adversary Proceeding No. 10-55358 (KJC) have been compromised and are resolved by this Confirmation Order granting the Settlement Motion and approving the Settlement and that certain Settlement Agreement, dated December 7, 2010 (the **"Settlement Agreement"**), by and among the Debtors, the Committee and the Prepetition First Lien Agent.

## **ORDER**

### **Confirmation of the Plan**

1.    Pursuant to section 1127 of the Bankruptcy Code, the Modifications are approved, and pursuant to section 1129 of the Bankruptcy Code, the Plan is hereby CONFIRMED.  Each of the Plan Objections not otherwise withdrawn, resolved or otherwise disposed of, is OVERRULED on the merits and denied.  All withdrawn Plan Objections are deemed withdrawn with prejudice.

30

2.      Notice of the Confirmation Hearing complied with the terms of the Disclosure Statement Order, was appropriate and satisfactory based on the circumstances of the Chapter 11 Cases and was in compliance with the Bankruptcy Code and the Bankruptcy Rules.

3.      The following are hereby incorporated by reference into and are an integral part of this Confirmation Order: (i) the Plan, (ii) the exhibits to the Plan and (iii) the Plan Documents. The failure to reference any particular Plan Document, or any provision of a Plan Document or the Plan in this Confirmation Order will have no effect on this Bankruptcy Court's approval and authorization of, or the validity, binding effect or enforceability of, the Plan and the Plan Documents in their entirety.

4.      Each of the Plan Documents, _including_, without limitation, the First Lien Take Back Paper, the Litigation Trust Declaration, the Long Term Employment Agreements, the terms of the Management Incentive Plan, the NewCo Operating Agreement, the NewCo PIK Notes, the Stapled NewCo PIK Notes and the NewCo Warrants is hereby approved.

5.      The provisions of the Plan, the Plan Documents and this Confirmation Order, _including_ the findings of fact and conclusions of law set forth herein, are each nonseverable and mutually dependent.

### Approval of the Settlement

6.      Pursuant to Bankruptcy Rule 9019, the Settlement Motion is GRANTED, and the Settlement is approved as being fair, achieved at arms'-length and in good faith, reasonable and in the best interests of the Debtors' estates and their creditors  The Settlement Agreement is approved, and each of the Debtors and the Committee are authorized to take action to implement, execute and effectuate the Settlement Agreement and the Settlement. The Settlement Objection, to the extent not withdrawn, resolved or otherwise disposed of, is OVERRULED on the merits and denied. The Settlement Objection, if withdrawn, is deemed withdrawn with prejudice. This

31

Court shall and hereby does retain jurisdiction with respect to all matters arising from, relating to, or in connection with the Settlement or the Settlement Agreement.

7.      Notice of the Settlement and the Notice of Plan Modifications was appropriate and satisfactory based on the circumstances of the Chapter 11 Cases and was in compliance with the Bankruptcy Code and the Bankruptcy Rules, and no further or additional notice of the Settlement need be provided.

## Classification and Treatment

8.      All Claims and Equity Interests shall be, and hereby are, classified and treated as set forth in the Plan.  The Plan's classification scheme shall be, and hereby is, approved.

9.      The treatment of all Claims and Equity Interests as provided in the Plan and the Plan Documents shall be, and hereby is, approved.

## Administrative Claims

10.      The holder of an Administrative Expense Claim, other than (i) a Fee Claim, (ii) a liability incurred and payable after the Petition Date in the ordinary course of business by a Debtor (and not past due), (iii) a Section 503(b)(9) Claim or (iv) an Administrative Expense Claim that has been Allowed on or before the Effective Date, must file with this Bankruptcy Court and serve on the Debtors, the Committee and the U.S. Trustee, notice of such Administrative Expense Claim within forty (40) days after service of Notice of Confirmation or such other specific date as may be established by this Bankruptcy Court.  Such notice must include at a minimum (w) the name of the Debtor(s) which are purported to be liable for the Claim, (x) the name of the holder of the Claim, (y) the amount of the Claim and (z) the basis of the Claim (including any documentation evidencing or supporting such Claim).  **The failure to file a notice of an Administrative Expense Claim on or before the Administrative Expense Claims Bar Date and the failure to serve such notice timely and properly shall result in the**

32

**Administrative Expense Claim being forever barred, disallowed and discharged without further order of this Bankruptcy Court.**

11.     An Administrative Expense Claim (other than a Fee Claim or Section 503(b)(9) Claim) with respect to which notice has been properly filed and served pursuant to <u>Section 6.2(a)</u> of the Plan, or a Section 503(b)(9) Claim with respect to which a request for allowance has been properly filed and served pursuant to <u>Section 6.2(c)</u> of the Plan, shall become an Allowed Administrative Expense Claim if no objection is filed within sixty (60) days after the later of (i) the Effective Date or (ii) the date of service of the applicable notice of Administrative Expense Claim or such later date as may be approved by this Bankruptcy Court on motion of a party in interest, without notice or a hearing.  If an objection is filed within such 60-day period (or any extension thereof), the Administrative Expense Claim shall become an Allowed Administrative Expense Claim only to the extent Allowed by Final Order.  A Fee Claim in respect of which a Fee Application has been properly filed and served pursuant to <u>Section 6.2(b)</u> of the Plan shall become an Allowed Administrative Expense Claim only to the extent Allowed by Final Order.

12.     Each Professional who holds or asserts a Fee Claim shall be required to file with this Bankruptcy Court, and serve on all parties required to receive notice, a Fee Application within forty-five (45) days after the Effective Date or such other specific date as may be established by this Bankruptcy Court.  **The failure to file timely and serve such fee application shall result in the Fee Claim being forever barred and discharged.**  A Fee Claim in respect of which a Fee Application has been properly filed and served pursuant to <u>Section 6.2(b)</u> of the Plan shall become an Allowed Administrative Claim only to the extent allowed by order of this Bankruptcy Court.

