**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: ) | |
| ) | Chapter 11 |
| ENERGY FUTURE HOLDINGS ) | Case No. 14-10979-(CSS) |
| CORP., *et al.*,[1] ) | |
| ) | (Jointly Administered) |
| Debtors. ) | |
| ) | Hearing Date: April 14, 2015 at 9:30 a.m. |
| ) | Objection Deadline: April 7, 2015 at 4:00 p.m. |

**CLOUD PEAK ENERGY RESOURCES LLC'S OBJECTION TO THE MOTION
OF ENERGY FUTURE HOLDINGS CORP., ET AL FOR ENTRY OF AN
ORDER AUTHORIZING LUMINANT ENERGY COMPANY LLC TO REJECT
A CERTAIN EXECUTORY CONTRACT WITH CLOUD PEAK ENERGY
RESOURCES LLC, EFFECTIVE NUNC PRO TUNC TO MARCH 24, 2015**

Cloud Peak Energy Resources LLC ("**Cloud Peak Energy**"), by and through its lawyers Holland & Hart LLP, hereby objects to the Motion of Energy Future Holdings Corp., *et al.*, for Entry of an Order Authorizing Luminant Energy Company LLC to Reject a Certain Executory Contract with Cloud Peak Energy Resources LLC, Effective *Nunc Pro Tunc* to March 24, 2015, Docket No. 3961, (the "**Motion to Reject**") as follows:

**SUMMARY OF ARGUMENT**

In its Motion to Reject, the Debtors fail to mention that they sought, and this Court approved, the Trading Arrangements--both prepetition and postpetition--with Cloud Peak Energy as agreements which would be performed and honored by the Debtors and under which suppliers would be treated as administrative claimants. Cloud

---

[1] The last four digits of the Debtor Energy Future Holdings Corp.'s tax identification number are 8810. The Debtors' corporate headquarters and the service address is 1601 Bryan Street, Dallas, Texas 75201.

Peak Energy was one of the Hedging and Trading Arrangement counterparties with which the Debtors were given authority to honor accrued prepetition obligations, to continue doing business in the ordinary course, and to enter into and perform under new postpetition Hedging and Trading Arrangements. Accordingly, Cloud Peak Energy was paid postpetition on account of various prepetition coal shipments and executed a new postpetition Trading Arrangement under which it agreed not to terminate and to continue delivering coal. This was the "comfort" that Cloud Peak Energy received in exchange for its willingness to lock itself into agreements to supply coal at agreed prices rather than terminate and expose the Debtors to commodity risks, including price and delivery risk. Cloud Peak Energy relied on the Debtors' court-approved contractual commitments and agreed to be bound regardless of future market fluctuations. The Debtors cannot now reject these agreements and fail to honor their obligations.

The Debtors also fail to mention that Luminant Energy Company LLC ("**Luminant**") entered into a number of postpetition contractual agreements with Cloud Peak Energy for the purchase of coal. These agreements were not prepetition executory contracts which can be rejected, but were postpetition contracts which must be honored by Luminant as a debtor-in-possession operating in the ordinary course of business. To be sure, if third party suppliers were unable to rely on a debtor's postpetition agreements, debtors would be unable to operate their businesses while in bankruptcy, and for this reason alone, Luminant's postpetition agreements with Cloud Peak cannot be rejected.

**BACKGROUND FACTS**

1. Attached as *Exhibit A* is that certain Master Coal Purchase and Sale Agreement by and between Kennecott Coal Sales Company and TXU Energy Trading Company effective March 22, 2002 (referred to herein as the "**General Terms Agreement**"). This is the "Contract" Luminant allegedly seeks to reject. However, a cursory review of the General Terms Agreement reveals that it is not a contract at all, but rather sets forth the general terms and conditions for potential purchase and sales agreements between the parties. Thus, Section 2.1 of the General Terms Agreement recites:

> From time to time during the Term hereof, the Parties may, but are not obligated to, agree to one or more Transactions and the terms of any such Transaction will be specified on a Confirmation substantially in the form of the attached Exhibit "A." If the Parties desire to enter into any Transaction, it being agreed that neither Party is obligated to enter into any Transaction, then in addition to the terms and conditions set forth in this Master Coal Purchase and Sale Agreement, the Parties will agree on the specific terms and conditions of a particular Transaction…

In essence, the parties to the General Terms Agreement contemplated that the terms of any binding contracts for the purchase and sale of coal would be agreed upon by the parties in the future, and Section 2.1 of the General Terms Agreement further states that any terms regarding price, delivery term, and quantity are to be agreed upon in separate agreements.

