# EXHIBIT B

# EXHIBIT B

**Watson-Ward, Mindy S. (CPE)**

| | |
|---|---|
| **From:** | Adams, Lee <Lee.Adams@luminant.com> |
| **Sent:** | Monday, May 12, 2014 9:17 AM |
| **To:** | Watson-Ward, Mindy S. (CPE) |
| **Cc:** | Silvey, Tiffany L; Talley, Randall |
| **Subject:** | Trading Continuation Agreement |
| **Attachments:** | Order Interim Authorizing the Debtors t - Main Document.pdf; Trading Continuation Agreement FINAL TEMPLATE.DOC |

Mindy -

It was great talking to you this morning. As part of the Interim Order for Luminant Energy Company LLC's hedging and trading motion, we are required to use commercially reasonable efforts to get the attached trading continuation agreement in place with counterparties that are either owed a prepetition payment or where we are posting collateral for prepetition obligations.

Please feel free to reach out to Tiffany Silvey, (214) 875-9300, if you have any questions.

Thanks,
Lee

Lee P. Adams | Solid Fuel & Emissions Strategy | Luminant Energy | **lee.adams@luminant.com**
Office: 214.875.9800 | Mobile: 214.701.0687 | AIM: leepadamswk

Confidentiality Notice: This email message, including any attachments, contains or may contain confidential information intended only for the addressee. If you are not an intended recipient of this message, be advised that any reading, dissemination, forwarding, printing, copying or other use of this message or its attachments is strictly prohibited. If you have received this message in error, please notify the sender immediately by reply message and delete this email message and any attachments from your system.

**ORIGINAL**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) | Case No. 14-10979 (CSS) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |
|  | ) | Re: Docket No. 41 |

### INTERIM ORDER AUTHORIZING THE DEBTORS TO
### (A) CONTINUE PERFORMING UNDER PREPETITION HEDGING
### AND TRADING ARRANGEMENTS, (B) PLEDGE COLLATERAL
### AND HONOR OBLIGATIONS THEREUNDER, AND (C) ENTER INTO
### AND PERFORM UNDER TRADING CONTINUATION AGREEMENTS
### AND NEW POSTPETITION HEDGING AND TRADING ARRANGEMENTS

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors"), for entry of an interim order (this "Order") authorizing, but not directing, the Debtors to:  (a) honor, pay, or otherwise satisfy prepetition obligations arising under the Prepetition Hedging and Trading Arrangements as they come due during the Interim Period; (b) pledge and transfer collateral under the Hedging and Trading Arrangements as such obligations arise during the Interim Period, in the form of cash, letters of credit and, in certain instances, TCEH Super-Priority DIP Liens, as permitted under the terms of the TCEH DIP Orders and the TCEH Cash Collateral Orders; (c) continue to honor, pay, or otherwise satisfy postpetition obligations arising under the Prepetition Hedging and Trading Arrangements

---

[1] The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, for which the debtors have requested joint administration, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' proposed claims and noticing agent at http://www.efhcaseinfo.com.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

in the ordinary course of business; and (d) enter into and perform under Trading Continuation

Agreements (herein defined) and new, Postpetition Hedging and Trading Arrangements in the

ordinary course of business and consistent with the Risk Management Guidelines, all as more

fully set forth in the Motion; and upon the First Day Declaration; and the Court having found

that it has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and the Court

having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and the Court

having found that venue of this proceeding and the Motion in this district is proper pursuant to

28 U.S.C. §§ 1408 and 1409; and the Court having found that the relief requested in the Motion

is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and the

Court having found that the Debtors provided appropriate notice of the Motion and the

opportunity for a hearing on the Motion under the circumstances; and the Court having reviewed

the Motion and having heard the statements in support of the relief requested therein at a hearing,

if any, before the Court (the "Hearing"); and the Court having determined that the legal and

factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted

herein; and upon all of the proceedings had before the Court; and after due deliberation and

sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.    The Motion is granted on an interim basis as set forth herein.

2.    The Debtors are authorized, but not directed, to: (a) honor, pay, or otherwise

satisfy prepetition obligations arising under the Prepetition Hedging and Trading Arrangements

as they come due during the Interim Period, in an aggregate amount not to exceed the Prepetition

Payment Cap (which shall not exceed $50.8 million); (b) pledge and transfer collateral as such

obligations come due during the Interim Period on account of the Hedging and Trading

Arrangements in the form of cash or letters of credit, and, in the case of Hedging and Trading

