**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| ENERGY FUTURE HOLDINGS CORP., *et.al.*, | § § | Case No. 14-10979 (CSS) |
| | § | |
| | § | (Jointly Administered) |
| Debtors. | § | |
| | § | Re: Dkt. No. 3963 |
| | § | |
| | § | Hearing Date: April 14, 2015 at 9:30 a.m. |
| | § | Objection Deadline: April 7, 2015 at 4:00 p.m. |
| | § | |

**LIMITED OBJECTION OF FOREST CREEK WIND FARM, LLC TO THE MOTION OF ENERGY FUTURE HOLDINGS CORP., *ET AL.*, FOR ENTRY OF AN ORDER AUTHORIZING LUMINANT ENERGY COMPANY LLC TO REJECT A CERTAIN EXECUTORY CONTRACT WITH FOREST CREEK WIND FARM, LLC, EFFECTIVE *NUNC PRO TUNC* TO MARCH 24, 2015**

Forest Creek Wind Farm, LLC ("Forest Creek"), by and through its undersigned counsel, hereby files this limited objection (the "Objection") to the *Motion of Energy Future Holdings Corp., Et Al., For Entry of an Order Authorizing Luminant Energy Company LLC to Reject a Certain Executory Contract with Forest Creek Wind Farm, LLC, Effective Nunc Pro Tunc to March 24, 2015* [D.I. No. 3963] (the "Rejection Motion"), filed by the above-captioned debtors and debtors in possession (collectively, the "Debtors"). In support of the Objection, Forest Creek respectfully states as follows:

**PRELIMINARY STATEMENT**

1. Forest Creek and Debtor Luminant Energy Company LLC ("Luminant") are parties to a Renewable Energy and Renewable Energy Credits Purchase Agreement dated as of

15102900_8

March 10, 2006, as amended or modified (the "<u>Contract</u>").[1] The Contract sets forth the terms of Luminant's exclusive right and obligation to (i) purchase renewable energy and renewable energy credits from Forest Creek at the Forest Creek point of interconnection with the Electric Reliability Council of Texas, Inc. ("<u>ERCOT</u>") transmission system and (ii) designate whether and how much power to schedule and deliver from Forest Creek's wind farm in Howard County, Texas (the "<u>Renewable Resource Facility</u>").

2. In the Rejection Motion, the Debtors seek to reject the Contract *nunc pro tunc* to March 24, 2015. While Forest Creek does not oppose rejection of the Contract, the extraordinary relief of retroactive effect of rejection should not be permitted. Luminant has not complied with the applicable ERCOT protocols to transition its role as QSE (defined below) effective as of March 24, 2015 (or any other date). Forest Creek independently contacted ERCOT regarding the relief sought in the Rejection Motion and understands that the earliest possible date that ERCOT will approve a change in QSE is April 15, 2015, pursuant to an expedited process. For this reason, rejection of the Contract should be effective no earlier than April 15, 2015.

3. As explained in detail below, Luminant's proposed retroactive rejection combined with Luminant's failure to follow applicable ERCOT protocols to end its role as QSE would foreclose, both prospectively and retroactively, the Renewable Resource Facility's ability to sell its power to any party from March 24 to April 15. In such circumstances, the exceptional relief of retroactive rejection should not be granted.

## BACKGROUND

### A. Regulatory and Contractual Framework

---

[1] Forest Creek and Luminant are successors to the parties named in the Contract, Aitricity Forest Creek Wind Farm, LLC and TXU Portfolio Management Company LP, respectively. Capitalized terms not otherwise defined herein shall have the same meaning as set forth in the Contract, attached hereto as **Exhibit I**.

15102900_8

4.  Pursuant to the Contract, Luminant and Forest Creek agreed to comply with the rules of ERCOT ("the <u>ERCOT Protocols</u>").  Moreover, as regulated entities in the ERCOT market, the parties are also independently subject to the ERCOT Protocols,[2] the Substantive Rules of the Public Utility Commission of Texas ("<u>PUCT</u>"),[3] and the statutory framework of the Public Utility Regulatory Act ("<u>PURA</u>"),[4] along with the standards and regulations of the North American Electric Reliability Corporation, Inc.  ("<u>NERC</u>").

