**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) | Case No. 14-10979 (CSS) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | **Re: D.I. 3961, 4069** |

**DEBTORS' REPLY TO CLOUD PEAK ENERGY RESOURCES LLC'S OBJECTION
TO THE MOTION OF ENERGY FUTURE HOLDINGS CORP., *ET AL.*, FOR
ENTRY OF AN ORDER AUTHORIZING LUMINANT ENERGY COMPANY
LLC TO REJECT A CERTAIN EXECUTORY CONTRACT WITH CLOUD PEAK
ENERGY RESOURCES LLC, EFFECTIVE *NUNC PRO TUNC* TO MARCH 24, 2015**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") file

this reply (this "Reply") to the objection (the "Objection") of Cloud Peak Energy Resources LLC

("Cloud Peak") [D.I. 4069] to the Debtors' motion (the "Motion") [D.I. 3961] seeking authority

to reject the Master Coal Purchase and Sale Agreement dated March 22, 2002 (the "Master

Agreement") entered into between predecessors in interest to Luminant Energy Company LLC

("Luminant") and Cloud Peak.  In support of this Reply, the Debtors submit the *Supplemental

Declaration of Robert Frenzel in Support of Motion of Energy Future Holdings Corp.*, et al.*, for

Entry of an Order Authorizing Luminant Energy Company LLC to Reject a Certain Executory

Contract with Cloud Peak Energy Resources LLC, Effective* Nunc Pro Tunc *to March 24, 2015.*

In further support of this Reply, the Debtors respectfully state as follows.

---

[1]  The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810.  The location of the
debtors' service address is 1601 Bryan Street, Dallas, Texas 75201.  Due to the large number of debtors in these
chapter 11 cases, which are being jointly administered, a complete list of the debtors and the last four digits of
their federal tax identification numbers is not provided herein.  A complete list of such information may be
obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

**Preliminary Statement**

1.      The Court should overrule the Objection.  The Motion seeks to reject obligations under the Master Agreement.   The Master Agreement contemplates that the Debtors will periodically enter into transactions for the future purchase of coal and later evidence those transactions with confirmation letters.  All of the transactions that the Motion seeks to reject were arranged before the Petition Date and have mutual obligations outstanding.  Thus, they are subject to rejection under section 365 of the Bankruptcy Code.

2.      Cloud Peak nonetheless asserts that the Court's first-day order concerning hedging and trading contracts, as well certain postpetition writings, turn these prepetition transactions into postpetition transactions that the Debtors cannot reject.  *First*, the applicable Court order explicitly states the opposite.  It does not authorize the assumption of any contract or otherwise obligate the Debtors to perform under any agreement.  Hedging and Trading Order ¶ 13(e).  *Second*, the Master Agreement and the transactions under it are plainly executory. Cloud Peak's assertion that certain postpetition writings prohibit rejection is contrary to applicable Third Circuit case law.  The Debtors therefore respectfully submit that the Court should overrule the Objection and authorize the Debtors to reject the Master Agreement.

**Background**

3.      The Debtors filed their chapter 11 petitions on April 29, 2014 (the "Petition Date").  The Master Agreement, executed March 22, 2002, contemplates that Luminant will purchase coal from Cloud Peak under transactions providing for the delivery of a certain quantity at a certain price over a certain period (the "Transactions").   These Transactions are to be

evidenced by written confirmation letters (the "Confirmations" and, collectively with the Master

Agreement and the Transactions, the "Agreement").[2]

4.     The following three Transactions under the Agreement are relevant here:

| Transaction Date | Confirmation Date | Description | Postpetition Writings |
|---|---|---|---|
| 2/21/2013 | 4/8/2013 | Transaction under Confirmation Letter 2145 for Coal January 2014 through December 2015 (C01550) (the "2145 Transaction") | Amendments to Confirmation Dated September 25, 2014, November 28, 2014, and December 23, 2014 (the "2145 Amendments") |
| 2/21/2013 | 4/8/2013 | Transaction under Confirmation Letter 2146 for Coal January 2014 through December 2015 (C01552) (the "2146 Transaction") | None |
| 4/25/2014 | 7/8/2014 | Transaction under Confirmation Letter 2269 for Coal January 2015 through December 2015 (C01573) (the "2269 Transaction") | Confirmation Dated July 8, 2014 (the "2269 Confirmation" and, collectively with the 2145 Amendments, the "Postpetition Writings") |

