1   UNITED STATES BANKRUPTCY COURT

2   DISTRICT OF DELAWARE

3   Case No. 14-10979-CSS

4   Adversary No. 14-50363

5   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

6   In the Matter of:

7   ENERGY FUTURE HOLDINGS CORP

8           Debtor.

9   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

10

11                          United States Bankruptcy Court

12                          824 North Market Street

13                          Wilmington, Delaware 19801

14

15

16                          April 8, 2015

17                          11:04 a.m.

18

19

20

21

22   B E F O R E :

23   HON CHRISTOPHER S. SONTCHI

24   U.S. BANKRUPTCY JUDGE

25

1   Hearing re:   Pretrial conference.

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16   H040815energy

17

18

19

20

21

22

23

24

25   Transcribed by:   Melissa Looney, CET

```
 1   A P P E A R A N C E S :

 2   KIRKLAND & ELLIS, LLP

 3        Attorney for the Debtor

 4        300 North LaSalle

 5        Chicago, IL 60654

 6

 7   BY:  ANDREW R. MCGAAN, ESQ.

 8

 9   WILMER CUTLER PICKERING HALE AND DORR

10        Attorney for CSC Trust Company

11        7 World Trade Center

12        250 Greenwich Street

13        New York, NY 10007

14

15   BY:  PHILIP D. ANKER, ESQ.

16

17   KRAMER LEVIN

18        Attorney for the Second Lien Indentured Trustee

19        1177 Avenue of the Americas

20        New York, NY 10036

21

22   BY:  GREG A. HOROWITZ, ESQ.

23

24

25
```

Page 4

1                    P R O C E E D I N G S

2           THE COURT:  Good morning, counsel.  This is Judge

3    Sontchi.  Thank you for making yourself available.

4           I scheduled this, I guess, informal pre-trial or

5    scheduling status conference in connection with the second

6    part of the phase 1 trial in the make-whole litigation as a

7    follow up to my ruling on summary judgment and narrowing,

8    significant narrowing of at least the motions and subject

9    matter that's on track for an evidentiary hearing that's

10   currently scheduled for April 20th.  And I'm really looking

11   for the party's thoughts and hopefully agreement on a idea

12   of a path forward with regard to how the hearing is actually

13   going to be run.

14           I will make a couple preliminary comments and then

15   turn it over.  I think we'll start with plaintiff's counsel

16   -- will have the honor since they're the plaintiff.

17           I did receive the Rule 59 motion plaintiff

18   submitted and I understand there's at least partial

19   opposition to that and I did review the motion and I just

20   wanted to make a couple comments.

21           First of all, my initial comment would be that the

22   failure to include a specific writing, excuse me, a specific

23   ruling on the contested matter as opposed to the adversary

24   proceeding and the stay applicability motion was inadvertent

25   on my part and I think the review of the findings of fact

1    and conclusions of law would make it rather obvious that I

2    would rule in favor of the debtor's on the contested matter

3    although it raises the issue that might exist in connection

4    with Count I in that that ruling would be without prejudice

5    or with reservation of rights or however you want to

6    ultimately figure out how to articulate it since if the stay

7    applicability motion is granted and the, you know, cause

8    exists and the stay is lifted, obviously the contested

9    matter in that instance, since that was brought by the

10   debtors, would flip and that motion would be denied, but the

11   contested matter exclusion was not purposeful.  I just

12   wanted to make that point for the record.

13          The other point is -- I'm somewhat indifferent to

14   how it gets resolved.  I think that the motion papers fairly

15   indicate the party's understanding that what I was trying to

16   accomplish and the point of the reservation of rights or

17   without prejudice ruling and that was, first of all, not to

18   somehow create a final order that would trigger an appellant

19   right and, you know, obligation, but more to narrow the

20   issues for the hearing and make it clear that, at least how

21   it stands today, Count I would go in favor of the debtors on

22   the law, but given what might or might not happen in the

23   stay applicability motion, it might change the outcome on

24   Count I.

25          So whether it's a granting without prejudice or a

1   denial without prejudice or perhaps even a deferral of

2   making a decision, I'm really kind of indifferent, but I

3   agree that some clarity would probably be helpful in that I

4   certainly wasn't trying to create a situation where I would

5   have put the plaintiff in a position of having to appeal

6   perhaps (indiscernible) jurisdiction and creating all sorts

7   of issues with the stay applicability motion.  I was more

8   trying to narrow the issues for trial in a way that

9   everybody could understand.

10           So ultimately that was my own fault because my

11  initial inclination was to require the parties to submit an

12  order under certification of counsel, but I've decided that

13  that would create perhaps conflict and could take a while so

14  I decided to shortcut the process and apparently messed it

15  up while trying to do so.  So that's what happens when I

16  make decisions I don't have to make.  So I just wanted to

17  get that out on the record.

18           The other thing I would say is I have received the

19  certification of completion of briefing binder on the motion

20  in limine filed by the debtors.  I'm not going to be in a

21  position to rule on that until, frankly, probably the

22  morning of April 20th since given the present business and

23  my own schedule.  I just wanted to get that out on there,

24  too.  So having said those preliminary comments, I turn it

25  over to plaintiff's counsel to say their peace.

1          MR. ANKER:  Good morning, Judge Sontchi.  Phillip

2     Anker from Wilmer, Cutler, Pickering, Hale and Dorr and we

3     appreciate Your Honor's comments and obviously don't

4     think -- didn't mean by our motion at all to suggest that

5     the Court in any way messed up and I'm sure we can work with

6     counsel for the debtor to clarify and perhaps suggest a

7     proposed order.

8          Your Honor, we think -- and I think there may not

9     be agreement on this from preliminary discussions we've had

10    with the debtor -- that, frankly, the most prudent course

11    and the most sensible course here is not to proceed forward

12    on April 20th but rather to move the trial.  I hope it would

13    only be 45 to 60 days or so and let me explain why and what

14    our thinking is and we've given a lot of thought to this.

