**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) | Case No. 14-10979 (CSS) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |
|  | ) | **Hearing Date:  May 4, 2015 at 9:30 a.m.** |
|  | ) | **Objection Deadline:  April 27, 2015 at 4:00** |

**MOTION OF ENERGY FUTURE HOLDINGS CORP., *ET AL.*,**
**FOR ENTRY OF AN ORDER SCHEDULING CERTAIN**
**HEARING DATES AND DEADLINES AND ESTABLISHING**
**CERTAIN PROTOCOLS IN CONNECTION WITH THE**
**CONFIRMATION OF DEBTORS' PLAN OF REORGANIZATION**
**AND THE APPROVAL OF DEBTORS' DISCLOSURE STATEMENT**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") file this motion (this "Motion") for entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Confirmation Scheduling Order"), scheduling certain dates and deadlines and establishing certain protocols in connection with the confirmation of the Debtors' plan of reorganization (the "Plan") and approval of the Debtors' related disclosure statement (the "Disclosure Statement"), each of which has been filed contemporaneously with this Motion.  In support of this Motion, the Debtors respectfully state as follows.

**Preliminary Statement**

1.      With the filing of the Plan and the Disclosure Statement, the Debtors have taken a significant step toward emergence.  The Plan is the result of months-long discussions and

---

[1]      The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810.  The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201.  Due to the large number of debtors in these chapter 11 cases, for which joint administration has been granted, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

negotiations among the Debtors and their various stakeholders.  But the filing of the Plan and Disclosure Statement does not end negotiations; instead, negotiations regarding the Plan will continue up to, and through, confirmation.

2.    For the Debtors' substantial efforts to bear fruit, they must continue under the umbrella of exclusivity.  Negotiations in the shadow of multiple competing plans would likely fracture and devolve.  The Debtors' creditor constituencies recognized as much when they agreed to extend the Debtors' exclusive right to file and to solicit votes for a plan to June and August 2015, respectively.  The Debtors have made good use of that extension and have now filed the Plan.  Next, the Debtors will seek a further extension of exclusivity to maintain progress.

3.    But exclusivity will reach its statutory limit on December 29, 2015.  For debtor exclusivity to have its full meaning in this case, the Debtors must have at least one opportunity to be heard on their Plan before that date.  The best way to accomplish that critical objective is to establish a reasonable schedule and protocols to govern discovery and the proceedings.  In particular, the schedule must be structured to reach Plan confirmation no later than December 2015.  The Debtors' proposed schedule achieves that goal while also providing sufficient time for discovery and allowing all stakeholders ample opportunity to be heard.  Key features of the Debtors' proposal are as follows.

4.    First, the proposed schedule includes an expeditious but reasonable period in which to complete Plan discovery—151 days[2]—in keeping with the schedules imposed in many similarly large and complex bankruptcy cases.  This period is premised on the prompt commencement of discovery; for this case to reach confirmation by December 2015, Plan

---

[2]    The Confirmation Scheduling Order provides for Plan fact discovery to begin on May 11, 2015 and end by October 9, 2015.

discovery cannot be delayed.    Consistent with the Debtors' proactive approach to Legacy Discovery, there is no reason to wait until the Debtors' Disclosure Statement is approved to engage in Plan discovery.  Doing so would set the schedule back by months and take away the Debtors' right to a reasonable opportunity to have their Plan confirmed without the threat of a competing plan.  Establishing dates and deadlines at the outset of the Plan confirmation process will best allow the Court to control its docket and keep the case moving.

5.    Second, the proposed protocols bolster the proposed schedule by imposing sensible limits on the scope and conduct of Plan discovery.  The parties have already completed wide-ranging Legacy Discovery with a view to easing the burden on the confirmation proceedings.  The remaining Plan discovery can and should be narrowly tailored to cover additional Plan-related issues that are truly relevant to confirmation.

6.    Third, the proposed schedule places a reasonable limit of 20 trial days on the length of the confirmation hearing.  Just as the proposed protocol reins in unnecessary or duplicative discovery, the time limit will help prevent unnecessary, duplicative, or cumulative evidence.

7.    Fourth, the Confirmation Scheduling Order is intended to dovetail with the Oncor auction process approved by the Court on January 14, 2015 [D.I. 3295] (the "Bidding Procedures Order").  That auction process is well underway, with the Debtors having now received initial bids and mark-ups of definitive documents, and obviously is an important component of the Plan.  As discussed in detail in the Disclosure Statement, the Plan accounts for the auction process.  Moving forward with the confirmation process contemporaneously with—and not subsequent to—the process set forth in the Bidding Procedures Order is critical to maximizing

value for all estates and the Confirmation Scheduling Order has been designed with that goal in mind.

