**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re:<br><br>ENERGY FUTURE HOLDINGS CORP., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 14-10979 (CSS)<br><br>(Jointly Administered)<br><br>**Related to Docket Nos. 4142-44** |

**ENERGY FUTURE INTERMEDIATE HOLDINGS COMPANY LLC'S STATEMENT**
**IN SUPPORT OF INTERCOMPANY SETTLEMENT IN THE PLAN**

On April 14, 2015, Energy Future Holdings Corp. ("**EFH**"), Energy Future Intermediate Holdings Company LLC ("**EFIH**"), and Energy Future Competitive Holdings Company LLC ("EFCH") and Texas Competitive Electric Holdings Company LLC (together with EFCH, "**TCEH**" and, with EFH and EFIH, the "**Debtors**"), along with their other affiliates who are debtors in these chapter 11 cases, filed the "Joint Plan of Reorganization of Energy Future Holdings Corp., *et al.*, Pursuant to Chapter 11 of the Bankruptcy Code" (the "**Plan**"). Among other things, the Plan proposes the full settlement (the "**Settlement**") of intercompany claims, causes of action and disputes among EFH, EFIH, and TCEH, including avoidance actions under sections 544, 547, and 548 of the Bankruptcy Code, and resolves other matters involving a conflict between one or more of those Debtors , such as the tax treatment of the Plan transactions.

---

[1] The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, which are being jointly administered, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

(collectively, "**Conflict Matters**"). A Joint Statement of Summary of Settlement of Intercompany Claims (the "**Joint Statement**"), which the respective disinterested directors and managers of EFH, EFIH, and TCEH released to representatives of their major creditor constituencies on April 3, 2015, describes the Settlement. A copy of the Joint Statement is attached as **Exhibit A**.

EFIH, acting at the direction of its sole Independent Manager, Charles H. Cremens, in accordance with the authority the full EFIH Board of Managers delegated to him with respect to determining and resolving Conflicts Matters, has approved the Settlement on behalf of EFIH and supports the Plan's proposed settlement of Conflict Matters.

## BACKGROUND

1.      On April 29, 2014, EFH, EFIH, TCEH and certain of their affiliates filed voluntary petitions with the Court under chapter 11 of the Bankruptcy Code. The Debtors are operating their businesses and managing their properties as debtors in possession under sections 1107(a) and 1108 of the Bankruptcy Code. The Court has entered a final order for joint administration of these chapter 11 cases [D.I. 849].

2.      On September 16, 2014, the Court entered an order authorizing EFH, EFIH and TCEH each to "seek and retain separate advisors … to advise or otherwise represent the applicable Debtor" on potential conflict matters [D.I. 2051]. On January 13, 2015, the Court authorized EFH's retention of Proskauer Rose LLP ("**Proskauer**") and TCEH's retention of Munger, Tolles & Olson LLP ("**MTO**") [D.I. 3281 and 3279] and on January 16, 2015, authorized EFIH's retention of Cravath, Swaine & Moore LLP ("**Cravath**") [D.I. 3321], *nunc pro tunc* as of November 16, 2014 for MTO and Cravath and as of November 19, 2014 for Proskauer, to advise and represent each of those Debtors in

connection with Conflict Matters, as defined in the respective employment applications, reporting to and acting at the direction of their respective independent directors and managers. Proskauer, MTO and Cravath are hereinafter referred to as "**Conflicts Counsel**". The Court also authorized EFIH's retention of Goldin Associates, LLC ("**Goldin**") as EFIH's financial advisor in connection with Conflict Matters on January 13, 2015 [D.I. 3277].

3.      Shortly after Cravath's and Goldin's initial retention, Cravath and Goldin began their investigation of potential intercompany claims and other Conflicts Matters. Cravath's work began with a substantial review of the facts and investigative work that Kirkland & Ellis LLP ("**Kirkland**") and Sidley Austin LLP ("**Sidley**") had done regarding potential intercompany claims. Cravath did not undertake its own factual investigation; rather, Cravath reviewed many of what it determined to be the key underlying documents on which Kirkland and Sidley had relied in their analyses, and Cravath interviewed company witnesses in an effort to verify the facts as Kirkland and Sidley had presented them.

