# Exhibit 1

Condenseit™    3:00 p.m. Hearing

**Page 1**

```
        IN THE UNITED STATES BANKRUPTCY COURT
        IN AND FOR THE DISTRICT OF DELAWARE

                        - - -

IN RE:                          :
                                :  Chapter 11
ARMSTRONG WORLD INDUSTRIES,     :
INC., et al.,                   :  Case No. 00-4471 (JJF)
                                :
        Debtors.                :  Jointly Administered

                        - - -

              Wilmington, Delaware
        Monday, November 5, 2001 at 3:00 p.m.

                        - - -

BEFORE: HONORABLE JOSEPH J. FARNAN, JR., U.S.D.C.J.

APPEARANCES:

        RICHARDS, LAYTON & FINGER
        BY: MARK COLLINS, ESQ. and
            REBECCA L. BOOTH, ESQ.

          and

        WEIL GOTSHAL & MANGES, LLP
        BY: STEPHEN KAROTKIN, ESQ.
            (New York, New York)

          and

        GILBERT HEINTZ & RANDOLPH, LLP
        BY: DIVONNE SHOYER, ESQ.
            (Washington, District of Columbia)

              Counsel for Debtors


                        Brian P. Gaffigan
                        Official Court Reporter
```

**Page 2**

```
APPEARANCES: (Continued)

        UNITED STATES TRUSTEE'S OFFICE
        BY: JOSEPH J. MCMAHON, JR., ESQ.

              Counsel for the Acting United
              States Trustee Donald Walton

        COZEN O'CONNOR
        BY: MARK FELGER, ESQ.

          and

        PAUL WEISS RIFKIN WHARTON & GARRISON
        BY: ANDREW N. ROSENBERG, ESQ.

              Counsel for the Creditors Committee

        POTTER ANDERSON & CORROON, LLP
        BY: MONICA LEIGH LOFTIN, ESQ.

          and

        MAYER BROWN & PLATT, LLP
        BY: ANTHONY DIANA, ESQ.

              Counsel for Center for
              Claims Resolution

        THE BAYARD FIRM
        BY: CHARLENE DAVIS, ESQ.

          and

        AKIN GUMP STRAUSS HAUER & FELD, L.L.P.
        BY: STANLEY SAMORAJCZYK, ESQ., and
            MARY TAYLOR, ESQ.

              Counsel for Liberty Mutual

        SEITZ VAN OGTROP & GREEN
        BY: KARL HILL, ESQ.

              Counsel for Safeco Insurance Company
```

**Page 3**

NOV 07 2001
MARK D. COLLINS

```
APPEARANCES: (Continued)

        CAMPBELL & LEVINE
        BY: MATTHEW ZALESKI, ESQ.

          and

        CAPLIN & DRYSDALE, CHARTERED
        BY: PETER VAN N. LOCKWOOD, ESQ.

              Counsel for Asbestos Personal
              Injury Claimants Committee

        KLEHR HARRISON HARVEY BRANSBURG & ELLERS
        BY: JOANNE WILLS, ESQ.

              Counsel for the Personal
              Damages Committee

        BIFFERATO BIFFERATO & GENTILOTTI
        BY: IAN CONNOR BIFFERATO, ESQ.

          and

        G. GINSBERG & ASSOCIATES
        BY: BRIAN O'CONNOR, ESQ.

              Counsel for Maertin plaintiffs

        WERB & SULLIVAN
        BY: DUANE D. WERB, ESQ.

          and

        RUTH & BINSTOCK
        BY: DEBRA HARRIS, ESQ.

              Counsel for Personal Damage Claimants

        LAW OFFICE OF MARLA ESKIN
        BY: MARLA ESKIN, ESQ.

              Counsel for Dennis Baca, Rita Baca,
              Janice Lopez, Gerald Lopez,
```

