## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re )<br>)<br>ENERGY FUTURE HOLDINGS CORP., )<br>*et al.*, )<br>)<br>*Debtors.* )<br> )<br> )<br> )<br>DELAWARE TRUST COMPANY )<br>as INDENTURE TRUSTEE, )<br>)<br>*Plaintiff,* )<br>)<br>v. )<br>)<br>ENERGY FUTURE INTERMEDIATE )<br>HOLDING COMPANY LLC and )<br>EFIH FINANCE INC. )<br>)<br>*Defendants.* )<br>) | Chapter 11<br>Bankruptcy Case No. 14-10979 (CSS)<br>(Jointly Administered)<br><br><br><br>Adversary Proceeding<br>No. 14-50363 (CSS) |

## EFIH DEBTORS' PRE-TRIAL BRIEF

**KIRKLAND & ELLIS LLP**
Edward O. Sassower, P.C. (*pro hac vice*)
Stephen E. Hessler (*pro hac vice*)
Brian E. Schartz (*pro hac vice*)
601 Lexington Avenue
New York, New York 10022-4611
Telephone: (212) 446-4800
Facsimile: (212) 446-4900

James H.M. Sprayregen, P.C. (*pro hac vice*)
Marc Kieselstein, P.C. (*pro hac vice*)
Chad J. Husnick (*pro hac vice*)
Steven N. Serajeddini (*pro hac vice*)
300 North LaSalle
Chicago, Illinois 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

**RICHARDS, LAYTON & FINGER, P.A.**
Mark D. Collins (No. 2981)
Daniel J. DeFranceschi (No. 2732)
Jason M. Madron (No. 4431)
920 North King Street
Wilmington, Delaware 19801
Telephone: (302) 651-7700
Facsimile: (302) 651-7701

*Co-Counsel to the Debtors and Debtors in Possession*

## <u>Table of Contents</u>

I.    There Is No Cause To Lift The Automatic Stay. ..................................................... 2

    A.    The EFIH Bankruptcy Estate, Including Its Equity Holder EFH, Will Suffer Great Prejudice From Lifting The Automatic Stay. ................. 3

    B.    Any Hardship For Noteholders Does Not Considerably Outweigh Hardship For The Debtor. ........................................................................... 4

    C.    The Trustee Has No Possibility Of Succeeding On the Merits Because the Bankruptcy Code Automatically Accelerated The Notes, And Bars The Trustee From Reinstating The Notes. ....................... 5

        1.    The Code Automatically Accelerated The Notes On The Petition Date. ................................................................................... 5

        2.    The Trustee Cannot Rescind Bankruptcy Code Acceleration. ................................................................................... 7

II.    The Court Should Also Consider The Unusual Context Of This Lift Stay Motion. ............................................................................................................... 10

## Table of Authorities

**Cases**

*BFP v. Resolution Trust Corp.*,
   511 U.S. 531 (1994)...................................................................................................7

*Fallick v. Kehr*,
   369 F.2d 899 (2d Cir. 1966) ......................................................................................8

*HSBC Bank USA, N.A. v. Calpine Corp. (Calpine II)*,
   2010 WL 3835200 (S.D.N.Y. Sept. 15, 2010).............................................................6

*In re 203 N. LaSalle St. P'ship*,
   246 B.R. 325 (Bankr. N.D. Ill. 2000) ........................................................................8

*In re 4848, LLC*,
   490 B.R. 343 (Bankr. E.D. Wis. 2013)......................................................................9

*In re AMR Corp.*,
   485 B.R. 279 (Bankr. S.D.N.Y. 2013),
   *aff'd*, 730 F.3d 88 (2d Cir. 2013)........................................................................6, 11

*In re Atrium High Point Ltd. P'ship*,
   189 B.R. 599 (Bankr. M.D.N.C. 1995)......................................................................9

*In re Calpine Corp. (Calpine I)*,
   2007 WL 4326738 (S.D.N.Y. Nov. 21, 2007).............................................................6

*In re Cheeks*,
   167 B.R. 817 (Bankr. D.S.C. 1994)...........................................................................9

