## IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | ) |
| ENERGY FUTURE HOLDINGS CORP., *et al.*, | ) |
| *Debtors.* | ) |
| | ) |
| DELAWARE TRUST COMPANY, as | ) |
| INDENTURE TRUSTEE, | ) |
| *Plaintiff,* | ) |
| v. | ) |
| ENERGY FUTURE INTERMEDIATE HOLDING | ) |
| COMPANY LLC and EFIH FINANCE INC. | ) |
| *Defendants.* | ) |
| | ) |

Chapter 11
Case No. 14-10979 (CSS)
(Jointly Administered)

Adversary Proceeding
No. 14-50363 (CSS)

### JOINT PRE-TRIAL MEMORANDUM

Pursuant to the Local Rules for the United States Bankruptcy Court for the District of Delaware 7016-2(d), the Amended Scheduling Order dated December 2, 2014 (No. 14-50363, D.I. 167), and the Notice of Combined Hearing and Trial (No. 14-50363, D.I. 194), the parties hereby submit the following Joint Pre-Trial Order in connection with the trial scheduled to commence April 20, 2015.

## I. NATURE OF THE ACTION

On April 29, 2014, Energy Future Intermediate Holding Company LLC and EFIH Finance Inc., (collectively "EFIH" or the "EFIH Debtors") filed voluntary petitions under Chapter 11 of the Bankruptcy Code in this Court. Other affiliated debtors also filed petitions under Chapter 11 in this Court on the same day.

On the first day of these Chapter 11 cases, EFIH filed a motion for authority to borrow $5.4 billion in debtor-in-possession financing and to use most of it to pay off all principal and interest (other than disputed interest) on the first lien notes (the "Notes") issued by EFIH to investors (the "Noteholders") principally in August 2010 and January 2013 (No. 14-10979, D.I. 74 at 4-5). In connection with that motion, EFIH also sought authority to settle any claims for payment of a "make

whole" premium under the Notes and their indenture (the "Indenture") or any related claims of the

Noteholders for less than the full amount potentially owed by EFIH on those claims.  As to those

holders who did not agree to the settlement ("non-settling Noteholders"), EFIH simultaneously

commenced a contested matter seeking a determination that those Noteholders were not entitled to

any make whole or related claim (the "Contested Matter").  After the Court granted EFIH's motion to

repay the Notes on June 6, 2014 (No. 14-10979, D.I. 859), EFIH paid the Noteholders the full

principal and accrued interest owing on the Notes (other than disputed interest)—but excluding any

make whole—using the debtor-in-possession financing, which was funded on June 19, 2014.

On May 15, 2014, Delaware Trust Company, indenture trustee for the Notes (the "Trustee"),

commenced an adversary proceeding (No. 14-10979, D.I. 470; No. 14-50363, D.I. 1 (the "Adversary

Proceeding")) seeking a declaratory judgment that EFIH's repayment of the Notes requires it to pay a

"make whole" premium or other damages.  The Adversary Proceeding Complaint contained four

claims:

- Count I:  Declaratory Judgment that EFIH's Refinancing of the 10% Notes
  Constitutes a Redemption Requiring Payment of the Applicable Premium as an
  Allowed Secured Claim

- Count II:  Declaratory Judgment that EFIH's Default Under the 10% Notes With An
  Intent To Deny The Premium Requires Payment of the Applicable Premium as an
  Allowed Secured Claim

- Count III:  Declaratory Judgment that the Majority Holders' Right to Rescind
  Acceleration of the 10% Notes Gives Rise to an Allowed Secured Claim

- Count IV:  Declaratory Judgment that, in the Alternative, EFIH's Refinancing of the
  10% Notes Gives Rise to An Unsecured Claim

Also on May 15, 2014, the Trustee filed a motion seeking (i) a determination that it could

rescind acceleration of the Notes without violating the automatic stay or (ii) in the alternative, relief

from the automatic stay to rescind acceleration of the Notes.  (No. 14-10979, D.I. 473 (the "Stay-

Applicability Motion")).  On June 4, 2014, the Trustee sent a notice of deceleration to EFIH in an

attempt to exercise a right under the Indenture to rescind any automatic acceleration of the Notes ("Rescission Notice").

On September 12, 2014, the Court entered an order bifurcating litigation of the Contested Matter, Adversary Proceeding, and Stay-Applicability Motion.  (No. 14-50363, D.I. 128 (the "Bifurcation Order")).  Phase One provides for the Court to determine (1), whether the Noteholders are entitled to a "Redemption Claim" (as that term is defined in the Bifurcation Order) under applicable non-bankruptcy law, and (2), to the extent relevant, "whether the Debtors intentionally defaulted in order to avoid paying an alleged make-whole premium or other damages." *Id.* at 2-3. Except with respect to intentional default, the Court would assume "solely for the purposes of Phase One that the EFIH Debtors are solvent and able to pay all allowed claims of their creditors in full." *Id.* If the Court found EFIH liable for a Redemption Claim *and* were EFIH to dispute its solvency the Court would then proceed to Phase Two to determine "(a) whether the EFIH Debtors are insolvent, and, if so, whether that insolvency gives rise to any defenses arising under the Bankruptcy Code in favor of the EFIH Debtors that bar or limit the amount of the Redemption Claim, and (b) the dollar amount of … any Redemption Claim." *Id.*

On February 13, 2015, EFIH and the Trustee submitted cross-motions for summary judgment on Phase One, seeking to resolve all of the claims raised in the Contested Matter, Adversary Proceeding, and the Stay-Applicability Motion for purposes of Phase One.  (No. 14-50363, D.I. 175, 176, 178, 179).  On March 26, 2015, the Court entered its Findings of Facts and Conclusions of Law Regarding Cross-Motions for Summary Judgment dated March 26, 2015 (No. 14-10979, D.I. 3984 (the "Summary Judgment Findings of Facts and Conclusions of Law")) and related order (No. 14-50363, D.I. 246 (the "Summary Judgment Order")).

The Summary Judgment Order granted summary judgment for EFIH on all four Counts of the Adversary Proceeding Complaint, while specifying that entry of summary judgment on Count I of the Complaint was without prejudice.  Summary Judgment Order ¶ 1.  The Court also granted

3

EFIH partial summary judgment on the Stay Applicability Motion, *id.* ¶ 2, having found that the

Trustee's issuance of the Rescission Notice was a violation of the automatic stay and "void *ab*

*initio*." Summary Judgment Findings of Fact and Conclusions of Law ¶ 94. However, the Court

found that "a genuine issue of material fact exists as to whether the Trustee can establish cause to lift

the automatic stay" with respect to the Rescission Notice. *Id.*

     The Court has explained that "if it were to lift the automatic stay, *nunc pro tunc* to a date on

or before the repayment of the Notes on June 19, 2014, to allow the Trustee to waive the

[bankruptcy] default and decelerate the Notes th[e]n EFIH's refinancing would be an Optional

Redemption under section 3.07 of the Indenture and the Applicable Premium would be due and

owing to the non-settling Noteholders." *Id.* ¶ 90. Courts generally determine whether cause exists to

lift the automatic stay by considering "(1) whether any great prejudice to either the bankrupt estate or

the debtor will result from a lifting of the stay; (2) whether the hardship to the non-bankrupt party by

maintenance of the stay considerably outweighs the hardship to the debtor; and (3) the probability of

the creditor prevailing on the merits," in addition to "the totality of circumstances in each particular

case." *Id.* ¶ 73.

     Accordingly, the sole issue presented for trial is whether cause exists to lift the automatic stay

to allow the Trustee to waive the default and rescind acceleration of the Notes. *Id.* ¶ 71.

