# EXHIBIT 2

# Dale Resources, LLC

February 21, 2007

**Amelia Maurillo**
**7405 Yolanda Dr**
**Fort Worth Tx  76112**

RE: Oil, Gas and Mineral Lease Proposal from Dale Resources, LLC

We have had an exceptional response to our letters and have signed more than 500 leases in the last two weeks in your area. As a result of the turnout at our previous meetings, we are extending our meeting times at the church for additional people to sign. Please accept this letter as an offer from Dale Resources, L.L.C. to acquire an oil, gas and mineral lease for property at **7405 Yolanda Dr** that you own in the **Fair Meadows Addition** shown as **Lot 8, Blk 4** being **0.201** acres of land.

Our offer is as follows:

1. Bonus consideration of **$1,500.00** per acre or **$300.00** per lot, whichever is greatest.
2. **22%** royalty
3. **No Surface** operations on your leased premises

We have leased a drill site on lands located on the corner of Meadowbrook Drive and Cooks Lane, where operations will take place. By acquiring the right to pool your land, we can extract natural gas from the Barnett Shale formation underneath your property without the need for a drill site location on or within close proximity to your property.

Our company specializes in urban development and is focusing our Barnett Shale activity in Tarrant County. We have leased over 19,000 acres and drilled 18 wells in Tarrant County. Our wells are among the top producing wells in Tarrant County, and as technology develops, we will continue to increase our production, affording property owners throughout Tarrant County an opportunity for added income from their mineral rights.

Come to the **EAST MEADOWS BAPTIST CHURCH** at 2000 Morrison Drive along with your spouse, if applicable (or any other persons listed on your deed) and this letter on any of the following days to sign your lease.

1. Tuesday, February 27 – 12pm to 8pm
2. Thursday, March 1 – 12pm to 8pm
3. Tuesday, March 6 – 12pm to 8pm
4. Thursday, March 8 – 12pm to 8pm

Feel free to contact us at Dale Resources, LLC **(817) 451-5353**.

**Stephen Abney**
stephena@dale-resources.com
Mobile: (512) 577-2531

**Chad Mackert**
chadm@dale-resources.com
Mobile: (817) 781-5110

DALE OPERATING COMPANY                                            Check No.    00126970

| DATE | REFERENCE OR DESCRIPTION | ACCT. NO. | INVOICE AMOUNT | DISCOUNT | NET AMOUNT |
|---|---|---|---|---|---|
| 02/28/07 | 022807 | | 301.50 | | 301.50 |
| | | | | TOTAL | 301.50 |

Case 14-10979-CSS    Doc 4206-2    Filed 04/17/15    Page 3 of 6

DALE OPERATING COMPANY                                            Check No.    00126970

| DATE | REFERENCE OR DESCRIPTION | ACCT. NO. | INVOICE AMOUNT | DISCOUNT | NET AMOUNT |
|---|---|---|---|---|---|
| 02/28/07 | 022807 | | 301.50 | | |

# OIL, GAS AND MINERAL LEASE
## (NO SURFACE USE)

THIS AGREEMENT made this 22nd day of FEB, 2007, between AMELIA MAURILLO, A SINGLE WOMAN, Lessor (whether one or more), whose address is 7405 Yolanda Dr, Fort Worth Tx 76112, and Dale Property Services, L.L.C., 2100 Ross Avenue, Suite 1870, LB-9, Dallas, TX 75201, Lessee, WITNESSETH:

1. Lessor in consideration of Ten and No/100----------Dollars ($10.00), in hand paid, of the royalties herein provided, and of the agreements of Lessee herein contained, hereby grants, leases and lets exclusively unto Lessee for the purpose of investigating, exploring, prospecting, drilling and mining for and producing oil, gas and all other minerals, conducting exploration, geologic and geophysical surveys by seismograph, core test, gravity and magnetic methods, injecting gas, water and other fluids, and air into subsurface strata, laying pipe lines, building roads, tanks, power stations, telephone lines and other structures thereon and on, over and across lands owned or claimed by Lessor adjacent and contiguous thereto, to produce, save, take care of, treat, transport and own said products, and housing its employees, the following described land in Tarrant County, Texas, to-wit:

0.201 acres of land, more or less, being Lot(s) 8, Block 4, Fair Meadows Addition, an Addition to the City of Fort Worth, Tarrant County, Texas, according to the Plat thereof recorded in Volume 388-76, Page 70, Plat Records, Tarrant County, Texas.

