## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>ENERGY FUTURE HOLDINGS CORP., *et al.,*[1]<br>Debtors. | )  Chapter 11<br>)<br>)  Case No. 14-10979 (CSS)<br>)<br>)  (Jointly Administered)<br>)<br>)  **Ref No. 4138**<br>) |

## OBJECTION OF ALCOA INC. TO MOTION OF ENERGY FUTURE HOLDINGS CORP., *ET AL.*, FOR ENTRY OF AN ORDER SCHEDULING CERTAIN HEARING DATES AND DEADLINES AND ESTABLISHING CERTAIN PROTOCOLS IN CONNECTION WITH THE CONFIRMATION OF DEBTORS' PLAN OF REORGANIZATION AND THE APPROVAL OF DEBTORS' DISCLOSURE STATEMENT

Alcoa Inc. ("Alcoa"), by and through its undersigned counsel, hereby objects (the "Objection") to the motion (the "Motion") of the above-captioned debtors and debtors-in-possession (collectively, the "Debtors") for entry of an order scheduling certain dates and deadlines and establishing certain protocols (the "Protocols") in connection with the confirmation of the Debtors' plan of reorganization (the "Plan") and approval of the Debtors' related disclosure statement (the "Disclosure Statement"). In support of its Objection, Alcoa respectfully represents as follows:

## PRELIMINARY STATEMENT

1.     This Court should not approve the Protocols in their current form. The Protocols contain many infirmities that are either contrary to the Bankruptcy Rules and /or are unwarranted here. Specifically, the Protocols do not give Alcoa its fundamental due process rights and ignore

---

[1] The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, which are being jointly administered on an interim basis, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

general issues of fairness with respect to its significant relationship with certain of the Debtors—evidenced by the complex, interrelated agreements between Alcoa and one or more of Debtors Luminant Generation, LLC ("Luminant Generation"), Luminant Mining, LLC ("Luminant Mining"), and Sandow Power Company, LLC ("Sandow Power," and together with Luminant Mining and Luminant Generation, collectively, with their predecessors, the "Luminant Entities").

2.      Alcoa and the Luminant Entities own industrial and power facilities located on Alcoa's industrial properties located at Rockdale, Texas (the "Rockdale Facility"). While Alcoa owns and operates its smelting plant at the Rockdale Facility and the Luminant Entities own and operate two power plants at the Rockdale Facility (known as "Unit 4" and "Unit 5"), the operation of these collective facilities is functionally intertwined and interdependent. For example, both Alcoa and the Luminant Entities have interests in the lignite coal mine known as the "Three Oaks Mine," which supplies lignite coal used to fuel the power plants. The Rockdale Facility power plants generate over 1200 gross megawatts of wholesale power for the Luminant Entities, based upon Alcoa's and Luminant's lignite coal, and is likely critical to the Luminant Entities ongoing operations. The relationship among Alcoa and the Luminant Entities is governed by a multitude of complex contracts and leases governing the divided ownership, operations, and other aspects of the relationship among the parties (the "Alcoa/Luminant Agreements"). The Alcoa/Luminant Agreements themselves may be integrated and incapable of being independently assumed or rejected. But the Disclosure Statement and Plan are bereft of any discussion about the Debtors' intentions with respect to the Rockdale Facility (i.e., the Luminant Entities' power plants or the Three Oaks Mine) and, more importantly, the Alcoa/Luminant Agreements.

3.      If the Debtors reject or terminate any of the Alcoa/Luminant Agreements, the feasibility of the Plan—at least with respect to the Luminant Entities—will be called into question, as these Alcoa/Luminant Agreements (and the Rockdale Facility itself) are a major component of their operations and are likely necessary for a successful reorganization of the Luminant Entities.    If the Debtors should attempt any last-minute modifications to the Alcoa/Luminant Agreements—or to cherry pick those Alcoa/Luminant Agreements it intends to assume or reject—Alcoa would likely litigate the matter.    Likewise, Alcoa continues to investigate the Alcoa/Luminant Agreements and reserves all of its rights with respect to asserting default and breach claims under these agreements.    Any such litigation would be intensive and time consuming and should not be caught up with confirmation objections between various Debtors and the official and *ad hoc* committees in these cases, which objections to confirmation have nothing to do with the relationship between Alcoa and the Luminant Entities.

4.      Through this Objection Alcoa seeks a modification to the Protocols requiring the Debtors to disclose immediately their intentions with respect to the Alcoa/Luminant Agreements. To the extent that the Debtors seek to modify in any way or assign Alcoa/Luminant Agreements, Alcoa requests that this Court set a special hearing (independent of the confirmation hearing) to determine whether any proposed rejection, assumption, modification and/or assignment is permitted under Bankruptcy Code §§ 363 and/or 365 and to resolve any other disputes (such as potential cure claims) among the parties (the "Special Hearing").

