**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>ENERGY FUTURE HOLDINGS CORP., *et al.*,[1]<br><br>　　　　　　　　　　Debtors. | ) Chapter 11<br>)<br>) Case No. 14-10979 (CSS)<br>)<br>) (Jointly Administered)<br>)<br>) Re: D.I. 4138, 4274<br>) |

**LIMITED OBJECTION OF THE EFH OFFICIAL COMMITTEE REGARDING MOTION OF ENERGY FUTURE HOLDINGS CORP.,** ***ET AL.****,* **FOR ENTRY OF AN ORDER SCHEDULING CERTAIN HEARING DATES AND DEADLINES AND ESTABLISHING CERTAIN PROTOCOLS IN CONNECTION WITH THE CONFIRMATION OF DEBTORS' PLAN OF REORGANIZATION AND THE APPROVAL OF DEBTORS' DISCLOSURE STATEMENT**

The official committee (the "**EFH Committee**") of unsecured creditors of Energy Future Holdings Corporation ("**EFH**"), Energy Future Intermediate Holding Company LLC ("**EFIH**"), EFIH Finance Inc., and EECI, Inc. (together with EFH, EFIH and EFIH Finance Inc., the "**E-Silo Debtors**") hereby submits this limited objection to the *Motion of Energy Future Holdings Corp., et al., for Entry of an Order* (the "**Scheduling Order**") *Scheduling Certain Hearing Dates and Deadlines and Establishing Certain Protocols in Connection with the Confirmation of Debtors' Plan of Reorganization and the Approval of Debtors' Disclosure Statement* [D.I. 4138] (the "**Scheduling Motion**")[2] and respectfully states as follows:

---

[1]　The last four digits of Energy Future Holdings Corp.'s taxpayer identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, for which joint administration has been granted, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

[2]　Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Scheduling Motion and/or the Scheduling Order.

**Limited Objection**

1.  The Debtors' currently-proposed Plan[3] is not confirmable and the accompanying Scheduling Order should not be confused with progress in these bankruptcy cases. The Plan is flawed in its fundamental premises, including that (i) value must be moved from the E-Silo Debtors to the T-Silo Debtors[4] in order to have an organized case and obtain releases for officers, directors and equity sponsors, (ii) an intercompany claims settlement can be used to launder that payment, (iii) the T-Silo Debtors have net claims against the E-Silo Debtors, rather than the opposite, and (iv) there is some insoluble tax issue for the Debtors that requires EFH to pay for a tax-free reorganization. Each of these premises is wrong, and the resulting Plan is misleading and harmful—even as a placeholder no creditor supports.

2.  The EFH Committee does not object to the establishment of a schedule and discovery protocols in connection with the Plan (such as it is) or to the dates set forth in the current version of the Scheduling Order [D.I. 4274]. It is critical that discovery proceed immediately so that the Plan can be corrected or set aside as quickly as possible in favor of something viable. The monthly spend in these cases—of professional fees, adequate assurance payments and interest accrual—is staggering. Each additional month the E-Silo Debtors remain in chapter 11 significantly harms the E-Silo creditors, a fact well known to the T-Silo Debtors and their creditors.

---

[3] *Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code* [D.I. 4142] (the "**Plan**"). *Disclosure Statement for the Joint Plan of Reorganization of Energy Future Holdings Corp.,* et al.*, Pursuant to Chapter 11 of the Bankruptcy Code* [D.I. 4143] (the "**Disclosure Statement**").

[4] The "**T-Silo Debtors**" refer to Energy Future Competitive Holdings Company, Texas Competitive Electric Holdings Company LLC ("**TCEH**") and their direct and indirect debtor subsidiaries.

3.     However, the EFH Committee objects to the entry of the Scheduling Order unless the following five modifications are made, as set forth in more detail below:

- First, any settlement of intercompany claims must be binding on the applicable Debtors before the Court considers approving the Disclosure Statement;

- Second, the Debtors must formally submit a detailed and comprehensive list of intercompany claims subject to settlement;

- Third, discovery into existing valuation materials concerning the assets of the T-Silo Debtors must occur in connection with the approval of the Disclosure Statement, not later;

- Fourth, any broad "Plan" mediation must involve the EFH Committee as well as the TCEH Committee; and

- Fifth, the Scheduling Order must clarify that the EFH Committee and the TCEH Committee may pursue separate discovery.

A.     **There Must Be a Binding Intercompany Claims Settlement By a Date Certain**

4.     A necessary component of the Plan is a "global settlement" of intercompany claims (the "**Intercompany Claims Settlement**") that allows a massive claim against EFH in favor of TCEH, with discriminatory anti-dilution provisions that create effective priority over other EFH creditors. This pay-off from EFH is then divided up among the T-Silo Debtors without any involvement by the E-Silo Debtors. The Intercompany Claims Settlement, as proposed, is the cornerstone of this Plan.

