## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

<table>
<tr><td></td><td>) Chapter 11</td></tr>
<tr><td></td><td>)</td></tr>
<tr><td>In re:</td><td>) Case No. 14-10979 (CSS)</td></tr>
<tr><td></td><td>)</td></tr>
<tr><td>ENERGY FUTURE HOLDINGS CORP., <em>et al.</em>,[1]</td><td>) Jointly Administered</td></tr>
<tr><td></td><td>)</td></tr>
<tr><td></td><td>) <strong>Re: Docket Nos. 4138, 4274</strong></td></tr>
<tr><td>Debtors.</td><td>)</td></tr>
<tr><td></td><td>) <strong>Hearing Date: May 4, 2015 at 9:30 a.m.</strong></td></tr>
<tr><td></td><td>) <strong>Objection Deadline: April 27, 2015 at 4:00 p.m.</strong></td></tr>
</table>

**OBJECTION OF EFH NOTES INDENTURE TRUSTEE TO MOTION OF ENERGY FUTURE HOLDINGS CORP., ET AL., FOR ENTRY OF AN ORDER SCHEDULING CERTAIN HEARING DATES AND DEADLINES AND ESTABLISHING CERTAIN PROTOCOLS IN CONNECTION WITH THE CONFIRMATION OF DEBTORS' PLAN OF REORGANIZATION AND THE APPROVAL OF DEBTORS' DISCLOSURE STATEMENT**

American Stock Transfer & Trust Company, LLC, as successor trustee to The Bank of New York Mellon Trust Company, N.A. (in such capacity, the "EFH Indenture Trustee") under the Indentures (as described in Schedule 1 attached hereto), by its undersigned counsel, files this objection (the "Objection") to the *Motion of Energy Future Holdings Corp., et al., for Entry of an Order Scheduling Certain Hearing Dates and Deadlines and Establishing Certain Protocols in Connection with the Confirmation of Debtors' Plan of Reorganization and the Approval of Debtors' Disclosure Statement* [Docket Nos. 4138 & 4274] (the "Scheduling Motion").[2]   In support of this Objection, the EFH Indenture Trustee respectfully states as follows:

---

[1]    The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, for which the debtors have requested joint administration, a complete list of the debtors and the last four digits of their federal tax identification Numbers is not provided herein.

[2]    Capitalized terms used but not otherwise defined in this Objection shall have the meanings ascribed to them in Scheduling Motion.

## PRELIMINARY STATEMENT

1.      At the outset of these cases the Debtors sought approval of a Restructuring

Support Agreement (the "RSA") to facilitate a "comprehensive restructuring."[3]  **Nothing in that**

**"comprehensive" RSA provided that TCEH would have any claims, let alone a nearly $1**

**billion claim, against the E-Side estates.[4]**  Notwithstanding the RSA and the fact that no

representative of EFH Corp. ever stated a belief that the T-Side holds any meritorious net

intercompany claim against the E-Side estates, on April 14, 2015, the Debtors and the directors

at EFH Corp. executed a 180-degree flip and filed a proposed plan and disclosure statement

premised on a potential "settlement" granting TCEH a nearly $1 billion claim against the estate

of EFH Corp.[5]

2.      Despite the apparent willingness of the purportedly "disinterested" directors of

EFH Corp. to support a transfer of over $1 billion in value at the expense of EFH Corp. creditors,

the "statement" filed by the "disinterested" directors in support of the proposed settlement is void

of any indication that they believe the T-Side claims would have merit in actual litigation.[6]  **This**

**is consistent with the fact that the directors of EFH Corp. also approved the RSA under**

**which TCEH was <u>not</u> receiving any claim against EFH Corp.**  Moreover, EFH Corp.'s

amended Schedule B, filed February 18, 2015, was approved by EFH Corp.'s purportedly

"disinterested" directors and that Schedule B provided that:

---

[3]      *See Motion of Energy Future Holdings Corp., et al., for Entry of an Order Authorizing the RSA Debtors to Assume the Restructuring Support Agreement and Modifying the Automatic Stay* [Docket No. 505] at ¶ 1.

