# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Energy Future Holdings Corp., *et al.*,[1] | ) | Case No. 14-10979 (CSS) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | Re: Docket No. 4138 |
| | ) | **Hearing Date: May 4, 2015 at 9:30 am** |
| | ) | **Objection Deadline: April 27, 2015 at 4:00 pm** |

**OBJECTION OF THE AD HOC GROUP OF TCEH UNSECURED NOTEHOLDERS TO THE MOTION OF ENERGY FUTURE HOLDINGS CORP., ET AL., FOR ENTRY OF AN ORDER SCHEDULING CERTAIN HEARING DATES AND DEADLINES AND ESTABLISHING CERTAIN PROTOCOLS IN CONNECTION WITH THE CONFIRMATION OF DEBTORS' PLAN OF REORGANIZATION AND THE <u>APPROVAL OF DEBTORS' DISCLOSURE STATEMENT</u>**

The ad hoc group of certain holders (the "Ad Hoc Group") of approximately $2.7 billion of 10.25% Fixed Senior Notes due 2015 (including Series B) and 10.50%/11.25% Senior Toggle Notes due 2016 issued by Texas Competitive Electric Holdings Company LLC ("TCEH") and TCEH Finance, Inc., by and through its undersigned counsel, hereby files this objection (the "Objection") to the Motion of Energy Future Holdings Corp., et al., for Entry of an Order Scheduling Certain Hearing Dates and Deadlines and Establishing Certain Protocols in Connection with the Confirmation of Debtors' Plan of Reorganization and the Approval of Debtors' Disclosure Statement (the "Motion"). In support of this Objection, the Ad Hoc Group respectfully represents as follows:

---

[1] The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, which are being jointly administered on an interim basis, a complete list of the debtors (the "Debtors") and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://efhcaseinfo.com.

ACTIVE 29853781v1 04/27/2015

**PRELIMINARY STATEMENT**

1.     For the first year of these Cases, over the Ad Hoc Group's repeated protestations, the Debtors doggedly pursued arrangements for a rapid emergence from chapter 11 in a tax-free spin that disengaged the two sides of their capital structure with the support of certain preferred signatories to a prepetition RSA.  At heart, the strategy was premised on having this Court compel holders of more than $8 billion in T-side unsecured claims to accept near zero recoveries, to agree to the release of valuable inter-debtor causes of action for no consideration and to permit the supporting creditors to recover billions of dollars in excess of their legal entitlements.  Ultimately, those efforts, which were infected with pervasive conflicts of interest and a near constitutional inability of key personnel to understand the importance of their exercising a "fiduciary in," collapsed under the weight of unfounded economics.  Although these same Debtors purport to have learned their lesson from the years of acrimony that were occasioned by their pursuit of the RSA, the Motion makes clear they are in fact on the same misguided path to exit at any cost.  Only now, in furtherance of expediency, they have filed a plan of reorganization that lacks support from <u>any</u> party in interest in the entire capital structure and is coupled with a request for a scheduling order that would arbitrarily require confirmation of some plan, whatever it might look like, in 2015.

2.     The proposed scheduling order is premature, inappropriate, and unnecessary in these Cases.  Indeed, the stated purpose of the Motion – to set a schedule for the Debtors to exit chapter 11 before the expiry of their exclusive periods -- rests on a fundamentally misguided interpretation of the Bankruptcy Code.  As set forth in Section A, <u>infra</u>, a debtor does not have an inalienable right to have a plan of reorganization considered before any others, but only the right to file and solicit a plan of reorganization for a defined period.  To be sure, whatever legitimacy

there might be in having an order that schedules a confirmation hearing within exclusivity, it can never supersede the overarching goal of the chapter 11 plan process – to allow for the fostering, development and confirmation of a chapter 11 plan of reorganization that maximizes the value of a debtor's estate for distribution to its stakeholders.

