## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) | Case No. 14-10979 (CSS) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | **Re: D.I. 4138, 4271, 4274, 4298,** |
| | ) | **4317, 4318, 4319, 4320,** |
| | ) | **4327, 4329, 4331, 4332** |

**DEBTORS' OMNIBUS REPLY TO OBJECTIONS AND
RESPONSES FILED IN CONNECTION WITH THE MOTION
OF ENERGY FUTURE HOLDINGS CORP., *ET AL.*,
FOR ENTRY OF AN ORDER SCHEDULING CERTAIN
HEARING DATES AND DEADLINES AND ESTABLISHING
CERTAIN PROTOCOLS IN CONNECTION WITH THE
CONFIRMATION OF DEBTORS' PLAN OF REORGANIZATION
AND THE APPROVAL OF DEBTORS' DISCLOSURE STATEMENT**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") file

this omnibus reply (this "Reply") in support of the *Motion of Energy Future Holdings Corp.,* et

al., *for Entry of an Order Scheduling Certain Hearing Dates and Deadlines and Establishing*

*Certain Protocols in Connection with the Confirmation of Debtors' Plan of Reorganization and*

*the Approval of Debtors' Disclosure Statement* [D.I. 4138] (the "Scheduling Motion") and in

response to the objections (collectively, the "Objections" and the parties to the Objections, the

"Objectors")[2] and statements (together, the "Statements")[3] related thereto.

---

[1] The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, for which joint administration has been granted, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

[2] The Objections were filed by (a) Alcoa Inc. ("Alcoa") [D.I. 4298] (the "Alcoa Objection"); (b) the EFH Committee [D.I. 4317] (the "EFH Committee Objection"); (c) Wilmington Savings Fund Society, FSB, as successor trustee ("TCEH Second Lien Indenture Trustee") [D.I. 4318] (the "TCEH Second Lien Objection"); (d) American Stock Transfer & Trust Company, LLC, as successor trustee ("EFH Notes Indenture Trustee")

**Preliminary Statement**

1.     The Scheduling Motion represents a critical step on the Debtors' path to confirmation.  The bulk of the responses to the Scheduling Motion largely acknowledge and reinforce what is self-evident—the necessity of the Scheduling Order[4] to provide an organizing structure for what, in the absence of hoped-for consensus, will be a complex litigation culminating in a multi-week contested confirmation hearing.

2.     Responses to the Scheduling Motion fall into four categories:  (a) a lone challenge to the very notion of a managed plan confirmation process;[5] (b) Objections seeking to raise issues not directly related to the Scheduling Motion;[6] (c) a handful of Objections seeking to modify the Scheduling Order to address parochial interests;[7] and (d) several responses that raise no substantive objection to the Scheduling Motion, but simply purport to reserve unspecified rights.[8]

3.     As to the first category, there is little dispute that a schedule is vital to the progress of these chapter 11 cases.  Only one Objector, the TCEH Unsecured Ad Hoc Group,

---

[D.I. 4319] (the "EFH Notes Objection"); (e) Computershare Trust Company, N.A. and Computershare Trust Company of Canada, as indenture trustee (the "EFIH Second Lien Notes Trustee") [D.I. 4320] (the "EFIH Second Lien Notes Objection"); (f) the ad hoc group of certain holders of unsecured TCEH notes (the "TCEH Unsecured Ad Hoc Group") [D.I. 4327] (the "TCEH Unsecured Ad Hoc Group Objection"); and (g) the ad hoc committee of certain holders of unsecured EFIH notes (the "EFIH Ad Hoc Committee") [D.I. 4332] (the "EFIH Ad Hoc Committee Objection").

[3]     The statements were filed by the ad hoc committee of certain unaffiliated holders of first lien secured claims against the TCEH Debtors (the "TCEH First Lien Ad Hoc Committee") [D.I. 4331] (the "TCEH First Lien Statement") and the TCEH Committee [D.I. 4329] (the "TCEH Committee Statement").

[4]     On April 24, 2015, the Debtors filed a revised version of the Scheduling Order [D.I. 4274].  Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Scheduling Motion or the version of the Scheduling Order filed on April 24, 2015.

[5]     The TCEH Unsecured Ad Hoc Group Objection.

[6]     The Alcoa Objection, EFH Committee Objection, EFH Notes Objection, EFIH Ad Hoc Committee Objection, and TCEH Second Lien Objection.

[7]     The Alcoa Objection, EFH Notes Objection, EFIH Second Lien Notes Objection, and TCEH Second Lien Objection.

[8]     The TCEH First Lien Statement and TCEH Committee Statement.

2

demands the outright denial of the Scheduling Order. But the key premise underlying the TCEH Unsecured Ad Hoc Group Objection—that the Debtors are blindly pushing their Plan and preferred reorganization structure to the exclusion of value-maximizing alternatives—is false. Indeed, as the TCEH Unsecured Ad Hoc Group is well aware, the Debtors and their professionals are devoting enormous resources to the ongoing exploration of a REIT-based alternative structure. These efforts are active, continuing, and collaborative.

4.    The Plan is the only comprehensive, global restructuring proposed to date in this case that has the support of the Debtors, including their disinterested directors. That being said, there is nothing in the Plan that excludes the possibility of modifying, or even replacing, the Plan with other consensual value-maximizing alternatives. As the Debtors have stated time and again, their overarching goal is to build consensus on a reorganization that maximizes value for all of the Debtors' estates.[9] The Scheduling Order is not only consistent with the Debtors' flexible approach, it embodies it by setting up a consensual mediation among the Debtors and, *inter alia*, the TCEH Unsecured Ad Hoc Group. But, while the Debtors explore alternatives, they must move forward in parallel. The ebbing of exclusivity and the enormous expense and strain on the Debtors' businesses dictate that this be so.

5.    The second category of Objections mischaracterizes the Debtors' plan process. Many are nothing more than disguised objections to the Disclosure Statement, which the Debtors will address at the hearing to approve the Disclosure Statement. Others are confirmation objections that the Debtors will address at confirmation. And still other Objections simply attempt to turn the established confirmation process on its head—for example, nothing in the

---

[9]    *See, e..g.*, Hr'g Tr. 37 Apr. 14, 2015 ("It's important to note that that optionality of the plan is designed to work hand in hand with the auction process while allowing flexibility to accommodate any other restructuring alternative that maximizes value.").

