## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) | Case No. 14-10979 (CSS) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | **Hearing Date:  June 1, 2015 at 10:30 a.m.** |
| | ) | **Objection Deadline:  May 26, 2015 at 4:00 p.m.** |

**THIRD MOTION OF ENERGY FUTURE HOLDINGS CORP., *ET AL.*,
FOR ENTRY OF AN ORDER EXTENDING THE DEBTORS' EXCLUSIVE
PERIODS TO FILE A CHAPTER 11 PLAN AND SOLICIT ACCEPTANCES
THEREOF PURSUANT TO SECTION 1121 OF THE BANKRUPTCY CODE**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") file this motion (this "Motion") for entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Order"), (a) extending the periods during which the Debtors have the exclusive right to file a chapter 11 plan to the end of the statutory period provided by section 1121 of the Bankruptcy Code, through and including October 29, 2015 (the "Filing Exclusive Period"), and (b) extending the Filing Exclusive Period for an additional 60 days to solicit votes on such a chapter 11 plan, as provided by section 1121 of the Bankruptcy Code, through and including December 29, 2015 (such extension, the "Soliciting Exclusive Period" and, together with the Filing Exclusive Period, the "Exclusive Periods").  In support of this Motion, the Debtors submit the *Declaration of Paul Keglevic in Support of the Third Motion of Energy Future Holdings Corp.,* et al.*, for Entry of an Order Extending the Debtors' Exclusive Periods to File a Chapter*

---

[1]    The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810.  The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201.  Due to the large number of debtors in these chapter 11 cases, for which joint administration has been granted, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

*11 Plan and Solicit Acceptances Thereof Pursuant to Section 1121 of the Bankruptcy Code* (the "Keglevic Declaration").  In further support of this Motion, the Debtors respectfully state as follows.

### Preliminary Statement[2]

1.    The Court should extend the Exclusive Periods.  The Debtors have made substantial progress in these chapter 11 cases since the last extension of exclusivity.  Most importantly, on April 14, 2015, the Debtors filed a proposed plan of reorganization, a related disclosure statement, and a scheduling motion for the disclosure statement and confirmation proceedings (the "Plan," the "Disclosure Statement," and the "Scheduling Motion," respectively).  The Debtors will use the extension of the Exclusive Periods to advance the Plan and their other initiatives to a value-maximizing outcome for these cases.

2.    The Plan was the result of months of efforts by the Debtors, including their disinterested directors and managers and their respective advisors.  The Debtors reviewed and considered every significant creditor proposal in these chapter 11 cases, and the Plan reflects in part the Debtors' attempts to coalesce these concepts—and their own—into a cohesive whole.  The Plan also reflects a comprehensive settlement of intercompany claims among the estates that was the product of months of diligence and negotiations by the disinterested directors and managers and their advisors (the "Interdebtor Settlement").  Importantly, the Plan and the settlements it contains are designed with the requisite legal and fiduciary flexibility to accommodate the ultimate form of EFH-EFIH Transaction as well as further creditor input.  As a result, the Plan is a robust and actionable solution to these chapter 11 cases.

---

[2]    Capitalized terms used but not otherwise defined in this Preliminary Statement shall have the meaning ascribed to them elsewhere in the Motion.

2

3.    At the same time, the Debtors have continued to advance the auction process for the EFH-EFIH Transaction.  The Debtors received second round bids from bidders in the auction process, and they are currently negotiating with the parties to develop a stalking horse bid for the Debtors' indirect economic interests in Oncor.  Thereafter, the stalking horse bid will be subject to an open marketing and auction process that will culminate in the selection of the highest or otherwise best transaction that both maximizes distributable value under the Plan and provides certainty of closing.

4.    The Debtors have also gone to great lengths to facilitate the efforts of key creditor constituencies to develop alternative plan structures premised on converting Oncor to a real estate investment trust (or "REIT") structure.  The prospect of a REIT conversion, which has been known to the Debtors and their stakeholders for some time, implicates a host of regulatory and implementation considerations, particularly if it is required as a condition to consummation of a Plan.  Regardless, the Debtors, in accordance with their fiduciary duties, have considered and will continue to consider any creditor proposal in light of the risks and benefits to their estates, and in the context of the existing marketing process for the EFH-EFIH Transaction.

5.    In addition, based on the Court's ruling at the May 4, 2015 hearing, the Debtors will soon submit to the Court an amended order with respect to the Scheduling Motion (the "Scheduling Order").  The Scheduling Order will (a) establish July 20, 2015, as the hearing date to consider approval of the Disclosure Statement; (b) approve a number of related discovery protocols and dates; and (c) establish the terms of Plan mediation between the Debtors and the TCEH creditor constituencies.  Thus, the Scheduling Order will provide the Debtors and their stakeholders with an immediate path forward for the Disclosure Statement.  To allow discussions

3

among the Debtors and their various stakeholders to continue, the Court reserved judgment on establishing a Plan confirmation timeline until the scheduling conference on June 25, 2015.

6.     The Debtors have also made meaningful progress with their major creditor constituencies to build consensus for both the process and substance of the Debtors' reorganization. The progress was most recently embodied in the TCEH Stipulation, which reflects the support of every major creditor TCEH constituency and touches on various important Plan process issues. The TCEH Stipulation allowed for an adjournment of the motions filed by the Official Committees and the TCEH Unsecured Ad Hoc Group, seeking standing to prosecute claims against the ad hoc group of TCEH first lien creditors (the "TCEH First Lien Creditors") (the "Standing Motions"). In addition, the TCEH Stipulation laid the groundwork for a Plan mediation process among the Debtors and TCEH creditor constituencies that is incorporated in the Scheduling Order. As with the filing of the Plan itself, the Debtors are hopeful that Plan mediation will facilitate constructive negotiations, develop additional consensus around the Plan, and reduce or avoid potential litigation. During the remaining exclusivity period, it is important that the Plan mediation be focused on the Debtors' Plan and not be sidetracked.

