## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) | Case No. 14-10979 (CSS) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | **Hearing Date:  June 1, 2015 at 10:30 a.m.** |
| | ) | **Objection Deadline:  May 26, 2015 at 4:00 p.m.** |

## MOTION OF ENERGY FUTURE HOLDINGS CORP., *ET AL.*, FOR ENTRY OF A SECOND ORDER AUTHORIZING CERTAIN OF THE DEBTORS TO HONOR OBLIGATIONS TO CERTAIN RETIREES ON ACCOUNT OF NON-QUALIFIED BENEFIT PROGRAMS

The above-captioned debtors and debtors in possession (collectively, the "Debtors") file this motion (this "Motion") for entry of an order, substantially in the form attached hereto as **Exhibit A** (the Order"), authorizing certain of the Debtors (the "Participating Debtors")[2] to honor obligations to the Retirees (as defined herein) on account of two Non-Qualified Benefit Programs (as defined herein) in the ordinary course of business (approximately $13.5 million in the aggregate), subject to certain limitations described herein.  In support of this Motion, the Debtors submit the *Declaration of Carrie Kirby, Executive Vice President of Human Resources for Energy Future Holdings Corp. in Support of the Motion of Energy Future Holdings Corp.,* et

---

[1]  The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810.  The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201.  Due to the large number of debtors in these chapter 11 cases, for which joint administration has been granted, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

[2]  The Participating Debtors are composed of those Debtors whose former or current employees participate in at least one of the Non-Qualified Benefit Programs: 4Change Energy Company; EFH Corporate Service Company; Energy Future Holdings Corp. ("EFH Corp."); LSGT Gas Company LLC; Luminant Energy Company LLC; Luminant Generation Company LLC; Luminant Mining Services Company LLC; and TXU Energy Retail Company LLC.

*al., for a Second Order Authorizing Certain of the Debtors to Honor Obligations to Certain Retirees on Account of Non-Qualified Benefit Programs* (the "Kirby Declaration"). In further support of this Motion, the Debtors respectfully state as follows.

**Jurisdiction and Venue**

1.    The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Debtors confirm their consent pursuant to rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Bankruptcy Rules") to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2.    Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.    The bases for the relief requested in this Motion are sections 105(a), 362, 363, and 507(a)(4)-(5) of title 11 of the United States Code (the "Bankruptcy Code"), and rule 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

**Relief Requested**

4.    On July 1, 2014, the Debtors filed the *Amended Motion of Energy Future Holdings Corp., et al., for Entry of an Order Authorizing Certain of the Debtors to Continue Honoring Obligations to Retirees and Non-Insider Employees on Account of Non-Qualified Benefit Programs* [D.I. 1441] (the "2014 Non-Qualified Benefits Motion") seeking to honor certain obligations to current, non-insider and former employees under the Non-Qualified

Benefit Programs (as herein defined).  On August 12, 2014, the Court approved the *Order Authorizing Certain of the Debtors to Continue Honoring Obligations to Retirees and Non-Insider Employees on Account of Non-Qualified Benefit Programs* [D.I. 1819] (the "2014 Non-Qualified Benefits Order") authorizing the Debtors to honor certain obligations under the Non-Qualified Benefits Programs, subject to certain individual and aggregate monetary caps.  Specifically, under the 2014 Non-Qualified Benefits Order, the Debtors were prohibited from honoring obligations to any: (a) insider; (b) current employee; and (c) former employee, or current employee that becomes a former employee, who at the time of leaving employment with the Debtors held a title of "Senior Vice President," "Executive Vice President," or "C-level". The Debtors agreed to defer a discussion on such participants until these chapter 11 cases had progressed further and in order to obtain the remaining relief requested without further delay.  As discussed herein, based on subsequent developments in these chapter 11 cases and diligence provided by the Debtors, the Debtors understand that the U.S. Trustee does not object to entry of an order permitting the Debtors to pay ordinary course obligations to participants who retired with a title of "Senior Vice President," "Executive Vice President," or "C-level".

5.      As such, by this Motion, the Debtors seek limited, additional relief not included in the 2014 Non-Qualified Benefits Order. [3]  Specifically, the Debtors seek entry of an Order authorizing, but not directing, Participating Debtors to honor obligations under the Non-Qualified Benefit Programs, to any former employee, who, at the time of leaving employment with the Debtors held a title of "Senior Vice President," "Executive Vice

---

[3]     For the avoidance of doubt, the Debtors are not seeking relief with respect to any active employees or any individuals who are excluded from the relief authorized in the requested in the *Order (Second Final) Authorizing the Debtors to (A) Pay Certain Prepetition Amounts on Account of Non-Insider Compensation Programs and (B) Continue the Non-Insider Compensation Programs in the Ordinary Course of Business on a Postpetition Basis* [D.I. 1420].

