# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | ) )  Chapter 11 |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | )  Case No. 14-10979 (CSS) )  |
| Debtors. | )  (Jointly Administered) ) ) |
|  | )  **Re:  D.I. 4441** |

## OBJECTION OF THE EFH OFFICIAL COMMITTEE TO THE THIRD MOTION OF ENERGY FUTURE HOLDINGS CORP., *ET AL.*, FOR ENTRY OF AN ORDER EXTENDING THE DEBTORS' EXCLUSIVE PERIODS TO FILE A CHAPTER 11 PLAN AND SOLICIT ACCEPTANCES THEREOF PURSUANT TO SECTION 1121 OF THE BANKRUPTCY CODE

The official committee of unsecured creditors (the "**EFH Committee**") of Energy Future Holdings Corporation ("**EFH**"), Energy Future Intermediate Holding Company LLC ("**EFIH**"), EFIH Finance Inc., and EECI, Inc. hereby submits this objection to the third motion (the "**Motion**")[2] of EFH and its affiliated debtors and debtors in possession (collectively, the "**Debtors**") for an order extending the Debtors' exclusive periods to file a chapter 11 plan and solicit acceptances thereof pursuant to section 1121 of title 11 of the United States Code (the "**Bankruptcy Code**") [D.I. 4441], and respectfully represents as follows:

## Objection

### A.    Only a Short Extension of Exclusivity Is Appropriate

1.    The Court recently noted that these chapter 11 cases are "in a delicate place" and delayed plan confirmation litigation in order to facilitate further efforts to build

---

[1]    The last four digits of Energy Future Holdings Corp.'s taxpayer identification number are 8810.  The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201.  Due to the large number of debtors in these chapter 11 cases, for which joint administration has been granted, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

[2]    All capitalized terms not otherwise defined herein are to be given the meanings ascribed to them in the Motion.

consensus among stakeholders.  (May 13, 2015 Hr'g Tr. 39:12-40:16.)  The Debtors' Motion

repeatedly urges the need to pursue the auction process for Oncor Electric Delivery Holdings

Company LLC ("**Oncor**"), the Court-sanctioned 'T-side' mediation, and "active discussions with

potential bidders and various creditor constituents to develop a transaction to purchase Oncor,

premised on its conversion to a REIT structure."  (Motion at ¶ 21.)

   2. The EFH Committee is concerned that the Debtors, who still seek a joint

plan for the 'E side' and the 'T side', will not be able to craft a joint plan that is confirmable as to

EFH, EFIH, EFIH Finance Inc., and EECI, Inc. (collectively, the "**EFH Debtors**").  Nonetheless,

the EFH Committee recognizes that the Court believes the Debtors should have "some runway

[in] connection with alternative plan structure[s]."  (May 13, 2015 Hr'g Tr. 40:13-16.)  The EFH

Committee would, of course, welcome a plan of reorganization that pays claims against the EFH

Debtors in full, a proposition that appears to be the basis of all plan efforts currently underway.

   3. The EFH Committee has not been provided any details of these alternative

plan structures other than what is contained in the public record, has not been permitted to access

any Oncor bid information, and has not received any insight into the 'T-side' plan mediation.

The EFH Committee cannot sit waiting indefinitely, without this critical information, to see if

unimpaired treatment of claims against the EFH Debtors may materialize someday.

   4. In light of the Court's recent comments, along with the representations

that creditors of the EFH Debtors will be paid in full and that the alternative plan structures will

come to a head quickly, the EFH Committee does not object to a reasonable further extension of

the exclusivity periods by 60 days, to **August 23, 2015** (Filing Exclusivity Period) and **October**

**23, 2015** (Soliciting Exclusivity Period).[3]  But stakeholders and the Court should be able to consider the outcome of these alternative plan efforts before determining whether a further extension of exclusivity is appropriate for the EFH Debtors.[4]  Any further extension at this time could prejudice the creditors of the EFH Debtors, as discussed below.

