# EXHIBIT A

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|                                                    |     |                          |
| -------------------------------------------------- | --- | ------------------------ |
|                                                    | )   |                          |
| In re:                                             | )   | Chapter 11               |
|                                                    | )   |                          |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1]         | )   | Case No. 14-10979 (CSS)  |
|                                                    | )   |                          |
| Debtors.                                           | )   | (Jointly Administered)   |
|                                                    | )   |                          |
|                                                    | )   |                          |

**ORDER MAINTAINING UNDER SEAL PORTIONS OF "THE NOTICE OF
OBJECTION OF THE EFH OFFICIAL COMMITTEE TO GENERAL
UNSECURED TAX CLAIMS OF TEXAS COMPETITIVE ELECTRIC HOLDINGS
COMPANY LLC AGAINST ENERGY FUTURE HOLDINGS CORPORATION"**

Upon the motion (the "Motion")[2] of the Debtors for entry of an order (this "Order") the maintaining under seal portions of the Claim Objection as reflected in Redacted Claim Objection attached as **Exhibit 1** hereto; and the Court having found that it has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and the Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and the Court having found that venue of this case and the Sealing Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and the Court having found that the Debtors provided appropriate notice of the Motion and the opportunity for a hearing on the Sealing Motion under the circumstances; and the Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing, if any, before the Court (the "Hearing"); and

---

[1]   The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, which are being jointly administered, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

[2]   Capitalized terms not defined herein shall have the meanings ascribed to them in the Motion.

the Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before the Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.      The Motion is granted as set forth herein.

2.      The information that is redacted in the Redacted Claim Objection attached as **Exhibit 1** hereto (the "Redacted Information") shall remain under seal pursuant to sections 105(a) and 107(b) of the Bankruptcy Code, Bankruptcy Rule 9018, Local Bankruptcy Rule 9018-1, and the Protective Order.

3.      The Redacted Information is confidential, shall remain under seal, and shall not be made available to anyone without the consent of the Debtors, except that unredacted copies of the Claim Objection shall be provided to (a) the Court and (b) the other parties to the Protective Order on a confidential basis.

4.      Notice of the Motion as provided therein shall be deemed good and sufficient and the requirements of the Local Bankruptcy Rules are satisfied by such notice.

5.      Notwithstanding the possible applicability of Bankruptcy Rules 6004(h), 7062, 9014 or otherwise, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

6.      This Order is without prejudice to the rights of any party in interest to seek to declassify and make public any portion of the material filed under seal.

7.      The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Motion.

3

8.      The Court retains exclusive jurisdiction with respect to all matters arising from or

related to the implementation of this Order.

Dated: _____, 2015
        Wilmington, Delaware

_____
HONORABLE CHRISTOPHER S. SONTCHI
UNITED STATES BANKRUPTCY JUDGE

4

# EXHIBIT 1

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) Case No. 14-10979 (CSS) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |
| | ) Hearing Date:  June 1, 2015 at 10:30 a.m. |
| | ) Response Deadline:  May 26, 2015 at 4:00 p.m. |

**NOTICE OF OBJECTION OF THE EFH OFFICIAL COMMITTEE TO GENERAL
UNSECURED TAX CLAIMS OF TEXAS COMPETITIVE ELECTRIC HOLDINGS
COMPANY LLC AGAINST ENERGY FUTURE HOLDINGS CORPORATION**

**PLEASE TAKE NOTICE** that on the date hereof, the official committee of

unsecured creditors of Energy Future Holdings Corporation, Energy Future Intermediate Holding

Company LLC, EFIH Finance Inc., and EECI, Inc. (the "**EFH Committee**") filed the *Objection*

*of the EFH Official Committee to General Unsecured Tax Claims of Texas Competitive Electric*

*Holdings Company LLC Against Energy Future Holdings Corporation* (the "**Objection**").  The

undersigned counsel will present the Objection to the Honorable Christopher S. Sontchi,

Bankruptcy Judge of the United States Bankruptcy Court for the District of Delaware (the

"**Court**"), at 824 N. Market Street, 5th Floor, Courtroom No. 6, Wilmington, Delaware 19801, at

a hearing to be held on **June 1, 2015 at 10:30 a.m. (Eastern Time)** (the "**Hearing**").

**PLEASE TAKE FURTHER NOTICE** that responses, if any, to the relief

requested in the Objection must be filed electronically with the Court on the docket of *In re*

*Energy Future Holdings Corp.*, Case No. 14-10979 (CSS) in accordance with rule 5005 of the

---

[1]    The last four digits of Energy Future Holdings Corp.'s taxpayer identification number are 8810.  The location of
the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201.  Due to the large number of debtors in
these chapter 11 cases, for which joint administration has been granted, a complete list of the debtors and the
last four digits of their federal tax identification numbers is not provided herein.  A complete list of such
information may be obtained on the website of the debtors' claims and noticing agent at
http://www.efhcaseinfo.com.

Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware, and served by U.S. mail, overnight delivery, hand delivery or facsimile upon the undersigned counsel so as to be actually received no later than **May 26, 2015 at 4:00 p.m. (Eastern Time)**.

    **PLEASE TAKE FURTHER NOTICE** that only those responses that are timely filed, served and received will be considered at the Hearing.  Failure to file a timely response may result in entry of a final order sustaining the Objection as requested by the EFH Committee without further notice or a hearing.  The responding parties are required to attend the Hearing, and failure to attend in person or by counsel may result in the relief being granted or denied upon default.

    **PLEASE TAKE FURTHER NOTICE** that copies of the Objection may be obtained from the Court's website, https://ecf.deb.uscourts.gov for a nominal fee or, free of charge, the website of the Debtors' claims and noticing agent, http://efhcaseinfo.com.

SC1:3805967.5
3890567

Dated:    Wilmington, Delaware
          April 30, 2015

**MONTGOMERY, McCRACKEN, WALKER & RHOADS, LLP**

 /s/ Mark A. Fink
Natalie D. Ramsey (DE Bar No. 5378)
Davis Lee Wright (DE Bar No. 4324)
Mark A. Fink (DE Bar No. 3946)
1105 North Market Street, 15th Floor
Wilmington, DE  19801
Telephone: (302) 504-7800
Facsimile: (302) 504 -7820
E-mail:      nramsey@mmwr.com
             dwright@mmwr.com
             mfink@mmwr.com

– and –

**SULLIVAN & CROMWELL LLP**

Andrew G. Dietderich
Brian D. Glueckstein
Michael H. Torkin
Alexa J. Kranzley
125 Broad Street
New York, New York  10004
Telephone:    (212) 558-4000
Facsimile:    (212) 558-3588
E-mail:       dietdericha@sullcrom.com
              gluecksteinb@sullcrom.com
              torkinm@sullcrom.com
              kranzleya@sullcrom.com

*Counsel for the Official Committee of Unsecured Creditors of Energy Future Holdings Corp., Energy Future Intermediate Holding Company LLC; EFIH Finance Inc.; and EECI, Inc.*

-3-

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) Case No. 14-10979 (CSS) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |
| | ) **Re: D.I. 1237, 1294** |
| | ) |
| | ) **Hearing Date: June 1, 2015 at 10:30 a.m.** |
| | ) **Response Deadline: May 26, 2015 at 4:00 p.m.** |

**OBJECTION OF THE EFH OFFICIAL COMMITTEE TO GENERAL UNSECURED
TAX CLAIMS OF TEXAS COMPETITIVE ELECTRIC HOLDINGS COMPANY LLC
AGAINST ENERGY FUTURE HOLDINGS CORPORATION**

The official committee (the "**EFH Committee**") of unsecured creditors of Energy

Future Holdings Corporation ("**EFH**"), Energy Future Intermediate Holding Company LLC

("**EFIH**"), EFIH Finance Inc., and EECI, Inc. (together with EFH, EFIH and EFIH Finance Inc.,

the "**E-Silo Debtors**") hereby submits this objection (the "**Objection**") to the general unsecured

tax claims of Texas Competitive Electric Holdings Company LLC ("**TCEH**") against EFH in the

amount of $754,061,336 (the "**TCEH Tax Claims**"), and respectfully represents as follows:

**Preliminary Statement**

1.       The TCEH Tax Claims are the *only* material claims scheduled or filed

against the E-Silo Debtors by other Debtors.  They have been a source of considerable confusion

in these bankruptcy cases, but can be resolved expeditiously.  Resolution now will bring needed

clarity to the intercompany claims situation irrespective of the next steps in these bankruptcy

cases.

---

[1]      The last four digits of Energy Future Holdings Corp.'s taxpayer identification number are 8810.  The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201.  Due to the large number of debtors in these chapter 11 cases, for which joint administration has been granted, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

2.    On June 30, 2014, the Debtors filed TCEH's *Schedules of Assets and Liabilities* [D.I. 1294] (the "**TCEH Schedules**") and EFH's *Schedules of Assets and Liabilities* [D.I. 1237] (the "**EFH Schedules**" and together with the TCEH Schedules, the "**Schedules**"). These documents included an "Intercompany Payable" from EFH to TCEH in the amount of $773,729,459 (the "**Scheduled Claim**").

3.    The Debtors have informed the EFH Committee that the lion's share of the Scheduled Claim—$754,061,336—results from the mechanical copying onto the Schedules of two different entries in the Debtors' tax books.[2] Each entry allocates to TCEH a claim against EFH arising out of the loss of tax attributes purportedly attributable to TCEH during taxable years 2006 to 2012.  According to information provided by the Debtors,[3] the entries were:

- approximately $395.4 million attributed to the elimination of certain alternative minimum tax credits and other adjustments for taxable year 2006 (the "**AMT Credit Claim**"); and

- approximately $358.7 million attributed to the use of net operating losses ("**NOLs**") for taxable years 2006 through 2012 (the "**NOL Claim**").

