| | | |
|---|---|---|
| *Co-Counsel to the Debtors*<br>**KIRKLAND & ELLIS LLP**<br><br>Edward O. Sassower, P.C.<br>Stephen E. Hessler<br>Brian E. Schartz<br>601 Lexington Avenue<br>New York, New York 10022<br><br>-and-<br><br>James H.M. Sprayregen, P.C.<br>Marc Kieselstein, P.C.<br>Chad J. Husnick<br>Steven N. Serajeddini<br>300 North LaSalle<br>Chicago, IL 60654<br><br>- and -<br><br>Mark E. McKane<br>555 California Street<br>San Francisco, CA 94104 | *Co-Counsel to Energy Future Competitive Holdings Company LLC & Texas Competitive Electric Holdings Company LLC*<br><br>**MUNGER, TOLLES & OLSON LLP**<br>Thomas B. Walper<br>John W. Spiegel<br>355 S. Grand Ave 35th FL<br>Los Angeles, CA 90071<br><br><br>*Co-Counsel to Energy Future Holdings Corp.*<br><br>**PROSKAUER ROSE LLP.**<br>Mark K. Thomas<br>Jeff J. Marwil<br>Peter J. Young<br>70 W. Madison ST STE 3800<br>Chicago, IL 60602<br><br>- and -<br><br>Michael A. Firestein<br>2049 Century Park East, #3200<br>Los Angeles, CA 90067 | *Co-Counsel to Energy Future Intermediate Holdings Company LLC*<br><br>**CRAVATH, SWAINE & MOORE LLP**<br>Michael A. Paskin<br>Worldwide Plaza<br>825 Eighth Ave<br>New York, NY 10019<br><br>- and -<br><br>**JENNER & BLOCK LLP**<br>Richard Levin<br>919 Third Ave<br>New York, NY 10022 |

May 27, 2015

**By ECF and Hand Delivery**

Hon. Christopher S. Sontchi
United States Bankruptcy Court
for the District of Delaware
824 North Market Street, 5th Floor
Wilmington, Delaware 19801

Re: *In re Energy Future Holdings Corporation, et al.*, Case No. 14-10979

Dear Judge Sontchi:

We write on behalf of Debtors and their respective disinterested directors and managers (the "Disinterested Directors") to request a protective order in connection with the wave of discovery requests recently served by various creditor groups.[1] Although these requests were purportedly served in connection with the Debtors' *Motion of Energy Future Holdings Corp., et al., for Entry of an Order (A) Approving the Disclosure Statement, (B) Establishing the Voting Record Date, Voting Deadline, and Other Dates, (C) Approving Procedures for Soliciting, Receiving, and Tabulating Votes on the Plan and for Filing Objections to the Plan, and (D) Approving the Manner and Forms of Notice and Other Related Documents* (D.I. 4144) (the

---

[1] Eight parties served discovery. Rather than filing eight separate letters of up to eight pages each, for the convenience of the Court the Debtors and the Disinterested Directors file this consolidated letter to address the issues common to all requests.

"Disclosure Statement Motion")[2], they in fact have little to do with the narrow relief sought in that motion, namely, approval of the Debtors' Disclosure Statement.

Instead, ignoring the Bankruptcy Code and this Court's recent decision to defer discovery related to the Plan, the vast majority of the requested discovery seeks information related to Plan confirmation issues. None is focused on the narrow question of whether the Disclosure Statement provides "adequate information" to enable stakeholders to make an informed judgment about the Plan on which they will vote. These creditor groups are improperly and prematurely attempting to transform the Disclosure Statement hearing into a mini-trial on Plan confirmation.

For example, the Disinterested Directors alone have been served with six separate deposition notices, and dozens of document requests. As discussed below, the principal reason discovery is requested from the Disinterested Directors is to obtain information regarding the reasonableness of the intercompany settlement, which was negotiated by the Disinterested Directors. But this Court has stated that the reasonableness of that settlement is a Plan confirmation issue, and discovery on confirmation issues has not yet been scheduled. Moreover, as the Court has referenced, creditors already have adequate information in the record concerning the settlement through Legacy Discovery and other sources. To the extent that parties seek to depose the Disinterested Directors, they should do so once, and only in the context of confirmation-related discovery.

