# KIRKLAND & ELLIS LLP
AND AFFILIATED PARTNERSHIPS

|  |  |  |
|---|---|---|
| Andrew R. McGaan, P.C.<br>To Call Writer Directly:<br>(312) 862-2183<br>andrew.mcgaan@kirkland.com | 300 North LaSalle<br>Chicago, Illinois 60654<br><br>(312) 862-2000<br><br>www.kirkland.com | Facsimile:<br>(312) 862-2200 |

May 28, 2015

**VIA ECF**

The Honorable Christopher S. Sontchi
United States Bankruptcy Court
 for the District of Delaware
824 North Market Street, 5th Floor
Wilmington, Delaware 19801

           Re:    *In re Energy Future Holdings, Corp. et. al.*, Case No. 14-10979 (CSS)

Dear Judge Sontchi:

       The Debtors request an order prohibiting document requests and quashing two deposition notices issued by the Ad Hoc Group of TCEH Unsecured Creditors ("Ad Hoc Group") [D.I. 4593 and D.I. 4594] (attached as Exhibits A, B, and C) in connection with the Debtors' motion to extend exclusivity ("Motion") [D.I. 4441]. On Tuesday, May 26—two full weeks after the Debtors filed the Motion—the Ad Hoc Group demanded the Debtors produce by Thursday, May 28 (today), documents and witnesses for deposition: Paul Keglevic, the Debtors' CFO and co-CRO, and a Rule 30(b)(6) witness or witnesses. The Ad Hoc Group's intent—to use the document requests and depositions to take discovery that is unrelated to the Motion, but that is instead calculated to give the Ad Hoc Group a leg up in plan negotiations—is both transparent and improper.

       The Motion was filed on May 11, 2015 and will be heard on Monday, June 1. Seven parties filed timely objections, responses, or joinders on Tuesday, May 26, including the Ad Hoc Group.[1] None sought any discovery before filing their objections, nor is any warranted. The Motion requests an extension of exclusivity by 120 days. Some objectors, including the Ad Hoc Group, argue for shorter extensions. Mr. Keglevic gave a declaration in support of the Motion explaining that the Debtors seek the extension to avoid interference with progress in managing the recently approved T-side mediation process; the Oncor sale process; due diligence and negotiations concerning REIT-based plan alternatives; resolution of interest and make whole claims; and negotiation of a confirmation schedule. While many of these matters involve

---

[1] The Debtors are separately filing a reply brief in support of the Motion which addresses the objections.

Beijing    Hong Kong    Houston    London    Los Angeles    Munich    New York    Palo Alto    San Francisco    Shanghai    Washington, D.C.

KE 36326785.6

## KIRKLAND & ELLIS LLP

The Honorable Christopher S. Sontchi
May 28, 2015
Page 2

negotiations and discussions that are properly confidential, that these efforts are all underway has been discussed repeatedly in open court, and there are no legitimate factual disputes over the status of these cases.

The Ad Hoc Group's last minute demand for documents and depositions is not directed at testing whether, for example, the Debtors are genuinely engaged in an Oncor sale process or whether the Debtors are conducting confidential plan negotiations, matters that, while they might bear upon a request to extend exclusivity, are undisputed. Indeed, no other party saw any need to conduct discovery of the factual bases for the Motion. Resistance to the Motion is instead confined to legal and case management arguments, including arguments to extend exclusivity for less time than requested. <u>None</u>, including the Ad Hoc Group's objection, contests the factual statements in Mr. Keglevic's declaration.

The Ad Hoc Group is seeking last-minute discovery to enhance its position in plan negotiations. In particular, as the Court knows, the Ad Hoc Group is pursuing a potential REIT-based plan of reorganization. This potential alternative plan has been discussed in Court, including in a recent chambers conference, and been the subject of extensive due diligence, numerous meetings among the Ad Hoc Group, the Debtors, Oncor and their respective advisors. *See, e.g.*, 5/4/15 Hr'g Tr., 74:7-75:8 (attached as Exhibit D). The Debtors have openly embraced and supported these negotiations because, among other reasons, the proposal offers the hope of additional creditor consensus. The Debtors, however, have emphasized—and the Ad Hoc Group has agreed—that a REIT proposal comes with unique and challenging execution risks, as such a proposal implicates a host of regulatory and implementation considerations. To that end, as the Debtors informed the Court during the recent chambers conference—and have made clear to the Ad Hoc Group every step of the way—the Debtors are seeking a "toggle" pursuant to which a fallback plan would be agreed to in advance should the REIT proposal founder.[2] Absent that, the Debtors may be asked to assume unacceptable levels of execution risk and find themselves

