# Exhibit E

**From:** "Lauria, Thomas E" <tlauria@whitecase.com>
**Date:** April 25, 2015 at 10:06:43 AM CDT
**To:** "'mkieselstein@kirkland.com'" <mkieselstein@kirkland.com>
**Subject:** Re: EFH/Privileged & Confidential settlement discussions

Marc,

Following up on our phone conversation of a couple days ago, I'd like to clarify our position with respect to the two points addressed in our email exchange below.

As to the first point--your concern about my reference to a litigation trust in my original email--let me make clear that we have no intention of in any way undermining or retrading what we view as one of the fundamental precepts of the deal we are trying to develop: it will end the litigation that would otherwise have t be resolved for these estates to exit. All estate claims and causes of action against any Debtor, the Sponsors, the holders of the TCEH First Lien Bank Debt and Notes and any other party participating in the deal, and each of their respective directors, officers, employees, and representatives will be released (as will direct creditor claims against any of the forgoing to the extent legally permissible). That said, it is important that all other unencumbered assets of the T-side debtors are preserved for the benefit of the T-side unsecured creditors. I don't think we care much about the vehicle; we just want to be in a position to deliver T-side unsecureds as much value as possible.

With respect to the second point, we are not in any way backing away from the concept that the plan would include a toggle mechanism pursuant to which there would be an alternative exit built into the plan in the event that we don't consummate the REIT transaction. Nor are we trying to shift risk to the estates that they don't otherwise bear in connection with whatever exit the plan would toggle to. All I was trying to do was flag for your consideration. a dynamic that, if not properly addressed, could result in reducing the likelihood that our deal would close.

Look forward to discussing at your convenience.

Safe travels

Tom

-------------------------
Sent from my BlackBerry Wireless Handheld

**From:** Lauria, Thomas E
**Sent:** Tuesday, April 21, 2015 01:33 PM
**To:** 'mkieselstein@kirkland.com' <mkieselstein@kirkland.com>
**Subject:** Re: EFH/Privileged & Confidential settlement discussions

Marc,

As to point 1, as I said when you raised this before, the objective is not to preserve claims against people who are participating in the plan--Ds&Os, sponsors, settling creditors, etc. Rather, the purpose is to make sure that the estates' litigation assets, if any, against third parties are preserved for the benefit of creditors. I do not understand why the debtors would be violently opposed to this (quite frankly, preservation of such assets, other than those being settled by the plan, would seem to be something generally viewed as being part of the debtor's fiduciary duties). Is there some miscommunication on this point?

[redacted]

[redacted]

These issues are entitled to your and your clients' good faith consideration.

I look forward to hearing a thoughtful response.

Tom

-------------------------
Sent from my BlackBerry Wireless Handheld

**From:** Kieselstein, Marc [mailto:mkieselstein@kirkland.com]
**Sent:** Tuesday, April 21, 2015 02:09 PM
**To:** Lauria, Thomas E
**Subject:** Re: EFH/Privileged & Confidential settlement discussions

Tom:

I'm in Europe this week and responding on the fly so please don't take this as a holistic response to your email. It isn't.

As you know, the Company has been fully supportive of a thorough exploration of the REIT structure and it and its advisors have devoted enormous time and resources to that endeavor. We are prepared to continue to do so. But there are

two points referenced in your that are untenable.

First, the notion of a litigation trust is wholly incompatible with the REIT as a holistic solution to
conclude these cases. That is the REIT's signal virtue. We've spoken of this before and I'd hoped we'd hear no more about it. I need confirmation that there will be no litigation trust.

Second, I've been clear from the very start that it is wholly unacceptable for there to be any scenario where we adopt the REIT as plan A but find ourselves back at square one if that plan cannot be consummated.

Thus, the toggle-which is nothing more than a mechanism to ensure 100 percent of the execution risk for the REIT plan is borne by the creditors seeking the Company's support for that plan.

If you have another construct that similarly apportions risk to the T unsecured creditors we are willing to hear you out but anything that shifts risk to the Company is not acceptable. If that is where this heading, we need to know that now so we can reallocate our priorities.

