

NIXON PEABODY LLP
ATTORNEYS AT LAW

NIXONPEABODY.COM
@NIXONPEABODYLLP

**Richard C. Pedone**
*Partner*
T 617-345-1305
rpedone@nixonpeabody.com

100 Summer Street
Boston, MA  02110-2131
617-345-1000

June 3, 2015

*Via Electronic Filing*
The Honorable Christopher S. Sontchi
United States Bankruptcy Court for the District of Delaware
824 North Market Street, 5th Floor
Wilmington, DE 19801

      Re:    <u>**In re Energy Future Holdings Corporation, et al., Case No. 14-10979**
**Response of EFH Indenture Trustee to Debtors' May 27, 2015 Letter**
**Seeking Protective Order in Connection with**
**Disclosure Statement Discovery**</u>

Dear Judge Sontchi:

      Nixon Peabody LLP writes on behalf of the EFH Indenture Trustee[1] in response to the letter, dated May 27, 2015 [D. I. 4606] (the "<u>May 27 Letter</u>"), pursuant to which the Debtors seek to quash all discovery propounded in connection with consideration of the Disclosure Statement.[2]

      As discussed in detail below and contrary to the Debtors' assertions, the Debtors' creditors are not just large institutional investors each represented by their own counsel.  Rather, there is at least one impaired class in the Plan comprised of small individual investors.  The Disclosure Statement must contain adequate information for these small holders.  By requesting discovery, the EFH Indenture Trustee appropriately seeks the information necessary to demonstrate to the Court why the Disclosure Statement is deficient for these and other holders and to constructively propose complete and accurate alternative disclosure on several key topics.

---

[1]      The EFH Indenture Trustee is American Stock Transfer & Trust Company, LLC, as successor trustee to The Bank of New York Mellon Trust Company, N.A. (in such capacity, the "<u>EFH Indenture Trustee</u>") under the indentures for certain notes (the "<u>EFH Notes</u>") issued by EFH Future Holdings Corp. ("<u>EFH Corp.</u>").  The combined aggregate outstanding balance due on the EFH Notes exceeds $1.9 billion, with over $700 million of that balance held by non-debtor parties.

[2]      *Disclosure Statement for the Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code* [D.I. 4143] (the "<u>Disclosure Statement</u>"). Capitalized terms used herein but not otherwise defined shall have the meanings ascribed to them in the Disclosure Statement.

The Honorable Christopher S. Sontchi
June 3, 2015
Page 2

NIXON PEABODY LLP
ATTORNEYS AT LAW

NIXONPEABODY.COM
@NIXONPEABODYLLP

The three broad topics on which the EFH Indenture Trustee seeks discovery are listed below:

1. Information necessary to assess any liquidation analysis proffered by the Debtors for EFH Corp.;

2. The facts and reasoning behind the EFH Corp. directors' change in their view on the value of the claims to be settled between EFH Corp. and TCEH; and

3. The value of the personal releases the EFH Corp. directors provided themselves with under the Plan.

**The Disclosure Statement Hearing is a Contested Matter and the Bankruptcy Rules Mandate the Availability of Discovery**

The Debtors assert that all discovery on these topics should be quashed.[3] The Bankruptcy Code affords this Court considerable discretion with regard to the determination of the scope of information ultimately included in a disclosure statement. The advisory committee's note to Bankruptcy Rule 9014 clearly states that the hearing on a disclosure statement is a contested matter. *See* FED. R. BANKR. P. 9014. The Bankruptcy Rules provide that discovery shall be available in contested matters so that parties can provide the Court with the information required for the Court to make an informed decision. *See* FED. R. BANKR. P. 9014(c).[4] The Debtors' May 27 Letter ignores this law and, extraordinarily, seeks a pronouncement that on all matters not covered by the Legacy Discovery Protocol — essentially all post-petition matters — the Debtors will be the sole arbiter of what is available to parties in connection with the Disclosure Statement and plan solicitation.

