# SULLIVAN & CROMWELL LLP

TELEPHONE: 1-212-558-4000
FACSIMILE: 1-212-558-3588

WWW.SULLCROM.COM

*125 Broad Street*
*New York, NY 10004-2498*
_____

LOS ANGELES • PALO ALTO • WASHINGTON, D.C.

FRANKFURT • LONDON • PARIS

BEIJING • HONG KONG • TOKYO

MELBOURNE • SYDNEY

June 3, 2015

<u>By ECF and Hand Delivery</u>

Hon. Christopher S. Sontchi,
    United States Bankruptcy Court for the District of Delaware,
        824 North Market Street, 5th Floor,
          Wilmington, DE  19801.

        Re:    *In re: Energy Future Holdings Corporation, et al.*,
                 <u>Case No. 14-10979 (Bankr. D. Del.)</u>

Dear Judge Sontchi:

        We write on behalf of the official committee of unsecured creditors (the "<u>EFH Committee</u>") of Energy Future Holdings Corporation ("<u>EFH</u>"), Energy Future Intermediate Holding Company LLC ("<u>EFIH</u>"), EFIH Finance Inc. ("<u>EFIH Finance</u>"), and EECI, Inc. ("<u>EECI</u>"), in response to the letter motion filed by the Debtors, dated May 27, 2015 (the "<u>May 27 Letter</u>"), seeking a protective order in connection with the discovery served by the EFH Committee and other parties relating to the Debtors' Disclosure Statement and Disclosure Statement Motion.[1]

        The EFH Committee is mindful that the only matter currently before the Court is approval of the Disclosure Statement and the other relief requested by the Disclosure Statement Motion, and has no intention of transforming the Disclosure Statement hearing into a "mini-trial on Plan confirmation" as the Debtors speculate in their May 27 Letter.  Moreover, the EFH Committee understands the Court's directive that the parties avoid unnecessary litigation.

        Here, however, it is the Debtors who have necessitated the Court's intervention by drawing a line in the sand and announcing that "discovery is not necessary to assess the adequacy of the Disclosure Statement."  (May 27 Letter at 4.) There is no basis for such an absolute rejection of all discovery.  The Debtors are seeking approval of a Disclosure Statement, despite the absence of creditor support for the Plan.

---

[1]    Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to them in the *EFH Official Committee First Disclosure Statement Requests to Debtors*, dated May 18, 2015, attached hereto as Exhibit A (the "<u>EFH Committee Document Requests</u>").

Honorable Christopher S. Sontchi                                                    -2-

That is their choice.  Having made the choice to proceed now, the Debtors should not be permitted to avoid providing reasonable discovery that will permit the EFH Committee to ensure that any Disclosure Statement contains adequate disclosure for creditors as required by section 1125 of the Bankruptcy Code.  The Debtors' solution to their inadequate disclosure is for creditors to simply propose alternative or additional disclosure language.  But before meaningful additional disclosure can be proposed, the EFH Committee should be given the opportunity to obtain probative evidence with respect to material facts that are in the sole possession of the Debtors and the Disinterested Directors.

Discovery is permissible in a contested matter such as the Disclosure Statement Motion (*see* Fed. R. Bankr. Pro. 9014(c)), and there is nothing unusual about discovery in connection with approval of a disclosure statement.[2]  The Debtors' position is, in fact, inconsistent with procedures set forth in this Court's Scheduling Order[3], which contemplate meaningful discovery in connection with the Disclosure Statement Motion, including document discovery, depositions and third-party discovery.  (Scheduling Order ¶¶ 8, 27, 33.)  In rejecting any and all discovery, the Debtors and the Disinterested Directors declined to provide specific individual objections and ignored an invitation to meet and confer about the relevance, scope or potential for narrowing any particular discovery requests.  They instead issued an ultimatum to withdraw all pending discovery.  When that ultimatum was rejected, the Debtors and the Disinterested Directors immediately asked the Court to intervene without ever speaking to counsel for the EFH Committee.

The remarkable position of the Debtors is that ***none*** of the discovery sought by the EFH Committee (nor any other party) is relevant to objections to the Disclosure Statement Motion.  That position is untenable.

*First*, the Debtors argue that discovery is not necessary to assess the adequacy of the Disclosure Statement because all "creditors seeking discovery are represented by sophisticated counsel and financial advisors" with access to certain

---

[2]     Courts often permit discovery in conjunction with the disclosure statement approval process.  *See, e.g.*, *In re Vega*, No. 09-08785 BKT, 2010 WL 3282656, at *3 (Bankr. D.P.R. Aug. 17, 2010) (allowing limited discovery in connection with a creditor's objection to the disclosure statement); *In re 3DFX Interactive, Inc.*, No. 02-55795 JRG, 2006 WL 2010786, at *6 (Bankr. N.D. Cal. June 29, 2006) ("[T]here needs to be additional discovery and disclosure before this court can determine that any disclosure statement accompanying the Creditors' Committee's proposed plan has adequate information.").  Contrary to the Debtors' assumptions (May 27 Letter at 10-11), it will be determined at a later date whether evidence will need to be presented at the Disclosure Statement hearing.

[3]     *Order (A) Scheduling Certain Hearing Dates and Deadlines, (B) Establishing Certain Protocols in Connection with the Approval of Debtors' Disclosure Statement, and (C) Establishing the Terms Governing Mediation* [D.I. 4497] (the "Scheduling Order").

