**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

_____
                                                              )
In re:                                                      )
                                                              )          Chapter 11
ENERGY FUTURE HOLDINGS CORP., *et al.*[1]    )
                                                              )          Case No. 14-10979 (CSS)
                                                              )          (Jointly Administered)
                                Debtors.                )
_____)

**THIRD INTERIM FEE APPLICATION OF FTI CONSULTING, INC.,**
**FINANCIAL ADVISOR TO THE OFFICIAL COMMITTEE OF UNSECURED**
**CREDITORS, FOR ALLOWANCE OF COMPENSATION FOR SERVICES**
**RENDERED AND REIMBURSEMENT OF EXPENSES INCURRED FOR THE PERIOD**
**JANUARY 1, 2015 THROUGH APRIL 30, 2015**

Name of Applicant:                                          FTI Consulting, Inc.

Authorized to provide professional
services to:                                                       The Official Committee of Unsecured Creditors

Date of Retention:                                          October 20, 2014 (Effective May 19, 2014)

Period for which compensation
and reimbursement are sought:                     January 1, 2015 through April 30, 2015

Amount of compensation sought as
actual, reasonable, and necessary:        $3,487,537.75

Amount of expense reimbursement
sought as actual, reasonable, and necessary:   $20,775.06

This is a(n): _____ Monthly __X__ Interim _____ Final Application

---

[1] The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, for which joint administration has been granted on an interim basis, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

1

## SUMMARY OF MONTHLY APPLICATIONS
## FILED DURING THE INTERIM PERIOD

| DATE FILED | PERIOD COVERED | REQUESTED | | APPROVED | | HOLDBACK REQUESTED 20% |
|---|---|---|---|---|---|---|
| | | FEES | EXPENSES | FEES 80% | EXPENSES | FEES 20% |
| 03/06/2015 | 01/01/2015 - 01/31/2015 | $988,336.25 | $15,580.52 | $790,669.00 | $15,580.52 | $197,667.25 |
| 03/26/2015 | 02/01/2015 - 02/28/2015 | 885,462.00 | 1,955.71 | 708,369.60 | 1,955.71 | 177,092.40 |
| 04/29/2015 | 03/01/2015 - 03/31/2015 | 885,558.00 | 730.57 | 708,446.40 | 730.57 | 177,111.60 |
| 05/22/2015 | 04/01/2015 - 04/30/2015 | 785,145.50 | 2,508.26 | 628,116.40 | 2,508.26 | 157,029.10 |
| | Voluntary Reduction[1] | (56,964.00) | | | | (56,964.00) |
| **Total** | | **$3,487,537.75** | **$20,775.06** | **$2,835,601.40** | **$20,775.06** | **$651,936.35** |

(1)    This Fee Application reflects voluntary reductions of $56,964.00 in fees.  Subsequent to the filing of FTI's monthly fee statements for January through April 2015, FTI has voluntarily agreed to reduce fees for (i) $21,964.00 for fees charged by timekeepers (9 in total) who were deemed to have tangential involvement in these cases, and (ii) $35,000.00 for estimated fees incurred to review time entries in connection with billing activities.

