**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re: | Chapter 11 |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | Case No. 14-10979 (CSS) |
|  | (Jointly Administered) |
| Debtors. | **Obj. Deadline: August 14, 2015** |

**SUMMARY COVER SHEET TO THE SECOND INTERIM FEE
APPLICATION OF CRAVATH, SWAINE & MOORE LLP
INDEPENDENT COUNSEL FOR ENERGY FUTURE INTERMEDIATE
HOLDING COMPANY LLC, FOR THE PERIOD JANUARY 1, 2015
THROUGH APRIL 30, 2015**

Cravath, Swaine & Moore LLP ("**Cravath**"), independent counsel to Energy Future Intermediate Holding Company LLC, debtor and debtor in possession ("**EFIH**"), submits this Summary of fees and expenses sought in the fee application for the period from January 1, 2015 through April 30, 2015 (the "**Fee Period**") to which this Summary is attached (the "**Fee Application**").[2]

Cravath submits the Fee Application as an interim fee application in accordance with the *Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Professionals* [Docket No. 2066] (the "**Interim Compensation Order**") and the

---

[1] The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, for which joint administration has been granted, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

[2] Capitalized terms used but not otherwise defined in this Summary have the meanings ascribed to them in the Fee Application.

*Stipulation and Order Appointing a Fee Committee* [Docket No. 1896] (the "**Fee Committee**

**Order**").

| *General Information* | |
|---|---|
| Name of Applicant: | Cravath, Swaine & Moore LLP |
| Authorized to Provide Services to: | **Energy Future Intermediate Holding Company LLC**, Debtor and Debtor in Possession |
| Petition Date: | April 29, 2014 |
| Date of Order Authorizing EFIH to Employ Cravath [Docket No. 3321]: | January 16, 2015, *nunc pro tunc* to November 16, 2014 |

| *Summary of Fees and Expenses Sought in the Fee Application* | |
|---|---|
| Period for Which Compensation and Reimbursement is Sought in the Fee Application: | January 1, 2015 through April 30, 2015 |
| Amount of Compensation Sought as Actual, Reasonable, and Necessary for the Fee Period: | $1,499,619.50[3] |
| Amount of Expense Reimbursement Sought as Actual, Reasonable, and Necessary for the Fee Period: | $29,477.20 |
| Total Compensation and Expense Reimbursement Requested for the Fee Period: | $1,529,096.70 |

| *Rate Increases Applicable to the Fee Period* | |
|---|---|
| Total Amount of Compensation Sought for the Fee Period, Calculated Using Rates as of the Date of Employment: | N/A—No rate increases |

---

[3] This amount reflects adjustments in connection with the Monthly Fee Statements.

## Summary of Past Requests for Compensation and Prior Payments

| | |
|---|---|
| Total Amount of Compensation Previously Requested Under the Interim Compensation Order to Date: | $2,057,993.80 |
| Total Amount of Expense Reimbursement Previously Requested Under the Interim Compensation Order to Date: | $31,632.30 |
| Total Compensation Approved Under the Interim Compensation Order to Date: | $1,413,508.40 |
| Total Amount of Expense Reimbursement Approved Under the Interim Compensation Order to Date: | $29,953.91 |
| Total Allowed Compensation Paid to Date: | $0 |
| Total Allowed Expenses Paid to Date: | $0 |
| Compensation Sought in this Application Already Paid Under the Interim Compensation Order But Not Yet Allowed: | $355,601.20[4] |
| Expenses Sought In This Application Already Paid Under the Interim Compensation Order But Not Yet Allowed: | $5,044.31[4] |

DATED: June 15, 2015

*/s/ Michael A. Paskin*

Michael A. Paskin (mpaskin@cravath.com)

CRAVATH, SWAINE & MOORE LLP
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
+1 (212) 474-1000

*Independent Counsel for Energy Future*
*Intermediate Holding Company LLC*

---

[4] The objection period for the April Monthly Fee Statement for the Fee Period has not yet expired, so no fees have yet been paid.

100368.1

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>ENERGY FUTURE HOLDINGS CORP., *et al.*,[5]<br><br>                    Debtors. | Chapter 11<br><br>Case No. 14-10979 (CSS)<br><br>(Jointly Administered)<br><br>**Obj. Deadline: August 14, 2015** |

## SECOND INTERIM FEE APPLICATION OF CRAVATH, SWAINE & MOORE LLP INDEPENDENT COUNSEL FOR ENERGY FUTURE INTERMEDIATE HOLDING COMPANY LLC, FOR THE PERIOD JANUARY 1, 2015 THROUGH APRIL 30, 2015

Cravath, Swaine & Moore LLP ("**Cravath**"), independent counsel to debtor and debtor in possession Energy Future Intermediate Holding Company LLC ("**EFIH**"), submits this Second Interim Fee Application for allowance of compensation for professional services provided in the amount of $1,499,619.50 and reimbursement of actual and necessary expenses in the amount of $29,953.91that Cravath incurred for the period January 1, 2015 through April 30, 2015 (the "**Fee Period**"). In support of this Fee Application, Cravath submits the declaration of Michael Paskin, a partner in Cravath, (the "**Paskin Declaration**"), which is attached as **Exhibit A** and incorporated by this reference. In further support of this Fee Application, Cravath respectfully states as follows:

---

[5] The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, for which joint administration has been granted, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

## I.  Jurisdiction

1.        This Court has jurisdiction over this matter under 28 U.S.C. §§ 157 and 1334.

This Fee Application is a core proceeding under 28 U.S.C. § 157(b)(2).

