## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) | Case No. 14-10979 (CSS) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | **Objection Deadline: July 8, 2015 at 4:00 p.m.** |
| | ) | |

## SUMMARY COVER SHEET TO THE THIRD INTERIM FEE APPLICATION OF KIRKLAND & ELLIS LLP AND KIRKLAND & ELLIS INTERNATIONAL LLP, ATTORNEYS FOR THE DEBTORS AND DEBTORS IN POSSESSION, FOR THE PERIOD FROM JANUARY 1, 2015 THROUGH AND INCLUDING APRIL 30, 2015

In accordance with the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Bankruptcy Rules"), Kirkland & Ellis LLP and Kirkland & Ellis International LLP (collectively, "Kirkland"), attorneys for the above-captioned debtors and debtors in possession (collectively, the "Debtors"), submit this summary (this "Summary") of fees and expenses sought as actual, reasonable, and necessary in the third interim fee application to which this Summary is attached (the "Fee Application")[2] for the period from January 1, 2015 through and including April 30, 2015 (the "Fee Period").

Kirkland submits the Fee Application as an interim fee application in accordance with the *Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Professionals* [D.I. 2066] (the "Interim Compensation Order") and the *Stipulation and Order Appointing a Fee Committee* [D.I. 1896] (the "Fee Committee Order").

---

[1]     The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, which are being jointly administered, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

[2]     Capitalized terms used but not otherwise defined in this Summary shall have the meanings ascribed to such terms in the Fee Application.

| General Information | |
|---|---|
| Name of Applicants: | Kirkland & Ellis LLP and Kirkland & Ellis International LLP |
| Authorized to Provide Services to: | Energy Future Holdings Corp., *et al.* |
| Petition Date: | April 29, 2014 |
| Date of Order Authorizing the Debtors to Retain Kirkland: | September 16, 2014, *nunc pro tunc* to April 29, 2014 [D.I. 2052] |

| Summary of Fees and Expenses Sought in the Fee Application[3] | |
|---|---|
| Period for Which Compensation and Reimbursement is Sought in the Fee Application: | January 1, 2015 through and including April 30, 2015 |
| Voluntary Fee Waiver and Expense Reduction in this Fee Period: | Reduced fees by $919,688.50 and expenses by $188,419.92[4] |
| Amount of Compensation Sought as Actual, Reasonable, and Necessary for the Fee Period: | $28,712,575.50 |
| Amount of Expense Reimbursement Sought as Actual, Reasonable, and Necessary for the Fee Period: | $3,047,572.82 |

---

[3]    Of the amount of fees and expenses sought in the Fee Application, as of the date hereof, $5,742,515.10 represents the amount for which Kirkland has not sought compensation in the monthly fee statements it has filed for the following periods:  January 1, 2015 to January 31, 2015 [D.I. 3941] (the "January Monthly Fee Statement"), February 1, 2015 to February 28, 2015 [D.I. 4068] (the "February Monthly Fee Statement"), March 1, 2015 to March 31, 2015 [D.I. 4628] (the "March Monthly Fee Statement"), and April 1, 2015 to April 30, 2015, filed contemporaneously herewith, (the "April Monthly Fee Statement" and, collectively with the other above-referenced fee statements, the "Monthly Fee Statements").

The total fees and expenses sought in the Fee Application include (a) fees for work performed and expenses incurred for a specific Debtor's estate totaling $5,595,696.20 (comprised of $5,581,122.50 in fees and $14,573.70 in expenses) (the "Direct Benefit Fees") and (b) fees for work performed and expenses incurred for all Debtors' estates totaling $26,164,452.11 (comprised of $23,131,453.00 in fees and $3,032,999.11 in expenses) (the "Collective Benefit Fees").  Specifically, the Direct Benefit Fees include fees and expenses of (a) $292,449.70 for the EFH Corp. Debtors, (b) $3,165,145.10 for the EFIH Debtors, and (c) $2,138,101.40 for the TCEH Debtors.  The Collective Benefit Fees include fees and expenses of (a) $2,079,890.19 for the EFH Corp. Debtors, (b) $14,369,975.93 for the EFIH Debtors, and (c) $9,714,585.99 for the TCEH Debtors.

[4]    Kirkland voluntarily reduced its fees and expenses by the amounts described above and consequently does not seek payment of these fees and expenses in this Fee Application.

Total Compensation and Expense
Reimbursement Requested for the Fee Period:                $31,760,148.31

**_Rate Increases Applicable to the Fee Period_**

Total Amount of Compensation
Sought for the Fee Period, Calculated
Using Rates as of the Date of Retention:                  $27,213,935.00

**_Summary of Past Requests for Compensation and Prior Payments_**[5]

Total Amount of Compensation Previously Requested
Pursuant to the Interim Compensation Order to Date:       $79,397,430.00[6]

Total Amount of Expense Reimbursement Previously
Requested Pursuant to the Interim Compensation Order to Date:   $6,280,494.75

Total Compensation Approved
Pursuant to the Interim Compensation Order to Date:       $24,511,927.32

Total Amount of Expense Reimbursement Approved
Pursuant to the Interim Compensation Order to Date:       $1,122,860.04

Total Allowed Compensation Paid to Date:                  $24,511,927.32

Total Allowed Expenses Paid to Date:                      $1,122,860.04

Compensation Sought in this Fee Application Already Paid
Pursuant to the Interim Compensation Order But Not Yet    $11,732,541.60
Allowed:

Expenses Sought in this Fee Application Already Paid
Pursuant to the Interim Compensation Order But Not Yet    $818,464.94
Allowed:

---

[5]  Kirkland filed the January Monthly Fee Statement on March 20, 2015 [D.I. 3941], the February Monthly Fee
     Statement on April 6, 2015 [D.I. 4068], the March Monthly Fee Statement on May 29, 2015 [D.I. 4628], and
     the April Monthly Fee Statement contemporaneously herewith.  As of the date hereof, Kirkland has received
     payments totaling $12,551,006.54 relating to compensation and expenses sought in the Monthly Fee
     Statements.

[6]  The relief requested in Kirkland's second interim fee application [D.I. 3569] is still pending and not yet
     approved by the Court.

Dated:  June 15, 2015
      New York, New York

*/s/ Edward O. Sassower*

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Edward O. Sassower, P.C. (admitted *pro hac vice*)
Stephen E. Hessler (admitted *pro hac vice*)
Brian E. Schartz (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022-4611
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900
Email:    edward.sassower@kirkland.com
    stephen.hessler@kirkland.com
    brian.schartz@kirkland.com

-and-

James H.M. Sprayregen, P.C. (admitted *pro hac vice*)
Marc Kieselstein, P.C. (admitted *pro hac vice*)
Chad J. Husnick (admitted *pro hac vice*)
Steven N. Serajeddini (admitted *pro hac vice*)
300 North LaSalle
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200
Email:    james.sprayregen@kirkland.com
    marc.kieselstein@kirkland.com
    chad.husnick@kirkland.com
    steven.serajeddini@kirkland.com

*Co-Counsel to the Debtors and Debtors in Possession*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) | Case No. 14-10979 (CSS) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**THIRD INTERIM FEE APPLICATION OF
KIRKLAND & ELLIS LLP AND KIRKLAND & ELLIS INTERNATIONAL
LLP, ATTORNEYS FOR THE DEBTORS AND DEBTORS IN POSSESSION, FOR
THE PERIOD FROM JANUARY 1, 2015 THROUGH AND INCLUDING APRIL 30, 2015**

Kirkland & Ellis LLP and Kirkland & Ellis International LLP (collectively, "Kirkland"),

attorneys for the above-captioned debtors and debtors in possession (collectively, the "Debtors"),

hereby submits its third interim fee application (the "Fee Application") for allowance of

compensation for professional services provided in the amount of $28,712,575.50 and

reimbursement of actual and necessary expenses in the amount of $3,047,572,.82 that Kirkland

incurred for the period from January 1, 2015 through and including April 30, 2015 (the "Fee

Period"). In support of this Fee Application, Kirkland submits the declaration of Edward O.

Sassower, the president of Edward O. Sassower, P.C., a partner of Kirkland & Ellis LLP, and a

partner of Kirkland & Ellis International LLP, (the "Sassower Declaration"), which is attached

hereto as **Exhibit A** and incorporated by reference. In further support of this Fee Application,

Kirkland respectfully states as follows.[2]

---

[1]   The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, for which joint administration has been granted, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

[2]   Capitalized terms used but not otherwise defined in this Fee Application shall have the meanings ascribed to such terms in the *Summary Cover Sheet to the Third Interim Fee Application of Kirkland & Ellis LLP and*

## Jurisdiction

1.      The United States Bankruptcy Court for the District of Delaware (the "Court")
has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended
Standing Order of Reference from the United States District Court for the District of Delaware*,
dated February 29, 2012.  This matter is a core proceeding within the meaning of 28 U.S.C.
§ 157(b)(2), and Kirkland consents pursuant to rule 9013-1(f) of the Local Rules of Bankruptcy
Practice and Procedure of the United States Bankruptcy Court for the District of Delaware
(the "Local Bankruptcy Rules") to the entry of a final order by the Court in connection with this
Fee Application to the extent that it is later determined that the Court, absent consent of the
parties, cannot enter final orders or judgments in connection herewith consistent with Article III
of the United States Constitution.

2.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The bases for the relief requested herein are sections 330 and 331 of title 11 of the
United States Code (the "Bankruptcy Code"), rule 2016 of the Federal Rules of Bankruptcy
Procedure (the "Bankruptcy Rules"), rules 2016-1 and 2016-2 of the Local Bankruptcy Rules,
the *Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses
for Professionals* [D.I. 2066] (the "Interim Compensation Order") and the *Stipulation and Order
Appointing a Fee Committee* [D.I. 1896] (the "Fee Committee Order").[3]

---

*Kirkland & Ellis International LLP, Attorneys for the Debtors and Debtors in Possession, for the Period from January 1, 2015 Through and Including April 30, 2015.*

[3]      On October 3, 2014, October 7, 2014, December 1, 2014, March 9, 2015, and June 9, 2015, the Fee Committee (as defined herein) distributed guidelines to those professionals retained in these chapter 11 cases regarding a number of topics, including, expense reimbursement, fee review criteria, and the contents of interim fee applications (collectively, the "Fee Committee Guidelines").

**Background**

4.      On April 29, 2014 (the "Petition Date"), each of the Debtors filed a voluntary petition with the Court under chapter 11 of the Bankruptcy Code.  The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  The Court has entered a final order for joint administration of these chapter 11 cases [D.I. 849].  The Court has not appointed a trustee.  The Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") formed an official committee of unsecured creditors of Energy Future Competitive Holdings Company LLC ("EFCH"), Texas Competitive Electric Holdings Company LLC ("TCEH"), the direct and indirect Debtor subsidiaries of EFCH and TCEH, and EFH Corporate Services Company (the "TCEH Creditors' Committee") on May 13, 2014 [D.I. 420] and an official committee of unsecured creditors of Energy Future Holdings Corp. ("EFH Corp."), Energy Future Intermediate Holding Company, LLC ("EFIH"), EFIH Finance, Inc., and EECI, Inc. (the "EFH Creditors' Committee" and, together with the TCEH Creditors' Committee, the "Official Committees") on October 27, 2014 [D.I. 2570].  Further information regarding the Debtors' business operations and capital structure is set forth in the declaration of Paul Keglevic in support of the Debtors' first day motions [D.I. 98].

5.      On September 16, 2014, the Court entered the Interim Compensation Order, which sets forth the procedures for interim compensation and reimbursement of expenses for all retained professionals in these cases.

6.      Given the size and complexity of the Debtors' chapter 11 cases, the U.S. Trustee, the Debtors, and the TCEH Creditors' Committee agreed to recommend that the Court appoint a fee committee to review and report on, as appropriate, interim and final fee applications filed by all retained professionals in accordance with sections 328, 330, and 331 of the Bankruptcy Code

3

and the Interim Compensation Order (the "Fee Committee").  On August 21, 2014, the Court

entered the Fee Committee Order, appointing the Fee Committee and establishing the procedures

governing the Fee Committee's review of the Debtors' retained professionals' applications for

compensation and the resolution of any concerns raised during such review.

### Preliminary Statement

7.       During the Fee Period, the Debtors, with Kirkland's assistance, have made

significant progress towards confirming a value-maximizing plan of reorganization.  As more

fully described below, during the Fee Period, Kirkland assisted the Debtors' efforts on plan-

related and other workstreams, including: (a) developing, negotiating, and ultimately filing a

proposed plan of reorganization, a related disclosure statement, and a scheduling motion for the

disclosure statement and confirmation proceedings (the "Plan," the "Disclosure Statement," and

the "Scheduling Motion," respectively); (b) significantly advancing the auction process related to

the sale of the economic interests in Oncor Electric Delivery Company LLC (the "EFH-EFIH

Transaction"); (c) advancing various litigation matters, including multiple interest rate and

makewhole workstreams and, importantly, completing Legacy Discovery (resulting in the

submission of over 5 million documents); and (d) advising the Debtors in connection with their

business operations, including by, among other things, reviewing contracts and vendors issues

and assisting in the claims reconciliation process.

