# Exhibit E

[Levin Declaration]

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re:<br><br>ENERGY FUTURE HOLDINGS CORP., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 14-10979 (CSS)<br><br>(Jointly Administered) |

**DECLARATION OF RICHARD LEVIN IN SUPPORT OF APPLICATION FOR ORDER APPROVING THE EMPLOYMENT OF JENNER & BLOCK LLP AS COUNSEL TO ENERGY FUTURE INTERMEDIATE HOLDING COMPANY LLC UNDER SECTIONS 327(a) AND 1107(b) OF THE BANKRUPTCY CODE, EFFECTIVE *NUNC PRO TUNC* TO MAY 18, 2015**

I, Richard Levin, declare under penalty of perjury as follows:

1.      I am a partner in the firm of Jenner & Block LLP ("Jenner"), with an office located at 9190 Third Avenue, New York, NY 10022, and have been duly admitted to practice law in the State of California, the State of New York, the Commonwealth of Massachusetts and the District of Columbia and have been admitted to the bar of this Court *pro hac vice*.

2.      I am authorized to submit this Declaration in support of the Application for Order Approving Employment of Jenner & Block LLP as Counsel to Energy Future Intermediate Holding Company LLC Under Sections 327(a) and 1107(b) of the Bankruptcy Code, Effective Nunc Pro Tunc to May 18, 2015 (the "Application"). Except as otherwise noted, I have personal knowledge of the matters set forth herein.

---

[1] The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, for which joint administration has been granted on an interim basis, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

**Qualifications**

3.      Jenner is a law firm headquartered in Chicago, Illinois, with offices in Washington, DC, New York, NY, Los Angeles, CA, and London, England. Jenner's attorneys have extensive experience and knowledge in, among other things, corporate matters, debtors' rights, business reorganizations, and restructurings under chapter 11 of the Bankruptcy Code and in representing and advising fiduciaries, including directors and officers and including in chapter 11 cases, in connection with, among other things, the exercise of their fiduciary duties. Through my affiliation with the firm, Jenner is already familiar with the Debtors' businesses, the progress of these chapter 11 cases and is otherwise well qualified and able to advise and represent EFIH in its chapter 11 case.

4.      Jenner has entered into an Engagement Agreement with EFIH dated as of May 18, 2015, a copy of which is attached to this Declaration as Exhibit 1, to provide legal services to EFIH in accordance with the Resolutions adopted by EFIH's Board of Managers on November 7, 2014 and December 5, 2014, copies of which are attached to the Application as Exhibit D and Exhibit E. The Engagement Agreement describes the scope of services that Jenner agrees to provide and Jenner's compensation.

**Scope of Services to be Provided**

5.      The scope of Jenner's retention is limited to advising EFIH on Conflict Matters and determining whether a matter constitutes a Conflict Matter and is further limited to restructuring matters. The scope of Jenner's retention will not duplicate the efforts of Kirkland & Ellis, LLP ("**Kirkland**"), Richards, Layton & Finger, P.A. ("**RLF**"), whose role in these cases as primary restructuring counsel to the Debtors will remain unchanged, or the efforts of Cravath, Swaine & Moore LLP ("**Cravath**"), whose role as mergers & acquisition, litigation, and tax counsel to EFIH for Conflict Matters will also remain unchanged. Kirkland and RLF on the one

hand, and Jenner, Cravath, and Stevens & Lee P.C. on the other, will work to minimize duplication of their work, with Kirkland and RLF being chiefly responsible for providing general bankruptcy and reorganization advice to the Debtors, and Jenner and Stevens & Lee advising EFIH on Conflict Matters and determination of whether a matter constitutes a Conflict Matter with respect to restructuring matters, and Cravath advising EFIH on Conflict Matters and determination of whether a matter constitutes a Conflict Matter with respect to mergers & acquisition, litigation, and tax matters, each consistent with their respective engagements. In addition, in its capacity as counsel to EFIH, Jenner will endeavor not to duplicate the efforts of any other professional retained by the Debtors in these chapter 11 cases, including its co-counsel Cravath and Stevens & Lee.

**Compensation**

6.      The hourly rates charged by Jenner for the services of professionals and paraprofessionals it employs are:

| | |
|---|---|
| Partners | $635 o $1200 |
| Associates | $380 to $695 |
| Paralegals | $285 to $335 |
| Project Assistants | $205 to $300 |

The charges for the attorneys who will render services to EFIH will be based upon actual time spent and upon the experience and expertise of the attorney or legal assistant involved. The hourly rates set forth above are subject to periodic adjustments (generally on January 1 of each year) to reflect economic and other conditions.[2]

---

[2] For example, like many similar law firms, Jenner increases the hourly billing rate of attorneys and paraprofessionals yearly in the form of: (a) step increases historically awarded in the ordinary course on the basis of advancing seniority and promotion and (b) periodic increases within each attorney's and paraprofessional's current level of seniority. The step increases do not constitute "rate increases" (as the term is used in the Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases, effective November 1, 2013. As set forth in the Order, Jenner has agreed to provide ten business days' notice to the Debtors, the

7.      The hourly rates set forth above are consistent with the rates that Jenner charges other comparable clients for similar services, whether in or outside of chapter 11, regardless of the location of the client or the court in which a matter is pending. The hourly rates listed above are appropriate and not significantly different from (a) the rates that Jenner charges for other similar types of representations or (b) the rates that other counsel of similar expertise and experience would charge to do work similar to the work Jenner will perform in this chapter 11 case.

8.      Jenner agrees to obtain prior approval from the Fee Committee for any contract attorneys that it uses in this case for which it proposes to charge to EFIH more than the actual charge it pays for their service.

