## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) | Case No. 14-10979 (CSS) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | **Hearing Date:  July 16, 2015 at 9:30 a.m.** |
| | ) | **Objection Deadline:  July 9, 2015 at 4:00 p.m.** |

### MOTION OF ENERGY FUTURE HOLDINGS CORP.,
### *ET AL.*, FOR ENTRY OF AN ORDER APPROVING THE DEBTORS'
### AGREEMENT TO CERTAIN TAX ADJUSTMENTS FOR 2008 AND 2009

The above-captioned debtors and debtors in possession (collectively, the "Debtors") file this motion (this "Motion") for the entry of an order substantially in the form attached hereto as **Exhibit A** (the "Order") approving the Debtors' agreement with the Internal Revenue Service (the "IRS") to certain tax adjustments under a regular agreed Revenue Agent Report for the 2008 and 2009 tax years, as set forth in the executed IRS forms attached hereto as **Exhibit B** (the "RAR").  In support of this Motion, the Debtors submit the *Declaration of Carla Howard, Senior Vice President and General Tax Counsel of Energy Future Holdings Corp.,* et al.*, in Support of the Motion of Energy Future Holdings Corp.,* et al.*, for Entry of an Order Approving the Debtors' Agreement to Certain Tax Adjustments for 2008 and 2009*, filed substantially contemporaneously herewith.  In further support of this Motion, the Debtors respectfully submit as follows.

---

[1]    The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810.  The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201.  Due to the large number of debtors in these chapter 11 cases, for which joint administration has been granted, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

**Jurisdiction and Venue**

1.      The United States Bankruptcy Court for the District of Delaware (the "Court")
has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended
Standing Order of Reference from the United States District Court for the District of Delaware*,
dated February 29, 2012.  This matter is a core proceeding within the meaning of 28 U.S.C.
§ 157(b)(2), and the Debtors confirm their consent pursuant to rule 9013-1(f) of the Local Rules
of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of
Delaware (the "Local Bankruptcy Rules") to the entry of a final order by the Court in connection
with this Motion to the extent that it is later determined that the Court, absent consent of the
parties, cannot enter final orders or judgments in connection with this Motion consistent with
Article III of the United States Constitution.

2.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The bases for the relief requested in this Motion are sections 105 and 363 of
title 11 of the United States Code (the "Bankruptcy Code").

**Relief Requested**

4.      By this Motion, the Debtors request entry of the Order approving the Debtors'
agreement with the IRS to certain tax adjustments for the 2008 and 2009 tax years under the
RAR.

**Background**

5.      On April 29, 2014 (the "Petition Date"), each of the Debtors filed a voluntary
petition with the Court under chapter 11 of the Bankruptcy Code.  The Debtors are operating
their businesses and managing their properties as debtors in possession pursuant to
sections 1107(a) and 1108 of the Bankruptcy Code.  The Court has entered a final order for joint

2

administration of these chapter 11 cases.  The Office of the United States Trustee for the District
of Delaware formed the Official Committee of Unsecured Creditors of Energy Future
Competitive Holdings Company LLC ("EFCH"), Texas Competitive Electric Holdings Company
LLC ("TCEH"), their direct and indirect subsidiaries, and EFH Corporation Services Company
on May 13, 2014 [D.I. 420] and the Official Committee of Unsecured Creditors of Energy Future
Holdings Corp. ("EFH Corp."), Energy Future Intermediate Holding Company LLC ("EFIH"),
EFIH Finance Inc., and EECI, Inc. on October 27, 2014 [D.I. 2570].

6.     On October 27, 2014, the Court approved the Debtors' motion requesting
approval of execution of the regular agreed Revenue Agent Report for 2007 [D.I. 2566].  That
motion covered adjustments for the 2007 tax year, whereas this motion covers adjustments for
the 2008 and 2009 tax years.

