**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| In re: | ) ) | Chapter 11 |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) ) ) | Case No. 14-10979 (CSS) |
| Debtors. | ) ) ) | (Jointly Administered) |
|  | ) | **Re: D.I. 4862** |

**DECLARATION OF CARLA HOWARD, SENIOR VICE PRESIDENT AND GENERAL TAX COUNSEL OF ENERGY FUTURE HOLDINGS CORP., *ET AL.*, IN SUPPORT OF THE MOTION OF ENERGY FUTURE HOLDINGS CORP., *ET AL.*, FOR ENTRY OF AN ORDER APPROVING THE DEBTORS' AGREEMENT TO CERTAIN TAX ADJUSTMENTS FOR 2008 AND 2009**

I, Carla Howard, declare as follows:

1. I am a Senior Vice President and General Tax Counsel of Energy Future Holdings Corp., Energy Future Competitive Holdings Company LLC, Texas Competitive Electric Holdings Company LLC, and Energy Future Intermediate Holding Company LLC. I submit this declaration (this "Declaration") in support of the *Motion of Energy Future Holdings Corp., et al., for Entry of an order Approving the Debtors' Agreement to Certain Tax Adjustments For 2008 and 2009* [D.I. 4862] (the "Motion").[2]

2. Except where specifically noted, the statements in this Declaration are based on my personal knowledge of the Debtors' businesses, operations, and related financial information gathered from my review of their books and records, relevant documents, and information

---

[1] The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, which are being jointly administered, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Motion.

RLF1 12285185v.1

supplied to me by members of the Debtors' employees and advisors. If I were called upon to testify, I could and would testify competently to the facts set forth herein. I am authorized to submit this Declaration on behalf of the Debtors.

3. On June 25, 2015, the Debtors executed the 2008 and 2009 RAR and submitted it to the IRS under the Cover Letter. Under the RAR, the Debtors agreed to certain adjustments proposed by the IRS to the Debtors' 2008 and 2009 taxable income. In so doing, the Debtors agreed to be assessed no additional tax liability for the 2008 tax year and an incremental tax liability of approximately $14.4 million for 2009. The incremental tax liability for the 2009 taxable year is principally related to the settlement, reached with the IRS in 2013, of a multi-billion-dollar "mark-to-market" deduction that was originally claimed by the Debtors in 2005 (the "Mark-to-Market Settlement"). The executed IRS forms attached to the Motion reflect the Debtors' agreement to the specified adjustments. The Debtors have, since these chapter 11 cases were filed, previously agreed to adjustments for 2007.

4. Executing the RAR has no effect on the substantive rights of the Debtors or any other parties in interest. I understand that the Debtors and other parties in interest maintain the right to challenge the adjustments that were not subject to binding closing agreements before bankruptcy was filed, as well as the incremental tax claim, through the proof of claim process.[3] Additionally, with certain immaterial exceptions, the adjustments in the RAR were anticipated and incorporated when the intercompany tax sharing receivables and payables relating to the resolution of open tax years (including the Mark-to-Market Settlement) were recorded on the Debtors' books and records in 2013. Similarly, the impact of the adjustments in the RAR, including the adjustments that partially implement the Mark-to-Market Settlement, were

---

[3] Even outside of bankruptcy, the Debtors would be entitled to challenge those adjustments that are not covered by binding closing agreements in earlier tax years by paying any tax owed and filing a refund claim.

2

RLF1 12285185v.1

generally already reflected in the intercompany tax sharing receivables and payables that were included in the Debtors' schedules and statements at the outset of their cases.[4]

5. Executing the RAR does not, on its own, have **any** effect on the rights of **any** Debtor, or **any** party in interest, with respect to the intercompany tax sharing claims. Rather, the RAR is simply an administrative step in the process of finalizing the Debtors' open tax years.

6. While executing the RAR has no effect on the rights of the Debtors or any party in interest, failing to execute the RAR could result in significant harm. If the Debtors had failed to timely execute the RAR, in what I believe is the best case scenario, the IRS would continue to honor the Mark-to-Market Settlement and begin its audit of the 2010 through 2013 tax years, but there likely would be procedural delay. Alternatively, the IRS could have decided to treat such failure as a sign that the Debtors were abandoning the Mark-to-Market Settlement. Such a determination could potentially have put the Mark-to-Market Settlement at risk and could have led the U.S. Department of Justice to seek to amend their proofs of claim that have been asserted against many of the Debtors. I believe such events would expose the Debtors to significant litigation risk. Indeed, I anticipate that, if the IRS were to determine not to implement the Mark-to-Market Settlement, claims well in excess of $2 billion (after accounting for penalties and interest) would be asserted.

7. To date, **no** party in interest has suggested abandoning the Mark-to-Market Settlement. Finally, I believe that the Debtors' ability to continue "business as usual" with the IRS is absolutely vital to many aspects of these chapter 11 cases.

---

[4] Although there have been, and will continue to be, adjustments to the intercompany tax sharing receivables and payables reflected on the Debtors' books and records as the Debtors finalize their open taxable years with the IRS, these adjustments are not expected to be material. The Debtors do not currently anticipate that any material adjustment to the intercompany tax sharing receivables and payables will result from any of the adjustments contained in the RAR that is the subject of the Motion.

8. Prior to executing the RAR, the Debtors discussed the RAR process with conflicts matters counsel to each of EFH Corp., EFIH, and EFCH and TCEH.  Based on the limitations on the effect of the RAR provided in the Order, I understand that conflicts matter counsel does not object to approval of the execution of the RAR.

[*Remainder of page intentionally left blank.*]

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Dated:  June 25, 2015                                */s/ Carla Howard*
                                                                 Carla Howard
                                                                 Senior Vice President and General Tax Counsel
                                                                 Energy Future Holdings Corp. and certain
                                                                 subsidiaries