**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| | ) |
| In re: | ) Chapter 11 |
| | ) |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) Case No. 14-10979 (CSS) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |
| | ) **Hearing Date:  July 16, 2015 at 9:30 a.m.** |
| | ) **Objection Deadline:  July 9, 2015 at 4:00 p.m.** |

**MOTION OF ENERGY FUTURE HOLDINGS CORP.,**
***ET AL.*, FOR ENTRY OF AN ORDER APPROVING THE**
**STIPULATION BY AND AMONG LUMINANT GENERATION COMPANY LLC,**
**EFH CORPORATE SERVICES COMPANY, AND PRC ENVIRONMENTAL, INC.**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") file this motion (this "Motion") for entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Order"), authorizing Luminant Generation Company LLC ("Luminant Generation") and EFH Corporate Services Company ("Corporate Services" and, together with Luminant Generation, the "Debtor Parties") to enter into and perform under the stipulation attached hereto as **Exhibit 1** to the Order (the "Stipulation")[2] with PRC Environmental, Inc. ("PRC" and, together with the Debtor Parties, the "Parties" and each, individually, a "Party").  In support of this Motion, the Debtors submit the *Declaration of Robert Frenzel in Support of the Motion of Energy Future Holdings Corp.,* et al.*, Approving the Stipulation by and Among Luminant Generation Company LLC, EFH Corporate Services*

---

[1]     The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810.  The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201.  Due to the large number of debtors in these chapter 11 cases, for which joint administration has been granted, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

[2]     All terms used but not defined herein shall have the meaning ascribed to them in the Stipulation.  In the event of any inconsistency between this Motion and the Stipulation, the Stipulation shall control.

*Company, and PRC Environmental, Inc.* (the "Frenzel Declaration").  In further support of this Motion, the Debtors respectfully state as follows.

## Jurisdiction and Venue

1.    The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Debtors confirm their consent pursuant to rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Bankruptcy Rules") to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2.    Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.    The bases for the relief requested in this Motion are sections 362(d), 363, and 553(a) of title 11 of the United States Code (the "Bankruptcy Code") and rules 2002, 4001(a)(3), 6004(h), and 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## Relief Requested

4.    By this Motion, the Debtors seek entry of the Order authorizing the Debtor Parties to enter into and perform under the Stipulation with PRC, providing for the setoff of certain claims arising under and relating to the Agreements (defined herein), including certain mutual prepetition claims asserted by and among (a) Luminant Generation and PRC, and (b) Corporate Services and PRC.  Pursuant to the Stipulation, PRC will perform two separate setoffs against two Debtor entities relating to two different agreements, resulting in two net payables to the

2

Debtors.  *First*, PRC will setoff certain amounts asserted by and between PRC and Luminant Generation under the Luminant Agreement (as defined here), resulting in a net payable of $186,753.30 from PRC to Luminant Generation under the Luminant Agreement.  *Second*, PRC will setoff certain amounts asserted by and between PRC and Corporate Services under the Corporate Services Agreement (as defined herein), resulting in a net payable of $420.86 from PRC to Corporate Services under the Corporate Services Agreement.

## Background

5.    On April 29, 2014 (the "Petition Date"), each of the Debtors filed a voluntary petition with the Court under chapter 11 of the Bankruptcy Code.  The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  The Court has entered an order for joint administration of these chapter 11 cases.  The Court has not appointed a trustee.  The Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") formed an official committee of unsecured creditors of Energy Future Competitive Holdings Company LLC ("EFCH"), Texas Competitive Electric Holdings Company LLC ("TCEH"), the direct and indirect Debtor subsidiaries of EFCH and TCEH, and Corporate Services (the "TCEH Creditors' Committee") on May 13, 2014 [D.I. 420] and an official committee of unsecured creditors of Energy Future Holdings Corp., Energy Future Intermediate Holding Company, LLC, EFIH Finance, Inc., and EECI, Inc. (the "EFH Creditors' Committee") on October 27, 2014 [D.I. 2570].  Further information regarding the Debtors' business operations and capital structure is set forth in the declaration of Paul Keglevic in support of the Debtors' first day motions [D.I. 98].

