**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Energy Future Holdings Corp., *et al.,*[1] | ) | Case No. 14-10979 (CSS) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | Hearing Date: July 16, 2015 at 9:30 a.m. |
| | ) | **Re: D.I. 3965** |

**OBJECTION OF THE EFH OFFICIAL COMMITTEE TO THE
DEBTORS' ORDER (A) SETTING BAR DATE FOR FILING ASBESTOS PROOFS
OF CLAIM, (B) APPROVING THE FORM AND MANNER FOR FILING
ASBESTOS PROOFS OF CLAIM, AND (C) APPROVING NOTICE THEREOF**

---

[1]   The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, which are being jointly administered, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ........................................................................................ 1

BACKGROUND ........................................................................................................... 2

KINSELLA RECOMMENDATIONS ................................................................................ 6

LIMITS TO THE EFH COMMITTEE'S OBJECTION ....................................................... 6

OBJECTION ................................................................................................................ 9

    A.    The Debtors' Proposed Asbestos Bar Date Order Seeks Improper Relief. ............. 9

    B.    Any Bar Date Order Must Be Limited ................................................................. 11

    C.    The Debtors' Proposed Notice Procedures Fail to Provide Adequate Notice ........................................................................................................... 13

          i.    A Separate Proof of Claim Form Should Be Used for Asbestos Claims .......................................................................................... 14

          ii.    The Debtors Unnecessarily Seek Supporting Documentation of Facts Admitted by the Debtors That May Not Yet be Known to Claimants ............................................................................. 17

          iii.    Supplemental Notice and Timing .......................................... 18

          iv.    The Bar Date Notices, Cover Letters, Banner Ads, and Envelopes Are Not Designed to Effectively Inform Claimants of the Need to File a Claim. ........................................................................... 18

          v.    Hilsoft's Proposed Notice Plan is Flawed as to Target, Reach and Frequency ............................................................................. 22

          vi.    Television Should Be the Primary Media ................................. 22

CONCLUSION ........................................................................................................... 25

# TABLE OF AUTHORITIES

## CASES

*421 Chestnut Partners, LP* v. *Aloia (In re Aloia)*,
    496 B.R. 366 (Bankr. E.D. Pa. 2013) .................................................................................. 10

*Amchem* v. *Windsor*,
    521 U.S. 591 (1997) ........................................................................................................... 8

*Education Credit Management Corp.* v. *Loving (In re Loving)*,
    269 B.R. 655 (Bankr. S.D. Ind. 2001) .............................................................................. 10

*Gaeth* v. *Deacon*,
    964 A.2d 621 (Me. 2009) ............................................................................................ 23-24

*Grynberg* v. *U.S. (In re Grynberg)*,
    986 F.2d 367 (10th Cir. 1993) .......................................................................................... 10

*In re Amatex Corp.*,
    755 F.2d 1034 (3d Cir. 1985) ............................................................................................. 8

*In re Dow Jones & Co., Inc.*,
    2009 WL 7416516 (Va. Cir. Ct. Nov. 17, 2009) .............................................................. 24

*In re New Century TRS Holdings, Inc.*,
    2014 WL 4100749 (D. Del. 2014) .................................................................................... 24

*In re Zandford*,
    No. 05-13305, 2006 Bankr. LEXIS 1398 (Bankr. D. Del. July 18, 2006) ........................ 10

*Mullane* v. *Central Hanover Bank & Trust Co.*,
    339 U.S. 306 (1950) ................................................................................................ 13-14, 23

*SLW Capital, LLC* v. *Mansaray-Ruffin (In re Mansaray-Ruffin)*,
    530 F.3d 230 (3d Cir. 2008) ............................................................................................. 23

*Stephenson* v. *Dow Chemical Co.*,
    273 F.3d 249 (S.D.N.Y. 2001), *aff'd, Dow Chemical Co.* v. *Stephenson*,
    539 U.S. 111 (2003) ........................................................................................................... 8

## STATUTES AND RULES

11 U.S.C. § 524(a) .................................................................................................................. 10

11 U.S.C. § 1141(d)(3) ........................................................................................................... 10

Bankruptcy Rule 3003(c)(2) ............................................................................................................. 2

Bankruptcy Rule 7001(7) ............................................................................................................... 10

3920095

The official committee of unsecured creditors of Energy Future Holdings Corporation ("**EFH**"), Energy Future Intermediate Holding Company LLC ("**EFIH**"), EFIH Finance Inc. and EECI, Inc. (the "**EFH Committee**"), through their undersigned counsel, hereby submits this Objection to the Debtors' Proposed Form of Order (a) Setting Bar Date for Filing Asbestos Proofs of Claim, (b) Approving the Form of and Manner for Filing Asbestos Proofs of Claim, and (c) Approving Notice Thereof [D.I. 3965] (the "**Proposed Order**"), including the notice plan developed by Hilsoft Notifications (the "**Proposed Notice Plan**"), proposed procedures, forms of notice and claim form (collectively, as they may be amended, the "**Proposed Notice Procedures**").  In support of the Objection, the EFH Committee submits the Declaration of Katherine Kinsella, founder of Kinsella Media, LLC (the "**Kinsella Declaration**"), filed contemporaneously herewith, and states as follows:

## PRELIMINARY STATEMENT

1.      The EFH Committee continues to view the Debtors' determination to proceed with the establishment of an Asbestos Bar Date in this case as ill-advised and wasteful. The Debtors have not provided the Court with any evidence or basis upon which an Asbestos Bar Date is a reasonable exercise of business judgment on the facts of these cases.  Nonetheless, the EFH Committee has undertaken the task of analyzing the Proposed Order and Proposed Notice Procedures despite the potential, if not actual, conflict of interests between those with Unmanifested Asbestos Claimants and other constituents with current, known claims.[2]

2.      The Debtors' Proposed Order is improper because it not only seeks to "bar" claimants from voting and from distributions from the Debtors' estates, but also to

---

[2]    This Objection is submitted by the EFH Committee and does not reflect the position of any individual member of the EFH Committee.  All rights of the EFH Committee members are reserved.

