## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | Case No. 14-10979 (CSS) |
| Debtors. | (Jointly Administered) |
| | **Re: D.I. 4883** |

## DECLARATION OF KATHERINE KINSELLA

I, Katherine Kinsella, under penalty of perjury, declare as follows:

1.      I am the founder and former president of Kinsella Media, LLC ("**KM**"), an advertising and legal notification firm specializing in the design, evaluation and implementation of notification programs to reach unidentified putative class members primarily in consumer and antitrust class actions, and claimants in bankruptcy and mass tort litigation.  My business address is 2001 Pennsylvania Avenue NW, Suite 300, Washington, DC 20006.

2.      This declaration is submitted in support of the Objection of the Official Committee of Unsecured Creditors of Energy Future Holdings Corporation, Energy Future Intermediate Holding Company LLC, EFIH Finance Inc., and EECI, Inc. (the "**EFH Committee**") to the notice plan developed by Hilsoft, Inc. (the "**Notice Plan**"), proposed procedures, form and other materials for providing notice of an asbestos bar date, submitted by Energy Future Holdings Corporation and its affiliated debtors and

---

[1]      The last four digits of Energy Future Holdings Corp.'s taxpayer identification number are 8810.  The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201.  Due to the large number of debtors in these chapter 11 cases, for which joint administration has been granted, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

debtors in possession (collectively, the "**Notice Procedures**").  Except as otherwise noted, I have personal knowledge of the matters set forth herein.[2]

3.    KM has developed and directed some of the largest and most complex national notification programs in the country.  The scope of the firm's work includes notification programs in antitrust, bankruptcy, consumer fraud, mass tort, and product liability litigation.  Specific cases have involved, among others, asbestos, breast implants, home siding and roofing products, infant formula, pharmaceuticals, polybutylene plumbing, tobacco, and Holocaust claims.  The firm has developed or consulted on over 800 notification programs and has placed over $350 million in media notices.  My curriculum vitae is attached as Exhibit 1.

4.    I have been involved in developing or consulting on the notification programs for asbestos claimants in numerous complex bankruptcies, including the firm's current engagement by the debtors in *In re Garlock Sealing Technologies LLC*, Case No. 10-31607, pending in the United States Bankruptcy Court for the Western District of North Carolina.

5.    I have extensive experience in providing notice to both asbestos personal-injury claimants and asbestos property-damage claimants.  The notifications concerned (i) bar dates by which general claims, property damage claims and/or currently manifested personal injury claims must be filed, and/or (ii) voting deadlines for all claimants, including currently manifested personal injury claimants, relating to the solicitation of votes to accept or reject plans of reorganization.  These cases included *In re Armstrong World Industries, Inc.*, No. 00-4471 (Bankr. D. Del.), *In re Johns-Manville*

---

[2]    Certain of the disclosures herein relate to matters within the knowledge of other professionals at KM and are based on information provided by such other professionals.

*Corp.*, 68 B.R. 618, 626 (Bankr. S.D.N.Y.), *In re Kaiser Aluminum Corp.,* No. 02-10429 (JFK) (D. Del), *In re Owens Corning*, No. 00-03837 (Bankr. D. Del.), *In re Raytech Corp.*, No. 5-89-00293 (Bankr. D. Conn.), *In re The Celotex Corp.*, Nos. 90-10016-8B1 and 90-10017-8B1 (Bankr. M.D. Fla.), *In re USG Corp.*, Nos. 01-2094 - 01-2104 (Bankr. D. Del.), and *In re W.R. Grace & Co.*, No. 01-01139 (Bankr. D. Del.).

6.    I provided notice of settlements in two class actions attempting to bind current and future asbestos personal-injury claimants: *Ahearn v. Fibreboard Corp.*, No. 6:93cv526 (E.D. Tex) and *Continental Casualty Co. v. Rudd*, No. 6:94cv458 (E.D. Tex) (combined notice) and *Georgine v. Amchem, Inc.,* No. 93-CV-0215 (E.D. Pa.).  I consulted with the Official Committee of Asbestos Personal Injury Claimants and the Future Claimants' Representative in *In re Specialty Products Holding Corp.*, No. 10-11780 (Bankr. D. Del.) regarding the efficacy of notice to currently manifested claimants in those debtors proposed notice program.  I consulted with the committee representing asbestos personal injury claimants in *In re The Babcock & Wilcox Company*, No. 00-10992 Section "B" (Bankr. E.D. LA.).  As it relates to non-asbestos-related bankruptcy notification, I co-developed and co-implemented the bar date notice in *In re Dow Corning* No. 95-20512 (Bankr. E.D. Mich.) to reach breast implant claimants.

7.    The EFH Committee asked KM (i) to review the Debtors' Notice Procedures with respect to the overall adequacy and efficacy of the selected media, as well as the readability and effectiveness of the forms of notice, and (ii) if appropriate, to provide recommendations to make the Debtors' Notice Procedures more effective.  In my analysis of the Notice Plan, I relied on our experienced media team as well as Shannon R. Wheatman, Ph.D., the president of KM and a court-recognized notice expert.  Dr.

Wheatman has extensive expertise in plain language communications.  Her curriculum vitae is attached as <u>Exhibit 2</u>.  This declaration identifies shortcomings of the Debtors' Notice Procedures and recommends changes to improve the procedures.

## **OPINION SUMMARY**

8.      In my opinion, the Debtors' Notice Plan does not adequately notify individuals who have already manifested an asbestos-related disease ("Current Claimants") or individuals who have been exposed to asbestos but have not yet manifested an asbestos injury or disease ("Unmanifested Claimants", collectively "Asbestos Claimants") as a result of exposure to asbestos for which the Debtors  are liable.  The Debtors' Notice Plan reaches fewer Asbestos Claimants than appropriate, does not provide enough opportunities for Asbestos Claimants to see an actual notice, mis-targets the potential claimant population and fails to use television - the one media vehicle that is most consumed by individuals who should be the primary targets of this notice effort.

9.      The Debtors' notice materials do little to get the attention of and inform Unmanifested Claimants and are unlikely to be understood by Current Claimants enabling them to file a claim.  Furthermore, the forms of notice proposed by the Debtors do not contain the facts that would be necessary for an Asbestos Claimant to determine if s/he has a claim or the reasons why s/he should file a claim.

10.      The onerous claims process will serve to limit claimants' ability to file a claim.  The requirement to provide a "claim value" by Unmanifested Claimants based on an injury that is undiagnosed or may not manifest for years is simply impossible.  It will deter the filing of claims and render the notice meaningless.

Furthermore, the Proof of Claim is written for traditional creditors, which will baffle asbestos claimants.

## UNDERPINNINGS OF OPINION

11.     Personal injury and death are among the most serious claims that can be filed in any court.  Any effort to notify these claimants, and particularly any effort to notify those who have not manifested injury and those who are unaware of asbestos exposure, requires a heightened notification effort that takes these circumstances into account.

12.     For this reason, I find the Debtors' Notice Plan inadequate in notifying Asbestos Claimants, particularly Unmanifested Claimants who may not be aware of asbestos exposure, may not be the individual directly exposed and yet, will lose their rights to file a claim if a claim is not timely filed.  Furthermore, the Debtors' Notice Plan does not even meet the standards historically set by many notice programs barring claims directed only to "current" asbestos personal injury claimants who were diagnosed with an injury.

13.     To my knowledge and belief, with the exception of the combined notice program in *Ahearn* and *Continental* and the notice program in *Georgine v. Amchem, Inc.,* both of which KM undertook, no asbestos-related notification program has ever attempted to bind unmanifested claimants and eventually in those cases the notice was not authorized to bind claimants for other reasons.

14.     The United States Supreme Court in *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306 (1950), held that due process requires notice that is "reasonably calculated, under all the circumstances, to apprise interested parties of the

pendency of the action and afford them an opportunity to present their objections" and that "the means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it."

15.    The ruling in *Mullane* mandates that any effort to bind asbestos claimants, particularly those who are unaware that they have a claim against the debtors, requires using the most effective media, reaching a very high percentage of potential claimants, and providing a large number of opportunities to see the notice.  The Debtors' Notice Plan does not meet these requirements and falls well below precedent-setting bar date notice programs in similar cases described below.  Under this standard, it is my professional belief, as a notice expert, that the Debtors' proposed Notice Procedures are not "reasonably calculated" to provide appropriate and adequate notice.

## DEBTORS' INADEQUATE NOTICE PLAN

16.    The Debtors' Notice Plan includes direct notice to identifiable current and former employees, publication notice in consumer magazines, trade magazines, labor union publications, national and local daily newspapers, and Internet banner advertising.

### Reach of Claimants

17.    As explained in further detail below, credentialed and experienced notice experts use industry–vetted data and methodologies to calculate how well selected media penetrates a target audience and the average number of opportunities that audience has to see the notice.  A target audience is a group of people with shared demographic characteristics such as, age, income or purchasing habits, for example, that is the intended recipient of an advertising message or notice.  Paid media is purchased and measured

based on demographic targets because people with similar demographics consume similar forms of media.

18.     These calculations are estimates expressed as *reach* and *frequency*. *Reach* is the estimated percentage of a target audience that is exposed one or more times through a specific media vehicle or combination of media vehicles within a given period. *Frequency* is the estimated average number of opportunities an audience member has to see the notice (such as seeing a notice in a newspaper or on television).  In general, advertising and marketing studies show that an individual is more likely to recognize and respond to a message the more times s/he is exposed to it.[3]

19.     Because the identities of many Unmanifested Claimants and even some Current Claimants are unknown, notice professionals rely on paid media to provide notice.  Notice programs (i) identify "target" audiences by age and gender (based on the gender of the individuals most likely to have worked with the injurious product) and the age such individuals would most likely be today, and (ii) seek to "reach" as high a percentage of individuals in that gender and age bracket as possible providing as many opportunities to see the notice as is reasonable.

20.     The Debtors contend that their Notice Plan will reach (i) an estimated 87.6% of men 55 years of age and older ("Men 55+") who will have an average of 3.1 opportunities to see the notice, and (ii) an estimated 80.1% of adults 18 years of age and older ("Adults 18+") who will have an average of 2.5 opportunities to see the notice.  KM's own analysis of the anticipated reach of the proposed Debtors' Notice Plan,

---

[3]     Sissors, Jack Z. and Lincoln Bumba, ADVERTISING MEDIA PLANNING. Chicago: NTC Publishing Group (1995).

however, shows these numbers are overstated.[4]  Regardless, it is my opinion that the reach and frequency provided by Debtors, if achieved, are insufficient when measured with the reach and frequency of many other notice programs targeting personal injury claimants.

21.    For example, in the *In re The Babcock & Wilcox Company*, No. 00-10992 Section "B" (Bankr. E.D. LA.) asbestos bankruptcy case, the media program developed by Hilsoft Notifications ("Hilsoft"), directed to asbestos-injury claimants with a ***currently manifested*** injury, reached:

- 94% of Men 55+ with an average frequency of 4.4,
- 90.7% of Men 35+ with an average frequency of 3.9, and
- 88% of Adults 18+ with an average frequency of 3.6.

22.    In *In re Dow Corning*, No. 95-20512 (Bankr. E.D. Mich.), which I developed in conjunction with Hilsoft, involved noticing recipients of breast and other implants, including those who had not yet manifested any injury, the notice plan reached:

- 95% of Adults 18+ with an average frequency of 4.8,
- 96% of Women 25+ with an average frequency of 5.6, and
- 96% of Adults 50+ with an average frequency of 6.1.

23.    Currently, a bar date notice program binding currently manifested claimants is being implemented in *In re Garlock Sealing Technologies LLC*, a complex bankruptcy involving asbestos exposure.  The reach and average frequency is far above that proffered by the Debtors' Notice Plan, as the media in *Garlock* is reaching:

- 95.5% of Men 65+ with an average frequency of 5.1,
- 95.2% of Adults 65+ with an average frequency of 5.1,

---

[4]    KM attempted to duplicate the estimated reaches and frequencies for Hilsoft's chosen target audiences.  KM was unable to duplicate the estimated numbers.  Using the 2014 GfKMRI Spring Study and the comScore March 2015 Study, KM estimates the Debtors' Notice Plan would actually reach 80.6% of Men 55+ with an average frequency of 2.8 and 73.7% of Adults 18+ with an average frequency of 2.3.

- 91.8% of Adults 45+ with an average frequency of 4.1, and
- 90.1% of Adults 35+ with an average frequency of 3.9.

24.     In the class actions, *Ahearn and Continental Casualty*, the combined notice of a bar date was intended to be seen by all currently injured and as yet unmanifested asbestos personal injury claimants.  The estimated reach levels and frequency of exposure to the notice were even higher than those stated above:

- 97% of Men 50+ with an average frequency of 7.5,
- 96% of Men 35+ with an average frequency of 6.2,
- 97% of Adults 50+ with an average frequency of 7.7,
- 96% of Adults 35+ with an average frequency of 6.4, and
- 96% of Adults 25+ with an average frequency of 5.7.

25.     A recent class action notice program, developed by Hilsoft, involving non-asbestos personal injury claims garnered higher reaches than those proposed in the Debtors' Notice Plan.  In the case, *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, MDL 2179 (E.D. La.), the extensive notice plan relating to economic and medical claims[5]—reached "an estimated 95% of adults 18+ in the Gulf Coast region, an average of 10.3 times each, and an estimated 83% of all adults in the United States aged 18+ an average of 4 times each."[6]

***Opportunities to See the Notice***

26.     In addition to my concern about insufficient reach of the target audiences, even more critical is the low frequency of opportunities to see the notice provided by the Debtors' Notice Plan.  As outlined in the cases cited above, the primary

---

[5]     The medical claims settlement covered a much smaller geographic area (and a smaller number of class members) than the economic damages settlement.

[6]     Declaration of Cameron Azari in Support of the Form and Manner of Notice of Bar Date with Respect to Asbestos Claims (the "**Azari Declaration**"), Attachment 1 (Hilsoft Notifications' curriculum vitae).

notice targets (claimants with ***manifested*** asbestos disease) had an average of 4.4

opportunities or more to see the notice.  In the *Ahearn* case, which attempted to bind both

manifested and unmanifested claimants, the average frequencies of opportunity to see the

notice for all target audiences were between 5.7 and 7.7.  It is my strongly held position,

that the opportunities to see the notice under the Debtors' Notice Plan are well below

what is effective to get the attention of those who are unaware of any future injury or

asbestos exposure.

***Other Notice Procedures***

       27.     The Debtors' Notice Plan states: "[o]ther components of the

[Notice] Plan are not included in the estimated reach and frequency calculation, including

the individual notice, publication in trade and local newspaper publications, the

Informational Release, the labor union outreach program, and sponsored Internet search

listings.  Accordingly, the actual reach of the [Notice] Plan is necessarily understated.

The presence of the non-measured elements will only increase the effectiveness of the

notification effort."[7]

       28.     KM agrees that additional notice should occur through the efforts

outlined immediately above, but with the exception of the paid media (*i.e.*, consumer

magazines, newspapers and Internet ads) there is no way to quantify what that reach

would be, or even guarantee additional reach.  The Informational Release may result in

media coverage that may be seen by claimants, but it is not guaranteed.  For the most

part, the trade publications are directed primarily to owners and managers of companies

and professionals within certain related-industries.  The "rank and file" workers within

the facilities at issue would not likely read or even see them.  The targeted labor unions

---

[7]    Azari Declaration at ¶ 10.

will likely publish information about the bankruptcy, but notice through third parties is
not guaranteed. Asbestos Claimants may see and click on sponsored Internet search
listings, *if* they know the information concerns them, which is unlikely for those
unmanifested individuals, those unaware that their illness is the result of asbestos
exposure or injury, or those unaware of asbestos exposure. Direct mail is important, but,
as discussed below, the Debtors do not have the ability to quantify the percentage of
current and former workers reached through mail as compared to the overall population,
and therefore it is impossible to ascertain its effectiveness.

29.     The additional components of the Notice Procedures identified in
paragraph 27 above are certainly worthwhile, but without the ability to measure their
reach, they can only be considered supplemental to the paid media program whose reach
of the target audiences and the average opportunities to see the notice are based on
industry-vetted calculations and data that are generally accepted and relied upon by
experts in the notice field and are guaranteed within a quantifiable margin of error.

**Role of Direct Mail**

30.     The Debtors maintain that in addition to their media program, direct
mail will be sent to those current and former workers (employees, contractors, etc.) who
can be identified. The Debtors' Notice Plan states that "[c]overage will be further
enhanced by the extensive individual notice mailing to Potential Asbestos Claimants and
the media placements described . . . for which reach is not measured. The measurable
reach and frequency that will be achieved is consistent with other court-approved notice
programs, and is designed to meet due process requirements."[8]

---

[8]     Azari Declaration, Exhibit A, p. 21.

31.     The Declaration of James Katchadurian states that Epiq Bankruptcy Solutions, LLC has identified approximately 36,000 employee personnel records from the post-1990's and 110,000 employee personnel records from the pre-1990's.[9]  Since work is still being done on this data we do not know how many unique records are available or the number of individuals whose identities will actually be uncovered.  However, it appears that only a subset of the total number of employees have been identified for direct notice.

32.     The Debtors have been unable to provide any information about the percentage of potential claimants who can be identified and provided with direct notice.  Current employees in all probability should be identifiable.  However, older workers as well as anyone who may have a secondary exposure claim based on a worker's exposure (e.g., wives who laundered their clothing worn by their husbands which was contaminated with asbestos from Debtors' facilities, children, and other household residents who were in close proximity to a worker's contaminated clothing) would likely be very difficult to identify and directly notice.

33.     This direct notice effort will supplement the reach provided by the paid media but it is not possible to quantify the exact percentage of unique reach it provides.  First, there are likely a large number of duplicates in the records that have been identified since many employees worked for the Debtors for multiple years.  Additionally, the number of potential claimants who may have suffered secondary exposure is exponentially greater than the pool of workers and they will not be reached by the direct mail effort.  And finally, given the fact that the Debtors have identified over

---

[9]     Declaration of James Katchadurian In Support of the Bar Date Motion and in Support of (A) the Claim Form and (B) the Form and Manner of Notice of Bar Date with Respect to Asbestos Proofs of Claim, ¶¶ 8, 9.  In responses to discovery, the Debtors have stated that the pre-1990 records are after 1950.

200 facilities[10], and that some of these facilities date back to the early twentieth century, it is likely identified records will represent only a fraction of the actual number of workers who have been at these facilities during the relevant time periods.

