**<u>Exhibit B</u>**

[Retention Order]

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) | Case No. 14-10979 (CSS) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

### ORDER AUTHORIZING THE RETENTION AND EMPLOYMENT OF SOLIC CAPITAL ADVISORS, LLC AS FINANCIAL ADVISOR FOR DEBTOR AND DEBTOR IN POSSESSION ENERGY FUTURE HOLDINGS CORP. EFFECTIVE *NUNC PRO TUNC* TO DECEMBER 18, 2014

Upon the application (the "Application")[2] of debtor and debtor in possession Energy Future Holdings Corp. ("EFH Corp.") for the entry of an order (this "Order") authorizing EFH Corp., under the supervision of its disinterested directors, Donald L. Evans and Billie I. Williamson, to retain and employ SOLIC Capital Advisors, LLC ("SOLIC") as financial advisor, effective *nunc pro tunc* to December 18, 2014, in connection with Conflict Matters as defined in and pursuant to the authority delegated to EFH Corp.'s disinterested directors pursuant to resolutions of the EFH Corp. Board of Directors attached to the Application as Exhibit B (the "Resolutions"), including the determination by EFH Corp.'s disinterested directors regarding whether any matter constitutes a Conflict Matter, pursuant to sections 327(a) and 328(a) of title 11 of the United States Code (the "Bankruptcy Code"), rules 2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rules 2014-1 and 2016-2 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the

---

[1]  The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, for which joint administration has been granted, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

[2]  Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Application.

District of Delaware (the "Local Bankruptcy Rules"); and the Court having reviewed the Application and the Declaration of Neil F. Luria, a Senior Managing Director and President of SOLIC (the "Luria Declaration"); and the Court having found that the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and the Court having found that the Application is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and the Court having found that venue of the Application in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having found, based on the representations made in the Application and in the Luria Declaration, that (a) SOLIC does not hold or represent an interest adverse to EFH Corp.'s estate and (b) SOLIC is a "disinterested person" as defined in section 101(14) of the Bankruptcy Code and as required by section 327(a) of the Bankruptcy Code; and the Court having determined that the terms and conditions of SOLIC's employment, including the fee and expense structure set forth in the Engagement Letter (attached hereto as **Exhibit 1**), are reasonable as required by section 328 (a) of the Bankruptcy Code; and the Court having found that the relief requested in the Application is in the best interests of EFH Corp.'s estate, its creditors, and other parties in interest; and the Court having found that EFH Corp. provided adequate and appropriate notice of the Application under the circumstances and that no other or further notice is required; and the Court having reviewed the Application; and the Court having determined that the legal and factual bases set forth in the Application just cause having been shown for the relief granted herein; and any objections to the relief requested herein having been either withdrawn or overruled; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.      The Application is granted to the extent set forth herein.

47349969v2

2.      EFH Corp. is authorized to retain and employ SOLIC as its financial advisor to advise it on Conflict Matters, including whether a matter constitutes a Conflict Matter, consistent with the terms and conditions set forth in the Engagement Letter, effective *nunc pro tunc* to December 18, 2014, and to pay fees and reimburse expenses to SOLIC on the terms and times specified in the Engagement Letter attached hereto as **Exhibit 1**; *provided, however*, that nothing in the Engagement Letter shall supersede any provisions of the Bankruptcy Code during the pendency of EFH Corp.'s chapter 11 case; *provided further, however*, that to the extent the Application, the Luria Declaration, and any later declaration or the Engagement Letter is inconsistent with this Order, the terms of this Order shall govern

3.      The terms of the Engagement Letter are approved in all respects except as limited or modified herein.

4.      SOLIC's compensation set forth in the Engagement Letter is approved pursuant to section 328(a) of the Bankruptcy Code and SOLIC shall be compensated and reimbursed pursuant to section 328(a) of the Bankruptcy Code in accordance with the terms of the Engagement Letter, subject to the procedures set forth in the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and any other applicable orders of this Court, including but not limited to the *Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Professionals* dated September 16, 2014 [D.I. 2066].

5.      Pursuant to the terms of the Engagement Letter, SOLIC is entitled to reimbursement by EFH Corp. for reasonable expenses incurred in connection with the performance of its engagement under the Engagement Letter, including, without limitation, the reasonable fees, disbursements and other charges of SOLIC's counsel (which counsel shall not be required to be retained pursuant to section 327 of the Bankruptcy Code or otherwise), in

3

47349969v2

accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the

Local Bankruptcy Rules, any applicable orders of this Court and the Fee Guidelines promulgated

by the Office of the United States Trustee, *provided however*, that SOLIC shall not seek

reimbursement for any services provided by SOLIC's counsel to EFH Corp.; *provided further*,

that SOLIC shall submit the invoices of SOLIC's counsel, together with any application seeking

allowance of reimbursement for the fees, disbursements and other charges of its counsel.

6.      With respect to the provision of the Engagement Letter reflecting that SOLIC may

perform *de novo* analyses as may be required and approved by the Disinterested Directors, in

such events, SOLIC shall file a supplemental application or applications requesting authority to

undertake such analyses, which shall generally outline the scope of the *de novo* analyses and

identify the SOLIC professionals designated to perform such *de novo* analyses and their

corresponding hourly rates.

7.      None of the fees payable to SOLIC shall constitute a "bonus" or fee enhancement

under applicable law.

8.      Absent further order of this Court, fees and expenses incurred by SOLIC shall be

paid by EFH Corp.

