## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) Case No. 14-10979 (CSS) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |
| | ) **Objection Deadline: July 23, 2015 at 4:00 p.m.** |
| | ) **Hearing Date: August 11, 2015 at 9:30 a.m.** |

### EFIH DEBTORS' PARTIAL OBJECTION TO PROOF OF CLAIM NO. 6347 FILED BY THE INDENTURE TRUSTEE FOR THE EFIH UNSECURED NOTES

Energy Future Intermediate Holding Company LLC ("EFIH") and EFIH Finance Inc. (together with EFIH the "EFIH Debtors"), file this partial objection to Proof of Claim No. 6347 ("PIK Claim") filed by UMB Bank, N.A., as indenture trustee for the unsecured 11.25%/12.25% Senior Toggle Notes Due 2018 ("PIK Notes"). Among other amounts, the PIK Claim seeks "premiums, the Applicable Premium, pre-payment penalties, make-whole premiums, [and/or] call premiums" and "interest . . . arising from and after[] April 29, 2014 . . . ."

The EFIH Debtors object to the PIK Claim because it seeks (i) an Applicable Premium under section 3.07(a) of the PIK Indenture or (ii) an Optional Redemption Price under section 3.07(d) of the PIK Indenture. Under the plain text of the Indenture, the Court's March 26, 2015 Summary Judgment Ruling (No. 14-50363, Adv. D.I. 245), and relevant caselaw, no premium is owed under these circumstances where the PIK Notes were automatically accelerated in

---

[1] The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, for which joint administration has been granted, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

bankruptcy. The PIK Claim for these amounts should be denied under section 502(b)(1) of the Bankruptcy Code. (*See* Part I, *infra*.)

The EFIH Debtors further object to the PIK Claim because it seeks postpetition interest at the rate specified in the PIK Indenture. Postpetition interest on the unsecured PIK Notes is disallowed under section 502(b)(2) as unmatured interest. Notwithstanding this clear language to the contrary, some courts have awarded postpetition interest on unsecured claims when the debtor is solvent. The majority view, and more persuasive view, is that this postpetition interest should be awarded, if at all, only at the federal judgment rate, not at the rate specified in the contract. Accordingly, the PIK Claim for postpetition interest at the contract rate should be disallowed. (*See* Part II, *infra*.)

In further support of this Objection, the Debtors respectfully state as follows.

### Jurisdiction and Venue

1.      The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference from the United States District Court for the District of Delaware, dated February 29, 2012. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Debtors consent pursuant to Local Bankruptcy Rule 9013-1(f) to the entry of a final order by the Court in connection with this Objection to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The statutory bases for the relief requested in this Objection are section 502(b) of title 11 of the United States Code (the "Bankruptcy Code"), and rules 3001, 3003, and 3007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

### The Parties

4.      Energy Future Intermediate Holding Company LLC is a limited liability company organized under the laws of the State of Delaware and EFIH Finance Inc. is a corporation also organized under the laws of the State of Delaware.  On April 29, 2014 (the "Petition Date"), the Debtors, including the EFIH Debtors, filed voluntary petitions in the United States Bankruptcy Court for the District of Delaware for protection under chapter 11 of the United States Bankruptcy Code.

5.      UMB Bank, N.A., (the "PIK Trustee") serves as the trustee pursuant to that certain Indenture, dated as of December 5, 2012, as amended and supplemented by the First Supplemental Indenture, dated as of December 19, 2012, the Second Supplemental Indenture, dated as of January 29, 2013, and the Third Supplemental Indenture, dated as of January 30, 2013 (collectively the "PIK Indenture") by and among the EFIH Debtors, as issuers, and the Bank of New York Mellon Trust Company, N.A., the predecessor to the PIK Trustee, pursuant to which EFIH issued the 11.25%/12.25% unsecured senior toggle notes due December 1, 2018.

### Background and Schedules

6.      The EFIH Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  The Court has entered a final order for joint administration of these chapter 11 cases.  (D.I. 849.)  The Court has not appointed a trustee.  Further information regarding the Debtors' business operations and capital structure is set forth in the declaration of Paul Keglevic in support of the Debtors' first day motions.  (D.I. 98.)

7.      On June 30, 2014, the Debtors filed their schedules of assets and liabilities and statements of financial affairs.  (D.I. 1237–1307, 1319–1329, 1331–1343, 1345.) On September 26, 2014, the Debtors filed their amended schedules and statements of financial affairs (D.I. 2146-2216), addressing certain discrete issues.

8.      On August 18, 2014, the Court entered an order (the "General Bar Date Order") establishing October 27, 2014, at 5:00 p.m. (prevailing Eastern Time) (the "General Bar Date"), as the final date and time for all persons and entities holding or asserting a claim against the Debtors arising on or before the Petition Date to file proofs of claim in these chapter 11 cases, except for claims specifically exempt from complying with the General Bar Date as set forth in the General Bar Date Order, and approving the form and manner of notice of the General Bar Date.  (D.I. 1866.)

