# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) |
| | ) Chapter 11 |
| ENERGY FUTURE HOLDING CORP., et al., | ) |
| Debtors. | ) Case No. 14-10979 (CSS) |
| | ) |
| The Tremble Family | ) Jointly Administered |
| The Estate of Wilmer Forrest Tremble, Sr. | ) |
| Billie Murphy Tremble | ) |
| Sharon Tremble Donaldson | ) |
| Selia Tremble Shawkey | ) |
| Wilmer Forrest Tremble, Jr. | ) |
| Creditors. | ) |

## DISCLOSURE STATEMENT

TO THE HONORABLE JUDGE SONTCHI:

Creditor's: Billie Murphy Tremble, Sharon Tremble Donaldson, Selia Tremble Shawkey, Wilmer Forrest Tremble, Jr. "The Tremble Family" aka "The Estate of Wilmer Forrest Tremble, Sr." files this disclosure statement complaining of Debtor Energy Future Holdings Corp., Luminant Mining Company LLC and subsidiaries.

The inherited property located in Rusk County, Texas the legal

1

description of the land described in three tracts is as follows:

Tract One: **65.00** acres of land, more or less, being the same land described in a Deed dated November 17, 1900 from Ollie Brooks, et ux to W. M. Pollard, recorded in Volume 51, Page 88 of the Deed of Records of Rusk County, Texas.

Tract Two: **37.46** acres of land, more or less, being the same land described that certain conveyance dated November 30, 1934 from Bessie Elizabeth Strong, et al to Emma Pollard, recorded in Volume 384, Page 464 of the Deed of Records of Rusk County, Texas.

Tract Three: **26.00** acres of land, more or less, located in the Delores Cortinas Survey, A-160 Rusk County, Texas, being the same land set aside to Bessie Barr in that certain Rusk County District Court Cause #19143 styled Amelia Bolding, et al –vs- Willie Barr, et al.

I.

## INTRODUCTION

The Tremble's were in the process of gathering facts and information for revitalization of the 65, 37.46 and 26 acre tracts, to benefit all heirs of the undivided heir property when approached by Luminant Mining Company LLC in 2009. They were victimized due to concealed transactions of real property that are in the Rusk County Court House, Rusk County Clerk and the Rusk County Appraisal District these records

2

were kept from the Tremble(s). It is our assumption Luminants intention is to defraud the Tremble(s) of their undivided inherited property, minerals, timber, etc. The evidence is as follows:

## II.

## MISREPRESENTATION

The Tremble Family will expose the fraudulent possession of undivided heir property by Luminant Mining Company LLC in 2010 the support respectfully shows: Id. at 751, sec C Tex. RC1V+166d. We are raising a genuine issue of the material fact. Luminant Mining concealed pertinent information from the Tremble(s). Nottingham Brick & Title Co. v. Butler (1889) 16 QBD 778. We by law did not and were not privy to pertinent information. Haase v. Glazner, 62 S.W. 3d 795, 798 (Tex. 2001). Fraudulent inducement is a particular species of fraud that arises only in the context of a contract and requires the existence of a contract as part of its proof. All ten heirs are victims of Fraud refer to Affidavit of Heirship (Exhibit A). They have all been deceived by Luminant and its representatives.

It was deliberate that the content of each conversation with Luminant representative differed from the previous. They ranged from, "we are going to take the land anyway" to "that family cemetery will be desecrated, we need that land". A lack of respect for those places and things held in reverence to the ancestors: the Barrs, Pollards and Trembles, for many generations. The county and municipal law enforcement agencies protect cemeteries, so, this was hateful,

3

spiteful, creating unnecessary trepidation. Smith v. Land & House Property Corp. (1884) 28 Ch D 7. It holds that a statement of opinion can represent that one knows certain facts, and therefore one may have still made a misrepresentation. Numerous inquiries have been made throughout the years to Luminant Mining Company LLC never answered, nor addressed, just ignored.

