**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | ) Chapter 11 |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) Case No. 14-10979 (CSS) |
| Debtors. | ) (Jointly Administered) |
| | ) **Re: D.I. 1682, 1791, 1796, 1804, 1983, 1984, 3183, 3329, 3966, 4883** |

**DEBTORS' REPLY TO THE OBJECTION OF THE EFH OFFICIAL
COMMITTEE TO THE DEBTORS' ORDER (A) SETTING BAR DATE FOR FILING
ASBESTOS PROOFS OF CLAIM, (B) APPROVING THE FORM AND MANNER FOR
FILING ASBESTOS PROOFS OF CLAIM, AND (C) APPROVING NOTICE THEREOF**

---

[1] The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, which are being jointly administered, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

**Table of Contents**

**Preliminary Statement** .................................................................................................................. 2

**Summary of Revisions to Revised Notice Plan** ............................................................................ 3

**Argument** ..................................................................................................................................... 6

**I.    The Debtors' Revised Notice Plan is Reasonably Calculated to Provide Notice to Holders of Asbestos Claims.** ....................................................................................... 6

**II.   The Debtors Should Not Be Required to Incorporate Television in the Notice Plan.** ................................................................................................................................. 8

    A.    Publication Notice is Sufficient Notice for Unknown Creditors in the Third Circuit. ................................................................................................. 8

    B.    The EFH Committee's and Kinsella Declaration's Reliance on Asbestos Bankruptcy Cases is Misplaced. ............................................................ 9

    C.    The Debtors' Proposed Asbestos Bar Date Does Not Seek a 524(g) Channeling Injunction or to Bar Future Claims. ..................................... 10

    D.    Notice by Television is Not Legally Required. ................................................... 11

## Table of Authorities

**Cases**

*Carlough v. Amchem Products, Inc.*, 158 F.R.D. 314 (E.D. Pa. 1993) ........................................... 9

*Chemetron Corp. v. Jones*, 72 F.3d 341 (3d Cir. 1995) ................................................................... 8

*Gaeth v. Deacon*, 964 A.2d 621 (Me. 2009) ................................................................................. 12

*In re ASARCO LLC*, No. 05-21207 ................................................................................................ 11

*In re Babcock & Wilcox Co.*, No. 00-10992, 2004 WL 4945985 (Bankr. E.D. La. Nov. 9, 2004) 9

*In re Combustion Eng'g, Inc.*, 391 F.3d 190 (3d Cir. 2004) .......................................................... 11

*In re Dow Corning Corp.*, 255 B.R. 445 (E.D. Mich. 2000) ........................................................... 9

*In re Dow Jones & Co.*, 2009 WL 7416516, *4 (Va. Cir. Ct. Nov. 17, 2009) .............................. 13

*In re Energy Future Holdings Corp.,* 522 B.R. 520 (Bankr. D. Del. 2015) .............................. 2, 8

*In re Fed.-Mogul Global Inc.*, No. 01-10578 ................................................................................ 11

*In re Furniture Brands Int'l, Inc.*, No. 13-12329 (CSS) (Bankr. D. Del. Oct. 10, 2013) ............. 12

*In re Garlock Sealing Technologies, LLC*, 504 B.R. 71 (Bankr. W.D.N.C. 2014) ........................ 9

*In re Lyondell Chem. Co.*, No. 09-10023 (REG) (Bankr. S.D.N.Y. Apr. 16, 2009) ..................... 12

*In re New Century TRS Holdings, Inc.*, 528 B.R. 251, 260 (D. Del. 2014) ................................. 13

*In re Ormet Corp.*, No. 13-10334 (MFW) (Bankr. D. Del. Apr. 23, 2013) ................................. 12

*In re Overseas Shipholding Gr'p, Inc.*, No. 12-20000 (PJW) (Bankr. D. Del. Apr. 10, 2013) .... 12

*In re The Flintkote Co.*, No. 04-11300 (Bankr. D. Del. Mar. 17, 2015) ...................................... 11

*Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306 (1950) ........................................... 6, 8

*Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999) ........................................................................... 9

*Wright v. Corning*, 679 F.3d 101 (3d Cir. 2012) ........................................................................... 8

