# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) Case No. 14-10979 (CSS) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |
| | ) **Re: D.I. 4983** |

## DECLARATION OF CAMERON AZARI IN SUPPORT OF THE DEBTORS' REPLY TO THE OBJECTION OF THE EFH OFFICIAL COMMITTEE TO THE DEBTORS' ORDER (A) SETTING BAR DATE FOR FILING ASBESTOS PROOFS OF CLAIM, (B) APPROVING THE FORM AND MANNER FOR FILING ASBESTOS PROOFS OF CLAIM, AND (C) APPROVING NOTICE THEREOF

Pursuant to 28 U.S.C. § 1746, I, Cameron Azari, Esq., hereby declare as follows under penalty of perjury:

1.  I make this Declaration in support of the *Debtors' Reply to the Objection of the EFH Official Committee to the Debtors' Order (A) Setting Bar Date for Filing Asbestos Proofs of Claim, (B) Approving the Form and Manner for Filing Asbestos Proofs of Claim, and (C) Approving Notice Thereof*, (the "Debtors' Reply").[2] I previously filed my *Declaration of Cameron Azari in Support of the Form and Manner of Notice of Bar Date with Respect to Asbestos Proofs of Claims* in this matter and that document included my relevant background and experience.

2.  I have read thoroughly the *Objection of the EFH Official Committee to the Debtors' Order (A) Setting Bar Date for Filing Asbestos Proofs of Claim, (B) Approving the*

---

[1] The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, for which joint administration has been granted, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

[2] Capitalized terms used but not defined herein have the meanings assigned to them in the Debtors' Reply.

RLF1 12487825v.1

*Form and Manner for Filing Asbestos Proofs of Claim, and (C) Approving Notice Thereof* (the "Objection") and the supporting *Declaration of Katherine Kinsella* (the "Kinsella Declaration"). I have also reviewed the comments to the Debtors' proposed Claim Form and the various other Notices and on the Notice Plan itself. As noted in the Objection (¶¶ 14-15), these comments (the "Kinsella Recommendations") were relayed in summary to Hilsoft and the Debtors' counsel on a telephone conference with Kinsella and the EFH Committee on June 23, 2015. As accurately reported in the Objection, the Debtors in consultation with Hilsoft took the Kinsella Recommendations under advisement. The Objection and Kinsella Declaration provide substantial additional detail on the Kinsella Recommendations. Hilsoft has consulted with the Debtors on these recommendations and has made adjustments to the Notice Plan (the "Revised Notice Plan") in response. The Revised Notice Plan is attached to this declaration as **Exhibit A**. Changes made to the proposed Notices and to the Notice Plan are summarized below.

**I.    Claim Form and Notices**

3.    *Claim Form*. The Objection suggests that a separate Proof of Claim Form be used for Asbestos Claimants. (Objection ¶ 37.) Hilsoft had not previously been asked to provide input on the design of the Claim Form for Asbestos Claimants, but agrees that a separate form, requiring only relevant information to holders of an *unmanifested* Asbestos Claim, is appropriate here. A proposed Unmanifested Asbestos Claim Form is included with Attachment 3 to the Revised Notice Plan. Hilsoft believes that it is still appropriate for holders of manifested Asbestos Claim to utilize the Proof of Claim Form or Official Form 10, because there will be very few of these potential claimants, virtually all should be represented by counsel, and it is reasonable to ask potential claimants the information required by the Proof of Claim Form and Official Form 10.

4.  *Asbestos Bar Date Notice*.  As with the Claim Form, Hilsoft had not previously been asked to provide input on the Asbestos Bar Date Notice to be sent as part of the Bar Date Package mailed to known Asbestos Claimants, as well as Employees and Contractors.  Hilsoft agrees that it is appropriate to revise the Asbestos Bar Date Notice to enhance accessibility for the average reader, and agrees that it be broken down into a question and answer format.  After revision, the Asbestos Bar Date Notice currently has a 9.3 Flesch-Kincaid Grade Level.  This means that, according to Flesch-Kincaid, a reader needs only slightly more than a ninth grade education to understand the document.  The revised Asbestos Bar Date Notice is included with Attachment 3 to the Revised Notice Plan.

