**<u>EXHIBIT A</u>**

**Revised Notice Plan**



# *In re: Energy Future Holdings Corp., et. al. Asbestos Claims Bar Date Revised Notice Plan*

*Hilsoft Notifications*
*July 13, 2015*

©2015 Hilsoft Notifications

# *Table of Contents*

*Page*

1.  Introduction                                           4

2.  Overview/Summary                                       5

3.  Notice Schedule Flow Chart                             9

4.  Individual Notice                                      10

5.  Media Planning                                         11

6.  Target Audience                                        12

7.  Net Reach                                              13

8.  Average Frequency of Exposure                          14

9.  Media Selection                                        15

10. Plan Delivery Summary                                  16

11. Geographic Coverage                                    17

12. Nationwide Publications                                19

13. Nationwide Publication Details                         20

14. Nationwide Publication Circulation                     22

15. Secondary Reader Data                                  23

16. Audience Data                                                                24

17. Local Newspapers                                                          25

18. National Newspapers                                                      26

19. Spanish Language Newspapers                                         27

20. Union Labor Publications                                               29

21. Online Plan                                                                    30

22. Labor Union Outreach Program                                       31

23. Placing Notices to be Highly Visible                                32

24. Informational Release                                                      33

25. Website                                                                          34

26. Toll-Free Number                                                            35

27. Sponsored Search Listings                                              36

28. Notice Design Strategy                                                    37

29. Draft Forms of Notice                                                     38

**Attachment 1** – Hilsoft CV

**Attachment 2** – Local Newspapers

**Attachment 3** - Draft Forms of Notice

# *1. Introduction*

The "Updated Notice Plan" (or "Revised Plan") that follows outlines the dissemination effort that will be undertaken to provide fair and adequate notice of the Asbestos Bar Date to those who may have existing or potential Asbestos Claims against the Debtors in the *In re: Energy Future Holdings Corp., et al.* bankruptcy.  The Revised Plan is submitted in connection with the *Debtors' Reply to the Objection of the EFH Official Committee to the Debtors' Order (A) Setting a Bar Date for Filing Asbestos Proofs of Claim, (B) Approving the Form and Manner for Filing Asbestos Proofs of Claim, and (C) Approving Notice Thereof.*

The Revised Plan is based on meeting key objectives, utilizes extensive and related prior class action and bankruptcy notice experience, and is substantiated by industry standard research tools and data.  Many courts have approved this type of plan, the notice techniques it employs, and the delivery it achieves in terms of the percentage of the target audience reached.

Hilsoft Notifications has designed and will implement this Revised Notice Plan. With experience in more than 300 cases, Hilsoft Notifications' notices have appeared in 53 languages with distribution in almost every country, territory and dependency in the world.    Courts, including in published decisions, have recognized and approved numerous Hilsoft notice plans.  Key Hilsoft Notifications principals Cameron Azari, Esq., Director of Legal Noticing, and Lauran Schultz, Executive Director, have designed the Revised Plan, and will oversee implementation to successful completion.  Hilsoft Notifications' curriculum vitae, including judicial comments recognizing notice expertise and approved plans, is attached as **Attachment 1.**

The proposed notice documents (the "Notice" or "Notices") follow the principles in the Federal Judicial Center's ("FJC") illustrative model forms of plain language notices.  To assist judges and attorneys in state as well as federal courts, the FJC has posted these model notices at www.fjc.gov.

© 2015 Hilsoft Notifications

# *2. Overview/Summary*

- ***Objective***.  To provide fair and adequate notice of the Asbestos Bar Date to those who may be affected and direct them to more detailed information about the bankruptcy, and make them aware of the need to file a claim before the bar date in order to preserve their rights.

- ***Background***.  Current asbestos claims against Energy Future Holdings Corp, et al. and its affiliates or subsidiaries ("EFH" or "the Debtors") are related to the operations of:

  (I) Ebasco Services, Inc. (Ebasco), before its principal assets were sold in December 1993.  Ebasco did not mine or manufacture asbestos, did not install asbestos in residential or commercial structures, and did not manufacture products containing asbestos.  Ebasco was an engineering and construction company that was involved in the design, construction, and/ or maintenance of various electric generating units.  The claims generally relate to asbestos exposure as a result of the design (specifications), construction, or maintenance of the plants and involve direct or bystander exposure to pipe and wiring insulation, gasket material, welding blankets and gloves, turbine insulation/blankets and other asbestos-containing materials, machinery, and equipment; and

  (II) Texas Competitive Electric Holdings Company LLC and its subsidiaries and predecessors, including but not limited to, Luminant Generation Company LLC, Dallas Power & Light Company, Texas Power & Light Company, Texas Electric Service Company, Texas Utilities Electric Company and Industrial Generating Company.  These entities owned/operated power plants that may have had asbestos on the premises. Allegations of asbestos exposure generally allege premises liability and negligence.  The claims generally relate to exposure during construction or maintenance of the plants and involve direct or bystander exposure to pipe and wiring insulation, gasket material, welding blankets and gloves and turbine insulation/blankets and other asbestos-containing materials, equipment and machinery.  The TCEH debtors operate approximately 25 plant sites.

  Further, the Debtors' records on asbestos expenses (including both litigation costs and settlement amounts), show that the Debtors have incurred a total of approximately $26.4 million in aggregate asbestos expenses related to approximately 972 total cases (including a large number of indemnification

demands that the Debtors have not accepted) from 1992 to present.  From 2009–2013, expenses related to asbestos claims averaged approximately $2 million per year.  These individuals are referred to as "Known Asbestos Claimants".  All other individuals who may have been exposed to asbestos, whether they have a currently manifested illness or not, and who may have a current or future claim against the Debtors are referred to as "Potential Asbestos Claimants."

- *Imperatives.*  Key factors guide the dissemination methods needed to achieve a reasonable and effective notice effort:

  1. Individual notice will be sent to all Known Asbestos Claimants and their counsel (if known).  Individual notice will also be sent to all Potential Asbestos Claimants who can be identified from the Debtors' records (past and current employees and contractors).

  2. Potential Asbestos Claimants are located throughout the nation, but particular geographic areas where Potential Asbestos Claimants may be concentrated can be identified based on where the Potential Asbestos Claimants worked.

  3. Because potential asbestos exposure would have occurred many decades ago in predominantly male-dominated occupations, the primary target for the media will be older men.

  4. Because some Potential Asbestos Claimants cannot be reached via individual notice, high quality publication notice methods are needed to convey the importance of the information regarding the Asbestos Bar Date.

- *Target Audience.*   All adults who were employed by one or more of the Debtors listed in the case *In re: Energy Future Holdings Corp., et al.* or that may have worked for other entities at one of the facilities owned, operated, maintained, designed, or constructed by one of the debtors.

  Based on data provided by the Debtors, a review of claims filed to date, the work types most likely to have been exposed to asbestos-containing material and the time period of the potential exposure, it is most likely that the vast majority of Potential Asbestos Claimants are older men.  Asbestos is no longer used in construction projects and decades have passed since employees or contractors of the Debtors worked with asbestos-related materials. Additionally, males account for a higher percentage of the construction profession, especially several decades ago when asbestos was in common use. This does not mean that women or younger people are not an important target

of the notice effort.  But it does indicate that older men are the most likely to be directly affected and are the primary target.

- **Strategies.**  The Bar Date Package will be sent to Known Asbestos Claimants and their counsel and to all identifiable current and former employees and contractors.  In order to reach Potential Asbestos Claimants who cannot be identified and sent individual notice, notice placements will appear nationwide in consumer print publications, labor union publications and in three national newspapers.  Additionally, notice will appear in the form of banner advertisements on major online advertising networks and properties and locally in a variety of daily and weekly newspapers.  Additionally, the Bar Date Package will be mailed to all persons who request one via the toll-free phone number.

  Coverage will be further enhanced by an informational release, sponsored search listings and website.  All notice materials will contain a website address and toll-free number for ease of response and to allow Asbestos Claimants the ability to easily obtain additional information.

- **Delivery.**  The combined measureable, media effort will reach approximately 90.1% of men aged 65+ in the U.S. an average of 3.4 times each, 89.4% of adults aged 45+ in the U.S. an average of 3.5 times each, and approximately 85.7% of adults aged 18+ in the U.S. an average of 3.1 times each.  Coverage will be further enhanced by the extensive individual notice mailing to Potential Asbestos Claimants and the media placements described above for which reach is not measured.  The measurable reach and frequency that will be achieved is consistent with other court-approved notice programs, and is designed to meet due process requirements. Because reach and frequency will be enhanced by the individual notice mailing and by media placements for which reach cannot be measured (such as local publications), the actual reach and frequency that will be achieved will be higher.

- **Notice Tactics.**  The following notice tactics have been selected to best reach Potential Asbestos Claimants:

  1. **Individual Notice.**  The Cover Letter, Publication Notice, Asbestos Bar Date Notice and a Claim Form will be mailed via first class mail to the known holders of Asbestos Claims that are currently pending against the

Debtors (Known Asbestos Claimants) as well as each Known Asbestos Claimant's counsel with respect to such Asbestos Claim (if known).  The Bar Date Notice and Claim Form will also be mailed to individuals identified as current and past employees and contractors of the Debtors and their predecessors who may have been exposed to asbestos.

2. ***Consumer Publications.***  The Asbestos Publication Notice will appear once in the consumer magazines, *AARP Bulletin, American Legion, National Geographic*, *Parade, People, Readers Digest* and *VFW.*

3. ***Local Newspapers***.  The Asbestos Publication Notice will appear once in 226 local newspapers covering geographies surrounding plants and other facilities related to EFH.

4. ***National Newspapers***.  The Asbestos Publication Notice will appear once in *The New York Times, USA Today* and *The Wall Street Journal.*

5. ***Spanish Language Newspapers:*** The Asbestos Publication Notice will appear once in 43 local Spanish language newspapers covering Arizona, California, Colorado, Florida, New Mexico, New York and Texas.

6. ***Union Labor Publications.***  The Asbestos Publication Notice will appear once in 11 union labor publications covering a variety of regions nationwide.

7. ***Online Media.***  Banner advertisements will be placed on *AARP.com, Conversant Ad Network, Facebook, MSN* and *Yahoo! Ad Network.*  All banners will be displayed nationally.

8. ***Informational Release.***  A party-neutral, Court-approved informational release will be distributed to approximately 4,200 print/broadcast and 5,500 online press outlets throughout the United States.  The informational release will be issued in English.

9. ***Sponsored Search Listings.***  Registration of Internet sponsored listings with Google, Yahoo! and Bing.

10. ***Website.***  Separate from the chapter 11 website, a neutral, informational website with an easy to remember domain name will be established so Asbestos Claimants can obtain documents and other information.

- ***Message Content.***  The Notices have been designed to provide a clear, concise, plain language text.  The Notices alert Potential Asbestos Claimants that the message may affect them.  Drafts of the forms of notice are included in **Attachment 3**.

# 3. Notice Schedule Flow Chart

*Tentative schedule for implementing the notice program.*

| Notice Tactic | Week One | Week Two | Week Three | Week Four | Week Five | Week Six | Week Seven |
|---|---|---|---|---|---|---|---|
| Issue Informational Release | ■ | | | | | | |
| Mail Bar Date Package | ■ | ■ | | | | | |
| Local Newspapers | ■ | | | | | | |
| National Newspapers | ■ | | | | | | |
| Spanish Language Newspapers | ■ | | | | | | |
| Parade | | | ■ | | | | |
| People | | | ■ | | | | |
| Readers Digest | | | | | ■ | | |
| American Legion | | | | | ■ | | |
| AARP Bulletin | | | | | | | ■ |
| National Geographic | | | | | | | ■ |
| VFW | | | | | | | ■ |
| Union Labor Publications | ■ | ■ | ■ | | | | |
| Online Banners | ■ | ■ | ■ | ■ | | | |
| Sponsored Search Listings | ■ | ■ | ■ | ■ | ■ | ■ | ■ |
| Website | ■ | ■ | ■ | ■ | ■ | ■ | ■ |

Note:  Print media blocks show when readers first receive publications (the on-sale date). Publications are subject to change by addition, deletion or substitution at the time of placement. Appearance dates may vary within the notice period, based on availability at the time of placement.  Sponsored search listings and the website will continue beyond the schedule indicated here.

© 2015 Hilsoft Notifications

# *4. Individual Notice*

*Reaches Known Asbestos Claimants, their counsel and certain Potential Asbestos Claimants directly with notice by postal mail.*

A Cover Letter, Publication Notice, Asbestos Bar Date Notice and Claim Form (together, the "Bar Date Package") will be mailed via first class mail to the known holders of Asbestos Claims that are currently pending against the Debtors (the "Known Asbestos Claimants") as well as each Known Asbestos Claimant's counsel with respect to such Asbestos Claim (if known).  The Bar Date Package will also be mailed to identified current and previous employees and contractors of the Debtors and their predecessors who may have been exposed to asbestos.  These individuals have been identified from a review of the Debtors' records.

Prior to mailing, addresses will be checked against the National Change of Address ("NCOA") database maintained by the United States Postal Service ("USPS").[1]  If a record is returned from the NCOA database as invalid, reasonable attempts will be made to update it through third-party address search services.  Notices returned as undeliverable will be remailed to any new address available through postal service information, for example, to the address provided by the postal service on returned pieces for which the automatic forwarding order has expired, but which is still during the period in which the postal service returns the piece with the address indicated, or to better addresses that may be found after reasonable, additional third-party source lookups.  Upon successfully locating better addresses, the Notices will be promptly remailed on an ongoing basis.

Additionally, a Bar Date Package will be mailed to all persons who request one.

---

[1] The NCOA database contains records of all permanent changes of address submissions received by the USPS for the last four years.  The USPS makes this data available to mailing firms and lists submitted to it are automatically updated with any reported move based on a comparison with the person's name and known address.

# *5. Media Planning*

*The process of planning the reach and frequency to provide notice to Potential Asbestos Claimants.*

The sources Hilsoft uses to determine the reach and frequency are the same data sources relied upon and cited by media professionals to guide the billions of dollars of advertising produced each year.    These sources include:    GfK MediaMark Research & Intelligence, LCC ("MRI")[2], AAM (formerly ABC data) a trusted sources since 1914[3]; Nielsen[4] and Nielsen Audio[5] formerly Arbitron Inc.), which have been relied upon since 1950; as well as more recently, comScore[6].    All of the leading advertising and communications textbooks cite the need to use reach and frequency planning[7]; 90-100% of media directors use reach and frequency planning[8]; and at least 15,000 media professionals in 85 different countries use media planning software.[9]

---

[2] GfK Mediamark Research & Intelligence, LCC ("MRI") is a leading source of publication readership and product usage data for the communications industry.  MRI offers comprehensive demographic, lifestyle, product usage and exposure to all forms of advertising media collected from a single sample.  As the leading U.S. supplier of multimedia audience research, MRI provides information to magazines, television, radio, internet, and other media, leading national advertisers, and over 450 advertising agencies—including 90 of the top 100 in the U.S.  MRI's national syndicated data is widely used by companies as the basis for the majority of the media and marketing plans for advertised brands in the U.S.

[3] Established in 1914 as the Audit Bureau of Circulations ("ABC"), and rebranded as Alliance for Audited Media ("AAM") in 2012, AAM is a non-profit cooperative formed by media, advertisers, and advertising agencies to audit the paid circulation statements of magazines and newspapers. AAM is the leading third party auditing organization in the U.S. It is the industry's leading, neutral source for documentation on the actual distribution of newspapers, magazines, and other publications. Widely accepted throughout the industry, it certifies thousands of printed publications as well as emerging digital editions read via tablet subscriptions. Its publication audits are conducted in accordance with rules established by its Board of Directors. These rules govern not only how audits are conducted, but also how publishers report their circulation figures.  AAM's Board of Directors is comprised of representatives from the publishing and advertising communities.

[4] Nielsen ratings are the audience measurement systems developed by the Nielsen Company to determine the audience size and composition of television programming in the United States. Since first debuting in 1950, Nielsen's methodology has become the primary source of audience measurement information in the television industry around the world, including "time-shifted" viewing via television recording devices.

[5]  Nielsen Audio (formerly Arbitron Inc., which was acquired by the Nielsen Company and re-branded Nielsen Audio), is an international media and marketing research firm providing radio media data to companies in the media industry, including radio, television, online and out-of-home; the mobile industry as well as advertising agencies and advertisers around the world.

[6] comScore, Inc. is a global leader in measuring the digital world and a preferred source of digital marketing intelligence.  In an independent survey of 800 of the most influential publishers, advertising agencies and advertisers conducted by William Blair & Company in January 2009, comScore was rated the "most preferred online audience measurement service" by 50% of respondents, a full 25 points ahead of its nearest competitor.

[7] Textbook sources that have identified the need for reach and frequency for years include: JACK S. SISSORS & JIM SURMANEK, ADVERTISING MEDIA PLANNING, 57-72 (2d ed. 1982); KENT M. LANCASTER & HELEN E. KATZ, STRATEGIC MEDIA PLANNING 120-156 (1989); DONALD W. JUGENHEIMER & PETER B. TURK, ADVERTISING MEDIA 123-126 (1980); JACK Z. SISSORS & LINCOLN BUMBA, ADVERTISING MEDIA PLANNING, 93-122 (4th ed. 1993); JIM SURMANEK, INTRODUCTION TO ADVERTISING MEDIA: RESEARCH, PLANNING, AND BUYING 106-187 (1993).

[8] *See generally* Peter B. Turk, *Effective Frequency Report: Its Use And Evaluation By Major Agency Media Department Executives*, 28 J. ADVERTISING RES. 56 (1988); Peggy J. Kreshel et al., *How Leading Advertising Agencies Perceive Effective Reach and Frequency*, 14 J.ADVERTISING 32 (1985).

[9] For example, Telmar, established in 1968, is the world's leading supplier of media planning software with over

# *6. Target Audience*

*The demographics, including, but not limited to, those most likely to be a Potential Asbestos Claimant.*

To ensure Hilsoft selected the appropriate media to reach Potential Asbestos Claimants, demographic and media usage data and online media planning data were studied among all men aged 65+ in the U.S. (the primary target), all adults aged 45+ in the U.S. (the secondary target), and all adults, aged 18+ in the U.S. (the tertiary target).

As stated previously, data provided by the Debtors, a review of claims filed to date, the work types most likely to have been exposed to asbestos containing material and the time period of the potential exposure, all indicate that the vast majority of Potential Asbestos Claimants are older men.

Based on MRI data, demographic highlights of men aged 65+ include the following:

- Have a mean household income of $63,896
- 72.1% are married
- 86.4% own a home
- 81.3% are retired
- 85.3% are white
- 51.9% read a daily newspaper
- 36.5% read *Parade*
- 45.4% read the *AARP Bulletin*

Using MRI data, we can also pinpoint certain key demographics that comprise a greater percentage of men aged 65+, relative to the general adult population.  For instance, men aged 65+ are:

- 56.5% more likely to have no children (0-17) living at home
- 110.1% more likely to be widowed
- 38.6% more likely to have a Post-Graduate Degree
- 95.7% more likely to read a daily newspaper
- 260% more likely to read the *AARP Bulletin*
- 390.5% more likely to read *American Legion*
- 25.7% more likely to read *National Geographic*
- 60.8% more likely to read *Parade*
- 39.6% more likely to read *Reader's Digest*

---

15,000 media professionals in 85 countries using their systems for media and marketing planning tools including reach and frequency planning.  Telmar was the first company to provide media planning systems on a syndicated basis.

- 297.6% more likely to read *VFW*

© *2015 Hilsoft Notifications*

# *7. Net Reach*

*Total number of unique people who are exposed to the Notice.*

Hilsoft employs industry-standard computer software, using the latest readership and online traffic data, which together with our own conservative analysis techniques factors out duplicate persons to yield total net persons reached. The proposed measured print and online efforts are estimated to reach:

| *Target* | *% Reached Net of Duplication* |
|---|---|
| *U.S. Men Aged 65+* | *90.1%* |
| *All U.S. Adults aged 45+* | *89.4%* |
| *All U.S. Adults aged 18+* | *85.7%* |

*Source:  2014 MRI Doublebase and comScore.*

The combined measureable reach of the Revised Media Plan accounts for only the seven nationwide consumer publications, three national newspapers and the internet banner advertising components. Many of the other components of the Revised Media Plan are not measured in determining the reach and frequency of the Revised Media Plan, including the individual mailed notice, publication in local newspapers and union publications, the Informational Release, the labor union outreach program, and sponsored internet search listings. Accordingly, the actual reach of the Revised Media Plan is necessarily understated, and the actual reach of the Revised Media Plan is likely higher.

# 8. Average Frequency of Exposure

*Average number of times that each unique person reached will have an opportunity to be exposed to the notice.*

This Revised Notice Plan is intended to provide Potential Asbestos Claimants with a fair and adequate opportunity to view and understand the Notice. A by-product of the media vehicles necessary for a broad net reach is multiple exposures of the Notice from overlapping audience coverage.

This Revised Notice Plan relies upon modern-style, audience-documented media coverage as reported herein, and provides a higher frequency of exposure than a direct mail notice program alone that sends one notice, one time, to a Potential Asbestos Claimant. The average frequency of exposure resulting from the proposed measured print and online efforts of the Notice Program are:

| Target | Average Frequency of Exposure |
|---|---|
| U.S. Men Aged 65+ | 3.4 |
| All U.S. Adults aged 45+ | 3.5 |
| All U.S. Adults aged 18+ | 3.1 |

*Source: 2014 MRI Doublebase and comScore.*

The frequency of exposure will most certainly be further enhanced by the individual mailed notice effort, notice placements in local newspapers, union labor publications, and an informational release, sponsored search listings, labor union outreach program and website.

# *9. Media Selection*

---

*The media vehicles that will best reach Potential Asbestos Claimants in this particular Notice Program.*

---

In addition to providing individual notice, a paid media effort has been selected to effectively deliver a clear message to Potential Asbestos Claimants. We have reviewed the merits of all forms of media and, based on our analysis, our media selection allows:

o A large majority of Potential Asbestos Claimants to be reached by the measureable paid print and online media effort alone (an estimated 90.1% of men aged 65+ in the U.S., 89.4% of all Adults aged 45+ in the U.S., and 85.7% of all Adults aged 18+ in the U.S.).

o Multiple opportunities for Potential Asbestos Claimants to see the message through overlapping reach of the different notice methods.

o "Noticeable" Asbestos Publication Notices in leading consumer magazines, daily and weekly newspapers and other publications that will allow readers to have a written record and the ability to refer back to the Notice, pass it on to others, and easily respond via the website or toll-free number.

o Notice placements in approximately 601 newspapers nationwide via *Parade*, which is inserted in the weekend editions of newspapers.

o Notice placements in national newspapers, local newspapers and Spanish language newspapers to target notice to the geographic areas surrounding plants and other facilities related to EFH.

o Notice placements in appropriate union labor publications targeting labor forces most likely to have been affected by products containing asbestos.

o Extended reach via rotating Banner Notices on a variety of web properties.

o Additional Notice coverage with an informational release, sponsored search listings and website that target broad demographic groups.

o Comprehensive *geographic* coverage across the U.S., ensuring that Potential Asbestos Claimants are not excluded based on where they live (i.e., small towns or large cities).

# 10. Plan Delivery Summary

*Summary of the print and online media portion of the Notice Program.*

| | |
|---|---|
| *Consumer Publications:* | *7* |
| *Consumer Publication Circulation:* | *57,292,486* |
| *Local Newspapers:* | *226* |
| *Local Newspaper Circulation:* | *5,294,758* |
| *National Newspapers:* | *3* |
| *National Newspaper Circulation:* | *3,538,317* |
| *Spanish Language Newspapers:* | *43* |
| *Spanish Language Newspapers Circulation:* | *3,397,331* |
| *Union Labor Publications:* | *11* |
| *Union Labor Circulation:* | *371,000* |
| *Total Publication Circulation:* | *69,893,892* |
| *Banner Advertising Properties* | *5* |
| *Online Gross Impressions* | *≈436,346,154* |
| *Men Aged 65+ Net Estimated % Reached* | *90.1%* |
| *Men Aged 65+ Average Frequency of Exposure* | *3.4* |
| *Adults 45+ Net Estimated % Reached* | *89.4%* |
| *Adults 45+ Average Frequency of Exposure* | *3.5* |
| *Adults 18+ Net Estimated % Reached* | *85.7%* |
| *Adults 18+ Average Frequency of Exposure* | *3.1* |

*Source: 2014 MRI Doublebase Study, Alliance for Audited Media (AAM), formerly Audit Bureau of Circulations (ABC), publication circulation statements and 2014 comScore Report.*

# *11. Geographic Coverage*

*Ensuring that Potential Asbestos Claimants are not excluded simply because of where they live.*

The Revised Notice Plan includes media to target the geographic areas surrounding plants and other facilities related to EFH. This will target Potential Asbestos Claimants since they worked at plants and other facilities related to EFH and/or who may live or may have lived in the area surrounding plants and other facilities related to EFH. In addition, a broad national media effort will target notice across the United States, given that some Potential Asbestos Claimants may no longer be living in the geographic areas surrounding plants and other facilities related to EFH, as well as to reach relatives of deceased Potential Asbestos Claimants.

o Seven national consumer publications (*AARP Bulletin, American Legion, National Geographic, Parade, People, Readers Digest* and *VFW*) provide broad coverage across large markets and small rural areas throughout the U.S.

o Insertions in three national newspapers and insertions 226 local newspapers ensuring both broad and localized coverage of the Notice. Newspapers will cover a variety of states including Alaska, Arkansas, Arizona, California, Colorado, Connecticut, Florida, Idaho, Illinois, Indiana, Iowa, Hawaii, Kansas, Kentucky, Louisiana, Maryland, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, North Carolina, North Dakota, New Jersey, New Hampshire, New Mexico, New York, Ohio, Oklahoma, Oregon, Pennsylvania, South Carolina, Tennessee, Texas, Utah, Vermont, Virginia, Washington, Wisconsin and Wyoming.

o 43 insertions in Spanish language newspapers cover a variety of states including Arizona, California, Colorado, Florida, New Mexico, New York and Texas.

o Eleven insertions in regional labor union publications targeting consumers who may have come in contact with Asbestos products.

o Banner advertisements across major online properties including *AARP.com, Conversant Ad Network*, *Facebook, MSN* and *Yahoo! Ad Network* provide nationwide coverage, giving Potential Asbestos Claimants further opportunities to view the Notice.

o The website allows access to the Notice regardless of geography.

o   The informational release will further enhance exposure throughout the U.S.

o   The sponsored search listings will allow web browsers to access the website by inputting key words related to the litigation.

