## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re:<br><br>ENERGY FUTURE HOLDINGS CORP., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 14-10979 (CSS)<br><br>Jointly Administered |

### NOTICE OF SUBPOENA TO CHARLES H. CREMENS
### TO PRODUCE DOCUMENTS

TO:    Charles H. Cremens
        c/o Stevens & Lee, P.C.
        1105 North Market Street, Suite 700
        Wilmington, DE 19801
        Attn: Joseph H. Huston, Jr.

        Cravath, Swaine and Moore LLP
        Worldwide Plaza
        825 Eighth Avenue
        New York, NY 10019
        Attn: Richard Levin

**PLEASE TAKE NOTICE THAT** pursuant to Rules 26, 30, 34, and 45 of the Federal Rules of Civil Procedure, made applicable to this proceeding pursuant to Rules 7026, 7030, 7034, 9014, and 9016 of the Federal Rules of Bankruptcy Procedure, the Official Committee of Unsecured Creditors of Energy Future Holdings Corporation, Energy Future Intermediate Holding Company LLC, EFIH Finance, Inc., and Enserch Engineering and Construction, Inc. (the "EFH Committee"), by its undersigned counsel, is serving the attached Subpoena to Charles

---

[1]    The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, for which the debtors have requested joint administration, a complete list of the debtors and the last four digits of their federal tax identification Numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' proposed claims and noticing agent at http://www.efhcaseinfo.com.

H. Cremens to produce documents identified in the attached Schedule A, in accordance with the *Order (A) Scheduling Certain Hearing Dates and Deadlines, (B) Establishing Certain Protocols in Connection with the Confirmation of Debtors' Plan of Reorganization, and (C) Revising Certain Dates in the Disclosure Statement Scheduling Order* [D.I. 4916], and in connection with the *Amended Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code* [D.I. 5078], as it may be amended (the "Plan"), and *Energy Future Intermediate Holdings Company LLC's Statement in Support of Intercompany Settlement in the Plan* [D.I. 4146], and the relief requested therein.  The documents shall be produced on or before August 27, 2015, at 9:30 a.m. (Eastern Time) at the offices of Sullivan & Cromwell LLP, 125 Broad Street, New York, NY 10004 (or such other time and place as may be agreed to by the parties).

Dated:   Wilmington, Delaware
       July 28, 2015

**MONTGOMERY McCRACKEN WALKER & RHOADS, LLP**

  */s/ Mark A. Fink*
Natalie D. Ramsey (DE Bar No. 5378)
Davis Lee Wright (DE Bar No. 4324)
Mark A. Fink (DE Bar No. 3946)
1105 North Market Street, 15th Floor
Wilmington, Delaware  19801
Telephone:   (302) 504-7800
Facsimile:   (302) 504 -7820
E-mail:       nramsey@mmwr.com
         dwright@mmwr.com
         mfink@mmwr.com

– and –

**SULLIVAN & CROMWELL LLP**
Steven L. Holley
Robert J. Giuffra, Jr.
Andrew G. Dietderich
Brian D. Glueckstein
125 Broad Street
New York, NY  10004
Telephone:     (212) 558-4000
Facsimile:     (212) 558-3588
E-mail:        holleys@sullcrom.com
               giuffrar@sullcrom.com
               dietdericha@sullcrom.com
               gluecksteinb@sullcrom.com

*Counsel for The Official Committee of Unsecured*
*Creditors of Energy Future Holdings Corp.;*
*Energy Future Intermediate Holding Company,*
*LLC; EFIH Finance, Inc.; and EECI, Inc.*

B257 (Form 257 – Subpoena to Produce Documents, Information, or Objects or To Permit Inspection in a Bankruptcy Case or Adversary Proceeding) (12/13)

# UNITED STATES BANKRUPTCY COURT

District of _____ Delaware

In re Energy Future Holdings Corp., et al.
_____
Debtor

Case No. 14-10979 (CSS)

*(Complete if issued in an adversary proceeding)*

Chapter 11

_____
Plaintiff

v.

