

**ABID QURESHI**
+1 212.872.8027/fax: +1 212.872.1002
aqureshi@akingump.com

August 7, 2015

VIA HAND DELIVER AND ECF

Hon. Christopher S. Sontchi
United States Bankruptcy Court, District of Delaware
824 North Market Street
5th Floor
Wilmington, DE 19801

Re:    *In re Energy Future Holdings Corp*., et al. (collectively, the "**Debtors**"), Case No.
14-10979, Docket No. 4964

Dear Judge Sontchi:

We are co-counsel to UMB Bank, N.A., as indenture trustee (the "**Trustee**") for the unsecured 11.25%/12.25% Senior Toggle Notes Due 2018 (the "**PIK Notes**").  We write in connection with the *EFIH Debtors' Partial Objection to Proof of Claim No. 6347 Filed by the Indenture Trustee for the EFIH Unsecured Notes* [ECF No. 4964] (the "**Claim Objection**").

In the Claim Objection, Energy Future Intermediate Holding Company LLC ("**EFIH**") and EFIH Finance Inc. (together with EFIH, the "**EFIH Debtors**") object to two distinct aspects of Proof of Claim No. 6347, filed by the Trustee (the "**PIK Claim**").  First, the EFIH Debtors object to the PIK Claim to the extent it seeks payment of a so-called "makewhole" premium (the "**Makewhole Objection**").  *See* Claim Obj. ¶¶ 32-49.  Second, the EFIH Debtors object to the PIK Claim to the extent it seeks postpetition interest at the rate set forth in the indenture, dated December 5, 2012, governing the PIK Notes rather than the federal judgment rate (the "**PPI Objection**").  *See id*. at  ¶¶ 50-53.

The Trustee has engaged in discussions with the EFIH Debtors on a reasonable discovery and briefing schedule in connection with the Claim Objection.  To that end, the parties have reached agreement on a briefing schedule regarding the Makewhole Objection which would have such objection heard concurrently with similar issues being briefed in connection with the EFIH second lien noteholders' entitlement to a makewhole premium.  The Trustee and the EFIH Debtors, however, have been unable to reach agreement with respect to the PPI Objection.  The EFIH Debtors insist on having the Court hear the PPI Objection on September 17, 2015 and without the opportunity for the Court to consider the full confirmation record in connection with this matter.  The Trustee believes that such hearing date is premature, prejudicial, and would not



Hon. Christopher S. Sontchi
United States Bankruptcy Court, District of Delaware
August 7, 2015
Page 2

result in an efficient use of the Court's resources.  The Court should instead determine the proper
rate of postpetition interest at or after confirmation of the Debtors' Plan.[1]

## Background

On December 16, 2014, the EFIH Debtors commenced a declaratory judgment action
against the Trustee (the "**Declaratory Judgment Action**"), seeking similar relief to the Claim
Objection.  Specifically, the EFIH Debtors sought declarations that the holders of the PIK Notes
(the "**PIK Noteholders**") (i) are not entitled to any type of optional redemption or makewhole
premium and (ii) are only entitled to postpetition interest at the contract rate if the EFIH Debtors
are solvent.  On February 6, 2015, the Trustee moved to dismiss the Declaratory Judgment
Action for lack of subject matter jurisdiction because the declarations sought by the EFIH
Debtors relied on contingencies and were not ripe for adjudication.

On June 15, 2015, the Court held in favor of the Trustee and dismissed the Declaratory
Judgment Action for lack of subject matter jurisdiction.  *See Energy Future Intermediate
Holding Co. LLC v. UMB Bank, N.A.*, 531 B.R. 499 (Bankr. D.Del. 2015).  The Court held,
among other things, that because "the parties and the Court do not know the structure of any
*confirmed* plan, whether and how much the PIK Notes will be paid, or whether the Trustee for
the PIK Notes will object to any proposed treatment of the PIK Notes in a plan," the matter was
not ripe for adjudication.  *Id.* at 514.  The Court, however, also stated that "nothing in this
Opinion limits the EFIH Debtors' ability to object to the PIK Claim or to seek to liquidate such
claim."  *Id.* at 515.

