## EXHIBIT A

### (Defendants' Trial Exhibit DX1)

# Simpson Thacher & Bartlett llp

425 Lexington Avenue

New York, N.Y. 10017-3954

(212) 455-2000

Facsimile: (212) 455-2502

DIRECT DIAL NUMBER                                                                                                            E-Mail Address

August 17, 2010

Citigroup Global Markets Inc.
Goldman, Sachs & Co.
Banc of America Securities LLC
Credit Suisse Securities (USA) LLC
J.P. Morgan Securities Inc.
Morgan Stanley & Co. Incorporated

c/o Citigroup Global Markets Inc.
388 Greenwich Street
New York, New York 10013

c/o Goldman, Sachs & Co.
200 West Street
New York, New York 10282-2198,

as Dealer Managers

Ladies and Gentlemen:

We have acted as counsel to Energy Future Holdings Corp., a Texas corporation (the "Company"), Energy Future Intermediate Holding Company LLC, a Delaware limited liability company ("Intermediate Holdings"), and EFIH Finance Inc., a Delaware corporation ("EFIH Finance" and, together with Intermediate Holdings, the "Offerors"), in connection with (1) the offers of up to $2.18 billion in aggregate principal amount of 10.000% Senior Secured Notes due 2020 issued by the Offerors (the "Senior Secured Notes") and $500,000,000 in cash in exchange for the outstanding notes listed in Schedule I hereto (collectively, the "Old Notes") (the "Exchange Offers"); and (2) the execution and delivery of the Indenture among the Offerors and The Bank of New York Mellon Trust Company, N.A., as trustee (the "Trustee"), relating to the

Beijing   Hong Kong   London   Los Angeles   Palo Alto   São Paulo   Tokyo   Washington, D.C.

SIMPSON THACHER & BARTLETT LLP

Citigroup Global Markets Inc., et al.                    -2-                    August 17, 2010

Senior Secured Notes (the "Indenture"). This opinion is delivered to you pursuant to Section 5

of the Dealer Manager Agreement dated July 16, 2010 (the "Dealer Manager Agreement"),

among the Company, the Offerors and Citigroup Global Markets Inc., Goldman, Sachs & Co.,

Banc of America Securities LLC, Credit Suisse Securities (USA) LLC, J.P. Morgan Securities

Inc. and Morgan Stanley & Co. Incorporated, as Dealer Managers (the "Dealer Managers").

We have examined the Registration Statement on Form S-4 (File No. 333-168135) (the

"Registration Statement"), filed by the Offerors under the Securities Act of 1933, as amended

(the "Securities Act") on July 16, 2010; Pre-Effective Amendment No. 1 to the Registration

Statement, filed by the Offerors under the Securities Act on August 3, 2010; the Offerors'

prospectus dated August 12, 2010 (the "Prospectus"), filed by the Offerors under the Securities

Act, relating to the Exchange Offers; the related consent and letter of transmittal (the "Consent

and Letter of Transmittal"); the Indenture, dated as of October 31, 2007, among the Company,

Intermediate Holdings, Energy Future Competitive Holdings Company ("Competitive

Holdings"), and The Bank of New York Mellon Trust Company, N.A., as trustee, as

supplemented by the Supplemental Indenture, dated as of July 8, 2008, between Intermediate

Holdings and The Bank of New York Mellon Trust Company, N.A., as trustee, the Second

Supplemental Indenture, dated as of August 3, 2009, among the Company, Intermediate

Holdings, Competitive Holdings, and The Bank of New York Mellon Trust Company, N.A., as

trustee and the Third Supplemental Indenture, dated as of July 29, 2010, among the Company,

Intermediate Holdings, Competitive Holdings, and The Bank of New York Mellon Trust

Company, N.A., as trustee, pursuant to which the Old Notes were issued; the Old Notes; the

Indenture; the Pledge Agreement, dated November 16, 2009 (the "Pledge Agreement"), from

Intermediate Holdings to The Bank of New York Mellon Trust Company, N.A., as Collateral

SIMPSON THACHER & BARTLETT LLP

Citigroup Global Markets Inc., et al.      -3-      August 17, 2010

Trustee (the "Collateral Trustee"); the Joinder, dated January 12, 2010 (the "Joinder"), by The

Bank of New York Mellon Trust Company, N.A., as trustee for the Company's 10.000% Senior

Secured Notes due 2020 and acknowledged by the Collateral Trustee; the Second Joinder, dated

