IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) ) | Chapter 11 |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) ) | Case No. 14-10979 (CSS) |
| Debtors. | ) ) ) | (Jointly Administered) |

**OBJECTION OF THE PENSION BENEFIT GUARANTY
CORPORATION TO THE AMENDED DISCLOSURE STATEMENT
FOR THE THIRD AMENDED JOINT PLAN OF REORGANIZATION OF
ENERGY FUTURE HOLDINGS CORP., ET AL.,
<u>PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE</u>**

The Pension Benefit Guaranty Corporation ("PBGC"), on its own and on behalf of the EFH Retirement Plan (the "EFH Plan") and the Oncor Retirement Plan (the "Oncor Plan," and together with the EFH Plan, the "Pension Plans"), hereby objects to the Debtors' proposed *Amended Disclosure Statement for the Third Amended Joint Plan of Reorganization of Energy Future Holdings, Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code* (Docket No. 5246, the "Disclosure Statement").  The Disclosure Statement should not be approved because it fails to provide "adequate information" as defined under 11 U.S.C. § 1125(a) with regard to: (1) the status of the Pension Plans and (2) the impact of PBGC's contingent claims of approximately $1 billion.  PBGC has conveyed its concerns to the Debtors and is hopeful that this Objection will be resolved prior to the September 17, 2015 Disclosure Statement Hearing.

---

[1] The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810.  The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201.  Due to the large number of debtors in these chapter 11 cases, for which joint administration has been granted, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com

## BACKGROUND

A.   **PBGC and the Employment Retirement Security Act**

1.   PBGC is a United States government agency that administers the nation's pension insurance program under Title IV of the Employee Retirement Income Security Act of 1974 ("ERISA").[2] The program guarantees a secure, predictable retirement for approximately 41 million American workers.[3] When a pension plan covered by Title IV terminates without sufficient assets to pay promised benefits, PBGC typically becomes the statutory trustee of the plan and pays covered benefits up to the limits established by Title IV.[4]

2.   Pursuant to ERISA, the sponsor of a pension plan covered by Title IV and the sponsor's controlled group members are financially responsible for the pension plan.[5] The responsibilities of the plan sponsor and controlled group members to a pension plan include, *inter alia*, (1) paying the statutorily required minimum funding contributions to the pension plan;[6] and (2) paying statutory premiums to PBGC.[7]

3.   Upon termination of a pension plan, the sponsor and each member of its controlled group are liable to PBGC for the unfunded benefit liabilities of the pension plan

---

[2] 29 U.S.C. §§ 1301-1461 (2012, Supp. I 2013).
[3] 2014 PBGC Annual Management Report at 2, available at http://www.pbgc.gov/about/reports/ar2014.html.
[4] *See* 29 U.S.C. §§ 1321, 1322, and 1361.
[5] A group of trades or businesses under common control, referred to as a "controlled group," includes, for example, a parent and its 80% owned subsidiaries. Another example includes brother-sister groups of trades or businesses under common control. *See* 29 U.S.C. § 1301(14)(A), (B); 26 U.S.C. § 414 (b), (c); 26 C.F.R. §§ 1.414(b)-1, 1.414(c)-1, and 1.414(c)-2.
[6] 26 U.S.C. 412(c)(11)(2007) (effective for pension plan years beginning on or before Dec. 31, 2007); 29 U.S.C.A. § 1082(c)(11)(2007) (same); *see also* 26 U.S.C. § 412(b)(1), (2) (2009) (effective for pension plan years beginning after Dec. 31, 2007); 29 U.S.C.A. § 1082(b)(1), (2), (2009) (same).
[7] 29 U.S.C. §§ 1306, 1307(e)(2).

