**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| ENERGY FUTURE HOLDINGS CORP., et al., | Case No. 14-10979 (CSS) |
| Debtors. | (Jointly Administered) |
| | **Re: Docket Nos.: 5246** |

**OBJECTION OF THE BANK OF NEW YORK MELLON, AS INDENTURE TRUSTEE, AND THE BANK OF NEW YORK MELLON TRUST COMPANY, N.A., AS INDENTURE TRUSTEE, TO THE DISCLOSURE STATEMENT FOR THE THIRD AMENDED JOINT PLAN OF REORGANIZATION OF ENERGY FUTURE HOLDINGS CORP., ET AL., PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE**

The Bank of New York Mellon ("BNYM"), in its capacity as the PCRB Trustee,[1] and The Bank of New York Mellon Trust Company, N.A. ("BNYMTC" and, together with BNYM, "BNY"), in its capacity as the EFCH 2037 Notes Trustee, object to the *Disclosure Statement for the Third Amended Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code* (D.I. 5246) (as may be further amended or supplemented, the "Disclosure Statement"). In support of the objection, BNY respectfully states as follows.

**I.    PRELIMINARY STATEMENT**

1.    The Disclosure Statement accompanying the *Third Amended Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code* (D.I. 5244) (as may be further amended or supplemented, the "Third Amended Plan") lacks adequate information as required by section 1125(b) of title 11 of the United States Code (the "Bankruptcy Code").

---

[1] Capitalized terms not defined herein shall have the meanings ascribed to such terms in the Third Amended Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code.

2.	The Third Amended Plan classifies holders of PCRB Claims in Class C4 TCEH Unsecured Debt Claims.  The Third Amended Plan offers holders of PCRB Claims distributions consisting of an undisclosed percentage of the Reorganized EFH Common Stock, which shall be converted to an undisclosed percentage of New EFH Common Stock, and the right to purchase an undisclosed amount of New EFH Common Stock.  The Disclosure Statement also contains no clear, direct information as to the value of (i) the Reorganized EFH Common Stock to be distributed or (ii) the right to purchase the New EFH Common Stock.  The absence of such important information clearly renders the Disclosure Statement inadequate as to the distribution that will be received by holders of PCRB Claims.  Holders of PCRB Claims should not have to decide whether to vote to accept or reject the Third Amended Plan without such critical information.

3.	Unlike the prior three (3) chapter 11 plans filed by the Debtors, the Third Amended Plan does not provide *pari passu* treatment of the PCRB Claims.  Worse yet, the Third Amended Plan contains absolutely no financial analysis indicating the basis for the different treatment of the PCRB Claims.  For the same reason, the Disclosure Statement lacks adequate information to evaluate the reasonableness of the Settlement and is missing material exhibits.

4.	The Third Amended Plan also classifies holders of EFCH 2037 Note Claims in Class C6 General Unsecured Claims Against EFCH.  The Third Amended Plan provides that holders of EFCH 2037 Note Claims will be cancelled and released without any distribution on account of such claims.  Although holders of the EFCH 2037 Note Claims are deemed to reject the Plan, the Disclosure Statement should contain an explanation and analysis of the basis upon which the EFCH 2037 Note Claims have been nullified.

5. In the Debtors' rush to confirmation, the Debtors omit critical information from the Disclosure Statement, the absence of which renders it inadequate.

## II. FACTUAL BACKGROUND

### A. The PCRBs

6. BNYM serves as the PCRB Trustee with respect to multiple series of pollution control revenue bonds or pollution control bonds (the "PCRBs"). As of the Petition Date, principal amounts outstanding under the PCRBs totaled approximately $875 million in the aggregate, with interest rates generally ranging from 0.29% to 8.25%, and original maturities ranging from June 1, 2021, to March 1, 2041. At this time, there are no outstanding letters of credit under the TCEH Credit Agreement. The PCRBs are unsecured obligations of TCEH.

