IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re<br>ENERGY FUTURE HOLDINGS CORP., *et al.*,<br>*Debtors.* | Chapter 11<br>Case No. 14-10979 (CSS)<br>(Jointly Administered)<br>Related to D.I. No. 5246 |

**LIMITED OBJECTION OF DELAWARE TRUST COMPANY TO DISCLOSURE STATEMENT FOR THE THIRD AMENDED PLAN OF REORGANIZATION OF ENERGY FUTURE HOLDINGS CORP., *ET AL.*, PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE**

Pursuant to 11 U.S.C. § 1125, Delaware Trust Company, as indenture and collateral trustee ("Trustee") for the first-lien notes ("Notes") issued by Energy Future Intermediate Holding Company LLC and EFIH Finance Inc. (together, "EFIH"), submits this Limited Objection to the proposed Disclosure Statement ("Disclosure Statement") for the Debtors' Third Amended Joint Plan of Reorganization (the "Plan"). In support of this Objection, the Trustee states as follows:

1. This Court recently entered judgment disallowing the "make-whole" and related damages claims of the Trustee and the holders of the Notes (the "Noteholders"). The Trustee and the Noteholders have, however, timely appealed that decision. And the Trustee has asserted, in timely-filed proofs of claim, other claims against EFIH, including without limitation claims for unpaid interest owed by EFIH as a result of its failure to register certain of the Notes (and interest on interest, as provided in the parties' agreements) and claims for the professional fees and costs that have been and will continue to be incurred by the Trustee in this bankruptcy case and the related litigation. The Debtors' proposed Disclosure Statement acknowledges the make-whole claims (and

the Trustee's and Noteholders' appeal from the denial of those claims), as well the other claims asserted by the Trustee. *See* Disclosure Statement § II.C.3(a); *id.* § IV.K.

2. The Plan purports to "unimpair" the Trustee and the Noteholders. *See* Plan Art. III.B, Class B3 (stating that any Secured Claims relating to the Notes are unimpaired); *see also id.* Art. III.B, Class B6 (stating that any Unsecured Claims against EFIH are unimpaired); Disclosure Statement § II.C.3(a). To "unimpair" these claims—to "leave unaltered the legal, equitable, and contractual rights to which such claim[s] . . . entitle[] the holder" (11 U.S.C. §1124(a))—the Plan must provide for the payment in full of the claims in cash, if, when and to the extent they are allowed, whether in this Court or on appeal, and whether that allowance occurs before or after the Effective Date.[1]

3. In this regard, the Plan contains a condition to effectiveness that no order be entered and in effect allowing the make-whole claims as of the "Effective Date" for the Plan (*see* Plan, Art. IX.B.9; *see also id.* Art. I.A.69 (definition of "Disallowed Makewhole Claims")). The appeal could remain outstanding on the Effective Date, however, and the make-whole claims could be allowed thereafter.[2] While the Disclosure Statement generally describes the "risk" that the outcome of the litigation over the make-whole claims is uncertain (*see* Disclosure Statement, § VIII.A.7), it does not specifically

---

[1] To the extent the Debtors somehow dispute that the Noteholders will be entitled to payment in full, in cash, if and to the extent they prevail on appeal or otherwise on their make-whole or other claims, the Noteholders will be entitled to vote on the Plan. *See* Fed. R. Bank. P. 3018(a). That issue and any possible motion for the provisional right to vote are, however, for another day.

[2] In order to expedite the appeal and final resolution of the make-whole claims, counsel for the Trustee and the Noteholders recently reached out to counsel for the Debtors to see if the Debtors would join in a request for direct certification of the appeal to the U.S. Court of Appeals for the Third Circuit. *See* Fed. R. Bankr. P. 8006. The Debtors, however, refused.

note that the make-whole claims could be allowed after the Effective Date and then be required to be paid by Reorganized EFIH (and/or any other successor to EFIH).

  4.  That disclosure should be provided. The Bankruptcy Code requires that:

> [a]n acceptance or rejection of a plan may not be solicited after the commencement of a case under this title from a holder of a claim or interest with respect to such claim or interest, unless, at the time of or before such solicitation, there is transmitted to such holder the plan or a summary of the plan, and a written disclosure statement approved, after notice and a hearing, by the court as containing adequate information.

11 U.S.C. § 1125(b). "Adequate Information" is "information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor that would enable a hypothetical reasonable investor typical of claims or interests in the relevant class to make an informed judgment about the plan ... ." 11 U.S.C. § 1125(a)(1).

  5.  Courts in this circuit have recognized that a disclosure statement containing adequate information plays a pivotal role in the reorganization of a debtor. *See, e.g., Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. General Motors Corp.*, 337 F.3d 314, 322 (3d Cir. 2003). "The importance of full disclosure is underlaid by the reliance placed upon the disclosure statement by the creditors and the court." *Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 417 (3d Cir. 1998). Any disclosure statement must, therefore, contain "'sufficient financial and operating information to enable each participant to make an "informed" judgment whether to approve or reject the proposed plan.'" *In re Civitella*, 15 B.R. 206, 208 (Bankr. E.D. Pa. 1981); *see also In re Autobacs Strauss, Inc.*, 473 B.R. 525, 584 (Bankr. D. Del. 2012) (disclosure statement must contain information that is "reasonably practicable [to permit an] informed judgment" by holders of claims or interests entitled to vote on the plan).

