**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re:<br><br>ENERGY FUTURE HOLDINGS CORP., et al.,[1]<br><br><br><br><br><br><br>Debtors. | Chapter 11<br><br>Case No. 14-10979 (CSS)<br><br>Jointly Administered<br><br>Re: Docket Nos. 4144 & 5246<br><br>Hearing Date:  September 17, 2015 at 9:30 a.m. (E.T.)<br><br>Objection Deadline: August 17, 2015 at 4:00 p.m. (E.T.) |

**OBJECTION OF EFH INDENTURE TRUSTEE TO APPROVAL OF DISCLOSURE STATEMENT FOR THE THIRD AMENDED JOINT PLAN OF REORGANIZATION OF ENERGY FUTURE HOLDINGS CORP.,** *ET AL.*

---

[1]    The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, for which the debtors have requested joint administration, a complete list of the debtors and the last four digits of their federal tax identification Numbers is not provided herein.

American Stock Transfer & Trust Company, LLC ("AST"), as successor trustee to The Bank of New York Mellon Trust Company, N.A. (in such capacity, the "EFH Indenture Trustee") under the indentures (the "Indentures") for notes (the "EFH Notes") issued by EFH Future Holdings Corp. ("EFH") (as described in Exhibit 1 attached hereto), by its undersigned counsel, hereby objects (the "Objection") to the *Motion of Energy Future Holdings Corp. et al., for Entry of an Order (A) Approving the Disclosure Statement, (B) Establishing the Voting Record Date, Voting Deadline, and Other Dates, (C) Approving Procedures for Soliciting, Receiving, And Tabulating Votes on the Plan and for Filing Objections to the Plan, and (D) Approving the Manner and Forms of Notice and Other Related Documents* [Docket No. 4144] (the "Motion").  In opposition to approval of the *Disclosure Statement for the Third Amended Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 5246] (the "Proposed Disclosure Statement"),[2] the EFH Indenture Trustee respectfully states as follows:

## I.
## PRELIMINARY STATEMENT

1.      One week ago the Debtors filed the amended Proposed Plan and amended Proposed Disclosure Statement along with over 1,800 pages of supporting transaction documents.  The Proposed Plan is contingent upon, and cannot go effective without Court approval of, two companion agreements: (1) the Plan Support Agreement (the "PSA") [Docket No. 5248], and (ii) the Settlement Agreement, dated August 9, 2015 [Docket No. 5249].  The Debtors now seek approval of a Disclosure Statement, yet as of the date of the deadline for the

---

[2]      Capitalized terms used herein but not otherwise defined shall have the meanings ascribed to them in the Proposed Disclosure Statement or the *Third Amended Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 5244] (the "Proposed Plan"), as applicable.

4812-6195-7158.8

filing of this Objection, material agreements and proposed orders, including the debt

commitment documents that might enable the Debtors to exit chapter 11, are not public and have

not been made available for review.

2.      The fundamental purpose of a Disclosure Statement is to provide due process and

meaningful information to creditors so they can form opinions and object, if necessary, to a plan

of reorganization.  In these circumstances, where material agreements needed to evaluate, among

other things, the feasibility of the Proposed Plan are not yet available, and where the proposed

transactions are exceedingly complex, an evaluation and objection period of one week is unfair

and inappropriate.  Accordingly, the EFH Indenture Trustee objects to approval of the Proposed

Disclosure Statement, requests that this Court continue the hearing on the Motion to a date after

all plan documents and related proposed forms of order have been filed and parties have had an

adequate time to review such documents.  The EFH Indenture Trustee reserves its right to assert

additional objections up to and including the hearing to consider approval of the Proposed

Disclosure Statement.

