## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| | ) | Case No. 14-10979 (CSS) |
| ENERGY FUTURE HOLDINGS CORP., *et al.*, | ) | (Jointly Administered) |
| | ) | |
| Debtors. | ) | **Re: D.I. [5246]** |
| | ) | **Hearing Date: September 17, 2015 at 9:00 a.m.** |
| | ) | **Objection Deadline: August 17, 2015 at 4:00 p.m.** |

### OBJECTION OF UMB BANK, N.A.
### IN CONNECTION WITH THE DISCLOSURE STATEMENT FOR
### DEBTORS' THIRD AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION

UMB Bank, N.A., as Indenture Trustee (the "Trustee") for the unsecured 11.25%/12.25%

Senior Toggle Notes Due 2018 (the "PIK Notes") and the 9.75% Senior Notes due 2019 (the

"Unexchanged Senior Notes" and, together with the PIK Notes, the "EFIH Unsecured Notes"),

by and through its undersigned counsel, files this objection (the "Objection") in connection with

the Debtors' *Disclosure Statement for the Third Amended Joint Chapter 11 Plan of*

*Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the*

*Bankruptcy Code* [D.I. 5246] (the "Disclosure Statement").[1]  In support of this Objection, the

Trustee respectfully submits as follows:

### PRELIMINARY STATEMENT

Only one week ago, on August 10, 2015, the Debtors filed their Third Amended Joint

Plan of Reorganization (the "Plan"), the Disclosure Statement, the Settlement Agreement, the

Plan Support Agreement and related transaction documents underpinning the Restructuring

Transactions contemplated by the Plan.  Contrary to statements made on the record by counsel to

---

[1]  Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Plan or the Disclosure Statement, as applicable.

certain of the Plan Sponsors, however, the Plan does not "embrace three fundamental principles of Chapter 11 reorganization: consensus, unimpairment and put your money where your mouth is." Omnibus Hr'g Tr. 31:17-19 (August 11, 2015). As was made clear at the August 11th hearing, the Debtors: (i) did not seek input from either the Trustee or certain significant holders of EFIH Unsecured Note Claims in connection with formulating the Plan; (ii) seek to alter/impair the contractual entitlements of holders of EFIH Unsecured Note Claims through the Plan; and (iii) effectively have given up any recourse against the Plan Sponsors if the Equity Investors and Backstop Purchasers decide, in the exercise of their unqualified discretion, not to fund the Plan.[2] Nevertheless, the Trustee and its advisors are rapidly attempting to digest the complex set of transactions and are working with the Debtors and their advisors to: (i) comprehend the complex and interrelated Restructuring Transactions contemplated by the Plan as well as the related Plan Support Agreement and Settlement Agreement; (ii) more fully understand how the Plan was negotiated, including the considerations and tradeoffs which factored into the final forms of the Merger Agreement and related debt and equity commitments; and (iii) identify concerns about the economic and structural risks borne by holders of EFIH Unsecured Note Claims, as well as reasonable corrective measures that can be undertaken to resolve such concerns.

The Trustee recognizes that, given the structure of the Plan and the proposed treatment of EFIH Unsecured Note Claims, issues concerning adequacy of the Disclosure Statement with

---

[2]    Article VIII.B.9 of the Disclosure Statement contains the following risk factor with respect to the Merger Agreement:

Although the Debtors believe that the Merger may close and result in the contribution of cash to fund payments under the Plan, consummation of the Merger and contribution of the cash is subject to certain conditions associated with, among other things, regulatory and REIT-related approvals and rulings, satisfaction of which is uncertain. As such, the Merger may not close as a result of the failure of one or more of these conditions to be satisfied. *Whether or not such conditions are satisfied, the Equity Investors or the Backstop Purchasers may determine not to close the Merger or contribute the cash necessary to fund payments under the Plan. In such case, the Debtors will lack the ability to pursue specific performance or damages with respect to the failure of the Merger or the debt or equity financing to close.*

respect to EFIH Unsecured Note Claims are limited.  Nevertheless, the Disclosure Statement fails to provide certain "adequate information" as required by Bankruptcy Code section 1125 and should not be approved in its current form.  In particular, the Disclosure Statement fails to provide adequate information with respect to following issues:

- Allowance of EFIH Unsecured Note Claims (Plan III.B.21).  The Plan fails to disclose how the Debtors are calculating principal as well as prepetition and postpetition interest.  The Disclosure Statement should be modified to include the actual dollar amount owed as of the Petition Date plus the rate and method by which postpetition interest will be calculated.

