**UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re | Chapter 11 |
| Energy Future Holdings Corp., *et al.,*[1] | Case No. 14-10979 (CSS) |
| Debtors. | Jointly Administered |
| | **Re: Docket Nos. 4138, 4274, 4497, 5329, and 5356** |

**JOINDER OF FENICLE AND FAHY TO THE OBJECTIONS OF THE EFH OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO THE MOTION OF ENERGY FUTURE HOLDINGS CORP., ET AL. FOR ENTRY OF AN ORDER APPROVING THE DISCLOSURE STATEMENT, ET AL.**

Shirley Fenicle, as successor-in-interest to the Estate of George Fenicle, and David William Fahy (respectively, "Fenicle" and "Fahy"), both members of the EFH Official Committee of Unsecured Creditors ("Committee")[2], by and through their undersigned counsel, hereby join (the "Joinder") in the Objection of the EFH Official Committee to Motion of Energy Future Holdings Corp., et al., for Entry of an Order Approving the Disclosure Statement, et. al., (the "EFH Committee Objection")[3] [Docket No. 5356], but with respect to asbestos-related issues, and assert the following further objections.

1. The collective Debtors' Disclosure Statement is entirely inadequate in its disclosure of the Debtors' legacy asbestos liabilities, the assets available to satisfy those liabilities and the specific treatment of asbestos claimants. Certainly, the background on the Debtors' asbestos liability

---

[1] The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, which are being jointly administered on a final basis, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

[2] In this Joinder, Fenicle and Fahy are acting in their own respective individual capacity and not as members of the Committee.

[3] Capitalized terms used, but not defined, herein shall have the meanings ascribed to them in the EFH Committee Objection

is necessary.  The Debtor's Amended Plan of Reorganization [Docket No. 5078] was filed July 23, 2015;a Second Amended Joint Plan was filed August 3, 2015 [Docket No.5197]; and a Third Amended Joint Plan was filed on August 10, 2015 [Docket No. 5244]  The Debtors in each of the approximately 40 separate bankruptcies for which joint administration has been granted herein refer to themselves collectively as "Debtors."  However, in reality, use of the collective noun is merely a convenience and does nothing to destroy the separate and independent status of each Debtor whose claims and Plan of Reorganization has to be determined separately and on its own merits, as provided by Local Rule 1015-1 (**Joint Administration of Cases Pending in the Same Court**): "An order of joint administration under this Local Rule is for procedural purposes only and shall not cause a 'substantive' consolidation of the respective debtors' estates."

2.       Included in the collective "Debtors" are the separate bankruptcies of EECI, Inc. (Case No. 14-10992), EEC Holdings (Case No. 14-10990), LSGT Gas Co. LLC (Case No. 14-11039), and LSGT SACROC, Inc. (Case No. 14-11012).  There appears to be no dispute that these are in fact purely asbestos companies. EECI in particular pre-petition was in the business of collecting asbestos lawsuits to pass on to insurance carriers with a tender for defense and indemnity.  All four appear to have been pawns in a fiscal shell game by which in excess of $1 billion was moved around before commencement of these cases.

3.       Their fate herein is thus entirely controlled by Third Circuit law which requires compliance with 11 USC § 524(g). *In re Combustion Engineering, Inc.*, 391 F.3rd 190 (Third Circuit, 2004).  Despite Debtors' apparent intention to proceed with an attempt to reorganize the asbestos-related debtors without regard to Third Circuit law, the fact remains that this proposed plan is unconfirmable.  *Combustion Engineering* sets out in a definitive and unambiguous way how an

asbestos bankruptcy must proceed in this Circuit.  It avails the Debtors nothing to have tried to bury the asbestos debtors in a larger group.

