8-K 1 eix8k010903.htm EDISON INTERNATIONAL 8-K JANUARY 9, 2003

=====================================================================================================

SECURITIES AND EXCHANGE COMMISSION
Washington, D.C. 20549


FORM 8-K


CURRENT REPORT


Pursuant to Section 13 or 15(d) of the
Securities Exchange Act of 1934


Date of Report (Date of earliest event reported): December 20, 2002


EDISON INTERNATIONAL
(Exact name of registrant as specified in its charter)


| CALIFORNIA | 001-9936 | 95-4137452 |
|---|---|---|
| (State or principal jurisdiction of incorporation or organization) | (Commission file number) | (I.R.S. employer identification no.) |


2244 Walnut Grove Avenue
(P.O. Box 800)
Rosemead, California 91770
(Address of principal executive offices, including zip code)

626-302-2222
(Registrant's telephone number, including area code)


=====================================================================================================


Items 1 through 4 and 6 through 9 are not included because they are inapplicable.

*This current report includes forward-looking statements. These forward-looking statements are based on current expectations and projections about future events based upon knowledge of facts as of the date of this current report and assumptions about future events. These forward-looking statements are subject to various risks and uncertainties that may be outside the control of Edison International and its subsidiaries. Edison International has no obligation to publicly update or revise any forward-looking statements, whether as a result of new information, future events, or otherwise.*


Item 5.  Other Events

Lakeland Project Placed into Administrative Receivership in the United Kingdom

Edison Mission Energy is a wholly-owned, indirect subsidiary of Edison International.  Edison Mission Energy's Lakeland project operated a 220 MW combined cycle, natural gas-fired power plant located in the United Kingdom. Ownership of the project is held through Edison Mission Energy's indirect subsidiary, Lakeland Power Ltd., which

sold power generated from the plant pursuant to a power sales agreement with Norweb Energi Ltd, which is a direct subsidiary of TXU (UK) Holdings Limited (TXU UK) and an indirect subsidiary of TXU Europe Group plc (TXU Europe).

As previously reported, TXU UK and TXU Europe, together with a related entity, TXU Europe Energy Trading Limited (TXU Energy), entered into formal administration proceedings in the United Kingdom (similar to bankruptcy proceedings in the United States) on November 19, 2002. As a result of these actions and their effect on Norweb Energi Ltd. and Edison Mission Energy's contractual arrangements with other parties, the Lakeland power plant currently is not operating. In December 2002, the directors of Norweb Energi Ltd. appointed a liquidator to wind up its contractual rights and obligations.

On December 4, 2002, Norweb Energi Ltd. provided a notice of disclaimer of the Power Sales Agreement dated October 20, 1989 (as amended from time to time) between Lakeland Power Ltd. and Norweb Energi Ltd. (as successor to North Western Electricity Board) under Section 178 of the Insolvency Act. The disclaimer is effectively a termination of the power sales agreement.

On December 19, 2002, the lenders to the Lakeland project accelerated the debt owing under the bank agreement that governs the project's indebtedness primarily as a result of the notice of disclaimer of the power sales agreement by Norweb Energi Ltd. The bank loans of Lakeland Power Ltd. are non-recourse to Edison Mission Energy. Furthermore, the defaults on these loans do not cross-default to any other indebtedness of Edison Mission Energy or its affiliates.

On December 20, 2002, the project's lenders exercised their right to appoint Michael Thomas Seery and Michael Vincent McLoughlin, partners with KPMG LLP, as administrative receiver over the assets of Lakeland Power Ltd. This followed discussions over the past several weeks regarding future operations of the power plant. The administrative receiver is

Page 2

appointed to take control of the affairs of Lakeland Power Ltd. and has a wide range of powers (specified in the Insolvency Act 1986), including authorizing the sale of the power plant. The appointment of the administrative receiver results in the treatment of Lakeland power plant as an asset held for sale under Statement of Financial Accounting Standards No. 144, "Accounting for the Impairment or Disposal of Long-Lived Assets" (SFAS No. 144).

The events related to the Lakeland project will result in an impairment charge and a provision for bad debts of approximately $100 million ($70 million after tax) in the fourth quarter ended December 31, 2002, arising from the write-down of Edison Mission Energy of the Lakeland power plant and related claims under the power sales agreement (an asset group under SFAS No. 144) to their fair market value. Edison Mission Energy will account for the Lakeland project as a discontinued operation in its Annual Report on Form 10-K for the year ended December 31, 2002, and will no longer consolidate the activities of Lakeland Power Ltd. due to the loss of control arising from the appointment of the administrative receiver.

The Edison Mission Energy consolidated financial statements for the years ended 2001 and 2000 were subject to an audit by Arthur Andersen LLP which was presented in Edison Mission Energy's 2001 Annual Report on Form 10-K. Edison Mission Energy has appointed PricewaterhouseCoopers LLP as the auditor for its 2002 consolidated financial statements. Under Statement of Auditing Standards No. 58, Reports on Audited Financial Statements, a re-audit ordinarily is necessary for discontinued operations which require reclassification of prior years consolidated financial statements to conform to the separate presentation of discontinued operations in such financial statements in accordance with SFAS No. 144. Edison Mission Energy has been advised by PricewaterhouseCoopers LLP that a re-audit of its 2001 and 2000 consolidated financial statements is required as a result of the classification of the Lakeland project as a discontinued operation.

### Conditional Agreement by Contact Energy to Acquire Taranaki Power Station

On December 23, 2002, Contact Energy Ltd., a New Zealand publicly traded energy company 51% owned by Edison Mission Energy, announced that it has entered into a conditional agreement with NGC Holdings Ltd. to acquire the Taranaki Combined Cycle power station and related interests for NZ$500 million. The Taranaki station is a 357 MW combined cycle, natural gas-fired plant located near Stratford, New Zealand. The acquisition is conditioned on, among other things, Contact Energy gaining a clearance from the New Zealand Commerce Commission, approval by the shareholders of NGC, and the termination of a cross border leveraged lease currently in existence. Subject to satisfaction of the closing conditions, a closing is expected in February 2003. As a result of the proposed acquisition and the financing to be obtained by Contact Energy to finance such acquisition, Standard and Poor's lowered the long-term credit rating of Contact Energy from BBB+ to BBB.

### United Airlines Bankruptcy and Aircraft Leases

As previously reported, Edison International's wholly-owned, indirect subsidiary Edison Capital has leased two aircraft to United Airlines. United Airlines filed for United States bankruptcy court protection on December 9, 2002. United Airlines has proposed restructuring the leases for both of Edison Capital's aircraft, which would

Page 3

result in Edison Capital receiving no further rent payments. As a result, Edison Capital will take a write-down of $35 million against earnings for the fourth quarter ended December 31, 2002.

## SIGNATURES

Pursuant to the requirements of the Securities Exchange Act of 1934, the registrant has duly caused this report to be signed on its behalf by the undersigned thereunto duly authorized.

**EDISON INTERNATIONAL**
(Registrant)

/S/ KENNETH S. STEWART
------------------------------------------------------------
KENNETH S. STEWART
Assistant General Counsel and Assistant Secretary

January 9, 2003

**TRW**

This is your TRW consumer identification
number. Please refer to this number when
you call or write TRW.

**ID # 999772410931653**

KENNETH ROBERT STEWART, JR
2028 SANDY LN
IRVING, TX  75060

OTHER ADDRESSES    1928 POMAR WAY        YEAR OF BIRTH       1970
WALNUT CREEK CA 94598

## IDENTIFICATION INFORMATION:

THE FOLLOWING ADDITIONAL INFORMATION HAS BEEN PROVIDED TO US BY ORGANIZATIONS THAT REPORT
INFORMATION TO US.

ADDRESS        2028 SANDY LN              110 SMALL HILL DR
               IRVING TX 75060           GRAND PRAIRIE TX 75050
               REPORTED 03/89 BY A TRW MEMBER    REPORTED 09/92 BY A TRW MEMBER

               2028 SANDY LANE
               IRVING TX 75060
               REPORTED 08/94 BY A TRW MEMBER

OTHER

               MIDDLE INITIAL      S

               AKA NAME            ROBERT

FROM 9/1/94 THE NUMBER OF INQUIRIES WITH THIS SOCIAL SECURITY # = 0

FACS+ BUSINESS ON FACS+ FILE/CPI MANAGEMENT/2028 SANDY LN/IRVING          TX
75060/214.255.1133

Social Security Number You Gave Was Issued: 1977 - 1979

CONSUMER CREDIT REPORT (CDI)        A09M12         12 09 94 16:34   PAGE  5

UNITED STATES BANKRUPTCY COURT for the SOUTHERN DISTRICT OF TEXAS

FILED

OCT 27 97

UNITED STATES
BANKRUPTCY COURT

KENNETH STEWART,                                    Debtor.
ASSOCIATES COMMERCIAL CORPORATION

Bankruptcy Case Number

                                    Movant.        97-24405-B-7

versus
KENNETH STEWART AND MIKE
BOUDLOCHE, TRUSTEE

                                    Respondent.

## NOTICE OF HEARING ON RELIEF FROM STAY

On  OCTOBER 27, 1997  ......... has been filed, seeking relief from the automatic stay of
11 U.S.C. § 362. The Court has set the preliminary hearing on the motion for:

Date:  DECEMBER 3, 1997        NO DOCKET CALL WILL BE HELD PRIOR TO HEARING DATE.  CALL
                               GORDON MOSLEY @ (512) ___-2222 BY 1:00 P.M. ON NOVEMBER
Time:  9:00 a.m.               24, 1997.  _____ ___ TELEPHONIC ANNOUNCEMENT MAY
                               RESULT IN THIS MATTER NOT BEING HEARD!

Location:
    U. S. Courthouse, Room 407, 500 East Tenth, Brownsville, TX 78520.


If you object to the lifting of the stay, no later than five (5) working days before the hearing you must:

1.  File with the Clerk an affidavit saying that:

    a.  You have conferred with the movant in a good faith effort to reach an agreement, with the dates and times
        of the conferences.
    b.  The efforts were unsuccessful, and
    c.  A hearing is required.

2.  File with the Clerk your written answer opposing the motion; include:

    a.  The particular grounds for the opposition under Federal Rules 8(b) and 11;
    b.  The identity of your interest in the property;
    c.  The provable value of the property and the equity after deduction of all encumbrances; and
    d.  Attach copies of your affidavit of conference and the motion to your answer.

3.  Serve a copy of your written answer on the movant at:

        MIKE RIDULFO
        1200 AMERICAN BANK PLAZA
        CORPUS CHRISTI, TX 78475

Your written answer will be your request for hearing.  No hearing will be held on the request of the movant or on
an answer received within five days before the hearing.

                                    MICHAEL N. MILBY, Clerk

Date Issued:  OCTOBER 27, 1997      By: _____
                                            Deputy Clerk


*To the Movant:*  A copy of this notice with ...                    *LOCAL FORM NO. 6*

In re: EECI, Inc.                                      Case No. 14-10992 (CSS)

### Schedule H - Co-Debtor Rider 2: Litigation Parties

| Name and Address of Co-Debtor | Name and Address of Creditor |
|---|---|
| VIACOM INC<br>1515 BROADWAY<br>NEW YORK, NY 10036 | PAUL LEDALE MARTIN AND IONA JAMES MARTIN<br>ADDRESS ON FILE |
| VIKING PUMP INC<br>HAWKINS PARNELL THACKSTON & YOUNG LLP<br>THACKSTON, ROBERT EDWIN<br>445 S. FIGUEROA, SUITE 3200<br>LOS ANGELES, CA 90071-1651 | PAUL LEDALE MARTIN AND IONA JAMES MARTIN<br>ADDRESS ON FILE |
| ZURN INDUSTRIES INC<br>1801 PITTSBURGH AVE<br>ERIE, PA 16502-1916 | PAUL LEDALE MARTIN AND IONA JAMES MARTIN<br>ADDRESS ON FILE |
| ZURN INDUSTRIES LLC<br>FORMAN PERRY WATKINS KRUTZ & TARDY LLP<br>PATRICE PUJOL<br>1717 ST. JAMES PLACE<br>HOUSTON, TX 77056-3418 | PAUL LEDALE MARTIN AND IONA JAMES MARTIN<br>ADDRESS ON FILE |
| A W CHESTERTON CO<br>500 UNICORN PARK DRIVE<br>WOBURN, MA 01801-3345 | PAUL LEDALE MARTIN AND IONA JAMES MARTIN<br>ADDRESS ON FILE |
| ABLE SUPPLY CO.<br>7323 MONTICELLO<br>SKOKIE, IL 60076 | PAUL LEDALE MARTIN AND IONA JAMES MARTIN<br>ADDRESS ON FILE |
| AES CORPORATION<br>4300 WILSON BLVD. 11TH FLOOR<br>ARLINGTON, VA 22203 | PAUL LEDALE MARTIN AND IONA JAMES MARTIN<br>ADDRESS ON FILE |
| AES DEEPWATER LLC<br>701 LIGHT COMPANY RD<br>PASADENA, TX 77506 | PAUL LEDALE MARTIN AND IONA JAMES MARTIN<br>ADDRESS ON FILE |
| ALLIS CHALMERS CORPORATION<br>4205 RIVER GREEN PARKWAY<br>DULUTH, GA 30096 | PAUL LEDALE MARTIN AND IONA JAMES MARTIN<br>ADDRESS ON FILE |
| AMERICAN STANDARD INC<br>FORMAN PERRY WATKINS KRUTZ & TARDY LLP<br>LAURA A. FRASE<br>2001 BRYAN STREET, SUITE 1300<br>DALLAS, TX 75201-3008 | PAUL LEDALE MARTIN AND IONA JAMES MARTIN<br>ADDRESS ON FILE |
| AQUA CHEM INC<br>WHITE SHAVER PC<br>CLAY M. WHITE<br>205 W. LOCUST STREET<br>TYLER, TX 75702 | PAUL LEDALE MARTIN AND IONA JAMES MARTIN<br>ADDRESS ON FILE |
| ARMSTRONG INTERNATIONAL INC<br>WHITE SHAVER PC<br>CLAY M. WHITE<br>205 W. LOCUST STREET<br>TYLER, TX 75702 | PAUL LEDALE MARTIN AND IONA JAMES MARTIN<br>ADDRESS ON FILE |
| ASHLAND INC<br>HAYS, MCCONN, RICE & PICKERING, P.C.<br>B. STEVE RICE<br>1233 WEST LOOP SOUTH, SUITE 2200<br>HOUSTON, TX 77027 | PAUL LEDALE MARTIN AND IONA JAMES MARTIN<br>ADDRESS ON FILE |
| BABCOCK BORSIG POWER INC<br>DEHAY & ELLISTON<br>GARY D. ELLISTON<br>901 MAIN STREET, SUITE 3500<br>DALLAS, TX 75202 | PAUL LEDALE MARTIN AND IONA JAMES MARTIN<br>ADDRESS ON FILE |

**In re: EECI, Inc.**                                                    **Case No. 14-10992 (CSS)**

### Schedule H - Co-Debtor Rider 2: Litigation Parties

| Name and Address of Co-Debtor | Name and Address of Creditor |
|---|---|
| DEZURIK INC<br>CHRISTINA ANN DENMARK<br>STEPTOE & JOHNSON PLLC<br>10001 WOODLOCH FOREST DR, SUITE 300<br>THE WOODLANDS, TX 77380 | PAUL LEDALE MARTIN AND IONA JAMES MARTIN<br>ADDRESS ON FILE |
| DOW CHEMICAL COMPANY<br>ARTHUR RAY ALMQUIST<br>MEHAFFYWEBER, P.C<br>500 DALLAS SUITE 1200<br>HOUSTON, TX 77002 | PAUL LEDALE MARTIN AND IONA JAMES MARTIN<br>ADDRESS ON FILE |
| DURABLE MANUFACTURING COMPANY INC<br>140 SHEREE BLVD., PO BOX 700<br>LIONVILLE, PA 19341 | PAUL LEDALE MARTIN AND IONA JAMES MARTIN<br>ADDRESS ON FILE |
| EASTMAN CHECIAL TEXAS CITY INC<br>RASCHKE, FRED D.<br>MILLS SHIRLEY LLP<br>2228 MECHANIC ST., SUITE 400<br>GALVESTON, TX 77550 | PAUL LEDALE MARTIN AND IONA JAMES MARTIN<br>ADDRESS ON FILE |
| ELLIOTT TURBOMACHINERY COMPANY, INC.<br>ELLIOT GROUP<br>901 N. FOURTH STREET<br>JEANNETTE, PA 15644 | PAUL LEDALE MARTIN AND IONA JAMES MARTIN<br>ADDRESS ON FILE |
| EXXON MOBIL CORPORATION<br>STEPHEN SHAYNE GARDNER<br>DEHAY & ELLISTON LLP<br>901 MAIN ST.<br>DALLAS, TX 75202 | PAUL LEDALE MARTIN AND IONA JAMES MARTIN<br>ADDRESS ON FILE |
| FLOWSERVE CORPORATION<br>LAWSON, RODNEY HALL<br>CARRINGTON COLEMAN SLOMAN &<br>BLUMENTHAL LLP, 901 MAIN ST.<br>DALLAS, TX 75202 | PAUL LEDALE MARTIN AND IONA JAMES MARTIN<br>ADDRESS ON FILE |
| FLOWSERVE CORPORATION<br>142 CLINTON ROAD<br>FAIRFIELD, NJ 07004 | PAUL LEDALE MARTIN AND IONA JAMES MARTIN<br>ADDRESS ON FILE |
| FMC CORPORATION<br>GARY D. ELLISTON<br>DEHAY & ELLISTON LLP<br>901 MAIN ST.<br>DALLAS, TX 75202 | PAUL LEDALE MARTIN AND IONA JAMES MARTIN<br>ADDRESS ON FILE |
| FOSTER WHEELER ENERGY CORP<br>MEHAFFY WEBER<br>SANDRA F. CLARK<br>2615 CALDER AVE SUITE 800, PO BOX 16<br>BEAUMONT, TX 77702 | PAUL LEDALE MARTIN AND IONA JAMES MARTIN<br>ADDRESS ON FILE |
| GARLOCK SEALING TECHNOLOGIES INC<br>1666 DIVISION STREET<br>PALMYRA, NY 14522 | PAUL LEDALE MARTIN AND IONA JAMES MARTIN<br>ADDRESS ON FILE |
| GENERAL ELECTRIC CO<br>MEHAFFY WEBER<br>KEITH WILLIAM FOLEY<br>2615 CALDER AVE SUITE 800, PO BOX 16<br>BEAUMONT, TX 77702 | PAUL LEDALE MARTIN AND IONA JAMES MARTIN<br>ADDRESS ON FILE |
| GENERAL REFRACTORIES COMPANY<br>1 BALA AVE STE 210<br>BALA CYNWYD, PA 19004 | PAUL LEDALE MARTIN AND IONA JAMES MARTIN<br>ADDRESS ON FILE |

In re: EECI, Inc.                                                    Case No. 14-10992 (CSS)

### Schedule H - Co-Debtor Rider 2: Litigation Parties

| Name and Address of Co-Debtor | Name and Address of Creditor |
| --- | --- |
| CONOCO PHILLIPS COMPANY<br>ADAMS AND REESE LLP<br>LESLIE M HENRY<br>ONE SHELL SQUARE<br>NEW ORLEANS, LA 70139 | PAUL LEDALE MARTIN AND IONA JAMES MARTIN<br>ADDRESS ON FILE |
| KELLY MOORE PAINT COMPANY<br>HAWKINS PARNELL THACKSTON & YOUNG LLP<br>PATRICIA KAY ANDREWS<br>1717 WEST 6TH STREET, SUITE 250<br>AUSTIN, TX 78703-4777 | PAUL LEDALE MARTIN AND IONA JAMES MARTIN<br>ADDRESS ON FILE |
| UNIROYAL HOLDING INC<br>70 GREAT HILL RD<br>NAUGATUCK, CT 06770 | PAUL LEDALE MARTIN AND IONA JAMES MARTIN<br>ADDRESS ON FILE |
| BP AMOCO CHEMICAL COMPANY<br>ANDREWS KURTH LLP<br>THOMAS W. TAYLOR<br>600 TRAVIS, SUITE 4200<br>HOUSTON, TX 77002 | PAUL LEDALE MARTIN AND IONA JAMES MARTIN<br>ADDRESS ON FILE |
| BP PRODUCTS NORTH AMERICA INC<br>ANDREWS KURTH LLP<br>THOMAS W. TAYLOR<br>600 TRAVIS, SUITE 4200<br>HOUSTON, TX 77002 | PAUL LEDALE MARTIN AND IONA JAMES MARTIN<br>ADDRESS ON FILE |
| CBS CORPORATION<br>MEHAFFY WEBER<br>KEITH WILLIAM FOLEY<br>2615 CALDER AVE SUITE 800, PO BOX 16<br>BEAUMONT, TX 77702 | PAUL LEDALE MARTIN AND IONA JAMES MARTIN<br>ADDRESS ON FILE |
| CERTAINTEED CORPORATION<br>PO BOX 860<br>VALLEY FORGE, PA 19482 | PAUL LEDALE MARTIN AND IONA JAMES MARTIN<br>ADDRESS ON FILE |
| CHEVRON USA INC<br>STRONG PIPKIN BISSELL & LEDYARD LLP<br>DAVID W LEDYARD<br>595 ORLEANS, SUITE 1400<br>BEAUMONT, TX 77701 | PAUL LEDALE MARTIN AND IONA JAMES MARTIN<br>ADDRESS ON FILE |
| COOPER INDUSTRIES INC<br>EATON CENTER<br>BRUCE M. TATEN, SVP, GEN. COUN. & CHIEF<br>COMPLIANCE OFFICER, 1000 EATON BOULEVARD<br>CLEVELAND, OH 44122 | PAUL LEDALE MARTIN AND IONA JAMES MARTIN<br>ADDRESS ON FILE |
| CRANE COMPANY<br>K & L GATES LLP<br>JAMES A LOWERY<br>1717 MAIN STREET, SUITE 2800<br>DALLAS, TX 75201 | PAUL LEDALE MARTIN AND IONA JAMES MARTIN<br>ADDRESS ON FILE |
| CROWN CENTRAL LLC<br>ONE NORTH CHARLES STREET<br>SUITE 2200<br>BALTIMORE, MD 21201 | PAUL LEDALE MARTIN AND IONA JAMES MARTIN<br>ADDRESS ON FILE |
| DAIMLER CHRYSLER CORPORATION<br>1000 CHRYSLER DRIVE<br>AUBURN HILLS, MI 48326-2766 | PAUL LEDALE MARTIN AND IONA JAMES MARTIN<br>ADDRESS ON FILE |

**In re: EECI, Inc.**                                                    **Case No. 14-10992 (CSS)**

### Schedule H - Co-Debtor Rider 2: Litigation Parties

| Name and Address of Co-Debtor | Name and Address of Creditor |
|---|---|
| GENUINE PARTS COMPANY<br>MANNING GOSDA & ARREDONDO LLP<br>RICK W. THAMM<br>24 GREENWAY PLAZA, SUITE 525<br>HOUSTON, TX 77046 | PAUL LEDALE MARTIN AND IONA JAMES MARTIN<br>ADDRESS ON FILE |
| GEORGIA PACIFIC CORP<br>133 PEACHTREE ST NE #4810<br>ATLANTA, GA 30303 | PAUL LEDALE MARTIN AND IONA JAMES MARTIN<br>ADDRESS ON FILE |
| GEORGIA PACIFIC LLC<br>GILBERT & GILBERT LAW OFFICE<br>ERIC T. FUREY<br>222 NORTH VELASCO STREET<br>ANGLETON, TX 77515 | PAUL LEDALE MARTIN AND IONA JAMES MARTIN<br>ADDRESS ON FILE |
| GOODRICH CORPORATION<br>FOUR COLISEUM CENTRE<br>2730 W. TYVOLA RD.<br>CHARLOTTE, NC 28217 | PAUL LEDALE MARTIN AND IONA JAMES MARTIN<br>ADDRESS ON FILE |
| GOODYEAR TIRE & RUBBER CO<br>VORYS, SATER, SEYMOUR AND PEASE LLP<br>TIFFANY SUE BINGHAM<br>700 LOUISIANA STREET<br>HOUSTON, TX 77002 | PAUL LEDALE MARTIN AND IONA JAMES MARTIN<br>ADDRESS ON FILE |
| GOULDS PUMPS INC<br>NAMAN HOWELL SMITH & LEE, PLLC<br>RAYMOND C. JR. PALMER<br>400 AUSTIN AVE, SUITE 800<br>WACO, TX 76703 | PAUL LEDALE MARTIN AND IONA JAMES MARTIN<br>ADDRESS ON FILE |
| GUARD LINE INC<br>215 S LOUISE ST<br>ATLANTA, TX 75551 | PAUL LEDALE MARTIN AND IONA JAMES MARTIN<br>ADDRESS ON FILE |
| HONEYWELL INC<br>VORYS, SATER, SEYMOUR AND PEASE LLP<br>TIFFANY SUE BINGHAM<br>700 LOUISIANA STREET<br>HOUSTON, TX 77002 | PAUL LEDALE MARTIN AND IONA JAMES MARTIN<br>ADDRESS ON FILE |
| IMO INDUSTRIES INC<br>1710 AIRPORT ROAD, SUITE 111<br>MONROE, NC 28110 | PAUL LEDALE MARTIN AND IONA JAMES MARTIN<br>ADDRESS ON FILE |
| INDUSTRIAL HOLDING CORP<br>101 HUDSON STREET<br>JERSEY CITY, NJ 07302 | PAUL LEDALE MARTIN AND IONA JAMES MARTIN<br>ADDRESS ON FILE |
| INGERSOLL RAND CO<br>FORMAN PERRY WATKINS KRUTZ & TARDY LLP<br>LAURA A. FRASE<br>2001 BRYAN STREET, SUITE 1300<br>DALLAS, TX 75201-3008 | PAUL LEDALE MARTIN AND IONA JAMES MARTIN<br>ADDRESS ON FILE |
| JM MANUFACTORING COMPANY INC<br>MILTENBERGER LAW FIRM PLLC<br>MILTENBERGER, LEWIS C.<br>700 N. CARROLL AVE, SUITE 140<br>SOUTHLAKE, TX 76092 | PAUL LEDALE MARTIN AND IONA JAMES MARTIN<br>ADDRESS ON FILE |
| KAISER GYPSUM COMPANY INC<br>801 MINAKER DR<br>ANTIOCH, CA 94509 | PAUL LEDALE MARTIN AND IONA JAMES MARTIN<br>ADDRESS ON FILE |

In re: EECI, Inc.                                         Case No. 14-10992 (CSS)

## Schedule H - Co-Debtor Rider 2: Litigation Parties

| Name and Address of Co-Debtor | Name and Address of Creditor |
|---|---|
| BW/IP INTERNATIONAL COMPANY<br>222 W LAS COLINAS BLVD SUITE 1500<br>IRVING, TX 75039 | KAREN HARMAN<br>ADDRESS ON FILE |
| C.S.R. LIMITED D/B/A COLONIAL SUGAR<br>SHIRLEY L RUDOFSKI<br>2031 HEARTH CIRCLE<br>LANSING, IL 60438 | KAREN HARMAN<br>ADDRESS ON FILE |
| CARRIER CORPORATION<br>CT CORPORATION SYSTEM<br>1209 ORANGE STREET<br>WILMINGTON, DE 19801 | KAREN HARMAN<br>ADDRESS ON FILE |
| CBS F/K/A WESTINGHOUSE ELECTRIC<br>7 ST. PAUL ST, STE 1660<br>BALTIMORE, MD 21202 | KAREN HARMAN<br>ADDRESS ON FILE |
| CRANE COMPANY<br>100 1ST STAMFORD PL #300<br>STAMFORD, CT 06902 | KAREN HARMAN<br>ADDRESS ON FILE |
| DONTAR INDUSTRIES INC<br>NATIONAL REGISTERED AGENTS INC<br>1300 E NINTH STREET<br>CHICAGO, IL 60604 | KAREN HARMAN<br>ADDRESS ON FILE |
| EATON ELECTRICAL INC<br>351 WEST CAMDEN ST<br>6TH FLOOR<br>BALTIMORE, MD 21201 | KAREN HARMAN<br>ADDRESS ON FILE |
| FMC CORPORATION<br>CORPORATION TRUST INCORPORATED<br>351 WEST CAMDEN STREET<br>BALTIMORE, MD 21201 | KAREN HARMAN<br>ADDRESS ON FILE |
| GENERAL ELECTRIC CO<br>351 WEST CAMDEN ST<br>6TH FLOOR<br>BALTIMORE, MD 21201 | KAREN HARMAN<br>ADDRESS ON FILE |
| GENUINE PARTS COMPANY<br>2999 CIRCLE 75 PKWY<br>ATLANTA, GA 30339 | KAREN HARMAN<br>ADDRESS ON FILE |
| GEORGIA PACIFIC CORP<br>351 WEST CAMDEN ST<br>6TH FLOOR<br>BALTIMORE, MD 21201 | KAREN HARMAN<br>ADDRESS ON FILE |
| GOULDS PUMPS (IPG) INC<br>300 E LOMBARD STREET<br>BALTIMORE, MD 21202 | KAREN HARMAN<br>ADDRESS ON FILE |
| HAMPSHIRE INDUSTRIES, INC.<br>320 WEST 24TH STREET<br>BALTIMORE, MD 21211 | KAREN HARMAN<br>ADDRESS ON FILE |
| HIGBEE INC<br>6741 THOMPSON RD<br>SYRACUSE, NY 13211 | KAREN HARMAN<br>ADDRESS ON FILE |
| HONEYWELL INTERNATIONAL INC<br>7TH ST PAUL STREET<br>SUITE 1660<br>BALTIMORE, MD 21202 | KAREN HARMAN<br>ADDRESS ON FILE |
| I.M.O. INDUSTRIES INC.<br>11 EAST CHASE STREET<br>BALTIMORE, MD 21202 | KAREN HARMAN<br>ADDRESS ON FILE |

