## SCHEDULE OF EXCHANGES OF INTERESTS IN THE GLOBAL NOTE[*][1]

The initial outstanding principal amount of this Global Note is $_____. The following exchanges of a part of this Global Note for an interest in another Global Note or for a Definitive Note, or exchanges of a part of another Global or Definitive Note for an interest in this Global Note, have been made:

| Date of Exchange | Amount of decrease in Principal Amount | Amount of increase in Principal Amount of this Global Note | Principal Amount of this Global Note following ~~such~~ each decrease or increase | Signature of authorized officer of Trustee or Custodian |
|---|---|---|---|---|
|  |  |  |  |  |

---

\* This schedule should be included only if the Senior Note is issued in global form.

---

[1]        This schedule should be included only if the Senior Toggle Note is issued in global form.

Confidential

EXHIBIT A-3

[Face of Senior Cash Pay Note — Fixed Rate]

*[Insert the Global Note Legend, if applicable pursuant to the provisions of the Indenture]*

*[Insert the Private Placement Legend, if applicable pursuant to the provisions of the Indenture]*

*[Insert the Regulation S Temporary Global Note Legend, if applicable pursuant to the provisions of the Indenture]*

CUSIP [_____]
ISIN [_____]

[RULE 144A][REGULATION S] GLOBAL NOTE

Senior Cash Pay Notes due 2015

No._____ [$_____]

**TEXAS COMPETITIVE ELECTRIC HOLDINGS COMPANY LLC**
**TCEH FINANCE, INC.**

promise to pay to CEDE & CO. or registered assigns, the principal sum [set forth on the Schedule of Exchanges of Interests in the Global Note attached hereto] [of _____ United States Dollars] on October 15, 2015.

Interest Payment Dates:  April 15 and October 15

Record Dates:  April 1 and October 1

**[SIGNATURE PAGE FOLLOWS]**

Confidential

IN WITNESS HEREOF, the Issuer has caused this instrument to be duly executed.

Dated: [_____], 20[___]

TEXAS COMPETITIVE ELECTRIC HOLDINGS
COMPANY LLC

By:
    Name:
    Title:

TCEH FINANCE, INC.

By:
    Name:
    Title:

Confidential

CUSIP [~~_____~~]

ISIN [~~_____~~][1]

### [[RULE 144A][REGULATION S] GLOBAL NOTE
~~representing up to~~
~~$[_____]~~

[~~____~~]%This is one of the Senior Cash Pay Notes ~~due 2015~~

~~No. _____     [$_____]~~
### ~~FIRST DATA CORPORATION~~

~~promises to pay to CEDE & CO. or registered assigns, the principal sum [set forth on the Schedule of Exchanges of Interests in the Global Note attached hereto] [of _____ United States Dollars] on September 24, 2015.~~

~~Interest Payment Dates:  March 31 and September 30~~

~~Record Dates:  March 15 and September 15~~

---

~~[1]      Rule 144A Note CUSIP:~~
~~Rule 144A Note ISIN:~~
~~Regulation S Note CUSIP:~~
~~Regulation S Note ISIN:~~
~~Exchange Note CUSIP:~~
~~Exchange Note ISIN:~~

Confidential

EFIHMW00293876

**PX 003D**
**Page 179 of 222**

~~IN WITNESS HEREOF, the Issuer has caused this instrument to be duly executed.~~

~~Dated: [          ], 20[ ]~~

~~FIRST DATA CORPORATION~~

~~By:~~ _____
~~Name:~~
~~Title:~~

Confidential

EFIHMW00293877

**PX 003D**
**Page 180 of 222**

~~This is one of the Cash Pay Notes referred to in the within-mentioned Indenture:~~

~~[————],~~
~~as Trustee~~

~~By:~~ _____
~~Authorized Signatory~~referred to in the
within-mentioned Indenture:

[TRUSTEE], as Trustee

By:
    Authorized Signatory

Confidential                                                    EFIHMW00293878

**PX 003D**
**Page 181 of 222**

[Back of Senior Cash Pay Note]

[  ]% Senior Cash Pay Notes due 2015

Capitalized terms used herein shall have the meanings assigned to them in the Indenture referred to below unless otherwise indicated.

1.    INTEREST.    First    Data    Corporation,    a    Delaware    corporation,    promises(1) *INTEREST.*  Texas Competitive Electric Holding Company LLC, a Texas limited liability company and TCEH Finance, Inc., a Texas corporation (collectively, the "Issuers"), promise to pay interest on the principal amount of this Senior Cash Pay Note at [   ]% per annum from [         ][ ], 20[ ] until maturity and shall pay the Additional Interest, if any, payable pursuant to the Registration Rights Agreement referred to below.  The Issuer will pay interest and Additional Interest, if any, semi-annually in arrears on March 31April 15 and September 30October 15 of each year, or if any such day is not a Business Day, on the next succeeding Business Day (each, an "Interest Payment Date").  Interest on the Senior Cash Pay Notes will accrue from the most recent date to which interest has been paid or, if no interest has been paid, from the date of issuance; provided that the first Interest Payment Date shall be [          ], 20[ ].  The Issuer will pay interest (including post-petition interest in any proceeding under any Bankruptcy Law) on overdue principal and premium, if any, from time to time on demand at the interest rate on the Senior Cash Pay Notes; it shall pay interest (including post-petition interest in any proceeding under any Bankruptcy Law) on overdue installments of interest and Additional Interest, if any, (without regard to any applicable grace periods) from time to time on demand at the interest rate on the Senior Cash Pay Notes.  Interest will be computed on the basis of a 360-day year comprised of twelve 30-day months.

2.    METHOD OF PAYMENT(2)  *METHOD OF PAYMENT.*  The Issuer will pay interest on the Senior Cash Pay Notes and Additional Interest, if any, to the Persons who are registered Holders of Senior Cash Pay Notes at the close of business on the March 15 and September 15April 1 or October 1 (whether or not a Business Day), as the case may be, next preceding the Interest Payment Date, even if such Senior Cash Pay Notes are canceled after such Record Date and on or before such Interest Payment Date, except as provided in Section 2.12 of the Indenture with respect to defaulted interest.  Payment of Cash Interestinterest and Additional Interest, if any, may be made by check mailed to the Holders at their addresses set forth in the register of Holders;; provided that payment by wire transfer of immediately available funds will be required with respect to principal of and interest, premium and Additional Interest, if any, on all Global Notes and all other Senior Cash Pay Notes the Holders of which shall have provided wire transfer instructions to the Issuer or the Paying Agent.  Such payment shall be in such coin or currency of the United States of America as at the time of payment is legal tender for payment of public and private debts.

3.    PAYING AGENT AND REGISTRAR(3)    *PAYING AGENT AND REGISTRAR.*  Initially, [    TRUSTEE], the Trustee under the Indenture, will act as Paying Agent and Registrar.  The Issuer may change any Paying Agent or Registrar without notice to the Holders.  The Issuer or any of its Subsidiaries may act in any such capacity.

4.    INDENTURE(4)    *INDENTURE.*  The Issuer issued the Senior Cash Pay Notes under a Senioran Indenture, dated as of [        ][ ], 20[ ] (the "Indenture"), among First Data Corporationthe Issuer, the Guarantors named therein and the Trustee.  This Senior Cash Pay Note is one of a duly authorized issue of notes of the Issuer designated as its Senior Cash Pay Notes due 2015.  The Issuer shall be entitled to issue Additional Senior Cash Pay Notes pursuant to Sections 2.01 and 4.09 of the Indenture. The Senior Cash Pay Notes (including any Exchange Notes issued in exchange therefor) and the PIKSenior Toggle Notes issued under the Indenture (including any Exchange Notes issued in exchange therefor) (collectively, referred to herein as the "Senior Notes") are separate series of Senior Notes, but shall be

Confidential

treated as a single class of securities under the Indenture, unless otherwise specified in the Indenture. The terms of the Senior Cash Pay Notes include those stated in the Indenture and those made part of the Indenture by reference to the Trust Indenture Act of 1939, as amended (the "Trust Indenture Act"). The Senior Cash Pay Notes are subject to all such terms, and Holders are referred to the Indenture and such Act for a statement of such terms. To the extent any provision of this Senior Cash Pay Note conflicts with the express provisions of the Indenture, the provisions of the Indenture shall govern and be controlling.

        5.        OPTIONAL REDEMPTION.

        (5)        *OPTIONAL REDEMPTION.*

        (a)        Except as set forth below, the Issuer will not be entitled to redeem Senior Cash Pay Notes at its option prior to September 30,October 15, 2011.

        (b)        At any time prior to September 30,October 15, 2011, the Issuer may redeem all or a part of the Senior Cash Pay Notes that are Fixed Rate Notes, upon not less than 30 nor more than 60 days' prior notice mailed by first- class mail to the registered address of each Holder of Cash Pay Notes or otherwise in accordance with the procedures of DTC, at a redemption price equal to 100% of the principal amount of the Senior Cash Pay Notes redeemed plus the Applicable Premium as of, andplus accrued and unpaid interest, and Additional Interest, if any, to the date of redemption (the "Redemption Date"), subject to the rightsright of Holders of Senior Cash Pay Notes of record on the relevant Record Date to receive interest due on the relevant Interest Payment Date.

        (c) On  From and after September 30,October 15, 2011, the Issuer may redeem the Senior Cash Pay Notes that are Fixed Rate Notes, in whole or in part, upon not less than 30 nor more than 60 days' prior notice mailed by first- class mail to the registered address of each Holder of Senior Cash Pay Notes or otherwise in accordance with the procedures of DTC, at a redemption price equal to 100% of the principal amount thereof, plus the Specified Premium with respect thereto, plus accrued and unpaid interest thereon and Additional Interest, if any, to the applicable Redemption Date, subject to the right of Holders of Senior Cash Pay Notes of record on the relevant Record Date to receive interest due on the relevant Interest Payment Date.

        (d)        In addition, until September 30,Prior to October 15, 2010, the Issuer may, at its option, on one or more occasions, redeem up to 35% of the aggregate principal amount of all Senior Cash Pay Notes that are Fixed Rate Notes at a redemption price equal to 100% of the aggregate principal amount thereof, plus a premium equal to the Applicable Rate, plus accrued and unpaid interest thereon and Additional Interest, if any, to the applicable Redemption Date, subject to the right of Holders of Senior Cash Pay Notes of record on the relevant Record Date to receive interest due on the relevant Interest Payment Date, with the net cash proceeds of one or more Equity Offerings; provided (i) that at least 50% of the sum of the original aggregate principal amount of Initial Senior Cash Pay Notes issued under this Indenture and the original principal amount ofand any Additional Notes that areSenior Cash Pay Notes issued under thisthe Indenture after the Initial IssueClosing Date remains outstanding immediately after the occurrence of each such redemption and (ii); provided further that each such redemption occurs within 90 days of the date of closing of each such Equity Offering. Notice of any redemption upon any Equity Offerings may be given prior to the redemption thereof, and any such redemption or notice may, at the Issuer's option and discretion, be subject to one or more conditions precedent, including, but not limited to, completion of anthe related Equity Offering or other corporate transaction.

        (e)        If the Issuer redeems less than all of the outstanding Senior Cash Pay Notes, the Trustee shall select the Senior Cash Pay Notes to be redeemed in the manner described under Section 3.02 of the Indenture.

