**PROSPECTUS**

# ENERGY FUTURE HOLDINGS CORP.
## ENERGY FUTURE INTERMEDIATE HOLDING COMPANY LLC
### EFIH FINANCE INC.

Offers to Exchange the Outstanding Notes listed in the Table Below for:

Up to $1.35 Billion of 9.75% Senior Secured Notes due 2019 of Energy Future Holdings Corp. and up to $1.65 Billion of 9.75% Senior Secured Notes due 2019 of Energy Future Intermediate Holding Company LLC and EFIH Finance Inc.

and

Solicitations of Consents in Respect of Certain of the Notes Listed Below

---

THE EXCHANGE OFFERS FOR EACH ISSUE OF OLD NOTES (AS DEFINED BELOW) WILL EXPIRE AT MIDNIGHT, NEW YORK CITY TIME, ON NOVEMBER 10, 2009 (SUCH TIME AND DATE, AS IT MAY BE EXTENDED, THE "EXPIRATION DATE"). TENDERS OF OLD NOTES MAY BE VALIDLY WITHDRAWN AT ANY TIME AT OR PRIOR TO THE EXPIRATION DATE.

THE SOLICITATION OF CONSENTS (AS DEFINED BELOW) FOR EACH ISSUE OF CONSENT NOTES (AS DEFINED BELOW) WILL EXPIRE AT MIDNIGHT, NEW YORK CITY TIME, ON NOVEMBER 10, 2009 (SUCH TIME AND DATE. AS IT MAY BE EXTENDED, THE "CONSENT DATE"). CONSENTS MAY BE REVOKED AT ANY TIME AT OR PRIOR TO THE CONSENT DATE.

---

Upon the terms and subject to the conditions set forth in this prospectus (as it may be supplemented and amended from time to time. and including the annexes hereto, this "Prospectus") and the related consent and letter of transmittal (as it may be supplemented and amended from time to time, the "Consent and Letter of Transmittal"), including the Maximum Exchange Amount (as defined below) and the Priority Level 2 Cap (as defined below), the Offerors (as defined below) are offering to exchange (the "exchange offers") the outstanding notes listed in the table below (collectively, the "Old Notes" and each, an "issue" of Old Notes) validly tendered (and not validly withdrawn) for up to $3.0 billion aggregate principal amount of New Senior Secured Notes (as defined below), payable 45% in 9.75% Senior Secured Notes due 2019 (the "New EFH Senior Secured Notes") of Energy Future Holdings Corp. ("EFH Corp.") and 55% in 9.75% Senior Secured Notes due 2019 (the "New EFIH Senior Secured Notes" and, together with the New EFH Senior Secured Notes, the "New Senior Secured Notes") of Energy Future Intermediate Holding Company LLC ("EFIH") and EFIH Finance Inc. ("EFIH Finance" and, together with EFIH. the "EFIH Offeror").

Subject to the terms and conditions of the exchange offers, including the Maximum Exchange Amount and the Priority Level 2 Cap, Old Notes validly tendered (and not validly withdrawn) will be accepted in order of the acceptance priority levels as set forth in the table below (each, an "Acceptance Priority Level"), with Level 1 being the highest Acceptance Priority Level.

**You are encouraged to carefully consider all the information included in this Prospectus, including the annexes hereto, in its entirety, in particular "Risk Factors" beginning on page 43.**

EFH Corp. and EFIH have applied to list the New EFH Senior Secured Notes and the New EFIH Senior Secured Notes on the New York Stock Exchange.

**None of us, the Dealer Managers (as defined below), the Exchange Agent (as defined below), the Information Agent (as defined below) or any other person is making any recommendation as to whether or not you should tender your Old Notes for exchange in the exchange offers or deliver Consents pursuant to the consent solicitations (as defined below). You must make your own decision whether to tender Old Notes in the exchange offers and to deliver Consents in the consent solicitations and, if so, the amount of Old Notes as to which action is to be taken.**

**Neither the Securities and Exchange Commission nor any state securities commission has approved or disapproved of the exchange offers, New Senior Secured Notes or the consent solicitations or determined if this Prospectus is truthful or complete. Any representation to the contrary is a criminal offense.**

*Lead Dealer Managers and Solicitation Agents*

**Citi**                                              **Goldman, Sachs & Co.**

*Co-Dealer Managers and Solicitation Agents*

**BofA Merrill Lynch      Credit Suisse      J.P. Morgan      KKR      Morgan Stanley**

**November 10, 2009**

*(cover page continued)*

Upon the terms and subject to the conditions of the exchange offers, including the Acceptance Priority Levels, the Maximum Exchange Amount and the Priority Level 2 Cap and the possible prorations resulting therefrom, in exchange for each $1,000 principal amount of Old Notes validly tendered (and not validly withdrawn) at or prior to the Expiration Date, participating holders of Old Notes will be eligible to receive the "Total Consideration" listed in the table below under "Total Consideration if Tendered at or Prior to the Expiration Date"; provided, however, that EFH Corp. and the EFIH Offeror (collectively, the "Offerors") will not accept any tender of Old Notes that would result in the issuance of less than $2,000 principal amount of New EFH Senior Secured Notes or New EFIH Senior Secured Notes to a participating holder.

| CUSIP/ISIN | Outstanding Principal Amount (in millions) | Issuer | Title of Old Notes | Acceptance Priority Level (1) | Total Consideration if Tendered at or Prior to the Expiration Date(2) |
|---|---|---|---|---|---|
| 873168 AL2 / US 873168 AL29 . . . . . . . . . . . . . . . . . | $1,000 | EFH Corp. | 5.55% Series P Senior Notes due 2014 | 1 | $ 710.00(3) |
| 873168 AN8 / US 873168 AN84 . . . . . . . . . . . . . . . . . 873168 AM0 / US 873168 AM02 | $ 750 | EFH Corp. | 6.50% Series Q Senior Notes due 2024 | 1 | $ 475.00(3) |
| 873168 AQ1 / US 873168 AQ16 . . . . . . . . . . . . . . . . . | $ 750 | EFH Corp. | 6.55% Series R Senior Notes due 2034 | 1 | $ 465.00(3) |
| 292680 AD7 / US 292680 AD70 . . . . . . . . . . . . . . . . . | $2,650 | EFH Corp. | 11.250%/12.000% Senior Toggle Notes due 2017 | 1 | $ 660.00(3) |
| 292680 AC9 / US 292680 AC97 . . . . . . . . . . . . . . . . . 292680 AA3 / US 292680 AA32 | $2,000 | EFH Corp. | 10.875% Senior Notes due 2017 | 1 | $ 745.00(3) |
| 882330 AF0 / US 882330 AF05 . . . . . . . . . . . . . . . . . U88235 AC7 / USU 88235AC76 | $3,000 | TCEH(4) TCEH Finance, Inc. | 10.25% Senior Notes due 2015 | 2 | $ 720.00(5) |
| 882330 AG8 / US 882330 AG87 . . . . . . . . . . . . . . . . . 882330 AC7 / US 882330 AC73 | $2,000 | TCEH(4) TCEH Finance, Inc. | 10.25% Senior Notes due 2015, Series B | 2 | $ 720.00(5) |

(1) The Offerors reserve the right to change the Acceptance Priority Levels in the event that the requisite Consents are not received or for other reasons, subject to applicable law. If a change is made to the amount of securities offered to be exchanged pursuant to any exchange offer, including any change to applicable Acceptance Priority Levels, such exchange offer will remain open for at least ten business days following the announcement of such change.

(2) Consideration per $1,000 principal amount of Old Notes. The maximum aggregate principal amount of New Senior Secured Notes issuable in the exchange offers will not exceed $3.0 billion.

(3) Excludes the consent payment of $2.50 per $1,000 principal amount of an issue of Consent Notes payable in cash with respect to Consents received in respect of such Consent Notes at or prior to the Consent Date, subject to requisite Consents being received in respect of such Consent Notes Indenture (as defined below) and a Supplemental Indenture (as defined below) for such Consent Notes Indenture being executed.

(4) Texas Competitive Electric Holdings Company LLC.

(5) The aggregate principal amount of New Senior Secured Notes issuable in exchange for Priority 2 Notes (as defined below) will not exceed $1.5 billion and will be less than such amount to the extent necessary for the total principal amount of New Senior Secured Notes issued in the exchange offers not to exceed the Maximum Exchange Amount. No Priority 2 Notes will be accepted for exchange if the New Senior Secured Notes that will be issued in exchange for Priority 1 Notes would equal or, prior to giving effect to proration, exceed the Maximum Exchange Amount.

The maximum aggregate principal amount of New Senior Secured Notes issuable in the exchange offers (including New Senior Secured Notes issued in lieu of accrued and unpaid payment-in-kind interest on the exchange of Old Toggle Notes) will not exceed $3.0 billion, which is referred to in this Prospectus as the "Maximum Exchange Amount." In addition, the aggregate principal amount of New Senior Secured Notes

Confidential

EFIHMW00245720

PX 014
Page 2 of 1116

issuable in exchange for Old Notes that have an Acceptance Priority Level of Level 2 (collectively, the "Priority 2 Notes") will not exceed $1.5 billion, which is referred to in this Prospectus as the "Priority Level 2 Cap," and will be less than such amount to the extent necessary for the total principal amount of New Senior Secured Notes issued in the exchange offers not to exceed the Maximum Exchange Amount. The maximum principal amount of each issue of Old Notes that will be accepted for exchange is the outstanding principal amount of such issue, as limited by the Acceptance Priority Levels, the Maximum Exchange Amount (and, in the case of the Priority 2 Notes, the Priority Level 2 Cap) and the possible prorations resulting therefrom. The exchange offers are not conditioned on a minimum principal amount of any issue of Old Notes being validly tendered and not validly withdrawn. Subject to applicable law, the Offerors reserve the right, but are not obligated, to increase or decrease the Maximum Exchange Amount and/or the Priority Level 2 Cap and/or to change Acceptance Priority Levels. If a change is made to the amount of securities offered to be exchanged pursuant to any exchange offer, including any change to the Maximum Exchange Amount, the Priority Level 2 Cap and/or the Acceptance Priority Levels, as applicable, such exchange offer will remain open for at least ten business days following the announcement of such change.

The principal amount of New Senior Secured Notes issuable in respect of each $1,000 principal amount of Old Notes accepted for exchange is set forth in the table above. All participating holders will also receive, with respect to any of their Old Notes (other than Old Toggle Notes (as defined below)) accepted for exchange, an amount equal to accrued and unpaid interest, if any, in cash, from the last applicable interest payment date to, but not including, the Settlement Date (as defined below). All participating holders of EFH Corp.'s 11.250%/ 12.000% Senior Toggle Notes due 2017 (the "Old Toggle Notes") will also receive in the exchange offers, with respect to any of their Old Toggle Notes accepted for exchange, in lieu of accrued and unpaid payment-in-kind interest with respect to such Old Toggle Notes, if any, from the last applicable interest payment date to, but not including, the Settlement Date, additional New Senior Secured Notes paid in accordance with the applicable consideration listed on page ii of this Prospectus.

Concurrent with the exchange offers, and on the terms and subject to the conditions set forth in this Prospectus and the Consent and Letter of Transmittal, EFH Corp. is soliciting (the "consent solicitations") consents (the "Consents") from holders of Consent Notes to certain proposed amendments (with respect to each issue of Consent Notes, the "Proposed Amendments") to:

- the Indenture, dated as of November 1, 2004, by and between EFH Corp. and The Bank of New York Mellon (formerly known as The Bank of New York) ("BONYM"), as trustee, pursuant to which EFH Corp.'s 5.55% Series P Senior Notes due 2014 were issued (the "Series P Notes Indenture");

- the Indenture, dated as of November 1, 2004, by and between EFH Corp. and BONYM, as trustee, pursuant to which EFH Corp.'s 6.50% Series Q Senior Notes due 2024 were issued (the "Series Q Notes Indenture");

- the Indenture, dated as of November 1, 2004, by and between EFH Corp. and BONYM, as trustee, pursuant to which EFH Corp.'s 6.55% Series R Senior Notes due 2034 were issued (the "Series R Notes Indenture" and, collectively with the Series P Notes Indenture and the Series Q Notes Indenture, the "Legacy Notes Indentures," and the Old Notes issued thereunder, the "Legacy Notes"); and

- the Indenture, dated as of October 31, 2007, by and among EFH Corp., the guarantors named therein and The Bank of New York Mellon Trust Company, N.A. (as successor to BONYM), as trustee, pursuant to which EFH Corp.'s 10.875% Senior Notes due 2017 and EFH Corp.'s 11.250%/12.000% Senior Toggle Notes due 2017 were issued, as amended and supplemented by the first and second supplemental indentures thereto (the "2017 Notes Indenture," and the Old Notes issued thereunder, the "2017 Notes").

We refer to the Legacy Notes and the 2017 Notes, collectively, as the "Consent Notes" and the Legacy Notes Indentures and the 2017 Notes Indenture, collectively, as the "Consent Notes Indentures."

The Proposed Amendments would eliminate substantially all of the restrictive covenants and references thereto contained in the Consent Notes Indentures and the Consent Notes, eliminate certain events of default,

Confidential

EFIHMW00245721

modify covenants regarding mergers and consolidations and modify or eliminate certain other provisions, including the limitation on the incurrence of secured indebtedness in the Legacy Notes Indentures and the limitation on the incurrence of indebtedness and liens in the 2017 Notes Indenture, such that an unlimited amount of secured debt could be issued by EFH Corp. under the terms of the Consent Notes Indentures, and certain provisions relating to defeasance contained in the 2017 Notes Indenture and 2017 Notes which would otherwise prevent a defeasance without, among other things, delivery of an opinion of counsel confirming such defeasance does not constitute a taxable event. In addition to the foregoing, execution and delivery of the Consent and Letter of Transmittal will constitute an express waiver by a consenting holder of the Consent Notes with respect to all claims against the Offerors and the Sponsor Group (as defined below) of any breach, default or event of default that may have arisen under the Consent Notes Indentures. See "Proposed Amendments" for additional information regarding the Proposed Amendments.

In order to be adopted with respect to a particular issue of Consent Notes, the applicable Proposed Amendments must be consented to by the holders of at least a majority of the outstanding aggregate principal amount of such issue of Consent Notes, voting as a separate class; provided, however, that the holders of both issues of the 2017 Notes vote together as a single class and, accordingly, the Proposed Amendments to the 2017 Notes Indenture must be consented to by the holders of at least a majority of the outstanding aggregate principal amount of all the 2017 Notes voting together as a single class. It is expected but not required that the supplemental indenture for each issue of Consent Notes relating to the Proposed Amendments (collectively, the "Supplemental Indentures") will be executed promptly following the Consent Date assuming receipt of the requisite Consents for the Proposed Amendments. The Supplemental Indentures relating to the Proposed Amendments will become effective immediately upon their execution and delivery by the parties thereto; however, the Proposed Amendments contained therein will not become operative until immediately prior to the acceptance for exchange of Old Notes upon the terms and subject to the conditions set forth in this Prospectus. Consent Notes held by members of the Sponsor Group and their affiliates will not be considered outstanding for the purposes of determining whether the holders of the required outstanding principal amount of any issue of Consent Notes have delivered Consents necessary to adopt the Proposed Amendments with respect to such issue of Consent Notes.

The Proposed Amendments with respect to each of the Legacy Notes Indentures constitute a single proposal for the related consent solicitation, and a consenting holder must consent to the Proposed Amendments applicable to all Legacy Notes tendered by that holder as an entirety and may not consent selectively with respect to certain of the Proposed Amendments. The Proposed Amendments with respect to the 2017 Notes Indenture constitute a single proposal for the related consent solicitation, and a consenting holder must consent to the Proposed Amendments applicable to all 2017 Notes tendered by that holder as an entirety and may not consent selectively with respect to certain of the Proposed Amendments.

Consent Notes validly tendered pursuant to the exchange offers (and not validly withdrawn) at or prior to the Consent Date will be deemed to include Consents to the Proposed Amendments. The completion, execution and delivery of a Consent and Letter of Transmittal, or transmission of an Agent's Message (as defined below), in connection with a valid tender of Consent Notes pursuant to the applicable exchange offer at or prior to the Consent Date will constitute the delivery of Consents with respect to such Consent Notes. Holders may not validly tender Consent Notes in the exchange offers at or prior to the Consent Date without delivering the related Consents. If the Expiration Date is extended but the Consent Date is not extended, holders may tender Consent Notes after the Consent Date and at or prior to the Expiration Date as it may have been extended without delivering Consents but holders tendering Consent Notes after the Consent Date will not be eligible to receive the cash consent payment. Holders may not deliver Consents in the consent solicitations without validly tendering their Consent Notes in the exchange offers at or prior to the Consent Date and may only validly revoke Consents by validly withdrawing the previously tendered related Consent Notes at or prior to the Consent Date or by revoking Consents after the Consent Date and prior to the execution of the Supplemental Indenture to which such Consents relate. If the requisite Consents with respect to a given Consent Notes Indenture are received and a Supplemental Indenture for such Consent Notes Indenture is executed, EFH Corp. will pay to each holder that validly delivers and does not validly revoke Consents in respect of such Consent Notes, in addition to any Total

iv

EFIHMW00245722

Consideration payable to such holder, a cash consent payment of $2.50 per $1,000 principal amount of such Consent Notes. Consent payments are not subject to proration. The consent payments will be made on the Settlement Date or promptly following the termination of the exchange offers, as applicable, assuming that the conditions to such payments are satisfied. EFH Corp.'s obligation to make consent payments is not conditioned upon completion of the exchange offers but is subject to receipt of the requisite Consents and execution of the Supplemental Indenture to which such Consents relate. The Proposed Amendments in any executed Supplemental Indenture relating to the Consent Notes that were the subject of a terminated exchange offer will not become operative with respect to such issue of Consent Notes.

**Tendered Old Notes may be validly withdrawn at any time prior to the Expiration Date (and, if not previously accepted for exchange, after the expiration of 40 business days from October 5, 2009). Consents may only be validly revoked by validly withdrawing the previously tendered related Consent Notes at or prior to the Consent Date or by revoking Consents after the Consent Date and prior to the execution of the Supplemental Indenture to which such Consents relate. See "Procedures for Tendering Old Notes and Delivering Consents."**

Subject to applicable law, each exchange offer and each consent solicitation is being made independently of the other exchange offers and consent solicitations, and the Offerors reserve the right to terminate, withdraw or amend each exchange offer and each consent solicitation independently of the other exchange offers and consent solicitations at any time and from time to time, as described in this Prospectus.

The exchange offers are not conditioned on any minimum principal amount of Old Notes being validly tendered or the issuance of a minimum principal amount of New Senior Secured Notes or the receipt of requisite Consents to adopt any of the Proposed Amendments. However, the exchange offers and the consent solicitations are subject to the satisfaction or waiver of a number of conditions as set forth in this Prospectus, including the conditions applicable to the exchange offers that the registration statement of which this Prospectus forms part has been declared effective by the Securities and Exchange Commission (the "SEC") and that the New EFH Senior Secured Notes and the New EFIH Senior Secured Notes to be issued in the exchange offers are approved for listing on the New York Stock Exchange, subject to notice of issuance (which conditions cannot be waived). See "Conditions of the Exchange Offers and the Consent Solicitations." In addition, subject to applicable law, the Offerors have the right to terminate or withdraw any of the exchange offers and the consent solicitations if any of the conditions described under the "Conditions of the Exchange Offers and the Consent Solicitations" are not satisfied or waived by the Expiration Date.

*Summary of Amendments to Exchange Offers Announced on October 23, 2009*

The Offerors initially commenced the exchange offers and consent solicitations on October 5, 2009. Certain terms of the exchange offers and consent solicitations were amended on October 23, 2009 and this Prospectus reflects those amended terms.

The amendments to the exchange offers and consent solicitations announced on October 23, 2009 include:

- reducing the Maximum Exchange Amount for the exchange offers from $4.0 billion to $3.0 billion and specifying that any consideration paid in the exchange offers will be payable 45% in New EFH Senior Secured Notes and 55% in New EFIH Senior Secured Notes, in each case as described in this Prospectus,

- extending the Expiration Date for the exchange offers to midnight, New York City time, on November 10, 2009,

- extending the Consent Date for the consent solicitations to midnight, New York City time, on November 10, 2009, and

- eliminating the Early Tender Date for the exchange offers, such that all holders whose Old Notes are validly tendered and not validly withdrawn at the Expiration Date and are accepted by the Offerors will receive the applicable Total Consideration for such Old Notes.

v

EFIHMW00245723

## TABLE OF CONTENTS

ABOUT THIS PROSPECTUS . . . . . . . . . . . .  vi
INDUSTRY AND MARKET
   INFORMATION . . . . . . . . . . . . . . . . . . . . .  vii
AVAILABLE INFORMATION . . . . . . . . . . . .  vii
FORWARD-LOOKING STATEMENTS . . . .  viii
QUESTIONS AND ANSWERS ABOUT THE
   EXCHANGE OFFERS AND THE
   CONSENT SOLICITATIONS . . . . . . . . . . .  1
SUMMARY  . . . . . . . . . . . . . . . . . . . . . . . . . .  10
RISK FACTORS . . . . . . . . . . . . . . . . . . . . . . .  43
USE OF PROCEEDS . . . . . . . . . . . . . . . . . . .  88
CAPITALIZATION . . . . . . . . . . . . . . . . . . . . .  89
THE TRANSACTIONS . . . . . . . . . . . . . . . . . .  92
SELECTED HISTORICAL
   CONSOLIDATED FINANCIAL DATA
   FOR EFH CORP. AND ITS
   SUBSIDIARIES  . . . . . . . . . . . . . . . . . . . . .  95
SELECTED HISTORICAL
   CONSOLIDATED FINANCIAL DATA
   FOR EFIH AND ITS SUBSIDIARIES . . . . .  100
SELECTED HISTORICAL
   CONSOLIDATED FINANCIAL DATA
   FOR EFCH AND ITS SUBSIDIARIES . . . .  104
GENERAL TERMS OF THE EXCHANGE
   OFFERS AND CONSENT
   SOLICITATIONS . . . . . . . . . . . . . . . . . . . .  108
PROPOSED AMENDMENTS . . . . . . . . . . . .  114
ACCEPTANCE OF OLD NOTES;
   ACCRUAL OF INTEREST  . . . . . . . . . . . . .  118
PROCEDURES FOR TENDERING OLD
   NOTES AND DELIVERING
   CONSENTS  . . . . . . . . . . . . . . . . . . . . . . . .  120
WITHDRAWAL OF TENDERS AND
   REVOCATION OF CONSENTS . . . . . . . . .  124
CONDITIONS OF THE EXCHANGE
   OFFERS AND THE CONSENT
   SOLICITATIONS . . . . . . . . . . . . . . . . . . . .  126

EXCHANGE AGENT; INFORMATION
   AGENT; DEALER MANAGERS AND
   SOLICITATION AGENTS; OTHER
   ADVISORS  . . . . . . . . . . . . . . . . . . . . . . . . .  128
DESCRIPTION OF THE EFH CORP.
   NOTES  . . . . . . . . . . . . . . . . . . . . . . . . . . . .  131
DESCRIPTION OF THE EFIH NOTES . . . . .  220
COMPARISON OF PRINCIPAL
   DIFFERENCES AMONG OLD NOTES
   AND NEW SENIOR SECURED
   NOTES  . . . . . . . . . . . . . . . . . . . . . . . . . . . .  306
BOOK-ENTRY, DELIVERY AND FORM . . .  336
MATERIAL U.S. FEDERAL INCOME TAX
   CONSIDERATIONS  . . . . . . . . . . . . . . . . . .  338
CERTAIN ERISA CONSIDERATIONS . . . . .  348
LEGAL MATTERS . . . . . . . . . . . . . . . . . . . . .  349
EXPERTS . . . . . . . . . . . . . . . . . . . . . . . . . . . .  350
INDEX TO FINANCIAL STATEMENTS
   AND FINANCIAL STATEMENT
   ANALYSIS . . . . . . . . . . . . . . . . . . . . . . . . .  F-1
ANNEX A—DEFINITIONS . . . . . . . . . . . . . .  A-1
ANNEX B—EFH CORP. INFORMATION . .  B-1
ANNEX C—EFIH AND EFIH FINANCE
   INFORMATION . . . . . . . . . . . . . . . . . . . . .  C-1
ANNEX D—EFCH INFORMATION . . . . . . .  D-1

### ABOUT THIS PROSPECTUS

This Prospectus is part of a registration statement that we have filed with the SEC. You should read this Prospectus, including the annexes, together with the registration statement, the exhibits thereto and the additional information described under the heading "Available Information." This Prospectus includes the annexes attached hereto. To the extent information or any statement in any annex to this Prospectus is inconsistent with information or statements contained in this Prospectus not included in the annexes, the information or statements in such annex shall be deemed to be modified or superseded by any such information or statements in the Prospectus not included in the annexes.

