including any group acting for the purpose of acquiring, holding or disposing of securities (within the meaning of Rule 13d-5(b)(1) under the Exchange Act or any successor provision), other than the Permitted Holders, in a single transaction or in a related series of transactions, by way of merger, consolidation or other business combination or purchase of beneficial ownership (within the meaning of Rule 13d-3 under the Exchange Act, or any successor provision) of 50% or more of the total voting power of the Voting Stock of EFIH or any of its direct or indirect parent companies; or

(3) at any time, EFH Corp. shall cease to own, directly or indirectly, beneficially and of record at least a majority of the total voting power of the voting stock of EFIH:

*provided, however,* that a Permitted Asset Transfer shall not constitute a Change of Control if,

(a) in the case of a Permitted Asset Transfer described in clause (2) of the definition of "Permitted Asset Transfer" or a Permitted Asset Transfer described in clause (1) of the definition of "Permitted Asset Transfer" by way of merger, wind-up or consolidation of EFIH with or into another Person, such Permitted Asset Transfer complies with the "Merger, Consolidation or Sale of All or Substantially All Assets" covenant; *provided* that the Successor Company may not be an Oncor Subsidiary;

(b) in the case of a Permitted Asset Transfer described in clause (2) of the definition of "Permitted Asset Transfer" or a Permitted Asset Transfer described in clause (1) of the definition of "Permitted Asset Transfer" by way of merger, wind-up or consolidation of EFIH with or into another Person, the Successor Company has assumed all the obligations of the Issuer under the Notes and the EFIH Indenture and the Security Documents to which the Issuer is a party pursuant to agreements, in each case, reasonably satisfactory to the Trustee and the Collateral Trustee, in accordance with the "Merger, Consolidation or Sale of All or Substantially All Assets" covenant;

(c) immediately after such transaction no Default exists;

(d) immediately after giving pro forma effect to such transaction and any related financing transactions (including, without limitation, any transaction the proceeds of which are applied to reduce the Indebtedness of the Successor Company or EFIH, as the case may be) as if the same had occurred at the beginning of the applicable four-quarter period, either:

(i) the Successor Company, or EFIH, as the case may be, would be permitted to incur at least $1.00 of additional Indebtedness pursuant to the Fixed Charge Coverage Ratio test described in the first paragraph under "—Certain Covenants—Limitation on Incurrence of Indebtedness and Issuance of Disqualified Stock and Preferred Stock"; or

(ii) the Fixed Charge Coverage Ratio (as defined in the EFIH Indenture) for the Successor Company and its Restricted Subsidiaries or EFIH and its Restricted Subsidiaries, as the case may be, would be greater than such Fixed Charge Coverage Ratio for EFIH and its Restricted Subsidiaries immediately prior to such transaction;

(e) the rating on the Notes shall not have been downgraded by two or more of the Rating Agencies (or, if the Notes are rated by only one Rating Agency at the time of the first notice of such Permitted Asset Transfer, such Rating Agency) during the period commencing 30 days prior to the first public notice of the occurrence of a Permitted Asset Transfer or the intention of the Issuer or any Subsidiary thereof to effect a Permitted Asset Transfer and ending on the date 60 days after such notice relative to the rating at the start of such period; and

(f) EFIH or the Successor Company, as the case may be, shall have delivered to the Trustee an Opinion of Counsel confirming that, subject to customary assumptions, exclusions and qualifications, the existing Security Documents, or to the extent that a Permitted Asset Transfer pursuant to clause (2) of the definition thereof or by way of merger, wind-up or consolidation of EFIH pursuant to clause (1) of the definition thereof is being consummated, the new or amended Security Documents to be entered into by EFIH or the Successor Company, as the case may be, are enforceable obligations of

275

Confidential

EFIH or the Successor Company, as the case may be, create a legally valid and enforceable security interest in the Collateral in favor of the Collateral Trustee for the benefit of the Holders of the Notes and the other Secured Debt Obligations, and that the security interests in the Collateral created by the Security Documents have been perfected.

"*Class*" means (1) in the case of Parity Lien Debt, every Series of Parity Lien Debt, taken together, and (2) in the case of Junior Lien Debt, every Series of Junior Lien Debt, taken together.

"*Closing Date*" means October 10, 2007.

"*Code*" means the Internal Revenue Code of 1986, as amended, or any successor thereto.

"*Collateral*" means all assets or property, now owned or hereafter acquired by EFIH, to the extent such assets or property are pledged or assigned or purported to be pledged or assigned, or are required to be pledged or assigned under the Security Documents to the Collateral Trustee, together with the proceeds thereof.

"*Collateral Asset Sale Offer*" has the meaning set forth under "—Repurchase at the Option of Holders—Asset Sales."

"*Collateral Excess Proceeds*" has the meaning set forth under "—Repurchase at the Option of Holders—Asset Sales."

"*Collateral Trustee*" means The Bank of New York Mellon Trust Company, N.A., in its capacity as Collateral Trustee under the Collateral Trust Agreement, together with its successors in such capacity.

"*Collateral Trustee's Liens*" means a Lien granted to the Collateral Trustee as security for Secured Debt Obligations.

"*Consolidated Depreciation and Amortization Expense*" means with respect to any Person for any period, the total amount of depreciation and amortization expense, including the amortization of deferred financing fees, nuclear fuel costs, depletion of coal or lignite reserves, debt issuance costs, commissions, fees and expenses and Capitalized Software Expenditures, of such Person and its Restricted Subsidiaries for such period on a consolidated basis and otherwise determined in accordance with GAAP.

"*Consolidated Interest Expense*" means, with respect to any Person for any period, without duplication, the sum of:

(1) consolidated interest expense of such Person and its Restricted Subsidiaries for such period, to the extent such expense was deducted (and not added back) in computing Consolidated Net Income (including (a) amortization of original issue discount resulting from the issuance of Indebtedness at less than par, (b) all commissions, discounts and other fees and charges owed with respect to letters of credit, bankers' acceptances or any Collateral Posting Facility or similar facilities, (c) non-cash interest payments (but excluding any non-cash interest expense attributable to the movement in the mark to market valuation of Hedging Obligations or other derivative instruments pursuant to GAAP), (d) the interest component of Capitalized Lease Obligations, and (e) net payments, if any, pursuant to interest rate Hedging Obligations with respect to Indebtedness, and excluding (u) accretion of asset retirement obligations and accretion or accrual of discounted liabilities not constituting Indebtedness, (v) any expense resulting from the discounting of any Indebtedness in connection with the application of purchase accounting, (w) any "additional interest" imposed in connection with failure to register other securities, (x) amortization of reacquired Indebtedness, deferred financing fees, debt issuance costs, commissions, fees and expenses, (y) any expensing of bridge, commitment and other financing fees and (z) commissions, discounts, yield and other fees and charges (including any interest expense) related to any Receivables Facility); *plus*

276

EFIHMW00246004

**PX 014**
**Page 286 of 1116**

(2) interest on Indebtedness of another Person that is guaranteed by EFIH solely to the extent such interest is actually paid by EFIH under such guarantee; *plus*

(3) consolidated capitalized interest of such Person and its Restricted Subsidiaries for such period, whether paid or accrued; *less*

(4) interest income of such Person and its Restricted Subsidiaries for such period.

For purposes of this definition, interest on a Capitalized Lease Obligation shall be deemed to accrue at an interest rate reasonably determined by such Person to be the rate of interest implicit in such Capitalized Lease Obligation in accordance with GAAP.

"*Consolidated Leverage Ratio*" as of any date of determination, means the ratio of (x) Consolidated Total Indebtedness (treating the Oncor Subsidiaries as Restricted Subsidiaries for purposes of such calculation) computed as of the end of the most recent fiscal quarter for which internal financial statements are available immediately preceding the date on which such event for which such calculation is being made shall occur to (y) the aggregate amount of EBITDA of EFIH (treating the Oncor Subsidiaries as Restricted Subsidiaries for purposes of such calculation) for the period of the most recently ended four full consecutive fiscal quarters for which internal financial statements are available immediately preceding the date on which such event for which such calculation is being made shall occur, in each case with such pro forma adjustments to Consolidated Total Indebtedness and such EBITDA as are appropriate and consistent with the pro forma adjustment provisions set forth in the definition of "Fixed Charge Coverage Ratio."

"*Consolidated Net Income*" means, with respect to any Person for any period, the aggregate of the Net Income of such Person for such period, on a consolidated basis, and otherwise determined in accordance with GAAP; *provided, however,* that, without duplication,

(1) any after-tax effect of extraordinary, non-recurring or unusual gains or losses (less all fees and expenses relating thereto) or expenses (including Transaction fees and expenses to the extent incurred on or prior to December 31, 2008), severance, relocation costs, consolidation and closing costs, integration and facilities opening costs, business optimization costs, transition costs, restructuring costs, signing, retention or completion bonuses, and curtailments or modifications to pension and post-retirement employee benefit plans shall be excluded;

(2) the cumulative effect of a change in accounting principles during such period shall be excluded;

(3) any after-tax effect of income (loss) from disposed, abandoned or discontinued operations and any net after-tax gains or losses on disposal of disposed, abandoned, transferred, closed or discontinued operations shall be excluded;

(4) any after-tax effect of gains or losses (less all fees and expenses relating thereto) attributable to asset dispositions or abandonments other than in the ordinary course of business, as determined in good faith by EFIH, shall be excluded;

(5) the Net Income for such period of any Person that is (a) not a Subsidiary, (b) an Unrestricted Subsidiary or (c) accounted for by the equity method of accounting shall be excluded; *provided* that Consolidated Net Income of EFIH shall be increased by the amount of dividends or distributions or other payments that are actually paid in cash (or to the extent converted into cash) to the referent Person or a Restricted Subsidiary thereof in respect of such period, other than dividends, distributions or other payments from the Oncor Subsidiaries or any Successor Oncor Business (i) from the proceeds of sales of Oncor-related Assets made after the Issue Date and (ii) consisting of Oncor-related Assets made after the Issue Date;

(6) solely for the purpose of determining the amount available for Restricted Payments under clause (3)(a) of the first paragraph under "—Certain Covenants—Limitation on Restricted Payments," the Net Income for such period of any Restricted Subsidiary (other than any Guarantor) shall be excluded to the

277

EFIHMW00246005

extent that the declaration or payment of dividends or similar distributions by that Restricted Subsidiary of its Net Income is not at the date of determination wholly permitted without any prior governmental approval (which has not been obtained) or, directly or indirectly, by the operation of the terms of its charter or any agreement, instrument, judgment, decree, order, statute, rule, or governmental regulation applicable to that Restricted Subsidiary or its stockholders, unless such restriction with respect to the payment of dividends or similar distributions has been legally waived or is otherwise permitted by the covenant described under "—Certain Covenants—Dividend and Other Payment Restrictions Affecting Restricted Subsidiaries"; *provided* that Consolidated Net Income of EFIH will be increased by the amount of dividends or other distributions or other payments actually paid in cash (or to the extent converted into cash) or Cash Equivalents to EFIH or a Restricted Subsidiary thereof in respect of such period, to the extent not already included therein;

(7) effects of all adjustments (including the effects of such adjustments pushed down to EFIH and its Restricted Subsidiaries) in such Person's consolidated financial statements pursuant to GAAP resulting from the application of purchase accounting in relation to the Transactions or any consummated acquisition or the amortization or write-off of any amounts thereof, net of taxes, shall be excluded;

(8) any net after-tax effect of income (loss) attributable to the early extinguishment of Indebtedness (other than Hedging Obligations) shall be excluded;

(9) any impairment charge or asset write-off, including, without limitation, impairment charges or asset write-offs related to intangible assets, long-lived assets or investments in debt and equity securities, in each case, pursuant to GAAP and the amortization of intangibles arising pursuant to GAAP shall be excluded;

(10) any non-cash compensation expense recorded from grants of stock appreciation or similar rights, stock options, restricted stock or other rights, and any cash charges associated with the rollover, acceleration or payout of Equity Interests by management of EFIH or any of its direct or indirect parent companies in connection with the Transactions, shall be excluded;

(11) any fees and expenses incurred during such period, or any amortization thereof for such period, in connection with any acquisition, Investment, Asset Sale, issuance or repayment of Indebtedness, issuance of Equity Interests, refinancing transaction or amendment or modification of any debt instrument (in each case, including any such transaction consummated prior to the Closing Date and any such transaction undertaken but not completed) and any charges or non-recurring merger costs incurred during such period as a result of any such transaction shall be excluded;

(12) accruals and reserves that are established or adjusted within twelve months after the Closing Date that are so required to be established as a result of the Transactions in accordance with GAAP, or changes as a result of adoption or modification of accounting policies, shall be excluded;

(13) to the extent covered by insurance and actually reimbursed, or, so long as EFIH has made a determination that there exists reasonable evidence that such amount will in fact be reimbursed by the insurer and only to the extent that such amount is (a) not denied by the applicable carrier in writing within 180 days and (b) in fact reimbursed within 365 days of the date of such evidence (with a deduction for any amount so added back to the extent not so reimbursed within 365 days), expenses with respect to liability or casualty events or business interruption shall be excluded;

(14) any net after-tax effect of unrealized income (loss) attributable to Hedging Obligations or other derivative instruments shall be excluded; and

(15) any benefit from any fair market value of any contract as recorded on the balance sheet at the time of the Transactions shall be excluded.

Notwithstanding the foregoing, for the purpose of the covenant described under "—Certain Covenants—Limitation on Restricted Payments" only (other than clause (3)(d) thereof), there shall be excluded from Consolidated Net Income (A) any income arising from any sale or other disposition of Restricted Investments made by EFIH and its Restricted Subsidiaries, any repurchases and redemptions of Restricted Investments from

278

EFIHMW00246006

EFIH and its Restricted Subsidiaries, any repayments of loans and advances which constitute Restricted Investments by EFIH or any of its Restricted Subsidiaries, any sale of the stock of an Unrestricted Subsidiary or any distribution or dividend from an Unrestricted Subsidiary, in each case only to the extent such amounts increase the amount of Restricted Payments permitted under such covenant pursuant to clause (3)(d) thereof and (B) any income described in paragraph (17) of the second paragraph under "—Certain Covenants—Limitation on Restricted Payments."

"*Consolidated Secured Debt Ratio*" means, as of any date of determination, the ratio of (x) Consolidated Secured Indebtedness computed as of the end of the most recent fiscal quarter for which internal financial statements are available immediately preceding the date on which such event for which such calculation is being made shall occur to (y) the aggregate amount of EBITDA of EFIH for the period of the most recently ended four full consecutive fiscal quarters for which internal financial statements are available immediately preceding the date on which such event for which such calculation is being made shall occur, in each case with such *pro forma* adjustments to Consolidated Secured Indebtedness and EBITDA as are appropriate and consistent with the *pro forma* adjustment provisions set forth in the definition of "Fixed Charge Coverage Ratio."

"*Consolidated Secured Indebtedness*" means Consolidated Total Indebtedness secured by a Lien on any assets of EFIH or any of its Restricted Subsidiaries.

"*Consolidated Total Indebtedness*" means, as at any date of determination, an amount equal to (1) the aggregate amount of all outstanding Indebtedness of EFIH and its Restricted Subsidiaries on a consolidated basis consisting of Indebtedness for borrowed money, debt obligations evidenced by promissory notes and similar instruments, letters of credit (only to the extent of any unreimbursed drawings thereunder) and Obligations in respect of Capitalized Lease Obligations, plus (2) the aggregate amount of all outstanding Disqualified Stock of EFIH and all Disqualified Stock and Preferred Stock of its Restricted Subsidiaries on a consolidated basis, with the amount of such Disqualified Stock and Preferred Stock equal to the greater of their respective voluntary or involuntary liquidation preferences and maximum fixed repurchase prices, in each case determined on a consolidated basis in accordance with GAAP, less (3) the aggregate amount of all Unrestricted Cash and less (4) all Deposit L/C Loans and Incremental Deposit L/C Loans outstanding on such date of determination. For purposes hereof, the "*maximum fixed repurchase price*" of any Disqualified Stock or Preferred Stock that does not have a fixed repurchase price shall be calculated in accordance with the terms of such Disqualified Stock or Preferred Stock as if such Disqualified Stock or Preferred Stock were purchased on any date on which Consolidated Total Indebtedness shall be required to be determined, and if such price is based upon, or measured by, the fair market value of such Disqualified Stock or Preferred Stock, such fair market value shall be determined reasonably and in good faith by EFIH.

"*Contingent Obligations*" means, with respect to any Person, any obligation of such Person guaranteeing any leases, dividends or other obligations that do not constitute Indebtedness ("*primary obligations*") of any other Person (the "*primary obligor*") in any manner, whether directly or indirectly, including, without limitation, any obligation of such Person, whether or not contingent,

    (1) to purchase any such primary obligation or any property constituting direct or indirect security therefor,

    (2) to advance or supply funds

        (a) for the purchase or payment of any such primary obligation, or

        (b) to maintain working capital or equity capital of the primary obligor or otherwise to maintain the net worth or solvency of the primary obligor, or

    (3) to purchase property, securities or services primarily for the purpose of assuring the owner of any such primary obligation of the ability of the primary obligor to make payment of such primary obligation against loss in respect thereof.

279

EFIHMW00246007

"*Covered Commodity*" means any energy, electricity, generation capacity, power, heat rate, congestion, natural gas, nuclear fuel (including enrichment and conversion), diesel fuel, fuel oil, other petroleum-based liquids, coal, lignite, weather, emissions and other environmental credits, waste by-products renewable energy credit, or any other energy related commodity or service (including ancillary services and related risks (such as location basis)).

"*Credit Facilities*" means, with respect to EFIH or any of its Restricted Subsidiaries, one or more debt facilities or other financing arrangements (including, without limitation, commercial paper facilities or indentures) providing for revolving credit loans, term loans, letters of credit or other long-term indebtedness, including any notes, mortgages, guarantees, collateral documents, instruments and agreements executed in connection therewith, and any amendments, supplements, modifications, extensions, renewals, restatements or refundings thereof and any indentures or credit facilities or commercial paper facilities that replace, refund or refinance any part of the loans, notes, other credit facilities or commitments thereunder, including any such replacement, refunding or refinancing facility or indenture that increases the amount permitted to be borrowed thereunder or alters the maturity thereof (*provided* that such increase in borrowings is permitted by the covenant described under "—Certain Covenants—Limitation on Incurrence of Indebtedness and Issuance of Disqualified Stock and Preferred Stock") or adds Restricted Subsidiaries as additional borrowers or guarantors thereunder and whether by the same or any other agent, lender or group of lenders.

"*Default*" means any event that is, or with the passage of time or the giving of notice or both would be, an Event of Default.

"*Deposit L/C Loan*" means any Deposit L/C Loans under, and as defined in, any Credit Facilities.

"*Designated Non-cash Consideration*" means the fair market value of non-cash consideration received by EFIH or a Restricted Subsidiary in connection with an Asset Sale that is so designated as Designated Non-cash Consideration pursuant to an Officer's Certificate, setting forth the basis of such valuation, executed by the principal financial officer of EFIH, less the amount of cash or Cash Equivalents received in connection with a subsequent sale of or collection on such Designated Non-cash Consideration.

"*Designated Preferred Stock*" means Preferred Stock of EFIH or any parent corporation thereof (in each case other than Disqualified Stock) that is issued for cash (other than to a Restricted Subsidiary or an employee stock ownership plan or trust established by EFIH or any of its Subsidiaries) and is so designated as Designated Preferred Stock, pursuant to an Officer's Certificate executed by the principal financial officer of EFIH or the applicable parent corporation thereof, as the case may be, on the issuance date thereof, the cash proceeds of which are excluded from the calculation set forth in clause (3) of the first paragraph under "—Certain Covenants—Limitation on Restricted Payments."

"*Discharge of Parity Lien Obligations*" means the occurrence of all of the following:

(1) termination or expiration of all commitments to extend credit that would constitute Parity Lien Debt;

(2) payment in full in cash of the principal of, and interest and premium, if any, on, all Parity Lien Debt (other than any undrawn letters of credit);

(3) discharge or cash collateralization (at the lower of (A) 105% of the aggregate undrawn amount and (B) the percentage of the aggregate undrawn amount required for release of liens under the terms of the applicable Parity Lien Document) of all outstanding letters of credit constituting Parity Lien Debt; and

(4) payment in full in cash of all other Parity Lien Obligations that are outstanding and unpaid at the time the Parity Lien Debt is paid in full in cash (other than any obligations for taxes, costs, indemnifications, reimbursements, damages and other liabilities in respect of which no claim or demand for payment has been made at such time).

280

EFIHMW00246008

"*Disqualified Stock*" means, with respect to any Person, any Capital Stock of such Person which, by its terms, or by the terms of any security into which it is convertible or for which it is putable or exchangeable, or upon the happening of any event, matures or is mandatorily redeemable (other than solely as a result of a change of control or asset sale) pursuant to a sinking fund obligation or otherwise, or is redeemable at the option of the holder thereof (other than solely as a result of a change of control or asset sale), in whole or in part, in each case prior to the date 91 days after the earlier of the maturity date of the Notes or the date the Notes are no longer outstanding; *provided, however,* that if such Capital Stock is issued to any plan for the benefit of employees of EFIH or its Subsidiaries or by any such plan to such employees, such Capital Stock shall not constitute Disqualified Stock solely because it may be required to be repurchased by EFIH or its Subsidiaries in order to satisfy applicable statutory or regulatory obligations.