33

13.     All Intercompany Financing Claims shall, notwithstanding the occurrence of the Effective Date, remain outstanding and be retained by the Debtors or their successors under the Plan or be paid in full in Cash on the Effective Date.

### Enforceability of Plan and Plan Documents

14.     Subject to the conditions precedent set forth in Section 15.2 of the Plan, pursuant to sections 1123(a), 1141(a) and 1142 of the Bankruptcy Code and the provisions of this Confirmation Order, the Plan and all Plan-related documents (including, but not limited to, the Plan Documents) shall be valid, binding and enforceable notwithstanding any otherwise applicable nonbankruptcy law as of the Effective Date of the Plan.  The First Lien Take Back Documents, NewCo PIK Notes, Stapled NewCo PIK Notes and all documents, instruments and agreements executed and entered into in connection with the NewCo PIK Notes and Stapled NewCo PIK Notes to which NewCo, New Centaur, LLC, Hoosier Park, LLC and the Reorganized Debtors are parties constitute the valid and binding obligations of such parties, enforceable against NewCo, New Centaur, LLC, Hoosier Park, LLC and the Reorganized Debtors in accordance with their terms.  All liens and security interests created pursuant to the First Lien Take Back Documents, NewCo PIK Notes and all documents, instruments and agreements executed and entered into in connection with the NewCo PIK Notes shall be valid, binding, enforceable, and effective.  Each of the Plan Documents (to the extent not already approved by order of this Bankruptcy Court) is hereby approved.

15.     The Debtors may modify the Plan at any time after confirmation and before substantial consummation, provided that the Plan, as modified, meets the requirements of sections 1122 and 1123 of the Bankruptcy Code and this Bankruptcy Court, after notice and a hearing, confirms the Plan as modified, under section 1129 of the Bankruptcy Code, and the

34

circumstances warrant such modifications, provided further, that any modification of the Plan

between the Confirmation Date and the Effective Date shall be subject to the prior consent of the

Prepetition First Lien Agent and Required First Lien Lenders, and, in the case of any

modification that affects Section 6.2(b) of the Plan or Section 6.2(d) of the Plan (as it relates to

Fee Claims) or the Plan Distributions to holders of Allowed Valley View Downs Unsecured

Claims, Allowed General Unsecured Claims or Allowed Convenience Claims or necessary to

effectuate, or that would be inconsistent with the terms of, the Settlement, the Committee.  A

holder of a Claim that has accepted the Plan shall be deemed to have accepted such Plan as

modified if the proposed alteration, amendment or modification does not materially and

adversely change the treatment of the Claim or Equity Interest of such holder.  Any modification

of the Litigation Trust Declaration between the Confirmation Date and the Effective Date shall

be subject to the prior consent of the Prepetition First Lien Agent, Required First Lien Lenders

and Committee.  Any modification of the NewCo PIK Notes, Stapled NewCo PIK Notes,

NewCo Warrants, NewCo Operating Agreement, terms of the Long Term Employment

Agreements or terms of the Management Incentive Plan, between the Confirmation Date and the

Effective Date, shall be subject to the prior consent of the Prepetition First Lien Agent and

Required First Lien Lenders.

### Authorization to Implement the Plan

16.     Upon the entry of this Confirmation Order, the Debtors are authorized to take or

cause to be taken all corporate actions necessary or appropriate to implement all provisions of,

and to consummate, the Plan prior to, on and after the Effective Date, and all such actions taken

or caused to be taken shall be deemed to have been authorized and approved by this Bankruptcy

Court without further approval, act or action under any applicable law, order, rule or regulation,

including, without limitation, any action required by the officers, members, managers or general

35

or limited partners of the Debtors and the Reorganized Debtors, as the case may be, _including,_
among other things, (i) the adoption or amendment of any organizational documents; (ii) the
termination and cancellation of any Original Debt Documents or any other outstanding
instrument, document or agreement evidencing Debt Claims as required by the Plan; (iii) the
issuance of the Plan Securities; (iv) all transfers of Assets that are to occur pursuant to the Plan;
(v) the incurrence of all obligations contemplated by the Plan and the making of all Plan
Distributions; (vi) the reinstatement and assumption of all indemnity obligations to the officers,
members, managers and general and limited partners of the Debtors; (vii) the implementation,
execution and effectuation of all settlements and compromises as set forth in or contemplated by
the Plan, _including,_ without limitation, the Settlement; (viii) taking of all actions to preserve and
provide for the prosecution of the Avoidance Actions that are not released pursuant to the
express terms of the Plan; and (ix) entering into any and all transactions, contracts or
arrangements permitted by applicable law, order, rule or regulation; _provided,_ _however,_ that such
actions taken following entry of this Confirmation Order but prior to the Effective Date shall be
agreeable to the Prepetition First Lien Agent and Required First Lien Lenders and such actions
taken on or after the Effective Date shall be agreeable to the Board of Managers.  Such power
and authority may be taken, as provided in the Plan, by this Confirmation Order, or by separate
order of this Bankruptcy Court, by the officers of the Debtors with like effect as if exercised and
taken by unanimous action of the shareholders, managers, members or general partners of the
Debtors.

17.     The approvals and authorizations specifically set forth in this Confirmation Order
are not intended to limit the authority of any Debtor or any officer thereof to take any and all

actions necessary or appropriate to implement, effectuate and consummate any and all documents or transactions contemplated by the Plan or this Confirmation Order.

18.    The officers of the Debtors and the Reorganized Debtors, as the case may be, are authorized and directed to do all things and to execute and deliver all agreements, documents, instruments, notices and certificates as are contemplated by the Plan and to take all necessary action required in connection therewith, in the name of and on behalf of the Debtors.