2. On April 29, 2014 (the "**Petition Date**"), each of the Debtors filed voluntary petitions with the Court. The Debtors continued to operate their businesses and

manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3. On the same date, the Debtors filed their Motion for Entry of Interim and Final Orders Authorizing the Debtors to (A) Continue Performing Under Prepetition Hedging and Trading Arrangements, (B) Pledge Collateral and Honor Obligations Thereunder, and (C) Enter Into and Perform Under Trading Continuation Agreements and New Postpetition Hedging and Trading Arrangements, Docket No. 41, (the "**Trade Agreement Motion**"). Pursuant to the Trade Agreement Motion, the Debtors sought authority to honor accrued prepetition obligations and to continue performing in the ordinary course of business under certain defined Prepetition Hedging and Trading Arrangements with approximately 72 counterparties, including approximately 68 identified over-the-counter counterparties. Cloud Peak Energy was one of those counterparties. The Debtors also sought authority to enter into and perform under new Postpetition Hedging and Trading Arrangements in the ordinary course of business. The Trade Agreement Motion explained that the relief requested was necessary to provide comfort to counterparties which would otherwise exercise rights to terminate their arrangements and expose the Debtors to commodity risks, including price and delivery risk. The Trade Agreement Motion also cited Section 363(c)(1) of the Bankruptcy Code for the proposition that the Debtors were permitted to continue performing postpetition obligations under existing Hedging and Trading Agreements and to enter into new Postpetition Hedging and Trading Arrangements in the ordinary course of business.

4. On May 2, 2014, the Court entered its Interim Order Authorizing the Debtors to (A) Continue Performing Under Prepetition Hedging and Trading Arrangements, (B) Pledge Collateral and Honor Obligations Thereunder, and (C) Enter Into and Perform Under Trading Continuation Agreements and New Postpetition Hedging and Trading Arrangements, Docket No. 315, (the "**Interim Trade Agreement Order**"), and a Final Order was entered on June 6, 2014, Docket No. 860 (together, the **Trade Agreement Orders**").  The Court granted the Debtors' Trade Agreement Motion, and the Trade Agreement Orders provided that the Debtors could satisfy the referenced prepetition payment obligations and that obligations arising from "performance and performance obligations in respect of Postpetition Hedging and Trading Arrangements, and postpetition performance under Prepetition Hedging and Trading Arrangements *shall have the status of an administrative expense*…." (emphasis added) Final Order, Docket No. 860, at 6(b).

5. Under the Trade Agreement Orders, the Debtors were also directed to use their commercially reasonable efforts to obtain from prepetition Hedging and Trading Arrangement counterparties signed acknowledgements of their obligations to perform on a postpetition basis, and not to exercise rights to terminate under bankruptcy default provisions, substantially in the form of a certain "Trading Continuation Agreement" attached to the Orders.  Thus, in exchange for the payment of prepetition amounts owed and administrative expense status for all amounts due under prepetition agreements and new postpetition agreements incurred in the ordinary course, counterparties would agree not to accelerate or terminate.  Under the form of Trading Continuation Agreement,

counterparties were to agree not to accelerate or terminate, and to the extent bankruptcy constituted an event of default under any agreement, that provision would be deleted.

6. Attached hereto as *Exhibit B* is an email dated May 12, 2014, from Lee Adams of Luminant to Mindy Watson-Ward of Cloud Peak Energy referencing the Interim Trade Agreement Order and stating that Luminant was required to use commercially reasonable efforts to get a form of Trading Continuation Agreement in place with Cloud Peak Energy and certain other identified counterparties owed prepetition payments. The email attached the Interim Order and the form of Trading Continuation Agreement.