Arrangements that constitute Permitted Secured Commodity Hedge Agreements, TCEH Super-Priority DIP Liens, as permitted under the terms of the TCEH DIP Orders and the TCEH Cash Collateral Orders, *provided*, *however*, that with respect to the Prepetition Hedging and Trading Arrangements such collateral shall be pledged and transferred in an aggregate amount not to exceed the Prepetition Collateral Posting Cap (which shall not exceed $164.35 million on a net basis); (c) continue to honor, pay, or otherwise satisfy postpetition obligations arising under the Prepetition Hedging and Trading Arrangements in the ordinary course of business and consistent with the Risk Management Guidelines and, to the extent applicable, subject to the Internal Hedging Policy; and (d) enter into and perform under Trading Continuation Agreements and new, Postpetition Hedging and Trading Arrangements in the ordinary course of business and, to the extent applicable, subject to the Internal Hedging Policy and consistent with the Risk Management Guidelines. For the avoidance of doubt, the Prepetition Hedging and Trading Arrangements include, and are limited to, only those contracts that, as of the Petition Date (i) are "securities contracts," "commodities contracts," "forward contracts," "repurchase agreements," "swap agreements" and/or "master netting agreements" as such terms are defined in section 101, 741 or 761 of the Bankruptcy Code; and (ii) had the contractual right to cause liquidation, termination, acceleration and/or offset under sections 555, 556, 559, 560 and/or 561 of the Bankruptcy Code because of a condition of the kind specified in section 365(e)(1) of the Bankruptcy Code.

3.    The Debtors shall not enter into or perform under any new incremental proprietary trading transactions during the Interim Period; *provided*, the Debtors may enter into and perform under any new proprietary trades entered into for the purpose of unwinding,

managing risks relating to, or mitigating or limiting losses under proprietary trading transactions existing as of the Petition Date.

4.      The Debtors are authorized, but not directed, to replace ERCOT's existing letter of credit with a new, postpetition letter of credit to the extent permitted under any DIP financing facility.  For the avoidance of doubt, such new postpetition letter of credit would not be subject to Prepetition Collateral Posting Cap.

5.      The Debtors shall use their commercially reasonable efforts to obtain from any Prepetition Hedging and Trading Arrangement counterparty, as a prerequisite to obtaining relief with respect to prepetition obligations pursuant to this Order, written acknowledgement of its obligations to perform under the Prepetition Hedging and Trading Arrangements on a postpetition basis, substantially in the form attached hereto as **Exhibit 1** (the "Trading Continuation Agreement"); *provided, however*, that the Debtors may, if necessary under the circumstances, in the Debtors' judgment, satisfy prepetition obligations in accordance with the Prepetition Payment Cap (which shall not exceed $50.8 million) and Prepetition Collateral Posting Cap (which shall not exceed $164.35 million on a net basis) set forth in the Motion and this Order without obtaining such agreement; *provided further, however*, that such payment shall not prejudice any Debtor's right to challenge, as a violation of the automatic stay or otherwise, a Hedging and Trading Arrangement counterparty's refusal to perform under the Hedging and Trading Arrangements on a postpetition basis.

6.      The form Trading Continuation Agreement, attached hereto as **Exhibit 1**, is approved on an interim basis; *provided, however*, that the Debtors are authorized to modify the Trading Continuation Agreement if, in the Debtors' judgment, a particular situation so requires.

7.     As security and assurance of the Debtors' obligations arising under Hedging and Trading Arrangements, and in exchange for providing benefits to non-terminating counterparties in accordance with this Order:

(a)   counterparties are each hereby granted, for their own benefit, effective as of the Petition Date and without the necessity of the execution by the Debtors, or filing, of security agreements, pledge agreements, mortgages, financing statements or otherwise, pursuant to Bankruptcy Code section 364(c)(2) enforceable first-priority liens and security interests on any cash collateral, and/or letters of credit with respect to initial, maintenance or variation margin or payments in advance provided to such counterparty whether prior hereto, on or after the date of this Order;

(b)   the obligations, liabilities and indebtedness of the Debtors arising from postpetition market movements, performance and performance obligations in respect of Postpetition Hedging and Trading Arrangements, and postpetition performance under Prepetition Hedging and Trading Arrangements shall have the status of an administrative expense, and shall be paid at the prices set forth in the Prepetition Hedging and Trading Arrangements or Postpetition Hedging and Trading Arrangements, as applicable;

(c)   counterparties may net exposures, amounts, and obligations under Prepetition Hedging and Trading Arrangements against exposures, amounts and obligations under other Prepetition Hedging and Trading Arrangements and Postpetition Hedging and Trading Arrangements with a Debtor and vice versa. In this regard, there shall be no distinction between transactions entered into prepetition and postpetition; and

(d)   the Debtors and the non-terminating counterparties shall be authorized and permitted to apply any and all cash collateral and/or letters of credit that may have been posted prepetition to any obligations arising postpetition, regardless of whether such obligations arise under existing Prepetition Hedging and Trading Arrangements or Postpetition Hedging and Trading Arrangements, as applicable.

8.     Notwithstanding the foregoing, if, after receiving payment or collateral pursuant to this Order (and/or the specified terms of a Trading Continuation Agreement), any Prepetition Hedging and Trading Arrangement counterparty does not perform under the Prepetition Hedging and Trading Arrangements on a postpetition basis or otherwise exercises valid and enforceable termination rights under sections 555, 556, 559, 560, and 561 of the Bankruptcy Code with

respect to the Prepetition Hedging and Trading Arrangements then (a) any postpetition payment or collateral received by such Prepetition Hedging and Trading Arrangement counterparty for prepetition obligations shall be deemed, in the Debtors' sole discretion, an improper postpetition transfer, and, therefore, recoverable by the Debtors immediately upon written request by the Debtors; and (b) upon recovery by the Debtors, any prepetition claim of such Prepetition Hedging and Trading Arrangement counterparty shall be reinstated as if the payment had not been made and/or the collateral had not been posted.