5.  The ERCOT Protocols require that only one entity may serve as the Qualified Scheduling Entity ("<u>QSE</u>") for the Renewable Resource Facility.[5]  Pursuant to the Contract, Luminant serves as the sole QSE for the Renewable Resource Facility, controlling the electrons from the Renewable Resource Facility as soon as they reach the ERCOT transmission grid. Luminant is also the Decision Making Entity ("DME") with respect to the Renewable Resource Facility. Luminant's regulatory and contractual role as QSE and DME provides Luminant with exclusive control of the production, sale, and delivery of the wind power and the renewable energy credits generated by the Renewable Resource Facility.

6.  The ERCOT Protocols govern both Forest Creek and Luminant's participation in the ERCOT market and carry both the force of law and are enforced by the PUCT.  Additionally, as a condition of participating in the ERCOT market, all market participants must agree to

---

[2] *See*, PUCT Subst. Rule §25.503.

[3] Both resource entities such as Forest Creek, and power marketers including Luminant, "shall observe all scheduling, operating, planning, reliability, and settlement policies, guidelines, and procedures established by the independent system operator in ERCOT.  Failure to comply with this subsection may result in the revocation, suspension, or amendment of a certificate as provided by Section 39.356 or in the imposition of an administrative penalty as provided by Section 39.357." Public Utility Regulatory Act, TEX. UTIL. CODE ANN. §39.151(j) (Vernon 2007 & Supp. 2014 ).

[4] Public Utility Regulatory Act, TEX. UTIL. CODE ANN. §§11.001 *et. seq.* (Vernon 2007 & Supp. 2014) . *See specifically* § 39.151(d) "The [PUCT] shall adopt and enforce rules relating to the reliability of the regional electrical network and accounting for the production and delivery of electricity among generators and all other market participants, or may delegate to an independent organization responsibilities for establishing or enforcing such rules.  Any such rules adopted by an independent organization and any enforcement actions taken by the organization are subject to commission oversight and review."

[5] ERCOT Protocol § 3.1.4.1 requires that each generator, as a Resource Entity, shall establish a Single Point of Contact with ERCOT.

comply with the ERCOT Protocols pursuant to an ERCOT Standard Market Participant Agreement. The ERCOT Protocols prohibit any generation resource, including the Renewable Resource Facility, from participating in the ERCOT market, that is generating, selling and delivering any electric power to any party, except through a QSE.  Since Luminant is currently the QSE for the Renewable Resource Facility, neither Forest Creek nor any other party can cause the Renewable Resource Facility to sell its power to any third party.

7. Pursuant to the ERCOT regulatory scheme, no other party can serve in this capacity until Luminant's role is terminated.  The ERCOT Protocols are very specific that if a QSE intends to terminate representation of a resource such as Forest Creek, "the QSE shall provide, no less than 12 Business Days before the specified effective termination date ("Termination Date"), written notice to ERCOT and…the Resource."[6]  On information and belief, as of the date of this Objection, Luminant has not commenced the process with ERCOT to terminate its role as QSE or as DME.  Therefore, under Luminant's proposed retroactive application of the rejection, there will not be any QSE representing the Renewable Resource Facility that permits the Renewable Resource Facility to sell to any third party from March 24 to April 14 (the "Notice Period").  Moreover, Luminant has already purchased and consumed the electricity for weeks, and cannot return the electricity since unlike other commodities, it cannot be stored.  By seeking retroactive rejection, Luminant would prevent the Renewable Resource Facility's ability to sell its power to any party during the Notice Period.

8. Moreover, Luminant has committed to NERC that it will perform certain Coordinated Functional Registration Generator Operator reliability functions for the Renewable Resource Facility while Luminant acts as the QSE.  The Renewable Resource Facility cannot provide the Luminant reliability functions without also being the QSE.  The NERC penalty for

---

[6] ERCOT Protocols §16.2.3.3, Qualified Scheduling Entity Service Termination.

15102900_8

failures to provide services to the bulk power system range up to $1,000,000 per violation per day the violation continues, to which Luminant could be subject in the event it fails to comply with its obligations under its Coordinated Functional Registration as the Generator Operator for the Renewable Resource Facility.

### B. Problems with Retroactive Relief

9.  In the Rejection Motion, the Debtors request approval of the rejection of the Contract.  The Rejection Motion further seek the extraordinary relief of *nunc pro tunc* effectiveness of the rejection to March 24, 2015, the date the Debtors field the Rejection Motion.

10.  Forest Creek does not oppose the Debtors' rejection of the Contract.  In fact, after the filing of this Objection, Forest Creek intends to notice of termination of the Contract effective as of April 15, 2015,[7] the date that Forest Creek expects ERCOT to transition the QSE role from Luminant to Forest Creek, in response to an expedited request issued by Forest Creek to ERCOT.