5.     By the Motion, the Debtors seek to reject the Agreement, including the purchase

obligations under the 2145 Transaction, the 2146 Transaction, and the 2269 Transaction.  The

Objection asserts, incorrectly, that the final hedging and trading order entered by the Court

[D.I. 860] (the "Hedging and Trading Order"), as well as the Postpetition Writings, turn the

Agreement or certain of the Transactions into postpetition contracts not capable of rejection.

---

[2]     The Objection treats each of the Transactions as a separate contract.  *See* Objection ¶ 1.  But the Master Agreement, the Transactions, and the Confirmations form one integrated contract under the plain language of the Agreement.  *See* Master Agreement § 2.1 ("[T]he terms and provisions of such Confirmation will constitute an integrated part of this Master Coal Purchase and Sale Agreement and will be read and construed as one with this Master Coal Purchase and Sale Agreement.").

The Court could thus find that rejecting the Agreement effectuates a rejection of each of the Transactions without separately analyzing the Transactions.  *See, e.g., In re Buffets Holdings, Inc.*, 387 B.R. 115, 120 (Bankr. D. Del. 2008) (Bankruptcy Code generally requires that integrated contracts be assumed or rejected in their entirety).  Regardless, because the Transactions would be subject to rejection as separate agreements as well, the Debtors address them as such in this Reply.  All of the arguments set forth in this Reply would apply with equal if not greater force if the Court were to find that the Master Agreement and the Transactions constituted an integrated contract.

**<u>Argument</u>**

**I.** **The Hedging and Trading Order and the Debtors' Actions Under the Order Do Not Prevent the Debtors from Rejecting the Agreement or the Transactions, Both Expressly and as a Matter of Law.**

6.     The Hedging and Trading Order is explicit that "[t]he Debtors are authorized, *but not directed*," to pay prepetition and postpetition obligations under certain hedging and trading contracts, including the Agreement.  Hedging and Trading Order ¶ 2 (emphasis added).    In exchange for paying prepetition amounts, the Debtors are required to use commercially reasonable efforts to cause counterparties to enter into a "Trading Continuation Agreement" that includes a waiver of the counterparties' safe harbor rights under the Bankruptcy Code.  *Id.* ¶ 4.[3]

7.     In addition, the Order provides that "*postpetition performance* under the Prepetition Hedging and Trading Arrangements shall have the status of an administrative expense."  Hedging and Trading Order ¶ 6(b) (emphasis added).  It also expressly states that it is neither a request nor an authorization to assume any agreement.  *Id.* ¶ 13(e) ("[N]othing in this Order shall be deemed . . . a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code . . . .").  Yet the Objection asserts that, under the Hedging and Trading Order, the Debtors are now prohibited from rejecting the Agreement or the Transactions.

8.     Cloud Peak's argument is an inappropriate extension of carefully crafted first-day relief.  The Hedging and Trading Order gave the Debtors authority to pay prepetition amounts due under the Agreement and enter into new postpetition agreements.  And it grants administrative priority status for prepetition amounts due upon actual performance—in other

---

[3]    Although the Debtors sought to enter into a Trading Continuation Agreement with Cloud Peak, Cloud Peak ultimately did not execute a Trading Continuation Agreement.  *See* Objection Ex. B.  Consistent with the Hedging and Trading Order, the Debtors paid Cloud Peak certain prepetition amounts due under the Agreement. *See* Objection Ex. E.

words, goods actually delivered to the Debtors or services actually rendered to the estates.  The

quid pro quo is straightforward:  the Court entered the Order to *protect* the Debtors and allow the

estates to obtain a safe-harbor concession from counterparties, not to limit the Debtors' statutory

rights.  The Debtors have entered into similar arrangements with countless vendors and trading

counterparties pursuant to the applicable first-day orders, including the Hedging and Trading

Order.  The Debtors did not have authority under any of these arrangements to assume

prepetition obligations.