15         As we understand it, the Court has (indiscernible)

16    whether relief from the stay should be granted so that the

17    trustee or note holders may rescind acceleration effective

18    prior to any refinancing.  And I should note parenthetically

19    on that issue, there was explicit language in Your Honor's

20    debtor in possession order that was quite important to us

21    that provided that the grant of the authority for the

22    debtors to payoff off the first lien debt, the principle

23    amount with interest, and the actual closing of that

24    transaction would be not only wholly without prejudice for

25    the lift stay hearing but would have no evidentiary or other

1     effect and the language would -- basically says would act as

2     if the payoff hasn't occurred and the lift stay hearing is

3     to be heard in advance of any payoff and we will obviously

4     argue this and make it clear in our brief.  I wanted to make

5     it clear at the outset, we really don't think there's a nunc

6     pro tunc issue here.  We filed the motion in advance of the

7     payoff and got that reservation that was critical to us.

8          What is left, therefore, is a hearing on whether

9     cause exists for relief from the stay and on that issue

10    obviously the debtor bears the ultimate burden under 362(g)

11    although there is some initial burden perhaps on the note

12    holders to go forward with the trustee.

13         The Court identified the traditional three

14    factors.  Harm to the debtors or debtor, harm to the note

15    holders and finally whether, if relief were granted, the

16    note holders would prevail with the trustee on the merits.

17         I think that third factor doesn't remain at issue

18    any longer because Your Honor held in the summary judgment a

19    decision that if the Court were to grant relief from the

20    stay we, in fact, had a (indiscernible) right to rescind and

21    if we rescinded there would be an optional redemption and

22    we'd be entitled to the make-whole.

23         So I think we've prevailed on that issue already

24    and the only issues are the first two.  And while I

25    certainly think we could go forward with and present

1    evidence on harm to the trustee or the note holders if

2    they're denied relief from the stay, on harm to the debtor

3    Your Honor obviously decided that at least as a matter of

4    law the presumed solvency of EFIH and therefore its ability

5    to pay all of its creditors in full, even if our make-whole

6    is granted, (indiscernible) at least as a matter of law.

7            I think -- but, you know, if we're mistaken we

8    obviously we appreciate the Court's guidance.  I think --

9    what I understood and what I took away and what we took away

10   after lots of discussions on our end is the Court would like

11   to understand and get a context here of the real financial

12   circumstances.  Those circumstances, as Your Honor will

13   recall, this was a bifurcation with a determination that

14   would (indiscernible) with concern (indiscernible) Your

15   Honor's bifurcation order of September 12, phase 1 will

16   determine whether the EFIH debtors are liable under

17   applicable non-bankruptcy law for or on a make-whole or

18   other redemption plan.

19           And I think Your Honor has basically resolved that

20   issue saying no we're not going to rescind but, yet we are

21   if we (indiscernible) rescind.  And that brings us to the

22   harm factor and on the harm factor we have not had discovery

23   with respect to solvency.  Part of the bifurcation was that

24   Your Honor pushed that off and we think that that will be

25   important.  The evidence on that will be important to the

1    Court.  While we haven't had discovery, we certainly have

2    anecdotal information and that information suggests to us

3    that EFIH is not solvent by a dollar or a hundred dollars,

4    it is solvent potentially by billions of dollars.  And that

5    if our make-whole is denied -- even if it's granted there

6    will be substantial value that will flow up to EFH, to the

7    sponsors, to TCEH and if it is denied even more value will

8    flow and that many parts of this capital structure will get

9    quite, if I can use the colloquial term, rich and then

10   potentially be paid more than par plus accrued in the event,

11   in the case of the sponsors, a dividend, if in fact our

12   make-whole is denied and substantial value therefore from

13   our asset Encore will go to not only junior creditors in the

14   EFIH who will get paid more than par, but to junior

15   constituencies, including ultimate equity.

16          We obviously think there's a legal matter and we

17   have reserved our rights, but EFIH's solvency alone should

18   be sufficient, but Your Honor has said no you want more

19   evidence.  And it doesn't seem to me we're in a position on

20   April 20, not having been permitted to take discovery, to

21   present that evidence.

22          Having said that, I don't think what we need here

23   is a push off of the matter indefinitely.  Your Honor, in

24   the bifurcation order, said that if we got to phase 2, the

25   Court anticipated that discovery and trial will occur

1    without undue delay, but with reasonable time for discovery

2    and presentation of evidence.

3            Next week -- next week.  Next month, I apologize,

4    Your Honor, the debtor will be filing its motion to -- for

5    approval of a stalking horse bid on Encore.  We believe that

6    we can work with the debtor given that we're going to have

7    facts on the ground.

8            We believe that there are documents that may right

9    now be not public, but that we can work with the debtors,

10   figure out how we get them in front of the Court and we

11   think we can take focus targeted discovery either skip the

12   stage of expert reports -- supplement expert reports on the

13   ground that we're really at a contested matter now and we

14   don't need them or have quick expert reports to the extent

15   either side wants experts.  And be in a position to try the

16   harm issue in a meaningful factual context where the Court

17   will actually have numbers and be able to appreciate what is

18   really going on here in, you know, 60 days.

19           I don't think we're talking about pushing this at

20   all to confirmation, but at that point the Court will have a

21   concrete record and the harm issue will not end up getting

22   bifurcated, if you will, between an initial ruling with sort

23   of a presumed solvency and no real evidence on what that

24   really means, how solvent this debtor is and what the effect

25   will be on other constituencies, which goes to the equities

1    and the totality of the circumstance, not have a bifurcation

2    where you do sort of this trial with many of the critical

3    facts not in front of the Court and then, assuming we

4    prevail, do a second hearing.