8.      Now is the time to capitalize on the Debtors' momentum.  Entering a rational, well-thought-out schedule and discovery protocol now will allow the Court to control its limited time and resources, will help facilitate the Debtors' expeditious exit from chapter 11, and at the same time will afford all of the Debtors' stakeholders sufficient due process and the opportunity to be heard on truly substantive issues.

### Jurisdiction and Venue

9.      The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Debtors consent pursuant to rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Bankruptcy Rules") to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

10.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

11.      The bases for the relief requested in this Motion are sections 1125(b) and 1128(a) of title 11 of the United States Code (the "Bankruptcy Code"); rules 2002(b) and (d), 3016(b), 3017, 3020(b), and 9013 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"); and Local Bankruptcy Rule 3017-1(a).

4

**Relief Requested**

12.     By this Motion, the Debtors seek entry of the Confirmation Scheduling Order, substantially in the form attached hereto as **Exhibit A**, (a) scheduling dates and deadlines in connection with the approval of the Disclosure Statement (the "Disclosure Statement Proceedings") and the confirmation of the Plan (the "Confirmation Proceedings" and, together with the Disclosure Statement Proceedings, the "Proceedings") and (b) establishing certain protocols in connection with the Proceedings (the "Protocols").[3]

**Background**

13.     On April 29, 2014 (the "Petition Date"), each of the Debtors filed a voluntary petition with the Court under the Bankruptcy Code. The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. The Court has entered a final order for joint administration of these chapter 11 cases [D.I. 849]. The Court has not appointed a trustee. The Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") formed an official committee of unsecured creditors of Energy Future Competitive Holdings Company LLC ("EFCH"), Texas Competitive Electric Holdings Company LLC ("TCEH"), the direct and indirect Debtor subsidiaries of EFCH and TCEH, and EFH Corporate Services Company (the "TCEH Creditors' Committee") on May 13, 2014 [D.I. 420] and an official committee of unsecured creditors of Energy Future Holdings Corp., Energy Future Intermediate Holding Company, LLC, EFIH Finance, Inc., and EECI, Inc. (the "EFH Creditors' Committee" and together with the TCEH Creditors' Committee, the "Creditors' Committees") on October 27, 2014 [D.I. 2570]. Further

---

[3]     For the avoidance of doubt, the Court shall have the ability to adjust the schedule of the Proceedings if necessary.

information regarding the Debtors' business operations and capital structure is set forth in the declaration of Paul Keglevic in support of the Debtors' first day motions [D.I. 98].

14.    On January 20, 2015, the Debtors filed a second motion to extend their exclusivity period [D.I. 3338].  The Debtors initially requested an extension of their exclusive right to solicit votes for a plan to the maximum extent allowed under the Bankruptcy Code, to December 29, 2015.  The Debtors subsequently reached a compromise with objecting creditors, according to which the Debtors' exclusivity period to file a plan would be extended to June 23, 2015, and the exclusivity period to solicit votes on a filed plan would be extended to August 23, 2015.  After a hearing, the Court entered an order consistent with that compromise on February 10, 2015 [D.I. 3504].

15.    Contemporaneously with this Motion, the Debtors filed their Plan and Disclosure Statement.  The Debtors seek to maintain momentum by promptly commencing the Proceedings. To that end, the Debtors have worked with their key constituencies in developing the proposed schedule for the Proceedings and the Protocols, as set forth more fully in the Confirmation Scheduling Order.

16.    The key dates and deadlines that the Debtors seek to establish pursuant to the Confirmation Scheduling Order are as follows:

*Disclosure Statement*

a.    **Monday, May 11, 2015,** shall be the date on which Participating Parties[4] may begin serving written discovery requests and all written discovery requests must be served no later than **Monday, May 18, 2015, at 4:00 p.m. (prevailing Eastern Time)**.

b.    **Wednesday, June 17, 2015, at 4:00 p.m. (prevailing Eastern Time)** shall be the deadline by which any party, including the Participating Parties, must file any objections to the Disclosure Statement.

---

[4]    As defined in paragraph 2 of the Confirmation Scheduling Order.

    c.  **Thursday, July 2, 2015, at 4:00 p.m. (prevailing Eastern Time)** shall be the deadline by which all discovery shall be complete.

*Plan*

    d.  **Monday, May 18, 2015, at 4:00 p.m. (prevailing Eastern Time)** shall be the deadline by which Participating Parties must serve written discovery requests.

    e.  **Friday, October 9, 2015,** shall be the date on which all fact and expert discovery shall be complete.

    f.  **Wednesday, October 21, 2015, at 4:00 p.m. (prevailing Eastern Time)** shall be the deadline by which any party, including the Participating Parties, must file any objections to the Plan.

    g.  **Wednesday, November 18, 2015,** shall be the date of the start of the hearing to approve the Plan (the "<u>Confirmation Hearing</u>").