4.      Cravath conducted an extensive review of relevant written materials including:

- public filings;
- offering memoranda, indentures and prospectuses for note offerings and exchanges;
- board and audit committee minutes; underlying transactions documents and agreements, payment schedules, company-prepared transaction summaries and deal memoranda;
- Duff & Phelps reports;
- memoranda Kirkland and Sidley prepared on potential intercompany claims, the liability management program, the LBO and the history of the company before and after the LBO;

- interview memoranda Sidley prepared in connection with its investigation; and
- other materials produced in the chapter 11 cases relevant to intercompany transfers.

Cravath also consulted extensively with Goldin, which had performed its own due diligence on financial issues related to possible intercompany claims.

5.      Cravath, along with Proskauer and MTO, participated in a due diligence session with Kirkland on December 17, 2014 at Kirkland's offices. Kirkland described various intercompany transfers it had examined in connection with potential intercompany claims and made available underlying documents concerning the transfers.

6.      In due diligence sessions on January 28, 2015 and February 3, 2015, Cravath interviewed several company witnesses about various intercompany transactions. Cravath participated in the January 28, 2015 session by telephone and attended the February 3, 2015 meeting in person. A portion of the February 3, 2015 interview time was conducted in a group setting with all Conflicts Counsel present. Cravath, MTO and Proskauer also each interviewed the company witnesses outside the presence of other Conflicts Counsel. Among the witnesses were: Andrew Wright (Deputy General Counsel), Anthony Horton (Treasurer); Michael Carter (Assistant Treasurer and Senior Vice President of Corporate Planning) and Kris Moldovan (Assistant Treasurer). Cravath also had follow-up telephone conversations with Messrs. Wright and Carter in which Cravath sought and obtained additional information about certain payments and intercompany transfers.

7.      Goldin, acting at Cravath's request and under Cravath's direction, independently investigated, verified and evaluated financial information about the

company, about note issuances and exchanges, and about company and note valuations and market information relevant to the potential claims and defenses.

8.      Cravath and Goldin also participated in several meetings with EFIH creditor and interest holder groups, including meetings with single groups and larger meeting involving several constituencies, to understand the positions, arguments, and concerns of each of the constituencies and to discuss consensual means of resolving them. These included three in-person meetings with representatives of all significant EFH and EFIH stakeholders, two in-person meetings with representatives of holders of over 75% of EFIH unsecured notes, one in-person meeting with the EFH/EFIH Unsecured Creditors Committee, one in-person meeting with representatives of the EFH shareholders, three in-person meetings with other Conflict Matter advisors and with Kirkland over the structure and terms of a plan term sheet, and numerous telephone conferences with all of the above.

9.      Based on the foregoing work, Cravath prepared a detailed outline of over 50 pages describing all of EFIH's material intercompany claims and defenses, incorporating several additional exhibits and Goldin's financial analyses, which Cravath sent to Mr. Cremens on February 12, 2015. On February 13, 2015, Cravath and Goldin presented their investigative assessments to Mr. Cremens in person. Cravath provided Mr. Cremens with an overview of the legal framework regarding avoiding power claims and then presented and discussed its analysis of intercompany claims, including the avoidability and recoverability of various intercompany transfers and the potential effect bringing such claims might have on recoveries in the chapter 11 cases by holders of claim against or interests in EFIH.

10.     After further consultation with Mr. Cremens about EFIH's negotiating position, Cravath commenced negotiations with Proskauer and MTO over the treatment of potential intercompany claims.

11.     Cravath met in person with Proskauer on February 23, 2015 to discuss potential claims and defenses between EFIH and EFH. The bulk of intercompany claims between EFIH and EFH run in favor of EFIH, including not only avoiding power claims associated with the Liability Management Program, but also nearly $1.3 billion of EFH Legacy Notes that EFIH holds, representing about 66% of all general unsecured claims against EFH. EFH's principal assets are cash and the LLC membership interests of EFIH and of EFCH, the parent of TCEH. EFCH's own membership interests appear worthless. If EFIH has enough value to satisfy all claims against it, then its membership interests that EFH holds would have value to fund a recovery to EFIH on its claims against EFH, but any recovery would effectively come from the increased value of EFIH's membership interests and simply increase EFIH's solvency, which would flow back to EFH. If EFIH does not have adequate value to satisfy its obligations, then any recovery from EFH would be limited to some portion of EFH's cash in addition to the portion to which it would be entitled on account of the Legacy Notes, but it is uncertain that the additional cash would compensate for the litigation expense required to pursue the avoiding power claims. Accordingly, after consulting further with Mr. Cremens, Cravath did not engage in further discussions with Proskauer over EFIH's claims against EFH.