**Page 4**

```
APPEARANCES: (Continued)

        WHITE and WILLIAMS, LLP
        BY: LINDA M. CARMICHAEL, ESQ.

          and

        WHITE and WILLIAMS, LLP
        BY: STEVE E. OSTROW, ESQ.
            (Philadelphia, Pennsylvania)

              Counsel for International Insurance
              Company, U.S. Fire Insurance Company,
              Cravens, Dargan Co., Pacific Coast as
              managing general agent for Central
              National Insurance Co. of Omaha

        ASHBY & GEDDES
        BY: CHRISTOPHER S. SONTCHI, ESQ.

              Former Delaware Counsel for
              Asbestos Claimants Committee


                        - oOo -

                    P R O C E E D I N G S

        (Proceedings commenced at 3:00 p.m.)

        MR. COLLINS: Good afternoon, your Honor. For
the record, Mark Collins of Richards, Layton & Finger on
behalf of Armstrong World Industries, affiliated debtors and
debtors in possession. Your Honor, if I could turn first
to Agenda Items 4 through 16. They are listed on the agenda
as uncontested matters. They all relate to various fee
applications. I do believe there are certain professionals
in the court that would like to address your Honor with
```

Re: Armstrong World Industries, #00-4471 (JJF)

File: 11T5ARM.V1                     Condenselt™                         3:00 p.m. Hearing

Page 33

1  papers, including your affidavits, and I'll schedule with a
2  time allocation hearing at which you will be allowed to
3  present one summary witness, if you choose, probably I'll
4  have to look at the papers and then you will get your
5  decision on those papers and that hearing/argument.
6      MS. ESKIN: Thank you, your Honor.
7      MR. KAROTKIN: Thank you. Your Honor, the next
8  matter, No. 17, is with respect to the motion of Maertin
9  plaintiffs for relief from the automatic stay. I believe the
10 last time we were here, you asked the people involved in the
11 insurance litigation to provide you with correspondence as to
12 the issues. We have requested or suggested to the Court that
13 perhaps the best way or the most expeditious way to determine
14 the coverage issue would be for your Honor to handle that
15 matter on a relatively expedited basis. Nevertheless, the
16 debtor is prepared to go forward with the litigation. It did
17 commence in the Eastern District of Pennsylvania to resolve
18 those issues.
19     THE COURT: Mr. Bifferato.
20     MR. BIFFERATO: Your Honor, Connor Bifferato on
21 behalf of the Maertin plaintiffs. I suppose what we would
22 like to do, your Honor, is indicate what we're asking for
23 and what we're not asking for and explain why.
24     I think at this point, your Honor, what we would
25 like the Court to do is grant relief from the automatic stay

Page 34

1  to allow the Maertin plaintiffs to go back to the District
2  Court for the District of New Jersey, deal with whatever
3  rights they have there, assert any action they may have there
4  in New Jersey law against any the insurance carriers who
5  may have been involved, which your Honor may recall was
6  consummated on October 31, 2000, the proceeds which were due
7  to be paid on January 21st of this year.
8      In the event that it can't be resolved there,
9  the Maertin plaintiffs can certainly move to intervene in
10 the Eastern District of Pennsylvania or they can work with
11 the debtors' counsel to intervene in that action as may be
12 fit. Nonetheless, the rights of the parties can adequately
13 be adjudicated in either of those two forums. There is
14 certainly no prejudice to the debtors or the estate. There
15 is no prejudice to the other parties in this action. I've
16 seen many of the papers from a lot of the insurance car-
17 riers, I understand their concerns. I understand the con-
18 cerns of some of the excess insurance carriers. They may
19 not have been on notice they can certainly be present in
20 the District Court of New Jersey. They are parties in the
21 Eastern District of Pennsylvania. Their concerns can be
22 dealt with there. I don't think the automatic stay extends
23 to any of the insurance carriers at any rate beyond what
24 standing they would have to argue against relief for
25 automatic stay in this action.