*In re Citadel Properties, Inc.*,
   86 B.R. 275 (Bankr.M.D.Fla.1988) ...........................................................................9

*In re Club Tower L.P.*,
   138 B.R. 307 (Bankr. N.D. Ga.1991) ........................................................................9

*In re Desai*,
   282 B.R. 527 (Bankr. M.D. Ga. 2002).......................................................................9

*In re Downey Fin. Corp.*,
   428 B.R. 595 (Bankr. D. Del. 2010))..................................................................3, 4, 5

*In re Elmira Litho, Inc.*,
   174 B.R. 892 (Bankr. S.D.N.Y. 1994)........................................................................3

*In re Johns-Manville Corp.*,
   36 B.R. 727 (Bankr. S.D.N.Y. 1984).........................................................................3

*In re Madison*,
   184 B.R. 686 (Bankr. E.D. Pa. 1995) ......................................................... 8

*In re Manville Forest Prods. Corp.*,
   43 B.R 293 (Bankr. S.D.N.Y. 1984),
   *aff'd in part, rev'd in part on other grounds*, 60 B.R. 403 (S.D.N.Y. 1986) ................ 6

*In re MPM Silicones, LLC*,
   2014 WL 4436335 (Bankr. S.D.N.Y. Sept. 9, 2014)............................................. 10, 11

*In re Myers*,
   491 F.3d 120 (3d Cir. 2007) ..................................................................... 11

*In re Pease*,
   195 B.R. 431 (Bankr. D. Neb. 1996) ........................................................... 8, 9

*In re Premier Entm't Biloxi LLC*,
   445 B.R. 582 (Bankr. S.D. Miss. 2010)......................................................... 8

*In re Rexene Products Co.*,
   141 B.R. 574 (Bankr. D. Del. 1992) ............................................................ 3

*In re Ridgewood Apartments of DeKalb Cnty., Ltd.*,
   174 B.R. 712 (Bankr. S.D. Ohio 1994).......................................................... 7

*In re RNI Wind Down Corp.*,
   348 B.R. 286 (Bankr. D. Del. 2006) *subsequently aff'd*,
   359 F. App'x 352 (3d Cir. 2010) ............................................................... 3, 5

*In re Shady Grove Tech Ctr. Assocs. Ltd. P'ship*,
   227 B.R. 422 (Bankr. D. Md. 1998) ............................................................. 9

*In re Shamblin*,
   890 F.2d 123 (9th Cir. 1989) .................................................................. 11

*In re Soares*,
   107 F.3d 969 (1st Cir. 1997)................................................................... 11

*In re Solutia Inc.*,
   379 B.R. 473 (Bankr. S.D.N.Y. 2007)........................................................... 6, 11

*LaSalle Nat. Bank*,
   82 F. Supp. 2d 279 (D. Del. 2000)............................................................. 3

*U.S. Trust Co. of N.Y. v. LTV Steel Co. (In re Chateaugay Corp.)*,
   150 B.R. 529 (Bankr. S.D.N.Y. 1993),
   *aff'd*, 170 B.R. 551 (S.D.N.Y. 1994) .......................................................... 6

iii

**Statutes**

11 U.S.C. § 101(5)(A)............................................................................................................. 5

11 U.S.C. § 362(d)(1) ............................................................................................................. 2

11 U.S.C. § 362(g)(2) ............................................................................................................. 3

11 U.S.C. § 502 ...................................................................................................................... 6

11 U.S.C. § 541 ...................................................................................................................... 3

11 U.S.C. § 1124(2)(B)........................................................................................................... 7

RLF1 11815372v.1

Energy Future Intermediate Holding Co. and EFIH Finance Inc. ("<u>EFIH</u>" or the "<u>EFIH Debtors</u>") submit the following pre-trial brief pursuant to the Court's General Order for adversary proceedings in advance of the April 20, 2015, hearing regarding the motion from Delaware Trust Company ("<u>Trustee</u>") to lift the automatic stay, (No. 14-10979, D.I. 473), which will bring final resolution to the litigation governed by the Amended Scheduling Order dated December 2, 2014, (Adv. D.I. 167).