## II.    <u>BASIS OF JURISDICTION</u>

     This Court has jurisdiction over the Adversary Proceeding and Stay-Applicability Motion

pursuant to 28 U.S.C. § 1334. The Adversary Proceeding and Stay-Applicability Motion are

core proceedings under 28 U.S.C. § 157(b) because they arise under the Bankruptcy Code and/or

arise in the Chapter 11 cases of EFIH LLC and EFIH Finance pending in the United States

Bankruptcy Court for the District of Delaware, jointly administered under the case of *In re*

*Energy Future Holdings Corp.*, Case No. 14-10979 (CSS).[1]  The statutory predicates for the relief sought in the Adversary Proceeding and Stay-Applicability Motion are 28 U.S.C. § 2201, sections 105(a) and 362 of title 11 of the United States Code (the "Bankruptcy Code"), Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 4001-1 of the Local Rules for the United States Bankruptcy Court for the District of Delaware (the "Local Rules").  Venue of the Adversary Proceeding and Stay-Applicability Motion is proper in this district pursuant to 28 U.S.C. §1409 in that the Adversary Proceeding and Stay-Applicability Motion arise in and relate to the above-captioned Chapter 11 cases pending in this district.

III.   **STATEMENT OF UNCONTESTED FACTS**

1.      EFIH is a direct, wholly-owned subsidiary of Energy Future Holdings Corp. ("EFH").

2.      Funds affiliated with each of KKR, TPG, and Goldman Sachs (collectively, the "Sponsors") own substantially all of the equity of EFH.

3.      EFH also owns, directly or indirectly, equity interests in additional debtors in these jointly-administered Chapter 11 cases (together with EFIH, the "Debtors"), including Texas Competitive Electric Holdings Company LLC ("TCEH").

4.      The Debtors in these Chapter 11 cases have not been substantively consolidated.

5.      EFIH is a holding company.

6.      EFIH's primary asset is its 100% ownership of Oncor Electric Delivery Holdings Company LLC, which, in turn, owns approximately 80% of Oncor Electric Delivery Company LLC ("Oncor").

---

[1] The Trustee incorporates herein its reservation of rights contained in ¶ 9 of the Adversary Proceeding Complaint.  (No. 14-50363, D.I. 1).

7.      In August 2010 and again in January 2013, EFIH issued through exchange offers the first lien Notes due 2020 in a total principal amount of approximately $3.5 billion. These notes bore an annual interest rate of 10%. In 2012, EFIH issued for cash additional first lien Notes due 2017 in a total principal amount of approximately $500 million. These notes bore an annual interest rate of 6.875%.

8.      EFIH filed a voluntary petition under Chapter 11 of the Bankruptcy Code on April 29, 2014 (the "Petition Date"), along with EFH, TCEH and the other Debtors.

9.      Oncor Holdings and Oncor are "ring fenced" entities that have not filed a bankruptcy petition and are therefore not Debtors.

10.     At the time of the bankruptcy filing, EFIH had funded debt obligations of approximately $7.709 billion, consisting of approximately $3.985 billion in first-lien notes (the "Notes"), $2.156 billion in second-lien notes, and $1.568 billion in unsecured notes (the so-called PIK notes).

11.     On the Petition Date, EFIH filed a debtor-in-possession financing motion that sought to refinance the Notes and requested a determination that no "make whole" would be due to the Noteholders as a result (the "DIP Motion").

12.     On May 15, 2014, the Trustee commenced the Adversary Proceeding and also filed the Stay-Applicability Motion.

13.     On June 4, 2014, the Noteholders delivered a letter to EFIH which stated, in part, that it "(a) waive[s] each and every Default that would otherwise constitute a Default pursuant to either section 6.01(a)(6) or section 6.01(a)(7) of the Indenture (each such Default, individually, a 'Bankruptcy Default') and its consequences, with the effect that no such Default shall be deemed to have occurred; and (b) rescind[s] any acceleration with respect to the Notes and its

consequences that would otherwise result from any Bankruptcy Default, including, without

limitation, any such acceleration pursuant to the second paragraph of section 6.02 of the

Indenture and paragraph 12 of the back of the Notes, with the effect that no such acceleration

shall be deemed to have occurred." The letter further stated that in the event that "the automatic

stay pursuant to section 362 of the Bankruptcy Code applie[d] to stay the delivery and/or

effectiveness" of the notice, "(i) [the notice was] conditioned upon entry of an order by a court of

competent jurisdiction lifting the automatic stay to permit the delivery and/or effectiveness of

[the notice] (a 'Lift Stay Order'); and (ii) upon entry of a Lift Stay Order, the waiver and

rescission set forth above shall be effective as of the date of [the notice]."

      14.     On June 6, 2014, the Court entered an order granting the DIP Motion. The order

approved the repayment of the Notes, "*provided, however, that the rights of all parties are*

*preserved with respect to the EFIH First Lien Makewhole Claims, default or penalty interest, if*

*any (including with respect to Additional Interest and interest on interest), and the payment of*

*fees and expenses and all other amounts under the EFIH First Lien Documents and the EFIH*

*Collateral Trust Agreement.*" No. 14-10979, D.I. 859 ¶ 12. The order further provided that:

> Nothing in this Final Order (including, without limitation, any factual findings
> herein) or the transactions contemplated hereby (including, without limitation, the
> closing of the EFIH First Lien Repayment) shall have any precedential,
> evidentiary, law of the case, or preclusive effect with respect to any present or
> future dispute concerning the amount (if any) of EFIH First Lien Makewhole
> Claims or any other claims for damages of the EFIH First Lien Notes Trustee or
> the Prepetition EFIH Lien Creditors due or that may become due as a result of, or
> in connection with, the EFIH First Lien Repayment, whether in connection with
> the [Adversary Proceeding], the [Stay-Applicability Motion], or any other claims
> objection or other proceeding, including, without limitation, whether (i) any
> acceleration of the EFIH First Lien Notes is subject to rescission by majority
> holders thereof pursuant to the terms of the EFIH First Lien Indentures or (ii)
> whether the EFIH First Lien Notes could have been reinstated before the EFIH
> First Lien Repayment. *Id.* ¶ 40(b).

15.     On June 19, 2014, EFIH paid all principal and accrued interest (other than certain disputed amounts) owed on the Notes with the proceeds of the debtor-in-possession financing. It did not pay the make whole claimed by the Noteholders (or certain amounts of disputed interest).

16.     On July 16, 2014, NextEra Energy, Inc. ("NextEra") submitted an unsolicited bid to acquire EFH's economic interests in Oncor. That bid implied an enterprise value for Oncor of more than $18 billion. The Debtors did not accept NextEra's bid. On January 14, 2015, the Court entered an order establishing bidding procedures for the sale of EFH's economic interests in Oncor. Pursuant to the approved bidding procedures, Round 2 bids were due April 13, 2015, and the Debtors expect thereafter to file a motion seeking approval of a "stalking horse" agreement. Upon entry of the stalking horse order, the Debtors will commence an open bidding process for at least 30 days. At the conclusion of the open bidding process, the Debtors will then conduct an auction and select the successful bid. There will then ensue a hearing to approve the selection of the successful bid as well as the Debtors' compliance with all applicable bidding procedures.

17.     On September 12, 2014, the Court entered the Bifurcation Order, which bifurcated the first lien make-whole litigation (the Adversary Proceeding, Stay-Applicability Motion, Contested Matter) and provided that except with respect to intentional default, "the Court will assume solely for the purposes of Phase One that the EFIH Debtors are solvent and able to pay all allowed claims of their creditors in full."

18.     On March 26, 2015, the Court entered its Summary Judgment Findings of Facts and Conclusions of Law and the Summary Judgment Order.

IV.     **STATEMENT OF DISPUTED FACTS**

   A.     **Plaintiff's Statement of Contested Facts**

1.      Cause exists to modify the automatic stay to allow the Trustee and the Noteholders to waive EFIH's bankruptcy default and rescind the resulting acceleration of the Notes, based on the totality of circumstances.