This lease also covers and includes all land owned or claimed by Lessor adjacent or contiguous to the land particularly described above, whether the same be in said survey or surveys or in adjacent surveys, although not included within the boundaries of the land particularly described above.

2. This is a paid up lease and subject to the other provisions herein contained, this lease shall be for a term of five (5) years from this date (called "primary term") and as long thereafter as oil, gas or other mineral is produced from said land or land with which said land is pooled hereunder.

3. As royalty, lessee covenants and agrees: (a) To deliver to the credit of lessor, in the pipelines to which lessee may connect its wells, the equal twenty-two percent (22%) part of all oil produced and saved by lessee from said land, or from time to time, at the option of lessee, to pay lessor the average posted market price of such twenty-two percent (22%) part of such oil at the wells as of the day it is run to the pipe line or storage tanks, lessor's interest, in either case, to bear twenty-two percent (22%) of the cost of treating oil to render it marketable pipeline oil; (b) to pay lessor for gas and casinghead gas produced from said land (1) when sold by lessee twenty-two percent (22%) of the amount realized by lessee, computed at the mouth of the well, or (2) when used by lessee off said land or in the manufacture of gasoline or other products twenty-two percent (22%) of the amount realized from the sale of gasoline or other products extracted therefrom and twenty-two percent (22%) of the amount realized from the sale of residue gas after deducting the amount used for plant fuel and/or compression; (c) To pay lessor on all other minerals mined and marketed or utilized by lessee from said land, one-tenth either in kind or value at the well or mine at lessee's election, except that on sulphur mined and marketed the royalty shall be one dollar ($1.00) per long ton. If, at the expiration of the primary term or at any time or times thereafter, there is any well on said land or on lands with which said land or any portion thereof has been pooled, capable of producing oil or gas, and all such wells are shut-in, this lease shall, nevertheless, continue in force as though operations were being conducted on said land for so long as said wells are shut-in, and thereafter this lease may be continued in force as if no shut-in had occurred. Lessee covenants and agrees to use reasonable diligence to produce, utilize, or market the minerals capable of being produced from said wells, but in the exercise of such diligence, lessee shall not be obligated to install or furnish facilities other than well facilities and ordinary lease facilities of flow lines, separator, and lease tank, and shall not be required to settle labor trouble or to market gas upon terms unacceptable to lessee. If, at any time or times after the expiration of the primary term, all such wells are shut-in for a period of ninety consecutive days, and during such time there are no operations on said land, then at or before the expiration of said ninety day period, lessee shall pay or tender, by check or draft of lessee, as royalty, a sum equal to one dollar ($1.00) for each acre of land then covered hereby. Lessee shall make like payments or tenders at or before the end of each anniversary of the expiration of said ninety day period if upon such anniversary this lease is being continued in force solely by reason of the provisions of this paragraph. Each such payment or tender shall be made to the parties who at the time of payment would be entitled to receive the royalties which would be paid under this lease if the wells were producing, and may be deposited in the _____ Bank at _____ or its successors, which shall continue as the depositories, regardless of changes in the ownership of shut-in royalty. If at any time that lessee pays or tenders shut-in royalty, two or more parties are, or claim to be, entitled to receive same, lessee may, in lieu of any other method of payment herein provided, pay or tender shut-in royalty, in the manner above specified, either jointly to such parties or separately to each in accordance with their respective ownerships thereof, as lessee may elect. Any payment hereunder may be made by check or draft of lessee deposited in the mail or delivered to the party entitled to receive payment or to a depository bank provided for above on or before the last date for payment. Nothing herein shall impair lessee's right to release as provided in paragraph 5 hereof. In the event of assignment of this lease in whole or in part, liability for payment hereunder shall rest exclusively on the then owners of this lease, severally as to acreage owned by each.