5.      In addition, on April 24, 2015, the Debtors filed a revised proposed order (the "Revised Proposed Order") on the Motion.  Among other things, the Revised Proposed Order sets forth the terms of a Plan mediation process whereby the Debtors, the indenture trustees, and

the various committees (official and otherwise) will mediate their issues with respect to the Plan. Given Alcoa's material power generation project with the Luminant Entities, Alcoa must have the ability to opt in to the Plan mediation process with respect to its interests. Alcoa should not be shut out of the Plan mediation process and should be permitted to participate in order to resolve any potential disputes involving the assumption or rejection of the Alcoa/Luminant Agreements and the future of the Rockdale Facility and its impact on the Debtors' reorganization.

6.      While Alcoa has contacted the Debtors to obtain their consent to the relief requested herein, it has received no response. Alcoa therefore files this Objection to request that this Court modify the Protocols as set forth in this Objection.

## **BACKGROUND**

7.      In 1951, Alcoa began its decades-long relationship with the Luminant Entities to develop, fuel, maintain, and operate coal-fired power plants located at the Rockdale Facility. Over the years, the parties entered into of dozens of agreements, amendments and supplements regarding the operation of power generation units at the Rockdale Facility. Generally, pursuant to the Alcoa/Luminant Agreements, Luminant Mining has been contracted by both Alcoa and Sandow Power (Unit 5) to mine and deliver lignite coal to Unit 4 (on behalf of Alcoa) and Unit 5 (on behalf of Sandow Power).

8.      The parties originally entered into two contracts in 1951, under which certain of the Luminant Entities operated three of Alcoa's power plants until late 1980. In 1976, the parties entered into an agreement related to the operation of Unit 4 (the "Unit 4 Agreement"), pursuant to which certain of the Luminant Entities agreed to build, own and operate the Unit 4 power

plant, and Alcoa agreed to purchase from Luminant, on a cost-plus basis, a set amount of "firm" power (from any source) and supply certain of the Luminant Entities with an amount of lignite coal sufficient to operate Unit 4. Alcoa owns and supplies one hundred percent of the lignite fuel required for full operation of Unit 4 and pays Luminant a fee to convert its lignite coal into electricity. In return, Alcoa receives eighty-two point six percent (82.6%) of the net power generation and Luminant receives seventeen point four percent (17.4%) of the net power generation and credits to Alcoa the cost of their lignite fuel component against the Alcoa fee amount.

9.    In 2006, the parties entered into an agreement related to the operation of Unit 5 (the "Unit 5 Agreement"), pursuant to which Sandow's predecessor agreed to build, own, and operate the Unit 5 power plant, and Alcoa agreed to purchase from Sandow's predecessor, on a cost-plus basis, a set amount of "firm" power and supply lignite coal sufficient to operate Unit 5. Under the Unit 5 Agreement, Alcoa also granted Sandow's predecessor certain easements and agreed to lease to Sandow's predecessor real property (and convey permits and other assets) for use in the development, construction, and operation of Unit 5.

10.    In addition to the Unit 4 and Unit 5 Agreements, there are myriad other agreements the parties have entered into over the years (not counting amendments and side letters). By way of example, some of the other Alcoa/Luminant Agreements consist of agreements related to, *inter alia*, mining, lignite royalty payments, leases, power generation, asset purchase, and common facilities arrangements, which include (without limitation):

- Contract Mining Agreement, dated August 31, 2007, among Alcoa, Sandow Power and Luminant Mining.

- Ground Lease, dated August 31, 2007, between Alcoa and Luminant Mining.

- Amended and Restated Common Facilities Agreement, dated August 10, 2012, between Alcoa, Luminant Generation, and Sandow Power.

- Sandow Building 200 Lease, dated January 31, 2009, between Alcoa and Sandow Power.

- Agreement Regarding Ownership of Lignite Interest, dated August 15, 2007, between Alcoa and Sandow Power.

- Lignite Mining Lease, dated August 31, 2007.

- Premises Lease by and among Alcoa Luminant Generation Sandow Power Company dated as of June 30. 2009.

- Purchase and Sale Agreement by and between Alcoa and TXU Mining Company LP dated as of August 15, 2007 (re: Three Oaks Mine).

- Common Facilities Agreement by and between Alcoa Inc. and Luminant Generation Company LLC effective as of June 30. 2009.

- Amended and Restated Sandow Unit Five Agreement by and among TXU Sandow, TXU Generation Company LP dated August 31, 2007.

- Power Purchase Agreement by and between TXU Generation and Alcoa effective as of August 28, 2007.

- Power Contract by and between Alcoa and Texas Power and Light Company dated August 29, 1951.

- Operating Contract by and between Alcoa and Texas Power and Light Company dated August 29. 1951.