5.     But the Intercompany Claims Settlement is illusory. No party to it had sufficient comfort to be bound. Each Debtor can terminate the Intercompany Claims Settlement in its discretion at any time.[5] This renders the Intercompany Claims Settlement misleading and

---

[5] Specifically, a party may terminate if it "any of them determines, based on the advice of counsel, that termination of the Settlement *would be consistent with* the exercise of their fiduciary duties." *Joint Statement of Summary of Intercompany Claims* [D.I. 4147-2], at 3, emphasis added.

the Plan based on it a waste of these estates' dwindling time and resources. Creditors of the E-Silo Debtors should not bear the substantial cost of solicitation and the plan confirmation process if the Intercompany Claims Settlement has not even been agreed by the applicable Debtors. The Court should therefore include in the Scheduling Order a date prior to a hearing to consider the Disclosure Statement by which the parties to the Intercompany Claims Settlement are required to file a binding, irrevocable Intercompany Claims Settlement, contingent upon confirmation of the Plan. The EFH Committee submits that such filing should occur at least 30 days prior to the deadline for parties to file any objections to the Disclosure Statement.

6.      Requiring a binding settlement prior to the Disclosure Statement hearing is procedurally important because the current Intercompany Claims Settlement is unsupportable from the standpoint of EFH and the product of a fatally flawed process. A binding settlement will require normal corporate decision-making under fiduciary duty standards. The known facts are alarming. First, the now-abandoned RSA transaction touted by the Debtors for seven months provided for *zero* value to the T-Silo Debtors on account of intercompany claims.[6] Second, the Debtors included none of these alleged intercompany claims in their securities filings or voluminous first day filings, other than one disputed tax claim that is based on a book-keeping mistake. Third, the materials submitted by the EFH disinterested directors and managers disclose, not just a whitewash job, but a failure to understand the merits of the intercompany claims in either direction, and no willingness to litigate any intercompany claim. The discipline of binding corporate decision-making is necessary prior to subjecting creditors to the expenses of

---

[6]   The RSA provided that the TCEH creditors will receive equity in reorganized TCEH and funds from new debt issued by reorganized TCEH, no amounts were contemplated to be transferred from the E-Silo Debtors to the T-Silo Debtors beyond use of EFH net operating losses. *See Motion of Energy Future Holdings Corp., et al., for Entry of an Order Authorizing the RSA Debtors to Assume the Restructuring Support Agreement and Modifying the Automatic Stay* [D.I. 505], ¶¶ 4, 27, Exhibit A.

solicitation and plan confirmation litigation, especially with respect to matters that go to the heart of the conflicts of interest among the estates.

**B.        Alleged Intercompany Claims Must be Formally Submitted**

7. The EFH Committee, absent prompt agreement by the Debtors, intends to the move the Court to set a bar date for intercompany claims by the T-Silo Debtors against the E-Silo Debtors, requiring the T-Silo Debtors to file proofs of claim under penalty of perjury. In addition, the Court should include in the Scheduling Order a requirement that the applicable Debtors provide a single, comprehensive and detailed description of all claims, causes of action and disputes that are the subject to the Intercompany Claims Settlement, and confirmation by each of them that no other intercompany claims exist between the T-Silo Debtors and the E-Silo Debtors. This single, comprehensive description should be filed with the Court prior to the commencement of discovery related to the Disclosure Statement.

8. Transparency on intercompany claims is essential because there is only *one* currently scheduled material claim against EFH by the T-Silo Debtors. This claim in the amount of approximately $750 million, allegedly arising under a tax allocation agreement, on information and belief, was an essential component of the Intercompany Claims Settlement. Yet it appears baseless, and the EFH Committee intends to promptly move the Court to disallow it in full. Articulation of the other intercompany claims will allow the parties and the Court to identify any other baseless claims so that they can be promptly resolved. Given the monthly cost of these cases, along with the likelihood that additional plans of reorganization will need to be filed, it would prejudice creditors of the E-Silo Debtors to wait any longer to start to resolve the material claim disputes on their merits.

**C.    Discovery on the Value of the T-Silo Debtors Must Be Permitted in Connection with Any Disclosure Statement Hearing**

9.      The information available to the EFH Committee suggests that, given economic, regulatory and other developments, there is a likelihood that no cash taxes would be due upon the taxable disposition of the assets of the T-Silo Debtors.  In other words, the fair market value for purposes of the Internal Revenue Code of the assets of the T-Silo Debtors may now be less than the sum of their taxable basis <u>plus</u> net operating losses available to the EFH tax group (approximately $12 billion or more, depending on the date of emergence).  If this conclusion is correct, a central premise of these bankruptcy cases and the Plan is false.  Plan alternatives that must be considered include taxable dispositions of those assets, separate confirmation of plans of reorganization for the E-Silo Debtors (without waiting for the T-Silo Debtors), and other alternatives that do not involve the risk profile or complexity of a tax-free transaction.