[4]      The term "E-Side" refers to Energy Future Holdings Corporation, Energy Future Intermediate Holding Company LLC, EFIH Finance Inc., and EECI, Inc.

[5]      The term "T-Side" refers to Energy Future Competitive Holdings Company, Texas Competitive Electric Holdings Company LLC and their direct and indirect debtor subsidiaries.

Energy Future Holding Corp. believes that the tax allocation matter should result in Energy Future Holdings Corp. **owing nothing** to Texas Competitive Electric Holdings Company LLC and in Texas Competitive Electric Holdings Company LLC **owing not less than** $500 million to Energy Future Holdings Corp. (emphasis added)[7]

3.      If, contrary to all prior statements and filings by EFH Corp.'s purportedly "disinterested" directors, such T-Side net claims against EFH Corp. existed and EFH Corp. management, its lawyers, and its directors believed that such claims were substantively meritorious, then Delaware law, federal securities laws and most certainly the Bankruptcy Code required that such belief be disclosed in the Debtors' securities filings, discovery, depositions, prior court statements of counsel, prior testimony and most certainly the Debtors' Schedules and SOFAs.[8]  Such disclosures would have been material to bond holders at EFH Corp. — but such disclosures were never made.

4.      The EFH Indenture Trustee does not believe that there is any evidence that some fact revealed in connection with the extraordinary Legacy Discovery process changed their view of the merits of the alleged T-Side claims.   Rather, the EFH Indenture Trustee believes that the Debtors' counsel, the directors and their management are worn down by the T-Side creditors' scorched earth litigation tactics and are prepared to give up over $1 billion in value on claims that lack merit because they see no procedural alternative to have those claims determined in an efficient manner.  One billion dollars in value is too much to give up solving a procedural

---

[6]      *See Statement of the Disinterested Directors of Debtor Energy Future Holdings Corp. Regarding Proposed Settlement of Conflict Matters as Part of Proposed Plan of Reorganization* [Docket No. 4147] (the "Plan Statement").

[7]      *See* Docket No. 3586, at 6 (the "Amended Schedule B").  While EFH Corp. subsequently withdrew the Amended Schedule B, [Docket No. 3624], it did so without prejudice and only upon an allegation by the TCEH Creditors' Committee that the Amended Schedule B failed to comply with the *Stipulation and Agreed Order Regarding a Protocol for Certain Case Matters* entered by this Court on September 16, 2014 [Docket No. 2051] and not because EFH Corp.'s "disinterested" directors changed their position with respect to any statement in the Amended Schedule B.  *See* Docket No. 3624, at 1-2.

[8]      *See* FED. R. BANKR. P. 1007.

problem.  The EFH Indenture Trustee believes that this <u>procedural</u> conclusion is wrong and flies in the face of the substance and spirit of the Bankruptcy Code.   In these circumstances, the **protocol proposed by the Debtors is fundamentally deficient because it fails to provide a prompt method for the determination of the <u>merits</u> of any alleged intercompany claims asserted by the T-Side Debtors.**

5.       The proposed billion dollar "expedience" value transfer to the ever-litigious T-Side creditors is unprecedented, has no basis in law, and comes at the direct expense of EFH Corp. creditors.  The Debtors' proposed plan settlement of the alleged intercompany claims is all the more egregious since the Bankruptcy Code and the Bankruptcy Rules expressly provide litigation procedures to determine or estimate claims in an expedient manner.  *See e.g.,* 11 U.S.C. § 502(c).  In these circumstances, where the Debtors and the EFH Corp. "disinterested" directors have not asserted that any of the alleged intercompany claims have merit, they should not be permitted to proceed with litigation over an alleged plan to transfer more than $1 billion in value to "settle" those claims.

6.       Furthermore, and perhaps most extraordinarily, the alleged plan over which structured litigation is about to be launched is not even a plan since <u>no party</u> is bound by the potential settlements.  This Court should not establish procedures for litigation on a plan which, on its face, is premised on a hypothetical potential settlement and fails to provide any adequate means for its implementation.