3. The essential problem here is that the Debtors' self-proclaimed "determined march," like any other ill-fated forced march, has lost touch with the goal of value creation. The opposing creditor constituencies in these Cases are sophisticated, well-informed and intensely focused on realizing recoveries on their prepetition claims. The capital structure is highly complex, the legal and operational issues affecting the restructuring are considerable, and the economic fundamentals underlying the Debtors' businesses are volatile. Notwithstanding any of this, as we recently informed the Court, constituencies from across the structure have recently come together to negotiate a plan structure that would render the Debtors' proposed plan moot, ensure global consensus for an expedited confirmation hearing, and provide recoveries substantially in excess of those contained in the straw-man plan the Debtors have filed. The fact that this creditor-led process remains fragile, uncertain and ongoing is not for the want of a drill sergeant, and any insistence by the Debtors that their threat of having the Court schedule confirmation of an unsupported, value-destructive plan is what is spurring creditors to act is naïve. On the contrary, forced engagement on the proposed plan timetable is only going to make the pursuit of the end goal more difficult, contentious and expensive.

4. To the extent that the Court believes that a form of confirmation scheduling order relating to the Debtors' plan would serve some legitimate interest, the order proposed by the Debtors needs substantial modifications. As set forth in Section B, multiple provisions of the timetable need reworking if there is going to be a rational confirmation schedule for the plan on

3

file, and the schedule proposed is far too abbreviated. But, lest there be any doubt as to the Debtors' willingness to exalt the "determined march" above all else, they only filed their promised revised proposed scheduling order on the night of Friday, April 24th. That proposed order contains numerous substantive changes to the draft order that accompanied the Motion when filed. Given the late revisions, the Ad Hoc Group requested a short adjournment of the objection deadline to permit a comprehensive response. The Debtors summarily refused to grant any extension, citing the need to move the process forward on a confirmation hearing in November. As a result of the Debtors' irrationality, the Ad Hoc Group reserves its right to supplement this Objection at the hearing to raise additional concerns with respect to particular aspects of the newly proposed plan timetable.

## OBJECTION

5. The Court should deny the Motion or, at the very least, hold it in abeyance pending further developments in these Cases.

### A. The requested relief is inappropriate and unnecessary

6. As the Debtors concede, the fundamental purpose of the Motion is to provide a timetable for their obtaining a confirmation trial in advance of the statutory expiration of their exclusive period for soliciting a plan on December 29, 2015. See Motion at 3. According to the Debtors, section 1121 of the Bankruptcy Code provides them with a substantive "right" to be heard on their plan "without the threat of a competing plan." Id. As a means of exercising that purported right, the Debtors have filed a placeholder plan that they admit is unsupported by any creditors and could undergo substantial modification, including a radical restructuring of the underlying forms of corporate reorganization. See April 14, 2015 H'rg Tr. at 37:1-10 (Debtors' Counsel) (plan seeks to preserve "flexibility").

7.     Whatever beliefs the Debtors may have about the benefits of filing a placeholder plan, they are simply wrong on the law regarding their "right" to do so.  Section 1121 of the Bankruptcy Code enjoins creditors under certain circumstances from filing, and soliciting approval of, plans of reorganization before the date that is 18 months, and 20 months, respectively, after the chapter 11 filing date.  See 11 U.S.C. §§ 1121(c) and (d).  Neither of the out-of-Circuit cases cited by the Debtors interpreted the plain language of these provisions as providing a debtor with a right to have their plan heard before the expiration of exclusivity.  See In re Michigan Produce Haulers, Inc., 525 B.R. 408, 412 (Bankr. W.D. Mich. 2015) (holding only that the exclusive solicitation period could be extended after a plan had been filed); In re Clamp-All Corp., 233 B.R. 198 (Bankr. D. Mass 1999) (holding only that "[section] 1121 provides a debtor with the exclusive right to *propose* a plan during its exclusivity period.") (emphasis added).

8.     On the contrary, the legislative history of section 1121 confirms that the purpose behind the Bankruptcy Code's exclusivity provisions is not to ensure a debtor's right to exclusive plan consideration, but rather to protect creditors from undue delay and balance the negotiating strength between debtors and creditors.  In enacting section 1121, Congress stated that "[t]he exclusive right [to file a plan] gives the debtor undue bargaining leverage."  H.R. Rep. No. 95-595, 95th Cong., 1st Sess., at 231 (1978), reprinted in 1979 U.S.C.C.A.N. 5963, 6191.  To create a relative balance in the negotiating strength between debtors and creditors and recognizing "the legitimate interest of creditors . . . to have a say in the future of the company," Congress codified the limited exclusivity provisions of section 1121.  Id. at 231-232; see also 11 U.S.C. § 1121(d)(2). Congress reinforced that intention in 2005, when it amended section 1121 to include an unconditional eighteen and twenty month limit on a debtor's exclusive period to file

5

and solicit a plan, respectively.  See 11 U.S.C. §§ 1121(d)(2)(A)-(B).