Bankruptcy Code or other applicable law requires the Debtors to seek settlement approval before confirmation; nor does the unsurprising inclusion of a fiduciary out undermine the viability of the inter-debtor settlement—between Debtor fiduciaries—embodied in the Plan and approved by the Debtors' respective disinterested directors and managers (the "DDs" and, such settlement, the "DD Settlement").

6.    The third category of Objections consists of proposed modifications to the Scheduling Order that are unnecessary, ill-advised, or inappropriate.  This category includes proposed changes to creditor cooperation provisions of the Scheduling Order, which are not needed and counterproductive, and a number of changes demanded by the TCEH Unsecured Ad Hoc Group in furtherance of their effort to essentially neutralize the effect of the Scheduling Order.

7.    At bottom, the Debtors have demonstrated the obvious need for a detailed schedule and set of protocols to assure a full and fair opportunity (several times as long as the Bankruptcy Code requires) for parties to participate in the confirmation process, while ensuring that the Debtors have a meaningful opportunity to pursue confirmation of the Plan within their statutory exclusivity periods.[10]    Indeed, *no party* has objected to key protocols intended to manage and streamline discovery and the Confirmation Hearing, including the institution of a time limit and chess clock, along with potential phasing of issues at the Confirmation Hearing. Accordingly, the Debtors respectfully request that the Court overrule the Objections and enter the Scheduling Order, as revised.

---

[10]    On February 2, 2015, the Court entered the *Second Order Extending the Debtors' Exclusive Periods to File a Chapter 11 Plan and Solicit Acceptances Thereof Pursuant to Section 1121 of the Bankruptcy Code* [D.I. 3504] (the "Second Exclusivity Order").  On April 14, 2015, the Debtors filed their Plan [D.I. 4142] and related Disclosure Statement [D.I. 4143].  The Debtors respectfully request that the Court take judicial notice of the entry of the Second Exclusivity Order and the filing of the Plan and Disclosure Statement.  Fed. R. Evid. 201(c)(2).

## Argument

I.  **THERE IS BROAD CONSENSUS REGARDING THE NEED FOR A SCHEDULING ORDER AND PROTOCOLS, AND THE TCEH UNSECURED AD HOC GROUP SHOULD NOT BE PERMITTED TO DERAIL THE PLAN PROCESS.**

   A.  **There is Near-Unanimous Agreement on the Need for a Scheduling Order and its Main Provisions.**

8.      The Objections and Statements reflect broad consensus in favor of the major elements of the proposed Scheduling Order and the Protocols provided for therein. *First*, parties largely agree that a scheduling order is appropriate and necessary to keep these cases moving toward confirmation:

- The TCEH Committee "submitted a statement of no objection" with a limited reservation of rights. TCEH Committee Statement, ¶ 1.

- "The EFH Committee does not object to the establishment of a schedule and discovery protocols in connection with the Plan" or "the dates set forth in" the Scheduling Order. EFH Committee Objection, ¶ 2.

- "The EFH Indenture Trustee does not dispute that a schedule and protocol should be implemented in connection with consideration of plans and disclosure statements in these cases." EFH Notes Objection, ¶ 21.

- "[T]he EFIH Second Lien Indenture Trustee appreciates the need for a scheduling order to allow the Plan and Disclosure Statement process to move forward." EFIH Second Lien Notes Objection, at 2.

- "The Ad Hoc Committee of TCEH First Lien Creditors generally supports the relief requested in the Scheduling Motion." TCEH First Lien Statement, at 2.

Cutting through the rhetoric and reservations of rights, of all the responses filed, only the TCEH Unsecured Ad Hoc Group objects to the entry of a scheduling order and protocol. This near unanimity is strong affirmation of what we all know—the utility, indeed necessity, of an order governing the Disclosure Statement Proceedings and Confirmation Proceedings in these sprawling chapter 11 cases. Most importantly, only one party (again, the TCEH Unsecured Ad Hoc Group) has specifically objected to the proposed November 2015 date for the

RLF1 11886404v.1

Confirmation Hearing.[11]   The remaining parties recognize that a November 2015 hearing date accomplishes the dual goals of giving the Debtors a chance to be heard on their Plan before their exclusivity period expires while providing ample time for discovery into potentially disputed issues.  Likewise, most of the Scheduling Order's interim dates have drawn no objection, while others have elicited only scattered criticism.

9.      *Second*, no party has objected to the key Protocols intended to manage and streamline discovery and the Confirmation Hearing.  Those key Protocols include reasonable limitations on the breadth of discovery, the institution of a time limit on the Confirmation Hearing, the use of a chess clock to govern the parties' use of time at the hearing, and the potential phasing of issues at the hearing.

### B.    Consensus Regarding the Scheduling Order is the Result of Extensive Negotiation and Stakeholder Feedback.

10.     These points of consensus reflect not only the inherent wisdom of an order to manage Disclosure Statement Proceedings and Confirmation Proceedings, but also the Debtors' hard work in developing a reasonable schedule and protocols, as described on the record at the April 14, 2015 hearing.  Hr'g Tr. 34–36 Apr. 14, 2015.  The Debtors first published many of the Scheduling Order's key milestones on *February 12, 2015*, and solicited feedback from the various major creditor constituencies in a number of telephonic and face-to-face meetings that covered both the plan term sheet approved by the co-CROs and the proposed schedule.  The Debtors subsequently updated the proposed dates for those milestones in a confidential distribution to key stakeholders' advisors on March 9, 2015.  Again, the Debtors solicited

---

[11]   Indeed, the TCEH First Lien Ad Hoc Committee and the TCEH Second Lien Notes Indenture Trustee conditioned their respective support for, and agreement not to object to, the Scheduling Order on the inclusion of a November 18, 2015 hearing date.  *Stipulation and Agreed Order Regarding the Adjournment of Standing Motions* [D.I. 4271] (the "Standing Stipulation"), ¶ 3.b.  *See also* EFH Committee Objection, ¶ 2 ("The EFH Committee does not object . . . to the dates set forth in the current version of the Scheduling Order.").

RLF1 11886404v.1

comments and, based on those comments, circulated a confidential, further revised draft schedule on March 27, 2015.   On April 3, 2015, consistent with the *Stipulation and Agreed Order Regarding a Protocol for Certain Case Matters* [D.I. 2051], the Debtors provided notice of their intent to file the Plan and related Disclosure Statement.   In the ensuing ten days, the Debtors further revised the proposed Scheduling Order in response to stakeholder comments.   Some stakeholders chose to engage on the schedule, others chose to ignore the Debtors' requests for feedback.