7.     The preservation of the Debtors' Exclusive Periods is critical to capitalize on all the momentum built since entry of the Second Extension Order. As noted, the Plan has the built-in flexibility to allow the Debtors to incorporate the outcome of both the ultimate EFH-EFIH Transaction and the Debtors' negotiations with their creditors. The Scheduling Order will provide a framework for these negotiations, but at the same time will ensure that, if these negotiations are unsuccessful, these cases will keep moving forward and parties will have a forum to raise any objections. An extension of the Exclusive Periods is integral to these efforts.

8.      On the other hand, allowing the Exclusive Periods to lapse at this time would, among other things, undermine these efforts and the spirit of the Scheduling Order.  The filing of independent plans by various factions would distract stakeholders and diminish the incentive for collaboration.  It would also create uncertainty around the Debtors' ability to exit from chapter 11 in a reasonable timeframe and around the EFH-EFIH Transaction process.  The estates would suffer as a result.

9.      For these reasons, the Debtors submit that the Court should approve an extension of the Filing Exclusive Period to October 29, 2015, and an extension of the Soliciting Exclusive Period to December 29, 2015.

**Jurisdiction and Venue**

10.      The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Debtors consent pursuant to rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Bankruptcy Rules") to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

11.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

5

12.     The bases for the relief requested in this Motion are section 1121(d) of the Bankruptcy Code (the "Bankruptcy Code"), rule 9006 of the Federal Rules of Bankruptcy Rules (the "Bankruptcy Rules"), and Local Bankruptcy Rule 9006-2.

## Relief Requested

13.     The Debtors seek entry of an order extending (a) the Filing Exclusive Period through and including the statutory period provided by section 1121 of the Bankruptcy Code, to October 29, 2015, and (b) the Soliciting Exclusive Period through and including December 29, 2015.

## Background

14.     On April 29, 2014 (the "Petition Date"), each of the Debtors filed a voluntary petition with the Court under chapter 11 of the Bankruptcy Code.  The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  The Court has entered a final order for joint administration of these chapter 11 cases [D.I. 849].  The Court has not appointed a trustee.  On May 13, 2014, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") formed an official committee of unsecured creditors of Energy Future Competitive Holdings Company LLC ("EFCH"), Texas Competitive Electric Holdings Company LLC ("TCEH"), the direct and indirect Debtor subsidiaries of EFCH and TCEH (together with EFCH and TCEH, the "TCEH Debtors"), and EFH Corporate Services Company (the "TCEH Creditors' Committee") [D.I. 420].  In addition, on October 27, 2014, the U.S. Trustee formed an official committee of unsecured creditors of Energy Future Holdings Corp. ("EFH Corp."), Energy Future Intermediate Holding Company, LLC ("EFIH"), EFIH Finance, Inc., and EECI, Inc. (the "EFH Creditors' Committee" and, together with the TCEH Creditors' Committee, the

RLF1 11960207v.1

"Official Committees") [D.I. 2570].  Further information regarding the Debtors' business operations and capital structure is set forth in the declaration of Paul Keglevic in support of the Debtors' first day motions [D.I. 98].

15.    Currently, the Filing Exclusive Period runs through and including June 23, 2015, and the Soliciting Exclusive Period runs through and including August 23, 2015.[3]  This Motion comes approximately three months after entry of the Second Extension Order.  As described below, in the past three months, the Debtors have achieved some of the most important milestones in these chapter 11 cases to dates, including:  (a) developing and filing a global plan of reorganization, together with a related disclosure statement; (b) advancing the EFH-EFIH Transaction (as defined herein) and discussions with various creditor constituencies and potential bidders; (c) negotiating a stipulation with every major TCEH creditor constituency that addresses a number of plan process issues (the "TCEH Stipulation"); and (d) developing consensus around a scheduling order that will provide clarity on a path forward in these chapter 11 cases and, with the consent of the parties to the TCEH Stipulation, establish the terms of Plan mediation regarding issues affecting the TCEH Debtors' estates.

A.    **Development and Filing of Plan of Reorganization.**

16.    The Debtors have spent the last several months working to develop a plan of reorganization and schedule to bring these chapter 11 cases to a successful outcome.  This process was informed by years of negotiations among the Debtors' stakeholders and, more recently, numerous in-person and telephonic meetings to solicit input from all meaningful

---

[3]    *See Second Order Extending the Debtors' Exclusive Periods to File a Chapter 11 Plan and Solicit Acceptances Thereof Pursuant to Section 1121 of the Bankruptcy Code* (the "Second Extension Order") [D.I. 3504]; *see also Second Motion to Extend Exclusive Period for Filing a Chapter 11 Plan and Disclosure Statement Filed by Energy Future Holdings Corp.* [D.I. 3338] (the "Second Exclusivity Motion"); *Order Extending the Debtors Exclusive Periods to File a Chapter 11 Plan and Solicit Acceptances Thereof* [D.I. 2063]; *Motion to Extend Exclusive Period for Filing a Chapter 11 Plan and Disclosure Statement Filed by Energy Future Holdings Corp.* [D.I. 1683].

stakeholders on the path forward.  As part of the process, the Debtors received a number of proposals from individual, and combinations of, stakeholder constituencies.  The Debtors closely evaluated each of these proposals in the context of a global restructuring and encouraged parties to engage in discussions with each other to develop more robust and comprehensive solutions for a global restructuring as opposed to proposals that merely advanced individual, parochial interests.    When these stakeholders were ultimately unable to reach consensus among themselves, the Debtors worked to reconcile the spirit and economics of these proposals into a comprehensive whole.  These efforts manifested in multiple circulations of draft plan term sheets and proposed confirmation schedules (both publicly and on a confidential basis).  With each circulation, the Debtors continued to encourage feedback and discussion among their stakeholders.

17.    In parallel, the disinterested directors and their advisors engaged in months of diligence, analysis, and ultimately negotiations regarding intercompany claims.  These efforts culminated in the Interdebtor Settlement, which is a global settlement of prepetition intercompany claims among EFH, EFIH and TCEH embodied in the Plan.[4]  On April 3, 2015, the Debtors circulated a draft plan and disclosure statement to their creditor constituents reflecting the terms of the Interdebtor Settlement in accordance with the case matters protocol governing these chapter 11 cases (the "Case Matters Protocol").[5]

---

[4]    *See Statement of the Disinterested Directors of Debtor Energy Future Holdings Corp. Regarding Proposed Settlement of Conflict Matters as Part of Proposed Plan of Reorganization*, Schedule D. [D.I. 4147].