President," or "C-level," (collectively, the "Retirees") (approximately $13.5 million in the aggregate), subject to the same $70,000 individual annual cap but an increased Aggregate Annual Cap (as defined below) in an amount not to exceed $2.8 million.  Stated differently, the Participating Debtors are seeking to honor obligations to the Retirees who were not included in the relief granted by the Court in the 2014 Non-Qualified Benefits Order, subject to certain limitations.

## Background

6.      On April 29, 2014 (the "Petition Date"), each of the Debtors filed a voluntary petition with the Court under the Bankruptcy Code.  The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  The Court has entered a final order for joint administration of these chapter 11 cases [D.I. 849].  The Court has not appointed a trustee.  The Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") formed an official committee of unsecured creditors of Energy Future Competitive Holdings Company LLC ("EFCH"), Texas Competitive Electric Holdings Company LLC ("TCEH"), the direct and indirect Debtor subsidiaries of EFCH and TCEH, and EFH Corporate Services Company (the "TCEH Creditors' Committee") on May 13, 2014 [D.I. 420] and an official committee of unsecured creditors of Energy Future Holdings Corp., Energy Future Intermediate Holding Company, LLC, EFIH Finance, Inc., and EECI, Inc. (the "EFH Creditors' Committee") on October 27, 2014 [D.I. 2570].  Further information regarding the Debtors' business operations and capital structure is set forth in the declaration of Paul Keglevic in support of the Debtors' first day motions [D.I. 98].

## I.      Overview of the Non-Qualified Benefit Programs.

7.      The Debtors have, through the Participating Debtors, previously offered two

non-qualified benefit programs to certain eligible employees: (a) a non-contributory, non-qualified pension plan that provides retirement benefits to participants whose tax-qualified pension benefits are limited due to restrictions under the Internal Revenue Code and/or deferrals to other defined benefit programs (the "SSRP")[4] and (b) a contributory, non-qualified defined contribution plan that permitted participants to voluntarily defer a portion of their base salary and/or annual incentive plan bonuses (the "SDP" and, together with the SSRP, the "Non-Qualified Benefit Programs").[5]  *See* Kirby Decl. ¶ 3.

- *SSRP*. As of March 31, 2015, obligations to current non-insider employees and former employees under the SSRP total approximately $23.8 million. *Id.* These obligations cover: (a) retirees receiving traditional benefits under the SSRP, (b) participants whose benefits have vested but who are not yet eligible to receive payments, and (c) active employees who have earned but not yet received payments. *Id.*

- *SDP*. As of March 31, 2015, obligations to eligible former employees total approximately $5.2 million. *Id.*

8.      Under the Non-Qualified Benefit Programs, the total obligations owed to the Retirees are approximately $600,000 for 2014, $1.1 million for 2015, and $1 million for 2016 (for a total of approximately $2.7 million).  *See* Kirby Decl. ¶ 4.  In honoring the Retiree obligations, the Debtors will not incur substantial administrative cost as the necessary payment mechanisms are already in place, in compliance with the 2014 Non-Qualified Benefits Order.  *Id.* The Debtors anticipate that the process to pay the Retirees will be seamless and not

---

[4]   The Participating Debtors previously maintained a First Supplemental Retirement Plan. All amounts under the First Supplemental Retirement Plan were paid through a secular trust in 2013 and neither the trust nor the First Supplemental Retirement Plan is in existence as of the Petition Date.  All plan documentation related to the Second Supplemental Retirement Plan refers to such plan as the "Second" Supplemental Retirement Plan and for the sake of consistency, the Participating Debtors have used the same nomenclature in this Motion.

[5]   Additional information on the Non-Qualified Benefit Programs can be found in the 2014 Non-Qualified Benefits Motion.

administratively burdensome.[6]  *Id.*

## II.    The 2014 Non-Qualified Benefits Order.

9.      In the summer of 2014, the Debtors, the U.S. Trustee, the TCEH Creditors'
Committee, and the ad hoc group of TCEH unsecured noteholders, discussed the relief requested
in the 2014 Non-Qualified Benefits Motion.  During the negotiations, these parties sought further
diligence in order to become comfortable with the breadth of the relief requested.  Ongoing
conversations would inevitably have led to a delay in relief while the Debtors were anxious to
provide payment to those retirees with the most urgent need for such relief.  As such, the
Retirees (whose relief the Debtors seek again here), as a byproduct of negotiations and
compromise, were excluded from the 2014 Non-Qualified Benefits Order.  After numerous
diligence sessions and extensive discussions, the parties reached an agreement culminating in the
2014 Non-Qualified Benefits Order.