**B.      The Debtors' Burden to Prove Cause**

        5.      These cases are jointly administered but not substantively consolidated. Joint administration "is simply to make case administration easier and less expensive" and "has absolutely no impact on the legal rights and obligations of the [EFH] Debtors[s] [and] [c]reditors of [the EFH Debtors]."  *Matter of Munford, Inc.*, 115 B.R. 390, 398 (Bankr. N.D. Ga. 1990); *In re Knobel*, 167 B.R. 436, 440 (Bankr. W.D. Tex. 1994) (quoting *In re McCulley*, 150 B.R. 358, 360 (Bankr. M.D. Pa. 1993)).  By contrast, the purpose of substantive consolidation is to "ensure equitable treatment of all creditors."  *In re Cooper*, 147 B.R. 678, 682 (Bankr. D. N.J. 1992) (citations omitted).  Accordingly, unless the Debtors are substantively consolidated, creditors of the EFH Debtors are entitled to the resolution of the important issues in the bankruptcy cases of the EFH Debtors *in the best interests of the EFH Debtors*, not in the blended best interests of the Debtors taken as a whole.

        6.      The EFH Debtors bear the burden to show "cause" for an extension of the Filing and Soliciting Exclusivity Periods with respect to the EFH Debtors.  "Cause" is not defined in the Bankruptcy Code and is determined through a fact-intensive inquiry; an extension

---

[3]    The EFH Committee also reserves its rights to terminate the Debtors' exclusivity with respect to the EFH Debtors for cause as permitted under the Bankruptcy Code and reserves its rights to seek termination of the joint administration of these chapter 11 cases.

[4]    The EFH Committee has no objection to the requested extension of the exclusive periods under section 1121 of the Bankruptcy Code with respect to Energy Future Competitive Holdings LLC and its Debtor subsidiaries (collectively, the "**TCEH Debtors**").

of exclusivity for cause is not granted "routinely or cavalierly." *In re McLean Indus., Inc.*, 87 B.R. 830, 834 (Bankr. S.D.N.Y. 1987). Because the EFH Debtors have retained exclusivity for over a year and this is the third extension request, the EFH Debtors' "burden gets heavier." *Official Comm. of Unsecured Creditors of Mirant Ams. Generation, L.L.C.* v. *Mirant Corp. (In re Mirant Corp.),* No. 04-CV-476-A, 04-CV-530-A, 2004 U.S. Dist. LEXIS 19796, at *8 (N.D. Tex. Sept. 30, 2004). A canvassing of the factors courts examine in determining whether to grant an extension of exclusivity establishes that only a shorter exclusivity extension is appropriate.[5]

**C.    The EFH Debtors Do Not Need to Wait for the TCEH Debtors**

7.    The EFH Debtors' reorganization is at this point being delayed by joint administration and the failure to reorganize the TCEH Debtors. Contrary to the Debtors' preferred narrative, the EFH Debtors' bankruptcy cases are not particularly complicated. The primary underlying asset of the EFH Debtors is an 80% interest in Oncor, a regulated transmission utility with a 'ring-fenced' structure and a separate management team. The EFH Debtors, due to the ring-fencing of Oncor, require virtually no management or corporate overhead. There is consensus among stakeholders as to the preferred path forward for the EFH Debtors: sell the Oncor stake to the highest bidder (third party or creditors) in a competitive process and use the proceeds to pay allowed claims. There has been no assertion in this Court that Oncor is not property of the estates of the EFH Debtors, or otherwise cannot be sold by them

---

[5]    The factors include the following, as applicable to the EFH Debtors: (i) the size and complexity of the case, (ii) the existence of good-faith progress, (iii) the necessity of sufficient time to negotiate and prepare adequate information, (iv) whether the debtor is paying its debts as they become due, (v) whether the debtor has demonstrated reasonable prospects for filing a viable plan, (vi) whether the debtor has made progress negotiating with creditors, (vii) the length of time a case has been pending, (viii) whether the debtor is seeking an extension to pressure creditors, and (ix) whether or not unresolved contingencies exist. *See In re Cent. Jersey Airport Servs., LLC*, 282 B.R. 176, 184 (Bankr. D. N.J. 2002).

free and clear under section 363 of the Bankruptcy Code or in connection with a plan.  Indeed, there is a mature auction process to dispose of the Oncor interests, a process run by M&A professionals that might well have been completed by now if creditors of the TCEH Debtors had not accepted every opportunity provided by joint administration to delay that auction process, or if the EFH Debtors had not wrongly moved this Court for relief with respect to Oncor on a joint basis as "the Debtors," even though Oncor is the sole property of the EFH Debtors' estates.