4.    However, TCEH has no tax attributes.  TCEH is a 'disregarded entity' for federal income tax purposes.  During taxable years 2006 through 2012, all relevant tax attributes belonged to Energy Future Competitive Holdings Company ("**EFCH**"), TCEH's parent and a corporation for federal income tax purposes.  (EFCH became a 'disregarded entity' in April

---

[2]    As reflected in the *Notice of Amendments to Schedules of Assets and Liabilities for Debtor Energy Future Holdings Corp.* [D.I. 3586], filed by the Debtors on February 18, 2015 (the "**Schedule Amendment**"), $19,668,123 of the Scheduled Claim is attributed to unspecified "other intercompany claims."  The EFH Committee reserves the right to object to the remainder of the Scheduled Claim.

[3]    Amounts in this Objection are based on information provided by the Debtors and subject to change.

-2-

2013, after the taxable years to which this Objection relates.)  Nor can TCEH's claim as a 'disregarded entity' for its parent's tax attributes be justified in a contractual or equitable manner.  Both TCEH Tax Claims are simply mistakes.

5.      In most cases, such mistakes would have been corrected by an amended schedule.  But these are not most cases.  During the first six months of these bankruptcy cases, there was no EFH Committee to raise the concerns set forth in this Objection.  After the EFH Committee was appointed, the Debtors took the position that EFH could not correct the mistakes without first implementing conflict procedures, procedures that should have been in place at the commencement of these cases.  More recently, the mistakes have been left in place by the Debtors to 'grease the squeaky wheel' and move value from EFH to the increasingly insolvent estates of EFCH, TCEH and their debtor subsidiaries (the "**T-Silo Debtors**").  The delay in resolving these mistakes has interfered with plan negotiations and confused creditors.

6.      The TCEH Tax Claims are highly material, representing amounts in dispute larger than all of EFH's funded debt.[4]  The TCEH Tax Claims also are clearly erroneous and raise discrete issues that can be resolved by the Court within the four corners of a single agreement.  If extrinsic evidence is necessary, substantially all of the document discovery is complete through Legacy Discovery, and any remaining discovery can be finished expeditiously. The EFH Committee requests that the Court as soon as possible set a status conference to determine a schedule for adjudicating this Objection.

---

[4]     Excluding EFIH's holdings, as of EFH's chapter 11 filing, EFH had approximately $647 million of outstanding funded indebtedness—$582 million of legacy notes, $60 million of LBO notes and $5 million of unexchanged notes.  *See Declaration of Paul Keglevic, Executive Vice President, Chief Financial Officer, and Co-Chief Restructuring Officer of Energy Future Holdings Corp., et al., in Support of First Day Motions* [D.I. 98], ¶ 82.

SC1:3805967.5
3890567

**Statement of Facts**

A.    The EFH and EFCH Tax Group

7.    During the taxable years relevant to this Objection, 2006 through 2012, EFH and EFCH were each a corporation and a member of a consolidated group (the "**Tax Group**") for federal income tax purposes.  As such, EFH and EFCH were—and are today—jointly and severally liable for their federal income taxes for these taxable years.

8.    EFH filed a consolidated tax return for the Tax Group.  EFH acted as agent for the Tax Group and collected and paid the Tax Group's aggregate tax liability to the U.S. Treasury on behalf of each member.  During these taxable years, EFH and EFCH were the only members of the Tax Group with material activities.

9.    Each of EFH and EFCH had dozens of subsidiaries that were disregarded as separate from EFH and EFCH for federal income tax purposes.  EFCH's disregarded entity subsidiaries included TCEH and Luminant Generation Company LLC ("**Luminant**"), among many others.[5]  As disregarded entities, these subsidiaries had no income, gain, loss or deductions (or other tax attributes) of their own.  Instead, their activities were aggregated with the activities of the relevant Tax Group parent member (*i.e.*, either EFH or EFCH), and such parent member's other disregarded entity subsidiaries, to determine the income, gain, loss and deductions of the Tax Group parent member.

---

[5]    For purposes of simplicity, references to TCEH as a "disregarded entity" in this Objection also refer to TCEH's classification as a partnership, 99% owned by EFCH, in 2006 and 2007.  As a partnership, TCEH was not subject to federal income tax, and 99% of its income and losses (as well as the income and losses of its disregarded subsidiaries) was taken into account by EFCH as its 99% partner.  The other 1% was taken into account by TCEH's other partner, Texas Energy Holding Company.

SC1:3805967.5
3890567

10.     For most of these taxable years, no tax allocation agreement was in effect. However, on May 12, 2012, to fairly allocate Tax Group liability, EFH, EFCH and certain of their subsidiaries (including TCEH and Luminant) entered into the *Federal and State Income Tax Allocation Agreement Among the Members of the Energy Future Holdings Corp. Consolidated Group*, a copy of which is attached hereto as Exhibit A (the "**TAA**").  The TAA purports to be effective retroactively for taxable years 2010 through 2012.  The TAA does not purport to cover taxable years 2006 through 2009.  *See* Section 6.4 of the TAA.

11.     The TAA follows the logic of the federal tax laws.  Each party is either a "member" (*i.e.*, an entity like EFH and EFCH that is treated as a taxable corporation and part of the Tax Group for federal income tax purposes) or a "disregarded entity" (*i.e.*, a subsidiary of a member that is disregarded as separate from its parent member and has no independent tax status or attributes for federal income tax purposes).  The TAA provides for the allocation of liabilities or payables to each member (*i.e.*, a payable from EFCH to EFH) based on the income, gain, loss and deductions of such member, and then each member sub-allocates such liabilities or payables among its disregarded entity subsidiaries.  A disregarded entity subsidiary may only be allocated a payable or liability under the TAA to the extent that its parent member has been allocated a payable or liability based on the aggregate income, gain, loss and deductions of the parent member.  *See* Section 1.2 of the TAA.  Similarly, a disregarded entity subsidiary may only be allocated a receivable or benefit under the TAA to the extent that its parent member has been allocated a receivable or benefit based on the aggregate income, gain, loss and deductions of the parent member.  *See id.*

12.     The allocation provisions of the TAA are based directly on provisions of the applicable Treasury Regulations.  *See* Treas. Regs. §§ 1.1502-33(d) and 1.1552-1(a) (both of

-5-

which are mentioned in Section 1.2 of the TAA). The Treasury Regulations allocate and calculate the tax liabilities or losses of the corporate subsidiaries in the consolidated group (which subsidiaries are called "members" under Treas. Reg. § 1.1502-1(b)) for a number of purposes, including determining the tax basis in such member's stock. In each of these circumstances, tax liabilities and payables are calculated based on the aggregate income, gain, loss and deductions of each member and all of its disregarded entity subsidiaries, as a single tax enterprise. The Treasury Regulations do not allocate any benefit or liability to a disregarded entity subsidiary, but instead simply "disregard" the separate existence of such entities, attributing their activities and assets to their corporate owner.

13.    The relationship among corporate members and their disregarded entity subsidiaries under the TAA and the Treasury Regulations can be illustrated as follows:



14.    During taxable years 2006 through 2012, EFCH owned 100% of Luminant and TCEH, each of which was a disregarded entity subsidiary of EFCH during that period. As a general matter, EFCH had taxable income as a result of the activities of Luminant and other

-6-

operating subsidiaries, and tax deductions as a result of interest expense deemed paid by TCEH. TCEH was a holding company without other business activities, and did not contribute to EFCH's taxable income during these taxable years.

15.    During all of the relevant taxable years, EFCH had net taxable income as a member of the Tax Group, meaning that its interest expense deductions from TCEH did not fully offset its income from Luminant and other operating subsidiaries.  Accordingly, EFCH recorded obligations *to* EFH (not from EFH), because EFCH had net taxable income in respect of which EFH paid taxes to the U.S. Treasury.

B.    How the Book Entry Mistake Was Made

16.    The TCEH Tax Claims relate to book entries made after two different settlements in 2013.  Each settlement was entered into *after* EFCH became a disregarded entity in April 2013, but relates solely to taxable years *before* April 2013 when EFCH was a taxpaying corporation and member of the Tax Group.

17.    The AMT Credit Claim of approximately $395.4 million arises from a settlement with the U.S. Internal Revenue Service (the "**IRS**") reached in May 2013 (the "**May 2013 Settlement**").  In the May 2013 Settlement, the Tax Group agreed to eliminate certain alternative minimum tax credits ███████████████████████████████████████████

████████████████████[6]  The book entries underlying the AMT Credit Claim were made after the May 2013 Settlement.  Although the book entries show a payable to TCEH, the

---

[6]    Under section 108(b) of the Internal Revenue Code of 1986, as amended (the "**Internal Revenue Code**"), when an insolvent taxpayer has cancellation of indebtedness income, such income is excluded from taxable income but the taxpayer is required to reduce its tax attributes (including tax credits) and the tax attributes of other members of the consolidated group. ████████████████████████████████████████

████████████████████████████████████

-7-

Debtors have informed the EFH Committee that TCEH did not have standalone alternative minimum tax liability in respect of which it might have had alternative minimum tax credits, and that any such credits must have originated from the activities of Luminant or other entities.

18.    The NOL Claim of approximately $358.7 million arises out of a settlement with the IRS in March 2013, which is currently pending approval by the IRS (the "**March 2013 Settlement**").  Pursuant to the March 2013 Settlement, the Tax Group agreed to recognize an increase in EFCH's taxable income generated by Luminant for taxable years ███████████ ███████████████████████████████.  EFCH reduced this additional taxable income to ██████████████████████████████████████████████████ ███████████████████████████████████████[7]  The application of these NOLs decreased EFCH's additional tax liability by $358.7 million, from $1.29 billion to $931 million.  Although the NOLs did not belong to TCEH, the NOL Claim purports to reflect a right of TCEH to recover the value of these NOLs.

### May 2013 Settlement Adjustments (in millions)

| | |
|---|---|
| Additional tax liability from Luminant operations | $1,290 |
| Benefit from net operating losses from TCEH debt service | $358.7 |
| Net additional tax liability of EFCH | $931 |

19.    No cash taxes were paid in connection with the March 2013 Settlement, despite the increase in EFCH's tax liability by $931 million.  Instead, EFH—jointly and severally liable with EFCH for taxes of the Tax Group during these taxable years—satisfied EFCH's entire tax liability by using NOLs generated by EFH and its own disregarded

---

[7]    The amounts of the NOLs that were used and the amount of the remaining taxable income do not aggregate to ████████████ for reasons that are unclear to the EFH Committee, but which are likely attributable to other smaller adjustments.