For these reasons and for the reasons discussed below, the Debtors seek a protective order and request guidance from the Court on the Disclosure Statement hearing's scope. In particular, we respectfully ask the Court to instruct the parties that confirmation issues will not be litigated in the Disclosure Statement hearing.[3]

## I. The Court Should Prohibit Confirmation-Related Discovery at the Disclosure Statement Stage.

On May 14 and May 18, eight parties (the "Discovery Proponents")[4] served 349 document requests, 5 interrogatories, and 16 deposition notices (including seven Rule 30(b)(6) notices covering 51 topics and subpoenas to every Disinterested Director in this case), ostensibly in connection with the Disclosure Statement Motion.[5] The Debtors promptly reviewed the requests and subpoenas, notified the requesting parties that their requests were improper, and asked them to withdraw their requests or substantially narrow them to disclosure adequacy issues.[6] The Debtors emphasized that they will respond to reasonable confirmation-related

---

[2]   Capitalized terms used but not otherwise defined in this letter have the meaning ascribed to such terms in the Disclosure Statement Motion.

[3]   To be clear, Debtors do not object to Plan confirmation discovery *per se*. Instead, Plan confirmation issues should be addressed at the Plan confirmation hearing, and discovery on such issues should be conducted in accordance with a Plan confirmation discovery schedule, not the Disclosure Statement discovery schedule.

[4]   Attached hereto as **Appendix I** is the list of the eight parties who served discovery requests in connection with the Disclosure Statement Motion and who will receive a copy of this letter response.

[5]   A complete list of the discovery requests spans 41 pages, and is attached hereto as **Exhibit A**.

2

requests, but not in the context of Disclosure Statement discovery. Most creditors did not respond, while others have refused to amend.[7]

There is good cause to issue an order precluding confirmation discovery at this time. These requests do not seek information related to the Disclosure Statement Motion, and conducting confirmation discovery now is unnecessary and unduly burdensome.[8]

### A.   Confirmation Discovery Is Irrelevant to Evaluating the Adequacy of the Disclosure Statement.

Section 1125(a)(1) of the Bankruptcy Code defines "adequate information" for a disclosure statement as "information of a kind, and in sufficient detail, as far as is reasonably practicable. . . that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan."[9] In evaluating the adequacy of a disclosure statement, courts have considered the following factors, among others:

- the sophistication of the creditors evaluating the plan of reorganization;

- the extent to which information regarding the proposed plan has otherwise been made available to the creditors evaluating the plan of reorganization; and, most importantly,

- whether objections to the disclosure statement speak to issues that are more appropriately raised in the context of plan confirmation.[10]

---

[6]   *See* **Exhibit B**, 5/21/15 Letter from Debtors' co-counsel to All Initiators of Disclosure Statement Discovery.

[7]   The Debtors are in discussions with the Ad Hoc Group of TCEH First Lien Creditors regarding potential revisions to the Disclosure Statement that may obviate that creditor group's perceived need for discovery. On May 27, 2015, the Debtors received responsive letters from the EFIH Second Lien Indenture Trustee and the TCEH Official Committee of Unsecured Creditors rejecting the Debtors' position, but expressing willingness to meet and confer on the issue. The Debtors will do so.

[8]   Fed. R. Bankr. P. 7026(c)(1)(B) ("The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression or expense, including…specifying terms, including the time…for the disclosure or discovery.").

[9]   11 U.S.C. § 1125(a)(1) (defining "adequate information" as "information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, including a discussion of the potential material Federal tax consequences of the plan to the debtor, any successor to the debtor, and a hypothetical investor typical of the holders of claims or interests in the case, that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan, but adequate information need not include such information about any other possible or proposed plan and in determining whether a disclosure statement provides adequate information, the court shall consider the complexity of the case, the benefit of additional information to creditors and other parties in interest, and the cost of providing additional information[.]").