---

[2] In their objection, the Ad Hoc Group characterizes the "toggle" as part of an alleged Debtor campaign to delay and frustrate their plan proposal. This takes negotiation posturing to absurd heights. In the recent chambers conference, counsel for the Ad Hoc Committee acknowledged the Debtors' need to manage plan execution risks in a REIT-based proposal. Similarly, in correspondence from over a month ago with the Debtors' counsel, the Ad Hoc Group wrote: "With respect to the second point, ***we are not in any way backing away from the concept that the plan would include a toggle mechanism pursuant to which there would be an alternative exit built into the plan in the event that we don't consummate the REIT transaction.*** Nor are we trying to shift risk to the estates that they don't otherwise bear in connection with whatever exit the plan would toggle to." 4/25/15 E-mail from T. Lauria to M. Kieselstein (emphasis added) (attached as Exhibit E). In these plan discussions, there was no mention of allegedly nefarious, plan-choking motives, because it is not so. The deposition notices the Debtors seek to quash are more of the same gamesmanship. The parties should be negotiating in good faith, not leveraging the Court process to disadvantage other plan proponents or to conscript the Court into dissuading the Debtors from conducting confidential negotiations with all comers.

## KIRKLAND & ELLIS LLP

The Honorable Christopher S. Sontchi
May 28, 2015
Page 3

without an executable plan twelve months from now. This is nothing more than plan negotiations taking shape, and the Ad Hoc Group's proposal is but one of many proposals.

Because competing parties are pursuing competing plan ideas, it is perhaps unsurprising that some might seek unfair advantage. The Ad Hoc Group's eleventh-hour discovery demands do just that. Its objection to the Motion explains that it wants to pry into the Debtors' confidential discussions and negotiations with other parties. Despite numerous acknowledgments that the Debtors were, in fact, cooperating in exploration of the REIT alternative, it alleges, with no factual support—as there is none—the existence of "*potential* private efforts to quell REIT Plan negotiations as a means of forcing creditors to accede to [the Debtors'] plan…." TCEH Ad Hoc Group Obj. [D.I. 4590] at 3 (emphasis added). It claims entitlement to "discovery concerning actions that *seem* designed to interfere with the REIT," without identifying any reasonable basis for the accusation or the discovery. *Id.* Both its document requests and its 30(b)(6) notice seek information regarding:

> Any Communications between April 14, 2015 and the date of the Hearing between Debtors and any third party (other than the Ad Hoc Group and its representatives) concerning any potential plan of reorganization for any of the Debtors, not including Communications solely concerning the Debtors' Plan and/or the sale process for the EFH-EFIH Transaction…."

Ad Hoc Group Request For Production No. 1; Ad Hoc Group Notice of Deposition [D.I. 4593] Topic No. 2.

The document requests and deposition notices are improper and should be prohibited and quashed, respectively. Where, as here, there is good cause to protect a party from undue burden or expense, a court may forbid or limit the discovery. Fed. R. Civ. P. 26(c)(1)(A),(D); Fed. R. Bankr. P. 7026; *see also Boyer v. Taylor*, No. CIV A 06-694-GMS, 2009 WL 2338173, at *10 (D. Del. July 30, 2009) (holding that "a protective order is warranted" because the documents requests are "unduly burdensome" and "excessive"); *In re Boone Cnty. Utilities, LLC*, 518 B.R. 511, 515-17 (Bankr. S.D. Ind. 2014) (quashing certain 30(b)(6) requests regarding pre-confirmation corporate governance as "irrelevant"). The requests and notices have nothing to do with the propriety of extending exclusivity by 120 days. The Ad Hoc Group candidly concedes that it wants to fish through the Debtors' negotiations with other parties in order to improve the chances of success for its own proposal. It cites no authority showing how this relates to exclusivity, because it does not. Nor can the Ad Hoc Group support stripping other parties' negotiations of their confidentiality, while trying to protect their own. At the May 4, 2015 hearing, the Ad Hoc Group sought an off-the-record, in-chambers conference specifically to inform the Court about its own *potential* plan of reorganization. *See* 5/4/15 Hr'g Tr., 46:10-23.