Apologies for being so direct but it is important that there be no room for misunderstandings or disconnects on these fundamental issues.

Regards
Marc


Marc Kieselstein, P.C.
Kirkland & Ellis LLP
300 North LaSalle Street
Chicago, IL 60654
312-862-3029
(C) 708-280-5043
marc.kieselstein@kirkland.com

On Apr 21, 2015, at 12:35 PM, "Lauria, Thomas E" <tlauria@whitecase.com> wrote:

> Marc,
>
> As I think you know, we are working toward the formulation of a plan structure incorporating the basic terms we have been discussing, namely--
>
> (1) the T-1sts would--
>
>    (a) receive the ownership interests EFCH/TCEH through a tax-free spinoff on terms that would permit a partial step-up in the basis of the T-side assets;
>
>    (b) waive any right to assert or recover on intercompany claims;
>
>    (c) waive (or assign for the benefit of the T-side unseecureds) any right to assert or collect on any deficiency claim; and
>
>    (d) receive a release from all estate claims and causes of action;
>
> (2) The T-side unsecureds (including the TCEH unsecured notes; the TCEH 2d lien debt; and the PCRB obligations) would
>
>    (a) receive the unencumbered assets of the T-side debtors;
>
>    (b) receive, in settlement and satisfaction of all T-side estate claims and causes of action against the E-side debtors (which shall be allowed in a to-be-agreed amount) and all debtor claims and causes of action against the Sponsors, (i) equity in EFH, as reorganized and converted into a REIT; and (ii) rights to purchase the remaining equity interests in EFH, pursuant to a rights offering that shall be fully backstopped by a subset of T-side unsecureds (the "Rights Offering"); and
>
>    (c) a litigation trust that would hold and prosecute and T-side claims and causes of action that are not settled and resolved under the plan; and
>
> (3) the allowed secured and unsecured claims of all E-side creditors will be paid in cash in full with the proceeds of the Rights Offering, new EFIH debt (the "New EFIH Debt") and EFIH cash on the balance sheet.
>
> We currently anticipate that the Rights Offering and the New EFIH Debt will generated net proceeds of approximately $11 billion (collectively, the "Exit Funding"). As we conduct our diligence, including in particular with respect to the steps required to convert EFH into a REIT, we will be formulating the conditions to the commitment to provide the Exit Funding. In that regard, I think we currently anticipate that one of the conditions will be receipt of all required approvals from the Texas PUC with respect to the conversion of EFH into a REIT (which requires, among other things, that Oncore transfer its non-real estate assets to a separately owned and managed propco).
>
> In our discussions to date, the Debtors have indicated that, to offset the risk that the Exit Funding is not provided, the plan should incorporate a "toggle" mechanism similar to the one we utilized in Visteon, so that an alternative transaction is approved and can be promptly consummated. We don't, as a general matter, disagree. However, I'd like you to think about a potential dilemma a component of such a structure may

produce and how we might be able to address it.

Look forward to discussing.

Thanks

Tom

\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-
Sent from my BlackBerry Wireless Handheld

==========================================================================
This email communication is confidential and is intended only for the individual(s) or entity named above and others who have been specifically authorized to receive it. If you are not the intended recipient, please do not read, copy, use or disclose the contents of this communication to others. Please notify the sender that you have received this email in error by replying to the email or by telephoning +1 212 819 8200. Please then delete the email and any copies of it. Thank you.

==========================================================================

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of Kirkland & Ellis LLP or Kirkland & Ellis International LLP. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return e-mail or by e-mail to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

========================================================================

This email communication is confidential and is intended only for the individual(s) or entity named above and others who have been specifically authorized to receive it. If you are not the intended recipient, please do not read, copy, use or disclose the contents of this communication to others. Please notify the sender that you have received this email in error by replying to the email or by telephoning +1 212 819 8200. Please then delete the email and any copies of it. Thank you.

========================================================================

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of Kirkland & Ellis LLP or Kirkland & Ellis International LLP. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return e-mail or by e-mail to postmaster@kirkland.com