---

[3] On May 28, 2015, the EFH Indenture Trustee responded to the May 20, 2015 letter from the Debtors and on two occasions the EFH Indenture Trustee has requested a phone conference with the Debtors to narrow or resolve the discovery disputes. As of the date hereof, the Debtors have not agreed to a conference. While the EFH Indenture Trustee joined the EFH Committee's requests, the specific additional requests that the EFH Indenture Trustee served related to Disclosure Statement and solicitation issues. The topics of these requests were: II. Determination of Amount Due on Claims Filed by the EFH Indenture Trustee and Determination of Proposed Settlement on Each Claim, III. Plan Settlement, IV. Claim Classification, V. Administrative Expenses Against EFH Corp., VI. EFH Indenture Trustee, VII. Ability to Prepare a Separate Liquidation Analysis for Each Debtor, VIII. Calculation of Estimated Rejection Damages, IX. Documents Supporting Existence of any Privileged Asserted or that May be Asserted, and X. Discrepancies between Disclosure Statement and Schedules.

[4] We note that the cases cited by the Debtors in footnote 11 (*In re Marvel Entm't Grp., Inc.*, and *In re Calpine Corp.*), do not stand for the proposition they are cited for. Neither case concerns a creditor's discovery in connection with a disclosure statement or a creditor's objection to a disclosure statement; rather *In re Marvel Entm't Grp*. concerns a post-confirmation fee application of the Chapter 11 trustee and *In re Calpine* is an appeal of *Calpine's* confirmation order.

4828-8455-2484.9

The Honorable Christopher S. Sontchi
June 3, 2015
Page 3

NIXON PEABODY LLP
ATTORNEYS AT LAW

NIXONPEABODY.COM
@NIXONPEABODYLLP

While the EFH Indenture Trustee understands that the discovery process must be managed in a rational matter — discovery must be permitted to proceed so that any approved disclosure statement includes complete and accurate information. Granting the Debtors' request would affect the fundamental fairness of these proceedings and might make it impossible for the Court to make the factual findings that the Debtors seek in their proposed order approving the Disclosure Statement.[5] If parties contesting the Disclosure Statement do not have access to sufficient information to present to the Court — which under the Bankruptcy Code does not conduct its own investigation — then the validity of any Court rulings concerning the Disclosure Statement may be flawed.

Here, broad swaths of what must be included in any disclosure statement have not been subject to discovery (or any other form of disclosure) and the information required remains under the tight control of the Debtors. While the Debtors, in response to an early motion seeking discovery pursuant to Bankruptcy Rule 2004, agreed to the Legacy Discovery Protocol, that process by definition only dealt with matters that arose pre-petition. The chart below illustrates what has and what has not been produced and to whom.



---

[5] *See, e.g..,* ¶2 of the Debtors' proposed order ("The Disclosure Statement is hereby approved pursuant to section 1125 of the Bankruptcy Code as providing Holders of Claims and Interests entitled to vote on the Plan with adequate information to make an informed decision as to whether to vote to accept or reject the Plan in accordance with section1125a)(1) of the Bankruptcy Code."); ¶3. ("The Disclosure Statement (including all applicable exhibits thereto) provides Holders of Claims, Holders of Interests , and other parties in interest with sufficient notice of the injunction, exculpation and release provisions contained in Article VIII of the Plan, in satisfaction of the requirements of Bankruptcy Rule 3016(c)"), and ¶7 ("The Solicitation Packages provide Holders of Claims and Interests entitled to vote on the Plan with adequate information to make informed decisions with respect to voting on the Plan in accordance with Bankruptcy Rule 2002(b) and 3017(d) , the Bankruptcy Code, and the Local Bankruptcy Rules.").

4828-8455-2484.9

The Honorable Christopher S. Sontchi
June 3, 2015
Page 4

NIXON PEABODY LLP
ATTORNEYS AT LAW

NIXONPEABODY.COM
@NIXONPEABODYLLP

As the foregoing chart illustrates, there has only been relatively limited discovery and disclosure concerning what has occurred during the past fourteen months, and no discovery on key issues related to the current liquidation value of EFH Corp. and the reasons why the directors of EFH Corp. changed their position and abruptly decided that nearly $1 billion in value should be transferred from EFH Corp. to the "T-Side." These issues are material and should be subject to discovery and disclosure, especially as they relate to the critical issue of the directors' impartiality and any potential conflicts that may exist.