Honorable Christopher S. Sontchi                                                    -3-

discovery information.[4]  (May 27 Letter at 4.)  This argument ignores that the purpose of the Disclosure Statement is to provide *all* creditors—including small and less sophisticated creditors—adequate information to make an informed judgment about the Plan.  The EFH Committee, with fiduciary duties to all creditors of the E-silo Debtors, seeks discovery targeting material information that is readily known to the Debtors but not currently available to the EFH Committee or its constituents.  This information will permit the EFH Committee to both test the accuracy of the Disclosure Statement and to supplement the Disclosure Statement to provide all creditors adequate information about the Plan.[5]

        *Second*, the Debtors assert that discovery is not necessary because "the Plan in this case is *not* patently unconfirmable."  (May 27 Letter at 10 n.25 (emphasis in original).)  The EFH Committee disagrees with the Debtors' unqualified statement.  As of now, the distributable value to satisfy claims against EFH is unknown, and we will not know whether unsecured claims against EFH and EFIH are impaired until the Debtors file a motion seeking approval of a stalking horse bidder for Oncor Distribution Holdings Company LLC, which is expected to occur on or about June 15, 2015 (only two weeks before objections to the Disclosure Statement Motion are due).  If EFH creditors are impaired—as the Plan currently assumes—then the EFH Committee believes the Plan will be patently unconfirmable for several reasons addressed by the EFH Committee's discovery requests, including by (i) classifying Impaired EFH General Unsecured Claims into six different classes for the purpose of obtaining the acceptance of an impaired class; (ii) including a Plan waterfall that provides a distribution and other value to EFH equity holders when EFH creditors are impaired, in light of the lack of any indication that EFH creditors will accept the Plan; (iii) providing releases of claims against sponsors and insiders for no consideration; (iv) potential violation of the best interests of creditors test at EFH; and (v) a payment by EFH in order to purchase a release by T-silo Debtors and creditors of claims against the sponsors, directors and officers.  *See* 11 U.S.C. § 1129(b).  The existence of these important issues is relevant because even the Debtors acknowledge more discovery is appropriate when there is a question as to whether a proposed plan of reorganization is patently unconfirmable.  (May 27 Letter at 9, *citing In re Am. Capital Equip., LLC*, 688 F.3d 145 (3d Cir. 2012).)

---

[4]    Much of the information provided by the Debtors in Legacy Discovery and otherwise has been designated as "Highly Confidential Material," meaning only professionals—but not the EFH Committee members—are permitted to review it.

[5]    *See In re Rancher Energy Corp.*, No. 09-32943-MER, 2010 WL 5587336, at *6 (Bankr. D. Colo. Dec. 29, 2010) ("Certainly, there is not sufficient information [in the disclosure statement] that would enable a hypothetical investor similar to a trade creditor to make an informed decision.  Creditors with relatively small claims should not be expected to invest time and fees disproportionate to their claims to figure out if they are being taken advantage of.").

Honorable Christopher S. Sontchi                                                    -4-

   *Third*, and most important, the Debtors and the Disinterested Directors wrongly conclude that the EFH Committee's discovery relates only to Plan confirmation issues and therefore is not relevant to the Disclosure Statement Motion.  (May 27 Letter at 2-3.)  Neither the Debtors nor the Disinterested Directors seriously contend that the discovery sought is unduly burdensome or unavailable—their opposition is based on relevance.  But as explained herein, the limited discovery sought by the EFH Committee is relevant to the Disclosure Statement Motion.  Without that discovery, the EFH Committee will be hamstrung in its efforts to evaluate the adequacy of the Disclosure Statement or to supplement the Disclosure Statement to provide creditors with necessary information about the Plan.  The wholesale refusal to provide any discovery is particularly egregious because the Plan incorporates as its cornerstone the inter-debtor Settlement that was negotiated by conflicted insiders, counseling that a heightened amount of disclosure should be provided to creditors to enable them to make an informed decision about the Plan.

   The EFH Committee's discovery is not nearly as broad as the Debtors suggest.  And we remain willing to discuss with the Debtors and the Disinterested Directors their specific concerns and to narrow the EFH Committee's discovery requests as appropriate.  To date, there has been no interest on the part of the Debtors or the Disinterested Directors to meet and confer, which is how discovery disputes are supposed to be resolved in the first instance.

   The EFH Committee served the EFH Committee Document Requests, seeking documents relating to a set of topics for which additional information is required to assess the adequacy of the Debtors' disclosure and the substance of additional disclosure to be provided to creditors about the Plan.  In short, information sought on these topics is highly relevant.  In the interests of narrowing the scope of the dispute, the most critical discovery information necessary for the EFH Committee's objection is:

  1)  **Basis for the Disinterested Directors' recommendation to creditors to accept the inter-debtor Settlement**, including the understanding of the Disinterested Directors as to the nature of the claims being settled, whether the material information relied upon by the Disinterested Directors is disclosed in the Disclosure Statement, and the relevance of Federal tax matters as a basis for such settlement (EFH Committee Document Requests (the "<u>Requests</u>") 38-44, 47-50);

  2)  **Compliance with conflicts of interest procedures and the value of the releases provided to the Released Parties**, including (i) the asserted independence of the "Disinterested Directors" recommending the inter-debtor Settlement to creditors (Requests 23-25); (ii) which elements of the joint Plan described in the Disclosure Statement were considered actual conflict matters (Request 22); (iii) whether the

Disinterested Directors regarded EFH as solvent or insolvent in assessing their fiduciary duties (Request 38), (iv) whether the Disinterested Directors concluded that fair value was received for those releases, exculpation and other value given to insiders, and whether those provisions are integral to the Settlement and the Plan (Requests 26-28); and (v) the investigation conducted by the Disinterested Directors, if any, into the claims against sponsors, officers, directors and other insiders to be released in the Plan (Requests 30-31);

3) **Federal tax matters**, specifically the accuracy and completeness of the summary of Federal tax matters in the Disclosure Statement, why the Debtors believe that the TCEH Tax Free Spin-Off (as defined in the Disclosure Statement) is necessary, and whether Federal tax matters are being considered an actual conflict matter by the Disinterested Directors (Requests 3-11); and

4) **Liquidation analysis for EFH** for the purposes of disclosing whether the plan satisfies the best interests of creditors test with respect to unsecured creditors of EFH (Requests 12-13).