*[Remainder of page left intentionally blank.]*

## SUMMARY OF FEES INCURRED BY PROFESSIONAL
## INTERIM PERIOD BY TIMEKEEPER

| Professional | Position | Billing Rate | Hours | Fees |
|---|---|---|---|---|
| Brady, Philip | Senior Managing Director | $570 | 37.0 | $21,090.00 |
| Chertok, Mark | Senior Managing Director | 750 | 15.7 | 11,775.00 |
| Davido, Scott | Senior Managing Director | 875 | 94.3 | 82,512.50 |
| Diaz, Matthew | Senior Managing Director | 975 | 406.9 | 396,727.50 |
| Eisenband, Michael | Senior Managing Director | 975 | 28.6 | 27,885.00 |
| Grant, Kenneth | Senior Managing Director | 675 | 11.8 | 7,965.00 |
| Joffe, Steven | Senior Managing Director | 975 | 87.8 | 85,605.00 |
| Jones, Scott[1] | Senior Managing Director | 1,050 | 13.4 | 14,070.00 |
| Jones, Scott | Senior Managing Director | 975 | 29.7 | 28,957.50 |
| Reishus, David | Senior Managing Director | 710 | 10.7 | 7,597.00 |
| Scruton, Andrew | Senior Managing Director | 975 | 214.7 | 209,332.50 |
| Simms, Steven | Senior Managing Director | 975 | 78.0 | 76,050.00 |
| Tranen, Jeffrey | Senior Managing Director | 750 | 99.7 | 74,775.00 |
| Cordasco, Michael | Managing Director | 795 | 262.2 | 208,449.00 |
| Greenberg, Mark | Managing Director | 795 | 665.6 | 529,152.00 |
| Park, Ji Yon | Managing Director | 795 | 274.7 | 218,386.50 |
| Arsenault, Ronald | Senior Director | 535 | 234.4 | 125,404.00 |
| Orabi, Ashraf | Director | 430 | 19.0 | 8,170.00 |
| Rauch, Adam[2] | Director | 645 | 120.5 | 77,722.50 |
| Celli, Nicholas | Senior Consultant | 535 | 140.1 | 74,953.50 |
| Eimer, Sean[2] | Senior Consultant | 495 | 108.3 | 53,608.50 |
| Eisler, Marshall | Senior Consultant | 495 | 709.5 | 351,202.50 |
| Friedrich, Steven[2] | Senior Consultant | 495 | 67.6 | 33,462.00 |
| Mond, Allison[2] | Senior Consultant | 375 | 2.3 | 862.50 |
| Rauch, Adam | Senior Consultant | 575 | 475.0 | 273,125.00 |
| Bataille, Jacqueline | Manager | 365 | 61.5 | 22,447.50 |
| Budd, Eliza | Consultant | 355 | 39.8 | 14,129.00 |
| Eimer, Sean | Consultant | 405 | 562.6 | 227,853.00 |
| Friedrich, Steven | Consultant | 405 | 326.8 | 132,354.00 |
| Mohr, Nicholas | Consultant | 225 | 17.0 | 3,825.00 |
| Mond, Allison | Consultant | 340 | 14.5 | 4,930.00 |
| Stolarz, Alexander | Consultant | 355 | 232.2 | 82,431.00 |
| Hellmund-Mora, Marili | Administrative | 250 | 95.0 | 23,750.00 |
| Moore, Teresa | Administrative | 225 | 96.9 | 21,802.50 |
| **Subtotal** | | | **5,653.8** | **$3,532,362.00** |
| Less: 50% discount for non-working travel time | | | | (9,824.25) |
| Less: Voluntary Reduction[3] | | | | (35,000.00) |
| **Grand Total** | | | **5,653.8** | **$3,487,537.75** |

(1)    The hourly rate for Scott Jones was increased from $975 to $1,050 effective January 1, 2015. FTI billed Scott Jones' time for January through March at a rate of $975 (total hours of 29.7 during the three month period). FTI will not adjust the hourly billings for that period. The increase in Scott Jones' rate to $1,050 is effective as of April 1, 2015.

(2)    Reflects a revised billing rate based on a recent promotion in accordance with FTI's practices and procedures, effective as of April 1, 2015.

(3)    The voluntary reduction of $35,000 represents estimated fees incurred to review time entries in connection with billing activities. In addition, FTI has voluntarily agreed to a reduction of $21,964.00 for fees charged by timekeepers (9 in total) who were deemed to have tangential involvement in these cases (these 9 timekeepers are not included in the Summary of Fees Schedule above). The total voluntary fee reduction for this Fee Application is $56,964.00.

## SUMMARY OF FEES INCURRED DURING THE
## INTERIM PERIOD BY PROJECT CATEGORY

| BY TASK CODE | | Hours | Fees |
|---|---|---|---|
| 1 | Current Operating Results & Events | 115.7 | $61,869.50 |
| 13 | Analysis of Other Miscellaneous Motions | 52.9 | 31,737.00 |
| 14 | Analysis of Claims/Liabilities Subject to Compromise | 8.4 | 6,284.00 |
| 15 | Analysis of Interco. Claims, Related Party Transactions | 976.4 | 555,292.00 |
| 16 | POR & DS - Analysis, Negotiation and Formulation | 177.0 | 164,707.00 |
| 18.A | Investigations of Select Legacy Transactions- Historical Transactions | 575.3 | 363,601.50 |
| 18.B | Investigations of Select Legacy Transactions- LBO Solvency | 26.5 | 14,791.50 |
| 19 | Case Management | 1.5 | 1,462.50 |
| 20 | General Meeting with Debtor & Debtors' Professionals | 8.0 | 7,360.00 |
| 21 | General Meetings with Committee & Committee Counsel | 126.3 | 116,090.50 |
| 22 | Meetings with Other Parties | 1.4 | 1,185.00 |
| 23 | Firm Retention | 128.2 | 30,725.50 |
| 24 | Preparation of Fee Application | 409.1 | 199,000.00 |
| 25 | Non Working Travel Time | 24.0 | 19,648.50 |
| 28.A | First Lien Investigation- Legacy Transactions | 91.8 | 66,245.00 |
| 28.B | First Lien Investigation- Historical Solvency | 130.1 | 94,146.00 |
| 29 | Business Plan- Diligence of the Debtors' Long Range Plan | 182.4 | 129,820.50 |
| 30 | Business Plan- Understand and Assess ERCOT Market | 36.2 | 20,415.50 |
| 33 | Business Plan- Natural Gas / Coal Pricing | 46.6 | 44,988.00 |
| 34 | Business Plan- Environmental | 2.7 | 2,025.00 |
| 35 | Business Plan- New Entry Pricing | 124.3 | 71,966.00 |
| 36 | Business Plan- Communication with Debtors / Other Professionals | 20.3 | 15,454.50 |
| 37 | Analysis of Pre-Petition Tax Payments | 1,267.2 | 707,635.00 |
| 38 | Analysis of Tax Impact on Restructuring Scenarios | 246.4 | 169,602.00 |
| 39 | Analysis of Alternative Tax Structure | 754.2 | 552,213.50 |
| 40 | REIT Asset Analysis | 120.9 | 84,096.50 |
| **Total** | | **5,653.8** | **$3,532,362.00** |
| | Less: 50% discount for non-working travel time | | (9,824.25) |
| | Less: Voluntary Reduction[1] | | (35,000.00) |
| **Grand Total** | | **5,653.8** | **$3,487,537.75** |