2.        Venue is proper under 28 U.S.C. §§ 1408 and 1409.

3.        The bases for the relief requested in this Fee Application are sections 330 and

331 of the Bankruptcy Code, Rule 2016 of the Federal Rules of Bankruptcy Procedure (the

"**Bankruptcy Rules**"), Rules 2016-1 and 2016-2 of the Local Rules of Bankruptcy Practice and

Procedure of the United States Bankruptcy Court for the District of Delaware (the

"**Local Bankruptcy Rules**"), the *Order Establishing Procedures for Interim Compensation

and Reimbursement of Expenses for Professionals* [Docket No. 2066] (the "**Interim

Compensation Order**"), and the *Stipulation and Order Appointing a Fee Committee*

[Docket No. 1896] (the "**Fee Committee Order**").

## II.  Background

4.        On April 29, 2014 (the "**Petition Date**"), EFIH commenced its chapter 11 case by

filing a voluntary petition in this Court under chapter 11 of the Bankruptcy Code.

5.        The Debtor continues to operate its business and manage its property as a

debtor in possession under sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or

examiner has been appointed in this case.[6]

6.        On May 13, 2014, the Office of the United States Trustee, Region 3 formed and

appointed an Official Committee of Unsecured Creditors under section 1102(a)(1) of the

Bankruptcy Code. [ECF 420.] On October 27, 2014, the Office of the United States Trustee,

---

[6] Further information regarding the Debtors' business operations and capital structure is set forth in the
*Declaration of Paul Keglevic, Executive Vice President, Chief Financial Officer, and Co-Chief Restructuring Officer
of Energy Future Holdings Corp., et al., in Support of First Day Motions* [ECF 98].

Region 3 formed and appointed another Official Committee of Unsecured Creditors under section 1102(a)(1) of the Bankruptcy Code. [ECF 2570.]

7.      On September 16, 2014, the Court entered the Interim Compensation Order, which sets forth the procedures for interim compensation and reimbursement of expenses for all professionals in all of the above-captioned chapter 11 cases (the "**Chapter 11 Cases**").

8.      On August 21, 2014, the Court entered the Fee Committee Order, appointing a fee committee (the "**Fee Committee**") to review and report, as appropriate, on interim and final fee applications filed by the Debtors' retained professionals in accordance with sections 328, 330, and 331 of the Bankruptcy Code and the Interim Compensation Order and establishing the procedures governing the Fee Committee's review of the Debtors' retained professionals applications for compensation and the resolution of any concerns raised during such review. The Fee Committee distributed an initial memorandum dated October 3, 2014 regarding guidelines for expense reimbursements to those professionals retained in the Chapter 11 Cases. Cravath believes that the relief requested in this Fee Application complies with the guidelines.

### III. Cravath's Employment, Disinterestedness, and Fee Request

9.      On January 16, 2015, the Court entered the *Order Approving The Employment of Cravath, Swaine & Moore LLP As Counsel To Energy Future Intermediate Holding Company LLC Effective* Nunc Pro Tunc *to November 16, 2014* [Docket No. 3321] (the "**Employment Order**"), attached as **Exhibit B**. The Employment Order authorizes EFIH to compensate Cravath at Cravath's hourly rates charged for services of this type and to reimburse Cravath for Cravath's actual and necessary out-of-pocket expenses incurred, subject to application to this Court in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, the Interim Compensation Order,

and the Fee Committee Order. The terms of Cravath's engagement are detailed in the engagement letter by and between Cravath and EFIH, effective as of November 16, 2014, and attached as **Exhibit C** (the "**Engagement Letter**").

10.    To the best of the Cravath's knowledge and as disclosed in the *Declaration Of Richard Levin In Support Of Application For Order Approving The Employment Of Cravath, Swaine & Moore LLP As Counsel To Energy Future Intermediate Holding Company LLC Under Sections 327(a) And 1107(b) Of The Bankruptcy Code, Effective Nunc Pro Tunc To November 16, 2014* [Docket No. 3028] (the "**Levin Declaration**") and the *First Supplemental Declaration Of Richard Levin In Support Of Application For Order Approving The Employment Of Cravath, Swaine & Moore LLP As Counsel To Energy Future Intermediate Holding Company LLC Under Sections 327(a) And 1107(b) Of The Bankruptcy Code, Effective Nunc Pro Tunc To November 16, 2014* [Docket No. 3205] (the "**Supplemental Levin Declaration**"), Cravath is a "disinterested person," as defined in section 101(14) of the Bankruptcy Code, and does not hold or represent an interest adverse to the EFIH's estate, as required by section 328(a) of the Bankruptcy Code and that Cravath's partners, associates and special attorneys do not hold or represent any interest adverse to EFIH or its estate, except as otherwise specified in the Declarations.