8.       ***Filing Plan, Disclosure Statement, and Scheduling Motion.***  On April 14, 2015,

the Debtors filed the Plan, Disclosure Statement, and Scheduling Motion.  The Plan was the

result of months of efforts by the Debtors, including their disinterested directors and managers

and their respective advisors.  In advance of filing the Plan, the Disclosure Statement, and the

Scheduling Motion, the Debtors, with the advice of Kirkland and their other advisors, circulated

draft materials to their various major creditor constituencies and actively solicited their feedback.

Consequently, the filed Plan reflects, in part, the Debtors' attempts to coalesce the restructuring goals of their various major creditor constituencies into a value-maximizing, global restructuring that facilitates an expeditious exit from chapter 11 and avoids, wherever possible, time-consuming and value-destructive litigation.

9.    Reflecting the Debtors' desire to pursue a value-maximizing transaction whether such transaction ultimately takes the form contemplated by the Plan or by modifications or alternatives to the Plan, the Plan provides the Debtors with the flexibility to pursue other restructuring alternatives that may better maximize the value of the Debtors' estates. Consequently, during the Fee Period, Kirkland and the Debtors supported the efforts of various constituencies to explore opportunities to convert Oncor to a real estate investment trust (or "REIT") structure.  During the Fee Period, Kirkland, on behalf of the Debtors, engaged in a number of telephonic and in person conferences and diligence efforts to assist such creditor constituencies in developing a potential REIT alternative.

10.    Like the Plan and the Disclosure Statement, the Scheduling Motion sought to bring direction to these chapter 11 cases.  On May 18, 2015, the Court entered an amended order with respect to the Scheduling Motion (the "Scheduling Order").[4]  The Scheduling Order, which reflected consensus with a number of creditor constituencies, (a) established July 20, 2015 as the hearing date to consider approval of the Disclosure Statement; (b) set June 25, 2015 as the date for a scheduling conference regarding the plan confirmation timeline; (c) approved a number of related discovery protocols and dates; and (d) established the terms of Plan mediation between the Debtors and the TCEH creditor constituencies.

---

[4]    *Order (A) Scheduling Certain Hearing Dates and Deadlines, (B) Establishing Certain Protocols in Connection with the Approval of Debtors' Disclosure Statement and (C) Establishing the Terms Governing Mediation* [D.I. 4497] (the "Scheduling Order").

5

11.     ***Furthering the EFH-EFIH Transaction Process***.  During the Fee Period, the Debtors substantially advanced the auction process for the EFH-EFIH Transaction.  On January 14, 2015, after months of focused discussions and negotiations between the Debtors and various constituencies, the Court entered an order approving the bidding procedures in connection with the EFH-EFIH Transaction.[5]  Following entry of the Bidding Procedures Order, the Debtors immediately began engaging in diligence sessions with potential bidders and discussing the terms of a potential transaction.  During the Fee Period, the Debtors received first and second round bids from bidders in the auction process, evaluated these bids, and continued negotiating transaction documents.

12.     ***Standing Motions and TCEH Stipulation.***  The Debtors and Kirkland have also devoted massive time and resources to producing discovery materials related to Legacy Discovery, the Debtors' most significant discovery workstream.[6]  The Legacy Discovery Protocol addresses a number of potential prepetition claims that certain TCEH creditors and the Official Committees may seek to prosecute.  During this Fee Period, the Debtors, with the assistance of Kirkland, issued notices of substantial completion (on January 12, 2015) and full completion (February 9, 2015) and completing privilege review and associated productions on March 27, 2015 after reviewing over 5 million pages.  As a result of these efforts, the TCEH Official Committee and the ad hoc group of TCEH unsecured noteholders (the "TCEH Ad Hoc

---

[5]     *Order (A) Approving Revised Bidding Procedures, (B) Scheduling an Auction and Related Deadlines and Hearings, and (C) Approving the Form and Manner of Notice Thereof* [D.I. 3295] (the "Bidding Procedures Order").

[6]     The *Order Establishing Discovery Procedures in Connection with Legacy Discovery of Energy Future Holdings Corporation, its Affiliates, and Certain Third Parties and Other Related Matters* [D.I. 1832] outlines the procedures (the "Legacy Discovery Protocol") that govern discovery requests in connection with a number of the Debtors' prepetition transactions (collectively, the "Legacy Discovery")

Unsecured Group") submitted to the Debtors the list of claims for which they may seek standing on April 30, 2015.

13.    In addition, Legacy Discovery provided the basis for the motions filed by the Official Committees and the TCEH Unsecured Ad Hoc Group seeing standing to prosecute claims against the ad hoc group of TCEH first lien creditors, in advance of the deadline in the TCEH Cash Collateral Order (such ad hoc group, the "TCEH First Lien Group" and such motions, the "Standing Motions").  Before and after the filing of the Standing Motions, the Debtors, with the assistance of Kirkland, engaged in discussions with the TCEH creditor constituencies regarding the requested relief and the potential to resolve such relief through the Plan (which contemplates a settlement of such claims).

14.    These discussions, in large part, led to a stipulation between the Debtors and every major TCEH creditor constituency that addressed a number of plan process issues (the "TCEH Stipulation").  Among other things, the TCEH Stipulation adjourns the litigation on the Standing Motions and allows for the Debtors and the TCEH creditor constituencies to continue negotiations of plan distributions amongst senior and junior TCEH creditors within the Plan in formal mediation agreed to by and among the parties.  This stipulation also allowed time for the TCEH junior creditors to develop alternative restructuring proposals.  Ultimately, the TCEH Stipulation removed the prospect of imminent litigation and allowed the Debtors to focus on advancing a value-maximizing restructuring.

15.    ***Advancing Interest Rate and Makewhole Litigation***.  In addition, during the Fee Period, Kirkland assisted the Debtors in connection with various makewhole and interest rate litigation workstreams:

- ***EFIH First Lien Settlement***. Kirkland assisted the Debtors with managing the appeal, following the United State District Court for the District of Delaware's

7

affirmation of this Court's approval,[7] of the EFIH First Lien Settlement by the indenture trustee for the EFIH first lien notes.[8]

- ***EFIH First Lien Makewhole Trial***. Kirkland also assisted the Debtors in advancing the EFIH first lien makewhole trial towards a conclusion. On February 12, 2015, the Debtors and the EFIH first lien indenture trustee filed cross-motions for summary judgment.[9] The Court held a hearing on the summary judgment motions and entered an order approving the EFIH Debtors' summary judgment motion except with respect to the issue of whether there was cause to lift the automatic stay to permit the rescission of the automatic acceleration of the EFIH first lien debt upon the Petition Date.[10] In addition, the Court held a three-day hearing on the automatic stay issue from April 20, 2015 to April 22, 2015.

- ***EFIH Second Lien Notes***. On March 13, 2015, the indenture trustee for the EFIH second lien notes filed an amended complaint seeking a secured claim for its alleged makewhole premium based on the repayment of outstanding principal and accrued interest on the EFIH second lien notes.[11] On April 29, 2015, the Debtors filed an answer to this complaint.[12] The Debtors and the indenture trustee for the EFIH second lien notes are currently discussing a trial schedule.

- ***EFIH Unsecured Notes***. With respect to the EFIH unsecured notes, the indenture trustee for the EFIH unsecured notes filed a motion seeking to dismiss the Debtors' makewhole action against the EFIH unsecured notes on February 6, 2015.[13] Kirkland assisted the Debtors in preparing arguments for a hearing held by the Court on May 4, 2015 whereby the Debtors and the indenture trustee for the EFIH unsecured notes presented arguments on this issue.

---

[7]   *See Order*, Case No. 1:14-cv-00723-RGA (D. Del. Feb. 19, 2015) [D.I. 50].

[8]   *See Notice of Appeal to the United States Court of Appeals for the Third Circuit*, Case No. 1:14-cv-00723-RGA (D. Del. Mar. 6, 2015) [D.I. 51]; *Delaware Trust Co. v. Energy Future Intermediate Holding Co., LLC*, Case No. 15-1591 (3d Cir.) (the appeal to the Third Circuit is currently pending).

[9]   *See EFIH Debtors' Cross-Motion for Summary Judgment*, Case No. 14-50363-CSS (Bankr. D. Del. Feb. 13, 2015) [Adversary D.I. 175]; *Plaintiff-Trustee's Motion for Summary Judgment*, Case No. 14-50363-CSS (Bankr. D. Del. Feb. 13, 2015) [Adversary D.I. 178].

[10]  *See Order*, Adv. Proc. No 14-50363-CSS (Bankr. D. Del. Mar. 26, 2015) [Adversary D.I. 246].

[11]  *See Amended Complaint for Damages and Declaratory Relief*, Case No. 14-50405-CSS (Bankr. D. Del. Apr. 13, 2015) [Adversary D.I. 37].

[12]  *See Answer to Amended Complaint for Damages and Declaratory Relief*, Case No. 14-50405-CSS (Bankr. D. Del. Apr. 29, 2015) [Adversary D.I. 39].

[13]  *See UMB Bank, N.A.'s Motion to Dismiss the Complaint*, Case No. 14-51002-CSS [Adversary D.I. 7].

16.     ***Managing Potential Plan Distributions.***   During this Fee Period, Kirkland also assisted the Debtors with their efforts to resolve claims through the Court's claims process, with the goal of providing additional clarity around potential recoveries for stakeholders.   Among other things, Kirkland advised the Debtors in connection with:  (a) filing nine omnibus claims objections that, in the aggregate, seek to disallow and expunge over 1,936 claims valued at approximately $129 billion, and filed a notice of proposed order seeking to establish July 30, 2015, as the bar date for unmanifested asbestos claims; and (b) assessing approximately 12,000 executory contracts for assumption and rejection purposes.

17.     ***Preserving Operational Value.***   Further, Kirkland continued to advise the Debtors for those actions necessary to preserve the long-term value of the Debtors' operations. Specifically, the Debtors, with Kirkland's assistance, successfully obtained Court approval to, among other things, use $750 million in cash under the EFIH first lien DIP facility to repay outstanding principal and accrued interest on the EFIH second lien notes, producing estimated rate savings of approximately $66 million to $105 million in interest expense savings over the course of these chapter 11 cases.

18.     In short, and as described above, Kirkland spent considerable time during the Fee Period working with the Debtors to advance these chapter 11 cases toward confirmation of a value-maximizing plan.   In light of these undertakings, and as more fully set forth herein, the Debtors' respectfully request that the Court approve this Fee Application.

## Case Status Summary

19.     During the Fee Period, the Debtors made significant progress in their ultimate goal of bringing direction to these chapter 11 cases and ultimately maximizing the value of their estates.   In addition, on June 1, 2015, over the objections, joinder of objections, and response of seven parties-in-interest and following a contested hearing involving such parties-in-interest, the

9

Court approved the Debtors' request to extend their exclusive period to file a plan of reorganization to October 29, 2015, and to solicit votes on such plan of reorganization to December 29, 2015, both the statutory maximum.[14]  As discussed at the June 1, 2015 hearing, the coming months are critical in these chapter 11 cases.  *First*, the Debtors are in the early stages of Plan mediation with the TCEH creditor constituencies.  *Second*, as discussed at the June 1, 2014 hearing, the Debtors have been, and continue to be, engaged in discussions with creditor constituencies regarding potential modifications or alternatives to the proposed Plan structure. *Third*, the Debtors remain in ongoing negotiations with various bidders regarding the EFH-EFIH Transaction.  *Fourth*, the Debtors, after reviewing and resolving discovery and deposition requests related to the Disclosure Statement, are advancing towards a scheduled July 20, 2015 hearing to consider approval of the Disclosure Statement.  *Fifth*, the Standing Motions are scheduled to be heard by the Court on July 9, 2015.  The Debtors believe that the progress made during and after this Fee Period and in these chapter 11 cases will lead to the timely confirmation of a value-maximizing plan of reorganization.

**The Debtors' Retention of Kirkland**

20.    On September 16, 2014, the Court entered the *Order Authorizing the Retention and Employment of Kirkland & Ellis LLP and Kirkland & Ellis International LLP as Attorneys for the Debtors and Debtors in Possession Effective* Nunc Pro Tunc *to the Petition Date* [D.I. 2052] (the "Retention Order"), attached hereto as **Exhibit B** and incorporated by reference. The Retention Order authorizes the Debtors to compensate and reimburse Kirkland in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, the Fee Committee Order, and the Interim Compensation Order.  The Retention Order also

---

[14]    *Third Order Extending the Debtors' Exclusive Periods to File a Chapter 11 Plan and Solicit Acceptances Thereof Pursuant to Section 1121 of the Bankruptcy Code* [D.I. 4634].

authorizes the Debtors to compensate Kirkland at Kirkland's hourly rates charged for services of this type and to reimburse Kirkland for Kirkland's actual and necessary out-of-pocket expenses incurred, subject to application to this Court.[15]   The particular terms of Kirkland's engagement are detailed in the engagement letter by and between Kirkland and the Debtors, effective as of June 19, 2012, and attached hereto as **Exhibit C** (the "Engagement Letter").