9.      It is Jenner's policy to charge its clients in all areas of practice for all other expenses incurred in connection with the client's case. The expenses charged to clients include, among other things, telephone conference call and international call charges, mail, express mail, and overnight delivery service charges, special or hand delivery charges, document retrieval charges, photocopying charges, charges for mass mailings (including envelopes and labels) provided by Jenner to outside copying services, travel expenses, expenses for "working meals," computerized research, transcription costs, and non-ordinary overhead expenses such as secretarial and other overtime. Jenner will charge EFIH for these expenses in a manner and at rates consistent with charges made generally to Jenner's other clients and within the guidelines set forth in Rule 2014-1 of the Local Rules and all amendments and supplemental standing orders of the Court. Jenner believes that it is more appropriate to charge these expenses to the

---

U.S. Trustee, and the Committees before implementing any periodic increases and has agreed file such notice with the Court.

clients incurring them than to increase the hourly rates and spread the expenses among all clients. Jenner does not charge clients for office supplies.

10. Notwithstanding the foregoing and consistent with the Local Rules, Jenner will charge no more than $0.10 per page for black-and-white photocopying and no more than $0.50 per page for color copies. Jenner does not charge its clients for domestic facsimile transmissions or for office supplies and will not seek reimbursement for them in this case.

11. Jenner will apply for compensation for professional services rendered and reimbursement of expenses incurred in connection with EFIH's chapter 11 case in compliance with sections 330 and 331 of the Bankruptcy Code and applicable provisions of the Bankruptcy Rules, Local Rules, the Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Professionals entered on September 16, 2014 [ECF 2066] and any other applicable procedures and orders of the Court, including the Stipulation and Order Appointing a Fee Committee [ECF 1896], and will cooperate with the fee committee appointed under that Stipulation and Order in the discharge of its duties. In connection with any employment or interim or final fee application Jenner files in this chapter 11 case, Jenner will make a reasonable effort to comply with the Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases Effective as of November 1, 2013.

12. Jenner does not share fees with any attorneys except to the extent permitted by section 504.

**Disinterestedness; Absence of Conflicts of Interest and Grounds for Disqualification**

13. In the ordinary course of business, Jenner requires its professionals, before accepting the representation of a new client or the representation of an existing client in a new matter, to perform a conflict check through the firm's database and to enter conflict information

regarding new clients for new matters into that database. Jenner's conflicts database includes every matter on which Jenner is or at one time was retained and, in each instance, to the extent known, includes the identity of related and adverse parties. Jenner regularly updates this database. Thus, a review of the database should reveal any and all actual or potential conflicts of interest with respect to any given representation.

14.    At Jenner's request, Kirkland provided Jenner a list of potential parties in interest in EFIH's case, which includes EFIH's affiliates, significant creditors, equity interest holders, other known potential parties in interest in its chapter 11 case, employees of this Court and of the U.S. Trustee's Office for Region 3, and the Debtors' professionals that are known to be assisting the Debtors in these chapter 11 cases (collectively, the "Parties in Interest"). The list of Parties in Interest includes more than 1,000 entries. Jenner has conducted an investigation (the "Conflicts Check") of its client records for purposes of compliance with Bankruptcy Rule 2014.

15.    Jenner has compared the Parties in Interest list with its list of current and former clients. The Parties in Interest who or whose affiliates are current or former clients are listed on Exhibit 2 to this Declaration. Jenner is not providing and will not provide any representation or advice to any of the entities listed on the Parties in Interest list, including any who are current clients, for any matter arising in or in connection with this chapter 11 case and has not provided any such services. For disclosure purposes, Jenner notes that it has provided advice to a party to an executory contract with TCEH, which has not yet been assumed or rejected but has not made an appearance in that case or engaged in negotiations with TCEH regarding the contract. Jenner has established a screening procedure so that the Jenner attorneys involved in advising and representing EFIH and the Jenner attorneys involved in advising and potentially representing the TCEH contract counterparty will not share any information about their matters with each other.

6

16.      In addition, Jenner or one of its partners has been appointed as a monitor over Citibank N.A. (which is a letter of credit issuer to the Debtor and was one of the Debtor's investment bankers and whose affiliates are debtor in possession lenders and secured debtholders in this case) and over Credit Suisse AG (which was one of the Debtor's investment bankers and secured debtholders and whose affiliates are debtor in possession lenders in this case) for matters unrelated to this case, and a Jenner partner served as the Examiner in the case of *In re Lehman Brothers Holdings Inc.*, Case no. 08-13522-SCC (Bankr. S.N.D.Y.), which was one of the Debtor's investment bankers.

17.      Rule 2014 requires disclosure of connections with "the debtor, creditors [and] any other party in interest." The Bankruptcy Code defines "creditor" as "entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor" or whose claim is deemed to arise prepetition. EFIH's affiliates' creditors (or parties in interest) who are not themselves EFIH's creditors (or parties in interest) are not creditors (or parties in interest) in EFIH's chapter 11 case; they are creditors of EFIH's creditors (or parties in interest). Based on these provisions, Jenner did not conduct an investigation of the approximately 20,000 other creditors and parties in interest in the related chapter 11 cases who are not parties in interest in EFIH's chapter 11 case.

18.      Jenner's practices encompass the representation of many investors, financial institutions and other entities, some of which may be or may become creditors or parties in interest, including potential acquirers of assets in EFIH's chapter 11 case. Furthermore, as part of its practice, Jenner appears in cases, proceedings, and transactions involving numerous attorneys, accountants, and financial advisors, both in adverse and non-adverse roles, some of which may represent the Debtors, creditors, or parties in interest, or themselves be creditors or parties in interest in these chapter 11 cases, or employ persons with whom Jenner attorneys

have personal or familial relationships. It is not practicable for Jenner to list all such representations and relationships, but I believe that none of them would prevent Jenner from being a disinterested person, would involve the holding or representation of an interest adverse to the estate, or would create a conflict of interest with respect to this employment. Jenner has not and will not represent any of these creditors, investors, potential acquirers, parties in interest, attorneys, financial advisors, accountants or any other entity in or in connection with these chapter 11 cases.