7.     On June 25, 2015, the Debtors executed the 2008 and 2009 RAR and submitted it
to the IRS under the cover letter attached hereto as **Exhibit C** (the "Cover Letter").  The Cover
Letter explains that the chapter 11 cases are pending and that the Debtors are subject to the
jurisdiction of this Court.  The Cover Letter expressly states that the Debtors' signature, which
reflects agreement to the adjustments reflected in the RAR, is or may be subject to the Court's
approval.  The Debtors file this Motion to obtain that approval to the extent necessary.[2]
Likewise, the Cover Letter states that the proof of claim filed by the government for prepetition
tax years, which has essentially incorporated the adjustments that are reflected by the RAR, will
be subject to the jurisdiction of this Court.  This Motion does not, however, request that the

---

[2]    The Debtors also expect that a RAR relating to Oncor Electric Delivery Company LLC ("Oncor") will be
executed contemporaneously with the RAR that is subject to this Motion.  Although the Debtors essentially
function as tax return preparers for Oncor, the Debtors do not believe that this Court's approval is necessary for
the execution of the Oncor RAR because neither Oncor, Oncor Electric Delivery Holdings Co., nor Oncor
Management Investment LLC is a Debtor.

Court rule on any aspect of an IRS proof of claim or, importantly, the settlement of any prepetition tax years covered by the IRS proof of claim.

8.    Under the RAR, the Debtors agreed to certain adjustments proposed by the IRS to the Debtors' 2008 and 2009 taxable income.  In so doing, the Debtors agreed to be assessed no additional tax liability for the 2008 tax year and an incremental tax liability of approximately $14.4 million for 2009.  The incremental tax liability for the 2009 taxable year is principally related to the settlement, reached with the IRS in 2013, of a multi-billion-dollar "mark-to-market" deduction that was originally claimed by the Debtors in 2005 (the "Mark-to-Market Settlement").  The executed IRS forms attached to this Motion reflect the Debtors' agreement to the specified adjustments.  As noted above, the Debtors have, since these chapter 11 cases were filed, previously agreed to adjustments for 2007.

9.    Executing the RAR has no effect on the substantive rights of the Debtors or any other parties in interest.  The Debtors and other parties in interest maintain the right to challenge the adjustments that were not subject to binding closing agreements before bankruptcy was filed, as well as the incremental tax claim, through the proof of claim process.[3]  Additionally, with certain immaterial exceptions, the adjustments in the RAR were anticipated and incorporated when the intercompany tax sharing receivables and payables relating to the resolution of open tax years (including the Mark-to-Market Settlement) were recorded on the Debtors' books and records in 2013.  Similarly, the impact of the adjustments in the RAR, including the adjustments that partially implement the Mark-to-Market Settlement, were generally already reflected in the

---

[3]    Even outside of bankruptcy, the Debtors would be entitled to challenge those adjustments that are not covered by binding closing agreements in earlier tax years by paying any tax owed and filing a refund claim.

4

intercompany tax sharing receivables and payables that were included in the Debtors' schedules and statements at the outset of their cases.[4]

10.    Executing the RAR does not, on its own, have **any** effect on the rights of **any** Debtor, or **any** party in interest, with respect to the intercompany tax sharing claims.    The proposed settlement of the intercompany claims set forth in the Debtors' filed chapter 11 plan of reorganization, which addresses the intercompany tax claims (along with other intercompany claims), will remain subject to the confirmation process.    Arguments with respect to the validity or amount of the intercompany tax sharing claims are preserved.    The Mark-to-Market Settlement itself (along with other adjustments for all open taxable years) remains subject to the proof of claim process.    The relief requested in this Motion has no effect on any of those issues. Rather, the RAR is simply an administrative step in the process of finalizing the Debtors' open tax years.

11.    While executing the RAR has no effect on the rights of the Debtors or any party in interest, failing to execute the RAR could result in significant harm.    If the Debtors had failed to timely execute the RAR, in the best case scenario, the IRS would continue to honor the Mark-to-Market Settlement and begin its audit of the 2010 through 2013 tax years, but there likely would be procedural delay.    Alternatively, the IRS could have decided to treat such failure as a sign that the Debtors were abandoning the Mark-to-Market Settlement.    Such a determination could potentially have put the Mark-to-Market Settlement at risk and could have led the U.S. Department of Justice to seek to amend their proofs of claim that have been asserted against

---

[4]    Although there have been, and will continue to be, adjustments to the intercompany tax sharing receivables and payables reflected on the Debtors' books and records as the Debtors finalize their open taxable years with the IRS, these adjustments are not expected to be material.    The Debtors do not currently anticipate that any material adjustment to the intercompany tax sharing receivables and payables will result from any of the adjustments contained in the RAR that is the subject of this Motion.

many of the Debtors.  Such events would expose the Debtors to significant litigation risk.