## I.    The Agreements.

6.    PRC, a corporation organized under the laws of State of Texas, is a contractor with experience in investment recovery, demolition, and environmental site work. Luminant

Generation and Corporate Services are party to the following prepetition agreements with PRC relevant to the attached Stipulation (collectively, the "Agreements"):

- ***Contract for Services: Abatement, Demolition, Scrap / Asset Salvage and Resale***, Contract No. C0664925C, dated June 30, 2010, as amended from time to time (the "Luminant Agreement"), between Luminant Generation and PRC under which PRC provides certain abatement, demolition, scrap and asset salvage, and resale services to Luminant Generation, pursuant to individual work authorizations that are entered into pursuant to the Luminant Agreement. Both PRC and Luminant Generation have asserted payment obligations from the other under the Luminant Agreement.

- ***Contract for Services for Investment Recovery Services***, Contract No. C0789762C, dated July 12, 2013, as amended from time to time (the "Corporate Services Agreement"), between Corporate Services and PRC under which PRC provides certain investment recovery services to Corporate Services, pursuant to individual work authorizations that are entered into pursuant to the Corporate Services Agreement. Both PRC and Corporate Services have asserted payment obligations from the other under the Corporate Services Agreement.

## II.    The Stipulation.

7.    By the Stipulation, the Debtor Parties seek to allow PRC to setoff certain prepetition amounts that are asserted by and between each of the Debtor Parties and PRC[3] (each, a "Prepetition Setoff" and, collectively, the "Prepetition Setoffs"), resulting in a total net payable from PRC to the Debtors of approximately $187,174.15.  The Parties agreed, for the purposes of the Stipulation, to bifurcate the payment obligations owed to each other under the Agreements between the pre- and postpetition periods as of April 28, 2014.  The Prepetition Setoff amounts are based on certain debts that are asserted to have arisen before the commencement of the case.

8.    Further detail relating to each Prepetition Setoff is set forth below.

  a.    For the period of November 2013 through April 28, 2014, PRC asserts a receivable from Luminant Generation of approximately

---

[3]    The Debtors scheduled:  (a) claim no. 503229230 in the aggregate amount $1,542,777.41 in favor of PRC against Luminant Generation; and (b) claim no. 504263570 in the aggregate amount of $711,606.46 in favor of PRC against Luminant Mining Company LLC (the "Scheduled Claims").  Additionally, PRC filed  proof of claim no. 7932 in the aggregate amount of $1,542,777.41 (the "Proof of Claim" and, together with the Scheduled Claims, the "Claims").  The Stipulation reflects, among other things, the Parties' reconciliation of the Claims.

$912,949.70 in relation to certain work authorizations that had been entered into pursuant to the Luminant Agreement (the "Luminant Payable"), and Luminant Generation asserts a receivable from PRC of approximately $1,099,703.00 in relation to certain work authorizations that had been entered into pursuant to the Luminant Agreement (the "Luminant Receivable"); and

b.   For the period of May 2013 through April 28, 2014, PRC asserts a receivable from Corporate Services of approximately $19,652.30 in relation to certain work authorizations that had been entered into pursuant to the Corporate Services Agreement (the "Corporate Services Payable"), and Corporate Services asserts a receivable from PRC of approximately $20,073.15 in relation to certain work authorizations that had been entered into pursuant to the Corporate Services Agreement (the "Corporate Services Receivable").

9.   Notwithstanding anything to the contrary in the foregoing, the Parties reserve all claims, rights and obligations relating to Amendment 4 to the Luminant Agreement (collectively, the "Amendment 4 Claims").

10.   On account of the Debtors' chapter 11 cases and pursuant to the automatic stay imposed by section 362 of the Bankruptcy Code, PRC is stayed from setting off amounts asserted by and between Luminant Generation and PRC under the Luminant Agreement or asserted by and between Corporate Services and PRC under the Corporate Services Agreement. The Stipulation will permit PRC to effectuate certain setoffs under the Luminant Agreement and the Corporate Services Agreement, respectively, and will release and discharge the Debtors from the Claims, as described in further detail below.