"discharge" Asbestos Claims.[3]  In purporting to permanently enjoin Asbestos Claims against the Debtors, the proposed Bar Date Order exceeds the relief available under Bankruptcy Rule 3003(c)(2).

3.    The Debtors' request to establish an Asbestos Bar Date raises novel and serious issues, as the Court is being asked to establish a bar date for all claimants, including the claims of individuals who have not to date manifested any illness or injury and who have no independent representation in these bankruptcy cases.  Under the circumstances, it is important to ensure that potential claimants receive the best notice practicable.

4.    The EFH Committee and its noticing expert Kinsella Media LLC ("**KM**" or "**Kinsella Media**") have carefully examined the Proposed Notice Procedures, and identified numerous flaws with the details of the Proposed Notice Plan, the notice documents and the claim form.[4]  As discussed below, the Kinsella Declaration sets forth numerous recommendations to improve the Proposed Notice Procedures (the "**Kinsella Recommendations**") that the EFH Committee requests be implemented if the Court proceeds with setting an Asbestos Bar Date.

## BACKGROUND

5.    On January 7, 2015, the Court issued an opinion [D.I. 3183] (the "**Bar Date Opinion**") holding that the above-captioned debtors and debtors in possession (collectively, the "**Debtors**") could seek to establish a bar date for all asbestos claims, including those persons who were exposed to asbestos at facilities constructed, owned, operated or

---

[3]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Proposed Order.

[4]    The EFH Committee has presented recommendations for improving the Proposed Notice Procedures to the Debtors.  While discussions are ongoing as of the date of this Objection, the Debtors have not committed to implementing any of the recommendations.

-2-

serviced by the Debtors or their predecessors (the "**Facilities**") but have not yet manifested any asbestos disease or other personal injury arising from their exposure ("**Unmanifested Claims**")[5].

6.      On March 24, 2015, the Debtors filed a proposed order seeking to establish a bar date with respect to all prepetition claims relating to exposure to asbestos, including unknown (manifested but unasserted) ("**Unknown Manifested**") and Unmanifested Claims (other than property damage claims or claims for contractual or common law indemnification or contribution) (the "**Asbestos Bar Date**"), and requesting approval of the Proposed Notice Procedures, which were prepared with the assistance of Hilsoft Notifications ("**Hilsoft**").

7.      On April 6, 2015, in view of the importance of notice to an Asbestos Bar Date, the EFH Committee sought to retain Kinsella Media as its asbestos claims noticing expert to assist the EFH Committee and its counsel in evaluating the adequacy of the Proposed Notice Procedures.

8.      On April 14, 2015, the Court entered an order granting the EFH Committee's application to retain and employ KM, *nunc pro tunc* to March 27, 2015.[6]

9.      On April 15, 2015, in consultation with KM, the EFH Committee served Interrogatories directed to the Debtors requesting targeted information relevant to evaluating the Proposed Notice Procedures (the "**Interrogatories**").  The information sought included, among other things, identification of the location, dates of operation, and other information regarding the Facilities that likely contained (and may continue to contain) asbestos; information

---

[5]     Unmanifested Asbestos Claims are defined in the Bar Date Opinion as the claims of unknown persons that have yet to manifest any sign of illness from exposure to asbestos.

[6]     *See Order (A) Authorizing the Retention and Employment of Kinsella Media as Asbestos Noticing Expert to the EFH Official Committee* Nunc Pro Tunc *to March 27, 2015 and (B) Waiving Certain Information Requirements Pursuant to Local Rule 2016-2(h)* [D.I. 4159].

concerning the placement and usage of the asbestos for which Debtors may be liable (based on both their conduct and the conduct of predecessors); and information relevant to identifying the individuals who are or may have Unmanifested Claims because they were employed or otherwise exposed to asbestos at the Debtors' (or their predecessors') Facilities, and certain key demographic information concerning these potential claimants so as to best determine the types of publications and other media they are most likely to see or hear.

10.    On April 16, 2015, a teleconference was held among the EFH Committee's counsel, KM, Debtors' counsel, and Hilsoft, during which KM asked some initial questions regarding the Proposed Notice Procedures.  A number of issues were identified for further inquiry and follow-up.

11.    The Debtors provided responses and objections to the Interrogatories on May 5, 2015 ("**Debtors' Responses**").  The Debtors' Responses include certain responsive information but omitted critical facts and objected to many of the Interrogatories.  For example, in response to Interrogatory No. 1, the Debtors limited the predecessor information provided to those entities that have historically been the subject of asbestos claims, while the proposed Asbestos Bar Date would apply to *all* the predecessors (the "**Predecessors**") of all Debtor entities.   On May 21, 2015, the EFH Committee sent a letter to the Debtors requesting supplementation of the Debtors' Responses by June 3, 2015.

12.    On June 5, 2015, the Debtors provided supplemental responses to the Interrogatories ("**Debtors' Supplemental Responses**").  The Debtors' Supplemental Responses provided some additional information but nonetheless continued to interpose various objections and limitations on the information provided.

13.    On June 24, 2015, the Debtors provided a second set of supplemental responses to the EFH Committee's request for clarification and supplementation of the Debtors' Responses (the "**Debtors' Second Supplemental Responses**").    The Debtors' Second Supplemental Responses placed the Committee on notice that the Debtors had received additional information that might be relevant to the Interrogatories but that the Debtors considered to be unduly burdensome and expensive to analyze.    This information consisted of files from a law firm that formerly defended the Debtors and/or their Predecessors in asbestos litigation, and therefore may have provided information concerning additional Facilities. Particularly in light of the Debtors' failure to review, much less provide, such information, only claims of exposure at Facilities identified by the Debtors should be the subject of any Asbestos Bar Date.[7]

14.    On June 23, 2015, a second teleconference was held among the EFH Committee's counsel, Kinsella Media, the Debtors' counsel, and Hilsoft, during which Kinsella Media presented the Kinsella Recommendations.    The Debtors took the Kinsella Recommendations under advisement.