34.    The Debtors admit they have no ability to measure and quantify the reach of these efforts.  Likewise, they have provided no contingency plan for additional media if the direct mail lists cannot be developed for key facilities.  Therefore, direct notice should be viewed as supplemental only and not a reason to provide less robust media notice.

***Inappropriate Media Targets***

35.    Not only is it my opinion that the Debtors' reach of their selected target audiences and frequency of opportunities to see the notice are well below what they should be, but the Notice Plan's targets are not entirely correct.  KM disagrees with the choice of Men 55+ as the primary target audience in this case and believes it should be Men 65+.  In addition, KM believes that another target audience of Adults 45+ needs to be included.

| Debtors' Notice Plan Target Audiences | KM's Recommended Target Audiences |
|---|---|
| Men 55+<br>Adults 18+ | Men 65+<br>Adults 45+<br>Adults 18+ |

36.    The Debtors' Notice Plan only provides a rationale for the male target and does not provide any support for the selected age breakouts.  Likely, the primary target of Men 55+ was chosen to include older workers.  This target audience

---

[10]    Debtors have stated that they are unable to identify all of the facilities for which they may have liability.

was appropriate 10 to 15 years ago but claimants are aging and an older primary demographic has resulted. The Adults 18+ target audience appears to have been selected to include younger workers as well as individuals who may have a secondary exposure, or heirs of claimants who had manifested an asbestos personal injury.

37.    KM recommends Men 65+ as the primary target audience rather than Debtors' target of Men 55+. This is based on (a) the long operating history of Ebasco during which time asbestos was used in the construction and operation of power plants, (b) the fact that historically, the unabated and predominant, long-term usage of asbestos in power plants, was well before the EPA started to ban various forms of asbestos in 1975[11], and (c) KM's experience and familiarity of asbestos usage gained in other asbestos-related cases as cited above.

38.    With the publication by Dr. Irving J. Selikoff on *Asbestos Exposure and Neoplasia*, in the Journal of American Medicine in 1964, the dangers of asbestos became more broadly known. Although there was a growing awareness of the dangers of asbestos during the 1950s, it has been forty years since the EPA acted to ban further use of the most dangerous forms of asbestos (which were used throughout the Debtors' facilities).[12] Older workers, those prior to the late 1960s and mid-1970s had a greater and longer exposure to asbestos-containing products and should be considered the primary target for media notice. Younger workers likely continued to be exposed in facilities that failed to be fully remediated, but the sheer number of these workers would pale in comparison to the older workers due to the length of time in question.

---

[11]    In 1975, the EPA banned asbestos pipe insulation and asbestos block insulation in facility components such as boilers and hot water tanks. *See* National Emission Standards for Hazardous Air Pollutants (NESHAP) at 40 CFR Part 61, Subpart M.

[12]    *Id.*

39.     The Debtors' Notice Plan compresses a wider range of ages into a secondary target of Adults 18+.  In line with previous asbestos cases, additional secondary and tertiary targets are appropriate given that there will be differences in exposure levels (short term v. long term; primary v. secondary).  There are also differences in media consumption among age segments.  Specific media used in the notice plan should be directed towards each segment in a manner that recognizes the different media utilized by each segment, thereby ensuring the overall adequacy of the notice program.  Therefore, we recommend that an additional target audience of Adults 45+ be added to the Debtors' Notice Plan in order to ensure that 45-64 year olds within the broader Adults 18+ target are adequately reached.

40.     In this particular case, due to secondary exposure and younger employees, it is necessary to analyze how well the notice reaches the overall audience of Adults 18+.  However, the critical audiences to reach are Men 65+ and Adults 45+ as they are most likely to encompass claimants who suffered the greatest exposure.

***Media Habits of the Targeted Audience***

41.     To select media appropriate for the task of notifying current and future personal injury claimants, both Hilsoft and KM relied on GfK MediaMark Research, Inc. ("**GfK MRI**")[13] for data to determine the demographics of target

---

[13]     GfK MRI is a nationally accredited media and marketing research firm that provides syndicated data on audience size, composition, and other relevant factors pertaining to major media including broadcast, magazines, newspapers and outdoor advertising.  GfK MRI provides a single-source of major media, products, services, and in-depth consumer demographic and lifestyle/psychographic characteristics.  90 out of the top 100 advertising agencies use it to guide media and marketing decisions.  GfK MRI produces an annual Doublebase, a study of over 50,000 adults consisting of two full years of data.  The MediaMark sample consists of more than 26,000 respondents.  Fieldwork is done in two waves per year, each lasting six months and consisting of 13,000 interviews.  At the end of the interview, the fieldworker presents a self-administered questionnaire that measures approximately 500 product/service categories, 6,000 brands, and various lifestyle activities.  Resulting data is

audiences including age, gender, race or ethnicity, occupation, education and similar characteristics.

42.    Using GfK MRI, media vehicles are chosen by notice experts based on their ability to provide effective and cost-efficient penetration of the target audience. The selected media vehicles are then measured against the target audience to quantify the reach of the media program and the frequency of exposure to the media vehicles as previously stated.

43.    In my opinion, television should be the primary media used to reach the target audience.  Television is not cost prohibitive on the facts of the EFH cases, and is essential to ensuring appropriate notice is provided.

44.    Media consumption habits of Men 65+ (KM's primary target) and Men 55+ (Debtors' primary target) indicate that they are *very* heavy television consumers and that they are watching television throughout the day.  As a result, they are more easily and efficiently reached by using television as the primary media vehicle. Conversely, both of these groups are very light Internet users in comparison to their younger counterparts.  Therefore, it is harder and less efficient to reach this target using online advertising as a primary media.

45.    Television is intrusive, uses audio and visual elements to convey a message and can provide an urgent call to action.  Print, although valuable, is informational, passive and not intrusive.  In all of the previous bankruptcy cases noted above as well as the *Ahearn* and *Georgine* cases, television was the *primary* notice delivery vehicle.  Most importantly, consumers rank television as the number one

weighted to reflect the probabilities of selection inherent in the sample design and then balanced so that major study demographics match the most recent independent estimates.

medium for the most (i) exciting; (ii) influential; (iii) percussive; (iv) authoritative; and (v) engaging advertising.[14]  This sentiment is critical when trying to get people who may not be aware of the asbestos exposure, may not have primary exposure, or may not be symptomatic to pay attention to the notice.

46.    Television is the most effective and cost-efficient media vehicle to notify potential claimants across all target audiences.  Every proposed target audience spends more time with television than with any other type of recommended media. To illustrate, when comparing television with Internet, the numbers are as follows:

| Target | Average number of hours of television viewed per week | Number of Internet hours in average week |
|---|---|---|
| Men 65+ | 42.9 | 13.5 |
| Men 55+ | 39.6 | 14.7 |
| Adults 45+ | 37.6 | 15.8 |
| Adults 18+ | 32.4 | 18.2 |

Adults 18+ are spending a lot less time reading print publications on a weekly basis, averaging 1 hour and 24 minutes on magazines and 1 hour and 38 minutes on newspapers.[15]

47.    Despite the data that overwhelmingly supports the use of television as the primary notice vehicle, the Debtors believe their reach and frequency levels are high enough with only print and online.  However, a 30-second television ad allows for more ad-copy than an Internet banner ad.  The singular delivery of the message and the intrusive audio and video presentation of content renders television one of the most

---

[14]    Source: ThinkTV (TVB 2010 Media Comparisons Study, adults 18+).

[15]    eMarketer, *US Time Spent With Media*, p. 3 (May 2015).  Data is only available for Adults 18+.

effective means of communicating any message.  Attached as <u>Exhibit 3</u> is the sample

script of the television spot being used in the *Garlock* bankruptcy cases.  The *Garlock*

television spot uses images included in the banner ad.  By using television and print

media in concert with one another, frequency will increase and higher recognition will

result enhancing response.  This in turn may lead potential claimants to take an action

when they see a TV ad and then see the same message in a print magazine reinforcing the

call-to-action.

### *Additional Recommendations*

48.    The selected local newspapers in the Debtors' Notice Plan provide

coverage of the immediate areas surrounding the Debtors' identified facilities.  However,

this assumes that claimants are still located within these areas.  The selected newspapers

should be expanded to include newspapers that provide broader geographic coverage at

the county level.  This would require using the highest circulating newspaper in each

county where the Debtors' power plants are and were located.  In addition, the Debtors'

Notice Plan currently does not provide for any regional newspapers in the state of

Nebraska.  Nebraska newspapers should be included in the Debtors' Notice Plan because

facilities in Nebraska have been identified in the information regarding specific facilities

provided in the "Generating History of Ebasco" dated May 1986.[16]

49.    Due to the historically high number of asbestos claims against

Debtors in Texas and the fact that certain of the other locations are within states (Arizona,

California, Colorado, Florida, New Mexico, New York, and Texas) that have a higher

than average Hispanic population, KM recommends that the Debtors' Notice Plan should

---

[16]    *See* Debtors' Responses and Objections to EFH Official Committee First Set of Interrogatories to
Debtors, Exhibit A.

include notice in Spanish language newspapers in states that have a Hispanic population that is higher than the national average.[17]

50.     Moreover, the trade publications, as previously noted, are primarily publications directed to owners, managers, and professionals and not likely to speak directly to the types of workers, particularly blue-collar workers, who have current or will manifest future injuries.  These could be removed if cost is truly an issue.

## THE DEFICIENT NOTICES AND CLAIM FORM

51.     In my opinion, the requirements imposed by the Notice Procedures make it impractical if not impossible for Asbestos Claimants to file an adequate claim that meets the standards set forth in the Notice Procedures.  In that regard:

(i) Not all the facilities containing asbestos or asbestos products for which Debtors may be liable are identified, thereby making it impossible for notice recipients who were exposed at such unidentified facilities to know they have a claim;

(ii) The Notice Procedures purport to require that all Claimants provide a specific dollar amount for their claim.  Current Claimants will necessarily not have obtained a settlement or verdict liquidating their claims and may not yet be in a position to provide more than what would be essentially a settlement offer.  Unmanifested Claimants by definition do not yet have any asbestos-related injury or disease.  Therefore, they do not yet have any compensable damages and the need for an knowable and entirely speculative dollar amount is unnecessary, impractical, and will deter most,

---

[17]     US Census Bureau, *American Community Survey* (current state data profiles), *available at* http://www.census.gov/acs/www/# (last visited June 22, 2015).

if not all Unmanifested Claimants from filing claims because this requirement simply cannot be satisfied;

(iii) Moreover, much of the language in the notices talks about "injury," but Unmanifested Claimants, as noted above, by definition have no present injury even though, pursuant to this Court's January 7, 2015 decision, they do have "claims."  The current language suggesting that there needs to be actual present injury in order to have a claim should be deleted, and the Notice Procedures should make clear that mere exposure to asbestos at the facilities identified in the Notice Procedures constitutes the basis for having and filing a claim;

(iv) The notices as drafted do not provide Unmanifested Claimants with any reason to believe that filing a claim would be anything other than a futile gesture.  These Unmanifested Claimants need to know in the Long Form Notice that (1) the Debtors' currently proposed Plan provides that so long as Unmanifested Claimants file their claims by the Bar Date, a buyer of the business will assume liability with respect to payment of the claims if and when these individuals manifest an asbestos-related injury or disease, and (2) the currently proposed Plan states that liability for Unmanifested Claims not filed by the Bar Date will be discharged;

(vi) Although we understand that this Court's January 7, 2015 Decision concludes that it is an individual's exposure to asbestos that gives rise to the claim against the Debtors (regardless of whether any injury has yet been manifested or will ever manifest as a result of that exposure), as a

practical matter many individuals are likely to have been exposed to

asbestos unknowingly while working for the Debtors.  For example,

individuals would know that they worked at particular power plants

operated by the Debtors, they would very possibly not know or have any

reason to find out that the particular products they worked with in these

plants actually contained asbestos unless and until they manifested an

asbestos-related injury or disease.  We suggest it would be much more

practical to permit anyone to file a claim who has worked at one of the

facilities identified by Debtors as containing asbestos.

***The Debtors' Notices***

52.     The Debtors presented drafts of the Publication Notice, Notice of

Bar Date ("Long Form Notice"), Cover Letter, Banner Ad, and Envelope.  It is

imperative that these documents provide clear and concise information about the

bankruptcy and how to file a Proof of Claim.

53.     It is my opinion that the Debtors' proposed Publication Notice will

not get the attention of, or be understood by Asbestos Claimants.  The Publication Notice

fails to convey the information necessary for an asbestos personal injury claimant to

adequately identify the need to file, and indeed accurately complete, a Proof of Claim.

54.     The formatting of the Publication Notice is distracting and too

dense.  It includes the names of certain Debtors, many of whom are holding or

management companies, which the claimants are not likely to recognize.  The Publication

Notice should highlight key companies that will be meaningful to claimants (*i.e.*, EFH,

Ebasco and EECI).

55.     A notice headline is critical to capturing the attention of the target audience.  The Debtors' headline is: "If you or a family member ever worked at certain power plants, your legal rights could be at stake."  This headline does not enable potential claimants to realize that the notice affects them and that they may have been exposed to asbestos-containing products.

56.     For the Publication Notice to be effective, it must use a headline that immediately gets the attention of the claimant and state that claimants need to act to keep their chance to get money in the future.  The body of the Publication Notice must also clearly state in plain language the fact that an individual may have been primarily or secondarily exposed to asbestos in connection with the ownership, construction, maintenance, or operation of the Debtors' facilities; educate the claimant by providing an overview of asbestos-related diseases; identify who has the right to file a claim; explain the benefits of filing a claim even if a person does not yet have any asbestos-related injury or disease; and detail the repercussions for not filing a claim before the Bar Date.

57.     Attached as Exhibit 4 is a recommended alternative Publication Notice for the national magazines.  We recommend that a list of local power plants as well as other facilities the Debtors or their predecessors used be added to each of the local newspaper notices.  The actual name of each location (such as power plants) should be included as well as the location (city) of the facility (include all facilities in the locations that are covered by that newspaper).

58.     The first two sentences of the Publication Notice will lose most people who do not understand bankruptcy cases, "Energy Future Holdings Corp. and certain subsidiaries (the "Debtors" or "EFH") have filed for protection under Chapter 11

of the U.S. Bankruptcy Code.  EFH has filed a plan to restructure their debts and pay allowed claims."  This paragraph needs to avoid legal jargon such as "Chapter 11" and "Bankruptcy Code," and simply tell claimants what this is about and where to find a full list of facilities.

59.    The Long Form Notice is not written in plain language and will be misunderstood by most claimants.  Plain language, particularly in legal notice documents is necessary because unlike lawyers and judges, only 32% of U.S. adults have graduated from a four-year college and 12% have a graduate degree.[18]  Fifteen percent of U.S. adults have less than a 12th grade education.[19]  Furthermore, the average U.S. adult reads at an eighth grade reading level.[20]  With respect to the Long Form Notice:

> i.    From a communications perspective, in my opinion, the language used to inform Asbestos Claimants about the bar date falls short of providing information they need to properly make an informed decision to preserve their rights.  The notice does not follow accepted standards for effectively written communication.

> ii.    The Long Form Notice does not explain concepts that are foreign to the average person.  The Debtors use complicated, legal words and phrases that laypersons are not likely to understand, instead of clear, simple terms and references.  Numerous terms will hold little meaning for the layperson, such as, "Bankruptcy Code", "prepetition", "creditors", "indemnify", "compensatory",

---

[18]    U.S. Census Bureau, *Educational Attainment*, *available at* http://www.census.gov/hhes/socdemo/education/data/cps/2014/tables.html (last visited June 22, 2015).

[19]    *Id.*

[20]    *See* William H. DuBay, *The Principles of Readability 1* (Aug. 25, 2004), *available at* http://www.impact-information.com/impactinfo/readability02.pdf (last visited June 22, 2015).

"punitive", "exemplary", "disputed," "contingent," "unliquidated," "estopped", "enjoined", etc.

iii.    The Long Form Notice fails readability tests.  KM measured the readability of this notice using the Flesch-Kincaid and Gunning Fog readability tests.[21]  The measure of readability used here indicates the number of years of education that a person needs to be able to understand the text easily on the first reading (a score of 12 means the text would be understood by a high school graduate, a score greater than 12 means the text can be understood by someone with a college education).  In general, these tests penalize for polysyllabic words and long, complex sentences.  The table below reveals that the Notice will be understood by a small minority of claimants who have spent some time furthering their education or have hired an attorney:

| Document | Test | Score | Grade Level |
|---|---|---|---|
| Long Form Notice | Flesch-Kincaid | 14.30 | Junior in College |
| | Gunning Fog | 16.02 | 4-Year College Graduate |

Readability tests provide only one assessment of how easy or hard it will be for claimants to read the Notice.  Our ability to understand information goes far beyond syllables and words.

---

[21]    The Writer, *How Readable is Your Writing*, *available at* http://www.thewriter.com/what-we-think/readability-checker/ (last visited June 27, 2015).  The "most widely used readability" scale is the Flesch-Kincaid Grade Level Readability Test while the Gunning Fog Index provides a "reliable alternative" scale.  The formula for calculating Flesch-Kincaid analyzes the average sentence length and the average number of syllables per word.  The Fog Index, measures readability by manipulating two factors: the average sentence length and the percentage of hard words.

60.    The Long Form Notice is not designed to be easy to read.  That notice has 503 words in all capital letters.  Some writers may mistakenly believe this is a good way to highlight important information.  However, people recognize words based on their shape, not the actual letters in the words.[22] All caps are hard to read, causing the reader to struggle and stop reading.

61.    KM recommends that the Long Form Notice be broken down into frequently asked questions.  The Long Form Notice should be simplified and re-designed to encourage readership and understanding, in a well-organized and reader-friendly format.  Attached as Exhibit 5 is the "Overview of the Disclosure Statement and the Plan of Reorganization" in the form of an FAQ that is being used in the *Garlock* bankruptcy cases.

62.    The Cover Letters should be tailored for each group and should be personalized (highlighting the facility or power plant where the person, if known, worked).  One version should be mailed to known claimants and their attorneys and another version for current and former workers who have not yet filed a claim and likely do not know they were exposed to asbestos.  The Cover Letter for Unmanifested Claimants should be simple and straightforward.  It should ask them to share the notice with any family members while explaining the importance and benefits of filing a claim.  Attached as Exhibit 6 is a draft of a recommended alternative Cover Letter for Unmanifested Claimants.