9.      SOLIC shall use its reasonable efforts to avoid any duplication of services

provided by any of EFH Corp.'s other retained professionals in EFH Corp.'s chapter 11 case.

10.     Notwithstanding any provision to the contrary in this Order, the U.S. Trustee shall

have the right to object to SOLIC's request(s) for interim and final compensation and

reimbursement based on the reasonableness standard provided in section 330 of the Bankruptcy

Code, not section 328(a) of the Bankruptcy Code. This Order and the record relating to the

Court's consideration of the Application shall not prejudice or otherwise affect the rights of the

47349969v2

U.S. Trustee to challenge the reasonableness of SOLIC's fees under the standard set forth in the preceding sentence. Accordingly, nothing in this Order or the record shall constitute a finding of fact or conclusion of law binding the U.S. Trustee, on appeal or otherwise, with respect to the reasonableness of SOLIC's fees.

11.     SOLIC shall include in its fee applications, among other things, time records setting forth, in summary format, a description of the services rendered by each professional, and the amount of time spent on each date by each such individual in rendering services on behalf of ECF Corp. in half-hour increments, but SOLIC shall be excused from keeping time in tenth-hour increments.

12.     SOLIC is granted a waiver of the information requirements relating to compensation requests set forth in Local Rule 2016-2(d) to the extent requested in the Application.

13.     SOLIC shall file fee applications for interim and final allowance of compensation and reimbursement of expenses pursuant to the procedures set forth in sections 330 and 331 of the Bankruptcy Code; provided, however, the fee applications filed by SOLIC shall be subject to review only pursuant to the standard of review set forth in section 328 of the Bankruptcy Code and not subject to the standard of review set forth in section 330 of the Bankruptcy Code, except as otherwise expressly set forth herein.

14.     The relief granted herein shall be binding upon any chapter 11 trustee appointed in EFH Corp.'s chapter 11 case, or upon any chapter 7 trustee appointed in the event of a subsequent conversion of EFH Corp.'s chapter 11 case to a case under chapter 7.

15.     The indemnification provisions set forth in the Engagement Letter are hereby approved, subject during the pendency of these cases to the following:

47349969v2

a. subject to the provisions of subparagraph d., *infra*, EFH Corp. is authorized to indemnify, and to provide contribution and reimbursement to, and shall indemnify, and provide contribution and reimbursement to, the Indemnified Persons (as defined in the Engagement Letter) in accordance with the Engagement Letter for any claim arising from, related to, or in connection with the services provided for in the Engagement Letter; notwithstanding any provisions of the Engagement Letter to the contrary;

b. EFH Corp. shall have no obligation to indemnify SOLIC or provide contribution or reimbursement to SOLIC (i) for any claim or expense that is judicially determined (the determination having become final) to have arisen from SOLIC's bad faith, self-dealing, breach of fiduciary duty (if any), willful misconduct or gross negligence, (ii) for a contractual dispute in which EFH Corp. alleges the breach of SOLIC's contractual obligations if the Court determines that indemnification, contribution, or reimbursement would not be permissible pursuant to *In re United Artists Theatre Company, et. al.*, 315 F.3d 217 (3d Cir. 2003), or (iii) for any claim or expense that is settled prior to a judicial determination as to the exclusions set forth in clauses (i) and (ii) above, but determined by the Court, after notice and a hearing pursuant to subparagraph d., *infra*, to be a claim or expense for which SOLIC should not receive indemnity, contribution or reimbursement under the terms of the Indemnification Letter, as modified by this Order;

c. if during the pendency of EFH Corp.'s case the indemnification is held unenforceable by reason of the exclusions set forth in subparagraph b. above and SOLIC makes a claim for the payment of any amounts by EFH Corp. on account of EFH Corp.'s contribution obligations, then the contribution provisions in the Engagement Letter shall not apply; and

d. if, before the earlier of (i) the entry of an order confirming a chapter 11 plan in EFH Corp.'s case (that order having become a final order no longer subject to appeal) and (ii) the entry of an order closing EFH Corp.'s case, SOLIC believes that it is entitled to the payment of any amounts by EFH Corp. on account of EFH Corp.'s indemnification, contribution, and/or reimbursement obligations under the Engagement Letter (as modified by this Order), including without limitation the advancement of defense costs, SOLIC must file an application therefor in this Court, and EFH Corp. may not pay any such amounts to SOLIC before the entry of an order by this Court approving the payment. This subparagraph d. is intended only to specify the period of time during which the Court shall have jurisdiction over any request for compensation and expenses by SOLIC for indemnification, contribution, or reimbursement and is not a provision limiting the duration of EFH Corp.'s obligation to indemnify SOLIC.

6

16.     Notwithstanding anything to the contrary in the Application or the Engagement Letter, SOLIC will not seek reimbursement of expenses for office supplies.

17.     EFH Corp. and SOLIC are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Application.

18.     Notice of the Application as provided therein is deemed to be good and sufficient notice of such Application, and the requirements of the Local Bankruptcy Rules are satisfied by the contents of the Application.

19.     The terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

20.     Notwithstanding any contrary provision in the Application or the Engagement Letter, the Court shall retain jurisdiction to hear and determine all matters arising from or related to implementation of this Order.