9.      Written notice of the General Bar Date was mailed to, among others, all known creditors and other known holders of claims against the Debtors as of the date of entry of the General Bar Date Order, including all entities listed in the Schedules as holding claims against the Debtors, and to all parties who had filed requests for notices under Bankruptcy Rule 2002 as of the date of the General Bar Date Order.  In addition to mailing such actual notice, the Debtors also published notice of the General Bar Date in more than 200 publications nationwide, as detailed in Exhibit 4 to the Bar Date Order.

## Proof of Claim

10.     On October 23, 2014, the PIK Trustee filed Proof of Claim No. 6347 and an addendum, which is attached here as **Exhibit 1** ("PIK Claim").  The PIK Claim seeks a minimum of approximately $1.647 billion "plus interest, fees and other amounts arising in connection with the [PIK] Indenture (see addendum)." (PIK Claim, at 1.)  The addendum to the PIK Claim states, in relevant part, that the PIK Trustee seeks $1,566,234,000.00 in principal,

$81,030,856.25 in accrued interest, and $109,431.96 in accrued fees in expenses based on the EFIH PIK Notes. (PIK Claim, at ¶ 4.)

11.    The addendum to the PIK Claim also states:

> This Master Proof of Claim makes claim to all amounts – whether liquidated or unliquidated – due under or relating to the EFIH Senior Toggle Notes or arising under the Indenture on behalf of the Claimant and the Noteholders, including, but not limited to, principal, ***premiums, the Applicable Premium, pre-payment penalties, make-whole premiums, call premiums, interest***, fees, costs, and expenses outstanding as of, and arising from and after, April 29, 2014.

(*Id.* (emphasis added).)

## Relief Requested

12.    By this Objection and pursuant to Bankruptcy Rule 3007, the EFIH Debtors request that the Court enter an order under Section 502 of the Bankruptcy Code, disallowing the PIK Claim to the extent it seeks any premium owed upon an optional redemption of the PIK Notes or seeks postpetition interest at the rate specified in the PIK Indenture. This Objection does not affect any other part of the PIK Claim, but the EFIH Debtors reserve their rights to file any future objections to the amounts remaining under the PIK Claim ("Remaining Claim") and to otherwise contest the Remaining Claim.

## The PIK Claim

### A.    The Governing Indenture

13.    On December 5, 2012, EFIH and the PIK Trustee entered into an indenture, pursuant to which EFIH issued $1,144,770,000 aggregate principal amount of PIK Notes. EFIH subsequently issued an additional $159,032,000 aggregate principal amount of PIK Notes under a First Supplemental Indenture dated as of December 19, 2012, an additional $63,930,000 aggregate principal amount of PIK Notes under a Second Supplemental Indenture dated as of January 29, 2013, and an additional $24,713,000 aggregate principal amount of PIK Notes under

a Third Supplemental Indenture dated as of on January 30, 2013. Collectively, such indenture and supplemental indentures comprise the PIK Indenture, which is attached to Exhibit 1 as Exhibit A.

14.      The terms of the PIK Notes permit interest on the PIK Notes due before June 1, 2016, to be paid (i) in cash with a 11.25% interest rate, (ii) "in kind" with additional PIK Notes issued at a higher 12.25% interest rate, or (iii) half in cash and half in additional notes. (*See* PIK Indenture § 4.01; PIK Notes §§ 1, 2.) After June 1, 2016, interest must be paid only in cash. (*See* PIK Notes § 2.) Until the April 29, 2014 petition date, EFIH elected to pay the interest owed on the PIK Notes entirely "in kind" at the 12.25% rate.

15.      The PIK Indenture and the PIK Notes are governed by, and construed in accordance with, the laws of the State of New York, without regard to principles of conflicts of law. (*See* PIK Indenture § 12.08; PIK Notes § 15.)

16.      The PIK Notes provide for the payment of an "Applicable Premium" upon optional redemption before December 1, 2014. Section 3.07 of the PIK Indenture titled "Optional Redemption" states at 3.07(a):

> [P]rior to December 1, 2014, the Issuer may redeem, in whole or in part, the Notes at a redemption price equal to 100% of the principal amount of the Notes redeemed <u>plus</u> the Applicable Premium as of, and accrued and unpaid interest (including Additional Interest, if any) to, the date of the redemption (the "<u>Redemption Date</u>"), subject to the right of Holders of Notes of record on the relevant Record Date to receive interest due on the relevant Interest Payment Date.