### III.

### CAUSE OF ACTION

The Pollard Ranch has been in the Family since 1900. The land once vibrant supported a family of twelve for many years. The Tremble sibling's great grandparents W.M. Pollard and Emma Barr Pollard managed a very profitable family business. The 65 and 37.46 acres supported the family and allowed them to college educate four of their ten children.

The homestead was originally on the 65 acres and in the 1930's they built a new house across the highway on the 37.46 acres. The address of the property was 5339 FM Farm Market, 2658 North, Tatum, Texas 75691 and has recently been changed.

The house was warm and inviting and was filled with joy and laughter a meeting place for family and friends. Its contents were spacious with wall paper, wood flooring, and fireplace; there were antiques, and artifacts.

There was livestock: 80 head of Hereford cattle; calves; 2 Brahman bulls; 2 plow horses; 1 donkey; 1 Shetland pony; 5-7 hogs; 4-5 pigs; 15-20 Rhode Island Red chickens along with Leghorn chickens; Dusky Call ducks; geese; quail; rabbits; raccoons, deer and opossum. There was a lush half acre fenced in vegetable garden. It contained the vegetables that customarily grow in East Texas. There were two water wells used for the livestock and chickens. There was a pond about the size of an acre bountiful with a variety of fish including: minnows, white perch; rainbow trout; black basses; channel catfish; brims.

This land and its contents were once vital for selling butter, eggs, vegetables, bread, and more; special orders were filled for customers and the produce was sold at the Farmers Market. In addition, quilts and blankets were also sold.

There was bush hogging twice a year. The cattle were sold at auction.

The barn once housed the tractors, cargo trailer, tools, mowers, plows, tillers, petrified wagon, saddles, etc. There was a smoke house where meat was cured. The chicken coop had a front door that an adult could stand up in upon entering. The coop had two different levels one for laying eggs and the feeding troth.

There was a car and two pickup trucks; it **all** vanished without explanation. One of the banks where W. M. Pollard and Emma Barr Pollard banked was Citizen National Bank in Henderson, Texas where they had checking, savings and a safety deposit box. That account was managed by Lora D. Pollard who had been retired for 30 plus years

along with her brother Rodgers Pollard. Ms. Lora Pollard, died in 2007. (Exhibit B).

Today, there are signs all over the property with instructions to contact Luminant Mining Company LLC. There is always a Luminant employee riding around in a truck with a flag on it patrolling the area. (Exhibit C ). Luminant representatives have built a tree stand on the property and they and their friends frequently hunt there while we the heirs are denied access.

The current condition of the property is deplorable there are no fish in the pond it is filled with dead tree limbs and trash.  This once immaculate ranch is now overcome with fallen trees, weeds and debris inside and outside the homestead. The house has missing windows, doors and all things of value have been removed. (Exhibit D, and E). The barn is empty with open doors that are separating at the hinges. (Exhibit F). What happened to this once vibrant property? The Tremble(s) input, thoughts and concerns were not considered. Any and all decisions made regarding said property intentionally excluded the Tremble Family.

## IV.

## FACTUAL ALLIGATIONS

In reference to the inherited property, it appears the company is exercising Eminent Domain. In August 2012, the Supreme Court

Reinforces Denbury Decision on Eminent Domain. Again. For the third time, The Texas Supreme Court has ruled against a pipeline company's use of eminent domain. The farmer, "Mike Latta, argued that the pipeline wasn't in the public's interest, as it was only used by one company". There can be no taking of private property against the will of the owner without legislative directive. The Supreme Court of Texas agreed. No. And the decision stands.

In 2009 Luminant Mining representative and contract landman Russell Davis approached three of the Tremble Family members with the intent to mine the "Liberty Mine Project" the above described inherited property located in Rusk County, Texas. Luminant's representatives fail to fully disclose information regarding the Liberty Mine project. The Tremble(s) ask for "full disclosure" on multiple occasions.