**Other Authorities**

*BP*, 2Q14 – Part 1 of 1, Released July 29, 2014, p. 23, *available at*

   http://otp.investis.com/clients/uk/bp/rns/regulatory-story.aspx?cid=233&newsid=436276..... 10

The above-captioned debtors and debtors in possession (collectively, the "Debtors") file this reply (the "Reply") to the *Objection of the EFH Official Committee to the Debtors' Order (A) Setting Bar Date for Filing Asbestos Proofs of Claim, (B) Approving the Form and Manner for Filing Asbestos Proofs of Claim, and (C) Approving Notice Thereof* [D.I. 4883] (the "Objection") and the *Declaration of Katherine Kinsella* [D.I. 4884] (the "Kinsella Declaration") in support of the Objection.[1] In further support of the Bar Date Motion and the Debtors' proposed order (the "Asbestos Bar Date Order")[2] approving the form and manner for filing Asbestos Claims and of notice of the Asbestos Bar Date, the Debtors submit the accompanying *Declaration of Cameron Azari in Support of the Debtors' Reply to the Objection of the EFH Official Committee to the Debtors' Order (A) Setting Bar Date for Filing Asbestos Proofs of Claim, (B) Approving the Form and Manner for Filing Asbestos Proofs of Claim, and (C) Approving Notice Thereof* (the "Supplemental Azari Declaration") and the *Declaration of James Katchadurian in Support of the Debtors' Reply to the Objection of the EFH Official Committee to the Debtors' Order (A) Setting Bar Date for Filing Asbestos Proofs of Claim, (B) Approving the Form and Manner for Filing Asbestos Proofs of Claim, and (C) Approving Notice Therefore* (the "Supplemental Katchadurian Declaration"). In further support of the form and manner of notice of the Asbestos Bar Date, the Debtors respectfully state as follows.[3]

---

[1] The Debtors incorporate by reference the arguments made in the *Debtors' Reply in Support of Bar Date With Respect to Asbestos Claims* [D.I. 1804] (the "Reply"), the *Debtors' Supplemental Brief in Support of Bar Date with Respect to Asbestos Claims* [D.I. 1984] (the "First Supplemental Brief"), and the *Debtors' Supplemental Memorandum of Law with Respect to the Bar Date Motion and in Support of (A) the Form of and Manner for Filing Asbestos Proofs of Claim and (B) the Form and Manner of Notice of Bar Date with Respect to Asbestos Proofs of Claim* [D.I. 3966] (the "Second Supplemental Brief"). Capitalized terms that are used but not defined herein shall have the meanings set forth in the Second Supplemental Brief.

[2] A revised Asbestos Bar Date Order incorporating revisions from the Objection and the Kinsella Declaration (the "Revised Asbestos Bar Date Order") is attached hereto as **Exhibit A**. A redline against the version filed with the Court on March 24, 2015 [D.I. 3965] is attached hereto as **Exhibit C**.

[3] The Official Committee of Unsecured Creditors represents the interests of all unsecured creditors of Energy Future Holdings Corp., Energy Future Intermediate Holding Company, LLC, EFIH Finance, Inc., and EECI,

1

**Preliminary Statement**

1.  The Debtors reviewed the EFH Committee's proposed revisions and recommendations to the Debtors' Notice Plan, discussed those revisions and recommendations with the EFH Committee's advisors, and incorporated the majority of those revisions and recommendations in the Revised Notice Plan (as defined herein). Those changes are summarized in **Exhibit B** attached to this Reply. At this time, the only significant open issue is whether the Debtors should be required to use national and cable television rather than publication notice as the primary form of notice in the Revised Notice Plan.[4] For the reasons discussed in detail below, the Debtors submit that the Revised Notice Plan is comprehensive and appropriate and that the additional costs associated with national and cable television are unnecessary under the facts and circumstances of these chapter 11 cases, particularly in light of the fact that Third Circuit law is clear that publication notice provides sufficient due process with respect to unknown claimants. Therefore, the Court should overrule the EFH Committee's Objection on that single remaining issue.