5.  *Publication Notice*.  Hilsoft disagrees with the Objection and the Kinsella Declaration that the original Publication Notice is deficient.  The Objection states that, "[t]he publication notice must use a headline that immediately captures the attention of the claimant, it must clearly state in plain language that an individual may have been primarily or secondarily exposed to asbestos in connection with the construction, maintenance, or operation of the Debtors' facilities, educate the claimant on asbestos-related disease, identify who has the right to file a claim, and detail the repercussions for failing to do so."  (Objection ¶ 51 (citing Kinsella Declaration ¶¶ 54-58).)  With the possible exception of "educating the claimant on asbestos-related disease," the original Publication Notice drafted by Hilsoft included all these elements, drafted in plain language.  Reasonable minds can differ on style and appear to have done so here, but minor disagreement on word choice or formatting does not render the Publication Notice "deficient."

6.  Further, Kinsella proposes listing all local power plants and their locations in each local newspaper insertion of the Publication Notice.  (Kinsella Declaration ¶ 57.)  This is

impractical and potentially misleading. Providing a listing of area plants in a local newspaper risks omitting a specific plant where a reader or a family member may have formerly worked. For example, in Texas alone, there are dozens of current and former plant locations. There is no practical way to decide, for any particular Publication Notice to be published in any particular local newspaper, how large of a geographic region should be used to determine the list of relevant Texas facilities. Moreover, a voluminous list of local facilities could consume the entire Publication Notice. Hilsoft believes it is best to prominently note on the Publication Notice that a reader can visit the Asbestos Bar Date Website or call the Toll-Free Number for a complete list of plants and their locations, which the Debtors' proposed Publication Notice does.

7. Of course, Hilsoft approached Kinsella's comments and recommendations with a goal of reaching agreement with the Committee on the Publication Notice. Accordingly, Hilsoft reviewed the proposed "alternative publication notice" drafted by Kinsella and revised the Publication Notice to include Kinsella's suggested text and themes, where appropriate. The revised Publication Notice is included with Attachment 3 to the Revised Notice Plan. Other than declining to list all local power plants and their locations in the local newspaper insertions (for the reasons discussed above), the revised Publication Notice addresses all of Kinsella's comments and recommendations.

8. *Cover Letter, Envelope, and Internet Banner Advertisement*. As with the Publication Notice, Hilsoft disagrees that the originally proposed Cover Letter, Envelope design and Banner Advertisement are deficient in any way. But also as with the Publication Notice, Hilsoft analyzed the Committee's suggestions on these issues with a goal of reaching agreement with the Committee where possible.

9. Hilsoft disagrees with the suggestion that the Cover Letter be personalized with the name of the facility where a particular potential claimant worked. (Objection ¶ 57.) On the surface, this seems like a reasonable suggestion, but for many known Asbestos Claimants and Employees and Contractors who receive a Bar Date Package by mail, the data may not establish with certainty the plant location(s) where each specific individual worked. The potential for identifying an incorrect plant name and confusing a recipient outweighs any benefit of personalizing each letter with a particular plant name.

10. Hilsoft does not have an objection to the bulk of the remaining text in the alternative cover letter suggested by Kinsella. As such, Hilsoft has adopted much of this text in the revised Cover Letter included with Attachment 3 to the Revised Notice Plan, which will be included with Bar Date Packages sent to Employees and Contractors. A separate Cover Letter will be used for Known Asbestos Claimants, a copy of which is included with Attachment 3 to the Revised Notice Plan. As for the Envelope and Banner Advertisement, Hilsoft has made revisions based on the suggestions made by Kinsella and based on the new headline Hilsoft has drafted for the Publication Notice. A revised Envelope and Banner Advertisement are included with Attachment 3 to the Revised Notice Plan.