Accordingly, the Notice will reach Potential Asbestos Claimants regardless of where they live.

# *12.  Nationwide Publications*

*The consumer publications in which the Notice will appear.*

The Publication portion of the Revised Notice Plan includes one placement of the Asbestos Publication Notice in *AARP Bulletin, American Legion, National Geographic, Parade, People, Readers Digest* and *VFW* for a total of seven insertions.  The selected publications cover all demographic groups, specifically targeting men's publications and magazines aimed at older demographic segments.

| Publication | Issuance | Notice Size | # of Insertions |
|---|---|---|---|
| AARP Bulletin | 10x Per Year | Full Page | 1 |
| American Legion | Monthly | Full Page | 1 |
| National Geographic | Monthly | Full Page | 1 |
| Parade | Weekly | 'M' Unit | 1 |
| People | Weekly | Full Page | 1 |
| Readers Digest | Monthly | Spread | 1 |
| VFW | 10x Per Year | Full Page | 1 |
| TOTAL | | | 7 |

# 13.  Nationwide Publication Details

*A summary of the consumer publications in which the Notice will appear.*

| | |
|---|---|
| ***AARP Bulletin*** | • 10x/year national publication targeting mature adults featuring the latest news and information on health, social security, Medicare, politics and more.<br>• Reaches 45.4% of men, aged 65+.<br>• Reaches 22.4% of adults, aged 45+.<br>• Reaches 12.6% of adults, aged 18+.<br>• Current nationwide circulation is 22,000,000.<br>• Planned notice size: full page.<br>• Planned number of insertions: 1x. |
| ***American Legion*** | • Monthly national consumer publication covering world events, national news analysis, current events in Washington D.C, veterans' affairs, current issues, health, retirement, travel and leisure activities.<br>• Reaches 6.8% of men, aged 65+.<br>• Reaches 2.3% of adults, aged 45+.<br>• Reaches 1.4% of adults, aged 18+.<br>• Current nationwide circulation is 2,117,943.<br>• Planned notice size: full page.<br>• Planned number of insertions: 1x. |
| ***National Geographic*** | • Monthly national consumer publication covering travel interests, geography and photography from around the world.<br>• Reaches 16.6% of men, aged 65+.<br>• Reaches 13.4% of adults, aged 45+.<br>• Reaches 13.2% of adults, aged 18+.<br>• Current nationwide circulation is 3,500,000.<br>• Planned notice size: full page.<br>• Planned number of insertions: 1x. |
| ***Parade*** | • Weekly national newspaper supplement covering family, food, health, current events and entertainment.<br>• Provides the single largest readership of any publication.<br>• Carried in approximately 601 newspapers in the U.S.<br>• Reaches 36.5% of men, aged 65+.<br>• Reaches 29.8% of adults, aged 45+.<br>• Reaches 22.7% of adults, aged 18+.<br>• Planned notice size: m-unit (magazine full page equivalent).<br>• Planned number of insertions: 1x. |

| ***People*** | <ul><li>Weekly national consumer publication covering celebrities, human interest and news with a broad demographic readership and geographic coverage.</li><li>Reaches 8.6% of men, aged 65+.</li><li>Reaches 16.9% of adults, aged 45+.</li><li>Reaches 18.15% of adults, aged 18+.</li><li>Current nationwide circulation is 3,425,000.</li><li>Planned notice size: full page.</li><li>Planned number of insertions: 1x.</li></ul> |
|---|---|
| ***Readers Digest*** | <ul><li>Monthly national consumer publication covering health issues, family, home life and food.</li><li>Reaches 13.5% of men, aged 65+.</li><li>Reaches 13.2% of adults, aged 45+.</li><li>Reaches 9.7% of adults, aged 18+.</li><li>Current nationwide circulation is 3,000,000.</li><li>Planned notice size: spread.</li><li>Planned number of insertions: 1x.</li></ul> |
| ***VFW*** | <ul><li>10x/year national publication targeting the nation's veteran war members, ranging from World War II to Iraq and Afghanistan.</li><li>Reaches 4.8% of men, aged 65+.</li><li>Reaches 1.8% of adults, aged 45+.</li><li>Reaches 1.2% of adults, aged 18+.</li><li>Current nationwide circulation is 1,249,543.</li><li>Planned notice size: full page.</li><li>Planned number of insertions: 1x.</li></ul> |

# 14. Nationwide Publication Circulation

*Total number of copies sold through all channels (subscription and newsstand).*

The Revised Notice Plan consists of some of the largest circulating publications in the nation.  Combined, the five publications provide a total circulation of over 57.2 million.

| Publication | Total Nationwide Circulation |
|---|---|
| AARP Bulletin | 22,000,000 |
| American Legion | 2,117,943 |
| National Geographic | 3,500,000 |
| Parade | 22,000,000 |
| People | 3,425,000 |
| Readers Digest | 3,000,000 |
| VFW | 1,249,543 |
| **TOTAL** | **57,292,486** |

*Source:  AAM audit statements (formerly ABC).*

# *15. Secondary Reader Data*

*Secondary or "pass-along" readers of a publication.*

Based on MRI readership data, we know that more readers than just those who purchase or otherwise directly receive circulated issues actually open or read the publication. Many secondary readers will see the Notice away from home: for example, at a subscriber's house; at a doctor's office; in an airport; on an airplane; in the reception area of a company; passed around by co-workers at the place of employment; etc. Exposure in a different environment can increase attentiveness and response potential. It is also beneficial that readership tends to build over a period of time following the publication date. This is evidence that issues can be referred to at any time, thereby providing readers with a longer, sustained opportunity to learn about the Notice.

The following calculations set forth the average number of readers-per-copy of each of the selected publications:

| *Publication* | *Nationwide Readers Per Copy* |
|---|---|
| *AARP Bulletin* | *1.35* |
| *American Legion* | *1.56* |
| *National Geographic* | *8.90* |
| *Parade* | *2.43* |
| *People* | *12.47* |
| *Readers Digest* | *7.62* |
| *VFW* | *2.28* |

*Source:  2014 MRI Doublebase Study audience numbers and AAM statements (formerly ABC).*

# 16.  Audience Data

*Total number of different persons opening or reading a publication.*

The following outlines the total adult audience (readership) for **one insertion** unless otherwise noted in each of the selected publications.  The total audience is based on actual MRI in-depth interview data that identifies how many persons "Opened or Read" a publication.

| Publication | Total Nationwide Adult Audience |
|---|---|
| AARP Bulletin | 29,700,000 |
| American Legion | 3,304,000 |
| National Geographic | 31,155,000 |
| Parade | 53,489,000 |
| People | 42,726,000 |
| Readers Digest | 22,876,000 |
| VFW | 2,848,000 |

*Source:  2014 MRI Doublebase Study.*

# *17. Local Newspapers*

*Covering geographic areas representing plants and other facilities related to EFH.*

The Revised Notice Plan includes 226 daily and weekly newspapers selected to target notice to the geographic areas surrounding plants and other facilities related to EFH.  This will target Potential Asbestos Claimants that worked at plants and other facilities related to EFH, and/or who live or may have lived in the area surrounding plants and other facilities related to EFH.  Newspapers will cover a variety of states including Alaska, Arkansas, Arizona, California, Colorado, Connecticut, Florida, Hawaii, Idaho, Illinois, Indiana, Iowa, Kansas, Kentucky, Louisiana, Maryland, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, North Carolina, North Dakota, New Jersey, New Hampshire, New Mexico, New York, Ohio, Oklahoma, Oregon, Pennsylvania, South Carolina, Tennessee, Texas, Utah, Vermont, Virginia, Washington, Wisconsin and Wyoming.

The list of selected local newspapers is included as **Attachment 2**.

# *18. National Newspapers*

*The national newspapers in which the Notice will appear.*

The Revised Notice Plan includes three daily national newspapers covering the United States.  A broad national media effort will target notice across the United States, given that some Potential Asbestos Claimants may no longer be living in the geographic areas surrounding plants and other facilities related to EFH, as well as to reach relatives of deceased Potential Asbestos Claimants.

| Publication | Distribution | # of Insertions | Circulation |
|---|---|---|---|
| New York Times | National | 1 | 813,228 |
| USA Today | National | 1 | 1,339,937 |
| Wall Street Journal | National | 1 | 1,385,152 |
| **Total** | | **3** | **3,538,317** |

© 2015 Hilsoft Notifications

# 19. Spanish Language Newspapers

*The Spanish Language newspapers in which the Notice will appear.*

The Revised Notice Plan includes 43 daily and weekly Spanish language newspapers selected to target Hispanic readers in geographic areas surrounding plants and other facilities related to EFH. Newspapers will cover a variety of states including Arizona, California, Colorado, Florida, New Mexico, New York and Texas.

| Publication | City | State | # of Insertions | Circulation |
|---|---|---|---|---|
| La Voz de Arizona | Phoenix | AZ | 1 | 75,000 |
| Prensa Hispana | Phoenix | AZ | 1 | 65,000 |
| El Imparcial | Tucson/Sierra Vista | AZ | 1 | 32,365 |
| La Estrella de Tucson | Tucson/Sierra Vista | AZ | 1 | 31,000 |
| La Voz de Yuma Arizona | Yuma/ El Centro | AZ | 1 | 10,000 |
| El Popular | Bakersfield | CA | 1 | 23,100 |
| Vida en el Valle | Fresno/Visalia | CA | 1 | 159,150 |
| La Opinion | Los Angeles | CA | 1 | 63,638 |
| Impacto USA | Los Angeles | CA | 1 | 227,317 |
| Unidos (Full Run) | Los Angeles | CA | 1 | 170,000 |
| Hoy Los Angeles | Los Angeles | CA | 1 | 140,002 |
| El Sol | Monterey/ Salinas | CA | 1 | 30,000 |
| La Prensa Hispana | Palm Springs | CA | 1 | 46,500 |
| Enlace | San Diego | CA | 1 | 176,496 |
| La Opinion De La Bahia | San Francisco/ Oakland/ San Jose | CA | 1 | 103,800 |
| El Observador | San Francisco/ Oakland/ San Jose | CA | 1 | 35,000 |
| El Sol del Valle Imperial | Yuma/El Centro | CA | 1 | 10,000 |
| Viva Colorado | Denver | CO | 1 | 50,000 |
| La Prensa de Colorado | Denver | CO | 1 | 10,000 |
| El Nuevo Herald | Miami/ Ft. Lauderdale | FL | 1 | 182,492 |
| El Sentinel (Ft. Lauderdale/Miami) | Miami/ Ft. Lauderdale | FL | 1 | 150,600 |
| El Sentinel (Orlando) | Orlando/ Daytona Beach/ | FL | 1 | 130,000 |

© 2015 Hilsoft Notifications

|  |  |  |  |  |
|---|---|---|---|---|
|  | Melbourne |  |  |  |
| *La Prensa (Orlando)* | Orlando/ Daytona Beach/ Melbourne | FL | 1 | 35,000 |
| *Centro Tampa* | Tampa/St. Petersburg | FL | 1 | 41,510 |
| *El Semanario Accion* | West Palm Beach/ Ft. Pierce | FL | 1 | 75,000 |
| *El Semanario* | Albuquerque/Santa Fe | NM | 1 | 56,000 |
| *Taos News* | Albuquerque/Santa Fe | NM | 1 | 10,082 |
| *La Voz Hispana* | New York | NY | 1 | 140,000 |
| *Impacto Latin News* | New York | NY | 1 | 57,000 |
| *El Diario La Prensa* | New York | NY | 1 | 50,000 |
| *El Bilingue* | Amarillo | TX | 1 | 5,000 |
| *El Mundo* | Austin | TX | 1 | 45,000 |
| *Al Dia* | Dallas/Ft. Worth | TX | 1 | 250,000 |
| *La Subasta Dallas* | Dallas/Ft. Worth | TX | 1 | 65,000 |
| *El Paso y Mas* | El Paso/ Las Cruces | TX | 1 | 75,000 |
| *El Periodico USA* | Harlingen/Weslaco/ Brownsville/McAllen | TX | 1 | 68,698 |
| *La Voz De Houston* | Houston | TX | 1 | 240,000 |
| *Semana* | Houston | TX | 1 | 145,000 |
| *El Manana* | Laredo | TX | 1 | 27,000 |
| *El Editor (Lubbock)* | Lubbock | TX | 1 | 10,000 |
| *El Editor (Odessa)* | Odessa/ Midland | TX | 1 | 10,000 |
| *La Prensa* | San Antonio | TX | 1 | 60,581 |
| *Tiempo* | Waco/Temple/ Bryan | TX | 1 | 10,000 |
| **Total** |  |  | **43** | **3,397,331** |

# *20. Union Labor Publications*

*The union publications in which the Notice will appear.*

The Asbestos Publication Notice will appear once in 11 publications targeted to the union labor forces most likely to have been directly affected by products containing asbestos.

| Publication | Distribution | # of Insertions | Circulation |
|---|---|---|---|
| Cleveland Citizen/Ohio Labor Citizen | Regional | 1 | 18,000 |
| Detroit Building Tradesman | Regional | 1 | 49,000 |
| Duluth Labor World | Regional | 1 | 17,000 |
| Kansas City Labor Beacon | Regional | 1 | 17,000 |
| Labor Paper, Peoria (IL) | Regional | 1 | 12,000 |
| Labor Record, Chicago (IL) | Regional | 1 | 17,000 |
| Minneapolis Labor Review | Regional | 1 | 61,000 |
| Northwest Labor Press, Portland (OR) | Regional | 1 | 64,000 |
| Sacramento Valley Bulletin | Regional | 1 | 16,000 |
| St. Louis Labor Tribune | Regional | 1 | 63,000 |
| St. Paul Union Advocate | Regional | 1 | 37,000 |
| **Total** | | **11** | **371,000** |

# *21.  Online Plan*

*The online properties on which the Banner Notice will appear.*

The online portion of the Revised Notice Plan includes banner advertisements on a rotating basis over a 31-day period on the following online media properties.  GfK MRI data indicates that 53.7% of men 65+, 70.7% of adults 45+, and 81.3% of adults 18+ used the Internet in the last 30 days.  Also, online notice effectively reaches younger audiences, who may be relatives of living or deceased Potential Asbestos Claimants.

| *Online Network* | *Banner Size* | *# of Days* | *Nationwide Adult 18+ Impressions* |
|---|---|---|---|
| *AARP.com* | *300 x 250; 728  x 90* | *31* | *8,846,154* |
| *Conversant Ad Network* | *300 x 250; 728  x 90* | *31* | *125,000,000* |
| *Facebook* | *254x133* | *31* | *150,000,000* |
| *MSN* | *728 x 90* | *31* | *25,000,000* |
| *Yahoo! Ad Network* | *300 x 250; 728  x 90* | *31* | *127,500,000* |
| ***TOTAL*** | | | ***436,346,154*** |

*Source:  2014 comScore Data.*

Combined, approximately 436 million adult impressions will be generated by these Banner Notices over a one month period.  Clicking on the banner will bring the web user to the website where they can obtain information.

# 22.  *Labor Union Outreach Program*

*The unions that will be contacted as part of the Outreach Program.*

The informational release and other relevant documents, together with a cover letter, will be sent directly to relevant labor unions, identified to have membership who possibly worked at EFH.  The unions will be asked to include information about the Asbestos Bar Date in communications with their members (via newsletters or publications), including retirees.

Hilsoft will work with EFH to identify all unions who are known to represent current and former employees.  Additional unions may be included in the outreach program based on their historical membership of individuals with potential occupational exposure to asbestos.

# 23.  *Placing Notices to be Highly Visible*

*Inserting notices in spots within the media that will help gain Potential Asbestos Claimants' attention.*

All placements are not equal.  Extra care will be taken to place Notices in positions that will generate "noticeability" among Potential Asbestos Claimants.

Highly visible full page Asbestos Publication Notices will be placed in *AARP Bulletin, American Legion, National Geographic, Parade, People* and *VFW* to promote reader attention and comprehension.  The Notice in *Readers Digest* will be a full page spread.  Notice positioning will be sought opposite articles, next to certain editorial features with documented high readership, or in certain sections of publications (e.g., in the body of cover stories) to help ensure that over the course of the media schedule,  Potential Asbestos Claimants will see the Notice.

Placement of the banner advertisements will be sought above the fold on the various websites included in the network buys.  "Above the fold" is a term to refer to the portion of a website that typically can be viewed by a visitor without the need to scroll down the page.  The *AARP*, *Conversant Ad Network, Facebook*, *MSN* and *Yahoo! Ad Network* banners will come in multiple sizes, which may include:

Leaderboard
- o  Horizontal
- o  728 x 90 pixels (typically)
- o  Located at the top of the screen
- o  Commonly higher priced due to location
- o  Typically receives the most clicks

Big Box or Box (also known by other similar names)
- o  Square box
- o  300 x 250 pixels
- o  Can be located on left of right side of screen
- o  Cost tends to be lower than Leaderboard and Skyscrapers
- o  Typically the third most clicked banner ad type

# 24.  *Informational Release*

*Seeking non-paid (and other) exposure of court-approved notice information mainly by way of news articles.*

A party-neutral, Court-approved informational release will be issued to approximately 4,200 print/broadcast and 5,500 online press outlets throughout the U.S.  The informational release will be issued in English.  A news release serves a potentially valuable role, providing additional notice exposure beyond that which will be provided through paid media.  There is no guarantee that any news stories will result, but if they do, Potential Asbestos Claimants will have additional opportunities to learn about the Asbestos Bar Date in credible news media, adding to their understanding.  The release will include the toll-free number and website address.

A list of press outlets receiving the informational release is available upon request.

# *25. Website*

*Delivery of notice via Internet and online services.*

A neutral and informational website with an easy to remember domain name will be established to serve as the notice page where Known and Potential Asbestos Claimants can obtain information. The Asbestos Bar Date Notice, Claim Form, Asbestos Publication Notice and answers to frequently asked questions (FAQs) will be available on the website along with other relevant documents and information. The website address will be prominently displayed in all printed notice documents, and will be included in the informational release. The Banner Notice will link directly to the website.

Once the website is activated, a domain registration service will be employed in order to have the website appear in search results for key words.

# *26. Toll-Free Number*

*Providing Known & Potential Asbestos Claimants with access to additional information via a toll-free line.*

To facilitate Known and Potential Asbestos Claimants with the asbestos claim process, a toll-free number will be established. By calling this number, Known and Potential Asbestos Claimants can listen to answers to frequently asked questions and request a copy of the Asbestos Bar Date Notice and Claim Form. During regular business hours, callers may also speak with a claims representative. The toll-free number will be prominently displayed in notice documents.

# 27. Sponsored Search Listings

*To assist Known and Potential Asbestos Claimants in accessing the website.*

To facilitate locating the website, sponsored search listings will be acquired on the three most highly-visited Internet search engines: *Google*, *Yahoo!* and *Bing*.  When search engine visitors search on common keyword combinations such as "Energy Future Holdings" or "EFH" paired with any of the following keywords: "Asbestos," "claim," or "bar date" the sponsored search listing will generally be displayed either at the top of the page prior to the search results or in the upper right hand column.

The sponsored search listings will target the entire U.S. so that Known and Potential Asbestos Claimants can easily find the website by inputting a few logical search terms regardless of location.

# *28. Notice Design Strategy*

*Notices designed to attract the attention of Known and Potential Asbestos Claimants.*

The Notices will be designed to motivate Known and Potential Asbestos Claimants to read and understand the message. The Notices carry a clear message regarding the Bar Date and claim filing. This approach to content and design is entirely consistent with the FJC's illustrative "model" notices. The Notices employ the following tactics:

### *Publication Notice Design Elements:*

- *Bold headline captures attention.* The headline immediately alerts even casual readers who may be Potential Asbestos Claimants that they should read the Notice and why it is important. It speaks directly to Potential Asbestos Claimants in the second person.

- *Notice size promotes attention.* Larger ad units, including full page units will be purchased for the consumer publications to promote readership.

- *Notice design alerts readers to the legal significance, lending credibility.* The design of the Notices ensures that readers know the communication carries legitimate, important information, not commercial advertising.

- *Plain language enhances comprehension.* The Notice concisely and clearly states the information in plain, easily understandable language so that readers can comprehend the Notice effectively.

- *Comprehensive content fulfills legal requirements.* All critical information is included.

- *Toll-free number and website invite response.* The Notice invites direct response by providing simple, convenient mechanisms, such as a toll-free number and website, for individuals to obtain additional information, if desired.

- *Spanish call out.* A Spanish call out is provided directly under the headline notifying Spanish-speaking Potential Asbestos Claimants that they may call the toll-free number of visit the website to request the Notice in Spanish.

# *29. Draft Forms of Notice*

*Notices included in the Notice Program*

**Attachment 3** of this Revised Notice Plan contains draft forms of the following notice documents:

- The Cover Letters that will accompany the Bar Date Notice and Unmanifested Claim Form that will be sent to Potential Asbestos Claimants. Also provided is a representation of the Envelope the materials will be sent in.

- The Asbestos Publication Notice as it will appear in the AARP Bulletin, American Legion, National Geographic, Parade, People, Readers Digest, VFW and all other publications and magazines.

- The Banner Advertisement that will appear on the selected online advertising properties.

The design and content of the Publication Notice and Publication Notice are consistent with the FJC's "illustrative" forms of plain language notices, available at www.fjc.gov.   Additionally, they are consistent with other court-approved notices that we have developed.

Attachment 1



Hilsoft Notifications is a leading provider of legal notice services for large-scale class action and bankruptcy matters. We specialize in providing quality, expert, notice plan development – designing notice programs that satisfy due process requirements and withstand judicial scrutiny. For more than 18 years, Hilsoft Notifications' notice plans have been approved and upheld by courts. Hilsoft Notifications has been retained by defendants and/or plaintiffs on more than 300 cases, including 30 MDL cases, with notices appearing in more than 53 languages and in almost every country, territory and dependency in the world. Case examples include:

➢ Landmark $6.05 billion settlement reached by Visa and MasterCard. The intensive notice program involved over 19.8 million direct mail notices to class members together with insertions in over 1,500 newspapers, consumer magazines, national business publications, trade & specialty publications, and language & ethnic targeted publications. Hilsoft also implemented an extensive online notice campaign with banner notices, which generated more than 770 million adult impressions, a case website in eight languages, and acquisition of sponsored search listings to facilitate locating the website. *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation,* MDL No. 1720 (E.D.N.Y.).

➢ BP's $7.8 billion settlement of claims related to the Deepwater Horizon oil spill emerged from possibly the most complex class action in U.S. history. Hilsoft Notifications drafted and opined on all forms of notice. The 2012 notice program designed by Hilsoft reached at least 95% Gulf Coast region adults via television, radio, newspapers, consumer publications, trade journals, digital media and individual notice. *In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010,* MDL No. 2179 (E.D. La.).

➢ Momentous injunctive settlement reached by American Express regarding merchant payment card processing. The notice program provided extensive individual notice to more than 3.8 million merchants as well as coverage in national and local business publications, retail trade publications and placement in the largest circulation newspapers in each of the U.S. territories and possessions. *In re American Express Anti-Steering Rules Antitrust Litigation (II),* MDL No. 2221 (E.D.N.Y.) ("Italian Colors").

➢ Overdraft fee class actions have been brought against nearly every major U.S. commercial bank. For related settlements, Hilsoft Notifications has developed programs that integrate individual notice and paid media efforts. PNC, Citizens, TD Bank, Fifth Third, Harris Bank M&I, Comerica Bank, Susquehanna Bank, Capital One, M&T Bank and Synovus are among the nearly 20 banks that have retained Hilsoft. *In re Checking Account Overdraft Litigation,* MDL No. 2036 (S.D. Fla.).

➢ Possibly the largest data breach in U.S. history with approximately 130 million credit and debit card numbers stolen. *In re Heartland Data Security Breach Litigation,* MDL No. 2046 (S.D. Tex.).

➢ Largest and most complex class action in Canadian history. Designed and implemented groundbreaking notice to disparate, remote aboriginal people in the multi-billion dollar settlement. *In re Residential Schools Class Action Litigation,* 00-CV-192059 CPA (Ont. Super. Ct.).

➢ Extensive point of sale notice program of a settlement providing payments up to $100,000 related to Chinese drywall – 100 million notices distributed to Lowe's purchasers during a six-week period. *Vereen v. Lowe's Home Centers,* SU10-CV-2267B (Ga. Super. Ct.).

PORTLAND AREA OFFICE          10300 SW ALLEN BLVD          BEAVERTON, OR 97005          T 503-597-7697          WWW.HILSOFT.COM
PHILADELPHIA AREA OFFICE      1420 LOCUST ST 30 F          PHILADELPHIA, PA 19102       T 215-721-2120         INFO@HILSOFT.COM

➢ Largest discretionary class action notice campaign involving virtually every adult in the U.S. for the settlement. *In re Trans Union Corp. Privacy Litigation,* MDL No. 1350 (N.D. Ill.).