Adv. Proc. No. _____

_____
Defendant

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A BANKRUPTCY CASE (OR ADVERSARY PROCEEDING)

To: Charles H. Cremens
_____

*(Name of person to whom the subpoena is directed)*

☒ *Production*: **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:

| PLACE | DATE AND TIME |
|---|---|
| Sullivan & Cromwell LLP, 125 Broad Street, New York, NY 10004 | August 27, 2015, 9:30 AM |

☐ *Inspection of Premises*: **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| PLACE | DATE AND TIME |
|---|---|
|  |  |

The following provisions of Fed. R. Civ. P. 45, made applicable in bankruptcy cases by Fed. R. Bankr. P. 9016, are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and 45(g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: 7/28/15

CLERK OF COURT

OR

_____            _____
Signature of Clerk or Deputy Clerk            *Attorney's signature*

The name, address, email address, and telephone number of the attorney representing *(name of party)*
EFH Official Committee of Unsecured Creditors   . who issues or requests this subpoena, are:

Brian D. Glueckstein, Sullivan & Cromwell LLP, 125 Broad Street, New York, NY 10004, (212) 558-4000, gluecksteinb@sullcrom.com

## Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things, or the inspection of premises before trial, a notice and a copy of this subpoena must be served on each party before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

B257 (Form 257 – Subpoena to Produce Documents, Information, or Objects or To Permit Inspection in a Bankruptcy Case or Adversary Proceeding) (Page 2)

## PROOF OF SERVICE
### (This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)

I received this subpoena for *(name of individual and title, if any)*: _____

on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

_____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of  $ _____ .

My fees are $ _____ for travel and $_____ for services, for a total of $_____ .


      I declare under penalty of perjury that this information is true and correct.

Date:  _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*


Additional information concerning attempted service, etc.:

B257 (Form 257 – Subpoena to Produce Documents, Information, or Objects or To Permit Inspection in a Bankruptcy Case or Adversary Proceeding) (Page 3)

## Federal Rule of Civil Procedure 45(c), (d), (e), and (g) (Effective 12/1/13)
### (made applicable in bankruptcy cases by Rule 9016, Federal Rules of Bankruptcy Procedure)

**(c) Place of compliance.**

*(1) For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
(i) is a party or a party's officer; or
(ii) is commanded to attend a trial and would not incur substantial expense.

*(2) For Other Discovery.* A subpoena may command:
(A) production of documents, or electronically stored information, or things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
(B) inspection of premises, at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

*(1) Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

*(2) Command to Produce Materials or Permit Inspection.*
*(A) Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
*(B) Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

*(3) Quashing or Modifying a Subpoena.*
*(A) When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
(i) fails to allow a reasonable time to comply;
(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
(iv) subjects a person to undue burden.
*(B) When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
(i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
*(C) Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
(ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

*(1) Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
*(A) Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
*(B) Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
*(C) Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
*(D) Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

*(2) Claiming Privilege or Protection.*
*(A) Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
(i) expressly make the claim; and
(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
*(B) Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.
…

**(g) Contempt.** The court for the district where compliance is required – and also, after a motion is transferred, the issuing court – may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013)

## SCHEDULE A

Pursuant to Rules 45, 26 and 34 of the Federal Rules of Civil Procedure, made applicable to this proceeding by Rules 9014, 9016, 7026 and 7034 of the Federal Rules of Bankruptcy Procedure, and in accordance with the *Order (A) Scheduling Certain Hearing Dates and Deadlines, (B) Establishing Certain Protocols in Connection with the Confirmation of Debtors' Plan of Reorganization, and (C) Revising Certain Dates in the Disclosure Statement Scheduling Order* (the "Confirmation Scheduling Order") [D.I. 4916], the EFH Committee, by and through its undersigned counsel, hereby requests that the EFIH Independent Manager produce all Documents described below in their possession, custody, or control, including in the possession, custody, or control of any Affiliates of the EFIH Independent Manager, in accordance with the definitions and instructions set forth below.

### DEFINITIONS

1.      "Affiliate" of any specified Person shall mean any other Person that directly, or indirectly, through one or more intermediaries, controls, is controlled by, or is under common control with, the Person specified.