On July 9, 2015, the EFIH Debtors filed the Claim Objection.  On August 3, 2015, the
Debtors filed the Plan, which, under the Merger Scenario (as defined in the Plan), proposes
paying the PIK Notes' postpetition interest at the federal judgment rate and establishes a reserve
for postpetition interest in excess of the federal judgment rate.  *See* Plan at VII.K.

## Argument

The Trustee believes that any determination of the PPI Objection before confirmation of
the Plan would be premature, inefficient, and, potentially prejudicial to the interests of PIK
Noteholders.  The EFIH Debtors have taken the position that the PPI Objection is narrowly-

---

[1] *See Second Amended Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to
Chapter 11 of the Bankruptcy Code* [D.I. 5197] (the "**Plan**").



Hon. Christopher S. Sontchi
United States Bankruptcy Court, District of Delaware
August 7, 2015
Page 3

tailored to a legal issue of what is the meaning of the phrase the "legal rate" in Bankruptcy Code section 726(a)(5).  The Trustee disputes that the "legal rate" means solely the federal judgment rate and asserts that the determination of the "legal rate" is not merely a question of statutory interpretation, but rather should be presumed to be the contract rate, subject to the Court's consideration of the equities of the case.  More importantly, even if the Court could answer the question of what the "legal rate" means before confirmation, a holding in favor of the EFIH Debtors may not end the inquiry into the proper rate of postpetition interest to be paid on the PIK Noteholders' claim in these chapter 11 cases.  Rather, the PIK Noteholders' entitlement to contract rate postpetition interest from EFIH is also rooted in the solvent debtor exception case law, which in turn, is rooted in the application of Bankruptcy Code section 1129(b) in solvent debtor reorganizations.  This alternative analysis must be applied under the facts and circumstances related to confirmation of the Plan with the benefit of the full factual record that will be available at confirmation.  Thus, the proper time to consider the issue is during, or after, confirmation of the Plan.

I.      **Resolution of the Proper Rate of Postpetition Interest Requires the Court to Weigh Whether the Equities of the Case Entitle the PIK Noteholders to Receive Their Full Contractual Rights Under the Debtors' Plan**

The EFIH Debtors contend that the PIK Noteholders' sole avenue for receiving postpetition interest arises under Bankruptcy Code section 726(a)(5).  The EFIH Debtors correctly note that, when a chapter 11 debtor is solvent, a creditor must receive at least as much as it would under a chapter 7 liquidation in order to satisfy the "best interest of creditors test" under Bankruptcy Code section 1129(a)(7) (the "**Best Interest Test**").  *See* Claim Obj. at ¶ 51. Bankruptcy Code section 726(a)(5) requires a solvent debtor to pay postpetition interest on unsecured claims at the "legal rate" before any payments to holders of equity interests.  The EFIH Debtors argue that determination of the proper rate of postpetition interest is nothing more than a statutory interpretation exercise to determine what Congress intended the "legal rate" to mean.

This theory, however, over-simplifies the issue before the Court.  As a threshold matter, the PIK Noteholders' entitlement to postpetition interest follows not only from application of the Best Interest Test, but also from equitable considerations in solvent debtor cases.  As this Court recognized in the makewhole adversary proceeding related to the EFIH first lien notes, in solvent debtor cases, equitable considerations dictate that creditors are entitled to their full contractual rights. *In re Energy Future Holdings Corp.*, 513 B.R. 651, 660 (Bankr. D. Del. 2014) ("[T]he



Hon. Christopher S. Sontchi
United States Bankruptcy Court, District of Delaware
August 7, 2015
Page 4

available precedent consistently defers to previously contracted bargains and provisions when dealing with solvent debtors in varying situations. As a result, courts tend to look to state law in enforcing and interpreting these provisions."); *see also In re Los Angeles Dodgers LLC*, 465 B.R. 18, 32 (D. Del. 2011) (stating that in a "solvent debtor case . . . the equities strongly favor holding the debtor to his contractual obligations so long as those obligations are legally enforceable under applicable non-bankruptcy law"); *In re Gen. Growth Props., Inc.,* 451 B.R. 323, 328-29 (Bankr. S.D.N.Y 2011) (holding that solvent debtor must pay creditor the contracted default interest rate in order for the debtor to effect a cure and reinstate the debt). As the Plan filed by the Debtors is premised upon a solvent EFIH estate, the Court's analysis of the PIK Noteholders' entitlement to contract rate interest will not be limited to the statutory interpretation question of what the "legal rate" means, but the Court will also have to evaluate the facts and equities of the case.