August 17, 2010 (the "Second Joinder"), by the Trustee and acknowledged by the Collateral

Trustee; the Collateral Trust Agreement, dated as of November 16, 2009 (taken together with the

Joinder and the Second Joinder, the "Collateral Trust Agreement"), among Intermediate

Holdings, The Bank of New York Mellon Trust Company, N.A., as First Lien Trustee, the other

Secured Debt Representatives named therein and the Collateral Trustee; the Additional Secured

Debt Designation, dated August 17, 2010, relating to the Senior Secured Notes (the

"Designation"), by Intermediate Holdings and acknowledged by the Collateral Trustee; and the

Dealer Manager Agreement. We have also examined a copy of the financing statement (the

"Delaware Financing Statement"), naming Intermediate Holdings as debtor and the Collateral

Trustee as secured party, which was filed in the Office of the Secretary of State of Delaware (the

"Delaware Filing Office") on November 16, 2009. In addition, we have examined, and have

relied as to matters of fact upon, the documents delivered to you at the closing and upon

originals, or duplicates or certified or conformed copies, of such corporate and other records,

agreements, documents and other instruments and such certificates or comparable documents of

public officials and of officers and representatives of the Company and the Offerors and have

made such other investigations, as we have deemed relevant and necessary in connection with

the opinions hereinafter set forth.

In such examination, we have assumed the genuineness of all signatures, the legal

capacity of natural persons, the authenticity of all documents submitted to us as originals, the

conformity to original documents of all documents submitted to us as duplicates or certified or

SIMPSON THACHER & BARTLETT LLP

Citigroup Global Markets Inc., et al.                    -4-                    August 17, 2010

conformed copies and the authenticity of the originals of such latter documents.  We have also

assumed that (i) the Company is validly existing and in good standing under the law of the State

of Texas; (ii) the Company has duly authorized, executed and delivered the Dealer Manager

Agreement in accordance with the law of the State of Texas; (iii) the execution, delivery and

performance by the Company of the Dealer Manager Agreement does not violate the laws of any

jurisdiction (except that no such assumption is made with respect to the federal law of the United

States and the law of the State of New York, the Delaware General Corporation Law and the

Delaware Limited Liability Company Act); and (v) the execution, delivery and performance by

the Company of the Dealer Manager Agreement does not constitute a violation or breach of any

agreement or instrument (except no such assumption is made with respect to the documents

listed on Schedule II hereto) which is binding upon the Company or its charter, by-laws or

similar organizational documents. We have further assumed that (1) Intermediate Holdings has

rights in the Collateral (as defined in the Prospectus) existing on the date hereof and will have

rights in property which becomes Collateral after the date hereof and (2) "value" (as defined in

Section 1-201(44) of the Uniform Commercial Code as in effect on the date hereof in the State of

New York (the "New York UCC")) has been given by the holders of the Senior Secured Notes to

Intermediate Holdings for the security interests and other rights in the Collateral.

Based upon the foregoing, and subject to the qualifications, assumptions and limitations

stated herein, we are of the opinion that:

> 1.      Intermediate Holdings has been duly formed and is validly existing and in
> good standing as a limited liability company under the law of the State of Delaware and
> has full limited liability company power and authority to conduct its business as
> described in the Prospectus.

SIMPSON THACHER & BARTLETT LLP

Citigroup Global Markets Inc., et al.                    -5-                         August 17, 2010

2.       EFIH Finance has been duly incorporated and is validly existing and in good standing as a corporation under the law of the State of Delaware and has full corporate power and authority to conduct its business as described in the Prospectus.

3.       The Dealer Manager Agreement has been duly authorized, executed and delivered by the Offerors and duly executed and delivered in accordance with the law of New York by the Company and, assuming that the Dealer Manager Agreement is the valid and legally binding obligation of the Dealer Managers, constitutes a valid and legally binding obligation of each of the Offerors and the Company enforceable against each of the Offerors and the Company in accordance with its terms.

4.       The Indenture has been duly authorized, executed and delivered by the Offerors and duly qualified under the Trust Indenture Act of 1939, as amended (the "Trust Indenture Act") and, assuming that the Indenture is the valid and legally binding obligation of the Trustee, constitutes a valid and legally binding obligation of each of the Offerors enforceable against each of the Offerors in accordance with its terms.