("Unfunded Benefit Liabilities").[8] In addition, the sponsor and controlled group members are each liable for termination premiums of $1,250 per pension plan participant per year for three years[9] ("Termination Premiums," and together with the Unfunded Benefit Liabilities, the "Termination Liabilities"). If a pension plan terminates while the plan sponsor or any controlled group member is attempting to reorganize in Chapter 11, their liability to PBGC for Termination Premiums is a post-confirmation liability of the reorganized debtor(s) and, thus, is not a dischargeable claim or debt within the meaning of 11 U.S.C. §§ 101-1532 (as amended and applicable to these bankruptcy cases, the "Bankruptcy Code").[10]

4. All liabilities of the plan sponsor and controlled group members with regard to the pension plan, as outlined above, are joint and several.[11]

5. ERISA provides the exclusive means for termination of a pension plan. A plan sponsor can initiate a standard termination or a distress termination.[12] A standard termination requires sufficient assets to pay all of the pension plan's promised benefits.[13] A distress termination requires a showing, *inter alia*, that each plan sponsor and controlled group member satisfies one of the statutory financial distress criteria.[14] PBGC itself can also initiate an

---

[8] 29 U.S.C. § 1362(a), (b).
[9] *See* 29 U.S.C. 1306 (a)(7), as amended by § 8101(b) the Deficit Reduction Act of 2005 (Pub. L. 109-B171) and by §§ 401(b) and 402(g)(2)(B) of the Pension Protection Act of 2006 (Pub. L. 109-B280).
[10] *See* 29 U.S.C. 1306(a)(7)(B).
[11] 29 U.S.C. §§ 1082(c)(11)(B), 1307(e)(2), 1362.
[12] *See* 29 U.S.C. 1341(a)(1); *see also Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 446 (1999).
[13] *See* 29 U.S.C. § 1341(b)(2)(A)(i)(III).
[14] *See* 29 U.S.C. 1341(c)(2)(B).

involuntary termination of a pension plan if it determines that the applicable statutory criteria are met.[15]

6.  As the statutory trustee of a terminated pension plan, PBGC has the authority to collect all amounts owed to the pension plan.[16]

**B.  The Debtors and the Pension Plans**

7.  On April 29, 2014, the Debtors filed voluntary petitions under Chapter 11 of the Bankruptcy Code. This Court ordered joint administration of the Debtors' Chapter 11 cases for procedural purposes under case number 14-10979 (CSS).

8.  Debtor Energy Future Holdings Corp. ("EFH") sponsors the EFH Plan, which has 1,158 participants and Unfunded Benefit Liabilities of $93,800,000. Non-debtor Oncor Electric Delivery Company, LLC ("Oncor") sponsors the Oncor Plan, which has 24,531 participants and Unfunded Benefit Liabilities of $814,300,000.

9.  The Pension Plans are covered by Title IV of ERISA. EFH, the other debtors, Oncor and other non-debtor affiliates of EFH are members of the Pension Plans' controlled group ("EFH Controlled Group").

10.  The Pension Plans together cover approximately 25,689 employees, former employees, and retirees, and the estimated Unfunded Benefit Liabilities of the Pension Plans are approximately $908,100,000 on a termination basis.  If the Pension Plans were to terminate, the EFH Controlled Group would be jointly and severally liable for the Pension Plans' Unfunded Benefit Liabilities, unpaid premiums, and unpaid minimum funding contributions.[17] Additionally, the reorganized Debtors would be liable for Termination Premiums of

---

[15] 29 U.S.C. § 1342.
[16] *See* 29 U.S.C. § 1082(c), 1342(d), 1362(a), (c); 26 U.S.C. 412(c).
[17] *See* 29 U.S.C. §§ 1301(a)(18), 1306(a)(7), 1362(a)-(c).

4

approximately $96,333,750.  In total, Termination Liabilities owed to PBGC by the Debtors, and their non-debtor controlled group members, would exceed $1 billion.

11. In connection with the 2007 Acquisition[18] and pursuant to that certain 2007 Oncor Separation Agreement,[19] Oncor is obligated to pay a portion of the EFH Plan liabilities (the "Oncor Guarantee").  The Oncor Guarantee is further protected by the Oncor Ring-Fencing Measures.[20]

12. On August 10, 2015, the Debtors filed the Disclosure Statement and *Third Amended Joint Plan of Reorganization* (Docket No. 5245, the "POR").  The Disclosure Statement and POR do not provide adequate information about the Pension Plans, Debtors' intentions with respect to the Pension Plans, or PBGC's claims.  Without this information, creditors cannot ascertain the potential risk to the Pension Plans and PBGC, and in turn, determine whether the POR is in the best interests of creditors.