7. The PCRB Trustee timely filed unsecured proofs of claim relating to the PCRBs (excluding any PCRBs that have been repurchased by TCEH and held in a custody account (the "Repurchased PCRBs")) in the aggregate amount of $1.087 billion, including principal, plus interest and fees.

### B. EFCH 2037 Notes

8. BNYMTC serves as the EFCH 2037 Notes Trustee under that certain indenture, dated as of December 1, 1995, for the EFCH 2037 Notes originally due January 30, 2037, by and among EFCH, as issuer, and BNYMTC, as EFCH 2037 Notes Trustee. As of the Petition Date, approximately $9 million in principal amount of the EFCH 2037 Notes were outstanding, including approximately $1 million of floating-rate notes and $8 million of 8.175% notes. The EFCH 2037 Notes are unsecured obligations of EFCH and are subordinate to EFCH's other prepetition funded indebtedness.

9. The EFCH 2037 Notes Trustee's fees and expenses, however, are *not* subordinated. See EFCH 2037 Notes Indenture at § 1502 ("Nothing in Section 1501 or in this Section 1502 shall apply to claims of, or payments to, the Trustee under or pursuant to Section 907.").

10. The EFCH 2037 Notes Trustee timely filed unsecured proofs of claim relating to the EFCH 2037 Notes in the aggregate amount of $9.0 million, plus interest and fees.

### C. The Debtors' Plans and Related Filings

11. On April 29, 2014 (the "Petition Date"), each of the Debtors filed a voluntary petition with the Court under chapter 11 of the Bankruptcy Code. The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. The Court has entered a final order for joint administration of these chapter 11 cases.

12. On April 14, 2015, the Debtors filed the *Disclosure Statement for the Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code* (D.I. 4143).

13. On April 14, 2015, the Debtors filed the *Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code* (D.I. 4142) (the "Original Plan").

14. The Original Plan appeared to provide that the PCRB Claims would receive treatment *pari passu* with the holders of the TCEH Second Lien Note Claims, the TCEH Unsecured Note Claims, and General Unsecured Claim Against the TCEH Debtors Other Than EFCH, with a full (not "limited") waiver of the TCEH First Lien Deficiency Claims. *See* Original Plan at Art. III.B.30 and 31 (regarding treatment of Classes C4 and C5).

15. On July 2, 2015, the Court entered the *Order (A) Scheduling Certain Hearing Dates and Deadlines, (B) Establishing Certain Protocols in Connection with the Confirmation of the Debtors' Plan of Reorganization, and (C) Revising Certain Dates in the Disclosure Statement Scheduling Order* (D.I. 4916) (as amended, the "Scheduling Order").

16. On July 23, 2015, the Debtors filed the *Amended Disclosure Statement for the Amended Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code* (D.I. 5080).

17. On July 23, 2015, the Debtors filed the *Amended Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code* (D.I. 5078) (the "First Amended Plan").

18. The First Amended Plan appeared to provide that the PCRB Claims would receive treatment *pari passu* with the holders of the TCEH Second Lien Note Claims, the TCEH Unsecured Note Claims, and other General Unsecured Claim Against the TCEH Debtors Other Than EFCH, with a full (not "limited") waiver of the TCEH First Lien Deficiency Claims. *See* First Amended Plan at Art. III.B.30 and 31 (regarding treatment of Classes C4 and C5).

19. On August 3, 2015, the Debtors filed the *Second Amended Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code* (D.I. 5197) (the "Second Amended Plan").

20. The Second Amended Plan appeared to provide that the PCRB Claims would receive treatment *pari passu* with the holders of the TCEH Second Lien Note Claims, the TCEH Unsecured Note Claims, and General Unsecured Claim Against the TCEH Debtors Other Than EFCH, without a full (not "limited") waiver of the TCEH First Lien Deficiency Claims. *See* Second Amended Plan at Art. III.B.30 and 31 (regarding treatment of Classes C4 and C5).

21. On August 10, 2015, the Debtors filed the Disclosure Statement and the Third Amended Plan.

22. On August 10, 2015, the Debtors also filed a motion to approve a plan support agreement (D.I. 5248), and a motion to approve a settlement agreement (D.I. 5249) (the "Settlement Agreement").