6. Here, to the extent the make-whole and/or other claims are ultimately allowed, EFIH and/or Reorganized EFIH may have to satisfy liabilities of several hundred million dollars to the Trustee and the Noteholders. To provide "adequate information," the Disclosure Statement must include clear disclosure of that possibility. *See In re Williams*, No. 87-4-0093, 1992 WL 521537, at *3 (D. Md. Sept. 1, 1992) ("Debtors apparently assume that because they assert the claims are not legitimate, that's that, and no further analysis need be done. However, a disclosure statement must include an examination of what effect, if any, there will be to the Debtors' proposed plan if disputed claims are allowed.") *aff'd*, 998 F.2d 1012 (4th Cir. 1993) (unpublished).

7. Accordingly, a disclosure along the following lines should be added to the Disclosure Statement, presumably in the Risk Factors section:

> The Bankruptcy Court has disallowed the Makewhole Claims asserted by the EFIH First Lien Notes Trustee and the non-Settling Holders of EFIH First Lien Claims. *See* Disclosure Statement §§ II.C.3 & IV.K. However, the Trustee and such non-Settling Holders of EFIH First Lien Notes have appealed the Bankruptcy Court's decision, and that appeal remains pending. It is a condition precedent to the effectiveness of the Plan that the Makewhole Claims not be Allowed as of the Effective Date. Thus, if the Bankruptcy Court's decision is reversed on appeal prior to the Effective Date, the Plan may not go effective. Moreover, the appeal and the litigation over these Makewhole Claims (and related Claims) may not be finally decided by the Effective Date of the Plan, in which case the appeal and the litigation may continue after the Effective Date. If and to the extent the Makewhole Claims (and/or other related Claims) asserted by the EFIH First Lien Notes Trustee and the non-Settling Holders of EFIH First Lien Claims are Allowed after the Effective Date, Reorganized EFIH (and any other successor to EFIH) will be required to pay these Claims in full in cash (together, potentially, with interest thereon).

4

>In addition, the EFIH First Lien Notes Trustee has asserted other Claims against EFIH, including Claims for professional fees and costs that have been incurred and will be incurred and for disputed interest. *See* Disclosure Statement § II.C.3. To the extent these Claims are Allowed, either before or after the Effective Date, EFIH and/or Reorganized EFIH (and any other successor to EFIH) will be required to pay these Claims in full in cash (again, potentially, with interest thereon) as well.

8. In addition, the following statement made in Section I.D of the Disclosure Statement should be deleted or modified:

>The Plan contemplates and is conditioned on the disallowance of all alleged Claims under certain series of EFH Corp. and EFIH funded indebtedness regarding the entitlement to optional redemption premiums or similar "makewhole" payments asserted in connection with the repayment or satisfaction of such indebtedness during the Chapter 11 Cases or under the Plan.

As noted, the Plan in fact is (and can be) conditioned only on the lack of any order allowing any make-whole claims as of the Effective Date. The claims could be allowed thereafter as a result of the pending appeal, and would then have to be paid in full by Reorganized EFIH since the Plan purports not to impair the Noteholders.

9. Finally, a statement should be added to the Disclosure Statement that, in order to treat the Noteholders as unimpaired, EFIH may be required to maintain the liens securing the Notes (and all other rights of the Noteholders) until and unless all appeals with respect to the various claims of the Trustee and the Noteholders have been finally resolved and/or paid, and that the Trustee and the Noteholders reserve all rights.

10. Because the only matter before the Court at this time is approval of the Disclosure Statement, not confirmation of the Plan, the Trustee will not address here any possible objections it may have to confirmation, including whether the Noteholders are

truly unimpaired under the Plan. It and its counsel stand ready to meet with the Debtors and their professionals to address any such possible objections.

## CONCLUSION

For the reason stated, the Disclosure Statement should be amended along the lines outlined above.

Dated: August 17, 2015

COLE SCHOTZ P.C.

/s/ *Norman L. Pernick*
Norman L. Pernick (Bar No. 2290)
J. Kate Stickles (Bar No. 2917)
500 Delaware Avenue, Suite 1410
Wilmington, DE 19801
Telephone: 302-652-3131
Facsimile: 302-652-3117
npernick@coleschotz.com
kstickles@coleschotz.com

Warren A. Usatine
Court Plaza North
25 Main Street
Hackensack, NJ 07602
Telephone: 201-489-3000
Facsimile: 201-489-1536
wusatine@coleschotz.com

WILMER CUTLER PICKERING HALE AND DORR LLP
Philip D. Anker
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Telephone: 212-230-8800
Facsimile: 212-230-8888
Philip.Anker@wilmerhale.com
Charles.Platt@wilmerhale.com

Dennis L. Jenkins
60 State Street
Boston, MA 02109
Telephone: 617-526-6000
Facsimile: 617-526-5000
Dennis.Jenkins@wilmerhale.com
George.Shuster@wilmerhale.com

ROPES & GRAY LLP
Keith H. Wofford
Mark Somerstein
1211 Avenue of the Americas
New York, NY 10036-8704
Telephone: 212-596-9000
Facsimile: 212-596-9090
Keith.Wofford@ropesgray.com
Mark.Somerstein@ropesgray.com

D. Ross Martin
Andrew Devore
800 Boylston Street, Prudential Tower
Boston, MA 02199-3600
Telephone: 617-951-7000
Facsimile: 617-951-7050
Ross.Martin@ropesgray.com
Andrew.Devore@ropesgray.com

DRINKER BIDDLE & REATH LLP
James H. Millar
1177 Avenue of the Americas
41st Floor
New York, NY 10036-2714
Telephone: 212-248-3264
Facsimile: 212-248-3141
James.Millar@dbr.com

Todd C. Schiltz
222 Delaware Ave, Suite 1410
Wilmington, DE 19801-1612
Telephone: 302-467-4200
Facsimile: 302-467-4201
Todd.Schiltz@dbr.com

*Counsel for Delaware Trust Company as trustee*