### EFH Noteholders are Impaired Under the Proposed Plan

3.      The Debtors will likely argue holders of EFH Notes (the "EFH Noteholders") are

unimpaired, and therefore do not need information.  In the *Debtors' Statement Regarding Plan*

*Negotiations* [Docket No. 5082] filed on July 23, 2015, the Debtors stated that "the Debtors'

view the REIT Transaction as the superior path to exit because it would resolve the vast majority

of contested issues in this case, has the support of substantially all of the creditors of the TCEH

Debtors, and, if consummated, ***will pay all creditors of EFH and EFIH in full in cash***."  *Id.* at ¶

1 (emphasis added).  However, instead of paying all EFH creditors in full, the Proposed Plan

provides that holders of "Allowed" claims against EFH will "receive payment in full in Cash

from the proceeds of the Equity Investment, New Reorganized EFIH Debt, and Cash on hand up to the Allowed amount of their Claim or **some other treatment rendering such Claims Unimpaired.**" (emphasis added).  Proposed Disclosure Statement, at 10.

4.      From what the EFH Indenture Trustee has been able to discern, far from paying EFH creditors in full, the Proposed Plan <u>**deprives**</u> EFH Noteholders of their contractual Makewhole Claims and contract rate of interest even though, as of the date hereof, there have been no objections filed as to those claims.  In addition, the recoveries of EFH Noteholders will be further reduced because the Proposed Plan does not provide for the payment of the EFH Indenture Trustee's fees and expenses either as an allowed administrative expense (as provided for in the Indentures and applicable law) or as part of their unsecured claims.  Accordingly, the Proposed Plan impairs EFH Noteholders because it alters the legal and contractual rights of the EFH Noteholders, thus rendering those holders impaired and entitled to vote.

### *<u>The Disclosure Statement Fails to Provide Adequate Information to Holders at EFH</u>*

5.      The Proposed Disclosure Statement does not provide adequate information to EFH Noteholders because the Debtors drafted it under the assumption that such holders are unimpaired and not entitled to vote.  In these circumstances, at the very least, the Court should require the Debtors to file a new disclosure statement reflecting what it means specifically to provide for "**some other treatment rendering such Claims Unimpaired,**" the actual impairment of EFH Noteholders and providing them with adequate information to vote on the Proposed Plan.  Some of those required disclosures (*i.e.*, a liquidation analysis for EFH) are discussed below.

4

## II.
## RELEVANT BACKGROUND

### A.    AST's Retention and Role as Indenture Trustee for the EFH Notes

6.    AST serves as the successor indenture trustee under the Indentures for the EFH

Notes issued by EFH Corp.  The combined aggregate outstanding principal amount of the EFH

Notes is approximately $1.9 billion.  Approximately $1.2 billion of that debt is held by EFIH.

7.    In March 2014, EFH approached AST and informed it that in light of EFH's

imminent bankruptcy filing it needed a successor trustee to The Bank of New York Mellon Trust

Company, N.A. ("BNY") as the indenture trustee for the EFH Notes.  On April 11, 2014, EFH,

BNY and AST entered into three separate agreements under which BNY resigned as the

indenture trustee for the EFH Notes and AST accepted appointment as the EFH Indenture

Trustee.

### B.    AST's Proofs of Claims Filed Against EFH

8.    On October 24, 2014, the EFH Indenture Trustee timely filed the proofs of claim

numbered 7475, 7476, 7477, 7478, 7479 and 7482 (the "EFH Indenture Trustee Proofs of

Claim") against EFH on account of claims arising under the EFH Notes and related documents.[3]

9.    As of the date of this Objection, the Debtors have not objected to the EFH

Indenture Trustee Proofs of Claim and those claims are deemed allowed.  *See* 11 U.S.C. § 502(a)

("A claim or interest, proof of which is filed under section 501 of this title, is deemed allowed,

unless a party in interest, including a creditor of a general partner in a partnership that is a debtor

in a case under chapter 7 of this title, objects").

---

[3]    In addition, the EFH Indenture Trustee filed proof of claim number 7481 against EFIH on account of
EFIH's guarantee of the EFH LBO Notes.