- Timing of Payment of Undisputed Claims or Portions Thereof.  The Plan contains ambiguous language regarding *when* distributions under the Plan will be made to holders of allowed claims if a portion of their claim is disputed.  The Plan and Disclosure Statement should be clarified to detail procedures to be followed and to assure holders of EFIH Unsecured Note Claims that litigation concerning the proper rate of postpetition interest and methodology for calculating such amounts will not delay distributions with respect to the undisputed portion of their claims.

- Terms and Conditions of the Postpetition Interest Reserve (Plan VII.K).  The Disclosure Statement does not contain adequate information concerning the terms and conditions of the Postpetition Interest Reserve.  More disclosure is necessary to assure holders of EFIH Unsecured Note Claims that Reorganized EFIH will be able to satisfy postpetition interest claims upon allowance.

- Payment of Trustee Fees and Expenses (Plan IV.R).  The Plan impairs holders of the EFIH Unsecured Notes and unfairly discriminates against the Trustee by failing to provide for payment in full of the Trustee's fees and expenses despite its clear contractual entitlement to be reimbursed for such fees and costs.  The Disclosure Statement contains no good faith explanation as to why the Debtors contemplate using up to $50 million of EFH/EFIH dollars to pay the fees and expenses of the:  (i) TCEH Unsecured Notes Trustee; (ii) TCEH Second Lien Notes Trustee; (iii) TCEH Second Lien Notes Collateral Agent; (iv) members of the TCEH Unsecured Ad Hoc Group; and (v) members of the TCEH Second Lien Consortium, while failing to have the solvent EFIH estate reimburse the Trustee.[3]

Furthermore, the Disclosure Statement and solicitation procedures are flawed because the Debtors have improperly classified Class B6 (General Unsecured Claims Against the EFIH Debtors) as unimpaired.  Bankruptcy Code section 1124(1) states that a claim is impaired under a

---

[3]    *See* Settlement Agreement at § 2.7(a)(ii) (setting a cap of $49.75 million on fees and expenses).

plan unless the plan "leaves unaltered the legal, equitable, and contractual rights to which such claim or interest entitles the holder of such claim or interest." 11 U.S.C. § 1124(1). Not content to merely have the Plan provide for the payment of all allowed EFIH Unsecured Note Claims (whatever they may be), the Plan, *inter alia*, takes positions regarding the rate at which the Debtors intend to pay postpetition interest (Federal Judgment Rate) and fails to provide for payment of other reimbursable obligations under the applicable indentures, including the Trustee's fees and expenses – each of which are inconsistent with the terms of the applicable indentures. As such, the Plan does not fully honor the Debtors' contractual obligations to holders of EFIH Unsecured Note Claims, and, therefore, such claims are impaired and entitled to vote under the Plan. While the Trustee recognizes that the Debtors may take exception with this position, the issue of impairment clearly is in dispute and will not be resolved in advance of solicitation. In order to preserve the legal rights of holders of EFIH Unsecured Note Claims, the Court should deem Class B6 (General Unsecured Claims Against the EFIH Debtors) to have rejected the Plan on a provisional basis.

For the foregoing reasons and those set forth below, approval of the Disclosure Statement should be denied unless the modifications to the Plan and Disclosure Statement set forth in this Objection are adopted by the Debtors.

## BACKGROUND

1.      On April 29, 2014, the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

2.      On April 14, 2015, the Debtors filed the *Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code* [D.I. 4142] (the "Original Plan") and the disclosure statement related thereto [D.I. 4143]. Several months later,

4

on July 23, 2015, after the Debtors found that they were unable to effectuate the Original Plan,

they filed the Disclosure Statement and the *Debtor's Amended Joint Chapter 11 Plan of*

*Reorganization* [D.I. 5078].  On August 3, 2015, the Debtors filed the *Debtors' Second Amended*

*Joint Chapter 11 Plan of Reorganization* [D.I. 5197].  On August 10, 2015, the Debtors filed the

*Third Amended Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant*

*to Chapter 11 of the Bankruptcy Code* [D.I. 5244].