4.      Despite their desires, 11 U.S.C.A. § 105 does not provide an independent source of federal subject matter jurisdiction and the general grant of equity powers to the Bankruptcy Court cannot trump specific provisions established by the Congress; indeed, those equitable powers must be exercised within the parameters of the Code itself.  It is a basic rule of statutory construction that specific provisions prevail over more general provisions, and when the Congress speaks by making specific changes, the Court's general equitable powers do not allow it to ignore the standards and procedures already established.  One of the basic principles in bankruptcy jurisprudence is that relevant non-bankruptcy law determines whether claims are enforceable for bankruptcy purposes, and claims cannot be allowed if those claims could not be enforced against the debtor outside of bankruptcy.

5.      Clearly, the Debtors hope to persuade this Court that it has been given a "roving commission to do equity" (*Combustion Engineering* at p. 236) which should be exercised to save the Debtor and enrich the T-side creditors at the expense of the E-side creditors, including EFH's asbestos victims.  But "the general grant of equitable power contained in Section 105(a) cannot trump specific provisions of the Bankruptcy Code and must be exercised within the parameters of the Code itself …. When the Bankruptcy Code provides a specified means for a debtor to obtain a specific form of equitable relief, those standards and procedures must be observed …. A Section 105 injunction cannot alter another provision of the Code."

6.      In *Combustion Engineering*, the Bankruptcy Court attempted to achieve a result inconsistent with Section 524(g) and it failed (at 236-237).

7.      This Court has made clear that during the exclusivity period, Debtors are entitled to try anything they can to solve their financial problems and come up with a viable plan of reorganization.  While they are entitled to try, they are not entitled to succeed, and indeed, in this Circuit, *Combustion Engineering* makes it clear that they must fail.

8.      EECI's predecessor Ebasco went into business 100 years ago, and by the 1930s was a major user of asbestos insulation and related products in its international power plant design, construction, maintenance, and repair business, which continued under a series of different ownerships through the 1980s.  In its wake, Ebasco has thus left a worldwide legacy of deadly asbestos in place.  That asbestos remains a potential source of future disease for decades to come.  Given the long latency period of asbestos disease, even pre-1980 exposures can be expected to produce a significant volume of fatal asbestos cancers for at least another 30 years.

9.      The latest Amended Disclosure Statement is inadequate because Debtors completely fail to disclose or discuss either the assets or the extent of liabilities residing with EECI and the related debtors, for which other EFH companies likely share responsibility as a result of corporate conduct over the 40 years since Ebasco was acquired.  Failure to provide information concerning their separate financial history and current status, intercompany claims against others for use of their funds over the years, and the nature and extent of insurance coverage are fatal omissions and prevent creditors from carefully evaluating the appropriateness of any plan of reorganization.

10.      EECI liabilities also include potentially massive exposure to claims by Luminant employees, based upon Ebasco work at Luminant facilities. Since those claims, bundled into Class C5, are impaired, they will have an impact on E-side assets, and failure to include an appraisal thereof makes it impossible to accurately evaluate their importance.

11.     In pre-petition litigation, EECI provided testimony and evidence that its net worth was around $300 million, that EECI's assets were invested in the intercompany cash pool and made available to other members of the corporate family, and that EECI was essentially acting as a conduit to forward claims to insurance carriers. (Deposition of Gaylene McMahon taken September 7, 2006 in *Margaret Slanina, et al. v. General Electric Co., et al.*, District Court of Harris County, Texas, 11th Judicial District (transferred from 125th Judicial District), Cause No. 2003-63363.)

12.     To date, there has been no disclosure in this matter of the pre-petition financial records of EECI or related companies, the extent to which there are intercompany claims for unpaid interest on the money made available to affiliated companies, or the nature and extent of insurance coverage.  Despite our requests, Debtors have only been willing to make insurance information available to our Committee's counsel on a "professionals' eyes only" basis.  As a result, although our lawyers (as our agents) presumably know something about the insurance assets, they have not been permitted to tell us anything.  In addition, EECI may well have other good and valid claims against current and previously affiliated companies.

13.     Debtors' plan purports to provide that E-side asbestos creditors (Class A3) are unimpaired, will be treated as set out in Article III, Section B.3, and will be either fully paid (3(b)(i)) or reinstated (3(b)(ii)).  This plan is illusory and without substantial supporting detail is incapable of evaluation.