In re: EECI, Inc.                                          Case No. 14-10992 (CSS)

## Schedule H - Co-Debtor Rider 2: Litigation Parties

| Name and Address of Co-Debtor | Name and Address of Creditor |
|---|---|
| INGERSOLL RAND CO<br>CORPORATION TRUST INCORPORATED<br>351 WEST CAMDEN STREET<br>BALTIMORE, MD 21202 | KAREN HARMAN<br>ADDRESS ON FILE |
| KCG INC<br>ILLINOIS CORPORATION SERVICES<br>801 ADLAI STEVENSON DRIVE<br>SPRINGFIELD, IL 62703 | KAREN HARMAN<br>ADDRESS ON FILE |
| LENNOX INDUSTRIES INC<br>CORPORATION SERVICE COMPANY<br>211 E. 7TH STREET, SUITE 620<br>AUSTIN, TX 78701 | KAREN HARMAN<br>ADDRESS ON FILE |
| MCIC INC<br>BODIE, DOLINA, SMITH & HOBBS, P.A.<br>21 W SUSQUEHANNA AVE<br>TOWSON, MD 21204 | KAREN HARMAN<br>ADDRESS ON FILE |
| MURCO WALL PRODUCTS INC<br>2032 N COMMERCE ST<br>FORT WORTH, TX 76106 | KAREN HARMAN<br>ADDRESS ON FILE |
| NATIONAL AUTOMOTICE PARTS ASSOCIATION<br>CT CORPORATION SYSTEM<br>1201 PEACHTREE ST NE<br>ATLANTA, GA 30361 | KAREN HARMAN<br>ADDRESS ON FILE |
| PNEUMO ABEX CORPORATION<br>2704 COMMERCE DR, STE B<br>HARRISBURG, PA 17110 | KAREN HARMAN<br>ADDRESS ON FILE |
| RHEEM MANUFACTURING CO<br>THE CORPORATION TRUST COMPANY<br>1209 ORANGE ST<br>WILMINGTON, DE 19801 | KAREN HARMAN<br>ADDRESS ON FILE |
| SQUARE D<br>11 EAST CHASE STREET<br>BALTIMORE, MD 21202 | KAREN HARMAN<br>ADDRESS ON FILE |
| THE WILLIAM POWELL COMPANY<br>2503 SPRING GROVE AVE<br>CINCINNATI, OH 45214 | KAREN HARMAN<br>ADDRESS ON FILE |
| TRANE US INC<br>CT CORPORATION SYSTEM<br>1209 ORANGE STREET<br>WILMINGTON, DE 19801 | KAREN HARMAN<br>ADDRESS ON FILE |
| UNION CARBIDE CORP<br>30 EAST 42ND STREET<br>NEW YORK, NY 10017 | KAREN HARMAN<br>ADDRESS ON FILE |
| UNION CARBIDE CORP<br>351 WEST CAMDEN ST<br>6TH FLOOR<br>BALTIMORE, MD 21201 | KAREN HARMAN<br>ADDRESS ON FILE |
| VELAN VALVE CORP<br>94 AVENUE C<br>WILLISTON, VT 05495 | KAREN HARMAN<br>ADDRESS ON FILE |
| VIKING PUMP INC<br>CT CORPORATION SYSTEM<br>500 E COURT AVE STE 200<br>DES MOINES, IA 50309 | KAREN HARMAN<br>ADDRESS ON FILE |

In re: EECI, Inc.                                                    Case No. 14-10992 (CSS)

## Schedule H - Co-Debtor Rider 2: Litigation Parties

| Name and Address of Co-Debtor | Name and Address of Creditor |
|---|---|
| FMC CORPORATION<br>CORPORATION TRUST INCORPORATED<br>351 WEST CAMDEN STREET<br>BALTIMORE, MD 21201 | HAROLD HARMAN<br>ADDRESS ON FILE |
| GENERAL ELECTRIC CO<br>351 WEST CAMDEN ST<br>6TH FLOOR<br>BALTIMORE, MD 21201 | HAROLD HARMAN<br>ADDRESS ON FILE |
| GENUINE PARTS COMPANY<br>2999 CIRCLE 75 PKWY<br>ATLANTA, GA 30339 | HAROLD HARMAN<br>ADDRESS ON FILE |
| GEORGIA PACIFIC CORP<br>351 WEST CAMDEN ST<br>6TH FLOOR<br>BALTIMORE, MD 21201 | HAROLD HARMAN<br>ADDRESS ON FILE |
| GOULDS PUMPS (IPG) INC<br>300 E LOMBARD STREET<br>BALTIMORE, MD 21202 | HAROLD HARMAN<br>ADDRESS ON FILE |
| HAMPSHIRE INDUSTRIES, INC.<br>320 WEST 24TH STREET<br>BALTIMORE, MD 21211 | HAROLD HARMAN<br>ADDRESS ON FILE |
| HIGBEE INC<br>6741 THOMPSON RD<br>SYRACUSE, NY 13211 | HAROLD HARMAN<br>ADDRESS ON FILE |
| HONEYWELL INTERNATIONAL INC<br>7TH ST PAUL STREET<br>SUITE 1660<br>BALTIMORE, MD 21202 | HAROLD HARMAN<br>ADDRESS ON FILE |
| I.M.O. INDUSTRIES INC.<br>11 EAST CHASE STREET<br>BALTIMORE, MD 21202 | HAROLD HARMAN<br>ADDRESS ON FILE |
| INGERSOLL RAND CO<br>CORPORATION TRUST INCORPORATED<br>351 WEST CAMDEN STREET<br>BALTIMORE, MD 21202 | HAROLD HARMAN<br>ADDRESS ON FILE |
| KCG INC<br>ILLINOIS CORPORATION SERVICES<br>801 ADLAI STEVENSON DRIVE<br>SPRINGFIELD, IL 62703 | HAROLD HARMAN<br>ADDRESS ON FILE |
| LENNOX INDUSTRIES INC<br>CORPORATION SERVICE COMPANY<br>211 E. 7TH STREET, SUITE 620<br>AUSTIN, TX 78701 | HAROLD HARMAN<br>ADDRESS ON FILE |
| MCIC INC<br>BODIE, DOLINA, SMITH & HOBBS, P.A.<br>21 W SUSQUEHANNA AVE<br>TOWSON, MD 21204 | HAROLD HARMAN<br>ADDRESS ON FILE |
| MURCO WALL PRODUCTS INC<br>2032 N COMMERCE ST<br>FORT WORTH, TX 76106 | HAROLD HARMAN<br>ADDRESS ON FILE |
| NATIONAL AUTOMOTICE PARTS ASSOCIATION<br>CT CORPORATION SYSTEM<br>1201 PEACHTREE ST NE<br>ATLANTA, GA 30361 | HAROLD HARMAN<br>ADDRESS ON FILE |

In re: EECI, Inc.                                                    Case No. 14-10992 (CSS)

### Schedule H - Co-Debtor Rider 2: Litigation Parties

| Name and Address of Co-Debtor | Name and Address of Creditor |
|---|---|
| YOUNG GROUP LTD<br>1054 CENTRAL INDUSTRIAL DRIVE<br>ST LOUIS, MO 63110-2304 | HENRY LEE THOMAS AND GARDENIA THOMAS<br>ADDRESS ON FILE |
| YOUNG INSULATION GROUP OF ST LOUIS INC<br>1054 CENTRAL INDUSTRIAL DRIVE<br>ST LOUIS, MO 63110-2304 | HENRY LEE THOMAS AND GARDENIA THOMAS<br>ADDRESS ON FILE |
| 3M COMPANY<br>2501 HUDSON RD<br>ST. PAUL, MN 55144-1000 | HENRY LEE THOMAS AND GARDENIA THOMAS<br>ADDRESS ON FILE |
| A O SMITH CORPORATION<br>11270 WEST PARK PLACE, SUITE 170<br>PO BOX 245008<br>MILWAUKEE, WI 53224 | HENRY LEE THOMAS AND GARDENIA THOMAS<br>ADDRESS ON FILE |
| A W CHESTERTON CO<br>500 UNICORN PARK DRIVE<br>WOBURN, MA 01801-3345 | HENRY LEE THOMAS AND GARDENIA THOMAS<br>ADDRESS ON FILE |
| AMERON INTERNATIONAL CORP<br>245 SOUTH LOS ROBLES AVENUE<br>PASADENA, CA 91101 | HENRY LEE THOMAS AND GARDENIA THOMAS<br>ADDRESS ON FILE |
| BECHTEL GROUP INC<br>MICHAEL BAILEY, GEN. COUN.<br>50 BEALE STREET<br>SAN FRANCISCO, CA 94105-1895 | HENRY LEE THOMAS AND GARDENIA THOMAS<br>ADDRESS ON FILE |
| HONEYWELL INTERNATIONAL INC<br>101 COLUMBIA RD<br>PO BOX 4000<br>MORRISTOWN, NJ 07962 | HENRY LEE THOMAS AND GARDENIA THOMAS<br>ADDRESS ON FILE |
| IMO INDUSTRIES INC<br>1710 AIRPORT ROAD, STE 111<br>MONROE, NC 28110 | HENRY LEE THOMAS AND GARDENIA THOMAS<br>ADDRESS ON FILE |
| BW/IP INTERNATIONAL COMPANY<br>222 W LAS COLINAS BLVD SUITE 1500<br>IRVING, TX 75039 | HAROLD HARMAN<br>ADDRESS ON FILE |
| C.S.R. LIMITED D/B/A COLONIAL SUGAR<br>SHIRLEY L RUDOFSKI<br>2031 HEARTH CIRCLE<br>LANSING, IL 60438 | HAROLD HARMAN<br>ADDRESS ON FILE |
| CARRIER CORPORATION<br>CT CORPORATION SYSTEM<br>1209 ORANGE STREET<br>WILMINGTON, DE 19801 | HAROLD HARMAN<br>ADDRESS ON FILE |
| CBS F/K/A WESTINGHOUSE ELECTRIC<br>7 ST. PAUL ST, STE 1660<br>BALTIMORE, MD 21202 | HAROLD HARMAN<br>ADDRESS ON FILE |
| CRANE COMPANY<br>100 1ST STAMFORD PL #300<br>STAMFORD, CT 06902 | HAROLD HARMAN<br>ADDRESS ON FILE |
| DONTAR INDUSTRIES INC<br>NATIONAL REGISTERED AGENTS INC<br>1300 E NINTH STREET<br>CHICAGO, IL 60604 | HAROLD HARMAN<br>ADDRESS ON FILE |
| EATON ELECTRICAL INC<br>351 WEST CAMDEN ST<br>6TH FLOOR<br>BALTIMORE, MD 21201 | HAROLD HARMAN<br>ADDRESS ON FILE |

In re: EECI, Inc.                                                    Case No. 14-10992 (CSS)

### Schedule H - Co-Debtor Rider 2: Litigation Parties

| Name and Address of Co-Debtor | Name and Address of Creditor |
|---|---|
| MAREMONT CORPORATION<br>2400 MAREMONT PARKWAY<br>LOUDON, TN 37774 | PAUL LEDALE MARTIN AND IONA JAMES MARTIN<br>ADDRESS ON FILE |
| METROPOLITAN LIFE INSURANCE CO<br>200 PARK AVENUE<br>NEW YORK, NY 10166 | PAUL LEDALE MARTIN AND IONA JAMES MARTIN<br>ADDRESS ON FILE |
| MILWAUKEE VALVE COMPANY INC<br>16550 WEST STRATTON DRIVE<br>NEW BERLIN, WI 53151 | PAUL LEDALE MARTIN AND IONA JAMES MARTIN<br>ADDRESS ON FILE |
| MURCO WALL PRODUCTS INC<br>2032 N COMMERCE ST<br>FORT WORTH, TX 76164 | PAUL LEDALE MARTIN AND IONA JAMES MARTIN<br>ADDRESS ON FILE |
| NAGLE PUMPS INC<br>SMITH ADAMS LAW FEEHAN LLP<br>ROBERT L. ADAMS, WEDGE INTERNATIONAL<br>TOWER, 1415 LOUISIANA STREET, SUITE 3800<br>HOUSTON, TX 77002 | PAUL LEDALE MARTIN AND IONA JAMES MARTIN<br>ADDRESS ON FILE |
| NATIONAL AUTOMOTIVE PARTS ASSOCIATION<br>2999 CIRCLE 75 PKWY<br>ATLANTA, GA 30339 | PAUL LEDALE MARTIN AND IONA JAMES MARTIN<br>ADDRESS ON FILE |
| OAKFABCO INC<br>HAWKINS PARNELL THACKSTON & YOUNG LLP<br>JASON JAMES IRVIN<br>4514 COLE AVE, SUITE 500<br>DALLAS, TX 75205-5412 | PAUL LEDALE MARTIN AND IONA JAMES MARTIN<br>ADDRESS ON FILE |
| OWENS ILLINOIS INC<br>1 MICHAEL OWENS WAY<br>PERRYSBURG, OH 43551 | PAUL LEDALE MARTIN AND IONA JAMES MARTIN<br>ADDRESS ON FILE |
| PHOENIX PACKING AND GASKET MFG CO<br>AKIN GUMP STRAUSS HAUER & FELD LLP<br>HOLLI VIRGINIA PRYOR-BAZE<br>1111 LOUISIANA STREET, 44TH FLOOR<br>HOUSTON, TX 77002-5200 | PAUL LEDALE MARTIN AND IONA JAMES MARTIN<br>ADDRESS ON FILE |
| PNEUMO ABEX CORPORATION<br>THIRD STREET & JEFFERSON AVENUE<br>CAMDEN, NJ 08104 | PAUL LEDALE MARTIN AND IONA JAMES MARTIN<br>ADDRESS ON FILE |
| RAPID AMERICAN CORP<br>667 MADISON AVENUE<br>NEW YORK, NY 10021 | PAUL LEDALE MARTIN AND IONA JAMES MARTIN<br>ADDRESS ON FILE |
| SEPCO CORPORATION<br>123 AIRPARK INDUSTRIAL ROAD<br>ALABASTER, AL 35007 | PAUL LEDALE MARTIN AND IONA JAMES MARTIN<br>ADDRESS ON FILE |
| SHERWIN WILLIAMS COMPANY<br>CATHERINE M KILBANE, SVP, GEN. COUN.<br>& SEC.<br>101 W PROSPECT AVENUE<br>CLEVELAND, OH 44115 | PAUL LEDALE MARTIN AND IONA JAMES MARTIN<br>ADDRESS ON FILE |
| T H AGRICULTURE & NUTRITION LLC<br>250 WEST 57TH STREET, SUITE 901<br>NEW YORK, NY 10107 | PAUL LEDALE MARTIN AND IONA JAMES MARTIN<br>ADDRESS ON FILE |
| TOTAL PETROCHEMICALS USA INC<br>TOTAL PLAZA<br>1201 LOUISIANA, SUITE 1800<br>HOUSTON, TX 77002 | PAUL LEDALE MARTIN AND IONA JAMES MARTIN<br>ADDRESS ON FILE |

UNITED STATES
SECURITIES AND EXCHANGE COMMISSION
Washington, D.C. 20549

# FORM 10-QSB

(Mark One)

☒ QUARTERLY REPORT UNDER SECTION 13 OR 15 (d) OF THE SECURITIES EXCHANGE ACT OF 1934

For the quarterly period ended March 31, 2008

☐ TRANSITION REPORT UNDER SECTION 13 OR 15(d) OF THE EXCHANGE ACT

For the transition period from _____ to _____

Commission File Number 0-22223

# PEOPLES-SIDNEY FINANCIAL CORPORATION
(Exact name of small business issuer as specified in its charter)

Delaware
(State or other jurisdiction of incorporation or organization)

31-1499862
(IRS Employer Identification No.)

101 E. Court Street, Sidney, Ohio 45365
(Address of principal executive offices)

(937) 492-6129
(Issuer's telephone number)

Check whether the issuer (1) filed all reports required to be filed by Section 13 or 15(d) of the Exchange Act during the past 12 months, and (2) has been subject to such filing requirements for the past 90 days.
Yes T              No £

Indicate by check mark whether the registrant is a shell company (as defined in Rule 12b-2 of the Exchange Act).
Yes £              No T

As of May 12, 2008 the latest practicable date, 1,361,048 shares of the issuer's common shares, $.01 par value, were issued and outstanding.

Transitional Small Business Disclosure Format (Check One):
Yes £              No T

*£702963*

*The Corporation Trust Company*

PEOPLES-SIDNEY FINANCIAL CORPORATION
INDEX

Page

PART I - FINANCIAL INFORMATION

Item 1.       Financial Statements (Unaudited)

              Consolidated Balance Sheets                                                              3

              Consolidated Statements of Income                                                       4

              Consolidated Statements of Comprehensive Income                                         5

              Condensed Consolidated Statements of Changes in Shareholders' Equity                    6

              Consolidated Statements of Cash Flows                                                   7

              Notes to Consolidated Financial Statements                                              8

Item 2.       Management's Discussion and Analysis                                                    16

Item 3.       Controls and Procedures                                                                 24

PART II - OTHER INFORMATION

Item 1.       Legal Proceedings                                                                       25

Item 2.       Unregistered Sales of Equity Securities and Use of Proceeds                             25

Item 3.       Defaults Upon Senior Securities                                                         25

Item 4.       Submission of Matters to a Vote of Security Holders                                     25

Item 5.       Other Information                                                                       25

Item 6.       Exhibits                                                                                26

SIGNATURES                                                                                            26

INDEX TO EXHIBITS                                                                                     27

                                                                                                      2

PEOPLES-SIDNEY FINANCIAL CORPORATION
CONSOLIDATED BALANCE SHEETS
MARCH 31, 2008 AND JUNE 30, 2007

Item 1. Financial Statements

| | March 31, 2008 (Unaudited) | June 30, 2007 |
|---|---|---|
| **ASSETS** | | |
| Cash and due from financial institutions | $ 1,541,809 | $ 1,065,054 |
| Interest-bearing deposits in other financial institutions | 4,610,133 | 4,117,144 |
| Overnight deposits | 2,200,000 | 2,000,000 |
| Total cash and cash equivalents | 8,351,942 | 7,182,198 |
| Time deposits | 1,000,000 | -- |
| Securities available for sale | 2,056,260 | 4,847,820 |
| Federal Home Loan Bank stock | 1,844,500 | 1,820,800 |
| Loans, net of allowance of $603,100 and $664,800 | 120,249,845 | 121,487,075 |
| Accrued interest receivable | 937,546 | 795,326 |
| Premises and equipment, net | 1,803,658 | 1,864,053 |
| Other real estate owned and repossessions | 438,463 | 143,482 |
| Other assets | 161,237 | 167,540 |
| Total assets | $ 136,843,451 | $ 138,308,294 |
| | | |
| **LIABILITIES AND SHAREHOLDERS' EQUITY** | | |
| Deposits | $ 82,327,778 | $ 82,479,470 |
| Borrowed funds | 36,908,791 | 38,189,030 |
| Accrued interest payable and other liabilities | 591,913 | 704,238 |
| Total liabilities | 119,828,482 | 121,372,738 |
| | | |
| Common stock in ESOP subject to repurchase obligation | 1,542,288 | 1,677,238 |
| | | |
| Preferred stock, $.01 par value, 500,000 shares authorized, none issued and outstanding | -- | -- |
| Common stock, $.01 par value, 3,500,000 shares authorized, 1,785,375 shares issued | 16,569 | 16,569 |
| Additional paid-in capital | 9,306,291 | 9,169,858 |
| Retained earnings | 11,354,822 | 11,702,607 |
| Treasury stock, 424,327 shares, at cost | (5,198,322) | (5,198,322) |
| Unearned employee stock ownership plan shares | (244,666) | (333,042) |
| Accumulated other comprehensive loss | 37,987 | (99,352) |
| Total shareholders' equity | 15,472,681 | 15,258,318 |
| | | |
| Total liabilities and shareholders' equity | $ 136,843,451 | $ 138,308,294 |

See accompanying notes to consolidated financial statements.

PEOPLES-SIDNEY FINANCIAL CORPORATION
CONSOLIDATED STATEMENTS OF INCOME
THREE AND NINE MONTHS ENDED MARCH 31, 2008 AND 2007
(Unaudited)

| | Three Months Ended March 31, | | Nine Months Ended March 31, | |
|---|---|---|---|---|
| | 2008 | 2007 | 2008 | 2007 |
| **Interest income** | | | | |
| Loans, including fees | $ 2,133,826 | $ 2,146,657 | $ 6,417,947 | $ 6,384,618 |
| Securities | 32,562 | 50,089 | 140,911 | 158,825 |
| Demand, time and overnight deposits | 42,382 | 37,938 | 141,377 | 96,959 |
| Dividends on Federal Home Loan Bank stock | 23,767 | 28,621 | 85,724 | 81,373 |
| Total interest income | 2,232,537 | 2,263,305 | 6,785,959 | 6,721,775 |
| **Interest expense** | | | | |
| Deposits | 592,206 | 545,128 | 1,778,726 | 1,558,338 |
| Borrowed funds | 488,080 | 510,693 | 1,501,412 | 1,586,333 |
| Total interest expense | 1,080,286 | 1,055,821 | 3,280,138 | 3,144,671 |
| Net interest income | 1,152,251 | 1,207,484 | 3,505,821 | 3,577,104 |
| Provision for loan losses | 10,501 | 210 | 93,770 | (68,887) |
| Net interest income after provision for loan losses | 1,141,750 | 1,207,274 | 3,412,051 | 3,645,991 |
| **Noninterest income** | | | | |
| Service fees and other charges | 26,882 | 29,360 | 81,902 | 94,292 |
| Gain (loss) on sale of REO and repossessions | 2,316 | 816 | 6,870 | 696 |
| Mortgage banking income | 45 | 2,346 | 9,677 | 2,346 |
| Total noninterest income | 29,243 | 32,522 | 98,449 | 97,334 |
| **Noninterest expense** | | | | |
| Compensation and benefits | 436,935 | 439,936 | 1,298,490 | 1,303,476 |
| Director fees | 24,300 | 24,300 | 72,900 | 72,900 |
| Occupancy and equipment | 98,345 | 103,529 | 289,899 | 280,825 |
| Computer processing | 98,172 | 89,473 | 290,519 | 272,160 |
| Professional services | 81,551 | 47,247 | 180,690 | 129,460 |
| State franchise taxes | 46,185 | 51,194 | 149,021 | 160,094 |
| Other | 83,079 | 86,874 | 254,417 | 245,388 |
| Total noninterest expense | 868,567 | 842,553 | 2,535,936 | 2,464,303 |
| Income before income taxes | 302,426 | 397,243 | 974,564 | 1,279,022 |
| Income tax expense | 108,800 | 142,000 | 349,400 | 454,300 |
| Net income | $ 193,626 | $ 255,243 | $ 625,164 | $ 824,722 |
| Earnings per common share - basic | $ 0.14 | $ 0.19 | $ 0.47 | $ 0.62 |
| Earnings per common share - diluted | $ 0.14 | $ 0.19 | $ 0.47 | $ 0.62 |

See accompanying notes to consolidated financial statements.

PEOPLES-SIDNEY FINANCIAL CORPORATION
CONDENSED CONSOLIDATED STATEMENTS OF CHANGES IN
SHAREHOLDERS' EQUITY
THREE AND NINE MONTHS ENDED MARCH 31, 2008 AND 2007
(Unaudited)

|  | Three Months Ended March 31, | | Nine Months Ended March 31, | |
|---|---|---|---|---|
|  | 2008 | 2007 | 2008 | 2007 |
| Balance, beginning of period | $ 15,581,632 | $ 15,261,059 | $ 15,258,318 | $ 15,499,512 |
| Net income for period | 193,626 | 255,243 | 625,164 | 824,722 |
| Cash dividends, $.16 per share for the three months ended March 31, 2008 and 2007, $.58 per share for the nine months ended March 31, 2008 and 2007 | (213,227) | (211,528) | (772,949) | (777,883) |
| Purchase of 31,600 shares of treasury stock for the nine months ended March 31, 2007, at cost | -- | -- | -- | (473,044) |
| Commitment to release 2,512 and 2,654 employee stock ownership plan shares for the three months ended March 31, 2008 and 2007, and 7,532 and 7,962 employee stock ownership plan shares for the nine months ended March 31, 2008 and 2007, at fair value | 28,823 | 36,277 | 89,859 | 115,008 |
| Change in fair value of common stock subject to repurchase obligation for the three and nine months ended March 31, 2008 and 2007 | (154,229) | 109,654 | 134,950 | 194,548 |
| Change in fair value on securities available for sale, net of tax | 36,056 | 23,238 | 137,339 | 91,080 |
| Balance, end of period | $ 15,472,681 | $ 15,473,943 | $ 15,472,681 | $ 15,473,943 |

See accompanying notes to consolidated financial statements.

6

PEOPLES-SIDNEY FINANCIAL CORPORATION
CONSOLIDATED STATEMENTS OF CASH FLOWS
NINE MONTHS ENDED MARCH 31, 2008 AND 2007
(Unaudited)

| | Nine Months Ended March 31, | |
|---|---|---|
| | 2008 | 2007 |
| Cash flows from operating activities | | |
| Net income | $ 625,164 | $ 824,722 |
| Adjustments to reconcile net income to net cash from operating activities | | |
| Depreciation | 126,842 | 121,945 |
| Provision for loan losses | 93,770 | (68,887) |
| Net accretion on securities | (354) | (270) |
| Proceeds from sale of loans in secondary market | 351,993 | 82,356 |
| Loans disbursed for sale in secondary market | (347,404) | (81,851) |
| Gain on sale of loans | (9,671) | (1,989) |
| Amortization of mortgage servicing rights | 504 | 28 |
| Gain on sale of REO and repossessions | (6,870) | (696) |
| FHLB stock dividends | (23,700) | (52,700) |
| Compensation expense for ESOP shares | 89,859 | 115,008 |
| Change in: | | |
| Accrued interest receivable and other assets | (131,339) | (17,257) |
| Accrued expense and other liabilities | (183,072) | (26,399) |
| Deferred loan fees | (31,007) | (21,321) |
| Net cash from operating activities | 554,715 | 872,689 |
| | | |
| Cash flows from investing activities | | |
| Purchase of time deposit | (1,000,000) | -- |
| Proceeds from maturities of available for sale securities | 3,000,000 | 500,000 |
| Net change in loans | 647,804 | 1,364,542 |
| Premises and equipment expenditures | (66,447) | (26,928) |
| Proceeds from sale REO and repossessions | 238,552 | 109,117 |
| Net cash from investing activities | 2,819,909 | 1,946,731 |
| | | |
| Cash flows from financing activities | | |
| Net change in deposits | (151,692) | (119,594) |
| Net change in short-term FHLB advances | 2,000,000 | (3,500,000) |
| Repayments of long-term FHLB advances | (3,280,239) | (1,453,038) |
| Proceeds from long-term FHLB advances | -- | 5,000,000 |
| Cash dividends paid | (772,949) | (777,883) |
| Purchase of treasury stock | -- | (473,044) |
| Net cash from financing activities | (2,204,880) | (1,323,559) |
| | | |
| Net change in cash and cash equivalents | 1,169,744 | 1,495,861 |
| Cash and cash equivalents at beginning of period | 7,182,198 | 4,714,929 |
| | | |
| Cash and cash equivalents at end of period | $ 8,351,942 | $ 6,210,790 |
| | | |
| Supplemental disclosures of cash flow information | | |
| Cash paid during the period for | | |
| Interest | $ 3,264,763 | $ 3,125,613 |
| Income taxes | 353,000 | 395,000 |
| Noncash transactions | | |
| Transfer from loans to other real estate owned | $ 526,663 | $ 262,341 |

See accompanying notes to consolidated financial statements.

7

PEOPLES-SIDNEY FINANCIAL CORPORATION
NOTES TO CONSOLIDATED FINANCIAL STATEMENTS
(Unaudited)

## NOTE 1 - SUMMARY OF SIGNIFICANT ACCOUNTING POLICIES

**Principles of Consolidation:** The accompanying consolidated financial statements include accounts of Peoples-Sidney Financial Corporation ("Peoples") and its wholly-owned subsidiary, Peoples Federal Savings and Loan Association ("Association"), a federal stock savings and loan association, together referred to as the Corporation. All significant intercompany transactions and balances have been eliminated.