NYDOCS01/1148615.6                    7 A-3-7

(f)       Any redemption pursuant to this paragraph 5 shall be made pursuant to the provisions of Sections 3.01 through 3.06 of the Indenture.

6.       MANDATORY REDEMPTION(6)       *MANDATORY REDEMPTION.*  The Issuer shall not be required to make mandatory redemption or sinking fund payments with respect to the Senior Cash Pay Notes.

7.       NOTICE OF REDEMPTION(7)*NOTICE OF REDEMPTION.*  Subject to Section 3.03 of the Indenture, notice of redemption will be mailed by first-class mail at least 30 days but not more than 60 days before the Redemption Date (except that redemption notices may be mailed more than 60 days prior to a Redemption Date if the notice is issued in connection with Article 8 or Article 11 of the Indenture) to each Holder whose Senior Cash Pay Notes are to be redeemed at its registered address. or otherwise in accordance with the procedures of DTC. Senior Cash Pay Notes in denominations larger than $2,000 may be redeemed in part but only in whole multiples of $1,000 in excess thereof, unless all of the Senior Cash Pay Notes held by a Holder are to be redeemed.  On and after the Redemption Date interest ceases to accrue on Senior Cash Pay Notes or portions thereof called for redemption.

8.       OFFERS TO REPURCHASE.

(8)       *OFFERS TO REPURCHASE.*

(a)       Upon the occurrence ofIf a Change of Control occurs, the Issuer shall make an offer (a "Change of Control Offer") to each Holder to repurchasepurchase all or any part (equal to $2,000 or an integral multiple of $1,000 in excess thereof) of each Holder's Senior Cash Pay Notes at a purchase price equal to 101[●]% of the aggregate principal amount thereof plus accrued and unpaid interest and Additional Interest thereon, if any, to the date of purchase (the "Change of Control Payment"), subject to the right of Holders of Senior Cash Pay Notes of record on the relevant Record Date to receive interest due on the relevant Interest Payment Date.  The Change of Control Offer shall be made in accordance with Section 4.14 of the Indenture.

(b)       If the Issuer or any of its Restricted Subsidiaries consummates an Asset Sale, within 10ten Business Days of each date that the aggregate amount of Excess Proceeds exceeds $200.0 million, the Issuer shall make an offer to all Holders of the Senior Notes and to Lenders of the Senior Interim Loans, as applicable, and, if required or permitted by the terms of any Senior Indebtedness (including the Senior Interim Loan Agreement), to the holders of such Senior Indebtedness (an "Asset Sale Offer"), to purchase the maximum aggregate principal amount of the Senior Notes or Senior Interim Loans, as applicable, and such Senior Indebtedness that is a minimum of $2,000 or an integral multiple of $1,000 in excess thereof that may be purchased out of the Excess Proceeds at an offer price in cash in an amount equal to 100% of the principal amount thereof, plus accrued and unpaid interest and Additional Interest, if any, to the date fixed for the closing of such offer, in accordance with the procedures set forth in the Indenture.  To the extent that the aggregate amount of Senior Notes or Senior Interim Loans, as applicable, and such Senior Indebtedness tendered pursuant to an Asset Sale Offer is less than the Excess Proceeds, the Issuer may use any remaining Excess Proceeds for general corporate purposes, subject to other covenants contained in the Indenture or the Senior Interim Loan Agreement, as applicable.  If the aggregate principal amount of Senior Notes or Senior Interim Loans, as applicable, or other such Senior Indebtedness surrendered by such holders thereof exceeds the amount of Excess Proceeds, the Trustee shall select the Senior Notes and Senior Interim Loans, as applicable, and such Senior Indebtedness to be purchased on a *pro rata* basis based on the accreted value or principal amount of the Senior Notes or Senior Interim Loans, as applicable, or such Senior Indebtedness tendered.  Upon completion of any such Asset Sale Offer, the amount of Excess Proceeds shall be reset at zero.

Confidential                                    EFIHMW00293881
PX 003D
Page 184 of 222

(c)      The Issuer may, at its option, make an Asset Sale Offer using proceeds from any Asset Sale at any time after consummation of such Asset Sale; provided that such Asset Sale Offer shall be in an aggregate amount of not less than $~~25.0~~25 million.  Upon consummation of such Asset Sale Offer, any Net Proceeds not required to be used to purchase Senior Notes shall not be deemed Excess Proceeds.

~~9.      DENOMINATIONS, TRANSFER, EXCHANGE~~(9)     *DENOMINATIONS, TRANSFER, EXCHANGE*.  The Senior Cash Pay Notes are in registered form without coupons in denominations of $2,000 and integral multiples of $1,000 in excess thereof.  The transfer of Senior Cash Pay Notes may be registered and Senior Cash Pay Notes may be exchanged as provided in the Indenture.  The Registrar and the Trustee may require a Holder, among other things, to furnish appropriate endorsements and transfer documents and the Issuer may require a Holder to pay any taxes and fees required by law or permitted by the Indenture.  The Issuer need not exchange or register the transfer of any Senior Cash Pay Notes or portion of a Senior Cash Pay Notes selected for redemption, except for the unredeemed portion of any Senior Cash Pay Notes being redeemed in part.  Also, the Issuer need not exchange or register the transfer of any Senior Cash Pay Notes for a period of 15 days before a selection of Senior Cash Pay Notes to be redeemed.

~~10.      PERSONS DEEMED OWNERS~~(10)    *PERSONS DEEMED OWNERS*.    The registered Holder of a Senior Cash Pay Note may be treated as its owner for all purposes.

~~11.      AMENDMENT, SUPPLEMENT AND WAIVER~~(11)     *AMENDMENT, SUPPLEMENT AND WAIVER*.  The Indenture, the Guarantees or the Senior Cash Pay Notes may be amended or supplemented as provided in the Indenture.

~~12.      DEFAULTS AND REMEDIES~~(12)    *DEFAULTS AND REMEDIES*.  The Events of Default relating to the ~~Cash Pay~~Senior Notes are defined in Section 6.01~~(a)~~ of the Indenture.  If any Event of Default occurs and is continuing, the Trustee or the Holders and Lenders of at least 30% in aggregate principal amount of the then ~~total~~ outstanding Senior Notes and Senior Interim Loans may declare the principal, premium, if any, interest and any other monetary obligations on all the then outstanding Senior Notes to be due and payable immediately.  Notwithstanding the foregoing, in the case of an Event of Default arising from certain events of bankruptcy or insolvency, all outstanding Senior Notes will become due and payable immediately without further action or notice.  Holders may not enforce the Indenture, the ~~Cash Pay~~Senior Notes or the Guarantees except as provided in the Indenture.  Subject to certain limitations, ~~the Required~~ Holders may direct the Trustee in its exercise of any trust or power.  The Trustee may withhold from Holders of the ~~Cash Pay~~Senior Notes notice of any continuing Default (except a Default relating to the payment of principal, premium, if any, Additional Interest, if any, or interest) if it determines that withholding notice is in their interest.  The Required Holders by notice to the Trustee may on behalf of the Holders of all of the Senior Notes waive any existing Default or and its consequences under the Indenture except a continuing Default in payment of the principal of, premium, if any, Additional Interest, if any, or interest on, any of the Senior Notes held by a non-consenting Holder.  The Issuer and each Guarantor (to the extent that such Guarantor is so required under the Trust Indenture Act) is required to deliver to the Trustee annually a statement regarding compliance with the Indenture, and the Issuer is required within five (5) Business Days after becoming aware of any Default, to deliver to the Trustee a statement specifying such Default and what action the Issuer proposes to take with respect thereto.

~~13.      AUTHENTICATION~~(13)     *AUTHENTICATION*.  This Senior Cash Pay Note shall not be entitled to any benefit under the Indenture or be valid or obligatory for any purpose until authenticated by the manual signature of the Trustee.

~~14.      ADDITIONAL RIGHTS OF HOLDERS OF RESTRICTED GLOBAL NOTES AND RESTRICTED DEFINITIVE NOTES~~(14)     *ADDITIONAL RIGHTS OF HOLDERS OF RESTRICTED GLOBAL NOTES AND RESTRICTED DEFINITIVE NOTES*.  In addition to the rights provided to Holders of Senior Cash

NYDOCS01/1148615.6                                9 A-3-9

EFIHMW00293882

Pay Notes under the Indenture, Holders of Restricted Global Notes and Restricted Definitive Notes shall have all the rights set forth in the Registration Rights Agreement, dated as of [          ], 20[  ], among ~~First Data Corporation~~the Issuer, the Guarantors named therein and the other parties named on the signature pages thereof (the "Registration Rights Agreement"), including the right to receive Additional Interest, if any (as defined in the Registration Rights Agreement).

~~15.~~(15) *GOVERNING LAW.* THE INDENTURE, THE SENIOR CASH PAY NOTES AND ANY GUARANTEE WILL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK.

~~16.~~(16) *CUSIP/ISIN* ~~NUMBERS~~*NUMBERS*. Pursuant to a recommendation promulgated by the Committee on Uniform Security Identification Procedures, the Issuer has caused CUSIP/ISIN numbers to be printed on the Senior Cash Pay Notes and the Trustee may use CUSIP/ISIN numbers in notices of redemption as a convenience to Holders. No representation is made as to the accuracy of such numbers either as printed on the Senior Cash Pay Notes or as contained in any notice of redemption and reliance may be placed only on the other identification numbers placed thereon.

The Issuer will furnish to any Holder upon written request and without charge a copy of the Indenture and/or the Registration Rights Agreement. Requests may be made to the Issuer at the following address:

c/o TXU Corp.
Energy Plaza
1601 Bryan Street
Dallas, Texas 75201-3411
Facsimile No.:

~~c/o First Data Corporation~~
~~6200 South Quebec Street~~
~~Greenwood Village, Colorado 80111~~
~~Fax No.:  (303) 967-7303~~
~~Attention:  Treasurer~~

NYDOCS01/1148615.6                                   ~~10~~ A-3-10

**ASSIGNMENT FORM**

To assign this Senior Cash Pay Note, fill in the form below:

(I) or (we) assign and transfer this Senior Cash Pay Note to: _____

(Insert assignee's legal name)

(Insert assignee's Soc. Sec. or tax I.D. no.)

(Print or type assignee's name, address and zip code)

~~(I) or (we) assign and transfer this Cash Pay Note to:~~ _____

~~(Insert assignee' legal name)~~

~~(Insert assignee's soc. sec. or tax I.D. no.)~~

~~(Print or type assignee's name, address and zip code)~~

and irrevocably appoint _____
to transfer this Senior Cash Pay Note on the books of the Issuer.  The agent may substitute another to act for him.

~~Date:~~ _____

Date: _____

Your Signature

(Sign exactly as your name appears on the face of this Senior Cash Pay Note)

Signature Guarantee*: _____

Confidential

Your Signature: _____
    (Sign exactly as your name appears on the face of this Cash Pay Note)


Signature Guarantee*: _____ \* \* Participant in a recognized Signature
Guarantee Medallion Program (or other signature guarantor acceptable to the Trustee).