**You should rely only on the information included in this Prospectus. Neither the Offerors nor the Dealer Managers (as defined below) have authorized any person (including any dealer, salesperson or**

vi

EFIHMW00245724

**broker) to provide you with different information. If anyone should provide you with different or inconsistent information, you should not rely on it. The information included in this Prospectus is accurate as of the date of this Prospectus. You should not assume that the information included in this Prospectus is accurate as of any other date.**

The exchange offers and consent solicitations are being made on the basis of this Prospectus and the Consent and Letter of Transmittal and are subject to the terms described in this Prospectus and the Consent and Letter of Transmittal and the indentures governing the New Senior Secured Notes. The Prospectus does not constitute an offer to participate in the exchange offers to any person in any jurisdiction in which it would be unlawful to make such exchange offers. Any decision to participate in the exchange offers and consent solicitations must be based on the information included in this Prospectus. In making an investment decision, prospective investors must rely on their own examination of us and the terms of the exchange offers and the New Senior Secured Notes, including the merits and risks involved. Investors should not construe anything in this Prospectus and the Consent and Letter of Transmittal as legal, investment, business or tax advice. Each investor should consult its advisors as needed to make its investment decision and to determine whether it is legally permitted to participate in the exchange offers and consent solicitations under applicable laws or regulations.

This Prospectus contains summaries believed to be accurate with respect to certain documents, but reference is made to the actual documents themselves for complete information. All such summaries are qualified in their entirety by such reference. Copies of documents referred to in this Prospectus will be made available to holders in the exchange offers and the consent solicitations at no cost. See "Available Information."

You should not rely on or assume the accuracy of any representation or warranty in any agreement that we have filed as an exhibit to any document that we have publicly filed or that we may otherwise publicly file in the future because such representation or warranty may be subject to exceptions and qualifications contained in separate disclosure schedules, may have been included in such agreement for the purpose of allocating risk between the parties to the particular transaction, and may no longer continue to be true as of any given date.

---

## INDUSTRY AND MARKET INFORMATION

The industry and market data and other statistical information used throughout this Prospectus are based on independent industry publications, government publications, reports by market research firms or other published independent sources, including certain data published by Electric Reliability Council of Texas ("ERCOT"), the Public Utility Commission of Texas (the "PUCT"), or Potomac Economics, Inc., the market monitor for the ERCOT market. We did not commission any of these publications or reports. Some data is also based on our good faith estimates, which are derived from our review of internal surveys, as well as the independent sources listed above. Independent industry publications and surveys generally state that they have obtained information from sources believed to be reliable but do not guarantee the accuracy and completeness of such information. While we believe that each of these studies and publications is reliable, we have not independently verified such data and make no representation as to the accuracy of such information. Forecasts are particularly likely to be inaccurate, especially over long periods of time, and we do not know what assumptions regarding general economic growth are used in preparing the forecasts included in this Prospectus. Similarly, while we believe that our internal and external research is reliable, such research has not been verified by any independent sources, and we make no assurances that the predictions contained therein are accurate.

## AVAILABLE INFORMATION

EFH Corp. and Energy Future Competitive Holdings Company ("EFCH"), the parent company of Texas Competitive Electric Holdings Company LLC ("TCEH"), each files annual, quarterly and current reports and other information with the SEC. You may read and copy any document EFH Corp. or EFCH has filed or will file with the SEC at the SEC's public website (www.sec.gov) or at the Public Reference Room of the SEC located at

vii

Confidential

EFIHMW00245725

100 F Street, N.E., Washington, DC 20549. Copies of such materials can be obtained from the Public Reference Room of the SEC at prescribed rates. You can call the SEC at 1-800-SEC-0330 to obtain information on the operation of the Public Reference Room. These materials do not form part of this Prospectus.

## FORWARD-LOOKING STATEMENTS

This Prospectus contains "forward-looking statements." All statements, other than statements of historical facts, that are included in this Prospectus, or made in presentations, in response to questions or otherwise, that address activities, events or developments that we expect or anticipate to occur in the future, including such matters as projections, capital allocation, future capital expenditures, business strategy, competitive strengths, goals, future acquisitions or dispositions, development or operation of power generation assets, market and industry developments and the growth of our businesses and operations (often, but not always, through the use of words or phrases such as "will likely result," "are expected to," "will continue," "is anticipated," "estimated," "projection," "target," "goal," "objective," and "outlook"), are forward-looking statements. Although we believe that in making any such forward-looking statement our expectations are based on reasonable assumptions, any such forward-looking statement involves uncertainties and is qualified in its entirety by reference to the discussion of risk factors under "Risk Factors" contained elsewhere in this Prospectus and the following important factors, among others, that could cause our actual results to differ materially from those projected in such forward-looking statements:

- prevailing governmental policies and regulatory actions, including those of the Texas Legislature, the Governor of Texas, the Congress of the United States of America, the United States Federal Energy Regulatory Commission ("FERC"), the PUCT, the Railroad Commission of Texas, the United States Nuclear Regulatory Commission (the "NRC"), the United States Environmental Protection Agency or the Texas Commission on Environmental Quality, with respect to, among other things:

  - allowed prices;

  - allowed rates of return;

  - permitted capital structure;

  - industry, market and rate structure;

  - recovery of investments;

  - purchased power;

  - operations of nuclear generating facilities;

  - operations of mines;

  - acquisitions and disposal of assets and facilities;

  - development, construction and operation of facilities;

  - decommissioning costs;

  - present or prospective wholesale and retail competition;

  - changes in tax laws and policies; and

  - changes in and compliance with environmental and safety laws and policies, including climate change initiatives;

- legal and administrative proceedings and settlements;

- general industry trends;

- economic conditions, including the current recessionary environment;

viii

Confidential

EFIHMW00245726

- our ability to attract and retain profitable customers;

- our ability to profitably serve our customers;

- restrictions on competitive retail pricing;

- changes in wholesale electricity prices or energy commodity prices;

- changes in prices of transportation of natural gas, coal, crude oil and other refined products;

- unanticipated changes in market heat rates in the ERCOT electricity market;

- our ability to effectively hedge against changes in commodity prices, market heat rates and interest rates;

- weather conditions and other natural phenomena, and acts of sabotage, wars or terrorist activities;

- unanticipated population growth or decline, or changes in market demand and demographic patterns;

- changes in business strategy, development plans or vendor relationships;

- access to adequate transmission facilities to meet changing demands;

- unanticipated changes in interest rates, commodity prices, rates of inflation or foreign exchange rates;

- unanticipated changes in operating expenses, liquidity needs and capital expenditures;

- commercial bank market and capital market conditions and the potential impact of continued disruptions in the U.S. credit markets;

- competition for new energy development and other business opportunities;

- the inability of various counterparties to meet their obligations with respect to our financial instruments;

- hazards customary to the industry and the possibility that we may not have adequate insurance to cover losses resulting from such hazards;

- changes in technology used by and services offered by us;

- significant changes in our relationship with our employees, including the availability of qualified personnel, and the potential adverse effects if labor disputes or grievances were to occur;

- changes in assumptions used to estimate costs of providing employee benefits, including pension benefits and other postretirement employee benefits ("OPEB"), and future funding requirements related thereto;

- changes in assumptions used to estimate future executive compensation payments;

- significant changes in critical accounting policies;

- access to capital, the cost of such capital, and the results of financing and refinancing efforts, including availability of funds in the capital markets;

- financial restrictions placed on us by our credit facilities and indentures governing our debt instruments;

- our ability to generate sufficient cash flow to make interest payments on our debt instruments;

- actions by credit rating agencies;

- our ability to effectively execute our operational strategy;

- our ability to implement cost reduction initiatives;

- changes in electric transmission that allow additional generation to compete with our generation asset portfolios; and

ix

Confidential

- with respect to our lignite coal-fueled generation construction and development program, more specifically, our ability to fund such investments, changes in competitive market rules, adverse judicial rulings, changes in environmental laws or regulations, changes in electric generation and emissions control technologies, changes in projected demand for electricity, our ability and the ability of our contractors to attract and retain, at projected rates, skilled labor for constructing the new generating units, changes in wholesale electricity prices or energy commodity prices, transmission capacity and constraints, supplier performance risk, force majeure events, changes in the cost and availability of materials necessary for the construction program and our ability to manage the significant construction, commissioning and start-up program to a timely conclusion with limited cost overruns.

Any forward-looking statement speaks only as of the date on which it is made, and except as may be required by applicable law, we undertake no obligation to update any forward-looking statement to reflect events or circumstances after the date on which it is made or to reflect the occurrence of unanticipated events. New factors emerge from time to time, and it is not possible for us to predict all of them; nor can we assess the impact of each such factor or the extent to which any factor, or combination of factors, may cause results to differ materially from those contained in any forward-looking statement. You should not unduly rely on such forward-looking statements.

x

Confidential

EFIHMW00245728

## QUESTIONS AND ANSWERS ABOUT THE EXCHANGE OFFERS AND THE CONSENT SOLICITATIONS

*These answers to questions that you may have as a holder of Old Notes are highlights of selected information included elsewhere in this Prospectus. To fully understand the exchange offers and consent solicitations and the considerations that may be important to your decision about whether to participate in the exchange offers and consent solicitations, you should carefully read this Prospectus in its entirety, including the section entitled "Risk Factors."*

**Why are you making the exchange offers?**

The purpose of the exchange offers is to reduce the outstanding principal amount and extend the weighted average maturity of the long-term debt of EFH Corp. and its subsidiaries.

**Why are you making the consent solicitations?**

The purpose of the consent solicitations is to adopt the Proposed Amendments which will provide EFH Corp. and its subsidiaries additional financial and operational flexibility.

**What securities are subject to the exchange offers?**

We are offering to exchange the outstanding notes listed in the table on page ii of this Prospectus in the exchange offers.

**What securities are subject to the consent solicitations?**

Each issue of the Legacy Notes and the 2017 Notes is subject to the consent solicitations.

**What amendments are you seeking to the Consent Notes Indentures?**

The Proposed Amendments would eliminate substantially all of the restrictive covenants and references thereto contained in the Consent Notes Indentures and the Consent Notes, eliminate certain events of default, modify covenants regarding mergers and consolidations and modify or eliminate certain other provisions, including the limitation on the incurrence of secured indebtedness in the Legacy Notes Indentures and the limitations on the incurrence of indebtedness and liens in the 2017 Notes Indenture, such that an unlimited amount of secured debt could be issued by EFH Corp. under the terms of the Consent Notes Indentures, and certain provisions relating to defeasance contained in the 2017 Notes Indenture and 2017 Notes which would otherwise prevent a defeasance without, among other things, delivery of an opinion of counsel confirming such defeasance does not constitute a taxable event. See "Proposed Amendments" for additional information regarding the Proposed Amendments.

**What aggregate principal amount of each issue of Old Notes is being sought in the exchange offers?**

Subject to the terms and conditions of the exchange offers, we will accept for exchange, in accordance with the Acceptance Priority Levels described elsewhere in this Prospectus, a principal amount of Old Notes of each issue such that the Maximum Exchange Amount and the Priority Level 2 Cap are not exceeded. In the event that either the Maximum Exchange Amount or the Priority Level 2 Cap is exceeded, the Old Notes will be subject to proration in accordance with the Acceptance Priority Levels as described in "General Terms of the Exchange Offers and Consent Solicitations—Acceptance; Priority Proration."

1

**What aggregate principal amount of New Senior Secured Notes will be issued in the exchange offers?**

The maximum aggregate principal amount of New Senior Secured Notes issuable in the exchange offers (including New Senior Secured Notes issued in lieu of accrued and unpaid payment-in-kind interest on the exchange of Old Toggle Notes) will not exceed $3.0 billion, which is referred to in this Prospectus as the "Maximum Exchange Amount." In addition, the aggregate principal amount of New Senior Secured Notes issued in exchange for Priority 2 Notes will not exceed $1.5 billion, which is referred to in this Prospectus as the "Priority Level 2 Cap," and will be less than such amount to the extent necessary for the total principal amount of New Senior Secured Notes issued in the exchange offers not to exceed the Maximum Exchange Amount. The maximum principal amount of each issue of Old Notes that will be accepted for exchange is the outstanding principal amount of such issue, as limited by the Acceptance Priority Levels, the Maximum Exchange Amount (and, in the case of the Priority 2 Notes, the Priority Level 2 Cap) and the possible prorations resulting therefrom. The exchange offers are not conditioned on a minimum principal amount of any issue of Old Notes being validly tendered and not validly withdrawn. Subject to applicable law, the Offerors reserve the right, but are not obligated, to increase or decrease the Maximum Exchange Amount and/or the Priority Level 2 Cap and/or to change Acceptance Priority Levels. If a change is made to the amount of securities offered to be exchanged pursuant to any exchange offer, including any change to the Maximum Exchange Amount, the Priority Level 2 Cap and/or the Acceptance Priority Levels, as applicable, such exchange offer will remain open for at least ten business days following the announcement of such change.

The consideration payable in the exchange offers will be paid 45% in New EFH Senior Secured Notes and 55% in New EFIH Senior Secured Notes.

**What will I receive in the exchange offers if my Old Notes are accepted for exchange?**

Upon the terms and subject to the conditions of the exchange offers, including the Acceptance Priority Levels, the Maximum Exchange Amount and the Priority Level 2 Cap and the possible prorations resulting therefrom, in exchange for each $1,000 principal amount of Old Notes validly tendered (and not validly withdrawn) at or prior to the Expiration Date, participating holders of Old Notes will be eligible to receive the "Total Consideration" listed in the table on page ii of this Prospectus under "Total Consideration if Tendered at or Prior to the Expiration Date." This Total Consideration will be payable 45% in New EFH Senior Secured Notes and 55% in New EFIH Senior Secured Notes. See "Description of the EFH Corp. Notes" and "Description of the EFIH Notes" for information regarding the terms of the New EFH Senior Secured Notes and the New EFIH Senior Secured Notes, respectively. Old Notes will be accepted in the exchange offers in accordance with the Acceptance Priority Levels, and only in an amount such that the Maximum Exchange Amount and the Priority Level 2 Cap are not exceeded. Therefore, the amount of Old Notes of any issue validly tendered and not validly withdrawn by a participating holder that are accepted for exchange may be subject to proration. The Offerors will not accept any tender of Old Notes that would result in the issuance of less than $2,000 principal amount of New EFH Senior Secured Notes or New EFIH Senior Secured Notes to a participating holder.

**What are the differences between the Old Notes and the New Senior Secured Notes?**

There are important differences between the Old Notes and the New Senior Secured Notes, including that EFIH's guarantee of the New EFH Senior Secured Notes and the New EFIH Senior Secured Notes will each be secured by EFIH's pledge of 100% of the membership interests and other investments it owns in Oncor Electric Delivery Holdings Company LLC ("Oncor Holdings") (such membership interests and other investments, the "Collateral"), which currently represents an approximate 80% equity interest in Oncor Electric Delivery Company LLC ("Oncor"). See "Comparison of Principal Differences Among Old Notes and New Senior Secured Notes" for more information.

**When do the exchange offers expire?**

The exchange offers will expire at midnight, New York City time, on November 10, 2009, unless extended.

Confidential

EFIHMW00245730

**When do the consent solicitations expire?**

The consent solicitations will expire at midnight, New York City time, on November 10, 2009, unless extended.

**Until when may I withdraw Old Notes previously tendered for exchange in the exchange offers?**

Tendered Old Notes may be withdrawn at any time at or prior to the Expiration Date. In addition, if not previously accepted for exchange, Old Notes may be withdrawn after the expiration of 40 business days from October 5, 2009.

**Until when may I revoke Consents previously delivered in the consent solicitations?**

Consents may be revoked at any time at or prior to the later of the Consent Date and the execution of the Supplemental Indenture to which such Consents relate.

**In what denominations will the New Senior Secured Notes be issued? What will happen if I am otherwise entitled to New Senior Secured Notes in a lower principal amount?**

The New Senior Secured Notes will be issued in minimum denominations of $2,000 and integral multiples of $1,000 in excess thereof. Tenders of Old Notes pursuant to the exchange offers will be accepted only in principal amounts equal to permitted denominations for such Old Notes. The Offerors will not accept any tender of Old Notes that would result in the issuance of less than $2,000 principal amount of New Senior Secured Notes to a participating holder. The aggregate principal amount of New Senior Secured Notes issued to each participating holder for all Old Notes validly tendered (and not validly withdrawn) will be rounded down, if necessary, to $2,000 or the nearest whole multiple of $1,000 in excess thereof. This rounded amount will be the principal amount of New Senior Secured Notes you will receive, and no additional cash will be paid in lieu of any principal amount of New Senior Secured Notes not received as a result of such rounding down.

**Are the exchange offers subject to a minimum condition?**

No. The exchange offers are not conditioned on any minimum principal amount of Old Notes being validly tendered or the issuance of a minimum principal amount of New Senior Secured Notes or receipt of requisite Consents to adopt the Proposed Amendments. However, the exchange offers, and the consent solicitations, are subject to the satisfaction or waiver of a number of conditions set forth in this Prospectus, including the conditions applicable to the exchange offers that the registration statement of which this Prospectus forms a part has been declared effective by the SEC and that the New EFH Senior Secured Notes and the New EFIH Senior Secured Notes to be issued in the exchange offers are approved for listing on the New York Stock Exchange, subject to notice of issuance (which conditions cannot be waived). See "Conditions of the Exchange Offers and Consent Solicitations."

**Will some issues of Old Notes be given a higher acceptance priority in the exchange offers than other issues of Old Notes?**

Yes. Subject to the terms and conditions of the exchange offers, including the Maximum Exchange Amount and the Priority Level 2 Cap, Old Notes validly tendered (and not validly withdrawn) in the exchange offers will be accepted in order of the Acceptance Priority Levels, with Level 1 being the highest Acceptance Priority Level. Old Notes validly tendered (and not validly withdrawn) will be accepted by the Offerors in the exchange offers in the following order:

- First, all validly tendered (and not validly withdrawn) Old Notes that have an Acceptance Priority Level of 1 (collectively, the "Priority 1 Notes") will be accepted unless doing so would cause the

3

EFIHMW00245731

Maximum Exchange Amount to be exceeded, in which case such Priority 1 Notes will be accepted on a pro rata basis up to the greatest aggregate principal amount practicable that does not cause the Maximum Exchange Amount to be exceeded, and no Priority 2 Notes will be accepted for exchange; and

- Second, if the aggregate principal amount of Old Notes validly tendered in the exchange offers (and not validly withdrawn) by holders of Priority 1 Notes would not cause the Maximum Exchange Amount to be exceeded, all validly tendered (and not validly withdrawn) Priority 2 Notes will be accepted unless doing so, when taking into account Priority 1 Notes validly tendered (and not validly withdrawn) in the exchange offers, would cause the Maximum Exchange Amount or the Priority Level 2 Cap to be exceeded, in which case such Priority 2 Notes will be accepted on a pro rata basis up to the greatest aggregate principal amount practicable that, together with the Priority 1 Notes accepted for exchange, does not cause the Maximum Exchange Amount or the Priority Level 2 Cap to be exceeded.

The Offerors reserve the right to change the Acceptance Priority Levels in the event that the requisite Consents are not received or for other reasons, subject to applicable law. If a change is made to the amount of securities offered to be exchanged pursuant to any exchange offer, including any change to applicable Acceptance Priority Levels, such exchange offer will remain open for at least ten business days following the announcement of such change.

In the event that proration of an issue of validly tendered (and not validly withdrawn) Old Notes is required, if the Old Notes subject to proration are Priority 1 Notes, then all Priority 1 Notes will be treated equally in calculating the proration, and if the Old Notes subject to proration are Priority 2 Notes, then all Priority 2 Notes will be treated equally in calculating the proration. For example, if the aggregate principal amount of validly tendered (and not validly withdrawn) Priority 1 Notes would require $4.0 billion aggregate principal amount of New Senior Secured Notes to be issued in the exchange offers, then the principal amount of each tender of Priority 1 Notes would be reduced by approximately 25% (and the principal amount of New Senior Secured Notes to be issued in exchange of each such tender of Priority 1 Notes would be reduced accordingly), such that the aggregate principal amount of New Senior Secured Notes to be issued in the exchange offers would not exceed $3.0 billion.

In the event that proration of an issue of validly tendered (and not validly withdrawn) Old Notes is required, the Offerors will determine the final proration promptly after the Expiration Date and will announce the results of the final proration by press release. To determine the principal amount accepted of each tender subject to proration, the principal amount of such tender will be multiplied by the proration rate and the resultant amount rounded down to the nearest permitted denomination of the particular issue of Old Notes. The Offerors will not be able to determine the final proration prior to the Expiration Date.