"*EBITDA*" means, with respect to any Person for any period, the Consolidated Net Income of such Person for such period

(1) increased (without duplication) by:

(a) provision for taxes based on income or profits or capital gains, including, without limitation, foreign, federal, state, franchise, excise, value-added and similar taxes and foreign withholding taxes (including penalties and interest related to such taxes or arising from tax examinations) of such Person paid or accrued during such period, deducted (and not added back) in computing Consolidated Net Income; *plus*

(b) Fixed Charges of such Person for such period (including (x) net losses on Hedging Obligations or other derivative instruments entered into for the purpose of hedging interest rate risk and (y) costs of surety bonds in connection with financing activities, in each case, to the extent included in Fixed Charges), together with items excluded from the definition of "Consolidated Interest Expense" pursuant to clauses (1)(u), (v), (w), (x), (y) and (z) of the definition thereof, and, in each such case, to the extent the same were deducted (and not added back) in calculating such Consolidated Net Income; *plus*

(c) Consolidated Depreciation and Amortization Expense of such Person for such period to the extent the same was deducted (and not added back) in computing Consolidated Net Income; *plus*

(d) any fees, expenses or charges (other than depreciation or amortization expense) related to any Equity Offering, Permitted Investment, acquisition, disposition, recapitalization or the incurrence of Indebtedness permitted to be incurred by such Person and its Restricted Subsidiaries by the EFIH Indenture (including a refinancing transaction or amendment or other modification of any debt instrument) (whether or not successful), including (i) such fees, expenses or charges related to the Exchange Offer, the offerings of any Additional Notes, any Credit Facilities and any Receivables Facility, (ii) any amendment or other modification of the Notes, (iii) any such transaction consummated prior to the Closing Date and any such transaction undertaken but not completed and (iv) any charges or non-recurring merger costs as a result of any such transaction, in each case, deducted (and not added back) in computing Consolidated Net Income; *plus*

(e) the amount of any restructuring charge or reserve deducted (and not added back) in such period in computing Consolidated Net Income, including any costs incurred in connection with acquisitions after the Closing Date, costs related to the closure and/or consolidation of facilities; *plus*

(f) any other non-cash charges, including any write-offs or write-downs, reducing Consolidated Net Income for such period (*provided* that if any such non-cash charges represent an accrual or reserve for potential cash items in any future period, the cash payment in respect thereof in such future period shall be subtracted from EBITDA to such extent, and excluding amortization of a prepaid cash item that was paid in a prior period); *plus*

281

EFIHMW00246009

(g) the amount of any minority interest expense consisting of Subsidiary income attributable to minority equity interests of third parties in any non-Wholly Owned Subsidiary deducted (and not added back) in such period in calculating Consolidated Net Income; *plus*

(h) the amount of management, monitoring, consulting and advisory fees and related indemnities and expenses paid in such period to the Investors to the extent otherwise permitted under "—Certain Covenants—Transactions with Affiliates" and deducted (and not added back) in calculating Consolidated Net Income; *plus*

(i) the amount of net cost savings projected by the Issuer in good faith to be realized as a result of specified actions taken or to be taken prior to or during such period (calculated on a *pro forma* basis as though such cost savings had been realized on the first day of such period and added to EBITDA until fully realized), net of the amount of actual benefits realized during such period from such actions; *provided* that (w) such cost savings are reasonably identifiable and factually supportable, (x) such actions have been taken or are to be taken within 12 months after the date of determination to take such action and some portion of the benefit is expected to be realized within 12 months of taking such action, (y) no cost savings shall be added pursuant to this clause (i) to the extent duplicative of any expenses or charges relating to such cost savings that are included in clause (e) above with respect to such period and (z) the aggregate amount of cost savings added pursuant to this clause (i) shall not exceed $50.0 million for any four consecutive quarter period (which adjustments may be incremental to *pro forma* adjustments made pursuant to the second paragraph of the definition of "Fixed Charge Coverage Ratio"); *plus*

(j) the amount of loss on sales of receivables and related assets to any Receivables Subsidiary in connection with a Receivables Facility deducted (and not added back) in calculating Consolidated Net Income; *plus*

(k) any costs or expense incurred by EFIH or a Restricted Subsidiary pursuant to any management equity plan or stock option plan or any other management or employee benefit plan or agreement or any stock subscription or shareholder agreement, to the extent that such cost or expenses are funded with cash proceeds contributed to the capital of EFIH or net cash proceeds of an issuance of Equity Interests (other than Disqualified Stock) of EFIH (or any direct or indirect parent thereof) solely to the extent that such net cash proceeds are excluded from the calculation set forth in clause (3) of the first paragraph under "—Certain Covenants—Limitation on Restricted Payments"; *plus*

(l) cash receipts (or any netting arrangements resulting in increased cash receipts) not added in arriving at EBITDA or Consolidated Net Income in any period to the extent the non-cash gains relating to such receipts were deducted in the calculation of EBITDA pursuant to paragraph (2) below for any previous period and not added; and

(2) decreased by (without duplication) (a) non-cash gains increasing Consolidated Net Income of such Person for such period, excluding any non-cash gains to the extent they represent the reversal of an accrual or reserve for a potential cash item that reduced EBITDA in any prior period, (b) cash expenditures (or any netting arrangements resulting in increased cash expenditures) not deducted in arriving at EBITDA or Consolidated Net Income in any period to the extent non-cash losses relating to such expenditures were added in the calculation of EBITDA pursuant to paragraph (1) above for any previous period and not deducted, and (c) the amount of any minority interest income consisting of Subsidiary losses attributable to minority equity interests of third parties in any non-Wholly Owned Subsidiary to the extent such minority interest income is included in Consolidated Net Income.

"*EFH Corp.*" means Energy Future Holdings Corp., the parent of EFIH.

"*EFH Corp.'s Ratable Portion of Oncor Dividends*" means the amount obtained by multiplying (a) the aggregate amount of cash received by EFIH by means of a cash dividend from the Oncor Subsidiaries after the Issue Date (other than dividends constituting proceeds from Asset Sales of Oncor-related Assets) by (b) a

282

fraction, the numerator of which shall be the sum of the aggregate principal amount of the New EFH Corp. Notes and any other Parity Lien Debt of EFH Corp. that is guaranteed by EFIH under clause (2) of the second paragraph of the covenant described under "—Certain Covenants—Limitation on Incurrence of Indebtedness and Issuance of Disqualified Stock and Preferred Stock" and the denominator of which shall be the aggregate principal amount of (i) the New EFH Corp. Notes and any other Parity Lien Debt of EFH Corp. that is guaranteed by EFIH plus (ii) the Notes, any Additional Notes and any other Parity Lien Debt of EFIH, in the case of clauses (i) and (ii) incurred pursuant to clause (2) of the second paragraph of the covenant described under "—Certain Covenants—Limitation on Incurrence of Indebtedness and Issuance of Disqualified Stock and Preferred Stock" and at the time outstanding.

"*EFIH*" means Energy Future Intermediate Holding Company LLC; *provided* that when used in the context of determining the fair market value of an asset or liability under the EFIH Indenture, "EFIH" shall be deemed to mean the board of directors of EFIH when the fair market value is equal to or in excess of $500.0 million (unless otherwise expressly stated).

"*EMU*" means the economic and monetary union as contemplated in the Treaty on European Union.

"*Environmental CapEx Debt*" means Indebtedness of the Issuer or any of its Restricted Subsidiaries incurred for the purpose of financing Environmental Capital Expenditures.

"*Environmental Capital Expenditures*" means capital expenditures deemed necessary by the Issuer or its Restricted Subsidiaries to comply with, or in anticipation of having to comply with, Environmental Law or otherwise undertaken voluntarily by EFIH or any of its Restricted Subsidiaries in connection with environmental matters.

"*Environmental Law*" means any applicable Federal, state, foreign or local statute, law, rule, regulation, ordinance, code and rule of common law now or hereafter in effect and in each case as amended, and any applicable judicial or administrative interpretation thereof, including any applicable judicial or administrative order, consent decree or judgment, relating to the environment, human health or safety or Hazardous Materials.

"*equally and ratably*" means, in reference to sharing of Liens or proceeds thereof as between the holders of Secured Debt Obligations within the same Class after the repayment of amounts payable to the Collateral Trustee under the Collateral Trust Agreement and the Parity Lien Representatives (and in the case of Junior Lien Obligations, Junior Lien Representatives) in accordance with the applicable Secured Debt Document that such Liens or proceeds:

(1) will be allocated and distributed first to the Secured Debt Representative for each outstanding Series of Secured Lien Debt within that Class, for the account of the holders of such Series of Secured Lien Debt, ratably in proportion to the principal of, and interest and premium (if any) and reimbursement obligations (contingent or otherwise) with respect to letters of credit, if any, outstanding (whether or not drawings have been made under such letters of credit) forming part of, and Hedging Obligations to the extent constituting Secured Lien Debt pursuant to the terms of, each outstanding Series of Secured Lien Debt within that Class when the allocation or distribution is made; and thereafter

(2) will be allocated and distributed (if any remain after payment in full of all of the principal of, and interest and premium (if any) and reimbursement obligations (contingent or otherwise) with respect to letters of credit, if any, outstanding (whether or not drawings have been made on such letters of credit) forming part of, and Hedging Obligations to the extent constituting Secured Indebtedness pursuant to the terms of, each outstanding Series of Secured Lien Debt within that Class) to the Secured Debt Representative for each outstanding Series of Secured Lien Debt within that Class, for the account of the holders of any remaining Secured Debt Obligations within that Class, ratably in proportion to the aggregate unpaid amount of such

283

EFIHMW00246011

remaining Secured Debt Obligations within that Class due and demanded (with written notice to the applicable Secured Debt Representative and the Collateral Trustee) prior to the date such distribution is made.

"*Equity Interests*" means Capital Stock and all warrants, options or other rights to acquire Capital Stock, but excluding any debt security that is convertible into, or exchangeable for, Capital Stock.

"*Equity Offering*" means any public or private sale of common stock or Preferred Stock of EFIH or any of its direct or indirect parent companies (excluding Disqualified Stock), other than:

    (1) public offerings with respect to EFIH's or any direct or indirect parent company's common stock registered on Form S-8;

    (2) issuances to any Subsidiary of EFIH; and

    (3) any such public or private sale that constitutes an Excluded Contribution.

"*ERCOT*" means the Electric Reliability Council of Texas, Inc. or any entity approved to perform the functions of an independent system operator within the power region that includes approximately 80% of the electric transmission within the State of Texas.

"*euro*" means the single currency of participating member states of the EMU.

"*Event of Default*" has the meaning set forth under "Events of Default and Remedies."

"*Excess Proceeds*" has the meaning set forth in the fourth paragraph under "—Repurchase at the Option of Holders—Asset Sales."

"*Exchange Act*" means the Securities Exchange Act of 1934, as amended, and the rules and regulations of the SEC promulgated thereunder.

"*Exchange Offer*" means the exchange of the Notes and the New EFH Corp. Notes for existing Indebtedness of EFH Corp. and/or TCEH pursuant to this Prospectus.

"*Excluded Contribution*" means net cash proceeds, marketable securities or Qualified Proceeds received by EFIH after the Closing Date from

    (1) contributions to its common equity capital, and

    (2) the sale (other than to a Subsidiary of EFIH or to any management equity plan or stock option plan or any other management or employee benefit plan or agreement of EFIH or any of its direct or indirect parent companies) of Capital Stock (other than Disqualified Stock and Designated Preferred Stock) of EFIH,

in each case designated as Excluded Contributions pursuant to an Officer's Certificate executed by the principal financial officer of EFIH on the date such capital contributions are made or the date such Equity Interests are sold, as the case may be, which are excluded from the calculation set forth in clause (3) of the first paragraph under "—Certain Covenants—Limitation on Restricted Payments."

"*Existing EFH Corp. Notes*" means

- EFH Corp. 5.55% Fixed Senior Notes Series P due 2014;

- EFH Corp. 6.50% Fixed Senior Notes Series Q due 2024;

- EFH Corp. 6.55% Fixed Senior Notes Series R due 2034;

- EFH Corp. 10.875% Senior Notes due 2017;

Confidential

EFIHMW00246012

- • EFH Corp. 11.250%/12.000% Senior Toggle Notes due 2017; and

- • EFH Corp. 4.80% Series O Senior Notes due 2009;

in each case to the extent outstanding on the Issue Date.

"*Existing EFH Corp. Notes Indentures*" means each of the indentures or other documents containing the terms of the Existing EFH Corp. Notes.

"*Fitch*" means Fitch Ratings Ltd. and any successor to its rating agency business.

"*Fixed Charge Coverage Ratio*" means, with respect to any Person for any period, the ratio of EBITDA of such Person for such period to the Fixed Charges of such Person for such period. In the event that EFIH or any Restricted Subsidiary incurs, assumes, guarantees, redeems, retires or extinguishes any Indebtedness (other than Indebtedness incurred under any revolving credit facility unless such Indebtedness has been permanently repaid and has not been replaced) or issues or redeems Disqualified Stock or Preferred Stock subsequent to the commencement of the period for which the Fixed Charge Coverage Ratio is being calculated but prior to or simultaneously with the event for which the calculation of the Fixed Charge Coverage Ratio is made (the "*Fixed Charge Coverage Ratio Calculation Date*"), then the Fixed Charge Coverage Ratio shall be calculated giving *pro forma* effect to such incurrence, assumption, guarantee, redemption, retirement or extinguishment of Indebtedness, or such issuance or redemption of Disqualified Stock or Preferred Stock, as if the same had occurred at the beginning of the applicable four-quarter period.

For purposes of making the computation referred to above, Investments, acquisitions, dispositions, mergers, consolidations and disposed operations (as determined in accordance with GAAP) that have been made by EFIH or any of its Restricted Subsidiaries during the four-quarter reference period or subsequent to such reference period and on or prior to or simultaneously with the Fixed Charge Coverage Ratio Calculation Date shall be calculated on a *pro forma* basis assuming that all such Investments, acquisitions, dispositions, mergers, consolidations and disposed operations (and the change in any associated fixed charge obligations and the change in EBITDA resulting therefrom) had occurred on the first day of the four-quarter reference period. If, since the beginning of such period, any Person that subsequently became a Restricted Subsidiary or was merged with or into EFIH or any of its Restricted Subsidiaries since the beginning of such period shall have made any Investment, acquisition, disposition, merger, consolidation or disposed operation that would have required adjustment pursuant to this definition, then the Fixed Charge Coverage Ratio shall be calculated giving *pro forma* effect thereto for such period as if such Investment, acquisition, disposition, merger, consolidation or disposed operation had occurred at the beginning of the applicable four-quarter period.

For purposes of this definition, whenever pro forma effect is to be given to a transaction, the *pro forma* calculations shall be made in good faith by a responsible financial or accounting officer of EFIH. If any Indebtedness bears a floating rate of interest and is being given *pro forma* effect, the interest on such Indebtedness shall be calculated as if the rate in effect on the Fixed Charge Coverage Ratio Calculation Date had been the applicable rate for the entire period (taking into account any Hedging Obligations applicable to such Indebtedness). Interest on a Capitalized Lease Obligation shall be deemed to accrue at an interest rate reasonably determined by a responsible financial or accounting officer of EFIH to be the rate of interest implicit in such Capitalized Lease Obligation in accordance with GAAP. For purposes of making the computation referred to above, interest on any Indebtedness under a revolving credit facility computed on a *pro forma* basis shall be computed based upon the average daily balance of such Indebtedness during the applicable period except as set forth in the first paragraph of this definition. Interest on Indebtedness that may optionally be determined at an interest rate based upon a factor of a prime or similar rate, a eurocurrency interbank offered rate or other rate shall be deemed to have been based upon the rate actually chosen, or, if none, then based upon such optional rate chosen as EFIH may designate.

285

EFIHMW00246013

"*Fixed Charges*" means, with respect to any Person for any period, the sum of:

(1) Consolidated Interest Expense of such Person for such period;

(2) all cash dividends or other distributions paid (excluding items eliminated in consolidation) on any series of Preferred Stock during such period; and

(3) all cash dividends or other distributions paid (excluding items eliminated in consolidation) on any series of Disqualified Stock during such period.

"*Foreign Subsidiary*" means, with respect to any Person, any Restricted Subsidiary of such Person that is not organized or existing under the laws of the United States, any state or territory thereof or the District of Columbia and any Restricted Subsidiary of such Foreign Subsidiary.

"*GAAP*" means generally accepted accounting principles in the United States which are in effect on the Closing Date.

"*Government Authority*" means any nation or government, any state, province, territory or other political subdivision thereof, and any entity exercising executive, legislative, judicial, regulatory or administrative functions of or pertaining to government, including without limitation, ERCOT.

"*Government Securities*" means securities that are:

(1) direct obligations of the United States of America for the timely payment of which its full faith and credit is pledged; or

(2) obligations of a Person controlled or supervised by and acting as an agency or instrumentality of the United States of America the timely payment of which is unconditionally guaranteed as a full faith and credit obligation by the United States of America,

which, in either case, are not callable or redeemable at the option of the issuers thereof, and shall also include a depository receipt issued by a bank (as defined in Section 3(a)(2) of the Securities Act), as custodian with respect to any such Government Securities or a specific payment of principal of or interest on any such Government Securities held by such custodian for the account of the holder of such depository receipt; *provided* that (except as required by law) such custodian is not authorized to make any deduction from the amount payable to the holder of such depository receipt from any amount received by the custodian in respect of the Government Securities or the specific payment of principal of or interest on the Government Securities evidenced by such depository receipt.

"*guarantee*" means a guarantee (other than by endorsement of negotiable instruments for collection in the ordinary course of business), direct or indirect, in any manner (including letters of credit and reimbursement agreements in respect thereof), of all or any part of any Indebtedness or other obligations.

"*Guarantee*" means the guarantee by any Guarantor of the Issuer's Obligations under the EFIH Indenture.

"*Guarantor*" means each Restricted Subsidiary that Guarantees the Notes in accordance with the terms of the EFIH Indenture.

"*Hazardous Materials*" means (a) any petroleum or petroleum products, radioactive materials, friable asbestos, urea formaldehyde foam insulation, transformers or other equipment that contain dielectric fluid containing regulated levels of polychlorinated biphenyls and radon gas; (b) any chemicals, materials or substances defined as or included in the definition of "hazardous substances," "toxic substances," "toxic pollutants," "contaminants," or "pollutants" or words of similar import, under any applicable Environmental

286

EFIHMW00246014

Law; and (c) any other chemical, material or substance, which is prohibited, limited or regulated by any Environmental Law.

"*Hedging Obligations*" means with respect to any Person, the obligations of such Person under (a) any and all rate swap transactions, basis swaps, credit derivative transactions, forward rate transactions, commodity swaps, commodity options, forward commodity contracts, equity or equity index swaps or options, bond or bond price or bond index swaps or options or forward bond or forward bond price or forward bond index transactions, interest rate options, forward foreign exchange transactions, cap transactions, floor transactions, collar transactions, currency swap transactions, cross-currency rate swap transactions, currency options, spot contracts, or any other similar transactions or any combination of any of the foregoing (including any options to enter into any of the foregoing), whether or not any such transaction is governed by or subject to any master agreement, (b) any and all transactions of any kind, and the related confirmations, which are subject to the terms and conditions of, or governed by, any form of master agreement published by the International Swaps and Derivatives Association, Inc., any International Foreign Exchange Master Agreement or any other master agreement (any such master agreement, together with any related schedules, a "*Master Agreement*"), including any such obligations or liabilities under any Master Agreement and (c) physical or financial commodity contracts or agreements, power purchase or sale agreements, fuel purchase or sale agreements, environmental credit purchase or sale agreements, power transmission agreements, commodity transportation agreements, fuel storage agreements, netting agreements (including Netting Agreements), capacity agreement and commercial or trading agreements, each with respect to, or including the purchase, sale, exchange of (or the option to purchase, sell or exchange), transmission, transportation, storage, distribution, processing, sale, lease or hedge of, any Covered Commodity price or price indices for any such Covered Commodity or services or any other similar derivative agreements, and any other similar agreements.

"*Holder*" means the Person in whose name a Note is registered on the registrar's books.

"*Incremental Deposit L/C Loans*" means any Incremental Deposit L/C Loans under, and as defined in, any Credit Facilities.

"*Indebtedness*" means, with respect to any Person, without duplication:

(1) any indebtedness (including principal and premium) of such Person, whether or not contingent:

(a) in respect of borrowed money;

(b) evidenced by bonds, notes, debentures or similar instruments or letters of credit or bankers' acceptances (or, without duplication, reimbursement agreements in respect thereof);

(c) representing the balance deferred and unpaid of the purchase price of any property (including Capitalized Lease Obligations), except (i) any such balance that constitutes a trade payable or similar obligation to a trade creditor, in each case accrued in the ordinary course of business and (ii) any earn-out obligations until such obligation becomes a liability on the balance sheet of such Person in accordance with GAAP; or

(d) representing any Hedging Obligations;

if and to the extent that any of the foregoing Indebtedness (other than letters of credit and Hedging Obligations) would appear as a liability upon a balance sheet (excluding the footnotes thereto) of such Person prepared in accordance with GAAP;

(2) to the extent not otherwise included, any obligation by such Person to be liable for, or to pay, as obligor, guarantor or otherwise on, the obligations of the type referred to in clause (1) of a third Person (whether or not such items would appear upon the balance sheet of the such obligor or guarantor), other than by endorsement of negotiable instruments for collection in the ordinary course of business; and

(3) to the extent not otherwise included, the obligations of the type referred to in clause (1) of a third Person secured by a Lien on any asset owned by such first Person, whether or not such Indebtedness is

287

assumed by such first Person; *provided* that the amount of Indebtedness of such first Person for purposes of this clause (3) shall be deemed to be equal to the lesser of (i) the aggregate unpaid amount of such Indebtedness and (ii) the fair market value of the property encumbered thereby as determined by such first Person in good faith;

*provided, however*, that notwithstanding the foregoing, Indebtedness shall be deemed not to include (a) Contingent Obligations incurred in the ordinary course of business or (b) obligations under or in respect of Receivables Facilities or (c) amounts payable by and between EFIH and its Subsidiaries in connection with retail clawback or other regulatory transition issues.

"*Independent Financial Advisor*" means an accounting, appraisal, investment banking firm or consultant to Persons engaged in Similar Businesses of nationally recognized standing that is, in the good faith judgment of EFIH, qualified to perform the task for which it has been engaged.

"*Intercompany Loan*" means a senior, unsecured loan by EFIH or any of its Restricted Subsidiaries to EFH Corp., with an interest rate commensurate with an arm's length relationship.

"*Investment Grade Rating*" means a rating equal to or higher than Baa3 (or the equivalent) by Moody's, BBB- (or the equivalent) by S&P, or an equivalent rating by any other Rating Agency.

"*Investment Grade Securities*" means:

(1) securities issued or directly and fully guaranteed or insured by the United States government or any agency or instrumentality thereof (other than Cash Equivalents);

(2) debt securities or debt instruments with an Investment Grade Rating, but excluding any debt securities or instruments constituting loans or advances among EFIH and its Subsidiaries;

(3) investments in any fund that invests exclusively in investments of the type described in clauses (1) and (2) which fund may also hold immaterial amounts of cash pending investment or distribution; and

(4) corresponding instruments in countries other than the United States customarily utilized for high quality investments.