## Cancellation of Instruments and Securities

19.    Upon the occurrence of the Effective Date, the Original Debt Documents shall be cancelled and annulled (along with such other documents appurtenant thereto) as to all Debtors other than Centaur Colorado, LLC.  Upon the occurrence of the Centaur Colorado, LLC Effective Date, the Original Debt Documents shall be cancelled and annulled (along with such other documents appurtenant thereto) as to Centaur Colorado, LLC.  Immediately upon the completion of all Plan Distributions to the holders of Allowed First Lien Claims and Allowed Second Lien Claims, Centaur, LLC and the Reorganized Debtors shall be authorized and directed (without further approval, act or other determination under applicable law, regulation, order or rule) to take such action as shall be necessary or appropriate to terminate and extinguish all of the Debtors' obligations under the Original Debt Documents.

20.    As a condition to receiving any Plan Distribution, on or before the Distribution Date, the holder of an Allowed Claim evidenced by a certificate, instrument or note, other than any such certificate, instrument or note that is being reinstated or being left unimpaired under the Plan, shall (i) surrender such certificate, instrument or note representing such Claim, and (ii) execute and deliver such other documents as may be necessary to effectuate the Plan in the sole determination of the Disbursing Agent.  Such certificate, instrument or note shall thereafter be cancelled and extinguished.  The Disbursing Agent shall have the right to withhold any Plan

Distribution to be made to or on behalf of any holder of such Claims unless and until (a) such certificates, instruments or notes are surrendered, or (b) any relevant holder provides to the Disbursing Agent an affidavit of loss or such other documents as may be required by the Disbursing Agent together with an appropriate indemnity in the customary form. Any such holder who fails to surrender such certificates, instruments or notes, or otherwise fails to deliver an affidavit of loss and indemnity prior to the second anniversary of the Effective Date, shall be deemed to have forfeited its Claims and shall not participate in any Plan Distribution. All property in respect of such forfeited Claims shall revert to New Centaur, LLC, Hoosier Park, LLC and the Reorganized Debtors, as applicable. On the Effective Date, the existing Equity Interests in the Debtors shall be cancelled.

### Separate Existence/Revesting and Transfer of Assets

21.    Except as provided in Section 8.2(c) of the Plan, the Debtors shall continue to exist, as Reorganized Debtors, after the Effective Date as separate entities, with all the powers available to such legal entities, in accordance with applicable law and pursuant to their constituent documents, as modified by the Plan.

22.    The restructuring transactions and conveyances, assignments and transfers of property set forth in Section 8.2 of the Plan (collectively, the "**Transfers**") shall occur and be implemented pursuant to sections 365 and 1123(a)(5) of the Bankruptcy Code on or prior to the Effective Date; provided, however, that in each case the documents necessary to effect such actions shall be in form and substance satisfactory to the Prepetition First Lien Agent and Required First Lien Lenders and shall be consistent with the requirements of the Plan and the Sale Order.

**Retention of Causes of Action**

23.     Except as set forth in Sections 17.1 and 17.2 of the Plan, all Causes of Action other than the Designated Avoidance Actions belonging to any of the Debtors shall, upon the occurrence of the Effective Date, be vested in New Centaur, LLC, Hoosier Park, LLC and the Reorganized Debtors for the benefit of the Debtors and their Estates.  Except as set forth in Sections 17.1 and 17.2 of the Plan, the rights of New Centaur, LLC, Hoosier Park, LLC and the Reorganized Debtors to commence, prosecute or settle such Causes of Action other than the Designated Avoidance Actions shall be preserved notwithstanding the occurrence of the Effective Date.

24.     No Person may rely on the absence of a specific reference in the Plan or the Disclosure Statement to any Cause of Action against them as any indication that the Debtors will not pursue any and all available Causes of Action against them.  The Debtors and the Estates expressly reserve all rights to prosecute any and all Causes of Action against any Person, except as otherwise provided in the Plan.  Unless any Causes of Action against a Person are expressly waived, relinquished, exculpated, released, compromised or settled in the Plan or a Final Order, the Debtors expressly reserve all Causes of Action, for later adjudication, and therefore, no preclusion doctrine, including, without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise) or laches, shall apply to such Causes of Action upon or after the confirmation or consummation of the Plan.

25.     Except as set forth in Sections 17.1 and 17.2 of the Plan, nothing in the Plan or this Confirmation Order shall be deemed a waiver or relinquishment of any Claim, Cause of Action, right of setoff, or other legal or equitable defense which the Debtors had immediately prior to the Petition Date, against or with respect to any Claims left unimpaired by the Plan, except for avoidance actions pursuant to section 547 of the Bankruptcy Code (provided,

39

however, that the Debtors' right to object to any Claim pursuant to section 502(d) of the Bankruptcy Code is fully preserved, including, without limitation, to the right to object to any Claim of a recipient of a transfer that is avoidable under section 547 of the Bankruptcy Code).

### Disbursing Agent/Distributions

26.     Upon the occurrence of the Effective Date, New Centaur, LLC, Hoosier Park, LLC and the Reorganized Debtors and, in respect of the beneficiaries of the Litigation Trust, the Litigation Trustee, shall be appointed to serve as the Disbursing Agent and shall have all powers, rights, duties and protections afforded the Disbursing Agent under the Plan.  Pursuant to the terms and provisions of and, except as otherwise provided in the Plan, the Disbursing Agent shall (i) make the Plan Distributions contemplated under the Plan, this Confirmation Order, or any other relevant Final Order, and (ii) perform any other act or task that is or may be delegated to the Disbursing Agent under the Plan, including, without limitation, the provisions of the Plan that authorize the Litigation Trustee to act as Disbursing Agent in respect to the distributions to the beneficiaries of the Litigation Trust.