7. Attached hereto as *Exhibit C* is a letter agreement executed by Luminant and Cloud Peak Energy in July of 2014, referenced as CPE # 2269 (the "**Postpetition Confirmation Agreement**"). In the Postpetition Confirmation Agreement, Cloud Peak Energy agreed and acknowledged that Luminant's bankruptcy filing would not constitute an event of default, using substantially the same language set forth in the form of Trading Continuation Agreement. (*See also,* emails attached hereto as *Exhibit D* in which Luminant and Cloud Peak Energy agree to this "bankruptcy amendment.") By doing so, Cloud Peak Energy locked itself into the prices set forth in the Postpetition Confirmation Agreement, agreed not to terminate or accelerate, and took the risk that prices could go up. Accordingly, Cloud Peak Energy was obligated to sell to Luminant at the agreed prices, and Luminant was obligated to honor its postpetition agreement, entered in the ordinary course of its business and pursuant to the Trade Agreement Motion and the Court's Trade Agreement Orders.

8. In addition, it is clear that Cloud Peak Energy was treated as one of the hedging and trade agreement parties covered by the Trade Agreement Motion since it was paid for certain of its prepetition shipments on a postpetition basis. Specifically, the following prepetition shipments of coal were paid for on May 9, 2104: 14,689.43 tons (shipped April 17, 2014), 14,486.25 tons (shipped April 18, 2014), 15,942.20 tons (shipped April 19, 2014), 14,686.78 tons (shipped April 22, 2014), and 14,238.03 tons (shipped April 24, 2014). *See* Spreadsheet attached hereto as *Exhibit E* showing shipping details*.* It is also undisputed that Luminant entered into at least three other postpetition letter agreements with Cloud Peak Energy, ratifying and reaffirming its postpetition obligations to Cloud Peak Energy. *See* letters dated September 25, November 28, and December 23, 2014, (together, the "**Letter Agreements**" attached hereto as *Exhibit F*, confirming Luminant's continuing postpetition obligations.

9. Postpetition, Cloud Peak Energy continued to honor its obligations to supply coal to Luminant pursuant to the Postpetition Confirmation Agreement and Letter Agreements. It made shipments to Luminant totaling nearly 1.5 million tons after the Petition Date. *See* Spreadsheet attached hereto as *Exhibit E*.

**ARGUMENT**

**A. The Debtors Obtained Court Approval to Honor Their Obligations Under the Trading Agreements With Cloud Peak Energy.**

10. As set forth above, Cloud Peak Energy's supply agreements with Luminant were not merely prepetition executory contracts which may now be rejected.

7

To begin, the Debtors mischaracterize the General Terms Agreement as the pertinent agreement under which Luminant agreed to purchase a specified volume of coal at certain prices. The General Terms Agreement was not an agreement for the purchase and sale of coal, but was instead an agreement which set forth generic overarching terms should the parties enter into subsequent agreements for the purchase and sale of coal. As set forth above, the pertinent purchase and sale agreements with Cloud Peak Energy were postpetition agreements entered into by Luminant in the ordinary course of its business which the Debtor specifically sought and obtained Court approval to perform.

11. Luminant in fact entered into several postpetition agreements with Cloud Peak Energy for the purchase of coal, including the Postpetition Confirmation Agreement in July 2014 and the Letter Agreements on September 25, November 28, and December 23, 2014, under the authority of the Trade Agreement Orders. In its May 12, 2014 email, Luminant specifically identified its relationship with Cloud Peak Energy as one covered by the Interim Trade Agreement Order and requested Cloud Peak Energy to execute a form of Trade Continuation Agreement. Ultimately, by signing the Postpetition Confirmation Agreement, Cloud Peak gave up its rights to terminate under bankruptcy default provisions in exchange for the payment of prepetition amounts owed and administrative expense status for amounts due under its pre and postpetition agreements.

12. By doing so, Cloud Peak Energy not only agreed to be bound by its supply agreements, but locked itself into the prices set forth in the Postpetition Confirmation Letter and Letter Agreements and took the risk that prices would go up and it would be unable to sell the agreed tonnage to another customer at these higher prices.