9. If any or all of the provisions of this Order are stayed, modified in a manner adverse to a Hedging and Trading Arrangement counterparty or vacated, or this Order otherwise terminates, such stay, modification, vacation or termination will not affect (a) the validity of any indebtedness, obligation or liability incurred by the Debtors to each of the counterparties before the receipt of written notice by the counterparties of the effective date of such stay, modification or vacation, (b) the validity or enforceability of the security interests, administrative claims and netting and termination rights authorized or created hereby or pursuant to the Hedging and Trading Arrangements, or any related documents, and (c) the rights of the counterparties to exercise remedies as set forth in the Prepetition Hedging and Trading Arrangement or the Postpetition Hedging and Trading Arrangements, as the case may be, and each counterparty shall be entitled to the benefits of the provisions of section 364(e) of the Bankruptcy Code.

10. If there exists an outstanding postpetition balance due from the Debtors to a Prepetition Hedging and Trading Arrangement counterparty that does not perform under the Hedging and Trading Arrangements on a postpetition basis or otherwise exercises valid and enforceable termination rights under sections 555, 556, 559, 560, and 561 of the Bankruptcy Code with respect to the Prepetition Hedging and Trading Arrangements, the Debtors may elect,

in the Debtors' sole discretion, to recharacterize and apply any payments made pursuant to this Order, and, as applicable, any collateral posted pursuant to this Order to such postpetition balance, and the Prepetition Hedging and Trading Arrangement counterparty shall repay immediately in cash to the Debtors (and, as applicable, return collateral posted by the Debtors) any amounts that exceed the postpetition obligations then outstanding, and without any claim, right of setoff, or recoupment against the Debtors resulting thereby.

11.     This Order does not grant any relief with respect to or affect the rights, duties, or obligations of EFIH or EFIH Finance Inc.

12.     The Final Hearing shall be June 5, 2014, at 09:30 a.m., prevailing Eastern Time. Any objections or responses to the Motion must be filed on or before May 29, 2014, at 4:00 p.m., prevailing Eastern Time.  If no objections are filed to the Motion, the Court may enter the Final Order without further notice or hearing.

13.     In accordance with this Order and any other order of this Court, each of the financial institutions at which the Debtors maintain their accounts relating to the payment of the obligations described in this Order is authorized to honor checks and electronic payment requests presented for payment of obligations described in this Order and all fund transfer requests made by the Debtors related thereto to the extent that sufficient funds are on deposit in such amounts.

14.     Notwithstanding the relief granted in this Order and any actions taken pursuant to such relief, nothing in this Order shall be deemed:  (a) an admission as to the validity of any claim against a Debtor entity; (b) a waiver of any party in interest's rights to dispute any claim on any grounds; (c) a promise or requirement to pay any claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Order or the Motion; (e) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of

7

the Bankruptcy Code; (f) a waiver or limitation of the Debtors' rights under the Bankruptcy Code or any other applicable law; or (g) an admission that any agreement to which one or more of the Debtors may be party constitutes a Hedging and Trading Arrangement. Payments made pursuant to this Order shall not be construed as an admission as to the validity of any claim or a waiver of any party in interest's rights to subsequently dispute such claim.

15.     The relief granted in this Order applies only to Hedging and Trading Arrangements not previously assumed, rejected, or terminated pursuant to sections 365, 546, 555, 556, 559, 560, and 561 of the Bankruptcy Code.

16.     To the extent necessary, the automatic stay provided in section 362 of the Bankruptcy Code is modified to permit ERCOT to continue performing its obligations and exercising its rights under the SFAs and the ERCOT Protocols.

17.     Nothing in this Order shall authorize or direct the Debtors to take any action that would violate or breach the terms of the TCEH DIP Credit Agreement (as defined in the TCEH DIP Orders) or violate any order of this Court approving the TCEH DIP Facility.

18.     The Debtors shall provide to the DIP Agent (as defined in the TCEH DIP Orders) and counsel to the TCEH First Lien Ad Hoc Committee (as defined in the TCEH Cash Collateral Orders) monthly written reports, exclusive of counterparty names or identifiers, of all Hedging and Trading Arrangements and all Hedging and Trading Activities summarizing the aggregate amount of collateral pledged, and the aggregate amount of Hedging and Trading Arrangements for which TCEH Super-Priority DIP Liens have been granted pursuant to this Order and/or the DIP Orders, as applicable; *provided, however*, that, with the exception of the aggregate amount of collateral pledged, and the aggregate amount of Hedging and Trading Arrangements for which TCEH Super-Priority DIP Liens have been granted, the Debtors shall not be required to provide

8

any other information in such monthly reports that the Debtors reasonably believe is subject to another confidentiality agreement (or other contractual or legal obligation of confidentiality) between the Debtors and their Hedging and Trading Arrangements counterparties.