11.  Forest Creek *does* object to the extraordinary relief of *nunc pro tunc* effectiveness of the rejection.  Despite the Debtors' inaccurate representation in the Rejection Motion that "Forest Creek controls the delivery of wind power under the Contract, and will not suffer any meaningful burden as a result," *Luminant* (not Forest Creek) remains in its role as QSE and DME and therefore controls the Renewable Resource Facility.  *Luminant* (not Forest Creek) continues to benefit from the Contract during the Notice Period.

---

[7] Termination is permitted pursuant to paragraph 10 of the Court's Final Order (re: Non-Proprietary Trading and Hedging Transactions Involving the Debtors' Power Generation and Retail Operations) Authorizing the Debtors to (a) Continue Performing Under Prepetition Hedging and Trading Arrangements, (b) Pledge Collateral and Honor Obligations Thereunder, and (c) Enter into and Perform under Trading Continuation Agreements and New Postpetition Hedging and Trading Arrangements and section 8.02 of the Contract in conjunction with Bankruptcy Code sections 362(b)(6) and 556.

15102900_8

12.     Given that ERCOT, rather than either Forest Creek or Luminant, is in control of the transfer of the QSE responsibility from Luminant to an alternate QSE, and that ERCOT has indicated that it will not make such switch before April 15, 2015 at 12:00 a.m., Forest Creek has had no ability to sell its wind power to any third party or into the market to reduce the damages caused by Luminant's proposed retroactive rejection. Forest Creek can schedule, sell and deliver only through Luminant, the Single Point of Contact for the Forest Creek Renewable Resource. The Debtors effectively ask the Court for permission to hold Forest Creek's power hostage during the Notice Period and walk away from Luminant's obligations to Forest Creek during the same period.  Clearly, retroactive rejection will impose a "meaningful burden" upon Forest Creek, and the Debtors will be unable to satisfy their burden of demonstrating that the equities weigh in favor of such extraordinary relief.

13.     Finally, Luminant's failure to obtain ERCOT approval of a change in QSE could violate ERCOT protocols and possibly result in enforcement action by the PUCT and/or NERC. An inescapable consequence of retroactive rejection is that Luminant shall not have served in the role as QSE during the Notice Period.  Serving in such capacity during the Notice Period is inconsistent with both the Coordinated Functional Registration as Generator Operator registration signed by both Forest Creek and Luminant with NERC and the ERCOT Protocols that require transfers of QSE obligations to occur in accordance with ERCOT's ability to make those switches.  The ERCOT process on changes to QSE designation is very specific and intended to have the ERCOT software systems properly sync with changes to the Single Point of Contact.  Pursuant to ERCOT Protocols § 16.5.3(3), Changing QSE Designation, physical telemetry must be installed prior to a QSE transfer, and the transfer of the QSE can only take place in accordance with the Time Line for Network Operations Model Changes in ERCOT

15102900_8

Protocols § 3.10.1.  Because of these necessities, ERCOT Protocols § 16.2.3.3 Qualified Scheduling Entity Service Termination requires *no less than* 12 business days' notice prior to a specified QSE transition effective date (emphasis added).  Luminant is asking the Court's permission to default on the ERCOT Protocol obligations, which Luminant is bound to follow pursuant to its ERCOT Standard Market Participant Agreement.  Luminant's Standard Market Participation Agreement has not been rejected because Luminant would not be permitted to operate in the ERCOT market without a Standard Market Participant Agreement.

### C. Current Status of Renewable Resource Facility

14. As of the date of this Objection, Luminant continues to exclusively control the scheduling, delivery and sale of wind power produced by the Renewable Resource Facility pursuant Luminant's contractual and regulatory role as QSE, DME, and in accordance with Luminant's and Forest Creek's NERC Coordinated Functional Registration to perform Generator Operator responsibilities.

15. On information and belief, Luminant has not followed the ERCOT Protocols to terminate its role as QSE effective as of March 24, 2015 or any other date.  Forest Creek understands that the earliest possible date that ERCOT will approve a change in QSE is April 15, 2015, pursuant to an expedited process.

## LIMITED OBJECTION TO *NUNC PRO TUNC* RELIEF

16. Forest Creek does not oppose the Debtors' request to reject the Contract, but only its request that the rejection apply retroactively to March 24, 2015.