9.    Nor did actions the Debtors took in accordance with the Hedging and Trading

Order cause an assumption of the Agreement.  The Bankruptcy Code provides that a debtor,

"*subject to the court's approval*, may assume or reject any executory contract or unexpired

lease."  11 U.S.C. § 365(a) (emphasis added).  The Third Circuit has stated:

> We have generally treated court approval as a prerequisite to a debtor's
> assumption of an executory contract. . . . In order to insure that a debtor has the
> opportunity to assess the advantages and disadvantages of assuming a contract,
> assumption must be approved.  It cannot be presumed.

*Univ. Med. Ctr. v. Sullivan (In re Univ. Med. Ctr.)*, 973 F.2d 1065, 1077 (3d Cir. 1992); *see also*

*In re The IT Grp., Inc.*, 322 B.R. 729, 736 (Bankr. D. Del. 2005) (same).

10.    The fact that the parties continue to perform under a contract after filing a

chapter 11 petition does not create an implied assumption.  *In re Dehon, Inc.*, 352 B.R. 546, 560

(Bankr. D. Mass. 2006) ("Even where the non-debtor party to a contract continues to provide

services under the contract and the debtor continues to accept the benefits of such performance,

the contract will not be considered to have been assumed absent an order of the court approving

the assumption.").  Similarly, "[t]he fact that payments under a contract come due after the

bankruptcy filing does not alter the conclusion that the payments are prepetition obligations."

*In re APF Co.*, 270 B.R. 567, 571 (Bankr. D. Del. 2001).  Thus, the Agreement was not assumed

as a result of the Hedging and Trading Order or the actions the Debtors took in accordance with the Order.

**II.**     **The Debtors Can Reject the Agreement and Each of the Transactions.**

    **A.**     **The Agreement and the Transactions Are Executory Contracts.**

11.     The Agreement and Transactions are executory under black letter principles of bankruptcy law.  The Bankruptcy Code permits a debtor to reject an executory contract with court approval.   11 U.S.C. § 365(a) (providing that the debtor "may assume or reject any executory contract or unexpired lease").   An executory contract is one in which material obligations remain outstanding on both sides.  *In re Exide Technologies*, 607 F.3d 957, 962 (3d Cir. 2010).

12.     Here, each of the Transactions was entered into prepetition, as stated on the face of each of the Confirmations.  The Debtors are still obligated to purchase coal through 2015 at the prices specified in the Confirmations, and Cloud Peak is obligated to supply it.   The Transactions, therefore, are executory contracts subject to rejection.  Cloud Peak nevertheless incorrectly contends that the Postpetition Writings render all or some of these agreements nonexecutory and therefore immune from rejection.

    **B.**     **None of the Postpetition Writings Elevate the Agreement or the Transaction to Postpetition Status.**

13.     The Third Circuit has held that writings far more explicit than the Postpetition Writings do not make a prepetition agreement nonexecutory.  In *Sharon Steel Corp. v. Nat'l Fuel Gas Distribution Corp.*, the bankruptcy court approved a postpetition adequate assurance stipulation under which the debtor "pledged to continue making weekly payments in advance for natural gas under [a] service agreement."  872 F.2d 36, 40 (3d Cir. 1989).  Both the bankruptcy court and the Third Circuit found no merit in the supplier's subsequent argument that "the

stipulation constitutes a post-petition contract or an assumption of the service agreement under § 365." *Id.* Instead, the Third Circuit held that "the service agreement falls within the definition of 'executory contract[]' . . . subject to rejection under § 365." *Id.* at 39-40. Moreover, the Third Circuit agreed with the bankruptcy court's reasoning that there had been no assumption because the "court has not been presented with a motion to assume the contract under 11 U.S.C. § 365(a)." *Id.* at 40. Unlike the stipulation in *Sharon Steel*, the various writings here were not even approved by the Court and do not come close to converting any of the Transactions to a postpetition contract.