5              We think it will be more efficient and frankly

6    better for the Court and able to make a more reasoned

7    decision if we have all the facts in front of the Court.

8    And I think that we can work with counsel for the debtors to

9    come up with a reasonable schedule to propose to the Court.

10   As I say, we're not looking to push this to confirmation.

11   We are looking to get it adjudicated promptly and we could

12   come back to the Court hopefully if not the end of this

13   week, the beginning of next week with a proposal that

14   hopefully both sides would agree on.

15             I should say we did reach out to the debtors

16   beforehand.  I think their view is we should just go forward

17   on April 20 and (indiscernible) if we didn't try to have a

18   discussion with them in advance, but (indiscernible) we

19   think that the real facts here that really weigh

20   substantially in our favor are ones we can't reasonably be

21   expected to present now given the lack of discovery and that

22   would be very helpful to the Court.

23             So Your Honor I hope that's helpful to Your Honor.

24   I'm happy to answer any questions.

25             THE COURT:  No, that's helpful.  Let me hear

1    from -- well, let me hear from your allies, if they wish to

2    be heard, and then I'll hear from the debtors.

3              MR. HOROWITZ:   Thank you, Your Honor.   This is

4    Greg Horowitz from Kramer Levin (ph) on behalf of the second

5    lien indentured trustee.   We largely read the -- read your

6    decision and came to the conclusions that are similar to

7    what Mr. Anker just said.   And I do want to raise something

8    that may also impact Your Honor's thinking.

9              While we do -- we are going to be filing an

10   amended complaint very shortly on our action and we the

11   Court that while your opinion is very pertinent to our

12   action, there is different language that may impact your

13   conclusion as to whether or not our indenture explicitly

14   provides for make-whole obligation upon bankruptcy

15   acceleration.

16             That said, we have -- like the first lien note

17   holders, our note holders (indiscernible) fought to

18   (indiscernible) to rescind acceleration through a notice to

19   the indentured trustee as is provided under the indenture.

20             And in light of your opinion, we plan to bring our

21   own motion to lift the stay to allow our note holders

22   rescission to take effect.   We're prepared to do that almost

23   immediately, Your Honor.

24             We read your opinion to say that as Mr. Anker said

25   well solvency is certainly very relevant it's not

1    dispositive, but it is a very relevant fact.  And my

2    conclusion upon reading your opinion was that the prior

3    distinction between phase 1 and phase 2 likely no longer

4    makes sense because the issue of solvency is such an

5    important factual issue relating to whether or not the stay

6    should be lifted, if not dispositive, certainly the most

7    important and very factually tied up that it makes sense to

8    move past phase 1 now and go to and hear the lift stay issue

9    in the context of phase 2.

10            The other issue is they said we plan to bring our

11   own motion to lift the stay and given that with regard to

12   whether or not the stay should be lifted, I would say that

13   the issues raised by the -- under the second lien indenture

14   are essentially identical to those raised under the first

15   lien indenture.  And if there is to be a full factual

16   hearing on that issue it makes sense to do it once rather

17   than twice.  We would be prepared to do it on the same type

18   of time schedule that Mr. Anker suggested and I would think

19   that it would make the most sense for our lift stay motion

20   and the remainder of the first lien case to be heard at the

21   same time.

22            THE COURT:  Thank you.  Mr. McGaan?

23            MR. MCGAAN:  Good morning, Your Honor.  Andrew

24   McGaan for the debtors.

25            We disagree completely with Mr. Anker's view of

1    the world.  We were -- after your ruling came out we were in

2    the place I think where Your Honor started on this call and

3    is still there now, which is we are clearly in the second

4    phase -- second part, rather, of the phase 1 trial.  As Your

5    Honor rightly pointed out, your decision significantly

6    narrows the issues that need to be dealt with at the

7    evidentiary hearing.

8             So I'm not sure we all need reminding, but we

9    negotiated a bifurcation order that Your Honor entered after

10   issuing a ruling early last fall on the relevance of

11   solvency in these proceedings.  So there's been months of

12   discovery and under the bifurcation order, the lift stay

13   motion that is still in front of Your Honor, at least an

14   aspect of it, was part in parcel of the proceedings in the

15   bifurcation order, so there's been ample discovery.  It was

16   understood by all the parties and is consistent with your

17   order that if all of the issues in phase 1 are not resolved

18   in the summary judgment proceeding, we would proceed to the

19   evidentiary hearing beginning on April 20th.  And three days

20   were set aside at the time, Your Honor may recall, because

21   there's a lot of issues that were being contested in the

22   summary judgment proceeding.

23            Now with the ruling, again, as you say,

24   significantly narrow.  We don't even need three days now to

25   try it, but I'm surprised that Mr. Anker is arguing they had

1   a lack of discovery.

2           They designated three different expert witnesses.

3   They took all the depositions they wanted and as Your Honor

4   may well appreciate, Rule 56 provides in 56(d) for a process

5   for a party to petition the Court and indicate that it needs

6   more discovery before summary judgment can be dealt with.

7   And they never made that request, never complained they

8   needed more discovery.  We went -- all went forward on the

9   schedule, which greatly attenuated what the debtors had

10  hoped would be the schedule for getting to resolution on the

11  first lien make-whole claim because there is going to be a

12  contest, as Mr. Horowitz's presence on this call indicates

13  and that the docket reflects, there's going to be a contest

14  on the make-whole claim from the second liens and then

15  there's a contest on the make-whole claim from the

16  (indiscernible).  And it's important to the debtors in

17  moving this case forward, at least get the resolution of

18  these things.

19          So we have a procedure in place.  All the

20  discovery was conducted that they wanted.  There was no

21  debate about that and we think we should go forward as the

22  Court's already ordered, have the hearing on the very issues

23  that they litigated without -- at summary judgment, without

24  complaining there wasn't enough discovery.