17.    The Debtors first published the key milestones reflected in the Confirmation Scheduling Order on February 12, 2015. The Debtors subsequently updated the dates for those milestones in a confidential distribution to key stakeholders' advisors on March 9, 2015. Consistent with the *Stipulation and Agreed Order Regarding a Protocol for Certain Case Matters* [D.I. 2051], the Debtors provided notice of their intent to file the Plan and Disclosure Statement and a current draft of each document to the TCEH Creditor Representatives (as therein defined) on April 3, 2015. In the ensuing ten days, the Debtors have further revised the proposed Confirmation Scheduling Order in response to stakeholder comments. In short, since the second week of February, the Debtors have updated and revised the Confirmation Scheduling Order where practicable to incorporate stakeholder input.

18.    In advance of filing this Motion, the Debtors incorporated changes to the Confirmation Scheduling Order from the TCEH Creditors' Committee and the ad hoc committee of first lien lenders (the "<u>TCEH First Lien Group</u>") in accordance with the *Stipulation and Agreed Order Regarding the Adjournment of Standing Motions* (the "<u>Stipulated Order</u>"), which the Debtors have filed contemporaneously herewith. Several items in the Confirmation

7

Scheduling Order remain subject to discussion and, consistent with the Stipulated Order, the Debtors, the TCEH Creditors' Committee, and the TCEH First Lien Group intend to resolve those items before the hearing on this Motion.[5]

19.    The Debtors also received further comments from stakeholders other than the TCEH Creditors' Committee and the TCEH First Lien Group a few days before filing this Motion and will consider these and additional stakeholder comments post-filing in an effort to reach greater consensus.    And, of course, the proposed schedule is subject to the Court's availability.

### Basis for Relief

**I.    A SCHEDULING ORDER IS NECESSARY TO ENSURE THAT THE CONFIRMATION HEARING TAKES PLACE BEFORE THE DEBTORS' EXCLUSIVITY EXPIRES.**

**A.    The purpose of debtor exclusivity is to give the debtor a chance to negotiate a consensual plan without interference.[6]**

20.    Exclusivity provides the Debtors with the "exclusive right to formulate and propose their manner of reorganization as they see fit, subject, of course, to the limitations of the Bankruptcy Code." *In re Spansion, Inc.*, 426 B.R. 114, 140 (Bankr. D. Del. 2010).  The Debtors have diligently and properly taken advantage of their exclusivity right, as the filing of their Plan and Disclosure Statement illustrate.  *See id.* at 139 (holding that the exclusivity period provides debtors with an "unqualified opportunity to negotiate a settlement and propose a plan of

---

[5]    These items include: the deadline to serve notices of depositions, including notices under rule 30(b)(6) of the Federal Rules of Civil Procedure, regarding Plan fact discovery; the deadline by which Participating Parties must file any motions to compel discovery responses and document production; deadline by which Participating Parties must designate initial expert witnesses; the deadline by which Participating Parties must designate rebuttal expert witnesses; and the date on which depositions of expert witnesses may begin.

[6]    Nothing prevents this Court from entering the Confirmation Scheduling Order establishing a confirmation schedule that goes beyond the Debtors' current exclusivity period, even though a further extension of exclusivity is not yet before this Court.  The Court will retain the ability to modify or rescind the Confirmation Scheduling Order, if necessary, in light of its future ruling.

reorganization without interference from creditors and other interests." (internal quotation marks and citations omitted)); *In re Burns & Roe Enterprises, Inc.*, No. 00-41610, 2005 WL 6289213, at *4 (D.N.J. Nov. 2, 2005) ("[T]he point of exclusivity is 'to promote an environment in which the debtor's business may be rehabilitated and a consensual plan may be negotiated.'" (quoting H.R. Rep. No. 103-835, at 36 (1994), *reprinted in* 1994 U.S.C.C.A.N. 3340, 3344)).

21.    The filing of the Plan and Disclosure Statement are the product of a sustained push by the Debtors' officers, directors, managers, and advisors (including the disinterested directors and the conflicts matters advisors) to maximize value for all the Debtors' estates. That it has taken many months of discussions and negotiations among the Debtors and their stakeholders to reach this milestone comes as no surprise, given that this is one of the largest and most complex chapter 11 proceedings ever filed.