12.     Cravath met in person with MTO on February 24, 2015 to discuss potential claims and defenses between EFIH and TCEH. After the initial meeting, negotiations became more focused. On March 6, 2015, Cravath and MTO had a follow-

up discussion on their respective potential claims. On March 16, 2015, MTO sent Cravath

a presentation detailing TCEH's claims against EFIH and rebutting potential defenses to

EFIH's claims against TCEH, which MTO and Cravath discussed by telephone. A copy

of the MTO presentation is attached as **Exhibit B**. On March 20, 2015, Cravath sent MTO

EFIH's written detailed response to TCEH's claims and defenses, a copy of which is

attached as **Exhibit C**. Cravath fully briefed Mr. Cremens on its discussions with MTO

on the potential claims and defenses.

13.      Following these preliminary meetings with other Conflicts Counsel,

Cravath, Goldin and Mr. Cremens met with TCEH's Disinterested Manager and EFH's

Disinterested Directors and their Conflicts Matters advisers on March 25 and 26, 2015 to

attempt a complete settlement of intercompany claims in the context of a chapter 11

plan. Over the course of these full-day meetings, EFH, EFIH, and TCEH vigorously

presented their claims and defenses to each other and negotiated a resolution, resulting

in the Settlement shortly after the meetings concluded.

14.      The negotiations with Conflicts Counsel were spirited, with all sides

presenting and responding to each other's claims. Throughout the process Cravath and

Goldin were in regular communication with Mr. Cremens about their investigations and

negotiations, so that he could make an informed decision about the probability of

success in litigation, the complexity of the litigation, the expense and inconvenience of

litigating any potential claims, and the interests of EFIH's creditors.

15.      The Settlement protects EFIH and its nondebtor Oncor subsidiaries from

any claims by EFH or TCEH and provides for EFIH to release any claims, including

claims under EFH's Legacy Notes, against EFH or TCEH. The Settlement was based on

Mr. Cremens' view that EFIH will have adequate value to satisfy all allowed claims

against it. Accordingly, the Settlement reserves to Mr. Cremens, as the sole Disinterested

Manager of EFIH, a "fiduciary out" and a right to modify or withdraw the Plan if

instead EFIH does not ultimately have adequate value to satisfy all allowed claims.

16.     Following the settlement meetings, Cravath and Goldin prepared further

analyses of the claims, the Settlement, and the proposed Plan and presented them to Mr.

Cremens on March 31, 2015. At that meeting, Mr. Cremens, acting as the sole

Disinterested Manager of EFIH, and in accordance with the authority delegated to him

by the full EFIH Board of Managers, approved the Settlement. A copy of the Minutes of

that meeting is attached as **Exhibit D**.

<u>CONCLUSION</u>

17.     EFIH's and its professionals' investigative approach thoroughly assessed

the potential intercompany claims, including the probabilities of success in litigation; the

complexities, expenses and inconvenience of litigation; and the interests of its creditors

and equity holder. Having followed a sound investigative approach, EFIH was able after

extensive arms-length negotiation with EFH and TCEH to reach a fair, reasonable

settlement that is in the best interest of the EFIH estate. For these reasons, EFIH supports

approval of the Settlement.

Dated: April 14, 2014                   Respectfully submitted,

                                        */s/ Joseph H. Huston, Jr.*
                                        Joseph H. Huston, Jr. (No. 4035)
                                        STEVENS & LEE, P.C.
                                        1105 North Market Street, Suite 700
                                        Wilmington, Delaware 19801
                                        Tel: (302) 425-3310
                                        Fax: (610) 371-7927
                                        Email: jhh@stevenslee.com

                                        -and-

Richard Levin
Michael A. Paskin
  Members of the Firm
Cravath, Swaine and Moore LLP
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019-7475
Tel: (212) 474-1978
Fax: (212) 474-3700
Email: rlevin@cravath.com

*Attorneys for Debtor Energy Future
Intermediate Holding Company LLC*