Re: Armstrong World Industries, #00-4471 (JJF)

Page 35

1      THE COURT: All right. Thank you.
2      MS. WILLS: Your Honor, may I be heard?
3      THE COURT: Yes.
4      MS. WILLS: Your Honor, one of the problems
5  with granting relief from stay to go against insurance
6  coverage is that as I understand it, we haven't had an
7  opportunity where we're now exchanging documents to look
8  at insurance coverage but some of this coverage may be
9  applicable to P.D. claims and I've been told by the debtors
10 that in fact it may be. If one class of creditors gets to
11 take from insurance coverage ahead of other classes of
12 creditors who should be able to use that coverage on a pro
13 rata basis, then certain constituents would be unfairly
14 prejudiced.
15     I would request that the Court deny the lift
16 stay at this point to give the P.D. Committee an opportunity
17 to review the insurance issues and to consult with Mr.
18 Bifferato and his clients to determine whether or not the
19 coverage that they're going after is coverage that should be
20 available to other creditors, specifically P.D. claimants,
21 rather than exhaust that coverage and not have it available
22 for whatever trust situations get established in this case.
23     MR. BIFFERATO: Well, let me address that very
24 briefly, your Honor. Ms. Wills coming into this case at this
25 point may not have heard the benefit of the arguments that

Page 36

1  have been presented since March of this matter.
2      First of all, as your Honor may recall, this
3  case is different in that a settlement agreement was reached
4  prepetition so those insurance proceeds are not available
5  to the extent they are covered by the settlement agreement
6  anyway.
7      Additionally, as your Honor may recall from
8  the pleadings that we submitted, and from majority of the
9  insurance papers that I believe were submitted as well, the
10 insurance coverage that we're going after specifically has
11 an exclusion for asbestos related claims and therefore they
12 would not implicate Ms. Wills' constituents. To the extent
13 they do, your Honor, they would be behind our clients anyway
14 because a settlement agreement has been reached. To the
15 extent those parties had not reached a settlement agreement,
16 they remain prepetition unsecured creditors.
17     MS. WILLS: Your Honor, I have to address that.
18 The fact they have a prepetition settlement doesn't trump the
19 rights of other unsecured creditors at all. I think that is
20 just wrong as a matter of priorities.
21     But more importantly, your Honor, an exclusion
22 as asbestos claims has been interpreted by some courts, most
23 courts as I understand to relate simply to personal injury
24 asbestos claims. Whether those exclusions apply to property
25 damage claims related to asbestos building products is a

Page 37

1  whole other issue that I think this Court is probably going
2  to have to decide and heavily contested insurance coverage
3  issues that are coming up down the line. So the fact that
4  there is that exclusion doesn't mean that that exclusion
5  applies to P.D. claims. And to the extent that a prepetition
6  settlement trumps other unsecured creditors, I don't think
7  that is right.
8       MR. BIFFERATO: Your Honor, very briefly on
9  that last issue. With regard to the prepetition settlement,
10 we have submitted case law that supports the position that
11 any prepetition settlement effectuated a conversion or trans-
12 fer of the prepetition insurance proceeds to the claimants'
13 settlement parties. There have been has been no authority
14 cited to the contrary.
15      MR. KAROTKIN: I'll be brief. I am not aware
16 of how under any possible circumstance they can have, a
17 settlement can have priority over other claims in this case.
18 There is no money set aside. There is no equitable trust.
19 There is nothing. There was a settlement claim. There were
20 many, many other settlement claims, and unfortunately due to
21 the filing it wasn't done.
22      As to the insurance coverage and exclusion,
23 so there is no misunderstanding, the exclusion is only for
24 asbestos personal injury, not for asbestos property damage,
25 and when we were here -- and again unfortunately this has