## INTRODUCTION

The Trustee seeks truly extraordinary relief. The Court has ruled that the Indenture[1] does not provide the Noteholders with a right to the Applicable Premium on all but one of the Trustee's theories of relief, including, most directly, the straightforward operation of the Indenture's plain terms. (Findings of Fact and Conclusions of Law ¶¶ 8, 89-94.) The only way the Noteholders could possibly be owed the Applicable Premium is if the Court holds that there is "cause," within the meaning of the Code, to lift the automatic stay retroactively to a date before the June 19, 2014, repayment of the Notes, *id.* ¶¶ 68-70, ***and*** also holds that the acceleration of the Notes mandated by the Bankruptcy Code itself—separate and apart from the contractual acceleration—has no effect and can be overridden by the alleged contractual terms of the Indenture.

No cause exists. All three of the relevant lift stay factors weigh in favor of the EFIH Debtors: (1) the EFIH bankruptcy estate—including its equity holder EFH—will suffer great prejudice from siphoning off hundreds of millions of dollars, irrespective of whether EFIH is sufficiently solvent to pay creditors in full; (2) the hardship to the Noteholders cannot "considerably outweigh" the hardship to EFIH because at best (for

---

[1] Capitalized Terms not defined here take their meaning from the March 26, 2015 Findings of Fact and Conclusions of Law Regarding Cross-Motions For Summary Judgment. (Adv. D.I. 245.)

the Noteholders) the hardships are equivalent—the value of the Applicable Premium; and (3) the Trustee cannot succeed on the merits because under no circumstances can an Indenture give it the right to rescind the automatic acceleration that occurred by operation of the Bankruptcy Code.  The Court should also consider, as part of its totality of the circumstances analysis, the unusual nature of the Trustee's request to lift the automatic stay to *increase* the value of its claim, not simply to foreclose on collateral or liquidate the value of a claim.  Finally, the Trustee has not demonstrated that it is entitled to the narrow and limited remedy of retroactive relief from the automatic stay.

## BACKGROUND

The relevant facts are contained within the Court's March 26, 2015, Findings of Fact and Conclusions of Law Regarding Cross-Motions for Summary Judgment.  (Adv. D.I. 245.)  The EFIH Debtors will not re-state those facts in this submission.

## ARGUMENT

### I.    THERE IS NO CAUSE TO LIFT THE AUTOMATIC STAY.

The Trustee seeks to lift the automatic stay under 11 U.S.C. § 362(d)(1), which permits this Court to lift the automatic stay "for cause, including the lack of adequate protection of an interest in property . . . ."  The Court has held that it should balance three factors to determine whether "cause" exists:  "(1) whether any great prejudice to either the bankrupt estate or the debtor will result from lifting the stay; (2) whether the hardship to the non-bankrupt party by maintenance of the stay **considerably outweighs** the hardship to the debtor; and (3) the probability of the creditor prevailing on the merits." (Findings of Fact and Conclusions of Law ¶ 73 (emphasis added; citing *In re Downey Fin. Corp.*, 428 B.R. 595, 609 (Bankr. D. Del. 2010)).)

2

The EFIH Debtors have the burden of proof, 11 U.S.C. § 362(g)(2), but only after the Trustee makes a *prima facie* case that it is entitled to relief. *In re RNI Wind Down Corp.*, 348 B.R. 286, 299 (Bankr. D. Del. 2006) *subsequently aff'd*, 359 F. App'x 352 (3d Cir. 2010). "A *prima facie* case requires a showing by the movant of 'a ***factual and legal right*** to the relief that it seeks.'" *RNI*, 348 B.R. at 299 (emphasis added; quoting *In re Elmira Litho, Inc.*, 174 B.R. 892, 902 (Bankr. S.D.N.Y. 1994)). Failure to prove a *prima facie* case requires denial of the requested relief. *RNI*, 348 B.R. at 299. To apply section 362(g)(2) differently "would force the debtor to prove a negative, that no cause exists." *In re Rexene Products Co.*, 141 B.R. 574, 577 (Bankr. D. Del. 1992).