2.      The make whole is material to the Noteholders' recovery, representing approximately 20% of their principal investment.

3.      The make whole is critical to providing the Noteholders the benefit of their bargain.

4.      When it entered into the indenture for the Notes, EFIH did not itself think, let alone disclose to the Noteholders, that the right to rescind acceleration and the make whole could be subject to limitation in bankruptcy.  To the contrary, EFIH promised in section 4.06 of the Indenture that it would "*not* at any time *insist upon ... any stay*, extension or usury *law* ... that may affect ... the performance of this Indenture ... *and ... shall not, by resort to any such law, hinder, delay or impede the execution of any power herein granted to the Trustee*."

5.      The Noteholders relied on the make whole as a material inducement to acquire the Notes in exchange offers that otherwise required them to take a "hair cut" on the old notes they exchanged.

6.      The Noteholders relied on EFIH's corporate separateness, their first-lien priority, and EFIH's evident solvency in purchasing the Notes.

7.      The Noteholders have been prejudiced because they have been forced to reinvest the principal that EFIH repaid to them on June 19, 2014 in a markedly lower interest-rate environment, without obtaining the make whole payment they bargained to receive as compensation for that loss.

8.     The hardship to the Trustee and the Noteholders by maintenance of the automatic stay considerably outweighs the hardship to EFIH.

9.     No great prejudice to either EFIH or its bankruptcy estate will result from lifting the automatic stay to permit the Trustee and the Noteholders to rescind acceleration of the Notes and thereby obtain the right to payment of the make whole in EFIH's bankruptcy case in accordance with their contractual, state-law rights.

10.    Lifting the stay will not cause EFIH to lose any asset or reduce the value of any such asset, including EFIH's interest in Oncor.

11.    Lifting the stay will also not harm EFIH's creditors.  For purposes of Phase One of this litigation, EFIH is presumed to be solvent (and the evidence indicates that it, in fact, is substantially solvent) and able to pay all of its creditors in full, even if the stay is lifted and the Noteholders are allowed a claim for the make whole.

12.    Lifting the stay will not harm EFIH itself.  The amount of the make whole due the Noteholders is only a small percentage of the overall claims against EFIH and quite modest compared to the overall assets and value of EFIH.  Moreover, EFIH has already obtained substantial benefits from redeeming the Notes, including, by its own admission, more than $170 million annually in interest savings, savings that will continue regardless of whether or not it is required to pay the make whole.

B.     **Defendants' Statement of Contested Facts**

1.     No cause exists to lift the automatic stay, *nunc pro tunc*, to permit the Trustee to rescind the automatic acceleration of the Notes.

2.     No cause exists to lift the automatic stay to permit the Trustee to rescind the automatic acceleration of the Notes.

10

3.      The Court previously held that "[w]hile a debtor's solvency may, in certain cases, be a relevant consideration in determining whether [such] cause exists . . . it is not the sole factor to be considered." Summary Judgment Findings of Fact and Conclusions of Law ¶ 74.  It noted that "[s]everal courts have held that lifting the automatic stay to trigger liability under a make-whole claim may harm a debtor its estate and that analysis does not depend solely on whether that estate is insolvent." *Id.* ¶ 75.  Finally, it concluded that denial of a noteholder's contractual right to rescission "does not, in and of itself, establish cause to lift the automatic stay." *Id.*

4.      EFH and the Debtors have many creditors who are stakeholders in these chapter 11 cases.

5.      The EFIH estate, including its sole shareholder EFH Corp. and its creditors, would suffer prejudice from lifting the stay.

6.      If the stay were lifted for this purpose, EFIH would also suffer hardship by having to pay approximately $431 million to satisfy the claims of the non-settling Noteholders.

7.      The trustee for the EFIH Second Lien Notes has indicated that it will also seek to lift the stay to exercise its own rescission right on grounds essentially identical to those advanced by the First Lien Trustee in order to collect a make-whole premium payment estimated at approximately $399 million (assuming an exit date of December 31, 2015).  If the Court were to grant the First Lien Trustee's motion to lift the stay, the Second Lien Trustee will undoubtedly argue that the Court's ruling should allow the Second Lien Trustee to lift the stay *nunc pro tunc* as well.

8.      Further, were the Court to grant relief from the stay to the First Lien Trustee, the trustee for the EFIH Payment-in-Kind ("PIK") Notes would likely also seek such relief on

essentially identical grounds in an effort to collect from the EFIH estate a make-whole premium

estimated at $113 million (assuming an exit date of December 31, 2015).

9.      In total, the direct financial hardship to the EFIH estate from granting the

Trustee's motion would be more than $900 million in additional claims it currently is not obliged

to pay.  Even based on a presumption that EFIH is solvent, EFIH would be forced to divert such

funds from amounts that would otherwise be recovered by its sole shareholder, EFH Corp., and

its creditors.

10.     The *maximum* cognizable harm to the Noteholders resulting from denying the

Trustee's motion is $431 million.

11.     The Trustee's own expert witnesses consistently refer to the Notes' Applicable

Premium provision as a "make-whole premium."  This provision is designed to compensate for

the *maximum* harm a noteholder would suffer were an optional redemption of the Notes to occur.

As its name clearly suggests, a make-whole is the amount that noteholders agree will *make them*

*whole* for any damages suffered as a result of an early repayment of their notes.

12.     Since June 19, 2014, the non-settling Noteholders have had control over the

principal and accrued interest on their Notes.  To the extent they have re-invested those funds

and earned interest, their actual financial harm is actually *less* than the total $431 million claimed

make-whole amount.

13.     The financial hardship to the noteholders not receiving the $431 million "make

whole" does not "considerably outweigh" the hardship to the debtor.

14.     The Trustee has also not established that it will prevail on the merits of its claim

were it to be granted relief from the stay because the Bankruptcy Code automatically accelerated

the Notes upon EFIH's chapter 11 filing on April 29, 2014.  The Trustee's contractual rescission

right cannot undo acceleration of debt that occurred pursuant to the operation of the Bankruptcy Code.

15.     The Debtors note that the auction approval hearing referenced in the Statement of Undisputed Facts may be continued to a later date at the Debtors' discretion. Further, any approval of the successful bid by the Bankruptcy Court will remain subject to confirmation and applicable regulatory approvals.

## V.     **DAMAGES OR OTHER RELIEF**

### A.     **Plaintiff's Statement of Relief**

1.     The relief the Trustee and the Noteholders seek in the proceedings set for trial is relief from the automatic stay, to the extent necessary, to allow the Trustee and the Noteholders to waive any default under the Indenture arising from EFIH's bankruptcy filing and to rescind the resulting acceleration of the Notes.[2]

2.     As the Court has held, such relief would cause the "Applicable Premium" to be due and owing pursuant to section 3.07 of the Indenture.

3.     The Trustee asserts that the amount of the Applicable Premium (including certain interest) as of June 19, 2014 was approximately $431 million (plus interest accruing thereafter).[3]

---

[2] The Trustee and the Noteholders reserve all rights to argue in any appeal or other proceedings that they are also entitled to the other relief sought in connection with the Adversary Proceeding and Stay-Applicability Motion that the Court denied in its ruling on the Cross-Motions for Summary Judgment. EFIH reserves all rights to argue in any such appeal or other proceedings that the Trustee and the Noteholders are not entitled to any such relief.

[3] One of the Trustee's experts, Christopher Kearns, calculated the make-whole amount of $431 million using a higher rate of interest that was triggered prepetition, as of January 30, 2014, with respect to some of the Notes when EFIH failed to register the Notes as it agreed. *See* Kearns Report at p.27. If instead the make whole were calculated without using the higher rate that includes the "additional interest" triggered by the failure to register, the make whole would be approximately $6 million less, or $425 million. See id. Whatever the outcome of this make-whole litigation, it does not affect the Noteholders' independent claim for payment of the "additional interest" that has accrued at the increased rate since January 30, 2014 (which EFIH

4.      Under the Court's Bifurcation Order, the amount of damages for any redemption

claim, including the Applicable Premium, is to be determined in Phase Two.