4. Lessee shall have the right but not the obligation to pool all or any part of the leased premises or interest therein with any other lands or interests, as to any or all depths or zones, and as to any or all substances covered by this lease, either before or after the commencement of production, whenever Lessee deems it necessary or proper to do so in order to prudently develop or operate the leased premises, whether or not similar pooling authority exists with respect to such other lands or interests. The unit formed by such pooling for an oil well which is not a horizontal completion shall not exceed 80 acres plus a maximum acreage tolerance of 10%, and for a gas well or a horizontal completion shall not exceed 640 acres plus a maximum acreage tolerance of 10%; provided that a larger unit may be formed for an oil well or gas well or horizontal completion to conform to any well spacing or density pattern that may be prescribed or permitted by any governmental authority having jurisdiction to do so. For the purpose of the foregoing, the terms 'oil well' and 'gas well' shall have the meanings prescribed by applicable law or the appropriate governmental authority, or, if no definition is so prescribed, 'oil well' means a well with an initial gas-oil ratio of less than 100,000 cubic feet per barrel and 'gas well' means a well with an initial gas-oil ratio of 100,000 cubic feet or more per barrel, based on a 24-hour production test conducted under normal producing conditions using standard lease separator facilities or equivalent testing equipment; and the term 'horizontal completion' means an oil or gas well in which the horizontal component of the gross completion interval in the reservoir exceeds the vertical component thereof. In exercising its pooling rights hereunder, Lessee shall file of record a written declaration describing the unit and stating the effective date of pooling. Production, drilling or reworking operations anywhere on a unit which includes all or any part of the leased premises shall be treated as if it were production, drilling or reworking operations on the leased premises, except that the production on which Lessor's royalty is calculated shall be that proportion of the total unit production which the net acreage covered by this lease and included in the unit bears to the total gross acreage in the unit, but only to the extent such proportion of unit production is sold by Lessee. Pooling in one or more instances shall not exhaust Lessees pooling rights hereunder. Any unit so formed may be amended, increased in size, decreased in size, or changed in configuration, at the election of Lessee, at any time and from time to time, and Lessee may vacate and dissolve any unit by instrument in writing filed for record in said county at any time when there is no unitized substance being produced from such unit. To the extent any portion of the leased premises is included in or excluded from the unit by virtue of such revision, the proportion of unit production on which royalties are payable hereunder shall thereafter be adjusted accordingly. In the absence of production in paying quantities from a unit, or upon permanent cessation thereof, Lessee may terminate the unit by filing of record a written declaration describing the unit and stating the date of termination. Pooling hereunder shall not constitute a cross-conveyance of interests.

5. If at the expiration of the primary term, oil, gas, or other mineral is not being produced on said land, or from the land pooled therewith, but Lessee is then engaged in drilling or reworking operations thereon, or shall have completed a dry hole thereon within 60 days prior to the end of the primary term, the lease shall remain in force so long as operations on said well or for drilling or reworking of any additional well are prosecuted with no cessation of more than 60 consecutive days, and if they result in the production of oil, gas or other mineral, so long thereafter as oil, gas, or other mineral is produced from said land, or from land pooled therewith. If, after the expiration of the primary term of this lease and after oil, gas, or other mineral is produced from said land, or from land pooled therewith, the production thereof should cease from any cause, this lease shall not terminate if Lessee commences operations for drilling or reworking within 60 days after the cessation of such production, but shall remain in force and effect so long as such operations are prosecuted

Revised on 9/26/2006

in on adjacent land and within 330 feet of and draining the leased premises or land pooled therewith, Lessee agrees to drill such offset well or wells as a reasonably prudent operator would drill under the same or similar circumstances. Lessee may at any time execute and deliver to Lessor or place of record a release or releases covering any portion or portions of the above described premises and thereby surrender this lease as to such portion or portions and be relieved of all obligations as to the acreage surrendered.

6. Lessee shall have the right at any time during or after the expiration of this lease to remove all property and fixtures placed by Lessee on said land, including the right to draw and remove all casing. When required by Lessor, Lessee will bury all pipe lines below ordinary plow depth, and no well shall be drilled within two hundred (200) feet of any residence or barn now on said land without Lessor's consent.

7. The rights of either party hereunder may be assigned in whole or in part, and the provisions hereof shall extend to their heirs, successors and assigns; but no change or division in ownership of the land, or royalties, however accomplished, shall operate to enlarge the obligations or diminish the rights of Lessee; and no change or division in such ownership shall be binding on Lessee until thirty (30) days after Lessee shall have been furnished by registered U.S. mail at Lessee's principal place of business with a certified copy of recorded instrument or instruments evidencing same. In the event of assignment hereof in whole or in part, liability for breach of any obligation hereunder shall rest exclusively upon the owner of this lease or of a portion thereof who commits such breach. If six or more parties become entitled to royalty hereunder, Lessee may withhold payment thereof unless and until furnished with a recordable instrument executed by all such parties designating an agent to receive payment for all.