- Agreement for Maintenance by and between Alcoa and Texas Utilities Electric Company effective as of August 13, 1990.

- Various Indemnity Agreements.

    11.    Furthermore, pursuant to this Court's  November 13, 2014 *Order Approving the Assumption of Certain Unexpired Leases By and Among Luminant Generation Company LLC, Luminant Mining Company LLC, Sandow Power Company LLC, and Alcoa Inc.* [ECF No. 2759], the Debtors assumed certain of the Alcoa/Luminant Agreements, which the Debtors believe are leases for non-residential real property:

- Premises Lease dated June 30, 2009, between Alcoa, Luminant Generation, and Sandow Power.

- Premises Lease dated August 28, 2007, between Alcoa and Sandow Power.

- Sandow Building 200 Lease, dated January 31, 2009, between Alcoa and Sandow Power. Under the Building 200 Lease.

- Lignite Mining Lease dated August 31, 2007, between Alcoa and Sandow Power.

- Sublease Agreement dated August 31, 2007, between Alcoa and Luminant Mining.

- Assignment of Lignite Mining Lease and Assignment Agreement dated August 31, 2007, between Alcoa and Sandow Power.

- Assignment of Coal and Lignite Leases dated August 31, 2007, between Alcoa and Sandow Power.

- Coal Lease dated April 14, 2005, between Alcoa and Sandow Power.

- Premises Lease dated August 31, 2007, between Alcoa and Luminant Mining.

- Ground Lease dated August 31, 2007, between Alcoa and Luminant Mining.

- Ground Lease dated August 31, 2007, between Alcoa and Luminant Mining.

12.    These are just a sample of the number of agreements the parties have entered into over the years.  Indeed, it took months of negotiation for Alcoa to reach an agreement with the Debtors on the parties' setoff rights alone, which are the subject of a stipulation totaling over fifteen pages that this Court approved on September 12, 2014.[2]  These are not typical "one-off" executory contracts to which—at best—the Protocols may apply.

---

[2] *Order Approving The Stipulation By And Among Luminant Generation Company LLC, Luminant Mining Company LLC, Sandow Power Company LLC, And Alcoa Inc.* [ECF No. 2002].

## OBJECTION

A.    The Fourteen-Day Objection Deadline to Assumption or Rejection Should Be Extended

13.    The Rockdale Facility is likely critical to the Luminant Entities' ongoing operations and reorganization.  But the Debtors will not disclose their intentions with respect to the Alcoa/Luminant Agreements until October 7, 2015.  The Protocols propose that the objection deadline for the Plan be October 21, the same day the Disclosure Statement proposes to set the Plan voting deadline.[3]    Yet the Debtors will not file their plan supplement (the "Plan Supplement"), which will set forth those contracts they propose to assume and those they propose to reject, until fourteen days prior to the Plan voting/Plan objection deadline on October 7.[4]  The Debtors' proposed fourteen-day timeframe for filing an objection to the assumption or rejection of the Alcoa/Luminant Agreements (prior to the proposed October 21 Plan voting/Plan objection deadline) is insufficient and must be extended.

14.    For example, if the Debtors were to propose to assume or reject one or more of the Alcoa/Luminant Agreements, Alcoa must determine the effect such assumption or rejection would have on the entire universe of these complex and interrelated agreements.  Given the sheer volume of the Alcoa/Luminant Agreements and their complexity (they run into the thousands of pages in total), fourteen days is simply not enough time for Alcoa to determine how a particular assumption or rejection of one of the Alcoa/Luminant Agreements would affect all the others in order for it to determine whether and to what extent to oppose any such assumption or rejection.

---

[3] Motion at p. 7; Disclosure Statement at p. 97.

[4] Disclosure Statement at p. 20.

15.    Furthermore, fourteen days is clearly not enough time for Alcoa to evaluate the bona fides of any potential assignees,[5] or in the case of rejection, the potential ramifications and legal options Alcoa would have related to rejection, including with respect to abandoned personal property.

16.    Accordingly, Alcoa requests that this Court require the Debtors, upon the approval of the Disclosure Statement, to set forth whether they intend to assume, assume and assign, reject, and/or modify the Alcoa/Luminant Agreements.  Alcoa also requests that this Court set a date for the Special Hearing independent of the confirmation hearing to hear any objection with respect to the Debtors' proposed treatment of contracts the Debtors seek to modify and/or assume and assign.

B.    Proposed Cure Amounts Should Be Set Forth in the Disclosure Statement

17.    The Disclosure Statement also sets forth that cure amounts will not have to be filed until fourteen days prior to the Proposed November 18 *confirmation hearing* (not the October 21 Plan voting/Plan objection deadline), with seven days for Alcoa to object to such proposed cure amounts.[6]  Seven days is clearly not enough time for Alcoa to evaluate the Debtors' proposed cure amount in the event any of the Alcoa/Luminant Agreements are proposed to be assumed and/or assigned.