10.     On information and belief, the perceived threat of a taxable sale of the T-Silo Debtors is also an essential component of the Intercompany Claims Settlement.  However, there has been no adequate valuation of the assets of the T-Silo Debtors.  The valuation included in the draft Disclosure Statement appears to be superficial and inflated (presumably designed to justify the highest possible fair market value and tax basis for new TCEH owners).[7]  And it does not appear that the EFH disinterested directors conducted <u>any</u> valuation of the T-Silo Debtors to determine the nature of plan alternatives, or even critically assessed what superficial valuation

---

[7] The valuation in the Disclosure Statement appears to inflate both the DCF and comparative company analysis, involve a secret set of "Environmental Case" projections that the Debtors have refused to provide the EFH Committee (despite their being mentioned as an input into the valuation at page 5 of Exhibit F to the draft Disclosure Statement), and ignore highly material liabilities, such as environmental and asbestos liabilities, that are not effectively dischargeable in a going concern reorganization.  Notwithstanding these problems, the approximately $12 billion aggregate amount of tax basis and projected NOLs still *exceeds* the Debtors' own preliminary liquidation value and approaches the low point of the range for going concern valuation.  EFH, as selling taxpayer, needs its own determination of fair market value as soon as possible.

6

information they received from the Debtors.  The consequences of the potential absence of the 'tax problem' is profound, especially combined with the increasing cost and complexity of the Debtors' tax-free solution, mandating early and effective discovery so that accurate disclosure to stakeholders can be provided before approval of any plan is solicited.  Accordingly, the Scheduling Order should specify that discovery into existing valuation materials relating to the T-Silo Debtors' assets must be provided in connection with Disclosure Statement litigation.

**D.**     **The EFH Committee Must Be Involved in "Plan" Mediation**

11.     The purposed Scheduling Order at paragraph 10 contemplates mediation among the Debtors and the T-Silo Debtors "regarding the Plan."  This mediation is not limited to disputes affecting only creditors of the T-Silo Debtors, if indeed any such isolated dispute is possible with respect to a plan that, among other things, resolves intercompany claims in both directions, uses EFH net operating losses, values the assets of the T-Silo Debtors, and jointly confirms plans for all estates (exposing each estate to the risk the joint plan fails).  The Scheduling Order should be revised to provide that the EFH Committee can participate in mediation to the same extent as the TCEH Committee, subject to agreed procedures to ensure that the mediator and parties can discuss matters separately where appropriate.

**E.**     **Rights of the EFH Committee to Discovery Under the Protocols**

12.     Finally, although the EFH Committee understands the Debtors' desire to avoid duplication of document requests and the attendant associated costs, the EFH Committee must retain the freedom and autonomy to serve and pursue its own document requests and depositions.  To that end, the EFH Committee has confirmed with the Debtors that nothing in the Scheduling Order generally, or paragraph 27 specifically, is intended to restrict the EFH Committee from serving its own Initial Consolidated Requests, Additional Consolidated

Requests, and/or any Confirmation Proceeding deposition notices separate and apart from any such requests or notices served by the TCEH Committee. The Court should condition entry of the Scheduling Order on this understanding maintaining the separateness of the EFH Committee and the TCEH Committee.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

13. On March 25, 2015, the Debtors filed a revised Scheduling Order [D.I. 4274] that reflects input from various stakeholders, and the statements herein are based upon the terms set forth in that form of the Scheduling Order. The EFH Committee expressly reserves all rights with respect to any further changes or revisions to the Scheduling Order.

Dated: Wilmington, Delaware
April 27, 2015

**MONTGOMERY McCRACKEN WALKER & RHOADS, LLP**

/s/ Mark A. Fink
Natalie D. Ramsey (DE Bar No. 5378)
Davis Lee Wright (DE Bar No. 4324)
Mark A. Fink (DE Bar No. 3946)
1105 North Market Street, 15th Floor
Wilmington, DE 19801
Telephone: (302) 504-7800
Facsimile: (302) 504-7820
E-mail: nramsey@mmwr.com
dwright@mmwr.com
mfink@mmwr.com

– and –

**SULLIVAN & CROMWELL LLP**

Andrew G. Dietderich
Brian D. Glueckstein
Michael H. Torkin
Alexa J. Kranzley
125 Broad Street
New York, New York 10004
Telephone: (212) 558-4000
Facsimile: (212) 558-3588
E-mail: dietdericha@sullcrom.com
gluecksteinb@sullcrom.com
torkinm@sullcrom.com
kranzleya@sullcrom.com

*Counsel for The Official Committee of Unsecured Creditors of Energy Future Holdings Corp., Energy Future Intermediate Holding Company, LLC; EFIH Finance Inc.; and EECI, Inc.*

9