7.       Accordingly, the EFH Indenture Trustee requests that the Court deny the Scheduling Motion and instead direct the parties to arrive at expedited procedures for the prompt determination of the underlying intercompany claims before consideration of the Debtors' proposed plan and disclosure statement.  At this point all parties have had the benefit of eight

4816-0312-4515.12

months of Legacy Discovery and should be ready for expedited claims estimation and/or

determination hearings.

8.    In the alternative, the EFH Indenture Trustee requests that the proposed

scheduling order be revised to require:

- The Debtors to certify 30 days prior to the deadline for the filing of objections to the Disclosure Statement that all required parties are bound by any settlements contained in the plan;

- The prompt filing of a proof of claim with supporting documentation on account of any alleged intercompany claim(s) by each Debtor asserting such claim(s);

- The amendment of the Schedules and SOFAs to reflect such claims and that such amendments be filed without the cautionary preambles currently contained in the Global Notes which (i) absolve the signatories of their obligations under Bankruptcy Rule 9011 and (ii) contradict the sworn nature of the Schedules mandated by the Bankruptcy Code and the Bankruptcy Rules;

- The scheduling of expedited hearings in August 2015 (or as the Court's schedule permits) to determinate and/or estimate any alleged intercompany claims that are objected to;

- Within 14 days of the entry of a scheduling order, the "disinterested" directors of EFH Corp. provide the EFH Indenture Trustee with all documents and communications relating to the their determination that the intercompany claim settlement under the plan is fair, reasonable and in the best interests of the estate of EFH. Corp. (the "EFH Director Initial Document Production");

- The EFH Indenture Trustee shall be permitted to promptly depose the "disinterested" directors of EFH Corp.;

- The EFH Indenture Trustee and its professionals who have executed confidentiality agreements receive complete access to all bidding information related to the Oncor Electric Delivery Company LLC ("Oncor") assets so that the likely recovery from the disposition of the Oncor assets can be balanced against any proposed settlement and litigation costs; and

- The establishment of procedures for the prompt determination of prepayment/make-whole claims against EFH Corp. ahead of any deadlines for voting or objecting to any plan.

## RELEVANT BACKGROUND

9.      On April 29, 2014 (the "Petition Date") each of the Debtors filed a voluntary

petition with the United States Bankruptcy Court for the District of Delaware (the "Court").  The

Debtors continue to operate their businesses and manage their properties as debtors in possession

pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

## A.      Appointment of Committees

10.      On May 13, 2014, the Office of the United States Trustee for the District of

Delaware (the "U.S. Trustee") appointed an official committee of unsecured creditors for Energy

Future Competitive Holdings Company LLC, Texas Competitive Electric Holdings Company

LLC ("TCEH"), the direct and indirect Debtor subsidiaries of EFCH and TCEH, and EFH

Corporate Services Company (the "TCEH Creditors' Committee").  *See Notice of Appointment*

*of Creditors Committee of Unsecured Creditors* [Docket No. 420].

11.      On October 27, 2014, the U.S. Trustee appointed an official committee of

unsecured creditors for Energy Future Holdings Corp. ("EFH Corp."), Energy Future

Intermediate Holding Company, LLC, EFIH Finance, Inc., and EECI, Inc. (the "EFH Creditors'

Committee", together with the TCEH Creditors' Committee, the "Committees").  *See Notice of*

*Appointment of Creditors Committee of Unsecured Creditors* [Docket No. 2570].  On January

15, 2015, the U.S. Trustee filed the *First Amended Notice of Appointment of Committee of*

*Unsecured Creditors* [Docket No. 3133] and added the EFH Indenture Trustee as a member of

the EFH Creditors' Committee.