9. Indeed, the Third Circuit in Century Glove rejected the interpretation of section 1121 advocated by the Debtors, albeit in a different context:

> [Section 1121] provides only that the debtor temporarily has the exclusive right to *file* a plan (and thus have it voted on).  It does not state that the debtor has a right to have its plan *considered* exclusively.  A right of exclusive consideration is not warranted in the policy of [section 1121].

Century Glove, Inc. v. First Am. Bank of N.Y., 860 F.2d 94, 102 (3d Cir. 1988).

10. In any event, the stated concerns of the Debtors with respect to their potential loss of control over their march to exit can be addressed through less disruptive means, if necessary. While the Bankruptcy Code prevents the Court from further extending the Debtors' exclusive solicitation period beyond December 29, 2015, it does not prevent the Court from exercising its discretion to sequence the solicitation of competing plans after that date.  For example, upon a proper motion to extend exclusivity, the Court could enter an order extending the Debtors' exclusive solicitation period to its statutory maximum (December 29th) and hold in abeyance the solicitation of alternative plans for a period following that date.  Such an order would resolve the Debtors' concerns with respect to timing by ensuring that they can solicit votes for confirmation of their plan beyond December 29th, but would not require the present premature machinations.

11. Under certain circumstances, the entry of a scheduling order setting a disclosure statement and confirmation hearing for a placeholder plan would be of no real moment.  But, setting a plan timetable in these Cases, at this time, presents a real possibility of undermining the efforts among the parties to achieve a consensual resolution through simultaneous mediation and the development of a value-maximizing plan alternative.  As discussed at the hearing on April 14, 2015, the Ad Hoc Group and its advisors are currently negotiating a plan structure with key constituencies that would accelerate confirmation and, at the same time, materially improve the

6

economic treatment for T-side unsecured creditors.  That plan entails raising over $11 billion in debt and equity, the payment in full of all allowed claims of E-side creditor constituencies, and the tax free return of T-side collateral to the first-lien secured parties.  Unlike any of the alternatives discussed or presented by the Debtors to date, this structure would entail the creation of a post-confirmation real estate investment trust as part of the Debtors' bankruptcy cases – thereby capturing the substantial incremental value inherent in such a tax-advantaged structure for the benefit of the Debtors' estates, rather than abandon it to third party investors.  Advisors and principals for the Ad Hoc Group have participated in multiple productive meetings with various interested parties in connection with these negotiations, discussions concerning the form of principal non-disclosure agreements are underway, due diligence is proceeding, and parties are presently structuring capital commitments and exchanging term sheets.  To facilitate these preparations, the T-side secured creditors and unsecured creditors agreed to pursue mediation in what amounts to a two month hiatus from litigation in the hopes of being able to document their distribution arrangements.

12. As the Court can expect, these multi-party negotiations remain fragile and will be frustrated by the entry of a plan scheduling order that contemplates the commencement of plan discovery as soon as mid-May.  The pursuit of the Debtors' plan – unsupported, and wholly subject to change – should not be permitted at this time to distract from the work that is being done by the parties in interest in these Cases to create substantial additional distributable value.  As such, the Court should deny the Motion or otherwise refrain from entering the proposed scheduling order at this time.

### B. To the extent granted, the proposed timetable should be modified

13. To the extent the Court is inclined to grant the Motion in some form, multiple aspects of the proposed timetable are irrational and must be revised to reflect a more thoughtful approach to plan discovery and confirmation proceedings:

1) <u>The Court Should Strike the Provisions in the Proposed Order Purporting to "Strongly Encourage" the Parties to Refrain from Engaging in Discovery</u>. Proposed Schedule at ¶6. To the extent the Debtors continue to pursue confirmation of their proposed plan, full and unfettered discovery into a host of issues outlined below will be essential to resolving these Cases. The need for such discovery is particularly acute given the history of these Cases, where robust discovery into the decision making behind the proposed EFIH second lien DIP financing and the initially proposed bid procedures – much of it conducted by the Ad Hoc Group at its own expense – was critical to the Court's ability to evaluate the Debtors' actions. The Ad Hoc Group has no interest in seeking discovery for discovery's sake, but there should be no doubt that a contested confirmation will require significant production of Debtor documents and witnesses.