11.     On April 14, 2015, the Debtors filed the Scheduling Motion, after sharing and discussing drafts of the proposed schedule embodied in the Scheduling Order with various creditor constituencies over the course of more than two months.   Even after filing the Scheduling Motion, the Debtors continued discussions with various major creditor constituencies regarding the requested relief.   *See* TCEH Second Lien Objection, at 1–2.   Based on those discussions, the Debtors filed the *Notice of Filing of Amended Proposed Order Establishing a Confirmation Schedule and Appointing a Mediator* on April 24, 2015 [D.I. 4274].

12.     Given this background, any complaint that the Debtors have not listened attentively to stakeholder input, or that stakeholders have not had adequate time to consider the key terms of the proposed Scheduling Order, is nonsense.   The TCEH Unsecured Ad Hoc Group's assertion that "[t]he Debtors summarily refused to grant any extension" of the time to object to the Scheduling Motion, "citing the need to move the process forward on a confirmation hearing in November," is a rewriting of history.   TCEH Unsecured Ad Hoc Group Objection, ¶ 3.   To the contrary, in response to the TCEH Unsecured Ad Hoc Group's request late on Friday, April 24 to extend their Monday, April 27 objection deadline, the Debtors cited the above timeline and the creditors' ample opportunity to evaluate and provide feedback on the proposed

Scheduling Order, especially given the Debtors' 48-hour reply period (not to mention the looming hearing just a week later): "Unfortunately, after providing all of that additional time and input, we cannot extend the Monday deadline for objections on Friday, especially when we have a very tight deadline for a reply brief." Email from Mark McKane to counsel to the TCEH Unsecured Ad Hoc Group (Apr. 24, 2015, 6:57 p.m. EST).

C.    **The TCEH Unsecured Ad Hoc Group's Wholesale Objection to the Schedule and Protocol is Impractical and Baseless.**

13.    The TCEH Unsecured Ad Hoc Group stands alone in objecting to the establishment of any meaningful schedule in these cases. Their isolation on this issue is telling, and is the result of their reliance upon several false premises, including their foundational assertions:

- that continuing progress toward a confirmation hearing somehow precludes any discussion of alternative plans of reorganization, such as a plan based on a REIT structure, TCEH Unsecured Ad Hoc Group Objection, ¶¶ 11–12; and

- that the current Plan is a mere "placeholder" that is "wholly subject to change." *Id.* ¶ 12.

Both are untrue. *First*, the Debtors have made every effort—and will continue to make every effort—to entertain stakeholder proposals regarding revisions or alternatives to the Plan in order to help drive to consensus. That is every debtor's fiduciary obligation and it is one these Debtors take with the utmost seriousness. The Debtors' discussions regarding REIT structures with the TCEH Unsecured Ad Hoc Group and others are extensive and continual. The Scheduling Order will not impede such discussions in any way; to the contrary, the Scheduling Order will facilitate those discussions by imposing structure and reliable deadlines on the Disclosure Statement Proceedings and Confirmation Proceedings.

14.    *Second*, to the extent that the Plan includes certain open items, it does so only at the express request of the TCEH creditor groups. While the TCEH Unsecured Ad Hoc Group

denigrates the "flexibility" of the Plan, *Id.* ¶ 6, the Debtors and various parties, including the TCEH Unsecured Ad Hoc Group, agreed in the Standing Stipulation to remove key provisions resolving outstanding issues from the Plan, including certain dollar amounts and "the allocation of distributions on account of the TCEH Settlement Claims and the TCEH Equity Sharing Recovery" among the TCEH creditors.[12]   These numbers will be filled back in as agreed upon well before the Disclosure Statement Hearing. The Debtors are prepared to move forward to confirmation on that basis, subject, of course, to ongoing discussions and the Debtors' desire to reach the maximum consensus possible.

15.    At its core, the TCEH Unsecured Ad Hoc Group Objection urges the Court to refuse to schedule a hearing on the Plan so as to avoid interfering with the formulation of a hypothetical alternative creditor-led plan.[13]   Setting aside for a moment the Debtors' deep involvement in developing this potential alternative, this argument turns exclusivity on its head, and would amount to *creditor* exclusivity to pursue a preferred, if embryonic, plan without interference from the Debtors themselves. That is exactly the opposite of the well-understood goal of providing *debtors* with an "unqualified opportunity to negotiate a settlement and propose a plan of reorganization without interference from creditors and other interests." *In re Spansion, Inc.*, 426 B.R. 114, 110 (Bankr. D. Del. 2010).   The TCEH Unsecured Ad Hoc Group's argument also ignores the fact that all creditors, including the TCEH Unsecured Ad Hoc Group, have had more than a year to formulate and propose their own restructuring, and Debtors have gone to extraordinary lengths to facilitate discussion of numerous plan alternatives among all creditor constituencies.   But, despite those efforts, as of now, the Debtors' Plan, which it

---

[12]   *See* <u>Standing Stipulation</u>, ¶ 3.b.

[13]   *See* TCEH Unsecured Ad Hoc Group Objection, ¶ 12 (arguing that proceedings on the Plan "should not be permitted to distract from the work that is being done" on alternative structures).

exclusively had the right to file, is the only comprehensive Plan that has been proposed to date and that has the support of the Debtors, including their DDs.

16.     While the Debtors remain firmly committed to working with all creditor groups to develop consensus around a global plan of reorganization, including alternatives to the Debtors' Plan, the TCEH Unsecured Ad Hoc Group cites no authority for the proposition that a court should (or even could) delay a confirmation hearing—or the creation of a rational schedule for one—until after the debtor's exclusivity has expired for the sole purpose of promoting an alternative, nascent alternative plan.[14]  In short, the TCEH Unsecured Ad Hoc Group Objection fails to grapple with the fundamental principle underlying the Scheduling Motion: that "[f]or debtor exclusivity to have its full meaning in this case, the Debtors must have at least one opportunity to be heard on their Plan before [exclusivity expires]."  Scheduling Motion, ¶ 2. This Court should reject their effort to obstruct the Debtors' progress toward a confirmation hearing when the inevitable result will be to run out the clock on exclusivity.