[5]    *See Stipulation and Agreed Order Regarding a Protocol for Certain Case Matters* [D.I. 2051].

18.    On April 14, 2015, the Debtors filed the Plan and the Disclosure Statement with the Court.[6]  The Debtors believe the Plan is a fair and comprehensive resolution of these chapter 11 cases.  The Debtors are the only parties positioned to, and with the obligation to, maximize value for *all* stakeholders, rather than seeking to further parochial or isolated interests. The filed Plan reflects the Debtors' evaluation of various creditor proposals and attempts to reconcile these proposals in a balanced manner consistent with the Bankruptcy Code. Regardless, it is not surprising that at this early stage of the Plan process, certain creditor constituencies have publicly stated that they do not support the Debtors' plan.  The Debtors, however, believe that consensus can be reached over the coming weeks and months as Plan mediation progresses and the auction process for the economic interests in Oncor Electric Delivery Company LLC (the "EFH-EFIH Transaction") takes form.

19.    As the Debtors expected, the process of discussions, circulation of proposals, and ultimately, the filing of the Plan and Disclosure Statement has further spurred discussions among the Debtors and their various stakeholders.   Indeed, the Plan itself expressly contemplates ongoing discussions and negotiations, as reflected by its flexibility regarding the EFH-EFIH Transaction and the Debtors' unconditional fiduciary out to pursue other, value-maximizing alternatives.  The Debtors believe that an extension of the Exclusive Periods will allow such discussions to progress, and, regardless, allow the Debtors to move these chapter 11 cases toward emergence of the Debtors for maximum value.

**B.    Progress on the EFH-EFIH Transaction.**

20.    The Debtors have also continued to make progress with respect to the EFH-EFIH Transaction.  As part of the sealed bidding process for the EFH-EFIH Transaction, the Debtors

---

[6]    *See Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code* [D.I. 4142]; *See also, Disclosure Statement for the Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code* [D.I. 4143].

have received first and second round bids from potential bidders.[7]  Although the specific terms and status of the process remain confidential at this time—to preserve the competitive integrity of the auction—the Debtors are currently negotiating documentation with bidders with the goal of executing, and filing a motion to seek approval of, a stalking horse agreement as soon as practicable.  Consistent with the bidding procedures, this proposal will then be subject to a further public marketing and auction process.

21.    As an outgrowth of the EFH-EFIH Transaction and Plan processes, the Debtors have been, and continue to be, actively engaged in discussions with potential bidders and various creditor constituencies[8] to develop a transaction to purchase Oncor, premised on its conversion to a REIT structure.  The potential to convert Oncor to a REIT has been publicly known since before the Debtors filed, but has become a subject of increased interest among certain stakeholders in recent months.  Following entry of the Second Extension Order, in mid-March, the Debtors' tax advisors held sessions with various creditor groups regarding a potential REIT structure.  These sessions spurred a series of discussions, including a series of regularly scheduled (and ongoing) diligence calls, among the Debtors, various creditor constituencies, and other stakeholders regarding the viability of a REIT conversion.  That work is ongoing and active, and in the Debtors' view, is an outgrowth of their efforts to move forward with the Plan and the Scheduling Motion.

---

[7]    *Order (A) Approving Revised Bidding Procedures, (B) Scheduling An Auction and Related Deadlines and Hearings, and (C) Approving the Form and Manner of Notice Thereof* [D.I. 3295].

[8]    Most notably, since entry of the Second Extension Order, the TCEH Unsecured Ad Hoc Group has indicated its interest in potentially exploring a REIT alternative. As a result, the Debtors' management team, professionals, and Oncor have cooperated and engaged in discussions with the TCEH Unsecured Ad Hoc Group regarding such an alternative and have provided substantial diligence as part of such discussions.

22.     As creditor groups have publicly acknowledged, a REIT transaction has a number of economic and practical challenges.[9]   The Debtors have, and will continue to, devote substantial resources to ensure that all stakeholders have a full and fair opportunity to make a binding proposal for the EFH-EFIH Transaction.  If and when any party makes such a proposal, the Debtors will evaluate the proposal—in terms of both value and certainty—against available alternatives and in the context of the ongoing process for the EFH-EFIH Transaction. Regardless, the next several months are critical for the EFH-EFIH Transaction, and the Debtors will use the extension of the Exclusive Period to continue to advance this process.

### C.      Legacy Discovery and the Standing Motions.

23.     In conjunction with the restructuring efforts, the Debtors also devoted massive time and resources to producing discovery materials related to Legacy Discovery, the Debtors' most significant discovery workstream.[10]   To date, the Debtors have produced over 815,000 documents, comprising over 5.6 million pages under the Legacy Discovery Protocol.

24.     The Legacy Discovery Protocol governs discovery regarding certain transactions that may potentially inform claims that the Debtors believe are appropriately and squarely addressed and embodied in the settlements that lie at the heart of the Plan.  In accordance with the Case Matters Protocol, and using the tremendous amount of discovery material produced to date, the TCEH Creditors' Committee, the ad hoc group of TCEH unsecured noteholders (the "TCEH Unsecured Ad Hoc Group"), and the indenture trustee for the TCEH second lien

---

[9]     *See* Hr'g Tr. at [70:1-70:7] (Bankr. D. Del. May 4, 2015) ("So if a REIT plan, which I'll take about, takes more time and requires them to work harder and stay in longer and live with a little bit more lack of clarity, so be it. No one said it was going to be easy or without risk or without controversy, or entirely predictable on a regimented march.") (Shore, C.)