10.     The 2014 Non-Qualified Benefits Order authorizes, but does not direct, the
Debtors to honor certain obligations arising in connection with the Non-Qualified Benefits
Programs; *provided, however*, that the aggregate amount paid shall not exceed $1.5 million for a
given calendar year (the "Aggregate Annual Cap"); *provided further*, that no individual
participant shall be paid more than $70,000 in the aggregate for a given calendar year under both
the SSRP and SDP.  The 2014 Non-Qualified Benefits Order precludes payment to the following
parties: (a) any insider, (b) any current employee, and (c) any former employee, or any current
employee that becomes a former employee, who at the time of leaving employment with the

---

[6]    EFH Corp. uses the services of Fidelity to pay those participants who are entitled to payments under the SSRP.
The Debtors will continue to use Fidelity in paying obligations arising from the Non-Qualified Benefits
Programs to Retirees.  Additional information regarding the mechanics can be found in the *Amended Motion of
Energy Future Holdings Corp.,* et al., *for Entry of an Order Authorizing Certain or the Debtors to Continue
Honoring Obligations to Retirees and Non-Insider Employees on Account of Non-Qualified Benefit Programs*
[D.I. 1441].

Debtors held a title of "Senior Vice President," "Executive Vice President," or "C-level".

11.    As described in the 2014 Non-Qualified Benefits Motion, obligations under the Non-Qualified Benefits Programs are, in part, funded by rabbi trusts owned by EFH Corp. whose assets are subject to substantial restrictions and are available to satisfy creditor claims against the Participating Debtors.  After discussions with various parties, the 2014 Non-Qualified Benefits Order (a) authorizes the Debtors to use the assets in the rabbi trusts to satisfy obligations under the SDP (subject to the limitations described therein) and (b) prohibits the Debtors from using the assets in the rabbi trust to satisfy obligations under the SSRP and instead requires each Participating Debtor to reimburse EFH Corp. for payments made by EFH Corp. with respect to the SSRP on behalf of another Participating Debtor (consistent with prepetition practices).[7] Those limitations will continue to apply with respect to the relief granted pursuant to this Motion.

## III.    Extending Relief to the Retirees.

12.    After entering the 2014 Non-Qualified Benefits Order, the Debtors, counsel to certain of the Retirees, and the U.S. Trustee continued discussions regarding Retiree relief. Several months after the entry of the 2014 Non-Qualified Benefits Order, the Debtors  obtained Court authority (a) to honor payments under, and to continue to perform under, certain insider compensation programs and (b) approving certain insider and non-insider compensation programs for 2015 (which were substantially similar and in many cases exactly identical to the compensation programs approved in 2014).[8]  Additionally, in connection with the insider and

---

[7]    As of March 31, 2015, the SSRP rabbi trust has approximately $14.4 million in assets.  In compliance with the 2014 Non-Qualified Benefits Order, no assets of the SSRP rabbi trusts have been used to satisfy obligations under the SSRP.  As of March 31, 2015, the SDP rabbi trust has approximately $9.7 million in assets.

[8]    *See Order Authorizing the Debtors to (A) Pay Certain Prepetition Amounts on Account of the Insider Compensation Programs and (B) Continue the Insider Compensation Programs on a Postpetition Basis* [D.I. 2595]; *Order Approving the 2015 Compensation Programs* [D.I. 3052].

non-insider compensation relief, the Debtors confirmed that none of the Retirees were insiders (as defined under the Bankruptcy Code) as of the Petition Date.[9]  With this additional compensation relief and diligence in hand, the Debtors and the U.S. Trustee engaged in discussions regarding the scope of relief granted in the 2014 Non-Qualified Benefits Order. Ultimately, in light of such diligence, the subsequent compensation relief approved by the Court following the entry of the 2014 Non-Qualified Benefits Order, and the narrow scope of relief requested in this Motion, the Debtors assert that the issues raised and the concerns of the U.S. Trustee are resolved.