8.     Similarly, "intercompany claims"—invoked to forestall discussion of the separation of the EFH Debtors from the TCEH Debtors—present no issues of unusual complexity for the EFH Debtors.  At the commencement of these bankruptcy cases, the EFH Debtors believed that the balance of intercompany claims against them was *zero*.  This is a completely understandable position.  There is only one claim by the TCEH Debtors against the EFH Debtors asserted on the record of these cases, to which the EFH Committee has objected and all stakeholders other than creditors of the EFH Debtors have urged the Court to delay resolving.  Beyond that tax claim, there is a collection of speculative assertions of avoidance actions, chiefly relating to an eight-year old leveraged buy-out with a $8 billion equity check.  Otherwise, the EFH Debtors and the TCEH Debtors are separate credit silos, with clear and consistent bond disclosure limiting investor recourse to the applicable silo, separate cash pooling and separate allocation of corporate overhead.

9.     In fairness, at the commencement of their bankruptcy cases there was an issue of special complexity that bound the EFH Debtors to the TCEH Debtors together:  tax. EFH is a taxpayer and the TCEH Debtors are disregarded entities with a tax basis below the assumed market value of their assets.  At the commencement of these cases, "the Debtors" reported to their constituencies that the gain upon a sale of the assets of the TCEH Debtors

-5-

would exceed the tax basis of the assets sold plus available net operating losses ("**NOLs**"), creating a significant tax liability for EFH.  But the EFH Committee believes that this is no longer the case (if it ever was) and the EFH Committee can pursue and confirm its own plan of reorganization without material tax risk.  EFH's increasing NOLs are sufficient to shield all gain on a sale by the TCEH Debtors on a liquidation value basis and, likely, on a going concern basis as well.

10.     Moreover, to the extent some gain is not shielded by NOLs, the resulting tax liability does not belong solely to EFH, but is shared with the TCEH Debtors.  No material tax work appears to have been done for the EFH Debtors other than by conflicted counsel:  *i.e.*, counsel that also represents the TCEH Debtors.  Tax conflict matters have therefore been neglected.  Chief among these conflict matters is that EFH can—and in the view of the EFH Committee should immediately—make a 'check the box' election to end the free-loader 'disregarded entity' status of certain TCEH Debtor subsidiaries with valuable assets (such as Luminant Generation Company LLC).  A 'check the box' election will make these Debtors jointly and severally liable for taxes as a member of the EFH consolidated tax group, an action entirely within the power of EFH under the laws of this Circuit.  *See In re Majestic Star Casino, LLC*, 716 F.3d 736 (3d Cir. 2013) (holding that a debtor entity's disregarded tax status applies at the election of such entity's shareholder and is not property of the entity's estate).  These Debtors will then be liable for taxes pursuant to either administrative claims by the IRS and/or administrative contribution claims by EFH.  (Any taxable asset sale, after all, would be of property of the TCEH Debtors' estates, and *their* creditors would receive the proceeds.)  A 'check the box' election would not mandate either a tax-free or a taxable sale structure.  It merely

distributes equitably what tax risk remains after the decline in the value of the assets of the TCEH Debtors and the increase in available NOLs.[6]

11.     These cases become very complex if jointly administered toward the goal of a single plan of reorganization for the EFH Debtors and the TCEH Debtors, to be confirmed at a single "Super Hearing."  But it is the dynamics of the TCEH Debtors' cases that add the complexity, chiefly in the form of claims leveled by deeply out-of-the-money creditors against senior creditors and insiders such as sponsors, officers, and directors (labeled 'disinterested' or not).  A joint plan of reorganization is in the interests of the owners, officers, and directors of EFH; but for creditors of the EFH Debtors, breaking the link to the TCEH Debtors makes these cases easier, certainly cheaper and likely quicker; and potentially leads to a better result.  The EFH Debtors and their creditors must be free to consider presenting a plan for the EFH Debtors if current alternative plan negotiations are unsuccessful.