-8-

subsidiaries.  EFCH did not reimburse EFH under the TAA or otherwise for the use of these NOLs.

20.    With respect to the March 2013 Settlement, the Schedules mistakenly reflect two separate intercompany payables, entered as if EFCH did not exist as a taxpaying corporate member of the Tax Group.  First, with respect to EFCH's additional tax liability attributable to Luminant, the EFH Schedules reflect a $1.29 billion claim by EFH directly against Luminant.  Second, with respect to the use of EFCH's NOLs attributable to TCEH, the Schedules reflect a $358.7 million claim directly by TCEH against EFH.  No claim by or against EFCH is reflected.

21.    If the balance between EFCH and EFH arising out of the March 2013 Settlement is calculated correctly based on the TAA or the Treasury Regulations, the result is a single amount due from EFCH to EFH of $931 million, equal to the net increase in EFCH's tax liability attributable to EFCH and its disregarded entity subsidiaries.  Since the $358.7 million is a benefit from NOLs attributable to the activities of TCEH (a disregarded entity subsidiary) that was applied to decrease the taxable income of its parent EFCH, there is no separate claim by TCEH against EFH under the TAA or the Treasury Regulations.

**Jurisdiction**

22.    This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).  The statutory predicates for the relief requested herein are sections 105(a) and 502(b) of title 11 of the United States Code (the "**Bankruptcy Code**") and rule 3007 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

**Relief Requested**

-9-

23.     By this Objection, the EFH Committee requests entry of the proposed

form of order (the "**Proposed Order**") attached hereto as <u>Exhibit B</u> disallowing and expunging

the TCEH Tax Claims in their entirety.

**Basis for Relief**

24.     Section 502(a) of the Bankruptcy Code provides that "[a] claim or interest,

proof of which is filed under section 501 of this title, is deemed allowed, unless a party in

interest . . . objects."[8] 11 U.S.C. § 502(a).  Section 502(b) of the Bankruptcy Code provides that,

upon the objection of a party in interest to an alleged claim, "the court, after notice and a hearing,

shall determine the amount of such claim . . . as of the date of the filing of the petition, and shall

allow the claim in such amount."  11 U.S.C. § 502(b).  The EFH Committee is a "party in

interest" for purposes of sections 502(a) and 1109(b) of the Bankruptcy Code.  11 U.S.C.

§§ 502(a), 1109(b); *see also In re Global Indus. Techs., Inc.*, 645 F.3d 201, 210–12 (3d Cir.

2011) (interpreting "party in interest" broadly to include parties with "legally protected interests

that could be affected" by a proceeding); *In re Solutia Inc.*, 379 B.R. 473, 483 (Bankr. S.D.N.Y.

2007) (stating that the official committee of unsecured creditors is a party in interest for purposes

of section 502 of the Bankruptcy Code).

25.     The burden of proof for claims brought under section 502(a) rests on

different parties at different times.  *In re Allegheny Int'l Inc.*, 954 F.2d 167, 173–74 (3d. Cir.

1992).  Bankruptcy Rule 3003(b) provides that the schedule of liabilities filed by a debtor

pursuant to section 521 of the Bankruptcy Code constitutes *prima facie* evidence of the validity

---

[8]     Under section 1111 of the Bankruptcy Code, a proof of claim is deemed filed under section 501 for any claim
that appears in the schedules filed under sections 521(a)(1) or 1106(a)(2) of the Bankruptcy Code, except a
claim that is scheduled as disputed, contingent or unliquidated.  11 U.S.C. § 1111(a).

-10-

and amount of any claim against the debtor listed thereon, unless such claim is scheduled as disputed, contingent or unliquidated.  However, if an objecting party in interest "produce[s] evidence which, if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency," the *prima facie* validity of the claim is negated, and "the burden reverts to the claimant to prove the validity of the claim by a preponderance of the evidence."  954 F.2d at 173–174 (citations omitted).  The EFH Committee submits that TCEH cannot meet its burden and, for the reasons set forth herein, EFH is not liable for the TCEH Tax Claims.  The TCEH Tax Claims should thus be disallowed and expunged in their entirety.

## I.    The AMT Credit Claim Should Be Disallowed

26.    The AMT Credit Claim is not colorable and can be quickly addressed. First, there appears to be no evidence that the alternative minimum tax credits at issue belonged to TCEH, or even related to its activities.  Second, the TAA is not applicable to taxable year 2006.  Third, the TAA does not cover the loss of alternative minimum tax credits anyway (even between members of the Tax Group for covered taxable years).  The TAA allocates payables to a member *only* if such member's tax attributes are actually used to offset another member's taxable income.  Section 1.2 of the TAA.[9]  Under the Internal Revenue Code, taxable income does not include cancellation of indebtedness income.  I.R.C. § 108(a)(1).

27.    Once the $395 million AMT Credit Claim is eliminated, the Scheduled Claim is reduced to approximately $379 million, approximately $358.7 million of which constitutes the NOL Claim.

---

[9]    The operative provisions are described in more detail below.

SC1:3805967.5
3890567

**II.    The NOL Claim for Taxable Years 2006 through 2009 Should Be Disallowed**

A.    <u>TCEH is a Disregarded Entity Subsidiary and Has No Interest in Any Tax Attributes</u>

28.    TCEH is a disregarded entity subsidiary and has no right, title or interest in the NOLs that were applied to reduce EFCH's taxable income in taxable years 2006 through 2012. The Internal Revenue Code and case law in this Circuit are clear:  a disregarded entity subsidiary's "assets, liabilities, income items, and deduction items will be treated as owned, owed, received, and incurred directly by its owner" parent taxpayer. *See In re Conex Holdings, LLC*, 518 B.R. 792, 802 (Bankr. D. Del. 2014) (J. Sontchi). The NOL Claim must arise under contract, or not at all.

B.    <u>The TAA Does Not Apply to Taxable Years 2006 to 2009</u>

29.    The TAA does not purport to cover taxable years 2006 to 2009. *See* Section 6.4 of the TAA. TCEH can point to no other agreement creating a contractual claim by TCEH against EFH for these years. The NOL Claim for taxable years 2006 through 2009, therefore, should be properly expunged without the need to analyze the TAA.

30.    Nevertheless, even if the Court were to determine that the provisions of the TAA should apply to the March 2013 Settlement as it relates to taxable years 2006 through 2009, TCEH would not have a claim under the TAA for the reasons discussed below.

**III.    The NOL Claim for Taxable Years 2010 through 2012 Should Be Disallowed**

A.    <u>Texas Law Governs the TAA and the Plain Terms Apply</u>

31.    The TAA is "governed by the laws of the State of Texas and the United States of America." Section 6.9 of the TAA. The choice of Texas contract law is valid, enforceable and binding on the parties. *J.S. Alberici Const. Cp., Inc.* v. *Mid-West Conveyer Co, Inc.*, 750 A.2d 518, 520 (Del. 2000) ("Delaware courts will generally honor a contractually-

-12-

designated choice of law provision so long as the jurisdiction selected bears some material relationship to the transaction.").  The reference to the laws of the United States suggests an intent to incorporate the applicable United States Treasury Regulations cited in the allocation provisions of the TAA.  *See* Section 1.2 of the TAA.

32.    Under Texas law, an unambiguous written contract is construed in accordance with its plain terms.  *Lyons* v. *Montgomery*, 701 S.W.2d 641, 643 (Tex. 1985). Parol evidence is not admissible for the purpose of creating an ambiguity or giving the contract a meaning different from the plain language.  *David J. Sacks, P.C.* v. *Haden*, 266 S.W.3d 447, 450 (Tex. 2008).  Where the contract contains an ambiguity, interpretation becomes a fact issue, and the trier of fact must resolve the ambiguity by determining the true intent of the parties.  *Coker* v. *Coker*, 650 S.W.2d 391, 394 (Tex. 1983).

33.    The Texas parol evidence rule is particularly applicable where the contract contains "a recital that it contains the entire agreement between the parties or a similarly-worded merger provision."  *Baroid Equip., Inc.* v. *Odeco Drilling, Inc.*, 184 S.W.3d 1, 13 (Tex. App. 2005).  Section 6.12 of the TAA provides that "[t]his Agreement contains the entire understanding of the parties with respect to the subject matter contained herein."  It further provides that "[i]n the event of any inconsistency between this Agreement and any other agreements, the provisions of this Agreement shall control."

B.    The TAA Aggregates at the Member Level

34.    Section 1.2 of the TAA addresses the allocation of tax liabilities and payables among the members of the Tax Group and the disregarded entity subsidiaries that are party to the TAA.  The TAA follows, not surprisingly, the rules for allocation of tax liabilities and benefits among members of consolidated tax groups under the applicable Treasury

-13-

Regulations.  In a nutshell, the activities of each member and all of its disregarded entity subsidiaries are aggregated to determine the taxable income of the member.  Under Section 1.2 of the TAA, if EFCH as a member has NOLs arising from TCEH's activities, the NOLs are automatically used to reduce EFCH's aggregate taxable income.  If after the application of the NOLs EFCH as a member still has net taxable income, the NOLs of its disregarded entity subsidiary are no longer relevant under the TAA.  The NOLs have been fully applied.  The reduced net taxable income of EFCH, as a member of the Tax Group, then determines the liability of EFCH (A) to EFH, in respect of the amount EFH will pay to the U.S. Treasury (to the extent other members of the Tax Group do not have NOLs to utilize in the applicable taxable year) and/or (B) to other members of the Tax Group, like EFH, who had NOLs that were used to offset EFCH's net taxable income.