[10]  *See, e.g.*, *In re Zenith Electronics Corp.*, 241 B.R. 92, 99 (Bankr. D. Del. 1999) (It is "important to keep in mind…[that] those entitled to vote are sophisticated, institutional investors with competent professionals assisting them in analyzing and testing the information provided [in the disclosure statement]."); *Id.* (emphasizing that the creditors voting on the plan have been involved in negotiations with the debtors for over a

The last of these considerations is particularly relevant here. Bankruptcy courts have consistently rejected creditors' attempts to convert a disclosure statement hearing into an evidentiary hearing on (a) the debtor's approval of the transactions contemplated by the plan of reorganization or (b) the debtor's enterprise valuation.[11] Likewise, courts have ruled that debtors need not disclose information regarding alternative or losing bids submitted in connection with a chapter 11 sale process.[12] As one court succinctly noted, section 1125(a) of the Bankruptcy Code excludes from a disclosure statement hearing those strategic objections "designed to delay and hobble the efforts of the [plan proponent] to put a plan before the court."[13]

Disclosure Statement discovery should focus on whether the Disclosure Statement provides adequate information regarding the Plan, not on contested confirmation issues. Indeed, the Court already stated at the May 4 scheduling motion hearing that discovery relating to valuation, settlement of litigation claims, and other plan confirmation issues is premature, and should only be permitted in the context of Plan confirmation discovery.[14]

Having reviewed the discovery requests, the Debtors respectfully submit that discovery is not necessary to assess the adequacy of the Disclosure Statement. All creditors seeking discovery are represented by sophisticated counsel and financial advisors, have been engaged in plan discussions for over a year, and already have access to reams of formal and informal discovery from the Debtors, including millions of pages of documents.[15]

### B. The Creditors' Discovery Requests Are Confirmation-Related or Otherwise Irrelevant to the Disclosure Statement Motion.

The creditors' discovery requests are improper for at least three reasons. ***First***, certain of these requests are expressly outside the scope of section 1125 of the Bankruptcy Code, which states that (a) "adequate information ***need not include such information about any other possible or proposed plan***" and (b) a court may approve a disclosure statement ***without a***

---

year before voting on the plan); *In re Feldman*, 53 B.R. 355, 358 (Bankr. S.D.N.Y. 1985) (stating that the disclosure statement need not contain information to which its addressees otherwise have access).

[11] *See, e.g.*, *In re Marvel Entm't Grp.*, Inc., 234 B.R. 21, 30-31 (D. Del. 1999) (noting the court had previously deferred ruling on a summary judgment motion in connection with a postpetition change in the board of directors to the plan confirmation hearing); *In re Calpine Corp.*, 390 B.R. 508, 512 (S.D.N.Y. 2008) *aff'd*, 354 F. App'x 479 (2d Cir. 2009) (noting the court had previously approved the disclosure statement over the equity committee's objection to the debtors' plan to file an updated valuation sometime before the voting deadline).

[12] *See, e.g.*, *In re Adelphia Commc'ns Corp.*, No. 02-41729 (Bankr. D. Del. Oct. 27, 2005), Hr'g Tr. at 86-89. Materials cited in this letter that are not public are available from the Debtors upon request.

[13] *In re Waterville Timeshare Group*, 67 B.R. 412, 414 (Bankr. D.N.H. 1986).

[14] 5/4/15 Hr'g Tr. 103:10-104:8; 107:13-108:3; 110:20-111:20.

[15] The Court's Order on Disclosure Statement scheduling prohibits discovery seeking the same documents that have already been produced in response to other requests, including documents produced in connection with the Second Day motions, RSA, Venue, Retention, Makewhole proceedings, or Legacy Discovery. 5/18/15 Order at ¶ 32.

4

*valuation of the debtor or an appraisal of the debtor's assets*.[16] **Second**, other requests relate to the treatment of claims under the plan and certain plan settlements, and therefore pertain to plan confirmation issues that are inappropriate for a disclosure statement hearing.[17] **Third**, many of the requests run contrary to the Court's May 4 ruling that it would be "putting the cart before the horse" to start "confirmation litigation over a plan" now.[18] Specifically, the Court stated that issues related to valuation and Plan settlements were confirmation issues, and that with respect to the latter the Debtors had already produced "more than enough information" regarding the existence of claims and the ripeness of such claims for settlement.[19]

        1.        The Creditors' Document Requests, Interrogatories, and Rule 30(b)(6) Deposition Notices Are Improper.

The breadth of the discovery sought in connection with the Disclosure Statement Motion is remarkable and unjustifiable.