## KIRKLAND & ELLIS LLP

The Honorable Christopher S. Sontchi
May 28, 2015
Page 4

Recently, the Ad Hoc Group gave the Debtors a term sheet outlining features of its proposed plan and *demanded it be kept confidential*.

At that same hearing, the Court noted that it is "appropriate and important" to give the mediation full opportunity to succeed and to allow the parties to focus on active exploration of an alternative transaction, *id.* at 103:17-104:4, and deferred setting a confirmation schedule to permit negotiations to continue unimpeded by litigation preparation. *Id.* at 103:10-12. Along those same lines, counsel for the Ad Hoc Group described ongoing negotiations as a "fragile process," *id.* at 75:10-11, and espoused the "general view" that "when you're at a place like this in a case, the last thing you want to do is send people off on a schedule that requires them to start deposing each other." *Id.* at 84:8-11. Counsel for the Ad Hoc Group also asked the Court whether "[I am] supposed to be sitting in a meeting with Mr. Keglevic, talking about LBO-related claims, while I'm also trying to get Mr. Keglevic to provide necessary documentation with respect to a REIT [] plan?" *Id.* at 80:3-6. The pending deposition notices, however, demand exactly that which the Ad Hoc Group said it should not be doing. The Ad Hoc Group, of course, continues to negotiate with the Debtors over its own proposed plan. Permitting it to cross-examine the Debtors and their co-CRO on discussions with competing plan proponents is improper on its face.

There are still more concerns. The Court-approved T-side mediation process is underway. The mediator has begun to meet with the Debtors and various constituents. Per the Court's order, that entire process—though it involves issues on which the pending deposition notices seek discovery—is entirely confidential. So, too, with Court-supervised exceptions, is the Oncor bidding process. Yet, that process involves discussions among the Debtors and the Debtors' advisors and potential bidders regarding, among other things, plan proposals and plan negotiations. None of these matters should be subject to discovery at this time, much less discovery in the context of a request to extend exclusivity.

By its own admission, the Ad Hoc Group's document requests and deposition notices are not calculated to lead to discovery of facts bearing on how long exclusivity should be extended.[3] It formulated and filed its objection without requesting any discovery, because none is needed to stake out a position on the Motion. That's why no other objecting party has sought any discovery, either. Instead, these last-minute, post-objection notices are designed to influence plan negotiations in which the Ad Hoc Group is but one competing party. That agenda is belied by their objection to the Motion, and by their document requests and 30(b)(6) notice, which demand disclosure of confidential plan negotiations with other parties. Because the requests and notices are irrelevant to the exclusivity issue, they should be prohibited and quashed. *See*

---

[3] The Ad Hoc Group's objection does not oppose an extension outright, but argues it should be extended only to July 9.

**KIRKLAND & ELLIS LLP**

The Honorable Christopher S. Sontchi
May 28, 2015
Page 5

*Novartis Pharm. Corp. v. Eon Labs Mfg., Inc.*, 206 F.R.D. 392, 394 (D. Del. 2002) (granting motion for protective order limiting deposition notice "on matters not relevant"); *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, No. C.A.04-1371 JJF, 2006 WL 2604540, at *3 (D. Del. Aug. 24, 2006) (granting motion to quash deposition that is "irrelevant to the present litigation"); *Boyer*, 2009 WL 2338173, at *10.

      If, as Debtors urge the Court to order, discovery is not permitted into negotiations of plan proposals with other parties, including the identity of such parties, structures or concepts discussed, or status of those discussions, there is no purpose for these last-minute document requests and depositions. Thus, the Debtors respectfully request the Court to deny the document requests and quash the Keglevic and Rule 30(b)(6) deposition notices issued by the Ad Hoc Group.

      Sincerely,

      /s Andrew R. McGaan

      **KIRKLAND & ELLIS LLP**
      Andrew R. McGaan
      300 North LaSalle
      Chicago, IL 60654
      *Co-Counsel to the Debtors*