**The Debtors Mischaracterize the Audience For the Disclosure Statement.**

The EFH Indenture Trustee disagrees with the Debtors' characterization of the intended recipients of the Disclosure Statement. Contrary to the Debtors' assertions, many of the holders of EFH Notes are not "represented by sophisticated counsel and financial advisors." *Cf.* May 27 Letter, at 4. In fact, Class A5 (EFH Unexchanged Note Claims) consists nearly entirely of individuals with relatively small holdings. These holders were excluded from the Debtors' private exchange offer,[6] because they were not Qualified Institutional Buyers (as that term is defined in Rule 144A of the Securities Act), and thus, by definition under the securities law, they are among the Debtors' least sophisticated investors. Furthermore, the holders, not the EFH Indenture Trustee or any fiduciary in these cases, are the parties who are entitled to vote on any plan and the Disclosure Statement must be drafted with those holders in mind.

"Adequate information" is defined in section 1125(a) of the Bankruptcy Code as

> information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, including a discussion of the potential material Federal tax consequences of the plan to the debtor, any successor to the debtor, and *a hypothetical investor typical of the holders of claims or interests in the case, that would enable such a*

---

[6] On December 21, 2012, EFIH and EFIH Finance commenced private exchange offers to exchange up to approximately $1.3 billion in aggregate principal amount of new 10.000% Senior Secured Notes due 2020 issued by EFIH and EFIH Finance (the "EFIH 10.000% Notes") for any and all outstanding (i) 9.75% Senior Secured Notes due 2019 issued by EFH Corp., and (ii) 10.000% Senior Secured Notes due 2020 issued by EFH Corp. The exchange offers were made only in the United States to "qualified institutional buyers" (as that term is defined in Rule 144A of the Securities Act) and to certain non-U.S. persons (as that term is defined in Regulation S under the Securities Act) located outside the United States. The exchange offers concluded on January 25, 2013, with holders of over 97% of the aggregate outstanding principal amount of EFH Unexchanged Notes participating in the exchange offer. As a result, holders of less than 3% of the aggregate outstanding principal amount of EFH Unexchanged Notes did not participate, presumably because they were not eligible QIBs. It is those holders who now comprise 100% of the holders in Class A5 (EFH Unexchanged Note Claims).

4828-8455-2484.9

The Honorable Christopher S. Sontchi
June 3, 2015
Page 5

NIXON PEABODY LLP
ATTORNEYS AT LAW

NIXONPEABODY.COM
@NIXONPEABODYLLP

> *hypothetical investor of the relevant class to make an informed judgment about the plan . . .*

11 U.S.C. § 1125(a)(1) (emphasis added).  Section 1125(a)(2), in turn, defines "investor typical of holders of claims or interests of the relevant class" as an investor "having—(A) ***a claim or interest of the relevant class***; . . . (C) ***such ability to obtain such information from sources other than the disclosure required by this section as holders of claims or interests in such class generally have.***"  11 U.S.C. § 1125(a)(2)(emphasis added).

      Accordingly, the Bankruptcy Code makes clear that the Debtors have ignored two crucial points in their May 27 Letter.  First, under section 1125(a), the audience for the Disclosure Statement includes small unsophisticated holders because they were placed in their own class.  *See* Disclosure Statement, at 12-13 (describing classes of claim based of claims arising from EFH Notes).  Second, the information included in the Disclosure Statement must be sufficient so that these less sophisticated individuals can make an informed decision as to whether to vote to accept or reject the Plan in accordance with section 1125(a)(1) of the Bankruptcy Code.  The Debtors have not met that burden by providing sufficient information concerning the liquidation analysis, why the EFH directors changed their view on the value of the claims to be settled and the value of the releases and exculpation that the directors negotiated for themselves.

      Moreover, it is irrelevant that certain sophisticated "creditors already have adequate information in the record concerning the settlement through Legacy Discovery and other sources."  *See* May 27 Letter, at 9.  First, only limited disclosure has been made available concerning post-petition issues.  Second, the purpose of a disclosure statement is to "clearly provide creditors with information regarding the debtor's plan and their treatment under that plan. ***Creditors should not be required to go on a treasure hunt throughout multiple filings in order to ascertain that information***."  *In re Forest Grove, LLC*, 448 B.R. 729, 737-38 (Bankr. D.S.C. 2011) (emphasis added).  That admonition is especially relevant here since hundreds of thousands of documents have been produced in Legacy Discovery and over 4,600 entries currently appear on the Court's docket.  Finally, few of those with the right to vote are parties to the Legacy Discovery Protocol.  Many creditors that will be voting on the Plan do not have access to the Legacy Discovery, and no creditor has access to the "Highly Confidential" material.