The Scheduling Order required that all discovery, including deposition notices, be served on the day the order was entered, or such discovery would be precluded.  (Scheduling Order ¶ 8.b.)  The EFH Committee therefore also served a Rule 30(b)(6) deposition notice directed to the Debtors to facilitate further exploration of these topics, as necessary.

Out of an abundance of caution, the EFH Committee served document subpoenas [D.I. 4505-4507, 4509] on the Disinterested Directors to ensure that relevant information relating to the recommendation to creditors of the inter-debtor Settlement and conflicts matters that is in the possession of only the Disinterested Directors or their advisors, but not the Debtors, is provided.  The EFH Committee was concerned that the Debtors would take the position that they lacked the relevant information.  Again, given that neither the Debtors nor the Disinterested Directors have engaged with the EFH Committee, their position on these matters remains unknown.

Finally, the EFH Committee seeks depositions of the Disinterested Directors, who possess critical information relating to the adequacy of disclosure with respect to the inter-debtor Settlement and conflicts issues.  These subjects comprise the core of deficiencies in the Disclosure Statement, and a significant portion of the EFH Committee's objection.  The Debtors do not argue the Disinterested Directors lack knowledge, but rather assert no depositions are necessary at this time.  We respectfully disagree.

Honorable Christopher S. Sontchi                                                    -6-

   This requested discovery will provide information necessary for the EFH Committee to test the adequacy of the Debtors' disclosures and to provide additional disclosure as necessary.  Contrary to the Debtors' assertions (May 27 Letter at 4-5, 9), the Court has not predetermined that each of the subjects contained in the EFH Committee Document Requests is unrelated to the Disclosure Statement Motion or that no discovery from the Disinterested Directors is appropriate.

   The EFH Committee respectfully requests that the Court deny the request of the Debtors and the Disinterested Directors for a protective order, and direct them to promptly meet and confer regarding the discovery sought by the EFH Committee.

   We are available to further address these issues if the Court should so request.

          Respectfully submitted,

          /s/ Brian D. Glueckstein

          Brian D. Glueckstein

# EXHIBIT A

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| Energy Future Holdings Corp., et al., | : | Case No. 14-10979 (CSS) |
| | : | |
| Debtors. | : | (Jointly Administered) |
| | : | |
| | : | |
| | : | |

**EFH OFFICIAL COMMITTEE FIRST DISCLOSURE STATEMENT**
**REQUESTS TO DEBTORS**

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, made applicable to this proceeding by Rules 9014, 7026, and 7034 of the Federal Rules of Bankruptcy Procedure, and the *Order (A) Scheduling Certain Hearing Dates and Deadlines, (B) Establishing Certain Protocols in Connection with the Approval of the Debtors' Disclosure Statement, and (C)Establishing the Terms Governing Mediation* (the "Scheduling Order") [D.I. 4497], the EFH Committee, by and through its undersigned counsel, hereby requests that the Debtors produce all Documents described below in their possession, custody, or control, including in the possession, custody, or control of any Affiliates of any of the Debtors, in accordance with the definitions and instructions set forth below.

**DEFINITIONS**

1.    "Affiliate" of any specified Person shall mean any other Person that directly, or indirectly, through one or more intermediaries, controls, is controlled by, or is under common control with, the Person specified.

2.    "Amended EFH Schedules" shall mean the *Notice of Amendments to Schedules of Assets and Liabilities for Debtor Energy Future Holdings Corp.* [D.I. 3586].

3.      "AMT Credit Claim" shall mean TCEH's alleged Claim against EFH for the purported elimination of certain alternative minimum tax credits and other adjustments for taxable year 2006.

4.      "Asbestos Claim" shall mean any Claim that has been or may be asserted against any Debtor arising from or relating to exposure by any Person to any asbestos or asbestos-containing products.  The term includes, but is not limited to, (a) Claims made directly against a Debtor by, on behalf, or as a result of relationships with individuals who have allegedly suffered bodily injury, disease or death caused by exposure to asbestos or asbestos-containing products, and (b) Claims by Persons who allege entitlement to indemnification from a Debtor for Claims made against such Persons by, on behalf, or as a result of relationships with individuals who have allegedly suffered bodily injury, disease or death caused by exposure to asbestos or asbestos-containing products.

5.      "Bankruptcy Code" shall mean Title 11 of the United States Code, and all provisions thereof.

6.      "Chapter 11 Cases" shall mean the Chapter 11 cases, commenced by the Debtors in the United States Bankruptcy Court for the District of Delaware on April 29, 2014, and jointly administered as case number 14-10979.

7.      "Claim" shall mean any claim against any Debtor as defined in Section 101(5) of the Bankruptcy Code.