(1)   The voluntary reduction of $35,000 represents estimated fees incurred to review time entries in connection with billing activities. In addition, FTI has voluntarily agreed to
       a reduction of $21,964.00 for fees charged by timekeepers (9 in total) who were deemed to have tangential involvement in these cases (these 9 timekeepers are not included
       in the Summary of Fees Schedule above).  The total voluntary fee reduction for this Fee Application is $56,964.00.

## SUMMARY OF EXPENSES INCURRED
## DURING THE INTERIM PERIOD

| CATEGORY | TOTAL |
|---|---|
| Airfare | $2,446.86 |
| Business Meals | 3,600.98 |
| Ground Transportation | 4,337.63 |
| Lodging | 1,346.59 |
| Other | 9,043.00 |
| **Total** | **$20,775.06** |

This third interim fee application for compensation and reimbursement of expenses (the "Fee Application") is filed by FTI Consulting, Inc. (together with its wholly owned subsidiaries, agents, independent contractors and employees, "FTI") requesting payment for services rendered and reimbursement of costs expended as financial advisor for the Official Committee of Unsecured Creditors (the "Committee") of Energy Future Competitive Holdings Company LLC ("EFCH"), EFCH's direct subsidiary, Texas Competitive Electric Holdings Company LLC ("TCEH") and their direct and indirect subsidiaries, and EFH Corporate Services Company (collectively with EFCH and TCEH, the "TCEH Debtors")[2] for the period of January 1, 2015 through April 30, 2015 (the "Application Period"). In support of this Fee Application, FTI respectfully states as follows:

## Introduction

1.     FTI provided services to the Committee in accordance with the instructions and directions of the Committee. FTI is compensated on an hourly fee basis, plus reimbursement of actual and necessary expenses incurred by FTI.

2.     FTI submits this Fee Application pursuant to sections 330 and 331 of the Bankruptcy Code, Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals (the "Administrative Order") [Docket No. 220], Del. Bankr. LR 2016-2 and the Retention Order. By this Fee Application, FTI seeks interim allowance and payment of 100% of compensation for actual and necessary professional services rendered in the amount of $3,487,537.75, and seeks the allowance and payment of 100% of its actual and necessary expenses in the amount of $20,775.06, in accordance with the terms of the Administrative Order.

---

[2] Although EFH Corporate Services is not a subsidiary of TCEH, for ease of reference EFH Corporate Services is included in the definition "TCEH Debtors".

3.     FTI has filed and served the monthly fee statements for the periods of (i) January 1, 2015 through January 31, 2015, (ii) February 1, 2015 through February 28, 2015, (iii) March 1, 2015 through March 31, 2015, and (iv) April 1, 2015 through April 30, 2015.

**Jurisdiction**

4.     The Court has jurisdiction over this matter under 28 U.S.C. § 157 and 1334.  This is a core proceeding within the meaning of 28 U.S.C. §§ 157(b)(2).  Venue of this chapter 11 case in this district is proper under 28 U.S.C. §§ 1408 and 1409.

**Background**

5.     On April 29, 2014 (the "Petition Date"), the TCEH Debtors filed voluntary petitions with this Court under chapter 11 of the Bankruptcy Code. The TCEH Debtors are operating their business as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No request for the appointment of a trustee or examiner has been made in these chapter 11 cases.

6.     On May 12, 2014 (the "Formation Meeting"), the Office of the United States Trustee appointed the Committee pursuant to section 1102 of the Bankruptcy Code.  The Committee consists of the following seven members:

> (a) Pension Benefit Guaranty Corporation;
>
> (b) HCL America, Inc.;
>
> (c) The Bank of New York Mellon;
>
> (d) Law Debenture Trust Company of New York
>
> (e) Holt Texas LTD, d/b/a Holt Cat
>
> (f) ADA Carbon Solution (Red River); and
>
> (e) Wilmington Savings Fund Society.