11.    Cravath might have in the past represented, might currently represent, and likely in the future will represent parties in interest in this case in connection with matters unrelated to EFIH or its chapter 11 case. In the Levin Declaration and Supplemental Levin Declaration, Cravath disclosed its connections to parties in interest in the EFIH case that it has

been able to ascertain using its reasonable efforts. Cravath will update such disclosures, as appropriate, if Cravath becomes aware of relevant and material new information.

12.      Cravath performed the services for which it is seeking compensation on behalf of EFIH and its estate and not on behalf of any committee, creditor, or other entity.

13.      Commencing with January 2015, Cravath submitted monthly budgets to EFIH, all of which EFIH approved as submitted. Copies of the monthly budgets for the Fee Period are attached to this Application as **Exhibit J**. The following table shows Cravath's actual incurred fees compared to the budgeted fees:

|  | **January** | **February** | **March** | **April** | **Total** |
|---|---|---|---|---|---|
| **Budget** | 791,400.00 | 403,950.00 | 313,500.00 | 482,450.00 | 1,991,300.00 |
| **Actual** | 439,581.50 | 459,449.50 | 341,112.50 | 259,476.00 | 1,499,619.50 |
| **Difference** | (351,818.50) | 55,499.50 | 27,612.50 | (222,974.00) | (491,680.50) |
| **Percentage** | (44%) | 14% | 9% | (46%) | (25%) |

A more detailed comparison is shown in **Exhibit K**.

14.      Cravath did not discuss the reason for the 15% variation with EFIH. The reason was principally that work on Intercompany Claims and on the Oncor Sale Process was delayed from January to February.

15.      Cravath seeks interim compensation for professional services provided to the Debtors during the Fee Period in the amount of $1,499,619.50[7] and reimbursement of actual and necessary expenses incurred in connection with providing such services in the amount of

---

[7] This amount reflects downward adjustments in connection with the Monthly Fee Statements for months during the Fee Period.

$29,953.91. During the Fee Period, Cravath attorneys and paraprofessionals worked 1624.80 hours for which compensation is requested.

16.     Cravath has submitted monthly fee statements and been paid on some of them. The following table shows amounts submitted and paid.

| Invoice Period | Amount Billed | Fees Billed | Fees at 80% | Exps Billed | Payments Received |
|---|---|---|---|---|---|
| Nov.-Dec. 2014 | 523,427.23 | 521,822.00 | 417,457.60 | 1,605.23 | 418,944.33 |
| January 2015 | 449,545.81 | 444,501.50 | 355,601.20 | 5,044.31 | 360,645.51 |
| February 2015 | 471,042.66 | 459,449.50 | 367,559.60 | 11,593.16 | - |
| March 2015 | 352,823.71 | 341,112.50 | 272,890.00 | 11,711.21 | - |
| April 2015 | 261,154.39 | 259,476.00 | 207,580.80 | 1,678.39 | - |
| **Total** | **2,057,993.80** | **2,026,361.50** | **1,621,089.20** | **31,632.30** | **779,589.84** |

17.     None of Cravath's fees or expenses have yet been approved by the Court on an interim fee application. Cravath's First Interim Fee Application was filed February 15, 2015; the hearing on the Application is scheduled for June 24, 2015. The fees and expenses requested are shown in the prior paragraph.

18.     Cravath has not received payment or promise of payment from any source other than EFIH for services provided or to be provided in any capacity whatsoever in connection with the EFIH case.

19.     Cravath does not share fees with any attorneys except to the extent permitted by section 504.

20.     By this Fee Application, and to the extent not already paid by the time of the hearing on this Fee Application, Cravath seeks payment of all amounts, including the remaining 20% holdback on fees incurred during the Fee Period.

### IV. Fees and Expenses Incurred During Fee Period

**A.     Customary Billing Disclosures**

21.     Cravath's hourly rates are set at a level designed to compensate Cravath fairly for the work of its attorneys and paraprofessionals and to cover fixed and routine expenses. The hourly rates and corresponding rate structure utilized by Cravath in this cases are equivalent to the hourly rates and corresponding rate structure used by Cravath for similar complex corporate, securities, litigation, and restructuring matters, whether in court or otherwise, regardless of whether a fee application is required. The rates and rate structure reflect that such complex matters typically are national in scope and typically involve great complexity, high stakes, and intense time pressures.

22.     **Exhibit D** to this Fee Application is a summary of blended hourly rates for timekeepers who billed to non-bankruptcy matters and blended hourly rates for timekeepers who billed to EFIH during the Fee Period, as required by the "Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed under 11 U.S.C. § 330 for Attorneys in Larger Chapter 11 Cases" promulgated by the Executive Office of the United States Trustee, as applied to this case by the Interim Compensation Order.