21.     The Retention Order authorizes Kirkland to provide the following services consistent with and in furtherance of the services enumerated above:

    a.   advising the Debtors with respect to their powers and duties as debtors-in-possession in the continued management and operation of their businesses and properties;

    b.   preparing pleadings, including motions, applications, answers, orders, reports, and papers necessary or otherwise beneficial to the administration of the Debtors' estates and consistent with the services identified in the Retention Order;

    c.   appearing before the Court and any appellate courts to represent the interests of the Debtors' estates before those courts in connection with the services in the Retention Order; and

    d.   performing all other legal services reasonably necessary or otherwise beneficial for the Debtors in connection with these chapter 11 cases.

### Disinterestedness of Kirkland

22.     To the best of the Debtors' knowledge and as disclosed in:  the *Declaration of Edward O. Sassower, P.C. in Support of the Debtors' Application for the Entry of an Order Authorizing the Retention and Employment of Kirkland & Ellis LLP as Attorneys for the Debtors and Debtors in Possession Effective* Nunc Pro Tunc *to the Effective Date* [D.I. 660] (the "First Sassower Declaration"); the *Amended Declaration of Edward O. Sassower in Support of the Debtors Application for Entry of an Order Authorizing the Retention and Employment of*

---

[15]   In accordance with the Retention Order, Kirkland does not seek reimbursement of expenses for office supplies pursuant to this Fee Application.

*Kirkland & Ellis LLP as Attorneys for the Debtors and Debtors in Possession Effective* Nunc Pro Tunc *to the Effective Date* [D.I. 1733] (the "Amended Sassower Declaration"); the *First Supplemental Declaration of Edward O. Sassower in Support of the Debtors' Application for Entry of an Order Authorizing the Retention and Employment of Kirkland & Ellis LLP and Kirkland & Ellis International LLP as Attorneys for the Debtors and Debtors in Possession Effective* Nunc Pro Tunc *to the Petition Date* [D.I. 2005] (the "First Supplemental Sassower Declaration"); the *Second Supplemental Declaration of Edward O. Sassower in Support of the Debtors' Application for Entry of an Order Authorizing the Retention and Employment of Kirkland & Ellis LLP and Kirkland & Ellis International LLP as Attorneys for the Debtors and Debtors in Possession Effective* Nunc Pro Tunc *to the Petition Date* [D.I. 2949] (the "Second Supplemental Sassower Declaration"); the *Third Supplemental Declaration of Edward O. Sassower in Support of the Debtors' Application for Entry of an Order Authorizing the Retention and Employment of Kirkland & Ellis LLP and Kirkland & Ellis International LLP as Attorneys for the Debtors and Debtors in Possession Effective* Nunc Pro Tunc *to the Petition Date* [D.I. 3041] (the "Third Supplemental Sassower Declaration") (together with the First Sassower Declaration, the Amended Sassower Declaration, the First Supplemental Sassower Declaration, and the Second Supplemental Sassower Declaration the "Kirkland Declarations"), Kirkland (a) is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code, as required by section 327(a) of the Bankruptcy Code; (b) does not hold or represent an interest adverse to the Debtors' estates; and (c) has no connection to the Debtors, their creditors, or other parties-in-interest, except as may be disclosed in the Kirkland Declarations.

23.    Kirkland may have in the past represented, may currently represent, and likely in the future will represent parties-in-interest in connection with matters unrelated to the Debtors in

12

these chapter 11 cases.  In the Kirkland Declarations, Kirkland disclosed its connections to parties-in-interest that it has been able to ascertain using its reasonable efforts.  Kirkland will update the Kirkland Declarations or file additional ones, as appropriate, if Kirkland becomes aware of relevant and material new information.

24.    Kirkland performed the services for which it is seeking compensation on behalf of the Debtors and their estates, and not on behalf of any committee, creditor, or other entity.

25.    Except to the extent of the advance payments paid to Kirkland that Kirkland previously disclosed to this Court in the Kirkland Declarations, Kirkland has received no payment and no promises for payment from any source other than the Debtors for services provided or to be provided in any capacity whatsoever in connection with these chapter 11 cases.

26.    Pursuant to Bankruptcy Rule 2016(b), Kirkland has not shared, nor has Kirkland agreed to share (a) any compensation it has received or may receive with another party or person other than with the partners, counsel, and associates of Kirkland or (b) any compensation another person or party has received or may receive.

**Summary of Compliance with Interim Compensation Order and Fee Committee Order**

27.    This Fee Application has been prepared in accordance with the Interim Compensation Order and the Fee Committee Order.

28.    Kirkland seeks interim compensation for professional services rendered to the Debtors during the Fee Period in the amount of $28,712,575.50 and reimbursement of actual and necessary expenses incurred in connection with providing such services in the amount of $3,047,572.82.  During the Fee Period, Kirkland attorneys and paraprofessionals expended a total of 40,618.60 hours for which compensation is requested.

29.    Kirkland has received payments totaling $12,551,006.54 under the Interim Compensation Order and the Fee Committee Order.  Kirkland has submitted the Monthly Fee

13

Statements seeking payment of (a) 80% of the fees incurred by the Debtors for reasonable and necessary professional services rendered by Kirkland and (b) 100% of the actual and necessary costs and expenses incurred by Kirkland in connection with the services provided to the Debtors for each month.

30.     Accordingly, by this Fee Application, and to the extent such amounts have not been paid by the time of the hearing on this Fee Application, Kirkland seeks payment of the remaining $5,742,515.10, which represents the 20% holdback period on fees incurred during the Fee Period.

**Fees and Expenses Incurred During Fee Period**

A.     **Customary Billing Disclosures**.

31.     Kirkland's hourly rates are set at a level designed to compensate Kirkland fairly for the work of its attorneys and paraprofessionals and to cover fixed and routine expenses.  The hourly rates and corresponding rate structure utilized by Kirkland in these chapter 11 cases are equivalent to the hourly rates and corresponding rate structure used by Kirkland for other restructuring matters, as well as similar complex corporate, securities, and litigation matters whether in court or otherwise, regardless of whether a fee application is required.  The rates and rate structure reflect that such restructurings and other complex matters typically are national in scope and typically involve great complexity, high stakes, and severe time pressures.  For the convenience of the Court and all parties-in-interest, attached hereto as **Exhibit D** is a summary of blended hourly rates for timekeepers who billed to non-bankruptcy matters and blended hourly rates for timekeepers who billed to the Debtors during the Fee Period.

B.     **Fees Incurred During Fee Period**.

32.     In the ordinary course of Kirkland's practice, Kirkland maintains computerized records of the time expended to render the professional services required by the Debtors and

14

their estates.   For the convenience of the Court and all parties-in-interest, attached hereto as

**Exhibit E** is a summary of fees incurred and hours expended during the Fee Period, setting forth

the following information:

- the name of each attorney and paraprofessional for whose work on these chapter 11 cases compensation is sought;

- each attorney's year of bar admission and area of practice concentration;

- the aggregate time expended and fees billed by each attorney and each paraprofessional during the Fee Period;

- the hourly billing rate for each attorney and each paraprofessional at Kirkland's current billing rates;

- the hourly billing rate for each attorney and each paraprofessional as disclosed in the first interim fee application;

- the number of rate increases since the inception of the case; and

- a calculation of total compensation requested using the rates disclosed in the *Debtors' Application for Entry of an Order Authorizing the Retention and Employment of Kirkland & Ellis LLP as Attorneys for the Debtors and Debtors in Possession Effective* Nunc Pro Tunc *to the Petition Date* [D.I. 660] (the "Retention Application").

**C.    Expenses Incurred During Fee Period**.

33.    In the ordinary course of Kirkland's practice, Kirkland maintains a record of

expenses incurred in the rendition of the professional services required by the Debtors and their

estates and for which reimbursement is sought.   Kirkland currently charges $0.16 per page for

standard duplication in its offices in the United States.   Notwithstanding the foregoing and

consistent with the Local Bankruptcy Rules, Kirkland charged no more than $0.10 per page for

standard duplication services in these chapter 11 cases.   Kirkland does not charge its clients for

incoming facsimile transmissions.

34.     For the convenience of the Court and all parties-in-interest, attached hereto as **Exhibit F** is a summary for the Fee Period, setting forth the total amount of reimbursement sought with respect to each category of expenses for which Kirkland is seeking reimbursement.

## Proposed Payment Allocation

35.     In accordance with paragraph 2(b) of the Interim Compensation Order, Kirkland proposes the following allocation of the fees and expenses sought in this Fee Application among (a) EFH Corp., (b) EFIH, and (c) the TCEH Debtors:

| Debtor(s) | Amount |
|---|---|
| **Direct Benefit Fees: $5,595,696.20** (comprised of $5,581,122.50 fees and $14,573.70 expenses) | |
| EFH Corp. | $292,449.70 |
| EFIH | $3,165,145.10 |
| TCEH Debtors | $2,138,101.40 |
| *Total:* | $5,595,696.20 |
| **Collective Benefit Fees: $26,164,452.11** (comprised of $23,131,453.00 fees and $3,032,999.11 expenses) | |
| EFH Corp. | $2,079,890.19 |
| EFIH | $14,369,975.93 |
| TCEH Debtors | $9,714,585.99 |
| *Total:* | $26,164,452.11 |
| *Grand Total:* | $31,760,148.31 |

## Summary of Legal Services Rendered During the Fee Period

36.     As discussed above, during the Fee Period, Kirkland provided extensive and important professional services to the Debtors in connection with these chapter 11 cases.  These services were often performed under severe time constraints and were necessary to address a multitude of critical issues both unique to these chapter 11 cases and typically faced by large corporate debtors in similar cases of this magnitude and complexity.

37.     To provide a meaningful summary of Kirkland's services provided on behalf of the Debtors and their estates, Kirkland has established, in accordance with its internal billing

16

procedures, certain subject matters categories (each, a "Matter Category") in connection with these chapter 11 cases. The following is a summary of the fees and hours billed for each Matter Category in the Fee Period:[16]

| Matter Number | Project Category Description | Hours Billed | Total Compensation Billed |
|---|---|---|---|
| 0003 | [ALL] Automatic Stay | 28.10 | $12,359.00 |
| 0004 | [ALL] Bond Issues | 6.90 | $5,667.00 |
| 0005 | [ALL] Business Operations | 21.30 | $14,164.50 |
| 0006 | [ALL] Case Administration | 368.50 | $195,213.50 |
| 0008 | [ALL] Claims Administration & Objections | 837.40 | $480,295.50 |
| 0009 | [ALL] Contested Matters & Adv. Proceed. | 15,317.70 | $8,834,505.00 |
| 0010 | [ALL] Corp. Governance and Sec. Issues | 3,206.30 | $2,812,560.00 |
| 0011 | [ALL] Exec. Contracts & Unexpired Leases | 66.40 | $39,722.50 |
| 0012 | [ALL] Hearings | 205.40 | $167,451.50 |
| 0014 | [ALL] Kirkland Retention and Fee Applications | 1,694.90 | $862,973.50 |
| 0016 | [ALL] Non-Debtor Affiliates | 3.90 | $2,593.50 |
| 0017 | [ALL] Non-Kirkland Retentions & Fee Apps | 265.50 | $190,928.00 |
| 0018 | [ALL] Non-Working Travel | 457.40 | $425,733.50 |
| 0019 | [ALL] Official Committee Issues & Meet. | 19.50 | $17,365.50 |
| 0021 | [ALL] Plan and Disclosure Statements | 7,107.90 | $5,895,415.00 |
| 0023 | [ALL] Regulatory Issues | 6.70 | $4,254.50 |
| 0026 | [ALL] Retiree and Employee Issues/OPEB | 347.20 | $266,827.50 |
| 0028 | [ALL] Shared Services | 7.60 | $5,045.50 |
| 0029 | [ALL] Tax Issues | 2,936.90 | $2,728,853.00 |
| 0030 | [ALL] U.S. Trustee Issues | 6.20 | $3,790.50 |
| 0032 | [ALL] Valuation | 264.80 | $167,784.50 |
| 0034 | [TCEH] Asset Dispositions and Purchases | 55.80 | $35,594.50 |
| 0035 | [TCEH] Automatic Stay | 189.60 | $115,179.00 |
| 0036 | [TCEH] Bond Issues | 6.60 | $4,389.00 |
| 0037 | [TCEH] Business Operations | 265.60 | $173,584.50 |
| 0038 | [TCEH] Cash Collateral and DIP Financing | 125.90 | $87,476.50 |
| 0039 | [TCEH] Claims Administration & Objection | 432.90 | $303,369.00 |
| 0040 | [TCEH] Contested Matters & Advers. Proc. | 1,233.00 | $941,712.00 |
| 0041 | [TCEH] Corp. Governance and Sec. Issues | 8.10 | $8,003.00 |
| 0042 | [TCEH] Environmental Issues | 8.00 | $5,486.50 |
| 0046 | [TCEH] Non-Debtor Affiliates | 7.80 | $5,168.50 |
| 0047 | [TCEH] Non-Kirkland Retention & Fee Apps | 5.80 | $4,874.00 |
| 0049 | [TCEH] Official Committee Issues & Meet. | 4.50 | $4,297.50 |
| 0051 | [TCEH] Plan and Disclosure Statements | 75.30 | $80,069.00 |
| 0057 | [TCEH] Trading and Hedging Contracts | 12.70 | $6,980.50 |