19.    Based on my review of the Parties in Interest List and the Conflict Check and on my own investigation, I believe that Jenner does not have any conflicts of interest that would prevent or restrict it in representing EFIH under nonbankruptcy conflict rules.

20.    A Jenner partner or I will also file appropriate supplemental disclosure(s) with the Court as necessary to the extent that additional information concerning any other Parties in Interest is developed.

21.    To the extent that issues arise that would cause EFIH to be adverse to any of Jenner's clients such that it would not be appropriate for Jenner to represent EFIH with respect to such matters, the Disinterested Manager will request that its co-counsel Stevens & Lee represent EFIH with respect to those matters.

22.    Based on the foregoing, I believe that Jenner is a "disinterested person", as defined in section 101(14) of the Bankruptcy Code, and does not hold or represent an interest adverse to the EFIH's estate, as required by section 328(a) of the Bankruptcy Code, and that Jenner's partners, associates and special attorneys do not hold or represent any interest adverse to EFIH or its estate, except as otherwise specified in this Declaration. Accordingly, I submit that Jenner is not disqualified for employment by EFIH under section 327(a) of the Bankruptcy

Code to advise and represent EFIH as independent counsel with respect to Conflict Matters and in determining whether a matter constitutes a Conflict Matter.

23.    In addition, to the best of my knowledge, information and belief, neither I, Jenner, nor any partner, associate or special attorney of Jenner, is a relative of, or has been so connected to, any judge of the United States Bankruptcy Court for the District of Delaware, the United States Trustee for the District of Delaware, or any employee of the United States Trustee for the District of Delaware. Accordingly, I submit that Bankruptcy Rule 5002 would not prohibit employment of Jenner as independent counsel with respect to Conflict Matters and in determining whether a matter constitutes a Conflict Matter.

**Response to U.S. Trustee Fee Guideline Questions**

24.    The following answer the questions in Section D.1 of the Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases Effective as of November 1, 2013:

> a.    Jenner did not agree to any variations from, or alternatives to, its standard or customary billing arrangements for this engagement.
>
> b.    None of the professionals included in this engagement vary their rate based on the geographic location of the bankruptcy case.
>
> c.    Jenner has not previously represented EFIH.
>
> d.    EFIH has not approved Jenner's budget and staffing plan. Because it was employed so recently, Jenner has not yet developed a budget or staffing plan. Jenner intends to do so in accordance with the Stipulation and Order Appointing a Fee Committee [ECF 1896] once its employment is approved.

I declare under penalty of perjury as provided in 28 U.S.C. § 1746 that the foregoing is true and correct according to the best of my knowledge, information and belief.

Dated: June 16, 2015                    /s/ *Richard Levin*
                                        Richard Levin

**Exhibit 1** (to Levin Declaration)

[Jenner & Block LLP Engagement Letter]

919 THIRD AVENUE NEW YORK NEW YORK 10022-3908                    J E N N E R & B L O C K LLP

                                                            Richard Levin
                                                            Tel +1 212 891 1601
As of May 18, 2015                                          rlevin@jenner.com


Energy Future Intermediate Holding Company LLC
Energy Plaza
1601 Bryan Street
Dallas, TX 75201
Attn: Charles H. Cremens, Disinterested Manager


Ladies and Gentlemen:

This engagement letter confirms the engagement of Jenner & Block LLP, an Illinois limited
liability partnership ("**Jenner & Block**"), by Energy Future Intermediate Holding Company
LLC ("**you**"), and the basis on which Jenner & Block will represent you. We appreciate your
confidence and thank you for selecting Jenner & Block as counsel.

1. **Scope of Representation**. Except as we may agree otherwise in writing, Jenner & Block will
be representing only you and will not be representing any of your parents, subsidiaries,
affiliated entities, shareholders, partners, directors, officers, agents or employees. Jenner &
Block's engagement is limited to representing and advising you in connection with "Conflict
Matters" as defined in resolutions of your Board of Managers adopted November 7, 2014 and
supplemented by resolutions adopted December 9, 2014, a copy of which is attached hereto, and
in advising your disinterested manager on whether a matter is a Conflict Matter.

Because the representation is limited to a specific undertaking, Jenner & Block's acceptance of
this engagement does not involve an undertaking to represent you or your interests in any other
matter unless specifically requested by you and agreed by Jenner & Block. Also, after
completion of this matter, changes may occur in pertinent laws or regulations that will have an
impact upon your future rights and liabilities. Unless you engage us after completion of this
matter to provide additional advice on issues arising from this matter, Jenner & Block will have
no continuing obligation to advise you with respect to future legal developments.

You may limit or expand the scope of Jenner & Block's representation from time to time,
provided that Jenner & Block must agree to any expansion of scope. Except as we may
otherwise agree in writing, the terms of this engagement letter apply to all expansions in the
scope of representation and to all additional engagements for you which Jenner & Block may
undertake.

As of May 18, 2015

2. **Fees and Expenses**. Our fees are based substantially upon hours charged, recorded in tenth of an hour increments, at Jenner & Block's scheduled rates which are in effect at the time the services are performed. Those scheduled rates are periodically adjusted, generally at the beginning of a calendar year. My present hourly rate is $1150. Jenner & Block's present scheduled hourly rates for others range from $635 to $1200 for partners, from $380 to $695 for associates, from $285 to $335 for paralegals and from $205 to $300 for project assistants.