Indeed, the Debtors anticipate that, if the IRS were to determine not to implement the Mark-to-

Market Settlement, claims well in excess of $2 billion (after accounting for penalties and

interest) would be asserted.

12.     To date, **no** party in interest has suggested abandoning the Mark-to-Market

Settlement, notwithstanding the disputes regarding the intercompany tax sharing claims.  The

administrative step of executing the RAR should not be the event that places the Mark-to-Market

Settlement at risk.  Finally, the Debtors' ability to continue "business as usual" with the IRS is

absolutely vital to many aspects of these chapter 11 cases, and it would be senseless to place that

operating relationship with the IRS at risk because of a ministerial issue.

13.     Prior to executing the RAR, the Debtors discussed the RAR process with conflicts

matters counsel to each of EFH Corp., EFIH, and EFCH and TCEH.  Based on the limitations on

the effect of the RAR provided in the Proposed Order, conflicts matter counsel does not object to

approval of the execution of the RAR.

### Basis for Relief

14.     The Debtors' execution of the RAR should be approved under section 363 of the

Bankruptcy Code.  As an initial matter, section 363(c) of the Bankruptcy Code provides that a

debtor "may enter into transactions, including the sale or lease of property of the estate, in the

ordinary course of business, without notice or a hearing, and may use property of the estate in the

ordinary course of business without notice or a hearing."  11 U.S.C. § 363(c)(1).  A transaction is

in the ordinary course of business if it is "of the sort commonly undertaken by companies in [the

debtor's] industry" and it does not subject a hypothetical creditor "to economic risk of a nature

different from those he accepted when he decided to extend credit."  *In re Roth Am., Inc.*, 975

F.2d 949, 952-53 (3d Cir. 1992). Tax return adjustments of the nature provided herein are commonly undertaken by not only the Debtors, but companies across industries. And executing the RAR, on its own, has no material effect on the Debtors' credit risk, the Debtors' existing rights and remedies under the Bankruptcy Code, the Debtors' ability to challenge the incremental tax liability assessed by the IRS, or the fact that the Debtors' tax years that were open as of the Petition Date, including the 2008 and 2009 tax years covered by the RAR, remain subject to the proof of claim process. Because the RAR is a part of the Debtors' routine submission of tax returns, the Debtors respectfully submit that the Court should approve the RAR as an ordinary course transaction under section 363(c)(1) of the Bankruptcy Code.

15.    Alternatively, section 363(b) of the Bankruptcy Code provides that a debtor, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). In the Third Circuit, courts have authorized transactions outside the ordinary course of business when the transaction has a sound business purpose and is proposed in good faith. *See In re Martin*, 91 F.3d 389, 395 (3d Cir. 1996); *In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (D. Del. 1999); *In re Delaware & Hudson Ry. Co.*, 124 B.R. 169, 176 (D. Del. 1991); *In re Exaeris, Inc.*, 380 B.R. 741, 744 (Bankr. D. Del. 2008). The RAR may also be approved as non-ordinary-course transactions within the Debtors' sound business judgment under section 363(b) of the Bankruptcy Code. While the RAR allows the Debtors to preliminarily agree to the IRS's proposed adjustments, as noted above, there is no effect on the substantive rights of any party. In exchange for taking this administrative step, the Debtors avoid the possibility of procedural delay and potential risk to the Mark-to-Market Settlement, which would expose the Debtors to significant risk of litigation, delay, and significantly increased tax claims. The Debtors therefore submit that the execution of the RAR

7

should be approved as a sound exercise of the Debtors' business judgment under section 363(b) of the Bankruptcy Code.