11.   *First*, PRC will setoff the Luminant Payable against the Luminant Receivable. After the setoff, PRC will have a remaining payable obligation to Luminant Generation in the amount of $186,753.30 (the "Luminant Net Payable"), which shall be paid to Luminant Generation in immediately available funds within three business days after entry of a final order by the Court approving the Stipulation. The Parties agree that PRC's prepetition entitlements

described in section 1.01(a) of the Stipulation may only be satisfied by setoff against the amounts described in section 1.01(a) asserted by Luminant Generation.

12.     *Second*, PRC will setoff the Corporate Services Payable against the Corporate Services Receivable.   After the setoff, PRC will have a remaining payable obligation to Corporate Services in the amount of $420.85 (the "Corporate Services Net Payable"), which shall be paid to Corporate Services in immediately available funds within three business days after entry of a final order by the Court approving the Stipulation.  The Parties agree that PRC's prepetition entitlements described in section 1.01(b) of the Stipulation may only be satisfied by setoff against the amounts described in section 1.01(b) asserted by Corporate Services.

13.     *Third*, the Debtor Parties and PRC further agree that, after the setoff and payment, the Claims will be fully released, discharged, and deemed expunged, and PRC shall not have a claim against Luminant Generation under the Luminant Agreement or a claim against Corporate Services under the Corporate Services Agreement, except as set forth in Section 1.01 of the Stipulation.

## Basis for Relief

### I.     Cause Exists to Modify the Automatic Stay to Permit PRC to Setoff Certain Prepetition Claims.

14.     The Debtors' bankruptcy petitions operate as a stay against, among other things, "the setoff of any debt owing to the debtor that arose before the commencement of the case under this title against any claim against the debtor."  11 U.S.C. § 362(a)(7).  Section 362(d) of the Bankruptcy Code, however, permits the Court, after notice and a hearing, to modify the automatic stay "for cause."  11 U.S.C. § 362(d).

15.     "Cause" can be a flexible standard, taking into account the particular facts and circumstances of the particular issue before the Court.  *See Baldino v. Wilson (In re Wilson)*, 116

F.3d 87, 90 (3d Cir. 1997) (noting that section 362(d)(1) "does not define 'cause,' leaving courts to consider what constitutes cause based on the totality of the circumstances in each particular case.").  Courts have found that cause exists for modifying the automatic stay where, among other reasons, doing so would permit a debtor to setoff mutual prepetition claims with a valued vendor or other critical stakeholders.  *See, e.g.*, *In re Commc'n Dynamics, Inc.*, 300 B.R. 220, 227 (Bankr. D. Del. 2003) (granting vendor's motion to lift stay to setoff sale credits due to debtor); *In re Orlinski*, 140 B.R. 600, 604 (Bankr. S.D. Ga. 1991) (granting relief from automatic stay for IRS to setoff claims against chapter 13 debtor).

16.    Cause exists here to grant PRC the limited relief from the automatic stay to setoff its prepetition claims under the Agreements on the terms described in the Stipulation.  By lifting the automatic stay, PRC will, within three business days of entry of the Order, pay to the Debtors the Luminant Net Payable and Corporate Services Net Payable, for a total payment of approximately $187,174.15.

17.    Following the Prepetition Setoffs, PRC shall not assert any claim in the Debtors' chapter 11 cases or otherwise against Luminant Generation under the Luminant Agreement or against Corporate Services under the Corporate Services Agreement, except as set forth in Section 1.01 of the Stipulation.  Additionally, the Claims shall be fully released, discharged and deemed expunged.  Accordingly, the Debtors respectfully submit that cause exists to modify the automatic stay on the terms set forth in the Stipulation.

## II.    The Court Should Permit the Parties to Setoff Their Mutual Prepetition Obligations.

18.    Section 553(a) of the Bankruptcy Code allows parties to net out mutual debts in order to avoid the absurdity of "making A pay B when B owes A."  *Matter of Bevill, Bresler & Schulman Asset Management*, 896 F.2d 54, 57 (3d Cir. 1990); *In re Metco Mining and Minerals,*

7

*Inc.*, 171 B.R. 210, 216 (W.D. Pa 1994). Specifically, a creditor may "offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case." 11 U.S.C. § 553(a).