15.    Because it remains unclear whether and to what extent the Debtors intend to revise the Proposed Notice Procedures to incorporate the Kinsella Recommendations, the EFH Committee submits this Objection and requests that the Court order the Kinsella Recommendations be implemented if the Debtors do not voluntarily include them.

---

[7]    The EFH Committee reserves its rights with respect to all discovery matters, none of which are currently before the Court.

3920095

## KINSELLA RECOMMENDATIONS

16.    The EFH Committee respectfully directs the Court to the Kinsella Declaration for a complete description of each of the Kinsella Recommendations, which are summarized in the chart annexed as Exhibit A.

17.    Many of the deficiencies with the Proposed Notice Procedures are obvious and readily corrected.  For example:

- Although the Proposed Order provides for a release of all of the Debtors' Predecessors and claims relating to asbestos exposure at all Facilities, the notice materials do not identify all of these Predecessors or Facilities, thereby making it impossible for recipients of the notice to know if they have a claim relating to them.

- The proof of claim form purports to require that all claimants, including Unmanifested Claimants, provide a specific dollar amount for their claim, even though that is impossible, especially for those individuals that have no current injury.

- The Proposed Order is not geographically limited, even though the Debtors are not providing notice to anyone outside the United States and have acknowledged that they do not intend that the relief they seek extend to claimants living outside the United States.

## LIMITS TO THE EFH COMMITTEE'S OBJECTION

### *Unmanifested Claimants*

18.    Because the Court in its Bar Date Opinion held that Unmanifested Claimants hold "claims" as defined in the Bankruptcy Code, many of these Unmanifested Claimants are technically within the constituency represented by the EFH Committee.[8]

19.    While the Court's holding in that regard was clear, in the Bar Date Opinion, the Court also recognized that as a result of the Debtors' exclusivity in proposing a

---

[8]    The Bar Date Opinion also held that attorneys representing identified present asbestos claimants with manifested asbestos-related injuries or diseases lacked standing to make arguments on behalf of Unmanifested Claimants.  (Bar Date Op. at 6-7.)  As such, this constituency is without individual representation.

plan, it was premature to consider "whether a section 524(g) injunction ought to be established in the Debtors plan of reorganization, whether the Court should estimate the Debtors asbestos exposure, or whether the Court should appoint a futures representative."    Indeed the Court expressly left open the possibility that these issues would eventually need to be addressed:

> That being said, however, the Court will consider such proposals as they are presented to it. Until such matters are raised by motion or the filing of a plan, however, the Court is mindful that the Debtors have exclusive control over whether to submit a plan of reorganization and the terms thereof. As such, the Court will not impose any proposed treatment for such plan that is still in the early stages of negotiation.

(Bar Date Op. at 32-33 (internal citations omitted).)[9]

20.    On January 19, 2015, the EFH Committee filed a *Statement of the EFH Committee Regarding Asbestos Claimants with Unmanifested Injuries* [D.I. 3329] that, among other things, noted the difficult legal and factual issues that arise when attempting to provide constitutionally adequate notice to Unmanifested Claimants, and that, under the circumstances of these cases, such an Asbestos Bar Date was unnecessary.

21.    Further, as previously disclosed to the Court,[10] while the EFH Committee has undertaken the task of analyzing and ultimately seeking to improve the Debtors' Proposed Notice Procedures, it is laboring under a potential, if not actual, conflict of interest between the Unmanifested Claimants and other persons and entities within the constituency represented by

---

[9]    The EFH Committee notes that, although the Debtors' current plan proposes that Asbestos Claims filed by the Asbestos Bar Date are to be assumed by the new owners of the businesses, the ultimate treatment of Asbestos Claims is unknown.

[10]    *See Emergency Motion of the EFH Official Committee for Entry of an Order (I) Adjourning the Hearing, Currently Scheduled for June 1, 2015, on the Debtors' Proposed Form of Order (A) Setting Bar Date for Filing Asbestos Proofs of Claim, (B) Approving the Form of and Manner for Filing Asbestos Proofs of Claim, and (C) Approving Notice Thereof and (II) Shortening Notice with Respect to the EFH Emergency Motion* [Docket No. 4553], at 4-5.

the EFH Committee, each of whom has a present monetary claim.[11]  Given the potential, if not actual conflict, the EFH Committee may not be raising adequately or at all those positions that Unmanifested Claimants would take on their own behalf if independently represented.

22.    Because of the conflict of interest concerns and the lack of any individual representation of Unmanifested Claimants, the EFH Committee, in a June 15, 2015 response to a June 3, 2015 inquiry from the Office of the United States Trustee (the "Trustee"), notified the Trustee that the EFH Committee does not oppose the appointment of a future claims representative or *guardian ad litem* to represent the interests of Unmanifested Claimants for the limited purpose of consideration of an Asbestos Bar Date and the Proposed Notice Procedures.[12]

### Other Debtors, Including T-Silo Liabilities

23.    The Debtors' stated intention is that the Bar Date Order will apply to all Debtor entities.[13]  In total, there are sixty-nine Debtors whose cases are being jointly administered.

24.    Pursuant to the Notice of Appointment of Committee of Unsecured Creditors, the EFH Committee was formed to represent the interests of the unsecured creditors of EFH, EFIH, EFIH Finance, Inc., and EECI, Inc.  The Notice expressly states that "[t]his

---

[11]    The interest of present claimants is to maximize their own recovery, which may require minimizing the claims of Unmanifested Claims.  In addition and for that very reason, the present claimants cannot be expected to adequately raise those arguments that a separate representative of the Unmanifested Claimants would raise as to the issues that may be important to them. *Cf. Amchem* v. *Windsor*, 521 U.S. 591, 626 (1997) (reversing    class action settlement of present and future asbestos claims where future claimants were not independently represented).