63.    The Debtors' banner ads are wall-to-wall words and are unlikely to be noticed in a cluttered online media environment.  Banner ads need to be creative and

---

[22]    Kevin Larson, *The Science of Word Recognition: or how I Learned to Stop Worrying and Love the Bauma*, MICROSOFT CORP. (July 2004), *available at* http://www.microsoft.com/typography/ctfonts/wordrecognition.aspx.

more engaging to capture attention. For example, the recent *Garlock* cases included banner ads that were designed to complement the television ad and used meaningful images. We recommend that the Debtors' Banner ads be redesigned to ensure they are noticed by potential claimants. Attached as <u>Exhibit 7</u> is a storyboard of the banner ad used in the Garlock cases.

64. The envelope in which the notice documents are sent should be revised to use meaningful call-to-action language that is likely to get a potential claimant's attention ("Important Legal Notice About Asbestos Exposure"). Attached as <u>Exhibit 8</u> is a recommended alternative envelope for the Court's consideration.

***The Proof of Claim Form***

65. The Debtors' Proof of Claim form will be confusing for unrepresented claimants. The Proof of Claim form asks for information that will confuse an unrepresented Asbestos Claimant, such as: (a) amount of claim, (b) basis for claim, and (c) whether the claim is secured or an administrative expense. KM suggests a separate Proof of Claim Form for Asbestos Claimants be developed that only requires answers to plain language questions in order to preserve rights, including (i) the name of the power plant where they (or a family member) worked, and (ii) the basis for their belief of asbestos exposure, except, as indicated above, that an individual who worked at one of the power plants identified by Debtors should be considered as necessarily having a reasonable basis for believing he or she has been exposed to asbestos. Attached as <u>Exhibit 9</u> is a recommended alternative Proof of Claim form for the Court's consideration.

**COST**

66.     KM estimates that the net media cost of the Debtors' Notice Plan, if revised to include the recommendations set forth herein, to be approximately $3.5 to $4.5 million.[23]  The Debtors' Plan was estimated to cost approximately $2.1 million.[24]

**CONCLUSION**

67.     For the foregoing reasons, it is my professional opinion that the proposed Notice Procedures are inadequate, and the recommendations set forth herein be incorporated in the Debtors' Notice Plan and Notice Procedures.

68.     I am authorized to submit this Declaration on behalf of KM, and if called upon to testify, I would testify competently to the facts set forth herein.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated:  June 29, 2015

*Katherine Kinsella*

_____
Katherine Kinsella
Founder, Kinsella Media, LLC

---

[23]    Television advertising rates change based on the quarter in which the spots will be airing.  Third quarter rates are much cheaper than fourth quarter rates.

[24]    Azari Declaration at ¶ 23.

# EXHIBIT 1



# Katherine M. Kinsella

**FOUNDER AND FORMER PRESIDENT**

A nationally recognized specialist in notification programs in mass tort, consumer, and product liability class actions and bankruptcies, Kinsella has developed and directed some of the largest and most complex national notification programs in the country. The scope of the firm's work includes notification programs in antitrust, bankruptcy, consumer fraud, mass tort and product liability litigation.  Specific cases have involved, among others, asbestos, breast implants, home siding and roofing products, infant formula, pharmaceuticals, polybutylene plumbing, tobacco and Holocaust claims.  The firm has developed or consulted on over 800 notification programs, placing over $350 million in media notice.  Selected cases include:

## ANTITRUST

*Big Valley Milling, Inc. v. Archer Daniels Midland Co.,* No. 65-C2-96-000215 (Minn. Dist. Ct. Renville County) (lysine).

*Carlson v. Abbott Laboratories*, No. 94-CV-002608 (Wis. Cir. Ct. Milwaukee County) (infant formula).

*Comes v. Microsoft Corp.,* No. CL8231 (Iowa Dist. Ct. Polk County) (software).

*Connecticut v. Mylan Laboratories, Inc.,* No. 99-276, MDL No. 1290 (D.D.C.)  (pharmaceutical).

*Conroy v. 3M Corp.,* No. C-00-2810 CW (N.D. Cal.) (invisible tape).

*Copper Antitrust Litig.,* MDL 1303 (W.D. Wis.) (physical copper).

*Cox v. Microsoft Corp.,* No. 105193/00 (N.Y. Sup. Ct. N.Y. County) (software).

*D.C. 37 Health  & Security Plan v. Medi-Span*, No. 07-cv-10988 (D. Mass.); *New England Carpenters Health Benefits Fund v. First DataBank, Inc.,* No. 1:05-CV-11148 (D. Mass.) (pharmaceutical).

*Ferrell v. Wyeth-Ayerst Laboratories, Ltd.,* No. C-1-01-447 (S.D. Ohio).

*Giral v. Hoffman-LaRoche Ltd.*, C.A. No. 98 CA 7467 (W. Va. Cir. Ct., Kanawha County) (vitamins).

*In re Buspirone Antitrust Litig.,*  MDL No. 1413 (S.D.N.Y.) (pharmaceutical).

*In re Cardizem Antitrust Litig.,* 200 F.R.D. 326 (E.D. Mich.) (pharmaceutical).

*In re Compact Disc Minimum Price Antitrust Litig.,* MDL No. 1361 (D. Me.) (compact discs).

*In re Ins. Brokerage Antitrust Litig.*, MDL No. 1663 Civil No. 04-5184 (D.N.J.) (insurance).

*In re Int'l Air Transportation Surcharge Antitrust Litig.,* No. M 06-1793, MDL No. 1793 (N.D. Cal.) (airline fuel surcharges).

*In re Monosodium Glutamate Antitrust Litig.,* D-0202-CV-0200306168, D-202-CV-200306168 (N.M. Dist. Ct., Bernalillo County) (MSG).

*In re Motorsports Merch. Antitrust Litig.,* No. 1:97-CV-2314-TWT (N.D. Ga.) (merchandise).

*In re Nasdaq Market-Makers Antitrust Litig.,* MDL No. 1023 (S.D.N.Y.) (securities).

*In re Pharm. Industry Average Wholesale Price Litig.,* No. CA:01-CV-12257, MDL No. 1456 (D. Mass.) (pharmaceutical).

*In re Toys "R" Us Antitrust Litig.,* No. CV-97-5750, MDL No. 1211, (E.D.N.Y.)  (toys and other products).

*In re Western States Wholesale Natural Gas Antitrust Litig.,* No. CV-03-1431, MDL No. 1566, (D. Nev) (natural gas).

*Kelley Supply, Inc. v. Eastman Chem. Co*., No. 99CV001528 (Wis. Cir. Ct., Dane County) (Sorbates).

*Ohio v. Bristol-Myers Squibb, Co*., No. 1:

02-cv-01080 (D.D.C.) (pharmaceutical).

*Raz v. Archer Daniels Midland Co., Inc*., No. 96-CV-009729 (Wis. Cir. Ct. Milwaukee County) (citric acid).

### CONSUMER AND PRODUCT LIABILITY

*Azizian v. Federated Department Stores, Inc.,* No. 4:03 CV-03359 (N.D. Cal.)  (cosmetics).

*Baird v. Thomson Consumer Elecs.,* No. 00-L-000761 (Ill. Cir. Ct., Madison County) (television).

*Bonilla v. Trebol Motors Corp.,* No. 92-1795 (D.P.R.) (automobiles).

*Burch v. Am. Home Prods. Corp.,* No. 97-C-204 (1-11) (W. Va. Cir. Ct., Brooke County) (Fen Phen).

*Cosby v. Masonite Corp., No.* CV-97-3408 (Ala. Cir. Ct. Mobile County) (siding product); *Quin v. Masonite Corp.,* No. CV-97-3313 (Ala. Cir. Ct. Mobile County) (roofing product).

*Cox v. Shell Oil Co.,* No. 18,844 (Tenn. Ch. Ct. Obion County) (polybutylene pipe).

*Daniel v. AON Corp.,* No. 99 CH 11893 (Ill. Cir. Ct. Cook County) (insurance).

*Fettke v. McDonald's Corp.,* No. 044109 (Cal. Super Ct. Marin County) (trans fatty acids).

*Florida v. Nine West Grp., Inc.,* No. 00 CIV 1707 (S.D.N.Y.) (shoes).

*Foothill/De Anza Cmty. College Dist. v. Northwest Pipe Co.,* No. 00-20749-JF (N.D. Cal.) (fire sprinklers).

*Galanti v. The Goodyear Tire & Rubber Co.,* No. 03-209 (D.N.J.) (radiant heating).



*Garza v. Sporting Goods Props., Inc.,* No. SA 93-CA-1082 (W.D. Tex.) (gun ammunition).

*Gov't Employees Hosp. Ass'n v. Serono Int'l,* No. 5-11935 (D. Mass.), and *Francis v. Serono Laboratories, Inc.,* No. 6-10613 (D. Mass.).

*Hoorman v. GlaxoSmithKline,* No. 04-L-715 (Ill. Cir. Ct., Madison Cty.) (Paxil pharmaceutical*).*

*In re Louisiana Pacific Corp. Inner Seal OSB Trade Practices Litig.,* MDL No. 1114 (N.D. Cal.) (oriented strand board).

*In re Tri-State Crematory Litig,* MDL 1467 (N.D. Ga.) (improper burial).

*Lebrilla v. Farmers Grp. Inc.,* No. 00-CC-07185 (Cal. Super. Ct., Orange County) (auto insurance).

*Lovelis v. Titflex,* No. 04-211 (Ark. Cir. Ct., Clark County) (gas transmission pipe).

*Naef v. Masonite Corp.,* No. CV-94-4033 (Ala. Cir. Ct. Mobile County) (hardboard siding product).

*Peterson v. BASF Corp.,* No. C2-97-295 (D. Minn.) (herbicide).

*Posey v. Dryvit Sys., Inc.* No. 17,715-IV (Tenn. Cir. Ct., Jefferson County) (EIFS stucco).

*Reiff v. Epson Am., Inc. and Latham v. Epson Am., Inc.,* J.C.C.P. No. 4347 (Cal. Super. Ct., L.A. County) (ink jet printers).

*Richison v. Weyerhaeuser Co. Ltd.,* No. 05532 (Cal. Super. Ct. San Joaquin County) (roofing product).

*Ruff v. Parex, Inc.,* No. 96-CvS 0059 (N.C. Super. Ct. Hanover County) (synthetic stucco product).

*Shah v. Re-Con Building Prods., Inc.,* No. C99-02919 (Cal. Super. Ct. Contra Costa County) (roofing product).

*Shields v. Bridgestone/Firestone, Inc., Bridgestone Corp.,* No. E-167.637 (D. Tex.) (tires).

*Smith v. Behr Process Corp.,* No. 98-2-00635 (Wash. Super. Ct., Gray Harbor County) (stain product).

*Weiner v. Cal-Shake, Inc.,* J.C.C.P. No. 4208 (Cal. Super. Ct., Contra Costa County) (roofing product).

*Wholesale Elec. Antitrust Cases I & II,* J.C.C.P. Nos. 4204 & 4205 (Cal. Super. Ct., San Diego County) (energy).

*Woosley v. California,* No. CA 000499 (Cal. Super. Ct., Los Angeles County) (automobiles).

### MASS TORT

*Ahearn v. Fibreboard Corp.,* No. 6:93cv526 (E.D. Tex); *Continental Casualty Co. v. Rudd*, No. 6:94cv458 (E.D. Tex) (asbestos injury).

*Backstrom v. The Methodist Hosp.,* No. H.-94-1877 (S.D. Tex.) (TMJ injury).



*Engle v. RJ Reynolds Tobacco Co.,* No. 94-08273 (Fla. Cir. Ct. Dade County) (tobacco injury).

*Georgine v. Amchem, Inc.,* No. 93-CV-0215 (E.D. Pa.) (asbestos).

### BANKRUPTCIES

*In re Armstrong World Indus., Inc.,* No. 00-4471 (Bankr. D. Del.) (asbestos).

*In re Dow Corning,* No. 95-20512 (Bankr. E.D. Mich.) (breast implants).

*In re Johns-Manville Corp.,* 68 B.R. 618, 626 (Bankr. S.D.N.Y.) (asbestos).

*In re Kaiser Aluminum Corp.,* No. 02-10429 (JFK) (Bankr. D. Del) (asbestos).

*In re Owens Corning,* No. 00-03837 (Bankr. D. Del.) (asbestos).

*In re Raytech Corp.,* No. 5-89-00293 (Bankr. D. Conn.) (asbestos).

*In re The Celotex Corp.,* Nos. 90-10016-8B1 and 90-10017-8B1 (Bankr. M.D. Fla.) (asbestos).

*In re U.S. Brass Corp.,* No.94-40823S (Bankr. E.D. Tex.) (polybutylene).

*In re USG Corp.,* Nos. 01-2094 - 01-2104 (Bankr. D. Del.) (asbestos).

*In re W.R. Grace & Co.,* No. 01-01139 (Bankr. D. Del.) (asbestos).

### INSURANCE

*McNeil v. American General Life and Accident Ins. Co.,* No. 8-99-1157 (M.D. Tenn.) (insurance).

*Nealy v. Woodmen of the World Life Ins. Co.,* No. 3:93 CV-536 (S.D. Miss.) (insurance).

### HOLOCAUST VICTIMS REPARATIONS

*In re Holocaust Victim Assets Litig.,* Nos. CV 96-4849, CV-5161 and CV 97-461 (E.D.N.Y.) (Holocaust).

The International Commission on Holocaust Era Insurance Claims Outreach.

### PENSION BENEFITS

*Collins v. Pension Benefit Guarantee Corp.,* No. 88-3406 (D.D.C.); Page v. Pension Benefit Guarantee Corp., No. 89-2997 (D.D.C.).

*Forbush v. J.C. Penney Co., Inc.,* Nos. 3:90-2719 and 3:92-0109 (N.D. Tex.).



## INTERNATIONAL

*Ahearn v. Fiberboard Corp.,* No. 6:93cv526 (E.D. Tex) and *Continental Casualty Co. v. Rudd,* No. 6:94cv458 (E.D. Tex.) (asbestos) (1993).

*Galanti v. The Goodyear Tire & Rubber Co.,* No. 03-209 (D.N.J.) (radiant heating) (2002).

*In re Holocaust Victims Assets Litig.,* No. CV 96-4849 (Consolidated with CV-5161 and CV 97461) (E.D.N.Y.) (2003).

*In re Owens Corning, Chapter 11,* No. 00-03837 (Bankr. D. Del.) (asbestos) (2006).

*In re The Celotex Corp., Chapter 11,* Nos. 90-10016-8B1 and 90-10017-8B1(Bankr. M.D. Fla.) (asbestos) (1996).

*In re USG Corp., Chapter 11,* Nos. 01-2094 through 01-2104 (Bankr. D. Del.) (asbestos) (2006).

*In re W.R. Grace & Co., Chapter 11,* No. 01-01139 (Bankr. D. Del.) (asbestos) (2001).

*In re Western Union Money Transfer Litig.,* No. 01 0335 (E.D.N.Y.) (wire transactions) (2004).

International Committee on Holocaust Era Insurance Claims (Holocaust) (1999).

## PRODUCT RECALL

Central Sprinkler Voluntary Omega Sprinkler Replacement Program (sprinkler heads).

*Hart v. Central Sprinkler Corp.,* No. BC17627 (Cal. Super. Ct. Los Angeles County) & *County of Santa Clara v. Central Sprinkler Corp.,* No. CV 17710119 (Cal. Super. Ct. Santa Clara County) (sprinkler heads).

## TELECOM

*Bidner, et al. v. LCI Int'l Telecom Corp d/b/a Qwest Communications.* No CO-00-242 (Minn. Dist. Ct., Sibley County).

*Cmty. Health Ass'n v. Lucent Technologies Inc.,* No. 99-C-237, (W.Va. Cir. Ct., Kanawha County) (product compliance).

*Cundiff v. Verizon California, Inc.,* No. 237806 (Cal. Super Ct., Los Angeles County) (rotary dial service).

*Kushner v. AT&T Corp.,* No. GIC 795315 (Cal. Super. Ct., San Diego County) (fees).

*Risha Enterprise v. Verizon New Jersey,* No. MID-L-8946-02 (N.J. Super. Ct.) (tariff rate).

*Sonnier v. Radiofone, Inc.,* No. 44-844, (L.A. Jud. Dist. Ct., Plaqueimes Parish County) (long distance promotion).



*State of Louisiana v. Sprint Communications Co., L.P.,* No. 26,334 (Jud. Dis. Ct., Parish of West Baton Rouge) and *Louisiana v. WilTel, Inc.,* No. 26,304 (Jud. Dis. Ct., Parish of West Baton Rouge) (fiber optics right of way).

Fiber-Optic Cable Rights of Way Settlements (Five statewide Notice Programs; Two national Notice Programs covering 36 states; see www.FiberOpticSettlements.com.) (fiber-optic cable/rights of way).

## OTHER

*Cobell v. Salazar,* No. 96-01285 (D.D.C.) (Individual Indian Money accounts).

*Dryer v. National Football League,* No. 9-02182 (D. Minn.) (publicity rights).

*In re Black Farmers Discrimination Litig.,* No. 08-511 (D.D.C.) (African American farm loans).

*In re National Football League Players' Concussion Injury Litig.,* No. 2:12-md-02323 (E.D. Pa.) (concussion injuries).

*Keepseagle v. Vilsack*, No. 99-03119 (D.D.C.) (Native American farm loans).

## ARTICLES

Katherine Kinsella, *Ten Commandments of Class Action Notice*, <u>Toxics Law Reporter</u>, Sept. 24, 1997.

Katherine Kinsella, *Quantifying Notice Results in Class Actions – The Daubert/Kumho Mandate,* <u>Class Action Litigation Report</u>, July 27, 2001; Katherine Kinsella, *Quantifying Notice Results in Class Actions – The Daubert/Kumho Mandate*, <u>United States Law Week</u>, Aug. 7, 2001.

Katherine Kinsella, *The Plain Language Tool Kit for Class Action Notice*, <u>Class Action Litigation Report</u>, Oct. 25, 2002.

Katherine Kinsella, Maureen Gorman and Andrew Novak, *How Viable Is the Internet for Class Action Notice?,* <u>Class Action Litigation Report</u>, Mar. 25, 2005.

*Class Notice and Claims Administration*, Katherine Kinsella and Shannon Wheatman, <u>The International Handbook on Private Enforcement of Competition Law</u>, 2010.

*REALITY CHECK: The State of New Media Options for Class Action Notice*, Katherine Kinsella and Maureen Gorman, <u>A Practitioner's Guide to Class Actions</u>, 2010 and <u>Class Action Litigation Report,</u> February 26, 2010.