Dated:     2/6/15
            Wilmington, Delaware

_____
The Honorable Christopher S. Sontchi
United States Bankruptcy Judge

47349969v2

**Exhibit 1** (to Order)

[Engagement Letter]



SOLIC Capital Advisors, LLC
1603 Orrington Avenue, Suite 1600
Evanston, Illinois  60201
847.583.1619   Phone
847.583.1426   Fax

December 18, 2014

**Personal and Confidential**
The Honorable Donald L. Evans
Executive Chairman
Board of Directors
Energy Future Holdings Corp.
1601 Bryan St., 41st Floor
Dallas, Texas 75201
dle@donevans34.com

Billie I. Williamson
Director
Board of Directors
Energy Future Holdings Corp.
1601 Bryan St., 41st Floor
Dallas, Texas 75201
billie.williamson@forresterco.com

Dear Mr. Evans and Ms. Williamson:

Subject to approval of the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"), this letter confirms the retention of SOLIC Capital Advisors, LLC ("SOLIC") by Energy Future Holdings Corp. (the "Company"), nunc pro tunc to December 18, 2014, in accordance with the terms set forth in this letter, pursuant to which SOLIC will provide to the Company, at the direction of its disinterested directors, Donald L. Evans and Billie I. Williamson (the "Disinterested Directors"), the services described below in connection with the Company's chapter 11 case (the "Case").

On April 29, 2014 (the "Commencement Date"), the Company commenced its Case by filing a voluntary petition for relief under chapter 11 title 11 of the United States Code (the "Bankruptcy Code") in the Bankruptcy Court.  This engagement letter (this "Engagement Letter"), and SOLIC's obligations and responsibilities relating to this engagement (the "Engagement"), shall be effective as of December 18, 2014, subject to obtaining Bankruptcy Court approval in this Case; provided, however, that either party may, in its sole discretion and without any liability arising therefrom, terminate this Engagement in the event that (a) a final order authorizing the employment of SOLIC as financial advisors for the Company (the "Order") is not issued by the Bankruptcy Court in this Case on or before one hundred twenty (120) days from the date hereof on the terms and conditions set forth herein or on such other terms and conditions as are satisfactory to SOLIC, or (b) the application of the Company seeking the Order is denied by the Bankruptcy Court in this Case.  In such event, the Company hereby agrees to withdraw, promptly upon SOLIC's request, any application filed or to be filed with the Bankruptcy Court to retain SOLIC's services in this Case.

Energy Future Holdings Corp.
December 18, 2014

Specifically, the terms and conditions of our engagement and the services that it is anticipated that SOLIC will provide are as follows:

1.  **Services.** Pursuant to this Engagement, SOLIC will provide a variety of financial advisory and other services to the Company, at the direction of its Disinterested Directors, in connection with "Conflict Matters" as defined in and pursuant to the authority delegated to the Disinterested Directors pursuant to resolutions of the Company's Board of Directors attached hereto as Exhibit A (the "Resolutions"), including the determination by the Company's Disinterested Directors regarding whether any matter constitutes a Conflict Matter. Such services will include:

    (a) Reviewing bid procedures and progress in developing a plan of reorganization;
    (b) reviewing inter-company claims between the Company and other affiliates;
    (c) reviewing financial elements pertaining to key tax issues;
    (d) reviewing financing proposals received to date and future financing needs of the Company; and
    (e) such other matters as may be agreed upon which are consistent with SOLIC's experience.

    It is the parties' desire that SOLIC rely on the work of the Company's legal and other financial advisors to provide the basis of any reviews and analysis provided hereunder unless *de novo* analysis is required and approved by the Disinterested Directors. For purposes hereof, "*de novo* analysis" shall mean any analysis where SOLIC is required to undertake independent review of source documentation or data (i.e., documents or data other than actual reports and analyses prepared by the Company's other advisors) or the development of new independent analyses as directed by the Disinterested Directors. For the sake of clarification, any reviews performed by SOLIC on existing work product produced by the Company's legal and other financial advisors will not constitute *de novo* analysis.

2.  **Information.** In connection with SOLIC's activities hereunder, the Company agrees to cooperate with SOLIC and will use its good faith efforts to furnish to, or cause to be furnished to, SOLIC all information and data concerning the Company (the "Information") which SOLIC reasonably deems appropriate and will use its good faith efforts to assist SOLIC in obtaining access to the Company's officers, directors, employees and advisors, as necessary

    The Company acknowledges and agrees that the Company's management is responsible for supplying materially complete and accurate Information, representations, and books and records upon which we must rely in providing our services to the Company. The Company agrees to promptly notify SOLIC if the Company believes that any Information which was previously provided to SOLIC has become materially misleading. The Company acknowledges and agrees that, in rendering its services hereunder, SOLIC will be using and relying on Information (and information available from public sources and other sources deemed reliable by SOLIC) without independent verification thereof or independent appraisal or evaluation of the Company, or any other party. SOLIC does not assume responsibility for the accuracy or completeness of Information or any other information regarding the Company. SOLIC will have no obligation to update any report(s) that it may produce or to revise the information contained therein because of events and transactions occurring subsequent thereto. It is further understood that any advice rendered by SOLIC pursuant to its Engagement hereunder, including any advice rendered during the course of participating in negotiations and meetings with the Company and its representatives, as well as any written materials provided by SOLIC, are intended solely for the

2

Energy Future Holdings Corp.
December 18, 2014

benefit and use of the Company, its Disinterested Directors and professionals, and may not be relied upon by any other person or entity without SOLIC's prior written consent.