17.      Section 1.1 of the PIK Indenture defines "Applicable Premium" as follows:

> "<u>Applicable Premium</u>" means, with respect to any Note on any Redemption Date, the greater of:
>
> (1) 1.0% of the principal amount of such Note; and
>
> (2) the excess, if any, of (a) the present value at such Redemption Date of (i) the redemption price of such Note at December 1, 2014 (such

redemption price as set forth in the table appearing under Section 3.07(d) hereof), plus (ii) all required interest payments (calculated based on the Cash Interest rate payable on the Notes) due on such Note through December 1, 2014 (excluding accrued and unpaid interest, if any, to the Redemption Date), computed using a discount rate equal to the Treasury Rate as of such Redemption Date plus 50 basis points; over (b) the principal amount of such Note.

18.     As of the filing date of this Objection, EFIH has not repaid the PIK Notes.

19.     The PIK Notes also provide that after December 1, 2014, EFIH may voluntarily "redeem" the notes at certain "redemption prices" ("Optional Redemption Price").  (*See* PIK Indenture § 3.07(d).)   For example, if the PIK Notes are "redeem[ed]" at any time between December 1, 2014, and December 1, 2016, EFIH must pay an Optional Redemption Price of an additional 5.6250% on the outstanding principal of the PIK Notes. *Id.*

20.     Like the First Lien Indenture,[2] section 6.01(a) of the PIK Indenture defines "Event of Default" and includes at subsections (6) and (7) certain definitions of an Event of Default that relate to insolvency and bankruptcy, including the filing of a bankruptcy petition.  (*See* PIK Indenture § 6.01(a)(6)(i) ("commences proceedings to be adjudicated bankrupt or insolvent").)

21.     Also like the First Lien Indenture, section 6.02 of the PIK Indenture defines "Acceleration" and specifies:

> [I]n the case of an Event of Default arising under clause (6) or (7) of Section 6.01(a) hereof, all principal of and premium, if any, interest (including Additional Interest, if any) and any other monetary obligations on the outstanding Notes shall be due and payable immediately without further action or notice.

---

[2] The "First Lien Indenture" and the "First Lien Notes" are the indenture and notes, respectively, at issue in the adversary proceeding No. 14-50363 and addressed in the Court's Findings of Fact and Conclusions of Law Regarding Cross-Motions for Summary Judgment, No. 14-50363, Adv. D.I. 245 (Mar. 26, 2015) and Findings of Fact and Conclusions of Law, No. 14-50363, Adv. D.I. 304 (July 8, 2015).

22.     Nothing in section 3.07(d), which sets forth the Optional Redemption Price, refers to this additional amount owed as a "premium."  And nothing in section 3.07(d), or any other provision of the Indenture, modifies the acceleration provision of section 6.02 to provide that the Optional Redemption Price is due after the PIK Notes automatically accelerated upon the EFIH's filing for chapter 11 protection.

23.     The Indenture also provides for Postpetition Interest:

> The Issuer shall pay interest (including post-petition interest in any proceeding under any Bankruptcy Law) on overdue principal at the rate equal to the then applicable interest rate on the Notes to the extent lawful; it shall pay interest (including post-petition interest in any proceeding under any Bankruptcy Law) on overdue installments of interest (including Additional Interest, if any) (without regard to any applicable grace period) at the same rate to the extent lawful.

(PIK Indenture § 4.01.)

**B.     Prior Litigation Regarding the EFIH PIK Notes**

24.     On December 16, 2014, the EFIH Debtors filed a complaint initiating an adversary proceeding and seeking a declaratory judgment, in relevant part, than neither an Applicable Premium nor an Optional Redemption Price would be owed on the PIK Notes and that any postpetition interest awarded would not accrue at the rate specified in the PIK Indenture. (Adv. No. 14-51002, D.I. 1.)  The Ad Hoc Committee of PIK Noteholders (and not the PIK Trustee) moved to dismiss the complaint as unripe.  (Adv. D.I. 7.)  Briefing was complete on this motion to dismiss by March 19, 2015, and the Court heard oral argument on May 4, 2015.

25.     On June 15, 2015, the Court issued an opinion and entered an order dismissing the adversary proceeding.  (Adv. D.I. 42.)  The opinion held, however, that the PIK Claim contains "a claim to those components of the Indenture, some of which have not been liquidated as of the filing of the PIK Claim" and explained that "nothing in this Opinion limits the EFIH Debtors' ability to object to the PIK Claim or to seek to liquidate such claim."  (*Id.* at 29-30.)

26.    Accordingly, this objection to the PIK Claim seeks to liquidate or disallow certain claims asserted by the PIK Trustee on behalf of the PIK Noteholders.