The Tremble(s) question why all family members were not served each and every time with the Petition, Partition, Summary Judgment and Judgment.

Luminant repeatedly failed to answer the Tremble Family in writing. Smith v. Land & House Property Corp. (1884) 28 Ch D7. However, where the person giving the statement was in a position to know the time facts and it can be proved that he could not reasonably have held such a view as a result, then his opinion will be treated as a statement of fact. The only acceptable response is written communications since Luminants representatives have frequently contradicted themselves and stated over the years their preference in communicating is Verbal Agreement.

7

The Tremble(s) attorney Manfred Sternberg made contact with Luminant Mining LLC contract landman and representative Russell Davis. There has been great disparity in this situation the evidence is as follows: Billie Murphy Tremble was omitted in the beginning of this process and not communicated with at all. Russell Davis said she has a life estate. Manfred disagreed, Wilmer Forrest Tremble, Sr. has a will there is no decent and distribution. This is real property not common property. The attorney asked Mr. Davis how was payment determined for the land and its minerals? Mr. Davis said Emma Jean Tremble Smith aka Emma Jean Trimble Smith received 25% for her interest in the 102.46 acres of land and when asked why and what about the 26 acres? There was no response from Russell Davis. The attorney asked Mr. Davis how is that distribution possible when the Affidavit of Heirship (Exhibit A) filed in Rusk County Court House on April 27, 2007 shows each heir having 10% interest? According to Luminant, the information given to Manfred, the acreage is decent and distribution. Luminant Mining LLC did propose payment of a fractionalized sum to the Tremble Family. This was done without regard for the coal/lignite, leasing, homestead, ranch, barn, water, etc. not only fails to make them whole monetarily, but, also leaves them "short in the bundle of economic and democratic tools" that they **formerly** possessed.

TD/B/C.2AC.1/7, p.11, para. 9. The Traditional Most-Favoured-Nations principle is designed to establish equity in treatment. Mr. Davis was asked to send the supporting documentation of Luminant's Affidavit of Heirship and the dollar amount each heir was paid. **Russell Davis responded "the terms of our contract are confidential on both sides."**

8

(Exhibit G). Mr. Manfred Sternberg was not making any headway; his services were no longer required.

**The Tremble(s) were not given the option of negotiation. They were deprived of their First Amendment rights to have a voice in the disposition of heir property. They have no contracts, leases or agreements (verbal, written or implied) with said company or any of their representatives.**

On November 26, 2013 at 4:00 P.M. (CST), the Tremble Sister's engaged in a good faith conversation conference call with Luminant's attorneys and representatives David Jackson, Kevin Kent, Marc Knisely and Steve Higgenbotham to discuss an amicable agreement. (Exhibit H, Recording of Conversation). In summation, the sister's agreed to "follow up with a letter of engagement." McClure v. Duggan, 675 F. Supp. 211, 221 (N.D. Tex. 1957) When a oral agreement is rendered unenforceable by the statute of frauds, a plaintiff cannot sustain an action for fraud by merely alleging that the defendant made an oral promise without the intention of performing it. The Tremble Family Expectations was forward Manfred Sternberg on August 27, 2013 (Exhibit I). As promised, a Letter of Engagement and Lease Negotiations was sent to Luminant attorneys, the letter was received by them on Dec. 5, 2013. There was no response to the letter. (Exhibit J).

A few days later, two of the Tremble(s) received letters dated December 6, 2013, referencing a claim by Luminant to an interest in 70 acres of timber more or less (Exhibit K). According to the East Texas Forestry Service depending on the diameter x feet in length and a value

of $100 per thousand board feet; there are 25-35 year old mature trees on the property. They are thick, mature stands of a valuable species like pine trees, these trees bring far more money than stands of trees of lower quality. It is this volume, summed over all the trees on the land that will ultimately serve as the basis for the great monetary gains due to the stumpage price and for Luminant claiming an interest/ownership in them.