2.  As the Court is aware, Asbestos Claims in this case are limited in nature and scale. The Debtors' asbestos liabilities are confined to specific facilities at fixed geographic locations. The scale of the Debtors' asbestos liabilities is similarly limited, totaling just over 1,500 claims (including mostly contractual indemnification claims) and $26.4 million in defense

---

Inc., whether known or unknown, contingent or non-contingent, liquidated or unliquidated (the "EFH Committee") represents all holders of unsecured claims, whether known or unknown, contingent or non-contingent, or liquidated or unliquidated. The Court found in its January 7, 2015 opinion that unmanifested claims are "claims" within the meaning of that term under 11 U.S.C. § 101(5). *In re Energy Future Holdings Corp.,* 522 B.R. 520, 527 (Bankr. D. Del. 2015) (Sontchi, J.). Accordingly, the statements made by the EFH Committee in the Objection that the EFH Committee is somehow conflicted are wrong. Official committees often represent divergent constituent views and positions (*e.g.*, trade versus bond debt).

[4]  The Debtors are still in discussions with the EFH Committee relating to the forms of notice and the Revised Notice Plan. The Debtors reserve the right to supplement this Reply at the hearing scheduled on July 16, 2015, in these chapter 11 cases, to the extent there remain any other open issues.

costs over a twenty-three year period. In fact, the number of asbestos-related claims asserted against the Debtors, to date, total less than 1% of the asbestos-related claims present in the large asbestos bankruptcy cases relied upon by the EFH Committee to support the need for television notice.

3. The Debtors have worked with their advisors to develop a robust noticing plan that will provide potential claimants with sufficient notice so that they can make a determination whether to file a proof of claim. Indeed, while Asbestos Claims represent a fraction of the overall liabilities in these chapter 11 cases, the Debtors' $2 million Asbestos Bar Date noticing budget (excluding TV), once implemented, will constitute more than 20% of the total noticing costs in these cases. Adding television would **double the cost** of the Asbestos Bar Date Notice Plan and is not necessary under applicable Third Circuit law. The Revised Notice Plan's high reach and frequency are already sufficient to meet the requirements of due process relating to the filing of Asbestos Claims in these chapter 11 cases, including with respect to holders of unmanifested Asbestos Claims.

4. Accordingly, the Debtors respectfully request that the Court overrule the Objection and enter the Revised Asbestos Bar Date Order, attached hereto as **Exhibit A**, setting the Asbestos Bar Date and authorizing the Debtors to implement the Revised Notice Plan.

## Summary of Revisions to Revised Notice Plan

5. After the EFH Committee filed the Objection and the Kinsella Declaration on June 29, 2015, the Debtors reviewed the proposed revisions and recommendations made in the Objection and the Kinsella Declaration and engaged in good faith discussions with the EFH Committee's advisors regarding those revisions and recommendations. Although the Debtors do not believe the Original Notice Plan was inadequate or deficient, the Debtors have incorporated

many of the EFH Committee's proposed changes in an effort to reach a consensual resolution of issues relating to the Asbestos Bar Date Notice Plan.

6. The revised Notice Plan, which incorporates those recommendations (the "Revised Notice Plan"), is attached as Exhibit A to the Supplemental Azari Declaration. A full summary of the revisions made in response to the Objection and the Kinsella Declaration is attached hereto as **Exhibit B**. In particular, the Debtors have made the following revisions in response to the Objection and the Kinsella Declaration:

    a. ***Revised Asbestos Bar Date Order***: The Debtors have revised the Asbestos Bar Date Order to, among other things, limit the relief sought pursuant to Bankruptcy Rule 3003(c)(2) and the scope of the Asbestos Bar Date Order.

    b. ***Revised Notice Plan***: The Revised Notice Plan provides for new primary, secondary, and tertiary target audiences, as recommended in the Kinsella Declaration, and has added certain new forms of media to increase the reach and frequency to its target audiences.

    c. ***Revised Proof of Claim Form***: The Revised Notice Plan provides that Official Form 10 will only be required to be completed by Known Asbestos Claimants and claimants with manifested Asbestos Claims. A simplified form (the "Unmanifested Asbestos Claim Form") will be used for Unknown Asbestos Claimants, including holders of unmanifested Asbestos Claims. Supplemental Azari Declaration at ¶ 3. The Unmanifested Asbestos Claim Form removes many of the requirements of Official Form 10, including, among other things, the requirement to provide supporting documentation and to provide a claim amount, and has been specifically designed to simplify the process of filing an Asbestos Claim for holders of unmanifested Asbestos Claims. Supplemental Azari Declaration at ¶ 3.