## II. The Notice Plan

11. *Reach and Frequency*. The Kinsella Declaration contends that the Notice Plan has an insufficient reach and frequency. (*See* Kinsella Decl. ¶¶ 15, 20-26.) Hilsoft disagrees. The appropriateness of the Notice Plan cannot be assessed on the reach and frequency numbers alone. Reach and frequency are valuable tools in measuring the breadth of the *measured* notice effort, but reach and frequency numbers are not and should not be viewed as a substitute for notice itself. Our estimated reach and frequency projections do not take into account the elements of this notice effort that cannot be conservatively calculated, such as the individual

notice effort and the publication of notice in local newspapers. However, projecting the reach and frequency of the notice effort without these elements does not diminish the importance of the notice provided by those elements.

12. As an initial matter, Kinsella dismisses as "supplemental" the significant effort to identify and provide direct notice to current and former employees of the Debtors, because (as everyone acknowledges) an accurate count of total former employees of the Debtors cannot be made for the purposes of estimating the percentage reach of individual notice. (Kinsella Decl. ¶¶ 33-34.) This does not render the individual notice effort "supplemental," however. To the contrary, the individual notice effort is *primary* and a key part of the Notice Plan. It is a differentiator from other asbestos bankruptcy efforts where individual notice data is not typically available.

13. In analogous situations, Federal Rule of Civil Procedure 23 directs that when a class is certified in a class action lawsuit, class members must be given "the best notice practicable under the circumstances including individual notice to all members who can be identified through reasonable effort."[3] Accordingly, "individual notice must be sent to all class members whose names and addresses may be ascertained through reasonable effort."[4] Here, the goal of delivering notice to an ascertainable group of people is the same. The Debtors thus undertook a significant effort to identify the names and addresses of current and former employees who could be provided individual notice. That individual notice thus very well may be the best notice practicable for a large number of claimants, regardless of whether that effort can be quantified in terms of "reach" or "frequency".

---

[3] Fed. R. Civ. P. 23(c)(2)(B).

[4] *Eisen v. Carlisle & Jacquelin et al.*, 417 U.S. 156 (1974).

RLF1 12487825v.1

14. Another element of the Notice Plan, the extensive local newspaper effort, is also characterized by Kinsella as supplemental because it is not included in the reach and frequency calculation. (*See* Kinsella Decl. ¶ 29). Like the individual notice effort, publication in newspapers covering the plant and facility locations is not supplemental. It is an important part of the Notice Plan that happens not to be included in the reach and frequency measurements.[5] Because the potential asbestos exposure at issue here was to workers at known, physical locations (the Debtors' facilities), notice via an extensive local newspaper effort in the location areas will also be an important component of the Notice Plan.

15. Particularly given the context, the individual and local newspaper notice efforts that the Committee casually (and incorrectly) dismisses as "supplemental" are in actuality significant components of the overall notification effort.

16. In combination with the individual notice effort, an extensive schedule of notice appearances in local newspapers and other unmeasured efforts, the calculated reach and frequencies in the original Notice Plan were extensive and appropriate.[6] Nevertheless, in an attempt to address some of the Committee's and Kinsella's concerns about the measured reach of the Notice Plan, Hilsoft has increased the online portion of the notice effort in order to achieve a

---

[5] Because many small local papers are not measured for their reach, local newspapers are not included in our reach and frequency calculations. Interestingly however, it is possible to account for the reach of the local newspaper plan into some markets. This calculation involves looking at the Designated Marketing Area ("DMA") where the newspaper, nationwide print, and online notice will appear. One example is the DMA that includes Houston, Texas. Accounting for the reach of the local newspapers included there, the Revised Notice Plan will reach in excess of an estimated 94% of Men 65+ in the Houston area.

[6] In a footnote in the Kinsella Declaration (¶ 20, n.3), it is suggested that Hilsoft's reach and frequency calculations were overstated. Hilsoft's media planners used the 2014 GfkMRI Doublebase Study and the comScore April 2015 Study to calculate the reported reaches. After consultation with the EFH Committee and Kinsella, we know that the minor discrepancy comes from differences in how each party is mixing the reach of the online media with the measured print media. Hilsoft has confirmed with comScore that our method is valid and we are confident in our reach and frequency calculations.

7

90% reach against the new primary target, Men aged 65+. The expanded online notice is detailed in the Revised Notice Plan.