➢ Most complex national data theft class action settlement involving millions of class members. ***Lockwood v. Certegy Check Services, Inc.,*** 8:07-cv-1434-T-23TGW (M.D. Fla.).

➢ Largest combined U.S. and Canadian retail consumer security breach notice program. ***In re TJX Companies, Inc., Customer Data Security Breach Litigation***, MDL No. 1838 (D. Mass.).

➢ Most comprehensive notice ever in a securities class action for the $1.1 billion settlement of ***In re Royal Ahold Securities and ERISA Litigation,*** MDL No. 1539 (D. Md.).

➢ Most complex worldwide notice program in history. Designed and implemented all U.S. and international media notice with 500+ publications in 40 countries and 27 languages for $1.25 billion settlement. ***In re Holocaust Victims Assets,*** "**Swiss Banks,**" No. CV-96-4849 (E.D.N.Y.).

➢ Largest U.S. claim program to date. Designed and implemented a notice campaign for the $10 billion program. ***Tobacco Farmer Transition Program,*** (U.S. Dept. of Ag.).

➢ Multi-national claims bar date notice to asbestos personal injury claimants. Opposing notice expert's reach methodology challenge rejected by court. ***In re Babcock & Wilcox Co,*** No. 00-10992 (E.D. La.).

**LEGAL NOTICING EXPERTS**

***Cameron Azari, Esq., Director of Legal Notice***
Cameron Azari, Esq. has more than 14 years of experience in the design and implementation of legal notification and claims administration programs. He is a nationally recognized expert in the creation of class action notification campaigns in compliance with Fed R. Civ. P. 23(c)(2) (d)(2) and (e) and similar state class action statutes. Cameron has been responsible for hundreds of legal notice and advertising programs. During his career, he has been involved in an array of high profile class action matters, including *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation (MasterCard & Visa), In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, Heartland Payment Systems, In re: Checking Account Overdraft Litigation, Lowe's Home Centers, Department of Veterans Affairs (VA),* and *In re Residential Schools Class Action Litigation.* He is an active author and speaker on a broad range of legal notice and class action topics ranging from amendments to FRCP Rule 23 to email noticing, response rates and optimizing settlement effectiveness. Cameron is an active member of the Oregon State Bar. He received his B.S. from Willamette University and his J.D. from Northwestern School of Law at Lewis and Clark College. Cameron can be reached at caza@legalnotice.com.

***Lauran Schultz, Executive Director***
Lauran Schultz is responsible for overall management of Hilsoft Notifications. He consults extensively with clients on notice adequacy and innovative legal notice programs. Lauran has more than 20 years of experience as a professional in the marketing and advertising field, specializing in legal notice and class action administration for the past seven years. High profile actions he has been involved in include companies such as BP, Bank of America, Fifth Third Bank, Symantec Corporation, Lowe's Home Centers, First Health, Apple, TJX, CNA and Carrier Corporation. Prior to joining Epiq Systems in 2005, Lauran was a Senior Vice President of Marketing at National City Bank in Cleveland, Ohio. Lauran's education includes advanced study in political science at the University of Wisconsin-Madison along with a Ford Foundation fellowship from the Social Science Research Council and American Council of Learned Societies. Lauran can be reached at lschultz@hilsoft.com.



| PORTLAND AREA OFFICE | 10300 SW ALLEN BLVD | BEAVERTON, OR 97005 | T 503-597-7697 |
| PHILADELPHIA AREA OFFICE | 1420 LOCUST ST 30 F | PHILADELPHIA, PA 1910 | T 215-721-2120 |

2

## ARTICLES AND PRESENTATIONS

➢ **Cameron Azari** Speaker, "Live Cyber Incident Simulation Exercise." Advisen's Cyber Risk Insights Conference, London, UK, February 10, 2015.

➢ **Cameron Azari** Speaker, "Pitfalls of Class Action Notice and Claims Administration." PLI's Class Action Litigation 2014 Conference, New York, NY, July 9, 2014.

➢ **Cameron Azari** Co-Author, "What You Need to Know About Frequency Capping In Online Class Action Notice Programs." *Class Action Litigation Report*, June 2014.

➢ **Cameron Azari** Speaker, "Class Settlement Update – Legal Notice and Court Expectations." PLI's 19th Annual Consumer Financial Services Institute Conference, New York, NY, April 7-8, 2014 and Chicago, IL, April 28-29, 2014.

➢ **Cameron Azari** Speaker, "Legal Notice in Consumer Finance Settlements - Recent Developments." ACI's Consumer Finance Class Actions and Litigation, New York, NY, January 29-30, 2014.

➢ **Cameron Azari** Speaker, "Legal Notice in Building Products Cases." HarrisMartin's Construction Product Litigation Conference, Miami, FL, October 25, 2013.

➢ **Cameron Azari** Co-Author, "Class Action Legal Noticing: Plain Language Revisited." *Law360*, April 2013.

➢ **Cameron Azari** Speaker, "Legal Notice in Consumer Finance Settlements Getting your Settlement Approved." ACI's Consumer Finance Class Actions and Litigation, New York, NY, January 31-February 1, 2013.

➢ **Cameron Azari** Speaker, "Perspectives from Class Action Claims Administrators: Email Notices and Response Rates." CLE International's 8th Annual Class Actions Conference, Los Angeles, CA, May 17-18, 2012.

➢ **Cameron Azari** Speaker, "Class Action Litigation Trends: A Look into New Cases, Theories of Liability & Updates on the Cases to Watch." ACI's Consumer Finance Class Actions and Litigation, New York, NY, January 26-27, 2012.

➢ **Lauran Schultz** Speaker, "Legal Notice Best Practices: Building a Workable Settlement Structure." CLE International's 7th Annual Class Action Conference, San Francisco, CA, May 2011.

➢ **Cameron Azari** Speaker, "Data Breaches Involving Consumer Financial Information: Litigation Exposures and Settlement Considerations." ACI's Consumer Finance Class Actions and Litigation, New York, NY, January 2011.

➢ **Cameron Azari** Speaker, "Notice in Consumer Class Actions: Adequacy, Efficiency and Best Practices." CLE International's 5th Annual Class Action Conference: Prosecuting and Defending Complex Litigation, San Francisco, CA, 2009.

➢ **Lauran Schultz** Speaker, "Efficiency and Adequacy Considerations in Class Action Media Notice Programs." Chicago Bar Association, Chicago, IL, 2009.

➢ **Cameron Azari** Author, "Clearing the Five Hurdles of Email - Delivery of Class Action Legal Notices." *Thomson Reuters Class Action Litigation Reporter*, June 2008.

➢ **Cameron Azari** Speaker, "Planning for a Smooth Settlement." ACI: Class Action Defense – Complex Settlement Administration for the Class Action Litigator, Phoenix, AZ, 2007.



| PORTLAND AREA OFFICE | 10300 SW ALLEN BLVD | BEAVERTON, OR 97005 | T 503-597-7697 |
| PHILADELPHIA AREA OFFICE | 1420 LOCUST ST 30 F | PHILADELPHIA, PA 1910 | T 215-721-2120 |

3

➢ **Cameron Azari** Speaker, "Noticing and Response Rates in Class Action Settlements" – Class Action Bar Gathering, Vancouver, British Columbia, 2007.

➢ **Cameron Azari** Speaker, "Structuring a Litigation Settlement." CLE International's 3rd Annual Conference on Class Actions, Los Angeles, CA, 2007.

➢ **Cameron Azari** Speaker, "Notice and Response Rates in Class Action Settlements" – Skadden Arps Slate Meagher & Flom, LLP, New York, NY, 2006.

➢ **Cameron Azari** Speaker, "Notice and Response Rates in Class Action Settlements" – Bridgeport Continuing Legal Education, Class Action and the UCL, San Diego, CA, 2006.

➢ **Cameron Azari** Speaker, "Notice and Response Rates in Class Action Settlements" – Stoel Rives litigation group, Portland, OR / Seattle, WA / Boise, ID / Salt Lake City, UT, 2005.

➢ **Cameron Azari** Speaker, "Notice and Response Rates in Class Action Settlements" – Stroock & Stroock & Lavan litigation group, Los Angeles, CA, 2005.

➢ **Cameron Azari** Author, "Twice the Notice or No Settlement."  Current Developments – Issue II, August 2003.

➢ **Cameron Azari** Speaker, "A Scientific Approach to Legal Notice Communication" – Weil Gotshal litigation group, New York, NY, 2003.

## JUDICIAL COMMENTS

**Judge Rya W. Zobel,** *Gulbankian et al. v. MW Manufacturers, Inc.,* (December 29, 2014) No. 1:10-cv-10392-RWZ (D. Mass.):

*"This Court finds that the Class Notice was provided to the Settlement Class consistent with the Preliminary Approval Order and that it was the best notice practicable and fully satisfied the requirements of the Federal Rules of Civil Procedure, due process, and applicable law.  The Court finds that the Notice Plan that was implemented by the Claims Administrator satisfies the requirements of FED. R. CIV. P. 23, 28 U.S.C. § 1715, and Due Process, and is the best notice practicable under the circumstances.  The Notice Plan constituted due and sufficient notice of the Settlement, the Final Approval Hearing, and the other matters referred to in the notices.  Proof of the giving of such notices has been filed with the Court via the Azari Declaration and its exhibits."*

**Judge Edward J. Davila,** *Rose v. Bank of America Corporation, and FIA Card Services, N.A.,* (August 29, 2014) No. 5:11-CV-02390-EJD; 5:12-CV-04009-EJD (N.D. Cal.):

*"The Court finds that the notice was reasonably calculated under the circumstances to apprise the Settlement Class of the pendency of this action, all material elements of the Settlement, the opportunity for Settlement Class Members to exclude themselves from, object to, or comment on the settlement and to appear at the final approval hearing. The notice was the best notice practicable under the circumstances, satisfying the requirements of Rule 23(c)(2)(B); provided notice in a reasonable manner to all class members, satisfying Rule 23(e)(1)(B); was adequate and sufficient notice to all Class Members; and, complied fully with the laws of the United States and of the Federal Rules of Civil Procedure, due process and any other applicable rules of court."*

**Judge James A. Robertson, II,** *Wong et al. v. Alacer Corp.* (June 27, 2014) No. CGC-12-519221 (Cal. Super. Ct.):

*"Notice to the Settlement Class has been provided in accordance with the Preliminary Approval Order. Based on the Declaration of Cameron Azari dated March 7, 2014, such Class Notice has been provided in an adequate and sufficient manner, constitutes the best notice practicable under the circumstances and satisfies the requirements of California Civil Code Section 1781, California Civil Code of Civil Procedure Section 382, Rules 3.766 of the California Rules of Court, and due process."*



PORTLAND AREA OFFICE       10300 SW ALLEN BLVD       BEAVERTON, OR 97005       T 503-597-7697
PHILADELPHIA AREA OFFICE   1420 LOCUST ST 30 F       PHILADELPHIA, PA 1910     T 215-721-2120

4

**Judge John Gleeson,** *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation,* (December 13, 2013) No. 1:05-cv-03800 (E.D. NY.):

> "The Class Administrator notified class members of the terms of the proposed settlement through a mailed notice and publication campaign that included more than 20 million mailings and publication in more than 400 publications.  The notice here meets the requirements of due process and notice standards…  The objectors' complaints provide no reason to conclude that the purposes and requirements of a notice to a class were not met here."

**Judge Lance M. Africk,** *Evans, et al. v. TIN, Inc., et al,* (July 7, 2013) No. 2:11-cv-02067 (E.D. La.):

> The Court finds that the dissemination of the Class Notice… as described in Notice Agent Lauran Schultz's Declaration: (a) constituted the best practicable notice to Class Members under the circumstances; (b) constituted notice that was reasonably calculated, under the circumstances…; (c) constituted notice that was reasonable, due, adequate, and sufficient; and (d) constituted notice that fully satisfied all applicable legal requirements, including Rules 23(c)(2)(B) and (e)(1) of the Federal Rules of Civil Procedure, the United States Constitution (including Due Process Clause), the Rules of this Court, and any other applicable law, as well as complied with the Federal Judicial Center's illustrative class action notices.

**Judge Edward M. Chen,** *Marolda v. Symantec Corporation,* (April 5, 2013) No. 08-cv-05701 (N.D. Cal.):

> Approximately 3.9 million notices were delivered by email to class members, but only a very small percentage objected or opted out . . .  The Court . . . concludes that notice of settlement to the class was adequate and satisfied all requirements of Federal Rule of Civil Procedure 23(e) and due process.  Class members received direct notice by email, and additional notice was given by publication in numerous widely circulated publications as well as in numerous targeted publications.  These were the best practicable means of informing class members of their rights and of the settlement's terms.

**Judge Ann D. Montgomery,** *In re Zurn Pex Plumbing Products Liability Litigation,* (February 27, 2013)       No. 0:08cv01958 (D. Minn.):

> The parties retained Hilsoft Notifications ("Hilsoft"), an experienced class-notice consultant, to design and carry out the notice plan.  The form and content of the notices provided to the class were direct, understandable, and consistent with the "plain language" principles advanced by the Federal Judicial Center.

> The notice plan's multi-faceted approach to providing notice to settlement class members whose identity is not known to the settling parties constitutes "the best notice [*26] that is practicable under the circumstances" consistent with Rule 23(c)(2)(B).

**Magistrate Judge Stewart,** *Gessele et al. v. Jack in the Box, Inc.,* (January 28, 2013) No. 3:10-cv-960 (D. Or.):
> Moreover, plaintiffs have submitted [a] declaration from Cameron Azari (docket #129), a nationally recognized notice expert, who attests that fashioning an effective joint notice is not unworkable or unduly confusing.  Azari also provides a detailed analysis of how he would approach fashioning an effective notice in this case.

**Judge Carl J. Barbier,** *In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010* (Medical Benefits Settlement), (January 11, 2013) MDL No. 2179 (E.D. La.):

> Through August 9, 2012, 366,242 individual notices had been sent to potential [Medical Benefits] Settlement Class Members by postal mail and 56,136 individual notices had been e-mailed.  Only 10,700 mailings—or 3.3%—were known to be undeliverable.  (Azari Decl. ¶¶ 8, 9.)  Notice was also provided through an extensive schedule of local newspaper, radio, television and Internet placements, well-read consumer magazines, a national daily business newspaper, highly-trafficked websites, and Sunday local newspapers (via newspaper supplements).  Notice was also provided in non-measured trade, business and specialty publications, African-American, Vietnamese, and Spanish language publications, and Cajun radio programming.  The combined measurable paid print, television, radio, and Internet effort reached an estimated 95% of adults aged 18+ in the Gulf Coast region an average of 10.3 times each, and an



PORTLAND AREA OFFICE      10300 SW ALLEN BLVD      BEAVERTON, OR 97005      T 503-597-7697
PHILADELPHIA AREA OFFICE  1420 LOCUST ST 30 F      PHILADELPHIA, PA 1910    T 215-721-2120

5

*estimated 83% of all adults in the United States aged 18+ an average of 4 times each.  (Id. ¶¶ 8, 10.)  All notice documents were designed to be clear, substantive, and informative.  (Id. ¶ 5.)*

*The Court received no objections to the scope or content of the [Medical Benefits] Notice Program.  (Azari Supp. Decl. ¶ 12.)  The Court finds that the Notice and Notice Plan as implemented satisfied the best notice practicable standard of Rule 23(c) and, in accordance with Rule 23(e)(1), provided notice in a reasonable manner to Class Members who would be bound by the Settlement, including individual notice to all Class Members who could be identified through reasonable effort.  Likewise, the Notice and Notice Plan satisfied the requirements of Due Process.  The Court also finds the Notice and Notice Plan satisfied the requirements of CAFA.*

**Judge Carl J. Barbier, *In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010* (Economic and Property Damages Settlement)**, (December 21, 2012) MDL No. 2179 (E.D. La.):

*The Court finds that the Class Notice and Class Notice Plan satisfied and continue to satisfy the applicable requirements of Federal Rule of Civil Procedure 23(c)(2)(b) and 23(e), the Class Action Fairness Act (28 U.S.C. § 1711 et seq.), and the Due Process Clause of the United States Constitution (U.S. Const., amend. V), constituting the best notice that is practicable under the circumstances of this litigation.*

*The notice program surpassed the requirements of Due Process, Rule 23, and CAFA.  Based on the factual elements of the Notice Program as detailed below, the Notice Program surpassed all of the requirements of Due Process, Rule 23, and CAFA.*

*The Notice Program, as duly implemented, surpasses other notice programs that Hilsoft Notifications has designed and executed with court approval.  The Notice Program included notification to known or potential Class Members via postal mail and e-mail; an extensive schedule of local newspaper, radio, television and Internet placements, well-read consumer magazines, a national daily business newspaper, and Sunday local newspapers.  Notice placements also appeared in non-measured trade, business, and specialty publications, African-American, Vietnamese, and Spanish language publications, and Cajun radio programming.  The Notice Program met the objective of reaching the greatest possible number of class members and providing them with every reasonable opportunity to understand their legal rights.  See Azari Decl. ¶¶ 8, 15, 68.  The Notice Program was substantially completed on July 15, 2012, allowing class members adequate time to make decisions before the opt-out and objections deadlines.*

*The media notice effort alone reached an estimated 95% of adults in the Gulf region an average of 10.3 times each, and an estimated 83% of all adults in the United States an average of 4 times each.  These figures do not include notice efforts that cannot be measured, such as advertisements in trade publications and sponsored search engine listings.  The Notice Program fairly and adequately covered and notified the class without excluding any demographic group or geographic area, and it exceeded the reach percentage achieved in most other court-approved notice programs.*

**Judge Alonzo Harris, *Opelousas General Hospital Authority, A Public Trust, D/B/A Opelousas General Health System and Arklamiss Surgery Center, L.L.C. v. FairPay Solutions, Inc.,* (August 17, 2012) No. 12-C-1599 (27th Jud. D. Ct. La.):**

*Notice given to Class Members and all other interested parties pursuant to this Court's order of April 18, 2012, was reasonably calculated to apprise interested parties of the pendency of the action, the certification of the Class as Defined for settlement purposes only, the terms of the Settlement Agreement, Class Members rights to be represented by private counsel, at their own costs, and Class Members rights to appear in Court to have their objections heard, and to afford persons or entities within the Class Definition an opportunity to exclude themselves from the Class.  Such notice complied with all requirements of the federal and state constitutions, including the Due Process Clause, and applicable articles of the Louisiana Code of Civil Procedure, and constituted the best notice practicable under the circumstances and constituted due and sufficient notice to all potential members of the Class as Defined.*



| PORTLAND AREA OFFICE | 10300 SW ALLEN BLVD | BEAVERTON, OR 97005 | T 503-597-7697 |
| PHILADELPHIA AREA OFFICE | 1420 LOCUST ST 30 F | PHILADELPHIA, PA 1910 | T 215-721-2120 |

6

**Judge James Lawrence King, *In re Checking Account Overdraft Litigation (IBERIABANK)*,** (April 26, 2012) MDL No. 2036 (S.D. Fla):

> The Court finds that the Notice previously approved was fully and properly effectuated and was sufficient to satisfy the requirements of due process because it described "the substantive claims . . . [and] contained information reasonably necessary to [allow Settlement Class Members to] make a decision to remain a class member and be bound by the final judgment." *In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088, 1104-05 (5th Cir. 1977). The Notice, among other things, defined the Settlement Class, described the release as well as the amount and method and manner of proposed distribution of the Settlement proceeds, and informed Settlement Class Members of their rights to opt-out or object, the procedures for doing so, and the time and place of the Final Approval Hearing. The Notice also informed Settlement Class Members that a class judgment would bind them unless they opted out, and told them where they could obtain more information, such as access to a full copy of the Agreement. Further, the Notice described in summary form the fact that Class Counsel would be seeking attorneys' fees of up to 30 percent of the Settlement. Settlement Class Members were provided with the best practicable notice "reasonably calculated, under [the] circumstances, to apprise them of the pendency of the action and afford them an opportunity to present their objections." Mullane, 339 U.S. at 314. The content of the Notice fully complied with the requirements of Rule 23.

**Judge Bobby Peters, *Vereen v. Lowe's Home Centers*,** (April 13, 2012) SU10-CV-2267B (Ga. Super. Ct.):

> The Court finds that the Notice and the Notice Plan was fulfilled, in accordance with the terms of the Settlement Agreement, the Amendment, and this Court's Preliminary Approval Order and that this Notice and Notice Plan constituted the best practicable notice to Class Members under the circumstances of this action, constituted due and sufficient Notice of the proposed Settlement to all persons entitled to participate in the proposed Settlement, and was in full compliance with Ga. Code Ann § 9-11-23 and the constitutional requirements of due process. Extensive notice was provided to the class, including point of sale notification, publication notice and notice by first-class mail for certain potential Class Members.

> The affidavit of the notice expert conclusively supports this Court's finding that the notice program was adequate, appropriate, and comported with Georgia Code Ann. § 9-11-23(b)(2), the Due Process Clause of the Constitution, and the guidance for effective notice articulate in the FJC's Manual for Complex Litigation, 4th.

**Judge Lee Rosenthal, *In re Heartland Payment Systems, Inc. Customer Data Security Breach Litigation*,** (March 2, 2012) MDL No. 2046 (S.D. Tex.):

> The notice that has been given clearly complies with Rule 23(e)(1)'s reasonableness requirement… Hilsoft Notifications analyzed the notice plan after its implementation and conservatively estimated that notice reached 81.4 percent of the class members. (Docket Entry No. 106, ¶ 32). Both the summary notice and the detailed notice provided the information reasonably necessary for the presumptive class members to determine whether to object to the proposed settlement. See Katrina Canal Breaches, 628 F.3d at 197. Both the summary notice and the detailed notice "were written in easy-to-understand plain English." In re Black Farmers Discrimination Litig., — F. Supp. 2d —, 2011 WL 5117058, at *23 (D.D.C. 2011); accord AGGREGATE LITIGATION § 3.04(c).15 The notice provided "satisf[ies] the broad reasonableness standards imposed by due process" and Rule 23. Katrina Canal Breaches, 628 F.3d at 197 (internal quotation marks omitted).