2.      "Bankruptcy Code" shall mean Title 11 of the United States Code, and all provisions thereof.

3.      "Chapter 11 Cases" shall mean the Chapter 11 cases, commenced by the Debtors in the United States Bankruptcy Court for the District of Delaware on April 29, 2014, and jointly administered as case number 14-10979.

4.      "Claim" shall mean any claim against any Debtor as defined in Section 101(5) of the Bankruptcy Code.

5.      "Communication" shall mean every manner or means of disclosure, transfer, or exchange of information, including, but not limited to, any of the following:  (a) any written letter, memorandum, or other Document of any kind by mail, courier, other delivery services, telecopy, facsimile, telegraph, electronic mail, voicemail, or any other means; (b) any telephone call, whether or not such call was by chance or prearranged, formal or informal; and (c) any conversation or meeting between two or more persons, whether or not such contact was by chance or prearranged, formal or informal.

6.      "Debtors" shall mean, collectively, EFH Corp. and its affiliated entities, as debtors-in-possession, as applicable, which filed voluntary Chapter 11 petitions under the Bankruptcy Code commencing these Chapter 11 Cases, and any of their direct or indirect subsidiaries, Affiliates, divisions, subdivisions, departments, predecessors, successors, partners, principals, officers, directors, attorneys, accountants, agents, employees, representatives, and other persons acting on its behalf, including, but not limited to, K&E, Sidley, Evercore, Filsinger, and Alvarez & Marsal North America, LLC.

7.      "Disclosure Statement" shall mean the *Amended Disclosure Statement for the Amended Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code* [D.I. 5080], as it may be amended.

8.      "Disinterested Directors" shall mean, collectively, the EFIH Independent Manager, the EFH Disinterested Directors, and the TCEH Disinterested Manager.

9.      "Document" or "Documents" shall have the meaning prescribed by Rule 7034 of the Federal Rules of Bankruptcy Procedure, including, without limitation, any tangible thing upon which any expression, Communication or representation has been recorded by any means, and includes, but is not limited to, all electronically stored information, Communications, sworn

statements, deposition transcripts, affidavits, recordings, photographs, computer data, electronic

mail, handwritten notations, correspondence, memoranda, notes, financial calculations, calendars,

appointment books, and all other writings and recordings of every kind that are in your actual or

constructive possession, custody, or control.

10.     "EECI" shall mean Enserch Engineering and Construction, Inc., its predecessor

entities, all of its current and former direct or indirect subsidiaries, including Ebasco Services,

Inc., and all of its or their respective current or former directors, officers, employees, agents,

attorneys, advisors, and representatives.

11.     "EFH" or "EFH Corp." shall mean Energy Future Holdings Corporation, its

predecessor entities, all of its current and former direct or indirect subsidiaries, and all of its or

their respective current or former directors, officers, employees, agents, attorneys, advisors, and

representatives.

12.     "EFH Committee" shall mean the Official Committee of Unsecured Creditors of

EFH, EFIH, EFIH Finance, Inc., and EECI.

13.     "EFH Disinterested Directors" shall refer to Donald L. Evans and Billie I.

Williamson, and any consultants, accountants, attorneys, financial advisors, and any other person

currently or formerly acting or purporting to act on their behalf, including, but not limited to,

Proskauer Rose LLP and Solic Capital, which were retained under the supervision of Mr. Evans

and Ms. Williamson to render professional services with respect to Independent Matters, as that

term is used in the Protocol for Certain Case Matters.

14.     "EFIH" shall mean Energy Future Intermediate Holding Company LLC, its

predecessor entities, all of its current and former direct or indirect subsidiaries, and all of its or

their respective current or former directors, officers, employees, agents, attorneys, advisors, and representatives.

15.     "EFIH Independent Manager" shall refer to Mr. Charles H. Cremens and any consultants, accountants, attorneys, financial advisors, and any other person currently or formerly acting or purporting to act on his behalf, including, but not limited to, Cravath, Swaine & Moore LLP and Goldin Associates, LLC, which were retained under the supervision of Mr. Cremens to render professional services with respect to Independent Matters, as that term is used in the Protocol for Certain Case Matters.