Further, determining the meaning of the "legal rate" before confirmation is potentially nothing more than an academic exercise. First, these cases are not in chapter 7, and the Debtors' Plan does not contemplate a chapter 11 liquidation but rather a chapter 11 reorganization where EFIH's parent company is expected to offer T-Side creditors and third parties the right to purchase equity interests in Reorganized EFH and capture any appreciation in the parent company's value. Second, the Best Interest Test is not applicable as to EFH because EFH, the owner of 100% of EFIH's membership interests, is retaining 100% of its interests under the Plan and is not impaired.[2] Third, even if the Court were to determine that PIK Noteholders were limited to postpetition interest at the federal judgment rate for purposes of applying the Best Interest Test, this conclusion would not be outcome determinative because in solvent debtor reorganization cases, payment of postpetition interest at the contract rate is required in order for a reorganization plan to satisfy the "fair and equitable" test under the cram-down provisions of Bankruptcy Code section 1129(b). Bankruptcy Code section 1129(b)(2)(B) states that for a plan to be fair and equitable as to non-consenting impaired unsecured creditors, each holder of an unsecured claim must receive the allowed amount of its claim before junior classes receive any distribution (the "**Fair and Equitable Test**"). *See* 11 U.S.C. §1129(b)(2)(B). Courts considering the appropriate rate of postpetition interest under the Fair and Equitable Test have held that creditors are entitled to their full contractual rights, including contract rate postpetition interest, before junior creditors or interest holders can recover. *See e.g.*, *Official Comm. of*

---

[2] The Plan proposes that the holders of EFIH Interests will receive 100% of the "Reorganized EFIH Membership Interests", subject to dilution, and provides that such holders are impaired. The Trustee reserves all rights to argue that the holders of the EFIH Interest are (i) not impaired and/or (ii) receiving as much value as they would receive in a chapter 7 liquidation, and, as such, these holders may not raise Best Interest Test objections.



Hon. Christopher S. Sontchi
United States Bankruptcy Court, District of Delaware
August 7, 2015
Page 5

*Unsecured Creditors v. Dow Corning Corp. (In re Dow Corning Corp.)*, 456 F.3d 668, 680 (6th Cir. 2006) (holding that unsecured creditors must receive the contract rate for post-petition interest in a solvent debtor case in order to comply with the absolute priority rule); *In re Dow Corning Corp.*, 244 B.R. 678, 696 (Bankr. E.D. Mich. 1999) (finding a solvent debtor's plan was not fair and equitable because it failed to pay postpetition interest at the contract rate); *see also Consol. Rock Prods. Co. v. DuBois*, 312 U.S. 510, 527-28 (1941) (holding that, in the case of a solvent debtor, a plan of reorganization runs afoul of the absolute priority rule if equity receives value before bondholders are paid their full contract rate of interest).

Thus, determining the rate of postpetition interest accruing on the PIK Notes will implicate the facts and equities of the case. Even if the Court were to determine that the meaning of the "legal rate" is the federal judgment rate (which it is not), as the EFIH Debtors request, the Court would still have to consider the PIK Noteholders' entitlement to postpetition interest under Bankruptcy Code section 1129(b). It makes little sense to bifurcate these issues and it is appropriate to consider both at confirmation with the benefit of a fully developed factual record.