5.       The Senior Secured Notes have been duly authorized, executed and issued by the Offerors and, assuming due authentication thereof by the Trustee and upon exchange of the Senior Secured Notes for Old Notes in accordance with the Prospectus and the Consent and Letter of Transmittal, will constitute valid and legally binding obligations of each of the Offerors enforceable against each of the Offerors in accordance with their terms and entitled to the benefits of the Indenture.

6.       The Pledge Agreement has been duly authorized, executed and delivered by Intermediate Holdings and constitutes a valid and legally binding obligation of Intermediate Holdings, enforceable against Intermediate Holdings in accordance with its terms.

7.       The Collateral Trust Agreement has been duly authorized, executed and delivered by Intermediate Holdings and, assuming that the Collateral Trust Agreement, including the Designation, is the valid and legally binding obligation of the Collateral Trustee, the Collateral Trust Agreement, including the Designation, constitutes a valid and legally binding obligation of Intermediate Holdings enforceable against Intermediate Holdings in accordance with its terms.

8.       The Pledge Agreement, together with the Designation, creates a valid security interest in favor of the Collateral Trustee for the benefit of the Trustee and the holders of the Senior Secured Notes in the collateral described therein in which a security interest may be created under Article 9 of the New York UCC (the "Article 9 Collateral").

9.       The statements made in the Prospectus under the caption "Description of the Notes," insofar as they purport to constitute summaries of certain terms of documents

SIMPSON THACHER & BARTLETT LLP

Citigroup Global Markets Inc., et al.                    -6-                    August 17, 2010

referred to therein, constitute accurate summaries of the terms of such documents in all material respects.

10.    The issue and exchange of the Senior Secured Notes by the Offerors, the execution, delivery and performance by the Company and the Offerors of the Dealer Manager Agreement, the execution and delivery of the Indenture by the Offerors and the execution and delivery of the Designation by Intermediate Holdings will not breach or result in a default under any of the agreements or instruments identified on Schedule II hereto, nor will such actions violate the certificate of formation or limited liability company agreement of Intermediate Holdings, the certificate of incorporation or by-laws of EFIH Finance or any U.S. federal or New York state statute or the Delaware Limited Liability Company Act or the Delaware General Corporation Law or any rule or regulation that has been issued pursuant to any U.S. federal or New York state statute or the Delaware Limited Liability Company Act or the Delaware General Corporation Law or any order known to us issued pursuant to any U.S. federal or New York state statute or the Delaware Limited Liability Company Act or the Delaware General Corporation Law by any court or governmental agency or body having jurisdiction over the Company, the Offerors or any of their properties, except that it is understood that no opinion is given in this paragraph 10 with respect to any matters subject to federal laws and regulations relating to the generation, storage, sale or transmission of electricity or the ownership or operation of generating facilities (including, without limitation, nuclear generating facilities) or transmission facilities (including, without limitation, the Atomic Energy Act of 1954, as amended, the Federal Power Act, the Energy Policy Act of 2005, the Interstate Commerce Act and the Public Utility Holding Company Act of 2005 and in each case the rules and regulations promulgated thereunder and such other rules, regulations and orders administered by the Federal Energy Regulatory Commission, the U.S. Nuclear Regulatory Commission and the U.S. Environmental Protection Agency).

11.    No consent, approval, authorization, order, registration or qualification of or with any U.S. federal or New York state governmental agency or body or any Delaware state governmental agency or body acting pursuant to the Delaware Limited Liability Company Act or the Delaware General Corporation Law or, to our knowledge, any U.S. federal or New York state court or any Delaware state court acting pursuant to the Delaware Limited Liability Company Act or the Delaware General Corporation Law is required for the issue and exchange of the Senior Secured Notes by the Offerors, compliance by the Company and the Offerors with all of the provisions of the Dealer Manager Agreement, compliance by the Offerors with all of the provisions of the Indenture and compliance by Intermediate Holdings with all of the provisions of the Pledge Agreement and the Collateral Trust Agreement, including the Designation, except for the registration under the Securities Act of the Senior Secured Notes, the qualification of the Indenture under the Trust Indenture Act, filings required for the perfection of the security interest granted pursuant to the Pledge Agreement and such consents, approvals, authorizations, registrations or qualifications as may be required under state securities or Blue Sky laws in connection with the Exchange Offers and except that it is understood that no opinion is given in this paragraph 11 with respect to any matters subject to federal

SIMPSON THACHER & BARTLETT LLP

Citigroup Global Markets Inc., et al.                    -7-                              August 17, 2010

laws and regulations relating to the generation, storage, sale or transmission of electricity or the ownership or operation of generating facilities (including, without limitation, nuclear generating facilities) or transmission facilities (including, without limitation, the Atomic Energy Act of 1954, as amended, the Federal Power Act, the Energy Policy Act of 2005, the Interstate Commerce Act and the Public Utility Holding Company Act of 2005 and in each case the rules and regulations promulgated thereunder and such other rules, regulations and orders administered by the Federal Energy Regulatory Commission, the U.S. Nuclear Regulatory Commission and the U.S. Environmental Protection Agency).