## APPLICABLE LEGAL STANDARD

13. The primary purpose of a disclosure statement is to provide creditors adequate information necessary to understand and accept, or reject, the proposed plan of reorganization. Bankruptcy Code § 1125(a)(1) defines "adequate information" as:

> Information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor…that would enable a hypothetical reasonable investor…to make an informed judgment about the plan.

---

[18] As described in the Disclosure Statement section III.B., at p. 51.
[19] Separation Agreement By and Between TXU Corp. and Oncor Delivery Holdings Company LLC, dated as of October 10, 2007.
[20] As described in the Disclosure Statement section II.B.4.(b), at p. 36.

In determining whether a disclosure statement contains adequate information, the court must consider "the complexity of the case, the benefit of additional information to creditors…and the cost of providing additional information."[21]

## OBJECTION

14. The Disclosure Statement should not be approved because it fails to provide adequate information about the Pension Plans, the Debtors' financial obligations with respect to the Pension Plans, and the impact of PBGC's claims. The Disclosure Statement should (i) include a detailed description of the Pension Plans and their sponsors; (ii) explicitly state the Debtors' intentions with respect to the Pension Plans; (iii) disclose the nature and amounts of PBGC's claims; and (iv) the effect of such claims on the POR if one or both of the Pension Plans terminate. This information is necessary for creditors to make an informed decision about whether to accept or reject the POR and could be included by the Debtors at a negligible cost.

### A. The Disclosure Statement fails to disclose the status of the Pension Plans.

15. The Disclosure Statement does not adequately address whether the Pension Plans will remain ongoing or be terminated, or the potential costs to the Debtors associated with either of those scenarios. If the Debtors' intention is to continue one or both of the Pension Plans, the Disclosure Statement and POR should provide that the Pension Plan(s) will be continued in accordance with their terms, the sponsors will satisfy the minimum funding contribution standards[22] and be liable for the payment of PBGC premiums,[23] and will administer the Pension Plan(s) in accordance with the provisions of ERISA and the Internal Revenue Code. The

---

[21] 11 U.S.C. § 1125(a)(1).
[22] In accordance with 26 U.S.C. §§ 412, 430, and 29 U.S.C. §§ 1082, 1083.
[23] In accordance with 29 U.SC. §§ 1306 and 1307.

Disclosure Statement should also explain the costs associated with maintaining each Pension Plan after the effective date.

16. If the Debtors intend to terminate one or more of the Pension Plans, the Disclosure Statement should inform creditors of the impact of such termination(s). The Disclosure Statement should also explain that if one or both of the Pension Plans terminate prior to emergence, PBGC will have administrative expense claims, priority claims, and general unsecured claims against the Debtors. The Disclosure Statement should also address how the Debtors will pay the PBGC's claims, and how the reorganized debtor will pay the termination premiums, which are a post-emergence obligation.

17. Additionally, the Disclosure Statement does not provide any information about the proposed sponsor(s) for each of the Pension Plans and the resulting controlled group(s) of the sponsor(s) as a result of the Merger.[24] Under the Merger, the POR appears to cause a break-up of the EFH Controlled Group, which could result in increased risk to the Pension Plans and PBGC. If such risk exists, PBGC could seek to initiate a termination of one or both Pension Plans and cause PBGC's joint and several claims against the EFH Controlled Group to mature.

18. Furthermore, the Disclosure Statement fails to disclose any information regarding the impact of the POR on the Oncor Guarantee for the EFH Plan, and, specifically, which entity will assume the obligation under the Merger.