**D. The Third Amended Plan**

    **1. Treatment of the PCRB Claims in Class C4 TCEH Unsecured Debt Claims**

23. Unlike the Original Plan, the First Amended Plan, and the Second Amended Plan, the Third Amended Plan does not provide *pari passu* treatment for the holders of PCRB Claims with respect to, the TCEH Second Lien Note Claims, the TCEH Unsecured Note Claims, or the General Unsecured Claim Against the TCEH Debtors Other Than EFCH.

24. The Third Amended Plan classifies the PCRB Claims[2] in Class C4 TCEH Unsecured Debt Claims. In addition to the PCRB Claims, Class C4 TCEH Unsecured Debt Claims also include (a) the TCEH First Lien Deficiency Claim, (b) the TCEH Second Lien Note Claims, and (c) the TCEH Unsecured Note Claims.

25. With respect to the Class C4 TCEH Unsecured Debt Claims, the Third Amended Plan provides, in full and final satisfaction, settlement, release, and discharge of and in exchange for such claims, each holder of a Class C4 TCEH Unsecured Debt Claim shall receive a *pro rata* share of:

- Rights to purchase "$[__]" in the aggregate of New EFH Common Stock pursuant to the Rights Offering and on, and subject to, the occurrence of the Effective Date, any New EFH Common Stock such Holder purchases pursuant to the exercise of the Rights; and

---

[2] The Third Amended Plan excludes from Class C4 TCEH Unsecured Debt Claims, the Repurchased PCRBs.

- "[__]%" of the Reorganized EFH Common Stock, which shall be converted to approximately "[__]%" of New EFH Common Stock (after accounting for dilution by the Merger and Rights Offering).

*See* Third Amended Plan at p. 54; Disclosure Statement at p. 110.

26.     The relevant dollar amount and percentages are blank in the Third Amended Plan and Disclosure Statement.

27.     The Third Amended Plan also incorporates the terms of the Settlement Agreement. The TCEH First Lien Deficiency Claims totaling between $8.1 billion to $9.5 billion are classified as Class C4 TCEH Unsecured Debt Claims. As provided in the Settlement Agreement, the holders of the TCEH First Lien Deficiency Claims purport to "waive" any recovery on account of their Class C4 TCEH Unsecured Debt Claims for the benefit of the holders of Allowed TECH Unsecured Note Claims, Allowed TCEH Second Lien Note Claims, and Allowed General Unsecured Claims Against the TCEH Debtors Other Than EFCH (collectively, the "Beneficiary-Claimants"), not for the benefit of the PCRBs. *See* Disclosure Statement, p. 11; Third Amended Plan at Art.I.A.295;[3] Settlement Agreement at § 2.2(b). The Beneficiary-Claimants alone (which do not include the PCRBs) will receive the benefits of the additional distributions of Rights and Reorganized EFH Common Stock on account of the TCEH First Lien Deficiency Claims. *See* Settlement Agreement at § 2.2(b).

28.     As a result of the different treatment of the Beneficiary-Claimants, the Disclosure Statement provides that holders of allowed PCRB Claims may receive approximately 45.2% of the distribution they would have otherwise received if the TCEH First Lien Deficiency Claim

---

[3] *See* Third Amended Plan at Art. I.A.295 (defining "Rights Offering Allowed Claim" and stating that "that the number of Rights offered to Holders of Allowed TCEH Second Lien Note Claims, Allowed TCEH Unsecured Note Claims, and Allowed General Unsecured Claims Against the TCEH Debtors Other Than EFCH, respectively, will be calculated taking into account the waiver or deemed waiver by Holders of Allowed TCEH First Lien Deficiency Claims for the benefit of Holders of Allowed TCEH Second Lien Note Claims, Allowed TCEH Unsecured Note Claims, and Allowed General Unsecured Claims Against the TCEH Debtors Other Than EFCH, as described in Article IV.B.16 hereof").