4812-6195-7158.8

**III.**
**OBJECTION BASED ON TREATMENT OF CLAIMS**
**OF EFH NOTEHOLDERS**

**A.     EFH Noteholders Are Impaired Under the Plan**

10.     Claims arising under the EFH Notes are classified in Classes A4, A5, A6, and B5 (the "EFH Notes Classes").  The Proposed Plan provides each claimant in each of those classes payment in full up to the "Allowed" amount of its claim or other treatment rendering their claim Unimpaired.  *See* Proposed Disclosure Statement, at 15-16.[4]  The Proposed Plan provides that the Allowed amount of each claim in the EFH Notes Classes will be comprised of: (i) the principal amount outstanding, plus accrued but unpaid prepetition interest, under the applicable Indenture; and (ii) accrued postpetition interest at the Federal Judgment Rate, but not including the bargained-for contract rate of interest, Makewhole Claims, or other contractual amounts more particularly described below.  *See* Proposed Plan, at 44-45, 50.

11.     Because the Debtors assert that the claims of these holders will be "Unimpaired," the Debtors deem such claimants to accept the Proposed Plan and are not entitled to a ballot. However, the Debtors do not explain the conflict between depriving EFH Noteholders of their contractual entitlements and at the same time declaring that they are unimpaired.  Bankruptcy Code section 1124 specifically provides that "a class of claims or interests is impaired under a plan unless, with respect to each claim or interest of such class, the plan—

> (1) ***leaves unaltered the legal, equitable, and contractual rights to which such claim or interest entitles the holder of such claim or interest***; or
>
> (2) Except as provided in section 1123(a)(4) of this title, a class of claims or interests is impaired under a plan ***unless,*** with respect to each claim or interest of such class, the plan . . .

---

[4]     For holders in Class A4, consent of the Debtors, the Plan Sponsors and the TCEH Supporting First Lien Creditors is needed for other treatment rendering their claim Unimpaired.  *See* Proposed Plan, at 45.

6

(A) cures any such default that occurred before or after the commencement of the case under this title, other than a default of a kind specified in section 365 (b)(2) of this title or of a kind that section 365 (b)(2) expressly does not require to be cured;

(B) reinstates the maturity of such claim or interest as such maturity existed before such default;

(C) compensates the holder of such claim or interest for any damages incurred as a result of any reasonable reliance by such holder on such contractual provision or such applicable law;

(D) if such claim or such interest arises from any failure to perform a nonmonetary obligation, other than a default arising from failure to operate a nonresidential real property lease subject to section 365 (b)(1)(A), compensates the holder of such claim or such interest (other than the debtor or an insider) for any actual pecuniary loss incurred by such holder as a result of such failure; and

(E) ***does not otherwise alter the legal, equitable, or contractual rights to which such claim or interest entitles the holder of such claim or interest***.

11 U.S.C. § 11214 (emphasis added).

12.    This Court should not presume EFH Noteholders are not impaired, as the Debtors' suggest.  The Bankruptcy Code creates a presumption of impairment "so as to enable a creditor to vote on acceptance of the plan."  *Solow v. PPI Enters.(U.S.) (In re PPI Enters.(U.S.)),* 324 F.3d 197, 203 (3d Cir. 2003).  "The burden is placed on the debtor to demonstrate the plan leaves the creditor's rights unaltered."  *Id.*  "Any alteration to the claimant's legal, equitable, or contractual rights under a plan would make that claim impaired."  *In re GSC, Inc.,* 453 B.R. 132, 177 (Bankr. S.D.N.Y. 2011).  "If the debtor's Chapter 11 reorganization plan does not leave the creditor's rights entirely 'unaltered,' the creditor's claim will be labeled as impaired under § 1124(1) of the Bankruptcy Code."  *PPI Enterprises (U.S.), Inc.,* 324 F.3d at 202; *see also In re Taddeo,* 685 F.2d 24, 28 (2d Cir. 1982)("Congress define[d] impairment in the broadest possible

7

terms."); *Dish Network Corp. v. DBSD N. Am., Inc. (In re DBSD N. Am., Inc.),* 634 F.3d 79, 89 n.4 (2d Cir. 2010) ("The Code treats a claim as impaired unless the plan leaves in place all rights to which the claim entitles its holder, except for certain rights to accelerate payments after default.").