        3.      On August 10, 2015, the Debtors also filed a number of motions seeking approval

of agreements related to the implementation of the Plan, including the *Motion of Energy Future*

*Holdings Corp., et al., to Authorize the Debtors to Enter into and Perform under the Plan*

*Support Agreement* (the "PSA Motion")[4] [D.I. 5248] and the *Motion of Energy Future Holdings*

*Corp., et al., to Approve a Settlement of Litigation Claims and Authorize the Debtors to Enter*

*Into and Perform Under the Settlement Agreement* [D.I. 5249] (collectively, the "Plan

Documents").

**OBJECTION**

**I.    THE DISCLOSURE STATEMENT DOES NOT PROVIDE ADEQUATE**
**       DISCLOSURE**

        4.      The Disclosure Statement fails to provide "adequate information" as required by

Bankruptcy Code section 1125 and should not be approved in its current form.  A disclosure

statement may be approved as adequate only if it contains "information of a kind, and in

sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor

and the condition of the debtor's books and records . . . that would enable a hypothetical investor

of the relevant class to make an informed judgment about the plan."  11 U.S.C. § 1125(a); *see*

---

[4]    The PSA Motion includes, as exhibits, the Purchase Agreement and Agreement and Plan of Merger (the
    "Merger Agreement"), the Equity Commitment Letter, the Backstop Agreement and the Tax Matters
    Agreement.

5

*also Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. General Motors Corp.*, 337 F.3d 314, 322

(3d Cir. 2003) ("The importance of full disclosure is underlaid by the reliance placed upon the

disclosure statement by the creditors and the court.") (internal quotations omitted); *Century*

*Glove, Inc. v. First Am. Bank of New York*, 860 F.2d 94, 100 (3d Cir. 1988). Furthermore, in

determining whether a disclosure statement provides adequate information, Bankruptcy Code

section 1125 requires that the Court consider "the benefit of additional information to creditors

and other parties in interest." 11 U.S.C. § 1125(a). Courts have ample discretion to determine

what constitutes adequate information. *In re Lower Bucks Hosp.*, 571 Fed. Appx. 139, 142 (3d

Cir. 2014) (citing *In re Texas Extrusion Corp.*, 844 F.2d 1142, 1157 (5th Cir. 1988)). It is

impossible to "overemphasize the debtor's obligation to provide sufficient data to satisfy the

Bankruptcy Code standard of 'adequate information.'" *Oneida Motor Freight, Inc. v. United*

*Jersey Bank*, 848 F.2d 414, 417 (3d Cir. 1988). Indeed, the "preparing and filing of a disclosure

statement is a critical step in the reorganization of a Chapter 11 debtor," *id.*, and, as such, "must

clearly and succinctly inform the average unsecured creditor *what it is going to get, when it is*

*going to get it, and what contingencies there are to getting its distribution.*" *In re Ferretti*, 128

B.R. 16, 19 (Bankr. D.N.H. 1991) (emphasis added).

      5.     As detailed below, the Disclosure Statement fails to provide adequate information

with respect to, among other things: (i) the proposed allowance of the EFIH Unsecured Note

Claims including how the Debtors intend to calculate principal and interest in respect of the

EFIH Unsecured Note Claims; (ii) when holders of EFIH Unsecured Note Claims will be paid in

light of the postpetition interest dispute; (iii) the proposed treatment of EFIH Unsecured Note

Claims under the Plan; (iv) the terms and conditions of the Postpetition Interest Reserve; and (v)

the Plan's failure to provide for the payment in full of the Trustee's fees and expenses under the applicable indentures.

### A. The Disclosure Statement Does Not Contain Adequate Information Regarding the Allowance of EFIH Unsecured Note Claims

6.     The Disclosure Statement and Plan fails to provide adequate information regarding the allowance of EFIH Unsecured Note Claims pursuant to the Plan.  Article III.B.21(b) of the Plan provides as follows:

> *Allowance*: As Class B6 Claims, the EFIH Unsecured Note Claims are Allowed in an amount equal to the sum of: (i) the principal amount outstanding, plus accrued but unpaid prepetition interest, under the respective indentures; and (ii) accrued postpetition interest at the Federal Judgment Rate, but not including, for the avoidance of doubt, any Makewhole Claims.