14.     "Reinstatement" is meaningless without clear explication of where these claims go, who is willing to take them, and what assets are made available to secure their ultimate payment over the next 50 years as currently unmanifested claimants get sick and die.  Similarly, "payment in full in cash" is fraught with difficulty.  The Debtor and claimants' counsel can settle cases one by

one, as asbestos litigants have been doing for decades. But potential problems arise when the sides do not agree.

15.    It would appear the Debtor intends to invoke Article VII, in such circumstances and presumably would turn to paragraph C – *Estimation of Claims* – which allows them to ask the Court to estimate disputed contingent claims and further provides, "in the event that the Bankruptcy Court estimates any contingent or unliquidated Claim, that estimated amount shall constitute a maximum limitation on such Claim for all purposes under the Plan …." While this may be an appropriate procedure for some types of claims, it is clearly both inappropriate and unconstitutional with respect to asbestos personal injury claims.  Indeed, each asbestos claimant is entitled to a jury trial and verdict to liquidate the value of his or her claim (*Northern Pipeline Co. v. Marathon Pipe Line Co.*, 458 U.S. 50 (1982); 28 U.S.C. 157(b)(2)(B) and (b)(5)).  The Court made clear at the hearing on August 11, 2015, that it understands these limitations:

> With regard to what the T-side of the plan says, I can't estimate personal injury claims. I don't have the constitutional authority to do it and the plan can say what it wants to say, but I'm not going to do it. [Transcript, p. 117:13-16.]

16.    While this gives us some comfort, it also shows that the Disclosure Statement is inaccurate and misleading.

<u>The T-Side</u>

17.    Fenicle and Fahy are creditor representatives on the E-side.  The T-side committee believes there is no asbestos problem, and that they have matters well in hand.  As we have pointed out before (Joinder to the Liberda Motion, paragraphs 14-16), there are major uncertainties and asbestos-related issues on the T-side that are interrelated with those on the E-side.  At least, the Debtors acknowledge that asbestos claims on the T-side are impaired and they expect to permit a vote by those creditors.  The plan is nonetheless objectionable because it includes other unsecured

creditors in the asbestos class, C5. Similarly, the inclusion of other creditors in the E-side asbestos class, A3, is equally inappropriate.  As outlined above, the idea that E-side asbestos creditors are unimpaired is incorrect and they should therefore be reclassified as impaired with the right to vote in their own class in this matter.

18.     Finally, we would request permission to insert a separate statement in the printed plan package, directed to present and future asbestos creditors, with our own recommendation.

## CONCLUSION

We fully support all the objections raised by our Committee.  In addition, asbestos victims have specific rights.  The Debtors' asbestos companies have done enough harm to asbestos victims over the decades.  They now seek to impermissibly add insult to those injuries. It is time they stop.

[Remainder of Page Intentionally Left Blank]

Dated: August 17, 2015       By:    <u>/s/ *Daniel K. Hogan*</u>
                                Daniel K. Hogan (DE Bar # 2814)
                                **HOGAN♦McDANIEL**
                                1311 Delaware Avenue
                                Wilmington, Delaware  19806
                                Telephone:  (302) 656-7540
                                Facsimile: (302) 656-7599
                                <u>dkhogan@dkhogan.com</u>

                                -and-

                                Steven Kazan (CA Bar # 46855)
                                Kazan McClain Satterley & Greenwood
                                A Professional Law Corporation
                                Jack London Market
                                55 Harrison Street, Suite 400
                                Oakland, CA 94607
                                Telephone: (510) 302-1000
                                Facsimile: (510) 835-4913

                                -and-

                                Ethan Early (CT Juris # 417930)
                                Early Lucarelli Sweeney & Strauss
                                265 Church Street, 11th Floor
                                New Haven, CT 06508-1866
                                Telephone: (203) 777-7799
                                Facsimile: (203) 785-1671

                                *Counsel for Shirley Fenicle, as successor-in-interest*
                                *to the Estate of George Fenicle, and David William*
                                *Fahy*