These interim consolidated financial statements are prepared without audit and reflect all adjustments which, in the opinion of management, are necessary to present fairly the financial position of the Corporation at March 31, 2008 and its results of operations and cash flows for the periods presented. All such adjustments are normal and recurring in nature. The accompanying consolidated financial statements have been prepared in accordance with the instructions for Form 10-QSB and, therefore, do not purport to contain all the necessary financial disclosures required by U.S. generally accepted accounting principles that might otherwise be necessary in the circumstances, and should be read in conjunction with the consolidated financial statements and notes thereto of the Corporation for the fiscal year ended June 30, 2007, included in the Corporation's 2007 Annual Report on Form 10-KSB for the fiscal year ended June 30, 2007. Reference is made to the accounting policies of the Corporation described in the notes to consolidated financial statements contained in such report. The Corporation has consistently followed these policies in preparing this Form 10-QSB.

**Nature of Operations:** The Corporation provides financial services through its main office in Sidney, Ohio, and branch offices in Sidney, Anna and Jackson Center, Ohio. Its primary deposit products are checking, savings and term certificate accounts, and its primary lending products are residential mortgage, commercial and installment loans. Substantially all loans are secured by specific items of collateral including business assets, consumer assets and commercial and residential real estate. Commercial loans are expected to be repaid from cash flow from operations of businesses. There are no significant concentrations of loans to any one industry or customer. However, the customers' ability to repay their loans is dependent on the real estate and general economic conditions in the area. Substantially all revenues and services are derived from financial institution products and services in Shelby County and contiguous counties. Management considers the Corporation to operate primarily in one segment, banking.

**Use of Estimates:** To prepare financial statements in conformity with U.S. generally accepted accounting principles, management makes estimates and assumptions based on available information. These estimates and assumptions affect the amounts reported in the financial statements and disclosures provided, and actual results could differ. The allowance for loan losses and fair values of financial instruments are particularly subject to change.

**Income Taxes:** Income tax expense is based on the effective tax rate expected to be applicable for the entire year. Income tax expense is the total of the current year income tax due or refundable and the change in deferred tax assets and liabilities. Deferred tax assets and liabilities are the expected future tax amounts for the temporary differences between the carrying amounts and tax basis of assets and liabilities, computed using enacted tax rates. A valuation allowance, if needed, reduces deferred tax assets to the amount expected to be realized.

**Earnings Per Common Share:** Basic earnings per common share ("EPS") is net income divided by the weighted average number of common shares outstanding during the period. Employee stock ownership plan ("ESOP") shares are considered outstanding for this calculation unless unearned. Diluted EPS shows the dilutive effect of additional common shares upon exercise of stock options.

(Continued)

PEOPLES-SIDNEY FINANCIAL CORPORATION
NOTES TO CONSOLIDATED FINANCIAL STATEMENTS
(Unaudited)

## NOTE 1 - SUMMARY OF SIGNIFICANT ACCOUNTING POLICIES (Continued)

Adoption of New Accounting Standards: In February, 2006, the Financial Accounting Standards Board issued Statement of Financial Accounting Standards No. 155, "Accounting for Certain Hybrid Financial Instruments". This statement clarifies the treatment of derivatives that are freestanding or embedded as part of a beneficial interest in a securitized financial asset. This statement was effective July 1, 2007. The adoption of this pronouncement did not have a material impact on the consolidated financial statements.

In March, 2006, the Financial Accounting Standards Board issued Statement of Financial Accounting Standards No. 156, "Accounting for Servicing of Financial Assets". This statement allows the entity to choose the amortization method or the fair value method to account for each separately recognized servicing asset or liability. This statement was effective July 1, 2007. The adoption of this pronouncement did not have a material impact on the consolidated financial statements.

In June 2006, the FASB issued Interpretation ("FIN") No. 48, "Accounting for Uncertainty in Income Taxes - an Interpretation of FASB Statement No. 109", which clarifies the accounting for uncertainty in income taxes recognized in a company's financial statements in accordance with SFAS 109, Accounting for Income Taxes. FIN 48 prescribes a recognition and measurement threshold for a tax position taken or expected to be taken in a tax return. FIN 48 also provides guidance on derecognition, classification, interest and penalties, accounting in interim periods, disclosure, and transition. FIN 48 was effective July 1, 2007. The impact of adopting FIN 48 was not material to the consolidated financial statements.

The Corporation and its subsidiary are subject to U.S. federal income tax. The Corporation is no longer subject to examination by taxing authorities for fiscal years prior to June 30, 2003. The Corporation does not expect the total amount of unrecognized tax benefit to significantly increase in the next twelve months.

The Corporation recognizes interest related to income tax matters as interest expense and penalties related in income tax matters as other expense. The Corporation did not have any amounts accrued for interest and penalties at either July 1, 2007 or March 31, 2008.

Effect of Newly Issued But Not Yet Effective Accounting Standards: In September 2006, FASB issued SFAS Statement No. 157, Fair Value Measurement ("SFAS No. 157"). SFAS No. 157 defines fair value, establishes a framework for measuring fair value in generally accepted accounting principles, and expands disclosures about fair value measurements. SFAS No. 157 does not require any new fair value measurements. This statement is effective for fiscal years beginning after November 15, 2007 and interim periods within those fiscal years. The Corporation has not yet determined the effect, if any, that the application of SFAS No. 157 will have on its consolidated financial statements.

In February 2007, the FASB issued SFAS Statement No. 159, The Fair Value Option for Financial Assets and Financial Liabilities - Including an Amendment of FASB Statement No. 115, ("SFAS No. 159"). SFAS No. 159 permits entities to choose to measure many financial instruments and certain other items at fair value at specified election dates. If the fair value option is elected, a business entity shall report unrealized gains and losses on elected items in earnings at each subsequent reporting date. Upon initial adoption of this Statement, an entity is permitted to elect the fair value option for available-for-sale and held-to-maturity securities previously accounted for under SFAS Statement No. 115, Accounting for Certain Investments in Debt and Equity Securities ("SFAS No. 115"). The effect of reclassifying those securities into the trading category should be included in a cumulative-effect adjustment of retained earnings and not in current-period earnings and should be separately disclosed. SFAS No. 159 is effective as of the beginning of the first fiscal year that begins after November 15, 2007. The Corporation has not yet determined the effect, if any, that the application of SFAS No. 159 will have on its consolidated financial statements.

(Continued)

PEOPLES-SIDNEY FINANCIAL CORPORATION
NOTES TO CONSOLIDATED FINANCIAL STATEMENTS
(Unaudited)

## NOTE 2 -- SECURITIES AVAILABLE FOR SALE

Securities available for sale were as follows.

|  | Fair Value | Gross Unrealized Gains | Gross Unrealized Losses |
|---|---|---|---|
| March 31, 2008 |  |  |  |
| U.S. Government agencies | $ 2,056,260 | $ 57,552 | $ -- |
| June 30, 2007 |  |  |  |
| U.S. Government agencies | $ 4,847,820 | $ -- | $ (150,534) |

Contractual maturities of securities available for sale at March 31, 2008 were as follows. Actual maturities may differ from contractual maturities because borrowers may have the right to call or prepay obligations with or without call or prepayment penalties.

|  | Fair Value |
|---|---|
| Due in less than one year | $ -- |
| Due after one year through five years | -- |
| Due after five years through ten years | 2,056,260 |
|  | $ 2,056,260 |

A security pledged to secure public deposits and repurchase agreements had a carrying amount of $2,056,000 at March 31, 2008 and $1,863,000 at June 30, 2007. There were no sales of securities available for sale during the nine months ended March 31, 2008 or 2007.

No securities at March 31, 2008 were in an unrealized loss position. Securities with unrealized losses at June 30, 2007, aggregated by investment category and length of time that individual securities have been in a continuous unrealized loss position, are as follows.

| Description of Securities | Less than 12 Months | | 12 Months or More | | Total | |
|---|---|---|---|---|---|---|
|  | Fair Value | Unrealized Loss | Fair Value | Unrealized Loss | Fair Value | Unrealized Loss |
| June 30, 2007 |  |  |  |  |  |  |
| U.S. Government agencies | $ -- | $ -- | $ 4,847,820 | $ (150,534) | $ 4,847,820 | $ (150,534) |

Unrealized losses on the investment securities have not been recognized into income because the securities are of high credit quality, management has the intent and ability to hold for the foreseeable future, and the decline in fair value is largely due to changes in interest rates. The fair value is expected to recover as the securities approach their maturity date or reset date.

(Continued)

10

PEOPLES-SIDNEY FINANCIAL CORPORATION
NOTES TO CONSOLIDATED FINANCIAL STATEMENTS
(Unaudited)

**NOTE 3 - LOANS**

Loans were as follows:

|  | March 31, 2008 | June 30, 2007 |
|---|---|---|
| Mortgage loans: |  |  |
| 1-4 family residential | $ 84,645,904 | $ 86,555,451 |
| Multi-family residential | 4,545,338 | 4,232,326 |
| Commercial real estate | 14,912,222 | 13,893,048 |
| Real estate construction and development | 497,701 | 1,522,448 |
| Land | 2,781,030 | 2,891,359 |
| Total mortgage loans | 107,382,195 | 109,094,632 |
| Consumer loans | 4,950,882 | 5,357,102 |
| Commercial loans | 8,837,859 | 8,049,139 |
| Total loans | 121,170,936 | 122,500,873 |
| Less |  |  |
| Allowance for loan losses | (603,100) | (664,800) |
| Deferred loan fees | (317,991) | (348,998) |
|  | $ 120,249,845 | $ 121,487,075 |

At March 31, 2008 and June 30, 2007, there were no loans held for sale. Mortgage loans serviced for others are not reported as assets. The principal balance of these loans was $502,465 at March 31, 2008 and $159,819 at June 30, 2007. Servicing rights associated with the serviced loans totaled $6,723 at March 31, 2008 and $2,145 at June 30, 2007.

Activity in the allowance for loan losses is summarized as follows:

|  | Three Months Ended March 31, | | Nine Months Ended March 31, | |
|---|---|---|---|---|
|  | 2008 | 2007 | 2008 | 2007 |
| Balance at beginning of period | $ 737,900 | $ 696,000 | $ 664,800 | $ 893,600 |
| Provision for losses | 10,501 | 210 | 93,770 | (68,887) |
| Charge-offs | (153,638) | (70,596) | (169,447) | (200,307) |
| Recoveries | 8,337 | 2,386 | 13,977 | 3,594 |
| Balance at end of period | $ 603,100 | $ 628,000 | $ 603,100 | $ 628,000 |

(Continued)

PEOPLES-SIDNEY FINANCIAL CORPORATION
NOTES TO CONSOLIDATED FINANCIAL STATEMENTS
(Unaudited)

**NOTE 3 – LOANS** (Continued)

Impaired loans were as follows.

|  | March 31, 2008 | June 30, 2007 |
|---|---|---|
| Period-end impaired loans with no allowance for loan losses allocated | $         -- | $         -- |
| Period-end impaired loans with allowance for loan losses allocated | 78,000 | 246,000 |
| Amount of the allowance allocated to impaired loans | 10,000 | 35,000 |

|  | Three Months Ended March 31, | | Nine Months Ended March 31, | |
|---|---|---|---|---|
|  | 2008 | 2007 | 2008 | 2007 |
| Average of impaired loans during the period | $    40,000 | $    70,000 | $   274,000 | $    90,000 |
| Interest income recognized during the period | 440 | 335 | 15,760 | 2,206 |
| Cash-basis interest income recognized | 440 | 335 | 15,760 | 2,206 |

Nonperforming loans were as follows.

|  | March 31, 2008 | June 30, 2007 |
|---|---|---|
| Loans past due over 90 days still on accrual | $   961,000 | $    69,000 |
| Nonaccrual loans | 877,000 | 1,772,000 |

Nonperforming loans include smaller balance homogeneous loans, such as residential mortgage and consumer loans that are collectively evaluated for impairment and individually classified impaired loans.

(Continued)

12

PEOPLES-SIDNEY FINANCIAL CORPORATION
NOTES TO CONSOLIDATED FINANCIAL STATEMENTS
(Unaudited)

**NOTE 4 - BORROWED FUNDS**

At March 31, 2008 and June 30, 2007, the Association had a cash management line of credit enabling it to borrow up to $8,000,000 from the Federal Home Loan Bank of Cincinnati ("FHLB"). The Association has the option of selecting a variable rate of interest for up to 90 days or a fixed rate for a maximum of 30 days on the cash management advances. The line of credit must be renewed on an annual basis. There were no outstanding borrowings on this line of credit at June 30, 2007 and $2,000,000 outstanding at March 31, 2008.

As a member of the FHLB system, the Association has the ability to obtain borrowings up to a maximum total of $58.1 million including the cash management line of credit as of March 31, 2008. Advances from the Federal Home Loan Bank were as follows:

| | March 31, 2008 | June 30, 2007 |
|---|---|---|
| Cash management advance, variable rate 2.40% | $ 2,000,000 | $ — |
| 4.88% FHLB fixed-rate advance, due January 25, 2008 | — | 2,000,000 |
| 6.13% FHLB fixed-rate advance, due June 25, 2008 | 7,000,000 | 7,000,000 |
| 5.16% FHLB fixed-rate advance, due March 13, 2009 | 3,000,000 | 3,000,000 |
| 6.00% FHLB convertible advance, fixed-rate until March 2008, due June 11, 2009 | 5,000,000 | 5,000,000 |
| 4.42% FHLB fixed-rate advance, due July 9, 2010 | 2,000,000 | 2,000,000 |
| 6.27% FHLB convertible advance, fixed-rate until March 2008, due September 8, 2010 | 5,000,000 | 5,000,000 |
| 5.12% FHLB fixed-rate advance, due October 31, 2011 | 5,000,000 | 5,000,000 |
| 5.30% select pay mortgage-matched advance, final maturity May 1, 2011 | 399,040 | 484,157 |
| 5.35% select pay mortgage-matched advance, final maturity July 1, 2011 | 837,721 | 1,118,371 |
| 3.92% select pay mortgage-matched advance, final maturity November 1, 2012 | 398,827 | 480,421 |
| 3.55% select pay mortgage-matched advance, final maturity March 1, 2013 | 544,193 | 617,819 |
| 4.10% select pay mortgage-matched advance, final maturity March 1, 2015 | 379,742 | 517,930 |
| 4.09% select pay mortgage-matched advance, final maturity November 1, 2017 | 420,468 | 496,302 |
| 3.31% select pay mortgage-matched advance, final maturity April 1, 2019 | 481,876 | 508,543 |
| 4.72% select pay mortgage-matched advance, final maturity November 1, 2022 | 1,892,821 | 2,057,366 |
| 4.38% select pay mortgage-matched advance, final maturity December 1, 2022 | 630,918 | 682,277 |
| 3.92% select pay mortgage-matched advance, final maturity December 1, 2022 | 477,093 | 517,695 |
| 3.64% select pay mortgage-matched advance, final maturity March 1, 2023 | 1,441,124 | 1,600,569 |
| | $ 36,908,791 | $ 38,189,030 |

Advances under the borrowing agreements are collateralized by a blanket pledge of the Association's residential mortgage loan portfolio and its FHLB stock.

(Continued)

13

PEOPLES-SIDNEY FINANCIAL CORPORATION
NOTES TO CONSOLIDATED FINANCIAL STATEMENTS
(Unaudited)

**NOTE 4 - BORROWED FUNDS** (Continued)

The interest rates on the convertible advances are fixed for a specified number of years, then convertible to a variable rate at the option of the FHLB. If the convertible option is exercised, the advance may be prepaid without prepayment fee. The select pay mortgage-matched advances require monthly principal and interest payments and annual additional principal payments.

Maturities of FHLB advances for the next five years and thereafter were as follows.

Year ended March 31,

|  |  |  |
|---|---|---|
| 2009 | $ | 13,455,183 |
| 2010 |  | 6,288,063 |
| 2011 |  | 8,143,987 |
| 2012 |  | 5,820,892 |
| 2013 |  | 648,344 |
| Thereafter |  | 2,552,322 |
|  | $ | 36,908,791 |

**NOTE 5 - OFF-BALANCE-SHEET ACTIVITIES**

Loss contingencies, including claims and legal actions arising in the ordinary course of business, are recorded as liabilities when the likelihood of loss is probable and an amount or range of loss can be reasonably estimated. Management does not believe there now are such matters that will have a material effect on the financial statements.

Some financial instruments, such as loan commitments, credit lines, letters of credit and overdraft protection, are issued to meet customer financing needs. These are agreements to provide credit or to support the credit of others, as long as conditions established in the contract are met, and usually have expiration dates. Commitments may expire without being used. Off-balance-sheet risk of credit loss exists up to the face amount of these instruments, although material losses are not anticipated. The same credit policies are used to make such commitments as are used for loans, including obtaining collateral at exercise of the commitment.

The contractual amount of financial instruments with off-balance-sheet risk was as follows.

|  | March 31, 2008 | | June 30, 2007 | |
|---|---|---|---|---|
| 1-4 family residential real estate – fixed rate | $ | 687,000 | $ | 219,000 |
| 1-4 family residential real estate – variable rate |  | 375,000 |  | 366,000 |
| Commercial real estate – fixed rate |  | 51,000 |  | 232,000 |
| Commercial real estate – variable rate |  | 342,000 |  | -- |
| Commercial lines of credit – variable rate |  | 3,828,000 |  | 5,324,000 |
| Home equity lines of credit – variable rate |  | 893,000 |  | 974,000 |

The interest rate on fixed-rate commitments were 5.88% to 7.00% at March 31, 2008 and 7.25% to 8.13% at June 30, 2007. Commitments to make loans are generally made for a period of 30 days or less. The maximum maturity for fixed-rate commitments range from 10 years to 20 years.

At March 31, 2008 and June 30, 2007, the Corporation was required to have $251,000 and $295,000 on deposit with its correspondent banks as a compensating clearing requirement.

(Continued)

14.

PEOPLES-SIDNEY FINANCIAL CORPORATION
NOTES TO CONSOLIDATED FINANCIAL STATEMENTS
(Unaudited)

## NOTE 5 - OFF-BALANCE-SHEET ACTIVITIES (Continued)

The Corporation entered into employment agreements with certain of its officers. The agreements provide for a term of one to three years and a salary and performance review by the Board of Directors not less often than annually, as well as inclusion of the employee in any formally established employee benefit, bonus, pension and profit-sharing plans for which management personnel are eligible. The agreements provide for extensions for a period of one year on each annual anniversary date, subject to review and approval of the extension by disinterested members of the Board of Directors of the Association. The employment agreements also provide for vacation and sick leave.

The Association entered into a five-year lease for a branch in the Super Wal-Mart in Sidney that commenced in June 2001. The lease term was renewed in June 2006 for five years at $39,750 annually. The lease has another five-year renewal option at $49,688 annually.

## NOTE 6 - EARNINGS PER SHARE

The factors used in the earnings per share computation follow.

| | Three Months Ended March 31, | | Nine Months Ended March 31, | |
|---|---|---|---|---|
| | 2008 | 2007 | 2008 | 2007 |
| **Basic Earnings Per Common Share** | | | | |
| Net income | $ 193,626 | $ 255,243 | $ 625,164 | $ 824,722 |
| Weighted average common shares outstanding | 1,361,048 | 1,361,048 | 1,361,048 | 1,372,877 |
| Less: Average unallocated ESOP shares | (22,104) | (32,361) | (24,614) | (35,015) |
| Weighted average common shares outstanding for basic earnings per common share | 1,338,944 | 1,328,687 | 1,336,434 | 1,337,862 |
| Basic earnings per common share | $ 0.14 | $ 0.19 | $ 0.47 | $ 0.62 |
| **Diluted Earnings Per Common Share** | | | | |
| Net income | $ 193,626 | $ 255,243 | $ 625,164 | $ 824,722 |
| Weighted average common shares outstanding for basic earnings per common share | 1,338,944 | 1,328,687 | 1,336,434 | 1,337,862 |
| Add: Dilutive effects of assumed exercises of stock options | -- | -- | -- | -- |
| Weighted average common shares and dilutive potential common shares outstanding | 1,338,944 | 1,328,687 | 1,336,434 | 1,337,862 |
| Diluted earnings per common share | $ 0.14 | $ 0.19 | $ 0.47 | $ 0.62 |
| Average stock options not considered in calculation because they were not dilutive | 119,972 | 121,063 | 119,972 | 126,324 |

(Continued)

15

PEOPLES-SIDNEY FINANCIAL CORPORATION
MANAGEMENT'S DISCUSSION AND ANALYSIS
(Unaudited)

Item 2.  Management's Discussion and Analysis

**Introduction**

In the following pages, management presents an analysis of the consolidated financial condition of the Corporation as of March 31, 2008, compared to June 30, 2007, and results of operations for the three and nine months ended March 31, 2008, compared with the same periods in 2007. This discussion is designed to provide a more comprehensive review of operating results and financial position than could be obtained from an examination of the consolidated financial statements alone. This analysis should be read in conjunction with the interim consolidated financial statements and related footnotes included herein.

**Overview and Outlook**

The current local housing market and the economy in general remain depressed. Houses are taking longer periods to sell. Our county unemployment rate, however, remains stable at 5.2%. Even with the recent interest rate cuts, we are seeing limited housing activity in all price ranges. Foreclosures have declined, however, many foreclosed properties remain vacant and are listed for sale. Typically, purchasers of properties have very little cash to use for major purchases and disposable income continues to narrow as everyday consumer costs continue to increase.

Lower interest rates also compound the problem of attracting retail deposits. We continue to compare wholesale advance rates verses retail deposit rates to attract funds at the lowest cost reasonably attainable. We expect these trends to continue during the balance of 2008.

**Forward-Looking Statements**

When used in this filing or future filings by the Corporation with the Securities and Exchange Commission, or other public or shareholder communications, or in oral statements made with the approval of an authorized executive officer, the words or phrases "will likely result," "are expected to," "will continue," "is anticipated," "estimate," "project," "believe" or similar expressions are intended to identify "forward-looking statements" within the meaning of the Private Securities Litigation Reform Act of 1995. The Corporation wishes to caution readers not to place undue reliance on any such forward-looking statements, which speak only as of the date made, and to advise readers that various factors, including but not limited to regional and national economic conditions, changes in levels of market interest rates, credit risks of lending activities and competitive and regulatory factors, could affect the Corporation's financial performance and could cause the Corporation's actual results for future periods to differ materially from those anticipated or projected.

The Corporation does not undertake, and specifically disclaims, any obligation to publicly release the result of any revisions that may be made to any forward-looking statements to reflect occurrence of anticipated or unanticipated events or circumstances after the date of such statements.

**Financial Condition**

Total assets at March 31, 2008 were $136.8 million compared to $138.3 million at June 30, 2007, a decrease of $1.5 million. The decrease in total assets was primarily due to a decrease in loans of $1.2 million. Securities available for sale also decreased $2.8 million partially offset by increases in cash and cash equivalents and time deposits of $1.2 million and $1.0 million respectively.

Cash and cash equivalents increased $1.2 million from $7.2 million at June 30, 2007 to $8.4 million at March 31, 2008. The increase in cash and equivalents resulted from a decrease in securities. The securities portfolio, which is classified as available for sale, decreased $2.8 million from $4.8 million at June 30, 2007 to $2.0 million at March 31, 2008. The decrease was due to calls by the issuers of $3.0 million in securities, in accordance with their terms.

(Continued)

16

arty Search UCC Filing Search Business Services Contact Us

**411**

Filing Information

Document

# UCC SEARCH - MARIO GONZALES IN LANCASTER, TX

Data Updated November 10, 2014

Document

The debtor parties are Mario Gonzales in Lancaster TX and Agr Trucking, Inc. in Lancaster TX. The secured party is Transport Factoring, Inc. in Irving TX.

This Texas UCC Filing #9700130059 was recorded on and has an expiration date of 06/24/2002. The filing status is listed as Lapsed and there is 1 event listed on this filing dated 06/23/1997.

| Filing Number: | 97001300 59 | Filing Status: | Lapsed | Expiration Date: | 06/24/20 02 | UCC Pages: | 1 Page |
| Filing State: | Texas (TX) | Filing Date: | | Cancel Date: | None | Total Pages: | 1 Page |

Debtor Companies / People

Document

| Name: | Mario Gonzales |
| Address: | 1106 Rosewood Lancaster, TX 75146 |
| Entity Type: | General Business |

Document

| Name: | Agr Trucking, Inc. |
| Address: | 1106 Rosewood Lancaster, TX 75146 |
| Entity Type: | Corporation |

Secured Companies / People

Document

Document

Entity Type:  Corporation

Filing Events

Action Name:  Master
Record
(the Initial
Filing
Document,
Ucc1)

Page
Count:

1 Page   Address: Not Available

Document

Event Number: 1769569    Lapse Date: None

Event Date:      06/23/1997

Document

Previous Filing    Next Filing    Business Services

READ THIS DISCLAIMER: Without altering UCC411's rights and limitations to liability, as established in the
BE RESPONSIBLE FOR ANY LOSS OR DAMAGE RESULTING FROM YOUR RELIANCE, OR THE RELIA
OTHER UCC INFORMATION ACCESSIBLE THROUGH THIS WEBSITE, INCLUDING FOR ANY PERSON
MAKES NOR IMPLIES ANY WARRANTIES OR REPRESENTATIONS CONCERNING THE RELIABILITY, '
INFORMATION. WITHOUT LIMITATION, UCC411 DISCLAIMS ANY WARRANTY OF MERCHANTABILITY
RECORDS REASONABLY CONFORM TO ANY USE NOT EXPLICITLY COMMICATED TO UCC411 BY Y
PURPOSE (NOR DOES UCC411 HAVE ANY REASON TO KNOW OR BELIEVE THAT YOU REQUIRE TH
EXPLICITLY COMMUNICATED TO UCC411 BY YOU, THE END-USER).

Document

2013-2014 · UCC411.com · All rights reserved.

: · Privacy Policy · Sitemap

ı is not affiliated with any government agency.

Document

arty Search UCC Filing Search Business Services Contact Us

**411**

Filing Information

Document



**411**

---

Introduction

# FARM CREDIT WEST, PCA IN BAKERSFIELD CA, DINUBA CA, PASO ROBLES CA, VENTURA CA - UCC Search

8+1 {8}   Tweet {3}   Like {35}

*Data Updated November 13, 2014*

> There are 4 parties that go by the name of Farm Credit West, Pca. These parties collectively are associated with 5 UCC filings in Bakersfield CA, Dinuba CA, Paso Robles CA, and Ventura CA.

---

Texas UCC Filings

| | | | |
|---|---|---|---|
| Company Name: | Farm Credit West, Pca | Address: | P O Box 6070<br>Ventura, CA 93006 |
| Entity Type: | General Business | Party Type: | Secured |
| Filing Number: | 100000306868 | Filing Date: | |
| Filing Status: | Active | Filing State: | Texas (TX) |

| | | | |
|---|---|---|---|
| Company Name: | Farm Credit West, Pca | Address: | 175 Cow Meadow Place<br>Paso Robles, CA 93446 |
| Entity Type: | General Business | Party Type: | Secured |
| Filing Number: | 110025116421 | Filing Date: | |
| Filing Status: | Active | Filing State: | Texas (TX) |

| | | | |
|---|---|---|---|
| Company Name: | Farm Credit West, Pca | Address: | P O Box 904<br>Dinuba, CA 93618 |
| Entity Type: | General Business | Party Type: | Secured |
| Filing Number: | 50008122674 | Filing Date: | |
| Filing Status: | Lapsed | Filing State: | Texas (TX) |

| | | | |
|---|---|---|---|
| Company Name: | Farm Credit West, Pca | Address: | P O Box 6070<br>Ventura, CA 93006 |
| Entity Type: | General Business | Party Type: | Secured |
| Filing Number: | 60024427530 | Filing Date: | |
| Filing Status: | Active | Filing State: | Texas (TX) |

| | | | |
|---|---|---|---|
| Company Name: | Farm Credit West, Pca | Address: | 19628 Industry Parkway Dr<br>Bakersfield, CA 93308 |
| Entity Type: | General Business | Party Type: | Secured |
| Filing Number: | 60039558804 | Filing Date: | |
| Filing Status: | Active | Filing State: | Texas (TX) |

---

Previous Party   Next Party   Business Services

READ THIS DISCLAIMER: Without altering UCC411's rights and limitations to liability, as established in the Terms of , UNDER NO CIRCUMSTANCES WILL UCC411 BE RESPONSIBLE FOR ANY LOSS OR DAMAGE RESULTING FROM YOUR RELIANCE, OR THE RELIANCE OF THIRD PARTIES, UPON UCC RECORDS OR OTHER UCC INFORMATION ACCESSIBLE THROUGH THIS WEBSITE, INCLUDING FOR ANY PERSONAL OR COMMERCIAL PURPOSE. UCC411 NEITHER MAKES NOR IMPLIES ANY WARRANTIES OR REPRESENTATIONS CONCERNING THE RELIABILITY, COMPLETENESS, OR CURRENCY OF RECORD INFORMATION. WITHOUT LIMITATION, UCC411 DISCLAIMS ANY WARRANTY OF MERCHANTABILITY (INCLUDING DISCLAIMING ANY WARRANTY THAT THESE RECORDS REASONABLY CONFORM TO ANY USE NOT EXPLICITLY COMMICATED TO UCC411 BY YOU, THE END-USER), OR FITNESS FOR A PARTICULAR PURPOSE (NOR DOES UCC411 HAVE ANY REASON TO KNOW OR BELIEVE THAT YOU REQUIRE THESE RECORDS FOR ANY PARTICULAR PURPOSE NOT EXPLICITLY COMMUNICATED TO UCC411 BY YOU, THE END-USER).