NYDOCS01/1148615.6          12 A-3-12

Confidential

## OPTION OF HOLDER TO ELECT PURCHASE

     If you want to elect to have this Senior Cash Pay Note purchased by the Issuer pursuant to Section 4.10 or 4.14 of the Indenture, check the appropriate box below:

            ☐ Section 4.10      ☐ Section 4.14

[  ] Section 4.10     [  ] Section 4.14

     If you want to elect to have only part of this Senior Cash Pay Note purchased by the Issuer pursuant to Section 4.10 or Section 4.14 of the Indenture, state the amount you elect to have purchased:

                $ _____

Date: _____

              Your Signature: _____

                  (Sign exactly as your name appears on the face of
                        this Senior Cash Pay Note)

              Tax Identification No.: _____

Signature Guarantee*: _____

$ _____

Date: _____

              Your Signature: _____
              (Sign exactly as your name appears on the face of
              this Cash Pay Note)
              Tax Identification No.: ___

Signature Guarantee*: _____

*  * Participant in a recognized Signature Guarantee Medallion Program (or other signature guarantor acceptable to the Trustee).

Confidential

## SCHEDULE OF EXCHANGES OF INTERESTS IN THE GLOBAL NOTE*[1]

The initial outstanding principal amount of this Global Note is $ _____. The following exchanges of a part of this Global Note for an interest in another Global Note or for a Definitive Note, or exchanges of a part of another Global or Definitive Note for an interest in this Global Note, have been made:

| Date of Exchange | Amount of decrease in Principal Amount | Amount of increase in Principal Amount of this Global Note | Principal Amount of this Global Note following such each decrease or increase | Signature of authorized officer of Trustee or Custodian |
|---|---|---|---|---|
| | | | | |

*This schedule should be included only if the Senior Note is issued in global form.

[1] This schedule should be included only if the Senior Cash Pay Note is issued in global form.

Confidential

EXHIBIT A-4

[Face of ~~PIK~~Senior Toggle Note — Fixed Rate]

*[Insert the Global Note Legend, if applicable pursuant to the provisions of the Indenture]*

*[Insert the Private Placement Legend, if applicable pursuant to the provisions of the Indenture]*

*[Insert the Regulation S Temporary Global Note Legend, if applicable pursuant to the provisions of the Indenture]*

*[Insert the Tax Legend, if applicable pursuant to the provisions of the Indenture]*

CUSIP [_____]
ISIN [_____]

[RULE 144A][REGULATION S] GLOBAL NOTE

Senior Toggle Notes due 2016

No._____    [$_____]

**TEXAS COMPETITIVE ELECTRIC HOLDINGS COMPANY LLC**
**TCEH FINANCE, INC.**

promise to pay to CEDE & CO. or registered assigns, the principal sum [set forth on the Schedule of Exchanges of Interests in the Global Note attached hereto] [of _____ United States Dollars] on October 15, 2016.

Interest Payment Dates:  April 15 and October 15

Record Dates: April 1 and October 1

**[SIGNATURE PAGE FOLLOWS]**

Confidential

IN WITNESS HEREOF, the Issuer has caused this instrument to be duly executed.

Dated: [_____], 20[__]

                                        TEXAS COMPETITIVE ELECTRIC HOLDINGS
                                              COMPANY LLC

By:
     Name:
     Title:


TCEH FINANCE, INC.

By:
     Name:
     Title:

Confidential                                                                    EFIHMW00293889

~~CUSIP  [_____]~~

~~ISIN  [_____]~~[1]

**[RULE 144A][REGULATION S] GLOBAL NOTE**
~~representing up to~~
~~$[_____]~~

~~[  ]% Senior PIK Notes due 2015~~

~~No. ____  [$_____]~~
**~~FIRST DATA CORPORATION~~**

~~promises to pay to CEDE & CO. or registered assigns, the principal sum [set forth on the Schedule of Exchanges of Interests in the Global Note attached hereto] [of _____ United States Dollars] on September 24, 2015.~~

~~Interest Payment Dates:  March 31 and September 30~~

~~Record Dates:  March 15 and September 15~~

---

~~[1]~~ ~~Rule 144A Note CUSIP:~~
~~Rule 144A Note ISIN:~~
~~Regulation S Note CUSIP:~~
~~Regulation S Note ISIN:~~
~~Exchange Note CUSIP:~~
~~Exchange Note ISIN:~~

NYDOCS01/1148615.6      ~~3~~ A-4-3

Confidential

IN WITNESS HEREOF, the Issuer has caused this instrument to be duly executed.

Dated: [_____], 20[__]

                                        FIRST DATA CORPORATION


                                        By: _____
                                            _____ Name: _____
                                            _____ Title: _____

Confidential

~~This is one of the PIK Notes referred to in the within-mentioned Indenture:~~

~~[_____],~~
~~as Trustee~~


~~By:~~ _____
~~Authorized Signatory~~This is one of the Senior
Toggle Notes referred to in the within-mentioned
Indenture:

[TRUSTEE], as Trustee


By:
     Authorized Signatory

Confidential                                                                EFIHMW00293892

**PX 003D**
**Page 195 of 222**

[Back of ~~PIK Note~~]

[  ]% Senior ~~PIK Notes due 2015~~Toggle Note]

Capitalized terms used herein shall have the meanings assigned to them in the Indenture referred to below unless otherwise indicated.

~~1.    INTEREST.    First Data Corporation, a Delaware corporation, promises~~(1) _INTEREST._ Texas Competitive Electric Holding Company LLC, a Texas limited liability company and TCEH Finance, Inc., a Texas corporation (collectively, the "Issuers"), promise to pay interest on the principal amount of this ~~PIK~~Senior Toggle Note at a rate per annum set forth below from [      ][ ], 20[ ] until maturity and shall pay Additional Interest, if any, payable pursuant to the Registration Rights Agreement referred to below.  The Issuer will pay interest and Additional Interest, if any, semi-annually in arrears on ~~March 31~~[●] and ~~September 30~~[●] of each year, or if any such day is not a Business Day, on the next succeeding Business Day (each, an "Interest Payment Date").  Interest on the ~~PIK~~Senior Toggle Notes will accrue from the most recent date to which interest has been paid or, if no interest has been paid, from the date of issuance.  ~~Interest on the PIK Notes will accrue at a rate of [  ]% per annum and be payable (x) with respect to PIK Notes represented by one or more global notes registered in the name of, or held by, The Depository Trust Company ("DTC") or its nominee on the relevant Record Date, by increasing the principal amount of the outstanding global PIK Note by an amount equal to the amount of PIK Interest for the applicable interest period (rounded up to the nearest $1,000) and (y) with respect to PIK Notes represented by certificated notes, by issuing PIK Interest Notes in certificated form in an aggregate principal amount equal to the amount of PIK Interest for the applicable period (rounded up to the nearest whole dollar), and the Trustee will, at the request of the Issuer, authenticate and deliver such PIK Interest Notes in certificated form for original issuance to the Holders on the relevant Record Date, as shown by the records of the register of Holders.  Following an increase in the principal amount of the outstanding global PIK Notes as a result of a PIK Payment, the global PIK Notes will bear interest on such increased principal amount from and after the date of such PIK Payment.  Any PIK Interest Notes issued in certificated form will be dated as of the applicable interest payment date and will bear interest from and after such date.  All PIK Notes issued pursuant to a PIK Payment will mature on September 24, 2015 and will be governed by, and subject to the terms, provisions and conditions of, the Indenture and shall have the same rights and benefits as the PIK Interest Notes issued on the Issue Date.  Any certificated PIK Notes will be issued with the description "PIK" on the face of such PIK Interest Note.~~The Issuer will pay interest (including post-petition interest in any proceeding under any Bankruptcy Law) on overdue principal and premium, if any, from time to time on demand at the interest rate on the ~~PIK~~Senior Toggle Notes; it shall pay interest (including post-petition interest in any proceeding under any Bankruptcy Law) on overdue installments of interest and Additional Interest, if any, (without regard to any applicable grace periods) from time to time on demand at the interest rate on the ~~PIK~~Senior Toggle Notes.  Interest will be computed on the basis of a 360-day year comprised of twelve 30-day months.

Cash Interest on the Senior Toggle Notes will accrue at a rate of [  ]% per annum and be payable in cash.  PIK Interest on the Senior Toggle Notes will accrue at a rate of [  ]% per annum and be payable (x) with respect to Senior Toggle Notes represented by one or more global notes registered in the name of, or held by, The Depository Trust Company ("_DTC_") or its nominee on the relevant Record Date, by increasing the principal amount of the outstanding global Senior Toggle Note by an amount equal to the amount of PIK Interest for the applicable interest period (rounded up to the nearest $1,000) (or, if necessary, pursuant to the requirements of DTC or otherwise, to authenticate new global Senior Toggle Notes executed by the Issuer with such increased principal amounts) and (y) with respect to Senior Toggle Notes represented by certificated notes, by issuing PIK Notes in certificated form in an aggregate principal amount equal to the amount of PIK Interest for the applicable period (rounded up to the nearest whole dollar), and the Trustee will, at the request of the Issuer, authenticate and deliver such PIK Notes in

Confidential                                                                EFIHMW00293893

certificated form for original issuance to the Holders on the relevant Record Date, as shown by the records of the register of Holders.  In the event that the Issuer elects to pay Partial PIK Interest for any interest period, each Holder will be entitled to receive Cash Interest in respect of 50% of the principal amount of the Senior Toggle Notes held by such Holder on the relevant Record Date and PIK Interest in respect of 50% of the principal amount of the Senior Toggle Notes held by such Holder on the relevant Record Date.  Following an increase in the principal amount of the outstanding global Senior Toggle Notes as a result of a PIK Payment, the global Senior Toggle Notes will bear interest on such increased principal amount from and after the date of such PIK Payment.  Any PIK Notes issued in certificated form will be dated as of the applicable Interest Payment Date and will bear interest from and after such date.  All Senior Toggle Notes issued pursuant to a PIK Payment will mature on October 15, 2016 and will be governed by, and subject to the terms, provisions and conditions of, the Indenture and shall have the same rights and benefits as the Senior Toggle Notes issued on the Closing Date.  Any certificated PIK Notes will be issued with the description PIK on the face of such PIK Note.

At the end of any "accrual period" (as defined in Section 1272(a)(5) of the Code) ending after the fifth anniversary of the Closing Date (each, ~~on the "AHYDO redemption date~~an "Optional Interest Repayment Date"), the Issuer may pay in cash all accrued but unpaid ~~interest and all accrued but unpaid~~ "original issue discount" (as defined in Section 1273(a)(1) of the Code) on each Senior ~~PIK Term Loan and/or Senior PIK~~Toggle Note then outstanding up to the Optional Interest Repayment Amount, minus $50,000,000 (each such redemption, an "Optional Interest Repayment").  The "Optional Interest Repayment Amount" shall mean, as of each ~~AHYDO redemption date~~Optional Interest Repayment Date, the excess, if any, of (a) the aggregate amount of accrued and unpaid interest and all accrued and unpaid "original issue discount" (as defined in Section 1273(a)(1) of the Code) with respect to the applicable Senior ~~PIK Term Loan or Senior PIK~~Toggle Note, over (b) an amount equal to the product of (i) the "issue price" (as defined in Sections 1273(b) and 1274(a) of the Code) of the applicable Senior ~~PIK Term Loan or Senior PIK~~Toggle Note multiplied by (ii) the "yield to maturity" (as defined in the Treasury Regulation Section 1.1272-1(b)(1)(i)) of such Senior ~~PIK Term Loan or Senior PIK~~Toggle Note.