**May I tender only a portion of the Old Notes that I hold?**

Yes. You may tender all or any portion of your Old Notes in order to participate in the exchange offers and consent solicitations. You should note that the Offerors will not accept any tender of Old Notes that would result in the issuance of less than $2,000 principal amount of New Senior Secured Notes to a participating holder. The aggregate principal amount of New Senior Secured Notes issued to each participating holder for all Old Notes validly tendered (and not validly withdrawn) will be rounded down, if necessary, to $2,000 or the nearest whole multiple of $1,000 in excess thereof. This rounded amount will be the principal amount of New Senior Secured Notes you will receive, and no additional cash will be paid in lieu of any principal amount of New Senior Secured Notes not received as a result of rounding down.

**If I want to tender my Consent Notes, am I required to deliver the related Consents?**

Consent Notes validly tendered pursuant to the exchange offers (and not validly withdrawn) at or prior to the Consent Date will be deemed to include Consents to the Proposed Amendments. The completion, execution

4

EFIHMW00245732

**PX 014**
**Page 14 of 1116**

and delivery of a Consent and Letter of Transmittal, or transmission of an Agent's Message, in connection with a valid tender of Consent Notes pursuant to the applicable exchange offer at or prior to the Consent Date will constitute the delivery of Consents with respect to such Consent Notes. Holders may not validly tender Consent Notes in the exchange offers at or prior to the Consent Date without delivering the related Consents. If the Expiration Date is extended but the Consent Date is not extended, holders may tender Consent Notes after the Consent Date and at or prior to the Expiration Date as it may have been extended without delivering Consents but holders tendering Consent Notes after the Consent Date will not be eligible to receive the cash consent payment.

Holders may not deliver Consents in the consent solicitations without validly tendering their Consent Notes in the exchange offers at or prior to the Consent Date and may only validly revoke Consents by validly withdrawing the previously tendered related Consent Notes at or prior to the Consent Date or by revoking Consents after the Consent Date and prior to the execution of the Supplemental Indenture to which such Consents relate.

**Will I receive a payment if I deliver Consents in the consent solicitations?**

If the requisite Consents with respect to a given Consent Notes Indenture are received and a Supplemental Indenture for such Consent Notes Indenture is executed, EFH Corp. will pay to each holder that validly delivers and does not validly revoke Consents in respect of such Consent Notes, in addition to any Total Consideration payable to such holder, a cash consent payment of $2.50 per $1,000 principal amount of such Consent Notes. Consent payments are not subject to proration. The consent payments will be made on the Settlement Date or promptly following the termination of the exchange offers, as applicable, assuming that the conditions to such payments are satisfied. EFH Corp.'s obligation to make consent payments is not conditioned upon completion of the exchange offers but is subject to receipt of the requisite Consents and execution of the Supplemental Indenture to which such Consents relate. The Proposed Amendments in any executed Supplemental Indenture relating to the Consent Notes that were the subject of a terminated exchange offer will not become operative with respect to such issue of Consent Notes.

**What principal amount of each issue of Consent Notes must Consent to the Proposed Amendments with respect to such Consent Notes in order for the applicable Proposed Amendments to be adopted?**

In order to be adopted with respect to a particular issue of Consent Notes, the applicable Proposed Amendments must be consented to by the holders of at least a majority of the outstanding aggregate principal amount of such issue of Consent Notes, voting as a separate class; provided, however, that the holders of the 2017 Notes (both the 11.250%/12.000% Senior Toggle Notes due 2017 and the 10.875% Senior Notes due 2017) vote together as a single class and, accordingly, the Proposed Amendments to the 2017 Notes Indenture must be consented to by the holders of at least a majority of the outstanding aggregate principal amount of all the 2017 Notes voting together as a single class. Consent Notes held by members of the Sponsor Group and their affiliates will not be considered outstanding for the purposes of determining whether the holders of the required outstanding principal amount of any issue of Consent Notes have delivered Consents necessary to adopt the Proposed Amendments with respect to such issue of Consent Notes.

**If the exchange offers are completed and I do not participate in the exchange offers, or I do not exchange all of my Old Notes in the exchange offers, or some of my Old Notes are not accepted for exchange, how will my rights and obligations under my remaining Old Notes be affected?**

If the Offerors complete the exchange offers, obligations with respect to any Consent Notes not tendered by holders or not accepted for exchange or otherwise left outstanding following the completion of the exchange offers will not be secured by the Collateral and will therefore be effectively subordinated to the New Senior Secured Notes to the extent of the value of the Collateral. Further, if the requisite Consents are received with respect to a given Consent Notes Indenture and the Supplemental Indenture giving effect to the related Proposed Amendments is executed and the Proposed Amendments become operative with respect to such Consent Notes

5

EFIHMW00245733

Indenture, holders of such Consent Notes left outstanding following completion of the exchange offers will no longer be entitled to the benefits of the covenants, events of default and other provisions that are eliminated or modified pursuant to such Proposed Amendments. In addition, due to the Acceptance Priority Levels, the Maximum Exchange Amount and the possible prorations resulting therefrom, following the completion of the exchange offers, a holder may still own Consent Notes for which the Proposed Amendments have become operative even though such holder validly tendered (and did not validly withdraw) all of its Consent Notes. To the extent that Old Notes are tendered and accepted in the exchange offers, any existing trading market for the remaining Old Notes may become further limited. The smaller outstanding principal amount may make the trading price of the Old Notes that are not tendered and accepted for payment more volatile. Consequently, the liquidity, market value and price volatility of Old Notes that remain outstanding may be materially and adversely affected. For a description of consequences of failing to tender your Old Notes pursuant to the exchange offers, see "Risk Factors—Risks to Holders of Old Notes Not Tendered or Not Accepted for Exchange."

**What do you intend to do with the Old Notes that are accepted for exchange in the exchange offers?**

Any Legacy Notes or any 10.25% Senior Notes due 2015 of TCEH and TCEH Finance, Inc. ("TCEH Finance") or 10.25% Senior Notes due 2015, Series B, of TCEH and TCEH Finance (collectively, the "TCEH Notes") exchanged in the exchange offers may remain outstanding and be held by EFH Corp., EFCH and/or EFIH. Any 2017 Notes exchanged in the exchange offers are expected to be retired and cancelled.

**Are you making a recommendation regarding whether I should participate in the exchange offers and consent solicitations?**

None of us, the Dealer Managers, the Exchange Agent, the Information Agent or any other person is making any recommendation as to whether or not you should tender your Old Notes for exchange in the exchange offers or deliver consents pursuant to the consent solicitations. You must make your own decision whether to tender Old Notes in the exchange offers and to deliver consents in the consent solicitations, and, if so, the amount of Old Notes as to which action is to be taken.

**When will I receive the Total Consideration and any accrued and unpaid interest and, if applicable, consent consideration for my Old Notes that are tendered and accepted for exchange pursuant to the exchange offers and for my Consents to the Proposed Amendments?**

The Total Consideration and any accrued and unpaid interest payable will be deposited with the Exchange Agent (or, upon its instruction, The Depository Trust Company ("DTC")), which will act as your agent for purposes of receiving New Senior Secured Notes and payment from the Offerors, on the Settlement Date. The consent payments will be made on the Settlement Date or promptly following the termination of the exchange offers, as applicable, assuming that the conditions to such payments are satisfied. Subject to the terms and conditions of the exchange offers, the Settlement Date for the exchange offers will occur promptly following the Expiration Date. Assuming that the exchange offers and consent solicitations are not extended, we expect that the Settlement Date will be on or about the third business day following the Expiration Date.

**Will I receive any accrued and unpaid interest on my Old Notes tendered for exchange in the exchange offers?**

All participating holders will also receive, with respect to any of their Old Notes (other than Old Toggle Notes) accepted for exchange, an amount equal to accrued and unpaid interest, if any, in cash, from the last applicable interest payment date to, but not including, the Settlement Date. All participating holders of Old Toggle Notes will also receive in the exchange offers, with respect to any of their Old Toggle Notes accepted for exchange, in lieu of accrued and unpaid payment-in-kind interest with respect to such Old Toggle Notes, if any, from the last applicable interest payment date to, but not including, the Settlement Date, additional New Senior Secured Notes paid in accordance with the applicable consideration listed on page ii of this Prospectus.

6

Confidential

EFIHMW00245734

**Will the New Senior Secured Notes issued in the exchange offers be freely tradable?**

New Senior Secured Notes issued in the exchange offers generally may be offered for resale, resold and otherwise transferred without further registration under the Securities Act of 1933, as amended (the "Securities Act"), and without delivery of a prospectus meeting the requirements of Section 10 of the Securities Act if the holder is not our "affiliate" within the meaning of Rule 144(a)(1) under the Securities Act. Any holder who is our affiliate at the time of the exchange must comply with the registration and prospectus delivery requirements of the Securities Act in connection with any resales, unless such sale or transfer is made pursuant to an exemption from such requirements and the requirements under applicable state securities laws. We have applied to list the New EFH Senior Secured Notes and the New EFIH Senior Secured Notes on the New York Stock Exchange. The exchange offers are subject to the condition that the New EFH Senior Secured Notes and the New EFIH Senior Secured Notes to be issued in the exchange offers are approved for listing on the New York Stock Exchange, subject to notice of issuance (which condition cannot be waived).

**Do you or any of your affiliates have any current plans to purchase any Old Notes that remain outstanding subsequent to the Expiration Date?**

No. Although we do not currently intend to do so, we may, following the completion, termination or withdrawal of the exchange offers, and subject to applicable law, purchase Old Notes in the open market, in privately negotiated transactions, through subsequent tender or exchange offers or otherwise. Any other purchases may be made on the same terms or on terms which are more or less favorable to holders than the terms of these exchange offers. We also reserve the right to repay any existing notes not tendered. If we decide to repurchase or repay Old Notes that are not tendered in the exchange offers on terms that are more favorable than the terms of the exchange offers, those holders who decided not to participate in the exchange offers could be better off than those that participated in the exchange offers.

**What are the conditions to the exchange offers and consent solicitations?**

The exchange offers and the consent solicitations are subject to the conditions described under "Conditions of the Exchange Offers and the Consent Solicitations," including the conditions applicable to the exchange offers that the registration statement of which this Prospectus forms a part has been declared effective by the SEC and that the New EFH Senior Secured Notes and the New EFIH Senior Secured Notes to be issued in the exchange offers are approved for listing on the New York Stock Exchange, subject to notice of issuance (which conditions cannot be waived). The exchange offers are not conditioned on any minimum principal amount of Old Notes being validly tendered or the issuance of a minimum principal amount of New Senior Secured Notes or the receipt of requisite Consents to adopt any of the Proposed Amendments. Subject to applicable law, the Offerors have the right to terminate or withdraw the exchange offers and the consent solicitations if any of the conditions described under "Conditions of the Exchange Offers and the Consent Solicitations" are not satisfied or waived by the Expiration Date.

**Under what circumstances can the exchange offers and consent solicitations be extended, amended or terminated?**

Subject to applicable law, the Offerors may terminate or withdraw, at their sole discretion, any of the exchange offers or the consent solicitations if any condition to the exchange offers and the consent solicitations is not satisfied or waived by the Expiration Date. The Offerors reserve the right, subject to applicable law, to (i) waive any and all of the conditions of the exchange offers and the consent solicitations (except for the conditions applicable to the exchange offers that the registration statement of which this Prospectus forms a part has been declared effective by the SEC and that the New EFH Senior Secured Notes and the New EFIH Senior Secured Notes to be issued in the exchange offers are approved for listing on the New York Stock Exchange, subject to notice of issuance (which conditions cannot be waived)) at or prior to the Expiration Date and (ii) amend the terms of the exchange offers or the consent solicitations. Any waiver or amendment may apply to

Confidential

EFIHMW00245735

one or more (but not necessarily all) of the exchange offers and consent solicitations. In the event that an exchange offer is terminated, withdrawn or otherwise not completed at or prior to the Expiration Date, no consideration will be paid or become payable to holders who have tendered their Old Notes pursuant to such exchange offer or delivered their Consents in such consent solicitations, as applicable, other than the consent payments with respect to an issue of Consent Notes for which requisite Consents were received and a Supplemental Indenture was executed. In any such event, (1) Old Notes previously tendered pursuant to the exchange offers will be promptly returned to the tendering holders and (2) the Proposed Amendments in any executed Supplemental Indenture relating to the Consent Notes that were the subject of such terminated exchange offer will not become operative with respect to such issue of Consent Notes. See "General Terms of the Exchange Offers and Consent Solicitations—Extension, Termination or Amendment."

**How will I be notified if the exchange offers and consent solicitations are extended, amended or terminated?**

Any extension, termination or amendment of the exchange offers or the consent solicitations will be followed as promptly as practicable by announcement thereof. An announcement in the case of an extension will be issued no later than 9:00 a.m., New York City time, on the next business day following the previously scheduled Expiration Date. Without limiting the manner in which the Offerors may choose to make such announcement, the Offerors will not, unless otherwise required by applicable law, have any obligation to publish, advertise or otherwise communicate any such announcement other than by making a release to a U.S. news agency or another means of announcement that the Offerors deem appropriate.

**How will the exchange offers and consent solicitations affect the trading markets for the Old Notes that are not exchanged?**

To the extent the exchange offers are completed, the aggregate principal amount of outstanding Old Notes will be reduced, with the amounts of those Old Notes at a higher Acceptance Priority Level likely to be reduced by the largest proportional amount. A reduction in the aggregate principal amount of outstanding Old Notes of any issue may materially and adversely affect the liquidity of the Old Notes of any such issue that remains outstanding after completion of the exchange offers. A series of securities with a small principal amount available for trading, or "float," could command a lower price than does a comparable series of securities with a larger float. Therefore, the market price for each issue of Old Notes that remains outstanding after completion of the exchange offers may be materially and adversely affected. A reduced float may also make the trading prices of any issue of Old Notes that are not exchanged more volatile. Following the completion of the exchange offers, an active trading market in the Old Notes may not exist and the trading price for the Old Notes not tendered by holders or not accepted for exchange may materially decline.

**Will the Offerors receive any cash proceeds from the exchange offers or the consent solicitations?**

No. The Offerors will not receive any cash proceeds from the exchange offers or the consent solicitations. Any Legacy Notes and TCEH Notes accepted for exchange in the exchange offers may remain outstanding and be held by EFH Corp., EFCH and/or EFIH. Any 2017 Notes accepted for exchange in the exchange offers are expected to be retired and cancelled.

**How do I tender my Old Notes for exchange in the exchange offers and deliver Consents in the consent solicitations?**

If a holder wishes to participate in the exchange offers and the consent solicitations, if applicable, and such holder's Old Notes are held by a custodial entity such as a broker, dealer, commercial bank, trust company or other nominee, such holder must instruct such custodial entity (pursuant to the procedures of the custodial entity) to tender the Old Notes and deliver the related Consents, if applicable. In order to participate in the consent solicitations, Consent Notes must be validly tendered (and not validly withdrawn), thereby delivering the related Consent, at or prior to the Consent Date.

8

EFIHMW00245736

Custodial entities that are participants in DTC must tender Old Notes and, if applicable, deliver Consents through DTC's Automated Tender Offer Program ("ATOP"), by which the custodial entity and the beneficial owner on whose behalf the custodial entity is acting agree to be bound by the Consent and Letter of Transmittal. **A Consent and Letter of Transmittal need not be completed and submitted in connection with tenders effected through ATOP.**

**How do I withdraw Old Notes previously tendered for exchange in the exchange offers and revoke Consents previously delivered in the consent solicitations?**

A holder may withdraw the tender of such holder's Old Notes at any time prior to the Expiration Date (and, if not previously accepted for exchange, after the expiration of 40 business days from October 5, 2009) by submitting a notice of withdrawal to the Exchange Agent using ATOP procedures and/or upon compliance with the other procedures described under "Withdrawal of Tenders and Revocation of Consents." The withdrawal of any Consent Notes at or prior to the Consent Date will constitute a revocation of the related Consents. Consents may not be revoked prior to the Consent Date except by withdrawing tendered Consent Notes at or prior to the Consent Date. Consents may be revoked after the Consent Date by revoking such Consents prior to the execution of the Supplemental Indenture to which such Consents relate. Because it is expected that the Supplemental Indentures will be executed promptly following the Consent Date assuming receipt of the requisite Consents for the Proposed Amendments, holders should not expect that they will be able to revoke their Consents after the Consent Date. Any Consents that are not revoked at or prior to the later of the Consent Date and the execution of the Supplemental Indenture to which such Consents relate may not be revoked thereafter, as further described under "Withdrawal of Tenders and Revocation of Consents."

**Will I have to pay any fees or commissions if I tender my Old Notes for exchange in the exchange offers?**

You will not be required to pay any fees or commissions to the Offerors, the Dealer Managers, the Exchange Agent or the Information Agent in connection with the exchange offers. If your Old Notes are held through a broker, dealer, commercial bank, trust company or other nominee that tenders your Old Notes on your behalf, your broker or other nominee may charge you a commission for doing so. You should consult your broker or other nominee to determine whether any charges will apply.

**Are there procedures for guaranteed delivery of Old Notes?**

No. The exchange offers will not provide for guaranteed delivery procedures with respect to any issue of Old Notes.

**What risks should I consider in deciding whether or not to tender my Old Notes in the exchange offers or deliver Consents in the consent solicitations?**

In deciding whether to participate in the exchange offers or consent solicitations, you should carefully consider the discussion of risks and uncertainties that are described in the section of this Prospectus entitled "Risk Factors."

**What are the material U.S. federal income tax considerations of my participating in the exchange offers and consent solicitations?**

Please see the section of this Prospectus entitled "Material U.S. Federal Income Tax Considerations." You should consult your own tax advisor for a full understanding of the tax considerations of participating in the exchange offers or consent solicitations.

**With whom may I talk if I have questions about the exchange offers or consent solicitations?**

If you have any questions or need help in tendering your Old Notes, please contact the Information Agent or the Exchange Agent whose addresses and telephone numbers are listed on the back cover of this Prospectus or your broker, dealer, commercial bank, trust company or other nominee through which your Old Notes are held.

9

Confidential

EFIHMW00245737

## SUMMARY

*This summary highlights selected information appearing elsewhere in this Prospectus. This summary is not complete and does not contain all of the information that you should consider before investing in the New Senior Secured Notes or delivering Consents with respect to the Consent Notes. You should carefully read this summary together with the entire Prospectus, including the information set forth in the section entitled "Risk Factors."*

*Unless the context otherwise requires or as otherwise indicated: references in this Prospectus to "we," "our" and "us" refer to Energy Future Holdings Corp. and its consolidated subsidiaries; references to "EFH Corp.," "EFCH," "TCEH" "EFIH" and "EFIH Finance" refer to Energy Future Holdings Corp., Energy Future Competitive Holdings Company, Texas Competitive Electric Holdings Company LLC, Energy Future Intermediate Holding Company LLC and EFIH Finance Inc., respectively, and not to any of their respective subsidiaries; and references to "Oncor Holdings" and "Oncor" refer to Oncor Electric Delivery Holdings Company LLC and Oncor Electric Delivery Company LLC, respectively.*

*On October 10, 2007, Texas Energy Future Merger Sub Corp ("Merger Sub") merged with and into EFH Corp. (the "Merger"). As a result of the Merger, investment funds associated with or designated by Kohlberg Kravis Roberts & Co. ("KKR"), TPG Capital, L.P. ("TPG") and Goldman, Sachs & Co. ("Goldman Sachs" and, together with KKR and TPG, the "Sponsor Group"), and certain other co-investors (collectively with the Sponsor Group, the "Investors"), own EFH Corp. through Texas Energy Future Holdings Limited Partnership ("Texas Holdings"), with the Sponsor Group controlling Texas Holdings' general partner, Texas Energy Future Capital Holdings LLC.*

### Our Businesses

We are a Dallas-based energy company that manages a portfolio of competitive and regulated energy businesses in Texas. EFH Corp. is a holding company conducting its operations principally through its subsidiaries, TCEH and Oncor. TCEH is wholly-owned, and EFH Corp. holds an approximate 80% indirect ownership interest in Oncor.

TCEH is a holding company for subsidiaries engaged in competitive electricity market activities largely in Texas including electricity generation, development and construction of new generation facilities, wholesale energy sales and purchases, commodity risk management and trading activities, and retail electricity sales. EFCH is the parent company of TCEH and a direct subsidiary of EFH Corp.

EFIH is a holding company for subsidiaries, including Oncor, principally engaged in providing delivery services to retail electric providers, including subsidiaries of TCEH, that sell power in the north-central, eastern and western parts of Texas.

As of September 30, 2009, TCEH owned or leased 16,139 megawatts ("MW") of generation capacity in Texas. TCEH's generation capacity consists of lignite/coal, nuclear and natural gas-fueled generation facilities. In addition, TCEH is the largest purchaser of wind-generated electricity in Texas and the fifth largest in the U.S. TCEH is currently constructing three lignite/coal-fueled generation units in Texas with expected generation capacity totaling approximately 2,200 MW. Permits have been obtained for construction of the three units, which are expected to come on-line in 2009 and 2010. TCEH provides competitive electricity and related services to more than 2.1 million retail electricity customers in Texas.

Oncor is engaged in regulated electricity transmission and distribution operations in Texas that are primarily regulated by the PUCT. Oncor provides both distribution services to retail electric providers that sell electricity to consumers and transmission services to other electricity distribution companies, cooperatives and

10

EFIHMW00245738

municipalities. Oncor operates the largest transmission and distribution system in Texas, delivering electricity to approximately three million homes and businesses and operating more than 117,000 miles of transmission and distribution lines. A significant portion of Oncor's revenues represent fees for delivery services provided to TCEH. Distribution revenues from TCEH represented 39% and 38% of Oncor's total revenues for the year ended December 31, 2008 and the nine months ended September 30, 2009, respectively.

EFH Corp. and Oncor have implemented certain structural and operational "ring-fencing" measures based on commitments made by Texas Holdings and Oncor to the PUCT that further separate Oncor from Texas Holdings and its other subsidiaries (collectively, the "Texas Holdings Group"). These measures also serve to mitigate Oncor's credit exposure to those entities and to reduce the risk that the assets and liabilities of Oncor would be substantively consolidated with the assets and liabilities of the Texas Holdings Group in the event of a bankruptcy of one or more of those entities.

At September 30, 2009, we had approximately 8,900 full-time employees, including approximately 2,700 employees under collective bargaining agreements.

## The Sponsor Group

### KKR

Established in 1976, KKR is a leading global alternative asset manager. KKR's franchise is sponsoring and managing funds that make investments in private equity, fixed income and other assets in North America, Europe, Asia and the Middle East. Throughout its history, KKR has brought a long-term investment approach, focusing on working in partnership with management teams of its portfolio companies and investing for future competitiveness and growth. KKR has more than $37.5 billion in private equity assets under management and more than $13.3 billion in credit assets under management as of June 30, 2009 through various private and publicly traded funds and separately managed accounts. KKR also carries out capital markets activities through its broker dealer subsidiaries. KKR has offices in New York, Menlo Park, San Francisco, Houston, Washington D.C., London, Paris, Hong Kong, Tokyo, Beijing, Mumbai, Dubai and Sydney.