"*Investments*" means, with respect to any Person, all investments by such Person in other Persons (including Affiliates) in the form of loans (including guarantees), advances or capital contributions (excluding accounts receivable, trade credit, advances to customers, commissions, travel and similar advances to officers and employees, in each case made in the ordinary course of business), purchases or other acquisitions for consideration of Indebtedness, Equity Interests or other securities issued by any other Person and investments that are required by GAAP to be classified on the balance sheet (excluding the footnotes) of EFIH in the same manner as the other investments included in this definition to the extent such transactions involve the transfer of cash or other property. For purposes of the definition of "Unrestricted Subsidiary" and the covenant described under "—Certain Covenants—Limitation on Restricted Payments":

(1) "Investments" shall include the portion (proportionate to EFIH's equity interest in such Subsidiary) of the fair market value of the net assets of a Subsidiary of EFIH at the time that such Subsidiary is designated an Unrestricted Subsidiary; *provided, however*, that upon a redesignation of such Subsidiary as a Restricted Subsidiary, EFIH shall be deemed to continue to have a permanent "Investment" in an Unrestricted Subsidiary in an amount (if positive) equal to:

(a) EFIH's "Investment" in such Subsidiary at the time of such redesignation; *less*

(b) the portion (proportionate to EFIH's equity interest in such Subsidiary) of the fair market value of the net assets of such Subsidiary at the time of such redesignation; and

288

(2) any property transferred to or from an Unrestricted Subsidiary shall be valued at its fair market value at the time of such transfer, in each case as determined in good faith by EFIH.

"*Investors*" means Kohlberg Kravis Roberts & Co. L.P., TPG Capital, L.P., J.P. Morgan Ventures Corporation, Citigroup Global Markets Inc., Morgan Stanley & Co. Incorporated, Goldman, Sachs & Co. and LB I Group, Inc. and each of their respective Affiliates but not including, however, any portfolio companies of any of the foregoing.

"*Issue Date*" means the first date on which any Notes are issued pursuant to the EFIH Indenture.

"*Issuer*" has the meaning set forth in the first paragraph under "General."

"*Junior Lien*" means a Lien granted by a security document to the Collateral Trustee, at any time, upon any Collateral to secure Junior Lien Obligations.

"*Junior Lien Debt*" means:

(1) any Indebtedness (including letters of credit and reimbursement obligations with respect thereto) of the Issuer or any Guarantor that is secured on a subordinated basis to the Parity Lien Debt by a Junior Lien that was permitted to be incurred and so secured under each applicable Secured Debt Document; *provided* that:

(a) on or before the date on which such Indebtedness is incurred by the Issuer or such Guarantor, such Indebtedness is designated by the Issuer, in accordance with the Collateral Trust Agreement, as "Junior Lien Debt" for the purposes of the Secured Debt Documents, including the Collateral Trust Agreement; *provided* that no Series of Secured Lien Debt may be designated as both Junior Lien Debt and Parity Lien Debt;

(b) such Indebtedness is governed by an indenture, credit agreement or other agreement that includes a Lien Sharing and Priority Confirmation; and

(c) all requirements set forth in the Collateral Trust Agreement as to the confirmation, grant or perfection of the Collateral Trustee's Liens to secure such Indebtedness or Obligations in respect thereof are satisfied (and the satisfaction of such requirements will be conclusively established if the Issuer delivers to the Collateral Trustee an officers' certificate stating that such requirements have been satisfied and that such Indebtedness is "Junior Lien Debt"); and

(2) Hedging Obligations of the Issuer or any Guarantor incurred to hedge or manage interest rate risk with respect to Junior Lien Debt; *provided* that, pursuant to the terms of the Junior Lien Documents, such Hedging Obligations are secured by a Junior Lien on all of the assets and properties that secure the Indebtedness in respect of which such Hedging Obligations are incurred.

"*Junior Lien Documents*" means, collectively, any indenture, credit agreement or other agreement governing a Series of Junior Lien Debt and the Security Documents that create or perfect Liens securing Junior Lien Obligations.

"*Junior Lien Obligations*" means Junior Lien Debt and all other Obligations in respect thereof.

"*Junior Lien Representative*" means, in the case of any future Series of Junior Lien Debt, the trustee, agent or representative of the holders of such Series of Junior Lien Debt who (a) is appointed as a Junior Lien Representative (for purposes related to the administration of the Security Documents) pursuant to the indenture, credit agreement or other agreement governing such Series of Junior Lien Debt, together with its successors in such capacity, and (b) has become a party to the Collateral Trust Agreement by executing a joinder in the form required under the Collateral Trust Agreement.

289

Confidential

EFIHMW00246017

"*Legal Holiday*" means a Saturday, a Sunday or a day on which commercial banking institutions are not required to be open in the State of New York.

"*Lien*" means, with respect to any asset, any mortgage, lien (statutory or otherwise), pledge, hypothecation, charge, security interest, preference, priority or encumbrance of any kind in respect of such asset, whether or not filed, recorded or otherwise perfected under applicable law, including any conditional sale or other title retention agreement, any lease in the nature thereof, any option or other agreement to sell or give a security interest in and any filing of or agreement to give any financing statement under the Uniform Commercial Code (or equivalent statutes) of any jurisdiction: *provided* that in no event shall an operating lease be deemed to constitute a Lien.

"*Lien Sharing and Priority Confirmation*" means:

(1) as to any Series of Parity Lien Debt, the written agreement enforceable against the holders of such Series of Parity Lien Debt, as set forth in the applicable Secured Debt Document:

(a) for the enforceable benefit of all holders of each existing and future Series of Parity Lien Debt and each existing and future Parity Lien Representative, that all Parity Lien Obligations will be and are secured equally and ratably by all Parity Liens at any time granted by the Issuer or any Guarantor to secure any Obligations in respect of such Series of Parity Lien Debt, and that all such Parity Liens will be enforceable by the Collateral Trustee for the benefit of all holders of Parity Lien Obligations equally and ratably;

(b) for the enforceable benefit of all holders of each existing and future Series of Parity Lien Debt and Series of Junior Lien Debt, and each existing and future Parity Lien Representative and Junior Lien Representative, that the holders of Obligations in respect of such Series of Parity Lien Debt are bound by the provisions of the Collateral Trust Agreement, including the provisions relating to the ranking of Parity Liens and the order of application of proceeds from enforcement of Parity Liens; and

(c) consenting to and directing the Collateral Trustee to perform its obligations under the Collateral Trust Agreement and the other security documents in respect of the Secured Debt Obligations.

(2) as to any Series of Junior Lien Debt, the written agreement enforceable against the holders of such Series of Junior Lien Debt, as set forth in the applicable Secured Debt Document:

(a) for the enforceable benefit of all holders of each existing and future Series of Junior Lien Debt and Series of Parity Lien Debt and each existing and future Junior Lien Representative and Parity Lien Representative, that all Junior Lien Obligations will be and are secured equally and ratably by all Junior Liens at any time granted by the Issuer or any Guarantor to secure any Obligations in respect of such Series of Junior Lien Debt, and that all such Junior Liens will be enforceable by the Collateral Trustee for the benefit of all holders of Junior Lien Obligations equally and ratably;

(b) for the enforceable benefit of all holders of each existing and future Series of Parity Lien Debt and Series of Junior Lien Debt and each existing and future Parity Lien Representative and Junior Lien Representative, that the holders of Obligations in respect of such Series of Junior Lien Debt are bound by the provisions of the Collateral Trust Agreement, including the provisions relating to the ranking of Junior Liens and the order of application of proceeds from the enforcement of Junior Liens; and

(c) consenting to and directing the Collateral Trustee to perform its obligations under the Collateral Trust Agreement and the other security documents in respect of the Secured Debt Obligations.

"*Moody's*" means Moody's Investors Service, Inc. and any successor to its rating agency business.

"*Necessary CapEx Debt*" means Indebtedness of EFIH or any of its Restricted Subsidiaries incurred for the purpose of financing Necessary Capital Expenditures.

290

EFIHMW00246018

"*Necessary Capital Expenditures*" means capital expenditures by EFIH and its Restricted Subsidiaries that are required by applicable law (other than Environmental Law) or otherwise undertaken voluntarily for health and safety reasons (other than as required by Environmental Law). The term "Necessary Capital Expenditures" does not include any capital expenditure undertaken primarily to increase the efficiency of, expand or re-power any power generation facility.

"*Net Income*" means, with respect to any Person, the net income (loss) of such Person, determined in accordance with GAAP and before any reduction in respect of Preferred Stock dividends.

"*Net Proceeds*" means the aggregate cash proceeds and Cash Equivalents received by EFIH or any of its Restricted Subsidiaries in respect of any Asset Sale (including a Casualty Event), including any cash and Cash Equivalents received upon the sale or other disposition of any Designated Non-cash Consideration received in any Asset Sale (including a Casualty Event), net of the direct costs relating to such Asset Sale (including a Casualty Event) and the sale or disposition of such Designated Non-cash Consideration, including legal, accounting and investment banking fees, and brokerage and sales commissions, any relocation expenses incurred as a result thereof, taxes paid or payable as a result thereof (after taking into account any available tax credits or deductions and any tax sharing arrangements), amounts required to be applied using proceeds from Asset Sales (other than Asset Sales of Collateral or other Oncor-related Assets) to the repayment of principal, premium, if any, and interest on other Senior Indebtedness required (other than required by clause (1) of the second paragraph under "—Repurchase at the Option of Holders—Asset Sales") to be paid as a result of such transaction and any deduction of appropriate amounts to be provided by EFIH or any of its Restricted Subsidiaries as a reserve in accordance with GAAP against any liabilities associated with the asset disposed of in such transaction and retained by EFIH or any of its Restricted Subsidiaries after such sale or other disposition thereof, including pension and other post-employment benefit liabilities and liabilities related to environmental matters or against any indemnification obligations associated with such transaction.

"*Netting Agreement*" shall mean a netting agreement, master netting agreement or other similar document having the same effect as a netting agreement or master netting agreement and, as applicable, any collateral annex, security agreement or other similar document related to any master netting agreement or Permitted Contract.

"*New EFH Corp. Notes*" means the Senior Secured Notes of EFH Corp. and guaranteed by EFIH, which guarantee is secured by a pledge of the Collateral.

"*Note Obligations*" means the Notes, the Guarantees and all other Obligations of any of the Issuer and any Guarantors under the EFIH Indenture, the Notes, the Guarantees and the Security Documents.

"*Obligations*" means any principal, interest (including any interest accruing subsequent to the filing of a petition in bankruptcy, reorganization or similar proceeding at the rate provided for in the documentation with respect thereto, whether or not such interest is an allowed claim under applicable state, federal or foreign law), premium, penalties, fees, indemnifications, reimbursements (including reimbursement obligations with respect to letters of credit and bankers' acceptances), damages and other liabilities, and guarantees of payment of such principal, interest, penalties, fees, indemnifications, reimbursements, damages and other liabilities, payable under the documentation governing any Indebtedness.

"*Officer*" means the Chairman of the Board, the Chief Executive Officer, the President, any Executive Vice President, Senior Vice President or Vice President, the Treasurer or the Secretary of EFIH or other Person, as the case may be.

"*Officer's Certificate*" means a certificate signed on behalf of EFIH by an Officer of EFIH or on behalf of another Person by an Officer of such Person, who must be the principal executive officer, the principal financial officer, the treasurer or the principal accounting officer of EFIH or such other Person, as applicable, that meets the requirements set forth in the EFIH Indenture.

291

EFIHMW00246019

"*Oncor Electric Delivery Facility*" means the revolving credit agreement entered into as of the Closing Date by and among Oncor Electric Delivery, as borrower, the lenders party thereto in their capacities as lenders thereunder and JPMorgan Chase Bank, N.A., as Administrative Agent, including any guarantees, collateral documents, instruments and agreements executed in connection therewith, and any amendments, supplements, modifications, extensions, renewals, restatements, refundings or refinancings thereof and any indentures or credit facilities or commercial paper facilities with banks or other institutional lenders or investors that replace, refund or refinance any part of the loans, notes, other credit facilities or commitments thereunder, including any such replacement, refunding or refinancing facility or indenture that increases the amount borrowable thereunder or alters the maturity thereof.

"*Oncor Holdings*" means Oncor Electric Delivery Holdings Company LLC.

"*Oncor-related Assets*" means the Equity Interests of any of the Oncor Subsidiaries or any Successor Oncor Business (including the Collateral) owned by EFIH or any Oncor Subsidiary or any Successor Oncor Business or constituting a primary issuance of such Equity Interests to the extent such issuance would constitute an Asset Sale and any assets owned directly or indirectly by any of the Oncor Subsidiaries or any Successor Oncor Business.

"*Oncor Subsidiaries*" means Oncor Holdings and its Subsidiaries, all of which shall be Unrestricted Subsidiaries on the Issue Date.

"*Opinion of Counsel*" means a written opinion from legal counsel who is acceptable to the Trustee. The counsel may be an employee of or counsel to the Issuer or the Trustee.

"*Parity Lien*" means a Lien granted by a security document to the Collateral Trustee, at any time, upon any Collateral to secure Parity Lien Obligations.

"*Parity Lien Debt*" means:

(1) the Notes issued by the Issuer under the EFIH Indenture on the Issue Date and any Additional Notes issued under the EFIH Indenture;

(2) any other Indebtedness (including letters of credit and reimbursement obligations with respect thereto) of EFIH, including the guarantee by EFIH of any indebtedness of any other Person, including the New EFH Corp. Notes, that is secured equally and ratably with the Notes by a Parity Lien that was permitted to be incurred and so secured under each applicable Secured Debt Document; *provided*, in the case of Indebtedness referred to in this clause (2), that, except with respect to the New EFH Corp. Notes issued on the Issue Date:

(a) on or before the date on which such Indebtedness is incurred by EFIH, such Indebtedness is designated by EFIH, in accordance with the Collateral Trust Agreement, as "Parity Lien Debt" for the purposes of the Secured Debt Documents; *provided* that no Series of Secured Lien Debt may be designated as both Parity Lien Debt and Junior Lien Debt;

(b) such Indebtedness is governed by an indenture, credit agreement or other agreement that includes a Lien Sharing and Priority Confirmation; and

(c) all requirements set forth in the Collateral Trust Agreement as to the confirmation, grant or perfection of the Collateral Trustee's Lien to secure such Indebtedness or Obligations in respect thereof are satisfied (and the satisfaction of such requirements will be conclusively established if EFIH delivers to the Collateral Trustee an Officer's Certificate stating that such requirements have been satisfied and that such notes or such Indebtedness is "Parity Lien Debt"); and

(3) Hedging Obligations of EFIH incurred to hedge or manage interest rate risk with respect to Parity Lien Debt; *provided* that, pursuant to the terms of the Parity Lien Documents, such Hedging Obligations are

292

EFIHMW00246020

secured by a Parity Lien on all of the assets and properties that secure the Indebtedness in respect of which such Hedging Obligations are incurred.

"*Parity Lien Documents*" means the EFIH Indenture and any additional indenture, credit agreement or other agreement governing a Series of Parity Lien Debt and the Security Documents that create or perfect Liens securing Parity Lien Obligations.

"*Parity Lien Obligations*" means Parity Lien Debt and all other Obligations in respect thereof.

"*Parity Lien Representative*" means (1) the Trustee, in the case of the Notes, (2) The Bank of New York Mellon Trust Company, N.A., in the case of the New EFH Corp. Notes or (3) in the case of any other Series of Parity Lien Debt, the trustee, agent or representative of the holders of such Series of Parity Lien Debt who (a) is appointed as a Parity Lien Representative (for purposes related to the administration of the Security Documents) pursuant to the indenture, credit agreement or other agreement governing such Series of Parity Lien Debt, together with its successors in such capacity, and (b) has become a party to the Collateral Trust Agreement by executing a joinder in the form required under the Collateral Trust Agreement.

"*Permitted Asset Swap*" means the concurrent purchase and sale or exchange of Related Business Assets or a combination of Related Business Assets and cash or Cash Equivalents between EFIH or any of its Restricted Subsidiaries and another Person; *provided*, that any cash or Cash Equivalents received must be applied in accordance with the covenant described under "—Repurchase at the Option of Holders—Asset Sales."

"*Permitted Asset Transfer*" means (1) the direct or indirect sale, assignment, transfer, conveyance or other disposition (including by way of merger, wind-up or consolidation) or spin-off by dividend of the Equity Interests of EFIH such that EFIH is no longer a Subsidiary of EFH Corp. (including without limitation a merger of EFIH with and into EFH Corp.) or (2) the sale, assignment, transfer, conveyance or other disposition (other than by way of merger, wind-up or consolidation) of all of the Equity Interests of, and other Investments in, the Oncor Subsidiaries, Successor Oncor Businesses and all other Collateral held by EFIH to a Person (other than an Oncor Subsidiary) that shall continue to hold such Equity Interests, other Investments and any other Collateral, in each case other than any foreclosure on the Collateral.

"*Permitted Holders*" means each of the Investors, members of management (including directors) of EFIH or any of its direct or indirect parent companies or Subsidiaries who on the Closing Date were or at any time prior to the first anniversary of the Closing Date were holders of Equity Interests of EFIH (or any of its direct or indirect parent companies) and any group (within the meaning of Section 13(d)(3) or Section 14(d)(2) of the Exchange Act or any successor provision) of which any of the foregoing are members; *provided* that, in the case of such group and without giving effect to the existence of such group or any other group, such Investors and members of management, collectively, have beneficial ownership of more than 50% of the total voting power of the Voting Stock of EFIH or any of its direct or indirect parent companies.

"*Permitted Investments*" means:

(1) any Investment in EFIH or any of its Restricted Subsidiaries;

(2) any Investment in cash and Cash Equivalents or Investment Grade Securities;

(3) any Investment by EFIH or any of its Restricted Subsidiaries in a Person that is engaged in a Similar Business if as a result of such Investment:

(a) such Person becomes a Restricted Subsidiary; or

(b) such Person, in one transaction or a series of related transactions, is merged or consolidated with or into, or transfers or conveys substantially all of its assets to, or is liquidated into, EFIH or a Restricted Subsidiary,

293

EFIHMW00246021

and, in each case, any Investment held by such Person; *provided* that such Investment was not acquired by such Person in contemplation of such acquisition, merger, consolidation or transfer;

(4) any Investment in securities or other assets not constituting cash, Cash Equivalents or Investment Grade Securities and received in connection with an Asset Sale made pursuant to the provisions described under "—Repurchase at the Option of Holders—Asset Sales" or any other disposition of assets not constituting an Asset Sale;

(5) any Investment existing on the Issue Date;

(6) any Investment acquired by EFIH or any of its Restricted Subsidiaries:

(a) in exchange for any other Investment or accounts receivable held by EFIH or any such Restricted Subsidiary in connection with or as a result of a bankruptcy, workout, reorganization or recapitalization of the issuer of such other Investment or accounts receivable; or

(b) as a result of a foreclosure by EFIH or any of its Restricted Subsidiaries with respect to any secured Investment or other transfer of title with respect to any secured Investment in default;

(7) Hedging Obligations permitted under clause (10) of the second paragraph of the covenant described under "—Certain Covenants—Limitation on Incurrence of Indebtedness and Issuance of Disqualified Stock and Preferred Stock";

(8) any Investment in a Similar Business having an aggregate fair market value, taken together with all other Investments made pursuant to this clause (8) that are at that time outstanding, not to exceed 3.5% of Total Assets at the time of such Investment (with the fair market value of each Investment being measured at the time made and without giving effect to subsequent changes in value);

(9) Investments the payment for which consists of Equity Interests (exclusive of Disqualified Stock) of EFIH or any of its direct or indirect parent companies; *provided, however,* that such Equity Interests will not increase the amount available for Restricted Payments under clause (3) of the first paragraph under the covenant described under "—Certain Covenants—Limitations on Restricted Payments";

(10) guarantees of Indebtedness of EFIH or any of its Restricted Subsidiaries permitted under the covenant described under "—Certain Covenants—Limitation on Incurrence of Indebtedness and Issuance of Disqualified Stock and Preferred Stock";

(11) any transaction to the extent it constitutes an Investment that is permitted and made in accordance with the provisions of the second paragraph of the covenant described under "—Certain Covenants— Transactions with Affiliates" (except transactions described in clauses (2), (5) and (9) of such paragraph);

(12) Investments consisting of purchases and acquisitions of inventory, fuel (including all forms of nuclear fuel), supplies, material or equipment;

(13) additional Investments having an aggregate fair market value, taken together with all other Investments made pursuant to this clause (13) that are at that time outstanding (without giving effect to the sale of an Investment to the extent the proceeds of such sale do not consist of cash or marketable securities), not to exceed 3.5% of Total Assets at the time of such Investment (with the fair market value of each Investment being measured at the time made and without giving effect to subsequent changes in value);

(14) Investments relating to a Receivables Subsidiary that, in the good faith determination of EFIH, are necessary or advisable to effect any Receivables Facility for the benefit of EFIH or any of its Restricted Subsidiaries;

(15) advances to, or guarantees of Indebtedness of, employees not in excess of $25.0 million outstanding at any one time, in the aggregate;

(16) loans and advances to officers, directors and employees for business-related travel expenses, moving expenses and other similar expenses, in each case incurred in the ordinary course of business or

294

EFIHMW00246022

consistent with past practices or to fund such Person's purchase of Equity Interests of EFIH or any direct or indirect parent company thereof;

(17) any Investment in any Subsidiary or any joint venture in connection with intercompany cash management arrangements or related activities arising in the ordinary course of business; or

(18)(A) Investments in Indebtedness of TCEH or EFH Corp. received by EFIH (i) in exchange for the Notes in the Exchange Offer or (ii) in exchange for Indebtedness of TCEH or EFH Corp. received in exchange for the Notes in the Exchange Offer and (B) Investments in Indebtedness of EFH Corp. or its Subsidiaries received by EFIH in exchange for other Indebtedness of EFIH or any Guarantor incurred under clause (2) under the second paragraph under "—Limitation on Incurrence of Indebtedness and Issuance of Disqualified Stock and Preferred Stock" covenant, including in the case of both (A) and (B) above, for the avoidance of doubt, the exchanges of any such Indebtedness, which shall be deemed to be "Permitted Investments" hereunder.