27.     Subject to Bankruptcy Rule 9010, any Plan Distribution or delivery to a holder of an Allowed Claim shall be made at the address of such holder as set forth (i) in the Schedules, (ii) on the proof of Claim filed by such holder, (iii) in any notice of assignment filed with this Bankruptcy Court with respect to such Claim pursuant to Bankruptcy Rule 3001(e), or (iv) in any notice served by such holder giving details of a change of address.  If any Plan Distribution is returned to the Disbursing Agent as undeliverable, no Plan Distributions shall be made to such holder unless the Disbursing Agent is notified of such holder's then current address within ninety (90) days after such Plan Distribution was returned.  After such date, if such notice was not provided, a holder shall have forfeited its right to such Plan Distribution, and the undeliverable Plan Distributions shall be returned to New Centaur, LLC, Hoosier Park, LLC and the

40

Reorganized Debtors, as applicable. Supplemental Plan Distributions may be made from time to time at the discretion of the Disbursing Agent.

28.    Except as otherwise ordered by this Bankruptcy Court or as provided in the Plan, the amount of any reasonable fees and expenses incurred (or to be incurred) by the Disbursing Agent on or after the Effective Date (including, without limitation, taxes) shall be paid when due. Professional fees and expenses incurred by the Disbursing Agent from and after the Effective Date in connection with the effectuation of the Plan shall be paid in the ordinary course of business. Any dispute regarding compensation shall be resolved by agreement of the parties or if the parties are unable to agree, as determined by this Bankruptcy Court.

29.    Interest accrued after the Petition Date will accrue and be paid on Claims only to the extent specifically provided for in the Plan, this Confirmation Order or as otherwise required by this Bankruptcy Court or by applicable law; provided, however, pursuant to the Prepetition Intercreditor Agreement, interest, fees, expenses, and other charges shall continue to accrue from the Petition Date on the First Lien Claims and such amounts shall, if the Prepetition Second Lien Claimholders receive any proceeds from any collateral securing the First Lien Claims (other than the Plan Distributions to holders of Allowed Second Lien Claims pursuant to Section 5.3 of the Plan and any subsequent distribution on account of any Litigation Trust Interest), be payable by the Prepetition Second Lien Claimholders to the Prepetition First Lien Claimholders, pursuant to the Prepetition Intercreditor Agreement, until the First Lien Obligations (as defined in the Prepetition Intercreditor Agreement) have been paid in full.

30.    Except as set forth in the Plan or as ordered by this Bankruptcy Court, no award or reimbursement of attorneys' fees or related expenses or disbursements shall be allowed on, or in connection with, any Claim.

WM1A 988806v1 02/18/11

31.     For purposes of calculating the Plan Distributions to the holders of Allowed First Lien Claims, the Prepetition First Lien Claimholders shall have an Allowed First Lien Claim against each Debtor as of the applicable Petition Date equal to the amount of the First Lien Indebtedness (as defined in the Final Cash Collateral Order) without deduction for any Plan Distributions received from any other Debtor.

32.     For purpose of calculating the Plan Distributions to the holders of Allowed Second Lien Claims, the Prepetition Second Lien Claims shall have an Allowed Second Lien Claim against each Debtor as of the applicable Petition Date equal to the amount of the Second Lien Indebtedness (as defined in the Final Cash Collateral Order) without deduction for any Plan Distributions received from any other Debtor.

**Establishment, Capitalization and Administration of the Litigation Trust**

33.     The Litigation Trust Declaration, substantially in the form filed as a Plan Document, is hereby approved.

34.     Notwithstanding any prohibition of assignability under applicable non-bankruptcy law, on the Effective Date, the Debtors shall be deemed to have automatically transferred to the Litigation Trust all of their right, title and interest in and to the Designated Avoidance Actions. In accordance with section 1141 of the Bankruptcy Code, the transfer of the Designated Avoidance Actions shall be free and clear of all Claims, encumbrances, mortgages, deed of trust, liens, pledges or security interests, and for the benefit of the holders of Litigation Trust Interests. The funding of the Litigation Trust with the Administrative Fund shall likewise be free and clear of all Claims, encumbrances, mortgages, deeds of trust, liens, pledges, or security interests (other than the Claim and interest of the Prepetition First Lien Agent described in Section 9.2(b) of the

42

Plan and the Litigation Trust Declaration), and for the benefit of the holders of Litigation Trust Interests.

35.     The Litigation Trustee and the Debtors are authorized to execute and deliver and empowered to perform under, consummate and implement, the Litigation Trust Declaration, together with all additional instruments and documents that may be reasonably necessary or desirable to implement the Litigation Trust Declaration, and to take all further actions as may be reasonably requested by the Litigation Trustee for the purpose of assigning, transferring, granting, conveying, conferring or reducing to possession the Trust Assets (as defined in the Litigation Trust Declaration) to the Litigation Trust, or as may be necessary or appropriate to the performance of the obligations as contemplated by the Litigation Trust Declaration.

36.     The selection of the Litigation Trustee in the manner set forth in Section 9.1(b) of the Plan is hereby approved.  The appointment of FTI Consulting, Inc. or its designee as the Litigation Trustee is hereby approved.

37.     The Litigation Trustee shall be compensated in the manner set forth in and consistent with the Litigation Trust Declaration.

38.     The Litigation Trustee shall have all powers, rights, duties and protections afforded to the Litigation Trustee under the Plan, this Confirmation Order, the Litigation Trust Declaration and any other applicable Plan Document, including, without limitation, in respect of identifying holders of Litigation Trust Interests and making distributions consistent with the terms of the Litigation Trust Declaration.