13. Luminant cannot have it both ways. It should not be permitted to hold suppliers to abide by their commitments to supply at agreed prices and at the same time retain the ability to reject when market conditions change. Luminant is obligated to honor its Trading Arrangements with Cloud Peak Energy pursuant to the Final Trading Agreement Order:

> As security and assurance of the Debtor's obligations arising under Hedging and Trading Arrangements, and in exchange for providing benefits to non-terminating counterparties in accordance with this Order:
>
> …(b) the obligations, liabilities and indebtedness of the Debtors arising from postpetition market movements, performance and performance obligations in respect of Postpetition Hedging and Trading Arrangements, and postpetition performance under prepetition Hedging and Trading Arrangements shall have the status of an administrative expense, and shall be paid at the prices set forth in the Prepetition Hedging and Trading Arrangements or Postpetition Hedging and Trading Arrangements, as applicable.

*Final Trade Agreement Order*, Docket No. 860, at paragraph 6(b).

**B. Postpetition Transactions Must Be Honored and Create Administrative Expenses.**

14. Furthermore, it is undeniable that Luminant entered into a number of postpetition contractual agreements while operating in the ordinary course of its business under 11 U.S.C. §§363(c)(1), 1107(a), 1108. These postpetition contracts give rise to administrative obligations. *In re Crystal Apparel, Inc.*, 220 B.R. 816, 830 (Bankr. S.D.N.Y. 1998) (holding § 363(c)(1) "[t]ransactions in the ordinary course of business of the debtor in possession create expenses of administration"); *accord In re Chugiak Boat Works, Inc.*, 18 B.R. 292 (Bankr. D. Alaska 1982) (holding that "an executory contract

9

entered into during the Chapter 11 reorganization . . . constitute[d] an administrative expense within the meaning of § 503(b) of the Code and [was] entitled to priority pursuant to § 507(a)(1)").

15.     Indeed, and as argued by the Debtors in their Trade Agreement Motion, "…Hedging and Trading agreements are typical arrangements and ubiquitous among companies in the Debtors' industry to preserve value of their estates." *Trade Agreement Motion* at para. 67, citing *In re Patriot Coal Corp*, No. 12-12900 (granting authority to enter into and perform under coal sales contracts); *In re Dynegy Holdings, LLC,* No. 11-38111 (Bankr. S.D. N.Y. Nov. 9, 2011) (granting authority to enter into and perform under derivative contracts); *In re Boston Generating, LLC,* No. 10-14419 (Bankr. S.D.N.Y. Sept. 23, 2010) (granting authority to enter into and perform under its hedging and purchase and sale contracts); *In re Calpine Corp.,* No. 05-60200 (Bankr. S.D.N.Y. Dec 21, 2005) (granting authority to enter into and perform under its derivative contracts, including forward, futures, and options contracts); *In re Mirant Corp.,* No. 03-46590 (Bankr. N.D. Tex. Aug 28, 2003) (same); *In re NRG Energy Inc.,* No. 03-13024 (Bankr. S.D.N.Y. June 30, 2003) (same).

16.     Luminant received the benefit of the Cloud Peak Energy Trading Arrangements when Cloud Peak Energy agreed to be bound by its supply commitments at the agreed prices regardless of market price increases.  It gave up its rights to terminate based on Luminant's bankruptcy filing, and Luminant received multiple post-petition shipments of coal under the Court-approved Trading Arrangements.  While Cloud Peak Energy agreed to continue to supply to bankrupt Luminant and gave up its opportunity to

10

sell these committed tons to other nonbankrupt coal purchasers on a more favorable or even equivalent terms, Luminant incurred postpetition obligations as actual and necessary costs to preserve its estate as a going concern and obtained the value of certainty in coal prices. Without such agreements with its trading partners, it could not successfully reorganize.

17. Luminant should not be permitted to retain the benefit of locking a supplier into set prices with the enticement of a court-approved Trading Agreement Order and also retain the ability to reject an alleged prepetition contract. By now seeking to reject its Trading Arrangements with Cloud Peak Energy, Luminant puts Cloud Peak Energy in the position of trying to sell previously committed tons at a substantial loss in the current market. Cloud Peak Energy relied on the Court sanctioned and statutory authority of a debtor-in-possession to operate in the ordinary course in a Chapter 11 proceeding, and the Court should not permit Luminant to renege on its postpetition agreements and obligations. Put another way, if suppliers cannot rely on a debtor-in-possession to honor its postpetition contractual commitments, no supplier will do business with a Chapter 11 debtor.