19.    Subject to the Internal Hedging Policy (including any subsequent modification to such policy in a manner consistent with such Internal Hedging Policy and this Order), the Debtors shall not enter into wholesale Hedging and Trading Arrangements with a tenor beyond December 31, 2015.    The Debtors shall not be permitted to amend the tenor and hedge limitations set forth in the Internal Hedging Policy, including, without limitation, the Hedging Ceiling, in a manner that, in the Debtors' judgment, varies materially from the Debtors' historical hedging practices over the past two years without further order of the Court.

20.    Notwithstanding anything herein to the contrary, the provisions of this Order shall not apply to the First Lien Hedges and Swaps or the Legacy Swaps, and the Debtors are not authorized hereunder to make any payments or other transfers (except for the return of cash collateral held by Debtors pursuant to the First Lien Hedges and Swaps) on account of or in relation to the First Lien Hedges and Swaps or the Legacy Swaps.

21.    The requirements set forth in Bankruptcy Rule 6003(b) are satisfied by the contents of the Motion.

22.    Notice of the Motion as provided therein shall be deemed good and sufficient and the requirements of the Local Bankruptcy Rules are satisfied by such notice.

23.    Notwithstanding the possible applicability of Bankruptcy Rules 6004(h), 7062, 9014 or otherwise, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

24.    Notwithstanding the relief granted in this Order, any payment made by the

Debtors pursuant to the authority granted herein shall be subject to the TCEH DIP Orders and TCEH Cash Collateral Orders.

25.    All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

26.    The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Motion.

27.    The Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation of this Order.

Wilmington, Delaware
Dated: May 2, 2014

THE HONORABLE CHRISTOPHER S. SONTCHI
UNITED STATES BANKRUPTCY JUDGE

_____, 2014

TO:    [Hedging and Trading Arrangement counterparty]
        [Name]
        [Address]

Dear [Hedging and Trading Arrangement counterparty]:

[Hedging and Trading Arrangement counterparty] ("<u>you</u>") and the following entities [_____] (such entity or entities and any successor entities under a plan of reorganization or otherwise collectively referred to as the "<u>Debtors</u>" and, together with you, the "<u>Parties</u>") are engaged in substantial business transactions and hedging and trading relationships described in <u>Schedule 1</u> attached hereto (collectively, the "<u>Prepetition Hedging and Trading Arrangements</u>").[1]

On _____, 2014 (the "<u>Petition Date</u>"), the Debtors filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>") in the United States District Court for the District of Delaware (the "<u>Bankruptcy Court</u>").

In recognition of the importance of our relationship with certain critical counterparties to the Prepetition Hedging and Trading Arrangements, on the Petition Date, the Debtors requested that the Bankruptcy Court grant the Debtors the authority to satisfy certain prepetition obligations (including, without limitation, collateral posting obligations and payments due for prepetition deliveries and monthly settlement payments after accounting for any offset, netting, or cross-netting provisions included in the Prepetition Hedging and Trading Arrangements) owed to such counterparties under the Prepetition Hedging and Trading Arrangements, subject to certain caps. The Bankruptcy Court entered an order authorizing this relief on _____, 2014, a copy of which is enclosed herewith (the "<u>Order</u>").

[Following the Petition Date, the parties entered into post-petition business transactions and trading relationships documented in a form substantially similar to the Prepetition Hedging and Trading Arrangements (together with the Prepetition Hedging and Trading Arrangements, the "<u>Hedging and Trading Arrangements</u>").]

In accordance with the Order, the Debtors are prepared to enter into this trading counterparty agreement (this "<u>Agreement</u>") in accordance with the following terms:

1.    The estimated accrued balance of the prepetition claims arising on account of Prepetition Hedging and Trading Arrangements (net of any setoffs, credits, or discounts as applicable under the respective Prepetition Hedging and Trading Agreement) that is due and owing to you is $_____ (the "<u>Prepetition Payment Claim</u>") as of the date of this Agreement.

---

[1]    Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to them in the Motion.

2.  The estimated value of the collateral required to be posted to you, but not yet delivered, on account of Prepetition Hedging and Trading Arrangements is $_____ (the "Prepetition Collateral Claim") as of the date of this Agreement.

3.  Subject to the terms and conditions set forth in this Agreement, and subject to the authority granted in the Order, the Debtors hereby agree to:

   (a) pay $_____ on account of the Prepetition Payment Claim (the "Claim Payment");

   (b) pledge, on account of the Prepetition Collateral Claim, $_____ in collateral (in the form of cash or letters of credit) and, to the extent the Prepetition Hedging and Trading Arrangements constitute Permitted Secured Commodity Hedge Agreements, grant a TCEH Super-Priority DIP Lien as permitted under the TCEH DIP Orders and TCEH Cash Collateral Orders (the "Collateral");

   (c) grant you, for your own benefit, effective as of the Petition Date and without the necessity of the execution by the Debtors or filing of security agreements, pledge agreements, mortgages, financing statements or otherwise, pursuant to Bankruptcy Code section 364(c)(2) enforceable first-priority liens and security interests on any cash collateral and/or letters of credit you hold with respect to initial, maintenance, or variation margin or payments in advance, regardless of whether provided to you prior hereto, on or after the date of the Order;

   (d) grant you administrative expense status with respect to any obligations that may arise in connection with the Debtors' postpetition performance under the Hedging and Trading Arrangements and satisfy such obligations at the prices set forth in the respective Hedging and Trading Arrangement; and

   (e) waive any objection to your ability to net exposures, amounts, and obligations across different Hedging and Trading Arrangements entered into between you and a Debtor and acknowledge that there shall be no distinction between prepetition transactions between you and a Debtor and postpetition transactions between you and a Debtor.