### A. Retroactive Rejection of the Contract is Unwarranted, Extraordinary Relief.

17. In general, an executory contract is considered rejected as of the date of the order approving the rejection. *See Pac. Shores Dev. LLC v. At Home Corp. (In re At Home Corp.)*, 392

F.3d 1064, 1072 (9th Cir. 2004). "[O]nly in exceptional circumstances" should a bankruptcy court adopt a retroactive date. *See id.* (quoting *In re O'Neil Theatres, Inc.*, 257 B.R. 806, 808 (Bankr. E.D. La. 2000)). The Debtors, as the parties seeking retroactive relief, have the burden to demonstrate that such exceptional relief is warranted. *TW, Inc. v. Agelastro (In re TW, Inc.)*, No. 03-10785 (MFW), 2004 WL 115521, at *2 (D. Del. Jan 14, 2004) ("An order granting relief *nunc pro tunc* is not a remedy that should be given as a matter of course, but only after a balancing of the equities in a particular case. It is the burden of the moving party to show that relief, of this character, is appropriate."); *see In re Federated Dept's Stores, Inc.*, 131 B.R. 808, 815-16 (S.D. Ohio 1991) (placing the burden on the debtors to justify retroactive relief).

18. To satisfy their burden and demonstrate that retroactive rejection is warranted, the Debtors must show that the balance of the equities weighs in favor of granting the relief. *In re TW, Inc.*, 2004 WL 115521, at *2 ("A bankruptcy court may 'when principles of equity so dictate … approve a rejection of a nonresidential lease pursuant to section 365(a) retroactive to the motion filing date.' 'The power to grant relief retroactively is derived from the bankruptcy's [sic] equitable powers to insure [sic] a fair outcome.'") (quoting *Thinking Mach. Corp. v. Mellon Fin. Servs. Corp. #1 (In re Thinking Mach. Corp.)*, 67 F.3d 1021, 1028 (1st Cir. 1995)); s*ee In re Chi-Chi's, Inc.*, 305 B.R. 396, 399 (Bankr. D. Del. 2004) ("[T]he bankruptcy court has discretion to approve a rejection of a nonresidential lease pursuant to § 365(a) retroactive to the motion filing date, *when principles of equity so dictate*.") (emphasis added) (citations omitted).

19. Here, no exceptional circumstances warrant *nunc pro tunc* relief because (i) the Debtors have failed to properly extricate themselves from their regulatory and contractual role as QSE in connection with the Renewable Resource Facility during the Notice Period and (ii) Forest Creek is unable to sell wind energy to any third party or into the ERCOT market during

any time it does not have a QSE in place to cover its damages during the Notice Period, and (iii) the Debtors' failure to follow applicable protocols and regulations subjects either or both parties to administrative penalties and causes Luminant to breach its Standard Market Participant Agreement; and (iv) although Luminant seeks to retroactively reject, it has consumed electricity from Forest Creek throughout this time period and unlike a good that can be stored and returned, electricity that Luminant scheduled and dispatched, all of which was consumed, cannot be returned, and Forest Creek cannot be compensated through the ERCOT settlement processes if Luminant is not the QSE for Forest Creek during that period.

**B. The Balance of the Equities Weighs Against Retroactive Relief Because of the Luminant's Ongoing Responsibility under the Applicable Regulatory Framework.**

20. Luminant is bound to follow all applicable ERCOT Protocols pursuant to its Standard Market Participant Agreement with ERCOT and as part of its registration with the Public Utility Commission of Texas to participate in the ERCOT Market as Power Marketer.[8] The PUCT requires compliance by power marketers and all market entities specifically with scheduling, operating, planning, reliability and settlement procedures applicable to the ERCOT region.[9] Moreover, for so long as Luminant is the QSE for Forest Creek, in order to comply with NERC standards, it must continue to act in accordance with the Coordinated Functional Registration as Generator Operator for the Forest Creek Renewable Resource Facility.

21. Pursuant to the above-described PUCT power marketer requirements of Luminant, the ERCOT Standard Form Market Participant in place by and between ERCOT and Luminant, and section 5.06 of the Contract, Luminant is the QSE, the Single Point of Contact

---

[8] Luminant Energy Company LLC is registered with the PUCT as a power marketer pursuant to P.U.C. PROJECT NO. 14406. P.U.C. SUBST. R. 25.105 sets out the criteria for registration of power marketers and P.U.C. SUBST. R. 25.503, requires that power marketers comply with the ERCOT procedures relating to wholesale markets including the ERCOT Protocols.
[9] *See* P.U.C. SUBST. R. 25. 503.