14.     Likewise, other courts have held that postpetition amendments to prepetition agreements do not remove them from the ambit of section 365. *In re Cunningham*, No. 4-06-01385-EWH, 2007 WL 1424341, at *2 (Bankr. D. Ariz. May 11, 2007) ("The Lease had not expired postpetition and the Second Amendment is not a new agreement, but an amendment to the prepetition Lease."); *Kucin v. Devan*, 251 B.R. 269, 271 & n.3 (D. Md. 2000) ("Here, the [counterparties'] claims are clearly based on prepetition agreements. . . . [A] subsequent voluntary amendment did not constitute a new agreement or postpetition transaction."). A rule to the contrary would allow parties to end-run the requirement that assumption be approved by the Court.

15.     Here, the fact that, pursuant to the 2145 Amendments, the parties modified the quantities and other terms of the 2145 Transaction does not render the 2145 Transaction nonexecutory. The one page letters that constitute the 2145 Amendments did not purport to turn the 2145 Transaction into a postpetition agreement or even reference the Debtors' chapter 11 cases. *See* Objection Ex. F. They did not create new postpetition obligations. Instead, they were routine adjustments to supply terms agreed to under a prepetition contract.

16.     Similarly, the fact that the Debtors did not confirm the 2269 Transaction until after the Petition Date does not make it a postpetition contract.  The 2269 Transactions was agreed to on April 25, 2014—before the Petition Date—but the 2269 Confirmation was not signed until July 8, 2015—after the Petition Date.  *See* Objection Ex. C.  The 2269 Confirmation is titled "Confirmation Letter."  It states that "[t]his letter shall confirm the transaction arranged April 25, 2014."  It then restates the price, quantity, and other terms of the 2269 Transaction. Above the signature lines, it asks the parties to "confirm that the terms and conditions stated herein accurately reflect your understanding of our agreement."

17.     This is typical in the industry and contemplated by the Master Agreement. Transactions are entered into orally and then confirmed in writing by executed Confirmations, sometimes months following.  The original arrangement in these instances is an enforceable agreement.  Indeed, between the date of the 2269 Transaction, April 25, and the date of the 2269 Confirmation, July 8, the forward price of coal materially decreased, but the Confirmation nevertheless reflected the higher price that the parties agreed to on the Transaction date.  This came at substantial cost to the estates and would be nonsensical if there was not already a binding agreement.  A writing sent postpetition merely to confirm this prepetition agreement does not elevate it to the status of a postpetition agreement.

## Conclusion

For the reasons set forth in this Reply, the Debtors respectfully request that the Court overrule the Objection.

*[Remainder of page intentionally left blank.]*

Wilmington, Delaware
Dated:   April 9, 2015

/s/ *Joseph C. Barsalona II*

**RICHARDS, LAYTON & FINGER, P.A.**
Mark D. Collins (No. 2981)
Daniel J. DeFranceschi (No. 2732)
Jason M. Madron (No. 4431)
Joseph C. Barsalona II (No. 6102)
920 North King Street
Wilmington, Delaware 19801
Telephone:      (302) 651-7700
Facsimile:      (302) 651-7701
Email:            collins@rlf.com
                      defranceschi@rlf.com
                      madron@rlf.com
                      barsalona@rlf.com

-and-

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Edward O. Sassower, P.C. (admitted *pro hac vice*)
Stephen E. Hessler (admitted *pro hac vice*)
Brian E. Schartz (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022-4611
Telephone:      (212) 446-4800
Facsimile:      (212) 446-4900
Email:            edward.sassower@kirkland.com
                      stephen.hessler@kirkland.com
                      brian.schartz@kirkland.com

-and-

James H.M. Sprayregen, P.C. (admitted *pro hac vice*)
Marc Kieselstein, P.C. (admitted *pro hac vice*)
Chad J. Husnick (admitted *pro hac vice*)
Steven N. Serajeddini (admitted *pro hac vice*)
300 North LaSalle
Chicago, Illinois 60654
Telephone:      (312) 862-2000
Facsimile:      (312) 862-2200
Email:            james.sprayregen@kirkland.com
                      marc.kieselstein@kirkland.com
                      chad.husnick@kirkland.com
                      steven.serajeddini@kirkland.com

*Co-Counsel to the Debtors and Debtors in Possession*