25          They argue that on the facts they had the Court

1     should lift the stay and Your Honor's ruling is what it is.

2     I want to hear some -- I want to hear -- there's contested

3     facts here, we gotta resolve it at a hearing.

4             So what I think is really going on here is now

5     that the issues have been considerably narrowed to whether

6     there's cause under the Code to lift the stay, there's an

7     effort here to blow it open and get another bite of the

8     apple and say let's start discovery now, let's change the

9     bifurcation order, let's move into phase 2.  It's no longer

10    good enough to presume solvency, which we are all in

11    agreement on and the order reflects.  That's no longer

12    sufficient.  We want to prove solvency rather than presume

13    it.  It's not clear at all why that makes a difference under

14    the legal standard that Your Honor has to grapple with here.

15    So I think there's no call whatsoever, and it certainly

16    doesn't make these cases run more efficiently to drag out,

17    to enter sort of a new discovery order and undo the

18    bifurcation order and push this trial out and have them

19    reopen discovery.  They had complete opportunity to do it.

20            We think we're in a place here where as Your Honor

21    has already ordered, we should file pretrial submissions on

22    April 15th, pick one of these days -- we don't need all

23    three -- and go forward as scheduled to complete phase 1.

24    And only -- only -- depending on Your Honor's ruling after

25    the completion of phase 1 as the bifurcation order

1    contemplates, we would then -- if necessary -- have

2    discussion whether there needs to be litigation over

3    solvency in phase 2, but it's presumed now, so we can move

4    forward and get to the legal issues.

5              There is one other legal issue lurking here and we

6    can address it in our pretrial filing on April 15th.  But

7    Mr. Anker pointed out that as Your Honor order reflects that

8    if they're entitled to rescind nunc pro tunc that it would

9    decelerate the debt.

10             And one issue that is not addressed in Your

11   Honor's ruling and I think should be addressed up or down in

12   the completion of phase 1 here is the section  502 code

13   based acceleration and how that relates to their ability

14   under the contract to rescind.

15             So the debt here was accelerated both by operation

16   of federal law and by contract provisions.  So it's an issue

17   raised in brief if the summary judgment proceedings, but not

18   that we can see, addressed in the order.  So that's a

19   remaining issue, but that's a legal issue that can be

20   addressed in the papers in advance of the April 20th

21   proceeding.  So that's our position.  We should move forward

22   as previously ordered and as I think Your Honor indicated at

23   the beginning of this call.

24             MR. ANKER:  Your Honor, this is Mr. Anker.  May I

25   respond?  Unless anyone else wants to be heard on the

1    debtors side briefly?

2            THE COURT:  Go ahead.

3            MR. ANKER:  Your Honor, just a few points.  And

4    Mr. McGaan's last comments tie into one.  Mr. McGaan now

5    wants to litigate as part of his one the effect of Section

6    502(b) of the Bankruptcy Code.  Phase 1 in Your Honor's

7    bifurcation order was to decide whether the EFIH debtors are

8    liable under applicable non-bankruptcy law.

9    (Indiscernible).

10            I think Your Honor has -- I agree, we have had

11    discovery on that question and Your Honor has issued a

12    ruling and that ruling in paragraph 69 says, "The only thing

13    that stands in the way of owing the applicable premium is

14    that bankruptcy caused an automatic default that accelerated

15    the debt" and you go on to say the only issue is the

16    automatic stay, which was a function of bankruptcy law.

17            And you said -- I agree we've had discovery on

18    phase 1, but I think Mr. Horowitz is right that we're now

19    going into the question of whether bankruptcy law creates

20    some defense here and in particular whether there's cause

21    from relief from the stay.  And on that issue, I think it's

22    over simplistic for Mr. McGaan to say we can just presume

23    solvency.

24            Is Your Honor going to presume that there's a

25    penny of solvency or $5 billion or $2 billion of solvency?

1    Is the Court going to decide this motion on the possibility

2    that if our make-whole is denied, (indiscernible) equity

3    holders of these debtors, the sponsors will walk away with

4    tens, hundreds of millions of dollar potentially more?

5          Does it really make sense to do that analysis and

6    does the Court believe it can do that analysis on harm to

7    the debtor and totality of the circumstances and the

8    equities without having real facts on the ground about what

9    the financial condition of the debtor is.

10         If this debtor wants to litigate the case

11   conceding that there would be no harm and effect on any

12   other debtor, that may be one thing, but we can't be in a

13   situation, Your Honor, where we have a trial in two weeks

14   and Mr. McGaan puts on evidence talking about the

15   significance of (indiscernible) to the overall bankruptcy,

16   because that goes to the financial condition and wherewithal

17   of this debtor and what is going to ultimately happen here

18   if we prevail or don't prevail.  And it seems to me that

19   goes to the heart of the equities of the buyers.

20         I will finally say I don't think this is a one day

21   hearing.  I understand Mr. McGaan wants to truncate

22   everything.  I think it is more than that, but I think it

23   will not be materially longer.  I think it will end up being

24   (indiscernible) if we get to -- focus discovery on the

25   financial issues and what is going on in the plan and

1    present it all to Your Honor once and only once in a focused

2    fashion.  Thank you, Your Honor.

3              MR. MCGAAN:  May I respond, Your Honor?

4              THE COURT:  Mr. Horowitz, anything?

5              MR. HOROWITZ:  No, sir.  No, Your Honor.  I agree

6    with Mr. Anker.

7              THE COURT:  Okay.  Thank you.  Yes, Mr. McGaan.

8              MR. MCGAAN:  Thank you, Your Honor.  There's a

9    rewriting of history here.  The briefs put in front of Your

10   Honor briefed whether to lift the stay, which is a code

11   based standards.  So this false dichotomy that there's only

12   state law issues and nary an overlay for the bankruptcy code

13   would even be mentioned is just not what happened.