22.    Of course, plan negotiations do not end with the filing of a plan. Indeed, the Code recognizes that it is critical to protect a debtor's right to continue negotiations without interference from competing plans during the period after filing. To that end, the Bankruptcy Code instates a two-phase approach and provides an additional period of exclusivity after the debtor has filed a plan but before that plan is accepted or confirmed. 11 U.S.C. § 1121(c)–(d); *see also In re Geriatrics Nursing Home, Inc.*, 187 B.R. 128, 134 (D.N.J. 1995) (noting that a creditor constituency's unhappiness or dissatisfaction with a debtor's proposed plan, without more, does not constitute cause to end exclusivity and undermine the debtor's chance of obtaining confirmation of its plan during that period).

23.    The ultimate purpose of exclusivity is therefore not simply to allow a debtor to *file* a plan without interference, but to "allow the debtor a reasonable time to obtain *confirmation* of a plan without the threat of a competing plan." *In re Clamp–All Corp.*, 233 B.R. 198, 207–08

9

(Bankr. D. Mass. 1999) (emphasis added); *see also In re Michigan Produce Haulers, Inc.*, 525 B.R. 408, 411–12 (Bankr. W.D. Mich. 2015).  Consistent with this purpose, bankruptcy courts routinely extend the exclusivity period until after the plan confirmation hearing.  *See, e.g.*, *In re Source Enterprises, Inc.*, No. 06-11707, 2007 WL 2903954, at *2 (Bankr. S.D.N.Y. Oct. 1, 2007); *In re Sportsman's Link, Inc.*, No. 07-10454, 2007 WL 7023830, at *1 (Bankr. S.D. Ga. Dec. 3, 2007).  Similarly, the Court should adopt the Debtors' proposed schedule to provide the Debtors' with a chance to obtain confirmation within their exclusivity period.

**B.** **For the Debtors' exclusivity to have substantive meaning, the Confirmation Hearing must take place by December 2015.**

24.     The Court has extended the Debtors' exclusivity to afford the Debtors an opportunity to move the case forward, and the Court's extensions have had their intended effect. The Debtors have seized upon the time provided by the Court's most recent extension of exclusivity to file their Plan.  The Debtors will be seeking one final extension of exclusivity into December to give them a chance to get their Plan confirmed without the delays and costs imposed by competing plans.  Unless the Debtors are given a chance to confirm their Plan by this December, the substantial progress and efficiencies enabled by the Court's extensions will be wasted.  *See, e.g., In re Adelphia Commc'ns Corp.*, 352 B.R. 578, 590 (Bankr. S.D.N.Y. 2006) ("[T]ermination of exclusivity, just a few weeks before the Debtors might be in the position to confirm a plan, would be at odds with moving the case forward, and could be disastrous. . . .  A competing plans battle now might well jeopardize current fragile agreements between various stakeholders, re-ignite intercreditor disputes, and push this process back to square one.").

25.     Congress put limits on the total length of the exclusivity period to prevent debtor delay.  *See, e.g.*, *Matter of Mother Hubbard, Inc.*, 152 B.R. 189, 195 (Bankr. W.D. Mich. 1993) (section 1121 "ensures creditors will not endure unreasonable delay after a debtor files

chapter 11"). That is not a concern here. In this case, it is the Debtors who are urging the Court to move the case toward confirmation. The Debtors' proposed schedule—including a confirmation hearing that begins in November—does precisely that, providing an efficient and fair roadmap to emergence, while avoiding an open-ended and costly "competing plans battle." Creditors should not be permitted to stall this case in an effort to bust the Debtors' exclusivity, extract additional value for themselves, and substitute their business judgment for the Debtors' own.

**C.      The proposed schedule is an appropriate means for the Court to ensure that the Confirmation Hearing takes place before exclusivity expires.**

26.      This Court can ensure that the Debtors get their chance to have their Plan confirmed by entering a scheduling order that provides for the Confirmation Hearing to conclude before the end of this year.

27.      Local Bankruptcy Rule 3017-1 requires a plan proponent to obtain from the Court hearing and objection dates for the approval of the Disclosure Statement and to provide notice of those dates to a wide array of parties in interest in accordance with Bankruptcy Rules 3017 and 2002. Bankr. D. Del. R. 3017-1(a). In addition, Bankruptcy Rules 3017(c) and 3020(b)(1) provide for the Court to fix a time for the hearing on the confirmation of a plan of reorganization and the time by which objections to that plan are to be filed. Fed. R. Bankr. P. 3017(c); Fed. R. Bankr. P. 3020(b)(1). The Debtors' proposed schedule not only satisfies those requirements, it provides a comprehensive structure for pre-hearing events that is designed to support a Confirmation Hearing that begins in November 2015.