Page 38

1  been going on for several months -- we did indicate on one of
2  the first occasions that one of the concerns the debtor has
3  is this insurance may be available for property damage claims
4  as well as or perhaps other types of claims and that it's
5  inappropriate for the Maertin people to go forward by them-
6  selves in another action to access this insurance coverage
7  at the very least.
8       Again, we have no objection, your Honor, to them
9  intervening in the Pennsylvania litigation. We said that
10 several times in the past. We are prepared to move forward
11 with that litigation. Again, we think it's more expeditious
12 to do it in this court and hopefully to resolve the items,
13 but we are concerned that if they go forward in New Jersey
14 they may prejudice our coverage rights. And we would need
15 protection under any adverse impact that that litigation may
16 have if they go forward in New Jersey on our coverage. And
17 in addition, if they choose to go that route, they ought to
18 waive any claims they have in this court. But I think it's
19 inappropriate, your Honor, just to let them go forward,
20 pursue an insurance asset which may not solely be for their
21 benefit and that's the concern we have. Again, we are
22 prepared to go move forward with the coverage litigation but
23 their claim is not prior to any other claim in this case.
24      THE COURT: All those bankruptcy issues are
25 separate in my view from the coverage issue. And I think

Page 39

1  everybody agrees with that. And the debtor prefers to
2  litigate the coverage issue in the Eastern District of
3  Pennsylvania and has offered to these Maertin plaintiffs the
4  opportunity to intervene in that litigation I guess without
5  objection.
6       MR. KAROTKIN: That's correct.
7       THE COURT: But the narrow issue before me is
8  whether or not, not with what the consequences necessarily
9  are but some consideration for that but whether or not the
10 stay should be lifted so that these movants can engage in
11 litigation with the debtor. I'm persuaded by the fact
12 that this is a solvent debtor. Yes, insurance coverage
13 is implicated in various asbestos claims, but we do have a
14 solvent debtor here and for that reason, I think they can
15 withstand the additional litigation of the Maertin plaintiffs
16 in the forum they choose. So I'm going to grant the applic-
17 ation as to the stay as to these plaintiffs, and then I think
18 somewhere down the road, I'll probably get an answer from
19 either the Eastern District of Pennsylvania, the District of
20 New Jersey or someplace that I would take and mold into
21 whatever goes on in this bankruptcy with regard to, if it's
22 appropriate, with regard to distribution or whatever other
23 issue comes up. So I'll grant the application and enter an
24 order for that tomorrow.
25      MR. BIFFERATO: Thank you, your Honor. Would you

Page 40

1  like me to fashion a form of order or would the Court prefer
2  to do that?
3       THE COURT: I think I will do it because it will
4  be very straighforward.
5       MR. OSTROW: Your Honor, Steve Ostrow on behalf
6  the Ace insurers, International Insurance Company, U.S. Fire
7  Insurance Company. I just want to be clear that you're
8  lifting the stay as to proceeding against the debtor only and
9  not as to any actions or direct actions against any of the
10 insurance carriers.
11      THE COURT: The stay only applies to the debtor.
12 And you understand that, Mr. Bifferato?
13      MR. BIFFERATO: Well, there is no stay against
14 the insurance carriers. So to the extent there is any
15 action also by the Maertin plaintiffs against, by virtue of,
16 for instance, fraudulent inducement into the settlement
17 agreement, that wouldn't be.
18      THE COURT: Well, they may want to be free to
19 come in whatever case you file and not get themselves held
20 up.
21      MR. BIFFERATO: Absolutely.
22      THE COURT: And you understand they can litigate
23 because I'm only lifting the stay as to the debtor.
24      MR. BIFFERATO: Absolutely. I want to make sure
25 counsel isn't indicating we may be stayed from proceeding

Page 41

1 against an insurance carrier as well.
2     MR. OSTROW: Well, your Honor, my position is
3 counsel for the Maertin plaintiffs suggests that the stay
4 doesn't apply to insurance carriers as a third-party, and
5 that in and of itself may be so but that is not the issue.
6 The issue is, can they institute or commence an action or
7 continue an action against insurance proceeds that is stayed
8 and that is what everyone here is --
9     THE COURT: Either in the Eastern District of
10 Pennsylvania or District of New Jersey, some federal judge
11 is going to decide that, if you are sued, and raise it or
12 they're going to refer it back here. But for today, I'm
13 lifting the stay against the debtor and that's all I have
14 the authority to do.
15    MR. OSTROW: Thank you, your Honor.
16    MR. BIFFERATO: Thank you, your Honor.
17    THE COURT: Thank you. Mr. Collins, or
18 whomever.
19    MR. KAROTKIN: Your Honor, I think the rest of
20 the matters deal with scheduling with respect to the various
21 motions relating to the asbestos property damage committee,
22 the extension of the bar date and adversary proceeding with
23 respect to the class action.
24    THE COURT: Right. What we want do is we want
25 to schedule the bar date hearing and you can have either