### A.    The EFIH Bankruptcy Estate, Including its Equity Holder EFH, Will Suffer Great Prejudice From Lifting The Automatic Stay.

Courts consider harm to the bankruptcy estate when assessing whether cause exists to lift the automatic stay. *Downey*, 428 B.R. at 609. The bankruptcy estate is defined broadly, 11 U.S.C. § 541, and is created "for the benefit of all creditors and equity holders of the debtor," *In re Johns-Manville Corp.*, 36 B.R. 727, 735 (Bankr. S.D.N.Y. 1984). Accordingly, harm to EFIH's equity holder EFH is just as relevant as harm to other creditors and should be considered as part of the Court's lift-stay analysis. In fact, the EFIH Debtors have "a fiduciary duty to act in the best interest of the estate as a whole, including its creditors, equity interest holders and other parties in interest." *LaSalle Nat. Bank*, 82 F. Supp. 2d 279, 292 (D. Del. 2000). The Trustee has suggested that, if EFIH is solvent and can pay its creditors' claims, there is no relevant harm to the estate. (*See* 4/13/15 Ltr. P. Anker to Court at 2 (Adv. D.I. 259).) But that cannot be true because the Court has already held that solvency alone does not provide "cause" to lift an automatic stay. (Findings of Fact and Conclusions of Law ¶¶ 74-75.) Further, there can

3

be no reasonable debate that every penny of the Trustee's $431 million claim reduces the value of other EFIH stakeholder recoveries, including recoveries by equity (which includes stakeholders of EFH). That harm is expressly relevant to the Court's lift-stay analysis.

>    **B.    Any Hardship For Noteholders Does Not Considerably Outweigh Hardship For The Debtor.**

The second factual prong assesses "whether the hardship to the non-bankruptcy party by maintenance of the stay ***considerably outweighs*** the hardship to the debtor." *Downey*, 428 B.R. at 609 (emphasis added). If the Court declines to lift the stay, the harm to the Noteholders is straightforward—it is, ***at most***, the value of the Applicable Premium, which the Trustee has previously claimed is approximately $431 million dollars. (Trustee Opening Br. at 10 (Adv. D.I. 180).) If the Court lifts the stay, the harm to the EFIH Debtor's estate, ***at the very least***, is the same approximately $431 million dollars. The harm to the EFIH Debtor from lifting the stay could eventually be much greater. The EFIH Second Lien Trustee has already stated that it will be filing "shortly" its own motion to lift the automatic stay to rescind acceleration, (4/13/15 Ltr. G. Horowitz to Court, at 3 (Adv. D.I. 260)), and the Trustee for the EFIH Unsecured "PIK" Noteholders will likely seek to do the same to rescind the acceleration of the PIK Notes. It requires no evidence and the Court can take judicial notice of the fact that exposing EFIH to approximately $900 million or more in expanded claims will have a major effect on the reorganization process and will benefit a few creditors at the expense of other stakeholders. In the end, even if the Court were to ignore Debtor harm beyond payment of the Applicable Premium to the Noteholders, the hardships are at best (for the

RLF1 11815372v.1

Noteholders) equal, and therefore hardship to the Noteholders for maintaining the say cannot "considerably outweigh" the harm to the EFIH Debtor from lifting the stay.

### C. The Trustee Has No Possibility Of Succeeding On the Merits Because the Bankruptcy Code Automatically Accelerated The Notes, And Bars The Trustee From Reinstating The Notes.