5.      Accordingly, the Trustee and the Noteholders reserve all rights to litigate in Phase

Two the amount of the Applicable Premium and whether it is a secured or unsecured claim and,

if the latter, whether it is entitled to priority.

B.      **Defendants' Statement of Relief**

1.      Defendants seek an order of the Court that no cause exists under 11 U.S.C.

§ 362(d)(1) or any other provision of law to lift the automatic stay to permit the Trustee to

rescind acceleration of the Notes.

2.      Defendants further seek a judgment in favor of Defendants and against the

Trustee on all counts of the Adversary Proceeding Complaint and the Stay-Applicability Motion,

with prejudice.

3.      Defendants finally request all other costs and fees the Court deems appropriate.

VI.     **LEGAL ISSUES PRESENTED**

A.      **Plaintiff's Issues of Law and Authorities**

1.      This Court has already held that "if [the Court] were to lift the automatic stay …

to allow the Trustee to waive the [bankruptcy] default and decelerate the Notes th[e]n EFIH's

refinancing would be an Optional Redemption under section 3.07 of the Indenture and the

Applicable Premium would be due and owing to the non-settling Noteholders."  Summary

Judgment Findings of Fact and Conclusions of Law ¶ 90.

---

did not pay on June 19, 2014), and the Trustee and the Noteholders reserve all rights with respect
to such claim (as well as any other claim owed under the Indenture that has not been paid,
including interest on interest for amounts that were not timely paid when interest was due on
June 1, 2014).

2.      Cause exists to modify the stay to permit the Trustee and the Noteholders to waive EFIH's bankruptcy default and to rescind the resulting acceleration of the Notes.

3.      On request of a party in interest and after notice and a hearing, a bankruptcy court shall grant relief from the stay provided under section 362(a) of the Bankruptcy Code for cause, including lack of adequate protection of an interest in property of such party in interest.  11 U.S.C. §362(d)(1).

4.      Courts are to determine "cause" based on the totality of the circumstances in each particular case.  Summary Judgment Findings of Facts and Conclusions of Law ("*Findings/Conclusions*") ¶ 73 (citing *In re Wilson*, 116 F.3d 87, 90 (3d Cir. 1997)).

5.      The party requesting relief from the stay has the burden of proof "on the issue of the debtor's equity in property" (if applicable), and the party opposing stay relief has the burden of proof on all other issues.  11 U.S.C. §362(g); *In re Downey Fin. Corp.*, 428 B.R. 595, 609 (Bankr. D. Del. 2010).   Here, there is no issue about EFIH's equity in property—the Noteholders are not seeking to foreclose on any property of EFIH—and, accordingly, the burden of proof is entirely on EFIH.  To be sure, some courts have required the party requesting relief to make a minimal, initial showing of cause.  But once the moving party has made a *prima facie* case for relief, the burden shifts to the party opposing stay relief—here, EFIH.  *In re RNI Wind Down Corp.*, 348 B.R. 286, 299 (Bankr. D. Del. 2006); *Matter of Pursuit Athletic Footwear, Inc.*, 193 B.R. 713, 718 (Bankr. D. Del. 1996); *In re Scalera*, 521 B.R. 513, 517 (Bankr. W.D. Pa. 2014).

6.      There is no need to consider whether to lift the stay *nunc pro tunc* because the Trustee and the Noteholders filed the stay-relief motion before the Court entered its order approving EFIH's repayment of the Notes and that order provides that the stay-relief motion is to be decided as if the Notes had not yet been repaid.  No. 14-10979, D.I. 859, ¶ 40(b).

7.      The factors courts generally use in determining whether cause exists are (1) whether any great prejudice to either the bankrupt estate or the debtor will result from a lifting of the stay; (2) whether the hardship to the non-bankrupt party by maintenance of the stay considerably outweighs the hardship to the debtor; and (3) the probability of the creditor prevailing on the merits. *Findings/Conclusions* ¶ 73 (citing *In re Downey Fin. Corp.*, 428 B.R. 595, 609 (Bankr. D. Del. 2010)).

8.      The first factor weighs in favor of lifting the stay because EFIH and its estate will not suffer any great prejudice if the Trustee and the Noteholders are granted limited relief solely to exercise their right under the Indenture to rescind acceleration and assert a claim for the make whole in EFIH's bankruptcy case.

9.      Where, as here, the debtor is solvent and the creditor does not seek to foreclose but merely to assert a claim in the bankruptcy for what it is owed under its contract with the debtor and applicable non-bankruptcy law, solvency is a key factor establishing cause to lift the stay because lifting the stay will not reduce the recoveries of the debtor's other creditors. *See In re Texaco, Inc.*, 81 B.R. 804, 805-06 (Bankr. S.D.N.Y. 1988); *In re Armstrong World Indus.*, No. 00-4471, Mem. Order at 2-3 (D. Del. Dec. 10, 2001), *aff'd*, 106 F. App'x 785 (3d Cir. 2004) (unpublished); *Claughton v. Mixson*, 33 F.3d 4, 5-6 & nn.2-4 (4th Cir. 1994); *see also In re Gencarelli*, 501 F.3d 1, 7 (1st Cir. 2007); Opinion, No. 14-50363, D.I. 105, at 10-15; Plaintiff-Trustee's and Noteholders' Trial Brief, No. 14-50363, D.I. 264 ("Trial Brief"), at part I.C.2.b. (citing additional arguments and authorities).

10.     Lifting the stay also will not prejudice EFIH itself, which agreed in the Indenture that the Noteholders would have the right to rescind acceleration in bankruptcy and that it would not invoke the stay to block the exercise of that right. Indenture §§ 4.06, 6.02. Where the debtor's other creditors are not harmed, a debtor's agreement to waive the stay is also a factor

16

weighing in favor of lifting the stay. *In re 4848, LLC*, 490 B.R. 343, 348-49 (Bankr. E.D. Wis. 2013); *In re Shady Grove Tech Ctr. Assocs. L.P.*, 227 B.R. 422, 425-26 (Bankr. D. Md. 1998); Trial Brief, at part I.C.2.c. (citing additional arguments and authorities).

11.     Furthermore, lifting the stay will not prejudice EFIH's shareholder EFH.  As a matter of law, the absolute priority rule prohibits EFIH from distributing any of its value to its shareholder until the Noteholders have been paid in full everything they are owed under the terms of their contract with EFIH.  *See* 11 U.S.C. § 1129(b)(2); Trial Brief at part I.C.2.d. (citing additional arguments and authorities).

12.     The supposed effect of the Noteholders' make-whole claim on the estates of other, non-substantively consolidated Debtors—such as EFH or TCEH—or on the Sponsors, is not relevant to the stay-relief motion.  Whether lifting the stay will cause "great prejudice to either the bankrupt estate or the debtor" must be determined in terms of the prejudice to *EFIH* and *its* estate, not to the estates of other Debtors.  To hold otherwise would effect a substantive consolidation in contravention of the law of this Circuit.  A debtor's estate cannot be substantively consolidated with the estate of other debtors in the absence of strict proof that the debtors disregarded separateness to such a degree that all creditors relied on the debtors as one legal entity—proof that is wholly lacking on this record.  *See In re Owens Corning*, 419 F.3d 195 (3d Cir. 2005); *In re Augie/Restivo Baking Co., Ltd.*, 860 F.2d 515 (2d Cir. 1988); Trial Brief at part 1.C.2.e. (citing additional arguments and authorities).