8. The breach by Lessee of any obligation arising hereunder shall not work a forfeiture or termination of this lease nor cause a termination or reversion of the estate created hereby nor be grounds for cancellation hereof in whole or in part. No obligation reasonably to develop the leased premises shall arise during the primary term. Should oil, gas or other mineral in paying quantities be discovered on said premises, then after the expiration of the primary term, Lessee shall develop the acreage retained hereunder as a reasonably prudent operator, but in discharging this obligation it shall in no event be required to drill more than one well per forty (40) acres of the area retained hereunder and capable of producing oil in paying quantities and one well per 640 acres plus an acreage tolerance not to exceed 10% of 640 acres of the area retained hereunder and capable of producing gas or other mineral in paying quantities. If after the expiration of the primary term, Lessor considers that operations are not at any time being conducted in compliance with this lease, Lessor shall notify Lessee in writing of the facts relied upon as constituting a breach hereof, and Lessee, if in default, shall have sixty days after receipt of such notice in which to commence the compliance with the obligations imposed by virtue of this instrument.

9. Lessor hereby warrants and agrees to defend the title to said land and agrees that Lessee at its option may discharge any tax, mortgage or other lien upon said land, either in whole or in part, and in event Lessee does so, it shall be subrogated to such lien with right to enforce same and apply royalties accruing hereunder toward satisfying same. Without impairment of Lessee's rights under the warranty in event of failure of title, it is agreed that if this lease covers a less interest in the oil, gas, sulphur, or other minerals in all or any part of said land than the entire and undivided fee simple estate (whether Lessor's interest is herein specified or not), or no interest therein, then the royalties, and other monies accruing from any part as to which this lease covers less than such full interest, shall be paid only in the proportion which the interest therein, if any, covered by this lease, bears to the whole and undivided fee simple estate therein. All royalty interest covered by this lease (whether or not owned by Lessor) shall be paid out of the royalty herein provided. Should any one or more of the parties named above as Lessors fail to execute this lease, it shall nevertheless be binding upon the party or parties executing the same.

10. Should Lessee be prevented from complying with any express or implied covenant of this lease, from conducting drilling or reworking operations thereon or from producing any oil, gas or other minerals therefrom by reason of scarcity of or inability to obtain or to use equipment or material, or by operation of force majeure, and Federal or state law or any order, rule or regulation of governmental authority, then while so prevented, Lessee's obligation to comply with such covenant shall be suspended, and Lessee shall not be liable in damages for failure to comply therewith; and this lease shall be extended while and so long as Lessee is prevented by any such cause from conducting drilling or reworking operations on or from producing oil or gas from the lease premises; and the time while Lessee is so prevented shall not be counted against Lessee, anything in this lease to the contrary notwithstanding.

11. For the same consideration recited above, Lessor hereby grants, assigns and conveys unto Lessee, its successors and assigns, a perpetual subsurface easement under and through the leased premises for the placement of well bores (along routes selected by Lessee) from oil or gas wells the surface locations of which are situated on other tracts of land and which are not intended to develop the leased premises or lands pooled therewith and from which Lessor shall have no right to royalty or other benefit. Such subsurface easements shall run with the land and survive any termination of this lease.

12. Notwithstanding anything contained herein to the contrary, Lessee does not by virtue of this lease acquire any rights whatsoever to conduct any operations on the surface of the lease premises without first obtaining the prior written consent of Lessor, however, Lessee may recover oil, gas and associated hydrocarbons from the lease premises by directional or horizontal drilling, pooling, unitization or any other method provided in this lease.

IN WITNESS WHEREOF, this instrument is executed on the date first above written.

_____
Amelia Mourillo

_____

**ACKNOWLEDGMENTS**

STATE OF TEXAS

COUNTY OF TARRANT

This instrument was acknowledged before me on the 21st day of FEB, 2007,

by Amelia Mourillo.

_____
Notary Public, State of Texas
Notary's name (printed):
Notary's commission expires:

STATE OF TEXAS

COUNTY OF TARRANT

This instrument was acknowledged before me on the ___ day of _____,