18.    Further, Alcoa would be required under the Protocols (as currently proposed) to file its objection to the Plan and the Plan Supplement two weeks prior to being informed of the

---

[5] Alcoa believes that the Luminant Entities may be in breach of the Unit 4 Agreement and other of the Alcoa/Luminant Agreements, and it would take Alcoa substantial time (certainly over fourteen days) to assess any proposed cure amounts (the Unit 4 Agreement alone spans nearly 800 pages).

[6] Disclosure Statement at p. 97.

Debtors' proposed cure amounts for those Alcoa/Luminant Agreements the Debtors intend to assume. The Debtors' proposal to provide the proposed cure amounts almost a month after the filing of the Plan Supplement, two weeks after Alcoa files its objection to the Plan, and two weeks before the confirmation hearing makes little sense. First, contracting parties will have no idea whether there is a dispute at the Objection Deadline if cure amounts are not included. Accordingly, the contracting parties will have no idea of the relief that the Debtors are seeking. Second, the contracting parties will have no time to prepare for their objection and meaningfully participate at confirmation hearing, which begins seven days later, if they are to receive such critical information two weeks in advance. By requiring the Debtors to provide proposed cure amounts at the time the Disclosure Statement is approved, the Debtors will avoid the chaos and unnecessary litigation the current Protocols will engender.

19.    Accordingly, Alcoa requests that this Court amend the Protocols to require that proposed cure amounts be set forth in the Disclosure Statement and that any dispute concerning the Debtors' proposed cure amounts be heard at the Special Hearing.

C.    The Proposed Discovery and Participation Deadlines Should Be Modified

20.    The Protocols provision for the commencement of Discovery and participation in such litigation commencing on May 11, 2015, makes no sense and should not be approved with respect to Alcoa. First, insofar as Alcoa is concerned, it will have no idea whether it has a case or controversy at this time because the Plan Supplement and proposed cure amounts will be *months* away from being filed.

21.     Second, Alcoa (and possibly parties to other executory contracts/unexpired leases) will have discrete issues having nothing to do with the discovery requested by the official and *ad hoc* committees in these cases—not to mention the significant issues those constituencies will likely have related to Plan confirmation (such as valuation, cramdown, Plan settlements, make-whole premiums, and the Oncor sale and distribution of proceeds).  Alcoa should not be required to participate in the considerable amount of discord between the Debtors and/or the various creditors' committees (official or otherwise) and their constituents with respect to issues that do not affect Alcoa.  But Alcoa—a counterparty to contracts and a significant power generation project that are likely critical to the Debtors' reorganization—must have the right to opt in to the Plan mediation process to resolve any dispute with the Debtors.  Indeed, it is precisely during this period when formative issues regarding the Luminant Entities' reorganization will be discussed that Alcoa should have an opportunity to resolve any dispute concerning the assumption or rejection of the Alcoa/Luminant Agreements underlying the Rockdale power generation facility.

22.     Accordingly, the Protocols should be modified to allow Alcoa to participate and serve discovery at such time as its disputes with the Debtors become known—that is, when a Disclosure Statement, which includes the information requested herein with respect to the Alcoa/Luminant Agreements, is approved.  The Revised Proposed Order should also be revised to the extent necessary to ensure that Alcoa is able to opt in to the Plan mediation process.

## RESERVATION OF RIGHTS

23.      Alcoa is still reviewing the Protocols and the Revised Proposed Order, and Alcoa specifically reserves its right to amend or supplement this Objection in any way and at any time, including, without limitation, to amend or further revise the relief sought herein.

**WHEREFORE**, Alcoa respectfully requests that the Court (i) sustain the Objection, (ii) modify the Protocols and the Revised Proposed Order as requested herein, and (iii) grant Alcoa such other and further relief as this Court may deem just and proper under the circumstances.

Dated: April 27, 2015
        Wilmington, Delaware

                                        **LANDIS RATH & COBB LLP**

                                        _____
                                        Adam G. Landis (No. 3407)
                                        Matthew B. McGuire (No. 4366)
                                        919 Market Street, Suite 1800
                                        Wilmington, DE  19899
                                        Telephone: (302) 467-4400
                                        Facsimile:  (302) 467-4450

                                        -and-

                                        **MCKOOL SMITH, P.C.**
                                        Peter S. Goodman (*Admitted Pro Hac Vice*)
                                        Michael R. Carney (*Admitted Pro Hac Vice*)
                                        One Bryant Park, 47th Floor
                                        New York, NY 10036
                                        Telephone:  (212) 402-9400
                                        Facsimile:  (212) 402-9444

                                        *Counsel for Alcoa Inc.*