## B.      Restructuring Support Agreement

12.      On May 16, 2014, the Debtors filed the *Motion of Energy Future Holdings Corp.,*

*et al., for Entry of an Order Authorizing the RSA Debtors to Assume the Restructuring Support*

*Agreement and Modifying the Automatic Stay* [Docket No. 505] (the "RSA Motion") seeking

6

authority to assume a Restructuring Support and Lock-Up Agreement (the "Restructuring Support Agreement" or "RSA") between the Debtors and the Restructuring Support Parties (as defined in the RSA).  The Debtors terminated the RSA on July 23, 2014.  *See Debtors Notice of (A) Termination of Restructuring Support Agreement, (B) Withdrawal of Second Lien Opt-In, and (C) Withdrawal of EFIH Settlement Motion, EFIH Second Lien DIP Motion, and Restructuring Support Agreement Assumption* [Docket No. 1697].  The RSA did not provide for any payment from the E-Side to the T-Side.  *See* Restructuring Support Agreement [Docket No. 505], at 15 (providing that "Non-EFH Debtor Intercompany Claims shall be canceled and released").

## C.    Debtors' Schedules

13.    On June 30, 2014, the Debtors filed their *Schedules of Assets and Liabilities* (collectively, the "Schedules")[9] and Statements of Financial Affairs (collectively, the "SOFAs").[10]  The *Global Notes And Statement Of Limitations, Methods And Disclaimer Regarding The Debtors' Schedules Of Assets And Liabilities And Statements Of Financial Affairs* (the "Global Notes") accompanying each SOFA and Schedule include the following exculpatory provisions:

> The Schedules and Statements contain unaudited information that is subject to further review and potential adjustment. In preparing the Schedules and Statements, the Debtors relied on financial data derived from their books and records that was available at the time of such preparation. Although the Debtors have made reasonable efforts to ensure the accuracy and completeness of such financial information, subsequent information or discovery may result in material changes to the Schedules and Statements.

---

[9]    The Schedule of Debtors Texas Utilities Electric Company was filed on July 2, 2014 [Docket No. 1446]. Certain Debtors amended their Schedules on September 26, 2014, and EFH Corp., though Proskauer Rose LLP, amended its Schedule B on February 18, 2015 [Docket No. 3586], which amendment was withdrawn on February 23, 2015 [Docket No. 3624].

[10]    The SOFA of EFH CG Holdings Company LP was filed on July 3, 2014.

> **As a result, the Debtors are unable to warrant or represent that the Schedules and Statements are without inadvertent errors, omissions, or inaccuracies some of which may be material**.

*See Global Note*, at 2 (emphasis added).  In further repudiation of any party's ability to rely on the Schedules and SOFAs, the Debtors added:

> Nothing contained in the Schedules and Statements shall constitute a waiver of any of the Debtors' rights or an admission with respect to their chapter 11 cases, including any issues involving substantive consolidation, equitable subordination, defenses, and/or Claims or causes of action arising under the provisions of chapter 5 of the Bankruptcy Code and any other applicable laws to recover assets or avoid transfers.

*Id.*  Here, where the Debtors propose to transfer more than $1 billion in value on account of claims they previously disputed, such disavowals are not appropriate.

**D.    Debtors' Proposed Plan, Disclosure Statement and Scheduling Motion**

14.    On April 14, 2015, the Debtors filed the *Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 4142] (the "Plan") and *Disclosure Statement for the Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 4143] (the "Disclosure Statement").  The Plan proposes a settlement (the "Proposed Plan Settlement") of certain intercompany claims (the "Alleged Intercompany Claims"), which contemplates, among other things, that:

a)    TCEH shall have an allowed unsecured non-priority claim of $700,000,000 against EFH, which claim shall receive the same form of distributable value as all other unsecured non-priority EFH creditors under any plan of reorganization (the "TCEH Claim");

b)    After full satisfaction of all allowed administrative, priority and secured claims against EFH, the next $1,410,000,000 of distributable value from the EFH estate shall be distributed as follows: (a) EFH shall retain 49.645% for distribution on account of allowed unsecured claims and interests (other than the TCEH Claim); (b) TCEH shall receive 49.645% on account of the TCEH Claim (i.e. up to