2) <u>The Proposed Timetable is Far Too Abbreviated</u>. With respect to the Debtors' proposed plan, discovery from the Ad Hoc Group will inevitably focus on at least two issues that will have to be resolved before confirmation – (i) intercreditor claims and causes of action challenging the nature, extent and priority of the liens and obligations of the T-side secured lenders; and (ii) the purported interdebtor settlement of claims and causes of action by and between the T-side and the E-side.

As proposed, the plan timetable fails to provide sufficient time for discovery and litigation on these gating plan issues. <u>First</u>, the proposed timetable fails to accommodate mediation and/or litigation of intercreditor disputes between and among the TCEH unsecured

creditors and the TCEH first lien lenders.  Those disputes – subject to fully briefed standing motions[2] and scheduled for hearing in July – have been stayed by the parties for two months to permit the negotiation of the alternative plan structure.  In the meantime, the parties have agreed to pursue mediation.  Stipulation and Agreed Order Regarding the Adjournment of Standing Motions [Docket No. 4140-1], ¶ 4.  The Debtors' revised proposed plan timetable, however, fails to address the timing of this mediation, except to implicitly require that the mediation occur within the bounds of the plan confirmation timetable.  At the very least, the Court should require the input of the mediator with respect to any provisions in the timetable that pertain to mediation.  Further, the proposed plan timetable does not contemplate any time to resolve the lien litigation if the mediation fails.  The causes of action to be brought in that litigation – including claims in connection with the incurrence of the first lien debt during the LBO and claims with respect to entitlement to any step-up in basis of the TCEH assets – are indisputably highly complex and fact intensive.  It is entirely unclear, then, how the confirmation schedule can proceed until those issues have been framed by the Court, subjected to discovery and presented for resolution.

>Second, any plan timetable must also account for resolution of the many inter-Debtor causes of action that are purportedly addressed as part of the settlement embedded in the proposed plan, including claims that were apparently not considered by the independent directors.  For example, the record seems to indicate that the T-side independent director failed to consider certain key claims, including (i) claims against EFH in connection with the potentially improper calculation of NOLs; (ii) claims against EFIH under section 550 of the

---

[2] Motion of the Official Committee of Unsecured Creditors for Entry of an Order Granting Exclusive Standing and Authority to Commence, Prosecute, and Settle Certain Claims for Declaratory Judgment, Avoidance and Recovery of Liens, Security Interests, Obligations, Fees, and Interest Payments, and Disallowance of Claims  [Docket No. 3593]; Motion of the Ad Hoc Group of TCEH Unsecured Noteholders for Entry of an Order Granting Standing and Authority to Commence, Prosecute, and Settle Certain Claims for Declaratory Judgment, Avoidance and Recovery of Liens, Security Interests, Obligations, Fees, and Interest Payments, and Disallowance of Claims [Docket No. 3603].

Bankruptcy Code; and (iii) preferences arising from the billions of dollars of payments made by the T-side to insiders in the year before bankruptcy.  See, e.g., Energy Future Competitive Holdings Company LLC and Texas Competitive Electric Holdings Company LLC's Statement in Support of Intercompany Settlement in the Plan [Docket No. 4145], at Ex. 1 (Board Resolutions) p. 2 (indicating that the Prepetition Intercompany Claims consist of those set forth in the Munger Tolles presentation); Id. at Ex. B (Munger Tolles Presentation) (omitting any discussion of these claims).  Pursuant to the Stipulation and Agreed Order Extending Dates in Order Regarding a Protocol for Certain Case Matters [Docket No. 4012], the Ad Hoc Group may seek standing to commence any T-side claims on or before May 29, 2015.  To the extent any such standing is granted, whether as to omitted claims that the T-side Debtors seem to be abandoning, or the larger universe of claims they purport to settle without any creditor support, the confirmation schedule fails to provide any time for any litigation at all.