## II.     OBJECTIONS UNRELATED TO THE SCHEDULING MOTION, OR SEEKING TO IMPOSE PROCEDURES NOT REQUIRED BY THE BANKRUPTCY CODE, SHOULD BE OVERRULED.

### A.     The "E-Side" Creditors' Demands Contravene Fundamental Corporate Governance and Bankruptcy Principles.

17.     The EFH Notes Indenture Trustee's and the EFH Committee's primary objections are in connection with the DD Settlement.  *First*, these parties flout foundational bankruptcy principles to argue that evaluation of the DD Settlement must take place on a separate track, with

---

[14]  Instead, the TCEH Unsecured Ad Hoc Group Objection simply misstates the law, arguing that the Third Circuit rejected the Debtors' view in *Century Glove*.  That case, which the TCEH Unsecured Ad Hoc Group obliquely acknowledges involved "a different context," in fact had nothing to do with the issues at hand.  Rather, it concerned a debtor's attempt to block creditors from even *circulating* alternative plan proposals during the debtor's exclusivity period. *See Century Glove, Inc. v. First Am. Bank of N.Y.*, 860 F.2d 94, 101–02 (3rd Cir. 1988).  The court's ruling that debtor exclusivity does not prevent informal consideration of alternative plans is completely unsurprising, and entirely inapposite.  Again, nothing in the Scheduling Order would prohibit creditors from bringing their own ideas to the negotiating table.

the DD Settlement to be approved at a discrete hearing that is outside and well in advance of the Confirmation Hearing. *Second*, ignoring the Bar Date Order and the practice of virtually every large chapter 11 debtor, they would require the Debtors to file proofs of claim reflecting intercompany liabilities (and amend the statements of financial affairs and schedules of assets and liabilities to the same effect). Such steps are unnecessary for the Debtors to proceed to confirmation and would provide little utility given the many telephonic and in-person conferences regarding potential intercompany claims with the Debtors and "E-side" and "T-side" constituencies, as well as voluminous materials made available in connection with the DD Settlement. Not only are these objections baseless and ill-placed in an objection to a scheduling motion, they also are nothing more than disguised objections to the Plan and the Disclosure Statement. The Scheduling Motion hearing is not the appropriate time to address such issues.[15]

> 1.    *The Debtors Will Satisfy Their Burden Regarding the DD Settlement at Confirmation and the Bankruptcy Code Does Not Require Them to Do So Beforehand.*

18.    To be clear, the Scheduling Motion does not seek any substantive relief with respect to the DD Settlement or the Plan. In these very dynamic chapter 11 cases, the Debtors have no doubt that various creditor constituencies will take issue with the DD Settlement in an effort to increase their own potential Plan recovery. Those challenges are appropriately raised in the context of confirmation.

19.    Settlements of actual or potential litigation (including intercompany litigation) are routinely included in plans of reorganization and considered in the context of confirmation

---

[15]    In addition to these concerns, the EFH Committee and the EFIH Ad Hoc Committee each assert that they should be included as Mediation Parties. The Debtors are in discussions with key stakeholders regarding an amendment to the Scheduling Order that would modify the terms of the Mediation to permit the Mediator, with the mutual consent of the Mediation Parties or in his or her own discretion, to expand the scope of the Mediation, including with respect to the addition of parties deemed necessary to address topics in the Mediation.

RLF1 11886404v.1

proceedings under section 1123(b)(3) of the Bankruptcy Code and Bankruptcy Rule 9019(a).[16] To require the Debtors to seek approval of the DD Settlement in advance of the Disclosure Statement Hearing would jettison this well-established approach and result in piecemeal evaluation of the Plan. The DD Settlement, while surely a significant aspect of the Plan, is only one provision in a Plan that seeks to globally resolve these immensely complex chapter 11 cases.

20.    To circumvent the fact that the Bankruptcy Code clearly allows a debtor to pursue a settlement at confirmation as part of a plan of reorganization, the Objectors attempt to cast the Debtors' fiduciary out as indicative of non-agreement relating to the DD Settlement amongst the DDs. Nothing could be farther from the truth. Anticipating the fluid nature of ongoing discussions between the Debtors and their creditor constituencies (and among creditor constituencies themselves), as well as allowing for subsequent developments in the cases and the Debtors' businesses, each of the DDs has reserved a fiduciary out that allows each DD, on behalf of the Debtor it represents, to withdraw from the DD Settlement if it is in that Debtor's interest to do so.

21.    The existence of the fiduciary out bears no relation to the merits of or ability to confirm the DD Settlement among the Debtors nor to the Debtors' commitment to the DD Settlement. Rather, the fiduciary out provides each DD with the essential ability to continue to evaluate their restructuring options. Indeed, creditors would likely argue that the DDs would

---

[16]    Indeed, harkening back to the holistic nature of plans of reorganization, section 1123(b)(3) of the Bankruptcy Code explicitly states that a plan of reorganization may include the "settlement or adjustment of any claim . . . belonging to the debtor or the estate." Similarly, Bankruptcy Rule 9019(a) permits the Debtors to settle prepetition claims, including as part of a plan of reorganization. *See also In re Washington Mutual, Inc.*, 442 B.R. 314 (Bankr. D. Del. 2011) (approving a settlement between the Debtors and the FDIC under Bankruptcy Rule 9019); *In re Nutritional Sourcing Corp.*, 398 B.R. 816 (Bankr. D. Del. 2008) (stating that settlements under Bankruptcy Rule 9019 may be incorporated into a plan of reorganization so long as they meet the "fair and equitable" standard under section 1129 of the Bankruptcy Code); *In re New Century TRS Holdings, Inc.*, 390 B.R. 140 (Bankr. D. Del. 2008) (finding that plan that constituted "a series of interrelated compromises that together comprise a global settlement of key intercompany and intercreditor disputes" satisfies the "fair and equitable" standard under section 1129 of the Bankruptcy Code).

RLF1 11886404v.1

*violate* their fiduciary duty to maximize the value of each of its estates if the DD Settlement did *not* contain a fiduciary out. Accordingly, any argument that the presence of the fiduciary out somehow requires the Court to first determine the "viability" of the DD Settlement from a Debtor perspective is absurd and does not provide a sufficient reason to modify the Scheduling Order.