[10]    The *Order Establishing Discovery Procedures in Connection with Legacy Discovery of Energy Future Holdings Corporation, its Affiliates, and Certain Third Parties and Other Related Matters* [D.I. 1832] outlines the procedures (the "Legacy Discovery Protocol") that govern discovery requests in connection with a number of the Debtors' prepetition transactions (collectively, the "Legacy Discovery").

notes (together, with the TCEH Creditors Committee and the TCEH Unsecured Ad Hoc Group, the "TCEH Junior Creditors") were required on April 30, 2015, to disclose any material claims or causes of action for which they may seek standing.  Both the TCEH Creditors Committee and the TCEH Unsecured Ad Hoc Group provided the written claims disclosures pursuant to the Case Matters Protocol.  The Debtors, including their disinterested directors and managers, are reviewing these disclosures; nonetheless, a settlement of the claims disclosed is embodied in the Plan.

25.    Materials produced through the Legacy Discovery Protocol also served as the basis for the Standing Motions.  The Official Committees and the TCEH Unsecured Ad Hoc Group filed the Standing Motions on February 20, 2015, because of a looming deadline under the TCEH Cash Collateral Order [11] for parties other than the Debtors to file adversary proceedings to challenge the validity of the obligations and liens related to TCEH first lien debt (the "Challenge Deadline").  The Debtors maintain that the commencement of massive litigation in the midst of potentially productive Plan negotiations would be value destructive, and for this reason (among others), the Debtors engaged with the relevant parties to defer adjudication of the Standing Motions.

**D.    The Scheduling Order and TCEH Stipulation.**

26.    The Debtors spent weeks soliciting feedback and engaging in discussions with stakeholders on their proposed confirmation schedule before filing the Scheduling Motion. [12] Despite these efforts, there remained a number of open scheduling issues with, among others, the

---

[11]  *Order (A) Authorizing Use of Cash Collateral for Texas Competitive Electric Holdings Company LLC and Certain of its Debtor Affiliates, (B) Granting Adequate Protection, and (C) Modifying the Automatic Stay* [D.I. 855] (the "TCEH Cash Collateral Order").

[12]  *See Motion of Energy Future Holdings Corp., et al., for Entry of an Order Scheduling Certain Hearing Dates and Deadlines and Establishing Certain Protocols in Connection with the Confirmation of Debtors' Plan of Reorganization and the Approval of Debtors' Disclosure Statement* [D.I. 4138].

RLF1 11960207v.1

TCEH creditor constituencies as of April 14, 2015, the date the Debtors filed the Scheduling Motion.

27.    The filing, however, created healthy pressure for the TCEH creditor constituencies to negotiate with each other and the Debtors to address the open issues. These negotiations culminated in the TCEH Stipulation. Pursuant to the TCEH Stipulation, the parties agreed to adjourn the Standing Motions and extend the Challenge Period to (a) adopt certain parameters to further facilitate the participation of the TCEH Unsecured Ad Hoc Group in the EFH-EFIH Transaction process; (b) modify certain dates in the Scheduling Motion; and (c) commence Plan mediation among the debtors, the TCEH Junior Creditors, and the TCEH First Lien Creditors. The TCEH Stipulation provides the Debtors and the TCEH creditor constituencies an opportunity to discuss Plan alternatives and the settlement of potentially costly litigation in an efficient manner. As a result, the Debtors filed revised a scheduling order that incorporated the Plan mediation terms contemplated by the TCEH Stipulation and addressed certain issues raised by parties in their objections to the Scheduling Motion.[13]

28.    On May 4, 2015, the Court approved in part, and denied in part, the relief requested in the Scheduling Motion. The Court set the Disclosure Statement hearing for July 20, 2015, established related discovery dates and protocols, and approved the proposed Plan mediation terms. The Court deferred the Debtors' request to establish a Plan confirmation schedule and set a scheduling conference for June 25, 2015 to address a potential Plan confirmation schedule.[14]

---

[13]  *Notice of Filing of Amended Proposed Order Establishing a Confirmation Schedule and Appointing a Mediator* [D.I. 4384].

[14]  *See* Hr'g Tr. at [108:17-108:20] (Bankr. D. Del. May 4, 2015) ("So what I would suggest is that we have a further status, and not just status, but possibly a hearing where we actually enter a scheduling order for late-ish June. . .") (Sontchi, J.)

29.     The Debtors will submit a revised form of the scheduling order in the next several days, reflecting the Court's ruling and anticipate potentially submitting materials in advance of the June 25, 2015 scheduling conference.  In addition, the Debtors intend to submit a revised TCEH Stipulation, reflecting the Court's ruling, for Court approval at the same time.

**E.     Additional Case Progress.**

30.     Recognizing that a robust evaluation of value-maximizing restructuring alternatives requires the greatest amount of clarity possible around the vast amounts of contingent claims on the various Debtors' balance sheets, the Debtors have continued their efforts to obtain clarity on potential Plan distributions.  Since the entry of the Second Extension Order, the Debtors, among other things: (a) sought to resolve interest and makewhole claims arising from all three tranches of EFIH debt; (b) used $750 million in cash under the EFIH first lien DIP facility to repay outstanding principal and accrued interest on the EFIH second lien notes, producing estimated rate savings of approximately $66 million to $105 million in interest expense savings over the course of these chapter 11 cases; and (c) worked to otherwise advance the Debtors' overall claims resolutions process.[15]

31.     Specifically, with respect to the EFIH debt claims, since the entry of the Second Extension Order, the Debtors have advanced their several interest rate and makewhole litigation initiatives:

- ***First***, with respect to the EFIH first lien notes, the United States District Court for the District of Delaware affirmed this Court's approval of the EFIH First Lien Settlement[16] (described in detail in the first extension motion[17]).  The

---

[15]  *Order (A) Authorizing Partial Repayment of EFIH Second Lien Notes; (B) Approving EFIH DIP Consent; and (C) Authorizing Consent Fee* [D.I. 3855].

[16]  *See Order*, Case No. 1:14-cv-00723-RGA (D. Del. Feb. 19, 2015) [D.I. 50].