13.    Consequently, the Debtors are eager to provide the relief requested to the Retirees, a small group composed of approximately 32 individuals, who worked in senior positions while employed with the Debtors and were in many instances, industry leaders.  *See* Kirby Decl. ¶ 5.  As a number of the Retirees are in positions of influence, frequently interact with the Debtors' current employees, and often interact with the Debtors' leadership team, the Retirees remain influential leaders within the Debtors' businesses and throughout the communities served by the Debtors.  *Id.*  Additionally, they are well-equipped to preserve the Debtors' long-standing and crucial relationships with key constituents in the Texas energy market, including various regulators, political leaders, community leaders, and vendors that are necessary for the Debtors' business operations.  *Id.*  With their significant industry experience and knowledge, the Retirees are solid allies for the Debtors' in their ongoing businesses.  *Id.* Importantly, the Participating Debtors' obligations under the Non-Qualified Benefit Programs represent compensation that the Retirees earned in the ordinary course of business that was either added to their retirement through the SSRP or earned by the Retiree as base salary and/or annual

---

[9]    *See* 11 U.S.C. 101 (31) (defining the term insider as used in the Bankruptcy Code).

incentive plan bonus, receipt of which was deferred by the Retiree until a later date pursuant to the SDP, if the employee so opted. *Id.* And many of the Retirees heavily rely upon the payments arising under Non-Qualified Benefit Programs, which often constitutes a material share of their current income. *Id.*

14.     For these reasons, the Debtors seek authority, but not direction to honor obligations under the Non-Qualified Benefits Programs to the Retirees, subject to certain individual and aggregate monetary caps, in the ordinary course of business on a postpetition basis and honor related administration costs.

**Basis for Relief**

**I.      Sufficient Cause Exists to Authorize the Debtors to Honor Non-Qualified Benefit Programs**

15.     Courts in the Third Circuit and elsewhere generally recognize that debtors may pay prepetition claims that are essential to the continued operation of the debtor's business. *See, e.g.*, *In re Meridian Auto. Sys.-Composite Operations, Inc.*, 372 B.R. 710, 714 (Bankr. D. Del. 2007) (granting the debtor authority to pay prepetition obligations owed to certain critical vendors); *In re Primary Health Sys., Inc.*, 275 B.R. 709, 710 (Bankr. D. Del. 2002) (allowing payment of prepetition wages upon a finding that such relief was "essential to the continued operation of the debtors' businesses"); *In re Just for Feet, Inc.*, 242 B.R. 821, 824-45 (Bankr. D. Del. 1999) (noting that debtors may pay prepetition claims that are essential to the continued operation of the debtor's business). Courts have relied on several legal bases in approving such relief.

16.    Courts generally recognize that debtors may pay prepetition claims under section 363(b) of the Bankruptcy Code where there is a sound business purpose for the payment of prepetition obligations, and where the debtor is able to "articulate some business justification, other than the mere appeasement of major creditors."[12]  *See, e.g.*, *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) (granting debtor authority to pay prepetition wages); *Armstrong World Indus. Inc. v. James A. Phillips, Inc., (In re James A. Phillips, Inc.)*, 29 B.R. 391, 398 (Bankr. S.D.N.Y. 1983) (granting the debtor the authority to pay prepetition claims of suppliers who were potential lien claimants).

17.    Here, the relief requested in this Motion will extend payments arising under the Non-Qualified Benefit Programs to a small subset of former employees, originally sought but excluded from, the 2014 Non-Qualified Benefits Order.  By extension of this relief, the Debtor's estates and creditors will benefit from a continued positive relationship between the Debtors and the Retirees.  *See* Kirby Decl. ¶ 6.  The Retirees, as leaders in the communities served by the Debtors, are indispensable resources of institutional knowledge and experience.  *Id*. Additionally, they are conduits for forging and continuing critical relationships with key players, connecting the Debtors with inter and intra-industry contacts.  *Id*.  From this perspective, the