**D.     Creditors of the EFH Debtors May be Prejudiced by Waiting**

12.     The EFH Committee has been told by various stakeholders that there is no prejudice to its constituents because the value of the estates of the EFH Debtors is—today—sufficient to pay all undisputed claims against the EFH Debtors in full.  Indeed, this proposition seems to be the premise of all current plan efforts by the both the EFH Debtors and the TCEH Debtors.  The disinterested directors of EFH based their approval of the plan on file on an Oncor enterprise value of $18.5 billion, the expected resolutions of make-whole and postpetition interest claims at EFIH, and $1.274 billion of distributable value to creditors of EFH.  *See*

---

[6]     Pursuant to clear precedent in this Circuit, EFH's NOLs belong to EFH and accordingly, EFH must be compensated for any use of such NOLs by any entity.  *See In re Conex Holdings, LLC*, 518 B.R. 792, 802 (Bankr. D. Del. 2014) (Sontchi, J.) (a disregarded entity subsidiary's "assets, liabilities, income items, and deduction items will be treated as owned, owed, received, and incurred directly by its owner" parent taxpayer.").

*Omnibus Reply of the Disinterested Directors of Debtor Energy Future Holdings Corp. to Certain Creditors' Objections to Debtors' Motion for Entry of an Order Scheduling Certain Hearing Dates and Deadlines and Establishing Certain Protocols in Connection with the Confirmation of Debtors' Plan of Reorganization and Debtors' Disclosure Statement* [D.I. 4351] at ¶ 3.  This is required because the plan so obviously favors the interests of EFH's equity holders, not its creditors, and will violate the absolute priority rule if creditors of the EFH are not paid in full.  Similarly, even unsecured creditors of the TCEH Debtors seek to pay creditors of the EFH Debtors in full in connection with the alternative they are pursuing with the TCEH Debtors.  (*See, e.g.*, May 4, 2015 Hr'g Tr. 77:18-20 ("To be clear, our plan:  fully consensual on the T side.  E side creditors get paid their legal entitlements in full.") (statement of Chris Shore, counsel to the ad hoc group of TCEH unsecured noteholders); May 13, 2015 Hr'g Tr. 29:9-12 ("Under the alternate transaction that's being proposed, all of the EFH committee[']s[] constituents will receive their legal entitlements in full and will be unimpaired.") (statement of Chris Shore, counsel to the ad hoc group of TCEH unsecured noteholders)).

13.     A lengthy extension of the exclusive periods as requested by the EFH Debtors is prejudicial because the EFH Committee has no information to verify that any confirmable alternative plan of reorganization is *bona fide* or will in fact pay creditors of the EFH Debtors in full.  The EFH Committee is not privy to Oncor bid information and has not seen a single piece of paper concerning the 'bid' by unsecured creditors of the TCEH Debtors touted to this Court.  Every time the EFH Committee says "show us the money," the response is "soon."  The EFH Debtors have—at the request of creditors of the TCEH Debtors—further delayed the selection of a stalking horse bidder in the Oncor sale process, and the originally anticipated time to select a stalking horse bidder has passed.  The EFH Debtors, astoundingly,

-8-

have no firm deadline to select a stalking horse bidder, and provide no assurances that they ever will.

14.    The uncertainty introduced by these delays continues to destabilize the Oncor auction process, the intended foundation of the reorganization of the EFH Debtors. Meanwhile, time continues to pass. As all stakeholders are aware, the Debtors' estates are paying tens of millions of dollars in expenses with each passing month—by the Debtors' recent estimate, professional fees alone now average nearly a million dollars per day. (*See* May 4, 2015 Hr'g Tr. 26:22-24.) Creditors of the EFH Debtors have been paying their part of this enormous cost in return for very little actual progress toward unlocking even the substantial amounts that no one disputes should be paid to them—yet the Debtors now ask the Court to make them wait at least until the end of maximum exclusivity period as the Debtors struggle to reorganize the TCEH Debtors. That is too long without permitting the Court and all stakeholders to again evaluate exclusivity in August with the results of the touted alternative plan discussions and the 'T-side' mediation.