35.      This aggregation of the tax attributes of each member is *not* contractual netting or set-off, but part of the math in determining whether there is any payable under the TAA in the first place.  Section 1.2 of the TAA requires the *members* to allocate tax liabilities in the three following steps:

- **Step 1** – Each member (*i.e.*, EFH and EFCH) is allocated a share of the Tax Group's aggregate tax liability payable to the U.S. Treasury based on such member's taxable income.  The TAA expressly incorporates Treasury Regulations that provide that each member's taxable income aggregates the taxable income, gain, loss and deductions of all of the disregarded entity subsidiaries of such member.  This tax liability is to be paid to the "Common Parent" (EFH in its capacity as agent for the Tax Group under the Internal Revenue Code) for purposes of making payments to the U.S. Treasury.

-14-

- **Step 2** – Each member then is allocated an additional liability if such member's own taxable income (or 'separate return tax liability') was reduced by the use of NOLs of the other member of the Tax Group.[10]

- **Step 3** – If there is a liability allocated to a member under Step 2 because such member avoided 'separate return tax liability' by the use of another member's NOLs, the member with the relevant NOLs is allocated a corresponding right to receive a payment. The aggregate amount of this payment is equal to the aggregate amount of liability allocated to the member with 'separate return tax liability' in Step 2.

36.    Although it aggregates member tax attributes based on 'separate return tax liability', the TAA does not ignore the presence of disregarded entity subsidiaries. The TAA expressly provides that the disregarded entity subsidiaries shall be allocated a portion of the net liabilities or benefits allocated to their parent corporate member *after* the allocation at the member level is determined. This is unambiguously provided at all three calculation steps. Step 1 and Step 2 each provide, at the end of the calculation provision, that, if there is a liability of a member, "the additional amount allocated to a member under this Step . . . shall be *further allocated*" to each disregarded entity subsidiary. Similarly, Step 3 provides that, if there is liability allocated to a member under Step 2 because it used another member's tax attributes to reduce taxable income, such attributes "of any such other member that are attributed to any disregarded entity shall be *further allocated* by such other member to such disregarded entity." Section 1.2 of the TAA (emphasis added).

37.    Aggregation of 'separate return tax liability' at the level of the member of the Tax Group is not only required by the plain text of the TAA, but also by the provisions of the

---

[10]    In the words of the TAA and the Treasury Regulations, each member is allocated an additional liability equal to the excess of (i) its 'separate return tax liability' (effectively, what its tax liability would have been if it had not been able to use the tax attributes of other group members) over (ii) the amount of tax liability payable to the U.S. Treasury allocated to it as a member of the Tax Group in Step 1.

-15-

Treasury Regulations incorporated by reference into the TAA. As a disregarded entity subsidiary, TCEH's activities are treated as EFCH's activities for federal income tax purposes, and what would be TCEH's 'own' income, gain, loss and deductions are simply part of the math in determining the aggregate income, gain, loss and deductions of EFCH. Treas. Reg. § 301.7701-2(a). The Treasury Regulations therefore allocate tax liabilities and tax benefits only to the corporate members of the Tax Group excluding any disregarded entity subsidiary. Treas. Regs. §§ 1.1502-33(d) and 1.1552-1(a).

38.    With respect to the facts of this Objection, for taxable years 2006 to 2012, the only relevant members of the Tax Group were EFH and EFCH. All other T-Silo Debtors were disregarded entity subsidiaries whose income was attributed to EFCH for federal income tax purposes. With respect to the March 2013 Settlement, the three Steps under Section 1.2 of the TAA require EFH and EFCH to determine the consolidated taxable income of EFCH for each taxable year and then allocate EFCH a tax liability or payable for that taxable year, as the case may be. Only after EFCH's liability or benefit is determined can that liability or benefit be sub-allocated among EFCH's disregarded entity subsidiaries.

39.    Upon information and belief, in taxable years 2010 through 2012 after giving effect to the March 2013 Settlement, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.[11] The application of the Steps in Section 1.2 of the TAA to the March 2013 Settlement is therefore straightforward:

---

[11]    On information and belief, the situation was the same in each of the taxable years 2006 through 2009 after giving effect to the March 2013 Settlement. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

-16-

- ██████████████████████████████████████████

- **Step 2** – EFCH had significant 'separate return tax liability' in an amount determined by the income, gain, loss and deductions of itself and its disregarded entity subsidiaries (to oversimplify, Luminant income net of TCEH interest expense). This results in a Step 2 liability of EFCH. This Step 2 liability is then sub-allocated between EFCH and the disregarded entity subsidiary that generated the taxable income (*i.e.*, Luminant). EFH had no 'separate return tax liability' and no liability can be allocated to EFH under Step 2.

- **Step 3** – Since a Step 2 liability of EFCH arises, EFH is allocated a corresponding payable for use of its NOLs. EFH would then sub-allocate this payable to any disregarded entity subsidiaries whose activities generated the relevant NOLs. EFCH and its disregarded entity subsidiaries would not be allocated any tax benefit because EFH has no Step 2 liability.

40.    For these reasons, it is simply impossible for TCEH to have a claim against EFH under the TAA relating to the taxable years 2010 through 2012. ██████

████████████████████████████████████████████████████ and no liability could

be allocated to EFH under Step 2 of Section 1.2 of the TAA. Without a liability allocated to

EFH at Step 2, there could be no benefit allocated to EFCH (let alone TCEH) at Step 3. The

NOL Claim should therefore be disallowed and expunged.

41.    Other references to disregarded entity subsidiaries in the TAA confirm this

reading. Once a liability is determined at Step 2, the TAA provides that this liability may be paid

by either the member *or* the applicable disregarded entity subsidiary, depending on who

generated the 'separate return tax liability' that gave rise to the liability. In this respect,

Luminant is liable to EFH under the terms of the TAA for the Step 2 payment arising under the

March 2013 Settlement. This is one reason why disregarded entity subsidiaries—not all of them,

but the ones that are most significant—signed the TAA. Their signatures provide credit support

-17-

to the Tax Group member that is due a payable under the TAA, and ensure that the legal entity

with the capacity to generate the taxable income and therefore cash (even if a disregarded entity

subsidiary) is liable to EFH for the resulting taxes.  In contrast, a benefit is determined under

Step 3, the amount is paid to EFH on behalf of "those other *members* that had [tax attributes]",

and not due by EFH to disregarded entity subsidiaries at all.  It is only after the *member* becomes

entitled to the payment, that the member makes the sub-allocation to its own disregarded entity

subsidiaries.  Section 1.2 at Step 3 of the TAA.[12]

        42.     The calculation method under the TAA and the Treasury Regulations

prevents an inequitable and economically irrational result.  TCEH has suffered no loss for which

it should be compensated by EFH or any other party.  TCEH did not have taxable income that it

could offset with NOLs, and did not own or have the power to sell the NOLs to a third party.

The only available use of the NOLs for these taxable years was to reduce taxable income

generated by Luminant.  Luminant, accordingly, had a lower tax funding obligation vis-a-vis

---

[12]  *Step 3* provides: "The additional amount allocated to members or disregarded entities pursuant to Step 2 of this paragraph 1.2 shall be paid by such members, or disregarded entities that are parties hereto, to the Common Parent on behalf of those other members that had items of income, deductions, net operating losses, or tax credits to which such total is attributable . . . .  Any income, deductions, net operating losses, or tax creditors of any such other member that are attributable to any disregarded entity directly or indirectly owned by such other members shall be further allocated by such other member to such disregarded entity."

Similar language appears in Section 4.1 of the TAA with respect to adjustments to past years.  In the case of refunds, EFH pays "each member" and in the case of additional liability, the liability is paid to EFH by "each member or disregarded entity, as the case may be."  By contrast, Section 3 of the TAA, concerning settlement of rights and obligations, does purport to create both a direct liability *and* a direct claim by a disregarded entity subsidiary for its sub-allocation under Section 1.2.  In Section 3, the phrase "[e]ach member, or disregarded entity party hereto," is used to refer to both the parties required to make payments to EFH at Steps 1 and 2 and to the parties entitled to receive payments from EFH at Step 3.  This reference to a direct claim by a disregarded entity subsidiary appears mistaken and inconsistent with other references in the TAA.  However, the inconsistency is not important for the purpose of the Objection because, even if a disregarded entity subsidiary does have a direct claim to its portion of a Step 3 payment allocated to its parent member under Section 3(c), there must first be a Step 3 payment calculated in accordance with Section 1.2.  In the case of the March 2013 Settlement, no Step 3 payment can be allocated to EFCH (or any of its disregarded entities) because there is no Step 2 liability of EFH, which had no 'separate return tax liability' for any of the applicable years.  The tax matters in Section 1.2 are unambiguous.

-18-

EFCH/EFH during these years, and TCEH—the owner of Luminant—benefitted from the additional cash flow that Luminant saved by having lower attributed taxable income. For TCEH to gain the historical benefit of the reduction of Luminant's taxable income because of these NOLs and *also* receive a payment for the very same NOLs from EFH, would be unjust double-dipping, even if permitted by Section 1.2 of the TAA or the Treasury Regulations—which it unambiguously is not.

C.    Aggregation at the Member Level is Consistent with Payment History

43.    Section 1.2 of the TAA is unambiguous and requires no review of parol evidence. Nevertheless, Section 1.2 of the TAA is consistent with the Debtors' actual payment practices during the applicable taxable years.

44.    Independent experts retained by the Debtors after their chapter 11 filing confirm that since 2009, the Debtors' tax allocation practices have been to aggregate the taxable income and losses of the T-Silo Debtors, resulting in a single payable to EFH:

> "[T]he existence of 'un-netted' tax payables and receivables in opposite directions between [EFCH] (and [its subsidiaries]) and [EFH] . . . appears inconsistent with the method used for the aggregating, 'netting', and settling of tax payables and receivables through [EFCH] up to [EFH] as noted in other transactions examined." [13]

The Grant Thornton Report also indicates that: "EFH Group tax personnel have advised that there are no other instances they can recall in which tax payables and receivables remained 'un-netted' as separate payables in opposite directions." [14]

---

[13]    *See* Energy Future Holdings: Report of Certain Tax Methods and Practices, prepared by Grant Thornton (the "**Grant Thornton Report**"), at ¶ 214(c).

[14]    *Id.* at Para. 212.