- **The Value of TCEH and EFCH**. Many requests relate to the valuation of the T-side Debtors. These requests include:

    o EFH Official Committee First Disclosure Statement Requests to Debtors, RFP Nos. 14 ("the basis of the TCEH Valuation Analysis"), 15 ("perpetuity growth method for estimating the terminal value" of TCEH"), 16 ("certain precedent transactions for businesses similar to that of Reorganized TCEH"), 17 ("financial projections used in the valuation of TCEH"), 18 (DCF analysis "in connection with its valuation of TCEH"), 19-20 (base and environmental case financial projections), 21, and 51-52;

    o Ad Hoc Committee of TCEH First Lien Creditors' Request for the Production of Documents by Debtors in Connection with the Disclosure Statement, RFP No. 12;

---

[16] 11 U.S.C. § 1125(a)(1); 11 U.S.C. § 1125(b) (emphasis added).

[17] *See In re Scioto Valley Mortgage Co.*, 88 B.R. 168, 172 (Bankr. S.D. Ohio 1988) ("[i]f creditors oppose their treatment in the plan, ***but the Disclosure Statement contains adequate information***, issues respecting the plan's confirmability will await the hearing on confirmation") (emphasis added); *Waterville Timeshare Group*, 67 B.R. at 412 (stating that the wisdom of a particular settlement that was an integral part of the pending plan would be a "prime issue at the confirmation hearing" where "objecting partners as well as any other party in interest would have a full opportunity to voice and have heard their objections to the comprise at that time.").

[18] 5/4/15 Hr'g Tr. 104:5-104:8.

[19] *See* 5/4/15 Hr'g Tr. 107:14-21 (stating that "valuation is one piece" that is relevant to the plan process and noting that another "important part of the plan process [is] the settlement that's baked into the plan, the intercompany settlement and claims); 110:21-23 (stating that "baked into the plan is a settlement of intercompany or inter-silo claims [and] whether that settlement is appropriate is a confirmation issue not a scheduling issue"); 111:3-7 ("there's more than enough information out there to get an idea both from the legacy discovery and what the directors did and have produced to have a basis to understand why there may be claims and why those claims may be settled"); 111:17-20 ("I'm not also going to require valuation discovery now on the T side or the E side [as] that can be done in the context of confirmation discovery").

5

- o TCEH Official Committee Document Requests to Debtors in Connection with Approval of Debtors' Disclosure Statement, RFP No. 12;

- o TCEH Official Committee Interrogatories to Debtors in Connection with Approval of Debtors' Disclosure Statement, Interrogatory No. 5 ("all witnesses with material knowledge of the Reorganized TCEH Valuation Analysis");

- o TCEH Official Committee Notice of Deposition of Debtors, Topic 6 ("Reorganized TCEH Valuation Analysis"); and

- o EFIH Second Lien Indenture Trustee's Request for the Production of Documents to Debtors, RFP No. 9 ("any independent valuations of the Reorganized EFIH").

- **The Settlements in the Plan**. Many requests seek discovery related to the settlements in the Plan, including inter-debtor settlements and settlements with stakeholders. These requests include:

  - o Ad Hoc Committee of TCEH First Lien Creditors' Request for the Production of Documents by Debtors in Connection with the Disclosure Statement, RFP Nos. 6 ("analysis and calculation of the TCEH Settlement Claim"), 8 (effect of prepetition liens on settlement of intercompany claims), 9 (prepetition intercompany claims), 14 (board analysis regarding settlements);

  - o EFH Official Committee First Disclosure Statement Requests to Debtors, RFP Nos. 9 (step-up in basis of TCEH's assets under the Settlement), 32 (approval of Plan), 33-35, 36-37 (Disinterested Director Advisor "negotiation, evaluation, investigation, analysis, due diligence or assessment of the Settlement"), 38-50;

  - o TCEH Official Committee Document Requests to Debtors in Connection with Approval of Debtors' Disclosure Statement, RFP No. 2;

  - o TCEH Official Committee Interrogatories to Debtors in Connection with Approval of Debtors' Disclosure Statement, Interrogatory No. 2 (witnesses with knowledge of settlements);

  - o TCEH Official Committee Notice of Deposition of Debtors, Topic 3 (claims subject to plan settlement); and

  - o Wilmington Savings Fund Society, FSB's Requests for Production of Documents to the Debtors Pursuant to Federal Rules of Civil Procedure 26 and 34, RFP Nos. 1-2, 4-5, 8.[20]

---

[20] The deposition subpoenas to the disinterested directors and managers likewise seek documents and information in categories too numerous to mention here that are patently directed at Plan confirmation issues, such as inter-Debtor settlements, as opposed to the Disclosure Statement.