**<u>Discovery Concerning the Liquidation Analysis Is Required.</u>**

      The Debtors object to requests 6-8 and 20-21 in the EFH Indenture Trustee document request which seek information regarding the Debtors' potential collective liquidation analysis and the Debtors' election not to prepare a separate liquidation analysis for each Debtor.  Contrary to the Debtors' apparent position, an accurate and tested liquidation analysis is required for each Debtor.  Multiple courts have stated that "[d]isclosure statements are required to contain liquidation analyses that enable creditors to make their own judgment as to whether a

The Honorable Christopher S. Sontchi
June 3, 2015
Page 6

NIXON PEABODY LLP
ATTORNEYS AT LAW

NIXONPEABODY.COM
@NIXONPEABODYLLP

plan is in their best interests and to vote and object to a plan if they so desire." *In re Crowthers McCall Pattern, Inc.,* 120 B.R. 279, 300-01 (Bankr. S.D.N.Y. 1990); *see also* COLLIERS ON BANKRUPTCY ¶ 1125.02[2].

>   Exhibit G to the Disclosure Statement states that:

>> The Liquidation Analysis for Energy Future Holdings, Inc. ("EFH Corp."), Energy Future Intermediate Holdings Company LLC ("EFIH"), and certain other Debtors and non-Debtor Affiliates *has not been included at this time* because of the recovery amounts are predicated on the valuation of EFIH's indirect ownership of approximately 80% of Oncor, which will be determined pursuant to the auction conducted in accordance with the Bidding Procedures Order. The Liquidation Analysis will be updated to include all of the Debtors once the effect of such valuation when determined.

*See* Exhibit G to Disclosure Statement (emphasis added). The Debtors seek to justify their failure to include a liquidation analysis on the basis that the Oncor sale process has not yet concluded. The absence of a liquidation analysis, however, leaves creditors who have not had the benefit of discovery, completely in the dark. At a minimum, the Debtors could have included an analysis with all other required information (*e.g.*, projected recovery on D&O claims, recovery from equity, estimated priority and administrative claims, etc.) that would be included in a typical liquidation analysis. In these circumstances, where no liquidation analysis was included, discovery is especially appropriate so that creditors can prepare to evaluate the liquidation analysis which will be filed at the last minute.[7]

---

[7] *See, e.g.*, COLLIERS ON BANKRUPTCY P 1125.02[2], which recommends that disclosure statements for medium to large reorganizations include "(1) the circumstances that gave rise to the filing of the chapter 11 petition; (2) a complete description of the available assets and their value; (3) the anticipated future of the debtor; (4) the source of the information provided in the disclosure statement; (5) a disclaimer, which typically indicates that no statements or information concerning the debtor or its assets or securities are authorized, other than those set forth in the disclosure statement; (6) the condition and performance of the debtor while in chapter 11; (7) information regarding claims against the estate; (8) *a liquidation analysis setting forth the estimated return that creditors would receive under chapter 7*; (9) the accounting and valuation methods used to produce the financial information in the disclosure statement; (10) information regarding the future management of the debtor, including the amount of compensation to be paid to any insiders, directors, and/or officers of the debtor; (11) a summary of the plan of reorganization; (12) an estimate of all administrative expenses, including attorney's fees and accountant's fees; (13) the collectibility of any accounts receivable; (14) any financial information, valuations or pro forma projections that would be relevant to creditors' determinations of whether to accept or reject the plan; (15) information relevant to the risks being taken by the creditors and interest holders; (16) the actual or projected value that can be obtained from avoidable transfers; (17) the existence, likelihood and possible success of nonbankruptcy litigation; (18) the tax consequences of the plan; and (19) the relationship of the debtor with affiliates."