8.      "Communication" shall mean every manner or means of disclosure, transfer, or exchange of information, including, but not limited to, any of the following:  (a) any written letter, memorandum, or other Document of any kind by mail, courier, other delivery services, telecopy, facsimile, telegraph, electronic mail, voicemail, or any other means; (b) any telephone

call, whether or not such call was by chance or prearranged, formal or informal; and (c) any conversation or meeting between two or more persons, whether or not such contact was by chance or prearranged, formal or informal.

9.     "Debtors" shall mean, collectively, EFH Corp. and its affiliated entities, as debtors-in-possession, as applicable, which filed voluntary Chapter 11 petitions under the Bankruptcy Code commencing these Chapter 11 Cases, and any of their direct or indirect subsidiaries, Affiliates, divisions, subdivisions, departments, predecessors, successors, partners, principals, officers, directors, attorneys, accountants, agents, employees, representatives, and other persons acting on its behalf, including, but not limited to, K&E, Sidley, Evercore, Filsinger, and Alvarez & Marsal North America, LLC.

10.     "Disclosure Statement" shall mean the *Disclosure Statement for the Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code* [D.I. 4143], as it may be amended.

11.     "Disclosure Statement Motion" shall mean the *Motion of Energy Future Holdings Corp., et al. for Entry of an Order (A) Approving the Disclosure Statement, (B) Establishing the Voting Record Date, Voting Deadline, and Other Dates, (C) Approving Procedures for Soliciting, Receiving, and Tabulating Votes on the Plan and for Filing Objections to the Plan, and (D) Approving the Manner and Forms of Notice and Other Related Documents* [D.I. 4144], as it may be amended.

12.     "Disinterested Directors" shall mean, collectively, the EFIH Independent Manager, the EFH Disinterested Directors, and the TCEH Disinterested Manager.

13.     "Document" or "Documents" shall have the meaning prescribed by Rule 7034 of the Federal Rules of Bankruptcy Procedure, including, without limitation, any tangible thing

upon which any expression, Communication or representation has been recorded by any means, and includes, but is not limited to, all electronically stored information, Communications, sworn statements, deposition transcripts, affidavits, recordings, photographs, computer data, electronic mail, handwritten notations, correspondence, memoranda, notes, financial calculations, calendars, appointment books, and all other writings and recordings of every kind that are in your actual or constructive possession, custody, or control.

14.    "EBITDA" shall mean earnings before interest, taxes, depreciation, and amortization.

15.    "EECI" shall mean Enserch Engineering and Construction, Inc., its predecessor entities, all of its current and former direct or indirect subsidiaries, including Ebasco Services, Inc., and all of its or their respective current or former directors, officers, employees, agents, attorneys, advisors, and representatives.

16.    "EFH" or "EFH Corp." shall mean Energy Future Holdings Corporation, its predecessor entities, all of its current and former direct or indirect subsidiaries, and all of its or their respective current or former directors, officers, employees, agents, attorneys, advisors, and representatives.

17.    "EFH Committee" shall mean the Official Committee of Unsecured Creditors of EFH, EFIH, EFIH Finance, Inc., and EECI.

18.    "EFH Disinterested Directors" shall refer to Donald L. Evans and Billie I. Williamson, and any consultants, accountants, attorneys, financial advisors, and any other person currently or formerly acting or purporting to act on their behalf, including, but not limited to, Proskauer Rose LLP and Solic Capital, which were retained under the supervision of Mr. Evans

and Ms. Williamson to render professional services with respect to Independent Matters, as that term is used in the Protocol for Certain Case Matters.

19.    "EFH Schedules" shall mean EFH's *Schedules of Assets and Liabilities* [D.I. 1237], as amended.

20.    "EFH Statement" shall mean the *Statement of the Disinterested Directors of Debtor Energy Future Holdings Corp. Regarding Proposed Settlement of Conflict Matters as Part of Proposed Plan of Reorganization* [D.I. 4147].

21.    "EFIH" shall mean Energy Future Intermediate Holding Company LLC, its predecessor entities, all of its current and former direct or indirect subsidiaries, and all of its or their respective current or former directors, officers, employees, agents, attorneys, advisors, and representatives.

22.    "EFIH Independent Manager" shall refer to Mr. Charles H. Cremens and any consultants, accountants, attorneys, financial advisors, and any other person currently or formerly acting or purporting to act on his behalf, including, but not limited to, Cravath, Swaine & Moore LLP and Goldin Associates, LLC, which were retained under the supervision of Mr. Cremens to render professional services with respect to Independent Matters, as that term is used in the Protocol for Certain Case Matters.

23.    "EFIH Statement" shall mean *Energy Future Intermediate Holdings Company LLC's Statement in Support of Intercompany Settlement in the Plan* [D.I. 4146].

24.    "Evercore" shall mean Evercore Group L.L.C. and/or all of its current and former Affiliates, parents, direct or indirect subsidiaries, members, officers, directors, representatives, employees, agents, consultants, accountants, attorneys, financial advisors, predecessors,

successors, assigns, and any other person currently or formerly acting or purporting to act on their behalf for any purpose whatsoever.

25.    "Filsinger" shall mean Filsinger Energy Partners and/or all of its current and former Affiliates, parents, direct or indirect subsidiaries, members, officers, directors, representatives, employees, agents, consultants, accountants, attorneys, financial advisors, predecessors, successors, assigns, and any other person currently or formerly acting or purporting to act on their behalf for any purpose whatsoever.

26.    "Insiders" shall mean insiders as defined in Section 101(31) of the Bankruptcy Code.

27.    "IRS" shall mean the Internal Revenue Service and each of its employees and agents.