On May 14, 2014, the Committee selected Morrison & Foerster LLP ("Committee Counsel") and Polsinelli PC to serve as Committee counsel. On May 16, 2014, the Committee

selected Lazard Frères & Co. LLC ("Lazard") to serve as its investment banker, and on May 19, 2014, the Committee selected FTI as its financial advisor.

7.      On July 25, 2014 FTI filed its retention application. On October 20, 2014 the Court entered an order approving the retention of FTI as financial advisor to the Committee effective as of May 19, 2014 (the "Retention Order") [Docket No. 2507].

### Summary of Services Rendered

8.      The Debtors' chapter 11 cases have presented numerous large and complex issues that had to be addressed in order to preserve and maximize value for unsecured creditors. The Retention Order authorized FTI to render financial advisory services to the Official Committee of Unsecured Creditors. FTI has taken steps to avoid duplication of efforts among the Committee professionals. The Committee professionals actively coordinate their efforts on weekly calls to discuss work streams, avoid duplication, and leverage each other's work.

9.      FTI has taken reasonable steps to avoid duplication of services by FTI's professionals. During the course of the Third Interim Period, there have been a few instances where more than one FTI professional attended a hearing or conference. These multiple attendees were necessary to accomplish the significant amount of work which needed to be performed in a compressed amount of time involving complex facts and transactions and the participation and involvement.

10.     The total number of hours expended by FTI professionals and paraprofessionals in performing professional services for the Committee during the Application Period was 5,653.8 hours.  Pursuant to the Retention Order, FTI is entitled to monthly compensation for its services provided to the Committee at its current hourly rates, plus reimbursement of necessary out of pocket expenses.

11.     In addition to the 50% discount for non-working travel time, this Fee Application includes further voluntary fee reductions of $56,964.00.  Subsequent to the filing of FTI's

monthly fee statements for January through April 2015, FTI has voluntarily agreed to reduce fees for (i) $21,964.00 for fees charged by timekeepers (9 in total) who were deemed to have tangential involvement in these cases, and (ii) $35,000.00 for estimated fees incurred to review time entries in connection with billing activities.

12.    Services rendered by each professional and paraprofessional during the Application Period, and a summary of the time incurred by project code followed by detailed time entries, is attached hereto as **Exhibit A**, **Exhibit B**, and **Exhibit C**.

13.    The following paragraph(s) describe the primary services rendered by FTI, but are not limited to the categories set forth below.

### Code 1 – Current Operating Results & Events (115.7 hours)

Time in the Current Operating Results and Events task code primarily includes the analysis of the Debtors' current financial results.  During the Application Period, FTI reviewed and analyzed financial and operating information distributed by the Debtors, their advisors and their affiliates related to historical and current performance.  In addition to analyzing materials provided to the Committee directly by the TCEH Debtors, FTI reviewed quarterly and annual public filings, relevant industry information (e.g., natural gas prices, power prices, other commodity prices), news articles, and docket updates in order to assess potential external factors that may impact the Company's operations.

During the Application Period, FTI analyzed budget-to-actual operating reports for each segment (e.g., Luminant, TXU Energy, and Oncor) as well as the consolidated parent companies (e.g., EFH, TCEH, and EFIH).  FTI conducted due diligence on the Debtors' fourth quarter, January, and February operating results.  In addition to analyzing the Debtors' budget-to-actual reports, FTI developed diligence question lists and held calls with the Company's management to assess the drivers of key variances to the budget and determined their impact on the overall performance of the business.  In connection with the aforementioned analyses, FTI prepared

several comprehensive written reports that were presented to the Committee over the course of the Application Period, including operating results reports for the fourth quarter of 2014, January, and February of 2015.  FTI's contribution to this work stream was important to help ensure the Committee was kept abreast of external issues that impact the Debtors' business, as well as the Company's performance versus its business plan.  FTI also examined the Debtors' court-filed monthly operating reports to evaluate key disclosures and business trends.

***Code 15 – Analysis of Intercompany Claims & Related Party Transactions (976.4 hours)***

Avoidance actions may be a primary source of recovery to the TCEH unsecured creditors in these cases. To that end, the Committee, and FTI, have incurred time to identify and analyze potential intercompany and other legacy claims.