## B.     Fees Incurred During Fee Period

23.     In the ordinary course of Cravath's practice, Cravath maintains computerized records of the time spent on the professional services required by EFIH and its estate. **Exhibit E** to this Fee Application is a summary of fees incurred and hours worked during the Fee Period, setting forth the following information:

- the name of each attorney and paraprofessional for whose work compensation is sought;

- each attorney's year of bar admission and area of practice concentration;

- the aggregate time worked and fees billed by each attorney and each paraprofessional during the Fee Period;

- the hourly billing rate for each such attorney and paraprofessional at Cravath's current billing rates;

- the hourly billing rate for each attorney and each paraprofessional as disclosed in Cravath employment application;

- the number of rate increases since the inception of the case; and

- a calculation of total compensation requested using the rates disclosed in the Cravath employment application.

## C.    Expenses Incurred During Fee Period

24.    In the ordinary course of Cravath's practice, Cravath maintains a record of expenses incurred in rendering professional services required by EFIH and its estate and for which reimbursement is sought. **Exhibit F** to this Fee Application is a summary for the Fee Period of the total amount of expenses for which Cravath seeks reimbursement with respect to each category of expenses. The out-of-pocket disbursement sum is broken down into categories of charges.

## V.  Proposed Payment Allocation

25.    In accordance with paragraph 2(b) of the Interim Compensation Order, all of the fees and expenses that Cravath seeks in this Fee Application are allocated to EFIH.

## VI. Summary of Legal Services Provided During the Fee Period

26.    During the Fee Period, Cravath provided extensive and important professional services to EFIH in connection with certain corporate, litigation, tax, and other matters.

27.    Cravath has established, in accordance with its internal billing procedures, ten subject matters categories (each, a "**Matter Category**") for keeping time records for the work performed for EFIH. The following is a summary, by Matter Category, of the professional services provided by Cravath during the Fee Period. This summary is organized in accordance with Cravath's internal system of matter numbers.

28.    A schedule setting forth a description of each Matter Category utilized in this case, the number of hours worked by Cravath attorneys and paraprofessionals for each Matter Category, and the aggregate fees associated with each Matter Category is attached as **Exhibit G**.

In addition, subject to redaction for attorney-client privilege, work product doctrine, and confidentiality where necessary to protect EFIH and its estate, Cravath's computerized records of time worked providing professional services to EFIH and its estate are attached hereto as **Exhibit H**, and Cravath's records of expenses incurred during the Fee Period in the rendition of professional services to EFIH and its estate are attached as **Exhibit I**.

29.      During the Fee Period, Cravath completed its investigation of intercompany claims, presented its results to the EFIH Disinterested Manager, and participated in negotiations with counsel for the disinterested directors and manager, resulting in a proposed settlement under a plan of all intercompany claims. Cravath also participated actively in the bid procedures and plan negotiation process, evaluating and commenting on bids and proposals and contributing to the process that led to the filing of the Debtors' plan and proposed intercompany settlement on April 14, 2015 and that should result in the selection of a stalking horse bidder and the filing of a motion to approve a stalking horse bid in June 2015. Cravath's efforts on behalf of the EFIH Disinterested Manager were essential to each of these case milestones.

### 1.      Chapter 11 General and Administrative (Matter No. 1)

Fees: $83,351.00          Total Hours: 70.50

30.      During the Fee Period, Cravath continued to attend weekly Board conference calls to keep informed of developments and of the Board's view on pending matters, and to advise the Board of issues and events that were unique to EFIH and the Disinterested Manager. Cravath also prepared and submitted to EFIH a response to the annual request from the Debtors' auditors.

2.      **Governance (Matter No. 2)**

Fees: $0.00              Total Hours: 0.00

31.        Cravath did not perform any services during the Fee Period related solely to corporate governance matters.

3.      **Plan and Disclosure Statement (Matter No. 3)**

Fees: $311,172.50        Total Hours: 269.70

32.        During the Fee Period, Cravath continued its work on behalf of EFIH in the development of a plan. It met and corresponded with representatives of EFIH parties in interest, including the Official EFH/EFIH Committee and holders of the EFIH second lien notes and of EFIH PIK notes. It remained in frequent communication, by email, telephone and in person, with Kirkland and with the other Conflict Matters counsel, regarding development of a plan. It participated in a two-day negotiating session in Dallas with Kirkland and the other Conflicts Matter counsel on settlement of intercompany claims under a plan. It analyzed the complex tax issues raised by any proposed plan and analyzed and presented to EFIH's Disinterested Manager the considerations in connection with the conversion of EFH to a real estate investment trust. It reviewed and commented on numerous term sheet and plan and disclosure statement drafts. It worked with EFIH's Conflict Matters financial advisor in evaluating plan proposals to prepare recommendations to EFIH's Disinterested Manager regarding a plan. Cravath's efforts contributed to the Debtors' filing of its Plan on April 14, 2015, which proposed a settlement of all intercompany claims in which all Debtors concurred.