---

[16]   In certain instances Kirkland may have billed the same amount of fees, but different amount of hours to different Matter Categories. This difference is the result of different staffing of each such Matter Category.

| Matter Number | Project Category Description | Hours Billed | Total Compensation Billed |
|---|---|---|---|
| 0062 | [TCEH] Vendor and Other Creditor Issues | 143.10 | $90,457.00 |
| 0066 | [EFIH] Cash Collat./DIP Finan./Make-whole | 699.70 | $602,432.00 |
| 0068 | [EFIH] Contested Matters & Advers. Pro. | 3,107.80 | $2,369,457.00 |
| 0069 | [EFIH] Corp. Governance and Sec. Issues | 4.50 | $3,309.50 |
| 0070 | [EFIH] Hearings | 191.30 | $143,407.00 |
| 0072 | [EFIH] Non-Kirkland Retention & Fee Applicat. | 2.70 | $1,795.50 |
| 0073 | [EFIH] Non-Working Travel | 34.50 | $27,824.50 |
| 0074 | [EFIH] Official Committee Issues & Meet. | 10.50 | $8,235.50 |
| 0086 | [EFH] Contested Matters & Advers. Proc. | 16.70 | $13,540.50 |
| 0089 | [EFH] EFH Properties | 365.40 | $259,571.50 |
| 0092 | [EFH] Non-Core Subs/Discontinued Ops | 1.50 | $1,433.50 |
| 0094 | [EFH] Non-Kirkland Retention & Fee Apps | 6.40 | $4,256.00 |
| 0096 | [EFH] Official Committee Issues & Meet. | 8.00 | $8,236.50 |
| 0108 | [TCEH] Exec. Contracts & Unexpired Lease | 418.40 | $268,983.00 |

38.     The following is a summary, by Matter Category, of the most significant professional services provided by Kirkland during the Fee Period.  This summary is organized in accordance with Kirkland's internal system of matter numbers.  The detailed descriptions demonstrate that Kirkland was heavily involved in performing services for the Debtors on a daily basis, often including night and weekend work, to meet the needs of the Debtors' estates in these chapter 11 cases.

39.     A schedule setting forth a description of the Matter Categories utilized in this case, the number of hours expended by Kirkland partners, associates, and paraprofessionals by matter, and the aggregate fees associated with each matter is attached hereto as **Exhibit G**. **Exhibit H** is Kirkland's budget and staffing plan for this Fee Period, which has been approved by the Debtors, and **Exhibit I** is a comparison of hours and fees budgeted for each matter category to which Kirkland professionals and paraprofessionals billed time during the Fee Period against the hours and fees for which Kirkland seeks compensation for the Fee Period.

40.     In addition, Kirkland's computerized records of time expended providing professional services to the Debtors and their estates are attached hereto as **Exhibit J**, and

18

Kirkland's records of expenses incurred during the Fee Period in the rendition of professional services to the Debtors and their estates are attached as **Exhibit K**.

### (a)    [ALL] Automatic Stay (Matter No. 3)

Total Fees:    $12,359.00
Total Hours:   28.10

41.    This Matter Category includes time spent by Kirkland attorneys and paraprofessionals during the Fee Period providing services related to strategizing, responding to inquiries, and researching and preparing pleadings regarding lifting the automatic stay with respect to litigation issues related to all of the Debtors.

### (b)    [ALL] Bond Issues (Matter No. 4)

Total Fees:    $5,667.00
Total Hours:   6.90

42.    This Matter Category includes time spent by Kirkland attorneys related to issues regarding the Debtors' bonds and the bonds' respective indenture trustees, including the termination of a remarketing agreement and consideration of pollution control revenue bonds.

### (c)    [ALL] Business Operations (Matter No. 5)

Total Fees:    $14,164.50
Total Hours:   21.30

43.    This Matter Category includes time spent by Kirkland attorneys and paraprofessionals during the Fee Period related to the Debtors' business operations.  Specifically, Kirkland attorneys and paraprofessionals spent time advising the Debtors' management and other advisors regarding processes to ensure uninterrupted operations and compliance with provisions of the Bankruptcy Code and orders entered in these chapter 11 cases.

19

**(d)** **[ALL] Case Administration (Matter No. 6)**

Total Fees:     $195,213.50
Total Hours:    368.50

44.     This Matter Category includes time spent by Kirkland attorneys and paraprofessionals during the Fee Period on tasks assuring the smooth and efficient administration related of the Debtors' chapter 11 cases.  Specifically, Kirkland attorneys and paraprofessionals spent time:

> i.      coordinating work streams, client communications, and creditor communications by monitoring critical dates and case developments and maintaining and disseminating case calendars, task lists, work-in-progress reports, and key deadlines in these chapter 11 cases;

> ii.     preparing for and holding regular meetings and telephone conferences with both the Kirkland working groups, other retained professionals, and the Debtors regarding the status of pending workstreams, discovery issues, and database management;

> iii.    preparing for and attending telephone conferences every other week with certain creditor constituencies, including the Official Committees, regarding case status and progress on critical workstreams; and

> iv.     reviewing docket entries as they are filed to apprise the Debtors, as well as other retained professionals, of developments in these chapter 11 cases, in real-time.

**(e)** **[ALL] Claims Administration & Objections (Matter No. 8)**

Total Fees:     $480,295.50
Total Hours:    837.40

45.     To date, creditors have filed over 10,000 proofs of claim in these chapter 11 cases.  This Matter Category includes time spent by Kirkland attorneys and paraprofessionals during the Fee Period related to the administration and resolution of claims either filed against all of the Debtors' estates or claims, the resolution of which, that may affect all of the Debtors' estates.  Specifically, Kirkland attorneys and paraprofessionals spent time among other things:

> i.      analyzing and researching issues related to claims against the Debtors;

20

ii.     seeking relief with respect to establishing a bar date for claims of unknown persons that have yet to manifest any sign of illness from exposure to asbestos;[17]

iii.    preparing and filing nine omnibus objections to claims, which resulted in the court disallowing or expunging 1,936 claims with an aggregate claimed amount value of $129,202,031,394.45;[18]

iv.    monitoring a claims telephone hotline and e-mail account and managing related communications; and

v.     responding to formal and informal responses to the omnibus objections.

(f)     [ALL] Contested Matters & Adversary Proceedings (Matter No. 9)

Total Fees:     $8,834,505.00
Total Hours:   15,317.70

46.     This Matter Category includes time spent by Kirkland attorneys and paraprofessionals responding to numerous discovery and diligence requests filed by various

---

[17]    *See In re Energy Future Holdings Corp.*, 522 B.R. 520 (Bankr. D. Del. 2015); Proposed *Order (A) Setting Bar Date for Filing Asbestos Proofs of Claim; (B) Approving the Form and Manner for Filing Asbestos Proofs of Claim, and (C) Approving Notice Thereof* [D.I. 3965]; *Debtors' Supplemental Memorandum of Law with Respect to the Bar Date Motion and in Support of (A) the Form of and Manner for Filing Asbestos Proofs of Claim and (B) the Form and Manner of Notice of Bar Date with Respect to Asbestos Proofs of Claim* [D.I. 3966].

[18]    *See Debtors' Sixth (Non-Substantive) Objection to (Insufficient Documentation) Claims Pursuant to Section 502(b) of the Bankruptcy Code, Bankruptcy Rules 3001, 3003, and 3007, and Local Bankruptcy Rule 3007-1* [D.I. 3212]; *Debtors' Seventh (Substantive) Objection to Certain No Liability Claims Pursuant to Section 502(b) of the Bankruptcy Code, Bankruptcy Rules 3001, 3003, and 3007, and Local Bankruptcy Rule 3007-1* [D.I. 3218]; *Debtors' Eighth (Non-Substantive) Objection to (Insufficient Documentation) Claims Pursuant to Section 502(b) of the Bankruptcy Code, Bankruptcy Rules 3001, 3003, and 3007, and Local Bankruptcy Rule 3007-1* [D.I. 3381]; *Debtors' Ninth (Non-Substantive) Objection to (Amended and Superseded, Exact Duplicate, No Supporting Documentation, and Insufficient Documentation) Claims Pursuant to Section 502(b) of the Bankruptcy Code, Bankruptcy Rules 3001, 3003, and 3007, and Local Bankruptcy Rule 3007-1* [D.I. 3471]; *Debtors' Tenth (Substantive) Objection to (Certain No Liability) Claims Pursuant to Section 502(b) of the Bankruptcy Code, Bankruptcy Rules 3001, 3003, and 3007, and Local Bankruptcy Rule 3007-1* [D.I. 3473]; *Debtors' Eleventh (Non-Substantive) Objection to (Amended and Superseded) Claims Pursuant to Section 502(b) of the Bankruptcy Code, Bankruptcy Rules 3001, 3003, and 3007, and Local Bankruptcy Rule 3007-1* [D.I. 3475]; *Debtors' Twelfth (Non-Substantive) Objection to (Insufficient Documentation) Claims Pursuant to Section 502(b) of the Bankruptcy Code, Bankruptcy Rules 3001, 3003, and 3007, and Local Bankruptcy Rule 3007-1* [D.I. 3896]; *Debtors' Thirteenth (Non-Substantive) Objection to (Insufficient Documentation) Claims Pursuant to Section 502(b) of the Bankruptcy Code, Bankruptcy Rules 3001, 3003, and 3007, and Local Bankruptcy Rule 3007-1* [D.I. 4003]; *Debtors' Fourteenth (Substantive) Objection to (Certain Substantive Duplicate, No Liability, and No Claim Asserted) Claims Pursuant to Section 502(b) of the Bankruptcy Code, Bankruptcy Rules 3001, 3003, and 3007, and Local Bankruptcy Rule 3007-1* [D.I. 4050]; *Debtors' Fifteenth (Non-Substantive) Objection to (Insufficient Documentation) Claims Pursuant to Section 502(b) of the Bankruptcy Code, Bankruptcy Rules 3001, 3003, and 3007, and Local Bankruptcy Rule 3007-1* [D.I. 4052].

21

parties-in-interest, including in connection with the discovery requests outlined in the Legacy

Discovery Protocol (collectively, the "Legacy Discovery Requests").    Specifically, Kirkland

attorneys and paraprofessionals spent time during the Fee Period:

i.    negotiating various case schedule and administration issues with multiple parties-in-interest resulting in a stipulation between the various parties-in-interest;[19]

ii.    drafting and revising written discovery and written responses and objections to consolidated discovery requests;

iii.    ensuring compliance with additional requirements under the Legacy Discovery Protocol, including reviewing and evaluating notices of intent, establishing, maintaining, and administering a legacy discovery document repository, and creating and maintaining official legacy discovery service list;

iv.    monitoring the docket to ensure compliance with certain requirements of a confidentiality agreement and protective order and fulfilling requirements to maintain confidentiality of designated material;

v.    evaluating and negotiating the scope of discovery requests;

vi.    identifying, collecting, and processing documents from Debtors and various third parties for review and potential production;

vii.    coordinating document review processes internally and with third-party database vendors to ensure an efficient document review process and compliance with the Legacy Discovery Protocol and deadlines;

viii.    analyzing and reviewing potentially responsive documents that culminated in the production of approximately 810,000 documents and over 5.6 million pages related to the Legacy Discovery Requests;

ix.    researching, drafting, and revising pleadings, letters, status reports, and other documents related to various litigation issues, including assertions regarding the Legacy Discovery Requests;

x.    drafting and revising a letter brief regarding a modification to the Legacy Discovery Protocol resulting in extension of the deadline to comply with the Legacy Discovery Protocols;[20]

---

[19]    *See Stipulation and Agreed Order Regarding Discovery Procedures in Connection with Legacy Discovery and Other Administrative Matters* [D.I. 3618].

xi.        conferencing with the Debtors, their advisors, and certain parties-in-interest regarding the status of litigation matters, including the document production process and discovery requests;

xii.        researching and analyzing factual circumstances related to the assessment and evaluation of potential claims; and

xiii.        drafting and filing, with the consent of the TCEH First Lien Lenders and the Prepetition First Lien agents, the Stipulation and Consent Order Extending Certain Deadlines in the Final Cash Collateral Order extending the challenge deadline in April 17, 2015[21] and a subsequent extension to August 7, 2015.[22]

47.      Kirkland utilized contract attorneys to conduct the first level of document review sought under the Legacy Discovery Requests to reduce overall costs to the estates related to responding to the numerous discovery requests received.