In addition to fees, our statements include out-of-pocket expenses and internal charges which Jenner & Block incurs in connection with the representation. Also, it is our standard practice to have certain charges for outside retained services (such as for expert witnesses, local counsel and consultants) invoiced directly to you. This letter acknowledges your agreement to pay all such invoices in a timely manner and to hold Jenner & Block harmless from your failure to do so. To the extent such third party charges are paid directly by Jenner & Block, they will be included on our statements.

The fees and other charges for this matter are not in any way contingent upon its successful completion or outcome. Unless we otherwise expressly agree in writing, any advance estimates by us of fees and expenses in connection with services to be performed, and any deposits, retainers or advances which we may require for work to continue are not a limitation nor binding commitment on our part as to the total fees and other charges for which you are responsible under the terms of this engagement.

Jenner & Block's statements are typically submitted monthly, unless the amount to be billed is not significant, in which case amounts will be carried forward. Jenner & Block's statements are due and payable on receipt. If you question or dispute any entry on a statement, we ask that the matter be brought to our attention promptly, so that any disputes or problems can be fairly and amicably resolved in a timely manner. You agree that each statement will be paid within 30 days of the date on which the statement was sent to you. Subject to the requirement of applicable legal ethics rules, Jenner & Block reserves the right to stop work and close the files on all matters being handled for you if any amount invoiced to you is 60 days or more past due. Interest is charged at the rate of 7% per annum from the date of the statement(s) for amounts which are not paid within 60 days of that date. Interest will not be charged to individuals for whom Jenner & Block performs services for personal, family or household matters.

If you substantially fail to fulfill this agreement as to fees and expenses, Jenner & Block may withdraw or seek leave to withdraw from its representation of you. Such withdrawal shall not affect our right to be paid in full for previously incurred but unpaid fees, charges and disbursements.

If as a result of the engagement, Jenner & Block is required to produce documents or appear as a witness in connection with any litigation, arbitration, mediation, investigation or regulatory proceeding involving you, you also agree to pay to Jenner & Block the costs and expenses (including attorney and staff time at then scheduled hourly rates) reasonably incurred by Jenner & Block in connection with such a requirement. This provision survives the termination of Jenner & Block's representation of you.

Our employment and payment of our fees and expenses are subject to approval of the Bankruptcy Court. We will promptly apply to the Bankruptcy Court for approval. Because we

As of May 18, 2015

are not admitted to practice law in Delaware, we need to associate Delaware counsel as a condition to appearing in the Bankruptcy Court. We will associate Stevens & Lee, which is already your counsel of record in this case.

3. **Conflicts with Other Clients**. As we have discussed, you are aware that the firm represents many other companies and individuals. It is possible that during the time that we are representing you, some of our present or future clients will have disputes or transactions with you, or the Firm will be asked to represent a party to which you are adverse in this matter.

You agree that we may continue to represent or may undertake in the future to represent existing or new clients in any matter that is not substantially related to our work for you even if the interests of such clients in those other matters are directly adverse to you or you are adverse to those other clients in this matter. We agree, however, that your prospective consent to conflicting representation contained in the preceding sentence shall not apply in any instance where, as a result of our representation of you, we have obtained proprietary or other confidential information of a nonpublic nature, that, if known to such other client, could be used in any such other matter by such client to your material disadvantage.

We currently are advising a party to an executory contract with Texas Competitive Electric Holdings LLC, but we have not made an appearance in the Bankruptcy Court on the party's behalf. We believe this representation is not a conflict or potential conflict; this is for disclosure purposes only.

4. **Termination of Representation**. Either of us may terminate the engagement at any time for any reason by providing written notice, subject on the part of Jenner & Block to the requirements of applicable legal ethics rules. Unless we agree to render additional legal services for you, Jenner & Block's representation of you and the attorney/client relationship will terminate upon Jenner & Block sending its final statement for attorney services rendered in this matter.

6. **Document Retention**. During the course of the representation, Jenner & Block shall maintain a file on your behalf. The file may include material you have given to us in connection with the representation, as well as other material such as pleadings, transcripts, exhibits, reports, contracts, wills, certificates and other documents as are determined by Jenner & Block to be reasonably necessary to the representation ("**Your File**"). Your File shall be and remain your property. Jenner & Block may also include in the file its attorney work product, mental impressions and notes (collectively "**Work Product**"). Unless otherwise agreed between us, the Work Product shall be and remain the property of Jenner & Block.

At the termination of the representation and for a period of 7 years thereafter, and provided there are no outstanding unpaid statements for fees and charges owed by you to Jenner & Block, you shall have the right on request to take possession of Your File, not including the Work Product. In such event, Jenner & Block at its expense may make and retain copies of all or portions of Your File. If you do not request possession of Your File within such 7-year period, Jenner & Block will have no further responsibility for the retention and maintenance of Your File and may at its option dispose of all or parts of Your File without further notice to you.

3

As of May 18, 2015

**7. Approval and Return of Signed Letter.** Please signify your agreement to the arrangement for legal services described in this letter by returning to us a signed copy of the engagement letter. We have already commenced work on your behalf, and the effective date of our agreement to provide services will be the date on which we first performed services on your behalf. If you fail to sign and return the letter, we will stop work, close the file and seek to recover from you the reasonable value of any services performed to that point.

We look forward to working with you.