16.    Moreover, under section 105(a) of the Bankruptcy Code, "[t]he court may issue any order . . . that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a).  In essence, the Court may enter an order that safeguards the value of the debtor's estate if doing so is consistent with the Bankruptcy Code.  *See, e.g.*, *Chinichian v. Campolongo (In re Chinichian)*, 784 F.2d 1440, 1443 (9th Cir. 1986) ("Section 105 sets out the power of the bankruptcy court to fashion orders as necessary pursuant to the purposes of the Bankruptcy Code."); *In re Cooper Props. Liquidating Trust, Inc.*, 61 B.R. 531, 537 (Bankr. W.D. Tenn. 1986) (acknowledging that "the [b]ankruptcy [c]ourt is one of equity and as such it has a duty to protect whatever equities a debtor may have in property for the benefit of its creditors as long as that protection is implemented in a manner consistent with the bankruptcy laws").  As noted above, failing to timely execute the RAR would expose the Debtors' estates to the near certainty of delay and the specter of significant litigation.  Accordingly, the Debtors submit that the Court should enter the Order approving the Debtors' prior execution of the RAR.

### Notice

17.    The Debtors shall provide notice of this Motion on the date hereof via first class mail to:  (a) the U.S. Trustee; (b) counsel to the TCEH Creditors' Committee; (c) counsel to the EFH Creditors' Committee; (d) Wilmington Trust, N.A., in its capacity as administrative agent under the TCEH first lien credit agreement and collateral agent under the TCEH intercreditor agreements and counsel thereto; (e) Bank of New York Mellon Trust Company, N.A., in its capacity as indenture trustee under:  (i) the TCEH unsecured pollution control revenue bonds; and (ii) the EFCH 2037 Notes due 2037, and counsel thereto; (f) American Stock Transfer & Trust Company, LLC, in its capacity as indenture trustee under:  (i) the 9.75% EFH senior

8

unsecured notes due 2019; (ii) the 10.0% EFH senior unsecured notes due 2020; (iii) the 10.875% EFH LBO senior unsecured notes due 2017; (iv) the 11.25%/12.0% EFH LBO toggle notes due 2017; (v) 5.55% EFH legacy notes (series P) due 2014; (vi) the 6.50% EFH legacy notes (series Q) due 2024; and (vii) the 6.55% EFH legacy notes (series R) due 2034, and counsel thereto; (g) Computershare Trust Company, N.A. and Computershare Trust Company of Canada, in their capacities as indenture trustee under: (i) the 11.0% EFIH senior secured second lien notes due 2021; and (ii) the 11.75% EFIH senior secured second lien notes due 2022, and counsel thereto; (h) UMB Bank, N.A. in its capacity as indenture trustee under: (i) the 9.75% EFIH senior unsecured notes due 2019; and (ii) the 11.25%/12.25% EFIH senior toggle notes due 2018, and counsel thereto; (i) Delaware Trust Company of Delaware in its capacity as indenture trustee under: (i) the 6.875% EFIH senior secured notes due 2017; (ii) the 10.0% EFIH senior secured notes due 2020; and (iii), the 11.50% TCEH senior secured notes due 2020, and counsel thereto; (j) Law Debenture Trust Company of New York in its capacity as indenture trustee under: (i) the 10.25% TCEH senior unsecured notes due 2015; and (ii) the 10.50%/11.25% TCEH senior toggle notes due 2016, and counsel thereto; (k) Wilmington Savings Fund Society, FSB in its capacity as indenture trustee under the 15.0% TCEH senior secured second lien notes due 2021, and counsel thereto; (l) counsel to certain holders of claims against the Debtors regarding each of the foregoing described in clauses (c) through (j); (m) the agent for the TCEH debtor-in-possession financing facility and counsel thereto; (n) the agent for the EFIH debtor-in-possession financing facility and counsel thereto; (o) counsel to certain holders of equity in Texas Energy Future Holdings Limited Partnership; (p) counsel to the Ad Hoc Committee of TCEH Unsecured Noteholders; (q) counsel to the Ad Hoc Committee of TCEH Second Lien Noteholders; (r) Oncor Electric Delivery Holdings Company LLC and

counsel thereto; (s) Oncor Electric Delivery Company LLC and counsel thereto; (t) the Securities and Exchange Commission; (u) the IRS; (v) the Office of the United States Attorney for the District of Delaware; (w) the Office of the Texas Attorney General on behalf of the Public Utility Commission of Texas; (x) counsel to the Electric Reliability Council of Texas; and (y) those parties that have requested notice pursuant to Bankruptcy Rule 2002.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

### **No Prior Request**

18.     No prior request for the relief sought in this Motion has been made to this or any other court.

*[Remainder of page intentionally left blank.]*

WHEREFORE, the Debtors respectfully request that the Court enter the Order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested in this Motion and granting such other and further relief as is appropriate under the circumstances.