19.    Section 553(a) "recognizes and *preserves* rights of set off," *In re APF Co.*, 264 B.R. 344, 354 (Bankr. D. Del. 2001) (emphasis supplied). In other words, this section only applies where such right is available under state law. *Citizens Bank of Maryland v. Strumpf*, 516 U.S. 16, 18 (1995) ("Although no federal right of setoff is created by the Bankruptcy Code, 11 U. S. C. § 553(a) provides that, with certain exceptions, whatever right of setoff otherwise exists is preserved in bankruptcy."). However, any setoff must comply with the statutory requirements as well. *See In re Atanasov,* 221 B.R. 113, 117 (D. N.J. 1998) ("Courts may look to state law in order to determine whether a setoff has occurred, however, the granting or denial of the right to a setoff depends upon the terms of section 553, and not upon the terms of state statutes or laws.").

20.    To determine which state's law to apply, the Court turns to Delaware choice of law rules. *In re Garden Ridge Corp.*, 338 B.R. 627, 632 (Bankr. D. Del. 2006) *aff'd*, 399 B.R. 135 (D. Del. 2008) *aff'd*, 386 F. App'x 41 (3d Cir. 2010). "Under Delaware [choice of law rules], express choice of law provisions in contracts are generally given effect." *Chemipal Ltd. v. Slim–Fast Nutritional Foods Intern., Inc.,* 350 F. Supp. 2d 582, 595 (D. Del. 2004). Here, the Agreements are governed by Texas law, which provides that "[i]n order for one demand to be set off against another, both demands must mutually exist between the same parties. Indeed, setoff is proper only where demands are mutual, between the same parties, and in the same capacity or right." *In re Garden Ridge Corp.*, 338 B.R. at 633 (citing *Capital Concepts Properties 85–1 v. Mutual First, Inc.,* 35 F.3d 170, 175 (5th Cir. 1994)). Similarly, courts in this Circuit have found

that setoff is available only where four conditions exist: "(1) the creditor holds a 'claim' against the debtor that arose before the commencement of the case; (2) the creditor owes a 'debt' to the debtor that also arose before the commencement of the case; (3) the claim and debt are 'mutual'; and (4) the claim and debt are each valid and enforceable." *In re APF Co.*, 264 B.R. 344, 354 (Bankr. D. Del. 2001); *see also In re Garden Ridge Corp.*, 338 B.R. at 633 (Bankr. D. Del. 2006) (citing 3 Collier on Bankruptcy ¶ 553.01[1]).

21.      "Under Texas and federal law, mutuality of obligation exists when debts are owing between the same parties in the same right or capacity." *In re Garden Ridge Corp.*, 338 B.R. at 633.  "Mutuality of the debt and claim means that the creditor is indebted to the debtor who likewise owes a debt to the creditor." *Id.* at 634; *see also In re Metco Mining and Minerals, Inc.*, 171 B.R. 210, 216 (W.D. Pa. 1994) (finding that for there to be mutuality, "each party must own his claim to his own right severally, with the right to collect in his own name against the debtor in his own right severally").

22.      The prepetition setoffs contemplated under the Stipulation are valid under section 553(a).  *First*, all of the Prepetition Setoff amounts are based on debts that arose before the commencement of the case.  *Second*, the mutuality requirement is satisfied:  as clearly illustrated above, PRC and Luminant Generation have asserted receivables from one another, and PRC and Corporate Services have asserted receivables from one another.  *Finally*, all of those obligations are valid and enforceable—they have a certain and ascertainable character that makes them capable of being applied in compensation of each other.  *See* 11 U.S.C. § 553(a).

## III.    The Stipulation is Satisfies Section 363 of the Bankruptcy Code.

23.      Section 363(c)(1) of the Bankruptcy Code provides that a debtor in possession "may enter into transactions, including the sale or lease of property of the estate, in the ordinary

course of business, without notice or a hearing, and may use property of the estate in the ordinary course of business without notice or a hearing." 11 U.S.C. § 363(c)(1).