[12]    *See Stephenson* v. *Dow Chemical Co.*, 273 F.3d 249, 260-261 (S.D.N.Y. 2001) (persons exposed to Agent Orange prior to the commencement of a class action regarding present and future claims concerning Agent Orange injuries, but who had not yet manifested any injuries and were not separately represented during negotiation of the class action settlement or court proceedings leading to approval of the settlement, were permitted to collaterally attack the settlement reached), *aff'd, Dow Chemical Co.* v. *Stephenson*, 539 U.S. 111 (2003). *See also In re Amatex Corp.*, 755 F.2d 1034, 1042-3 (3d Cir. 1985) (appointing a guardian ad litem to represent the interests of future claimants in an asbestos case pre-dating enactment of Section 524(g)).

[13]    Debtors' Supplemental Responses, p. 4.

committee represents the interests of the unsecured creditors of the aforementioned debtors and no others" [D.I. 2570].

25.    The EFH Committee and Kinsella Media have directed their attention to these entities only.  The EFH Committee does not represent the interests of unsecured creditors in connection with the "T-Silo" Debtors.[14]  However, the Debtors have acknowledged that T-Silo Debtors, including TXU and Luminant, have been named in asbestos litigation and may also have liability due to the operations of those Debtors' businesses.  Because those claimants are not within the EFH Committee's constituency, the EFH Committee has not conducted discovery or attempted to evaluate issues associated with the Proposed Notice Procedures with respect to claimants of those Debtors.

## OBJECTION

### A.    The Debtors' Proposed Asbestos Bar Date Order Seeks Improper Relief.

26.    Section V of the Debtors' Proposed Order provides that any claimant who does not file a proof of claim by the bar date:

> in accordance with this Asbestos Bar Date Order . . . shall be *forever barred, estopped, and enjoined from asserting such Asbestos Claim against the Debtors ... and the Debtors and its [sic] property shall be forever discharged* from any and all indebtedness or liability with respect to or arising from such Asbestos Claim.

Proposed Order, Section V, ¶ 17 (emphasis added).

27.    Bankruptcy Rule 3003(c)(2), which governs the establishment of bar dates, provides only that a claim may be barred for purposes of voting and distribution under a plan. "The clear provisions of Bankruptcy Rule 3003(c)(2) limit the rights of a creditor failing to file a

---

[14]    To the extent that the T-Silo Debtors have liability for Unmanifested Asbestos Claims, the TCEH Unsecured Creditors' Committee may also have standing to consider these issues.

-9-

proof of claim *only with respect to voting and distribution under the plan*.   Bar orders issued

pursuant to this rule have no other effect." *Grynberg* v. *U.S. (In re Grynberg)*, 986 F.2d 367, 371

(10th Cir. 1993) (emphasis added); *see also Educ. Credit Mgmt. Corp.* v. *Loving (In re Loving)*,

269 B.R. 655, 662 (Bankr. S.D. Ind. 2001) ("Failure to file a proof of claim simply precludes a

creditor from participating in the voting or distribution from the debtor's estate.") (citation

omitted).

28.     As this Court has recognized, "[d]isallowance and dischargeability are different

issues," and "disallowing [a] claim does not make it disappear."   *In re Zandford*, No. 05-13305,

2006 Bankr. LEXIS 1398, at *4 (Bankr. D. Del. July 18, 2006) (citations omitted).   Even if the

Court were to disallow the claims of asbestos creditors who failed to file proofs of claim, absent

further restrictions imposed by a confirmed plan of reorganization, their state law claims against

the Debtors – and any other party asserted to have liability derivative of the Debtors' liability –

must be preserved.   *See generally 421 Chestnut Partners, LP* v. *Aloia (In re Aloia)*, 496 B.R.

366, 378 (Bankr. E.D. Pa. 2013) ("[D]isallowance of a claim owing to a creditor's failure to file

a timely proof of claim does not negate the claim itself.   It simply means that the creditor may be

unable to receive a distribution . . . .   If [debtor] were granted a . . . discharge, then [claimant]

would be enjoined under 11 U.S.C. § 524(a) from any collection effort on its claim.   If, however,

the debtor's discharge were denied, then no statutory injunction under section 524(a) would

arise, and this plaintiff would be free to exercise its state law rights to recover its claim . . . .")

(citations omitted).[15]

---

[15]    The purported discharge fundamentally contravenes the legislative scheme embodied in Section 1141(d)(3) of
the Bankruptcy Code and is contrary to the procedural protections established by Bankruptcy Rule 7001(7).

29.    The Debtors' language regarding discharge of asbestos claims is directly at odds with the Bar Date Opinion.  On page 28 of the Bar Date Opinion, the Court noted the limited issue before it:

> No plan has been filed and no discharge is being sought.  The ultimate treatment of the Unmanifested Claims is not before this Court.  The sole issue is whether to establish a bar date for those claims.

(Bar Date Op., at 28).  Any purported injunctive relief or discharge should be removed from any Bar Date Order entered.

**B.    Any Bar Date Order Must Be Limited.**

30.    The Debtors: (i) "do not intend for the Asbestos Bar Date to apply to persons whose alleged exposure occurred at a Facility operated, constructed, serviced, or remediated by or on behalf of the Debtors outside the U.S., except to the extent that such persons are located inside the U.S. during the notice period or receive direct notice,"[16] or to provide notice outside of the US despite their extensive overseas operations; (ii) have represented that they are unable to identify all of the Facilities in the United States for which they have potential liability and therefore the list of Facilities that they will make available to the public as part of the US Noticing Plan will be incomplete; (iii) have represented that they are unable to identify all Predecessors and other entities for which they may have potential liability and therefore the list of Predecessors that they will make available to the public as part of the US Noticing Plan will be incomplete; and (iv) have acknowledged that continuing exposures may be occurring and/or may occur in the future at Facilities which have not been remediated (any exposures that arise

---

[16]    Debtors' Supplemental Responses, p.3.

after the bar date would not be subject to a claim of having been barred).[17]  Any Asbestos Bar Date Order should take these limitations into account.