*International Class Action Notices*, Chapter 13, Katherine Kinsella and Shannon Wheatman, <u>World Class Action: A Guide to Group and Representative Actions Around the Globe,</u>  August, 2012.

*Class Notice And Claims Administration*, Katherine Kinsella and Shannon Wheatman, <u>Private</u>



<u>Enforcement of Antitrust Law in the United States:  A Handbook</u>, 2012.

*Buyer Beware: Eight Pitfalls That Can Jeopardize Your Class Action Notice Program*, <u>Class Action Litigation Report</u>, July 12, 2013.

<span style="color:red">SPEAKING</span>

*Doing Business in the United States:  What You Need to Know About Investing, Product Liability and Dispute Resolution*, ABA, Beijing, China (April 19, 2012), "Litigation in the United States:  Class Actions & MDLs."

*The 13th Annual National Institute on Class Actions* (2009), "A Survival Guide for Today's Class Action Settlements."

*Women Antitrust Plaintiffs' Attorneys Networking Event* (August 28, 2009), "Class Action Notice and Claims Administration: Trends and Innovation."

*ABA National Class Actions Institute* (November 7, 2008), "'I Court Have Sworn It was CAFA, Not *Kafka!'* The Metamorphosis of Ethically Prosecuting, Defending, and Settling Multi-State, Class-Action Cases."

*The Future of Class Action Litigation in America* (October 25-26, 2007), "Solving Problems with Notice, Opt-Outs and Claims Procedures."

*Innovative Strategies for Defense of Class Action Suits* (February 9, 2006, "The Art of Drafting Class Action Notices Under the New Federal Plain English Rules."

*The Class Action Litigation Summit* (June 24-25 2004), "Effective Communication with Class Members and Notification Issues."

*The Future of Class Action Litigation in America* (October 2-3, 2003), "Communicating with Putative or Actual Class Members:  Rule 23(D) Orders and Ethical Issues, and Rule 23(B)(3) Notice Communications."

*The Class Action Litigation Summit* (June 26-27, 2003), "Communication with Class Members and Notification Issues."

*National Consumer Law Center Consumer Class Action Symposium* (2002), "Class Notices and Settlement Administration in the 21st Century."

*The 6th Annual National Institute on Class Actions* (2002), "Developments in the Settlement of Class Litigation."



*3rd Annual Class Action/Mass Tort Symposium* (October 25, 2002), "The 'Notice' Issue; How, Why, When and Quantifying Notice Results."

*The 5th Annual National Institute on Class Actions* (2001), "Developments in Class Action Settlements."

*The Fourth Annual National Institute on Class Actions* (2000), "Settlement of Class Actions:  The Law, Mechanics and Ethics."

*ABA National Institute on Class Actions* (1999), "Settlement Techniques."

**COURT TESTIMONY & DEPOSITIONS**
*Testimony*

*Ahearn v. Fibreboard Corp.,* No. 6:93 cv526 (E.D. Tex.); *Continental Casualty Co. v. Rudd*, No. 6:94-cv-458 (E.D. Tex.) (asbestos).

*Colgan v. Leatherman Tool Grp., Inc.,* No. BC247889; *Wilson v. Leatherman Tool Grp., Inc.,* No. BC278713 (Cal. Super. Ct. Los Angeles County) (product representation).

*Cox v. Shell Oil Co.,* No. 95-CV-2 (Tenn. Ch. Ct. Obion County) (polybutylene plumbing).

*In re Swan Transportation Co.,* No. 01-11690 (Bankr. D. Del.) (asbestos).

*In re USG Corp.,* Nos. 01-2094 - 01-2104 (Bankr. D. Del.) (asbestos).

*In re Specialty Prods. Holding Corp.,* No. 10-11780 (Bankr. D. Del.) (asbestos).

*In re Garlock Sealing Technologies LLC,* No. 10-31607 (Bankr. W.D.N.C.) (asbestos).

*Depositions*

*Ardoin v. Stine Lumber Co*., No. 2001-004808, (La. 14th Jud. Dist. Ct. Calcasieu Parish) (pressure-treated wood).

*Donovan v. Philip Morris USA, Inc.,* No. 06-CA-12234 (D. Mass.) (tobacco).

*Engle v. RJ Reynolds Tobacco Co.,* No. 94-08273 (Fla. Cir. Ct. Dade County) (tobacco).

*Georgine v. Amchem,* 158 F.R.D. 314, 326 (E.D. Pa.) (asbestos).

*Gross v. Chrysler Corp.,* No. 061170 (Md. Cir. Ct. Montgomery County) (ad positioning).

*Harris v. Experian Info. Solutions, Inc.,* No. 6:06-CV-01808 (D.S.C.); *Harris v. Equifax Info. Servs. LLC,* No. 6:06-CV-01810 (D.S.C.) (Fair Credit Reporting Act).

*In re Bluetooth Headset Prods. Liab. Litig.*, No. 2:07-1822 (C.D. Cal.) (Bluetooth headset).



*In re Conagra Peanut Butter Prods. Liab. Litig.,* No. 1:07 -1845 (N.D. Ga.) (food contamination).

*In re Dow Corning,* No. 95-20512 (Bankr. E.D. Mich.).

*In re Nasdaq Market-Makers Antitrust Litig.*, MDL No. 1023 (S.D.N.Y.) (securities).

*In re Pharm. Industry Average Wholesale Price Litig.*, No. 01-CV-12257, MDL No. 1456 (D. Mass.) (GlaxoSmithKline Settlement).

*In re W.R. Grace & Co.,* No. 01-01139 (Bankr. D. Del.) (asbestos).

*In re USG Corp.*, Nos. 01-2094 - 01-2104 (Bankr. D. Del.) (asbestos).

*In re Vioxx Litig.*, No. 619 (N.J. Super. Ct. Law Div.) (pharmaceutical).

*Schwab v. Philip Morris USA Inc*., No. 04-CV-1945 (E.D.N.Y) (RICO tobacco).

*Solo v. Bausch & Lomb, Inc*., MDL 1785 (D.S.C.) (product messaging).

*Vassilatos v. Del Monte Fresh Produce Co.,* No. 50 2004CA 004066 (Fla. Cir. Ct. Palm Beach County);

*Conroy v. Fresh Del Monte Produce, Inc.,* No. JCCP 4446 (Cal. Super. Ct. Alameda County) (pineapples).

<span style="color:maroon">JUDICIAL COMMENTS</span>

*Ahearn v. Fibreboard Corp*., No. 6:93 cv526 (E.D. Tex.); *Continental Casualty Co. v. Rudd*, No. 6:94cv458 (E.D. Tex.).
In approving the notice plan for implementation in the Ahearn and Rudd class actions in 1994, Judge Parker stated, "I have reviewed the plan of dissemination, and I have compared them to my knowledge at least of similar cases, the notices that Judge Weinstein has worked with [Agent Orange] and Judge Pointer [Silicon Gel Breast Implants], and it appears to be clearly superior." - Chief Judge Robert M. Parker (1994)

*Azizian v. Federated Department Stores, Inc.,* No. 3:03 CV-03359 (N.D. Cal.).
"The notice was reasonable and the best notice practicable under the circumstances; was due, adequate and sufficient notice to all class members; and complied fully with the laws of the United States and of the Federal Rules for Civil Procedure, due process and any other applicable rules of court." - Hon. Sandra Brown Armstrong (2004)

*Cobell v. Salazar,* No. 1:96CV01285 (D.D.C.)
"I have never seen, and I handled the largest price-fixing case in the history of the United States, the In re: Vitamins case, notice to the extent sent out in this case, . . . . I allowed them to provide notice in every possible way, including personally going out and visiting all of the affected tribal areas. It is just not a letter from Washington. It is a tremendous effort that was undergone, both by the plaintiffs principally and some by the government, to not only give notice but to explain what happened . . . .



There is just no question that this was covered in all of the local papers constantly. It was covered in all of the local advertising outlets. It was hard to miss.  As a side note, I go to Montana two or three times a year, and you could not miss....  I have already found that there is extensive and extraordinary notice here. We even had a notice expert retained in how to do it properly." - Hon. Thomas F. Hogan (June 2011)

"Notice met and in many cases exceeded the requirements of F.R.C.P. 23(c)(2) for classes certified under F.R.C.P. 23(b)(1), (b)(2) and (b)(3). The best notice practicable has been provided class members, including individual notice where members could be identified through reasonable effort.  The contents of that notice are stated in plain, easily understood language and satisfy all requirements of F.R.C.P. 23(c)(2)(B)." - Hon. Thomas F. Hogan (July 2011)

*Collins v. Pension Benefit Guarantee Corp., No. 88-3406 (D.D.C.).*
"The notice provided was the best notice practicable under the circumstances.  Indeed, the record shows that the notice given was consistent with the highest standards of compliance with Rule 23(e)." – Hon. Richard Roberts (1996)

*Cox v. Microsoft Corp.*, No. 105193/00 (N.Y. Sup. Ct. N.Y. County).
"The court finds that the combination of individual mailing, e-mail, website and publication notice in this action is the most effective and best notice practicable under all the circumstances, constitutes due, adequate and reasonable notice to all Class members and otherwise satisfies the requirements of CPLR 904, 908 and other applicable rules. The Settlement meets the due process requirement for class actions by providing Class members an opportunity either to be heard and participate in the litigation or to remove themselves from the Class." - Hon. Karla Moskowitz  (2006)

*Cox v. Shell Oil Co.,* No. 95-CV-2 (Tenn. Ch. Ct. Obion County)
In the order approving the settlement of the polybutylene pipe class action, Chancellor Maloan stated, "The Court finds the notice program is excellent.  As specified in the findings below, the evidence supports the conclusion that the notice program is one of the most comprehensive class notice campaigns ever undertaken." – Hon. W. Michael Maloan (1995)

*Dick v. Sprint*, No. 12-cv-00443 (W.D. Ky.)
"In sum, the notice in the case at bar is adequate under Fed. R. Civ. P. 23 and the standards of due process.  It was directed in reasonable manner to all prospective class members who would be bound by the Settlement Agreement.  Moreover, it fairly apprised the prospective class members of the terms of the proposed Settlement Agreement and their options with respect to their decision whether to join the class." - Hon. Thomas B. Russell  (2014)

*Foothill/De Anza Cmty. College District v. Northwest Pipe Co.*, No. CV-00-20749 (N.D. Cal.)
"The Court finds that the settling parties undertook a thorough and extensive notice campaign designed by Kinsella/Novak Communications, Ltd., a nationally-recognized expert in this specialized field.  The Court finds and concludes that the Notice Program as designed and implemented provides



the best practicable notice to the Class, and satisfied requirements of due process." - Hon. Jeremy Fogel (2004)

*Galanti v. The Goodyear Tire & Rubber Co.*, No. 03-209 (D.N.J.)
"The published notice, direct notice and Internet posting constituted the best practicable notice of the Fairness Hearing, the proposed Amended Agreement, Class Counsels' application for fees, expenses and costs, and other matters set forth in the Class Notice and the Summary Notice.  The notice constituted valid, due and sufficient notice to all members of the Settlement Classes, and complied fully with the requirements of Rule 23 of the Federal Rules of Civil Procedure, the Constitution of the United States, the laws of New Jersey and any other applicable law."- Hon. Stanley R. Chesler   (2004)

*Georgine v. Amchem,* 158 F.R.D. 314, 326 (E.D. Pa.).
Judge Reed explained that the notice program developed by Kinsella "goes beyond that provided in [previous cases]" and "the efforts here are more than adequate to meet the requirements of Rule 23(c)(2)." – Hon. Lowell A. Reed, Jr. (1993)

*Higgins v. Archer-Daniels Midland Co.,* Second Judicial District Court, County of Bernalillo C-202-CV-200306168 (N.M. 2d Jud. Dist. Bernalillo County)
"The Court finds that the form and method of notice given to the Settlement Class, including both mailed notice to persons and firms for whom such notice was practical and extensive notice by publication through multiple national and specialized publications, complied with the requirements of Rule 1-023 NMRA 2006, satisfied the requirements of due process, was the best notice practicable under the circumstances, and constituted due and sufficient notice of the Settlement Agreements and their Final Approval Hearing, and other matters referred to in the Notice.  The notice given to the Settlement Class was reasonably calculated under the circumstances to inform them of the pendency of the actions involved in this case, of all material elements of the proposed Settlements, and of their opportunity to exclude themselves from, object to, or comment on the Settlements and to appear at the Final Approval Hearing." - Hon. William F. Lang  (2006)

*In re Comcast Corp. Peer-to-Peer (P2P) Transmission Contract Litig.*, MDL 1992, No. 2:08-MD-1992 (E.D. Pa.)
"The notice program here was extensive and wide reaching."

"The Court finds that the form, substance, manner and timing of the notice to the Settlement Class of the pendency of the action as a class action and of the terms and conditions of the proposed Settlement constituted the best notice practicable under the circumstances and satisfied the requirements of due process, Federal Rules of Civil Procedure, and any other applicable law or requirement." - Hon. Legrome D. Davis  (2010)

*In re Compact Disc Minimum Advertised Price Antitrust Litig.*, MDL No. 1361 (D. Me.).
In approving the notice plan for implementation in the Compact Disc Minimum Advertised Price Antitrust Litigation, Judge D. Brock Hornby stated, "(the plan) provided the best practicable notice



under the circumstances and complied with the requirements of both 15 U.S.C. 15c(b) (1) . . . the notice distribution was excellently designed, reasonably calculated to reach potential class members, and ultimately highly successful in doing so." - Hon. D. Brock Hornby  (2002/2003)

*In re Flonase Antitrust Litig.,* No. 08-3301 (E.D. Pa.)
"The notice provided was the best notice practicable under the circumstances and included individual notice to those members of the Settlement Class whom the parties were able to identify through reasonable efforts. The Court finds that Notice was also given by publication in multiple publications as set forth in the Declarations of Daniel Coggeshall and Katherine Kinsella dated May 1, 2013. Such notice fully complied in all respects with the requirements of Rule 23 of the Federal Rules of Civil Procedure and due process of law."- Hon. Anita B. Brody (2013)

*In re Int'l Air Transportation Surcharge Antitrust Litig.,* No. M 06-1793, MDL No. 1793 (N.D. Cal.).
In approving the notice plan in this litigation that involved a proposed settlement of more than $200 million for U.S. and U.K. class members, U.S. District Judge Charles Breyer repeatedly praised KNC: "I think the notice is remarkable in this case. . . . This is brilliant.  This is the best notice I've seen since I've been on the bench. . . . Turning back to the settlement, again I want to applaud the parties for the notice.  I mean it's amazing.  You know, it really is good.  And I don't know where this person practices, I don't even know that she's a lawyer.  But she really did a good job on this announcement, this notice. So thank you very much. . . . And I once again want to express my sincere appreciation of the notice.  I mean, I was just extraordinarily impressed.  Extraordinarily impressed." - Hon. Charles Breyer  (2008)

*In re Jamster Mktg. Litig.,* MDL 1751, No. 05-cv-0819
"Based on the Motion for Final Approval, the Court finds that the distribution of the Notice and Claim Form were materially implemented to all Class Members in accordance with Federal Rule of Civil Procedure 23(c)(2)(B), with the terms of the Settlement Agreement and the Preliminary Approval Order." - Hon. Jeffrey T. Miller (2010)

*In re Lawn Mower Engine Horsepower Mktg. & Sales Litig.,* No. 2:08-md-01999 (E.D. Wis.)
"The form, content and manner of notice disseminated to the Class was the best notice practicable under the circumstances, included individual notice to all members of the Class identified through reasonable effort, and constituted due and sufficient notice of the proposed settlement, Settlement Hearing, and related matters. The Notice Plan complied with the Order of Preliminary Approval, the requirements of Fed. R. Civ. P. 23(c) and (e), and applicable standards of due process. Appropriate proof of the mailing of the Postcard Notice and the publication of the Summary Notice has been filed with the Court." - Hon. Lynn Aderman (2010)

*In re M3Power Razor System Mktg. & Sales,* No. 05-11177, MDL No. 1704 (D. Mass.)
"The form, content, and method of dissemination of the notice give to the Settlement Class were adequate and reasonable, and constituted the best notice practicable under the circumstances.  The notice given, provided valid, due, and sufficient notice of the proposed settlement, the terms and conditions set forth in the Amended Settlement Agreement, and those proceedings to all Persons



entitled to such notice, and said notice fully satisfied the requirements of Rule 23 of the Federal Rules of Civil Procedure and due process." - Hon. Douglas Woodlock (2011)

*In re Municipal Derivatives Antitrust Litig.,* No. 08 Civ. 2516, MDL No. 1950 (S.D.N.Y.)
"This notice program fully complied with Fed. R. Civ. P. 23 and the requirements of due process.  It provided due and adequate notice to the Class." - Hon. Victor Marrero (2011)

*In re National Football League Players' Concussion Injury Litig.,* No. 2:12-md-02323 (E.D. Pa.)
"The content of the Long-Form Notice and Summary Notice satisfy the requirements of Rule 23 and due process. Each was written in plain and straightforward language....  The purpose of the one-page Summary Notice is...to alert Class Members to the suit and direct them to more detailed information. The Summary Notice does exactly that....  [The Long-Form Notice] repeatedly instructs readers to sources that can answer their questions. Like the Summary Notice, the Long-Form Notice contains a banner at the bottom of each page directing those with "Questions?" to call a toll-free support number or visit the Settlement Website....  The Settlement Class Notice clearly described of the terms of the Settlement and the rights of Class Members to opt out or object. [The] notice program ensured that these materials reached those with an interest in the litigation." – Hon. Anita B. Brody (2015)

*In re Pre-filled Propane Tank Mktg. & Sales Practices Litig.,* MDL No. 2086, No. 09-2086 (W.D. Mo.)
"Counsel verified that the mailing, publication, and affixed notices conformed to the preliminary approval Order. The Court finds that the notice program fully complied with Rule 23 of the Federal Rule of Civil Procedure and the requirements of due process, providing to the Class the best notice practicable under the circumstances." - Hon. Gary A. Fenner (2010)

*In re The Celotex Corp.,* Nos. 90-10016-8B1 and 90-10017-8B1 (Bankr. M.D. Fla.).
"...all counsel should be complimented on the fact that they have gone to every possible conceivable method of giving notice from putting it on TV and advertising it in papers..... the record should also reflect the Court's appreciation to Ms. Kinsella for all the work she's done, not only in pure noticing, but ensuring that what noticing we did was done correctly and professionally." - Hon. Thomas E. Baynes, Jr. (1996)