3.   Compensation.  In consideration of SOLIC's efforts, SOLIC shall be compensated as follows by the Company and/or from the Company's estate (subject to allowance and approval by the Bankruptcy Court):

SOLIC will be paid a monthly fixed fee payment of $200,000 (the "Monthly Fee"), via wire transfer per the wire instructions set forth on Exhibit B attached hereto, with the first payment (including the pro-rated Monthly Fee for the period December 18 through December 31, 2014 and any other accrued but unpaid Monthly Fees for periods thereafter) to be made upon the Court's approval of SOLIC's retention and, thereafter, in advance on the first day of each month during the term of our Engagement hereunder.  The parties hereto hereby agree that the Monthly Fee may be reviewed and potentially adjusted prospectively, if appropriate, based upon mutual agreement, taking into account, among other things, the contribution of SOLIC's professionals to the Case, the aggregate work performed over the course of the Engagement, and such other factors as may be mutually agreed upon, and as approved by the Bankruptcy Court, if necessary.

In addition to the Monthly Fees, if SOLIC is requested by the Company and the Disinterested Directors, to perform any "de novo analysis" or to provide litigation support or testimony (or support thereof) in support of any litigation matters, such services will be provided at SOLIC's standard billing rates as set forth on Exhibit C pursuant to a budget agreed upon by SOLIC and the Disinterested Directors on behalf of the Company and any such related fees and expenses will be subject to Bankruptcy Court approval and be paid in accordance with the following paragraph.

SOLIC will be reimbursed monthly for all of its reasonable and documented expenses and hourly fees, if any, related to this Engagement, including travel, document production, reasonable fees and expenses of our legal counsel (other than the cost of internal legal counsel), including amounts attributable to our obligation to respond to discovery requests, participate in depositions or appear in court in connection with services under this Engagement Letter, and other costs incurred in providing the services hereunder.

SOLIC understands that the Company will seek authorization of the Bankruptcy Court for it to fulfill its obligations under this Engagement Letter.

The Company has been informed that SOLIC intends to apply for compensation for professional services to be rendered in connection with this Case and for reimbursement of expenses incurred, in accordance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules and the Local Bankruptcy Rules of the United States Bankruptcy Court for the District of Delaware and any applicable order of the Bankruptcy Court (the "Payment Rules").  Payment of fees and reimbursement of expenses will be subject to ultimate allowance and approval by the Bankruptcy Court.  SOLIC will maintain internal time records for all work performed for the Company.  The request for Bankruptcy Court approval of our retention, and the proposed order to be submitted in connection therewith, shall be provided to SOLIC prior to submission and must be acceptable to SOLIC in its sole discretion.

3

Energy Future Holdings Corp.
December 18, 2014

To the extent that, at any time during this Case, the Bankruptcy Court reviews any of the terms of this Engagement Letter, such review shall be subject to the standard of review of Section 328(a) of the Bankruptcy Code and the Payment Rules, and not subject to any other standard of review under Section 330 of the Bankruptcy Code. SOLIC will submit reasonably detailed invoices and statements of expenses to the Company in accordance with that certain *Order Establishing Professional Interim Compensation Procedures* entered in the Case. Because SOLIC does not ordinarily maintain contemporaneous time records in one-tenth hour (0.1) increments, the Company agrees to request that SOLIC be excused from compliance with such requirements and should be required only to maintain time records in half-hour (0.50) increments setting forth, in a summary format, a description of services rendered by each professional and the amount of time spent on each date by each such individual in rendering services on behalf of the Company.

In agreeing to these provisions, the Company acknowledges that it believes that our general restructuring experience and expertise will inure to the benefit of the Company and that the value to the Company and/or its constituents derives in substantial part from that expertise and experience and that, accordingly, the structure and amount of fees above are reasonable, regardless of the number of hours to be expended by our professionals in the performance of the services to be provided hereunder.

4.   Termination. SOLIC's engagement hereunder may be terminated by either the Company or SOLIC at any time, with or without cause, upon 30 days' written notice to the other party; provided, however, that no such termination will affect SOLIC's right to expense reimbursement or the payment of any accrued and unpaid fees pursuant to Section 3 hereof or the Indemnity Agreement (as defined below), and the provisions related thereto contained in this Engagement Letter will survive the expiration or termination of this engagement. Furthermore, if the Order is not obtained, or is later reversed or set aside for any reason, SOLIC may terminate this Engagement Letter and SOLIC shall be reimbursed for all fees and expenses reasonably incurred prior to the date of expiration or termination.

5.   Collection. In the event SOLIC prevails in any action to enforce collection of amounts due or other rights under this Engagement Letter, SOLIC's reasonable legal fees and other collection costs incurred by SOLIC, plus interest on amounts otherwise due but unpaid at the prime rate (Bank of America prime) plus 2 percent until paid, shall be paid by the Company and/or the Company's estate.

6.   Governing Law. This Engagement Letter will be deemed made in New York and will be governed by the laws of the State of New York. The Company and SOLIC irrevocably submit to the jurisdiction of the Bankruptcy Court as long as the Case is open, and once the Case is closed, to any court of the State of New York or the United States District Court for the Southern District of New York (Manhattan Division), for the purpose of any suit, action or other proceeding arising out of this Engagement Letter, or any of the agreements or transactions contemplated hereby, which is brought by or against the Company. Each of the Company and SOLIC hereby knowingly, voluntarily and irrevocably waives any right it may have to a trial by jury in respect of any claim based upon, arising out of or in connection with, this Engagement Letter and the transactions contemplated hereby). SOLIC will act under this Engagement Letter as an independent contractor with duties solely to the Company. Because we will be acting on the Company's behalf in this capacity, it is our practice to receive indemnification. A copy of our standard indemnity form is attached hereto as Exhibit D ("Indemnity Agreement"). The terms of

4

Energy Future Holdings Corp.
December 18, 2014

the Indemnity Agreement are incorporated by reference into this Engagement Letter. In no event will SOLIC's liability in connection with this Engagement Letter exceed the total fees paid to SOLIC hereunder. In no event shall SOLIC, the Company or their respective personnel be liable for consequential, special, indirect, incidental, punitive or exemplary loss, damage or expense relating to this Engagement.