**C.    The Court's March 26, 2015 Summary Judgment Decision**

27.    The Court issued its Summary Judgment Decision in the adversary proceeding regarding the First Lien Notes on March 26, 2015. *See* Findings of Fact and Conclusions of Law Regarding Cross-Motions for Summary Judgment, No. 14-50363, Adv. D.I. 245 (Mar. 26, 2015) ("Summary Judgment Decision"). That Decision held, in relevant part, that "[t]he plain language of the [First Lien] Indenture does not require payment of an Applicable Premium upon a repayment of the Notes, following an acceleration under section 6.02 of the Indenture, arising from a default for the commencement of 'proceeding to be adjudicated bankrupt or insolvent' under section 6.01(a)(6)(i) of the Indenture." (Summary Judgment Decision ¶¶ 8(a).)

28.    The Summary Judgment Decision also found a genuine issue of material fact existed whether the automatic stay should be lifted to permit the First Lien Noteholders to lift the automatic stay. (*Id.* at 8(f).) On July 8, 2015, the Court held that no cause exists to lift the automatic stay. *See* Findings of Fact and Conclusions of Law, No. 14-50363, Adv. D.I. 304, ¶ 13 (July 8, 2015).

29.    This Objection does not implicate any lift-stay issues as the PIK Noteholders have not issued a rescission notice and have not sought to lift the automatic stay. Were the PIK Noteholders to raise any lift-stay issues, no cause exists to lift the automatic stay regarding the PIK Notes for the same reasons the Court found, in its July 8, 2015, decision, that no cause exists to lift the automatic stay regarding the First Lien Notes.

<u>Objection</u>

30.    A chapter 11 debtor "has the duty to object to the allowance of any claim that is improper." *Int'l Yacht & Tennis, Inc. v. Wasserman Tennis, Inc. (In re Int'l Yacht & Tennis,*

*Inc.)*, 922 F.2d 659, 661-62 (11th Cir. 1991); *see also* 11 U.S.C. §§ 704(a)(5), 1106(a)(1), and

1107(a).  Section 502(b) provides that the Court shall allow claims except to the extent: "(1) such

claim is unenforceable against the debtor and property of the debtor, under any agreement or

applicable law for a reason other than because such claim is contingent or unmatured; [or] (2)

such claim is for unmatured interest."  11 U.S.C. § 502(b)(1), (2).

31.      The burden of proof for determining the validity of claims rests on different

parties at different stages of the objection process.  As explained by the United States Court of

Appeals for the Third Circuit:

> The burden of proof for claims brought in the bankruptcy court
> under 11 U.S.C.A. § 502(a) rests on different parties at different
> times.  Initially, the claimant must allege facts sufficient to support
> the claim.  If the averments in his filed claim meet this standard of
> sufficiency, it is '*prima facie*' valid [citations omitted].  In other
> words, a claim that alleges facts sufficient to support legal liability
> to the claimant satisfies the claimants' initial obligation to go
> forward.  The burden of going forward then shifts to the objector to
> produce evidence sufficient to negate the *prima facie* validity of
> the filed claim. . . .  In practice, the objector must produce evidence
> which, if believed, would refute at least one of the allegations that
> is essential to the claim's legal sufficiency.  If the objector
> produces sufficient evidence to negate one or more of the sworn
> facts in the proof of claim, the burden reverts to the claimant to
> prove the validity of the claim by a preponderance of the evidence.

*In re Allegheny Int'l Inc.,* 954 F.2d 167, 173-74 (3d. Cir. 1992) (citation omitted).  Once the

*prima facie* validity of a Claim is rebutted, "it is for the claimant to prove his claim, not for the

objector to disprove it."  *In re Kahn*, 114 B.R. 40, 44 (Bankr. S.D.N.Y. 1990) (citations omitted).

**I.      The PIK Indenture Does Not Provide For An Applicable Premium Or Optional**
**Redemption Price In These Circumstances.**

32.      The PIK Claim seeks "premiums, the Applicable Premium, pre-payment

penalties, make-whole premiums, [and] call premiums."  (PIK Claim, at ¶ 4.)  This language,

expressly seeks the Applicable Premium due upon an optional redemption before December 1,

2014, under section 3.07(a) of the Indenture, and also clearly seeks an Optional Redemption Price, a kind of "prepayment penalty" or "make-whole premium" awarded based on an optional redemption after December 1, 2014, under section 3.07(c) of the PIK Indenture.

33.    The PIK Claim should be partially disallowed for these amounts under section 502(b)(1) because, under the plain and unambiguous language of the Indenture, this Court's March 26, 2015 Summary Judgment Decision, and the relevant case law, neither the Applicable Premium, nor the Optional Redemption Price is owed.