There is again, mass confusion when Luminant attorneys stated on Nov. 26, 2013 they have an interest in the coal and lignite going to great lengths to explain "interest" (Exhibit H Recorded Conversation). However, in lieu of the December 6, 2013 letter referencing the timber, Luminant has again made another false statement. They are claiming interest in the coal/lignite, and the timber.

**A Right of Possession Under Contract** is when an individual acquires a right to possess property under contract. **He has an ownership interest, but only has the right to occupy or possess the property with restriction.** For instance, if an individual has been granted a right to possess a certain property under contract, such as a land contract, he has the right to occupy the property according to the terms of the contract. He has no right to utilize the property in any way that confers any right to possess the land to sell the land to another. **Therefore, although he has a right to possess the land, his interest in the land does not expand to any right to sell or convey the land.**

## V.

## FACTS

This is an action, seeking declaratory judgment for civil and constitutional infringement, unfair business practices, tortuous interference, deliberate and unlawful conduct, namely: Since 2009 seeking to possess undivided inherited, heir property. Tex.rcv tex.RTD.p.166. We by law were not privy to pertinent information from Luminant Mining Company LLC.

On December 14, 2013 the family members were served with the first in a series of petitions. They were served PLAINTIFF'S ORIGINAL PETITION AND REQUEST FOR DISCLOSURE. The originating date for the petition is November 26, 2013 with a noon time stamp (upper right hand corner of CITATION FOR PERSONAL SERVICE). Coincidentally, the Tremble sisters spoke with the Luminant attorneys and representatives, that same day at 4:00 P.M. Within days each family member was served with petition number's 2013-390; 2013-391 and 2013-392. (Exhibits L, M, and N ). **Bittick v. J P Morgan Chase Bank, N A 4:11-CV-812-0, 2011 WL 4715173 (N.D. Tex. Sept.22, 2011). Fraud by non disclosure requires evidence that the defendant was ignorant of the non-disclosure facts and had a duty to disclose those facts.** (Exhibit H, Recorded Conversation). They deceived the family in believing they were working with them, they knew that earlier that same day those petitions had been filed but continued with the conference call. Yet, another example of their devious and unethical business practices.

The Tremble's presented The Last Will and Testament of Wilmer Forrest Tremble, Sr. (Exhibit O, Pages 4-11). Luminant responded with

11

PLAINTIFF'S REPLY TO THE TREMBLE FAMILY SUMMARY JUDGMENT RESPONSE under Argument and Authorities sighting the sister of Wilmer Forrest Tremble, Sr. is Emma Jean Tremble Smith aka Emma Jean Trimble Smith only deeded her individual interest in a Cash Warranty Deed. (Exhibit O, Page 3, Section A.). (Exhibit P)

The records show Ms Smith conveyed 100% of the land and its contents to Luminant Mining LLC. (Refer to Exhibits Q, R and S). The vehicle used was her Cash Warranty Deed she conveyed all of her undivided interest and the property to Luminant and all of the other heirs interest and property on December of 2010. (Exhibit P).

The Tremble Family has suffered physical illnesses, emotional harm in addition to mental anguish from deprivation of enjoyment, loss of peace of mind, annoyance, inconvenience and there is always anxiety about what is Luminants next move?

For the first time in Luminants opposition that the Tremble(s) clearly misunderstood the deeding of the 128.46 acres by Emma Jean Trimble Smith aka Emma Jean Tremble Smith, (Exhibit O, Page 4) PLAINTIFF'S REPLY TO THE TREMBLE FAMILY'S SUMMARY JUDGMENT RESPONSE. Luminants defense of the Cash Warranty Deed is contradictory to the Uniform Partition of Heirs Property Act (UPHPA). Refer to Volume 00102067 Vol: 3053 PG. 623 reads: "Grantor specifically conveys all coal and lignite lying in, on, and under the above described lands together with the right of ingress and egress," (Exhibit P ). Luminant states in the PLAINTIFF'S REPLY TO THE TREMBLE FAMILY'S SUMMARY JUDGMENT RESPONSE referencing the Deed and it reads, "Moreover, in the deed, Emma Jean Trimble Smith in fact conveyed only, in the deeds words, "all of my undivided interest" in the Property. She did not convey or purport to convey any interest in the Property greater than she owed." In (Exhibit P), refer to Ms. Smith's Cash Warranty Deed,