    d. ***Revised Publication Notice***: The Publication Notice has been revised to, among other things, explain asbestos-related illnesses, simplify the language, and incorporate the "call to action" headline suggested in Exhibit 4 of the Kinsella Declaration. Supplemental Azari Declaration at ¶ 7.

e. ***Revised Asbestos Bar Date Notice***: The Asbestos Bar Date Notice[5] has been revised to, among other things, incorporate a frequently asked questions format, simplify the language, and remove language that highlights the burdens and expenses of filing an Asbestos Claim. The revised form of the Asbestos Bar Date Notice has a readability score of 9.3, meaning that it could be understood by a high school freshman. Supplemental Azari Declaration at ¶ 4.

f. ***Revised Cover Letter***: With the exception of incorporating the Employee or Contractor's personalized work history, the Revised Notice Plan adopts the cover letter proposed in Exhibit 5 of the Kinsella Declaration that will be sent to Employees and Contractors. Supplemental Azari Declaration at ¶ 9.

g. ***Revised Envelope***: The envelope used in the Revised Notice Plan includes a plain language call to action.

h. ***Revised Internet Banner Advertisements***: The Internet Banner Advertisements have been revised to include a plain-language call to action and to incorporate the use of moving text to attract attention. Supplemental Azari Declaration at ¶ 10.

7. The Revised Notice Plan provides high reach and frequency numbers across three different target audiences, as shown below:[6]

| *Audience* | *Reach* | *Frequency* |
|---|---|---|
| Men aged 65+ | 90.1% | 3.4 |
| All Adults aged 45+ | 89.4% | 3.5 |
| All Adults aged 18+ | 85.7% | 3.1 |

---

[5] The Asbestos Bar Date Notice was also referred to as the "Direct Notice" in the Second Supplemental Brief.

[6] In a footnote in the Kinsella Declaration (¶ 20, n.3), it is suggested that Hilsoft's reach and frequency calculations were overstated. Hilsoft's media planners used the 2014 GfkMRI Doublebase Study and the comScore April 2015 Study to calculate the reported reaches. After consultation with the EFH Committee and Kinsella, Hilsoft believes the minor discrepancy comes from differences in how each party is mixing the reach of the online media with the measured print media. Hilsoft has confirmed with comScore that its method is valid, and is confident in our reach and frequency calculations. Supplemental Azari Declaration at ¶ 16 fn 6.

**Argument**

I. **The Debtors' Revised Notice Plan is Reasonably Calculated to Provide Notice to Holders of Asbestos Claims.**

8. Due process requires "notice reasonably calculated, *under all the circumstances*, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950) (emphasis added). Therefore, a "one-size-fits-all" model for noticing asbestos claims in bankruptcy is inappropriate. The adequacy of the Debtors' Notice Plan relating to the Asbestos Bar Date should be evaluated in light of the Debtors' specific asbestos liabilities.

9. The Debtors' asbestos liabilities are limited in both nature and scale. The Debtors and their predecessors did not mine asbestos, construct thousands of buildings containing asbestos, manufacture consumer products containing asbestos, or take part in any of the other activities that define asbestos-driven bankruptcy cases where tens of thousands, or hundreds of thousands, of asbestos cases are filed. Rather, the Debtors' liabilities are related to employees and contractors who may have been exposed to asbestos at specific, fixed facilities that the Debtors and/or their predecessors owned, operated, or constructed, as well as to such employees' and contractors' family members.

10. Likewise, the scale of the Debtors' asbestos-related liabilities is limited. From 1992 to the present, the Debtors have incurred approximately $26.4 million in aggregate asbestos defense expenses, relating to just 972 total cases (including a large number in which the Debtors were not directly named as defendants and rather faced indemnity demands, which the Debtors rejected). In total, there are approximately 371 asbestos-related claims currently reflected on the Debtors' chapter 11 schedules (including approximately 119 cases currently being defended). Importantly, approximately 252, or 68%, of those claims relate to alleged contractual

indemnification obligations that the Debtors have rejected, and are not relevant to the Asbestos Bar Date because they were subject to the General Bar Date.