17.  *Media Targets*. The Kinsella Declaration also asserts that the demographic targets for the measured media were not "entirely correct." (Kinsella Decl. ¶¶ 35-40) Instead of using Men aged 55+ and all Adults aged 18+, Kinsella suggested that the targets should be Men aged 65+, all Adults aged 45+, and all Adults aged 18+. In practical effect, this is a distinction without much of a difference. Men aged 65+ are already necessarily included within the Media Plan's original primary audience of Men aged 55+, and the media usage habits of each of these age groups are not drastically different. Reach and frequency calculations to identical media for Men in age groups 55+ and 65+ differ by less than a single percentage point. Changing the targets as suggested does not alter a media planner's selection of appropriate media.

18.  Despite the above, Hilsoft has no issue with measuring the reach and frequency of the Media Plan using the demographic targets Kinsella suggests. The Revised Notice Plan includes these targets and now has the following measured reaches and frequencies:

| *Audience* | *Reach* | *Frequency* |
|---|---|---|
| Men aged 65+ | 90.1% | 3.4 |
| All Adults aged 45+ | 89.4% | 3.5 |
| All Adults aged 18+ | 85.7% | 3.1 |

Full discussion of the measured reach and frequency to all targets is included in the Revised Notice Plan.

19. *Additional Recommendations*. Hilsoft reviewed Kinsella's "additional recommendations" to the Notice Plan (Kinsella Decl. ¶¶ 48-50), and reviewed Kinsella's proposed media plan.[7] Hilsoft has incorporated the following recommendations and revisions:

- ***Regional Newspapers in the state of Nebraska***. Hilsoft has added an insertion into the local newspaper in Omaha (*Omaha World-Herald*).

- ***Largest Circulation Newspaper in each DMA***. Hilsoft agrees with adding to the Notice Plan the highest circulation newspaper for each DMA that includes a plant location where that newspaper is not already included either on its own or via Parade Magazine.

- ***Spanish Language Newspapers in certain states***. Hilsoft does not agree that publishing in Spanish language newspapers is a necessary part of the Notice Plan or that the Plan would be deficient without them. Other than geography, there is no evidence that former workers consume their media in Spanish or that there is a non-English speaking component to the target audience. Hilsoft does not think it is an unreasonable request, however, and has added Spanish language newspapers in Arizona, California, Colorado, Florida, New Mexico, New York and Texas. These publications are included in the Revised Notice Plan.

- ***Trade Publications***. Hilsoft agrees the trade publications are not crucial to the notice effort and has removed them from the Revised Notice Plan.

- ***Veterans Publications***. Hilsoft agrees that the Publication Notice could be placed in VFW Magazine and American Legion. These publications add a small amount of measured reach and are well-targeted to older men. They have been included in the Revised Notice Plan.

20. *Television*. Neither the Objection nor the Kinsella Declaration asserts that the target audience cannot be effectively reached without the use of television. To put it differently, the Revised Notice Plan's reach of 90% to its primary target (Men aged 65+), 89.4% to its secondary target (all adults aged 45+), and 85.7% to its tertiary target (all adults aged 18+) is not insufficient simply because television is not part of the Notice Plan. Rather, the Revised Notice Plan's individual notice effort, local newspaper notice, measured nationwide print and online media, and other supporting efforts represent a substantial and appropriate notice effort. Hilsoft

---

[7] Kinsella informally provided a proposed media plan to the Debtors and their advisors on June 24, 2015.

9

remains of the opinion that television does not need to be a part of the Revised Notice Plan in order to provide effective and appropriate notice.

21. *Comparison of Plans*. The Kinsella Declaration relies on cases with bar date notice programs, such as *In re The Babcock & Wilcox Company*, *In re Dow Corning*, *In re Garlock Sealing Technologies LLC*, *Ahearn and Continental Casualty* ("*Ahearn*"), and *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010* ("*BP*"), to argue that the reach and frequency of the notice provided in the Debtors' original proposed notice plan was insufficient. (Kinsella Decl. ¶¶ 15, 21-25.) These same cases, in addition to *Georgine v. Amchem, Inc.*, ("*Georgine*") are also used as a basis for the opinion that "television . . . is essential to ensuring appropriate notice is provided." (Kinsella Decl. ¶¶ 43, 45).