**Judge John D. Bates, *Trombley v. National City Bank*,** (December 1, 2011) 1:10-CV-00232 (D.D.C.)

> The form, content, and method of dissemination of Notice given to the Settlement Class were in full compliance with the Court's January 11, 2011 Order, the requirements of Fed. R. Civ. P. 23(e), and due process. The notice was adequate and reasonable, and constituted the best notice practicable under the circumstances. In addition, adequate notice of the proceedings and an opportunity to participate in the final fairness hearing were provided to the Settlement Class.


| HILSOFT NOTIFICATIONS | PORTLAND AREA OFFICE | 10300 SW ALLEN BLVD | BEAVERTON, OR 97005 | T 503-597-7697 |
| | PHILADELPHIA AREA OFFICE | 1420 LOCUST ST 30 F | PHILADELPHIA, PA 1910 | T 215-721-2120 |

7

**Judge Robert M. Dow, Jr.**, *Schulte v. Fifth Third Bank*, (July 29, 2011) No. 1:09-cv-6655 (N.D. Ill.):

*The Court has reviewed the content of all of the various notices, as well as the manner in which Notice was disseminated, and concludes that the Notice given to the Class fully complied with Federal Rule of Civil Procedure 23, as it was the best notice practicable, satisfied all constitutional due process concerns, and provided the Court with jurisdiction over the absent Class Members.*

**Judge Ellis J. Daigle**, *Williams v. Hammerman & Gainer Inc.*, (June 30, 2011) No. 11-C-3187-B (27th Jud. D. Ct. La.):

*Notices given to Settlement Class members and all other interested parties throughout this proceeding with respect to the certification of the Settlement Class, the proposed settlement, and all related procedures and hearings—including, without limitation, the notice to putative Settlement Class members and others more fully described in this Court's order of 30th day of March 2011 were reasonably calculated under all the circumstances and have been sufficient, as to form, content, and manner of dissemination, to apprise interested parties and members of the Settlement Class of the pendency of the action, the certification of the Settlement Class, the Settlement Agreement and its contents, Settlement Class members' right to be represented by private counsel, at their own cost, and Settlement Class members' right to appear in Court to have their objections heard, and to afford Settlement Class members an opportunity to exclude themselves from the Settlement Class. Such notices complied with all requirements of the federal and state constitutions, including the due process clause, and applicable articles of the Louisiana Code of Civil Procedures, and constituted the best notice practicable under the circumstances and constituted due and sufficient notice to all potential members of the Settlement Class.*

**Judge Stefan R. Underhill**, *Mathena v. Webster Bank, N.A.*, (March 24, 2011) No. 3:10-cv-1448 (D. Conn.):

*The form, content, and method of dissemination of Notice given to the Settlement Class were adequate and reasonable, and constituted the best notice practicable under the circumstances. The Notice, as given, provided valid, due, and sufficient notice of the proposed settlement, the terms and conditions set forth in the Settlement Agreement, and these proceedings to all persons entitled to such notice, and said notice fully satisfied the requirements of Rule 23 of the Federal Rules of Civil Procedure and due process.*

**Judge Ted Stewart**, *Miller v. Basic Research, LLC*, (September 2, 2010) No. 2:07-cv-871 (D. Utah):

*Plaintiffs state that they have hired a firm specializing in designing and implementing large scale, unbiased, legal notification plans. Plaintiffs represent to the Court that such notice will include: 1) individual notice by electronic mail and/or first-class mail sent to all reasonably identifiable Class members; 2) nationwide paid media notice through a combination of print publications, including newspapers, consumer magazines, newspaper supplements and the Internet; 3) a neutral, Court-approved, informational press release; 4) a neutral, Court-approved Internet website; and 5) a toll-free telephone number. Similar mixed media plans have been approved by other district courts post class certification. The Court finds this plan is sufficient to meet the notice requirement.*

**Judge Sara Loi**, *Pavlov v. Continental Casualty Co.*, (October 7, 2009) No. 5:07cv2580 (N.D. Ohio):

*As previously set forth in this Memorandum Opinion, the elaborate notice program contained in the Settlement Agreement provides for notice through a variety of means, including direct mail to each class member, notice to the United States Attorney General and each State, a toll free number, and a website designed to provide information about the settlement and instructions on submitting claims. With a 99.9% effective rate, the Court finds that the notice program constituted the "best notice that is practicable under the circumstances," Fed. R. Civ. P. 23(c)(2)(B), and clearly satisfies the requirements of Rule 23(c)(2)(B).*

**Judge James Robertson**, *In re Department of Veterans Affairs (VA) Data Theft Litigation*, (September 23, 2009) MDL No. 1796 (D.D.C.):

*The Notice Plan, as implemented, satisfied the requirements of due process and was the best notice practicable under the circumstances. The Notice Plan was reasonably calculated, under the circumstances, to apprise Class Members of the pendency of the action, the terms of the Settlement, and their right to appear, object to or exclude themselves from the Settlement. Further, the notice was reasonable and constituted due, adequate and sufficient notice to all persons entitled to receive notice.*



PORTLAND AREA OFFICE          10300 SW ALLEN BLVD          BEAVERTON, OR 97005    T 503-597-7697
PHILADELPHIA AREA OFFICE      1420 LOCUST ST 30 F          PHILADELPHIA, PA 1910   T 215-721-2120

8

**Judge Lisa F. Chrystal,** *Little v. Kia Motors America, Inc.***,** (August 27, 2009) No. UNN-L-0800-01 (N.J. Super. Ct.):

> *The Court finds that the manner and content of the notices for direct mailing and for publication notice, as specified in the Notice Plan (Exhibit 2 to the Affidavit of Lauran R. Schultz), provides the best practicable notice of judgment to members of the Plaintiff Class.*

**Judge Barbara Crowder,** *Dolen v. ABN AMRO Bank N.V.,* (March 23, 2009) No. 01-L-454, 01-L-493 (3rd Jud. Cir. Ill.):

> *The Court finds that the Notice Plan is the best notice practicable under the circumstances and provides the Eligible Members of the Settlement Class sufficient information to make informed and meaningful decisions regarding their options in this Litigation and the effect of the Settlement on their rights. The Notice Plan further satisfies the requirements of due process and 735 ILCS 5/2-803. That Notice Plan is approved and accepted. This Court further finds that the Notice of Settlement and Claim Form comply with 735 ILCS 5/2-803 and are appropriate as part of the Notice Plan and the Settlement, and thus they are hereby approved and adopted. This Court further finds that no other notice other than that identified in the Notice Plan is reasonably necessary in this Litigation.*

**Judge Robert W. Gettleman,** *In re Trans Union Corp.***,** (September 17, 2008) MDL No. 1350 (N.D. Ill.):

> *The Court finds that the dissemination of the Class Notice under the terms and in the format provided for in its Preliminary Approval Order constitutes the best notice practicable under the circumstances, is due and sufficient notice for all purposes to all persons entitled to such notice, and fully satisfies the requirements of the Federal Rules of Civil Procedure, the requirements of due process under the Constitution of the United States, and any other applicable law… Accordingly, all objections are hereby OVERRULED.*

**Judge Steven D. Merryday***, Lockwood v. Certegy Check Services, Inc.***,** (September 3, 2008) No. 8:07-cv-1434-T-23TGW (M.D. Fla.):

> *The form, content, and method of dissemination of the notice given to the Settlement Class were adequate and reasonable and constituted the best notice practicable in the circumstances. The notice as given provided valid, due, and sufficient notice of the proposed settlement, the terms and conditions of the Settlement Agreement, and these proceedings to all persons entitled to such notice, and the notice satisfied the requirements of Rule 23, Federal Rules of Civil Procedure, and due process.*

**Judge William G. Young,** *In re TJX Companies***,** (September 2, 2008) MDL No. 1838 (D. Mass.):

> *The form, content, and method of dissemination of notice provided to the Settlement Class were adequate and reasonable, and constituted the best notice practicable under the circumstances. The Notice, as given, provided valid, due, and sufficient notice of the proposed settlement, the terms and conditions set forth in the Settlement Agreement, and these proceedings to all Persons entitled to such notice, and said Notice fully satisfied the requirements of Fed. R. Civ. P. 23 and due process.*

**Judge Philip S. Gutierrez,** *Shaffer v. Continental Casualty Co.,* (June 11, 2008) SACV-06-2235-PSG (PJWx) (C.D. Cal.):

> *…was reasonable and constitutes due, adequate, and sufficient notice to all persons entitled to receive notice; and met all applicable requirements of the Federal Rules of Civil Procedure, the Class Action Fairness Act, the United States Constitution (including the Due Process Clauses), the Rules of the Court, and any other applicable law.*

**Judge Robert L. Wyatt,** *Gunderson v. AIG Claim Services, Inc.,* (May 29, 2008) No. 2004-002417 (14th Jud. D. Ct. La.):

> *Notices given to Settlement Class members…were reasonably calculated under all the circumstances and have been sufficient, as to form, content, and manner of dissemination…Such notices complied with all requirements of the federal and state constitutions, including the due process clause, and applicable articles of the Louisiana Code of Civil Procedure, and constituted the best notice practicable under the circumstances and constituted due and sufficient notice to all potential members of the Settlement Class.*



PORTLAND AREA OFFICE     10300 SW ALLEN BLVD     BEAVERTON, OR 97005     T 503-597-7697
PHILADELPHIA AREA OFFICE     1420 LOCUST ST 30 F     PHILADELPHIA, PA 1910     T 215-721-2120

9

**Judge Mary Anne Mason,** *Palace v. DaimlerChrysler Corp.,* (May 29, 2008) No. 01-CH-13168 (Ill. Cir. Ct.):

> *The form, content, and method of dissemination of the notice given to the Illinois class and to the Illinois Settlement Class were adequate and reasonable, and constituted the best notice practicable under the circumstances. The notice, as given, provided valid, due, and sufficient notice of the proposed Settlement, the terms and conditions set forth in the Settlement Agreement, and these proceedings, to all Persons entitled to such notice, and said notice fully satisfied the requirements of due process and complied with 735 ILCS §§5/2-803 and 5/2-806.*

**Judge David De Alba,** *Ford Explorer Cases,* (May 29, 2008) JCCP Nos. 4226 & 4270 (Cal. Super. Ct.):

> *[T]he Court is satisfied that the notice plan, design, implementation, costs, reach, were all reasonable, and has no reservations about the notice to those in this state and those in other states as well, including Texas, Connecticut, and Illinois; that the plan that was approved—submitted and approved, comports with the fundamentals of due process as described in the case law that was offered by counsel.*

**Judge Kirk D. Johnson,** *Webb v. Liberty Mutual Ins. Co.,* (March 3, 2008) No. CV-2007-418-3 (Ark. Cir. Ct.):

> *The Court finds that there was minimal opposition to the settlement. After undertaking an extensive notice campaign to Class members of approximately 10,707 persons, mailed notice reached 92.5% of potential Class members.*

**Judge Carol Crafton Anthony,** *Johnson v. Progressive Casualty Ins. Co.,* (December 6, 2007) No. CV-2003-513 (Ark. Cir. Ct.):

> *Notice of the Settlement Class was constitutionally adequate, both in terms of its substance and the manner in which it was disseminated…Notice was direct mailed to all Class members whose current whereabouts could be identified by reasonable effort. Notice reached a large majority of the Class members. The Court finds that such notice constitutes the best notice practicable…The forms of Notice and Notice Plan satisfy all of the requirements of Arkansas law and due process.*

**Judge Kirk D. Johnson,** *Sweeten v. American Empire Insurance Co.,* (August 20, 2007) No. CV-2007-154-3 (Ark. Cir. Ct.):

> *The Court does find that all notices required by the Court to be given to class members was done within the time allowed and the manner best calculated to give notice and apprise all the interested parties of the litigation. It was done through individual notice, first class mail, through internet website and the toll-free telephone call center…The Court does find that these methods were the best possible methods to advise the class members of the pendency of the action and opportunity to present their objections and finds that these notices do comply with all the provisions of Rule 23 and the Arkansas and United States Constitutions.*

**Judge Robert Wyatt,** *Gunderson v. F.A. Richard & Associates, Inc.,* (July 19, 2007) No. 2004-2417-D (14th Jud. D. Ct. La.):

> *Okay. Let me sign this one. This is the final Order and Judgment regarding the fairness, reasonableness and adequacy. And I am satisfied in all respects regarding the presentation that's been made to the Court this morning in the Class memberships, the representation, the notice, and all other aspects and I'm signing that Order at this time. Congratulations, gentlemen.*

**Judge Lewis A. Kaplan,** *In re Parmalat Securities Litigation,* (July 19, 2007) MDL No. 1653-LAK (S.D.N.Y.):

> *The Court finds that the distribution of the Notice, the publication of the Publication Notice, and the notice methodology…met all applicable requirements of the Federal Rules of Civil Procedure, the United States Constitution, (including the Due Process clause), the Private Securities Litigation Reform Act of 1995 (15 U.S.C. 78u-4, et seq.) (the "PSLRA"), the Rules of the Court, and any other applicable law.*



PORTLAND AREA OFFICE       10300 SW ALLEN BLVD       BEAVERTON, OR 97005       T 503-597-7697
PHILADELPHIA AREA OFFICE   1420 LOCUST ST 30 F       PHILADELPHIA, PA 1910     T 215-721-2120

10

**Judge Joe Griffin,** ***Beasley v. The Reliable Life Insurance Co.,*** (March 29, 2007) No. CV-2005-58-1 (Ark. Cir. Ct.):

[T]he Court has, pursuant to the testimony regarding the notification requirements, that were specified and adopted by this Court, has been satisfied and that they meet the requirements of due process. They are fair, reasonable, and adequate. I think the method of notification certainly meets the requirements of due process…So the Court finds that the notification that was used for making the potential class members aware of this litigation and the method of filing their claims, if they chose to do so, all those are clear and concise and meet the plain language requirements and those are completely satisfied as far as this Court is concerned in this matter.

**Judge Lewis A. Kaplan,** ***In re Parmalat Securities Litigation,*** (March 1, 2007) MDL No. 1653-LAK (S.D.N.Y.):

The court approves, as to form and content, the Notice and the Publication Notice, attached hereto as Exhibits 1 and 2, respectively, and finds that the mailing and distribution of the Notice and the publication of the Publication Notice in the manner and the form set forth in Paragraph 6 of this Order…meet the requirements of Rule 23 of the Federal Rules of Civil Procedure, the Securities Exchange Act of 1934, as emended by Section 21D(a)(7) of the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4(a)(7), and due process, and is the best notice practicable under the circumstances and shall constitute due and sufficient notice to all persons and entities entitled thereto.

**Judge Anna J. Brown,** ***Reynolds v. The Hartford Financial Services Group, Inc.,*** (February 27, 2007) No. CV-01-1529-BR (D. Or):

[T]he court finds that the Notice Program fairly, fully, accurately, and adequately advised members of the Settlement Class and each Settlement Subclass of all relevant and material information concerning the proposed settlement of this action, their rights under Rule 23 of the Federal Rules of Civil Procedure, and related matters, and afforded the Settlement Class with adequate time and an opportunity to file objections to the Settlement or request exclusion from the Settlement Class. The court finds that the Notice Program constituted the best notice practicable under the circumstances and fully satisfied the requirements of Rule 23 and due process.

**Judge Kirk D. Johnson,** ***Zarebski v. Hartford Insurance Company of the Midwest,*** (February 13, 2007) No. CV-2006-409-3 (Ark. Cir. Ct.):

Based on the Court's review of the evidence admitted and argument of counsel, the Court finds and concludes that the Class Notice, as disseminated to members of the Settlement Class in accordance with provisions of the Preliminary Approval Order, was the best notice practicable under the circumstances to all members of the Settlement Class. Accordingly, the Class Notice and Claim Form as disseminated are finally approved as fair, reasonable, and adequate notice under the circumstances. The Court finds and concludes that due and adequate notice of the pendency of this Action, the Stipulation, and the Final Settlement Hearing has been provided to members of the Settlement Class, and the Court further finds and concludes that the notice campaign described in the Preliminary Approval Order and completed by the parties complied fully with the requirements of Arkansas Rule of Civil Procedure 23 and the requirements of due process under the Arkansas and United States Constitutions.

**Judge Richard J. Holwell,** ***In re Vivendi Universal, S.A. Securities Litigation,*** 2007 WL 1490466, at *34 (S.D.N.Y.):

In response to defendants' manageability concerns, plaintiffs have filed a comprehensive affidavit outlining the effectiveness of its proposed method of providing notice in foreign countries. According to this…the Court is satisfied that plaintiffs intend to provide individual notice to those class members whose names and addresses are ascertainable, and that plaintiffs' proposed form of publication notice, while complex, will prove both manageable and the best means practicable of providing notice.

**Judge Samuel Conti,** ***Ciabattari v. Toyota Motor Sales, U.S.A., Inc.,*** (November 17, 2006) No. C-05-04289-SC (N.D. Cal.):

After reviewing the evidence and arguments presented by the parties…the Court finds as follows…The class members were given the best notice practicable under the circumstances, and that such notice meets the requirements of the Due Process Clause of the U.S. Constitution, and all applicable statutes and rules of court.



PORTLAND AREA OFFICE
PHILADELPHIA AREA OFFICE

10300 SW ALLEN BLVD
1420 LOCUST ST 30 F

BEAVERTON, OR 97005
PHILADELPHIA, PA 1910

T 503-597-7697
T 215-721-2120

**Judge Ivan L.R. Lemelle,** *In re High Sulfur Content Gasoline Prods. Liability Litigation,* (November 8, 2006) MDL No. 1632 (E.D. La.):

> This Court approved a carefully-worded Notice Plan, which was developed with the assistance of a nationally-recognized notice expert, Hilsoft Notifications…The Notice Plan for this Class Settlement was consistent with the best practices developed for modern-style "plain English" class notices; the Court and Settling Parties invested substantial effort to ensure notice to persons displaced by the Hurricanes of 2005; and as this Court has already determined, the Notice Plan met the requirements of Rule 23 and constitutional due process.

**Judge Catherine C. Blake,** *In re Royal Ahold Securities and "ERISA" Litigation,* (November 2, 2006) MDL No. 1539 (D. Md.):

> The global aspect of the case raised additional practical and legal complexities, as did the parallel criminal proceedings in another district. The settlement obtained is among the largest cash settlements ever in a securities class action case and represents an estimated 40% recovery of possible provable damages. The notice process appears to have been very successful not only in reaching but also in eliciting claims from a substantial percentage of those eligible for recovery.

**Judge Elaine E. Bucklo,** *Carnegie v. Household International,* (August 28, 2006) No. 98 C 2178 (N.D. Ill.):

> [T]he Notice was disseminated pursuant to a plan consisting of first class mail and publication developed by Plaintiff's notice consultant, Hilsoft Notification[s]…who the Court recognized as experts in the design of notice plans in class actions. The Notice by first-class mail and publication was provided in an adequate and sufficient manner; constitutes the best notice practicable under the circumstances; and satisfies all requirements of Rule 23(e) and due process.

**Judge Joe E. Griffin,** *Beasley v. Hartford Insurance Company of the Midwest,* (June 13, 2006) No. CV-2005-58-1 (Ark. Cir. Ct.):

> Based on the Court's review of the evidence admitted and argument of counsel, the Court finds and concludes that the Individual Notice and the Publication Notice, as disseminated to members of the Settlement Class in accordance with provisions of the Preliminarily Approval Order, was the best notice practicable under the circumstances…and the requirements of due process under the Arkansas and United States Constitutions.

**Judge Norma L. Shapiro,** *First State Orthopedics et al. v. Concentra, Inc., et al.,* (May 1, 2006) No. 2:05-CV-04951-NS (E.D. Pa.):

> The Court finds that dissemination of the Mailed Notice, Published Notice and Full Notice in the manner set forth here and in the Settlement Agreement meets the requirements of due process and Pennsylvania law. The Court further finds that the notice is reasonable, and constitutes due, adequate, and sufficient notice to all persons entitled to receive notice, is the best practicable notice; and is reasonably calculated, under the circumstances, to apprise members of the Settlement Class of the pendency of the Lawsuit and of their right to object or to exclude themselves from the proposed settlement.

**Judge Thomas M. Hart,** *Froeber v. Liberty Mutual Fire Ins. Co.,* (April 19, 2006) No. 00C15234 (Or. Cir. Ct.):

> The court has found and now reaffirms that dissemination and publication of the Class Notice in accordance with the terms of the Third Amended Order constitutes the best notice practicable under the circumstances.

**Judge Catherine C. Blake,** *In re Royal Ahold Securities and "ERISA" Litigation,* (January 6, 2006) MDL No. 1539 (D. Md.):

> I think it's remarkable, as I indicated briefly before, given the breadth and scope of the proposed Class, the global nature of the Class, frankly, that again, at least on a preliminary basis, and I will be getting a final report on this, that the Notice Plan that has been proposed seems very well, very well suited, both in terms of its plain language and in terms of its international reach, to do what I hope will be a very thorough and broad-ranging job of reaching as many of the shareholders, whether individual or institutional, as



HILSOFT
NOTIFICATIONS

PORTLAND AREA OFFICE     10300 SW ALLEN BLVD         BEAVERTON, OR 97005     T 503-597-7697
PHILADELPHIA AREA OFFICE  1420 LOCUST ST 30 F         PHILADELPHIA, PA 1910   T 215-721-2120

12

*possibly can be done to participate in what I also preliminarily believe to be a fair, adequate and reasonable settlement.*

**Judge Catherine C. Blake,** *In re Royal Ahold Securities & "ERISA" Litigation,* 437 F.Supp.2d 467, 472 (D. Md. 2006):

*The court hereby finds that the Notice and Notice Plan described herein and in the Order dated January 9, 2006 provided Class Members with the best notice practicable under the circumstances. The Notice provided due and adequate notice of these proceedings and the matters set forth herein, including the Settlement and Plan of Allocation, to all persons entitled to such notice, and the Notice fully satisfied the requirements of Rule 23 of the Federal Rules of Civil Procedure and the requirements of due process.*

**Judge Robert H. Wyatt, Jr.,** *Gray v. New Hampshire Indemnity Co., Inc.,* (December 19, 2005) No. CV-2002-952-2-3 (Ark. Cir. Ct.):

*Notice of the Settlement Class was constitutionally adequate, both in terms of its substance and the manner in which it was disseminated. The Notice contained the essential elements necessary to satisfy due process, including the Settlement Class definition, the identities of the Parties and of their counsel, a summary of the terms of the proposed settlement, Class Counsel's intent to apply for fees, information regarding the manner in which objections could be submitted, and requests for exclusions could be filed. The Notice properly informed Class members of the formula for the distribution of benefits under the settlement…Notice was direct mailed to all Class members whose current whereabouts could be identified by reasonable effort. Notice was also effected by publication in many newspapers and magazines throughout the nation, reaching a large majority of the Class members multiple times. The Court finds that such notice constitutes the best notice practicable.*

**Judge Michael J. O'Malley,** *Defrates v. Hollywood Entm't Corp.,* (June 24, 2005) No. 02 L 707 (Ill. Cir. Ct.):

*[T]his Court hereby finds that the notice program described in the Preliminary Approval Order and completed by HEC complied fully with the requirements of due process, the Federal Rules of Civil Procedure and all other applicable laws.*

**Judge Wilford D. Carter,** *Thibodeaux v. Conoco Phillips Co.,* (May 26, 2005) No. 2003-481 F (14th J.D. Ct. La.):

*Notice given to Class Members…were reasonably calculated under all the circumstances and have been sufficient, both as to the form and content…Such notices complied with all requirements of the federal and state constitutions, including the due process clause, and applicable articles of the Louisiana Code of Civil Procedure, and constituted the best notice practicable under the circumstances and constituted due process and sufficient notice to all potential members of the Class as Defined.*

**Judge Michael Canaday,** *Morrow v. Conoco Inc.,* (May 25, 2005) No. 2002-3860 G (14th J.D. Ct. La.):

*The objections, if any, made to due process, constitutionality, procedures, and compliance with law, including, but not limited to, the adequacy of notice and the fairness of the proposed Settlement Agreement, lack merit and are hereby overruled.*

**Judge John R. Padova,** *Nichols v. SmithKline Beecham Corp.,* (April 22, 2005) No. 00-6222 (E.D. Pa.):

*Pursuant to the Order dated October 18, 2004, End-Payor Plaintiffs employed Hilsoft Notifications to design and oversee Notice to the End-Payor Class. Hilsoft Notifications has extensive experience in class action notice situations relating to prescription drugs and cases in which unknown class members need to receive notice…After reviewing the individual mailed Notice, the publication Notices, the PSAs and the informational release, the Court concludes that the substance of the Notice provided to members of the End-Payor Class in this case was adequate to satisfy the concerns of due process and the Federal Rules.*



| PORTLAND AREA OFFICE | 10300 SW ALLEN BLVD | BEAVERTON, OR 97005 | T 503-597-7697 |
| PHILADELPHIA AREA OFFICE | 1420 LOCUST ST 30 F | PHILADELPHIA, PA 1910 | T 215-721-2120 |

13

**Judge Douglas L. Combs,** ***Morris v. Liberty Mutual Fire Ins. Co.,*** (February 22, 2005) No. CJ-03-714 (D. Okla.):

> *I am very impressed that the notice was able to reach – be delivered to 97 ½ percent members of the class. That, to me, is admirable. And I'm also – at the time that this was initially entered, I was concerned about the ability of notice to be understood by a common, nonlawyer person, when we talk about legalese in a court setting. In this particular notice, not only the summary notice but even the long form of the notice were easily understandable, for somebody who could read the English language, to tell them whether or not they had the opportunity to file a claim.*

**Judge Joseph R. Goodwin,** ***In re Serzone Products Liability Litigation,*** 231 F.R.D. 221, 231 (S.D. W. Va. 2005):

> *The Notice Plan was drafted by Hilsoft Notifications, a Pennsylvania firm specializing in designing, developing, analyzing and implementing large-scale, unbiased legal notification plans. Hilsoft has disseminated class action notices in more than 150 cases, and it designed the model notices currently displayed on the Federal Judicial Center's website as a template for others to follow…To enhance consumer exposure, Hilsoft studied the demographics and readership of publications among adults who used a prescription drug for depression in the last twelve months. Consequently, Hilsoft chose to utilize media particularly targeting women due to their greater incidence of depression and heavy usage of the medication.*

**Judge Richard G. Stearns,** ***In re Lupron*® *Marketing and Sales Practice Litigation,*** (November 24, 2004) MDL No. 1430 (D. Mass.):

> *After review of the proposed Notice Plan designed by Hilsoft Notifications…is hereby found to be the best practicable notice under the circumstances and, when completed, shall constitute due and sufficient notice of the Settlement and the Fairness Hearing to all persons and entities affected by and/or entitled to participate in the Settlement, in full compliance with the notice requirements of Rule 23 the Federal Rules of Civil Procedure and due process.*

**Judge Richard G. Stearns,** ***In re Lupron*® *Marketing and Sales Practice Litigation,*** (November 23, 2004) MDL No. 1430 (D. Mass.):

> *I actually find the [notice] plan as proposed to be comprehensive and extremely sophisticated and very likely be as comprehensive as any plan of its kind could be in reaching those most directly affected.*

**Judge James S. Moody, Jr.,** ***Mantzouris v. Scarritt Motor Group Inc.,*** (August 10, 2004) No. 8:03 CV- 0015-T-30 MSS (M.D. Fla.):

> *Due and adequate notice of the proceedings having been given and a full opportunity having been offered to the members of the Class to participate in the Settlement Hearing, or object to the certification of the Class and the Agreement, it is hereby determined that all members of the Class, except for Ms. Gwendolyn Thompson, who was the sole person opting out of the Settlement Agreement, are bound by this Order and Final Judgment entered herein.*

**Judge Robert E. Payne,** ***Fisher v. Virginia Electric & Power Co.,*** (July 1, 2004) No. 3:02CV431 (E.D. Va.)**:**

> *The record here shows that the class members have been fully and fairly notified of the existence of the class action, of the issues in it, of the approaches taken by each side in it in such a way as to inform meaningfully those whose rights are affected and to thereby enable them to exercise their rights intelligently…The success rate in notifying the class is, I believe, at least in my experience, I share Ms. Kauffman's experience, it is as great as I have ever seen in practicing or serving in this job…So I don't believe we could have had any more effective notice.*

**Judge John Kraetzer,** ***Baiz v. Mountain View Cemetery,*** (April 14, 2004) No. 809869-2 (Cal. Super. Ct.):

> *The notice program was timely completed, complied with California Government Code section 6064, and provided the best practicable notice to all members of the Settlement Class under the circumstances. The Court finds that the notice program provided class members with adequate instructions and a variety of*



PORTLAND AREA OFFICE        10300 SW ALLEN BLVD        BEAVERTON, OR 97005        T 503-597-7697
PHILADELPHIA AREA OFFICE    1420 LOCUST ST 30 F        PHILADELPHIA, PA 1910      T 215-721-2120