16.     "EFIH Statement" shall mean *Energy Future Intermediate Holdings Company LLC's Statement in Support of Intercompany Settlement in the Plan* [D.I. 4146].

17.     "Evercore" shall mean Evercore Group L.L.C. and/or all of its current and former Affiliates, parents, direct or indirect subsidiaries, members, officers, directors, representatives, employees, agents, consultants, accountants, attorneys, financial advisors, predecessors, successors, assigns, and any other person currently or formerly acting or purporting to act on their behalf for any purpose whatsoever.

18.     "Filsinger" shall mean Filsinger Energy Partners and/or all of its current and former Affiliates, parents, direct or indirect subsidiaries, members, officers, directors, representatives, employees, agents, consultants, accountants, attorneys, financial advisors, predecessors, successors, assigns, and any other person currently or formerly acting or purporting to act on their behalf for any purpose whatsoever.

19.     "Insiders" shall mean insiders as defined in Section 101(31) of the Bankruptcy Code.

20.     "IRS" shall mean the Internal Revenue Service and each of its employees and agents.

21.     "K&E" shall mean Kirkland & Ellis LLP and/or all of its current and former partners, representatives, employees, agents, consultants, accountants, predecessors, successors, assigns, and any other person currently or formerly acting or purporting to act on their behalf for any purpose whatsoever.

22.     "Oncor" shall mean Oncor Electric Holdings Company LLC and Oncor Electric Delivery Company LLC, which are owned directly and indirectly, respectively, by EFIH, their predecessor entities, all of their current and former direct or indirect subsidiaries, and all of their respective current or former directors, officers, employees, agents, attorneys, advisors, and representatives.

23.     "Person" or "persons" shall mean all natural persons, corporations, partnerships or other business associations, and all other legal or governmental entities or associations.

24.     "Petition Date" shall mean April 29, 2014.

25.     "Plan" shall mean the *Amended Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code* [D.I. 5078], as it may be amended.

26.     "Prepetition Intercompany Claims" shall mean any Claims, causes of action, or disputes among EFH, EFIH, and TCEH arising before the Petition Date, including avoidance actions under sections 544, 547, and 548 of the Bankruptcy Code.

27.     "Protocol for Certain Case Matters" shall mean the *Stipulation and Agreed Order Regarding a Protocol for Certain Case Matters* [D.I. 2051], as amended.

28.     "Settlement" shall mean the proposal in the Plan to settle any Prepetition

Intercompany Claims, including allowance of the TCEH Settlement Claim (as defined in the

Plan).

29.     "Settlement Agreement" shall mean that certain Settlement Agreement as defined

in the Plan.

30.     "Sidley" shall mean Sidley Austin LLP and/or all of its current and former

partners, representatives, employees, agents, consultants, accountants, predecessors, successors,

assigns, and any other person currently or formerly acting or purporting to act on their behalf for

any purpose whatsoever.

31.     "Sponsors" shall mean Kohlberg Kravis Roberts & Co. LP, TPG Global, LLC,

and/or GS Capital Partners and/or all of their current and former Affiliates, parents, direct or

indirect subsidiaries, members, officers, directors, representatives, employees, agents,

consultants, accountants, attorneys, financial advisors, predecessors, successors, assigns, and any

other person currently or formerly acting or purporting to act on their behalf for any purpose

whatsoever.

32.     "TCEH" shall mean Texas Competitive Electric Holdings Company LLC, its

predecessor entities, all of its current and former direct or indirect subsidiaries, and all of its or

their respective current or former directors, officers, employees, agents, attorneys, advisors, and

representatives.

33.     "TCEH Disinterested Manager" shall refer to Mr. Hugh Sawyer and any

consultants, accountants, attorneys, financial advisors, and any other person currently or

formerly acting or purporting to act on his behalf, including, but not limited to, Munger, Tolles &

Olson LLP and Greenhill & Co., Inc., which were retained under the supervision of Mr. Sawyer

to render professional services with respect to Independent Matters, as that term is used in the Protocol for Certain Case Matters.