## II.    Determining the Proper Rate of Postpetition Interest Before Confirmation Is Inefficient and Will Waste Time, Money and Judicial Resources

The Court's determination of what rate of postpetition interest is required for the Plan to comply with the confirmation requirements of Bankruptcy Code section 1129 will be highly fact intensive. The analysis will be driven largely by a host of factors that are tied to the Plan and will not be fully known until the Debtors decide which Plan they intend to prosecute (Merger Scenario or Standalone Scenario) and a confirmation record is fully developed. These factors include, among other things, (i) the potential value of Reorganized EFH, including the impact of a successful REIT Reorganization (as that term is defined in the Plan), (ii) recoveries for EFH claims and interest holders under the Plan, (iii) the amount of time it will take the Debtors to achieve various conditions precedent to the effective date of the Plan, (iv) the risks that the Debtors will not be able to achieve such conditions precedent, and (v) the effect on the PIK Noteholders if the Debtors are unable to achieve such conditions precedent.

In order to develop a record for the Court, the PIK Noteholders will require discovery on these valuation and confirmation issues.[3] This discovery will necessarily include depositions regarding valuation and will likely require expert reports evaluating the feasibility of the REIT

---

[3] On July 28, 2015, the Trustee, in coordination with the EFH Official Committee of Unsecured Creditors, submitted its Initial Consolidated Discovery Requests to the Debtors seeking discovery on confirmation issues.



Hon. Christopher S. Sontchi
United States Bankruptcy Court, District of Delaware
August 7, 2015
Page 6

Reorganization.  This type of discovery will be largely duplicative of the discovery the Debtors will have to produce in connection with confirmation of the Plan.  As such, permitting the PPI Objection to continue in advance of confirmation will result in unnecessary added costs to the Debtors and divert the Debtors', the PIK Noteholders' and the Court's attention away from the more pressing matter—confirmation of the Plan and prompt closure to these bankruptcy proceedings.

The better alternative is to consider the postpetition interest issue at, or after, confirmation, when the factual record is fully developed.  In fact, the Plan seems to contemplate as much, by purporting to reserve enough cash to pay the PIK Noteholders postpetition interest at the contract rate through the Plan Effective Date.[4]  Further, the Plan does not require a ruling on the PPI Objection as a condition precedent to the Effective Date.  Thus, there would be little prejudice to the Debtors by postponing consideration of the issue until a more appropriate later date.

At bottom and as a practical matter, the PIK Noteholders' entitlement to postpetition interest at the contract rate will implicate the equities of the case at confirmation and the fair and equitable requirements of Bankruptcy Code section 1129(b).  Determining the narrow issue of what constitutes the "legal rate" under Bankruptcy Code section 726 will not obviate the need for this analysis.  As such, in order to avoid duplicative costs and unnecessary distractions, the matter should not be considered before confirmation of the Plan.  Rather, it should be heard in connection with, or after, Plan confirmation.

### Makewhole Objection Briefing

The Trustee and the Debtors have agreed on a schedule for the Makewhole Objection. The Trustee has agreed to file its opposition to the Makewhole Objection by August 28, 2015. The Debtors can submit a reply brief thereafter, at a time to be determined.  If the Court sets oral argument on the summary judgment motion filed by the Debtors in connection with the adversary proceeding against the indenture trustee for the EFIH second lien notes (the "**EFIH 2L Trustee**") regarding the EFIH second lien noteholders' entitlement to a makewhole [Adv. Proc. No. 14-50405, ECF No. 41], the Trustee and the Debtors jointly request that the Makewhole Objection be argued at the same hearing.  Counsel for the EFIH 2L Trustee has informed the parties that the EFIH 2L Trustee does not oppose this request.

---

[4] *See* Plan at VII.K.  The Trustee reserves all rights to seek discovery regarding the contemplated reserve and explore all issues in connection therewith.



Hon. Christopher S. Sontchi
United States Bankruptcy Court, District of Delaware
August 7, 2015
Page 7

Sincerely,

/s/ *Abid Qureshi*

Abid Qureshi

cc:    Andrew McGann, Esq., Kirkland & Ellis LLP
       Barry G. Felder, Esq., Foley & Lardner LLP
       Gregory A. Horowitz, Esq., Kramer Levin Naftalis & Frankel LLP