12.     None of the Offerors is, and after giving effect to the issuance of the Senior Secured Notes in exchange for the Old Notes as described in the Prospectus, none of them will be, an "investment company" within the meaning of and subject to regulation under the Investment Company Act of 1940, as amended.

We express no opinion as to the law of the State of Delaware (other than the Delaware General Corporation Law and the Delaware Limited Liability Company Act); however, we have reviewed Article 9 of the Uniform Commercial Code in effect in the State of Delaware as set forth in the Commerce Clearing House, Inc. Secured Transactions Guide as supplemented through August 3, 2010 (the "Delaware UCC") and, based solely on such review, we advise you that (a) the Delaware Financing Statement is in appropriate form for filing in the Delaware Filing Office and (b) the Delaware Financing Statement having been filed in the Delaware Filing Office and the Designation having been delivered, the Collateral Trustee has a perfected security interest for the benefit of the Trustee and the holders of the Senior Secured Notes in that portion of the Article 9 Collateral in which a security interest is perfected by filing a financing statement in the Delaware Filing Office.

Our opinions set forth in paragraphs 3, 4, 5, 6, 7 and 8 above are subject to (i) the effects of bankruptcy, insolvency, fraudulent conveyance, reorganization, moratorium and other similar laws relating to or affecting creditors' rights generally, (ii) general equitable principles (whether considered in a proceeding in equity or at law) and (iii) an implied covenant of good faith and

SIMPSON THACHER & BARTLETT LLP

Citigroup Global Markets Inc., et al.                    -8-                    August 17, 2010

fair dealing. Our opinion in paragraph 3 above is further limited by considerations of public

policy. Our opinions in paragraphs 6 and 7 above also are subject to the qualification that certain

provisions of the Pledge Agreement and the Collateral Trust Agreement may not be enforceable

in whole or in part, although the inclusion of such provisions would not render the Pledge

Agreement or the Collateral Trust Agreement invalid, and the Pledge Agreement and the

Collateral Trust Agreement and the law of the State of New York contain adequate remedial

provisions for the practical realization of the rights and benefits afforded thereby.

Our opinion in paragraph 8, and our advice in the second preceding paragraph, are

limited to Article 9 of the New York UCC or the Delaware UCC, as the case may be, and,

therefore, such opinion and advice paragraphs do not address (i) collateral of a type not subject

to Article 9 of the New York UCC or the Delaware UCC, as the case may be and (ii) the issue of

which law governs perfection of the security interests granted in the collateral covered by this

opinion letter.

In addition, we express no opinion as to the validity, legally binding effect or

enforceability of (i) the waiver of rights and defenses contained in Section 4.06 of the Indenture

or (ii) Section 13.13 of the Indenture relating to the severability of provisions of the Indenture.

We express no opinion and render no advice with respect to:

> (i)      perfection of any security interest in (1) any collateral of a type represented by a certificate of title and (2) any collateral consisting of money or Cash Equivalents;

> (ii)     the effect of § 9-315(a)(2) of the New York UCC with respect to any proceeds of Collateral that are not identifiable;

> (iii)    perfection of any security interest whose priority is subject to Section 9-334 of the New York UCC;

> (iv)     the priority of any security interest;

SIMPSON THACHER & BARTLETT LLP

Citigroup Global Markets Inc., et al.                    -9-                    August 17, 2010

        (v)     the effect of Section 552 of the U.S. Bankruptcy Code (11 U.S.C. 552) (relating to property acquired by a pledgor after the commencement of a case under the U.S. Bankruptcy Code with respect to such pledgor) and Section 506(c) of the U.S. Bankruptcy Code (11 U.S.C. 506(c)) (relating to certain costs and expenses of a trustee in preserving or disposing of collateral); or

        (vi)    the effect of any provision of the Pledge Agreement or the Collateral Trust Agreement which is intended to establish any standard other than a standard set forth in the New York UCC as the measure of the performance by any party thereto of such party's obligations of good faith, diligence, reasonableness or care or of the fulfillment of the duties imposed on any secured party with respect to the maintenance, disposition or redemption of collateral, accounting for surplus proceeds of collateral or accepting collateral in discharge of liabilities.