**B.    The Disclosure Statement fails to describe PBGC's contingent claims of $1 billion against each Debtor.**

19. The Disclosure Statement fails to disclose adequate information to creditors regarding the nature, amounts, or impact of PBGC's claims on the Debtors' estates. PBGC is one

---

[24] As defined in the Disclosure Statement at p.7.

of the Debtors' largest unsecured creditors with claims currently estimated at over $1 billion, including, but not limited to, $908,100,000 for the Unfunded Benefit Liabilities of the Pension Plans and $96,333,750 for Termination Premiums.[25]  The Termination Premiums would be a post-confirmation liability of the reorganized Debtors and is not a dischargeable claim or debt under the Bankruptcy Code.

20.     If PBGC's claims are impaired, the POR may not be confirmable over the PBGC's objection. Furthermore, because the EFH Controlled Group is jointly and severally liable for the Pension Plans' liabilities, a termination of one or both Pension Plans could threaten the feasibility of the POR.

### C.     The complexity of the Debtors' cases, the benefit to creditors of the additional information, and the negligible cost of adding the information all weigh in favor of including the additional information that PBGC requests.

21.     The Debtors' bankruptcy cases are extremely complex and, therefore, warrant sufficient information and explanation of all creditors and claims that could potentially affect the feasibility of the POR.  Disclosure of such information is critical to a creditor's ability to make an informed decision about whether to accept or reject the POR.  Moreover, the inclusion of information regarding the impact of the POR on the Pension Plans and any resulting liability should PBGC's claims mature, would be of negligible cost for the Debtors.

### RESERVATION OF RIGHTS

22.     As additional information about the Disclosure Statement and POR is continuing to become available, PBGC expressly reserves its right to further object to the Disclosure Statement and raise additional arguments at any hearing to consider the Disclosure Statement.

---

[25] PBGC has also filed unliquidated claims for statutorily required and unpaid minimum funding contributions and statutory premiums.  26 U.S.C. §§ 412, 430; 29 U.S.C. §§ 1082 and 1307.

## CONCLUSION

23. This Court should sustain PBGC's objection to the Disclosure Statement. As set forth herein, the Disclosure Statement fails to include adequate information as defined under 11 U.S.C. § 1125 of the Bankruptcy Code concerning (1) the status of the Pension Plans and (2) the potential impact of PBGC's contingent claims of approximately $1 billion.

**WHEREFORE**, PBGC requests that this Court sustain PBGC's Objection and require the Debtors to modify the Disclosure Statement as stated above to provide adequate information to creditors.

Dated: August 17, 2015　　　　　　　　　　　　　Respectfully Submitted,
　　　　　Washington, D.C.

　　　　　　　　　　　　　　　　　　　　　　/s/ Desiree M. Amador
　　　　　　　　　　　　　　　　　　　　　　ISRAEL GOLDOWITZ
　　　　　　　　　　　　　　　　　　　　　　Chief Counsel
　　　　　　　　　　　　　　　　　　　　　　CHARLES L. FINKE
　　　　　　　　　　　　　　　　　　　　　　Deputy Chief Counsel
　　　　　　　　　　　　　　　　　　　　　　JOEL W. RUDERMAN
　　　　　　　　　　　　　　　　　　　　　　Assistant Chief Counsel
　　　　　　　　　　　　　　　　　　　　　　JON M. CHATALIAN
　　　　　　　　　　　　　　　　　　　　　　DESIREE M. AMADOR
　　　　　　　　　　　　　　　　　　　　　　Attorneys
　　　　　　　　　　　　　　　　　　　　　　PENSION BENEFIT GUARANTY
　　　　　　　　　　　　　　　　　　　　　　CORPORATION
　　　　　　　　　　　　　　　　　　　　　　Office of the Chief Counsel
　　　　　　　　　　　　　　　　　　　　　　1200 K Street NW, Suite 340
　　　　　　　　　　　　　　　　　　　　　　Washington, DC 20005
　　　　　　　　　　　　　　　　　　　　　　Telephone: (202) 326-4020, ext.3625
　　　　　　　　　　　　　　　　　　　　　　Facsimile: (202) 326-4112
　　　　　　　　　　　　　　　　　　　　　　amador.desiree@pbgc.gov and
　　　　　　　　　　　　　　　　　　　　　　　　efile@pbgc.gov