was waived or transferred for the benefit of all Class C4 TCEH Unsecured Debt Claims, including the PCRB Claims. *See* Disclosure Statement, p. 11. The Disclosure Statement contemplates that only 5.0%-5.1% of the Rights and Reorganized EFH Common Stock available under the Third Amended Plan will be allocated to Allowed PCRB Claims. *Id.*

29. The Disclosure Statement, however, does not provide any financial or economic analysis that explains the basis for the PCRB Claims receiving the 54.8% discount as compared to the holders of the Beneficiary-Claimants, including the holders of Allowed TECH Unsecured Note Claims, Allowed TCEH Second Lien Note Claims, and Allowed General Unsecured Claims Against the TCEH Debtors Other Than EFCH.

30. The PCRB Claims are impaired and entitled to vote on the Third Amended Plan with respect to their Class C4 TCEH Unsecured Debt Claims.

### 2. Treatment of the EFCH 2037 Notes Claim in Class C6 General Unsecured Claims Against EFCH

31. The Third Amended Plan classifies the EFCH 2037 Notes Claims as Class C6 General Unsecured Claims Against EFCH. Class C6 General Unsecured Claims against EFCH include holders of any Allowed Unsecured Claims against EFCH that are not otherwise paid in full pursuant to an order of the Bankruptcy Code, including the EFCH 2037 Note Claims, but excluding (a) Administrative Claims against EFCH; (b) Priority Tax Claims against EFCH; (c) Intercompany Claims against EFCH; (d) Other Priority Claims against EFCH; and (e) DIP Claims. The EFCH 2037 Note Claims are contractually subordinated to other Claims against EFCH, including EFCH's guarantee of the TCEH First Lien Debt.

32. With respect to the Class C6 General Unsecured Claims Against EFCH, the Third Amended Plan provides, without explanation, that such Claims shall be canceled and released without any distribution on account of such Claims. Disclosure Statement, pp. 22, 112.

33.     Notably, the Allowed TCEH Second Lien Note Claims also are subordinate to the TCEH First Lien Debt.  The Disclosure Statement, however, does not indicate why the EFCH 2037 Note Claims receive no distribution, including any sharing in the "waived" TCEH First Lien Deficiency Claims while the holders of TCEH Second Lien Note Claims share in the "waiving" of such deficiency claims.

34.     The EFCH 2037 Note Claims are impaired and deemed to reject the Third Amended Plan with respect to their Class C6 General Unsecured Claims Against EFCH.

### III.    OBJECTIONS

#### A.    The Disclosure Statement Must Provide Adequate Information

35.     Section 1125(b) of the Bankruptcy Code requires that a disclosure statement in solicitation of a plan must contain "adequate information."   *See* 11 U.S.C. § 1125(b).  Section 1125(a) of the Bankruptcy Code defines "adequate information," in relevant part, as "information of a kind, and in sufficient detail" as "would enable a *hypothetical reasonable investor typical of holders of claims or interests of the relevant class to make an informed judgment about the plan*[.]"  11 U.S.C. § 1125(a) (emphasis added).

36.     "Because creditors and the bankruptcy court rely heavily on the debtor's disclosure statement in determining whether to approve a proposed reorganization plan, the importance of full and honest disclosure cannot be overstated."  *Ryan Operations G.P. v. Santiam-Midwest Lumber Co.*, 81 F.3d 355, 362 (3d Cir. 1996); *see also See Oneida Motor Freight, Inc. v. United Jersey Bank*, 848  F.3d 414, 417 (3d Cir. 1988)  (declaring that the importance of such disclosure is "underlaid by the reliance placed upon the disclosure statement by the creditors and the court"); *Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. Gen. Motors Corp.*, 337 F.3d 314, 322 (3d Cir. 2003) (stating that preparing and filing a disclosure statement is the pivotal concept in reorganization of a chapter 11 debtor); *In re E. Ridley Corp.*, 16 B.R.

429 (Bankr. E.D. Pa. 1982) ("Without information sufficient to allow parties voting on the plan the opportunity to arrive at an independent and informed judgment, the disclosure statement cannot be approved.").