13.     Accordingly, it is the EFH Indenture Trustee's position that the Debtors have not carried their burden to show that the legal, equitable and contractual rights of the EFH Notes Class are unaltered within the meaning of section 1124.  Rather, the proposed treatment of the claims in the EFH Notes Classes runs afoul of section 1124 and such claims are impaired because the Proposed Plan (i) seeks to deny payment of any Makewhole Claim,[5] (ii) provides for interest at the Federal Judgment Rate—not the contract interest rate, and (iii) does not provide for payment of indenture trustee fees and expenses as provided for in the Indentures.[6] Accordingly, the EFH Noteholders are entitled to a ballot and a disclosure statement providing adequate information on the treatment of their claims and other matters.

14.     Furthermore, as detailed below, because the current Proposed Disclosure Statement assumes that EFH Noteholders are unimpaired and not entitled to disclosure it has not been individually tailored to holders at EFH and is thus patently inadequate.  Section IV of this Objection highlights some of the deficiencies that need to be addressed once the Court determines (or the Debtors concede) that EFH Noteholders are entitled to vote.[7]

---

[5]     In particular, apparently unlike any other series notes issued by the Debtors, the EFH Legacy Notes were not automatically accelerated on account of the Debtors' bankruptcy filing under the relevant EFH Legacy Notes Indenture.  In addition, no party has taken any action to accelerate such notes.

[6]     *See Travelers Cas. & Sur. Co. of Am. v. PG&E,* 549 U.S. 443, 448 (2007) ("[A]n otherwise enforceable contract allocating attorney's fees (*i.e.,* one that is enforceable under substantive, nonbankruptcy law) is allowable in bankruptcy except where the Bankruptcy Code provides otherwise.").

[7]     As of the date of this Objection, the Debtors have not filed a revised proposed order granting the Motion, including revised ballots and solicitation materials.  The EFH Indenture Trustee reserves all its rights with respect to any such revised order.

4812-6195-7158.8

**IV.**
**OBJECTIONS BASED ON MISLEADING AND INADEQUATE DISCLOSURE**

A.   **Key Aspects of The Disclosure Statement Are**
     **Confusing and Ambiguous, Especially for Small Holders**

15.    Since the LBO took place in 2007, the Debtors have operated with an extraordinary degree of separateness and strict observance of corporate formalities.  To date, no party in these contentious cases has argued that the Debtors' chapter 11 cases should be substantively consolidated.

16.    This high degree of corporate separateness must be observed in the Proposed Disclosure Statement and plan process and any transfers or settlements among Debtors (or other "insiders" as defined by the Bankruptcy Code) should be subject to the highest degree of disclosure and scrutiny.  Furthermore, any proposed transfers among insiders must be explained in the Proposed Disclosure Statement in clear and simple language that a small investor can understand.

(i)    **Each Debtor must meet its Evidentiary Burden that the Disclosure Statement**
       **Contains Adequate Information**

17.    Because these chapter 11 cases are only jointly administered — not substantively consolidated—in connection with the Proposed Disclosure Statement hearing, which is a contested matter, this Court must evaluate the Proposed Disclosure Statement independently for each Debtor and each Debtor must meet its evidentiary burden.[8]  The Proposed Disclosure Statement must provide the voting EFH Noteholders with adequate information to determine if the Debtors' Proposed Plan is in their best interests as holders of EFH debt—not if the Proposed Plan is in the best interests of the Debtors on a consolidated basis.

---

[8]    *See* FED. R. BANKR. P. 9014 Advisory Committee Note 1983 ("[T]he filing of an objection . . . to a disclosure statement creates a dispute which is a contested matter.").

9

**(ii)      The Bankruptcy Code Requires That the Proposed Disclosure Statement Must Be Comprehensible to Typical Holders of Claims for Each Class**

18.      "Adequate information" is defined in section 1125(a) of the Bankruptcy Code as

> information of a kind, and in sufficient detail, as far as is
> reasonably practicable in light of the nature and history of the
> debtor and the condition of the debtor's books and records,
> including a discussion of the potential material Federal tax
> consequences of the plan to the debtor, any successor to the debtor,
> and a hypothetical investor typical of the holders of claims or
> interests in the case, that would enable such a hypothetical investor
> of the relevant class to make an informed judgment about the plan,
> . . .