The Plan and Disclosure Statement should be modified to precisely identify the principal and accrued and unpaid interest outstanding, as of the Petition Date, for holders of EFIH Unsecured Notes. The Disclosure Statement should disclose the method by which the Debtors intend to calculate postpetition interest to ensure that it is in compliance with the applicable indentures. The Disclosure Statement should also disclose how the Trustee's fees and expenses will be treated under the Plan including, without limitation, whether the Debtors intend to include the Trustee's fees and expenses as part of the Allowed Class B6 Claims or whether they intend to pay the fees and expenses directly under the Plan.

### B. The Disclosure Statement Does Not Contain Adequate Information Regarding When Holders of Allowed EFIH Unsecured Note Claims Will Receive Plan Distributions

7.     The Disclosure Statement fails to provide adequate information regarding the treatment of EFIH Unsecured Note Claims under the Plan, including what the holders of EFIH Unsecured Note Claims are going to get and when they are going to get it. *In re Ferretti*, 128 B.R. at 19.  Specifically, the Disclosure Statement is unclear concerning *when* holders of EFIH

7

Unsecured Note Claims will receive distributions under the Plan in respect of the undisputed

portions of their claims. On one hand, the Plan provides for holders of Allowed Claims to

receive Plan distributions on the Effective Date. *See* Plan VI.A. On the other hand, the Plan

precludes distributions to holders of Disputed Claims until such claims are Allowed. *See* Plan

VII.I. In light of the postpetition interest dispute, the Plan could be interpreted to preclude the

distribution of even undisputed portions of the EFIH Unsecured Note Claims. The Plan and

Disclosure Statement should be clarified so that there is no dispute about the entitlement of

holders of EFIH Unsecured Note Claims to receive distributions on account of the undisputed

portion of their allowed claims under the Plan on the Effective Date.

### C. The Disclosure Statement Contains Inadequate Information Regarding the Treatment of the EFIH Unsecured Note Claims

8.      While the Disclosure Statement explains that under the Plan, "each Holder shall

receive, up to the Allowed amount of its Claim, payment in full in Cash or other treatment

rendering such Claim Unimpaired," the Disclosure Statement fails to provide information that is

adequate to enable the holders of the EFIH Unsecured Notes to understand the precise treatment

of the EFIH Unsecured Note Claims under the Plan because it allows the Debtors to substitute

cash for such "other treatment rendering such Claim Unimpaired." Plan III.B(21)(c).

Consequently, holders of EFIH Unsecured Note Claims cannot be assured of what they might

receive under the Plan and when such decision will be made. The Plan and Disclosure Statement

should be amended to limit distributions to cash or, alternatively, to explicitly describe the

alternative treatment contemplated by the Debtors.

### D. The Disclosures Regarding the Postpetition Interest Reserve are Inadequate

9.      The Disclosure Statement contains inadequate information regarding the

Postpetition Interest Reserve. With respect to unimpaired classes in particular, a reserve assures

8

creditors that they will not lose their "ability to collect in full merely because another of the Plan's provisions denies payment of disputed claims on the effective date." *In re Chateaugay Corp.*, 10 F.3d 944, 960 (2d Cir. 1993) (noting the particular importance of a reserve for unimpaired claimants). Here, the Disclosure Statement fails to provide any information regarding key terms and conditions of the Postposition Interest Reserve and fails to provide holders of EFIH Unsecured Note Claims with the ability to evaluate the merits of the reserve. The Disclosure Statement fails to discuss, among other things: (i) whether the Postpetition Interest Reserve will be established as an escrow account; (ii) where the reserve or escrow account will be maintained and whether such account will remain property of Reorganized EFIH; (iii) whether funds in the Postpetition Interest Reserve will be segregated by bond issuance and/or subject to the claims of competing creditors; (iv) whether the Postpetition Interest Reserve will provide for compounding interest; (v) whether the Postpetition Interest Reserve will be replenished, and, by whom;[5] (vi) the mechanics for distributions under the Postpetition Interest Reserve (*i.e.*, is a final non-appealable order required?); (vii) how the initial Postpetition Interest Reserve amount will be determined and mechanics for disputing such calculation, if necessary; and (viii) whether the Trustee will have the means to verify reserve funds and raise disputes in connection therewith. All of this information is necessary to assure holders of EFIH Unsecured Note Claims that they will not lose their ability to recover on account of their postpetition interest claims.