Copyright © 2013-2015 · UCC411.com · All rights reserved.

Terms of Use  ·  Privacy Policy  ·  Sitemap

 411

*UCC411.com is not affiliated with any government agency.*

 **411**

---

### Filing Information

## KENNETH STEWART IN IRVING, TX - UCC SEARCH

8+1 ⟨8⟩   Tweet ⟨3⟩   Like ⟨35⟩

*Data Updated November 10, 2014*

The debtor parties are Kenneth Stewart in Irving TX and K & K Transportation in Grand Prairie TX. The secured party is Transport Factoring, Inc. in Irving TX.

This Texas UCC Filing #9700130058 was recorded on and has an expiration date of 06/24/2002. The filing status is listed as Lapsed and there is 1 event listed on this filing dated 06/23/1997.

| | | | |
|---|---|---|---|
| Filing Number: 9700130058 | Filing Status: Lapsed | Expiration Date: 06/24/2002 | UCC Pages: 1 Page |
| Filing State: Texas (TX) | Filing Date: | Cancel Date: None | Total Pages: 1 Page |

### Debtor Companies / People

Name:    Kenneth Stewart
Address:   2028 Sandy Ln
          Irving, TX 75060
Entity Type: General Business

Name:    K & K Transportation
Address:   901 E Hunter Ferrell
          Grand Prairie, TX 75050
Entity Type: General Business

### Secured Companies / People

Name:    Transport Factoring, Inc.
Address:   P O Box 167648
          Irving, TX 75016
Entity Type: Corporation

### Filing Events

| | | | |
|---|---|---|---|
| Action Name: Master Record (the Initial Filing Document, Ucc1) | Page Count: 1 Page | Address: | Not Available |
| Event Number: 1769567 | Lapse Date: None | | |
| Event Date: 06/23/1997 | | | |

Previous Filing   Next Filing   Business Services

READ THIS DISCLAIMER: Without altering UCC411's rights and limitations to liability, as established in the Terms of Use, UNDER NO CIRCUMSTANCES WILL UCC411 BE RESPONSIBLE FOR ANY LOSS OR DAMAGE RESULTING FROM YOUR RELIANCE, OR THE RELIANCE OF THIRD PARTIES, UPON UCC RECORDS OR OTHER UCC INFORMATION ACCESSIBLE THROUGH THIS WEBSITE, INCLUDING FOR ANY PERSONAL OR COMMERCIAL PURPOSE. UCC411 NEITHER MAKES NOR IMPLIES ANY WARRANTIES OR REPRESENTATIONS CONCERNING THE RELIABILITY, COMPLETENESS, OR CURRENCY OF RECORD INFORMATION. WITHOUT LIMITATION, UCC411 DISCLAIMS ANY WARRANTY OF MERCHANTABILITY (INCLUDING DISCLAIMING ANY WARRANTY THAT THESE RECORDS REASONABLY CONFORM TO ANY USE NOT EXPLICITLY COMMICATED TO UCC411 BY YOU, THE END-USER), OR FITNESS FOR A PARTICULAR PURPOSE (NOR DOES UCC411 HAVE ANY REASON TO KNOW OR BELIEVE THAT YOU REQUIRE THESE RECORDS FOR ANY PARTICULAR PURPOSE NOT EXPLICITLY COMMUNICATED TO UCC411 BY YOU, THE END-USER).

Copyright © 2013-2015 · UCC411.com · All rights reserved.

Terms of Use  ·  Privacy Policy  ·  Sitemap

411

*UCC411.com is not affiliated with any government agency.*

Name:       Kenneth Stewart

Filing Status: Lapsed                 Filing Date:

Entity Type: General Business         Filing
                                      Number:        80002196369

Filing State: Texas (TX)              Address:       2347 Fm 829
                                                     Stanton, TX 79782


Name:       Kenneth Stewart

Filing Status: Lapsed                 Filing Date:

Entity Type: General Business         Filing
                                      Number:        90028700834

Filing State: Texas (TX)              Address:       2347 Fm 829
                                                     Stanton, TX 79782


Name:       Kenneth Stewart

Filing Status: Lapsed                 Filing Date:

Entity Type: General Business         Filing
                                      Number:        9700130058

Filing State: Texas (TX)              Address:       2028 Sandy Ln
                                                     Irving, TX 75060


Name:       Kenneth Stewart

Filing Status: Lapsed                 Filing Date:

Entity Type: General Business         Filing
                                      Number:        9700198891

Filing State: Texas (TX)              Address:       303 E Central Ave
                                                     Nixon, TX 78140


PreviousNextBusiness Services

READ THIS DISCLAIMER: Without altering UCC411's rights and limitations to liability, as established in the
BE RESPONSIBLE FOR ANY LOSS OR DAMAGE RESULTING FROM YOUR RELIANCE, OR THE RELIA
OTHER UCC INFORMATION ACCESSIBLE THROUGH THIS WEBSITE, INCLUDING FOR ANY PERSON
MAKES NOR IMPLIES ANY WARRANTIES OR REPRESENTATIONS CONCERNING THE RELIABILITY,
INFORMATION. WITHOUT LIMITATION, UCC411 DISCLAIMS ANY WARRANTY OF MERCHANTABILITY
RECORDS REASONABLY CONFORM TO ANY USE NOT EXPLICITLY COMMICATED TO UCC411 BY Y
PURPOSE (NOR DOES UCC411 HAVE ANY REASON TO KNOW OR BELIEVE THAT YOU REQUIRE TH
EXPLICITLY COMMUNICATED TO UCC411 BY YOU, THE END-USER).



Home   UCC Party Search   UCC Filing Search   Business Services   Contact Us     8+1 〈 8 〉   Tweet 〈 3 〉   Like 〈 35 〉



**411**

---

### Filing Information

## KENNETH S. ENG JR IN WINSTON, NM - UCC SEARCH    8+1 〈 8 〉   Tweet 〈 3 〉   Like 〈 35 〉
*Data Updated November 10, 2014*

The debtor parties are Kenneth S. Eng Jr in Winston NM, Kenneth S. Eng in Winston NM, The Eng Family Living Trust Dated April 13, 2004 in Winston NM, and K. S. Eng, Inc. Profit Sharing Plan And Trust, As Amended And Restated in Winston NM. The secured party is Farm Credit West, Pca in Paso Robles CA.

This Texas UCC Filing #110025116421 was recorded on and has an expiration date of 08/25/2016. The filing status is listed as Active and there is 1 event listed on this filing dated 08/25/2011.

| | | | |
|---|---|---|---|
| Filing Number: 110025116421 | Filing Status: Active | Expiration Date: 08/25/2016 | UCC Pages: 3 Pages |
| Filing State: Texas (TX) | Filing Date: | Cancel Date: None | Total Pages: 3 Pages |

---

### Debtor Companies / People

Name:   Kenneth S. Eng Jr
Address:   P O Box 272
     Winston, NM 87943
Entity Type: General Business

Name:   Kenneth S. Eng
Address:   P O Box 272
     Winston, NM 87943
Entity Type: General Business

Name:   The Eng Family Living Trust Dated April 13, 2004
Address:   P O Box 272
     Winston, NM 87943
Entity Type: General Business

Name:   K. S. Eng, Inc. Profit Sharing Plan And Trust, As Amended And Restated
Address:   P O Box 272
     Winston, NM 87943
Entity Type: General Business

---

### Secured Companies / People

Name:   Farm Credit West, Pca
Address:   175 Cow Meadow Place
     Paso Robles, CA 93446
Entity Type: General Business

---

### Filing Events

| | | | |
|---|---|---|---|
| Action Name: Master Record (the Initial Filing Document, Ucc1) | Page Count: 3 Pages | Address: | Not Available |
| Event Number: 385883170002 | Lapse Date: None | | |
| Event Date: 08/25/2011 | | | |

Previous Filing · Next Filing · Business Services

READ THIS DISCLAIMER: Without altering UCC411's rights and limitations to liability, as established in the Terms of Use, UNDER NO CIRCUMSTANCES WILL UCC411 BE RESPONSIBLE FOR ANY LOSS OR DAMAGE RESULTING FROM YOUR RELIANCE, OR THE RELIANCE OF THIRD PARTIES, UPON UCC RECORDS OR OTHER UCC INFORMATION ACCESSIBLE THROUGH THIS WEBSITE, INCLUDING FOR ANY PERSONAL OR COMMERCIAL PURPOSE. UCC411 NEITHER MAKES NOR IMPLIES ANY WARRANTIES OR REPRESENTATIONS CONCERNING THE RELIABILITY, COMPLETENESS, OR CURRENCY OF RECORD INFORMATION. WITHOUT LIMITATION, UCC411 DISCLAIMS ANY WARRANTY OF MERCHANTABILITY (INCLUDING DISCLAIMING ANY WARRANTY THAT THESE RECORDS REASONABLY CONFORM TO ANY USE NOT EXPLICITLY COMMICATED TO UCC411 BY YOU, THE END-USER), OR FITNESS FOR A PARTICULAR PURPOSE (NOR DOES UCC411 HAVE ANY REASON TO KNOW OR BELIEVE THAT YOU REQUIRE THESE RECORDS FOR ANY PARTICULAR PURPOSE NOT EXPLICITLY COMMUNICATED TO UCC411 BY YOU, THE END-USER).

Copyright © 2013-2015 · UCC411.com · All rights reserved.

Terms of Use · Privacy Policy · Sitemap

 411

*UCC411.com is not affiliated with any government agency.*

Home   UCC Party Search   UCC Filing Search   Business Services   Contact Us

g+1 9   Tweet 3   Like 30

 **411**

Filing Information

## UCC SEARCH - GOLDSTAR EMERGENCY MEDICAL SERVICES, INC. IN PORT ARTHUR, TX

g+1 9   Tweet 3   Like 30

*Data Updated November 10, 2014*

### $25,000 Tax Incentive

**Maximize Your Small Business Tax Return On Purchases Of GM Vehicles.**

o o

The debtor party is Goldstar Emergency Medical Services, Inc. in Port Arthur TX and the secured party is Wells Fargo Equipment Finance, Inc. in Minneapolis MN.

This Texas UCC Filing #30040164290 was recorded on and has an expiration date of 08/29/2008. The filing status is listed as Lapsed and there is 1 event listed on this filing dated 08/29/2003.

| | | | |
|---|---|---|---|
| Filing Number: 30040164290 | Filing Status: Lapsed | Expiration Date: 08/29/2008 | UCC Pages: 1 Page |
| Filing State: Texas (TX) | Filing Date: | Cancel Date: None | Total Pages: 1 Page |

Debtor Companies / People

Name: Goldstar Emergency Medical Services, Inc.
Address: 4439 Gulfway Dr
Port Arthur, TX 77642
Entity Type: Corporation

### Advisory Advisory Firm

**Attend One Of Our Seminars & Learn More About Your Wealth Management!**

o o

Secured Companies / People

Name: Wells Fargo Equipment Finance, Inc.
Address: 733 Marquette Ave Ste 700
Minneapolis, MN 55042
Entity Type: Corporation

Filing Events

Action Name: Master Record (the Initial   Page Count: 1 Page   Address: Not Available
Filing Document, Ucc1)

Event Number: 40997060002        Lapse Date:  **None**
Event Date:     08/29/2003

# Arrest Records: 2 Secrets

1) Type Name and Stat 2) Unlimited Secrets About Anyone. Takes
Seconds.

○ ○

Previous Filing   Next Filing   Business Services

READ THIS DISCLAIMER: Without altering UCC411's rights and limitations to liability, as established in the Terms of Use. UNDER NO CIRCUMSTANCES WILL UCC411 BE RESPONSIBLE FOR ANY LOSS OR DAMAGE RESULTING FROM YOUR RELIANCE, OR THE RELIANCE OF THIRD PARTIES, UPON UCC RECORDS OR OTHER UCC INFORMATION ACCESSIBLE THROUGH THIS WEBSITE, INCLUDING FOR ANY PERSONAL OR COMMERCIAL PURPOSE. UCC411 NEITHER MAKES NOR IMPLIES ANY WARRANTIES OR REPRESENTATIONS CONCERNING THE RELIABILITY, COMPLETENESS, OR CURRENCY OF RECORD INFORMATION. WITHOUT LIMITATION, UCC411 DISCLAIMS ANY WARRANTY OF MERCHANTABILITY (INCLUDING DISCLAIMING ANY WARRANTY THAT THESE RECORDS REASONABLY CONFORM TO ANY USE NOT EXPLICITLY COMMICATED TO UCC411 BY YOU, THE END-USER), OR FITNESS FOR A PARTICULAR PURPOSE (NOR DOES UCC411 HAVE ANY REASON TO KNOW OR BELIEVE THAT YOU REQUIRE THESE RECORDS FOR ANY PARTICULAR PURPOSE NOT EXPLICITLY COMMUNICATED TO UCC411 BY YOU, THE END-USER).

Copyright © 2013-2014 · UCC411.com · All rights reserved.

Terms of Use  ·  Privacy Policy  ·  Sitemap

**U**· **411**

*UCC411.com is not affiliated with any government agency.*

Home   UCC Party Search   UCC Filing Search   Business Services   Contact Us        8+1  9    Tweet  3    Like  30

 **411**

Filing Information

## UCC SEARCH - OAK CREEK PARTNERS, LTD. IN DALLAS, TX        8+1  9    Tweet  3    Like  30
*Data Updated November 10, 2014*

### Mergers And Acquisitions

Our esteemed faculty can bridge your leadership gap. Learn more.

o   o

The debtor party is Oak Creek Partners, Ltd. in Dallas TX. The secured parties are Bank One, Na in Dallas TX, Blackburn Central Holdings, L.P. in Dallas TX, and Jpmorgan Chase Bank, N.a., Successor By Merger To Bank One, Na in Dallas TX.

This Texas UCC Filing #30040164189 was recorded on and has an expiration date of 08/29/2008.The filing status is listed as Lapsed and there are 4 events listed on this filing ranging from 08/29/2003 to 06/23/2006.

Filing Number: 30040164189      Filing Status: **Lapsed**          Expiration Date: 08/29/2008      UCC Pages: 9 Pages
Filing State:   **Texas (TX)**      Filing Date:                          Cancel Date:   **None**          Total Pages: 9 Pages

Debtor Companies / People

Name:       Oak Creek Partners, Ltd.
Address:    3232 Mckinney Ave Ste 890
            Dallas, TX 75204
Entity Type: Limited Partnership

### Arrest Records: 2 Secrets

1) Type Name and Stat 2) Unlimited Secrets About Anyone. Takes Seconds

o   o

Secured Companies / People

Name:       Bank One, Na
Address:    1717 Main St Ste 600
            Dallas, TX 75201
Entity Type: General Business

Name:       Blackburn Central Holdings, L.P.
Address:    3232 Mckinney Ave Ste 890
            Dallas, TX 75204
Entity Type: Limited Partnership

Name:       Jpmorgan Chase Bank, N.a., Successor By Merger To Bank One, Na

Address:    1717 Main St Ste 600
Dallas, TX 75201

Entity Type: General Business

Filing Events

| | | | | | |
|---|---|---|---|---|---|
| Action Name: | Master Record (the Initial Filing Document, Ucc1) | Page Count: | 3 Pages | Address: | Not Available |
| Event Number: | 41004510003 | Lapse Date: | None | | |
| Event Date: | 08/29/2003 | | | | |
| Action Name: | Amendment, Master Amendment | Page Count: | 4 Pages | Address: | Not Available |
| Event Number: | 134242760003 | Lapse Date: | None | | |
| Event Date: | 06/23/2006 | | | | |
| Action Name: | Assignment, Master Assignment | Page Count: | 1 Page | Address: | Not Available |
| Event Number: | 134242760004 | Lapse Date: | None | | |
| Event Date: | 06/23/2006 | | | | |
| Action Name: | Termination | Page Count: | 1 Page | Address: | Not Available |
| Event Number: | 134242760005 | Lapse Date: | None | | |
| Event Date: | 06/23/2006 | | | | |

# Advisory Advisory Firm

Attend One Of Our Seminars & Learn More About Your Wealth

Previous Filing    Next Filing    Business Services

READ THIS DISCLAIMER: Without altering UCC411's rights and limitations to liability, as established in the Terms of Use. UNDER NO CIRCUMSTANCES WILL UCC411 BE RESPONSIBLE FOR ANY LOSS OR DAMAGE RESULTING FROM YOUR RELIANCE, OR THE RELIANCE OF THIRD PARTIES, UPON UCC RECORDS OR OTHER UCC INFORMATION ACCESSIBLE THROUGH THIS WEBSITE, INCLUDING FOR ANY PERSONAL OR COMMERCIAL PURPOSE. UCC411 NEITHER MAKES NOR IMPLIES ANY WARRANTIES OR REPRESENTATIONS CONCERNING THE RELIABILITY, COMPLETENESS, OR CURRENCY OF RECORD INFORMATION. WITHOUT LIMITATION, UCC411 DISCLAIMS ANY WARRANTY OF MERCHANTABILITY (INCLUDING DISCLAIMING ANY WARRANTY THAT THESE RECORDS REASONABLY CONFORM TO ANY USE NOT EXPLICITLY COMMICATED TO UCC411 BY YOU, THE END-USER), OR FITNESS FOR A PARTICULAR PURPOSE (NOR DOES UCC411 HAVE ANY REASON TO KNOW OR BELIEVE THAT YOU REQUIRE THESE RECORDS FOR ANY PARTICULAR PURPOSE NOT EXPLICITLY COMMUNICATED TO UCC411 BY YOU, THE END-USER).

Copyright © 2013-2014 · UCC411.com · All rights reserved.

Terms of Use · Privacy Policy · Sitemap

UCC411.com is not affiliated with any government agency.

 **411**

Filing Information

## UCC SEARCH - OAK CREEK PARTNERS, LTD. IN DALLAS, TX          8+1  9   Tweet  3   Like  30
*Data Updated November 10, 2014*

### Going Public: Go Public

**We Take Companies Public Fast Go Public With Your**

The debtor party is Oak Creek Partners, Ltd. in Dallas TX. The secured parties are Bank One, Na in Dallas TX, Blackburn Central Holdings, L.P. in Dallas TX, and Jpmorgan Chase Bank, N.a., Successor By Merger To Bank One, Na in Dallas TX.

This Texas UCC Filing #30040164189 was recorded on and has an expiration date of 08/29/2008. The filing status is listed as Lapsed and there are 4 events listed on this filing ranging from 08/29/2003 to 06/23/2006.

| | | | |
|---|---|---|---|
| Filing Number: 30040164189 | Filing Status: **Lapsed** | Expiration Date: 08/29/2008 | UCC Pages: 9 Pages |
| Filing State: **Texas (TX)** | Filing Date: | Cancel Date: **None** | Total Pages: 9 Pages |

Debtor Companies / People

Name: Oak Creek Partners, Ltd.
Address: 3232 Mckinney Ave Ste 890
Dallas, TX 75204
Entity Type: Limited Partnership

### GM Vehicle Tax Incentives

**Learn How to Get Up to a $25K Tax Deduction When Buying a GM Vehicle.**

Secured Companies / People

Name: Bank One, Na
Address: 1717 Main St Ste 600
Dallas, TX 75201
Entity Type: General Business

Name: Blackburn Central Holdings, L.P.
Address: 3232 Mckinney Ave Ste 890
Dallas, TX 75204
Entity Type: Limited Partnership

Name: Jpmorgan Chase Bank, N.a., Successor By Merger To Bank One, Na

Address:    1717 Main St Ste 600
            Dallas, TX 75201

Entity Type: General Business

### Filing Events

| Action Name: | Master Record (the Initial Filing Document, Ucc1) | Page Count: | 3 Pages | Address: | Not Available |
|---|---|---|---|---|---|
| Event Number: | 41004510003 | Lapse Date: | None | | |
| Event Date: | 08/29/2003 | | | | |
| Action Name: | Amendment, Master Amendment | Page Count: | 4 Pages | Address: | Not Available |
| Event Number: | 134242760003 | Lapse Date: | None | | |
| Event Date: | 06/23/2006 | | | | |
| Action Name: | Assignment, Master Assignment | Page Count: | 1 Page | Address: | Not Available |
| Event Number: | 134242760004 | Lapse Date: | None | | |
| Event Date: | 06/23/2006 | | | | |
| Action Name: | Termination | Page Count: | 1 Page | Address: | Not Available |
| Event Number: | 134242760005 | Lapse Date: | None | | |
| Event Date: | 06/23/2006 | | | | |

## Arrest Records: 2 Secrets

1) Enter Name and State. 2) Access Full Background Checks

○ ○

Previous Filing   Next Filing   Business Services

READ THIS DISCLAIMER: Without altering UCC411's rights and limitations to liability, as established in the Terms of Use, UNDER NO CIRCUMSTANCES WILL UCC411 BE RESPONSIBLE FOR ANY LOSS OR DAMAGE RESULTING FROM YOUR RELIANCE, OR THE RELIANCE OF THIRD PARTIES, UPON UCC RECORDS OR OTHER UCC INFORMATION ACCESSIBLE THROUGH THIS WEBSITE, INCLUDING FOR ANY PERSONAL OR COMMERCIAL PURPOSE. UCC411 NEITHER MAKES NOR IMPLIES ANY WARRANTIES OR REPRESENTATIONS CONCERNING THE RELIABILITY, COMPLETENESS, OR CURRENCY OF RECORD INFORMATION. WITHOUT LIMITATION, UCC411 DISCLAIMS ANY WARRANTY OF MERCHANTABILITY (INCLUDING DISCLAIMING ANY WARRANTY THAT THESE RECORDS REASONABLY CONFORM TO ANY USE NOT EXPLICITLY COMMICATED TO UCC411 BY YOU, THE END-USER), OR FITNESS FOR A PARTICULAR PURPOSE (NOR DOES UCC411 HAVE ANY REASON TO KNOW OR BELIEVE THAT YOU REQUIRE THESE RECORDS FOR ANY PARTICULAR PURPOSE NOT EXPLICITLY COMMUNICATED TO UCC411 BY YOU, THE END-USER).

Copyright © 2013-2014 · UCC411.com · All rights reserved.

Terms of Use · Privacy Policy · Sitemap

UCC411.com is not affiliated with any government agency.

Home    UCC Party Search    UCC Filing Search    Business Services    Contact Us

8+1  8    Tweet 3    Like 35


**411**

---

### Introduction

## K & K TRANSPORTATION LLC IN HUMBLE TX - UCC Search

8+1 8   Tweet 3   Like 35

*Data Updated November 20, 2014*

There is 1 party that goes by the name of K & K Transportation LLC. This party is associated with 1 UCC filing in Humble TX.

---

### Texas UCC Filings

| | | | |
|---|---|---|---|
| Company Name: | K & K Transportation LLC | Address: | 5814 Frost St<br>Humble, TX 77396 |
| Entity Type: | Limited-Liability Company | Party Type: | Debtor |
| Filing Number: | 140018540235 | Filing Date: | |
| Filing Status: | Active | Filing State: | Texas (TX) |

---

Previous Party    Next Party    Business Services

READ THIS DISCLAIMER: Without altering UCC411's rights and limitations to liability, as established in the Terms of Use, UNDER NO CIRCUMSTANCES WILL UCC411 BE RESPONSIBLE FOR ANY LOSS OR DAMAGE RESULTING FROM YOUR RELIANCE, OR THE RELIANCE OF THIRD PARTIES, UPON UCC RECORDS OR OTHER UCC INFORMATION ACCESSIBLE THROUGH THIS WEBSITE, INCLUDING FOR ANY PERSONAL OR COMMERCIAL PURPOSE. UCC411 NEITHER MAKES NOR IMPLIES ANY WARRANTIES OR REPRESENTATIONS CONCERNING THE RELIABILITY, COMPLETENESS, OR CURRENCY OF RECORD INFORMATION. WITHOUT LIMITATION, UCC411 DISCLAIMS ANY WARRANTY OF MERCHANTABILITY (INCLUDING DISCLAIMING ANY WARRANTY THAT THESE RECORDS REASONABLY CONFORM TO ANY USE NOT EXPLICITLY COMMICATED TO UCC411 BY YOU, THE END-USER), OR FITNESS FOR A PARTICULAR PURPOSE (NOR DOES UCC411 HAVE ANY REASON TO KNOW OR BELIEVE THAT YOU REQUIRE THESE RECORDS FOR ANY PARTICULAR PURPOSE NOT EXPLICITLY COMMUNICATED TO UCC411 BY YOU, THE END-USER).

Copyright © 2013-2015 · UCC411.com · All rights reserved.

Terms of Use · Privacy Policy · Sitemap

*UCC411.com is not affiliated with any government agency.*

411



**411**

---

### Introduction

## THE ENG FAMILY LIVING TRUST DATED APRIL 13, 2004 IN RUIDOSO NM, WINSTON NM - UCC Search

8+1 · 8   Tweet · 3   Like · 35

*Data Updated November 12, 2014*

> There are 2 parties that go by the name of The
> Eng Family Living Trust Dated April 13, 2004.
> These parties collectively are associated with 2
> UCC filings in Ruidoso NM and Winston NM.

---

### Texas UCC Filings

**Company Name:** The Eng Family Living Trust Dated April 13, 2004    **Address:** P O Box 272
Winston, NM 87943

| | | | |
|---|---|---|---|
| **Entity Type:** | General Business | **Party Type:** | Debtor |
| **Filing Number:** | 110025116421 | **Filing Date:** | |
| **Filing Status:** | Active | **Filing State:** | Texas (TX) |

**Company Name:** The Eng Family Living Trust Dated April 13, 2004    **Address:** P O Box 3270
Ruidoso, NM 88355

| | | | |
|---|---|---|---|
| **Entity Type:** | General Business | **Party Type:** | Debtor |
| **Filing Number:** | 9800003588 | **Filing Date:** | |
| **Filing Status:** | Lapsed | **Filing State:** | Texas (TX) |

---

<u>Previous Party</u>   <u>Next Party</u>   <u>Business Services</u>

READ THIS DISCLAIMER: Without altering UCC411's rights and limitations to liability, as established in the <u>Terms of Use</u>, UNDER NO CIRCUMSTANCES WILL UCC411 BE RESPONSIBLE FOR ANY LOSS OR DAMAGE RESULTING FROM YOUR RELIANCE, OR THE RELIANCE OF THIRD PARTIES, UPON UCC RECORDS OR OTHER UCC INFORMATION ACCESSIBLE THROUGH THIS WEBSITE, INCLUDING FOR ANY PERSONAL OR COMMERCIAL PURPOSE. UCC411 NEITHER MAKES NOR IMPLIES ANY WARRANTIES OR REPRESENTATIONS CONCERNING THE RELIABILITY, COMPLETENESS, OR CURRENCY OF RECORD INFORMATION. WITHOUT LIMITATION, UCC411 DISCLAIMS ANY WARRANTY OF MERCHANTABILITY (INCLUDING DISCLAIMING ANY WARRANTY THAT THESE RECORDS REASONABLY CONFORM TO ANY USE NOT EXPLICITLY COMMICATED TO UCC411 BY YOU, THE END-USER), OR FITNESS FOR A PARTICULAR PURPOSE (NOR DOES UCC411 HAVE ANY REASON TO KNOW OR BELIEVE THAT YOU REQUIRE THESE RECORDS FOR ANY PARTICULAR PURPOSE NOT EXPLICITLY COMMUNICATED TO UCC411 BY YOU, THE END-USER).

Copyright © 2013-2015 · UCC411.com · All rights reserved.

Terms of Use · Privacy Policy · Sitemap

*UCC411.com is not affiliated with any government agency.*

**411**

Home   UCC Party Search   UCC Filing Search   Business Services   Contact Us

8+1 | 8 |   Tweet | 3 |   Like | 35

 **411**

---

Introduction

## K & K TRANSPORTATION IN GRAND PRAIRIE TX - UCC Search

8+1 | 8 |   Tweet | 3 |   Like | 35

*Data Updated November 14, 2014*

There is 1 party that goes by the name of K & K
Transportation. This party is associated with 1
UCC filing in Grand Prairie TX.