On ~~March 31, 2015,~~April 15, 2016, the Issuer shall repay in full in U.S. Dollars an amount of ~~PIK~~Senior Toggle Notes equal to ~~the product of (x) $50,000,000 and (y) the percentage equal to the aggregate principal amount of outstanding PIK Notes divided by the aggregate principal amount of outstanding PIK Notes and Senior PIK Term Loans on such date, as determined in good faith by the Issuer, rounded to the nearest $1,000.  Prepayments of PIK~~$50,000,000.  Prepayments of Senior Toggle Notes made pursuant to the preceding sentence shall be made on a pro rata basis based on the aggregate principal amount of ~~PIK Notes.~~Senior Toggle Notes outstanding.~~(2)      METHOD OF PAYMENT.  For any interest payment period prior to October 15, 2012, the Issuer may, at its option elect to pay interest on the Senior Toggle Notes:~~

(2)      *METHOD OF PAYMENT.*  For any interest payment period prior to October 15, 2012, the Issuer may, at its option elect to pay interest on the Senior Toggle Notes:

(i)      entirely in cash ("Cash Interest")

(ii)      entirely by increasing the principal amount of the outstanding Senior Toggle Notes or by issuing PIK Notes ("PIK Interest"); or

~~2.      METHOD OF PAYMENT.  For any interest payment period after the initial interest payment period and prior to September 30, 2011, the Issuer shall pay interest on the PIK Notes entirely~~(iii)      on 50% of the outstanding principal amount of the Senior Toggle Notes in cash and on 50% of the outstanding principal amount by increasing the principal amount of the outstanding

EFIHMW00293894

PIKSenior Toggle Notes or by issuing PIK ~~Interest~~ Notes ("Partial PIK Interest"). ~~After September 30, 2011,~~.

The Issuer must elect the form of interest payment with respect to each interest period by delivering a notice to the Trustee at least 5 Business Days prior to the beginning of the related interest period. The Trustee shall promptly deliver a corresponding notice to the Holder of this Senior Toggle Note. In the absence of such an election for any interest period, interest on this Senior Toggle Note shall be payable according to the election for the previous interest period. After [●], the Issuer will make all interest payments on ~~the PIK Notes~~this Senior Toggle Note entirely in cash. Notwithstanding anything to the contrary, the payment of accrued interest in connection with any redemption of ~~PIK~~Senior Toggle Notes as described under Sections 3.07, 4.10 and 4.14 of the Indenture shall be made solely in cash.

The Issuer will pay Cash Interest on the ~~PIK~~Senior Toggle Notes and Additional Interest, if any, to the Persons who are registered Holders of ~~PIK~~Senior Toggle Notes at the close of business on the ~~March 15 and September 15~~[●] or [●] (whether or not a Business Day), as the case may be, next preceding the Interest Payment Date, even if such ~~PIK~~Senior Toggle Notes are canceled after such Record Date and on or before such Interest Payment Date, except as provided in Section 2.12 of the Indenture with respect to defaulted interest. ~~Payment~~ Payments of ~~interest~~Cash Interest and Additional Interest, if any, may be made by check mailed to the Holders at their addresses set forth in the register of Holders~~.~~; provided that payment by wire transfer of immediately available funds will be required with respect to principal of and interest, premium and Additional Interest, if any, on all Global Notes and all other Senior Toggle Notes the Holders of which shall have provided wire transfer instructions to the Issuer or the Paying Agent. Such payment shall be in such coin or currency of the United States of America as at the time of payment is legal tender for payment of public and private debts.

~~3.    PAYING AGENT AND REGISTRAR~~(3)    *PAYING AGENT AND REGISTRAR*. Initially, [    TRUSTEE], the Trustee under the Indenture, will act as Paying Agent and Registrar. The Issuer may change any Paying Agent or Registrar without notice to the Holders. The Issuer or any of its Subsidiaries may act in any such capacity.

~~4.    INDENTURE.~~ (4)    *INDENTURE.* The Issuer issued the ~~PIK~~Senior Toggle Notes under a ~~Senior~~an Indenture, dated as of [    ][ ], 20[ ] (the "Indenture"), among ~~First Data Corporation~~the Issuer, the Guarantors named therein and the Trustee. This ~~PIK~~Senior Toggle Note is one of a duly authorized issue of notes of the Issuer designated as its Senior ~~PIK~~Toggle Notes due ~~2015~~2017. The Issuer shall be entitled to issue Additional ~~PIK~~Senior Toggle Notes pursuant to Sections 2.01 and 4.09 of the Indenture. The Senior Cash Pay Notes (including any Exchange Notes issued in exchange therefor) and the ~~PIK~~Senior Toggle Notes issued under the Indenture (including any Exchange Notes issued in exchange therefor) (collectively, referred to herein as the "Senior Notes") are separate series of Senior Notes, but shall be treated as a single class of securities under the Indenture, unless otherwise specified in the Indenture. The terms of the ~~PIK~~Senior Toggle Notes include those stated in the Indenture and those made part of the Indenture by reference to the Trust Indenture Act of 1939, as amended (the "Trust Indenture Act"). The ~~PIK~~Senior Toggle Notes are subject to all such terms, and Holders are referred to the Indenture and such Act for a statement of such terms. To the extent any provision of this ~~PIK~~Senior Toggle Note conflicts with the express provisions of the Indenture, the provisions of the Indenture shall govern and be controlling.

~~5.    OPTIONAL REDEMPTION.~~

(5)    *OPTIONAL REDEMPTION.*

Confidential

(a) Except as set forth below, the Issuer shall not be entitled to redeem ~~PIK~~the Senior Toggle Notes at its option prior to ~~September 30, 2011.~~October 15, 2012.

(b) At any time prior to ~~September 30, 2011,~~October 15, 2012, the Issuer may redeem all or a part of the PIK Notes that are Fixed Rate Notes, upon not less than 30 ~~nor more~~norm ore than 60 days' prior notice mailed by first-class mail to the registered address of each Holder of PIK Notes or otherwise in accordance with the procedures of DTC~~:~~ Senior Toggle Notes at a redemption price equal to 100% of the principal amount of the ~~PIK~~Senior Toggle Notes redeemed ~~as of, and~~plus the Applicable Premium ~~as of, and~~plus accrued and unpaid interest and Additional Interest, if any, to the date of redemption (the "Redemption Date"), subject to the ~~rights~~right of Holders of ~~PIK~~Senior Toggle Notes of record on the relevant Record Date to receive interest due on the relevant Interest Payment Date.

(c) ~~On~~ From and after ~~September 30, 2011,~~October 15, 2012, the Issuer may redeem the PIK Notes that are Fixed Rate Senior Toggle Notes, in whole or in part, upon not less than 30 nor more than 60 days' prior notice mailed by first-class mail to the registered address of each Holder of PIK Notes or otherwise in accordance with the procedures of DTC, at a redemption price equal to 100% of the principal amount thereof, plus the Specified Premium with respect thereto, plus accrued and unpaid interest ~~thereon~~ and ~~Additional Interest~~Special, if any, to the applicable Redemption Date, subject to the right of Holders of ~~PIK~~Senior Toggle Notes of record on the relevant Record Date to receive interest due on the relevant Interest Payment Date.

(d) ~~In addition, until September 30,~~ Prior to October 15, 2010, the Issuer may, at its option, on one or more occasions, redeem up to 35% of the aggregate principal amount of ~~PIK Notes that are Fixed Rate~~all Senior Toggle Notes at a redemption price equal to 100% of the aggregate principal amount thereof, ~~plus a premium equal to the Applicable Rate, plus~~ accrued and unpaid interest ~~thereon~~, and Additional Interest, if any, to the applicable Redemption Date, subject to the right of Holders of ~~PIK~~Senior Toggle Notes of record on the relevant Record Date to receive interest due on the relevant Interest Payment Date, with the net cash proceeds of ~~one~~on or more Equity Offerings; provided ~~(i)~~ that at least 50% of the sum of the original aggregate principal amount of ~~PIK Notes issued under this Indenture and the original principal amount of~~the Initial Senior Toggle Notes and any Additional ~~Notes that are PIK~~Senior Toggle Notes issued under ~~this~~the Indenture after the Initial ~~Issue~~Closing Date ~~remains~~remain outstanding immediately after the occurrence of each such ~~redemption and (ii)~~redemptions; provided further that each such redemption occurs within 90 days of the date of closing of each such Equity Offering. Notice of any redemption upon any Equity Offerings may be given prior to the redemption thereof, and any such redemption or notice may, at the Issuer's ~~option and~~discretion, be subject to one or more conditions precedent, including, but not limited to, completion of ~~an~~the related Equity Offering ~~or other corporate transaction.~~

(e) If the Issuer redeems less than all of the outstanding ~~PIK~~Senior Toggle Notes, the Trustee shall select the ~~PIK~~Senior Toggle Notes to be redeemed in the manner described under Section 3.02 of the Indenture.

(f) Any redemption pursuant to this paragraph 5 shall be made pursuant to the provisions of Sections 3.01 through 3.06 of the Indenture.

~~6.      MANDATORY REDEMPTION.  The~~(6)      *MANDATORY REDEMPTION.*  Except as set forth under "Interest", the Issuer shall not be required to make ~~any~~ mandatory redemption or sinking fund payments with respect to the ~~PIK~~Senior Toggle Notes.

~~7.      NOTICE OF REDEMPTION.~~ (7)      *NOTICE OF REDEMPTION.* Subject to Section 3.03 of the Indenture, notice of redemption will be mailed by first-class mail at least 30 days but not more than 60 days before the Redemption Date (except that redemption notices may be mailed more than 60 days

Confidential

prior to a Redemption Date if the notice is issued in connection with Article 8 ~~or Article 11~~ of the Indenture) to each Holder whose ~~PIK~~Senior Toggle Notes are to be redeemed at its registered address.~~  PIK~~ or otherwise in accordance with the procedures of DTC. Senior Toggle Notes in denominations larger than $2,000 may be redeemed in part but only in whole multiples of $1,000 in excess thereof, unless all of the ~~PIK~~Senior Toggle Notes held by a Holder are to be redeemed.  On and after the Redemption Date interest ceases to accrue on ~~PIK~~Senior Toggle Notes or portions thereof called for redemption.

8.    ~~OFFERS TO REPURCHASE.~~

(8)    *OFFERS TO REPURCHASE.*

(a)    ~~Upon the occurrence of~~If a Change of Control occurs, the Issuer shall make an offer (a "Change of Control Offer") to each Holder to ~~repurchase~~purchase all or any part (equal to $2,000 or an integral multiple of $1,000 in excess thereof) of each Holder's ~~PIK~~Senior Toggle Notes at a ~~purchase~~ price in cash equal to 101% of the aggregate principal amount thereof plus accrued and unpaid interest and Additional Interest~~ thereon~~, if any, to the date of purchase (the "Change of Control Payment"), subject to the right of Holders of ~~PIK~~Senior Toggle Notes of record on the relevant Record Date to receive interest due on the relevant Interest Payment Date.  The Change of Control Offer shall be made in accordance with Section 4.14 of the Indenture.