### TPG

TPG manages one of the world's leading private investment firms with approximately $45 billion of assets under management as of June 30, 2009. The firm was founded in 1992 and is led by David Bonderman and James G. Coulter. Through its global buyout platform, TPG Capital, the firm generally makes significant investments in companies through acquisitions and restructurings across a broad range of industries throughout North America, Europe, Asia and Australia. Notable investments by TPG's energy, power and commodities practice have included Texas Genco, Kraton Polymers and the Vita Group.

### Goldman Sachs

The Goldman Sachs Group, Inc. is a bank holding company and a leading global investment banking, securities and investment management firm. Established in 1986, the firm's Principal Investment Area ("PIA") is part of the Merchant Banking Division and includes the GS Capital Partners, GS Loan Partners and GS Mezzanine Partners funds. Since 1986, PIA has formed 15 investment vehicles aggregating $80 billion of capital. GS Capital Partners VI, L.P., with $20.3 billion in equity, is the Goldman Sachs Group, Inc.'s current primary investment vehicle for privately negotiated equity investments across the globe.

11

Confidential

**Organizational Structure**

The chart below is a summary of EFH Corp.'s organizational and ownership structure and illustrates our long-term debt as of September 30, 2009, as well as the New Senior Secured Notes offered by this Prospectus. Please see "Capitalization" for further information regarding our outstanding debt amounts after giving effect to the completion of the exchange offers. The chart below excludes subsidiaries of EFH Corp. that are not subsidiaries of EFIH or EFCH, including TXU Receivables Company. TXU Receivables Company conducts an accounts receivable securitization program.



(1)  Represents Old Notes subject to the exchange offers and consent solicitations.
(2)  The consideration payable in the exchange offers will be paid 45% in New EFH Senior Secured Notes and 55% in New EFIH Senior Secured Notes.
(3)  Represents Old Notes subject to the exchange offers.
(4)  Substantially all of the subsidiaries of TCEH are engaged in competitive market activities.

12

### Additional Information

EFH Corp. was incorporated in Texas in 1996. EFIH was formed in Delaware in 2007. EFIH Finance was incorporated in Delaware in 2009. EFCH was incorporated in Texas in 1982. The Offerors' principal executive offices are located at Energy Plaza, 1601 Bryan Street, Dallas, TX 75201-3411. The telephone number of the Offerors' principal executive offices is (214) 812-4600. The Offerors' website is *http://www.energyfutureholdings.com*. Information on or connected to the Offerors' website does not constitute part of this Prospectus.

Confidential

EFIHMW00245741

### Summary of the Terms of the Exchange Offers and the Consent Solicitations

*The summary below describes the principal terms of the exchange offers and the consent solicitations. Certain of the terms and conditions described below are subject to important limitations and exceptions. For a more complete understanding of the terms and conditions of the exchange offers and the consent solicitations, you should read this entire Prospectus.*

The Exchange Offers . . . . . . . . . . . . . . . Subject to the terms and conditions of the exchange offers, including the Acceptance Priority Levels, the Maximum Exchange Amount and the Priority Level 2 Cap and the possible prorations resulting therefrom, the Offerors are offering to exchange outstanding Old Notes validly tendered and not validly withdrawn for the applicable Total Consideration set forth in this Prospectus. Subject to the terms and conditions of the exchange offers, the Offerors will accept Old Notes subject to certain limits on the aggregate principal amount of New Senior Secured Notes to be issued in the exchange offers. See "—Maximum Exchange Amount" and "—Priority Level 2 Cap" below.

Maximum Exchange Amount . . . . . . . . . The maximum aggregate principal amount of New Senior Secured Notes issuable in the exchange offers (including New Senior Secured Notes issued in lieu of accrued and unpaid payment-in-kind interest on the exchange of Old Toggle Notes) will not exceed $3.0 billion, which is referred to in this Prospectus as the "Maximum Exchange Amount." Subject to applicable law, the Offerors reserve the right, but are not obligated, to increase or decrease the Maximum Exchange Amount. If a change is made to the amount of securities offered to be exchanged pursuant to any exchange offer, including any change to the Maximum Exchange Amount, such exchange offer will remain open for at least ten business days following the announcement of such change. For more information regarding the acceptance priorities for Old Notes validly tendered pursuant to the exchange offers in the event that the Maximum Exchange Amount is exceeded, see "—Exchange Offer Acceptance Priority" and "General Terms of the Exchange Offers and Consent Solicitations—Acceptance; Priority Proration."

Priority Level 2 Cap . . . . . . . . . . . . . . . . The aggregate principal amount of New Senior Secured Notes issuable in the exchange offers in exchange for Priority 2 Notes will not exceed $1.5 billion, which is referred to in this Prospectus as the "Priority Level 2 Cap," and will be less than such amount to the extent necessary for the total principal amount of New Senior Secured Notes issued in the exchange offers not to exceed the Maximum Exchange Amount. No Priority 2 Notes will be accepted for exchange if the New Senior Secured Notes that will be issued in exchange for Priority 1 Notes would equal or, prior to giving effect to proration, exceed the Maximum Exchange Amount. The Offerors reserve the right, but are not obligated, to increase or decrease the Priority Level 2 Cap. If a change is made to the amount of securities offered to be exchanged pursuant to any exchange offer, including any change to the Priority Level 2 Cap, such exchange offer will remain open for at least ten business days following the announcement of such change.

14

Confidential

EF1HMW00245742

See "—Exchange Offer Acceptance Priority" and "General Terms of the Exchange Offers and Consent Solicitations—Acceptance; Priority Proration" for more information on the Priority Level 2 Cap.

Exchange Offer Acceptance Priority . . . .    Subject to the terms and conditions of the exchange offers, including the Maximum Exchange Amount and the Priority Level 2 Cap, Old Notes validly tendered (and not validly withdrawn) in the exchange offers will be accepted in order of the Acceptance Priority Levels, with Level 1 being the highest Acceptance Priority Level. Old Notes validly tendered (and not validly withdrawn) will be accepted by the Offerors in the exchange offers in the following order:

- First, all validly tendered (and not validly withdrawn) Priority 1 Notes will be accepted unless doing so would cause the Maximum Exchange Amount to be exceeded, in which case such Priority 1 Notes will be accepted on a pro rata basis up to the greatest aggregate principal amount practicable that does not cause the Maximum Exchange Amount to be exceeded, and no Priority 2 Notes will be accepted for exchange; and

- Second, if the aggregate principal amount of Old Notes validly tendered in the exchange offers (and not validly withdrawn) by holders of Priority 1 Notes would not cause the Maximum Exchange Amount to be exceeded, all validly tendered (and not validly withdrawn) Priority 2 Notes will be accepted unless doing so, when taking into account Priority 1 Notes validly tendered (and not validly withdrawn) in the exchange offers, would cause the Maximum Exchange Amount or the Priority Level 2 Cap to be exceeded, in which case such Priority 2 Notes will be accepted on a pro rata basis up to the greatest aggregate principal amount practicable that, together with the Priority 1 Notes accepted for exchange, does not cause the Maximum Exchange Amount or the Priority Level 2 Cap to be exceeded.

The Offerors reserve the right to change the Acceptance Priority Levels in the event that the requisite Consents are not received or for other reasons, subject to applicable law. If a change is made to the amount of securities offered to be exchanged pursuant to any exchange offer, including any change to applicable Acceptance Priority Levels, such exchange offer will remain open for at least ten business days following the announcement of such change.

In the event that proration of an issue of validly tendered (and not validly withdrawn) Old Notes is required, if the Old Notes subject to proration are Priority 1 Notes, then all Priority 1 Notes will be treated equally in calculating the proration, and if the Old Notes subject to proration are Priority 2 Notes, then all Priority 2 Notes will be treated equally in calculating the proration. For example, if the aggregate principal amount of validly tendered (and not validly withdrawn) Priority 1 Notes would require $4.0 billion aggregate principal

15

amount of New Senior Secured Notes to be issued in the exchange offers, then the principal amount of each tender of Priority 1 Notes would be reduced by approximately 25% (and the principal amount of New Senior Secured Notes to be issued in exchange of each such tender of Priority 1 Notes would be reduced accordingly), such that the aggregate principal amount of New Senior Secured Notes to be issued in the exchange offers would not exceed $3.0 billion.

In the event that proration of an issue of validly tendered (and not validly withdrawn) Old Notes is required, the Offerors will determine the final proration promptly after the Expiration Date and will announce the results of the final proration by press release. To determine the principal amount accepted of each tender subject to proration, the principal amount of such tender will be multiplied by the proration rate and the resultant amount rounded down to the nearest permitted denomination of the particular issue of Old Notes. The Offerors will not be able to determine the final proration prior to the Expiration Date.

Consideration Offered in Exchange Offers . . . . . . . . . . . . . . . . . . . . . . . . . .   The consideration offered for the Old Notes in the exchange offers is set forth for each issue of Old Notes in the table on page ii of this Prospectus.

Upon the terms and subject to the conditions of the exchange offers, including the Acceptance Priority Levels, the Maximum Exchange Amount and the Priority Level 2 Cap and the possible prorations resulting therefrom, in exchange for each $1,000 principal amount of Old Notes validly tendered (and not validly withdrawn) at or prior to the Expiration Date and accepted for exchange, participating holders of Old Notes will be eligible to receive the Total Consideration set forth in the table on page ii of this Prospectus under "Total Consideration if Tendered at or Prior to the Expiration Date." The Total Consideration will be payable 45% in New EFH Senior Secured Notes and 55% in New EFIH Senior Secured Notes.

Fractions . . . . . . . . . . . . . . . . . . . . . . . . . .   The Offerors will not accept any tender of Old Notes that would result in the issuance of less than $2,000 principal amount of New EFH Senior Secured Notes or New EFIH Senior Secured Notes to a participating holder. The aggregate principal amount of New EFH Senior Secured Notes or New EFIH Senior Secured Notes issued to each participating holder for all Old Notes validly tendered (and not validly withdrawn) will be rounded down, if necessary, to $2,000 or the nearest whole multiple of $1,000 in excess thereof. This rounded amount will be the principal amount of New EFH Senior Secured Notes or New EFIH Senior Secured Notes you will receive, and no additional cash will be paid in lieu of any principal amount of New EFH Senior Secured Notes or New EFIH Senior Secured Notes not received as a result of rounding down.

16

EFIHMW00245744

The Consent Solicitations . . . . . . . . . . . . Upon the terms and subject to the conditions described in this Prospectus and the Consent and Letter of Transmittal, EFH Corp. is soliciting Consents in the consent solicitations of holders of the Consent Notes to the Proposed Amendments.

The solicitation of consents for each issue of Consent Notes will expire on the Consent Date. Consent Notes validly tendered pursuant to the exchange offers (and not validly withdrawn) at or prior to the Consent Date will be deemed to include Consents to the Proposed Amendments. The completion, execution and delivery of a Consent and Letter of Transmittal, or transmission of an Agent's Message, in connection with a valid tender of Consent Notes pursuant to the applicable exchange offer at or prior to the Consent Date will constitute the delivery of Consents with respect to such Consent Notes. Holders may not validly tender Consent Notes in the exchange offers at or prior to the Consent Date without delivering the related Consents in the consent solicitations and may not validly withdraw previously tendered Consent Notes at or prior to the Consent Date without revoking the related Consents. Holders may not deliver Consents in the consent solicitations without validly tendering their Consent Notes in the exchange offers at or prior to the Consent Date and may only validly revoke Consents by validly withdrawing the previously tendered related Consent Notes at or prior to the Consent Date or by revoking Consents after the Consent Date and prior to the execution of the Supplemental Indenture to which such Consents relate. If the Expiration Date is extended but the Consent Date is not extended, holders may tender Consent Notes after the Consent Date and at or prior to the Expiration Date as it may have been extended without delivering Consents but holders tendering Consent Notes after the Consent Date will not be eligible to receive the cash consent payment.

If the requisite Consents with respect to a given Consent Notes Indenture are received and a Supplemental Indenture for such Consent Notes Indenture is executed, EFH Corp. will pay to each holder that validly delivers and does not validly revoke Consents in respect of such Consent Notes, in addition to any Total Consideration payable to such holder, a cash consent payment of $2.50 per $1,000 principal amount of such Consent Notes. Consent payments are not subject to proration. The consent payments will be made on the Settlement Date or promptly following the termination of the exchange offers, as applicable, assuming that the conditions to such payments are satisfied. EFH Corp.'s obligation to make consent payments is not conditioned upon completion of the exchange offers but is subject to receipt of the requisite Consents and execution of the Supplemental Indenture to which such Consents relate. The Proposed Amendments in any executed Supplemental Indenture relating to the Consent Notes that were the subject of a terminated exchange offer will not become operative with respect to such issue of Consent Notes. See "Procedures for Tendering Old Notes and Delivering Consents" for more information.

17

Confidential

EFIHMW00245745

| | |
|---|---|
| The Proposed Amendments .......... | The Proposed Amendments would eliminate substantially all of the restrictive covenants contained in the Consent Notes Indentures and the Consent Notes, eliminate certain events of default, modify covenants regarding mergers and consolidations, and modify or eliminate certain other provisions, including the limitation on the incurrence of secured indebtedness in the Legacy Notes Indentures and the limitations on the incurrence of indebtedness and liens in the 2017 Notes Indenture, such that an unlimited amount of secured debt could be issued by EFH Corp. under the terms of the Consent Notes Indentures, and certain provisions relating to defeasance contained in the 2017 Notes Indenture and 2017 Notes which would otherwise prevent a defeasance without, among other things, delivery of an opinion of counsel confirming such defeasance does not constitute a taxable event. See "Proposed Amendments" for more information regarding the Proposed Amendments.<br><br>In addition to the foregoing, execution and delivery of the Consent and Letter of Transmittal will constitute an express waiver by a consenting holder of the Consent Notes with respect to all claims against the Offerors and the Sponsor Group of any breach, default or event of default that may have arisen under the Consent Notes Indentures. |
| Requisite Consents ................. | In order to be adopted with respect to a particular issue of Consent Notes, the applicable Proposed Amendments must be consented to by the holders of at least a majority of the outstanding aggregate principal amount of such issue of Consent Notes, voting as a separate class; provided, however, that the holders of both issues of the 2017 Notes vote together as a single class and, accordingly, the Proposed Amendments to the 2017 Notes Indenture must be consented to by the holders of at least a majority of the outstanding aggregate principal amount of all the 2017 Notes voting together as a single class. It is expected but not required that the Supplemental Indentures will be executed promptly following the Consent Date assuming receipt of the requisite Consents for the Proposed Amendments. The Supplemental Indentures relating to the Proposed Amendments will become effective immediately upon their execution and delivery by the parties thereto; however, the Proposed Amendments for an issue of Consent Notes will not become operative until immediately prior to the acceptance for exchange of Old Notes upon the terms and subject to the conditions set forth herein. Consent Notes held by members of the Sponsor Group and their affiliates will not be considered outstanding for the purposes of determining whether the holders of the required outstanding principal amount of any issue of Consent Notes have delivered Consents necessary to adopt the Proposed Amendments with respect to such issue of Consent Notes. |
| Consent Date ..................... | To deliver Consents pursuant to the consent solicitations, holders must validly tender (and not validly withdraw) their Consent Notes, and thereby deliver Consents related to such Consent Notes, at or |

18

EFIHMW00245746

|   |   |
|---|---|
|   | prior to midnight, New York City time, on November 10, 2009, unless extended by EFH Corp. |
| Expiration Date . . . . . . . . . . . . . . . . . . . | The exchange offers will expire at midnight, New York City time, on November 10, 2009, unless extended by the Offerors. |
| Procedure for Tenders and Delivery of Consents . . . . . . . . . . . . . . . . . . . . . . | If a holder wishes to participate in the exchange offers and the consent solicitations, if applicable, and such holder's Old Notes are held by a custodial entity such as a broker, dealer, commercial bank, trust company or other nominee, such holder must instruct such custodial entity (pursuant to the procedures of the custodial entity) to tender the Old Notes and deliver the related Consents, if applicable. In order to participate in the consent solicitations, Consent Notes must be validly tendered (and not validly withdrawn), thereby delivering the related Consent, at or prior to the Consent Date. |
|   | Custodial entities that are participants in DTC must tender Old Notes and, if applicable, deliver Consents through ATOP, by which the custodial entity and the beneficial owner on whose behalf the custodial entity is acting agree to be bound by the Consent and Letter of Transmittal. **A Consent and Letter of Transmittal need not be completed and submitted in connection with tenders effected through ATOP.** |
| No Guaranteed Delivery . . . . . . . . . . . . | The exchange offers will not provide for guaranteed delivery procedures with respect to any issue of Old Notes. |
| Withdrawal of Tenders and Revocation of Consents . . . . . . . . . . . . . . . . . . . | A holder may withdraw the tender of such holder's Old Notes at any time prior to the Expiration Date (and, if not previously accepted for exchange, after the expiration of 40 business days from October 5, 2009) by submitting a notice of withdrawal to the Exchange Agent using ATOP procedures and/or upon compliance with the other procedures described under "Withdrawal of Tenders and Revocation of Consents." The withdrawal of any Consent Notes at or prior to the Consent Date will constitute a revocation of the related Consents. Consents may not be revoked prior to the Consent Date except by withdrawing tendered Consent Notes at or prior to the Consent Date. Consents may be revoked after the Consent Date by revoking such Consents prior to the execution of the Supplemental Indenture to which such Consents relate. Any Consents that are not revoked at or prior to the later of the Consent Date and the execution of the Supplemental Indenture to which such Consents relate may not be revoked thereafter, as further described under "Withdrawal of Tenders and Revocation of Consents." |
| Settlement Date . . . . . . . . . . . . . . . . . . . | Subject to the terms and conditions of the exchange offers, the settlement date for the exchange offers will occur promptly following the Expiration Date (such date, the "Settlement Date"). Assuming that the exchange offers and consent solicitations are not extended, we |

19

EFIHMW00245747

**PX 014
Page 29 of 1116**

expect that the Settlement Date will be on or about the third business day following the Expiration Date.

The New Senior Secured Notes . . . . . . .  For a description of the terms of the New EFH Senior Secured Notes, see "—Summary of New EFH Senior Secured Notes" and "Description of the EFH Corp. Notes." For a description of the terms of the New EFIH Senior Secured Notes, see "—Summary of New EFIH Senior Secured Notes" and "Description of the EFIH Notes." For a comparison of the principal differences between the Old Notes and the New Senior Secured Notes, see "Comparison of Principal Differences Among Old Notes and New Senior Secured Notes".

Collateral . . . . . . . . . . . . . . . . . . . . . . .  The guarantee of the New EFH Senior Secured Notes by EFIH and the New EFIH Senior Secured Notes will each be secured by EFIH's pledge of 100% of the membership interests and other investments it owns in Oncor Holdings (which currently represent an approximate 80% equity interest in Oncor).

Accrued and Unpaid Interest . . . . . . . . . .  If Old Notes (other than Old Toggle Notes) are validly tendered by a holder (and not validly withdrawn) for exchange pursuant to the exchange offers and such Old Notes are accepted for exchange, such holder will be entitled to receive, with respect to any of such holder's accepted Old Notes (other than Old Toggle Notes), an amount equal to accrued and unpaid interest, if any, in cash from the last applicable interest payment date to, but not including, the Settlement Date. All participating holders of Old Toggle Notes will also receive in the exchange offers, with respect to any of their Old Toggle Notes accepted for exchange, in lieu of accrued and unpaid payment-in-kind interest with respect to such Old Toggle Notes, if any, from the last applicable interest payment date to, but not including, the Settlement Date, additional New Senior Secured Notes paid in accordance with the applicable consideration listed on page ii of this Prospectus.

Conditions to the Exchange Offers and the Consent Solicitations . . . . . . . . . . .  The exchange offers are not conditioned on any minimum principal amount of Old Notes being validly tendered or the issuance of a minimum principal amount of New Senior Secured Notes or the receipt of requisite Consents to adopt the Proposed Amendments. However, the exchange offers and the consent solicitations are subject to the conditions described under "Conditions of the Exchange Offers and the Consent Solicitations," including the conditions applicable to the exchange offers that the registration statement of which this Prospectus forms a part has been declared effective by the SEC and that the New EFH Senior Secured Notes and the New EFIH Senior Secured Notes to be issued in the exchange offers are approved for listing on the New York Stock Exchange, subject to notice of issuance (which conditions cannot be waived). Subject to applicable law, the Offerors have the right to terminate or withdraw the exchange offers and the consent solicitations if any of the conditions described under "Conditions of the Exchange Offers and the Consent Solicitations" are not satisfied or waived by the Expiration Date.

20

Confidential

| | |
|---|---|
| Consequences of Failure to Tender . . . . . | If the Offerors complete the exchange offers, obligations with respect to any Consent Notes not tendered by holders or not accepted for exchange or otherwise left outstanding following the completion of the exchange offers will not be secured by the Collateral and will therefore be effectively subordinated to the New Senior Secured Notes to the extent of the value of the Collateral. Further, if the requisite Consents are received with respect to a given Consent Notes Indenture and the Supplemental Indenture giving effect to the related Proposed Amendments is executed and the Proposed Amendments become operative with respect to such Consent Notes Indenture, holders of such Consent Notes left outstanding following completion of the exchange offers will no longer be entitled to the benefits of the covenants, events of default and other provisions that are eliminated or modified pursuant to such Proposed Amendments. In addition, due to the Acceptance Priority Levels, the Maximum Exchange Amount and the possible prorations resulting therefrom, following the completion of the exchange offers, a holder may still own Consent Notes for which the Proposed Amendments have become operative even though such holder validly tendered (and did not validly withdraw) all of its Consent Notes. To the extent that Old Notes are tendered and accepted in the exchange offers, any existing trading market for the remaining Old Notes may become further limited. The smaller outstanding principal amount may make the trading price of the Old Notes that are not tendered and accepted for payment more volatile. Consequently, the liquidity, market value and price volatility of Old Notes that remain outstanding may be materially and adversely affected. For a description of consequences of failing to tender your Old Notes pursuant to the exchange offers, see "Risk Factors—Risks to Holders of Old Notes Not Tendered or Not Accepted for Exchange." |
| Amendment and Termination . . . . . . . . . | Subject to applicable law, the Offerors may terminate or withdraw at their sole discretion any of the exchange offers or the consent solicitations if any condition to the exchange offers and the consent solicitations is not satisfied or waived by the Expiration Date. The Offerors reserve the right, subject to applicable law, to (i) waive any and all of the conditions of the exchange offers and the consent solicitations (except for the conditions applicable to the exchange offers that the registration statement of which this Prospectus forms a part has been declared effective by the SEC and that the New EFH Senior Secured Notes and the New EFIH Senior Secured Notes to be issued in the exchange offers are approved for listing on the New York Stock Exchange, subject to notice of issuance (which conditions cannot be waived)) at or prior to the Expiration Date and (ii) amend the terms of the exchange offers or the consent solicitations. Any waiver or amendment may apply to one or more (but not necessarily all) of the exchange offers and consent solicitations. In the event that an exchange offer or consent solicitation is terminated, withdrawn or otherwise not completed at or prior to the Expiration Date, no consideration or consent payment will be paid or become payable to |

21

Confidential

holders who have validly tendered their Old Notes pursuant to such exchange offer or delivered their Consents in such consent solicitation, as applicable, other than the consent payments with respect to an issue of Consent Notes for which requisite Consents were received and a Supplemental Indenture was executed. In any such event, (i) Old Notes previously tendered pursuant to the exchange offers will be promptly returned to the tendering holders and (ii) the Proposed Amendments in any executed Supplemental Indenture relating to the Consent Notes that were the subject of such terminated exchange offer will not become operative with respect to such issue of Consent Notes. See "General Terms of the Exchange Offers and Consent Solicitations—Extension, Termination or Amendment."