"*Permitted Liens*" means, with respect to any Person:

(1) pledges or deposits by such Person under workmen's compensation laws, unemployment insurance laws or similar legislation, or good faith deposits in connection with bids, tenders, contracts (other than for the payment of Indebtedness) or leases to which such Person is a party, or deposits to secure public or statutory obligations of such Person or deposits of cash or U.S. government bonds to secure surety or appeal bonds to which such Person is a party, or deposits as security for contested taxes or import duties or for the payment of rent, in each case incurred in the ordinary course of business (including in connection with the construction or restoration of facilities for the generation, transmission or distribution of electricity) or otherwise constituting Permitted Investments;

(2) Liens imposed by law, such as carriers', warehousemen's and mechanics' Liens, in each case for sums not yet overdue for a period of more than 30 days or being contested in good faith by appropriate proceedings or other Liens arising out of judgments or awards against such Person with respect to which such Person shall then be proceeding with an appeal or other proceedings for review if adequate reserves with respect thereto are maintained on the books of such Person in accordance with GAAP;

(3) Liens for taxes, assessments or other governmental charges not yet overdue for a period of more than 30 days or payable or subject to penalties for nonpayment or which are being contested in good faith by appropriate proceedings diligently conducted, if adequate reserves with respect thereto are maintained on the books of such Person in accordance with GAAP;

(4) Liens in favor of issuers of performance and surety bonds or bid bonds or with respect to other regulatory requirements or letters of credit issued pursuant to the request of and for the account of such Person in the ordinary course of its business;

(5) minor survey or title exceptions or irregularities, minor encumbrances, easements or reservations of, or rights of others for, licenses, permits, conditions, covenants, rights-of-way, sewers, electric lines, telegraph and telephone lines and other similar purposes, or zoning or other restrictions as to the use of real properties or Liens incidental to the conduct of the business of such Person or to the ownership of its properties which were not incurred in connection with Indebtedness and which do not in the aggregate materially adversely affect the value of said properties or materially impair their use in the operation of the business of such Person;

(6) Liens securing Indebtedness permitted to be incurred pursuant to clause (4), (12) or (13) of the second paragraph under "—Certain Covenants—Limitation on Incurrence of Indebtedness and Issuance of Disqualified Stock and Preferred Stock"; *provided* that (a) Liens securing Indebtedness, Disqualified Stock or Preferred Stock permitted to be incurred pursuant to clause (13) relate only to Refinancing Indebtedness that serves to refund or refinance Indebtedness, Disqualified Stock or Preferred Stock incurred under clause (4) or (12) of the second paragraph under "—Certain Covenants—Limitation on Incurrence of Indebtedness and Issuance of Disqualified Stock and Preferred Stock," and (b) Liens securing Indebtedness, Disqualified

295

EFIHMW00246023

Stock or Preferred Stock permitted to be incurred pursuant to clause (4) of the second paragraph under "—Certain Covenants—Limitation on Incurrence of Indebtedness and Issuance of Disqualified Stock and Preferred Stock" extend only to the assets so financed, purchased, constructed or improved;

(7) Liens existing on the Issue Date;

(8) Liens on property or shares of stock of a Person at the time such Person becomes a Subsidiary; *provided, however*, such Liens are not created or incurred in connection with, or in contemplation of, such other Person becoming such a Subsidiary; *provided, further, however*, that such Liens may not extend to any other property owned by EFIH or any of its Restricted Subsidiaries;

(9) Liens on property at the time EFIH or a Restricted Subsidiary acquired the property, including any acquisition by means of a merger or consolidation with or into EFIH or any of its Restricted Subsidiaries; *provided, however*, that such Liens are not created or incurred in connection with, or in contemplation of, such acquisition; *provided, further, however*, that the Liens may not extend to any other property owned by EFIH or any of its Restricted Subsidiaries;

(10) Liens securing Indebtedness or other obligations of a Restricted Subsidiary owing to EFIH or another Restricted Subsidiary permitted to be incurred in accordance with the covenant described under "—Certain Covenants—Limitation on Incurrence of Indebtedness and Issuance of Disqualified Stock and Preferred Stock";

(11) Liens securing Hedging Obligations, of EFIH or its Restricted Subsidiaries incurred under clause (10) of the second paragraph under "—Certain Covenants—Limitation on Incurrence of Indebtedness and Issuance of Disqualified Stock and Preferred Stock"; *provided* that such agreements were entered into in the ordinary course of business and not for speculative purposes (as determined by EFIH in its reasonable discretion acting in good faith) and, in the case of any commodity Hedging Obligations or any Hedging Obligation of the type described in clause (c) of the definition of "Hedging Obligations," entered into in order to hedge against or manage fluctuations in the price or availability of any Covered Commodity;

(12) Liens on specific items of inventory or other goods and proceeds of any Person securing such Person's obligations in respect of bankers' acceptances issued or created for the account of such Person to facilitate the purchase, shipment or storage of such inventory or other goods;

(13) leases, subleases, licenses or sublicenses granted to others in the ordinary course of business which do not materially interfere with the ordinary conduct of the business of EFIH or any of its Restricted Subsidiaries;

(14) Liens arising from Uniform Commercial Code financing statement filings regarding operating leases entered into by EFIH and its Restricted Subsidiaries in the ordinary course of business;

(15) Liens in favor of EFIH or any Guarantor;

(16) [Intentionally omitted];

(17) Liens on accounts receivable, other Receivables Facility assets, or accounts into which collections or proceeds of Receivables Facility assets are deposited, in each case in connection with a Receivables Facility for the benefit of EFIH or its Restricted Subsidiaries;

(18) Liens to secure any refinancing, refunding, extension, renewal or replacement (or successive refinancing, refunding, extensions, renewals or replacements) as a whole, or in part, of any Indebtedness secured by any Lien referred to in the foregoing clauses (6), (7), (8) and (9); *provided, however*, that (a) such new Lien shall be limited to all or part of the same property that secured the original Lien (plus improvements on such property), and (b) the Indebtedness secured by such Lien at such time is not increased to any amount greater than the sum of (i) the outstanding principal amount or, if greater, committed amount of the Indebtedness described under clauses (6), (7), (8), and (9) at the time the original Lien became a Permitted Lien under the EFIH Indenture, and (ii) an amount necessary to pay any fees and expenses, including premiums, related to such refinancing, refunding, extension, renewal or replacement;

296

EFIHMW00246024

(19) deposits made in the ordinary course of business to secure liability to insurance carriers;

(20) other Liens securing obligations incurred in the ordinary course of business which obligations do not exceed $100.0 million at any one time outstanding;

(21) Liens securing judgments for the payment of money not constituting an Event of Default under clause (5) under "—Events of Default and Remedies" so long as such Liens are adequately bonded and any appropriate legal proceedings that may have been duly initiated for the review of such judgment have not been finally terminated or the period within which such proceedings may be initiated has not expired;

(22) Liens in favor of customs and revenue authorities arising as a matter of law to secure payment of customs duties in connection with the importation of goods in the ordinary course of business;

(23) Liens (i) of a collection bank arising under Section 4-210 of the Uniform Commercial Code, or any comparable or successor provision, on items in the course of collection, and (ii) in favor of banking institutions arising as a matter of law encumbering deposits (including the right of set-off) and which are within the general parameters customary in the banking industry;

(24) Liens deemed to exist in connection with Investments in repurchase agreements permitted by the covenant described under "—Certain Covenants—Limitation on Incurrence of Indebtedness and Issuance of Disqualified Stock and Preferred Stock"; *provided* that such Liens do not extend to any assets other than those that are the subject of such repurchase agreements;

(25) ground leases or subleases, licenses or sublicenses in respect of real property on which facilities owned or leased by EFIH or any of its Subsidiaries are located;

(26) Liens that are contractual rights of set-off (i) relating to the establishment of depository relations with banks not given in connection with the issuance of Indebtedness, (ii) relating to pooled deposit or sweep accounts of EFIH or any of its Restricted Subsidiaries to permit satisfaction of overdraft or similar obligations incurred in the ordinary course of business of EFIH and its Restricted Subsidiaries or (iii) relating to purchase orders and other agreements entered into with customers of EFIH or any of its Restricted Subsidiaries in the ordinary course of business;

(27) Liens arising out of conditional sale, title retention, consignment or similar arrangements for the sale or purchase of goods entered into by EFIH or any Restricted Subsidiary in the ordinary course of business;

(28) rights reserved to or vested in others to take or receive any part of, or royalties related to, the power, gas, oil, coal, lignite or other minerals or timber generated, developed, manufactured or produced by, or grown on, or acquired with, any property of EFIH or any of its Restricted Subsidiaries and Liens upon the production from property of power, gas, oil, coal, lignite or other minerals or timber, and the by-products and proceeds thereof, to secure the obligations to pay all or a part of the expenses of exploration, drilling, mining or development of such property only out of such production or proceeds;

(29) Liens arising out of all presently existing and future division and transfer orders, advance payment agreements, processing contracts, gas processing plant agreements, operating agreements, gas balancing or deferred production agreements, pooling, unitization or communitization agreements, pipeline, gathering or transportation agreements, platform agreements, drilling contracts, injection or repressuring agreements, cycling agreements, construction agreements, salt water or other disposal agreements, leases or rental agreements, farm-out and farm-in agreements, exploration and development agreements, and any and all other contracts or agreements covering, arising out of, used or useful in connection with or pertaining to the exploration, development, operation, production, sale, use, purchase, exchange, storage, separation, dehydration, treatment, compression, gathering, transportation, processing, improvement, marketing, disposal or handling of any property of EFIH or any of its Restricted Subsidiaries, *provided* that such agreements are entered into in the ordinary course of business (including in respect of construction and restoration activities);

297

EFIHMW00246025

(30) any restrictions on any stock or stock equivalents or other joint venture interests of EFIH or any of its Restricted Subsidiaries providing for a breach, termination or default under any owners, participation, shared facility, joint venture, stockholder, membership, limited liability company or partnership agreement between such Person and one or more other holders of such stock or stock equivalents or interest of such Person, if a security interest or other Lien is created on such stock or stock equivalents or interest as a result thereof and other similar Liens;

(31) [Intentionally omitted];

(32) Liens and other exceptions to title, in either case on or in respect of any facilities of EFIH or any of its Restricted Subsidiaries, arising as a result of any shared facility agreement entered into with respect to such facility, except to the extent that any such Liens or exceptions, individually or in the aggregate, materially adversely affect the value of the relevant property or materially impair the use of the relevant property in the operation of business of EFIH or any of its Restricted Subsidiaries, taken as a whole;

(33) Liens on cash and Cash Equivalents (i) deposited by EFIH or any of its Restricted Subsidiaries in margin accounts with or on behalf of brokers, credit clearing organizations, independent system operators, regional transmission organizations, pipelines, state agencies, federal agencies, futures contract brokers, customers, trading counterparties, or any other parties or issuers of surety bonds or (ii) pledged or deposited as collateral by EFIH or any of its Restricted Subsidiaries with any of the entities described in clause (i) above to secure their respective obligations, in the case of each of clauses (i) and (ii) above, with respect to: (A) any contracts and transactions for the purchase, sale, exchange of, or the option (whether physical or financial) to purchase, sell or exchange (1) natural gas, (2) electricity, (3) coal and lignite, (4) petroleum-based liquids, (5) oil, (6) nuclear fuel (including enrichment and conversion), (7) emissions or other environmental credits, (8) waste byproducts, (9) weather, (10) power and other generation capacity, (11) heat rate, (12) congestion, (13) renewal energy credit, or (14) any other energy-related commodity or services or derivative (including ancillary services and related risk (such as location basis)); (B) any contracts or transactions for the purchase, processing, transmission, transportation, distribution, sale, lease, hedge or storage of, or any other services related to any commodity or service identified in subparts (1) through (14) above, including any capacity agreement; (C) any financial derivative agreement (including but not limited to swaps, options or swaptions) related to any commodity identified in subparts (1) through (14) above, or to any interest rate or currency rate management activities; (D) any agreement for membership or participation in an organization that facilitates or permits the entering into or clearing of any netting agreement or any agreement described in this clause (33); (E) any agreement combining part or all of a netting agreement or part or all of any of the agreements described in this clause (33); (E) any document relating to any agreement described in this clause (33) that is filed with a Government Authority and any related service agreements; or (F) any commercial or trading agreements, each with respect to, or involving the purchase, transmission, distribution, sale, lease or hedge of, any energy, generation capacity or fuel, or any other energy related commodity or service, price or price indices for any such commodities or services or any other similar derivative agreements, and any other similar agreements (such agreements described in clauses (A) through (F) of this clause (33) being collectively, "*Permitted Contracts*"), Netting Agreements, Hedging Obligations and letters of credit supporting Permitted Contracts, Netting Agreements and Hedging Obligations;

(34) Liens arising under Section 9.343 of the Texas Uniform Commercial Code or similar statutes of states other than Texas;

(35) Liens created in the ordinary course of business in favor of banks and other financial institutions over credit balances of any bank accounts of EFIH and its Subsidiaries held at such banks or financial institutions, as the case may be, to facilitate the operation of cash pooling and/or interest set-off arrangements in respect of such bank accounts in the ordinary course of business;

(36) any zoning, land use, environmental or similar law or right reserved to or vested in any Government Authority to control or regulate the use of any real property that does not materially interfere with the ordinary conduct of the business of EFIH or any of its Restricted Subsidiaries, taken as a whole;

298

EFIHMW00246026

(37) any Lien arising by reason of deposits with or giving of any form of security to any Government Authority for any purpose at any time as required by applicable law as a condition to the transaction of any business or the exercise of any privilege or license, or to enable EFIH or any of its Restricted Subsidiaries to maintain self-insurance or to participate in any fund for liability on any insurance risks;

(38) Liens, restrictions, regulations, easements, exceptions or reservations of any Government Authority applying particularly to nuclear fuel;

(39) rights reserved to or vested in any Government Authority by the terms of any right, power, franchise, grant, license or permit, or by any provision of applicable law, to terminate or modify such right, power, franchise, grant, license or permit or to purchase or recapture or to designate a purchaser of any of the property of such person;

(40) Liens arising under any obligations or duties affecting any of the property of EFIH or any of its Restricted Subsidiaries to any Government Authority with respect to any franchise, grant, license or permit which do not materially impair the use of such property for the purposes for which it is held;

(41) rights reserved to or vested in any Government Authority to use, control or regulate any property of such person;

(42) any obligations or duties, affecting the property of EFIH or any of its Restricted Subsidiaries, to any Government Authority with respect to any franchise, grant, license or permit;

(43) a set-off or netting rights granted by EFIH or any Subsidiary of EFIH pursuant to any agreements related to Hedging Obligations, Netting Agreements or Permitted Contracts solely in respect of amounts owing under such agreements;

(44) Liens (i) on cash advances in favor of the seller of any property to be acquired in an Investment described under the definition of "Permitted Investments" to be applied against the purchase price for such Investment and (ii) consisting of an agreement to sell, transfer, lease or otherwise dispose of any property in a transaction excluded from the definition described under "Asset Sale," in each case, solely to the extent such Investment or sale, disposition, transfer or lease, as the case may be, would have been permitted on the date of the creation of such Lien;

(45) [Intentionally omitted]; and

(46) any amounts held by a trustee in the funds and accounts under any indenture securing any revenue bonds issued for the benefit of EFIH or any of its Restricted Subsidiaries.

For purposes of this definition, the term "Indebtedness" shall be deemed to include interest on such Indebtedness.

"*Person*" means any individual, corporation, limited liability company, partnership, joint venture, association, joint stock company, trust, unincorporated organization, government or any agency or political subdivision thereof or any other entity.

"*Preferred Stock*" means any Equity Interest with preferential rights of payment of dividends or upon liquidation, dissolution or winding up.

"*Purchase Money Obligations*" means any Indebtedness incurred to finance or refinance the acquisition, leasing, construction, repair, restoration, replacement, expansion or improvement of property (real or personal) or assets (other than Capital Stock), and whether acquired through the direct acquisition of such property or assets, or otherwise, incurred in respect of capital expenditures, including Environmental CapEx Debt and Necessary CapEx Debt.

299

Confidential

"*Qualified Proceeds*" means assets that are used or useful in, or Capital Stock of any Person engaged in, a Similar Business; *provided* that the fair market value of any such assets or Capital Stock shall be determined by EFIH in good faith.

"*Rating Agencies*" means each of Moody's, S&P and Fitch, or if any of Moody's, S&P or Fitch shall not make a rating on the Notes or other investment publicly available, a "nationally recognized statistical rating organization" within the meaning of Rule 15c3-1(c)(2)(vi)(F) under the Exchange Act selected by EFIH which shall be substituted for Moody's, S&P or Fitch, or all of them, as the case may be.

"*Receivables Facility*" means any of one or more receivables financing facilities or programs as amended, supplemented, modified, extended, renewed, restated or refunded from time to time, the Obligations of which are non-recourse (except for customary representations, warranties, covenants and indemnities made in connection with such facilities) to EFIH or any of its Restricted Subsidiaries (other than a Receivables Subsidiary) pursuant to which EFIH or any of its Restricted Subsidiaries purports to sell its accounts receivable to either (a) a Person that is not a Restricted Subsidiary or (b) a Receivables Subsidiary that in turn funds such purchase by purporting to sell its accounts receivable to a Person that is not a Restricted Subsidiary or by borrowing from such a Person or from another Receivables Subsidiary that in turn funds itself by borrowing from such a Person.

"*Receivables Fees*" means distributions or payments made directly or by means of discounts with respect to any accounts receivable or participation interest therein issued or sold in connection with, and other fees paid to a Person that is not a Restricted Subsidiary in connection with any Receivables Facility.

"*Receivables Subsidiary*" means any Subsidiary formed for the purpose of facilitating or entering into one or more Receivables Facilities, and in each case engages only in activities reasonably related or incidental thereto.

"*Redemption Date*" has the meaning set forth under "Optional Redemption."

"*Related Business Assets*" means (A) except in the case of a Permitted Asset Swap of Collateral, assets (other than cash or Cash Equivalents) used or useful in, or securities of, a Similar Business; *provided* that any assets or securities received by EFIH or a Restricted Subsidiary in exchange for assets or securities transferred by EFIH or a Restricted Subsidiary will not be deemed to be Related Business Assets if they consist of securities of a Person, unless upon receipt of the securities of such Person, such Person would become a Restricted Subsidiary and (B) in the case of a Permitted Asset Swap of Collateral, assets (other than cash or Cash Equivalents) used or useful in, or Capital Stock of, a Similar Oncor Business; *provided* that any Capital Stock received by EFIH in exchange for Collateral will not be deemed to be Related Business Assets, unless upon receipt of the Capital Stock of such Person, such Person would become a Subsidiary of EFIH or a joint venture in which EFIH has a significant equity interest (as determined by EFIH in good faith).

"*Required Junior Lien Debtholders*" means, at any time, the holders of a majority in aggregate principal amount of all Junior Lien Debt (including outstanding letters of credit whether or not then available or drawn) then outstanding and the aggregate unfunded commitments to extend credit which, when funded, would constitute Junior Lien Debt, calculated in accordance with the provisions described under "—Security for the Notes—Voting." For purposes of this definition, Junior Lien Debt registered in the name of, or beneficially owned by, the Issuer or any Affiliate of the Issuer will be deemed not to be outstanding.

"*Required Parity Lien Debtholders*" means, at any time, the holders of a majority in aggregate principal amount of all Parity Lien Debt (including outstanding letters of credit whether or not then available or drawn) then outstanding and the aggregate unfunded commitments to extend credit which, when funded, would constitute Parity Lien Debt, calculated in accordance with the provisions described under "—Security for the Notes—Voting." For purposes of this definition, Parity Lien Debt registered in the name of, or beneficially owned by, the Issuer or any Affiliate of the Issuer will be deemed not to be outstanding.

300

"*Restoration Certificate*" shall mean, with respect to any Casualty Event, an Officer's Certificate provided to the Trustee prior to the 365th day after such Casualty Event has occurred certifying (a) that EFIH or such Restricted Subsidiary intends to use the proceeds received in connection with such Casualty Event to repair, restore or replace the property or assets in respect of which such Casualty Event occurred, (b) the approximate costs of completion of such repair, restoration or replacement and (c) that such repair, restoration or replacement will be completed within the later of (x) 450 days after the date on which cash proceeds with respect to such Casualty Event were received and (y) 180 days after delivery of such Restoration Certificate.

"*Restricted Investment*" means an Investment other than a Permitted Investment.

"*Restricted Payment Coverage Ratio*" means (i) for Restricted Payments (other than payments of cash dividends or distributions to EFH Corp. on, or in respect of, EFIH's Capital Stock, purchases for cash or other acquisitions for cash of any Capital Stock of EFIH or any direct or indirect parent of EFIH for the purpose of paying any such dividend or distribution to, or acquisitions of Capital Stock of any direct or indirect parent of EFIH for cash from, the Investors, or guaranteeing any Indebtedness of any Affiliate of EFIH for the purpose of paying such dividend, making such distribution or so acquiring such Capital Stock to or from the Investors, all such Restricted Payments being referred to as "*Investor Payments*"), the Fixed Charge Coverage Ratio of EFIH and its Restricted Subsidiaries treating the Oncor Subsidiaries as Restricted Subsidiaries for purposes of such calculation and (ii) for Restricted Payments constituting Investor Payments, the Fixed Charge Coverage Ratio of EFIH and its Restricted Subsidiaries.

"*Restricted Subsidiary*" means, at any time, any direct or indirect Subsidiary of EFIH (including any Foreign Subsidiary) that is not then an Unrestricted Subsidiary; *provided, however*, that upon an Unrestricted Subsidiary's ceasing to be an Unrestricted Subsidiary, such Subsidiary shall be included in the definition of "Restricted Subsidiary."

"*S&P*" means Standard & Poor's, a Standard & Poor's Financial Services LLC business, and any successor to its rating agency business.

"*Sale and Lease-Back Transaction*" means any arrangement providing for the leasing by EFIH or any of its Restricted Subsidiaries of any real or tangible personal property, which property has been or is to be sold or transferred by EFIH or such Restricted Subsidiary to a third Person in contemplation of such leasing.

"*SEC*" means the U.S. Securities and Exchange Commission.

"*Secured Debt Documents*" means the Parity Lien Documents and the Junior Lien Documents.

"*Secured Debt Obligations*" means Parity Lien Obligations and Junior Lien Obligations.

"*Secured Indebtedness*" means any Indebtedness of EFIH or any of its Restricted Subsidiaries secured by a Lien.

"*Secured Lien Debt*" means Parity Lien Debt and Junior Lien Debt.

"*Securities Act*" means the Securities Act of 1933, as amended, and the rules and regulations of the SEC promulgated thereunder.