39.     The Litigation Trustee shall have the power to administer the assets of the Litigation Trust in a manner consistent with the Litigation Trust Declaration and the Litigation Trustee shall be the estate representative, without limitation, pursuant to section 1123(b)(3) of

43

the Bankruptcy Code, to investigate, prosecute, compromise, settle or otherwise dispose of, any and all Designated Avoidance Actions transferred to the Litigation Trust. Without limiting the generality of the foregoing, the Litigation Trustee shall (i) hold, administer and prosecute the assets of the Litigation Trust and any proceeds thereof, (ii) have the power and authority to retain, as an expense of the Litigation Trust, attorney, advisors, other professionals and employees as may be appropriate to perform the duties required of the Litigation Trustee hereunder or in the Litigation Trust Declaration and to request Persons to assist the Litigation Trustee in the performance of its responsibilities pursuant to the terms of the Plan, (iii) make periodic distributions as provided in the Plan and Litigation Trust Declaration, and (iv) provide periodic reports and updates regarding the status of the administration of the Litigation Trust; provided, however, that the Litigation Trustee shall not be permitted to retain any professionals retained by any of the Debtors, the Prepetition First Lien Claimholders, the Prepetition Second Lien Claimholders or the Committee or Persons that were at any time members of the Committee in connection with these Chapter 11 Cases. The Litigation Trustee shall be deemed a Disbursing Agent under the Plan when making distributions to holders of Litigation Trust Interests pursuant to the Litigation Trust Declaration and may, but shall not be required to, object to, litigate, settle, compromise, or otherwise address Claims relating to Litigation Trust assets and duties otherwise contemplated the Plan and consistent with the Plan.

40.     Neither the entry of this Confirmation Order nor the execution of any of the documents required or contemplated hereunder or by the Plan shall constitute a waiver, estoppel, res judicata, release, relinquishment, abandonment or any other abrogation of any objection, defense, offset or counterclaim by the Litigation Trustee.

44

## Executory Contracts and Unexpired Leases

41.     Except as otherwise provided for in the Plan, on the Effective Date, all executory contracts and unexpired leases of the Debtors shall be, and hereby are, assumed, assumed and assigned, or rejected in accordance with Article XIV of the Plan.

42.     The inclusion of a contract, lease, or other agreement in Section 14.1(a) of the Plan or on Disclosure Statement Schedule 2 or any "Schedule of Assumed Executory Contracts and Unexpired Leases" shall not constitute an admission by the Debtors as to the characterization of whether any such included contract, lease, or other agreement is, or is not, an executory contract or unexpired lease or whether any claimants under any such contract, lease or other agreement are time-barred from asserting Claims against the Debtors.  The Debtors reserve all rights with respect to the characterization of any such agreements.

43.     The assumption and assignment of each of the executory contracts and unexpired leases that is designated to be assumed and assigned as set forth in the Assumption Schedule or as otherwise designated as being assumed and assigned in Section 14.1 of the Plan and for which no timely objection was filed as required by Section 14.1(d) of the Plan is approved pursuant to sections 365(a), (b) and (f) of the Bankruptcy Code and any objections to such assumption and assignment are hereby deemed waived in all respects.  Pursuant to section 365(k) of the Bankruptcy Code, the Debtors shall have no liability for any breach of such assumed and assigned executory contract or lease occurring after such assignment, except as is specifically provided in the Plan.

44.     If a non-Debtor counterparty failed to file and serve an objection, setting forth the basis for the dispute, the alleged correct cure obligation, and any other objection related to the assumption or assumption and assignment of the relevant agreement by no later than ten (10)

45

Business Days prior to the Confirmation Hearing, the cure obligation set forth on the Disclosure

Statement Schedule 2 or any "Schedule of Assumed Executory Contracts and Unexpired Leases"

shall be binding on the non-Debtor counterparty, and the non-Debtor counterparty shall be

deemed to have waived any and all objections to the assumption or assumption and assignment

of the relevant agreement as proposed by the Debtors.

45.     Claims created by the rejection of executory contracts and unexpired leases or the

expiration or termination of any executory contract or unexpired lease prior to the Confirmation

Date must be filed with this Bankruptcy Court and served on the Debtors (i) in the case of an

executory contract or unexpired lease rejected by the Debtors prior to the Confirmation Date, in

accordance with the Bar Date Notice, or (ii) in the case of an executory contract or unexpired

lease that (a) was terminated or expired by its terms prior to the Confirmation Date, or (b) is

rejected pursuant to Article XIV of the Plan, no later than the first Business Day that is at least

thirty (30) days following the Effective Date.  Any such Claims for which a proof of claim is not

filed and served by the deadlines set forth in the Bar Date Notice or Section 14.3 of the Plan, as

applicable, will be forever barred from assertion and shall not be enforceable against the

Reorganized Debtors, their respective Estates, Affiliates or Assets.

## Releases and Exculpations

46.     The releases set forth in Section 17.1 of the Plan and the Section 17.2 Releases

are incorporated herein by reference and shall be, and hereby are, approved, and shall be

effective without further action upon the occurrence of the Effective Date.

47.     Except as otherwise provided in Section 11.3 of the Plan, the Disbursing Agent

and Litigation Trustee, together with each of their respective officers, members, managers,

general and limited partners, employees, agents and representatives, are exculpated pursuant to

the Plan by all Persons, Entities, holders of Claims and Equity Interests and all other parties in

46

interest, from any and all Causes of Action arising out of the discharge of the powers and duties

conferred upon the Disbursing Agent, the Litigation Trust, or the Litigation Trustee by the Plan,

any Final Order of this Bankruptcy Court entered pursuant to or in the furtherance of the Plan, or

applicable law, except solely for actions or omissions arising out of the Disbursing Agent's or

the Litigation Trustee's willful misconduct or gross negligence.  No holder of a Claim or an

Equity Interest, or representative thereof, shall have or pursue any Cause of Action (i) against the

Disbursing Agent, the Litigation Trustee, or each of their respective officers, advisory board

members, members, managers, general or limited partners, employees, agents and

representatives for making Plan Distributions in accordance with the Plan, or (ii) against any

holder of a Claim for receiving or retaining Plan Distributions as provided for by the Plan.

Nothing contained in Section 11.3 of the Plan shall preclude or impair any holder of an Allowed

Claim or Allowed Equity Interest from bringing an action in this Bankruptcy Court against any

Debtor or the Litigation Trustee to compel the making of Plan Distributions contemplated by the

Plan on account of such Claim or Equity Interest.