18. Cloud Peak Energy therefore opposes Luminant's rejection of its trade agreements and asserts an administrative priority claim for any and all damages suffered as a result of Luminant's failure to perform. Further, Cloud Peak Energy asserts that rejection of the General Terms Agreement does not terminate the several postpetition agreements and obligations incurred by Luminant, including the Postpetition

Confirmation Letter and the Letter Agreements. These postpetition agreements are fully enforceable on a postpetition basis.

WHEREFORE, Cloud Peak Energy objects to the Motion to Reject and respectfully requests that it be denied.

Dated April 6, 2015.

          HOLLAND & HART LLP

          */s/Risa Lynn Wolf-Smith*
          Risa Lynn Wolf-Smith, #15835
          Kurt V. Tyler, #46637
          555 Seventeenth Street, Suite 3200
          Denver, Colorado 80202
          Telephone: 303-295-8011
          Facsimile: 303-295-8261
          Email:    rwolf@hollandhart.com
                      kvtyler@hollandhart.com

          ***ATTORNEYS FOR CLOUD PEAK ENERGY RESOURCES LLC***

## CERTIFICATE OF SERVICE

I certify that on April 6, 2015, I served a copy of the foregoing document to the following by

☒ U.S. Mail, postage prepaid
☐ Hand Delivery
☐ Fax

Mark D. Collins, Esq.
Daniel J. DeFranceschi, Esq.
Jason M. Madron, Esq.
Tyler D. Semmelman, Esq.
Richards, Layton & Finger, P.A.
One Rodney Square
920 North King Street
Wilmington, DE 19801

Stephen E. Hessler, Esq.
Edward O. Sassower, Esq.
Brian E. Schartz, Esq.
Kirkland & Ellis LLP
601 Lexington Avenue
New York, NY 10022-4611

James H.M. Sprayregen, P.C.
Marc Kieselstein, P.C.
Chad J. Husnick, Esq.
Steven N. Serajeddini, Esq.
Kirkland & Ellis LLP
300 North LaSalle
Chicago, IL 60654

Richard L. Schepacarter, Esq.
Office of the United States Trustee
U. S. Department of Justice
844 King Street, Suite 2207
Lockbox #35
Wilmington, DE 19801

Andrea Beth Schwartz, Esq.
U.S. Department of Justice - Office of the
U.S. Trustee
U.S. Federal Office Building
201 Varick Street, Rm 1006
New York, NY 10065

Justin K. Edelson, Esq.
Shanti M. Katona, Esq.
Christopher A. Ward, Esq.
Polsinelli PC
222 Delaware Avenue, Suite 1101
Wilmington, DE 19801

| | |
|---|---|
| Edward M. Fox, Esq.<br>Polsinelli Shughart PC<br>805 Third Avenue, Suite 2020<br>New York, NY 10022 | Lorenzo Marinuzzi, Esq.<br>Brett H. Miller, Esq.<br>James Michael Peck, Esq.<br>Morrison & Foerster LLP<br>250 West 55th Street<br>New York, NY 10019 |
| Andrew Dietderich, Esq.<br>Brian D. Glueckstein, Esq.<br>Michael H. Torkin, Esq.<br>Sullivan & Cromwell LLP<br>125 Broad Street<br>New York, NY 10004 | Mark Andrew Fink, Esq.<br>Natalie D. Ramsey, Esq.<br>Davis Lee Wright, Esq.<br>Montgomery, McCracken, Walker & Rhoads<br>1105 N. Market Street, Suite 1500<br>Wilmington, DE 19081 |
| Alan W. Kornberg, Esq.<br>Kelly A. Cornish, Esq.<br>Brian S. Hermann, Esq.<br>Jacob A. Adlerstein, Esq.<br>Paul, Weiss, Rifkind, Wharton<br>& Garrison LLP<br>1285 Avenue of the Americas<br>New York, NY 10019-6064 | Pauline K. Morgan, Esq.<br>Joel A. Waite, Esq.<br>Ryan M. Bartley, Esq.<br>Andrew L. Magaziner, Esq.<br>Young Conaway Stargatt & Taylor, LLP<br>Rodney Square<br>1000 North King Street<br>Wilmington, DE  19801 |

/s/*Lela Lopez Velasquez*
Lela Lopez Velasquez
Holland & Hart LLP

7695766_1

14