4.  The Debtors may satisfy postpetition collateral posting obligations as required by the Hedging and Trading Agreements in the ordinary course of business following execution of this Agreement, subject to the terms and conditions set forth in this Agreement, and subject to the authority granted in the Order, and without prejudice to the Debtors' rights regarding assumption or rejection of Prepetition Hedging and Trading Agreements.

5.  You and the Debtors may apply any and all collateral that may have previously been posted prepetition to any and all postpetition obligations arising under the Hedging and Trading Arrangements.

6.  [You understand that the remaining amount of your Prepetition Payment Claim and your Prepetition Collateral Claim against the Debtors shall be forever released and waived in consideration of the Claim Payment and Collateral.  If you

2

have already filed a proof of claim with the Bankruptcy Court, you will take all necessary steps to withdraw the proof of claim.]   [You understood that the estimated remaining amount of your Prepetition Payment Claim is $_____, and the estimated remaining amount of your Prepetition Collateral Claim is $_____.  If you have already filed a proof of claim with the Bankruptcy Court, you will take all necessary steps to modify the proof of claim to reflect the remaining amounts.  If you have not already filed a proof of claim, you will take all necessary steps to file a proof of claim for the estimated remaining amounts. Nothing in this Agreement should be seen as an admission by the Debtors with respect to the validity or amount of any remaining Prepetition Payment Claim or Prepetition Collateral Claim.]

7.    In consideration of the Claim Payment and Collateral, you agree to waive the utilization or enforcement of any contractual rights to which you may be entitled to liquidate, terminate, or accelerate the Hedging and Trading Arrangements (as such rights may arise under sections 555, 556, 559, 560, and 561 of the Bankruptcy Code).  To the extent any of the Hedging and Trading Agreements contain a right of termination tied to bankruptcy, a bankruptcy proceeding, a potential bankruptcy, insolvency, or the like, then the definition of that event of default or potential event of default, as applicable, shall be deleted in its entirety, *provided*, *however*, that in the event that:  (a) the Debtors file a petition under Chapter 7 of the Bankruptcy Code, or have an involuntary Chapter 7 petition filed against them and such petition is not dismissed or converted to a case under chapter 11 of the Bankruptcy Code within 190 days of the initial filing date, or (b) during the course of these chapter 11 cases, one of the following events occurs:  (x) a chapter 11 trustee with expanded powers is appointed; or (y) any of the Debtors has a receiver, custodian, trustee, or liquidator appointed over all of its assets; the occurrence of such event shall constitute an event of default under the Hedging and Trading Agreements. Nothing in this Agreement should be construed as an admission by the Debtors regarding whether you are entitled to any liquidation, termination, or acceleration rights with respect to the Hedging and Trading Arrangements.

8.    To the extent the Debtors enter into this Agreement before the Bankruptcy Court has entered a final version of the Order, the Debtors further agree to seek and obtain the entry of a final version of the Order containing, in substance, the same relief provided for in the Order, but without regard to the caps proposed under the Order (the "Final Order").  If the Final Order is entered, you agree to permanently waive, relinquish, and discharge the utilization and enforcement of any further rights to which you may be entitled to liquidate, accelerate, or terminate the Hedging and Trading Arrangements, on account of the Debtors' commencement of the chapter 11 cases.

9.    If any or all of the provisions of the Order (or Final Order, if entered) are stayed, modified in a manner adverse to you, or vacated, or the Order (or the Final Order, if entered) otherwise terminates, such stay, modification, vacation or termination

will not affect (a) the validity of any indebtedness, obligation or liability incurred by the Debtors to you before your receipt of written notice of the effective date of such stay, modification or vacation, (b) the validity or enforceability of the security interests, administrative claims and netting and termination rights authorized or created by this Agreement, and (c) your right to exercise remedies as set forth in the Hedging and Trading Arrangements, as the case may be, and you shall be entitled to the benefits of the provisions of section 364(e) of the Bankruptcy Code.

10. The Claim Payment and the Collateral may only be provided upon execution of this Agreement by a duly authorized representative of your company.   Your execution of this Agreement and the return of same to the Debtors constitute an agreement by you and the Debtors.   You agree to be bound by the terms of this Agreement and you submit to the jurisdiction of the Bankruptcy Court, and expressly consent to the entry by the Bankruptcy Court of final rulings, in connection with any enforcement of this Agreement.   You further agree and/or represent:

   (a) to the amount of the Claim Payment and Collateral set forth above;

   (b) that you have reviewed the terms and provisions of the Order and Agreement and that you consent to be bound by such terms and provisions; and

   (c) that you agree to not file or otherwise assert against the Debtors or their assets any lien (regardless of the statute or other legal authority upon which such lien is asserted) or seek payment for reclamation claims or claims pursuant to section 503(b)(9) of the Bankruptcy Code in any way related to prepetition amounts allegedly owed to you by the Debtors arising from agreements, written or otherwise, entered into before the Petition Date.   Additionally, if you have taken steps to file or assert such a lien prior to entering into this Agreement, you agree to take all necessary steps to remove such lien as soon as possible.