15102900_8

with ERCOT or any third party buyers of electricity. Luminant is obligated to perform as QSE for the Renewable Resource Facility in accordance with the ERCOT Protocols. As such, Luminant's responsibilities include "scheduling of power from the Renewable Resource Facility for delivery hereunder, managing the impact of [Forest Creek's] actual production not matching the amount scheduled and settling ERCOT statements on [Forest Creek's] behalf." Contract § 5.06. Simply put, Luminant sells Forest Creek's power. Absent Luminant acting as the QSE under the Contract for any period in which it is the QSE under the ERCOT Protocols, Luminant prevents Forest Creek from selling it power to any third party or the market, and violates the ERCOT Protocols.

22. On information and belief, despite the filing of the Rejection Motion, Luminant has failed to comply with ERCOT Protocols regarding a change in its status as a QSE. Under the applicable ERCOT Protocols and NERC regulations, Luminant does not have the ability to alter its status as a QSE absent compliance with the governing rules. Failure to comply with the ERCOT Protocols and NERC regulations could subject the Debtors' estates to significant liability separate and apart from Forest Creek's administrative priority claims if the Contract is effectively rejected prior to Luminant complying with the applicable regulatory requirements.

23. In the absence of action by Luminant, Forest Creek contacted ERCOT to advise ERCOT of Luminant's proposed retroactive application of the rejection and to inquire, under such circumstances, as to Forest Creek's ability and ERCOT's willingness to both terminate Forest Creek's QSE relationship with Luminant and to implement a switch in Forest Creek's QSE relationship to a new QSE. ERCOT indicated, even under such circumstances, that the earliest possible date that ERCOT could expedite termination of Luminant's role as QSE and

15102900_8

effect a switch of the QSE function from Luminant to an alternate QSE was 12:00 a.m. on April 15, 2015.

24. Accordingly, the Rejection Motion should not be effective prior to Luminant having the power under applicable non-bankruptcy law to cease performance of its duties as the sole QSE for the Forest Creek Renewable Resource Facility. The Debtors have failed to demonstrate exceptional circumstances sufficient to warrant *nunc pro tunc* relief because Luminant continues to control and benefit from the Contract. Forest Creek requests that the Court deny the Rejection Motion insofar as it requests *nunc pro tunc* relief to March 24, 2015.

**C. The Balance of the Equities Weighs Against Retroactive Relief Because of Forest Creek's Inability to Control the Sale of Wind Power During the Notice Period.**

25. The Debtors have not carried their burden to demonstrate that *nunc pro tunc* rejection is warranted by the equities of the case for the additional reason that Forest Creek is unable to mitigate the damage caused by Luminant's rejection during the Notice Period.

26. The Debtors represented to the Court that "Forest Creek controls the delivery of wind power under the Contract, and will not suffer any meaningful burden as a result." Rejection Motion ¶ 13. The Debtors also stated that they "do not seek to obtain any benefit under the Contract after the date hereof." *Id.* Both of these statements relate to significant factors that the Court should consider in its determination of whether *nunc pro tunc* relief is appropriate, and both of these statements are false. As explained above, Luminant, not Forest Creek, controls delivery of wind power during the Notice Period and does so primarily for the Debtors' benefit. Luminant has already scheduled and delivered power during the Notice Period that has been consumed. These transactions cannot be properly settled through ERCOT until a QSE transfer can take place. Luminant could have sought rejection to coincide with its regulatory responsibilities as a QSE, a Power Marketer and with its Coordinated Functional Registration as

Generation Operator, but chose not to do so, effectively stranding the Forest Creek Renewable Resource Facility with no market during the time Luminant continued to schedule, deliver and consume electricity from Forest Creek.

27. Courts have frequently denied *nunc pro tunc* relief when a debtor received a post-petition benefit from an executory contract. *See, e.g.*, *In re TW, Inc.*, 2004 WL 115521, at *2 (affirming the denial of *nunc pro tunc* relief where possession [] was not properly surrendered and that fault…indisputably rested with the debtor"); *In re Chi-Chi's, Inc.*, 305 B.R. at 399 (denying retroactive relief to the petition date where the debtors had not surrendered the leased premises as of the petition date); *In re Cafeteria Operators, L.P.*, 299 B.R. 384, 394 (Bankr. N.D. Tex. 2003) (denying retroactive relief to the petition date for occupied leases, pursuant to which the debtor received post-petition rent payments).