14             Their in the bifurcation order and again, by

15   agreement with the trustee, their motion to lift the stay

16   and our opposition to it, all aspects of our opposition are

17   part of phase 1.  It's really not complicated.

18             We briefed the fact that not only did the contract

19   by its terms accelerate the debt upon filing for bankruptcy,

20   but that the code also accelerated the debt.  It was in our

21   briefing.  There was no complaint until now, that that

22   somehow was off limits.

23             The issue about whether there's cause to lift the

24   stay, fully briefed by the parties, it is a creature of the

25   code in cases construing the code.

1          There's no authority -- Mr. Anker is talking about

2     we need to have all this information about the entire

3     waterfall.  We're not in 45 or 60 days going to have -- and

4     no one is going to have final answers to that.

5          If he were correct that the only way properly for

6     the Court to determine -- any bankruptcy court to determine

7     whether to lift the stay to expand one creditor's -- one

8     paid off creditor's claim by nearly half a billion dollars

9     requires seeing the entire waterfall in the case at the end

10    of the case, there would never be a call for a lift stay

11    dispute ever to take place until the very end of the

12    confirmation.  It just proves too much.

13         And again, it is not what we agreed upon.  We

14    agreed that these issues would get resolved under the

15    auspices of a presumption of solvency in phase 1.  And

16    again, they have all the discovery they wanted on this

17    issue.  They took discovery on this.  We examined our

18    experts on the issue of whether they were going to have

19    opinions on this and to what degree they would.

20         This was all fair game until they get their

21    ruling.  And they say, well now that we get the ruling

22    that's, as Your Honor said, significantly narrowed the

23    issues, we want to significantly expand the issues and drag

24    this out even further.

25         So it's not a question of -- as debtor's counsel

1    just wanting to truncate everything, but we do have an

2    obligation to try to move this along in some reasonable way.

3    And we entered into and spoke in favor of the bifurcation

4    order that we're living under now, because it brought some

5    certainty and clarity to the timing with which these issues

6    would get resolved.

7            And that's why we're so strongly opposed for these

8    other reasons, but also from an efficiency standpoint to

9    tossing aside the bifurcation order or radically re-

10   envisioning it if that's what they're trying to do and

11   saying we're going to start over with it, with a phase one

12   and a half now.  I just don't think it makes sense, but it

13   clearly is outside of and beyond the contemplation of the

14   order that Your Honor entered and we all previously agreed

15   to.

16           THE COURT:  Okay.

17           MR. ANKER:  Your Honor, this is Mr. Anker.  I know

18   you normally wouldn't want sur replies.  May I just point

19   out one thing, it will take less than 30 seconds?

20           THE COURT:  Yes.

21           MR. ANKER:  Your Honor, we serve discovery as part

22   of phase 1 and we asked for discovery in a 30(b)(6) witness

23   on "debtor's valuation of the EFIH debtors and the ability

24   to pay the applicable premium."  The debtors responded, "The

25   debtors object to this topic as overly broad and not

1    reasonably (indiscernible) to lead to the discovery of

2    admissible evidence."  The value of the EFIH debtors and

3    reorganized debtors is a subject of the potential second

4    phase of this proceeding, not this one.

5            So it isn't (indiscernible) for me to say the

6    debtor's view -- and frankly, I thought it was what the

7    bifurcation order said, that we would not get discovery as

8    part of phase 1 on overall value and effect of the payment

9    of the make-whole on the waterfall.

10           I agree we won't have absolute clarity in 60 days,

11   but we'll have much greater clarity and will be able to put

12   on evidence on the issue and have a fair trial and a fair

13   fight.  Thank you, Your Honor.

14           THE COURT:  You're welcome.  All right.  Well, I

15   have to say that I struggled with this very issue in making

16   my decision and what the results of that decision would be,

17   specifically if I were to hold a hearing on whether cause

18   exists to lift the automatic stay, it made any sense

19   whatsoever to have that hearing with a presumption of --

20   excuse me, a presumption of solvency, as opposed to a

21   hearing where the solvency was actually up for grabs, if you

22   will, and could be part of the broader story.

23           And I ultimately decided in making my ruling that

24   it would be premature for me to make that ruling and in

25   effect say, never mind about a phase 1 trial and we could go

1    forward on a sort of bifurcated basis and assume solvency.

2    And that I might be able to rule that there was no right to

3    stay relief -- there was no cause for stay relief even if

4    the debtor were solvent and see how that would proceed.  But

5    I did that with some trepidation, frankly, and it's been

6    sort of fleshed out a little bit here by Mr. Anker.

7              I am reluctant to make the debtor go down the road

8    of discovery that may ultimately be unnecessary, but it may

9    be that we get to a hearing on April 20th, 21st, 22nd,

10   whatever it is and the end result is me announcing to the

11   Court that this has all been really nice, but I think I

12   can't make this judgment with a presumption of solvency

13   without actual facts as to whether the debtor is solvent and

14   if so to what extent.  So I'm frankly torn on how to

15   proceed.

16             With regard to how long the trial will take if we

17   go forward on the 20th, I'm not going to presume a day.  I'm

18   not going to presume two days or three.  I have actually two

19   and a half days set aside, possible three by my internal

20   calendar, but I'm certainly not going to start lopping off

21   days because these things, in my experience, always take

22   longer than you think they should take in any event.

23             So -- although I'd be more than pleased to have a

24   shorter hearing as opposed to a longer hearing.  Let's do

25   this, we'll be back in court -- I want to think about this,

1    about whether we go forward on the 20th or not and we're

2    back in court in the Chapter 11 case on Tuesday the 14th and

3    I'm going to give you my decision then as to whether we go

4    forward on the 20th or not.

5              Now, I apologize for not feeling comfortable

6    making a decision as I sit here today, but I do want to

7    think about it and I know that might require people to work

8    to prepare for a hearing that ultimately may not occur in

9    the interim, but I don't really know how else to deal with

10   it given the tight time frames in place.