28.      Rule 16(b) of the Federal Rules of Civil Procedure (the "Rules") requires entry of a scheduling order. Rule 16 applies to adversary proceedings in bankruptcy cases. Fed. R. Bankr. P. 7016. Although confirmation of the Plan is not an adversary proceeding, many of the

11

principles underlying Rule 16 are equally applicable to what are likely to be complex, contested confirmation proceedings. Specifically, "the rule's purpose is to provide for the judicial control over a case, streamline proceedings, maximize the efficiency of the court system, and actively manage the timetable of case preparation to expedite the speedy and efficient disposition of cases." *Paoli v. Stetser*, No. 12-66-GMS-CJB, 2013 WL 2154393, at *2 (D. Del. May 16, 2013) (internal quotation marks and citation omitted). That purpose is as relevant here as it is in any adversary proceeding.

29.     Rule 16(b)(3) provides that a "scheduling order *must* limit the time to . . . complete discovery." Fed. R. Civ. P. 16(b)(3)(A) (emphasis added). As the Manual for Complex Litigation ("MCL")—another useful resource in cases like these—provides, "[t]he discovery plan should include a schedule for the completion of specified discovery, affording a basis for judicial monitoring of progress. . . . Time limits impose valuable discipline on attorneys, forcing them to be selective and helping to move the case expeditiously." MCL (Fourth) § 11.422 (2004).

30.     The Debtors' proposed schedule has all the salutary characteristics outlined in Rule 16 and the MCL. It provides for judicial control over the case, streamlines proceedings, maximizes efficiency, and manages the timetable of preparation for the Confirmation Hearing to expedite the speedy and efficient disposition of this case. It also imposes reasonable time limits on discovery to facilitate Court supervision and to impose discipline on the parties' counsel. Most importantly, the proposed schedule gets these cases to a confirmation hearing before December 2015.

## II.    THE PROPOSED SCHEDULE AND DISCOVERY PROTOCOL ARE REASONABLE.

### A.    The proposed schedule provides ample time for discovery.

#### 1.    *The proposed schedule complies with all applicable rules.*

31.    The Debtors' proposed schedule complies in all respects with the Bankruptcy

Rules and Local Bankruptcy Rules.  For example:

- The Bankruptcy Rules and Local Bankruptcy Rules require the deadline for parties to object to the Disclosure Statement to be set at least 28 days after the Disclosure Statement is served.[7]  The proposed schedule sets the objection deadline for 58 days after the Debtors estimate service of the notice of filing the Disclosure Statement to be completed;

- The Local Bankruptcy Rules require the hearing regarding approval of the Disclosure Statement to take place at least 35 days after the Disclosure Statement is served.[8]  The proposed schedule sets the hearing to approve the Disclosure Statement (the "Disclosure Statement Hearing") for no earlier than 71 days after the Debtors estimate service of notice of filing the Disclosure Statement to be completed;[9]

- The Bankruptcy Rules require the deadline for parties to object to the Plan to be set at least 28 days after the Plan is served.[10]  The proposed schedule sets the objection deadline for 93 days after the Debtors estimate service of the notice soliciting votes on the Plan to be completed; and

- The Bankruptcy Rules require the hearing regarding confirmation of the Plan to take place at least 28 days after the Plan is served.[11]  The proposed schedule sets the

---

[7]    Fed. R. Bankr. P. 2002(b); Fed. R. Bankr. P. 3017(a); Bankr. D. Del. R. 3017-1(a).

[8]    Bankr. D. Del. R. 3017-1(a).  This Local Bankruptcy Rule extends the notice period required by the Bankruptcy Rules.  *See* Fed. R. Bankr. P. 2002(b) (requiring at least 28 days' notice for the Disclosure Statement hearing); Fed. R. Bankr. P. 3017(a) (same).

[9]    The Debtors estimate service of the notice of filing the Disclosure Statement will be completed by April 20, 2015.  The proposed schedule sets the objection deadline for June 17, 2015 and the start of the Disclosure Statement Hearing for no earlier than the July 2015 omnibus hearing.

[10]    Fed. R. Bankr. P. 2002(b); Fed. R. Bankr. P. 3017(a).

[11]    *Id.*

13

Confirmation Hearing for 121 days after the Debtors estimate service of the notice soliciting votes on the Plan to be completed.[12]

> 2. *The proposed schedule is consistent with the schedules in many other large bankruptcy cases.*

32.    The proposed schedule is not only consistent with the Bankruptcy Rules and Local Bankruptcy Rules, it also compares favorably to the schedules imposed in many other large bankruptcy cases.  Indeed, the proposed schedule gives significantly *more* time for Plan discovery than several similarly complex cases:[13]

| Order | Plan Discovery Period |
|---|---|
| *Debtors' Proposal* | 151 days |
| *In re Edison Mission Energy* (Bankr. N.D. Ill. 2014) | 37 days |
| *In re Lehman Brothers Holding, Inc.* (Bankr. S.D.N.Y. 2011) | 96 days (total time from order to confirmation hearing)[14] |

---

[12]    The Debtors estimate service of the notice soliciting votes on the Plan will commence no earlier than July 13, 2015 (one week after the earliest Disclosure Statement Hearing will begin) and will be completed by July 20, 2015.  The proposed schedule sets the objection deadline for October 21, 2015 and the start of the Confirmation Hearing for November 18, 2015.