Page 42

1 November 21st -- I'm sorry, Ms. Wills.
2    MS. WILLS. Your Honor, can I tell you about
3 some problems with scheduling? We have a lot of discovery
4 disputes. We gave the discovery requests. We have received
5 no documents yet. We've also done some notices of deposition
6 and until we get the documents, we can't notice the deposit-
7 ions because we have to see who the players are in the
8 documents. They've objected to a whole category of document
9 requests, referred to it early as everything that goes to
10 the science of asbestos, what they knew, when they knew it,
11 what all the things that would trigger. In fact, they were
12 trying to find documents that show that they know that having
13 these asbestos-containing products in homes causes a health
14 risk and therefore certain notice should be given, given the
15 understanding and knowledge that the debtors have. Until we
16 get that discovery ... They also have told us they have a
17 privilege log which they haven't produced to date but we need
18 an opportunity to review it.
19    What I anticipate happening is that once they
20 produce the documents they are going to produce, we look at
21 those documents, we find the inadequacies, we review their
22 privilege log. I'm expecting the Court will have to consider
23 a motion to compel and determine what documents, if any.
24    THE COURT: Well, let me help you out there.
25    MS WILLS: Okay.

Page 43

1    THE COURT: In most Districts, the District
2 Judges are assisted by Magistrate Judges.
3    MS. WILLS: Yes.
4    THE COURT: And Chapter 11 work is one thing,
5 attendant complex discovery disputes are another matter.
6 With the case load that we have here, and the unavailability
7 of any Magistrate Judges to assist us, if you think there is
8 going to be some drawn out discovery dispute practice --
9    MS. WILLS: I do, your Honor.
10    THE COURT: -- one of two things will have to
11 happen. Everybody is going to have to get comfortable with
12 very extended dates because of the trial calendar that
13 typically kicks in with the intellectual property litigation
14 in late fall and then in early spring. Or, secondly, and I
15 don't know if this is possible, if we could find a lawyer or
16 law firm that isn't somehow connected to this case, that the
17 parties can agree to appoint as a master to handle those
18 disputes in the first instance, and then I would review
19 reports and recommendations similar as if I had a Magistrate
20 Judge assigned it.
21    MS. WILLS: We will consider it.
22    THE COURT: And that might expedite it, but it
23 would have to be something you could agree on.
24    MS. WILLS: There is one other issue the Court
25 needs to be aware of. There is a class action that has been

Page 44

1 filed as an adversary proceeding and there has been a motion
2 to certify that class. To the extent that that class gets
3 certified, they filed a proof, a class proof of claim. If
4 the class is certified, then the class proof of claim would
5 cover all of the claimants other than those who opt out. So
6 that the consideration of that certification motion is going
7 to impact on the bar date motion as the notice that would
8 need to be given because it would be a different notice if
9 the class is certified.
10    THE COURT: Yes, class certification motions are
11 not difficult to resolve. Actually, it's discovery disputes
12 that are difficult to resolve when there are privilege logs
13 involved. And in this Circuit, the preferred practice is in
14 camera review and there is just not the time for that here.
15 Class certification motions, we could tee those up, and if
16 the papers are good, get you a very quick decision. Again,
17 we have to get back to the whole discovery problem.
18    MS. WILLS: Your Honor, maybe what makes sense,
19 since I would expect some of the discovery issues between
20 the bar date motion and the class certification motion,
21 and Mr. Werb represents class counsel, should overlap. And
22 so in order to save some lawyer resources, the estate's
23 resources and judicial resources, maybe we should tee them
24 both up together so the discovery can go forward and then ...
25 because they're impacting each other. It's kind of a circular