The Trustee cannot rescind the acceleration *as a matter of law*, and because the Trustee cannot achieve the relief it seeks, it fails the third prong of the lift-stay analysis. *See Downey*, 428 B.R. at 609.  Although the Court has ruled that the Trustee might rescind *contractual* acceleration if it were to lift the stay, (Findings of Fact and Conclusions of Law ¶¶ 65-66), a ruling for which the EFIH Debtors' reserve their rights, the Notes were *also* accelerated by the straightforward operation of the Bankruptcy Code.[2]  Because the Trustee has no legal authority to reinstate debt in contravention of the Bankruptcy Code, the Trustee also cannot succeed on the third prong of the lift stay analysis.[3]

#### 1. The Code Automatically Accelerated The Notes On The Petition Date.

The Bankruptcy Code broadly defines "claims" to include any claims regardless of whether the claim is "reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed [or] undisputed . . . ."  11 U.S.C. § 101(5)(A).  Under section 502, claims are deemed allowed unless a party in interest objects, and will not be disallowed because it is unmatured (other than claims for unmatured interest).  *See* 11 U.S.C. § 502.  As a result, it is blackletter law that bankruptcy automatically accelerates

---

[2] EFIH made this argument in its summary judgment briefing, (EFIH Mem. in Support of Mot. for SJ 20 n.7, 46-47 (Adv. D.I. 176)), but the Court has yet to rule on it.

[3] The Trustee's inability to succeed on the merits is also a failure to make a *prima facie* case for relief. *See RNI*, 348 B.R. at 299.  In any event, no cause exists to lift the stay because the Trustee cannot rescind the mandated Code-based automatic acceleration.

the principal amount of all claims against the debtor. *U.S. Trust Co. of N.Y. v. LTV Steel Co. (In re Chateaugay Corp.)*, 150 B.R. 529, 542 (Bankr. S.D.N.Y. 1993), *aff'd,* 170 B.R. 551 (S.D.N.Y. 1994) ("[Debtor's] Chapter 11 filing automatically, by operation of bankruptcy law, accelerated the entire principal amount of each Series of Bonds"); *In re Manville Forest Prods. Corp.*, 43 B.R 293, 297–98 (Bankr. S.D.N.Y. 1984) ("It is a basic tenet of the Bankruptcy Code that [b]ankruptcy operates as the acceleration of the principal amount of all claims against the debtor . . . .") (internal quotation marks omitted), *aff'd in part, rev'd in part on other grounds*, 60 B.R. 403 (S.D.N.Y. 1986). Courts in other makewhole cases have held, or otherwise recognized, that the Code accelerated the notes at issue there. *See In re AMR Corp.*, 485 B.R. 279, 290 n.7 (Bankr. S.D.N.Y. 2013), *aff'd*, 730 F.3d 88 (2d Cir. 2013); *In re Solutia Inc*., 379 B.R. 473, 484-85 (Bankr. S.D.N.Y. 2007); *In re Calpine Corp. (Calpine I)*, 2007 WL 4326738, at *9 (S.D.N.Y. Nov. 21, 2007).

The Bankruptcy Code automatically and mandatorily accelerates debts irrespective of whether a lending agreement contains an automatic acceleration provision. As the court in *Calpine II* explained, "Even without these provisions, the Bankruptcy Code would require the same result, as the filing of a bankruptcy petition renders all of a petitioner's outstanding debts mature and payable." *HSBC Bank USA, N.A. v. Calpine Corp. (Calpine II)*, 2010 WL 3835200, at *3 (S.D.N.Y. Sept. 15, 2010); *see also In re AMR Corp.*, 485 B.R. at 290 n.7 ("[T]he filing of a bankruptcy petition—even without specific contractual language—acts to accelerate all of a debtor's obligations by operation of law."); *see also In re Ridgewood Apartments of DeKalb Cnty., Ltd.*, 174

B.R. 712, 720 (Bankr. S.D. Ohio 1994) ("Even without specific contractual language, a bankruptcy filing acts as an acceleration of all a debtor's obligations.").