13.     Lifting the stay to permit the Noteholders to assert a claim for the make whole also would not result in any "great prejudice" to EFIH and its estate because, even if relief were denied, the stay would not operate to disallow that claim.  At the time of EFIH's bankruptcy filing, the Noteholders had a right to payment of the make whole under the Indenture that was

contingent on EFIH's election to redeem the Notes (as it subsequently did) and the exercise of

the Noteholders' right to rescind acceleration.  Even if the stay prevented the Noteholders from

taking steps to "fix" that contingent claim by delivering a notice rescinding acceleration, the

Bankruptcy Code provides that the court "shall allow" such claim *even if* it is "contingent."  *See*

11 U.S.C. §§ 101(5), 502(b)(1); *In re Stephan*, 588 Fed. App'x 143, 144 (3d Cir. 2014)

(unpublished)[4] (allowing lender's contingent deficiency claim under § 502(b)(1) even though the

claim was unenforceable under state law unless the lender first obtained a judgment, which the

stay barred it from obtaining); *In re Rodriguez*, 629 F.3d 136, 141-42 (3d Cir. 2010) ("[T]he stay

does not determine a creditor's claim but merely suspends an action to collect the claim outside

the procedural mechanisms of the Bankruptcy Code.  Therefore, staying [the creditor's] attempt

to collect [its claim] does not bar [the creditor] from asserting its contractual rights in the

bankruptcy court."); Trial Brief at part I.C.2.f. (citing additional arguments and authorities).

14.     The second factor also weighs in favor of lifting the stay because, as discussed in

the Plaintiff's Statement of Contested Facts above, the hardship to the Trustee and the

Noteholders by maintenance of the stay considerably outweighs the hardship to EFIH from

lifting the stay.  *See* Trial Brief at part I.C.1.

15.     The third factor also weighs in favor lifting the stay because the Court has already

held that if the stay is lifted, the Noteholders will succeed on the merits and will be entitled to

payment of the make whole.  *See* Trial Brief at part I.C.3.

16.     Furthermore, lifting the stay is consistent with the policies underlying the

automatic stay, which courts also consider in determining whether cause exists to lift the stay.

*See In re Continental Airlines, Inc.*, 152 B.R. 420, 424 (D. Del. 1993).  Those policies are

---

[4] The Court's decision notes that it is not an opinion of the full Court and pursuant to
I.O.P. 5.7 does not constitute binding precedent.

"designed to prevent certain creditors from gaining a preference for their claims against the debtor; to forestall the depletion of the debtor's assets due to legal costs in defending proceedings against it; and, in general, to avoid interference with the orderly liquidation or rehabilitation of the debtor." *Borman v. Raymark Indus.*, 946 F.2d 1031, 1036 (3d Cir. 1991); Trial Brief at part I.C.4. (citing additional authorities).

17.    Lifting the stay will not allow the Noteholders to gain a preference because EFIH is solvent and all creditors will be paid in full in any event (and, even if it did, the Noteholders are the senior secured creditors, with a first lien on substantially all of EFIH's assets).  Lifting the stay also will not deplete EFIH's assets in defending litigation in another court because the Trustee and Noteholders will simply rescind acceleration and assert a claim to the make whole in EFIH's bankruptcy case.  And asserting that claim will not interfere with an orderly auction of EFIH's interest in Oncor, or the plan process, any more than will the claim of any other creditor filed in EFIH's bankruptcy case.  *See* Trial Brief at part I.C.4.

18.    Cause also exists to lift the stay for lack of adequate protection of the Noteholders' interest in property.  If the stay operates to void the Noteholders' rights under the Indenture and eliminate their value, either the stay should be lifted under section 362(d)(1) of the Bankruptcy Code, or alternatively, the Noteholders should be provided adequate protection under section 361 of the Bankruptcy Code.  *See* Trial Brief at part I.D. (citing additional arguments and authorities).

19.    Finally, EFIH's argument that stay relief should be denied on grounds that bankruptcy law "accelerated" the Notes is without merit.  This Court has already held that if the stay is lifted to permit the Trustee and the Noteholders to rescind the *contractual* acceleration that occurred automatically upon EFIH's bankruptcy filing, then the make whole will be due.

19

*Findings/Conclusions* ¶¶ 68-69, 90, 94. It is well settled that make wholes are allowable in bankruptcy, notwithstanding the limited "acceleration" of debt that occurs by operation of bankruptcy law in every bankruptcy case. *In re Trico Marine Servs.*, 450 B.R. 474, 477-78, 481 (Bankr. D. Del. 2011); *In re Skyler Ridge*, 80 B.R. 500, 507 (Bankr. C.D. Cal. 1987); Trial Brief at 1.C.1.g. (citing additional arguments and authorities).

20.     The Trustee and Noteholders believe that the Court will find expert testimony helpful in assessing the harm that the Noteholders will suffer if denied their rescission rights. As the Trustee and Noteholders' experts will testify, investors agree to assume the risks of investing in high-yield debt—like the debt offered by EFIH—in return for a guaranteed income stream over a number of years. A redemption before stated maturity cuts off that guaranteed income stream, inflicting a monetary loss on the investor. The makewhole payment compensates the investor for what would otherwise be a significant financial loss. That loss—as the experts will demonstrate—was particularly significant here because interest rates plummeted and holders of the EFIH First Lien notes were not able to reinvest in comparable credit quality bearing anywhere near a 10% annual rate of return, causing them lose them to lose hundreds of millions of dollars. Because investors already bear the investment risk where interest rates rise, denying the Noteholders a makewhole payment in this current interest rate environment means that investors will effectively bear all the risk, regardless of interest rate movement. Expert testimony will therefore provide the court with a framework to assess both the type of harm suffered by the Noteholders if they are denied their right of rescission, and the degree of that harm—here, hundreds of millions of dollars.

B.     **Defendants' Contested Issues of Law and Authorities**

1.     Cause does not exist to lift the automatic stay under 11 U.S.C. § 362(d)(1).

2.     Lifting the automatic stay would cause great prejudice to EFIH and to the bankruptcy estate, which includes EFIH equity holders and their creditors.

3.     The hardship to the Noteholders cannot "considerably outweigh" the hardship to the debtor because at best (for the Noteholders) the hardships are equivalent to both sides—the value of the Applicable Premium. (Findings of Fact and Conclusions of Law ¶ 73 (emphasis added; citing *In re Downey Fin. Corp.*, 428 B.R. 595, 609 (Bankr. D. Del. 2010)); *see also In re DBSI, Inc.*, 407 B.R. 159, 167 (Bankr. D. Del. 2009) (holding that the hardship to the debtor's estate outweighed the hardship to the creditor)).

4.     The Trustee cannot succeed on the merits because under no circumstances can it rescind the automatic acceleration that occurred by operation of the Bankruptcy Code.  The Notes were accelerated by operation of the Code on the Petition Date.  The Trustee has no authority under the Code to decelerate and reinstate debt.  Section 4.06 of the Indenture states that EFIH will not—"to the extent that [it] may lawfully do so"—claim the benefit of that automatic stay.  The Trustee fails to even mention this language, which appears as an express parenthetical in the Indenture, in its proposed findings.  And in this contractual language, all parties—including the Trustee—explicitly recognized the reality that any agreement to waive the protection of the automatic stay is unenforceable, as a general matter, and, in any event, not enforceable in this context.  *Fallick v. Kehr*, 369 F.2d 899, 904 (2d Cir. 1966); *In re 203 N. LaSalle St. P'ship*, 246 B.R. 325, 331 (Bankr. N.D. Ill. 2000); *In re Premier Entm't Biloxi LLC*, 445 B.R. 582, 628 (Bankr. S.D. Miss. 2010); *In re Pease*, 195 B.R. 431, 433-34 (Bankr. D. Neb. 1996); *In re Madison*, 184 B.R. 686, 690-91 (Bankr. E.D. Pa. 1995).  Further, even if the Court were to enforce this language, lifting the stay would still be without effect.  Nowhere does EFIH specifically waive the benefits of the Bankruptcy Code's mandated automatic acceleration.