$700,000,000 million of the first $1,410,000,000 of distributable value for unsecured creditors from the EFH estate); and (c) the EFH equity holders shall receive 0.709%;

c)      Distributable value from the EFH estate in excess of $1,410,000,000 shall be distributed as follows: (a) TCEH shall receive 50%, until TCEH receives an additional $105,000,000, for a total distribution to TCEH of $805,000,000; and (b) EFH shall retain 50% for distribution on account of allowed unsecured claims and interests (other than the TCEH Claim); and

d)      The sharing of distributable value between EFH's stakeholders and TCEH as described above shall not be affected by the total amount of allowed unsecured claims against EFH. If allowed claims of creditors of EFH (other than TCEH) are less than $700,000,000, EFH shall remain entitled to the same percentages of distributable value from the EFH estate as described above. If allowed claims of creditors of EFH (other than TCEH) are greater than $700,000,000, TCEH shall remain entitled to the same percentages of distributable value from the EFH estate as described above, up to a maximum aggregate distribution of $805,000,000 to TCEH.

*See* Disclosure Statement, at 10.  In addition, the Plan proposes a "Tax-Free Spin-Off" under which TCEH will spin off from the Debtors to form a standalone reorganized entity, Reorganized TCEH, and the tax attributes of the EFH Group will be substantially used to provide Reorganized TCEH with a partial step-up in tax basis in certain of its assets, valued at approximately $1.0 billion.  *Id.* at 6.

15.      Notably, no Debtor is in any way bound by any settlement contemplated in the alleged Plan notwithstanding the fact that the Plan's feasibility in entirely contingent on the Proposed Plan Settlement.  Accordingly, the alleged Plan is not a plan because it does not comply with the Bankruptcy Code requirement that a plan shall "provide adequate means for the plan's implementation . . . ."  11 U.S.C. § 1123(a)(5).

16.      On April 14, 2015, Donald L. Evans and Billie I. Williamson, the "disinterested" directors of EFH Corp., filed the *Statement of the Disinterested Directors of Debtor Energy Future Holdings Corp. Regarding Proposed Settlement of Conflict Matters as Part of Proposed*

*Plan of Reorganization* [Docket No. 4147] (the "<u>Plan Statement</u>") and opined that they

determined that the Proposed Plan Settlement was fair, equitable and in the best interests of EFH

Corp.'s estate.   Notably, neither director nor any other attorney or executive of EFH Corp. has

ever stated that they believe that the claims of the T-Side actually have merit.  In fact, EFH

Corp.'s Amended Schedule B (later withdrawn for non-factual reasons) specifically states that

EFH Corp. does not owe any amount to TCEH and that TCEH owes at least $500 million to EFH

Corp.  *See* Docket No. 3586.

**E.**     **<u>Scheduling Motion and Plan Mediation</u>**

        17.     On April 14, 2015, the Debtors filed the Motion seeking to establish a schedule

and protocol in connection with approval of the Disclosure Statement and Plan.  On April 24,

2015, the Debtors filed an amended order [Docket No. 4274] granting the Scheduling Motion

(the "<u>Amended Proposed Scheduling Order</u>").  Among other things, the Amended Proposed

Scheduling Order now proposes a protocol for Plan mediation among the Debtors, the TCEH

Committee, the TCEH First Lien Ad Hoc Group, Wilmington Savings Fund Society, as

indenture trustee for the TCEH second lien noteholders, the *ad hoc* group of TCEH unsecured

bondholders and Law Debenture Trust Company of New York, as the indenture trustee for the

TCEH unsecured notes.  *See* Amended Proposed Scheduling Order, at ¶ 10.  The Amended

Proposed Scheduling Order authorizes the mediator to "mediate issues regarding the terms of the

Plan."  *Id.* at ¶ 16.

## OBJECTION

**A.**     **The Court Should Deny Scheduling Motion Because No Settlement Exists
        and it should Establish Procedures for the Determination/Estimation of
        <u>All Alleged Intercompany Claims</u>**

        18.     The Debtors' proposed Plan and Disclosure Statement hinges on a Proposed Plan

Settlement under which TCEH will receive over $1 billion in value from the estate of EFH Corp.

on account of the Alleged Intercompany Claims and tax attributes.  However, the Proposed Plan

Settlement is not binding on any party and thus it does not pave the way for the Debtors to

emerge from chapter 11.  *See* Plan Statement, at 3 ("[T]he Disinterested Directors may terminate

the proposed settlement if they determine, after consultation with their independent advisors, that

termination of the settlement would be consistent with the exercise of their fiduciary duties.").