        3)        <u>Discovery is Improperly Sequenced</u>.  Perhaps because it has been calculated off of an arbitrary end date, the proposed timetable also fails to adequately account for a thoughtful, sequenced schedule.  For example:

- The Debtors propose to make the deadline for any party to file objections to the Disclosure Statement on June 17, two days after the deadline for the Debtors and other parties to respond to discovery requests regarding the Disclosure Statement (Proposed Schedule at ¶ 7(d)).  That period would leave parties insufficient time to incorporate any discovery in connection with the preparation of an objection to the disclosure statement.

- The Debtors propose an arbitrary deadline of September 9 for any motions to compel discovery responses or document production (other than as related to a privilege log), despite the fact that fact and expert discovery would still be ongoing as of that date (Proposed Schedule at ¶ 9(g)).  The Debtors also appear to suggest that all the deadlines in the proposed schedule will still be in effect regardless of any pending motions to compel or order by the Court regarding such motions.  Clearly, time needs to be allotted for resolution of discovery disputes.

10

- The Debtors propose to have the close of fact discovery occur on the same date as the close of expert discovery (both scheduled for October 9) (Proposed Schedule at ¶¶ 9(j) & 9(n)).  Likewise, the proposed schedule improperly requires expert witness disclosures to occur before the completion of depositions. (Proposed Schedule at ¶¶ 9(j) & 9(k))  These changes obviously prejudice the ability of non-Debtor parties to have their experts prepare reports based upon the full universe of available fact discovery in the possession of the Debtors.  For example, valuation reports would have to be submitted before any depositions are taken regarding the Debtors' business plan.  All fact depositions must be completed before expert reports are due.

- The Debtors' proposed schedule only allows 18 days for the preparation of rebuttal expert reports (with the initial exchange of expert reports on September 4 and the exchange of any rebuttal reports due on September 22) (Proposed Schedule at ¶ 9(l) & 9(m)).  That schedule provides experts with an insufficient amount of time to review the expert reports and prepare rebuttals to same.

4) <u>The Ad Hoc Group Should Have Full Discovery Rights</u>.  The proposed order, in numerous places, seeks to deprive the Ad Hoc Group of an independent right to participate in discovery and require it to participate through the TCEH unsecured creditors' committee.  The Ad Hoc Group, consisting of holders of over $2.7 billion in unsecured claims against the TCEH Debtors, should be permitted to participate in its own right as a party-in-interest.  As in the past, the Ad Hoc Group will continue to work with the TCEH unsecured committee to avoid any duplication of efforts and expense, but deserves its own voice.

## CONCLUSION

WHEREFORE, the Ad Hoc Group respectfully requests that the Court (i) deny the Motion; (ii) refrain from entering an order on the Motion at this time; (iii) grant the Motion subject to the changes set out herein; or (iv) grant such other and further relief as the Court may deem just and proper.

[*Remainder of page intentionally left blank.*]

Dated: Wilmington, Delaware
April 27, 2015

        FOX ROTHSCHILD LLP

By: */s/ L. John Bird*
Jeffrey M. Schlerf (No. 3047)
L. John Bird (No. 5310)
919 North Market St., Suite 300
Wilmington, DE 19801
Telephone: (302) 654-7444
Facsimile: (302) 463-4971
jschlerf@foxrothschild.com
lbird@foxrothschild.com

-and-

WHITE & CASE LLP
Thomas E Lauria (admitted *pro hac vice*)
Matthew C. Brown (admitted *pro hac vice*)
Southeast Financial Center, Suite 4900
200 South Biscayne Blvd.
Miami, FL 33131
Telephone: (305) 371-2700
Facsimile: (305) 358-5744
tlauria@whitecase.com
mbrown@whitecase.com

J. Christopher Shore (admitted *pro hac vice*)
Gregory M. Starner (admitted *pro hac vice*)
1155 Avenue of the Americas
New York, NY 10036
Telephone: (212) 819-8200
Facsimile: (212) 354-8113
cshore@whitecase.com
gstarner@whitecase.com

*Counsel to the Ad Hoc Group of TCEH Unsecured Noteholders*