> 2.      *Bankruptcy Law Does Not Require the Debtors to File Proofs of Claims in Order for the DD Settlement to Move Forward at Confirmation and, in Any Event, the "E-Side" Creditors Have Voluminous Information Regarding the Claims that are the Subject of the DD Settlement.*

22.      The "E-side" objectors seek to require the Debtors to file a proof of claim reflecting intercompany claims and amend the statements of financial affairs and schedules of assets and liabilities accordingly. As a preliminary matter, similar to virtually every large chapter 11 case, the order establishing the date by which claims arising from prepetition transactions, entered in these cases on August 18, 2014 [D.I. 1866] (the "Bar Date Order"), expressly states that the Debtors need not file proofs of claim with respect to intercompany claims.[17]

23.      Additionally, the Bankruptcy Code and established case law do not support the "E-side" assertion. The Third Circuit has affirmed a bankruptcy court settlement of litigation claims *in the absence of a filed proof of claim*. *In re Nutraquest, Inc.*, 434 F.3d 639, 645 (3d Cir. 2006) (noting in the context of affirming a settlement that a creditor's "failure to file a proof of claim . . . [was] irrelevant"); *see also Conley v. Sears, Roebuck & Co.*, 222 B.R. 181, 185 (D. Mass. 1998) (describing an approved settlement where certain parties did not have to file

---

[17]      *See, e.g., In re Visteon Corp.*, No. 09-11786 (CSS) (Bankr. D. Del. Sept. 11, 2009) (stating that the bar date requirements would not apply to any debtor holding a claim against another debtor); *In re Calpine Corp.*, No. 05-60200 (BRL) (Bankr. S.D.N.Y. Apr. 26, 2006) (stating that "any Debtor having a claim against another Debtor or any of the nondebtor subsidiaries" was not required to file a proof of claim); *In re Tribune Co.*, No. 08-13141 (KJC) (Bankr. D. Del. Mar. 26, 2009) (stating that "any Debtor asserting a claim against another Debtor" did not have to file a proof of claim with respect to such assertion).

a proof of claim to recover).  Moreover, courts have held that even where a proof of claim *has* been filed, an objection to that proof of claim does not otherwise prevent a debtor from seeking to settle the underlying claim.  *See, e.g.*, *In re Kaiser Aluminum Corp.*, 339 B.R. 91, 94–95 (D. Del. 2006) (holding that a bankruptcy court may approve a settlement of a proof of claim even though such proof of claim is the subject of a pending objection); *see also In re Heritage Organization, LLC*, 375 B.R. 230, 285 (Bankr. N.D. Tex. 2007) (same).

24.    In light of this established case law, it is hard to imagine what informational goal the filing of inter-Debtor proofs of claim would accomplish in these chapter 11 cases, especially where parties have received a tremendous amount of discovery, both formal and informal, related to prepetition transactions and potential related claims.  And that is a fundamental point: while these Objectors seek a separate discovery workstream on the DD Settlement because the Objectors allegedly have no ability to assess the merits of the DD Settlement, a number of undisputed facts in these chapter 11 cases directly contradict that assertion, including the following:

- **_Legacy Discovery Protocol_**. All of the Objectors (with the exception of Alcoa) are party to the Legacy Discovery Protocol, through which the Debtors have produced over 800,000 documents comprising more than 5 million pages relating in significant part to transactions that may give rise to intercompany claims. These documents directly inform the DD Settlement and are intended, in part, to give creditor constituencies an opportunity to independently evaluate any settlement of intercompany claims.

- **_Docketed Analyses_**. In connection with the Plan filing, each of the DDs, through their advisors, filed statements of support that attached minutes of the DDs-only Board sessions approving the Plan filing, identified intercompany claims included in the DD Settlement, and disclosed the DDs' analysis of proposals and counterproposals between the DDs and their respective advisors.[18] Again, these materials provide transparency regarding the process

---

[18]    *See Statement of the Disinterested Directors of Debtor Energy Future Holdings Corp. Regarding Proposed Settlement of Conflict Matters as Part of Proposed Plan of Reorganization* [D.I. 4147]; *Energy Future Intermediate Holdings Company LLC's Statement in Support of Intercompany Settlement in the Plan* [D.I. 4146]; *Energy Future Competitive Holdings Company LLC and Texas Competitive Electric Holdings*

of the DD Settlement and allow parties to independently evaluate the DD Settlement.

- ***Discussions Regarding Intercompany Claims.*** Like their "T-side" counterparts, the "E-side" Objectors have been party to countless in-person and telephonic conferences regarding potential intercompany claims. The "T-side" constituencies are required under the case matters protocol entered by the Court on September 16, 2014 [D.I. 2051] (as amended, the "<u>Case Matters Protocol</u>") to disclose a list of intercompany claims which such constituencies intend to seek standing to prosecute by April 30, 2015—twenty-four hours from now. The "T-side" constituencies have not requested a further extension of this deadline. If the "T-side" constituencies are prepared to disclose those intercompany claims that they believe require standing to prosecute, it defies logic to say that the "E-side" constituencies—who have had access to the same materials and been party to many of the same calls and meetings—have no ability to evaluate potential intercompany claims or the DD Settlement.

25. Put simply, nothing requires the Debtors to take the additional step of filing proofs of claims or amending their schedules to account for the intricacies of the claims addressed in the DD Settlement. Imposing such a requirement would only have the effect of potentially delaying confirmation with little or no perceivable benefit to any party in interest, including the Court. All parties, whether on the "E-side" or the "T-side," are afforded a full opportunity under the Scheduling Order to vet the DD Settlement and to put the Debtors (and the DDs as to conflict matters) to their proof at confirmation.

**B.      Other Attempts to Inject Issues Unrelated to the Relief Requested in the Scheduling Motion Are Inappropriate and Should be Dismissed.**

26. The EFH Committee Objection inappropriately demands discovery on the valuation of the TCEH Debtors' estates as part of the Disclosure Statement Proceedings. That is premature and unnecessary. As is typical in many chapter 11 cases, enterprise valuation issues will be addressed as part of the Confirmation Proceedings (and parties will have access to

---

*Company LLC's Statement in Support of Intercompany Settlement in the Plan* [D.I. 4145]. The materials included in these statements are voluminous and include detailed descriptions and analyses regarding the claims addressed in the DD Settlement.