[17]  *Motion of Energy Future Holdings Corp., et al., for Entry of an Order Extending the Debtors' Exclusive Periods to File a Chapter 11 Plan and Solicit Acceptances Thereof Pursuant to Section 1121 of the Bankruptcy Code* [D.I. 1683].

indenture trustee for the EFIH first lien notes filed an appeal to the United States Court of Appeals for the Third Circuit on March 6, 2015,[18] and the appeal is currently pending.[19]

- *Second*, with respect to the EFIH first lien makewhole trial on alleged makewhole claims, "redemption claims," and any claims for damages arising under any "no call" covenants or "right to de-accelerate" provisions, the EFIH Debtors and the EFIH first lien indenture trustee filed cross-motions for summary judgment on February 13, 2015.[20]  A hearing on the summary judgment motions was held on March 13, 2015, and on March 26, 2015, the Court entered an order approving the EFIH Debtors' summary judgment motion except with respect to the issue of whether there was cause to lift the automatic stay to permit the rescission of the automatic acceleration of the EFIH first lien debt upon the Petition Date.[21]  The Court held a three-day hearing on the automatic stay issue on April 20, 2015 through April 22, 2015. At the May 4, 2015 hearing, the parties agreed: (a) to simultaneously file proposed findings of fact and conclusions of law and post-trial briefs as to the automatic stay issue by May 20, 2015, and (b) to have the EFIH first lien indenture trustee's motion regarding the finality of the March 26, 2015 order heard at the June 1, 2015 omnibus hearing.

- *Third*, with respect to the EFIH second lien notes, the indenture trustee for the EFIH second lien notes filed an amended complaint on March 13, 2015, seeking a secured claim for its alleged makewhole premium based on the EFIH Second Lien Paydown.[22]  The EFIH Debtors filed their amended answer on April 30, 2015,[23] and the parties are currently discussing a trial schedule.

- *Fourth*, with respect to the EFIH unsecured notes, on February 6, 2015, the indenture trustee for the EFIH unsecured notes filed a motion seeking to dismiss the makewhole action filed by the EFIH Debtors on December 16, 2014 against such noteholders.[24]  On May 4, 2015, the Court heard arguments from both parties and took the matter under advisement.

---

[18] *See Notice of Appeal to the United States Court of Appeals for the Third Circuit*, Case No. 1:14-cv-00723-RGA (D. Del. March 6, 2015) [D.I. 51].

[19] *See Delaware Trust Co. v. Energy Future Intermediate Holding Co., LLC*, Case No. 15-1591(3d Cir.).

[20] *See Plaintiff-Trustee's Motion for Summary Judgment*, Case No. 14-50363-CSS (Bankr. D. Del. Feb. 13, 2015) [D.I. 178]; *EFIH Debtors' Cross-Motion for Summary Judgment*, Case No. 14-50363-CSS (Bankr. D. Del. Feb. 13, 2015) [D.I. 175].

[21] *See Order*, Adv. Proc. No. 14-50363-CSS (Bankr. D. Del. March 26, 2015) [D.I. 246].

[22] *See Amended Complaint for Damages and Declaratory Relief*, Case No. 14-50405-CSS (Bankr. D. Del. April 13, 2015) [D.I. 37].

[23] *See Answer to Amended Complaint for Damages and Declaratory Relief*, Case No. 14-50405-CSS (Bankr. D. Del. April 29, 2015) [D.I. 39].

[24] *See UMB Bank, N.A.'s Motion to Dismiss the Complaint*, No. 14-51002-CSS [D.I. 7].

15

32.     In addition, since entry of the Second Extension Order, the Debtors have filed an additional eight omnibus objections (for a total of 15 objections to date) in response to the 10,000 proofs of claim filed in these chapter 11 cases that, in the aggregate, seek to disallow and expunge over 3,700 claims, and filed a notice of proposed order seeking to establish July 30, 2015, as the bar date for unmanifested asbestos claims.[25]

33.     In short, the Debtors made enormous progress during the three months since the entry of the Second Extension Order—including the most significant milestone of these chapter 11 cases to date:  the filing of the Plan and Disclosure Statement.  Yet much work remains.  Among other things, the EFH-EFIH Transaction will be very active in the next several months, Plan mediation will commence shortly and may develop further consensus, and the Debtors will seek approval of the Disclosure Statement and, in the months that follow, the Plan.  Achieving these goals will require the focus and active participation of creditor constituencies and, upon a termination of exclusivity, the Debtors believe the impetus will be lost.  Thus, to facilitate the Debtors' efforts to efficiently consummate a global, balance sheet restructuring, the Debtors request an extension of the Exclusive Periods.

## Basis for Relief

34.     Sections 1121(b) and (c) of the Bankruptcy Code provide, respectively, that a debtor has the exclusive right to propose a chapter 11 plan for the first 120 days of a chapter 11 case and the exclusive right to solicit votes for its plan for an additional 60 days. *See* 11 U.S.C. §§ 1121(b), 1121(c).  Section 1121(d) of the Bankruptcy Code authorizes a bankruptcy court to extend a debtor's exclusive period for filing a chapter 11 plan and to solicit

---

[25]    *See Notice of Filing of Proposed Form of "Order (A) Setting Bar Date for Filing Asbestos Proofs of Claim, (B) Approving the Form of and Manner for Filing Asbestos Proofs of Claim, and (C) Approving Notice Thereof"* [D.I. 3965].

votes thereon, for cause shown, by as much as 18 months (to file a plan) and 20 months (to solicit votes), respectively. *See Id.* at § 1121(d).

35.   Courts have recognized that "the point of exclusivity is 'to promote an environment in which the debtor's business may be rehabilitated and a consensual plan may be negotiated.'" *In re Burns and Roe Enters., Inc.*, 2005 WL 6289213, *4 (D.N.J. 2005) (*quoting* H.R. Rep. No. 103-835, at 36 (1994), *as reprinted in* 1994 U.S.C.C.A.N. 3340, 3344).   In these chapter 11 cases, the Exclusive Periods set forth in sections 1121(b) and 1121(c) of the Bankruptcy Code will expire on June 23, 2015, and August 25, 2015, respectively, absent further order of the Court.