---

[10]    Moreover, pursuant to section 105(a) of the Bankruptcy Code, courts have developed a "necessity of payment" rule that justifies payment of prepetition claims.  *See, e.g.*, *In re Lehigh & New England Ry. Co.*, 657 F.2d 570, 581 (3d Cir. 1981) (holding that a court could authorize the payment of prepetition claims if such payment was essential to the continued operation of the debtor); *In re Penn Cent. Transp. Co.*, 467 F.2d 100, 102 n.1 (3d Cir. 1972) (holding that the necessity of payment doctrine permits "immediate payment of claims of creditors where those creditors will not supply services or material essential to the conduct of the business until their pre-reorganization claims have been paid"); *In re Friedman's, Inc.*, 2011 WL 5975283, at *3 (Bankr. D. Del. Nov. 30, 2011) ("[M]ost courts will allow payments [of prepetition claims] under the 'doctrine of necessity,' if the debtor establishes that in its business judgment making such payments is critical to the survival of the debtor's business"); *In re Columbia Gas Sys., Inc.*, 171 B.R. 189, 191–92 (Bankr D. Del. 1994) (noting that debtors may pay prepetition claims that are essential to the continued operation of the debtor's business).  The rationale for the necessity of payment rule—the rehabilitation of a debtor in reorganization cases—is "the paramount policy and goal of Chapter 11."  *Ionosphere Clubs*, 98 B.R. at 176; *Just for Feet*, 242 B.R. at 826 (finding that payment of prepetition claims to certain trade vendors was "essential to the survival of the debtor during the chapter 11 reorganization.").

Retirees are important to the Debtors preserving their role in the Texas energy market. *Id.*

18.    Importantly, the amounts payable under the Non-Qualified Benefit Programs reflect compensation earned by eligible, participating employees. *See* Kirby Decl. ¶ 7. These amounts do not represent new compensation, but are rather amounts that the Retirees already earned in the ordinary course of business. *Id.* Accordingly, the Debtors' failure to honor obligations arising under the Non-Qualified Benefit Programs would result in an unwarranted withholding of previously earned compensation that is relied on by the Retirees.

19.    The importance of honoring obligations related to Non-Qualified Benefit programs has been recognized by courts in this district and others in granting relief similar to the relief requested in this Motion. *See*, *e.g.*, *In re Neenah Enters., Inc.,* No. 10-10360 (MFW) (Bankr. D. Del. 2010) (authorizing the debtor to immediately honor outstanding obligations in connection with a supplemental retirement plan for ten employees); *In re Lear Corp.,* No. 09-14326 (ALG) (Bankr. S.D.N.Y. 2009) (granting relief on a final basis to honor prepetition obligations in connection with several non-qualified benefit plans for certain of their key employees); *In re Charter Commc'ns, Inc.,* No. 09-11435 (JMP) (Bankr. S.D.N.Y. 2009) (authorizing the debtors to honor their obligations to certain critical employees under a non-qualified benefit program); *In re Tousa, Inc.,* No. 008-10928 (JKO) (Bankr. S.D. Fla. 2008) (granting relief on a final basis to honor their prepetition obligations in connection with a non-qualified benefit program that included certain critical employees); *In re Global Grossing Ltd.,* No. 02-40188 (REG) (Bankr. S.D.N.Y. 2002) (allowing the debtors to immediately honor obligations related to two non-qualified benefit plans for members of the debtors' management team, including authority to honor prepetition obligations).[11]

---

[11]    Because of the voluminous nature of the orders cited herein, such orders are not attached to this motion. Copies of these orders are available upon request to the Debtors' counsel.

## Waiver of Bankruptcy Rules 6004(a) and 6004(h)

20.    To implement the foregoing successfully, the Debtors seek a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the 14-day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h).

## Reservation of Rights

21.    Nothing contained in this Motion or any actions taken by the Debtors pursuant to relief granted in the Order is intended or should be construed as:  (a) an admission as to the validity of any claim against a Debtor entity; (b) a waiver of the Debtors' rights to dispute any claim on any grounds; (c) a promise or requirement to pay any claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Motion; (e) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; or (f) a waiver or limitation of the Debtors' rights under the Bankruptcy Code or any other applicable law.  If the Court grants the relief sought in this Motion, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity of any claim or a waiver of the Debtors' rights to subsequently dispute such claim.

## Notice

22.    The Debtors shall provide notice of this Motion on the date hereof via first class mail to:  (a) the U.S. Trustee; (b) counsel to the TCEH Creditors' Committee; (c) counsel to the EFH Creditors' Committee; (d) Wilmington Trust, N.A., in its capacity as administrative agent under the TCEH first lien credit agreement and collateral agent under the TCEH intercreditor agreements and counsel thereto; (e) Bank of New York Mellon Trust Company, N.A., in its capacity as indenture trustee under:  (i) the TCEH unsecured pollution control revenue bonds; and (ii) the EFCH 2037 Notes due 2037, and counsel thereto; (f) American Stock Transfer &