**E.    The Debtors Are Conflicted**

15.    Despite the prejudice resulting from further delay, patience in pursuit of a plan that pays creditors of the EFH Debtors in full might still be warranted were it not for growing conflicts of interest. These conflicts of interest are pushing "the Debtors" headlong towards an expensive and litigious fiasco.

16.    The central conflict of interest for "the Debtors" is that any reorganization of the TCEH Debtors will leave billions—perhaps as much as $20 billion—of unresolved, unpaid claims. There will, and perhaps should, be litigation by the creditors left without recovery. The EFH Debtors (and, indirectly, their creditors) are protected by the Bankruptcy Code and can resolve any litigation in an orderly manner through claims resolution and/or

estimation.  However, the equity holders of EFH, and the directors and officers of EFH, are not protected and face significant liability, including for their decisions in connection with these still-potentially-disastrous bankruptcy cases and the conflicts of interest that put the estates on their current path.  All joint plans—the RSA, the Debtors' plan on file and the plan allegedly being pursued with TCEH unsecured creditors—were developed in the service of using EFH estate value to purchase releases for insiders against claims from the creditors of the TCEH Debtors. The EFH Committee thus views any joint plan of reorganization as an actual conflict matter—for the Debtors, their advisors *and* the allegedly disinterested directors and managers at EFH and EFIH, each of whom (a) had pre-existing exposure to claims by the creditors of the TCEH Debtors and (b) benefits from exculpation and releases pursuant to a joint plan of reorganization. In the event that all creditors of the EFH Debtors are paid in full, it is perfectly acceptable for equity holders of EFH to take what would otherwise be an equity distribution and pay it to the TCEH Debtors for releases and other protections.  However, it is not acceptable to gamble for equity return with creditor money.

17.     The Debtors have retained exclusivity for over a year and their time-consuming and expensive efforts have led to a proposed joint plan that *no* creditor constituent supports.  Enough is enough.  The creditors of the EFH Debtors should not be forced to continue to bear the costs of delay if the current alternative plan efforts are unsuccessful.  Any further extension of the exclusivity periods should be limited to 60 days—the EFH Debtors have not demonstrated sufficient "cause" for a further extension at this time.

18.     For the reasons set forth herein, the EFH Committee respectfully requests that the Court enter an order limiting the relief requested in the Motion as described in this objection.

SC1:3863983.3

Dated:   Wilmington, Delaware
        May 26, 2015

**MONTGOMERY McCRACKEN WALKER & RHOADS, LLP**

*/s/ Mark A. Fink*
Natalie D. Ramsey (DE Bar No. 5378)
Davis Lee Wright (DE Bar No. 4324)
Mark A. Fink (DE Bar No. 3946)
1105 North Market Street, 15th Floor
Wilmington, DE  19801
Telephone: (302) 504-7800
Facsimile: (302) 504 -7820
E-mail:       nramsey@mmwr.com
           dwright@mmwr.com
           mfink@mmwr.com

– and –

**SULLIVAN & CROMWELL LLP**

Andrew G. Dietderich
Steven L. Holley
Robert J. Giuffra, Jr.
Brian D. Glueckstein
125 Broad Street
New York, New York  10004
Telephone:     (212) 558-4000
Facsimile:      (212) 558-3588
E-mail:         dietdericha@sullcrom.com
           holleys@sullcrom.com
           giuffrar@sullcrom.com
           gluecksteinb@sullcrom.com

*Counsel for The Official Committee of Unsecured Creditors of Energy Future Holdings Corp., Energy Future Intermediate Holding Company LLC, EFIH Finance Inc., and EECI, Inc.*

SC1:3863983.3