D.    EFH Is an Agent under the TAA

45.    A separate basis for the disallowance of any separate NOL Claim by TCEH, in light of EFH's larger claim against EFCH/Luminant under the TAA, is that EFH acts as an agent, not as a principal, under the TAA.  EFH is not a guarantor, accidentally or intentionally, of intercompany tax payments due from one subsidiary to another.

46.    The establishment of a principal-agent relationship under Texas law requires both "authorization to act" and "control of the [agent's] action" by the principal.  *Suzlon Energy Ltd.* v. *Trinity Structural Towers, Inc.*, 436 S.W.3d 835, 841 (Tex. App. 2014).  An agent must be subject to control by its principal, but may also have the authority to exercise its own judgment in accomplishing an assigned task.  *Dodson* v. *Dooley*, 280 S.W.2d 758, 764 (Tex. Civ. App. 1955).

47.    Step 3 of Section 1.2 of the TAA, entitling members to payments for the use of their NOLs, provides that EFH acts as an agent *on behalf of* such members:

> "[t]he additional amount [of tax liability allocable to members whose taxable income was offset with NOLs under step 2] shall be paid by such members . . . to the Common Parent *on behalf of* those other members that [generated the NOLs]."  (Emphasis added).[15]

48.    Thus, pursuant to its obligations and authority as an agent under the TAA, EFH receives payments under Section 3(b) as the settlement agent of the members whose NOLs have been used, and is required under Section 3(c) to transfer these payments to such members. EFH has no obligation to make any payment under Section 3(c) independent of its receipt of payments under Section 3(b).

---

[15]    Section 1.7(c)(ii) of the TAA similarly provides that the Common Parent is agent for payments relating to state taxes.

SC1:3805967.5
3890567

49.      In addition, Article 2 of the TAA generally authorizes EFH, through its chief financial officer, to do all things "necessary and proper to effectuate the stated intent of the parties and the purposes of [the TAA]," including determining the Tax Group's aggregate tax liability and determining and allocating the resulting liabilities and refunds of the parties.  This grant of general authority includes the authority to settle payments on behalf of the members in accordance with Article 3, but may only be exercised "[t]o effectuate the stated intent of the parties . . . as contained in [the TAA]."  EFH is thus required to follow the methodology and provisions of the TAA in settling payments and otherwise administering the TAA.  By specifically authorizing EFH to act on behalf of the recipients of payments under the TAA, and by limiting such authority, the TAA creates an agency relationship under Texas law.

50.      The EFH Committee therefore submits that any allowance of the NOL Claim by TCEH against EFH as an obligation independent of the liability of EFCH and/or Luminant for taxable income arising from the very same March 2013 Settlement is inconsistent with EFH's authority and obligations as settlement agent under the TAA.  The TAA does not provide for any allocation of liability to EFH as principal under Section 1.2, other than to account for its portion of the Tax Group's aggregate tax liability, and no such liability can arise out of EFH's role as agent for the settlement of payments among other parties.

E.      Article 3 of the TAA Requires All Payments To Be Made in Sequence

51.      Finally, in any circumstance where EFH is required to pay any member or disregarded entity subsidiary for the use of its NOLs, Article 3 of the TAA requires EFH to settle such payment only to the extent that it *first* receives payments from the members and disregarded entity subsidiaries that were allocated the corresponding tax liabilities.

52.      Section 3(a) of the TAA provides for the payment of any tax liabilities

-21-

payable to the U.S. Treasury as allocated under Step 1.  Section 3(b) then provides for the payment of any additional liability allocated under Step 2 based on the 'separate return tax liability' of the members.  Finally, Section 3(c) provides for a payment to those entities whose NOLs were used and were accordingly allocated a benefit under Step 3.  The amount payable under Section 3(c) is equal to the amount payable under Section 3(b).

53.     The opening sentence of Article 3 of the TAA specifies that the rights and obligations of the various members of the Tax Group "shall arise and be settled as follows."  As Article 3 indicates, the parties intended each member or disregarded entity subsidiary to pay (or be paid) the appropriate amounts under Sections 3(a), 3(b) and 3(c), in that order, as part of a single settlement.  Only in that order, and as part of a single settlement, do these payment obligations arise under the TAA.  Because the single settlement required by Article 3 entails all payments thereunder, no payment by EFH in connection with the use of tax attributes under Section 3(c) can arise as an independent obligation separate from the necessary prior payment in the same amount to EFH under Section 3(b).

54.     For the foregoing reasons, the EFH Committee respectfully requests that the TCEH Tax Claims be disallowed and expunged in their entirety on the basis that the claims do not constitute liabilities of EFH and its estate.

### Notice

55.     Notice of this Objection has been provided to: (a) the Office of the United States Trustee for the District of Delaware; (b) the Debtors and counsel thereto; (c) counsel to the official committee of the T-Silo Debtors; (d) counsel to the EFH disinterested directors; (e) counsel to the EFIH disinterested manager; (f) counsel to the EFCH and TCEH disinterested manager and (g) all parties requesting notice in these chapter 11 cases pursuant to Bankruptcy

Rule 2002.  The EFH Committee respectfully submits that further notice of this Objection is neither required nor necessary.

## **No Prior Request**

56.     No prior motion for the relief requested herein has been made to this or any other court.

SC1:3805967.5
3890567

WHEREFORE, for the reasons set forth herein, the EFH Committee respectfully requests that the Court (a) enter the Proposed Order sustaining this Objection and disallowing and expunging the TCEH Tax Claims in their entirety and (b) grant such other and further relief as is just and proper.

Dated:  Wilmington, Delaware
      April 30, 2015

MONTGOMERY, McCRACKEN, WALKER & RHOADS, LLP

*/s/ Mark A. Fink*
Natalie D. Ramsey (DE Bar No. 5378)
Davis Lee Wright (DE Bar No. 4324)
Mark A. Fink (DE Bar No. 3946)
1105 North Market Street, 15th Floor
Wilmington, DE  19801
Telephone: (302) 504-7800
Facsimile: (302) 504 -7820
E-mail:      nramsey@mmwr.com
            dwright@mmwr.com
            mfink@mmwr.com

– and –

SULLIVAN & CROMWELL LLP

Andrew G. Dietderich
Brian D. Glueckstein
Michael H. Torkin
Alexa J. Kranzley
125 Broad Street
New York, New York  10004
Telephone:    (212) 558-4000
Facsimile:    (212) 558-3588
E-mail:       dietdericha@sullcrom.com
            gluecksteinb@sullcrom.com
            torkinm@sullcrom.com
            kranzleya@sullcrom.com

*Counsel for The Official Committee of Unsecured Creditors of Energy Future Holdings Corp., Energy Future Intermediate Holding Company, LLC; EFIH Finance, Inc.; and EECI, Inc.*

-24-

# **EXHIBIT A**

## **Tax Allocation Agreement**

Exhibit 10(b)

## FEDERAL AND STATE INCOME TAX ALLOCATION AGREEMENT
## AMONG THE MEMBERS OF THE ENERGY FUTURE HOLDINGS CORP.
## CONSOLIDATED GROUP

THIS AGREEMENT ("Agreement") is executed on May 15, 2012 but effective as of January 1, 2010, by and among Energy Future Holdings Corp., a Texas corporation, and the undersigned entities.

### RECITALS:

WHEREAS, Energy Future Holdings Corp. is the common parent of an affiliated group of corporations within the meaning of section 1504(a) of the Internal Revenue Code of 1986, as amended from time to time (the "Code"), and the undersigned are members of such affiliated group or entities that are, for federal income tax purposes, disregarded as separate from a member of such affiliated group (the "Group");

WHEREAS, it is the desire and intention of the parties to provide for the method of allocation of the consolidated United States income tax liability among them and that such allocation fairly preserve the economic rights and privileges that would have accrued to each of them from the filing of separate returns, including the benefit of losses and credits utilized in the consolidated return; and

WHEREAS, it is the desire and intention of the parties to provide for the method of allocation of the consolidated or combined state income or Texas franchise (or margin) tax liability among them and that such allocation fairly preserve the economic rights and privileges that would have accrued to each of them from the filing of separate returns, including the benefit of losses and credits utilized in the consolidated return;

NOW, THEREFORE, for and in consideration of the mutual covenants hereinafter contained, the parties hereto agree as follows:

### Article 1 - Method of Allocation

1.1 <u>Generally</u>. If Energy Future Holdings Corp., or its successor as the common parent within the meaning of section 1504(a) of the Code (the "Common Parent"), files a consolidated United States Corporation Income Tax Return, the total consolidated United States income tax liability (which shall include any alternative minimum tax liability) after all credits allowed in arriving at such tax liability (the "Consolidated Tax Liability") shall be allocated to each member of the Group in accordance with paragraph 1.2. The amount of liability so allocated to any member shall be an obligation of each such member due and owing in accordance with Article 3. To the extent it is determined that a tax benefit is properly allocable to any member in accordance with the allocation prescribed in paragraph 1.2, the amount of benefit so allocated shall be an obligation due and owing to each such member in accordance with Article 3.

1.2 <u>Allocation of Consolidated Tax Liability</u>. The members of the Group shall determine and allocate the Consolidated Tax Liability among themselves in the following manner:

*Step 1*: Each member shall be allocated a portion of the Consolidated Tax Liability equal to the Consolidated Tax Liability multiplied by a fraction, the numerator of which is the taxable income of such member and the denominator of which is the sum of the taxable incomes of all the members. A member's taxable income shall be the separate taxable income of the member determined under Treasury regulation section 1.1502-12, adjusted for the following items pursuant to Treasury regulation section 1.1552-1(a)(1)(ii):

(a) the portion of the consolidated net operating loss deduction, the consolidated charitable contributions deduction, the consolidated dividends received deduction, the consolidated section 247 deduction, the consolidated section 582(c) net loss, and the consolidated section 922 deduction attributable to such member;

(b) such member's net capital loss and section 1231 net loss, reduced by the portion of the consolidated net capital loss attributable to such member; and

(c) the portion of any consolidated net capital loss carryover attributable to such member that is absorbed in the taxable year.

The additional amount allocated to a member under this Step 1 shall be further allocated under principles similar to those in this Step 1 to any entity that is, for federal income tax purposes, disregarded as an entity separate from such member.