- **The Debtors' Liquidation Analysis**. Many requests seek substantive information regarding the Debtors' liquidation analysis. These requests include:

  o EFH Ind. Trustee requests 6-8 (aggregate amount of the EFH Legacy Note Claims, EFH Unexchanged Note Claims, and EFH LBO Note Primary Claims used in the liquidation analysis);

  o EFH Official Committee First Disclosure Statement Requests to Debtors, RFP Nos. 12 ("preparation of the Debtors' Liquidation Analysis"), 13 ("Debtors' election not to include a separate liquidation analysis" for individual Debtors");

  o TCEH Official Committee Document Requests to Debtors in Connection with Approval of Debtors' Disclosure Statement, RFP Nos. 10 ("All Documents concerning the Liquidation Analysis," including "all calculations, valuations, and assumptions"), 11 (same for EFH Corporate Services Company);

  o TCEH Official Committee Interrogatories to Debtors in Connection with Approval of Debtors' Disclosure Statement, Interrogatory Nos. 3-4; and

  o TCEH Official Committee Notice of Deposition of Debtors, Topics 4-5.

  o EFIH Second Lien Indenture Trustee's Request for the Production of Documents to Debtors, RFP No. 9 ("liquidation analyses").

- **Alternative Plans of Reorganization or Alternative Analyses**. Many requests seek discovery relating to alternatives to the Plan. These requests include:

  o EFH Ind. Trustee's First Set of Requests for Production of Documents Directed to Each Debtor 20-21;

  o EFH Official Committee First Disclosure Statement Requests to Debtors, RFP Nos. 3-5; and

- **Values of Claims and Consideration for Particular Creditor Classes**. Many requests seek substantive information about claim and consideration values for particular creditor classes, including:

  o EFH Ind. Trustee's First Set of Requests for Production of Documents Directed to Each Debtor, RFP Nos. 2-5 (requests regarding allowed claims for Classes A4, A5, A6, B5); and

  o EFH Official Committee First Disclosure Statement Requests to Debtors, RFP No. 56 (insurance coverage for Asbestos Claims).

  o EFIH Second Lien Indenture Trustee's Request for the Production of Documents to Debtors, RFP Nos. 1, 5, and 8.

- **The Debtors' Asset Values**. Some requests seek substantive information regarding the value of the Debtors' assets. Among these requests are:

    o Ad Hoc Committee of TCEH First Lien Creditors' Request for the Production of Documents by Debtors in Connection with the Disclosure Statement, RFP Nos. 1-2 (unencumbered assets).

- **Administrative Expenses**. Some requests seek information relating to administrative expenses, including:

    o EFH Indenture Trustee's First Set of Requests for Production of Documents Directed to Each Debtor, RFP Nos. 13-14.

- **Causes of Action**. Some requests seek information regarding litigation causes of action, including:

    o Ad Hoc Committee of TCEH First Lien Creditors' Request for the Production of Documents by Debtors in Connection with the Disclosure Statement, RFP Nos. 4-5.

    o EFIH Second Lien Indenture Trustee's Request for the Production of Documents to Debtors, RFP No. 11.

- **The Releases and Exculpations in the Plan**. Several requests seek information relating to the releases and exculpations in the Plan, including:

    o EFH Official Committee First Disclosure Statement Requests to Debtors, RFP Nos. 11 (Sponsor consent), 27 (third-party releases), 28 (exculpated parties), 29 (rights, liabilities, or releases of Sponsors), 30 (released parties), 31 (releases).

- **Board Governance Regarding the Plan**. Some requests seek information regarding board governance relating to the Plan, including:

    o TCEH Official Committee Document Requests to Debtors in Connection with Approval of Debtors' Disclosure Statement, RFP No. 4.

- **The Retention of Advisors to the Disinterested Directors:** Several requests seek discovery into the retention of advisors to the disinterested directors and managers. These requests include:

    o EFH Indenture Trustee's First Set of Requests for Production of Documents Directed to Each Debtor, RFP Nos. 25-31 (seeking documents related to the retention and engagement of the Disinterested Director Advisors); and

    o EFH Official Committee First Disclosure Statement Requests to Debtors, RFP Nos. 23-25 (seeking documents related to "process in which the Disinterested Directors were selected" and their "counsel and investment banking professionals" were selected).