4828-8455-2484.9

The Honorable Christopher S. Sontchi
June 3, 2015
Page 7

NIXON PEABODY LLP
ATTORNEYS AT LAW

NIXONPEABODY.COM
@NIXONPEABODYLLP

**Discovery Related to Why the EFH Directors Changed Their View on the Value of the Alleged Claims Against EFH and the Value of the Releases That They Negotiated for Themselves Should be Allowed to Proceed**

The keystone of the Plan is the so-called "Disinterested Director Settlement" which is summarized on page 10 of the Disclosure Statement.  As a preliminary matter, discovery should be allowed on conflicts and the directors' self-interest so that the court can rule on whether or not the Disclosure Statement is misleading in every instance that any released party is called "disinterested."  Moreover, the use of that term is especially troublesome given the fact that it is defined in the Bankruptcy Code.  *See* 11 U.S.C. § 101(14).  The Disclosure Statement fails to adequately disclose that the contemplated potential settlement approved by the allegedly disinterested directors of the Debtors provides those parties labeled "disinterested" with releases.  *See* Disclosure Statement, at p. 114-115, and Plan, at Article VIII.C & D.  It is, therefore, apparent that the directors and officers who approved the Disinterested Director Settlement are in fact on both sides of the transaction.  Specifically, they approved a settlement under which they are receiving releases and exculpation, including for post-petition conduct related to an extraordinary reversal of position on the merits of the "T-Side" claims, and this reversal has not been subject to discovery.

Currently the Disclosure Statement contains only a cursory statement that the numerous transactions "could be the subject of claims for breach of fiduciary duty against the Debtors' directors and managers."  *See* Disclosure Statement, at p. 113.  Nowhere in the Disclosure Statement does EFH Corp. explain to creditors the reasons for granting the releases and exculpation or seek to ascribe a value to these claims.  The reason for this extraordinary reversal needs to be explained in the Disclosure Statement and the basis for any statements should be subject to discovery.

**Whether or Not a Settlement Exists is a Material Fact Subject to Discovery and Disclosure**

Discovery is also needed so that those creditors entitled to vote can understand the degree, if any, to which a settlement even exists.  Currently the Disclosure Statement fails to adequately inform creditors whether the "Disinterested Director Settlement" is binding on any party, including the Debtors.  To date, no signed document has been produced indicating that any party is bound by the proposed settlement.  The Statute of Frauds in each possible relevant jurisdiction requires that a settlement of the sort proposed be in signed writing.  In these circumstances, where the settlement involves value in excess of $1 billion, discovery into the potentially evolving terms of, and even existence of, the settlement is material and appropriate.

**Conclusion**

The EFH Indenture Trustee submits that each requested category of documents contained in the EFH Indenture Trustee document request relates to the accuracy and

4828-8455-2484.9

The Honorable Christopher S. Sontchi
June 3, 2015
Page 8

NIXON PEABODY LLP
ATTORNEYS AT LAW

NIXONPEABODY.COM
@NIXONPEABODYLLP

completeness of factual statements contained in, or required to be included in, in the Disclosure Statement. The Debtors' request for a blanket protective order should be denied.

In addition, the EFH Indenture Trustee requests that the Debtors comply with the procedures set forth in the Rule 34(B) and (C) of Federal Rules of Civil Procedure, made applicable by Bankruptcy Rule 7034, and for each request contained in the EFH Indenture Trustee document request, each Debtor state that inspection and related activities will be permitted as requested or state an objection to the specific request and include the reasons. The EFH Indenture Trustee submits that such an approach would serve to narrow the issues in dispute.

Finally, if the Court decides to enter an order denying or limiting discovery concerning the Disclosure Statement, the EFH Indenture Trustee requests that such an order also preclude any Debtor from introducing any evidence at the hearing on the Disclosure Statement. Not only would such an order address the Due Process and fairness issues related to the Debtors' extraordinary request that all discovery be quashed, but it would force the Debtors to evaluate the extraordinary nature of their request and/or concede the obvious – the filed plan is an expensive place holder, it can't be confirmed, and a new plan and disclosure statement are required.

Sincerely,

*/s/ Richard C. Pedone*

Richard C. Pedone
Partner


cc: Erica Goodstein
cc: Christopher P. Simon, Esq.

4828-8455-2484.9