28.    "K&E" shall mean Kirkland & Ellis LLP and/or all of its current and former partners, representatives, employees, agents, consultants, accountants, predecessors, successors, assigns, and any other person currently or formerly acting or purporting to act on their behalf for any purpose whatsoever.

29.    "NOL" shall mean "net operating loss" as used in the Internal Revenue Code.

30.    "NOL Claim" shall mean TCEH's alleged Claim against EFH for the purported use of NOLs for taxable years 2006 through 2012.

31.    "Oncor" shall mean Oncor Electric Holdings Company LLC and Oncor Electric Delivery Company LLC, which are owned directly and indirectly, respectively, by EFIH, their predecessor entities, all of their current and former direct or indirect subsidiaries, and all of their respective current or former directors, officers, employees, agents, attorneys, advisors, and representatives.

-6-

32.     "Person" or "persons" shall mean all natural persons, corporations, partnerships or other business associations, and all other legal or governmental entities or associations.

33.     "Petition Date" shall mean April 29, 2014.

34.     "Plan" shall mean the *Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code* [D.I. 4142], as it may be amended.

35.     "Prepetition Intercompany Claims" shall mean any Claims, causes of action, or disputes among EFH, EFIH, and TCEH arising before the Petition Date, including avoidance actions under sections 544, 547, and 548 of the Bankruptcy Code.

36.     "Protocol for Certain Case Matters" shall mean the *Stipulation and Agreed Order Regarding a Protocol for Certain Case Matters* [D.I. 2051], as amended.

37.     "Schedules" shall mean, collectively, the EFH Schedules and the TCEH Schedules.

38.     "Settlement" shall mean the proposal in the Plan to settle any Prepetition Intercompany Claims, including allowance of the TCEH Settlement Claim (as defined in the Plan).

39.     "Sidley" shall mean Sidley Austin LLP and/or all of its current and former partners, representatives, employees, agents, consultants, accountants, predecessors, successors, assigns, and any other person currently or formerly acting or purporting to act on their behalf for any purpose whatsoever.

40.     "Sponsors" shall mean Kohlberg Kravis Roberts & Co. LP, TPG Global, LLC, and/or GS Capital Partners and/or all of their current and former Affiliates, parents, direct or indirect subsidiaries, members, officers, directors, representatives, employees, agents, consultants, accountants, attorneys, financial advisors, predecessors, successors, assigns, and any

other person currently or formerly acting or purporting to act on their behalf for any purpose whatsoever.

41.    "TCEH" shall mean Texas Competitive Electric Holdings Company LLC, its predecessor entities, all of its current and former direct or indirect subsidiaries, and all of its or their respective current or former directors, officers, employees, agents, attorneys, advisors, and representatives.

42.    "TCEH Disinterested Manager" shall refer to Mr. Hugh Sawyer and any consultants, accountants, attorneys, financial advisors, and any other person currently or formerly acting or purporting to act on his behalf, including, but not limited to, Munger, Tolles & Olson LLP and Greenhill & Co., Inc., which were retained under the supervision of Mr. Sawyer to render professional services with respect to Independent Matters, as that term is used in the Protocol for Certain Case Matters.

43.    "TCEH Schedules" shall mean TCEH's *Schedules of Assets and Liabilities* [D.I. 1294], as amended.

44.    "TCEH Statement" shall mean *Energy Future Competitive Holdings Company LLC and Texas Competitive Electric Holdings Company LLC's Statement in Support of Intercompany Settlement in the Plan* [D.I. 4145].

45.    "Withdrawal of the Amended EFH Schedules" shall mean the *Notice of Withdrawal of Notice of Amendments to Schedules of Assets and Liabilities for Debtor Energy Future Holdings Corp.* [D.I. 3624].

46.    "You" or "your" shall refer to any person to whom these Document requests have been addressed and all of their current and former affiliates, parents, direct or indirect subsidiaries, members, officers, directors, representatives, employees, agents, consultants,

accountants, attorneys, financial advisors, predecessors, successors, assigns, and any other person currently or formerly acting or purporting to act on the Person's behalf for any purpose whatsoever.

47.     The terms "relating to" and "concerning" each mean, in addition to their usual and customary meanings, concerning, relating to, discussing, mentioning, evidencing, embodying, constituting, effecting, referring to, assessing, recording, analyzing, describing, evaluating, memorializing, about, regarding, touching upon, listing, or reflecting the matter specified in the request.

## INSTRUCTIONS

1.     Each request for Documents requires the production of all Documents described herein, in your possession, custody or control, including, but not limited to, those Documents in the custody or possession of current or former members, direct or indirect subsidiaries, parents, Affiliates, divisions, predecessors, successors, officers, directors, agents, employees, representatives, consultants, or investigators, or your attorneys or their agents, employees, representatives, or investigators.

2.     All Documents are to be produced as they are kept in the usual course of business or organized and labeled to correspond to the specific requests set forth below.

3.     In responding to each request, if any Document requested has been amended (including by an amendment and restatement), or any waiver, consent, supplement, forbearance or other similar instrument has been entered into in connection with any such Document, furnish each such amendment, amendment and restatement, waiver, consent, supplement, forbearance, or other similar instrument.

4.     In responding to each such request, furnish all exhibits, schedules, annexes, appendices, or any other ancillary Documents related to each Document produced.

5.      All drafts and non-identical copies of responsive Documents must be produced. Any comment, notation, or other marking shall be sufficient to distinguish Documents that are otherwise similar in appearance and to make them separate Documents for purposes of your response.  Likewise, any draft, preliminary form, or superseded version of any Document is also to be considered in a separate Document.