Time in this code includes the continued diligence and analysis of various intercompany transactions, their impact on the TCEH Debtors, and the potential causes of action that the TCEH Debtors may have as a result of these transactions.  During the Application Period, FTI's analysis of intercompany activities included, but was not limited to, shared service cost allocations and underlying allocation methodologies, pre-petition professional fee sensitivity analysis, direct reimbursements, money pool activities, and other related party transactions. Additionally, FTI assisted Committee Counsel in the preparation of a presentation given to the Committee discussing the aforementioned claims. Time in this code also includes the analysis of potential claims that other Debtors may have against the TCEH Debtors as a result of various historical intercompany transactions.

With respect to shared service cost allocations, FTI continued to refine and modify the shared services sensitivity model, which incorporated historical shared services allocations from 2008 through the Petition Date for numerous cost categories, for the purpose of analyzing the effects of alternative cost allocation methodologies.  FTI prepared diligence request materials related to historical practices and allocation methodologies and participated on calls with the

Debtors' Advisors and employees regarding the same. FTI participated in numerous discussions with Committee Counsel and other T-side creditor advisors to discuss the model assumptions, scenarios, and resulting potential claims. FTI continued to prepare presentations at the request of Counsel relating to potential shared service claims.

FTI also examined and analyzed the Debtors' allocation of pre-petition professional fees for the year 2013 and 2014. FTI developed diligence questions for the Debtors' advisors and worked with Committee Counsel to understand the Debtors' historical allocation methodologies of pre-petition professional fees and analyzed the potential claim resulting from the potential misallocation of pre-petition professional fees. During the Application Period, FTI developed a presentation to Counsel outlining the potential claims on account of pre-petition professional fees as well as next steps.

Direct reimbursements made by the TCEH Debtors to EFH Corporate Services total approximately $2 billion per year from 2007 through the Petition Date. During the Application Period, FTI performed analyses on direct reimbursements made by the TCEH Debtors, which included the testing of certain payments.

The Debtors' centralized cash management system (the money pools) allows for the pooling of funds from various subsidiaries. During the Application Period, FTI performed diligence on the historical flow of funds within the TCEH money pool. FTI analyzed information provided to date by the Debtors' Advisors, prepared presentation materials to Counsel based on information received to date, and had calls with the Debtors.

During the Application period, the FTI team analyzing select historical legacy transactions was supplemented to include additional team members. These individuals were added as the core team was stretched to capacity and the work being performed was time sensitive.

***Code 16 – POR & DS – Analysis, Negotiation and Formulation (177.0 hours)***

FTI participated in numerous calls and meetings with Committee Counsel, the TCEH independent director, the Debtors' advisors and other parties in connection with plan efforts. Key elements of these negotiations included treatment of intercompany claims, unsecured claims at various entities, settlement of litigation claims, overall creditor recoveries, and structures involving a potential REIT plan, among many other topics.  Time in this code also included analysis performed in connection with the review of the Co-CRO draft term sheets.

Upon the Debtors' filing of a plan and disclosure statement, FTI analyzed the Debtors' Plan of Reorganization and Disclosure Statement, focusing on sections detailing the treatment of various constituencies and related recoveries.  A key element of FTI's time in this category was the analysis of certain exhibits to the Disclosure Statement, including the financial projections, the liquidation analysis, and the estimated recovery percentages presented in the Plan of Reorganization.   Drafts of both the POR and DS were also reviewed for accuracy and appropriateness as it related to proper disclosure and fair representation for the general unsecured creditors.

***Code 18.A – Investigations of Select Legacy Transactions: Historical Transactions (575.3 hours)***

Time in this code primarily includes the investigation and analysis of non-intercompany legacy transactions pertaining to the TCEH Debtors, which included, among others, (i) analysis of preference payments, (ii) allocation of Rabbi Trust funds, (iii) payments made by the TCEH Debtors in connection with the transition bonds (e.g., payments under the tax and interest rate make-whole agreements and payments made under the settlement agreement), (iv) payments made to the Sponsors subsequent to their 2007 purchase of the Company (the "LBO"), and (v) funds flow associated with the LBO including repayment of pre-LBO debt and related fees paid to the Sponsors.   FTI developed written discussion materials on the issues being investigated for

Committee Counsel. FTI also participated in weekly diligence update calls with the Debtors'

Advisors in order to request and receive periodic updates regarding the status of additional

information needed to conduct our investigation. Additionally, during the Application Period,

FTI assessed components of a recovery model in order to ensure that the model reflected

potential causes of action consistent with FTI's analyses.

***Code 21 – General Meetings with Committee & Committee Counsel (126.3 hours)***

FTI prepared for and participated in numerous conference calls with the Committee and

Committee Counsel to provide updates and advice regarding key events and issues. These calls

and meetings included weekly scheduled Committee calls, weekly scheduled Committee

professional calls as well as additional meetings and calls that were scheduled on an as-needed

basis to address specific case issues. The topics covered by these calls and meetings included key

case issues and strategy, operating results, industry updates, updates on Court hearings, tax

issues, status of plan negotiations, creditor recovery considerations, status of REIT alternatives,

and other key topics. In preparation for these calls, FTI prepared numerous presentations

outlining key issues to be discussed and proposed recommendations for the benefit of the

Committee.