33.        After agreement among the Debtors on the settlement of intercompany claims, Cravath prepared a statement, which was filed with the Court on April 14, 2015, in support of the settlement, showing the considerations that figured in EFIH's consent to the settlement.

Cravath also reviewed, commented on, and participated in negotiations regarding a disclosure statement and confirmation discovery and scheduling order.

34.      Cravath also participated with Kirkland and the other Conflicts Matter counsel in discussions regarding the Debtors' motion to extend the plan exclusivity period, reviewed and commented on drafts of the motion to extend plan exclusivity, counseled with its client and with Kirkland and the other Conflicts Matter counsel regarding potential settlement of objections to the exclusivity extension motion.

35.      Cravath also attended (by telephone) the hearing on the Debtors' exclusivity extension motion, which the Court granted, and the status conference on the filing of the Debtors' Plan on April 14, 2015.

### 4.      Intercompany Claims (Matter No. 4)

Fees: $542,839.50      Total Hours: 695.40

36.      Cravath's principal role as independent counsel to EFIH is, among other things, to provide EFIH advice and representation on the resolution of intercompany claims. During the Fee Period, the majority of Cravath's hours spent in the engagement were devoted to analysis of intercompany claims and defenses and to meetings and conversations with EFIH's Disinterested Manager and with other Conflicts Matter counsel on settlement of such claims.

37.      Cravath conducted extensive factual investigation into matters relevant to potential intercompany claims and defenses. It reviewed, among other things, public securities law filings, underlying agreements and internal company memoranda, and due diligence materials that Kirkland had assembled in a data for parties in interest in the cases. It reviewed analyses of taxes that the Debtors had paid or accrued and how the Debtors had allocated items of tax and tax attributes among the various Debtors. It conducted interviews with key witnesses and reviewed transcripts and summaries of prior interviews. It worked with EFIH's Conflicts

Matters financial advisor to develop financial analyses that are relevant to the evaluation of potential intercompany claims and defenses.

38.     Cravath also conducted extensive legal research relevant to potential intercompany claims and defenses, including research on nonbankruptcy fraudulent transfer law, avoiding and recovery powers under the Bankruptcy Code, statutes of limitations and conflict of laws issues under state and federal law. It evaluated tax law issues relevant to intercompany claims under the Debtors' Tax Sharing Agreement.

39.     Based on its factual and legal research, Cravath analyzed and evaluated potential intercompany claims and defenses and prepared an extensive written presentation for EFIH's Disinterested Manager, describing each such claim and defense that was either colorable or that had been raised in the cases by another party in interest and evaluating the potential risks or benefits to EFIH if such claims or defenses were pursued in litigation.

40.     After completing this work, Cravath met with EFIH's Disinterested Manager to present its written analysis and the results of its research and to advise the Disinterested Manager on potential negotiating positions and strategies regarding the claims and defenses and on how they might affect the outcome of the Debtors' chapter 11 cases.

41.     Cravath then prepared written presentations for and engaged with other Conflict Matters counsel to present claims that EFIH might have against the Debtors that they represented and defenses that EFIH might have against claims the other Debtors might assert against EFIH. Cravath engaged in several in-person meetings, including a two-day meeting in Dallas, and telephone conferences and in correspondence with the other counsel to negotiate a resolution of all potential intercompany claims.

42.    Cravath's efforts contributed to a settlement with the other Debtors that would result in a mutual release of all potential intercompany claims by or against EFIH, thus preserving all of EFIH's value for its bondholders and its equity interest holder EFH.

**5.    Tax Issues (Matter No. 5)**

Fees: $186,914.50    Total Hours: 193.50

43.    The tax issues in these Chapter 11 Cases could have a major effect on recoveries of parties in interest, and minimizing taxes and the potential future tax consequences of any restructuring has been a major goal. Consistent with that goal, during the Fee Period Cravath devoted substantial time to the tax issues that could affect recoveries. It analyzed net operating loss carryovers, tax basis of assets, alternative ways to accomplish a tax-free restructuring, and the effect of various plan proposals and alternative reorganization structures provided by different parties in interest and purchase proposals from bidders on these issues.

44.    Cravath conducted both factual and legal research on tax issues, participated in meetings and conference calls with other counsel in the Chapter 11 Cases on these issues, prepared memoranda for EFIH's Disinterested Manager to assist him in his evaluation of restructuring alternatives and strategies, and reviewed Kirkland's tax-related analyses and communications with the Internal Revenue Service, among others, for accuracy and completeness and to ensure they were consistent with the interests of EFIH.

45.    Cravath also analyzed and commented on issues arising under the Debtors' Competitive Tax Sharing Agreement and its effect on claims and recoveries in the Chapter 11 Cases, including on potential intercompany claims. Cravath reviewed and commented on an investigation conducted by an independent accounting firm on the historical allocation of taxes and tax attributes among the various Debtors that was commissioned to assist in the interpretation of the Tax Sharing Agreement.