### (g)    [ALL] Corporate and Securities Issues (Matter No. 10)

Total Fees:    $2,812,560.00
Total Hours:  3,206.30

48.      This Matter Category[23] includes time spent by Kirkland attorneys during the Fee Period related to corporate governance issues involving all of the Debtors, including their respective disinterested directors and managers.  Specifically, Kirkland attorneys spent time:

i.        preparing for, and participating in, joint meetings with all of the Debtors' boards of directors regarding corporate and financial aspects of the chapter 11 process;

ii.        drafting, reviewing, and revising documents and resolutions related to all of the Debtors' corporate governance during the chapter 11 process;

---

[20]   *See Debtors' Letter Brief Requesting Modification of Paragraph 8(c) of the Legacy Discovery Protocol* [D.I. 3903]; *Notice of Agreement to Extend Deadlines in Order Establishing Discovery Procedures in Connection with Legacy Discovery of Energy Future Holdings Corporation, its Affiliates, and Certain Third Parties and Other Related Matters.* [D.I. 4008].

[21]   *Stipulation and Consent Order Extending Certain Deadlines in the Final Cash Collateral Order* [D.I. 3857].

[22]   *Stipulation and Consent Order Extending Certain Deadlines in the Final Cash Collateral Order* [D.I. 4210].

[23]   This Matter Category includes .90 hours and $940.00 in fees spent that Kirkland previously reported under Matter Category Corp. Governance and Securities Issues (Matter No. 87) in the January Monthly Fee Statement.  Based on additional review, Kirkland determined that this amount belongs in Matter Category Corporate and Securities Issues (Matter No. 10).

23

iii.     negotiating, drafting, and revising a proposed merger agreement and associated separation and transition services documents pertaining to all of the Debtors; and

iv.     negotiating, drafting, reviewing, and revision bidding procedure materials and related bid documents and term sheets.

**(h)     [ALL] Exec. Contracts & Unexpired Leases (Matter No. 11)**

Total Fees:     $39,722.50
Total Hours:   66.40

49.     This Matter Category includes time spent by Kirkland attorneys and paraprofessionals during the Fee Period examining issues related to the Debtors' executory contracts and unexpired leases.  Specifically, Kirkland attorneys and paraprofessionals spent time:

i.     drafting and revising contract and lease assumption and rejection pleadings as well as other documents related thereto;

ii.     reviewing and analyzing certain lease stipulations; and

iii.     analyzing and researching the Debtors' obligations under various executory contracts and leases.

**(i)     [ALL] Hearings (Matter No. 12)**

Total Fees:     $167,451.50
Total Hours:   205.40

50.     This Matter Category includes time spent by Kirkland attorneys and paraprofessionals during the Fee Period preparing for and attending the Debtors' omnibus hearings, including, among other things,

i.     hearings regarding the Debtors' second request for an extension of the Debtors' exclusivity period, motion for the partial repayment of EFIH second lien notes, motions to reject certain executory contracts, and the First Lien EFIH makewhole litigation trial;

ii.     analyzing and responding to objections to the Debtors' proposed treatment of executory contracts and unexpired leases; and

24

      iii.      telephonic hearings regarding the Debtor's request to enter into certain long-term power purchase agreements.

**(j)**    **[ALL] Kirkland Retention and Fee Applications (Matter No. 14)**

Total Fees:    $862,973.50
Total Hours:  1,694.90

51.    This Matter Category includes time spent by Kirkland attorneys and paraprofessionals during the Fee Period providing services related to Kirkland's retention and fee materials. Specifically, Kirkland attorneys and paraprofessionals spent time:

      i.      reviewing, revising, and refining budget and staffing materials;

      ii.      reviewing and revising invoices regarding privilege and compliance with applicable guidelines and rules;

      iii.      review and analyzing conflicts reports for any potential conflicts of interest; and

      iv.      preparing and revising Kirkland's second interim fee application (filed on February 17, 2015 at D.I. 3569), and the Monthly Fee Statements.

**(k)**    **[ALL] Non-Debtor Affiliates (Matter No. 16)**

Total Fees:    $2,593.50
Total Hours:  3.90

52.    This Matter Category includes time spent by Kirkland attorneys during the Fee Period related to issues concerning certain of the Debtors' non-Debtor affiliates (excluding Oncor Electric Delivery Company LLC ("Oncor")), including reviewing and analyzing potential non-debtor asset sales, reviewing and analyzing a sale proceeds stipulation, and advising the Company regarding the same.

**(l)**    **[ALL] Non-Kirkland Retentions and Fee Applications (Matter No. 17)**

Total Fees:    $190,928.00
Total Hours:  265.50

53.    This Matter Category includes time spent by Kirkland attorneys and paraprofessionals during the Fee Period providing services related to the retention of

25

professionals other than Kirkland.  Specifically, Kirkland attorneys and paraprofessionals spent time:

    i.      revising certain ordinary course professionals' declarations of disinterestedness;[24]

    ii.      corresponding with the Debtors' professionals regarding, among other things, supplemental declarations, the scope of the professionals' services, budgeting, and the interim compensation process;

    iii.      assisting other professionals in receiving compensation in accordance with the interim compensation process;

    iv.      updating the schedule of ordinary course professionals;[25]

    v.      facilitating the Debtors' retention of various professionals other than Kirkland;[26] and

    vi.      assisting disinterested directors' advisors in connection with retention materials.[27]

---

[24] *See, e.g., Declaration of Disinterestedness of Zolfo Cooper, LLC Pursuant to the Order Authorizing the Retention and Compensation of Certain Professionals Utilized in the Ordinary Course of Business*[D.I. 3632]; *First Supplemental Declaration of Andrew Kever in Support of the Application of the Debtors for an Order Authorizing the Debtors to Retain and Employ Enoch Kever PLLC as Special Counsel for Certain Regulatory and Legislative Matters, Effective* nunc pro tunc *to March 1, 2015.*[D.I. 4077];

[25] *See List of Ordinary Course Professionals (Notice of Sixth Amended Lists of Ordinary Course Professionals)* [D.I. 3176]; *List of Ordinary Course Professionals (Notice of Seventh Amended Lists of Ordinary Course Professionals)* [D.I. 3543]; *List of Ordinary Course Professionals (Notice of Eighth Amended Lists of Ordinary Course Professionals)* [D.I. 3561]; *List of Ordinary Course Professionals (Notice of Ninth Amended Lists of Ordinary Course Professionals)* [D.I. 3633].

[26] *See, e.g., Order Granting the Motion of Energy Future Holdings Corp., et al., for Entry of an Order Authorizing KPMG Debtors and KPMG Debtors in Possession to Submit Additional Agreements that Expand the Retention and Employment of KPMG LLP as Bankruptcy Accounting, Tax, and IT Advisors* [D.I. 3641]; *Order Authorizing the Debtors to Retain and Employ Enoch Kever PLC as Special Counsel for Certain Regulatory and Legislative Matters, Effective* nunc pro tunc *to March 1, 2015* [D.I. 4134];

[27] *See, e.g., Order Authorizing the Retention and Employment of Munger, Tolles & Olson LLP as Counsel to Debtors and Debtors in Possession Energy Future Competitive Holdings Company LLC and Texas Competitive Electric Holdings Company LLC Effective* Nunc Pro Tunc *to November 16, 2014* [D.I. 3279]; *Order Authorizing the Retention and Employment of O'Kelly Ernst & Bielli, LLC as Co-Counsel for Debtor and Debtor in Possession Energy Future Holdings Corp. Effective* Nunc Pro Tunc *to November 19, 2014* [D.I. 3280]; *Order Authorizing the Retention and Employment of Proskauer Rose LLP as Counsel for Debtor and Debtor in Possession Energy Future Holdings Corp. Effective* Nunc Pro Tunc *to November 19, 2014* [D.I. 3281]; *Order Authorizing the Retention and Employment of Solic Capital Advisors, LLC as Financial Advisor for Debtor and Debtor in Possession Energy Future Holdings Corp. Effective* Nunc Pro Tunc *to December 18, 2014* [D.I. 3467]; *Order Authorizing the Retention and Employment of McElroy, Deutsch, Mulvaney & Carpenter, LLP as Delaware Counsel to Debtors and Debtors in Possession Energy Future Competitive Holdings Company LLC and Texas Competitive Electric Holdings Company LLC Effective* Nunc Pro Tunc *to January 12, 2015* [D.I. 3835].

**(m)**    **[ALL] Non-Working Travel (Matter No. 18)**

> Total Fees:    $425,733.50
> Total Hours:    457.40

54.    This Matter Category includes non-working travel time spent by Kirkland attorneys and paraprofessionals during the Fee Period in connection with their representation of the Debtors. The amounts requested in the Fee Application reflect a reduction of one-half of the charges for travel time not spent working on matters related to these chapter 11 cases.

**(n)**    **[ALL] Official Committee Issues and Meetings (Matter No. 19)**

> Total Fees:    $17,365.50
> Total Hours:    19.50

55.    This Matter Category includes time spent by Kirkland attorneys and paraprofessionals during the Fee Period communicating with the Debtors' official committees generally.

**(o)**    **[ALL] Plan and Disclosure Statements (Matter No. 21)**

> Total Fees:    $5,895,415.00
> Total Hours:    7,107.90

56.    This Matter Category [28] includes time spent by Kirkland attorneys and paraprofessionals during the Fee Period developing a plan of reorganization, disclosure statement, and related documents. Specifically, Kirkland attorneys and paraprofessionals spent time during the Fee Period:

> i.    drafting, reviewing, revising, and filing the Plan and related Disclosure Statement, as well as related exhibits and consents;[29]

---

[28]    This Matter Category includes .50 hours and $457.50 in fees spent that Kirkland previously reported under Matter Category Plan and Disclosure Statements (Matter No. 76) in the January Monthly Fee Statement. Based on additional review, Kirkland determined that this amount belongs in Matter Category Plan and Disclosure Statements (Matter No. 21).

[29]    *See Joint Plan of Energy Future Holdings Corp.*, et al., *Pursuant to Chapter 11 of the Bankruptcy Code* [D.I. 4142]; *Disclosure Statement for the Joint Plan of Reorganization of Energy Future Holdings Corp.*, et al., *Pursuant to Chapter 11 of the Bankruptcy Code.* [D.I. 4143].

27

ii.    drafting, reviewing, revising, and filing a motion to approve the Disclosure Statement and solicitation procedures, as well as related exhibits and notices;[30]

iii.    drafting, reviewing, revising, and filing the Scheduling Motion;[31]

iv.    researching, drafting, reviewing, and revising a term sheet and Plan as well as related amendments, exhibits, and consents as well as preparing the disclosure statement and addressing factual and legal issues regarding the same;

v.    researching and analyzing potential confirmation issues;

vi.    communicating with the disinterested directors' advisors of each of EFH Corp., EFIH, and EFCH/TCEH regarding the Debtors' Plan;

vii.    communicating and coordinating with the Debtors' other advisors regarding the terms of the Plan and term sheet as well as open issues pertaining to the same and the disclosure statement;

viii.    researching, drafting, reviewing, and revising a motion and related declaration to extend the Debtors' exclusivity period as well as attending multiple telephonic conferences with major stakeholders regarding the requested relief;[32]

ix.    preparing for and participating in substantive negotiations with the Debtors' key stakeholders regarding the proposed terms of the Plan;

x.    revising and negotiating the materials related to the bidding procedures for the EFH-EFIH Transaction;

xi.    revising and negotiating the TCEH Stipulation;

xii.    negotiating confidentiality agreements and attending meetings with various parties-in-interest, including strategic and third-party bidders for the economic interests in Oncor;

---

[30]    *See Motion of Energy Future Holdings Corp., et al., for Entry of an Order (A) Approving the Disclosure Statement, (B) Establishing the Voting Record Date, Voting Deadline, and Other Dates (C) Approving Procedures for Soliciting, Receiving, and Tabulating Votes on the Plan and for Filing Objections to the Plan, and (D) Approving the Manner and Forms of Notice and Other Related Documents.* [D.I. 4144].