Sincerely,

Jenner & Block LLP

By: _____
    ⸱ Richard Levin

Accepted: Energy Future Intermediate Holding Company LLC

By: _____
    Charles H. Cremens
    Disinterested Manager

Date: As of May 18, 2015

4

## ENERGY FUTURE INTERMEDIATE HOLDING COMPANY LLC ("EFIH")
### BOARD OF MANAGERS RESOLUTIONS
### NOVEMBER 7, 2014

WHEREAS, Energy Future Holdings Corp. ("EFH Corp.") and certain of its direct and indirect subsidiaries (excluding Oncor Electric Delivery Holdings Company LLC and its subsidiaries) (the "Debtors") on April 29, 2014, filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Chapter 11 Case") in the Bankruptcy Court for the District of Delaware (the "Bankruptcy Court");

WHEREAS, the members of the Board have acknowledged that the material facts relating to the relationships or interests of other members of the Board with other affiliated or related companies and other material relationships have been disclosed to them or are otherwise known to them, as contemplated by Section 144 of the Delaware General Corporation Law (the "DGCL") or EFIH's governing documents, to the extent applicable;

WHEREAS, as described in the material presented and reviewed by the Board and based on the known facts and circumstances, Charles H. Cremens as the member of the Board who is disinterested (within the meaning of Section 144 of the DGCL or EFIH's governing documents, to the extent applicable) (the "Disinterested Manager");

WHEREAS, the members of the Board of Managers of EFIH (the "Board") have considered the *Stipulation and Agreed Order Regarding a Protocol for Certain Case Matters*, approved by the Bankruptcy Court on September 16, 2014, concerning, among other things, the ability of the Disinterested Manager to retain independent counsel and other advisors for EFIH under certain circumstances; and

WHEREAS, the members of the Board desire to delegate certain authority to the Disinterested Manager.

NOW, THEREFORE, BE IT,

RESOLVED that the Board hereby determines that Charles H. Cremens as a member of the Board is currently disinterested (within the meaning of Section 144 of the DGCL or EFIH's governing documents, to the extent applicable) with respect to the Conflict Matters (as defined below); and further

RESOLVED that the Board hereby delegates authority to the Disinterested Manager to engage independent legal counsel and such other advisors as he deems necessary to represent and advise EFIH, reporting to the Disinterested Manager, on matters pertaining to the Chapter 11 Case on which a conflict exists between EFIH and any other Debtor (the "Conflict Matters"); and further

RESOLVED that the Board hereby requests that the Disinterested Manager review Conflict Matters identified by the Disinterested Manager (and his advisors) and make such recommendations to the Board as the Disinterested Manager deems appropriate, in the exercise of his business judgment and with the advice of independent legal counsel and other applicable advisors; and further

RESOLVED, that any officers of EFIH (collectively, the "Authorized Officers"), acting alone or with one or more other Authorized Officers be, and they hereby are, authorized, empowered and directed to take any and all action that they deem necessary or proper to assist the Disinterested Manager in carrying out the foregoing.

## ENERGY FUTURE INTERMEDIATE HOLDING COMPANY LLC ("EFIH")
### BOARD OF MANAGERS RESOLUTIONS
### DECEMBER 9, 2014

The following recitals and resolutions supplement the Board of Managers Resolutions dated as of November 7, 2014 ("November 7th Resolutions") and, in the event of any inconsistency, these resolutions shall supersede and control.

WHEREAS, Energy Future Holdings Corp. ("EFH Corp.") and certain of its direct and indirect subsidiaries (excluding Oncor Electric Delivery Holdings Company LLC and its subsidiaries), including EFIH (the "Debtors") on April 29, 2014, filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code ("Chapter 11 Case") in the Bankruptcy Court for the District of Delaware ("Bankruptcy Court");

WHEREAS, the members of the Board of Managers of EFIH ("Board") having relationships or interests with other affiliated or related companies and their direct or indirect equity holders and other material relationships have disclosed certain facts that they believe to be material to the Board;

WHEREAS, as described in the material presented and reviewed by the Board and based on a review of the known facts and circumstances, the Board has determined and confirmed by the November 7th Resolutions that Charles Cremens is the only current member of the Board that is disinterested with respect to any matter pertaining to the Chapter 11 Case on which an actual conflict exists between EFIH, on the one hand, and any other Debtor, on the other hand ("Conflict Matters"), and was designated the Disinterested Manager ("Disinterested Manager") as set forth in *Stipulation and Agreed Order Regarding a Protocol for Certain Case Matters*, approved by the Bankruptcy Court on September 16, 2014 ("Stipulation");

WHEREAS, the members of the Board considered the Stipulation related to, among other things, the authority of the Disinterested Manager to retain independent legal counsel and other advisors under certain circumstances;

WHEREAS, the Board resolved by the November 7th Resolutions to delegate the authority to the Disinterested Manager to seek and retain, at EFIH's sole expense, independent legal counsel and such other advisors ("Independent Advisors") as the Disinterested Manager deems necessary to represent and advise EFIH, reporting to the Disinterested Manager, on the Conflict Matters;

WHEREAS, the Disinterested Manager interviewed and engaged certain Independent Advisors effective as of May 18, 2015 to represent and advise EFIH, and reporting solely to the Disinterested Manager, as set forth herein; and

WHEREAS, pursuant to the Stipulation and Section 2.1(h) of the Second Amended and Restated Limited Liability Company Agreement of EFIH, the members of the Board desire to delegate to the Disinterested Manager certain rights, authority, and powers in connection with Conflict Matters, among other matters set forth herein;

NOW, THEREFORE, BE IT,

RESOLVED that, to the fullest extent permitted by applicable law, the Board hereby delegates to the Disinterested Manager the authority to review and act upon (as set forth herein) any Conflict Matters; and further

RESOLVED that, to the fullest extent permitted by applicable law, the Board hereby delegates to the Disinterested Manager the authority to investigate and determine whether any matter constitutes a Conflict Matter, in the exercise of his business judgment and with the advice of the Independent Advisors, and any such determination shall be binding on EFIH and EFIH's subsidiaries (other than Oncor Electric Delivery Holdings Company LLC and its direct and indirect subsidiaries (the "Excluded Subsidiaries")); and further