Dated:  June 25, 2015
　　　　Wilmington, Delaware
　　　　　　　　　　　　　　　　　　　　_/s/ Jason M. Madron_
　　　　　　　　　　　　　　　　　　　　**RICHARDS, LAYTON & FINGER, P.A.**
　　　　　　　　　　　　　　　　　　　　Mark D. Collins (No. 2981)
　　　　　　　　　　　　　　　　　　　　Daniel J. DeFranceschi (No. 2732)
　　　　　　　　　　　　　　　　　　　　Jason M. Madron (No. 4431)
　　　　　　　　　　　　　　　　　　　　920 North King Street
　　　　　　　　　　　　　　　　　　　　Wilmington, Delaware 19801
　　　　　　　　　　　　　　　　　　　　Telephone:　　(302) 651-7700
　　　　　　　　　　　　　　　　　　　　Facsimile:　　(302) 651-7701
　　　　　　　　　　　　　　　　　　　　Email:　　　　collins@rlf.com
　　　　　　　　　　　　　　　　　　　　　　　　　　defranceschi@rlf.com
　　　　　　　　　　　　　　　　　　　　　　　　　　madron@rlf.com

　　　　　　　　　　　　　　　　　　　　-and-

　　　　　　　　　　　　　　　　　　　　**KIRKLAND & ELLIS LLP**
　　　　　　　　　　　　　　　　　　　　**KIRKLAND & ELLIS INTERNATIONAL LLP**
　　　　　　　　　　　　　　　　　　　　Edward O. Sassower, P.C. (admitted _pro hac vice_)
　　　　　　　　　　　　　　　　　　　　Stephen E. Hessler (admitted _pro hac vice_)
　　　　　　　　　　　　　　　　　　　　Brian E. Schartz (admitted _pro hac vice_)
　　　　　　　　　　　　　　　　　　　　601 Lexington Avenue
　　　　　　　　　　　　　　　　　　　　New York, New York 10022-4611
　　　　　　　　　　　　　　　　　　　　Telephone:　　(212) 446-4800
　　　　　　　　　　　　　　　　　　　　Facsimile:　　(212) 446-4900
　　　　　　　　　　　　　　　　　　　　Email:　　　　edward.sassower@kirkland.com
　　　　　　　　　　　　　　　　　　　　　　　　　　stephen.hessler@kirkland.com
　　　　　　　　　　　　　　　　　　　　　　　　　　brian.schartz@kirkland.com

　　　　　　　　　　　　　　　　　　　　-and-

　　　　　　　　　　　　　　　　　　　　James H.M. Sprayregen, P.C. (admitted _pro hac vice_)
　　　　　　　　　　　　　　　　　　　　Marc Kieselstein, P.C. (admitted _pro hac vice_)
　　　　　　　　　　　　　　　　　　　　Chad J. Husnick (admitted _pro hac vice_)
　　　　　　　　　　　　　　　　　　　　Steven N. Serajeddini (admitted _pro hac vice_)
　　　　　　　　　　　　　　　　　　　　300 North LaSalle
　　　　　　　　　　　　　　　　　　　　Chicago, Illinois 60654
　　　　　　　　　　　　　　　　　　　　Telephone:　　(312) 862-2000
　　　　　　　　　　　　　　　　　　　　Facsimile:　　(312) 862-2200
　　　　　　　　　　　　　　　　　　　　Email:　　　　james.sprayregen@kirkland.com
　　　　　　　　　　　　　　　　　　　　　　　　　　marc.kieselstein@kirkland.com
　　　　　　　　　　　　　　　　　　　　　　　　　　chad.husnick@kirkland.com
　　　　　　　　　　　　　　　　　　　　　　　　　　steven.serajeddini@kirkland.com

　　　　　　　　　　　　　　　　　　　　Co-Counsel to the Debtors and Debtors in Possession