24.    In addition, section 363(b)(1) of the Bankruptcy Code authorizes a bankruptcy court, after notice and a hearing, to authorize a debtor to "use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). A debtor may use, sell, or lease property of the estate where a sound business purpose justifies such actions. *See Contrarian Funds LLC v. Aretex LLC (In re WestPoint Stevens, Inc.)*, 600 F.3d 231, 248 n.8 (2d Cir. 2010); *Fulton State Bank v. Schipper (In re Schipper)*, 933 F.2d 513, 515 (7th Cir. 1991) (noting that criteria for approval of transaction under section 363(b) is whether debtor has "an articulated business justification"); *see also Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1070 (2d Cir. 1983) (holding that debtor must satisfy the business judgment rule under section 363(b)(1)); *In re Borders Grp., Inc.*, 453 B.R. 459, 473 (Bankr. S.D.N.Y. 2011) (same). Specifically, once a debtor articulates a valid business justification for a particular form of relief, the court reviews the debtor's request under the business judgment rule. *See In re Commercial Mortg. and Fin. Co.*, 414 B.R. 389, 394 (Bankr. N.D. Ill. 2009) (noting that debtor in possession "has the discretionary authority to exercise his business judgment in operating the debtor's business similar to the discretionary authority to exercise business judgment given to an officer or director of a corporation").

25.    To the extent that section 363(b)(1) of the Bankruptcy Code is applicable to the Stipulation, the Debtors submit that the Stipulation satisfies section 363(b)(1) of the Bankruptcy Code. Specifically, the proposed Stipulation was negotiated at arm's-length and in good-faith. The Stipulation would, if approved, prevent further disruption to the Debtors' billing practices, result in the payment to the Debtor Parties by PRC of approximately $187,174.15 on account of

prepetition net payables, and release and discharge the Debtors from the Claims.  Accordingly,

the Debtors respectfully request that the Court approve the Stipulation.

**IV.    The Stipulation is Fair and in the Best Interests of the Debtors' Estates, Is a Proper Exercise of the Debtors' Business Judgment, and Should Be Approved.**

26.    Bankruptcy Rule 9019(a) provides, in relevant part:

> On motion by the [debtor in possession] and after notice and a hearing, the court may approve a compromise or settlement. Notice shall be given to creditors, the United States trustee, . . . and indenture trustee as provided in Rule 2002 and to any other entity as the court may direct.

Fed. R. Bankr. P. 9019(a).

27.    The Stipulation is subject to approval by the Court under Bankruptcy Rule 9019(a).  Settlements and compromises are tools often utilized to expedite case administration and to reduce unnecessary administrative costs; as such, they are favored in bankruptcy.  *See In re Nutraquest, Inc.,* 434 F.3d 639, 646 (3d Cir. 2006) ("[i]t is axiomatic that settlement will almost always reduce the complexity and inconvenience of litigation"); *In re Key3Media Grp., Inc.*, 2006 WL 2842462, at *3 (D. Del. Oct. 2, 2006).  Pursuant to Bankruptcy Rule 9019(a), a bankruptcy court may, after appropriate notice and a hearing, approve a compromise or settlement so long as the proposed compromise is fair, reasonable, and in the best interest of the estate.  *See In re Marvel Entm't Grp., Inc.*, 222 B.R. 243, 249 (D. Del 1998) ("[T]he ultimate inquiry [is] whether 'the compromise is fair, reasonable, and in the interest of the estate.'") (citation omitted); *In re Nw. Corp.*, 2008 WL 2704341, at *6 (Bankr. D. Del. July 10, 2008) ("the bankruptcy court must determine whether the compromise is fair, reasonable, and in the best interests of the estate") (citation omitted); *In re Key3Media Grp., Inc.*, 336 B.R. 87, 92 (Bankr D. Del. 2005) ("the bankruptcy court has a duty to make an informed, independent judgment that the compromise is fair and equitable").