31.    Ebasco Services provided engineering and construction services for power plants since 1935 both nationally and internationally.  Any Bar Date Order should make clear that potential claimants located internationally or who have claims arising from Facilities located abroad are not subject to the Asbestos Bar Date.

32.    Domestically, the EFH Committee is aware that plaintiffs in underlying litigation have identified multiple Facilities as potential sources of liability that are not identified on the Debtors' list.  In response to discovery propounded by the EFH Committee, the Debtors stated that information regarding the Debtors' Facilities was generally unknown to the Debtors "except as pertain to those Facilities owned and/or operated by Debtor entities as of approximately 1950 or later."[18]  Although the Debtors have apparently failed to exercise appropriate due diligence with regard to identification of Facilities and persons who may have been exposed to asbestos for which the Debtors may be liable,[19] the Debtors nonetheless seek to bar claims relating to

---

[17]    Debtors' Supplemental Responses, p. 5-6.

[18]    Debtors Responses, p. 7.

[19]    The Debtors' Second Supplemental Responses provide, inter alia, that "The Debtors received these documents from one of the law firms that handled past asbestos-related litigation for the Debtors, although our understanding is that the law firm has not been actively involved in any such litigation in almost ten years. Based on the Debtors' general review of the documents, the Debtors do not believe any of the documents affect their Proposed Notice Plan.  Some of the documents, however, may contain information that is potentially responsive to one or more of the Committee's Interrogatories.  For example, some documents refer to asbestos-containing products within facilities. Other documents appear to be litigation files for individual cases, and thus may contain information about individual plaintiffs' alleged asbestos injuries. Please see Exhibit 1 for a general categorization of the documents, which the Debtors have also provided to Hilsoft.  In any event, given the lack of relevance of the documents to the Debtors' Proposed Notice Plan, **and the undue burden and expense that would be required to analyze the documents to identify any potentially responsive information contained in the documents**, the Debtors do not intend to supplement their Interrogatory Responses based on the documents. Doing so would be a waste of time and resources, and the Debtors therefore object to it." Debtors' Second Supplemental Responses, p. 1.  This follows disclosure in the Debtors' Supplemental Response that the Debtors had determined that 17 additional Generation Activities Facilities may have been operating as of 1950.  Debtors Supplemental Responses, p. 3.  In short, it appears clear that the Debtors have access to information and

Facilities that have not been identified and that will not appear on the list to be provided in connection with the Proposed Notice Procedures.[20]

33.     Similarly, the Debtors intend that for the Asbestos Bar Date to bar claims for their Predecessors but admittedly intend to list only certain of those Predecessors, leaving it to potential claimants to guess as to what other entities were also Predecessors of the Debtors.

34.     The EFH Committee submits that adequate notice requires that a claimant be provided with the name of the Facility or Predecessor for which he or she is to submit a claim. Accordingly, the Asbestos Bar Date should be limited to the Facilities and Predecessors that are identified in connection with the Notice Plan.

35.     These issues, together with the unavailability of records to the Debtors before 1950 and the inability of the Debtors to identify many of the affected employees, sub-contractors and unions, underscore the need to limit the Asbestos Bar Date to exposure at or relating to the Facilities and Predecessors identified by the Debtors.

### C.    The Debtors' Proposed Notice Procedures Fail to Provide Adequate Notice.

36.     "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  *Mullane* v. *Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314, 70 S.Ct. 652 (1950) (citations omitted).  "The notice must be of such a nature as reasonably to convey the

---

documents that they have not attempted and do not intend to attempt to review to ensure that the Notice Plan and Notice Procedures are as complete and comprehensive as possible.

[20]    "[T]he Debtors intend for claims related to unidentified U.S. Facilities that were owned and/or operated by the Debtors before approximately 1950 to be subject to the Asbestos Bar Date to the fullest extent permitted by law."  (Supplemental Responses, p. 3.)  Additionally, the Debtors intend for claims related to exposures at unidentified foreign Facilities to be barred to the extent that an exposed person is present in the U.S. at the time that notice of the Asbestos Bar Date is published.

required information . . . and it must afford a reasonable time for those interested to make their appearance." *Id.* (citations omitted). "The reasonableness and hence the constitutional validity of any chosen method may be defended on the ground that it is in itself reasonably certain to inform those affected, … or, where conditions do not reasonably permit such notice, that the form chosen is not substantially less likely to bring home notice than other feasible and customary substitutes. *Id.* at 315. (citations omitted).

### i. A Separate Proof of Claim Form Should Be Used for Asbestos Claims.

37.     Use of Official Form 10, without any alterations to address the specific circumstances of Unmanifested Claimants, would facially require information that Unmanifested Claimants will not have. The proof of claim form should require information that can be readily answered by personal injury claimants who are being required to preserve their rights to seek compensation should they become ill from asbestos exposure in the future.

38.     KM suggests that a separate proof of claim form be developed for asbestos claimants that requires answers to plain questions including (i) the name of the Facility where the claimant (or a family member) worked, and (ii) a description of claimant's job at the Facility. An individual who worked at one of the Facilities identified by the Debtors should be considered as necessarily having a reasonable basis for believing he or she has been exposed to asbestos. A proposed alternative proof of claim form is attached as Exhibit 9 to the Kinsella Declaration.

39.     The Debtors' proposal to require strict compliance with Form 10 presents hurdles to submission of a claim, particularly for unrepresented and Unmanifested Claimants, and is likely to intimidate unrepresented individuals. To the extent that unrepresented claimants are required to retain counsel to advise them in connection with the proposed Asbestos Bar Date, even those claimants that notice may reach will be unlikely to spend money to preserve the right

to make a claim that they do not know that they will have and do not know the value of either the future claim or the potential recovery. As a result, the use of Form 10 in this context is unequitable. Several of the specific concerns with Form 10 as incorporated in the Proposed Order are addressed below.