*In re Western States Wholesale Natural Gas Antitrust Litig.,* No. CV-03-1431, MDL No. 1566, (D. Nev) (natural gas).
"This notice program fully complied with Federal Rule of Civil Procedure 23 and the requirements of due process.  It provided to the MDL Class the best notice practicable under the circumstances."  - Hon. Philip M. Pro (2007*)*

*Johns-Manville Corp.*  68 B.R. 618, 626 (Bankr. S.D.N.Y. 1986), aff'd, 78 B.R. 407 (S.D.N.Y. 1987), aff'd sub nom. *Kane v. Johns-Manville Corp.*  843 F.2d. 636 (2d Cir. 1988).
In approving the notification plan in the Johns-Manville Bankruptcy Reorganization, the court referred to it as "an extensive campaign designed to provide the maximum amount of publicity ... that was reasonable to expect of man and media." - Hon. Burton Lifland  (1996/1998)



*Keepseagle v. Vilsack*, No. 99–3119 (D.D.C.)
"I'm not going to review in detail the exhaustive notice plan created and implemented by Plaintiffs' counsel at this time.  For those interested, I invite you to examine the several motions on the docket relating to notice with affidavits from Kinsella Media, who class counsel have hired as Notice Administrators." - Hon. Emmet G. Sullivan (2011)

"In my view, the notice program was excellent and it persuades the Court that the parties worked extremely hard to notify the entire class about the settlement so that as many class members as possible can obtain monetary and other relief under the settlement." - Hon. Emmet G. Sullivan (2011)

*Lovelis v. Titeflex Corp.,* No. CIV-2004-211 (Ark. 9th Cir. Ct. Clark Co.)
"Accordingly, the Notice as disseminated is finally approved as fair, reasonable, and adequate notice under the circumstances.  The Court finds and concludes that due and adequate notice of the pendency of this Action, the Stipulation, and the Final Settlement Hearing has been provided to members of the Settlement Class, and the Court further finds and concludes that the Notice campaign described in the Preliminary Approval Order and completed by the Parties complied fully with the requirements of Arkansas Rule of Civil Procedure 23 and the requirements of due process under the Arkansas and United States Constitutions.  The Court further finds that the Notice campaign undertaken concisely and clearly states in plain, easily understood language:
(a.)     the nature of the action;
(b.)     the definition of the class certified;
(c.)     the class claims, issues or defenses;
(d.)     that a Class Member may enter an appearance and participate in person or through counsel if the member so desires;
(e.)     that the Court will exclude from the class any member who requests exclusion, stating when and how members may elect to be excluded; and
(f.)     the binding effect of the Final Order and Judgment on Class Members."
Hon. John A. Thomas  (2007)

*Naef v. Masonite Corp*., No. CV-94-4033 (Ala. Cir. Ct. Mobile County)
"In November, 1997, the Court approved a massive Notice Program to apprise class members of the class action Settlement, including the individually mailed, notices, publication notice and notification by way of other avenues nationally and locally.  This Notice Program was designed by recognized experts, approved by the mediator and the Court, and implemented diligently by the parties, at defendants' cost.  It provided the best notice practicable to the Class, comports with due process, and was clearly adequate under Alabama Rule of Civil Procedure 23(e), the United States Constitution, and other applicable law." - Hon. Robert G. Kendall (1997)

*Yarrington v. Solvay Pharm., Inc*., No. 09-CV-2261 (D. Minn.)
"Kinsella Media, LLC designed a comprehensive program for providing notice to the Settlement Class, which was approved by the Court on September 18, 2009. It was fully implemented in accordance with the Court's Order." - Hon. Richard H. Kyle (2010)



## EDUCATION AND EXPERIENCE

*Education*

BA and MA from Simmons College, Boston, MA

*Related Experience*

Senior Vice President, The Kamber Group
Washington, DC
1981 - 1993

Prior to establishing her own business, Kinsella was Senior Vice President and Director of Marketing and Advertising for The Kamber Group -- the largest independently owned communications company in Washington, D.C.  In that capacity, she handled national advertising, direct mail and marketing clients.

During her twelve years at The Kamber Group, she also served as Director of the Public Affairs Division, which included the firm's public relations, marketing, corporate communications and advertising operations.

Advertising and marketing clients included: American Federation of Government Employees, American Satellite Company, American University, Amnesty International, Consumers United Insurance Company, Diabetes Research Institute, Human Rights Campaign Fund, Huntsman Chemical Company, National Association of Homebuilders, National Cooperative Bank, National Education Association, PEPCO, Polystyrene Packaging Council, United Food and Commercial Workers, Union Labor Life Insurance company, US Committee for UNICEF, World Resources Institute.

## SUPPLEMENTARY BACKGROUND

Kinsella is a former board member of Children of the Americas, a former Trustee of the Washington International School and a past president of the board of Co-op America, a progressive non-profit marketing association she helped found.

Ms. Kinsella is also experienced in small book publishing and marketing and was the associate producer of a documentary film that aired internationally.  Earlier in her career, she directed a lecture and performing arts agency in Boston representing such speakers as author Tom Wolfe, Peter Jennings and Dr. Margaret Mead.



# EXHIBIT 2



# Shannon R. Wheatman, Ph.D.

President

Kinsella Media, LLC

2001 Pennsylvania Avenue NW, Suite 300

Washington, DC 20006

2010 – Present

Dr. Wheatman specializes in designing, developing, analyzing, and implementing large-scale legal notification plans. She is a court-recognized expert who provides testimony on the best notice practicable. Dr. Wheatman began her class action career in 2000 at the Federal Judicial Center where she was instrumental in the development of model notices to satisfy the plain language amendment to Rule 23. Her plain language expertise was advanced by her education, including her doctoral dissertation on plain language drafting of class action notice and her master's thesis on comprehension of jury instructions. Dr. Wheatman has been involved in over 350 class actions. Her selected case experience includes:

### Antitrust

*Allen v. Dairy Farmers of America, Inc.*, No. 5:09-CV-00230-CR (D. Vt.).

*Blessing v. Sirius XM Radio, Inc.*, No. 09-CV-10035 HB (S.D.N.Y.).

*Brookshire Bros. v. Chiquita*, No. 05-CIV-21962 (S.D. Fla.).

*Cipro Cases I and II*, Nos. 4154 and 4220 (Super. Ct. Cal.).

*In re Dynamic Random Memory (DRAM) Antitrust Litig.,* MDL No. 1486 (N.D. Cal.).

*In re Flonase Antitrust Litig.*, No. 08-CV-3301 (E.D. Pa.).

*In re Metoprolol Succinate End-Payor Antitrust Litig.,* No. 06-cv-71 (D. De.).

*In re NYC Bus Tour Antitrust Litig.,* No. 13-cv-0711 (S.D. N.Y.).

*In re Online DVD Rental Antitrust Litig.*, MDL No. 2029 (N.D. Cal.).

*In re TFT-LCD (Flat Panel) Antitrust Litig.*, MDL No. 1827 (N.D. Cal.).

*Roos v. Honeywell Int'l, Inc.*, No. CGC 04-0436205 (Super. Ct. Cal.).

*Sweetwater Valley Farm, Inc. v. Dean Foods*, No. 2:07-CV-208 (E.D. Tenn.).

*The Shane Grp., Inc., v. Blue Cross Blue Shield of Michigan*, No. 2:10-cv-14360 (D. Minn.).

*Consumer and Product Liability*

*Abbott v. Lennox Industries, Inc.,* No.16-2011-CA-010656 (4th Jud. Cir. Ct., Dade Cty. Fla).

*Beringer v. Certegy Check Servs., Inc.,* No. 8:07-cv-1434-T-23TGW (M.D. Fla.) (data breach).

*Chaudhri v. Osram Sylvania, Inc.,* No. 2:11-cv-05504 (D.N.J.) (false advertising).

*CSS, Inc. v. FiberNet, L.L.C.,* No. 07-C-401 (Cir. Ct. W. Va.) (telecommunications).

*Donovan v. Philip Morris USA, Inc.,* No. 06-12234 NG (D. Mass.) (medical monitoring).

*FIA Card Servs., N.A. v. Camastro,* No. 09-C-233 (Cir. Ct. W.Va.) (credit card arbitration).

*Glazer v. Whirlpool Corp.,* No. 1:08-WP-65001 (N.D. Ohio)(defective product).

*Grays Harbor v. Carrier Corp.,* No. 05-CIV-21962 (W.D. Wash.) (defective product).

*In re Building Materials Corp. of America Asphalt Roofing Shingle Prods. Liab. Litig.,* No. 8:11- 02000 (D.S.C.) (roofing shingles).

*In re Checking Account Overdraft Litig.,* MDL No. 2036 (S.D. Fla.) (JP Morgan, U.S. Bank, BOA settlements; overdraft fees).

*In re Enfamil LIPIL Mktg. & Sales Practs. Litig.,* No. 11-MD-02222 (S.D. Fla.) (false advertising).

*In re M3Power Razor System Mktg. & Sales Practs. Litig.,* MDL 1704 (D. Mass.) (false advertising).

*In re Netflix Privacy Litig.,* No. 5:11-cv-00379 (N.D. Cal.) (privacy).

*In re Pharm. Industry Average Wholesale Price Litig.,* MDL No. 1456 (D. Mass.) (pharmaceutical).

*In re SCBA Liquidation, Inc., f/k/a Second Chance Body Armor, Inc.,* No. 04-12515 (Bankr. W.D. Mich.) (defective product).

*In re Sony Gaming Networks & Customer Data Security Breach Litig.,* No. 11-MD-2258 (S.D. Cal.) (data breach).

*In re Toyota Motor Corp. Unintended Acceleration Mktg, Sales Practs, & Prods. Litig.,* No. 8:10ML2151 (C.D. Cal.) (unintended acceleration).

*In re Vioxx Products Liab. Litig.,* No. 05-md-01657 (E.D. La) (pharmaceutical).

*In re Wachovia Corp. "Pick-a-Payment" Mortgage Mktg & Sales Practs. Litig.,* No. M:09-CV-2015 (N.D. Cal.) (negative amortization).

*Keilholtz v. Lennox Hearth Prods.,* No. 08-CV-00836 (N.D. Cal.) (defective product).

*Kramer v. B2Mobile, LLC,* No. 10-cv-02722 (N.D. Cal.) (TCPA).

*Lee v. Carter Reed Co., L.L.C.,* No. UNN-L-39690-04 (N.J. Super. Ct.) (false advertising).



*Mirakay v. Dakota Growers Pasta Co., Inc.*, No. 13-cv-4229 (D.N.J.) (false advertising).

*Palace v. DaimlerChrysler*, No. 01-CH-13168 (Cir. Ct. Ill.) (defective product).

*Rowe v. UniCare Life & Health Ins. Co.*, No. 09-cv-02286 (N.D. Ill.) (data breach).

*Spillman v. Domino's Pizza*, No. 10-349 (M.D. La.) (robo-call).

*Trammell v. Barbara's Bakery, Inc.*, No. 3:12-cv-02664 (N.D. Cal.) (false advertising).

*Wolph v. Acer America Corp.*, No. 09-cv-01314 (N.D. Cal.) (false advertising).

### *Environmental/Property*

*Allen v. Monsanto Co.*, No. 041465 and *Carter v. Monsanto Co.*, No. 00-C-300 (Cir. Ct. W. Va.) (dioxin release).

*Angel v. U.S. Tire Recovery*, No. 06-C-855 (Cir. Ct. W.Va.) (tire fire).

*Cather v. Seneca-Upshur Petroleum Inc.*, No. 1:09-cv-00139 (N.D. W.Va.) (oil & gas rights).

*Ed Broome, Inc. v. XTO Energy, Inc.,* No. 1:09-CV-147 (N.D. W.Va.) (oil & gas rights).

*In re Katrina Canal Breaches Litig.*, No. 05-4182 (E.D. La.) (Hurricanes Katrina and Rita).

*In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico on April 20, 2010,* MDL No. 2179 (E.D. La.) (BP oil spill).

*Jones v. Dominion Transmission Inc.*, No. 2.06-cv-00671 (S.D. W.Va.)  (oil & gas rights).

*Thomas v. A. Wilbert & Sons, LLC*, No. 55,127 (18th Jud. Dist. Ct., Iberville Parish) (vinyl chloride water contamination).

### *Government*

*Cobell v. Salazar*, No. 1:96cv01285 (D. D.C.), Depts. of Interior and Treasury.

Countrywide Mortgage Settlement, Department of Justice.

Iovate Settlement, Federal Trade Commission.

National Mortgage Settlement, Attorneys General.

Walgreens Settlement, Federal Trade Commission.

### *Insurance*

*Beasley v. Hartford Ins. Co. of the Midwest*, No. CV-2005-58-1 (Cir. Ct. Ark.) (homeowners insurance).



*Bond v. Am. Family Ins. Co*., No. CV06-01249 (D. Ariz) (property insurance).

*Burgess v. Farmers Ins. Co*., No. 2001-292 (Dist. Ct. Okla.) (homeowners insurance).

*Campbell v. First Am. Title Ins. Co.*, No. 2:08-cv-311-GZS (D. Me.) (title insurance).

*DesPortes v. ERJ Ins. Co.,* No. SU2004CV-3564 (Ga. Super. Ct.) (credit premium insurance).

*Fogel v. Farmers Grp., Inc.*, No. BC300142 (Super. Ct. Cal.)(management exchange fees).

*Guidry v. Am. Public Life Ins. Co*., No. 2008-3465 (14th Jud. Dist. Ct.) (cancer insurance).

*Gunderson v. F.A. Richard & Assocs., Inc*., No. 2004-2417-D. (14th Jud. D. Ct. La.) (PPO).

*Johnson v. Progressive Casualty Ins., Co*., No. CV-2003-513 (Cir. Ct. Ark.) (automobile insurance).

*McFadden v. Progressive Preferred*, No. 09CV002886 (Ct. C.P. Ohio) (UM/UIM).

*Orrill v. Louisiana Citizens Fair Plan*, No. 05-11720 (Civ. Dist. Ct., Orleans Parish) (Hurricane Katrina property insurance).

*Press v. Louisiana Citizens Fair Plan Prop. Ins. Co*., No. 06-5530 (Civ. Dist. Ct., Orleans Parish) (Hurricane Katrina property insurance).

*Purdy v. MGA Ins. Co.*, No. D412-CV-2012-298 (4th Jud. Ct. N. Mex.) (UM/UIM).

*Shaffer v. Continental Casualty Co*., No. 06-2235 (C.D. Cal.) (long term care insurance).

*Sherrill v. Progressive Northwestern Ins. Co*., No. DV-03-220 (18th D. Ct. Mont.) (automotive premiums).

*Soto v. Progressive Mountain Ins. Co*., No. 2002CV47 (Dist. Ct. Mont.) (personal injury insurance).

*Webb v. Liberty Mutual Ins. Co*., No. CV-2007-418-3 (Cir. Ct. Ark) (bodily injury claims).

### Securities

*In re Municipal Derivatives Antitrust Litig.*, MDL No. 1950 (S.D.N.Y.).

*In re Mutual Funds Inv. Litig.,* MDL No. 1586 (D. Md.) (Allianz Sub-Track).

### Canada

*Bechard v. Province of Ontario*, No. CV- 10-417343 (Ont. S.C.J.) (personal injury).

*Clarke v. Province of Ontario*, No. CV-10-411911 (Ont. S.C.J.) (personal injury).

*Dolmage v. Province of Ontario*, No. CV-09-376927CP00 (Ont. S.C.J.) (personal injury).

*Donnelly v. United Technologies Corp.,* No. 06-CV-320045 CP (Ont. S.C.J.) (defective product).



*Hall v. Gillette Canada Co.*, No. 47521CP (Ont. S.C.J.) (false advertising).

*Wener v. United Technologies Corp.*, 2008 QCCS 6605 (Québec) (defective product).

## Articles and Presentations

Shannon Wheatman & Alicia Gehring, *Mixed Media: A Smarter Approach To Class Action Notice*, Law360.com (June 11, 2015).

Shannon Wheatman, Speaker, *Balancing Due Process and Claims: A Conversation on Strategies to Safeguard Your Settlement*, Plaintiffs' Forum, Rancho Palos Verdes, CA (Apr. 2015).

Joshua Davis, Shannon Wheatman & Cristen Stephansky, *Writing Better Jury Instructions:  Antitrust as an Example*, Paper presented at 15th Annual Loyola Antitrust Colloquium, Chicago, IL (Apr. 2015).

Shannon R. Wheatman, Speaker, *Can Competition Concepts Be Made Comprehensible To Juries (And Judges)*, American Antitrust Institute's Business Behavior & Competition Policy in the Courtroom: Current Challenges for Judges, Stanford, CA (Aug. 2014).

Shannon R. Wheatman, Webinar Speaker, *Crafting Class Settlement Notice Programs: Due Process, Reach, Claims Rates, and More*, Strafford Publications (Feb. 2014).

Shannon R. Wheatman, *Cutting Through the Clutter: Eight Tips for Creatively Engaging Class Members and Increasing Response*, CLASS ACTION LITIGATION REPORT, 15 CLASS 88 (Jan. 24, 2014).

Shannon Wheatman & Michelle Ghiselli, *Privacy Policies: How To Communicate Effectively with Consumers*, International Association of Privacy Professionals (2014).

Shannon R. Wheatman, Speaker, *Report on Model Jury Instructions in Civil Antitrust Cases, Presentation*, American Antitrust Institute's 7th Annual Private Antitrust Enforcement Conference, Washington, DC (Dec. 2013).

Shannon R. Wheatman, Speaker, Class Action Notice, Reach & Administration, CLE International's 9th Annual Class Action Conference, Washington, DC (Oct. 2013).

Shannon R. Wheatman, *Ensuring Procedural Fairness Through Effective Notice, in* NATIONAL CONFERENCE ON CLASS ACTIONS:  RECENT DEVELOPMENTS IN QUÉBEC, IN CANADA AND IN THE UNITED STATES 83-99 (Yvon Blais ed., 2013).



Shannon R. Wheatman, Speaker, *Class Action Developments and Settlements*, 18th Annual Consumer Financial Services Institute, New York, New York (Apr. 2013).

Shannon R. Wheatman, Speaker, *Recent Trends in Class Actions in the United States*, National Conference on Class Actions:  Recent Developments in Québec, in Canada and in the United States, Montreal, Canada (Mar. 2013).

Shannon R. Wheatman, Speaker, *Report on Model Jury Instructions in Civil Antitrust Cases, Presentation*, American Antitrust Institute's 6th Annual Private Antitrust Enforcement Conference, Washington, DC (Dec. 2012).