7.  **Successors and Assigns.** This Engagement Letter shall be binding upon and inure to the benefit of the parties hereto, their respective successors and assigns. Neither party may delegate or assign its rights or obligations under this Engagement Letter without the written consent of the other party.

8.  **Review.** The services to be provided by SOLIC hereunder will not constitute (a) a fairness or solvency opinion or (b) a compilation, examination, review or audit of any entity's information, financial or otherwise, historical or prospective, as described in the pronouncements on professional standards issued by the American Institute of Certified Public Accountants. In addition, SOLIC does not make any predictions or provide any opinions or other assurances concerning the outcome of future events, including, without limitation, those that pertain to the operating results of any entity, the achievability of any business plan, the success of any investment, the recovery of any asset, or the ability to pay any debt. SOLIC reserves the right to issue a tombstone announcement with respect to SOLIC's involvement in connection with the Engagement consistent with the Order.

9.  **Limitations.** This Engagement Letter does not create, and will not be construed as creating, rights enforceable by any person or entity not a party hereto, except those entitled thereto by virtue of the Indemnity Agreement. The Company acknowledges and agrees that (a) SOLIC will act as an independent contractor and is being retained solely to assist the Company and the Disinterested Directors and, unless separately requested by the Company, that SOLIC is not being retained to provide a formal opinion as to any possible restructuring or outcome, (b) nothing in this Engagement Letter or in the nature of services in connection with the Engagement or otherwise shall be deemed to create a fiduciary duty or fiduciary or agency relationship between SOLIC and the Company, or any other party, (c) SOLIC is a professional advisor to the Company and is not and will have no duties or liabilities to the equityholders or creditors of the Company, any affiliate of the Company or any other person by virtue of this Engagement Letter and the retention of SOLIC hereunder (other than as set forth herein), all of which duties and liabilities are hereby expressly waived, and (d) any advice rendered by SOLIC does not constitute a recommendation to any creditor or stakeholder that such creditor or stakeholder might or should take in connection with a possible restructuring; provided, however, this clause (d) shall not apply to the advice rendered by SOLIC to the Disinterested Directors as part of the services provided under the terms of this Engagement Letter. Neither equityholders nor creditors of the Company are intended beneficiaries hereunder. The Company recognizes and acknowledges that by performing the services set forth in this Engagement Letter, SOLIC is not acting in any management capacity and that Company has not requested SOLIC to make, nor has SOLIC agreed to make, any business decisions on behalf of the Company. All decisions about the business of the Company remain the sole responsibility of the Company (and to the extent applicable, the Disinterested Directors). The Company and each Disinterested Director hereby expressly acknowledges that SOLIC does not guarantee, warrant, or otherwise provide any assurances that the Company will restructure successfully. SOLIC is not a law, accounting, tax, or actuarial firm and will not be providing any legal, accounting, tax advice, or actuarial services

5

47349969v2

Energy Future Holdings Corp.
December 18, 2014

hereunder. In addition, the Company confirms that it will rely on its own counsel for legal advice. SOLIC's services are not designed, nor should they be relied upon, to disclose internal weaknesses in internal controls, financial statement errors, irregularities, illegal acts or disclosure deficiencies.

10.  **Counterparts.** This Engagement Letter, and any modification or amendment thereto, may be executed in counterparts, each of which will be deemed an original and all of which will constitute one and the same instrument.

11.  **Notices.** All correspondence and notices shall be sent to the parties as listed hereafter or to such other persons or addresses as may be given by one party to the other, and will be deemed effective the earlier of actual delivery or three days after mailing.

<u>Personal and Confidential</u>

The Honorable Donald L. Evans
Executive Chairman
Energy Future Holdings Corp.
1601 Bryan St., 41st Floor
Dallas, Texas 75201

with a copy to:

General Counsel
Energy Future Holdings Corp.
1601 Bryan St., 41st Floor
Dallas, Texas 75201


Neil F. Luria
Senior Managing Director
SOLIC Capital Advisors, LLC
1603 Orrington Avenue
Suite 1600
Evanston, IL 60201

13.  Entire Agreement. This Engagement Letter is the entire agreement between the parties pertaining to its or their subject matter and supersedes all prior agreements, representations and understandings of the parties. No modification of this Engagement Letter shall be binding unless agreed to in writing by the parties.

14.  Retention Application. The Company agrees to file the necessary retention applications in the Bankruptcy Court in order to properly retain SOLIC in accordance with the terms set forth in this letter.

47349969v2

Energy Future Holdings Corp.
December 18, 2014

If this Engagement Letter meets with your approval, please indicate your consent and agreement to be bound by the terms of this Engagement Letter by executing the attached copy and forwarding it to me.

Very truly yours,

SOLIC CAPITAL ADVISORS, LLC

By: _/s/ Neil F. Luria_ _____
     Neil F. Luria
     Senior Managing Director

ACKNOWLEDGED AND AGREED:

ENERGY FUTURE HOLDINGS CORP.