> **A.    The Indenture's Plain Text Controls and Demonstrates That Neither an Applicable Premium Nor an Optional Redemption Price Is Owed.**

34.    The PIK Indenture, like the First Lien Indenture, is unambiguous.  (Summary Judgment Decision ¶ 42.)  New York law requires that the Court not look "outside the four corners of a complete document to determine what the parties intended."  (*Id.* at ¶ 42 (citing *W.W.W. Assoc., Inc. v. Giancontieri*, 566 N.E.2d 639, 642 (N.Y. 1990); *R/S Assocs. v. N.Y. Job Dev. Auth.*, 771 N.E.2d 240, 242 (N.Y. 2002)).)

35.    Under the Indenture's unambiguous text, the EFIH Debtors do not owe an Applicable Premium for the plain reason that it is owed only if the PIK Notes are optionally redeemed before December 1, 2014.  (*See* PIK Indenture § 3.07(a).)  December 1, 2014, has passed, and the PIK Notes have neither been "optional[ly] redeemed" nor repaid in any way.  Accordingly, under no circumstances can the Applicable Premium be owed.

36.    Separate from the expiration of this December 1, 2014, deadline, neither the Applicable Premium nor the Optional Redemption Price is owed because the repayment of the PIK Notes will not be an optional redemption.  Similar to the First Lien Indenture, the Indenture provides that an "Event of Default" occurs if EFIH "commenc[es] proceedings to be adjudicated bankrupt or insolvent."  (PIK Indenture § 6.01(a)(6)(i).)  The EFIH Debtors filed for chapter 11

protection on April 29, 2014, unquestionably triggering an Event of Default.  Under the plain

language of the Indenture, this bankruptcy-induced Event of Default automatically accelerated

the PIK Notes' maturity date to the Petition Date.  As section 6.02 of the Indenture provides, "in

the case of an Event of Default arising" out of EFIH's bankruptcy filing, "all principal of and

premium, if any, interest (including Additional Interest, if any) and any other monetary

obligations on the outstanding Notes ***shall be due and payable immediately without further***

***action or notice***."  (emphasis added).

37.     Among other things, for the EFIH Debtors to optionally redeem the debt, they

must provide the PIK Noteholders with "at least 30 days but not more than 60 days" notice.

(PIK Indenture § 3.03.)   This stands in contrast to the automatic acceleration the parties

specifically negotiated, which contemplates no notice at all:  upon EFIH's bankruptcy filing, "the

outstanding Notes shall be due and payable immediately without further action or notice."  (PIK

Indenture § 6.02.)   The EFIH Debtors have never delivered any kind of optional redemption

notice to the PIK Trustee.

38.     The parties could have expressly referenced the Applicable Premium or Optional

Redemption Price as being payable in the event of an automatic acceleration, but they chose not

to do so.   Instead, the parties negotiated and included a detailed formula for calculating a

possible "Applicable Premium," (PIK Indenture § 1.01), and a specific schedule for the payment

of an Optional Redemption Price, (PIK Indenture § 3.07(d)).  And, by the express terms of those

provisions, the Applicable Premium or the Optional Redemption Price is owed only upon an

optional redemption voluntarily made by EFIH, which did not and will not occur here.  Indeed,

nothing in the Indenture suggests that either the Applicable Premium or the Optional

Redemption Price is owed in any circumstance outside of an optional redemption voluntarily made by EFIH under section 3.07 of the PIK Indenture.

39.     In short, repayment of automatically accelerated debt under the Indenture is neither optional nor voluntary and therefore does not implicate section 3.07 of the PIK Indenture and does *not* trigger an Applicable Premium or the Optional Redemption Price.

**B.    This Court's March 26, 2015 Summary Judgment Decision Mandates the Same Result.**

40.     The PIK Indenture is identical in every material way to the First Lien Indenture, and the Court's March 26, 2015 Decision and reasoning should apply here to receive the same result—no make-whole premium is owed after a bankruptcy caused automatic acceleration.

41.     The PIK Indenture contains an acceleration clause at section 6.02 that operates in an identical manner as the same provision in the First Lien Indenture, by making the PIK Notes due and payable immediately without further action or notice after a bankruptcy-caused event of default.  (*See* Summary Judgment Decision ¶ 45.)  Just like the First Lien Indenture, there is no reference in section 6.02 to the defined term, Applicable Premium, nor is there any reference to "redemption price," nor is section 3.07 incorporated into section 6.02.  (*See id.* at ¶ 46.)

42.     To be sure, section 6.02 has additional language, not contained in section 6.02 of the First Lien Indenture, including the words "premium, if any."  But under governing New York law—and as discussed below—an indenture must contain express language requiring payment of a prepayment premium upon acceleration; otherwise it is not owed.  (Summary Judgment Decision ¶ 47.)  Many cases do involve indentures that expressly require the payment of a make-whole premium, (*see id.* at ¶ 48), but the "premium, if any" language here, like the language in other cases with similarly worded acceleration provisions, is insufficient to trigger a make-whole premium, (*see id.* at ¶ 50.)