under LUMINANT MINING TRACT 1343 IN AREA 361 reads as follows: **All** that certain tract lot or parcel of land, a part of the THOMAS WILLIAMS SURVEY..." The next section LUMINANT MINING TRACT 1344 IN AREA 361 reads as follows: **All** that certain tract lot or parcel of land, a part of the THOMAS WILLIAMS SURVEY..."(Exhibit P). The deed was notarized on December 13, 2010 by Russell Davis contract Landman for Luminant Mining Company. Ms. Smith deeded **All** the acreage to Luminant Mining Company, LLC and is documented in the County Clerk's Office and the Court House in Rusk County, Texas deeded on December 16, 2010 (Exhibits Q, and R ) Bessie Barr ET AL was deeded on December 21, 2010 (Exhibit S ).

Emma Jean Trimble Smith aka **Emma Jean Tremble Smith is not** nor has she ever been **the Executor of the Estate, Administrator, nor the Trustee**. These records are **all fraudulent.**


**In the State of Texas the law says the heirs cannot sell the physical land only the interest in the land itself. The interest cannot be sold without the permission of all other heirs**. Without specific authorization by the heirs, many land use decisions (i.e. harvesting timber, leasing, building a structure on the land, etc.) can be made only by unanimous consent. This company's actions present **insurmountable problems** that have proved **devastating** to the Tremble(s) that did not sign with Luminant Mining Company, LLC. **There is a breach of trust, dissention among family members that is irreparable; this company had one member out of ten deed her interest and all the property; prohibiting any family member from using the land.** This act is unlawful.

13

The **Uniform Partition of Heirs Property Act (UPHPA)** helps to solve the problem while preserving a co-tenant's right to sell his or her share of property. It is important to note that the act only applies to heir property – one or more co-tenants must have received his or her property interest from a relative – and only when there is no written agreement governing partition among the owners. If both of those conditions exist, the act requires certain protections when a co-tenant files for a partition order. Luminant Mining Company, LLC **did not** take the appropriate steps to be compliant with the law.

1. **The co-tenant requesting the partition must give notice to all of the other co-tenants.**
2. The court must order an independent appraisal to determine the property's value, the court must hold a hearing to consider evidence.
3. Any co-tenant (except the co-tenant(s) requesting partition by sale) may buy the interest of the co-tenant seeking partition for a proportional share of the court – determined fair market value. **The co-tenants have 45 days to exercise their right of first refusal, and if exercised, another 60 days in which to arrange for financing. If more than one co-tenant elects to buy the shares of the co-tenant(s) seeking partition, the court will pro-rate the sellers shares among the buyers according to their existing fractional ownership percentages.**
4. If no co-tenant elects to purchase shares from the co-tenant(s) seeking partition, the court must order a partition in-kind will result in great prejudice to the co-tenants as a group. UPHPA specifies the factors a court must consider when determining whether partition-kind is appropriate.

5. If partition-in-kind is inappropriate and the court orders a partition-by-sale, the property must be offered for sale on the open market at a price no lower than the court determined valued for a reasonable period of time and in a commercially reasonable manner. If an open market sale by sealed bids or by an action would be more economically advantageous for the co-tenants as a group the court may order a sale by one of those methods.