11.     Nevertheless, the Debtors and their advisors formulated a comprehensive Notice Plan to provide sufficient notice to holders of Asbestos Claims.  The Revised Notice Plan features an expansive individual noticing effort targeting tens of thousands of current and former Employees and Contractors who are most likely to have Asbestos Claims against the Debtors and/or the Debtors' predecessors.  Supplemental Katchadurian Declaration, ¶ 9.  Additionally, the Revised Notice Plan utilizes an effective and efficient mix of media to provide notice of the Asbestos Bar Date, specifically targeting the specific geographic regions where the Debtors may have incurred asbestos liabilities.  Notice of the Asbestos Bar Date will be published in seven nationwide consumer magazines, three national newspapers, over 200 local newspapers across forty states, and eleven union labor publications.  Banner Advertisements will be featured on five websites or ad networks, and sponsored Internet search listings will drive Internet users to the Debtors' Asbestos Bar Date Website.  Further, the Informational Release will be distributed to 4,200 print/broadcast and 5,500 online press outlets throughout the United States.  *See* Revised Notice Plan § 2.  As a result, the Revised Notice Plan will reach in the United States ***90.1% of Men 65+ with a frequency of 3.4, 89.4% of Adults 45+ with a frequency of 3.5, and 85.7% of Adults 18+ with a frequency of 3.1***.[7]  Particularly in light of the nature and scale of the Debtors' asbestos-related liabilities, the Revised Notice Plan represents a substantial noticing effort designed to meet the requirements of due process.

---

[7]  The reach and frequency calculations do not include, *inter alia*, the publication of the Publication Notice in local newspapers, the Informational Release, the labor union outreach program, and the sponsored Internet search listings because reach and frequency cannot be measured for such forms of notice.  That does not, however, downplay their significance to the Revised Notice Plan.  Supplemental Azari Declaration at ¶ 15.

7

**II.     The Debtors Should Not Be Required to Incorporate Television in the Notice Plan.**

12.     The EFH Committee maintains that the Debtors must incorporate national and cable television into the Revised Notice Plan, thereby doubling the cost of the Revised Notice Plan.  The Court should reject the EFH Committee's efforts to incorporate television into the Revised Notice Plan for at least four reasons.

**A.     Publication Notice is Sufficient for Unknown Creditors in the Third Circuit.**

13.     *First*, the law in the Third Circuit is clear: print publication notice is generally sufficient for unknown creditors.  The Third Circuit "generally hold[s] that for unknown claimants . . . notice by publication in national newspapers is sufficient to satisfy the requirements of due process, particularly if it is supplemented by notice in local papers." *Wright v. Corning*, 679 F.3d 101, 107–08 (3d Cir. 2012) (finding that a bar date notice that was "published twice in The New York Times, The Wall Street Journal, and USA Today, among other publications," was "sufficient as to most unknown claimants."); *see also Chemetron Corp. v. Jones*, 72 F.3d 341, 348 (3d Cir. 1995) ("It is well established that, in providing notice to unknown creditors, constructive notice of the bar claims date by publication satisfies the requirements of due process."); *In re Energy Future Holdings Corp.,* 522 B.R. 520, 537 (Bankr. D. Del. 2015) (Sontchi, J.) ("[T]he weight of the developing authority holds that publication notice *may* be sufficient to satisfy due process and, thus, would allow for the discharge of the Unmanifested Claims."). Therefore, the Debtors are entitled to balance the extent of notice to be provided against the costs involved with that notice, and to serve publication notice that is reasonable under the circumstances.  *See Owens Corning*, 679 F.3d at 108 (*citing Mullane*, 339 U.S. at 314); *In re Grossman's Inc.*, 607 F.3d 114, 127-28 (3d Cir. 2010) ("In determining whether an asbestos claim has been discharged, the court may wish to consider . . . the *circumstances of the initial exposure to asbestos*, whether and/or when the claimants were aware

8

of their vulnerability to asbestos, whether the notice of the claims bar date came to their attention, whether the claimants were known or unknown creditors, whether the claimants had a colorable claim at the time of the bar date, and other circumstances specific to the parties . . . .").