22. As noted above, the Debtors' Revised Notice Plan increases the reach and frequency, and the Debtors' Revised Notice Plan represents a substantial and appropriate notice effort. But in any event, Hilsoft disagrees that it is appropriate to use *Babcock*, *Dow Corning*, *Garlock*, *Ahearn and Continental Casualty*, *BP*, and *Georgine* to suggest that the Debtors' Notice Plan is not adequate. Notice plans are not and cannot be viewed as interchangeable, and just because a notice plan in one situation uses a media mix that differs from other notice plans in different situations does not mean that the notice plan is insufficient.

23. In this case, although many (but not all) of the notice plans that Kinsella relies on as precedent involved asbestos liabilities, there are certain important distinctions between this case and those others. **First**, *Garlock, Babcock, Ahearn,* and *Georgine* all involved entities with asbestos liabilities arising from those entities' manufacturing and sale of asbestos-containing products. Thus, whereas the *Garlock*, *Babcock*, *Ahearn*, and *Georgine's* asbestos-related liabilities emanated from products that those entities manufactured and sold into the general

10

stream of commerce, here the Debtors' asbestos liability can be sourced to facilities with specific geographic locations. In addition, the primary group of claimants in this case will be individuals who worked at those specific geographic locations. Because of those two facts, the individual notice effort and the local newspaper publications will be particularly effective components of the Revised Notice Plan, even though the reach and frequency of those components cannot be measured.

24. *Second*, a brief review of the cases cited by Kinsella suggests that the scope and amount of known asbestos liabilities in the cases cited by Kinsella were vastly larger than the Debtors' historic asbestos liabilities. *Garlock* had approximately 835,000 asbestos cases and had paid $1.37 billion to plaintiffs for past liabilities between 1975 and 2014. *Babcock* had more than 400,000 claimants and had paid over $1.6 billion to settle claims from 1982 until its bankruptcy filing in 2000. *Ahearn* had 45,000 pending cases, and eventually settled its claims for $1.535 billion. *Georgine* had more than 9,000 cases and over 200,000 historical claimants.

25. While *Dow Corning* and *BP* did not involve asbestos liabilities, *Dow Corning* had been a defendant in over 19,000 product liability class actions at the time it filed its bankruptcy petition. And *BP*'s class action settlement was even larger, with BP estimating that its class action settlement costs are currently $9.2 billion.[8]

26. By comparison, the Debtors' historical asbestos liabilities have been orders of magnitude less than these other cases. Since 1992, the Debtors have incurred approximately $26.4 million of asbestos-related liabilities and expenses on account of 972 cases representing approximately 1,500 claimants (many of which were contractual indemnity claims). Given these

---

[8] BP, 2Q14 – Part 1 of 1, Released July 29, 2014, p. 23, *available at* http://otp.investis.com/clients/uk/bp/rns/regulatory-story.aspx?cid=233&newsid=436276 (last visited July 9, 2015).

11

RLF1 12487825v.1

large differences in both the number of asbestos-related cases and in the overall dollar amount of the liabilities involved in this matter versus the *Garlock, Babcock, Ahearn, Georgine*, *Dow Corning,* and *BP* cases, Hilsoft disagrees that those other cases are appropriate comparisons for this case. For the same reasons, Hilsoft also disagrees that the notice plan in this case must mimic the notice plans in those other cases in order to provide effective, substantial, and appropriate notice.

### III.   Conclusion

27.     As reported above, and based on conservative calculations, the Revised Notice Plan's combined measurable paid media effort alone will reach an estimated 90.1% of Men aged 65+ with an average frequency of 3.4 times each. Although not calculable, reach and frequency of exposure will certainly be enhanced further by the individual notice effort, the local newspaper effort, notice placements in labor union publications, the Informational Release, Internet sponsored listings, and the Asbestos Bar Date Website.

28.     In my opinion, the Revised Notice Plan represents effective and appropriate notice under the circumstances of this case.

[*Remainder of page intentionally left blank.*]

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my information and belief.

Dated: July 13th, 2015

Cameron Azari, Esq.
Director of Legal Noticing
Hilsoft Notifications