14

*means to obtain information pertaining to their rights and obligations under the settlement so that a full opportunity has been afforded to class members and all other persons wishing to be heard…The Court has determined that the Notice given to potential members of the Settlement Class fully and accurately informed potential Members of the Settlement Class of all material elements of the proposed settlement and constituted valid, due, and sufficient notice to all potential members of the Settlement Class, and that it constituted the best practicable notice under the circumstances.*

**Hospitality Mgmt. Assoc., Inc. v. Shell Oil Co.,** 356 S.C. 644, 663, 591 S.E.2d 611, 621 (Sup. Ct. S.C. 2004):

*Clearly, the Cox court designed and utilized various procedural safeguards to guarantee sufficient notice under the circumstances.  Pursuant to a limited scope of review, we need go no further in deciding the Cox court's findings that notice met due process are entitled to deference.*

**Judge Joseph R. Goodwin, *In re Serzone Prods. Liability Litigation,*** 2004 U.S. Dist. LEXIS 28297, at *10 (S.D. W. Va.):

*The Court has considered the Notice Plan and proposed forms of Notice and Summary Notice submitted with the Memorandum for Preliminary Approval and finds that the forms and manner of notice proposed by Plaintiffs and approved herein meet the requirements of due process and Fed.R.Civ.P. 23(c) and (e), are the best notice practicable under the circumstances, constitute sufficient notice to all persons entitled to notice, and satisfy the Constitutional requirements of notice.*

**Judge James D. Arnold, *Cotten v. Ferman Mgmt. Servs. Corp.,*** (November 26, 2003) No. 02-08115 (Fla. Cir. Ct.):

*Due and adequate notice of the proceedings having been given and a full opportunity having been offered to the member of the Class to participate in the Settlement Hearing, or object to the certification of the Class and the Agreement…*

**Judge Judith K. Fitzgerald, *In re Pittsburgh Corning Corp.,*** (November 26, 2003) No. 00-22876-JKF (Bankr. W.D. Pa.):

*The procedures and form of notice for notifying the holders of Asbestos PI Trust Claims, as described in the Motion, adequately protect the interests of the holders of Asbestos PI Trust Claims in a manner consistent with the principles of due process, and satisfy the applicable requirements of the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure.*

**Judge Carter Holly, *Richison v. American Cemwood Corp.,*** (November 18, 2003) No. 005532 (Cal. Super. Ct.):

*As to the forms of Notice, the Court finds and concludes that they fully apprised the Class members of the pendency of the litigation, the terms of the Phase 2 Settlement, and Class members' rights and options…Not a single Class member—out of an estimated 30,000—objected to the terms of the Phase 2 Settlement Agreement, notwithstanding a comprehensive national Notice campaign, via direct mail and publication Notice…The notice was reasonable and the best notice practicable under the circumstances, was due, adequate, and sufficient notice to all Class members, and complied fully with the laws of the State of California, the Code of Civil Procedure, due process, and California Rules of Court 1859 and 1860.*

**Judge Thomas A. Higgins, *In re Columbia/HCA Healthcare Corp.,*** (June 13, 2003) MDL No. 1227 (M.D. Tenn.):

*Notice of the settlement has been given in an adequate and sufficient manner.  The notice provided by mailing the settlement notice to certain class members and publishing notice in the manner described in the settlement was the best practicable notice, complying in all respects with the requirements of due process.*

**Judge Harold Baer, Jr., *Thompson v. Metropolitan Life Ins. Co.,*** 216 F.R.D. 55, 68 (S.D.N.Y. 2003):

*In view of the extensive notice campaign waged by the defendant, the extremely small number of class members objecting or requesting exclusion from the settlement is a clear sign of strong support for the settlement…The notice provides, in language easily understandable to a lay person, the essential terms of*



PORTLAND AREA OFFICE        10300 SW ALLEN BLVD              BEAVERTON, OR 97005      T 503-597-7697
PHILADELPHIA AREA OFFICE    1420 LOCUST ST 30 F              PHILADELPHIA, PA 1910    T 215-721-2120

15

*the settlement, including the claims asserted…who would be covered by the settlement…[T]he notice campaign that defendant agreed to undertake was extensive…I am satisfied, having reviewed the contents of the notice package, and the extensive steps taken to disseminate notice of the settlement, that the class notice complies with the requirements of Rule 23 (c)(2) and 23(e). In summary, I have reviewed all of the objections, and none persuade me to conclude that the proposed settlement is unfair, inadequate or unreasonable.*

**Judge Edgar E. Bayley, *Dimitrios v. CVS, Inc.,*** (November 27, 2002) No. 99-6209; ***Walker v. Rite Aid Corp.,*** No. 99-6210; and ***Myers v. Rite Aid Corp.,*** No. 01-2771 (Pa. Ct. C.P.):

*The Court specifically finds that: fair and adequate notice has been given to the class, which comports with due process of law.*

**Judge Dewey C. Whitenton, *Ervin v. Movie Gallery, Inc.,*** (November 22, 2002) No. 13007 (Tenn. Ch.):

*The content of the class notice also satisfied all due process standards and state law requirements…The content of the notice was more than adequate to enable class members to make an informed and intelligent choice about remaining in the class or opting out of the class.*

**Judge James R. Williamson, *Kline v. The Progressive Corp.,*** (November 14, 2002) No. 01-L-6 (Ill. Cir. Ct.):

*Notice to the Settlement Class was constitutionally adequate, both in terms of its substance and the manner in which it was disseminated. The notice contained the essential elements necessary to satisfy due process…*

**Judge Marina Corodemus, *Talalai v. Cooper Tire & Rubber Co.,*** (September 13, 2002) No. L-008830.00 (N.J. Super. Ct.):

*Here, the comprehensive bilingual, English and Spanish, court-approved Notice Plan provided by the terms of the settlement meets due process requirements. The Notice Plan used a variety of methods to reach potential class members. For example, short form notices for print media were placed…throughout the United States and in major national consumer publications which include the most widely read publications among Cooper Tire owner demographic groups.*

**Judge Harold Baer, Jr., *Thompson v. Metropolitan Life Ins. Co.,*** (September 3, 2002) No. 00 Civ. 5071-HB (S.D.N.Y.):

*The Court further finds that the Class Notice and Publication Notice provided in the Settlement Agreement are written in plain English and are readily understandable by Class Members. In sum, the Court finds that the proposed notice texts and methodology are reasonable, that they constitute due, adequate and sufficient notice to all persons entitled to be provided with notice, and that they meet the requirements of the Federal Rules of Civil Procedure (including Fed. R. Civ. P. 23(c)(2) and (e)), the United States Constitution (including the Due Process Clause), the Rules of the Court, and any other applicable law.*

**Judge Milton Gunn Shuffield, *Scott v. Blockbuster Inc.,*** (January 22, 2002) No. D 162-535 (Tex. Jud. Dist. Ct.) Ultimately withstood challenge to Court of Appeals of Texas. *Peters v. Blockbuster* 65 S.W.3d 295, 307 (Tex. App.-Beaumont, 2001):

*In order to maximize the efficiency of the notice, a professional concern, Hilsoft Notifications, was retained. This Court concludes that the notice campaign was the best practicable, reasonably calculated, under all the circumstances, to apprise interested parties of the settlement and afford them an opportunity to present their objections…The notice campaign was highly successful and effective, and it more than satisfied the due process and state law requirements for class notice.*

**Judge Marina Corodemus, *Talalai v. Cooper Tire & Rubber Co.,*** (October 30, 2001) No. MID-L-8839-00-MT (N.J. Super. Ct.):

*The parties have crafted a notice program which satisfies due process requirements without reliance on an unreasonably burdensome direct notification process…The form of the notice is reasonably calculated*



PORTLAND AREA OFFICE    10300 SW ALLEN BLVD    BEAVERTON, OR 97005    T 503-597-7697
PHILADELPHIA AREA OFFICE    1420 LOCUST ST 30 F    PHILADELPHIA, PA 1910    T 215-721-2120

16

*to apprise class members of their rights. The notice program is specifically designed to reach a substantial percentage of the putative settlement class members.*

**Judge Marina Corodemus,** *Talalai v. Cooper Tire & Rubber Co.,* (October 29, 2001) No. L-8830-00-MT (N.J. Super. Ct.):

*I saw the various bar graphs for the different publications and the different media dissemination, and I think that was actually the clearest bar graph I've ever seen in my life…it was very clear of the time periods that you were doing as to each publication and which media you were doing over what market time, so I think that was very clear.*

**Judge Stuart R. Pollak,** *Microsoft I-V Cases,* (April 1, 2001) J.C.C.P. No. CJC-00-004106 (Cal. Super. Ct.):

*[C]oncerning dissemination of class notice; and I have reviewed the materials that have been submitted on that subject and basically I'm satisfied. I think it's amazing if you're really getting 80 percent coverage. That's very reassuring. And the papers that you submitted responded to a couple things that had been mentioned before and I am satisfied with all that.*

**Judge Stuart R. Pollak,** *Microsoft I-V Cases,* (March 30, 2001) J.C.C.P. No. 4106 (Cal. Super. Ct.):

*Plaintiffs and Defendant Microsoft Corporation have submitted a joint statement in support of their request that the Court approve the plan for dissemination of class action notice and proposed forms of notice, and amend the class definition. The Court finds that the forms of notice to Class members attached hereto as Exhibits A and B fairly and adequately inform the Class members of their rights concerning this litigation. The Court further finds that the methods for dissemination of notice are the fairest and best practicable under the circumstances, and comport with due process requirements.*

## LEGAL NOTICE CASES

Hilsoft Notifications has served as a notice expert for planning, implementation and/or analysis in the following partial listing of cases:

| | |
|---|---|
| *Andrews v. MCI (900 Number Litigation)* | S.D. Ga., CV 191-175 |
| *Harper v. MCI (900 Number Litigation)* | S.D. Ga., CV 192-134 |
| *In re Bausch & Lomb Contact Lens Litigation* | N.D. Ala., 94-C-1144-WW |
| *In re Ford Motor Co. Vehicle Paint Litigation* | E.D. La., MDL No. 1063 |
| *Castano v. Am. Tobacco* | E.D. La., CV 94-1044 |
| *Cox v. Shell Oil (Polybutylene Pipe Litigation)* | Tenn. Ch., 18,844 |
| *In re Amino Acid Lysine Antitrust Litigation* | N.D. Ill., MDL No. 1083 |
| *In re Dow Corning Corp. (Breast Implant Bankruptcy)* | E.D. Mich., 95-20512-11-AJS |
| **Kunhel v. CNA Ins. Companies** | N.J. Super. Ct., ATL-C-0184-94 |
| *In re Factor Concentrate Blood Prods. Litigation (Hemophiliac HIV)* | N.D. Ill., MDL No. 986 |
| *In re Ford Ignition Switch Prods. Liability Litigation* | D. N.J., 96-CV-3125 |
| *Jordan v. A.A. Friedman (Non-Filing Ins. Litigation)* | M.D. Ga., 95-52-COL |



PORTLAND AREA OFFICE    10300 SW ALLEN BLVD    BEAVERTON, OR 97005    T 503-597-7697
PHILADELPHIA AREA OFFICE    1420 LOCUST ST 30 F    PHILADELPHIA, PA 1910    T 215-721-2120

17

| | |
|---|---|
| **Kalhammer v. First USA (Credit Card Litigation)** | Cal. Cir. Ct., C96-45632010-CAL |
| **Navarro-Rice v. First USA (Credit Card Litigation)** | Or. Cir. Ct., 9709-06901 |
| **Spitzfaden v. Dow Corning (Breast Implant Litigation)** | La. D. Ct., 92-2589 |
| **Robinson v. Marine Midland (Finance Charge Litigation)** | N.D. Ill., 95 C 5635 |
| **McCurdy v. Norwest Fin. Alabama** | Ala. Cir. Ct., CV-95-2601 |
| **Johnson v. Norwest Fin. Alabama** | Ala. Cir. Ct., CV-93-PT-962-S |
| **In re Residential Doors Antitrust Litigation** | E.D. Pa., MDL No. 1039 |
| **Barnes v. Am. Tobacco Co. Inc.** | E.D. Pa., 96-5903 |
| **Small v. Lorillard Tobacco Co. Inc.** | N.Y. Super. Ct., 110949/96 |
| **Naef v. Masonite Corp (Hardboard Siding Litigation)** | Ala. Cir. Ct., CV-94-4033 |
| **In re Synthroid Mktg. Litigation** | N.D. Ill., MDL No. 1182 |
| **Raysick v. Quaker State Slick 50 Inc.** | D. Tex., 96-12610 |
| **Castillo v. Mike Tyson (Tyson v. Holyfield Bout)** | N.Y. Super. Ct., 114044/97 |
| **Avery v. State Farm Auto. Ins. (Non-OEM Auto Parts Litigation)** | Ill. Cir. Ct., 97-L-114 |
| **Walls v. The Am. Tobacco Co. Inc.** | N.D. Okla., 97-CV-218-H |
| **Tempest v. Rainforest Café (Securities Litigation)** | D. Minn., 98-CV-608 |
| **Stewart v. Avon Prods. (Securities Litigation)** | E.D. Pa., 98-CV-4135 |
| **Goldenberg v. Marriott PLC Corp (Securities Litigation)** | D. Md., PJM 95-3461 |
| **Delay v. Hurd Millwork (Building Products Litigation)** | Wash. Super. Ct., 97-2-07371-0 |
| **Gutterman v. Am. Airlines (Frequent Flyer Litigation)** | Ill. Cir. Ct., 95CH982 |
| **Hoeffner v. The Estate of Alan Kenneth Vieira (Un-scattered Cremated Remains Litigation)** | Cal. Super. Ct., 97-AS 02993 |
| **In re Graphite Electrodes Antitrust Litigation** | E.D. Pa., MDL No. 1244 |
| **In re Silicone Gel Breast Implant Prods. Liability Litigation, Altrichter v. INAMED** | N.D. Ala., MDL No. 926 |
| **St. John v. Am. Home Prods. Corp. (Fen/Phen Litigation)** | Wash. Super. Ct., 97-2-06368 |
| **Crane v. Hackett Assocs. (Securities Litigation)** | E.D. Pa., 98-5504 |
| **In re Holocaust Victims Assets Litigation (Swiss Banks Litigation)** | E.D.N.Y., CV-96-4849 |
| **McCall v. John Hancock (Settlement Death Benefits)** | N.M. Cir. Ct., CV-2000-2818 |

HILSOFT NOTIFICATIONS

PORTLAND AREA OFFICE   10300 SW ALLEN BLVD   BEAVERTON, OR 97005   T 503-597-7697
PHILADELPHIA AREA OFFICE   1420 LOCUST ST 30 F   PHILADELPHIA, PA 1910   T 215-721-2120

18

| | |
|---|---|
| *Williams v. Weyerhaeuser Co. (Hardboard Siding Litigation)* | Cal. Super. Ct., CV-995787 |
| *Kapustin v. YBM Magnex Int'l Inc. (Securities Litigation)* | E.D. Pa., 98-CV-6599 |
| *Leff v. YBM Magnex Int'l Inc. (Securities Litigation)* | E.D. Pa., 95-CV-89 |
| *In re PRK/LASIK Consumer Litigation* | Cal. Super. Ct., CV-772894 |
| *Hill v. Galaxy Cablevision* | N.D. Miss., 1:98CV51-D-D |
| *Scott v. Am. Tobacco Co. Inc.* | La. D. Ct., 96-8461 |
| *Jacobs v. Winthrop Financial Associates (Securities Litigation)* | D. Mass., 99-CV-11363 |
| *Int'l Comm'n on Holocaust Era Ins. Claims – Worldwide Outreach Program* | Former Secretary of State Lawrence Eagleburger Commission |
| *Bownes v. First USA Bank (Credit Card Litigation)* | Ala. Cir. Ct., CV-99-2479-PR |
| *Whetman v. IKON (ERISA Litigation)* | E.D. Pa., 00-87 |
| *Mangone v. First USA Bank (Credit Card Litigation)* | Ill. Cir. Ct., 99AR672a |
| *In re Babcock and Wilcox Co. (Asbestos Related Bankruptcy)* | E.D. La., 00-10992 |
| *Barbanti v. W.R. Grace and Co. (Zonolite / Asbestos Litigation)* | Wash. Super. Ct., 00201756-6 |
| *Brown v. Am. Tobacco* | Cal. Super. Ct., J.C.C.P. 4042, 711400 |
| *Wilson v. Servier Canada Inc. (Canadian Fen/Phen Litigation)* | Ont. Super. Ct., 98-CV-158832 |
| *In re Texaco Inc. (Bankruptcy)* | S.D.N.Y. 87 B 20142, 87 B 20143, 87 B 20144 |
| *Olinde v. Texaco (Bankruptcy, Oil Lease Litigation)* | M.D. La., 96-390 |
| *Gustafson v. Bridgestone/Firestone, Inc. (Recall Related Litigation)* | S.D. Ill., 00-612-DRH |
| *In re Bridgestone/Firestone Tires Prods. Liability Litigation* | S.D. Ind., MDL No. 1373 |
| *Gaynoe v. First Union Corp. (Credit Card Litigation)* | N.C. Super. Ct., 97-CVS-16536 |
| *Carson v. Daimler Chrysler Corp. (Fuel O-Rings Litigation)* | W.D. Tenn., 99-2896 TU A |
| *Providian Credit Card Cases* | Cal. Super. Ct., J.C.C.P. 4085 |
| *Fields v. Great Spring Waters of Am., Inc. (Bottled Water Litigation)* | Cal. Super. Ct., 302774 |
| *Sanders v. Great Spring Waters of Am., Inc. (Bottled Water Litigation)* | Cal. Super. Ct., 303549 |
| *Sims v. Allstate Ins. Co. (Diminished Auto Value Litigation)* | Ill. Cir. Ct., 99-L-393A |



| | | | | |
|---|---|---|---|---|
| HILSOFT NOTIFICATIONS | PORTLAND AREA OFFICE | 10300 SW ALLEN BLVD | BEAVERTON, OR 97005 | T 503-597-7697 |
| | PHILADELPHIA AREA OFFICE | 1420 LOCUST ST 30 F | PHILADELPHIA, PA 1910 | T 215-721-2120 |

19

| | |
|---|---|
| *Peterson v. State Farm Mutual Auto. Ins. Co. (Diminished Auto Value Litigation)* | Ill. Cir. Ct., 99-L-394A |
| *Microsoft I-V Cases (Antitrust Litigation Mirroring Justice Dept.)* | Cal. Super. Ct., J.C.C.P. 4106 |
| *Westman v. Rogers Family Funeral Home, Inc. (Remains Handling Litigation)* | Cal. Super. Ct., C-98-03165 |
| *Rogers v. Clark Equipment Co.* | Ill. Cir. Ct., 97-L-20 |
| *Garrett v. Hurley State Bank (Credit Card Litigation)* | Miss. Cir. Ct., 99-0337 |
| *Ragoonanan v. Imperial Tobacco Ltd. (Firesafe Cigarette Litigation)* | Ont. Super. Ct., 00-CV-183165 CP |
| *Dietschi v. Am. Home Prods. Corp. (PPA Litigation)* | W.D. Wash., C01-0306L |
| *Dimitrios v. CVS, Inc. (PA Act 6 Litigation)* | Pa. C.P., 99-6209 |
| *Jones v. Hewlett-Packard Co. (Inkjet Cartridge Litigation)* | Cal. Super. Ct., 302887 |
| *In re Tobacco Cases II (California Tobacco Litigation)* | Cal. Super. Ct., J.C.C.P. 4042 |
| *Scott v. Blockbuster, Inc. (Extended Viewing Fees Litigation)* | 136th Tex. Jud. Dist., D 162-535 |
| *Anesthesia Care Assocs. v. Blue Cross of Cal.* | Cal. Super. Ct., 986677 |
| *Ting v. AT&T (Mandatory Arbitration Litigation)* | N.D. Cal., C-01-2969-BZ |
| *In re W.R. Grace & Co. (Asbestos Related Bankruptcy)* | Bankr. D. Del., 01-01139-JJF |
| *Talalai v. Cooper Tire & Rubber Co. (Tire Layer Adhesion Litigation)* | N.J. Super. Ct.,, MID-L-8839-00 MT |
| *Kent v. Daimler Chrysler Corp. (Jeep Grand Cherokee Park-to-Reverse Litigation)* | N.D. Cal., C01-3293-JCS |
| *Int'l Org. of Migration – German Forced Labour Compensation Programme* | Geneva, Switzerland |
| *Madsen v. Prudential Federal Savings & Loan (Homeowner's Loan Account Litigation)* | 3rd Jud. Dist. Ct. Utah, C79-8404 |
| *Bryant v. Wyndham Int'l., Inc. (Energy Surcharge Litigation)* | Cal. Super. Ct., GIC 765441, GIC 777547 |
| *In re USG Corp. (Asbestos Related Bankruptcy)* | Bankr. D. Del., 01-02094-RJN |
| *Thompson v. Metropolitan Life Ins. Co. (Race Related Sales Practices Litigation)* | S.D.N.Y., 00-CIV-5071 HB |
| *Ervin v. Movie Gallery Inc. (Extended Viewing Fees)* | Tenn. Ch., CV-13007 |
| *Peters v. First Union Direct Bank (Credit Card Litigation)* | M.D. Fla., 8:01-CV-958-T-26 TBM |
| *National Socialist Era Compensation Fund* | Republic of Austria |
| *In re Baycol Litigation* | D. Minn., MDL No. 1431 |



PORTLAND AREA OFFICE    10300 SW ALLEN BLVD    BEAVERTON, OR 97005    T 503-597-7697
PHILADELPHIA AREA OFFICE    1420 LOCUST ST 30 F    PHILADELPHIA, PA 1910    T 215-721-2120

20

| | |
|---|---|
| *Claims Conference–Jewish Slave Labour Outreach Program* | German Government Initiative |
| *Wells v. Chevy Chase Bank (Credit Card Litigation)* | Md. Cir. Ct., C-99-000202 |
| *Walker v. Rite Aid of PA, Inc. (PA Act 6 Litigation)* | C.P. Pa., 99-6210 |
| *Myers v. Rite Aid of PA, Inc. (PA Act 6 Litigation)* | C.P. Pa., 01-2771 |
| *In re PA Diet Drugs Litigation* | C.P. Pa., 9709-3162 |
| *Harp v. Qwest Communications (Mandatory Arbitration Lit.)* | Or. Circ. Ct., 0110-10986 |
| *Tuck v. Whirlpool Corp. & Sears, Roebuck & Co. (Microwave Recall Litigation)* | Ind. Cir. Ct., 49C01-0111-CP-002701 |
| *Allison v. AT&T Corp. (Mandatory Arbitration Litigation)* | 1st Jud. D.C. N.M., D-0101-CV-20020041 |
| *Kline v. The Progressive Corp.* | Ill. Cir. Ct., 01-L-6 |
| *Baker v. Jewel Food Stores, Inc. & Dominick's Finer Foods, Inc. (Milk Price Fixing)* | Ill. Cir. Ct., 00-L-9664 |
| *In re Columbia/HCA Healthcare Corp. (Billing Practices Litigation)* | M.D. Tenn., MDL No. 1227 |
| *Foultz v. Erie Ins. Exchange (Auto Parts Litigation)* | C.P. Pa., 000203053 |
| *Soders v. General Motors Corp. (Marketing Initiative Litigation)* | C.P. Pa., CI-00-04255 |
| *Nature Guard Cement Roofing Shingles Cases* | Cal. Super. Ct., J.C.C.P. 4215 |
| *Curtis v. Hollywood Entm't Corp. (Additional Rental Charges)* | Wash. Super. Ct., 01-2-36007-8 SEA |
| *Defrates v. Hollywood Entm't Corp.* | Ill. Cir. Ct., 02L707 |
| *Pease v. Jasper Wyman & Son, Merrill Blueberry Farms Inc., Allen's Blueberry Freezer Inc. & Cherryfield Foods Inc.* | Me. Super. Ct., CV-00-015 |
| *West v. G&H Seed Co. (Crawfish Farmers Litigation)* | 27th Jud. D. Ct. La., 99-C-4984-A |
| *Linn v. Roto-Rooter Inc. (Miscellaneous Supplies Charge)* | C.P. Ohio, CV-467403 |
| *McManus v. Fleetwood Enter., Inc. (RV Brake Litigation)* | D. Ct. Tex., SA-99-CA-464-FB |
| *Baiz v. Mountain View Cemetery (Burial Practices)* | Cal. Super. Ct., 809869-2 |
| *Stetser v. TAP Pharm. Prods, Inc. & Abbott Laboratories (Lupron Price Litigation)* | N.C. Super. Ct., 01-CVS-5268 |
| *Richison v. Am. Cemwood Corp. (Roofing Durability Settlement)* | Cal. Super. Ct., 005532 |
| *Cotten v. Ferman Mgmt. Servs. Corp.* | 13th Jud. Cir. Fla., 02-08115 |
| *In re Pittsburgh Corning Corp. (Asbestos Related Bankruptcy)* | Bankr. W.D. Pa., 00-22876-JKF |


HILSOFT NOTIFICATIONS   PORTLAND AREA OFFICE 10300 SW ALLEN BLVD   BEAVERTON, OR 97005   T 503-597-7697   PHILADELPHIA AREA OFFICE 1420 LOCUST ST 30 F   PHILADELPHIA, PA 1910   T 215-721-2120