34.     "You" or "your" shall refer to any person to whom these Document requests have been addressed and all of their current and former affiliates, parents, direct or indirect subsidiaries, members, officers, directors, representatives, employees, agents, consultants, accountants, attorneys, financial advisors, predecessors, successors, assigns, and any other person currently or formerly acting or purporting to act on the Person's behalf for any purpose whatsoever.

35.     The terms "relating to" and "concerning" each mean, in addition to their usual and customary meanings, concerning, relating to, discussing, mentioning, evidencing, embodying, constituting, effecting, referring to, assessing, recording, analyzing, describing, evaluating, memorializing, about, regarding, touching upon, listing, or reflecting the matter specified in the request.

## INSTRUCTIONS

1.     Each request for Documents requires the production of all Documents described herein, in your possession, custody or control, including, but not limited to, those Documents in the custody or possession of current or former members, direct or indirect subsidiaries, parents, Affiliates, divisions, predecessors, successors, officers, directors, agents, employees, representatives, consultants, or investigators, or your attorneys or their agents, employees, representatives, or investigators.

2.     All Documents are to be produced as they are kept in the usual course of business or organized and labeled to correspond to the specific requests set forth below.

3.     In responding to each request, if any Document requested has been amended (including by an amendment and restatement), or any waiver, consent, supplement, forbearance

or other similar instrument has been entered into in connection with any such Document, furnish each such amendment, amendment and restatement, waiver, consent, supplement, forbearance, or other similar instrument.

4.    In responding to each such request, furnish all exhibits, schedules, annexes, appendices, or any other ancillary Documents related to each Document produced.

5.    All drafts and non-identical copies of responsive Documents must be produced. Any comment, notation, or other marking shall be sufficient to distinguish Documents that are otherwise similar in appearance and to make them separate Documents for purposes of your response. Likewise, any draft, preliminary form, or superseded version of any Document is also to be considered in a separate Document.

6.    To the extent applicable, furnish executed versions of each Document requested.

7.    The file folder or other container in which a Document is kept is deemed to be an integral part of the Document and shall be produced with the Document.

8.    Each paragraph and subparagraph hereof and the definitions herein are to be construed independently, and not by or with reference to any paragraph or subparagraph or definition herein for purposes of limiting the scope of any particular request or the subject matter thereof.

9.    If any requested Document or thing cannot be produced in full, produce it to the extent possible, indicating what is being withheld and the reason it is being withheld.

10.    If you object to any part of a Document request, state the specific basis for the objection and produce Documents responsive to all parts of the request to which you do not object.

11.     Any information or Document withheld from production by virtue of any claim of privilege or for any other reason shall be identified in accordance with the terms of Paragraph 14 of the Confirmation Scheduling Order.

12.     These Document requests shall be deemed continuing so as to require supplementation if you or your attorneys or agents become aware of, receive or generate additional Documents responsive to these requests after the time of the initial response.

13.     All Documents shall be produced in accordance with the E-Discovery Protocol attached as Exhibit 1 to the Confirmation Scheduling Order.

14.     The use of the singular form of any word shall include the plural form, and the plural form shall include the singular form.

15.     The use of the present tense of any word includes the past tense, the use of the past tense of any word shall include the present tense, and the use of any verb in any tense shall be construed as including the use of that verb in all other tenses.

16.     "Any" or "each" should be understood to include and encompass "all;" "or" should be understood to include and encompass "and;" and "and" should be understood to include and encompass "or."

## REQUESTS FOR PRODUCTION

## <u>PLAN NEGOTIATIONS</u>

1.     All Documents and Communications from and after the Petition Date concerning the negotiation or development of any plan of reorganization or Restructuring relating to any Debtor, including, but not limited to, the Plan and its supporting documentation, including, but not limited to the Backstop Agreement (as defined in the Plan).