Our opinions set forth in paragraphs 10 and 11 above are limited to our review of only statutes, rules and regulations that, in our experience, are customarily applicable to transactions of the type contemplated by the Prospectus, the Dealer Manager Agreement and the Indenture, the Pledge Agreement and the Collateral Trust Agreement and for the purposes of such opinions we have assumed that the Exchange Offers were conducted in conformity with the terms set forth in the Prospectus and the Consent and Letter of Transmittal.  With regard to the determination of the Total Notes Consideration and the Total Cash Consideration (each as defined in the Prospectus), offered in the Exchange Offers, we note that our opinions in paragraphs 10 and 11 are based on our analysis of the particular facts and circumstances of the Exchange Offers, the plain language of Rule 14e-1 ("Rule 14e-1") promulgated under the Exchange Act and the absence of any explicit indication in the statutes, rules and regulations applicable as it relates to notice of changes in consideration offered in a tender offer to the contrary, we have concluded that the consideration determination arrangements described in the Prospectus is consistent with the requirements of Rule 14e-1; however, we note that we found no binding judicial or Securities and Exchange Commission authority on the question.

SIMPSON THACHER & BARTLETT LLP

Citigroup Global Markets Inc., et al.                    -10-                    August 17, 2010

We understand that, with respect to matters of Texas law, you are relying on the opinions of Vinson & Elkins LLP and Andrew Wright, Esq., Vice President and Associate General Counsel of the Company, and, with respect to matters of federal laws and regulations relating to the generation, storage, sale or transmission of electricity or the ownership or operation of generating facilities or transmission facilities, you are relying on the opinion of Morgan, Lewis & Bockius LLP, each dated the date hereof.

We do not express any opinion herein concerning any law other than the law of the State of New York, the federal law of the United States, the Delaware General Corporation Law and the Delaware Limited Liability Company Act.

This opinion letter is rendered to you in connection with the above-described transaction. This opinion letter may not be relied upon by you for any other purpose, or relied upon by, or furnished to, any other person, firm or corporation without our prior written consent, except that each of the Trustee and the Collateral Trustee may rely upon paragraphs 1, 2, 4, 5, 6, 7, 8, 11 and 12 above, subject to the qualifications, assumptions and limitations relating thereto.

Very truly yours,

*Simpson Thacher + Bartlett LLP*

SIMPSON THACHER & BARTLETT LLP

SIMPSON THACHER & BARTLETT LLP

## Schedule I

| Issuer | Title of Old Notes | Total Accepted for Exchange |
|---|---|---|
| the Company | 10.875% Senior Notes due 2017 | $1,427,737,000 |
| the Company | 11.250%/12.000% Senior Toggle Notes due 2017 | $2,165,938,000 |

SIMPSON THACHER & BARTLETT LLP

SIMPSON THACHER & BARTLETT LLP

<u>Schedule II</u>

1.  Revolving Credit Agreement, dated as of October 10, 2007, among Oncor Electric Delivery Company LLC, the lenders listed in Schedule 2.01 thereof, JPMorgan Chase Bank, N.A., as Administrative Agent, Citibank, N.A., as Syndication Agent, Credit Suisse, Cayman Island Branch, Goldman Sachs Credit Partners L.P., Lehman Commercial Paper Inc. and Morgan Stanley Senior Funding, Inc. as Co-Documentation Agents, J.P. Morgan Securities Inc., Citigroup Global Markets Inc., Credit Suisse Securities (USA) LLC, Goldman Sachs Credit Partners L.P., Lehman Brothers Inc. and Morgan Stanley Senior Funding, Inc., as Joint Lead Arrangers and Bookrunners, JPMorgan Chase Bank, N.A., as Swingline Lender and JPMorgan Chase Bank, N.A. and Citibank, N.A. as Fronting Banks.

2.  Indenture, dated as of October 31, 2007, among Energy Future Holdings Corp., the guarantors named therein and The Bank of New York Mellon Trust Company, N.A. (as successor to The Bank of New York), as trustee, as supplemented by the Supplemental Indenture, dated as of July 8, 2008, between Energy Future Intermediate Holding Company LLC and The Bank of New York Mellon Trust Company, N.A., as trustee and the Second Supplemental Indenture, dated as of August 3, 2009, among Energy Future Holdings Corp., the guarantors named therein and The Bank of New York Mellon Trust Company, N.A., as trustee, and the Third Supplemental Indenture, dated as of July 29, 2010, among Energy Future Holdings Corp., the guarantors named therein and The Bank of New York Mellon Trust Company, N.A., as trustee, pursuant to which the 10.875% Senior Notes due 2017 and the 11.250%/12.000% Senior Toggle Notes due 2017 were issued.