37. What constitutes adequate information varies from case to case. *See Oneida Motor Freight, Inc.*, 848 F.3d at 417 ("From the legislative history of § 1125 we discern that adequate information will be determined by the facts and circumstances of each case."). Courts in the Third Circuit consistently refuse to approve disclosure statements that lack information that a "reasonable hypothetical investor" would require to make an informed decision about a proposed plan. *See, e.g., Ryan Operations G.P.,* 81 F.3d at 362; *Oneida Motor Freight*, 848 F.2d at 447-48.

38. Holders of claims in classes that are deemed to reject a plan are entitled to receive a copy of the disclosure statement. *See* Fed. R. Bankr. P. 3017(d) ("Upon approval of a disclosure statement ]--except to the extent that the court orders otherwise with respect to one or more *unimpaired* classes of creditors or equity security holders--the debtor in possession . . . shall mail to all creditors . . . (2) the disclosure statement approved by the court[.]") (emphasis added).

39. A disclosure statement must, as a whole, provide information that is reasonably practicable to permit an informed judgment by impaired creditors entitled to vote on the plan. *See Krystal*, 337 F.3d at 322. In essence, a disclosure statement "must clearly and succinctly inform the average unsecured creditor what it is going to get, when it is going to get it, and what contingencies there are to getting its distribution." *In re Ferretti*, 128 B.R. 16, 19 (Bankr. D. N.H. 1991); *see also In re Prudential Energy Co.*, 58 B.R. 857, 868 (Bankr. S.D.N.Y. 1986) (disclosure inadequate where statement failed to identify "the value of the stock that is to be

distributed"); *In re Polytherm Indus., Inc.*, 33 B.R. 823, 830 (Bankr. W.D. Wis. 1983) (disclosure statement inadequate where it failed to provide a "present value analyses of proposed payments to creditors").  Here, the Disclosure Statement falls short of the statutory requirement that a disclosure statement provide "adequate information" upon which creditors, as "hypothetical investors" and the Court can rely to make an informed decision regarding acceptance or rejection of the Third Amended Plan.

### B. The Disclosure Statement Lacks Adequate Information Regarding Class C4 TCEH Unsecured Debt Claims

40. The Disclosure Statement contains no meaningful attempt to quantify in dollars the value of what holders of the PCRB Claims will receive under the Third Amended Plan.  The Third Amended Plan offers holders of PCRB Claims distributions consisting of the right to purchase New EFH Common Stock but the Disclosure Statement does not disclose the dollar amount of such equity that may be purchased or the price at which such equity may be purchased.  *See* Third Amended Plan at p. 54; Disclosure Statement at p. 110.  The Third Amended Plan also offers holders of PCRB Claims a percentage of the Reorganized EFH Common Stock, which shall be converted to a percentage of New EFH Common Stock, but does not disclose the percentages or the dollar value of such equity that will be distributed to holders of PCRB Claims.  *See* Third Amended Plan at p. 54; Disclosure Statement at p. 110.

41. The dearth of information renders the Disclosure Statement inadequate with respect to the distribution that will be received by PCRB Claims.  *See In re Prudential Energy Co.,* 58 B.R. 857, 867-68 (Bankr. S.D.N.Y. 1986) (declaring, where debtor failed to disclose the value of stock to be distributed, that "[t]he facts enumerated above are all highly material to enabling, as § 1125(a)(1) requires, '... a hypothetical reasonable investor typical of holders of

claims or interests of the relevant class to make an informed judgment about the plan ...' They bear directly on the voting process and on the value of the stock that is to be distributed.").

42. The Disclosure Statement also fails to provide a financial analysis justifying the 54.8% percent reduction in the distribution to holders of PCRB Claims. Although the Third Amended Plan incorporates the terms of the Settlement Agreement, the Debtors must provide a financial analysis explaining the 54.8% reduction of the distribution to the PCRB Claims as compared to each of the creditor groups comprising the Beneficiary-Claimants. Specifically, the Third Amended Plan must include the financial analysis underlying the 54.8% reduction of the distribution to holders of PCRB Claims under the Settlement Agreement.