11 U.S.C. § 1125(a).  Section 1125(a)(2), in turn, defines "investor typical of holders of claims or interests of the relevant class" as an investor having

> (A) a claim or interest of the relevant class; (B) such a relationship
> with the debtor as the holders of other claims or interests of such
> class generally have; and (C) such ability to obtain such
> information from sources other than the disclosure required by this
> section as holders of claims or interests in such class generally
> have.

11 U.S.C. § 1125(a)(2).

19.      Two aspects of Bankruptcy Code section 1125 must be noted.  First, the audience is, in part, dictated by classification choices made by the Debtors.  Second, subsections (A), (B), and (C) of section 1125(a)(2) are component _factual_ findings relative to _each_ class.  In other words, at the hearing on the disclosure statement the burden will be on the Debtors to prove for each class who the hypothetical investor is and what sources of information that investor has access to.  *See e.g., Official Committee of Unsecured Creditors v. Michelson*, 141 B.R. 715, 720 (Bankr. E.D. Cal. 1992) ("[T]he plan proponent bears the ultimate risk of non-persuasion on the question of compliance with the requirement to disclose adequate information . . . .").  The Court then, reading the plain text of the Proposed Disclosure Statement, will need to decide if

disclosure is adequate for such claimants in each class. *See e.g., In re 18 RVC, LLC,* 485 B.R.

492, 495 (Bankr. E.D.N.Y. 2012).

      20.    As one bankruptcy court stated:

> The requirement that a disclosure statement contain adequate information serves to present the parties entitled to vote on the plan with an opportunity to independently evaluate the merits of the proposed plan. The Code requires that adequate information be present in the disclosure statement and be of such a nature that parties be able to reach an informed judgment about the plan. Without information sufficient to allow parties voting on the plan the opportunity to arrive at an independent and informed judgment, the disclosure statement cannot be approved.

*In re East Redley Corporation*, 16 B.R. 429, 430 (Bankr. E.D. Pa. 1982); *see also In re*

*Envirodyne Indus., Inc*., 183 B.R. 812, 821 (N.D. III. 1995) ("The importance of full disclosure

is underlaid by the reliance placed upon the disclosure statement by the creditors and the court.

Given this reliance we cannot overemphasize the debtor's obligation to provide sufficient data to

satisfy the Code standard of 'adequate information'").  The purpose of a disclosure statement is

to "clearly provide creditors with information regarding the debtor's plan and their treatment

under that plan. Creditors should not be required to go on a treasure hunt throughout multiple

filings in order to ascertain that information." *In re Forest Grove, LLC*, 448 B.R. 729, 737-38

(Bankr. D.S.C. 2011).

      21.    Courts have identified key elements that should be contained in a disclosure

statement as a predicate to court approval. These include, among other things,

      (a)    a complete description of the available assets and their value,

      (b)    information regarding claims against the estate,

      (c)    a liquidation analysis setting forth the estimated return that creditors would receive under Chapter 7,

4812-6195-7158.8

(d)    the accounting and valuation methods used to produce the financial information in the disclosure statement,

(e)    the actual or projected value that can be obtained from avoidable transfers, and

(f)    the relationship of the debtor with affiliates.

*See In re Ferretti*, 128 B.R. 16 (Bankr. D. N.H. 1991); *In re Oxford Homes, Inc*., 204 B.R. 264, 269 (Bankr. D. Me. 1997).

22.    While some of the EFH Noteholders are sophisticated asset managers, financial institutions, and investment firms, many EFH Noteholders are individuals with relatively small holdings and not Qualified Institutional Buyers (as that term is defined in Rule 144A of the Securities Act).  Specifically, Class A5 (EFH Unexchanged Note Claims) may consist nearly entirely of individuals with relatively small holdings because by definition the remaining holders in that Class were not eligible to participle in the 2012 Exchange.[9]  Upon information and belief, all holders of EFH Unexchanged Note Claims are individuals who are not represented by counsel.  Once this Court determines that the EFH Noteholders are in fact entitled to vote, or the Debtors concede that fact, the Proposed Disclosure Statement should be revised to provide complete and accurate disclosure tailored to the risks that EFH Noteholders face.