---

[5] The Plan provides that "[u]nless otherwise specifically provided for in the Plan or the Confirmation Order, and notwithstanding any documents that govern the Debtors' prepetition funded indebtedness to the contrary, (1) postpetition and/or default interest shall not accrue or be paid on any Claims and (2) no Holder of a Claim shall be entitled to: (a) interest accruing on or after the Petition Date on any such Claim; or (b) interest at the contract default rate, as applicable." Plan VI.H. The Debtors should modify the Plan to explicitly carve out the holders of Class B6 claims from this provision as it is inconsistent with principles of unimpairment.

**E.  The Disclosure Statement Contains Inadequate Information Concerning Payment of the Trustee's Fees and Expenses**

10.     The Plan fails to provide for payment in full of the Trustee's fees and expenses and the Disclosure Statement contains no explanation as to why the Debtors contemplate using EFH/EFIH cash to pay the fees and expenses of the:  (i) TCEH Unsecured Notes Trustee; (ii) TCEH Second Lien Notes Trustee; (iii) TCEH Second Lien Notes Collateral Agent; (iv) members of the TCEH Unsecured Ad Hoc Group; and (v) members of the TCEH Second Lien Consortium, while failing to have the solvent EFIH estate pay the fees and expenses of the Trustee.[6]

11.     The Debtors' failure to provide for the separate payment of the fees and expenses of the Trustee (including professional fees) in accordance with the applicable indentures governing the EFIH Unsecured Note Claims alters the contractual rights of both the Trustee and the holders of EFIH Unsecured Note Claims.  Section 7.07 of each applicable indenture mandates the payment of the Trustee's reasonable fees and expenses, including professional fees.[7]  Although these fees and expenses are secured by a charging lien, they are a direct obligation of, and claim against, the Debtors in addition to the EFIH Unsecured Note Claims.

---

[6]     Article IV.R of the Plan provides as follows:

> The EFH Debtors shall pay in cash in full on the Effective Date, the reasonable and documented fees and expenses (including professional and other advisory fees and expenses) incurred through the Effective Date of the TCEH Unsecured Notes Trustee, the TCEH Second Lien Notes Trustee, the TCEH Second Lien Notes Collateral Agent, the members of the TCEH Unsecured Ad Hoc Group, and the members of the TCEH Second Lien Consortium.

[7]     Section 7.07 of the EFIH Senior Toggle Note Indenture provides as follows:

> "The Issuer and the Guarantors, jointly and severally, shall pay to the Trustee from time to time such compensation for its acceptance of this Indenture and services hereunder as the parties shall agree in writing from time to time ... The Issuer and the Guarantors, jointly and severally, shall reimburse the Trustee promptly upon request for all reasonable disbursements, advances and expenses incurred or made by it in addition to the compensation for its services. Such expenses shall include the reasonable compensation, disbursements and expenses of the Trustee's agents and counsel."

*See, e.g., Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co.*, 549 U.S. 443 (2007)

(establishing that unsecured claims for contractually authorized attorneys' fees incurred by

postpetition litigation are presumptively enforceable and not barred under Bankruptcy Code

section 502(b)). As a trustee of notes in a solvent estate, the Trustee should not be required to

utilize its charging lien to satisfy its fees and expenses under the indentures, but should be

entitled to recover such fees and expenses directly from the EFIH estate in accordance with its

contractual rights. Any other result will deprive holders of the EFIH Unsecured Note Claims of

their contractual bargain and render such claims impaired.

## II.   THE PLAN IMPROPERLY CLASSIFIES THE EFIH UNSECURED NOTE CLAIMS AS UNIMPAIRED

12.   The Plan does not comply with the applicable provisions of the Bankruptcy Code

because it improperly classifies the EFIH Unsecured Note Claims as "unimpaired." Here, the

Plan does not satisfy Bankruptcy Code section 1129(a)(1) because it classifies Class B6 (General

Unsecured Claims Against the EFIH Debtors) as "unimpaired," even though the such claims are,

in fact, "impaired" for purposes of Bankruptcy Code section 1124(1).