---

Texas UCC Filings

| | | | |
|---|---|---|---|
| Name: | K & K Transportation | Address: | 901 E Hunter Ferrell<br>Grand Prairie, TX 75050 |
| Entity Type: | General Business | Party Type: | Debtor |
| Filing Number: | 9700130058 | Filing Date: | |
| Filing Status: | Lapsed | Filing State: | Texas (TX) |

---

Previous Party   Next Party   Business Services

READ THIS DISCLAIMER: Without altering UCC411's rights and limitations to liability, as established in the Terms of Use, UNDER NO CIRCUMSTANCES WILL UCC411 BE RESPONSIBLE FOR ANY LOSS OR DAMAGE RESULTING FROM YOUR RELIANCE, OR THE RELIANCE OF THIRD PARTIES, UPON UCC RECORDS OR OTHER UCC INFORMATION ACCESSIBLE THROUGH THIS WEBSITE, INCLUDING FOR ANY PERSONAL OR COMMERCIAL PURPOSE. UCC411 NEITHER MAKES NOR IMPLIES ANY WARRANTIES OR REPRESENTATIONS CONCERNING THE RELIABILITY, COMPLETENESS, OR CURRENCY OF RECORD INFORMATION. WITHOUT LIMITATION, UCC411 DISCLAIMS ANY WARRANTY OF MERCHANTABILITY (INCLUDING DISCLAIMING ANY WARRANTY THAT THESE RECORDS REASONABLY CONFORM TO ANY USE NOT EXPLICITLY COMMICATED TO UCC411 BY YOU, THE END-USER), OR FITNESS FOR A PARTICULAR PURPOSE (NOR DOES UCC411 HAVE ANY REASON TO KNOW OR BELIEVE THAT YOU REQUIRE THESE RECORDS FOR ANY PARTICULAR PURPOSE NOT EXPLICITLY COMMUNICATED TO UCC411 BY YOU, THE END-USER).

Copyright © 2013-2015 · UCC411.com · All rights reserved.

Terms of Use · Privacy Policy · Sitemap

**411**

*UCC411.com is not affiliated with any government agency.*



Home    UCC Party Search    UCC Filing Search    Business Services    Contact Us

8+1 [8]    Tweet [3]    Like [35]

# 411

Introduction

## K & K TRANSPORTATIONS, LLC IN DETROIT MI - UCC Search

8+1 [8]    Tweet [3]    Like [35]

*Data Updated November 15, 2014*

There is 1 party that goes by the name of K & K Transportations, LLC. This party is associated with 1 UCC filing in Detroit MI.

Texas UCC Filings

| | | | |
|---|---|---|---|
| Company Name: | K & K Transportations, LLC | Address: | 18628 Mark Twain Detroit, MI 48235 |
| Entity Type: | Limited-Liability Company | Party Type: | Debtor |
| Filing Number: | 60017336511 | Filing Date: | |
| Filing Status: | Lapsed | Filing State: | Texas (TX) |

Previous Party    Next Party    Business Services

READ THIS DISCLAIMER: Without altering UCC411's rights and limitations to liability, as established in the Terms of Use, UNDER NO CIRCUMSTANCES WILL UCC411 BE RESPONSIBLE FOR ANY LOSS OR DAMAGE RESULTING FROM YOUR RELIANCE, OR THE RELIANCE OF THIRD PARTIES, UPON UCC RECORDS OR OTHER UCC INFORMATION ACCESSIBLE THROUGH THIS WEBSITE, INCLUDING FOR ANY PERSONAL OR COMMERCIAL PURPOSE. UCC411 NEITHER MAKES NOR IMPLIES ANY WARRANTIES OR REPRESENTATIONS CONCERNING THE RELIABILITY, COMPLETENESS, OR CURRENCY OF RECORD INFORMATION. WITHOUT LIMITATION, UCC411 DISCLAIMS ANY WARRANTY OF MERCHANTABILITY (INCLUDING DISCLAIMING ANY WARRANTY THAT THESE RECORDS REASONABLY CONFORM TO ANY USE NOT EXPLICITLY COMMICATED TO UCC411 BY YOU, THE END-USER), OR FITNESS FOR A PARTICULAR PURPOSE (NOR DOES UCC411 HAVE ANY REASON TO KNOW OR BELIEVE THAT YOU REQUIRE THESE RECORDS FOR ANY PARTICULAR PURPOSE NOT EXPLICITLY COMMUNICATED TO UCC411 BY YOU, THE END-USER).

Copyright © 2013-2015 · UCC411.com · All rights reserved.

Terms of Use · Privacy Policy · Sitemap

UCC411.com is not affiliated with any government agency.

411

Home    UCC Party Search    UCC Filing Search    Business Services    Contact Us



# 411

8+1  8    Tweet  3    Like  35

---

8+1  8    Tweet  3    Like  35

Introduction

## KKT REALTY II, LP , A TEXAS LIMITED PARTNERSHIP IN DALLAS TX - UCC Search

*Data Updated November 16, 2014*

There are 2 parties that go by the name of Kkt Realty Ii, Lp , A Texas Limited Partnership. These parties collectively are associated with 2 UCC filings in Dallas TX.

---

Texas UCC Filings

| | | |
|---|---|---|
| **Company Name:** Kkt Realty, Lp , A Texas Limited Partnership | **Address:** | 2200 Ross Ave, Ste 3700 Dallas. TX 75201 |
| **Entity Type:**  Limited Partnership | **Party Type:** Debtor | |
| **Filing Number:**  20005699516 | **Filing Date:** | |
| **Filing Status:**  Lapsed | **Filing State:** Texas (TX) | |

| | | |
|---|---|---|
| **Company Name:** Kkt Realty Ii, Lp (a Texas Limited Partnership) | **Address:** | 2200 Ross Avenue, Suite 3700 Dallas. TX 75201 |
| **Entity Type:**  General Business | **Party Type:** Debtor | |
| **Filing Number:**  20006446355 | **Filing Date:** | |
| **Filing Status:**  Lapsed | **Filing State:** Texas (TX) | |

---

Previous Party    Next Party    Business Services

READ THIS DISCLAIMER: Without altering UCC411's rights and limitations to liability, as established in the Terms of Use, UNDER NO CIRCUMSTANCES WILL UCC411 BE RESPONSIBLE FOR ANY LOSS OR DAMAGE RESULTING FROM YOUR RELIANCE, OR THE RELIANCE OF THIRD PARTIES, UPON UCC RECORDS OR OTHER UCC INFORMATION ACCESSIBLE THROUGH THIS WEBSITE, INCLUDING FOR ANY PERSONAL OR COMMERCIAL PURPOSE. UCC411 NEITHER MAKES NOR IMPLIES ANY WARRANTIES OR REPRESENTATIONS CONCERNING THE RELIABILITY, COMPLETENESS, OR CURRENCY OF RECORD INFORMATION. WITHOUT LIMITATION, UCC411 DISCLAIMS ANY WARRANTY OF MERCHANTABILITY (INCLUDING DISCLAIMING ANY WARRANTY THAT THESE RECORDS REASONABLY CONFORM TO ANY USE NOT EXPLICITLY COMMICATED TO UCC411 BY YOU. THE END-USER), OR FITNESS FOR A PARTICULAR PURPOSE (NOR DOES UCC411 HAVE ANY REASON TO KNOW OR BELIEVE THAT YOU REQUIRE THESE RECORDS FOR ANY PARTICULAR PURPOSE NOT EXPLICITLY COMMUNICATED TO UCC411 BY YOU, THE END-USER).

Copyright © 2013-2015 · UCC411.com · All rights reserved.

Terms of Use · Privacy Policy · Sitemap

*UCC411.com is not affiliated with any government agency.*

411



g+1  8    Tweet  3    Like  35

## 411

---

### Introduction

## KKT REALTY III, LP IN DALLAS TX - UCC Search

g+1  8    Tweet  3    Like  35

*Data Updated November 13, 2014*

There is 1 party that goes by the name of Kkt
Realty Iii, LP. This party is associated with 1
UCC filing in Dallas TX.

---

### Texas UCC Filings

| | | | |
|---|---|---|---|
| Company Name: | Kkt Realty Iii, LP | Address: | 3012 Hanover |
| | | | Dallas, TX 75225 |
| Entity Type: | Limited Partnership | Party Type: | Debtor |
| Filing Number: | 30012396377 | Filing Date: | |
| Filing Status: | Lapsed | Filing State: | Texas (TX) |

---

Previous Party    Next Party    Business Services

READ THIS DISCLAIMER: Without altering UCC411's rights and limitations to liability, as established in the Terms of Use, UNDER NO CIRCUMSTANCES WILL UCC411
BE RESPONSIBLE FOR ANY LOSS OR DAMAGE RESULTING FROM YOUR RELIANCE, OR THE RELIANCE OF THIRD PARTIES, UPON UCC RECORDS OR
OTHER UCC INFORMATION ACCESSIBLE THROUGH THIS WEBSITE, INCLUDING FOR ANY PERSONAL OR COMMERCIAL PURPOSE. UCC411 NEITHER
MAKES NOR IMPLIES ANY WARRANTIES OR REPRESENTATIONS CONCERNING THE RELIABILITY, COMPLETENESS, OR CURRENCY OF RECORD
INFORMATION. WITHOUT LIMITATION, UCC411 DISCLAIMS ANY WARRANTY OF MERCHANTABILITY (INCLUDING DISCLAIMING ANY WARRANTY THAT THESE
RECORDS REASONABLY CONFORM TO ANY USE NOT EXPLICITLY COMMICATED TO UCC411 BY YOU, THE END-USER), OR FITNESS FOR A PARTICULAR
PURPOSE (NOR DOES UCC411 HAVE ANY REASON TO KNOW OR BELIEVE THAT YOU REQUIRE THESE RECORDS FOR ANY PARTICULAR PURPOSE NOT
EXPLICITLY COMMUNICATED TO UCC411 BY YOU, THE END-USER).

Copyright © 2013-2015 · UCC411.com · All rights reserved.

Terms of Use  ·  Privacy Policy  ·  Sitemap

411

*UCC411.com is not affiliated with any government agency.*

$13.00          Non-Title          R+V

**Warranty Deed with Vendor's Lien**          1227136
12/14/00    2433351    $13.00
Deed

Date: January 3. 00

Grantor: **TRANSPORT FACTORING, INC, a Texas corporation**

Grantor's Mailing Address:

320072
46484

**TRANSPORT FACTORING, INC
1025 METKER
IRVING, TEXAS 75062
DALLAS County**

Grantee: **MICHAEL D. SHERIDAN**
Grantee's Mailing Address:

**MICHAEL D. SHERIDAN
1025 METKER
IRVING, TEXAS 75062
DALLAS County**

Consideration:

A note of even date executed by Grantee and payable to the order of TRANSPORT FACTORING, INC in the principal amount of EIGHTY-FOUR THOUSAND FIVE HUNDRED AND NO/100 DOLLARS ($84,500.00). The note is secured by a first and superior vendor's lien and superior title retained in this deed and by a first-lien deed of trust of even date from Grantee to NICHOLAS R. VEACH, trustee.

Property (including any improvements):

Lot 17, in Block B, of 1st Installment of Starlite No. 11 Addition, an addition to the City of Irving, Dallas County, Texas, according to the Map or Plat thereof recorded in Volume 70204, Page 1717, Plat Records, Dallas County, Texas.

Reservations from Conveyance:

WARRANTY DEED WITH VENDOR'S LIEN, PAGE 1

00242 00646

None

Exceptions to Conveyance and Warranty:

Liens described as part of the Consideration and any other liens described in this deed as being either assumed or subject to which title is taken; validly existing easements, rights-of-way, and prescriptive rights, whether of record or not; all presently recorded and validly existing instruments, other than conveyances of the surface fee estate, that affect the Property; and taxes for 2000, which Grantee assumes and agrees to pay, and subsequent assessments for that and prior years due to change in land usage, ownership, or both, the payment of which Grantee assumes.

Grantor, for the Consideration and subject to the Reservations from Conveyance and the Exceptions to Conveyance and Warranty, grants, sells, and conveys to Grantee the Property, together with all and singular the rights and appurtenances thereto in any way belonging, to have and to hold it to Grantee and Grantee's heirs, successors, and assigns forever. Grantor binds Grantor and Grantor's heirs and successors to warrant and forever defend all and singular the Property to Grantee and Grantee's heirs, successors, and assigns against every person whomsoever lawfully claiming or to claim the same or any part thereof, except as to the Reservations from Conveyance and the Exceptions to Conveyance and Warranty.

The vendor's lien against and superior title to the Property are retained until each note described is fully paid according to its terms, at which time this deed will become absolute.

When the context requires, singular nouns and pronouns include the plural.

TRANSPORT FACTORING, INC

BY: _William Sheridan_

WILLIAM SHERIDAN
President

WARRANTY DEED WITH VENDOR'S LIEN, PAGE 2

00242 00647

STATE OF TEXAS            )

COUNTY OF DALLAS          )

    This instrument was acknowledged before me on JANUARY 3.00
2000 by WILLIAM SHERIDAN, President of TRANSPORT FACTORING,
INC, a Texas corporation, on behalf of said corporation.

              Carmen Rodriguez
              Notary Public, State of Texas

AFTER RECORDING RETURN TO:

MICHAEL D. SHERIDAN
1025 METKER
IRVING, TEXAS 75062

WARRANTY DEED WITH VENDOR'S LIEN, PAGE 3

2002242 00649

FILED

2000 DEC 13 PM 2:51

[illegible] OCK
COUNTY CLERK
DALLAS COUNTY

Any provision herein which restricts the sale, rental, or use of the described real property because of color or race is invalid and unenforceable under federal law.
STATE OF TEXAS COUNTY OF DALLAS
I hereby certify this instrument was filed on the date and time stamped hereon by me and was duly recorded in the volume and page of the named records of Dallas County, Texas as stamped hereon by me.

DEC 14 2000

Earl Bullock
COUNTY CLERK, Dallas County, Texas

# UCC SEARCH - BILLY E ECKENROED IN ANNA, TX

Document

Data Updated November 10, 2014

The debtor parties are Billy E Eckenroed in Anna TX and Eckenroed Transport Co. in Anna TX. The secured party is Transport Factoring, Inc. in Irving TX.

This Texas UCC Filing #9700130062 was recorded on and has an expiration date of Document 06/24/2002.The filing status is listed as Lapsed and there is 1 event listed on this filing dated 06/23/1997.

| Filing Number: | 97001300 62 | Filing Status: | Lapse d | Expiration Date: | 06/24/20 02 | UCC Pages: | 1 Pag e |
|---|---|---|---|---|---|---|---|
| Filing State: | Texas (TX) | Filing Date: | | Cancel Date: | None | Total Pages: | 1 Pag e |

Document

Debtor Companies / People

| Name: | Billy E Eckenroed |
|---|---|
| Address: | Rt 2 Box 95 Oak-2 Anna, TX 75409 |
| Entity Type: | General Business |

Document

| Name: | Eckenroed Transport Co. |
|---|---|
| Address: | Rt 2 Box 95 Oak-2 Anna, TX 75409 |
| Entity Type: | Corporation |

Document

Secured Companies / People

| Name: | Transport Factoring, Inc. |
|---|---|
| Address: | P O Box 167648 Irving, TX 75016 |
| Entity Type: | Corporation |

Document

Name:    Transport Factoring, Inc.

Address:    P O Box 167648
Irving, TX 75016

Entity Type: Corporation

Filing Events

Action Name:  Master
Record
(the Initial
Filing
Document,
Ucc1)

Page
Count:

1 Page  Address: Not Available

Event Number: 1769568    Lapse Date: None

Event Date:    06/23/1997

Previous Filing    Next Filing    Business Services

READ THIS DISCLAIMER: Without altering UCC411's rights and limitations to liability, as established in the
BE RESPONSIBLE FOR ANY LOSS OR DAMAGE RESULTING FROM YOUR RELIANCE, OR THE RELIA
OTHER UCC INFORMATION ACCESSIBLE THROUGH THIS WEBSITE, INCLUDING FOR ANY PERSON
MAKES NOR IMPLIES ANY WARRANTIES OR REPRESENTATIONS CONCERNING THE RELIABILITY,
INFORMATION. WITHOUT LIMITATION, UCC411 DISCLAIMS ANY WARRANTY OF MERCHANTABILITY
RECORDS REASONABLY CONFORM TO ANY USE NOT EXPLICITLY COMMICATED TO UCC411 BY Y
PURPOSE (NOR DOES UCC411 HAVE ANY REASON TO KNOW OR BELIEVE THAT YOU REQUIRE TH
EXPLICITLY COMMUNICATED TO UCC411 BY YOU, THE END-USER).

2013-2014 · UCC411.com · All rights reserved.

: · Privacy Policy · Sitemap

ı is not affiliated with any government agency.

arty Search UCC Filing Search Business Services Contact Us

**411**



Document

Data Updated November 10, 2014

The debtor party is David L Garcia in Spring TX and the secured party is Sterling Bank in Houston TX.

Document

This Texas UCC Filing #9700130063 was recorded on and has an expiration date of 06/24/2002.The filing status is listed as Lapsed and there is 1 event listed on this filing dated 06/23/1997.

| Filing Number: | 97001300 63 | Filing Status: | Lapse d | Expiration Date: | 06/24/20 02 | UCC Pages: | 1 Pag e |
|---|---|---|---|---|---|---|---|
| Filing State: | Texas (TX) | Filing Date: | | Cancel Date: | None | Total Pages: | 1 Pag e |

Document

### Debtor Companies / People

Document

| Name: | David L Garcia |
|---|---|
| Address: | 24922 Barmby Spring, TX 77389 |
| Entity Type: | General Business |

### Secured Companies / People

Document

| Name: | Sterling Bank |
|---|---|
| Address: | Po Box 924009 Houston, TX 77292 |
| Entity Type: | General Business |

Document

### Filing Events

| Action Name: | Master Record (the Initial Filing Document, Ucc1) | Page Count: | 1 Page | Address: Not Available |
|---|---|---|---|---|

Document

Filing Events

Document

Action Name: Master Record (the Initial Filing Document, Ucc1)  Page Count:  1 Page  Address: Not Available

Document

Event Number: 1769570    Lapse Date: None

Event Date:    06/23/1997

Previous Filing    Next Filing    Business Services

READ THIS DISCLAIMER: Without altering UCC411's rights and limitations to liability, as established in the Document BE RESPONSIBLE FOR ANY LOSS OR DAMAGE RESULTING FROM YOUR RELIANCE, OR THE RELIA OTHER UCC INFORMATION ACCESSIBLE THROUGH THIS WEBSITE, INCLUDING FOR ANY PERSON MAKES NOR IMPLIES ANY WARRANTIES OR REPRESENTATIONS CONCERNING THE RELIABILITY, INFORMATION. WITHOUT LIMITATION, UCC411 DISCLAIMS ANY WARRANTY OF MERCHANTABILITY RECORDS REASONABLY CONFORM TO ANY USE NOT EXPLICITLY COMMICATED TO UCC411 BY Y PURPOSE (NOR DOES UCC411 HAVE ANY REASON TO KNOW OR BELIEVE THAT YOU REQUIRE TH EXPLICITLY COMMUNICATED TO UCC411 BY YOU, THE END-USER).

Document

2013-2014 · UCC411.com · All rights reserved.

: · **Privacy Policy** · **Sitemap**

Document

ι is not affiliated with any government agency.

arty Search UCC Filing Search Business Services Contact Us

**411**

Filing Information

Document

# UCC SEARCH - DAVID L GARCIA IN SPRING, TX

Document

Home    UCC Party Search    UCC Filing Search    Business Services    Contact Us

g+1 | 8 | Tweet | 3 | Like { 35

 **411**

g+1 | 8 | Tweet | 3 | Like { 35

## Introduction

### FARM CREDIT WEST, PCA IN BAKERSFIELD CA, DINUBA CA, PASO ROBLES CA, VENTURA CA - UCC Search

*Data Updated November 13, 2014*

> There are 4 parties that go by the name of Farm Credit, Pca. These parties collectively are associated with 5 UCC filings in Bakersfield CA, Dinuba CA, Paso Robles CA, and Ventura CA.

### Texas UCC Filings

| | | | |
|---|---|---|---|
| **Company Name:** Farm Credit West, Pca | | **Address:** | P O Box 6070<br>Ventura, CA 93006 |
| **Entity Type:** General Business | | **Party Type:** Secured | |
| **Filing Number:** 100000306868 | | **Filing Date:** | |
| **Filing Status:** Active | | **Filing State:** Texas (TX) | |

| | | | |
|---|---|---|---|
| **Company Name:** Farm Credit West, Pca | | **Address:** | 175 Cow Meadow Place<br>Paso Robles, CA 93446 |
| **Entity Type:** General Business | | **Party Type:** Secured | |
| **Filing Number:** 110025116421 | | **Filing Date:** | |
| **Filing Status:** Active | | **Filing State:** Texas (TX) | |

| | | | |
|---|---|---|---|
| **Company Name:** Farm Credit West, Pca | | **Address:** | P O Box 904<br>Dinuba, CA 93618 |
| **Entity Type:** General Business | | **Party Type:** Secured | |
| **Filing Number:** 50008122674 | | **Filing Date:** | |
| **Filing Status:** Lapsed | | **Filing State:** Texas (TX) | |

| | | | |
|---|---|---|---|
| **Company Name:** Farm Credit West, Pca | | **Address:** | P O Box 6070<br>Ventura, CA 93006 |
| **Entity Type:** General Business | | **Party Type:** Secured | |
| **Filing Number:** 60024427530 | | **Filing Date:** | |
| **Filing Status:** Active | | **Filing State:** Texas (TX) | |

| | | | |
|---|---|---|---|
| **Company Name:** Farm Credit West, Pca | | **Address:** | 19628 Industry Parkway Dr<br>Bakersfield, CA 93308 |
| **Entity Type:** General Business | | **Party Type:** Secured | |
| **Filing Number:** 60039558804 | | **Filing Date:** | |
| **Filing Status:** Active | | **Filing State:** Texas (TX) | |

Previous Party    Next Party    Business Services

READ THIS DISCLAIMER: Without altering UCC411's rights and limitations to liability, as established in the Terms of Use, UNDER NO CIRCUMSTANCES WILL UCC411 BE RESPONSIBLE FOR ANY LOSS OR DAMAGE RESULTING FROM YOUR RELIANCE, OR THE RELIANCE OF THIRD PARTIES, UPON UCC RECORDS OR OTHER UCC INFORMATION ACCESSIBLE THROUGH THIS WEBSITE, INCLUDING FOR ANY PERSONAL OR COMMERCIAL PURPOSE. UCC411 NEITHER MAKES NOR IMPLIES ANY WARRANTIES OR REPRESENTATIONS CONCERNING THE RELIABILITY, COMPLETENESS, OR CURRENCY OF RECORD INFORMATION. WITHOUT LIMITATION, UCC411 DISCLAIMS ANY WARRANTY OF MERCHANTABILITY (INCLUDING DISCLAIMING ANY WARRANTY THAT THESE RECORDS REASONABLY CONFORM TO ANY USE NOT EXPLICITLY COMMICATED TO UCC411 BY YOU, THE END-USER), OR FITNESS FOR A PARTICULAR PURPOSE (NOR DOES UCC411 HAVE ANY REASON TO KNOW OR BELIEVE THAT YOU REQUIRE THESE RECORDS FOR ANY PARTICULAR PURPOSE NOT EXPLICITLY COMMUNICATED TO UCC411 BY YOU, THE END-USER).

Copyright © 2013-2015 · UCC411.com · All rights reserved.

Terms of Use · Privacy Policy · Sitemap

 411

UCC411.com is not affiliated with any government agency.

| | |
|---|---|
| **Filing Status:** Active | **Filing Date:** |
| **Entity Type:** General Business | **Filing Number:** 130010102997 |
| **Filing State:** Texas (TX) | **Address:** 1095 Limestone County Road 124 Mount Calm, TX 76673 |

Document

| | |
|---|---|
| **Name:** Kenneth R Stewart | |
| **Filing Status:** Lapsed | **Filing Date:** |
| **Entity Type:** General Business | **Filing Number:** 50023982130 |
| **Filing State:** Texas (TX) | **Address:** 450 West Moore Street Granbury, TX 76048 |

Document

| | |
|---|---|
| **Name:** Kenneth R Stewart | |
| **Filing Status:** Lapsed | **Filing Date:** |
| **Entity Type:** General Business | **Filing Number:** 60013409740 |
| **Filing State:** Texas (TX) | **Address:** 251 Fm 182 Clifton, TX 76634 |

Document

| | |
|---|---|
| **Name:** Kenneth R Stewart | |
| **Filing Status:** Lapsed | **Filing Date:** |
| **Entity Type:** General Business | **Filing Number:** 9800257927 |
| **Filing State:** Texas (TX) | **Address:** Box 97 Columbus, TX 78934 |

Document

PreviousNextBusiness Services

READ THIS DISCLAIMER: Without altering UCC411's rights and limitations to liability, as established in the
BE RESPONSIBLE FOR ANY LOSS OR DAMAGE RESULTING FROM YOUR RELIANCE, OR THE RELIA
OTHER UCC INFORMATION ACCESSIBLE THROUGH THIS WEBSITE, INCLUDING FOR ANY PERSON
MAKES NOR IMPLIES ANY WARRANTIES OR REPRESENTATIONS CONCERNING THE RELIABILITY,
INFORMATION. WITHOUT LIMITATION, UCC411 DISCLAIMS ANY WARRANTY OF MERCHANTABILITY
RECORDS REASONABLY CONFORM TO ANY USE NOT EXPLICITLY COMMICATED TO UCC411 BY Y
PURPOSE (NOR DOES UCC411 HAVE ANY REASON TO KNOW OR BELIEVE THAT YOU REQUIRE TH
EXPLICITLY COMMUNICATED TO UCC411 BY YOU, THE END-USER).

Document

2013-2014 · UCC411.com · All rights reserved.

e · Privacy Policy · Sitemap

n is not affiliated with any government agency.

Document

Document

Entity Type: Corporation

Filing Events

Document

| Action Name: | Master Record (the Initial Filing Document, Ucc1) | Page Count: | 1 Page | Address: Not Available |

Document

Event Number: 1769569    Lapse Date: None

Event Date:    06/23/1997

Previous Filing    Next Filing    Business Services

Document

READ THIS DISCLAIMER: Without altering UCC411's rights and limitations to liability, as established in the
BE RESPONSIBLE FOR ANY LOSS OR DAMAGE RESULTING FROM YOUR RELIANCE, OR THE RELIA
OTHER UCC INFORMATION ACCESSIBLE THROUGH THIS WEBSITE, INCLUDING FOR ANY PERSON
MAKES NOR IMPLIES ANY WARRANTIES OR REPRESENTATIONS CONCERNING THE RELIABILITY,
INFORMATION. WITHOUT LIMITATION, UCC411 DISCLAIMS ANY WARRANTY OF MERCHANTABILITY
RECORDS REASONABLY CONFORM TO ANY USE NOT EXPLICITLY COMMICATED TO UCC411 BY Y
PURPOSE (NOR DOES UCC411 HAVE ANY REASON TO KNOW OR BELIEVE THAT YOU REQUIRE TH
EXPLICITLY COMMUNICATED TO UCC411 BY YOU, THE END-USER).

Document

2013-2014 · UCC411.com · All rights reserved.

e · Privacy Policy · Sitemap

Document

n is not affiliated with any government agency.

arty SearchUCC Filing SearchBusiness ServicesContact Us

**411**

Document

Filing Information

Filing Events

| Action Name: | Master Record (the Initial Filing Document, Ucc1) | Page Count: | 1 Page | Address: Not Available |
|---|---|---|---|---|

Event Number: 1769570    Lapse Date: None

Event Date:    06/23/1997

Previous Filing    Next Filing    Business Services

READ THIS DISCLAIMER: Without altering UCC411's rights and limitations to liability, as established in the
BE RESPONSIBLE FOR ANY LOSS OR DAMAGE RESULTING FROM YOUR RELIANCE, OR THE RELIA
OTHER UCC INFORMATION ACCESSIBLE THROUGH THIS WEBSITE, INCLUDING FOR ANY PERSON
MAKES NOR IMPLIES ANY WARRANTIES OR REPRESENTATIONS CONCERNING THE RELIABILITY,
INFORMATION. WITHOUT LIMITATION, UCC411 DISCLAIMS ANY WARRANTY OF MERCHANTABILITY
RECORDS REASONABLY CONFORM TO ANY USE NOT EXPLICITLY COMMICATED TO UCC411 BY Y
PURPOSE (NOR DOES UCC411 HAVE ANY REASON TO KNOW OR BELIEVE THAT YOU REQUIRE TH
EXPLICITLY COMMUNICATED TO UCC411 BY YOU, THE END-USER).

2013-2014 · UCC411.com · All rights reserved.

e · Privacy Policy · Sitemap

n is not affiliated with any government agency.