(b)    If the Issuer or any of its Restricted Subsidiaries consummates an Asset Sale, within ~~10~~ten Business Days of each date that the aggregate amount of Excess Proceeds exceeds $~~200.0~~200 million, the Issuer shall make an offer to all Holders of the Senior Notes and to Lenders of the Senior Interim Loans, as applicable, and, if required or permitted by the terms of any Senior Indebtedness (including the Senior Interim Loan Agreement), to the holders of such Senior Indebtedness (an "Asset Sale Offer"), to purchase the maximum aggregate principal amount of the Senior Notes or Senior Interim Loans, as applicable, and such Senior Indebtedness that is a minimum of $2,000 or an integral multiple of $1,000 in excess thereof that may be purchased out of the Excess Proceeds at an offer price in cash in an amount equal to 100% of the principal amount thereof, plus accrued and unpaid interest and Additional Interest, if any, to the date fixed for the closing of such offer, in accordance with the procedures set forth in the Indenture.  To the extent that the aggregate amount of Senior Notes or Senior Interim Loans, as applicable, and such Senior Indebtedness tendered pursuant to an Asset Sale Offer is less than the Excess Proceeds, the Issuer may use any remaining Excess Proceeds for general corporate purposes, subject to other covenants contained in the Indenture or the Senior Interim Loan Agreement, as applicable.  If the aggregate principal amount of Senior Notes or the Senior Interim Loans, as applicable, or Senior Indebtedness surrendered by such holders thereof exceeds the amount of Excess Proceeds, the Trustee shall select the Senior Notes and Senior Interim Loans, as applicable, and such Senior Indebtedness to be purchased on a *pro rata* basis based on the accreted value or principal amount of the Senior Notes or Senior Interim Loans, as applicable, or such Senior Indebtedness tendered.  ~~Upon completion of any such Asset Sale Offer, the amount of Excess Proceeds shall be reset at zero.~~

(~~d~~c)    The Issuer may, at its option, make an Asset Sale Offer using proceeds from any Asset Sale at any time after consummation of such Asset Sale; provided that such Asset Sale Offer shall be in an aggregate amount of not less than $~~25.0~~25 million.  Upon consummation of such Asset Sale Offer, any Net Proceeds not required to be used to purchase Senior Notes shall not be deemed Excess Proceeds.

9.    ~~DENOMINATIONS, TRANSFER, EXCHANGE.~~ (9)    *DENOMINATIONS,    TRANSFER, EXCHANGE.* The ~~PIK~~Senior Toggle Notes are in registered form without coupons in denominations of $2,000 and integral multiples of $1,000 in excess thereof.  The transfer of ~~PIK~~Senior Toggle Notes may be registered and ~~PIK~~Senior Toggle Notes may be exchanged as provided in the Indenture.  The Registrar and the Trustee may require a Holder, among other things, to furnish appropriate endorsements and transfer

Confidential

documents and the Issuer may require a Holder to pay any taxes and fees required by law or permitted by the Indenture. The Issuer need not exchange or register the transfer of any ~~PIK~~Senior Toggle Notes or portion of ~~a PIK~~Senior Toggle Notes selected for redemption, except for the unredeemed portion of any ~~PIK~~Senior Toggle Notes being redeemed in part. Also, the Issuer need not exchange or register the transfer of any ~~PIK~~Senior Toggle Notes for a period of 15 days before a selection of ~~PIK~~Senior Toggle Notes to be redeemed.

~~10.~~      ~~PERSONS DEEMED OWNERS.~~ (10) *PERSONS DEEMED OWNERS.* The registered Holder of a ~~PIK Notes~~Senior Toggle Note may be treated as its owner for all purposes.

~~11.~~      ~~AMENDMENT, SUPPLEMENT AND WAIVER.~~ (11) *AMENDMENT, SUPPLEMENT AND WAIVER.* The Indenture, the Guarantees or the Senior Toggle Notes may be amended or supplemented as provided in the Indenture.

~~12.~~      ~~DEFAULTS AND REMEDIES.~~(12)      *DEFAULTS AND REMEDIES.* The Events of Default relating to the ~~PIK~~Senior Notes are defined in Section 6.01~~(a)~~ of the Indenture. If any Event of Default occurs and is continuing, the Trustee or the Holders and Lenders of at least 30% ~~in~~aggregate in principal amount of the then outstanding Senior Notes and Senior Interim Loans may declare the principal, premium, if any, interest and any other monetary obligations on all the then outstanding Senior Notes to be due and payable immediately. Notwithstanding the foregoing, in the case of an Event of Default arising from certain events of bankruptcy or insolvency, all outstanding Senior Notes will become due and payable immediately without further action or notice. Holders may not enforce the Indenture, the ~~PIK~~Senior Notes or the Guarantees except as provided in the Indenture. Subject to certain limitations, ~~the Required~~ Holders of a majority in aggregate principal amount of the then outstanding Senior Notes may direct the Trustee in its exercise of any trust or power. The Trustee may withhold from Holders of the ~~PIK~~Senior Notes notice of any continuing Default (except a Default relating to the payment of principal, premium, if any, Additional Interest, if any, or interest) if it determines that withholding notice is in their interest. The Required Holders by notice to the Trustee may on behalf of the Holders of all of the Senior Notes waive any existing Default or and its consequences under the Indenture except a continuing Default in payment of the principal of, premium, if any, Additional Interest, if any, or interest on, any of the Senior Notes held by a non-consenting Holder. The Issuer and each Guarantor (to the extent that such Guarantor is so required under the Trust Indenture Act) is required to deliver to the Trustee annually a statement regarding compliance with the Indenture, and the Issuer is required within five (5) Business Days after becoming aware of any Default, to deliver to the Trustee a statement specifying such Default and what action the Issuer proposes to take with respect thereto.

~~13.~~      ~~AUTHENTICATION.~~ (13)      *AUTHENTICATION.* This ~~PIK~~Senior Toggle Note shall not be entitled to any benefit under the Indenture or be valid or obligatory for any purpose until authenticated by the manual signature of the Trustee.

~~14.~~      ~~ADDITIONAL RIGHTS OF HOLDERS OF RESTRICTED GLOBAL NOTES AND RESTRICTED DEFINITIVE NOTES.~~ (14)      *ADDITIONAL RIGHTS OF HOLDERS OF RESTRICTED GLOBAL NOTES AND RESTRICTED DEFINITIVE NOTES.* In addition to the rights provided to Holders of ~~PIK~~Senior Toggle Notes under the Indenture, Holders of Restricted Global Notes and Restricted Definitive Notes shall have all the rights set forth in the Registration Rights Agreement, dated as of [      ]1 ], 20[ ], among ~~First Data Corporation~~the Issuer, the Guarantors named therein and the other parties named on the signature pages thereof (the "Registration Rights Agreement"), including the right to receive Additional Interest (as defined in the Registration Rights Agreement).

15 (15) *GOVERNING LAW.* THE INDENTURE, THE ~~PIK~~ SENIOR TOGGLE NOTES AND ANY GUARANTEE WILL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK.

16 (16) *CUSIP/ISIN* ~~NUMBERS.~~ *NUMBERS.* Pursuant to a recommendation promulgated by the Committee on Uniform Security Identification Procedures, the Issuer has caused CUSIP/ISIN numbers to be printed on the ~~PIK~~ Senior Toggle Notes and the Trustee may use CUSIP/ISIN numbers in notices of redemption as a convenience to Holders. No representation is made as to the accuracy of such numbers either as printed on the ~~PIK~~ Senior Toggle Notes or as contained in any notice of redemption and reliance may be placed only on the other identification numbers placed thereon.

The Issuer will furnish to any Holder upon written request and without charge a copy of the Indenture and/or the Registration Rights Agreement. Requests may be made to the Issuer at the following address:

c/o TXU Corp.
Energy Plaza
1601 Byran Street
Dallas, Texas 75201-3411
Facsimile No.:

~~c/o First Data Corporation~~
~~6200 South Quebec Street~~
~~Greenwood Village, Colorado 80111~~
~~Fax No.: (303) 967-7303~~
~~Attention: Treasurer~~

Confidential

**ASSIGNMENT FORM**

To assign this ~~PIK~~ Senior Toggle Note, fill in the form below:

(I) or (we) assign and transfer this Senior Toggle Note to: _____

*(Insert assignee's legal name)*

_____
*(Insert assignee's Soc. Sec. or tax I.D. no.)*

_____

_____

_____
*(Print or type assignee's name, address and zip code)*

~~(I) or (we) assign and transfer this PIK Note to:~~

~~(Insert assignee' legal name)~~

~~(Insert assignee's soc. sec. or tax I.D. no.)~~

~~(Print or type assignee's name, address and zip code)~~
and irrevocably appoint _____
to transfer this ~~PIK~~ Senior Toggle Note on the books of the Issuer.  The agent may substitute another to act for him.

Date: _____

Your Signature _____

(Sign exactly as your name appears on the
face of this Senior Toggle Note)

Signature Guarantee*: _____

Confidential

Date: ————————————————

Your Signature: ————————————————

    (Sign exactly as your name appears on the face of this PIK Note)


Signature Guarantee*: ————————————————— \* \* Participant in a recognized Signature Guarantee Medallion Program (or other signature guarantor acceptable to the Trustee).

NYDOCS01/1148615.6          14 A-4-14

EFIHMW00293901

## OPTION OF HOLDER TO ELECT PURCHASE

If you want to elect to have this ~~PIK~~ Senior Toggle Note purchased by the Issuer pursuant to Section 4.10 or 4.14 of the Indenture, check the appropriate box below:

☐ Section 4.10          ☐ Section 4.14

~~[  ] Section 4.10          [  ] Section 4.14~~

If you want to elect to have only part of this ~~PIK~~ Senior Toggle Note purchased by the Issuer pursuant to Section 4.10 or Section 4.14 of the Indenture, state the amount you elect to have purchased:

$ _____

Date: _____

Your Signature: _____

(Sign exactly as your name appears on the face of this Senior Cash Pay Note)

Tax Identification No.: _____

Signature Guarantee*: _____

~~$ _____~~

~~Date: _____~~

~~Your Signature: _____~~
~~(Sign exactly as your name appears on the face of~~
~~this PIK Note)~~
~~Tax Identification No.: _____~~

~~Signature Guarantee*: _____~~

~~*~~ * Participant in a recognized Signature Guarantee Medallion Program (or other signature guarantor acceptable to the Trustee).

Confidential

SCHEDULE OF EXCHANGES OF INTERESTS IN THE GLOBAL NOTE[*][1]

The initial outstanding principal amount of this Global Note is $_____. The following exchanges of a part of this Global Note for an interest in another Global Note or for a Definitive Note, or exchanges of a part of another Global or Definitive Note for an interest in this Global Note, have been made:

| Date of Exchange | Amount of decrease in Principal Amount | Amount of increase in Principal Amount of this Global Note | Principal Amount of this Global Note following such each decrease or increase | Signature of authorized officer of Trustee or Custodian |
|---|---|---|---|---|
| | | | | |

_____

[*] This schedule should be included only if the Senior Note is issued in global form.

_____

[1]      This schedule should be included only if the Senior Toggle Note is issued in global form.