Use of Proceeds . . . . . . . . . . . . . . . . . . . The Offerors will not receive any cash proceeds from the exchange offers or consent solicitations. Any Legacy Notes and TCEH Notes accepted for exchange in the exchange offers may remain outstanding and be held by EFH Corp., EFCH and/or EFIH. Any 2017 Notes accepted for exchange in the exchange offers are expected to be retired and cancelled.

Taxation . . . . . . . . . . . . . . . . . . . . . . . . For a discussion of material U.S. federal income tax consequences of the exchange offers, see "Material U.S. Federal Income Tax Considerations."

Regulatory Approvals . . . . . . . . . . . . . . Other than the declaration of effectiveness by the SEC of the registration statement of which this Prospectus forms a part, the Offerors are not aware of any regulatory approvals necessary to complete the exchange offers or the consents solicitations.

Dealer Managers and Solicitation Agents . . . . . . . . . . . . . . . . . . . . . . . . Citigroup Global Markets Inc. and Goldman, Sachs & Co. are acting as lead dealer managers and solicitation agents in the United States, and Banc of America Securities LLC, Credit Suisse Securities (USA) LLC, J.P. Morgan Securities Inc., KKR Capital Markets LLC ("KKR Capital Markets") and Morgan Stanley & Co. Incorporated are also acting as dealer managers and solicitation agents in the United States (together, the "Dealer Managers") for the exchange offers and consent solicitations. The addresses and telephone numbers of the lead Dealer Managers are listed on the back cover of this Prospectus.

Affiliates of each of Goldman Sachs and KKR are members of the Sponsor Group. Citigroup Global Markets Inc. has agreed to review and participate in the preparation of this Prospectus and perform its usual standard of due diligence with respect to this Prospectus. EFH Corp., EFIH and EFIH Finance have agreed, jointly and severally, to indemnify Citigroup Global Markets Inc. against liabilities incurred in connection with acting in this role, including liabilities under the Securities Act.

Confidential

EFIHMW00245750

**PX 014
Page 32 of 1116**

Exchange Agent and Information
    Agent . . . . . . . . . . . . . . . . . . . . . . . .    Global Bondholder Services Corporation. The address and telephone
                            numbers of the Exchange Agent and Information Agent are listed on
                            the back cover of this Prospectus.

**Risk Factors** . . . . . . . . . . . . . . . . . . . . .    **In addition to the other information included in this Prospectus,
you should carefully consider the information set forth in the
section entitled "Risk Factors" beginning on page 43 before
deciding whether or not to participate in the exchange offers and/
or the consent solicitations.**

Confidential

EFIHMW00245751

**PX 014**
**Page 33 of 1116**

**Summary of New EFH Senior Secured Notes**

The summary below describes the principal terms of the New EFH Senior Secured Notes and the related indenture. Certain of the terms and conditions described below are subject to important limitations and exceptions. The "Description of the EFH Corp. Notes" section of this Prospectus contains more detailed descriptions of the terms and conditions of the New EFH Senior Secured Notes and the related indenture.

| | |
|---|---|
| Issuer . . . . . . . . . . . . . . . . . . . . . . . . . . . | Energy Future Holdings Corp. |
| Securities Offered . . . . . . . . . . . . . . . . . | 9.75% Senior Secured Notes due 2019. |
| Maturity Date . . . . . . . . . . . . . . . . . . . . | October 15, 2019. |
| Interest Rate . . . . . . . . . . . . . . . . . . . . . . | The New EFH Senior Secured Notes will accrue interest at the rate of 9.75% per annum. |
| Interest Payment Dates . . . . . . . . . . . . . | Interest on the New EFH Senior Secured Notes is payable on April 15 and October 15 of each year, commencing on April 15, 2010. |
| Ranking . . . . . . . . . . . . . . . . . . . . . . . . . | The New EFH Senior Secured Notes will: |

- be senior obligations of EFH Corp. and will rank equally in right of payment with all senior indebtedness of EFH Corp. (including EFH Corp.'s 4.80% Series O Senior Notes due 2009 and any Legacy Notes and 2017 Notes that remain outstanding after the exchange offers);

- be effectively subordinated to any indebtedness of EFH Corp. secured by assets of EFH Corp. to the extent of the value of the assets securing such indebtedness;

- be structurally subordinated to all indebtedness and other liabilities of EFH Corp.'s non-guarantor subsidiaries, including Oncor Holdings, TCEH and each of their respective subsidiaries, any of EFH Corp.'s foreign subsidiaries and any other unrestricted subsidiaries;

- be senior in right of payment to any future subordinated indebtedness of EFH Corp; and

- be guaranteed as described in "—Guarantees."

As of September 30, 2009, on a pro forma basis after giving effect to the transactions contemplated by this Prospectus, assuming tender and acceptance of all Priority 1 Notes on a pro rata basis up to the Maximum Exchange Amount, (1) EFH Corp. would not have had any senior secured indebtedness and (2) the New EFH Senior Secured Notes would have been structurally subordinated to approximately $36.76 billion principal amount of indebtedness (includes long-term debt, including amounts due currently, and short-term borrowings) of EFH Corp.'s subsidiaries, including all of TCEH's and its subsidiaries' indebtedness and all of Oncor Holdings' and its subsidiaries' indebtedness. As of September 30, 2009, TCEH had

24

EFIHMW00245752

**PX 014
Page 34 of 1116**

approximately $2.195 billion of additional available capacity under the TCEH Senior Secured Facilities (excluding amounts available under its senior secured cash posting credit facility and $41 million of commitments from a subsidiary of Lehman Brothers Holding Inc. (such subsidiary, "Lehman") that has filed for bankruptcy under Chapter 11 of Title 11 of the United States Code, as amended (the "Bankruptcy Code"), but including $141 million of undrawn commitments from Lehman that are only available from the fronting banks and the swingline lender and $459 million of available letter of credit capacity), and Oncor had approximately $1.341 billion of additional available capacity under its revolving credit facility (excluding $122 million of undrawn commitments from Lehman). In addition, the TCEH Senior Secured Facilities permit TCEH to issue up to $5.0 billion of secured notes or loans ranking junior to TCEH's senior secured borrowings.

Guarantees ........................     The New EFH Senior Secured Notes will be unconditionally guaranteed, jointly and severally, by EFCH (the parent of TCEH) on a senior unsecured basis and EFIH (the parent of Oncor Holdings) (the "Guarantors") on a senior secured basis (to the extent of the Collateral securing the guarantee).

The Guarantees:

- will be a general senior obligation of each Guarantor;

- in the case of the Guarantee from EFIH, will be secured by the pledge of any investments EFIH owns in Oncor Holdings or any of its subsidiaries, which on the date the New EFH Senior Secured Notes are issued in the exchange offers will consist of all of the membership interests it owns in Oncor Holdings;

- in the case of the Guarantee from EFCH, will not be secured;

- will rank equally in right of payment with all existing and future senior indebtedness of each Guarantor;

- in the case of the Guarantee from EFIH, will be effectively senior to all unsecured indebtedness of EFIH to the extent of the value of the Collateral securing such Guarantee;

- will be effectively subordinated to all secured indebtedness of each Guarantor secured by assets other than the Collateral to the extent of the value of the assets securing such indebtedness;

- will be structurally subordinated to any existing and future indebtedness and liabilities of subsidiaries of a Guarantor that do not Guarantee the New EFH Senior Secured Notes, including the Oncor Subsidiaries in the case of EFIH, and TCEH and its subsidiaries in the case of EFCH, and any other unrestricted subsidiaries;

25

Confidential

- will be senior in right of payment to any future subordinated indebtedness of each Guarantor; and

- will be effectively senior, in the case of EFIH, to all obligations under any future junior lien debt with respect to the Collateral.

As of September 30, 2009, on a pro forma basis after giving effect to the transactions contemplated by this Prospectus, assuming tender and acceptance of all Priority 1 Notes on a pro rata basis up to the Maximum Exchange Amount, the EFCH guarantee would have been effectively junior to approximately $106 million principal amount of senior secured indebtedness of EFCH (excluding EFCH's secured guarantee of $22.356 billion of senior secured borrowings by TCEH under its senior secured credit facilities). As of September 30, 2009, TCEH had approximately $2.195 billion of additional available senior secured capacity under the TCEH Senior Secured Facilities (excluding amounts available under its senior secured cash posting credit facility and $41 million of commitments from Lehman that has filed for bankruptcy under Chapter 11 of the Bankruptcy Code, but including $141 million of undrawn commitments from Lehman that are only available from the fronting banks and the swingline lender and $459 million of available letter of credit capacity). In addition, the TCEH Senior Secured Facilities permit TCEH to issue up to $5.0 billion of notes or loans ranking junior to TCEH's senior secured borrowings. None of EFH Corp.'s other subsidiaries will guarantee the New EFH Senior Secured Notes. For the year ended December 31, 2008 and the nine months ended September 30, 2009, the non-guarantor subsidiaries generated all of EFH Corp.'s consolidated total revenue. In addition, as of September 30, 2009, the non-guarantor subsidiaries held substantially all of EFH Corp.'s consolidated total assets.

See "Risk Factors—Risks Related to the Exchange Offers and the New Senior Secured Notes—The liabilities of each of EFH Corp. and EFCH currently exceed its assets as shown on its most recent balance sheet, and after giving effect to the exchange offers, the liabilities of EFIH may exceed its assets as shown on its most recent balance sheet. If a court were to find that EFH Corp., EFCH or EFIH were insolvent before or after giving effect to the exchange offers and did not receive reasonably equivalent value or fair consideration in the exchange offers, the court may void all or a portion of the obligations represented by the New EFH Senior Secured Notes, the New EFIH Senior Secured Notes or the guarantees of the New EFH Senior Secured Notes by EFIH or EFCH or the pledge of the Collateral granted by EFIH for such notes as a fraudulent conveyance."

Security . . . . . . . . . . . . . . . . . . . . . . . .    EFIH's guarantee of the New EFH Senior Secured Notes will be secured by EFIH's pledge of 100% of the membership interests and other investments it owns in Oncor Holdings. See "Description of the EFH Corp. Notes—Security for the Notes." See also "Risk Factors—Risks Related to the Exchange Offers and the New Senior Secured

Confidential

EFIHMW00245754

PX 014
Page 36 of 1116

Notes—The indentures governing the New Senior Secured Notes may not protect holders from all actions that EFH Corp., EFIH or the Oncor Subsidiaries may take that would reduce your interest in the Collateral or that may reduce the value of the Collateral, including sales or exchanges of the Collateral or the assets of the Oncor Subsidiaries for other assets or investments."

Optional Redemption . . . . . . . . . . . . . . EFH Corp. may redeem any of the New EFH Senior Secured Notes on and after October 15, 2014 at the redemption prices set forth in this Prospectus. EFH Corp. may also redeem any of the New EFH Senior Secured Notes at any time prior to October 15, 2014 at a price equal to 100% of their principal amount, plus accrued interest and a "make-whole" premium. In addition, before October 15, 2012, EFH Corp. may redeem up to 35% of the aggregate principal amount of the New EFH Senior Secured Notes, using the proceeds from certain equity offerings at the redemption price set forth in this Prospectus. See "Description of the EFH Corp. Notes—Optional Redemption."

Change of Control Offer . . . . . . . . . . . . Upon the occurrence of certain transactions meeting the definition of "change of control," holders of the New EFH Senior Secured Notes will have the right to require EFH Corp. to repurchase some or all of the New EFH Senior Secured Notes at 101% of their face amount, plus accrued and unpaid interest to the repurchase date. This right is subject to important limitations. For example, this right will not apply to a transaction that would otherwise be a "change of control" if EFH Corp. complies with the provisions relating to a transfer of either the Oncor business or the TCEH business described below under "—Important Covenants" or if the transaction meets certain other requirements. See "Description of the EFH Corp. Notes—Repurchase at the Option of Holders—Change of Control" and the definition of "Change of Control" under "Description of the EFH Corp. Notes."

EFH Corp. may not be able to pay holders the required price for New EFH Senior Secured Notes they present to it at the time of a change of control, because EFH Corp. may not have enough funds at that time or the terms of EFH Corp.'s other indebtedness or any of its subsidiaries' indebtedness, including the TCEH Senior Secured Facilities, may prevent EFH Corp. from making such payment or receiving funds from its subsidiaries in an amount sufficient to fund such payment.

See "Risk Factors—Risks Related to the Exchange Offers and the New Senior Secured Notes—The Offerors may not be able to repurchase the New Senior Secured Notes upon a change of control," "Risk Factors—Risks Related to the Exchange Offers and the New Senior Secured Notes—We may transfer or dispose of our interests in EFIH or Oncor Holdings to a third party in a manner that would result in EFIH or such third party becoming the obligor under the New EFH Senior Secured Notes, or such third party becoming the obligor under the New EFIH Senior Secured Notes, without EFH Corp. or EFIH, as

27

Confidential

EFIHMW00245755

the case may be, being required to offer to repurchase the New Senior Secured Notes. The risks of an investment in the New Senior Secured Notes may increase further following such a transaction" and "Risk Factors—Risks Related to the Exchange Offers and the New Senior Secured Notes—We may transfer or dispose of our interests in or the assets of TCEH to a third party without such third party becoming the obligor under the New EFH Senior Secured Notes and without being required to offer to repurchase the New EFH Senior Secured Notes."

Important Covenants . . . . . . . . . . . . . . . . The indenture governing the New EFH Senior Secured Notes will contain covenants limiting EFH Corp.'s ability and the ability of its restricted subsidiaries to:

- pay dividends on or make distributions in respect of EFH Corp.'s capital stock or make other restricted payments;

- make investments (including investments in Oncor);

- incur additional debt or issue some types of preferred shares;

- create liens on assets to secure debt;

- sell assets;

- consolidate, merge, sell or otherwise dispose of all or substantially all of their assets in certain circumstances;

- enter into certain transactions with their affiliates; and

- designate EFH Corp.'s subsidiaries as unrestricted subsidiaries.

These covenants are subject to a number of important additional limitations and exceptions. For example, the first to occur of the sale of all of the Oncor business (as defined under "Permitted Asset Transfer" under "Description of the EFH Corp. Notes") and all of the TCEH business (as defined under "TCEH Transfer" under "Description of the EFH Corp. Notes") will not be considered the sale of all or substantially all of EFH Corp.'s assets under the indenture so long as certain conditions are satisfied, in the case of the sale of the Oncor business, including the condition that the transferee assumes the obligations under the New EFH Senior Secured Notes. The transferee in the case of a TCEH Transfer would not assume such obligations. Certain other transactions (including certain intercompany transactions) involving the Oncor business will also not be considered the sale of all or substantially all of EFH Corp.'s assets.

Oncor Holdings, the immediate parent of Oncor, and its subsidiaries and Comanche Peak Nuclear Power Company LLC, Nuclear Energy Future Holdings LLC and Nuclear Energy Future Holdings II LLC will be Unrestricted Subsidiaries under the indenture and, accordingly, will not be subject to any of the restrictive covenants in the indenture. See "Description of the EFH Corp. Notes."

No Prior Market  . . . . . . . . . . . . . . . . . . . The New EFH Senior Secured Notes will be new securities for which there is currently no market. Although the Dealer Managers have

28

EFIHMW00245756

informed EFH Corp. that they intend to make a market in the New EFH Senior Secured Notes, they are not obligated to do so, and they may discontinue market making activities at any time without notice. Accordingly, a liquid market for the New EFH Senior Secured Notes may not develop or be maintained. Additionally, certain of the Dealer Managers may be restricted in their market-making activities. See "Risk Factors—Risks Related to the Exchange Offers and the New Senior Secured Notes—An active trading market may not develop for the New Senior Secured Notes."

Listing . . . . . . . . . . . . . . . . . . . . . . . . . . . .    EFH Corp. intends to apply to list the New EFH Senior Secured Notes on the New York Stock Exchange. The exchange offers are subject to the condition that the New EFH Senior Secured Notes to be issued in the exchange offers are approved for listing on the New York Stock Exchange, subject to notice of issuance (which condition cannot be waived).

Use of Proceeds . . . . . . . . . . . . . . . . . . . .    EFH Corp. will not receive any cash proceeds from the exchange offers or the consent solicitations. Any Legacy Notes and TCEH Notes accepted for exchange in the exchange offers may remain outstanding and be held by EFH Corp., EFCH and/or EFIH. Any 2017 Notes accepted for exchange in the exchange offers are expected to be retired and cancelled.

Denominations  . . . . . . . . . . . . . . . . . . . .    The New EFH Senior Secured Notes will be issued in minimum denominations of $2,000 and integral multiples of $1,000 in excess thereof.

**Risk Factors** . . . . . . . . . . . . . . . . . . . . . .    **In addition to the other information included in this Prospectus, you should carefully consider the information set forth in the section entitled "Risk Factors" beginning on page 43 before deciding whether or not to participate in the exchange offers and/ or the consent solicitations.**

Confidential

EFIHMW00245757

PX 014
Page 39 of 1116

## Summary of New EFIH Senior Secured Notes

The summary below describes the principal terms of the New EFIH Senior Secured Notes and the related indenture. Certain of the terms and conditions described below are subject to important limitations and exceptions. The "Description of the EFIH Notes" section of this Prospectus contains more detailed descriptions of the terms and conditions of the New EFIH Senior Secured Notes and the related indenture.

| | |
|---|---|
| Issuer | Energy Future Intermediate Holding Company LLC and EFIH Finance Inc. (together, the "EFIH Offeror") |
| Securities Offered | 9.75% Senior Secured Notes due 2019. |
| Maturity Date | October 15, 2019. |
| Interest Rate | The New EFIH Senior Secured Notes will accrue interest at the rate of 9.75% per annum. |
| Interest Payment Dates | Interest on the New EFIH Senior Secured Notes is payable on April 15 and October 15 of each year, commencing on April 15, 2010. |
| Ranking | The New EFIH Senior Secured Notes will: |

- be senior obligations of the EFIH Offeror and will rank equally in right of payment with all existing and future senior indebtedness of the EFIH Offeror (including EFIH's guarantees of EFH Corp.'s indebtedness, including the 2017 Notes and the New EFH Senior Secured Notes);

- will be secured by the pledge of any investments EFIH owns in Oncor Holdings or any of its subsidiaries, which on the date the New EFIH Senior Secured Notes are issued in the exchange offers will consist of all of the membership interests EFIH owns in Oncor Holdings;

- be effectively senior to all unsecured indebtedness of the EFIH Offeror and any indebtedness secured by the Collateral on a subordinated basis, to the extent of the value of the Collateral;

- be effectively subordinated to any indebtedness of the EFIH Offeror secured by assets of the EFIH Offeror other than the Collateral, to the extent of the value of the assets securing such indebtedness;

- be structurally subordinated to all indebtedness and other liabilities of EFIH's subsidiaries (other than EFIH Finance), including Oncor Holdings and its subsidiaries, any of EFIH's future foreign subsidiaries and any other unrestricted subsidiaries; and

- be senior in right of payment to any future subordinated indebtedness of the EFIH Offeror.

30

EFIHMW00245758

As of September 30, 2009, on a pro forma basis after giving effect to the transactions contemplated by this Prospectus, assuming tender and acceptance of all Priority 1 Notes on a pro rata basis up to the Maximum Exchange Amount, (1) the EFIH Offeror would not have had any senior indebtedness other than the New EFIH Senior Secured Notes and the guarantee by EFIH of the New EFH Senior Secured Notes and any 2017 Notes remaining outstanding following the exchange offers and (2) the New EFIH Senior Secured Notes would have been structurally subordinated to approximately $5.696 billion principal amount of indebtedness (includes long-term debt, including amounts due currently, and short-term borrowings) of the EFIH Offeror's subsidiaries (other than EFIH Finance), including all of Oncor Holdings' and its subsidiaries' indebtedness. As of September 30, 2009, Oncor had approximately $1.341 billion of additional available capacity under its revolving credit facility (excluding $122 million of undrawn commitments from Lehman).

See "Risk Factors—Risks Related to the Exchange Offers and the New Senior Secured Notes—The liabilities of each of EFH Corp. and EFCH currently exceed its assets as shown on its most recent balance sheet, and after giving effect to the exchange offers, the liabilities of EFIH may exceed its assets as shown on its most recent balance sheet. If a court were to find that EFH Corp., EFCH or EFIH were insolvent before or after giving effect to the exchange offers and did not receive reasonably equivalent value or fair consideration in the exchange offers, the court may void all or a portion of the obligations represented by the New EFH Senior Secured Notes, the New EFIH Senior Secured Notes or the guarantees of the New EFH Senior Secured Notes by EFIH or EFCH or the pledge of the Collateral granted by EFIH for such notes as a fraudulent conveyance."

Guarantees . . . . . . . . . . . . . . . . . . . . . . . . The New EFIH Senior Secured Notes will not initially be guaranteed.

Security . . . . . . . . . . . . . . . . . . . . . . . . The New EFIH Senior Secured Notes will be secured by the Collateral. See "Risk Factors—Risks Related to the Exchange Offers and the New Senior Secured Notes—The indentures governing the New Senior Secured Notes may not protect holders from all actions that EFH Corp., EFIH or the Oncor Subsidiaries may take that would reduce your interest in the Collateral or that may reduce the value of the Collateral, including sales or exchanges of the Collateral or the assets of the Oncor Subsidiaries for other assets or investments."

Optional Redemption . . . . . . . . . . . . . . . The EFIH Offeror may redeem any of the New EFIH Senior Secured Notes on and after October 15, 2014 at the redemption prices set forth in this Prospectus. The EFIH Offeror may also redeem any of the New EFIH Senior Secured Notes at any time prior to October 15, 2014 at a price equal to 100% of their principal amount, plus accrued interest and a "make-whole" premium. In addition, before October 15, 2012, the EFIH Offeror may redeem up to 35% of the aggregate principal amount of the New EFIH Senior Secured Notes,

31

EFIHMW00245759

PX 014
Page 41 of 1116

using the proceeds from certain equity offerings at the redemption price set forth in this Prospectus. See "Description of the EFIH Notes—Optional Redemption."