"*Security Documents*" means the Collateral Trust Agreement, the Pledge Agreement, and all other security agreements, pledge agreements, collateral assignments, mortgages, collateral agency agreements, deed of trust or other grants or transfers for security executed and delivered by EFIH, a Guarantor or any other obligor under the Notes creating (or purporting to create) a Lien upon Collateral in favor of the Collateral Trustee for the benefit of

301

the holders of the Secured Debt Obligations, in each case, as amended, modified, renewed, restated or replaced, in whole or in part, from time to time, in accordance with its terms.

"*Senior Indebtedness*" means:

(1) all Indebtedness of the Issuer or any Guarantor outstanding under EFIH's guarantee of the New EFH Corp. Notes, EFIH's guarantee of any Existing EFH Corp. Notes, or the Notes and any related Guarantees (including interest accruing on or after the filing of any petition in bankruptcy or similar proceeding or for reorganization of the Issuer or any Guarantor (at the rate provided for in the documentation with respect thereto, regardless of whether or not a claim for post-filing interest is allowed in such proceedings)), and any and all other fees, expense reimbursement obligations, indemnification amounts, penalties, and other amounts (whether existing on the Issue Date or thereafter created or incurred) and all obligations of the Issuer or any Guarantor to reimburse any bank or other Person in respect of amounts paid under letters of credit, acceptances or other similar instruments;

(2) all Hedging Obligations of the Issuer or any Guarantor (and guarantees thereof) owing to a lender or any Affiliate of such lender (or any Person that was a lender or an Affiliate of such lender at the time the applicable agreement giving rise to such Hedging Obligation was entered into); *provided* that such Hedging Obligations are permitted to be incurred under the terms of the EFIH Indenture;

(3) any other Indebtedness of the Issuer or any Guarantor permitted to be incurred under the terms of the EFIH Indenture, unless the instrument under which such Indebtedness is incurred expressly provides that it is subordinated in right of payment to the Notes or any related Guarantee; and

(4) all Obligations with respect to the items listed in the preceding clauses (1), (2) and (3);

*provided, however*, that Senior Indebtedness shall not include:

(a) any obligation of such Person to the Issuer or any of its Subsidiaries;

(b) any liability for federal, state, local or other taxes owed or owing by such Person;

(c) any accounts payable or other liability to trade creditors arising in the ordinary course of business;

(d) any Indebtedness or other Obligation of such Person which is subordinate or junior in any respect to any other Indebtedness or other Obligation of such Person; and

(e) that portion of any Indebtedness which at the time of incurrence is incurred in violation of the EFIH Indenture.

"*Series of Junior Lien Debt*" means, severally, each issue or series of Junior Lien Debt for which a single transfer register is maintained (provided that any Hedging Obligations constituting Junior Lien Debt shall be deemed part of the Series of Junior Lien Debt to which it relates).

"*Series of Parity Lien Debt*" means, severally, the Notes and any Additional Notes or other Indebtedness that constitutes Parity Lien Debt (provided that any Hedging Obligations constituting Parity Lien Debt shall be deemed part of the Series of Parity Lien Debt to which it relates).

"*Series of Secured Lien Debt*" means each Series of Parity Lien Debt and each Series of Junior Lien Debt.

"*Significant Subsidiary*" means any Restricted Subsidiary that would be a "significant subsidiary" as defined in Article 1, Rule 1-02 of Regulation S-X, promulgated pursuant to the Securities Act, as such regulation is in effect on the Closing Date.

"*Similar Business*" means any business conducted or proposed to be conducted by EFIH and its Subsidiaries on the Closing Date or any business that is similar, reasonably related, incidental or ancillary thereto.

302

Confidential

"*Similar Oncor Business*" means any business which is primarily engaged in a regulated electricity or other energy transmission or distribution business in the United States (as determined by EFIH in good faith).

"*Sponsor Management Agreement*" means the management agreement between certain of the management companies associated with the Investors and EFH Corp.

"*Subordinated Indebtedness*" means,

(1) any Indebtedness of the Issuer which is by its terms subordinated in right of payment to the Notes, and

(2) any Indebtedness of any Guarantor which is by its terms subordinated in right of payment to the Guarantee of such entity of the Notes.

"*Subsidiary*" means, with respect to any Person:

(1) any corporation, association, or other business entity (other than a partnership, joint venture, limited liability company or similar entity) of which more than 50% of the total voting power of shares of Capital Stock entitled (without regard to the occurrence of any contingency) to vote in the election of directors, managers or trustees thereof is at the time of determination owned or controlled, directly or indirectly, by such Person or one or more of the other Subsidiaries of that Person or a combination thereof: and

(2) any partnership, joint venture, limited liability company or similar entity of which

(x) more than 50% of the capital accounts, distribution rights, total equity and voting interests or general or limited partnership interests, as applicable, are owned or controlled, directly or indirectly, by such Person or one or more of the other Subsidiaries of that Person or a combination thereof whether in the form of membership, general, special or limited partnership or otherwise, and

(y) such Person or any Restricted Subsidiary of such Person is a controlling general partner or otherwise controls such entity.

"*Successor Oncor Business*" means any Person the Capital Stock of which is received by EFIH in an Asset Sale, including a Permitted Asset Swap, of Collateral or as a dividend or distribution from an Oncor Subsidiary.

"*TCEH*" means Texas Competitive Electric Holdings Company LLC.

"*TCEH Notes*" means the notes previously issued by TCEH to refinance indebtedness under the TCEH Senior Interim Facility.

"*TCEH Senior Interim Facility*" means the interim loan agreement, dated as of the Closing Date by and among Energy Future Competitive Holdings, as guarantor, TCEH, as borrower, the other guarantors parties thereto, the lenders party thereto in their capacities as lenders thereunder and Morgan Stanley Senior Funding, Inc., as Administrative Agent, including any guarantees, instruments and agreements executed in connection therewith, and any amendments, supplements, modifications or restatements thereof.

"*TCEH Senior Secured Facilities*" means the credit agreement dated as of the Closing Date, as amended on August 7, 2009, by and among Energy Future Competitive Holdings, as guarantor, TCEH, as borrower, the lenders party thereto in their capacities as lenders thereunder and Citibank, N.A., as Administrative Agent, including any guarantees, collateral documents, instruments and agreements executed in connection therewith, and any additional amendments, supplements, modifications, extensions, renewals, restatements, refundings or refinancings thereof and any indentures or credit facilities or commercial paper facilities with banks or other institutional lenders or investors that replace, refund or refinance any part of the loans, notes, other credit facilities or commitments thereunder, including any such replacement, refunding or refinancing facility or indenture that increases the amount borrowable thereunder or alters the maturity thereof (*provided* that such

303

EFIHMW00246031

increase in borrowings is permitted under "—Certain Covenants—Limitation on Incurrence of Indebtedness and Issuance of Disqualified Stock and Preferred Stock").

"*Total Assets*" means the total assets of EFIH and its Restricted Subsidiaries on a consolidated basis, as shown on the most recent consolidated balance sheet of EFIH or such other Person as may be expressly stated.

"*Transactions*" means the transactions contemplated by the Transaction Agreement, borrowings under the TCEH Senior Secured Facilities, the EFH Senior Interim Facility, the TCEH Senior Interim Facility, the Oncor Electric Delivery Facility and any Receivables Facility as in effect on the Closing Date, any repayments of indebtedness of EFH Corp. and its Subsidiaries in connection therewith, and the issuance of the 2017 Notes and the TCEH Notes and any repayments of Indebtedness of EFH Corp. and its Subsidiaries in connection therewith.

"*Transaction Agreement*" means the Agreement and Plan of Merger, dated as of February 25, 2007, among Merger Sub, Texas Energy Future Holdings Limited Partnership and EFH Corp.

"*Treasury Rate*" means, as of any Redemption Date, the yield to maturity as of such Redemption Date of United States Treasury securities with a constant maturity (as compiled and published in the most recent Federal Reserve Statistical Release H.15 (519) that has become publicly available at least two Business Days prior to the Redemption Date (or, if such Statistical Release is no longer published, any publicly available source of similar market data)) most nearly equal to the period from the Redemption Date to October 15, 2014; *provided, however,* that if the period from the Redemption Date to October 15, 2014 is less than one year, the weekly average yield on actually traded United States Treasury securities adjusted to a constant maturity of one year will be used.

"*Trust Indenture Act*" means the Trust Indenture Act of 1939, as amended (15 U.S.C. §§ 77aaa-77bbbb).

"*Unrestricted Cash*" means, as of any date, without duplication, (a) all cash and Cash Equivalents (in each case, free and clear of all Liens, other than nonconsensual Liens permitted by the covenant described under "—Certain Covenants—Liens" and Liens permitted by clause (23), subclauses (i) and (ii) of clause (26) and clause (33) of the definition of Permitted Liens, included in the cash and cash equivalents accounts listed on the consolidated balance sheet of EFIH and its Restricted Subsidiaries as of such date and (b) all unrestricted margin deposits related to commodity positions listed on the consolidated balance sheet of EFIH and the Restricted Subsidiaries.

"*Unrestricted Subsidiary*" means:

   (1) each of the Oncor Subsidiaries;

   (2) any Subsidiary of EFIH other than EFIH Finance or any Guarantor owning Collateral which at the time of determination is an Unrestricted Subsidiary (as designated by EFIH, as provided below); and

   (3) any Subsidiary of an Unrestricted Subsidiary.

EFIH may designate any Subsidiary of EFIH (including any existing Subsidiary and any newly acquired or newly formed Subsidiary) other than EFIH Finance or any Guarantor owning Collateral to be an Unrestricted Subsidiary unless such Subsidiary or any of its Subsidiaries owns any Equity Interests or Indebtedness of, or owns or holds any Lien on, any property of, EFIH or any Subsidiary of EFIH (other than solely any Subsidiary of the Subsidiary to be so designated); *provided* that

   (1) any Unrestricted Subsidiary must be an entity of which the Equity Interests entitled to cast at least a majority of the votes that may be cast by all Equity Interests having ordinary voting power for the election of directors or Persons performing a similar function are owned, directly or indirectly, by EFIH;

   (2) such designation complies with the covenants described under "—Certain Covenants—Limitation on Restricted Payments"; and

304

EFIHMW00246032

(3) each of:

    (a) the Subsidiary to be so designated; and

    (b) its Subsidiaries

has not at the time of designation, and does not thereafter, create, incur, issue, assume, guarantee or otherwise become directly or indirectly liable with respect to any Indebtedness pursuant to which the lender has recourse to any of the assets of EFIH or any Restricted Subsidiary.

EFIH may designate any Unrestricted Subsidiary to be a Restricted Subsidiary; *provided* that, immediately after giving effect to such designation, no Default shall have occurred and be continuing and in the case of any Subsidiary of EFIH, (A) EFIH could incur at least $1.00 of additional Indebtedness pursuant to the Fixed Charge Coverage Ratio test described in the first paragraph under "—Certain Covenants—Limitation on Incurrence of Indebtedness and Issuance of Disqualified Stock and Preferred Stock"; or (B) the Fixed Charge Coverage Ratio for EFIH and its Restricted Subsidiaries would be greater than such ratio for EFIH and its Restricted Subsidiaries immediately prior to such designation, in each case on a *pro forma* basis taking into account such designation.

Any such designation by EFIH shall be notified by EFIH to the Trustee by promptly filing with the Trustee a copy of the resolution of the board of directors of EFIH or any committee thereof giving effect to such designation and an Officer's Certificate certifying that such designation complied with the foregoing provisions.

"*Voting Stock*" of any Person as of any date means the Capital Stock of such Person that is at the time entitled to vote in the election of the board of directors of such Person.

"*Weighted Average Life to Maturity*" means, when applied to any Indebtedness, Disqualified Stock or Preferred Stock, as the case may be, at any date, the quotient obtained by dividing:

    (1) the sum of the products of the number of years from the date of determination to the date of each successive scheduled principal payment of such Indebtedness or redemption or similar payment with respect to such Disqualified Stock or Preferred Stock multiplied by the amount of such payment; by

    (2) the sum of all such payments.

"*Wholly-Owned Subsidiary*" of any Person means a Subsidiary of such Person, 100% of the outstanding, Equity Interests of which (other than directors' qualifying shares) shall at the time be owned by such Person or by one or more Wholly-Owned Subsidiaries of such Person.

305

Confidential

## COMPARISON OF PRINCIPAL DIFFERENCES AMONG OLD NOTES AND NEW SENIOR SECURED NOTES

The following description is a summary of the principal differences among certain terms and provisions of the Old Notes and the New Senior Secured Notes. This summary does not purport to be complete and is qualified in its entirety by express reference to the indentures relating to the Old Notes, copies of which have been filed with the SEC, and the indentures relating to the New Senior Secured Notes, copies of which will be filed with the SEC, which, in each case, are or will be available as described under "Available Information."

The following description does not give effect to the Proposed Amendments. For a summary of the changes that will be made to each of the Consent Notes Indentures if the applicable Proposed Amendments become operative with respect to an issue of Consent Notes, see "Proposed Amendments."

For more detailed information relating to the terms of the New Senior Secured Notes, see "Description of the EFH Corp. Notes" and "Description of the EFIH Notes."

Certain capitalized terms used below have the meanings assigned to such terms in the indenture pursuant to which the relevant Old Notes were issued, or pursuant to which the New Senior Secured Notes will be issued. See "Description of the EFH Corp. Notes—Certain Definitions" and "Description of the EFIH Notes—Certain Definitions" for definitions of capitalized terms used, but not defined, in the columns below titled "New EFH Senior Secured Notes" and "New EFIH Senior Secured Notes," respectively. All numbered or lettered items below reflect the numbering or lettering corresponding to such items in the relevant indenture and/or description of the relevant New Senior Secured Notes included in this Prospectus.

306

EFIHMW00246034

Confidential

307

| | Legacy Notes | 2017 Notes | TCEH Notes | New EFIH Senior Secured Notes | New EFIH Senior Secured Notes |
|---|---|---|---|---|---|
| **Issuer** | EFH Corp. | EFH Corp. | TCEH and TCEH Finance | EFH Corp. | EFIH and EFIH Finance |
| **Interest Rate** | *Series P Senior Notes:* 5.55% per annum; *Series Q Senior Notes:* 6.50% per annum; *Series R Senior Notes:* 6.55% per annum | *Cash-Pay Notes:* 10.875% per annum; *Toggle Notes:* 11.250%/12.000% per annum. Interest on the Toggle Notes may be paid in additional notes in lieu of cash for any interest payment period prior to November 1, 2012. | 10.25% per annum | 9.75% per annum | 9.75% per annum |
| **Maturity** | *Series P Senior Notes:* November 15, 2014; *Series Q Senior Notes:* November 15, 2024; *Series R Senior Notes:* November 15, 2034 | November 1, 2017 | November 1, 2015 | October 15, 2019 | October 15, 2019 |
| **Collateral** | None | None | None | The guarantee by EFIH will be secured by Equity Interests in, Indebtedness of, and other Investments in, any Oncor Subsidiary owned by EFIH; and the proceeds, income and other payments therefrom. | The notes will be secured by Equity Interests in, Indebtedness of, and other Investments in, any Oncor Subsidiary owned by EFIH; and the proceeds, income and other payments therefrom. |
| **Guarantees** | None | EFCH and EFH | EFCH and substantially all of the TCEH subsidiaries | EFCH and EFH | None |
| **Ranking** | Senior unsecured | Senior unsecured | Senior unsecured | Senior (with a senior secured guarantee from EFIH) | Senior secured |

EFIHMW00246035

Confidential

308

| | Legacy Notes | 2017 Notes | TCEH Notes | New EFH Senior Secured Notes | New EFIH Senior Secured Notes |
|---|---|---|---|---|---|
| Listing | None | None | None | Expected listing on the New York Stock Exchange | Expected listing on the New York Stock Exchange |
| Redemption | *Series P Senior Notes:* Optional "make-whole" redemption in whole or in part at any time at 100% of their aggregate principal amount plus a "make-whole" premium and accrued and unpaid interest to the redemption date.<br><br>*Series Q Senior Notes and Series R Senior Notes:* Optional "make-whole" redemption in whole or in part at any time at T+35 basis points. | Prior to November 1, 2012, optional "make-whole" redemption in whole or in part at any time at 100% of their aggregate principal amount plus a "make-whole" premium and accrued and unpaid interest to the redemption date.<br><br>Beginning on November 1, 2012, the Issuer may redeem any of the notes at specified redemption prices.<br><br>Prior to November 1, 2010, the Issuer may redeem up to 35% of the aggregate principal amount of the notes using the proceeds from certain equity offerings at 110.875% (for Cash-Pay Notes) or 111.250% (for Toggle Notes) of their aggregate principal amount, plus accrued and unpaid interest to the redemption date. | Prior to November 1, 2011, optional "make-whole" redemption in whole or in part at any time at 100% of their aggregate principal amount plus a "make-whole" premium and accrued and unpaid interest to the redemption date.<br><br>Beginning on November 1, 2011, the Issuer may redeem any of the notes at specified redemption prices.<br><br>Prior to November 1, 2010, the Issuer may redeem up to 35% of the aggregate principal amount of the notes using the proceeds from certain equity offerings at 110.250% of their aggregate principal amount, plus accrued and unpaid interest to the redemption date. | Prior to October 15, 2014, optional "make-whole" redemption in whole or in part at any time at 100% of their aggregate principal amount plus a "make-whole" premium and accrued and unpaid interest to the redemption date.<br><br>Beginning on October 15, 2014, the Issuer may redeem any of the notes at specified redemption prices.<br><br>Prior to October 15, 2012, the Issuer may redeem up to 35% of the aggregate principal amount of the notes using the proceeds from certain equity offerings at 109.750% of their aggregate principal amount, plus accrued and unpaid interest to the redemption date. | Prior to October 15, 2014, optional "make-whole" redemption in whole or in part at any time at 100% of their aggregate principal amount plus a "make-whole" premium and accrued and unpaid interest to the redemption date.<br><br>Beginning on October 15, 2014, the Issuer may redeem any of the notes at specified redemption prices.<br><br>Prior to October 15, 2012, the Issuer may redeem up to 35% of the aggregate principal amount of the notes using the proceeds from certain equity offerings at 109.750% of their aggregate principal amount, plus accrued and unpaid interest to the redemption date. |

EFIHMW00246036

Confidential

309

| | Legacy Notes | 2017 Notes | TCEH Notes | New EFH Senior Secured Notes | New EFIH Senior Secured Notes |
|---|---|---|---|---|---|
| Registration/Transfer Restrictions | 144-A/Reg S with subsequent SEC registration | 144-A/Reg S with subsequent SEC registration | 144-A/Reg S with subsequent SEC registration | SEC Registered | SEC Registered |
| *Principal Covenants* | | | | | |
| Change of Control | None | Upon the occurrence of a Change of Control, holders of the notes have the right to require the Issuer to repurchase some or all of the notes at 101% of their aggregate principal amount, plus accrued and unpaid interest to the repurchase date.<br><br>"Change of Control" is generally defined as: (i) the sale, lease or transfer of all or substantially all of the assets of the Issuer and its subsidiaries, taken as a whole, to any person other than a Permitted Holder; or (2) the Issuer becomes aware of the acquisition by any person or group, other than the Permitted Holders, by way of merger, consolidation or other business combination or purchase of beneficial ownership of 50% or more of the total voting power of | Upon the occurrence of a Change of Control, holders of the notes have the right to require the Issuer to repurchase some or all of the notes at 101% of their aggregate principal amount, plus accrued and unpaid interest to the repurchase date.<br><br>"Change of Control" is generally defined as: (i) the sale, lease or transfer of all or substantially all of the assets of EFCH or TCEH and its subsidiaries, taken as a whole, to any person other than a Permitted Holder; (2) TCEH becomes aware of the acquisition by any person or group, other than the Permitted Holders, by way of merger, consolidation or other business combination or other purchase of beneficial ownership of 50% or more of the total | Upon the occurrence of a Change of Control, holders of the notes have the right to require the Issuer to repurchase some or all of the notes at 101% of their aggregate principal amount, plus accrued and unpaid interest to the repurchase date.<br><br>"Change of Control" is generally defined as: (i) the sale, lease or transfer of all or substantially all of the assets of EFIH and its subsidiaries, taken as a whole, to any person other than a Permitted Holder, other than (A) the first to occur of a Permitted Asset Transfer and a Permitted Holder, other than a Permitted Holder, other than (A) a Permitted Asset Transfer meeting the requirements of the proviso following clause (3) below and | Upon the occurrence of a Change of Control, holders of the notes have the right to require the Issuer to repurchase some or all of the notes at 101% of their aggregate principal amount, plus accrued and unpaid interest to the repurchase date.<br><br>"Change of Control" is generally defined as: (i) the sale, lease or transfer of all or substantially all of the assets of EFIH and its subsidiaries, taken as a whole, to any person other than a Permitted Holder, other than (A) a Permitted Asset Transfer meeting the requirements of the proviso following clause (3) below and (B) any foreclosure on the Collateral, provided that a transaction that would otherwise |

EFIHNW00246037

Confidential

310

| Change of Control (Continued) | Legacy Notes | 2017 Notes | TCEH Notes | New EFH Senior Secured Notes | New EFH Senior Secured Notes |
|---|---|---|---|---|---|
| | | the Issuer or any of its direct or indirect parent companies. | voting power of TCEH or any of its direct or indirect parent below and (C) any foreclosure on the Collateral; (2) the Issuer becomes aware companies; or (3) at any time, EFH Corp. ceases to own at least a majority of the total voting power of TCEH. | the purpose of determining the first to occur of a Permitted Asset Transfer, or a TCEH Transfer, (B) a transaction meeting the requirements of the proviso to clause (3) below and (C) any foreclosure on the Collateral; (2) the Issuer becomes aware of the acquisition by any person or group, other than the Permitted Holders, by way of merger, consolidation or other business combination or purchase of beneficial ownership of 50% or more of the total voting power of the Issuer or any of its direct or indirect parent companies; or (3) the sale, transfer, conveyance or other disposition of all or substantially all of the assets of EFH and its subsidiaries, taken as a whole, or all or substantially all of the Collateral or Oncor-related Assets, other than a Permitted Asset Transfer made in accordance with the relevant provisions of the Indenture, provided that a transaction that would otherwise constitute a Change of Control pursuant to this clause (3) will not constitute a Change of Control if: (a) the | constitute a Change of Control pursuant to this clause (3) will not constitute a Change of Control if: (a) the consideration received in respect of such transaction (i) is received by EFH or an Oncor Subsidiary or Successor Oncor Business; (ii) consists of capital stock of a person in a Similar Oncor Business that (A) would become a Subsidiary of EFH or such Oncor Subsidiary or Successor Oncor Business or (B) is a joint venture in which EFH or such Oncor Subsidiary or Successor Oncor Business would have a significant Equity Interest; (iii) is at least equal to the fair market value of the assets conveyed or otherwise disposed of; and (iv) if received by EFH, is concurrently pledged as Collateral; (b) immediately after such transaction no Default exists; (c) immediately after giving pro forma effect to such transaction, either (i) EFH would be able to incur at least $1 of additional Indebtedness under the Fixed Charge Coverage Ratio |