48.     On the Effective Date, the Debtors and any Released Persons shall not be liable

for any Cause of Action related to or arising in connection with or out of the administration of

the Chapter 11 Cases, pursuit of confirmation of the Plan, the consummation of the Plan, or the

administration of the Plan or the property to be distributed under the Plan, except for gross

negligence or willful misconduct as determined by Final Order of this Bankruptcy Court.  This

Confirmation Order shall enjoin all holders of Claims and Equity Interests from asserting or

prosecuting any Claim or Cause of Action against any Released Person as to which such

Released Person has been exculpated from liability pursuant to the preceding sentence.

49.     The indemnity of the Prepetition First Lien Agent set forth in <u>Section 17.28</u> of the

Plan is incorporated herein by reference and shall be, and notwithstanding any other provision of

this Confirmation Order, hereby is, approved, and shall be effective without further action upon

the occurrence of the Effective Date.

## Retention of Jurisdiction

50.     Pursuant to sections 105(a) and 1142 of the Bankruptcy Code, this Bankruptcy

Court shall retain and shall have exclusive jurisdiction over any matter (a) arising under the

Bankruptcy Code, (b) arising in or related to the Chapter 11 Cases or the Plan, <u>including</u>, without

limitation, the Settlement, or (c) that relates to the matters set forth in <u>Article XVI</u> of the Plan.

## Effect of Confirmation

51.     The rights afforded in the Plan and the treatment of all Claims and Equity

Interests therein on the Effective Date shall be in exchange for and in complete satisfaction,

discharge and release of all Claims and Equity Interests of any nature whatsoever, <u>including</u> any

accrued post-petition interest, against the Debtors and the Debtors-in-Possession, or any of their

Estates, Assets, properties or interests in property.  <u>Except</u> as otherwise expressly provided in the

Plan or this Confirmation Order, on the Effective Date, all Claims against and Equity Interests in

the Debtors and the Debtors-in-Possession shall be satisfied, discharged and released in full.  On

the Effective Date, the Reorganized Debtors shall not be responsible for any pre-Effective Date

obligations of the Debtors or the Debtors-in-Possession, <u>except</u> those expressly assumed by any

Reorganized Debtor(s), as applicable.  <u>Except</u> as otherwise provided in the Plan or this

Confirmation Order, on the Effective Date, all Persons and Entities shall be precluded and

forever barred from asserting against the Reorganized Debtors, their respective successors or

assigns, or their Estates, Assets, properties, or interests in property any event, occurrence,

condition, thing, or other or further Claims or Causes of Action based upon any act, omission,

48

transaction or other activity of any kind or nature that occurred or came into existence prior to the Effective Date, other than subordination of the Second Lien Claims, whether or not the facts of or legal bases therefore were known or existed prior to the Effective Date.

52.     Except as otherwise provided in the Plan or this Confirmation Order, on the Effective Date, without further notice or order, all Claims of any nature whatsoever shall be automatically discharged forever. Except as otherwise provided in the Plan or this Confirmation Order, on the Effective Date, the Debtors, their Estates, and all successors thereto shall be deemed fully discharged and released from any and all Claims, including, without limitation, demands and liabilities that arose before the Effective Date, and all debts of the kind specified in section 502(g), 502(h) or 502(i) of the Bankruptcy Code, whether or not (i) a proof of Claim based upon such debt is filed or deemed filed under section 501 of the Bankruptcy Code, (ii) a Claim based upon such debt is allowed under section 502 of the Bankruptcy Code or (iii) the holder of a Claim based upon such debt has accepted the Plan. This Confirmation Order shall be a judicial determination of discharge of all liabilities of the Debtors, their Estates and all successors thereto. As provided in section 524 of the Bankruptcy Code, such discharge shall void any judgment against the Debtors, their Estates, or any successor thereto at any time obtained to the extent it relates to a Claim discharged, and operates as an injunction against the prosecution of any action against the Reorganized Debtors or property of the Debtors or their Estates to the extent it relates to a discharged Claim.

53.     Except as otherwise provided in the Plan or this Confirmation Order, upon the occurrence of the Effective Date, the Debtors shall be discharged from all Claims and Causes of Action to the fullest extent permitted by section 1141 of the Bankruptcy Code, and all holders of Claims and Equity Interests shall be precluded from asserting against the Reorganized Debtors,

the Debtors, the Estates, the Assets, or any property dealt with under the Plan, any further or

other Cause of Action based upon any act or omission, transaction, event, thing, or other activity

of any kind or nature that occurred or came into existence prior to the Effective Date.  Except as

otherwise provided in the Plan or this Confirmation Order, on the Effective Date, the

Reorganized Debtors shall not have, and shall not be construed to have or maintain any liability,

Claim, or obligation, that is based in whole or in part on any act, omission, transaction, event,

other occurrence, or thing occurring or in existence on or prior to the Effective Date of the Plan

(including, without limitation, any liability or Claims arising under applicable non-bankruptcy

law as a successor to the Debtors) and no such liabilities, claims, or obligations for any acts shall

attach to the Reorganized Debtors.

54.     Pursuant to section 1146(a) of the Bankruptcy Code, the issuance, transfer, or

exchange of notes or equity securities under the Plan, the creation of any mortgage, deed of trust,

lien, pledge, trust, or other security interest, the making or assignment of any lease or sublease,

the making or delivery of any deed or other instrument of transfer under the Plan or any transfers

made in connection with the transactions contemplated by Section 8.2(g) of the Plan, shall not be

subject to any stamp, real estate transfer, mortgage recording or other similar tax.  All filing or

recording officers (or any other Person with authority over any of the foregoing), wherever

located and by whomever appointed, shall comply with the requirements of section 1146(a) of

the Bankruptcy Code, shall forego the collection of any such tax or governmental assessment,

and shall accept for filing and recordation any of the foregoing instruments or other documents

without the payment of any such tax or governmental assessment.  To effectuate the terms of this

Confirmation Order and Section 17.13 of the Plan, this Bankruptcy Court may enter any order

necessary or appropriate to implement Section 17.13 of the Plan.