11. Notwithstanding the foregoing, if you receive the Claim Payment or the Collateral from the Debtors and you do not continue to perform under the Hedging and Trading Arrangements on a postpetition basis, or fail to perform in accordance with any of the terms and provisions of this Agreement, you are required to return the Claim Payment and the Collateral to the Debtors, and the Debtors may take any of the remedial actions described in the Order.

12. Any dispute with respect to this Agreement and/or your participation in this payment program shall be determined by the Bankruptcy Court, and you expressly waive any right to a trial by jury and withdrawal of the reference for decision by a district court.

13. All terms of this Agreement (including the existence of this Agreement) are confidential between you and the Debtors; *provided, however*, that the Debtors

may disclose this Agreement to the United States Trustee assigned to the chapter 11 cases, any official committee appointed in the chapter 11 cases, and to the Bankruptcy Court *in camera*; *provided further*, *however*, that both you and the Debtors may disclose this Agreement to the extent necessary to comply with the order of any court.

If you have any questions about this Agreement or our restructuring, please do not hesitate to call (_____)_____ or (____)_____.

Sincerely,

_____

By:
Its:
Agreed and Accepted By:
[Title]
[Name of Hedging and Trading Arrangement counterparty]

# EXHIBIT B

**Proposed Final Order**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) | Case No. 14-_____ (___) |
| | ) | |
| Debtors. | ) | (Joint Administration Requested) |
| | ) | |

## FINAL ORDER AUTHORIZING THE DEBTORS TO
## (A) CONTINUE PERFORMING UNDER PREPETITION HEDGING
## AND TRADING ARRANGEMENTS, (B) PLEDGE COLLATERAL
## AND HONOR OBLIGATIONS THEREUNDER, AND (C) ENTER INTO
## AND PERFORM UNDER TRADING CONTINUATION AGREEMENTS
## AND NEW POSTPETITION HEDGING AND TRADING ARRANGEMENTS

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors"), for entry of a final order (this "Order") authorizing, but not directing, the Debtors to: (a) honor, pay, or otherwise satisfy all obligations arising under the Hedging and Trading Arrangements, in the ordinary course of business, without regard to whether such amounts accrued or arose before the Petition Date; (b) pledge and transfer collateral under the Hedging and Trading Arrangements in the form of cash, letters of credit, and, in certain instances, TCEH Super-Priority DIP Liens, as permitted under the terms of the TCEH DIP Orders and the TCEH Cash Collateral Orders, all in the ordinary course of business without regard to whether such obligations accrued or arose before the Petition Date; (c) continue to honor, pay, or otherwise satisfy postpetition obligations arising under the Hedging and Trading

---

[1]    The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810.  The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201.  Due to the large number of debtors in these chapter 11 cases, for which the debtors have requested joint administration, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the debtors' proposed claims and noticing agent at http://www.efhcaseinfo.com.

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

Arrangements in the ordinary course of business consistent with the Risk Management Guidelines and, to the extent applicable, subject to the Internal Hedging Policy; and (d) enter into, and perform under Trading Continuation Agreements and new Postpetition Hedging and Trading Arrangements in the ordinary course of business, consistent with the Risk Management Guidelines, and, to the extent applicable, subject to the Internal Hedging Policy all as more fully set forth in the Motion; and upon the First Day Declaration; and the Court having found that it has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and the Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and the Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and the Court having found that the Debtors provided appropriate notice of the Motion and the opportunity for a hearing on the Motion under the circumstances; and the Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing, if any, before the Court (the "Hearing"); and the Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before the Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.      The Motion is granted on a final basis as set forth herein.

1.      The Debtors are authorized, but not directed, to (a) honor, pay, or otherwise satisfy all obligations under the Hedging and Trading Arrangements in the ordinary course of business, without regard to whether such amounts accrued or arose before or after the Petition Date, consistent with the Risk Management Guidelines, and, to the extent applicable, subject to

the Internal Hedging Policy; (b) pay any amounts accrued in the ordinary course of business as a result of credit support obligations and to pledge and transfer collateral in the form of cash, letters of credit on account of the Hedging and Trading Arrangements, and, in the case of Hedging and Trading Arrangements that constitute Permitted Secured Commodity Hedge Agreements, TCEH Super-Priority DIP Liens, as permitted under the terms of the TCEH DIP Orders and the TCEH Cash Collateral Orders, in the ordinary course of business, without regard to whether such obligations accrued or arose before or after the Petition Date; and (c) enter into and perform under Trading Continuation Agreements and new, Postpetition Hedging and Trading Arrangements in the ordinary course of business on a postpetition basis consistent with the Risk Management Guidelines and, to the extent applicable, subject to the Internal Hedging Policy.