28. In contrast, courts have granted the exceptional relief of retroactive rejection when debtors rejected their executory contracts either prior to or immediately after filing for bankruptcy and did *not* receive a post-petition benefit from the executory contract. *See, e.g.*, *In re New Meatco Provisions, LLC*, BAP No. CC-13-1319-KiLaPa, 2014 WL 2446314, at *5-7 (B.A.P. 9th Cir. May 30, 2014) (affirming the bankruptcy court's discretion to allow *nunc pro tunc* relief where the debtor promptly filed a rejection motion and was not receiving a benefit under the lease at issue); *Stonebriar Mall L.P. v. CCI Wireless, LLC (In re CCI Wireless, LLC)*, 297 B.R. 133, 140 (D. Colo. 2003) (affirming the bankruptcy court's ruling granting *nunc pro tunc* relief where the debtor "had not been in possession of the leased premises at issue since before (or shortly after) its Chapter 11 filing").

29. The Debtors' false representations that they would not receive a benefit under the Contract and had no control over the delivery of wind power during the Notice Period are

material. The reality of the situation is that Luminant, as the QSE, controls all aspects of scheduling the delivery of wind power under the Contract. Due to Luminant's control, Forest Creek, far from "controlling" its interest, is bound by Luminant's decisions during the Notice Period.

30. Pursuant to the ERCOT Protocols, Forest Creek does not have the immediate ability to control the production and sale of renewable power produced by the Renewable Resource Facility. Much like a landlord who is prevented from accessing his property by a debtor and unable to relet his premises, Forest Creek cannot sell its wind power to any third party or into the market in order to minimize damages during the Notice Period, because it can schedule, sell and deliver only through Luminant, the Single Point of Contact for the Forest Creek Renewable Resource. Forest Creek suffers a meaningful burden as a result.

31. In addition, the Debtors have continued to benefit from Forest Creek's continued performance under the Contract, despite the Debtors' assertion to the contrary. Forest Creek has upheld its end of the Contract and continued to incur expenses while supplying the Debtors with energy resources.[10]

32. Debtors should have complied with the ERCOT Protocols they are bound by in order to provide a seamless transition through ERCOT to a new QSE.[11] Because the QSE was not terminated or transferred as required by the ERCOT Protocols, Debtors also may subject themselves to liability under the NERC Coordinated Functional Registration that requires that Luminant perform functions that only can be performed by a QSE. If Luminant succeeds in its

---

[10] Upon Forest Creek's receipt of the Rejection Motion, Forest Creek promptly contacted the Debtors to remind them of their regulatory duties and offered to make the rejection effective as of the earliest date of regulatory approval of Luminant's change in QSE status (i.e., April 15, 2015).

[11] Forest Creek requested last year that it be permitted to act as its own QSE for reasons just such as this, and Luminant refused to allow Forest Creek to schedule and deliver its own power citing the Contract and the ERCOT Protocols. Now, the Debtors failed to comply with those same ERCOT Protocols to sequence the rejection in accordance with the regulatory requirements of the PUCT and ERCOT to which Luminant is subject both as a Power Marketer and a QSE.

obtaining retroactive relief, Luminant will not have been capable of providing those services during the Notice Period.

33. Accordingly, the Debtors fail to meet their burden to show that the circumstances are particularly exceptional such as to warrant the remedy of *nunc pro tunc* relief.

FOR THE ABOVE STATED REASONS, Forest Creek respectfully requests that this Court deny the Debtors' Rejection Motion insofar as it seeks relief *nunc pro* tunc to March 24, 2015, and grant such other relief as is just and proper.

Dated: April 7, 2015

Of Counsel:

Charles A. Beckham, Jr.
Diana M. Liebmann
Ian T. Peck
HAYNES AND BOONE, LLP
2323 Victory Avenue, Suite 700
Dallas, Texas 75219
Telephone:  (214) 561-5000
Facsimile:  (214) 651-5940
diana.liebmann@haynesboone.com
ian.peck@haynesboone.com

Respectfully submitted,

FARNAN LLP

/s/ Brian E. Farnan
Brian E. Farnan (Bar No. 4089)
919 N. Market St., 12th Floor
Wilmington, DE 19801
(302) 777-0300
bfarnan@farnanlaw.com

*Attorneys for Forest Creek Wind Farm, LLC*

15102900_8