11             Certainly I wouldn't require anyone to appear in

12   person who wouldn't otherwise be at the hearing on the 14th,

13   because all you're going to get is an up or down on whether

14   we're going forward on the 20th.  And if we're not going

15   forward on the 20th, that will require the parties to get

16   together and work out some sort of schedule and submit them

17   to the Court and maybe we'll have another telephone call to,

18   you know, help that go forward.  And we might want to

19   coordinate that with the second liens.  I'm not making a

20   decision on that right now either.  And if we're going

21   forward on the 20th it won't change anything.

22             But before we do that -- so I'm kicking this can

23   down the road to the 14th on whether we're actually going to

24   go forward on the 20th or whether I think solvency is

25   relevant for having a significant and meaningful hearing on

1    whether cause exists to lift he automatic stay.

2           Let's assume that we are going forward on Monday

3    the 20th, can the parties give me an idea of how they think

4    we would proceed if we, in fact, do go forward on the 20th.

5    Mr. Anker?

6           MR. ANKER:  Yes, Your Honor.  I think we would, in

7    fact, -- there are several issues, Your Honor, I want to put

8    them on the table, you know, directly.  I don't want anyone

9    to be sandbagged.  First, I think that we would expect to

10   put on our experts and I would ask an opportunity to be

11   heard on that question, even if the morning of the 20th.

12   They will speak to -- they do speak to the expectation of

13   investors and how central the make-whole is to the overall

14   investment and therefore they do speak to the harm to the

15   note holders where the make-whole denied, among other

16   issues.

17          Second, and I want to be candid and direct with

18   Your Honor.  Unless Your Honor were to say, we're going

19   forward on the 20th and not only am I going to presume

20   solvency, but I'm going to presume sort of a waterfall where

21   everyone gets rich off of us.  I think we would want to put

22   on both through Mr. Karns (ph) as an expert and

23   (indiscernible) do this either as a (indiscernible) witness,

24   because it's really just math or as an expert but without

25   his report having touched on this, because this really isn't

1    (indiscernible) phase 2 an analysis of where this money will

2    flow and what the waterfall is and to show Your Honor as

3    best as we can it will be very limited and our hands will be

4    tied how the numbers work here.

5              Third, I anticipate that we will call one, two or

6    three of the debtor witnesses, put them on our case in chief

7    and ask that we be able to examine them as hostile witnesses

8    to take them through some of the same issues and also some

9    of the history here on the negotiation and what the effects

10   of granting the relief from the stay would be

11   (indiscernible) to designate some of their deposition

12   testimony.

13             But, Your Honor, let me be candid (indiscernible)

14   a different issue for the Court.  There are term sheets out

15   there that I am privy to, that Mr. McGaan is privy to and

16   underlying holders are not privy to that shed some light on

17   where money would go under different assumptions,

18   assumptions made by the debtor.  We would want to get that

19   in front of Your Honor, not to prove validity of underlying

20   claim, this is not a 408 issue, but so Your Honor

21   appreciates where all the money will go, were we denied our

22   make-whole.  That may raise issues both in the debtor's mind

23   as it being preliminary.  It may raise issues in the

24   debtor's mind about whether or not it is non-public

25   information but the debtor believes would require that the

1    courtroom be cleared.  We're all for having everything in

2    the public.  It's not going to be something we're going to

3    push for, but frankly, if we go forward on the 20th, unless

4    Your Honor is going to tell us that you're not only going to

5    presume solvency, but presume that the payment of this make-

6    whole will have no (indiscernible) effect on any other

7    debtor or structurally junior creditor or ultimate equity

8    holder or Your Honor will -- and I think you're already

9    passed this, but Your Honor will take that as a legal matter

10   (indiscernible).  All that matters is the effect on EFIH and

11   EFIH's creditors.  Unless the Court is going to do that,

12   we're going to want to get that evidence in front of you as

13   best as we can, and it's not going to be anywhere near

14   perfect.

15          Finally, we may put on one or two actual holders

16   of the debt and so that is why I'm thinking and that's where

17   I think this is more than any one or two day hearing.

18   (Indiscernible) we would not put on because it's obviously

19   not part of phase 1, but frankly I never envisioned putting

20   it on even if we got to phase 2, a full blown, sort of

21   (indiscernible) comparable companies, comparable

22   transactions valuation analysis.  Our view here, and it's

23   why I think the discovery could be limited, is that we're

24   going to have facts on the ground, including what is going

25   on in the auction.

1          That raises another issue.  We are not privy to,

2     even the lawyers are not, what the bids are right now, but

3     again, unless the Court is going to say none of that matters

4     or I'm going to assume that the bids are in the gazillion

5     dollars, I don't know how I try my case and create a record

6     both for you and in for an appellate court without asking

7     for and having produced and put in front of you where the

8     bids are so that Your Honor sees how the waterfall would

9     really work here.

10         So that's what we would envision to do if it were

11    the 20th and that raises, I recognize a lot of issues, but I

12    wanted to put them all out on the table so no one, including

13    Your Honor is surprised.  Thank you, Your Honor.

14         THE COURT:  You're welcome.  Mr. Horowitz, will

15    you be presenting evidence independent of Mr. Anker?

16         MR. HOROWITZ:  We will not put on our own

17    witnesses, Your Honor, but we reserve the right to question

18    witnesses, of course.

19         THE COURT:  Of course.  Thank you.  Mr. McGaan?

20         MR. MCGAAN:  Thank you, Your Honor.

21    Unsurprisingly we see it very differently.  Let me just tell

22    you on behalf of the debtors, we don't intend under the

23    phase 1 process that the Court previously ordered, we don't

24    intend to go forward on April 20th by calling experts.  We

25    don't think the trustee is entitled to either and I think

1    Mr. Anker's comments point out exactly why.

2             He indicates and starting to get into the merits

3    here, rather than the procedure that Your Honor asked about,

4    that he would call experts to testify about investor

5    expectations.  I mean, we have a bunch of issues with that.