[13]    Because of the voluminous nature of the orders cited herein, those orders are not attached to this Motion.  Copies of these orders are available upon the request of the Debtors' counsel.  *See* Pretrial Order, *In re Edison Mission Energy,* No. 12-49219 (Bankr. N.D. Ill. Dec. 12, 2013), ECF 1718; Pretrial Order, *In re Lehman Brothers Holding, Inc.*, No. 08-13555 (Bankr. S.D.N.Y. Sept. 1, 2011), ECF 19631; Pretrial Order, *In re Motors Liquidation Co.*, No. 09-50026 (Bankr. S.D.N.Y. Dec. 8, 2010), ECF 8043; Pretrial Order, *In re Visteon Corp.*, No. 09-1786 (Bankr. D. Del. June 28, 2010), ECF 3491; Pretrial Order, *In re Capmark Fin. Grp. Inc.*, No. 09-13684 (Bankr. D. Del. July 8, 2011), ECF 3230; Pretrial Order, *In re Calpine Corp.*, No. 05-60200 (Bankr. S.D.N.Y. Sept. 26, 2007), 6136; Pretrial Order, *In re Mirant Corp.*, No. 03-46590 (Bankr. N.D. Tex. Mar. 22, 2007), ECF 15170; Pretrial Order, *In re Nellson Nutraceutical, Inc.*, No. 06-BK-10072 (Bankr. D. Del. May 26, 2006), ECF 383; Pretrial Order, *In re Mirant Corp.*, No. 03-46590 (Bankr. N.D. Tex. Oct. 3, 2005), ECF 11570; Pretrial Order, *In re UAL Corp.*, No. 02-B-48191 (Bankr. N.D. Ill. Sept. 23, 2005), ECF 12880.

[14]    Where a scheduling order does not include specific deadlines for discovery, the discovery period reflected represents the total time between entry of the order approving the disclosure statement and the start of the plan confirmation hearing or valuation hearing, or close of discovery.  For comparison, the Debtors' proposed schedule affords 198 days from entry of the Confirmation Scheduling Order (presumed to be May 4, 2015) to the Confirmation Hearing.

| Order | Plan Discovery Period |
|---|---|
| *In re Motors Liquidation* (Bankr. S.D.N.Y. 2010) | 85 days (total time from order to confirmation hearing) |
| *In re Visteon Corporation* (Bankr. D. Del. 2010) | 58 days (total time from order to confirmation hearing) |
| *In re Capmark Financial Group Inc.* (Bankr. D. Del. 2010) | 42 days (total time from order to confirmation hearing) |
| *In re Calpine Corporation* (Bankr. S.D.N.Y. 2007) | 66 days |
| *In re Mirant Corporation* (Bankr. N.D. Tex. 2007) | 34 days (total time from order to confirmation hearing) |
| *In re Nellson Nutraceutical, Inc.* (Bankr. D. Del. 2006) | 110 days (total time from order to valuation hearing) |
| *In re Mirant Corporation* (Bankr. N.D. Tex. 2005) | 62 days (total time from order to confirmation hearing) |
| *In re UAL Corporation* (Bankr. N.D. Ill. 2005) | 109 days (total time from order to close of discovery) |

33.     Parties would have fourteen days from entry of the Confirmation Scheduling Order (assuming it is entered at the May 4, 2015 hearing) to serve Plan discovery. That period is longer than in *In re Calpine Corp.*, where the time between entry of the scheduling order and the discovery service deadline was nine days. Moreover, all stakeholders will have had adequate time to prepare their discovery requests. First, as discussed more fully below, given the extensive discovery that has already taken place, the issues on which discovery is still required are much narrower than they otherwise would have been. Second, these cases have been pending for nearly a year and many of the stakeholders have been engaged in plan negotiations for even longer than that. Disputed issues have long been known to all parties, who have consequently had ample time to consider and draft appropriate discovery requests. Third, the

15

Debtors' proposed schedule was first circulated over two months ago. The proposed schedule has always included a deadline for service of Plan discovery falling shortly after entry of a scheduling order, so stakeholders have had sufficient opportunity to plan for that eventuality.