### 2.    The Trustee Cannot Rescind Bankruptcy Code Acceleration.

Although the Court has addressed the Trustee's right to rescind contractual acceleration, absent the stay, (Findings of Fact and Conclusions of Law ¶¶ 65-66), the Trustee does not have the power to rescind the acceleration mandated by the Bankruptcy Code.  The only provision in the Code that authorizes debt to be "deaccelerated" and reinstated is Section 1124(2)(B).  This provision permits a Chapter 11 debtor—not a creditor—to reinstate debt pursuant to a plan of reorganization.  *See* 11 U.S.C. § 1124(2)(B).  In fact, no provision of the Code provides a ***creditor*** with the power to deaccelerate or reinstate debt, to say nothing of doing so outside of a plan of reorganization.[4]  And because Congress specified that debt may be reinstated pursuant to a plan of reorganization, Congress should be understood to have intentionally precluded debt from being reinstated in other contexts, like those here.  *See BFP v. Resolution Trust Corp.*, 511 U.S. 531, 537 (1994) ("[I]t is generally presumed that Congress acts intentionally and purposely when it includes particular language in one section of a statute but omits it in another.").  Moreover, there is no authority holding that private parties may contract around the operation of federal law in this context.

Nothing in the Indenture can be interpreted to override the Code's legal effect. Section 6.02 of the Indenture provides that the Trustee may "rescind any acceleration," but even if the Bankruptcy Code permitted this (which it does not), there is no textual evidence that the parties intended this language to include the legally mandated

---

[4] Even if a creditor could reinstate debt under section 1124(2)(B), this debt would be reinstated as part of a plan of reorganization—not repaid—and so no makewhole premium would be owed.

acceleration under the Bankruptcy Code.  Indenture, Ex. 1 to Am. Romanowicz Decl. in Supp. of Debtors' Cross-Motion for SJ (Adv. D.I. 197).  And, to be sure, section 4.06 states that the EFIH Debtors agree not to rely on "any stay . . . law" to hinder the execution of any right by the Trustee, but only "to the extent that [EFIH] may lawfully do so."  *Id.*  Further, lifting the stay would not provide the Trustee relief because section 4.06 does *not* say that EFIH agrees to waive the Code's mandated automatic acceleration and reinstate the Notes.

Any language in the Indenture purporting to waive the protections of the Bankruptcy Code is void and unenforceable, as this parenthetical within Section 4.06 explicitly recognizes.  "It is generally understood that prebankruptcy agreements do not override contrary provisions of the Bankruptcy Code."  *In re 203 N. LaSalle St. P'ship*, 246 B.R. 325, 331 (Bankr. N.D. Ill. 2000); *see also Fallick v. Kehr*, 369 F.2d 899, 904 (2d Cir. 1966) ("An advance agreement to waive the benefits of the Act would be void."); *In re Premier Entm't Biloxi LLC*, 445 B.R. 582, 628 (Bankr. S.D. Miss. 2010) (same); *In re Madison*, 184 B.R. 686, 690-91 (Bankr. E.D. Pa. 1995) (citing cases).  As the Court explained in *In re Pease*, a debtor lacks the legal capacity to waive the rights of a debtor-in-possession, and the Code "extinguishes the private right of freedom to contract around its essential provisions."  195 B.R. 431, 433-34 (Bankr. D. Neb. 1996).

Some cases take the view that pre-bankruptcy agreements to waive Code protections should instead be considered *as a factor* in whether to lift the automatic stay.  *See, e.g.*, *In re Desai*, 282 B.R. 527, 532 (Bankr. M.D. Ga. 2002).  But these opinions involve inapplicable facts such as single asset real estate cases where third-party rights

are not at issue[5] or evidence the debtor acted in bad faith.[6]  Further, courts that enforce

pre-bankruptcy waivers of Code protections analyze whether a specific bargain was

struck providing significant benefits to the debtor in return for the waiver.[7]  Here, there is

no evidence that the language in Sections 6.02 and 4.06 of the Indenture was any more

than a standard Indenture provision.   In fact, the indenture in *Momentive* contained

similar language,[8] and there too the court refused to lift the automatic stay to permit the

noteholders to reinstate debt, *see In re MPM Silicones, LLC*, 2014 WL 4436335, at \*23

(Bankr. S.D.N.Y. Sept. 9, 2014).