5.      Additional circumstances weigh in favor of maintaining the stay.  The Trustee's request to lift the stay to increase the value of its claim is an extraordinary request that no court has granted and at least three courts have denied.  *See In re AMR*, 730 F.3d 88, 111-12 (2d Cir. 2013); *In re MPM Silicones, LLC*, 2014 WL 4436335, at *23 (Bankr. S.D.N.Y. Sept. 9, 2014); *In re Solutia Inc.*, 379 B.R. 473, 484-85 n.7 (Bankr. S.D.N.Y. 2007).  Further, the Trustee has not met the standard for retroactively lifting the stay, *see In re Myers*, 491 F.3d 120, 129 (3d Cir. 2007), which applies here because the reservation of rights in the DIP Order addresses the different concern, not implicated here, that the fact of repayment might be construed as mooting their lift-stay claim.

6.      In concluding that the Noteholders were not due a makewhole premium in connection with the automatic acceleration of the Notes, the Court noted that "[u]nder New York law, an indenture must contain express language requiring payment of a prepayment premium upon acceleration; otherwise it is not owed."  *Id.*  ¶ 47.  The Court continued: "[t]he parties certainly could have bargained for such a provision.  In many other cases—including cases decided before August of 2010, when this Indenture was negotiated—clauses specifically requiring post-acceleration payment of a make-whole, prepayment premium, or certain costs were upheld. The Indenture here was negotiated at arm's length between sophisticated parties who were represented by counsel.  The Court is unwilling to 'read[] into agreements between sophisticated parties provisions that are not there.'"  *Id.* ¶ 48 (citations omitted).

7.      As a result, the Trustee's experts—who were offered to speak to these issues of contractual interpretation—should be excluded, and several of the topics the Trustee has designated witnesses on are now irrelevant.

VII.    **WITNESS LIST**

A.    **Plaintiff**

The witnesses that Plaintiff intends to call at trial are listed below in the tentative order in which they will be called.  Plaintiff reserves the right to supplement or modify this list, including the order in which witnesses will be called.

1.    Christopher Kearns.  As financial adviser to the Trustee, Mr. Kearns is a percipient witness to a material amount of information to be introduced, such as the Debtors' restructuring proposals and recovery waterfalls.  He is also an expert in two distinct areas.  First, it is expected that he will testify about aspects of harm to the Noteholders, on which he has already submitted an expert report.  Second, it is anticipated that Mr. Kearns will testify regarding the extent of EFIH's solvency and its consequences.  The Trustee asks that Mr. Kearns be permitted to testify without providing such a report based on the information currently publicly available, as contemplated by Bankruptcy Rule 9014, because the remaining factual lift-stay issue the Court has identified arises in a contested matter.

2.    John Greene and Ethan Auerbach.  It is expected that they will testify about the significance of the make whole and the right to rescind acceleration in deciding to purchase the Notes, and about the harm the Noteholders will suffer if they are denied relief from the stay and receive nothing on their makewhole claim.  They would also testify about their reliance on the separate credit of EFIH, the first lien position of the Notes, and EFIH's evident ability to pay its creditors in full in deciding to purchase the Notes.

3.    Anthony Horton.  He will be called as a hostile witness and questioned about a number of matters, including the substantial benefits that EFIH has already obtained by refinancing the Notes; the lack of any effect that granting relief from the stay would have on

EFIH's "operations" (it is an intermediate holding company without physical operations); the relatively small size of the makewhole at issue compared to EFIH's overall debt and assets; and the fact that, when it entered into the indenture for the Notes, EFIH understood and agreed that the Noteholders had the right to rescind acceleration and did not think (let alone disclose to the Noteholders) that this right might be subject to limitation in bankruptcy.

4.    Michiel McCarty and James Cacioppo.  These are two experts.  Their testimony will address the harm to the Noteholders if they are denied the right to rescind.  Among other things, the experts will explain the significance of the makewhole to the overall economics of the Notes and the loss the Noteholders have suffered by having to reinvest their capital in a much lower interest rate environment following repayment of the principal balance of the Notes.

5.    Kristopher Moldovan and possibly other representatives of EFIH.  They will be called as hostile witnesses and questioned about a number of matters, including the substantial benefits that EFIH has already obtained by refinancing the Notes; the lack of any effect that granting relief from the stay would have on EFIH's "operations" (it is an intermediate holding company without physical operations); the relatively small size of the makewhole at issue compared to EFIH's overall debt and assets; and the fact that, when it entered into the indenture for the Notes, EFIH understood and agreed that the Noteholders had the right to rescind acceleration and did not think (let alone disclose to the Noteholders) that this right might be subject to limitation in bankruptcy.

B.    **Defendants**

1.    The Defendants may call Paul Keglevic, Tony Horton, and/or Kris Moldovan. Messrs. Horton and Keglevic may testify to the hardship to the EFIH estate that would result from lifting the automatic stay to permit the Trustee to rescind acceleration of the Notes and to

any other issues in rebuttal to Plaintiff's case in chief.  Specifically, these witnesses may testify to the total amounts that EFIH would have to divert from other sources to satisfy the makewhole claims of not only the First Lien Noteholders, but also the Second Lien and PIK Noteholders, who will likely pursue efforts to lift the automatic stay to rescind acceleration of their notes were the Trustee to prevail at this trial..

VIII.    **EXHIBIT LIST**

The list of trial exhibits submitted by the Plaintiff is attached to this Order as <u>Exhibit A</u>. The Defendants reserve the right to use any exhibits proposed by the Trustee.   The parties will attempt to come to agreement regarding the admissibility of as many exhibits as possible prior to trial.

IX.    **DISCOVERY ITEMS AND DEPOSITIONS**

A.    **Plaintiff's Designations**

1.    <u>Deposition of Paul Keglevic, Vol. I (May 29, 2014)</u>
46:23-47:10
48:7-15

2.    <u>Deposition of David Ying (June 23, 2014)</u>
48:12-23

3.    <u>Deposition of Kristopher Moldovan (November 20, 2014)</u>

| | | |
|---|---|---|
| 11:21-12:11 | 32:20-22 | 46:6-47:14 |
| 13:9-15 | 34:3-35:7 | 50:5-51:22 |
| 13:20-14:18 | 35:18-36:4 | 52:4-53:20 |
| 15:6-16:10 | 36:19-37:14 | 53:23-54:5 |
| 19:19-23 | 38:7-21 | 54:11-20 |
| 20:15-24:5 | 39:18-21 | 55:2-23 |
| 24:18-25:25 | 40:8-14 | 57:6-13 |
| 26:4-18 | 40:18-41:13 | 58:3-59:3 |
| 26:20-27:4 | 42:12-17 | 59:24-60:7 |
| 27:7-29:3 | 43:16-23 | 60:11-15 |
| 29:18-30:14 | 44:23-45:4 | 61:4-15 |
| 31:6-17 | 45:13-16 | 61:21-62:3 |
| 31:24-32:13 | 45:19-21 | 62:20-63:25 |