Indeed, the Amended Proposed Scheduling Order provides that mediation over the terms of the

Plan would start almost immediately.  Unless and until there is an agreed-upon settlement, it

would be a waste of time and resources to establish a litigation schedule over a Plan where

feasibility is dependent upon a non-binding proposed settlement.  Creditors should not be forced

to evaluate, let alone litigate over, a "plan" that is but a twinkle in the eyes of certain Debtor

representatives.

19.     Accordingly, the Court should deny the Scheduling Motion and direct the parties

to arrive at expedited procedures for the prompt determination of the Alleged Intercompany

Claims before consideration of the Debtors' proposed Plan and Disclosure statement.  In

response to this Objection, the Debtors will undoubtedly point to the Plan Statement of Mr.

Evans and Mr. Williamson, the "disinterested" directors of the EFH Corp. Board of Directors,

contending that the Proposed Plan Settlement is fair and in the best interests of EFH Corp.'s

estate.  *See* Plan Statement, at 3 ("[T]he Disinterested Directors believe that the proposed

settlement embodied in the Plan is fair, reasonable and in the best interests of EFH Corp.'s

estate.").  However, neither Mr. Evans nor Mr. Williamson provide any information regarding

any analysis that they conducted in determining the <u>validity or merits</u> of the Alleged

Intercompany Claims or the potential outcomes of any litigation of the claims.  Notably, their

"statement" contains no conclusion that they believe that the claims to be settled have any merit.

11

Thus, there is <u>no basis</u> to determine whether the Proposed Settlement is within the range of litigation possibilities.  **Moreover, Mr. Evans and Mr. Williamson were part of the Debtors' Board that approved the RSA under which TCEH would not receive any payments and certainly not over $1 billion in value from EFH Corp.**  Rather than shedding light on the reasonableness of the Proposed Plan Settlement, the Plan Statement of Mr. Evans and Mr. Williamson only raises more questions about the validity of the Alleged Intercompany Claims. Moreover, no explanation is provided in the Plan or Disclosure Statement as to why EFH Corp. is now required to fund almost $1 billion of distributions to TCEH in settlement of the Alleged Intercompany Claims.[11]  Without any actual analysis of the Alleged Intercompany Claims, the EFH Indenture Trustee is left to surmise that the nearly $1 billion settlement payment is in fact divorced from the merits of the claims and is merely designed to appease the litigious T-Side creditors.

20.    The creditors of EFH Corp. should not bear the proposed $1 billion plus value transfer for appeasing the T-Side creditors, especially where the Alleged Intercompany Claims being settled appear to be without merit and the Bankruptcy Code provides procedures for the prompt determination or estimation of the Alleged Intercompany Claims.  For instance, the Alleged Intercompany Claims could be estimated under section 502(c) of the Bankruptcy Code for the purposes of allowance under any proposed plan.  The EFH Indenture Trustee submits that the Scheduling Motion should be denied and procedures should be implemented for the expedited determination of the validity of the Alleged Intercompany Claims.

21.    The EFH Indenture Trustee does not dispute that a schedule and protocol should be implemented in connection with consideration of plans and disclosure statements in these

---

[11] While pages 104 through 114 of the Disclosure Statement list various claims alleged in negotiations, but not filed or included in and Schedules, the discussions of the merits is cursory.

cases.  However, such procedures should not be triggered by a charade of a plan that provides no

means for its implementation and cannot be confirmed.  To that end, if the Court does not deny

the Scheduling Motion, the EFH Indenture Trustee requests that the Amended Proposed

Scheduling Order be modified to require:

- The Debtors to certify 30 days prior to the deadline for the filing of objections to the Disclosure Statement that all required parties are bound by any settlements contained in the Plan;

- The prompt filing of a proof of claim with supporting documentation on account of any Alleged Intercompany Claim(s) by each Debtor asserting such claim(s);