RLF1 11886404v.1

valuation materials well in advance of those proceedings), and it would be unusual indeed to address issues of valuation before confirmation.[19]

27.     The EFIH Second Lien Notes Objection asserts that the Debtors should be required to file a revised Disclosure Statement in advance of the deadline to object to the Disclosure Statement.   Discussions with creditor constituencies are ongoing; imposing an artificial deadline would force the Debtors to file a premature revised Disclosure Statement that may not appropriately reflect the state of discussions.   The Debtors have encouraged their various creditor constituencies to identify their concerns regarding the filed Disclosure Statement in an effort to have a focused discussion and, hopefully, file a responsive revised Disclosure Statement.[20]   In any event, the Debtors will be fully prepared to carry their burden under section 1125 of the Bankruptcy Code at the hearing to approve the Disclosure Statement.   As is true in every large chapter 11 case, the Debtors are, and will be seeking, feedback and multiple comments to the Disclosure Statement are to be expected.

28.     Next, the EFH Notes Indenture Trustee requests that the Court use the Scheduling Order to compel the Debtors to provide Oncor bid values and other bid information.   EFH Notes Objection, ¶ 27.   This is a brazen attempt to collaterally attack an order of the Court and relitigate a settled issue.[21]   After four days of evidentiary hearings and countless pages of briefing, the

---

[19]   *See, e.g.*, *In re Spansion, Inc.*, 426 B.R. 114, 126 (Bankr. D. Del. 2010) (stating valuation was "appropriately considered as an objection to confirmation"); *In re Exide Tech.*, 303 B.R. 48, 69 (Bankr. D. Del. 2003) (discovery of valuation issues included in schedule for confirmation proceedings).

[20]   The EFIH Second Lien Notes Trustee also raises an issue with respect to the voting record date, which the Debtors are not asking the Court to approve in connection with the Scheduling Motion, but which will be heard in connection with Court approval of the Disclosure Statement. Nonetheless, in an effort to consensually resolve certain of the EFIH Second Lien Notes Trustee's objections, the Debtors intend to revise the proposed order with respect to the Disclosure Statement Motion to make the voting record date the same date as the start of the hearing to approve the Disclosure Statement.

[21]   In fact, the EFH Notes Indenture Trustee's request in its Objection is substantively no different from the relief that the EFH Committee has sought in the motion filed on April 23rd [D.I. 4260] together with a related motion to shorten notice [D.I. 4259]. The Court, *sua sponte*, entered an order denying the motion to shorten notice [D.I. 4267], and the EFH Notes Indenture Trustee should not now be permitted to use its Objection to the

Court ruled that it would "limit the creditors' participation to the two official committees of unsecured creditors" and that "participation will be limited to a professional eyes only basis." Hr'g Tr. 20:2-10 Nov. 3, 2014.  Consistent with this ruling, the Bidding Procedures Order provides that, subject to the above exception, "in no event will the Debtors be required to provide any information regarding the Bid Values . . . to any creditor."  Bidding Procedures Order [D.I. 3295], ¶ 9(d).

29.    There is no justification for the drastic relief of altering the Bidding Procedures Order months later.  Indeed, the Trustee's only asserted basis is that the Debtors have filed a plan of reorganization.  Yet the Debtors have been clear from the beginning that they intended to pursue a plan in parallel with the sealed stalking horse process—and the Trustee's *own* statement of support for the bidding procedures contemplated as much.  EFH Notes Indenture Trustee Statement in Support [D.I. 2446], at 2.  Suffice it to say, the EFH Notes Indenture Trustee's self-contradictory request to alter this Court order is baseless.  *See McGillis/Eckman Investments-Billings, LLC v. Sportsman's Warehouse, Inc. (In re Sportsman's Warehouse, Inc.),* 457 B.R. 372, 394 (Bankr. D. Del. 2011) (Sontchi, J.) (noting that relief from an entered court order requires "extraordinary circumstances," absent an enumerated basis).  Moreover, the Debtors' Plan is designed to operate regardless of the value received for Oncor.  While the bid values might determine actual recoveries in some instances, they do not bear on claim amounts and therefore will not assist the EFH Committee in evaluating the claim settlements proposed in the Plan.

30.    The EFH Notes Indenture Trustee also demands that procedures be established for the "prompt determination" of prepayment and makewhole claims against EFH Corp.  This

Scheduling Motion to achieve the same relief that the Court just denied.  The EFH Notes Indenture Trustee may, of course, file a separate motion (like the EFH Committee) seeking such relief at a later hearing (understanding that the Debtors likely will object to such relief).

request has nothing to do with the Scheduling Order. Nothing before or after entry of the Scheduling Order would preclude the EFH Notes Indenture Trustee from taking action, as the indenture trustee for the EFIH first lien notes did when it filed an adversary proceeding seeking a determination as to its makewhole claim in May 2014.[22]  Moreover, the Plan provides for a treatment of the EFH Notes Indenture Trustee's makewhole claim—thus, to the extent the EFH Notes Indenture Trustee is opposed to the proposed treatment, such challenges can be raised as part of confirmation.

31.     Finally, the TCEH Unsecured Ad Hoc Group insists that the schedule must be extended and modified to provide a timetable for potential resolution of intercreditor disputes and potential derivative litigation of inter-Debtor claims.  TCEH Unsecured Ad Hoc Group Objection, ¶ 13.2.  These objections are red herrings.  The Plan that is on file provides for such a resolution and any objection to these resolutions can and should proceed in parallel with confirmation.  They are not cause to hold up or delay progress toward a confirmation hearing, especially when there is no guarantee that creditors will obtain standing to prosecute derivative claims and it is well-established that a debtor can seek approval of a settlement of claims even where a third party has obtained standing to pursue those claims.

## III.    THE SUGGESTED LINE-ITEM MODIFICATIONS TO THE SCHEDULING ORDER ARE UNNECESSARY AND INAPPROPRIATE.

### A.    The Provisions of the Scheduling Order Requiring Coordination of Discovery Do Not Impinge on Any Creditors' Rights.

32.     The Scheduling Order encourages coordination of discovery requests so as to avoid unnecessary and duplicative discovery.  In particular, paragraph 27 tasks the Creditors' Committees with coordinating discovery requests for all unsecured creditors.  This provision was

---

[22]  Complaint for Declaratory Relief, *CSC Trust Co. of Delaware, as Indenture Trustee v. Energy Future Intermediate Holding Co. LLC*, No. 14-50363 (Bankr. D. Del. May 15, 2014), ECF No. 1.

modeled directly from the Legacy Discovery Protocol, which placed the TCEH Committee in a similar role as discovery facilitator and intermediary.  Legacy Discovery Protocol [D.I. 1832], ¶ 5. No party has claimed that this procedure was ineffective in legacy discovery.