36.   Section 1121(d)(1) permits a court to extend a debtor's exclusivity "for cause," subject to certain limitations not relevant here.   Specifically, section 1121(d) provides that "on request of a party in interest made within the respective periods . . . of this section and after notice and a hearing, the court may for cause reduce or increase the 120-day period or the 180-day period referred to in this section." 11 U.S.C. § 1121(d).   Although the Bankruptcy Code does not define the term "cause," the legislative history indicates that it is to be viewed flexibly "in order to allow the debtor to reach an agreement."   H.R. Rep. 95-595, at 232 (1977), *as reprinted in* 1978 U.S.C.C.A.N. 5963, 6191; *see also In re Public Serv. Co. of New Hampshire*, 88 B.R. 521, 534 (Bankr. D.N.H. 1988) ("legislative intent . . . [is] to promote maximum flexibility").

37.   Courts within the Third Circuit and in other jurisdictions have held that the decision to extend a debtor's exclusivity periods is left to the sound discretion of a bankruptcy court and should be based on the totality of circumstances in each case. *See, e.g., First Am. Bank of N.Y. v. Sw. Gloves & Safety Equip., Inc.*, 64 B.R. 963, 965 (D. Del. 1986); *In re Dow Corning*

17

*Corp.*, 208 B.R. 661, 663 (Bankr. E.D. Mich. 1997); *In re Express One Int'l, Inc.*, 194 B.R. 98, 100 (Bankr. E.D. Tex. 1996); *In re McLean Indus., Inc.*, 87 B.R. 830, 833 (Bankr. S.D.N.Y. 1987).

38.    In particular, courts examine a number of factors to determine whether a debtor has had an adequate opportunity to develop, negotiate, and propose a chapter 11 plan and thus, whether there is "cause" for extension of the Exclusive Periods.   These factors include the following:

(a)    the size and complexity of the case;

(b)    the existence of good-faith progress;

(c)    the necessity of sufficient time to negotiate and prepare adequate information;

(d)    whether creditors are prejudiced by the extension;

(e)    whether the debtor is paying its debts as they become due;

(f)    whether the debtor has demonstrated reasonable prospects for filing a viable plan;

(g)    whether the debtor has made progress negotiating with creditors;

(h)    the length of time a case has been pending;

(i)    whether the debtor is seeking an extension to pressure creditors; and

(j)    whether or not unresolved contingencies exist.

*See In re Cent. Jersey Airport Servs., LLC*, 282 B.R. 176, 183 (Bankr. D.N.J. 2002); *McLean Indus.*, 87 B.R. at 834; *see also Dow Corning*, 208 B.R. at 664 (identifying the above factors and noting that courts generally rely on the same factors to determine whether exclusivity should be extended); *In re Friedman's Inc.*, 336 B.R. 884, 888 (Bankr. D. Ga. 2005) (same).

39.    A court is not limited to the task of counting factors when considering the enumerated factors in determining whether to grant an exclusivity extension.  *Dow Corning*,

18

208 B.R. at 669.  Not all factors are relevant to every case and courts tend to use a more specific subset of the above factors to determine whether cause exists to grant an exclusivity extension in each particular chapter 11 case.  *See, e.g., Express One Int'l*, 194 B.R. at 100 (identifying four of the factors relevant in determining whether "cause" exists to extend exclusivity); *see also Texaco*, 76 B.R. at 327 (finding size and complexity of cases sufficient to extend exclusivity); *In re United Press Int'l, Inc.*, 60 B.R. 265, 269 (Bankr. D.D.C. 1986) (finding debtor showed "cause" to extend exclusivity based upon three of the factors); *In re Pine Run Trust, Inc.*, 67 B.R. 432, 435 (Bankr. E.D. Pa. 1986) (relying on two factors in holding that cause existed to extend exclusivity).

40.      The Debtors submit that sufficient "cause" exists pursuant to section 1121(d) to extend the Exclusive Periods as provided herein.  As discussed below, each of the relevant factors weighs in favor of an extension of the Exclusive Periods.

### A.      The Debtors' Chapter 11 Cases are Large and Complex.

41.      Both Congress and the courts have recognized that the size and complexity of a debtor's case, in itself, is an appropriate basis upon which to extend exclusivity.  Legislative history provides that "if an unusually large company were to seek reorganization under chapter 11, the court would probably need to extend the time in order to allow the debtor to reach an agreement."  H.R. Rep. 95-595, at 232; *see also Texaco*, 76 B.R. 326 ("[t]he large size of the debtor and the consequent difficulty in formulating a plan of reorganization for a huge debtor with a complex financial structure are important factors which generally constitute cause for extending the exclusivity periods.").  Importantly, the size and complexity of a chapter 11 case is the basis upon which courts most commonly grant extensions.  *See, e.g., Express One Int'l*, 194 B.R. at 100 ("The traditional ground for cause is the large size of the debtor and the

19

concomitant difficulty in formulating a plan of reorganization." (*citing Pine Run Trust*, 67 B.R. at 435)).

42.    As has been stated before and accepted by all parties in interest in these chapter 11 cases, the size and complexity of these chapter 11 cases is self-evident.  The Debtors have over $42 billion in prepetition funded debt obligations and by that metric (and most any other) this is one of the largest chapter 11 reorganizations ever attempted.  Moreover, these obligations reside in separate silos that are subject to complex interrelationships.  At the same time, the Debtors have had to coordinate with a diverse and vocal creditor body, many of which have massive economic interests at stake.  Indeed, the size and complexity of these chapter 11 cases alone is arguably sufficient basis to grant the requested extensions to the Exclusive Periods.

**B.    The Debtors Have Made Good Faith Progress Towards Exiting Chapter 11 and Negotiating with its Creditors.**

43.    In considering an extension of a debtor's exclusive periods, courts often assess a debtor's progress towards rehabilitation and development of a consensual plan.  *See*, *e.g.*, *In re Amko Plastics, Inc.*, 197 B.R. 74, 77 (Bankr. S.D. Ohio 1996).  The Debtors have made significant, good faith progress in negotiations with their creditors and are continuing to work diligently to move these chapter 11 cases toward a successful resolution.