Trust Company, LLC, in its capacity as indenture trustee under: (i) the 9.75% EFH senior unsecured notes due 2019; (ii) the 10.0% EFH senior unsecured notes due 2020; (iii) the 10.875% EFH LBO senior unsecured notes due 2017; (iv) the 11.25%/12.0% EFH LBO toggle notes due 2017; (v) the 5.55% EFH legacy notes (series P) due 2014; (vi) the 6.50% EFH legacy notes (series Q) due 2024; and (vii) the 6.55% EFH legacy notes (series R) due 2034, and counsel thereto; (g) Computershare Trust Company, N.A. and Computershare Trust Company of Canada, in their capacities as indenture trustee under: (i) the 11.0% EFIH senior secured second lien notes due 2021; and (ii) the 11.75% EFIH senior secured second lien notes due 2022, and counsel thereto; (h) UMB Bank, N.A. in its capacity as indenture trustee under: (i) the 9.75% EFIH senior unsecured notes due 2019; and (ii) the 11.25%/12.25% EFIH senior toggle notes due 2018, and counsel thereto; (i) Delaware Trust Company of Delaware in its capacity as indenture trustee under: (i) the 6.875% EFIH senior secured notes due 2017; (ii) the 10.0% EFIH senior secured notes due 2020; and (iii), the 11.50% TCEH senior secured notes due 2020, and counsel thereto; (j) Law Debenture Trust Company of New York in its capacity as indenture trustee under: (i) the 10.25% TCEH senior unsecured notes due 2015; and (ii) the 10.50%/11.25% TCEH senior toggle notes due 2016, and counsel thereto; (k) Wilmington Savings Fund Society, FSB in its capacity as indenture trustee under the 15.0% TCEH senior secured second lien notes due 2021, and counsel thereto; (l) counsel to certain holders of claims against the Debtors regarding each of the foregoing described in clauses (c) through (j); (m) the agent for the TCEH debtor-in-possession financing facility and counsel thereto; (n) the agent for the EFIH debtor-in-possession financing facility and counsel thereto; (o) counsel to certain holders of equity in Texas Energy Future Holdings Limited Partnership; (p) counsel to the Ad Hoc Committee of TCEH Unsecured Noteholders; (q) counsel to the Ad Hoc Committee of

TCEH Second Lien Noteholders; (r) Oncor Electric Delivery Holdings Company LLC and counsel thereto; (s) Oncor Electric Delivery Company LLC and counsel thereto; (t) the Securities and Exchange Commission; (u) the Internal Revenue Service; (v) the Office of the United States Attorney for the District of Delaware; (w) the Office of the Texas Attorney General on behalf of the Public Utility Commission of Texas; (x) counsel to the Electric Reliability Council of Texas; (y) those parties that have requested notice pursuant to Bankruptcy Rule 2002; (z) the Bank of New York Mellon; (a)(a) Fidelity; and (b)(b) the Retirees.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

### **Prior Request**

23.     As described herein, the relief sought in this Motion seeks to extend relief granted by the Court pursuant to the 2014 Non-Qualified Benefits Order.

*[Remainder of page intentionally left blank.]*

WHEREFORE, the Debtors respectfully request that the Court enter the Order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested in this Motion and granting such other and further relief as is appropriate under the circumstances.

Dated:  May 11, 2015
      Wilmington, Delaware

*/s/ Jason M. Madron*

**RICHARDS, LAYTON & FINGER, P.A.**
Mark D. Collins (No. 2981)
Daniel J. DeFranceschi (No. 2732)
Jason M. Madron (No. 4431)
920 North King Street
Wilmington, Delaware 19801
Telephone:    (302) 651-7700
Facsimile:    (302) 651-7701
Email:    collins@rlf.com
        defranceschi@rlf.com
        madron@rlf.com

-and-

**KIRKLAND & ELLIS LLP**
Edward O. Sassower, P.C. (admitted *pro hac vice*)
Stephen E. Hessler (admitted *pro hac vice*)
Brian E. Schartz (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022-4611
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900
Email:    edward.sassower@kirkland.com
        stephen.hessler@kirkland.com
        brian.schartz@kirkland.com

-and-

James H.M. Sprayregen, P.C. (admitted *pro hac vice*)
Marc Kieselstein, P.C. (admitted *pro hac vice*)
Chad J. Husnick (admitted *pro hac vice*)
Steven N. Serajeddini (admitted *pro hac vice*)
300 North LaSalle
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200
Email:    marc.kieselstein@kirkland.com
        james.sprayregen@kirkland.com
        chad.husnick@kirkland.com
        steven.serajeddini@kirkland.com

*Co-Counsel to the Debtors and Debtors in Possession*