*Step 2*: Pursuant to Treasury regulation section 1.1502-33(d)(3), an additional amount shall be allocated to each member equal to 100% of the excess, if any, of (i) the "separate return tax liability" of such member for the taxable year, over (ii) the amount allocated in Step 1 of this paragraph 1.2. As provided more fully in Treasury regulation section 1.1552-1(a)(2)(ii), a member's separate return tax liability shall equal the member's tax liability computed as if it had filed a separate return for the year except that:

(a) gain or loss on intercompany transactions shall be taken into account as provided in Treasury regulation section 1.1502-13 as if a consolidated return had been filed for the year;

(b) gain or loss relating to inventory adjustments shall be taken into account as provided in Treasury regulation section 1.1502-18 as if a consolidated return had been filed for the year;

(c) transactions with respect to stock, bonds or other obligations of members shall be reflected as provided in Treasury regulation section 1.1502-13(f) and (g) as if a consolidated return had been filed for the year;

(d) excess losses shall be included in income as provided in Treasury regulation section 1.1502-19 as if a consolidated return had been filed for the year;

(e) in the computation of the deduction under section 167, property shall not lose its character as new property as a result of a transfer from one member to another member during the year;

(f) a dividend distributed by one member to another member shall not be taken into account in computing the deductions under sections 243(a)(1), 244(a), 245, or 247 (relating to deductions with respect to dividends received and dividends paid);

(g) basis shall be determined under Treasury regulation sections 1.1502-31 and 1.1502-32, and earnings and profits shall be determined under Treasury regulation section 1.1502-33 as if a consolidated return had been filed for the year; and

(h) subparagraph (2) of Treasury regulation section 1.1502-3(f) shall apply as if a consolidated return had been filed for the year.

The additional amount allocated to a member under this Step 2 shall be further allocated under principles similar to those in this Step 2 to any entity that is, for federal income tax purposes, disregarded as an entity separate from such member.

*Step 3*: The additional amount allocated to members or disregarded entities pursuant to Step 2 of this paragraph 1.2 shall be paid by such members, or disregarded entities that are parties hereto, to the Common Parent on behalf of those other members that had items of income, deductions, net operating losses, or tax credits to which such total is attributable pursuant to a consistent method that reasonably reflects such items of income, deductions, net operating losses, or tax credits, such consistency and reasonableness to be determined by the Chief Financial Officer of the Common Parent (the "Chief Financial Officer"). Any income, deductions, net operating losses, or tax credits of any such other member that are attributable to any disregarded entity directly or indirectly owned by such other members shall be further allocated by such other member to such disregarded entity. In general, the amounts paid to members, or disregarded entities, will be deemed to be consistent and reasonable if paid on a basis equal to the applicable federal corporate income tax rate of net operating losses used and 100% of tax credits used unless such an allocation would be inequitable.

The method of allocation described in this paragraph 1.2 is intended to be consistent with Treasury regulation sections 1.1552-1(a)(1) and 1.1502-33(d)(3).

1.3  Quarterly Estimated Tax Payments. For purposes of determining each member's share of any quarterly estimated tax payments due with respect to the Consolidated Tax Liability, or if applicable, material state income or franchise tax liability, such quarterly Consolidated Tax Liability or state income or franchise tax liability shall be allocated among the members of the Group in accordance with paragraph 1.2 above. Any payments made by a member with respect to such quarterly estimated tax payments shall be a credit against any amounts due from such member with respect to the annual Consolidated Tax Liability. If the aggregate amount of quarterly payments made pursuant to this paragraph 1.3 for a taxable period exceeds the amount due and owing from such member with respect to the entire taxable period, such excess shall be refunded to such member pursuant to Article 3.

1.4  Carrybacks and Carryforwards. If part or all of a loss or credit is allocated to a member of the Group pursuant to Treasury regulation section 1.1502-21(b) or Treasury regulation section 1.1502-79, or a similar provision, and is carried back or carried forward to a year in which such member filed a separate return or a consolidated return with a different affiliated group, any refund or reduction in the Consolidated Tax Liability arising from such carryback or carryforward shall be for the benefit of such member. If a member of the Group has a loss or credit in a separate return year that may be carried back to a year in which the Group filed a consolidated United States Corporation Income Tax Return, any refund or reduction in the Consolidated Tax Liability arising from such carryback shall be for the benefit of the Group and shall be retained by the Common Parent. If a member of the Group has a loss or credit in a separate return year that may be carried forward to a year in which the Group filed a consolidated United States Corporation Income Tax Return, any refund or reduction in the Consolidated Tax Liability arising from such carryforward shall be allocated in accordance with paragraph 1.2. Notwithstanding the above, the Common Parent shall determine whether an election shall be made not to carry back part or all of a consolidated net operating loss for any tax year in accordance with Regulation Section 1.1502-21(b)(3).

1.5 <u>Consolidated Alternative Minimum Tax</u>. The amount of consolidated alternative minimum tax ("AMT") allocated to a member is determined by multiplying the consolidated AMT by a fraction, the numerator of which is the separate adjusted AMT (as defined in proposed Treasury regulation section 1.1502-55(h)(6)(iv)) of the member for the year, and the denominator of which is the sum of all members' separate adjusted AMT for the year. The amount of allowable consolidated minimum tax credit ("MTC") in a taxable year must be allocated among the members in accordance with the principles of proposed Treasury regulation section 1.1502-55(h)(6)(iv) and (7).

1.6 <u>Earnings and Profits</u>. For purposes of computing the earnings and profits of members of the Group, the Consolidated Tax Liability of the Group shall be calculated and allocated in accordance with Code section 1552(a)(1). Any difference between the amount of the Consolidated Tax Liability allocated to a member under this Agreement and the amount of Consolidated Tax Liability allocated to a member under Code section 1552(a)(1) shall be treated as a distribution or contribution, or both, as appropriate. The Group has not made any election to make extended tax allocations under Treasury regulation section 1.1502-33 (d).

1.7 <u>Allocation of State Taxes</u>.

(a)  With the exception of state income and franchise taxes calculated on the basis of consolidated or combined taxable income, including the Texas margin tax, each member has filed state and local tax returns on a separate company or separate group basis, such that each member of the Group has paid tax solely on their respective tax items and not on the basis of any consolidated or combined reporting of their respective tax items. Accordingly, this agreement makes no provision for any allocation of separately computed state and local income or franchise tax liabilities.

(b)  Except for Texas margin tax (which is provided for in paragraph 1.7(c)), the amount of state income tax liability for the Group that is computed on a combined or consolidated basis shall be allocated to each member, and among any entity disregarded as an entity separate from such member, of the Group in accordance with similar principles to those set forth in paragraph 1.2.

(c)

(i)  The amount of combined Texas margin tax ("TMT") for a taxable year is allocated among the members of the Group and other parties to this Agreement which are included in such combined group by multiplying (i) such combined TMT by (ii) a fraction, the numerator of which is the amount of TMT that each such entity would have paid if it had computed its TMT liability for the taxable year on a separate entity basis rather than as a part of the combined group (the "separate entity TMT"), and the denominator of which is the sum of all entities' separate entity TMT for the year. Each entity's separate entity TMT shall be based on the combined group's deduction election pursuant to section 171.101(a)(1)(B)(ii) of the Texas Tax Code.

(ii)  If an entity's separate entity TMT exceeds the amount allocated to such entity under paragraph 1.7(c) (i) above, then such entity shall be allocated an additional amount to reflect such excess. The additional amount allocated under this paragraph 1.7(c)(ii) shall be paid by such entity to the Common Parent on behalf of those other entities whose deductions, credits or other tax attributes resulted in such excess. Such allocation shall be made pursuant to a consistent method that reasonably reflects such deductions, credits or other tax attributes, such consistency and reasonableness to be determined by the Chief Financial Officer.

## Article 2 - Authority to Administer Agreement

2 To effectuate the stated intent of the parties hereto as contained in this Agreement, the Chief Financial Officer shall be authorized to:

(a) determine the Consolidated Tax Liability and any state tax liability under paragraph 1.7 of the Group for each taxable period for which the Common Parent files a consolidated United States Corporation Income Tax Return, or similar combined or consolidated state tax return, by making the necessary elections and selecting the tax accounting methods that provide the maximum tax benefit for the Group;

(b) determine and allocate to each member of the Group the appropriate liability or refund, if any, of the Consolidated Tax Liability in accordance with paragraph 1.2 and any state tax liability or refund, if any, in accordance with paragraph 1.7;

(c) prescribe any tax elections or tax provisions that shall apply to each member of the Group;

(d) prescribe the computer software, methods and procedures each member shall use to maintain such member's tax records and to prepare its tax returns; and

(e) do all other things necessary and proper to effectuate the stated intent of the parties and the purposes of this Agreement.

## Article 3 - Settlement of Allocations

3 The rights and obligations between and among the various members of the Group accruing under the provisions of this Agreement shall arise and be settled as follows:

(a) Each member, or disregarded entity which is a party hereto, shall pay to the Common Parent its allocated share of Consolidated Tax Liability under Step 1 of paragraph 1.2 within 30 days after the Common Parent files a consolidated United States Corporation Income Tax Return for any taxable period (or with interest at such later date as agreed to by the Common Parent and the applicable member or disregarded entity).

(b) Each member, or disregarded entity which is a party hereto, benefitting from another member's net operating losses, tax credits, or other tax attributes shall pay to the Common Parent its additional allocation determined under Step 2 of paragraph 1.2 within 30 days after the Common Parent files a consolidated United States Corporation Income Tax Return for any taxable period (or with interest at such later date as agreed to by the Common Parent and the applicable member or disregarded entity).

(c) The Common Parent shall pay to each member, or disregarded entity which is a party hereto, with a net operating loss, tax credits, or other tax attributes during the taxable year, its allocable share of the total of the additional amounts due from other members as determined under Step 3 of paragraph 1.2 within 30 days after the Common Parent files a consolidated United States Corporation Income Tax Return for any taxable period (or with interest at such later date as agreed to by the Common Parent and the applicable member or disregarded entity).