8

These requests—and the related deposition subpoenas and notices—are transparent attempts to bog down the Disclosure Statement process with matters that will inevitably receive proper consideration at the confirmation stage. The Debtors will participate in full confirmation discovery in due course. Indeed, the Debtors recently proposed a schedule that called for confirmation discovery to begin *now*, but certain creditors strongly opposed starting this discovery. Regardless of when it begins, it is inappropriate to conduct confirmation discovery in connection with a Disclosure Statement Motion.[21]

Not only is this Plan discovery premature and irrelevant to the Court's consideration of the Disclosure Statement, but much of the information sought by the requests has been produced already. For instance, the disinterested directors and managers filed statements and attached copies of board minutes approving the proposed settlement and related presentations, detailing the negotiation and settlement of claims.[22] The Court recognized at the May 4 hearing that "[t]here's more than enough information out there to get an idea both from the legacy discovery and what the directors did and have produced to have a basis to understand why there may be claims and why those claims may be settled."[23]

Accordingly, the Debtors and their Disinterested Directors request a protective order that will keep Disclosure Statement and confirmation discovery on their own tracks, as the Court instructed.

### 2. The Creditors' Attempts To Take Discovery Of The Disinterested Directors Are Improper.

The deposition notices and subpoenas served on TCEH disinterested manager Mr. Sawyer, EFH disinterested directors Mr. Evans and Ms. Williamson, and EFIH disinterested manager Mr. Cremens are improper. There is no basis to depose any disinterested director or manager about the adequacy of the proposed Disclosure Statement. Instead, the depositions would undoubtedly be focused, as are other requests, on confirmation issues. For example, the process by which counsel and investment advisors were selected for the Disinterested Directors could not make a difference as to whether the Disclosure Statement contains "adequate information" under section 1125 of the Bankruptcy Code. The same is true for the attempts to obtain discovery on the reasonableness of the intercompany claims settlement—precisely what the Court identified on May 4 as a confirmation issue, and not subject to discovery at this time. To require the Disinterested Directors to sit for depositions on confirmation issues now would be a tremendous and unnecessary burden.

---

[21] "[C]onfirmation issues are reserved for the confirmation hearing, and not addressed at the disclosure statement stage." *In re Am. Capital Equip., LLC*, 688 F.3d 145, 153-54 (3d Cir. 2012) (internal quotations and citation omitted). The narrow exception to this rule exists only "where it is obvious at the disclosure statement stage that a later confirmation hearing would be futile because the plan described by the disclosure statement is patently unconfirmable." *Id.* at 154.

[22] D.I. 4145-4147.

[23] 5/4/15 Hr'g. Tr. 111:3-7.

9

## II. Disclosure Statement Hearings Are Not Mini-Confirmation Trials.

Any attempt to convert the Disclosure Statement hearing into a mini-trial on Plan confirmation issues would be wholly inappropriate and would run contrary to the Court's determination that discovery on Plan and Disclosure Statement issues should not be collapsed.[24] As a general matter, it is virtually unheard of to have an evidentiary hearing in connection with a hearing to approve a disclosure statement. Indeed, included as **Appendix II** is a list of 22 recent "mega" cases in which the disclosure statement was approved as having satisfied the requirements of section 1125 of the Bankruptcy Code—*without* the presentation of evidence.

Even in those cases where a creditor argues that a disclosure statement should be rejected because the plan of reorganization is patently unconfirmable, an evidentiary hearing is not required. In the authoritative Third Circuit case, *In re American Capital Equipment, LLC*, the court found the plan of reorganization to be patently unconfirmable on its face,[25] yet nevertheless cautioned that "bankruptcy courts must [e]nsure that due process concerns are protected by…taking care not to prematurely convert a disclosure statement hearing into a confirmation hearing."[26]

Nor are disputes over the substance of the Plan appropriate for Disclosure Statement discovery. As recently as last week in *Optim Energy*, for example, the bankruptcy court approved the disclosure statement in a contested bankruptcy proceeding despite noting the likelihood of a "substantial fight over issues about plan structure, confirmability, the sufficiency and the integrity of the process as it relates to plan, configuration, and impairment" and ultimately finding that "additional disclosure [in the disclosure statement] will not resolve those issues."[27] Thus, despite acknowledging significant obstacles to confirmation, the court nevertheless approved the disclosure statement without hearing evidence.