6.      To the extent applicable, furnish executed versions of each Document requested.

7.      The file folder or other container in which a Document is kept is deemed to be an integral part of the Document and shall be produced with the Document.

8.      Each paragraph and subparagraph hereof and the definitions herein are to be construed independently, and not by or with reference to any paragraph or subparagraph or definition herein for purposes of limiting the scope of any particular request or the subject matter thereof.

9.      If any requested Document or thing cannot be produced in full, produce it to the extent possible, indicating what is being withheld and the reason it is being withheld.

10.      If you object to any part of a Document request, state the specific basis for the objection and produce Documents responsive to all parts of the request to which you do not object.

11.      These Document requests shall be deemed continuing so as to require supplementation if you or your attorneys or agents become aware of, receive or generate additional Documents responsive to these requests after the time of the initial response.

12.      If the Debtors have produced any requested Document in connection with any prior request and that Document exists in the Data Repository (as that term is used in the *Order Establishing Discovery Procedures in Connection with Legacy Discovery of Energy Future*

-10-

*Holdings Corporation, its Affiliates, and Certain Third Parties and Other Related Matters* [D.I. 1832]), identify the production number and the date of production.

13.    All Documents shall be produced in accordance with the E-Discovery Protocol attached as Exhibit 2 to the Scheduling Order.

14.    The use of the singular form of any word shall include the plural form, and the plural form shall include the singular form.

15.    The use of the present tense of any word includes the past tense, the use of the past tense of any word shall include the present tense, and the use of any verb in any tense shall be construed as including the use of that verb in all other tenses.

16.    "Any" or "each" should be understood to include and encompass "all;" "or" should be understood to include and encompass "and;" and "and" should be understood to include and encompass "or."

## DOCUMENT REQUESTS

## DISCLOSURE ON FEDERAL TAX MATTERS

1.    All Communications with the IRS concerning any tax matters relating to the Plan or described in the Disclosure Statement.

2.    All Communications with the IRS concerning any valuation or proposed valuation of TCEH, using any valuation methodology.

3.    All Documents and Communications discussing or otherwise relating to any analyses or considerations concerning either a "taxable deconsolidation or tax-free spin-off of TCEH," as described in the Disclosure Statement.

4.    All Documents and Communications relating to the feasibility or risks associated with the proposed "tax-free spin-off of TCEH," as described in the Disclosure Statement.

5.      All Documents relating to any actual or proposed valuations of TCEH that were used in connection with any analysis of the proposed "tax-free spin-off of TCEH," as described in the Disclosure Statement.

6.      All Documents relating to, supporting, or contradicting the statement in the Disclosure Statement that under the "tax-free spin-off . . . the tax attributes of the EFH Group will be substantially used to provide Reorganized TCEH with a partial step-up in tax basis in certain of its assets, valued at approximately $1.0 billion."

7.      All Documents and Communications relating to the "Private Letter Ruling," as described in the Disclosure Statement, including, but not limited to, the probability of receiving a Private Letter Ruling.

8.      All Documents relating to any analysis of the three proposed forms of reorganization for EFH following the proposed "tax-free spin-off of TCEH," including all Documents relating to or discussing the feasibility or risks associated with the "Merger Scenario," "Backstop Scenario," or "Standalone Scenario," as described in the Disclosure Statement.

9.      All Documents and Communications relating to the step-up in basis of TCEH's assets under the Settlement, including all Documents and Communications relating to the amount by which the tax basis of TCEH's assets is calculated or estimated to be stepped-up under the Settlement, and Documents sufficient to identify which of TCEH's assets has a tax basis that is calculated or estimated to be stepped-up.

10.      All Documents and Communications relating to the risks associated with the proposed step-up in basis of TCEH's assets in connection with the tax-free spin-off of TCEH as provided in the Plan and described in the Disclosure Statement.

11.     All Documents concerning whether the consent of the Sponsors would be required for a tax-free spin-off of TCEH as provided in the Plan and described in the Disclosure Statement.

12.     All Documents and Communications relating to or used in connection with the preparation of the Debtors' Liquidation Analysis, as set forth in Exhibit G to the Disclosure Statement, including, but not limited to, consolidating legal entity balance sheets for each of the Debtors.

13.     All Documents and Communications relating to, concerning, or evidencing the Debtors' election not to include a separate liquidation analysis for EFH or any other individual Debtor in the Disclosure Statement.

14.     All Documents and Communications relating to the basis of the TCEH Valuation Analysis, as set forth in Exhibit F to the Disclosure Statement, including, but not limited to, the (a) "discounted cash flow" ("DCF"), (b) "peer group company," and (c) "tax basis step-up" analyses described in Exhibit F to the Disclosure Statement.

15.     All Documents and Communications relating to Evercore's consideration of the "perpetuity growth method for estimating the terminal value" of TCEH, as disclosed in Exhibit F to the Disclosure Statement, including Evercore's conclusion that "the perpetuity growth method was not applicable for the Reorganized TCEH valuation given the nature of the Reorganized TCEH's business."

16.     All Documents and Communications relating to Evercore's consideration of "certain precedent transactions for businesses similar to that of Reorganized TCEH," as disclosed in Exhibit F to the Disclosure Statement, including those underlying Evercore's

conclusion that "precedent transactions analysis was not applicable to the Reorganized TCEH valuation."