***Code 23 – Firm Retention (128.2 hours)***

In connection with our retention as financial advisor to the Committee and as required by

the Bankruptcy Court, FTI conducted a comprehensive review of a supplemental list of parties-

in-interest in the TCEH Debtors' bankruptcy cases to ensure that adequate disclosures were

made of FTI's clients relationships and their connections, if any, to the TCEH Debtors'

bankruptcy cases. In accordance with internal procedures, this involved cross-checking the list

of supplemental parties-in-interest (over 9,000) against FTI's internal databases, making

appropriate disclosures and preparing drafts of the related affidavit.

***Code 28.A – First Lien Investigation: Legacy Transactions (91.8 hours)***

In connection with the Committee's investigation of claims against the TCEH first lien lenders, FTI reviewed and analyzed various reports prepared by the Debtors' advisors over the historical period since the Debtors were taken private in October 2007. In addition, FTI assisted Counsel in the analysis and reconciliation of interest payments to the first lien revolving credit facility.

Findings from this analysis were discussed with the Committee and Committee Counsel and were critical in the development of the Committee's draft complaint against the TCEH first lien lenders. FTI also incurred time reviewing and providing comments to Committee Counsel's draft of the aforementioned complaint and reply to objections to the Standing Motion.

***Code 28.B – First Lien Investigation: Historical Solvency (130.1 hours)***

In connection with the Committee's investigation of claims against the TCEH first lien lenders, FTI continued to analyze the TCEH Debtors' solvency at various points in time since the LBO to assess certain potential claims against the TCEH first lien lenders. This analysis was prepared primarily by individuals analyzing the Debtors' business plans, based on their skillsets and due to their familiarity with the Debtors' operations. Findings from this analysis were discussed with the Committee and Committee Counsel and were critical in the development of the Committee's filed complaint against the TCEH first lien lenders. In addition, time in this code includes industry research and analysis that was undertaken to refute many of the arguments contained in various parties' objections to the Committee's standing motion, as well as assisting in the drafting of certain sections of the reply brief. FTI also incurred time reviewing and providing comments to Committee Counsel's aforementioned complaint and reply to objections to the standing motion.

***Code 29 – Business Plan: Diligence of the Debtors' Long Range Plan (182.4 hours)***

Understanding and evaluating each of the Debtors' business plans (including the projections contained in the Debtors' Disclosure Statement) was time sensitive and essential for the Committee to develop its own independent view of the value of the TCEH Debtors. Time in this task code includes general analysis and due diligence related to the Debtors' business plans and preparation of an alternative free cash flow model. Given this sub-code captures the collective team's efforts in putting together an alternative free cash flow model, a number of timekeepers were necessary.

During the Application Period, FTI summarized key issues and observations from the Debtors' business plans and provided written and/or oral updates to the Committee on a periodic basis. FTI analyzed the Debtors' updated business plan for each segment to determine key variances compared to prior versions of the business plan and held calls with the Debtors' management to assess the drivers of such changes. Time in this code also includes preparing detailed information requests and questions that were designed to understand, on a line item basis, the key assumptions and drivers of the Debtors' long range plan, as well as the mechanics that were utilized to develop the business plan models. FTI continued to refine an alternative business plan free cash flow model based on additional research and diligence responses received from the Debtors and the Debtors' professionals. FTI participated in calls with the Debtors and the Debtors' professionals to better understand the assumptions incorporated in the business plan, as well as the mechanics of the Debtors' financial models.

During the Application Period, FTI also participated in site visits of the Comanche Peak and Big Brown plants to view certain of the Debtors' operations and assess the processes in place at these plants. Observations and analyses from these visits were summarized for discussion with the Committee and Committee's advisors.

*Code 35 – Business Plan: New Entry Pricing (124.3 hours)*

Time in this task code includes the analysis of key drivers determining outer year power prices in the ERCOT market and the development of an independent view on such drivers. A key driver of outer year power prices is the determination of the economics that would be required to develop new investment in the ERCOT market (e.g. development of new power plants). Which unit is built, how much it costs, what return its owners require, and how long of a period an owner would expect capital recovery to occur are all factors that have an impact on market prices, and as a result Luminant's revenue potential. In this task code, FTI incurred time reviewing the Debtors methodology and assumptions, reviewing methodology and assumptions accepted by regulators in similar situations, creating its own set of assumptions based on experience and available data, and preparing various sensitivities to determine the potential impact on projected power prices.