46.      Cravath researched and prepared an analysis of a proposal for EFH to "check the box" of some or all of its subsidiaries, reviewing the legal basis and authority for EFH to do so.

6.      **Oncor Sale Process (Matter No. 6)**

    Fees: $284,922.00      Total Hours: 277.30

47.      Early in the Fee Period, Cravath completed its negotiation on behalf of EFIH with Kirkland and the other Conflicts Matter counsel on the bid procedures order, which the Court approved by order entered January 14, 2015 (ECF 3295]. In connection with the submission of the order for the Court's approval, Cravath arranged a formal Board meeting with EFIH's Disinterested Manager, made a presentation on the issues arising in connection with the proposed bid procedures, and advised the Disinterested Manager regarding the order. Cravath participated in preparing a board resolutions and a joint statement with the other Conflicts Matter counsel in support of the bid procedures order for filing with the Court.

48.      Once the bid procedures order was entered, Cravath participated with Kirkland and the other Conflicts Matters counsel and with EFIH's Conflict Matters financial adviser in the analysis and review of various acquisition structures that could generate more value for distribution to parties in interest. Cravath spent substantial time reviewing a real estate investment trust (REIT) structure for the transaction, conducting tax, regulatory and merger & acquisition structure research and analysis and preparing and presenting to EFIH's Disinterested Manager the results and participating with him in consideration of the risks and benefits and strategies that might be pursued.

49.      Cravath accompanied EFIH's Disinterested Manager in a meeting with manager of Oncor Electric Delivery Co. to understand from Oncor's perspective the issues that

would be raised by an acquisition transaction, including under a REIT structure, and researched

the legal and contractual issues that could affect such a transaction.

50.    Cravath reviewed and analyzed bids as they were received and provided

comments to Kirkland on the draft documents for inclusion in responses to bidders. Similarly,

Cravath participated in negotiating sessions with the bidders to protect the interests of the EFIH

estate.

51.    Cravath continued during the Fee Period to consult with and advise EFIH's

Disinterested Manager on the bid procedures substance and process and worked with EFIH's

financial adviser to assist in the evaluation of bids and alternative strategies to realize the

highest and best alternative for disposition of the estate's interest on Oncor.

52.    Cravath kept informed of the conduct of the bid process in part through

participation in semi-weekly conference calls hosted by the Debtors' financial adviser.

**7.    Financing (Matter No. 7)**

Fees: $0.00            Total Hours: 0.00

53.    Cravath did not perform any services during the Fee Period related solely to

financing matters.

**8.    Employment and Fee Applications (Matter No. 8)**

Fees: $46,320.00        Total Hours: 38.60

34.    Cravath prepared its own employment application, including declarations,

which required, in addition to ordinary conflicts checking for which Cravath did not charge

EFIH, discussions with Kirkland, other independent counsel, and the Office of the

United States Trustee about the appropriate scope of additional "connections" research,

performed the additional research, and evaluated and disclosed the results. Cravath also

worked with other independent counsel and Kirkland to ensure that scope of Cravath's

engagement was consistent with the Court's prior orders and with each other counsel's scope of engagement. The application was filed December 16, 2014 and was granted after the Fee Period. *See* **Exhibit B**.

35.     During the Fee Period, Cravath completed its work on its employment application and prepared a supplemental declaration to address questions and concerns raised by the Office of the United States Trustee, after consultation with the other Conflicts Matters counsel to assure consistency among the various estates.

36.     Cravath also assisted EFIH's Conflicts Matters financial adviser Goldin Associates LLC in completing its employment application.

37.     Cravath prepared for and attended the hearing on its application and Goldin Associates' applications, both of which this Court granted.

38.     During the Fee Period, Cravath prepared and filed its First Interim Application for Compensation and Reimbursement.

39.     During the Fee Period, Cravath timely prepared and submitted four monthly budget and staffing plans to its client and to the Fee Review Committee, all of which were approved.

### 9.     Non-Working Travel (Matter No. 9)

Fees: $44,100.00          Total Hours: 79.80

40.     During the Fee Period, Cravath attorneys traveled to and from Chicago for a meeting at Kirkland with Kirkland and other Conflicts Matters counsel on tax issues, a meeting at Proskauer Rose LLP, Conflicts Matters counsel to EFH, to negotiate intercompany claims, to a two-day Board meeting in Dallas, and to and from two hearings in Wilmington. Fees in this Matter Category are charged at 50% of regular hourly rates.

10.    **Claims Litigation (Matter No. 10)**

    Fees: $0.00    Total Hours: 0.00

  41.  Cravath did not perform any services during the Fee Period related solely to claims litigation matters.

    **VII.  Actual and Necessary Expenses Incurred by Cravath**

  42.  As summarized in Exhibit F and as set forth in Exhibit I, Cravath has incurred a total of $29,953.91 in expenses on behalf of EFIH during the Fee Period. These charges are intended to reimburse Cravath's direct costs that are not included in Cravath's hourly billing rates. Only clients who actually use services of the types set forth in Exhibit I of this Fee Application are separately charged for such services.