[31]    *See Motion of Energy Future Holdings Corp., et al., for Entry of an Order Scheduling Certain Hearing Dates and Deadlines and Establishing Certain Protocols in Connection with the Confirmation of Debtors' Plan of Reorganization and the Approval of the Debtors' Disclosure Statement*[D.I. 4138].

[32]    *See Second Motion of Energy Future Holdings Corp., et al., for Entry of an Order Extending the Debtors' Exclusive Periods to File a Chapter 11 Plan and Solicit Acceptances Thereof Pursuant to Section 1121 of the Bankruptcy Code* [D.I. 3338].

28

xiii.     evaluating, investigating, and responding to diligence requests from creditor constituencies and disinterested director advisors;

xiv.      preparing for and addressing issues related to the approval of the Bidding Procedures Order.[33]

**(p)     [ALL] Regulatory Issues (Matter No. 23)**

Total Fees:     $4,254.50
Total Hours:    6.70

57.     This Matter Category includes time spent by K&E attorneys related to advising the Debtors as to various regulatory issues and addressing the same.  Specifically, K&E attorneys spent time engaging with various regulatory bodies regarding among other things, necessary or preferred rulings or guidance in connection with contemplated Plan transactions.

**(q)     [ALL] Retiree and Employee Issues / OPEB (Matter No. 26)**

Total Fees:     $266,827.50
Total Hours:    347.20

58.     This Matter Category includes time spent by Kirkland attorneys during the Fee Period providing services related to various issues concerning the Debtors' retirees and employees, including employees of EFH Corporate Services.  Specifically, Kirkland attorneys and paraprofessionals spent time:

i.       analyzing, in consultation with the Debtors, certain of the Debtors' retiree and employee compensation and benefit obligations, including employment agreement considerations;

ii.      advising the Debtors in connection with the potential transfer of benefit programs to the reorganized Debtor as part of the Plan;

iii.     advising the Debtors to ensure compliance with the order approving the 2015 compensation program;[34]

---

[33]   *See Order (A) Approving Revised Bidding Procedures, (B) Scheduling an Auction and Related Deadlines and Hearings, and (C) Approving the Form and Manner of Notice Thereof.* [D.I. 3295].

[34]   *See Order Approving the 2015 Compensation Programs* [D.I. 3052].

29

iv.        providing ongoing advice to the Debtors regarding existing compensation relief and compliance therewith; and

v.        drafting and revising an amendment to the severance plan.

**(r)**        **[ALL] Shared Services (Matter No. 28)**

Total Fees:    $5,045.50
Total Hours:  7.60

59.    This Matter Category [35] includes time spent by Kirkland attorneys and paraprofessionals during the Fee Period in connection with advising the Debtors and educating the disinterested directors' advisors regarding certain issues related to the Company's shared services agreements.

**(s)**        **[ALL] Tax Issues (Matter No. 29)**

Total Fees:    $2,728,853.00
Total Hours:  2,936.90

60.    This Matter Category includes time spent by Kirkland attorneys during the Fee Period conducting legal research, preparing correspondence, pleadings, and disclosures, and generally advising the Debtors in connection with tax issues.  Specifically, Kirkland attorneys spent time:

i.        researching and analyzing potential REIT structures associated with the Plan and EFH-EFIH Transaction;

ii.        researching and analyzing certain tax issues arising in connection with the Debtors' current business operations and potential transactions;

iii.        drafting and revising tax memoranda;

iv.        assisting outside advisors in a factual assessment of the Debtors' historical tax accounting practices;

---

[35]   This Matter Category includes .50 hours and $572.50 in fees spent that Kirkland previously reported under Matter Category Shared Services (Matter No. 103) in the January Monthly Fee Statement.  Based on additional review, Kirkland determined that this amount belongs in Matter Category Shared Services (Matter No. 28).

v.      drafting and revising the tax section on the Debtor's disclosure statement and 10-K filing; and

vi.     addressing and responding to inquiries from various parties-in-interest regarding diligence related to various tax considerations.

**(t)      [ALL] U.S. Trustee Issues (Matter No. 30)**

Total Fees:      $3,790.50
Total Hours:    6.20

61.     This Matter Category includes the services provided by Kirkland attorneys related to reviewing and revising the Debtors' monthly operating reports to comply with U.S. Trustee guidelines and discussions with the U.S. Trustee.

**(u)      [ALL] Valuation (Matter No. 32)**

Total Fees:      $167,784.50
Total Hours:    264.80

62.     This Matter Category includes time spent by Kirkland attorneys during the Fee Period related to the issues surrounding the valuation of the Debtors.  Specifically, Kirkland attorneys spent time:

i.      researching and evaluating different valuation methodologies;

ii.     identifying, collecting, and processing numerous documents for review and potential production;

iii.    analyzing and reviewing documents in response to creditors' diligence requests related to, among other things, the revenues, costs, strategies, projections, and records of the Debtors' retail business, including: credit rating studies and analyses; capital expenditures and operating records of their operating plants; power and capacity pricing forecasts, analyses, and projections; financial sales and expense statements and reports; hedging strategies; and enterprise value, debt capacity, and related valuations; and

iv.     analyzing, in consultation with the Debtors and the Debtors' other professionals, valuation issues and litigation strategies.

31

### (v)      [TCEH] Asset Disposition and Acquisition (Matter No. 34)

Total Fees:    $35,594.50
Total Hours:   55.80

63.     This Matter Category includes time spent by Kirkland attorneys and paraprofessionals during the Fee Period rendering services related to the disposition, investment, or purchase of assets by the TCEH Debtors.  Specifically, Kirkland attorneys represented the Debtors in negotiations with parties-in-interest regarding the terms and conditions of certain *de minimis* investments, researching certain potential investments, and advising the Debtors regarding certain asset purchase notices.

### (w)      [TCEH] Automatic Stay (Matter No. 35)

Total Fees:    $115,179.00
Total Hours:   189.60

64.     This Matter Category includes time spent by Kirkland attorneys and paraprofessionals during the Fee Period providing services related to enforcing the automatic stay as it affects the TCEH Debtors.  Specifically, Kirkland attorneys and paraprofessionals spent time:

    i.      responding to formal and informal inquiries from certain parties-in-interest to lift the automatic stay and performing legal research on related issues, including the permissibility of doing so in light of alleged personal injury actions; and

    ii.     negotiating a stipulation with Allen Shrode regarding a limited modification of the automatic stay;[36]

---

[36]    *See Order Approving the Stipulation Between the Debtors and Allen Shrode Regarding Limited Modification of the Automatic Stay in Accordance with the Stipulation* [D.I. 3824];

(x)    **[TCEH] Bond Issues (Matter No. 36)**

Total Fees:    $4,389.00
Total Hours:   6.60

65.    This Matter Category includes time related to analyzing and implementing certain

tripartite agreements, including trustee successions, collateral agent appointment agreement,

other obligations arising therefrom specific to the TCEH Debtors

(y)    **[TCEH] Business Operations (Matter No. 37)**

Total Fees:    $173,584.50
Total Hours:   265.60

66.    This Matter Category includes time spent during the Fee Period related to the

business operations of the TCEH Debtors, including:

i.      strategizing with the TCEH Debtors' management and other advisors
        regarding processes to ensure uninterrupted operations and compliance
        with provisions of the Bankruptcy Code and orders entered in these
        chapter 11 cases;

ii.     addressing compliance issues concerning the TCEH Debtors' business
        operations in connection with, among other things, adhering to certain
        relief authorized by the Court;

iii.    drafting and revising a motion allowing certain Debtors to enter into a
        long-term power purchase agreement[37] and drafting and revising a motion
        allowing the Debtors to file the power purchase agreement under seal;[38]
        and

iv.     preparing for and participating in weekly meetings with the TCEH
        Debtors' business units in connection with the same.

---

[37]    *See Amended and Superseding Motion of Energy Future Holdings Corp.,* et al., *for Entry of an Order
        Authorizing Certain Debtors to Enter into a Long-Term Power Purchase Agreement and Grating Related Relief*
        [D.I. 3992].

[38]    *See Order Authorizing Energy Future Holdings Corp.,* et al., *to File the Power Purchase Agreement Motion
        Under Seal* [D.I. 4002].

**(z)      [TCEH] Cash Collateral and DIP Financing (Matter No. 38)**

Total Fees:      $87,476.50
Total Hours:    125.90

67.     This Matter Category includes time spent by Kirkland attorneys and paraprofessionals during the Fee Period related to the DIP facility available to TCEH and TCEH's authorized use of cash collateral.  Specifically, Kirkland attorneys and paraprofessionals spent time:

    i.      analyzing issues and advising the TCEH Debtors and their other professionals regarding payments under the TCEH cash collateral order; and

    ii.     drafting, revising, and negotiating a stipulation extending the challenge period under the TCEH Cash Collateral Order.

**(aa)     [TCEH] Claims Administration and Objections (Matter No. 39)**

Total Fees:      $303,369.00
Total Hours:    432.90

68.     This Matter Category includes time spent by Kirkland attorneys and paraprofessionals during the Fee Period related to the administration and resolution of claims against the TCEH Debtors' estates, including:

    i.      addressing claims of the Texas Attorney General related to escheatment of unclaimed property of the U.S. Department of Justice in connection with certain mining sites;

    ii.     responding to formal and informal inquiries from customers and the TCEH Debtors' vendors in connection with the Debtors' bar date materials; and

    iii.    drafting and revising a reply to certain no liability claims,[39] and negotiating procedural resolutions in connection with the same.

---

[39]    *See Debtors' Reply to the Response of Gary Waldrep to Debtors' Seventh Omnibus (Substantive) Objection to Certain No Liability Claims Pursuant to Section 502(b) of the Bankruptcy Code, Bankruptcy Rules 3001, 3003, and 3007, and Local Bankruptcy Rule 3007-1.* [D.I. 3802].

**(bb)** **[TCEH] Contested Matters and Adversary Proceedings (Matter No. 40)**

Total Fees:    $941,712.00
Total Hours:    1,233.00

69.    This Matter Category includes time spent by Kirkland professionals and paraprofessionals during the Fee Period related to motions, adversary proceedings, and contested matters involving the Debtors, including:

i.    researching, drafting, and revising responses to the Standing Motions filed by the Committees and certain TCEH creditors;

ii.    strategizing and negotiating regarding Standing Motions;

iii.    strategizing regarding, preparing pleadings for, and otherwise addressing non-bankruptcy legal proceedings involving the TCEH Debtors;

iv.    identifying, collecting, and processing volumes of documents for review and potential production related to potential claims from TCEH creditors; and

v.    analyzing and reviewing potentially responsive documents for production with respect to discovery requests from TCEH creditors.

**(cc)** **[TCEH] Corp. Governance and Sec. Issues (Matter No. 41)**

Total Fees:    $8,003.00
Total Hours:    8.10

70.    This Matter Category includes time spent by Kirkland attorneys during the Fee Period preparing for and presenting to the TCEH board of managers on various issues regarding these chapter 11 cases, including the plan process and governance issues

**(dd)** **[TCEH] Environmental Issues (Matter No. 42)**

Total Fees:    $5,486.50
Total Hours:    8.00

71.    This Matter Category includes time spent by Kirkland attorneys during the Fee Period analyzing and addressing certain environmental compliance issues, including potential

35

environmental liabilities, litigation matters, and the dischargeability of environmental claims against the TCEH Debtors.

### (ee)    [TCEH] Non-Debtor Affiliates (Matter No. 46)

Total Fees:    $5,168.50
Total Hours:   7.80

72.    This Matter Category includes time spent during the Fee Period advising certain of the TCEH Debtors' non-debtor affiliates (excluding Oncor) on recommended resolutions to issues related to non-debtor land sale stipulations and the Comanche Peak quarterly report.

### (ff)    [TCEH] Non-Kirkland Retentions and Fee Applications (Matter No. 47)

Total Fees:    $4,874.00
Total Hours:   5.80

73.    This Matter Category includes time spent by Kirkland attorneys and paraprofessionals during the Fee Period providing services related to the Greenhill & Co.[40] and Munger, Tolles & Olson LLP[41] retention applications.

### (gg)    [TCEH] Official Committee Issues and Meetings (Matter No. 49)

Total Fees:    $4,297.50
Total Hours:   4.50

74.    This Matter Category includes the services provided by Kirkland attorneys and paraprofessionals during the Fee Period in connection with a TCEH Creditors' Committee meeting and preparing and revising materials for the same.

---

[40]    *Amended and Restated Order Authorizing Energy Future Holdings Company LLC and Texas Competitive Electric Holdings Company LLC to Retain and Employ Greenhill & Co. as Independent Financial Advisor Effective* Nunc Pro Tunc *to November 17, 2014* [D.I. 3728].