RESOLVED that, to the fullest extent permitted by applicable law, the Board hereby delegates to the Disinterested Manager the authority to make all decisions, and to implement or direct the implementation of all such decisions, in each case on EFIH's behalf, with respect to Conflict Matters as the Disinterested Manager deems appropriate, in the exercise of his business judgment and with the advice of the Independent Advisors or others with whom the Disinterested Manager determines it is appropriate or necessary to consult, and to act on behalf of and bind EFIH in connection therewith, including taking action on EFIH's behalf, as the direct and indirect holder of the equity interests in its subsidiaries, causing its subsidiaries (other than the Excluded Subsidiaries) to abide by and implement the decisions and actions of the Disinterested Manager with respect to Conflict Matters and the Disinterested Manager's determination of whether a matter constitutes a Conflict Matter; and further

RESOLVED that the Disinterested Manager will update the Board at board meetings on the status of his or her (i) review of and decisions on whether any matter constitutes a Conflict Matter, and (ii) review of and decisions on Conflict Matters, in each case in the manner that the Disinterested Manager determines is appropriate and necessary to fulfill his or her duties and obligations as the Disinterested Manager, taking into account the confidentiality or privilege of the Disinterested Manager's work and the advice of the Independent Advisors; and further

RESOLVED that EFIH shall, as the direct and indirect holder of the equity interests in its subsidiaries direct and cause each of its subsidiaries (other than the Excluded Subsidiaries) to abide by and comply with these resolutions; and further

RESOLVED that the officers, employees, advisors and agents of EFIH (collectively, the "Authorized Persons"), acting alone or with one or more other Authorized Persons, be, and hereby are, directed to furnish to the Disinterested Manager and the Independent Advisors all information as the Disinterested Manager or the Independent Advisors may request, in a manner that shall not effect a waiver of any applicable privilege, and to cooperate with the Disinterested Manager and the Independent Advisors in all respects; and further

RESOLVED that any Authorized Person, acting alone or with one or more other Authorized Persons be, and hereby are, authorized, empowered and directed to implement any decision made by the Disinterested Manager in respect of a Conflict Matter on behalf of EFIH as directed by the Disinterested Manager; provided that the Disinterested Manager retains the right to implement any such decision on behalf of EFIH and its subsidiaries (other than the Excluded Subsidiaries) himself or through the Independent Advisors; and further

RESOLVED that any Authorized Person, acting alone or with one or more other Authorized Persons be, and they hereby are, authorized, empowered and directed to take any and all action that they deem necessary or proper to assist the Disinterested Manager in carrying out the foregoing, in each case as requested by and under the direction of the Disinterested Manager; and further

RESOLVED that the Disinterested Manager shall control any attorney-client, work product, or other privilege belonging to EFIH in connection with the Independent Advisors or their work or privileged

communications on the Conflict Matters and on whether any matter constitutes a Conflict Matter; and further

RESOLVED that each member of the Board has agreed and hereby agrees that he or she shall not have access to, and shall not seek access to, and hereby directs that each Authorized Person shall not have access to and shall not seek access to, the work or privileged material of the Independent Advisors on the Conflict Matters or on whether any matter constitutes a Conflict Matter, except as ppermitted by the Disinterested Manager; and further

RESOLVED that the Disinterested Manager be, and hereby is, authorized to take all such further action, at EFIH's expense, as the Disinterested Manager shall deem necessary, proper or advisable consistent with these resolutions or in order to carry out fully the intent and purposes of these resolutions; and further

RESOLVED that all actions previously done or approved, or caused to be done or approved, by the Disinterested Manager or the Authorized Persons, including the retention of Independent Advisors, in each case only to the extent consistent with these resolutions, or to otherwise carry out the intent of these resolutions, be and hereby are approved, adopted, confirmed and ratified in all respects.

**Exhibit 2** (to Levin Declaration)

[List of Parties in Interest Who Are, or Whose Affiliates Are, Current and Former Jenner Clients]