28.     A proposed compromise need not be the best result that a debtor could have achieved, but only must fall within the "reasonable range of litigation possibilities."  *In re Energy Corp.*, 886 F.2d 921, 929 (7th Cir. 1989); *In re Sea Containers Ltd.*, 2008 WL 4296562, at *5 (Bankr. D. Del. Sept. 19, 2008); *Key3Media Grp.*, 2006 WL 2842462, at *3.

29.     In determining whether a compromise is fair and equitable, the Third Circuit has adopted a balancing test, under which a bankruptcy court should decide whether to approve a particular compromise or settlement.  The factors of the balancing test are: "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors." *Nutraquest,* 434 F.3d 639, 643; *see also Key3Media Grp.*, 336 B.R. 87 at 93 (when determining whether a compromise is in the best interests of the estate, courts must "assess and balance the value of the claim that is being compromised against the value to the estate of the acceptance of the compromise proposal" (internal citations omitted)).

30.     Based on the above factors, the Debtors believe the Stipulation represents a fair and reasonable compromise that is in the best interests of the Debtors' estates.  The Stipulation achieves a result that is in the best interests of the Debtors' estate because, as set forth above, the Stipulation would, if approved, prevent further disruption to the Debtors' billing practices, result in the payment to the Debtor Parties by PRC of approximately $187,174.15 on account of prepetition net payables, and release and discharge the Debtors from the Claims.  In consideration of all these factors, the Debtors submit that the proposed Stipulation reflects the exercise of the Debtors' sound business judgment and respectfully request that the Court approve the Stipulation.

## Waiver of Bankruptcy Rules 6004(a) and 6004(h)

31.    To implement the foregoing successfully, the Debtors seek a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the 14-day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h).

## Reservation of Rights

32.    Except as set forth in Section 1.01 of the Stipulation, nothing in this Motion or any actions taken by the Debtors pursuant to the relief granted in the Order shall constitute or be deemed:  (a) an admission as to the validity, amount, type, or priority of any particular claim against any Party, including administrative expense claims under section 503(b) of the Bankruptcy Code; (b) with respect to any claim, a change in the priority level existing in the absence of the Stipulation; (c) a promise or requirement to pay any particular claim other than those specifically agreed to in the Stipulation; (d) a waiver of any Party's right to dispute or assert any particular claim on any grounds, including, without limitation, any right to assert a claim based on a breach or default of either of the Agreements; (e) a waiver or limitation of any of the rights, claims, or potential causes of action of the Parties under the Bankruptcy Code or any other applicable law, including those relating to the Agreements, (f) a waiver of any Amendment 4 Claims; (g) a request or authorization to assume or reject any of the Agreements or other agreements under section 365 of the Bankruptcy Code, (h) a waiver of any Party's rights to assert that any other Party is in breach or default of the Agreements, or (i) an admission that the Agreements and any work authorizations or work orders entered into pursuant to either of the Agreements are integrated.  The Parties further reserve all other rights, remedies, and objections under applicable law, including but not limited to the exercising of any rights to setoff, offset, and recoupment related to any Party's mutual postpetition claims and/or debts.