*The Debtors Would Require that Proofs of Claim Be Completed Only in English*

40.     The proof of claim form must be "written in English." This provision ignores that many individuals who would have worked at the Debtors' power plants would have been non-English speaking or non-native English speaking.[21] Kinsella Media recommends that the Debtors' Notice Plan include notice in Spanish language newspapers in states that have a Hispanic population that is higher than the national average. (*See* Kinsella Decl. ¶ 49.)

*The Debtors Would Require that the Value of Each Claim be Quantified*

41.     The Debtors seek to require that each claim form quantify the amount of a claimants' claim in United States dollars. Unmanifested Claimants, however, have no current injury and thus have no way of knowing what injury, if any, they may end up manifesting or what the monetary value of any such future injury will be. Even individuals with present injuries but who have unliquidated claims (or who have not yet even retained legal counsel) have no way of valuing their claims with any precision. Moreover, the EFH Committee understands that the Asbestos Bar Date is simply intended to notify a potential buyer of the existence of the claims and preserve the claimants' future rights to obtain a recovery, not to value or estimate these claims. The proposed requirement that Asbestos Claimants set a value on their unliquidated and, in many cases unmanifested, Asbestos Claims should, therefore, be eliminated.

---

[21]     Indeed, as set forth in the Kinsella Declaration, KM is proposing advertising the bar date notice in several Spanish speaking newspaper, a population that is not reflected in the Debtors' Proposed Notice Procedures.

*The Debtors Would Require Claimants to Identify the Specific Debtor Against Which A Claim is Asserted*

42.     The Debtors seek to have the proof of claim identify the particular Debtor against which a claim is asserted, including the individual Debtor's case number.   While some individuals may be able to identify the owner or operator of the particular location where they were exposed to asbestos, many may not know the identity of the Debtor or Debtors which may have liability for asbestos exposure at a particular Facility.   The Debtors are far more able to match identified Facilities to the applicable Debtor, and there is no reason to burden claimants to do so.   Indeed, a review of the complaints filed pre-petition demonstrate that even individuals represented by competent counsel often did not name the correct Debtor entity.[22]

43.     Further, under Debtors' proposal, a proof of claim filed under the joint administration case number will be deemed as filed only against EFH, and a proof of claim filed without properly identifying a Debtor will similarly be deemed as filed only against EFH.   While the Proposed Order provides that a claim will not be disallowed "solely" for being filed against the incorrect Debtor, the inability of a claimant to identify which Debtor or Debtors against which he/she has a Claim creates a further hurdle to filing a Claim and this requirement should be removed.

44.     Moreover, if multiple debtors are listed on a single claim, the claim "may be treated as if filed only against the first-listed Debtor."  (Proposed Order at 6.)  The effect of this provision is to require the filing multiple claims in order to preserve a claim.   This is unnecessarily burdensome, could deter the filing of claims, and should be removed.

---

[22]  Notably, Unknown Manifested Claimants and Unmanifested Claimants will have no opportunity to engage in discovery to make this determination if it is not immediately known to them.

3920095

*The Debtors Would Require An Unduly Burdensome Certification*

45.     The Debtors seek a certification that the information contained in the proof of claim is "complete" and that the claim is accurate under penalty of perjury.  This is impractical. Given that people who worked at the Debtors' Facilities may not know they were exposed to asbestos there, and that the Debtors' own proposed notices disclose that if a person worked at a Facility he or she may have been exposed to asbestos and needs to file a claim, all that should be necessary to attest under penalty of perjury is employment of the claimant, or a family member of the claimant, at one of the Facilities identified by the Debtors or, if the claim is based on some other exposure, a reasonable belief of exposure for which the Debtors may be liable.  (Kinsella Decl. ¶ 65, Ex. 9 to Kinsella Decl.)

> **ii.     The Debtors Unnecessarily Seek Supporting Documentation of Facts Admitted by the Debtors That May Not Yet be Known to Claimants**

46.     Although the Bankruptcy Rules permit a claim to be filed with an explanation as to why documentation is not available, the Proposed Order implies that such a statement is only permissible if the Debtors' consent, and even then limits the time in which a claim may be supplemented.  The requirement of documentation for Asbestos Claimants who worked at Facilities, or who had family members who worked at Facilities, should be removed.

47.     As noted above, the nature of the "placeholder claim" or "reservation of rights" required by the Asbestos Bar Date should require only an affirmation under penalty of perjury that the claimant or a family member worked at one of the identified Facilities or, if the claim is based on some other exposure, a reasonable belief of exposure for which the Debtors may be liable.  The Debtors are far more likely to have access to relevant documentation, such as employment records, than these claimants.  Because of the length of time that the Debtors and their predecessors have operated, constructed, maintained, serviced, remediated and/or owned

-17-

power plants, even the Debtors' former employees may no longer have employment records, pay stubs, union records or other documentation confirming employment.  Also, it is likely that many claimants who may have secondary exposure (for example, the spouse or a child of a former employee who may develop an asbestos claim based on secondary exposure), may never have had documentation of their relatives' employment.   Requiring documentation evidencing possible exposure be obtained is likely to be impossible in the time frame provided, and unfairly acts as a deterrent to the filing of a claim.

### iii.    Supplemental Notice and Timing

48.    Paragraph 9 of the Proposed Order provides the Debtors with absolute discretion whether to provide supplemental mailings in the event that additional information becomes known to the Debtors which would allow them to provide direct, as opposed to publication, notice.   The Debtors should be required to provide direct notice if they obtain sufficient information to be able to do so.  Contrary to the current proposed language in  paragraph 10 of the Proposed Order, the Order should (i) direct - not merely authorize - the Debtors to take a reasonable amount of additional time to provide direct notice when the information becomes available, and (ii) provide additional time for individuals notified later to submit their claims.

49.    Finally, while the Proposed Order does not propose a date for the bar date (Preamble), even those individuals who have been diagnosed with an asbestos injury but have not sued the Debtors will likely need a minimum of 120-180 days, and probably more since they are ill, to retain counsel, evaluate their rights, and accumulate documentation.

### iv.    The Bar Date Notices, Cover Letters, Banner Ads, and Envelopes Are Not Designed to Effectively Inform Claimants of the Need to File a Claim.