Shannon R. Wheatman & Katherine M. Kinsella, *International Class Action Notice*, *in* WORLD CLASS ACTION: A GUIDE TO GROUP AND REPRESENTATIVE ACTIONS AROUND THE GLOBE 673-686 (Paul Karlsgodt ed., 2012).

Katherine Kinsella & Shannon Wheatman, *Class Notice and Claims Administration*, *in* PRIVATE ENFORCEMENT OF ANTITRUST LAW IN THE UNITED STATES: A HANDBOOK 338–348  (Albert A. Foer & Randy M. Stutz eds., 2012).

Shannon R. Wheatman, Webinar Speaker, *Class Action Notice Requirements:  Challenges for Plaintiffs and Defendants*, Strafford Publications (July 2012).

Shannon R. Wheatman, Webinar Speaker, *How to Craft Plain Language Privacy Notices*, Int'l Assoc. of Privacy Professionals (Oct. 2011).

Shannon R. Wheatman, Speaker, *Improving Take-Up Rates in Class Actions*, The Canadian Institute's 12th Annual National Forum on Class Actions, Ontario, Canada (Sept. 2011).

Shannon R. Wheatman & Terri R. LeClercq, *Majority of Publication Class Action Notices Fail to Satisfy Rule 23 Requirements*, 30 REV. LITIG. 53 (2011).

Shannon R. Wheatman & Terri R. LeClercq, *Majority of Publication Class Action Notices Fail to Satisfy Rule 23 Requirements*, CLASS ACTION LITIGATION REPORT, 12 CLASS 560, (June 24, 2011).

Katherine Kinsella & Shannon Wheatman, *Class Notice and Claims Administration*, *in* THE INTERNATIONAL PRIVATE ENFORCEMENT OF COMPETITION LAW 264–274  (Albert A. Foer & Jonathan W. Cuneo eds., 2010).



Shannon R. Wheatman, Speaker, *Majority of Publication Class Action Notices Fail to Satisfy Plain Language Requirements*, Clarity International Conference, Lisbon, Portugal (Oct. 2010).

Shannon R. Wheatman, Webinar Speaker, *Class Action Notification With Electronic Media: Emerging Legal Issues*, Stratford Publications (Sept. 2010).

Shannon R. Wheatman & Thomas E. Willging, *Does Attorney Choice of Forum in Class Action Litigation Really Make a Difference?* 17 CLASS ACTIONS & DERIVATIVES SUITS 1 (2007).

Todd B. Hilsee, Gina M. Intrepido & Shannon R. Wheatman, *Hurricanes, Mobility and Due Process: The "Desire-to-Inform" Requirement for Effective Class Action Notice Is Highlighted by Katrina*, 80 TULANE LAW REV. 1771 (2006).

Thomas E. Willging & Shannon R. Wheatman, *Attorney Choice of Forum in Class Action Litigation: What Difference Does it Make?* NOTRE DAME L. REV., 81 (2), 101, 161 (2006).

Todd B. Hilsee, Shannon R. Wheatman & Gina M. Intrepido, *Do you really want me to know my rights? The ethics behind due process in class action notice is more than just plain language: A desire to actually inform*. GEO. J. LEGAL ETHICS, 18 (4), 1359-1382 (2005).

Thomas E. Willging & Shannon R. Wheatman, *An Empirical Examination of Attorneys' Choice of Forum in Class Action Litigation*. FEDERAL JUDICIAL CENTER (2005).

Elizabeth C. Wiggins & Shannon R. Wheatman, *So what's a concerned psychologist to do? Translating the research on interrogations, confessions, and entrapment into policy*, *in* INTERROGATIONS, CONFESSIONS AND ENTRAPMENT 265–280 (G. Daniel Lassiter ed., 2004).

Thomas E. Willging & Shannon R. Wheatman, *Attorneys' Experiences and Perceptions of Class Action Litigation in Federal and State Courts. A Report to the Advisory Committee on Civil Rules Regarding a Case Based Survey*. FEDERAL JUDICIAL CENTER (2003).

Shannon R. Wheatman, *Survey of Bankruptcy Judges on Effectiveness of Case-Weights*. FEDERAL JUDICIAL CENTER (2003).

Elizabeth C. Wiggins & Shannon R. Wheatman, *Judicial Evaluation of Bankruptcy Judges*. FEDERAL JUDICIAL CENTER (2003).



Robert Niemic, Thomas Willging, & Shannon Wheatman, *Effects of Amchem/Ortiz on Filing of Federal Class Actions: Report to the Advisory Committee on Civil Rules*. FEDERAL JUDICIAL CENTER (2002).

Shannon Wheatman, Robert Niemic & Thomas Willging, *Report to the Advisory Committee on Civil Rules: Class Action Notices*. FEDERAL JUDICIAL CENTER (2002).

Elizabeth C. Wiggins & Shannon R. Wheatman, *Implementation of Selected Amendments to Federal Rule of Civil Procedure 26 by United States Bankruptcy Courts*. FEDERAL JUDICIAL CENTER (2001).

Shannon R. Wheatman & David R. Shaffer, *On finding for defendants who plead insanity: The crucial impact of dispositional instructions and opportunity to deliberate*. LAW & HUM. BEH., 25(2), 165, 181(2001).

Shannon R. Wheatman, *Distance Learning in the Courts*. FEDERAL JUDICIAL CENTER (2000).

David R. Shaffer & Shannon R. Wheatman, *Does personality influence the effectiveness of judicial instructions?* PSYCHOL. PUB. POL'Y & L., 6, 655, 676 (2000).

## Court Testimony

*Scharfstein v. BP West Coast Products, LLC*, No. 1112-17046 (Cir. Ct. Ore.).

*Spillman v. Domino's Pizza*, No. 10-349 (M.D. La.)

*PRC Holdings LLC v. East Resources, Inc.*, No. 06-C-81 (Cir. Ct. W. Va.).

*Guidry v. Am. Public Life Ins. Co.*, No. 2008-3465 (14th Jud. Dist. Ct., Calcasieu Parish).

*Webb v. Liberty Mutual Ins. Co.*, No. CV-2007-418-3 (Cir. Ct. Ark).

*Beasley v. The Reliable Life Ins. Co.*, No. CV-2005-58-1 (Cir. Ct. Ark).

## Depositions

*Hale v. CNX Gas Company, LLC*, No. 10-CV-59 (W.D. Va.).

*Thomas v. A. Wilbert Sons, LLC*, No. 55,127 (18th Jud. Dist. Ct., Iberville Parish).

## Judicial Comments

*The Shane Grp., Inc., v. Blue Cross Blue Shield of Michigan*, No. 2:10-cv-14360 (D. Minn.)



"The notice to Settlement Class Members consisted of postcard notices to millions of potential class members, as well as advertisements in newspapers and newspaper supplements, in People magazine, and on the Internet...  The Court finds that this notice...was reasonable and constituted due, adequate, and sufficient notice to all persons entitled to be provided with notice; and...fully complied with due process principles and Federal Rule of Civil Procedure 23." – Hon. Denise Page Hood (March 31, 2015)

*Mirakay v. Dakota Growers Pasta Co., Inc.*, No. 13-cv-4229 (D. N.J.)
"Having heard the objections made, the Court is unimpressed with the Objectors argument that there was somehow insufficient notice . . . This notice program has fully informed members of their rights and benefits under the settlement, and all required information has been fully and clearly presented to class members. Accordingly, this widespread and comprehensive campaign provides sufficient notice under the circumstances, satisfying both due process and Rule 23 and the settlement is therefore approved by this Court. " – Hon. Joel A. Pisano (Oct. 20, 2014)

*In re Dynamic Random Memory Antitrust Litig.*, MDL No. 1486 (N.D. Cal.)
"The Court confirms its prior findings that the Notices given pursuant to the Preliminary Approval Order were the best notice practicable under the circumstances.  The Court further confirms its prior findings that said notices provided due, adequate, and sufficient notice of these proceedings and of the matters set forth herein, including the proposed settlements set forth in the Settlement Agreements, and that said notice fully satisfied the requirements of due process, the Federal Rules of Civil Procedure, and all applicable state laws." – Hon. Phyllis J. Hamilton (June 27, 2014)

*Trammell v. Barbara's Bakery, Inc.*, No. 12-cv-02664 (N.D. Cal.)
"The Class Notice, the Summary Settlement Notice, the website, the toll-free telephone number, all other notices in the Settlement Agreement, the Declaration of the Notice Administrator, and the notice methodology implemented pursuant to the Settlement Agreement: (a) constituted the best practicable notice under the circumstances; (b) constituted notice that was reasonably calculated to apprise Class Members of the pendency of the Action, the terms of the settlement, and their rights under the settlement, including, but not limited to, their right to object to or exclude themselves from the proposed settlement and to appear at the Fairness Hearing; (c) were reasonable and constituted due, adequate, and sufficient notice to all persons entitled to receive notice; and (d) met all applicable requirements of law, including, but not limited to, the Federal Rules of Civil Procedure, 28 U.S.C. §1715, and the Due Process Clause(s) of the United States Constitution, as well as complied with the Federal Judicial Center's illustrative class action notices." – Hon. Charles R. Breyer (2013).

*Spillman v. Dominos Pizza, LLC.*, No. 10-349 (M.D. La.)
"At the fairness hearing notice expert Wheatman gave extensive testimony about the design and



drafting of the notice plan and its implementation, the primary goal of which was to satisfy due process under the applicable legal standards...Wheatman, who has extensive experience developing plain-language jury instructions, class action notices and rules of procedure, testified that the notice was composed at a ninth grade reading level because many adults read below a high school level." – Hon. Stephen C. Riedlinger (2013).

*In re Metoprolol Succinate End-Payor Antitrust Litig.*, No. 06-cv-71 (D. Del.)
"In accordance with the Preliminary Approval Order, notice of the proposed Settlement and Plan of Allocation has been provided to the Class in the manner directed by the Court.  See Wheatman Dec. Such notice to members of the Class is hereby determined to be fully in compliance with requirements of Fed. R. Civ. P. 23(e) and due process of law and is found to be the best notice practicable under the circumstances and to constitute due and sufficient notice to all persons and entities entitled thereto." – Hon. Mary Pat Thynge (2013).

*PRC Holdings, LLC v. East Resources, Inc.,* No. 06-C-81(E) (W.Va. Cir. Ct., Roane County).
"Notice was uniquely effective in this action because East's records of their leases allowed the Claims Administrator to provide individual notice by mail to most Class Members."  - Hon. Thomas C. Evans, III (2012).

*Kramer v. B2Mobile, LLC*, No. 10-cv-02722 (N.D. Cal.).
"The Court approved Notice Plan to the Settlement Classes . . . was the best notice practicable under the circumstances, including comprehensive nationwide newspaper and magazine publication, website publication, and extensive online advertising.  The Notice Plan has been successfully implemented and satisfies the requirements of Federal Rule of Civil Procedure 23 and Due Process." - Hon. Claudia A. Wilken (2012).

*Cather v. Seneca-Upshur Petroleum, Inc.,* No. 1:09-CV-00139 (N.D. W. Va.).
 "The Court finds that Class Members have been accorded the best notice as is practical under the circumstances, and have had the opportunity to receive and/or access information relating to this Settlement by reading the comprehensive written notice mailed to them . . . or by reading the published Notice in the local newspapers . . .  The Court further finds that the Notice provided to the members of the Settlement Class had been effective and has afforded such class members a reasonable opportunity to be heard at the Final Fairness Hearing and to opt-out of the subject settlement should anyone so desire." – Hon. Irene M. Keeley (2012).

*In re Checking Account Overdraft Fee Litig.*, No. 1:09-md-2036 (S.D. Fla.)  (JP Morgan Settlement)
"The Court finds that the Settlement Class Members were provided with the best practicable notice;



the notice was "reasonably calculated, under [the] circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Shutts*, 472 U.S. at 812 (quoting *Mullane*, 339 U.S. at 314-15). This Settlement with Chase was widely publicized, and any Settlement Class Member who wished to express comments or objections had ample opportunity and means to do so." - Hon. James Lawrence King (2012).

*In re Netflix Privacy Litig.*, No. 5:11-cv-00379 (N.D. Cal.)
"The Notice Plan and the intent of the forms of Notice to the Settlement Class as set forth in the Settlement Agreement and Exhibits B through E to the Wheatman Declaration are approved pursuant to subsections (c)(2)(B) and (ed) of Federal Rule of Civil Procedure 23." - Hon. Edward J. Davila (2012)

*Purdy v. MGA Ins. Co.,* No. D412-CV-2012-298 (N.M. 4th Jud. Dist. Ct.)
"Notice of the Settlement Class was constitutionally adequate, both in terms of it substance and the manner in which it was disseminated. The Notice contained the essential elements necessary to satisfy due process . . . [T]he Notice also contained a clear and concise Claim Form, and a described a clear deadline and procedure for filing of Claims. Notice was directly mailed to all Class Members whose current whereabouts could be identified by reasonable effort. Notice reached a large majority of the Class Members. The Court finds that such notice constitutes the best notice practicable." – Hon. Eugenio Mathis (2012).

*Blessing v. Sirius XM Radio Inc*., No 09-CV-10035 HB (S.D.N.Y.).
 "The Court finds that the distribution of the Notice and the publication of the Publication Notice . . . constituted the best notice reasonably practicable under the circumstances . . . was reasonably calculated . . . constituted due, adequate, and sufficient notice to all Class members who could be identified with reasonable efforts; and . . . satisfied the requirements of Rule 23 of the Federal Rules of Civil Procedure, the United States Constitution (including the Due Process Clause), the Class Action Fairness Act of 2005, 28 U.S.C. § 1715, R 23.1 of the Local Civil Rules of the United States District Court for the Southern District of New York, and all other applicable law and rules." - Honorable Harold Baer, Jr. (2011).

*Fogel v. Farmers Grp., Inc.*, No. BC300142 (Super. Ct. Cal.).
"The Court further finds and confirms that the Individual Notice (including the Proof of Claim), the Summary Notice, the reminder postcard, and the notice methodology: (a) constituted the best practicable notice . . . ; (b) constituted noticed that was reasonably calculated under the circumstances to apprise potential Class Members . . .; (c) were reasonable and constituted due, adequate, and sufficient notice to all persons or entities entitled to receive notice, and (d) met all applicable



requirements of California law . . . ." - Hon. Laura Evans (2011).

*In re Enfamil LIPIL Mktg. & Sales Practs. Litig.*, No. 11-MD-02222 (S.D. Fla.)
"The Court finds that the Class Notice provided to Class Members, in the form and manner of distribution described above, constitutes the best notice practicable under the circumstances, and fully satisfies the requirements of Federal Rules of Civil Procedure, Rule 23, the requirements of due process, and any other applicable law.  The declarations filed with the Court demonstrate that the Parties have fully complied with the Court's Preliminary Approval Order (as amended by Order dated April 1, 201 1) and that the best notice practicable under the circumstances was in fact given to Class Members." - Hon. James I. Cohn (2011).

*Keilholtz v. Lennox Hearth Prods.*, No. 08-CV-00836 (N.D. Cal.)
"Notice has been provided to the Settlement Class of the pendency of the Actions, the conditional certification of the Settlement Class for purposes of this Settlement, and the preliminary approval of the Settlement Agreement and the Settlement contemplated thereby.  The Court finds that said notice and the related Notice Plan provided for the best notice practicable under the circumstances to all Persons entitled to such notice and fully satisfied the requirements of Rule 23(c)(2)(B) of the Federal Rules of Civil Procedure and the requirements of due process." - Hon. Claudia Wilken (2011).

*Rowe v. UniCare Life and Health Ins. Co.*, No. 09-CV-02286 (N.D.Ill.)
"The form, content, and method of dissemination of the notice given to the Settlement Class were adequate and reasonable, and constituted the best notice practicable under the circumstances.  The notice, as given, provided valid, due, and sufficient notice of the proposed settlement, the terms and conditions set forth in the Settlement Agreement, and these proceedings to all Persons entitled such notice, and said notice fully satisfied the requirements of Rule 23 of the Federal Rules of Civil Procedure and due process." – Hon. William J. Hibbler (2011).

*Thomas v. A. Wilbert & Sons, LLC*, 55,127 (La. 18th Jud. Dist. Ct., Iberville Parish).
"[N]otices complied with all requirements of the federal and state constitutions, including the due process clauses, and applicable articles of the Louisiana Code of Civil Procedure, and constituted the best notice practicable under the circumstances and constituted due and sufficient notice to all potential members of the Thomas Subclass." – Hon. Jerome M. Winsberg (2011).

*In re M3Power Razor System Mktg. & Sales Pract. Litig.*, MDL 1704 (D. Mass).
"The form, content, and method of dissemination of the notice given to the Settlement Class was adequate and reasonable, and constituted the best notice practicable under the circumstances.  The notice, as given, provided valid, due, and sufficient notice of the proposed settlement, the terms and



conditions set forth in the Amended Settlement Agreement, and these proceedings to all Persons entitled to such notice, and said notice fully satisfied the requirements of Rule 23 of the Federal Rules of Civil Procedure and due process." - Hon. Douglas P. Woodlock (2011).

*Soto v. Progressive Mountain Ins. Co.*, No. 2002CV47 (Dist. Ct. Colo.).
"Notice of the Settlement Class was constitutionally adequate, both in terms of its substance and the manner in which it was disseminated.  The Notice contained the essential elements necessary to satisfy due process . . .  Finally, the Notice also contained a clear and concise Claim Form, and described a clear deadline and procedure for filing of claims. . . . Notice reached a large majority of the Class Members. The Court finds that such notice constitutes the best notice practicable." - Hon. J. Steven Patrick (2010).

*Press v. Louisiana Citizens Fair Plan Prop. Ins. Co.*, No. 06-5530 (Civ. Dist. Ct., Orleans Parish).
"This notice methodology . . . constitutes reasonable and best practicable notice . . . constitutes due, adequate and sufficient notice to all persons entitled to receive notice; and . . . meets the requirements of the United States Constitution, Louisiana law, the Federal Rules of Civil Procedure and any other applicable rules of the Court . . ." - Hon. Sidney H. Cates, IV (2010).

*In re Katrina Canal Breaches*, No. 05-4182 (E.D. La.).
"The notice here was crafted by Shannon Wheatman, Ph.D., whose affidavit was received as evidence. . . The entire notice was drafted in plain, comprehensible language . . .  The Court finds this notice adequately reached the potential class." - Hon. Stanwood R. DuVal, Jr. (2009).