By: _/s/ Donald L. Evans_ _____
     Donald L. Evans
     Executive Chairman
     Board of Directors
     Energy Future Holdings Corp.

Date: December 18, 2014

47349969v2

Energy Future Holdings Corp.
December 18, 2014

**Exhibit "A"** (to Engagement Letter)

Energy Future Holdings Corp.
December 18, 2014

## ENERGY FUTURE HOLDINGS CORP. ("EFH")
### BOARD OF DIRECTORS RESOLUTIONS
### DECEMBER 9, 2014

The following recitals and resolutions supplement the Board of Directors Resolutions dated as of November 7, 2014 ("November 7th Resolutions") and, in the event of any inconsistency, these resolutions shall supersede and control.

WHEREAS, EFH and certain of its direct and indirect subsidiaries (excluding Oncor Electric Delivery Holdings Company LLC and its subsidiaries), including TCEH (the "Debtors") on April 29, 2014, filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code ("Chapter 11 Case") in the Bankruptcy Court for the District of Delaware ("Bankruptcy Court");

WHEREAS, the members of the Board of Directors of EFH ("Board") having relationships or interests with other affiliated or related companies and their direct or indirect equity holders and other material relationships have disclosed certain facts that they believe to be material to the Board;

WHEREAS, as described in the material presented and reviewed by the Board and based on a review of the known facts and circumstances, the Board has determined and confirmed by the November 7th Resolutions that Donald L. Evans and Billie I. Williamson are the only current members of the Board that are disinterested with respect to any matter pertaining to the Chapter 11 Case on which an actual conflict exists between EFH, on the one hand, and any other Debtor, on the other hand ("Conflict Matters"), and were designated the Disinterested Directors ("Disinterested Directors") as set forth in *Stipulation and Agreed Order Regarding a Protocol for Certain Case Matters*, approved by the Bankruptcy Court on September 16, 2014 ("Stipulation");

WHEREAS, the members of the Board considered the Stipulation related to, among other things, the authority of the Disinterested Directors to retain independent legal counsel and other advisors under certain circumstances;

WHEREAS, the Board resolved by the November 7th Resolutions to delegate the authority to the Disinterested Directors to seek and retain, at EFH's sole expense, independent legal counsel and such other advisors ("Independent Advisors") as the Disinterested Directors deem necessary to represent and advise EFH, reporting to the Disinterested Directors, on the Conflict Matters;

WHEREAS, the Disinterested Directors interviewed and engaged certain Independent Advisors effective as of November 19, 2014 to represent and advise EFH, and reporting solely to the Disinterested Directors, as set forth herein; and

WHEREAS, pursuant to the Stipulation and Section 21.416 of the Texas Business Organizations Code, the members of the Board desire to delegate to the Disinterested Directors certain rights, authority, and powers in connection with Conflict Matters, among other matters set forth herein;

NOW, THEREFORE, BE IT,

RESOLVED that, to the fullest extent permitted by applicable law, the Board hereby delegates to the Disinterested Directors the authority to review and act upon (as set forth herein) any Conflict Matters; and further

RESOLVED that, to the fullest extent permitted by applicable law, the Board hereby delegates to the Disinterested Directors the authority to investigate and determine whether any matter constitutes a Conflict Matter, in the exercise of their business judgment and with the advice of the Independent Advisors, and any such determination shall be binding on EFH and EFH's subsidiaries (other than Energy Future Intermediate Holding Company LLC and its direct and indirect subsidiaries and

Energy Future Holdings Corp.
December 18, 2014

Energy Future Competitive Holdings Company LLC and its direct and indirect subsidiaries (the "Excluded Subsidiaries")); and further

RESOLVED that, to the fullest extent permitted by applicable law, the Board hereby delegates to the Disinterested Directors the authority to make all decisions, and to implement or direct the implementation of all such decisions, in each case on EFH's behalf, with respect to Conflict Matters as the Disinterested Directors deem appropriate, in the exercise of their business judgment and with the advice of the Independent Advisors or others with whom the Disinterested Directors determine it is appropriate or necessary to consult, and to act on behalf of and bind EFH in connection therewith, including taking action on EFH's behalf, as the direct and indirect holder of 100% of the equity interests in its subsidiaries, causing such subsidiaries (other than the Excluded Subsidiaries) to abide by and implement the decisions and actions of the Disinterested Directors with respect to Conflict Matters and the Disinterested Directors' determination of whether a matter constitutes a Conflict Matter; and further

RESOLVED that the Disinterested Directors will update the Board at board meetings on the status of their (i) review of and decisions on whether any matter constitutes a Conflict Matter, and (ii) review of and decisions on Conflict Matters, in each case in the manner that the Disinterested Directors determine is appropriate and necessary to fulfill their duties and obligations as the Disinterested Directors, taking into account the confidentiality or privilege of the Disinterested Directors' work and the advice of the Independent Advisors; and further

RESOLVED that EFH shall, as the direct and indirect holder of 100% of the equity interests in its subsidiaries, direct and cause each of such subsidiaries (other than the Excluded Subsidiaries) to abide by and comply with these resolutions; and further

RESOLVED that the officers, employees, advisors and agents of EFH (collectively, the "Authorized Persons"), acting alone or with one or more other Authorized Persons, be, and hereby are, directed to furnish to the Disinterested Directors and the Independent Advisors all information as the Disinterested Directors or the Independent Advisors may request, in a manner that shall not effect a waiver of any applicable privilege, and to cooperate with the Disinterested Directors and the Independent Advisors in all respects; and further