43.     As this Court held, "[b]ecause the Indenture does not specify that the Applicable Premium is owed after automatic acceleration, the Applicable Premium is not owed." (*See id.* at ¶ 51.) So too with the Optional Redemption Prices in section 3.07(d); because section 6.02 does not expressly provide for paying this make-whole premium, it is not owed. The acceleration clause in the PIK Indenture therefore is not specific enough to require paying either the Applicable Premium or the Optional Redemption Price.

**C.     The "Premium, If Any" Language In Section 6.02 Does Not Change This Result.**

44.     The "premium, if any" language does not specify a make-whole premium is owed. An indenture must contain express language requiring payment of a prepayment, or make-whole premium, upon acceleration; otherwise, it is not owed. (Summary Judgment Decision ¶ 47 (citing *Northwestern Mut. Life Ins. Co. v. Uniondale Realty Assocs.,* 11 Misc.3d 980, 816 N.Y.S.2d 831, 836 (N.Y. Sup. Ct. 2006) ("A prepayment premium will not be enforced under default circumstances in the absence of a clause which so states.")); *In re South Side House, LLC,* 451 B.R. 248, 268 (Bankr. E.D.N.Y. 2011) ("[A] lender is not entitled to prepayment consideration after a default unless the parties' agreement expressly requires it."), *aff'd U.S. Bank Nat'l Ass'n v. South Side House, LLC,* No. 11–4135, 2012 WL 273119 (E.D.N.Y. Jan. 30, 2012); *In re Premier Entm't Biloxi LLC,* 445 B.R. 582, 626; Hr'g Tr. 36:9–14, *In MPM Silicones, LLC, et al.,* No. 14–22503, 2014 WL 4436335, at *13–14 (Bankr. S.D.N.Y. Sept. 9, 2014)).)

45.     This Court has already held that "[b]ecause the [First Lien] Indenture does not specify that the Applicable Premium is owed after automatic acceleration, the Applicable premium is not owed." (Summary Judgment Decision ¶ 51.) Here also, the PIK Indenture does not specify that the defined term Applicable Premium is owed, nor does it make any express

reference to the schedule of redemption prices contained in 3.07(d) of the PIK Indenture. Accordingly, no Applicable Premium or Optional Redemption Price is owed.

46.    Additionally, the bankruptcy and district courts in *Momentive* considered and rejected the argument that materially identical "premium, if any" language provided for a make-whole premium. *In re MPM Silicones, LLC*, No. 14-22503, 2014 WL 4436335, at *15 (Bankr. S.D.N.Y. Sept. 9, 2014), *aff'd In re MPM Silicones*, 2015 WL 2330761, at *11 (S.D.N.Y. May 4, 2015). There, the indenture's acceleration provision stated that in the event of a bankruptcy proceeding, "the principal of, *premium, if any*, and interest on all the [Senior Lien] Notes shall ipso facto become and be immediately due and payable." *MPM*, 2015 WL 2330761, at *11 (emphasis added). The court found that "[t]his language is not sufficient to create an unambiguous right to a make-whole payment," *id.* at *12, and further that neither the indenture nor the notes "unambiguously provide[s] that the Senior Lien Noteholders are entitled to a make-whole payment in the event of an acceleration of debt caused by the voluntary commencement of a bankruptcy case," *id.* at *14.

47.    The court in *Solutia* also found this very language insufficient, holding that the words "premium, if any" in an indenture do not provide the kind of "explicitness that would be expected in a typical post-acceleration yield-maintenance clause." *In re Solutia, Inc.*, 379 B.R. 473, 488 (Bankr. S.D.N.Y. 2007). This is because, as the bankruptcy court in *AMR* explained, the word "if any" should be interpreted to mean that "payment of [a prepayment premium] is not automatic and there are some circumstances under which [a prepayment premium] will not be payable." *In re AMR Corp.*, 485 B.R. 279, 303 (Bankr. S.D.N.Y. 2013), *aff'd* 730 F.3d 88 (2d Cir. 2013). Simply put, no Applicable Premium is owed.

48.     Any attempt to read "premium, if any" to mean the Applicable Premium or the Optional Redemption Price is strained by the text of the Indenture itself.  Elsewhere in the Indenture, references to "premium" are made, specifically to tender premiums in connection with sections 4.07(b)(3)(a) and 4.09(b)(13).  Similarly, the Indenture calls for payment of "premium, if any" in various contexts throughout the Indenture unrelated to a make-whole premium, such as in connection with a transfer and exchange (section 2.06(h)(i)(vi)); asset sales (section 4.10(b)(4)(f)); successor corporation substituted (section 5.02); satisfaction and discharge (section 12.01); and application of trust money (section 12.02).  The term "premium, if any" therefore does not unambiguously mean Applicable Premium, Optional Redemption Price, or a make-whole premium of any kind.