Originally an equitable proceeding at common law, partition is now a statutory action. **The applicable law is set forth in Texas Property Code Sec. 23.001 et seq. and Rule 756 et seq. of the Texas Rules of Civil Procedure. Sec. 23.002 specifies that jurisdiction lies in the district court in the county in which the property is located. Rule 756 and the rules that follow set forth the procedure necessary to accomplish a fair and equitable partition. Other than the specific requirements contained in Sec. 23.001 et seq. and Rule 756 et seq., partition cases are governed by the same rules and procedures as other civil cases, including entitlement to a jury trial. All parties with an interest in the property must be joined in the litigation.**

Conclusion:
In summary, the Uniform Partition of Heirs Property Act preserves the right of a co-tenant to sell his or her interest in inherited real estate, while ensuring that the other co-tenants will have the necessary due process to prevent a forced sale: notice, appraisal and right of first refusal.

Luminant Mining and the other heirs did not comply with the Uniform Partition of Heirs Property Act as it pertained to the purchase property

from the seller, the court must order a partition-in-kind if feasible, and if not, a commercially reasonable sale for fair market value. **There is negligence, concealment, fraud, and theft by the other co-tenants and Luminant Mining.** The Tremble Family had no knowledge of any of these actions. **This constitutes a violation of the Tremble(s) Civil Rights and Constitutional Rights they were excluded from Due Process of Law.**

*Texas Co. v. Daugherty*, 107 Tex. 226, 176 S.W. 717; Walker, Fee Simple Ownership of Oil and Gas in Texas, 6 Tex.L.Rev. 125. The Courts recognize the dominance of those holding mineral rights over surface owners. The Tremble's have a Mineral Deed dated November 16, 2006 (Exhibit T) and Addendum dated September 14, 2014 (Exhibit U) which gives them 100% ownership in all the minerals and the Addendum includes the coal and lignite. (Exhibit U). The parties to a mineral lease or deed usually think of the mineral estate as including valuable substances that are removed from the ground by means of wells or mine shafts. This estate is dominant, of course, and its owner is entitled to make reasonable use of the surface for the production of his minerals. Luminant disinherited the Tremble siblings, Sharon Tremble Donaldson, Selia Tremble Shawkey, and Wilmer Forrest Tremble, Jr. (Exhibit O, Page 4) PlAINTIFF'S REPLY TO THE TREMBLE FAMILY'S SUMMARY JUDGMENT RESPONSE.

We held, in *Getty Oil Co. v. Jones*, 470 S.W.2d 618 (Tex. 1971), the mineral owner held the dominant estate. There are various statutory definitions of "minerals". **In Texas Property Code Section 75.001, the definition is: "Mineral" means oil, gas, uranium, sulphur, lignite, coal, and any other substance that is ordinarily and naturally considered a mineral in this state, regardless of the depth at which the oil, gas, uranium, sulphur, lignite, coal, or other substance is found.**

16

The NOTICE OF FINAL JUDGMENT was received by two of the Trembles and it was on original owner Bessie Barr Strong's property. Tract Three: **26.00** acres of land, more or less, located in the Delores Cortinas Survey, A-160 Rusk County, Texas, being the same land set aside to Bessie Barr in that certain Rusk County District Court Cause #19143 styled Amelia Bolding, et al –vs- Willie Barr, et al.

On December 19, 2014, Luminant attorney's Flower, Davis, PLLC in Tyler, Texas sent Billie Murphy Tremble an order to sell the property it was signed on Tuesday, December 16, 2014 in Rusk County. Accompanied by the letter was W-9 for Cause: No: 2013-390; Cause 2013-391; Cause No. 2013-392. (Exhibit V).

Luminant is again using trickery and divisiveness to get all the land; if the W-9 had been signed by the recipient Billie Murphy Tremble they would claim all the acreage.

This family has had 6 years of dealing with Luminant Mining LLC and their blatant dishonesty; disregard for the law; and lack of business ethics.