> **B.     The EFH Committee's and Kinsella Declaration's Reliance on Large Asbestos Bankruptcy Cases is Misplaced.**

14.     *Second*, unlike the debtors in these chapter 11 cases, the debtors in the asbestos bankruptcy cases relied upon in the EFH Committee's Objection and Kinsella Declaration had widespread asbestos personal injury liabilities, involving tens or hundreds of thousands of asserted claims. *See* Kinsella Declaration ¶ 15. The debtors in *In re The Babcock & Wilcox Company* designed, engineered, manufactured, and serviced industrial boiler systems; over 400,000 asbestos-related claims had been filed against the *Babcock* debtors before they commenced their chapter 11 cases.[8] The debtors in *In re Garlock Sealing Technologies LLC* produced and sold asbestos gaskets that were then sold to insulation manufacturers;[9] over 835,000 asbestos-related claims had been filed against the *Garlock* debtors before they commenced their chapter 11 cases.[10] Similarly, the asbestos class action defendant Fibreboard Corp., in *Ahearn v. Fibreboard Corp.*, No. 6:93cv526 (E.D. Tex.), had "manufactured a variety of products containing asbestos," and correspondingly found itself facing "thousands of new claims for compensatory damages each year" through the 1980s and 1990s.[11]

---

[8]     *See In re Babcock & Wilcox Co.*, No. 00-10992, 2004 WL 4945985, at *2 (Bankr. E.D. La. Nov. 9, 2004), *vacated*, No. CIV.A. 05-232, 2005 WL 4982364 (E.D. La. Dec. 28, 2005).

[9]     *In re Garlock Sealing Technologies, LLC*, 504 B.R. 71, 73 (Bankr. W.D.N.C. 2014).

[10]    Affidavit of Katherine Kinsella Regarding Plan Notification Program, Exh. 1, at 6 *In re Garlock Sealing Techs., LLC,* No. 10-31607 (Bankr. W.D.N.C. Feb. 18, 2015) (ECF No. 4387-1).

[11]    *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 822 (1999). *See also In re Dow Corning Corp.*, 255 B.R. 445, 462 (E.D. Mich. 2000), *aff'd and remanded*, 280 F.3d 648 (6th Cir. 2002) (stating that at the time of filing its petition, *Dow Corning* "was a defendant in over 19,000 individual silicone-gel breast implant class actions, 45 putative silicone-gel breast implant class actions, and 470 lawsuits involving nonbreast implant medical products."); *Carlough v. Amchem Products, Inc.*, 158 F.R.D. 314, 321 (E.D. Pa. 1993) (describing class action

9

15. Here, the Debtors do not have the types of asbestos exposure that were involved in such large asbestos bankruptcy cases. The Debtors' asbestos liabilities do not arise from extensive "points of contact" that were expansive in scope and difficult to identify, such as consumer products, building materials, and mechanical components in the stream of commerce. In fact, quite the opposite is true. The locations of the Debtors' potential asbestos exposure can be pinpointed geographically. And, at present, the Debtors are aware of fewer than 1,000 total asbestos-related cases, comprising just over 1,500 claims, many of which relate to rejected indemnification demands and not to asbestos personal injury claims asserted against the Debtors. The Debtors' total asbestos liabilities to date, even including the rejected indemnification demands, total **less than 1% of either the *Garlock* or *Babcock* debtors' liabilities**. As such, the notice plans used in large asbestos bankruptcy cases are not comparable.

### C. The Debtors' Proposed Asbestos Bar Date Does Not Seek a 524(g) Channeling Injunction or to Bar Future Claims.

16. *Third*, the Debtors are not seeking to bar future claims or impose a 524(g) channeling injunction, both of which entail additional due process considerations. The Debtors have not proposed to apply the Asbestos Bar Date to "future claims," *i.e.*, any claims where individuals have not yet been exposed to asbestos. *See* **Exhibit A**, Revised Asbestos Bar Date Order at ¶ 2 (stating that Asbestos Bar Date is applicable to entities asserting Asbestos Claims that "arose (or [are] deemed to have arisen) prior to the Petition Date."). Rather, the Revised Asbestos Bar Date Order will only apply to Known Asbestos Claimants and current Unknown Asbestos Claimants holding manifested or unmanifested Asbestos Claims. Additionally, all holders of Asbestos Claims subject to the Asbestos Bar Date—like any holder of any claim that