21

| | |
|---|---|
| *Mostajo v. Coast Nat'l Ins. Co.* | Cal. Super. Ct., 00 CC 15165 |
| *Friedman v. Microsoft Corp. (Antitrust Litigation)* | Ariz. Super. Ct., CV 2000-000722 |
| *Multinational Outreach - East Germany Property Claims* | Claims Conference |
| *Davis v. Am. Home Prods. Corp. (Norplant Contraceptive Litigation)* | D. La., 94-11684 |
| *Walker v. Tap Pharmaceutical Prods., Inc. (Lupron Price Litigation)* | N.J. Super. Ct., CV CPM-L-682-01 |
| *Munsey v. Cox Communications (Late Fee Litigation)* | Civ. D. La., Sec. 9, 97 19571 |
| *Gordon v. Microsoft Corp. (Antitrust Litigation)* | 4th Jud. D. Ct. Minn., 00-5994 |
| *Clark v. Tap Pharmaceutical Prods., Inc.* | 5th Dist. App. Ct. Ill., 5-02-0316 |
| *Fisher v. Virginia Electric & Power Co.* | E.D. Va., 3:02-CV-431 |
| *Mantzouris v. Scarritt Motor Group, Inc.* | M.D. Fla., 8:03-CV-0015-T-30-MSS |
| *Johnson v. Ethicon, Inc. (Product Liability Litigation)* | W. Va. Cir. Ct., 01-C-1530, 1531, 1533, 01-C-2491 to 2500 |
| *Schlink v. Edina Realty Title* | 4th Jud. D. Ct. Minn., 02-018380 |
| *Tawney v. Columbia Natural Res. (Oil & Gas Lease Litigation)* | W. Va. Cir. Ct., 03-C-10E |
| *White v. Washington Mutual, Inc. (Pre-Payment Penalty Litigation)* | 4th Jud. D. Ct. Minn., CT 03-1282 |
| *Acacia Media Techs. Corp. v. Cybernet Ventures Inc., (Patent Infringement Litigation)* | C.D. Cal., SACV03-1803 GLT (Anx) |
| *Bardessono v. Ford Motor Co. (15 Passenger Vans)* | Wash. Super. Ct., 32494 |
| *Gardner v. Stimson Lumber Co. (Forestex Siding Litigation)* | Wash. Super. Ct., 00-2-17633-3SEA |
| *Poor v. Sprint Corp. (Fiber Optic Cable Litigation)* | Ill. Cir. Ct., 99-L-421 |
| *Thibodeau v. Comcast Corp.* | E.D. Pa., 04-CV-1777 |
| *Cazenave v. Sheriff Charles C. Foti (Strip Search Litigation)* | E.D. La., 00-CV-1246 |
| *National Assoc. of Police Orgs., Inc. v. Second Chance Body Armor, Inc. (Bullet Proof Vest Litigation)* | Mich. Cir. Ct., 04-8018-NP |
| *Nichols v. SmithKline Beecham Corp. (Paxil)* | E.D. Pa., 00-6222 |
| *Yacout v. Federal Pacific Electric Co. (Circuit Breaker)* | N.J. Super. Ct., MID-L-2904-97 |
| *Lewis v. Bayer AG (Baycol)* | 1st Jud. Dist. Ct. Pa., 002353 |
| *In re Educ. Testing Serv. PLT 7-12 Test Scoring Litigation* | E.D. La., MDL No. 1643 |
| *Stefanyshyn v. Consol. Indus. Corp. (Heat Exchanger)* | Ind. Super. Ct., 79 D 01-9712-CT-59 |



| | | | | |
|---|---|---|---|---|
| HILSOFT NOTIFICATIONS | PORTLAND AREA OFFICE | 10300 SW ALLEN BLVD | BEAVERTON, OR 97005 | T 503-597-7697 |
| | PHILADELPHIA AREA OFFICE | 1420 LOCUST ST 30 F | PHILADELPHIA, PA 1910 | T 215-721-2120 |

22

| | |
|---|---|
| *Barnett v. Wal-Mart Stores, Inc.* | Wash. Super. Ct., 01-2-24553-8 SEA |
| *In re Serzone Prods. Liability Litigation* | S.D. W. Va., MDL No. 1477 |
| *Ford Explorer Cases* | Cal. Super. Ct., J.C.C.P. 4226 & 4270 |
| *In re Solutia Inc. (Bankruptcy)* | S.D.N.Y., 03-17949-PCB |
| *In re Lupron Marketing & Sales Practices Litigation* | D. Mass., MDL No. 1430 |
| *Morris v. Liberty Mutual Fire Ins. Co.* | D. Okla., CJ-03-714 |
| *Bowling, et al. v. Pfizer Inc. (Bjork-Shiley Convexo-Concave Heart Valve)* | S.D. Ohio, C-1-91-256 |
| *Thibodeaux v. Conoco Philips Co.* | D. La., 2003-481 |
| *Morrow v. Conoco Inc.* | D. La., 2002-3860 |
| *Tobacco Farmer Transition Program* | U.S. Dept. of Agric. |
| *Perry v. Mastercard Int'l Inc.* | Ariz. Super. Ct., CV2003-007154 |
| *Brown v. Credit Suisse First Boston Corp.* | C.D. La., 02-13738 |
| *In re Unum Provident Corp.* | D. Tenn., 1:03-CV-1000 |
| *In re Ephedra Prods. Liability Litigation* | D.N.Y., MDL No. 1598 |
| *Chesnut v. Progressive Casualty Ins. Co.* | Ohio C.P., 460971 |
| *Froeber v. Liberty Mutual Fire Ins. Co.* | Or. Cir. Ct., 00C15234 |
| *Luikart v. Wyeth Am. Home Prods. (Hormone Replacement)* | W. Va. Cir. Ct., 04-C-127 |
| *Salkin v. MasterCard Int'l Inc. (Pennsylvania)* | Pa. C.P., 2648 |
| *Rolnik v. AT&T Wireless Servs., Inc.* | N.J. Super. Ct., L-180-04 |
| *Singleton v. Hornell Brewing Co. Inc. (Arizona Ice Tea)* | Cal. Super. Ct., BC 288 754 |
| *Becherer v. Qwest Commc'ns Int'l, Inc.* | Ill. Cir. Ct., 02-L140 |
| *Clearview Imaging v. Progressive Consumers Ins. Co.* | Fla. Cir. Ct., 03-4174 |
| *Mehl v. Canadian Pacific Railway, Ltd* | D.N.D., A4-02-009 |
| *Murray v. IndyMac Bank. F.S.B* | N.D. Ill., 04 C 7669 |
| *Gray v. New Hampshire Indemnity Co., Inc.* | Ark. Cir. Ct., CV-2002-952-2-3 |
| *George v. Ford Motor Co.* | M.D. Tenn., 3:04-0783 |
| *Allen v. Monsanto Co.* | W. Va. Cir. Ct., 041465 |



| | | | | |
|---|---|---|---|---|
| HILSOFT NOTIFICATIONS | PORTLAND AREA OFFICE<br>PHILADELPHIA AREA OFFICE | 10300 SW ALLEN BLVD<br>1420 LOCUST ST 30 F | BEAVERTON, OR 97005<br>PHILADELPHIA, PA 1910 | T 503-597-7697<br>T 215-721-2120 |

23

| *Carter v. Monsanto Co.* | W. Va. Cir. Ct., 00-C-300 |
|---|---|
| *Carnegie v. Household Int'l, Inc.* | N. D. Ill., 98-C-2178 |
| *Daniel v. AON Corp.* | Ill. Cir. Ct., 99 CH 11893 |
| *In re Royal Ahold Securities and "ERISA" Litigation* | D. Md., MDL No. 1539 |
| *In re Pharmaceutical Industry Average Wholesale Price Litigation* | D. Mass., MDL No. 1456 |
| *Meckstroth v. Toyota Motor Sales, U.S.A., Inc.* | 24th Jud. D. Ct. La., 583-318 |
| *Walton v. Ford Motor Co.* | Cal. Super. Ct., SCVSS 126737 |
| *Hill v. State Farm Mutual Auto Ins. Co.* | Cal. Super. Ct., BC 194491 |
| *First State Orthopaedics et al. v. Concentra, Inc., et al.* | E.D. Pa. 2:05-CV-04951-AB |
| *Sauro v. Murphy Oil USA, Inc.* | E.D. La., 05-4427 |
| *In re High Sulfur Content Gasoline Prods. Liability Litigation* | E.D. La., MDL No. 1632 |
| *Homeless Shelter Compensation Program* | City of New York |
| *Rosenberg v. Academy Collection Service, Inc.* | E.D. Pa., 04-CV-5585 |
| *Chapman v. Butler & Hosch, P.A.* | 2nd Jud. Cir. Fla., 2000-2879 |
| *In re Vivendi Universal, S.A. Securities Litigation* | S.D.N.Y., 02-CIV-5571 RJH |
| *Desportes v. American General Assurance Co.* | Ga. Super. Ct., SU-04-CV-3637 |
| *In re: Propulsid Products Liability Litigation* | E.D. La., MDL No. 1355 |
| *Baxter v. The Attorney General of Canada (In re Residential Schools Class Action Litigation)* | Ont. Super. Ct., 00-CV-192059 CPA |
| *McNall v. Mastercard Int'l, Inc. (Currency Conversion Fees)* | 13th Tenn. Jud. Dist. Ct., CT-002506-03 |
| *Lee v. Allstate* | Ill. Cir. Ct., 03 LK 127 |
| *Turner v. Murphy Oil USA, Inc.* | E.D. La., 2:05-CV-04206-EEF-JCW |
| *Carter v. North Central Life Ins. Co.* | Ga. Super. Ct., SU-2006-CV-3764-6 |
| *Harper v. Equifax* | E.D. Pa., 2:04-CV-03584-TON |
| *Beasley v. Hartford Insurance Co. of the Midwest* | Ark. Cir. Ct., CV-2005-58-1 |
| *Springer v. Biomedical Tissue Services, LTD (Human Tissue Litigation)* | Ind. Cir. Ct., 1:06-CV-00332-SEB-VSS |
| *Spence v. Microsoft Corp. (Antitrust Litigation)* | Wis. Cir. Ct., 00-CV-003042 |
| *Pennington v. The Coca Cola Co. (Diet Coke)* | Mo. Cir. Ct., 04-CV-208580 |

HILSOFT NOTIFICATIONS

PORTLAND AREA OFFICE    10300 SW ALLEN BLVD    BEAVERTON, OR 97005    T 503-597-7697
PHILADELPHIA AREA OFFICE    1420 LOCUST ST 30F    PHILADELPHIA, PA 1910    T 215-721-2120

24

| | |
|---|---|
| *Sunderman v. Regeneration Technologies, Inc. (Human Tissue Litigation)* | S.D. Ohio, 1:06-CV-075-MHW |
| *Splater v. Thermal Ease Hydronic Systems, Inc.* | Wash. Super. Ct., 03-2-33553-3-SEA |
| *Peyroux v. The United States of America (New Orleans Levee Breech)* | E.D. La., 06-2317 |
| *Chambers v. DaimlerChrysler Corp. (Neon Head Gaskets)* | N.C. Super. Ct., 01:CVS-1555 |
| *Ciabattari v. Toyota Motor Sales, U.S.A., Inc. (Sienna Run Flat Tires)* | N.D. Cal., C-05-04289-BZ |
| *In re Bridgestone Securities Litigation* | M.D. Tenn., 3:01-CV-0017 |
| *In re Mutual Funds Investment Litigation (Market Timing)* | D. Md., MDL No. 1586 |
| *Accounting Outsourcing v. Verizon Wireless* | M.D. La., 03-CV-161 |
| *Hensley v. Computer Sciences Corp.* | Ark. Cir. Ct., CV-2005-59-3 |
| *Peek v. Microsoft Corporation* | Ark. Cir. Ct., CV-2006-2612 |
| *Reynolds v. The Hartford Financial Services Group, Inc.* | D. Or., CV-01-1529 BR |
| *Schwab v. Philip Morris USA, Inc.* | E.D.N.Y., CV-04-1945 |
| *Zarebski v. Hartford Insurance Co. of the Midwest* | Ark. Cir. Ct., CV-2006-409-3 |
| *In re Parmalat Securities Litigation* | S.D.N.Y., MDL No. 1653 (LAK) |
| *Beasley v. The Reliable Life Insurance Co.* | Ark. Cir. Ct., CV-2005-58-1 |
| *Sweeten v. American Empire Insurance Company* | Ark. Cir. Ct., 2007-154-3 |
| *Govt. Employees Hospital Assoc. v. Serono Int., S.A.* | D. Mass., 06-CA-10613-PBS |
| *Gunderson v. Focus Healthcare Management, Inc.* | 14th Jud. D. Ct. La., 2004-2417-D |
| *Gunderson v. F.A. Richard & Associates, Inc., et al.* | 14th Jud. D. Ct. La., 2004-2417-D |
| *Perez v. Manor Care of Carrollwood* | 13th Jud. Cir. Fla., 06-00574-E |
| *Pope v. Manor Care of Carrollwood* | 13th Jud. Cir. Fla., 06-01451-B |
| *West v. Carfax, Inc.* | Ohio C.P., 04-CV-1898 (ADL) |
| *Hunsucker v. American Standard Ins. Co. of Wisconsin* | Ark. Cir. Ct., CV-2007-155-3 |
| *In re Conagra Peanut Butter Products Liability Litigation* | N.D. Ga., MDL No. 1845 (TWT) |
| *The People of the State of CA v. Universal Life Resources (Cal DOI v. CIGNA)* | Cal. Super. Ct., GIC838913 |
| *Burgess v. Farmers Insurance Co., Inc.* | D. Okla., CJ-2001-292 |
| *Grays Harbor v. Carrier Corporation* | W.D. Wash., 05-05437-RBL |

| | |
|---|---|
| *Perrine v. E.I. Du Pont De Nemours & Co.* | W. Va. Cir. Ct., 04-C-296-2 |
| *In re Alstom SA Securities Litigation* | S.D.N.Y., 03-CV-6595 VM |
| *Brookshire Bros. v. Chiquita (Antitrust)* | S.D. Fla., 05-CIV-21962 |
| *Hoorman v. SmithKline Beecham* | Ill. Cir. Ct., 04-L-715 |
| *Santos v. Government of Guam (Earned Income Tax Credit)* | D. Guam, 04-00049 |
| *Johnson v. Progressive* | Ark. Cir. Ct., CV-2003-513 |
| *Bond v. American Family Insurance Co.* | D. Ariz., CV06-01249-PXH-DGC |
| *In re SCOR Holding (Switzerland) AG Litigation (Securities)* | S.D.N.Y., 04-cv-7897 |
| *Shoukry v. Fisher-Price, Inc. (Toy Safety)* | S.D.N.Y., 07-cv-7182 |
| *In re: Guidant Corp. Plantable Defibrillators Prod's Liab. Litigation* | D. Minn., MDL No. 1708 |
| *Clark v. Pfizer, Inc (Neurontin)* | C.P. Pa., 9709-3162 |
| *Angel v. U.S. Tire Recovery (Tire Fire)* | W. Va. Cir. Ct., 06-C-855 |
| *In re TJX Companies Retail Security Breach Litigation* | D. Mass., MDL No. 1838 |
| *Webb v. Liberty Mutual Insurance Co.* | Ark. Cir. Ct., CV-2007-418-3 |
| *Shaffer v. Continental Casualty Co. (Long Term Care Ins.)* | C.D. Cal., SACV06-2235-PSG |
| *Palace v. DaimlerChrysler (Defective Neon Head Gaskets)* | Ill. Cir. Ct., 01-CH-13168 |
| *Lockwood v. Certegy Check Services, Inc. (Stolen Financial Data)* | M.D. Fla., 8:07-cv-1434-T-23TGW |
| *Sherrill v. Progressive Northwestern Ins. Co.* | 18th D. Ct. Mont., DV-03-220 |
| *Gunderson v. F.A. Richard & Assocs., Inc. (AIG)* | 14th Jud. D. Ct. La., 2004-2417-D |
| *Jones v. Dominion Resources Services, Inc.* | S.D. W. Va., 2:06-cv-00671 |
| *Gunderson v. F.A. Richard & Assocs., Inc. (Wal-Mart)* | 14th Jud. D. Ct. La., 2004-2417-D |
| *In re Trans Union Corp. Privacy Litigation* | N.D. Ill., MDL No. 350 |
| *Gudo v. The Administrator of the Tulane Ed. Fund* | La. D. Ct., 2007-C-1959 |
| *Guidry v. American Public Life Insurance Co.* | 14th Jud. D. Ct. La., 2008-3465 |
| *McGee v. Continental Tire North America* | D.N.J., 2:06-CV-06234 (GEB) |
| *Sims v. Rosedale Cemetery Co.* | W. Va. Cir. Ct., 03-C-506 |
| *Gunderson v. F.A. Richard & Assocs., Inc. (Amerisafe)* | 14th Jud. D. Ct. La., 2004-002417 |



| PORTLAND AREA OFFICE | 10300 SW ALLEN BLVD | BEAVERTON, OR 97005 | T 503-597-7697 |
| PHILADELPHIA AREA OFFICE | 1420 LOCUST ST 30 F | PHILADELPHIA, PA 1910 | T 215-721-2120 |

| *In re Katrina Canal Breaches Consolidated Litigation* | E.D. La., 05-4182 |
| *In re Department of Veterans Affairs (VA) Data Theft Litigation* | D.D.C., MDL No. 1796 |
| *Dolen v. ABN AMRO Bank N.V. (Callable CD's)* | Ill. Cir. Ct., 01-L-454 and 01-L-493 |
| *Pavlov v. CNA (Long Term Care Insurance)* | N.D. Ohio, 5:07cv2580 |
| *Steele v. Pergo( Flooring Products)* | D. Or., 07-CV-01493-BR |
| *Opelousas Trust Authority v. Summit Consulting* | 27th Jud. D. Ct. La., 07-C-3737-B |
| *Little v. Kia Motors America, Inc. (Braking Systems)* | N.J. Super. Ct., UNN-L-0800-01 |
| *Boone v. City of Philadelphia (Prisoner Strip Search)* | E.D. Pa., 05-CV-1851 |
| *In re Countrywide Customer Data Breach Litigation* | W.D. Ky., MDL No.1998 |
| *Miller v. Basic Research (Weight-loss Supplement)* | D. Utah, 2:07-cv-00871-TS |
| *Gunderson v. F.A. Richard & Assocs., Inc. (Cambridge)* | 14th Jud. D. Ct. La., 2004-002417 |
| *Weiner v. Snapple Beverage Corporation* | S.D.N.Y., 07-CV-08742 |
| *Holk v. Snapple Beverage Corporation* | D.N.J., 3:07-CV-03018-MJC-JJH |
| *Coyle v. Hornell Brewing Co. (Arizona Iced Tea)* | D.N.J., 08-CV-2797-JBS-JS |
| *In re Heartland Data Security Breach Litigation* | S.D. Tex., MDL No. 2046 |
| *Satterfield v. Simon & Schuster, Inc. (Text Messaging)* | N.D. Cal., 06-CV-2893 CW |
| *Schulte v. Fifth Third Bank (Overdraft Fees)* | N.D. Ill., 1:09-CV-06655 |
| *Trombley v. National City Bank (Overdraft Fees)* | D.D.C., 1:10-CV-00232 |
| *Vereen v. Lowe's Home Centers (Defective Drywall)* | Ga. Super. Ct., SU10-CV-2267B |
| *Mathena v. Webster Bank, N.A. (Overdraft Fees)* | D. Conn, 3:10-cv-01448 |
| *Delandro v. County of Allegheny (Prisoner Strip Search)* | W.D. Pa., 2:06-cv-00927 |
| *Gunderson v. F.A. Richard & Assocs., Inc. (First Health)* | 14th Jud. D. Ct. La., 2004-002417 |
| *Williams v. Hammerman & Gainer, Inc. (Hammerman)* | 27th Jud. D. Ct. La., 11-C-3187-B |
| *Williams v. Hammerman & Gainer, Inc. (Risk Management)* | 27th Jud. D. Ct. La., 11-C-3187-B |
| *Williams v. Hammerman & Gainer, Inc. (SIF Consultants)* | 27th Jud. D. Ct. La., 11-C-3187-B |
| *Gwiazdowski v. County of Chester (Prisoner Strip Search)* | E.D. Pa., 2:08cv4463 |
| *Williams v. S.I.F. Consultants (CorVel Corporation)* | 27th Jud. D. Ct. La., 09-C-5244-C |
| *Sachar v. Iberiabank Corporation (Overdraft Fees)* | S.D. Fla., MDL No. 2036 |

HILSOFT NOTIFICATIONS    PORTLAND AREA OFFICE    10300 SW ALLEN BLVD    BEAVERTON, OR 97005    T 503-597-7697
PHILADELPHIA AREA OFFICE    1420 LOCUST ST 30F    PHILADELPHIA, PA 1910    T 215-721-2120

27

| | |
|---|---|
| *LaCour v. Whitney Bank (Overdraft Fees)* | M.D. Fla., 8:11cv1896 |
| *Lawson v. BancorpSouth (Overdraft Fees)* | W.D. Ark., 1:12cv1016 |
| *McKinley v. Great Western Bank (Overdraft Fees)* | S.D. Fla., MDL No. 2036 |
| *Wolfgeher v. Commerce Bank (Overdraft Fees)* | S.D. Fla., MDL No. 2036 |
| *Harris v. Associated Bank (Overdraft Fees)* | S.D. Fla., MDL No. 2036 |
| *Case v. Bank of Oklahoma (Overdraft Fees)* | S.D. Fla., MDL No. 2036 |
| *Nelson v. Rabobank, N.A. (Overdraft Fees)* | Cal. Super. Ct., RIC 1101391 |
| *Fontaine v. Attorney General of Canada (Stirland Lake and Cristal Lake Residential Schools)* | Ont. Super. Ct., 00-CV-192059 CP |
| *Opelousas General Hospital Authority v. FairPay Solutions* | 27th Jud. D. Ct. La., 12-C-1599-C |
| *Marolda v. Symantec Corporation (Software Upgrades)* | N.D. Cal., 3:08-cv-05701 |
| *In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010—Economic and Property Damages Settlement* | E.D. La., MDL No. 2179 |
| *In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010—Medical Benefits Settlement* | E.D. La., MDL No. 2179 |
| *Vodanovich v. Boh Brothers Construction (Hurricane Katrina Levee Breaches)* | E.D. La., 05-cv-4191 |
| *Gessele et al. v. Jack in the Box, Inc.* | D. Or., No. 3:10-cv-960 |
| *Duval v. Citizens Financial Group, Inc. (Overdraft Fees)* | S.D. Fla., MDL No. 2036 |
| *Mosser v. TD Bank, N.A. (Overdraft Fees)* | S.D. Fla., MDL No. 2036 |
| *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation (Mastercard & Visa)* | E.D.N.Y., MDL No. 1720 |
| *Saltzman v. Pella Corporation (Building Products)* | N.D. Ill., 06-cv-4481 |
| *In re Zurn Pex Plumbing, Products Liability Litigation* | D. Minn., MDL No. 1958 |
| *Blahut v. Harris, N.A. (Overdraft Fees)* | S.D. Fla., MDL No. 2036 |
| *Eno v. M & I Marshall & Ilsley Bank (Overdraft Fees)* | S.D. Fla., MDL No. 2036 |
| *Casayuran v. PNC Bank (Overdraft Fees)* | S.D. Fla., MDL No. 2036 |
| *Anderson v. Compass Bank (Overdraft Fees)* | S.D. Fla., MDL No. 2036 |
| *Evans, et al. v. TIN, Inc. (Environmental)* | E.D. La., 2:11-cv-02067 |
| *Opelousas General Hospital Authority v. Qmedtrix Systems, Inc.* | 27th Jud. D. Ct. La., 12-C-1599-C |
| *Williams v. SIF Consultants of Louisiana, Inc. et al.* | 27th Jud. D. Ct. La., 09-C-5244-C |

HILSOFT NOTIFICATIONS   PORTLAND AREA OFFICE   10300 SW ALLEN BLVD   BEAVERTON, OR 97005   T 503-597-7697
PHILADELPHIA AREA OFFICE   1420 LOCUST ST 30 F   PHILADELPHIA, PA 1910   T 215-721-2120