2.      All Documents from and after the Petition Date provided to, or received from, any creditor of the Debtors concerning any plan of reorganization or Restructuring of any Debtor, and all related Communications.

3.      All Documents from and after the Petition Date provided to, or received from, the Sponsors concerning any plan of reorganization or Restructuring of any Debtor, and all related Communications.

4.      All Documents from and after the Petition Date concerning the assessment, evaluation, consideration, or analysis of any potential plan of reorganization or Restructuring of any Debtor, including but not limited to, the Plan, and all related Communications.

5.      All Documents from and after the Petition Date provided to, or received from, any Person related to or in connection with the Oncor Sale Process, including, but not limited to, all Bid Information (as defined in the Bidding Procedures annexed to the Bidding Procedures Order), analyses or evaluations of any Bid Information, and any conditions and risks associated with such bids.

6.      All Documents and Communications relating to any analysis of either the "Merger Scenario" or "Standalone Scenario" (as each is defined in the Plan), including but not limited to, the feasibility or risks associated with each.

7.      All Documents and Communications relating to, describing, or memorializing the substance of any negotiations or discussions leading to the development and proposal of the "Merger Scenario" and the "Standalone Scenario," as contained in the Plan and described in the Disclosure Statement.

8.     All Documents and Communications relating to the decision whether to pursue confirmation of the "Merger Scenario" or "Standalone Scenario" or both, as defined in the Plan and described in the Disclosure Statement.

9.     All Documents and Communications concerning each Debtor's approval of the Plan, including but not limited to, Documents provided to the Disinterested Directors and/or the full boards of directors.

10.     All Documents and Communications relating to the allocation of Reorganized EFH Common Stock and Contingent Value Rights in the Standalone Scenario set forth in the Plan.

11.     All Documents and Communications relating to the Settlement Agreement and the settlement contained therein, including but not limited to all Documents relating to the Disinterested Directors' consideration of the terms set forth in the Settlement Agreement.

12.     All Communications related to the "Conditions Precedent to the Effective Date" as set forth in Article IX.B of the Plan, and any Documents related thereto.

13.     All Documents and Communications relating to the Transaction Agreements (as defined in the Plan), including but not limited to, the status of all commitments reflected in the commitment letters.

14.     All Documents and Communications concerning conditions associated with new and additional sources of financing to be provided to the Debtors in accordance with the Merger Scenario in the Plan.

15.     All Documents and Communications related to any regulatory approvals required to consummate the REIT Reorganization under the Merger Scenario as set forth in the Plan.

16.    All Documents and Communications concerning the Debtors' negotiations with any Person or constituency regarding conditions precedent to any plan involving a REIT Reorganization.

17.    All Documents and Communications concerning risks associated with a failure to satisfy the conditions to consummate the REIT Structure under the Merger Scenario, including but not limited to (i) the Debtors' distribution of payments to creditors upon a failure to satisfy such conditions, (ii) the timing of such distributions, (iii) alternative plans or contemplated reorganization structures should the Debtors fail to satisfy such conditions, and (iv) the allocation of costs among the Debtors associated with the failure to satisfy such conditions.

## FEDERAL TAX MATTERS

18.    All Documents and Communications relating to any Communications between the IRS and any Debtor or Disinterested Director concerning any tax matters relating to the Plan or described in the Disclosure Statement.

19.    All Documents and Communications relating to any Communications between the IRS and any Debtor or Disinterested Director concerning any valuation or proposed valuation of TCEH, using any valuation methodology.

20.    All Documents and Communications discussing or otherwise relating to any analyses or considerations concerning either a "taxable deconsolidation or tax-free spin-off of TCEH," as provided in the Plan and described in the Disclosure Statement.

21.    All Documents and Communications relating to the feasibility or risks associated with the proposed "tax-free spin-off of TCEH," as provided in the Plan and described in the Disclosure Statement.

22.     All Documents relating to any actual or proposed valuations of TCEH that were used in connection with any analysis of the proposed "tax-free spin-off of TCEH," as provided in the Plan and described in the Disclosure Statement.