3.  Indenture, dated as of October 31, 2007, as supplemented by the Supplemental Indenture, dated as of December 6, 2007 and the Second Supplemental Indenture, dated as of August 3, 2009, each among Texas Competitive Electric Holdings Company LLC, TCEH Finance, Inc., the guarantors named therein and The Bank of New York Mellon (formerly known as The Bank of New York), as trustee, pursuant to which Texas Competitive Electric Holdings Company LLC's and TCEH Finance, Inc.'s 10.25% Senior Notes due 2015, 10.25% Senior Notes due 2015, Series B, and 10.50%/11.25% Senior Toggle Notes due 2016 were issued.

4.  Indenture, dated as of November 16, 2009, among Energy Future Holdings Corp., the guarantors named therein and The Bank of New York Mellon Trust Company, N.A., as trustee, pursuant to which the 9.75% Senior Secured Notes due 2019 of Energy Future Holdings Corp. were issued.

5.  Indenture, dated as of November 16, 2009, among Energy Future Intermediate Holding Company LLC, EFIH Finance Inc. and The Bank of New York Mellon Trust Company, N.A., as trustee, pursuant to which the 9.75% Senior Secured Notes due 2019 of Energy Future Intermediate Holding Company LLC and EFIH Finance Inc. were issued.

6.    Collateral Trust Agreement, dated as of November 16, 2009, among Energy Future Intermediate Holding Company LLC, The Bank of New York Mellon Trust Company, N.A., as First Lien Trustee, the other Secured Debt Representatives named therein and The Bank of New York Mellon Trust Company, N.A., as Collateral Trustee.

7.    Pledge Agreement, dated November 16, 2009, from Energy Future Intermediate Holding Company LLC to The Bank of New York Mellon Trust Company, N.A., as Collateral Trustee.

8.    Indenture, dated as of January 12, 2010, as supplemented by the First Supplemental Indenture, dated as of March 16, 2010, the Second Supplemental Indenture, dated as of April 13, 2010, the Third Supplemental Indenture, dated as of April 14, 2010, the Fourth Supplemental Indenture, dated as of May 21, 2010, the Fifth Supplemental Indenture, dated as of July 2, 2010, the Sixth Supplemental Indenture, dated as of July 6, 2010, and the Seventh Supplemental Indenture, dated as of July 7, 2010, each among Energy Future Holdings Corp., the guarantors named therein and The Bank of New York Mellon Trust Company, N.A., as trustee, pursuant to which the 10.000% Senior Secured Notes due 2020 of Energy Future Holdings Corp. were issued.

9.    Energy Future Holdings Corp. Senior Notes, issued in November 2004, in the following series:

- 5.550% Series P Senior Notes due November 15, 2014;

- 6.500% Series Q Senior Notes due November 15, 2024; and

- 6.550% Series R Senior Notes due November 15, 2034.

10.    The following Oncor Electric Delivery Company LLC Senior Notes and Debentures:

a)    Oncor Electric Delivery Company LLC Senior Notes, issued in May 2002 in the following series:

- 6.375% Fixed Senior Notes due 2012; and

- 7.000% Fixed Senior Notes due 2032.

b)    Oncor Electric Delivery Company LLC Senior Notes, issued in December 2002 in the following series:

- 6.375% Fixed Senior Notes due 2015; and

- 7.250% Fixed Senior Notes due 2033.

c)    Oncor Electric Delivery Company LLC 7.000% Fixed Debentures due 2022 issued in August 2002.

SIMPSON THACHER & BARTLETT LLP

    d)      Oncor Electric Delivery Company LLC Senior Secured Notes, issued in September 2008 in the following series:

- 5.95% Senior Secured Notes due 2013;

- 6.80% Senior Secured Notes due 2018; and

- 7.50% Senior Secured Notes due 2038.

11.    Investor Rights Agreement, dated as of November 5, 2008, by and among Oncor Electric Delivery Company LLC, Oncor Electric Delivery Holdings Company LLC, Texas Transmission Investment LLC and Energy Future Holdings Corp.