43. As a result of the different treatment of the Beneficiary-Claimants, the Disclosure Statement provides that holders of allowed PCRB Claims may receive approximately 45.2% of the distribution they would have otherwise received if the TCEH First Lien Deficiency Claim was waived or transferred for the benefit of all Class C4 TCEH Unsecured Debt Claims, including the PCRBs. *See* Disclosure Statement at 11. Clearly, there must be some financial analysis that supports such a specific (54.8%) reduction of the distribution to holders of the PCRB Claims as compared to each of the creditor groups comprising the Beneficiary-Claimants. *See* Settlement Agreement at § 2.2(b). The Disclosure Statement, however, offers no explanation as to why the PCRB Claims are excluded from sharing in the "waiver" of the First Lien Deficiency Claims.

44. In short, there is no way that a reasonable "hypothetical investor" could decide whether to accept the Third Amended in light of the absence of such critical valuation and financial analyses.

### C. The Disclosure Statement Lacks Adequate Information Regarding Class C6 General Unsecured Claims Against EFCH

45. The Disclosure Statement states that the EFCH 2037 Note Claims will be cancelled and released without any distribution on account of such Claims, but does not provide any meaningful explanation for this disparate treatment. Significantly, the Third Amended Plan treats general unsecured claims against EFCH differently and less favorably than general unsecured claims against the other TCEH Debtors, including the TCEH Second Lien Note Claims, which also are subordinate to the TCEH First Lien Claims.

46. The Class C6 General Unsecured Claims Against EFCH are the only TCEH Debtor Claims that are cancelled and released without distribution. Disclosure Statement, pp. 22-23. The Disclosure Statement is inadequate as to the basis for the contrasting treatment of the EFCH 2037 Note Claims.

47. The Disclosure Statement also is inadequate in that it fails to provide any explanation for the Third Amended Plan's failure to treat the EFCH 2037 Notes Trustee's fees and expenses, which are *not* subordinated.

### D. The Disclosure Statement is Incomplete by Its Own Terms and, Therefore, Lacks Adequate Information

48. The Disclosure Statement frequently refers creditors to exhibits that are not included within the Disclosure Statement as filed for vital information regarding their recovery. The Disclosure Statement contains a list of exhibits that are purportedly attached but that are absent from the Debtors' filings. *See* Disclosure Statement, p. iii. In some instances, the Disclosure Statement does not describe the substance of the documents and instead directs the reader to the missing document itself. For example, the Reorganized TCEH Valuation Analysis is missing, along with the Minutes from Disinterested Director and Manager Board Meetings, Letter from Office of the Office of Texas Attorney General, and Letter of recommendation from

TCEH Committee.  The omission of these documents renders the Disclosure Statement incomplete and inadequate.

## IV. RESERVATION OF RIGHTS

49. BNY reserves its rights with respect to objections to confirmation of the Third Amended Plan.

## V. CONCLUSION

For the foregoing reasons, BNY respectfully requests that the Court (a) require that the Disclosure Statement be amended to address the issues raised in this objection, and (b) grant such other and further relief to BNY as is appropriate.

| | |
|---|---|
| Dated:  August 17, 2015<br>Wilmington, Delaware | Respectfully submitted,<br><br>REED SMITH LLP<br><br>By:  */s/ Kurt F. Gwynne*<br>Kurt F. Gwynne (No. 3951)<br>Kimberly E.C. Lawson (No. 3966)<br>1201 Market Street, Suite 1500<br>Wilmington, DE 19801<br>Telephone: (302) 778-7500<br>Facsimile: (302) 778-7575<br>Email:  kgwynne@reedsmith.com<br>            klawson@reedsmith.com<br><br>Counsel to The Bank of New York Mellon, in its capacity as the PCRB Trustee, and The Bank of New York Mellon Trust Company, N.A., in its capacity as the EFCH 2037 Notes Trustee |