---

[9]    On December 21, 2012, EFIH and EFIH Finance commenced private exchange offers to exchange up to approximately $1.3 billion in aggregate principal amount of new 10.000% Senior Secured Notes due 2020 issued by EFIH and EFIH Finance (the "EFIH 10.000% Notes") for any and all outstanding (i) 9.75% Senior Secured Notes due 2019 issued by EFH, and (ii) 10.000% Senior Secured Notes due 2020 issued by EFH Corp (the "2012 Exchange").  The exchange offers were made only in the United States to "qualified institutional buyers" (as that term is defined in Rule 144A of the Securities Act) and to certain non-U.S. persons (as that term is defined in Regulation S under the Securities Act) located outside the United States. The exchange offers concluded on January 25, 2013, with holders of over 97% of the aggregate outstanding principal amount of EFH Unexchanged Notes participating in the exchange offer. As a result, holders of less than 3% of the aggregate outstanding principal amount of EFH Unexchanged Notes did not participate, presumably because they were not eligible QIBs.  It is those holders who now comprise the holders in Class A5 (EFH Unexchanged Note Claims) under the Plan.

**B.**     **All References to Disinterested Directors as "Disinterested" Should Be Stricken and Disclosure Statement Must Describe Releases Provided to Insider Directors**

23.     Under the Settlement Agreement, the Debtors propose to resolve, among other things, Intercompany Claims and claims against the Sponsors and against the Debtors' directors and officers.  *See* 9019 Motion, at ¶ 47.  Few of the alleged Causes of Action and Intercompany Claims to be released under the proposed settlement are scheduled on any of the Debtors' *Schedules of Assets and Liabilities* (the "Schedules").  Furthermore, the alleged Intercompany Claims are only summarized in a cursory manner in the Proposed Disclosure Statement and no analysis of the strengths and weaknesses of each claim is provided for EFH creditors.  *See* Proposed Disclosure Statement, at 126-36.  But for the fact that these claims involve insiders, they would have been detailed for creditors in proofs of claims or on the Debtors' Schedules.[10]

24.     In numerous instances the Proposed Disclosure Statement describes EFH's directors with respect to Conflict Matters (*i.e.,* Mr. Evans and Mr. Williamson) as "Disinterested Directors."  *See e.g.,* Proposed Disclosure Statement, at 5,6, 13.  They are not disinterested.  The use of the term "Disinterested" when referring to the directors is misleading because section 101(14) of the Bankruptcy Code defines "disinterested person" as a person that—

> (A) is not a creditor, an equity security holder, or an insider;
>
> (B) is not and was not, within 2 years before the date of the filing of the petition, a director, officer, or employee of the debtor; and
>
> (C) does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by

---

[10]     The EFH Indenture Trustee reiterates its objection to the fact that the Debtors have not been required to comply with the provisions of the Bankruptcy Rules requiring all claims to be filed or scheduled in order for such claims to be allowed.  *See* Bankruptcy Rule 3002(a) ("An unsecured creditor or an equity security holder **must file a proof of claim** or interest for the claim or interest to be allowed, except as provided in Rules 1019(3), 3003, 3004, and 3005.") (emphasis added); Bankruptcy Rule 3003(c)(2) ("Any creditor or equity security holder whose claim or interest is not scheduled or scheduled as disputed, contingent, or unliquidated **shall file a proof of claim** or interest within the time prescribed by subdivision (c)(3) of this rule; any creditor who fails to do so shall not be treated as a creditor with respect to such claim for the purposes of voting and distribution.") (emphasis added).

> reason of any direct or indirect relationship to, connection with, or
> interest in, the debtor, or for any other reason.