13.   The Third Circuit presumes impairment under a plan so as to "enable a creditor to

vote on acceptance of the plan. . . . The burden is placed on the debtor to demonstrate that the

plan leaves the creditor's rights unaltered." *In re PPI Enters. (U.S.), Inc.*, 324 F.3d 197, 203 (3d

Cir. 2003). Bankruptcy Code section 1124 provides that "[e]xcept as provided in

section 1123(a)(4) of this title, a class of claims or interests is impaired under a plan unless, with

respect to each claim or interest of such class, the plan - (1) leaves unaltered the legal, equitable,

and contractual rights to which such claim or interest entitles the holder of such claim or

interest . . . ." 11 U.S.C. § 1124(1). If, as is the case here, a chapter 11 plan does not leave a

creditor's legal, equitable and contractual rights "entirely unaltered, the creditors' claim will be

11

treated as impaired under section 1124 of the Bankruptcy Code." *Id.* at 202. The Debtors'
failure to provide for payment of postpetition interest at the rate required under the applicable
indentures or to pay the Trustee's fees and expenses as required under the applicable indentures
alters the contractual rights of the holders of EFIH Unsecured Note Claims and, thus, impairs
such claims. *See* Plan VII.K.

       14.    Establishing the Postpetition Interest Reserve and preserving the ability to litigate
the postpetition interest issue post-confirmation does not remedy this defect. The Debtors have
structured the Plan in such a way to deny holders of EFIH Unsecured Note Claims the right to
vote and invoke the cramdown protections of Bankruptcy Code section 1129(b). This Court
should not permit the Debtors to strip holders of EFIH Unsecured Note Claims of their statutory
protections under Bankruptcy Code section 1129. The Trustee has been unequivocal in its
position that the availability of postpetition interest at the contact rate arises not just under
Bankruptcy Code sections 1129(a)(7) and 726(a)(5), but also under other sections of the
Bankruptcy Code including Bankruptcy Code section 1129(b)'s "fair and equitable" test. *See,
e.g., Reply in Further Support of UMB Bank, N.A.'s Motion to Dismiss,* Adv. Pro. No. 14-51002
(CSS) at 7 (March 5, 2015) [D.I. 18]; *Letter to the Hon. Judge Sontchi in Connection with the
EFIH Debtors' Partial Objection to Proof of Claim No. 6347 Filed by the Indenture Trustee for
the EFIH Unsecured Notes* at 4 (Aug. 7, 2015) [D.I. 5239].

       15.    If the Debtors do not want to solicit votes from holders of EFIH Unsecured Note
Claims, they must comply with Bankruptcy Code section 1124(1) and "leave unaltered" their
contractual rights by paying postpetition interest at the contract rate and providing payment for
the Trustee's fees and expenses. They cannot have it both ways where they alter the contractual
rights of the EFIH Unsecured Note Claims *and* deny such holders the right to vote on the Plan.

In order to preserve the legal rights of holders of EFIH Unsecured Note Claims, the Court should

deem Class B6 (General Unsecured Claims Against the EFIH Debtors) to have rejected the Plan

on a provisional basis.

## III.    THE PLAN SUFFERS FROM OTHER DEFECTS THAT MAY RENDER IT UNCONFIRMABLE

16.    In addition to the impairment issues discussed herein, the Trustee submits that the

Plan may be susceptible to other Plan-related objections that may make confirmation of the Plan

impossible, including, without limitation, the following:

- Improper Third Party Releases  - 1129(a)(1).  The Plan appears to contain unlawful nonconsensual third party releases of direct claims that may be asserted by certain holders of EFIH Unsecured Note Claims against certain of the Debtors' equity interest holders, directors and officers, as well as the Plan Sponsors in connection with the abandoned Oncor sale process.  In addition, the Plan's exculpation provisions are overbroad for similar reasons.

- Improper Pre-Effective Date Releases of the Current Sponsors and the E-Side Debtors' Directors, Officers and Representatives – 1129(a)(1).  As the Plan incorporates the Settlement Agreement and the releases contained therein, the Plan provides for improper releases of EFH's current equity interest holders as well as the E-Side Debtors' directors, officers and representatives *at confirmation*, and without any assurance that the Plan will be consummated.  Such release may be unlawful under controlling law in the Third Circuit.