Party SearchUCC Filing SearchBusiness ServicesContact Us

**411**

Filing Information

# UCC SEARCH - DAVID L GARCIA IN SPRING, TX

Party Search UCC Filing Search Business Services Contact Us

**411**

## Kenneth R Stewart

Date Updated November 19, 2014

This is a list of the entities related to Kenneth R Stewart by name,
Clicking Name, Extended Name, Secondary Name, Prior Name, Trade Name, Assumed Name, or Trade Address...

| Name: | Kenneth R Stewart | | |
|---|---|---|---|
| | | Filing Date: | 02/02/2005 |

Entity Type:    General Partnership       Filing
Number:    305006027

Filing State:   Tennessee (TN)          Address:   8612 Old Memphis Road
                                                     Atoka, TN 38004

Name:    Kenneth R Stewart
Filing Status:

                                        Filing
                                        Number:    309020672

                                        Address:   8612 Old Memphis Rd
                                                     Atoka, TN 38004

Name:    Kenneth R Stewart

                                        Filing Date:   01/17/2014

Entity Type:    General                 Filing
                                        Number:    421296345

Filing State:   Tennessee (TN)          Address:   8612 Old Memphis Road
                                                     Atoka, TN 38004

Name:    Kenneth R Stewart
Filing Status:

                                        Filing
                                        Number:    120004599676

                                        Status:

Name:    Kenneth R Stewart

# UCC SEARCH - BILLY E ECKENROED IN ANNA, TX

Document

Data Updated November 10, 2014

The debtor parties are Billy E Eckenroed in Anna TX and Eckenroed Transport Co. in Anna TX. The secured party is Transport Factoring, Inc. in Irving TX.

Document

This Texas UCC Filing #9700130062 was recorded on and has an expiration date of 06/24/2002.The filing status is listed as Lapsed and there is 1 event listed on this filing dated 06/23/1997.

| Filing Number: | 9700130062 | Filing Status: | Lapsed | Expiration Date: | 06/24/2002 | UCC Pages: | 1 Page |
| Filing State: | Texas (TX) | Filing Date: | | Cancel Date: | None | Total Pages: | 1 Page |

Document

Debtor Companies / People

Document

| Name: | Billy E Eckenroed |
| Address: | Rt 2 Box 95 Oak-2 Anna, TX 75409 |
| Entity Type: | General Business |

Document

| Name: | Eckenroed Transport Co. |
| Address: | Rt 2 Box 95 Oak-2 Anna, TX 75409 |
| Entity Type: | Corporation |

Secured Companies / People

Document

| Name: | Transport Factoring, Inc. |
| Address: | P O Box 167648 Irving, TX 75016 |
| Entity Type: | Corporation |

Document

Data Updated November 10, 2014

The debtor party is David L Garcia in Spring TX and the secured party is Sterling Bank in Houston TX.

This Texas UCC Filing #9700130063 was recorded on and has an expiration date of 06/24/2002.The filing status is listed as Lapsed and there is 1 event listed on this filing dated 06/23/1997.

| Filing Number: | 97001300 63 | Filing Status: | Lapsed | Expiration Date: | 06/24/20 02 | UCC Pages: | 1 Page |
| Filing State: | Texas (TX) | Filing Date: | | Cancel Date: | None | Total Pages: | 1 Page |

Debtor Companies / People

| Name: | David L Garcia |
| Address: | 24922 Barmby Spring, TX 77389 |
| Entity Type: | General Business |

Secured Companies / People

| Name: | Sterling Bank |
| Address: | Po Box 924009 Houston, TX 77292 |
| Entity Type: | General Business |

Filing Events

| Action Name: | Master Record (the Initial Filing Document, Ucc1) | Page Count: | 1 Page | Address: Not Available |

Document

Document

Document

Document

Document

Document

Event Number: 1769571    Lapse Date: None

Event Date:    06/23/1997

Previous Filing   Next Filing   Business Services

READ THIS DISCLAIMER: Without altering UCC411's rights and limitations to liability, as established in the
BE RESPONSIBLE FOR ANY LOSS OR DAMAGE RESULTING FROM YOUR RELIANCE, OR THE REQU
OTHER UCC INFORMATION ACCESSIBLE THROUGH THIS WEBSITE, INCLUDING FOR ANY PERSON
MAKES NOR IMPLIES ANY WARRANTIES OR REPRESENTATIONS CONCERNING THE RELIABILITY,
INFORMATION. WITHOUT LIMITATION, UCC411 DISCLAIMS ANY WARRANTY OF MERCHANTABILITY
RECORDS REASONABLY CONFORM TO ANY USE NOT EXPLICITLY COMMICATED TO UCC411 BY Y
PURPOSE (NOR DOES UCC411 HAVE ANY REASON TO KNOW OR BELIEVE THAT YOU REQUIRE TH
EXPLICITLY COMMUNICATED TO UCC411 BY YOU, THE END-USER).

2013-2014 · UCC411.com · All rights reserved.

e  ·  Privacy Policy  ·  Sitemap

n is not affiliated with any government agency.

**411**

# Kenneth Stewart

*Data Updated November 10, 2014*

There are 7 parties that go by the name of Kenneth Stewart in Fort Worth Texas, Irving Texas, Midlothian Texas, Nixon Texas, Queen City Texas, Stanton Texas, and Texarkana Texas.

| | | | |
|---|---|---|---|
| Name: | Kenneth Stewart | | |
| Filing Status: | Lapsed | Filing Date: | |
| Entity Type: | General Business | Filing Number: | 100024996 |
| Filing State: | Texas (TX) | Address: | 4462 Cardiff Fort Worth, TX 76133 |

| | | | |
|---|---|---|---|
| Name: | Kenneth Stewart | | |
| Filing Status: | Lapsed | Filing Date: | |
| Entity Type: | General Business | Filing Number: | 40084147826 |
| Filing State: | Texas (TX) | Address: | Po Box 6125 Texarkana, TX 75505 |

| | | | |
|---|---|---|---|
| Name: | Kenneth Stewart | | |
| Filing Status: | Lapsed | Filing Date: | |
| Entity Type: | General Business | Filing Number: | 40088187248 |
| Filing State: | Texas (TX) | Address: | 502 E Avenue F Midlothian, TX 76065 |

| | | | |
|---|---|---|---|
| Name: | Kenneth Stewart | | |
| Filing Status: | Lapsed | Filing Date: | |
| Entity Type: | General Business | Filing Number: | 50030363212 |
| Filing State: | Texas (TX) | Address: | 808 Hickory St Queen City, TX 75572 |

arty Search UCC Filing Search Business Services Contact Us

# 411

Filing Information

Document

# UCC SEARCH - KENNETH STEWART IN IRVING, TX

Data Updated November 10, 2014

Document

The debtor parties are Kenneth Stewart in Irving TX and K & K Transportation in Grand Prairie TX. The secured party is Transport Factoring, Inc. in Irving TX.

This Texas UCC Filing #9700130058 was recorded on and has an expiration date of 06/24/2002.The filing status is listed as Lapsed and there is 1 event listed on this filing dated 06/23/1997.

Document

| Filing Number: | 97001300 58 | Filing Status: | Lapsed | Expiration Date: | 06/24/20 02 | UCC Pages: | 1 Page |
| Filing State: | Texas (TX) | Filing Date: | | Cancel Date: | None | Total Pages: | 1 Page |

Document

Debtor Companies / People

| Name: | Kenneth Stewart |
| Address: | 2028 Sandy Ln Irving, TX 75060 |
| Entity Type: | General Business |

Document

| Name: | K & K Transportation |
| Address: | 901 E Hunter Ferrell Grand Prairie, TX 75050 |
| Entity Type: | General Business |

Secured Companies / People

Document

Name:    Transport Factoring, Inc.

Address:    P O Box 167648
            Irving, TX 75016

Entity Type: Corporation

Filing Events

| Action Name: | Master Record (the Initial Filing Document, Ucc1) | Page Count: | 1 Page | Address: Not Available |

| Event Number: 1769567 | Lapse Date: None |
| Event Date: | 06/23/1997 |

Previous Filing    Next Filing    Business Services

READ THIS DISCLAIMER: Without altering UCC411's rights and limitations to liability, as established in the
BE RESPONSIBLE FOR ANY LOSS OR DAMAGE RESULTING FROM YOUR RELIANCE, OR THE RELIANCE
OTHER UCC INFORMATION ACCESSIBLE THROUGH THIS WEBSITE, INCLUDING FOR ANY PERSON
MAKES NOR IMPLIES ANY WARRANTIES OR REPRESENTATIONS CONCERNING THE RELIABILITY,
INFORMATION. WITHOUT LIMITATION, UCC411 DISCLAIMS ANY WARRANTY OF MERCHANTABILITY
RECORDS REASONABLY CONFORM TO ANY USE NOT EXPLICITLY COMMICATED TO UCC411 BY Y
PURPOSE (NOR DOES UCC411 HAVE ANY REASON TO KNOW OR BELIEVE THAT YOU REQUIRE TH
EXPLICITLY COMMUNICATED TO UCC411 BY YOU, THE END-USER).

2013-2014 · UCC411.com · All rights reserved.

· Privacy Policy · Sitemap

ι is not affiliated with any government agency.

Filing Information

# UCC SEARCH - KENNETH R PACE IN LANCASTER, TX

Data Updated November 10, 2014

The debtor parties are Kenneth R Pace in Lancaster TX and K & D Transportation in Lancaster TX. The secured party is Transport Factoring, Inc. in Irving TX.

This Texas UCC Filing #9700130061 was recorded on and has an expiration date of 06/24/2002. The filing status is listed as Lapsed and there is 1 event listed on this filing dated 06/23/1997.

| Filing Number: | 9700130061 | Filing Status: | Lapsed | Expiration Date: | 06/24/2002 | UCC Pages: | 1 Page |
|---|---|---|---|---|---|---|---|
| Filing State: | Texas (TX) | Filing Date: | | Cancel Date: | None | Total Pages: | 1 Page |

Debtor Companies / People

| Name: | Kenneth R Pace |
|---|---|
| Address: | 2138 Cedardale Lancaster, TX 75134 |
| Entity Type: | General Business |

| Name: | K & D Transportation |
|---|---|
| Address: | 2138 Cedardale Lancaster, TX 75134 |
| Entity Type: | General Business |

Secured Companies / People

| Name: | Transport Factoring, Inc. |
|---|---|
| Address: | P O Box 167648 Irving, TX 75016 |

Event Number: 1769571    Lapse Date: None

Event Date:    06/23/1997

Document

Previous Filing    Next Filing    Business Services

READ THIS DISCLAIMER: Without altering UCC411's rights and limitations to liability, as established in the
BE RESPONSIBLE FOR ANY LOSS OR DAMAGE RESULTING FROM YOUR RELIANCE, OR THE RELIA
OTHER UCC INFORMATION ACCESSIBLE THROUGH THIS WEBSITE, INCLUDING FOR ANY PERSON
MAKES NOR IMPLIES ANY WARRANTIES OR REPRESENTATIONS CONCERNING THE RELIABILITY,
INFORMATION. WITHOUT LIMITATION, UCC411 DISCLAIMS ANY WARRANTY OF MERCHANTABILITY
RECORDS REASONABLY CONFORM TO ANY USE NOT EXPLICITLY COMMICATED TO UCC411 BY Y
PURPOSE (NOR DOES UCC411 HAVE ANY REASON TO KNOW OR BELIEVE THAT YOU REQUIRE TH
EXPLICITLY COMMUNICATED TO UCC411 BY YOU, THE END-USER).

Document

2013-2014 · UCC411.com · All rights reserved.

· Privacy Policy · Sitemap

ɪ is not affiliated with any government agency.

Document

Document

Document

SUBSCRIBE  |  NEWSLETTERS  |  ADVERTISE  |  CONTACT US

f 𝕏 in 8⁺ 🔊



# PRODUCTION.

drillinginfo

**HOME    NEWS    MAGAZINE**

Search

| OIL MARKETS | ENERGY PLAYERS | BUSINESS SOLUTIONS | UPSTREAM | UNCONVENTIONAL OIL & GAS | MIDSTREAM | CAPITAL | ANALYSIS | M&A | MORE |

| Exxon Mobil | | CHEVRON | | CONOCOPHILLIPS | | OCCIDENTAL | | APACHE | | ANADARKO | | CHESAPE. |
|---|---|---|---|---|---|---|---|---|---|---|
| 93.76 | | 113.47 | | 70.13 | | 82.24 | | 64.05 | | 83.08 | |
| -0.81 | -0.86% | -0.48 | -0.42% | -0.92 | -1.29% | -0.66 | -0.80% | -1.38 | -2.11% | -1.16 | -1.38% | |

HOME    OIL GAS COMPANIES    AURORA OIL & GAS FILES VOLUNTARY BANKRUPTCY

Previous Article |US investor convicted in scheme targeting Azerbaijan state oil firm

Next Article | Gastar completes Australian assets sale, plans debt retirement

**TOPIC INDEX**

View Oil & Gas Financial Journal articles by topic, A-Z

🖨 Print Article

# AURORA OIL & GAS FILES VOLUNTARY BANKRUPTCY

July 15, 2009

Aurora Oil & Gas Corp. and its subsidiary, Hudson Pipeline & Processing Co. LLC, filed voluntary petitions for relief under Chapter 11 of the US Bankruptcy Code in the US Bankruptcy Court for the Western District of Michigan.

The companies have worked to facilitate a global restructuring transaction, including entering into several amendments and forbearance agreements with BNP Paribas and the lenders under the Senior Secured Credit Facility and D.E. Shaw Laminar Portfolios LLC and the lenders under the Second Lien Term Loan. The Companies have not yet been able to obtain agreement on the terms of such a restructuring and intend to utilize the bankruptcy process to attempt to achieve a consensual restructuring or some other appropriate alternative.

Huron Consulting Group LLC continues to advise Aurora on its restructuring efforts.

Previous Article |US investor convicted in scheme targeting Azerbaijan state oil firm

Next Article | Gastar completes Australian assets sale, plans debt retirement



PRODUCTION.

drillinginfo

Oil & Gas Financial Journal Digital Magazine    Look Inside >



Current Issue

**OIL & GAS JOBS**

## RELATED ARTICLES

### Dejour closes $1.5 million equity offering

08/18/2014

Dejour Energy Inc. has closed the equity financing offering previously announced on Aug. 11, receiving net proceeds of $1.5 million from three institutional investors to support the company's 2014 ...

### Gastar Exploration sees base increase to $145M

f 𝕏 in g+ ℕ

SUBSCRIBE | NEWSLETTERS | ADVERTISE | CONTACT US



PRODUCTION.                    drillinginfo

FINANCIAL JOURNAL.          **HOME      NEWS      MAGAZINE**

Search

| OIL MARKETS | ENERGY PLAYERS | BUSINESS SOLUTIONS | UPSTREAM | UNCONVENTIONAL OIL & GAS | MIDSTREAM | CAPITAL | ANALYSIS | M&A | MORE |

| Exxon Mobil | CHEVRON | CONOCOPHILLIPS | OCCIDENTAL | APACHE | ANADARKO | CHESAPE. |
|---|---|---|---|---|---|---|
| 93.78 | 113.47 | 70.13 | 82.24 | 64.05 | 83.08 | |
| -0.81 -0.86% | -0.48 -0.42% | -0.92 -1.29% | -0.66 -0.80% | -1.38 -2.11% | -1.16 -1.38% | |

HOME    OIL GAS COMPANIES    AURORA OIL & GAS FILES VOLUNTARY BANKRUPTCY

Previous Article | US investor convicted in scheme targeting Azerbaijan state oil firm

Next Article | Gastar completes Australian assets sale, plans debt retirement

TOPIC INDEX

View Oil & Gas Financial Journal articles by topic, A-Z

🖨 Print Article

# AURORA OIL & GAS FILES VOLUNTARY BANKRUPTCY

July 15, 2009

Aurora Oil & Gas Corp. and its subsidiary, Hudson Pipeline & Processing Co. LLC, filed voluntary petitions for relief under Chapter 11 of the US Bankruptcy Code in the US Bankruptcy Court for the Western District of Michigan.

The companies have worked to facilitate a global restructuring transaction, including entering into several amendments and forbearance agreements with BNP Paribas and the lenders under the Senior Secured Credit Facility and D.E. Shaw Laminar Portfolios LLC and the lenders under the Second Lien Term Loan. The Companies have not yet been able to obtain agreement on the terms of such a restructuring and intend to utilize the bankruptcy process to attempt to achieve a consensual restructuring or some other appropriate alternative.

Huron Consulting Group LLC continues to advise Aurora on its restructuring efforts.

Previous Article | US investor convicted in scheme targeting Azerbaijan state oil firm

Next Article | Gastar completes Australian assets sale, plans debt retirement

PRODUCTION.



drillinginfo

Oil & Gas Financial Journal Digital Magazine          Look Inside >

Current Issue

OIL & GAS JOBS

**RELATED ARTICLES**

## Dejour closes $1.5 million equity offering

08/18/2014

Dejour Energy Inc. has closed the equity financing offering previously announced on Aug. 11, receiving net proceeds of $1.5 million from three institutional investors to support the company's 2014 ...

## Gastar Exploration sees base increase to $145M

08/14/2014

Gastar Exploration Inc. reported that the borrowing base under its revolving credit facility has been increased to $145 million.

## RSP Permian closes public offering

08/14/2014

RSP Permian Inc. has completed an underwritten public offering by the company and certain of its stockholders of 11,500,000 shares of its common stock at a price to the public of $25.65 per share.&...

## CONSOL closes $250 million of senior notes

08/14/2014

CONSOL Energy Inc. has closed an additional $250 million of its 5.875% senior notes due 2022. CONSOL initially offered and sold $1.6 billion aggregate principal amount of notes of the same series o...

## Dejour secures $1.5 million for Woodrush development

08/12/2014

Dejour Energy Inc. has entered into subscription agreements for an equity financing that will result in gross proceeds of US$1.5 million with three institutional investors to support the company's ...

**Corporate Strategic Research: Optimization Modeling**
exxon mobil
**Country:** United States
(specifically for differential equations) is highly desirable. Knowledge of optimization models in the oil and industry is a plus. The candidate is expected to have strong communication skills with an ability to interact with a variety of researchers and business partners in different disciplines....

**Asphalt Rail\Barge Scheduler**
BP
**Country:** United States
Job title Asphalt Rail/Barge SchedulerReq ID

Search More Job Listings >>



CLICK HERE
to Subscribe

---

## MORE OIL & GAS FINANCIAL ARTICLES

**Dejour closes $1.5 million equity offering**

Mon, Aug 18, 2014

Dejour Energy Inc. has closed the equity financing offering previously announced on Aug. 11, receiving net proceeds of $1.5 million from three institutional investors to support the company's 2014 Woodrush development plan.

**Gastar Exploration sees base increase to $145M**

Thu, Aug 14, 2014

Gastar Exploration Inc. reported that the borrowing base under its revolving credit facility has been increased to $145 million.

**RSP Permian closes public offering**

Thu, Aug 14, 2014

RSP Permian Inc. has completed an underwritten public offering by the company and certain of its stockholders of 11,500,000 shares of its common stock at a price to the public of $25.65 per share.

**CONSOL closes $250 million of senior notes**

Thu, Aug 14, 2014

CONSOL Energy Inc. has closed an additional $250 million of its 5.875% senior notes due 2022. CONSOL initially offered and sold $1.6 billion aggregate principal amount of notes of the same series on April 16.

## MOST POPULAR

Reserve based finance

Fiscal break-even oil prices for major OPEC members

C&J Energy updates on merger with Nabors

Drones in oil and gas

GE signs $1B service agreement for Sabine Pass LNG export terminal

Wood Mackenzie: Global trends to look for in 2015

Top US-based Oilfield Service & Supply Companies

Wrapping Up: Developments at DOE affecting LNG exports in 2014

Enterprise begins open season for proposed pipeline expansion

Energy Players

**Dejour secures $1.6 million for Woodrush development**

Tue, Aug 12, 2014

Dejour Energy Inc. has entered into subscription agreements for an equity financing that will result in gross proceeds of US$1.5 million with three institutional investors to support the company's third-quarter 2014 Woodrush development plan.

**MORE >>**

*Oil & Gas Financial Journal* Categories:

| | |
|---|---|
| Oil Markets | Analysis |
| Energy Players | Mergers & Acquisitions |
| Business Solutions | Subscribe |
| Midstream | Oil & Gas Financial Journal Current Issue |
| Unconventional Oil & Gas | Archives |
| Capital | Oil & Gas Events |

f  ✆  in  8+  🔊    SUBSCRIBE | NEWSLETTERS | ADVERTISE | CONTACT US



**OIL&GAS JOURNAL**

**GENERAL**
Home
About Us
Contact Us
Advertise
Subscribe
Manage Subscription
Newsletters
RSS
Events
Site Map
Webmaster

**SECTIONS**
News
Magazine
White Papers
OTC

**TOPIC CENTERS**
Oil Markets
Energy Players
Business Solutions
Upstream
Unconventional Resources
Midstream
Capital
Analysis
Mergers & Acquisitions

**PENNWELL**
PennWell
PennWell Websites
PennWell Events

**OIL & GAS PUBLICATIONS**
Oil & Gas Journal
Offshore Magazine
Oil & Gas Petrochem Equipment
Unconventional Oil & Gas Report

Copyright © 2007-2014 Pennwell Corporation, Tulsa, OK. All Rights Reserved.  Privacy Policy | Terms & Conditions

Print Review IRS Form SS-4 EIN                    Page 1 of 2

*Mark*

| Form **SS-4** | **Application for Employer Identification Number** | EIN |
|---|---|---|
| (Rev. December 2001) Department of the Treasury Internal Revenue Service | (For use by employers, corporations, partnerships, trusts, estates, churches, government agencies, Indian tribal entities, certain individuals, and others.) ► See separate instructions for each line. ► Keep a copy for your records. | 20-3117810 OMB No. 1545-0003 |

**1** Legal name of entity (or individual) for whom the EIN is being requested
    J&C Manufacturing Inc

| **2** Trade name of business (if different from name on line 1) | **3** Executor, trustee, "care of" name   Kenneth Stewart |
|---|---|
| **4a** Mailing address (room, apt., suite no. and street, or P.O. box)   2302 Rock Island | **5a** Street address (if different) (Do not enter a P.O. box) |
| **4b** City, state, and ZIP code   Denton TX 75060 - | **5b** City, state, and ZIP code |

**6** County and state where principal business is located
    County   Dallas   State   TX

| **7a** Name of principal officer, general partner, grantor, owner, or trustor   Kenneth Stewart | **7b** SSN, ITIN, EIN |
|---|---|

**8a** Type of entity (check only one box)
- ☐ Sole Proprietor (SSN)
- ☐ Partnership
- ☑ Corporation (enter form number to be filed) ► 800515352
- ☐ Personal Service
- ☐ Church or church-controlled organization
- ☐ Other nonprofit organization (specify) ►
- ☐ Other (specify) ►
- ☐ Estate (SSN of decedent)
- ☐ National Guard
- ☐ Farmers' cooperative
- ☐ REMIC
- Group Exemption No. (GEN) ►
- ☐ State/local government
- ☐ Federal government
- ☐ Indian tribal government

| **8b** If a corporation, name the state or foreign country (if applicable) where incorporated | State   WY | Foreign country |
|---|---|---|

**9** Reason for applying (check only one box)
- ☐ Started new business
- ☐ Hired employees (Check the box and see line 13)
- ☐ Compliance with IRS withholding regulations
- ☐ Other (specify) ►
- ☐ Banking purpose (specify purpose) ►

**11** Date business started or acquired (month, day, year)
    JUN 29 2005

**12** Closing month of accounting year

**13** Highest number of employees expected in the next twelve months (enter -0- if none). If no employees expected, skip line 14.

|   | Agriculture | Household | Other |
|---|---|---|---|

**14** Check box that best describes the principal activity of your business
- ☐ Construction
- ☐ Real estate
- ☐ Other

**16a** 

**16b** If you checked "Yes" on line 16a
    Legal name ►   stewart associates
    Trade name ►

**16c** Approximate date when, and city and state where, the application was filed. Enter previous EIN if known.
    Approximate date when filed (month, day, year)   where filed
    SEP 26 1998

| Third Party Designee | Designee's name |
|---|---|
| | Address and phone |

Under penalties of perjury, I declare that I have examined this application, and to the best of my knowledge and belief, it is true, correct, and complete.
Name and title (type or print)

YF  13  200812  670  25
201133  023866  060    IRS USE ONLY

75154-205-00240-1    A0085794    215
203115727    SB    E

Department of the Treasury
**Internal Revenue Service**
Ogden UT  84201-0039

For assistance, call:
1-800-829-0115

**Notice Number:** CP215
**Date:** August 29, 2011

047666.107476.0196.005 1 AT 0.365 702

**Taxpayer Identification Number:**
20-3115727
**Tax Form:** CVL PEN
**Tax Period:** December 31, 2008

**JSC MANUFACTURING INC**
**2302 ROCK ISLAND RD**
**IRVING    TX    75060-2409025**

047666

Notice of Penalty Charge                    549

You have been charged a penalty under Section 6721 of the Internal Revenue Code for the following reason:



Failure to File Forms W-2

Tax Statement

| | |
|---|---|
| Prior Balance | $.00 |
| Penalty Assessment | $395.25 |
| Interest Charged | $.00 |
| Other Charges | $.00 |
| **Total Amount You Owe** | **$395.25** |

A penalty has been charged for each Form W-2 that was not filed as required by section 6051 of the Internal Revenue Code. Our records indicate that both the Social Security Administration and the Internal Revenue Service have been in contact with you to attempt to secure these Forms W-2.

The penalty for intentional disregard of the filing requirements is the greater of $100 per required return or 10 percent of the aggregate amount of items required to be reported. If you have not filed Forms W-2 for the period requested, please submit them to IRS (not the Social Security Administration) at the address shown above within 10 days of the date of this notice. The applicable portion of the penalty will be abated for Forms W-2 that you submit.

If you believe you have reasonable cause why we shouldn't charge these penalties, you may send us an explanation and ask us to remove or reduce any of the penalties we have charged. Send us a specific explanation for each penalty you wish us to remove or reduce by **September 19, 2011.** Please include any documents that will support your position. If you agree with the penalty, please send the amount due now. We have enclosed an envelope for your convenience.

For tax forms, instructions and information visit **www.irs.gov**. (Access to this site will not provide you with your specific taxpayer account information.)

## BROWN, DEAN, WISEMAN, LISER, PROCTOR & HART, L.L.P.

### Attorneys at Law

BEALE DEAN
JAMES T. BLANTON
GRANT LISER
RICHARD W. WISEMAN
JOHN W. PROCTOR
**JOHN C. HART
LARRY W. WILSHIRE
SANDRA LISER

OF COUNSEL
CATHERINE JANE ALDER, P.C

* Also licensed to practice in Louisiana
** Also licensed to practice in Minnesota

306 WEST 7TH STREET, SUITE 200
FORT WORTH, TEXAS 76102-4905

TELEPHONE (817) 332-1391
METRO (817) 429-0851
FAX (817) 870-2427

CHARLES B. MITCHELL, Jr.
MICHAEL L. PECK
BRUCE H. ROGERS
STERLING J. ELZA
BILLY McGILL
JASON C. MOON
JONATHAN E. CHEATHAM
JENNIFER L. WILLINGHAM

JESSE M. BROWN (1883-1978)
WILLIAM M. BROWN (1912-1987)

July 6, 2004

Secretary of State                                    **VIA FEDERAL EXPRESS**
State of Texas
James Earl Rudder Office Building
1019 Brazos
Austin, Texas 78711-3697
Attn: Corporations Dept.

Re:    JSC Manufacturing, Inc.
       Our File No.: 3204.22595

Dear Sir/Madame:

Enclosed please find the original and one copy of Articles of Incorporation pursuant to Article 3.02 of the Texas Business Corporation Act, regarding the incorporation of JSC Manufacturing, Inc. Also enclosed is a check in the amount of $325.00 regarding payment of the $300.00 filing fee for this business incorporation and the payment of the $25.00 expedite fee. As referenced, we request that you expedite this filing and then please return the appropriate evidence of filing, together with our file-stamped copy of the Articles of Incorporation, and a receipt for this payment, to our office in the return envelope provided.

Should you have any questions, please do not hesitate to contact the undersigned.

Thank you for your cooperation and assistance.

Sincerely yours,

Charles B. Mitchell, Jr.

CBM:PR:mm
Enclosures

W:\Charles\files\Individual Clients\Stewart (Incorp) K&K 22595\Correspondence\Ltr to Secretary of State re Article of Incorporation 002 07.06.05.wpd

July 6, 2004
Page 2


bcc:    Kenny Stewart (w/o encls.)
        2705 Heather Hill Court, #917
        Arlington, Texas 76006

# Form 941
# Payment Voucher

## Purpose of Form

Complete Form 941-V if you are making a payment with **Form 941**, Employer's Quarterly Federal Tax Return. We will use the completed voucher to credit your payment more promptly and accurately, and to improve our service to you.

If you have your return prepared by a third party and make a payment with that return, please provide this payment voucher to the return preparer.

## Making Payments With Form 941

Make payments with Form 941 only if:

**1.** Your net taxes for the quarter (line 13 on Form 941) are less than $2,500 or

**2.** You are a monthly schedule depositor making a payment in accordance with the **accuracy of deposits** rule. (See section 11 of **Circular E**, Employer's Tax Guide, for details.) This amount may be $2,500 or more.