Confidential

EXHIBIT B

## FORM OF CERTIFICATE OF TRANSFER

~~c/o First Data Corporation~~
TXU Corp.
Energy Plaza
~~6200 South Quebec~~1601 Byran Street
~~Greenwood Village, Colorado 80111~~
~~Fax No.: (303) 967-7303~~
Dallas, Texas 75201-3411
Attention: ~~Treasurer~~


[———————]
[————————][TRUSTEE]
[            ]
[            ]
Fax No.: [            ]
Attention: [            ]

Re:   [Senior Cash Pay Notes due 2017]
[Senior Toggle Notes due 2017]

Re:   ~~[Senior Cash Pay Notes due 2015] [Senior PIK Notes due 2015]~~

Reference is hereby made to the Indenture, dated as of [            ][ ], 20[ ] (the "Indenture"), among ~~First Data Corporation~~Texas Competitive Electric Holdings Company LLC and TCEH Finance, Inc., the Guarantors named therein and the Trustee.  Capitalized terms used but not defined herein shall have the meanings given to them in the Indenture.

_____ (the "Transferor") owns and proposes to transfer the Senior Note[s] or interest in such Senior Note[s] specified in Annex A hereto, in the principal amount of $_____ in such Senior Note[s] or interests (the "Transfer"), to _____ (the "Transferee"), as further specified in Annex A hereto.  In connection with the Transfer, the Transferor hereby certifies that:

[CHECK ALL THAT APPLY]

1.   ~~[ ] CHECK IF TRANSFEREE WILL TAKE DELIVERY OF A BENEFICIAL INTEREST IN THE 144A GLOBAL NOTE OR A DEFINITIVE NOTE PURSUANT TO RULE 144A.~~ ☐ **Check if Transferee will take delivery of a beneficial interest in the 144A Global Note or a Definitive Note pursuant to Rule 144A.** The Transfer is being effected pursuant to and in accordance with Rule 144A under the United States Securities Act of 1933, as amended (the "Securities Act"), and, accordingly, the Transferor hereby further certifies that the beneficial interest or Definitive Note is being transferred to a Person that the Transferor reasonably believes is purchasing the beneficial interest or Definitive Note for its own account, or for one or more accounts with respect to which such Person exercises sole investment discretion, and such Person and each such account is a "qualified institutional buyer" within the meaning of Rule 144A in a transaction meeting the requirements of Rule 144A and such Transfer is in compliance with any applicable blue sky securities laws of any state of the United States.

NYDOCS01/1148615.6                          B-1

2.    ~~[ ] CHECK IF TRANSFEREE WILL TAKE DELIVERY OF A BENEFICIAL INTEREST IN THE REGULATION S GLOBAL NOTE OR A DEFINITIVE NOTE PURSUANT TO REGULATION S.~~ ☐ **Check if Transferee will take delivery of a beneficial interest in the Regulation S Global Note or a Definitive Note pursuant to Regulation S.** The Transfer is being effected pursuant to and in accordance with Rule 903 or Rule 904 under the Securities Act and, accordingly, the Transferor hereby further certifies that (i) the Transfer is not being made to a person in the United States and (x) at the time the buy order was originated, the Transferee was outside the United States or such Transferor and any Person acting on its behalf reasonably believed and believes that the Transferee was outside the United States or (y) the transaction was executed in, on or through the facilities of a designated offshore securities market and neither such Transferor nor any Person acting on its behalf knows that the transaction was prearranged with a buyer in the United States, (ii) no directed selling efforts have been made in contravention of the requirements of Rule 903(b) or Rule 904(b) of Regulation S under the Securities Act, (iii) the transaction is not part of a plan or scheme to evade the registration requirements of the Securities Act and (iv) if the proposed transfer is being made prior to the expiration of the Restricted Period, the transfer is not being made to a U.S. Person or for the account or benefit of a U.S. Person _(other than an Initial Purchaser)_. Upon consummation of the proposed transfer in accordance with the terms of the Indenture, the transferred beneficial interest or Definitive Note will be subject to the restrictions on Transfer enumerated in the Indenture and the Securities Act.

3.    ~~[ ] CHECK AND COMPLETE IF TRANSFEREE WILL TAKE DELIVERY OF A BENEFICIAL INTEREST IN THE DEFINITIVE NOTE PURSUANT TO ANY PROVISION OF THE SECURITIES ACT OTHER THAN RULE 144A OR REGULATION S.~~ ☐  **Check and complete if Transferee will take delivery of a beneficial interest in the Definitive Note pursuant to any provision of the Securities Act other than Rule 144A or Regulation S.** The Transfer is being effected in compliance with the transfer restrictions applicable to beneficial interests in Restricted Global Notes and Restricted Definitive Notes and pursuant to and in accordance with the Securities Act and any applicable blue sky securities laws of any state of the United States, and accordingly the Transferor hereby further certifies that (check one):

~~(a)~~    [ ] such Transfer is being effected pursuant to and in accordance with Rule 144 under the Securities Act;

~~or~~

**OR**

~~(b)~~    [ ] such Transfer is being effected to the Issuer or a subsidiary thereof;

~~or~~

**OR**

~~(c)~~    [ ] such Transfer is being effected pursuant to an effective registration statement under the Securities Act and in compliance with the prospectus delivery requirements of the Securities Act.

4.    ~~[ ] CHECK IF TRANSFEREE WILL TAKE DELIVERY OF A BENEFICIAL INTEREST IN AN UNRESTRICTED GLOBAL NOTE OR OF AN UNRESTRICTED DEFINITIVE NOTE.~~

Confidential                    EFIHMW00293905

**PX 003D**
**Page 208 of 222**

4. ☐ **Check if Transferee will take delivery of a beneficial interest in an Unrestricted Global Note or of an Unrestricted Definitive Note.**

(a) ~~[ ] CHECK IF TRANSFER IS PURSUANT TO RULE~~ ☐ **Check if Transfer is Pursuant to Rule 144.** (i) The Transfer is being effected pursuant to and in accordance with Rule 144 under the Securities Act and in compliance with the transfer restrictions contained in the Indenture and any applicable blue sky securities laws of any state of the United States and (ii) the restrictions on transfer contained in the Indenture and the Private Placement Legend are not required in order to maintain compliance with the Securities Act. Upon consummation of the proposed Transfer in accordance with the terms of the Indenture, the transferred beneficial interest or Definitive Note will no longer be subject to the restrictions on transfer enumerated in the Private Placement Legend printed on the Restricted Global Notes, on Restricted Definitive Notes and in the Indenture.

(b) ~~[ ] CHECK IF TRANSFER IS PURSUANT TO REGULATION S.~~ ☐ **Check if Transfer is Pursuant to Regulation S.** (i) The Transfer is being effected pursuant to and in accordance with Rule 903 or Rule 904 under the Securities Act and in compliance with the transfer restrictions contained in the Indenture and any applicable blue sky securities laws of any state of the United States and (ii) the restrictions on transfer contained in the Indenture and the Private Placement Legend are not required in order to maintain compliance with the Securities Act. Upon consummation of the proposed Transfer in accordance with the terms of the Indenture, the transferred beneficial interest or Definitive Note will no longer be subject to the restrictions on transfer enumerated in the Private Placement Legend printed on the Restricted Global Notes, on Restricted Definitive Notes and in the Indenture.

(c) ~~[ ] CHECK IF TRANSFER IS PURSUANT TO OTHER EXEMPTION~~ ☐ **Check if Transfer is Pursuant to Other Exemption**. (i) The Transfer is being effected pursuant to and in compliance with an exemption from the registration requirements of the Securities Act other than Rule 144, Rule 903 or Rule 904 and in compliance with the transfer restrictions contained in the Indenture and any applicable blue sky securities laws of any State of the United States and (ii) the restrictions on transfer contained in the Indenture and the Private Placement Legend are not required in order to maintain compliance with the Securities Act. Upon consummation of the proposed Transfer in accordance with the terms of the Indenture, the transferred beneficial interest or Definitive Note will not be subject to the restrictions on transfer enumerated in the Private Placement Legend printed on the Restricted Global Notes or Restricted Definitive Notes and in the Indenture.

Confidential                                                                                                EFIHMW00293906

**PX 003D**
**Page 209 of 222**

This certificate and the statements contained herein are made for your benefit and the benefit of the Issuer.

[Insert Name of Transferor]

By:
    Name:
    Title:

Dated: _____

[Insert Name of Transferor]

By: _____
    Name: _____
    Title: _____

Dated: _____

**ANNEX A TO CERTIFICATE OF TRANSFER**

1.      The Transferor owns and proposes to transfer the following:

**[CHECK ONE OF (a) OR (b)]**

(a)      [☐] a beneficial interest in the:

    (i)      [☐] 144A Global Note (CUSIP [          ][1] [          ][2]), or

    (ii)      [☐] Regulation S Global Note (CUSIP [          ][1] [          ][2]), or

(b)      [☐] a Restricted Definitive Note.

2.      After the Transfer the Transferee will hold:

**[CHECK ONE]**

(a)      [☐] a beneficial interest in the:

    (i)      [☐] 144A Global Note (CUSIP [          ][1] [          ][2]), or

    (ii)      [☐] Regulation S Global Note (CUSIP [          ][1] [          ][2]), or

    (iii)      [☐] Unrestricted Global Note (CUSIP [          ][1] [          ][2]);

or

(b)      [☐] a Restricted Definitive Note; or

(c)      [——☐——————] an      Unrestricted      Definitive      Note,
in accordance with the terms of the Indenture.

---

[1]      ~~Cash Pay Notes.~~

[2]      ~~PIK Notes~~

Confidential                    EF|HMW00293908

**PX 003D**
**Page 211 of 222**

EXHIBIT C

## FORM OF CERTIFICATE OF EXCHANGE

~~c/o First Data Corporation~~
TXU Corp.
Energy Plaza
~~6200 South Quebec~~1601 Byran Street
~~Greenwood Village, Colorado 80111~~
~~Fax No.: (303) 967-7303~~
Dallas, Texas 75201-3411
Attention: ~~Treasurer~~

~~[Trustee]~~
[_____][TRUSTEE]
[          ]
[          ]
Fax No.: [          ]
Attention:  [          ]

Re:    [Senior Cash Pay Notes due 2017]
[Senior Toggle Notes due 2017]

~~Re:  [Senior Cash Pay Notes due 2015] [Senior PIK Notes due 2015]~~

Reference is hereby made to the Indenture, dated as of [        ] [ ], 20[   ] (the "Indenture"), among ~~First Data Corporation~~Texas Competitive Electric Holdings Company LLC and TCEH Finance, Inc., the Guarantors named therein and the Trustee.  Capitalized terms used but not defined herein shall have the meanings given to them in the Indenture.