Change of Control Offer . . . . . . . . . . . . . Upon the occurrence of certain transactions meeting the definition of "change of control," holders of the New EFIH Senior Secured Notes will have the right to require the EFIH Offeror to repurchase some or all of the New EFIH Senior Secured Notes at 101% of their face amount, plus accrued and unpaid interest to the repurchase date. This right is subject to important limitations. For example, this right will not apply to a transaction that would otherwise be a "change of control" if the transaction meets certain requirements. See "Description of the EFIH Notes—Repurchase at the Option of Holders—Change of Control" and the definition of "Change of Control" under "Description of the EFIH Notes."

The EFIH Offeror may not be able to pay holders the required price for New EFIH Senior Secured Notes they present to it at the time of a change of control, because the EFIH Offeror may not have enough funds at that time, or the terms of the EFIH Offeror's other indebtedness or any of its subsidiaries' indebtedness, including Oncor's revolving credit facility, may prevent the EFIH Offeror from making such payment or receiving funds from its subsidiaries in an amount sufficient to fund such payment.

See "Risk Factors—Risks Related to the Exchange Offers and the New Senior Secured Notes—The Offerors may not be able to repurchase the New Senior Secured Notes upon a change of control" and "Risk Factors—Risks Related to the Exchange Offers and the New Senior Secured Notes—We may transfer or dispose of our interests in EFIH or Oncor Holdings to a third party in a manner that would result in EFIH or such third party becoming the obligor under the New EFH Senior Secured Notes, or such third party becoming the obligor under the New EFIH Senior Secured Notes, without EFH Corp. or EFIH, as the case may be, being required to offer to repurchase the New Senior Secured Notes. The risks of an investment in the New Senior Secured Notes may increase further following such a transaction."

Important Covenants . . . . . . . . . . . . . . . . The indenture governing the New EFIH Senior Secured Notes will contain covenants limiting EFIH's ability and the ability of its restricted subsidiaries to:

- pay dividends on or make distributions in respect of EFIH's capital stock or make other restricted payments;

- make investments (including investments in Oncor);

- incur additional debt or issue some types of preferred shares;

- create liens on assets to secure debt;

32

Confidential

EFIHMW00245760

- sell assets;
- consolidate, merge, sell or otherwise dispose of all or substantially all of its assets in certain circumstances;
- enter into certain transactions with its affiliates; and
- designate its subsidiaries as unrestricted subsidiaries.

These covenants are subject to a number of important additional limitations and exceptions. There will initially be no restricted subsidiaries under the indenture (other than EFIH Finance, which has no assets). Oncor Holdings, the immediate parent of Oncor, and its subsidiaries will be Unrestricted Subsidiaries under the indenture and, accordingly, will not be subject to any of the restrictive covenants in the indenture. See "Description of the EFIH Notes."

No Prior Market . . . . . . . . . . . . . . . . . . The New EFIH Senior Secured Notes will be new securities for which there is currently no market. Although the Dealer Managers have informed the EFIH Offeror that they intend to make a market in the New EFIH Senior Secured Notes, they are not obligated to do so, and they may discontinue market making activities at any time without notice. Accordingly, a liquid market for the New EFIH Senior Secured Notes may not develop or be maintained. Additionally, certain of the Dealer Managers may be restricted in their market-making activities. See "Risk Factors—Risks Related to the Exchange Offers and the New Senior Secured Notes—An active trading market may not develop for the New Senior Secured Notes."

Listing . . . . . . . . . . . . . . . . . . . . . . . . EFIH intends to apply to list the New EFIH Senior Secured Notes on the New York Stock Exchange. The exchange offers are subject to the condition that the New EFIH Senior Secured Notes to be issued in the exchange offers are approved for listing on the New York Stock Exchange, subject to notice of issuance (which condition cannot be waived).

Use of Proceeds . . . . . . . . . . . . . . . . . . The EFIH Offeror will not receive any cash proceeds from the exchange offers or the consent solicitations. Any Legacy Notes and TCEH Notes accepted for exchange in the exchange offers may remain outstanding and be held by EFIH or be distributed by the EFIH Offeror to EFH Corp. Any 2017 Notes accepted for exchange in the exchange offers are expected to be distributed by the EFIH Offeror to EFH Corp.

Denominations . . . . . . . . . . . . . . . . . . The New EFIH Senior Secured Notes will be issued in minimum denominations of $2,000 and in integral multiples of $1,000 in excess thereof.

**Risk Factors** . . . . . . . . . . . . . . . . . . **In addition to the other information included in this Prospectus, you should carefully consider the information set forth in the section entitled "Risk Factors" beginning on page 43 before deciding whether or not to participate in the exchange offers and/or the consent solicitations.**

33

Confidential

EFIHMW00245761

**PX 014**
**Page 43 of 1116**

**EFH Corp. and its Subsidiaries**
**Summary Historical Consolidated Financial Data**

The following table sets forth our summary historical consolidated financial data as of and for the periods indicated. The historical financial data as of December 31, 2008 and 2007 (Successor) and for the year ended December 31, 2008 (Successor), the period from October 11, 2007 through December 31, 2007 (Successor), the period from January 1, 2007 through October 10, 2007 (Predecessor) and for the year ended December 31, 2006 (Predecessor) have been derived from our audited historical consolidated financial statements and related notes included elsewhere in this Prospectus. The historical financial data as of December 31, 2006, 2005 and 2004 (Predecessor) and for the years ended December 31, 2005 and 2004 (Predecessor) have been derived from our audited historical consolidated financial statements that are not included in this Prospectus. The "Predecessor" period reflects the period prior to the Merger, which occurred on October 10, 2007. The historical financial data as of September 30, 2009 and for the nine months ended September 30, 2009 and 2008 have been derived from our unaudited historical interim condensed consolidated financial statements and related notes included elsewhere in this Prospectus. In EFH Corp.'s opinion, such unaudited interim financial data reflects all adjustments, consisting of normal recurring accruals, necessary for the fair presentation of the results for those periods. The results of operations for the interim periods, for seasonal and other factors, are not necessarily indicative of the results to be expected for the full year or any future period.

The summary historical consolidated financial data should be read in conjunction with "Management's Discussion and Analysis of Financial Condition and Results of Operations as of and for the Year Ended December 31, 2008" and "Management's Discussion and Analysis of Financial Condition and Results of Operations as of and for the Nine Months Ended September 30, 2009," each included in Annex B to this Prospectus, and our historical consolidated financial statements and related notes that are included elsewhere in this Prospectus.

| | Successor | | Predecessor | | | |
|---|---|---|---|---|---|---|
| | Year Ended December 31, 2008 | Period from October 11, 2007 through December 31, 2007 | Period from January 1, 2007 through October 10, 2007 | Year Ended December 31, | | |
| | | | | 2006 | 2005 | 2004 |
| | (millions of dollars, except ratios and per share amounts) | | | | | |
| **Statement of Income Data:** | | | | | | |
| Operating revenues (a) . . . . . . . . . . . . . . . . . . . | $11,364 | $ 1,994 | $8,044 | $10,703 | $10,826 | $9,319 |
| Income (loss) from continuing operations before extraordinary gain (loss) and cumulative effect of changes in accounting principles . . . . . . . . . . . . . . . . . . . . . . . . . | (9,998) | (1,361) | 699 | 2,465 | 1,775 | 81 |
| Income from discontinued operations, net of tax effect . . . . . . . . . . . . . . . . . . . . . . . . . | — | 1 | 24 | 87 | 5 | 378 |
| Extraordinary gain (loss), net of tax effect . . . . | — | — | — | — | (50) | 16 |
| Cumulative effect of changes in accounting principles, net of tax effect . . . . . . . . . . . . . | — | — | — | — | (8) | 10 |
| Exchangeable preferred membership interest buyback premium . . . . . . . . . . . . . . . . . . . . . | — | — | — | — | — | 849 |
| Preference stock dividends . . . . . . . . . . . . . . . . | — | — | — | — | 10 | 22 |
| Net income (loss) . . . . . . . . . . . . . . . . . . . . . . . | (9,998) | (1,360) | 723 | 2,552 | 1,712 | (386) |
| Net loss attributable to noncontrolling interests . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 160 | — | — | — | — | — |
| Net income (loss) attributable to EFH Corp. . . . | (9,838) | (1,360) | 723 | 2,552 | 1,712 | (386) |
| Dividends declared per share . . . . . . . . . . . . . . | $ — | $ — | $ 1.30 | $ 1.67 | $ 1.26 | $ 0.47 |
| Ratio of earnings to fixed charges (b) . . . . . . . . | — | — | 2.30 | 5.11 | 3.80 | 1.16 |
| Ratio of earnings to combined fixed charges and preference dividends (b) . . . . . . . . . . . . . | — | — | 2.30 | 5.11 | 3.74 | 1.11 |

34

EFIHMW00245762

| | Successor | | Predecessor | | | |
|---|---|---|---|---|---|---|
| | **Year Ended December 31, 2008** | **Period from October 11, 2007 through December 31, 2007** | **Period from January 1, 2007 through October 10, 2007** | **Year Ended December 31,** | | |
| | | | | **2006** | **2005** | **2004** |
| | | | (millions of dollars) | | | |
| **Statement of Cash Flows Data:** | | | | | | |
| Cash flows provided by (used in) operating activities from continuing operations . . . . | $ 1,505 | $    (450) | $ 2,265 | $ 4,954 | $ 2,793 | $ 1,758 |
| Cash flows provided by (used in) financing activities from continuing operations . . . . | 2,837 | 33,865 | 1,394 | (2,332) | (1,563) | (6,519) |
| Cash flows provided by (used in) investing activities from continuing operations . . . . | (2,934) | (34,563) | (2,283) | (2,664) | (1,038) | 4,280 |
| **Other Financial Data:** | | | | | | |
| Capital expenditures, including nuclear fuel . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | $ 2,978 | $    707 | $ 2,395 | $ 2,297 | $ 1,104 | $  999 |

| | Successor | | Predecessor | | |
|---|---|---|---|---|---|
| | **December 31,** | | **December 31,** | | |
| | **2008** | **2007** | **2006** | **2005** | **2004** |
| | | | (millions of dollars) | | |
| **Balance Sheet Data:** | | | | | |
| Total assets (c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | $59,263 | $64,804 | 27,216 | $27,978 | $24,059 |
| Property, plant & equipment—net . . . . . . . . . . . . . | 29,522 | 28,650 | 18,569 | 17,006 | 16,495 |
| Goodwill and intangible assets . . . . . . . . . . . . . . . | 17,379 | 27,319 | 729 | 728 | 723 |
| Total debt (d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 42,460 | 40,834 | 12,607 | 13,380 | 12,851 |
| Preferred stock of subsidiaries (e) . . . . . . . . . . . . | — | — | — | — | 38 |
| Total equity (f) . . . . . . . . . . . . . . . . . . . . . . . . . . . . | (2,177) | 6.685 | 2,140 | 475 | 639 |

(a)  The operating revenues shown above reflect the change in classification for commodity hedging and trading activities discussed in Note 1 to EFH Corp.'s historical consolidated financial statements for the year ended December 31, 2008 included elsewhere in this Prospectus that resulted in an increase in operating revenues of $1.492 billion and $554 million for the Successor period from October 11 through December 31, 2007 and the Predecessor period from January 1 through October 10, 2007, respectively, a decrease of $153 million for the year ended December 31, 2006, and an increase of $164 million and $103 million for the years ended December 31, 2005 and 2004, respectively.

(b)  Fixed charges and combined fixed charges and preference dividends exceeded "earnings" (net loss) by $10.469 billion and $2.034 billion for the year ended December 31, 2008 and for the period from October 11, 2007 through December 31, 2007, respectively.

(c)  The total assets shown above reflect the change in presentation related to our adoption of FASB Staff Position FIN No. 39-1, *Amendment of FASB Interpretation No. 39* ("FSP FIN 39-1") as discussed in Note 1 to EFH Corp.'s historical consolidated financial statements for the year ended December 31, 2008 included elsewhere in this Prospectus. Such change in presentation resulted in an increase of $1.020 billion, $1.383 billion, $2.439 billion and $870 million in our total assets and total liabilities as of December 31, 2007, 2006, 2005 and 2004, respectively, as compared to amounts reported in EFH Corp.'s Annual Report on Form 10-K for the year ended December 31, 2007.

(d)  Includes long-term debt, including amounts due currently, and short-term borrowings. Also includes equity-linked debt securities in the amount of $179 million and $285 million for years ended December 31, 2005 and 2004, respectively.

(e)  Preferred stock outstanding at the end of 2008, 2007, 2006 and 2005 has a stated amount of $51 thousand.

(f)  Total equity as of December 31, 2008 includes noncontrolling interests in subsidiaries of $1.355 billion.

Although EFH Corp. continued as the same legal entity after the Merger, its "Summary Historical Consolidated Financial Data" for periods preceding the Merger and for the periods succeeding the Merger are presented as the consolidated financial statements of the "Predecessor" and the "Successor," respectively. The consolidated financial statements of the Predecessor have been prepared on the same basis as EFH Corp.'s historical consolidated financial statements for the year ended December 31, 2007, which are not included in this Prospectus, with the exception of a change in presentation related to EFH Corp.'s adoption of FSP FIN 39-1 and

Confidential

EFIHMW00245763

a change in classification to report the results of commodity hedging and trading activities on a separate line in the statement of consolidated income (loss) instead of within operating revenues. (See "Basis of Presentation" in Note 1 to EFH Corp.'s historical consolidated financial statements for the year ended December 31, 2008 included elsewhere in this Prospectus.) The consolidated financial statements of the Successor also reflect the application of "purchase accounting" and the adoption of Statement of Financial Accounting Standards No. 160, "Noncontrolling Interests in Consolidated Financial Statements—an amendment of ARB No. 51" ("SFAS 160").

Results for 2008 were significantly impacted by impairment charges related to goodwill, trade name and emission allowances intangible assets and natural gas-fueled generation plants. Results for 2004 are significantly impacted by charges related to EFH Corp.'s comprehensive restructuring plan.

| | Successor | |
| --- | --- | --- |
| | Nine Months Ended September 30, 2009 | Nine Months Ended September 30, 2008 |
| | (millions of dollars, except ratios) | |
| **Statement of Income Data:** | | |
| Operating revenues | $7,366 | $9,001 |
| Net income (loss) | 261 | (983) |
| Net income attributable to noncontrolling interests | (54) | — |
| Net income (loss) attributable to EFH Corp. | 207 | (983) |
| Ratio of earnings to fixed charges (a) | 1.21 | — |
| Ratio of earnings to combined fixed charges and preference dividends (a) | 1.21 | — |

| | Successor | |
| --- | --- | --- |
| | Nine Months Ended September 30, 2009 | Nine Months Ended September 30, 2008 |
| | (millions of dollars) | |
| **Statement of Cash Flows Data:** | | |
| Cash flows provided by operating activities | $ 1,743 | $   957 |
| Cash flows provided by financing activities | 420 | 3,052 |
| Cash flows used in investing activities | (2,127) | (2,374) |
| **Other Financial Data:** | | |
| Capital expenditures, including nuclear fuel | $ 2,004 | $ 2,179 |

| | Successor |
| --- | --- |
| | September 30, 2009 |
| | (millions of dollars) |
| **Balance Sheet Data:** | |
| Total assets | $59,651 |
| Property, plant & equipment—net | 30,019 |
| Goodwill and intangible assets | 17,223 |
| Total debt (b) | 43,205 |
| Total equity (c) | (1,814) |

----

(a)   Fixed charges and combined fixed charges and preference dividends exceeded "earnings" by $1.445 billion for the nine months ended September 30, 2008.

(b)   Includes long-term debt, including amounts due currently, and short-term borrowings.

(c)   Total equity as of September 30, 2009 includes noncontrolling interests in subsidiaries of $1.420 billion.

Confidential

EFIHMW00245764

**PX 014
Page 46 of 1116**

## EFIH and its Subsidiaries
## Summary Historical Consolidated Financial Data

The following table sets forth EFIH and its subsidiaries' summary historical consolidated financial data as of and for the periods indicated. The historical financial data as of December 31, 2008 and 2007 (Successor) and for the year ended December 31, 2008 (Successor), the period from October 11, 2007 through December 31, 2007 (Successor), the period from January 1, 2007 through October 10, 2007 (Predecessor) and for the year ended December 31, 2006 (Predecessor) have been derived from EFIH and its subsidiaries' audited historical consolidated financial statements and related notes included elsewhere in this Prospectus. The historical financial data as of December 31, 2006, 2005 and 2004 (Predecessor) and for the years ended December 31, 2005 and 2004 (Predecessor) have been derived from an EFIH subsidiary's (Oncor's) audited historical consolidated financial statements that are not included in this Prospectus. EFIH was formed at the time of the Merger, and its predecessor is Oncor. The historical financial data as of September 30, 2009 and for the nine months ended September 30, 2009 and 2008 have been derived from EFIH and its subsidiaries' unaudited historical interim condensed consolidated financial statements and related notes included elsewhere in this Prospectus. In EFIH's opinion, such unaudited interim financial data reflects all adjustments, consisting of normal recurring accruals, necessary for the fair presentation of the results for those periods. The results of operations for the interim periods, for seasonal and other factors, are not necessarily indicative of the results to be expected for the full year or any future period.

The summary historical consolidated financial data should be read in conjunction with "Management's Discussion and Analysis of Financial Condition and Results of Operations as of and for the Year Ended December 31, 2008" and "Management's Discussion and Analysis of Financial Condition and Results of Operations as of and for the Nine Months Ended September 30, 2009," each included in Annex C to this Prospectus, and EFIH and its subsidiaries' historical consolidated financial statements and related notes that are included elsewhere in this Prospectus.

| | Successor (a) | | Predecessor (a) | | | |
|---|---|---|---|---|---|---|
| | Year Ended December 31, 2008 | Period from October 11, 2007 through December 31, 2007 | Period from January 1, 2007 through October 10, 2007 | Year Ended December 31, 2006 | 2005 | 2004 |
| | (millions of dollars, except ratios) | | | | | |
| **Statement of Income Data:** | | | | | | |
| Operating revenues . . . . . . . . . . . . . . . . | $2,580 | $ 533 | $1,967 | $2,449 | $2,394 | $2,226 |
| Net income (loss) (b) . . . . . . . . . . . . . . . | (655) | 19 | 263 | 344 | 351 | 273 |
| Net loss attributable to noncontrolling interests . . . . . . . . . . . . . . . . . . . . . . . | 160 | ——— | — | ——— | ——— | ——— |
| Net income (loss) attributable to EFIH. . . . . . . . . . . . . . . . . . . . . . . . . | (495) | 19 | 263 | 344 | 351 | 273 |
| Ratio of earnings to fixed charges (c) . . | ——— | 1.19 | 2.68 | 2.74 | 2.87 | 2.29 |
| **Statement of Cash Flows Data:** | | | | | | |
| Cash flows provided by operating activities . . . . . . . . . . . . . . . . . . . . . . . | $ 829 | $ 65 | $ 682 | $ 628 | $ 869 | $ 692 |
| Cash flows provided by (used in) financing activities . . . . . . . . . . . . . . | 154 | 86 | (88) | 240 | (127) | (287) |
| Cash flows used in investing activities . . . . . . . . . . . . . . . . . . . . . . . | (879) | (146) | (578) | (882) | (727) | (650) |
| **Other Financial Data:** | | | | | | |
| Capital expenditures . . . . . . . . . . . . . . . | $ 882 | $ 153 | $ 555 | $ 840 | $ 733 | $ 600 |

37

EFIHMW00245765

|  | Successor (a) | | Predecessor (a) | | |
|---|---|---|---|---|---|
|  | December 31, | | December 31, | | |
|  | 2008 | 2007 | 2006 | 2005 | 2004 |
|  | (millions of dollars) | | | | |
| **Balance Sheet Data:** | | | | | |
| Total assets . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | $15,821 | $15,548 | $10,709 | $9,911 | $9,493 |
| Property, plant & equipment—net . . . . . . . . . . . . . . . . . . . . . . | 8,606 | 8,069 | 7,608 | 7,067 | 6,609 |
| Goodwill . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 4,064 | 4,894 | 25 | 25 | 25 |
| Total debt (d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 7,791 | 7,331 | 4,781 | 4,251 | 4,381 |
| Shareholder's equity . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | — | — | 2,975 | 2,935 | 2,687 |
| Total membership interests (e) . . . . . . . . . . . . . . . . . . . . . . . . . | 4,565 | 5,439 | —— | —— | —— |

(a) The Predecessor is Oncor; EFIH was formed at the time of the Merger. The consolidated financial statements of the Successor reflect the application of purchase accounting.

(b) Amount in 2008 includes an $860 million goodwill impairment charge (see Note 3 to EFIH and its subsidiaries' historical consolidated financial statements for the year ended December 31, 2008 that are included elsewhere in this Prospectus). Amount in 2004 includes an extraordinary gain of $16 million after-tax related to a regulatory asset adjustment and a credit of $2 million after-tax representing a cumulative effect of change in accounting principle.

(c) Fixed charges exceeded "earnings" (net loss) by $526 million for the year ended December 31, 2008.

(d) Includes long-term debt, including amounts due currently, short-term borrowings and debt push-down from EFH Corp, which represents 50% of the principal amount of the 2017 Notes guaranteed by EFIH. See Note 11 to EFIH and its subsidiaries' historical consolidated financial statements for the year ended December 31, 2008 and Note 4 to EFIH and its subsidiaries' historical consolidated financial statements for the nine months ended September 30, 2009, both included elsewhere in this Prospectus.

(e) Total equity as of December 31, 2008 includes noncontrolling interests in subsidiaries of $1.355 billion.

|  | Successor | |
|---|---|---|
|  | Nine Months Ended September 30, 2009 | Nine Months Ended September 30, 2008 |
|  | (millions of dollars, except ratios) | |
| **Statement of Income Data:** | | |
| Operating revenues . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | $2,037 | $1,969 |
| Net income . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 134 | 179 |
| Net income attributable to noncontrolling interests . . . . . . . . . . . . . . . . . . | 54 | —— |
| Net income attributable to EFIH. . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 80 | 179 |
| Ratio of earnings to fixed charges . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 1.43 | 1.68 |
| **Statement of Cash Flows Data:** | | |
| Cash flows provided by operating activities . . . . . . . . . . . . . . . . . . . . . . . | $  654 | $  590 |
| Cash flows provided by financing activities . . . . . . . . . . . . . . . . . . . . . . . | 5 | 99 |
| Cash flows used in investing activities . . . . . . . . . . . . . . . . . . . . . . . . . . | (762) | (679) |
| **Other Financial Data:** | | |
| Capital expenditures . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | $  728 | $  654 |

38

EFIHMW00245766

|  | Successor |
|---|---|
|  | September 30, 2009 |
|  | (millions of dollars) |
| **Balance Sheet Data:** | |
| Total assets | $16,022 |
| Property, plant & equipment—net | 9,058 |
| Goodwill | 4,064 |
| Total debt (a) | 7,999 |
| Total membership interests (b) | 4,585 |

(a)  Includes long-term debt, including amounts due currently, and short-term borrowings and debt push-down from EFH Corp., which represents 50% of the principal amount of the 2017 Notes guaranteed by EFIH. See Note 11 to EFIH and its subsidiaries' historical consolidated financial statements for the year ended December 31, 2008 and Note 4 to EFIH and its subsidiaries historical consolidated financial statements for the nine months ended September 30, 2009, both included elsewhere in this Prospectus.