EFIH/IMW00246038

Confidential

311

| Change of Control (Continued) | Legacy Notes | 2017 Notes | TCEH Notes | New EFH Senior Secured Notes | New EFH Senior Secured Notes |
|---|---|---|---|---|---|
| | | | | consideration received in respect of such transaction (i) is received by EFIH or an Oncor Subsidiary or Successor Oncor Business; (ii) consists of capital stock of a person in a Similar Oncor Business that (A) would become a Subsidiary of EFIH or such Oncor Subsidiary or Successor Oncor Business or (B) is a joint venture in which EFIH or such Oncor Subsidiary or Successor Oncor Business would have a significant Equity Interest; (iii) is at least equal to the fair market value of the assets sold, transferred, conveyed or otherwise disposed of; and (iv) if received by EFIH, is concurrently pledged as Collateral; (b) immediately after such transaction no Default exists; (c) immediately after giving pro forma effect to such transaction, either (i) the Issuer would be able to incur at least $1 of additional Indebtedness under the Fixed Charge Coverage Ratio test in the limitation on incurrence of Indebtedness covenant or (ii) its Fixed Charge | test in the limitation on incurrence of Indebtedness covenant or (ii) its Fixed Charge Coverage Ratio would be greater as a result of the transaction; and (d) the rating on the notes is not downgraded within a specified time frame; and (e) each guarantor has by a supplemental indenture confirmed its guarantee; (2) EFIH becomes aware of the acquisition by any person or group, other than the Permitted Holders, by way of merger, consolidation or other business combination or purchase of beneficial ownership of 50% or more of the total voting power of EFIH or any of its direct or indirect parent companies; or (3) at any time, EFH Corp. ceases to own at least a majority of the total voting power of EFIH, provided that certain Permitted Asset Transfers will not constitute a Change of Control if: (a) such Permitted Asset Transfer complies with the merger covenant; (b) the |

Confidential

312

| Change of Control (Continued) | Legacy Notes | 2017 Notes | TCEH Notes | New EFIH Senior Secured Notes | New EFIH Senior Secured Notes |
|---|---|---|---|---|---|
| | | | | Coverage Ratio would be greater as a result of the transaction; and (d) the rating on the notes is not downgraded within a specified time frame. | successor company has assumed all the obligations of EFIH under the notes and the related documents, in accordance with the merger covenant; (c) immediately after such transaction no Default exists; (d) immediately after giving pro forma effect to such transaction, either (i) EFIH or the successor company would be able to incur at least $1 of additional Indebtedness under the Fixed Charge Coverage Ratio test in the limitation on incurrence of Indebtedness covenant or (ii) its Fixed Charge Coverage Ratio would be greater as a result of the transaction; (e) the rating on the notes is not downgraded within a specified time frame; and (f) EFIH or the successor company has delivered to the trustee an opinion of counsel relating to the Collateral. |

EFIHMW00246040

Confidential

313

| | Legacy Notes | 2017 Notes | TCEH Notes | New EFH Senior Secured Notes | New EFIH Senior Secured Notes |
|---|---|---|---|---|---|
| **Limitation on Restricted Payments** | None | The Issuer and its Restricted Subsidiaries are prohibited from (I) declaring or paying any dividend or making any payment or distribution on account of the Issuer's, or any of its Restricted Subsidiaries' Equity Interests; (II) purchasing, redeeming, defeasing or otherwise acquiring or retiring for value any Equity Interest of the Issuer or any direct or indirect parent of the Issuer; (III) making any principal payment on, or redeeming, repurchasing, defeasing or otherwise acquiring or retiring for value, prior to any scheduled repayment, sinking fund payment or maturity, any subordinated | TCEH and its Restricted Subsidiaries are prohibited from (I) declaring or paying any dividend or making any payment or distribution on account of TCEH's, or any of its Restricted Subsidiaries' Equity Interests; (II) purchasing, redeeming, defeasing or otherwise acquiring or retiring for value any Equity Interest of TCEH or any direct or indirect parent of TCEH; (III) making any principal payment on, or redeeming, repurchasing, defeasing or otherwise acquiring or retiring for value, prior to any scheduled repayment, sinking fund payment or maturity, any subordinated | The Issuer and its Restricted Subsidiaries are prohibited from (I) declaring or paying any dividend or making any payment or distribution on account of the Issuer's, or any of its Restricted Subsidiaries' Equity Interests; (II) purchasing, redeeming, defeasing or otherwise acquiring or retiring for value any Equity Interest of the Issuer or any direct or indirect parent of the Issuer; (III) making any principal payment on, or redeeming, repurchasing, defeasing or otherwise acquiring or retiring for value, prior to any scheduled repayment, sinking fund payment or maturity, any subordinated | EFIH and its Restricted Subsidiaries are prohibited from (I) declaring or paying any dividend or making any payment or distribution on account of EFIH's, or any of its Restricted Subsidiaries' Equity Interests; (II) purchasing, redeeming, defeasing or otherwise acquiring or retiring for value any Equity Interest of EFIH or any direct or indirect parent of EFIH; (III) making any principal payment on, or redeeming, repurchasing, defeasing or otherwise acquiring or retiring for value, prior to any scheduled repayment, sinking fund payment or maturity, any subordinated Indebtedness; or (IV) |

EFIHMW00246041

Confidential

314

## Limitation on Restricted Payments (Continued)

| Legacy Notes | 2017 Notes | TCEH Notes | New EFH Senior Secured Notes | New EFIH Senior Secured Notes |
|---|---|---|---|---|
|  | Indebtedness; or (IV) making any restricted investment unless: (1) no default has occurred; (2)(A) with respect to any Restricted Payment by the Issuer or any Restricted Subsidiary of the Issuer (other than Restricted Subsidiaries) incurrence of TCEH and its Restricted Subsidiaries) on a pro forma basis, the Restricted Payment Coverage Ratio would have been at least 2.00 to 1.00 or (B) with respect to a Restricted Payment by TCEH or any Restricted Subsidiary of TCEH, on a pro forma basis, TCEH could incur $1 of additional Indebtedness under its Fixed Charge Coverage Ratio test in the limitation on incurrence of Indebtedness covenant; and (3)(A) certain Restricted Payments made by the Issuer and its Restricted Subsidiaries (other than TCEH and its Restricted Subsidiaries) would be less than 50% of the Issuer's | Indebtedness; or (IV) making any restricted investment unless: (1) no default has occurred; (2) on a pro forma basis, TCEH could incur $1 of additional Indebtedness under its Fixed Charge Coverage Ratio test in the limitation on incurrence of Indebtedness covenant; and (3) certain Restricted Payments made by TCEH and its Restricted Subsidiaries would be less than 50% of TCEH's Consolidated Net Income from October 1, 2007. | Indebtedness; or (IV) making any restricted investment unless: (1) no default has occurred; (2) on a pro forma basis, TCEH could incur $1 of additional Indebtedness under its Fixed Charge Coverage Ratio test in the limitation on incurrence of Indebtedness covenant; and (3)(A) certain Restricted Payments made by the Issuer and its Restricted Subsidiaries (other than TCEH and its Restricted Subsidiaries) would be less than 50% of the Issuer's | making any restricted investment unless: (1) no default has occurred; (2) on a pro forma basis, the Restricted Payment Coverage Ratio would have been at least 2.00 to 1.00; and (3) certain Restricted Payments made by EFIH and its Restricted Subsidiaries would be less than 50% of EFIH's Consolidated Net Income from October 11, 2007. |

**PX 014**
**Page 324 of 1116**

Confidential

315

| | Legacy Notes | 2017 Notes | TCEH Notes | New EFH Senior Secured Notes | New EFIH Senior Secured Notes |
|---|---|---|---|---|---|
| Limitation on Restricted Payments (Continued) | | Consolidated Net Income from October 1, 2007 and (B) certain Restricted Payments made by TCEH and its Restricted Subsidiaries would be less than 50% of TCEH's Consolidated Net Income from October 1, 2007.<br><br>This prohibition is also subject to enumerated exceptions including, among others (using cross-references as set forth in this covenant in the 2017 Indenture): (7) aggregate Investments in Unrestricted Subsidiaries having an aggregate fair market value not to exceed (A) 1.5% of Total Assets at the time of such Investment and (B) to the extent invested in any of the Oncor Subsidiaries, $500 million; and (11) aggregate Restricted Payments not to exceed 2.0% of Total Assets; and (using cross-references as set | This prohibition is also subject to enumerated exceptions including, among others (using cross-references as set forth in this covenant in the 2017 Indenture): (7) aggregate Investments in Unrestricted Subsidiaries having an aggregate fair market value not to exceed 1.0% of Total Assets at the time of such Investment; and (11)(A) aggregate Restricted Payments not to exceed 2.0% of Total Assets and (B) dividends or loans to EFH Corp. not to exceed $1,000 million if the proceeds of the dividends or loans are | Consolidated Net Income from October 1, 2007 and (B) certain Restricted Payments made by TCEH and its Restricted Subsidiaries would be less than 50% of TCEH's Consolidated Net Income from October 1, 2007.<br><br>This prohibition is also subject to enumerated exceptions including, among others (using cross-references as set forth in this covenant in the indenture governing the New EFH Senior Secured Notes (the "EFH Indenture")): (7) aggregate Investments in Unrestricted Subsidiaries having an aggregate fair market value not to exceed (A) 1.5% of Total Assets at the time of such Investment and (B) to the extent invested in any of the Oncor Subsidiaries, $500 million; (11) aggregate Restricted Payments not to exceed 2.0% of | This prohibition is also subject to enumerated exceptions including, among others (using cross-references as set forth in this covenant in the indenture governing the New EFIH Senior Secured Notes (the "EFIH Indenture")): (7) aggregate Investments in Unrestricted Subsidiaries having an aggregate fair market value not to exceed (A) 1.5% of Total Assets at the time of such Investment and (B) to the extent invested in any of the Oncor Subsidiaries, $500,0 million; (11)(A) aggregate Restricted Payments not to exceed 2.0% of Total Assets; and (16) Restricted Payments not to exceed $100 million and (B) |

PX 014
Page 325 of 1116

Confidential

316

| | Legacy Notes | 2017 Notes | TCEH Notes | New EFIH Senior Secured Notes | New EFIH Senior Secured Notes |
|---|---|---|---|---|---|
| Limitation on Restricted Payments (Continued) | | forth in the definition of "Permitted Investments" in the 2017 Indenture); (8) aggregate Investments in a Similar Business having an aggregate fair market value not to exceed 3.5% of Total Assets; (13) additional Investments having an aggregate fair market value not to exceed 3.5% of Total Assets; and (18) aggregate Investments in Shell Wind not to exceed $1,500 million. | invested in the Oncor Subsidiaries; and (using cross-references as set forth in the definition of "Permitted Investments" in the TCEH Indenture): (8) aggregate Investments in a Similar Business having an aggregate fair market value not to exceed 3.5% of Total Assets; (13) additional Investments having an aggregate fair market value not to exceed 3.5% of Total Assets; and (19) aggregate Investments in Shell Wind not to exceed $1,500 million. | Restricted Payments in respect of Permitted Asset Transfers that are cross-references as set forth in the definition of "Permitted Investments" in the EFIH Indenture): (8) aggregate Investments in a Similar Business having an aggregate fair market value not to exceed 3.5% of Total Assets; (13) additional Investments having an aggregate fair market value not to exceed 3.5% of Total Assets; (18) aggregate Investments in Shell Wind or in other wind or other renewable energy projects or in any nuclear power or energy joint venture not to exceed $1,500 million; and (20) aggregate Investments in any nuclear power or energy joint venture not to exceed $200 million. | loans to EFIH Corp. in amounts to permit EFIH Corp. to pay interest when due on certain of its Indebtedness; (16) Restricted Payments to permit EFIH Corp. to allow it to comply with the asset sale covenant under its indenture; and (18) Restricted Payments to permit EFIH Corp. to make interest payments on certain of its existing notes and the New EFIH Senior Secured Notes; and (using cross-references as set forth in the definition of "Permitted Investments" in the EFIH Indenture): (8) aggregate Investments in a Similar Business having an aggregate fair market value not to exceed 3.5% of Total Assets; and (13) additional Investments having an aggregate fair market value not to exceed 3.5% of Total Assets. |

EFIHMW00246044

Confidential

317

| | Legacy Notes | 2017 Notes | TCEH Notes | New EFH Senior Secured Notes | New EFIH Senior Secured Notes |
|---|---|---|---|---|---|
| **Limitation on Restricted Payments (Continued)** | | In addition, the Issuer and its Restricted Subsidiaries are prohibited from paying cash dividends or distributions (or making repurchases or incurring debt to achieve the same result) to the Investors unless the Consolidated Leverage Ratio of the Issuer would be equal to or less than 7.00 to 1.00. | | In addition, the Issuer and its Restricted Subsidiaries are prohibited from paying cash dividends or distributions (or making repurchases or incurring debt to achieve the same result) to the Investors unless the Consolidated Leverage Ratio of the Issuer would be equal to or less than 7.00 to 1.00. | In addition, EFIH and its Restricted Subsidiaries are prohibited from paying cash dividends or distributions (or making repurchases or incurring debt to achieve the same result) to EFIH Corp. to permit it to make such payments to the Investors unless the Consolidated Leverage Ratio of EFIH (treating the Oncor Subsidiaries as Restricted Subsidiaries) would be equal to or less than 6.00 to 1.00 prior to a Permitted Asset Transfer and 7.00 to 1.00 after a Permitted Asset Transfer. |
| **Limitation on Incurrence of Indebtedness** | None | | TCEH and its Restricted Subsidiaries are prohibited from incurring Indebtedness and issuing shares of preferred stock and/or disqualified stock unless TCEH's consolidated Fixed Charge Coverage Ratio is at least 2.00 to 1.00 on a pro forma basis, subject to enumerated exceptions including, among others (using | The Issuer and its Restricted Subsidiaries are prohibited from incurring Indebtedness and issuing shares of preferred stock and/or disqualified stock unless the Issuer's consolidated Fixed Charge Coverage Ratio is at least 2.00 to 1.00 on a pro forma basis, or, in the case of TCEH and its Restricted Subsidiaries, TCEH's consolidated Fixed Charge Coverage Ratio is at least 2.00 to 1.00 on a pro forma basis, subject to enumerated exceptions including, Subsidiaries, TCEH's consolidated Fixed among others (using | EFIH and its Restricted Subsidiaries are prohibited from incurring Indebtedness and issuing shares of preferred stock and/or disqualified stock unless EFIH's consolidated Fixed Charge Coverage Ratio is at least 2.00 to 1.00 on a pro forma basis, subject to enumerated exceptions including, among others (using |

EFIHMW00246045

Confidential

318

| | Legacy Notes | 2017 Notes | TCEH Notes | New EFH Senior Secured Notes | New EFIH Senior Secured Notes |
|---|---|---|---|---|---|
| Limitation on Incurrence of Indebtedness (Continued) | | Charge Coverage Ratio is at least 2.00 to 1.00 on a pro forma basis, subject to enumerated exceptions including, among others (using cross-references as set forth in this covenant in the 2017 Indenture): (1) the incurrence of Indebtedness under Credit Facilities up to an aggregate principal amount of $26,500 million plus any collateral posting facility; (2) the incurrence (x) by the Issuer and any guarantor of Indebtedness represented by the notes and related guarantees and (y) by EFCH and its subsidiaries of Indebtedness represented by the TCEH notes; (4) capitalized lease obligations and purchase money obligations; (12)(b) the incurrence of Indebtedness by the Issuer or any Restricted Subsidiary in an aggregate principal amount not to exceed | cross-references as set forth in this covenant in the TCEH Indenture): (1) the incurrence of Indebtedness under Credit Facilities up to an aggregate principal amount of $26,500 million plus any collateral posting facility; (2) the incurrence by TCEH and any guarantor of Indebtedness represented by the notes and related guarantees; (4) capitalized lease obligations and purchase money obligations; (12)(b) the incurrence of Indebtedness by the Issuer or any Restricted Subsidiary in an aggregate principal amount not to exceed $1,750 million; and (14) the incurrence of Indebtedness to finance acquisitions. | consolidated Fixed Charge Coverage Ratio is at least 2.00 to 1.00 on a pro forma basis, subject to enumerated exceptions including, among others (using cross-references as set forth in this covenant in the EFH Indenture): (1) the incurrence of Indebtedness under Credit Facilities up to an aggregate principal amount of $26,500 million plus any collateral posting facility; (2) the incurrence by the Issuer and any guarantor of up to $4.0 billion in debt to be issued in the exchange offers and certain other Indebtedness (which amount may be reduced in certain circumstances if Parity Lien Debt is repaid with the proceeds of certain Asset Sales); (3) guarantees of up to $3.0 billion of Indebtedness of EFH Corp.; (4) capitalized lease obligations and purchase money obligations; (12)(b) the incurrence of Indebtedness by the Issuer or any Restricted Subsidiary in an amount not to exceed | cross-references as set forth in this covenant in the EFIH Indenture): (1) the incurrence of Indebtedness under Credit Facilities up to an aggregate principal amount of $750 million (2) the incurrence by the Issuer and any guarantor of up to $4.0 billion in debt to be issued in the exchange offers and certain other Indebtedness (which amount may be reduced in certain circumstances if Parity Lien Debt is repaid with the proceeds of certain Asset Sales); (4) capitalized lease obligations and purchase money obligations; (12)(b) the incurrence of Indebtedness by the Issuer or any Restricted Subsidiary in an aggregate principal amount not to exceed $250 million; and (14) the incurrence of Indebtedness to finance acquisitions. |

EFIH-NW00246046

Confidential

319

| | Legacy Notes | 2017 Notes | TCEH Notes | New EFH Senior Secured Notes | New EFH Senior Secured Notes |
|---|---|---|---|---|---|
| **Limitation on Incurrence of Indebtedness (Continued)** | | $1,750 million; and (14) the incurrence of certain Indebtedness to finance acquisitions. | | aggregate principal amount not to exceed $1,750 million; and (14) the incurrence of certain Indebtedness to finance acquisitions. | |
| **Limitation on Liens** | The Issuer is prohibited from pledging or otherwise encumbering capital stock of its subsidiaries to secure Indebtedness without equally and ratably securing the relevant series of Legacy Notes, except that the Issuer may so encumber such capital stock so long as the underlying Indebtedness does not exceed 5% of Consolidated Capitalization. | The Issuer and each guarantor are prohibited from incurring liens in respect of Indebtedness unless the notes and guarantees are secured on an equal or senior basis, subject to enumerated exceptions including, among others (using cross-references as set forth in this covenant in the 2017 Indenture): (a) liens securing the notes and related guarantees; (b) liens securing Indebtedness incurred under the $26,500 million Credit Facilities basket; and (c) liens securing Indebtedness permitted to be incurred under the limitation on incurrence of Indebtedness covenant if, on a pro forma basis, the Consolidated Secured Debt Ratio would be no greater than 5.0 to 1.0; and (using cross-references as set forth in the definition of "Permitted Liens" in the 2017 Indenture): (6) liens securing Indebtedness in respect of the baskets | TCEH, TCEH Finance and each guarantor are prohibited from incurring liens in respect of Indebtedness unless the notes and guarantees are secured on an equal or senior basis, subject to enumerated exceptions including, among others (using cross-references as set forth in this covenant in the TCEH Indenture): (a) liens securing the notes and related guarantees; (b) liens securing Indebtedness incurred under the $26,500 million Credit Facilities basket; and (c) liens securing Indebtedness permitted to be incurred under the limitation on incurrence of Indebtedness covenant if, on a pro forma basis, the Consolidated Secured Debt Ratio would be no greater than 5.0 to 1.0; and (using cross-references as set forth in the definition of "Permitted Liens" in the TCEH Indenture): (6) liens securing | The Issuer and each guarantor that is a Restricted Subsidiary are prohibited from incurring liens in respect of Indebtedness unless the notes and guarantees are secured on an equal or senior basis, subject to enumerated exceptions including, among others (using cross-references as set forth in this covenant in the EFH Indenture): (a) liens (other than Collateral) securing the notes and related guarantees and other Indebtedness permitted to be incurred under the $4.0 billion basket of the limitation on incurrence of Indebtedness covenant, as long as the notes and related guarantees are secured on an equal and ratable basis; (b) liens securing Indebtedness incurred under the $26,500 million Credit Facilities basket; and (c) liens securing Indebtedness permitted to be | EFIH, EFIH Finance and any guarantor that is a Restricted Subsidiary are prohibited from incurring liens in respect of Indebtedness unless the notes and guarantees are secured on an equal and ratable basis, subject to enumerated exceptions including, among others (using cross-references as set forth in this covenant in the EFIH Indenture): (a) liens (other than Collateral) securing the notes and related guarantees and other Indebtedness permitted to be incurred under the $3.0 billion basket for guarantees of EFH Corp. Indebtedness of the limitation on incurrence of Indebtedness covenant, as long as the notes and related guarantees are secured on an equal and ratable basis; (b) liens securing Indebtedness incurred under the $750 million |