55.    The issuance of the NewCo PIK Notes, Stapled NewCo PIK Notes, NewCo Warrants, NewCo Membership Interests and New Centaur, LLC Membership Interests shall be exempt from registration under applicable securities laws pursuant to section 1145(a) of the Bankruptcy Code.

56.    Upon the closing of the sale of the VVD Interests to the Winning Competitive Bidder and subject to the occurrence of the Effective Date, (i) the transfer of the VVD Interests to the Winning Competitive Bidder shall be a legal, valid and effective transfer of the VVD Interests to the Winning Competitive Bidder, and shall vest in the Winning Competitive Bidder all right, title and interest in the VVD Interests in accordance with the terms and conditions of the Sale Documents (as modified by the Sale Order) free and clear of liens (other than those imposed by state and federal securities laws and applicable gaming and racing laws) to the maximum extent permitted by sections 105(a) and 1123 of the Bankruptcy Code, and (ii) all (a) prepetition and post-petition Claims against Valley View Downs, LP, Centaur PA Land General Partner, LP Centaur PA Land, LP and Centaur PA Land Management, LLC (collectively, the "**Conveyed Entities**") that are subject to discharge pursuant to section 1141 of the Bankruptcy Code, and (b) Administrative Expense Claims against the Conveyed Entities, shall be discharged and released as against the Conveyed Entities, but shall attach to the proceeds of the sale of the VVD Interests.

57.    The obligations of the Debtors, the Reorganized Debtors, the Estates and the Winning Competitive Bidder set forth in paragraph 17 of the Sale Order shall survive confirmation of the Plan and entry of this Confirmation Order.  Further, notwithstanding paragraph 56 or anything else contained in the Plan, the Plan Documents or this Confirmation Order to the contrary, the Debtors, the Reorganized Debtors, the Estates and the Winning

Competitive Bidder shall not be released from the obligations set forth in paragraph 17 of the Sale Order.

## Injunctions

58.     On the Effective Date and <u>except</u> as otherwise provided in the Plan or this Confirmation Order, all Persons who have been, are, or may be holders of Claims against or Equity Interests in the Debtors shall be permanently enjoined from taking any of the following actions against or affecting the Debtors, the Reorganized Debtors, the Estates, the Assets, the Disbursing Agent, the Litigation Trust, the Litigation Trustee, or any of the Released Persons, or their respective assets and property, with respect to such Claims or Equity Interests (other than actions brought to enforce any rights or obligations under the Plan):

> (i)     commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind (<u>including</u>, without limitation, all suits, actions and proceedings that are pending as of the Effective Date, which must be withdrawn or dismissed with prejudice);

> (ii)     enforcing, levying, attaching, collecting or otherwise recovering by any manner or means, whether directly or indirectly, any judgment, award, decree or order;

> (iii)     creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any encumbrance; and

> (iv)     asserting any setoff, right of subrogation or recoupment of any kind; <u>provided</u>, that any defenses, offsets or counterclaims which the Debtors may have or assert in respect of the above referenced Claims are fully preserved in accordance with <u>Section 17.19</u> of the Plan.

59.     From and after the Effective Date, holders of Allowed Priority Tax Claims are enjoined from commencing or continuing any action or proceeding against any responsible person or officer of the Debtors that otherwise would be liable to such holder for payment of a Priority Tax Claim so long as the Debtors are in compliance with <u>Section 6.3</u> of the Plan.

WM1A 988806v1 02/18/11

**Final Order**

60.     The period in which an appeal of this Confirmation Order must be filed shall commence upon the entry hereof.  Notwithstanding the possible applicability of Bankruptcy Rules 6004(h), 7062, 9014, or otherwise, the terms and conditions of this Confirmation Order shall be immediately effective and enforceable upon its entry.  If any or all of the provisions of this Confirmation Order are hereafter reversed, modified, or vacated by subsequent order of this Bankruptcy Court or any other court, such reversal, modification, or vacatur shall not affect the validity of the acts, obligations, or liens incurred, undertaken or granted pursuant to, or in connection with the Plan prior to the Debtors' receipt of written notice of such order.  Notwithstanding any such reversal, modification, or vacatur of this Confirmation Order, any such act, obligation, or lien incurred, undertaken or granted pursuant to, and in reliance on, this Confirmation Order prior to the effective date of such reversal, modification, or vacatur shall be governed in all respects by the provisions of this Confirmation Order and the Plan and all related documents, including, without limitation, the Plan Documents, or any amendments or modifications thereto.

61.     Pursuant to section 1141 and the other applicable provisions of the Bankruptcy Code, effective as of the Effective Date, the provisions of the Plan (including the exhibits and schedules to, and all documents and agreements executed pursuant to or in connection with, the Plan) and this Confirmation Order shall be binding on (i) the Debtors, (ii) all holders of Claims against and Equity Interests in the Debtors, whether or not impaired under the Plan and whether or not such holders have accepted or rejected the Plan, (iii) each Person or Entity receiving, retaining or otherwise acquiring property under the Plan, (iv) any non-Debtor party to an executory contract or unexpired lease with the Debtors, (v) any Person or Entity making an

53

appearance in the Chapter 11 Cases or any other party-in-interest in these Chapter 11 Cases, and

(vi) each of the foregoing's respective officers, directors, employees, agents, professionals and

other advisors, representatives and assigns.

### Miscellaneous Provisions

62.    The stay in effect in the Chapter 11 Cases pursuant to section 362(a) of the

Bankruptcy Code shall continue to be in effect until the Effective Date, and at that time shall be

dissolved and of no further force or effect, subject to the injunctions set forth in this

Confirmation Order, <u>Section 17.22</u> of the Plan and/or sections 524 and 1141 of the Bankruptcy

Code; <u>provided</u>, <u>however</u>, that nothing herein shall bar the filing of financing documents

(<u>including</u> Uniform Commercial Code financing statements, security agreements, leases,

mortgages, trust agreements and bills of sale) or the taking of such other actions as are necessary

to effectuate the transactions contemplated by the Plan or by this Confirmation Order prior to the

Effective Date.