2.      The Debtors are authorized, but not directed, to replace ERCOT's existing letter of credit with a new, postpetition letter of credit to the extent permitted under any DIP financing facility.  For the avoidance of doubt, such new postpetition letter of credit would not be subject to Prepetition Collateral Posting Cap.

3.      The Debtors shall use their commercially reasonable efforts to obtain from any Prepetition Hedging and Trading Arrangement counterparty, as a prerequisite to obtaining payment or collateral pursuant to this Order, written acknowledgement of its obligations to perform under the Prepetition Hedging and Trading Arrangements on a postpetition basis, substantially in the form attached hereto as **Exhibit 1** (the "Trading Continuation Agreement"); *provided*, *however*, that the Debtors may, if necessary under the circumstances, in the Debtors' judgment, satisfy prepetition obligations in accordance with the Prepetition Payment Cap and Prepetition Collateral Posting Cap set forth in the Motion and this Order without obtaining such

3

agreement; *provided further*, *however*, that such payment shall not prejudice any Debtor's right to challenge, as a violation of the automatic stay or otherwise, a Hedging and Trading Arrangement counterparty's refusal to perform under the Hedging and Trading Arrangements on a postpetition basis.

4.    The form Trading Continuation Agreement, attached hereto as **<u>Exhibit 1</u>**, is approved on a final basis; *provided*, *however*, that the Debtors are authorized to modify the Trading Continuation Agreement if a particular situation, in the Debtors' judgment, so requires.

5.    As security and assurance of the Debtors' obligations arising under Hedging and Trading Arrangements, and in exchange for providing benefits to non-terminating counterparties in accordance with this Order:

(a) counterparties are each hereby granted, for their own benefit, effective as of the Petition Date and without the necessity of the execution by the Debtors, or filing, of security agreements, pledge agreements, mortgages, financing statements or otherwise, pursuant to Bankruptcy Code section 364(c)(2) enforceable first-priority liens and security interests on any cash collateral, and/or letters of credit with respect to initial, maintenance or variation margin or payments in advance provided to such counterparty whether prior hereto, on or after the date of this Order;

(b) the obligations, liabilities and indebtedness of the Debtors arising from postpetition market movements, performance and performance obligations in respect of Postpetition Hedging and Trading Arrangements, and postpetition performance under Prepetition Hedging and Trading Arrangements shall have the status of an administrative expense, and shall be paid at the prices set forth in the Prepetition Hedging and Trading Arrangements or Postpetition Hedging and Trading Arrangements, as applicable;

(c) counterparties may net exposures, amounts, and obligations under Prepetition Hedging and Trading Arrangements against exposures, amounts and obligations under other Prepetition Hedging and Trading Arrangements and Postpetition Hedging and Trading Arrangements with a Debtor and vice versa. In this regard, there shall be no distinction between transactions entered into prepetition and postpetition; and

(d) the Debtors and the non-terminating counterparties shall be authorized and permitted to apply any and all cash collateral and/or letters of credit that may have been posted prepetition to any obligations arising postpetition, regardless

of whether such obligations arise under existing Prepetition Hedging and Trading Arrangements or Postpetition Hedging and Trading Arrangements, as applicable.

6.      Notwithstanding the foregoing, if, after receiving payment or collateral pursuant to this Order (and/or the specified terms of a Trading Continuation Agreement), any Prepetition Hedging and Trading Arrangement counterparty does not perform under the Prepetition Hedging and Trading Arrangements on a postpetition basis or otherwise exercises valid and enforceable termination rights under sections 555, 556, 559, 560, and 561 of the Bankruptcy Code with respect to the Prepetition Hedging and Trading Arrangements, then (a) any postpetition payment or collateral received by such Prepetition Hedging and Trading Arrangement counterparty for prepetition obligations shall be deemed, in the Debtors' sole discretion, an improper postpetition transfer, and, therefore, recoverable by the Debtors upon written request by the Debtors, and (b) upon recovery by the Debtors, any prepetition claim of such Prepetition Hedging and Trading Arrangement counterparty shall be reinstated as if the payment had not been made and/or the collateral had not been posted.

7.      If any or all of the provisions of this Order are stayed, modified in a manner adverse to a Hedging and Trading Arrangement counterparty or vacated, or this Order otherwise terminates, such stay, modification, vacation or termination will not affect (a) the validity of any indebtedness, obligation or liability incurred by the Debtors to each of the counterparties before the receipt of written notice by the counterparties of the effective date of such stay, modification or vacation, (b) the validity or enforceability of the security interests, administrative claims and netting and termination rights authorized or created hereby or pursuant to the Hedging and Trading Arrangements, or any related documents, and (c) the rights of the counterparties to exercise remedies as set forth in the Prepetition Hedging and Trading Arrangement or the

Postpetition Hedging and Trading Arrangements, as the case may be, and each counterparty shall be entitled to the benefits of the provisions of section 364(e) of the Bankruptcy Code.