6    Principally it's not a matter properly subject to expert

7    opinion generally.  But in the context of this case,

8    expectations of the parties to the contract are memorialized

9    in the contract and Your Honor has construed the contract

10   and ruled on what it means and doesn't mean.  So really it's

11   improper to then call an expert to say investors expected

12   something different than what their agreement said or

13   additional from what their agreement said.

14            So one way, procedurally to deal with the parade

15   of horrible that Mr. Anker is laying out about why it's all

16   of the sudden impossible to try a case on April 20th, one

17   way to deal with this expert issue is he should be able to,

18   in very short order, to provide us and the Court with an

19   narrowed down disclosure of what opinions he thinks --

20   within the confines of what's already been disclosed in the

21   discovery that's already been completed are still relevant,

22   so that Your Honor could focus and we could focus our

23   arguments to exclude on just those issues that are

24   remaining.  Because their experts addressed a lot of things

25   that everyone would agree aren't even in play anymore, so

1    that's easy to do.

2              Mr. Anker says his hands are going to be tied and

3    that's really unfair to the Court.  He's had months of

4    discovery and never complained, never came to the Court,

5    never complained to us that he was being curtailed in the

6    discovery he needed to have to fairly present the issue,

7    which is in phase 1 by (indiscernible) the bifurcation order

8    and by (indiscernible) of their motion to lift the stay.  He

9    never said, until now, that he didn't have adequate

10   information to contest that issue.  It was sufficient when

11   he argued that as a matter of law, you should go his way on

12   this and now that you haven't gone his way or our way as a

13   matter of law, now it's I don't have enough discovery, my

14   hands are tied, this is terrible.

15             And that's just not -- I need to say that, because

16   it's really not fair for the record, Your Honor.  Your Honor

17   has not created a record here where they were curtailed in

18   any way in doing the discovery.

19             Now, on this point that Your Honor somehow is duty

20   bound here to redefine what the solvency presumption is is

21   also unfair.  The bifurcation order states -- and again, we

22   agreed to this before Your Honor entered it.  After a long

23   discussion it says, "The Court will assume, solely for

24   purpose of phase 1 that the EFIH debtors are solvent and

25   able to pay all allowed claims of their creditors in full."

1           That's the premises under which we're proceeding.

2   So the idea that Your Honor needs to now make further

3   presumptions about who is getting rich in all of this

4   rhetoric is not fair to the record either.

5           Now on these issues, regarding putting term sheets

6   in and getting access to auction information and bids, I

7   think these are all red herrings, Your Honor.  I think

8   it's -- particularly because Mr. Anker began this status

9   conference saying they really don't want to prolong things,

10  45 to 60 days push the trial out and all can be

11  accomplished.

12          None of these issues that he's putting out

13  suggesting that the courtroom needs to be closed and they

14  need to do a full valuation discovery of EFIH, none of those

15  problems are solved or go away if we move this trial date 45

16  days.

17          And there's another conceptual problem and I sort

18  of want to wrap up by suggesting that if Your Honor would

19  find it helpful, maybe if both parties submitted a very

20  brief outline of what they think has to happen as Your Honor

21  thinks about this before the 14th.

22          I'd suggest that might be helpful, because here's

23  another issue.  Mr. Anker began by arguing that because they

24  reserved their rights in the DIP order last summer, really

25  the way the Court needs to look at this proceeding is as if

1   we're litigating their lift stay motion back in early June

2   of 2014.  It's not nunc pro tunc.  It's back then.

3           And that suggests that all this commentary about

4   the need to see term sheets, anybody can put out a term

5   sheet and many people, many constituents here have exchanged

6   them and they change all the time, no surprise there.  I'm

7   not sure what relevance that's ever going to have here to

8   the lift stay.

9           We're not at the end -- we're not at confirmation

10  trial and nothing that the trustee is proposing to try to

11  avoid the trial on the 20th is going to put us at the end of

12  a confirmation trial.  So the answers don't get better and

13  if Your Honor concludes I gotta look at this with a

14  perspective of June 2014, there's no auction process.  You

15  know, there's some questions here that have to get resolved

16  in terms of what is the right perspective, but this idea

17  that they need to take discovery of bids in the auction --

18  the auction procedures provide for two phases of bidding,

19  stalking horse motion and hearing if necessary that isn't

20  even scheduled yet and then a bid -- a final auction winner

21  hearing.  These are weeks and months down the road.  None of

22  those supposed problems that Mr. Anker suggests will impair

23  his ability to put on a complete hearing get solved in 45 or

24  60 days.  What this is is a bid to blow this thing up into

25  something that was never intended and to drag out and get a

1   result that the indenture didn't give them by re-litigating

2   through discovery issues that they agreed wouldn't be

3   litigated now and don't need to be litigated now.

4           But on the procedural point, setting aside all the

5   merits that Mr. Anker got into, we don't see the need to put

6   on any of that evidence when there's solid legal and factual

7   reasons why none of it is relevant.  It is whether Your

8   Honor -- I'd suggest that we can cut it down to a day, but

9   if Your Honor wants to continue to hold that time as a more

10  efficient way to go, simply being sensitive to the fact that

11  the Court has indicated time is tight on its schedule the

12  next number of months, but that's perfectly fine.  It can be

13  easily done in that time and I think Your Honor will

14  conclude that expert testimony isn't admissible or

15  appropriate here and all of this stuff about sort of taking

16  a mid-period glance at negotiations and getting into

17  confidential term sheets and who is bidding what and when

18  are all moving targets and won't provide the Court any solid

19  record at all, nor are they relevant to whether cause should

20  be lifted nunc pro tunc.