**B.    The proposed limitations on discovery are necessary and appropriate.**

34.    Plan discovery will not take place on a blank slate. Far from it—the Debtors and other producing parties have already provided literal truckloads-worth of documents in the course of Legacy Discovery. The Debtors alone have produced more than 812,000 documents comprising over 5.6 million pages. The substantial work that has already been done impacts the Debtors' Protocols in two ways:

35.    First, Legacy Discovery has been a success story insofar as the parties, especially the Debtors, moved mountains to satisfy extraordinarily broad discovery requests pertaining to a multitude of issues over a lengthy time period. The benefits of that accomplishment should manifest themselves in Plan discovery: in light of all of the discovery that has already taken place, the discrete additional issues to be litigated at the Confirmation Hearing should require more limited additional discovery.

36.    Second, Legacy Discovery is also a cautionary tale. It was a massive undertaking that took months and consumed tremendous estate resources. The Debtors, in particular, saw in the course of Legacy Discovery the necessity of imposing reasonable limits on the scope and duration of discovery. As the parties learned in Legacy Discovery, even the most ostensibly reasonable deadlines are difficult to meet when discovery requests call for massive document productions. The Debtors specifically had this experience in mind in formulating their proposed Protocols.

37.     Again, while Rule 16 does not expressly apply to the plan confirmation process, the principles it embodies are equally valuable here.   Rule 16(b)(3)(B) provides that a "scheduling order may . . . modify the extent of discovery."   Fed. R. Civ. P. 16(b)(3)(B)(ii).

38.     The MCL is also instructive:   "A discovery plan should facilitate the orderly and cost-effective acquisition of relevant information and materials and the prompt resolution of discovery disputes."   MCL § 11.42.   "Discovery control in complex litigation may take a variety of forms, including time limits, restrictions on scope and quantity, and sequencing. . . . Presumptive limits should be set early in the litigation, before discovery has begun." *Id*. § 11.422.

39.     As the MCL explains, examples of discovery limits to be considered include "limits on quantity," such as "limits on the number and length of depositions, on the number of interrogatories, and on the volume of requests for production."   MCL § 11.422.   The Debtors' Protocols put this advice into practice by instituting limits on the number and length of depositions and by eliminating interrogatories altogether.

40.     Among the "Other Practices to Save Time and Expense" propounded by the MCL are "[j]oint discovery requests and responses."   MCL § 11.423.   "In multiparty cases with no designated lead counsel, judges sometimes require parties with similar positions to submit a combined set of [discovery requests]."   *Id*.   Accordingly, the Debtors' Protocols require coordination of discovery requests, with the Creditors' Committees acting as facilitators and intermediaries between the Debtors and all other parties participating in Plan discovery.

41.     The Debtors' Protocols also set up a number of other time- and cost-saving procedures, such as the use of a document repository.   These limitations will ensure that estate

17

resources are better used as currency for a consensual plan, not to pay for duplicative, overly expansive, or wasteful discovery.

C.     **The court should limit the length of the Confirmation Hearing and divide the time equally.**

42.     The Debtors' proposed schedule places a limit of approximately twenty trial days for the Confirmation Hearing.  Each of the Plan proponents' and objectors' time would be monitored by a "chess clock," according to which any time a party spends speaking, presenting, or examining would count against the time allocated to that party's side.

43.     Such an approach finds precedent in other bankruptcy proceedings.  *See* Pretrial Order, *In re Specialty Prods.*, No. 10-11780 (Bankr. D. Del. Dec. 17, 2012), ECF 3334 (imposing a five-day time limit and chess clock by consensus).  And in other federal cases, the Third Circuit has emphasized that "imposing limits on the parties' trial time is appropriate where the court makes an informed analysis based on the evidence to be offered and allocates trial time evenhandedly."  *Duquesne Light Co. v. Westinghouse Elec. Corp.*, 66 F.3d 604, 610 (3rd Cir. 1995) (internal quotation marks omitted); *see also id.* at 609 ("Although the procedural rules governing federal civil litigation do not explicitly authorize a district court to set time limits for a trial, a district court has inherent power to control cases before it, provided it exercises the power in a manner that is in harmony with the Federal Rules of Civil Procedure." (internal quotation marks omitted)).

44.     Twenty trial days is more than enough time for the Court to set aside and for the parties to be heard.  A longer or open-ended duration would be unnecessary and wasteful.