---

[5] *E.g.*, *In re 4848, LLC*, 490 B.R. 343, 349 (Bankr. E.D. Wis. 2013) (enforcing prepetition stay waiver in single real estate case); *In re Shady Grove Tech Ctr. Assocs. Ltd. P'ship*, 227 B.R. 422, 425 (Bankr. D. Md. 1998) ("This bankruptcy case is essentially a two-party dispute and there are no legitimate interests of other parties, including creditors, which would be adversely effected by the enforcement of The Waiver.")

[6] *E.g.*, *In re Club Tower L.P.*, 138 B.R. 307, 310-11 (Bankr. N.D. Ga. 1991) (holding that the petition was filed in bad faith and enforcing a pre-petition agreement granting creditor relief from the automatic stay); *In re Citadel Properties, Inc.,* 86 B.R. 275, 276, 277 (Bankr. M.D. Fla. 1988) (same).

[7] *E.g., In re 4848, LLC*, 490 B.R. at 346 (discussing substantial consideration received in exchange for a prepetition stay waiver); *In re Atrium High Point Ltd. P'ship,* 189 B.R. 599, 607 (Bankr. M.D.N.C. 1995) (discussing significant benefits received under a modification in exchange for waiver); *In re Cheeks*, 167 B.R. 817, 819 (Bankr. D.S.C. 1994) (same).

[8] The relevant section of the *Momentive* indenture states:

> Section 6.12. Waiver of Stay or Extension Laws. Neither the Company nor any Note Guarantor (to the extent it may lawfully do so) shall at any time insist upon, or plead, or in any manner whatsoever claim or take the benefit or advantage of, any stay or extension law wherever enacted, now or at any time hereafter in force, which may affect the covenants or the performance of this Indenture; and the Company and each Note Guarantor (to the extent that it may lawfully do so) hereby expressly waive all benefit or advantage of any such law, and shall not hinder, delay or impede the execution of any power herein granted to the Trustee, but shall suffer and permit the execution of every such power as though no such law had been enacted.

Madron Decl. in Supp. of Debtors' Cross-Motion for SJ, at Ex. 5 (Adv. D.I. 177-6), Indenture at 95, *In re MPM Silicones, LLC, et al.*, No. 14-22503 (Bankr. S.D.N.Y. June 18, 2014) (Dkt. No. 464-1).

## II.    THE COURT SHOULD ALSO CONSIDER THE UNUSUAL CONTEXT OF THIS LIFT STAY MOTION.

Although the Court's assessment whether to lift the automatic stay is focused on the three-factor balancing test, the Court also considers the totality of the circumstances. (Findings of Fact and Conclusions of Law ¶ 73.)  The Court should consider the unusual posture of the Trustee's motion as a reason not to find cause to lift the automatic stay.

*First*, this is not a conventional lift stay argument where the Trustee seeks to foreclose on collateral that lacks adequate protection,[9] pursue litigation in another forum[10] or send a notice liquidating the value of its claim.[11]  The Court has already ruled that the Indenture does not provide for an Applicable Premium upon bankruptcy-caused acceleration and that the Applicable Premium could only potentially be owed by lifting the stay and reinstating the notes *nunc pro tunc* to sometime before June 19, 2014, when all principal and interest was paid in full.   (Findings of Fact and Conclusions of Law ¶ 73.)   The Trustee therefore seeks to *increase* the size of its claim by lifting the automatic stay and rescinding the Notes' acceleration.  This would be an unprecedented result.  In fact, three courts have rejected similar attempts by trustees seeking to rescind acceleration and reinstate debt.  *See In re AMR*, 730 F.3d 88, 111-12 (2d Cir. 2013); *In re MPM Silicones, LLC*, 2014 WL 4436335, at *23; *In re Solutia*, 379 B.R. at 484-485 n.7.

*Second*, the Trustee seeks to lift the stay *retroactively* to sometime before the June 19, 2014, repayment.  This is an extraordinary remedy.  "Retroactive relief should

---

[9] The EFIH First Lien Noteholders are already adequately protected because the disputed makewhole premium is oversecured.  (First Lien DIP Order, D.I. 859, at 20 ¶ K.)