| | | |
|---|---|---|
| 64:9-11 | 114:8-16 | 156:16-25 |
| 65:9-13 | 114:20-115:5 | 159:13-16 |
| 65:15-22 | 115:11-17 | 163:10-21 |
| 65:25-66:3 | 116:15-117:2 | 164:13-165:8 |
| 66:10-19 | 117:23-118:5 | 165:12-14 |
| 67:4-23 | 120:3-21 | 166:8-167:13 |
| 68:8-17 | 121:5-10 | 169:21-170:24 |
| 68:22-69:4 | 121:19-122:3 | 174:10-18 |
| 69:11-16 | 122:12-16 | 175:3-6 |
| 70:3-7 | 122:22-123:14 | 175:21-25 |
| 70:10-71:17 | 124:5-8 | 176:3-177:5 |
| 72:3-8 | 124:12-25 | 177:9-13 |
| 72:23-73:5 | 125:6-14 | 180:11-25 |
| 74:3-17 | 125:21-25 | 182:18-183:15 |
| 74:23-75:17 | 126:9-15 | 187:11-18 |
| 75:20-76:5 | 126:22-127:12 | 192:3-12 |
| 76:12-77:18 | 128:2-7 | 193:5-18 |
| 78:8-12 | 128:12-19 | 194:5-7 |
| 78:20-79:3 | 128:25-130:7 | 195:18-22 |
| 79:18-80:3 | 130:21-131:10 | 195:25-196:7 |
| 82:13-83:4 | 131:17-24 | 196:15-197:13 |
| 85:7-22 | 132:12-21 | 198:2-13 |
| 86:2-87:16 | 133:12-17 | 198:20-199:5 |
| 89:4-18 | 133:23-134:8 | 199:20-200:7 |
| 89:22-90:7 | 134:19-23 | 200:10-201:8 |
| 91:9-20 | 135:3-24 | 201:15-205:15 |
| 92:4-6 | 136:19-137:2 | 206:19-23 |
| 92:15-21 | 137:5-15 | 209:8-12 |
| 93:2-95:12 | 138:2-139:7 | 209:24-210:12 |
| 96:20-23 | 139:14-20 | 210:21-25 |
| 97:9-98:10 | 141:3-12 | 211:8-18 |
| 98:16-99:6 | 141:17-23 | 213:6-23 |
| 99:11-100:2 | 142:4-9 | 214:25-216:2 |
| 100:13-102:15 | 142:14-144:2 | 218:21-25 |
| 102:22-103:6 | 145:8-146:2 | 219:12-220:2 |
| 103:12-24 | 146:7-20 | 220:12-24 |
| 104:15-22 | 147:11-17 | 221:14-18 |
| 105:6-9 | 147:20-22 | 222:7-16 |
| 106:2-14 | 148:5-13 | 223:2-225:4 |
| 106:21-108:9 | 148:21-149:3 | 225:12-18 |
| 108:15-109:21 | 149:11-17 | 227:14-23 |
| 110:9-19 | 149:19-24 | 228:7-230:25 |
| 111:4-13 | 150:17-21 | 231:6-10 |
| 111:18-112:11 | 151:9-13 | 231:16-25 |
| 112:25-113:13 | 151:18-152:2 | 232:11-22 |
| 114:5-6 | 152:20-153:7 | 233:10-19 |

| | | |
|---|---|---|
| 234:5-11 | 272:20-273:8 | 284:7-12 |
| 238:21-25 | 273:13-274:6 | 284:18-285:25 |
| 265:19-24 | 274:9-21 | 286:6-12 |
| 266:16-18 | 275:6-21 | 287:20-288:6 |
| 267:4-7 | 276:4-14 | 288:8-14 |
| 267:14-268:7 | 276:20-277:13 | 289:8-18 |
| 268:12-14 | 277:22-278:7 | 291:15-24 |
| 268:20-25 | 279:11-280:14 | 292:16-294:13 |
| 269:6-24 | 281:7-19 | |
| 270:4-8 | 282:15-283:18 | |

4.      Deposition of Anthony Horton (December 9, 2014)

| | | |
|---|---|---|
| 7:21-8:2 | 57:19-58:10 | 107:24-108:4 |
| 9:18-10:25 | 58:17-59:17 | 109:3-110:7 |
| 11:7-21 | 60:2-61:11 | 113:14-25 |
| 12:9-22 | 61:20-22 | 114:4-115:13 |
| 15:8-11 | 62:1-63:2 | 115:23-118:10 |
| 15:17-24 | 63:23-65:12 | 118:21-119:3 |
| 19:24-20:10 | 67:24-68:5 | 120:15-18 |
| 21:2-22:12 | 68:10-69:7 | 120:24-121:8 |
| 22:17-24:13 | 70:18-73:1 | 122:9-23 |
| 26:5-10 | 73:13-19 | 123:5-124:20 |
| 26:22-28:9 | 73:24-75:3 | 125:4-13 |
| 28:14-29:4 | 78:3-8 | 126:16-127:5 |
| 29:9-16 | 78:15-79:19 | 128:1-11 |
| 31:6-11 | 79:25-80:7 | 129:12-21 |
| 31:15-32:8 | 80:12-16 | 130:2-7 |
| 33:5-20 | 81:11-16 | 130:11-17 |
| 34:21-24 | 82:6-83:6 | 130:21-24 |
| 35:5-36:4 | 84:14-85:13 | 131:5-16 |
| 36:11-37:25 | 85:19-22 | 131:24-132:17 |
| 38:2-9 | 88:14-89:10 | 132:25-133:8 |
| 38:21-39:5 | 90:10-22 | 133:23-135:23 |
| 39:18-41:13 | 91:15-20 | 136:19-137:13 |
| 42:14-43:3 | 92:6-15 | 139:6-13 |
| 44:6-24 | 93:2-22 | 143:12-144:19 |
| 45:7-14 | 96:12-22 | 145:16-146:24 |
| 46:18-22 | 97:21-99:2 | 147:16-22 |
| 46:25-48:4 | 99:24-100:11 | 148:13-20 |
| 48:25-49:25 | 100:21-101:7 | 151:5-10 |
| 50:16-51:1 | 102:1-9 | 151:23-152:12 |
| 51:14-52:3 | 102:15-24 | 152:19-23 |
| 52:16-53:8 | 103:5-17 | 156:4-14 |
| 54:4-14 | 105:5-22 | 157:21-158:9 |
| 55:1-6 | 106:8-21 | 160:3-17 |
| 56:14-57:5 | 107:4-13 | 162:6-11 |

| | | |
|---|---|---|
| 162:15-24 | 226:21-25 | 280:4-16 |
| 163:15-22 | 227:4-228:15 | 284:4-7 |
| 166:14-168:6 | 228:19-24 | 287:22-288:22 |
| 168:13-169:3 | 229:3-230:14 | 289:3-12 |
| 169:24-170:18 | 231:15-22 | 294:17-295:16 |
| 172:15-174:17 | 232:12-233:3 | 296:3-22 |
| 176:1-19 | 234:21-235:3 | 338:1-8 |
| 177:7-22 | 235:11-237:17 | 338:23-340:18 |
| 178:2-7 | 239:13-240:17 | 341:3-22 |
| 179:3-23 | 241:14-16 | 342:13-18 |
| 181:6-24 | 242:2-6 | 342:22-343:12 |
| 182:24-183:4 | 243:3-11 | 343:16-24 |
| 184:9-185:2 | 244:13-245:2 | 344:11-17 |
| 188:4-21 | 245:7-19 | 345:13-347:4 |
| 188:25-189:22 | 245:24-248:23 | 347:12-349:15 |
| 191:20-25 | 249:21-23 | 350:9-351:6 |
| 192:20-193:4 | 250:3-251:16 | 351:10-15 |
| 193:14-24 | 252:22-24 | 351:22-352:19 |
| 194:12-196:13 | 253:8-24 | 352:22-353:10 |
| 199:4-16 | 255:9-24 | 354:20-355:16 |
| 200:4-25 | 259:25-260:23 | 356:3-357:11 |
| 202:14-21 | 261:22-262:15 | 357:23-358:4 |
| 203:10-204:18 | 265:23-266:7 | 358:14-359:6 |
| 206:3-19 | 266:11-267:17 | 361:2-13 |
| 208:20-209:6 | 267:20-268:9 | 362:11-19 |
| 209:24-210:14 | 269:1-17 | 363:7-18 |
| 213:13-22 | 270:15-271:4 | 364:16-24 |
| 215:4-24 | 271:10-24 | 366:11-17 |
| 217:1-19 | 272:14-25 | 367:9-368:8 |
| 219:6-220:9 | 274:9-275:10 | 376:1-14 |
| 221:13-21 | 275:25-276:8 | 379:7-381:8 |
| 226:7-12 | 277:3-15 | 382:4-9 |