- The prompt amendment of the Schedules and SOFAs to reflect the Alleged Intercompany Claims and that such amendments be filed without the exculpatory provisions contained in the Global Notes;

- The scheduling of expedited hearings in August 2015 (or as the Court's schedule permits) to determinate and/or estimate any Alleged Intercompany Claims that are objected to;

- Within 14 days of the entry of a scheduling order, the "disinterested" directors of EFH Corp. provide the EFH Indenture Trustee with all documents and communications relating to the their determination that the Proposed Plan Settlement is fair, reasonable and in the best interests of the estate of EFH. Corp.;

- The EFH Indenture Trustee shall be permitted to promptly depose the "disinterested" directors of EFH Corp.;

- The EFH Indenture Trustee and its professionals who have executed confidentiality agreements receive complete access to all bidding information related to the Oncor assets so that the likely recovery from the disposition of the Oncor assets can be balanced against any proposed settlement and litigation costs; and

- The establishment of procedures for the prompt determination of prepayment/make-whole claims against EFH Corp. ahead of any deadlines for voting or objecting to any plan.

22.    The EFH Indenture Trustee's proposed modifications to the Amended Proposed

Scheduling Order are reasonable and justified under these circumstances.

13

23.    <u>First</u>, it is entirely justifiable to require the Debtors to certify 30 days prior to the deadline for the filing of objections to the Disclosure Statement that all required parties are bound by any settlements contained in the proposed Plan.  How can effective plan and disclosure statement discovery commence on May 11, 2015, if the settlement that needs to be the subject of disclosure does not exist?

24.    <u>Second</u>, in order to crystalize the existence of any Alleged Intercompany Claims, (i) the Debtor(s) asserting any Alleged Intercompany Claim should promptly file proof(s) of claim on account of those claim(s),[12] and (ii) each Debtor should be required to amend their Schedules and SOFAs to reflect such claims.  Moreover, all Debtors should be prohibited from including the exculpatory provisions of the type contained in the Global Notes in connection with listing the Alleged Intercompany Claims on their amended Schedules and SOFAs, which should be filed in compliance with Bankruptcy Rule 9011.  Bankruptcy Rule 9011 provides that:

> By presenting to the court (whether by signing, filing, submitting, or later advocating) a petition, pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law; (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery . . . .

Fed. R. Bankr. P. 9001(b)(2), (3).

---

[12]    Although the general claim bar date passed on October 27, 2014, the bar date order specifically provided that "any Debtor having a claim against another Debtor" was not required to file a proof of claim by the general bar date.  *See Order (A) Setting Bar Dates For Filing Non-Customer Proofs Of Claim And Request For Payment, (B) Approving The Form Of And Manner For Filing Non-Customer Proofs Of Claim And Request For Payment. And (C) Approving The Notice* [Docket No. 1866], at ¶ 5.(e).

4816-0312-4515.12

Since the Alleged Intercompany Claims are the reasons why the Debtors propose to grant

TCEH a nearly $1 billion dollar claim against EFH Corp., the Debtors should not be permitted to

hide behind the exculpatory provisions to absolve themselves of all responsibility in the

scheduling of the Alleged Intercompany Claims.  If the Debtors have adequately analyzed those

claims such that they can be settled, they should have no issue with amending the Schedules to

reflect those claims and have those amendments comport with Bankruptcy Rule 9011.  Of

course, once such claims are filed and/or scheduled, they will be ripe for evaluation and if

appropriate, objection, by creditors.

25.     <u>Third</u>, in order for all parties to determine if the Proposed Plan Settlement is

reasonable in the context of Plan confirmation, the Court should schedule expedited hearings in

August 2015 (or as the Court's schedule permits) to determinate and/or estimate the Alleged

Intercompany Claims.  This proposed amendment to the Amended Proposed Scheduling Order

would provide the parties with adequate time to object to, and the Court with adequate time to

determine, the validity of, or at least estimate, the Alleged Intercompany Claims in advance of

the hearing on confirmation of a plan.