33.     Nevertheless, the TCEH Unsecured Ad Hoc Group claims that the protocol would "deprive the Ad Hoc Group of an independent right to participate in discovery and require it to participate through the TCEH unsecured creditors' committee," TCEH Unsecured Ad Hoc Group Objection, ¶ 11, while the EFIH Ad Hoc Committee asserts that the coordination provision could be read to grant the Creditors' Committees a "veto right" over discovery.[23] These arguments are contradicted by the plain language of the coordination provision, which expressly provides:  "After consulting with the Creditors' Committees, nothing herein shall preclude any unsecured creditor that is a Participating Party from directly seeking any permissible discovery from the Debtors and any non-Debtor Participating Party" on issues not covered by discovery requests submitted by the Creditors' Committees. Scheduling Order, ¶ 27.

34.     The EFIH Ad Hoc Committee expresses concern that the coordination provision is "unclear" and fails to articulate whether the respective Creditors' Committees will serve separate requests, or how those requests will be divided.  EFIH Ad Hoc Committee Objection, ¶ 3.

35.     The simple answer is that the Scheduling Order is silent on those issues—while it requires coordination between the Creditors' Committees to avoid duplicative and wasteful discovery requests, it does not dictate joint requests and does not impose any allocation of requests.    These are issues regarding which ad hoc creditor groups and the Creditors'

---

[23]  Notably, the EFIH Ad Hoc Committee "agrees that coordination amongst the parties to streamline the confirmation process is a worthwhile endeavor."  EFIH Ad Hoc Committee Objection, ¶ 1.

Committees, in keeping with the coordination provision, may agree to an arrangement that works for them.

**B.    The Court Should Reject the TCEH Unsecured Ad Hoc Group's Proposed Modifications, Which Only Serve To Undermine The Goals Of The Scheduling Order.**

36.    After first arguing that the Scheduling Order should be rejected, the TCEH Unsecured Ad Hoc Group next proposes a series of modifications to the Scheduling Order that would accomplish the same goal. Each of their proposed modifications would significantly weaken the effect of the Scheduling Order.

37.    *First*, they urge the Court to "strike the provisions in the proposed order purporting to 'strongly encourage' the parties to refrain from engaging in discovery." TCEH Unsecured Ad Hoc Group Objection, ¶ 13.1. That is a mischaracterization—no such provisions exist. Presumably they mean the provisions in which the Court would "strongly encourage[] the parties to resolve all evidentiary disputes before the hearing on confirmation of the Plan and strongly discourage[] the parties from pursuing expensive, time-consuming, and unnecessary discovery or litigation regarding the Plan." *Id.* ¶ 8. The Debtors cannot fathom an objection to such a provision.

38.    *Second*, the TCEH Unsecured Ad Hoc Group demands various revisions to the dates in the Scheduling Order, each of which the Court should reject. *Id.* ¶ 13.3.

- They claim that the schedule provides insufficient time to incorporate the Debtors' responses to discovery into their objections to the Disclosure Statement. They do not articulate any basis to tie their objection deadline to the Debtors' discovery responses, and doing so would make little sense. The Debtors have already encouraged all stakeholders to share any concerns regarding the Disclosure Statement, a process that will largely preempt and complement Disclosure Statement discovery. And creditors already have the benefit of massive document productions from the Debtors during Legacy Discovery.

- They argue that the September 9, 2015 deadline for "motions to compel discovery responses and document production," not including motions based on a privilege log, is "arbitrary," and imply that it should be later and that all other deadlines should be adjourned while a motion to compel is pending. This deadline comes more than a month after the completion of document discovery, giving Participating Parties ample time to identify (and hopefully resolve) disputes. The TCEH Unsecured Ad Hoc Group's implied revisions would potentially allow them to wreak havoc by filing substantial motions to compel on the eve of the deadline and shortly before the Confirmation Hearing.

- They argue that closing fact and expert discovery on the same day will prejudice their experts' ability to incorporate fact witness testimony into their opinions. But nothing in the Scheduling Order requires parties to wait until the end of fact discovery to take depositions. Depositions may be noticed as early as May 11, 2015, while expert reports are not due until September 4, 2015. If they believe a witness's testimony is a necessary foundation for their expert reports, they have ample time to seek that deposition in advance.

- They complain that the Scheduling Order allows "only" eighteen days for expert rebuttal expert reports. Two-and-a-half weeks is sufficient time for rebuttal reports, and this deadline applies equally to the Debtors.

**C.    Alcoa's Objections are Inappropriate and Should be Overruled.**

39.    In addition to the overall timing considerations addressed in the Objections, Alcoa, a contract counter-party, objects to certain of the timing aspects reflected in the Scheduling Order. The bulk of Alcoa's concerns, however, have nothing to do with the Scheduling Motion, as Alcoa raises issues that will be addressed at the Disclosure Statement Hearing or the Confirmation Hearing. In any event, Alcoa's request for bespoke treatment up to and during confirmation is without merit and should be overruled.

> *1.    Alcoa Fails to Establish that a Fourteen Day Review Period is Insufficient.*

40.    Without citing to any provision in the Bankruptcy Code or case law, Alcoa seeks, with respect to timing, compelled advanced notice of the Debtors' proposed treatment of its contracts with the Debtors (collectively, the "Alcoa Contracts"), including cure amounts, as of

21

the approval of the Disclosure Statement. Alcoa also seeks a hearing separate and apart from the Confirmation Hearing if it so chooses to object to the treatment of the Alcoa Contracts.

41.    To say these requests are extraordinary is an understatement and the Debtors respectfully request that the Court overrule them in their entirety. Alcoa is just one of literally thousands of contract counterparties with contracts yet to be assumed or rejected by the Debtors. Allowing the accommodations and privileges Alcoa seeks would open the floodgates to other counterparties seeking similar relief, potentially straining the Debtors' (and the Court's) limited time resources.