44.    After many months of effort, the Debtors filed the Plan.  As described more fully herein, the Debtors commenced this process by soliciting as much feedback as possible from stakeholders regarding the form of a global restructuring.  The Debtors circulated multiple drafts of restructuring proposals and confirmation timelines reflecting this feedback.  Simultaneously, the disinterested directors and managers along with their advisors engaged in months of diligence sessions and negotiations that ultimately resulted in the Interdebtor Settlement, which,

as embodied in the Plan and Disclosure Statement, provides for a global settlement of intercompany claims.  Both the Interdebtor Settlement and the Debtors' efforts to solicit feedback on the Plan, wherever possible, advanced the Plan process.  *See, e.g.*, *In re Pine Run Trust, Inc.*, 67 B.R. 432, 435 (Bankr. E.D. Pa. 1986) (finding that the debtors had made substantial progress in critical plan negotiations with creditors' committee even though committee had not reviewed or commented on debtors' latest proposal); *In re Lichtin/Wade, L.L.C.,* 478 B.R. 204, 213 (Bankr. E.D.N.C. 2012) (finding that although debtors' negotiation attempts were currently at an impasse, debtor had nevertheless shown "progress in negotiations," justifying an extension of exclusivity).

45.     At the same time, the Debtors have made substantial progress with respect to the EFH-EFIH Transaction.  This includes multiple rounds of negotiations with bidders and the substantial diligence done by various creditor constituencies regarding potential proposals for reorganization.  The Debtors expect that, in the weeks to come, they will be able to present and obtain approval for the highest or otherwise best proposal available to them.

46.     Finally, the Debtors continue to make progress on a variety of other workstreams. The Debtors have obtained approval for a litigation schedule for the Disclosure Statement to ensure that the chapter 11 cases do not stall.  In addition, the Debtors have undertaken massive efforts to resolve contingent asserted claims that were injecting uncertainty into negotiations and the Plan process.  Given the significant progress the Debtors have made thus far in the chapter 11 cases, the Debtors submit that an extension of the Exclusive Periods is warranted.

**C.     Additional Time is Necessary to Negotiate.**

47.     The Debtors are currently engaged in active negotiations with stakeholders.  The Debtors and their TCEH stakeholders are about to begin a court-approved mediation process in an effort to resolve certain issues related to the Plan.  In addition, the Debtors are engaged in

negotiations regarding the EFH-EFIH Transaction and regarding Plan alternatives. In addition, the Debtors continue to engage and solicit feedback and input from their stakeholders. At this critical juncture, it is important for all parties in interest to focus and negotiate on a single, viable plan of reorganization.

**D.    An Extension of the Exclusive Periods Will Not Prejudice Creditors.**

48.    An extension of the Exclusive Period will not prejudice the Debtors' creditors. Rather, the intention is to continue negotiations with creditors based on the filed Plan while allowing the Debtors the flexibility to pursue a value maximizing EFH-EFIH Transaction or alternative. Indeed, the Debtors, consistent with their ever-present duty to maximize value, intend to use an extension of the Exclusive Periods to, among other things, continue to explore alternative structures with various constituencies. Moreover, in addition to ongoing negotiations on the Plan, the scheduling conference (and the discussions leading up to the scheduling conference), and the commencement of Plan mediation will give parties yet another opportunity to weigh in on the Plan and the confirmation process. Accordingly, an extension of the Exclusive Periods will not prejudice the Debtors' creditors but rather present the Debtors and their creditors the opportunity to negotiate and confirm a value-maximizing plan of reorganization.

**E.    The Debtors are Paying Their Bills as They Come Due.**

49.    Since the Petition Date, the Debtors have paid their debts in the ordinary course of business or as otherwise provided by Court order and have sufficient liquidity to continue this practice. If the relief requested is granted, and the Debtors determine to enter into the Soliciting

22

Exclusive Period, the Debtors will work to obtain an extension of their use of cash collateral under the Final Cash Collateral Order.[26]

### F.  There are Significant Open Contingencies in the Chapter 11 Cases.

50.    In the coming weeks, the Debtors will seek to resolve a number of open contingencies that will inform the Plan.  *First*, the Debtors are in the process of evaluating alternative value-maximizing transactions at EFH and EFIH.  The Debtors have engaged in multiple rounds of diligence and negotiations with bidders and creditor constituencies, and in the weeks ahead will select the highest or otherwise best proposal for the EFH-EFIH Transaction.  *Second*, the Debtors and the TCEH creditor constituencies will commence Plan mediation in the next several days and need a real opportunity to participate in a robust mediation process, without the fear of the Debtors losing exclusivity.  *Third*, the Debtors are continuing to seek resolution on a number of makewhole and interest rate issues related to the EFIH debt claims. Although immense progress has been made since the last extension of the Exclusive Periods, the Debtors require additional time to resolve these contingencies.

51.    Bankruptcy courts have often granted similar relief where, as here, the facts and circumstances justify extensions of a debtor's exclusivity to the limits provided under the Bankruptcy Code.  *See, e.g., In re Triad Guaranty Inc.*, No. 13-11452 (MFW) (Bankr. D. Del. Oct. 15, 2014) (granting third extension of approximately 65 days for total 18-month maximum exclusive period under BAPCPA); *In re Exide Technologies*, No. 13-11482 (KJC) (Bankr. D. Del. Aug. 29, 2014) (granting third extension of approximately 130 days for total 18-month maximum exclusive period under BAPCPA); *In re Specialty Products Holding Corp.*,

---

[26]    Under paragraph three of *Final Order (A) Authorizing Use of Cash Collateral for Texas Competitive Electric Holdings Company LLC and Certain of its Debtor Affiliates, (B) Granting Adequate Protection, and (C) Modifying the Automatic Stay* [D.I. 855] (the "Final Cash Collateral Order"), the Debtors' use of cash collateral expires on October 29, 2015.  If the Debtors determine to use the Soliciting Exclusive Period, they will seek to negotiate an extension of their use of cash collateral for the duration of the Soliciting Exclusive Period.