(d)  Each member or disregarded entity which is a party hereto, as the case may be, shall pay to the Common Parent its allocated share of any state income or TMT liability under paragraph 1.7 within 30 days after the Common Parent files a consolidated or combined state income tax or TMT return or report for any taxable period (or with interest at such later date as agreed to by the Common Parent and the applicable member or disregarded entity). The Common Parent shall pay to each member, or disregarded entity which is a party hereto, with a net operating loss, tax credits, deductions or other tax attributes during the taxable year, its allocable share of the total of the additional amounts due from other members as determined under paragraph 1.7 within 30 days after the Common Parent files a consolidated or combined state income tax or TMT return or report for any taxable period (or with interest at such later date as agreed to by the Common Parent and the applicable member or disregarded entity).

(e)  All payments pursuant to this Article 3 shall be adjusted to reflect any quarterly estimated tax payments made pursuant to paragraph 1.3.

### Article 4 - Adjustments

4.1 Tax. In the event the Consolidated Tax Liability is subsequently changed or otherwise adjusted by reason of an amended return, a claim for refund, a final "determination" as that term is defined in section 1313(a) of the Code, or any of the events specified in section 6213(b) or (d) of the Code, or otherwise, the Chief Financial Officer shall adjust the allocations accordingly. The amounts of any such adjustment shall become due and owing in accordance with Article 3 on the 30th day following the date giving rise to the recomputation (or with interest at such later date as agreed to by the Common Parent and the applicable member or disregarded entity). In the case of any refund, the Common Parent shall pay each member its share of such refund, determined in the same manner as in paragraph 1.2, within 30 days after receiving such refund (or with interest at such later date as agreed to by the Common Parent and the applicable member or disregarded entity), and in the case of an increase in tax liability, each member or disregarded entity, as the case may be, shall pay the Common Parent its allocable share of such increased tax liability within 30 days after receiving notice of such liability from the Common Parent (or with interest at such later date as agreed to by the Common Parent and the applicable member or disregarded entity).

4.2 Interest. If any interest is to be paid or received as a result of a consolidated tax deficiency or refund, such interest will be allocated among the members as follows:

(a)  any member having an overpayment of tax shall be credited with interest on such overpayment calculated in accordance with section 6611; and

(b)  any member having an underpayment of tax shall be allocated a portion of the total interest due equal to the amount of interest on such underpayment calculated in accordance with section 6601.

4.3 Penalties. Any penalty shall be allocated (i) if such penalty is associated with or attributable to the income or any act or omission of a particular member or members (or their disregarded subsidiaries), equitably to such member or among such members (or disregarded entities), or (ii) in all other cases, upon such basis as the Chief Financial Officer deems just and proper in view of all applicable circumstances.

4.4 State Tax Adjustments. In the event that any state income tax or TMT liability is subsequently changed or otherwise adjusted by reason of an amended return or any audit, litigation or similar proceeding, or otherwise, such change or adjustment, and any interest or penalties related thereto, shall be allocated under principles similar to paragraphs 4.1, 4.2 and 4.3.

## Article 5 - Cooperation; Records; Contests

5.1 <u>Cooperation</u>. Each member of the Group and any disregarded entity shall cooperate with each other and with each other's agents, including accounting firms and legal counsel, in connection with tax matters relating to the parties and their affiliates including (a) preparation and filing of tax returns, (b) determining the liability for and amount of any taxes due (including estimated taxes) or the right to and amount of any refund of taxes, (c) examinations of tax returns, and (d) any administrative or judicial proceeding in respect of taxes assessed or proposed to be assessed. Such cooperation shall include making all information and documents in their possession available to such other parties as provided in paragraph 5.2. Each member and disregarded entity shall also make available, as reasonably requested and available, personnel (including officers, directors, employees and agents of the parties or their respective affiliates) responsible for preparing, maintaining, and interpreting information and documents relevant to taxes, and personnel reasonably required as witnesses or for purposes of providing information or documents in connection with any administrative or judicial proceedings relating to taxes. Any information or documents provided under this paragraph 5.1 shall be kept confidential by the party receiving the information or documents, except as may otherwise be necessary in connection with the filing of tax returns or in connection with any administrative or judicial proceedings relating to taxes.

5.2 <u>Records</u>. Each member and disregarded entity shall preserve and keep all tax records, whether they be paper, electronic or other medium, related to the Consolidated Tax Liability or any state income tax or TMT liability for so long as the contents thereof may become material in the administration of any matter under the Code or other applicable tax law, but in any event until the expiration of any applicable statutes of limitation. If, prior to the expiration of the applicable statute of limitation a member reasonably determines that any tax records which it is required to preserve and keep under this paragraph 5.2 are no longer material in the administration of any matter under the Code or other applicable tax law, such party may dispose of such records upon 90 days prior notice to the other members. Such notice shall include a list of the records to be disposed of describing in reasonable detail each file, book, or other record accumulation being disposed. The notified parties shall have the opportunity, at their cost and expense, to copy or remove, within such 90-day period, all or any part of such tax records. The members of the Group and any disregarded entity shall make available to each other for inspection and copying during normal business hours upon reasonable notice all tax records in their possession to the extent reasonably required by the other member in connection with the preparation of tax returns, audits, litigation, or the resolution of items under this Agreement.

5.3 <u>Tax Contests</u>. The Common Parent shall control the defense or prosecution of any audit, assessment, or administrative or judicial proceeding relating to, or with potential impact upon, any Consolidated Tax Liability or state income tax or TMT liability ("Tax Contest") for any Group tax return or TMT return. As provided in paragraph 5.1, members of the Group shall provide information and documents reasonably requested of them by the Common Parent or by the Internal Revenue Service or other state taxing authorities with respect to matters relating to their respective tax items.

## Article 6 - Miscellaneous Provisions

6.1 This Agreement supersedes all previous tax allocation agreements among the Common Parent and the members of the Group and other federal income tax allocation agreements or arrangements among the parties to this Agreement.

6.2 It is understood and acknowledged that, in accordance with Treasury regulation section 1.1502-77, the Common Parent will be the agent for all members of the Group with respect to all matters referred to therein and the Common Parent has the power, without the consent of any member, to exercise the authority with respect to the matters set forth therein, including without limitation, making or revoking any elections. Any notice, demand, request or report required or permitted to be given or made to any party under this Agreement shall be in writing and shall be deemed given or made when hand-delivered or when sent by first class mail or by other commercially reasonable means of written communication (including delivery by an internationally recognized courier service or by facsimile transmission) to the party at the party's address as follows:

> If to Common Parent: Tax Department
> EFH Corporate Services Company
> 1601 Bryan Street
> Dallas, TX 75201

> If to any other member: Tax Department
> EFH Corporate Services Company
> 1601 Bryan Street
> Dallas, Texas 75201

A party may change the address for receiving notices under this Agreement by providing written notice of the change of address to the other parties.

6.3 The parties hereto recognize that from time to time other companies may become members of the Group and hereby agree that such new members will become parties to this Agreement by the signature of an officer of such new member on a document in the form attached hereto as Annex A and it shall not be necessary that the existing members re-execute this Agreement or join with such new member in signing a counterpart of Annex A.

6.4 In order to reflect the parties' course of dealing since January 1, 2010, this Agreement shall be effective for all open taxable years beginning after December 31, 2009, unless the Common Parent otherwise agrees to the termination of the rights and obligations of any party hereunder under such terms and conditions as are mutually agreed upon by the Common Parent and the terminating party, which terms and conditions shall not inure to the detriment of any other party hereto. Notwithstanding such termination, this Agreement shall continue in effect with respect to any payment (including any payment attributable to an adjustment governed by Article 4) or refunds due for all taxable periods prior to termination. Any refund allocated to a member of the Group that, at the time the allocation is made, has left the Group due to sale, merger, liquidation or otherwise shall be made to the member of the Group that received the proceeds of such sale, merger or other transaction or the assets of the former member unless another method of allocation is agreed to prior to the member leaving the Group.

6.5 The Common Parent shall have authority to amend this Agreement through a collateral agreement with any member to take into account any special facts and circumstances of such member. The collateral agreement shall be effective upon execution by all affected parties and need not be executed by members whose rights and liabilities under this Agreement are not affected by the collateral agreement. Any such amendment shall be consistent with the principles of this Agreement.

6.6 This Agreement may be unilaterally amended by the Common Parent in response to legislative or regulatory changes in the tax law; provided that any such amendment shall be consistent with the principles of this Agreement.

6.7 Failure of one or more parties to qualify as a member of the Group shall not operate to terminate this Agreement with respect to the other parties so long as two or more parties continue to so qualify.

6.8 This Agreement shall bind and inure to the benefit of the respective successors and assigns of the parties, but no assignment shall relieve any party's obligations hereunder without the written consent of the other parties except as otherwise provided in paragraph 6.4.

6.9 This Agreement shall be governed by the laws of the State of Texas and the United States of America.

6.10 Any matter not specifically covered by this Agreement shall be handled in the manner determined by the Common Parent in a manner consistent with the principles of this Agreement. Any dispute concerning the interpretation of this Agreement shall be settled in a fair and reasonable manner by the Chief Financial Officer.

6.11 The Chief Financial Officer may delegate any authority and duties granted hereunder to the VP Tax or General Tax Counsel.

6.12 This Agreement contains the entire understanding of the parties with respect to the subject matter contained herein. No alteration, amendment or modification of any of the terms of this Agreement shall be valid unless made by an authorized officer of each member of the Group that is a party hereto except as otherwise provided in paragraphs 6.5 and 6.6. In the event of any inconsistency between this Agreement and any other agreements, the provisions of this Agreement shall control.

6.13 The language in all parts of this Agreement shall in all cases be construed according to its fair meaning and shall not be strictly construed for or against any party.

6.14 The parties shall execute and deliver all documents, provide all information, and take or refrain from taking action as may be necessary or appropriate to achieve the purposes of this Agreement, including the execution and delivery to the other parties and their affiliates and representatives of such powers of attorney or other authorizing documentation as is reasonably necessary or appropriate in connection with Tax Contests (or portions thereof) under the control of such other parties in accordance with Article 5.