The ruling in *Optim* is consistent with the rulings of other courts that have routinely approved disclosure statements under section 1125 of the Bankruptcy Code even where the disclosure statements on their face indicate disputed plan confirmation issues. *See, e.g.*, *In re Quigley Co., Inc.*, 377 B.R. 110, 119 (Bankr. S.D.N.Y. 2007) (approving the debtor's disclosure settlement while acknowledging that certain plan settlements between the debtor and its non-

---

[24] *See* 5/4/15 Hr'g Tr. 103:10-104:8 (stating that to allow Plan mediation to progress, among other reasons, the Court would not "dual track" discovery related to the Plan and discovery related to the Disclosure Statement).

[25] *American Capital*, 688 F.3d at 155-61 (affirming the bankruptcy court's finding that the plan failed to satisfy the Bankruptcy Code's good faith and feasibility requirements). To be clear, the Plan in this case is *not* patently unconfirmable. *In re American Capital Equipment* involved significantly different facts than those presented here—among other things, virtually all of the plan funding in that case came from contingent asbestos claims suits, thereby perversely incentivizing the debtors to lose the underlying suits to maximize plan funding. 688 F.3d at 158-59.

[26] *Id.* at 155, n.6; *see also In re Copy Crafters Quickprint, Inc.*, 92 B.R. 973, 980 (Bankr. N.D.N.Y. 1988) ("[C]are must be taken to ensure that the hearing on the disclosure statement does not turn into a confirmation hearing, due process considerations are protected and objections are restricted . . . .").

[27] Transcript of Hearing Before Honorable Brendan L. Shannon Unites States Bankruptcy Judge at 43-46, *In re Optim Energy, LLC.*, No. 14-10262 (BLS).

debtor parent implicated several confirmation issues that would ultimately require an evidentiary hearing); *In re Dune Deck Owners Corp.*, 175 B.R. 839, 843-47 (Bankr. S.D.N.Y. 1995) (acknowledging that factual disputes existed regarding whether certain plan transactions would, if consummated, render the plan unconfirmable, but scheduling an evidentiary hearing on the matter *after* approval of the disclosure statement); *In re Hyatt*, 509 B.R. 707, 711 (Bankr. D.N.M. 2014) (approving the debtor's disclosure statement while acknowledging that the ability to subordinate certain claims under the Plan required additional evidence to be presented at a confirmation hearing); *In re Deming Hospitality, LLC*, No. 11-12-13377 TA, 2013 WL 1397458, at *9 (Bankr. D.N.M. Apr. 5, 2013) (holding that it "w[ould] not deny approval of the Disclosure Statement" because further evidence was warranted in order to decide issues related to plan confirmation).

Here, consistent with the rulings of many courts, the existence of potential plan confirmation issues does not justify deferring approval of the Disclosure Statement. No mini-trial or evidentiary hearing on confirmation issues is warranted, and the Court should make that plain now.

\*   \*   \*

Despite the sheer breadth of discovery requests served in connection with the Disclosure Statement, none addresses the adequacy of the Disclosure Statement under section 1125 of the Bankruptcy Code—the only question relevant to whether the Disclosure Statement should be approved. The parties should remain focused on this question in connection with the Disclosure Statement Motion. Accordingly, the Debtors respectfully request a protective order denying the confirmation-related (and otherwise irrelevant) discovery requested in connection with the Disclosure Statement Motion and directing the Parties that the Disclosure Statement hearing will not be a mini-trial on confirmation issues.