17.    All Documents and Communications relating to the financial projections used in the valuation of TCEH, as described in Exhibits E and F to the Disclosure Statement, including all operating assumptions and supporting calculations or metrics relating to the "[(a)] 'Base Case' financial projections provided by the Debtors for the years 2015 through 2020; [(b)] projected Base Case terminal EBITDA prepared by [Filsinger]; [(c)] an 'Environmental Case' prepared by Filsinger, which reflects adjustments to the Base Case terminal EBITDA, among others, for the effect of potential environmental regulations; and [(d)] pro forma tax basis step-up of Reorganized TCEH resulting from the Preferred Stock Sale."

18.    All Documents relating to or underlying Evercore's decision to apply "equal weightings" to its DCF and "peer group company" analyses in connection with its valuation of TCEH, as disclosed in Exhibit F to the Disclosure Statement.

19.    All Documents relating to all "Base Case" and "Environmental Case" financial projections of TCEH proposed, created, developed, or prepared by Filsinger from the years 2015 through 2020 (and beyond, to the extent they exist).

20.    All Documents relating to or discussing Evercore's decision to assign a 67% and 33% weighting to its "Base Case" and "Environmental Case" projections, respectively, in its DCF valuation analysis of TCEH, as described in Exhibit F to the Disclosure Statement.

21.    All Documents relating to the "estimated value for Reorganized TCEH's tax basis step-up, resulting from the Preferred Stock Sale, of approximately $1.0 billion," as described in Exhibit F to the Disclosure Statement, including all cash flow projections, operating assumptions, and supporting calculations or metrics upon which Debtors relied.

## DISCLOSURE ON CONFLICTS OF INTEREST

22.     All Documents and Communications relating to the process in which any Debtor identifies any conflicts or "Independent Matters," as that term is used in the Protocol for Certain Case Matters.

23.     All Documents and Communications relating to the process in which the Disinterested Directors were selected, including, but not limited to, any other candidates or processes considered for dealing with conflicts matters.

24.     All Documents and Communications relating to the process in which counsel and investment banking professionals for the Disinterested Directors were selected.

25.     All Documents and Communications relating to any directions, mandates, or instructions provided to the Disinterested Directors with respect to their services in connection with these Chapter 11 Cases.

## DISCLOSURE ON CLAIMS AGAINST RELEASED PARTIES

26.     All Documents and Communications relating to the amount and priority of payment of the $10 million settlement amount from EFH Corp. to the "Holders of Interests in EFH Corp.," as described in the Disclosure Statement and defined as the EFH Settlement Claim in the Plan.

27.     All Documents and Communications relating to the provision of "third-party releases of direct and indirect Holders of Interests in EFH Corp. and its affiliates," as described in the Disclosure Statement.

28.     All Documents and Communications relating to the provision of "Exculpation" to the "Exculpated Parties," as described in the Disclosure Statement.

29.     All Communications with the Sponsors concerning the Settlement, including Communications relating to any proposed or negotiated terms of the Settlement affecting any rights, liabilities, or releases of the Sponsors.

30.     All Documents and Communications relating to, analyzing, assessing or articulating any Claims against any of the "Released Parties" (as described in the Disclosure Statement), including, but not limited to, Claims against the Disinterested Directors or other Insiders.

31.     All Communications with and/or among Insiders, including, but not limited to officers and/or the Disinterested Directors, concerning or relating to the releases contained in Article VIII of the Plan and discussed in the Disclosure Statement.

## DISCLOSURE ON INTERCOMPANY CLAIMS SETTLEMENT

32.     All Documents and Communications relating to the Debtors and/or the Disinterested Directors' approval of the Disclosure Statement and/or the Plan.

33.     All Documents and Communications relating to (a) the inclusion of the NOL Claim on the TCEH Schedules, and/or (b) the decision to include the NOL Claim on the TCEH Schedules, including, but not limited to, the parties involved, and the reasons behind, that decision.

34.     All Documents and Communications relating to (a) the inclusion of the NOL Claim on the EFH Schedules, (b) the decision to include the NOL Claim on the EFH Schedules, including, but not limited to, the parties involved, and the reasons behind, that decision, (c) the accuracy of the Amended EFH Schedules filed by EFH on February 18, 2015; and/or (d) the Withdrawal of the Amended EFH Schedules on February 23, 2015.

35.     All Documents and Communications between and among the Disinterested Directors regarding the AMT Credit Claim on the EFH Schedules and/or its removal.

36.     All Documents and Communications by and among the Disinterested Directors relating to their negotiation, evaluation, investigation, analysis, due diligence, or assessment of the Settlement.

37.     All Documents provided to, reviewed by, relied upon, or created by the TCEH Disinterested Manager in connection with any negotiation, evaluation, investigation, analysis, due diligence, or assessment of the Settlement, including, without limitation, the materials referenced in paragraph 3 of the TCEH Statement and attached as Exhibits to the TCEH Statement.

38.     All Communications between the TCEH Disinterested Manager and any (a) TCEH creditors, (b) creditor committees, or (c) attorneys, accountants, financial advisors, representatives, or all other persons acting or purporting to act on behalf of the Debtors, concerning the Settlement.

39.     All Documents provided to, reviewed by, relied upon, or created by the EFIH Independent Manager in connection with any negotiation, evaluation, investigation, analysis, due diligence, or assessment of the Settlement, including, without limitation, the materials referenced on paragraphs 4, 5, 6, 8 and 9 of the EFIH Statement.

40.     All Communications between the EFIH Independent Manager and any (a) EFIH creditors constituents, (b) creditor committees, or (c) attorneys, accountants, financial advisors, representatives, or all other persons acting or purporting to act on behalf of the Debtors, concerning the Settlement.