*Code 37 – Analysis of Pre-Petition Tax Payments (1,267.2 hours)*

Identifying potential claims relating to intercompany tax payments will likely be a key source of recoveries for the TCEH unsecured creditors. As such, FTI incurred time in this task code to analyze intercompany tax obligations of, and payments among, EFH Corporation and various subsidiaries, pursuant to several tax sharing agreements. To supplement our understanding of historical tax liabilities, FTI continued to review the tax sharing agreements from a financial perspective, historical federal and state tax returns, and related documentation provided by the Debtors. In order to evaluate the tax obligations, FTI performed extensive due diligence on the Debtors' processes for accruing, clearing, and settling tax liabilities on a business unit level. FTI also evaluated the application and utilization of various subsidiaries' attributes as they relate to the Consolidated EFH tax liability. FTI further evaluated the Debtors' tax analysis, including analyzing the tax liabilities of various entities and reconciling differences between our analyses. FTI assessed the tax record keeping methods related to various IRS

settlements and the impact towards TCEH and its subsidiaries. FTI frequently shared its findings and diligence observations in both written and oral communications with Committee Counsel. During the Application period, the FTI team analyzing prepetition tax payments was supplemented to include individuals with specific tax expertise to evaluate complex tax structures and specific tax transactions.

***Code 38 – Analysis of Tax Impact on Restructuring Scenarios (246.4 hours)***

Time in this task code includes identifying and analyzing tax considerations of various potential tax-free and taxable restructuring transactions to evaluate the benefits and costs of each transaction in order to identify optimal tax structures for the benefit of the Committee. Evaluating restructuring alternatives is a critical element of this engagement as they impact recoveries of all secured and unsecured creditors. In continuation of our analysis, FTI evaluated the tax basis of assets, net operating losses, depreciation recapture, and cancellation of debt income under multiple potential structures.  FTI also computed the claims that each of the restructuring alternatives would give rise to under the Competitive TSA.  FTI prepared numerous presentations to Committee Counsel outlining the aforementioned considerations and their financial impact to our client.

***Code 39 – Analysis of Alternative Tax Structure (754.2 hours)***

The proposed REIT structure is a potential value maximizing element of a plan that could increase recoveries to both E-side and T-side creditors. Given the unique qualities and unprecedented nature of a utility REIT of this size, a thorough analysis of alternate REIT structures was necessary to evaluate REIT feasibility and the economic impacts to creditors.  FTI assessed the structural requirements that transitioning a utility corporation into a REIT would entail.  FTI analyzed the structure and economics of other REITS in order to assess potential obstacles and to create a framework in which Oncor could execute the proposed transaction. FTI also built a financial transaction model for the Oncor REIT, analyzing debt capacity and cash

flow requirements, in order to determine whether the requirements for REIT qualification could be satisfied. This model enabled the Committee to assess the potential tax savings associated with various REIT structures, and to identify any funding requirements needed to satisfy distributions to REIT shareholders.  During the Application period, the FTI team analyzing potential REIT structures was supplemented to include individuals with specific tax expertise to evaluate the structural requirements that transitioning a utility corporation into a REIT would entail.

***Code 40 – REIT asset analysis (120.9 hours)***

Time in this task code relates to FTI's analysis of Oncor's asset base and the qualification of individual assets within the proposed REIT structure.  FTI performed an in-depth analysis on Oncor's assets using SEC filings, tax filings, and reports issued by the Federal Energy Regulatory Commission. FTI evaluated various asset depreciation methods and conventions in order to assess potential distributions to REIT shareholders.  FTI engaged in numerous conversations with UCC counsel, Debtors' counsel, and the Debtors to identify critical issues related to REIT asset qualification and corresponding tax consequences.  During the Application period, the FTI team analyzing Oncor's asset base included tax specialists to review detailed tax filings and depreciation methods, as well as industry specialists to assess qualifications of individual assets within various proposed REIT structures.

*[Remainder of page left intentionally blank.]*

**Actual and Necessary Costs and Expenses Incurred**

14.    Reimbursement of expenses in the amount of $20,775.06 is sought herein.  A categorized summary of the actual and necessary costs and expenses incurred by FTI during the Application Period, and an itemization of each expense within each category, is attached as **Exhibit D** and **Exhibit E**. FTI reserves the right to request, in subsequent fee applications, reimbursement of any additional expenses incurred during the Application Period, as such expenses may not have been captured in FTI's billing system on the date of filing this Fee Application.

**Statement from FTI Consulting, Inc.**

15.    At all relevant times, FTI has been a disinterested person, as that term is defined at § 101(14) of the Bankruptcy Code, as modified by § 1103(b) of the Bankruptcy Code, and has not represented or held any interest adverse to any interest of the Committee.