 **VIII.  Cravath's Requested Compensation and Reimbursement Should be Allowed**

  43.  As explained below, Cravath submits that the services for which it seeks compensation in this Fee Application were, at the time provided, necessary for and beneficial to the EFIH and its estate and were provided to protect and preserve the EFIH estate. Cravath further believes that it performed the services for EFIH economically, effectively, and efficiently, and they benefited EFIH and its constituents. Cravath further submits that the compensation requested is reasonable in light of the nature, extent, and value of such services to EFIH and its estate and all parties in interest. Accordingly, Cravath submits the compensation sought in this Fee Application is warranted and should be approved.

**A.  Reasonable and Necessary Fees Incurred in Providing Services to the Debtors**

  44.  Section 331 of the Bankruptcy Code authorizes interim compensation of professionals and incorporates the substantive standards of section 330 of the Bankruptcy Code to govern the Court's award of interim compensation. Section 330(a)(1) of the Bankruptcy Code provides that a court may award a professional employed under section

327 of the Bankruptcy Code "reasonable compensation for actual necessary services rendered

… and reimbursement for actual, necessary expenses." Section 330(a)(3) sets forth the criteria

for such an award:

> In determining the amount of reasonable compensation to be awarded, the court should consider the nature, extent, and the value of such services, taking into account all relevant factors, including—
>
> (A)     the time spent on such services;
>
> (B)     the rates charged for such services;
>
> (C)     whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
>
> (D)     whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;
>
> (E)     with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and
>
> (F)     whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. § 330(a)(3).

45.     As analyzed below, Cravath submits the elements governing awards of

compensation justify the allowance requested.

### 1.     The Time and Labor Required

46.     During the Fee Period, Cravath's partners, associates, and paraprofessionals

spent 1624.80 hours in providing professional services for EFIH. Cravath attempted to

coordinate its efforts with Kirkland to prevent duplication of efforts and thereby not spend

more time than required. Cravath required this amount of time to research and analyze the

numerous, complex issues in the Chapter 11 Cases, to advise its client with respect to the issues, to participate in negotiations with other parties in interest in these Chapter 11 Case, and to perform the other tasks described above.

**2.      The Rates Charged for Such Services**

47.      During the Fee Period, Cravath's hourly billing rates ranged from $880.00 to $1,200.00 per hour for partners, from $510.00 to $800.00 for regular associates, from $520.00 to $1035.00 for senior and specialist associates, and from $235.00 to $325.00 for paraprofessionals, as disclosed in its employment application. Based on the recorded hours expended by Cravath's attorneys and paraprofessionals, the average hourly billing rate for Cravath's services was $922.96.

48.      Cravath's hourly rates are set at a level designed to compensate Cravath fairly for the work of its attorneys and paraprofessionals and to cover certain fixed and routine overhead expenses. Hourly rates vary with the experience and seniority of the individuals assigned. These hourly rates are subject to periodic adjustments to reflect economic and other conditions and are consistent with the rates charged elsewhere.

49.      The hourly rates and corresponding rate structure that Cravath charges in this case are equivalent to or less than the hourly rates and corresponding rate structure that Cravath charges for similar complex corporate, securities, litigation, and restructuring matters, whether in court or otherwise, regardless of whether a fee application is required.

**3.      The Necessity of the Services and the Benefit to the Estate**

50.      The services Cravath provided to EFIH have conferred substantial benefit on EFIH's estate and are necessary because EFIH needs independent counsel to advise and represent it on Conflict Matters. Without independent counsel, EFIH would find it difficult, if not impossible, to protect its interests against the other Debtors in the Chapter 11 Cases.

4. **The Reasonableness of the Time Spent, Based on the Complexity, Importance, Nature of the Issues**

51. Cravath performed the services in a reasonable amount of time, given the complexity of the issues involved and the various intercompany legal issues facing EFIH. Cravath's detailed time records show that the time spent on each of the matters was necessary and appropriate to advising and representing EFIH on conflict matters.

5. **The Experience, Reputation, and Ability of the Attorneys Providing Services**

52. Cravath attorneys have achieved a high degree of expertise and positive reputations in their respective fields. Cravath's Corporate (including its Merger & Acquisition and Restructuring Practices), Litigation, and Tax Departments frequently receive recognition for their skill and achievements, and Cravath is frequently cited as one of the leading U.S. law firms in these fields.

6. **Customary Compensation**

53. Cravath relies on the Court's experience and knowledge with respect to the compensation awards in similar cases as well as for other counsel in these Chapter 11 Cases. In addition, as noted above, the compensation Cravath seeks in this Fee Application is comparable to the compensation it would have sought for comparable work outside of a chapter 11 case.

54. Cravath submits that the compensation requested is reasonable under all the factors considered under sections 330 and 331 of the Bankruptcy Code and that the factors justify the allowance in full of Cravath's compensation and reimbursement request.