[41]    *Order Authorizing the Retention and Employment of Munger, Tolles & Olson LLP as Counsel to Debtors and Debtors in Possession Energy Future Competitive Holdings Company LLC and Texas Competitive Electric Holdings Company LLC Effective* Nunc Pro Tunc *to November 16, 2014* [D.I. 3279].

36

**(hh)**     **[TCEH] Plan and Disclosure Statements (Matter No. 51)**

>           Total Fees:     $80,069.00
>           Total Hours:   75.30

75.     This   Matter   Category   includes   time   spent   by   Kirkland   attorneys   and

paraprofessionals during the Fee Period engaging in discussions with TCEH creditors regarding

discrete  plan  issues  affecting  the  TCEH  Debtors,  including  potential  mediator  issues  and

scheduling order issues.

**(ii)**     **[TCEH] Trading and Hedging Contracts (Matter No. 57)**

>           Total Fees:     $6,980.50
>           Total Hours:   12.70

76.     This   Matter   Category   includes   time   spent   by   Kirkland   attorneys   and

paraprofessionals  during  the  Fee  Period  related  to  (a)  analyzing  and  responding  to  issues

concerning the hedging and trading activities of the TCEH Debtors; and (b) corresponding and

strategizing regarding terminated hedges and swaps.

**(jj)**     **[TCEH] Vendor and Other Creditor Issues (Matter No. 62)**

>           Total Fees:     $90,457.00
>           Total Hours:   143.10

77.     This   Matter   Category   includes   time   spent   by   Kirkland   attorneys   and

paraprofessionals during the Fee Period related to addressing issues involving certain of the

TCEH Debtors' suppliers and vendors.   Specifically, Kirkland attorneys and paraprofessionals

spent time:

>     i.     negotiating claim settlement with ADA Carbon Solutions and revising the
>            order regarding the same;[42]
>
>     ii.    addressing  correspondence  from  the  TCEH  Debtors'  vendors  including
>            inquiries related to potential liens, reclamation, and other claims;

---

[42]   *See Order Approving the Claims Settlement Agreement Between Luminant Generation company LLC and ADA
      Carbon Solutions (Red River) LLC* [D.I. 3214].

37

      iii.      researching, conferring, and corresponding with vendors regarding such inquiries; and

      iv.      reviewing vendor and other creditor contracts.

**(kk)   [EFIH] Cash Collateral / DIP Financing / Make-whole Issues (Matter No. 66)**

Total Fees:    $602,432.00
Total Hours:  699.70

78.     This Matter Category includes time spent by Kirkland attorneys and paraprofessionals during the Fee Period related to potential EFIH financing and repayment alternatives. Specifically, Kirkland attorneys and paraprofessionals spent time:

      i.      drafting and revising the motion and order regarding partial repayment of second lien notes;[43]

      ii.      drafting and revising a reply to objections to such partial repayment;[44]

      iii.      negotiating an amendment to the EFIH DIP financing to facilitate such partial repayment;

      iv.      assisting the EFIH Debtors and their other advisors in analyzing alternative means of reducing postpetition interest expense or the accrual of postpetition interest claims;

      v.      researching legal issues and reviewing proposals related to the EFIH DIP financing, EFIH first and second lien repayment issues, and repayment alternatives; and

      vi.      drafting, reviewing, and revising board presentations summarizing these alternatives and the corresponding research and analysis.

---

[43]   *See Motion of Energy Future Holdings Corp., Energy Future Intermediate Holdings Company, LLC, and EFIH Finance Inc. for Entry of (A) Order (I) Authorizing Partial Repayment of EFIH Second Lien Notes; (II) Approving EFIH DIP Consent; and (III) Authorizing Consent Fee and(B) Revise EFIH First Lien DIP Order* [D.I. 3527].

[44]   *See EFIH Debtors' Reply to EFIH Second Lien Trustee's Objection to Partial Repayment* [D.I. 3827].

    **(ll)**    **[EFIH] Contested Matters and Adversary Proceedings (Matter No. 68)**

        Total Fees:    $2,369,457.00
        Total Hours:  3,107.80

79.    This Matter Category includes time spent by Kirkland attorneys and paraprofessionals during the Fee Period related to the EFIH Debtors' contested matters and adversary proceedings with EFIH creditors, in particular, the EFIH First and Second Lien makewhole litigation.  Specifically, Kirkland attorneys and paraprofessionals spent time:

    i.    researching, drafting, and revising pleadings associated with these litigations;

    ii.    drafting and revising the joint pre-trial memorandum;[45]

    iii.    researching, drafting, and revising pleadings and materials associated with and in preparation for the EFIH First Lien makewhole summary judgment[46] and lift stay proceedings;[47]

    iv.    preparing for, attending, and conducting five depositions in connection with these litigations;

    v.    researching, drafting, and revising materials in preparation for EFIH PIK motion to dismiss hearing;

    vi.    reviewing and responding to discovery requests from certain creditors of EFH Corp.; and

    vii.    analyzing, in consultation with the EFIH Debtors and the EFIH Debtors' other professionals, requests and other filings related to discovery.

---

[45]  *See Joint Pre-Trial Memorandum* [D.I. 4191].

[46]  *See*, *e.g.*, *EFIH Debtors' Cross-Motion for Summary Judgment* [Adversary D.I. 175]; *EFIH Debtors' Memorandum in Support of Their Cross-Motion for Summary Judgment* [Adversary D.I. 176]; *EFIH Debtors' Motion* in Limine *to Exclude Expert Reports and Testimony of Michael McCarty, James Cacioppo, and Christopher Kearns* [Adversary D.I. 190]; *EFIH Debtors' Memorandum of Law in Support of Motion* in Limine *to Exclude Expert Reports and Testimony of Michael McCarty, James Cacioppo, and Christopher Kearns* [Adversary D.I. 191]; *EFIH Debtors' Memorandum in Opposition to the Trustee's Motion for Summary Judgment* [Adversary D.I. 204]; *EFIH Debtors' Proposed Findings of Fact and Conclusions of Law in Support of Their Cross-Motion for Summary Judgment* [Adversary D.I. 217];

[47]  *See EFIH Debtors' Letter to the Honorable Christopher S. Sontchi Regarding the Trial of the Cause to Life Stay Issue* [Adversary D.I. 261].

### (mm)  [EFIH] Corp. Governance and Sec. Issues (Matter No. 69)

Total Fees:    $3,309.50
Total Hours:   4.50

80.     This Matter Category includes time spent by Kirkland attorneys during the Fee Period preparing presentations to the board of managers of EFH Corp. regarding bidding procedures, EFIH repayment, and related governance issues.

### (nn)   [EFIH] Hearings (Matter No. 70)

Total Fees:    $143,407.00
Total Hours:   191.30

81.     This Matter Category includes time spent by Kirkland attorneys and paraprofessionals preparing for and attending the hearings on the EFIH First Lien Makewhole litigation, EFIH Second Lien Litigation, and status conferences, including the summary judgment hearing related thereto.

### (oo)   [EFIH] Non-Kirkland Retentions and Fee Applications (Matter No. 72)

Total Fees:    $1,795.50
Total Hours:   2.70

82.     This Matter Category includes time spent by Kirkland attorneys and paraprofessionals during the Fee Period providing services related to the retention of the disinterested directors' advisors to advise EFIH on actual conflicts matters at the direction of the disinterested manager of EFIH.[48]

---

[48]   *See Order Authorizing the Official Committee of Unsecured Creditors of Energy Future Holdings Corp., Energy Future Intermediate Holdings Corp., Energy Future Intermediate Holding Company, LLC, EFIH Finance, Inc., and EECI, Inc. for an Order Under Bankruptcy Code Sections 328(A) and 1103(A) and Bankruptcy Rules 2014(A) and 2016(B) Approving the Employment and Retention of Montgomery McCracken Walker & Rhoads, LLP* nunc pro tunc *to November 5, 2014, as Delaware Bankruptcy Counsel and Conflicts Counsel to the Committee* [D.I. 3241].

**(pp)    [EFIH] Non-Working Travel (Matter No. 73)**

Total Fees:     $27,824.50
Total Hours:    34.50

83.    This Matter Category includes non-working travel time spent by Kirkland attorneys and paraprofessionals during the Fee Period in connection with their representation of the EFIH Debtors.  The amounts requested in the Fee Application reflect a reduction of one-half of the charges for travel time not spent working on matters related to these chapter 11 cases.

**(qq)    [EFIH] Official Committee Issues and Meetings (Matter No. 74)**

Total Fees:     $8,235.50
Total Hours:    10.50

84.    This Matter Category includes the services provided by Kirkland attorneys and paraprofessionals during the Fee Period advising the EFIH Debtors in connection with addressing issues raised by counsel to the EFH Creditors' Committee, participating in multiple in-person and telephonic diligence sessions with counsel to the EFH Creditors' Committee, and providing access to requested diligence and to materials produced through heavily negotiated and Court-approved discovery protocols.

**(rr)    [EFH] Contested Matters and Adversary Proceedings (Matter No. 86)**

Total Fees:     $13,540.50
Total Hours:    16.70

85.    This Matter Category includes the limited time spent by Kirkland attorneys during the Fee Period reviewing and analyzing potential claims against EFH Corp., corresponding with the Company regarding the same, and reviewing and revising board presentations regarding the same.

41

      (ss)      **[EFH] EFH Properties (Matter No. 89)**

          Total Fees:     $259,571.50
          Total Hours:  365.40

86.     This Matter Category includes time spent by Kirkland attorneys during the Fee Period providing services, on behalf of the Debtors, related to certain leases, including the one pertaining to the Debtors' headquarters, as well as researching, drafting, and revising memoranda regarding EFH Properties.

      (tt)      **[EFH] Non-Core Subs/Discontinued Op (Matter No. 92)**

          Total Fees:     $1,433.50
          Total Hours:  1.50

87.     This Matter Category includes time spent by Kirkland attorneys providing services relating to corporate governance issues related to EFH Corp.'s non-core subsidiaries.

      (uu)      **[EFH] Non-Kirkland Retentions and Fee Applications (Matter No. 94)**

          Total Fees:     $4,256.00
          Total Hours:  6.40

88.     This Matter Category includes time spent by Kirkland attorneys and paraprofessionals during the Fee Period providing services related to the retention of disinterested-director advisors to advise EFH on actual conflicts matters at the direction of the disinterested directors of EFH.[49]

---

[49]   *See Debtor Energy Future Holdings Corp.'s Application for Entry of an Order Authorizing the Retention and Employment of SOLIC Capital Advisors, LLC as Financial Advisor for Debtor and Debtor in Possession Energy Future Holdings Corp. Effective* nunc pro tunc *to December 18, 2014* [D.I. 3324].

(vv)    **[EFH] Official Committee Issues and Meetings (Matter No. 96)**

Total Fees:    $8,236.50
Total Hours:   8.00

89.    This Matter Category includes time spent by Kirkland attorneys and paraprofessionals during the Fee Period providing services related to various official committee issues, including committee expense reimbursement and diligence requests.

(ww)    **[TCEH] Executory Contracts and Unexpired Leases (Matter No. 108)**

Total Fees:    $268,983.00
Total Hours:   418.40

90.    This Matter Category includes time spent by Kirkland attorneys and paraprofessionals during the Fee Period examining issues related to the TCEH Debtors' executory contracts and unexpired leases.  Specifically, Kirkland attorneys and paraprofessionals spent time:

    i.      researching and analyzing the TCEH Debtors' obligations under various executory contracts and leases; and

    ii.     drafting, reviewing, and revising motions and related documents with respect to rejecting, assuming, or assigning such contracts and leases.[50]

**Actual and Necessary Expenses Incurred by Kirkland**

91.    As set forth in **Exhibit J** attached hereto, and as summarized in **Exhibit F** attached hereto, Kirkland has incurred a total of $3,047,572.82 in expenses on behalf of the

---

[50]    *See Order Further Extending Deadline to Assume or Reject a Certain Nonresidential Real Property Lease Under Section 365(d)(4) of the Bankruptcy Code* [D.I. 3181]; *Order Further Extending Deadline to Assume or Reject a Certain Nonresidential Real Property Lease Under Section 365(d)(4) of the Bankruptcy Code* [D.I. 3412]; *Order Further Extending Deadline to Assume or Reject a Certain Nonresidential Real Property Lease Under Section 365(d)(4) of the Bankruptcy Code* [D.I. 3730]; *Motion of Energy Future Holdings Corp.,* et al., *for Entry of an Order Authorizing Luminant Energy Company LLC to Reject a Certain Executory Contract with Cloud Peak Energy Resources LLC, Effective* nunc pro tunc *to March 24, 2015* [D.I. 3961]; *Motion of Energy Future Holdings Corp.,* et al., *for Entry of an Order Authorizing Luminant Energy Company LLC to Reject a Certain Executory Contract with Cloud Peak Energy Resources LLC, Effective* nunc pro tunc *to March 24, 2015* [D.I. 3964]; *Order Further Extending Deadline to Assume or Reject a Certain Nonresidential Real Property Lease Under Section 365(d)(4) of the Bankruptcy Code* [D.I. 4095].