| Name | Role / Category | Client | Affiliate of Client | Former Client | Affiliate of Former Client |
|---|---|---|---|---|---|
| AON HEWITT COLLECTIVE INVESTMENT TRUST | DIP Lender | X | X | | |
| Energy Insurance Mutual (EIM) | Insurer | X | X | | |
| BLUE CROSS BLUE SHIELD OF MICHIGAN | DIP Lender | X | | | |
| BLUE CROSS OF CALIFORNIA. | DIP Lender | X | | | |
| DOW RETIREMENT GROUP TRUST.. | DIP Lender | X | | | |
| JP Morgan | Secured debtholder | X | | | |
| JPMORGAN CHASE | Bank | X | | | |
| JPMORGAN CHASE | Contract counterparty | X | | | |
| JPMORGAN CHASE BANK NA | Vendor | X | | | |
| Nuveen Asset Management, LLC | Secured debtholder | X | | | |
| Nuveen Asset Management, LLC | Unsecured debtholder | X | | | |
| Principal Financial | Secured debtholder | X | | | |
| Prudential | Secured debtholder | X | | | |
| Prudential | Unsecured debtholder | X | | | |
| RSUI (CRC) | Insurer | X | | | |
| UMC BENEFIT BOARD, INC. | DIP Lender | X | | | |
| AMERICAN EXPRESS RETIREMENT PLAN | DIP Lender | | X | | |
| BlackRock | Secured debtholder | | X | | |
| BlackRock | Unsecured debtholder | | X | | |
| Blackrock Corporate High Yield Fund, Inc. | DIP Lender | | X | | |
| BLACKROCK DEBT STRATEGIES FUND, INC | DIP Lender | | X | | |
| BlackRock Defined Opportunity Credit Trust | DIP Lender | | X | | |
| BlackRock Fixed Income Portable Alpha Master Series Trust | DIP Lender | | X | | |
| BlackRock Floating Rate Income Strategies Fund, Inc. | DIP Lender | | X | | |
| BLACKROCK FLOATING RATE INCOME TRUST | DIP Lender | | X | | |
| BlackRock Funds II - BlackRock Floating Rate Income Portfolio | DIP Lender | | X | | |
| BlackRock Funds II - High Yield Bond Portfolio | DIP Lender | | X | | |
| BlackRock Funds II, BlackRock Multi-Asset Income Portfolio | DIP Lender | | X | | |
| BLACKROCK GLOBAL INVESTMENT SERIES: INCOME STRATEGIES PORTFOLIO | DIP Lender | | X | | |
| Blackrock Global Long/Short Credit Fund of Blackrock Funds | DIP Lender | | X | | |
| BlackRock High Yield Portfolio of the BlackRock Series Fund, Inc. | DIP Lender | | X | | |
| BlackRock High Yield V.I. Fund of BlackRock Variable Series Funds, Inc. | DIP Lender | | X | | |
| Blackrock Limited Duration Income Trust | DIP Lender | | X | | |
| BLACKROCK SECURED CREDIT PORTFOLIO OF BLACKROCK FUNDS II | DIP Lender | | X | | |
| BLACKROCK SENIOR FLOATING RATE PORTFOLIO. | DIP Lender | | X | | |
| Blackrock Senior Income Series IV | DIP Lender | | X | | |
| Blackrock Senior Income Series V, Limited | DIP Lender | | X | | |
| BLACKROCK SHORT DURATION HIGH INCOME FUND | DIP Lender | | X | | |
| BLACKROCK SPECIALIST STRATEGIES FUNDS/JPMBI RE BLACKROCK BANK LOAN FUND | DIP Lender | | X | | |
| BMO Asset Management Inc. | Secured debtholder | | X | | |
| BMO GLOBAL STRATEGIC BOND FUND | DIP Lender | | X | | |
| EXELON CORPORATION PENSION MASTER RETIREMENT TRUST.. | DIP Lender | | X | | |
| FIDELITY ADVISOR SERIES 1:FIDELITY ADVISOR HIGH INCOME ADVANTAGE FUND | DIP Lender | | X | | |
| FIDELITY ADVISOR SERIES I: FIDELITY ADVISOR FLOATING RATE HIGH INCOME FUND | DIP Lender | | X | | |
| FIDELITY ADVISOR SERIES II: FIDELITY ADVISOR STRATEGIC INCOME FUND | DIP Lender | | X | | |
| Fidelity American high yield fund | DIP Lender | | X | | |
| Fidelity Canadian Asset Allocation Fund | DIP Lender | | X | | |
| Fidelity Canadian Balanced Fund | DIP Lender | | X | | |
| FIDELITY CENTRAL INVESTMENT PORTFOLIOS LLC: FIDELITY FLOATING RATE CENTRAL FUND | DIP Lender | | X | | |
| FIDELITY FLOATING RATE HIGH INCOME FUND | DIP Lender | | X | | |
| FIDELITY FLOATING RATE HIGH INCOME INVESTMENT TRUST | DIP Lender | | X | | |
| Fidelity Funds SICAV / Fidelity Funds - US High Yield | DIP Lender | | X | | |
| Fidelity Investments | Secured debtholder | | X | | |
| Fidelity Investments | Unsecured debtholder | | X | | |
| Fidelity Puritan Trust: Fidelity Puritan Fund | DIP Lender | | X | | |
| FIDELITY SCHOOL STREET TRUST: FIDELITY STRATEGIC INCOME FUND | DIP Lender | | X | | |
| FIDELITY SUMMER STREET TRUST- FIDELITY SERIES FLOATING RATE HIGH INCOME FUND | DIP Lender | | X | | |
| FIDELITY SUMMER STREET TRUST: FIDELITY CAPITAL & INCOME FUND | DIP Lender | | X | | |