## Notice

33.     The Debtors shall provide notice of this Motion on the date hereof via first class mail to:  (a) the U.S. Trustee; (b) counsel to the TCEH Creditors' Committee; (c) counsel to the EFH Creditors' Committee; (d) Wilmington Trust, N.A., in its capacity as administrative agent under the TCEH first lien credit agreement and collateral agent under the TCEH intercreditor agreements and counsel thereto; (e) Bank of New York Mellon Trust Company, N.A., in its capacity as indenture trustee under:  (i) the TCEH unsecured pollution control revenue bonds; and (ii) the EFCH 2037 Notes due 2037, and counsel thereto; (f) American Stock Transfer & Trust Company, LLC, in its capacity as indenture trustee under:  (i) the 9.75% EFH senior unsecured notes due 2019; (ii) the 10.0% EFH senior unsecured notes due 2020; (iii) the 10.875% EFH LBO senior unsecured notes due 2017; (iv) the 11.25%/12.0% EFH LBO toggle notes due 2017; (v) the 5.55% EFH legacy notes (series P) due 2014; (vi) the 6.50% EFH legacy notes (series Q) due 2024; and (vii) the 6.55% EFH legacy notes (series R) due 2034, and counsel thereto; (g) Computershare Trust Company, N.A. and Computershare Trust Company of Canada, in their capacities as indenture trustee under:  (i) the 11.0% EFIH senior secured second lien notes due 2021; and (ii) the 11.75% EFIH senior secured second lien notes due 2022, and counsel thereto; (h) UMB Bank, N.A. in its capacity as indenture trustee under:  (i) the 9.75% EFIH senior unsecured notes due 2019; and (ii) the 11.25%/12.25% EFIH senior toggle notes due 2018, and counsel thereto; (i) Delaware Trust Company of Delaware in its capacity as indenture trustee under:  (i) the 6.875% EFIH senior secured notes due 2017; (ii) the 10.0% EFIH senior secured notes due 2020; and (iii), the 11.50% TCEH senior secured notes due 2020, and counsel thereto; (j) Law Debenture Trust Company of New York in its capacity as indenture trustee under:  (i) the 10.25% TCEH senior unsecured notes due 2015; and (ii) the

14

10.50%/11.25% TCEH senior toggle notes due 2016, and counsel thereto; (k) Wilmington Savings Fund Society, FSB in its capacity as indenture trustee under the 15.0% TCEH senior secured second lien notes due 2021, and counsel thereto; (l) counsel to certain holders of claims against the Debtors regarding each of the foregoing described in clauses (c) through (j); (m) the agent for the TCEH debtor-in-possession financing facility and counsel thereto; (n) the agent for the EFIH debtor-in-possession financing facility and counsel thereto; (o) counsel to certain holders of equity in Texas Energy Future Holdings Limited Partnership; (p) counsel to the Ad Hoc Committee of TCEH Unsecured Noteholders; (q) counsel to the Ad Hoc Committee of TCEH Second Lien Noteholders; (r) Oncor Electric Delivery Holdings Company LLC and counsel thereto; (s) Oncor Electric Delivery Company LLC and counsel thereto; (t) the Securities and Exchange Commission; (u) the Internal Revenue Service; (v) the Office of the United States Attorney for the District of Delaware; (w) the Office of the Texas Attorney General on behalf of the Public Utility Commission of Texas; (x) counsel to the Electric Reliability Council of Texas; (y) those parties that have requested notice pursuant to Bankruptcy Rule 2002; and (z) PRC and counsel thereto.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

## No Prior Request

34.    No prior request for the relief sought in this Motion has been made to this or any other court.

*[Remainder of page intentionally left blank.]*

WHEREFORE, the Debtors respectfully request that the Court enter the Order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested in this Motion and granting such other and further relief as is appropriate under the circumstances.

Dated:  June 25, 2015
   Wilmington, Delaware

*/s/ Jason M. Madron*

**RICHARDS, LAYTON & FINGER, P.A.**
Mark D. Collins (No. 2981)
Daniel J. DeFranceschi (No. 2732)
Jason M. Madron (No. 4431)
920 North King Street
Wilmington, Delaware 19801
Telephone: (302) 651-7700
Facsimile: (302) 651-7701
Email:  collins@rlf.com
    defranceschi@rlf.com
    madron@rlf.com

-and-

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Edward O. Sassower, P.C. (admitted *pro hac vice*)
Stephen E. Hessler (admitted *pro hac vice*)
Brian E. Schartz (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022-4611
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
Email:  edward.sassower@kirkland.com
    stephen.hessler@kirkland.com
    brian.schartz@kirkland.com

-and-

James H.M. Sprayregen, P.C. (admitted *pro hac vice*)
Marc Kieselstein, P.C. (admitted pro hac vice)
Chad J. Husnick (admitted *pro hac vice*)
Steven N. Serajeddini (admitted *pro hac vice*)
300 North LaSalle
Chicago, Illinois 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200
Email:  james.sprayregen@kirkland.com
    marc.kieselstein@kirkland.com
    chad.husnick@kirkland.com
    steven.serajeddini@kirkland.com

*Co-Counsel to the Debtors and Debtors in Possession*