50.    The Debtors' proposed bar date notices are drafted in a manner that fails to provide adequate and appropriate notice.  The notices are not designed to get the attention of, or

be understood by, Asbestos Claimants. (Kinsella Decl. ¶¶ 9, 26.) The notices are not worded in plain language and assume that each Unmanifested Claimant will retain counsel to assist in completing the forms. Thus, the notices will not communicate the significance of the bar date, or why it is necessary to file a claim, to the target population for this Asbestos Bar Date.

*The Publication Notice is Deficient*

51.      Similarly, the Debtors' publication notice is not designed to get the attention of, or be understood by Asbestos Claimants. (Kinsella Decl. ¶¶ 53.) Moreover, the Publication Notice fails to convey the information necessary for an Asbestos Claimant to realize the need to file and accurately complete a proof of claim. Both a more effective headline and plain language content is required. The publication notice must use a headline that immediately captures the attention of the claimant, it must clearly state in plain language that an individual may have been primarily or secondarily exposed to asbestos in connection with the construction, maintenance, or operation of the Debtors' Facilities, educate the claimant on asbestos-related disease, identify who has the right to file a claim, and detail the repercussions for failing to do so. (Kinsella Decl. ¶¶ 54-58.) Attached as Exhibit 4 to the Kinsella Declaration is an alternative recommended publication notice for the national magazines.

*The Direct Notice Salutation Requires Knowledge of a Claim*

52.      The salutation in the direct-mail notice uses language that does not inform an undiagnosed claimant of the need to take notice. The "To:" is directed to persons and entities "WHO MAY HAVE ***CLAIMS***" (emphasis added). Only individuals who are aware that they have a "claim" will read further. That is, an individual who has not been diagnosed with a disease will not respond to this notice. (Kinsella Decl. ¶ 59.) Indeed, an individual with an injury who is unaware of a potential claim may not read further. The "To:" continues

-19-

"Against . . .the Following Debtor Entities."  This requires someone to have sufficient interest in the notice to read down the long list of entities that begin with names that most individuals will not associate with an entity at which they were employed. Finally, the "To:" concludes "Or the Predecessors of These Entities" but predecessor entities are not identified.  Accordingly, only the most sophisticated, knowledgeable or well-represented individual would have a chance at responding intelligently to the Notice, and even they – like Debtors – will have no idea of the identities of all the Debtors' Predecessors.

*The Direct Mail Notice Will Be Misunderstood and Fail to Provide Notice*

53.    Kinsella Media recommends that the direct mail notice be simplified and re-designed, and broken down into frequently asked questions.  (Kinsella Decl. ¶¶ 59-61.)

54.    The direct mail notice (Exhibit 2 to Proposed Order) is written in legalese, relies on defined terms and footnotes, and is likely to be misunderstood by the target population. (Kinsella Decl. ¶ 59.)  The notices assume a level of understanding regarding asbestos and asbestos injury which is unwarranted.  For example, in the blocked section on page 4 of the direct mail notice, the notice speaks in terms of diagnoses of an injury or disease.  Many in the target audience may not know what an asbestos injury or disease is, or that asbestos can increase the likelihood of lung and other cancers.

55.    The direct mail notice fails readability tests and is not designed to be easy to read. (Kinsella Decl. ¶ 60.)  Moreover, the direct notice unnecessarily highlights burdens and expenses that may or should not need to be incurred and that will deter  the filing of otherwise valid claims.   For example the direct mail notice informs recipients that they should consult an attorney and that Debtors reserve the right to dispute their claims. This language is likely to be interpreted to mean that the individual, even in order to file a claim based on mere exposure

-20-

without any manifested injury, has to spend money now on a lawyer and then will be subjected to even more time, effort, and expense once the claim is filed because the Debtors are apt to challenge it.

56.     The direct notice twice specifically informs the recipient that "[t]here is no money available now for claims with no current asbestos injury."  And that "[f]iling a claim does not necessarily mean you will be entitled to any money."  The average reader – particularly an Unmanifested Claimant -- will not spend the time, money and effort to file a claim without a reason to believe that there is a benefit to doing so.  These provisions should be stricken and benefit of filing a claim before the Bar Date, even for Unmanifested Claimants, should be emphasized.

### *The Direct Notice Cover Letter and Envelope Should Be Revised*

57.     KM recommends that the cover letters be tailored for each group of claimants and should be personalized to reflect the name of the Facility where the claimant worked.  (*See* Kinsella Decl. ¶ 62.)  For example, one type of notice should be sent to known claimants with attorneys and another letter to current and former workers and other known potential Unmanifested Claimants (for example, the families of any individual who has previously brought a claim against the Debtors) who have not yet filed a claim and likely do not know they were exposed to asbestos.  The cover letter for Unmanifested Claims should also request that former employees share the notice with family members while explaining the importance of filing a claim.  KM has provided a draft of an alternative cover letter and envelope for Unmanifested Claimants that it believes more appropriately addresses these concerns.  (*See* Exhibits 6 and 8 to the Kinsella Declaration.)

*Banner Ads Should Be More Creative and Engaging*

58.     The Debtors' proposed Banner Ads are too dense to be noticed in a cluttered online media environment and should be more creative and engaging.  (Kinsella Decl. ¶ 63.)

> **v.     Hilsoft's Proposed Notice Plan is Flawed as to Target, Reach and Frequency**

59.     As explained in detail in the Kinsella Declaration, the Debtors' Proposed Notice Plan provides insufficient reach and frequency to an inaccurate target audience.  (Kinsella Decl. ¶¶ 16-26.)[23]  The Debtors' Notice Plan purports to reach an estimated 87% of men in the 55+ category with an average of 3.1 opportunities to see the notice and 80.1% of men in the 18+ category with an average of 2.5% opportunities to see the notice.   KM believes these measurements are well below those used in precedent setting programs to reach unidentified mass tort claimants.  (Kinsella Decl. ¶¶ 15, 26.)