*Jones v. Dominion Transmission Inc.*, No. 2.06-cv-00671 (S.D. W. Va.)
"The Parties' notice expert Shannon R. Wheatman, Ph.D. . . testified that in this case . . . that the mailed notices reached approximately 95.4 percent of the potential class . . . I HOLD that personal jurisdiction exists over the Class Members because notice was reasonable and afforded the Settlement Class an opportunity to be heard and to opt out." - Hon. Joseph R. Goodwin (2009).

*Guidry v. Am. Public Life Ins. Co.*, No. 2008-3465 (14th Jud. Dist. Ct.).
"The facts show that the notice plan . . . as adequate to design and implementation . . . Dr. Shannon R. Wheatman, a notice expert, also testified at the fairness hearing as to the sufficiency of the notice plan. Dr. Wheatman testified that the notice form, content, and dissemination was adequate and reasonable, and was the best notice practicable." - Hon. G. Michael Canaday (2008).

*Webb v. Liberty Mutual Ins. Co.*, (March 3, 2008) No. CV-2007-418-3 (Cir. Ct. Ark).
"Ms. Wheatman's presentation today was very concise and straight to the point . . . that's the way the



notices were . . . So, I appreciate that . . . Having admitted and reviewed the Affidavit of Shannon Wheatman and her testimony concerning the success of the notice campaign, including the fact that written notice reached 92.5% of the potential Class members, the Court finds that it is unnecessary to afford a new opportunity to request exclusion to individual Class members who had an earlier opportunity to request exclusion but failed to do so . . . The Court finds that there was minimal opposition to the settlement. After undertaking an extensive notice campaign to Class members of approximately 10,707 persons, mailed notice reached 92.5% of potential Class members." - Hon. Kirk D. Johnson (2008).

*Sherrill v. Progressive Northwestern Ins. Co*., No. DV-03-220 (18th D. Ct. Mont.).
"Dr. Wheatman's affidavit was very informative, and very educational, and very complete and thorough about the process that was undertaken here. . .  So I have reviewed all of these documents and the affidavit of Dr. Wheatman and based upon the information that is provided . . . and the significant number of persons who are contacted here, 90 percent, the Court will issue the order." - Hon. Mike Salvagni (2008).

*Shaffer v. Continental Casualty Co*., No. 06-2235 (C.D. Cal.).
"The Class Notice and the notice methodology implemented pursuant to the Settlement Agreement, as described in part in the Declarations of . . . Shannon Wheatman . . . constituted the best practicable notice. . . was reasonable and constitutes due, adequate, and sufficient notice to all persons entitled to receive notice; and met all applicable requirements of the Federal Rules of Civil Procedure, the Class Action Fairness Act, the United States Constitution (including the Due Process Clauses), the Rules of the Court, and any other applicable law." - Hon. Philip S. Gutierrez (2008).

*Gray's Harbor v. Carrier Corp*., No. 05-05437(W.D. Wash.).
"The Court finds that this notice was the best notice practicable under the circumstances, that it provided due and adequate notice of the proceedings and of the matters set forth therein, and that it fully satisfied all applicable requirements of law and due process." - Hon. Ronald B. Leighton (2008).

*Beringer v. Certegy Check Servs., Inc*., No. 8.07-cv-1434-T-23TGW (M.D. Fla.).
"The proposed form of notice and plan for publishing are reasonable and designed to advise members of the Settlement class of their rights . . . A nationally recognized notice specialist, Hilsoft Notifications, has developed the comprehensive Notice Plan. Here, Notice is reasonably calculated to reach the maximum number of potential Settlement Class Members and, thus, qualifies as the best notice practicable. The Notice Plan here is designed to reach the maximum number of Class Members, and it is Plaintiffs' goal to reach at least 80% of the Class—an extraordinary result in consumer class action litigation." - Hon. Steven D. Merryday (2008).



*Palace v. DaimlerChrysler Corp*., No. 01-CH-13168 (Cir. Ct. Ill.).
"The form, content, and method of dissemination of the notice given to the Illinois class and to the Illinois Settlement Class were adequate and reasonable, and constituted the best notice practicable under the circumstances.   The notice, as given, provided valid, due, and sufficient notice of the proposed Settlement, the terms and conditions set forth in the Settlement Agreement, and these proceedings, to all Persons entitled to such notice, and said notice fully satisfied the requirements of due process . . ." –Hon. Mary Anne Mason (2008).

*Johnson v. Progressive Casualty Ins., Co*., No. CV-2003-513 (Cir. Ct. Ark.).
"Notice of the Settlement Class was constitutionally adequate, both in terms of its substance and the manner in which it was disseminated . . . Notice was direct mailed to all Class members whose current whereabouts could be identified by reasonable effort.  Notice reached a large majority of the Class members. The Court finds that such notice constitutes the best notice practicable . . . The forms of Notice and Notice Plan satisfy all of the requirements of Arkansas law and due process." - Hon. Carol Crafton Anthony (2007).

*Beasley v. The Reliable Life Ins. Co*., No. CV-2005-58-1 (Cir. Ct. Ark).
"[T]he Court has, pursuant to the testimony regarding the notification requirements, that were specified and adopted by this Court, has been satisfied and that they meet the requirements of due process. They are fair, reasonable, and adequate. I think the method of notification certainly meets the requirements of due process . . . So the Court finds that the notification that was used for making the potential class members aware of this litigation and the method of filing their claims, if they chose to do so, all those are clear and concise and meet the plain language requirements and those are completely satisfied as far as this Court is concerned in this matter." - Hon. Joe Griffin (2007).

## Education and Experience

*Education*

Ph.D., Social Psychology, 2001; The University of Georgia, Athens, GA
Dissertation Title: *The effects of plain language drafting on layperson's comprehension of class action notices.*

M.S., Social Psychology, 1999; The University of Georgia, Athens, GA
Thesis Title: *Effects of verdict choice, dispositional instructions, opportunity to deliberate, and locus of control on juror decisions in an insanity case.*

M.L.S., Legal Studies, 1996; The University of Nebraska-Lincoln, Lincoln, NE



B.A., Psychology, 1993; Millersville University of Pennsylvania, Millersville, PA

Honor's Thesis Title: *The effects of inadmissible evidence and judicial admonishment in individual versus group decisions in a mock jury simulation.*

### Related Experience

Hilsoft Notifications
Souderton, PA
2004-2009

Dr. Wheatman was the Vice President (2006-2009) and Notice Director (2004-2009) at Hilsoft Notifications, a legal notification firm.

Federal Judicial Center
Washington, DC
2000-2004

Dr. Wheatman was a Research Associate at the Federal Judicial Center.  The Federal Judicial Center is the education and research agency for the Federal Courts.  The Research Division performs empirical and explanatory research on federal judicial processes and court management.  Dr. Wheatman worked with the Civil Rules Advisory Committee on a number of class action studies and with the Bankruptcy Administration Committee on judicial evaluations.

### Supplementary Background

Dr. Wheatman has a strong statistical background, having completed nine graduate level courses as well as teaching undergraduate statistics at the University of Georgia.  She is also a member of several plain language organizations, including the Center for Plain Language, Clarity, and Scribes.



# EXHIBIT 3

**Garlock Bankruptcy: 30-Second Television Script**

**Garlock Asbestos-Related Bankruptcy**

**Did you or anyone in your household work around asbestos-containing gaskets and packing?**

**Your Rights May Be Affected**

Attention! Did you or anyone in your household work around asbestos-containing gaskets and packing?

The Garlock bankruptcy may affect your rights even if you do not presently have an asbestos-related disease.

**Garlock Products**
Used In:
- Shipbuilding
- Maritime/naval vessels
- Chemical processing
- Oil Refineries
- Pulp and paper
- Power generation
- Construction

Garlock's products were used in industrial and maritime settings, anywhere steam, hot liquid or acid moved in pipes.

**Certain Personal Injury Claims Must be Filed by October 6, 2015**

**1-844-Garlock**
**www.GarlockNotice.com**

PAID FOR BY THE DEBTORS BY ORDER OF THE U.S. BANKRUPTCY COURT FOR THE WESTERN DISTRICT OF NORTH CAROLINA

Certain personal injury claims must be filed by October 6, 2015.  You may have a right to vote on Garlock's plan to reorganize and pay claims.

Call 844-Garlock or go to GarlockNotice.com

# EXHIBIT 4

# If You or a Family Member Ever Worked at a Power Plant

## You Could Have Been Exposed to Asbestos-Containing Products

### You <u>Must</u> File a Claim to Keep Your Chance for Compensation — Whether or Not You Have an Asbestos-Related Injury or Disease

Energy Future Holdings Corp., Ebasco Services, Inc., EECI, Inc. and certain subsidiaries ("EFH") owned, operated, maintained, or built power plants across the United States where asbestos was present. Workers at these power plants (and family members and others who came into contact with these workers) may have been exposed to asbestos and must file a claim in the EFH bankruptcy to keep rights to compensation now or in the future. A list of EFH power plants is available by calling the toll-free number or visiting the website listed below.

### Who can file a claim?

If you or a family member worked at an EFH power plant as an employee, contractor or in any other role, you must file a claim to protect your rights by <u>Month, Date, Year</u>. You may not currently have an asbestos-related disease, yet exposure may have occurred and you could develop an asbestos-related disease in the future. Or, you may have unexplained symptoms and not know the cause – asbestos exposure can cause or contribute to some cancers and respiratory diseases. Illness caused by asbestos may occur **decades** after exposure.

### Why is it important to file a claim now?

If you don't file a claim in the EFH bankruptcy and later develop an asbestos-related disease such as mesothelioma, lung cancer, or asbestosis, you will not be eligible for any compensation from EFH.

> *Asbestos Exposure Can Cause Disabling and Fatal Injuries*

You can file a claim yourself or you can ask a lawyer to help you. **Your claim must be received by Month, Date Year**.

### How could exposure to asbestos occur?

You could have been exposed by working around certain asbestos-containing materials or by coming in contact with another person who worked at an EFH power plant (for example, if asbestos was brought home on your family member's clothing). You may also file a claim on behalf of a deceased or injured family member.

Asbestos-containing materials likely included: insulation (boilers, piping, steam turbines); seals for joints on hot steam piping or equipment (gaskets); flooring; blown on insulation on structures and insulation on electrical wiring.

### Act Now to File a Claim to Protect Your Rights

Go to www.EFHclaims.com or call 1-877-276-7311 to get a claim form.

---

### EFH Bankruptcy Claims must be filed by Month Date Year

### 1-877-276-7311    www.EFHclaims.com

# EXHIBIT 5

# Garlock Bankruptcy
## Overview of the Disclosure Statement and the Plan of Reorganization

There is a Chapter 11 bankruptcy case involving Garlock Sealing Technologies ("GST") about the production of asbestos-containing gaskets and packing products used to prevent leaks in pipes and valves.  In addition to GST, the Garrison Litigation Management Group, Ltd. ("Garrison"), and The Anchor Packing Company ("Anchor") are also involved in the bankruptcy.  Collectively, the three companies are known as the "Debtors." They filed for bankruptcy as a result of asbestos-related claims against them.

- If you have an asbestos-related personal injury claim against the Debtors (or certain other kinds of claims), you may have an opportunity to vote on a plan that governs how claims will be funded and paid.  This is called the Plan of Reorganization (the "Plan").

- If approved, the Plan will pay unresolved asbestos-related claims against GST or Garrison from a Settlement Facility with $327.5 million and Litigation Fund with up to $162 million.  It will also prohibit the filing of asbestos-related claims against GST or Garrison, and affiliated companies.

- GST Asbestos Claimants who have not yet been diagnosed with any disease or experienced any symptoms are represented in the bankruptcy proceeding by the Court-appointed Future Claimants' Representative ("FCR"), and will be treated like any other GST Asbestos Claimants.

- **Certain GST Asbestos Claimants must file their personal injury claim by October 6, 2015 (see Questions 6 & 11).**

## WHAT THIS OVERVIEW CONTAINS

### GENERAL INFORMATION
1. What is this Bankruptcy Case about?
2. What is a Disclosure Statement?
3. What is Chapter 11?

### THE PLAN
4. What is the purpose of the Plan?
5. How was the Plan developed?
6. How will each Class be treated under the Plan?
7. How does the Plan affect Asbestos Claimants?
8. How are Asbestos Claims funded under the Plan?
9. What is the Claims process?

10.  What is my remedy if my Claim is denied or I disagree with the amount of my payment?

11.  How and when will payment amounts be calculated?

12.  Is there a date by which Asbestos Claimants must file a Claim?

## THE VOTING PROCESS

13.  Who can vote?

14.  How will the voting process work?

15.  What happens if I send more than one vote for the same Claim or I don't file a ballot on time?

16.  What if I don't like the Plan, can I object to it?

## THE CONFIRMATION HEARING

17.  When and where will the Bankruptcy Court decide whether to approve the Plan?

## GENERAL INFORMATION

**1.  What is this Bankruptcy Case about?**

GST is a manufacturing company that made gaskets, packing, and other sealing products. GST's asbestos litigation has principally involved two asbestos-containing sealing products: compressed asbestos sheet gaskets and asbestos packing.  Anchor was a sealing products distributor, and subsidiary of GST that sold fluid sealing materials, including gaskets and packing.  The products were used in places where steam, hot liquid, or acids moved through pipes, including in shipbuilding, oil refinery, chemical, paper and pulp, semi-conductor, power, and construction industries as well as in maritime/naval vessels.

In 1994, Anchor stopped operations and GST transferred its equity interest (ownership interest) to Garrison.  Garrison manages the defense and resolution of asbestos claims against GST and Anchor.

Some of the gasket and packing products GST manufactured before 2001 contained asbestos bound in rubber or other encapsulating material.  Although the Debtors deny that the asbestos in these products was a health hazard, for decades GST has received thousands of claims from individuals who claim asbestos-related disease caused in part by GST's products.  Given the number of pending claims, the Debtors have decided to resolve their responsibility for asbestos claims in a Chapter 11 bankruptcy.

**2.  What is a Disclosure Statement?**

You received the Disclosure Statement because it is a summary of information about the case.  It contains more detailed information about GST's history, asbestos litigation against GST, and significant events that have occurred and are expected to occur during this Chapter 11 bankruptcy case.  It also provides more detail about the Plan, what happens if the Plan is confirmed, and how claims will be resolved and payments will be

made.  In addition, the Disclosure Statement discusses the confirmation process and the voting procedures that holders of claims and equity interests must follow for their votes to be counted.

### 3.  What is Chapter 11?

Chapter 11 of the Bankruptcy Code permits a debtor (bankruptcy filer) to either reorganize or sell (liquidate) its business for the benefit of its creditors, interest holders, claimants, and other parties involved.  The main objectives of Chapter 11 are to: 1) propose a plan of reorganization (to manage debt and preserve a company's business) or liquidation (selling off assets to pay debt), 2) have eligible claimants (claim holders) or investors vote to accept or reject the plan, and, 3) after the court approves the plan, carry out the plan.

## THE PLAN

### 4.  What is the purpose of the Plan?

The primary purpose of the Plan is to resolve and pay asbestos-personal injury claims, non-asbestos claims, and preserve GST's business for the benefit of its employees and shareholders.  Under the Plan, a $327.5 million Settlement Facility will be established to pay current and future GST Asbestos Claims.  A $30 million Litigation Fund, with backup funding of up to $132 million available over forty years, also will be established to cover the costs of resolving GST Asbestos Claims that are litigated rather than settled.  As part of the Plan, GST and Garrison will be reorganized and continue in business.

**If approved, the Plan will pay asbestos-related claims against GST or Garrison from a Settlement Facility with $327.5 million and Litigation Fund with up to $162 million.  GST, Garrison, and Coltec (the Debtors' parent company) will fund the Settlement Facility and Litigation Fund.  In exchange, the Court will enter an "injunction" (a ban) permanently prohibiting the filing of asbestos-related claims against GST, Garrison, Coltec, and other affiliated companies.**

The Plan classifies all affected people and entities by types of claims and interests ("Classes").  There are twelve Classes of claims and interests under the Plan.  Some Classes will receive compensation while others will not.

### 5.  How was the Plan developed?

The Plan is the product of months of extensive negotiations between the Debtors and the Future Claimants' Representative or FCR. The FCR is an independent lawyer who was appointed by the Bankruptcy Court to represent the interests of Future GST Asbestos Claimants.  Future GST Asbestos Claimants are individuals who may have been exposed to Garlock products in the past but are not yet ill with an asbestos disease.  The FCR engaged experienced legal counsel, financial advisors, and asbestos claims experts to

represent and advise him in these cases. The Plan was formulated by the Debtors and the FCR in consultation with their respective counsel and experts.

The Plan provides for significant improvements for asbestos claimants as compared to an earlier plan of reorganization proposed by the Debtors that was not supported by the FCR. The claims payment procedures under the Plan are designed to pay valid current and future GST Asbestos Claimants fairly over time from increased funding provided by the Debtors following their negotiations with the FCR.

### 6. How will each Class be treated under the Plan?

The chart below summarizes the Classes and how they are treated under the Plan. More detail is available in the Disclosure Statement. Classes 3, 4, 5, and 6 relate to GST Asbestos Claimants.

| Class | Vote on Plan? | Estimated Amount of Claims Allowed |
|-------|---------------|-----------------------------------|
| Class 1 – Priority Claims | No | $70,000 |
| Class 2 – Secured Claims | No | $250,000 |
| Class 3 – Settled GST Asbestos Claims | Yes | $3.1 - $16.4 million |
| Class 4 – Current GST Asbestos Claims | Yes | TBD |
| Class 5 – Future GST Asbestos Claims | Yes | TBD |
| Class 6 – Pre-Petition Judgment GST Asbestos Claims | Yes | $0 - $3 million |
| Class 7 – General Unsecured Claims | Yes | $3.75 million |
| Class 8 – Anchor Claims | No | TBD |
| Class 9 – Intercompany Claims | No | TBD |
| Class 10 – GST Equity Interests | Yes | N/A |
| Class 11 – Garrison Equity Interests | Yes | N/A |
| Class 12 – Anchor Equity Interests | No | N/A |

### 7. How does the Plan affect Asbestos Claimants?

There are four principal Classes of asbestos-related claims:

- Settled GST Asbestos Claims (Class 3),
- Current GST Asbestos Claims (Class 4),
- Future GST Asbestos Claims (Class 5), and
- Pre-Petition Judgment GST Asbestos Claims (Class 6).

In addition, some asbestos-personal injury claims are also in the Anchor Claims (Class 8).