RESOLVED that any Authorized Person, acting alone or with one or more other Authorized Persons be, and hereby are, authorized, empowered and directed to implement any decision made by the Disinterested Directors in respect of a Conflict Matter on behalf of EFH as directed by the Disinterested Directors; provided that the Disinterested Directors retain the right to implement any such decision on behalf of EFH and its subsidiaries (other than the Excluded Subsidiaries) themselves or through the Independent Advisors; and further

RESOLVED that any Authorized Person, acting alone or with one or more other Authorized Persons be, and they hereby are, authorized, empowered and directed to take any and all action that they deem necessary or proper to assist the Disinterested Directors in carrying out the foregoing, in each case as requested by and under the direction of the Disinterested Directors; and further

RESOLVED that the Disinterested Directors shall control any attorney-client, work product, or other privilege belonging to EFH in connection with the Independent Advisors or their work or privileged communications on the Conflict Matters and on whether any matter constitutes a Conflict Matter; and further

RESOLVED that each member of the Board has agreed and hereby agrees that he or she shall not have access to, and shall not seek access to, and hereby directs that each Authorized Person shall not have access to and shall not seek access to, the work or privileged material of the Independent

2

Case 14-10979-CSS   Doc 3448-1   Filed 02/05/15   Page 20 of 25

Energy Future Holdings Corp.
December 18, 2014

Advisors on the Conflict Matters or on whether any matter constitutes a Conflict Matter, except as permitted by the Disinterested Directors; and further

RESOLVED that the Disinterested Directors be, and hereby are, authorized to take all such further action, at EFH's expense, as the Disinterested Directors shall deem necessary, proper or advisable consistent with these resolutions or in order to carry out fully the intent and purposes of these resolutions; and further

RESOLVED that all actions previously done or approved, or caused to be done or approved, by the Disinterested Directors or the Authorized Persons, including the retention of Independent Advisors, in each case only to the extent consistent with these resolutions, or to otherwise carry out the intent of these resolutions, be and hereby are approved, adopted, confirmed and ratified in all respects.

3

Energy Future Holdings Corp.
December 18, 2014

**Exhibit "B"** (to Engagement Letter)

Wiring Instructions

Please direct wire to:

|  |  |
|---|---|
| Account Name: | SOLIC Capital Advisors, LLC |
| Account Number: | 3800869411 |
| Bank: | Northern Trust Bank |
| Address: | 50 S. LaSalle, Chicago, IL 60675 |
| ABA#: | 071000152 |
| SWIFT: | CNORUS44 |
| | |
| Beneficiary Name: | SOLIC Capital Advisors, LLC |

47349969v2

Energy Future Holdings Corp.
December 18, 2014

**Exhibit "C"** (to Engagement Letter)

Standard Hourly Rates

| | |
|---|---|
| Senior Managing Directors | $750-895/hr |
| Managing Directors | $695-825/hr |
| Directors | $550-695/hr |
| Associate Directors | $450-550/hr |
| Managing Consultants | $350-450/hr |
| Consultants/Associates | $245-350/hr |
| Paraprofessionals | $95-125/hr |

47349969v2

Energy Future Holdings Corp.
December 18, 2014

**Exhibit "D"** (to Engagement Letter)

December 18, 2014

SOLIC Capital Advisors, LLC
1603 Orrington Avenue
Suite 1600
Evanston, IL  60201

Ladies and Gentlemen:

This agreement will confirm that Energy Future Holdings Corp. (the "Company"), has engaged SOLIC Capital Advisors, LLC ("SOLIC") to advise and assist it in connection with the matters referred to in our engagement letter, dated of even date herewith (the "Engagement Letter"). Capitalized terms used herein without definition shall have the meanings ascribed to them in the Engagement Letter. In connection with the terms of the Engagement Letter (the "Engagement"), the Company agrees to indemnify and hold harmless SOLIC and its affiliates and their respective members, officers, directors, employees and agents and each other person, if any, controlling SOLIC or any of its affiliates and their respective successors, assigns, independent contractors, agents, heirs and personal representatives (each referred to herein as a " SOLIC Indemnified Person") to the fullest extent permitted by law from and against any losses, claims, damages, obligations, penalties, judgments, awards, costs, disbursements or liabilities, including amounts paid in settlement (collectively, "Losses"), based upon, related to, arising out of or in connection the Engagement and will reimburse each SOLIC Indemnified Person for all expenses (including fees and expenses of counsel) ("Expenses") as they are incurred in connection with investigating, preparing, pursuing or defending any action, claim, suit, investigation, or proceeding related to, arising out of or in connection with the Engagement, whether or not pending or threatened and whether or not any SOLIC Indemnified Person is a party. Notwithstanding the foregoing, (i) in no event shall the Company be responsible for any Losses or Expenses that arise out of or in connection with the Engagement to the extent such Losses or Expenses are finally judicially determined to have resulted from the willful misconduct, bad faith or gross negligence of SOLIC or any other SOLIC Indemnified Person and (ii) if any SOLIC Indemnified Person to whom such Expenses have been advanced shall be determined pursuant to clause (i) to not be eligible for reimbursement of such Expenses, such SOLIC Indemnified Person shall promptly repay such expenses to the Company. If any litigation, investigation or proceeding is commenced as to which SOLIC proposes to demand indemnification, SOLIC will notify the Company with reasonable promptness; provided, however, that any failure by SOLIC to notify the Company will relieve the Company from their obligations hereunder only to the extent the Company have been materially prejudiced by such failure or delay.