49.     Moreover, if "premium, if any" were intended to include Applicable Premium or Optional Redemption Price, the drafters would not have appended the words "if any," which provides no guidance on if, when, or how much, if at all, a premium might be owed upon a bankruptcy-induced acceleration.  In fact, the "if any" qualifier expressly contemplates that *no* premium might be owed, as is true here.  To equate the words "premium, if any" with "the redemption prices" would contravene basic principles of contract interpretation and the exacting standard noteholders must meet under applicable law to receive payments of makewhole premiums after automatic acceleration in bankruptcy.

## II.     The PIK Noteholders Are Not Entitled To Interest At The Rate Specified In The Indenture.

50.     The PIK Claim also seeks "interest . . . arising from and after[] April 29, 2014 . . . ."  This broad statement clearly asserts a claim for postpetition interest.

51.     Section 502(b)(2) of the Bankruptcy Code disallows claims for unmatured interest on unsecured debt—for example, interest payments on debt, like the PIK Notes—that comes due

on or after the Petition Date. Courts have created an exception to the plain and unambiguous text of the Bankruptcy Code where debtors are solvent and have permitted postpetition interest to accrue on outstanding principal for unsecured debt during the pendency of the bankruptcy proceedings. As the court in *Washington Mutual* explained, the general rule is that unsecured creditors are not entitled to postpetition interest. *In re Washington Mut., Inc.*, 461 B.R. 200, 241 (Bankr. D. Del. 2011), *vacated in part*, No. 08-12229 MFW, 2012 WL 1563880 (Bankr. D. Del. Feb. 24, 2012). When a chapter 11 debtor is solvent, however, an exception arises. *Id.* A chapter 11 creditor must receive at least as much as it would were the debtor being liquidated in chapter 7. 11 U.S.C. § 1129(a)(7); *see Washington Mutual*, 461 B.R. at 241 (citing *Kitrosser v. The CIT Grp./Factoring, Inc.*, 177 B.R. 458, 469 (S.D.N.Y. 1995)). And chapter 7 provides that unsecured creditors are entitled to interest "at the legal rate" before shareholders receive any distribution. *Id.* (citing 11 U.S.C. § 726(a)(5) & (6)). As a result, when a debtor is solvent (*i.e.*, where shareholders will receive a distribution), courts have held that post-petition interest can be awarded on unsecured debts at "the legal rate."

52.     As *Washington Mutual* held "the better view is that the federal judgment rate [28 U.S.C. § 1961] is the appropriate [legal] rate to be applied under section 726(a)(5), rather than the contract rate."[3] *Washington Mutual*, 461 B.R. at 242. The majority of other courts to have considered the issue have agreed with this view. *See, e.g., Onink v. Cardelucci (In re Cardelucci)*, 285 F.3d 1231, 1234-36 (9th Cir. 2002); *In re 431 W. Ponce De Leon, LLC*, 515 B.R. 660, 675 (Bankr. N.D. Ga. 2014); *In re Fast*, 318 B.R. 183, 191-92 (Bankr. D. Colo. 2004)

---

[3] Specifically, the federal judgment rate of interest is the weekly average 1-year constant maturity Treasury yield as published by the Board of Governors of the Federal Reserve System the week immediately before the Petition Date, compounded annually.

("[T]he majority of cases have concluded that the federal judgment rate of interest is the 'legal rate' of interest.").

53.    Accordingly, the PIK Noteholders are not entitled to postpetition interest at the rate specified in the PIK Indenture, or in any amount greater than the federal judgment rate, and the PIK Claim should be partially disallowed on this basis.

## Conclusion

54.    For the foregoing reasons, the Court should enter an order, substantially in the form attached hereto as **Exhibit 2**, denying in part the PIK Claim for an Applicable Premium, an Optional Redemption Price, or postpetition interest at the rate specified in the PIK Indenture.

## Reservation of Rights

55.    Nothing contained in this Objection or any actions taken by the EFIH Debtors pursuant to relief granted in the Order is intended or should be construed as:  (a) an admission as to the validity of any portion of the PIK Claim; (b) a waiver of the EFIH Debtors' rights to dispute the PIK Claim on any grounds; (c) a promise or requirement to pay the PIK Claim; (d) a waiver or limitation of the Debtors' rights under the Bankruptcy Code or any other applicable law; (e) a request or authorization to assume or reject any agreements under section 365 of the Bankruptcy Code; (f) a waiver of any party's rights to assert that any other party is in breach or default of any agreement; or (g) an admission that any contract or lease is integrated with any other contract or lease.