## VI.

## SUMMATION

Land ownership is a vital asset to all communities. **Within the last century, African-American land ownership has declined.** Comparing

17

Agriculture Census data on African-American farmland ownership for 1910 and 1997, it shows a drastic decline from its peak of 15 million acres in 1910 to 2.4 million acres in 1997. A recent study estimated that in the early 20th century, rural landownership among African-American farmers and non-farmers was between 16 and 19 million acres (Gilbert, J., 2002). The 1999 Agricultural Economics and Land Ownership Survey (AELOS), which assessed private rural landownership across race and use (i.e. farming, forestry, etc.), found that there are currently 68,000 African-American rural landowners and they own a total of 7.7 million acres of land, less than 1% of all privately owned rural land in the United States. (Agricultural Economics Land Ownership Survey-AELOS, 1999). Sixty percent (60%) of which is owned by non-farmers. (AELOS, 1999). However, this acreage is valued at $14 billion. (AELOS, 1999). With rural landownership clearly being a significant economic resource base in the African-American community controls, why do African-Americans continue to lose their land?

The Federation has identified 7 common causes of African American land loss: There are so many contributors to land loss in December 2001; the Associated Press released a series of articles entitled "Torn From The Land" which documents the history of African American land loss in the South. These articles chronicle the violence, exploitation and injustice African-American land loss in the South endured in an effort to become and remain landowners. Investigators for this series interviewed more than 1,000 people and examined public records. Their research found 107 documented land takings in 13 Southern and border states. Their findings were extraordinary. From the 107 documented cases, more than 24,000 acres of farm and timber land

were taken, including smaller properties like stores and city lots. Further, over half the documented cases were **violent** land takings (57), and the others involved **trickery** and **legal exploitation**. From the senseless murders of African American landowners, to the public sale of family land, African-American land ownership has rapidly declined in the 20th Century and continuous to steady decline in the 21st Century. Pigford I (Brewington et al 1997. Smith v. Baker, 380 S.W. 2d 725(Tex. App. 1964). The Tremble(s) are owed compensation for the 6 years of harassment. The stealing of the property by the Luminant aided by co-conspirator Emma Jean Trimble Smith aka Emma Jean Tremble Smith with little to no communication from either party. The limited and concealed information constitutes a blatant disregard for the Civil Rights and Constitutional Rights of the Tremble(s). Luminant is making every effort to coerce the Tremble(s) to comply with their agenda. The Tremble(s) feel intimidated and threatened; by the aggressive tactics used by Luminant.

This is an action seeking declaratory judgment for civil and constitutional infringement, unfair business practices, tortuous interference, deliberate and unlawful conduct, namely: Since 2009 seeking to possess undivided inherited, heir property.

**The Tremble Family request the court award Reverse and Render, damages, and loss of income.**

It is our **prayer** that the HONORABLE COURT will come to our rescue and not allow our inherited property to become a statistic of African American landowners who have their property rights "steamrolled" by

large corporation looking to make billions off the properties assets, while the landowners are paid little to nothing. It is our prayer that the law will return to us that which has been taken by illegal force. That the awarded relief of $60 million is granted as damages for fraud and the breach of express and implied covenants; illegal deeding of property; denied timber rights; concealed documents in the County Clerk's Office and in the Court House in Rusk County, Texas. <u>We request full disclosure of any and all revenue earned off the land.</u>

All these things are evident of a denial of justice and civil rights. Elements connected with the government have systematically denied African Americans their land rights. It is for multiple wrongs to be made right and that all men can unequivocally say there is equality in the United States of America. The Declaration of Independence says, "We hold these truths to be self-evident that all men are created equal, that they are endowed by their Creator with certain unalienable Rights that among these are Life, Liberty and Pursuit of Happiness". The Virginia Declaration of Rights, authored by George Mason and approved by Virginia Convention on June 12, 1776, contains the wording: "all men are by nature equally free and independent, and have certain inherent rights of which... they cannot deprive or divest their posterity; namely, the enjoyment of life and liberty, **which means of acquiring and possessing property, and pursuing and obtaining happiness and safety."** It is imperative the laws of this land protect the property of the disenfranchised and no individual nor heir should lose their property due to trickery or greed.