---

with more than 9,000 plaintiffs ); *BP*, 2Q14 – Part 1 of 1, Released July 29, 2014, p. 23, *available at* http://otp.investis.com/clients/uk/bp/rns/regulatory-story.aspx?cid=233&newsid=436276 (last visited July 9, 2015) (describing Gulf of Mexico oil spill class action settlement costs of $9.2 billion).

is discharged in bankruptcy—will retain the right to argue that they did not receive sufficient due process. As such, the statutory due process requirements of section 524(g) are not implicated here. *See In re Combustion Eng'g, Inc.*, 391 F.3d 190, 234 n. 45 (3d Cir. 2004) (stating that many of the statutory requirements of section 524(g) "are specifically tailored to protect the due process rights of future claimants.").

        **D.**        **Notice by Television is Not Legally Required.**

    17.        ***Fourth***, notice by television has never been a legal requirement, even in "asbestos bankruptcy cases." *See*, *e.g.*, *In re The Flintkote Co.*, No. 04-11300, *Order (I) Counting Previously Solicited Votes Pursuant to 11 U.S.C. § 1127(d); (II) Approving Form, Scope, and Procedures for Resolicitation of Votes on Modified Plan of Reorganization; (III) Approving Supplemental Disclosure Document; and (IV) Scheduling the Confirmation Hearing and Deadlines in Respect Thereof*, ECF No. 8768 (Bankr. D. Del. Mar. 17, 2015) (approving constructive notice of debtors' 524(g) plan solicitation process that did not include paid television component where debtors had been named in over 157,000 asbestos personal injury claims prior to commencing their chapter 11 cases); *In re ASARCO LLC*, No. 05-21207, *Order (I) Establishing August 1, 2006 as the General Bar Date for Claims; (II) Establishing September 30, 2006 as the Asbestos Claims Bar Date; (III) Establishing Other Bar Dates for Claims Not Subject to the General Bar Date; (IV) Approving Proof of Claim Forms; and (V) Approving the Form and Manner of Notice of the Bar Dates and the Amendment of Schedules*, ECF No. 2076 (Bankr. S.D. Tex. Apr. 28, 2006) (approving national and local publication notice without television component as sufficient notice for bar dates, including asbestos bar date, where debtors were subject to tens of thousands of asbestos claims related to historical operations of two of the debtors); *In re Fed.-Mogul Global Inc.*, No. 01-10578, *Motion of Debtors and Debtors in Possession for an Order (A) Establishing Bar Date for Filing Proofs of Claim on Account*

*Asbestos-Related Damage to Property Located in the United States and Canada; (B) Approving Proposed Proof of Claim Form for such Asbestos-Related Property Damage Claims; and (C) Approving Scope and Manner of Notice of Bar Date for Asbestos-Related Property Damage Claims*, ECF No. 1682 (Bankr. D. Del. May 7, 2002) (where debtors had a limited history of United States asbestos property damage liability, describing bar date notice plan primarily based on direct mailing targeting specific geographic locations where the debtors might have incurred such liability, with reach of 80% and 86% for respective target audiences and respective frequencies of 2.36 and 2.68 without paid television component) (approved by order at ECF No. 1867).[12]

18. In the same vein, the cases relied upon by the EFH Committee do not impose a legal requirement to incorporate television in the Revised Notice Plan and, moreover, are distinguishable from the circumstances here. In *Gaeth v. Deacon*, a notice published in a geographic region to which the intended target had only tenuous ties was found to be insufficient. 964 A.2d 621, 627–28 (Me. 2009). The court in *Gaeth* suggested that, had the intended target had stronger geographic ties to the region in which the notice was published, the notice may have been sufficient. *Id.* at 628, n. 4. Similarly, the district court in *In re New Century TRS Holdings, Inc.*, did not find that publication notice could *never* be sufficient to fulfill the requirements of due process. Rather, the district court found that a single publication in