28

| | |
|---|---|
| *Miner v. Philip Morris Companies, Inc. et al.* | Ark. Cir. Ct., 60CV03-4661 |
| *Fontaine v. Attorney General of Canada (Mistassini Hostels Residential Schools)* | Qué. Super. Ct., 500-06-000293-056 & No. 550-06-000021-056 (Hull) |
| *Glube et al. v. Pella Corporation et al. (Building Products)* | Ont. Super. Ct., CV-11-4322294-00CP |
| *Yarger v. ING Bank* | D. Del., 11-154-LPS |
| *Price v. BP Products North America* | N.D. Ill, 12-cv-06799 |
| *National Trucking Financial Reclamation Services, LLC et al. v. Pilot Corporation et al.* | E.D. Ark., 4:13-cv-00250-JMM |
| *Johnson v. Community Bank, N.A. et al. (Overdraft Fees)* | M.D. Pa., 3:12-cv-01405-RDM |
| *Rose v. Bank of America Corporation, et al. (TCPA)* | N.D. Cal., 11-cv-02390-EJD |
| *McGann, et al., v. Schnuck Markets, Inc. (Data Breach)* | Mo. Cir. Ct., 1322-CC00800 |
| *Simmons v. Comerica Bank, N.A. (Overdraft Fees)* | S.D. Fla., MDL No. 2036 |
| *George Raymond Williams, M.D., Orthopedic Surgery, a Professional Medical, LLC, et al. v. Bestcomp, Inc., et al.* | 27th Jud. D. Ct. La., 09-C-5242-B |
| *Simpson v. Citizens Bank (Overdraft Fees)* | E.D. Mich, 2:12-cv-10267 |
| *In re Plasma-Derivative Protein Therapies Antitrust Litigation* | N.D. Ill, 09-CV-7666 |
| *In re Dow Corning Corporation (Breast Implants)* | E.D. Mich., 00-X-0005 |
| *Mello et al v. Susquehanna Bank (Overdraft Fees)* | S.D. Fla., MDL No. 2036 |
| *Wong  et al. v. Alacer Corp. (Emergen-C)* | Cal. Super. Ct., CGC-12-519221 |
| *In re American Express Anti-Steering Rules Antitrust Litigation (II) (Italian Colors Restaurant)* | E.D.N.Y., 11-MD-2221 |
| *Costello v. NBT Bank (Overdraft Fees)* | Sup. Ct. Del Cnty., N.Y., 2011-1037 |
| *Gulbankian et al. v. MW Manufacturers, Inc.* | D. Mass., No. 10-CV-10392 |
| *Hawthorne v. Umpqua Bank (Overdraft Fees)* | N.D. Cal., 11-cv-06700-JST |
| *Smith v. City of New Orleans* | Civil D. Ct., Parish of Orleans, La., 2005-05453 |
| *Adkins et al. v. Nestlé Purina PetCare Company et al.* | N.D. Ill., 1:12-cv-02871 |
| *Given v. Manufacturers and Traders Trust Company a/k/a M&T Bank (Overdraft Fees)* | S.D. Fla., MDL No. 2036 |
| *In re MI Windows and Doors Products Liability Litigation (Building Products)* | D. S.C., MDL No. 2333 |
| *Childs et al. v. Synovus Bank, et al. (Overdraft Fees)* | S.D. Fla., MDL No. 2036 |
| *Steen v. Capital One, N.A. (Overdraft Fees)* | S.D. Fla., MDL No. 2036 |



| | | | | |
|---|---|---|---|---|
| HILSOFT NOTIFICATIONS | PORTLAND AREA OFFICE PHILADELPHIA AREA OFFICE | 10300 SW ALLEN BLVD 1420 LOCUST ST 30F | BEAVERTON, OR 97005 PHILADELPHIA, PA 1910 | T 503-597-7697 T 215-721-2120 |

29

| | |
|---|---|
| *Kota of Sarasota, Inc. v. Waste Management Inc. of Florida* | 12th Jud. Cir. Ct., Sarasota Cnty, Fla., 2011-CA-008020NC |
| *In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010—Economic and Property Damages Settlement  (Claim Deadline Notice)* | E.D. La., MDL No. 2179 |

Hilsoft-cv-133



PORTLAND AREA OFFICE    10300 SW ALLEN BLVD    BEAVERTON, OR 97005    T 503-597-7697
PHILADELPHIA AREA OFFICE    1420 LOCUST ST 30 F    PHILADELPHIA, PA 1910    T 215-721-2120

30

Attachment 2

**In re: Energy Future Holdings Corp., et. al.**

**Asbestos Claims Bar Date Notice**

Local Newspaper List

**July 13, 2015**



| State | City | Publication | Circulation |
|---|---|---|---|
| AK | Anchorage | *Alaska Dispatch News* | 38,965 |
| AK | Kodiak | *Kodiak Daily Mirror* | 2,000 |
| AR | Forrest City | *Forrest City Times-Herald* | 4,500 |
| AR | Helena | *Helena Daily World* | 13,800 |
| AR | Hot Springs | *Hot Springs Sentinel-Record* | 13,323 |
| AR | Magnolia | *Magnolia Banner-News* | 4,282 |
| AR | Malvern | *Malvern Daily Record* | 3,500 |
| AR | Newport | *Newport Independent* | 2,500 |
| AR | North Little Rock | *Jacksonville Patriot/North Little Rock Times/Sherwood Voice Combo* | 5,000 |
| AZ | Flagstaff | *Arizona Daily Sun* | 8,716 |
| AZ | Phoenix | *Arizona Republic* | 273,595 |
| AZ | Tempe | *Wrangler News* | 20,000 |
| AZ | Tucson | *Arizona Daily Star* | 92,161 |
| CA | Auburn | *Roseville Press-Tribune* | 26,000 |
| CA | Modesto | *Modesto Bee* | 49,228 |
| CA | Ontario | *Ontario Inland Valley Daily Bulletin* | 52,671 |
| CA | Placerville | *Placerville Mountain Democrat* | 9,066 |
| CA | Rocklin | *Placer Herald* | 12,476 |
| CA | San Jose | *San Francisco Bay Area Newspaper Group* | 485,051 |
| CA | San Francisco | *San Francisco Chronicle* | 170,854 |
| CA | San Jose | *San Jose Mercury News/Contra Costa Times Nppr Combo* | 311,181 |
| CO | Brush | *Brush News-Tribune* | 2,000 |
| CO | Greeley | *Greeley Tribune* | 28,520 |
| CT | Hartford | *Hartford Courant* | 132,740 |
| CT | New London | *New London Day* | 22,574 |
| FL | Arcadia | *Arcadian* | 2,296 |
| FL | Deland | *West Volusia Beacon* | 5,600 |
| FL | Fort Lauderdale | *South Florida Sun-Sentinel* | 126,467 |
| FL | Fort Myers | *Fort Myers News-Press* | 44,295 |
| FL | Fort Pierce | *Hometown News Combo* | 197,575 |
| FL | Hallandale | *South Florida Sun Times* | 60,000 |
| FL | Lake City | *Lake City News Advertiser* | 31,760 |
| FL | Madison | *Madison Enterprise Recorder* | 3,500 |
| FL | Miami | *Miami Herald* | 116,662 |
| FL | Naples | *Collier Citizen* | 52,118 |
| FL | Orlando | *Orlando Sentinel* | 255,844 |
| FL | Palatka | *Palatka Daily News* | 8,500 |
| FL | Port Charlotte | *Charlotte Sun* | 43,050 |
| FL | West Palm Beach | *Palm Beach Post* | 93,749 |
| HI | Honolulu | *Honolulu Star-Advertiser* | 133,427 |
| IA | Sioux City | *Sioux City Journal* | 25,999 |
| IA | West Union | *Fayette County Union* | 6,500 |
| ID | American Falls | *Power County Press* | 1,800 |
| ID | Arco | *Arco Advertiser* | 1,700 |
| ID | Boise | *Idaho Statesman* | 46,157 |
| ID | Idaho Falls | *Idaho Falls Post Register* | 22,379 |
| ID | Island Park | *Island Park News* | 5,000 |
| ID | Lewiston | *Lewiston Morning Tribune* | 21,500 |
| ID | Mountain Home | *Mountain Home News* | 4,000 |
| ID | Preston | *Preston Citizen* | 2,500 |
| ID | Sandpoint | *Bonner County Daily Bee* | 6,240 |
| ID | Soda Springs | *Caribou County Sun* | 3,000 |
| ID | Twin Falls | *Twin Falls Times-News* | 16,702 |
| IL | Highland | *Highland News Leader* | 4,000 |
| IL | Metropolis | *Metropolis Planet* | 4,100 |
| IN | Boonville | *The Standard-Warrick Publishing* | 16,000 |
| IN | Indianapolis | *Indianapolis Star* | 176,136 |
| KS | Newton | *Newton Kansan* | 4,600 |
| KS | Osawatomie | *Osawatomie Graphic* | 2,825 |
| KS | Parsons | *Parsons Sun* | 5,600 |
| KS | Washington | *Washington County News - KS* | 2,250 |
| KY | Vanceburg | *Lewis County Herald - KY* | 4,000 |
| KY | Paducah | *West Kentucky News* | 25,000 |
| LA | Boutte | *St. Charles Herald-Guide* | 5,000 |
| LA | Metairie | *St. Bernard News* | 18,600 |
| LA | Monroe | *Monroe News-Star* | 19,685 |
| LA | Shreveport | *Shreveport Times* | 31,114 |
| LA | West Monroe | *Ouachita Citizen* | 5,200 |
| MD | Annapolis | *Annapolis Capital* | 29,254 |
| MI | Lansing | *Lansing State Journal* | 34,518 |

| MI | Ludington | Ludington Daily News | 6,489 |
|---|---|---|---|
| MN | Brainerd | Brainerd Daily Dispatch | 9,613 |
| MN | Duluth | Duluth News-Tribune | 26,878 |
| MN | Grand Rapids | Grand Rapids Herald Review | 7,400 |
| MN | New Ulm | New Ulm Journal | 6,321 |
| MN | Virginia | Mesabi Daily News | 8,991 |
| MO | Cape Girardeau | Cape Girardeau Southeast Missourian | 10,882 |
| MO | Clinton | Clinton Daily Democrat | 3,850 |
| MO | Liberty | Liberty Tribune/Gladstone Dispatch Combo | 24,000 |
| MO | Springfield | Springfield News-Leader | 27,409 |
| MO | St. Louis | Town And Country Suburban Journals | 38,386 |
| MS | Cleveland | Cleveland Bolivar Commercial | 5,200 |
| MS | Jackson | Jackson Clarion Ledger/Hattiesburg American Combo | 63,867 |
| MS | Natchez | Natchez Democrat | 8,500 |
| MT | Great Falls | Great Falls Tribune | 20,717 |
| MT | Polson | Lake County Leader | 5,904 |
| MT | Sidney | Sidney Herald | 2,811 |
| MT | Thompson Falls | Sanders County Ledger | 3,500 |
| NC | Asheville | Asheville Citizen-Times | 26,604 |
| NC | Chapel Hill | Durham News | 66,639 |
| NC | Lumberton | Lumberton Robesonian | 13,986 |
| NC | Raleigh | Raleigh News & Observer | 110,062 |
| NC | Roanoke Rapids | Roanoke Rapids Daily Herald | 7,176 |
| NC | Roxboro | Roxboro Courier Times | 7,923 |
| NC | Siler City | Chatham News | 5,536 |
| NC | Wadesboro | Wadesboro Express Newspaper | 10,500 |
| NC | Waynesville | Smoky Mountain News | 16,000 |
| ND | Mandan | Morton County & Mandan News | 1,500 |
| ND | Williston | Plains Reporter | 15,200 |
| NE | Omaha | Omaha World-Herald | 116,798 |
| NH | Littleton | Littleton Courier | 5,088 |
| NJ | Bridgewater | Bridgewater Courier News/Morristown Daily Record Combo | 29,290 |
| NJ | Hackettstown | Warren Reporter | 34,179 |
| NM | Albuquerque | Albuquerque Journal | 97,507 |
| NM | Farmington | Farmington Daily Times | 11,848 |
| NM | Hobbs | Hobbs News-Sun | 7,630 |
| NV | Reno | Reno Gazette-Journal | 39,495 |
| NY | Batavia | Batavia Daily News | 9,544 |
| NY | Dunkirk | Dunkirk Observer | 6,976 |
| NY | East Setauket | East Setauket Times Beacon Record Newspapers Combo | 44,949 |
| NY | Far Rockaway | Far Rockaway Wave | 11,580 |
| NY | Melville | Newsday | 271,327 |
| NY | Niagara Falls | Niagara Gazette | 10,103 |
| NY | Syosset | North Shore Today | 150,201 |
| NY | West Harrison | Rockland Express | 46,117 |
| NY | West Nyack | Rockland Review | 16,000 |
| OH | Athens | Athens Messenger | 8,200 |
| OH | Cincinnati | Cincinnati Enquirer | 116,156 |
| OH | Coshocton | Coshocton Tribune | 3,120 |
| OH | Georgetown | Georgetown News Democrat | 3,400 |
| OH | Lewis Center | Grove City Record | 15,004 |
| OH | Lewis Center | This Week Community Newspapers | 323,534 |
| OH | Manchester | Manchester Signal | 6,125 |
| OH | Miamisburg | Miamisburg/West Carrollton News | 2,385 |
| OK | Broken Bow | Broken Bow News | 1,200 |
| OR | Astoria | Astoria Daily Astorian | 5,924 |
| OR | Clatskanie | Clatskanie Chief | 2,400 |
| OR | Enterprise | Wallowa County Chieftain | 2,500 |
| OR | Estacada | Estacada News | 2,250 |
| OR | Hood River | Hood River News | 5,439 |
| OR | Madras | Madras Pioneer | 3,700 |
| OR | Salem | Salem Statesman Journal | 32,885 |
| OR | Scappoose | Scappoose Spotlight | 4,500 |
| OR | The Dalles | Dalles Chronicle | 5,000 |
| PA | Danville | Danville News | 1,651 |
| PA | Easton | Easton Express-Times | 31,967 |
| PA | Greensburg | PNG Group - Daily | 172,212 |
| PA | Harrisburg | Harrisburg Patriot-News | 54,225 |
| PA | Hawley | Hawley News Eagle | 3,000 |
| PA | Indiana | Indiana Gazette | 13,882 |
| PA | Kittanning | Kittanning Leader Times | 6,857 |
| PA | Lancaster | Intelligencer Journal/Lancaster New Era | 63,317 |
| PA | Latrobe | Latrobe Bulletin | 8,100 |
| PA | Lehighton | Lehighton Times News | 11,951 |
| PA | Middleburg | Middleburg Union County Times | 9,890 |
| PA | Middleburg | Snyder County Times | 16,222 |
| PA | Pottsville | Pottsville Republican & Herald | 19,701 |
| PA | Wilkes Barre | Wilkes Barre Times-Shamrock Combo | 111,396 |
| SC | Camden | Camden Chronicle-Independent | 6,500 |

| | | | |
|---|---|---|---:|
| SC | Darlington | Darlington News & Press | 6,200 |
| SC | Greenville | Greenville Community Journals Combo | 55,460 |
| SC | Hartsville | Hartsville News Journal | 13,971 |
| TN | Jackson | Jackson Sun | 12,835 |
| TN | Springfield | Robertson County Times | 6,844 |
| TX | Eastland | Eastland County Today | 6,000 |
| TX | Sweetwater | Sweetwater Reporter | 2,100 |
| TX | Seminole | Seminole Sentinel | 2,100 |
| TX | Snyder | Snyder Daily News | 5,000 |
| TX | Andrews | Andrews County News | 3,270 |
| TX | Big Spring | Big Spring Herald | 4,300 |
| TX | Eagle Pass | News Gram | 10,030 |
| TX | Longview | Longview News-Journal | 18,107 |
| TX | Lufkin | Lufkin Daily News | 9,729 |
| TX | Arlington | Arlington Citizen-Journal | 88,024 |
| TX | Athens | Athens Daily Review | 5,700 |
| TX | Bay City | Bay City Tribune | 3,434 |
| TX | Baytown | Baytown Sun | 7,840 |
| TX | Buffalo | Buffalo Express | 2,200 |
| TX | Carthage | Panola Watchman | 3,800 |
| TX | Clarksville | Clarksville Times | 3,200 |
| TX | Clute | Clute Facts | 15,558 |
| TX | Colorado City | Colorado City Record | 3,700 |
| TX | Dallas | Dallas Morning News/Briefing Combo | 259,847 |
| TX | Dallas | El Heraldo News | 37,500 |
| TX | Decatur | Wise County Messenger | 5,273 |
| TX | Elgin | Elgin Courier | 2,300 |
| TX | Fairfield | Fairfield Recorder | 3,091 |
| TX | Fairfield | Freestone County Times | 3,400 |
| TX | Killeen | Fort Hood Herald | 31,000 |
| TX | Franklin | Franklin News Weekly | 1,000 |
| TX | Galveston | Galveston County Daily News | 25,894 |
| TX | Glen Rose | Glen Rose Reporter | 1,780 |
| TX | Graham | Graham Leader | 3,600 |
| TX | Granbury | Hood County News | 8,098 |
| TX | Groesbeck | Groesbeck Journal | 2,500 |
| TX | Henderson | Henderson Daily News | 6,039 |
| TX | Houston | Houston Chronicle | 320,606 |
| TX | Junction | Junction Eagle | 2,000 |
| TX | Lexington | Lexington Leader | 2,000 |
| TX | Longview | Longview News-Journal | 18,107 |
| TX | Mabank | Malakoff News | 2,000 |
| TX | Mesquite | Mesquite News | 23,585 |
| TX | Mexia | Mexia News | 6,300 |
| TX | Monahans | Monahans News | 2,100 |
| TX | Mount Pleasant | Mt. Pleasant Daily Tribune | 6,500 |
| TX | Mount Vernon | Mount Vernon Optic-Herald | 2,400 |
| TX | Paris | Paris News | 7,594 |
| TX | Plano | Star Community Newspapers Combo | 89,448 |
| TX | Port Lavaca | Port Lavaca Wave | 4,400 |
| TX | Rockdale | Rockdale Reporter | 4,800 |
| TX | Rosenberg | Fort Bend Herald | 7,517 |
| TX | Rusk | Cherokeean Herald | 4,500 |
| TX | San Angelo | San Angelo Standard-Times | 15,717 |
| TX | San Antonio | San Antonio Express-News | 110,693 |
| TX | Sherman | Sherman Herald Democrat | 14,801 |
| TX | Sugar Land | Fort Bend Sun/Sugar Land Sun Combo | 46,072 |
| TX | Sulphur Springs | Sulphur Springs News-Telegram | 5,751 |
| TX | Teague | Teague Chronicle | 2,500 |
| TX | Texas City | Texas City Post | 42,543 |
| TX | Waco | Waco Tribune-Herald | 28,135 |
| TX | Wharton | Wharton Journal-Spectator | 4,500 |
| TX | Wichita Falls | Wichita Falls Times Record News | 18,956 |
| UT | Provo | Provo Daily Herald | 24,980 |
| UT | Salt Lake City | Salt Lake Tribune/Deseret News Combo | 177,644 |
| VA | Lynchburg | Lynchburg News & Advance | 22,260 |
| VA | Roanoke | Roanoke Times | 59,990 |
| VT | Brattleboro | Brattleboro Reformer | 6,662 |
| VT | Rutland | Rutland Herald/Times Argus Combo | 33,572 |
| WA | Battle Ground | Battle Ground Reflector | 26,600 |
| WA | Kennewick | Kennewick Tri-City Herald | 24,907 |
| WA | Newport | Newport Miner/Gem State Miner Combo | 6,000 |
| WA | Spokane | Spokane Spokesman-Review | 67,000 |
| WA | Yakima | Yakima Herald-Republic | 23,665 |
| WI | Superior | Superior Telegram | 5,500 |
| WV | Wayne | West Virginia Wayne County News | 150,577 |
| WY | Douglas | Glenrock Independent | 1,150 |
| | | **TOTAL** | **8,160,730** |

Attachment 3

Month DD, 20YY


F-Name MI L-Name
Street Address 1
Street Address 2
City, ST ZIP


RE:          CLAIMS DUE TO POTENTIAL ASBESTOS EXPOSURE AT YOUR WORKPLACE

Records show that you work or worked at a power plant where asbestos may have been present.  Energy Future Holdings Corp., Ebasco Services, Inc., EECI, Inc. and certain subsidiaries ("EFH") owned, operated, or maintained power plants across the United States.  A list of included plants is attached to this letter.  Every worker at these facilities and their family members may have been exposed to asbestos and must file a claim now in the EFH bankruptcy to keep rights to compensation now or in the future.

**Please Share This Notice With Your Family Members**

You may not have an asbestos-related disease right now, but you could have been exposed to asbestos.  Or, you may have unexplained illness and not know the cause.  (Some cancers and respiratory diseases have been linked to exposure to asbestos.)  Illness may occur decades after exposure to asbestos.  Your family members may have been exposed to asbestos by coming in contact with you and your clothing.

If you do not file a claim now and later develop an asbestos-related disease such as mesothelioma, lung cancer, or asbestosis at some time in the future you will not be eligible for any compensation.  If you do file a claim, then you may receive money if you get sick in the future.

You and any potentially exposed family members can file a claim yourself or you can ask a lawyer to help you.  **Your claim must be RECEIVED by Month 00, 2015.**

You have certain legal rights you need to act on by **Month 00, 2015**.  Please read the enclosed papers for more information about EFH and your rights.  You may also visit the website at www.EFHAsbestosClaims.com or call 1-877-276-7311 for further information.

Sincerely,

EFH Bankruptcy Administrator


**Questions?  Visit www.EFHAsbestosClaims.com or call 1-877-276-7311**

SI DESEA RECIBIR ESTA NOTIFICACIÓN EN ESPAÑOL, LLÁMENOS O VISITE NUESTRA PÁGINA WEB.

Month DD, 201Y

[MANIFESTED]
F-Name MI L-Name
c/o Counsel Name
Firm Name
Street Address 1
Street Address 2
City, ST ZIP


RE:  Asbestos Claims Bar Date set in EFH Bankruptcy

Records show that you previously filed a lawsuit related to asbestos exposure that could be affected by the bar date that has been established for Asbestos Claims in the EFH bankruptcy.

A list of facilities related to Energy Future Holdings Corp., Ebasco Services, Inc., EECI, Inc. and certain subsidiaries ("EFH") is attached to this letter.  Workers at these facilities and their family members may have been exposed to asbestos and must file a claim in the EFH bankruptcy to keep rights to compensation now or in the future.

Anyone with a manifested Asbestos Claim (present asbestos injury) related to EFH is generally required to submit an Official Form 10.  To be considered, your claim must be received by **Month DD, 201Y**.

Please read the enclosed papers for more information.  If you have questions, visit www.EFHAsbestosClaims.com, send an email to info@EFHAsbestosClaims.com or call 1-877-276-7311.  Please share this information with family members who may also have been exposed.

United States Bankruptcy Court for the District of Delaware

# Power Plant Employees and Contractors

## If you or a family member ever worked at a power plant, you could have been exposed to asbestos.

## To keep your right to compensation if you become ill in the future (or have asbestos-related illness today), you must submit a claim by Month DD, 201Y

A bankruptcy has been filed by Energy Future Holding Corp., Ebasco Services, Inc. EECI, Inc. and certain subsidiaries ("EFH"). EFH owned, operated, maintained, or built power plants across the United States and in other countries where asbestos may have been present. Workers at these power plants (and family members and others who came into contact with these workers) may have been exposed to asbestos.

Under the supervision of the Court, EFH is seeking a "clean start" by restructuring its debts. As part of this process, the Court has decided that anyone who has a claim today against EFH for asbestos-related illness or who may develop asbestos-related illness in the future, must submit a claim by **Month DD, 201Y** to be eligible for compensation now or in the future (the "Asbestos Bar Date")

### Which power plants are included?

Power plants related to EFH in which asbestos exposure may have occurred were located across the United States and in foreign countries. The list of included power plants is provided at the end of this notice.

### How could this affect me?

You could have been exposed to asbestos if you or a family member worked at any of the included power plants as an employee, a contractor or in any other role. You also could have been exposed by coming in contact with another person who worked at a power plant (for example, if asbestos was brought home on your spouse or parent's clothing). You may also file a claim on behalf of a deceased family member.

### What are my options?

If you believe that you or a family member may have been exposed to asbestos at an included plant, submit a claim by **Month DD, 201Y**. Even if you have not been diagnosed with disease or experienced symptoms, you must make a claim to preserve your right to compensation if you develop asbestos-related illness in the future. You can submit a claim yourself or you can ask a lawyer to help you.

If you do not submit a claim by **Month DD, 201Y** and later develop asbestos-related disease, you will not be eligible for compensation.

## Questions? Call 1-877-276-7311 or visit www.EFHAsbestosClaims.com

Si desea recibir esta notificación en español, llámenos o visite nuestra página web.

This notice explains your options regarding the Court's order related to asbestos claims ("Asbestos Bar Date Order"), how to submit an asbestos claim and the consequences of doing nothing.

**Questions? Call 1-877-276-7311 or visit www.EFHAsbestosClaims.com**

2

## WHAT THIS NOTICE CONTAINS

**BACKGROUND INFORMATION** ........................................................................................ *PAGE N*
1.  What is this bankruptcy case about?
2.  Why has this notice been issued?
3.  What companies are part of EFH?
4.  Who is this notice being provided to?

**ASBESTOS EXPOSURE** ................................................................................................ *PAGE N*
5.  What is asbestos?
6.  What is asbestos exposure?
7.  Which power plants are included?
8.  What is asbestos-related illness?
9.  If I may have been exposed to asbestos and am not ill, why should I submit a claim?
10. What does the term "Asbestos Claim" include?

**WHO SHOULD SUBMIT AN ASBESTOS CLAIM** ........................................................ *PAGE N*
11. Should I submit an Asbestos Claim?
12. Why are family members included?
13. What if I am an EFH employee?
14. What is the difference between a manifested and an unmanifested claim?
15. Which claim form should I submit?
16. What if I am not sure if I should submit a claim?
17. Will I get money if I submit a claim?
18. What is the deadline to submit an Asbestos Claim?

**UNMANIFESTED CLAIMS (No Current Illness or Injury)** .......................................... *PAGE N*
19. How do I complete an Unmanifested Claim?
20. How do I submit an Unmanifested Claim?

**MANIFESTED CLAIMS (For Current Injury)** ............................................................... *PAGE N*
21. What are the requirements for completing a Manifested Claim?
22. How do I submit a Manifested Claim?
23. Reservation of Debtors' Rights.

**IF YOU DO NOTHING** .................................................................................................. *PAGE N*
24. What if I do not submit a claim by the deadline?

**GETTING MORE INFORMATION** ................................................................................. *PAGE N*
25. How do I get more information?

**Questions? Call 1-877-276-7311 or visit www.EFHAsbestosClaims.com**

# BACKGROUND INFORMATION

## 1. What is this bankruptcy case about?

A bankruptcy has been filed by Energy Future Holding Corp., Ebasco Services, Inc. EECI, Inc. and certain subsidiaries ("EFH"). EFH owned, operated, maintained, or built power plants across the United States and in other countries where asbestos was present. Workers at these power plants (and family members and others who came into contact with these workers) may have been exposed to asbestos.