23.     All Documents relating to, supporting, or contradicting the statement in the Disclosure Statement that under the "tax-free spin-off . . . the tax attributes of the EFH Group will be substantially used to provide Reorganized TCEH with a partial step-up in tax basis in certain of its assets, valued at approximately $1.0 billion."

24.     All Documents and Communications relating to the "Private Letter Ruling," as described in the Plan and Disclosure Statement, including, but not limited to, the probability of receiving a Private Letter Ruling.

25.     All Documents relating to any analysis of the three proposed forms of reorganization for EFH following the proposed "tax-free spin-off of TCEH," including all Documents relating to or discussing the feasibility or risks associated with the "Merger Scenario," "Backstop Scenario," or "Standalone Scenario," as provided in the Plan and described in the Disclosure Statement.

26.     All Documents and Communications relating to the "TCEH Basis Step-up," as described in the Plan.

27.     All Documents and Communications relating to the risks associated with the proposed step-up in basis of TCEH's assets in connection with the "tax-free spin-off of TCEH," as provided in the Plan and described in the Disclosure Statement.

28.     All Documents concerning whether the consent of the Sponsors would be required for a "tax-free spin-off of TCEH," as provided for in the Plan and described in the Disclosure Statement.

-13-

## CONFLICTS OF INTEREST

29.     All Documents and Communications relating to the process in which any conflicts or "Independent Matters," as that term is used in the Protocol for Certain Case Matters, are identified, and any other processes considered for dealing with conflicts matters.

30.     Documents sufficient to identify any issues, subjects, or matters that are or have been designated as conflicts or "Independent Matters," as that term is used in the Protocol for Certain Case Matters.

31.     Documents sufficient to show any relationships or connections between and among the EFIH Independent Manager and any other Debtors or Disinterested Directors prior to commencement of their services in connection with these Chapter 11 Cases.

32.     All Documents and Communications relating to the process in which the EFIH Independent Manager was selected and any decision to retain the EFIH Independent Manager during these Chapter 11 Cases.

33.     All Documents and Communications relating to the process in which counsel and investment banking professionals for the EFIH Independent Manager were selected.

34.     All Documents and Communications relating to any directions, mandates, or instructions provided to the Disinterested Directors with respect to their services in connection with these Chapter 11 Cases.

## RELEASES

35.     All Documents and Communications relating to any consideration or analysis of whether and to what extent any party or entity should be included as a "Released Party" or "Releasing Party," as described in the Disclosure Statement and defined in the Plan.

36.    All Documents and Communications relating to the provision of "third-party releases of direct and indirect Holders of Interests in EFH Corp. and its affiliates," as described in the Disclosure Statement, and provided in Article VIII of the Plan.

37.    All Documents and Communications relating to providing "Exculpation" in the Plan to the "Exculpated Parties" (as defined in the Plan).

38.    All Communications with and/or among Insiders, including, but not limited to, officers and/or the Disinterested Directors, concerning or relating to the releases contained in Article VIII of the Plan and discussed in the Disclosure Statement.

39.    All Communications with the Sponsors concerning the Settlement, including, but not limited to, Communications relating to any actual, proposed or negotiated terms of the Settlement affecting any rights, liabilities, or releases of the Sponsors.

40.    All Documents and Communications relating to analyzing, assessing or articulating any Claims against any of the "Released Parties" (as defined in the Plan), including, but not limited to, Claims against the Disinterested Directors or other Insiders.

41.    All Documents and Communications regarding the Releases by the Debtors contemplated in Article VIII.C of the Plan, including but not limited to (i) the Claims being released by the Debtors, (ii) any analysis of the value of Claims being released, and (iii) the value received by the Debtors for such releases.

42.    All Documents and Communications regarding the Claims Against Third Parties described in the Disclosure Statement, including but not limited to (i) the value of such claims, (ii) the Debtors' analysis of such claims, and (iii) what portion of the amount of the TCEH Settlement Claim, if any, is on account of such claim.

-15-

## INTERCOMPANY CLAIMS SETTLEMENT

43.     All Documents and Communications relating to the Debtors' and/or the Disinterested Directors' approval of the Disclosure Statement and/or the Plan.