11 U.S.C. § 101(14).

25.    The allegedly disinterested directors are not disinterested because many of the claims and causes of action being released under the proposed settlement or exculpation under the plan are insider claims against the allegedly disinterested directors and managers themselves, or implicate the alleged disinterested directors because they approved the challenged transactions.  *See* Proposed Plan, at Article VIII.C; D.  Thus, it is apparent that the allegedly disinterested directors who approved the proposed settlement are on both sides of the transaction — e.g., they are approving a settlement incorporated in the Proposed Plan under which they are receiving releases.

26.    In light of the releases and exculpation that the directors would receive under the Proposed Plan, the plan should not include the term "Disinterested Director" as that term may mislead voters into thinking that the allegedly disinterested directors have no interest in approval of the plan. To avoid that confusion, that term should be stricken from the Proposed Disclosure Statement.

27.    Finally, with regard to the Settlement Agreement itself, which the Debtors seek approval of by separate motion, the EFH Indenture Trustee reserves all its rights, including with regard to the appropriate level of disclosure should EFH Noteholders be granted the right to vote.

**C.    Proposed Disclosure Statement Lacks Adequate Disclosure
on Critical Components of the REIT Reorganization**

28.    The Debtors' proposed path out of chapter 11 hinges on a successful REIT Reorganization.  The integral Merger is rife with risk and pitfalls and the Proposed Disclosure Statement fails to provide parties with adequate information to make an informed judgment about the Proposed Plan.

14

29.    Most critically, the Proposed Disclosure Statement provides no information on the likelihood that the Debtors will be able to complete the REIT Reorganization and achieve all regulatory approvals.  Although the Proposed Disclosure Statement spends numerous pages explaining the REIT Reorganization and its attendant risks, the Debtors fail to inform creditors whether the Debtors will likely be able to clear all the regulatory hurdles implicated in the REIT Reorganization.  In the event that the Court determines that EFH Noteholders are entitled to vote, and after reviewing all applicable plan documents once they are released, the EFH Indenture Trustee will provide additional comments to the Proposed Disclosure Statement.  All of the EFH Indenture Trustee's rights in this regard are reserved.

**D.    EFH Creditors are Entitled to a Liquidation Analysis For EFH**

30.    The Debtors state that they "did not perform a liquidation analysis for the EFH Debtors or the EFIH Debtors because all Allowed Claims asserted by Holders of Claims against the EFH Debtors and the EFIH Debtors are being paid in full under the Plan."  Proposed Disclosure Statement, at 142.  However, as discussed above, the EFH Notes Classes are not being paid in full.  EFH Noteholders are therefore entitled to an EFH liquidation analysis in order to determine whether the Proposed Plan is in their best interests and the analysis should provide sufficient detail so that EFH Noteholders can actually determine what their recovery outcome would be in a chapter 7 case (with and without the approval of any settlements that are contemplated).

**V.**
**CONCLUSION**

WHEREFORE, the EFH Indenture Trustee respectfully request the Court: (a)  deny approval of the Proposed Disclosure Statement; or (b) continue the hearing on the Proposed

4812-6195-7158.8

Disclosure Statement to provide parties sufficient time to review all applicable plan documents once all such documents are released.

Dated: Wilmington, DE
       August 17, 2015

**CROSS & SIMON, LLC**

  */s/ Christopher P. Simon*
Christopher P. Simon (Del. Bar No. 3697)
1105 North Market Street, Suite 901
Wilmington, Delaware 19801
Telephone: (302) 777-4200
Facsimile: (302) 777-4224
csimon@crosslaw.com

- and –

NIXON PEABODY LLP
Amanda D. Darwin
Richard C. Pedone
Erik Schneider
100 Summer Street
Boston, Massachusetts 02110
Telephone: (617) 345-1000
Facsimile: (617) 345-1300
adarwin@nixonpeabody.com
rpedone@nixonpeabody.com

-and-

Christopher J. Fong
437 Madison Avenue
New York, NY 10022
Telephone: 212-940-3724
Facsimile: 855-900-8613
cfong@nixonpeabody.com

*Co- Counsel to American Stock Transfer & Trust*