- Improper Payments Pursuant to Plan – 1129(a)(4).  The Plan appears to violate Bankruptcy Code section 1129(a)(4) by providing for payments from the EFH and EFIH estates totaling tens of millions of dollars to the advisors for the TCEH Second Lien Consortium and the TCEH Unsecured Ad Hoc Group without any review mechanism.

- Feasibility – 1129(a)(11).  The Plan may not satisfy the feasibility requirement set forth in Bankruptcy Code section 1129(a)(11) because (i) the Plan is contingent on a successful REIT Reorganization and receipt of a variety of tax rulings and regulatory rulings in connection therewith and (ii) the Plan Documents do not indicate that the Debtors have any rights to pursue specific performance or seek monetary damages against the Plan Sponsors if they fail to fund.

- Good Faith – 1129(a)(3).  The Debtors may be unable to demonstrate that the Plan was negotiated and proposed in good faith, particularly given that the Plan provides the Plan Sponsors with an option at pursuing the REIT Reorganization

and secures broad releases for a range of parties, including the Debtors' directors, officers and shareholders, despite known and material risks to the holders of EFIH Unsecured Note Claims should the Plan fail.

- Compliance with the Bankruptcy Code - 1129(a)(1). The Plan may fail to comply with the applicable provisions of the Bankruptcy Code if the Court sustains objections to, among other things, approval of the Settlement Agreement or based on disparate treatment of holders of EFIH Unsecured Note Claims.

### RESERVATION OF RIGHTS

17.     The Trustee continues to evaluate the Disclosure Statement, the Plan and the Plan Documents that have been filed with the Court. The Trustee reserves all rights to seek discovery in connection with confirmation of the Plan, and approval of the intertwined Plan Support Agreement and Settlement Agreement. Furthermore, this Objection is submitted without prejudice to, and with a full reservation of, the Trustee's rights to supplement this Objection in advance of, or in connection with, the hearing to approve the Disclosure Statement. Nothing herein shall be deemed to waive the Trustee's right to assert any arguments in connection with confirmation of the Plan and the Debtors' motions seeking approval of the Plan Support Agreement and the Settlement Agreement.

*[Remainder of page left intentionally blank]*

## CONCLUSION

**WHEREFORE**, for the reasons set forth in this Objection, the Trustee respectfully

requests that the Court deny approval of the Disclosure Statement unless the Plan and Disclosure

Statement are modified as set forth in the Objection.

Dated: August 17, 2015
Wilmington, Delaware


**AKIN GUMP STRAUSS HAUER & FELD
LLP**
Ira S. Dizengoff (admitted *pro hac vice*)
Abid Qureshi (admitted *pro hac vice*)
One Bryant Park
New York, NY 10036
Telephone:    (212) 872-1000
Facsimile:    (212) 872-1002
Email:        idizengoff@akingump.com
              aqureshi@akingump.com

Scott L. Alberino (admitted *pro hac vice*)
1333 New Hampshire Avenue, N.W.
Washington, D.C. 20036
Telephone:    (202) 887-4000
Facsimile:    (202) 887-4288
Email:        salberino@akingump.com

By:   */s/ Raymond H. Lemisch*
**KLEHR HARRISON HARVEY
BRANZBURG LLP**
Raymond H. Lemisch (No. 4204)
919 Market Street, Suite 1000
Wilmington, DE 19801
Telephone: (302) 426-1189
Facsimile: (302) 426-9193
E-mail: rlemisch@klehr.com


*-and-*

**FOLEY & LARDNER LLP**
Harold L. Kaplan (admitted *pro hac vice*)
Mark F. Hebbeln (admitted *pro hac vice*)
Lars A. Peterson (admitted *pro hac vice*)
321 North Clark Street, Suite 2800
Chicago, IL 60654-5313
Telephone: (312) 832-4500
Facsimile: (312) 832-4700
Email: hkaplan@foley.com
       mhebbeln@foley.com
       lapeterson@foley.com

Barry G. Felder (admitted *pro hac vice*)
Jonathan H. Friedman (admitted *pro hac vice*)
90 Park Avenue
New York, NY 10016
Telephone: (212) 682-7474
Facsimile: (212) 687-2329
E-mail: bgfelder@foley.com
        jfriedman@foley.com

*Co-Counsel for UMB BANK, N.A., as Trustee*