Otherwise, you must deposit the amount at an authorized financial institution or by electronic funds transfer. (See section 11 of Circular E for deposit instructions.) Do not use the Form 941-V payment voucher to make Federal tax deposits.

**Caution:** *If you pay amounts with Form 941 that should have been deposited, you may be subject to a penalty. See Circular E.*

## Specific Instructions

● Enter on the voucher the amount paid with Form 941.

● Make your check or money order payable to the United States Treasury. Be sure to enter your EIN, "Form 941," and the tax period on your check or money order. Do not send cash. Please do not staple your payment to the voucher or the return or to each other.

● Detach the completed voucher and send it with your payment and Form 941 to the address on the back of Form 941-V—your payment may be misapplied or delayed.

If any of the preprinted information is incorrect, make changes on the top of Form 941, not on the payment voucher. If you change any of the preprinted information on the voucher, your payment may be misapplied or delayed.

29-000362601                                              Detach here



**Department of the Treasury**
**Internal Revenue Service**

OMB No. 1545-0029
**2001**

# Form 941-V Payment Voucher

▶ Use this voucher when making a payment with your tax return.
▶ Do not staple this voucher or your payment to your return.
▶ Do not send cash.

FOR PRIVACY ACT AND PAPERWORK REDUCTION ACT NOTICE, SEE BACK OF PAYMENT VOUCHER.

| Enter the amount of your payment | $ |
| --- | --- |

75-2914680

TSC MANUFACTURING
2302 ROCK ISLAND RD
IRVING TX  75060-2409

INTERNAL REVENUE SERVICE
PO BOX 7922
SAN FRANCISCO CA  94120-7922

752914680 XT TSCM 01 2 200106 610

Form **8736**

(Rev. October 1998)

Department of the Treasury
Internal Revenue Service

# Application for Automatic Extension of Time
## To File U. S. Return for a Partnership, REMIC, or for Certain Trusts

OMB No. 1545-1054

File a separate application for each return.

**Please type or print.**

File by the due date for filing the return for which an extension is requested. See instructions.

| Name | Employer identification number |
|---|---|
| J S C MFG. Partnership | 74-1729051 |

Number, street, and room or suite no.  If a P. O. box, see instructions.
2302 Rock Island

City or town, state, and ZIP code.  If a foreign address, enter city, province or state, postal code, and country.
Irving                                    TX                        75060

**1** I request an automatic 3-month extension of time to file (check only one):
☐ Form 1041      ☐ Form 1041-QFT   ☒ Form 1065      ☐ Form 1065-B      ☐ Form 1066

**2** If the entity does not have an office or place of business in the United States, check this box . . . . . . . . . ☐

**3a** For calendar year ............ 2000 , or other tax year beginning .................. , and ending ..................

**b** If this tax year is for less than 12 months, check reason:
☒ Initial return          ☐ Final return          ☐ Change in accounting period

**4** If this extension is requested for Form 1041, Form 1041-QFT, Form 1065-B, or Form 1066, enter the following amounts:

**a** Tentative total tax from Form 1041, Form 1041-QFT, Form 1065-B, or Form 1066 (see instructions) . . $ _____ 0

**b** Refundable credits and estimated tax payments, including any prior year overpayment allowed as a credit, from Form 1041, Form 1041-QFT, or Form 1065-B (see instructions). REMICs, enter -0- . . . $ _____ 0

**c** Balance due.  Subtract line 4b from line 4a.  If zero or less, enter -0-.  Enclose payment, if any, with Form 8736 (see instructions) . . . . . . . . . . . . . . . . . . . . . . $ _____ 0

**CAUTION:** Interest will be charged on any tax not paid by the regular due date of Forms 1041, 1041-QFT, 1065-B, and 1066 from the due date until the tax is paid.

For Paperwork Reduction Act Notice, see instructions.                    (HTA)                    Form **8736** (Rev. 1-98)

Transaction Report

Send
Transaction(s) completed

| No. | TX Date/Time | Destination | Duration | P. # | Result | Mode |
|-----|-----|-----|-----|-----|-----|-----|
| 441 | OCT-13  13:17 | 18667405665 | 0°00'27" | 001 | OK | N ECM |

COMMERCIAL AUTO
XA TX 27 10 11

# ALLSTATE COUNTY MUTUAL INSURANCE COMPANY
## SPECIAL PROVISIONS

This Company is licensed to operate under chapter 17, Texas Insurance Code, 1951, as amended, and such statutes shall apply to and form a part of this policy the same as if written or printed upon, attached or appended hereto.

This policy is issued subject to the constitution and by-laws and all amendments thereto of the Company, which shall form a part of this policy.

### MUTUALS-MEMBERSHIP AND VOTING NOTICE

The insured is notified that by virtue of this policy, he is a member of the Allstate County Mutual Insurance Company of Irving, Texas, and is entitled, as is lawfully provided in the charter, constitution, or by-laws, to only one vote regardless of the number of policies owned either in person or by proxy in any or all meetings of said Company. The Annual Meetings are held in its Home Office in Irving, Texas, on the sixth day of March, in each year, at 2:00 o clock p.m.

### MUTUALS-PARTICIPATION CLAUSE WITHOUT CONTINGENT LIABILITY

No Contingent Liability: This policy is non-assessable. The policyholder is a member of the Company and shall participate, to the extent and upon the conditions fixed and determined by the Board of Directors in accordance with the provisions of laws, in the distribution of dividends so fixed and determined.

In Witness Whereof, the company has caused this policy to be executed and attested, but this policy shall not be valid unless countersigned by a duly authorized representative of the company.

Mary Jovita McGinn
Secretary

Catherine S. Brune
President

Kenneth Stewart

**POLICY NUMBER:** 648128830

**COMMERCIAL AUTO**
**AA TX 02 10 11**

### WITNESS CLAUSE

IN WITNESS WHEREOF, Allstate has caused this policy to be signed by its Secretary and its President at Northbrook, Illinois

Mary Jovita McGinn

Secretary

Catherine S. Brune

President

8-K 1 a05-14057_18k.htm 8-K

# UNITED STATES
# SECURITIES AND EXCHANGE COMMISSION
### Washington, D.C. 20549

# FORM 8-K

### CURRENT REPORT

### Pursuant to Section 13 or 15(d) of the
### Securities Exchange Act of 1934

Date of report (Date of earliest event reported): **August 1, 2005**

### ALLSTATE LIFE INSURANCE COMPANY
(Exact name of Registrant as Specified in Charter)

| **Illinois** | **000-31248** | **36-2554642** |
|---|---|---|
| (State or other jurisdiction of organization) | (Commission File Number) | (IRS Employer Identification No.) |

| **3100 Sanders Road** **Northbrook, Illinois** | **60062** |
|---|---|
| (Address of Principal Executive Offices) | Zip |

Registrant's telephone number, including area code: **(847) 402-5000**

Check the appropriate box below if the Form 8-K filing is intended to simultaneously satisfy the filing obligation of the registrant under any of the following provisions:

☐      Written communications pursuant to Rule 425 under the Securities Act (17 CFR 230.425)

☐      Soliciting material pursuant to Rule 14a-12 under the Exchange Act (17 CFR 240.14a-12)

☐      Pre-commencement communications pursuant to Rule 14d-2(b) under the Exchange Act (17 CFR 240.14d-2(b))

☐      Pre-commencement communications pursuant to Rule 13e-4(c) under the Exchange Act (17 CFR 240.13e-4(c))

**Section 1 — Registrant's Business and Operations**

**Item 1.01.**         **Entry into Material Definitive Agreements**

Surplus Note Purchase Agreement
Pledge and Security Agreement

On August 1, 2005, Allstate Life Insurance Company ("ALIC") and Kennett Capital, Inc., a corporation organized under the laws of the State of Delaware ("Kennett"), entered into a Surplus Note Purchase Agreement (the "Purchase Agreement") and a Pledge and Security Agreement (the "Security Agreement"), both with an effective date of August 1, 2005.

The Purchase Agreement provides for the sale by ALIC to Kennett of two 5.06% surplus notes due July 1, 2035 (the "Surplus Notes"), dated July 1, 2005, issued by ALIC Reinsurance Company, a South Carolina domiciled reinsurance company ("ALIC Re"), in an aggregate principal amount of $100,000,000. In exchange for the Surplus Notes, Kennett issued to ALIC a full recourse 4.86% note due July 1, 2035 (the "Kennett Note"), dated August 1, 2005, in the principal amount of $100,000,000. In the future, additional surplus notes may be sold pursuant to the Purchase Agreement at the option of the parties.

As security for the performance of Kennett's obligations under the Purchase Agreement and the Kennett Note, ALIC and Kennett entered into the Security Agreement pursuant to which Kennett granted ALIC a pledge of and security interest in Kennett's right, title and interest in the Surplus Notes and their proceeds.

ALIC is a direct wholly owned subsidiary of Allstate Insurance Company, a direct wholly owned subsidiary of The Allstate Corporation ("Allcorp"). Kennett is a direct wholly owned subsidiary of Allcorp. ALIC Re is a direct wholly owned subsidiary of ALIC.

2

---

**SIGNATURE**

Pursuant to the requirements of the Securities Exchange Act of 1934, the registrant has duly caused this report to be signed on its behalf by the undersigned hereunto duly authorized.

**ALLSTATE LIFE INSURANCE COMPANY**

By:         /s/ Mary J. McGinn
         Name:  Mary J. McGinn
         Title:   Vice President and Assistant Secretary

Dated:   August 1, 2005

3

---

IL 00 03 09 08

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CALCULATION OF PREMIUM

This endorsement modifies insurance provided under the following:

    CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
    COMMERCIAL AUTOMOBILE COVERAGE PART
    COMMERCIAL GENERAL LIABILITY COVERAGE PART
    COMMERCIAL INLAND MARINE COVERAGE PART
    COMMERCIAL PROPERTY COVERAGE PART
    CRIME AND FIDELITY COVERAGE PART
    EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
    EQUIPMENT BREAKDOWN COVERAGE PART
    FARM COVERAGE PART
    LIQUOR LIABILITY COVERAGE PART
    MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
    OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
    POLLUTION LIABILITY COVERAGE PART
    PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
    RAILROAD PROTECTIVE LIABILITY COVERAGE PART

The following is added:

The premium shown in the Declarations was computed based on rates in effect at the time the policy was issued. On each renewal, continuation, or anniversary of the effective date of this policy, we will compute the premium in accordance with our rates and rules then in effect.

© ISO Properties, Inc., 2007

Insured Full Copy

8F CR 4/7/14
FSP-111314

Ku Ja Stewart

Mineral Lease
Misc file

9
9

Prepared by and mail to:

COPY                                                    CONFORMED

Clifford Chance US LLP
200 Park Avenue
New York, New York 10166
Attn: Dawn E. Goldberg, Esq.

TEXAS                                          DALLAS COUNTY,

## DEED OF TRUST, ASSIGNMENT OF LEASES,
## SECURITY AGREEMENT, FINANCING STATEMENT AND FIXTURE FILING

THIS DEED OF TRUST (this "Instrument") entered into as of the
15th day of May, 2003 but effective as of the 19th day of May, 2003 by
MARCONI
COMMUNICATIONS, INC., a Delaware corporation ("Trustor"), having an address at
c/o Marconi Corporation plc, One Bruton Street, London W1J 6AQ United Kingdom,
to WARD WILLIFORD ("Trustee"), having an address at 1909 Woodall Rodgers
Freeway, Suite 410, Dallas County, Texas 75201, for the use and benefit of THE
LAW DEBENTURE TRUST CORPORATION p.l.c., a public limited company organized under
the laws of England and Wales, as Security Trustee for the Secured Creditors (as
defined in the Intercreditor Agreement) (together with any co-trustee, co-agent
or other entity that may be appointed after the date hereof pursuant to clause
16 of the Intercreditor Agreement (as defined below)) ("Beneficiary") under the
Security Trust and Intercreditor Deed dated the date hereof and made among
Marconi Corporation plc as Issuer; Beneficiary; the persons listed in Schedule 1
thereto as Guarantors; Law Debenture Trust Company of New York as Senior Note
Trustee; JPMorgan Chase Bank as Junior Note Trustee; HSBC Bank plc as New
Bonding Facility Agent; The Bank of New York as Depositary, Paying Agent and
Registrar; the persons listed in Part A Schedule 2 thereto as Intra-Group
Creditors; the persons listed in Part B Schedule 2 thereto as Intra-Group
Borrowers and the persons listed in Schedule 3 thereto as New Bonding Facility
Banks (as amended, modified or supplemented from time to time, the
"Intercreditor Agreement"), having an address at Fifth Floor, 100 Wood Street,
London EC2V 7EX, United Kingdom. Capitalized terms used herein without
definition shall have the respective meanings assigned to such terms in the
Intercreditor Agreement.

{02780774.DOCX / }

W I T N E S S E T H:

WHEREAS, Trustor is a United States wholly-owned subsidiary of Marconi Corporation, plc (the "Issuer"), which is the Issuer under the Indentures, the Notes and the New Bonding Facility Agreement;

WHEREAS, as of the date hereof and in favor of Beneficiary, Trustor has entered into a Guarantee of the Senior Notes and Senior Note Indenture, a Guarantee of the Junior Notes and the Junior Note Indenture and a Composite Guarantee of certain other obligations under the Relevant Documents, including the New Bonding Facility Agreement (collectively, the "Guarantees"), pursuant to which Trustor has agreed to guarantee the "Guaranteed Obligations" (as such term is defined in each of the Guarantees) and has agreed to secure the Guaranteed Obligations and other obligations;

WHEREAS, Trustor has received substantial benefit from the Secured Obligations (as defined below) secured hereby, which consist of, among other things, term notes and a revolving bonding

1

facility, made in the aggregate principal amount of up to One Billion Two Hundred Eighty-Four Million Nine Hundred Twenty-Five Thousand and No/100 Dollars (U.S. $1,284,925,000.00) with a maturity date of October 31, 2008; and

WHEREAS, Beneficiary and the Secured Creditors have required that Trustor execute and deliver this Instrument (i) in order to secure the prompt and complete payment, observance and performance of all of the Secured Obligations (as defined below) and (ii) as a condition precedent to Beneficiary and the Secured Creditors entering into the Relevant Documents.

NOW, THEREFORE, in consideration of the premises and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties hereto agree as follows:

GRANTING CLAUSE

To secure the payment and the performance and discharge of the Secured Obligations (as hereinafter defined), and for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged and

confessed, Trustor has GRANTED, BARGAINED, SOLD, WARRANTED, MORTGAGED, ASSIGNED,
TRANSFERRED and CONVEYED, and by these presents does GRANT, BARGAIN, SELL, WARRANT, MORTGAGE, ASSIGN, TRANSFER and CONVEY unto Trustee, in trust for the use and benefit of Beneficiary, with power of sale and right of entry and possession, all of Trustor's present and future estate, right, title and interest in and to the Mortgaged Property (as hereinafter defined) now owned, or
hereafter acquired by Trustor, including the following described real estate in
Dallas County, Texas (the "State"):

See Exhibit A attached hereto and by this reference made a part hereof which real estate (the "Land"), together with all right, title and
interest, if any, which Trustor may now have or hereafter acquire in and to all
improvements, buildings and structures thereon of every nature whatsoever, is herein called the "Premises."

TOGETHER WITH all right, title and interest, if any, including
any after-acquired right, title and interest, and including any right of use or
occupancy, which Trustor may now have or hereafter acquire in and to (a) all easements, rights of way, gores of land or any lands occupied by streets, ways,
alleys, passages, sewer rights, air rights, development rights, water courses,
water rights and powers, and public places adjoining said Land, and any other interests in property constituting appurtenances to the Premises, or which hereafter shall in any way belong, relate or be appurtenant thereto and (b) all
hereditaments, gas, oil, minerals (with the right to extract, sever and remove
such gas, oil and minerals), and easements, of every nature whatsoever, located
in or on the Premises and all other rights and privileges thereunto belonging or
appertaining and all extensions, additions, improvements, betterments, renewals,
substitutions and replacements to, or of any rights and interests described in
subparagraph (a) above and this subparagraph (b) (hereinafter collectively called the "Property Rights").

TOGETHER WITH all additional lands, estates and development rights hereafter acquired by Trustor for use in connection with and the development of the Land, the Premises or the Property Rights and all additional
lands and estates therein which may, from time to time, by supplemental deed of
trust or otherwise, be expressly made subject to the lien of this Instrument.

TOGETHER WITH all right, title and interest, if any, including

any after-acquired right, title and interest which Trustor may now or hereafter
acquire in and to fixtures and appurtenances of every nature whatsoever now or
hereafter located in, on or attached to, and used or intended to be used in

2

connection with, or with the operation of, the Premises, including, but not
limited to, (a) all apparatus, machinery, and equipment of Trustor; (b) all
extensions, additions, improvements, betterments, renewals, substitutions, and
replacements to or of any of the foregoing (the items described in the foregoing
(a) and (b) being the "Fixtures"); and (c) all personal property and equipment
of every nature whatsoever now or hereafter located in or on the Premises,
including, but not limited to, (i) all screens, window shades, blinds,
wainscoting, storm doors and windows, floor coverings, and awnings of
Trustor;
(ii) all apparatus, machinery, equipment and appliances of Trustor not included
as Fixtures; (iii) all items of furniture, furnishings, and personal property of
Trustor; and (iv) all extensions, additions, improvements, betterments,
renewals, substitutions, and replacements to or of any of the foregoing
(i)-(iii) (the items described in the foregoing (i)-(iv) and any other personal
property referred to in this paragraph being the "Personal Property") and in and
to the proceeds of the Personal Property. It is mutually agreed, intended and
declared that the Premises and all of the Property Rights and Fixtures owned by
Trustor (referred to collectively herein as the "Real Property") shall, so far
as permitted by law, be deemed to form a part and parcel of the Land and for the
purpose of this Instrument to be real estate and covered by this Instrument. It
is also agreed that if any of the property herein conveyed is of a nature so
that a security interest therein can be perfected under Article 9 of the Uniform
Commercial Code as enacted by the State ("UCC"), this Instrument shall
constitute a security agreement, fixture filing and financing statement, and
Trustor agrees to execute, deliver and file or refile any financing statement,
continuation statement, or other instruments Beneficiary may require from time
to time to perfect or renew such security interest under the UCC. To the extent
permitted by law, (x) all of the Fixtures are or are to become fixtures on the
Land; and (y) this Instrument shall be effective as a financing statement filed

{02780774.DOCX / }

as a fixture filing with respect to all fixtures included within the Mortgaged
Property and is to be filed for record in the real estate records in the Office
of the County Clerk where the Mortgaged Property (including said Fixtures) is
situated, in accordance with Section 9.502 and other applicable provisions of
the Texas Business and Commercial Code, as amended from time to time. This
Instrument shall also be effective as a financing statement covering minerals or
the like (including oil and gas) and accounts subject to Subsection (e) of
Section 9.103 of the Texas Business and Commerce Code, as amended, and is to be
filed for record in the real estate records of the county where the Mortgaged
Property is situated. The mailing address of Trustor and the address of
Beneficiary from which information concerning the security interest may be
obtained are set forth above. Subject to the terms and conditions of the
Intercreditor Agreement, the remedies for any violation of the covenants, terms
and conditions of the agreements herein contained shall be as prescribed herein
or by general law, or, as to that part of the security in which a security
interest may be perfected under the UCC, by the specific statutory consequences
now or hereafter enacted and specified in the UCC, all at Beneficiary's sole
election.

TOGETHER WITH all the estate, right, title and interest of
Trustor, in and to all (i) judgments, insurance proceeds, unearned premiums,
awards of damages and settlements, and any interest thereon, resulting from
condemnation proceedings or the taking of the Real Property, or any part
thereof, under the power of eminent domain or for any damage (whether caused by
such taking or otherwise) to the Real Property, the Personal Property or any
part thereof, or to any rights appurtenant thereto, and all proceeds of any
sales or other dispositions of the Real Property, the Personal Property or any
part thereof; and (subject to the terms of the Intercreditor Agreement)
Beneficiary is hereby authorized to collect and receive said awards and proceeds
and to give proper receipts and acquittances therefor, and to apply the same as
provided in the Intercreditor Agreement; (ii) contract rights, general
intangibles, actions and rights in action, relating to the Real Property or the
Personal Property, including, without limitation, all rights to insurance
proceeds and unearned premiums arising from or relating to damage to the Real
Property or the Personal Property; and (iii) proceeds, products, replacements,
additions, substitutions, renewals and accessions of and to the Real Property or
the Personal Property. (The rights and interests described in this paragraph
shall hereinafter be collectively called the "Intangibles.")

3

TOGETHER WITH all the rents, issues and profits of the Real Property and all rents, issues, profits, revenues, royalties, bonuses, rights and benefits due, including all rents, revenues, bonus money, royalties, rights

and benefits accruing to Trustor under all present and future oil, gas and mineral leases located on any portion of the Mortgaged Property, payable or accruing (including all deposits of money as advance rent, for security or as earnest money or as downpayment for the purchase of all or any part of the Real

Property or the Personal Property) (the "Rents") under any and all Leases (as defined below).

As additional security for the Secured Obligations, Trustor does hereby pledge and assign to Beneficiary from and after the date hereof (including any period of redemption), primarily and on a parity with said real

estate, and not secondarily, any and all present and future leases, contracts or

other agreements relating to the ownership of the Real Property or the Personal

Property or to the occupancy of all or any portion of the Real Property and, except to the extent such a transfer or assignment is not permitted by the terms

thereof (and a consent to the transfer or assignment has not been obtained), does hereby transfer and assign to Beneficiary all such leases, contracts and agreements (including all Trustor's rights (x) under any contracts for the sale

of any portion of the Mortgaged Property (as hereinafter defined) and (y) to all

revenues and royalties under any oil, gas and mineral leases relating to the Real Property) (the "Leases"). Trustor further agrees to execute and deliver such assignments of leases or assignments of land sale contracts as Beneficiary

may from time to time request solely for the purpose of creating, protecting, perfecting or maintaining an enforceable lien thereon and an enforceable and valid assignment of Leases. Upon the occurrence of a Trigger Event, (i) Trustor

agrees, upon demand, to deliver to Beneficiary all of the Leases with such additional assignments thereof as Beneficiary may request and agrees that Beneficiary may assume the management of the Real Property, including taking control of the Leases (provided that such assumption of management shall be done

solely to the extent necessary to collect the Rents in the event of a Material

Default), and (ii) Trustor hereby authorizes and directs all tenants, purchasers

or other persons occupying or otherwise acquiring any interest in any part of the Real Property to pay the Rents due under the Leases to Beneficiary upon request of Beneficiary. Trustor hereby appoints Beneficiary as its true and lawful attorney-in-fact to manage said property and to control the Leases, with

full power to bring suit for collection of the Rents and possession of the Real

Property (provided that such possession shall be taken solely to the extent necessary to collect such Rents in the event of a Material Default), giving and

granting unto said Beneficiary and unto its agent or attorney full power coupled
with an interest and authority to do and perform all and every act and thing whatsoever requisite and necessary to be done in the protection of the security
hereby conveyed; provided, however, that (i) this power of attorney and assignment of Leases shall not be construed as an obligation upon said Beneficiary to make or cause to be made any repairs that may be needful or necessary, and (ii) Beneficiary agrees that so long as no Trigger Event shall have occurred, Beneficiary shall permit Trustor to perform the aforementioned management responsibilities. Upon Beneficiary's receipt of the Rents, at Beneficiary's option, it may: (i) pay charges for collection hereunder, costs of
necessary repairs and other costs requisite and necessary during the continuance
of this power of attorney and assignment of Rents, (ii) pay general and special
taxes, insurance premiums, and, thereafter, (iii) distribute the balance of the
Rents pursuant to the provisions of the Intercreditor Agreement. This power of
attorney and assignment of Leases shall be irrevocable until this Instrument shall have been satisfied and released of record and the releasing or reconveyance of this Instrument shall act as a revocation of this power of attorney and assignment of Leases. Subject to Beneficiary's grant to Trustor of
the collection and use of the Rents set forth above, Beneficiary shall have and
hereby expressly reserves the right and privilege (but assumes no obligation) to
demand, collect, sue for, receive and recover the Rents, or any part thereof, now existing or hereafter made, and apply the same in accordance with the provisions of the Intercreditor Agreement. Notwithstanding anything to the contrary herein, this power of attorney and assignment of Leases shall be subject and subordinate to Beneficiary's rights set forth in that certain Assignment of Rents dated of even date herewith, and if there is any conflict between

4

the terms of this Instrument and the terms of such Assignment of Rents the terms
of such Assignment of Rents shall control. For purposes of this Instrument, a "Trigger Event" shall mean (i) an Enforcement Event or (ii) a "Material Default"
which for purposes of this Instrument shall mean any event that is (A) an Insolvency Event which is also an Event of Default or (B) any Event of Default
that the Instructing Trustee notifies and instructs Beneficiary to act in response to pursuant to the Intercreditor Agreement. Notwithstanding anything herein, upon an Enforcement Event, Beneficiary shall have the absolute right and
option to exercise any and all rights and remedies provided for in this Instrument and available at law or in equity.

{02780774.DOCX / }

All of the property described above, and each item of property herein described, and all other rights of Trustor in and to such items of property, not limited to, but including, the Land, the Premises, the Property Rights, the Fixtures, the Real Property, the Personal Property, the Intangibles, the Rents and the Leases, is herein collectively referred to as the "Mortgaged Property". As used herein, "Secured Obligations" means all present and future indebtedness, liabilities and obligations (for the avoidance of doubt, including any liabilities and obligations that have been cash-collateralized by Trustor), at any time of Trustor under the Relevant Documents (including this Instrument), including any liability in respect of any further advances, if any, made under the Relevant Documents, both actual and contingent (and whether incurred solely or jointly or in any other capacity) together with any of the following matters relating to or arising in respect of those liabilities and obligations: (1) any refinancing, novation, deferral or extension; (2) any obligation relating to any increase in the amount of such obligations; (3) any claim for damages or restitution; and (4) any claim as a result of any recovery by Trustor of a payment or discharge, or non-allowability, on the grounds of preference; and any amounts that would be included in any of the above but for any discharge, non-provability or unenforceability of those amounts in any insolvency or other proceedings (including interest accruing after the commencement of any insolvency or other proceedings).

Nothing herein contained shall be construed as constituting Beneficiary or any of its Delegates and any of the Secured Creditors a mortgagee-in-possession in the absence of the taking of actual possession of the Mortgaged Property by Beneficiary or any of its Delegates or any of the Secured Creditors. Nothing contained in this Instrument shall be construed as imposing on Beneficiary any of the obligations of the lessor under any lease of the Mortgaged Property in the absence of an explicit assumption thereof by Beneficiary. In the exercise of the powers herein granted Beneficiary, no liability shall be asserted or enforced against Beneficiary, all such liability being expressly waived and released by Trustor.

TO HAVE AND TO HOLD the Mortgaged Property, properties, rights and privileges hereby conveyed or assigned, or intended so to be, unto Trustee, its successors and assigns, for the benefit of Beneficiary, its successors and assigns, forever upon the trusts, terms and conditions and for the uses and

purposes herein set forth. The conveyance of the Mortgaged Property provided for

herein is made upon this special trust. If the Secured Obligations are paid and

performed in full and completely as and when due in accordance with their respective terms, the conveyance provided for herein shall be released upon satisfaction of the conditions set forth in Section 5.3 of the Intercreditor Agreement and shall thereafter be null and void and may be canceled of record at

the request and cost of Trustor and title shall revest as provided by law. If,

however, a Trigger Event shall have occurred, then Beneficiary shall be entitled

to invoke the remedies in the granting clause above in connection with the assignment of Leases and Rents, and if an Enforcement Event shall have occurred,

then Beneficiary shall, in addition to all other rights and remedies at law or

equity provided, be entitled to invoke the remedies provided for in Section 4.02

below including without limitation the right to foreclose this Instrument by judicial proceedings or, at Beneficiary's election, the right to demand that Trustee foreclose this Instrument

5

through exercise of the power of sale herein granted to Trustee, and upon such

demand by Beneficiary, Trustee shall have the right and the duty to foreclose this Instrument as herein provided.

The following provisions shall also constitute an integral part of this Instrument:

ARTICLE I

[Reserved]

ARTICLE II

COVENANTS OF TRUSTOR

Section 2.01.      [Reserved]

Section 2.02.      Leases Affecting the Real Property. All future lessees under any Lease of the Real Property, or any part thereof, made after the date of recording of this Instrument shall, at Beneficiary's option and without any further documentation, attorn to Beneficiary as lessor if for any reason Beneficiary becomes lessor thereunder, and, thereafter, upon demand, to

pay Rent to Beneficiary, and Beneficiary shall not be responsible under such Lease for matters arising prior to Beneficiary becoming lessor thereunder. In respect of each Lease which may be entered into on or after the date hereof, the

lien and estate, as well as the provisions, terms and conditions of each Lease
shall in all respects be subordinate and junior to the lien of this Instrument.