_____ (the "Owner") owns and proposes to exchange the Senior Note[s] or interest in such Senior Note[s] specified herein, in the principal amount of $_____ in such Senior Note[s] or interests (the "Exchange").  In connection with the Exchange, the Owner hereby certifies that:

~~1)    EXCHANGE OF RESTRICTED DEFINITIVE NOTES OR BENEFICIAL INTERESTS IN A RESTRICTED GLOBAL NOTE FOR UNRESTRICTED DEFINITIVE NOTES OR BENEFICIAL INTERESTS IN AN UNRESTRICTED GLOBAL NOTE~~

**1.     Exchange of Restricted Definitive Notes or Beneficial Interests in a Restricted Global Note for Unrestricted Definitive Notes or Beneficial Interests in an Unrestricted Global Note**

(a)     ~~[   ] CHECK IF EXCHANGE IS FROM BENEFICIAL INTEREST IN A RESTRICTED GLOBAL NOTE TO BENEFICIAL INTEREST IN AN UNRESTRICTED GLOBAL NOTE~~☐  **Check if Exchange is from beneficial interest in a Restricted Global Note to beneficial interest in an Unrestricted Global Note.**  In connection with the Exchange of the Owner's beneficial interest in a Restricted Global Note for a beneficial interest in an Unrestricted Global Note in an equal principal amount, the Owner hereby certifies (i) the beneficial interest is being acquired for the Owner's own account without transfer, (ii) such Exchange has been effected in compliance with the transfer restrictions applicable to the Global Notes and pursuant to and in accordance with the United States Securities Act of 1933, as amended (the "Securities Act"), (iii) the restrictions on transfer contained in the

NYDOCS01/1148615.6                              C-1

Indenture and the Private Placement Legend are not required in order to maintain compliance with the Securities Act and (iv) the beneficial interest in an Unrestricted Global Note is being acquired in compliance with any applicable blue sky securities laws of any state of the United States.

(b)    ~~[  ] CHECK IF EXCHANGE IS FROM BENEFICIAL INTEREST IN A RESTRICTED GLOBAL NOTE TO UNRESTRICTED DEFINITIVE NOTE.~~ ☐  **Check if Exchange is from beneficial interest in a Restricted Global Note to Unrestricted Definitive Note**. In connection with the Exchange of the Owner's beneficial interest in a Restricted Global Note for an Unrestricted Definitive Note, the Owner hereby certifies (i) the Definitive Note is being acquired for the Owner's own account without transfer, (ii) such Exchange has been effected in compliance with the transfer restrictions applicable to the Restricted Global Notes and pursuant to and in accordance with the Securities Act, (iii) the restrictions on transfer contained in the Indenture and the Private Placement Legend are not required in order to maintain compliance with the Securities Act and (iv) the Definitive Note is being acquired in compliance with any applicable blue sky securities laws of any state of the United States.

(c)    ~~[  ] CHECK IF EXCHANGE IS FROM RESTRICTED DEFINITIVE NOTE TO BENEFICIAL INTEREST IN AN UNRESTRICTED GLOBAL NOTE.~~ ☐  **Check if Exchange is from Restricted Definitive Note to beneficial interest in an Unrestricted Global Note.** In connection with the Owner's Exchange of a Restricted Definitive Note for a beneficial interest in an Unrestricted Global Note, the Owner hereby certifies (i) the beneficial interest is being acquired for the Owner's own account without transfer, (ii) such Exchange has been effected in compliance with the transfer restrictions applicable to Restricted Definitive Notes and pursuant to and in accordance with the Securities Act, (iii) the restrictions on transfer contained in the Indenture and the Private Placement Legend are not required in order to maintain compliance with the Securities Act and (iv) the beneficial interest is being acquired in compliance with any applicable blue sky securities laws of any state of the United States.

(d)    ~~[  ] CHECK IF EXCHANGE IS FROM RESTRICTED DEFINITIVE NOTE TO UNRESTRICTED DEFINITIVE NOTE.~~ ☐  **Check if Exchange is from Restricted Definitive Note to Unrestricted Definitive Note.** In connection with the Owner's Exchange of a Restricted Definitive Note for an Unrestricted Definitive Note, the Owner hereby certifies (i) the Unrestricted Definitive Note is being acquired for the Owner's own account without transfer, (ii) such Exchange has been effected in compliance with the transfer restrictions applicable to Restricted Definitive Notes and pursuant to and in accordance with the Securities Act, (iii) the restrictions on transfer contained in the Indenture and the Private Placement Legend are not required in order to maintain compliance with the Securities Act and (iv) the Unrestricted Definitive Note is being acquired in compliance with any applicable blue sky securities laws of any state of the United States.

~~2)    EXCHANGE OF RESTRICTED DEFINITIVE NOTES OR BENEFICIAL INTERESTS IN RESTRICTED GLOBAL NOTES FOR RESTRICTED DEFINITIVE NOTES OR BENEFICIAL INTERESTS IN RESTRICTED GLOBAL NOTES~~

2.    **Exchange of Restricted Definitive Notes or Beneficial Interests in Restricted Global Notes for Restricted Definitive Notes or Beneficial Interests in Restricted Global Notes**

(a)    ~~[  ] CHECK IF EXCHANGE IS FROM BENEFICIAL INTEREST IN A RESTRICTED GLOBAL NOTE TO RESTRICTED DEFINITIVE NOTE.~~ ☐  **Check if Exchange is from beneficial interest in a Restricted Global Note to Restricted Definitive Note**. In connection with the Exchange of the Owner's beneficial interest in a Restricted Global Note for a Restricted Definitive Note with an equal principal amount, the Owner hereby certifies that the Restricted Definitive Note is being acquired for the Owner's own account without transfer. Upon consummation of the proposed Exchange in accordance with the terms of the Indenture, the Restricted Definitive Note issued will continue to be subject

Confidential

to the restrictions on transfer enumerated in the Private Placement Legend printed on the Restricted Definitive Note and in the Indenture and the Securities Act.

(b)    ~~[ ] CHECK IF EXCHANGE IS FROM RESTRICTED DEFINITIVE NOTE TO BENEFICIAL INTEREST IN A RESTRICTED GLOBAL NOTE.~~ [ ] **Check if Exchange is from Restricted Definitive Note to beneficial interest in a Restricted Global Note.** In connection with the Exchange of the Owner's Restricted Definitive Note for a beneficial interest in the [CHECK ONE] ~~[ ]~~[ ] 144A Global Note ~~[ ]~~[ ] Regulation S Global Note, with an equal principal amount, the Owner hereby certifies (i) the beneficial interest is being acquired for the Owner's own account without transfer and (ii) such Exchange has been effected in compliance with the transfer restrictions applicable to the Restricted Global Notes and pursuant to and in accordance with the Securities Act, and in compliance with any applicable blue sky securities laws of any state of the United States.  Upon consummation of the proposed Exchange in accordance with the terms of the Indenture, the beneficial interest issued will be subject to the restrictions on transfer enumerated in the Private Placement Legend printed on the relevant Restricted Global Note and in the Indenture and the Securities Act.

Confidential

This certificate and the statements contained herein are made for your benefit and the benefit of the Issuer and are dated _____.

[Insert Name of Transferor]

By: _____

Name: _____

Title: _____

Dated: _____

[Insert Name of Owner]

By: _____

Name: _____

Title: _____

Dated: _____

Confidential

EXHIBIT D

**[FORM OF SUPPLEMENTAL INDENTURE**

**TO BE DELIVERED BY SUBSEQUENT GUARANTORS]**

Supplemental Indenture (this "Supplemental Indenture"), dated as of _____, among _____ (the "Guaranteeing Subsidiary"), a subsidiary of ~~First Data Corporation, a Delaware~~TXU Corp., a Texas corporation (the "Issuer"), and [ _____ TRUSTEE], as trustee (the "Trustee").

W I T N E S S E T H

WHEREAS, each of ~~First Data Corporation~~the Issuer and the Guarantors (as defined in the Indenture referred to below) has heretofore executed and delivered to the Trustee an ~~indenture~~Indenture (the "Indenture"), dated as of [ _____ ][ ], 20[ ], providing for the issuance of an unlimited aggregate principal amount of Senior Cash Pay Notes due ~~2015~~2017 and Senior ~~PIK~~Toggle Notes due ~~2015~~2017 (together, the "Senior Notes");

WHEREAS, the Indenture provides that under certain circumstances the Guaranteeing Subsidiary shall execute and deliver to the Trustee a supplemental indenture pursuant to which the Guaranteeing Subsidiary shall unconditionally guarantee all of the Issuer's Obligations under the Senior Notes and the Indenture on the terms and conditions set forth herein and under the Indenture (the "Guarantee"); and

WHEREAS, pursuant to Section 9.01 of the Indenture, the Trustee is authorized to execute and deliver this Supplemental Indenture.

NOW ~~THEREFORE~~THEREFOR, in consideration of the foregoing and for other good and valuable consideration, the receipt of which is hereby acknowledged, the parties mutually covenant and agree for the equal and ratable benefit of the Holders of the Senior Notes as follows:

(1)1.    CAPITALIZED TERMS.  Capitalized terms used herein without definition shall have the meanings assigned to them in the Indenture.

(2)2.    AGREEMENT TO GUARANTEE.  The Guaranteeing Subsidiary hereby agrees as follows:

(a)    Along with all Guarantors named in the Indenture, to jointly and severally unconditionally guarantee to each Holder of a Senior Note authenticated and delivered by the Trustee and to the Trustee and its successors and assigns, irrespective of the validity and enforceability of the Indenture, the Senior Notes or the obligations of the Issuer hereunder or thereunder, that:

(i)    the principal of and interest, premium and Additional Interest, if any, on the Senior Notes will be promptly paid in full when due, whether at maturity, by acceleration, redemption or otherwise, and interest on the overdue principal of and interest on the Senior Notes, if any, if lawful, and all other obligations of the Issuer to the Holders or the Trustee hereunder or thereunder will be promptly paid in full or performed, all in accordance with the terms hereof and thereof; and

NYDOCS01/1148615.6                                    ~~1~~D-1

~~(ii)~~ in case of any extension of time of payment or renewal of any Senior Notes or any of such other obligations, that same will be promptly paid in full when due or performed in accordance with the terms of the extension or renewal, whether at stated maturity, by acceleration or otherwise. Failing payment when due of any amount so guaranteed or any performance so guaranteed for whatever reason, the Guarantors and the Guaranteeing Subsidiary shall be jointly and severally obligated to pay the same immediately. This is a guarantee of payment and not a guarantee of collection.

~~(b)~~ The obligations hereunder shall be unconditional, irrespective of the validity, regularity or enforceability of the Senior Notes or the Indenture, the absence of any action to enforce the same, any waiver or consent by any Holder of the Senior Notes with respect to any provisions hereof or thereof, the recovery of any judgment against the Issuer, any action to enforce the same or any other circumstance which might otherwise constitute a legal or equitable discharge or defense of a guarantor.

~~(c)~~ The following is hereby waived: diligence, presentment, demand of payment, filing of claims with a court in the event of insolvency or bankruptcy of the Issuer, any right to require a proceeding first against the Issuer, protest, notice and all demands whatsoever.

~~(d)~~ Except as set forth in Section 5 hereto, this Guarantee shall not be discharged except by complete performance of the obligations contained in the Senior Notes, the Indenture and this Supplemental Indenture, and the Guaranteeing Subsidiary accepts all obligations of a Guarantor under the Indenture.

~~(e)~~ If any Holder or the Trustee is required by any court or otherwise to return to the Issuer, the Guarantors (including the Guaranteeing Subsidiary), or any custodian, trustee, liquidator or other similar official acting in relation to either the Issuer or the Guarantors, any amount paid either to the Trustee or such Holder, this Guarantee, to the extent theretofore discharged, shall be reinstated in full force and effect.

~~(f)~~ The Guaranteeing Subsidiary shall not be entitled to any right of subrogation in relation to the Holders in respect of any obligations guaranteed hereby until payment in full of all obligations guaranteed hereby.