(b)  Total equity as of September 30, 2009 includes noncontrolling interests in subsidiaries of $1.378 billion.

Confidential

EFIHMW00245767

**EFCH and its Subsidiaries**
**Summary Historical Consolidated Financial Data**

The following table sets forth EFCH and its subsidiaries' summary historical consolidated financial data as of and for the periods indicated. The historical financial data as of December 31, 2008 (Successor) and 2007 (Successor) and for the year ended December 31, 2008 (Successor), the period from October 11, 2007 through December 31, 2007 (Successor), the period from January 1, 2007 through October 10, 2007 (Predecessor) and for the year ended December 31, 2006 (Predecessor) have been derived from EFCH and its subsidiaries' audited historical consolidated financial statements and related notes included elsewhere in this Prospectus. The historical financial data as of December 31, 2006, 2005 and 2004 (Predecessor) and for the years ended December 31, 2005 and 2004 (Predecessor) have been derived from EFCH and its subsidiaries' audited historical consolidated financial statements that are not included in this Prospectus. The historical financial data as of September 30, 2009 (Successor) and for the nine months ended September 30, 2009 and 2008 (Successor) have been derived from EFCH and its subsidiaries' unaudited historical interim condensed consolidated financial statements and related notes included elsewhere in this Prospectus. In EFCH's opinion, such unaudited interim financial data reflects all adjustments, consisting of normal recurring accruals, necessary for the fair presentation of the results for those periods. The results of operations for the interim periods, for seasonal and other factors, are not necessarily indicative of the results to be expected for the full year or any future period.

The summary historical consolidated financial data should be read in conjunction with "Management's Discussion and Analysis of Financial Condition and Results of Operations as of and for the Year Ended December 31, 2008" and "Management's Discussion and Analysis of Financial Condition and Results of Operations as of and for the Nine Months Ended September 30, 2009," each included in Annex D to this Prospectus, and EFCH and its subsidiaries' historical consolidated financial statements and related notes that are included elsewhere in this Prospectus.

| | Successor | | Predecessor | | | |
|---|---|---|---|---|---|---|
| | Year Ended December 31, 2008 | Period from October 11, 2007 through December 31, 2007 | Period from January 1, 2007 through October 10, 2007 | Year Ended December 31, 2006 | 2005 | 2004 |
| | (millions of dollars, except ratios and per share amounts) | | | | | |
| **Statement of Income Data:** | | | | | | |
| Operating revenues .......................... | $ 9,787 | $ 1,671 | $ 6,884 | $ 9,396 | $10,824 | $ 9,304 |
| Income (loss) from continuing operations before extraordinary gain (loss) and cumulative effect of changes in accounting principles ............... | (9,039) | (1,266) | $ 1,306 | $ 2,501 | $ 1,816 | $   672 |
| Loss from discontinued operations, net of tax effect ................................... | ---- | ---- | $    — | $    — | $    (8) | $   (34) |
| Extraordinary gain (loss), net of tax effect .......... | ---- | ---- | $    — | $    — | $   (50) | $    16 |
| Cumulative effect of changes in accounting principles, net of tax effect ................... | ---- | ---- | $    — | $    — | $    (8) | $     6 |
| Preferred stock dividends ...................... | ---- | ---- | $    — | $    — | $     3 | $     2 |
| Net income (loss) available for common stock ...... | (9,039) | (1,266) | $ 1,306 | $ 2,501 | $ 1,747 | $   658 |
| Ratio of earnings to fixed charges (a) ............. | ---- | ---- | 5.88 | 10.84 | 5.04 | 2.47 |
| Ratio of earnings to combined fixed charges and preference dividends (a) ..................... | ---- | ---- | 5.88 | 10.84 | 5.01 | 2.45 |
| **Statement of Cash Flows Data:** | | | | | | |
| Cash flows provided by (used in) operating activities from continuing operations .................. | $ 1,657 | $  (248) | $ 1,231 | $ 4,757 | $ 2,580 | $ 1,838 |
| Cash flows provided by (used in) financing activities from continuing operations .................. | 1,289 | 1,488 | 895 | (1,265) | (61) | (772) |
| Cash flows used in investing activities from continuing operations ........................ | (2,682) | (1,881) | (1,277) | (3,497) | (2,572) | (1,776) |
| **Other Financial Data:** | | | | | | |
| Capital expenditures, including nuclear fuel ........ | $ 2,074 | $   519 | $ 1,585 | $   908 | $ 1,099 | $   968 |

40

EFIHMW00245768

| | Successor | | Predecessor | | |
|---|---|---|---|---|---|
| | December 31, | | December 31, | | |
| | 2008 | 2007 | 2006 | 2005 | 2004 |
| | (millions of dollars) | | | | |
| **Balance Sheet Data:** | | | | | |
| Total assets ....................................................... | $43,000 | $49,152 | $21,149 | $20,890 | $24,833 |
| Property, plant & equipment—net ................................. | 20,902 | 20,545 | 10,344 | 9,994 | 16,529 |
| Goodwill and intangible assets .................................... | 13,096 | 22,197 | 526 | 522 | 687 |
| Total debt (b) ..................................................... | 32,725 | 31,402 | 4,084 | 4,444 | 7,999 |
| Total preferred stock and preferred stock of subsidiaries (c) ........ | — | — | — | ---- | 549 |
| Total shareholders' equity ........................................ | (5,002) | 4,003 | 7,943 | 640 | 6,373 |

(a)   Fixed charges and combined fixed charges and preference dividends exceeded "earnings" (net loss) by $9.543 billion for the year ended
      December 31, 2008 and $1.941 billion for the period from October 11, 2007 through December 31, 2007, respectively.
(b)   Includes long-term debt, including amounts due currently, short-term borrowings and debt push down from EFH Corp., which represents
      50% of the principal amount of the 2017 Notes guaranteed by EFCH. See Note 12 to EFCH and its subsidiaries' historical consolidated
      financial statements for the year ended December 31, 2008 and Note 4 to EFCH and its subsidiaries' historical consolidated financial
      statements for the nine months ended September 30, 2009, both included elsewhere in this Prospectus.
(c)   Preferred stock outstanding has a stated value of less than $1 million at the end of 2004 through 2008.

Although EFCH continued as the same legal entity after the Merger, its "Summary Historical Consolidated
Financial Data" for periods preceding the Merger and for the periods succeeding the Merger are presented as the
consolidated financial statements of the "Predecessor" and the "Successor," respectively. The consolidated
financial statements of the Predecessor have been prepared on the same basis as EFCH's historical consolidated
financial statements for the year ended December 31, 2007, which are not included in this Prospectus. The
consolidated financial statements of the Successor also reflect the application of "purchase accounting."

Results for 2008 are significantly impacted by impairment charges related to goodwill, trade name and emission
allowances intangible assets and natural gas-fueled generation plants. Results for 2004 are significantly impacted
by charges related to EFH Corp.'s comprehensive restructuring plan.

| | Successor | |
|---|---|---|
| | Nine Months Ended September 30, 2009 | Nine Months Ended September 30, 2008 |
| | (millions of dollars, except ratios) | |
| **Statement of Income Data:** | | |
| Operating revenues .................................................. | $6,144 | $7,809 |
| Net income (loss) .................................................... | $  347 | $ (943) |
| Net income (loss) attributable to noncontrolling interests ............ | $   — | $   — |
| Net income (loss) attributable to EFCH ............................... | $  347 | $ (943) |
| Ratio of earnings to fixed charges (a) ................................ | 1.33 | ---- |
| Ratio of earnings to combined fixed charges and preference dividends (a) ...... | 1.33 | ---- |

| | Successor | |
|---|---|---|
| | Nine Months Ended September 30, 2009 | Nine Months Ended September 30, 2008 |
| | (millions of dollars) | |
| **Statement of Cash Flows Data:** | | |
| Cash flows provided by operating activities ........................... | $ 1,471 | $  865 |
| Cash flows provided by financing activities ........................... | $  287 | $ 2,914 |
| Cash flows used in investing activities ............................... | $(1,483) | $(2,122) |
| **Other Financial Data:** | | |
| Capital expenditures, including nuclear fuel .......................... | $ 1,263 | $ 1,514 |

41

EFIHMW00245769

|  | Successor |
|---|---|
|  | **September 30, 2009** |
|  | (millions of dollars) |
| **Balance Sheet Data:** | |
| Total assets ................................................................. | $43,329 |
| Property, plant & equipment—net ................................................ | $20,980 |
| Goodwill and intangible assets .................................................. | $12,910 |
| Total debt (b) ............................................................... | $33,230 |
| Total equity (c) ............................................................. | $ (4,517) |

(a)    Fixed charges and combined fixed charges and preference dividends exceeded "earnings" by $1.436 billion for the nine months ended September 30, 2008.

(b)    Includes long-term debt, including amounts due currently, short-term borrowings and debt push down from EFH Corp., which represents 50% of the principal amount of the 2017 Notes guaranteed by EFCH. See Note 12 to EFCH and its subsidiaries' historical consolidated financial statements for the year ended December 31, 2008 and Note 4 to EFCH and its subsidiaries' historical consolidated financial statements for the nine months ended September 30, 2009, both included elsewhere in this Prospectus.

(c)    Total equity as of September 30, 2009 includes noncontrolling interests in subsidiaries of $42 million.

Confidential

EFIHMW00245770

**PX 014**
**Page 52 of 1116**

## RISK FACTORS

*In addition to the other information included in this Prospectus, you should carefully consider the following risk factors before deciding whether or not to participate in the exchange offers and/or the consent solicitations.*

### Risks to Holders of Old Notes Not Tendered or Not Accepted for Exchange

The following risk factors apply to holders of Old Notes that elect not to tender Old Notes in the exchange offers or to the extent a holder's Old Notes are not accepted for exchange in the exchange offers. There are additional risks relating to ownership of the Old Notes that you should consider before deciding to tender your Old Notes in the exchange offers. Such additional risks are described in this "Risk Factors" section under the headings "—Risks Related to the Exchange Offers and the New Senior Secured Notes," "—Risks Related to Our Substantial Indebtedness and Debt Agreements," "—Risks Related to Structure," "—Risks Related to Our Businesses" and "—Risks Related to the EFIH Businesses."

> *If the Offerors complete the exchange offers, any Legacy Notes and 2017 Notes that remain outstanding will be unsecured obligations and will therefore be effectively subordinated to the New Senior Secured Notes and to any other debt we may issue that is secured by the Collateral or by any of our other assets, and the Legacy Notes will also continue to be structurally subordinated to any 2017 Notes that remain outstanding.*

The Legacy Notes and the 2017 Notes are currently, and those that remain outstanding after the completion of the exchange offers will remain, unsecured obligations of EFH Corp. EFIH's guarantee of the New EFH Senior Secured Notes and the New EFIH Senior Secured Notes will each be secured equally and ratably by a first-priority lien on all of the Collateral, which on the Settlement Date will initially consist of 100% of the membership interests of Oncor Holdings, which are owned by EFIH. Oncor Holdings owns approximately 80% of Oncor. The indentures under which the New Senior Secured Notes will be issued will allow EFH Corp. and EFIH together to incur up to an aggregate of $4.0 billion of debt, including in respect of the New Senior Secured Notes, secured by a first-priority security interest on the Collateral, and a substantial amount of additional debt that may be secured by a junior lien on the Collateral or by any of our other assets. Only a portion of this debt will be incurred in the form of the New Senior Secured Notes to be issued on the Settlement Date. Therefore, the remaining 2017 Notes, which are guaranteed by EFIH on an unsecured basis, will be effectively subordinated to the New Senior Secured Notes and to any future debt secured by the Collateral or by any of our other assets, with respect to, and to the extent of the value of, the Collateral or any other assets securing such debt. The Legacy Notes that remain outstanding after completion of the exchange offers will also continue to be unsecured obligations and, therefore, will be effectively subordinated to the New Senior Secured Notes and to any of our future debt that is secured by the Collateral or by any of our other assets, with respect to, and to the extent of the value of, the Collateral, or any other assets securing such debt. In the event of the Offerors' bankruptcy, liquidation or insolvency, the proceeds from any sales of the Collateral or other assets securing any of our future debt will be first applied to satisfy the secured claims of the holders of the New Senior Secured Notes and other debt secured by the Collateral or such assets, respectively, and there would be fewer assets remaining from which the claims of any Legacy Notes and 2017 Notes that remain outstanding after completion of the exchange offers could be satisfied. The unsecured nature of the claims of the Legacy Notes and the 2017 Notes that remain outstanding after completion of the exchange offers could materially and adversely affect the value of any Legacy Notes and 2017 Notes that are not tendered or accepted for exchange in the exchange offers and, in the event of a bankruptcy, liquidation or insolvency of EFH Corp., the extent of such holder's recovery.

In addition, the Legacy Notes that remain outstanding after completion of the exchange offers will continue not to be guaranteed by any of EFH Corp.'s subsidiaries. As a result, the Legacy Notes will continue to be structurally subordinated to the debt and other liabilities of EFH Corp. and its subsidiaries, including the following: (i) the New EFH Senior Secured Notes due to EFIH's secured guarantee and EFCH's unsecured guarantee of the New EFH Senior Secured Notes, (ii) the New EFIH Senior Secured Notes, (iii) the remaining

43

EFIHMW00245771

2017 Notes, which are guaranteed by EFIH and EFCH and (iv) any future debt issued or guaranteed by subsidiaries of EFH Corp. The market prices for the Legacy Notes that remain outstanding after completion of the exchange offers may be materially and adversely affected by this structural subordination and, in the event of a bankruptcy, liquidation or insolvency of EFH Corp., the extent of any recovery available to holders of Legacy Notes will also be materially and adversely affected.

> ### Following completion of the exchange offers, liquidity of the market for outstanding Old Notes will likely be reduced, and market prices for remaining Old Notes of any issue may materially decline as a result.

To the extent the exchange offers are completed, the aggregate principal amount of outstanding Old Notes will be reduced, with the amounts of those Old Notes at a higher Acceptance Priority Level likely to be reduced by the largest proportional amount. A reduction in the principal amount of outstanding Old Notes of any issue may adversely affect the liquidity of the Old Notes of any such issue that remains outstanding after completion of the exchange offers. A series of securities with a small outstanding principal amount available for trading (referred to as "float") may command a lower price than does a comparable series of securities with a greater float. Therefore, the market price for each issue of Old Notes that remains outstanding after completion of the exchange offers may be materially and adversely affected. A reduced float may also make the trading prices of any issue of Old Notes that are not exchanged more volatile. Following the completion of the exchange offers, an active trading market in the Old Notes may not exist and the trading price for the Old Notes not tendered by holders or not accepted for exchange may materially decline.

> ### If Proposed Amendments become operative, holders of applicable Consent Notes will no longer benefit from the protections provided by the existing restrictive covenants, certain events of default and other provisions.

With respect to each issue of Consent Notes, if the applicable Proposed Amendments become operative with respect to such issue, the applicable Consent Notes that remain outstanding immediately following the completion of the exchange offers will be subject to the terms of the applicable Consent Notes Indenture as modified by the applicable Supplemental Indenture. If the requisite Consents with respect to a given Consent Notes Indenture are received and a Supplemental Indenture for such Consent Notes Indenture is executed, EFH Corp. will pay to each holder that validly delivers and does not validly revoke Consents in respect of such Consent Notes, in addition to any Total Consideration payable to such holder, a cash consent payment of $2.50 per $1,000 principal amount of such Consent Notes.

If the Proposed Amendments become operative, among other things, substantially all of the restrictive covenants and references thereto and certain events of default contained in the applicable Consent Notes Indentures and the applicable Consent Notes will be eliminated, covenants regarding mergers and consolidations will be modified, the limitation on the incurrence of secured indebtedness in the Legacy Notes Indentures and the limitation on the incurrence of indebtedness and liens in the 2017 Notes Indenture will be eliminated, such that an unlimited amount of secured debt could be issued by EFH Corp. under the terms of Consent Notes Indentures, and certain other provisions, including certain provisions relating to defeasance contained in the 2017 Notes Indenture and 2017 Notes which would otherwise prevent a defeasance without, among other things, delivery of an opinion of counsel confirming such defeasance does not constitute a taxable event, will be modified or eliminated. See "Proposed Amendments" for additional information regarding the Proposed Amendments.

Following the adoption of the Proposed Amendments, holders of Consent Notes that remain outstanding after the completion of the exchange offers will no longer be entitled to the benefits of such restrictive covenants, events of default and other provisions. The elimination or modification of these restrictive covenants, events of default and other provisions will permit us to take certain actions previously prohibited that could increase the credit risks with respect to EFH Corp., as well as adversely affect the market price and credit rating of the Consent Notes that remain outstanding after completion of the exchange offers. For a description of the Proposed Amendments to each of the Consent Notes Indentures, see "Proposed Amendments" included elsewhere in this Prospectus. Moreover, due to Acceptance Priority Levels, the Maximum Exchange Amount and the possible

44

prorations resulting therefrom, following the completion of the exchange offers, a holder may still own Consent Notes for which the Proposed Amendments have become operative even though such holder validly tendered (and did not validly withdraw) all of such holder's Consent Notes for exchange in the exchange offers. If Acceptance Priority Levels are changed in the event that the requisite Consents are not received or for any other reason, the amount of Consent Notes that a holder may hold after the completion of the exchange offers may increase as a result of the increased purchases of Old Notes having higher Acceptance Priority Levels.

While the New Senior Secured Notes will initially contain certain restrictive covenants, events of default and certain other provisions, holders of Consent Notes that remain outstanding after the completion of the exchange offers should not rely on the restrictive covenants, events of default and certain other provisions contained in the indentures governing the New Senior Secured Notes to restrict EFH Corp. or its subsidiaries from taking actions that would increase the credit risk of EFH Corp. or adversely affect the market price and credit rating of the Consent Notes that remain outstanding after the completion of the exchange offers. The Offerors of the New Senior Secured Notes may in the future obtain the consent of holders of the New Senior Secured Notes to amend the indentures governing the New Senior Secured Notes to eliminate, waive or modify the restrictive covenants, events of default or other provisions contained therein. Additionally, certain strategic transactions with respect to EFIH or EFIH's ownership interest in Oncor Holdings and its subsidiaries, such as the sale, disposition or spin-off of the equity of EFIH such that it is no longer a subsidiary of EFH Corp., or the disposition of all of EFIH's ownership interest in Oncor Holdings and its subsidiaries, are permitted under the indentures governing the New Senior Secured Notes and may result in the New EFH Senior Secured Notes no longer being obligations of EFH Corp. In addition, the disposition of all of EFIH's ownership interest in Oncor Holdings and its subsidiaries, as well as the merger, consolidation or sale of all or substantially all of the assets of EFIH, are permitted under the indentures governing the New Senior Secured Notes and could result in the New EFIH Senior Secured Notes no longer being obligations of EFIH. If the New Senior Secured Notes cease to be obligations of EFH or EFIH, EFH and EFIH will no longer be subject to the restrictive covenants, events of default and other provisions contained in the indentures governing New Senior Secured Notes. See "Description of the EFH Corp. Notes—Certain Covenants—Restrictions on Permitted Asset Transfers" and "Description of the EFIH Notes—Certain Covenants—Merger, Consolidation and Sale of All or Substantially All Assets" for more information.

***The existing credit ratings for the Old Notes may not be maintained, and the market price of the Old Notes may decrease as a result of negative action with respect to the credit ratings on the Old Notes.***

A credit rating is not a recommendation to buy, sell or hold securities and the credit rating agencies may change or withdraw the ratings assigned to any issue of securities represented by the Old Notes in their sole discretion at any time. In October 2009, both S&P and Moody's announced rating actions related to their view that the exchange offers represented a "distressed exchange." S&P downgraded the corporate issuer ratings of each of EFH Corp., EFCH and TCEH by four notches to CC from B-. S&P also completed multi-notch downgrades of its ratings on the issues of Old Notes subject to the exchange offers to CC. Moody's downgraded its probability of default rating for EFH Corp. and TCEH three notches to Ca from Caa1. Additionally, Moody's downgraded its ratings on certain of the issues of Old Notes subject to the exchange offers and placed the ratings of the Priority 2 Notes on review for possible downgrade. As result of the exchange offers, the consent solicitations or otherwise, one or more rating agencies, including Fitch Ratings, Ltd., S&P or Moody's, may take action to withdraw their rating of any issue of the Old Notes, or further downgrade or take other negative action upon their respective ratings on any issue of Old Notes. Any withdrawal, further downgrade or other negative action with respect to any issue of Old Notes would likely materially and adversely affect the market price of such issue of Old Notes.

### Risks Related to the Exchange Offers and the New Senior Secured Notes

The following are some of the risks that apply to holders of Old Notes that elect to participate in the exchange offers and whose Old Notes are accepted for exchange in the exchange offers and receive New Senior Secured Notes. There are additional risk factors relating to ownership of New Senior Secured Notes that you should consider before deciding to tender your Old Notes in the exchange offers. These risks are described in this

45

EFIHMW00245773

"Risk Factors" section under the headings "—Risks Related to Our Substantial Indebtedness and Debt Agreements," "—Risks Related to Structure," "—Risks Related to Our Businesses" and "—Risks Related to the EFIH Businesses." Additionally, due to Acceptance Priority Levels, the Maximum Exchange Amount, the Priority Level 2 Cap and the possible prorations resulting therefrom, following the completion of the exchange offers, a holder may still own Old Notes even though such holder validly tendered (and did not validly withdraw) all of such holder's Old Notes for exchange in the exchange offers. As a result, holders should also review the risks described above under the heading "—Risks to Holders of Old Notes Not Tendered or Not Accepted for Exchange."