EFIHNW00246047

Confidential

320

## Limitation on Liens (Continued)

| Legacy Notes | 2017 Notes | TCEH Notes | New EFIH Senior Secured Notes | New EFIH Senior Secured Notes |
|---|---|---|---|---|
| | for (i) capitalized lease obligations and purchase money obligations and (ii) $1,750 million in additional Indebtedness, in each case permitted to be incurred under the limitation on incurrence of Indebtedness covenant. | Indebtedness in respect of the baskets for (i) capitalized lease obligations and purchase money obligations and (ii) $1,750 million in additional Indebtedness, in each case permitted to be incurred under the limitation on incurrence of Indebtedness covenant. | incurred under the limitation on incurrence of Indebtedness covenant if, on a pro forma basis, the Consolidated Secured Debt Ratio would be no greater than 5.0 to 1.0; and (using cross-references as set forth in the definition of "Permitted Liens" in the EFIH Indenture); (6) liens securing Indebtedness in respect of the baskets for (i) capitalized lease obligations and purchase money obligations and (ii) $1,750 million in additional Indebtedness, in each case permitted to be incurred under the limitation on incurrence of Indebtedness covenant. | Credit Facilities basket; and (c) liens securing Indebtedness permitted to be incurred under the limitation on incurrence of Indebtedness covenant if, on a pro forma basis, the Consolidated Secured Debt Ratio would be no greater than 5.0 to 1.0; and (using cross-references as set forth in the definition of "Permitted Liens" in the EFIH Indenture); (6) liens securing Indebtedness in respect of the baskets for (i) capitalized lease obligations and purchase money obligations and (ii) $250 million in additional Indebtedness, in each case permitted to be incurred under the limitation on incurrence of Indebtedness covenant. |

EFIHMW00246048

Confidential

321

| | Legacy Notes | 2017 Notes | TCEH Notes | New EFIH Senior Secured Notes | New EFIH Senior Secured Notes |
|---|---|---|---|---|---|
| **Limitation on Liens (Continued)** | | | | The Issuer and EFIH are prohibited from incurring liens on the Collateral other than liens to secure Indebtedness of up to $4.0 billion on a parity basis with the notes, unlimited junior liens on the Collateral and certain liens for taxes, assessments or other governmental charges. | EFIH is prohibited from incurring liens on the Collateral other than liens to secure Indebtedness of up to $4.0 billion on a parity basis with the notes, unlimited junior liens on the Collateral and certain liens for taxes, assessments or other governmental charges. |
| **Limitation on Asset Sales** | None | Neither the Issuer nor any of its Restricted Subsidiaries may consummate an Asset Sale unless fair market value consideration is received and, except in the case of a Permitted Asset Swap, at least 75% of the consideration is in the form of cash or cash equivalents, except that Designated Non-cash Consideration received by the Issuer or such Restricted Subsidiary having an aggregate fair market value not to exceed 5% of Total Assets is deemed to be cash for these purposes. | Neither TCEH nor any of its Restricted Subsidiaries may consummate an Asset Sale unless fair market value consideration is received and, except in the case of a Permitted Asset Swap, at least 75% of the consideration is in the form of cash or cash equivalents, except that Designated Non-cash Consideration received by TCEH or such Restricted Subsidiary having an aggregate fair market value not to exceed 5% of Total Assets is deemed to be cash for these purposes. | Neither the Issuer nor any of its Restricted Subsidiaries may consummate an Asset Sale unless fair market value consideration is received and, except in the case of a Permitted Asset Swap, at least 75% of the consideration is in the form of cash or cash equivalents, except that Designated Non-cash Consideration received by the Issuer or such Restricted Subsidiary having an aggregate fair market value not to exceed 5% of Total Assets (or $400 million in the case of Asset Sales of Collateral | Neither EFIH nor any of its Restricted Subsidiaries may consummate an Asset Sale unless fair market value consideration is received and, except in the case of a Permitted Asset Swap, at least 75% of the consideration is in the form of cash or cash equivalents, except that Designated Non-cash Consideration received by EFIH or such Restricted Subsidiary having an aggregate fair market value not to exceed 5% of Total Assets (or $400 million in the case of Asset Sales of Collateral |

EFIH/MW00246049

**PX 014**
**Page 331 of 1116**

Confidential

322

| | Legacy Notes | 2017 Notes | TCEH Notes | New EFIH Senior Secured Notes | New EFIH Senior Secured Notes |
|---|---|---|---|---|---|
| Limitation on Asset Sales (Continued) | | Net proceeds received by the Issuer or a Restricted Subsidiary from an Asset Sale must be used as follows: (1) to permanently reduce: (a) senior secured Indebtedness; (b) other senior Indebtedness, as long as the Issuer ratably reduces amounts outstanding under the notes; (c) certain existing notes which have a final maturity date on or prior to October 15, 2017, with net proceeds from Asset Sales equal to an amount up to 3.5% of Total Assets; or (d) Indebtedness of a Restricted Subsidiary that is not a guarantor; (2) to make Investments to acquire Restricted Subsidiaries or certain other | Net proceeds received by TCEH or a Restricted Subsidiary from an Asset Sale must be used as follows: (1) to permanently reduce: (a) senior secured Indebtedness; (b) other senior Indebtedness, as long as the Issuer ratably reduces amounts outstanding under the notes; (c) certain existing notes which have a final maturity date on or prior to October 15, 2016, with net proceeds from Asset Sales equal to an amount up to 3.5% of Total Assets; or (d) Indebtedness of a Restricted Subsidiary that is not a guarantor; (2) to make Investments to acquire Restricted Subsidiaries or certain other | received by EFIH) is deemed to be cash for these purposes, and consideration received from an Asset Sale of Collateral must be pledged for the benefit of the holders of the notes. Net proceeds received by EFIH or a Restricted Subsidiary from an Asset Sale (except an Asset Sale of Collateral or other assets of Oncor) must be used as follows: (1) to permanently reduce: (a) senior secured Indebtedness; (b) other senior Indebtedness, as long as the Issuer ratably reduces amounts outstanding under the notes; (c) certain existing notes which have a final maturity date on or prior to October 15, 2019, with net proceeds from Asset Sales equal to an amount up to 3.5% of Total Assets; or (d) Indebtedness of a Restricted Subsidiary that is not a guarantor; (2) to make | received by EFIH) is deemed to be cash for these purposes, and consideration received from an Asset Sale of Collateral must be pledged for the benefit of the holders of the notes. Net proceeds received by EFIH or a Restricted Subsidiary from an Asset Sale (except an Asset Sale of Collateral or other assets of Oncor) must be used as follows: (1) to repay or prepay Parity Lien Debt (other than the notes) on a pro rata basis (including to make Restricted Payments to EFIH Corp.) to allow it to repay or prepay its Parity Lien Debt (other than Indebtedness owed to a Restricted Subsidiary of EFH Corp.) that is guaranteed by EFIH, up to an amount equal to the net proceeds multiplied by a fraction, the numerator of which is the outstanding principal amount of the Parity Lien Debt and the |

EFIHMW00246050

Confidential

323

| | Legacy Notes | 2017 Notes | TCEH Notes | New EFH Senior Secured Notes | New EFIH Senior Secured Notes |
|---|---|---|---|---|---|
| Limitation on Asset Sales (Continued) | | Investments in a Similar Business; or (3) to make Investments to acquire Restricted Subsidiaries or certain other Investments to replace the businesses, properties and/or assets that are the subject of the Asset Sale. | Investments in a Similar Businesses; or (3) to make Investments to acquire Restricted Subsidiaries or certain other Investments to replace the businesses, properties and/or assets that are the subject of the Asset Sale. | Investments to acquire Restricted Subsidiaries or certain other Investments in Similar Businesses; or (3) to make Investments to acquire Restricted Subsidiaries or certain other Investments to replace the businesses, properties and/or assets that are the subject of the Asset Sale. | denomination of which is the outstanding principal amount of all Parity Lien Debt (including the notes), as long as EFIH ratably reduces amounts outstanding under the notes; (2) to permanently reduce: (a) senior secured Indebtedness; (b) other senior Indebtedness, as long as EFIH ratably reduces amounts outstanding under the notes; or (c) Indebtedness of a Restricted Subsidiary that is not a guarantor; (3) to make Investments to acquire Restricted Subsidiaries or certain other Investments in Similar Businesses; or (4) to make Investments to acquire Restricted Subsidiaries or certain other Investments to replace the businesses, properties and/ or assets that are the subject of the Asset Sale. |

EFIH/MW00246051

**PX 014**
**Page 333 of 1116**

Confidential

324

| | Legacy Notes | 2017 Notes | TCEH Notes | New EFH Senior Secured Notes | New EFH Senior Secured Notes |
|---|---|---|---|---|---|
| Limitation on Asset Sales (Continued) | | | | Net proceeds received by the Issuer or a Restricted Subsidiary from an Asset Sale of Collateral or other assets of Oncor must be deposited in a cash collateral account for the payment of interest and principal on, and/or to repay, prepay or repurchase, Parity Lien Debt (including the notes) as described in the following clauses (1) and (2) (unless an Investment described in clause (3) is made): (1) to repay or prepay Parity Lien Debt (other than the notes), up to an amount equal to the net proceeds multiplied by a fraction, the numerator of which is the outstanding principal amount of all Parity Lien Debt (including the notes), as long as the Issuer ratably reduces amounts outstanding under the notes; (2) to repay or repurchase any EFIH notes or other Parity Lien Debt of EFIH; or (3) to make Investments | Net proceeds received by EFIH or a Restricted Subsidiary from an Asset Sale of Collateral or other assets of Oncor must be deposited in a cash collateral account for the payment of interest and principal on, and/or to repay, prepay, repurchase or redeem, Parity Lien Debt (including the notes) as described in the following clauses (1) and (2) (unless an Investment described in clause (3) is made): (1) to repay or prepay Parity Lien Debt (other than the notes) on a pro rata basis (including to make Restricted Payments to EFH Corp. to allow it to repay or prepay its Parity Lien Debt that is guaranteed by EFIH), up to an amount equal to the net proceeds multiplied by a fraction, the numerator of which is the outstanding principal amount of the Parity Lien Debt and the denominator of which is the outstanding principal amount of all Parity Lien Debt (including |

Confidential

325

| | Legacy Notes | 2017 Notes | TCEH Notes | New EFH Senior Secured Notes | New EFIH Senior Secured Notes |
|---|---|---|---|---|---|
| **Limitation on Asset Sales (Continued)** | | If the net proceeds are not so used, the Issuer must offer to repurchase the notes using such net proceeds. | If the net proceeds are not so used, the Issuer must offer to repurchase the notes using such net proceeds. | If the net proceeds are not so used, the Issuer must offer to repurchase the notes using such net proceeds. | in Oncor Subsidiaries or Successor Oncor Business, so long as such Investment is pledged as Collateral. |
| | | | | | the notes; as long as EFIH ratably reduces amounts outstanding under the notes; (2) to repay, repurchase or redeem the notes; or (3) to make Investments in Oncor Subsidiaries or Subsidiaries or Successor Oncor Business, so long as such Investment is pledged as Collateral. If the net proceeds are not so used, the Issuer must offer to repurchase the notes using such net proceeds. |
| **Merger, Consolidation and Sale of All or Substantially All Assets** | The Issuer may not merge into another company or convey, transfer or lease its properties and assets as an entirety or substantially as an entirety, unless the successor company assumes the obligations under the notes, no default has occurred under the relevant series of Legacy Notes and no event of default has occurred. | The Issuer may not merge or consolidate into another company or dispose of all or substantially all of its properties or assets, unless the successor company assumes the obligations under the notes, no default has occurred and the successor company would be able to incur at least $1 of additional Indebtedness under the Fixed Charge Coverage Ratio test in the limitation on incurrence | Neither TCEH nor EFCH may merge or consolidate into another company or dispose of all or substantially all of its properties or assets, unless the successor company assumes the obligations under the notes, no default has occurred and the successor company would be able to incur at least $1 of additional Indebtedness under the Fixed Charge Coverage Ratio test in the limitation on | Except as described above under "Change of Control" and below under "Other Asset Transfer Provisions," the Issuer may not merge or consolidate into another company or dispose of all or substantially all of its properties or assets, unless the successor company assumes the obligations under the notes and the Security Documents, no default has occurred and the successor company | Except as described above under "Change of Control" and below under "Other Asset Transfer Provisions," EFIH may not merge or consolidate into another company or dispose of all or substantially all of its properties or assets, unless the successor company assumes the obligations under the notes and the Security Documents, no default has occurred, the successor company would be able to incur |

EFIHMW00246053

Confidential

326

| | Legacy Notes | 2017 Notes | TCEH Notes | New EFIH Senior Secured Notes | New EFIH Senior Secured Notes |
|---|---|---|---|---|---|
| **Merger, Consolidation and Sale of All or Substantially All Assets (Continued)** | | of Indebtedness covenant or its Fixed Charge Coverage Ratio would be greater as a result of the transaction. | incurrence of Indebtedness covenant or its Fixed Charge Coverage Ratio would be greater as a result of the transaction. | would be able to incur Indebtedness under the Fixed Charge Coverage Ratio test in the limitation on incurrence of Indebtedness covenant or its Fixed Charge Coverage Ratio would be greater as a result of the transaction and, in the case of a Permitted Asset Transfer other than a merger of EFIH with and into EFIH Corp., the rating on the notes is not downgraded within a specified time frame. Notwithstanding the foregoing, EFIH may merge with and into EFIH Corp. if such merger is a Permitted Asset Transfer. | at least $1 of additional Indebtedness under the Fixed Charge Coverage Ratio test in the limitation on incurrence of Indebtedness covenant or its Fixed Charge Coverage Ratio would be greater as a result of the transaction and, in the case of a Permitted Asset Transfer other than a merger of EFIH with and into EFIH Corp., the rating on the notes is not downgraded within a specified time frame. Notwithstanding the foregoing, EFIH may merge with and into EFIH Corp. if such merger is a Permitted Asset Transfer. |
| **Other Asset Transfer Provisions** | None | None | None | The Issuer and its Restricted Subsidiaries may not hold ownership or other interests in the Oncor Subsidiaries or Successor Oncor Businesses or any other Collateral, except the Issuer may hold such ownership or other interests following a | Restricted Subsidiaries may not hold ownership or other interests in the Oncor Subsidiaries or Successor Oncor Businesses or any other Collateral, and Unrestricted Subsidiaries may not hold ownership or other interests in EFIH or in |

PX 014
Page 336 of 1116

Confidential

327

| Other Asset Transfer Provisions (Continued) | Legacy Notes | 2017 Notes | TCEH Notes | New EFIH Senior Secured Notes | New EFIH Senior Secured Notes |
|---|---|---|---|---|---|
| | | | | merger of EFIH with and into the Issuer, which is a Permitted Asset Transfer, and Unrestricted Subsidiaries may not hold ownership or other interests in EFIH or in the Oncor Subsidiaries or any Successor Oncor Businesses except that an Oncor Subsidiary may hold ownership or other interests in another Oncor Subsidiary.

The Issuer and its Restricted Subsidiaries may not engage in a Permitted Asset Transfer, unless the successor company assumes the obligations under the notes and the Security Documents, no event of default has occurred, the successor company would be able to incur at least $1 of additional Indebtedness under its Fixed Charge Coverage Ratio test in the limitation on incurrence of Indebtedness covenant or its Fixed Charge Coverage Ratio would be greater as a result of the transaction and, | the Oncor Subsidiaries or any Successor Oncor Businesses except that an Oncor Subsidiary may hold ownership or other interests in another Oncor Subsidiary. |

EFIHMW00246055

Confidential

328

| | Legacy Notes | 2017 Notes | TCEH Notes | New EFH Senior Secured Notes | New EFIH Senior Secured Notes |
|---|---|---|---|---|---|
| Other Asset Transfer Provisions (Continued) | | | | except in the case of a Permitted Asset Transfer consisting of a merger of EFIH with and into the Issuer, the rating on the notes is not downgraded within a specified time frame. The Issuer and its Restricted Subsidiaries may not engage in a TCEH Transfer unless the Issuer enters into a supplemental indenture, no default has occurred, the Issuer would be able to incur at least $1 of additional Indebtedness under its Fixed Charge Coverage Ratio test in the limitation on incurrence of Indebtedness covenant or its Fixed Charge Coverage Ratio would be greater as a result of the transaction and the rating on the notes is not downgraded within a specified time frame. | |
| Limitation on Transactions with Affiliates | None | The Issuer and its Restricted Subsidiaries are prohibited from making payments, disposing of property to or generally entering into transactions with Affiliates, if the transaction involves | TCEH and its Restricted Subsidiaries are prohibited from making payments, disposing of property to or generally entering into transactions with Affiliates, if the transaction involves | The Issuer and its Restricted Subsidiaries are prohibited from making payments, disposing of property to or generally entering into transactions with Affiliates, if the transaction involves | EFIH and its Restricted Subsidiaries are prohibited from making payments, disposing of property to or generally entering into transactions with Affiliates, if the transaction involves |

**PX 014**
**Page 338 of 1116**

Confidential

329

| | Legacy Notes | 2017 Notes | TCEH Notes | New EFH Senior Secured Notes | New EFIH Senior Secured Notes |
|---|---|---|---|---|---|
| Limitation on Transactions with Affiliates (Continued) | | consideration of more than $25 million, unless the transaction is not materially less favorable to the Issuer than what would have been obtained on an arm's-length basis or, if the transaction involves consideration of more than $50 million, the board of the Issuer approves the transaction, subject to enumerated exceptions. | consideration of more than $25 million, unless the transaction is not materially less favorable to TCEH than what would have been obtained on an arm's-length basis or, if the transaction involves consideration of more than $50 million, the board of TCEH approves the transaction, subject to enumerated exceptions. | consideration of more than $25 million, unless the transaction is not materially less favorable to EFH than what would have been obtained on an arm's-length basis or, if the transaction involves consideration of more than $50 million, the board of the Issuer approves the transaction, subject to enumerated exceptions. | consideration of more than $25 million, unless the transaction is not materially less favorable to EFIH than what would have been obtained on an arm's-length basis or, if the transaction involves consideration of more than $50 million, the board of EFIH approves the transaction, subject to enumerated exceptions. |
| Limitation on Guarantees of Indebtedness by Restricted Subsidiaries | None | Wholly-owned subsidiaries that are Restricted Subsidiaries, other than guarantors, are prohibited from guaranteeing Indebtedness of the Issuer without guaranteeing the notes, subject to enumerated exceptions. | Wholly-owned subsidiaries that are Restricted Subsidiaries, other than TCEH Finance or the guarantors, are prohibited from guaranteeing Indebtedness of TCEH Issuer without guaranteeing the notes, subject to enumerated exceptions. | Wholly-owned subsidiaries that are Restricted Subsidiaries, other than Finance and any guarantors, are prohibited from guaranteeing Indebtedness of the Issuer without guaranteeing the notes, subject to enumerated exceptions. | Wholly-owned subsidiaries that are Restricted Subsidiaries, other than EFIH Finance and any guarantors, are prohibited from guaranteeing Indebtedness of EFIH without guaranteeing the notes, subject to enumerated exceptions. |
| Dividend and Other Payment Restrictions Affecting Restricted Subsidiaries | None | Restricted Subsidiaries of the Issuer that are not guarantors are prohibited from creating consensual encumbrances on their ability to pay dividends, make loans | Restricted Subsidiaries of TCEH that are not guarantors are prohibited from creating consensual encumbrances on their ability to pay dividends, make loans | Restricted Subsidiaries of the Issuer that are not guarantors are prohibited from creating consensual encumbrances on their ability to pay dividends, make loans | Restricted Subsidiaries of EFIH that are not guarantors are prohibited from creating consensual encumbrances on their ability to pay dividends, make loans |

EFIHMW00246057

Confidential

330

| | Legacy Notes | 2017 Notes | TCEH Notes | New EFH Senior Secured Notes | New EFH Senior Secured Notes |
|---|---|---|---|---|---|
| **Dividend and Other Payment Restrictions Affecting Restricted Subsidiaries (Continued)** | | or advances or transfer of property or assets, in each case to the Issuer or its Restricted Subsidiaries. | or advances or transfer of property or assets, in each case to TCEH or its Restricted Subsidiaries. | or advances or transfer of property or assets, in each case to EFH or its Restricted Subsidiaries. | or advances or transfer of property or assets, in each case to EFH or its Restricted Subsidiaries. |
| **Events of Default** | (a) failure to pay interest within 30 days on the relevant series of Legacy Notes; (b) failure to pay principal on the relevant series of Legacy Notes; (c) failure to perform or breach of a covenant in the relevant Legacy Notes Indenture for 90 days after receipt of written notice given by the trustee or the holders of not less than 33% in principal amount of the relevant series of Legacy Notes; or (d) and (e) certain bankruptcy, insolvency or similar occurrences. | (1) failure to pay principal on the notes; (2) failure for 30 days or more to pay interest on the notes; (3) failure for 60 days after receipt of written notice given by the trustee or the holders of not less than 30% in principal amount of the notes to comply with any covenants; (4) default under other Indebtedness by the Issuer or any of its Restricted Subsidiaries, if both: (a) such default results from the failure to pay any principal of such Indebtedness at its stated final maturity or relates to another obligation and results in the holders of such Indebtedness causing it to become due prior to its stated maturity; and | (1) failure to pay principal on the notes; (2) failure for 30 days or more to pay interest on the notes; (3) failure for 60 days after receipt of written notice given by the trustee or the holders of not less than 30% in principal amount of the notes to comply with any covenants; (4) default under other Indebtedness by TCEH or any of its Restricted Subsidiaries, if both: (a) such default results from the failure to pay any principal of such Indebtedness at its stated final maturity or relates to another obligation and results in the holders of such Indebtedness causing it to become due prior to its stated maturity; and | (1) failure to pay principal on the notes; (2) failure for 30 days or more to pay interest on the notes; (3) failure for 60 days after receipt of written notice given by the trustee or the holders of not less than 30% in principal amount of the notes to comply with any covenants; (4) default under other Indebtedness by the Issuer or any of its Restricted Subsidiaries, if both: (a) such default results from the failure to pay any principal of such Indebtedness at its stated final maturity or relates to another obligation and results in the holders of such Indebtedness causing it to become due prior to its stated maturity; and | (1) failure to pay principal on the notes; (2) failure for 30 days or more to pay interest on the notes; (3) failure for 60 days after receipt of written notice given by the trustee or the holders of not less than 30% in principal amount of the notes to comply with any covenants; (4) default under other Indebtedness by EFH or any of its Restricted Subsidiaries, if both: (a) such default results from the failure to pay any principal of such Indebtedness at its stated final maturity or relates to another obligation and results in the holders of such Indebtedness causing it to become due prior to its stated maturity; and |