63.    During the period from the Confirmation Date through and until the Effective

Date, the Debtors shall continue to operate their businesses as Debtors-in-Possession, subject to

the oversight of this Bankruptcy Court as provided in the Bankruptcy Code, the Bankruptcy

Rules and all orders of this Bankruptcy Court that are then in full force and effect.

64.    Promptly following entry of this Confirmation Order, (i) each holder of a First

Lien Claim that will, or intends to, upon the occurrence of the Effective Date, appoint a member

of the Board of Managers, and (ii) any holders of First Lien Claims that will, or intends to, in

concert with other holders of First Lien Claims, appoint a member of the Board of Managers,

shall (a) identify to the Debtors such proposed appointee who shall, to the best of such holder's

knowledge, be (1) suitable for licensing by the Indiana Horse Racing Commission and the

Indiana Gaming Commission and (2) apt to be licensed by Indiana Horse Racing Commission and Indiana Gaming Commission within 270 days after the Confirmation Date, and (b) use commercially reasonable efforts (including, without limitation, the payment of transaction and regulatory costs and expenses, including, again without limitation, license approval and/or renewal fees, bonding costs, investigation costs and occupational license fees) to obtain licensure by the Indiana Harness Racing Commission and Indiana Gaming Commission within 270 days of the Confirmation Date.

65.    On the Effective Date, the Committee shall dissolve automatically, whereupon its members, Professionals and agents shall be released from any further duties and responsibilities in the Chapter 11 Cases and under the Bankruptcy Code, except with respect to (i) applications for Fee Claims or reimbursement of expenses incurred as a member of the Committee, and (ii) any motions or other actions seeking enforcement or implementation of the provisions of the Plan or this Confirmation Order or pending appeals of orders entered in the Chapter 11 Cases.

66.    The Final Cash Collateral Order, as amended, shall remain in full force and effect pending the occurrence of the Effective Date.

67.    Notwithstanding any provision to the contrary in the Plan, this Confirmation Order or any Plan Document or other document implementing the Plan, nothing shall (a) affect the ability of the IRS to pursue any non-Debtor to the extent allowed by non-bankruptcy law for any liabilities that may be related to any federal tax liabilities owed by the Debtors or enjoin such pursuit of non-Debtors, even if the Debtors or the Reorganized Debtors are in compliance with Section 6.3 of the Plan; (b) affect the rights of the IRS to assert setoff and recoupment, such rights being expressly preserved; (c) discharge any Claim of the IRS of the types described in section 1141(d)(6) of the Bankruptcy Code; or (d) require the IRS to file an Administrative

Expense Claim for any Claim of the types described in section 503(b)(1)(B) and (C) of the Bankruptcy Code.

68. In accordance with <u>Section 17.15</u> of the Plan, upon entry of this Confirmation Order, the Debtors shall publish as directed by this Bankruptcy Court and serve on all known parties in interest and holders of Claims and Equity Interests, notice of the entry of this Confirmation Order and all relevant deadlines and dates under the Plan.

69. To the extent that any provisions of this Confirmation Order (including provisions of the Plan that are incorporated herein by reference) may be inconsistent with the terms of the Plan or any Plan Documents, the terms of this Confirmation Order (including provisions of the Plan that are incorporated herein by reference) shall be binding and conclusive. To the extent that any provision of any Plan Document may be in conflict with or inconsistent with any provision of the Plan, the terms of the Plan shall govern and be binding and conclusive.

70. Notwithstanding Bankruptcy Rules 3020(e), 6004(h), 6006(d), and 7062, to the extent applicable, this Bankruptcy Court finds that there is no reason for delay in the implementation of this Confirmation Order and, thus, this Confirmation Order shall be effective and enforceable immediately upon entry.

Dated: Feb 18, 2011
Wilmington, Delaware

_____
CHIEF UNITED STATES BANKRUPTCY JUDGE

WM1A 988806v1 02/18/11

## Exhibit A

## Modifications to the Plan

1.     Section 17.4 of the Plan is amended and restated in its entirety to read as follows:

> "17.4 **Payment of Statutory Fees.**
>
> All fees payable as of the Effective Date pursuant to section 1930 of title 28 of the United States Code shall be paid by the Debtors on or before the Effective Date or as otherwise agreed to by the U.S. Trustee. Following the Effective Date, the Reorganized Debtors and the Litigation Trustee shall separately report to the U.S. Trustee through quarterly financial reports in a format agreed to by the U.S. Trustee, their respective disbursements (within the meaning of 28 U.S.C. § 1930(a)(6)) and, based thereon, shall be separately liable for, and shall separately pay, those fees payable pursuant to section 1930 of title 28 of the United States Code (including, in the event of no disbursements, the minimum fee prescribed by 28 U.S.C. § 1930(a)(6)) until the Chapter 11 Cases are closed by form of order reasonably acceptable to the Litigation Trustee, if the Litigation Trust is not fully administered at the time the Chapter 11 Cases are closed, converted or dismissed. For the avoidance of doubt, as between and among the Reorganized Debtors and the Litigation Trustee, (a) the Reorganized Debtors shall not be responsible for any fees payable pursuant to section 1930 of title 28 of the United States Code as a result of disbursements by the Litigation Trust, and (b) the Litigation Trust and the Litigation Trustee shall not be responsible for any fees payable pursuant to section 1930 of title 28 of the United States Code as a result of disbursements by the Debtors or Reorganized Debtors. Nothing in this Section 17.4, however, shall alleviate or obviate the Reorganized Debtors' duty and obligation to the U.S. Trustee to pay a fee pursuant to 28 U.S.C. § 1930(a)(6) in each and every Chapter 11 Case until such Chapter 11 Cases are closed, converted or dismissed."