8.      If there exists an outstanding postpetition balance due from the Debtors to a Prepetition Hedging and Trading Arrangement counterparty that does not perform under the Hedging and Trading Arrangements on a postpetition basis or otherwise exercises valid and enforceable termination rights under sections 555, 556, 559, 560, and 561 of the Bankruptcy Code with respect to the Prepetition Hedging and Trading Arrangements, the Debtors may elect, in the Debtors' sole discretion, to recharacterize and apply any payments made pursuant to this Order, and, as applicable, any collateral posted pursuant to this Order to such postpetition balance, and the Prepetition Hedging and Trading Arrangement counterparty shall repay immediately in cash to the Debtors (and, as applicable, return collateral posted by the Debtors) any amounts that exceed the postpetition obligations then outstanding, and without any claim, right of setoff, or recoupment against the Debtors resulting thereby.

9.      This Order does not grant any relief with respect to or affect the rights, duties, or obligations of EFIH or EFIH Finance Inc.

10.      In accordance with this Order and any other order of this Court, each of the financial institutions at which the Debtors maintain their accounts relating to the payment of the obligations described in this Order is authorized to honor checks and electronic payment requests presented for payment of obligations described in this Order and all fund transfer requests made by the Debtors related thereto to the extent that sufficient funds are on deposit in such amounts.

11.      Notwithstanding the relief granted in this Order and any actions taken pursuant to such relief, nothing in this Order shall be deemed (a) an admission as to the validity of any claim against a Debtor entity; (b) a waiver of the Debtors' rights to dispute any claim on any grounds;

(c) a promise or requirement to pay any claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Order or the Motion; (e) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) a waiver or limitation of the Debtors' rights under the Bankruptcy Code or any other applicable law; or (g) an admission that any agreement to which one or more of the Debtors may be party constitutes a Hedging and Trading Arrangement.  Payments made pursuant to this Order shall not be construed as an admission as to the validity of any claim or a waiver of the Debtors' rights to subsequently dispute such claim.

12.     Notice of the Motion as provided therein shall be deemed good and sufficient and the requirements of the Local Bankruptcy Rules are satisfied by such notice.

13.     The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Motion.

14.     Notwithstanding the possible applicability of Bankruptcy Rules 6004(h), 7062, 9014 or otherwise, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

15.     To the extent necessary, the automatic stay provided in section 362 of the Bankruptcy Code is modified to permit ERCOT to continue performing its obligations and exercising its rights under the SFAs and ERCOT protocols.

16.     Nothing in this Order shall authorize or direct the Debtors to take any action that would violate or breach the terms of the TCEH DIP Credit Agreement (as defined in the TCEH DIP Orders) or violate any order of this Court approving the TCEH DIP Facility.

17.     The Debtors shall provide to the DIP Agent (as defined in the TCEH DIP Orders) and counsel to the TCEH First Lien Ad Hoc Committee (as defined in the TCEH Cash Collateral

Orders) monthly written reports, exclusive of counterparty names or identifiers, of all Hedging and Trading Arrangements and all Hedging and Trading Activities summarizing the aggregate amount of collateral pledged, and the aggregate amount of Hedging and Trading Arrangements for which TCEH Super-Priority DIP Liens have been granted pursuant to this Order and/or the DIP Orders, as applicable; *provided*, *however*, that, with the exception of the aggregate amount of collateral pledged, and the aggregate amount of Hedging and Trading Arrangements for which TCEH Super-Priority DIP Liens have been granted, the Debtors shall not be required to provide any other information in such monthly reports that the Debtors reasonably believe is subject to another confidentiality agreement (or other contractual or legal obligation of confidentiality) between the Debtors and their Hedging and Trading Arrangements counterparties.

18.    Subject to the Internal Hedging Policy (including any subsequent modification to such policy in a manner consistent with such Internal Hedging Policy and this Order), the Debtors shall not enter into wholesale Hedging and Trading Arrangements with a tenor beyond December 31, 2015.  The Debtors shall not be permitted to amend the tenor and hedge limitations set forth in the Internal Hedging Policy, including, without limitation, the Hedging Ceiling, in a manner that, in the Debtors' judgment, varies materially from the Debtors' historical hedging practices over the past two years without further order of the Court.

19.    Notwithstanding anything herein to the contrary, the provisions of this Order shall not apply to the First Lien Hedges and Swaps or the Legacy Swaps, and the Debtors are not authorized hereunder to make any payments or other transfers (except for the return of cash collateral held by Debtors pursuant to the First Lien Hedges and Swaps) on account of or in relation to the First Lien Hedges and Swaps or the Legacy Swaps.

20.    The relief granted in this Order applies only to Hedging and Trading

Arrangements not previously assumed, rejected, or terminated pursuant to sections 365, 546, 555, 556, and 559 of the Bankruptcy Code.

21.     Notwithstanding the relief granted in this Order, any payment made by the Debtors pursuant to the authority granted herein shall be subject to the TCEH DIP Orders and the TCEH Cash Collateral Orders.

22.     All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

23.     The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Motion.

24.     The Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation of this Order.

Wilmington, Delaware
Dated: _____, 2014

_____
UNITED STATES BANKRUPTCY JUDGE