21          So we intend on putting on probably Mr. Keglovich

22  (ph) to talk about the prejudice to the debtor and the

23  hardship to the debtor and the reorganization process that

24  this would -- awarding the make-whole with the indenture

25  doesn't provide for due to the debtor and debtor's

1    constituents in the reorganization process.  Whether we need

2    additional fact witnesses remains to be seen in terms of

3    what Mr. Anker does, but that's our view.

4             THE COURT:  Thank you.

5             MR. ANKER:  This is Mr. Anker, may I respond again

6    briefly?  I realize this has gone awhile.

7             THE COURT:  Yes, please.

8             MR. ANKER:  Your Honor, I wish I had a transcript

9    of what Mr. McGaan just said at the end.  He said, I think,

10   we intend to put probably Mr. Keglovich on to provide

11   testimony on the harm to the debtor's constituencies if we

12   are to get our make-whole.  I'm going to put aside the

13   pejorative comment that we're not entitled to the make-

14   whole.  Your Honor held we have a (indiscernible) right to

15   rescind in which case we are entitled to the make-whole.

16   That's why we're here today and if the (indiscernible) we

17   don't get the make-whole it would be over.  The Court came

18   out, I think, exactly the opposite.

19            But I just heard that Mr. Keglovich is going to

20   talk about the effect on the debtor's constituency and the

21   reorganization process.  There are term sheets that are the

22   debtor's documents, not anyone else's documents, the

23   debtor's created that speak to that issue and in answer to

24   your question, what I would do if we went forward on the

25   20th is I would take them out and I would work my way

1    through them and have as best as I can, develop a record to

2    show the Court where all this money is going to go based on

3    different assumptions.  That's what I would do and I think I

4    have to be able to do it unless Your Honor says that the

5    affect on other debtors and their estates is legally

6    irrelevant.  I think it should be, but I read Your Honor's

7    decision and I'd prepared to go there as a matter of law.

8    We reserve our legal argument on that, but be that as it is,

9    we want to try a case that's responsive.  So I would want to

10   put that stuff in front of the Court and in front of the

11   witness.  And if Mr. -- if the debtors want to

12   (indiscernible) this, then they can say that they're going

13   to put on no evidence on the effect of allowing our make-

14   whole on the reorganization process and other debtor's

15   constituents.  We know it's going to have no affect on

16   EFIH's constituents but there's a whole presumption here is

17   they (indiscernible) to be paid in full.  So I think I have

18   to put that on.

19           On the comment about this is mid-term, yes.  We'll

20   know with finality and absolute certainty at plan

21   confirmation how the waterfall will work, but we think the

22   evidence can be developed in short order that will more than

23   be sufficient to show Your Honor how it's likely to work and

24   without any serious dispute by the debtor given their own

25   term sheets and their own auction process.

1            THE COURT:  Okay.  All right.

2            MR. ANKER:  Thank you, Your Honor.

3            THE COURT:  We're out of time and I have a packed

4     calendar today and I very much appreciate everyone making

5     themselves available.  What I did hear that I would like to

6     follow up on and request is -- and the debtors offered to do

7     this yesterday, but I was concerned that it was on too short

8     of notice and might catch Mr. Anker unfairly.  I would like

9     you to submit -- you can do it in letter form or a pleading.

10    Whatever you submit should be filed on the docket, but

11    letter form is probably the easiest thing.  I'd like you to

12    submit by noon on Monday simultaneous or virtually

13    simultaneous submissions of a letter fleshing out exactly

14    the arguments I've heard today as well as how you intend to

15    proceed.

16            I think it will help give me additional context

17    for making a decision on the 14th as to how we're going to

18    proceed.  So I'm looking for a discussion both of whether or

19    not we should proceed on the 20th and what you think might

20    be -- assuming we do go forward on the 20th, what you think

21    might be relevant for the 20th.  And if I can have that in

22    writing by noon on the 13th, I'll find that very helpful.

23            MR. HOROWITZ:  Your Honor, this is Greg Horowitz,

24    may we also submit a letter?

25            THE COURT:  Yeah, any part in interest may submit

1   a -- any party to the adversary proceeding may submit a

2   letter.  And please get them delivered as promptly as

3   possible after filing so that we have a -- I have a ability

4   to digest the information that afternoon.  All right.  Thank

5   you very much for making yourself available.  I will hear

6   from you on the 13th and I will -- you will hear from me on

7   the 14th.

8           MR. ANKER:  Your Honor, this is Mr. Anker, is

9   there any length limitation you'd like to impose on the

10  letters?  It might create discipline for all of us if you

11  think it approximately.

12          THE COURT:  Thank you. Five pages, single spaced.

13          MR. MCGAAN:  That is helpful.  Thank you.

14          THE COURT:  Hopefully that will focus people.

15          MR. ANKER:  Thank you, Your Honor.

16          THE COURT:  And I think you can assume a

17  familiarity of the general facts of the case by the Court.

18          MR. ANKER:  Okay.  All right.  Thank you very

19  much.  We're adjourned.

20          UNIDENTIFIED SPEAKER:  Thanks, Your Honor.

21          MR. ANKER:  Thanks.

22      (Proceedings concluded at 12:04 p.m.)

23

24

25

1                    C E R T I F I C A T I O N

2

3    I, Melissa Looney certify that the foregoing transcript is a

4    true and accurate record of the proceedings.

5    Melissa       Digitally signed by Melissa Looney
               DN: cn=Melissa Looney, o, ou,
               email=digital1@veritext.com, c=US
6    Looney        Date: 2015.04.09 11:54:10 -04'00'
     _____

7    Melissa Looney

8    AAERT Certified Electronic Transcriber CET-607

9

10

11

12   Date:  April 9, 2015

13

14

15

16

17

18

19

20

21

22   Veritext Legal Solutions

23   330 Old Country Road

24   Suite 300

25   Mineola, NY 11501