## Notice

45.     The Debtors shall provide notice of this Motion on the date hereof via overnight delivery to:  (a) the U.S. Trustee; (b) counsel to the TCEH Creditors' Committee; (c) counsel to

the EFH Creditors' Committee; (d) Wilmington Trust, N.A., in its capacity as administrative agent under the TCEH first lien credit agreement and collateral agent under the TCEH intercreditor agreements and counsel thereto; (e) Bank of New York Mellon Trust Company, N.A., in its capacity as indenture trustee under:  (i) the TCEH unsecured pollution control revenue bonds; and (ii) the EFCH 2037 Notes due 2037, and counsel thereto; (f) American Stock Transfer & Trust Company, LLC, in its capacity as indenture trustee under:  (i) the 9.75% EFH senior unsecured notes due 2019; (ii) the 10.0% EFH senior unsecured notes due 2020; (iii) the 10.875% EFH LBO senior unsecured notes due 2017; (iv) the 11.25%/12.0% EFH LBO toggle notes due 2017; (v) the 5.55% EFH legacy notes (series P) due 2014; (vi) the 6.50% EFH legacy notes (series Q) due 2024; and (vii) the 6.55% EFH legacy notes (series R) due 2034, and counsel thereto; (g) Computershare Trust Company, N.A. and Computershare Trust Company of Canada, in their capacities as indenture trustee under:  (i) the 11.0% EFIH senior secured second lien notes due 2021; and (ii) the 11.75% EFIH senior secured second lien notes due 2022, and counsel thereto; (h) UMB Bank, N.A. in its capacity as indenture trustee under:  (i) the 9.75% EFIH senior unsecured notes due 2019; and (ii) the 11.25%/12.25% EFIH senior toggle notes due 2018, and counsel thereto; (i) Delaware Trust Company of Delaware in its capacity as indenture trustee under:  (i) the 6.875% EFIH senior secured notes due 2017; (ii) the 10.0% EFIH senior secured notes due 2020; and (iii), the 11.50% TCEH senior secured notes due 2020, and counsel thereto; (j) Law Debenture Trust Company of New York in its capacity as indenture trustee under:   (i) the 10.25% TCEH senior unsecured notes due 2015; and (ii) the 10.50%/11.25% TCEH senior toggle notes due 2016, and counsel thereto; (k) Wilmington Savings Fund Society, FSB in its capacity as indenture trustee under the 15.0% TCEH senior secured second lien notes due 2021, and counsel thereto; (l) counsel to certain holders of claims

19

against the Debtors regarding each of the foregoing described in clauses (c) through (j); (m) the agent for the TCEH debtor-in-possession financing facility and counsel thereto; (n) the agent for the EFIH debtor-in-possession financing facility and counsel thereto; (o) counsel to certain holders of equity in Texas Energy Future Holdings Limited Partnership; (p) counsel to the Ad Hoc Committee of TCEH Unsecured Noteholders; (q) counsel to the Ad Hoc Committee of TCEH Second Lien Noteholders; (r) Oncor Electric Delivery Holdings Company LLC and counsel thereto; (s) Oncor Electric Delivery Company LLC and counsel thereto; (t) the Securities and Exchange Commission; (u) the Internal Revenue Service; (v) the Office of the United States Attorney for the District of Delaware; (w) the Office of the Texas Attorney General on behalf of the Public Utility Commission of Texas; (x) counsel to the Electric Reliability Council of Texas; and (y) those parties that have requested notice pursuant to Bankruptcy Rule 2002.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

### No Prior Request

46.     No prior request for the relief sought in this Motion has been made to this or any other court.

*[Remainder of page intentionally left blank.]*

WHEREFORE, the Debtors respectfully request that the Court enter the Confirmation Scheduling Order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested in this Motion and granting such other and further relief as is appropriate under the circumstances.

Dated:   April 14, 2015
         Wilmington, Delaware

/s/ Jason M. Madron
**RICHARDS, LAYTON & FINGER, P.A.**
Mark D. Collins (No. 2981)
Daniel J. DeFranceschi (No. 2732)
Jason M. Madron (No. 4431)
920 North King Street
Wilmington, Delaware 19801
Telephone:       (302) 651-7700
Facsimile:       (302) 651-7701
Email:           collins@rlf.com
                 defranceschi@rlf.com
                 madron@rlf.com

-and-

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Edward O. Sassower, P.C. (admitted *pro hac vice*)
Stephen E. Hessler (admitted *pro hac vice*)
Brian E. Schartz (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022-4611
Telephone:       (212) 446-4800
Facsimile:       (212) 446-4900
Email:           edward.sassower@kirkland.com
                 stephen.hessler@kirkland.com
                 brian.schartz@kirkland.com

-and-

James H.M. Sprayregen, P.C. (admitted *pro hac vice*)
Marc Kieselstein, P.C. (admitted *pro hac vice*)
Chad J. Husnick (admitted *pro hac vice*)
Steven N. Serajeddini (admitted *pro hac vice*)
300 North LaSalle
Chicago, Illinois 60654
Telephone:       (312) 862-2000
Facsimile:       (312) 862-2200
Email:           james.sprayregen@kirkland.com
                 marc.kieselstein@kirkland.com
                 chad.husnick@kirkland.com
                 steven.serajeddini@kirkland.com

*Co-Counsel to the Debtors and Debtors in Possession*

21