[10] *E.g.*, *In re Tribune Co.*, 418 B.R. 116, 128-30 (Bankr. D. Del. 2009) (granting relief from the automatic stay to permit a lawsuit in a California federal court to proceed to the entry of judgment, but requiring the creditor to return to the bankruptcy court for further relief).

[11] *E.g.*, *In re Texaco, Inc.*, 81 B.R. 804, 805-06 (Bankr. S.D.N.Y. 1988) (seeking permission to send an acceleration notice to "lock in" the interest rate prevailing on variable interest rate notes as of the petition date).

be the long-odds exception, not the general rule. . . .  [I]nstances in which the exercise of that discretion is justified are likely to be few and far between." *In re Soares*, 107 F.3d 969, 977 (1st Cir. 1997); *see also In re Shamblin*, 890 F.2d 123, 126 (9th Cir. 1989) ("Any equitable exception to the automatic stay should be narrow and applied only in extreme circumstances.")  And the Trustee has not met the relevant standard in this Circuit for retroactive stay relief: (1) whether the creditor was aware of the filing or encouraged violation of the stay; (2) whether the debtor engaged in inequitable, unreasonable, or dishonest behavior; and (3) whether the creditor would be prejudiced. *See In re Myers*, 491 F.3d 120, 129 (3d Cir. 2007).

The Trustee argues that its reservation of rights in the First Lien DIP Order means that "repayment would have no effect on the stay-relief motion."  (4/13/15 Ltr. P. Anker to Court, at 4 (D.I. 259).)  But the reservation of rights only states that the fact of repayment shall not preclude the Trustee from arguing that it can still rescind acceleration, an argument that would normally be foreclosed due to the repayment of the Notes.  "Nothing in this Final Order . . . or the transactions contemplated hereby . . . shall have any precedential, evidentiary, law of the case, or preclusive effect."  (DIP Order, ¶ 40(b) (D.I. 859).)  This reservation does not reserve any rights, or otherwise address, the Trustee's current claim that it does not have to satisfy the standard for retroactive stay relief.  The Trustee sent a rescission notice on June 4, 2014, in violation of the automatic stay.  Any Court consideration of the Lift Stay Motion after June 4 would be analyzing whether to lift the stay *nunc pro tunc*.  Therefore, even on the date of the June 19, 2014, DIP Order, the Trustee sought, as it seeks now, to retroactively lift the stay.  It could not

11

have reserved a right to avoid having to meet the narrow standard for retroactive stay relief because no such right existed at the time of the alleged reservation.

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should deny the Trustee's Lift Stay Motion and enter a final order granting the EFIH Debtors' Cross-Motion for Summary Judgment on all counts.

*[Remainder of page intentionally left blank.]*

12

Dated: April 15, 2015
      Wilmington, Delaware

*/s/ Jason M. Madron*
_____

**RICHARDS, LAYTON & FINGER, P.A.**
Mark D. Collins (No. 2981)
Daniel J. DeFranceschi (No. 2732)
Jason M. Madron (No. 4431)
920 North King Street
Wilmington, Delaware 19801
Telephone:    (302) 651-7700
Facsimile:    (302) 651-7701
Email:    collins@rlf.com
        defranceschi@rlf.com
        madron@rlf.com

-and-

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Edward O. Sassower, P.C. (admitted *pro hac vice*)
Stephen E. Hessler (admitted *pro hac vice*)
Brian E. Schartz (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022-4611
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900
Email:    edward.sassower@kirkland.com
        stephen.hessler@kirkland.com
        brian.schartz@kirkland.com

-and-

James H.M. Sprayregen, P.C. (admitted *pro hac vice*)
Marc Kieselstein, P.C. (admitted *pro hac vice*)
Chad J. Husnick (admitted *pro hac vice*)
Steven N. Serajeddini  (admitted *pro hac vice*)
300 North LaSalle
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200
Email:    james.sprayregen@kirkland.com
        marc.kieselstein@kirkland.com
        chad.husnick@kirkland.com
        steven.serajeddini@kirkland.com

Co-Counsel to the Debtors and Debtors in Possession

13