5.    Deposition of Paul Keglevic (December 10, 2014)

| | | |
|---|---|---|
| 9:14-11:23 | 42:10-44:2 | 71:8-9 |
| 16:15-18:14 | 44:19-45:6 | 75:12-78:24 |
| 19:13-20:11 | 47:24-48:5 | 87:1-20 |
| 21:16-22:16 | 49:4-50:9 | 88:20-25 |
| 32:9-33:5 | 51:8-52:6 | 89:16-90:25 |
| 33:22-34:18 | 53:15-21 | 92:5-93:8 |
| 35:25-36:12 | 54:19-57:1 | 93:13-94:2 |
| 36:18-21 | 60:8-61:12 | 94:20-95:6 |
| 38:8-22 | 63:7-16 | 98:24-100:2 |
| 39:10-40:17 | 64:22-65:10 | 100:12-18 |
| 41:7-12 | 65:13-19 | 101:1-102:1 |
| 41:14-42:4 | 68:5-8 | 108:3-11 |

| | | |
|---|---|---|
| 110:8-19 | 151:8-153:21 | 197:19-25 |
| 111:2-5 | 160:20-161:10 | 198:15-23 |
| 111:24-112:7 | 161:22-162:11 | 199:10-201:15 |
| 112:16-115:5 | 162:15-20 | 203:16-204:8 |
| 115:12-15 | 163:6-18 | 209:16-210:19 |
| 116:8-18 | 169:24-170:11 | 211:2-213:25 |
| 116:23-117:20 | 176:16-20 | 214:13-215:4 |
| 118:19-119:2 | 180:15-22 | 215:21-217:15 |
| 121:4-19 | 181:9-14 | 220:12-221:21 |
| 123:21-126:12 | 182:2-183:7 | 222:15-224:5 |
| 126:20-25 | 183:24-185:8 | 225:18-25 |
| 127:14-19 | 186:10-187:1 | 226:7-25 |
| 135:7-136:17 | 189:15-190:18 | 230:10-231:4 |
| 140:2-141:6 | 191:3-192:2 | 236:7-12 |
| 142:19-143:4 | 193:5-194:16 | 243:17-246:23 |
| 146:14-147:5 | 195:23-196:19 | 247:8-11 |
| 149:18-150:23 | 197:7-12 | 248:16-23 |

6.    <u>Declaration of Stephen Goldstein in Support of the Motion of Energy Future Intermediate Holding Company LLC and EFIH Finance, Inc., for Entry of for Entry of (I) an Interim Order (A) Approving Certain Fees Related to Postpetition Financing and Granting Such Fees Administrative Expense Priority and (B) Scheduling a Final Hearing; and (II) a Final Order (A) Approving Postpetition Financing, (B) Granting Liens and Providing Superpriority Administrative Expense Claims, (C) Authorizing the Use of Cash Collateral, (D) Authorizing the EFIH First Lien DIP Refinancing, (E) Authorizing Issuance of Roll-Up Debt to the Extent Authorized by the Settlement Motion, (F) Determining the Value of Secured Claims, and (G) Modifying the Automatic Stay (Case No. 14-10979, Dkt. 74 April 29, 2014)</u>

4, ¶ 8
5, ¶ 9

7.    <u>Declaration of Paul Keglevic, Executive Vice President, Chief Financial Officer, and Co-Chief Restructuring Officer of Energy Future Holdings Corp., et al., in Support of First Day Motions (Case No. 14-10979, Dkt. 98 April 29, 2014)</u>

78, ¶ 172

The designated portions of the transcripts listed above have been identified by Plaintiff alone and Plaintiff intends to submit them to the Court in hard copy. The Debtors reserve the right to object to the admissibility of these designations.

X.  **ESTIMATE OF LENGTH OF TRIAL**

The Trustee believes that the trial can be completed within the three-day period that the Court has allotted.  The Debtors believe that the trial can and should be completed in well under three days.

[SIGNATURE ON NEXT PAGE]

Dated:  April 16, 2015

*/s/  Norman L. Pernick*
_____
COLE SCHOTZ P.C.
Norman L. Pernick (Bar No. 2290)
J. Kate Stickles (Bar No. 2917)
500 Delaware Avenue, Suite 1410
Wilmington, DE  19801
Telephone: 302-652-3131
Facsimile:  302-652-3117
npernick@coleschotz.com
kstickles@coleschotz.com

Warren A. Usatine
Court Plaza North
25 Main Street
Hackensack, NJ 07602
Telephone: 201-489-3000
Facsimile:  201-489-1536
wusatine@coleschotz.com

WILMER CUTLER PICKERING HALE AND DORR LLP
Philip D. Anker
Charles C. Platt
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Telephone: 212-230-8800
Facsimile: 212-230-8888
Philip.Anker@wilmerhale.com
Charles.Platt@wilmerhale.com

Dennis L. Jenkins
George W. Shuster Jr.
60 State Street
Boston, MA 02109
Telephone: 617-526-6000
Facsimile: 617-526-5000
Dennis.Jenkins@wilmerhale.com
George.Shuster@wilmerhale.com

ROPES & GRAY LLP
Keith H. Wofford
Mark Somerstein
1211 Avenue of the Americas
New York, NY 10036-8704
Telephone: 212-596-9000
Facsimile:  212-596-9090
Keith.Wofford@ropesgray.com
Mark.Somerstein@ropesgray.com

D. Ross Martin
Andrew Devore
800 Boylston Street, Prudential Tower
Boston, MA  02199-3600
Telephone: 617-951-7000
Facsimile: 617-951-7050
Ross.Martin@ropesgray.com
Andrew.Devore@ropesgray.com

DRINKER BIDDLE & REATH LLP
James H. Millar
1177 Avenue of the Americas
41st Floor
New York, NY 10036-2714
Telephone:  212-248-3264
Facsimile:   212-248-3141
James.Millar@dbr.com

*Counsel for Plaintiff-Trustee Delaware Trust Company*

*/s/ Jason M. Madron*
RICHARDS, LAYTON & FINGER, P.A.
Mark D. Collins (No. 2981)
Daniel J. DeFranceschi (No. 2732)
Jason M. Madron (No. 4431)
920 North King Street
Wilmington, Delaware 19801
Telephone: (302) 651-7700
Facsimile: (302) 651-7701
Email: collins@rlf.com
defranceschi@rlf.com
madron@rlf.com

KIRKLAND & ELLIS LLP
KIRKLAND & ELLIS INTERNATIONAL LLP

Edward O. Sassower, P.C. (admitted *pro hac vice*)
Stephen E. Hessler (admitted *pro hac vice*)
Brian E. Schartz (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022-4611
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
Email: edward.sassower@kirkland.com
stephen.hessler@kirkland.com
brian.schartz@kirkland.com
-and-

James H.M. Sprayregen, P.C. (admitted *pro hac vice*)
Marc Kieselstein, P.C. (admitted *pro hac vice*)
Chad J. Husnick (admitted *pro hac vice*)
Steven N. Serajeddini (admitted *pro hac vice*)
300 North LaSalle
Chicago, Illinois 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200
Email: james.sprayregen@kirkland.com
marc.kieselstein@kirkland.com
chad.husnick@kirkland.com
steven.serajeddini@kirkland.com

*Co-Counsel to the Debtors and Debtors in Possession*