26.     <u>Fourth</u>, as detailed above, the "disinterested" directors of EFH Corp. have not

provided substantive information regarding any analysis they conducted in determining the

validity of the Alleged Intercompany Claims or the potential outcomes of any litigation of those

claims.  Nor have they explained why they approved the Proposed Plan Settlement under which

TCEH would have a nearly $1 billion claim against the E-Side estate when no such proposal was

contained in the RSA, which they approved as well.  The compressed deadlines for document

production and depositions on those specific issues will reveal whether the "disinterested"

directors have actually determined that the Alleged Intercompany Claims are meritorious or

whether the Proposed Plan Settlement is just in name of expediency to appease the T-Side creditors.  The creditors of EFH Corp. should not be forced to wait until late in the confirmation process to learn these facts.

27.    Fifth, as the Court is aware, the sale process surrounding Oncor is currently on-going.  The value that will be generated from the Oncor sale has a direct impact on distributions to EFH Corp. creditors such as the EFH Indenture Trustee and holders of bond debt at EFH Corp.  Despite the importance of information related to the Oncor sale process, the EFH Indenture Trustee — a member of the EFH Creditors' Committee — has been denied access to that information.  As a result of the veil of secrecy that has been placed around that process, the EFH Indenture Trustee is left to guess at how many bids have been received for Oncor, whether any such bids comply with the Bankruptcy Code and most importantly, the potential value to the Debtors' estates that will be derived from the sale.

28.    The denial of access to that information directly impedes the ability of the EFH Indenture Trustee to assess the feasibility of the proposed plan and alternatives.  In order to determine the effect of the Proposed Plan Settlement on distributions to EFH Corp. creditors, the EFH Indenture Trustee must be able to assess the amount of distributable value, which is directly linked to the sale value of Oncor.  Accordingly, the EFH Indenture Trustee requests the EFH Indenture Trustee and its professionals who have executed confidentiality agreements receive complete access to all bidding information related to the Oncor assets.

29.    Lastly, in advance of confirmation of any plan, the amount due on account of make-whole claims on bonds issued by EFH Corp. will need to be determined.   Currently, the Amended Proposed Scheduling Order does not provide for the determination of those amounts. The EFH Indenture Trustee is currently in discussions with the Debtors regarding a proposed

schedule and protocol; however, no agreement has been reached as of the date of this Objection. Thus, the EFH Indenture Trustee objects to the Scheduling Motion to the extent no mutually-agreed schedule/protocol regarding the EFH Notes make-whole litigation is included in any order approving the Scheduling Motion.

30.     The objections contained herein are based upon that the Amended Proposed Scheduling Order, filed on April 24, 2015. The EFH Indenture Trustee expressly reserves all rights with respect to any further changes or proposed revisions to the Amended Proposed Scheduling Order.

## CONCLUSION

**WHEREFORE**, the EFH Indenture Trustee respectfully request the Court: (i)(a) deny the Scheduling Motion, or (b) in the alternative, modify the order granting the Scheduling Motion as provided in the Objection; and (ii) grant such other and further relief as is just.

Dated: Wilmington, DE
       April 27, 2015

**CROSS & SIMON, LLC**

By: */s/ Christopher P. Simon*
Christopher P. Simon (Del. Bar No. 3697)
1105 North Market Street, Suite 901
Wilmington, Delaware 19801
Telephone: (302) 777-4200
Facsimile: (302) 777-4224
csimon@crosslaw.com

- and –

**NIXON PEABODY LLP**
Amanda D. Darwin
Richard C. Pedone
Erik Schneider
100 Summer Street
Boston, Massachusetts 02110
Telephone: (617) 345-1000
Facsimile: (617) 345-1300
adarwin@nixonpeabody.com
rpedone@nixonpeabody.com

-and-

Christopher J. Fong
437 Madison Avenue
New York, NY 10022
Telephone: 212-940-3724
Facsimile: 855-900-8613
cfong@nixonpeabody.com

*Co- Counsel to American Stock Transfer & Trust Company, LLC, as EFH Indenture Trustee*