42.    Additionally, the only issue Alcoa actually raised to justify the relief sought is the complexity of the Alcoa Contracts, despite the fact that many of the Alcoa Contracts have already been the subject of Bankruptcy Court relief and despite the near-constant communication between the Debtors and their advisors, and Alcoa and its advisors (including a meeting currently scheduled at Alcoa's request on May 1, 2015 to be attended by key personnel from, and advisors to, the Debtors and Alcoa).[24]

43.    Finally, and although not the subject of the Scheduling Motion, the fourteen days' notice that the Debtors intend to provide between the filing and noticing of the plan supplement and the plan objection deadline is sufficient and is no less time than would be provided if the Debtors decide to assume or reject the Alcoa Contracts by motion.[25] In fact, plans confirmed in

---

[24]    *See, e.g., Order Approving the Assumption of Certain Unexpired Leases by and Among Luminant Generation Company LLC, Luminant Mining Company LLC, Sandow Power Company LLC, and Alcoa, Inc.* [D.I. 2759] (assuming certain leases with carve-outs for continuing discussions on possible defaults) (the "Lease Assumption"); *Order Approving the Stipulation by and Among Luminant Generation Company LLC, Luminant Mining Company LLC, Sandow Power Company LLC, and Alcoa, Inc.*[D.I. 2002] (stipulating to setoff of certain prepetition and postpetition claims) (the "Setoff Stipulation"). Alcoa's entry into the Setoff Stipulation and negotiations involving the Lease Assumption suggest intimate knowledge and familiarity of the Alcoa Contracts.

[25]    *See* Local Bankruptcy Rule 9006-1(c)(ii) (providing that movant may provide an objection deadline to a motion that is no earlier than fourteen days after the date of service of a motion).

many cases, including some of the largest cases ever filed—like *Lehman* and *AMR*—required the

debtors to provide fourteen days' notice (or *less*) before the plan objection deadline of the

debtors' proposed treatment of executory contracts and unexpired leases:

| Case[26] | Number of Days Plan Supplement Filed Before Plan Objection Deadline[27] |
|---|:---:|
| *In re Source Home Entm't,*<br>No. 14-11553 (Bankr. D. Del. Jan. 12, 2015). | 14 |
| *In re Endeavour Operating Corp.,*<br>No. 14-12308 (Bankr. D. Del. Dec. 22, 2014). | 7 |
| *In re MacKeyser Holdings, LLC,*<br>No. 14-11550 (Bankr. D. Del. Dec. 15, 2014). | 0 |
| *In re GSE Envtl., Inc.,*<br>No. 14-11126 (Bankr. D. Del. June 13, 2014). | 7 |
| *In re MaxCom Telecomunicaciones,*<br>No. 13-11839 (Bankr. D. Del. Aug. 25, 2013). | 5 |
| *In re Synagro Techs., Inc.,*<br>No. 13-11041 (Bankr. D. Del. July 18, 2013). | 4 |
| *In re Penson Worldwide,*<br>No. 13-10061 (Bankr. D. Del. June 7, 2013). | 10 |
| *In re AMR Corp.,*<br>No. 11-15463 (Bankr. S.D.N.Y. June 7, 2013). | 10 |
| *In re Lehman Bros. Holdings, Inc.,*<br>No. 08-13555 (Bankr. S.D.N.Y. Sept. 1, 2011). | 10 |
| *In re Appleseed's Intermediate Holdings LLC,*<br>No. 11-10160 (Bankr. D. Del. Mar. 1, 2011). | 5 |

---

[26] The cases listed herein refer to the orders approving the disclosure statements. Because of the voluminous nature of these orders, they are not attached to this Reply. Copies of these orders are available upon the request of the Debtors' counsel.

[27] *Source Home Entm't* and *MaxCom Telecomunicaciones* refer to days before the confirmation hearing, not the plan objection deadline.

RLF1 11886404v.1

| Case[26] | Number of Days Plan Supplement Filed Before Plan Objection Deadline[27] |
|---|---|
| *In re Masonite Corp.*, No. 09-10844 (Bankr. D. Del. Apr. 17, 2009). | 3 |

        2.     *Alcoa's Involvement in the Mediation Process is Unnecessary at Best and Wasteful at Worst.*

44.     Alcoa also asks for an opportunity to involve itself in the Mediation and discovery process. The Debtors seriously question what value, if any, Alcoa could bring to the Mediation. To the extent the Debtors assume the Alcoa Contracts, the mediation will be meaningless because Alcoa's allowed claims will be paid in full. *See* 11 U.S.C. 365(b)(1)(a) (requiring the Debtors to cure all defaults of its assumed contracts). To the extent the Debtors reject Alcoa Contracts and Alcoa has a prepetition claim under section 365(g) of the Bankruptcy Code, Alcoa's interests as an unsecured creditor will be more than adequately represented by the TCEH Committee, which is a fiduciary for all unsecured interests at the TCEH Debtors' estates. Plan mediation is intended to advance these chapter 11 cases holistically and Alcoa, given its admittedly very narrow parochial interests, would do little to advance Plan mediation efforts.

### Conclusion

45.     For the reasons set forth above and in the Scheduling Motion, the Debtors respectfully request that the Court overrule the Objections and grant the relief requested in the Scheduling Motion in accordance with the revised version of the Scheduling Order.

*[Remainder of page intentionally left blank.]*

RLF1 11886404v.1

Dated: April 29, 2015
Wilmington, Delaware

**RICHARDS, LAYTON & FINGER, P.A.**
Mark D. Collins (No. 2981)
Daniel J. DeFranceschi (No. 2732)
Jason M. Madron (No. 4431)
920 North King Street
Wilmington, Delaware 19801
Telephone:     (302) 651-7700
Facsimile:     (302) 651-7701
Email:         collins@rlf.com
               defranceschi@rlf.com
               madron@rlf.com

-and-

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Edward O. Sassower, P.C. (admitted *pro hac vice*)
Stephen E. Hessler (admitted *pro hac vice*)
Brian E. Schartz (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022-4611
Telephone:     (212) 446-4800
Facsimile:     (212) 446-4900
Email:         edward.sassower@kirkland.com
               stephen.hessler@kirkland.com
               brian.schartz@kirkland.com

-and-

James H.M. Sprayregen, P.C. (admitted *pro hac vice*)
Marc Kieselstein, P.C. (admitted *pro hac vice*)
Chad J. Husnick (admitted *pro hac vice*)
Steven N. Serajeddini (admitted *pro hac vice*)
300 North LaSalle
Chicago, Illinois 60654
Telephone:     (312) 862-2000
Facsimile:     (312) 862-2200
Email:         james.sprayregen@kirkland.com
               mkieselstein@kirkland.com
               chad.husnick@kirkland.com
               steven.serajeddini@kirkland.com

Co-Counsel to the Debtors and Debtors in Possession