No. 10-11780 (JFK) (Bankr. D. Del. Nov. 15, 2011) (granting third extension of approximately 60 days for total 18-month maximum exclusive period under BAPCPA); *In re The Great Atlantic & Pacific Tea Company, Inc.*, No. 10-24549 (RDD) (Bankr. S.D.N.Y. Jan. 27, 2012) (granting third extension of approximately 150 days for total maximum exclusive period under BAPCPA); *In re Frontier Airlines Holdings, Inc.*, No. 08-11298 (RDD) (Bankr. S.D.N.Y. May 20, 2009) (granting third extension of approximately 125 days for total maximum exclusive period under BAPCPA); *In re In re Lehman Bros. Holdings Inc.*, No. 08-13555 (JMP) (Bankr. S.D.N.Y. July 20, 2009) (granting an extension for the total 18-month maximum exclusive period under BAPCPA); *In re Dana Corp.*, No. 06-10354 (BRL) (Bankr. S.D.N.Y. Dec. 19, 2006) (same); *In re Calpine Corp.*, No. 05-60200 (BRL) (Bankr. S.D.N.Y. Dec. 6, 2006) (same); *In re Edison Mission Energy*, No. 12-49219 (JPC) (Bankr. N.D. Ill. Oct. 24, 2013) (same); *In re Mirant Corp.*, No. 03-46591 (DML) (Bankr. N.D. Tex. May 10, 2004) (same).

**Notice**

52.     The Debtors shall provide notice of this Motion on the date hereof via first class mail to:  (a) the U.S. Trustee; (b) counsel to the TCEH Creditors' Committee; (c) counsel to the EFH Creditors' Committee; (d) Wilmington Trust, N.A., in its capacity as administrative agent under the TCEH first lien credit agreement and collateral agent under the TCEH intercreditor agreements and counsel thereto; (e) Bank of New York Mellon Trust Company, N.A., in its capacity as indenture trustee under:  (i) the TCEH unsecured pollution control revenue bonds; and (ii) the EFCH 2037 Notes due 2037, and counsel thereto; (f) American Stock Transfer & Trust Company, LLC, in its capacity as indenture trustee under:  (i) the 9.75% EFH senior unsecured notes due 2019; (ii) the 10.0% EFH senior unsecured notes due 2020; (iii) the 10.875% EFH LBO senior unsecured notes due 2017; (iv) the 11.25%/12.0% EFH LBO toggle

24

notes due 2017; (v) the 5.55% EFH legacy notes (series P) due 2014; (vi) the 6.50% EFH legacy notes (series Q) due 2024; and (vii) the 6.55% EFH legacy notes (series R) due 2034, and counsel thereto; (g) Computershare Trust Company, N.A. and Computershare Trust Company of Canada, in their capacities as indenture trustee under: (i) the 11.0% EFIH senior secured second lien notes due 2021; and (ii) the 11.75% EFIH senior secured second lien notes due 2022, and counsel thereto; (h) UMB Bank, N.A. in its capacity as indenture trustee under: (i) the 9.75% EFIH senior unsecured notes due 2019; and (ii) the 11.25%/12.25% EFIH senior toggle notes due 2018, and counsel thereto; (i) Delaware Trust Company of Delaware in its capacity as indenture trustee under: (i) the 6.875% EFIH senior secured notes due 2017; (ii) the 10.0% EFIH senior secured notes due 2020; and (iii), the 11.50% TCEH senior secured notes due 2020, and counsel thereto; (j) Law Debenture Trust Company of New York in its capacity as indenture trustee under: (i) the 10.25% TCEH senior unsecured notes due 2015; and (ii) the 10.50%/11.25% TCEH senior toggle notes due 2016, and counsel thereto; (k) Wilmington Savings Fund Society, FSB in its capacity as indenture trustee under the 15.0% TCEH senior secured second lien notes due 2021, and counsel thereto; (l) counsel to certain holders of claims against the Debtors regarding each of the foregoing described in clauses (c) through (j); (m) the agent for the TCEH debtor-in-possession financing facility and counsel thereto; (n) the agent for the EFIH debtor-in-possession financing facility and counsel thereto; (o) counsel to certain holders of equity in Texas Energy Future Holdings Limited Partnership; (p) counsel to the TCEH Unsecured Ad Hoc Group; (q) counsel to the Ad Hoc Committee of TCEH Second Lien Noteholders; (r) Oncor Electric Delivery Holdings Company LLC and counsel thereto; (s) Oncor Electric Delivery Company LLC and counsel thereto; (t) the Securities and Exchange Commission; (u) the Internal Revenue Service; (v) the Office of the United States Attorney for

25

the District of Delaware; (w) the Office of the Texas Attorney General on behalf of the Public

Utility Commission of Texas; (x) counsel to the Electric Reliability Council of Texas; (y) those

parties that have requested notice pursuant to Bankruptcy Rule 2002; and (z) all non-debtor

parties to the current Actions.   The Debtors submit that, in light of the nature of the relief

requested, no other or further notice need be given.

## **No Prior Request**

53.     No prior request for the relief sought in this Motion has been made to this or any

other court.

*[Remainder of page intentionally left blank.]*

26

WHEREFORE, the Debtors respectfully request that the Court enter the Order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested in this Motion and granting such other and further relief as is appropriate under the circumstances.

Dated:  May 11, 2015
      Wilmington, Delaware

*/s/ Jason M. Madron*

**RICHARDS, LAYTON & FINGER, P.A.**
Mark D. Collins (No. 2981)
Daniel J. DeFranceschi (No. 2732)
Jason M. Madron (No. 4431)
920 North King Street
Wilmington, Delaware 19801
Telephone:    (302) 651-7700
Facsimile:    (302) 651-7701
Email:    collins@rlf.com
    defranceschi@rlf.com
    madron@rlf.com

-and-

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Edward O. Sassower, P.C. (admitted *pro hac vice*)
Stephen E. Hessler (admitted *pro hac vice*)
Brian E. Schartz (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022-4611
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900
Email:    edward.sassower@kirkland.com
    stephen.hessler@kirkland.com
    brian.schartz@kirkland.com

-and-

James H.M. Sprayregen, P.C. (admitted *pro hac vice*)
Marc Kieselstein, P.C. (admitted *pro hac vice*)
Chad J. Husnick (admitted *pro hac vice*)
Steven N. Serajeddini (admitted *pro hac vice*)
300 North LaSalle
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200
Email:    james.sprayregen@kirkland.com
    marc.kieselstein@kirkland.com
    chad.husnick@kirkland.com
    steven.serajeddini@kirkland.com

Co-Counsel to the Debtors and Debtors in Possession