6.15 If any provision of this Agreement is or becomes invalid, illegal or unenforceable in any respect, the validity, legality, and enforceability of the remaining provisions contained herein shall not be affected thereby.

6.16 No failure by any party to insist upon the strict performance of any obligation under this Agreement or to exercise any right or remedy under this Agreement shall constitute waiver of any such obligation, right, or remedy or any other obligation, rights, or remedies under this Agreement.

6.17 This Agreement may be executed simultaneously in two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed as of the 15th day of May, 2012.

**[Signatures Appear on Following Page]**

**Energy Future Holdings Corp.**

By: _____ /s/ PAUL M. KEGLEVIC _____

Printed name: _____ Paul M. Keglevic _____

Title: Executive Vice President and Chief Financial Officer

**TXU Receivables Company**

By: _____ /s/ PAUL M. KEGLEVIC _____

Printed name: _____ Paul M. Keglevic _____

Title: President

**EFH Australia (No. 2) Holdings Co.**

By: _____ /s/ PAUL M. KEGLEVIC _____

Printed name: _____ Paul M. Keglevic _____

Title: President

**EFH FS Holdings Co.**

By: _____ /s/ PAUL M. KEGLEVIC _____

Printed name: _____ Paul M. Keglevic _____

Title: President

**EFH Finance (No. 2) Holdings Co.**

By: _____ /s/ PAUL M. KEGLEVIC _____

Printed name: _____ Paul M. Keglevic _____

Title: President

**EFH Vermont Insurance Company**

By: _____ /s/ PAUL M. KEGLEVIC _____

Printed name: _____ Paul M. Keglevic _____

Title: Executive Vice President and Chief Financial Officer

**Basic Resources Inc.**

By: _____ /s/ PAUL M. KEGLEVIC _____

Printed name: _____ Paul M. Keglevic _____

Title: President

**Energy Future Competitive Holdings Company**

By: _____ /s/ PAUL M. KEGLEVIC _____

Printed name: _____ Paul M. Keglevic _____

Title: Executive Vice President and Chief Financial Officer

**EFIH Finance Inc.**

By: _____ /s/ PAUL M. KEGLEVIC _____

Printed name: _____ Paul M. Keglevic _____

Title: Executive Vice President and Chief Financial Officer

**Energy Future Intermediate Holdings Co. LLC**

By: _____ /s/ PAUL M. KEGLEVIC _____

Printed name: _____ Paul M. Keglevic _____

Title: Executive Vice President and Chief Financial Officer

**EFH Corporate Services Company**

By: _____ /s/ PAUL M. KEGLEVIC _____

Printed name: _____ Paul M. Keglevic _____

Title: President

**LSGT Gas Company LLC**

By: _____ /s/ PAUL M. KEGLEVIC _____

Printed name: _____ Paul M. Keglevic _____

Title: President

**TCEH Finance Inc.**

By: _____/s/ PAUL M. KEGLEVIC_____

Printed name: _____Paul M. Keglevic_____

Title: _Executive Vice President and Chief Financial Officer_

**LSGT SACROC Inc.**

By: _____/s/ PAUL M. KEGLEVIC_____

Printed name: _____Paul M. Keglevic_____

Title: _President_

**EEC Holdings Inc.**

By: _____/s/ PAUL M. KEGLEVIC_____

Printed name: _____Paul M. Keglevic_____

Title: _President_

**EECI, Inc.**

By: _____/s/ PAUL M. KEGLEVIC_____

Printed name: _____Paul M. Keglevic_____

Title: _President_

**Texas Competitive Electric Holdings Company LLC**

By: _____/s/ PAUL M. KEGLEVIC_____

Printed name: _____Paul M. Keglevic_____

Title: _Executive Vice President and Chief Financial Officer_

**EFH Properties Company**

By: _____ /s/ ANTHONY R. HORTON _____

Printed name: _____ Anthony R. Horton _____

Title: Treasurer

**Generation SVC Company**

By: _____ /s/ ANTHONY R. HORTON _____

Printed name: _____ Anthony R. Horton _____

Title: Treasurer

**Luminant Energy Company LLC**

By: _____ /s/ ANTHONY R. HORTON _____

Printed name: _____ Anthony R. Horton _____

Title: Treasurer

**Luminant Energy Trading (CA) Co.**

By: _____ /s/ ANTHONY R. HORTON _____

Printed name: _____ Anthony R. Horton _____

Title: Treasurer

**Luminant ET Services Co.**

By: _____ /s/ ANTHONY R. HORTON _____

Printed name: _____ Anthony R. Horton _____

Title: Treasurer

**Luminant Generation Company LLC**

By: _____ /s/ ANTHONY R. HORTON _____

Printed name: _____ Anthony R. Horton _____

Title: Treasurer

**Luminant Holding Company LLC**

By: _____ /s/ ANTHONY R. HORTON _____

Printed name: _____ Anthony R. Horton _____

Title: Treasurer

**Luminant Mining Company LLC**

By: _____ /s/ ANTHONY R. HORTON _____

Printed name: _____ Anthony R. Horton _____

Title: Treasurer

**TXU Energy Retail Company LLC**

By: _____ /s/ ANTHONY R. HORTON _____

Printed name: _____ Anthony R. Horton _____

Title: Treasurer

**TXU Retail Services Company**

By: _____ /s/ ANTHONY R. HORTON _____

Printed name: _____ Anthony R. Horton _____

Title: Treasurer

**TXU SEM Company**

By: _____ /s/ ANTHONY R. HORTON _____

Printed name: _____ Anthony R. Horton _____

Title: Treasurer


**4Change Energy Company (F/K/A TXU SESCO Energy Services Company)**

By: _____ /s/ ANTHONY R. HORTON _____

Printed name: _____ Anthony R. Horton _____

Title: Treasurer


**Luminant Mining Company LLC**
**As successor to Luminant Mining Services Co.**

By: _____ /s/ ANTHONY R. HORTON _____

Printed name: _____ Anthony R. Horton _____

Title: Treasurer


**Luminant Generation Company LLC**
**As successor to Luminant Power Services Co.**

By: _____ /s/ ANTHONY R. HORTON _____

Printed name: _____ Anthony R. Horton _____

Title: Treasurer


**Luminant Energy Company LLC**
**As successor to Luminant Energy Services Co.**

By: _____ /s/ ANTHONY R. HORTON _____

Printed name: _____ Anthony R. Horton _____

Title: Treasurer

## ANNEX A

### ADMISSION OF NEW GROUP MEMBER

THIS AGREEMENT is made as of the ___ day of _____, ____ between Energy Future Holdings Corp. ("EFH"), a Delaware corporation, and (the "New Member").

### RECITALS:

WHEREAS, EFH is the common parent of an affiliated group of corporations within the meaning of section 1504(a) of the Internal Revenue Code of 1986, as amended from time to time (the "Code"); and

WHEREAS, EFH and the members of its affiliated group within the meaning of section 1504(a) of the Code and certain entities disregarded for federal income tax purposes as an entity separate from a member of such affiliated group (the "Group") executed the Federal and State Income Tax Allocation Agreement Among the Members of the Energy Future Holdings Corp. Consolidated Group (the "Agreement") as of the ___ day of _____, ____, to allocate federal and state income tax liability and Texas margin tax liability among them; and

WHEREAS, the New Member has become a member of the Group since the Group executed the Agreement;

NOW, THEREFORE, the parties hereto agree as follows:

The New Member shall by its execution of this Admission of New Group Member become subject to the terms of the Agreement effective as of the date first stated above.

Energy Future Holdings Corp.

By _____

[Name]
[Title]

[NAME OF NEW MEMBER]

By _____

[Name]
[Title]

**EXHIBIT B**

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | Case No. 14-10979 (CSS) |
| Debtors. | (Jointly Administered) |
| | Re: D.I. [___] |

### ORDER SUSTAINING OBJECTION OF THE EFH OFFICIAL COMMITTEE TO GENERAL UNSECURED TAX CLAIMS OF TEXAS COMPETITIVE ELECTRIC HOLDINGS COMPANY LLC AGAINST ENERGY FUTURE HOLDINGS CORPORATION

Upon the objection (the "**Objection**")[2] of the official committee of unsecured creditors of Energy Future Holdings Corporation ("**EFH**"), Energy Future Intermediate Holding Company LLC, EFIH Finance Inc., and EECI, Inc. (the "**EFH Committee**") for entry of an order (this "**Order**") disallowing and expunging in their entirety the general unsecured tax claims of Texas Competitive Electric Holdings Company LLC against EFH in the amount of $754,061,336 (the "**TCEH Tax Claims**"); and it appearing that this Court has jurisdiction to consider the Objection pursuant to 28 U.S.C. §§ 157 and 1334; and it appearing that venue of these chapter 11 cases and the Objection in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and it appearing that this matter is a core proceeding pursuant to 28 U.S.C. § 157(b); and this Court having found that proper and adequate notice of the Objection and the relief

---

[1]   The last four digits of Energy Future Holdings Corp.'s taxpayer identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, for which joint administration has been granted, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

[2]   Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Objection.

requested therein has been provided in accordance with the Federal Rules of Bankruptcy

Procedure and the Local Rules of Bankruptcy Practice and Procedure of the United States

Bankruptcy Court for the District of Delaware, and that no other or further notice is necessary;

and after due deliberation thereon; and good and sufficient cause appearing therefor;

IT IS HEREBY ORDERED THAT:

1.      The Objection is SUSTAINED as set forth herein.

2.      The TCEH Tax Claims are hereby disallowed and expunged in their

entirety.

3.      EFH and Epiq Bankruptcy Solutions, LLC, as claims agent, are authorized

and directed to take all actions necessary or appropriate to implement the relief granted in this

Order.

4.      This Court shall retain exclusive jurisdiction over all matters pertaining to

this Order and the Objection.


Dated: _____, 2015
        Wilmington, Delaware                    _____
                                                Christopher S. Sontchi
                                                United States Bankruptcy Judge

SC1:3805967.5
3890567