Sincerely,

**KIRKLAND & ELLIS LLP**
Mark McKane
555 California Street
San Francisco, CA 94104
*Co-Counsel to the Debtors*

**MUNGER, TOLLES & OLSON LLP**
Thomas B. Walper
John W. Spiegel
355 S. Grand Ave 35th FL
Los Angeles, CA 90071
*Co-Counsel to Energy Future Competitive Holdings Company LLC, Texas Competitive Electric Holdings Company LLC*

11

**PROSKAUER ROSE LLP.**
Jeff J. Marwil
Mark K Thomas
Peter J. Young
Three First National Plaza
70 W. Madison ST STE 3800
Chicago, IL 60602
*Co-Counsel to Energy Future Holdings Corp.*

- and -

Michael A. Firestein
2049 Century Park East, #3200
Los Angeles, CA 90067

**CRAVATH, SWAINE & MOORE LLP**
Michael A. Paskin
Worldwide Plaza
825 Eighth Ave
New York, NY 10019-7475

- and -

**JENNER & BLOCK LLP**
Richard Levin
919 Third Ave
New York, NY 10022-3908
*Co-Counsel to Energy Future Intermediate Holding Company LLC*

**Appendix I**

1. Paul, Weiss, Rifkind, Wharton & Garrison LLP, on behalf of the Ad Hoc Group of TCEH First Lien Creditors

2. Nixon Peabody LLP, on behalf of American Stock Transfer & Trust Company, LLC, as successor trustee to the Bank of New York Mellon Trust Company, N.A. under the indentures for certain notes issued by EFH Corp.

3. Sullivan & Cromwell LLP, on behalf of the Official Committee of Unsecured Creditors of Energy Future Holdings Corp., Energy Future Intermediate Holdings Company, LLC, EFIH Finance, Inc, and EECI, Inc.

4. Morrison & Foerster LLP, on behalf of the Official Committee of Unsecured Creditors of Energy Future Holdings Company LLC, its direct subsidiary, Texas Competitive Electric Holdings Company LLC, their direct and indirect subsidiaries, and EFH Corporate Services Company

5. Kramer Levin Naftalis & Frankel LLP, on behalf of Computershare Trust Company, N.A. and Computershare Trust Company of Canada, as indenture trustee for the EFIH second lien notes

6. White & Case LLP, on behalf of the Ad Hoc Group of TCEH Unsecured Noteholders

7. Foley & Lardner, LLP, on behalf of UMB, N.A., as indenture trustee for the EFIH unsecured notes

8. Brown Rudnick LLP, on behalf of Wilmington Savings Fund Society, FSB, as successor trustee under the TCEH second lien notes

## Appendix II

| Debtor | Jurisdiction | Judge |
|---|---|---|
| *In re Adelphia Communications Corp.*, No. 02-41729 | SDNY | Gerber |
| *In re AMR Corp.*, No. 11-15463 | SDNY | Lane |
| *In re Aurora Foods Inc.*, No. 03-13744 | Delaware | Walrath |
| *In re Calpine Corp.*, No. 05-60200 | SDNY | Lifland |
| *In re Capmark Financial Group Inc.*, No. 09-13684 | Delaware | Sontchi |
| *In re Charter Communications Inc.*, No. 09-11435 | SDNY | Peck |
| *In re Chemtura Corp.*, No. 09-11233 | SDNY | Gerber |
| *In re Chrysler LLC*, No. 09-50002 | SDNY | Gonzalez |
| *In re Delta Air Lines Inc.*, No. 05-17923 | SDNY | Hardin |
| *In re City of Detroit, Michigan*, No. 13-53846 | E.D. Mich. | Rhodes |
| *In re Dynegy Holdings, LLC*, No. 11-38111 | SDNY | Morris |
| *In re Edison Mission Energy*, No. 12-49219 | N.D. Ill. | Cox |
| *In re ION Media Networks, Inc.*, No. 09-13125 | SDNY | Peck |
| *In re Los Angeles Dodgers LLC*, No. 11-12010 | Delaware | Gross |
| *In re Linens Holding Co.*, No. 08-10832 | Delaware | Sontchi |
| *In re Longview Power, LLC*, No. 13-12211 | Delaware | Shannon |
| *In re Premier International Holdings, Inc.*, No. 09-12019 | Delaware | Sontchi |
| *In re Residential Capital*, No. 12-12020 | SDNY | Glenn |
| *In re Tronox*, No. 09-10156 | SDNY | Gropper |
| *In re Visteon Corp.*, No. 09-11786 | Delaware | Sontchi |
| *In re Washington Mutual Inc.*, No. 08-12229 | Delaware | Walrath |
| *In re WCI Communities Inc.*, No. 08-11643 | Delaware | Carey |