-17-

41.     All Documents provided to, reviewed by, relied upon, or created by the EFH Disinterested Directors in connection with any negotiation, evaluation, investigation, analysis, due diligence, or assessment of the Settlement, including, without limitation, the materials referenced in paragraphs 3 and 5 of the EFH Statement and Exhibit C to the TCEH Statement.

42.     All Communications between the EFH Disinterested Directors and any (a) EFH creditors, (b) creditor committees, or (c) attorneys, accountants, financial advisors, representatives, or all other persons acting or purporting to act on behalf of the Debtors, concerning the Settlement.

43.     All Documents and Communications between and among the Debtors, the Disinterested Directors, and/or other members of the Debtors' boards of directors concerning their consideration of the Prepetition Intercompany Claims and/or the Settlement.

44.     All Documents and Communications concerning or reflecting negotiations by and among the Disinterested Directors relating to the Settlement.

45.     All Communications on or after the Petition Date concerning the Prepetition Intercompany Claims.

46.     All Documents and Communications concerning the "significant input" that was provided by the "Creditors' Committees and other creditor groups" in connection with the Settlement, as described in the Disclosure Statement.

47.     All Documents and Communications relating to the "arms'-length negotiations between the Debtors (including each Debtor's disinterested director(s) and managers)" in connection with the Settlement, as described in the Disclosure Statement.

48.     All Documents and Communications relating to the term in the Settlement allowing any of the Disinterested Directors to terminate the Settlement "if any of them

determines, based on the advice of counsel, that termination of the [Settlement] would be consistent with the exercise of their fiduciary duties," as described in Disclosure Statement.

49.     All Communications referencing or concerning the letter of April 9, 2015 from Andrew G. Dietderich to Donald L. Evans and Billie I. Williamson or the requests contained therein.

50.     All Communications relating to the timing of the announcement of the Settlement, including, but not limited to, all Communications concerning any potential delay in announcement of the Settlement to review any bids for Oncor.

51.     All Documents and Communications relating to any valuation of EECI, using any valuation methodology, including Documents sufficient to identify all assets of EECI and their estimated, proposed, or actual value.

52.     All Documents and Communications relating to any actual or proposed transfer of any asset out of EECI, including, without limitation, Documents sufficient to identify (a) the asset that was the subject of the actual or proposed transfer; (b) any party or entity to whom the asset was actually or proposed to be transferred; (c) the name of any other party or entity that was involved in the actual or proposed transfer; and (d) the reasons for the actual or proposed transfer.

## GENERAL DISCLOSURE STATEMENT MATTERS

53.     All Documents and Communications concerning whether and to what extent any fact or opinion should be included in the Disclosure Statement.

54.     All Documents and Communications relating to the "classification" and "treatment of Claims and Interests," as described in the Disclosure Statement, including, but not

limited to, any considerations of whether any Claim should be included in any particular Plan class.

55.    All Documents on which the Debtors or the Disinterested Directors intend to rely in connection with the Disclosure Statement and/or the Disclosure Statement Motion.

56.    All Documents relating to actual or potential insurance coverage for any Asbestos Claims, including without limitation:

(a)    copies of all insurance policies or agreements, regardless of when issued or executed, that provide coverage to any Debtor for actual or alleged liability due to bodily injury, disease, or death suffered by a third party ("General Liability Policies");

(b)    all settlement agreements with insurance companies relating, in whole or in part, to Asbestos Claims;

(c)    all interim or coverage-in-place agreements with insurance companies relating in whole or in part to defense or settlement of Asbestos Claims;

(d)    all Communications with insurance companies relating to notification of Asbestos Claims or the position of any insurance companies concerning the presence or absence of coverage for Asbestos Claims;

(e)    all coverage charts or summaries reflecting or relating to the existence and extent of the General Liability Policies' coverage that may be available for Asbestos Claims, either generally or as to certain Asbestos Claims or the Debtors;

(f)    all charts or summaries that reflect or discuss the General Liability Insurance coverage program for any Debtor for any period of time up to and including the Petition Date; and

(g)    all Documents relating to deductibles or self-insured retentions that must be paid or satisfied under any insurance policy that may provide coverage for Asbestos Claims.

57.    Documents sufficient to identify any policies, practices, and procedures with respect to the retention, storage, organization, or destruction of any document relating to these Chapter 11 Cases.

Dated:   Wilmington, Delaware
         May 18, 2015

**MONTGOMERY McCRACKEN WALKER & RHOADS, LLP**
Natalie D. Ramsey (DE Bar No. 5378)
Davis Lee Wright (DE Bar No. 4324)
Mark A. Fink (DE Bar No. 3946)
1105 North Market Street, 15th Floor
Wilmington, Delaware  19801
Telephone:  (302) 504-7800
Facsimile:   (302) 504 -7820
E-mail:     nramsey@mmwr.com
            dwright@mmwr.com
            mfink@mmwr.com

– and –

**SULLIVAN & CROMWELL LLP**

 _/s/ Brian D. Glueckstein_
Steven L. Holley
Robert J. Giuffra, Jr.
Andrew G. Dietderich
Brian D. Glueckstein
125 Broad Street
New York, NY  10004
Telephone:  (212) 558-4000
Facsimile:   (212) 558-3588
E-mail:     holleys@sullcrom.com
            giuffrar@sullcrom.com
            dietdericha@sullcrom.com
            gluecksteinb@sullcrom.com

*Counsel for The Official Committee of Unsecured Creditors of Energy Future Holdings Corp.; Energy Future Intermediate Holding Company, LLC; EFIH Finance, Inc.; and EECI, Inc.*

-21-