16.    FTI has received no payment and no promises for payment from any source for services rendered or to be rendered in any capacity whatsoever in connection with the matters covered by this Application.  No agreement or understanding exists between FTI and any other entity (other than shareholders or employees of FTI), except with respect to Cambridge Energy Solutions ("CES")[3], for the sharing of compensation received or to be received for services rendered in or in connection with these cases.

17.    All services for which FTI requests compensation were performed at the direction or instruction of the Committee and for or on behalf of the Committee.  The professional services and related expenses for which FTI requests quarterly allowance of compensation and reimbursement of expenses were rendered and incurred in connection with this case in the

---

[3] As disclosed in paragraph 6 of the Retention Order and the *Supplemental Declaration of Steven Simms in Support of Application for the Official Committee of Unsecured Creditors of Energy Future Holdings Corp., et al, for Entry of an Order Under Section 328(a) and 1103(a) of the Bankruptcy Code Authorizing the Employment and Retention of FTI Consulting, Inc. as Financial Advisor Effective May 19, 2014.*

discharge of FTI's professional responsibilities as Financial Advisors to the Committee in the Debtors' Chapter 11 cases.

18.    FTI respectfully submit that, in accordance with the factors enumerated at § 330 of the Bankruptcy Code, the services provided were necessary and beneficial to the Committee, the Debtors' estates, creditors and other parties in interest and as such the compensation being sought for its services is fair and reasonable.

*[Remainder of page left intentionally blank.]*

**Notice**

19.     As required by the Administrative Order, a copy of this Fee Application has been served upon: (a) Energy Future Holdings Corp.; (b) co-counsel for the Debtors, Kirkland & Ellis LLP; (c) co-counsel to the Debtors', Richards Layton & Finger, P.A.; (d) the Office of the United States Trustee for the District of Delaware; (e) counsel for the agent of the EFIH First Lien DIP Financing Facility, Shearman & Sterling LLP; (f) counsel for the TCEH First Lien DIP Facility, Milbank, Tweed, Hadley & McCloy LLP; (g) counsel to the Committee of Unsecured Creditors, Morrison & Foerster LLP; and (h) counsel to the Fee Committee, Godfrey & Kahn, S.C.  Notice of this Fee Application was served upon all parties requesting notice pursuant to Bankruptcy Rule 2002.

20.     WHEREFORE, FTI respectfully requests that the Court (i) approve and allow on an interim basis the compensation requested and reimbursement of actual and necessary costs and expenses; and (ii) approve the payment of the 100% of allowed fees and expenses and (iii) provide such further relief as may be just and proper.[4]

Dated: June 10, 2015                                FTI CONSULTING, INC

                                                    By: */s/ Matthew Diaz*
                                                        Matthew Diaz
                                                        Three Times Square
                                                        New York, NY 10036
                                                        Telephone: 212-499-3611
                                                        E-mail: matthew.diaz@fticonsulting.com

---

[4] Paragraph 2(b) of the Administrative Order requires Professionals (as defined in the Administrative Order) to allocate any fees and expenses to the applicable Debtors for whose direct benefit such fees and expenses were incurred (such fees, the "Direct Benefit Fees").  FTI has incurred fees and expenses for the collective benefit of the TCEH Debtors. As a result, FTI has not attempted to break out the specific Direct Benefit Fees performed for the benefit of the TCEH Debtors since all of its fees and expenses would be allocated to the TCEH Debtors regardless under the Administrative Order.  Thus, all of FTI's fees and expenses identified in this Monthly Fee Statement should be paid by the TCEH Debtors.

## <u>VERIFICATION PURSUANT TO DEL. BANKR.LR. 2016-2(f) AND 28 U.S.C. §1746(2)</u>

I, Matthew Diaz, verify as follows:

1.      I am a Senior Managing Director with FTI Consulting, Inc. (together with its wholly owned subsidiaries, agents, independent contractors and employees, "<u>FTI</u>").  FTI has rendered professional services to the Official Committee of Unsecured Creditors (the "<u>Committee</u>") in this Chapter 11 case.

2.      I have read the foregoing application of FTI for compensation and reimbursement of expenses (the "<u>Fee Application</u>").  To the best of my knowledge, information and belief formed upon the basis of my participation in this case, as well as after reasonable inquiry, the facts set forth in the foregoing Fee Application are true and correct and materially comply with the applicable orders, rules, guidelines and requirements as set forth by the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, Del.Bankr.LR 2016-2, and the Executive Office for the United States Trustee.

Executed on: June 10, 2015                    FTI CONSULTING, INC


                                              By: */s/ Matthew Diaz*
                                                Matthew Diaz
                                                Three Times Square
                                                New York, NY 10036
                                                Telephone: 212-499-3611
                                                E-mail: <u>matthew.diaz@fticonsulting.com</u>


                                                *Financial Advisors to the Official*
                                                *Committee of Unsecured Creditors*