B. **Reasonable and Necessary Expenses Incurred in Providing Services to the Debtors**

55. For the Fee Period, Cravath requests reimbursement of $29,953.91 for reasonable and necessary costs and expenses incurred on behalf of EFIH.

56.     Cravath's normal billing rates do not take these costs and expenses into consideration. Rather, Cravath bills each cost and expense to the applicable client. Because of the disparity between the different clients' requirements for expenses such as travel, computer-assisted research, teleconference services, postage, courier and messenger services, and photocopying, it is difficult to charge costs and expenses fairly and equitably by including them in Cravath's ordinary billing rates. Accordingly, Cravath generally charges each client for such costs and expenses separately, in each case, at Cravath's costs.

57.     Cravath does not include the amortization of the cost of any investment, equipment, or capital outlay in its charges for these services.

58.     Under Rule 2016-2 of the Local Bankruptcy Rules, Cravath represents that its rate for duplication for black-and-white copies is $0.10 per page and for color copies is $0.50 per page, there is no charge for telecopier transmissions, and there is no surcharge for computer-assisted research.

59.     Any services billed by a third-party vendor, with the exception of certain computer-assisted research charges, are charged to EFIH in the amount billed to and paid by Cravath. Like many large law firms, Cravath has negotiated a special arrangement with computerized research companies under which Cravath pays a flat rate monthly fee for computerized research services. Consistent with its general policy of billing out-of-pocket expenses only to clients for which the use of such services is required, Cravath separately charges each client for computer-assisted research. To account for such charges while passing through Cravath's cost savings resulting from its special arrangements, Cravath charges those clients for whom such services are required at a reduced rate that is less than the rate charged by the computerized research companies to the general public for such services. These charges are intended to cover Cravath's direct costs for computerized research.

60.     Cravath has made reasonable efforts to minimize its costs and expenses in the Chapter 11 Cases. Each of the costs and expenses Cravath has incurred in providing professional services to EFIH was necessary, reasonable, and justified under the circumstances to serve the needs of EFIH and its estate.

### IX. Statement by Cravath Under ¶ C(5) of the U.S. Trustee Guidelines

61.     Cravath did not agree to any variations from, or alternatives to, its standard or customary billing rates, fees or terms for services pertaining to the engagement that were provided during the Fee Period, except as required by the U.S. Trustee Guidelines and the Fee Committee guidelines.

62.     Cravath did not discuss with EFIH the reason for the 15% variation between its budget and actual fees for February 2015. The reason was principally that work on Intercompany Claims and on the Oncor Sale Process was delayed from January to February.

63.     None of the professionals included in this Application varied their hourly rate based on the geographic location of the Chapter 11 Cases.

64.     The Application does not include time or fees related to reviewing or revising time records or preparing, reviewing, or revising invoices.

65.     The Application does not include time or fees for reviewing time records to redact any privileged or other confidential information.

66.     The Application does not include any rate increases since retention.

### X.  Reservation of Rights and Notice

67.     It is possible that some professional time expended or expenses incurred during the Fee Period are not reflected in the Fee Application. Cravath reserves the right to include such amounts in future fee applications. EFIH has provided notice of this Fee Application to: (a) the U.S. Trustee; (b) counsel to the agent of the EFIH First Lien DIP

Facility; (c) counsel to the agent of the TCEH DIP Facility; (d) counsel to the Creditors'

Committees; and (e) the Fee Committee (collectively, the "Notice Parties").

68.     Under the Interim Compensation Order and the Fee Committee Order, (a) any

Notice Party (other than the Fee Committee) who wishes to object to the Fee Application

must file its objection with the Court, with a copy to Chambers, and serve it on Cravath and

the Notice Parties so that it is actually received on or before August 14, 2015 at 4:00 p.m.

(Eastern Time) and (b) any member of the Fee Committee that wishes to object to the Fee

Application must comply with the procedures set forth in the Fee Committee Order and if

such member wishes to object to the Fee Application after complying with such procedures,

such member must file its objection with the Court, with a copy to Chambers, and serve it on

Cravath and the Notice Parties, within the time specified under the Fee Committee Order.

## XI. No Prior Request

69.     No prior application for the relief requested by this Fee Application has been

made to this or any other court.

WHEREFORE, Cravath respectfully requests that the Court enter an order (a) awarding

Cravath interim compensation for professional and paraprofessional services provided during

the Fee Period in the amount of $1,499,619.50, and reimbursement of actual, reasonable and

necessary expenses incurred in the Fee Period in the amount of $29,953.91; (b) authorizing and

directing EFIH to remit payment to Cravath for such fees and expenses; and (c) granting such

other relief as is appropriate under the circumstances.

DATED: June 15, 2015

*/s/ Michael A. Paskin*

Michael A. Paskin
   (mpaskin@cravath.com)

CRAVATH, SWAINE & MOORE LLP
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
+1 (212) 474-1000

*Independent Counsel for Energy Future*
*Intermediate Holding Company LLC*