Debtors during the Fee Period. These charges are intended to reimburse Kirkland's direct operating costs, which are not incorporated into the Kirkland hourly billing rates. Kirkland charges external copying and computer research at the provider's cost without markup. Only clients who actually use services of the types set forth in **Exhibit J** of this Fee Application are separately charged for such services. The effect of including such expenses as part of the hourly billing rates would be to impose that cost upon clients who do not require extensive photocopying and other facilities and services.

**Reasonable and Necessary Services Provided by Kirkland**

**A.      Reasonable and Necessary Fees Incurred in Providing Services to the Debtors.**

92.      The foregoing professional services provided by Kirkland on behalf of the Debtors during the Fee Period were reasonable, necessary, and appropriate to the administration of these chapter 11 cases and related matters.

93.      Many of the services performed by partners and associates of Kirkland were provided by Kirkland's Restructuring Group. Kirkland has a prominent practice in this area and enjoys a national and international reputation for its expertise in financial reorganizations and restructurings of troubled companies, with approximately 100 attorneys focusing on this area of the law. The attorneys at Kirkland have represented either the debtor or the creditors' committee or have acted as special counsel in many large chapter 11 cases.

94.      In addition, due to the facts and circumstances of these chapter 11 cases, attorneys from Kirkland's Litigation, Corporate, and Tax Groups were heavily involved with Kirkland's representation of the Debtors during the Fee Period. These practice groups also enjoy a national and international reputation for their expertise. Overall, Kirkland brings to these chapter 11 cases a particularly high level of skill and knowledge, which inured to the benefit of the Debtors and all stakeholders.

44

**B.**      **Reasonable and Necessary Expenses Incurred in Providing Services to the Debtors.**

95.      The time constraints imposed by the circumstances of these chapter 11 cases required Kirkland attorneys and other employees to devote substantial time during the evenings and on weekends to perform services on behalf of the Debtors.  These services were essential to meet deadlines, respond to daily inquiries from various creditors and other parties-in-interest on a timely basis, satisfy the demands of the Debtors' businesses, and ensure the orderly administration of their estates.  Consistent with firm policy and the Fee Committee Guidelines, and as further disclosed in the Retention Application, Kirkland attorneys and other Kirkland employees who worked late in the evenings or on weekends were reimbursed for their reasonable meal and transportation costs.  Kirkland's regular practice is not to include components for those charges in overhead when establishing billing rates, but rather to charge its clients for these and all other out-of-pocket disbursements incurred during the regular course of the rendition of legal services.

96.      In addition, due to the location of the Debtors' businesses, co-counsel, creditors, and other parties-in-interest in relation to Kirkland's offices, frequent multi-party telephone conferences involving numerous parties were required.  On many occasions, the exigencies and circumstances of these chapter 11 cases required overnight delivery of documents and other materials.  The disbursements for such services are not included in Kirkland's overhead for the purpose of setting billing rates, and Kirkland has made every effort to minimize its disbursements in these chapter 11 cases.  The actual expenses incurred in providing professional services were necessary, reasonable, and justified under the circumstances to serve the needs of the Debtors in these chapter 11 cases.

97.      Among other things, Kirkland makes sure that all overtime meals, travel meals, hotel rates, and airfares are reasonable and appropriate expenses for which to seek

45

reimbursement. Specifically, Kirkland regularly reviews its bills to ensure that the Debtors are billed for only services that were actual and necessary, and also, where appropriate, prorates expenses across the Debtors' estates. In accordance with the Retention Order, Kirkland does not seek reimbursement of expenses for office supplies pursuant to this Fee Application. In addition, Kirkland has waived certain fees and reduced certain expenses to comply with the Fee Committee Guidelines. Kirkland will not seek reimbursement of expenses related to, among other things, in-office and out-of-office meals in excess of that allowed under the Fee Committee Guidelines and local travel expenses for those Kirkland employees who work on weekends or late in the evenings that do not meet the Fee Committee Guidelines. In the Fee Period, Kirkland voluntarily reduced its fees by $919,688.50 and expenses by $188,419.92. Consequently, Kirkland does not seek payment of such fees or reimbursement of such expenses in this Fee Application.

### Kirkland's Requested Compensation and Reimbursement Should be Allowed

98.    Section 331 of the Bankruptcy Code provides for interim compensation of professionals and incorporates the substantive standards of section 330 of the Bankruptcy Code to govern the Court's award of such compensation. Section 330 of the Bankruptcy Code provides that a court may award a professional employed under section 327 of the Bankruptcy Code "reasonable compensation for actual necessary services rendered . . . and reimbursement for actual, necessary expenses." 11 U.S.C. § 330(a)(1). Section 330 also sets forth the criteria for the award of such compensation and reimbursement:

> In determining the amount of reasonable compensation to be awarded, the court should consider the nature, extent, and the value of such services, taking into account all relevant factors, including—
>
> (a)    the time spent on such services;
>
> (b)    the rates charged for such services;

46

(c)     whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;

(d)     whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed; and

(e)     whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. § 330(a)(3).

99.     Kirkland respectfully submits that the services for which it seeks compensation in this Fee Application were, at the time rendered, necessary for and beneficial to the Debtors and their estates and were rendered to protect and preserve the Debtors' estates.  Kirkland further believes that it performed the services for the Debtors economically, effectively, and efficiently, and that the results obtained benefited not only the Debtors, but also the Debtors' estates and the Debtors' stakeholders.  Kirkland further submits that the compensation requested herein is reasonable in light of the nature, extent, and value of such services to the Debtors, their estates, and all parties-in-interest.

100.     During the Fee Period, Kirkland's hourly billing rates for attorneys ranged from $480.00 to $1,375.00.  The hourly rates and corresponding rate structure utilized by Kirkland in these chapter 11 cases are equivalent to the hourly rates and corresponding rate structure used by Kirkland for restructuring, workout, bankruptcy, insolvency, and comparable matters, and similar complex corporate, securities, and litigation matters, whether in court or otherwise, regardless of whether a fee application is required.  Kirkland strives to be efficient in the staffing of matters.  These rates and the rate structure reflect that such matters are typically national in scope and involve great complexity, high stakes, and severe time pressures—all of which were present in these chapter 11 cases.

47

101.     Moreover, Kirkland's hourly rates are set at a level designed to compensate Kirkland fairly for the work of its attorneys and paraprofessionals and to cover certain fixed and routine overhead expenses.   Hourly rates vary with the experience and seniority of the individuals assigned.   These hourly rates are subject to periodic adjustments to reflect economic and other conditions and are consistent with the rates charged elsewhere.

102.     In sum, Kirkland respectfully submits that the professional services provided by Kirkland on behalf of the Debtors and their estates during these chapter 11 cases were necessary and appropriate given the complexity of these chapter 11 cases, the time expended by Kirkland, the nature and extent of Kirkland's services provided, the value of Kirkland's services, and the cost of comparable services outside of bankruptcy, all of which are relevant factors set forth in section 330 of the Bankruptcy Code.   Accordingly, Kirkland respectfully submits that approval of the compensation sought herein is warranted and should be approved.

### Reservation of Rights and Notice

103.     It is possible that some professional time expended or expenses incurred during the Fee Period are not reflected in the Fee Application.   Kirkland reserves the right to include such amounts in future fee applications.   In addition, the Debtors have provided notice of this Fee Application to:  (a) the U.S. Trustee; (b) counsel to the TCEH Creditors' Committee; (c) counsel to the EFH Creditors' Committee; (d) Wilmington Trust, N.A., in its capacity as administrative agent under the TCEH first lien credit agreement and collateral agent under the TCEH intercreditor agreements and counsel thereto; (e) Bank of New York Mellon Trust Company, N.A., in its capacity as indenture trustee under:  (i) the TCEH unsecured pollution control revenue bonds;  and  (ii) the EFCH 2037 Notes due 2037, and counsel thereto; (f) American Stock Transfer & Trust Company, LLC, in its capacity as indenture trustee under: (i) the 9.75% EFH senior unsecured notes due 2019; (ii) the 10.0% EFH senior unsecured notes

48

due 2020; (iii) the 10.875% EFH LBO senior unsecured notes due 2017; (iv) the 11.25%/12.0% EFH LBO toggle notes due 2017; (v) the 5.55% EFH legacy notes (series P) due 2014; (vi) the 6.50% EFH legacy notes (series Q) due 2024; and (vii) the 6.55% EFH legacy notes (series R) due 2034, and counsel thereto; (g) Computershare Trust Company, N.A. and Computershare Trust Company of Canada, in their capacities as indenture trustee under:  (i) the 11.0% EFIH senior secured second lien notes due 2021; and (ii) the 11.75% EFIH senior secured second lien notes due 2022, and counsel thereto; (h) UMB Bank, N.A. in its capacity as indenture trustee under:  (i) the 9.75% EFIH senior unsecured notes due 2019; and (ii) the 11.25%/12.25% EFIH senior toggle notes due 2018, and counsel thereto; (i) Delaware Trust Company of Delaware in its capacity as indenture trustee under:  (i) the 6.875% EFIH senior secured notes due 2017; (ii) the 10.0% EFIH senior secured notes due 2020; and (iii), the 11.50% TCEH senior secured notes due 2020, and counsel thereto; (j) Law Debenture Trust Company of New York in its capacity as indenture trustee under:  (i) the 10.25% TCEH senior unsecured notes due 2015; and (ii) the 10.50%/11.25% TCEH senior toggle notes due 2016, and counsel thereto; (k) Wilmington Savings Fund Society, FSB in its capacity as indenture trustee under the 15.0% TCEH senior secured second lien notes due 2021, and counsel thereto; (l) counsel to certain holders of claims against the Debtors regarding each of the foregoing described in clauses (c) through (j); (m) the agent for the TCEH debtor-in-possession financing facility and counsel thereto; (n) the agent for the EFIH debtor-in-possession financing facility and counsel thereto; (o) counsel to certain holders of equity in Texas Energy Future Holdings Limited Partnership; (p) counsel to the Ad Hoc Committee of TCEH Unsecured Noteholders; (q) counsel to the Ad Hoc Committee of TCEH Second Lien Noteholders; (r) Oncor Electric Delivery Holdings Company LLC and counsel thereto; (s) Oncor Electric Delivery Company LLC and counsel

49

thereto; (t) the Securities and Exchange Commission; (u) the Internal Revenue Service; (v) the Office of the United States Attorney for the District of Delaware; (w) the Office of the Texas Attorney General on behalf of the Public Utility Commission of Texas; (x) counsel to the Electric Reliability Council of Texas; (y) the Fee Committee; and (z) those parties that have requested notice pursuant to Bankruptcy Rule 2002 (the "Notice Parties").  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

104.    Pursuant to the Interim Compensation Order and the Fee Committee Order, (a) any Notice Party (other than the Fee Committee) that wishes to object to the Fee Application must file its objection with the Court, with a copy to Chambers and serve it on Kirkland and the Notice Parties so that it **is actually received on or before July 8, 2015 at 4:00 p.m. (Eastern Daylight Time).**

### No Prior Request

105.    No prior application for the relief requested herein has been made to this or any other court.

*[Remainder of page intentionally left blank.]*

WHEREFORE, Kirkland respectfully requests that the Court enter an order (a) awarding Kirkland interim compensation for professional and paraprofessional services provided during the Fee Period in the amount of $28,712,575.50, and reimbursement of actual, reasonable, and necessary expenses incurred in the Fee Period in the amount of $3,047,572.82; (b) authorizing and directing the Debtors to remit payment to Kirkland for such fees and expenses; and (c) granting such other relief as is appropriate under the circumstances.

Dated:  June 15, 2015
        New York, New York

/s/ Edward O. Sassower
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Edward O. Sassower, P.C. (admitted *pro hac vice*)
Stephen E. Hessler (admitted *pro hac vice*)
Brian E. Schartz (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022-4611
Telephone:       (212) 446-4800
Facsimile:       (212) 446-4900
Email:           edward.sassower@kirkland.com
                 stephen.hessler@kirkland.com
                 brian.schartz@kirkland.com

-and-

James H.M. Sprayregen, P.C. (admitted *pro hac vice*)
Marc Kieselstein, P.C. (admitted *pro hac vice*)
Chad J. Husnick (admitted *pro hac vice*)
Steven N. Serajeddini (admitted *pro hac vice*)
300 North LaSalle
Chicago, Illinois 60654
Telephone:       (312) 862-2000
Facsimile:       (312) 862-2200
Email:           james.sprayregen@kirkland.com
                 marc.kieselstein@kirkland.com
                 chad.husnick@kirkland.com
                 steven.serajeddini@kirkland.com

*Co-Counsel to the Debtors and Debtors in Possession*