| | | | | |
|---|---|---|---|---|
| FIRSTENERGY SYSTEM MASTER RETIREMENT TRUST | DIP Lender | X | | |
| FIRSTENERGY SYSTEM MASTER RETIREMENT TRUST. | DIP Lender | X | | |
| FORTRESS CREDIT BSL LIMITED | DIP Lender | X | | |
| FORTRESS CREDIT FUNDING VI LP / DRAWBRIDGE SPECIAL OPPORTUNITIES FUND LTD. | DIP Lender | X | | |
| Fubon Asset Management Company, LTD | Secured debtholder | X | | |
| HSBC SECURITIES USA INC | DIP Lender | X | | |
| INTEL CORPORATION RETIREMENT PLANS MASTER TRUST | DIP Lender | X | | |
| John hancock fund II floating rate income fund | DIP Lender | X | | |
| JOHN HANCOCK PENSION PLAN | DIP Lender | X | | |
| JOHN HANCOCK VARIABLE INSURANCE TRUST HIGH YIELD TRUST | DIP Lender | X | | |
| JOHN HANCOCK VARIABLE INSURANCE TRUST TOTAL RETURN TRUST. | DIP Lender | X | | |
| JP Morgan | Investment Bank | X | | |
| JP MORGAN WHITEFRIARS INC. | DIP Lender | X | | |
| JPMORGAN CHASE BANK, N.A. AS TRUSTEE OF THE JPMORGAN CHASE RETIREMENT PLAN | DIP Lender | X | | |
| JPMORGAN CORE PLUS BOND FUND | DIP Lender | X | | |
| JPMorgan Floating Rate Income Fund | DIP Lender | X | | |
| JPMORGAN GLOBAL ALLOCATION FUND | DIP Lender | X | | |
| JPMORGAN GLOBAL BOND OPPORTUNITIES FUND | DIP Lender | X | | |
| JPMORGAN HIGH YIELD FUND | DIP Lender | X | | |
| JPMorgan Income Builder Fund | DIP Lender | X | | |
| JPMorgan Leveraged Loans Master Fund LP | DIP Lender | X | | |
| JPMORGAN SENIOR SECURED LOAN FUND LIMITED | DIP Lender | X | | |
| JPMORGAN SHORT DURATION HIGH YIELD FUND | DIP Lender | X | | |
| JPMORGAN SPECIALIST INVESTMENT FUNDS dba JPMORGAN MULTI SECTOR CREDIT FUND | DIP Lender | X | | |
| JPMorgan Strategic Income Opportunities Fund | DIP Lender | X | | |
| JPMorgan Tax Aware High Income Fund | DIP Lender | X | | |
| L-3 COMMUNICATIONS CORPORATION MASTER TRUST | DIP Lender | X | | |
| Nestle in the USA Pension Trust | DIP Lender | X | | |
| Nomura | Secured debtholder | X | | |
| Nomura | Unsecured debtholder | X | | |
| NOMURA HOLDING AMERICA INC. - NOMURA CORPORATE FUNDING AMERICAS, LLC | DIP Lender | X | | |
| NOMURA MULTI MANAGERS FUND -GLOBAL BOND | DIP Lender | X | | |
| NOMURA PARTNERS FUNDS, INC. HIGH YIELD FUND | DIP Lender | X | | |
| NOMURA US ATTRACTIVE YIELD CORPORATE BOND FUND MOTHER FUND | DIP Lender | X | | |
| Principal Funds, Inc. - High Yield Fund I | DIP Lender | X | | |
| Prudential Bank Loan Fund of the Prudential Trust Company Collective Trust | DIP Lender | X | | |
| Prudential Investment Portfolios, Inc. 14-Prudential Floating Rate Income Fund | DIP Lender | X | | |
| PUTNAM DIVERSIFIED INCOME TRUST | DIP Lender | X | | |
| PUTNAM DIVERSIFIED INCOME TRUST (CAYMAN) MASTER FUND | DIP Lender | X | | |
| Putnam Floating Rate Income Fund | DIP Lender | X | | |
| PUTNAM HIGH YIELD ADVANTAGE FUND | DIP Lender | X | | |
| PUTNAM HIGH YIELD TRUST | DIP Lender | X | | |
| PUTNAM MASTER INTERMEDIATE INCOME TRUST | DIP Lender | X | | |
| PUTNAM PREMIER INCOME TRUST | DIP Lender | X | | |
| PUTNAM VARIABLE TRUST - PUTNAM VT DIVERSIFIED INCOME FUND | DIP Lender | X | | |
| PUTNAM VARIABLE TRUST - PVT HIGH YIELD FUND - PUTNAM INVESTMENTS | DIP Lender | X | | |
| Rio Tinto America master Retirement Trust | DIP Lender | X | | |
| THE WALT DISNEY CO. MASTER RETIREMENT PLAN | DIP Lender | X | | |
| THL CREDIT WIND RIVER 2013-1 CLO LTD. | DIP Lender | X | | |
| THL CREDIT WIND RIVER 2014-2 CLO LTD | DIP Lender | X | | |
| Deutsche Bank | Bank | | X | |
| Deutsche Bank | Secured debtholder | | X | |
| Deutsche Bank | Unsecured debtholder | | X | |
| Deutsche Bank AG New York | DIP Lender | | X | |
| DEUTSCHE BANK AG NEW YORK BRANCH | Vendor | | X | |
| DEUTSCHE BANK AG, CAYMAN ISLANDS | DIP Lender | | X | |
| FS GLOBAL CREDIT OPPORTUNITIES FUND dba DAUPHIN FUNDING LLC | DIP Lender | | X | |
| ST. JOSEPH HEALTH SYSTEM | DIP Lender | | X | |
| ASCENSION HEALTH MASTER PENSION TRUST. | DIP Lender | | | X |
| Associated Electric & Gas Insurance Services (AEGIS) | Insurer | | | X |
| BAE MASTER PENSION INVESTMENT TRUST | DIP Lender | | | X |
| Deutsche Bank | Administrative Agent | | | X |

Parties in Interest Who Are, or Whose Affiliates Are, Current and Former Jenner Clients

| | | | | | |
|---|---|---|---|---|---|
| DEUTSCHE BANK AG LONDON BRANCH dba THL CREDIT WIND RIVER 2013-2 CLO LTD | DIP Lender | | | | X |
| ING CAPITAL LLC | DIP Lender | | | | X |
| ING Investment Management CLO II, Ltd. | DIP Lender | | | | X |
| ING Investments | Secured debtholder | | | | X |
| LOCKHEED MARTIN CORPORATION MASTER RETIREMENT TRUST.. | DIP Lender | | | | X |
| OAKTREE ENHANCED INCOME FUND LP dba OAKTREE ENHANCED INCOME FUNDING SERIES II LTD | DIP Lender | | | | X |
| OAKTREE ENHANCED INCOME FUND LP dba OAKTREE ENHANCED INCOME FUNDING SERIES III LTD | DIP Lender | | | | X |
| OAKTREE ENHANCED INCOME FUNDING SERIES I LTD / OAKTREE ENHANCED INCOME FUND LP | DIP Lender | | | | X |
| Oaktree Senior Loan Fund L.P. | DIP Lender | | | | X |
| SAIC ENERGY, ENVIRONMENT & INFRASTRUCTURE,LLC | Contract counterparty | | | | X |
| XEROX CORPORATION RETIREMENT AND SAVINGS PLAN | DIP Lender | | | | X |
| Ziff Brothers Investments, LLC | Secured debtholder | | | | X |