60.     Kinsella Media disagrees with the media target group of Hilsoft and instead proposes the following audience targets:  Men 65+, Adults 45+ and Adults 18+.  The Men 65+ as the primary target audience is based on (a) the long operating history of Ebasco during which time asbestos was used in the construction and operation of plants; (b) the historical unabated and predominate long term usage of asbestos was well before the 1970s; and (c) experience and familiarity with asbestos usage as the result of knowledge gained from other asbestos-related cases.  (Kinsella Decl. ¶¶ 35-40.)

> **vi.     Television Should Be the Primary Media**

61.     Kinsella recommends that television be the primary media used to reach the target audience.  (Kinsella Decl. ¶ 43.)  Television is not cost prohibitive on the facts of this case—in

---

[23]    Reach is described as how well selected media penetrates a particular age and gender group (the "target audience"), and frequency denotes the average number of opportunities that the target audience has to see the notice.  (Kinsella Decl. ¶ 18.)

fact the cost of a revised Notice Plan implementing all of the Kinsella Recommendations will cost approximately $4 million, or less than $2 million more than the Debtors' Proposed Notice Plan. (Kinsella Decl. ¶ 66.)

62.     Due process requires "notice reasonably calculated, under all the circumstances." *Mullane*, 339 U.S. at 306. "The level of process due to a party prior to deprivation of a property interest …. is highly dependent on the context. As the Supreme Court has repeatedly emphasized, '[t]he very nature of due process negates any concept of inflexible procedures universally applicable to every imaginable situation.'" *SLW Capital, LLC* v. *Mansaray-Ruffin (In re Mansaray-Ruffin),* 530 F.3d 230, 239 (3d Cir. 2008) (quoting *Lujan* v. *G. Fire Sprinklers, Inc.,* 532 U.S. 189, 196, 121 S.Ct. 1446 (2001)). In 1950, when *Mullane* was decided, newspapers were the primary news source for Americans. Today, though, television fills that role.

63.     "[W]hen notice is a person's due, process which is a mere gesture is not due process. The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it." *Mullane*, 339 U.S. at 315. In this instance, as the Kinsella Declaration details, television would be a key medium employed if the Debtors were actually desirous of informing Asbestos Claimants of the Asbestos Bar Date and the need to file a claim in a timely fashion. *See, e.g., Gaeth* v. *Deacon,* 964 A.2d 621, 627 (Me. 2009) (holding that service by publication alone failed to satisfy due process, noting: "The practice regarding service by publication as a means to achieve notice of the commencement of a suit developed at a time when newspapers were the only means of print mass communication, and when newspapers were more widely and intensely read than is now the case. Today, much has changed in the way of life that gave rise to the rules and practices regarding service by

publication. . . .  Fewer people now read print newspapers, and those who do are likely to read them less intensely because an increasingly greater portion of the population obtains more of its information through television, the Internet, and other electronic media."); *In re Dow Jones & Co., Inc.*, 2009 WL 7416516, at *4 (Va. Cir. Ct. Nov. 17, 2009) ("[E]ven 'prominent' newspapers pale in notoriety and audience when compared to television and internet news sources.  Due process demands that notice be sought by a means that suggests an honest desire to actually inform the absentee."); *In re New Century TRS Holdings, Inc.*, 2014 WL 4100749 (D. Del. 2014) (Robinson, J.) (publication notice that catered to investors and sophisticated, focused readers, even when supplemented by publication in local newspapers, was insufficient to satisfy requirements of due process rights of unsophisticated consumer-borrowers).

64.     Television in intrusive and uses audio and visual elements to convey a message that can provide an urgent call to action.  Print, though valuable, is informational and passive. (Kinsella Decl. ¶ 45.)

65.     Based on its target audience, KM recommends changes to the media selections based on the media habits of these target groups.  Based on its research, KM believes that television should be the primary media for reaching these groups because these groups are very heavy television consumers and therefore are most easily and efficiently reached by using television as the primary media vehicle.  (Kinsella Decl. ¶¶ 44-46.)  Notably, Hilsoft does not provide for any television advertising in its Proposed Notice Plan despite the target group's demographics and habits.

66.     KM also recommends that the local newspapers be selected to include broader geographic coverage using the highest circulating newspaper in each county where a Facility is

or was located.  (Kinsella Decl. ¶ 48.)  On the other hand, KM suggests that trade publications be removed from the media mix for the Notice Plan.  (Kinsella Decl. ¶ 50.)

## **CONCLUSION**

WHEREFORE, for the reasons set forth herein, the EFH Committee requests that, to the extent that if an Asbestos Bar Date is to be established, the Bar Date Order be amended and the Kinsella Recommendations be incorporated, as set forth herein, and such other relief be ordered as is just and appropriate.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

3920095

Dated: June 29, 2015
Wilmington, Delaware

**MONTGOMERY, McCRACKEN, WALKER & RHOADS, LLP**

*/s/ Natalie D. Ramsey*
Natalie D. Ramsey (DE Bar No. 5378)
Mark B. Sheppard
Mark A. Fink (DE Bar No. 3946)
1105 North Market Street, 15th Floor
Wilmington, DE 19801
Telephone: (302) 504-7800
Facsimile: (302) 504-7820
E-mail:        nramsey@mmwr.com
               msheppard@mmwr.com
               mfink@mmwr.com

– and –

**SULLIVAN & CROMWELL LLP**
Andrew G. Dietderich
Mark F. Rosenberg
Brian D. Glueckstein
Michael H. Torkin
125 Broad Street
New York, New York  10004
Telephone:     (212) 558-4000
Facsimile:     (212) 558-3588
E-mail:        dietdericha@sullcrom.com
               rosenbergm@sullcrom.com
               gluecksteinb@sullcrom.com
               torkinm@sullcrom.com

*Counsel for The Official Committee of Unsecured Creditors of Energy Future Holdings Corp., Energy Future Intermediate Holding Company, LLC; EFIH Finance Inc.; and EECI, Inc.*

3920095