### *Settled GST Asbestos Claims – Class 3*

September 30, 2014 was the "bar date" (or deadline) for filing claims with supporting documentation (proofs of claim) for Settled GST Asbestos Claims.  Payment of allowed claims will take place on the date the Plan becomes effective or as soon thereafter as they are allowed.

- Allowed Settled GST Asbestos Claims are claims that are determined to be valid. These Claims will be paid in full.
- Settled GST Asbestos Claims that are invalid, and therefore disallowed, may be submitted:
  - To the Settlement Facility for evaluation and settlement, or
  - For claims allowance proceedings if the Litigation Option is selected as outlined below.

### *Current and Future GST Asbestos Claims – Classes 4 and 5*

Current and Future GST Asbestos Claimants can choose one of two options:
  (1) Settlement Option - Qualifying claimants will receive settlement offers based on predetermined, objective valuation criteria.
  (2) Litigation Option - Claimants may bring their claims in court under the Case Management Order ("CMO") and, if successful, be paid in full.

GST Asbestos Claimants who choose the Settlement Option will be compensated by the Settlement Facility established by the Plan.  Claims will be evaluated with individual compensation determined based on an agreed upon set of guidelines called the Claims Resolution Procedures ("CRP").  The CRP are provided in the Plan.

**Future GST Asbestos Claimants, those who have not yet been diagnosed with any disease or experienced any symptoms, are represented by the Court-appointed Future Claimants' Representative, and will be treated like any other GST Asbestos Claimants.**

### *Pre-Petition Judgment GST Asbestos Claims – Class 6*

Pre-Petition Judgment GST Asbestos Claimants filed their Claims prior to the bankruptcy filing and received judgments (rulings) that are currently on appeal either by GST or the claimant.  These claimants can choose one of the following options:

- Settlement Option – Receive settlement payments based on predetermined, objective criteria.
- Litigation Option – Continue the pending appeals of their judgments in court and, if successful, be paid in full.  Or, if the judgment is reversed on appeal and returned for a new trial, litigate their claims under the CMO.

Any Pre-Petition Judgment GST Asbestos Claimant who chooses the Settlement Option will be treated like any other GST Asbestos Claimant.

***Anchor Claims – Class 8***
Anchor will assume responsibility for Anchor Claims, but Anchor has no property and will be dissolved and liquidated and no claims will be paid.

## Overview of Asbestos-Related Classes and Options

| Class | Options | Handled by |
|---|---|---|
| Class 4 – Current<br>Class 5 – Future<br>Class 6 – Pre-Petition Judgment | **Settlement**<br>Expedited Review – up to $200,000<br>Individual Review – up to $2.5 million<br>or | Settlement Facility<br>$327.5 million |
| | **Litigation**<br>Court – approved procedures | Litigation Fund |
| Class 3 – Settled | Allowed Claims - Paid in full | Reorganized GST |
| | Disallowed Claims – Choose Settlement or Litigation Option | Settlement Facility or Litigation Fund |
| Class 8 – Anchor Claims | No options | N/A |

Claimants who choose the Litigation Option will be able to reverse that choice and select the Settlement Option at any time. However, the settlement offers under the CRP, will be reduced by the defense costs incurred by Reorganized Garrison during the litigation phase.

## 8.  How are Asbestos Claims funded under the Plan?

The Settlement Facility will be funded as follows:

| Settlement Facility | Contribution |
|---|---|
| GST and Garrison | $297,500,000 |
| Parent Settlement | $30,000,000 |
| **Total Amount:** | **$327,500,000** |

In addition, Garlock and Garrison will contribute $30 million to the Litigation Fund after the Plan is approved to fund the costs of defending and paying asbestos claims under the Litigation Option. If the initial contribution to the Litigation Fund is depleted faster than projected, additional funding of up to $132 million will be available over forty years.

The Debtors have reserved the right to object to the allowance of any claim that elects the Litigation Option.

The Reorganized Debtors will pay allowed Settled GST Asbestos Claims (Class 3) from funds independent of the Settlement Facility.

### 9.  What is the Claims process?

***Settlement Option***

GST Asbestos Claimants must file a Claim Form with the Settlement Facility following the terms of the CRP with all necessary supporting documentation.

Claimants will have the option of choosing Expedited Review or Individual Review.

- Expedited Review requires submission of less information than Individual Review and for most claimants will result in higher settlement offers.
- Individual Review requires submission of more information but could produce higher payments for certain claimants.

All claimants who choose the Settlement Option must pay a $250 filing fee, which will be refunded if the claim is paid.

***Litigation Option***

GST Asbestos Claimants must file a Proof of Claim Form with the Bankruptcy Court.  Or, if the Claimant already filed a Proof of Claim in response to the Asbestos Claims Bar Date, the Claimant must file a Notice of Election of Litigation Option.

Reorganized Garrison will object to the claim and the litigation process will proceed under the CMO.  Litigation Option Claimants can only file a claim against the Litigation Fund.  Claims cannot be filed against Reorganized GST or the Settlement Facility.

### 10.  What is my remedy if my Claim is denied or I disagree with the amount of my payment?

Any GST Asbestos Claimant who elects the Settlement Option and does not receive a settlement offer under the CRP or is dissatisfied with such offer may cancel such election and elect the Litigation Option.

### 11.  How and when will payment amounts be calculated?

If the Bankruptcy Court approves the Plan, payment amounts will be calculated by the Settlement Facility using the guidelines and processes outlined in the CRP.  Claimants who elect the Litigation Option will have their claims allowed or disallowed under the CMO.

To assist GST Asbestos Claimants in deciding whether to elect the Settlement Option or Litigation Option, the Settlement Facility's website shall include a calculator tool.  GST Asbestos Claimants may use the tool to estimate and compare the payment amounts offered under the Expedited Review and Individual Review.  That calculator is available at gstonlinecalculator.com and can be used now to estimate your likely settlement offer under the CRP if the Plan is approved.

**12.  Is there a date by which GST Asbestos Claimants must file a Claim?**

The Bankruptcy Court has set October 6, 2015 as the Asbestos Claims Bar Date for any GST Asbestos Claimant who:

- Has a claim against Garlock or Garrison based on an asbestos-related injury diagnosed on or before August 1, 2014,
- Has not settled with the Debtors, and
- Filed a lawsuit against any other defendant or a claim against any asbestos trust as of August 1, 2014.

Claimants with Class 6 Pre-Petition Judgment GST Asbestos Claims must also file their claims by the Bar Date. GST Asbestos Claimants diagnosed with disease after August 1, 2014 do not have to file a claim at this time, but can vote on the Plan.

These GST Asbestos Claimants must file a claim by **October 6, 2015**.  **If you do not file a Claim, you may lose your right to bring your claim in the future.**

### The Voting Process

**13.  Who can vote?**

The Debtors believe that all Classes of claims are "unimpaired."  This means that all Classes of claims are assumed to approve the Plan because the holders of the claims, if allowed, will be paid in full under the Plan, CRP, and CMO.

However, certain Classes may receive a ballot to vote in case the Court determines that their claims may be impaired (not paid in full) or that their votes are necessary to confirm the Plan.  The Order Approving Disclosure Statement and Establishing Asbestos Claims Bar Date and Procedures for Solicitation, which was entered by the bankruptcy court on April 10, 2015 and is available at www.GarlockNotice.com provides more information on voting rights.

**14.  How will the voting process work?**

To be counted, your signed ballot indicating your acceptance or rejection of the Plan must be received by Rust Consulting/Omni Bankruptcy, the appointed voting agent, no later than October 6, 2015.  Ballots should be sent by mail or overnight delivery to:

Garlock Sealing Technologies LLC, et. al
c/o Rust Consulting/Omni Bankruptcy
Attn: Balloting Agent
5955 DeSoto Avenue, Suite 100
Woodland Hills, CA 91367

The Order Approving Disclosure Statement and Establishing Asbestos Claims Bar Date and Procedures for Solicitation, available at www.GarlockNotice.com, provides more information on the voting process.

**15.  What happens if I send more than one vote for the same Claim or I don't file a ballot on time?**

If you send more than one vote for the same claim, the last ballot received will be the vote that is counted.  Any ballot not filed on time will not be counted.

**16.  What if I don't like the Plan, can I object to it?**

If you object to the Plan, you must file any objections by mail or courier on or before October 6, 2015 (except for objections based on the results of voting on the Plan, which must be filed on or before December 18, 2015).  Your objection must be filed on time and follow the guidelines in the attached Disclosure Statement on page 76 or it may not be considered by the bankruptcy court.  The Disclosure Statement has more details on how to object to the Plan.

## THE CONFIRMATION HEARING

**17.  When and where will the Bankruptcy Court decide whether to approve the Plan?**

The Bankruptcy Court will hold a confirmation hearing at 10:00 a.m. Eastern time on June 20, 2016 at the United States Bankruptcy Court, Room 1-4, 401 West Trade Street, Charlotte, NC.  The Honorable J. Craig Whitley, United States Bankruptcy Judge, will oversee the hearing.  The Court may adjourn the hearing from time to time without notice except for an announcement of the adjourned date at the hearing or any adjournment of the hearing.

# EXHIBIT 6

**[Cover Letter to Current and Former Workers]**

[Date]

RE:                              CLAIMS DUE TO ASBESTOS EXPOSURE AT YOUR
WORKPLACE

Dear _____:

Records show that you worked at [Insert name of facility] in [City, State].  You may have been exposed to asbestos-containing products while working there.  Energy Future Holdings Corp., Ebasco Services, Inc., EECI, Inc. and certain subsidiaries ("EFH") owned, operated or maintained power plants across the United States (see attached list).  Every worker at these facilities and their family members may have been exposed to asbestos and must file a claim in the EFH bankruptcy to keep rights to compensation now or in the future.

**Please Share This Notice With Your Family Members**

You may not have an asbestos-related disease right now but you could have been exposed to asbestos.  Or, you may have unexplained illness and not know the cause.  (Some cancers and respiratory diseases have been linked to exposure to asbestos.)  Illness may occur decades after exposure to asbestos.  Your family members may have been exposed to asbestos by coming in contact with you and your clothing.

If you don't file a claim and develop an asbestos-related disease such as mesothelioma, lung cancer, or asbestosis at some time in the future you will not be eligible for any compensation.  If you do file a claim, then you may receive money if you get sick in the future.

You and any potentially exposed family members can file a claim yourself or you can ask a lawyer to help you.  **Your claim must be RECEIVED by Month 00, 2015.**

You have certain legal rights you need to act on by **Month 00, 2015**.  Please read the enclosed papers for more information about EFH and your rights.  You may also visit the website at www.EFHclaims.com or call 1-877-276-7311 for further information.

Sincerely,


EFH Bankruptcy Administrator

# EXHIBIT 7



Frame 1: Screen 1 rotates into screen as blue lines are drawn, silimar to video showing image



Frame 2: Copy slides into place removing 'packing' and 'gasket' copy



Frame 3: Remaining copy slides into place



Frame 4: Screen slides with copy similar to video



Frame 5: Screen slides in as bullet points slide in similar to video



Frame 6: End frame rotates in similar to video

# EXHIBIT 8

EFH CLAIMS
P.O. BOX 0000
CITY, ST 00000

PRESORTED
FIRST-CLASS MAIL
U.S. POSTAGE
PAID
Rust Consulting, Inc.

## Important Legal Notice About Asbestos Exposure

NAME
ADDRESS
CITY STATE ZIP CODE

## If You or a Family Member Ever Worked at a Power Plant,

### *You Could Have Been Exposed to Asbestos-Containing Products*

---

**You <u>Must</u> File a Claim to Keep Your Chance for Compensation,
Whether or Not You Have an Asbestos-Related Injury or Disease**

# EXHIBIT 9

# Energy Future Holdings Corp. Asbestos Proof of Claim Form

## PURPOSE OF ASBESTOS PROOF OF CLAIM FORM

This proof of claim form should <u>only</u> be used to make an Asbestos Claim.  An "Asbestos Claim" means any claim of exposure to asbestos that is the legal responsibility of Energy Future Holdings Corp. or any of its past or present subsidiaries or affiliates (together called, "EFH").

**You have an Asbestos Claim as long as you or a family member have had any EFH asbestos exposure regardless of whether or not you have any current asbestos-related injury, disease, or illness. Further, if you or a family member have worked at one of the Facilities identified on the list included with this form you are presumed to have had asbestos exposure and should file a Proof of Claim.**

You should file a claim if you:

- Currently have an asbestos-related injury, illness, or disease (such as asbestosis, mesothelioma, or asbestos-related lung cancer); or

- Have the right to file a claim on behalf of someone who died as a result of asbestos exposure; or

- Personally suffered loss of consortium (such as loss of affection, companionship, financial assistance, etc.) or other injury due to asbestos exposure of a family member for which EFH is or may be responsible.

"Asbestos Claim" includes all such claims under any legal theory that seeks any form of money damages or non-monetary relief.  Asbestos Claims include any such claims that have been resolved, whether paid or unpaid.

If you have any reason to believe that you have an Asbestos Claim, based on asbestos exposure prior to April 29, 2014, you must file a Proof of Claim whether or not an injury or disease has been diagnosed.  You need to file a Proof of Claim in order to keep your right to recover from the debtors in the event you develop an asbestos-related illness in the future.

The U.S. Bankruptcy Court for the District of Delaware has ordered that this asbestos proof of claim form must be completed by each person who is filing an Asbestos Claim against EFH.

## ADMINISTRATOR INFORMATION

**For general questions about this form, please email: XXXXXXXX@XXXXXXXXX.XXXXXX or call 1-XXX-XXX-XXXX**

Please send the completed claim form to:

Energy Future Holdings Corp. Claims Processing Center
c/o Epiq Bankruptcy Solutions, LLC
757 Third Avenue, 3rd Floor
New York, NY 10017

<u>If you or a family member have not been diagnosed with an asbestos injury, please complete sections 1A, 3, 5, and 6 only.</u>

*<u>If you or a family member have been diagnosed with an injury caused by asbestos, please complete each of sections 1B, 2 (if applicable), 3, 4A or 4B, and 6 only.</u>*

**PART 1A: NO CURRENT INJURY OR DISEASE – CLAIMANT INFORMATION (the individual whose potential claim is being preserved)**

| Last Name: | First Name: | Middle Initial: | Suffix: | Date of Birth (mm/dd/yyyy) |
|---|---|---|---|---|
| Social Security Number (9 digits): | Foreign Tax ID *(if applicable)*: | | Estate Tax ID (9 digits) *(if applicable)*: | |
| City of Residence | State of Residence | Zip Code | Country (if outside the US) | |

**PART 1B: ASBESTOS INJURY - CLAIMANT INFORMATION (the individual who has or had an asbestos-related disease)**

| Last Name: | First Name: | Middle Initial: | Suffix: | Date of Birth (mm/dd/yyyy) |
|---|---|---|---|---|
| Social Security Number (9 digits): | Foreign Tax ID *(if applicable)*: | | Estate Tax ID (9 digits) *(if applicable)*: | |
| City of Residence | State of Residence | Zip Code | Country (if outside the US) | |

***PART 2: RELATED CLAIMANT INFORMATION (if different from person listed above)***

*Related Claimant: a person who is not the exposed person but who is making a claim either as a representative (such as a parent for a child, or as the representative of a dead person's estate), or an independent capacity (such as for someone who wrongfully died)*

| Last Name: | First Name: | Middle Initial: | Suffix: | Date of Birth (mm/dd/yyyy) |
|---|---|---|---|---|

*Related Claimant ID is only required if no ID is provided for the Injured Party or related estate.*

| Social Security Number (9 digits): | Foreign Tax ID *(if applicable)*: | | Estate Tax ID (9 digits) *(if applicable)*: | |
|---|---|---|---|---|
| City of Residence | State of Residence | Zip Code | Country (if outside the US) | |

**PART 3: MAILING ADDRESS**

| Last Name: | First Name: | Middle Initial: | Suffix: | Date of Birth (mm/dd/yyyy) |
|---|---|---|---|---|
| Social Security Number (9 digits): | Foreign Tax ID *(if applicable)*: | | Estate Tax ID (9 digits) *(if applicable)*: | |
| City of Residence | State of Residence | Zip Code | Country (if outside the US) | |

| Email Address | Fax No.: (Area Code) ###-#### |
|---|---|

**PART 4A: ASBESTOS-RELATED DISEASE DIAGNOSIS INFORMATION. Complete this section if you have a diagnosed asbestos injury. If you have already settled your claim, you may skip this section and go directly to Part 4B.**

**What asbestos-related disease has the Injured Person been diagnosed with? (for example, mesothelioma, colon/gastro-intestinal cancer, laryngeal cancer, lung cancer, asbestosis, or other non-malignant asbestos-related condition)**

Date of diagnosis (mm/dd/yyyy): _____

Is the Injured Person deceased? If so, Date of Death (mm/dd/yyyy): _____

**PART 4B: SETTLED ASBESTOS PERSONAL INJURY CLAIMS   Complete this section only if you believe that one or more of the Debtors owes you money pursuant to a settlement agreement entered as of DATE, but as for which you have not received full payment ("Settled Asbestos PI Claim"). If you have a diagnosed asbestos injury but your claim is not a Settled Asbestos PI Claim, complete Part 4A.**

Identify the papers you have in support of your belief that you have a Settled Asbestos PI Claim and attach a copy of each.

**PART 5: NO CURRENT INJURY OR DISEASE – INFORMATION ON EXPOSURE.  If you are filing a Proof of Claim to preserve your rights or the rights of another who has not been diagnosed with an asbestos injury, please sign below**

Please state below at which Facility you or a family member were exposed to asbestos, or the basis on which you reasonably believe you were exposed to asbestos for which EFH is or may be legally responsible (you can write on additional sheets if more space is needed):

**PART 6: CERTIFICATION FOR ALL CLAIMANTS**

THIS CERTIFICATION MAY BE SIGNED BY *EITHER* THE INJURED PARTY/RELATED CLAIMANT OR BY THE LEGAL REPRESENTATIVE OF THE INJURED PARTY BUT DOES NOT NEED TO BE SIGNED BY BOTH.

The information provided in or in connection with this Claim Information Form must be accurate and truthful**,** and knowingly and fraudulently providing false information could result in a fine of up to $500,000 or imprisonment for up to five years, or both.

I swear, under penalty of perjury, that, to the best of my knowledge, all of the information contained in this Claim Information Form is true, accurate and complete as of the date hereof.

_____          _____

Signature                                                                          Date

_____

Print Name

_____

(If filing this claim, on behalf of another, your relationship to Claimant)