The Company will, if requested by any SOLIC Indemnified Party, assume the defense of any proceeding in respect of which indemnity may be sought hereunder, including the employment of counsel reasonably satisfactory to SOLIC and the payment of the fees and expenses of such counsel, in which event, except as provided below, the Company shall not be liable for the fees and expenses of any other counsel retained by any SOLIC Indemnified Party in connection with such proceeding. In any such proceeding the defense of which the Company shall have so assumed, any SOLIC Indemnified Party shall have the right to participate in such Proceeding and to retain its own counsel, but the fees and expenses of such counsel shall be at the expense of such SOLIC Indemnified Party unless (i) the Company and such

Energy Future Holdings Corp.
December 18, 2014

SOLIC Indemnified Party shall have mutually agreed in writing to the retention of such counsel or (ii) the named parties to any such proceeding (including any impleaded parties) include such SOLIC Indemnified Party and representation of the Company and such SOLIC Indemnified Party by the same counsel would, in the opinion of counsel to such SOLIC Indemnified Party, be inappropriate due to actual or potential conflicts of interests between the Company and such SOLIC Indemnified Party, including situations in which there are one or more legal defenses available to the SOLIC Indemnified Party that are different from or additional to those available to the Company. The Company shall not be liable for any settlement of any proceeding effected without its written consent, such consent not to be unreasonably withheld, but if settled with such consent or if there is a final judgment against an SOLIC Indemnified Party, the Company agrees to indemnify the SOLIC Indemnified Party from and against any Loss by reason of such settlement or judgment.

If, for any reason, the foregoing indemnification is unavailable to any of the SOLIC Indemnified Parties or is insufficient to hold them harmless in respect of any Losses or Expenses, then the Company will contribute to the amount paid or payable by any of the SOLIC Indemnified Parties as a result of such Losses and Expenses in such proportion as is appropriate to reflect the relative benefits (or anticipated benefits) to the Company and the Disinterested Directors on the one hand and the SOLIC Indemnified Parties on the other hand, but also the relative fault of the Company and the Disinterested Directors, and their shareholders, members, agents and advisers (other than SOLIC) on the one hand and the SOLIC Indemnified Parties on the other hand, as well as any other relevant equitable considerations. The relative benefits received (or anticipated to be received) by the Company and the Disinterested Directors on the one hand and by the SOLIC Indemnified Parties on the other hand will be deemed to be in the same proportion as such benefit bears to the total fees paid to SOLIC pursuant to the Engagement Letter. The relative fault of any party or other person will be determined by reference to such party's or person's knowledge, access to information and opportunity to prevent or correct any misstatement, omission, misconduct or breach of duty. In no event will the amount required to be contributed by the SOLIC Indemnified Parties hereunder exceed the total amount of fees paid to SOLIC pursuant to the Engagement Letter. You and we agree that it would not be just and equitable if contribution were determined by pro rata allocation or by any other method of allocation which does not take account of the equitable considerations referred to above.

The reimbursement, indemnity and contribution obligations of the Company hereunder will (i) be in addition to any liability which the Company may otherwise have, (ii) survive the completion or termination of SOLIC's engagement under the Engagement Letter and (iii) shall be binding upon any successors and assigns of the Company.

The Company agree that without the prior written consent of SOLIC, the Company will not consent, settle, compromise, consent to the entry of any judgment in or otherwise seek to terminate any action, claims, suit or proceeding in respect of which indemnification may be sought hereunder (whether or not any SOLIC Indemnified Person is a party thereto) unless (i) such settlement, compromise, consent or termination includes an unconditional release of each SOLIC Indemnified Person from all claims and liabilities arising out of such action, claim, suit or proceeding and (ii) there is no statement in connection therewith as to an admission of fault, culpability or failure to act by or on behalf of any SOLIC Indemnified Party.

The provisions of this agreement shall apply to the Engagement and any modification thereof and shall remain in full force and effect regardless of any termination or the completion of your services under the Engagement Letter.

This agreement will be deemed made in New York. The validity and interpretation of this agreement will be governed by, and construed and enforced in accordance with, the laws of the State of New York applicable to agreements made and to be fully performed therein (excluding the conflicts of laws rules).

47349969v2                                                    2

Energy Future Holdings Corp.
December 18, 2014

So long as the Case (as that term is defined in the Engagement Letter) is open, the Company and SOLIC irrevocably submit to the jurisdiction of the Bankruptcy Court with respect to any suit, action or proceeding arising out of the Engagement.  However, once the Case is closed, the Company irrevocably submit to the jurisdiction of any court of the State of New York or the United States District Court of the Southern District of the State of New York (Manhattan Division) for the purpose of any suit, action or other proceeding arising out of this agreement which is brought by or against the Company.  Each of the Company and SOLIC hereby knowingly, voluntarily and irrevocably waives any right it may have to a trial by jury in respect of any claim based upon, arising out of or in connection with this agreement.

Very truly yours,

ENERGY FUTURE HOLDINGS CORP.

By: /s/ Donald L. Evans
       Name:  Donald L. Evans
       Title:    Executive Chairman
                    Board of Directors
                    Energy Future Holdings Corp.

Date:  December 18, 2014

Accepted and agreed to:

SOLIC CAPITAL ADVISORS, LLC

By: /s/ Neil F. Luria
       Neil F. Luria
       Senior Managing Director

Date:  December 18, 2014

47349969v2                                    3