## Notice

56.    The Debtors shall provide notice of this Objection on the date hereof via first class mail to:  (a) the U.S. Trustee; (b) counsel to the TCEH Creditors' Committee; (c) counsel to the EFH Creditors' Committee; (d) Wilmington Trust, N.A., in its capacity as administrative agent under the TCEH first lien credit agreement and collateral agent under the TCEH

intercreditor agreements and counsel thereto; (e) Bank of New York Mellon Trust Company, N.A., in its capacity as indenture trustee under:  (i) the TCEH unsecured pollution control revenue bonds; and (ii) the EFCH 2037 Notes due 2037, and counsel thereto; (f) American Stock Transfer & Trust Company, LLC, in its capacity as indenture trustee under:  (i) the 9.75% EFH senior unsecured notes due 2019; (ii) the 10.0% EFH senior unsecured notes due 2020; (iii) the 10.875% EFH LBO senior unsecured notes due 2017; (iv) the 11.25%/12.0% EFH LBO toggle notes due 2017; (v) the 5.55% EFH legacy notes (series P) due 2014; (vi) the 6.50% EFH legacy notes (series Q) due 2024; and (vii) the 6.55% EFH legacy notes (series R) due 2034, and counsel thereto; (g) Computershare Trust Company, N.A. and Computershare Trust Company of Canada, in their capacities as indenture trustee under:  (i) the 11.0% EFIH senior secured second lien notes due 2021; and (ii) the 11.75% EFIH senior secured second lien notes due 2022, and counsel thereto; (h) UMB Bank, N.A. in its capacity as indenture trustee under:  (i) the 9.75% EFIH senior unsecured notes due 2019; and (ii) the 11.25%/12.25% EFIH senior toggle notes due 2018, and counsel thereto; (i) Delaware Trust Company of Delaware in its capacity as indenture trustee under:  (i) the 6.875% EFIH senior secured notes due 2017; (ii) the 10.0% EFIH senior secured notes due 2020; and (iii), the 11.50% TCEH senior secured notes due 2020, and counsel thereto; (j) Law Debenture Trust Company of New York in its capacity as indenture trustee under:    (i) the 10.25% TCEH senior unsecured notes due 2015; and (ii) the 10.50%/11.25% TCEH senior toggle notes due 2016, and counsel thereto; (k) Wilmington Savings Fund Society, FSB in its capacity as indenture trustee under the 15.0% TCEH senior secured second lien notes due 2021, and counsel thereto; (l) counsel to certain holders of claims against the Debtors regarding each of the foregoing described in clauses (c) through (j); (m) the agent for the TCEH debtor-in-possession financing facility and counsel thereto; (n) the agent for

the EFIH debtor-in-possession financing facility and counsel thereto; (o) counsel to certain holders of equity in Texas Energy Future Holdings Limited Partnership; (p) counsel to the Ad Hoc Committee of TCEH Unsecured Noteholders; (q) counsel to the Ad Hoc Committee of TCEH Second Lien Noteholders; (r) Oncor Electric Delivery Holdings Company LLC and counsel thereto; (s) Oncor Electric Delivery Company LLC and counsel thereto; (t) the Securities and Exchange Commission; (u) the Internal Revenue Service; (v) the Office of the United States Attorney for the District of Delaware; (w) the Office of the Texas Attorney General on behalf of the Public Utility Commission of Texas; (x) counsel to the Electric Reliability Council of Texas; (y) those parties that have requested notice pursuant to Bankruptcy Rule 2002; and (z) the claimants that filed the Insufficient Documentation Claims. The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

<u>**No Prior Request**</u>

57.    No prior request for the precise relief sought in this Objection has been made to this or any other court.

*[Remainder of page intentionally left blank.]*

Dated: July 9, 2015
   Wilmington, Delaware

**RICHARDS, LAYTON & FINGER, P.A.**
Mark D. Collins (No. 2981)
Daniel J. DeFranceschi (No. 2732)
Jason M. Madron (No. 4431)
920 North King Street
Wilmington, Delaware 19801
Telephone:    (302) 651-7700
Facsimile:    (302) 651-7701
Email:        collins@rlf.com
              defranceschi@rlf.com
              madron@rlf.com

-and-

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Edward O. Sassower, P.C. (admitted *pro hac vice*)
Stephen E. Hessler (admitted *pro hac vice*)
Brian E. Schartz (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022-4611
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900
Email:        edward.sassower@kirkland.com
              stephen.hessler@kirkland.com
              brian.schartz@kirkland.com

-and-

James H.M. Sprayregen, P.C. (admitted *pro hac vice*)
Marc Kieselstein, P.C. (admitted *pro hac vice*)
Chad J. Husnick (admitted *pro hac vice*)
Steven N. Serajeddini (admitted *pro hac vice*)
300 North LaSalle
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200
Email:        james.sprayregen@kirkland.com
              marc.kieselstein@kirkland.com
              chad.husnick@kirkland.com
              steven.serajeddini@kirkland.com

*Co-Counsel to the Debtors and Debtors in Possession*