---

[12] In bankruptcy cases where some asbestos claims were listed on the debtors' schedules and statements, bar dates also have been established for all claims without requiring television. *See, e.g., In re Furniture Brands Int'l, Inc.*, No. 13-12329 (CSS), ECF No. 350 (Bankr. D. Del. Oct. 10, 2013) (bar date applicable to all claims; notice of the bar date to be published once; asbestos litigation referenced in schedules); *In re Ormet Corp.*, No. 13-10334 (MFW), ECF No. 250 (Bankr. D. Del. Apr. 23, 2013) (bar date applicable to all claims; notice of the bar date to be published in three publications; asbestos litigation referenced in schedules); *In re Overseas Shipholding Gr'p, Inc.*, No. 12-20000 (PJW) (Bankr. D. Del. Apr. 10, 2013) (bar date applicable to all claims; notice of the bar date to be published in three publications; schedules included at least one pending asbestos litigation, and an asbestos law firm filed a proof of claim asserting 3,500 asbestos claims that were ultimately disallowed as time-barred); *In re Lyondell Chem. Co.*, No. 09-10023 (REG) (Bankr. S.D.N.Y. Apr. 16, 2009) (bar date applicable to all claims; notice of bar date to be published at least once in six different publication; asbestos claims referenced in schedules).

12

*one* national newspaper targeted at relatively sophisticated readers, supplemented with publication in *one* locally-circulated newspaper, may not have been sufficient notice. 528 B.R. 251, 260 (D. Del. 2014). Finally, *In re Dow Jones & Co.* is a state case cited out of context interpreting due process requirements under a state statute. Yet, even there, the court ultimately concludes that "due process requirements for notice by publication" must be evaluated in light of the facts of each case. 2009 WL 7416516, *4 (Va. Cir. Ct. Nov. 17, 2009).[13]

19.     Here, unlike the cases cited by the EFH Committee, the Debtors are not limiting the Publication Notice to one or two publications in limited geographic regions. Rather, the Debtors and their advisors have formulated a comprehensive Notice Plan, with nationwide reach across various age groups, to place potential Asbestos Claimants, including holders of unmanifested Asbestos Claims, on notice of the Asbestos Bar Date. In addition, the Revised Notice Plan implements a robust direct noticing program to Employees and Contractors and Known Asbestos Claimants to inform them of the pendency of the Asbestos Bar Date. Without television, the Revised Notice Plan is already sufficient to meet the requirements of due process.

20.     In light of all of the foregoing, the Debtors respectfully submit that the Revised Notice Plan is extensive and adequate under the circumstances and meets the requirements of due process.

*[Remainder of page intentionally left blank.]*

---

[13]   Indeed, in comparing the Wall Street Journal and the Virginia-Pilot, the court states that "due process requirements for notice by publication might be met by publishing in either or neither of the two newspapers." 2009 WL 7416516, *4.

WHEREFORE, the Debtors respectfully request that the Court overrule the Objection, enter the Asbestos Bar Date Order, and grant such other relief as it deems necessary and proper under the circumstances.

Dated: July 13, 2015
      Wilmington, Delaware

      */s/ Jason M. Madron*
**RICHARDS, LAYTON & FINGER, P.A.**
Mark D. Collins (No. 2981)
Daniel J. DeFranceschi (No. 2732)
Jason M. Madron (No. 4431)
920 North King Street
Wilmington, Delaware 19801
Telephone:   (302) 651-7700
Facsimile:   (302) 651-7701
Email:   collins@rlf.com
   defranceschi@rlf.com
   madron@rlf.com

-and-

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Edward O. Sassower, P.C. (admitted *pro hac vice*)
Stephen E. Hessler (admitted *pro hac vice*)
Brian E. Schartz (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022-4611
Telephone:   (212) 446-4800
Facsimile:   (212) 446-4900
Email:   edward.sassower@kirkland.com
   stephen.hessler@kirkland.com
   brian.schartz@kirkland.com

-and-

James H.M. Sprayregen, P.C. (admitted *pro hac vice*)
Marc Kieselstein, P.C. (admitted pro hac vice)
Chad J. Husnick (admitted *pro hac vice*)
Steven N. Serajeddini (admitted *pro hac vice*)
300 North LaSalle
Chicago, Illinois 60654
Telephone:   (312) 862-2000
Facsimile:   (312) 862-2200
Email:   james.sprayregen@kirkland.com
   marc.kieselstein@kirkland.com
   chad.husnick@kirkland.com
   steven.serajeddini@kirkland.com

*Co-Counsel to the Debtors and Debtors in Possession*