Under the supervision of the Court, EFH is seeking a "clean start" by restructuring its debts. As part of that process, anyone who has a claim today against EFH for asbestos-related illness, or who may develop asbestos-related illness in the future, must submit a claim by **Month DD, 201Y** to be eligible for compensation from EFH now or in the future.

## 2. Why has this notice been issued?

The Court's Asbestos Bar Date Order directed that this notice be issued. The Asbestos Bar Date Order provides that if you were exposed to asbestos from a power plant related to EFH, you must submit a claim by **Month DD, 201Y** to be eligible for compensation either now or in the future. Capitalized terms used that are not otherwise defined in this notice have the meaning as defined in the Asbestos Bar Date Order.

## 3. What companies are part of EFH?

EFH is comprised of the following companies that are included in this bankruptcy.

| | |
|---|---|
| Energy Future Holdings Corp. | EFIH FINANCE INC. |
| 4Change Energy Company | Energy Future Competitive Holdings Company LLC |
| 4Change Energy Holdings LLC | Energy Future Intermediate Holding Company LLC |
| Big Brown 3 Power Company LLC | ENSERCH Corporation |
| Big Brown Lignite Company LLC | Generation Development Company LLC |
| Big Brown Power Company LLC | Generation MT Company LLC |
| Brighten Energy LLC | Generation SVC Company |
| Brighten Holdings LLC | Lake Creek 3 Power Company LLC |
| Collin Power Company LLC | Lone Star Energy Company, Inc. |
| Dallas Power & Light Company | Lone Star Gas Company |
| Dallas Power & Light Company, Inc. | Lone Star Pipeline Company, Inc. |
| DeCordova II Power Company LLC | LSGT Gas Company LLC |
| DeCordova Power Company LLC | LSGT SACROC, Inc. |
| Eagle Mountain Power Company LLC | Luminant Big Brown Mining Company LLC |
| Ebasco Services, Inc. | Luminant Energy Company LLC |
| EBASCO SERVICES OF CANADA LIMITED | Luminant Energy Trading California Company |
| EEC Holdings, Inc. | Luminant ET Services Company |
| EECI, Inc. | Luminant Generation Company LLC |
| EFH Australia (No. 2) Holdings Company | Luminant Holding Company LLC |
| EFH CG Holdings Company LP | Luminant Mineral Development Company LLC |
| EFH CG Management Company LLC | Luminant Mining Company LLC |
| EFH Corporate Services Company | Luminant Renewables Company LLC |
| EFH Finance (No. 2) Holdings Company | Martin Lake 4 Power Company LLC |
| EFH FS Holdings Company | Monticello 4 Power Company LLC |
| EFH Renewables Company LLC | Morgan Creek 7 Power Company LLC |

**Questions? Call 1-877-276-7311 or visit www.EFHAsbestosClaims.com**

NCA Development Company LLC
NCA Resources Development Company LLC
Oak Grove Management Company LLC
Oak Grove Mining Company LLC
Oak Grove Power Company LLC
Sandow Power Company LLC
Southwestern Electric Service Company, Inc.
TCEH Finance, Inc.
Texas Competitive Electric Holdings Company LLC
Texas Electric Service Company
Texas Electric Service Company, Inc.
Texas Energy Industries Company, Inc.
Texas Power & Light Company, Inc.
Texas Utilities Company, Inc.
Texas Utilities Electric Company, Inc.
Texas Power & Light Company
Tradinghouse 3 & 4 Power Company LLC
Tradinghouse Power Company LLC
TXU Corp.
TXU Electric Company, Inc.
TXU Energy Receivables Company LLC
TXU Energy Retail Company LLC
TXU Gas Company
TXU Gas Company LP
TXU Generation Company

TXU US Holdings Company
Texas Utilities Company
Texas Utilities Generating Company
Texas Utilities Electric Company
TXU Electric Company
Texas Utilities Company, Inc.
Texas Utilities Generating Company, Inc.
Texas Utilities Electric Company, Inc.
TXU Electric, Inc.
TXU Energy Company LLC
Texas Energy Industries, Inc.
TXU Energy Services Company
TXU Generation Company LP
TXU Big Brown Company LP
TXU DeCordova Company LP
TXU Tradinghouse Company LP
TXU Handley Company LP
TXU Mountain Creek Company LP
TXU Valley Company LLC
TXU Energy Solutions Company LLC
TXU Receivables Company
TXU Retail Services Company
TXU SEM Company
Valley NG Power Company LLC
Valley Power Company LLC

## 4. Who is this notice being provided to?

The following people (if they are known to EFH) are being provided this notice directly.

- Current and former EFH employees who may have worked at an EFH facility.
- People who may have performed work at an EFH facility.  This includes people who worked for a vendor, contractor or subcontractor.
- People who may have been present at an EFH facility in any other role.
- People who may have worked for an entity retained by EFH as vendor, contractor or in any other capacity.
- People who may have performed work for an unrelated entity at a site in which EFH also performed work.
- People who have a pending asbestos lawsuit against EFH.
- People who have a pending asbestos lawsuit against a party other than EFH and EFH has agreed to indemnify or compensate that party for loss or damage.
- Anyone who requests a copy of this notice.

# ASBESTOS EXPOSURE

## 5. What is asbestos?

Asbestos is a fiber that was used as insulation in walls, wires, pipes, boilers and generators, steam traps, pumps, valves, electrical boards, gaskets, packing material, turbines, compressors, cement and cement pipes. Workers responsible for building and maintaining power plants and

equipment also wore insulated clothing or gear that may have contained asbestos. Virtually all power plants built before 1980 used or contained asbestos-containing products.

## 6. What is asbestos exposure?

You could have been exposed to asbestos if you or a family member worked at any of the included power plants as an employee, a contractor, or in any other role. You also could have been exposed by coming in contact with another person who worked at a power plant (for example, if asbestos was brought home on your spouse or parent's clothing).

## 7. Which power plants are included?

You could have been exposed to asbestos if you or a family member worked at any of the included power plants as an employee, a contractor, or in any other role.  The included power plants were located across the United States and in some foreign countries. A list of the included power plants is provided at the end of this notice.

## 8. What is asbestos-related illness?

Asbestos-related illnesses can be very serious or fatal and include diseases such as mesothelioma, lung cancer laryngeal cancer, esophageal cancer, pharyngeal cancer, stomach cancer and asbestosis. Even if your exposure to asbestos was many years ago and you are not sick today, this notice could affect you. Asbestos-related illness can occur 50 years or later after the exposure to asbestos.

## 9. If I may have been exposed to asbestos and am not ill, why should I submit a claim?

Under applicable law, you have a claim for asbestos exposure at the time you are exposed, not at the time when you become sick, which could be many years later.  As a result, if you believe you have been exposed to asbestos by EFH at an included power palnt before April 29, 2014, you must file a claim now.  To be eligible for compensation related to exposure to asbestos, you must file a claim whether or not an injury or disease has been diagnosed and whether or not you have a claim under state law.

## 10. What does the term "Asbestos Claim" include?

"Asbestos Claim" means any claim for:

- exposure to asbestos
- personal injury related to exposure to asbestos, or
- wrongful death related to exposure to asbestos.

Asbestos Claims may include claims for any relief of any kind whatsoever, including claims for damages or payment as well as non-monetary claims.

Asbestos Claims include claims that:

- Have been settled or are in the process of being settled but are unpaid.

**Questions? Call 1-877-276-7311 or visit www.EFHAsbestosClaims.com**

- Are based on a judgment or verdict but are unpaid.

## WHO SHOULD SUBMIT AN ASBESTOS CLAIM

### 11. Should I submit an Asbestos Claim?

Anyone who has a claim today against EFH for asbestos-related illness or who may develop asbestos-related illness in the future, must submit a claim by **Month DD, 201Y** to be eligible for compensation from EFH now or in the future.

You could have been exposed to asbestos if you or a family member worked at any of the included power plants as an employee, a contractor, or in any other role.

### 12. Why are family members included?

Family members are included because you could have been exposed by coming in contact with another person who worked at a power plant (for example, if asbestos was brought home on your spouse or parent's clothing).  You may also file a claim on behalf of a deceased family member.

### 13. What if I am an EFH employee?

A current EFH employee must submit a claim by the Asbestos Bar Date for any claim related to possible exposure to asbestos before April 29, 2014.  This includes an Asbestos Claim that has not developed a current illness or injury, and whether or not such Asbestos Claim is valid or could be made under non-bankruptcy law.

### 14. What is the difference between a manifested and an unmanifested claim?

As part of this bankruptcy, there are two types of Asbestos Claims: manifested and unmanifested.

**Manifested Claim.**  If you have any sign of illness today which you believe is related to asbestos exposure, you have what is called a "manifested claim."  Anyone who has a manifested claim related to EFH should complete an Official Form 10.  The manifested claim process can be complex and you are encouraged to ask a lawyer to help you, although you can submit an Official Form 10 without an attorney.

If you have already brought a claim against EFH relating to asbestos exposure, you still have to complete and submit an Official Form 10.

**Unmanifested Claim.**  The other type of asbestos exposure claim is for an "unmanifested" asbestos injury or illness.  This means:

(1) you may have been exposed to asbestos from any of the power plants included in this bankruptcy; and
(2) you do not have any sign of illness related to asbestos exposure today.

**Questions? Call 1-877-276-7311 or visit www.EFHAsbestosClaims.com**

The unmanifested claim process is simple and filling out a form should only take a few minutes. You do not need an attorney to fill out and file an Unmanifested Asbestos Injury Claim Form (though you may hire one if you choose).

Both Official Form 10 and the Unmanifested Asbestos Injury Claim Form are included with this notice and available at the website.

### 15. Which claim form should I submit?

If you have a Manifested Claim, you should submit an Official Form 10.  If you have an Unmanifested Claim, you should submit the Unmanifested Asbestos Injury Claim Form.

Both Official Form 10 and the Unmanifested Asbestos Injury Claim Form are included with this notice and available at the website.

### 16. What if I am not sure if I should submit a claim?

If you are not sure if you should submit a claim, it is a good idea to make a claim to keep your right to compensation now or in the future. Certain groups of people may not need to file a claim. You can review the Asbestos Bar Date Order for a list of people who do not.  It is unusual to not need to file a claim, however, and if you have any doubt, it is a good idea to file one.

You may want to talk with your lawyer about whether to submit a claim and about any questions you have that are not covered by this notice.

### 17. Will I get money if I submit a claim?

Receiving this notice does not mean that you were exposed to asbestos or that you are eligible to receive money as part of this bankruptcy.  If you are not ill today, submitting a claim keeps your right to receive compensation if you become ill in the future.

### 18. What is the deadline to submit an Asbestos Claim?

Your Asbestos Claim must be received by **Month DD, 201Y** in order to be eligible for compensation now or in the future.  This deadline is also called the Asbestos Bar Date.

## UNMANIFESTED CLAIMS (NO CURRENT ILLNESS OR INJURY)

### 19. How do I complete an Unmanifested Claim?

If you are not ill today, use the Unmanifested Asbestos Injury Claim Form which is included with this notice and available at the website.  Completing the Unmanifested Asbestos Injury Claim Form should take about five minutes.  In addition to basic contact information (name, address), the claim form asks how and where you may have been exposed to asbestos related to EFH to the extent you know.

### 20. How do I submit an Unmanifested Claim?

**Questions? Call 1-877-276-7311 or visit www.EFHAsbestosClaims.com**

You may submit an Unmanifested Claim online at www.EFHAsbestosClaims.com.  If you want to use the paper Unmanifested Asbestos Injury Claim Form, you may submit the form in any of the following ways:

**Fax**: 1-8NN-NNN-NNNN

**Email:** info@EFHAsbestosClaims.com

**First-Class Mail:**

Energy Future Holdings Corp. Claims Processing Center
c/o Epiq Bankruptcy Solutions, LLC
Grand Central Station, P.O. Box 4613
New York, NY 10163-4613

**Hand Delivery or Overnight Mail:**

Energy Future Holdings Corp. Claims Processing Center
c/o Epiq Bankruptcy Solutions, LLC
777 Third Avenue, 12th Floor
New York, New York 10017

# MANIFESTED CLAIMS (FOR CURRENT INJURY)

## 21. What are the requirements for completing a Manifested Claim?

To submit a Manifested Claim (if you have any sign of illness today), use Official Form 10 which is included with this notice and available at the website.

To be considered, your Manifested Claim must satisfy all of the following requirements.

(a)   *Language*.  The claim must be written in English.

(b)   *Claim Amount.*  The claim must include an amount in United States dollars.

(c)   *Signature.*  The claim must be signed by the claimant or by an authorized agent or legal representative of the claimant.  If signed on behalf of the claimant, proof of representation must be provided with the claim.

(d)   *Original Signature Required*.  Only an *original* claim may be deemed acceptable for purposes of claims administration.

(e)   *Identification of the Debtor Entity*.  Each claim must clearly identify the Debtor against which a claim is asserted, including the individual Debtor's case number.  In case of inconsistency between the name of the identified Debtor and the Debtor's case number, the claim will be filed against the Debtor identified by name.  A claim filed under the joint administration case number (No. 14-10979 (CSS)) or otherwise without identifying a specific Debtor, will be deemed as filed only against EECI, Inc.

(f)   *Claim Against Multiple Debtor Entities*.  Each claim must state a claim against *only one* Debtor and clearly indicate the Debtor against which the claim is asserted.  To the extent

more than one Debtor is listed on the proof of claim, such claim may be treated as if filed only against EECI, Inc.

(g) ***Special Provision for Identification of Debtor Entity for Asbestos Claims.*** An Asbestos Claim will be allowed even if the claim was filed against the incorrect Debtor; *provided, however*, that the Debtors reserve the right to make other objections with respect to the claim, including reclassifying the Debtor(s) subject to the claim.

(h) ***Certification.*** Any lawyer or other person who acts as filing agent for a proof of claim on behalf of anyone holding an Asbestos Claim must certify, under penalty of perjury, that such agent has received certification from the claimant as of the date of filing of the claim that the information contained in the claim is true, accurate, and complete.

(i) ***Supporting Documentation***. Each claim must include supporting documentation in compliance with Bankruptcy Rules 3001(c) and 3001(d). If this documentation is voluminous, upon prior written consent of Debtors' counsel, the claim may include a summary of the documentation or an explanation of why the documentation is not available; *provided*, *however*, that any claimant who received such written consent will be required to transmit the summary to Debtors' counsel upon request no later than ten days from the date of the request.

(j) ***Receipt of Service***. Claimants wishing to receive acknowledgment that their proofs of claim were received by the claims administrator (Epiq Bankruptcy Solutions, LLC, or "Epiq") must submit (i) a copy of the claim form (clearly marked on its face as "COPY") and (ii) a self-addressed, stamped envelope (in addition to the original claim form sent to Epiq).

## 22. How do I submit a Manifested Claim?

Each Manifested Claim must be filed, including supporting documentation, by U.S. Mail or other hand delivery system, so it is received by the claims administrator on or before **Month DD, 201Y** at one of the following addresses:

By First-Class Mail:

Energy Future Holdings Corp. Claims Processing Center
c/o Epiq Bankruptcy Solutions, LLC
Grand Central Station, P.O. Box 4613
New York, NY 10163-4613

By Hand Delivery or Overnight Mail:

Energy Future Holdings Corp. Claims Processing Center
c/o Epiq Bankruptcy Solutions, LLC
777 Third Avenue, 12th Floor
New York, New York 10017

Any Manifested Claim submitted by fax or email will not be considered.

**Questions? Call 1-877-276-7311 or visit www.EFHAsbestosClaims.com**

If you are not sure if you should submit a claim, it is a good idea to make a claim to preserve your right to compensation now or in the future. You may want to talk with your lawyer about whether to submit a claim and about any questions you have that are not covered by this notice.

## 23. Reservation of Debtors' Rights.

Nothing contained in this Notice is intended to or should be taken as the Debtors' giving up their right to: (a) defend against, any filed claim or any claim listed or reflected in the Schedules related to the nature, amount, liability, or claim classification thereof; (b) subsequently designate any scheduled claim as disputed, contingent, or unliquidated; and (c) otherwise amend or supplement the Schedules.

# IF YOU DO NOTHING

## 24. What if I do not submit a claim by the deadline?

If you do not file a claim now, you will lose your right to bring an asbestos injury claim against the Debtors and receive money, even if you develop an asbestos-related illness in the future. This means you will not be able to have a say in the voting and share in money provided for asbestos claimants under any bankruptcy plan of reorganization in EFH's bankruptcy cases.

# GETTING MORE INFORMATION

## 25. How do I get more information?

Visit www.efhcaseinfo.com to view the Debtors' Schedules, the Asbestos Bar Date Order, and other information regarding these bankruptcy cases.

If you have questions, call 1-877-276-7311 or send an email to info@EFHAsbestosClaims.com. You may also send a letter to: Energy Future Holdings Corp. Claims Processing Center, c/o Epiq Bankruptcy Solutions, LLC, Grand Central Station, P.O. Box 4613, New York, NY 10163-4613.

**Questions? Call 1-877-276-7311 or visit www.EFHAsbestosClaims.com**

11

**Claim Deadline**
**Month DD, 201Y**

# Unmanifested Asbestos Injury Claim Form

As part of this bankruptcy, there are two types of claims related to exposure to asbestos: manifested and unmanifested.  You could be affected if you or a family member worked at any of the power plants as an employee, a contractor or in any other role.

**Manifested Claims.**  If you have any sign of illness today which you believe is related to asbestos exposure, this is called a "manifested claim."  Anyone who has a manifested claim related to Energy Future Holdings Corp. and certain subsidiaries (the "Debtors") should <u>not</u> complete this claim form.  Instead, complete an Official Form 10 (available at www.EFHAsbestosClaims.com).  The manifested claim process can be complex and you are encouraged to have an attorney assist you, although you can submit an Official Form 10 without the help of an attorney.

**Unmanifested Claims.**  The other type of asbestos exposure claim is for "unmanifested" asbestos injury.  No attorney is necessary to assist you to file an unmanifested claim, although you are free to consult an attorney.  An unmanifested claim means:

   (1)  you may have been exposed to asbestos from any of the power plants included in this process; and
   (2)  you do not have any sign of illness related to asbestos exposure today.

**Why are family members included?**  Family members are included because you could have been exposed by coming in contact with another person who worked at a power plant (for example, if asbestos was brought home on your spouse's or parent's clothing).  You may also file a claim on behalf of a deceased family member.

**Which power plants are included?**  You or a family member could have been exposed at any of the power plants related to EFH.  These power plants were located across the United States and some in foreign countries.  A list of the included power plants is available at www.EFHAsbestosClaims.com.

**What is asbestos?**  Asbestos is a fiber that was often used as insulation in walls, wires, pipes, boilers, generators, steam traps, pumps, valves, electrical boards, gaskets, packing material, turbines, compressors, cement and cement pipes.  Workers responsible for building and maintaining power plants and equipment also wore insulated clothing or gear that may have contained asbestos.  Asbestos exposure was virtually unavoidable at power plants built prior to 1980.

Asbestos-related illness can occur 50 years after exposure to asbestos or longer.  Asbestos-related illnesses can be very serious or fatal and include diseases such as mesothelioma, lung cancer, laryngeal cancer, esophageal cancer, pharyngeal cancer, stomach cancer and asbestosis.

**Why should I submit a claim?**  If you believe that you or a family member were exposed to asbestos at any included plant, submitting this claim form by **Month DD, 201Y** will preserve your right to file a claim for money in the future should you develop an asbestos-related illness.  You may also submit your Unmanifested Asbestos Injury Claim Form online at www.EFHAsbestosClaims.com.

**What happens if I do not submit a claim?**  If you do not file a claim now, you will forever lose your right to bring an asbestos injury claim against the Debtors and receive money, even if you develop an asbestos-related illness in the future.

---

### YOUR INFORMATION

Name     _____

Street Address     _____

City, State, ZIP Code     _____

Phone Number     _____

Email Address     _____

Social Security No.     _____     Date of Birth     _____

**Questions?  Call 1-877-276-7311 or email info@EFHAsbestosClaims.com**

Energy Future Holdings Corp. Claims Processing Center
c/o Epiq Bankruptcy Solutions, LLC
P.O. Box 4420
Beaverton, OR 97076-4420

Case 14-10979-CSS    Doc 4985-1    Filed 07/13/15    Page 92 of 95

**Unmanifested Asbestos
Injury Claim Form**
Page 2 of 2

**POSSIBLE ASBESTOS EXPOSURE**

I may have been exposed to asbestos because:

☐ I worked at an included plant.    ☐ A family member worked at included plant.

If your possible exposure to asbestos at an included plant was related to a family member (for example, if asbestos was brought home on your spouse's or parent's clothing), list that family member:

Family Member Name _____

Relationship to You _____

Identify plants at which asbestos exposure may have occurred (visit www.EFHAsbestos Claims.com for a list of included plants).

| Plant Name (if known) | Plant Location (if known) | Exposure Type | Estimated Exposure Dates (if known) |
|---|---|---|---|
| | | ☐ Myself ☐ Family Member | |
| | | ☐ Myself ☐ Family Member | |
| | | ☐ Myself ☐ Family Member | |
| | | ☐ Myself ☐ Family Member | |

**CERTIFICATION**

I certify that the information I have provided is true, accurate and complete to the best of my knowledge.

Signature _____    Date _____
☐ Signed by representative (attach proof of representation)

**Submit your claim form so it is RECEIVED by Month DD, 201Y to:**

**Mail**:  Energy Future Holdings Corp. Claims Processing Center
c/o Epiq Bankruptcy Solutions, LLC
P.O. Box 4420
Beaverton, OR 97076-4420

**Email**: info@EFHAsbestosClaims.com

**Fax**:  1-8NN-NNN-NNNN

You may also submit your claim online at www.EFHAsbestosClaims.com.

**Questions?  Call 1-877-276-7311 or email info@EFHAsbestosClaims.com**

Claims Administrator for US Bankruptcy Court
Post Office Box NNNN
City, ST NNNNN-NNNN



123456789

John Q. Doe
1234 Main St.
City, ST 00000

PRESORTED
FIRST-CLASS MAIL
US POSTAGE
PAID
CITY, ST
PERMIT # 000

## Legal Notice from US Bankruptcy Court about Asbestos Claims Deadline

## Power Plant Employees and Contractors

**If you or a family member ever worked at a power plant, you could have been exposed to asbestos.**

To keep your right to compensation if you become ill in the future (or have asbestos-related illness today), you must submit a claim by Month DD, 201Y.

LEGAL NOTICE

# Power Plant Employees and Contractors

## If you or a family member ever worked at a power plant, you could have been exposed to asbestos.

### To keep your right to compensation if you become ill in the future (or have asbestos-related illness today), you <u>must</u> submit a claim by Month DD, 201Y.

Energy Future Holdings Corp., Ebasco Services, Inc., EECI, Inc. and certain subsidiaries ("EFH") owned, operated, maintained, or built power plants across the United States and in other countries where asbestos was present. Workers at these power plants (and family members and others who came into contact with these workers) may have been exposed to asbestos.

Anyone who has a claim today against EFH for asbestos-related illness or who may develop an asbestos-related illness in the future, must submit a claim by **Month DD, 201Y** to be eligible for compensation now or in the future.

### What is asbestos?

Asbestos is a fiber which was used as insulation in walls, wires, pipes, boilers, generators, steam traps, pumps, valves, electrical boards, gaskets, packing material, turbines, compressors, cement and cement pipes. Workers responsible for building and maintaining power plants and equipment also wore insulated clothing or gear that may have contained asbestos. Asbestos exposure was virtually unavoidable at power plants built prior to 1980.

Asbestos-related illnesses can be very serious or fatal and include diseases such as mesothelioma, lung cancer, laryngeal cancer, esophageal cancer, pharyngeal cancer, stomach cancer and asbestosis. Even if your exposure to asbestos was many years ago and you are not sick today, this notice could affect you. Asbestos-related illness can occur decades and even 50 years after the exposure to asbestos that caused the illness.

### Which power plants are included?

You or a family member could have been exposed at any of the power plants related to EFH. These power plants were located across the United States and some in foreign countries. For a list of the included power plants, visit the website below or call 1-877-276-7311.

### How could this affect me?

You could have been exposed to asbestos if you or a family member worked at any of the included power plants as an employee, a contractor, or in any other role. You also could have been exposed by coming in contact with another person who worked at a power plant (for example, if asbestos was brought home on your spouse or parent's clothing). You may also file a claim on behalf of a deceased family member.

### What do I do now?

If you believe that you or a family member may have been exposed to asbestos at an included plant, submit a claim by **Month DD, 201Y**. Go to www.EFHAsbestosClaims.com to submit your claim online. To get a paper claim form, visit the website or call 1-877-276-7311. Submitting a claim preserves your right to ask for money if you develop asbestos-related illness in the future.

You can submit a claim yourself or you can ask a lawyer to help you. If you are not ill today, completing a claim takes about five minutes.

### What if I do nothing?

If you do not submit a claim and later develop asbestos-related disease, you will **not** be eligible for compensation from EFH. Even if you have not been diagnosed with disease or experienced symptoms, you must make a claim to preserve your right to compensation if you develop an asbestos-related illness in the future.

### File a Claim Now

Go to www.EFHAsbestosClaims.com to file a claim online or call 1-877-276-7311 to request a claim form be sent to you.

**1-877- 276-7311  ▪  www.EFHAsbestosClaims.com**

*Energy Future Holdings Corp.*
**EFH Asbestos - Banner Advertisement**

**Online Display –**
Frame 1: Visible for 7 seconds.



Frame 2: Visible for 8 seconds.



**Facebook –**
Static Ad