44.     All Documents and Communications relating to the cost of litigating the Prepetition Intercompany Claims, including, but not limited to, any budget or assessment of actual or potential litigation costs.

45.     All Documents relating to any analysis or consideration of the extent to which the Settlement constitutes adequate consideration for the "releases and other benefits provided under the Plan," as described in the Plan.

46.     All draft and final versions of the Plan and/or any other Restructuring that were provided to or reviewed by the EFIH Independent Manager.

47.     All Documents and Communications by and among the Disinterested Directors relating to their negotiation, evaluation, investigation, analysis, due diligence or assessment of the Settlement, the Settlement Agreement and/or the Plan.

48.     All Documents provided to, reviewed by, relied upon, or created by the EFIH Independent Manager in connection with any negotiation, evaluation, investigation, analysis, due diligence, or assessment of the Settlement, including, without limitation, the materials referenced on paragraphs 4, 5, 6, 8 and 9 of the EFIH Statement.

49.     All Documents and Communications between and among the Debtors, the EFIH Independent Manager, and/or other members of the Debtors' boards of directors concerning their consideration of the Prepetition Intercompany Claims and/or the Settlement.

50.     All Communications between the EFIH Independent Manager and any (a) EFIH creditors constituents, (b) creditor committees, or (c) attorneys, accountants, financial advisors,

representatives, or all other persons acting or purporting to act on behalf of the Debtors, concerning the Settlement.

51.     All Communications by the EFIH Independent Manager relating to his evaluation, investigation, analysis, due diligence, or assessment of the Prepetition Intercompany Claims or Settlement.

52.     All Documents and Communications concerning or reflecting negotiations by and among the Disinterested Directors relating to the Settlement.

53.     All Documents and Communications from and after the Petition Date regarding the Prepetition Intercompany Claims, including but not limited to (i) the value of such claims, (ii) the Debtors' analysis of such claims, and (iii) what portion of the amount of the TCEH Settlement Claim, if any, is on account of such claim.

54.     All Documents and Communications concerning the "significant input" that was provided by the "Creditors' Committees and other creditor groups" in connection with the Settlement, as described in the Disclosure Statement.

55.     All Documents and Communications relating to the "arms'-length negotiations between the Debtors (including each Debtor's disinterested director(s) and managers)" in connection with the Settlement, as described in the Disclosure Statement.

56.     All Documents and Communications relating to the term in the Settlement allowing any of the Disinterested Directors to terminate the Settlement "if any of them determines, based on the advice of counsel, that termination of the [Settlement] would be consistent with the exercise of their fiduciary duties," as described in Disclosure Statement.

57.    All Documents and Communications relating to any analysis or consideration of the extent to which "pursuing Confirmation of the Plan would be inconsistent with any Debtor's fiduciary duties," as described in the Plan.

58.    All Communications referencing or concerning the letter of April 9, 2015 from Andrew G. Dietderich to Donald L. Evans and Billie I. Williamson or the requests contained therein.

59.    All Communications relating to the timing of the announcement of the Settlement, including, but not limited to, all Communications concerning any potential delay in announcement of the Settlement to review any bids for Oncor.

60.    All draft and final versions of the *Joint Statement of Summary of Settlement of Intercompany Claims* ("Joint Statement") that were provided to, reviewed by, relied upon, or created by the EFIH Independent Manager, including any Documents or Communications relating to any modifications or proposed modifications to the Joint Statement.

## GENERAL PLAN CONFIRMATION MATTERS

61.    All Documents and Communications relating to the "classification" and "treatment of Claims and Interests," as set forth in Article III of the Plan, including, but not limited to, any considerations of whether any Claim should be included in any particular Plan class and/or together or separate from any other Claim.

62.    All Documents on which the Debtors or the Disinterested Directors intend to rely in connection with the Plan and/or the confirmation of the Plan.

63.    Documents sufficient to identify any policies, practices, and procedures with respect to the retention, storage, organization, or destruction of any document relating to these Chapter 11 Cases.