Section 2.03.    Further Assurances. Trustor, at its sole cost and expense, shall (i) upon request of Beneficiary promptly correct any defect or error which may be discovered in this Instrument or any financing statement or other document relating hereto solely to the extent necessary to create, effectuate, complete, perfect, continue or preserve the lien of this Instrument on the Mortgaged Property, and (ii) promptly execute, acknowledge, deliver, record and re-record, register and re-register, and file and re-file this Instrument, any amendment to this Instrument and any financing statements or other documents which Beneficiary may request in writing from time to time (all in form and substance reasonably satisfactory to Beneficiary) in order (A) to create, effectuate, complete, perfect, continue or preserve the lien of this Instrument as a first priority lien on the Mortgaged Property, whether now owned or hereafter acquired, subject only to the matters set forth on Exhibit B attached hereto and made a part hereof and except for the Permitted Liens (as defined in the Indentures), or (B) to create, effectuate, complete, perfect, continue, preserve or validate any right, power or privilege granted or intended to be granted to Beneficiary hereunder or otherwise accomplish the purposes of this Instrument. To the extent permitted by law and to the extent that Trustor fails to do so as required hereunder, Trustor hereby authorizes Beneficiary to file financing statements or continuation statements covering the Mortgaged Property.

Section 2.04.    Casualty Proceeds. Trustor hereby assigns to Beneficiary, as additional security, all proceeds or awards of damage resulting from a casualty event or condemnation proceedings or the taking of or injury to the Real Property for public use. All such proceeds or awards paid to Beneficiary hereunder shall be applied in accordance with the Indentures.

Section 2.05.    Inspections. Trustor hereby authorizes Beneficiary, its agents, employees and representatives, upon reasonable prior written notice to Trustor (except in an emergency or following the occurrence of any Trigger Event, in which case notice shall not be required) to visit and inspect the

6

Mortgaged Property or any portion(s) thereof, all at such reasonable times and as often as Beneficiary may reasonably request.

{02780774.DOCX / }

Section 2.06.      Indemnity. Trustor hereby indemnifies Beneficiary or any person designated by it and keep Beneficiary or such person designated by it indemnified against any and all costs, claims and liabilities which it may incur as a result of anything done by it as an attorney-in-fact for Trustor in the proper exercise of any of the powers conferred, or purported to be conferred, thereon by this Instrument unless such cost, claim or liability arises as a result of the negligence or wilful misconduct of Beneficiary or such person designated by it. For clarification purposes, the indemnity set forth in this Section 2.06 shall apply solely in those instances where Beneficiary or a Delegate acts as an attorney-in-fact for Trustor for purposes of this Instrument.

Section 2.07.      After Acquired Property Interests. All right, title and interest of Trustor in and to all of the Mortgaged Property, hereafter acquired by Trustor ("After Acquired Property Interests"), immediately upon such acquisition, without any further mortgage, conveyance, assignment or other act by Trustor, shall become subject to the lien of this Instrument as fully and completely, and with the same effect, as though owned by Trustor on the date hereof and specifically described in the granting clauses hereof. Trustor shall execute and deliver to Beneficiary all such other deeds of trust or mortgages and other agreements as Beneficiary may require for the purpose of expressly and specifically subjecting such After Acquired Property Interests to the lien of this Instrument. Trustor hereby irrevocably authorizes and appoints Beneficiary as the agent and attorney-in-fact of Trustor to execute all such documents and instruments on behalf of Trustor, which appointment shall be irrevocable and coupled with an interest, if Trustor fails or refuses to do so within ten (10) days after written request therefor by Beneficiary.

Section 2.08.      Expenses and Costs. Trustor shall, from time to time and promptly on demand by Beneficiary reimburse to Beneficiary all costs and expenses (including legal fees) on a full indemnity basis incurred by Beneficiary and any Delegate in connection with:

1.      the execution, release and discharge of this Instrument and the security created hereby or intended to be created hereby

in respect of the Mortgaged Property and the completion of the transactions and perfection of the security contemplated in this Instrument or forming part of the security created hereby or intended to be created hereby in respect of the Mortgaged Property;

{02780774.DOCX / }

2. the actual or contemplated exercise, preservation and/or enforcement of any of the rights, powers and remedies of, or

the performance of the duties and obligations of, Beneficiary

or any Delegate, or any amendment or waiver in respect of this

Instrument;

3. the foreclosure (whether judicial or by power of sale) of any

Mortgaged Property; and

4. the preservation and/or enforcement of the security created hereby or intended to be created hereby in respect of the Mortgaged Property,

which shall carry interest from the date of such demand until so reimbursed at

the rate and on the basis as mentioned in Clause 18.4 of the Intercreditor Agreement.

Section 2.09.    Taxes. Trustor shall pay, promptly on demand of Beneficiary all stamp, registration, notarial and other similar taxes or fees paid or payable by Beneficiary in connection with any action taken or contemplated by or on behalf of Beneficiary for perfecting, maintaining, enforcing, releasing, cancelling, reassigning or resolving any doubt concerning,

or for any other purpose in relation

7

to this Instrument, any amendment thereto, any transfer and/or assignment of the

rights and/or obligations under the same or the security created hereby or intended to be created hereby in respect of the Mortgaged Property and shall, from time to time, indemnify Beneficiary promptly on demand against any liabilities, costs, claims and expenses resulting from any failure to pay by Trustor or any delay by Trustor in paying any such taxes or fees.

ARTICLE III

BENEFICIARY'S RIGHTS

Section 3.01.    Performance of Trustor's Obligations. Trustor agrees

that, upon the occurrence of an Enforcement Event, Beneficiary may, but need not, make any payment or perform any act hereinbefore required of Trustor, in any form and manner deemed expedient. By way of illustration and not in limitation of the foregoing, Beneficiary may, but need not, (i) make full or partial payments of insurance premiums which are unpaid by Trustor, coordinate

liens or encumbrances, if any, (ii) purchase, discharge, compromise or settle any tax lien or any other lien, encumbrance, suit, proceeding, title or claim

{02780774.DOCX / }

thereof, or (iii) redeem all or any part of the Premises from any tax or assessment. All moneys paid for any of the purposes herein authorized and all other moneys advanced by Beneficiary to protect the Mortgaged Property and the lien hereof shall be additional Secured Obligations and shall become immediately due and payable without notice and shall bear interest thereon at the rate set forth in Clause 18.4 of the Intercreditor Agreement until paid to Beneficiary in full. In making any payment hereby authorized relating to taxes, assessments or prior or coordinate liens or encumbrances, Beneficiary shall be the sole judge of the legality, validity and priority thereof and of the amount necessary to be paid in satisfaction thereof.

ARTICLE IV

REMEDIES & RIGHTS

Section 4.01.    Remedies of Beneficiary; Power of Sale. Upon the occurrence of an Enforcement Event, Beneficiary may, without notice to or demand upon Trustor, declare this Instrument to be in default, and, in addition to all other rights and remedies at law or in equity available to Beneficiary or as otherwise provided for in the Intercreditor Agreement or the Indentures, to the extent permitted by applicable law, the following provisions shall apply:

(a)    Upon the occurrence of an Enforcement Event, it shall thereupon be the duty of Trustee, or his successor or substitute, as hereinafter provided, to enforce this trust at the request of the Beneficiary (which request shall be presumed) and to sell the Mortgaged Property with or without first having taken possession of the same and in whole or in part, as the acting Trustee may elect (all rights to a marshalling of assets of Trustor being expressly waived hereby), in compliance with the applicable requirements, at the time of the sale, of Section 51.002 of the Texas Property Code as amended or superceded from time to time. Such sale shall be made to the highest bidder for cash at public auction at the County Courthouse of any County in which the Mortgaged Property is situated, in the area of such courthouse designated for real property foreclosure sales in accordance with applicable law (or in the absence of any such designation, in the area set forth in the notice of sale hereinafter described) on the first Tuesday of any month between the hours of 10:00 A.M. and 4:00 P.M. (commencing no earlier than such time as may be designated in the hereinafter described notice of sale), after giving notice of the time, place and terms of sale and the Mortgaged Property to be sold by (i) the acting Trustee or any person chosen by him filing a copy of the notice

thereof in the office of the County Clerk of each County where the Mortgaged Property is situated and by posting or causing to be posted written or printed
notice thereof

8

at least twenty-one (21) days preceding the date of said sale at the County Courthouse door of each County, and (ii) Beneficiary or any person chosen by it,
at least twenty-one (21) days preceding the date of said sale, serving written
notice of such proposed sale by certified mail on each debtor obligated to pay
the Secured Obligations evidenced by the Notes according to the records of Beneficiary. Service of such notice to each debtor shall be completed upon deposit of the notice enclosed in a postpaid wrapper, properly addressed to each
debtor at the most recent address as shown by the records of Beneficiary, in a
post office or official depository under the care and custody of the United States Postal Service. The affidavit of any person having knowledge of the facts
to the effect that such service was completed shall be prima facie evidence of
the fact of service. After such sale, the acting Trustee shall make due conveyance with special warranty to the purchaser or purchasers and Trustor binds itself, its heirs, assigns, executors, administrators, successors and legal representatives to warrant and forever defend the title of such purchaser
or purchasers, claiming by, through, or under grantor but not otherwise. Any abstract of title to the Mortgaged Property furnished in connection with the loan secured by this Instrument shall be delivered by Trustee and become the property of the purchaser at said sale.

(b)        Upon the occurrence of an Enforcement Event, the Beneficiary shall have the right and option to proceed with foreclosure in satisfaction of such item or items by directing Trustee, or his successor or substitute as hereinafter provided, to proceed as if under a full foreclosure,
conducting the sale as herein provided, and without declaring the whole Secured
Obligations due, and provided that if sale is made because of an occurrence of
an Enforcement Event as hereinabove mentioned, such sale may be made subject to
the unmatured part of the Relevant Documents and the Secured Obligations secured
hereby, and it is agreed that such sale, if so made, shall not in any manner affect any other obligation or obligations secured hereby, but as to such other
obligations this Instrument and the liens created hereby shall remain in full force and effect just as though no sale had been made under the provisions of this Section 4.01(a). It is further agreed that several sales may be made hereunder without exhausting the right of sale for any other breach of any of

the obligations secured hereby, it being the purpose to provide for a
foreclosure and sale of the Mortgaged Property for any matured portion of any
of
the Secured Obligations secured hereby or other items provided for herein
without exhausting the power to foreclose and to sell the Mortgaged Property
for
any other part of the Secured Obligations secured hereby whether matured at
the
time or subsequently maturing.

    (c)  Subject to the terms and provisions of the
Intercreditor Agreement, the proceeds from any such sale shall be applied by
the
acting Trustee as follows:

| | | |
|---|---|---|
| of | FIRST: | To the payment of all expenses |
| conveying | | advertising, selling and |
| including a | | the Mortgaged Property, |
| acting | | reasonable commission to the |
| | | Trustee. |
| | SECOND: | To the payment to Beneficiary of all unpaid Secured Obligations, including accrued interest to |
| the | | |
| and | | date of sale, in such priority |
| its | | proportions as Beneficiary in |
| | | discretion shall deem proper. |
| paid | THIRD: | The balance, if any, shall be |
| | | to Trustor. |

    (d)  The acting Trustee hereunder shall have the right
to
sell the Mortgaged Property in whole or in part and in such parcels and order
as
he may determine, and the right of sale hereunder shall not be exhausted by
one
or more sales, but successive sales may be had until all of the Mortgaged
Property have been legally sold. In the event any sale hereunder is not
completed or is defective in the opinion of Beneficiary, such sale shall not
exhaust the power of sale hereunder, and Beneficiary shall have the right to
cause a subsequent sale or sales to be made by Trustee or any successor or
substitute Trustee. Likewise, Beneficiary may become the purchaser at any
such
sale if it is the highest bidder, and shall

9

have the right, after paying or accounting for all costs of said sale or sales,
to credit the amount of the bid upon the amount of the Secured Obligations owing, in lieu of cash payment. The purchaser or purchasers at foreclosure shall
have the right to affirm or disaffirm any Lease.

(e)     It shall not be necessary for the acting Trustee to
have constructively in his possession any part of the real or personal property
covered by this Instrument, and the title and right of possession of the Mortgaged Property shall pass to the purchaser or purchasers at any sale hereunder as fully as if the same had been actually present and delivered. Likewise, on foreclosure of this Instrument whether by power of sale herein contained or otherwise, Trustor or any person claiming any part of the Mortgaged
Property by, through or under Trustor, shall not be entitled to a marshalling of
assets or a sale in inverse order of alienation.

(f)     The recitals and statements of fact contained in any
notice or in any conveyance to the purchaser or purchasers at any sale hereunder
shall be prima facie evidence of the truth of such facts, and all prerequisites
and requirements necessary to the validity of any such sale shall be presumed to
have been performed.

(g)     Any sale under the powers granted by this Instrument
shall be a perpetual bar against Trustor, its heirs, successors, assigns and legal representatives.

(h)     In the event of a foreclosure under the powers granted by this Instrument, Trustor, and all other persons in possession of any
part of the Mortgaged Property shall be deemed tenants at will of the purchaser
at such foreclosure sale and shall be liable for a reasonable rental for the use
of the Mortgaged Property; and if any such tenants refuse to surrender possession of the Mortgaged Property upon demand, the purchaser shall be entitled to institute and maintain the statutory action of forcible entry and detainer and procure a writ of possession thereunder, and Trustor expressly waives all damages sustained by reason thereof.

(i)     To the extent Section 51.003 of the Texas Property Code, or any amendment thereto or judicial interpretation thereof, requires that
the "fair market value" of the Mortgaged Property shall be determined as of the
foreclosure date in order to enforce a deficiency against Trustor or any other

party liable for the repayment of the Secured Obligations, the term "fair market
value" shall include those matters required by law and shall also include the
additional factors as follows:

(i)     The Mortgaged Property is to be valued
"AS IS, WHERE IS" and "WITH ALL FAULTS" and there shall be no assumption of
restoration of or refurbishment of the Mortgaged Property after the date of
foreclosure;

(ii)     There shall be an assumption of a prompt
resale of the Mortgaged Property for an all cash sales price by the purchaser
at the foreclosure so that no extensive holding period should be factored into the
determination of "fair market value" of the Mortgaged Property;

(iii)     An offset to the fair market value of the
Mortgaged Property, as determined hereunder, shall be made by deducting from
such value the reasonable estimated closing costs relating to the sale of the
Mortgaged Property including but not limited to brokerage commissions, title
policy expenses, tax prorations, escrow fees, and other common charges which are
incurred by a seller of real property similar to the Mortgaged Property; and

10

(iv)     After consideration of the factors
required by law and those required above (including the addition of any income to be
generated by the Mortgaged Property), an additional discount factor shall be
calculated based upon the estimated time it will take to effectuate a sale of
the Mortgaged Property so that the "fair market value" as so determined is
discounted to be as of the date of the foreclosure of the Mortgaged Property.

Section 4.02.     Application of the Rents or Proceeds from
Foreclosure or Sale. The Rents and the proceeds of any sale (whether through a
foreclosure proceeding or Beneficiary's exercise of the power of sale) shall be
distributed and applied in accordance with the terms of the Intercreditor Agreement.
Subject to the terms and provisions of the Intercreditor Agreement, there shall be
allowed (and included in the decree for sale in the event of a foreclosure by
judicial action) to be paid out of the Rents or the proceeds of such foreclosure
proceeding and/or sale:

(a)     Secured Obligations. All of the Secured
Obligations and other sums secured hereby which then remain unpaid;

(b)      Other Advances. All other items advanced or paid by Beneficiary pursuant to this Instrument, with interest thereon at the rate set forth in Clause 18.4 of the Intercreditor Agreement from the date of advancement; and

(c)      Costs, Fees and Other Expenses. All court costs, reasonable in-house and outside attorneys' and paralegals' fees and expenses, costs of environmental surveys and guard or other security services, appraiser's fees, advertising costs, notice expenses, expenditures for documentary and expert evidence, stenographer's charges, publication costs, and costs (which may be estimated as to items to be expended after entry of the decree) of procuring all abstracts of title, title searches and examinations, title guarantees, title insurance policies, surveys, and similar data with respect to title which Beneficiary may deem necessary. All such expenses shall become additional Secured Obligations and be immediately due and payable, with interest thereon at the rate set forth in Clause 18.4 of the Intercreditor Agreement, when paid or incurred by Beneficiary or Trustee in connection with any proceedings, including, but not limited to, probate and bankruptcy proceedings, to which Beneficiary or Trustee shall be a party, either as plaintiff, claimant or defendant, by reason of this Instrument or any indebtedness hereby secured or in connection with the preparations for the commencement of any suit for the foreclosure, whether or not actually commenced, or sale under the power of sale herein granted.

Section 4.03.      Cumulative Remedies; Delay or Omission Not a Waiver. Each remedy or right of Beneficiary shall not be exclusive of, but shall be in addition to, every other remedy or right now or hereafter existing at law or in equity. No delay in the exercise or omission to exercise any remedy or right accruing on the occurrence or existence of any Material Default or Enforcement Event shall impair any such remedy or right or be construed to be a waiver of any such Material Default or Enforcement Event or acquiescence therein, nor shall it affect any subsequent Material Default or Enforcement Event of the same or different nature. Every such remedy or right may be exercised concurrently or independently and when and as often as may be deemed expedient by Beneficiary. The acceptance by Beneficiary, any successor administrative agent or any secured party of any payment less than the amount of the Secured Obligation in question shall be deemed to be an acceptance on account only and shall not be construed

as a waiver of any Material Default or Enforcement Event with respect thereto,
and the acceptance by Beneficiary, any successor administrative agent or any secured party of any payment of, or on account of, any Secured Obligation shall
not be deemed to be a waiver of any Material Default or Enforcement Event other
occurrence hereunder or under any Relevant Documents with respect to any other
Secured Obligation. If Beneficiary has proceeded to enforce any remedy or right
hereunder or with respect hereto by foreclosure, sale, entry or otherwise, it may compromise, discontinue or abandon such

11

proceeding for any reason without notice to Trustor or any other party (except
any other agent, the Secured Creditors or the other secured parties to the extent required by any Relevant Documents); and, if any such proceeding shall be
discontinued, abandoned or determined adversely for any reason, Trustor and Beneficiary shall retain and be restored to their former positions and rights hereunder with respect to the Mortgaged Property, subject to the lien hereof except to the extent any such adverse determination specifically provides to the
contrary.

Section 4.04.    Beneficiary's Remedies against Multiple Parcels. If
more than one property, lot or parcel is covered by this Instrument, and if this
Instrument is foreclosed upon, or judgment is entered upon any Secured Obligations, or if Trustee effects a trustee's sale under power of sale, execution may be made upon or Trustee may effect a trustee's sale against any one or more of the properties, lots or parcels and not upon the others, or upon
all of such properties or parcels, either together or separately, and at different times or at the same time, and execution sales or trustee's sale herein granted may likewise be conducted separately or concurrently, in each case at Beneficiary's election.

Section 4.05.    No Merger. In the event of a foreclosure of this Instrument or any other mortgage or deed of trust securing the Secured Obligations, the Secured Obligations then due to the Beneficiary shall not be merged into any decree of foreclosure entered by the court, and Beneficiary may
concurrently or subsequently seek to foreclose one or more other deeds of trust
which also secure said Secured Obligations.

Section 4.06.    Waivers by Trustor. To the fullest extent permitted
under applicable law, Trustor shall not assert, and hereby irrevocably waives,

any right or defense Trustor may have under any statute or rule of law or equity now or hereafter in effect relating to (a) homestead exemption, extension, moratorium, stay, redemption, marshaling of the Mortgaged Property or the other assets of Trustor, sale of the Mortgaged Property in any order or notice of deficiency or intention to accelerate any Secured Obligation, (b) impairment of any right of subrogation or reimbursement, (c) any requirement that at any time any action must be taken against any other party, any portion of the Mortgaged Property or any other asset of Trustor or any other party, (d) any provision barring or limiting the right of Beneficiary to sell any Mortgaged Property after any other sale of any other Mortgaged Property or any other action against Trustor or any other party, (e) any provision barring or limiting the recovery by Beneficiary of a deficiency after any sale of the Mortgaged Property, (f) any other provision of applicable law which shall defeat, limit or adversely affect any right or remedy of Beneficiary or any secured party under or with respect to this Instrument or any other Relevant Documents as it relates to any Mortgaged Property, (g) the right of Beneficiary to foreclose this Instrument in its own name on behalf of all of the secured parties by judicial action as the real party in interest without the necessity of joining any secured party, or (h) the Guarantees, including, without limitation, notice of existence, creation or incurring of any new or additional indebtedness or obligation or of any action or non-action on the part of Trustor or the Issuer, Beneficiary or any Secured Creditor or on the part of any person whomsoever under the Intercreditor Agreement, this Instrument or any of the other Relevant Documents in connection with any obligation or evidence of indebtedness held by Beneficiary, as Security Trustee for the Secured Creditors, or held by any of the Secured Creditors. Appraisement of the Premises is hereby expressly waived, at the option of Beneficiary, which such option shall be executed prior to the time any judgment is tendered at foreclosure.

Section 4.07.     Jurisdiction and Process. (a) To the extent permitted under applicable law, in any suit, action or proceeding arising out of or relating to this Instrument or any other Relevant Documents insofar and only insofar as it relates to any Mortgaged Property, Trustor (i) irrevocably consents to the non-exclusive jurisdiction of any state or federal court sitting in which the Premises is located and irrevocably waives any defense or objection which it may now or hereafter have to the jurisdiction of

12

such court or the venue of such court or the convenience of such court as the forum for any such suit, action or proceeding, and (ii) irrevocably consents to

the service of (A) any process in accordance with applicable law in any such suit, action or proceeding, or (B) any notice relating to any sale, or the exercise of any other remedy by Beneficiary hereunder by mailing a copy of such

process or notice by United States registered or certified mail, postage prepaid, return receipt requested to Trustor at its address specified in or pursuant to Section 5.01; such service to be effective in accordance with applicable law.

(b)      Nothing in this Section shall affect the right of Beneficiary to bring any suit, action or proceeding arising out of or relating

to this Instrument, or any other Relevant Documents in any court having jurisdiction under the provisions therein or applicable law or to serve any process, notice of sale or other notice in any manner permitted by this Instrument, the other Relevant Documents or applicable law.

Section 4.08.      Concerning Beneficiary. (a) Beneficiary is authorized

to take all such action as is provided to be taken by it as Beneficiary hereunder and all such other action incidental thereto, subject to the terms and

provisions of the Intercreditor Agreement. As to any matters not expressly provided for herein (including the timing and methods of realization upon the Mortgaged Property), Beneficiary shall, in addition, act or refrain from acting

in accordance with the terms and provisions of the Intercreditor Agreement. Beneficiary shall not be responsible for the existence, genuineness or value of

any of the Mortgaged Property or for the validity, perfection, priority or enforceability of the lien of this Instrument on any of the Mortgaged Property,

whether impaired by operation of law or by reason of any action or omission to

act on its part hereunder. Beneficiary shall have the right, but shall have no

duty, to ascertain or inquire as to the performance or observance of any of the

terms of this Instrument by Trustor.

(b)      Beneficiary may, at any time, delegate by power of attorney or otherwise to any person(s) or entity(ies) the ability to exercise any or all of the rights, powers and discretions vested in it by this Instrument

or appoint any person or entity to act as additional Beneficiary or as co-trustee for the purpose of this Instrument, in accordance with and subject to

the terms of Clause 16 of the Intercreditor Agreement.

(c)     In the event that Beneficiary acts as Trustor's attorney in fact or otherwise as its agent as provided for under this Instrument, Trustor shall ratify and confirm all things done and all documents executed by Beneficiary in the exercise or purported exercise of all or any of such powers or acts.

ARTICLE V

MISCELLANEOUS

Section 5.01.     Notices. Except as otherwise provided herein, all communication required or permitted to be given in connection with this Instrument shall be in writing, and shall be given or served in the manner and to the address, and deemed received, as provided in clause 20 of the Intercreditor Agreement. All communications to Trustee shall be sent to Trustee at:

13

if to Trustee:

Ward Williford
c/o First American Title Insurance Company
1909 Woodall Rodgers Freeway, Suite 410
Dallas, Texas 75201
Telecopier No.: (214) 303-0935

Trustee shall, from time to time, have the right to specify as the proper addressee and/or address for the purposes of this Instrument any other party or address in the United States upon giving five (5) days prior written notice in the manner herein prescribed. Trustor's mailing address, as set forth in the opening paragraph hereof or as changed pursuant to the provision hereof, is true and correct.

Section 5.02.     Extension of Payments and Other Modifications. Trustor agrees that, without affecting the liability of any person for payment of the Secured Obligations or affecting the lien of this Instrument upon the Mortgaged Property or any part thereof (other than persons or property explicitly released as a result of the exercise by Beneficiary or Trustee of their rights and privileges hereunder), Beneficiary may (without obligation), at any time and from time to time, on request of Trustor made in accordance with the terms and provisions of the Intercreditor Agreement, without notice to any person liable for payment of any Secured Obligations or to any other person or

entity, extend the time, or agree to alter or amend the terms of payment of such
Secured Obligations; provided, however, that such actions of Beneficiary are expressly limited by the terms and provisions of the Intercreditor Agreement. Trustor further agrees that any part of the security herein described may be released with or without consideration without affecting the remainder of the Secured Obligations, the remainder of the security or the lien of this Instrument.

Section 5.03.    Governing Law. Trustor agrees that this Instrument is
to be construed, governed and enforced in accordance with the laws of the State.
Wherever possible, each provision of this Instrument shall be interpreted in such manner as to be effective and valid under applicable law, but if any provision of this Instrument shall be prohibited by or invalid under applicable
law, such provision shall be ineffective only to the extent of such prohibition
or invalidity, without invalidating the remainder of such provision or the remaining provisions of this Instrument.

Section 5.04.    Satisfaction of Mortgage. Upon satisfaction of the conditions set forth in Section 5.3 of the Intercreditor Agreement, this conveyance or lien shall be null and void and, upon demand therefor following such satisfaction, a satisfaction of mortgage or reconveyance of the Mortgaged
Property and any other documents required to release the lien of this Instrument
shall promptly be provided by Beneficiary to Trustor, at Trustor's sole expense,
without recourse to, or any representation or warranty by, the Beneficiary or any of its nominees.

Section 5.05.    Successors and Assigns Included in Parties. This Instrument shall be binding upon Trustor and upon the successors, assigns and vendees of Trustor and shall inure to the benefit of Beneficiary's successors and assigns and any principals it represents as agent; all references herein to
Trustor and to Beneficiary or Trustee shall be deemed to include their successors and assigns and, as to Beneficiary, any principals it represents as
agent. Trustor's successors and assigns shall include, without limitation, a receiver, trustee or debtor in possession of or for Trustor. Wherever used, the
singular number shall include the plural, the plural shall include the singular,
and the use of any gender shall be applicable to all genders.

14

Section 5.06.    Waiver of Appraisement, Valuation, Stay, Extension and Redemption Laws. Trustor agrees, to the full extent permitted by law, that

{02780774.DOCX / }

in case of an Enforcement Event, neither Trustor nor anyone claiming through or
under it shall or will set up, claim or seek to take advantage of any appraisement, valuation, stay, or extension laws now or hereafter in force, in
order to prevent or hinder the enforcement or foreclosure of this Instrument or
the absolute sale of the Mortgaged Property or the final and absolute putting into possession thereof, immediately after such sale, of the purchaser thereat,
and Trustor, for itself and all who may at any time claim through or under it,
hereby waives, to the full extent that it may lawfully so do, the benefit of all
such laws, and any and all right to have the assets comprising the Mortgaged Property marshalled upon any foreclosure of the lien hereof and agrees that Trustee, or any court having jurisdiction to foreclose such lien may sell the Mortgaged Property in part or as an entirety. Trustor represents that it has been authorized to, and Trustor does hereby waive to the full extent permitted
by law any and all statutory or other rights of redemption from sale under power
of sale or from sale under any order or decree of foreclosure of this Instrument, on its own behalf and on behalf of each and every person acquiring
any interest in or title to the Mortgaged Property subsequent to the date hereof.

          Section 5.07.      Interpretation with Other Documents.
Notwithstanding
anything in this Instrument to the contrary, (a) in the event of a conflict or
inconsistency between this Instrument and the provisions of the Intercreditor Agreement, the provisions of the Intercreditor Agreement shall govern, and (b)
the exercise of any right or remedy by Beneficiary under this Instrument shall
be done in accordance with and is subject to the terms and provisions of the Intercreditor Agreement.

          Section 5.08.      Future Advances. The parties hereto intend that, in
addition to any other debt or obligation secured hereby, this Instrument shall
secure unpaid balances of loan advances and other extensions of credit made after this Instrument is delivered to the appropriate recording offices of the
State, whether such advances or extensions of credit made are obligatory or otherwise, and such future advances or extensions of credit shall be secured to
the same extent as if such advances or extensions of credit were made on the date hereof, although there may be no advance or extensions of credit made at the time of the execution hereof and although there may be no indebtedness outstanding at the time any advance or extension of credit is made. Such unpaid
balances of loan advances and other extensions of credit may or may not be evidenced by notes executed pursuant to the applicable Relevant Documents.

{02780774.DOCX / }