~~(g)~~ As between the Guaranteeing Subsidiary, on the one hand, and the Holders and the Trustee, on the other hand, (x) the maturity of the obligations guaranteed hereby may be accelerated as provided in Article 6 of the Indenture for the purposes of this Guarantee, notwithstanding any stay, injunction or other prohibition preventing such acceleration in respect of the obligations guaranteed hereby, and (y) in the event of any declaration of acceleration of such obligations as provided in Article 6 of the Indenture, such obligations (whether or not due and payable) shall forthwith become due and payable by the Guaranteeing Subsidiary for the purpose of this Guarantee.

~~(h)~~ The Guaranteeing Subsidiary shall have the right to seek contribution from any non-paying Guarantor so long as the exercise of such right does not impair the rights of the Holders under this Guarantee.

~~(i)~~ Pursuant to Section 10.02 of the Indenture, after giving effect to all other contingent and fixed liabilities that are relevant under any applicable Bankruptcy or fraudulent conveyance laws, and after giving effect to any collections from, rights to receive

Confidential

EFIHMW00293914

**PX 003D**
**Page 217 of 222**

contribution from or payments made by or on behalf of any other Guarantor in respect of the obligations of such other Guarantor under Article 10 of the Indenture, this new Guarantee shall be limited to the maximum amount permissible such that the obligations of such Guaranteeing Subsidiary under this Guarantee will not constitute a fraudulent transfer or conveyance.

(j) This Guarantee shall remain in full force and effect and continue to be effective should any petition be filed by or against the Issuer for liquidation, reorganization, should the Issuer become insolvent or make an assignment for the benefit of creditors or should a receiver or trustee be appointed for all or any significant part of the Issuer's assets, and shall, to the fullest extent permitted by law, continue to be effective or be reinstated, as the case may be, if at any time payment and performance of the Senior Notes are, pursuant to applicable law, rescinded or reduced in amount, or must otherwise be restored or returned by any obligee on the Senior Notes and Guarantee, whether as a "voidable preference", "fraudulent transfer" or otherwise, all as though such payment or performance had not been made. In the event that any payment or any part thereof, is rescinded, reduced, restored or returned, the Senior Note shall, to the fullest extent permitted by law, be reinstated and deemed reduced only by such amount paid and not so rescinded, reduced, restored or returned.

(k) In case any provision of this Guarantee shall be invalid, illegal or unenforceable, the validity, legality, and enforceability of the remaining provisions shall not in any way be affected or impaired thereby.

(l) This Guarantee shall be a general senior unsecured obligation of such Guaranteeing Subsidiary, ranking equally in right of payment with all existing and future seniorSenior Indebtedness of the Guaranteeing Subsidiary, will be effectively subordinated to all Secured Indebtedness of such Guaranteeing Subsidiary to the extent of the value of the collateral securing such indebtedness. The Guarantees will be senior in right of payment to all existing and future Subordinated Indebtedness of each Guarantor. The Senior Notes will be structurally subordinated to Indebtedness and other liabilities of Subsidiaries of the Issuer that do not Guarantee the Senior Notes, if any.

(m) Each payment to be made by the Guaranteeing Subsidiary in respect of this Guarantee shall be made without set-off, counterclaim, reduction or diminution of any kind or nature.

(3)3. EXECUTION andAND DELIVERY. The Guaranteeing Subsidiary agrees that the Guarantee shall remain in full force and effect notwithstanding the absence of the endorsement of any notation of such Guarantee on the Senior Notes.

(4)4. Merger, Consolidation or Sale of All or Substantially All Assets.

(a) Except as otherwise provided in Section 5.01(c) of the Indenture, the Guaranteeing Subsidiary may not consolidate or merge with or into or wind up into (whether or not the Issuer or Guaranteeing Subsidiary is the surviving corporation), or sell, assign, transfer, lease, convey or otherwise dispose of all or substantially all of its properties or assets, in one or more related transactions, to any Person unless:

(i) such Guarantor(A) the Guaranteeing Subsidiary is the surviving corporation or the Person formed by or surviving any such consolidation or merger (if other than such Guarantorthe Guaranteeing Subsidiary) or to which such sale, assignment, transfer, lease, conveyance or other disposition will have been made is a

Confidential

corporation, partnership, limited partnership, limited liability ~~partnership~~, limited liability corporation or trust organized or existing under the laws of the jurisdiction of organization of ~~such Guarantor~~the Guaranteeing Subsidiary, as the case may be, or the laws of the United States, any state thereof, the District of Columbia, or any territory thereof (~~such Guarantor~~the Guaranteeing Subsidiary or such Person, as the case may be, being herein called the "Successor Person");

(ii)——the Successor Person, if other than ~~such Guarantor~~the Guaranteeing Subsidiary, expressly assumes all the obligations of ~~such  Guarantor~~the  Guaranteeing  Subsidiary  under  the  Indenture  and ~~such Guarantor~~the Registration Rights Agreement and the Guaranteeing Subsidiary's related Guarantee pursuant to supplemental indentures or other documents or instruments in form reasonably satisfactory to the Trustee and, if any Senior Term Loans are outstanding, reasonably satisfactory to the Administrative Agent for the Lenders;

(iii)——immediately after such transaction, no Default exists; and

(iv)——the Issuer shall have delivered to the Trustee an Officer's  Certificate  and  an  Opinion  of  Counsel,  each  stating  that  such consolidation, merger or transfer and such supplemental indentures, if any, comply with the Indenture; or

(v)——the transaction is made in compliance with Section 4.10 of the Indenture.;

(b)——Subject to certain limitations described in the Indenture, the Successor Person will succeed to, and be substituted for, ~~such  Guarantor~~the  Guaranteeing Subsidiary  under  the  Indenture  and ~~such  Guarantor~~the  Guaranteeing  Subsidiary's  Guarantee. Notwithstanding the foregoing, ~~any Guarantor~~the Guaranteeing Subsidiary may (i) merge into or transfer all or part of its properties and assets to another Guarantor or the Issuer, (ii) merge with an Affiliate of the Issuer solely for the purpose of reincorporating the ~~Guarantor~~Guaranteeing Subsidiary in the United States, any state thereof, the District of Columbia or any territory thereof or (iii) convert into a corporation, partnership, limited partnership, limited liability corporation or trust organized or existing under the laws of the jurisdiction of organization of such Guarantor.

(5)5.    RELEASES.  The Guarantee of the Guaranteeing Subsidiary shall be automatically and unconditionally released and discharged, and no further action by the Guaranteeing Subsidiary, the Issuer or the Trustee is required for the release of the Guaranteeing Subsidiary's Guarantee, upon:

(1)——(A)  any sale, exchange or transfer (by merger or otherwise) of the Capital Stock of ~~such  Guarantor~~the Guaranteeing Subsidiary (including any sale, exchange or transfer), after which the ~~applicable Guarantor~~Guaranteeing Subsidiary is no longer a Restricted Subsidiary or all or substantially all the assets of ~~such  Guarantor~~the  Guaranteeing  Subsidiary which sale, exchange or transfer is made in compliance with the applicable provisions of ~~this~~the Indenture;

(B)——the release or discharge of the guarantee by ~~such  Guarantor~~the Guaranteeing Subsidiary of the Senior Credit ~~Facility~~Facilities or ~~such other~~the guarantee ~~that~~which resulted in the creation of ~~such~~the Guarantee, except a discharge or release by or as a result of payment under such guarantee;

Confidential

(C) the proper designation of ~~any Restricted~~the Guaranteeing Subsidiary ~~that is a Guarantor~~ as an Unrestricted Subsidiary in compliance with Section ~~4.07 of the Indenture~~4.08 hereof; or

(D) ~~the exercise by~~ Issuer ~~of~~exercising its Legal Defeasance option or Covenant Defeasance option in accordance with Article 8 of the Indenture or the Issuer's obligations under ~~this~~the Indenture being discharged in accordance with the terms of the Indenture; and

(2) ~~such Guarantor~~the Guaranteeing Subsidiary delivering to the Trustee an Officer's Certificate and an Opinion of Counsel, each stating that all conditions precedent provided for in the Indenture relating to such transaction have been complied with.

~~(6)~~6. NO RECOURSE AGAINST OTHERS. No director, officer, employee, incorporator or stockholder of the Guaranteeing Subsidiary shall have any liability for any obligations of the Issuer or the Guarantors (including the Guaranteeing Subsidiary) under the Senior Notes, any Guarantees, the Indenture or this Supplemental Indenture or for any claim based on, in respect of, or by reason of, such obligations or their creation. Each Holder by accepting Senior Notes waives and releases all such liability. The waiver and release are part of the consideration for issuance of the Senior Notes.

~~(7)~~7. GOVERNING LAW. THIS SUPPLEMENTAL INDENTURE WILL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK.

~~(8)~~8. COUNTERPARTS. The parties may sign any number of copies of this Supplemental Indenture. Each signed copy shall be an original, but all of them together represent the same agreement.

~~(9)~~9. EFFECT OF HEADINGS. The Section headings herein are for convenience only and shall not affect the construction hereof.

~~(10)~~10. THE TRUSTEE. The Trustee shall not be responsible in any manner whatsoever for or in respect of the validity or sufficiency of this Supplemental Indenture or for or in respect of the recitals contained herein, all of which recitals are made solely by the Guaranteeing Subsidiary.

~~(11)~~11. SUBROGATION. The Guaranteeing Subsidiary shall be subrogated to all rights of Holders of Senior Notes against the Issuer in respect of any amounts paid by the Guaranteeing Subsidiary pursuant to the provisions of Section 2 hereof and Section 10.01 of the Indenture; provided that, if an Event of Default has occurred and is continuing, the Guaranteeing Subsidiary shall not be entitled to enforce or receive any payments arising out of, or based upon, such right of subrogation until all amounts then due and payable by the Issuer under the Indenture or the Senior Notes shall have been paid in full.

~~(12)~~12. BENEFITS ACKNOWLEDGED. The Guaranteeing Subsidiary's Guarantee is subject to the terms and conditions set forth in the Indenture. The Guaranteeing Subsidiary acknowledges that it will receive direct and indirect benefits from the financing arrangements contemplated by the Indenture and this Supplemental Indenture and that the guarantee and waivers made by it pursuant to this Guarantee are knowingly made in contemplation of such benefits.

~~(13)~~13. SUCCESSORS. All agreements of the Guaranteeing Subsidiary in this Supplemental Indenture shall bind its Successors, except as otherwise provided in Section 2(k) hereof or elsewhere in this Supplemental Indenture. All agreements of the Trustee in this Supplemental Indenture shall bind its successors.

Confidential

IN WITNESS WHEREOF, the parties hereto have caused this Supplemental Indenture to be duly executed, all as of the date first above written.

TXU CORP.

By: _____
      Name:
      Title:

[NAMES OF GUARANTORS]

By: _____
      Name:
      Title:

[TRUSTEE], as Trustee

By: _____
      Name:
      Title:

[GUARANTEEING SUBSIDIARY]

By: _____
      Name:
      Title:

[GUARANTEEING SUBSIDIARY]

By: _____
      Name:
      Title:

[_____],
as Trustee

By: _____
      Name:

NYDOCS01/1148615.6        6 D-6

EFIHMW00293918

Title:

Confidential

EF|HMW00293919