> *To the extent that a holder of Old Notes exchanges Old Notes for New Senior Secured Notes with a later maturity, such holder may increase its risk that the Offerors will be unable to repay or refinance the New Senior Secured Notes when they mature.*

The maturity of the New Senior Secured Notes is later than the maturity of certain issues of Old Notes. Holders who exchange Old Notes that mature prior to the maturity of the New Senior Secured Notes will be exposed to the risk of nonpayment on the New Senior Secured Notes for a longer period than the holders of Old Notes that did not have their Old Notes exchanged in the exchange offers. For example, following the maturity date of a given issue of Old Notes, but prior to the maturity date of New Senior Secured Notes, any of the Offerors may become subject to a bankruptcy or similar proceeding. If such a proceeding were to occur, holders of Old Notes with a maturity date that is earlier than the New Senior Secured Notes, whose Old Notes were not accepted for exchange, may be paid in full at maturity. However, there is a risk that the holders of Old Notes whose Old Notes were accepted for exchange into New Senior Secured Notes would not be paid in full at maturity of the New Senior Secured Notes or in connection with any bankruptcy or similar proceeding.

> *The exchange consideration for the exchange offers does not reflect any independent valuation of the Old Notes or the New Senior Secured Notes.*

The Offerors have not obtained or requested a fairness opinion from any banking or other firm as to the fairness of the exchange consideration or the relative value of the New Senior Secured Notes as compared to the Old Notes that you would have to tender to participate in any of the exchange offers. If you validly tender your Old Notes, you may or may not receive more or as much value than if you choose to keep them.

> *We expect the New Senior Secured Notes to trade at a discount to their principal amount.*

Each issue of the Old Notes is currently trading at a discount to the principal amount of such issue, and in certain cases these discounts are significant. While the market, if any, for the New Senior Secured Notes will depend upon many factors, including prevailing interest rates, the market for similar securities, general economic conditions and our financial condition, performance and prospects, we generally expect each issue of the New Senior Secured Notes to trade, at least initially, at a discount to the principal amount of such issue. Any such discount may be significant. There can be no assurance that the New Senior Secured Notes will be traded at or above the principal amount of such notes in the future. In addition, while the New EFH Senior Secured Notes and the New EFIH Senior Secured Notes may be issued at the same price, the notes may trade differently and at different prices in the future.

> *At the time a holder of Old Notes tenders its Old Notes in the exchange offers, the holder will not know what portion of such holder's Old Notes will be accepted for exchange in the exchange offers.*

Due to Acceptance Priority Levels, the Maximum Exchange Amount and the Priority Level 2 Cap, holders of Old Notes that tender Old Notes in the exchange offers are subject to the risk of proration. As a result, a holder of Old Notes that tenders all of its Old Notes in the exchange offers will not know what portion of its Old Notes will be accepted for exchange in the exchange offers at the time such holder tenders its Old Notes. Therefore, a holder that tenders all of its Old Notes in the exchange offers may receive New EFH Senior Secured Notes and New EFIH Senior Secured Notes, and such holder may continue to own a portion of such holder's Old Notes that were not accepted for exchange in the exchange offers.

46

Confidential

***The exchange offers and the consent solicitations may be cancelled, delayed or changed.***

Subject to applicable law, the Offerors have the right to terminate or withdraw, at their sole discretion, any of the exchange offers and the consent solicitations if any of the conditions described under "Conditions of the Exchange Offers and the Consent Solicitations" are not satisfied or waived by the Expiration Date. In addition, the Offerors may amend the exchange offers and consent solicitations, including to increase or decrease the Maximum Exchange Amount and/or the Priority Level 2 Cap and/or to change Acceptance Priority Levels. If a change is made to the amount of securities offered to be exchanged pursuant to any exchange offer, including any change to the Maximum Exchange Amount, the Priority Level 2 Cap and/or the Acceptance Priority Levels, as applicable, such exchange offer will remain open for at least ten business days following the announcement of such change. The Offerors may also decide to commence additional exchange offers to exchange additional debt of EFH Corp. and its subsidiaries for New Senior Secured Notes. Any such additional offer would remain open for at least twenty business days. Because the Maximum Exchange Amount and/or the Priority Level 2 Cap may be reduced, holders should consider that they may be unable to exchange as much of their Old Notes for New Senior Secured Notes than if the Maximum Exchange Amount and/or the Priority Level 2 Cap had not been reduced. Even if the exchange offers and the consent solicitations are completed, they may not be completed on the schedule described in this Prospectus. The Offerors may extend the exchange offers or consent solicitations. Accordingly, holders participating in the exchange offers may have to wait longer than expected to receive their New Senior Secured Notes.

***You may not receive New Senior Secured Notes in the exchange offers if the procedures for the exchange offers are not followed.***

Subject to the terms and conditions of the exchange offers, including the proration terms described herein, the Maximum Exchange Amount and the Priority Level 2 Cap, the Offerors will issue the New Senior Secured Notes in exchange for your Old Notes only if you validly tender the Old Notes and deliver a properly completed and duly executed Consent and Letter of Transmittal, or an Agent's Message in lieu thereof, and other required documents before the Expiration Date. You should allow sufficient time to ensure timely delivery of the necessary documents. None of the Exchange Agent, the Dealer Managers or the Offerors are under any duty to give notification of defects or irregularities with respect to the tenders of Old Notes for exchange. If you are the beneficial owner of Old Notes that are registered in the name of your broker, dealer, commercial bank, trust company or other nominee, and you wish to tender in the exchange offers, you should promptly contact the person in whose name your Old Notes are registered and instruct that person to tender your Old Notes on your behalf.

***The Offerors may change the Acceptance Priority Level for each issue of Old Notes, and therefore a holder may have more or less of their Old Notes accepted for exchange than they anticipated.***

The Acceptance Priority Level for each issue of Old Notes is set forth in the table on page ii of this Prospectus. The Offerors may change the Acceptance Priority Levels in the event that the requisite Consents are not received or for other reasons, subject to applicable law, and therefore a holder may have more or less of their Old Notes accepted for exchange than they anticipated. If a change is made to the amount of securities offered to be exchanged pursuant to any exchange offer, including any change to applicable Acceptance Priority Levels, such exchange offer will remain open for at least ten business days following the announcement of such change.

***The Offerors may not be able to generate sufficient cash to service all of their indebtedness, including the Old Notes and the New Senior Secured Notes, and may be forced to take other actions to satisfy their obligations under their debt agreements, which may not be successful.***

The Offerors' ability to make scheduled payments on or to refinance their debt obligations depends on their financial condition and operating performance, which is subject to prevailing economic and competitive conditions and to certain financial, business and other factors beyond their control. The Offerors and their respective subsidiaries may not be able to maintain a level of cash flows from operating activities sufficient to

47

EFIHMW00245775

permit them to pay the principal, premium, if any, and interest on their indebtedness, including the remaining Old Notes and the New Senior Secured Notes.

If cash flows and capital resources are insufficient to fund the Offerors' and their respective subsidiaries' debt service obligations, the Offerors or their subsidiaries could face substantial liquidity problems and might be forced to reduce or delay investments and capital expenditures, or to dispose of assets or operations, seek additional capital or restructure or refinance indebtedness, including Old Notes that remain outstanding following the exchange offers and the New Senior Secured Notes. These alternative measures may not be successful or may not be adequate for the Offerors and their respective subsidiaries to meet their debt service obligations then due. Additionally, the Offerors and their subsidiaries' debt agreements, including the indentures governing the New Senior Secured Notes and the TCEH Senior Secured Facilities, limit the use of the proceeds from any disposition of assets or operations. As a result, the Offerors may not be allowed, under these documents, to use proceeds from such dispositions to satisfy all current debt service obligations. See "—Risks Related to Our Substantial Indebtedness and Debt Agreements."

### *If the Offerors or any of their respective subsidiaries default on obligations to pay indebtedness, the Offerors may not be able to make payments on the New Senior Secured Notes.*

Any default under the Offerors' or their respective subsidiaries' debt agreements that is not waived by the required lenders or noteholders, and the remedies sought by the holders of such indebtedness, could prevent the Offerors from paying principal, premium, if any, and interest on the New Senior Secured Notes, which could substantially decrease the market price of the New Senior Secured Notes. If the Offerors' respective subsidiaries are unable to generate sufficient cash flows and the Offerors are otherwise unable to obtain funds necessary to meet required payments of principal, premium, if any, and interest on our indebtedness, or if the Offerors or their respective subsidiaries otherwise fail to comply with the various covenants, including any financial and operating covenants, in the instruments governing their indebtedness, they could be in default under the terms of the agreements governing such indebtedness. In the event of such default, the holders of such indebtedness could elect to declare all the funds borrowed thereunder to be due and payable, together with accrued and unpaid interest, and/or the lenders could elect to terminate their commitments thereunder, cease making further loans and, in the case of the lenders under the TCEH Senior Secured Facilities, institute foreclosure proceedings against the pledged assets, and the Offerors could be forced into bankruptcy, liquidation or insolvency. If the operating performance of the Offerors' respective subsidiaries declines, the Offerors or certain of their subsidiaries, including TCEH, may in the future need to obtain waivers from the required lenders or noteholders to avoid being in default. If EFH Corp.'s subsidiaries breach the covenants under the TCEH Senior Secured Facilities or the indenture governing the TCEH senior notes and seek a waiver, they may not be able to obtain a waiver from the required lenders. If this occurs, such subsidiaries would be in default under the instrument governing that indebtedness, the lenders could exercise their rights, as described above, and such subsidiaries could be forced into bankruptcy, liquidation or insolvency.

### *The majority of EFH Corp.'s subsidiaries will not guarantee the New EFH Senior Secured Notes, and there will be no guarantors of the New EFIH Senior Secured Notes. As a result, the New EFH Senior Secured Notes will be structurally subordinated to all liabilities of EFH Corp.'s subsidiaries that do not guarantee the New EFH Senior Secured Notes, and the New EFIH Senior Secured Notes will be structurally subordinated to all liabilities of all of EFIH's subsidiaries (other than EFIH Finance) and will have no claim on the assets of EFH Corp. or its subsidiaries.*

The New EFH Senior Secured Notes will initially be guaranteed on a senior secured basis by EFIH and on a senior unsecured basis by EFCH, but the New EFIH Senior Secured Notes will not initially be guaranteed by any of EFH Corp.'s other subsidiaries. The New EFIH Senior Secured Notes will not be guaranteed by any person. EFH Corp., EFCH and EFIH are holding companies. None of EFH Corp., EFCH or EFIH has any operations, and each relies on distributions from its subsidiaries. However, EFH Corp. and EFIH's historical consolidated financial statements included in this Prospectus reflect all of EFH Corp.'s and EFIH's subsidiaries, respectively. EFH Corp.'s non-guarantor subsidiaries and EFIH's subsidiaries generated all of their consolidated revenues,

48

EFIHMW00245776

respectively, for the year ended December 31, 2008 and for the nine months ended September 30, 2009, and as of September 30, 2009, EFH Corp.'s non-guarantor subsidiaries and EFIH's subsidiaries held substantially all of their consolidated total assets, respectively.

EFH Corp.'s non-guarantor subsidiaries and EFIH's subsidiaries (including Oncor Holdings and Oncor and its subsidiaries) are separate and distinct legal entities and have no obligation, contingent or otherwise, to pay any amounts due pursuant to the New Senior Secured Notes, or to make any funds available therefore, whether by dividends, loans, distributions or other payments. The New EFH Senior Secured Notes will be structurally subordinated to indebtedness and other liabilities of EFH Corp.'s subsidiaries that do not guarantee such notes. Additionally, the New EFIH Senior Secured Notes will be structurally subordinated to the indebtedness and other liabilities of all of EFIH's subsidiaries (including Oncor Holdings and Oncor and its subsidiaries), other than EFIH Finance, and holders of the New EFIH Senior Secured Notes will have no claim on the assets of EFH Corp., EFCH and the subsidiaries of EFCH, including TCEH. In each case, the claims of creditors of each of the non-guarantor subsidiaries, including trade creditors, will have priority as to the assets of these subsidiaries. In the event of a bankruptcy, liquidation or insolvency of any of these subsidiaries, these subsidiaries will pay the holders of their debts, holders of preferred equity interests and their trade creditors before they will be able to distribute any of their assets to EFH Corp. or EFIH, as applicable. In addition, the guarantee of the New EFH Senior Secured Notes by EFCH is structurally subordinated to the indebtedness of TCEH, the principal amount of which, as of September 30, 2009, was $30.957 billion (includes long-term debt, including amounts due currently, and short-term borrowings), as well as any other indebtedness of the other subsidiaries of EFCH. See Note 29 to EFH Corp.'s historical consolidated financial statements for the year ended December 31, 2008 included elsewhere in this Prospectus and Note 14 to EFH Corp.'s historical condensed consolidated financial statements for the nine months ended September 30, 2009 included elsewhere in this Prospectus for financial information regarding EFH Corp.'s subsidiaries. Additionally, upon completion of the exchange offers and the issuance of the New EFH Senior Secured Notes, EFH Corp. may be able to designate each of EFCH and TCEH as an "unrestricted subsidiary" under the indenture that will govern the New EFH Senior Secured Notes. If they are so designated, EFCH and TCEH will not be subject to the restrictive covenants contained in the indenture, and EFCH's guarantee of the New EFH Senior Secured Notes will be released.

***The Offerors' ability to obtain funds from TCEH to pay principal, premium and interest on the New Senior Secured Notes will be limited in some circumstances.***

Pursuant to the Indenture, dated as of October 31, 2007, by and among TCEH, TCEH Finance, Inc., BONYM and each of the guarantors party thereto (the "TCEH Indenture"), and the TCEH Senior Secured Facilities, as long as TCEH is a subsidiary of EFH Corp., TCEH may provide EFH Corp. with intercompany loans on arm's length terms, in an unlimited amount, to allow EFH Corp. to pay principal, premium and interest on the New EFH Senior Secured Notes issued in exchange for Consent Notes. However, the TCEH Indenture limits TCEH's ability to provide such loans for payment of principal, premium and interest on indebtedness of EFH Corp.'s subsidiaries, including the New EFIH Senior Secured Notes. In addition, if New Senior Secured Notes are issued in the exchange offers for TCEH Notes that are validly tendered (and not validly withdrawn) and accepted in the exchange offers, the TCEH Indenture and the TCEH Senior Secured Facilities limit the ability of the Offerors to obtain intercompany loans from TCEH to pay principal, premium and interest on the New Senior Secured Notes issued in exchange for such TCEH Notes. Further, under the terms of TCEH's debt agreements and applicable state law, TCEH is restricted from paying dividends, except in limited circumstances.

***Under the terms of the indenture governing the New EFIH Senior Secured Notes, EFIH will be restricted from making certain payments to EFH Corp.***

EFH Corp. is a holding company and substantially all of its consolidated assets are held by its subsidiaries. As of September 30, 2009, EFIH and its subsidiaries held approximately 26% of EFH Corp.'s consolidated assets and represented approximately 17% of EFH Corp.'s consolidated revenues. Accordingly, EFH Corp. depends upon EFIH for a significant amount of its cash flows to pay its obligations. However, under the terms of the indenture governing the New EFIH Senior Secured Notes, EFIH will be restricted from making certain payments, including dividends and loans, to EFH Corp., except in limited circumstances. See "Description of the EFIH Notes."

49

Confidential

***The indentures governing the New Senior Secured Notes will not limit or restrict the activities of Oncor Holdings and its subsidiaries.***

Oncor Holdings and its subsidiaries will not be "restricted subsidiaries" under the indentures governing the New Senior Secured Notes (except under certain circumstances, such as in connection with the calculation of the "fixed charge coverage ratio" or "consolidated leverage ratio" for purposes of making certain restricted payments; see "Description of the EFH Corp. Notes" and "Description of the EFIH Notes"). As of the date the New Senior Secured Notes are issued, EFIH's subsidiaries (other than EFIH Finance) will consist only of Oncor Holdings and its subsidiaries, all of which will be unrestricted subsidiaries of EFH Corp. and EFIH. Accordingly, none of EFIH's subsidiaries (other than EFIH Finance) will be subject to the restrictive covenants described in "Description of the EFH Corp. Notes" and "Description of the EFIH Notes," and none of EFIH's subsidiaries will guarantee the New Senior Secured Notes.

Because Oncor Holdings and its subsidiaries will be unrestricted subsidiaries of EFH Corp. and EFIH under the indentures governing the New Senior Secured Notes and will therefore not be subject to any of the restrictive covenants therein, such indentures will not serve to limit or restrict the ability of Oncor Holdings or its subsidiaries to take any actions or enter into any transactions that would impair their ability to dividend funds to EFH or EFIH to service the New Senior Secured Notes and other debt of EFH Corp., or that would negatively affect the value of EFIH's equity interests in Oncor Holdings that are pledged as Collateral for the New Senior Secured Notes, such as incurring debt, selling or transferring all or a portion of the assets of Oncor Holdings or its subsidiaries, entering into joint ventures, dividending out assets or engaging in speculative investments. Certain actions that would negatively affect the value of the Collateral may increase the ability of EFH and EFIH to make restricted payments.

***EFH Corp. and EFIH have a very limited ability to control activities at Oncor due to structural and operational "ring-fencing" measures.***

EFH Corp. and EFIH depend upon Oncor for a significant amount of their cash flows and ability to pay their obligations. However, EFH Corp. and EFIH have a very limited ability to control the activities of Oncor. As part of the ring-fencing measures related to Oncor as implemented by EFH Corp. and Oncor, a majority of the members of Oncor's board of directors are required to meet the New York Stock Exchange requirements for independence in all material respects, and the unanimous consent of such directors is required for Oncor to take certain material actions. In addition, any new independent directors are required to be appointed by the nominating committee of Oncor Holdings' board of directors, a majority of whose members are independent directors. No member of EFH Corp.'s management is a member of Oncor's board of directors. EFH Corp. and EFIH have a very limited ability to control the activities of Oncor. Under Oncor Holdings' and Oncor's organizational documents, EFH Corp. has the right, indirectly, to consent to new issuances of securities by Oncor, material transactions with third parties involving Oncor outside of the ordinary course of business, actions that cause Oncor's assets to increase the level of jurisdiction of the FERC, any changes to the state of formation of Oncor, material changes to accounting methods not required by GAAP, and actions that fail to enforce certain tax sharing obligations between Oncor and EFH. See "The Transactions—Ring-Fencing." In addition, there are restrictions on Oncor's ability to make distributions to its members, including indirectly to EFIH and EFH Corp.

***We may purchase or repay any Old Notes not tendered in the exchange offers on terms that could be more favorable to holders of Old Notes than the terms of these exchange offers.***

Although we do not currently intend to do so, we may, at any time to the extent permitted by applicable law, purchase Old Notes in the open market, in privately negotiated transactions, through subsequent tender or exchange offers or otherwise. Any other purchases may be made on the same terms or on terms which are more or less favorable to holders than the terms of these exchange offers. We also reserve the right to repay any existing notes not tendered. If we decide to repurchase or repay Old Notes that are not tendered in the exchange offers on terms that are more favorable than the terms of the exchange offers, those holders who decided not to participate in the exchange offers could be better off than those that participated in the exchange offers.

50

Confidential

*EFCH's guarantee of the New EFH Senior Secured Notes is effectively subordinated to those lenders who have a security interest in its assets.*

EFCH's obligations under its guarantee of the New EFH Senior Secured Notes are unsecured, but its obligations under its guarantee of the TCEH Senior Secured Facilities are secured by a security interest in substantially all of its tangible and intangible assets. If EFCH were unable to pay under its guarantee of the TCEH Senior Secured Facilities, the lenders could foreclose on the pledged assets described above to the exclusion of holders of the New EFH Senior Secured Notes, even if an event of default exists under the indenture governing the New EFH Senior Secured Notes at such time. In any such event, because the guarantee of the New EFH Senior Secured Notes will not be secured by any of EFCH's assets, it is possible that there would be no assets remaining from which your claims as a noteholder could be satisfied or, if any assets remained, they might be insufficient to fully satisfy your claims as a noteholder under such guarantee.

*The New Senior Secured Notes will be secured only to the extent of the value of the assets that have been granted as security for EFIH's guarantee of the New EFH Senior Secured Notes and for the New EFIH Senior Secured Notes.*

The Collateral securing the New EFIH Senior Secured Notes and the guarantee by EFIH of the New EFH Senior Secured Notes will consist only of the equity and other investments that EFIH holds in Oncor Holdings and its subsidiaries (which will initially consist of 100% of the membership interests of Oncor Holdings, which are owned by EFIH) and any promissory notes or other indebtedness owed by Oncor Holdings or any of its subsidiaries to EFIH, and does not include any assets of Oncor Holdings or its subsidiaries. Oncor Holdings owns approximately 80% of Oncor. No appraisals of any of the Collateral securing the New EFIH Senior Secured Notes or the guarantee by EFIH of the New EFH Senior Secured Notes have been prepared by or on behalf of the Offerors in connection with the exchange offers. The fair market value of the Collateral may not be sufficient to repay the holders of the New Senior Secured Notes upon any foreclosure. The fair market value of the membership interests of Oncor Holdings is subject to fluctuations based on factors that include, among other things, the financial results and prospects of Oncor Holdings and its subsidiaries and its ability to implement its business strategy, Oncor's capital structure and the amount of its other existing indebtedness (as to which EFH Corp. and EFIH will have no control), applicable regulatory approvals that may be required to foreclose on the membership interests of Oncor Holdings and subsequently dispose of the membership interests of Oncor Holdings, the ability to sell the membership interests of Oncor Holdings in an orderly sale, general economic conditions, the availability of buyers and similar factors. Furthermore, upon a foreclosure in the Collateral, holders may be limited in their ability to obtain the best price for the Collateral if they are unable to exercise a "drag-along" right to force Texas Transmission Investment LLC ("Texas Transmission"), Oncor's noncontrolling owner, to sell its membership interests pursuant to the terms of an investor rights agreement among EFH Corp., Oncor Holdings, Oncor and Texas Transmission. In addition, a court could limit recoverability if it were to apply non-New York law to a proceeding and deem a portion of the interest claim usurious in violation of public policy. The amount to be received upon a sale of any Collateral would be dependent on numerous factors, including but not limited to the actual fair market value of the Collateral at such time, general, market and economic conditions and the timing and the manner of the sale.

In the event that a bankruptcy or similar proceeding is commenced by or against the Offerors, if at the time of the filing the value of the membership interests of Oncor Holdings and other Collateral is less than the amount of principal and accrued and unpaid interest on the New Senior Secured Notes, interest may cease to accrue on the New Senior Secured Notes thereafter. If at the time of the filing the value of the membership interests of Oncor Holdings and other Collateral is greater than the amount of principal and accrued and unpaid interest on the New Senior Secured Notes, interest may nevertheless cease to accrue at a subsequent time if at such time the value ceases to be in excess of the principal and accrued and unpaid interest. It is possible, given the broad discretionary powers of a bankruptcy court, even if at the time of the filing the value of the membership interests of Oncor Holdings and other Collateral is greater than the amount of principal and accrued and unpaid interest on the New Senior Secured Notes on the date of filing, claims on the membership interests of Oncor Holdings and other Collateral for interest accruing from and after the date the bankruptcy petition is filed might not be allowed.

51

EFIHMW00245779