Confidential

331

| Events of Default (Continued) | Legacy Notes | 2017 Notes | TCEH Notes | New EFH Senior Secured Notes | New EFIH Senior Secured Notes |
|---|---|---|---|---|---|
| | | (b) the principal amount of such Indebtedness is equal to $250 million or more; | (b) the principal amount of such Indebtedness is equal to $250 million or more; | (b) the principal amount of such Indebtedness is equal to $250 million or more; | (b) the principal amount of such Indebtedness is equal to $250 million or more; |
| | | (5) failure by the Issuer or any Significant Subsidiary (or any group of Restricted Subsidiaries that together would constitute a Significant Subsidiary) to pay final judgments aggregating in excess of $250 million, which final judgments remain unpaid, undischarged and unstayed for a period of more than 60 days after such judgment becomes final; | (5) failure by the Issuer or any Significant Subsidiary (or any group of Restricted Subsidiaries that together would constitute a Significant Subsidiary) to pay final judgments aggregating in excess of $250 million, which final judgments remain unpaid, undischarged and unstayed for a period of more than 60 days after such judgment becomes final; | (5) failure by the Issuer or any Significant Subsidiary (or any group of Restricted Subsidiaries that together would constitute a Significant Subsidiary) to pay final judgments aggregating in excess of $250 million, which final judgments remain unpaid, undischarged and unstayed for a period of more than 60 days after such judgment becomes final; | (5) failure by the Issuer or any Significant Subsidiary (or any group of Restricted Subsidiaries that together would constitute a Significant Subsidiary) to pay final judgments aggregating in excess of $250 million, which final judgments remain unpaid, undischarged and unstayed for a period of more than 60 days after such judgment becomes final; |
| | | (6) and (7) certain events of bankruptcy or insolvency with respect to the Issuer or any Significant Subsidiary (or any group of Restricted Subsidiaries that together would constitute a Significant Subsidiary); or | (6) and (7) certain events of bankruptcy or insolvency with respect to the Issuer or any Significant Subsidiary (or any group of Restricted Subsidiaries that together would constitute a Significant Subsidiary); or | (6) and (7) certain events of bankruptcy or insolvency with respect to the Issuer or any Significant Subsidiary (or any group of Restricted Subsidiaries that together would constitute a Significant Subsidiary); | (6) and (7) certain events of bankruptcy or insolvency with respect to the Issuer or any Significant Subsidiary (or any group of Restricted Subsidiaries that together would constitute a Significant Subsidiary); |

EFIHMW00246059

Confidential

332

| | Legacy Notes | 2017 Notes | TCEH Notes | New EFH Senior Secured Notes | New EFIH Senior Secured Notes |
|---|---|---|---|---|---|
| Events of Default (Continued) | | (8) the guarantee of any EFCH or any Significant Subsidiary (or any group of Restricted Subsidiaries that together would constitute a Significant Subsidiary) for any reason ceases to be in full force and effect or is declared null and void, except as permitted by the indenture. | (8) the guarantee of any Significant Subsidiary (or any group of Restricted Subsidiaries that together would constitute a Significant Subsidiary) for any reason ceases to be in full force and effect or is declared null and void, except as permitted by the indenture; or | (8) the guarantee of any Significant Subsidiary (or any group of Restricted Subsidiaries that together would constitute a Significant Subsidiary) for any reason ceases to be in full force and effect or is declared null and void, except as permitted by the indenture; or<br><br>(9) the lien on Collateral having a fair market value of more than $250 million ceases to be in effect. | (8) the guarantee of any Significant Subsidiary (or any group of Restricted Subsidiaries that together would constitute a Significant Subsidiary) for any reason ceases to be in full force and effect or is declared null and void, except as permitted by the indenture; or<br><br>(9) the lien on Collateral having a fair market value of more than $250 million ceases to be in effect. |
| Amendment, Supplement and Waiver | Without the consent of each affected holder of notes, an amendment or waiver may not (using cross-references as set forth in the Legacy Notes Indentures): (a) change the stated maturity, change or reduce the principal amount, change the rate of interest, change the currency of payment or impair the right to institute suit for payment on or after the stated maturity; | Without the consent of each affected holder of notes, an amendment may not (using cross-references as set forth in the 2017 Indenture: (1) reduce the principal amount of such notes whose holders must consent to an amendment, supplement or waiver;<br><br>(2) reduce the principal of or change the fixed final maturity of any such note or alter or waive the provisions with respect to the redemption of the notes; | Without the consent of each affected holder of notes, an amendment may not (using cross-references as set forth in the TCEH Indenture): (1) reduce the principal amount of such notes whose holders must consent to an amendment, supplement or waiver;<br><br>(2) reduce the principal of or change the fixed final maturity of any such note or alter or waive the provisions with respect to the redemption of the notes; | Without the consent of each affected holder of notes, an amendment may not (using cross-references as set forth in the EFIH Indenture): (1) reduce the principal amount of such notes whose holders must consent to an amendment, supplement or waiver;<br><br>(2) reduce the principal of or change the fixed final maturity of any such note or alter or waive the provisions with respect to the redemption of the notes; | Without the consent of each affected holder of notes, an amendment may not (using cross-references as set forth in the EFIH Indenture): (1) reduce the principal amount of such notes whose holders must consent to an amendment, supplement or waiver;<br><br>(2) reduce the principal of or change the fixed final maturity of any such note or alter or waive the provisions with respect to the redemption of the notes; |

**PX 014**
**Page 342 of 1116**

Confidential

333

| Amendment, Supplement and Waiver (Continued) | Legacy Notes | 2017 Notes | TCEH Notes | New EFH Senior Secured Notes | New EFIH Senior Secured Notes |
|---|---|---|---|---|---|
| | (b) reduce the percentage of notes whose holders must consent to an amendment, supplement or waiver; or | (3) reduce the rate of or change the time for payment of interest on any note; | (3) reduce the rate of or change the time for payment of interest on any note; | (3) reduce the rate of or change the time for payment of interest on any note; | (3) reduce the rate of or change the time for payment of interest on any note; |
| | (c) modify certain covenants and provisions relating to waivers of past defaults. | (4) waive a default in the payment of principal or interest on the notes; | (4) waive a default in the payment of principal or interest on the notes; | (4) waive a default in the payment of principal or interest on the notes; | (4) waive a default in the payment of principal or interest on the notes; |
| | However the following amendments, among others, do not require the consent of any - holder: (using cross-references as set forth in the Legacy Notes Indentures): (a) evidence the succession of another person to the Issuer; (b) and (c) add to the covenants or events of default of the Issuer; (j) change the place of payment for the notes; and (k) cure any ambiguity, omission, mistake, defect or inconsistency; | (5) make any note payable in money other than that stated therein; | (5) make any note payable in money other than that stated therein; | (5) make any note payable in money other than that stated therein; | (5) make any note payable in money other than that stated therein; |
| | | (6) make any change in the provisions relating to waivers of past defaults or the rights of holders to receive payments of principal or interest on the notes; | (6) make any change in the provisions relating to waivers of past defaults or the rights of holders to receive payments of principal or interest on the notes; | (6) make any change in the provisions relating to waivers of past defaults or the rights of holders to receive payments of principal or interest on the notes; | (6) make any change in the provisions relating to waivers of past defaults or the rights of holders to receive payments of principal or interest on the notes; |
| | | (7) make any change in the amendment and waiver provisions; | (7) make any change in the amendment and waiver provisions; | (7) make any change in the amendment and waiver provisions; | (7) make any change in the amendment and waiver provisions; |
| | | (8) impair the right of any holder to receive payment of principal or interest on the notes on or after the due dates or to institute suit for the enforcement of any payment on or with respect to the notes; | (8) impair the right of any holder to receive payment of principal or interest on the notes on or after the due dates or to institute suit for the enforcement of any payment on or with respect to the notes; | (8) impair the right of any holder to receive payment of principal or interest on the notes on or after the due dates or to institute suit for the enforcement of any payment on or with respect to the notes; | (8) impair the right of any holder to receive payment of principal or interest on the notes on or after the due dates or to institute suit for the enforcement of any payment on or with respect to the notes; |
| | | (9) make any change to or modify the ranking of the notes; or | (9) make any change to or modify the ranking of the notes; or | (9) make any change to or modify the ranking of the notes; or | (9) make any change to or modify the ranking of the notes; or |

Confidential

334

## Amendment, Supplement and Waiver (Continued)

| Legacy Notes | 2017 Notes | TCEH Notes | New EFH Senior Secured Notes | New EFH Senior Secured Notes |
|---|---|---|---|---|
| | (10) except as expressly permitted, modify the guarantees of any Significant Subsidiary in a manner adverse to the holders.<br><br>However the following amendments, among others, do not require the consent of any holder (using cross-references as set forth in the 2017 Indenture):<br><br>(1) cure any ambiguity, omission, mistake, defect or inconsistency; | (10) except as expressly permitted, modify the guarantees of any Significant Subsidiary in a manner adverse to the holders.<br><br>However the following amendments, among others, do not require the consent of any holder (using cross-references as set forth in the TCEH Indenture): (1) cure any ambiguity, omission, mistake, defect or inconsistency; | (10) except as expressly permitted, modify the guarantees of any Significant Subsidiary in a manner adverse to the holders.<br><br>However the following amendments, among others, do not require the consent of any holder (using cross-references as set forth in the EFIH Indenture): (1) cure any ambiguity, omission, mistake, defect or inconsistency; | (10) except as expressly permitted, modify the guarantees of any Significant Subsidiary in a manner adverse to the holders.<br><br>However the following amendments, among others, do not require the consent of any holder (using cross-references as set forth in the EFIH Indenture): (1) cure any ambiguity, omission, mistake, defect or inconsistency; |
| | (4) provide for the assumption of the Issuer's or any guarantor's obligations; | (4) provide for the assumption of the Issuer's or any guarantor's obligations; | (4) provide for the assumption of the Issuer's or any guarantor's obligations; | (4) provide for the assumption of the Issuer's or any guarantor's obligations; |
| | (5) make any change that would provide any additional rights or benefits to the holders or that does not adversely affect the legal rights of the holders; | (5) make any change that would provide any additional rights or benefits to the holders or that does not adversely affect the legal rights of the holders; | (5) make any change that would provide any additional rights or benefits to the holders or that does not adversely affect the legal rights of the holders; | (5) make any change that would provide any additional rights or benefits to the holders or that does not adversely affect the legal rights of the holders; |

PX 014
Page 344 of 1116

Confidential

335

| Amendment, Supplement and Waiver (Continued) | Legacy Notes | 2017 Notes | TCEH Notes | New EFH Senior Secured Notes | New EFIH Senior Secured Notes |
|---|---|---|---|---|---|
| | | (10) to add a guarantor under the indenture; and | (10) to add a guarantor under the indenture; and | (10) to add a guarantor under the indenture; and | (10) to add a guarantor under the indenture; and |
| | | (11) to conform the text of the indenture, guarantees or the notes to the description thereof in the relevant offering document. | (11) to conform the text of the indenture, guarantees or the notes to the description thereof in the relevant offering document. | (11) to conform the text of the indenture, guarantees or the notes to the description thereof in the relevant offering document. | (11) to conform the text of the indenture, guarantees or the notes to the description thereof in the relevant offering document. |
| | | Except as set forth above, the indenture and the notes may be amended with the consent of a majority of the outstanding notes. | Except as set forth above, the indenture and the notes may be amended with the consent of a majority of the outstanding notes. | Except as set forth above, the indenture, the notes and the security documents may be amended with the consent of a majority of the outstanding notes, including amendments that would release less than all or substantially all of the Collateral. However, without the consent of 66-2/3% of the outstanding notes, no amendment, supplement or waiver may modify the security documents to release all or substantially all of the Collateral. | Except as set forth above, the indenture, the notes and the security documents may be amended with the consent of a majority of the outstanding notes, including amendments that would release less than all or substantially all of the Collateral. However, without the consent of 66-2/3% of the outstanding notes, no amendment, supplement or waiver may modify the security documents to release all or substantially all of the Collateral. |

EFIHMW00246063

**PX 014**
**Page 345 of 1116**

## BOOK-ENTRY, DELIVERY AND FORM

We will issue the New Senior Secured Notes in the form of global notes in fully registered form initially in the name of Cede & Co., as nominee of DTC, or such other name as may be requested by an authorized representative of DTC. The global notes will be deposited with the trustee as custodian for DTC and may not be transferred except as a whole by DTC to a nominee of DTC or by a nominee of DTC to DTC or another nominee of DTC or by DTC or any nominee to a successor of DTC or a nominee of such successor.

DTC has advised us as follows:

- DTC is a limited-purpose trust company organized under the New York Banking Law, a "banking organization" within the meaning of the New York Banking Law, a member of the Federal Reserve System, a "clearing corporation" within the meaning of the New York Uniform Commercial Code, and a "clearing agency" registered pursuant to the provisions of Section 17A of the Exchange Act.

- DTC holds securities that its participants deposit with DTC and facilitates the settlement among direct participants of securities transactions, such as transfers and pledges, in deposited securities, through electronic computerized book-entry changes in direct participants' accounts, thereby eliminating the need for physical movement of securities certificates.

- Direct participants include securities brokers and dealers, banks, trust companies, clearing corporations and certain other organizations.

- DTC is owned by a number of its direct participants and by the New York Stock Exchange, Inc., the American Stock Exchange LLC and FINRA.

- Access to the DTC system is also available to others such as securities brokers and dealers, banks and trust companies that clear through or maintain a custodial relationship with a direct participant, either directly or indirectly.

- The rules applicable to DTC and its direct and indirect participants are on file with the SEC.

So long as DTC or its nominee is the registered owner of a global note, DTC or that nominee will be considered the sole owner or holder of the New Senior Secured Notes represented by that global note for all purposes under the indenture governing such New Senior Secured Notes and the New Senior Secured Notes. Beneficial interests in the global notes will be represented through book entry accounts of financial institutions acting on behalf of beneficial owners as direct and indirect participants in DTC. Except as provided below, owners of beneficial interests in a global note will not be entitled to have New Senior Secured Notes represented by that global note registered in their names, will not receive or be entitled to receive physical delivery of New Senior Secured Notes in certificated form and will not be considered the owners or holders thereof under the indenture for such New Senior Secured Notes or under the notes for any purpose, including with respect to the giving of any direction, instruction or approval of the trustee for the New Senior Secured Notes.

Purchases of New Senior Secured Notes under the DTC system must be made by or through direct participants, which will receive a credit for the New Senior Secured Notes on DTC's records. The ownership interest of each actual purchaser of New Senior Secured Notes is in turn to be recorded on the direct and indirect participants' records. Beneficial owners of the New Senior Secured Notes will not receive written confirmation from DTC of their purchase, but beneficial owners are expected to receive written confirmations providing details of the transaction, as well as periodic statements of their holdings, from the direct or indirect participants through which the beneficial owner entered into the transaction. Transfers of ownership interests in the New Senior Secured Notes are to be accomplished by entries made on the books of direct and indirect participants acting on behalf of beneficial owners. Beneficial owners will not receive certificates representing their ownership interests in the New Senior Secured Notes, except in the event that use of the book-entry system for the New Senior Secured Notes is discontinued.

336

EFIHMW00246064

DTC has no knowledge of the actual beneficial owners of the New Senior Secured Notes; DTC's records reflect only the identity of the direct participants to whose accounts such New Senior Secured Notes are credited, which may or may not be the beneficial owners. The direct and indirect participants will remain responsible for keeping account of their holdings on behalf of their customers.

Conveyance of notices and other communications by DTC to direct participants, by, direct participants to indirect participants, and by direct participants and indirect participants to beneficial owners will be governed by arrangements among them, subject to any statutory or regulatory requirements as may be in effect from time to time.

Neither DTC nor Cede & Co. (nor any other DTC nominee) will consent or vote with respect to the global notes. Under its usual procedures, DTC would mail an omnibus proxy to the issuer of the New Senior Secured Notes as soon as possible after a record date. The omnibus proxy assigns Cede & Co.'s consenting or voting rights to those direct participants to whose accounts such New Senior Secured Notes are credited on the record date (identified in the listing attached to the omnibus proxy).

All payments on the global notes will be made to Cede & Co., as holder of record, or such other nominee as may be requested by an authorized representative of DTC. DTC's practice is to credit direct participants' accounts upon DTC's receipt of funds and corresponding detail information from us or the trustee on payment dates in accordance with their respective holdings shown on DTC's records. Payments by participants to beneficial owners will be governed by standing instructions and customary practices, as is the case with securities held for the accounts of customers in bearer form or registered in "street name," and will be the responsibility of such participant and not of DTC, us or the trustee, subject to any statutory or regulatory requirements as may be in effect from time to time. Payment of principal, premium, if any, and interest to Cede & Co. (or such other nominee as may be requested by an authorized representative of DTC) shall be the responsibility of the relevant Offeror or the trustee. Disbursement of such payments to direct participants shall be the responsibility of DTC, and disbursement of such payments to the beneficial owners shall be the responsibility of direct and indirect participants.

DTC may discontinue providing its service as securities depositary with respect to the New Senior Secured Notes at any time by giving reasonable notice to us or the trustee. In addition, we may decide to discontinue use of the system of book-entry transfers through DTC (or a successor securities depositary). Under such circumstances, in the event that a successor securities depositary is not obtained, certificates representing the New Senior Secured Notes in fully registered form are required to be printed and delivered to beneficial owners of the New Senior Secured Notes representing such New Senior Secured Notes. If this were to occur, neither the Offerors nor the trustee of such New Senior Secured Notes will be liable for any delay by DTC, its nominee or any direct or indirect participant in identifying the beneficial owners of the New Senior Secured Notes, and the Offerors and the trustee may conclusively rely on, and will be protected in relying on, instructions from DTC or its nominee for all purposes, including with respect to the registration and delivery, and the respective principal amounts, of the certificates representing the New Senior Secured Notes to be issued.

Neither we nor the trustee will have any responsibility or obligation to direct or indirect participants, or the persons for whom they act as nominees, with respect to the accuracy of the records of DTC, its nominee or any participant with respect to any ownership interest in the New Senior Secured Notes, or payments to, or the providing of notice to participants or beneficial owners.

So long as the New Senior Secured Notes are in DTC's book-entry system, secondary market trading activity in the New Senior Secured Notes will settle in immediately available funds. All payments on the New Senior Secured Notes issued as global notes will be made by us in immediately available funds.

The Offerors have provided the descriptions of the operations and procedures of DTC in this Prospectus solely as a matter of convenience. These operations and procedures are solely within the control of DTC and are subject to change by DTC from time to time. None of the Offerors, the Dealer Managers nor the trustee for the New Senior Secured Notes takes any responsibility for these operations or procedures, and you are urged to contact DTC or their participants directly to discuss these matters.

Confidential

EFIHMW00246065

## MATERIAL U.S. FEDERAL INCOME TAX CONSIDERATIONS

The following discussion summarizes the anticipated material U.S. federal income tax consequences to U.S. Holders and Non-U.S. Holders (each term as defined below and in the aggregate, referred to as "holders") relating to the exchange of Old Notes for New Senior Secured Notes pursuant to the exchange offers, the consent solicitations and the ownership and disposition of the New Senior Secured Notes acquired in the exchange offers. This summary is based upon the provisions of the Internal Revenue Code of 1986, as amended (the "Code"), Treasury regulations promulgated under the Code (the "Regulations"), and administrative rulings and judicial decisions, in each case as of the date hereof. These authorities are subject to differing interpretations and may be changed, perhaps retroactively, resulting in U.S. federal income tax consequences materially different from those summarized below. The Offerors have not obtained, nor do they intend to obtain, any ruling from the U.S. Internal Revenue Service (the "IRS") with respect to the statements made and the conclusions reached in the following summary, and there can be no assurance that the IRS will agree with such statements and conclusions. The legal conclusions with respect to U.S. federal income tax considerations set forth in the following discussion constitute the opinion of Vinson & Elkins L.L.P.

This summary assumes that the Old Notes and the New Senior Secured Notes are and will be held as capital assets within the meaning of Section 1221 of the Code. This summary does not address the tax considerations arising under the U.S. federal estate and gift tax laws or the laws of any foreign, state or local jurisdiction. In addition, this summary does not purport to address all tax considerations that may be applicable to a particular holder's circumstances or to holders that may be subject to special tax rules, including, without limitation, holders subject to the alternative minimum tax, banks, insurance companies or other financial institutions, tax-exempt organizations, dealers, brokers or traders in securities, currencies or commodities, regulated investment companies, real estate investment trusts, holders that elect to use a mark-to-market method of accounting for their securities holdings, U.S. Holders whose "functional currency" is not the U.S. dollar, controlled foreign corporations, passive foreign investment companies, persons who own or are deemed to own 10% or more of EFH Corp.'s voting stock, former U.S. citizens or long-term residents, partnerships or other pass-through entities for U.S. federal income tax purposes or investors therein, holders holding the Old Notes or the New Senior Secured Notes as a position in a hedging transaction, "straddle," "conversion transaction," other "synthetic security" or integrated transaction, or other risk reduction transaction, holders deemed to sell the Old Notes or the New Senior Secured Notes under the constructive sale provisions of the Code, or subsequent purchasers of New Senior Secured Notes.

For purposes of this discussion, the term "U.S. Holder" means a beneficial owner of Old Notes or New Senior Secured Notes that is, for U.S. federal income tax purposes: (i) an individual who is a citizen or resident of the United States; (ii) a corporation, including any entity treated as a corporation for U.S. federal income tax purposes, created or organized in the United States or under the laws of the United States, any state thereof or the District of Columbia; (iii) an estate the income of which is subject to U.S. federal income taxation regardless of its source; or (iv) a trust, if its administration is subject to the primary supervision of a U.S. court and one or more U.S. persons have the authority to control all substantial decisions of the trust, or if it has made a valid election in effect under applicable Regulations to be treated as a U.S. person.

For purpose of this discussion, the term "Non-U.S. Holder" means a beneficial owner of Old Notes or New Senior Secured Notes (other than a partnership or other entity treated as a partnership for U.S. federal income tax purposes) that is not a U.S. Holder.

If a partnership (or other entity treated as a partnership for U.S. federal income tax purposes) holds Old Notes or New Senior Secured Notes, the tax treatment of a partner in the partnership will generally depend upon the status of the partner and the activities of the partnership. If you are a partnership or a partner of a partnership holding Old Notes or New Senior Secured Notes, you should consult your tax advisor regarding the tax consequences of the exchange offers, the consent solicitations and the ownership and disposition of New Senior Secured Notes.

THIS SUMMARY IS FOR GENERAL INFORMATION PURPOSES ONLY, AND IS NOT INTENDED TO BE, AND SHOULD NOT BE CONSTRUED TO BE, LEGAL OR TAX ADVICE TO ANY PARTICULAR

Confidential

EFIHMW00246066